Hearing Date: February 24, 2009 at 10:00 a.m.
Objection Deadline: February 20, 2009 at 4 p.m.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Philip Bentley
Philip S. Kaufman
Gregory A. Horowitz

*Attorneys for Lucerne Foundation, Collingwood Enterprises and Douglas Rimsky*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
SECURITIES INVESTOR PROTECTION : Adv. Proc. No.: 08-01789 (BRL)
CORPORATION, :
:
Plaintiff-Applicant, : SIPA Liquidation
:
v. :
:
BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, :
:
Defendant. :
:
-----------------------------------------------------------X

# MOTION FOR AN ORDER MODIFYING
# THE DECEMBER 23, 2008 ORDER ESTABLISHING
# DEADLINES FOR THE FILING OF CUSTOMER CLAIMS

Lucerne Foundation, Collingwood Enterprises and Douglas Rimsky (collectively, "Movants"), by their counsel, Kramer Levin Naftalis & Frankel LLP, request entry of an order modifying the Court's December 23, 2008 order establishing deadlines for the filing of customer claims (the "Bar Date Order" or "Order"). Specifically, Movants request that the Bar Date Order be modified to provide expressly — as bankruptcy bar orders often do — that any claim arising in the future as a result of the Trustee's successful pursuit of an avoidance action is excepted

from the bar date and need not be filed until 30 days after the judgment giving rise to the claim becomes final.

**Preliminary Statement**

Many investors, including investors represented by Kramer Levin, do not currently have claims against Bernard L. Madoff Investment Securities LLC ("Madoff").[1] However, these investors received distributions from Madoff, directly or indirectly, prior to December 11, 2008. In the event the Trustee subsequently brings preference or fraudulent conveyance actions against these investors and prevails, each investor against whom the Trustee obtains a judgment will have a customer claim arising out of his or her satisfaction of that judgment.

The Bar Date Order does not make clear that future claims of this sort are excluded from the March 4 and July 2, 2009 claim deadlines. The Order states, without elaboration, that any customer claim faces a risk of non-payment if not filed by March 4, and an absolute bar to payment if not filed by July 2. No mention is made of any carve-out for potential claims stemming from future avoidance actions. Consequently, many of the thousands of investors reading these provisions may conclude that they are required to file a claim form by March 4 to preserve their potential future claims – even though filing a claim form now could compromise their constitutional right to a trial by jury in any avoidance action the Trustee may bring against them.

Our attempts to resolve this issue without the need for Court intervention have been unsuccessful. By letter dated February 2, 2009, we asked the Trustee to confirm that he

---

[1] Collingwood Enterprises, for example, redeemed its entire Madoff investment in 2005, and thus has no customer claim at this point.

2

will honor future claims arising out of judgments obtained in avoidance actions, even if such claims are not filed by the bar date. The Trustee declined to take a position, leaving the issue unresolved. Copies of our letter to the Trustee and his February 3, 2009 response are attached as Exhibits A and B. As a result, there is now an urgent need for the Court to resolve this issue in advance of the March 4 claims deadline, to avert the substantial prejudice that numerous Madoff investors may suffer if, despite having no current claims, they nevertheless find it necessary to file a protective claim to preserve their potential future claims against the estate.

### Background

1. On December 15, 2008, the District Court entered an order commencing the present liquidation proceeding pursuant to the provisions of the Securities Investor Protection Act ("SIPA"). Among other things, this Order appointed Irving H. Picard as trustee (the "Trustee") for the liquidation of Madoff's business, and it removed the liquidation proceeding to the Bankruptcy Court.

2. On December 23, 2008, the Bankruptcy Court entered the Bar Date Order. Consistent with SIPA's provisions, that order established two deadlines: (i) an initial March 4, 2009 deadline for the filing of "net equity" claims by customers (that is, claims for the amount by which a customer's investments exceeded his or her withdrawals, *see* 15 U.S.C. § 78fff(a)(1)(A)), and (ii) an absolute July 2, 2009 deadline for the filing of all claims. *See* Bar Date Order at pp. 3, 7; 15 U.S.C. § 78fff-2(a)(3).

