**SILVERMANACAMPORA LLP**
Counsel to plaintiff Marianne T. O'Toole, the Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora, Esq.
Ronald J. Friedman, Esq.
Robert J. Ansell, Esq.
Jay S. Hellman, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| HRH CONSTRUCTION LLC, *et al.*, | Case No.: 09-23665 (RDD) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------------------------X

MARIANNE T. O'TOOLE, Chapter 7 Trustee of HRH
CONSTRUCTION LLC, *et al.*,

                 Plaintiff,

           - against -

Adv. P. No.: 12-08230 (RDD)

REMUS HRH LLC, REMUS HOLDINGS LLC, STARRETT CONSULTING LLC, LEVIATHAN CONSTRUCTION MANAGEMENT SERVICES LLC a/k/a LEVIATHAN CONSTRUCTION SERVICES LLC, BRAD SINGER, GARY SINGER, GREGORY CUNEO, KAREN SINGER, GARY & KAREN SINGER CHILDREN'S TRUST, STEVEN SINGER, HRH MANAGEMENT LLC, ROMULUS HOLDINGS, INC., HRH SERIES A LLC, HRH CLASS A COMMON LLC, GEMINI CONSTRUCTION ASSOCIATES, LLC, ANNE MARIE LLC, BRAD & BETH SINGER CHILDREN'S TRUST, STEVEN SINGER CHILDREN'S TRUST, SECOND GARY AND KAREN SINGER CHILDREN'S TRUST, AVERY MAYA CMS LLC, NEW HRH FUNDING LLC, DIANE HARRIS, DOROTHY M. SINGER TRUST, REBECCA SINGER, PHILLIP MANDELBAUM, "JOHN DOES 1-50", "JANE DOES 1-50", "ABC PARTNERSHIPS 1-50", "DEF LIMITED LIABILITY COMPANIES 1-50" and/or "XYZ CORPORATIONS 1-50" (the last five names being names unknown to Trustee, the parties intended being any other parties who are transferors, transferees or beneficiaries of any of the conveyed assets described in the Complaint, and who gave no, or less than fair, consideration for such assets),

                 Defendants.
-----------------------------------------------------------------------------------X

1

**DECLARATION OF JAY S. HELLMAN
IN REPLY TO DEFENDANTS' OPPOSITION TO THE TRUSTEE'S
MOTION FOR SANCTIONS BASED ON DEFENDANTS' FAILURE TO
COMPLY WITH THE COURT'S JUNE ORDER AND THEIR DISCOVERY OBLIGATIONS**

**JAY S. HELLMAN**, pursuant to 28 U.S.C. §1746, states as follows:

1. I am a member of SilvermanAcampora LLP, the attorneys for Marianne T. O'Toole, the Chapter 7 Trustee of HRH Construction LLC, *et al.*, (the "Debtors") and, as such, I am fully familiar with all of the facts and circumstances set forth herein.

2. I submit this declaration in reply to Defendants' opposition (the "Opposition") to the Trustee's renewed motion for sanctions (the "Sanctions Motion") based on Defendants' failure to comply with the Court's June 21, 2013 Order Granting the Trustee's Motion to Compel Disclosure (ECF Doc. No. 72) (the "June Order") and their discovery obligations, together with such other and further relief as this Court deems just and proper. The June Order required, *inter alia*, and subject to the narrow limitations contained therein, that "Defendants shall produce . . . all documents responsive to the Demands on or before July 1, 2013." *See* ECF Doc. No. 72 at 3. Instead, Defendants provided an incomplete and sparse production on or about July 1, 2013, necessitating the renewal of the Sanctions Motion.

3. Incredibly, on Friday, November 8, 2013 – the very date Defendants' opposition to the Trustee's Sanctions Motion was due,[1] and ***more than one year after the document responses and productions were due and in flagrant disregard of the June Order requiring production four months prior,*** Defendants made a supplemental and equally incomplete document production to my office (the "Supplemental Production").[2]

---

[1] Similarly, Defendants made a piecemeal production of bank records by electronic mail on October 4, 2013, the day the Trustee's opposition to Defendants' Motion for a Protective Order was to be filed.

