**MILBERG LLP**
Jonathan M. Landers
Brad N. Friedman
Matthew Gluck
Sanford P. Dumain
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Attorneys for the Unofficial Committee of Certain Claim Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | District Court Case No. Civ. 08-10791 |
| Plaintiff, | Adv. Pro. No. 08-01789 (BRL) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | SIPA Liquidation |
| Defendant. | |

**RESPONSE OF THE UNOFFICIAL COMMITTEE OF CERTAIN CLAIM HOLDERS
IN OPPOSITION TO MOTION FOR AN ORDER MODIFYING THE
DECEMBER 23, 2008 ORDER ESTABLISHING DEADLINES FOR
THE FILING OF CUSTOMER CLAIMS [Dkt.  No. 80]**

# I.     INTRODUCTION

The Unofficial Committee of Certain Claim Holders ("Unofficial Claims Committee") hereby opposes the Motion for an Order Modifying the December 23, 2008 Order Establishing Deadlines for the Filing of Customer Claims [Dkt. No. 80] ("Motion"), filed on February 10, 2009 by Movants Lucerne Foundation, Collingwood Enterprises, and Douglas Rimsky ("Movants"). By their Motion, the Movants ask this Court to modify the mandatory claims bar date set forth in the Court's December 23, 2008 Order so that the Movants can file claims later, if and when the Trustee has obtained avoidance judgments against them. As discussed in greater detail below, the Court should deny the Motion for two reasons.

First, the request seeks special rights for former Madoff customers who have been paid in full -- rights unavailable to the thousands of Madoff customers who have lost billions of dollars. Allowing the Movants to delay the claims process so that they can "wait and see" if the Trustee pursues avoidance actions against them would be patently unfair to the thousands of other investors who have been financially decimated by the Madoff fraud and are compelled by financial necessity to submit claims prior to the claims bar date. Many of these investors are likewise concerned about potential avoidance actions, yet these investors have no choice but to timely submit claims or forego participation in the claims process. The Movants should not be permitted to leverage their good fortune in avoiding financial loss.

Second, in asking this Court to apply Bankruptcy Code Section 502(h) to alter the claims deadlines in this proceeding, the Movants fail to note that the Securities Investor Protection Act ("SIPA") *only* incorporates Bankruptcy Code provisions "to the extent consistent with the provisions of [SIPA]." 15 U.S.C. § 78fff(b). Section 502(h) cannot be applied here, because it conflicts with SIPA's specific and mandatory claims deadline set forth in 15 U.S.C. Section 78fff-2(a)(3), which seeks to further SIPA's goals of finality and certainty in the claims process.

## II.     BACKGROUND

On December 15, 2008, the United States District Court for the Southern District of New York entered an Order commencing the liquidation of Bernard L. Madoff Investment Securities LLC ("BMIS") pursuant to the Securities Investor Protection Act ("SIPA").  Among other things, the Order appointed Irving H. Picard as liquidation trustee ("Trustee") and removed the liquidation proceedings to this Court.

On December 23, 2008, the Court issued an Order authorizing the Trustee to disseminate notice, a claim form, and other related documents to customers and creditors of BMIS.  [Dkt. No. 12].  The Order, and the documents disseminated pursuant thereto, provided two deadlines for the submission of claims:  (1) a March 4, 2009 deadline for BMIS customers to file "net equity" claims seeking recovery under SIPA; and (2) a July 2, 2009 absolute deadline for filing all claims, including customer and general creditor claims.  By January 9, 2009, the Trustee had disseminated the notice and claim forms to BMIS customers and creditors in accordance with the Court's Order.  *See* Affidavit of Mailing [Dkt. No. 76].  Contrary to the "mass confusion" that the Movants contend the Order will cause, Motion at p. 9, to date, no one has objected to the Court's Order, except for the Movants.

The Movants ask this Court to modify its December 23, 2008 Order to provide that the deadlines provided therein are not applicable to the Movants, who redeemed the entirety of their BMIS investments prior to the filing of the petition.  Motion at p. 2.  Instead of complying with SIPA's express claims deadlines, the Movants argue that under Section 502(h) of the Bankruptcy Code, they should be allowed to "wait and see" if the Trustee brings an avoidance action against them, litigate it to judgment, and then file any claims resulting from the judgment within 30 days thereof.  This process could take years.

The Court should require the Movants, who are situated similarly to holders of contingent claims, to file their claims in accordance with the deadlines issued by the Court, or forego participating in the claims process.

## III.  ARGUMENT

### A.  The Movant's Request Conflicts With SIPA's Express Provisions

The Movants correctly note that Section 502(h) allows bankruptcy claimants to assert so-called "springing claims"[1] within 30 days after the judgment giving rise to such claims becomes final.  Motion at p. 3.  In urging that Section 502(h) is applicable in the present action, the Movants selectively cite 15 U.S.C. Section 78fff(b) which provides that Bankruptcy Code provisions are generally incorporated in a SIPA liquidation proceeding.  Motion at p. 7 (quoting 15 U.S.C. § 78fff(b)).  However, the Movants fail to note that Section 78fff(b) expressly provides that incorporation of Bankruptcy Code provisions is only proper "to the extent *consistent with* [SIPA]."  15 U.S.C. § 78fff(b) (emphasis added).  As discussed below, Section 502(h) directly conflicts with SIPA's mandatory claims deadline provision set forth at 15 U.S.C. Section 78fff-2(a)(3).

