David J. Sheehan (DS 4818)
Email: dsheehan@bakerlaw.com
Douglas E. Spelfogel (DS 7097)
Email: dspelfogel@bakerlaw.com
Marc Hirschfield (MH 1537)
Email: mhirschfield@bakerlaw.com
Richard J. Bernard (RB 6371)
Email: rbernard@bakerlaw.com
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone:    (212) 589-4200
Facsimile:     (212) 589-4201

Attorneys for Irving H. Picard, Esq.,
Trustee for the SIPA Liquidation of
Bernard L. Madoff Investment Securities
LLC

**Hearing Date and Time:  April 7, 2009 at 10:00 a.m.**
**Objection Deadline:  April 3, 2009 at 4:00 p.m**.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation |

**MOTION FOR ORDERS PURSUANT TO SECTION 78fff(a) OF THE SECURITIES INVESTOR PROTECTION ACT AND SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006: (A) FIXING THE TIME, DATE AND PLACE FOR THE BIDDING PROCEDURES HEARING; (B)(i) ESTABLISHING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF CERTAIN ASSETS, (ii) ESTABLISHING PROCEDURES IN RESPECT OF THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS, (iii) APPROVING THE FORM AND MANNER OF NOTICES, (iv) APPROVING THE ASSET PURCHASE AGREEMENT SUBJECT TO HIGHER AND BETTER OFFERS,**

**AND (v) SETTING A SALE HEARING DATE; (C)(i) APPROVING THE SALE OF
CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES (ii) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN UNEXPIRED LEASES AND EXECUTORY <u>CONTRACTS AND
(D) GRANTING RELATED RELIEF</u>**

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC (the "Debtor"), by and through his undersigned

counsel, for his motion (the "Motion") for entry of orders (A) fixing the time, date and place for

the bidding procedures hearing; (B)(i) establishing bidding procedures and bid protections in

connection with the sale of certain assets related to the market making operations of the Debtor,

(ii) establishing procedures in respect of the assumption and assignment of unexpired leases and

executory contracts, (iii) approving the form and manner of notices, (iv) approving the asset

purchase agreement (the "Agreement") subject to higher and better offers and (v) setting a sale

hearing date; (C)(i) approving the sale of certain assets of the Debtor free and clear of liens,

claims and encumbrances, (ii) authorizing the assumption and assignment of certain unexpired

leases and executory contracts and (D) granting related relief, and respectfully represents:

<u>**JURISDICTION AND VENUE**</u>

1.       This Court has jurisdiction over the Motion pursuant to Section 78eee(b)(4) of the

Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the order

(the "Protective Decree") entered on December 15, 2008 [Docket No. 1] by the Honorable Louis

L. Stanton, United States District Judge, United States District Court for the Southern District of

New York in Case No. 08 CV 10791, and 28 U.S.C. §§ 157 and 1334.  Venue of this case is

proper in this district pursuant to Section 78eee(b)(4) of SIPA and 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are sections 78fff(a) of SIPA, sections 105,

---

[1] Hereinafter, reference to SIPA shall omit "15 U.S.C."

363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy

Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2.      On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange

Commission ("SEC") filed a complaint in the United States District Court for the Southern

District of New York (the "District Court") against defendants Bernard L. Madoff and the

Debtor (together, the "Defendants") (Case No. 08 CV 10791).  The complaint alleged that the

Defendants engaged in fraud through investment advisor activities of the Debtor.

3.      On December 12, 2008, the Honorable Louis L. Stanton of the United States

District Court for the Southern District of New York entered an order which appointed Lee S.

Richards, Esq. as receiver (the "Receiver").

4.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC

filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protection afforded by SIPA.

5.      On that date, the District Court entered the Protective Decree, to which BLMIS

consented, which, in pertinent part:

(a)      appointed the Trustee for the liquidation of the business of the Debtor pursuant to
         section 78eee(b)(3) of SIPA;

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced."  Section 78*lll*(7)(B).  Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

- 3 -

(b)      appointed Baker & Hostetler, LLP ("B&H") as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(c)      removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

6.      On December 18, 2008, the District Court entered the Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants (the "Preliminary Injunction Order").  Among other things, the Preliminary Injunction Order clarified that the Receiver is only appointed as to assets concerning the London entity, Madoff Securities International Ltd.

## SALE PROCESS

7.      Since his appointment, the Trustee has been working diligently to investigate, identify, examine and evaluate the Debtor's activities, assets, rights, liabilities, customers and other creditors.  As a result of his investigation to date, the Trustee has determined that the Debtor's market making operations are potentially productive units of the Debtor.  The Trustee has concluded that it is in the best interests of the Debtor's estate, customers and creditors, and also that it is his duty pursuant to section 78fff of SIPA, to sell the market making operations.

8.      On December 19, 2008, the Trustee, with the approval of the Securities Investor Protection Corporation, hired Lazard Freres & Co. LLC ("Lazard") as the investment banker to market and locate a buyer for the Debtor's market maker assets.

