David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201

Attorneys for Irving H. Picard, Esq.,
Trustee for the SIPA Liquidation of
Bernard L. Madoff Investment
Securities LLC

**Hearing Date and Time:  April 14, 2009 at 10:00 a.m.**
**Objection Deadline:  April 10, 2009 at 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation |

## MOTION FOR AN ORDER PURSUANT TO SECTION 78fff(a) OF THE SECURITIES INVESTOR PROTECTION ACT AND SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING THE SALE THE DEBTOR'S NEW YORK METS TICKETS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC (the "Debtor" or "BLMIS"), by and through his

undersigned counsel, hereby moves (the "Motion") this Court for entry of an order (the "Sale

102752081

Order") approving the proposed sale procedures and authorizing the sale of the Debtor's New York Mets tickets free and clear of liens, claims and encumbrances, and respectfully represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to Section 78eee(b)(4) of the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the order (the "Protective Decree") entered on December 15, 2008 [Docket No. 1] by the Honorable Louis L. Stanton, United States District Judge, United States District Court for the Southern District of New York in Case No. 08 CV 10791, and 28 U.S.C. §§ 157 and 1334.  Venue of this case is proper in this district pursuant to Section 78eee(b)(4) of SIPA and 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 78fff(a) of SIPA, sections 105, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2.      On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Bernard L. Madoff and the Debtor (together, the "Defendants") (Case No. 08 CV 10791).  The complaint alleged that the Defendants engaged in fraud through investment advisor activities of the Debtor.

---

[1] Hereinafter, reference to SIPA shall omit "15 U.S.C."

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B).  Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

3.       On December 12, 2008, the Honorable Louis L. Stanton of the United States District Court for the Southern District of New York entered an order which appointed Lee S. Richards, Esq. as receiver (the "Receiver").

4.       On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5.       On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(a)      appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA;

(b)      appointed Baker & Hostetler, LLP ("B&H") as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(c)      removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

6.       On December 18, 2008, the District Court entered the Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants (the "Preliminary Injunction Order"). Among other things, the Preliminary Injunction Order clarified that the Receiver is only appointed as to assets concerning the London entity, Madoff Securities International Ltd.

## RELIEF REQUESTED

7.       By this Motion, the Trustee requests entry of the Order, substantially in the form of Exhibit A, authorizing the Trustee to sell the Tickets (as defined below) at an auction to the

highest bidder (the "Purchaser") and approving the sale of the Tickets to the Purchaser, pursuant
to section 78fff(a)(2) of SIPA and sections 105(a) and 363 of the Bankruptcy Code.

## PROPOSED SALE

8.      Since his appointment, the Trustee has been working diligently to investigate,
identify, examine and evaluate the Debtor's activities, assets, rights, liabilities, customers and
other creditors. As a result of his investigation, the Trustee has determined that the Debtor owns
two season tickets to the New York Mets. These tickets are for seats located in the Delta Club
Platinum, Section 16, Row 2, Seats 5 and 6. The face value of the Delta Club Platinum tickets
ranges from $295 to $695 per ticket depending on how the games are classified by the New York
Mets, and the tickets have a total face value of approximately $80,190.00. If the Trustee were to
attempt to sell these tickets, he would only be able to convey the right to attend 81 regular season
baseball games. Other benefits that season ticket holders receive, such as the right to purchase
playoff tickets and the right to purchase tickets for subsequent years, could not be transferred to a
purchaser.

9.      In considering how to maximize value of these tickets, the Trustee engaged in
discussions with the New York Mets. As a result of these discussions, the Mets have agreed to
allow the Trustee to exchange the Delta Club Platinum tickets for Delta Club Gold tickets (the
"Tickets"). These Delta Club Gold seats are located in Section 11, Row 8, Seats 5 and 6, just a
few sections over and a few rows behind the Delta Club Platinum seats. The Tickets include
access to the Delta Sky360 Club and one parking pass and have a face value of $60,750.00.

10.     The Mets have agreed to provide the Trustee with a full refund of the amount
representing the difference in face price between the two locations (i.e., $19,440.00). The Mets
have also agreed to treat the Purchaser as the account holder, which allows the Purchaser to

receive any and all rights and renewal opportunities offered to ticket holders in the same category, including the opportunity to purchase playoff tickets and the opportunity to renew the tickets in subsequent seasons.

