1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

      In the Matter

         of                  Index No.

                              08-01789


      THE SIPA LINK,

                 Debtors.

--------------------------------x

                 February 24, 2009

                 United States Custom House

                 One Bowling Green

                 New York, New York 10004



      Motion for Order Pursuant to Section 78eee(b)(5)

of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code,

Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1

Establishing Procedures Governing Interim Monthly

Compensation of Trustee and Banker & Hostetler LLP, et al




B E F O R E :

               HON. BURTON R. LIFLAND,

                    U.S. Bankruptcy Judge

2

1

A P P E A R A N C E S:

2

3          BAKER HOSTETLER, LLP
                   Counsel for the Trustee
4                  45 Rockefeller Plaza
                   New York, New York 10017

5

           BY:    IRVING H. PICARD, ESQ.-Trustee
6                        -and-
                  DAVID J. SHEEHAN, ESQ.
7                        -and-
                  SEANNA R. BROWN, ESQ.

8

9

10         SECURITIES INVESTOR PROTECTION CORPORATION
                   805 15th Street, Suite 800
11                 Washington,  D.C.  20005
12         BY:    HEMANT SHARMA, ESQ.
                         -and-
13                KEVIN H. BELL, ESQ.

14

15         DEILY MOONEY & GLASTETTER LLP
           Attorneys for DCFS USA
16                 8 Thurlow Terrace
                   Albany New York 12208

17

           BY:    MARTIN A. MOONEY, ESQ.

18

19

           KRAMER LEVIN NAFTALIS & FRANKEL LLP
20         Attorneys for the Movants Lucerne Foundation,
           Collinwood Enterprises and Douglas Rimsky
21                 1177 Avenue of the Americas
                   New York, New York 10036

22

           BY:    ALEX S. KAUFMAN, ESQ.

23

                        -and-

24

           PHILIP BENTLEY, ESQ.

25

3

1    A P P E A R A N C E S (Continued):

2

3

           WACHTEL & MASYR, LLP
4          Attorneys for Plaintiff Rosenman
           Family and Hadleigh Holding LLC
5                110 East 59th Street
                 New York, New York  10022
6
           BY:    HOWARD KLEINHENDLER, ESQ.
7

8

9          JPMORGAN CHASE & CO.
                 One Chase Manhattan Bank Plaza, Floor 26
10               New York, New York 10005
11         BY:    ANDREW R. KOSLOFF, ESQ.
12

13

14

           MILBERG LLP
15               Attorneys for Unofficial
                 Committee of Customers
16               One Pennsylvania Plaza
                 New York, New York 10119
17
           BY:    MATT GLUCK, ESQ.
18
                      -and-
19
                 JONATHAN M. LANDERS, ESQ.
20

21

22                  *    *    *

23

24

25

4

1

2

3

4

5

6                        PROCEEDINGS

7            THE COURT:  The SIPA Link.

8            MR. SHEEHAN:   Good morning, David Sheehan,

9    representing the trustee, Irving Picard.   Mr. Picard is

10   here in the courtroom with me.

11            Your Honor, we have a number of things on

12   the agenda this morning.   What I would propose with Your

13   Honor's blessings is the order we take them in, if that is

14   okay with you, we have a motion.

15            THE COURT:  I am very yielding.   Go ahead.

16   As long as you could be efficient in the way you place it.

17            MR. SHEEHAN:   Thank you, Your Honor.   The

18   first thing I would like to raise is the motion that is

19   unopposed and, in fact, Mr. Bell is here from SIPC and they

20   do not oppose the application for the order for monthly

21   expenditures.   I believe Your Honor is probably familiar

22   with it, so I won't go through the details of it here.

23            What it recognizes, Your Honor, is that in

24   this particular instance as opposed to the normal course

25   where you would come in for interim compensation on a

5

1   monthly or quarterly, I should say, or a six-month basis,

2   given the size and nature of this proceeding SIPC has

3   recognized, as they have in the Lehman case, that there

4   should be monthly payment which will take place and then,

5   obviously, it will ultimately be submitted to your Honor on

6   a regular basis for your review and approval.  And, as I

7   say, SIPC does not oppose it and I move for the entry of

8   that order, Your Honor.

9            THE COURT:  Ultimately the funding comes

10  out of the pocket of SIPC; correct?

11           MR. SHEEHAN:   Yes, Your Honor.

12           THE COURT:  It is not an ordinary Chapter

13  11 where I would be concerned that the estate would be

14  diminished.

15           MR. SHEEHAN:   There is not going to be any

16  general estate.  This is a no-asset case, and in this

17  instance it will be paid by the SIPC corporation.

18           THE COURT:  Does anyone want to be heard?

19           Hearing no response, the application is

20  granted.

21           MR. SHEEHAN:   Thank you, Your Honor.

22           THE COURT: Submit an order.

23           MR. SHEEHAN:   I will submit an order, Your

24  Honor.   In fact, I do have it, but there is one change I

25  want to do and I realized it this morning and I will submit

6

1    it to your Honor later.

2                        THE COURT:  I will be here.

3                        MR. SHEEHAN:   Thank you, Your Honor.

4                        The other motions that are before Your

5    Honor, the first one that I would suggest we would address

6    is the one dealing with -- well, there are three motions

7    addressed to car leases where there is relief being sought

8    -- it is not my application we are resisting it, but in any

9    event it is an application for relief from the automatic

10   stay.

