1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

In the Matter

of                         Index No.

08-01789


THE SIPA LINK,

Debtors.

---------------------------------x

April 7, 2009

United States Custom House

One Bowling Green

New York, New York 10004



Motion to approve bidding procedures on Short

Notice



B E F O R E:

HON. BURTON R. LIFLAND,

U.S. Bankruptcy Judge

2

A P P E A R A N C E S:

     BAKER HOSTETLER, LLP
         Counsel to the Trustee
         45 Rockefeller Plaza
         New York, New York 10017

     BY:   MARC E. HIRSCHFIELD, ESQ.
           -and-
         AMY F. VANDERWAL, ESQ.

     LAW OFFICES OF DAVID C. McGRAIL
         Attorneys for Castor Pollux Securities
         676A Ninth Avenue
         New York, New York 10036
     BY:  DAVID C. McGRAIL, ESQ.

     CHOATE HALL & STEWART
         Attorneys for Castor Pollux Securities
         Two International Plaza
         Boston, Massachusetts 02110
     BY:  DOUGLAS R. GOODING, ESQ.

3

1                           PROCEEDINGS

2                 THE COURT:  The Sipa Link.  Good morning

3       everyone.

4                 MR. HIRSCHFIELD:   Good morning, Your

5       Honor.   My name is Marc Hirschfield, and I am an attorney

6       with the law firm of Baker Hostetler.  With me today is my

7       colleague, Amy Vanderwal.   We are the counsel for the

8       trustee.

9                 We are here this morning, Your Honor, on

10      the trustee's motion to establish the bid and auction

11      procedures for the sale of the Debtors' market-making

12      business.

13                As we set forth in our motion, upon his

14      appointment the trustee began his efforts to sell the

15      marketplace operations, and in that regard he retained the

16      Lazard firm to assist in the marketing.   Lazard contacted

17      over 100 potentially interested parties, and of those

18      contacted about half, 46 to be exact, submitted, and signed

19      confidentiality agreements.

20                In terms of the people who were contacted,

21      they include entities in the market-making business,

22      private equity firms, hedge firms and other strategic

23      buyers.   You have 46 parties who conducted due diligence

24      and have expressions of interest and we negotiated with

25      them and that led to the  agreement with, and they are in

4

1    the courtroom today, Castor Pollus Securities, LLC, and

2    they agreed to serve as the stalking horse bidder.

3    Pursuant to a stalking horse bidding they will pay to the

4    Trustee $500,000 to close, and then over the course of

5    several years the earn-outs of up to $15 million.

6            Since we filed the motion, a number of

7    entities, some of whom were previously contacted, a number

8    of new people came forward expressing interest in these

9    assets.   We hope to have a vibrant auction when that

10   happens in a couple of weeks.   We are here this morning to

11   establish the bidding procedures, set forth more fully in

12   the motion.

13           In summary what we propose is the

14   following:   Any party who wishes to make a bid for those

15   assets, we would propose that they do so by April 22 and we

16   propose the bidders provide us with a cash deposit equal to

17   10 percent of the closing payment.   And, in addition, they

18   provide us by that date with a market version of the

19   purchase agreement.

20           If any bids are received, we propose to

21   have an auction on April 27, which is a Monday, and we will

22   have this to chambers on the 28th for the sale hearing.

23           At the auction we propose that the bidding

24   increments be in $35,000 increments, and the first bid of

25   any competing bidder will have to be at least $550,000 plus

5

1    consideration, present value of which equals the Castor

2    Pollux bid, so that's $50,000 in the cash portion.

3              In connection with the sale we agreed to

4    pay Castor Pollux a breakup fee of $15,000 in the event

5    another bidder comes in and wins the assets.

6              The $15,000 is 3 percent of the closing

7    date payments by Castor Pollux, and we submit that amount

8    is reasonable and in line with what has been granted in

9    other contacts.

10             I know technically in the breakup fee we

11   didn't give any value to the earn-out payments, just the

12   cash-out portion we gave credit to in terms of figuring out

13   what the breakup fee ought to be.   In connection with the

14   fee we seek to implement procedures for the assumption and

15   assignment of the executory contracts.   A number of

16   contracts are identified in the purchase agreement we

17   assume and assign to Castor Pollux or whoever the winning

18   bidder is.   We will do the calculations and we propose to

19   give notice to each of the counterparties and to let them

20   know that the contracts will be assumed and assigned, and

21   we believe the cure damages are zero.

22             We propose that the deadline of April 22,

23   which is the same date as the bids are due, it be the

24   deadline for the parties to object to the cure amounts or

25   to the assumption and assignments of contracts.

6

1          We believe that those procedures in total

2    are reasonable and are aimed to provide the trustee with

3    the highest and best bid for these assets and we

4    respectfully request the Court to enter an order approving

5    them.

6          We served the motion in accordance with

7    Your Honor's order from the last order from last week on

8    the noticing procedures, the deadline to file objections

9    was last Friday.   No objection were filed by then or since

10   then.  So, therefore, we would respectfully request that

11   the Court grant this portion of the motion.

12          THE COURT:  Does anyone else want to be

13   heard?  Is there going to be any discussion or indication

14   as to what might be the highest or the best in connection

15   with the competing bid, i.e., earn-out period, the total

16   amount?

17          MR. HIRSCHFIELD:   We discussed that with

18   Castor Pollux.

19          THE COURT:  And what is the earn-out?  Is

20   it a percentage of the business?

21          MR. HIRSCHFIELD:   Yes. There are two

22   different earn-outs, one is based upon total sales and that

23   is a $3 million figure.   The rest is based upon EBITA and

24   its calculations in the agreement as to how that works.

25   But to answer your first question, obviously, cash is king

7

1    and we prefer to get the most we can on the closing date.

2                    In terms of the earn-out, we would consider

3    both the likelihood of the earn-out being paid; the

4    financial wherewithal of the people who we are dealing

5    with; the speed at which it will get paid and the way it is

6    calculated.  So we reserve the right to work with Lazard

7    and others to figure out the present value of each of those

8    payments and we will give as much credit as we believe is

9    just.

10                   THE COURT:  Thank you.  Does anyone else

11   want to be heard?

12                   Haring no response, the application is

13   granted.

14                   MR. HIRSCHFIELD:   Thank you, Your Honor.

15   May I approach with an order?

16                   THE COURT:  Yes.  I have approved the

17   order.

18                   MR. HIRSCHFIELD:   Thank you, Your Honor.

19                   *    *    *

20

21

22

23

24

25

8

1              C E R T I F I C A T E

2

3    STATE OF NEW YORK        }

                             }    ss.:

4    COUNTY OF NEW YORK       }

5                    I, MINDY CORCORAN, a Shorthand Reporter

6    and Notary Public within and for the State of New York, do

7    hereby certify:

8                    That I reported the proceedings in the

9    within entitled matter, and that the within transcript is a

10   true record of such proceedings.

11                   I further certify that I am not related, by

12   blood or marriage, to any of the parties in this matter and

13   that I am in no way interested in the outcome of this

14   matter.

15                   IN WITNESS WHEREOF, I have hereunto set my

16   hand this 7th day of April, 2009.

17

18              _____

                     MINDY CORCORAN

19

20

21

22

23

24

25