# EXHIBIT 5

DEMAND PROMISSORY NOTE

$5,491,525.35                New York, NY                October 31, 2000

1. **Promise to Pay.**
For value received, Madoff Technologies, L.L.C., a New York limited liability company ("Borrower"), promises to pay to the order of Bernard L. Madoff ("Lender"), at New York, NY, ON DEMAND, the sum of Five Million Four Hundred Ninety One Thousand Five Hundred Twenty Five and 35/xxDollars ($5,491,525.35), in legal and lawful money of the United States of America, together with interest thereon from time to time until such principal sum is repaid in full at the applicable federal short-term rate in effect from time to time under Section 1274(d) of the Internal Revenue Code of 1986, as amended from time to time, compounded semi-annually. Interest shall accrue on a daily basis and shall be calculated on the basis of the actual number of days elapsed but computed as if each year consisted of 360 days. This Note is being issued in connection with funding Primex Holdings, L.L.C.'s ("Primex Holdings") additional capital contribution to Primex Trading N.A., L.L.C.'s ("Primex Trading") pursuant to Primex Trading's aggregate capital call from all its members of $12,000,000 ("$12,000,000 Call"). Borrower owns an aggregate direct and indirect substantial economic interest in Primex Trading N.A., L.L.C. ("Primex Trading") and is the Manager thereof.

2. **Payment Terms.**
The outstanding principal balance of this Note, together with all accrued but unpaid interest owing thereon, shall be due and payable ON DEMAND made by Lender on Borrower in writing. Notwithstanding the above, this Note may be prepaid in whole or in part at anytime or from time to time. However, in any event, Borrower shall prepay to Lender any amount received by it from Primex Holdings with respect to any PAN Interest Acquisition, as defined below.

3. **Waiver.**
Borrower waives presentment, demand and presentation for payment, protest and notice of protest, and, except as otherwise specifically provided herein, any other notices of whatever kind or nature, bringing of suit and diligence in taking any action to collect any sums owing hereunder. From time to time, without in any way affecting the obligation of Borrower to pay the outstanding principal balance of this Note and any interest accrued thereon and fully to observe and perform the covenants and obligations of Borrower under this Note, without giving notice to, or obtaining the consent of, Borrower, and without any liability whatsoever on the part of Lender, Lender may, at his option, reduce the payments hereunder, release anyone liable on this Note or accept a renewal of this Note, join in any extension or subordination, or exercise any right or election hereunder. No one or more of such actions shall constitute a novation or operate to release any party liable for or under this Note, either as Borrower or otherwise.

4. **Remedies.**
Upon the occurrence of an Event of Default, Lender may avail himself of any legal or equitable rights which Lender may have at law or in equity or under this Note. The remedies of Lender as provided herein shall be distinct and cumulative, and may be pursued singly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefor shall arise. Failure to exercise any of the foregoing options upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect to the same or any other Event of Default, and no single or partial exercise of any right or remedy shall preclude other or further exercise of the same or any other right or remedy. Lender shall have no duty to exercise any or all of the rights and remedies herein provided or contemplated. The acceptance by Lender of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing rights or remedies at that time, or nullify any prior exercise of any such rights or remedies without the express written consent of Lender.

1

5. <u>Events of Default</u>.
Each of the following shall constitute an "Event of Default" hereunder:

(a) Borrower's failure to make any required payment of principal and/or interest under this Note on or before the date on which such payment is due under this Note; or

(b) Borrower's, Primex Holding's and/or Primex Trading's insolvency, general assignment for the benefit of creditors, or the commencement by or against Borrower, Primex Holding's and/or Primex Trading's of any case, proceeding, or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of Borrower's, Primex Holding's and/or Primex Trading's debts under any law relating to bankruptcy, insolvency, or reorganization, or relief of debtors, or seeking appointment of a receiver, trustee, custodian, or other similar official for Borrower, Primex Holding's and/or Primex Trading's or for all or any substantial part of Borrower's, Primex Holding's and/or Primex Trading's assets.

6. <u>Covenants</u>.
Borrower covenants as follows: (i) that for the period this Note is outstanding, it will not without the prior written consent of Lender make any distributions to Borrower's Economic Interest Holders as provided for in ARTICLE VI of Borrower's Operating Agreement or issue any Senior Debt, as defined below; (ii) that for the period this Note is outstanding, it will not without the prior written consent of Lender permit any distributions by Primex Holdings or Primex Trading, other than a pro rata distribution among its respective Economic Interest Holders as provided for in ARTICLE VI of Primex Holdings' or Primex Trading's respective Operating Agreement; or (iii) to lend the amounts borrowed hereunder to Primex Holdings ("Primex Holdings' Loan") for the making of an additional capital contribution to Primex Trading in connection with the $12,000,000 Call ("Primex Holdings Contribution.") Borrower further covenants that prior to agreeing to any sale of the economic interest in Primex Holdings owned by Financial Auction Network Incorporated, a New York corporation ("FAN"), an unrelated third party, the person(s) acquiring such interest must covenant to contribute to Primex Holdings as a capital contribution its percentage share of the Primex Holdings Contribution ("FAN Interest Acquisition").

