# EXHIBIT A

08-01789-cgm Doc 201-1 Filed 05/07/09 Entered 05/07/09 13:01:04 Exhibit A
Pg 1 of 12

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re

Madoff Securities International Limited

Case No

Debtor in a Foreign Proceeding

_____/

**JOINT PROVISIONAL LIQUIDATORS' EXPEDITED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR COMMENCEMENT OF CHAPTER 15 ANCILLARY CASE IN AID OF FOREIGN MAIN PROCEEDING**

(Expedited Hearing Requested)
**Basis for Expedited Relief**

The above-captioned Petitioners/Liquidators request an expedited hearing in this matter on or before April 14, 2009, in order to obtain recognition in order to proceed with the additionally requested relief in the companion adversary matter. The Petitioners respectfully request that the Court waive the provisions of Rule 9075-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida ("Local Rules"), which requires an affirmative statement that a *bona fide* effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution. *A true copy of the Motion and any and all Exhibits have been served on all interested parties the date of this filing*

Petitioners, **Stephen John Akers, Mark Richard Byers, and Andrew Laurence Hosking,** appointed by the High Court of Justice in England as the Joint Provisional Liquidators (collectively, "Petitioners" or "Liquidators") of Madoff Securities International Limited ("MSIL"), by their attorneys Baach Robinson & Lewis PLLC and Squire Sanders & Dempsey LLP, respectfully submit this Petition pursuant to Chapter 15 of the U.S. Bankruptcy Code, 11 U.S.C. § 1501 *et seq.*, seeking recognition of the High Court Provisional Liquidation and commencement of an ancillary case in aid of that proceeding ("Expedited Petition"). The requested relief will enable the Liquidators to gather information relating to MSIL's assets, affairs, rights, obligations, and liabilities,

and to marshal assets that may have been fraudulently transferred from MSIL to individuals residing within the jurisdiction of the Court. The Liquidators have filed an emergency motion for injunctive relief and adversary complaint concurrently with this Petition. The Declaration of Stephen John Akers ("Akers Declaration") is attached as Exhibit "A" in support of this Petition and in support state:

## BACKGROUND FACTS

1. The petitioning Liquidators are Licensed Insolvency Practitioners and partners in the accountancy firm of Grant Thornton UK LLP ("Grant Thornton") located at 30 Finsbury Square, London EC2A 1AG. They were appointed as Joint Provisional Liquidators of MSIL by order of the High Court of Justice, Chancery Division, Companies Court in London, England on December 19, 2008, in the matter styled *In re Madoff Securities Int'l Ltd.*, No. 11527 of 2008 (EWHC) (hereinafter, the "Provisional Liquidation"). A true and correct copy of the Order of the High Court ("HC Order") is attached as Exhibit "B."

2. MSIL is an English company which had its statutory registered office at 12 Berkeley Street, Mayfair, London W1X 5AD. MSIL's "center of main interests," as that term is used in Chapter 15, is in England. MSIL was engaged in the business of securities trading and operated from an office in the Mayfair District of London with approximately 28 employees, 14 of whom were traders. Essentially, MSIL traded for the personal accounts of Bernard L. Madoff (hereinafter, "Mr. Madoff") and members of his family. In addition, the assets and bank accounts of MSIL were used by Mr. Madoff for a variety of purposes, including the purchase of valuable personal assets such as luxury yachts, automobiles, and furnishings for himself and members of his family.

3. Mr. Madoff is MSIL's majority shareholder. Members of his family and other associates own the remainder of the shares.

4. On March 12, 2009, Mr. Madoff, a former chairman of NASDAQ and prominent Wall Street businessman, pleaded guilty to eleven felony counts before the United States District Court for the Southern District of New York for carrying out what is believed to be the largest financial fraud in history, totaling approximately $65 billion. Mr. Madoff, who is 70 years old, is incarcerated and will remain so pending sentencing in June. He faces up to 150 years in prison. A true and correct copy of Mr. Madoff's guilty plea is attached as Exhibit "C."

