## AIRCRAFT PILOT AND MANAGEMENT SERVICES AGREEMENT

Dated as of the 3rd day of March, 2008
by and among

BDG MLJF, Inc., Inc.
("BDG"),

and

Bernard L. Madoff Investment Securities, LLC
("Madoff"),

and

Talon Air Inc.,
as Services Provider,

concerning one Embraer Legacy 600, Model EMB-135BJ aircraft bearing
U.S. registration number N18BM,
and
manufacturer's serial number 14501034.

\* \* \*

-1-

## AIRCRAFT PILOT AND MANAGEMENT SERVICES AGREEMENT

THIS AIRCRAFT PILOT AND MANAGEMENT SERVICES AGREEMENT (the "Agreement") is entered into as of 3rd day of March, 2008 (the "Effective Date"), by and among BDG MLJF, Inc., a New York corporation ("BDG"), Bernard L. Madoff Investment Securities, LLC, a New York limited liability company ("Madoff") (BDG and Madoff are sometimes referred to herein individually and/or collectively as "Operator", as the context shall require), and TALON AIR INC., a Delaware corporation (the "Services Provider").

### WITNESSETH:

**WHEREAS**, on the Delivery Date each Operator will possess a non-exclusive leasehold interest in the Aircraft described and referred to herein;

**WHEREAS**, each Operator intends to operate the Aircraft in furtherance of its own respective business and for its own respective personal use under Part 91 of the FARs;

**WHEREAS**, Services Provider is experienced in the operation and management of the Aircraft's type; and

**WHEREAS**, each Operator desires the services of an independent contractor to provide pilot and aircraft management support services in connection with such Operator's flight operations.

**NOW, THEREFORE**, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

The "**WHEREAS**" clauses are an integral part of this Agreement and shall have meaning and effect as though they were set forth at length in numbered paragraphs herein.

### SECTION 1. DEFINITIONS

1.1  The following terms shall have the following meanings for all purposes of this Agreement:

"**Aircraft**" means the Airframe, the Engines, and the Aircraft Documents. Such Engines shall be deemed part of the "Aircraft" whether or not from time to time attached to the Airframe or removed from the Airframe.

"**Aircraft Documents**" shall have the meaning set forth in Section 4.5.

"**Airframe**" means the Embraer Legacy 600 aircraft, model EMB-135BJ, manufacturer's serial number 14501034 and United States registration number N18BM, together with any and all Parts (including, but not limited to, landing gear and auxiliary power units but

-2-

excluding Engines or engines) so long as such Parts shall be either incorporated or installed in or attached to the Airframe.

"**Applicable Law**" means, without limitation, all applicable laws, treaties, international agreements, decisions and orders of any court, arbitration or governmental agency or authority and rules, regulations, orders, directives, licenses and permits of any governmental body, instrumentality, agency or authority, including, without limitation, the FARs and 49 U.S.C. ' 41101, *et seq.*, as amended.

"**Average Hourly Fixed Operating Costs**" means the total of all Fixed Expenses for the operation of the Aircraft as set forth in Exhibit B, presented in terms of the average of all such costs for each Flight Hour of operation of the Aircraft, as recalculated from time to time in accordance with Section 4.8 hereof.

"**Business Day**" means any day of the year in which banks are not authorized or required to close in the State of New York.

"**Delivery Date**" means the date on which financial closing occurs and title to the Aircraft is transferred to Blumenfeld Development Group, Ltd. or its affiliate, which is subject to change by Embraer.

"**Effective Date**" shall have the meaning set forth in the preamble hereof.

"**Engines**" means two (2) Rolls Royce AE 3007- A1E model engines, serial numbers CAE-313066 (R/H) and CAE-313067 (L/H), together with any and all Parts so long as the same shall be either incorporated or installed in or attached to such Engine. Any engine which may be, from time to time, substituted for an Engine shall be deemed to be an Engine and subject to this Agreement for so long as it remains attached to the Airframe.

"**FAA**" means the Federal Aviation Administration of the United States Department of Transportation or any successor agency.

"**FARs**" means collectively the Aeronautics Regulations of the FAA and the United States Department of Transportation, as codified at Title 14, Parts 1 to 399 of the United States Code of Federal Regulations.

