shall not have remedied the outstanding default within ten (10) days of receiving notice of such default from Operator, such Operator may terminate this Agreement.

## SECTION 10. NOTICES

10.1  All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made when delivered by hand, or five (5) Business Days after being sent by registered mail, return receipt requested, postage prepaid, or on the next Business Day when sent by overnight courier or when transmitted by means of facsimile or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type and followed promptly with the original thereof) in each case at the address set forth below:

If to Operator:   BDG MLJF, Inc.
c/o Blumenfeld Development Group, Ltd.   Tel: (516) 921-0800
300 Robbins Lane                          Fax: (516) 921-0053
Syosset, New York                         E-mail: eblumenfeld@bdg.net
Attn: Edward Blumenfeld

and

Bernard L. Madoff Investment Securities, LLC   Tel:   (212) 230-2424
885 3rd Avenue, 18th Floor            Fax:   (212) 486-8178
New York, New York 10022-4877                   E-mail: mdm@madoff.com
Attn: Mark Madoff

With a copy to:  Blumenfeld Development Group, Ltd.   Tel:    (516) 624-1925
300 Robbins Lane                                       Fax:    (516) 624-1934
Syosset, New York                                      E-mail: dkaplan@bdg.net
Attn: David J. Kaplan, Esq.

and

Bernard L. Madoff Investment Securities, LLC   Tel:   (212) 230-2424
885 3rd Avenue, 18th Floor            Fax:   (212) 486-8178
New York, New York 10022-4877                   E-mail: rsobel@madoff.com
Attn: Richard G. Sobel, Esq.

-14-

| | | | |
|---|---|---|---|
| If to Services Provider: | Talon Air, Inc.<br>c/o Roxann Management Corp.<br>29 Barstow Road, Suite 202<br>Great Neck, New York 11021<br>Attn: Adam Katz, Esq. | Tel:<br>Fax:<br>Email: | (516) 466-6685<br>(646) 390-3284<br>akatz@roxann.com |
| With a copy to: | John Ramsen, Esq.<br>29 Barstow Road, Suite 202<br>Great Neck, New York 11021 | Tel:<br>Fax:<br>Email: | (516) 466-6680, x109<br>(516) 466-6684<br>johnr@roxann.com |

## SECTION 11.  STANDARD OF CARE; RELEASE AND INDEMNITY; FORCE MAJEURE

11.1    Services Provider shall exercise all due care in the provision of services contemplated herein and all other use or storage of the Aircraft by Services Provider. Services Provider waives and releases each Operator from, and indemnifies and holds harmless each Operator, its officers, directors, employees, agents, affiliates, representatives, subsidiaries, parent corporation, successors and assigns, from and against any and all existing or future claims, damages, losses, liabilities, demands, suits, judgments, causes of action, civil and criminal legal proceedings, penalties, fines, and other sanctions, and any attorneys' fees and other reasonable costs and expenses, or diminution in value in any way arising or imposed as a result of Services Provider's fault or negligence, or reckless or intentional acts or omissions, or under the doctrine of strict liability, or in any way connected with injury to or death of Services Provider's personnel, or loss of use of any property.

11.2    **Force Majeure.** Neither party hereto shall be responsible for any delay or failure of performance under this Agreement resulting from an act of God or nature, strike or labor dispute, mechanical failure, lack of essential supplies or parts, or for any cause beyond the control of such party. In no event shall either party be liable for any special, consequential, or incidental loss or damage.

## SECTION 12.  WARRANTIES AND REPRESENTATIONS

12.1    Services Provider warrants and represents as follows:

(a)    Services Provider will not permit the Aircraft to be operated or possessed by other than currently qualified, rated, and certified Aircraft Crew. All Aircraft Crew members who are pilots shall have at least the minimum total pilot hours required by any policy of insurance covering the Aircraft and will meet or exceed all requirements under any policy of insurance covering the Aircraft or Applicable Law.

(b)    Services Provider is a validly organized corporation under the laws of the State of Delaware and the person executing on behalf of Services Provider has full power and authority to execute this Agreement on behalf of Services Provider and by such execution shall bind Services Provider under this Agreement.

