<u>NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT</u>
(Part 135 Operations)

Dated as of the 3rd day of March, 2008.

by and between

BDG Aircharter, Inc. ("BDG"),
as BDG,

and

BLM Air Charter LLC ("Madoff"),
as Madoff,

Tenants-in-common, as Lessor,

and

Talon Air, Inc.,
as Lessee,

concerning one Embraer Legacy 600, Model EMB-135BJ aircraft bearing
U.S. registration number N18BM
and
manufacturer's serial number 14501034

1

This **NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT** (the "Agreement") is entered into as of this 3rd day of March, 2008 (the "Effective Date"), by and between BDG Aircharter, Inc., a New York Corporation ("BDG") and BLM Air Charter LLC ("Madoff"), as tenants-in-common (collectively "Lessor") and **Talon Air, Inc.**, a Delaware corporation ("Lessee").

## WITNESSETH:

WHEREAS, BDG is the buyer under that certain Purchase Agreement with Embraer-Empresa Brasileira De Aeronautica S.A. dated April ___, 2007, as amended, to purchase the Aircraft;

WHEREAS, after taking delivery of the Aircraft and after registration of the Aircraft with the FAA, BDG intends to convey a 50% tenant-in-common interest in the Aircraft to Madoff;

WHEREAS, Lessee holds a current and valid Air Carrier Operating Certificate and is authorized by its Certificate and operations specifications to conduct On-Demand Operations in common carriage in accordance with the applicable requirements of Part 135 of the FAR;

WHEREAS, Lessee desires to lease from Lessor, and Lessor desires to lease to Lessee, the Aircraft, without crew, upon and subject to the terms and conditions of this Agreement, in order that Lessee may use the Aircraft to conduct On-Demand Operations in common carriage; and

WHEREAS, during the term of this Agreement, the Aircraft may be subject to concurrent non-exclusive leases to one (1) or more Co-Lessee(s).

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valid consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## SECTION 1.A.  RECITALS

The "WHEREAS" clauses are an integral part of this Agreement and shall have meaning and effect as though they were set forth at length in numbered paragraphs herein.

## SECTION 1.  DEFINITIONS

1.1     The following terms shall have the following meanings for all purposes of this Agreement:

"**Aircraft**" means the Airframe, the Engines, the Parts, and the Aircraft Documents. The Engines shall be deemed part of the "Aircraft" whether or not from time to time attached to the Airframe or removed from the Airframe.

"**Aircraft Documents**" means all flight records, maintenance records, historical records, modification records, overhaul records, manuals, logbooks, authorizations, drawings and data relating to the Airframe, any Engine, or any Part, or that are required by Applicable Law to be created or maintained with respect to the maintenance and/or operation of the Aircraft.

"**Airframe**" means that certain Embraer Legacy 600 aircraft model EMB-135BJ bearing U.S. registration number N18BM, and manufacturer's serial number 14501034, together with any and all Parts (including, but not limited to, landing gear and auxiliary power units but excluding Engines or engines) so long as such Parts shall be either incorporated or installed in or attached to the Airframe.

"**Applicable Law**" means, without limitation, all applicable laws, treaties, international agreements, decisions and orders of any court, arbitration or governmental agency or authority and rules, regulations, orders, directives, licenses and permits of any governmental body, instrumentality, agency or authority, including, without limitation, the FAR and 49 U.S.C. § 41101, et seq., as amended.

2

"**Certificate**" shall mean that certain Air Carrier Certificate issued to Lessee by the Federal Aviation Administration pursuant to Part 119 of the FAR and bearing certificate number OZTA-781J, together with all other certificates, registrations (including, without limitation, registration with the DOT as an air taxi operator, pursuant to applicable law), and documents (including, without limitation, FAA-issued operations specifications) required in order that Lessee may lawfully conduct On-Demand Operations in common carriage in accordance with the applicable requirements of Part 135 of the FAR.

"**Co-Lessee**" means Lessee, Bernard L. Madoff Investment Securities, LLC and BDG MLJF, Inc. or their respective successors and assigns.

"**DOT**" means the United States Department of Transportation or any successor agency.

"**Engines**" means two (2) Rolls Royce AE 3007-A1E engines bearing manufacturer's serial numbers CAE-313066 (R/H) and CAE-313067 (L/H), together with any and all Parts so long as the same shall be either incorporated or installed in or attached to such Engine. Any engine which may be, from time to time, substituted for an Engine shall be deemed to be an Engine and subject to this Agreement for so long as it remains attached to the Airframe.

"**FAA**" means the Federal Aviation Administration or any successor agency.

"**FAR**" means collectively the Aeronautics Regulations of the FAA and the DOT, as codified at Title 14, Parts 1 to 399 of the United States Code of Federal Regulations.

"**Flight Hour**" means one (1) hour of use of the Aircraft in flight operations, as recorded on the Aircraft hour meter and measured from the time the Aircraft takes off at the beginning of a flight, to the time the Aircraft lands at the end of a flight in one-tenth (1/10th) of an hour increments.

"**Hourly Rent**" shall have the meaning set forth on Schedule A hereto.

"**Incidental Expenses**" means all out-of-pocket costs incurred in connection with any flight of the Aircraft, including landing fees, ramp fees, overnight hangar fees, de-icing costs, contaminant recovery costs, catering costs, in-flight entertainment and telecommunications charges, ground transportation, travel expenses of the flight crew, charts, manuals, and other publications obtained for the specific flight (*e.g.*, navigation, operations, and maintenance), and any other similar items.

"**Lender**" means Valley Commercial Capital, LLC.

"**Lien**" means any mortgage, security interest, lease or other charge or encumbrance or claim or right of others, including, without limitation, rights of others under any airframe or engine interchange or pooling agreement, except for mechanics liens to be discharged in the ordinary course of business.

"**Mortgage**" means Aircraft Mortgage and Security Agreement executed between Lender as lender and Lessor as borrower dated as of March ____, 2008.

"**On-Demand Operations**" shall have the same meaning given the term in Section 119.3 of the FAR.

"**Operating Base**" means Republic Airport, East Farmingdale, New York..

"**Operational Control**" has the same meaning given the term in Section 1.1 of the FAR.

"**Parts**" means all appliances, components, parts, instruments, appurtenances, accessories, furnishings or other equipment of whatever nature (other than complete Engines or engines) which may from time to time be incorporated or installed in or attached to the Airframe or any Engine and includes replacement parts.

"**Pilot in Command**" has the same meaning given the term in Section 1.1 of the FAR.

"**Rent Payment Date**" means the 10th day of each calendar month.

"**Taxes**" means all taxes of every kind (excluding any tax measured by or assessed against a taxpayer's income, including, without limitation, any income tax, gross income tax, net income tax, or capital gains tax) assessed or levied by any federal, state, county, local, airport, district, foreign, or other governmental authority, including, without limitation, sales taxes, use taxes, retailer taxes, federal air transportation excise taxes, federal aviation fuel excise taxes, and other similar duties, fees, and excise taxes.

"**Term**" means the entire period from the Effective Date to the date this Agreement is terminated pursuant to Section 3.1.

"**Total Fixed Expenses**" shall have the meaning set forth on Schedule B hereto, as amended from time to time.

"**Total Variable Expenses**" shall have the meaning set forth on Schedule C hereto, as amended from time to time.

## SECTION 2.    LEASE AND DELIVERY OF THE AIRCRAFT

2.1     **Lease.** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Aircraft, on the terms and conditions of this Agreement. Lessee shall take all necessary action to ensure that the Aircraft may be lawfully operated under Part 135 in accordance with Lessee's Certificate.

