Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com

Hearing Date: June 2, 2009
Hearing Time: 10:00 a.m.
Objection Deadline: May 28, 2009

*Attorneys for Irving H. Picard, Esq.,
Trustee for the SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation |

**OBJECTION OF TRUSTEE IRVING H. PICARD TO
MOTION OF ADE O. OGUNJOBI AND TOKS, INC., et al.
<u>FOR INTERVENTION PURSUANT TO FED.R.CIV.P. 24</u>**

Irving H. Picard, trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa <u>et seq.</u> ("SIPA")[1], submits this objection to the motion ("Motion") of Ade O. Ogunjobi ("Ogunjobi"), Toks, Inc. ("Toks") and Wholly-Owned Subsidiaries (collectively with Ogunjobi

---

[1] For convenience, subsequent references to SIPA shall omit "15 U.S.C."

300010884

and TOKS, the "Movants") to intervene in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24(a) and (b),[2] and respectfully states as follows:

### Preliminary Statement

1. The Movants seek to intervene in this proceeding to conduct a tender offer to purchase BLMIS in exchange for what they propose is a global, all stock tax free transaction involving $100 trillion in stock or 400 million shares of Class A shares of Toks. The Movants propose to commence and fund their plan with the $1 billion of funds collected by the Trustee. The Motion however is replete with incredible and unfounded statements on how the Movants intend to achieve their plan, and contains no facts supporting their ability to consummate the proposed tender offer.

2. The Movants do not meet the requirements for either mandatory or permissive intervention pursuant to Fed.R.Civ.P. 24, as made applicable to this proceeding by Fed.R.Bankr.P. 7024. They have asserted no federal statute upon which they base the Motion, and they have no claim or other identifiable interest or defense in this proceeding, and thus lack standing to seek intervention.

3. Furthermore, the unsolicited and unsupported proposals set forth in the Movants' pleadings are merely exaggerated variations of offers previously found improper and fraudulent by the United States Securities and Exchange Commission ("SEC"), an administrative law judge and a United States District Court Judge, which ultimately resulted in the entry of a permanent injunction against Ogunjobi and Toks. The proposals set forth by the Movants serve at best as a distraction which must be addressed by the Trustee, and at worst as an attempt to further mislead and defraud investors who already have been victimized as a result of Madoff's massive Ponzi

---

[2] Subsequent references to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure shall be abbreviated "Fed.R.Civ.P" and "Fed.R.Bankr.P.," respectively.

scheme.

## Relevant Background

### I. Appointment of the Trustee

4. On December 11, 2008, the SEC ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Bernard L. Madoff and BLMIS (together, the "Defendants") (Case No. 08-CV-10791) (the "SEC Action"). The complaint alleged that the Defendants engaged in fraud through investment adviser activities of BLMIS.

5. On December 15, 2008, the SEC consented to a combination of the SEC Action with an application of SIPC. Thereafter, SIPC filed an application in the District Court allging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

6. On that date, the District Court entered a protective decree, to which BLMIS consented, which in pertinent part appointed the Trustee and removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

### II. Prior SEC Proceedings Against Toks and Ogunjobi

7. Pursuant to a decision of an administrative law judge in an SEC proceeding in 2002,[3] Toks filed a registration statement with the SEC on August 31, 2001 (as amended on September 7, 2001), pursuant to which Toks and Ogunjobi sought to register shares of Toks common stock to be sold in an initial public offering. The SEC's Division of Corporation Finance ("Corporation Finance") notified Toks that the registration statement failed in numerous material respects to comply with the securities laws, and advised Toks to revise or supplement its

---

[3] See In the Matter of Toks, Inc., SEC Initial Decision Rel. No. 198, 2002 WL 21693 (January 8, 2002) ("SEC Decision"). A copy of the SEC Decision, as well as the notice that the decision became final, are annexed collectively hereto as Exhibit A.

disclosures. See SEC Decision, at 2. Ogunjobi also filed subsequent notices announcing that it intended to make tender offers for several of the world's largest corporations in exchange for Toks stock. Corporation Finance advised Ogunjobi that these filings did not provide a reasonable basis to believe that Toks could consummate the proposed tender offers, and it urged him to cease all activities relating to the tender offers. See id., at 3.

