# EXHIBIT A

Westlaw.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)    Page 1

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)

S.E.C. Release No.

Initial Decision

IN THE MATTER OF TOKS INC.

Administrative Proceeding File No. 3-10635

January 8, 2002

APPEARANCES:
Carl A. Tibbetts and Jeffrey B. Finnell for the Division of Enforcement, Securities and Exchange Commission

BEFORE: Brenda P. Murray, Chief Administrative Law Judge
**Issue**

The issue is whether the Securities and Exchange Commission ("Commission"), acting pursuant to Section 8(d) of the Securities Act of 1933 ("Securities Act"), should issue a stop order suspending the effectiveness of the registration statement of Toks Inc. ("Toks") filed August 31, 2001, and amended September 7, 2001.

**Findings of Fact**[FN1]

On August 31, 2001, Toks filed a registration statement on Form SB-2 with the Commission to register twenty shares of Toks common stock to be sold at $5,000 per share for a total of $100,000 in a best efforts initial public offering ("IPO"). (Div. Ex. 1 at 2.) Following standard operating procedure, the Division of Corporation Finance ("Corporation Finance"), the organizational unit at the Commission responsible for reviewing Toks's registration statement, requested that Toks file an amended Form SB-2 that included a delaying legend so that the registration statement would not become effective by operation of law twenty days after filing before Corporation Finance completed a full review.[FN2] (Tr. 16, 25-26.) A full review takes more than twenty days to perform because a reviewer compares the contents of the filing with the disclosure requirements and informs the filer of any deficiencies either orally or in a comment letter.[FN3] (Tr. 22, 25.)

Toks filed an amended Form SB-2 on September 7, 2001, that is almost identical in substantive content to the original filing, with the addition of the following delaying legend. (Tr. 27.)
> The Registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this registrations statement shall thereafter become effective in accordance with section 8(A) of the Securities Act of 1933 or until the registration statement shall become effective on such date as the Commission, acting pursuant to said section 8(A), may determine.

(Div. Ex. 3.) The Commission has not declared the registration statement effective.

Toks's registration statement identifies Ade O. Ogunjobi as Toks's founder who would become its chairman and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)    Page 2

chief executive officer.[FN4] (Tr. 41; Div. Ex. 3 at 31.) The registration statement identifies Toks as a Delaware corporation and development stage company even though Toks lost its good corporate standing in Delaware on March 1, 1998, for failure to pay taxes. (Tr. 41; Div. Ex. 3 at 5, Div. Ex. 13.) The registration statement describes Mr. Ogunjobi as Toks's only employee who has been working without compensation since the inception of the company. (Div. Ex. 3 at 6, 29.) The registration statement states that Mr. Ogunjobi will conduct the offering without the use of an underwriter or an independent broker-dealer. (Div. Ex. 3 at 4.) Toks has never had any revenues. (Div. Ex. 3 at 24.) Its temporary office is Mr. Ogunjobi's apartment in Los Angeles. (Div. Ex. 3 at 6, 29.)

The stated purpose of the registration statement is to register enough securities to qualify as a public entity and then to use the public entity status to raise capital. (Div. Ex. 3 at 24.) The registration statement represents that after Toks raises $100,000 in the IPO,

> The next step is to contact [Toks's] main "bank" to arrange $10 billion in loan syndication or issue high yield bonds or convertible bonds by using the " "negotiable instruments" available to a public company because of access to " "capital markets."
> A "Shelf" registration of Class A common shares of total $2 trillion will be registered with the United States Securities and Exchange Commission for issue to conduct an all stock "tender offers" to acquire General Motors Corporation and its subsidiaries, Hughes Electronics Corporation in stock; AT&T Wireless Services, Inc. in stock and AT&T Corporation in stock. All in heavy premium due to [Toks's] share price. Toks will become a "parent" Company and the acquired entities will become "wholly" owned subsidiaries.

(Div. Ex. 3 at 5-6.)

