# Exhibit A

## EXHIBIT A

## AMENDMENT AND TERMINATION OF THE
## BERNARD L. MADOFF INVESTMENT SECURITIES LLC
## EMPLOYEE BENEFIT PLAN
### (Amended and Restated Effective December 1, 2007)

This Declaration of Amendment and Termination is made this ____ day of May, 2009, by Bernard L. Madoff Investment Securities LLC ("BLMIS"):

**WITNESSETH THAT:**

WHEREAS, BLMIS has previously adopted the Bernard L. Madoff Investment Securities LLC Employee Benefit Plan (the "Plan") for the benefit of those employees who are eligible thereunder, which Plan was last amended and restated effective December 1, 2007;

WHEREAS, Irving H. Picard, as Trustee ("Trustee") for the liquidation of BLMIS has retained the power and authority to amend and terminate the Plan according to page 82 of the Plan Document and as authorized by order of the United States Bankruptcy Court entered on May ___, 2009;

NOW, THEREFORE, Trustee, on behalf of BLMIS hereby amends and terminates the Plan as follows, effective of as the dates indicated herein:

1. **Termination and Cessation of Benefits and Coverage.** Effective May 31, 2009, the Plan is terminated and all benefits and coverage provided to Covered Persons, including Qualified Beneficiaries covered under the COBRA continuation coverage provisions of the Plan or any other individual with an interest under the Plan, including one-time and continuing services, treatments, therapies, procedures, drugs, devices, equipment, supplies, or anything else rendered or provided after May 31, 2009, or claims incurred with respect to any of these shall cease and no additional benefits shall be rendered or provided for any medical, prescription drug, dental or vision claims incurred after May 31, 2009, of any kind, for any services, treatments, therapies, procedures, drugs, devices, equipment, supplies, or anything else provided after May 31, 2009 for which the

Plan would have made a payment if it had been incurred on or prior to May 31, 2009. However, any necessary actions required to wind up the Plan, including claim adjudication, shall proceed. Notwithstanding the termination of the Plan, however, the Plan's third-party recovery rights, including rights of subrogation, recovery, and refund shall survive termination of the Plan.

    **2.**    **Precertifications.** Effective as of May 30, 2009, the sections of the Plan entitled "Required Precertification," "Precertification," "Predetermination of Benefits," or any similar provisions, are hereby amended by the addition of the following new text to the end thereof, such new text to read as follows:

> "In the event the Plan is terminated, no payment shall be made for any precertified or predetermined services, treatments, therapies, procedures, drugs, devices, equipment, supplies, or anything else rendered or provided after May 31, 2009, regardless of whether such services, treatments, therapies, procedures, drugs, devices, or anything else are being rendered or provided on a one-time basis or on a continuing basis."

    **3.**    **Out-of-Pocket Maximums.** Effective as of May 30, 2009, the section of the Plan entitled "Out-of-Pocket Maximums," which presently states:

> "An out-of-pocket maximum is the maximum amount of covered expenses a Covered Person must pay during a calendar year before the Plan payment percentage increases.
>
> The individual out-of-pocket maximum applies separately to each Covered Person. When a Covered Person reaches his or her out-of-pocket maximum, the Plan will pay 100% of additional covered expenses for that individual during the remainder of that calendar year.
>
> The Family out-of-pocket maximum applies collectively to all Covered Persons in the same Family. When the Family out-of-pocket maximum is satisfied, the Plan will pay 100% of covered expenses for any Covered Person in the Family during the remainder of that calendar year.
>
> The Plan will pay the designated percentage of covered charges until the applicable out-of-pocket maximum is reached, at which time the Plan will pay 100% of the remainder of covered charges for the rest of the calendar year.
>
> The following expenses do not count toward the out-of-pocket maximum and are never paid at 100%:
>
> Deductible(s)
> Inpatient Medical Disorders
> Outpatient Medical Disorders

    Outpatient substance abuse treatment
    Inpatient substance abuse treatment
    Cost containment penalties
    Copayments
    Excess of Usual and Customary Charges
    Prescription drug copayments"

is hereby amended in its entirety to read as follows:

"An out-of-pocket maximum is the maximum amount of covered expenses a Covered Person must pay during a calendar year before the Plan payment percentage increases.

