# EXHIBIT A

## CROSS-BORDER PROTOCOL

STRICTLY PRIVILEGED AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

## CROSS-BORDER INSOLVENCY PROTOCOL
## FOR THE BERNARD MADOFF GROUP OF COMPANIES

This cross-border insolvency protocol (the **"Protocol"**) establishes a framework for cooperation between, and coordination of, the liquidation proceedings of Bernard L. Madoff Investments Securities LLC (**"BLMIS"**) and Madoff Securities International Limited (**"MSIL"**) (collectively, the **"Debtors"**).

### Background

**A. The Proceedings**

On 15 December 2008, Irving H. Picard was appointed as trustee for the liquidation of the business of BLMIS (the **"Trustee"**) following an application to the United States District Court for the Southern District of New York by the Securities Investor Protection Corporation (**"SIPC"**).

On 19 December 2008, Mark Richard Byers, Andrew Lawrence Hosking and Stephen John Akers were appointed joint provisional liquidators of MSIL (the **"JPLs"**), following the presentation of a winding up petition by the directors of MSIL.

In their respective proceedings, the JPLs and the Trustee have been appointed, *inter alia*, to manage and/or liquidate the relevant Debtor's affairs, to collect and realise its assets, and as the representative of its estate (collectively the **"Representatives"**).

The provisional liquidation of MSIL before the High Court of Justice, Chancery Division in England (the **"English Court"**) and the BLMIS liquidation proceeding in the United States Bankruptcy Court for the Southern District of New York (collectively the **"Tribunals"** and the **"Proceedings"**) may in due course be supplemented by proceedings in other jurisdictions.

The Trustee has already, on 27 February 2009, been recognised by the English Court as the *"foreign representative"* of BLMIS pursuant to the Cross-Border Insolvency Regulations 2006.

SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

The JPLs were granted full administration and realisation of all of the assets of MSIL in the United States as provided in 11 U.S.C. § 1509 upon the recognition of the Provisional Liquidation as a foreign main proceeding by the United States Bankruptcy Court for the Southern District of Florida on 14 April 2009 which proceeding was transferred to the United States Bankruptcy Court for the Southern District of New York pursuant to Bankruptcy Rule 1014.

## B. The Debtors

BLMIS was a securities broker-dealer and investment adviser established in New York, with its office at 885 Third Avenue.  It is registered with the US Securities and Exchange Commission and is a member of both the Financial Industry Regulatory Authority and SIPC. The sole member of BLMIS is Bernard L. Madoff.

MSIL is a company incorporated in England and Wales.  It was authorised and regulated by the FSA.   Mr Madoff is the principal shareholder in MSIL.

On 11 December 2008, Mr Madoff reportedly confessed to an agent of the US Federal Bureau of Investigation that BLMIS' investment advisory business in fact amounted, in his own words, to *"a giant Ponzi scheme"*.

This is a fraud of potentially unprecedented scale and breadth.  Mr Madoff has himself estimated the losses from this fraud to be in the region of US$50 billion.

## C. The Need for a Protocol

The nature of the business and the fraud conducted by Mr Madoff is such that each of the Debtors is likely to have assets and/or liabilities in both England and the United States (as well as many other jurisdictions).  Furthermore, whilst the precise nature of the relationships between BLMIS and MSIL requires further investigation, the affairs of the two companies are closely intertwined.   As a result, evidence relating to the assets and liabilities of each Debtor is held by the other Debtor.

Both the Trustee and the JPLs therefore consider the proper administration of each of the Proceedings to be dependent upon cooperation between the Representatives, and that it is

in their common interest to share information with each other expeditiously relating to the affairs of the two companies.

The need to share information has been recognised by the English Court.  The Order appointing the JPLs on 19 December 2009 expressly provides that the JPLs shall cooperate as shall be appropriate with the Trustee.  On 27 February 2009, a further Order was made by the English Court which provides that the JPLs be at liberty, subject to their being satisfied that the provision of the information is in the interests of the provisional liquidation of MSIL, to disclose to the Trustee broad categories of information. The English Court held that the provision of such information is necessary, *inter alia*, for the proper conduct of the provisional liquidation of MSIL and in connection with the liquidation of BLMIS.

