Hearing Date and Time: June 9, 2009 at 10:00 am<br>
Objection Deadline: June 4, 2009

MILBERG LLP
Matthew Gluck
Jonathan M. Landers
Brad M. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Floor
New York, New York 10119
Phone: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Christopher A. Seeger
Stephen A. Weiss
One William Street
New York, New York
Phone: (212) 584-0700
Fax: (212) 584-0799

*Counsel for the Unofficial Committee of Certain Claim Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff, | SIPA Liquidation |
| vs. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |

**UNOFFICIAL COMMITTEE'S RESPONSE TO (1) EXPEDITED PETITION FOR RECOGNITION OF A FOREIGN PROCEEDING AND FOR COMMENCEMENT OF A CHAPTER 15 ANCILLARY CASE IN AID OF A FOREIGN MAIN PROCEEDING [DKT. NO. 201] AND (2) MOTION FOR ENTRY OF ORDER APPROVING PROTOCOLS [DKT. NO. 232]**

The Unofficial Committee of Certain Claim Holders ("Unofficial Committee"), by its counsel, Milberg LLP and Seeger Weiss LLP, hereby submits this response to: (1) the Amended Notice of Hearing [Dkt. No. 201] regarding the Joint Provisional Liquidators' Expedited Petition for Recognition of Foreign Proceeding and for Commencement of Chapter 15 Ancillary Case in Aid of Foreign Main Proceeding ("Expedited Motion") filed in *In re Madoff Securities International Limited*, No. 09-16751 (Bankr. S.D. Fla. filed Apr. 14, 2009), an action which has since been transferred to this Court; and (2) the Motion for Entry of Order Pursuant to Section 1526,1527, and 105(a) of the Bankruptcy Code Approving Protocols By and Between the [BMIS] Trustee and the Joint Provisional Liquidators of Madoff Securities International Limited. [Dkt. No. 232].

**I.    INTRODUCTION**

1.    To the best of the Unofficial Committee's knowledge, Madoff Securities International Limited's ("MSIL") largest creditor is the bankruptcy estate of Bernard L. Madoff Investment Securities, LLC ("BMIS"). Bernard L. Madoff ("Madoff") is MSIL's majority shareholder, with the remaining shares owned by his family and associates. Expedited Motion ¶ 3. As such, the main beneficiaries of any MSIL assets administered by the Joint Provisional Liquidators ("JPLs") are likely to be Madoff's victims, many of whom have lost their life savings. For that reason, the Unofficial Committee has an interest in ensuring that MSIL is liquidated efficiently and cost-effectively. The JPLs' actions to date -- retaining two law firms to file an action in Florida to recover a vehicle without prior notice to this Court or the parties herein -- do not demonstrate a sensitivity to efficiency and cost reduction. Without adequate

2

safeguards, such actions will lead to inter-estate conflicts, duplicative efforts, and unnecessary expense.

2.    Serious questions exist regarding whether the JPLs have demonstrated that the liquidation proceeding pending in England as to MSIL ("Foreign Proceeding") should be recognized by this Court as a "foreign main proceeding" pursuant to Chapter 15.  The JPLs provide only limited support for their argument that MSIL's "center of main interests" is in England.  In fact, the JPLs' own moving papers demonstrate that aside from its physical location in England, which should be given little weight given that MSIL operated as part of a fraudulent scheme, MSIL's remaining contacts are with New York.  Similarly troubling is the JPLs' request for broad discovery and powers of administration likely to overlap with the efforts of the Trustee in the above captioned-action ("BMIS Trustee").

3.    Nonetheless, the Unofficial Committee would not oppose the JPLs' request for recognition of the Foreign Proceeding, provided that adequate provision is made to ensure that the BMIS Trustee in the above-captioned action (and when appropriate the Chapter 7 Trustee) has primary authority to marshal those MSIL assets located in the United States, as the BMIS Trustee is in the best position to cost-effectively administer these assets, which ultimately belong to the BMIS estate.  Should the Court choose to recognize the Foreign Proceeding, the Unofficial Committee requests that the Court direct the JPLs to enter into revised protocols to this effect.

