WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Interim Chapter 7 Trustee
For the Estate of Bernard L. Madoff*
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000

Attorneys appearing:
Alan Nisselson (anisselson@windelsmarx.com)
Howard L. Simon (hsimon@windelsmarx.com)
Regina Griffin (rgriffin@windelsmarx.com)

Hearing Date: June 9, 2009 at 10:00 a.m.
Objection Deadline: June 4, 2009

**UNITED STATES BANKRUPTCY COURT
SO UTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation |
| In re<br><br>BERNARD L. MADOFF,<br><br>Debtor. | No. 09-11893 (BRL)<br><br>Chapter 7 |

**RESPONSE OF ALAN NISSELSON, CHAPTER 7 TRUSTEE
OF BERNARD L. MADOFF, TO THE JOINT MOTION OF SIPC
AND THE SIPA TRUSTEE FOR ENTRY OF ORDER SUBSTANTIVELY
CONSOLIDATING THE ESTATE OF BERNARD L. MADOFF
AND THE SIPA LIQUIDATION PROCEEDING OF
<u>BERNARD L. MADOFF INVESTMENT SECURITIES LLC</u>**

**TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:**

Alan Nisselson ("Nisselson"), the interim chapter 7 trustee (the "Chapter 7 Trustee") of the estate of Bernard L. Madoff ("Madoff" or the "Debtor"), by and through his attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submits this Response to the Joint Motion (the "Motion") of Irving H. Picard, trustee (the "SIPA Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to the Securities Investor Protection Act ("SIPA"), and the Securities Investor Protection Corporation ("SIPC"), for entry of an order pursuant to 11 U.S.C. § 105(a), substantively consolidating the chapter 7 estate of Bernard L. Madoff into the SIPA proceeding of BLMIS, and respectfully states as follows:

## Preliminary Statement

1. The Chapter 7 Trustee is submitting this Response to the Motion in the context of highly unusual circumstances concerning his administration of Madoff's estate. As the Court is well aware, the Debtor himself is incarcerated; the Debtor's personal financial records have apparently been seized by the government in connection with its ongoing criminal investigation; the Debtor's personal assets, to the extent they have been identified, have been earmarked for forfeiture by the United States Attorney's Office for the Southern District of New York (the "USAO"); and from the moment he was appointed on April 21, 2009, the Chapter 7 Trustee was subject to a restraining Order issued by the District Court, which prohibits all persons from taking any actions with respect to the identified assets of the Debtor.

2. In this context, the Chapter 7 Trustee has evaluated the Motion, the factual bases underlying it, and the benefits that substantive consolidation would offer to creditors of the Madoff estate. After conferring with the SIPA Trustee, his professionals and consultants concerning the Motion, and having reviewed certain documentation concerning the financial affairs of BLMIS and Madoff, the Chapter 7 Trustee has concluded that substantive

consolidation of the two estates – pursuant to the terms set forth in the proposed Consent Order annexed hereto as Exhibit A – will optimize the collection of assets and maximize recoveries for the benefit of the creditors of both estates.

## BACKGROUND

<u>The SEC Action Against Madoff and BLMIS</u>

3. On December 11, 2008 (the "Filing Date"), the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Bernard L. Madoff and BLMIS (Case No. 08 CV 10791) (the "SEC Action"). The SEC complaint alleged that Madoff and BLMIS engaged in fraud through investment advisor activities of BLMIS.

<u>The Commencement of the SIPA Liquidation of BLMIS</u>

4. In the SEC Action, the SEC consented to a combination of its own action with an application of SIPC. Pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, <u>inter alia</u>, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5. On December 15, 2008, District Judge Stanton granted the SIPC application, which among other things:

- appointed the SIPA Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3)

- appointed Baker & Hostetler LLP as counsel to the SIPA Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and

- removed the liquidation proceeding to this Court pursuant to 15 U.S.C. § 78eee(b)(4).

The Criminal Case Against Madoff and His Plea

6. On December 11, 2009, the USAO commenced a criminal action against Madoff, United States v. Madoff, Case No. 09-CR-213 (DC).

7. On March 12, 2009, Madoff pled guilty to an 11-count criminal information filed against him by the USAO. At the plea hearing, Madoff admitted that he operated a Ponzi scheme through BLMIS.

