Eric L. Lewis, Esq. (EL 0038)
Email: eric.lewis@baachrobinson.com
H. Bradford Glassman, Esq.
Email: bradford.glassman@baachrobinson.com
BAACH ROBINSON & LEWIS PLLC
1201 F Street, N.W., Suite 500
Washington D.C. 20004
Tel: 202-833-8900
Fax: 202-466-5738

*Counsel for the Joint Provisional Liquidators*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Madoff Securities International Limited,<br><br>Debtor in a Foreign Proceeding | Case No. 09-12998 (BRL)<br><br>Chapter 15 |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |
| STEPHEN JOHN AKERS,<br>MARK RICHARD BYERS,<br>ANDREW LAURENCE HOSKING,<br>Joint Provisional Liquidators of Madoff Securities International Limited | Adv. Pro. No. 09-1186 (BRL) |

| | |
|---|---|
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PETER B. MADOFF, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**JOINT PROVISIONAL LIQUIDATORS' REPLY TO THE JUNE 4, 2009 SUBMISSIONS CONCERNING THE JOINT PROVISIONAL LIQUIDATORS' PETITION FOR RECOGNITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

The Joint Provisional Liquidators of Madoff Securities International Limited ("MSIL"), an English company in provisional liquidation before the High Court of Justice, Chancery Division, Companies Court in London, respectfully submit this consolidated Reply to the June 4, 2009 submissions of (i) Irving Picard, Esq., the Securities Investors Protection Act Trustee (the "SIPA Trustee") of Bernard L. Madoff Investment Securities LLC ("BMIS"), (ii) Alan Nisselson, Esq., the Trustee of the personal bankruptcy estate of Bernard L. Madoff, and (iii) a number of creditors of the BMIS and Madoff personal estates represented by Milberg LLP and Seeger Weiss LLP (the "Milberg Creditors") (collectively hereinafter the "Filers").

## INTRODUCTION

The Filers' submissions have been made in response to the provisional liquidators' April 14, 2009 Petition for Recognition under Chapter 15 of the Bankruptcy Code. As will be made clear below, the Liquidators since their appointment have been a constructive and efficient force in moving this matter forward for the benefit of all creditors. Nothing in the various submissions presents a shred of evidence that there has been any duplication of effort or excessive cost or warrants any restriction on the

standard relief that has been requested under the clear and basic precepts of international comity and cooperation embodied in Chapter 15, such reciprocity and comity having been accorded by the English Court to this Court's appointee Mr. Picard without caveat or restriction. Comity, after all, is a two-way street.

Nevertheless, the provisional liquidators do not wish to impose unnecessary burdens on this Court and in that spirit are prepared to limit voluntarily the relief sought upon recognition and thus avoid what is largely an academic discussion about the scope of proper relief. The provisional liquidators seek recognition as a foreign main proceeding, but at present they do not require the full panoply of powers that may be granted on that basis under Chapter 15, and in order to short-circuit a sterile and unnecessary debate will limit their request to specific measures currently necessary. Specifically, the provisional liquidators seek the Court's imprimatur only to resolve the matter of the Aston Martin automobile, with leave to return as may become necessary in the future as to specific matters.

Because a number of the Filers have suggested, without basis, purported concerns regarding alleged duplication of effort and excessive cost, it is appropriate to provide an overview of the provisional liquidators' efforts to date to dispel these notions. The Court should consider the provisional liquidators' unbroken record of cooperation and efforts toward efficiency in these related insolvency proceedings as well as the specific facts surrounding the Chapter 15 Petition itself and the related adversary action.

Contrary to the assertions of the Filers, and the Milberg Creditors in particular, the provisional liquidators have been a consistent, energetic, and effective agent for cooperation and efficiency in these related international proceedings since the day of their

appointment. The provisional liquidators' very first action as such—undertaken, indeed, even before their appointment—was to submit through their counsel a proposed order to the High Court *requiring* their *own* cooperation with the Trustee of BMIS, an order which the High Court duly issued. *See* High Court Order (Ex. B to Petition). The provisional liquidators were the primary architects of the cross-border insolvency and information-sharing protocols now before the Court: they were conceived, proposed to BMIS, and drafted by the provisional liquidators (through their counsel) shortly after their appointment. The provisional liquidators brought to the attention of the Trustee the availability of the English equivalent of the Chapter 15 procedure, and even provided a memorandum to BMIS on January 7 of this year explaining how to use it. The provisional liquidators have since rendered valuable assistance in formulating the Trustee's recognition application in the U.K., helping to clear a path for disclosure of critical data in the face of trans-border data flow restrictions operative in the U.K., cooperating with the Trustee's advisors in respect of witness interviews, and facilitating tripartite cooperation between the Department of Justice, the provisional liquidators, and the Trustee.[1]

