Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com

Hearing Date: June 2, 2009
Hearing Time: 10:00 a.m.
Objection Deadline: May 28, 2009

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

Defendant.

Adv. Pro. No. 08-1789 (BRL)

SIPA Liquidation

**OBJECTION OF TRUSTEE IRVING H. PICARD TO**
**MOTION OF ADE O. OGUNJOBI AND TOKS, INC., et al.**
**FOR INTERVENTION PURSUANT TO FED.R.CIV.P. 24**

Irving H. Picard, trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment

Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et

seq. ("SIPA")[1], submits this objection to the motion ("Motion") of Ade O. Ogunjobi

("Ogunjobi"), Toks, Inc. ("Toks") and Wholly-Owned Subsidiaries (collectively with Ogunjobi

---

[1]   For convenience, subsequent references to SIPA shall omit "15 U.S.C."

and TOKS, the "Movants") to intervene in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24(a) and (b),[2] and respectfully states as follows:

### Preliminary Statement

1.     The Movants seek to intervene in this proceeding to conduct a tender offer to purchase BLMIS in exchange for what they propose is a global, all stock tax free transaction involving $100 trillion in stock or 400 million shares of Class A shares of Toks. The Movants propose to commence and fund their plan with the $1 billion of funds collected by the Trustee. The Motion however is replete with incredible and unfounded statements on how the Movants intend to achieve their plan, and contains no facts supporting their ability to consummate the proposed tender offer.

2.     The Movants do not meet the requirements for either mandatory or permissive intervention pursuant to Fed.R.Civ.P. 24, as made applicable to this proceeding by Fed.R.Bankr.P. 7024. They have asserted no federal statute upon which they base the Motion, and they have no claim or other identifiable interest or defense in this proceeding, and thus lack standing to seek intervention.

3.     Furthermore, the unsolicited and unsupported proposals set forth in the Movants' pleadings are merely exaggerated variations of offers previously found improper and fraudulent by the United States Securities and Exchange Commission ("SEC"), an administrative law judge and a United States District Court Judge, which ultimately resulted in the entry of a permanent injunction against Ogunjobi and Toks. The proposals set forth by the Movants serve at best as a distraction which must be addressed by the Trustee, and at worst as an attempt to further mislead and defraud investors who already have been victimized as a result of Madoff's massive Ponzi

---

[2]     Subsequent references to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure shall be abbreviated "Fed.R.Civ.P" and "Fed.R.Bankr.P.," respectively.

scheme.

## Relevant Background

### I.    Appointment of the Trustee

4.    On December 11, 2008, the SEC ("SEC") filed a complaint in the United States

District Court for the Southern District of New York (the "District Court") against defendants

Bernard L. Madoff and BLMIS (together, the "Defendants") (Case No. 08-CV-10791) (the "SEC

Action"). The complaint alleged that the Defendants engaged in fraud through investment

adviser activities of BLMIS.

5.    On December 15, 2008, the SEC consented to a combination of the SEC Action

with an application of SIPC. Thereafter, SIPC filed an application in the District Court allging,

inter alia, that BLMIS was not able to meet its obligations to securities customers as they came

due and, accordingly, its customers needed the protection afforded by SIPA.

6.    On that date, the District Court entered a protective decree, to which BLMIS

consented, which in pertinent part appointed the Trustee and removed the case to this Court

pursuant to section 78eee(b)(4) of SIPA.

### II.    Prior SEC Proceedings Against Toks and Ogunjobi

7.    Pursuant to a decision of an administrative law judge in an SEC proceeding in

2002,[3] Toks filed a registration statement with the SEC on August 31, 2001 (as amended on

September 7, 2001), pursuant to which Toks and Ogunjobi sought to register shares of Toks

common stock to be sold in an initial public offering. The SEC's Division of Corporation

Finance ("Corporation Finance") notified Toks that the registration statement failed in numerous

material respects to comply with the securities laws, and advised Toks to revise or supplement its

---

[3]    See In the Matter of Toks, Inc., SEC Initial Decision Rel. No. 198, 2002 WL 21693 (January 8, 2002)
("SEC Decision"). A copy of the SEC Decision, as well as the notice that the decision became final, are annexed
collectively hereto as Exhibit A.

disclosures. See SEC Decision, at 2. Ogunjobi also filed subsequent notices announcing that it intended to make tender offers for several of the world's largest corporations in exchange for Toks stock. Corporation Finance advised Ogunjobi that these filings did not provide a reasonable basis to believe that Toks could consummate the proposed tender offers, and it urged him to cease all activities relating to the tender offers. See id., at 3.

8.    After concluding that Toks and Ogunjobi were refusing to engage in meaningful dialogue to correct the registration statement, Corporation Finance referred the matter to the SEC's Division of Enforcement, and the SEC ordered a public hearing to address the Division of Enforcement's allegations contained in a Statement of Matters to be Considered at Public Hearing. Although Ogunjobi refused to participate, a hearing on the registration statement was ultimately held, resulting in the issuance of the SEC Decision.[4]

9.    As background, pursuant to the registration statement Toks sought to register twenty shares of stock to be sold for an aggregate of $100,000 in an initial public offering, after which Toks' main bank would be contacted to arrange $10 billion in loan syndication, or the issuance of high yield bonds or convertible bonds through the use of "negotiable instruments" available to a public company in connection with access to "capital markets." See SEC Decision, at 1-2. The registration statement also provided that Class A common shares totaling $2 trillion would be registered with the SEC for issue in order to conduct all stock "tender offers" to acquire some of the largest companies in the world, including Hughes Electronics, AT&T Wireless Services, Inc. and AT&T Corporation. Toks asserted it would become the parent company and the acquired corporations would become wholly-owned subsidiaries. Id. at 2.

---

[4]    Ogunjobi advised the Division of Enforcement that he refused to participate in a prehearing conference or the hearing until his securities were declared effective. Id. at 4.

10.    The Chief Administrative Law Judge of the SEC found that the registration statement violated numerous rules under the Securities and Exchange Act of 1934 ("Exchange Act"), including rule 14e-8, which provides that it is a fraudulent, deceptive or manipulative act or practice within the meaning of the Exchange Act for a person to publicly announce that they plan to make a tender offer that has not yet been commenced if they do not have the reasonable belief that they will have the means to purchase securities to complete the offer:

> The registration statement goes well beyond hyperbole with a series of assumptions that it presents as realistic future events. It assumes that Toks would raise the full amount in a $100,000 best efforts offering, which Mr. Ogunjobi will conduct without the assistance of an underwriter or broker-dealer.  Then without explanation, it concludes that the $100,000 IPO proceeds would enable Toks to arrange $10 billion in loan syndication or "issue high yield bonds or convertible bonds." The registration statement then represents, without explanation, that Toks will register $2 trillion of Class A common shares to conduct all-stock tender offers and acquire the securities of several large public companies.

Id. at 5 (internal citations omitted).

11.    After the hearing, the effectiveness of the registration statement was suspended by the administrative law judge after finding that it contained material misstatements and omissions with respect to, among other things, Toks' financial statements (including that they were unaudited and contained no figures in any of the categories), it's legal status, its plan of operation and its proposed tender offers. Id. at 5-10.[5] The judge found that because Toks has no assets, no revenues, no employees and no products, it had no reasonable basis to believe it could complete the tender offers announced in its registration statement. Id. at 6.

12.    More than a year later, the SEC again had to address improper activities by Toks and Ogunjobi. On August 25, 2003, the SEC filed a complaint against Toks and Ogunjobi ("Complaint"). The Complaint alleged that from at least May 2003, Toks and Ogunjobi had

---

[5]    No petition for review of the initial decision was filed by Toks. See Exhibit A, "Notice That Initial Decision Has Become Final."

been conducting an unregistered offering of up to $50 billion in Toks notes for the apparent

purpose of funding (i) filing fees to the SEC, and (ii) tender offers targeting the world's largest

corporations, including AOL Time Warner, Inc., AT&T, General Motors Corp. and Microsoft

Corp. See United States Securities and Exchange Commission v. Toks, Inc. and Ade O.

Ogunjobi, Case No. 1:03-CV-1787, Docket No. 1 ("Complaint"), at ¶18 (a copy of which is

annexed hereto as Exhibit B).

13.    The Complaint accused Toks and Ogunjobi of preparing and disseminating

materials, including through an internet website,[6] containing untrue statements of material fact,

and of making pre-commencement communications and public announcements to the investing

public in connection with a tender offer without filing the communications to the SEC or the

subject companies, or including the required information and advisements to investors, all in

violation of the Exchange Act. See Complaint, at ¶¶32-33, 39.[7]

14.    Pursuant to a "Final Judgment Granting Permanent Injunction and Other

Equitable Relief" dated March 24, 2004 ("Injunction Order"), the United States District Court

for the District of Columbia permanently enjoined Toks and Ogunjobi from violating Sections 5

and 17 of the Securities Act of 1933 relating to registration and anti-fraud provisions, as well as

Section 14 of the Exchange Act relating to tender offers. The court found that Toks and

Ogunjobi had no assets, sales, revenues, employees or a stable office, nor any commitments from

any banks, financing sources or underwriters. The court also found that Toks and Ogunjobi

knew, or were reckless in not knowing, that Toks does not have any of the resources, means or

assets to accomplish the promised tender offers. A copy of the Injunction Order is annexed

---

[6]    The website utilized was www.tspnotes.com (the "Toks Website"), which is currently operational, as discussed
herein.
[7]    The Trustee respectfully refers the Court and all interested parties to the Complaint at Exhibit B for a complete
recitation of the claims against Toks and Ogunjobi.

hereto as Exhibit C.

