David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201

Attorneys for Irving H. Picard, Esq.,
Trustee for the SIPA Liquidation of
Bernard L. Madoff Investment Securities
LLC

**Hearing Date and Time:** July 14, 2009 at 10:00 a.m.
**Objection Deadline:** July 10, 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN
AGREEMENT BY AND AMONG THE TRUSTEE, NETJETS SALES, INC.,
NETJETS AVIATION, INC. AND NETJETS SERVICES, INC.**

300015577

TO:   THE HONORABLE BURTON R. LIFLAND
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and as trustee for the estate of Bernard L. Madoff ("Madoff") individually, by and through his undersigned counsel, and after consultation with Alan Nisselson, Esq., the Chapter 7 trustee for Madoff, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking approval of an agreement (the "Agreement")[1] by and among the Trustee on the one hand and NETJETS Sales, Inc. ("NJS"), NETJETS Aviation, Inc. ("NJA") and NETJETS Services, Inc. ("Services" and together with NJS and NJA, the "NJ Companies") on the other hand and, in support thereof, the Trustee respectfully represents as follows:

## BACKGROUND

1.  On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Bernard L. Madoff and the

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

[2] Section 78*lll*(7)(B) of the Securities investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA") states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

2

Debtor (together, the "Defendants") (Case No. 08 CV 10791). The complaint alleged that the Defendants engaged in fraud through investment advisory activities of the Debtor.

2.   On December 12, 2008, the Honorable Louis L. Stanton of the United States District Court for the Southern District of New York entered an order which appointed Lee S. Richards, Esq. as receiver (the "Receiver").

3.   On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4.   On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(a)   appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA;

(b)   appointed Baker & Hostetler, LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(c)   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5.   On December 18, 2008, the District Court entered the Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants (the "Preliminary Injunction Order"). Among other things, the Preliminary Injunction Order clarified that the Receiver is only appointed as to assets concerning the London entity, Madoff Securities International Ltd.

6.   At a plea hearing (the "Plea Hearing") on March 12, 2009 in the Criminal Action, Bernard Madoff pled guilty to an 11-count criminal information, which counts

3

included securities fraud, money laundering and theft and embezzlement, filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.)

7. In the course of his investigation into the activities and assets of BLMIS and Madoff, the Trustee discovered that a related corporation, BLM Air Charter LLC ("BLM Air"), holds, among other things, an undivided interest in an aircraft.

8. BLM Air was organized with an effective date of January 12, 2001. Initially, the sole member of BLM Air was Madoff. On January 30, 2001, pursuant to an Assignment Agreement, Madoff transferred ownership of "all of the economic interest" in BLM Air to BLMIS and appears to have retained certain non-economic interest. Accordingly, the Trustee is bringing this motion, on behalf of the BLMIS and Madoff estates, as the owner of BLM Air.

## THE AIRCRAFT

9. Prior to the Filing Date, BLM Air and NJS entered into a Citation X Purchase Agreement (the "Purchase Agreement"), dated February 6, 2001, for the purchase of a twelve and one-half percent (12.5%) undivided interest (the "Interest") in Citation X aircraft serial number 750-0083 (the "Aircraft"). The purchase price for BLM Air's share of the Aircraft was $2,100,000.00. At the time of the purchase, BLM Air was merely a holding company for aircraft interests and its only sources of funds were BLMIS or Madoff.

10. BLM Air and NJA entered into a Citation X Management Agreement (the "Management Agreement"), dated February 6, 2001, with respect to the Aircraft. This agreement was revised and renewed through September 1, 2009.

11. BLM Air and Services entered into a Citation Master Interchange Agreement (the "Master Interchange Agreement"), dated February 6, 2001, with respect to the Aircraft.

12. Finally, BLM Air and other owners of undivided interests in the Aircraft entered into a Citation X Owners Agreement (the "Owners Agreement"), dated February 6, 2001, relating to certain agreements among themselves.

## THE AGREEMENT

13. After considering other options, the Trustee has determined that the most appropriate manner to maximize value with respect to the Interest is to enter into a settlement with the NJ Companies, pursuant to which the NJ Companies agree to repurchase the Interest.

