UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

In re:

BERNARD L. MADOFF,

          Debtor.

---

**AFFIDAVIT IN SUPPORT OF STIPULATIONS AND ORDERS PURSUANT TO SECTIONS 105(a) AND 365(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR THE REJECTION OF UNEXPIRED LEASES**

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF NEW YORK)

Irving H. Picard, being duly sworn, hereby attests as follows:

    1.    I am the trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and trustee for the estate of Bernard L. Madoff, individually ("Madoff" and together with BLMIS, the "Debtors"). I am familiar with the affairs of the Debtors. I respectfully submit this Affidavit in support of the Stipulations and Orders Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 for the rejection of two unexpired real property leases (the "Stipulations").

2.    I make this Affidavit based upon my own personal knowledge or upon information that I believe to be true.

3.    All capitalized terms not defined herein have the meaning ascribed to them in the Stipulations.

4.    On June 19, 2009, my counsel filed with this Court notices of presentment seeking the entry of (i) a Stipulation and Order Pursuant to Section 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 for the Rejection of an Unexpired Lease relating to real property located at 885 Third Avenue, New York, New York (the "885 Lease"), and (ii) a Stipulation and Order Pursuant to Section 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 for the Rejection of an Unexpired Leases relating to real property located at 75-20 Astoria Boulevard, Queens, New York (the "Bulova Lease," and together with the 885 Lease, the "Leases").

5.    I believe that the rejection of the Leases is appropriate and will confer a benefit on the estate.  I further believe that it would be impossible to assume and assign either of the Leases in a manner that is beneficial to the estate for several reasons.

6.    Prior to making the decision to seek authority to reject the 885 Lease, I, through my counsel and business advisors, sought the advice of real estate professionals who informed me that it would be difficult to assign the 885 Lease because the base rent plus escalations payable under the 885 Lease is above-market for the area.  Given that the 885 Lease expires in January of 2012, it appeared that it would have been extremely difficult to locate a party willing to take on the 885 Lease for a short period, especially at the above-market lease rates.

7.    The 885 Lease was a single lease for the 17th, 18th and 19th floors of the premises located at 885 Third Avenue.  For years, a portion of the 17th floor has been subleased to an

independent third party with the consent of the landlord. This third party has made arrangements with the landlord to remain in the subletted premises. BLMIS occupied the balance of the 17th floor space, which is currently being utilized by the Federal Bureau of Investigation (the "FBI") in its ongoing investigation into the fraud perpetrated by Madoff. The FBI has advised me that they will require access to the space until, at least, approximately July of 2010. As such, any assignment of the 885 Lease would have to exclude the 17th floor.

8.    In addition, as part of the sale transaction entered into with Castor Pollux Securities, Inc. (now doing business as Surge Trading Inc.) ("CP") for the purchase of the market making portion of BLMIS, CP has, with the Trustee's approval, entered into an agreement with the landlord of the premises to operate the market making business from the 18th floor. Part of the consideration for the purchase of the market making business was an earn-out, pursuant to which the Debtors' estate receives a portion of net trading revenue earned each quarter, through December 13, 2013, up to a maximum of \$24.5 million dollars. Accordingly, allowing CP to utilize the 18th floor, which allows it to commence operations as quickly as possible, is in the best interesthir of the estate.

9.    An agreement was reached between the Trustee and the landlord with respect to the 19th floor, pursuant to which the 19th floor will be returned to the landlord. The Trustee will continue to have exclusive access to the 19th floor for a two month period commencing July 1, 2009 to wind up its affairs at the premises and will continue to pay gross rent for a six month period.

10.    The analysis with respect to the Bulova Lease is similar. The location that is the subject of the Bulova Lease is a small back-up facility that CP required in order to get its business up and running expeditiously. As with the 885 Lease, I was advised, through my

counsel and business advisors that the rent payable pursuant to the Bulova Lease was above current market rates. In addition, the Bulova Lease had been extended for a ten year period in April of 2007 and as such, it is unlikely that another lessee would be willing to take on an over-market lease with almost eight years remaining in the term in the currently depressed real estate market. Accordingly, rejecting the Bulova Lease will provide a benefit to the Debtors' estate.

11.    In sum, I respectfully submit that the Stipulations should be approved to maximize the benefits to the Debtors' estate.

IRVING H. PICARD

Subscribed and Sworn to before me
this  1  st day of July, 2009

Notary Public

DAMIAN SMITH
Notary Public, State of New York
No. 01SM6169097
Qualified in New York County
Commission Expires June 18, 2011