UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**STIPULATION AND ORDER PURSUANT TO SECTIONS 105(a) AND 365(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR REJECTION OF
<u>UNEXPIRED LEASE (885 THIRD AVENUE)</u>**

WHEREAS, on December 11, 2008, the Securities and Exchange Commission ("SEC") filed a Complaint in the United States District Court for the Southern District of New York against defendants Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC ("Debtor") (No. 08 CV 10791); and

WHEREAS, on December 15, 2008, Judge Stanton entered an order pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.*, as amended ("SIPA"),[1] which, in pertinent part:

(a) Appointed Irving H. Picard, Esq. as trustee ("Trustee") for the liquidation of the business of the Debtor, pursuant to section 78eee(b)(3) of SIPA;

---
[1] For convenience, future reference to SIPA will not include "15 U.S.C."

(b) Appointed Baker & Hostetler, LLP as counsel to the Trustee ("Counsel") pursuant to section 78eee(b)(3) of SIPA;

(c) Removed the case to this Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA;

(d) Authorized the Trustee to take immediate possession of the property of the debtor, wherever located; and

WHEREAS, on April 13, 2009 an involuntary bankruptcy petition was filed against Bernard L. Madoff ("Madoff"); and

WHEREAS, on June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff into the BLMIS SIPA proceeding; and

WHEREAS, pursuant to 15 U.S.C. § 78fff-1(a), the Trustee is "vested with the same powers and title with respect to the debtor and the property of the debtor . . . as a trustee in a case under title 11;" and

WHEREAS, pursuant to 15 U.S.C. § 78fff(b), a liquidation proceeding under SIPA "shall be conducted in accordance with, and as though it were being conducted under . . . subchapters I and II of chapter 7 of title 11;" and

WHEREAS, pursuant to section 365(a) of the United States Bankruptcy Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), the Trustee may, "assume or reject any executory contract or unexpired lease of the debtor;" and

WHEREAS, Metropolitan 885 Third Avenue Leasehold LLC (the "Landlord") and Madoff are parties to an unexpired lease dated as of October 31, 1986, as amended (the "Lease") for the 17th, 18th and 19th floors in the building located at 885 Third Avenue, New York, New York (the "Premises"); and

WHEREAS, the Trustee has determined that it is appropriate, pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy

- 2 -

Procedure, to reject the Lease; and

WHEREAS, the Trustee and the Landlord have entered into an agreement with respect to the Premises, including the continued occupancy of the 17th floor (the "Agreement"), a copy of which is attached hereto as Exhibit A.

IT IS HEREBY AGREED AND STIPULATED, as follows:

1. The Lease is hereby rejected by the Trustee, effective as of June 30, 2009.

2. The Agreement is hereby approved.

3. The Trustee and the Landlord shall each comply with and carry out the terms of the Agreement.

4. The Trustee is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Stipulation and Order.

5. This Stipulation and Order may be executed in any number of counterparts and all such counterparts shall together constitute one and the same agreement.

6. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation and Order.

Dated: New York, New York
      June 19, 2009

| METROPOLITAN 885 THIRD AVENUE LEASEHOLD LLC | IRVING H. PICARD, ESQ., TRUSTEE FOR THE SIPA LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC |
|---|---|
| By: /s/Kenneth W. Sold<br>   LOEB & LOEB LLP<br>   345 Park Avenue<br>   New York, New York 10154<br>   Telephone: (212) 407-4000<br>   Facsimile: (646) 514-2873<br>   Kenneth W. Sold<br>   ksold@loeb.com<br><br>  *Attorneys for Metropolitan 885 Third Avenue Leasehold LLC* | By: /s/David Sheehan<br>BAKER & HOSTETLER LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David Sheehan Email: dsheehan@bakerlaw.com<br>Marc Hirschfield<br>Email: mhirschfield@bakerlaw.com<br>Amy Vanderwal<br>Email: avanderwal@bakerlaw,com<br><br>*Attorneys for Irving H. Picard, Esq., Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC* |

SO ORDERED:                                      DATED: New York, New York
                                                                                       July 1, 2009

By:/s/Burton R. Lifland
   HONORABLE BURTON R. LIFLAND
   UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# AGREEMENT

This AGREEMENT (this "Agreement") is made as of the __16__ day of June, 2009 by and between METROPOLITAN 885 THIRD AVENUE LEASEHOLD LLC, a Delaware limited liability company, having an address at c/o Metropolitan Real Estate Investors, LLC, 135 East 57th Street, New York, New York 10022 (the "Landlord") and the TRUSTEE FOR THE LIQUIDATION OF THE BUSINESS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, having an address at c/o Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111 (the "Trustee").

