Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Hearing Date: August 6, 2009
Hearing Time: 10:00 am
Objection Deadline: August 3, 2009

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**FIRST APPLICATION OF IRVING H. PICARD, TRUSTEE, FOR ALLOWANCE OF
INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
<u>DECEMBER 15, 2008 THROUGH APRIL 30, 2009</u>**

300022661

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard as trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") and Bernard L. Madoff ("Madoff"), respectfully submits his first application (the "Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5)[1], sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP (Docket No. 126), dated February 25, 2009 (the "Compensation Order"), allowing and awarding interim compensation for services performed by the Trustee for the period commencing December 15, 2008[2] through and including April 30, 2009 (the "Compensation Period") in the amount of $759,228.75 (of which 20% is to be deferred through the conclusion of the liquidation period) and reimbursement of actual and necessary expenses incurred during the Compensation Period in the amount of $45.00; and in support thereof, respectfully represents as follows:

## II. BACKGROUND

1.  BLMIS was founded by Madoff in 1960 and engaged in three primary types of business: market making, proprietary trading and investment advisory services. BLMIS was registered with the SEC as a broker-dealer and beginning in 2006 as an investment adviser. Pursuant to such registration as a broker-dealer, BLMIS was a member of SIPC.

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C. ____."

[2] Although the Trustee was appointed on December 15, 2008, he did not begin billing until December 16, 2008.

2

300022661

2. On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-million dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned United States v. Madoff (No. 08 CV 2735) (the "Criminal Case").

3. Also on December 11, 2008 (the "Filing Date")[3], the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against defendants Madoff and BLMIS (No. 08 CV 10791) (the "Civil Case"). The complaint alleged that the defendants engaged in fraud through investment advisor (or "IA") activities of BLMIS.

4. On December 12, 2008, based on allegations brought by the SEC against Madoff and BLMIS in the Civil Case, the Honorable Louis L. Stanton of the District Court entered an order which appointed Lee S. Richards, Esq. as receiver (the "Receiver") for BLMIS.

5. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application filed by SIPC. Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

6. On that date, the District Court entered the Protective Decree (District Court Docket No. 4), to which BLMIS consented, which, in pertinent part:

---

[3] [1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

3

    a.    appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA, therefore, effectively replacing the Receiver as to BLMIS;

    b.    appointed Baker & Hostetler, LLP ("B&H") as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    c.    removed the case to the Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA.[4]

7.    On February 4, 2009, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (Docket No. 69), finding that the Trustee and B&H are disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

### III. COUNSEL'S EXPERIENCE

8.    The Trustee is a member of B&H. He practices principally in the areas of corporate reorganizations, bankruptcy and insolvency. He also has been a contributing author to Collier on Bankruptcy, 15th Edition Revised.

9.    The Trustee was admitted to practice before this Court in 1982. He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, to May 15, 1982. Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in Washington, D.C., for three and a half years during which time his responsibilities included, among other things, disclosure and enforcement matters and bankruptcy reorganizations. Before

---

[4] Pursuant to section 78fff(b) of SIPA, "[t]o the extent consistent with [SIPA], [this] liquidation proceeding [is] be[ing] conducted in accordance with, and as though it [is] being conducted under chapter 1, 3, 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."

300022661

becoming Assistant General Counsel, he spent approximately four years in various legal positions in the SEC's then Division of Corporate Regulation, where his responsibilities primarily involved bankruptcy reorganizations. Prior thereto, Mr. Picard spent more than six (6) years working in the securities industry.

10. Mr. Picard has previously served as trustee in the following ten (10) SIPA liquidations, which have been concluded: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No TP 84¬70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors Center Inc. (Bankr. E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr. S.D.N.Y. No. 96/8396A (REG)); Klein Maus & Shire, Inc.. (Bankr. S.D.N.Y., No. 00/8193A (AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park South Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)). He also has served as counsel to SIPC as trustee in two (2) liquidation proceedings.

## IV. SUMMARY OF SERVICES

11. The services rendered by the Trustee during the approximately four and one-half (4 ½) month Compensation Period (1,088.50 hours) are described below. The Trustee does not wish to burden the Court with an overly detailed recitation of each and every matter with respect to which it has rendered services during the Compensation Period. Accordingly, this Application is intended to serve as a summary description of the more significant services rendered by the Trustee, and to highlight the benefits which have been conferred upon SIPC, customers and creditors of the Debtor's estate as a result of his efforts. The following section

provides an overview of certain of the significant services rendered by the Trustee during the Compensation Period by the task codes in use during the Compensation Period.[5]

12.     The Court is also respectfully referred to the Trustee's First Interim Report ("Trustee Report") (Docket No. 314) for further detail regarding the administration of the estate, the investigation into the Debtor, Madoff and related parties, and other progress made by the Trustee and B&H subsequent to the Compensation Period (but as a result of investigative efforts during the Compensation Period).

