Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, NY  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Marc E. Hirschfield  
Email: mhirschfield@bakerlaw.com  

Hearing Date: August 6, 2009  
Hearing Time: 10:00 am  
Objection Deadline: August 3, 2009  

*Attorneys for Irving H. Picard, Esq. Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**FIRST APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM <u>DECEMBER 15, 2008 THROUGH APRIL 30, 2009</u>**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

    Baker & Hostetler LLP ("B&H") as counsel to Irving H. Picard as trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") and Bernard L. Madoff ("Madoff"), respectfully submits its first application (the "Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5)[1], sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP (Docket No. 126), dated February 25, 2009 (the "Compensation Order"), allowing and awarding interim compensation for services performed by B&H for the period commencing December 15, 2008 through and including April 30, 2009 (the "Compensation Period") in the amount of $14,662,319.83 (of which 20% is to be deferred through the conclusion of the liquidation period) and reimbursement of B&H's actual and necessary expenses incurred during the Compensation Period in the amount of $274,203.03; and in support thereof, respectfully represents as follows:

## I. PRELIMINARY STATEMENT

  1.  Seven months have elapsed since the District Court for the Southern District of New York ("District Court") determined (upon application by the Securities Investor Protection Corporation, or "SIPC") that the customers of BLMIS were "in need of protection" under SIPA, thus initiating this proceeding to liquidate the largest Ponzi scheme ever conducted.

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C. ____."

2

During this initial Compensation Period, the Trustee and his counsel made significant headway into the investigation of Madoff's fraud. Because of efforts made by Trustee and his counsel during the Compensation Period, over $1,088,507,818 had been recovered for the estate as of June 30, 2009. In addition, the Trustee has filed eight (8) avoidance actions seeking to recover over $13.7 billion in funds from various feeders funds and related parties.

2.  During the Compensation Period, the Trustee and B&H initiated a claims process for all customers and creditors of BLMIS. Within the Compensation Period, the Trustee had received over 8,600 claims from potential customers and other creditors.

3.  Given the task of liquidating BLMIS, and in doing so, coordinating efforts with those federal and state authorities investigating the criminal matter, the Trustee and his counsel have also dealt with issues spanning a broad spectrum of legal and administrative specialties and disciplines. The Trustee's ability to call on the resources of B&H in such areas as corporate, real estate, bankruptcy, employment, tax, banking, litigation (and others) has been of material assistance in achieving results, establishing protocols, and directing the efforts of the Trustee's financial professionals. Beyond issues that may be handled pursuant to work plans or protocols, many issues that could not have been anticipated were especially challenging during the initial investigative phase of this proceeding.

4.  During the Compensation Period, the Trustee and his counsel and staff have met extraordinary challenges, in a manner beneficial to the customers, creditors, and other investors of BLMIS. The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

## II. BACKGROUND

5.  BLMIS was founded by Madoff in 1960 and engaged in three primary types of business: market making, proprietary trading and investment advisory services. BLMIS

3

was registered with the SEC as a broker-dealer and beginning in 2006 as an investment adviser. Pursuant to such registration as a broker-dealer, BLMIS was a member of SIPC.

6. On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-million dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned United States v. Madoff (No. 08 CV 2735) (the "Criminal Case").

7. Also on December 11, 2008 (the "Filing Date")[2], the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against defendants Madoff and BLMIS (No. 08 CV 10791) (the "Civil Case"). The complaint alleged that the defendants engaged in fraud through investment advisor (or "IA") activities of BLMIS.

8. On December 12, 2008, based on allegations brought by the SEC against Madoff and BLMIS in the Civil Case, the Honorable Louis L. Stanton of the District Court entered an order which appointed Lee S. Richards, Esq. as receiver (the "Receiver") for BLMIS.

9. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application filed by SIPC. Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

---

[2] [1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

4

10. On that date, the District Court entered the Protective Decree (District Court Docket No. 4), to which BLMIS consented, which, in pertinent part:

a. appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA, therefore, effectively replacing the Receiver as to BLMIS;

b. appointed Baker & Hostetler, LLP ("B&H") as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c. removed the case to the Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA.[3]

11. On February 4, 2009, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (Docket No. 69), finding that the Trustee and B&H are disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

### III. COUNSEL'S EXPERIENCE

12. B&H has been engaged in the general practice of law since 1916, and has substantial expertise in such areas as white collar investigation and defense, corporate finance and securities, examinerships, insolvency and creditors rights and commercial and securities litigation.

