**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                            Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                            Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquid |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Penney P. Burnett, Pro Se, hereby objects to the Notice of Trustee's Determination of Claim dated June 11, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

### BACKGROUND

1. On or about August 28, 2002 my husband and I each entrusted monies to Bernard L. Madoff Investment Securities LLC ("BMIS") in the amount of $1,000,000 each, or $2,000,000 in the aggregate, for the establishment of ordinary investment accounts, to be supervised and controlled by BMIS. Neither my husband nor I ever made any withdrawals from, nor received any of the interest or dividends earned on, the accounts established at BMIS.



2. On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").[1]

3. On or about March 2, 2009, I filed two customer claims – one on behalf of myself and a second customer claim on behalf of my deceased husband – each claim was in the amount of $1,000,000. The customer claims were assigned claim numbers 6274 and 6978.

4. On June 11, 2009, the BMIS Trustee sent me the Determination Letter allowing only my claim in the amount of $2,000,000, rather than two individual one million ($1,000,000) claims – one for me and one for my deceased husband (the Burnetts' Claims") - as I claimed. See Determination Letter (Exhibit A).

5. I hereby object to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

6. **First Objection**: Both my deceased husband and I are "customers,"[2] as defined by the Securities Investor Protection Act ("SIPA"), of BMIS.

7. The Securities Investors Protection Corporation, known as SPIC, provides customers with insurance up to a total amount of $500,000.

8. 15 U.S.C. Section 78fff-3 provides in pertinent part that : "SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be

---

[1] See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA.

[2] 15 U.S.C. §78lll (2) states in pertinent part: "...The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities,..."

2

required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property,...."

9. The language of the SPIA statute could not be clearer – each customer is entitled to a SPIC advance up to $500,000. Any other interpretation adds words and concepts to the statute which do not exist. Accordingly, my husband's and my claim should each be allowed in the amount of $1,000,000, and we should each be entitled to a $500,000 SPIC advance. [3]

10. **Second Objection:** In the event that the Court does not agree with the above interpretation of SIPA statute, then in the alternative, the Burnetts' Claims should still be allowed because the joint account was not a qualifying joint account as defined in Rule 105-Joint Accounts.[4]

11. When our account was funded/formed on August 28, 2002, it was our intent and understanding that my husband and I each possessed authority to act with respect to our individual share, or 50%, of the account. This was a second marriage for both of us.

12. BMIS had this understanding as well because as its books and records show, or should have shown, that in 2005 BMIS sent us the from to change the account to a joint account where I had authority to act with respect to the entire account. My husband at the time was sick and for convenience I had to have authority to act with respect to the entire account.

---

[3] SPIC was modeled on the then existing provisions of Federal Deposit Insurance Corporation ("FDIC"), and this interpretation of SPIA would be consistent with the FDIC provisions. Further this interpretation would not discriminate against married persons and would be consistent with public policy.

[4] SIPC Rule 105 (a) provides in pertinent part that: "A joint account shall be deemed to be a "qualifying joint account" if it is owned jointly, whether by the owners thereof as joint tenants with the right to survivorship, as tenants by the entirety or as tenants in common, or by husband and wife as community property, but only if each co-owner possesses authority to act with respect to the entire account.

3

13. Apparently, based on Baker Hostetler's July 1st letter to me, attached as Exhibit B, denying our two one million dollar claims, Mr. Picard, the Trustee for BMIS was unaware of the 2005 amendment to our account at BMIS.

14. The amendment is clear and convincing evidence that at all times prior to February 2, 2005, my husband's and my intent and understanding was that we each possessed authority to act with respect to our individual share, or 50%, of the account, otherwise there would have been no need for BMIS to send the form and for us to execute the amendment in 2005.

15. Accordingly, our joint account should be treated, consistent with SPIC Rule 105(d)[5], as individual accounts or a qualifying joint account of each of the co-owners. The Burnetts' Claims should be recognized in full.[6]

16. **Third Objection**: According to the Securities and Exchange Commission, BMIS was a fraudulent Ponzi scheme. As such the joint account could not be a qualifying joint account under Rule 105 because due to the claw back provisions applicable in Ponzi schemes neither my husband nor I possessed "authority to act with respect to the entire account." In fact, neither of us had any authority with respect to the account. At all times the only assets that ever existed were our individual one million dollar claims which should be allowed in full.

