**Schulte Roth & Zabel LLP**
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
Marcy Ressler Harris
Email:  marcy.harris@srz.com
Sahar H. Shirazi
Email:  sahar.shirazi@srz.com

*Attorneys for Denise Saul*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789-BRL <br><br> SIPA Liquidation |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Denise Saul ("Claimant"), by and through her attorneys, Schulte Roth & Zabel

LLP, hereby objects to the Notice of Trustee's Determination of Claim dated June 29, 2009

("Determination Letter"), attached as Exhibit A.

### BACKGROUND

1.      On December 15, 2008, the above-captioned liquidation proceeding was

commenced against Bernard L. Madoff Investment Securities, LLC ("BLMIS"), pursuant to the

Securities Investor Protection Act ("SIPA").  *See* Order, *SEC v. Madoff*, No. 08-10791 (S.D.N.Y.

Dec. 15, 2008) (Docket No. 4).  Irving Picard was appointed Trustee ("the BLMIS Trustee")

charged with overseeing the liquidation of BLMIS and processing customer claims pursuant to

SIPA.  *Id.*; 15 U.S.C. § 78fff-1.

      2.     On December 23, 2008, the Court entered an Order directing the BLMIS

Trustee to give notice of the liquidation proceeding and claims procedure to BLMIS customers

and setting forth claim filing deadlines.  *See* Order, *SIPC v. Bernard L. Madoff Securities, LLC*,

No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008) (Docket No. 12).  Upon information and belief,

the BLMIS Trustee provided notice and claim forms to BLMIS' customers in accordance with

the Court's Order.

      3.     The December 23, 2008 Order further provided that, to the extent the

BLMIS Trustee disagrees with the amount set forth on a customer claim form, the BLMIS

Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in

whole or in part, and the reason therefor . . . ."  *See* Dec. 23, 2008 Order at 6.

      4.     Claimant is a "customer" of BLMIS, as defined by SIPA.

      5.     Claimant's final BLMIS statement, dated November 30, 2008 ("Final

BLMIS Statement"), reflects that she owned securities valued at $1,760,346.04.

      6.     On or about February 26, 2009, Claimant submitted a customer claim

form to SIPC, setting forth her claim in the amount of $1,760,345.23.[1]  *See* Denise Saul

Customer Claim for Acct. No. 1S0221 (Exhibit B) (collectively with attachments thereto, the

"Customer Claim").  Claimant submitted the Final BLMIS Statement and other requested

documentation with the Customer Claim.  *Id.*

---

[1] There appears to be a *de minimis* discrepancy ($0.81) between the value of the securities owned by Claimant as reflected in the Final BLMIS Statement and the amount of Claimant's Customer Claim.

7.      All of the securities reflected in the Final BLMIS Statement are real, publicly verifiable securities (*e.g.*, Apple Computer, Inc., General Electric Co., Google, Wal-Mart Stores, Inc.). *See id.*

8.      The BLMIS Trustee sent Claimant the Determination Letter, dated June 29, 2009, allowing Claimant's claim only in the amount of $448,932.71, rather than in the amount of $1,760,345.23. *See* Determination Letter (Exhibit A).

9.      The Determination Letter provides that: "Your claim is ALLOWED for $448,932.71, which is the amount you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1." Determination Letter (Exhibit A). In published reports, the BLMIS Trustee has taken the position that "net equity" should be determined by netting all deposits and withdrawals by the customer over the life of the customer's BLMIS account (*i.e.*, the "cash in/cash out method"), without regard to any gains reflected in the Final BLMIS Statement or prior BLMIS statements.

10.     In addition, in the Determination Letter, the BLMIS Trustee seeks to condition Claimant's receipt of the $448,932.71, which he does not dispute, on the execution of an Assignment and Release. *See* Determination Letter and Assignment and Release attached thereto (Exhibit A).

