Meyer Muschel, Esq.
340 Bowery
New York, NY 10012

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA Liquidation |
| | (Substantively Consolidated) |
| Defendant. | |

-----------------------------------------------------------|

| | |
|---|---|
| In re: | 09-11893 (BRL) |
| BERNARD L. MADOFF, | |
| Debtor. | |

-----------------------------------------------------------x

**OBJECTION OF THE JOSEPH N. MUSCHEL MEMORIAL FOUNDATION TO THE FIRST APPLICATION OF BAKER & HOSTETLER LLP AND OTHER PROFESSIONALS OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES <u>INCURRED FROM DECEMBER 15, 2008 THROUGH APRIL 30, 2009</u>**

**TO THE HONORABLE BURTON R. LIFLAND, UNITED STATES BANKRUPTCY JUDGE:**

Meyer Muschel, Esq., counsel to The Joseph N. Muschel Memorial Foundation (the "Foundation"), a creditor in the aforementioned proceeding, files this objection on behalf of the Foundation, to the first application of Baker & Hostetler LLP and other professionals for Allowance of Interim Compensation and Reimbursment , and submits as follows:

**Background**

1. I am counsel to the Joseph N. Muschel Memorial Foundation, a private operating foundation named for Dr. Joseph N. Muschel, a young physician who tragically died of cancer in 1995. The purpose of the Foundation, which was established to honor and perpetuate the memory of this fine young doctor, is to support within the medical world the type of worthy educational projects and charitable endeavors that he had been known to advocate.

2. The Foundation invested virtually all of its funds with the Debtor over the last two years. Thus, the Madoff scandal, to the extent that it robbed the Foundation of its ability to support charitable causes in the name of a loved one, is a terrible tragedy.

3. It would be yet tragedy upon tragedy for this Foundation, and presumably for the many, many other charitable foundations and individuals whose lifelong investments were managed by the Debtor if this Court were to now approve even on an interim basis, the first application of Baker & Hosteltler ("B&H") for compensation ("B&H's Fee Application") or the other professional applications. In this regard, the B&H Fee application for over $14 million for four months of "work" in this case is, simply put, scandalous on several levels.

4. As set forth in greater detail below, the B&H Fee Application and the others should be rejected, *in toto*, as they are outrageous and unreasonable on their face

2

both in light of the amounts sought and in light of the actual services rendered to creditors.

5. Second, as set forth below, the fee applications raise more questions than they answer and the number of hours purportedly worked are suspect. Particularly in a case whose entire roots are based in the lack of oversight of a criminal debtor, an auditor should be appointed to evaluate the veracity of the hours purportedly invested by many of the professionals in this case who now seek payment on the basis thereof.

**The Fee Application for in excess of $14 Million is Outrageous on its face.**

6. The $14 million number sought in the B&H Fee application for four months' work is outrageous. $14 million for 4 months translates to $42 million per year. For a liquidation – ANY liquidation, such a number is simply absurd. Nor can one conceive of any business that generates such huge income with no accountability whatsoever for the results they achieve on behalf of those to whom they owe a fiduciary obligation.

7. Even if it were realistic to believe that the hours invested are as they purport to be (as set forth below, I submit that the numbers are not realistic), it would be grossly inappropriate to permit law firms and other professionals to charge and collect huge fees and justify same simply based on the size of a case. Those of us that have practiced bankruptcy in large firms in New York, as I have, know that the role of the main bankruptcy professionals do not change all that much even in

3

the larger cases. Rather, there are separate firms that are retained to provide the specialized legal services. This has been true in this case as well. As for the primary professionals' involvement, while there is admittedly some additional work, it is not proportional to the size of the case, e.g. there are simply more claims against the entity.

8. The Bankruptcy Code also has provisions which incentivise trustees in liquidations by allowing for compensation of up to only 3% of what they <u>distribute</u> to creditors. In this liquidation, therefore, it seems highly inappropriate to allow the professionals who <u>support</u> the Trustee's work, to exceed this structure on an interim basis, particularly at such highly egregious amounts. Such an approach will leave the bulk of the estate – in huge numbers - to the professionals. Particularly in this case, where so many have their life savings in this Debtor's trust, such a result would be a travesty.

9. While the law may technically permit the reimbursement of legal fees at reasonable levels on an interim basis - even at rates higher than the trustee would earn - there is no requirement under the law that obligate a Court to compensate a firm on an interim level at such a high rate. Nor is it reasonable here.

10. The professionals in this case should be compensated based not upon the "time" they have purported to spend, but, as their application title reflects, the "service" they have rendered. At a minimum, in a case such as this one, there should be a "cap" on professional fees based upon the benefits received by creditors. It is simply too early to justify interim applications at such excessive figures given that

4

no benefits have been received by creditors at this time. Awarding interim fees in these large amounts at this time, even with the "discount" and 20% holdback, would serve only the interests of the professionals themselves, and then, at the expense of the creditors to who such professionals owe a fiduciary duty.

11. Even assuming that the source of the reimbursement of professional fees will come out of an insurance pool earmarked for professional fees only and not affect creditors, there is simply no justification for these fees.

