# EXHIBIT A

JUDGE CHIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

09 CRIM 213

UNITED STATES OF AMERICA       :

    -v-       :

BERNARD L. MADOFF,       :

        Defendant.       :

- - - - - - - - - - - - - - - x

**INFORMATION**

09 Cr.

USDC SDNY
DOCUMENT
ELECTRONICALLY
DOC #: _____
DATE FILED: MAR 10 2009

**COUNT ONE**
(Securities Fraud)

    The United States Attorney charges:

**Relevant Persons and Entities**

    1.   At all times relevant to this Information, Bernard
L. Madoff Investment Securities LLC, and its predecessor, Bernard
L. Madoff Investment Securities (collectively and separately,
"BLMIS"), had its principal place of business in New York, New
York, most recently at 885 Third Avenue, New York, New York.
BLMIS was a broker-dealer that engaged in three principal types
of business:  market making; proprietary trading; and investment
advisory services.  BLMIS was registered with the United States
Securities and Exchange Commission ("SEC") as a broker-dealer and
was, beginning in or about 2006, registered with the SEC as an
investment adviser.

    2.   At all times relevant to this Information, Madoff
Securities International Ltd. ("MSIL") was a corporation

MICROFILMED   MAR 1 0 2009  -2 ☐ PM

incorporated in the United Kingdom. MSIL was an affiliate of
BLMIS which engaged principally in proprietary trading.

3.    BERNARD L. MADOFF, the defendant, was the founder
of BLMIS, and served as its sole member and principal. In that
capacity, MADOFF controlled the business activities of BLMIS.
MADOFF owned the majority of the voting shares of MSIL, and
served as the Chairman of MSIL's Board of Directors. MADOFF also
served on the Board of Directors of the National Association of
Securities Dealers Automated Quotations ("NASDAQ"), and for a
period served as the Chairman of NASDAQ.

### The Scheme to Defraud

4.    From at least as early as the 1980s through on or
about December 11, 2008, BERNARD L. MADOFF, the defendant,
perpetrated a scheme to defraud the clients of BLMIS by
soliciting billions of dollars of funds under false pretenses,
failing to invest investors' funds as promised, and
misappropriating and converting investors' funds to MADOFF's own
benefit and the benefit of others without the knowledge or
authorization of the investors.

5.    To execute the scheme, MADOFF solicited and caused
others to solicit prospective clients to open trading accounts
with BLMIS, based upon, among other things, his promise to use
investor funds to purchase shares of common stock, options and
other securities of large, well-known corporations, and

representations that he would achieve high rates of return for
clients, with limited risk. In truth and in fact, as MADOFF well
knew, these representations were false. MADOFF failed to honor
his promises to BLMIS clients by, among other things, failing to
invest the BLMIS investment advisory clients' funds in securities
as he had promised. Instead, notwithstanding his promises to the
contrary, and notwithstanding representations that MADOFF made
and caused to be made on tens of thousands of account statements
and other documents sent through the United States Postal Service
to BLMIS clients throughout the operation of this scheme, MADOFF
operated a massive Ponzi scheme in which client funds were
misappropriated and converted to the use of MADOFF, BLMIS, and
others.

      6.    In connection with this Ponzi scheme, BERNARD L.
MADOFF, the defendant, accepted billions of dollars of investor
money, cumulatively, from individual investors, charitable
organizations, trusts, pension funds, and hedge funds, among
others, and established on their behalf thousands of accounts at
BLMIS. From the outset of the scheme, and continuing throughout
its operation, MADOFF obtained investor funds through interstate
wire transfers from financial institutions located outside New
York State and through mailings delivered by the United States
Postal Service.

7.    In the course of carrying out this scheme, BERNARD
L. MADOFF, the defendant, made, and caused others to make, false
representations concerning his investment strategies to clients
and prospective clients of BLMIS. Among other things, MADOFF
marketed to clients and prospective clients an investment
strategy referred to as a "split strike conversion" strategy.
Clients were promised that BLMIS would invest their funds in a
basket of approximately 35-50 common stocks within the Standard &
Poor's 100 Index (the "S&P 100"), a collection of the 100 largest
publicly traded companies in terms of their market
capitalization. MADOFF claimed that he would select a basket of
stocks that would closely mimic the price movements of the S&P
100. MADOFF further claimed that he would opportunistically time
those purchases, and would be "out of the market" intermittently,
investing clients' funds in these periods in United States
Government-issued securities such as United States Treasury
bills. MADOFF also claimed that he would hedge the investments
that he made in the basket of common stocks by using investor
funds to buy and sell option contracts related to those stocks,
thereby limiting potential losses caused by unpredictable changes
in stock prices.

