# EXHIBIT I

Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, with the support of more than*
*100 other customers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**DECLARATION OF DIANE PESKIN IN SUPPORT OF OBJECTION TO FIRST APPLICATION OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM DECEMBER 15, 2008 THROUGH APRIL 30, 2009**

I, Diane Peskin, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

1. I submit this declaration in support of the objection to the application for fees filed by Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") filed by myself, Roger Peskin (my husband) and Maureen Ebel, with the support of over 100 other

1087380.1

customers of Bernard L. Madoff Investment Securities, LLC ("Madoff"). I have personal knowledge of the facts and circumstances stated herein.

2. Roger and I filed a claim with the Securities Investor Protection Corporation ("SIPC") on February 19, 2009.

3. We received no response whatsoever to our SIPC claim until almost four months later. On June 3, 2009, we were contacted by an attorney at B&H who informed us that we were only entitled to receive $387,000 as our full SIPC payment. The Trustee's attorney said that the Trustee was entitled to deduct from our SIPC payment the $113,000 that we had withdrawn from our Madoff account in the three months preceding December 15, 2008.

4. We were absolutely astonished and devastated by this statement from the B&H attorney. We had been counting on the full $500,000 to carry us through until we could obtain a tax refund from the Internal Revenue Service based upon our theft loss.

5. We pointed out to the Trustee's attorney that, although we had withdrawn $113,000 from Madoff within the 90 days before December 15, 2008, we had also *invested* $470,265.98 with Madoff on November 12, 2008, after we had received the $113,000.

6. I broke down in tears on the phone and begged the B&H attorney for the full $500,000.

7. The attorney at B&H apologized to us and said that he would review the situation with the Trustee and get back to us.

8. Approximately one week later, the attorney at B&H called us again and told us that he had reviewed our situation with the Trustee and that the Trustee was very sorry but he had no alternative under the law but to withhold $113,000 from our SIPC payment. The attorney added that the law was absolutely clear on this subject.

2

1087380.1

9.      We asked whether the $113,000 would go into a fund to be distributed to Madoff customers and the attorney told us: "No, it would just reduce the amount that SIPC had to pay you."

10.     We then were forced, by the situation, to consult counsel and became plaintiffs in a lawsuit filed against the Trustee on June 10, 2009 for a declaratory judgment that the Trustee was violating the Securities Investor Protection Act ("SIPA") through his rejection of SIPA's definition of net equity and his failure to promptly pay SIPC insurance to Madoff customers, for a declaratory judgment that the Trustee has no right to deduct from our payment the $113,000 that we withdrew within 90 days of December 15, 2008, and for compensatory damages for breach of fiduciary duty.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on August 3, 2009

                                               /s/ Diane Peskin