3. By statute, and as identified in the Bar Date Order, there is a marked difference between the guaranteed rights granted to customers who file their claims by the March 4 deadline and the lesser rights granted to those who file between the March 4 and July 2 deadlines. Customers who file by March 4 have an absolute right to share in payments of

3

customer property made by Madoff's estate and by the SIPC from its reserve. In contrast, any customer claim that is filed between March 4 and July 2 "need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from monies advanced by SIPC, it shall be satisfied in cash or securities (or both) as the Trustee may determine to be most economical to the estate." 15 U.S.C. § 78fff-2(a)(3); Bar Date Order at p. 3. In other words, with respect to claims received after March 4, 2009, the Trustee's obligation to pay claims from customer property is discretionary, rather than ironclad. To preserve their guaranteed right to such payments, investors must file by March 4, 2009.[2]

## Argument

### MODIFICATION OF THE BAR DATE ORDER IS NECESSARY TO AVOID SIGNIFICANT PREJUDICE

**A.   The Bar Date Order Does Not
       Carve Out Future Claims**

4.   The Bar Date Order does not distinguish between customers with existing claims against Madoff and customers who might potentially have such claims in the future if the Trustee brings avoidance actions and obtains judgments against them. The Order states only that March 4 is the "bar date for receiving the maximum possible protection for customer claims under SIPA." Bar Date Order at p. 7. The Instructions for Completing Customer Claim Form

---

[2]   The Trustee has not been clear in alerting investors to this important distinction between the March 4 and July 2, 2009 bar dates. To the contrary, the Trustee's statements to counsel and to the press would lead a reasonable person to believe that July 2, 2009 is the only bar date that affects investors' rights. *See, e.g.,* February 3, 2009 letter of Irving Picard to Philip Bentley (Exh. B) ("The mandatory statutory bar date in the BLMIS case is July 2, 2009"); Andrew Ross Sorkin, $946 Million Recovered So Far From Madoff Firm, N.Y. Times, Feb. 4, 2009 at http://dealbook.blogs.nytimes.com (annexed as Exhibit C) ("The deadline for Madoff's customers to make a claim . . . is July 2, [Picard] told the court."); Press Release of Trustee dated February 6, 2009 available at http://madofftrustee.com (annexed as Exhibit D) ("Claims will not be timely filed unless received on or before July2, 2009 . . . . Contrary to misinformation published by unofficial sources, March 4, 2009 is not the last date to file customer claims.").

4

("Instructions Form"), authorized and approved by the Bar Date Order, states that all customer claims received after March 4, 2009 are "subject to delayed processing and to being satisfied on terms less favorable to you." Instructions Form at p. 3. The Instructions Form further states: "The law governing this proceeding absolutely bars the allowance of any claim, including a customer claim, not actually received by the trustee on or before July 2, 2009." *Id.*

5.  Neither the Order nor any of the materials disseminated to investors contain any provision addressing and carving out future claims that may subsequently arise as a result of judgments obtained in avoidance actions. Provisions of this sort, which provide much-needed clarity, are often found in bankruptcy bar orders. *See, e.g.,* the bar date orders in the following cases, attached as Exhibits E – I hereto: *In re Bayou Group LLC*, Case No. 06-22306 (ASH) (Bankr. S.D.N.Y.) [Dkt. No. 251] ¶8(h); *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del.) [Dkt. No. 1076] at 3; *In re Quality Home Loans*, Case No. 07-13006 (GM) (Bankr. C.D. Cal.) [Dkt. No. 151] ¶4(e); *In re Seitel, Inc.*, Case No. 03-12227 (PJW) (Bankr. D. Del.) [Dkt. No. 144] ¶3; *In re Reed E. Slatkin*, Case No. 01-11549 (RR) (Bankr. C.D. Cal.) [Dkt. No. 312] at Exhibit B ¶A.3. Because the Bar Date Order contains no such provision, investors may be led to believe that they are required to file a claim by the March 4 deadline to preserve their maximum rights, even if they do not currently have customer claims.