[2] By the Production, Defendants have now withdrawn that portion of their Motion for Protective Order as it relates to tax returns for Gary Singer, Karen Singer, Brad Singer and Diane Harris. However, Defendants continue to pursue the remainder of their Motion for Protective Order in an effort to limit discovery. In particular, Defendants apparently still seek a Protective Order with respect to production of documents (i) outside the timeframe of October 1, 2004 through and including December 31, 2009, and (ii) at least with respect to Karen Singer, bank statements for periods in which no transactions occurred between Defendants and the Debtors or between Defendants, as those portions of Defendants' Motion for a Protective Order have not been withdrawn. Defendants apparently also seek a Protective Order for

2                                                                JSH/1435821.1/060289

4. Defendants' 11th hour and incomplete Supplemental Production was designed to further delay and obfuscate the straight forward issues raised in the Sanctions Motion – namely, that Defendants continue to flout the authority of the Court and ignore the June Order. Notwithstanding the late production, which does not obviate the request for sanctions or cure the discovery abuses, I have compared the Supplemental Production to (i) documents previously produced by Defendants, and (ii) my prior declaration in this matter, dated October 4, 2013 (the "October 2013 Declaration"). Approximately thirty (30) pages of the Supplemental Production consists of duplicates and, as explained below, the Supplemental Production does little to correct the deficiencies described in the October 2013 Declaration. Although some new bank records and tax returns were provided with the Supplemental Production, as discussed below, virtually all of the infirmities set out in the October 2013 Declaration still exist, bank records and tax returns have still been omitted from production, and other categories of documents identified in the October 2013 Declaration have not been produced.

5. Moreover, Defendants blatant yet unstated attempt to redefine relevance and the scope of discovery – having waived those arguments as more fully set forth in the Sanctions Motion -- through the declarations of Joseph A. Patella, Esq. (the "Patella Declaration") and Philip Mandelbaum, the CFO and accountant for several Singer entities and individuals (the "Mandelbaum Declaration") should not be tolerated.

6. As also set forth in the October 2013 Declaration, Defendants claimed that certain requested communications were already provided to the Trustee but then assert blanket claims of privilege. Yet to date, no privilege log has ever been provided to the Trustee.

---

bank statements from Diane Harris (*see* Defendants' Memorandum of Law In Further Support Of Motion For Protective Order and In Opposition to Trustee's Motion For Sanctions at p.8, fn. 14), but that was never the subject of the Defendants' original motion.

**THE PATELLA DECLARATION IS IMPROPER**

7. The Patella Declaration improperly offers "fact testimony" concerning those documents that Defendants allegedly do not have in their possession, custody or control. There is nothing from any of the Defendants themselves in the form of a proper document response, affidavit, or otherwise, concerning the existence or non-existence of the documents addressed in paragraph 7 of the Patella Declaration.

8. Moreover, although the joint Opposition is signed by "Counsel to the Leviathan Defendants," Defendants have only submitted the Patella Declaration as "evidence" that there are no documents relating to communications between Defendants and Davis & Gilbert LLP.

9. Finally, it is inconceivable (or in violation of Rule 1.15(d)(1)(iii) of the New York Rules of Professional Conduct, *see Engentra Power Group LLC v. Dewey & Leboeuf LLP*, 493 B.R. 421 (S.D.N.Y. 2013)) that Defendants do not have any retention/retainer agreements with Andrews Kurth LLP (*see* Patella Declaration, ¶ 7) or, as set forth in the Trustee's October 23, 2012 demands (the "Demands"), any "documents supporting the date of the retention." *See e.g.* Demand Nos. 27-44. Notably, the Patella Declaration only addresses the existence of "retainer agreements," and does not address whether there are any other documents supporting the date of retention.

**THE MANDELBAUM DECLARATION IMPROPERLY ATTEMPTS TO LIMIT DISCOVERY**

10. The Mandelbaum Declaration purports to identify certain records that do or do not exist based upon the time that certain bank accounts were opened. Mr. Mandelbaum is employed by the Singers and their entities, and was a named defendant in this adversary proceeding. Therefore, Mr. Mandelbaum is not a disinterested witness.

11. Nevertheless, the Mandelbaum Declaration does not annex the demanded and relevant documentation regarding the same, including but not limited to account opening information, such as signature cards, such that the Trustee and counsel can reach their own conclusions based upon the turnover of responsive documents.