---

[1] The Movants argue that they do not yet possess a "claim" for which they can submit a claim form.  The Movants' argument fails because the Bankruptcy Code and case law define and interpret "claim" very broadly.  The Bankruptcy Code defines "claim" as the "right to payment, *whether or not such right is reduced to judgment*, liquidated, *unliquidated*, fixed, *contingent*, matured, *unmatured*, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A) (emphasis added).  In *In re Manville Forest Prods. Corp.*, 225 B.R. 862 (Bankr. S.D.N.Y. 1998) (Lifland, J.), relied upon by the Movants, the Court recognized the broad scope of this definition and held that an "unmature" or "contingent" agreement gave rise to a claim in bankruptcy.  *In re Manville Forest Prods. Corp.*, 225 B.R. 862, 866-68 (Bankr. S.D.N.Y. 1998) (Lifland, J.), *aff'd In re Manville Forest Prods.*, 209 F.3d 125 (2d Cir. 2000).  Although *Manville* involved an indemnity agreement, and is thus factually distinguishable from the Movants' circumstances, the Court noted that it "is irrelevant whether the event triggering the . . . liability under the [agreement] occurred before or after the petition was filed."  *Id*.  Similarly, the Movants need not wait for the Trustee to bring an avoidance action in order to submit a "claim" in bankruptcy.

SIPA Section 78fff-2(a)(3) expressly provides that "no claim . . . shall be allowed" after the six-month claims bar date, except where an application for an extension has been filed *before the claims bar date* by the government or by an infant or incompetent person.  15 U.S.C. § 78fff-2(a)(3).  Courts interpreting this provision have held that it is "immutable" and "mandatory."  *In re Government Sec. Corp.*, 95 B.R. 829, 833 (S.D. Fla. 1988); *see also In re Blinder, Robinson, & Co., Inc.*, 124 F.3d 1238, 1243 (10th Cir. 1997) ("The six-month time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory and absolute.").

Indeed, "[a] main reason for limiting the length of time within which claims may be filed in a SIPA liquidation proceeding is to achieve some degree of finality to the demand upon the SIPC fund."  *In re Government Secs. Corp.*, 107 B.R. 1012, 1019 (S.D. Fla. 1989).  "Concern for the prompt completion of the liquidation process and early certainty as to the extent of available assets and demands made against the assets, underscore the need for a strictly observed filing period."  *In re Government Secs. Corp.*, 95 B.R. 829, 832 (S.D. Fla. 1988) (holding that Bankruptcy Rule 3002(c)(2) and Section 502(j) of the Bankruptcy Code conflicted with SIPA Section 78fff-2(a)(3) and were thus inapplicable).

In accordance with SIPA Section 78fff(b), Courts have refused to apply bankruptcy provisions that conflict with the express claims deadlines provisions set forth in SIPA Section 78fff-2(a)(3).  *See In re Chicago P'ship Board, Inc.*, 236 B.R. 249, 260 (Bankr. N.D. Ill. 1999) ("Bankruptcy Rule 3002 does not apply to SIPA proceedings because it directly conflicts with § 78fff-2(a)(3) of SIPA, which provides that the claims of any customer or creditor must be filed prior to the six-month claims bar date."); *In re Government Secs. Corp.*, 107 B.R. at 1022 ("[E]ven if . . . Section 502(j) created an exception to the timely filing of claims, the Section would be inconsistent with SIPA and therefore not applicable."); *Miller v. Austin*, 72 B.R. 893, 897 (S.D.N.Y. 1987) ("[E]ven if the Bankruptcy Code presently provided for an express

exception to the time limits for filing, the provision would not be applicable to SIPC liquidations since it would contradict the clear words of SIPA.").

The application of Section 502(h), which would allow the Movants to file a claim within 30 days of judgment in an avoidance action, is in direct conflict with SIPA Section 78fff-2(a)(3), which provides that "no claim . . . shall be allowed" after the claims bar date.  15 U.S.C. § 78fff-2(a)(3).   In addition, application of Section 502(h) would undermine SIPA's objectives of promptness and finality.  If applied here, Section 502(h) could potentially allow the Movants to file SIPC and bankruptcy claims years from now, depending on how long an avoidance action would take to litigate to judgment.  Moreover, if the Movants are permitted to file their claims only after entry of judgment in an avoidance action against them, the Movants could attempt to force the Trustee to litigate those actions in courts other than the Bankruptcy Court.  There is a strong policy in favor of adjudicating claims issues and avoidance actions in the bankruptcy court, especially where, as here, the Movants are situated no differently from the thousands of other Madoff customers who anticipate avoidance actions, but who must file proofs of claim to recover their losses.  *Accord In re Investment Bankers, Inc.*, 4 F.3d 1556, 1562 (10th Cir. 1993) ("[S]ince the assets of the bankruptcy estate are mustered in the bankruptcy court, a strong reason exists for enabling the bankruptcy court to preside over trustee actions designed to augment the estate.").