9.      Shortly thereafter, the Trustee issued a press release regarding the retention of Lazard and the sale of the market maker assets.  Lazard also contacted approximately one hundred (100) customers of the trading and market making business, private equity firms, hedge funds, and other strategic buyers to solicit interest from potential bidders.

10.      Immediately following the retention of Lazard, B&H and Lazard engaged in due diligence and extensive document review to prepare an online data room.

11.     In late December 2008, B&H and Lazard began to send out packages with informational materials to potential bidders, along with non-disclosure agreements ("NDAs"). Forty-six (46) potential bidders executed NDAs and returned them to B&H.

12.     Access to the data room was granted to potential bidders who executed a NDA.

13.     B&H and Lazard worked with the employees of the Debtor's market making business to prepare and give seven management presentations to potential bidders.

14.     To date, four offers have been received for these assets, and the Trustee entered into extensive negotiations with the offerors to maximize these offers and the returns for the benefit of the Debtor's estate, customers and creditors.

15.     Ultimately, after a reasonable period of marketing under the circumstances and negotiations with other parties, the Trustee selected Castor Pollux Securities, LLC (the "Purchaser") to serve as the "stalking horse" bidder in the proposed auction (the "Auction"). The Trustee and the Purchaser have agreed to the terms and conditions contained in the proposed form of Agreement, a copy of which is annexed hereto as Exhibit "A," pursuant to which the Trustee proposes to sell certain assets related to the Debtor's market making operations. [3]

### **RELIEF REQUESTED**

16.     By this Motion, the Trustee seeks the following relief:

(a)     That the Court enter an order substantially in the form attached hereto as Exhibit "B" (the "Bidding Procedures Order"), (a) setting a hearing as soon as practicable, but no later than April 30, 2009 (the "Bidding Procedures Hearing"), to consider approval of the relief requested herein, (b) establishing bidding procedures and bid protections (the "Bidding Procedures"), (c) approving procedures in respect of the Trustee's assumption and assignment of certain unexpired leases and executory contracts, (d) approving the form and manner of the notice of sale and Bidding Procedures (the "Sale Notice"), and (e) setting a hearing as soon as practicable, but no later than May 30, 2009 (the "Sale Hearing"), to consider approval of the sale transaction (the "Sale Transaction").

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

(b)     That the Court enter an order pursuant to section 78fff(a)(2) of SIPA and sections 105(a) and 363 of the Bankruptcy Code substantially in the form attached hereto as Exhibit "C" (the "Sale Order"), (a) approving the Agreement, (b) approving the Trustee's assumption and assignment of certain unexpired leases and executory contracts, (c) approving the sale of the Acquired Assets (as defined in the Agreement) free and clear of liens, claims and encumbrances, and (d) granting related relief.

## **PROPOSED SALE**

17.     The Agreement sets forth the terms of the sale of certain assets related to the

Debtor's market making operations, subject to higher and better offers, free and clear of liens,

claims, interests and encumbrances.  The following is a summary of certain salient provisions of

the Agreement and is qualified entirely by reference to the Agreement itself.[4]

(a)     <u>Purchase Price.</u>  The total consideration for the Acquired Assets (the "Purchase Price") shall be (i) Five Hundred Thousand Dollars ($500,000) (the "Closing Payment"); <u>plus</u> (ii) certain additional payments totaling up to Three Million Dollars ($3,000,000) (the "Revenue Earn-Out Payments") <u>plus</u> (iii) certain additional payments (the "Trading Earn-Out Payments") in an amount determined in accordance with and pursuant to the terms and conditions of Section 4.l(c) of the Agreement.  The maximum total consideration under the Agreement, representing the sum of the Closing Payment, the Revenue Earn-Out Payments and the Trading Earn-Out Payments, totals Fifteen Million Five Hundred Thousand Dollars ($15,500,000).

(b)     <u>Purchased Assets.</u>  Under the Agreement, the Trustee will transfer all right, title and interest in the Acquired Assets as set forth in Section 2.1 of the Agreement, which Acquired Assets include, among other things, contracts set forth on Schedule 2.1(a) of the Agreement, information technology assets set forth on Schedule 2.1(b) of the Agreement, intellectual property set forth on Schedule 2.1(c) of the Agreement, the customer information primarily related to the Business and all rights of the Trustee to other assets primarily related to the Business.

(c)     <u>Assumed Liabilities.</u>  The Purchaser shall assume and perform in accordance with their terms, the Designated Contracts to the extent the obligations to be performed are attributable to the period subsequent to the Closing Date.

---

[4] The following summary of the Agreement is provided for the convenience of the Court and the parties in interest. To the extent that there are any discrepancies between this summary and the Agreement, the terms and language of the Agreement shall govern.

(d)     <u>Leases and Contracts.</u>  Only the Designated Contracts (as set forth in Schedule 2.1(a) of the Agreement) will be assumed and assigned to the Purchaser.