11.     The Trustee believes that the exchange of tickets provides a benefit to the Debtor's estate for several reasons. First, the agreement with the Mets allows the Trustee to capture the increased value from the inclusion of the season ticket holder rights and renewal opportunities. If the Trustee had not reached an agreement with the Mets and was selling the Delta Club Platinum tickets, the Trustee would not have been able to convey these additional rights.

12.     Second, the Mets have agreed to refund to the Trustee the full amount of the difference between the Platinum and Gold tickets. As such, there is no risk for the Trustee in agreeing to the exchange of tickets, just the opportunity for considerable recovery based on the nature of the new seats.

13.     Finally, while the Tickets are still for excellent and exclusive seats, it is the view of the Trustee that the less expensive tickets will be more marketable, especially given the current economic environment.

14.     The Trustee has contacted various ticket brokers (the "Ticket Brokers") to evaluate interest in the both the Platinum and Gold tickets. The Trustee has not received any expressions of interest from the Ticket Brokers thus far and, accordingly, believes that the most appropriate way to sell the Tickets is through an online auction site, specifically eBay An online auction (the "Auction") allows the Trustee to reach out to a much wider range of potential purchasers, which is necessary given the lack of interest in the Tickets expressed by the Ticket

Brokers to date. The Ticket Brokers also expressed the view to the Trustee that the Platinum tickets would be difficult for them to sell given the high end price level.

15.    The New York Mets have agreed to provide an opening bid for the Auction of fifty percent of the face value of the Tickets. This offer, combined with the ticket exchange, guarantees the Trustee a recovery of at least sixty-two percent of the original face value of the Debtor's tickets.

16.    Should the Court enter the Sale Order, the Trustee seeks authority to hold an online auction on eBay for seven days commencing immediately after entry of the Sale Order. The Trustee seeks this Court's approval of the following procedures (the "Sale Procedures"):

        (i)    The Trustee will post a notice on his website (www.madofftrsutee.com) stating that the Tickets will be auctioned off on eBay.

        (ii)    The Mets offer of fifty percent of the face value of the Debtor's tickets will serve as the minimum bid for the Auction.

        (iii)    The highest bid received at the closing of the online bidding will be considered the bid accepted by the Trustee and the Trustee will proceed to close the sale with the highest bidder, the Purchaser.

        (iv)    The Trustee reserves the right to (a) refrain from selling the Tickets to any bidder if, in the Trustee's sole discretion, the value of the highest bid received at the Auction does not represent fair value for the Tickets, as determined by the Trustee, and (b) offer the Tickets for sale in lots as well as in the aggregate.

17.     The Trustee submits that the above proposed Sale Procedures provide for the highest and best return for the Tickets and requests that the Court approve foregoing Sale Procedures.

18.     The Trustee is also requesting immediate authority to sell, on an individual basis, tickets to games scheduled for the month of April.[3]  The Trustee proposes to sell the tickets through an online ticket broker.  Because the Auction will not occur until mid-April at the earliest, and the Mets' opening game at home will be played on Monday, April 13th, selling these tickets individually is the only way the Trustee can recover value for these early season games.

19.     The Trustee is requesting that the Sale Procedures and the sale itself be approved by the Court at a single hearing.  Because the sale will be completed by way of an online auction, and because the Tickets must be sold as quickly as possible to maximize value for the Debtor's estate, the Trustee submits that proceeding in this manner is appropriate.

## NOTICE OF SALE

20.     Concurrently with the filing of this Motion, the Trustee shall serve a copy of this Motion and the Sale Order upon the following persons by email or first-class mail, postage prepaid to (i) the New York Mets; (iii) the Securities Investor Protection Corporation, (iv) the Securities and Exchange Commission; (v) the United States Attorney for the Southern District of New York; and (iv) all appropriate federal, state and local taxing authorities. The Trustee shall also serve, via the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case and the Motion shall be posted on the Trustee's website, www.madofftrustee.com.

---

[3] The offer made to the Trustee by the Mets for the Tickets will be reduced by half of the face value of any individual tickets sold by the Trustee prior to the Auction.