11                       MR. MOONEY:   Your Honor, Martin Mooney

12   appearing for the law firm of Deily Mooney & Glastetter,

13   LLP, as counsel for DCFS, USA.

14                       We actually have the next three motions,

15   each of them very similar.  They all involve leased

16   vehicles and the leased vehicles have been surrendered.

17   We filed the motion --

18                       THE COURT:  When?

19                       MR. MOONEY:   I believe they were

20   surrendered in December.   We filed a motion for relief

21   from the automatic stay pursuant to Section 362, but also

22   for relief from Your Honor's prior order dated January 5.

23   We alleged our ownership in the vehicle, surrender of the

24   vehicle and whatever contractual payment default may have

25   existed.

7

1          But we expected that we would obtain our

2     order because there seems to be no opposition.   After

3     filing the motion we were advised by counsel to the Trustee

4     that our motions were moot because the Section 365(a) order

5     had been entered rejecting the leases and the opposition

6     that was filed also asserts that we were not responsive

7     and, therefore, attorneys' fees should be awarded against

8     us to the Trustee on these three motions.

9          Your Honor, I don't necessarily consider it

10     clear whether or not the rejection of the lease in a

11     Chapter 11 may terminate the automatic stay.   It might be

12     clearer in a Chapter 7 under Section 365(d), but, Your

13     Honor, honestly I felt in this case it was not a Chapter 7,

14     it wasn't a Section 365(d) order.   And, in fact, the case

15     law cited by the Trustee also indicates, Judge, that this

16     is Second Circuit law to suggest that if there is a

17     specific order it is going to control over a general order

18     when there is a question whether or not rejection of lease

19     terminates the automatic stay.   That is the Stoltz case

20     that was mentioned by counsel to the Trustee.

21          Our position, Your Honor, is that your

22     specific order is that specific and, in fact, that is why

23     our motion needs relief from not only Section 362 but your

24     specific order because the order dated January 5 mentions

25     Section 362 but then in a separate decretal paragraph you

8

1    indicate that it stays all creditors until there has been a

2    further order of the Court.

3                    THE COURT: You are here an awful lot in

4    connection with the lift stay motions for automobiles.

5                    MR. MOONEY:    Yes, Judge.

6                    THE COURT:   And you either have someone

7    employed by your firm or a stringer.

8                    MR. MOONEY:    Yes, Judge.

9                    THE COURT:   A nice young person comes in --

10                   MR. MOONEY:    Yes.

11                   THE COURT:   -- who recognizes the

12   realities of informally resolving these matters.

13                   MR. MOONEY:    Yes, absolutely.

14                   THE COURT:   I looked at the papers here and

15   I have looked at the telephone tag that has been asserted

16   in all these papers, and I just wonder if this isn't too

17   much like a couple of teenagers trying to get ahold of each

18   other and ducking each other because they don't want to

19   bite the bullet or they have a particular strategy.   This

20   is you will admit just like any of the other ones that

21   you've brought before me.

22                   MR. MOONEY:    Absolutely.

23                   THE COURT:  The only thing I usually ask

24   when a young lady is here is what color is the vehicle.

25                   In this instance, I don't care.

9

1          MR. MOONEY:    Judge, I have traveled from

2    Albany.   I honestly don't know.

3          THE COURT:  I know you don't.

4          MR. MOONEY:    We submitted stipulations.

5          THE COURT:  Actually, I really think an

6    intelligent return of a call or the pick up of a phone to

7    the right people would have solved the problem.

8          MR. MOONEY:    Judge, we indicate in our

9    papers that they did return the phone calls.

10          THE COURT:  I am not your adversary.   I

11    will let your adversary make the argument.

12          MR. MOONEY:    Judge, we were absolutely

13    willing to stipulate similarly to a relief from stay in

14    your order.   I just felt the order was needed because this

15    is not an 11, it is not a 7.

16          THE COURT:  But if I told you I called you

17    at 4 o'clock and 5 o'clock and you didn't call back and the

18    assistant didn't call back.   The other side says we called

19    back.   Come on.

20          MR. MOONEY:    Judge, I don't disagree, but

21    we have been asking for the stipulation because we need the

22    order and we just couldn't get that.

23          MR. SHEEHAN:   Your Honor, we are mystified

24    by this application.   We read 365(b)(1), and if I may be

25    so bold to read that into the record.

10

1        THE COURT:  If I may be so bold to say that

2    this similarly could be done with a stipulation.

3        MR. SHEEHAN:   Why is the stipulation

4    necessary?  Why do we have to go through this?  This is

5    absurd.

6        THE COURT: So he has some comfort that

7    someone doesn't come along having tried to purchase a car

8    that doesn't have a title.  Why don't you give him a

9    stipulation.

10       MR. SHEEHAN:   Fine, Your Honor.   Thank

11   you very much.

12       MR. MOONEY:   Thank you, Your Honor.

13       THE COURT: I bet you don't know what color

14   the car is; am I correct?

15       MR. MOONEY:   You are correct.

16       MR. SHEEHAN:   We do.

17       Your Honor, the next application we would

18   like to address is the one brought on behalf of the

19   Rosenman family.   Actually, it is our motion, I apologize.

20   It is our motion to dismiss the Rosenman complaint seeking

21   the return of the $10 million we deposited just on the eve

22   of the Madoff bankruptcy.   The motion will be argued by

23   Seanna Brown from Baker Hostetler.

24       MS. BROWN:  Hello, Your Honor.   The basis

25   for the trustee's motion in the Rosenman complaint is

11

1    simple, and the complaint must be dismissed.  The Rosenmans

2    allege that he deposited $10 million in cash with the

3    Debtor prior to the filing date.

4              The papers attached to the Rosenman

5    complaint indicate that he received a confirmation

6    displaying the account number of the Debtor, and the Debtor

7    sold short $10 million of treasury bills on his behalf.