"Senior Debt" shall mean the principal and interest on "Indebtedness" which by its terms is not subordinated to and expressly made junior in right of payment to this Note. "Indebtedness" shall mean, without duplication, (a) all indebtedness of the Lender for borrowed money or for the deferred purchase price of property or services (including, without limitation, all obligations, contingent or otherwise, of Lender in connection with any letters of credit, letter of credit facilities, acceptance facilities, or other similar facilities) but excluding trade payables that are incurred in the ordinary course of business, (b) all obligations of the Lender evidenced by bonds, notes, debentures or other similar instruments, (c) all indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired by Lender (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such property) and (d) all Indebtedness of others guaranteed by the Lender.; provided, however, that Indebtedness does not include (i) capital lease obligations of Lender for equipment used in Lender's ordinary course of business and (ii) any liability with respect to which a Permitted Lien permitted to be filed hereunder.

"Permitted Lien" shall mean (i) liens for taxes, assessments or governmental charges; (ii) statutory liens of landlords and liens of carriers, warehousemen, mechanics, materialmen and other liens imposed by law incurred in the ordinary course of business for sums not yet delinquent, or being contested in good faith, or discharged in the ordinary course of business; (iii) liens (other than any lien imposed by ERISA) incurred or deposits made in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security; (iv) purchase money mortgages or other purchase money liens or security interests (and extensions

2

thereof) granted by Borrower upon any fixed or capital assets hereafter acquired or constructed, so long as (a) any such mortgage, lien or security interest does not extend to or cover any other asset of Borrower other than fixtures which are deemed part of any realty and (b) such security interest, mortgage or lien secures the obligation to pay the purchase price, interest and related costs of such asset only.

7. **Consent.**

Lender consents to the conversion of the Primex Holdings' Loan (loan from Borrower to Primex Holdings referred to above) from debt to equity upon the consummation of the FAN Interest Acquisition and the acquirers' contribution to Primex Holdings of acquirer's respective percentage share of the Primex Holdings Contribution.

8. **No Set-off.**

The obligations of Borrower under this Note shall be unconditional and not subject to any defense, including, without limitation, set-off or recoupment.

9. **Negotiability.**

This Note is negotiable.

10. **Notices.**

Any notices to be given in accordance with the terms of this Note shall be effective immediately upon delivery if delivered in person or by confirmed telecopier transmission, or upon the third business day following deposit in the U.S. Mail if certified mail, return receipt requested, postage prepaid, and addressed to the addressee as follows:

| | |
|---|---|
| If to Borrower: | Madoff Technologies, L.L.C.<br>885 Third Avenue<br>25th Floor<br>New York, NY 10022<br>Attn: H. David Berkowitz, Esq. |
| If to Lender: | Bernard L. Madoff<br>885 Third Avenue<br>19th Floor<br>New York, NY 10022 |

Borrower or Lender may change its address as set forth above by delivering ten (10) days advance written notice to the other of the change of address.

11. **Payments.**

All payments by Borrower hereunder shall be applied (i) first to any interest due and unpaid under this Note, and (ii) thereafter, to any principal owing under this Note.

12. **Miscellaneous.**

This Note shall be governed by and construed in accordance with the laws of the State of New York. This instrument is made and is performable in New York, New York, and in the event of a dispute involving this Note or any other instrument executed in connection herewith; Borrower irrevocably agrees that venue for such disputes shall be in any court of competent jurisdiction in New York County, New York. Time is of the essence of this Note.

Neither any course of dealing by Lender nor any failure or delay on his part to exercise any right, power or privilege hereunder shall operate as a waiver of any right or remedy of Lender hereunder unless said waiver is in writing and signed by Lender, and then only to the extent specifically set forth in said writing. A waiver as to one event shall not be construed as a continuing waiver by Lender or as a bar to or waiver of any right or remedy by Lender as to any subsequent

3

event.

In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

In the event that this Note is placed in the hands of an attorney for its collection, Borrower agrees to pay Lender his collection costs including reasonable attorneys fees, litigation costs, court costs, and pre and post judgment interest at the highest rate allowed by New York law.

This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

This Note and all the covenants, promises, and agreements contained herein are binding upon and inure to the benefit of Borrower and Lender and their respective heirs, personal representatives, successors, and assigns.

Section headings or captions are for convenience only and are not to be used in interpreting the provisions of this Note.

This Promissory Note is executed and delivered effective the date stated above.

BORROWER:

Madoff Technologies, L.L.C.