5. The principal instrumentality of Mr. Madoff's fraud was Bernard L. Madoff Investment Securities LLC ("BMIS"). Mr. Madoff has admitted that BMIS, which purported to manage tens of billions of dollars of investor funds, was in fact a giant "Ponzi Scheme." BMIS had approximately 5,000 investors, including numerous charities, educational institutions, and individuals.

6. The Southern District of New York has restrained, and appointed officials to manage, both Mr. Madoff's personal assets and the assets of BMIS.

7. On December 12, 2008, in an action styled *Securities and Exchange Commission v. Madoff*, No. 08 Civ. 10791 (LIS) (S.D.N.Y.), the New York District Court entered a Temporary Restraining Order ("TRO") on the application of the SEC, which had the effect of freezing the personal assets of Mr. Madoff, including the majority shares in MSIL.[1] The court appointed Mr. Lee Richards as Receiver (hereinafter, the "Receiver") of Mr. Madoff's personal assets, and Mr. Richards received a power of

---

[1] On December 18, 2008 the TRO was ordered to be continued until trial. A true and correct copy of the December 18, 2008 Order is attached as Exhibit "E.".

attorney from Mr. Madoff in relation to Mr. Madoff's shareholding in MSIL. A true and correct copy of the December 12, 2008 Order is attached as Exhibit "D."

8.  On December 15, 2008, Mr. Irving H. Picard was appointed as Trustee of BMIS pursuant to the Securities Investor Protection Act ("SIPA"). A true and correct copy of the December 15, 2008 Order is attached as Exhibit "F."

9.  In an Order issued on March 23, 2009 (the "Substitution Order"), the court directed that Mr. Richards appoint Mr. Picard as the substitute attorney in fact in respect of the MSIL shares and discharged and terminated the receivership at Mr. Richards' request. A true and correct copy of the Substitution Order is attached as Exhibit "G".

## PROCEEDINGS IN ENGLAND

10.  The practical effect of the TRO and the appointment of the Receiver and the SIPA Trustee by the District Court was that MSIL ceased to be able to carry on its business. Barclays Capital, which acted as prime broker for MSIL in England, refused to transact any further business for the company. The Receiver requested that the directors of MSIL freeze its bank accounts, which they did. At the same time, because his interest in MSIL was through Mr. Madoff's shareholding, the Receiver was not positioned to operate the business and gather in its assets. MSIL's directors were reluctant to continue the business in view of the TRO, the freezing of the company's bank and trading accounts, and its involvement in a major fraud investigation.

11.  The directors elected to place MSIL in provisional liquidation pending the outcome of the investigations in both the US and the UK. The Liquidators were then appointed by the High Court in London, placing the company's assets in the charge of independent insolvency office holders empowered to investigate the affairs of MSIL and

determine whether the company is solvent or insolvent and, if it is solvent, who, ultimately, is entitled to its assets.

12. Pursuant to Section 144 of the UK Insolvency Act 1986, "where a provisional liquidator has been appointed, [he] shall take into his custody or under his control all the property or things in action to which the company is or appears to be entitled."

13. The Order of the High Court ("HC Order") appointing the Liquidators directs that the "affairs, business and property of the Company be managed by the joint provisional liquidators" and empowers the Liquidators, *inter alia*, to "locate, protect, secure, take possession of, collect and get in all property or assets (of whatever nature) to which the Company is or appears to be entitled"; to "investigate the affairs of the Company"; and to "bring or defend or intervene in any action or other legal proceedings whether in their own names or in the name and on behalf of the Company in the jurisdiction of this Court or in any other jurisdiction." Ex. B at ¶ 1 & sch. 1, ¶¶ 1, 3, 11. In a UK Provisional Liquidation the powers of the Liquidators are typically set out in full in the order appointing them under Section 135 of the UK Insolvency Act 1986.