"**Fixed Expenses**" shall be those expenses for the operation of the Aircraft as set forth in Exhibit B, as amended from time to time.

"**Flight Hour**" means one (1) hour of use of the Aircraft in flight operations, as recorded on the Aircraft hour meter and measured from the time the Aircraft takes off at the beginning of a flight, to the time the Aircraft lands at the end of a flight in one-tenth ($1/10^{th}$) of an hour increments.

"**Hangar Rent**" shall have the meaning set forth in Section 5.1 hereof.

"**Incidental Expenses**" means all out-of-pocket costs incurred in connection with any flight of the Aircraft, including landing fees, ramp fees, overnight hangar fees (if such hangar fees are requested by Operator), de-icing costs, contaminant recovery costs, catering costs, in-flight entertainment and telecommunications charges, ground transportation, travel expenses of the flight crew, charts, manuals, and other publications obtained for the specific flight (e.g., navigation, operations, and maintenance), and any other similar items.

"**Lien**" means any mortgage, security interest, lease or other charge or encumbrance or claim or right of others, including, without limitation, rights of others under any airframe or engine interchange or pooling agreement, except for mechanic's liens to be discharged in the ordinary course of business.

"**Maintenance**" shall mean inspection, overhaul, repair, preservation, replacement of parts, maintenance, preventive maintenance, fueling, servicing, hangaring, and internal and external cleaning.

"**MEL**" or "**Minimum Equipment List**" shall have the meaning set forth in Section 4.6.

"**Monthly Management Fee**" shall have the meaning set forth in Section 5.1 hereof.

"**Operating Base**" shall mean Republic Airport, Farmingdale, New York.

"**Operational Control**" shall have the same meaning given the term in Section 1.1 of the FARs.

"**Owner**" shall mean, collectively, BGD Aircharter, Inc. and BLM Air Charter LLC.

"**Pilot in Command**" shall have the same meaning given the term in Section 1.1 of the FARs.

"**Parts**" means all appliances, components, parts, instruments, appurtenances, accessories, furnishings or other equipment of whatever nature (other than complete Engines or engines) which may from time to time be incorporated or installed in or attached to the Airframe or any Engine and includes replacement parts.

"**Taxes**" means all taxes of every kind (excluding any tax measured by or assessed against a taxpayer's income, including, without limitation, any income tax, gross income tax, net income tax, or capital gains tax) assessed or levied by any federal, state, county, local, airport, district, foreign, or other governmental authority, including, without limitation, sales taxes, use taxes, retailer taxes, federal air transportation excise taxes, federal aviation fuel excise taxes, and other similar duties, fees, and excise taxes.

"**Term**" shall have the meaning set forth in Section 2.3 hereof.

-4-

"**Total Fixed Expenses**" shall have the meaning set forth on Exhibit B hereto, as may be amended from time to time.

"**Total Variable Expenses**" means the total of all Variable Expenses for the operation of the Aircraft as set forth in Exhibit C, as revised from time to time in accordance with Section 5.2 hereof.

## SECTION 2. AGREEMENT, SCOPE AND TERM

2.1  **Independent Contractor Agreement.** Services Provider agrees to provide to each Operator during the Term of this Agreement executive aircraft management services associated with the Aircraft and such Operator's flights thereof. This Agreement shall constitute an independent contractor agreement, and Services Provider shall act as an independent contractor with respect to the provision and performance of services hereunder. Nothing in this Agreement shall be deemed, construed, or interpreted as (i) conveying to Services Provider any right, title, or interest in the Aircraft, (ii) conveying to Services Provider any ability to bind either Operator or act as its agent, or (iii) creating in any way any employer/employee relationship, association, partnership, joint venture, or principal/agent relationship between Services Provider and each Operator.

2.2  **Flight Operations.** All flight operations on behalf of an Operator under this Agreement shall be conducted under Part 91 of the FARs.

2.3  **Term.** The term of this Agreement (the "Term") shall commence on the Delivery Date, and be effective for a period of one (1) year, unless terminated sooner pursuant to the express provisions herein contained. At the end of the Term or any subsequent Term, this Agreement shall automatically be renewed for an additional one (1) year Term. Each party shall have the right to terminate this Agreement with or without cause on one-hundred twenty (120) days prior written notice to the other party, provided, however, such termination shall in no way affect, impair, or limit any liability or obligation of one party to the other, which had accrued prior to such termination.