-15-

(c) No action, suit, or proceeding is currently pending or threatened against Services Provider which shall in any material way affect Services Provider's financial status as of the date thereof, or impair the execution, delivery, or performance by Services Provider of this Agreement or any other document.

(d) The execution and delivery of this Agreement by Services Provider and the performance of their obligations thereunder have been duly authorized by all necessary corporate action, and do not conflict with any provision of Services Provider's articles of incorporation, bylaws, any governmental regulations, or any other Agreements that Services Provider may now have with other parties.

(e) Services Provider is not subject to any restriction, which with or without the giving of notice, the passage of time, or both, prohibits or would be violated by or be in conflict with this Agreement.

## SECTION 13. AIRCRAFT INTERCHANGE

**Charters on other Aircraft.**

**Operator-Requested Interchange.** Each Operator shall have the right (but not the obligation) to charter other aircraft operated by Services Provider, subject to the terms and conditions of this Section 13. Other aircraft operated by Services Provider as of the Effective Date of this Agreement include a King Air B200, a Beechjet 400A/400XP, a Hawker 800XP, and a Gulfstream G-IV (such other aircraft are referred to herein as "Exchange Aircraft"). The Exchange Aircraft may change during the Term of this Agreement. All charter flights conducted for an Operator using any such other aircraft shall be operated under Part 135 of the FAR. Services Provider shall have exclusive possession, command and control of all such aircraft, and shall exercise Operational Control of all such aircraft during all flight operations conducted for an Operator pursuant to this Section 13, and the pilots of any such flight shall be under the exclusive command of Services Provider during all such flights.

**Compensation.**

**Operator-Requested Interchange.** In lieu of hourly rate charges for charter flights conducted by Services Provider for an Operator on Exchange Aircraft pursuant to this provision, an Operator may utilize an Exchange Aircraft at no charge or expense (other than Incidental Expenses attributable to such usage), and Services Provider shall be entitled to utilize the Aircraft at no charge or expense (other than Incidental Expenses attributable to such usage) for a period of time approximately equal in value to the charter flight conducted for such Operator, with values determined based on the exchange ratios set forth below. Without limiting the generality of the foregoing, as of the Effective Date of this Agreement, exchange ratios shall be as set forth below (which ratios may be modified by Services Provider from time to time as necessary to reflect additions and deletions from Services Provider's charter fleet, and/or changes in Services Provider's block charter rates for the various aircraft operated by Services Provider, including the Aircraft):

1.0 hour in a King Air B200 (Oct. 1 to March 31) = 0.32 hours in Client's Aircraft

-16-

1.0 hour in a King Air B200 (April 1 to Sept. 30) = 0.4 hours in Client's Aircraft  
1.0 hour in a Beechjet 400XP = 0.5 hours in Client's Aircraft  
1.0 hour in a Hawker 800XP = 0.66 hours in Client's Aircraft  
1.0 hour in a Gulfstream G-IV = 1.25 hours in Client's Aircraft

**Third-Party Charter Aircraft.** In lieu of hourly rate charges for charter flights conducted by Services Provider for an Operator pursuant to this provision, on aircraft chartered from third-party charter operators in the event that no Exchange Aircraft is available, an Operator may utilize such third-party charter aircraft at no charge or expense (other than Incidental Expenses attributable to such usage) and Services Provider shall be entitled to utilize the Aircraft at no charge or expense (other than Incidental Expenses attributable to such usage) for a period of time approximately equal in value to the charter flight conducted for such Operator, with values determined based on the exchange ratios set forth below. Without limiting the generality of the foregoing, as of the Effective Date of this Agreement, exchange ratios shall be as set forth below (which ratios may be modified by Services Provider from time to time as necessary to reflect additions and deletions from Services Provider's charter fleet, and/or changes in Services Provider's block charter rates for the various aircraft operated by Services Provider, including the Aircraft):

1.0 hour in a King Air B200 (Oct. 1 to March 31) = 0.32 hours in Client's Aircraft  
1.0 hour in a King Air B200 (April 1 to Sept. 30) = 0.4 hours in Client's Aircraft  
1.0 hour in a Beechjet 400XP = 0.5 hours in Client's Aircraft  
1.0 hour in a Hawker 800XP = 0.66 hours in Client's Aircraft  
1.0 hour in a Gulfstream G-IV = 1.25 hours in Client's Aircraft

**Incidental Expenses and Taxes.** Each Operator shall be responsible for all Incidental Expenses and Taxes associated with charter flights, whether on Exchange Aircraft or aircraft chartered from third-party charter operators. Flight time provided to Services Provider on the Aircraft under this provision may be used by Services Provider for any lawful purpose, including charters to third-parties, and Services Provider shall be entitled to retain for its own account all revenue received by Services Provider in connection with such use of the Aircraft. Services Provider shall be responsible for all Incidental Expenses and Taxes associated with use by Services Provider of the Aircraft under this provision.