2.2     **Delivery.** The Aircraft shall be delivered to the Lessee on a mutually agreed date at the Operating Base ("Delivery Date"), or such other location as the parties may mutually agree, and "AS IS," "WHERE IS," AND SUBJECT TO EACH AND EVERY DISCLAIMER OF WARRANTY AND REPRESENTATION AS SET FORTH IN SECTION 4 HEREOF. Lessor shall not be liable for delay or failure to furnish the Aircraft pursuant to this Agreement when such failure is caused by government regulation or authority, mechanical difficulty, war, civil commotion, strikes or labor disputes, weather conditions, acts of God, or any matter out of the reasonable control of Lessor, nor shall Lessor be liable for delay in furnishing the Aircraft pursuant to this Agreement when such delay is caused by Embraer's delay in delivering the Aircraft to Lessor.

2.3     **Non-Exclusivity.** Lessee and Lessor acknowledge that the Aircraft is leased to Lessee on a non-exclusive basis, and that during the Term the Aircraft may be otherwise subject to lease to other lessees of Lessor. During any period during which another lessee of Lessor or any other person or entity leasing an interest in the Aircraft has scheduled use of the Aircraft, Lessee's leasehold rights to possession of the Aircraft under this Agreement shall temporarily abate, but all other provisions of this Agreement shall nevertheless continue in full force and effect.

2.4     **Coordination with Co-Lessees.** Contemporaneously with the execution of this Agreement, Lessee shall use its best efforts to enter into an agreement by and among Lessee and all Co-Lessee(s). Said agreement shall set forth the terms and conditions pursuant to which Lessee and the Co-Lessee(s) will share use and operation of the Aircraft, and which terms and conditions shall include, without limitation, the provisions addressing priority rights and procedures for scheduling use of the Aircraft; allocation of responsibility for servicing, storing, inspecting, maintaining, and repairing the Aircraft; allocation of responsibility for insuring the Aircraft; and allocation of responsibility for payment of costs and expenses of operating, insuring, servicing, storing, inspecting, maintaining, and repairing the Aircraft.

4

**SECTION 3.  TERM, SCHEDULING, AND RENT**

3.1    Term.  This Agreement shall become effective on the Effective Date, and shall continue in effect for a period of one (1) year, unless terminated sooner pursuant to the express provisions herein contained.  At the end of the first one (1) year period or any subsequent one (1) year period, this Agreement shall automatically be renewed for an additional one (1) year period.  Each party shall have the right to terminate this Agreement with or without cause on 120 days written notice to the other party for any reason or no reason at all.

3.2    Minimum Usage by Lessee.  Nothing contained herein shall obligate Lessee to any minimum usage of the Aircraft, it being understood and agreed that Lessee's usage shall be on an "as-needed" basis, subject to the restrictions contained herein.  However if Lessee operates the Aircraft under Part 135 of the FAR for less than 300 Flight Hours per annum, then Lessee shall owe Lessor the Reimbursement Amount, to be paid within thirty (30) days following the end of the year in question.  The "Reimbursement Amount" shall be calculated as follows:  Pro-rated amount due Lessor = [(300 – per annum charter hours flown) x $275,000] / 300.  See Exhibit D.  In the event that Lessor shall terminate this Agreement, Lessor shall only be entitled to be paid a pro-ration of the Reimbursement Amount.  Such payment of the pro-rated Reimbursement Amount to be made within thirty (30) days of the termination of this Agreement.  The pro-ration of the Reimbursement Amount is calculated as follows:  (number of days in year in question prior to termination / 365 x 300 = the pro-rated guaranteed hours.  In the event that Lessee shall terminate this Agreement, it shall not relieve Lessee from its obligation to pay the full Reimbursement Amount.

3.3    Rent.  Lessee shall pay rent in arrears in an amount equal to the Hourly Rent specified in Schedule A attached hereto for each Flight Hour of use of the Aircraft by Lessee.  All rent accrued during any calendar month shall be payable in arrears on the Rent Payment Date in the immediately succeeding calendar month without further demand or invoice.  All rent shall be paid to Lessor in immediately available U.S. funds and in such reasonable form and manner as Lessor in its sole discretion may instruct Lessee from time to time.

3.4    Maximum Usage by Lessee.  Lessee shall not operate the Aircraft in excess of 300 hours in any one (1) year period without the prior written approval of Lessor, which may be withheld in the sole discretion of Lessor.

3.5    Net Lease.  Lessee acknowledges that the lease of the Aircraft to Lessee is a net lease, and that Lessee's obligation to pay the Hourly Rent specified in Schedule A shall be absolute without regard to costs and expenses attributable to Lessee's use of the Aircraft under this Agreement.  Lessee shall be solely responsible for all costs and expenses attributable to Lessee's use of the Aircraft under this Agreement.  For purposes of this Agreement, costs and expenses attributable to Lessee's use of the Aircraft shall be deemed to be and include (i) a portion of the annual Total Fixed Expenses set forth in Schedule B, as the same may be amended from time to time, that bears the same ratio to such annual Total Fixed Expenses that the total number of Flight Hours of use of the Aircraft by Lessee in any given year bears to the total number of Flight Hours of use of the Aircraft by all users thereof, (ii) the Total Variable Expenses amount specified in Schedule C for each Flight Hour of use of the Aircraft by Lessee pursuant to this Agreement, and (iii) all Incidental Expenses arising from the use of the Aircraft by Lessee.

3.6    Taxes.  Neither the rent nor any other payments to be made by Lessee under this Agreement includes the amount of any Taxes which may be assessed or levied by any taxing jurisdiction as a result of the lease of the Aircraft to Lessee, or the use of the Aircraft by Lessee, or the provision of a taxable transportation service by Lessee using the Aircraft.  Lessee shall be responsible for, shall indemnify and hold harmless Lessor against, and Lessee shall pay all such Taxes when due.

**SECTION 4.    REPRESENTATIONS AND WARRANTIES**

4.1    Representations and Warranties of Lessee.  Lessee represents and warrants as of the date hereof and during the entire Term hereof as follows:

5

4.1.1   Lessee is a validly organized corporation or limited liability company under the laws of the State of Delaware, and the person executing on behalf of Lessee has full power and authority to execute this Agreement on behalf of Lessee and by such execution shall bind Lessee under this Agreement.

4.1.2   No action, suit, or proceeding is currently pending or threatened against Lessee which shall in any material way affect Lessee's financial status as of the date thereof, or impair the execution, delivery, or performance by Lessee of this Agreement.

4.1.3   The execution and delivery of this Agreement by Lessee and the performance of its obligations hereunder have been duly authorized by all necessary corporate or limited liability company action, and do not conflict with any provision of Lessee's articles of organization, bylaws, operating agreement, any governmental regulations, or any other agreements that Lessee may now have with other parties.

4.1.4   Lessee is not subject to any restriction, which with or without the giving of notice, the passage of time, or both, prohibits or would be violated by or be in conflict with this Agreement.

4.1.5   This Agreement constitutes the legal, valid and binding obligations of Lessee, and is enforceable against Lessee in accordance with the terms herein contained.

4.1.6   Lessee will not permit the Aircraft to be operated in any unsafe manner or contrary to any manual or instructions for the Aircraft or in violation of the terms or conditions of any insurance policy covering the Aircraft or any Applicable Law.

4.1.7   All pilots who operate the Aircraft for Lessee's flights shall have at least the minimum total pilot hours required by any policy of insurance covering the Aircraft and will meet or exceed all requirements under any policy of insurance covering the Aircraft, and all Applicable Law.

4.1.8   Lessee's Certificate is, and throughout the Term hereof shall be and remain, valid and in good standing.

4.2   **Representations and Warranties of Lessor.**   Each Lessor hereby represents and warrants on its own behalf as follows:

4.2.1   Lessor has full power and authority to execute this Agreement and by such execution shall bind Lessor under this Agreement.

4.2.2   No action, suit, or proceeding is currently pending or threatened against Lessor which shall in any material way affect Lessor's financial status as of the date thereof, or impair the execution, delivery, or performance by Lessor of this Agreement.

4.2.3   The execution and delivery of this Agreement by Lessor and the performance of its obligations hereunder have been duly authorized by all necessary corporate or limited liability company action, and do not conflict with any provision of Lessor's joint ownership agreement, any governmental regulations, or any other agreements that Lessor may now have with other parties.