8. After concluding that Toks and Ogunjobi were refusing to engage in meaningful dialogue to correct the registration statement, Corporation Finance referred the matter to the SEC's Division of Enforcement, and the SEC ordered a public hearing to address the Division of Enforcement's allegations contained in a Statement of Matters to be Considered at Public Hearing. Although Ogunjobi refused to participate, a hearing on the registration statement was ultimately held, resulting in the issuance of the SEC Decision.[4]

9. As background, pursuant to the registration statement Toks sought to register twenty shares of stock to be sold for an aggregate of $100,000 in an initial public offering, after which Toks' main bank would be contacted to arrange $10 billion in loan syndication, or the issuance of high yield bonds or convertible bonds through the use of "negotiable instruments" available to a public company in connection with access to "capital markets." See SEC Decision, at 1-2. The registration statement also provided that Class A common shares totaling $2 trillion would be registered with the SEC for issue in order to conduct all stock "tender offers" to acquire some of the largest companies in the world, including Hughes Electronics, AT&T Wireless Services, Inc. and AT&T Corporation. Toks asserted it would become the parent company and the acquired corporations would become wholly-owned subsidiaries. Id. at 2.

---

[4] Ogunjobi advised the Division of Enforcement that he refused to participate in a prehearing conference or the hearing until his securities were declared effective. Id. at 4.

10. The Chief Administrative Law Judge of the SEC found that the registration statement violated numerous rules under the Securities and Exchange Act of 1934 ("Exchange Act"), including rule 14e-8, which provides that it is a fraudulent, deceptive or manipulative act or practice within the meaning of the Exchange Act for a person to publicly announce that they plan to make a tender offer that has not yet been commenced if they do not have the reasonable belief that they will have the means to purchase securities to complete the offer:

> The registration statement goes well beyond hyperbole with a series of assumptions that it presents as realistic future events. It assumes that Toks would raise the full amount in a $100,000 best efforts offering, which Mr. Ogunjobi will conduct without the assistance of an underwriter or broker-dealer. Then without explanation, it concludes that the $100,000 IPO proceeds would enable Toks to arrange $10 billion in loan syndication or "issue high yield bonds or convertible bonds." The registration statement then represents, without explanation, that Toks will register $2 trillion of Class A common shares to conduct all-stock tender offers and acquire the securities of several large public companies.

Id. at 5 (internal citations omitted).

11. After the hearing, the effectiveness of the registration statement was suspended by the administrative law judge after finding that it contained material misstatements and omissions with respect to, among other things, Toks' financial statements (including that they were unaudited and contained no figures in any of the categories), it's legal status, its plan of operation and its proposed tender offers. Id. at 5-10.[5] The judge found that because Toks has no assets, no revenues, no employees and no products, it had no reasonable basis to believe it could complete the tender offers announced in its registration statement. Id. at 6.

12. More than a year later, the SEC again had to address improper activities by Toks and Ogunjobi. On August 25, 2003, the SEC filed a complaint against Toks and Ogunjobi ("Complaint"). The Complaint alleged that from at least May 2003, Toks and Ogunjobi had

---

[5] No petition for review of the initial decision was filed by Toks. See Exhibit A, "Notice That Initial Decision Has Become Final."

been conducting an unregistered offering of up to $50 billion in Toks notes for the apparent purpose of funding (i) filing fees to the SEC, and (ii) tender offers targeting the world's largest corporations, including AOL Time Warner, Inc., AT&T, General Motors Corp. and Microsoft Corp. See United States Securities and Exchange Commission v. Toks, Inc. and Ade O. Ogunjobi, Case No. 1:03-CV-1787, Docket No. 1 ("Complaint"), at ¶18 (a copy of which is annexed hereto as Exhibit B).