Generally, Corporation Finance engages in a dialogue with the registrant to cure what it views as deficiencies in a registration statement. (Tr. 25, 43.) The result often is that the registrant either submits amendments that cure the deficiencies or withdraws the registration statement. (Tr. 44-45.)

> Registration statements ... and similar documents filed with the Commission under the Securities Act of 1933 ... are routed to the Division of Corporation Finance, which passes initially on the adequacy of disclosure and recommends the initial action to be taken. If the filing appears to afford inadequate disclosure, as for example through omission of material information or through violation of accepted accounting principles and practices, the usual practice is to bring the deficiency to the attention of the person who filed the document ... and to afford a reasonable opportunity to discuss the matter and make the necessary corrections. This informal procedure is not generally employed when the deficiencies appear to stem from careless disregard of the statutes and rules or a deliberate attempt to conceal or mislead or where the Commission deems formal proceedings necessary in the public interest.

McLucas, supra, at 521-22 (quoting 17 C.F.R. § 202.3).

Corporation Finance notified Toks in writing on October 3, 2001, that its initial registration statement "fails in numerous material respects to comply with the requirements of the Securities Act of 1933." (Div. Ex. 2.) The letter was not all encompassing but focused only on what Corporation Finance believed were the fundamental deficiencies. (Tr. 29-31; Div. Ex. 2.) Corporation Finance advised Toks to revise or supplement its disclosures given its concern about Toks's ability to conduct the proposed tender offer. The letter's main points are as follows:

> 1. General. The registration statement contained no explanation that supported Toks's assumption that if it raised $100,000 it could then qualify to obtain a $10 billion bank loan or raise $10 billion in a registered offering of debt securities. Also, the registration statement did not explain why Toks believed it could register $2 trillion of securities to be offered in a tender offer for the outstanding shares of large, publicly traded

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)                Page 3

corporations.
2. Tender Offer Rules. Rule 14e-8 promulgated pursuant to the Securities Exchange Act of 1934 ("Exchange Act") declares that
> [I]t is a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the [Exchange] Act (15 U.S.C. 78n) for any person to publicly announce that the person ... plans to make a tender offer that has not yet been commenced, if the person ... [d]oes not have the reasonable belief that the person will have the means to purchase securities to complete the offer.

17 C.F.R. § 240.14e-8.
3. Plain English. The registration statement did not meet the requirements of Regulation C under the Securities Act, Rule 421(b) and (d), Presentation of information in prospectuses. 17 C.F.R. § 230.421(b), (d).
4. Accounting Comments. The registration statement did not contain audited financial statements and other related disclosures of the registrant as of the fiscal year end in accordance with Regulation S-B under the Securities Act, specifically Item 310, Financial Statements. 17 C.F.R. § 228.310. Also, the Plan of Operation section should be revised to comply with the requirements of Regulation S-B, Item 303(a), Plan of Operation. 17 C.F.R. § 228.303(a).

On October 9, 2001, Mr. Ogunjobi, as Toks's chairman and chief executive officer, filed notices "[p]ursuant to Rule 425 under the Securities Act of 1933 and deemed filed pursuant to Rule 14a-12 under the Securities Exchange Act of 1934" announcing that Toks intended to make almost identical tender offers to Hughes Electronics Corp., AOL Time Warner Inc., General Electric Co., AT&T Wireless Services, Inc., AT&T Corp., Marriott International/MD/Inc., and General Motors Corp. (Tr. 31-34; Div. Exs. 4-10.) Toks proposed a "a tax-free, all stock transaction" to these companies whereby shareholders would receive Toks Class A common stock in exchange for shares of these major public companies. Toks's notices indicated that the holders of the public company shares would receive Toks shares after the securities are declared "'effective' for sale to the public." (Div. Ex. 4 at 1, Div. Ex. 5 at 1, Div. Ex. 6 at 1, Div. Ex. 7 at 1, Div. Ex. 8 at 1, Div. Ex. 9 at 1, Div. Ex. 10 at 1.) It appears that Mr. Ogunjobi believed that the pending registration statement covering twenty shares of Toks common stock for a total of a $100,000 also covered the offer and sale of the $2 trillion of Toks's Class A common stock that Toks intended to issue to accomplish the tender offers. (Tr. 33; Div. Exs. 4-10, 11 at 2.)