The individual out-of-pocket maximum applies separately to each Covered Person. When a Covered Person reaches his or her out-of-pocket maximum, the Plan will pay 100% of additional covered expenses for that individual during the remainder of that calendar year or until the Plan is terminated, whichever is earlier.

The Family out-of-pocket maximum applies collectively to all Covered Persons in the same Family. When the Family out-of-pocket maximum is satisfied, the Plan will pay 100% of covered expenses for any Covered Person in the Family during the remainder of that calendar year or until the Plan is terminated, whichever is earlier.

The Plan will pay the designated percentage of covered charges until the applicable out-of-pocket maximum is reached, at which time the Plan will pay 100% of the remainder of covered charges for the rest of the calendar year or until the Plan is terminated, whichever is earlier.

The following expenses do not count toward the out-of-pocket maximum and are never paid at 100%:

Deductible(s)
Inpatient Medical Disorders
Outpatient Medical Disorders
Outpatient substance abuse treatment
Inpatient substance abuse treatment
Cost containment penalties
Copayments
Excess of Usual and Customary Charges
Prescription drug copayments"

**4.     Termination of Disability, Personal, Family Medical, and Military Leaves of Absence.**

**(a)**     Effective as of May 30, 2009, the section of the Plan entitled "Continuation During Periods of Disability or Personal Leave of Absence," which presently states:

-3-

"A covered Employee may remain eligible if Active, full-time work ceases due to a Disability which is certified by a Physician or personal leave of absence. Continuance of coverage will end as follows:"

is hereby amended in its entirety to read as follows:

"A covered Employee and his or her covered Dependents may remain eligible if Active, full-time work ceases due to a Disability which is certified by a Physician or personal leave of absence. Continuance of coverage for such covered Employee and his or her covered dependents will end as follows:"

**(b)**   Effective as of May 30, 2009, the section of the Plan entitled "For Disability leave,"

which presently states:

"The end of the 3 months that follows the date on which the covered Employee last worked as an Active Employee. Disability leave is concurrent with the Family and Medical Leave (as defined by the Family Medical Leave Act of 1993 (FMLA))."

is hereby amended in its entirety to read as follows:

"The end of the 3 months that follows the date on which the covered Employee last worked as an Active Employee, or the date the Plan terminates, whichever occurs earlier. Disability leave is concurrent with the Family and Medical Leave (as defined by the Family Medical Leave Act of 1993 (FMLA))."

**(c)**   Effective as of May 30, 2009, the section of the Plan entitled "For personal leave of

absence," which presently states:

"The end of the 12 months that follows the date in which the covered Employee last worked as an Active Employee."

is hereby amended in its entirety to read as follows:

"The end of the 12 months that follows the date in which the covered Employee last worked as an Active Employee, or the date the Plan terminates, whichever occurs earlier."

**(d)**   Effective as of May 30, 2009, the section of the Plan entitled "Continuation During

Family and Medical Leave (FMLA)" is hereby amended by the addition of the following new text

to the end thereof, such new text to read as follows:

"Employees or Dependents covered under the Plan during family medical leave shall cease to be covered by the Plan on the date the Plan terminates."

-4-

**(e)** Effective as of May 30, 2009, the section of the Plan entitled "Employees on Military Leave" is hereby amended by the addition of the following new text to the end thereof, such new text to read as follows:

"Employees or Dependents covered under the Plan during military leave shall cease to be covered by the Plan on the date the Plan terminates."