As part of the information sharing process, the Representatives have entered into an Information Sharing Protocol, of even date which sets out specific guidance with respect to the sharing and transfer of information by and between the Representatives and their respective agents.

In addition to information sharing between the Representatives, effective and consistent management of the Proceedings may also require cooperation and communication between the Tribunals.

This Protocol is therefore designed to set a framework for the coordination of the Proceedings, and to enable the Tribunals and Representatives to operate efficiently, expeditiously and effectively in the interest of all of the Debtors' creditors and other stakeholders, including the victims of the underlying fraud.

**Terms**

1.    **Purpose and Aims**

1.1    The Representatives shall, to the extent appropriate having regard to their respective duties under applicable law, coordinate with each other and cooperate in all aspects of the Proceedings in order to meet the aims of this Protocol.

1.2    The aims of this Protocol are:

STRICTLY PRIVILEGED AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

1.2.1   Coordination - To promote international cooperation and the coordination of activities in the Proceedings.

1.2.2   Efficiency - To provide for the orderly, effective, expeditious and efficient administration of the Proceedings in order to reduce their cost and to maximize recovery for creditors.

1.2.3   Communication - To promote communication among Representatives; and to provide, to the extent desirable, for direct communication between the Tribunals.

1.2.4   Information and Data Sharing - To provide for the expeditious sharing of information and data between the Representatives in order to promote effective, efficient and fair administrations and to avoid duplication of effort and activities by the parties.

1.2.5   Assets - To promote coordination and cooperation between the Representatives in relation to the identification, preservation and realisation of assets and their fair distribution among all classes of creditors.

1.2.6   Comity - To maintain the independent jurisdiction, sovereignty, and authority of all Tribunals.

2.   **Notice**

2.1   Notice of any meetings, applications and any relevant court hearings or statutory deadlines, and any other matters in which the relevant Representative has an interest, shall be provided by each Representative to the other Representative by email as far in advance as possible.

3.   **Right of Representatives to Appear**

3.1   The Representatives where possible shall have the right to appear in all of the Proceedings, whether before a Tribunal or in statutory meetings convened pursuant to applicable law, provided however that appearing before a Tribunal shall not in itself subject a Representative to jurisdiction for any purpose other than any relief that Representative may be seeking from the relevant Tribunal.

**STRICTLY PRIVILEGED AND CONFIDENTIAL**
**SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT**

3.2    If a Representative cannot be present before a Tribunal, he shall be entitled, to the extent permitted by applicable law, to communicate in writing any observations to that Tribunal in advance of any order being made.

## 4.    Communication and Information Sharing

4.1    To the extent appropriate having regard to their respective duties under applicable law, each Representative shall:

4.1.1    keep the other Representative apprised of its activities and of all relevant information and material developments in matters involving the Debtors and the Proceedings; and

4.1.2    share with the other Representative non-public information available to it regarding the Debtors, their pre-appointment activities and transactions, and their assets and liabilities.

4.2    The Representatives agree that each shall not (and shall direct that its respective agents and representatives shall not) provide any non-public information received from the other to any third party, unless the provision of such information is (i) agreed to by the other Representative; (ii) required by applicable law; or (iii) required by order of any Tribunal.

4.3    All communications between the Representatives (and their respective professionals, employees, agents, and representatives) are subject to, and do not waive, any applicable attorney-client, work-product, legal, professional, common interest or other privilege recognised under any applicable law.    In that connection, the Representatives shall be entering into an agreement concerning confidential and/or privileged information of common interest.

## 5.    Communication Between Tribunals

5.1    It is intended that the Guidelines Applicable to Court-to-Court Communication in Cross-Border Cases (the **"Guidelines"**) attached as Schedule "A" hereto, shall be formally adopted by each Tribunal, whether in whole or in part and with or without modifications.    Where there is any discrepancy between the Protocol and any guidelines which may eventually be adopted by the Tribunals, those guidelines shall prevail.

STRICTLY PRIVILEGED AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

6. **Assets**

6.1 To the extent appropriate having regard to their respective duties under applicable law, and to the extent that a Representative learns or believes that the other Representative may have a material interest in a particular asset, the Representatives shall coordinate and cooperate expeditiously with each other regarding the identification, preservation and realisation of that asset.