## II.    BACKGROUND

4.    The JPLs retained two law firms and initiated a Chapter 15 case in the Bankruptcy Court for the Southern District of Florida,[1] apparently to recover a single vehicle that Bernard L.

---

[1] The JPLs initially filed the Chapter 15 case in Florida, ostensibly because the vehicle in question and Peter Madoff were purportedly located within that District. Expedited Motion at ¶ 18. Later, the JPLs admitted that Peter Madoff actually resided in New York and that there

3

Madoff purchased for his brother, Peter Madoff, with funds wired from MSIL. Expedited Motion at ¶¶ 16-17. In addition, the JPLs requested that the Court grant them the following broad discovery and powers of administration:

. . . . . . . . . . . . . . . . . . . . . . .

    c.    providing for the Liquidators' administration and realization of all of MSIL's assets within the territorial jurisdiction of the United States as provided in 11 U.S.C. § 1509(b)(1);

    d.    recognizing and confirming the Liquidators' capacity to commence legal actions within the territorial jurisdiction of the United States as provided in 11 U.S.C. § 1509(b)(1);

    e.    permitting the Liquidators to conduct discovery as provided in 11 U.S.C. § 1521(a)(4) and/or other applicable provisions of law;

    f.    permitting the Liquidators to examine Peter Madoff pursuant to Bankruptcy Rule 2004 and to require him to produce all [relevant] documents.

Expedited Motion ¶ 26.

    5.    Although the JPLs acknowledged the pendency of the above-captioned action in their Expedited Motion, Expedited Motion at ¶ 8, they failed to provide this Court or the parties to the above-captioned action notice of the Expedited Motion until the Chapter 15 case was transferred to this Court, arguing instead that such notice was not required under English law. Expedited Motion ¶ 23.

    6.    As the Court is aware, Judge Hyman granted the JPLs' Expedited Motion on the same day it was filed. *See* Order, *In re Madoff Securities International Limited*, No. 09-16751

---

might be benefits to this Court supervising the Chapter 15 case, given the pendency of other related actions here. *See* JPLs' Response to Rule 1014(b) Transfer Motion at 2-3 [Dkt. No. 191]. The JPLs' selection of the Florida venue was curious, given the Bankruptcy Code's nationwide jurisdiction. *See* Fed. R. Bankr. P 7004(d). The JPLs have yet to explain why they did not file their Chapter 15 action in this District.

4

(Bankr. S.D. Fla. filed Apr. 14, 2009) [Dkt. No. 13].  The order did not set forth any findings as to why notice of the Expedited Motion was not provided to this Court or the parties herein or why the Expedited Motion was heard on an expedited basis.  *See id*.  As the Unofficial Committee was not provided notice of the Expedited Motion, the Unofficial Committee was not able to respond to the Expedited Motion before it was granted.

7.     On April 21, 2009, the Unofficial Committee moved to transfer the JPLs' Chapter 15 case from the bankruptcy court in Florida to this Court, pursuant to Fed. R. Bankr. P. 1014(b).  *See* Motion for Rule 1014(b) Transfer of Related Proceeding [Dkt. No. 166].  The Court granted this motion on May 6, 2009.  *See* Order [Dkt. No. 199].

8.     On May 29, 2009, the BMIS Trustee submitted to the Court for approval proposed cross-border insolvency protocols ("Proposed Protocols") and information sharing protocols to allow for coordination between the BMIS Trustee and the JPLs.  *See* Motion for Entry of Order Pursuant to Section 1526, 1527, and 105(a) of the Bankruptcy Code Approving Protocols By and Between the Trustee and the Joint Provisional Liquidators of Madoff Securities International Limited [Dkt. No. 232].

### III.  ARGUMENT

9.     Even where a motion for recognition of a foreign proceeding is not opposed, the "[c]ourt must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) (Lifland, J.); *see also In re Basis Yield Alpha Fund*, 381 B.R. 37, 50 (Bankr. S.D.N.Y. 2008) ("[T]he Court has the power to satisfy itself that the requirements for recognition

5

under Section 1517 have been satisfied, and has a right like any other federal court to inquire under Fed. R. Evid. 614.").