The Commencement of the Madoff Chapter 7 Case

8. On April 10, 2009, in the SEC Action against Madoff and BLMIS, the District Court entered an order which allowed certain creditors of Madoff to file an involuntary bankruptcy petition pursuant to chapter 7 of the Bankruptcy Code.

9. In that Order, District Judge Stanton noted the benefits of a personal bankruptcy case and the appointment of a chapter 7 trustee for Madoff:

> A Bankruptcy Trustee has direct rights to Mr. Madoff's individual property, with the ability to maximize the size of the estate available to Mr. Madoff's creditors through his statutory authority to locate assets, avoid fraudulent transfers, and preserve or increase the value of assets through investment or sale, as well as provide notice to creditors, process claims, and make distributions in a transparent manner under the procedures and preferences established by Congress, all under the supervision of the Bankruptcy Court.

10. On April 13, 2009, Blumenthal & Associates Florida General Partnership, Martin Rappaport Charitable Remainder Unitrust, Martin Rappaport, Marc Cherno and Steven Morganstern (collectively, the "Petitioning Creditors"), filed an involuntary petition for relief against Madoff, commencing a case under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") (the "Madoff Chapter 7 Case").

11. On April 20, 2009, the Court entered an Order directing the appointment of an interim chapter 7 trustee, pursuant to which the United States Trustee's Office for the Southern District of New York appointed Alan Nisselson as the Chapter 7 Trustee on April 21, 2009.

12. On May 7, 2009, the Court entered an Order for Relief in the Madoff Chapter 7 Case.

The USAO's Intention to Forfeit Madoff's Personal Assets

13. On March 15, 2009, the USAO filed a Notice of Intent to Seek Forfeiture of Certain Assets of Madoff, a copy of which is annexed hereto as Exhibit B.

14. On March 17, 2009, the USAO filed a Second Notice of Intent to Seek Forfeiture of Certain Assets of Madoff, a copy of which is annexed hereto as Exhibit C.

15. The two forfeiture notices filed by the USAO appear to cover virtually every personal asset of Madoff that is listed in his Statement of Financial Condition as of December 31, 2008, which was apparently submitted by his criminal counsel to the United States Securities and Exchange Commission (the "SEC"). A copy of that Statement is annexed hereto as Exhibit D.

16. On April 20, 2009, the same day this Court entered an Order directing the appointment of an interim trustee, District Judge Denny Chin in the criminal case against Madoff issued a Post-Indictment Restraining Order pursuant to 21 U.S.C. § 853(e)(2) (the "Restraining Order"), based upon an *ex parte* application of the USAO. A copy of the Restraining Order is annexed hereto as Exhibit E.

17. The Restraining Order provides, among other things, that:

> [Madoff], his attorneys, agents, employees and anyone acting on their behalf, and all persons or entities acting in concert or participation with any of the above, including, but not limited to, Ruth Madoff and Yacht Bull Corporation, and all persons and

> entities having actual knowledge of this Order, shall not, directly or indirectly, transfer, sell assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to transferred, sold, assigned, pledged, hypothecated, encumbered, or disposed of in any manner; shall not attempt or take any action that might affect the availability of the Subject Property for forfeiture, including, but not limited to, withdrawing, assigning, pledging, distributing, encumbering, wasting, secreting or otherwise disposing of, or removing all or any part of the Subject Property, or take, or cause to be taken, any action that might have the effect of depreciating, damaging, or in any way diminishing the value of the Subject Property.

See Ex. E.

18. The Restraining Order by its broad terms includes virtually all of Madoff's personal assets which were identified in Madoff's Financial Statement submitted to the SEC, and nearly all of which the USAO had previously included in their two notices of intent to forfeit. Cf. Exhibit E to Exhibits B and C.

19. The SEC and the Department of Justice have both represented in filings in the District Court that any personal assets of Madoff which are forfeited will be liquidated and the proceeds distributed to Madoff's victims. See Objection by Securities and Exchange Commission to Motion for Partial Relief from Injunction at 1, a copy of which is attached hereto as Exhibit F; see letter dated April 9, 2009, from Richard Weber, U.S. Department of Justice, Criminal Division, Chief Asset Forfeiture and Money Laundering Section to Lev L. Dassin, Acting United States Attorney for the Southern District of New York, attached hereto as Exhibit G.