The ultimate aim of these efforts is to maximize recoveries to the victims of the Madoff fraud by creating a framework in which all parties seeking that common goal contribute to the same ultimate fund, and labor is divided according to the relative position and ability of the cooperating parties to recover an asset, not the parochial

[1] Beginning in April, the provisional liquidators called on the Department of Justice in Washington to encourage cooperation, arranged meetings, and fostered a dialogue that has led to the possibility of a broad cooperative protocol between the liquidation estates and the government. Credit is, of course, due to all of the parties in moving toward greater cooperation. But we expect the Trustee will acknowledge that the provisional liquidators have been an important catalyst in that process.

interests of one estate, proceeding, agency, or country versus another. The provisional liquidators agree with the Filers, including the Milberg Creditors, that the BMIS Trustee should be the presumptive instrumentality for asset recovery because its recovery costs are absorbed by SIPC and thus do not erode the fund available to victims: that is already factored into the framework. But there are instances in which the provisional liquidators will be better positioned or singularly positioned to recover an asset, particularly in the European Union and the present and former British Commonwealth countries (where their status ensures enhanced recognition and cooperation not available to the Trustee and they can act nimbly and decisively compared to the U.S. parties), but also in the United States in certain instances, as where MSIL has a better claim or is clear of legal impediments that may affect BMIS or the personal estate. This broad vision is what the provisional liquidators have endeavored from the very outset to achieve.

The Milberg Creditors nevertheless attempt to portray the provisional liquidators as uncooperative and bent upon duplication and inefficiency. Their principal contention is that "[t]he JPL's actions to date – retaining two law firms to file an action in Florida to recover a vehicle without prior notice to this Court or the parties herein – do not demonstrate a sensitivity to efficiency and cost reduction." Creditors at 2. This submission is fundamentally wrong. The provisional liquidators filed the Chapter 15 and the related adversary proceeding in collaboration with and at the initial suggestion of Mr. Picard and his advisors. The action was filed by the provisional liquidators because the payments for the automobile were made through MSIL. The action was brought in Florida because the asset was there and Baker Hostetler and the provisional liquidators expected that filing there rather than in this District, with its already-complex

proceedings, would simplify the actions and reduce expense. This was discussed in advance of the filing with the Trustee's legal advisers. The proceedings were brought on an expedited basis because the provisional liquidators wanted a TRO in place before the proceedings became public as a means of preventing the sale or other disposition of the automobile. Hence, far from reflecting unilateral, uncooperative, or duplicative action by the provisional liquidators, the Florida filings were made for good reasons, in collaboration with and at the request of BMIS.

The filing of a Chapter 15 petition for recognition can hardly be characterized as unusual or wasteful in the context of a complex international insolvency. It is very much standard practice. And the adversary action has been conducted at modest cost. Indeed, absent the procedural complications introduced by the Milberg Creditors, the provisional liquidators believe that the action would have been resolved and the automobile realized weeks ago, within a month of its commencement, and with only the basic pleadings filed.

As will be clear from the foregoing, the Milberg's Creditors' representations concerning notice are manifestly wrong. The provisional liquidators, as noted, did *nothing* without notice to the "parties to this proceeding"—that is to say, the SIPA Trustee. Mr. Nisselson had not been appointed at the time of the filing. And, as has been made clear in previous submissions, the provisional liquidators' counsel were not aware at the time of their April 14 filing of the Milberg Creditors' involuntary chapter 7 filing late on the previous day—even assuming these parties, who assert claims as creditors in a *different* estate, were entitled to notification of the Chapter 15 filing, which they were not. The provisional liquidation does not have creditors who are entitled to notification under U.K. law at this stage, but rather function more like receivers in U.S. practice,

which is why Judge Hyman found it appropriate to issue a full recognition order rather than a provisional one. (Alternative 1519 and 1521 orders were presented to him and the situation fully and accurately explained.)

We would be remiss in leaving the subject of notice without observing that the Milberg Creditors did not notify or seek consent from the provisional liquidators for their Rule 1014 transfer motion *at all*, nor did they contact the provisional liquidators, at least directly, concerning their recent filings. Similarly, Mr. Nisselson failed to contact us concerning his recent request for relief in our proceedings.

In sum, the contention that the provisional liquidators have been uncooperative and wasteful and have failed to make required notifications is completely baseless and indeed is more accurately directed at, if anyone, the Milberg Creditors themselves. The provisional liquidators are experienced in working cooperatively in international insolvencies and have been an energetic force for cooperation and practicality in these complex related proceedings to date and in particular have acted at every stage in collaboration and cooperation with the SIPA Trustee. The actions adduced as evidence of the provisional liquidators' alleged failure to cooperate and proclivity to duplicate effort in fact prove the opposite: the Chapter 15 Petition and adversary action were agreed upon and undertaken with the agreement of the Trustee, prior to Mr. Nisselson's appointment, and in circumstances where notice to the Milberg Creditors could not reasonably have been expected.