15.    The Injunction Order provides, among other relief, that Toks and Ogunjobi are

permanently restrained and enjoined from "making any untrue statement of a material fact or

omitting to state any material fact necessary in order to make the statements made, [in] light the

circumstances under which they are made, not misleading, or to engage in any fraudulent,

deceptive, or manipulative acts or practices, in connection with any tender offer, request or

invitation for tenders, or any solicitation of security holders in opposition to or in favor of any

such offer, request, or invitation, in violation of Section 14(e) of the [Exchange Act]."

Injunction Order, at section IV.

## Argument

16.    The Motion should be denied on multiple grounds: (i) the Movants have not met

their burden under Fed.R.Civ.P. 24 for mandatory or permissive intervention; (ii) the Movants

have presented a completely speculative, baseless and unachievable plan to raise capital to repay

investors by utilizing monies collected by the Trustee, which is deceptive and misleading to the

Court and victims in this case; and (iii) the Movants have previously been enjoined in connection

with public tender offers containing similar unfounded plans, and therefore the Court should

deny the Motion.

### I.    Movants Have Not Met Their Burden Under Fed.R.Civ.P. 24

17.    Under Fed.R.Civ.P. 24(a), a person has a right to intervene if they are given an

unconditional right to intervene by a federal statute, or if they claim an interest relating to the

property or transaction that is the subject of the action, such that disposing of the matter will

impair or impede their ability to protect that interest if they are not able to represent that interest.

See Fed.R.Civ.P. 24(a).

18.    Under Fed.R.Civ.P. 24(b), which provides for permissive intervention, the court

may allow anyone to intervene if they are given a conditional right to intervene by a federal

statute, or if they have a claim or defense that shares with the main action a common question of

law or fact. See Fed.R.Civ.P. 24(b).

19.    The Movants have not identified any federal statute which provides them with an

unconditional or conditional right to intervene in this case. The Movants also are not customers

or creditors in this case, nor have they demonstrated any other basis for claiming an interest in

the property which is held by the Trustee, or in any transaction proposed by him. See Restor-A-

Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984) (a Rule

24 intervention interest must be significantly protectable and direct, as opposed to contingent or

remote). Furthermore, the Movants have not asserted any claim or defense that shares a common

question of law or fact with the case. See Erdman Techs. Corp. v. U.S. Sprint Communication

Co., 1997 WL 401669 (S.D.N.Y. July 16, 1997) (vague allegations do not satisfy either Rule

24(a) or (b) standards for intervention) (copy of decision annexed hereto as Exhibit D).

20.    Based on the foregoing, the Movants have failed to show that they are entitled or

permitted to intervene in this case.

## II.    The Movants' Offer is Unsupported and Deceptive

21.    The Motion and related papers are filled with unrealistic proposals and assertions.

Among other unsupported statements in their confusing and rambling papers, the Movants

propose to purchase BLMIS through Toks' "global transaction all stock tax free

$100,000,000,000 ($100 Trillion) or 400,000,000,000 shares of Class A Common shares that

will be registered with the [SEC] during the closing of the proposed exchange tender offers,"

pursuant to which clients of BLMIS would receive $75 billion or more in stock. See Movants'

Memorandum of Law in Support of Motion for Intervention dated April 22, 2009 ("Toks

Memo"), at pp.1-2.[8]

22.    Other statements and assumptions are similarly deceptive and unfounded. The Movants claim that they will launch the largest bank in the world and will acquire, among other entities, Bank of America, JPMorgan Chase and HSBC, once they get access to the approximately $1 billion collected by the Trustee. They state that as soon as the Motion is granted,

> [it] will allow almost $1,000,000,000 in cash the trustee of Bernard L. Madoff Investment Securities found to start the process to file all necessary papers to launch the largest bank ("Holding Bank") in the world. This will lead to $500,000,000,000 ($500 Billion) in cash borrowed from Federal Reserve Bank as the new holding bank against our future assets $25,000,000,000,000 ($25 Trillion) in stock granted at no cost by the parent company Toks, Inc. to the holding bank before spin off; $5,000,000,000,000 ($5 Trillion) in cash that will be raised from all Central Banks around the globe to own 50% of the largest bank in the world.

See Toks Memo, at 2-3.

23.    The Movants further claim that the "Holding Bank" they will form will buy all toxic assets from banks around the world, and that the bank is prepared to write checks to the United States government to cover all bailout funds, including $180 billion provided to AIG. See id., at 5. With respect to their ability to compensate victims in this matter, the Movants state that Toks is capable of accommodating any amount lost, whether it is $50 billion or $175 billion, through the issuance of registered securities or $100 trillion in stock. See id., at 7. No support for these representations is found in the Motion or related papers.[9]

24.    The Trustee notes that in connection with proposed tender offers to acquire 150 publicly traded companies, the Movants refer to their current website, www.tspnotes.com, for

---

[8]    The Movants did not number the pages of the Memorandum.
[9]    The Motion and related papers contain many other claims and allegations, including statements that the Movants will sue the United States District Court Judge who issued the Injunction Order, and the SEC. See Toks Memo, at pp. 24-28. The Trustee does not believe it is necessary or useful for him to address these and other unfounded statements in any further detail.

public review of their proposal. See Toks Memo, at 8. This is the same website that the Movants previously utilized to offer secured promissory notes, which offer the United States District Court found to be improper and enjoined them against pursuant to the Injunction Order.

25.    The Movants have demonstrated a persistent desire to make tender offers which they have no ability to consummate. As in prior proceedings, the Movants have no basis for the proposals and assumptions they make, and have failed to set forth facts or other evidence to indicate that they have any ability whatsoever to raise or obtain the astounding funds recited in their papers. A simple example of this is revealed in Ogunjobi's affidavit, in which he states that he has been unable even to raise $5,000 necessary to retain an attorney to represent him in this matter. See Affidavit of Ade Ogunjobi dated April 20, 2009, at ¶¶9-10.

### III.    Similar Activities by the Movants Have Been Enjoined Previously

26.    As detailed above, prior tender offers made by the Movants with proposals like those set forth in the Motion have been challenged by the SEC and enjoined by court order.[10] The statements contained in the Motion appear to violate the Injunction Order, and are misleading, deceptive and without basis. The Court should not countenance any further activity by the Movants to mislead victims of the Bernie Madoff's fraud, and should preclude Movants from interceding in this matter.

---

[10]    The Trustee has alerted the SEC staff to the Movants' Motion.

## Conclusion

Based on the foregoing, the Motion should be denied.  The Trustee further requests that the Court dispense with a hearing on the Motion, which would unnecessarily cause the expenditure of additional time and resources on this matter.

Dated: New York, New York
      May 20, 2009

Respectfully submitted,

  s/Keith Murphy
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*

# EXHIBIT A

Westlaw.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)                    Page 1

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)

S.E.C. Release No.

Initial Decision

IN THE MATTER OF TOKS INC.

Administrative Proceeding File No. 3-10635

January 8, 2002

APPEARANCES:
Carl A. Tibbetts and Jeffrey B. Finnell for the Division of Enforcement, Securities and Exchange Commission

BEFORE: Brenda P. Murray, Chief Administrative Law Judge
### Issue

The issue is whether the Securities and Exchange Commission ("Commission"), acting pursuant to Section 8(d) of the Securities Act of 1933 ("Securities Act"), should issue a stop order suspending the effectiveness of the registration statement of Toks Inc. ("Toks") filed August 31, 2001, and amended September 7, 2001.

### Findings of Fact[FN1]

On August 31, 2001, Toks filed a registration statement on Form SB-2 with the Commission to register twenty shares of Toks common stock to be sold at $5,000 per share for a total of $100,000 in a best efforts initial public offering ("IPO"). (Div. Ex. 1 at 2.) Following standard operating procedure, the Division of Corporation Finance ("Corporation Finance"), the organizational unit at the Commission responsible for reviewing Toks's registration statement, requested that Toks file an amended Form SB-2 that included a delaying legend so that the registration statement would not become effective by operation of law twenty days after filing before Corporation Finance completed a full review.[FN2] (Tr. 16, 25-26.) A full review takes more than twenty days to perform because a reviewer compares the contents of the filing with the disclosure requirements and informs the filer of any deficiencies either orally or in a comment letter.[FN3] (Tr. 22, 25.)

Toks filed an amended Form SB-2 on September 7, 2001, that is almost identical in substantive content to the original filing, with the addition of the following delaying legend. (Tr. 27.)

> The Registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this registrations statement shall thereafter become effective in accordance with section 8(A) of the Securities Act of 1933 or until the registration statement shall become effective on such date as the Commission, acting pursuant to said section 8(A), may determine.

(Div. Ex. 3.) The Commission has not declared the registration statement effective.

Toks's registration statement identifies Ade O. Ogunjobi as Toks's founder who would become its chairman and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

chief executive officer.[FN4] (Tr. 41; Div. Ex. 3 at 31.) The registration statement identifies Toks as a Delaware corporation and development stage company even though Toks lost its good corporate standing in Delaware on March 1, 1998, for failure to pay taxes. (Tr. 41; Div. Ex. 3 at 5, Div. Ex. 13.) The registration statement describes Mr. Ogunjobi as Toks's only employee who has been working without compensation since the inception of the company. (Div. Ex. 3 at 6, 29.) The registration statement states that Mr. Ogunjobi will conduct the offering without the use of an underwriter or an independent broker-dealer. (Div. Ex. 3 at 4.) Toks has never had any revenues. (Div. Ex. 3 at 24.) Its temporary office is Mr. Ogunjobi's apartment in Los Angeles. (Div. Ex. 3 at 6, 29.)

The stated purpose of the registration statement is to register enough securities to qualify as a public entity and then to use the public entity status to raise capital. (Div. Ex. 3 at 24.) The registration statement represents that after Toks raises $100,000 in the IPO,
> The next step is to contact [Toks's] main "bank" to arrange $10 billion in loan syndication or issue high yield bonds or convertible bonds by using the " "negotiable instruments" available to a public company because of access to " "capital markets."