14. The NJ Companies have offered to repurchase the Interest at a value equal to one hundred percent of the fair market value of the remaining Interest. This determination of fair value was made in accordance with the Purchase Agreement. Once it was established that the Aircraft was in the condition prescribed by the Management Agreement and that the Aircraft's engines had been properly maintained, the NJ Companies consulted brokers and industry publications similar to a "bluebook" to determine the fair market value of the Aircraft. Given that no other potential purchaser would be willing to pay more than the market value for the Interest, there is no advantage to be gained from attempting to sell the Interest to any purchaser other than the NJ Companies.

15. Accordingly, the Trustee has entered into the Citation X Termination and Repurchase Agreement (the "Repurchase Agreement") with the NJ Companies. A brief description of the terms and conditions of the Repurchase Agreement follows (as stated, the

5

form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms).

16. The Repurchase Agreement which is subject to approval by this Court, provides that:

(i) the amount of $752,963 (the agreed upon market value) will be paid to the Trustee by the NJ Companies, representing the final obligation between the parties;

(ii) in consideration of this amount the Trustee and the NJ Companies agree to refrain from making any further claims against each other, including preference claims or claims for contribution, through the bankruptcy process or otherwise; and

(iii) the parties shall have no further obligation to each other with respect to the Purchase Agreement, the Management Agreement, the Master Interchange Agreement, the Owners Agreement or any other agreements relating to the Interest.

## RELIEF REQUESTED

17. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

I. The Agreement is Fair, Equitable and in
Best Interests Of The Debtor, its Estate and Customers

18. Bankruptcy Rule 9019(a) provides, in pertinent part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

6

300015577

Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable and in the best interests of a debtor's estate. In re Ionosphere Clubs, Inc., 156 BR 414, 426 (S.D.N.Y. 1993), accord, 17 F.3d 600 (2d Cir. 1994) (citing Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

19. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied sub nom. Cosoff v. Roman, 464 U.S. 822 (1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied sub nom. Benson v. Newman, 409 U.S. 1039 (1972)); accord Nellie v. Shugrue, 165 BR 115, 121-22 (S.D.N.Y. 1994); In re Ionosphere Clubs, 156 BR at 426; In re Purified Down Prods. Corp., 150 BR 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

20. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

  (i)  the probability of success in the litigation;

  (ii)  the difficulties associated with collection;

  (iii)  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

7

(iv) the paramount interests of the creditors.

Nellis v. Shugrue, 165 B.R. at 122 (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992), cert. dismissed, 506 U.S. 1088 (1993)).

21. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. See In re Purofied Down Prods., 150 B.R. at 522; In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. Nellis v. Shugrue, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505 (quoting In re Blair, 538 F.2d 849, 851 (9th Cir. 1976)).

22. The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness and, accordingly, the Agreement should be approved by this Court. The NJ Companies have agreed to pay fair market value for the Interest. Given that no other potential purchaser would pay more than market value, there is no advantage to attempting to sell the Interest to a third party. The Agreement allows the Trustee to avoid having to participate in what would likely be a futile sales process. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶ 4. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.")

23. In addition, as stated above, the Management Agreement terminates on September 1, 2009. As such, any delay in selling the Interest reduces the possible recovery for the estate. Finally, the Agreement resolves all issues regarding any claims by the NJ Companies and Trustee without the need for protracted, costly, and uncertain litigation. Litigating with the NJ Companies could be expensive and would require a significant

8

commitment of time by the various professionals involved in the matter and would increase the administrative burden on the estate. (Picard Affidavit ¶ 5.)

24. The Trustee submits that the Agreement should be approved (a) because the repurchase price represents the fair value of the Interest and these funds that will benefit the BLMIS and Madoff estates and customers of BLMIS, and (b) to avoid potentially burdensome and expensive litigation. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

### Notice

25. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) all known creditors of BLMIS and Madoff. The Trustee shall also serve, by way of the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case. The Trustee submits that no other or further notice need be given. and respectfully requests that the Court find that such notice is proper and sufficient.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: New York, New York
       June 19, 2009

Respectfully submitted,

/s/ Marc Hirschfield
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*

300015577