Background

A. Landlord and Bernard Madoff ("Madoff") are parties to a lease dated as of October 31, 1986, as amended (the "Lease") for the 17th, 18th and 19th floors (the "Premises") in the building (the "Building") located at 885 Third Avenue, New York, New York.

B. Madoff is the debtor under Adv. Pro. No. 08-1789 (BRL) SIPA Liquidation, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Proceeding"). Pursuant to the Bankruptcy Proceeding, the Trustee has rejected the Lease effective at midnight on June 30, 2009 (the "Rejection Date").

C. Notwithstanding the rejection of the Lease, Landlord and the Trustee wish to memorialize their agreement with respect to the Premises, including the continued occupancy of the 17th floor.

NOW THEREFORE, subject to Bankruptcy Court approval, Landlord and the Trustee, intending to be legally bound, agree as follows:

1. Capitalized Terms: All capitalized terms used and not otherwise defined in this Agreement shall have the meanings ascribed to them in the Lease.

2. 17th Floor. (a) The Trustee shall continue to pay Gross Rent, electric charges, condenser water charges and other items of additional rent set forth in the Lease (which, for purposes of this Agreement, shall be included within the term "Gross Rent") for the entire 17th floor through the Rejection Date. Although the Lease for the 17th floor has been rejected as of the Rejection Date, the Trustee shall continue to pay Gross Rent attributable to the portion of the 17th floor that is not subject to the Siebert Sublease (as hereinafter defined) through the date the Federal Bureau of Investigation ("FBI") surrenders possession of the 17th floor to Landlord (the "17th Floor Surrender Date"). From and after the 17th Floor Surrender Date, the Trustee may maintain exclusive control of the 17th floor for up to two months from the 17th Floor Surrender Date, without charge (except for extra or special services requested by the Trustee) in order to gather records, take inventory, dispose of assets and take such similar measures to wind up its affairs and finalize its investigation.

(b) The Trustee shall continue to collect the rent payable by Muriel Siebert & Co. ("Siebert") under its sublease (the "Siebert Sublease") of a portion of the 17th floor through the Rejection Date. Landlord and the Trustee shall apportion, as of the Rejection Date, any collected rent paid by Siebert under the Siebert Sublease for the month in which the Rejection Date falls. Following the Rejection Date, Landlord shall collect the rent payable under

NY782904.2
666666-66666

the Siebert Sublease directly from Siebert. Prior to the Rejection Date, Landlord and the Trustee shall jointly instruct Siebert in writing to pay all sublease rent to Landlord from and after July 1, 2009.

(c) For purposes of this Paragraph 2, the rentable area of the portion of the 17th floor not covered by the Siebert Sublease is 56% of the rentable area of the entire floor. Landlord and the Trustee, acting in good faith, shall reconcile and apportion any Gross Rent paid or payable by the Trustee with respect to the balance of the 17th floor as of the 17th Floor Surrender Date, which obligation shall survive the expiration of this Agreement.

(d) Landlord shall continue to market the 17th floor to third parties provided that until the 17th Floor Surrender Date neither Landlord nor any other person shall access the 17th floor without the express permission of the FBI. After the 17th Floor Surrender Date, the Trustee shall afford Landlord reasonable access during business hours to the 17th floor for such purposes, subject to the reasonable security requirements of the Trustee.

3. 18th Floor. The parties confirm that the Lease for the 18th floor has been rejected as of the Rejection Date. Landlord shall continue to pay Gross Rent for the 18th floor through the Rejection Date. On the Rejection Date, the Trustee shall deliver possession of the 18th floor to Landlord subject to the occupancy of Surge Trading Inc. and the Trustee, acting in good faith, shall reconcile and apportion any Gross Rent paid or payable by the Trustee with respect to the 18th floor as of the Rejection Date, which obligation shall survive the expiration of this Agreement.