A.     **Case Administration – Task Code 01** (160.30 hours)

13.     This category is for time expended by the Trustee relating to administrative matters, including:

- Interviewing and retention of consultants, accountants, investment advisor, securities broker, art appraiser, private investigator, and other professionals.

- Opening checking and brokerage accounts, reviewing mail received at the BLMIS offices and, if necessary, preparing appropriate responses.

- Reviewing cancellations of insurance policies and terminations of leases.

- Obtaining SIPC administrative cash advances, correspondence to accountants for checks to pay bills rendered to Trustee, reviewing and signing monthly SIPC-17 cash receipts and disbursements reports.

- Obtaining turnover of remaining funds in BLMIS's bank accounts, responding to inquiries of taxing authorities, etc.

---

[5]     Beginning on January 10, 2009, the Trustee implemented seventeen (17) task codes for specific categories of work to permit a more detailed analysis of the fees incurred. Task codes 05 and 15 are not described below, as no time was billed to such task codes during the Compensation Period.

6

- Attending to various employee and benefits related issues, including correspondence with administrators of payroll, 401(k), healthcare and other benefit plans, termination of employees, and reimbursement of certain employee expenses.

B. **Claims Review and Related Matters – Task Code 02** (154.20 hours)

14. This category is for time expended by the Trustee with respect to customer claims. The mandatory six-month statutory bar date expired on July 2, 2009.[6] Within the Compensation Period, the Trustee had received 8,667 claims for customer protection under SIPA and the Trustee had sent out 55 determination letters. Of those determinations, the Trustee had allowed 55 customers claims, which claimants were paid approximately $26.5 million in SIPC advances, with over-the-limit claims totaling $134.7 million.

15. Included in this category of services by the Trustee were the following:

- Reviewing submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Drafting the form of determination letters and assignment and release forms to be sent to all customers.

- Making determinations; advising customers and their representatives of conclusions reached regarding allowance or denial of their respective claims and assignments and releases for claims to be satisfied.

- Regular communications with AlixPartners LLP ("Alix"), Trustee's forensic consultant, FTI Consulting ("FTI"), the SIPC staff and B&H attorneys, to design a customer claims

---

[6] As of July 2, 2009, the Trustee had received at least 15,400 customer claims and had determined more than 543 customer claims. The Trustee had also received over 395 claims from general creditors and 16 claims from broker-dealers.

300022661

review process, design and customize a customer claims database, discuss reconciliation of IA accounts and other matters of interest in determining claims.

- Regular communications with the SIPC staff regarding customer claims, including nature of complaints.

- Review schedule of information prepared by Alix.

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, statutory bar date, requests for additional account information and other matters of concern to customers.

- Regular communications with the SIPC staff and the SEC staff regarding customer claims, the "net equity" definition and other issues.

C. **Trustee Investigation, USAO and SEC/FINRA – Task Codes 03, 13, 14**
(188.50 hours)

16. This category relates to time spent with respect to the Trustee's investigation into BLMIS, Madoff and various assets, including meetings, correspondence and cooperative efforts with the United States Attorney's Office ("USAO") for the Southern District of New York, the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"). The Trustee expended a substantial amount of time in this task code during the Compensation Period. Included in this category of services by the Trustee were the following:

- Coordinating efforts with the USAO, SEC, FINRA, Federal Bureau of Investigation ("FBI"), Joint Provisional Liquidators ("JPLs") investigating the Madoff U.K. entity, Madoff Securities International Ltd. ("MSIL"), and many other local, federal and international officials involved in this investigation.

300022661

- Communications with the B&H, Alix and FTI regarding discovery from third parties; and obtaining copies of records seized by the FBI and SEC, and other information from USAO, FINRA and other securities regulators.

- Review of account information and statements regarding BLMIS IA customers.

- In coordination with the USAO and FBI, attending, preparing and participating in BLMIS employee interviews.

- Overseeing B&H's issuance of hundreds of inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation.

- Discussions and conferences regarding litigation strategy, both internally and with SIPC, FINRA, USAO and SEC.

- Regular communications with counsel to Receiver (from December 2008 – February 2009)[7] regarding matters of mutual interest.