13. The Trustee, a member of B&H, and an attorney admitted to practice before this Court, has supervised a significant portion of the legal services for which compensation is sought herein. He has an extensive background in the fields of bankruptcy and

---

[3] Pursuant to section 78fff(b) of SIPA, "[t]o the extent consistent with [SIPA], [this] liquidation proceeding [is] be[ing] conducted in accordance with, and as though it [is] being conducted under chapter 1, 3, 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."

5

securities, including SIPA liquidations, all as set forth more fully in the Trustee's First Interim Fee Application, which is being filed contemporaneously herewith.

## IV. SUMMARY OF SERVICES

14. The services rendered by B&H during the approximately four and one-half (4 ½) month Compensation Period are described below. In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in bankruptcy, securities, tax, corporate law and litigation. B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to maximize efficiency and avoid any duplication of effort.

15. B&H does not wish to burden the Court with an overly detailed recitation of each and every matter with respect to which it has rendered services during the Compensation Period. Accordingly, this Application is intended to serve as a summary description of the more significant services rendered by B&H, and to highlight the benefits which have been conferred upon SIPC, customers and creditors of the Debtor's estate as a result of our efforts. The following section provides an overview of certain of the significant services rendered by B&H during the Compensation Period by the task codes in use during the Compensation Period.[4]

16. The Court is also respectfully referred to the Trustee's First Interim Report ("Trustee Report") (Docket No. 314) for further detail regarding the administration of the estate, the investigation into the Debtor, Madoff and related parties, and other progress made by the

---

[4] Beginning on January 1, 2009, B&H implemented five (5) task codes for specific categories of work to permit a more detailed analysis of the fees incurred. As the case has evolved, B&H has added additional task codes and opened separate matter numbers for each on-going litigation to ensure that work on a specific issue or matter is billed to the same matter or task code. Given the multitude of attorneys involved and the number of task codes and matter numbers, overlaps and inconsistencies are inevitable despite B&H's best efforts to ensure that work on a specific topic is billed to a single task code.

6

Trustee and B&H subsequent to the Compensation Period (but as a result of investigative efforts during the Compensation Period).

    A.    **Trustee Investigation – Task Code 01** (19,963.25 hours)[5]

17. This category relates to time spent with respect to discovery of and recovery of various assets. B&H expended a substantial amount of time in this task code during the Compensation Period. Included in this category of services by the Firm were the following:

- Coordinating efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority (FINRA"), Joint Provisional Liquidators ("JPLs") investigating the Madoff U.K. entity, Madoff Securities International Ltd. ("MSIL"), and many other local, federal and international officials involved in this investigation.

- Communications with Trustee and his professionals regarding discovery from third parties; and obtaining copies of records seized by the FBI, SEC and other information from USAO and securities regulators and reviewing same.

- Review of account information and statements regarding BLMIS IA customers.

- In coordination with the USAO and FBI, attending, preparing and participating in BLMIS employee interviews.

- Drafting and issuing of various inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation; organizing and reviewing documents sent in response to such inquiries and subpoenas.

---

[5] Because B&H did not have a task code for case administration during the Compensation Period, significant time spent on such matters was included in Task Code 01.

7

- Monitoring of third-party actions outside of the Bankruptcy Court both domestically and abroad.

- Review of mail received at BLMIS offices.

- Discussions and conferences regarding litigation strategy, both internally and with SIPC, USAO and the SEC.

- Regular communications with counsel to Receiver regarding matters of mutual interest.[6]

- Termination of certain BLMIS employees and related matters.

   B.  **Bankruptcy Court Litigation – Task Code 02** (4,150.60 hours)

   18.   This category relates to time spent with respect to researching, drafting and filing various motions, pleadings and the initiation of as well as defense against certain adversary proceedings in the Bankruptcy Court, and time for related court appearances. Included in this category of services by the Firm were the following

- Entry of the "Housekeeping Order" or "Claims Procedures Order", which provided for notice to be published and mailed to all customers and claimants of BLMIS of these liquidation proceedings and established, among other things, procedures for the submission of claims; entry of the order finding B&H and the Trustee to be "disinterested parties" under SIPA and the Bankruptcy Code.

- Approval of the bid procedures, auction and sale of the Market Maker.

- Successful defense of two adversary proceedings brought against the Trustee relating to "customer" status under SIPA.

- Preparation for and administration of the 341 meeting of creditors, held on February 20,

---

[6] On February 26, 2009, the Receiver submitted a report and application to Terminate the Receivership to the District Court. After receipt of submissions by the Trustee, the SEC, and the Department of Justice, and after a hearing on March 23, 2009, the District Court issued an order discharging the Receiver and terminating the receivership.

8

2009.