17. **Fourth Objection**. The BMIS Trustee has sought to condition my receipt of any SIPC funds (including undisputed amounts) on the execution of a Partial Assignment

---

[5] SIPC Rule 105 (d) provides in pertinent part that;" A joint account with a member which does not meet the requirements of paragraph (a) of this rule shall be deemed to be an individual or qualifying joint account of the co-owner or co-owners having the exclusive power to act with respect to it."

[6] It should also be noted that neither the July 30, 2002, nor the February 2,2005, Joint Account With Right Of Survivorship form was properly executed. The 2002 form (Exhibit C) lacks the account number and the 2005 form (Exhibit D) does not have the designation portion of the form completed.

4

and Release that would "release and forever discharge the SIPA Trustee and SIPC . . . from any and all claims arising out of or relating to my BMIS Account, the Customer Claim filed with the SIPA Trustee . . . , and any and all circumstances giving rise to the Customer Claim . . . ." See Determination Letter and Partial Assignment and Release attached thereto at 3-6 (Exhibit A). There is no legal basis for requiring such a Partial Assignment and Release, and the Trustee's actions attempt to compel me to give up substantial rights which are disputed as a condition to receiving amounts that are undisputed.

18. Indeed, conditioning the payment of funds to which customers are statutorily entitled on the execution of a release is contrary to the provisions of SIPA which direct that customer claims be paid "promptly." See 15 U.S.C. § 78fff(a)(1) (noting that one of the purposes of a SIPA liquidation proceeding is "to distribute customer property and . . . otherwise satisfy net equity claims of customers . . . as promptly as possible after the appointment of a trustee."); 15 U.S.C. § 78fff-2(b) ("[T]he trustee shall promptly discharge . . . all obligations of the debtor to a customer . . . by the . . . making of payments to or for the account of such customer."). Moreover, the demand for a release and assignment violates specific provisions of SIPA providing limited subrogation rights to the BMIS Trustee, which do not include the assignment and release sought by the BMIS Trustee. See, e.g., 15 U.S.C. § 78fff(a)(3) (providing that Trustee has "rights of subrogation as provided in this chapter"); 15 U.S.C. § 78fff-2(c)(3) (providing that Trustee's rights as subrogee are subordinate to rights of customers to customer property). In addition, the Trustee's demand is both unconscionable and contrary to public policy and should be stricken.

5

19. **Fifth Objection**. SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claims, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. See 15 USCS § 78fff-3 ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay ... claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in ... customer property on the basis and to the extent of their net equities"). Here, the BMIS Trustee has acknowledged in the Determination Letter that my deceased husband and I have an undisputed claim of $2,00,000 - an amount far in excess of the $500,000 amount SPIC has agreed that I an entitled to receive from SIPC. As such, SIPC is obligated to pay me $500,000 regardless of how the disputed portion of the claims are resolved. Under these circumstances, the BMIS Trustee's failure to pay the $500,000 immediately violates SIPA's mandate that payment be "prompt," is not justified by any statutory provision, unjustly enriches SIPC, and seeks to compel me into surrendering a significant portion of the Burnetts' Claims without consideration or compensation in order to obtain funds to which I am entitled to as a matter of statute. I am entitled to receive an immediate payment of $500,000, plus interest from the date of the determination and appropriate equitable relief as determined by the Court.

## RELIEF REQUESTED

20. For the reasons stated herein, the my husband's and my claims should be allowed in their entirety, with each of us being entitled to a $500,000 SPIC advance.