11.     Claimant objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

### A.      The BLMIS Trustee's View of "Net Equity" is Contrary to SIPA, Second Circuit Precedent, and SIPC's Own Practices.

12.     Under SIPA, the BLMIS Trustee is obligated to "satisfy net equity claims of customers." 15 U.S.C. § 78fff(a)(1)(B).

3

13.    The BLMIS Trustee's cash in/cash out method of calculating "net equity"
is erroneous.

14.    SIPA plainly defines "net equity" as the value of the securities positions in
a customer's account as of the SIPA filing date – *i.e.*, December 11, 2008 – minus any amount
the customer owes the debtor.  Specifically:

> The term 'net equity' means the dollar amount of the account or accounts
> of a customer, to be determined by–
>
> (A) calculating the sum which would have been owed by the debtor to
> such customer if the debtor had liquidated, by sale or purchase *on the
> filing date*, all securities positions of such customer (other than customer
> name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor *on the filing date* . . . .

15 U.S.C. § 78*lll*(11) (emphasis added); *see also In re New Times Secs. Servs., Inc.*, 371 F.3d 68,

72 (2d Cir. 2004) ("*New Times I*") ("Each customer's 'net equity' is 'the dollar amount of the

account or accounts of a customer, to be determined by calculating the sum which would have

been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the

filing date, all securities positions of such customer' corrected for 'any indebtedness of such

customer to the debtor on the filing date.'").

15.    The fact that securities were never purchased by BLMIS does not affect
the calculation of "net equity" as defined by SIPA.  The Second Circuit specifically addressed
the situation where no securities were purchased by a broker in *New Times I.*  The Circuit court
held that net equity claims for "fictitious" securities (which never existed and the market value
for which could not be independently obtained or verified) were properly valued based on the
amount of money that the claimants initially provided to the debtor.  *Id.* at 88.  In contrast, where
the securities at issue were "real" and had publicly verifiable values, SIPC and the SIPC trustee

gave customers the full benefit of the SIPA remedy, calculating "net equity" as the value of

"real" securities reflected in a customer's account statements on the filing date. *Id*. at 74, 87.

16.    Likewise, SIPA's legislative history reflects that Congress was well aware

of the possibility of fictitious trading, and explicitly elected to protect the legitimate expectations

of customers, even where no securities were actually purchased.  As the Senate Report stated:

> Under present law, because securities belonging to customers may have
> been lost, improperly hypothecated, misappropriated, *never purchased* or
> even stolen, it is not always possible to provide to customers that which
> they expect to receive, that is, securities which they maintained in their
> brokerage account. . . .  By seeking to make customer accounts whole and
> returning them to customers in the form they existed on the filing date, the
> amendments . . . would satisfy the customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  Likewise, the House Report explained that

> [a] customer generally expects to receive what he believes is in his
> account at the time the stockbroker ceases business.  But because
> securities may have been lost, improperly hypothecated, misappropriated,
> *never purchased*, or even stolen, that is not always possible.  Accordingly,
> [when this is not possible, customers] will receive cash based on the
> market value as of the filing date.

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added).

17.    SIPC itself has acknowledged that a customer's legitimate expectations

control the determination of "net equity."  In a brief submitted to the Second Circuit in 2005,

SIPC wrote:

> [R]easonable and legitimate claimant expectations of the filing date *are
> controlling even where inconsistent with transactional reality*.  Thus, for
> example, where a claimant orders a securities purchase and receives a
> written confirmation statement reflecting that purchase, the claimant
> generally has a reasonable expectation that he or she holds the securities
> identified in the confirmation and therefore generally is entitled to recover
> those securities (within the limits imposed by SIPA), even where the
> purchase never actually occurred and the debtor instead converted the
> cash deposited by the claimant to fund that purchase.

*See* Br. of Appellant SIPC at 23-24, *In re New Times Secs. Servs., Inc.,* No. 05-5527-bk (2d Cir.

filed Dec. 27, 2005) ("*New Times II*") (emphasis added).