**The Fee Application Raises More Questions than it Anwers.**

12. Furthermore, a cursory review of the B&H Fee Application raises more questions than it answers and this Court should review the application and the detail behind it further before anything is approved. Indeed, if the Bernard Madoff case speaks to anything, it speaks to the need of appropriate auditing. To the extent that such detailed time sheets are too onerous for the Court to review, I respectfully submit that an auditor should be retained to review in detail these time sheets and submit a report.[1]

13. In this regard, the Court and creditors have just been given a bill for over $14,000,000 for four months of work, and essentially told "trust us, we really spent that amount of time, and it was legitimate, justifiable work." The same is

---

[1] In fact, pursuant to Section 503 of the Bankruptcy Code, I would, if given the opportunity, consider reviewing the fee applications of B&H and the other professionals and seek reimbursent from the Court based upon a "substantial contribution" threshold after I have identified the overbilling and overcharging which I believe would be found in these applications. At this point, I seek only the Court's intervention in not permitting these outrageous fees to be sustained. I also believe that the task of overseeing the veracity of the timesheets is better left to a professional specifically retained for such purpose.

5

true for the other applications.  There were no detailed time sheets provided to this representative of a creditor, who requested it, or, apparently. to the Court.

14. In fact, in response to my request for such detail, Marc Hirschfield, a member of the Bankruptcy Group at Baker & Hostetler LLP, advised me by email that he could not provide me with those time records nor have they been filed with the Bankruptcy Court.  Mr. Hirschfield's email to me is attached.

15. But even without the detail, just from the summary of hours provided, the application is suspect.  For example, in the B&H Fee Application, Mr. David Sheehan, the lead partner in this case - a man who according to the application graduated law school in 1968 and would, presumably, be over 60 years of age today - purports to have worked an average of over 56 hours a week on this case over the last four and ½ months <u>on this case alone</u>.  Assuming Mr. Sheehan devoted some of his time to other cases, and took/or some hours/days off in that period, e.g. for Christmas and other family time, to eat, sleep and travel – even back and forth to work - the amount of hours in a given  week Mr. Sheehan would have had to work on this case per week is even more than that.

16. As an attorney who specialized in bankruptcy law at a major New York law firm for several years and even appeared before this court on several occasions, I can represent that such billable hours are extremely difficult for even a 25 year old associate to sustain over such a period, let alone a partner well into his sixties.  And this is true even assuming that an individual spends literally all of his time on one case and ignores all of his other clients.  Did Mr. Sheehan spend any

6

professional time on *anything* else? Does he have *any* other clients who he dealt with at all during this period? Even if not, the hours are really next to impossible to maintain.

17. I am also all too familiar from my own involvement in bankrutpcy cases involving the large firm, with the major law firms' determination to "milk" billable hours out of large cases and the pressure put on associates in these firms to do the same. The B&H Fee Application smacks of precisely such an approach. It has at least one partner billing "superhuman" hours, it has a total of 77 partners and counsels working on the case, and still close to another 100 associates billing for astronomical hours. In total the firm has billed an obscene 38,000 hours of work in four months. And if the partners' hours are suspect, what does it say about the associates?

18. Finally, when one considers the complete lack of any description of real tangible services provided, the B&H Fee Application is even more ridiculous.

19. In fact, other than documenting the firm's historical "experience" and that of its partners in the bankruptcy world and the amount of time their attorneys and other professionals spent on this case, there is very little discussion in the entire B&H Fee Application of any tangible results achieved for creditors by the firm. The only place where any result is reflected is in the Trustee's separate application for his fees, where he describes a $575 million recovery in funds by the Trustee from various banks.

7

20. But this recovery has not even been distributed to creditors, nor is it clear, based upon professional fees sought just to date, that it ever will be. Nor does the $575 million recovery appear, based on the Trustee's own report, to have involved a great deal of time or have been difficult to achieve.

**Conclusion**

21. I respectfully submit that in the absence of a detailed report of the hours worked, it is impossible for this Court or anyone to evaluate all of the detail of the purported work done by B&H or the other professionals. Given the huge number of hours reported and the questions surrounding the hours billed in this case - which case is itself born out of lack of oversight - an auditor is necessary to review and evaluate the veracity of these hours before they should be recognized as legitimate.

22. Particularly in this case involving a criminal debtor, the Court should be mindful of the interests of the creditors and not permit questionable fee applications to stand. It would be a shame if the heinous conduct of the Debtor were permitted to infect the professionals serving this case as well.

**WHEREFORE**, the Joseph N. Muschel Memorial Foundation, a creditor in this case, by its counsel, respectfully ask this Court to deny the First Applications of Baker & Hostetler and the other professionals of Interim Compensation at this time.

Respectfully Submitted.

Joseph N. Muschel Memorial Foundation

By

Meyer Muschel
Attorney at Law

_____

Meyer Muschel
340 Bowery
New York NY 10012

## Request for copy of your office's fee application...

**From: Hirschfield, Marc E. <mhirschfield@bakerlaw.com> Wed, Jul 29, 2009 at 1:51 PM**
To: meyer muschel <mmuschel@gmail.com>
Cc: "Landrio, Nikki" <nlandrio@bakerlaw.com>

Mr. Muschel,

My legal assistant sent you the fee applications we filed with the Bankruptcy Court and I trust you received them. I also understand that you have requested our time records. As we have not filed them with the Bankruptcy Court, we are not in a position to send them to you.

Best regards,
Marc

**My Bio | Web site | V-card**
T 212.589.4610
F 212.589.4201
www.bakerlaw.com
**Marc Hirschfield**
mhirschfield@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111