8.    Further, to induce new and continued investments
by clients and prospective clients, MADOFF promised certain
clients annual returns in varying amounts up to at least

4

approximately 46 percent per year. MADOFF also told certain clients that the fee for his services would be based on an approximately $0.04 per share commission on the stocks that MADOFF traded for such clients.

9. Contrary to his promises to those clients that he would use their funds to purchase securities on their behalf, and would invest client funds pursuant to the strategies he had marketed, MADOFF used most of the investors' funds to meet the periodic redemption requests of other investors. In addition, MADOFF took some of these clients' investment funds as "commissions," which he used to support the market making and proprietary trading businesses of BLMIS, and from which he and others received millions of dollars in benefits.

10. BERNARD L. MADOFF, the defendant, created and caused to be created a broad infrastructure at BLMIS to generate the impression and support the appearance that BLMIS was operating a legitimate investment advisory business in which client funds were actively traded as he had promised, and to conceal the fact that no such business was actually being conducted. Among other things, MADOFF hired numerous employees to serve as a "back office" for this investment advisory business. Many of the employees hired to perform those functions had little or no prior pertinent training or experience in the securities industry. MADOFF caused those BLMIS employees to,

among other things, communicate with clients and generate false
and fraudulent documents including, but not limited to, monthly
client account statements and trade confirmations that
purportedly reflected the purchases and sales of securities that
MADOFF claimed had been conducted on behalf of BLMIS's clients.
MADOFF further caused account statements and trade confirmations
that were sent to clients to reflect fictitious returns
consistent with the returns that had been promised to those
clients.

          11.    Moreover, to support BLMIS's market making and
proprietary trading businesses, between at least as early as in
or about 2002 and in or about 2008, BERNARD L. MADOFF, the
defendant, caused more than $250 million of BLMIS investment
advisory clients' funds to be directed, through a series of wire
transfers, to the operating accounts that funded the operations
of these businesses.  Specifically, MADOFF caused those investor
funds to be sent from a BLMIS account in New York, New York (the
"BLMIS Client Account"), to accounts held by MSIL in London,
United Kingdom (the "MSIL Accounts"), and further caused funds to
be transferred from the MSIL Accounts to either the BLMIS Client
Account or to another bank account in New York, New York, which
was principally used to fund BLMIS's operations (the "BLMIS
Operating Account").  MADOFF directed these funds transfers, in
part, to give the appearance that he was conducting securities

transactions in Europe on behalf of the investors when, in fact,
he was not conducting such transactions.  MADOFF also directed
the transfer of funds from the MSIL Accounts to purchase and
maintain property and services for the personal use and benefit
of MADOFF, his family members and associates.

   12.  To conceal his scheme, BERNARD L. MADOFF, the
defendant, among other things, withheld information from
regulators and repeatedly lied to the SEC in written submissions
and in sworn testimony.

   13.  In furtherance of the scheme, BERNARD L. MADOFF,
the defendant, caused false and fraudulent certified financial
statements for BLMIS, including balance sheets, statements of
income, statements of cash flows, and reports on internal
control, to be created.  MADOFF further caused such false and
fraudulent financial statements to be sent to clients and
prospective clients through the United States Postal Service, and
also caused such false and fraudulent financial statements to be
filed with the SEC.  Among other things, MADOFF knew that the
certification attached to the BLMIS financial statements falsely
averred that those statements had been prepared in accordance
with Generally Accepted Auditing Standards and Generally Accepted
Accounting Principles.

   14.  As of on or about November 30, 2008, BLMIS had
approximately 4,800 client accounts.  On or about December 1,

2008, BLMIS issued account statements for the calendar month of
November 2008 reporting that those client accounts held a total
balance of approximately $64.8 billion. In fact, BLMIS held only
a small fraction of that balance on behalf of its clients.