**B.  Future Claims That May Arise Out of Possible
Avoidance Action Judgments Are Not Yet "Claims"
That Must Be Filed By the Bar Date**

6.  A hallmark of preference and fraudulent conveyance litigation is an unsuccessful defendant's right to assert a claim for the value of an avoided transfer. In a bankruptcy case, the governing statute and rules provide that such a "springing" claim need not be filed until 30 days after the judgment giving rise to the claim becomes final. *See* Bankruptcy Code § 502(h) ("A

claim *arising from the recovery of property* under section . . . 550 . . . of this title shall be determined . . . the same as if such claim had arisen before the date of the filing of the petition") (emphasis added); *see also* Bankruptcy Rule 3003(c)(3) (in a case under chapter 7, 12 or 13, "[a]n unsecured claim which arises in favor of an entity or becomes allowable *as a result of a judgment* may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity . . .") (emphasis added); Fed. R. Bankr. P. 3003(c)(3) (in a case under chapter 9 or 11, "[n]otwithstanding the expiration of [the bar date fixed by the court], a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c) . . . (3)"). This separate timeline for springing claims rests on the recognition that these potential future claims are not "claims" within the meaning of the Bankruptcy Code, *see* Code § 101(5)(A), until a judgment in an avoidance action has been obtained and satisfied.

7.  In the present case, thousands of investors who received distributions from Madoff prior to December 11, 2008 face the possibility of being sued by the Trustee and asked to return some or all of those distributions under the Bankruptcy Code's preference or fraudulent conveyance provisions. If and when the Trustee brings such suits and obtains judgments, each investor who satisfies such a judgment will *then* have a resulting claim against the estate.

8.  This potential future right to payment does not yet constitute a "claim," as defined in the Bankruptcy Code and incorporated by reference in SIPA. It has long been recognized that a "claim" exists only if, *prior to the bankruptcy*, "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation — 'a right to payment' — under the relevant non-bankruptcy law." *LTV Steel Corp. v. Shalala* (*In re Chateaugay Corp.*), 53 F.3d 478, 497 (2d Cir. 1995) (citing *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992). Those pre-petition elements are necessarily absent in the case

of springing claims resulting from avoidance actions, since the power to avoid preferential or fraudulent transfers (whether vested in a bankruptcy trustee or a SIPA trustee) only arises when a petition is filed. Prior to commencement of a bankruptcy or SIPA proceeding — and until a transfer has been avoided and returned to the estate — no legal obligation that would form the basis for a "claim" exists. *See Riverwood Int'l Corp. v. Olin Corp.* (*In re Manville Forest Prod. Corp.*), 225 B.R. 862, 866 (Bankr. S.D.N.Y.) (Lifland, J.) (future obligations do not become claims until all elements necessary to give rise to a legal obligation are present); *DuVoisin v. Anderson* (*In re Southern Industrial Banking Corp.*), 66 B.R. 349 (Bankr. E.D. Tenn. 1986) (the prospective right to file a claim pursuant to § 502(h) is not a contingent claim); *Rochez Bros. Inc. v. Sears Ecological App. Co.* (*In re Rochez Bros., Inc.*), 326 B.R. 579 (Bankr. W.D. Pa. 2005) (Section 502(h) claim does not accrue until property is actually recovered).

9. The crucial distinction in a bankruptcy case between a springing claim and a claim subject to a bar date applies no less in a SIPA proceeding. SIPA expressly incorporates the provisions of the Bankruptcy Code, including sections 502(h) and 101. *See* 15 U.S.C. § 78fff(b). Both the 60-day and the six-month bar dates established by SIPA, which require that "claims" be submitted to the trustee for consideration (*see* 15 U.S.C. § 78fff-2(a)(d)), thus apply only to claims qualifying as such under the Bankruptcy Code, and not to springing claims outside the scope of the Bankruptcy Code's definition. Because the Bar Date Order fails to make this distinction in fixing March 4 and July 2 as deadlines for the submission of "claims," it should be modified to make plain that springing claims resulting from transfers successfully avoided by the Trustee in future litigation are not subject to these deadlines.