12. Again, the Mandelbaum Declaration is nothing more than a transparent attempt to pre-select what is deemed to be relevant and circumscribe discovery in this case, long after such arguments have been waived.

13. In paragraphs 7, 14 and 15 of the Mandelbaum Declaration, Defendants endeavor to substitute the Trustee's judgment with their notion of "relevance" to justify their failure and/or refusal to produce bank records relating to Karen Singer or Further Lane Securities. As this Court has admonished Defendants several times, however, Defendants do not get to decide what is relevant and what they will, therefore, produce or withhold from the Trustee. *See* Sanctions Motion at Exhibit B: May 31, 2013 transcript, at pp. 39 and 41-42.

14. Accordingly, any effort to limit discovery by way of Mr. Mandelbaum's statements concerning whether transactions did or did not take place, should be summarily rejected.

## **THE SUPPLEMENTAL PRODUCTION IS DEFICIENT**

15. Once again, there are certain Defendants for whom ***not a single document*** was produced. No documents were ever produced (either in the Supplemental Production or in any other, prior production) by Steven Singer, Romulus Holdings, Inc., the Brad & Beth Singer Children's Trust, the Steven Singer Children's Trust, the Dorothy M. Singer Trust, Rebecca Singer or Philip Mandelbaum, and any documents concerning them appear to have been received in connection with the production by other parties.[3]

16. Defendants incorrectly contend that the foregoing persons or entities have no further discovery obligations because they have been dismissed from the case without prejudice. However, Defendants' reliance on a case out of Maine and a cursory footnote in a case out of the Southern District of New York in which a defendant was dismissed with

---

[3] Although the Supplemental Production contains tax returns for Brad Singer, Gary and Karen Singer, and Diane Harris for the years 2006 through 2009, the Supplemental Production contains no other documents from those individuals, other than some additional bank statements from Karen Singer, addressed below. It is also worth noting that the demand was for returns from 2004 to the present. Again, however, Defendants have narrowed the relevant time period for the production of the tax returns (when they have chosen to provide them) long after Defendants waived any such arguments and *after* this Court entered the June Order to compel production.

prejudice, is misplaced. Those cases are factually inapposite to the present case, and do not address the egregious situation that Defendants have created by flatly refusing to produce the requested discovery until such time as the Court decided the motions to dismiss, without ever first obtaining a stay of discovery. *See e.g. Spencer Trask Software and Info. Servs., LLC v. RPOST Intl. Ltd.*, 2002 U.S. Dist. LEXIS 6021, at *2–4 (S.D.N.Y. 2002); *Moran v. Flaherty*, 1992 U.S. Dist. LEXIS 14568, at *3–4 (S.D.N.Y. 1992); *Samson Res. Co. v. J. Aron & Co.*, 2009 U.S. Dist. LEXIS 47867, at *2 (S.D.N.Y. 2009). Certainly, with respect to at least one of the dismissed Defendants, discovery was properly sought by Rule 2004 Orders but never provided prior to the date the Trustee was required to file the Complaint. *See, e.g.*, ECF Doc. Nos. 767, 795 & 811.

17. Certain other Defendants have not participated in the Supplemental Production at all, including Leviathan Construction Management Services LLC a/k/a Leviathan Construction Services, LLC, HRH Management LLC, HRH Series A LLC, HRH Class A Common LLC, Gemini Construction Associates LLC, The Second Gary & Karen Singer Children's Trust, and Avery Maya CMS LLC. Accordingly, the October 2013 Declaration is unaffected by the Supplemental Production with respect to each of the above persons and/or entities.

18. As set forth below, notwithstanding the 11th hour, Supplemental Production, Defendants' document production is still incomplete. The affect of the Supplemental Production on the bank records is discussed below. The Court is referred to the October 2013 Declaration for the categories of documents Defendants still have not provided, since those deficiencies were not remedied by the Supplemental Production.

**A. REMUS HRH LLC FAILED TO MAKE A COMPLETE PRODUCTION**

19. Remus HRH LLC has failed to produce the following: (i) for Key Bank account no. ending in 2839, all records from January 2004 through March 2007, and January 2010 through December 2011; (iii) for NVE Bank account no. ending in 2709, all records for January

2010 through December 2011; and (iii) for NVE Bank account no. ending in 3988, all records for January 2010 through December 2011.  *See* Demand Nos. 15-17.