The Movants have not cited any reported authority holding that Section 502(h) should alter SIPA's express and mandatory deadlines.  The numerous cases and orders to which the Movants cite were not issued in SIPA liquidation proceedings, but rather, traditional bankruptcy cases.  As such, Section 502(h)'s conflict with SIPA was not at issue, and this authority is inapplicable here.

**B.      The Requested Relief Would Be Patently Unfair to Other BMIS Customers, Who Have Been Compelled to Submit to the Claims Process Out of Financial Necessity**

The Movants argue that they should not have to file their claims by the claims bar date, but that they should instead be permitted to "wait and see" if the Trustee pursues an avoidance action against them. The Movants urge that this approach will allow them to preserve their right to a jury trial in any later filed avoidance action. Motion at 9.

In stark contrast to the Movants, who were paid in full by BMIS, thousands of other investors have been financially ruined by Madoff's fraud. Many of these investors have immediate and urgent financial concerns, such as mortgage payments and medical bills. Many of these investors are likewise concerned about potential avoidance actions, but must submit claims, out of financial necessity, for SIPC money.

By their Motion, the Movants are essentially seeking both special treatment in the claims process and an advisory opinion on claims-filing issues. To be sure, the claims process is fraught with risks and uncertainties with regard to potential avoidance actions and otherwise. The Movants must deal with these risks and uncertainties on a level playing field with all other investors. Accordingly, the Movants can either participate in the claims process and waive their right to a jury trial, or they can forego the claims process and preserve their right to a jury trial. *The Movants cannot have it both ways.* *See Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (U.S. 1989) ("[A] creditor's Seventh Amendment right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor submitted a claim against the estate."); *Accord Coated Sales, Inc. v. First Eastern Bank, N.A.*, 119 B.R. 452, 456 (Bankr. S.D.N.Y. 1990) (holding that creditor waived right to jury trial even where creditor waited until after avoidance action was filed against him before submitting a claim in bankruptcy because "the

order of filing a claim and commencement of an adversary proceeding is not determinative" to whether the right to a jury trial is waived).

The Movants' Motion amounts to a request for "guidance" on whether to file a claim now or later. If the Court denies the Motion, the Movants will presumably file their claims now. If the Court grants the Motion, the Movants will defer filing. The Movants' request for the Court's guidance on when to file a claim flies in the face of the Supreme Court's decisions in *Katchen v. Landy*, 382 U.S. 323 (U.S. 1966) and *Langenkamp v. Culp*, 498 U.S. 42 (1990), which make clear that holders of claims have a choice -- to file and submit to bankruptcy jurisdiction or to lose the claim. Neither case suggests that potential claimants should get to "wait and see."

The Unofficial Claims Committee would urge the Court not to grant relief that would encourage other parties to seek special dispensations from the Court. Indeed, the Second Circuit recently noted what might be considered adverse consequences of filing a proof of claim, without intimating in any way that claimants should be somehow relieved of these consequences. *In re CBI Holding Co*., 529 F.3d 432, 468 (2d Cir. 2008) (holding accounting firm waived right to jury trial where accounting firm submitted bankruptcy claim and debtor counterclaimed against it for malpractice, even though debtor's counterclaim sought damages in an amount 70 times the accounting firm's claim).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: February 20, 2009
      New York, New York

By:    /s/  Jonathan M. Landers
        Jonathan M. Landers
        jlanders@milberg.com
        Brad N. Friedman
        bfriedman@milberg.com
        Matthew Gluck
        mgluck@milberg.com
        Sanford P. Dumain
        sdumain@milberg.com
        MILBERG LLP
        One Pennsylvania Plaza
        New York, New York 10119
        (212) 594-5300

        SEEGER WEISS LLP
        Christopher A. Seeger
        Stephen A. Weiss
        One William Street
        New York, New York
        (212) 584-0700

        *Attorneys for the Unofficial*
        *Committee of Certain Claim Holders*

CERTIFICATE OF SERVICE

I, Jonathan M. Landers, hereby certify that on, February 20, 2009, the foregoing RESPONSE OF THE UNOFFICIAL COMMITTEE OF CERTAIN CLAIM HOLDERS IN OPPOSITION TO MOTION FOR AN ORDER MODIFYING THE DECEMBER 23, 2008 ORDER ESTABLISHING DEADLINES FOR THE FILING OF CUSTOMER CLAIMS [Dkt. No. 80] was electronically filed, and served upon the following by First Class Mail:

> Office of the United States Trustee
> 33 Whitehall Street, Suite 2100
> New York, NY 10004
>
> Securities Investor Protection Corporation
> 805 15th Street, N.W. Suite 800
> Washington, D.C. 20005-2215

_____/s/ Jonathan M. Landers_____