(e)     <u>Representations and Warranties.</u> The Trustee makes representations or warranties to the Purchaser only with respect to (i) authorization, (ii) title, (iii) intellectual property owned or licensed by the Debtor to the Trustee's Knowledge and (iv) employment of brokers, as described in Article 5 of the Agreement and disclaims any other representations, warranties or statements made or information communicated to the Purchaser.  Except for the limited representations and warranties in Article 5 of the Agreement, the Acquired Assets are being sold on an "as is" and a "where is" basis.  The Purchaser has represented and warranted that it is a Delaware limited liability company and, subject to satisfaction of the conditions and requirements under the Agreement, has the requisite power and authority to consummate the transactions contemplated thereunder.

(f)     <u>Termination Rights.</u>   The parties may terminate the Agreement by mutual agreement or the Agreement may be terminated by either party in the event that (i) a permanent injunction or other order of any Governmental Entity which prevents the consummation of the transactions contemplated hereby shall have become final and non-appealable, (ii) the Procedures Order is not entered by April 30, 2009 or the Procedures Order is not a Final Order by May 11, 2009, (iii) the Sale Order is not entered on or before May 30, 2009 or the Sale Order is not a Final Order by June 11, 2009, (iv) the transaction has not closed within seven (7) days after the date the Sale Order becomes a Final Order, (v) the Court approves an Alternative Transaction or an Alternative Transaction is consummated or (vi) there is a material breach of any of the representations, warranties, covenants or other agreements set forth in the Agreement, which breach is not curable within five (5) days of notice of such breach or is uncurable.  The Purchaser may terminate the Agreement if there is a dismissal of the Bankruptcy Case.

18.     The Trustee submits that the above proposed sale provides for the highest and best return for the Acquired Assets after an extensive marketing effort.

### **PROPOSED BIDDING PROCEDURES, AND AUCTION PROCEDURES**

19.     Consistent with and as required by the Agreement, the Trustee proposes the Bidding Procedures, which are designed to maximize the value of the Acquired Assets for the Debtor's estate, customers, creditors and other interested parties.  Specifically, as discussed in more detail below, the Purchaser has entered into the Agreement, which is subject to higher and better offers.  In that regard, the Purchaser has expended time, effort and resources conducting

due diligence and negotiating the Agreement. Accordingly, the Trustee seeks, and the Purchaser requires, the entry of the Bidding Procedures Order.

20.    The Trustee proposes that competing offers for the Acquired Assets be governed by the following Bidding Procedures.[5]

(a)    Any entity that wishes to make a bid for Acquired Assets must provide the Trustee with sufficient and adequate information to demonstrate, to the absolute satisfaction of the Trustee, that such competing bidder (i) has the financial wherewithal and ability to consummate the Sale Transaction including evidence of adequate financing, and including a financial guaranty, if appropriate, and (ii) can provide all non-debtor contracting parties to the Designated Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code. Any party satisfying such criteria shall be designated as a "Qualified Party." Any Qualified Party shall be permitted to conduct reasonable due diligence for purposes of making a competing bid, subject to executing an appropriate confidentiality agreement.

(b)    The Trustee shall entertain competing offers ("Competing Bids") that are substantially the same terms and conditions as those set forth in the Agreement and the documents set forth as exhibits thereto. Any entity that wishes to submit a competing bid must provide the Trustee and the Purchaser with a marked version of the Agreement indicating any changes made thereto.

(c)    Competing Bids must be (a) in writing and (b) served upon (i) counsel to the Trustee, Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111 (Attn: Douglas E. Spelfogel, Esq., Marc Hirschfield, Esq. and Richard J. Bernard, Esq.), and (ii) be served upon counsel to the Purchaser, Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Jolie M. Siegel, Esq. and William S. McMahon, Esq.) so that such bid is received by such parties no later than two days prior to the date of the Auction (the "Competing Offer Deadline"). Parties not submitting Competing Bids by the Competing Offer Deadline, together with the required information and deposit as provided for under this Order shall not be permitted to participate at the Auction.

(d)    Competing Bids must be accompanied by a good faith earnest money deposit in the amount of 10% of the closing payment, in the form of a certified or cashier's check made payable to IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES

---

[5] The summary description of the Bidding Procedures provided herein is provided for the convenience of the Court and the parties in interest. To the extent that there are any discrepancies between this summary and the Bidding Procedures Order, the terms and language of the Bidding Procedures Order shall govern. Unless otherwise defined herein, capitalized terms defined in the Bidding Procedures shall have the meaning ascribed to them in the Bidding Procedures Order or the Agreement.

LLC. All such deposits shall be retained by the Trustee (but the checks will not be cashed) pending the hearing to consider the Sale Motion and except for the two (2) highest offers, shall be returned as soon as practicable after entry of an order by the Court approving the Sale. The Trustee shall hold the deposits of the winning bidder ("Winning Bidder") and the maker of the next highest bid (the "Alternate Bidder") (as determined by the Trustee and accepted by the Court) and apply the deposit of the Winning Bidder to the Purchase Price at Closing. In the event that the Trustee does not close with the Winning Bidder, the Trustee may close with the Alternate Bidder with that bidder's deposit being credited towards the Purchase Price at closing. As soon as practicable after the Closing, the remaining deposit of the Winning Bidder or the Alternate Bidder as the case may be, shall be returned to that bidder, except as otherwise provided herein or in the purchase agreement with such bidders.