102752081                                                      - 7 -

21.     The Trustee believes that the foregoing notice is sufficient to provide effective notice of the Auction and the proposed sale to the Purchaser in a manner designed to maximize the chance of obtaining the broadest possible participation in the Auction while minimizing costs to the estate. Accordingly, the Trustee requests that the Court find that notice in this manner is sufficient and that no further notice of the Auction or the proposed sale is required.

## BASIS FOR RELIEF REQUESTED

A.     SIPA requires a sale of the Acquired Assets.

22.     Section 78fff(a) of SIPA governs the purposes of a SIPA liquidation and provides in relevant part that: "[t]he purposes of a liquidation proceeding under this chapter shall be . . . (2) to sell or transfer offices and other productive units of the business of the debtor . . . and (4) to liquidate the business of the debtor." Thus, the Trustee has an affirmative duty to sell potentially viable units of the Debtor.

B.     The proposed sale is within the Trustee's sound business judgment and should therefore be approved.

23.     The Trustee submits that ample authority exists for the approval of the Sale to the Purchaser. Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside the ordinary course of its business. That section provides in pertinent part, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b). While Section 363(b) is devoid of any standards to be applied to a trustee's request to sell assets, a wide body of case law has evolved containing the judicial standards governing sales of assets.

24.     In In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit determined that a sale of assets could be approved if the debtor could demonstrate an "articulated business justification"

102752081                                           - 8 -

for the sale. Id. at 1070. The court further held that the factors to be considered in determining

whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed
> time since the filing, the likelihood that a plan of reorganization will be proposed
> and confirmed in the near future, the effect of the proposed disposition on future
> plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis
> any appraisals of the property, which of the alternatives of use, sale or lease the
> proposal envisions and, most importantly perhaps, whether the asset is increasing
> or decreasing in value.

Id. at 1071.

25.     The Lionel decision has been widely accepted and applied by numerous other

courts facing a trustee's request to sell assets, including requests to approve a sale of certain of

the assets of a debtor's estate. See e.g., In re the Delaware & Hudson Ry. Co., 124 B.R. 169 (D.

Del. 1991); In re Eng'g Prod. Co., 121 B.R. 246 (Bankr. E.D. Wis. 1990); In re Thomson

McKinnon Sec., Inc., 120 B.R. 301 (Bankr. S.D.N.Y. 1990); In re Channel One

Communications, 117 B.R. 493 (Bankr. E.D. Mo. 1990); In re Brethren Care, 98 B.R. 927

(Bankr. N.D. Ind. 1989). As will be demonstrated below, application of the above-listed factors

demonstrates that approval of the sale of the Tickets is warranted at this time.

26.     In addition to requiring sound business reasons to approve a sale pursuant to

section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be

obtained for the assets be fair and reasonable; that the sale to the proposed purchaser was

negotiated in good faith; and that it does not unfairly benefit insiders, the purchaser, or a certain

creditor or class of creditors. See, e.g., In re Channel One Communications, 117 B.R. at 494-97;

In re Indus. Valley Refrig. & Air Cond. Supplies, Inc., 77 B.R. 15 (Bankr. E.D. Pa. 1987).

27.    The Auction process will allow the Trustee to obtain the best possible value for the Tickets as the competitive bidding process provides assurance that the highest and best offer for the Tickets is received.

28.    Many courts require that "fair and accurate notice" be given of the proposed sale under section 363(b) of the Bankruptcy Code. See, e.g., In re Delaware & Hudson Ry., 124 B.R. at 176; Channel One, 117 B.R. at 496 (Bankr. E.D. Mo. 1990); Naron & Wagner, Chartered, 88 B.R. 85, 88 (Bankr. D.Md. 1988).  Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon the debtor's business; and explain why the sale is in the best interests of the debtor's estate. Delaware & Hudson, 124 B.R. at 180; see also, Naron & Wagoner, 88 B.R. at 88.

29.    The Trustee submits that the notice given herein sufficiently alerted parties in interest to the contemplated sale.

C.    The Purchaser will be a good faith purchaser and is entitled to the protections of section 363(m) of the Bankruptcy Code.