8              Rosenman raised no objection to the receipt

9    of this confirmation or the transaction reportedly

10   conducted on its behalf prior to the filing date of this

11   liquidation.

12             These facts clearly demonstrate Rosenman

13   falls within the statutory definition of customer and that

14   his funds are customer property.

15             Rosenman argued that SIPA was not intending

16   to provide customers with a windfall and that all customers

17   will be treated equally whether they deposit their money on

18   the first day or the last day and that no customer should

19   be receiving them at the expense of other customers.

20             And try as they might, on the filing date

21   the door closed on the filing.  Rosenman deposited cash

22   with the Debtor for the purpose of purchasing security, and

23   his claim must be considered within the parameters of the

24   statuary scheme of SIPA which, Your Honor, Rosenman has no

25   more or no less a first out exception.   Rosenman's attempt

12

1   to contravene the statutory scheme created by Congress

2   should be rejected and the trustee submits that his

3   complaint should be dismissed.

4           MR. KLEINHENDLER:  Good morning, Your

5   Honor. Howard Kleinhendler from the law firm of Wachtel &

6   Masyr for the Rosenman Family, LLC.

7           What you just heard, Your Honor, is a

8   recitation of fact and the issue before you on this motion,

9   which is a 12(b)(6)motion, the complaint is under a

10  favorable -- it's withdrawing every inference in favor of

11  the plaintiff, and it provides a cognizable value form of

12  relief.

13          Now what you heard and what you saw at

14  least in their opening papers before they changed it in

15  their reply papers, which is the threshold finding that you

16  must make is that we are a customer, and that we gave money

17  for the purchase of securities.  Our complaint says that

18  is not true.  We gave the guy $10 million to hold, the

19  fund was closed.  He had no authority to use the money.

20  We did not expect any return on the money and at this stage

21  of the proceedings --

22          THE COURT:  There were documents attached

23  to the claim.

24          MR. KLEINHENDLER:  There was documentation.

25          THE COURT:  Where in the documentation did

13

1   this say the monies were to be held?  Where in the

2   documentation did it say this is a conditional transfer or

3   that it is for escrow purposes?  I looked very hard.

4              MR. KLEINHENDLER:  It doesn't say that in

5   the documentation, but it does not say what they say in the

6   documentation.  If you look at the documentation, what do

7   you have?

8              You have a fax transmission from a Ms.

9   Krupey (phonetic), who works for Madoff, that says here is

10  where you should wire the fund.  It does not say wire the

11  fund in order to be invested.  It doesn't say wire the

12  fund in order to use it.  There are no documents attached

13  as to opening up accounts.  That is number 1.

14             The second document is a wire transfer and

15  the third document is a confirmation which we clearly

16  allege in the complaint was never authorized and was not

17  true.

18             So if you look at the facts in the

19  complaint and the documents, at this point of the case,

20  Your Honor, you could not draw the conclusions they are

21  asking you to draw when what we are telling you is d

22  diametrically opposed and there was a conversation between

23  Rosenman and Madoff.  Rosenman will get on the stand and

24  tell you about the conversation.  I don't have to prove my

25  case only with documentary evidence, especially if there is

14

1    no documentary evidence to the contrary.   That is a

2    summary judgment type of analysis.   That is not a 12(b)(6)

3    analysis.   This is a 12(b)(6)motion and at this stage,

4    Judge, we are entitled to tell our story.

5              The complaint does not state the facts that

6    they want you to believe.   So let's look at the law.

7    They don't have the facts and let's look at the law they

8    are arguing.   First they say SIPA applies because of the

9    word "customer."  They admit in order to be a customer we

10   have to provide money for the purchase of securities.   We

11   say that never happened.   That is a fact issue, the way

12   you posed it already, it is a he said, she said issue.

13   You can't decide that on the 12(b)(6).   If it is not

14   customer property, Judge, this is a regular bankruptcy

15   case, the Rule 541 applies.   We cited 11 circuit law on

16   point that 541 applies in a SIPA liquidation.   The trustee

17   did not come back with any law to contradict that.

18             There are cases, and even in a SIPC case

19   where the Court undertakes the traditional, the standard,

20   the everyday analysis of what is the property of the

21   estate.

22             If I give someone money to hold and he

23   takes it in order to steal it, Your Honor, he has no title.

24   We cited the Newpower (phonetic) case, a Sixth Circuit case

25   that  is directly on point with facts very similar.    In

15

1    that instance the investors gave money to a person to

2    invest in real estate.

3              The person got money from the investor, but

4    instead of putting it into real estate, he bought some cars

5    and took his girlfriend out, et cetera.   The Sixth Circuit

6    went through almost every argument you saw in their reply

7    papers and rejected it.

8              Number 1, when someone takes your money

9    through a false pretense and embezzles it and he does not

10   have a gainful legal title, it is not a fraud.   That is a

11   criminal theft.