By: _____
Name:   Peter B. Madoff
Title:   Manager

4

BNYM0001U983

```
                                                                    FC  - - -         CSM0010310000963                         866-1126-621
 - -   BERNARD L MADOFF                                                               2000-10-02 - 2000-10-31   081 001 052
 - -   885 THIRD AVENUE                                                               2000-10-31
 - -   NEW YORK, N.Y. 10022
                                                        DR-         - - -             O CHKS-    14      A     46                       176,291,731.23
 - -   '100224834998'                                                                                          98                       172,157,968.58
                                                                                      0 CR-       4                                       4,406,291.60
                                                                                                  4

*CHECKS AND ENCLOSURES FOR THESE TRANSACTIONS ARE INCLUDED FOR YOUR VERIFICATION AND RECONCILEMENT PURPOSES

FTJ00102453493100 401K              BEN:BERNARD L MADOFF                            001024          45,330.63       S
FTJ00102440577700 COMMERZ           B/O:BERNARD L MADOFF INVEST SEC                 001024           5,100.00       S
                                    CLOSING AVAILABLE BALANCE                       001024                                              245,449.82
BSJ00102577554400 FUNDS RECEIVED    B/O,BROKER SERVICES NYC                         001025                       8,028,627.75           153,614.86
FTJ00102584493101 OCC COLLECT       DBT:BERNARD L MADOFF                            001025                           3,925.00
TAE00102573331120                   AC726715 PRN/PUR:AIM LIQ ASSET POR              001025       7,700,000.00       S
FTJ00102564301100 DAN               BEN:BERNARD L MADOFF                            001025         160,000.00       S
                                    CLOSING BOOK BALANCE                            001025                                              418,001.57
BSJ00102617535000 FUNDS RECEIVED    B/O,BROKER SERVICES NYC                         001026                       5,276,227.37           416,933.89
FTJ00102684913101 FUNDS RECEIVED    DBT:BERNARD L MADOFF                            002026                          25,225.00
FTJ00102600853700 EXP               BEN:BERNARD L MADOFF                            002026         110,000.00       S
FTJ00102600863800 COMMERZ           B/O:BERNARD L MADOFF INVEST SEC                 001026           2,550.00       S
                                    CLOSING BOOK BALANCE                            001026                                            5,606,903.94
                                    CLOSING AVAILABLE BALANCE                       001026                                            5,606,854.59
CPB30100400554631 ITEM COUNT 00001 DEPOSIT TO ACCOUNT                               001027                           1,000.00       N
TAE00102772000850                   AC726715 PRN/SAL:AIM LIQ ASSET POR              001027                      10,100,000.00       S
* CPB3010040090018 CK NO 11993      CHECK                                           001027           1,000.00       N
BSJ00102740798800                   BEN,BROKERS SERVICES OWS                        001027       9,770,447.25       S
TAE00102772000840                   AC726715 PRN/PUR:AIM LIQ ASSET POR              001027       5,300,000.00       S
FTJ00102729723000 EXP               BEN:BERNARD L MADOFF                            001027         240,000.00       S
FTJ00102785127001 JJ                BEN:BERNARD L MADOFF                            001027          20,900.00       S
                                    CLOSING BOOK BALANCE                            001027                                              375,556.69
                                    CLOSING AVAILABLE BALANCE                       001027                                              374,556.69
TAE00103072022800                   AC726715 PRN/SAL:AIM LIQ ASSET POR              001030                      11,000,000.00       S
BSJ00103064644000 N0646DR00001030   BEN,BROKERS SERVICES OWS                        001030       8,019,710.89       S
BSJ00103064656500 D0646DR00001030   BEN,BROKERS SERVICES OWS                        001030       2,807,087.60       S
FTJ00103050300800 EXP               BEN:BERNARD L MADOFF                            001030         175,000.00       S
FTJ00103085399010 JJ                BEN:BERNARD L MADOFF                            001030           4,437.50       S
FTJ00103050309000 COMMERZ           B/O:BERNARD L MADOFF INVEST SEC                 001030           1,750.00       S
                                    CLOSING BOOK BALANCE                            001030                                              367,570.70
                                    CLOSING AVAILABLE BALANCE                       001030                                              367,570.70
CPB30500158154410 ITEM COUNT 00001 DEPOSIT TO ACCOUNT                               001031                       4,000,000.00       N
TAE00103173189700                   AC726715 PRN/SAL:AIM LIQ ASSET POR              001031                      15,000,000.00       S
TAE00103173189600                   AC726715 PRN/SAL:AIM LIQ ASSET POR              001031                       6,500,000.00       S
* CPB30500190360068 CK NO 11991     CHECK                                           001031          24,000.00       S
BSJ00103112293000 N0646DR00001031   BEN,BROKERS SERVICES OWS                        001031       7,960,396.60       S
BSJ00103112129000 D0646DR00001031   BEN,BROKERS SERVICES OWS                        001031       7,024,157.15       S
FTJ00103103785000 LOAN              BEN:MADOFF TECHNOLOGIES LLC                     001031       5,491,525.35       S
FTJ00103109595000 EXP               BEN:BERNARD L MADOFF                            001031         950,000.00       S
FTJ00103185812010 JJ                BEN:BERNARD L MADOFF                            001031          11,200.00       S
                                    CLOSING BOOK BALANCE                            001031                                            4,406,291.60
                                    CLOSING AVAILABLE BALANCE                       002031                                              406,291.60
```

Confidential Treatment Requested by The Bank of New York Mellon Corp.