14. Since their appointment, the Liquidators have worked closely with the SIPA Trustee to identify assets located in the US that may have been acquired through fraudulent transfers of assets from MSIL accounts to individuals residing in the US. The Liquidators are also cooperating with the Serious Fraud Office (SFO), the Financial Services Authority, and other prosecutorial and regulatory agencies in England, as well as cooperating, pursuant to established legal procedures for sharing information

internationally, with US agencies such as the Federal Bureau of Investigation (FBI) and the SEC.

15. The Liquidators believe that persons resident in this District—in particular Mr. Peter Madoff ("Peter Madoff" or "PM"), the brother of Bernard Madoff and a director and shareholder of MSIL—are likely to have important information relating to MSIL's assets and affairs. The Liquidators also believe that Peter Madoff is personally in receipt of assets that may have been fraudulently transferred to him by MSIL or may otherwise be recoverable by MSIL.

16. The Information to which Mr. Madoff pleaded guilty states that "MADOFF . . . directed the transfer of funds from the MSIL Accounts to purchase and maintain property and services for the personal use and benefit of MADOFF, his family members and associates." A true and correct copy of the Information is attached as Exhibit "H" at 7.

17. In March and May 2008, Mr. Madoff caused wire transfers to be made to the Aston Martin company in the amounts of £35,000 and £100,000, respectively, for a total of £135,000, in order to enable the purchase of a vintage Aston Martin automobile, model number DB2/4 1964 (hereinafter, the "Vehicle"), for Mr. Madoff's brother Peter Madoff.[2] Although the transactions are still being investigated, it appears that these transfers were gratuitous and not for reasonably equivalent value.

18. Upon information and belief, the Vehicle was delivered to Peter Madoff at his and his wife Marion Madoff's residence at 200 Algoma Road, Palm Beach, Florida 33480 and remains within this District.

---

[2] In dollars based on the applicable, contemporaneous exchange rates, the amounts are, respectively $69,300 and $198,000, for a total of $237,600.

19. The Liquidators seek by this Petition recognition of the Provisional Liquidation, which will enable them to pursue the Vehicle and, potentially, other assets recoverable to MSIL, and to conduct discovery from Peter Madoff and, potentially, others concerning MSIL's assets, affairs, rights, obligations, and liabilities.

## JURISDICTION AND VENUE

20. This petition is filed pursuant to 11 U.S.C. § 1501, *et seq.* of the Bankruptcy Code. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1334.

21. The provisional liquidation of MSIL before the High Court is a foreign main proceeding as defined in 11 U.S.C. § 1502(4), and the Liquidators are foreign representatives of MSIL in a foreign proceeding as that term is used in 11 U.S.C. § 1501(b). Joint Provisional Liquidators are well recognized as foreign representatives under Chapter 15 of the Bankruptcy Code and its predecessors; they are supervised by the High Court in England; and they are charged by their appointing court with investigating the financial affairs of the company, gathering in its assets, identifying creditors, and, where appropriate, bringing and/or defending litigation both in England and in other jurisdictions.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1410(3).

## NOTICE

23. There are no unsatisfied notice requirements to creditors or others in respect of this Petition. The Liquidators report directly to the High Court and are empowered by that Court's orders to commence foreign proceedings such as this Ancillary Case and the Adversary Action upon their own initiative and authority as described herein and without notice to creditors. A provisional liquidation under English

law in this respect resembles a U.S. receivership. The Liquidators do not administer a claim process and do not report to or require approval from a creditors' committee or from individual creditors. As a matter of English law, therefore, creditor notice is not required. Notice is also sufficient pursuant to Chapter 15, which merely requires notice to foreign creditors where notice to other creditors is required.