## SECTION 3. Aircraft Crews

3.1  **Aircraft Crew Services.** Services Provider shall locate, retain, train, and supervise all pilot and ground crew personnel necessary for operations under Part 91 of the FARs (collectively, the "Aircraft Crew"), subject to each Operator's express right to reject any particular person. All members of the Aircraft Crew shall be fully competent and experienced, duly licensed, qualified, and, if applicable, type-rated in the Aircraft, in accordance with the requirements of Applicable Law and all insurance policies covering the Aircraft. All members of the Aircraft Crew who are pilots shall hold appropriate and current pilot and medical certificates and be fully trained in accordance with Services Provider's FAA-approved training program, including without limitation initial and recurrent training and, where appropriate, contractor-provided simulator training, and, for any particular flight, shall not have reached the crew duty limits set forth in Section 3.8 herein for the applicable time period. The Aircraft Crew

-5-

shall be dedicated personnel for the Operators' flights of the Aircraft, except that (i) in the event that any member of the Aircraft Crew is unavailable for any particular flight due to any reasonable cause (including, without limitation, illness, training, vacation, personal emergency, or crew duty limits), Services Provider shall use its reasonable best efforts to substitute a similarly qualified person subject to each Operator's express right to reject any particular person, and (ii) Services Provider may utilize any member of the Aircraft Crew for any purpose whatsoever outside of the scope of this Agreement so long as such utilization does not conflict with Services Provider's performance under this Agreement or cause any additional expense to an Operator. SERVICES PROVIDER ACKNOWLEDGES THAT EACH OPERATOR IS RELYING ON SERVICES PROVIDER'S EXPERIENCE AND EXPERTISE IN COMPLYING WITH ALL APPLICABLE LAW WITH RESPECT TO AIRCRAFT CREW QUALIFICATIONS, EXPERIENCE, AND LICENSING.

3.2    **Aircraft Crew Assignments.** Upon selection by Services Provider and approval by each Operator, each member of the Aircraft Crew will be carried on the payroll of Services Provider during the Term hereof. The foregoing notwithstanding, each Operator and Services Provider agree that each member of the Aircraft Crew serves on an Operator's flights at the sole pleasure of such Operator, and such Operator shall have the absolute right to prohibit any person from serving as a member of the Aircraft Crew at any time. Services Provider shall promptly comply with any request by an Operator to reassign any member of the Aircraft Crew to other duties. Services Provider shall keep each Operator informed of Aircraft Crew member qualifications and performance, and consult with each Operator regarding the advisability of continued assignment to the Aircraft Crew.

3.3    **Mechanics.** Services Provider shall provide outside factory-approved training for at least one (1) appropriately certificated and rated mechanic assigned to the maintenance of the Aircraft. All mechanics assigned to the maintenance of the Aircraft shall be competent with respect to the Aircraft with either (i) training and approval by Embraer and Rolls-Royce or (ii) direct supervision by a Services Provider FAA Airframe & Powerplant (A&P) licensed employee that has had training by Embraer and Rolls-Royce, provided that this is acceptable to Embraer and Rolls-Royce for the purposes of the continuation of the manufacturer's warranties in effect on the Delivery Date. The cost of all training pursuant to this paragraph that is not provided by Embraer pursuant to the product support package defined in that certain Purchase Agreement dated April ___, 2007 between Embraer and Blumenfeld Development Group, Ltd. shall be considered a Fixed Expense.

3.4    **Aircraft Crew Employment.** All members of the Aircraft Crew shall be employees or agents of Services Provider. Services Provider shall be solely responsible for payment of Aircraft Crew members' salaries and benefits, and all federal, state, and other applicable employment taxes and insurance, including, without limitation, social security, unemployment and disability insurance and other payroll taxes with respect to Services Provider's employees and agents, and Services Provider shall indemnify and hold harmless each Operator from any and all claims that may be made by Services Provider's employees or agents, under Workers' Compensation or otherwise.

3.5 **Aircraft Crew Salaries.** Each Operator shall have the right to approve or reject the aggregate amount of the salary and benefits packages of all Aircraft Crew members. Services Provider shall determine the individual distributions from such aggregate amount on the basis of merit.