**Limitations.** Requests by an Operator to schedule a charter of the King Air B200 shall be made at least five (5) days in advance during the period April 1 to September 30. Requests by an Operator to schedule a charter of the Beechjet 400XP shall be made at least seven (7) days in advance, requests by an Operator to schedule a charter of the Hawker 800XP shall be made at least 14 days in advance and requests by an Operator to schedule a charter of the Gulfstream G-IV shall be made at least 21 days in advance. Other aircraft may be scheduled on an as-available basis. Subject to the foregoing advance notice requirements, Services Provider will guarantee the availability of the requested Exchange Aircraft or make other arrangements to satisfy an Operator's transportation requirements. The Operators will collectively be allowed to exchange up to 55 Flight Hours per year of time on its Aircraft for equivalent time (according to the applicable exchange ratios) on Exchange Aircraft. Flight Hours flown on Exchange Aircraft will not be counted towards such 55 Flight Hour limitation when use of such Exchange Aircraft was not requested by an Operator but rather was provided by Services Provider to an Operator pursuant to this provision. Additional hours in Exchange Aircraft

-17-

after the Operators have used up to 55 Flight Hours of equivalent time (according to the applicable exchange ratios) per year on Exchange Aircraft will be on an as-available basis, with no guaranteed availability. Simultaneous use of the Aircraft and an Exchange Aircraft, and/or simultaneous use of two or more Exchange Aircraft, will be on an as-available basis, with no guaranteed availability. Notwithstanding anything herein to the contrary hereinabove, the Exchange Aircraft shall not have guaranteed availability for any Operator's use on the following dates (however Services Provider shall make best efforts to accommodate an Operator's requests during these times): Martin Luther King's Birthday weekend, President's Day weekend, Passover, Easter weekend, Memorial Day weekend, third weekend in June, July 4th weekend, Labor Day weekend, Rosh Hashanah, Yom Kippur, Columbus day weekend, Thanksgiving weekend, Christmas, New Year's Day. For purposes of this paragraph "weekend" shall mean Friday, Saturday, Sunday and Monday, except for Thanksgiving weekend which shall be defined for purposes of this paragraph as Wednesday through Monday. For purposes of this paragraph Passover, Rosh Hashanah, Yom Kippur, Christmas and New Year's Day shall be defined as the day before such holiday and the day after such holiday.

**Accounting for Flight Hours.** Services Provider shall provide each Operator with monthly reports summarizing the number of Flight Hours of use of Exchange Aircraft and/or third-party charter aircraft by each Operator, and the number of Flight Hours of use of the Aircraft to which Services Provider is entitled under this provision.

## SECTION 14. MISCELLANEOUS

14.1 **Entire Agreement.** This Agreement, and all terms, conditions, warranties, and representations herein, are for the sole and exclusive benefit of the signatories hereto. This Agreement constitutes the entire agreement of the parties as of its Effective Date and supersedes all prior or independent, oral or written agreements, understandings, statements, representations, commitments, promises, and warranties made with respect to the subject matter of this Agreement.

14.2 **Other Transactions.** Except as specifically provided in this Agreement, none of the provisions of this Agreement, nor any oral or written statements, representations, commitments, promises, or warranties made with respect to the subject matter of this Agreement shall be construed or relied upon by any party as the basis of, consideration for, or inducement to engage in, any separate agreement, transaction or commitment for any purpose whatsoever.

14.3 **Prohibited and Unenforceable Provisions.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibitions or unenforceability in any jurisdiction. To the extent permitted by applicable law, each of the parties hereby waives any provision of applicable law which renders any provision hereof prohibited or unenforceable in any respect.

-18-