4.2.4   Lessor is not subject to any restriction, which with or without the giving of notice, the passage of time, or both, prohibits or would be violated by or be in conflict with this Agreement.

4.2.5   This Agreement constitutes the legal, valid and binding obligations of Lessor, and is enforceable against Lessor in accordance with the terms herein contained.

4.2.6   Commencing on the Delivery Date, the Lessor will hold, and will continue to hold during the Term of this Agreement, title to the Aircraft.

6

4.3    DISCLAIMER OF WARRANTIES. THE AIRCRAFT IS BEING LEASED BY LESSOR TO THE LESSEE HEREUNDER ON A COMPLETELY "AS IS," "WHERE IS," BASIS, WHICH IS ACKNOWLEDGED AND AGREED TO BY THE LESSEE. THE WARRANTIES AND REPRESENTATIONS SET FORTH IN THIS SECTION 4 ARE EXCLUSIVE AND IN LIEU OF ALL OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, AND LESSOR HAS NOT MADE AND SHALL NOT BE CONSIDERED OR DEEMED TO HAVE MADE (WHETHER BY VIRTUE OF HAVING LEASED THE AIRCRAFT UNDER THIS AGREEMENT, OR HAVING ACQUIRED THE AIRCRAFT, OR HAVING DONE OR FAILED TO DO ANY ACT, OR HAVING ACQUIRED OR FAILED TO ACQUIRE ANY STATUS UNDER OR IN RELATION TO THIS AGREEMENT OR OTHERWISE) ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE AIRCRAFT OR TO ANY PART THEREOF, AND SPECIFICALLY, WITHOUT LIMITATION, IN THIS RESPECT DISCLAIMS ALL REPRESENTATIONS AND/OR WARRANTIES AS TO THE TITLE, AIRWORTHINESS, VALUE, CONDITION, DESIGN, MERCHANTABILITY, COMPLIANCE WITH SPECIFICATIONS, CONSTRUCTION AND CONDITION OF THE AIRCRAFT OPERATION, OR FITNESS FOR A PARTICULAR USE OF THE AIRCRAFT AND AS TO THE ABSENCE OF LATENT AND OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OR THE LIKE, HEREUNDER OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE AIRCRAFT OR ANY PART THEREOF OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED (INCLUDING ANY IMPLIED WARRANTY ARISING FROM A COURSE OF PERFORMANCE OR DEALING OR USAGE OF TRADE), WITH RESPECT TO THE AIRCRAFT OR ANY PART THEREOF. THE LESSEE HEREBY WAIVES, RELEASES, DISCLAIMS AND RENOUNCES ALL EXPECTATION OF OR RELIANCE UPON ANY SUCH AND OTHER WARRANTIES, OBLIGATIONS AND LIABILITIES OF LESSOR AND RIGHTS, CLAIMS AND REMEDIES OF THE LESSEE AGAINST LESSOR, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, INCLUDING BUT NOT LIMITED TO (I) ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE, (II) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (III) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF LESSOR, ACTUAL OR IMPUTED, AND (IV) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO THE AIRCRAFT, FOR LOSS OF USE, REVENUE OR PROFIT WITH RESPECT TO THE AIRCRAFT, OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

## SECTION 5.    REGISTRATION, USE, OPERATION, MAINTENANCE AND POSSESSION

5.1    Title and Registration. Lessee acknowledges that Lessor as of the Delivery Date will own all legal, beneficial, and equitable title to the Aircraft, and that said title shall remain vested in Lessor during the Term hereof. Lessee shall undertake, to the extent permitted by Applicable Law, to do all such further acts, deeds, assurances or things as may, in the opinion of Lessor, be necessary or desirable in order to protect or preserve Lessor's title to the Aircraft.

5.2    Use and Operation. Lessee's leasehold interest in the Aircraft shall entitle Lessee to operate the Aircraft solely for the following purposes in accordance with the terms and conditions of this Agreement: to provide on-demand charter air transportation services to charter customers; provided, however, that the terms and conditions for the provision of such charter air transportation shall be as agreed by and between Lessee and such charter customer(s); to ferry the Aircraft from the Operating Base to a charter customer's scheduled airport of embarkation; to ferry the Aircraft from a charter customer's airport of disembarkation to the Operating Base; flight crew training; maintenance test flights and maintenance deliveries; and other purposes as approved by Lessor in Lessor's reasonable discretion. Lessee shall operate all charter flights in accordance with Part 135 of the FAR, and shall operate all ferry flights, flight crew training flights, maintenance test flights, maintenance delivery flights, and other similar flights in accordance with Part 91 of the FAR when common carriage is not involved. Lessee shall be solely and exclusively responsible for the use, operation and control of the Aircraft at all times during which the Aircraft is in Lessee's possession

7

during the Term.  Lessee agrees not to operate or locate the Airframe or any Engine, or permit the Airframe or any Engine to be operated or located, in any area excluded from coverage by any insurance policy in effect or required to be maintained hereunder with respect to the Airframe or Engines, or in any war zone. Lessee agrees not to operate the Airframe or any Engine or permit the Airframe or any Engine to be operated during the Term except in operations for which Lessee is duly authorized, or to use or permit the Aircraft to be used for a purpose for which the Aircraft is not designed or reasonably suitable.  Lessee will not permit the Airframe or any Engine to be maintained, used or operated during the Term in violation of any Applicable Law, or contrary to any manufacturer's operating manuals or instructions.  Lessee shall not knowingly permit the Aircraft to be used for the carriage of any persons or property prohibited by Applicable Law, nor shall Lessee permit the Aircraft to be used during the existence of any known defect except in accordance with the FAR.  Lessee may carry on the Aircraft on all flights under this Agreement such passengers and  baggage, but not cargo as Lessee reasonably determines is appropriate and consistent with the FAR; provided, however, that the number of passengers on any flight shall in no event exceed the number of seats legally available in the Aircraft, and the total load carried on any flight, including passengers, crew, baggage, and fuel and oil in such quantities as the Pilot in Command shall determine to be required, shall not exceed the legally permissible maximum load for the Aircraft.  Lessee will abide by and conform to, be responsible for causing and cause others to abide by and conform to, all Applicable Laws now existing or hereafter enacted, that control or in any way affect the operation, use, maintenance, or occupancy of the Aircraft, or the use of any airport by the Aircraft.

5.3     Aircraft Leased without Services.  The Aircraft is leased by Lessor to Lessee hereunder without any additional services of any kind, and Lessee, in coordination with the Co-Lessee(s) pursuant to Section 2.4 hereof, shall obtain or supply all services and supplies necessary to the operation, maintenance, and storage of the Aircraft.  Without limiting the generality of the foregoing, Lessee, in coordination with the Co-Lessee(s) pursuant to Section 2.4 hereof, and at no cost or expense to Lessor, shall:

5.3.1   obtain all fuel, oil, lubricants, and other services and supplies required for Lessee's operations of the Aircraft;

5.3.2   maintain the Aircraft, or cause the Aircraft to be maintained, in a good and airworthy operating condition and in compliance with (i) all applicable FAR; (ii) the Aircraft Flight Manual; and (iii) Lessee's approved aircraft inspection program; and (iv) the operating and maintenance instructions furnished by Embraer and Rolls-Royce;

5.3.3   ensure that all mechanics assigned to the maintenance of the Aircraft are competent with respect to the Aircraft with either (i) training and approval by Embraer and Rolls-Royce or (ii) direct supervision by an FAA Airframe & Powerplant (A&P) licensed employee of Lessee that has had training by Embraer and Rolls-Royce, provided that this is acceptable to Embraer and Rolls-Royce for the purposes of the continuation of the manufacturer's warranties in effect on the Delivery Date.