13. The Complaint accused Toks and Ogunjobi of preparing and disseminating materials, including through an internet website,[6] containing untrue statements of material fact, and of making pre-commencement communications and public announcements to the investing public in connection with a tender offer without filing the communications to the SEC or the subject companies, or including the required information and advisements to investors, all in violation of the Exchange Act. See Complaint, at ¶¶32-33, 39.[7]

14. Pursuant to a "Final Judgment Granting Permanent Injunction and Other Equitable Relief" dated March 24, 2004 ("Injunction Order"), the United States District Court for the District of Columbia permanently enjoined Toks and Ogunjobi from violating Sections 5 and 17 of the Securities Act of 1933 relating to registration and anti-fraud provisions, as well as Section 14 of the Exchange Act relating to tender offers. The court found that Toks and Ogunjobi had no assets, sales, revenues, employees or a stable office, nor any commitments from any banks, financing sources or underwriters. The court also found that Toks and Ogunjobi knew, or were reckless in not knowing, that Toks does not have any of the resources, means or assets to accomplish the promised tender offers. A copy of the Injunction Order is annexed

---

[6] The website utilized was www.tspnotes.com (the "Toks Website"), which is currently operational, as discussed herein.

[7] The Trustee respectfully refers the Court and all interested parties to the Complaint at Exhibit B for a complete recitation of the claims against Toks and Ogunjobi.

300010884                                        6

hereto as <u>Exhibit C</u>.

15. The Injunction Order provides, among other relief, that Toks and Ogunjobi are permanently restrained and enjoined from "making any untrue statement of a material fact or omitting to state any material fact necessary in order to make the statements made, [in] light the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer, request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation, in violation of Section 14(e) of the [Exchange Act]." Injunction Order, at section IV.

## **Argument**

16. The Motion should be denied on multiple grounds: (i) the Movants have not met their burden under Fed.R.Civ.P. 24 for mandatory or permissive intervention; (ii) the Movants have presented a completely speculative, baseless and unachievable plan to raise capital to repay investors by utilizing monies collected by the Trustee, which is deceptive and misleading to the Court and victims in this case; and (iii) the Movants have previously been enjoined in connection with public tender offers containing similar unfounded plans, and therefore the Court should deny the Motion.

### I.    **Movants Have Not Met Their Burden Under Fed.R.Civ.P. 24**

17. Under Fed.R.Civ.P. 24(a), a person has a right to intervene if they are given an unconditional right to intervene by a federal statute, or if they claim an interest relating to the property or transaction that is the subject of the action, such that disposing of the matter will impair or impede their ability to protect that interest if they are not able to represent that interest. See Fed.R.Civ.P. 24(a).

18. Under Fed.R.Civ.P. 24(b), which provides for permissive intervention, the court

may allow anyone to intervene if they are given a conditional right to intervene by a federal statute, or if they have a claim or defense that shares with the main action a common question of law or fact. See Fed.R.Civ.P. 24(b).

19. The Movants have not identified any federal statute which provides them with an unconditional or conditional right to intervene in this case. The Movants also are not customers or creditors in this case, nor have they demonstrated any other basis for claiming an interest in the property which is held by the Trustee, or in any transaction proposed by him. See Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984) (a Rule 24 intervention interest must be significantly protectable and direct, as opposed to contingent or remote). Furthermore, the Movants have not asserted any claim or defense that shares a common question of law or fact with the case. See Erdman Techs. Corp. v. U.S. Sprint Communication Co., 1997 WL 401669 (S.D.N.Y. July 16, 1997) (vague allegations do not satisfy either Rule 24(a) or (b) standards for intervention) (copy of decision annexed hereto as Exhibit D).

20. Based on the foregoing, the Movants have failed to show that they are entitled or permitted to intervene in this case.

## II.  The Movants' Offer is Unsupported and Deceptive

21. The Motion and related papers are filled with unrealistic proposals and assertions. Among other unsupported statements in their confusing and rambling papers, the Movants propose to purchase BLMIS through Toks' "global transaction all stock tax free $100,000,000,000 ($100 Trillion) or 400,000,000,000 shares of Class A Common shares that will be registered with the [SEC] during the closing of the proposed exchange tender offers," pursuant to which clients of BLMIS would receive $75 billion or more in stock. See Movants' Memorandum of Law in Support of Motion for Intervention dated April 22, 2009 ("Toks

Memo"), at pp.1-2.[8]