On October 12, 2001, Corporation Finance advised Mr. Ogunjobi, as chief executive officer of Toks, that Toks had to file a separate registration statement and a Schedule TO before Toks could begin the transactions that are part of the proposed tender offers. (Div. Ex. 11 at 2.) It noted that Toks's October 9, 2001, filings did not provide a reasonable basis to believe that Toks could consummate the proposed tender offers. Corporation Finance informed Mr. Ogunjobi that Toks would be in violation of Section 5 of the Securities Act and Section 14(d) of the Exchange Act if Toks proceeded without making the necessary filings, and it urged him to cease all activities relative to the tender offers. (Div. Ex. 11 at 2-3.) Corporation Finance also stated that it would not accelerate the effective date of the registration statement covering twenty shares of Toks's common stock due to the material deficiencies in the Form SB-2.[FN5] (Div. Ex. 11 at 1-2.)

Corporation Finance referred the matter to the Division of Enforcement ("Division") when it concluded that Toks and Mr. Ogunjobi were refusing to engage in a meaningful dialogue to remedy what it viewed as material deficiencies in the registration statement. (Tr. 26, 43.) On November 13, 2001, the Commission, acting pursuant to Section 8(d) of the Securities Act, ordered a public hearing for November 29, 2001, to determine whether the Division's allegations set out in a Statement of Matters to be Considered at a Public Hearing ("Statement of Matters") concerning Toks's registration statement were true. Section 5(c) of the Securities Act prohibits the offer to sell or offer to buy any security unless a registration has been filed as to such security, or while the registration

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.) Page 4

statement is the subject of a proceeding under Section 8 of the Securities Act. See McLucas, supra, at 528.

Mr. Ogunjobi informed the Division by voicemail message received on November 23, 2001, that he refused to participate in a prehearing conference held on November 26, 2001, or to participate in the proceeding "until my securities are declared effective." (Div. Ex. A.) Toks had notice of the prehearing conference and the public hearing, but did not appear at either.[FN6] (PH Tr. 5-6; Tr. 3.) I issued a Report Following Prehearing Conference on November 27, 2001, advising that failure to appear at the hearing would almost certainly result in a ruling adverse to Toks. At the hearing, the Division introduced fourteen exhibits and presented testimony from John Reynolds, Assistant Director, Small Business Operations, Corporation Fin- ance.

### Conclusions of Law

Section 8(d) of the Securities Act empowers the Commission, after notice and opportunity for hearing, to issue a stop order suspending the effectiveness of a registration statement where the registration statement contains any untrue statement of a material fact or omits to state any material fact required to be stated or necessary to make the information provided not misleading. Pursuant to Securities Act Rule 405, facts are material where there is a substantial likelihood that a reasonable investor would attach importance to such matters in determining whether to purchase the security. 17 C.F.R. § 230.405. Toks had notice and an opportunity for a hearing.

I have applied the preponderance of evidence standard in measuring the evidence in the record against the allegations in the Division's Statement of Matters. See Steadman v. SEC, 450 U.S. 91, 102 (1981); Advanced Chem. Corp., Sec. Act Release No. 6507, 1983-1984 Fed. Sec. L. Rep. (CCH) ¶ 83,499, at 86,635 (Feb. 9, 1984).

**Material misstatements and omissions - audited financial statements**
Form SB-2 at Item 22 specifies the disclosures that are required in the registration statement for a small business issuer. (Tr. 23-24.) Item 310 of Regulation S-B is one of the disclosures required. Item 310(a) calls for issuers to file an audited balance sheet as of the end of the most recent fiscal year, or as of a date within 135 days if the issuer existed for less than one fiscal year. 17 C.F.R. § 228.310(a) (emphasis added). It also requires audited statements of income, cash flows, and changes in stockholders' equity for the two preceding fiscal years or such shorter period as the registrant has been in business. Item 310(b) provides that interim financial statements can be unaudited but an independent public accountant must review them using professional standards and procedures as established by generally accepted auditing standards. 17 C.F.R. § 228.310(b). As to interim financial statements, Item 310(b)(2)(i) requires footnotes and other disclosures to ensure that the financial statements are not misleading. 17 C.F.R. § 228.310(b)(2)(i).