5. **When Claims Must Be Submitted.** Effective as of May 30, 2009, the section entitled "When Claims Must Be Submitted," which presently states:

"Claims must be filed with the Claims Processor within 365 days of the date the service was incurred. Benefits are based on the Plan's provisions at the time the charges were incurred. Claims filed after 365 days of the date the service was incurred will be declined.

The Claims Processor will determine if sufficient information has been submitted for appropriate consideration of the claim. If not, additional information may be requested."

is hereby amended in its entirety to read as follows:

"Claims must be filed with the Claims Processor within 365 days of the date the service was incurred, or on or prior to August 31, 2009, whichever is earlier. Benefits are based on the Plan's provisions at the time the charges were incurred. Notwithstanding any other provision of this Plan, claims filed after 365 days of the date the service was incurred, or after August 31, 2009, whichever first occurs, will be denied.

The Claims Processor will determine if sufficient information has been submitted for appropriate consideration of the claim. If not, additional information will be requested."

6. **Claims Procedure.**

**(a)** Effective as of May 30, 2009, under the section entitled "Claims Procedure," the first paragraph is hereby deleted.

**(b)** Effective as of May 30, 2009, under the section entitled "Claims Procedure," which presently states:

"(ii) Within 15 days after the Plan receives the claim, of those special circumstances and of when the reviewer expects to make its decision. However, if such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension must specifically describe the required information, and the claimant will be afforded at least 45 days from receipt of the notice within which to provide the specified information."

is hereby amended in its entirety to read as follows:

    "(ii)    Within 15 days after the Plan receives the claim, of those special circumstances and of when the reviewer expects to make its decision. However, if such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension must specifically describe the required information, and the claimant will be afforded at least 30 days from receipt of the notice within which to provide the specified information."

    **(c)**    Effective as of May 30, 2009, under the section entitled "Claims Procedure," which presently states:

    "(iii)    In the case of a post-service health benefit claim, the reviewer will notify the claimant of the Plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim. If, due to special circumstances, the reviewer needs additional time to process a claim, the reviewer may extend the time for notifying the claimant of the Plan's benefit determination on a one-time basis for up to 15 days, provided that the reviewer notifies the claimant within 30 days after the Plan receives the claim of those special circumstances and of the date by which the reviewer expects to make a decision. However, if such a decision is necessary due to the failure of the claimant to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information, and the claimant will be afforded at least 45 days from receipt of the notice within which to provide the specified information."

is hereby amended in its entirety to read as follows:

    "(iii)    In the case of a post-service health benefit claim, the reviewer will notify the claimant of the Plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim. If, due to special circumstances, the reviewer needs additional time to process a claim, the reviewer may extend the time for notifying the claimant of the Plan's benefit determination on a one-time basis for up to 15 days, provided that the reviewer notifies the claimant within 30 days after the Plan receives the claim of those special circumstances and of the date by which the reviewer expects to make a decision. However, if such a decision is necessary due to the failure of the claimant to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information, and the claimant will be afforded at least 30 days from receipt of the notice within which to provide the specified information."

    **(d)**    Effective as of May 30, 2009, under the section entitled "Claims Procedure," which presently states:

    "(d)    Calculation of Time Periods. For purposes of these time periods relating to the Plan's initial benefit determination, the period of time during which an initial benefit

-6-

> determination is required to be made begins at the time a claim is filed in accordance with the Plan procedures without regard to whether all the information necessary to make a decision accompanies the request. If a period of time is extended due to a claimant's failure to submit all information necessary, the period for making the determination is "frozen" from the date the notification is sent to the claimant until the date the claimant responds to the request for additional information."

is hereby amended in its entirety to read as follows:

> "(d)   Calculation of Time Periods. For purposes of these time periods relating to the Plan's initial benefit determination, the period of time during which an initial benefit determination is required to be made begins at the time a claim is filed in accordance with the Plan procedures without regard to whether all the information necessary to make a decision accompanies the request. If a period of time is extended due to a claimant's failure to submit all information necessary, the period for making the determination is "frozen" from the date the notification is sent to the claimant until the date the claimant responds to the request for additional information or the time period to provide such information expires."