6.2 The Representatives shall endeavour to reach agreement expeditiously, on a case by case basis, as to which Representative is best placed to deal with any particular asset.

6.3 The Representatives shall provide assistance in respect of recovery of the identified assets, which may include enabling and/or confirmatory acts and instruments such as comfort letter, assignments and powers of attorney in favour of the Representative who is pursuing recovery of such assets.

7. **Intercompany Claims**

7.1 The Representatives shall cooperate and negotiate in good faith regarding any potential claims by either Debtor against the other Debtor. At the appropriate stage, the Representatives shall consider whether it is sensible to implement, subject to the approval of the Tribunals, a mechanism for the resolution of intercompany claims.

8. **Law Enforcement Agencies**

8.1 The Representatives recognise that there is a substantial public interest in the investigation of fraud and the effective prosecution of those responsible.

8.2 To the extent appropriate having regarding to their respective duties under applicable law, the Representatives:

8.2.1 shall endeavour to coordinate with each other regarding the cooperation provided to law enforcement or other agencies (including, without limitation, the Department of Justice, the Securities and Exchange Commission, and SIPC in the United States, and the Serious Fraud Office, the Metropolitan Police Fraud Squad, the City of London Police and the Financial Services Authority in England); and

STRICTLY PRIVATE AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

8.2.2    take steps to ensure that evidence provided to law enforcement agencies is
in a manner and form which assists those agencies and, in the case of
agencies in the United States, does not include testimony obtained under
powers of compulsion save where appropriate safeguards (which shall be
mutually agreed) are put in place regarding such evidence.

9.    **Costs**

9.1    Subject to any further agreement between the Representatives, each
Representative's costs of performing its obligations under this Protocol (including the
costs of its agents and representatives) shall be borne in the same manner as its
other costs incurred in the relevant Proceeding.

10.    **Comity**

10.1    The Representatives agree that each Tribunal is an independent, sovereign Tribunal,
entitled to preserve its independent jurisdiction and authority with respect to matters
before it.

10.2    Nothing in this Protocol is intended to interfere with the rules or ethical principles by
which a Representative (including, in each case, a Representative's legal advisor) is
bound, according to applicable national law and professional rules.

11.    **Amendment**

11.1    The Protocol may be supplemented from time to time by the Representatives as
circumstances require, for example detailing specific procedures for the exchange of
information and data.  Such supplements shall not require the approval of either
Tribunal.

11.2    Subject to the agreement of the Representatives, and the entry of an order by each
of the Tribunals, additional parties may be added to this Protocol.

12.    **Execution and Application**

12.1    This Protocol shall be binding on, and inure to the benefit of, the Representatives'
respective successors and assigns, including any liquidator subsequently appointed
over MSIL.

STRICTLY PRIVATE AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

12.2    This Protocol shall not create any right for any person or entity that is not a party hereto.

12.3    Each Representative represents and warrants to the other that its execution, delivery, and performance of this Protocol is within its power and authority, except to the extent that Tribunal approval is required.

12.4    This Protocol may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.

12.5    This Protocol shall be deemed effective upon its approval by both Tribunals.


**IN WITNESS WHEREOF** the Representatives have caused this Protocol to be executed either individually or by their respective attorneys or representatives hereunto authorised.


Dated:        21st May 2009

Signed by    ..............................................
             Joint provisional liquidator of Madoff
             Securities International Limited.

Dated:        May 21, 2009

Signed by    ..............................................
             Irving Picard
             Trustee for the Liquidation of
             Bernard L Madoff Investment Securities LLC

STRICTLY PRIVILEGED AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE – ATTORNEY WORK PRODUCT

## SCHEDULE A

### The Guidelines Applicable to Court-to -Court Communication in Cross-Border Cases

(attached)

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

## Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001





The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario  M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE

All rights reserved
Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* were developed by The American Law Institute during and as part of its Transnational Insolvency Project and the use of the *Guidelines* in cross-border cases is specifically permitted and encouraged.