10. Bankruptcy Code Section 1517(b)(1) provides that the court shall recognize a "foreign main proceeding" if the moving party demonstrates (1) the pendency of a foreign proceeding; (2) in the country where the debtor has the *center of its main interests*. 11. U.S.C. § 1517(b)(1) (emphasis added); *see also* 11. U.S.C. § 1502(4). If the moving party fails to make this showing, the Court may recognize the foreign proceeding as a "foreign nonmain proceeding," provided the foreign proceeding is pending where the debtor has an "establishment."[2] 11. U.S.C. §§ 1502(5); 1517(b)(2).

11. In determining where a debtor has its "center of main interests," courts examine such factors as "the location of the debtor's headquarters; the location of those who actually manage the debtor . . . ; the location of the debtor's primary assets; the location of the majority of the debtor's creditors . . . ; and/or the jurisdiction whose law would apply to most disputes." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 128 (Lifland, J.) An examination of these factors suggests that the JPLs have failed to establish that MSIL's center of main interests is in England.

---

[2] When a court grants recognition of a "foreign main proceeding," such recognition indicates "that [the foreign] proceeding should ordinarily dominate the cross-border aspects of the debtor's affairs." Collier on Bankruptcy § 1520.01 (15th ed.); *see* 11 U.S.C. § 1520. Accordingly, in a "foreign main proceeding," the foreign representative is granted broad powers of administration with regard to debtor property located in the United States. *See* 11 U.S.C. § 1520. In contrast, where a court grants recognition of a "foreign nonmain proceeding," the relief available with regard to the property of the foreign debtor is largely "discretionary," and is designed to "protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a); *see also* Collier on Bankruptcy § 1520.01 (15th ed.). In addition, in a "foreign nonmain proceeding," the foreign representative must demonstrate that the relief requested "relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c).

6

12. The JPLs describe that MSIL was formed under English law and employed 28 employees in England. *Id*. However, when a foreign entity is operating as part of a fraudulent scheme, courts do not consider its physical location when determining its center of main interests. *See In re Ernst & Young, Inc.*, 383 B.R. 773, 780 (Bankr. D. Colo. 2008) ("[T]he location of the debtor, is not critical in this case because there was no real business being operated . . . . Rather, the [entity was] part of a fraudulent scheme.").

13. Moreover, the JPLs' own moving papers indicate that Madoff, who is located in New York, controlled MSIL. Madoff is MSIL's majority shareholder, Expedited Motion ¶ 3, and the JPLs acknowledge that "MSIL traded for the personal accounts of Bernard L. Madoff . . . and members of his family. In addition, the assets and bank accounts of MSIL were used by Mr. Madoff for a variety of purposes, including the purchase of valuable personal assets such as luxury yachts, automobiles, and furnishings for himself and family." *Id*. at ¶ 2.

14. Madoff described in his plea allocution that he controlled money going in and out of MSIL. Madoff Plea Allocation, *USA v. Madoff*, No. 09-213 (S.D.N.Y. filed Mar. 12, 2009) [Dkt. No. 50] ("I wired money between the United States and the United Kingdom to make it appear as though there were actual securities transactions executed on behalf of my investment advisory clients. Specifically, I had money transferred from the U.S. bank account of my investment advisory business to the London bank account of Madoff Securities International Ltd., a United Kingdom corporation that was an affiliate of my business in New York."). This money was provided to Madoff by customers of BMIS, most of whom reside in the United States.

15. To the best of Movant's knowledge, MSIL's main creditor is the BMIS bankruptcy estate. *See* Motion for Approval of Protocols at ¶ 10 [Dkt. No. 232] ("BMIS appears

7

to be the largest creditor of MSIL.").[3] Madoff is MSIL's majority shareholder. Expedited Motion ¶ 3. Both BMIS and Madoff are located in New York, not England.