20. Shortly after his appointment, the Chapter 7 Trustee and his counsel met with Assistants of the USAO. While the USAO did not express any change in their position regarding their intent to seek forfeiture of Madoff's assets as reflected in the Restraining Order they obtained from District Judge Chin, at the same time, they indicated their desire to cooperate with

both the Chapter 7 Trustee and the SIPA Trustee towards the goals of maximizing recoveries and minimizing duplication of efforts of all parties involved.

21. Subsequently, the SIPA Trustee and his counsel informed the Chapter 7 Trustee and his counsel that the SIPA Trustee and the USAO are in the process of finalizing a protocol with respect to Madoff's assets.

**THE BENEFITS OF SUBSTANTIVE CONSOLIDATION
OF THE TWO ESTATES PURSUANT TO THE
TERMS OF THE PROPOSED CONSENT ORDER**

22. In his Motion to substantively consolidate the estates, the SIPA Trustee has alleged that BLMIS and Madoff were each the alter ego of the other, that there were innumerable transactions in which Madoff used BLMIS as his "personal piggy bank"; that the financial affairs of BLMIS and Madoff are hopelessly entangled; and that all of Madoff's assets should be treated as assets of the BLMIS estate because Madoff did not have any other significant source of income.

23. In order to evaluate the merits of the Motion, the Chapter 7 Trustee and his counsel have met and conferred with the SIPA Trustee and his counsel, Michael Slattery, Jr., Managing Directing of FTI Consulting, Inc ("FTI") and Meaghan Schmidt of Alix Partners, retained consultants of the SIPA Trustee. The Chapter 7 Trustee and his counsel have also been afforded the opportunity to review certain records at BLMIS's office in the possession of the SIPA Trustee.

24. Based on the foregoing, the Chapter 7 Trustee has concluded that he has no basis to dispute the factual allegations contained in the SIPA Trustee's Motion papers that corporate funds were used to finance personal expenses of Madoff, his family and select employees; that funds of BLMIS were used to fund millions of dollars in loans to Madoff's family members and

selected friends; and that there appeared to be a general disregard of corporate formalities.

25. There is also little doubt that disentangling the financial affairs of Madoff from BLMIS, and the concomitant potential for competing claims between the two estates for the same assets, will be time consuming and expensive for both estates.

26. Thus, after extensive consideration of the Motion, the Chapter 7 Trustee has concluded that substantive consolidation of the two estates pursuant to the terms of the proposed Consent Order agreed to by the Chapter 7 Trustee, the SIPA Trustee and SIPC, will avoid unnecessary administrative expenses arising from duplicative efforts and/or competing claims of the two estates, and will at the same time maximize the Chapter 7 Trustee's ability to recover and preserve Madoff's personal assets.

27. First, the lack of the Debtor's financial records, the government's earmarking of the Debtor's assets for forfeiture, and the effect of the District Court's Restraining Order are substantial impediments to the Chapter 7 Trustee's ability to carry out his duties to maximize recovery of assets for his estate.

28. Second, the Madoff estate is currently administratively insolvent, and the District Court's Restraining Order prevents the Chapter 7 Trustee from attempting to recover and liquidate Madoff's assets. As a result, there are no funds available for the Chapter 7 Trustee to, among other things, pursue potential avoidance actions which may exist on behalf of the estate, the prosecution of which was one of the primary bases on which District Judge Stanton permitted the Petitioning Creditors to commence the chapter 7 case.

29. On the other hand and as discussed below, in the event the Court approves the proposed Consent Order, both the Chapter 7 Trustee and the SIPA Trustee will remain as trustees of the consolidated estates, with all of their rights, powers, claims and interests preserved. The

Chapter 7 Trustee will be able to pursue avoidance actions and other assets of the Debtor, and will not be hamstrung from doing so by a lack of funding, thereby maximizing the potential recoveries of all creditors of both estates.