**DISCUSSION**

The relief requested in the Chapter 15 Petition is fully in keeping with the UNCITRAL Model Law on Cross-Border Insolvency that Chapter 15 implements and

with Chapter 15 itself. These principles are, of course, entirely familiar to this Court. Section 1501 declares that the statute's purpose is to implement the UNCIRAL Model Law with the objective of cooperation between, *inter alia*, U.S. courts and the court-appointed officials who serve as representatives of foreign insolvency proceedings. Section 1525 of the statute provides that, consistent with Section 1501, "the court *shall* cooperate *to the maximum extent possible* with a foreign court or a foreign representative . . . ." 11 U.S.C. § 1525 (West 2009) (emphasis added); *see also In re: Atlas Shipping*, 2009 Bankr. LEXIS 893, at *4 (S.D.N.Y. Apr. 27, 2009) (Glenn, J.) ("Chapter 15 'mandate[s] that the court cooperate <to the maximum extent possible> with a foreign court or representative . . . .'"); *In re Artimm*, 335 B.R. 149, 159 (C.D. Cal. 2005) ("One of the most important changes introduced by chapter 15 is a mandate that the court cooperate 'to the maximum extent possible' with a foreign court or representative, either directly or through any domestic trustee.").

The provisional liquidators' Chapter 15 petition, like many other such petitions routinely granted by our courts, seeks the basic assistance provided for in the statute: principally, the power to commence and defend litigation and the power to take discovery concerning the affairs of the liquidation. *See* 11 U.S.C. §§ 1509, 1521. Nor is there any reason to believe that persons who believe they are adversely affected by the provisional liquidators' actions lack the ability to seek relief. The provisional liquidators, moreover, are already supervised by, and must by statute account fully for their fees, expenditures, and activities to, the High Court of Justice in England. Surely nothing adduced in the filings supports the notion that that Court is incapable of carrying out its supervisory function or controlling the activities of its appointed fiduciaries. In that sense, certain of

the Filers fail to recognize the critical importance of comity, as well as the courtesy and comity already reciprocally extended to the Trustee.

In pleadings ostensibly devoted to the avoidance of litigative waste and unnecessary cost, the Milberg Creditors adduce arguments concerning MSIL's "center of main interests" that border on frivolous and amount, with respect, to a waste of the Court's and the parties' limited time and resources. As the Milberg Creditors are well aware, the High Court of Justice, in its Order appointing the provisional liquidators, specifically held that it was "satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings . . . does apply and that these proceedings are main proceedings as defined by Article 3 of the EC Regulation." *See* High Court Order (Ex. B to Petition). That determination, made upon evidentiary submissions, is legally equivalent to the one made under our Bankruptcy Code and is entitled to deference. More importantly, the High Court's determination is manifestly correct: MSIL's registered office is in England; it is incorporated in England; it conducted its corporate meetings, with independent directors, in England; it kept its books in England; and it operated an active trading business, employing dozens of people, at its offices in Mayfair, where it operated for more than twenty years. There is no serious argument that MSIL's center of main interests is in the United States or indeed anywhere other than England, as the High Court has adjudged.

As the Trustee and the provisional liquidators recognize, there may be certain assets or causes of action that only the provisional liquidators will be able to investigate and pursue. The easiest and most sensible route would have been an unopposed application to obtain the full and standard relief requested, in view of the provisional

liquidators' track record of cooperation and the supervisory authority of a sister common law court. Nevertheless, at the moment, the provisional liquidators have worked out a protocol that provides for cooperation, and, apart from the Aston Martin automobile, there is no other asset or claim that requires relief by this Court. Hence, the discussion is theoretical, and it makes no sense to put such an issue to the Court for decision in the absence of consensus or a concrete issue. For this reason, the provisional liquidators will voluntarily narrow their request to one for recognition and for relief only to take such steps are necessary to realize the Aston Martin automobile that is the subject of the adversary proceeding. The provisional liquidators would anticipate that any future requests for relief would be received and adjudicated in the spirit of mutual respect and comity that underlies the Model Law and Chapter 15 itself.

## CONCLUSION

For the foregoing reasons, the provisional liquidators request that this Court grant recognition under Chapter 15 and relief related to the Aston Martin automobile that was the subject of the original adversary proceeding in the form of the proposed order submitted herewith.

Dated: June 8, 2009
Washington D.C.

Respectfully submitted,

BAACH ROBINSON & LEWIS PLLC

/s/ Eric L. Lewis

Eric L. Lewis, Esq. (EL 0038)
H. Bradford Glassman, Esq.
1201 F Street N.W., Suite 500
Washington D.C. 20004
Telephone: (202) 833-8900
Facsimile: (202) 466-5738
*Counsel for the Joint Provisional Liquidators*