A "Shelf" registration of Class A common shares of total $2 trillion will be registered with the United States Securities and Exchange Commission for issue to conduct an all stock "tender offers" to acquire General Motors Corporation and its subsidiaries, Hughes Electronics Corporation in stock; AT&T Wireless Services, Inc. in stock and AT&T Corporation in stock. All in heavy premium due to [Toks's] share price. Toks will become a "parent" Company and the acquired entities will become "wholly" owned subsidiaries.
(Div. Ex. 3 at 5-6.)

Generally, Corporation Finance engages in a dialogue with the registrant to cure what it views as deficiencies in a registration statement. (Tr. 25, 43.) The result often is that the registrant either submits amendments that cure the deficiencies or withdraws the registration statement. (Tr. 44-45.)
> Registration statements ... and similar documents filed with the Commission under the Securities Act of 1933 ... are routed to the Division of Corporation Finance, which passes initially on the adequacy of disclosure and recommends the initial action to be taken. If the filing appears to afford inadequate disclosure, as for example through omission of material information or through violation of accepted accounting principles and practices, the usual practice is to bring the deficiency to the attention of the person who filed the document ... and to afford a reasonable opportunity to discuss the matter and make the necessary corrections. This informal procedure is not generally employed when the deficiencies appear to stem from careless disregard of the statutes and rules or a deliberate attempt to conceal or mislead or where the Commission deems formal proceedings necessary in the public interest.
McLucas, supra, at 521-22 (quoting 17 C.F.R. § 202.3).

Corporation Finance notified Toks in writing on October 3, 2001, that its initial registration statement "fails in numerous material respects to comply with the requirements of the Securities Act of 1933." (Div. Ex. 2.) The letter was not all encompassing but focused only on what Corporation Finance believed were the fundamental deficiencies. (Tr. 29-31; Div. Ex. 2.) Corporation Finance advised Toks to revise or supplement its disclosures given its concern about Toks's ability to conduct the proposed tender offer. The letter's main points are as fol- lows:
> 1. General. The registration statement contained no explanation that supported Toks's assumption that if it raised $100,000 it could then qualify to obtain a $10 billion bank loan or raise $10 billion in a registered offering of debt securities. Also, the registration statement did not explain why Toks believed it could register $2 trillion of securities to be offered in a tender offer for the outstanding shares of large, publicly traded

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

corporations.

2. Tender Offer Rules. Rule 14e-8 promulgated pursuant to the Securities Exchange Act of 1934 ("Exchange Act") declares that

[I]t is a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the [Exchange] Act (15 U.S.C. 78n) for any person to publicly announce that the person ... plans to make a tender offer that has not yet been commenced, if the person ... [d]oes not have the reasonable belief that the person will have the means to purchase securities to complete the offer.

17 C.F.R. § 240.14e-8.

3. Plain English. The registration statement did not meet the requirements of Regulation C under the Securities Act, Rule 421(b) and (d), Presentation of information in prospectuses. 17 C.F.R. § 230.421(b), (d).

4. Accounting Comments. The registration statement did not contain audited financial statements and other related disclosures of the registrant as of the fiscal year end in accordance with Regulation S-B under the Securities Act, specifically Item 310, Financial Statements. 17 C.F.R. § 228.310. Also, the Plan of Operation section should be revised to comply with the requirements of Regulation S-B, Item 303(a), Plan of Operation. 17 C.F.R. § 228.303(a).

On October 9, 2001, Mr. Ogunjobi, as Toks's chairman and chief executive officer, filed notices "[p]ursuant to Rule 425 under the Securities Act of 1933 and deemed filed pursuant to Rule 14a-12 under the Securities Exchange Act of 1934" announcing that Toks intended to make almost identical tender offers to Hughes Electronics Corp., AOL Time Warner Inc., General Electric Co., AT&T Wireless Services, Inc., AT&T Corp., Marriott International/MD/Inc., and General Motors Corp. (Tr. 31-34; Div. Exs. 4-10.) Toks proposed a "a tax-free, all stock transaction" to these companies whereby shareholders would receive Toks Class A common stock in exchange for shares of these major public companies. Toks's notices indicated that the holders of the public company shares would receive Toks shares after the securities are declared "'effective' for sale to the public." (Div. Ex. 4 at 1, Div. Ex. 5 at 1, Div. Ex. 6 at 1, Div. Ex. 7 at 1, Div. Ex. 8 at 1, Div. Ex. 9 at 1, Div. Ex. 10 at 1.) It appears that Mr. Ogunjobi believed that the pending registration statement covering twenty shares of Toks common stock for a total of a $100,000 also covered the offer and sale of the $2 trillion of Toks's Class A common stock that Toks intended to issue to accomplish the tender offers. (Tr. 33; Div. Exs. 4-10, 11 at 2.)

On October 12, 2001, Corporation Finance advised Mr. Ogunjobi, as chief executive officer of Toks, that Toks had to file a separate registration statement and a Schedule TO before Toks could begin the transactions that are part of the proposed tender offers. (Div. Ex. 11 at 2.) It noted that Toks's October 9, 2001, filings did not provide a reasonable basis to believe that Toks could consummate the proposed tender offers. Corporation Finance informed Mr. Ogunjobi that Toks would be in violation of Section 5 of the Securities Act and Section 14(d) of the Exchange Act if Toks proceeded without making the necessary filings, and it urged him to cease all activities relative to the tender offers. (Div. Ex. 11 at 2-3.) Corporation Finance also stated that it would not accelerate the effective date of the registration statement covering twenty shares of Toks's common stock due to the material deficiencies in the Form SB-2.[FN5] (Div. Ex. 11 at 1-2.)

Corporation Finance referred the matter to the Division of Enforcement ("Division") when it concluded that Toks and Mr. Ogunjobi were refusing to engage in a meaningful dialogue to remedy what it viewed as material deficiencies in the registration statement. (Tr. 26, 43.) On November 13, 2001, the Commission, acting pursuant to Section 8(d) of the Securities Act, ordered a public hearing for November 29, 2001, to determine whether the Division's allegations set out in a Statement of Matters to be Considered at a Public Hearing ("Statement of Matters") concerning Toks's registration statement were true. Section 5(c) of the Securities Act prohibits the offer to sell or offer to buy any security unless a registration has been filed as to such security, or while the registration

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

statement is the subject of a proceeding under Section 8 of the Securities Act. See McLucas, supra, at 528.

Mr. Ogunjobi informed the Division by voicemail message received on November 23, 2001, that he refused to participate in a prehearing conference held on November 26, 2001, or to participate in the proceeding "until my securities are declared effective." (Div. Ex. A.) Toks had notice of the prehearing conference and the public hearing, but did not appear at either.[FN6] (PH Tr. 5-6; Tr. 3.) I issued a Report Following Pre-hearing Conference on November 27, 2001, advising that failure to appear at the hearing would almost certainly result in a ruling adverse to Toks. At the hearing, the Division introduced fourteen exhibits and presented testimony from John Reynolds, Assistant Director, Small Business Operations, Corporation Fin- ance.

### Conclusions of Law

Section 8(d) of the Securities Act empowers the Commission, after notice and opportunity for hearing, to issue a stop order suspending the effectiveness of a registration statement where the registration statement contains any untrue statement of a material fact or omits to state any material fact required to be stated or necessary to make the information provided not misleading. Pursuant to Securities Act Rule 405, facts are material where there is a substantial likelihood that a reasonable investor would attach importance to such matters in determining whether to purchase the security. 17 C.F.R. § 230.405. Toks had notice and an opportunity for a hearing.

I have applied the preponderance of evidence standard in measuring the evidence in the record against the allegations in the Division's Statement of Matters. See Steadman v. SEC, 450 U.S. 91, 102 (1981); Advanced Chem. Corp., Sec. Act Release No. 6507, 1983-1984 Fed. Sec. L. Rep. (CCH) ¶ 83,499, at 86,635 (Feb. 9, 1984).

### Material misstatements and omissions - audited financial statements

Form SB-2 at Item 22 specifies the disclosures that are required in the registration statement for a small business issuer. (Tr. 23-24.) Item 310 of Regulation S-B is one of the disclosures required. Item 310(a) calls for issuers to file an audited balance sheet as of the end of the most recent fiscal year, or as of a date within 135 days if the issuer existed for less than one fiscal year. 17 C.F.R. § 228.310(a) (emphasis added). It also requires audited statements of income, cash flows, and changes in stockholders' equity for the two preceding fiscal years or such shorter period as the registrant has been in business. Item 310(b) provides that interim financial statements can be unaudited but an independent public accountant must review them using professional standards and procedures as established by generally accepted auditing standards. 17 C.F.R. § 228.310(b). As to interim financial statements, Item 310(b)(2)(i) requires footnotes and other disclosures to ensure that the financial statements are not misleading. 17 C.F.R. § 228.310(b)(2)(i).

Toks's registration statement contains a half page summary of financial information for the years ended December 31, 1996, through December 31, 2000, and for nine months ended August 30, 2000, and August 30, 2001, derived from its unaudited financial statements. There are no figures in any of the categories. (Div. Ex. 3 at 8-9.) Toks claims to have no revenues, but it would appear to have some expenses since the registration statement refers to a limited operating history and Mr. Ogunjobi abandoned his college studies to raise capital to finance Toks. (Div. Ex. 3 at 10, 24, 31.)

The Commission's regulations for registration statements require the filing of audited financial statements. Accurate financial statements prepared in conformity with the Commission's regulations are indispensable for an informed evaluation of an offering of securities. Toks's registration statement does not contain audited financial statements. (Tr. 28, 31; Div. Exs. 2, 11.) Accordingly, Toks's registration statement omits to state material facts

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

required to be stated.