4. 19th Floor. The parties confirm that the Lease for the 19th floor has been rejected as of the Rejection Date. On or prior to the Rejection Date, the Trustee shall deliver possession of the 19th floor to Landlord. Although the Lease for the 19th floor has been rejected as of the Rejection Date, the Trustee shall continue to pay Gross Rent for the 19th floor through the date which is six months after the Rejection Date (the "Rent Termination Date"). The Trustee shall surrender the 19th floor with the personal property and equipment set forth in Schedule A annexed hereto in place. Landlord and the Trustee, acting in good faith, shall reconcile and apportion any Gross Rent paid or payable by the Trustee with respect to the 19th floor as of the Rent Termination Date, which obligation shall survive the expiration of this Agreement. To the extent Landlord leases the 19th floor to a third party tenant for a term commencing prior to the Rent Termination Date (but after the Trustee surrenders possession of the 19th floor to Landlord), Landlord shall so notify the Trustee but the Trustee shall continue to be liable for the Gross Rent set forth above through the Rent Termination Date. Notwithstanding the foregoing provisions, from and after the Rejection Date, the Trustee may maintain exclusive control of the 19th floor for up to two months from the Rejection Date in order to gather records, take inventory, dispose of assets and take such similar measures to wind up its affairs and finalize its investigation.

5. Release. As of (i) the Rejection Date with respect to the space covered by the Siebert Sublease and the 18th floor, (ii) the later of the Rejection Date and the date on which Trustee surrenders possession to Landlord with respect to the 19th floor and (iii) the 17th Floor Surrender Date with respect to the balance of the 17th floor (each such date, the "Release Date"), Landlord releases the Trustee from all claims, obligations, and liabilities of every kind or nature

whatsoever arising out of or in connection with the applicable portion of the Premises, except for any obligations of the Trustee with respect to the Premises expressly provided in this Agreement to survive (including the payment of Gross Rent through the Rent Termination Date with respect to the 19th Floor, as set forth in Paragraph 4 above), but only to the extent they have accrued prior to the applicable Release Date. Through the applicable Release Date Landlord shall continue to provide the Trustee with all services and rights contemplated by the Lease, but otherwise the Trustee releases Landlord from all claims, obligations and liabilities of every kind or nature whatsoever arising out of or in connection with the applicable portion of the Premises as of the applicable Release Date, except for any obligations of Landlord expressly provided in this Agreement to survive, but only to the extent they have accrued prior to the applicable Release Date. The Trustee shall be required to deliver each portion of the Premises free and clear of all tenancies and occupancies claiming though the Trustee, except for Surge Trading Inc. with respect to the 18th floor and Siebert.

6. Broker. Landlord and the Trustee each represents that it has had no dealings or negotiations with any broker in connection with this Agreement, other than CB Richard Ellis, Inc. Landlord and the Trustee shall pay, hold harmless and indemnify the other party for, from and against any and all costs, expenses (including reasonable attorneys' fees and disbursements) and liability for, or arising in connection with, any compensation, commission or charges claimed by any broker or agent arising from a breach of the foregoing representation by the indemnitor.

7. Notices. Notices under this Agreement shall be given in accordance with the Lease, except that notices to (i) Landlord shall be given to Landlord c/o Metropolitan Real Estate Investors, LLC, 135 East 57th Street, New York, New York 10022, Attention: Jacob Abikzer, with a copy to Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Kenneth W. Sold, Esq. and (ii) the Trustee shall be given to Irving Picard, Esq., c/o Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111 with a copy to Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, Attn: Andrew Drogen, Esq.

8. No Oral Modification. This Agreement may not be changed or terminated orally, but only by an agreement in writing signed by Landlord and the Trustee.

9. Governing Law. This Agreement, any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principle of conflicts of law thereof), the Bankruptcy Code and the Securities Investor Protection Act. No such claim shall be commenced, prosecuted or continued in any forum other than the Bankruptcy Court and, in the event that such Bankruptcy Court does not have jurisdiction, the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York and each of the parties hereby submits to the co-exclusive jurisdiction of such courts. Notwithstanding the foregoing, nothing in this Paragraph 9 is intended to limit any applicable appellate process. Each of the parties hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. Each of the parties further waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement.