D. **Banks and Feeder Funds and Avoidance Actions – Task Codes 04, 07**
(42.80 hours)

17. The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds, and bring actions against such funds for the recovery of estate assets where possible. This category relates to their efforts during the Compensation Period. As a result of these efforts, during the Compensation Period, the Trustee filed avoidance actions against two "feeder funds" for the return of preference payments made by BLMIS: Vizcaya Partners Limited for the return of $150 million and Kingate Euro Fund Ltd. and Kingate

---

[7] On February 26, 2009, the Receiver submitted a report and application to Terminate the Receivership to the District Court. After receipt of submissions by the Trustee, the SEC, and the Department of Justice, and after a hearing on March 23, 2009, the District Court issued an order discharging the Receiver and terminating the receivership.

300022661

Global Fund Ltd. for the return of $257 million. For further discussion, please see section VIII B of the Trustee Report.

    E.    **Asset Search, Recovery and Sale – Task Code 06** (140.90 hours)

    18.    This category relates to time spent with respect to discovery of and recovery of various assets. The Trustee expended significant time during the Compensation Period in this project category relating to the marketing and successful sale of the market making operation of BLMIS ("Market Maker"). Included in this category of services were the following:

- Retention of and negotiation with Lazard Frères & Co. LLC ("Lazard") as investment banker for the limited purpose of marketing and selling Market Maker.

- Solicit potential bidders; negotiate non-disclosure agreements with potential bidders; create data room for review of diligence documents by potential bidders.

- Negotiate prices and terms with potential bidders, conduct a live auction with bidders, negotiate with winning bidder, Surge Trading Inc. (f/k/a Castor Pollux Inc.) regarding terms of closing payments and earn-out.

- Negotiating the release and transfer of funds and securities located in BLMIS accounts at Bank of New York, JPMorgan Chase, M&T Bank, Depository Trust & Clearing Corporation, National Securities Clearing Corporation, as well as other banks and institutions, which resulted in recovery of over $575 million in funds by Trustee.

    F.    **Bankruptcy Court Litigation and Related Matters – Task Code 08**
(45.80 hours)

    19.    This category relates to time spent with respect to reviewing and the filing of various motions and pleadings and the initiation of as well as defense against certain

10

300022661

adversary proceedings in the Bankruptcy Court. Included in this category of services were the following

- Entry of the "Housekeeping Order" or "Claims Procedures Order", which provided for notice to be published and mailed to all customers and claimants of BLMIS of these liquidation proceedings and established, among other things, procedures for the submission of claims; entry of the order finding B&H and the Trustee to be "disinterested parties" under SIPA and the Bankruptcy Code.

- Approval of the bid procedures, auction and sale of the Market Maker.

- Successful defense of two adversary proceedings brought against the Trustee relating to "customer" status under SIPA.

- Preparation for and administration of the 341 meeting of creditors, held on February 20, 2009.

- Entry of applications to retain foreign counsel in England, Gibraltar, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg and Spain to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

- As discussed above, filed avoidance actions against two (2) feeder funds seeking the return of more than $400 million to the estate.

- Review of the Motion to Intervene filed on behalf of Toks, Inc. on April 24, 2009 (Docket No. 179).

- Rejection of certain automobile leases and other BLMIS estate liabilities.

- Approval of sale of sports tickets and other estate assets.

300022661

G. **Non-Bankruptcy Court Litigation – Task Code 09** (39.90 hours)

20. The Trustee has formed a team of B&H attorneys to monitor all non-bankruptcy court third-party actions, domestic and international, that may be related to BLMIS or Madoff. This category relates to time the Trustee spent forming the team, reviewing information related to such matters, and correspondence with the team regarding their findings.

H. **Court Appearance – Task Code 10** (21.50)

21. This category relates to time spent by the Trustee making court appearances for the events described in sections F and G above, as well as court appearances made by the Trustee in the District Court in the Civil Case.

I. **Internal Office Meetings with Staff and Out of Office Meetings– Task Codes 11 and 12** (78.60 hours)

22. This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties such as the SEC, FINRA, USAO, FBI and other regulators and government officials.

J. **Fee Application and Related Matters – Task Code 16** (18.30 hours)

23. In addition to preparation of this Application, this section relates to the time spent by the Trustee in reviewing his and B&H's monthly statements prior to submission to SIPC to correct any errors in time entries and to write off certain time and expenses as agreed to by the Trustee for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly fee statement.