- Entry of applications to retain foreign counsel in England, Gibraltar, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg and Spain to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

- Initiate avoidance actions against two "feeder funds" for the return of preference payments made by BLMIS: Vizcaya Partners Limited for the return of $150 million and Kingate Euro Fund Ltd. and Kingate Global Fund Ltd. for the return of $257 million.

- Review of and drafting of initial response to the Motion to Intervene filed on behalf of Toks, Inc. on April 24, 2009 (Docket No. 179).

- Rejection of certain automobile leases and other BLMIS estate liabilities.

- Approval of sale of sports tickets and other estate assets.

C. **Feeder Funds – Task Code 03**  (6,204.50 hours)

19. The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds, and bring actions against such funds for the recovery of estate assets where possible. This category relates to their efforts during the Compensation Period. As a result of these efforts, during the Compensation Period, the Trustee filed avoidance actions against two "feeder funds" for the return of preference payments made by BLMIS: Vizcaya Partners Limited for the return of $150 million and Kingate Euro Fund Ltd. and Kingate Global Fund Ltd. for the return of $257 million. For further discussion, please see section VIII B of the Trustee Report.

9

D. **Asset Research and Sale – Task Code 04** (4,080.45 hours)

20. This category relates to time spent with respect to discovery of and recovery of various assets. B&H expended significant time during the Compensation Period in this project category relating to the marketing and successful sale of the market making operation of BLMIS ("Market Maker"). Included in this category of services by B&H were the following:

- Retention of and negotiation with Lazard Frères & Co. LLC ("Lazard") as investment banker for the limited purpose of marketing and selling Market Maker.

- Conduct due diligence relating to the business of Market Maker.

- Solicit potential bidders; negotiate non-disclosure agreements with potential bidders; create data room for review of diligence documents by potential bidders.

- Negotiate prices and terms with potential bidders, conduct an live auction with bidders, negotiate with winning bidder, Surge Trading Inc. (f/k/a Castor Pollux Inc.) regarding terms of closing payments and earn-out.

- Researching and negotiating release of BLMIS fund transfers and accounts at Bank of New York and JPMorgan Chase which resulted in recovery of over $571 million in funds by Trustee.

E. **Internal Meetings with Staff – Task Code 05** (1,080.60 hours)

21. This category relates to internal B&H strategy meetings and training sessions related to the liquidation proceeding. B&H expended minimal time in this category during the Compensation Period.

10

F. **Customer Claims – Task Code 06** (445.60 hours)[7]

22.     This category is for time expended by B&H with respect to customer claims. The mandatory six-month statutory bar date expired on July 2, 2009.[8] Within the Compensation Period, the Trustee had received 8,667 claims for customer protection under SIPA and the Trustee had sent out 55 determination letters. Of those determinations, the Trustee had allowed 55 customers claims, which claimants were paid approximately $26.5 million in SIPC advances, with over-the-limit claims totaling $134.7 million.

23.     Included in this category of services by the Firm were the following:

- Reviewing submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Assisting the Trustee in making determinations and in drafting of determination letters and assignment and release forms; advising customers of conclusions reached regarding allowance or denial of their respective claims and assignments and releases for claims to be satisfied.

- Training of a team of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

- Regular communications with Trustee's claims agent, AlixPartners LLP ("Alix"), Trustee's forensic consultant, FTI Consulting ("FTI") and SIPC, to design a customer claims review process, design and customize a customer claims database, discuss reconciliation of IA accounts and other matters of interest in determining claims.

---

[7] Task Code 06 was not one of the original five task codes; B&H attorneys and paraprofessionals began billing to Task Code 06 on March 1, 2009. As this task code was not added until the latter part of the Compensation Period, the number of hours spent is not an accurate reflection of the significant amount of time in this project category.

[8] As of July 2, 2009, the Trustee had received at least 15,400 customer claims and had determined more than 543 customer claims. The Trustee had also received over 395 claims from general creditors and 16 claims from broker-dealers.

11

- Regular communications with Trustee and SIPC regarding customer claims, including nature of complaints.

- Review schedule of information prepared by Trustee's claims' consultant; prepare additional reports for Trustee and SIPC.

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, statutory bar date, requests for additional account information and other matters of concern to customers.

- Regular communications with Trustee, SIPC and SEC staff regarding customer claims, the "net equity" determination and other issues.

G. **Billing – Task Code 07** (105.40 hours)[9]

24.    In addition to preparation of this Application, this section relates to the time spent by attorneys and paraprofessionals in reviewing the monthly B&H billing statements prior to submission to SIPC to ensure that time was properly billed by B&H, to correct any errors in time entries and to write off certain time and expenses as agreed to by B&H for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly fee statement.

## V. COMPENSATION REQUESTED

25.    B&H expended 38,270.55 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in a blended hourly rate of $425.69 for fees incurred.