6

21. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to me in the amount of $500,000, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

## CONCLUSION

22. I reserve the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of my right to object on any additional grounds.

Dated: July 10, 2009

Penney P. Burnett, Pro Se
2285 Shippan Avenue
Stamford, CT. 06902
203-327-5076
203-327-5076 (fax)
ppb01@optonline.net

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

June 11, 2009

Penney P. Burnett
2285 Shippan Avenue
Stamford, CT 06902

Dear Ms. Burnett:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM716 designated as Claim Number 6274, as amended by Claim Number 6978:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,000,000.00, which is the amount of money you deposited with BLMIS for the purchase of securities on 8/29/2002.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

000001, 300015272.1, Trustee Determination Letter - Penney Burnett

Your **ALLOWED CLAIM** of $2,000,000.00 will be satisfied in the following manner:

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $500,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your claim - $1,500,000.00 - will remain as a claim against the fund of customer property.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78lll(4). Accordingly, Customers, as defined by SIPA § 78lll(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after June 11, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Penney P. Burnett, located at 2285 Shippan Avenue, Stamford, Connecticut 06902 (hereinafter referred to as the "Assignor") in consideration of the payment of $500,000.00 to satisfy in part her claim for customer protection (the "Customer Claim", having been designated Claim #6274, as amended by Claim #6978) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No.1CM716, the "BLMIS Account"), which gave rise to the allowed Customer Claim for

securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated June 11, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

**IN WITNESS WHEREOF**, the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
PENNEY P. BURNETT

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
Notary Public

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

July 1, 2009

Seanna R. Brown
direct dial: 212.589.4230
sbrown@bakerlaw.com

**VIA FACSIMILE AND MAIL (203) 327-5076**

Penney P. Burnett
2285 Shippan Avenue
Stamford, CT 06902

Re:   Bernard L. Madoff Investment Securities LLC ("BLMIS") Account No. 1CM716,
      Claims Nos. 6274, as amended by 6978

Dear Ms. Burnett:

I write on behalf of Irving H. Picard, trustee ("Trustee") for the liquidation of BLMIS. We are in receipt of your letter dated June 16, 2009, in which you requested that the Trustee set forth his legal basis for the payment of a single $500,000 SIPC advance for your customer account.

The books and records of BLMIS, and the documents submitted in connection with your customer claim, confirm that you (and, previously, your husband) had, at all times, a single account at BLMIS, Account No. 1CM716 (the "Account"). The records show that you and your husband opened the Account on July 30, 2002 as joint tenants with right of survivorship. (See enclosures, consisting of the account maintenance files at BLMIS relating to the Account, AMF00272671-00272747; specifically, AMF272741-AMF00273745). Upon your husband's death on November 11, 2006, by operation of law, you became the sole account holder. By letter dated December 4, 2006, you informed BLMIS of your husband's death and requested that it change the name on the Account to yours. (A copy of that letter is contained within the enclosures at AMF00272733).

Accordingly, BLMIS revised its books and records, removed your husband's name from the Account and thereafter listed only your name as the account holder. Indeed, from December 2006 until December 2008, the BLMIS customer statements you received for the Account listed only your name as the account holder. At all times, however, whether jointly held with your husband, or held in your individual name after his death, you had only one account with BLMIS. Thus, your claim that you have claims as to two customer accounts is factually incorrect.

Penney P. Burnett
July 1, 2009
Page 2

Since at all relevant times there was only a single Account, the Account is entitled to one $500,000 SIPC advance. The Trustee's position is supported by federal regulations governing the Securities Investor Protection Act ("SIPA"), 17 C.F.R. 300.100 et seq., specifically SIPC Rule 105, and case law relevant to this issue. In accordance with these authorities, each <u>account</u> is deemed a "customer" under SIPA entitled to an advancement of SIPC funds. Put another way, regardless of the number of co-owners, signatories, or beneficiaries of a particular customer account, only one SIPC advance is made to each qualifying customer account. Therefore, because you had one Account with BLMIS, you are entitled only to a single $500,000 SIPC advance.

Sincerely,

*[signature]*

Seanna R. Brown

Enclosures

cc:    Brian Bash, Esq.
       Thomas Wearsch, Esq.