18.    As the Second Circuit recognized in *New Times I*, SIPC promulgated (and

the SEC approved) the Series 500 rules, 17 C.F.R. §§ 300.500-300.503, which confirm the

importance of protecting a customer's legitimate expectations. *New Times I*, 371 F.3d at 87

("[T]he premise underlying the Series 500 Rules [is] that a customer's 'legitimate expectations,'

based on written confirmations of transactions, ought to be protected."). Accordingly, "[u]nder

the Series 500 Rules, whether a claim is treated as one for securities or cash depends not on what

is *actually* in the customer's account but on what the customer has been told by the debtor in

written confirmations." *Id.* at 86 (emphasis in original).

19.    Claimant's legitimate expectations arise from the written confirmations

and account statements she received from BLMIS (*e.g.*, the Final BLMIS Statement and prior

BLMIS Statements), which reflected that she owned securities valued at $1,760,346.04. *See*

Customer Claim (Exhibit B). Claimant certainly had no expectation that BLMIS only owed her

the net of what she deposited and withdrew over the life of her account.

**B.    The BLMIS Trustee Has Failed to Comply with the Court's
December 23, 2008 Order.**

20.    In addition, the Determination Letter fails to provide "the reason" for the

disallowance of Claimant's full claim, as required by this Court's December 23, 2008 Order. *See*

Dec. 23, 2008 Order at 6. Specifically, the Determination Letter fails to set forth the relevant

facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy

§ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of

an answer. It should make clear which facts are disputed; it should allege facts necessary to

affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re*

*Enron Corp.*, No. 01-16304, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same). The BLMIS Trustee's purported ground for the disallowance —that "[n]o securities were ever purchased for your account," Determination Letter at 1 (Exhibit A) — is insufficient to meet the pleading standard.

### C. The BLMIS Trustee Cannot Condition Payment on Execution of an Assignment and Release in Excess of the Allowed Amount.

21.     The BLMIS Trustee has conditioned "payment of $448,932.71 to satisfy [Claimant's] claim for customer protection (the 'Customer Claim')" on the execution of an Assignment and Release that would "remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, . . . of and from any and all claims arising out of or relating to [Claimant's] BLMIS Account, the Customer Claim filed with the SIPA Trustee . . ., and any and all circumstances giving rise to said Customer Claim which [Claimant] now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to [Claimant] to satisfy [her] Customer Claim." *See* Determination Letter and Assignment and Release attached thereto at 2-3 (Exhibit A).

22.     Claimant objects to the Trustee's demand that she enter into the Assignment and Release to the extent that the Assignment and Release would require Claimant to surrender all claims for customer property and protection in amounts in excess of the allowed amount of $448,932.71.

### D. Claimant is Entitled to Prejudgment Interest.

23.     Under theories of fraud, conversion and unjust enrichment, Claimant is entitled to recover prejudgment interest on the funds she deposited with BLMIS. *See*

7

N.Y.C.P.L.R. §§ 5001, 5004; *Huang v. Sy*, 62 A.D.3d 660, 661-62 (2d Dep't 2009); N.Y. Gen. Oblig. § 5-501, *et seq.*; *Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 268 A.D.2d 371, 372 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

## CONCLUSION

24.     For the reasons stated above,

      a)     the Customer Claim should be allowed in its entirety;

      b)     the Court should direct SIPC to issue immediate payment to Claimant in the amount of $1,760,345.23, plus interest;

      c)     in the alternative, the Court should direct SIPC to issue immediate payment to Claimant in the amount of $448,932.71, plus interest, and modify the Assignment and Release to allow Claimant to pursue her Customer Claim for the balance of her net equity of $1,760,345.23; and

      d)     the Court should order such other and further equitable relief as the Court deems appropriate.

Dated: New York, New York
      July 29, 2009

SCHULTE ROTH & ZABEL LLP

By: Marcy Ressler Harris
Sahar H. Shirazi
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Denise Saul*