### Statutory Allegation

15.    From at least the 1980s through on or about
December 11, 2008, in the Southern District of New York and
elsewhere, BERNARD L. MADOFF, the defendant, unlawfully,
willfully, and knowingly, directly and indirectly, by the use of
means and instrumentalities of interstate commerce, the mails,
and the facilities of national securities exchanges, in
connection with the purchase and sale of securities, did use and
employ manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by: (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material facts and
omitting to state material facts necessary in order to make the
statements made, in light of the circumstances under which they
were made, not misleading; and (c) engaging in transactions,
acts, practices, and courses of business which operated and would
operate as a fraud and deceit upon persons.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18 United States Code, Section 2.)

## COUNT TWO
(Investment Adviser Fraud)

The United States Attorney further charges:

16.   The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

17.   From at least the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, acting as an investment adviser with respect to clients and potential clients of BLMIS, unlawfully, willfully, and knowingly, by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, did: (a) employ devices, schemes, and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and prospective clients; and (c) engage in acts, practices, and courses of business that were fraudulent, deceptive, and manipulative.

(Title 15, United States Code, Sections 80b-6 and 80b-17;
Title 18, United States Code, Section 2.)

## COUNT THREE
(Mail Fraud)

The United States Attorney further charges:

18.   The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

9

19.   From at least as early as the 1980s through on or
about December 11, 2008, in the Southern District of New York and
elsewhere, BERNARD L. MADOFF, the defendant, unlawfully,
willfully, and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, for the purpose of executing such
scheme and artifice and attempting so to do, did place in post
offices and authorized depositories for mail matter, matters and
things to be sent and delivered by the Postal Service, and did
deposit and cause to be deposited matters and things to be sent
and delivered by private and commercial interstate carriers, and
did take and receive therefrom such matters and things, and did
knowingly cause to be delivered, by mail and such carriers
according to the directions thereon, and at the places at which
they were directed to be delivered by the persons to whom they
were addressed, such matters and things, to wit, on or about
December 1, 2008, MADOFF sent and caused to be sent and delivered
via the Postal Service a false and fraudulent account statement
from BLMIS to a client in New York, New York.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT FOUR
(Wire Fraud)

The United States Attorney further charges:

20.    The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

21.    From at least as early as the 1980s through on or about December 11, 2008, in the Southern District of New York and elsewhere, BERNARD L. MADOFF, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, on or about August 5, 2008, MADOFF caused approximately $2 million of investor funds to be sent by wire from Bloomington, Minnesota to New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

11

### COUNT FIVE
(International Money Laundering To Promote
Specified Unlawful Activity)

The United States Attorney further charges:

22.    The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

23.    From at least as early as in or about 2002,
through on or about December 11, 2008, in the Southern District
of New York, the United Kingdom, and elsewhere, BERNARD L.
MADOFF, the defendant, in an offense involving and affecting
interstate and foreign commerce, unlawfully, willfully and
knowingly, transported, transmitted and transferred, attempted to
transport, transmit and transfer, and caused others to transport,
transmit and transfer, and attempt to transport, transmit, and
transfer, funds from a place in the United States to a place
outside the United States, and funds from a place outside the
United States to a place within the United States, with the
intent to promote the carrying on of specified unlawful activity,
to wit, fraud in the sale of securities, mail fraud, wire fraud,
and theft from an employee benefit plan, to wit, MADOFF caused
funds to be wire transferred from BLMIS bank accounts, including
the BLMIS Investor Account in New York, New York, to the MSIL
Accounts in London, England, in the United Kingdom, and to be
transferred from the MSIL Accounts in London, England, in the

United Kingdom, to BLMIS bank accounts, including the BLMIS

Operating Account, in New York, New York, in order to promote

fraud in the sale of securities, mail fraud, wire fraud, and

theft from an employee benefit plan.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

### COUNT SIX
(International Money Laundering To Conceal And Disguise
The Proceeds of Specified Unlawful Activity)

The United States Attorney further charges:

24.   The allegations contained in paragraphs 1 through

14, above, are hereby repeated, realleged and incorporated by

reference as if fully set forth herein.

25.   From at least as early as in or about 2002,

through on or about December 11, 2008, in the Southern District

of New York, the United Kingdom, and elsewhere, BERNARD L.

MADOFF, the defendant, in an offense involving and affecting

interstate commerce, knowing that the property involved in

certain financial transactions, to wit, investor funds in the

custody and care of BLMIS, represented the proceeds of some form

of unlawful activity, unlawfully, willfully and knowingly would

and did conduct and attempt to conduct such financial

transactions which in fact involved the proceeds of specified

unlawful activities, to wit, fraud in the sale of securities,

mail fraud, wire fraud, and theft from an employee benefit plan,

knowing that the transactions were designed in whole and in part

to conceal and disguise the nature, the location, the source, the

13

ownership and the control of the proceeds of said specified

unlawful activity.

        26.   Such financial transactions included, but were not

limited to, the following:

        a.   From at least in or about 2006, through on or

about December 11, 2008, BERNARD L. MADOFF, the defendant, caused

funds to be wire transferred from BLMIS bank accounts in New

York, New York, including the BLMIS Investor Account, to the MSIL

Accounts in London, England, in the United Kingdom, and

thereafter to be transferred from the MSIL Accounts in the United

Kingdom to BLMIS bank accounts in New York, New York, including

the BLMIS Investor Account and the BLMIS Operating Account, which

transfers were designed to give the false and fraudulent

appearance that BLMIS was operating a legitimate investment

advisory business in which client funds were being used to

purchase and sell securities as MADOFF had promised, and to

conceal the fact that no such purchases or sales were actually

being made; and

        b.   From at least in or about 2002, through on or

about December 11, 2008, MADOFF caused funds to be wire

transferred from BLMIS bank accounts in New York, New York,

including the BLMIS Investor Account, to the MSIL Accounts in

London, England, in the United Kingdom, and thereafter to be

transferred from the MSIL Accounts in the United Kingdom to

                                14

purchase and maintain property and services for the personal use
and benefit of MADOFF, his family members and associates.

(Title 18, United States Code, Sections
1956(a)(1)(B)(i) & (f) and 2.)

### COUNT SEVEN
(Money Laundering)

The United States Attorney further charges:

27.   The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

28.   From at least in or about the 1980s, through on or
about December 11, 2008, in the Southern District of New York and
elsewhere, BERNARD L. MADOFF, the defendant, in an offense
involving and affecting interstate and foreign commerce,
unlawfully, willfully, and knowingly engaged and attempted to
engage in and cause others to engage in a monetary transaction in
criminally derived property that was of a value greater than
$10,000 and was derived from specified unlawful activity; to wit,
on or about April 13, 2007, MADOFF caused approximately
$54,485,750 derived from fraud in the sale of securities, mail
fraud, wire fraud, and theft from an employee benefit plan, to be
transferred from the BLMIS Investor Account in New York, New
York, to one of the BLMIS Accounts in London, England, in the
United Kingdom.

(Title 18, United States Code, Sections 1957 and 2.)

15

## COUNT EIGHT
(False Statements)

The United States Attorney further charges:

29.   The allegations contained in paragraphs 1 through 14, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

30.   Beginning in or about 2006, as described in paragraph 1 above, BLMIS was, among other things, an investment adviser registered with the SEC.   As such, BLMIS was subject to periodic examinations by the SEC, and was required to file an SEC Form ADV Uniform Application for Investment Adviser Registration ("ADV").

31.   On or about January 7, 2008, BERNARD L. MADOFF, the defendant, filed and caused to be filed an ADV with the SEC (the "BLMIS ADV").   The BLMIS ADV was signed by MADOFF, who certified, under penalty of perjury under the laws of the United States, that the information and statements made therein were true and correct, and that he was signing the BLMIS ADV as a free and voluntary act.

32.   The BLMIS ADV contained false statements made for the purpose of deceiving the SEC and hiding the defendant's unlawful conduct described in paragraphs 4 through 14, above. The BLMIS ADV filed with the SEC stated, among other things, in substance, that BLMIS had custody of advisory clients' securities.

16

33.   On or about January 7, 2008, in the Southern
District of New York, BERNARD L. MADOFF, the defendant,
unlawfully, willfully, and knowingly, in a matter within the
jurisdiction of the executive branch of the Government of the
United States, namely, the SEC, made materially false,
fictitious, and fraudulent statements and representations, to
wit, MADOFF filed the BLMIS ADV with the SEC, in which he made
the following false statement that was material to the SEC's
oversight of BLMIS's investment adviser business:

### Specification

MADOFF falsely stated that BLMIS had "custody of . . .
advisory clients' . . . securities."

(Title 18, United States Code, Section 1001(a).)

### COUNT NINE
(Perjury)

The United States Attorney further charges:

34.   The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

35.   As described in paragraph 1 above, BLMIS was at
certain times, among other things, a broker-dealer and investment
adviser registered with the SEC.   As such, BLMIS was subject to
periodic examinations by the SEC.   The SEC has broad authority to
conduct investigations into various aspects of the securities
markets and, in or about 2006, was conducting such an

17

investigation. As part of that investigation, on or about May
19, 2006, employees of the SEC took the voluntary testimony of
BERNARD L. MADOFF, the defendant, under oath (the "MADOFF SEC
Testimony").

36. During the course of the MADOFF SEC Testimony,
BERNARD L. MADOFF, the defendant, made numerous false and
misleading statements for the purpose of deceiving the SEC and
hiding his unlawful conduct described in paragraphs 4 through 11,
above. MADOFF testified, among other things, in substance, that:
(a) BLMIS executed trades of common stock on behalf of its
investment advisory clients; (b) BLMIS executed options contracts
on behalf of its investment advisory clients; (c) BLMIS had
custody of the assets managed on behalf of its investment
advisory clients; and (d) BLMIS used the same trading strategy
for all its investment advisory clients.

37. On or about May 19, 2006, in the Southern District
of New York, BERNARD L. MADOFF, the defendant, having taken an
oath before a competent tribunal, officer and person, in a case
in which the law of the United States authorizes an oath to be
administered, namely, in testimony before an officer of the SEC,
that he would testify, declare, depose and certify truly, and
that any written testimony, declaration, deposition and
certificate by him subscribed, would be true, unlawfully,
willfully, knowingly, and contrary to such oath, stated and
subscribed material matters which he did not believe to be true,

18

namely, in his testimony on or about May 19, 2006, MADOFF

knowingly testified falsely as to the material matters in the

portions of his cited testimony underlined below:

### Specification One
(Page 55, Lines 20-25)

Q:    Let's just get back to some of the basics that we
      discussed before.  You mentioned earlier that the
      basket in the institutional trading business may be
      hedged with options.  Does that in fact happen?

A:    <u>Yes</u>.

### Specification Two
(Page 57, Lines 15-20)

Q:    Let's focus on the actual execution portion of it.
      Let's go back to the equities.  You mentioned that you
      used this AHOE system, and you mention[ed] that it
      exposes a sliced order to the European market.  Is it
      correct then that the equities are traded in Europe?

A:    <u>Yes</u>.

### Specification Three
(Page 63, Lines 11-23)

Q:    Now you mentioned that there was a group of dealers to
      whom you put out this indication of interest each time.
      Generally, with how many of them do you end up trading
      in each execution?

A:    <u>Within the basket, we're probably interacting with 40,
      close to 50</u>.

Q:    That's for equities and options.

A:    <u>Equities. Options is a dozen</u>.

Q:    A dozen.  Do all of them end up trading usually?

A:    <u>Pretty much.  They all trade on a - yes.  It's usually
      that they all participate during the trading.  They
      have an interest in these stocks.  These stocks are the
      marketplace.</u>

### Specification Four
(Page 65, Lines 16-18)

Q:    Who are the counterparties to the options contracts?

A:    They're basically European banks.

### Specification Five
(Page 66, Line 19 - Page 67, Line 20)

Q:    So how does the time frame for the options trading
      relate to the time frame for the equities trading?

A:    First we're putting the equity basket on, and then
      we're putting the options on after the equity basket is
      complete, so the options are being done basically in
      the morning typically between 8:00 and 9:00 a.m.

. . . .

Q:    With the options trades, is there any documentation
      generated?  For example, for some derivatives, there is
      an after agreement and you have a confirmation, a 2-
      page document.  Is there something like that for the
      options trades?

A:    Yes, there's an affirmation that's generated
      electronically, and there's a master option agreement
      that's attached to that that's also electronic.

Q:    And the electronic affirmation stores data for each
      trade with each particular dealer.

A:    Correct.

Q:    So if you wanted to find out with whom you bought these
      contracts on a particular day, that's where you would
      go.

A:    Right.

### Specification Six
(Page 85, Lines 2-3)

Q:    Who has the custody of the assets?

A:    We do.

### Specification Seven
(Page 116, Line 17 - Page 117, Line 2)

Q:   I wanted to go back to the question that [an SEC
     attorney] asked you about other persons, persons other
     than the institutional customers that we discussed so
     far and proprietary situations.  The trading for these
     persons, is it also pursuant to the same strategy [as]
     in the institutional trading business?

A:   <u>Yes</u>.

Q:   What is approximately the total amount of assets traded
     for these persons?

A:   My guess would be something, <u>a few hundred million
     dollars</u>.

     (Title 18, United States Code, Section 1621.)

### COUNT TEN
(False Filing With The Securities And Exchange Commission)

          38.   The allegations contained in paragraphs 1 through

14, above, are hereby repeated, realleged and incorporated by

reference as if fully set forth herein.

          39.   On or about December 20, 2007, in the Southern

District of New York, BERNARD L. MADOFF, the defendant,

unlawfully, willfully, and knowingly, in applications, reports,

and documents required to be filed with the SEC under the

Securities Exchange Act of 1934, and the rules and regulations

thereunder, did make and cause to be made statements that were

false and misleading with respect to material facts, to wit,

21

MADOFF caused a false and misleading certified BLMIS audit report
to be filed with the SEC.

(Title 15, United States Code, Sections 78q(e) and 78ff;
Title 17, Code of Federal Regulations, Sections 240.17a-5,
240.17a-13 and 210.2-01; Title 18, United States Code,
Section 2.)

## COUNT ELEVEN
(Theft From An Employee Benefit Plan)

40.    The allegations contained in paragraphs 1 through
14, above, are hereby repeated, realleged and incorporated by
reference as if fully set forth herein.

41.    From at least as early as the 1990s through on or
about December 11, 2008, in the Southern District of New York and
elsewhere, BERNARD L. MADOFF, the defendant, unlawfully,
willfully, and knowingly, embezzled, stole, abstracted and
converted to his own use, and to the use of others, moneys,
funds, securities, premiums, credits, properties, and other
assets of employee welfare benefit plans and employee pension
benefit plans and funds connected therewith, to wit, on or about
September 24, 2008, MADOFF failed to invest as promised
approximately $10 million in pension fund assets sent to BLMIS by
a master trust on behalf of approximately 35 labor union pension
plans, and instead converted those funds to his use and the use
of others.

(Title 18, United States Code, Sections 664 and 2.)

## FORFEITURE ALLEGATION
(Offenses Constituting Specified Unlawful Activity)

42.    As the result of committing the offenses

constituting specified unlawful activity as defined in 18 U.S.C.

§ 1956(c)(7), as alleged in Counts One, Three, Four, and Eleven

of this Information, BERNARD L. MADOFF, the defendant, shall

forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and

personal, that constitutes or is derived from proceeds traceable

to the commission of the said offenses.

### Substitute Asset Provision

43.    If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

> a.    cannot be located upon the exercise of due
>        diligence;
>
> b.    has been transferred or sold to, or deposited
>        with, a third person;
>
> c.    has been placed beyond the jurisdiction of
>        the Court;
>
> d.    has been substantially diminished in value;
>        or
>
> e.    has been commingled with other property which
>        cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

23

other property of the defendant up to the value of the
forfeitable property described above.

> (Title 18, United States Code, Sections 981(a)(1)(C),
> and Title 28, United States Code, Section 2461.)

### FORFEITURE ALLEGATION
(Money Laundering)

44.    As the result of committing one or more of the
money laundering offenses in violation of 18 U.S.C. §§ 1956
and 1957, alleged in Counts Five through Seven of this
Information, BERNARD L. MADOFF, the defendant, shall forfeit to
the United States, pursuant to 18 U.S.C. § 982, all property,
real and personal, involved in the said money laundering offenses
and all property traceable to such property.

### Substitute Asset Provision

45.    If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due
diligence;

    b.    has been transferred or sold to, or deposited
with, a third person;

    c.    has been placed beyond the jurisdiction of
the Court;

    d.    has been substantially diminished in value;
or

    e.    has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b) and Title 21, United States

08-01789-cgm    Doc 351-1    Filed 08/03/09    Entered 08/03/09 12:40:25    Exhibit
Case 1:09-cr-00213-DC    Exhibit A    Pg 26 of 26    Filed 03/10/2009    Page 25 of 25

Document 38

Code, Section 853(p), to seek forfeiture of any other property of
the defendant up to the value of the forfeitable property
described above.

(Title 18, United States Code, Section 982.)


LEV L. DASSIN
Acting United States Attorney