10. SIPA's legislative history is entirely consistent with this result. As the Senate Report reflects, Congress established a strict bar date for two reasons: (i) "the need for early

certainty in regard to the allocation of customer property," and (ii) the risk that customers might intentionally withhold claims "to see if a change in the market might given them a more valuable distribution." S. Rep. 95-763, 1978 U.S.C.C.A.N. 765, 775. The exclusion of springing claims from the bar date is in complete harmony with these objectives:

- Such a carve-out will cause no delay to the administration of the estate. Springing claims are fundamentally different from other types of claims, which must be identified (through a bar date) before a trustee can establish proper reserves and begin to make distributions to creditors. A springing claim, by contrast, need not be known in advance, because a distribution on account of a springing claim will never be larger — and will almost always be smaller — than the recovery that gave rise to it.

- Nor is there any risk that a carve-out of springing claims from the bar date might cause customers to intentionally withhold claims for speculative purposes. By definition, a springing claim does not arise until the Trustee has obtained an avoidance judgment and the defendant has satisfied that judgment. Under Bankruptcy Rule 3002(c), the defendant/claimant is required to file his or her claim within 30 days of the judgment becoming final, hardly a protracted period.

C.  **A Prompt Resolution of this Issue is Necessary to Avert Substantial Prejudice to Investors**

11.    The Seventh Amendment to the United States Constitution entitles a defendant to a trial by jury in "suits at common law." Defendants in avoidance actions have this jury trial right. *Granfinanciera v. Nordberg*, 492 U.S. 33, 58-65 (1989) (fraudulent conveyance and

8

preference defendants enjoy Seventh Amendment jury trial rights, even where the suits are commenced as "core" bankruptcy proceedings).

12. In a bankruptcy case, the filing of a proof of claim constitutes a waiver of the right to a jury trial. *Id*. at 57-58; *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (preference defendants waived right to jury trial by filing proof of claim in the bankruptcy proceeding). In a SIPC proceeding, the submission of a SIPC claim might also be deemed to operate as a waiver of this fundamental right. *See Keller v. Blinder (In re Blinder Robinson & Co., Inc.)*, 135 B.R. 892, 896 (D. Colo. 1991) ("[A] party filing a customer claim subjects himself to the process of allowance and disallowance of claims . . ."). Should such a waiver be deemed to occur in this case, investors who currently have no customer claims would face an impossible choice under the present Bar Date Order: either file a protective SIPA claim now to preserve the possibility of a future recovery, but thereby waive their constitutional right to have the avoidance actions against them tried by a jury, or refrain from filing a SIPA claim by the current bar dates, and thereby risk forfeiting any right to a future recovery from the Madoff estate or the SIPA reserve.

13. To avoid the imminent risk of substantial prejudice to investors holding nothing but springing claims – as well as mass confusion among investors – the Bar Date Order should be made consistent with Bankruptcy Code § 502(h) and the Bankruptcy Rules, by providing explicitly that springing claims need not be filed by the March 4 or July 2 claims deadlines.

**Conclusion**

For the reasons stated above, Movants respectfully request entry of an order modifying the Bar Date Order to provide that any customer claim arising as a result of an avoidance action may be filed within 30 days after the judgment giving rise to such claim becomes final, and granting such other relief as the Court deems proper.

Dated: New York, New York
 February 10, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:  /s/ Philip S. Kaufman
 Philip Bentley
 Philip S. Kaufman
 Gregory A. Horowitz

1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100

*Attorneys for Lucerne Foundation, Collingwood Enterprises and Douglas Rimsky*