### B. REMUS HOLDINGS LLC FAILED TO MAKE A COMPLETE PRODUCTION

20.    Remus Holdings LLC has failed to produce the following bank statements, wire transfer confirmations and copies of checks for the years 2004 to May 31, 2011, as demanded: (i) for the JP Morgan Chase Bank account no. ending in 3867, all records prior to September 17, 2004, November 17, 2004 through December 15, 2004, February 16, 2005 through March 15, 2005, April 16, 2005 through August 15, 2005, September 17, 2005 through March 15, 2006, April 18, 2006 through May15, 2006, November 2009, and all records after December 31, 2009; (ii) for the JP Morgan Chase Bank account no. ending in 3865, all records prior to September 17, 2004, and all records after December 31, 2009; and (iii) for the Further Lane Securities account no. ending in 5252, all records prior to April 2005, and all records for May 2005 through December 2011.

### C. STARRETT CONSULTING LLC FAILED TO MAKE A COMPLETE PRODUCTION

21.    Starrett Consulting LLC has failed to produce the following bank statements, wire transfer confirmations and copies of checks for the years 2004 to May 31, 2011, as demanded: (i) for the JP Morgan Chase Bank account no. ending in 0365, all records prior to August 17, 2004, January 19, 2005 through February 15, 2005, March 16, 2005 through February 2006, April 18, 2006 through May 15, 2006, November 2009, and all records after December 31, 2009; and (ii) for the JP Morgan Chase Bank account no. ending in 0301, all records prior to August 17, 2004, January 19, 2005 through February 15, 2005, March 16, 2005 through February 15, 2006, April 18, 2006 through May 15, 2006, November 2009, and all records after December 31, 2009.

### D. THE GARY & KAREN SINGER CHILDREN'S TRUST FAILED TO MAKE A COMPLETE PRODUCTION

22.    The Gary & Karen Singer Children's Trust has failed to produce the following bank statements, wire transfer confirmations and copies of checks for the years 2004 to May

31, 2011, as demanded: (i) for the JP Morgan Chase Bank account no. ending in 3165 and/or 3101, all records prior to December 16, 2004, and all records after December 31, 2009; (ii) for Key Bank account no. ending in 9213, all records from January 2010 through December 2011; (iii) for Signature Bank account no. ending in 3701, all records from April 2011 through December 2011; and (iv) for Signature Bank account no. ending in 6934, all records from August 2005 through December 2011.

### E. **<u>KAREN SINGER FAILED TO MAKE A COMPLETE PRODUCTION</u>**

23. Karen Singer has failed to produce the following bank statements, wire transfer confirmations and copies of checks for the years 2004 to May 31, 2011, as demanded: (i) for the JP Morgan Chase Bank account no. ending in 1865, all records prior to July 19, 2005, August 16, 2005 through September 16, 2005, records from October 18, 2005 through September 29, 2006, and all records from January 2008 through December 2011; (ii) for the JP Morgan Chase Bank account no. ending in 1801, all records prior to July 19, 2005, August 16, 2005 through September 16, 2005, and all records from October 18, 2005 through September 29, 2006, and all records from January 2008 through December 2011; (iii) for the JP Morgan Chase Bank account no. ending in 5601, all records prior to July 19, 2005, August 16, 2005 through September 16, 2005, and all records from October 18, 2005 through September 29, 2006, and all records from January 2008 through December 2011; (iv) for the JP Morgan Chase Bank account no. ending in 6401, all records prior to July 19, 2005, August 16, 2005 through September 16, 2005, and all records from October 18, 2005 through September 29, 2006, and all records from January 2008 through December 2011; (v) for the JP Morgan Chase Bank account no. ending in 7201, all records prior to July 19, 2005, August 16, 2005 through September 16, 2005, and all records from October 18, 2005 through September 29, 2006, and all records from January 2008 through December 2011; and (vi) for the Signature Bank account no. ending in 6926, all records from August 2005 through December 2011.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 13, 2013.

                                                    s/ Jay S. Hellman
                                                    JAY S. HELLMAN