(e)    If there are any Competing Bids that are submitted in accordance with the above-referenced requirements, including within the required deadlines and together with a good faith deposit, then such Competing Bids shall be considered at the open auction (the "Auction") to be held at the offices of Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, 11th floor, or in such manner and at such alternative location as the Trustee may determine or the Court may direct, one day prior to the Sale Hearing, commencing at 10:00 a.m. (EDT).

(f)    Any Competing Offer shall be in an amount at least equal to $550,000 in cash plus additional consideration with a present value equal to at least the value provided by the Purchaser, as determined in the Trustee's sole and absolute discretion (with additional consideration for the Designated Cure Amount set forth in the Agreement) and must be presented under a contract substantially the same, except as to purchase price, as the Agreement, and such bid must not be subject to due diligence or financing contingencies.

(g)    The Trustee shall, after the Competing Offer Deadline and prior to the Auction, evaluate all bids received, and determine which bid reflects the highest or best offer for the Acquired Assets. The Trustee shall announce such determination at the commencement of the Auction and then the Trustee shall conduct the Auction among the parties submitting Competing Bids to determine if any higher or better offer might be obtained. Any further bids made at the Auction shall be in increments of at least $35,000 greater than the preceding bid. The Acquired Assets are being offered for sale in lots and in the aggregate, bids will be accepted for individual lots and in the aggregate. The Trustee will evaluate which is the highest and best bid for the Acquired Assets by comparing total individual bids and aggregate, individual bids.

(h)    If there is a successful competing bidder for the Acquired Assets, such Winning Bidder shall be bound by all of the terms and conditions of the Agreement with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction.

(i)     In the event that a competing bidder is the Winning Bidder (as determined by the Trustee and accepted by the Court) and such Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Trustee (but not as liquidated damages, the Trustee reserving the right to pursue all remedies that may be available to him) and the Trustee shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Trustee may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Bankruptcy Court.

(j)     In the event that the Agreement is terminated pursuant to Section 12.1(e) of the Agreement, the Trustee shall pay Purchaser a fee of Fifteen Thousand Dollars ($15,000), inclusive of reimbursement of Purchaser's expenses, including attorneys, investment banking, accounting and other professional fees and expenses incurred in pursuit of its bid (the "Break-Up Fee") to compensate the Purchaser for its efforts in connection with it being the "stalking horse" bidder for the Acquired Assets, including the costs of the Purchaser incurred in performing due diligence, negotiating and documenting the terms of this Agreement and representing its interests with respect to the proposed sale and Trustee's Bankruptcy Case.  The Break-Up Fee shall be paid exclusively from the proceeds of the Alternative Transaction and shall be paid within 10 days of any closing in connection with the Acquired Assets and without further order or application to the Bankruptcy Court.   The Break-Up Fee shall constitute a first priority administrative expense of the Trustee pursuant to Section 503(b) of the Bankruptcy Code.

(k)     All bids for the purchase of the Debtor's Acquired Assets shall be subject to approval of the Bankruptcy Court and SIPC.  The offer of the Winning Bidder, together with the Alternate Bidder's offer, shall be presented to the Bankruptcy Court at a hearing to confirm the sale of the Acquired Assets.

(l)     No bids shall be considered by the Trustee or the Bankruptcy Court unless a party submitted a Competing Offer in accordance with the Bidding Procedures and participated in the Auction.  The Trustee, in his absolute discretion, may reject any Competing Bids not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Court, or contrary to the best interests of the Debtor's estate, customers, creditors and parties of interest.

(m)     All bids are irrevocable until the earlier to occur of: (i) the closing of the Sale Transaction, or (ii) thirty (30) days following the last date of the Auction (as such Auction may be adjourned).

(n)     All bids are subject to such additional terms and conditions as are announced by the Trustee at the outset of the Auction, provided that such terms and conditions do not conflict with the provisions hereof

## **BID PROTECTIONS**

21.    By and through this Motion, the Trustee is seeking the authority to implement the Break-Up Fee and topping bid (collectively, the "Bid Protections").  The Trustee believes that the Bid Protections are fair and reasonable (a) in view of the analysis and negotiation undertaken by the Purchaser in connection with the transaction contemplated by the Agreement and (b) because the efforts of the Purchaser have increased the chances that the Trustee will receive the highest or otherwise best offer for the Acquired Assets by establishing a minimum bid for other bidders, subjecting the Acquired Assets to an open auction and serving as a catalyst for other potential or actual bidders.   Thus, the Bid Protections benefit the Debtor's estate, customers, creditors and parties in interest.

22.    The Purchaser is unwilling to commit to hold open its offer to purchase the Acquired Assets under the terms of the Agreement unless the Bid Protections are approved. Accordingly, the Trustee requests that the Court approve the Bid Protections, including payment of the Break-Up Fee pursuant to the terms and conditions of the Agreement.

## **ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

23.    In connection with the Sale Transaction, the Trustee seeks authority under section 365 of the Bankruptcy Code to (a) assume and assign the Designated Contracts and (b) execute and deliver to the Purchaser (or the Winning Bidder, as the case may be) such documents or other instruments as may be necessary to assign and transfer the Designated Contracts as of the date of the Closing on the Agreement (and expressly subject to Closing).  The Trustee identified the amounts (the "Cure Amounts") necessary to cure all defaults required for assumption and assignment of the Designated Contracts as set out in the schedule attached hereto as Exhibit "D"

(the "Cure Amounts Schedule"). The Cure Amounts Schedule will be served upon each of the subject counter parties no later than the date for mailing of the Sale Notice.

24.  By and through this Motion, the Trustee is seeking authority to assume any and all Designated Contracts following and subject to the Closing, and to assign all such contracts to the Purchaser.

25.  Under the Agreement, the Trustee will be liable for any and all amounts necessary to cure any pre-Closing defaults. The Trustee requests that the Court require any non-debtor party who objects to the Cure Amounts set forth on the Cure Amounts Schedule file an objection to the Cure Amount with respect to such Designated Contract, state with specificity the nature of the objection and the amount of the alleged cure amounts and include appropriate supporting documentation demonstrating the calculation of the cure amounts as claimed not later than the Cure Objection Deadline as provided for below. The Trustee requests that any such objections be (a) filed with the Court and (b) served upon (i) counsel for the Trustee, Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111 (Att: David J. Sheehan, Esq., Douglas E. Spelfogel, Esq., Marc Hirschfield, Esq. and Richard J. Bernard, Esq.), and (ii) the Securities Investor Protection Corporation, 805 Fifteenth Street, NW, Suite 800, Washington, DC 20005 (Att: Kevin H. Bell, Esq.), no later than two (2) days prior to the date of the Auction (the "Cure Objection Deadline").

26.  If no objection to the Cure Amount is timely received in accordance with the preceding paragraph, or if a timely objection is received but is not in compliance with the foregoing requirements, the Trustee requests that the Court find that the Cure Amounts set forth on the Cure Amounts Schedule shall be controlling, notwithstanding anything to the contrary in any debt instrument, proof of claim (whether formal or informal), or other document or

102643296                                - 12 -

instrument.  If no objection to a Cure Amount is filed in accordance with the foregoing procedures, the Trustee requests that the Court find that any non-debtor party to an Designated Contract shall be barred and permanently enjoined from asserting any in excess of such Cure Amount.  The Trustee proposes that any objection to any Cure Amount shall be heard at the Sale Hearing.

27.    The Trustee requests that the Court hold that any non-debtor party to a Designated Contract shall have the right to seek adequate assurance of performance by the Purchaser of such Designated Contract by filing, prior to the deadline for objecting to the proposed Sale Order, such request with the Court and serving (i) the attorneys for the Trustee, Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111 (Attn: David J. Sheehan, Esq., Douglas E. Spelfogel, Esq., Marc Hirschfield, Esq. and Richard J. Bernard, Esq.), and (ii) the Securities Investor Protection Corporation, 805 Fifteenth Street, NW, Suite 800, Washington, DC 20005 (Attn: Kevin H. Bell, Esq.), and (iii) the attorneys for the Purchaser, Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Jolie M. Siegel, Esq. and William S. McMahon, Esq.), indicating what adequate assurance it requires from the Purchaser.

28.    If no such requests for adequate assurance are timely filed, the Trustee requests that the Court find that the Purchaser shall be deemed to have provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.  If any such requests are filed, the Trustee proposes that the Court, at the Sale Hearing, determine whether the Purchaser has provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.

29.    The Trustee believes that those procedures and deadlines are fair and reasonable, and will provide sufficient notice to the non-debtor parties to the Designated Contracts.  These procedures are designed to provide certainty to the Trustee and the non-debtor parties to the

Designated Contracts regarding their obligations and rights in respect of the Cure Amounts.

Accordingly, the Trustee requests that the Court approve the foregoing procedures and deadlines.

## NOTICE OF SALE, AUCTION AND BIDDING PROCEDURES

30.    Assuming the Court enters the proposed Bidding Procedures Order, the Trustee,

within one (1) day, will serve a copy of this Motion, the proposed Bidding Procedures Order, the

proposed Sale Order and all exhibits to such orders upon the following persons by first-class

mail, postage prepaid to (i) the Securities Investor Protection Corporation, (ii) the Securities and

Exchange Commission; (iii) the United States Attorney for the Southern District of New York;

(iv) all non-debtor contracting parties with respect to the Designated Contracts; (v) all

appropriate federal, state and local taxing authorities; (vi) all known persons holding a lien on

any of the Acquired Assets; and (vii) via the ECF filing that will be made, to each person or

entity that has filed a notice of appearance in this case (collectively, the "Bidding Procedures

Parties").

31.    No later than one day after entry of the Bidding Procedures Order, the Trustee

shall cause the form of Sale Notice, a copy of which is annexed hereto as Exhibit "E" to be

served on all parties who have made written expressions of interest in acquiring the Acquired

Assets in the past three (3) months (collectively, the "Auction Notice Parties").

32.    No later than one day after the entry of the Bidding Procedures Order, the Trustee

shall post the Bidding Procedures Order and the Sale Notice on the Trustee's website,

www.madofftrustee.com.

33.    The Trustee believes that the foregoing notice is sufficient to provide effective

notice of the Bidding Procedures, the Auction and the proposed sale to potentially interested

parties in a manner designed to maximize the chance of obtaining the broadest possible

participation in the Auction while minimizing costs to the estate. Accordingly, the Trustee requests that the Court find that notice in this manner is sufficient and that no further notice of the Auction, the Bidding Procedures or the proposed sale is required.

## BASIS FOR RELIEF REQUESTED

A.     SIPA requires a sale of the Acquired Assets.

34.     Section 78fff(a) of SIPA governs the purposes of a SIPA liquidation and provides in relevant part that: "[t]he purposes of a liquidation proceeding under this chapter shall be . . . (2) to sell or transfer offices and other productive units of the business of the debtor . . . and (4) to liquidate the business of the debtor." Thus, the Trustee has an affirmative duty to sell potentially viable business units.

B.     The proposed sale is within the Trustee's sound business judgment and should therefore be approved.

35.     The Trustee submits that ample authority exists for the approval of the Sale Transaction to the Purchaser pursuant to the Agreement, or to such other purchaser submitting a higher and better offer for the Acquired Assets. Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside the ordinary course of its business. That section provides in pertinent part, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b). While Section 363(b) is devoid of any standards to be applied to a trustee's request to sell assets, a wide body of case law has evolved containing the judicial standards governing sales of assets.

36.     In In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit determined that a sale of assets could be approved if the debtor could demonstrate an "articulated business justification"

102643296                            - 15 -

for the sale. Id. at 1070.  The court further held that the factors to be considered in determining

whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed
> time since the filing, the likelihood that a plan of reorganization will be proposed
> and confirmed in the near future, the effect of the proposed disposition on future
> plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis
> any appraisals of the property, which of the alternatives of use, sale or lease the
> proposal envisions and, most importantly perhaps, whether the asset is increasing
> or decreasing in value.

Id. at 1071.

37.    The Lionel decision has been widely accepted and applied by numerous other

courts facing a trustee's request to sell assets, including requests to approve a sale of certain of

the assets of a debtor's estate. See e.g., In re the Delaware & Hudson Ry. Co., 124 B.R. 169 (D.

Del. 1991); In re Eng'g Prod. Co., 121 B.R. 246 (Bankr. E.D. Wis. 1990);  In re Thomson

McKinnon Sec., Inc., 120 B.R. 301 (Bankr. S.D.N.Y. 1990); In re Channel One

Communications, 117 B.R. 493 (Bankr. E.D. Mo. 1990); In re Brethren Care, 98 B.R. 927

(Bankr. N.D. Ind. 1989).  As will be demonstrated below, application of the above-listed factors

demonstrates that approval of the Agreement is warranted at this time.

38.    In addition to requiring sound business reasons to approve a sale pursuant to

section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be

obtained for the assets be fair and reasonable; that the sale to the proposed purchaser was

negotiated in good faith; and that it does not unfairly benefit insiders, the purchaser, or a certain

creditor or class of creditors.  See, e.g., In re Channel One Communications, 117 B.R. at 494-97;

In re Indus. Valley Refrig. & Air Cond. Supplies, Inc., 77 B.R. 15 (Bankr. E.D. Pa. 1987).

39.    The Trustee and the Purchaser negotiated the Agreement in good faith, at arms' length, and with a view towards maximizing the value of the Debtor's estate for the benefit of all customers, creditors and parties in interest.

40.    The Trustee is confident that the Purchase Price is the best achievable under the present circumstances.    Nevertheless, the Agreement is subject to higher and better offers, thereby ensuring that the best possible offer has been or will be received.

41.    Many courts require that "fair and accurate notice" be given of the proposed sale under section 363(b) of the Bankruptcy Code.    See, e.g., In re Delaware & Hudson Ry., 124 B.R. at 176; Channel One, 117 B.R. at 496 (Bankr. E.D. Mo. 1990); Naron & Wagner, Chartered, 88 B.R. 85, 88 (Bankr. D.Md. 1988).    Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon the debtor's business; and explain why the sale is in the best interests of the debtor's estate. Delaware & Hudson, 124 B.R. at 180; see also, Naron & Wagoner, 88 B.R. at 88.

42.    The Trustee submits that the notice given herein alerted parties in interest to the sale contemplated by the Agreement, described and explained all material terms thereof, and explained the effect of the sale on the Debtor's business.

C.    The Purchaser is a good faith purchaser and is entitled to the protections of section 363(m) of the Bankruptcy Code.

43.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

- 17 -

11 U.S.C. § 363(m).

44.     Although the Bankruptcy Code does not define "good faith," in In re Colony Hill

Assocs., 111 F.3d 269 (2d Cir. 1997), the Second Circuit held that:

> The "good faith" component of the test under § 363(m) speaks to the equity of
> [the bidder's] conduct in the course of the sale proceedings.  Typically, the
> misconduct that would destroy a purchaser's good faith status at a judicial sale
> involves fraud, collusion between the purchaser and other bidders of the trustee,
> or an attempt to take grossly unfair advantage of other bidders.

111 F. 3d at 276 (quoting In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir.

1978)) (internal quotations omitted).

45.     As set forth above, the Purchaser was selected by the Trustee after aggressively

seeking other potential purchasers, engaging in extensive negotiations and determining that the

terms of the Purchaser's bid were the most favorable option.  The Agreement is a product of

extensive arms-length negotiations and was not in any way tinted by fraud, collusion or bad

faith.  Accordingly, the Trustee requests that the Court make a finding that the Purchaser is

entitled to the protections of section 363(m) of the Bankruptcy Code.

D.      The sale satisfies the requirements of section 363(f) of the Bankruptcy
        Code for a sale free and clear of liens, claims, encumbrances and interests.

46.     The Trustee seeks authorization to sell the Acquired Assets to Purchaser free and

clear of all liens, claims and encumbrances.  The Acquired Assets may be sold free and clear of

liens in accordance with section 363(f) of the Bankruptcy Code, which provides, in pertinent

part:

> (f) The trustee may sell property under subsection (b) or (c) of this section free
> and clear of any interest in such property of an entity other than the estate, only if,
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of
> such interest;
>
> (2) such entity consents;

102643296                                      - 18 -

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

47.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the Sale Transaction free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests.  The Trustee submits that, the Agreement provides that all liens, to the extent that any such liens exist, will attach to the proceeds of the sale in the order of their priority and to the extent of their validity.  As such, the rights of secured creditors are preserved.  Thus, the Acquired Assets may be sold free and clear of such liens pursuant to section 363(f)(3) of the Bankruptcy Code.  In re General Bearing Corp., 136 B.R. 361 (Bankr. S.D.N.Y. 1992); In re Oneida Lake Development, Inc., 114 B.R. 352 (Bankr. N.D.N.Y. 1990).

E.     The assumption and assignment of Designated Contracts should be authorized.

48.     Under section 365(a) of the Bankruptcy Code, a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(f) of the Bankruptcy Code provides that a trustee may assign an executory contract or unexpired leased of the debtor only if (a) the trustee assumes such contract or lease in accordance with the provisions of section 365, and (b) adequate assurance of future performance by the assignee of such contract or lease is provided.  11 U.S.C. § 365(f)(2).

49.     Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor.  This subsection provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee;

(A) cures or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provide adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

50.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir. 1993).

51.     When an executory contract or lease is to be assumed and assigned, adequate assurance may be provided by, among other things, demonstrating the financial health of the assignee and its experience and ability in managing the type of enterprise or property assigned. See e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when a prospective assignee of a lease from a debtor has financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of success).

52.     To the extent that any defaults exist under any Designated Contracts, the Trustee will cure, or provide adequate assurance of cure of, such defaults within the meaning of section 365(b)(1)(A) and in accordance with the Agreement.  The Trustee will demonstrate facts at the Sale Hearing that show the Purchaser's (or the Winning Bidder's, as the case may be) financial credibility, experience in the industry, and willingness and ability to perform under the

Designated Contracts.  Therefore, the Sale Hearing will provide the Court and other interested parties with an opportunity to evaluate and, if necessary, challenge the ability of the Purchaser (or the Winning Bidder, as the case may be) to provide adequate assurance of future performance under the Designated Contracts.  Accordingly, the Trustee submits that the within assumption and assignment of the Designated Contracts as set forth herein should be approved.

F.      <u>The Court should waive or reduce the ten day stay periods required by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.</u>

53.      Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after the entry of the order.  Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order can be implemented.  <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

54.      Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10 day stay period, Collier suggested that the 10 day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., 6004.09 (L. King, 15th rev. ed. 2005).  Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  <u>Id.</u>

55.      Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a trustee to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for 10 days, unless the court orders otherwise.

102643296                                    - 21 -

56.     To preserve the value of the Acquired Assets and limit the costs of administering and preserving the Acquired Assets, it is critical that the Trustee close the Sale Transaction as soon as possible after all closing conditions have been met or waived.  Accordingly, the Trustee hereby requests that the Court waive the 10 day stay periods under Bankruptcy Rules 6004(g) and 6006(d), or in the alternative, if an objection to the sale or to the assignment of a contract or lease is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal to allow the sale to close as provided under the Purchase Agreement.

G.     Conducting an auction pursuant to the Bidding Procedures is in the best interests of the Debtor's estate, customers, creditors and interested parties.

57.     In order to maximize the value of the Acquired Assets for the benefit of the Debtor's estate, customers and creditors, the Trustee seeks to implement a competitive bidding process typical for transactions of this size and nature and designed to generate a maximum recovery.  The Trustee believes that the Auction and proposed Bidding Procedures will encourage participation by financially capable bidders that demonstrate the ability to close a transaction.  Furthermore, the Bidding Procedures are consistent with other procedures previously approved by courts, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. See e.g., In re Kmart, Case No. 02-B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002); In re Global Crossing, Case No. 02-40188 (S.D.N.Y. March 25, 2002) (REG); In re Randall's Island Family Golf Ctrs., Inc., 261 B.R. 96 (S.D.N.Y. 2001), aff'd, 272 B.R. 521 (S.D.N.Y. 2002); In re Integrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992).

H.     The Bid Protections are warranted.

58.     The Trustee proposes that if overbidding occurs at the Auction, the Purchaser shall have the right, but not the obligation, to participate in the overbidding subject only to the

limitations provided by the Bidding Procedures. However, to compensate the Purchaser for serving as a "stalking horse," thereby subjecting its bid to better or higher offers, the Trustee and the Purchaser seek authority for the Trustee to pay the Purchaser the Break-Up Fee if an Alternative Transaction is approved or consummated or there is a material breach by the Trustee preventing a Closing as provided for in the Agreement. The Trustee and the Purchaser believe that the Bid Protections are (a) fair and reasonable, given the benefits to the estate of having a definitive Agreement and the risk to the Purchaser that a third-party offer may ultimately be accepted and (b) are necessary to preserve the value of the Debtor's estate.

59.    Bidding incentives such as the modest Break-up Fee encourage a potential purchaser to invest the requisite time, money and effort to conduct due diligence and sale negotiations with the Trustee despite the inherent risks and uncertainties of the bankruptcy process. See e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding bidding incentives may be "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citations omitted); In re Marrose Corp., 89 B 12171-12179 (CB), 1992 WL 33848, at * 5 (Bankr. S.D.N.Y. 1992) (stating that "[a]greements to provide breakup fees of reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers.").

60.    The Trustee submits that the Bid Protections are a normal and necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. See e.g., In re Kmart, Case No. 02 B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002) (authorizing a termination fee and bid protections for potential bidders); In re Comdisco, Inc., Case No. 01 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, *inter*

*alia*, an actual and necessary cost and expense of preserving the debtor's estate, of substantial

benefit to the debtor's estate, and a necessary inducement for, and a condition to, the proposed

purchaser's entry into the purchase agreement.); <u>In re Integrated Resources, Inc.</u>, 147 B.R. 650

(S.D.N.Y. 1992) (approving an overbid requirement in an amount equal to the approved break up

fee); <u>In re Kupp Acquisition Corp.</u>, Case No. 96 1223 (PJW) (Bankr. D. Del. March 3, 1997).

61.    Here the proposed Break-up Fee is Fifteen Thousand Dollars ($15,000).  Thus,

considering the total expected compensation to be paid to the Trustee, the Break-up Fee is within

or below the range of fees typically paid in other significant sales transactions that have been

consummated in a bankruptcy setting.  <u>See</u> <u>e.g.</u>, <u>Consumer New & Bus. Channel P'ship v.</u>

<u>Financial News Network, Inc. (In re Financial News Network, Inc.)</u>, 980 F.2d 165, 167 (2d Cir.

1992) (noting that transaction at issue provided for an $8.2 million breakup fee on a $149.3

million transaction (5.5%)); <u>Doehring v. Crown Corp. (In re Crown Corp.)</u>, 679 F.2d 774 (9th

Cir. 1982) (bid protection of 4.9% approved).  Further, the amount of the Break-up Fee is

reasonably calculated to compensate the Purchaser (a) for committing the time to perform due

diligence, (b) for lost opportunity in being bound to a transaction that could be topped in a

competitive auction process and (c) for serving as a "stalking horse" to encourage the submission

of other bids.  Accordingly, the Trustee believes that the Bid Protections should be approved.

## NOTICE

62.    Notice of this Motion will be given in accordance with the notice procedures set

forth herein.  The Trustee submits that such notice is sufficient and requests that this Court find

no other or further notice is necessary.

## NO PRIOR REQUEST

63.    No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests that this Court enter orders, substantially in the form annexed hereto, granting the Motion and such other relief as may be just and proper.

Dated: New York, New York
       March 30, 2009

Respectfully submitted,

/s/ Marc Hirschfield

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Douglas E. Spelfogel (DS 7097)
Email: dspelfogel@bakerlaw.com
David J. Sheehan (DS 4818)
Email: dsheehan@bakerlaw.com
Marc Hirschfield (MH 1537)
Email: mhirschfield@bakerlaw.com
Richard J. Bernard (RB 6371)
Email: rbernard@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*