30.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

31.    Although the Bankruptcy Code does not define "good faith," in In re Colony Hill Assocs., 111 F.3d 269 (2d Cir. 1997), the Second Circuit held that:

The "good faith" component of the test under § 363(m) speaks to the equity of [the bidder's] conduct in the course of the sale proceedings.  Typically, the

> misconduct that would destroy a purchaser's good faith status at a judicial sale
> involves fraud, collusion between the purchaser and other bidders of the trustee,
> or an attempt to take grossly unfair advantage of other bidders.

111 F. 3d at 276 (quoting In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir.

1978)) (internal quotations omitted).

32.     As set forth above, the Purchaser will be selected by the Trustee after considering

all offers for the Tickets and determining that the Purchaser's bid was the highest and therefore

most favorable option. The sale to the Purchaser will be a product of arms-length negotiations at

a price dictated by an open online auction and will not be in any way tainted by fraud, collusion

or bad faith. Accordingly, the Trustee requests that the Court make a finding that the Purchaser

will be entitled to the protections of section 363(m) of the Bankruptcy Code.

D.     The sale satisfies the requirements of section 363(f) of the Bankruptcy
       Code for a sale free and clear of liens, claims, encumbrances and interests.

33.     The Trustee seeks authorization to sell the Tickets to the Purchaser free and clear

of all liens, claims and encumbrances. The Tickets may be sold free and clear of liens in

accordance with section 363(f) of the Bankruptcy Code, which provides, in pertinent part:

> (f) The trustee may sell property under subsection (b) or (c) of this section free
> and clear of any interest in such property of an entity other than the estate, only if,
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of
> such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is
> greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a
> money satisfaction of such interest.

11 U.S.C. § 363(f).

34.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive,

satisfaction of any one of its five requirements will be sufficient to permit the sale of the Tickets

free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges,

options, and other interests. The Trustee submits that, all liens, to the extent that any such liens

exist, will attach to the proceeds of the sale in the order of their priority and to the extent of their

validity. As such, the rights of secured creditors are preserved. Thus, the Tickets may be sold

free and clear of such liens pursuant to section 363(f)(3) of the Bankruptcy Code. In re General

Bearing Corp., 136 B.R. 361 (Bankr. S.D.N.Y. 1992); In re Oneida Lake Development, Inc., 114

B.R. 352 (Bankr. N.D.N.Y. 1990).

E.      The Court should waive or reduce the ten day stay periods required by
        Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

35.     Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders

authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for 10 days after the entry of the order. Fed. R. Bankr. P. 6004(h). The

purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal

before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P.

6004(h).

36.     Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent

as to when a court should "order otherwise" and eliminate or reduce the 10 day stay period,

Collier suggested that the 10 day stay period should be eliminated to allow a sale or other

transaction to close immediately "where there has been no objection to the procedure." 10

Collier on Bankruptcy 6004.09 (15th rev. ed. 2005). Furthermore, Collier provides that if an

objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

37.     To preserve the value of the Tickets, given that baseball season begins April 6, 2009 and the Mets have their first regular season game in their new stadium on April 13, 2009, it is critical that the Trustee sell the Tickets as soon as possible.  Accordingly, the Trustee hereby requests that the Court waive the 10 day stay periods under Bankruptcy Rule 6004(h), or in the alternative, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal to allow the sale to close as quickly as possible.

F.     Conducting an auction is in the best interests of the Debtor's estate, customers, creditors and interested parties.

38.     In order to maximize the value of the Tickets for the benefit of the Debtor's estate, customers and creditors, the Trustee seeks to implement a competitive bidding process designed to generate a maximum recovery.  The Trustee believes that the Auction will encourage participation by a wide range bidders and expose the Tickets to a broad and competitive market.

**NOTICE**

39.     Notice of this Motion will be given in accordance with the notice procedures set forth herein.  The Trustee submits that such notice is sufficient and requests that this Court find no other or further notice is necessary.

**NO PRIOR REQUEST**

40.     No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests that this Court enter an order, substantially in the form annexed hereto, granting the Motion and such other relief as may be just and proper.

Dated: New York, New York
April 7, 2009

Respectfully submitted,

/s/ Marc Hirschfield
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*