12             Judge, we have the same law in New York.

13   The New York penal code Section 155.05 is the larceny

14   statute.   That is the theft statute in this state, just

15   like in Michigan.   It says that a person who steals

16   property whether he breaks and enters into someone's home

17   and pulls money out of the safe deposit box or a safe, or

18   he takes the money through larceny by trick or embezzlement

19   that is a theft.   Judge, embezzlement defined by the New

20   York Court of Appeals --

21             THE COURT:   There are a lot of people

22   sitting here that would take that position, I suppose.

23             MR. KLEINHENDLER:   We'll get to that and

24   also the other people sitting here -- that is another

25   argument because we are sitting here and the other people

16

1    who are sitting here don't have my case and here is why.

2                Number 1, the other folks who are sitting

3    here -- and I have been talking to other people and, of

4    course, the trustee knows more about the case than me, but

5    again we are at 12(b)(6) and I don't see any other

6    adversary cases filed with the Rosenmans where the money

7    was given to be held, where they would have another meeting

8    in January to talk about the fund, where there was no

9    authority to purchase securities.

10               Every other case in this Court, Your Honor,

11   is from people who signed opening agreements who sent their

12   money to Madoff for the purpose of investing it in

13   securities for them to return the so-called 12 percent a

14   year return that Madoff was promising people.  That is the

15   difference.

16               Those folks are customers.  Madoff

17   arguably had legal title on that money.  That is not

18   Rosenman's case.  That is distinguishing factor number 1.

19               Distinguishing factor number 2, Judge, is

20   traceability.  Rosenman is out of court unless they could

21   point to the fund in the Chase account.  We know there is

22   233 million now.  We need to take a look at the Chase

23   record.  We are not talking about a lot of Chase records,

24   we went from December 1 to December 12.  It is possible on

25   December 1, there was zero in Chase or very close to zero

17

1    and then at the end of the day a lot of money was deposited

2    after that.    Therefore, people can't trace their funds.

3            This is a case that is unique, Judge, and

4    it is distinguishable from a lot of cases that the Trustee

5    has brought because this is a case where the funds were

6    still in the possession of the thief.  The funds went into

7    Chase on the 5th.    They stayed in Chase.    This is not a

8    case where funds went into Chase and then went someplace

9    else, in and out, which raises a whole host of issues.

10   Very few people have this tracing argument.    So contrary

11   to what the Trustee is trying to convince you, if you let

12   this case go forward you are opening a Pandora's box.

13           I say to you that is not true because of

14   the two reasons I just articulated and certainly, Judge, at

15   this 12(b)(6), a 12 (b)(6) status indicates you can't reach

16   the conclusion yet.    There is no evidentiary showing yet.

17   There has been a lot of press, there has been a lot of talk

18   and press conferences, sure, but you don't have a record

19   yet to make that equitable type of decision.

20           Let me just make this very important point.

21   Rosenman is not seeking equity from you.    The case law is

22   clear that when a thief steals the money and he still has

23   it, the 541 action is like a turnover type of action and it

24   is recoverable as a matter of law.    I am not coming to you

25   under a constructive trust equitable theory.    I am coming

18

1    here for justice at law.   So these wholly equitable

2    arguments, Your Honor, don't even surface yet.

3              Therefore, Your Honor, at this 12(b)(6)

4    motion stage, you don't have enough to throw out my case.

5    Rosenman is entitled to his day in Court.   They could take

6    his deposition.   They could put on whatever witness they

7    want, and find whatever document they want to find to try

8    to support the facts that you just heard recited, but those

9    facts are in favor of my client and the rules don't let you

10   draw inferences in their favor.   You have to draw

11   inferences in my favor and, therefore, the motion should be

12   denied.

13             THE COURT:   Thank you.

14             MS. BROWN:   Your Honor, my first response

15   to Mr. Kleinhendler is that the facts are in the complaint.

16   It clearly states he had deposited with the Debtor prior to

17   the filing date.   He received a confirmation that the

18   securities were purchased on his behalf, and he had no

19   objection until the liquidation proceeding commenced.

20             Those funds were commingled in the Debtor's

21   Chase account with other customer property, and the statute

22   here governs how that customer property could be

23   distributed.

24             The argument that the thief has no title

25   and, therefore, here the Debtor had no title to Mr.

19

1   Rosenman's funds, if that argument were required that would

2   mean that none of the debt assets held by Debtor would

3   constitute customer property in this case which I submit

4   would not be a very logical conclusion.

5              Finally, I would like to say the argument

6   with regard to tracing, that seems to take advantage of

7   having the fortuity of being one of the last people to

8   invest with the Debtor.  There are many people investing

9   in the course of many years and certain of them can trust

10  the fund but those people are in the same position as Mr.

11  Rosenman, and he would not be entitled to seek the return

12  of his fund merely because he deposited them close to the

13  filing date of this liquidation.

14              THE COURT:  Anything further?

15              MR. KLEINHENDLER:  Judge, think I forgot to

16  deal with one issue that counsel raised again.  This motion

17  which we didn't object to -- we got this confirmation on

18  the 8th and 9th and before anyone had an opportunity to

19  even understand and before Rosenman had an opportunity to

20  seek counsel, this man was arrested.

21              So you could not make an inference at the

22  12(b)(6) stage to say just because there is no objection

23  pleaded that it should overrule the fact that Rosenman

24  stated emphatically in the complaint that the transaction

25  was not authorized.

20

1        That is right in the complaint, it was not

2   authorized.  I don't see how you get to this side of the

3   fact by saying specifically he didn't object.  It says

4   specifically the trade was not authorized.  That is the

5   only point I would like to make.

6        MS. BROWN:  I would like to respond, Your

7   Honor.

8        As to the whether or not the trade was

9   authorized that goes to whether or not Rosenman has a claim

10  for cash or securities under SIPA.  It doesn't mean he is

11  not a customer under the statute.

12        MR. SHARMA:  Hemant Sharma on behalf of

13  SIPC.

14        Relying on 4541 of the Code, in this case

15  the Debtor had clear title to the fund in the bank account

16  because they were the funds which bank account represents.

17        THE COURT:  Well, much of the focus here is

18  on whether or not the Rosenmans were customers.  I think

19  the focus should be on the funds in the bank account, those

20  were clearly subject to the Debtor's control or the

21  estate's control.

22        It appears that the principal purpose of

23  the deposit was for purchase of securities and the timing

24  is not all that relevant.  The purpose is, and you do have

25  the statute, that is very, very clear with respect to that

21

1    and there is case law that supports that.   The timing

2    issue is the sad part of this but, you know what, there are

3    a lot of sad people out here and the timing difference here

4    should not really make a difference.

5              Yes, I have sympathy for all those who were

6    victimized, and Mr. Rosenman certainly cannot feel good to

7    be the last one to have been ripped off or one of the

8    last ones, but it also amazes me and I am not making a

9    philosophical comment in certain circles apparently there

10   is no real need to document anything.

11             $10 million will be going one way or the

12   other.   If it was my $10 million, I would make darn sure

13   there was a paper trail of the conditions that it was being

14   utilized under, the purpose, everything.   If it was being

15   escrowed, as you seem to be intimating that it should be

16   held until January 1, when Mr. Madoff -- Mr. Madoff is the

17   one who is making the election as to when that money should

18   have been taken in.   Mr. Madoff made the election to take

19   it in just before the feces hit the fan.   But it is clear

20   to me that this is a customer deposit.

21             I really want to applaud both sides.   I

22   think your briefing was excellent and you have given me a

23   lot to think about and it messed up my weekend.   But I am

24   going to grant the Trustee's motion to dismiss the

25   complaint, and I will issue a decision this afternoon.

22

1          MR. SHEEHAN:   Your Honor, I realize that

2     my adversary in the other matter that was before Your Honor

3     that we moved on was Hadleigh, and in that he moved, he

4     didn't respond.   What he did was amend the complaint and

5     added what he alleged to be --

6          THE COURT:  He is having a happy day he

7     will win 50 percent of his argument.

8          MR. SHEEHAN:   I would respectfully request

9     in considering the Hadleigh motion, he has not added that

10     and to suggest it is a --

11          THE COURT:  My point is he may have not

12     have added anything, and I may be hinting to the trustee as

13     to what the trustee was facing, you don't want to make

14     another motion all over again because there is a new issue

15     thrown on the table, and whether that issue is one that

16     sets a legal defense is questionable.  But in your response

17     you make a wonderbus argument it is not I a legal defense

18     without pointing out how and why it is not a legal defense.

19     So he is entitled to hear from you as to why that new issue

20     is not viable.

21          MR. SHEEHAN:   Thank you, Your Honor.  We

22     will move again.   Thank you very much.

23          Your Honor, the last item is an

24     application --

25          THE COURT:  Do you have to work out the

23

1   timing?  What is the statute for responding to the amended

2   complaint?

3                   MR. SHEEHAN:   20 days.   I will talk to

4   Mr. Kleinhendler and we will work something out, I'm sure,

5   amicably with you with regard to that.

6                   I believe the last item today on the

7   calendar is the motion with regard to the application of

8   502(h) for a SIPC proceeding, and it is not my application,

9   it is indeed the application of Kramer Levin.

10                  MR. BENTLEY:  Good morning, Your Honor,

11  Philip Bentley of Kramer Levin on behalf of the Lucerne

12  Foundation and Collinwood Foundation in support of our

13  motion for an order clarifying the claim filing deadlines.

14                  Your Honor, I would like to introduce my

15  partner from our litigation department, Mr. Kaufman.  Mr.

16  Kaufman will be arguing the motion this morning.

17                  MR. KAUFMAN:   Good morning, Your Honor.

18                  THE COURT:  Good morning or afternoon as

19  you clearly said.

20                  MR. KAUFMAN:   Your Honor, this motion is

21  one that we believe should be uncontroversial and, in fact,

22  where we are a bit surprised that it has even been posed.

23  There is no sound legal equitable or policy based reason to

24  oppose it.

25                  What we are seeking, Your Honor, is merely

24

1    to clarify one provision of the Court's December 23rd

2    order, and, in particular, the one decretal paragraph that

3    appears near the bottom of Page 7 of that order that says

4    that the bar date for all claims is six months from the

5    date of publication of notice and mailing.

6              Your Honor, although this motion is we

7    believe uncontroversial it is a very important one, since

8    it affects not only the three parties who are moving here

9    but at least hundreds and possibly thousands of others who

10   are in like position.   These are --

11             THE COURT:  You think Mr. Picard is going

12   to sue thousands of people?

13             MR. KAUFMAN:   It is hard to say how many

14   people he will sue but he has made clear as late as the

15   Friday's creditors meeting that he intends to bring

16   avoidance suits.   He has not made clear exactly what

17   avoidance suits he is going to bring or against whom, but

18   there is no doubt he is bringing them.   He is certainly

19   going to bring suits for those two redeemed investments

20   within the last 90 days before the filing, and it is quite

21   likely, and I think I venture to say it is a certainty he

22   is going to sue those two redeemed investments within the

23   last six years on fraudulent conveyance theories.

24             These investors who redeemed investments

25   and who received more in cash than they invested are

25

1      investors who do not now have any claims, as the term

2      "claim" is defined in the Bankruptcy Code, in 1015(a).

3                      THE COURT:  Do each of your clients fit

4      that particular profile?

5                      MR. KAUFMAN:   They do.

6                      THE COURT:  They fit that particular

7      profile?

8                      MR. KAUFMAN:   Yes.

9                      THE COURT:  They put out more than they

10     invested?

11                     MR. KAUFMAN:   That is correct, Your Honor.

12                     THE COURT:  Are you speaking for everyone

13     with that profile?

14                     MR. KAUFMAN:   Excuse me, Your Honor?

15                     THE COURT:  Are you speaking for everyone

16     with that profile?

17                     MR. KAUFMAN:  We can't purport to speak for

18     everyone.  We made a motion on behalf of three clients who

19     do fit that profile.

20                     All I am suggesting to the Court is that in

21     reality this application affects not only just the three

22     parties we are representing here, but clearly a lot more.

23     How many there are, we don't know.   I am not even sure the

24     trustee knows.

25                     But I would venture to say given the number

26

1    of direct investors we do know about, I think there are

2    some 8,000.  There are at least hundreds and possibly

3    thousands who redeemed more than they invested over the

4    years.  After all, it is probably the reason why the Ponzi

5    scheme was able to go on as long as it did.

6              Your Honor, these investors don't have

7    claims to file now.  At most what they have are what are

8    referred to in the bankruptcy world as springing claims.

9    They are claims that will only come into being if avoidance

10   suits are brought and are successful, and these investors

11   have to give their money back to the estate.

12             At that time, Your Honor, they will then

13   have a right to share in the SIPC fund and in a

14   proportional share of the customer property to which they

15   will have contributed.

16             Because they don't now have claims to file,

17   Your Honor, we believe that the order that was entered on

18   December 3, doesn't make clear what Section 502(h) of the

19   Bankruptcy Code does and we are arguing, Your Honor, that

20   502(h) is clearly applicable in a SIPC proceeding.

21             We say that because SIPA itself says that

22   the Bankruptcy Code applies to the extent it is not

23   inconsistent with SIPA or it actually says to the extent

24   consistent with it then it applies.  We say it is fully

25   consistent with SIPA.

27

1       There is significant prejudice, Your Honor.

2       THE COURT: You say it applies. If it

3   applies, then file a claim.

4       MR. KAUFMAN:   Your Honor, if 502(h)

5   applies, we don't have to file.

6       THE COURT:  What you are really looking at

7   is a determination that 502(h) will apply in a particular

8   case.

9       MR. KAUFMAN:   We are asking at the bottom,

10  Your Honor, to determine that 502(h) does apply in the SIPA

11  proceeding.

12      THE COURT: Do you want an advisory opinion?

13      MR. KAUFMAN:  We don't want an advisory

14  opinion.

15      THE COURT:  It sounds like that to me.

16      MR. KAUFMAN:   Your Honor, these investors

17  are affected directly at this moment by the current order,

18  by the ambiguity in the current order.  They have to

19  determine whether to file purely protective  --

20      THE COURT:  I am curious.  You raised an

21  ambiguity in the previous papers and then the ambiguity

22  issue went away clearly because the ambiguity arises when

23  you have a short bar date based upon the loss of specific

24  securities, you are not seeking that.  You are seeking

25  something else, and that bar date would be back in July.

28

1    You have plenty of time.

2                    MR. KAUFMAN:  Your Honor --

3                    THE COURT:  You are not seeking recovery of

4    securities?

5                    MR. KAUFMAN:  That is correct, we are not.

6                    THE COURT:  So the March date doesn't

7    apply, which you had raised that as some confusion.

8                    MR. KAUFMAN:  Your Honor, until Mr. Picard

9    made clear that he was not going to treat those who filed

10   claims between March 4 and July 2 any differently than

11   those who filed by March 4, that was not clear.  It now is

12   clear.

13                   But fact it is July 2 as opposed to March 4

14   doesn't make the issue late ripe.  That day will come soon

15   enough and we are here.  There is an existing order of the

16   Court that these investors need to deal with and the order

17   purports to say that all claims have to be filed by a

18   certain date or else they are barred.

19                   Our argument is simply under 502(h), Your

20   Honor, what we have are not claims.  They are simply not

21   claims, because not all of the elements necessary to create

22   a legal obligation exists even to this day.  Your Honor,

23   the case that we cite in Manville acknowledged that

24   proposition, and the Second Circuit has acknowledged that

25   proposition.

29

1          We don't have claims and we are not

2   affected by this requirement to file by a deadline.

3   However, if we filed purely protective claims we will

4   likely have waived a right to a jury in the subsequent

5   avoidance actions that the Trustee will commence.

6          THE COURT:  I think the Hooker case in the

7   Second Circuit is instructive about that.

8          MR. KAUFMAN:   The Hooker case was

9   overruled.

10          THE COURT:  I don't necessarily agree with

11   that.

12          MR. KAUFMAN:  We believe that the Hooker

13   case was decided before rule 3002(c)(3) was amended and had

14   the amendments been in effect then, Your Honor, Hooker

15   could not have been decided the way it was.

16          THE COURT:  That is another issue that I

17   won't go over into.  A rule only amplifies a statute and

18   the argument against you, the six months' statute is very

19   clear.

20          MR. KAUFMAN:   We don't believe it is very

21   clear, Your Honor.   We believe SIPA does not explicitly

22   define a term claim as the Bankruptcy Code does.

23          THE COURT: You may be right, there may come

24   a time that you file a 502 claim.

25          Have you gotten anything else, counsel?

30

1        MR. KAUFMAN:   No, Your Honor.

2        MR. SHEEHAN:   Your Honor, I will be very

3   brief.

4        THE COURT:   You don't have to be.

5        MR. SHEEHAN:   Well, I this we actually

6   laid out our argument pretty well in the papers.   The only

7   thing I would like to say is this, the colloquy that Your

8   Honor just had informs why this is an advisory opinion and

9   why we should not be delving into it at this juncture.

10  Your Honor certainly understands the concept of March 4 and

11  the return of the securities, the statute is very clear.

12       THE COURT:  Counsel says that is no longer

13  an issue, we are only talking about the July date.

14       MR. SHEEHAN:   The reason it is important

15  is this, the reason it became a nonevent is because of the

16  facts involved.   In other words, we know now there were no

17  securities.   We now know that.   So, therefore, March 4,

18  if we had known that at the beginning, we probably wouldn't

19  have March 4 in there because there was never going to be a

20  return of the securities and that we could not do it in the

21  order we wanted.

22       What does that tell us?  We should not deal

23  with this claim in a vacuum.   We should wait until we have

24  all the facts and associated with that and at that time if

25  they could convince Your Honor that this claim applies in

31

1    the SIPA proceeding based upon the facts before you, that

2    is when it should be dealt with.

3                   For all we know they have no claims.   If

4    all they have is false profits and once we get that back, I

5    will submit to you they are entitled to no claim under

6    those circumstances.

7                   We can't do this in today as a claim,

8    without knowing the history of the account, who is

9    involved, what money they put in, all of other things

10   associated with that and it would be an extraordinary

11   advisory opinion, since the statute is clear, six months

12   from the date of mailing, no controversy, and it is only if

13   it is inconsistent with the statute does it incorporate the

14   other provisions.   I would suggest to your Honor on the

15   face it is inconsistent.

16                   MR. KAUFMAN:   May I respond briefly?

17                   THE COURT: You might as well wait and see.

18                   MR. GLUCK:  Matt Gluck, from the law firm

19   of Milberg LLP.   Hopefully, this will be the first of many

20   occasions where we could agree with the trustee.   I

21   certainly hope so. Of course, this is seeking an advisory

22   opinion.   It is something that easily could be dealt with

23   much later in the sense that Your Honor's phrase "many sad

24   people" keeps ringing in my ears.   And in Manville which I

25   barely remember because if there was ever a case where it

32

1    is certainly important not to just have shows, private

2    agendas and where there is a great temptation to have it,

3    this is one.

4              For the many sad people it is important

5    that -- well, we all know where an awful lot of this money

6    ended up, but there is still a lot more to be found and it

7    is very important to concentrate on that and to concentrate

8    on getting people their money back as soon as possible.   I

9    am sure the trustee would is focusing on that, I would hope

10   that everyone with an interest would be helping in that and

11   we try to make it fast to get down to the really important

12   things because people's lives, not just money that is at

13   stake.

14             As far as advisory opinions, and it is

15   indeed at least from the last Friday meetings there were

16   some serious issues that claimants, customers, and

17   creditors will have to resolve, hopefully amicably, and if

18   not we will give Your Honor some real stuff to sink your

19   teeth into.

20             Those are the real things that have to be

21   done and advisory opinions are things that should be

22   waiting so we could get to the main agenda here.

23             MR. SHARMA:   Your Honor, Hemant Sharma on

24   behalf of SIPC.

25             I have nothing to add to what these two

33

1    just said, and what Mr. Sheehan has told you.

2                    MR. KAUFMAN:  I would like to address a

3    little bit further the return of money that this is

4    requesting and the advisory opinion.

5                    As we point out in the brief, a claim is

6    ripe for review when this is a real and substantive threat

7    that the proof of an injustice would occur, and one does

8    not have to wait for the consummation of the threatened

9    injury to obtain preventable relief.

10                   What is suggested here is that if our

11   clients are sued and have to return money, they could then

12   petition the Court for a decision as to whether 502(h)

13   applies.

14                   Your Honor, we would submit that is too

15   late.  That is after the injury has occurred because the

16   injury, Your Honor, is by not knowing whether or not 502(h)

17   will apply now because with the bar date of July 2 coming

18   up, our clients are in the position of not having claims to

19   file, but facing the likelihood that they will be the

20   subject of avoidance actions and the possibility of having

21   to put money back into the estate.

22                   I will give you an example, Your Honor, how

23   the injury is very real.  If you and I, Your Honor, had

24   been foolish enough to have invested each $1 million with

25   Madoff a few years ago and this past November for personal

34

1     reasons, Your Honor  --

2                    THE COURT:  Why don't you use a far lesser

3     number that is more realistic unless you can get through to

4     Congress.

5                    MR. KAUFMAN:  I will use it as a round

6     number.  It is unrealistic money but that is the kind of

7     money that people invested in Madoff, that's what they put

8     in.  For round numbers, let say, if we both invested $1

9     million years ago and last November for personal reasons,

10    Your Honor, you wanted to clean out your Madoff account and

11    you were fortunate enough to have what purported to be $2

12    million in that account and so you pulled out $2 million

13    within the 90 days before the bankruptcy, and I left my

14    money in  --

15                    THE COURT:  I mean there is also the tax

16    consequence.

17                    MR. KAUFMAN:   Your Honor, clearly having

18    left my money in, I lost $1 million.

19                    THE COURT:  Whether there is a tax

20    consequence or not is a strategic determination and they

21    have to be made on an individual basis.

22                    MR. KAUFMAN:   This is not a strategic

23    decision.

24                    THE COURT:  It is part of the formula in

25    making a determination as to whether someone wants to file

35

1    A claim or not.

2                MR. KAUFMAN:    502(h) does not require that

3    to be made, that determination to be made because it is

4    recognized implicitly there is a right to a jury in an

5    avoidance suit.    That is the reason why springing claims

6    need not file proofs of claims under the Bankruptcy Code.

7    That is the reason.

8                That is what I am saying in the example I

9    gave you, Your Honor, with your having pulled out $2

10   million and I left my money in, I clearly have a proof of

11   claim to file by July 2 for $1 million.    That is my loss.

12               You are not going to be sued in a

13   preference action by the trustee and have to give back the

14   $2 million you took out.    So not only have you lost 1

15   million, you lost $2 million but you didn't file a

16   protective claim before the July 2 bar date.    You have to

17   contribute into the pot $2 million that you get to share in

18   and you get zero.

19               If you did file a protective claim, Your

20   Honor, you would have waived your right to a jury in the

21   avoidance suit that the Trustee brought against you.    That

22   is why 502(h) applies not only in a bankruptcy, but in a

23   SIPA proceeding too.

24               We recognize, Your Honor, and I am not

25   crystal clear about that, but we submit there are

36

1    provisions that make it so including the production that

2    says that the Bankruptcy Rule, Bankruptcy Code and rules

3    apply to the extent it is consistent.  And also there is

4    another provision, Your Honor, that deals with the

5    avoidance actions in SIPA, Section 78fff(2)(C), entitled

6    "Recovery Of Transfers."

7                    That says whenever customer property is not

8    sufficient to pay in full, the claims set forth in sub

9    paragraphs A through D of paragraph 1, Trustee may recover

10    any property transferred by the Debtor and which except for

11    such transfer would have been customer property if and to

12    the extent such transfer is voidable or void under the

13    provisions of Title 11 -- and this is the relevant

14    language -- such recovered property shall be treated as

15    customer property for the purpose of such recovery.  The

16    property so transferred shall be deemed to have been the

17    property of the Debtor.  And if such transfer was made to a

18    customer or for his benefit, such customer shall be deemed

19    to have been a creditor.

20                    Your Honor, it is to have been a creditor.

21    So he was not a creditor before, but he will be treated as

22    if he was a creditor if he has to put back money.

23                    We submit, Your Honor, that in combination

24    with the other provisions of SIPA that it is clear that

25    Section 502(h) applies in a SIPA proceeding and that those

37

 1   with mere springing claims are not claimants who have to

 2   file by the bar date.

 3               THE COURT: Does anyone else want to be

 4   heard?

 5               MR. SHEEHAN:   I have nothing further, Your

 6   Honor.

 7               THE COURT:  All right, thank you.

 8               No matter how you slice it or dice it, you

 9   are asking for an advisory opinion.  And again on this

10   subject, as well as the preceding one, I appreciate the

11   briefing on the part of all parties that helped crystallize

12   the issue and made it easy for me to sit here and determine

13   whether what I have already viewed as the appropriate

14   determination should or should not be adhered to.   So this

15   afternoon I will or maybe this morning yet, I will issue an

16   opinion.

17               Frankly, the opinion will have a few

18   bullets in it and I will give you some of the big ones.

19               The movant here admits they do not

20   currently have claims against the Debtor.  They merely

21   allege they have potential actions which may or may never

22   be commenced.  This court is not deciding whether Section

23   502(a) to the Bankruptcy Code applies unless and until that

24   issue opens and is brought by the party with standing to do

25   so.

38

1          So from what I have before me, this isn't

2   the right matter.  You have plenty of time to consult and

3   decide whether you want to file a protective proof of

4   claim, and I am very well aware that a jury trial is one

5   aspect, tax consequences is another and for investors it

6   would be an individual's choice, maybe a Hobson's choice,

7   maybe not.  But the filing or nonfiling of a claim is an

8   act of volition employed by individual parties, and is a

9   tactical decision.

10          Here the movants have until July 2, 2009 to

11  evaluate their individual circumstances, and to determine

12  whether or not they want to file a protective proof of

13  claim.  And on the up side, I reiterate I am not making a

14  determination here today as to whether 502(h) applies.  The

15  trustee has not even asked me to do that.  The moving

16  parties have.  The motion is denied.

17          MR. SHEEHAN:  Thank you, Your Honor.  I

18  will submit an order consistent with Your Honor's opinion.

19          I think that concludes the calendar for

20  today.

21          THE COURT:  Fine.

22

23                  *       *        *

24

25

39

C E R T I F I C A T E

STATE OF NEW YORK          }

                          }    ss.:

COUNTY OF NEW YORK         }

    I, MINDY CORCORAN, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

    That I reported the proceedings in the within entitled matter, and that the within transcript is a true record of such proceedings.

    I further certify that I am not related, by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand this 24th day of February, 2009.


_____

MINDY CORCORAN