## REQUEST FOR RELIEF

24. Chapter 15 of the Bankruptcy Code was specifically designed to afford foreign representatives, such as the Liquidators, the cooperation and assistance of the U.S. courts in the performance of their duties. Indeed, the first stated objective of the legislation is to promote "cooperation between . . . courts of the United States . . . and . . . the courts and other competent authorities of foreign countries involved in cross-border insolvency cases." 11 U.S.C. § 1501(a)(1) (West 2008); see also id. § 1501(b)(1) (chapter applicable where assistance sought by "foreign representative in connection with a foreign proceeding"). Having been duly appointed by the High Court of Justice, Chancery Division, Companies Court in England, the Liquidators are foreign representatives, and the Provisional Liquidation before the High Court is a foreign proceeding. Recognition of the provisional liquidation is therefore appropriate pursuant to Chapter 15.

25. Recognition of the Provisional Liquidation under Chapter 15 will allow the Liquidators to conduct discovery and, if and as appropriate, commence litigation in the United States and in this District, in order to carry out the investigative and asset recovery responsibilities with which they have been charged by the English High Court. See 11 U.S.C. §§ 1509 (capacity to sue within U.S.), 1521(a)(4) (ability to conduct

discovery). Granting of the relief sought herein will best assure an economical and expeditious investigation and marshaling of assets fraudulently obtained through funds transferred from MSIL. In particular, the ability to obtain documents and testimony from Peter Madoff and other persons with information will be essential in discovering the disposition of assets believed to have been fraudulently purchased with MSIL funds and through MSIL accounts, including without limitation the Vehicle.

26. Accordingly, the Liquidators seek an order of this Court pursuant to Chapter 15 as follows:

a. Recognizing the Provisional Liquidation before the English High Court of Justice as a foreign main proceeding and the Liquidators as the exclusive representatives of MSIL pursuant to those proceedings;

b. Granting comity to and enforcing the terms of the Orders of the English Court with respect to the Liquidators' duties and functions;

c. Providing for the Liquidators' administration and realization of all of MSIL's assets within the territorial jurisdiction of the United States as provided in 11 U.S.C. § 1509(b)(1);

d. Recognizing and confirming the Liquidators' capacity to commence legal actions within the territorial jurisdiction of the United States as provided in 11 U.S.C. § 1509(b)(1);

e. Permitting the Liquidators to conduct discovery as provided in 11 U.S.C. § 1521(a)(4) and/or other applicable provisions of law;

f. Permitting the Liquidators to examine Peter Madoff pursuant to Bankruptcy Rule 2004 and to require him to produce all documents in his

possession, custody, or control that are relevant to the Provisional Liquidation or reasonably calculated to lead to the discovery of admissible evidence;

g. Requiring Peter Madoff and all persons and entities on notice of this Order who are in possession or control of records and information relating to funds, assets, liabilities, property, or accounts now or formerly of MSIL or any matter which may affect the liquidation of MSIL to preserve and submit such information to the Liquidators; and

h. Granting the Liquidators leave to seek such further relief as may be appropriate, including without limitation relief pursuant to 11 U.S.C. § 1521 and § 1507 (additional assistance).

WHEREFORE, Liquidators respectfully request that this relief be granted on an expedited basis.

## CERTIFICATIONS

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true copy of this Petition has been furnished by electronic notice and/or U.S. Mail to all interested persons provided for on the Master Service List on this 14th day of April, 2009.

Dated: April 14, 2009

Respectfully submitted,

**Squire, Sanders & Dempsey LLP**

By: /s/ Tina M. Talarchyk

                              Tina M. Talarchyk, Esq.
                              FL Bar No. 794872
                              1900 Phillips Point West
                              777 South Flagler Drive
                              West Palm Beach, FL 33401-6198
                              Telephone: +1.561.650.7261
                              Facsimile: +1.561.655.1509
                              ttalarchyk@ssd.com

                              Counsel for Liquidators

Of Counsel:

Eric L. Lewis, Esq.
H. Bradford Glassman, Esq.
Elizabeth L. Marvin, Esq.
BAACH ROBINSON & LEWIS PLLC
1201 F Street NW, Suite 500
Washington D.C. 20004
Telephone: (202) 833-8900
Facsimile: (202) 466-5738