3.6 **Aircraft Crew Performance Reviews.** Services Provider shall conduct a performance review of each member of the Aircraft Crew once per year during the anniversary month of the Effective Date of this Agreement. Each Operator shall have the right to approve or reject the aggregate amount of any salary increase(s) proposed by Services Provider as a result of such performance review. If approved, Services Provider shall determine the individual distributions from such aggregate amount on the basis of merit as determined by such performance review.

3.7 **Aircraft Crew Training.** For each Aircraft Crew member, as required under the FARs and in conformity with industry standards, Services Provider shall provide or arrange for all required training, including without limitation initial and recurrent training. Each Operator shall provide Services Provider with reasonable access to and use of the Aircraft, at Services Provider's expense for direct operating costs thereof, solely for the purpose of conducting all training and testing that is necessary for compliance with the FARs (including, without limitation, proficiency checks, line checks, and type training and certification). Services Provider agrees to minimize such requirements and to utilize simulator-based training to the fullest extent possible.

3.8 **Pilot Duty Times.** Unless otherwise agreed between the parties to this Agreement, each pilot that is member of the Aircraft Crew shall be limited in any twenty-four hour period to (i) ten hours of flight time, and (ii) fourteen hours of total duty time (as those terms are interpreted by the FAA).

## SECTION 4. EXECUTIVE AIRCRAFT MANAGEMENT

4.1 **Scheduling.** Services Provider shall maintain a scheduling log and shall schedule all use of the Aircraft by each Operator and any other lessees of the Aircraft, including Services Provider as lessee under that certain Non-Exclusive Aircraft Lease Agreement dated as of the date hereof, and shall coordinate all Maintenance of the Aircraft so as to minimize interference with any party's scheduled or anticipated utilization. Each Operator shall have equal, "first come, first served", rights to schedule use of the Aircraft. Each Operator shall provide Services Provider written or oral notice of any proposed flight operation as far in advance as possible. Upon receipt of such notice, Services Provider shall use its best efforts to assure that the Aircraft and Aircraft Crew are fully prepared and ready for departure at least forty-five minutes prior to the proposed departure time, or, if the Aircraft is unavailable due to Maintenance or otherwise, Services Provider shall use its best efforts to arrange for use of a comparable alternate aircraft. The parties agree that no period of required Maintenance shall be delayed or canceled on account of scheduling of the Aircraft unless such required Maintenance can be properly deferred under Applicable Law and Embraer and Rolls-Royce's approved aircraft inspection program.

-7-

4.2    **Hangar, Office, and Shop Facilities.** Services Provider shall provide appropriate and adequate indoor hangar facilities, office, and shop facilities at the Operating Base. Upon each Operator's written authorization, Services Provider shall arrange if necessary for hangar, office, and/or shop facilities at other locations at each Operator's expense.

4.3    **Maintenance of Aircraft.** Services Provider shall maintain the Aircraft in a good and airworthy operating condition and in compliance with (i) applicable FARs, (ii) the Aircraft Flight Manual, (iii) Services Provider's approved aircraft inspection program, (iv) the operating and maintenance instructions furnished by Embraer, including without limitation, enrolling the Aircraft in the flight hour based Embraer Executive Care (EEC) and flight hour based Rolls-Royce Corporate Care (CC) aircraft and engine maintenance programs, (v) each Operator's wishes, (vi) such ordinary and customary condition as may apply to the Aircraft of this type as used in charter service, and (vii) all Applicable Law. Services Provider shall perform or arrange for necessary line Maintenance of the Aircraft at the Operating Base and, if required, at other locations. All Aircraft scheduled and unscheduled events shall be performed at an Embraer authorized service center and all scheduled and unscheduled Engine Maintenance events shall be performed at a Rolls-Royce authorized service center, or such Aircraft and/or Engine Maintenance scheduled and unscheduled events may be performed by Services Provider in accordance with the parameters established in Section 3.3 of this Agreement. Services Provider shall arrange for engine and airframe maintenance service plans when appropriate. Services Provider shall obtain parts and services free of charge under warranty coverage including, without limitation, the Embraer Executive Care and Rolls Royce Corporate Care aircraft and engine maintenance programs, to the extent available to Owner or any Operator for the Aircraft. If none are so available, Services Provider shall negotiate with vendors of parts and services to obtain the most favorable prices for such parts and services.

4.4    **Fuel and Lubricants.** Services Provider shall arrange for fueling, lubricant services, and all other consumables of the Aircraft at the Operating Base and, if required, at other locations. Services Provider shall use its best efforts to obtain the most favorable prices for each of the foregoing items. Fuel charges for all fuel supplied by Services Provider at the Operating Base for use in the Aircraft shall be charged a rate equal to Services Provider's actual cost to purchase the fuel plus $1.25 per gallon. Fuel charges for all fuel purchased by Services Provider at locations other than the Operating Base for use in the Aircraft shall be charged at a rate equal to Services Provider's actual cost thereof, and any negotiated fuel savings will be passed through to Operator.

4.5    **Aircraft Documents.** Services Provider will at all times complete, maintain and preserve, or cause to be completed, maintained and preserved, in a current and up-to-date manner, and in a fire proof location and in the English language, all flight records, maintenance records, historical records, modification records, overhaul records, manuals, logbooks, authorizations, drawings and data required or recommended by the Airframe, Engine, or any Part manufacturer, or required from time to time by the FAA with respect to the Aircraft, including without limitation shop records detailing service checks, inspections, tests, repairs,

-8-

or overhauls and defined further in Exhibit D attached hereto. All documentation of any type referred to in the preceding sentence is herein individually and collectively referred to as the "Aircraft Documents". All Aircraft Documents shall be open for inspection and audit by each Operator at the Operating Base upon no less than twenty-four (24) hours notice during the Term of this Agreement and for the period ending two (2) years after termination of this Agreement. In addition, Services Provider shall maintain facilities at the Operating Base for record keeping, scheduling, operations supervision, accounting support, and other necessary administrative functions during the Term of this Agreement. Services Provider shall provide to each Operator an annual budget, monthly reports, and such other reports regarding the Aircraft as any Operator may reasonably request in writing.

4.6    **Minimum Equipment List.** Services Provider shall obtain the Master Minimum Equipment List ("MMEL") for the Aircraft from the FAA, and adapt and submit a Services Provider specific Minimum Equipment List ("MEL") based upon the MMEL approved by the FAA, whereupon the MEL shall be the property of Operator and remain with the Aircraft.

4.7    **FAA Liaison.** Services Provider shall serve as each Operator's liaison to the FAA, DOT and other state, federal, foreign, and local governmental agencies for purposes of assisting each Operator in complying with Applicable Law, filing FAA or state applications for Aircraft Registration, and obtaining necessary customs permits, licenses, landing and overflight permits, etc., for operations within and outside of the United States.

4.8    **Estimated Average Hourly Fixed Operating Costs.** Immediately upon execution and delivery of this Agreement, and semi-annually thereafter, Services Provider shall calculate a reasonable estimate of the Average Hourly Fixed Operating Costs for operations of the Aircraft, and shall promptly deliver such estimate to each Operator on the form attached hereto as Exhibit A. In calculating the estimate, Services Provider shall consult with each Operator to determine the projected overall utilization rate of the Aircraft, and shall consider all relevant factors, including all actual historical, and projected future, Fixed Expenses incurred for all use, and operations of the Aircraft.

4.9    **Additional Services.** Services Provider shall provide and/or arrange for all other services as may be reasonably required or appropriate with respect to the operation and/or management of the Aircraft hereunder. At any Operator's request and in connection with such Operator's flights, Services Provider shall arrange for ground transportation services and special commissary/catering services at each Operator's expense.

## SECTION 5. COMPENSATION AND REIMBURSEMENTS

5.1    **Monthly Management Fee.** As consideration for the services provided pursuant to this Agreement, Services Provider shall be compensated by the Operators, on a monthly basis, the total amount of Eleven Thousand Eighty-Three and 34/100 United States Dollars (US$11,083.34) as a fixed management fee ("Monthly Management Fee") and Seven Thousand Five Hundred Dollars ($7,500.00) as hangar rent at the Operating Base ("Hangar Rent"), regardless of Operator's actual usage of the Aircraft. Each Operator shall be

-9-