5.3.4   store the Aircraft when not in use in an appropriate and adequate indoor facility at the Operating Base;

5.3.5   obtain the services of pilots for all of Lessee's operations of the Aircraft;

5.3.6   ensure that all pilots serving on any flight conducted by Lessee possess current and valid Airline Transport Pilot and First Class Medical Certificates issued by the FAA, and are fully competent, trained, experienced, and qualified in accordance with Applicable Law and all insurance policies covering the Aircraft;

5.3.7   complete, maintain and preserve, or cause to be completed, maintained and preserved, in the English language, all Aircraft Documents in a complete, accurate, and up-to-date manner and in a fire-proof location; and

5.3.8   maintain, or cause to be maintained, all insurance required by Section 8 of this Agreement.

8

5.4    **Operational Control.**

    5.4.1    **Lessee's Flights.**  Lessee shall exercise Operational Control of the Aircraft during all flight operations conducted by Lessee. Further, at all times while the Aircraft is in the possession of Lessee, Lessee shall have exclusive possession, command, and control of the Aircraft, and the pilots of any flight by Lessee shall be under the exclusive command of Lessee. The parties acknowledge and agree that no Co-Lessee shall have any right or obligation to exercise Operational Control of the Aircraft in connection with any flight conducted by Lessee.

    5.4.2    **Co-Lessee's Flights.**  A Co-Lessee shall exercise Operational Control of the Aircraft during all flight operations conducted by such Co-Lessee. Further, at all times while the Aircraft is in the possession of any Co-Lessee, such Co-Lessee shall have exclusive possession, command, and control of the Aircraft, and the pilots of any such flight by such Co-Lessee shall be under the exclusive command of such Co-Lessee. The parties acknowledge and agree that Lessee shall have no right or obligation to exercise Operational Control of the Aircraft in connection with any flight conducted by any Co-Lessee.

5.5    **Authority of Pilot in Command.**  Notwithstanding that Lessee shall have operational control of the Aircraft during any flight conducted by Lessee, the parties acknowledge that pursuant to Section 91.3 of the FAR, the Pilot in Command of such flight is responsible for, and is obligated and entitled to exercise final authority over, the safe operation of the flight, and the parties agree that the Pilot in Command may, in the exercise of such authority, refuse to commence such flight, terminate such flight, or take any other flight-related action that, in the judgment of the Pilot in Command, is required to ensure the safety of the Aircraft, the flight crew, the passengers, and any other persons and/or property.

5.6    **Right to Inspect.**  Lessor and/or Lessor's agents shall have the right to inspect the Aircraft or the Aircraft Documents at any reasonable time, upon giving Lessee reasonable notice, to ascertain the condition of the Aircraft and to satisfy Lessor that the Aircraft is being properly repaired and maintained in accordance with the requirements of this Agreement. All required repairs shall be performed as soon as practicable after such inspection.

5.7    **Modification of Aircraft.**  Lessee shall not make or permit to be made any modification, alteration, improvement, or addition to the Aircraft without the express written consent of Lessor, except for those modifications, alterations, improvements, or additions that are necessary to comply with any applicable Airworthiness Directive or mandatory manufacturer's service bulletin. Any modifications, alterations, improvements, or additions to the Aircraft shall be accomplished at the sole cost and expense of Lessee and the other Co-Lessee(s).

5.8    **Fines, Penalties, and Forfeitures.**  Lessee shall be solely responsible for any fines, penalties, or forfeitures relating in any manner to the operation, maintenance, or use of the Aircraft by Lessee under this Agreement.

## SECTION 6.  RETURN OF AIRCRAFT

6.1    **Return.**  On the last day of the Term or the date of earlier termination hereof, Lessee shall return the Aircraft to Lessor by delivering the same at Lessee's expenses to Lessor at the Operating Base or such other location within the 48 contiguous United States as Lessor may designate, fully equipped with all Engines and Parts installed thereon.

6.2    **Condition of Aircraft.**  The Aircraft at the time of its return to Owner, shall have, and be in compliance with, a current valid certificate of airworthiness issued by the FAA, and shall be airworthy according to manufacturer's specifications and FAA regulations, shall have been maintained and repaired in accordance with the provisions of this Agreement, and shall be in the same condition as it was in on the Delivery Date of this Agreement, ordinary wear and tear excepted.

6.3    **Aircraft Documents.** Lessee shall return or cause to be returned to Lessor, at the time the Aircraft is returned to Lessor, all of the Aircraft Documents, updated and maintained by Lessee through the date of return of the Aircraft.

## SECTION 7.  LIENS

7.1    **Lessee Liens.** Lessee shall ensure that no Liens are created or placed against the Aircraft by Lessee or third-parties as a result of Lessee's actions. Lessee shall notify Lessor promptly upon learning of any Liens not permitted by these terms. Lessee shall, at its own cost and expense, take all such actions as may be necessary to discharge and satisfy in full any such Lien promptly after the same becomes known to it.

7.2    **Subordination.** This Agreement is and at all times shall remain subordinate in all respects to the Lien granted to Lender pursuant to the Mortgage encumbering the Aircraft. Lender shall have the right at all times notwithstanding this Agreement to enforce the terms and provisions of the Mortgage, including, without limitation, repossession of the Aircraft.

## SECTION 8.  INSURANCE

8.1    **Liability.** Lessee, in coordination with the Co-Lessee(s) pursuant to Section 2.4 hereof, shall maintain, or cause to be maintained, bodily injury and property damage, liability insurance in an amount no less than Three Hundred Million United States Dollars (US$300,000,000.00) Combined Single Limit. Said policy shall be an occurrence policy naming Lessee, Lessor, and the Co-Lessee(s) as Named Insureds.

8.2    **Hull.** Lessee, in coordination with the Co-Lessee(s) pursuant to Section 2.4 hereof, shall maintain, or cause to be maintained, all risks aircraft hull insurance in the amount of Twenty Four Million Five Hundred Thousand United States Dollars (US$24,500,000.00), and such insurance shall name Lessor and any first lien mortgage holder as loss payees as their interests may appear.

8.3    **Insurance Certificates.** Lessee will provide Lessor with a Certificate of Insurance upon execution of this Agreement and at any time thereafter as Lessor may reasonably request.

8.4    **Conditions of Insurance.** Each insurance policy required under this Section 8 shall insure the interests of Lessor regardless of any breach or violation by Lessee or any Co-Lessee(s) of any warranties, declarations or conditions contained in such policies. Each such policy shall be primary without any right of contribution from any other insurance maintained by Lessor. Each such policy shall insure Lessee's contractual liability to Lessor contained in this Agreement (with a Breach of Warranty endorsement). The geographic limits, if any, contained in each and every such policy of insurance shall include at the minimum all territories over which Lessee and each Co-Lessee will operate the Aircraft for which the insurance is placed. Each policy shall contain an agreement by the insurer that notwithstanding the lapse of any such policy for any reason or any right of cancellation by the insurer or Lessee, whether voluntary or involuntary, such policy shall continue in force for the benefit of Lessor, and the Co-Lessee(s) for at least thirty (30) days (or such lesser time as may be permitted in the case of War Risk Insurance, if such War Risk Insurance so requires) after written notice of such lapse or cancellation shall have been given to Lessor, and each Co-Lessee. Each policy shall contain an agreement by the Insurer to provide Lessor, and each Co-Lessee with thirty (30) days' advance written notice of any deletion, cancellation or material change in coverage. Each policy shall name Edward Blumenfeld and Bernard L. Madoff as additional insureds.

8.5    **Insurance Companies.** Each insurance policy required under this Section 8 shall be issued by a company or companies who are qualified to do business in the United States and who (i) will submit to the jurisdiction of any competent state or federal court in the United States with regard to any dispute arising out of the policy of insurance or concerning the parties herein; (ii) will respond to any claim or judgment against Lessor and/or in any competent state or federal court in the United States or its territories; and (iii) has an A.M. Best Company financial and performance rating of A:X or better.

## SECTION 9.  DEFAULTS AND REMEDIES

9.1    Upon the occurrence of any failure of Lessee to duly observe or perform any of its obligations hereunder, and at any time thereafter so long as the same shall be continuing, Lessor may, at its option, declare in writing to the Lessee that this Agreement is in default; and at any time thereafter, so long as Lessee shall not have remedied the outstanding default within ten (10) days of receiving notice of such default from Lessor, Lessor may cancel, terminate, or rescind this Agreement.

## SECTION 10.  NOTICES

10.1    All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made when delivered personally or transmitted electronically by e-mail or facsimile, receipt acknowledged, or in the case of documented overnight delivery service or registered or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the receipt thereof, in each case at the address set forth below:

| | | | |
|---|---|---|---|
| If to Lessor: | BDG Aircharter, Inc. | | |
| | c/o Blumenfeld Development Group, Ltd. | Tel: | 516.921.0800 |
| | 300 Robbins Lane | Fax: | 516.921.0053 |
| | Syosset, NY | E-mail: | eblumenfeld@bdg.net |
| | Attn: Edward Blumenfeld | | |
| | and | | |
| | BLM Air Charter LLC | | |
| | c/o Bernard L. Madoff Investment Securities | Tel: | 212-230-2424 |
| | 885 3rd Avenue, 18th Floor | Fax: | 212-486-8178 |
| | New York, NY 10022-4877 | E-mail: | mdm@madoff.com |
| | Attn: Mark Madoff | | |
| With a copy to: | Blumenfeld Development Group, Ltd. | Tel: | 516.624.1925 |
| | 300 Robbins Lane | Fax: | 516.624.1934 |
| | Syosset, NY | E-mail: | dkaplan@bdg.net |
| | Attn: David J. Kaplan, Esq. | | |
| | Bernard L. Madoff Investment Securities | Tel.: | 212-230-2424 |
| | 885 3rd Avenue, 18th Floor | Fax: | 212-486-8178 |
| | New York, NY 10022-4877 | E-mail: | rsobel@madoff.com |
| | Attn: Richard G. Sobel, Esq. | | |
| If to Manager: | Talon Air, Inc. | Tel: | 516-466-6685 |
| | 29 Barstow Road, Suite 202 | Fax: | 646-390-3284 |
| | Great Neck, New York  11021 | Email: | akatz@roxann.com |
| | Attn:    Adam Katz, Esq. | | |
| With a copy to: | John Ramsen, Esq. | Tel: | 516-466-6680, ext. 109 |
| | 29 Barstow Road, Suite 202 | Fax: | 516-466-6684 |
| | Great Neck, New York  11021 | Email: | johnr@roxann.com |

## SECTION 11.  EVENT OF LOSS AND INDEMNIFICATION

11.1    Notification of Event of Loss.  In the event any damage to or destruction of, the Aircraft shall occur, or in the event of any whole or partial loss of the Aircraft, including, without limitation, any loss resulting from

the theft, condemnation, confiscation or seizure of, or requisition of title to or use of, the Aircraft by private persons or by any governmental or purported governmental authority, Lessee shall immediately:

11.1.1    report the event of loss to Lessor, the Lessee's insurance company or companies, and to any and all applicable governmental agencies; and

11.1.2    furnish such information and execute such documents as may be required and necessary to collect the proceeds from any insurance policies relating to the Aircraft.

11.2    **Repair or Termination.** In the event the Aircraft is partially destroyed or damaged, Lessor shall have the option, in its sole discretion, to either (i) fully repair the Aircraft in order that it shall be placed in at least as good condition as it was prior to such partial destruction or damage; or (ii) terminate this Agreement. Within five (5) days after the date of such partial destruction or damage, Lessor shall give written notice to Lessee specifying whether Lessor has elected to fully repair the Aircraft or to terminate this Agreement, which termination shall be effective immediately upon such written notice from Lessor to Lessee setting forth Lessor's election to so terminate this Agreement.

11.3    **Indemnification.** Lessee hereby releases, and shall defend, indemnify and hold harmless Lessor and Lessor's shareholders, members, directors, officers, managers, employees, successors and assigns, from and against, any and all claims, damages, losses, liabilities, demands, suits, judgments, causes of action, civil and criminal legal proceedings, penalties, fines, and other sanctions, and any attorneys' fees and other reasonable costs and expenses, directly or indirectly arising from this Agreement, and/or Lessee's operation, maintenance, storage, or other use of the Aircraft.

## SECTION 12. MISCELLANEOUS

12.1    **Entire Agreement.** This Agreement, and all terms, conditions, warranties, and representations herein, are for the sole and exclusive benefit of the signatories hereto. This Agreement constitutes the entire agreement of the parties as of its Effective Date and supersedes all prior or independent, oral or written agreements, understandings, statements, representations, commitments, promises, and warranties made with respect to the subject matter of this Agreement.

12.2    **Other Transactions.** Except as specifically provided in this Agreement, none of the provisions of this Agreement, nor any oral or written statements, representations, commitments, promises, or warranties made with respect to the subject matter of this Agreement shall be construed or relied upon by any party as the basis of, consideration for, or inducement to engage in, any separate agreement, transaction or commitment for any purpose whatsoever.

12.3    **Prohibited and Unenforceable Provisions.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibitions or unenforceability in any jurisdiction. To the extent permitted by applicable law, each of Lessor and Lessee hereby waives any provision of applicable law which renders any provision hereof prohibited or unenforceable in any respect.

12.4    **Enforcement.** This Agreement, including all agreements, covenants, representations and warranties, shall be binding upon and inure to the benefit of, and may be enforced by Lessor, Lessee, and each of their agents, servants and personal representatives.

12.5    **Headings.** The section and subsection headings in this Agreement are for convenience of reference only and shall not modify, define, expand, or limit any of the terms or provisions hereof.

12.6    **Counterparts.** This Agreement may be executed by the parties hereto in two (2) separate counterparts, each of which when so executed and delivered shall be an original, and both of which shall together constitute but one and the same instrument. The execution and delivery by one party of a facsimile of this

Agreement to the other party with a facsimile of such party's signature hereon shall be deemed a delivery of an originally executed agreement for all purposes, and be fully binding.

12.7    **Amendments.** No term or provision of this Agreement may be amended, changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by Lessor and Lessee.

12.8    **No Waiver.** No delay or omission in the exercise or enforcement or any right or remedy hereunder by either party shall be construed as a waiver of such right or remedy. All remedies, rights, undertakings, obligations, and agreements contained herein shall be cumulative and not mutually exclusive, and in addition to all other rights and remedies which either party possesses at law or in equity.

12.9    **No Assignments.** Neither party may assign its rights or obligations under this Agreement without the prior written permission of the other.

12.10    **Governing Law.** This Agreement has been negotiated and delivered in the State of New York and shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions.

12.11    **Jurisdiction and Venue.** Exclusive jurisdiction and venue over any and all disputes between the parties arising under this Agreement shall be in, and for such purpose each party hereby submits to the jurisdiction of, the state and federal courts serving the State and County of New York.

*   *   *   ***Signature Page Follows***   *   *   *

13

IN WITNESS WHEREOF, Lessor and the Lessee have each caused this **Non-Exclusive Aircraft Lease Agreement** to be duly executed as of the Effective Date.

LESSOR:

BDG AIRCHARTER, INC.

By:
Print: Edward Blumenfeld
Title: President

BLM AIR CHARTER LLC

By:
Print: Bernard L. Madoff
Title: Manager

LESSEE:

TALON AIR, INC.

By:
Print: Adam Katz
Title: President

14

## NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT

### Schedule A

Hourly Rent:    $1,440.00 USD per Flight Hour

## NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT

### Schedule B

Fixed Expenses

| | | |
|---|---|---|
| Employee Salaries (Pilot & CoPilot) | | $185,000.00 |
| Employee Benefits (Pilot & CoPilot: 22.0%) | 22.00% of Salaries | $40,700.00 |
| Employee Training (Pilot & CoPilot) | | $42,000.00 |
| Insurance – Hull | 0.20% of purchase price | $48,000.00 |
| Insurance – Liability | $150,000,000 limit | $60,700.00 |
| Navigation Chart Services | | $10,000.00 |
| Weather/Flight Planning Service | | $5,000.00 |
| Other Subscription Services | | $3,000.00 |
| Aircraft Cleaning | | $25,000.00 |
| Aircraft Refurbishment & Improvements | | $12,500.00 |

| | |
|---|---|
| Total Fixed Expenses | ($431,900.00) |

## NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT

### Schedule C

Variable Expenses Per Hour

| | | | |
|---|---|---|---|
| Fuel | $3.60 per gallon | 332.00 gal/hour | $1,195.20 |
| Parts - Airframe, Avionics, Consumables (Embraer Program) | | | $400.00 |
| APU (calculated as .3 hours for every hour of flight) | | | $30.00 |
| Engine Reserves (covers both engines) | | | $307.00 |
| Flight Attendant | $600.00 per day | 30 days/yr | $30.00 |
| Additional Pilot (After 22 days per month utilization) | $1,000.00 per day | 30 days/yr | $30.00 |
| Miscellaneous Hourly | | | $2.00 |
| Total Variable Expenses | | | ($1,994.20) |

## EXHIBIT D

| Charter Guarantee Hrs | Charter Hours | Charter Hour Shortfall | Money Guaranteed | Money Owed |
|---|---|---|---|---|
| 300 | 0 | 300 | $275,000.00 | $275,000.00 |
| 300 | 1 | 299 | $275,000.00 | $274,083.33 |
| 300 | 2 | 298 | $275,000.00 | $273,166.67 |
| 300 | 3 | 297 | $275,000.00 | $272,250.00 |
| 300 | 4 | 296 | $275,000.00 | $271,333.33 |
| 300 | 5 | 295 | $275,000.00 | $270,416.67 |
| 300 | 6 | 294 | $275,000.00 | $269,500.00 |
| 300 | 7 | 293 | $275,000.00 | $268,583.33 |
| 300 | 8 | 292 | $275,000.00 | $267,666.67 |
| 300 | 9 | 291 | $275,000.00 | $266,750.00 |
| 300 | 10 | 290 | $275,000.00 | $265,833.33 |
| 300 | 11 | 289 | $275,000.00 | $264,916.67 |
| 300 | 12 | 288 | $275,000.00 | $264,000.00 |
| 300 | 13 | 287 | $275,000.00 | $263,083.33 |
| 300 | 14 | 286 | $275,000.00 | $262,166.67 |
| 300 | 15 | 285 | $275,000.00 | $261,250.00 |
| 300 | 16 | 284 | $275,000.00 | $260,333.33 |
| 300 | 17 | 283 | $275,000.00 | $259,416.67 |
| 300 | 18 | 282 | $275,000.00 | $258,500.00 |
| 300 | 19 | 281 | $275,000.00 | $257,583.33 |
| 300 | 20 | 280 | $275,000.00 | $256,666.67 |
| 300 | 21 | 279 | $275,000.00 | $255,750.00 |
| 300 | 22 | 278 | $275,000.00 | $254,833.33 |
| 300 | 23 | 277 | $275,000.00 | $253,916.67 |
| 300 | 24 | 276 | $275,000.00 | $253,000.00 |
| 300 | 25 | 275 | $275,000.00 | $252,083.33 |
| 300 | 26 | 274 | $275,000.00 | $251,166.67 |
| 300 | 27 | 273 | $275,000.00 | $250,250.00 |
| 300 | 28 | 272 | $275,000.00 | $249,333.33 |
| 300 | 29 | 271 | $275,000.00 | $248,416.67 |
| 300 | 30 | 270 | $275,000.00 | $247,500.00 |
| 300 | 31 | 269 | $275,000.00 | $246,583.33 |
| 300 | 32 | 268 | $275,000.00 | $245,666.67 |
| 300 | 33 | 267 | $275,000.00 | $244,750.00 |
| 300 | 34 | 266 | $275,000.00 | $243,833.33 |
| 300 | 35 | 265 | $275,000.00 | $242,916.67 |
| 300 | 36 | 264 | $275,000.00 | $242,000.00 |
| 300 | 37 | 263 | $275,000.00 | $241,083.33 |
| 300 | 38 | 262 | $275,000.00 | $240,166.67 |
| 300 | 39 | 261 | $275,000.00 | $239,250.00 |
| 300 | 40 | 260 | $275,000.00 | $238,333.33 |
| 300 | 41 | 259 | $275,000.00 | $237,416.67 |
| 300 | 42 | 258 | $275,000.00 | $236,500.00 |
| 300 | 43 | 257 | $275,000.00 | $235,583.33 |
| 300 | 44 | 256 | $275,000.00 | $234,666.67 |
| 300 | 45 | 255 | $275,000.00 | $233,750.00 |
| 300 | 46 | 254 | $275,000.00 | $232,833.33 |
| 300 | 47 | 253 | $275,000.00 | $231,916.67 |

| | | | | |
|---|---|---|---|---|
| 300 | 48 | 252 | $275,000.00 | $231,000.00 |
| 300 | 49 | 251 | $275,000.00 | $230,083.33 |
| 300 | 50 | 250 | $275,000.00 | $229,166.67 |
| 300 | 51 | 249 | $275,000.00 | $228,250.00 |
| 300 | 52 | 248 | $275,000.00 | $227,333.33 |
| 300 | 53 | 247 | $275,000.00 | $226,416.67 |
| 300 | 54 | 246 | $275,000.00 | $225,500.00 |
| 300 | 55 | 245 | $275,000.00 | $224,583.33 |
| 300 | 56 | 244 | $275,000.00 | $223,666.67 |
| 300 | 57 | 243 | $275,000.00 | $222,750.00 |
| 300 | 58 | 242 | $275,000.00 | $221,833.33 |
| 300 | 59 | 241 | $275,000.00 | $220,916.67 |
| 300 | 60 | 240 | $275,000.00 | $220,000.00 |
| 300 | 61 | 239 | $275,000.00 | $219,083.33 |
| 300 | 62 | 238 | $275,000.00 | $218,166.67 |
| 300 | 63 | 237 | $275,000.00 | $217,250.00 |
| 300 | 64 | 236 | $275,000.00 | $216,333.33 |
| 300 | 65 | 235 | $275,000.00 | $215,416.67 |
| 300 | 66 | 234 | $275,000.00 | $214,500.00 |
| 300 | 67 | 233 | $275,000.00 | $213,583.33 |
| 300 | 68 | 232 | $275,000.00 | $212,666.67 |
| 300 | 69 | 231 | $275,000.00 | $211,750.00 |
| 300 | 70 | 230 | $275,000.00 | $210,833.33 |
| 300 | 71 | 229 | $275,000.00 | $209,916.67 |
| 300 | 72 | 228 | $275,000.00 | $209,000.00 |
| 300 | 73 | 227 | $275,000.00 | $208,083.33 |
| 300 | 74 | 226 | $275,000.00 | $207,166.67 |
| 300 | 75 | 225 | $275,000.00 | $206,250.00 |
| 300 | 76 | 224 | $275,000.00 | $205,333.33 |
| 300 | 77 | 223 | $275,000.00 | $204,416.67 |
| 300 | 78 | 222 | $275,000.00 | $203,500.00 |
| 300 | 79 | 221 | $275,000.00 | $202,583.33 |
| 300 | 80 | 220 | $275,000.00 | $201,666.67 |
| 300 | 81 | 219 | $275,000.00 | $200,750.00 |
| 300 | 82 | 218 | $275,000.00 | $199,833.33 |
| 300 | 83 | 217 | $275,000.00 | $198,916.67 |
| 300 | 84 | 216 | $275,000.00 | $198,000.00 |
| 300 | 85 | 215 | $275,000.00 | $197,083.33 |
| 300 | 86 | 214 | $275,000.00 | $196,166.67 |
| 300 | 87 | 213 | $275,000.00 | $195,250.00 |
| 300 | 88 | 212 | $275,000.00 | $194,333.33 |
| 300 | 89 | 211 | $275,000.00 | $193,416.67 |
| 300 | 90 | 210 | $275,000.00 | $192,500.00 |
| 300 | 91 | 209 | $275,000.00 | $191,583.33 |
| 300 | 92 | 208 | $275,000.00 | $190,666.67 |
| 300 | 93 | 207 | $275,000.00 | $189,750.00 |
| 300 | 94 | 206 | $275,000.00 | $188,833.33 |
| 300 | 95 | 205 | $275,000.00 | $187,916.67 |
| 300 | 96 | 204 | $275,000.00 | $187,000.00 |
| 300 | 97 | 203 | $275,000.00 | $186,083.33 |
| 300 | 98 | 202 | $275,000.00 | $185,166.67 |
| 300 | 99 | 201 | $275,000.00 | $184,250.00 |

| | | | | |
|---|---|---|---|---|
| 300 | 100 | 200 | $275,000.00 | $183,333.33 |
| 300 | 101 | 199 | $275,000.00 | $182,416.67 |
| 300 | 102 | 198 | $275,000.00 | $181,500.00 |
| 300 | 103 | 197 | $275,000.00 | $180,583.33 |
| 300 | 104 | 196 | $275,000.00 | $179,666.67 |
| 300 | 105 | 195 | $275,000.00 | $178,750.00 |
| 300 | 106 | 194 | $275,000.00 | $177,833.33 |
| 300 | 107 | 193 | $275,000.00 | $176,916.67 |
| 300 | 108 | 192 | $275,000.00 | $176,000.00 |
| 300 | 109 | 191 | $275,000.00 | $175,083.33 |
| 300 | 110 | 190 | $275,000.00 | $174,166.67 |
| 300 | 111 | 189 | $275,000.00 | $173,250.00 |
| 300 | 112 | 188 | $275,000.00 | $172,333.33 |
| 300 | 113 | 187 | $275,000.00 | $171,416.67 |
| 300 | 114 | 186 | $275,000.00 | $170,500.00 |
| 300 | 115 | 185 | $275,000.00 | $169,583.33 |
| 300 | 116 | 184 | $275,000.00 | $168,666.67 |
| 300 | 117 | 183 | $275,000.00 | $167,750.00 |
| 300 | 118 | 182 | $275,000.00 | $166,833.33 |
| 300 | 119 | 181 | $275,000.00 | $165,916.67 |
| 300 | 120 | 180 | $275,000.00 | $165,000.00 |
| 300 | 121 | 179 | $275,000.00 | $164,083.33 |
| 300 | 122 | 178 | $275,000.00 | $163,166.67 |
| 300 | 123 | 177 | $275,000.00 | $162,250.00 |
| 300 | 124 | 176 | $275,000.00 | $161,333.33 |
| 300 | 125 | 175 | $275,000.00 | $160,416.67 |
| 300 | 126 | 174 | $275,000.00 | $159,500.00 |
| 300 | 127 | 173 | $275,000.00 | $158,583.33 |
| 300 | 128 | 172 | $275,000.00 | $157,666.67 |
| 300 | 129 | 171 | $275,000.00 | $156,750.00 |
| 300 | 130 | 170 | $275,000.00 | $155,833.33 |
| 300 | 131 | 169 | $275,000.00 | $154,916.67 |
| 300 | 132 | 168 | $275,000.00 | $154,000.00 |
| 300 | 133 | 167 | $275,000.00 | $153,083.33 |
| 300 | 134 | 166 | $275,000.00 | $152,166.67 |
| 300 | 135 | 165 | $275,000.00 | $151,250.00 |
| 300 | 136 | 164 | $275,000.00 | $150,333.33 |
| 300 | 137 | 163 | $275,000.00 | $149,416.67 |
| 300 | 138 | 162 | $275,000.00 | $148,500.00 |
| 300 | 139 | 161 | $275,000.00 | $147,583.33 |
| 300 | 140 | 160 | $275,000.00 | $146,666.67 |
| 300 | 141 | 159 | $275,000.00 | $145,750.00 |
| 300 | 142 | 158 | $275,000.00 | $144,833.33 |
| 300 | 143 | 157 | $275,000.00 | $143,916.67 |
| 300 | 144 | 156 | $275,000.00 | $143,000.00 |
| 300 | 145 | 155 | $275,000.00 | $142,083.33 |
| 300 | 146 | 154 | $275,000.00 | $141,166.67 |
| 300 | 147 | 153 | $275,000.00 | $140,250.00 |
| 300 | 148 | 152 | $275,000.00 | $139,333.33 |
| 300 | 149 | 151 | $275,000.00 | $138,416.67 |
| 300 | 150 | 150 | $275,000.00 | $137,500.00 |
| 300 | 151 | 149 | $275,000.00 | $136,583.33 |

| | | | | |
|---|---|---|---|---|
| 300 | 152 | 148 | $275,000.00 | $135,666.67 |
| 300 | 153 | 147 | $275,000.00 | $134,750.00 |
| 300 | 154 | 146 | $275,000.00 | $133,833.33 |
| 300 | 155 | 145 | $275,000.00 | $132,916.67 |
| 300 | 156 | 144 | $275,000.00 | $132,000.00 |
| 300 | 157 | 143 | $275,000.00 | $131,083.33 |
| 300 | 158 | 142 | $275,000.00 | $130,166.67 |
| 300 | 159 | 141 | $275,000.00 | $129,250.00 |
| 300 | 160 | 140 | $275,000.00 | $128,333.33 |
| 300 | 161 | 139 | $275,000.00 | $127,416.67 |
| 300 | 162 | 138 | $275,000.00 | $126,500.00 |
| 300 | 163 | 137 | $275,000.00 | $125,583.33 |
| 300 | 164 | 136 | $275,000.00 | $124,666.67 |
| 300 | 165 | 135 | $275,000.00 | $123,750.00 |
| 300 | 166 | 134 | $275,000.00 | $122,833.33 |
| 300 | 167 | 133 | $275,000.00 | $121,916.67 |
| 300 | 168 | 132 | $275,000.00 | $121,000.00 |
| 300 | 169 | 131 | $275,000.00 | $120,083.33 |
| 300 | 170 | 130 | $275,000.00 | $119,166.67 |
| 300 | 171 | 129 | $275,000.00 | $118,250.00 |
| 300 | 172 | 128 | $275,000.00 | $117,333.33 |
| 300 | 173 | 127 | $275,000.00 | $116,416.67 |
| 300 | 174 | 126 | $275,000.00 | $115,500.00 |
| 300 | 175 | 125 | $275,000.00 | $114,583.33 |
| 300 | 176 | 124 | $275,000.00 | $113,666.67 |
| 300 | 177 | 123 | $275,000.00 | $112,750.00 |
| 300 | 178 | 122 | $275,000.00 | $111,833.33 |
| 300 | 179 | 121 | $275,000.00 | $110,916.67 |
| 300 | 180 | 120 | $275,000.00 | $110,000.00 |
| 300 | 181 | 119 | $275,000.00 | $109,083.33 |
| 300 | 182 | 118 | $275,000.00 | $108,166.67 |
| 300 | 183 | 117 | $275,000.00 | $107,250.00 |
| 300 | 184 | 116 | $275,000.00 | $106,333.33 |
| 300 | 185 | 115 | $275,000.00 | $105,416.67 |
| 300 | 186 | 114 | $275,000.00 | $104,500.00 |
| 300 | 187 | 113 | $275,000.00 | $103,583.33 |
| 300 | 188 | 112 | $275,000.00 | $102,666.67 |
| 300 | 189 | 111 | $275,000.00 | $101,750.00 |
| 300 | 190 | 110 | $275,000.00 | $100,833.33 |
| 300 | 191 | 109 | $275,000.00 | $99,916.67 |
| 300 | 192 | 108 | $275,000.00 | $99,000.00 |
| 300 | 193 | 107 | $275,000.00 | $98,083.33 |
| 300 | 194 | 106 | $275,000.00 | $97,166.67 |
| 300 | 195 | 105 | $275,000.00 | $96,250.00 |
| 300 | 196 | 104 | $275,000.00 | $95,333.33 |
| 300 | 197 | 103 | $275,000.00 | $94,416.67 |
| 300 | 198 | 102 | $275,000.00 | $93,500.00 |
| 300 | 199 | 101 | $275,000.00 | $92,583.33 |
| 300 | 200 | 100 | $275,000.00 | $91,666.67 |
| 300 | 201 | 99 | $275,000.00 | $90,750.00 |
| 300 | 202 | 98 | $275,000.00 | $89,833.33 |
| 300 | 203 | 97 | $275,000.00 | $88,916.67 |

| | | | | |
|---|---|---|---|---|
| 300 | 204 | 96 | $275,000.00 | $88,000.00 |
| 300 | 205 | 95 | $275,000.00 | $87,083.33 |
| 300 | 206 | 94 | $275,000.00 | $86,166.67 |
| 300 | 207 | 93 | $275,000.00 | $85,250.00 |
| 300 | 208 | 92 | $275,000.00 | $84,333.33 |
| 300 | 209 | 91 | $275,000.00 | $83,416.67 |
| 300 | 210 | 90 | $275,000.00 | $82,500.00 |
| 300 | 211 | 89 | $275,000.00 | $81,583.33 |
| 300 | 212 | 88 | $275,000.00 | $80,666.67 |
| 300 | 213 | 87 | $275,000.00 | $79,750.00 |
| 300 | 214 | 86 | $275,000.00 | $78,833.33 |
| 300 | 215 | 85 | $275,000.00 | $77,916.67 |
| 300 | 216 | 84 | $275,000.00 | $77,000.00 |
| 300 | 217 | 83 | $275,000.00 | $76,083.33 |
| 300 | 218 | 82 | $275,000.00 | $75,166.67 |
| 300 | 219 | 81 | $275,000.00 | $74,250.00 |
| 300 | 220 | 80 | $275,000.00 | $73,333.33 |
| 300 | 221 | 79 | $275,000.00 | $72,416.67 |
| 300 | 222 | 78 | $275,000.00 | $71,500.00 |
| 300 | 223 | 77 | $275,000.00 | $70,583.33 |
| 300 | 224 | 76 | $275,000.00 | $69,666.67 |
| 300 | 225 | 75 | $275,000.00 | $68,750.00 |
| 300 | 226 | 74 | $275,000.00 | $67,833.33 |
| 300 | 227 | 73 | $275,000.00 | $66,916.67 |
| 300 | 228 | 72 | $275,000.00 | $66,000.00 |
| 300 | 229 | 71 | $275,000.00 | $65,083.33 |
| 300 | 230 | 70 | $275,000.00 | $64,166.67 |
| 300 | 231 | 69 | $275,000.00 | $63,250.00 |
| 300 | 232 | 68 | $275,000.00 | $62,333.33 |
| 300 | 233 | 67 | $275,000.00 | $61,416.67 |
| 300 | 234 | 66 | $275,000.00 | $60,500.00 |
| 300 | 235 | 65 | $275,000.00 | $59,583.33 |
| 300 | 236 | 64 | $275,000.00 | $58,666.67 |
| 300 | 237 | 63 | $275,000.00 | $57,750.00 |
| 300 | 238 | 62 | $275,000.00 | $56,833.33 |
| 300 | 239 | 61 | $275,000.00 | $55,916.67 |
| 300 | 240 | 60 | $275,000.00 | $55,000.00 |
| 300 | 241 | 59 | $275,000.00 | $54,083.33 |
| 300 | 242 | 58 | $275,000.00 | $53,166.67 |
| 300 | 243 | 57 | $275,000.00 | $52,250.00 |
| 300 | 244 | 56 | $275,000.00 | $51,333.33 |
| 300 | 245 | 55 | $275,000.00 | $50,416.67 |
| 300 | 246 | 54 | $275,000.00 | $49,500.00 |
| 300 | 247 | 53 | $275,000.00 | $48,583.33 |
| 300 | 248 | 52 | $275,000.00 | $47,666.67 |
| 300 | 249 | 51 | $275,000.00 | $46,750.00 |
| 300 | 250 | 50 | $275,000.00 | $45,833.33 |
| 300 | 251 | 49 | $275,000.00 | $44,916.67 |
| 300 | 252 | 48 | $275,000.00 | $44,000.00 |
| 300 | 253 | 47 | $275,000.00 | $43,083.33 |
| 300 | 254 | 46 | $275,000.00 | $42,166.67 |
| 300 | 255 | 45 | $275,000.00 | $41,250.00 |

| | | | | |
|---|---|---|---|---|
| 300 | 256 | 44 | $275,000.00 | $40,333.33 |
| 300 | 257 | 43 | $275,000.00 | $39,416.67 |
| 300 | 258 | 42 | $275,000.00 | $38,500.00 |
| 300 | 259 | 41 | $275,000.00 | $37,583.33 |
| 300 | 260 | 40 | $275,000.00 | $36,666.67 |
| 300 | 261 | 39 | $275,000.00 | $35,750.00 |
| 300 | 262 | 38 | $275,000.00 | $34,833.33 |
| 300 | 263 | 37 | $275,000.00 | $33,916.67 |
| 300 | 264 | 36 | $275,000.00 | $33,000.00 |
| 300 | 265 | 35 | $275,000.00 | $32,083.33 |
| 300 | 266 | 34 | $275,000.00 | $31,166.67 |
| 300 | 267 | 33 | $275,000.00 | $30,250.00 |
| 300 | 268 | 32 | $275,000.00 | $29,333.33 |
| 300 | 269 | 31 | $275,000.00 | $28,416.67 |
| 300 | 270 | 30 | $275,000.00 | $27,500.00 |
| 300 | 271 | 29 | $275,000.00 | $26,583.33 |
| 300 | 272 | 28 | $275,000.00 | $25,666.67 |
| 300 | 273 | 27 | $275,000.00 | $24,750.00 |
| 300 | 274 | 26 | $275,000.00 | $23,833.33 |
| 300 | 275 | 25 | $275,000.00 | $22,916.67 |
| 300 | 276 | 24 | $275,000.00 | $22,000.00 |
| 300 | 277 | 23 | $275,000.00 | $21,083.33 |
| 300 | 278 | 22 | $275,000.00 | $20,166.67 |
| 300 | 279 | 21 | $275,000.00 | $19,250.00 |
| 300 | 280 | 20 | $275,000.00 | $18,333.33 |
| 300 | 281 | 19 | $275,000.00 | $17,416.67 |
| 300 | 282 | 18 | $275,000.00 | $16,500.00 |
| 300 | 283 | 17 | $275,000.00 | $15,583.33 |
| 300 | 284 | 16 | $275,000.00 | $14,666.67 |
| 300 | 285 | 15 | $275,000.00 | $13,750.00 |
| 300 | 286 | 14 | $275,000.00 | $12,833.33 |
| 300 | 287 | 13 | $275,000.00 | $11,916.67 |
| 300 | 288 | 12 | $275,000.00 | $11,000.00 |
| 300 | 289 | 11 | $275,000.00 | $10,083.33 |
| 300 | 290 | 10 | $275,000.00 | $9,166.67 |
| 300 | 291 | 9 | $275,000.00 | $8,250.00 |
| 300 | 292 | 8 | $275,000.00 | $7,333.33 |
| 300 | 293 | 7 | $275,000.00 | $6,416.67 |
| 300 | 294 | 6 | $275,000.00 | $5,500.00 |
| 300 | 295 | 5 | $275,000.00 | $4,583.33 |
| 300 | 296 | 4 | $275,000.00 | $3,666.67 |
| 300 | 297 | 3 | $275,000.00 | $2,750.00 |
| 300 | 298 | 2 | $275,000.00 | $1,833.33 |
| 300 | 299 | 1 | $275,000.00 | $916.67 |
| 300 | 300 | 0 | $275,000.00 | $0.00 |