22.     Other statements and assumptions are similarly deceptive and unfounded. The Movants claim that they will launch the largest bank in the world and will acquire, among other entities, Bank of America, JPMorgan Chase and HSBC, once they get access to the approximately $1 billion collected by the Trustee. They state that as soon as the Motion is granted,

> [it] will allow almost $1,000,000,000 in cash the trustee of Bernard L. Madoff Investment Securities found to start the process to file all necessary papers to launch the largest bank ("Holding Bank") in the world. This will lead to $500,000,000,000 ($500 Billion) in cash borrowed from Federal Reserve Bank as the new holding bank against our future assets $25,000,000,000,000 ($25 Trillion) in stock granted at no cost by the parent company Toks, Inc. to the holding bank before spin off; $5,000,000,000,000 ($5 Trillion) in cash that will be raised from all Central Banks around the globe to own 50% of the largest bank in the world.

See Toks Memo, at 2-3.

23.     The Movants further claim that the "Holding Bank" they will form will buy all toxic assets from banks around the world, and that the bank is prepared to write checks to the United States government to cover all bailout funds, including $180 billion provided to AIG. See id., at 5. With respect to their ability to compensate victims in this matter, the Movants state that Toks is capable of accommodating any amount lost, whether it is $50 billion or $175 billion, through the issuance of registered securities or $100 trillion in stock. See id., at 7. No support for these representations is found in the Motion or related papers.[9]

24.     The Trustee notes that in connection with proposed tender offers to acquire 150 publicly traded companies, the Movants refer to their current website, www.tspnotes.com, for

---

[8]  The Movants did not number the pages of the Memorandum.
[9]  The Motion and related papers contain many other claims and allegations, including statements that the Movants will sue the United States District Court Judge who issued the Injunction Order, and the SEC. See Toks Memo, at pp. 24-28. The Trustee does not believe it is necessary or useful for him to address these and other unfounded statements in any further detail.

public review of their proposal. See Toks Memo, at 8. This is the same website that the Movants previously utilized to offer secured promissory notes, which offer the United States District Court found to be improper and enjoined them against pursuant to the Injunction Order.

25. The Movants have demonstrated a persistent desire to make tender offers which they have no ability to consummate. As in prior proceedings, the Movants have no basis for the proposals and assumptions they make, and have failed to set forth facts or other evidence to indicate that they have any ability whatsoever to raise or obtain the astounding funds recited in their papers. A simple example of this is revealed in Ogunjobi's affidavit, in which he states that he has been unable even to raise $5,000 necessary to retain an attorney to represent him in this matter. See Affidavit of Ade Ogunjobi dated April 20, 2009, at ¶¶9-10.

### III. Similar Activities by the Movants Have Been Enjoined Previously

26. As detailed above, prior tender offers made by the Movants with proposals like those set forth in the Motion have been challenged by the SEC and enjoined by court order.[10] The statements contained in the Motion appear to violate the Injunction Order, and are misleading, deceptive and without basis. The Court should not countenance any further activity by the Movants to mislead victims of the Bernie Madoff's fraud, and should preclude Movants from interceding in this matter.

---

[10] The Trustee has alerted the SEC staff to the Movants' Motion.

300010884                                    10

## **Conclusion**

Based on the foregoing, the Motion should be denied. The Trustee further requests that the Court dispense with a hearing on the Motion, which would unnecessarily cause the expenditure of additional time and resources on this matter.

Dated: New York, New York          Respectfully submitted,
       May 20, 2009

                                                s/Keith Murphy
                                         Baker & Hostetler LLP
                                         45 Rockefeller Plaza
                                         New York, New York 10111
                                         Telephone: (212) 589-4200
                                         Facsimile: (212) 589-4201
                                         David J. Sheehan
                                         Email: dsheehan@bakerlaw.com
                                         Marc Hirschfield
                                         Email: mhirschfield@bakerlaw.com
                                         Keith R. Murphy
                                         Email: kmurphy@bakerlaw.com

                                         *Attorneys for Irving H. Picard, Esq.*
                                         *Trustee for the SIPA Liquidation of Bernard L.*
                                         *Madoff Investment Securities LLC*