Toks's registration statement contains a half page summary of financial information for the years ended December 31, 1996, through December 31, 2000, and for nine months ended August 30, 2000, and August 30, 2001, derived from its unaudited financial statements. There are no figures in any of the categories. (Div. Ex. 3 at 8-9.) Toks claims to have no revenues, but it would appear to have some expenses since the registration statement refers to a limited operating history and Mr. Ogunjobi abandoned his college studies to raise capital to finance Toks. (Div. Ex. 3 at 10, 24, 31.)

The Commission's regulations for registration statements require the filing of audited financial statements. Accurate financial statements prepared in conformity with the Commission's regulations are indispensable for an informed evaluation of an offering of securities. Toks's registration statement does not contain audited financial statements. (Tr. 28, 31; Div. Exs. 2, 11.) Accordingly, Toks's registration statement omits to state material facts

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

required to be stated.

### Material misstatements - legal status of Toks[FN7]

The registration statement filed August 31, 2001, and amended September 7, 2001, describes Toks as "a Delaware corporation." (Tr. 28; Div. Ex. 3 at 5.) This representation is false. On March 1, 1998, the state of Delaware voided Toks's corporate charter, and on June 17, 1998, the state of Delaware repealed Toks's corporate charter for failure to pay taxes. (Tr. 39-40; Div. Ex. 13.)

The registration statement contains an untrue statement of a material fact and omits to state a required material fact because a reasonable investor would consider it significant that the issuer is not incorporated and that the state repealed the issuer's corporate charter because it failed to pay an annual state tax. (Div. Ex. 13.)

### Material misstatements and omissions - Plan of Operation

Item 17 of Form SB-2 requires the information described in Item 303 of Regulation S-B. Item 303(a) requires that Toks as a small business issuer that has not had any revenues from operations in the last fiscal year provide a Plan of Operation for the next twelve months. 17 C.F.R. § 228.303(a). The Plan of Operation should include how long the issuer can satisfy its cash requirements and whether the issuer will have to raise additional funds in the next twelve months, a discussion of any product research and development, any expected plant or equipment purchases, and any expected significant changes in employees. See id.

Toks had no revenues for the prior year so it was required to include a Plan of Operation in its registration statement. (Div. Ex. 3 at 8, 28.) Toks's registration statement omits to state a material fact because it does not have a Plan of Operation that contains a clear discussion and an analysis by management of any of the subjects specified in Item 303(a). (Tr. 28, 30-31; Div. Exs. 2, 3.) Furthermore, it omits material information in that it does not explain how Toks, an unincorporated company with no earnings, expects to raise $10 billion, or how Toks will have securities worth $2 trillion to accomplish the all-stock tender offers for several major corporations. (Tr. 28.) Sections of the registration statement such as the Prospectus Summary, Use of Proceeds, and Tender Offer(s) omit material information and are misleading about material matters because they state that Toks will undertake a series of financial transactions and do not explain how it expects to accomplish transactions, which on their face are practically impossible. (Div. Ex. 3 at 5-6, 20, 27-28.) See U.S. Molybdenum Corp., 10 S.E.C. 796, 806 (1941) ("The Securities Act entitles investors to know the facts and to form their own opinions on the basis of a full and complete disclosure of all material facts.")

The registration statement goes well beyond hyperbole with a series of assumptions that it presents as realistic future events. It assumes that Toks would raise the full amount in a $100,000 best efforts offering, which Mr. Ogunjobi will conduct without the assistance of an underwriter or broker-dealer.[FN8] (Tr. 30-31; Div. Ex. 3 at 4.) Then, without explanation, it concludes that the $100,000 IPO proceeds would enable Toks to arrange $10 billion in loan syndication or "issue high yield bonds or convertible bonds." (Tr. 30-31; Div. Ex. 3 at 5.) The registration statement then represents, without explanation, that Toks will register $2 trillion of Class A common shares to conduct all-stock tender offers and acquire the securities of several large public companies. (Tr. 30-31; Div. Ex. 3 at 5-6.)

### Material omissions - cost of registering shares for all-stock tender offers

The registration statement indicates that Toks will make tender offers for four major public companies, however, on October 9, 2001, Toks gave notice of tender offers to seven major public companies. (Tr. 31-34; Div. Exs. 3, 4-10.) The registration statement does not disclose that Toks would incur a significant cost to register the $2 tril-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)                Page 6

lion offering of Class A common shares that it expects to use in the tender offers for the major public companies.[FN9] (Tr. 18, 31; Div. Ex. 11 at 2.) Toks should have disclosed this material fact because it is necessary so that the information about the tender offers is not misleading.

### Material omissions - acquisition of offering

The registration statement does not disclose that Mr. Ogunjobi intends to purchase the entire twenty shares of Toks common stock covered by the registration statement. Toks revealed this information in the several notice filings it made on October 9, 2001, pursuant to Rule 425. (Tr. 42; Div. Exs. 4-10.) 17 C.F.R. § 230.425.

If Mr. Ogunjobi intends to buy the entire offering, the registration statement omits material information. (Tr. 38-39, 42.)

### Material misstatements and omissions - proposed tender offers

Rule 14e-8(c) pursuant to Section 14(e) of the Exchange Act makes it a fraudulent, deceptive, or manipulative act or practice for any person to publicly announce that the person plans to make a tender offer that has not yet commenced where a person does not have a reasonable belief that he will have the means to purchase securities to complete the offer.[FN10] 17 C.F.R. § 240.14e-8(c). The registration statement states that Toks intends to make tender offers to several major public corporations. (Div. Ex. 3 at 28.) Toks has no assets, no revenues, no employees, and no products, but is a "'dream' working its way through the highly competitive world of corporate finance." (Div. Ex. 3 at 5, 9, 24, 28-29.) Toks's registration statement violates Section 8(d) because the evidence is that Toks has no reasonable basis to believe that it has the means to complete the tender offers that it publicly announced in the registration statement. (Div. Ex. 2 at 2, Div. Ex. 11 at 2.)

In conclusion, Toks's registration statement violates Section 8(d) of the Securities Act because it contains many untrue statements of material fact and omits many material facts required to be stated or necessary to make the information provided not misleading. Accordingly, the Commission should suspend the registration statement because it does not "adequately reflect the information necessary for an intelligent understanding of the business in which the prospective purchaser of the securities registered is asked to invest his money." Mutual Industrial Bankers, Inc., 1 S.E.C. 268, 272 (1936).

### Record Certification

Pursuant to Rule 351(b) of the Commission's Rules of Practice, 17 C.F.R. § 201.351(b), I certify that the record includes the items described in the record index issued by the Commission's Secretary on December 10, 2001.

### Order

Based on the findings and conclusions set forth above, I ORDER, pursuant to Section 8(d) of the Securities Act of 1933, that the effectiveness of the registration statement filed by Toks Inc. on August 31, 2001, and amended September 7, 2001, is hereby suspended.

This order shall become effective in accordance with and subject to the provisions of Rule 360 of the Commission's Rules of Practice, 17 C.F.R. § 201.360. Pursuant to that rule, a petition for review of this initial decision may be filed within twenty-one days after service of the decision. It shall become the final decision of the Commission as to each party who has not filed a petition for review pursuant to Rule 360(d)(1) within twenty-one days after service of the initial decision upon such party, unless the Commission, pursuant to Rule 360(b)(1), de-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)                Page 7

termines on its own initiative to review this initial decision as to any party. If a party timely files a petition for review, or the Commission acts to review as to a party, the initial decision shall not become final as to that party.

Brenda P. Murray
Chief Administrative Law Judge

FN1. I will use the following abbreviations to refer to matters in the record: prehearing conference transcript "(PH Tr.___.)," hearing transcript "(Tr.___.)," and Division Exhibits ("Div. Ex. ___.)."

FN2. Corporation Finance's Small Business Office reviews the registration statements filed by small business issuers as defined in Securities Act Rule 405. 17 C.F.R. § 230.405. The small business issuer definition is applicable generally to a United States or Canadian issuer with revenues of less that $25 million. (Tr. 21.) Almost all start-up companies are small business issuers. (Tr. 21.) Since 1992, small business issuers have been permitted to use relaxed disclosure forms such as Form SB-2, Registration Statement Under the Securities Act of 1933. (Tr. 21-22.) See 17 C.F.R. § 239.10. The Commission performs a full review for compliance with the disclosure requirements on virtually all registrations for initial public offerings. (Tr. 20-21, 25.) See William R. McLucas, Stop Order Proceedings Under the Securities Act of 1933: A Current Assessment, 40 Bus. Law. 515, 521 & n.33 (1985).

FN3. Securities Act Rule 408 makes the registrant responsible for providing additional material information so that the registration statement is not misleading. (Tr. 23-24.) 17 C.F.R. § 230.408.

FN4. Mr. Ogunjobi did not file a notice of appearance for Toks as required by Rule 102 of the Commission's Rules of Practice, 17 C.F.R. § 201.102, but he communicated with the Commission on behalf of Toks.

FN5. Corporation Finance does not have delegated authority to deny a request for acceleration so the Commission acted on the request and denied it on or about October 18, 2001. (Tr. 37-38.)

FN6. Division counsel called Mr. Ogunjobi at the time scheduled for the prehearing conference but there was no answer. (PH Tr. 6.)

FN7. At the hearing, the Division appeared to challenge the representation in the registration statement that Mr. Ogunjobi was Toks's founder. (Tr. 28, 40-41.) The evidence is that Mr. Ogunjobi was not the person who incorporated Toks, but there is no evidence that he did not found the company. (Div. Ex. 13.)

FN8. A best efforts offering has been defined as follows:
> arrangement whereby investment bankers, acting as agents, agree to do their best to sell an issue to the public. Instead of buying the securities outright, these agents have an option to buy and an authority to sell the securities. Depending on the contract, the agents exercise their option and buy enough shares to cover their sales to clients, or they cancel the incompletely sold issue altogether and forgo the fee. Best efforts deals, which were common prior to 1900, entailed risks and delays from the issuer's standpoint.... For the most part, the best efforts deals we occasionally see today are handled by firms specializing in the more speculative securities of new and unseasoned companies.

Dictionary of Finance and Investment Terms 47 (4th ed. 1995).

FN9. The Division estimates that the cost to Toks to register the $2 trillion of securities would be approximately

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)                                    Page 8

$500 million. (Tr. 18.)

FN10. Section 14(e) of the Exchange Act makes it unlawful to make a false statement of a material fact or to omit to state a material fact necessary so that statements made in connection with a tender offer or request or invitation for tenders, or any solicitation of security holders, are not misleading.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Westlaw.

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL 337089 (S.E.C. Release No.)    Page 1

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL 337089 (S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)

Securities Act of 1933

IN THE MATTER OF TOKS INC.

Administrative Proceeding File No. 3-10635

February 15, 2002

NOTICE THAT INITIAL DECISION HAS BECOME FINAL

The time for filing a petition for review of the initial decision in this proceeding has expired. No such petition has been filed, and the Commission has not chosen to review the decision on its own initiative.

Accordingly, notice is hereby given, pursuant of Rule 360(e) of the Commission's Rules of Practice, that the initial decision of the administrative law judge[FNa1] has become the final decision of the Commission. The order contained in that decision suspending the effectiveness of a registration statement filed by Toks Inc. is hereby declared effective.

For the Commission by the Office of the General Counsel, pursuant to delegated authority.

Jonathan G. Katz
Secretary

FNa1. Toks Inc., Initial Decision Rel. No. 198 (Jan. 8, 2002), ___ SEC Docket ___.

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL 337089 (S.E.C. Release No.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.