**7.   Reviews of Initially Denied Claims.**

**(a)**   Effective as of May 30, 2009, the section entitled "Reviews of Initially Denied Claims," which presently states:

> "(a)   Health Benefit Claims. A claimant for health benefits has one hundred eighty (180) days following receipt of a notification of an adverse initial benefit determination within which to request a review of the adverse initial benefit determination. In such cases, the review will meet the following requirements:"

is hereby amended to read as follows:

> "(a)   Health Benefit Claims. Notwithstanding any other provision of the Plan, a claimant for health benefits has ninety (90) days following receipt of a notification of an adverse initial benefit determination within which to request a review of the adverse initial benefit determination. In such cases, the review will meet the following requirements:"

**(b)**   Effective as of May 30, 2009, under the section entitled "Reviews of Initially Denied Claims," which presently states:

> "(iii)   Calculation of Time Periods. For purposes of the time periods specified in this Section, the period of time during which a benefit determination on review is required to be made begins at the time relating to the Plan's review of adverse initial benefit determination is filed in accordance with the Plan procedures without regard to whether all the information necessary to make a benefit determination or review

-7-

> accompanies the request for review. If a period of time is extended due to a claimant's failure to submit all the information necessary, the period for making the determination shall be "frozen" from the date the notification requesting the additional information is sent to the claimant until the date the claimant responds to the request for additional information."

is hereby amended in its entirety to read as follows:

> "(iii) Calculation of Time Periods. For purposes of the time periods specified in this Section, the period of time during which a benefit determination on review is required to be made begins at the time relating to the Plan's review of adverse initial benefit determination is filed in accordance with the Plan procedures without regard to whether all the information necessary to make a benefit determination or review accompanies the request for review. If a period of time is extended due to a claimant's failure to submit all the information necessary, the period for making the determination shall be "frozen" from the date the notification requesting the additional information is sent to the claimant until the date the claimant responds to the request for additional information or the time period to provide such information, if applicable, expires."

    **8.**    **Statute of Limitations for Plan Claims.** Effective as of May 30, 2009, the section entitled "Statute of Limitations for Plan Claims," which presently states:

> "Please note that no legal action may be commenced or maintained to recover benefits under the Plan more than 12 months after the final review/appeal decision the Plan Administrator has been rendered (or deemed rendered)."

is hereby amended in its entirety to read as follows:

> "No legal action may be commenced or maintained to recover benefits under the Plan more than 3 months after the final review/appeal decision the Plan Administrator has been rendered (or deemed rendered), however, any such actions are subject to extinguishment as a result of the judicial dissolution of BLMIS by order of the Bankruptcy Court."

    **9.**    **Inability to Locate Recipient.** Effective as of May 30, 2009, the section entitled "Inability to Locate Recipient," which presently states:

> "If the Plan Administrator is unable to make payment to any Covered Person or other person to whom a payment is due under the Plan because it cannot ascertain the identity or whereabouts of such Covered Person or other person after reasonable efforts have been made to identify or locate such person (including a notice of the payment so due mailed to the last known address of such Covered Person or other person as shown on the records of the Employer), such payment and all subsequent payments otherwise due to such Covered Person or other person shall be forfeited 18 months after the date such payment first became due."

-8-

is hereby amended in its entirety to read as follows:

> "If the Plan Administrator is unable to make payment to any Covered Person or other person to whom a payment is due under the Plan because it cannot ascertain the identity or whereabouts of such Covered Person or other person after reasonable efforts have been made to identify or locate such person (including a notice of the payment so due mailed to the last known address of such Covered Person or other person as shown on the records of the Employer), such payment and all subsequent payments otherwise due to such Covered Person or other person shall be forfeited three (3) months after the date such payment first became due."

**10**.    **Termination of COBRA Rights.**

**(a)**    Effective as of May 30, 2009, the first paragraph under the section titled "COBRA Continuation Options" shall be amended by the addition of the following text thereafter:

> "COBRA continuation coverage will not be provided under the Plan after May 31, 2009, the date the Plan terminates."

**(b)**    Effective as of May 30, 2009, in the section entitled "When may a Qualified Beneficiary's COBRA continuation coverage be terminated?," the word "may" is hereby replaced with "will"; also, item (iii) which presently states:

> "(iii)    The date upon which the Employer ceases to provide any group health plan (including successor plans) to any Employee."

is hereby amended in its entirety to read as follows:

> "(iii)    May 31, 2009, which is the date upon which the Employer will cease to provide any group health plan (including any successor plan) to any Employee."

**11**.    **Amending the Plan.**  Effective as of May 30, 2009, the section entitled "Amending, Modifying and Terminating the Plan," which presently states:

> "If the Plan is terminated, the rights of the Plan Participants are limited to covered expenses incurred before termination.  If the Plan is amended or modified, expenses incurred prior to the modification or amendment of the Plan will be considered as provided under the terms of the Plan prior to its amendment or modification.
>
> The Employer by action evidenced in writing reserves the right, at any time, without prior notice, to amend, suspend or terminate the Plan in whole or in part.  In the event of the dissolution, merger, consolidation or reorganization of the Plan Sponsor, the Plan automatically will terminate unless it is continued by a successor to the Plan Sponsor."

is hereby amended in its entirety to read as follows:

-9-

"If the Plan is terminated, the rights of the Plan Participants (including Qualified Beneficiaries covered under the COBRA continuation coverage provisions of the Plan) are limited to covered expenses incurred before such Plan termination. If the Plan is amended or modified, otherwise-covered expenses legitimately incurred by or on behalf of a Plan Participant (including Qualified Beneficiaries covered under the COBRA continuation coverage provisions of the Plan) prior to the modification or amendment of the Plan will be treated as covered expenses which cannot be retroactively rescinded, revoked, or eliminated, subject only to the timely presentment of such covered expenses provided under the terms of the Plan as so amended or modified.

The Plan Sponsor, by action taken in writing, reserves the right, at any time, without prior notice, to retroactively and/or prospectively amend, suspend or terminate the Plan, in whole or in part, including any amendments that may be adopted after the termination of the Plan, which are effective with respect to the Plan prior to the termination date of the Plan. In the event of the dissolution, merger, consolidation or reorganization of the Plan Sponsor, the Plan automatically will terminate unless it is continued by a successor to the Plan Sponsor."

12. **Disclosure of Protected Health Information.** Effective as of May 30, 2009, the section of the Plan entitled "Disclosure of Protected Health Information to Plan Sponsor" is hereby amended by the addition of the following new text to the end thereof, such new text to read as follows:

"The Plan and Plan Sponsor will take reasonable steps to ensure the protection of Protected Health Information while the Plan is in effect and after the Plan ceases to provide benefits and/or terminates."

13. **Meritain Health.** Effective as of May 30, 2009, all references in the Plan to "PERFORMAX" are hereby changed to "Meritain Health."

14. **Plan Identification Number.** Effective as of December 1, 2007, the "Plan Number," located in the section of the Plan entitled "General Plan Information," is hereby amended in its entirety to read as follows:

"502"

15. **Plan Year.** Effective as of May 30, 2009, the definition of "Plan Year," located in the section of the Plan entitled "General Plan Information," is hereby amended in its entirety to read as follows:

"The 12-month period for the Plan Sponsor preceding December 31, except that the final Plan Year shall be the period commencing January 1, 2009 and ending May 31, 2009."

IN WITNESS WHEREOF, Trustee on behalf of BLMIS, has caused this Amendment and Termination to be executed as of the date first written above.

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC.**

By _____
Irving H. Picard, as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC

300010817.11