The text of the *Guidelines* is available in English and several other languages including Chinese, French, German, Italian, Japanese, Korean, Portuguese, Russian, Swedish, and Spanish on the website of the International Insolvency Institute at http://www.iiiglobal.org/international/guidelines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

ii

# Foreword by the Director of The American Law Institute

In May of 2000 The American Law Institute gave its final approval to the work of the ALI's Transnational Insolvency Project. This consisted of the four volumes eventually published, after a period of delay required by the need to take into account a newly enacted Mexican Bankruptcy Code, in 2003 under the title of *Transnational Insolvency: Cooperation Among the NAFTA Countries*. These volumes included both the first phase of the project, separate Statements of the bankruptcy laws of Canada, Mexico, and the United States, and the project's culminating phase, a volume comprising *Principles of Cooperation Among the NAFTA Countries*. All reflected the joint input of teams of Reporters and Advisers from each of the three NAFTA countries and a fully transnational perspective. Published by Juris Publishing, Inc., they can be ordered on the ALI website (www.ali.org).

A byproduct of our work on the Principles volume, these *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* appeared originally as Appendix B of that volume and were approved by the ALI in 2000 along with the rest of the volume. But the *Guidelines* have played a vital and influential role apart from the *Principles*, having been widely translated and distributed, cited and applied by courts, and independently approved by both the International Insolvency Institute and the Insolvency Institute of Canada. Although they were initially developed in the context of a project arrived at improving cooperation among bankruptcy courts within the NAFTA countries, their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests a pertinence and applicability that extends far beyond the ambit of NAFTA. Indeed, there appears to be no reason to restrict the *Guidelines* to insolvency cases; they should prove useful whenever sensible and coherent standards for cooperation among courts involved in overlapping litigation are called for. See, e.g., American Law Institute, International Jurisdiction and Judgments Project § 12(e) (Tentative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to the International Insolvency Institute for its continuing efforts to publicize the *Guidelines* and to make them more widely known to judges and lawyers around the world; to III Chair E. Bruce Leonard of Toronto, who as Canadian Co-Reporter for the Transnational Insolvency Project was the principal drafter of the Guidelines in English and has been primarily responsible for arranging and overseeing their translation into the various other languages in which they now appear; and to the translators themselves, whose work will make the *Guidelines* much more universally accessible. We hope that this greater availability, in these new English and bilingual editions, will help to foster better communication, and thus better understanding, among the diverse courts and legal systems throughout our increasingly globalized world.

LANCE LIEBMAN
*Director*
*The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*. The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

vi

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

> E. BRUCE LEONARD
> *Chairman*
> *The International Insolvency Institute*

Toronto, Ontario
March 2004

vii

### Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country.  The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997.  The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada.  The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world.  We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts.  The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts.  The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation.  The *Guidelines*, however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country.  Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

| | |
|---|---|
| Mr. Justice David Baragwanath<br>High Court of New Zealand<br>Auckland, New Zealand | Chief Justice Donald I. Brenner<br>Supreme Court of British Columbia<br>Vancouver |
| Hon. Sidney B. Brooks<br>United States Bankruptcy Court<br>District of Colorado<br>Denver | Hon. Charles G. Case, II<br>United States Bankruptcy Court<br>District of Arizona<br>Phoenix |

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
## Applicable to Court-to-Court Communications in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

### Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a) Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c)  Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a)  Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)  The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c)  Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part
of the record in the proceedings and made available to
the other Court and to counsel for all parties in both
Courts subject to such Directions as to confidentiality
as the Court may consider appropriate; and

(d)  The time and place for the communication should be
to the satisfaction of the Court. Personnel of the Court
other than Judges may communicate fully with the
authorized Representative of the foreign Court or the
foreign Insolvency Administrator to establish appro-
priate arrangements for the communication without
the necessity for participation by counsel unless other-
wise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In
connection with any such joint hearing, the following should apply,
unless otherwise ordered or unless otherwise provided in any pre-
viously approved Protocol applicable to such joint hearing:

(a)  Each Court should be able to simultaneously hear
the proceedings in the other Court.

(b)  Evidentiary or written materials filed or to be filed in
one Court should, in accordance with the Directions
of that Court, be transmitted to the other Court or
made available electronically in a publicly accessible
system in advance of the hearing. Transmittal of such
material to the other Court or its public availability
in an electronic system should not subject the party
filing the material in one Court to the jurisdiction of
the other Court.

7

(c)   Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)   Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)   Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11