16. Putting aside whether the JPLs have demonstrated that the Foreign Proceeding should be recognized, the broad discovery and powers of administration sought by the JPLs, Expedited Motion ¶ 26, raise concerns of inter-estate conflicts, duplicative efforts, unnecessary expense, and additional delay.

17. Although the JPLs have entered into Proposed Protocols with the BMIS Trustee, these Proposed Protocols do not designate the BMIS Trustee (or when appropriate the Chapter 7 Trustee) as having primary authority to conduct asset-marshaling activities and discovery with regard to MSIL assets located within the United States. Although the Proposed Protocols seem designed to promote coordination between the JPLs and the BMIS Trustee, they do not address the fact that the BMIS Trustee, who is paid by SIPC, can most cost-effectively marshal MSIL's assets located within the United States, unlike the JPLs, who would be paid out of MSIL assets

---

[3] Although 11 U.S.C. Section 1502(4) focuses on the center of main interests of the *debtor*, commentators have noted that this approach is unsatisfactory when the debtor is a member of a "corporate group" comprised of other entities also being liquidated:

> This approach is unsatisfactory because a corporate group that is an integrated economic unit can only be reorganized or liquidated efficiently if the reorganization is done collectively for the entire group. If the legal regime for the insolvency cases of corporate groups were to permit the filing of insolvency proceedings in the same venue for all of the group members, it would be much easier to work out a common solution to the financial problems of the group. If the proceedings are all filed in one court, there will be one judge to administer the cases and one set of lawyers and other professionals.

Hon. Samuel L. Bufford, "Center of Main Interests, International Insolvency Case Venue, and Equality of Arms," 27 NW. J. Int'l Law. & Bus. 351, 407-408 (2007). This case is particularly appropriate for liquidating all members of the "corporate group" in the same Court, because the assets of Madoff, BMIS, and MSIL were intermingled and used as part of the same fraudulent scheme.

8

which ultimately belong to the BMIS estate.  In addition, the Proposed Protocols do not provide creditors or the Court transparency regarding the fees and expenses being incurred by the JPLs.

18. Accordingly, should the Court grant the Expedited Motion, the Unofficial Committee respectfully request that the Court impose safeguards, described below, to ensure that (1) the BMIS Trustee retains control of asset administration and discovery as to MSIL assets located within the United States; and (2) the Court and the parties herein have an understanding the costs being incurred by the JPLs.

## CONCLUSION

As demonstrated herein, the JPLs have failed to demonstrate that MSIL's "center of main interests" is in England.  As such, the Unofficial Committee remains concerned that recognition of the Foreign Proceeding as a "foreign main proceeding" may be improper and give rise to duplicative efforts and unnecessary expense.  However, should the Court choose to recognize the Foreign Proceeding, these concerns may be addressed by directing the JPLs to modify the Proposed Protocols to recognize that the BMIS Trustee will lead efforts to recover MSIL assets located within the United States.

Accordingly, any order recognizing the Foreign Proceeding should direct the JPLs to:

1) Limit their requests for discovery and asset marshaling activities to specialized matters not overlapping with the administrations of the BMIS and Madoff estates;

2) Defer to the BMIS Trustee with regard to discovery and asset marshaling activities, subject to the right to present any disagreements in this regard to the Court;

3) To the extent discovery and asset marshaling activities are paid for by assets of MSIL, disclose the terms of the compensation of the JPLs, as well as payment of their expenses;

9

4) Promptly upon recognition of the Foreign Proceeding, report to the Court on the amount of expenses and legal fees incurred to date with regard to the liquidation of MSIL; and

5) Submit quarterly reports to the Court disclosing the amount of expenses and legal fees incurred to date with regard to the liquidation of MSIL.

Dated:  June 4, 2009
        New York, New York

                                       s/ Matthew Gluck
                                       Jonathan M. Landers
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
MILBERG LLP
One Pennsylvania Plaza, 48th Floor
New York, New York 10119
Phone: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Christopher A. Seeger
Stephen A. Weiss
One William Street
New York, New York
Phone: (212) 584-0700
Fax: (212) 584-0799

*Counsel for the Unofficial Committee of Certain Claim Holders*