30. Third, substantive consolidation as outlined herein will eliminate substantial administrative expenses to the creditors of the Madoff estates that would inevitably result from duplication of efforts of professionals of two separate estates. Upon consolidation, the creditors of the Madoff estate will get the benefit of the significant amount of work that the SIPA Trustee and his professionals and/or consultants have already performed, as well as the benefit of the existing infrastructure they already have in place.

31. Finally, and perhaps the most significant benefit of substantive consolidation to both estates, is the elimination of unnecessary administrative expenses to both estates that would result from the pursuit of competing claims to the same assets. Upon substantive consolidation, there will be a complete unity of interest of both estates in recovering all assets, whether they are technically Madoff estate assets or BLMIS assets.

### THE PROPOSED CONSENT ORDER FOR SUBSTANTIVE CONSOLIDATION

32. The Chapter 7 Trustee believes that the agreement that he has reached with the SIPA Trustee and SIPC and as embodied in the proposed Consent Order annexed as Exhibit A, will allow the administration of the consolidated estate to proceed in the most expeditious, efficient and economical manner for the benefit of all creditors, and will remove many of the obstacles impeding performance of his duties as a Chapter 7 Trustee to the Madoff estate.

33. Under the proposed Consent Order, the Madoff estate would be consolidated into the SIPA liquidation of BLMIS *nunc pro tunc* to December 11, 2008 (the date of commencement

of the SIPA liquidation proceeding),[1] as follows:

- All assets and liabilities of Madoff will be deemed consolidated into the SIPA proceeding of BLMIS to be administered pursuant to SIPA and the Bankruptcy Code under the jurisdiction of this Court; and

- Under the consolidated estate, the Chapter 7 Trustee shall remain as trustee, and all powers, rights, claims and interests of the Chapter 7 Trustee and the Madoff estate will be expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests, and the right to oppose or object to Madoff's discharge under Section 727 of the Bankruptcy Code.

34. Upon consolidation, the SIPA Trustee and SIPC have agreed that, subject to the Court's approval, Nisselson and his law firm will be retained as special counsel on behalf of the substantively consolidated estate to, among other things:

- bring actions including, without limitation, chapter 5 avoidance actions with respect to potential assets of Bernard L. Madoff;

- liquidate any assets of Bernard L. Madoff, including but not limited to, any assets turned over to the consolidated estate that may be forfeited by the United States;

- pursue litigation to recover all assets of Bernard L. Madoff, including but not limited to, any assets which the USAO does not forfeit; and

---

[1] Substantive consolidation *nunc pro tunc* to the original filing date of the SIPA liquidation proceeding of BLMIS is clearly authorized and appropriate under the circumstances present here. See In re Bonham, 229 F.3d 750, 771 (9th Cir. 2000) (holding that bankruptcy court did not err in ordering substantive consolidation of two non-debtor entities with chapter 7 estate of their sole owner *nunc pro tunc* to date of original involuntary bankruptcy petition filed against individual debtor, where the individual debtor ran a ponzi scheme through the two non-debtor entities and failed to maintain any corporate distinctions among them).

- pursue any litigation or perform any other tasks the SIPA Trustee and/or SIPC deem appropriate.

35. In order to maximize recoveries to creditors, SIPC has agreed to compensate Nisselson and his law firm for the legal services they render on behalf of the consolidated estates, subject to SIPC's review of the firm's invoices and the Court's approval. SIPC has also agreed to compensate Nisselson and his law firm for the services they have rendered from the date of the Chapter 7 Trustee's appointment through to the effective date of an Order of this Court consolidating the two estates, subject to SIPC's review of the firm's invoices and the Court's approval.

36. The Chapter 7 Trustee respectfully submits that substantive consolidation of the two estates pursuant to the proposed Consent Order is clearly in the best interest of creditors of both estates.

## CONCLUSION

**WHEREFORE**, the Chapter 7 Trustee respectfully requests that this Court grant substantive consolidation of the Madoff estate with the BLMIS estate as set forth in the proposed Consent Order attached as Exhibit A hereto, and grant such other relief as is just.

Dated: New York, New York
       June 4, 2009

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee of Bernard L. Madoff*

/s/ Alan Nisselson
Alan Nisselson (anisselson@windelsmarx.com)
Howard L. Simon (hsimon@windelsmarx.com)
Regina Griffin (rgriffin@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000