### Material misstatements - legal status of Toks[FN2]
The registration statement filed August 31, 2001, and amended September 7, 2001, describes Toks as "a
Delaware corporation." (Tr. 28; Div. Ex. 3 at 5.) This representation is false. On March 1, 1998, the state of
Delaware voided Toks's corporate charter, and on June 17, 1998, the state of Delaware repealed Toks's corporate
charter for failure to pay taxes. (Tr. 39-40; Div. Ex. 13.)

The registration statement contains an untrue representation of a material fact and omits to state a required material
fact because a reasonable investor would consider it significant that the issuer is not incorporated and that the
state repealed the issuer's corporate charter because it failed to pay an annual state tax. (Div. Ex. 13.)

### Material misstatements and omissions - Plan of Operation
Item 17 of Form SB-2 requires the information described in Item 303 of Regulation S-B. Item 303(a) requires
that Toks as a small business issuer that has not had any revenues from operations in the last fiscal year provide
a Plan of Operation for the next twelve months. 17 C.F.R. § 228.303(a). The Plan of Operation should include
how long the issuer can satisfy its cash requirements and whether the issuer will have to raise additional funds in
the next twelve months, a discussion of any product research and development, any expected plant or equipment
purchases, and any expected significant changes in employees. See id.

Toks had no revenues for the prior year so it was required to include a Plan of Operation in its registration state-
ment. (Div. Ex. 3 at 8, 28.) Toks's registration statement omits to state a material fact because it does not have a
Plan of Operation that contains a clear discussion and an analysis by management of any of the subjects spe-
cified in Item 303(a). (Tr. 28, 30-31; Div. Exs. 2, 3.) Furthermore, it omits material information in that it does
not explain how Toks, an unincorporated company with no earnings, expects to raise $10 billion, or how Toks
will have securities worth $2 trillion to accomplish the all-stock tender offers for several major corporations.
(Tr. 28.) Sections of the registration statement such as the Prospectus Summary, Use of Proceeds, and Tender
Offer(s) omit material information and are misleading about material matters because they state that Toks will
undertake a series of financial transactions and do not explain how it expects to accomplish transactions, which
on their face are practically impossible. (Div. Ex. 3 at 5-6, 20, 27-28.) See U.S. Molybdenum Corp., 10 S.E.C.
796, 806 (1941) ("The Securities Act entitles investors to know the facts and to form their own opinions on the
basis of a full and complete disclosure of all material facts.")

The registration statement goes well beyond hyperbole with a series of assumptions that it presents as realistic
future events. It assumes that Toks would raise the full amount in a $100,000 best efforts offering, which Mr.
Ogunjobi will conduct without the assistance of an underwriter or broker-dealer.[FN3] (Tr. 30-31; Div. Ex. 3 at
4.) Then, without explanation, it concludes that the $100,000 IPO proceeds would enable Toks to arrange $10
billion in loan syndication or "issue high yield bonds or convertible bonds." (Tr. 30-31; Div. Ex. 3 at 5.) The re-
gistration statement then represents, without explanation, that Toks will register $2 trillion of Class A common
shares to conduct all-stock tender offers and acquire the securities of several large public companies. (Tr. 30-31;
Div. Ex. 3 at 5-6.)

### Material omissions - cost of registering shares for all-stock tender offers
The registration statement indicates that Toks will make tender offers for four major public companies, however,
on October 9, 2001, Toks gave notice of tender offers to seven major public companies. (Tr. 31-34; Div. Exs. 3,
4-10.) The registration statement does not disclose that Toks would incur a significant cost to register the $2 tril-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

lion offering of Class A common shares that it expects to use in the tender offers for the major public compan-ies.[FN9] (Tr. 18, 31; Div. Ex. 11 at 2.) Toks should have disclosed this material fact because it is necessary so that the information about the tender offers is not misleading.

### Material omissions - acquisition of offering

The registration statement does not disclose that Mr. Ogunjobi intends to purchase the entire twenty shares of Toks common stock covered by the registration statement. Toks revealed this information in the several notice filings it made on October 9, 2001, pursuant to Rule 425. (Tr. 42; Div. Exs. 4-10.) 17 C.F.R. § 230.425.

If Mr. Ogunjobi intends to buy the entire offering, the registration statement omits material information. (Tr. 38-39, 42.)

### Material misstatements and omissions - proposed tender offers

Rule 14e-8(c) pursuant to Section 14(e) of the Exchange Act makes it a fraudulent, deceptive, or manipulative act or practice for any person to publicly announce that the person plans to make a tender offer that has not yet commenced where a person does not have a reasonable belief that he will have the means to purchase securities to complete the offer.[FN10] 17 C.F.R. § 240.14e-8(c). The registration statement states that Toks intends to make tender offers to several major public corporations. (Div. Ex. 3 at 28.) Toks has no assets, no revenues, no employees, and no products, but is a "'dream' working its way through the highly competitive world of corpor-ate finance." (Div. Ex. 3 at 5, 9, 24, 28-29.) Toks's registration statement violates Section 8(d) because the evid-ence is that Toks has no reasonable basis to believe that it has the means to complete the tender offers that it publicly announced in the registration statement. (Div. Ex. 2 at 2, Div. Ex. 11 at 2.)

In conclusion, Toks's registration statement violates Section 8(d) of the Securities Act because it contains many untrue statements of material fact and omits many material facts required to be stated or necessary to make the information provided not misleading. Accordingly, the Commission should suspend the registration statement because it does not "adequately reflect the information necessary for an intelligent understanding of the business in which the prospective purchaser of the securities registered is asked to invest his money." Mutual Industrial Bankers, Inc., 1 S.E.C. 268, 272 (1936).

### Record Certification

Pursuant to Rule 351(b) of the Commission's Rules of Practice, 17 C.F.R. § 201.351(b), I certify that the record includes the items described in the record index issued by the Commission's Secretary on December 10, 2001.

### Order

Based on the findings and conclusions set forth above, I ORDER, pursuant to Section 8(d) of the Securities Act of 1933, that the effectiveness of the registration statement filed by Toks Inc. on August 31, 2001, and amended September 7, 2001, is hereby suspended.

This order shall become effective in accordance with and subject to the provisions of Rule 360 of the Commis-sion's Rules of Practice, 17 C.F.R. § 201.360. Pursuant to that rule, a petition for review of this initial decision may be filed within twenty-one days after service of the decision. It shall become the final decision of the Com-mission as to each party who has not filed a petition for review pursuant to Rule 360(d)(1) within twenty-one days after service of the initial decision upon such party, unless the Commission, pursuant to Rule 360(b)(1), de-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

termines on its own initiative to review this initial decision as to any party. If a party timely files a petition for review, or the Commission acts to review as to a party, the initial decision shall not become final as to that party.

Brenda P. Murray
Chief Administrative Law Judge

FN1. I will use the following abbreviations to refer to matters in the record: prehearing conference transcript "(PH Tr.___.)," hearing transcript "(Tr.___.)," and Division Exhibits ("Div. Ex. ___.)."

FN2. Corporation Finance's Small Business Office reviews the registration statements filed by small business issuers as defined in Securities Act Rule 405. 17 C.F.R. § 230.405. The small business issuer definition is applicable generally to a United States or Canadian issuer with revenues of less that $25 million. (Tr. 21.) Almost all start-up companies are small business issuers. (Tr. 21.) Since 1992, small business issuers have been permitted to use relaxed disclosure forms such as Form SB-2, Registration Statement Under the Securities Act of 1933. (Tr. 21-22.) See 17 C.F.R. § 239.10. The Commission performs a full review for compliance with the disclosure requirements on virtually all registrations for initial public offerings. (Tr. 20-21, 25.) See William R. McLucas, Stop Order Proceedings Under the Securities Act of 1933: A Current Assessment, 40 Bus. Law. 515, 521 & n.33 (1985).

FN3. Securities Act Rule 408 makes the registrant responsible for providing additional material information so that the registration statement is not misleading. (Tr. 23-24.) 17 C.F.R. § 230.408.

FN4. Mr. Ogunjobi did not file a notice of appearance for Toks as required by Rule 102 of the Commission's Rules of Practice, 17 C.F.R. § 201.102, but he communicated with the Commission on behalf of Toks.

FN5. Corporation Finance does not have delegated authority to deny a request for acceleration so the Commission acted on the request and denied it on or about October 18, 2001. (Tr. 37-38.)

FN6. Division counsel called Mr. Ogunjobi at the time scheduled for the prehearing conference but there was no answer. (PH Tr. 6.)

FN7. At the hearing, the Division appeared to challenge the representation in the registration statement that Mr. Ogunjobi was Toks's founder. (Tr. 28, 40-41.) The evidence is that Mr. Ogunjobi was not the person who incorporated Toks, but there is no evidence that he did not found the company. (Div. Ex. 13.)

FN8. A best efforts offering has been defined as follows:
   arrangement whereby investment bankers, acting as agents, agree to do their best to sell an issue to the public. Instead of buying the securities outright, these agents have an option to buy and an authority to sell the securities. Depending on the contract, the agents exercise their option and buy enough shares to cover their sales to clients, or they cancel the incompletely sold issue altogether and forgo the fee. Best efforts deals, which were common prior to 1900, entailed risks and delays from the issuer's standpoint.... For the most part, the best efforts deals we occasionally see today are handled by firms specializing in the more speculative securities of new and unseasoned companies.
Dictionary of Finance and Investment Terms 47 (4th ed. 1995).

FN9. The Division estimates that the cost to Toks to register the $2 trillion of securities would be approximately

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

$500 million. (Tr. 18.)

FN10. Section 14(e) of the Exchange Act makes it unlawful to make a false statement of a material fact or to omit to state a material fact necessary so that statements made in connection with a tender offer or request or invitation for tenders, or any solicitation of security holders, are not misleading.

Release No. 198, Release No. ID - 198, 2002 WL 21693 (S.E.C. Release No.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL                    Page 1
337089 (S.E.C. Release No.)

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL 337089 (S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)

Securities Act of 1933

IN THE MATTER OF TOKS INC.

Administrative Proceeding File No. 3-10635

February 15, 2002

NOTICE THAT INITIAL DECISION HAS BECOME FINAL

The time for filing a petition for review of the initial decision in this proceeding has expired. No such petition has been filed, and the Commission has not chosen to review the decision on its own initiative.

Accordingly, notice is hereby given, pursuant to Rule 360(e) of the Commission's Rules of Practice, that the initial decision of the administrative law judge[FN1] has become the final decision of the Commission. The order contained in that decision suspending the effectiveness of a registration statement filed by Toks Inc. is hereby declared effective.

For the Commission by the Office of the General Counsel, pursuant to delegated authority.

Jonathan G. Katz
Secretary

FN1. Toks Inc., Initial Decision Rel. No. 198 (Jan. 8, 2002), ___ SEC Docket ___.

Release No. 8065, Release No. 33-8065, 76 S.E.C. Docket 2251, 2002 WL 337089 (S.E.C. Release No.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT B

**FILED**

**AUG 2 5 2003**

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES SECURITIES AND EXCHANGE :
COMMISSION,
450 Fifth Street, N.W.,
Washington, DC 20549-0911,

              *Plaintiff,*

        *v.*

TOKS, INC., and
ADE O. OGUNJOBI,

              *Defendants*

CASE NUMBER   1:03CV01787

JUDGE: Paul L. Friedman

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 08/25/2003

## COMPLAINT

    Plaintiff, United States Securities and Exchange Commission, for its Complaint states as

follows:

## SUMMARY

    1.    This matter involves an ongoing fraudulent offering of unregistered "promissory

note" securities. Defendants Toks, Inc., and Ade O. Ogunjobi are offering "Toks, Inc. Secured

Promissory Notes" through the Toks internet website at www.tspnotes.com. The stated purpose

of this offering is to raise between one billion dollars ($1,000,000,000) and ten billion dollars

($10,000,000,000) to pay Commission filing fees claimed to be at least four million dollars

($4,000,000) and to finance tender offer deals for the stock of at least fifteen (15) of the world's

largest corporations including AOL Time Warner, Inc., AT&T Corporation, AT&T Wireless

Services, Inc., Hughes Electronics Corporation, Marriott International, Inc., Comcast

Corporation, General Electric Company, General Motors Corporation, Microsoft Corporation,

Fox Entertainment Group, Inc., News Corporation, SBC Communications, Tribune Company,

Vivendi Universal SA, and Vodaphone Group, which are supposedly targets of the tender offer

deals. The defendants claim the tender offers will require at least five trillion dollars ($5,000,000,000,000) in stock.

    2.     Toks did not register the offering of the notes with the Commission even though it represented that: (i) the notes were investments for "stockholders" with no particular qualifications or experience, (ii) the notes were stock to be issued to shareholders, and (iii) the notes would be exchanged for publicly traded stock within nine (9) months and before the "deals" were closed. The offering does not qualify for any exemptions from registration and the notes are not exempt securities under the Federal securities laws.

    3.     The offering of the notes is deceptive, pernicious, and fraudulent. Defendants Toks and Ogunjobi are carrying out the offering using numerous egregious, flagrant misrepresentations and omissions of material facts: Toks and Ogunjobi have no assets, sales or revenues and only one employee, Mr. Ogunjobi. Toks and Ogunjobi have no commitments from any banks, investment firms, underwriters, institutions, clearing firms, attorneys, or financiers. Defendants could not have a reasonable belief that they have the means to purchase at least five trillion dollars ($5,000,000,000,000) of stock to complete the tender offers for fifteen (15) or more of the world's largest companies.

    4.     Defendants Toks' and Ogunjobi's offering of the notes to the investing public and the materially false and misleading statements contained in the publicly disseminated offering materials operate as a fraud and deceit because they create the false impression that Toks' proposed tender offers are legitimate and that the "deals" will likely be consummated. In fact, consummation of any of these tender offer deals is impossible. As Toks and Ogunjobi know, or are reckless in not knowing, Toks does not have any of the resources, means, or assets to accomplish these tender offers.

5.    The internet website offering of the notes also contains a number of materially false and misleading statements and omissions claiming that Toks and Ogunjobi can pledge billions of dollars in securities for the notes, will issue trillions of dollars of stock, will increase the revenues of the target companies and wipe out their debt by billions of dollars, will enter into "deals" worth trillions of dollars, will have cash reserves of hundreds of billions of dollars, and will have billions of dollars of proceeds from the notes to pay back investors ten (10) times their investment.

6.    This is not Toks and Ogunjobi's first effort to advance their plan to acquire a number of the world's largest corporations. In August 2001, Toks filed a Registration Statement on Form SB-2 with the Commission, which it amended in September 2001. This registration statement set forth a similar plan to raise billions of dollars to fund tender offers for seven large corporations, including AT&T, GE and GM. The registration statement contained numerous material misstatements, omissions and misrepresentations of the same order and magnitude as in this action.

7.    The Commission instituted an Administrative Proceeding that resulted in a Decision by the Honorable Brenda P. Murray, Chief Administrative Law Judge of the Commission issuing a stop order suspending the effectiveness of Toks' registration statement on January 8, 2002. The Decision, which became a Final Order of the Commission, found the registration statement "goes beyond hyperbole with a series of assumptions that it presents as realistic future events" (Decision attached as Exhibit A *at* p. 8) and was materially false and misleading in several aspects (Exhibit A *at* pp. 6-9). Among other things, the Decision found that: (a) Toks had no audited financial statements as required to register the securities; (b) Toks is not a registered Delaware corporation as represented; (c) Toks had no Plan of Operation as

3

required to register the securities; and (d) because Toks has no assets, no revenues, no employees, and no products, "Toks has no reasonable basis to believe that it has the means to complete the tender offers that it has publicly announced in the registration statement." (Exhibit A *at* p. 9).

8.    The current offering of notes, which purports to be different from Toks' 2001 offering, pursues the same overall plan contained in the registration statement that the Commission stopped after an Administrative Hearing and Decision. This offering is an effort by defendants Toks and Ogunjobi to pursue the same fraudulent plan as before while attempting to avoid the registration requirements of the Securities Act of 1933 by offering fifty billion dollars ($50,000,000,000) in "notes" to the investing public to supposedly fund the various tender offers to the fifteen (15) or more target corporations.

9.    Defendants' conduct violates Sections 5, 17(a)(1) and 17(a)(3) of the Securities Act of 1933 [15 U.S.C. §§ 77e, 77q(a)(1) and 77q(a)(3)], Section 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. § 78n(e)] and Rules 14d-2(b) and 14e-8 [17 C.F.R. §§ 240.14d-2(b) and 240.14e-8] thereunder. Unless the Court enjoins defendants, their ongoing fraudulent and unregistered offering will continue and Toks and Ogunjobi will persist in engaging in conduct similar to that described in this Complaint.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act of 1933 [15 U.S.C. §§ 77t and 77v] and Sections 21(d), 21(e) and 27 of the Securities and Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

11.    The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and

78u(e)], to restrain and enjoin defendants preliminarily and permanently from engaging in the

acts, practices and transactions alleged.

12.    Venue lies in this Court pursuant to Section 22 of the Securities Act of 1933 [15

U.S.C. § 77v] and Section 27 of the Securities and Exchange Act of 1934 [15 U.S.C. § 78aa].

Defendants, directly or indirectly, made use of the means or instrumentality of interstate

commerce, or of the mails, or of a facility of a national securities exchange, in connection with

the acts, transactions, and practices alleged herein. Defendants are making their offering over

the internet's world wide web to persons in the District of Columbia, as well as elsewhere. The

note securities are required to be registered with the Commission at its headquarters in the

District of Columbia.

## DEFENDANTS

13.    Defendant Ogunjobi formed Toks as a Delaware corporation in 1996. The State

of Delaware voided Toks' corporate charter on March 1, 1998. On June 17, 1998, the State of

Delaware repealed Toks' corporate charter for failure to pay taxes. According to its internet

website offering materials, Toks has no assets, revenues or sales, and Ogunjobi is Toks' only

listed employee. Toks' address is listed on its internet website as P.O. Box 503, Malibu,

California 90265. Toks also claims to be located in the State of Hawaii.

14.    Ogunjobi, age 43, is listed on the Toks internet website as the founder, chairman

and chief executive officer of Toks. Upon information and belief, he resides in Los Angeles,

California.

## FACTS

### Toks' 2001 Offering

15.    On August 31, 2001, Toks filed a Registration Statement on Form SB-2,

subsequently amended on September 7, 2001, to raise one hundred thousand dollars ($100,000),

which it would then use to "arrange $10 billion in loan syndication or issue high yield bonds."

Toks sought to conduct all-stock "tender offers" for a number of the world's largest corporations,

including AT&T and GM. Staff from the Commission's Division of Corporation Finance

notified Toks in writing on October 3, 2001 that its initial registration statement was deficient in

numerous material respects.

16.    On October 9, 2001, Toks made a series of filings pursuant to Rule 425 of the

Securities Act indicating it planned to make almost identical tender offers for a number of these

same large corporations. Staff from the Division of Corporation Finance again indicated to

defendants Toks and Ogunjobi that their filings were materially deficient, but they refused to

correct the deficiencies or withdraw the registration statement.

17.    The Commission instituted an Administrative Proceeding that resulted in the

issuance of a stop order on January 8, 2002. Toks and Ogunjobi were notified of the proceeding.

In a telephone conference call before the hearing, they declined to participate in the hearing. The

stop order, which is now final, suspended the effectiveness of Toks' registration statement. The

Decision stopping the effectiveness of the registration statement found the statement to be

materially false and misleading because it: (a) failed to include audited financial statements for

Toks; (b) failed to disclose that Toks was not incorporated and that its corporate charter had

been repealed; (c) failed to include a required plan of operation and omitted material information

regarding how a corporation with no earnings expected to raise ten billion dollars

6

($10,000,000,000) or acquire securities worth two trillion dollars ($2,000,000,000,000) to

accomplish its tender offers or to register its shares; (d) failed to disclose that Ogunjobi intended

to purchase the entire twenty (20) shares of Toks stock covered by the registration statement; and

(e) Toks "has no reasonable basis to believe that it has the means to complete the tender offers

that it publicly announced in the registration statement."

## Toks' Ongoing Notes Offering

18.    From at least May 12, 2003, to the present, Toks has been conducting an

unregistered offering of up to fifty billion dollars ($50,000,000,000) in Toks notes at a minimum

of one hundred dollars ($100) per note. Defendants describe the notes as redeemable at Toks'

option for shares of Toks stock. The overall purpose of this offering appears to be to pay

Commission filing fees and to fund tender offers targeting a number of the world's largest

corporations, including AT&T, GE, GM and Microsoft.

19.    The notes, which are securities under the federal securities laws, are described in

the offering materials as: (1) having maturities of nine (9) months; (2) being unconditionally

guaranteed; and (3) bearing a fixed interest rate of thirteen percent (13%). All of the offering

materials are disseminated to the public on Toks' internet website at www.tspnotes.com, which

solicits investors to participate in this public offering.

20.    The note offering is false and deceptive in its entirety. Toks, a company with no

assets, sales or revenues; no financing or commitments from any banks, financiers, investment

firms, underwriters, clearing agents, or institutions; and a workforce of one, Mr. Ogunjobi, has

no ability or reasonable expectation to conduct tender offers for fifteen (15) corporations with a

total combined market capitalization in the trillions of dollars.

21.    The offering materials for the notes contain other materially false or misleading statements. The "prospectus" and its supplement prominently state that the notes are "Unconditionally Guaranteed" by Toks. Such a guarantee from an entity with no assets is deceptive and misleading. The "prospectus" states that shares of Toks common stock are traded on the Toronto, Boston, Cincinnati and Philadelphia exchanges. This statement is false. Moreover, the "prospectus" deceptively states that Toks stock will be listed on the New York Stock Exchange, when there is no possibility that Toks can meet the requirements for listing on the New York Stock Exchange, or any of the other listed exchanges.

22.    Defendants Toks and Ogunjobi make many extremely egregious false and misleading statements and omissions in the publicly disseminated offering materials on their internet website claiming that they: (a) are pledging five-hundred billion dollars ($500,000,000,000) in securities towards the notes;  (b) will sell almost three-hundred million dollars ($300,000,000,000) in assets;  (c) will buy back common shares in the open market at a share price of two hundred fifty dollars ($250);  (d) will issue almost ten trillion dollars ($10,000,000,000,000) in common shares to shareholders;  (e) will increase annual revenues of the target companies to at least seven-hundred billion dollars ($700,000,000,000) and have cash reserves or access to capital markets of over one-hundred billion dollars ($100,000,000,000);  (f) expect proceeds from the notes of at least forty-nine billion dollars ($49,000,000,000);  (g) have a deal worth ten trillion dollars ($10,000,000,000,000);  (h) will wipe out all outstanding debts of acquired companies of over two-hundred billion dollars ($200,000,000,000) by issuing Toks notes;  (i) will create jobs, a theme park, movie and television production facilities, auto plants, and DVD and CD manufacturing divisions in Hawaii;  (j) the securities will be registered,

8

publicly traded and bear thirteen percent (13%) interest, plus cash and stock dividends; and (k) will cause investors to gain a ten (10) times return on their investment.

23.    The offering is an effort by Toks and Ogunjobi to launch their tender offer plan without complying with the registration requirements of the Securities Act of 1933 and obtaining funds from unsophisticated investors who may be influenced by the misrepresentations and the allusions to God, Country and the downtrodden.  Defendants admit obtaining the Administrative Decision stopping Toks' registration statement from taking effect and admit trying to avoid registration of the offering in its attack on the integrity of the Administrative Law Judge and the Commission's hearing process.

24.    Defendants Toks and Ogunjobi continue to disseminate their string of grossly misleading promises and invented claims in order to solicit public investors to buy the worthless notes.

<u>CLAIMS FOR RELIEF</u>

<u>FIRST CLAIM</u>

**Toks and Ogunjobi Violated Section 17(a)(1) of the Securities Act**
**(Fraud in the Offer or Sale of Securities)**

25.    Paragraphs 1 through 24 are realleged and incorporated herein by reference.

26.    Defendants, from May 2003 to the present, directly or indirectly, in the offer or sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and/or by use of the mails, have and are employing devices, schemes, or artifices to defraud.

27.    As part of, and in and in furtherance of, this scheme, defendants, directly and indirectly, prepared, disseminated or used materials, including but not limited to an internet website, that contain untrue statements of material facts and which omit to state material facts

9

necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, including, but not limited to, the statements and omissions set forth in this Complaint.

28.    Defendants know, or are reckless in not knowing, that the statements they made are materially false and misleading.

29.    By reason of the foregoing, defendants have violated, and unless enjoined, will continue to violate, Section 17(a)(1) of the Securities Act of 1933 [15 U.S.C. §§ 77q(a)(1)].

## SECOND CLAIM

### Toks and Ogunjobi Violated Section 17(a)(3) of the Securities Act
### (Fraud in the Offer or Sale of Securities)

30.    Paragraphs 1 through 27 are realleged and incorporated herein by reference.

31.    Defendants, from May 2003 to the present, directly or indirectly, in the offer or sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and/or by use of the mails, have and are engaging in transactions, practices, or courses of business which operate or would operate as a fraud or deceit.

32.    As part of, and in and in furtherance of, this scheme, defendants, directly and indirectly, prepared, disseminated or used materials, including but not limited to an internet website, that contain untrue statements of material facts and which omit to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, including, but not limited to, the statements and omissions set forth in this Complaint.

33.    By reason of the foregoing, defendants have violated, and unless enjoined, will continue to violate, Section 17(a)(3) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(3)].

10

## THIRD CLAIM

### Toks and Ogunjobi Violated Section 14(e) of the Exchange Act
### And Exchange Act Rules 14e-8 and 14d-2(b)
### (Fraud and Filing Violations in Connection With a Tender Offer)

34.    Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35.    Defendants, from at least May 2003 through the present, made, and are making, materially false and misleading statements and omissions in their offering materials in connection with tender offers for at least fifteen (15) major target corporations. Defendants know, or are reckless in not knowing, that the statements they made, and are making, or failed, and are failing, to make, are materially false and misleading.

36.    Defendants, from at least May 2003 through the present, publicly announced through their offering materials that they plan to make tender offers for at least fifteen (15) major corporations targeted for takeover, without having any reasonable belief that they have the means to purchase securities to complete the offers. Neither defendant has the assets, means, financing, or resources required to purchase the securities necessary to complete the tender offers. They have no reasonable belief that they can obtain the assets, means, financing, or resources to purchase the securities to complete the offers.

37.    Defendants made, and are making, untrue statements of material facts or omitted, and are omitting, to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or engaged, and are engaging, in fraudulent, deceptive, or manipulative acts or practices, in connection with tender offers, in violation of Section 14(e) of the Securities Exchange Act of 1934[15 U.S.C. § 78n(e)].

38.    Defendants publicly announced that they plan to make tender offers that have not yet been commenced and defendants do not have any reasonable belief that they have the means

11

to purchase securities to complete the offers, in violation of Rule 14e-8 under the Securities

Exchange Act of 1934 [17 C.F.R. § 240.14e-8].

39.     Also Defendants made pre-commencement written communications and public

announcements to the investing public in connection with a tender offer without filing the

communications with the Commission, providing the communications to the subject companies,

and including the required information, legend and advisements to investors, in violation of Rule

14d-2(b) under the Securities Exchange Act of 1934 [17 C.F.R. § 240.14d-2(b)].

40.     By reason of the foregoing, defendants violated and, unless enjoined, will

continue to violate Section 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. § 78n(e)]

and Rules 14e-8 and 14d-2(b) thereunder [17 C.F.R. §§ 240.14e-8 and 240.14d-2(b)].

## FOURTH CLAIM

### Violations of Section 5 of the Securities Act
### (Violations of the Registration Provisions)

41.     Paragraphs 1 through 40 are realleged and incorporated herein by reference.

42.     The notes offered by defendants are securities within the meaning of Section

2(a)(1) of the Securities Act of 1933 [15 U.S.C. § 77b(a)(1)].

43.     From at least May 2003 to the present, defendants have been offering to sell the

notes and have been, directly or indirectly, making use of the means and instruments of

transportation and communication in interstate commerce and/or of the mails to offer to sell the

notes and to offer to buy the securities of at least fifteen (15) major targeted corporations through

the use or medium of a prospectus and communications on the internet's world wide web

without filing with the Commission or having an effective registration statement and without the

prospectuses meeting the requirements of Section 10 of the Securities Act of 1933 [ 15 U.S.C. §

77j], all in violation of Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e].

44.     Defendants offered their securities to the public through a general solicitation of investors. Defendants have not filed a registration statement with the Commission and no registration statement is in effect with respect to the notes. No exemption to registration is applicable to the notes. The notes are not exempt securities.

45.     By reason of the foregoing, defendants violated and, unless enjoined, will continue to violate Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court grant a Preliminary and Permanent Injunction:

### I.

Preliminarily and permanently restrain and enjoin defendants from violating, directly or indirectly, Sections 5 and 17(a)(1) and 17(a)(3) of the Securities Act of 1933 [15 U.S.C. §§ 77e, 77q(a)(1) and 77q(a)(3)], and Section 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b)] and Rules 14d-2(b) and 14e-8 [17 C.F.R. §§ 240.14d-2(b) and 240.14e-8] thereunder;

### II.

Preliminarily and permanently restrain and enjoin defendants from participating in the sale of any security unless a registration statement is in effect or offering to sell or buy any security unless a registration statement has been filed;

### III.

Order defendants to pay a civil penalty pursuant to Section 20(d) of the Securities Act of 1933 [15 U.S.C. § 77t(d)] and Section 21(d) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)];

### IV.

Enter an order directing each defendant to repatriate and disgorge their ill-gotten gains and profits from the conduct stated in this Complaint, plus prejudgment interest;

### V.

Enter an order prohibiting defendants from accepting funds from investors in connection with the offering described in this Complaint;

### VI.

Enter an order requiring each defendant to provide to the Commission an accounting, by persons or entities not unacceptable to the Commission, to determine the full amount of the monies received as a result of their conduct stated in this Complaint;

### VII.

Enter an order expediting discovery and barring defendants from destroying any documents that relate in any way to any matters alleged herein;

### VIII.

Retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that the Court may enter, or to entertain any suitable application or motion for additional relief within the jurisdiction of the Court; and

14

## IX.

Grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Carl A. Tibbetts (Trial Counsel) (CT-3248)

\# 23 1139

Antonia Chion
Christopher R. Conte
Jeffrey P. Weiss
Joseph F. Griffin

Attorneys for Plaintiff
United States Securities and Exchange Commission
450 Fifth Street, NW, Stop 9-11
Washington, DC 20549-0911
(202) 942-4817 (Tibbetts)
Facsimile (202) 942-9581
Electronic Mail: TibbettsC@SEC.Gov

This 25 day of August, 2003, at Washington, District of Columbia.

# EXHIBIT C

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, 450 Fifth Street, N.W., Washington, DC 20549-0911, <br> *Plaintiff,* <br> v. <br> TOKS, INC., and ADE O. OGUNJOBI, <br> *Defendants* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

1:03CV01787 (PLF)

# FILED

MAR 2 5 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## FINAL JUDGMENT GRANTING PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

**WHEREAS,** Plaintiff, United States Securities and Exchange Commission, has applied for a Final Judgment granting a Permanent Injunction and Other Equitable Relief:

**WHEREAS,** on January 20, 2004, the Court ordered defendants Toks, Inc., and Ade O. Ogunjobi to respond to the Commission's motion for injunctive relief on or before February 17, 2004, or the Commission's motion could be deemed conceded and the relief requested by the Commission granted pursuant to Local Civil Rule 7.1;

**WHEREAS,** defendants Toks, Inc., and Ade O. Ogunjobi did not respond to the Commission's motion for injunctive relief as ordered by the Court;

**WHEREAS,** the Court entered the Commission's proposed Order Granting Preliminary Injunction and Other Equitable Relief on March 10, 2004;

**WHEREAS,** the Court has jurisdiction over the subject matter of this action and over the defendants Toks, Inc., and Ade O. Ogunjobi and venue properly lies in this District;



WHEREAS, defendants Toks and Ogunjobi are offering "Toks, Inc. Secured
Promissory Notes" (Notes) through the Toks internet website at www.tspnotes.com, with
the stated purpose of raising between one billion dollars ($1,000,000,000) and ten billion
dollars ($10,000,000,000) to pay Commission filing fees claimed to be at least four
million dollars ($4,000,000,000) and to finance tender offer deals for the stock of at least
fifteen (15) of the world's largest corporations including AOL Time Warner, Inc., AT&T
Corporation, AT&T Wireless Services, Inc., Hughes Electronics Corporation, Marriott
International, Inc., Comcast Corporation, General Electric Company, General Motors
Corporation, Microsoft Corporation, Fox Entertainment Group, Inc., News Corporation,
SBC Communications, Tribune Company, Vivendi Universal SA, and Vodaphone
Group, which are targets of the touted tender offer deals;

WHEREAS, defendants claim the tender offers will require at least five trillion
dollars ($5,000,000,000,000) in stock;

WHEREAS, defendants admit to having no assets, no sales, no revenues, no
employees, and no stable office;

WHEREAS, defendants Toks and Ogunjobi have no commitments from any
banks, investment firms, underwriters, institutions, clearing firms, attorneys, or
financiers;

2

**WHEREAS,** defendant Toks has not registered the offering of the Notes with the Commission despite admitting that: (i) Toks is a public entity offering the Notes to the investing public in a general solicitation for "shareholders"; (ii) the Notes are redeemable by Toks for shares at its option; (iii) the Notes will be exchanged for publicly traded stock within nine (9) months and before the "deals" are closed; and (iv) Toks is issuing stock to shareholders;

**WHEREAS,** defendants Toks' and *Ogunjobi's offering of the Notes does not* qualify for any exemptions from registration, and the Notes are not exempt securities under the Federal securities laws;

**WHEREAS,** defendants Toks and Ogunjobi could not have a reasonable belief that they have the means to purchase at least five trillion dollars ($5,000,000,000,000) of stock to complete tender offers for fifteen (15) or more of the world's largest companies;

**WHEREAS,** defendants Toks' and Ogunjobi's offering of the Notes to the investing public and the materially false and misleading statements contained in the publicly disseminated offering materials operate as a fraud because they create the materially false and misleading impression that Toks' proposed tender offers are legitimate and that the "deals" will likely be consummated, when the consummation of any of these tender offer deals is impossible;

**WHEREAS,** defendants Toks and Ogunjobi know, or are reckless in not knowing, that Toks does not have any of the resources, means, or assets to accomplish the promised tender offers;

3

**WHEREAS,** the offering of the Notes also contains a number of materially false or misleading statements and omissions claiming that defendants Toks and Ogunjobi can pledge billions of dollars in securities for the Notes, will issue trillions of dollars of stock, will increase revenues for the target companies and wipe out their debt by billions of dollars, will enter into "deals" worth trillions of dollars, will have cash reserves of hundreds of billions of dollars, and will have billions of dollars of proceeds from the Notes to pay back investors ten (10) times their investment;

**NOW, THEREFORE:**

I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that defendants Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact, successors-in-interest, and assigns, and all those persons in active concert or participation who receive actual notice of this Final Judgment by personal service or otherwise, and each of them, be and hereby are permanently restrained and enjoined from, directly or indirectly, through the use of any means or instrumentality of transportation or communication in interstate commerce or of the mails, or of the facilities of a national securities exchange:

(1) employing any device, scheme, or artifice to defraud; or

(2) engaging in any transaction, act, practice, or course of business which

operates or would operate as a fraud or deceit upon the purchaser,

in connection with the offer or sale of any security, in violation of Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

4

## II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendants

Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact,

successors-in-interest, and assigns, and all those persons in active concert or participation

who receive actual notice of this Final Judgment by personal service or otherwise, and

each of them, be and hereby are permanently restrained and enjoined from, directly or

indirectly, making use of any means or instruments of transportation or communication in

interstate commerce or of the mails:

(1)  to sell any security through the use or medium of a prospectus or otherwise, or

to carry or cause to be carried through the mails or in interstate commerce any security for

the purpose of sale or for delivery after sale, unless a registration statement is in effect as to

the security;

(2)  (i) to transmit any prospectus relating to any security with respect to which a

registration statement has been filed, unless the prospectus meets the requirements of

Section 10 of the Securities Act of 1933 [15 U.S.C. § 77j], or (ii) to carry or cause to be

carried through the mails or in interstate commerce for the purpose of sale or for delivery

after sale any such security unless accompanied or preceded by a prospectus that meets the

requirements of Section 10(a) of the Securities Act  [15 U.S.C. § 77j(a)]; or

(3)  to offer to sell or offer to buy  through the use or medium of any prospectus or

otherwise any security unless a registration statement at to the security has been filed or

while the registration statement is subject of a refusal order or stop order or any public

proceeding or examination under Section 8 of the Securities Act of 1933 [15 U.S.C. § 77h],

in violation of Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e].

## III.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants
Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact,
successors-in-interest, and assigns, and all those persons in active concert or participation
who receive actual notice of this Final Judgment by personal service or otherwise, and
each of them, be and hereby are permanently restrained and enjoined from, directly or
indirectly, participating in any way in the sale of any security while acting as, on behalf
of, or in association with, an issuer, underwriter, broker, or dealer involved in such sale,
unless a registration statement is in effect pursuant to the Securities Act of 1933 [15
U.S.C. § 77a *et seq.*] as to the security; or participating in any way in the offer to sell or
the offer to buy any security while acting as, on behalf of, or in association with, an
issuer, underwriter, broker, or dealer involved in such offer, unless a registration has been
filed pursuant to the Securities Act of 1933 [15 U.S.C. § 77a *et seq.*] as to the security;

## IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants
Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact,
successors-in-interest, and assigns, and all those persons in active concert or participation
who receive actual notice of this Final Judgment by personal service or otherwise, and
each of them, be and hereby are permanently restrained and enjoined from: (i) making any
untrue statement of a material fact or omitting to state any material fact necessary in order to
make the statements made, light of the circumstances under which they are made, not
misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in
connection with any tender offer, request or invitation for tenders, or any solicitation of

security holders in opposition to or in favor of any such offer, request, or invitation, in violation of Section 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. § 78n(e)] and (ii) publicly announcing that Toks' and Ogunjobi's plan to make a tender offer, that has not yet been commenced, without having a reasonable belief that they will have the means to purchase securities to complete the offer in violation of Rule 14e-8 under the Exchange Act [17 C.F.R. § 240.14e-8].

## V.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact, successors-in-interest, and assigns, and all those persons in active concert or participation who receive actual notice of this Final Judgment by personal service or otherwise, and each of them, be and hereby are permanently restrained and enjoined from making written communications relating to a tender offer, including and after the first public announcement of the tender offer, without:  (i) filing the communications with the Commission;  (ii) delivering the communications to the subject company; and  (iii) including the information, legend, and advisement, as required by Rule 14d-2(b) under the Securities Exchange Act of 1934 [17 C.F.R. § 240.14d-2(b)].

## VI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants Toks, Inc., and Ade O. Ogunjobi and their agents, servants, employees, attorneys-in-fact, successors-in-interest, and assigns, and all those persons in active concert or participation with him who receive actual notice of this Final Judgment by personal service or

otherwise, and each of them, are prohibited from accepting funds from any investor in connection with the offering of the Notes.

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court will retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that the Court may enter, or to entertain any suitable application or motion for additional relief within the jurisdiction of the Court.

## IX.

There being no just reason for delay, the Court hereby directs the Clerk, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Final Judgment forthwith.

IT IS SO ORDERED:

PAUL L. FRIEDMAN
United States District Judge
for the District of Columbia

Entered this 24th day of March, 2004.

Requested by:

Carl A. Tibbetts

Carl A. Tibbetts,
Assistant Chief Litigation Counsel
Antonia Chion, Associate Director
Christopher R. Conte, Assistant Director
Jeffrey P. Weiss, Deputy Assistant Director
Joseph F. Griffin, Senior Counsel
**U. S. Securities and Exchange Commission**
Telephone: (202) 942-4817
Facsimile: (202) 942-9581
450 Fifth Street, N.W., Stop 9-11
Washington, D.C. 20549-0911

8

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1997 WL 401669 (S.D.N.Y.)
(Cite as: 1997 WL 401669 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
ERDMAN TECHNOLOGIES CORPORATION,
Plaintiff,
v.
US SPRINT COMMUNICATIONS COMPANY
L.P., Defendant.
No. 91 CIV. 7602(PKL).

July 16, 1997.

Richard C. Bartel P.O. Box 70805 Chevy Chase,
Maryland 20813

Stephen A. Weingrad, Esq. Weingrad & Weingrad,
PC 350 Fifth Avenue, Suite 7720 New York, New
York 10118

Charles T. Lee, Esq.John R. Marvin, Esq. Paul,
Hastings, Janofsky & Walker 399 Park Avenue
New York, New York 10022

*MEMORANDUM ORDER*

LEISURE, District Judge.

*1 This action involves plaintiff's acquisition of
four toll-free telephone numbers from defendant, a
common carrier that provides long-distance tele-
communications services pursuant to tariffs on file
with the Federal Communications Commission (the
"FCC") and various state public utility commis-
sions. Plaintiff asserts that defendant wrongfully
terminated the phone numbers in September of
1991. By Memorandum Order dated April 9, 1992,
the Court granted defendant's motion to stay this
action under the doctrine of primary jurisdiction,
pending the FCC's resolution of the dispositive is-
sues in this case. This action was placed on the Sus-
pense Docket of the Court on April 9, 1992,
pending a final determination by the FCC.

By letter dated September 24, 1996 and signed by
plaintiff's then-attorney Stephen A. Weingrad, Esq.,
plaintiff informed the Court that the case was dis-
missed by the FCC and that the "file" was closed.
Based on plaintiff's representations, the Court dis-
missed this action by Order dated September 26,
1996. On January 8, 1997, Richard C. Bartel
("Bartel"), appearing *pro se,* moved to intervene in
this action and to remove this case from the Sus-
pense Docket. By Order dated January 29, 1997,
the Court denied the motion because the action had
been dismissed.

Bartel moves the Court to reconsider its January 29,
1997 order denying his motion to intervene be-
cause, he contends, plaintiff's September 24, 1996
letter incorrectly informed the Court that the action
pending before the FCC had been dismissed. In
support of this contention, Bartel submits a copy of
a facsimile letter signed by Walter Steimel, Jr.,
Esq., plaintiff's attorney before the FCC, which
states that plaintiff has moved for reconsideration
before the FCC. In addition, the Court has received
a letter dated March 9, 1997, from plaintiff's former
attorney Stephen A. Weingrad, Esq., which states
that:

I was informed by my client last year that [this]
case had been dismissed by the [FCC]. I have now
been informed that his attorney Walter Steimel Jr.
has filed an appeal. In the interim your Honor has
entered an order dismissing the case which had
been previously ... marked in suspension. We
would ask your [H]onor to reconsider the dismissal
order and reverse it and place the case on the sus-
pension calendar. We are sorry for any inconveni-
ence that it may have caused, I was not aware [sic]
nor consulted concerning the appeal.

For the reasons stated below, Bartel's motion for re-
consideration is denied.

DISCUSSION

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                      Page 2
Not Reported in F.Supp., 1997 WL 401669 (S.D.N.Y.)
(Cite as: 1997 WL 401669 (S.D.N.Y.))

As stated in the January 29, 1997 order, this action had been dismissed at the time Bartel filed the motion to intervene. Accordingly, the Court denied the motion to intervene. Bartel's claim that the action was improperly dismissed does not lead the Court to a different conclusion. Plaintiff has not formally moved to have the action reinstated. Unless and until the action is reinstated, the Court can not grant the motion to intervene.

*2 Even if the action had been pending at the time the motion to intervene was filed, the Court would have denied the motion on the merits because Bartel failed to satisfy the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure. First, he failed to submit a motion stating the grounds for intervention "accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). This deficiency alone would have been sufficient to deny the motion. *See Abramson v. Pennwood Inv. Corp.,* 392 F.2d 759, 761-62 (2d Cir.1968) (affirming denial of motion to intervene because appellant failed to comply with formal requirements of Rule 24(c)); *Rosgoscirc v. Circus Show Corp.,* Nos. 92 Civ. 8498, 93 Civ. 1304, 1993 WL 277333, at *10 (S.D.N.Y. July 16, 1993) (dismissing motion to intervene because movant failed to comply with formal requirements of Rule 24(c)); *see also Hispanic Soc'y of the New York City Police Dep't Inc. v. New York City Police Dep't,* 806 F.2d 1147, 1154 (2d Cir.1986) ("The need for formal intervention is thus as great as the need for named plaintiffs or defendants to state a well-pleaded claim or defense."), *aff'd sub nom. Marino v. Ortiz,* 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988).

Second, and more importantly, Bartel's brief and vague allegations fall well short of satisfying either the Rule 24( a) **standard** for **intervention** as of right or the more lenient **Rule 24( b) standard** for permissive **intervention**. The Court of Appeals for the Second Circuit has instructed that:

In order to intervene as of right under Fed.R.Civ.P.

24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *See United States v. State of New York,* 820 F.2d 554, 556 (2d Cir.1987). "Failure to satisfy any one of these requirements is sufficient grounds to deny the application." *Id.* (citations omitted).

* * *

Under Rule 24( b)(2), an applicant may be permitted to **intervene** in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2).

*New York News, Inc. v. Kheel,* 972 F.2d 482, 485, 487 (2d Cir.1992); *accord United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70, 73 (2d Cir.1994). In his moving papers, Bartel merely claimed, without elaboration, that he "has financial and policy interest(s) in the issues raised by this Court, insofar as the resolution may bind the Defendant or other carriers, code administrators, or RespOrgs as to others, or may bind the FCC in future cases, including in the Southern District of New York" and that he "intends to implement phone number marketing access from the Southern District and has equitable interest in entities doing business there." Mot. Intervention. These allegations are woefully inadequate.

## CONCLUSION

*3 For the reasons stated above, the motion for reconsideration is HEREBY DENIED.

SO ORDERED.

S.D.N.Y.,1997.
Erdman Technologies Corp. v. US Sprint Communications Co., L.P.
Not Reported in F.Supp., 1997 WL 401669 (S.D.N.Y.)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                      Page 3
Not Reported in F.Supp., 1997 WL 401669 (S.D.N.Y.)
**(Cite as: 1997 WL 401669 (S.D.N.Y.))**

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan, Esq.
Email:  dsheehan@bakerlaw.com
Marc Hirschfield, Esq.
Email:  mhirschfield@bakerlaw.com
Keith R. Murphy, Esq.
Email:  kmurphy@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Applicant,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that on May 20, 2009, I served true copies of the **Objection of Trustee Irving H. Picard to Motion of Ade O. Ogunjobi and TOKS, Inc., et al. For Intervention Pursuant to Fed.R.Civ.P. 24** upon the interested parties who receive electronic service through ECF, by emailing the interested parties true and correct copies via electronic transmission to the email addresses designated for delivery and/or by placing true and correct copies thereof in sealed packages designated for regular U.S. Mail to those parties as set forth on the attached Schedule A.

Dated: New York, New York
       May 20, 2009                         s/Nikki M. Landrio
                                     NIKKI M. LANDRIO

## SCHEDULE A

Internal Revenue Service
District Director
290 Broadway, 5th Floor
New York, New York 10008

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 21126
Philadelphia, PA  19114

U.S. Department of Justice, Tax Division
Box 55
Ben Franklin Station
Washington, DC 20044

Ben S. Bernanke
Federal Reserve Board
20th Street and Constitution Avenue N.W.
Washington, DC 20551

United States Securities and Exchange Commission
SEC Headquarters
100 F Street NE
Washington, DC 20549

**Securities Investor Protection Corporation**

Kevin Bell – kbell@sipc.org
Josephine Wang – jwang@sipc.org

**Securities and Exchange Commission**

Alistaire Bambach – bambacha@sec.gov
Alexander Mircea Vasilescu – vasilescua@sec.gov
Terri Swanson – swansont@sec.gov
Israel E. Friedman – friedmani@sec.gov
Preethi Krishnamurthy – krishnamurthyp@sec.gov

**United States Attorney for SDNY**

Marc Litt – marc.litt@usdoj.gov
Lisa Baroni – lisa.baroni@usdoj.gov

**Notices of Appearance**

Service via Electronic Notification through ECF Filing