NY782904.2
666666-66666

10. <u>Counterparts</u>. This Agreement may be executed in several counterparts, all of which, taken together, shall constitute one original instrument.

11. <u>Entire Agreement</u>. This Agreement constitutes the entire understanding between the parties concerning the subject matter of this Agreement and supersedes all prior and contemporaneous agreements or undertakings, whether oral or written, express or implied, relating to the subject matter of this Agreement.

12. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of, and be binding upon, Landlord and the Trustee (but only in his capacity as Trustee, not individually) and their respective successors and assigns.

13. <u>Bankruptcy Court Approval</u>. This Agreement shall be subject to the approval pursuant to a Final Order in the Bankruptcy Proceeding. A "<u>Final Order</u>" means an order or judgment of the Court, as entered on the docket, that has not been reversed, stayed, modified or amended, and as to which: (a) the time for appeal, seek review or rehearing or petition for certiorari has expired; or (b) any appeal taken or petition for certiorari filed has been finally resolved by the highest court for which appeal or certiorari was sought.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first written above.

OWNER:

METROPOLITAN 885 THIRD AVENUE LEASEHOLD LLC, a Delaware limited liability company

By:   Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, a Delaware limited liability company,
Its Sole Member

By:   Metropolitan 885 Third Avenue Leasehold Holdings LLC, a Delaware limited liability company,
Its Sole Member

By:   Metropolitan 885 Third Avenue LLC, a Delaware limited liability company,
Its Managing Member

By:   Metropolitan Real Estate Investors, LLC, a California limited liability company,
Its Managing Member

By: _____
Name: JACOB ASIKIER
Title: MANAGING MEMBER

TRUSTEE:

THE TRUSTEE FOR THE LIQUIDATION OF THE BUSINESS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC

By: Irving H. Picard, Esq., in his capacity as the Trustee for the Liquidation of the Business of Bernard L. Madoff Investment Securities LLC

By: _____, as Trustee
Irving H. Picard, Esq.

## BLMIS 19th Floor Abandon List

| Location | Quantity | Item |
| --- | --- | --- |
| Kitchen | 1 | Refrigerator |
| Kitchen | 1 | Dishwasher |
| Kitchen | 9 | Built In cabinets |
| Conference Room B | 1 | Stone top conference table - High rectangle |
| Conference Room to left of Conference Room B | 1 | Stone top conference table - Low circle |
| Prop Desk | 54 | Trading Desks - Regular |
| Conference Room to right of kitchen | 1 | Stone top buffet |
| Conference Room b/t MM and Prop Desk | 1 | Stone top buffet |
| Conference Room b/t MM and Prop Desk | 1 | Stone top conference table - High rectangle |
| Conference Room b/t MM and Prop Desk | 1 | Wood encases whiteboard |
| Raised Desks b/t MM and Prop Desk | 3 | Trading Desks - Large |
| MM Desk | 17 | Trading Desks - Regular |
| MM Desk | 8 | Built in overhead cabinets |
| MM Desk | 4 | Built in 3 shelf overhead bookshelf's |
| Mark Madoff's Office | 4 | Built in under window cabinets |
| Andy Madoff's Office | 2 | Built in under window cabinets |
| Peter Madoff's Office | 2 | Built in under window cabinets |
| Conference Room A | 12 | Built In under window cabinets |
| Conference Room A | 1 | Board Table - Extra large |
| Conference Room A | 1 | A/V cabinet |
| Bernie's Office | 2 | Built in under window cabinets |
| Administrative area outside of Bernie's Office | 4 | L shaped desks |
| Administrative area outside of Bernie's Office | 2 | 2 door high cabinets |
| Administrative area outside of Bernie's Office | 1 | 6 metal draw and 4 thin Formica draw filing unit |
| Administrative area outside of Bernie's Office | 1 | Fax station |

*The majority of 2 draw metal file cabinets are built in. These cabinets are included in the APA, however Castor Pollux has conveyed that they may not want them.

Attorney Work Product
Privileged and Confidential
DRAFT - Subject to Change