300022661

K. **Press Inquiries and Responses – Task Code 17** (36.70)

24. This section relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of funds.

## V. COMPENSATION REQUESTED

25. The Trustee expended and billed for 1,088.50 hours at an hourly rate of $775.00, totaling $843,587.50 in fees. Owing to the quasi-public nature of the Trustee's appointment and services which he performed, prior to being appointed, the Trustee agreed with SIPC to discount his normal hourly rate by 10%. This discount has resulted in a voluntary reduction during the Compensation Period of $84,358.75. Thus, the Trustee's discounted request for fees in this Application is $759,228.75 (at an hourly rate of $697.50), of which 20%, or $151,845.75 is being deferred until the conclusion of this liquidation proceeding. In addition to the discount the Trustee has, in consideration of judicious billing practice, either written off or not billed 176 hours devoted to this matter during the Compensation Period, thus reducing his fees by $136,400.00 (or $122,760.00 discounted). The Trustee submits that his requested discounted fees are reasonable based on the customary compensation charged by practitioners with substantial experience in SIPA matters and comparably skilled bankruptcy practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

26. Prior to filing this Application, the Trustee provided to SIPC, in accordance with the Compensation Order, monthly fee statements setting forth the Trustee's fees for services rendered and expenses incurred beginning December 15, 2008 through April 30 2009.

300022661

27. Pursuant to the Compensation Order, on February 27, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case from the period of December 15, 2008 through January 31, 2008 (the "December 2008-January 2009 Fee Statement"). The December 2008-January 2009 Fee Statement reflected discounted fees of $231,918.75 and expenses of $37.00. Accordingly, the Trustee received funds advanced by SIPC in the amount of $185,498.00 for services rendered after subtracting the Court-ordered 20% holdback and $37.00 for expenses incurred during December 2008 and January 2009.

28. Pursuant to the Compensation Order, on March 20, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in February 2009 (the "February 2009 Fee Statement"). The February 2009 Fee Statement reflected discounted fees of $168,725.25. No expenses were incurred by the Trustee during February 2009. Accordingly, the Trustee received funds advanced by SIPC in the amount of $134,980.20 for services rendered after subtracting the Court-ordered 20% holdback.

29. Pursuant to the Compensation Order, on April 17, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in March 2009 (the "March 2009 Fee Statement"). The March 2009 Fee Statement reflected discounted fees of $181,768.50. No expenses were incurred by the Trustee during March 2009. Accordingly, the Trustee received funds advanced by SIPC in the amount of $145,414.80 for services rendered after subtracting the Court-ordered 20% holdback.

30. Pursuant to the Compensation Order, on May 20, 2009, the Trustee filed his statement of fees and expenses incurred in April 2009 (the "April 2009 Fee Statement"). The April 2009 Fee Statement reflected discounted fees of $176,816.25 and expenses of $8.00. Accordingly, the Trustee received funds advanced by SIPC in the amount of $141,453.00 for

services rendered after subtracting the Court-ordered 20% holdback and $8.00 for expenses incurred during April 2009.

31. Exhibit A annexed hereto is a summary by task code of total hours expended and total fees incurred by the Trustee during the Compensation Period.

32. Exhibit B annexed hereto provides a schedule of the Trustee's total expenses for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.

33. In seeking payment of interim compensation of $759,228.75 (of which 20% is to be deferred through the conclusion of the liquidation period), the Trustee will pay over to B&H the full amount of any interim compensation awarded to him. In accordance with section 504 of the Bankruptcy Code and Fed. R. Bankr. P. 2016(a), the Trustee represents that no other agreement or understanding exists or shall be made between him and any other person respecting the sharing of compensation to be received for the services he has rendered and will render in connection with this SIPA proceeding. Furthermore, the Trustee has not entered (and will not enter) into any agreement or understanding prohibited by 18 U.S.C. §155.

34. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### VI. TRUSTEE'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

35. Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..."

15

Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendations of SIPC.

36. To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee (see section 78fff-3(b)(2) of SIPA).

37. Based on the allocation process set forth in SIPA, at this time the Trustee believes that there is no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs with this belief of the Trustee. Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

38. Therefore, with respect to this Application, the Truste requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "award [him] the amounts recommended by SIPC." See, In re Bell & Beckwith, 112 B.R. 876 (Bankr. N.D. Ohio 1990). The Trustee expects that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for August 6, 2009.

16

39. The Trustee submits that the request for interim allowance of compensation made through this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VII. CONCLUSION

The Trustee respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $759,228.75 (of which 20% is to be deferred through the conclusion of the liquidation period) as an interim payment for professional services rendered by the Trustee during the Compensation Period and $45.00 as reimbursement of the actual and necessary costs and expenses incurred by the in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       July 10, 2009

**BAKER & HOSTETLER LLP**

By:/s/ *Irving H. Picard*
       Irving H. Picard, Trustee
       c/o Baker & Hostetler LLP
       45 Rockefeller Plaza
       New York, NY  10111
       Telephone: (212) 589-4200
       Facsimile: (212) 589-4201

       *Trustee for the Substantively Consolidated*
       *SIPA Liquidation of Bernard L. Madoff*
       *Investment Securities LLC And*
       *Bernard L. Madoff*

300022661