26.    Prior to filing this Application, B&H provided to SIPC, in accordance with the Compensation Order, monthly fee statements setting forth B&H's fees for services

---

[9] Task Code 07 was not one of the original five task codes; B&H attorneys and paraprofessionals began billing to Task Code 07 on March 1, 2009.

12

rendered and expenses incurred beginning December 15, 2008 through April 30 2009. In connection with preparing each of the four monthly statements and this Application, B&H voluntarily adjusted its fees by writing off $335,852.56 (in addition to the 10% discount, as discussed below) and wrote off expenses in the amount of $111,006.39 customarily charged to other clients.

27. In addition, at SIPC's request, B&H's fees in this case reflect a 10% public interest discount from B&H's standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $1,617,375.91. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in the Chapter 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

28. Pursuant to the Compensation Order, on February 27, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case from the period of December 15, 2008 through January 31, 2008 (the "December 2008-January 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the December 2008-January 2009 Fee Statement, which were adopted by B&H. After such adjustments, the December 2008-January 2009 Fee Statement reflected fees of $3,868,521.29, and expenses of $68,910.81. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,094,817.00 for services rendered after subtracting the Court-ordered 20% holdback and $68,910.81 for expenses incurred during December 2008 and January 2009.

29. Pursuant to the Compensation Order, on March 20, 2009, B&H provided to SIPC its statement of fees and expenses incurred in February 2009 (the "February 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the February 2009 Fee

13

Statement, which were adopted by B&H. After such adjustments, the February 2009 Fee Statement reflected fees of $3,026,042.54 and expenses of $71,628.47. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $2,420,834.00 for services rendered after subtracting the Court-ordered 20% holdback and $71,628.47 for expenses incurred during February 2009.

30. Pursuant to the Compensation Order, on April 17, 2009, B&H provided to SIPC its statement of fees and expenses incurred in March 2009 (the "March 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the March 2009 Fee Statement, which were adopted by B&H. After such adjustments, the March 2009 Fee Statement reflected fees of $3,729,049.65 and expenses of $72,640.19. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $2,983,226.05 for services rendered after subtracting the Court-ordered 20% holdback and $72,640.19 for expenses incurred during March 2009.

31. Pursuant to the Compensation Order, on May 20, 2009, B&H provided to SIPC its statement of fees and expenses incurred in April 2009 (the "April 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the April 2009 Fee Statement, which were adopted by B&H. After such adjustments, the April 2009 Fee Statement reflected fees of $4,038,706.35 and expenses of $61,023.56. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,230,965.08 for services rendered after subtracting the Court-ordered 20% holdback and $61,023.56 for expenses incurred during April 2009.

14

32. There is no agreement or understanding among the Trustee, B&H and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.

33. This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Compensation Order. Pursuant to the Local Guidelines, the certification of David J. Sheehan Esq. regarding compliance with the same is attached hereto as Exhibit A.

34. Exhibit B annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtors during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual and the aggregate number of hours billed by each individual. The 10% discount ($1,617,375.91, as described above) is reflected off the total amount billed.

35. Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients. B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients including all intra-office travel and related expenses (lodging, meals, airfare and other transportation). As mentioned above, these amounts combine to a voluntary reduction of $111,006.39.

36. Exhibit D annexed hereto is a summary by B&H task code of services performed by B&H from December 15, 2008 through April 30, 2009.

15

37.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### VI. B&H'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

38.     Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendations of SIPC.

39.     To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of B&H (see section 78fff-3(b)(2) of SIPA).

40.     Based on the allocation process set forth in SIPA, the Trustee has determined at this time that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted

16

prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs with this belief of the Trustee. Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

41.  Therefore, with respect to this Application, B&H requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." See, In re Bell & Beckwith, 112 B.R. 876 (Bankr. N.D. Ohio 1990). B&H expects that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for August 6, 2009.

42.  B&H submits that the request for interim allowance of compensation made through this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

### VII. CONCLUSION

B&H respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $14,662,319.83 (of which 20% is to be deferred through the conclusion of the liquidation period) as an interim payment for professional services rendered by B&H during the Compensation Period and $274,203.03 as reimbursement of the actual and necessary costs and expenses incurred by the in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
July 10, 2009

**BAKER & HOSTETLER LLP**

By:/s/ *David J. Sheehan*  
    Baker & Hostetler LLP  
    45 Rockefeller Plaza  
    New York, NY 10111  
    Telephone: (212) 589-4200  
    Facsimile: (212) 589-4201  
    David J. Sheehan  
    Email: dsheehan@bakerlaw.com  
    Marc E. Hirschfield  
    Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*