**BERNARD L. MADOFF**  *Exhibit C*    212 230-2424
**INVESTMENT SECURITIES LLC**    800-334-1343
885 Third Avenue New York, NY 10022    Fax 212 486-8178

## JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP

RE: Account Number _____

In consideration of your carrying a joint account for the undersigned, the undersigned jointly and severally agree that each of them shall have authority on behalf of the joint account to buy, sell and otherwise deal in, through you as brokers, stocks, bonds, listed options any and all forms of securities, commodities and other property on margin or otherwise (including short sales and uncovered listed option writing); to receive on behalf of the joint account demands, notices, confirmations, reports, statements of account, and communications of every kind; to receive on behalf of the joint account money, securities and property of every kind, and to dispose of the same; to make on behalf of the joint account as fully and completely as if each alone were interested in said account, all without notice to the other or others interested in said account. The authority hereby conferred shall remain in force until written notice of its revocation, signed by both parties thereto, addressed to you is delivered at your office at 885 Third Avenue, New York, NY 10022-4834.

The undersigned further agrees jointly and severally that all property you may at any time be holding or carrying for any one or more of the undersigned shall be subject to a lien in your favor for the discharge of the obligations of the joint account to you, and conversely, that all property you may at any time be holding or carrying for the joint account account or for individual accounts of the undersigned shall be subject to a lien in your favor for the discharge of any obligations to you (of whatever nature) of any one or more of the undersigned, such liens to be in addition to and not in substitution of the rights and remedies you otherwise would have.

In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions theretofore held.

Since each of us is interested in the subject-matter of the authority hereby conferred upon the other, we jointly and severally agree, on our behalf and on behalf of our respective estates, that the authority hereby conferred by each of us upon the other shall survive our respective deaths.

The undersigned request that the said Joint Account be carried under the following designation: __William O. Burnett and Penney P. Burnett__
as Joint Tenants with the Right of Survivorship and not as Tenants in Common.

Subject to the provisions hereof, all notices or communications for the undersigned in respect of the joint account are to be directed to:

Name __Mr and Mrs. William O. Burnett__
Address __2285 Shippan Ave, Stamford, CT 06902__

Very truly yours,

X __[signature]__

X __Penney P. Burnett__

Dated __7/30/02__

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1X 5AD. Tel 020-7493 6222

AME00272745

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334 ....
Fax 212 ...

*Exhibit D*

## JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP

RE: Account Number __1-CM716-3-0__

In consideration of your carrying a joint account for the undersigned, the undersigned jointly and severally agree that each of them shall have authority on behalf of the joint account to buy, sell and otherwise deal in, through you as brokers, stocks, bonds, options any and all forms of securities, (including short sales and option writing); to receive on behalf of the joint account demands, notices, confirmations, reports, statements of account, and communications of every kind; to receive on behalf of the joint account as fully and completely as if each alone were interested in said account, all without notice to the other or others interested in said account. The authority hereby conferred shall remain in force until written notice of its revocation, signed by both parties thereto, addressed to you is delivered at your office at 885 Third Avenue, New York, NY 10022-4834.

The undersigned further agrees jointly and severally that all property you may at any time be holding or carrying for any one or more of the undersigned shall be subject to a lien in your favor for the discharge of the obligations of the joint account to you, and conversely, that all property you may at any time be holding or carrying for the joint account or for individual accounts of the undersigned shall be subject to a lien in your favor for the discharge of any obligations to you (of whatever nature) of any one or more of the undersigned, such liens to be in addition to and not in substitution of the rights and remedies you otherwise would have.

In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions theretofore held.

Since each of us is interested in the subject matter of the authority hereby conferred upon the other, we jointly and severally agree, on our behalf and on behalf of our respective estates, that the authority hereby conferred by each of us upon the other shall survive our respective deaths.

The undersigned request that the said Joint Account be carried under the following designation:

__As Joint Tenants with the Right of Survivorship and not as Tenants in Common.__

Subject to the provisions hereof, all notices or communications for the undersigned in respect of the joint account are to be directed to:

Name __William O. Burnett, Penney P. Burnett__
Address __2285 Shippan Ave, Stamford, CT 06902__

Very truly yours,

x __[signature]__

x __[signature]__

Dated 2, 2/05

Affiliated with: