# EXHIBIT 12

FROM :                          FAX NO. :                    Feb. 09 2009 11:04PM  P1

## Fidelity

**NAME** James H Cohen Special Trust

**DAY PHONE** (212) 249 1459

**Time Stamp**

228 *06DEC23PM 2:48ET

**Internal use only**

Rep Initials

INV-3 (Rev. 2/05)

1. ☑ Non-Retirement
2. ☐ Current Year Contribution
3. ☐ Prior Year Contribution
4. ☐ 60-Day Rollover
5. ☐ Direct Corporate Rollover
6. ☐ ROTH Conversion
7. ☐ Transfer of Assets
8. ☐ SEP IRA
9. ☐ Keogh
10. ☐ SE 401(k) Employer (Keogh)
11. ☐ SE 401(k) Employee (CYP or PYP) circle choice
12. ☐ ICR
13. ☐ Margin

**Account Number** 243 307793

This shaded section is required if your Fidelity Account No. begins with 2AA through 2ZZ. (At least one fund # required)

### Investment Allocation

| FUND # | AMOUNT |
|--------|--------|
|        |        |
| **TOTAL** |     |

FISERV FIRST TRUST FM Bernard Madoff IRA

### List Check(s) Individually

| CHECK # | AMOUNT |
|---------|--------|
| 1003237779 | 55,000.00 |

| TOTAL INVESTMENT | 55,000.00 |

- Brokerage accounts will have deposits credited to your Core Money Market Fund or to your Cash balances while awaiting reinvestment. All transactions involving these funds must be placed with a Fidelity registered representative or through a Fidelity Automated Trading Service or complete the shaded section above for Fidelity Mutual Fund purchases.
- If purchasing a new fund, I (we) have read the prospectus and agree to the terms.
- We are unable to accept cash.
- All deposits may be subject to a four business day clearing period.

---

## Fidelity

**NAME** James H Cohen Special Trust

**DAY PHONE** (212) 249 1459

**Time Stamp**

228 *06DEC26PM 3:04ET

**Internal use only**

Rep Initials

INV-3 (Rev. 6/06)

1. ☐ Non-Retirement
2. ☑ Current Year Contribution
3. ☐ Prior Year Contribution
4. ☐ 60-Day Rollover
5. ☐ Direct Corporate Rollover
6. ☐ ROTH Conversion
7. ☐ Transfer of Assets
8. ☐ SEP IRA
9. ☐ Keogh
10. ☐ SE 401(k) Employer (Keogh)
11. ☐ SE 401(k) Employee (CYP or PYP) circle choice
12. ☐ ICR
13. ☐ Margin

**Account Number** 243-307793

This shaded section is required if your Fidelity Account No. begins with 2AA through 2ZZ. (At least one fund # required)

### Investment Allocation

| FUND # | AMOUNT |
|--------|--------|
|        |        |
| **TOTAL** |     |

BK FISERV FIRST TRUST

### List Check(s) Individually

| CHECK # | AMOUNT |
|---------|--------|
| 1003270502 | 103,200.00 |

| TOTAL INVESTMENT |  |

- Brokerage accounts will have deposits credited to your Core Money Market Fund or to your Cash balances while awaiting reinvestment. All transactions involving these funds must be placed with a Fidelity registered representative or through a Fidelity Automated Trading Service or complete the shaded section above for Fidelity Mutual Fund purchases.
- If purchasing a new fund, I (we) have read the prospectus and agree to the terms.
- We are unable to accept cash.
- All deposits may be subject to four business day clearing period.

JAN-09-2009 FRI 04:38 PM Four-Leaf Towers                    FAX NO. 7135529919                P. 03





FROM :                              FAX NO. :                      Feb. 09 2009 11:05PM  P5

JAN-09-2009 FRI 04:38 PM Four-Leaf Towers          FAX NO. 7135529019              P. 02





FROM :

**Fiserv.** | Investment
Support
Services

FAX NO. :

Feb. 09 2009 11:08PM  P1

December 21, 2005

BK Interest LLC (C/O: James Cohen)
850 Park Ave, Suite 7C
New York, NY  10021-1845

RE:    First Trust Corporation TTEE FBO: Barry Kaufman
       First Trust Account #031038002070

Dear Sir or Madam:

On 12/21/2005 we issued funds in the amount of $55,000 to purchase BK Interest LLC for the
above referenced client.  Please provide proof of ownership verifying the investment is registered
as follows:

            First Trust Corporation TTEE FBO: Barry Kaufman
            Account # 031038002070
            P.O. Box 173301
            Denver, CO  80217-3301
            Tax ID# 84-0519832

Please be advised that this asset will be held within a Qualified Plan/IRA with our company.

We are requesting that you sign and return this letter as verification of ownership. You can fax
the confirmation to (303) 294-5934.

Please contact Harold Ellison at (800) 525-8188 ext. 24508 if you have any questions.

Sincerely,

First Trust Corporation

---

## COMPLETE THIS SECTION

Account/Policy Number: _____  Date Purchased *12/23/05*

Number of shares/units: _____
      or
Value of purchase:  $ *55,000.00*

Asset Name (if Different than above)  *James H. Cohen Special Trust*

                                          *12/23/05*
Signature and Title                       Date

Printed Name:  *James H. Cohen*
               *Trustee*

Fiserv Trust Company
(formerly First Trust Corp.)
Lincoln Trust Company
Resources Trust Company

FROM :

FISERV TRUST COMPANY
DISBURSEMENT ACCOUNT
DENVER, CO.

FAX NO. :                                                    Feb. 09 2009 11:09PM  P5

DETACH AND RETAIN THIS STATEMENT
THE ATTACHED CHECKS IS IN PAYMENT OF ITEMS DESCRIBED BELOW.
IF NOT CORRECT, PLEASE NOTIFY US PROMPTLY. NO RECEIPT DESIRED.

Check No.  1000201770
Transaction No. 2-12/21/05-8
Operator No.          10918

031038002070                    2          BARRY E KAUFMAN
                                           BK INTEREST LLC

Purchase

          $55,000.00   GROSS AMOUNT
               0.00    WITHHOLDING AMOUNT
          $55,000.00   NET AMOUNT

FROM :                          FAX NO. :                    Feb. 09 2009 11:09PM P7

| Form **W-9**<br>(Rev. January 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**Print or type    See Specific Instructions on page 2.**

Name (as shown on your income tax return)
First Trust Corporation FBO

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor  ☒ Corporation  ☐ Partnership  ☐ Other ▶ _____    ☒ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
717 17th Street, Suite 1700

City, state, and ZIP code
Denver, CO 80202

List account number(s) here (optional)

FIRST TRUST CORPORATION TTEE BARRY H KAUPMAN
A/C8031038002070 11/17/1999
PO BOX 173301
DENVER CO 80217-3301
BK INTEREST LLC $55000.00
TIN:84-0519832

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number
84-0519832

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**    Signature of U.S. person ▶ _____    Date ▶  DEC 2 1 2005

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes you are considered a person if you are:

• An individual who is a citizen or resident of the United States,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

• Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

I8A
STF FED8132F.1

Form **W-9** (Rev. 1-2005)

FROM :          Support
      ▮ ▮▮▮▮ ▮.  | Services

FAX NO.  :                          Feb. 09 2009 11:12PM  P1

December 21, 2006

BK Interwest, LLC
850 Park Ave # 7C
New York  NY  10021-1845

RE:   First Trust Corporation TTEE FBO: Barry Kaufman
      First Trust Account #031038002070

Dear Sir or Madam:

On 12/21/2006 we issued funds in the amount of $103200.00 to purchase BK Interwest,
LLC for the above referenced client.  Please provide proof of ownership verifying the
investment is registered as follows:

> First Trust Corporation TTEE FBO: Barry Kaufman
> Account # 031038002070
> P.O. Box 173301
> Denver, CO  80217-3301
> Tax ID# 84-0519832

Please be advised that this asset will be held within a Qualified Plan/IRA with our
company.

We are requesting that you sign and return this letter as verification of ownership.  You
can fax the confirmation to (720) 920-4723.

Please contact Velvet Mines at (800) 525-8188 ext. 22282 if you have any questions.

Sincerely,

*Velvetmines*

First Trust Corporation

---

**COMPLETE THIS SECTION**

Account/Policy Number: _____  Date Purchased *12/26/06*

Number of shares/units: _____
      or
Value of purchase:  $ *103,200*

Asset Name (if Different than above) *James H. Cohen Special Trust*

_____  *12/26/06*
Signature and Title   *Trustee*        Date

Printed Name: *James H. Cohen*
              *Trustee*

Fiserv Trust Company
Fiserv Investment Support Services
is a marketing name of

FROM :                              FAX NO.  :                        Feb. 09 2009 11:13PM  P3

FISERV TRUST COMPANY
DISBURSEMENT ACCOUNT
DENVER, CO.

DETACH AND RETAIN THIS STATEMENT
THE ATTACHED CHECKS IS IN PAYMENT OF ITEMS DESCRIBED BELOW.
IF NOT CORRECT, PLEASE NOTIFY US PROMPTLY. NO RECEIPT DESIRED.

Check No.      1003270502
Transaction No.   2-12/21/06-1
Operator No.          00563

031038002070              0       BARRY E KAUFMAN
                                  BK INTEREST LLC

Purchase

$103,200.00    GROSS AMOUNT
      0.00    WITHHOLDING AMOUNT
$103,200.00    NET AMOUNT

FROM :                          FAX NO. :                    Feb. 09 2009 11:13PM  P4

**Form W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)

**First Trust Corporation FBO**

Business name, if different from above

Check appropriate box:  ☐ Individual/Sole proprietor  ☒ Corporation  ☐ Partnership  ☐ Other ▶ _____  ☒ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

**717 17th Street, Suite 1700**

Requester's name and address (optional)

City, state, and ZIP code

**Denver, CO  80202**

List account number(s) here (optional)

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number
84-0519832

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
   I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification Instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here   Signature of U.S. person ▶ *Jeffrey W. Knight*    Date ▶ Nov 28 2008

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you

• An individual who is a citizen or resident of the United States,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

• Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

FROM :                          FAX NO.                          Feb. 09 2009 11:13PM  P5

## Fiserv Trust Company dba
## First Trust Corporation, Lincoln Trust Company,
## Resources Trust Corporation, Retirement Accounts, Inc.,
## Certificate of Resolution

I hereby certify that a regular meeting of the Board of Directors of Fiserv Trust Company dba First Trust Corporation, Resources Trust Corporation, Lincoln Trust Company, Retirement Accounts, Inc., a corporation organized and existing under and by virtue of the laws of the State of Colorado, held on the 20th day of June, 2006, at which meeting a quorum was present and acting throughout, the following resolution was adopted and is in full force and effect.

"RESOLVED, that any of the following: Elizabeth Alexander, Manuel Baca, Frank La Rosa, Marianne Newman, Shane Strege, Alycia Anderson, Chris DeLauro, Michael Foster, Amie Ngu, Kathy Swingle, Tamara Y. Armour, Leslie DiMichele, Reno' Johnston, Holly Nickerson, Jennifer Teter, Kim Artz, Jenny Done', Dee Lahman, Fran Gerrish, Sue Tilghman, Susan Baker, Roxann Dowell, Susie Dozier, Barbie Olson, Petal Young, Charlene Barnett-Riddle, Sharon Doyne, Cathy Maestas, M. Joan Owens, Jennifer Tymkovich, Nancy Bond, Diane Easter, Brittany Marshall, Joyce Padilla, LaVonne Vespoli, Angela Bowman, Michelle Fausett, Patrick Martin, Jeriad Paul, Juan Vigil, Mia Brattain, Starla Fitzjarrell, Danette May, Dawn Pirkey, Paula Sterns, Reni Brauch, Kathy Ford, Becky Mayhan, Cathy Ramos, Maxine Ware, Greg Cimburek, Sandy French, John McLaughlin, Joanne Radmore Ratkai, Albert S. Webber, Ann Brown, Carol J. Gillet, Carol McNerney, Sandra Roynon, Michael E. Wenger, Nicole Acosta, Laura Grimes, Velvet Mines, Kelly Young, Rachel Wheeler, George Carpenter, Al Herrern, Hope Moore, Peggy Severs, Chris White, Luanne Chambers, Mark Hoffman, Karen Morphis, Edward Shanahan, Kristine A. Williams, Donna Christensen, Barbara Hughes, Jon Blyth, Jim Simonsen, Michael Williams, Craig Coley, Guyric Ingram, Joni Ostheimer, Peggy Sparks, Heidi Zuhlke, Michele Gerton, Sean Irions, Sarla Banda, Cathy Vidikan, Tracey Tugya, Sharon Brett, Shae Jensma, Tim Hopeus, Seana Harris, Kathleen Laurienti, Bethany Miller, Kate Wilsey, Andrew Kemper, Jeffrey Knight, Beth Hemenway, Kendra Hartman, Janet Moore, Richard Pugh, Dawn Pennington, Melanie Cash, Bryan Snell, Monica Walker, Diana McCarl, Kim Thalley, Brett Davis, Shirley Kennedy, Matthew Johnson, Robert Thompson, Rebecca Maloney, Stacie Sands, Sarah Borchers-Reed, Stanley Goodman, as seen in Exhibit "A", are hereby authorized and empowered to transfer, endorse, sell, assign, set over and deliver any and all shares of stocks, bonds, debentures, proxies or other securities now or hereafter standing in the name of or owned in trust or custodial capacity by these Corporations or their nominee names and to make, execute and deliver any and all written instruments necessary or proper to effectuate the authority hereby conferred."

I further certify that the authority conferred above is not inconsistent with the Charter or By-Laws of the Corporation and that the following is a true and correct list of the Officers of this Corporation as of this date:

| | |
|---|---|
| Robert H. Beriault | Chairman and President |
| Albert G. Schweiss | Executive Vice President |
| Helen Z. Cousins | Executive Vice President |
| Joan K. Manning | Executive Vice President |
| Daniel R. Bartlett | Senior Vice President, Treasurer, Secretary |
| Rhonda A. Kavanagh | Senior Vice President and CFO |
| Susan S. Zimmerman | Senior Vice President, Human Resources |
| Bert N. Deardorff | Vice President- FI Channel |
| Joanne Radmore Ratkai | Vice President and General Counsel |
| Cathy A. Vidikan | Vice President - Product Operations |
| Carol J. Gillet | Vice President- Product Operations |
| Jeffrey W. Knight | Vice President - Product Operations |
| Charles D. Price | Vice President- I.S Operations |
| Joseph A. Pipitone | Vice President- Information Technology |
| Sean Oultig | Vice President- Advisor Services |
| Julie A. Harrington | Vice President- Sales |
| Richard H. Edwards | Vice President - Information Services |
| M. Joan Owens | Vice President- IA Services |
| John D. Newman | Vice President- IRP Services |
| Leigh C. Chaffee | Vice President |
| Thomas J. Hirsch | Assistant Secretary |
| Nancy H. Wedelstaedt | Assistant Secretary |
| Charles J. Sprague | Assistant Secretary |
| James R. Hoy | Assistant Vice President, Assistant Secretary |
| J. David Rigsby | Assistant Vice President, Assistant Secretary |
| Sandra K. Murphy | Assistant Vice President |
| Denise S. Saxon | Assistant Vice President |
| Lisa M. Orr | Associate Vice President |

ATTEST          *Danl R. Bartlett*
                Secretary - Daniel R. Bartlett

                                              DEC 2 9 2006

I hereby certify that the above resolution is in full force and effect this _____ day of _____, 2006, and that the signatures on *Exhibit A* are true and accurate signatures of the persons authorized to sign securities on behalf of Fiserv Trust Company DBA First Trust Corporation, Lincoln Trust Company, Resources Trust Corporation, and Retirement Accounts, Inc.

(SEAL)          *James R. Hoy*
                Assistant Secretary- James R. Hoy

FROM :
EXHIBIT "A"

FAX NO. :

Feb. 09 2009 11:09PM  P8

| | | | | |
|---|---|---|---|---|
| Elizabeth Alexander | Barry Conn | Joseph Johnson | Madeline Newman | Shane Stregg |
| Alysia Anderson | Chris DeLauro | Rene' Johnson | Arnie Ngo | Kathy Swinney |
| Terrence Armanti | Leslie DiMichele | Frank LaRosa | Holly Nickerson | Jennifer Teter |
| Kim Artz | Jenny Done | Dee Lehman | Fran Gerrish | Sue Tilghman |
| Susan Baker | Roxann Dowell | Lisa L. Lehnus | Barbie Olson | Arlene S. Tucker |
| Charlene Barnett-Riddle | Sharon Doyne | Cathy Maestas | M. John Owens | Jennifer Tymkovich |
| Nancy Bond | Diane Easter | Brittany Marshall | Joyce Padilla | LaVonne Vespoli |
| Angela Bowman | Michelle Fausett | Patrick Martin | Jerald Paul | Juan Vigil |
| Mia Brattain | Starla Finjarrell | Danette May | Dawn Pirkey | Paula Storns |
| Roni Brauch | Kathy Ford | Becky Mayhan | Cathy Ramos | Maxine Ware |
| Greg Chmburek | Sandy French | John McLaughlin | Joanne Radmore Ratkal | Albert S. Welsbar |
| Ann Brown | Carol J. Gillet | Carol McNerney | Sandra Roynon | Michael R. Wenger |
| Nicole Acosta | Laura Grimes | Velvet Mines | Sheila Sally | Rachel Wheeler |
| George Carpenter | Rob Frio Hallman | Hope Moore | Peggy Severs | Chris White |
| Luanne Chambers | Mark Hoffman | Karen Morphis | Edward Shenahan | Kristine A. Williams |
| Donna Christensen | Barbara Hughes | Victor A. Musielak Jr. | Jim Simonsen | Michael Williams |
| Craig Coley | Guyrie Ingram | Robert Nagle | Perry Herik | Heidi Zuloke |
| Michele Gerton | Sean Irions | Sarla Banda | Cathy Vidikan | Tracey Tugya |
| Sharon Brett | Shae Jenann | Tim Hopcus | Donna Harris | Kathleen Laurienti |

FROM :                          FAX NO.  :                        Feb. 09 2009 11:14PM   P6

| | | | | |
|---|---|---|---|---|
| Bryan Snell | Monica Walker | Diana McCarl | Kim Thalley | Brett Davis |
| Shirley Kennedy | Matthew Johnson | Robert Thompson | Rebecca Maloney | Stacie Simms |
| Sarah Borchers-Read | Stanley Goodman | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXX |



# Fidelity® INVESTMENTS

*Private Access*

# Investment Report

December 1, 2005 - December 31, 2005

## Fidelity Account℠ Z43-307793   JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: John Marshall, Team 229

### Core Account - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| **Beginning** | | $942.40 |
| *Investment Activity* | | |
| Core account income | $24.56 | |
| Subtotal of Investment Activity | $24.56 | |
| *Cash Management Activity* | | |

| Description | Amount | Balance |
|---|---|---|
| Deposits | 55,000.00 | |
| Checking activity | -55,000.00 | |
| Subtotal of Cash Management Activity | $0.00 | |
| **Ending** | | $966.96 |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Transaction Amount |
|---|---|---|---|---|---|
| 12/30 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | $24.56 |

### Cash Management Activity

#### Deposits ( 1 )

| Date | Description | Amount |
|---|---|---|
| 12/23 | DEPOSIT RECEIVED | $55,000.00 |
| | **Total** | **$55,000.00** |

#### Checking Activity ( 1 )

| Check # | Date | Code | Description | Date | Code | Amount |
|---|---|---|---|---|---|---|
| 1015 | 12/30 | | | | | -$55,000.00 |
| | | | **Total** | | | **-$55,000.00** |

**Daily Additions and Subtractions** *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance | Date | Amount | Balance |
|---|---|---|---|---|---|
| 12/23 | $55,000.00 | $55,942.40 | 12/30 | -54,975.44 | 966.96 |

## Additional Information About Your Investment Report

A copy of your Investment Report is available to:
ALAN D GARFIELD                    BARRY E KAUFMAN                    MORRIE K ABRAMSON

0001                    051230 0001 135060613        04 18   000

Page 2 of 4

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PAGE 4

PERIOD ENDING 12/31/05

YOUR ACCOUNT NUMBER 1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER 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

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK           NY   10021

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 12/22 | | 31,510 | 66161 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 31,510.00 |
| 12/22 | 31,528 | | 70929 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 31,528.00 | |
| 12/23 | | | | BANK OF AMERICA DIV 12/02/05 12/23/05 | DIV | | 1,683.00 |
| 12/29 | 50,000 | | 74981 | CHECK U S TREASURY BILL DUE 4/13/2006 | CA 98.825 | 49,412.50 | 55,000.00 |
| 12/29 | | | | | | | |
| 12/29 | 5,587 | | 74982 | 4/13/2006 FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 5,587.00 | |
| 12/30 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 12/30/05 | DIV | | 24.75 |
| 12/30 | | | | SPRINT NEXTEL CORP DIV 12/09/05 12/30/05 | DIV | | 61.05 |
| 12/30 | 13,041 | | 3681 | TRANS TO 40 ACCT FIDELITY SPARTAN U S TREASURY MONEY MARKET | JRNL 1 | 79,157.00 13,041.00 | |
| 12/30 | | | | | | | |
| 12/30 | | 37,115 | 75844 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 37,115.00 |
| 12/30 | | 50,000 | 80898 | U S TREASURY BILL DUE 3/30/2006 | 99.003 | | 49,501.50 |
| | | | | 3/30/2006 | | | |

CONTINUED ON PAGE  5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# Fidelity Investments®

*Private Access*

**Investment Report**

January 1, 2007 - January 31, 2007

## Fidelity Account℠ Z43-307793    JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE

Private Access Account Executive: John Marshall, Team 229

### Core Account - *Fidelity Tax-Free Money Market*

| Description | Amount | Balance |
|---|---|---|
| Beginning | | $204,421.80 |
| Investment Activity | | |
| Core account income | $41.97 | |
| Subtotal of Investment Activity | $41.97 | |

| Description | Amount | Balance |
|---|---|---|
| Cash Management Activity | | |
| Checking activity | -203,200.00 | |
| Subtotal of Cash Management Activity | - $203,200.00 | |
| Ending | | $1,263.77 |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Amount | Transaction Amount |
|---|---|---|---|---|---|---|
| 1/31 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | | $41.97 |

### Cash Management Activity

**Checking Activity ( 1 )**

| Check # | Date | Code | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 1018 | 1/02 | | -$203,200.00 | $1,221.80 | | | |
| | | | | | Total | 41.97 | 1,263.77 |

**Daily Additions and Subtractions** *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance | Check # | Date | Code | Date | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 1/02 | -$203,200.00 | | | 1/31 | | | 41.97 | 1,263.77 |

### Additional Information About Your Investment Report

A copy of your Investment Report is available to:

ALAN D GARFIELD            BARRY E KAUFMAN            MORRIE K ABRAMSON

070131 0001 235119993        04 18  00n

00^^



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

JAMES H COHEN
SPECIAL TRUST
850 PARK AVENUE #7C
NEW YORK          NY     10021

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 12/31/06 | 1-CM793-3-0 | ********0338 | 4 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 12/29 | | | | CHECK | CA | | 203,200.00 |
| 12/29 | | | | TRANS FROM 40 ACCT | JNL | | 71,139.00 |
| 12/29 | 2,325,000 | | 1236 | U S TREASURY BILL DUE 4/5/2007 | 98.682 | 2,294,356.50 | |
| 12/29 | 10,924 | | 5748 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 10,924.00 | |
| 12/29 | | 48,247 | 82513 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 48,247.00 |
| 12/29 | | 4,375,000 | 87846 | U S TREASURY BILL DUE 3/01/2007 | 99.166 | | 4,339,512.50 |
| 12/29 | 2,325,000 | | 96764 | U S TREASURY BILL DUE 3/29/2007 | 98.780 | 2,296,635.00 | |
| | | | | NEW BALANCE | | | .94 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 10,924 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 2,325,000 | | | U S TREASURY BILL DUE 3/29/2007 | 98.780 | | |
| | 2,325,000 | | | U S TREASURY BILL DUE 4/5/2007 | 98.682 | | |
| | | | | MARKET VALUE OF SECURITIES LONG 4,601,915.50     SHORT | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT 13

_____

Marian Cohen

2001 Residence Trust

_____

Dated: September 20        , 2001

Marian Cohen
2001 Residence Trust

Table of Contents

Page

Article 1 - During the Initial Trust Term ...................................................................1

    1.1    Personal Residence Trust ................................................................1
    1.2    Related assets .............................................................................1
    1.3    Asset restrictions ........................................................................1
    1.4    Annuity Assets ...........................................................................2
    1.5    Disposition at end of Initial Trust Term ...........................................2
    1.6    Purchase of Residence Prohibited ...................................................2

Article 2 - After the Initial Trust Term ....................................................................2

    2.1    Trust for Charles .........................................................................2
    2.2    Trusts for Descendants under age thirty-five .....................................3
    2.3    Survivorship and disclaimer ..........................................................3
    2.4    Contingent Beneficiaries ...............................................................4

Article 3 - Rules for Distributions .........................................................................4

    3.1    Standards .................................................................................4
    3.2    Overriding rule ..........................................................................5

Article 4 - The Trustee .....................................................................................5

    4.1    Additional and successor Trustees ..................................................5
    4.2    Special investment powers ............................................................6
    4.3    Administration ...........................................................................7
    4.4    Compensation ............................................................................7
    4.5    Exculpation ...............................................................................8

Article 5 - The Protector ...................................................................................8

    5.1    Appointment .............................................................................8
    5.2    Resignation ...............................................................................9

5.3    Successor Protector ................................................................................9
5.4    Liability and Indemnity ..........................................................................9

Article 6 - Miscellaneous .......................................................................................10

6.1    Definitions..............................................................................................10
6.2    Determination of availability and capacity ...........................................11
6.3    Exercise of powers of appointment.......................................................12
6.4    Descriptive word headings.....................................................................12
6.5    Applicable law .......................................................................................12
6.6    Grantor Trust..........................................................................................12
6.7    Overriding Tax Purposes .......................................................................13
6.8    Exhibits ..................................................................................................13

Exhibit A - Supplemental Provisions.....................................................................15

Part 1 - Special Rules for Personal Residence Trust.............................................15
         A.    Definitions for Personal Residence Trust .................................15
         B.    Distributions and Allocations of Qualified Assets....................16
         C.    Definitions for Annuity Assets .................................................17
         D.    Distributions from the Annuity Assets ......................................18

Part 2 - Spendthrift Provision ...............................................................................19

Part 3 - Rule Against Perpetuities .........................................................................19

Part 4 - Trustee Powers and Other Administrative Terms ....................................19
         A.    Self-interest, voting and delegation ..........................................19
               1.    Matters involving self-interest .....................................19
               2.    Voting when co-Trustees .............................................20
               3.    Temporary delegation ..................................................20
               4.    Delegation of other matters..........................................20
         B.    Powers and other administrative terms ......................................20
               1.    Additions to Trust ........................................................20
               2.    Agents and Nominees ..................................................20
               3.    Ancillary Trustees .......................................................21
               4.    Borrowing Money ........................................................21
               5.    Business Interests ........................................................21
               6.    Claims ..........................................................................21
               7.    Combination of Trusts .................................................22
               8.    Commingling Property .................................................22
               9.    Distributions in Kind ...................................................22

10.    Division of Trusts ................................................22
11.    Facility of Payment ............................................22
12.    General Management Powers ..........................22
13.    Income and Principal .........................................23
14.    Insurance ...........................................................23
15.    Investments .......................................................23
16.    Payments to Estate ............................................23
17.    Purchases from Estate .......................................24
18.    Real Estate .........................................................24
19.    Records and Accounts .......................................24
20.    Reliance on Others ............................................25
21.    Residential Real Estate .....................................25
22.    Sales and Leases ...............................................25
23.    Securities ...........................................................25
24.    Situs ...................................................................26
25.    Subchapter S .....................................................26
26.    Successor Trustee ..............................................26

Exhibit B - Initial Trust Assets .........................................................27

Marian Cohen

2001 Residence Trust

I, Marian Cohen, enter into this trust agreement with my husband, James H.
Cohen as Trustee, to govern the use, management and distribution of my interest in the personal
residence described in attached Exhibit B, and any replacement residence or any additional
assets. This trust agreement generally provides for myself, my husband and my descendants. I
have one child, Charles Cohen. This trust shall be referred to as the Marian Cohen 2001
Residence Trust. This trust shall be irrevocable, and I surrender all power or right I might have
to amend, modify or revoke this trust in any respect. I intend this to be a qualified personal
residence trust under Section 2702 of the Internal Revenue Code, and this trust shall be
interpreted accordingly. My Trustee is granted a limited power to amend this Agreement for the
sole purpose of insuring that it qualifies as a qualified personal residence trust.

### Article 1 - During the Initial Trust Term

1.1    Personal Residence Trust. Until October 31, 2009, or until my death if
earlier, the personal residence described on Exhibit B, and any replacement, shall be held in a
trust, the Personal Residence Trust, and always made available for my personal use, as a
Principal Residence, free of rent. During this time, referred to as the Initial Trust Term, any
income of the Personal Residence Trust shall be distributed to me at least annually, as required
by Part 1 of Exhibit A, and no distribution of trust income or principal shall be made to any other
person. At the end of the Initial Trust Term, the trust property shall be disposed of pursuant to
paragraph 1.5.

1.2    Related assets. During the Initial Trust Term, the Personal Residence
Trust may also acquire and hold Other Qualified Assets under certain conditions related to the
Personal Residence, as provided in Part 1 of Exhibit A.

1.3    Asset restrictions. During the Initial Trust Term, in the event that the
Personal Residence is no longer considered held for my Personal Residential Use, or some Other
Qualified Asset ceases to be a Qualified Asset, that trust asset shall be allocated to and held as a

separate share of the trust under paragraph 1.4, referred to as the Annuity Assets, unless and as required to be paid to the Term Holder, as provided for in Part 1 of Exhibit A.

     1.4    Annuity Assets. In the event that property is allocated to the Annuity Assets, the Trustee shall pay to me from that share of the trust during the remaining portion of the Initial Trust Term an amount equal to the Annuity Amount defined in Part 1 of Exhibit A, for each taxable year, plus any income in excess of the Annuity Amount.

     1.5    Disposition at end of Initial Trust Term. At the end of the Initial Trust Term, the Trustee shall make any final distributions to me that are required by Part 1 of Exhibit A. If I am then living, all remaining trust property shall then be disposed of pursuant to paragraph 2.1. If instead the Initial Trust Term ends by reason of my death, all remaining trust property shall then be distributed to such person or persons, including my estate, as I may appoint; to the extent not so appointed, this remaining trust property shall then be used to establish a separate trust, which shall be the trust for Charles under paragraph 2.1. Any disposition upon my death shall be subject to payment of estate or other death taxes as provided in the "Payments to Estate" paragraph of Part 4 of Exhibit A.

     1.6    Purchase of Residence Prohibited. Notwithstanding any other provision contained in this Article or any other Article herein, the Trustee shall not, now or at any time in the future, sell to me or to my husband the residence listed in Exhibit B of this Agreement or any other residence owned by the trust.

## Article 2 - After the Initial Trust Term

     2.1    Trust for Charles. After the initial trust term, the Trustee shall distribute the trust property to the Trustees then in office under the Charles Cohen 2001 Irrevocable Trust created by me and my husband with James H. Cohen and Charles Cohen as Trustees on June 21, 2001, for disposition in accordance with the terms thereof. If such trust is not then in existence, the Trustee shall hold the trust property in trust for Charles's life, shall manage, invest, and reinvest the same, and shall pay or apply to or for the benefit of any one or more of Charles and his descendants, in equal or unequal shares and to the exclusion of any of them, such part or all

- 2 -

or none of the income and principal as needed to provide for them. Upon the death of Charles, the trust property shall be distributed as Charles shall appoint other than to himself, his estate, his creditors or the creditors of his estate. If and to the extent that the above limited power of appointment is for any reason not effectively exercised by Charles, such unappointed property shall be distributed outright to Charles's then living descendants, per stirpes, subject to the terms of paragraph 2.2 below.

2.2    Trusts for Descendants under age thirty-five. The Trustee shall hold any property that would otherwise be distributable under this Article, other than pursuant to the Trustee's discretion, to a child or descendant of Charles (the "Beneficiary") who has not then reached the age of thirty-five (35) years in trust, as a separate trust fund, shall manage, invest and reinvest the same, and shall pay or apply so much or all or none of the net income and principal of the trust as needed to provide for the Beneficiary. The Trustee shall distribute the balance of the trust to the Beneficiary when he or she becomes age thirty-five (35). If the Beneficiary dies while property is still held in the Beneficiary's trust, any remaining property held in the Beneficiary's trust shall be distributed as the Beneficiary shall appoint, other than to himself or herself, his or her estate, his or her creditors or creditors of the Beneficiary's estate. If and to the extent that the above limited power of appointment is for any reason not effectively exercised by the Beneficiary, such unappointed property shall be divided among the Beneficiary's then living descendants, per stirpes, but if there are none, shall be distributed to the then living descendants, per stirpes of the Beneficiary's nearest ancestor who is a descendant of ours, or if none shall be distributed to our then living descendants, per stirpes, outright, subject to this paragraph 2.2, except that, if any property would otherwise be distributable to any descendant of mine for whose benefit a trust is then in existence under the Charles Cohen 2001 Irrevocable Trust created by me and my husband with James H. Cohen and Charles Cohen as Trustees on June 21, 2001, the trust property shall be distributed to the Trustees then in office of such trust for disposition in accordance with the terms thereof.

2.3    Survivorship and disclaimer. (a) For purposes of this Article, a person shall not be considered as living at a given time, or as having survived a decedent, unless it can

- 3 -

be shown by affirmative proof that the person was in fact living 90 days after the given time or the date of death.

(b) If a person effectively disclaims a beneficial interest in the trust under local law or federal tax law, the trust terms shall be applied as if the person disclaiming died before the disclaimed interest would have taken effect in enjoyment.

2.4    Contingent Beneficiaries.    If at the end of the Initial Trust Term or on the termination of any trust hereunder (the "Disposition Date") the disposition of any property shall be otherwise unprovided for, if either or both of me or my husband are then living, the Trustee shall hold the trust property in further trust until the death of the survivor of me and my husband, shall manage, invest, and reinvest the same, and may distribute income and principal among such charities as the Trustee shall select in its discretion.    At the death of the survivor of me and my husband, or on the Disposition Date if the disposition of property is otherwise unprovided for and if neither of us is then living, the trust property shall be distributed to such one or more charities, as my Trustee, in his or her sole discretion, shall select.    I request that the Trustee take into consideration any letter I have left regarding the selection of such charities.

## Article 3 - Rules for Distributions

3.1    Standards.    When this agreement directs the Trustee to pay income or principal "as needed to provide for" a beneficiary, the Trustee shall distribute all or part of the trust income and/or principal to or for the beneficiary as appropriate, in the reasonable judgment of the Trustee, to provide for the health, support, maintenance, and education of the beneficiary. In applying this standard, the Trustee shall take into account, as the Trustee considers appropriate, the beneficiary's standard of living, other funds and sources of income readily available for those purposes known to the Trustee, tax considerations, trust administration costs, and the need to conserve funds until the purposes of the trust have been accomplished.  Subject to this general standard, I offer the following additional statements of my intentions:

(a)    Discretionary distributions to beneficiaries need not be equal, but rather shall be responsive to each one's needs and circumstances from time to time.  Upon any

- 4 -

division or final distribution of a trust, the Trustee shall not adjust for any prior unequal distributions.

(b)    As an alternative to a discretionary distribution, the Trustee may also loan money to a beneficiary on such terms and conditions as the Trustee considers appropriate (including without interest or security).

(c)    The term "education" includes all forms and levels of education, including private secondary, technical, vocational, college, professional and graduate education. Distributions for education may cover housing and transportation, as well as all other related expenses. Distributions for "maintenance" may include funds to purchase a primary or secondary residence, to travel, and to engage in a business or profession.

3.2    Overriding rule. After the Initial Trust Term expires, no distribution shall be made that would have the effect of discharging a legal obligation of any donor to the trust.

### Article 4 - The Trustee

4.1    Additional and successor Trustees. The following rules shall apply to appoint and remove Trustees:

(a)    Number and type of Trustees. Notwithstanding any other provision of this Agreement, there shall always be at least one and not more than three Trustees and not more than one institutional Trustee for each separate trust at any one time. A Trustee appointed under this paragraph shall be a qualified individual or institution. Only a qualified individual or institution may serve as Trustee after the Initial Trust Term, and any Trustee serving upon the expiration of the Initial Trust Term who is not so qualified shall be treated as removed. In addition, after the Initial Trust Term, at least one Trustee shall always be an Independent Trustee. A "qualified individual" means any individual over age 25 (but including myself only during the Initial Trust Term). A "qualified institution" means any United States or foreign corporation, bank, partnership, or other trust institution authorized to act under applicable state law. An "Independent Trustee" means a qualified individual who is not one of the following: (i) myself or any other donor or (ii) a spouse or issue of mine or of any other donor.

- 5 -

(b) <u>Appointment</u>. I appoint George Brunelle, of Montclair, New Jersey, as successor Trustee of each trust hereunder. Each individual Trustee may appoint his or her successor except as a successor is named herein. Individuals while serving as Trustee may also appoint additional Trustees and may remove any institutional Trustee. In addition, at the end of the Initial Trust Term, the Trustees then serving shall appoint an Independent Trustee.

(c) <u>Resignation and incapacity</u>. An individual serving as Trustee who becomes incapacitated, other than temporarily, shall be treated as removed as Trustee. Any Trustee may resign as long as the trust will have at least one Trustee without the need for a court to appoint one. Any Trustee who is married to a descendant of mine shall be treated as removed if he or she becomes divorced or legally separated from that descendant of mine.

(d) <u>Removal</u>. Any Trustee of any trust hereunder may at any time be removed by the Protector at my request, or if I am not alive or under a disability, at the request of my husband, or if he is not alive or is under a disability, at the request of a majority of my children who are available. The Protector shall consider such a request and, in the Protector's discretion, determine whether or not to remove the Trustee. Any removal of a Trustee shall be effective upon receipt of written notice of removal by the Trustee being removed. Immediately prior to any such removal, the Protector shall appoint a successor Trustee.

(e) <u>Procedures</u>. The appointment, acceptance of appointment, removal or resignation of a Trustee shall be in a signed and witnessed writing filed with the trust records. An appointment shall not be effective unless and until accepted by the Trustee so appointed; and even after acceptance, the appointment shall be revocable unless and until the vacancy has occurred; and the writing with the latest date shall control.

4.2 <u>Special investment powers</u>. During the Initial Trust Term, the Trustee shall sell, exchange and invest trust property only with (a) my consent, or if I am unavailable (b) the consent of my children then available. After the Initial Trust Term, as to the trust for Charles under paragraph 2.1, the consent of my son, Charles, if he is then available shall be required (except that as to a trust held for a descendant under age 21, consent shall be required only from the descendant's parent and only if the parent is then available). In addition, after the Initial

- 6 -

Trust Term, the Trustees shall have the authority to rent any residence held by the trust to any person. Any person may waive the requirement of his or her consent, in whole or in part, at any time or times, and for any period of time, and to that extent no consent shall be required under this paragraph from that person or any other person. The Trustee shall vote any securities or other interests as directed by the party then entitled to act under the above provisions of this paragraph, but if no instructions are received, the Trustee may vote in the Trustee's sole discretion. Any person serving under this paragraph shall act in a fiduciary capacity, in the best interests of the trust, but shall not be personally liable for giving, withholding or failing to give consent to a change of Trustee, or for failing to review the Trustee's conduct even though personally interested in the decision.

       4.3     Administration. The Trustee shall serve without bond, follow the administrative rules and have the powers, duties and authority set forth in Exhibit A. Also I grant to the Trustee all additional powers and authority necessary, in the sole judgment of the Trustee, for prompt and effective administration of the trust, unless the particular power or authority is specifically denied by this agreement. The Trustee may amend this trust in writing from time to time to expressly state any such additional powers and authority, and also to limit or grant powers as necessary to obtain or preserve favorable tax treatment, and shall amend the trust if needed to satisfy the requirements for qualifying the trust as a "qualified Personal Residence trust" under the Internal Revenue Code. Nevertheless, no power granted to the Trustee in this paragraph grants any implied power to change beneficial interests under this trust or any express power to change beneficial interests during my life. In exercising these powers, the Trustee shall observe the general fiduciary duties of loyalty, good faith, fairness and due care.

       4.4     Compensation. Unless waived, an individual serving as Trustee (other than myself) shall receive reasonable compensation for such service, including reimbursement for reasonable expenses. However, the reasonableness of the fee shall take into account the extent to which the individual Trustee has been assisted by professional investment, custodian, tax, accounting, or like services and the cost to the trust of such services. Any institution serving as Trustee shall be entitled to receive compensation according to the Trustee's standard

- 7 -

published fee schedule in effect from time to time, including reasonable compensation for extraordinary services. However, (a) the person or persons then entitled to remove the Trustee may seek the Trustee's agreement to other compensation arrangements, which shall govern prospectively, if they are not excessive, and (b) upon removal or resignation of a Trustee during the first eight years of the Trustee's active service as Trustee, no distribution fee shall be charged and instead a Trustee removed or resigning shall be entitled to reasonable compensation for services in transferring trust assets and administration of the trust to the new Trustee.

4.5    Exculpation.    An individual serving as Trustee shall be personally liable only for his or her own gross negligence or bad faith. No Trustee shall be personally liable for making any delegation with reasonable care that is authorized under this agreement, nor for any action taken without that Trustee's express or implied agreement. When this agreement makes an action by the Trustee subject to a person's consent, consultation or direction, the Trustee shall not be personally liable for any loss that results from any delay or failure to act due to this requirement, from any mistake in judgment as to that person's availability for this purpose, or from following any direction that the Trustee is required to follow. Also, the Trustee shall not be precluded from buying from, selling to, or otherwise conducting trust business with that person, notwithstanding an apparent conflict of interest. The Trustee shall be indemnified and held harmless by the trust for any claim, demand or suit falling within the exculpatory provisions of this paragraph or otherwise within the Trustee's power, duty, and authority. The cost of indemnification may be apportioned against the various trusts and shares as the Trustee considers appropriate, taking into account the nature of the claims involved.

## Article 5 - The Protector

5.1    Appointment.    I may appoint any person other than myself to be Protector, or if I am not living or am under a disability, my husband may appoint any person other than me or himself to be Protector, or if my husband is not then living or is under a disability, my son, Charles may appoint any person other than me or my husband to be Protector. No person shall act at any time as both a Protector and a Trustee of any trust hereunder.

- 8 -

5.2    Resignation.  A Protector may at any time resign by a written instrument delivered to the Trustee.  The resignation shall become effective on the date specified in the notice but no sooner than thirty (30) days from the date the notice is sent, unless the Trustee consents to an earlier effective date.

5.3    Successor Protector.  (A)  The original Protector and each successor who becomes Protector shall designate an individual or a corporation as successor Protectors upon accepting appointment.  Each designation of a successor Protector shall be made by a written instrument delivered to the Trustee.  Each appointment of a successor Protector shall be complete upon delivery of the successor Protector's written consent to act to the Trustee.  Each successor Protector shall have all the powers, discretion and immunities herein granted to the Protector.  In the event of the resignation, death or disability of a Protector, the individual or corporation designated by that Protector shall become a successor Protector.  If more than one such designation of a successor Protector is then in existence the latest designation by date shall control.

(B)    If there is at any time no Protector acting as Protector of any trust hereunder and no successor named who accepts appointment within 60 days of the occurrence of the vacancy, I may appoint any person other than myself to be Protector, or if I am not then living or am under a disability, my husband may appoint any person other than me or himself to be Protector.

5.4    Liability and Indemnity.  The Protectors shall not owe any fiduciary duty towards nor be accountable to any person with an interest in any trust fund under this Agreement or to the Trustee.  Except in the case of actual fraud or willful default, the Protector shall not be accountable or liable for any act of omission or commission regarding the powers granted to them under this Agreement.  The Protectors shall not be liable for relying absolutely on the opinions of counsel to the trust as to matters within their competence.  Each Protector shall be entitled to reimbursement of all proper expenses incurred by him or her in the performance of his or her duties, including any legal expenses incurred in connection with any question which may arise with reference to the Protector's duties or powers under this Agreement.  The Protector

- 9 -

shall also be entitled to be indemnified out of the trust fund and the income thereof against all legal expenses incurred in any legal proceeding relating to the exercise or non-exercise of his power and duties under this Agreement.

Article 6 - Miscellaneous

6.1.    Definitions.  As used in this agreement the following terms shall be interpreted as indicated:

(a)    The terms "child," "children," and "descendants" shall include only children and descendants by and through birth in lawful wedlock, or by legal adoption of a person under age 21.  The terms shall also include persons so born or adopted after the date of this agreement.  Nonetheless, any person born out of wedlock shall be regarded as born in lawful wedlock for purposes of this agreement upon written request to the Trustee by the person's natural parent through whom the person would be entitled to rights or interests under this agreement, or if the person is, in the sole judgment of the Trustee, commonly accepted and regarded as the child of that parent.

(b)    A person who would otherwise be a beneficiary or have rights under this agreement through a parent shall not lose those rights or interests upon the person's later adoption if the adoption was by the spouse of that parent or occurred after that parent died; however, if as a result of the adoption the person also becomes a beneficiary or acquires other rights under this agreement through an adoptive parent, then the person shall be treated for all purposes of this agreement as a child of the adoptive parent and not of the prior parent.

(c)    "Internal Revenue Code" means the United States Internal Revenue Code of 1986, as amended now or later, and references to particular provisions of the law or the Regulations include the corresponding provisions of any future internal revenue law or Regulations.

(d)    "Trustee" means collectively the trustees when more than one trustee is serving, if the context so permits.

- 10 -

(e)   "Donor" means a person who has made a contribution to the trust, beginning on the date of the contribution.

(f)   "Charities" or "charity" means *organizations qualified to receive charitable contributions that are deductible* for either federal income or federal estate tax purposes.

6.2   <u>Determination of availability and capacity</u>.  Determinations made under the following rules shall be binding on the trust, any Trustee, and any beneficiary, and can be relied upon by third parties:

(a)   <u>Availability</u>.  A person shall be regarded as unavailable to give any consent, consultation or direction to the Trustee if the person has not reached age 18, or the Trustee determines, in the Trustee's reasonable discretion, that the person is not competent, suitable, or available within a reasonable time, for this purpose.

(b)   <u>My capacity</u>.  Whenever my capacity to act is relevant under this agreement, the Trustee shall be absolutely protected in deciding I am incapacitated, without notice to me, if all of those available of my children and my physician tell the Trustee in writing they believe I am incapacitated.  This protection shall continue until I or any of those persons tell the Trustee in writing I am not incapacitated.

(c)   <u>Incapacity of Trustee</u>.  An individual shall be considered incapacitated to serve as Trustee if the circumstances reasonably indicate that the person has disappeared or is unaccountably absent, or if the person is determined by a court to be incapacitated to handle the person's own financial affairs, or if the person is determined by two physicians to be incapable of conducting normal personal or business affairs in a prudent manner by reason of a medical condition, whether of a traumatic, progressive or intermittent nature. Incapacity to serve as Trustee shall be considered to continue unless and until the original determination or circumstances have changed or been revoked, including by determination by any two physicians that the incapacity no longer exists. Each person who agrees to serve as Trustee under this agreement thereby agrees to permit the disclosure of such personal medical

- 11 -

information as is relevant to determine whether such person has become incapacitated to serve as Trustee.

6.3    Exercise of powers of appointment.    A person may exercise his or her power of appointment over trust property only by specifically referring to the power either in his or her will or in a signed and witnessed writing delivered to the Trustee during his or her life which shall be revocable until it takes effect. In case of conflicting revocable appointments, the document bearing the latest date shall control. Similarly, a power may be released irrevocably by a signed and witnessed writing delivered to the Trustee that specifically references the power. Property may be appointed to or among one or more of the persons mentioned as possible beneficiaries, in such share or shares, and upon such terms, trusts, powers and conditions, as are stated in the document exercising the power and as are not inconsistent with the terms of the power; provided that no person may exercise a power of appointment in any manner that would discharge his or her legal obligation during his or her life. Powers of appointment may be exercised in favor of persons born or adopted after the time of exercise.

6.4    Descriptive word headings.    The descriptive word headings used in this agreement are for convenience only and shall be disregarded in interpreting this agreement.

6.5    Applicable law.    The laws of New York shall apply as to the validity, interpretation and administration of this agreement. However, if the situs of the trust is ever moved to another jurisdiction, the laws of that jurisdiction shall apply as to matters of administration commencing as of the time the Trustee declares in a writing filed with the trust records.

6.6    Grantor Trust.    I intend that this trust be a grantor trust for federal income tax purposes. Upon my demand the Trustee shall transfer to me any trust assets in exchange for assets of equivalent value, or shall lend to me any trust income or principal in exchange for my promissory note of equal value to the amount lent, at adequate interest or adequate security, but not both. These powers are exercisable by me solely in a nonfiduciary capacity. I may waive these powers by a writing delivered to the Trustee, and such waiver shall bind the party who waives this power, the Trustee, and all other persons. The powers under this paragraph shall not

- 12 -

be exercisable to the extent that the exercise of these powers would reasonably be expected to preclude achieving any of the purposes in the paragraph entitled "Overriding Tax Purposes." *The Trustee may (but shall not be required to) pay or reimburse me for the payment of any income taxes imposed upon me with respect to income or gains of the trust.*

6.7    Overriding Tax Purposes.    This paragraph states certain of my purposes in creating this trust, and all provisions of this agreement shall be construed so as to best effect these purposes. No Trustee shall exercise any discretion in a manner that may reasonably be expected to frustrate the accomplishment of any of these purposes.

(a)    All gifts made to this trust are intended to be complete gifts of present interests for federal gift tax purposes.

(b)    The assets of this trust are intended to be excluded from my gross estate for federal estate tax purposes.

(c)    This trust is intended to be a grantor trust under section 671 of the Internal Revenue Code.

6.8    Exhibits.    The Exhibits attached to this agreement shall be considered part of this agreement just as if written in it, but the provisions set forth above shall prevail in the event of any direct conflict with the provisions in the Exhibits.

IN WITNESS WHEREOF, intending the trust shall be effective immediately, I have executed two copies of this agreement, each of which shall be an original, at New York, New York, this ___20___ day of ___September___, 2001.

Signed in the presence of:

_____
_____

_____
Marian Cohen, Grantor

Accepted by:

_____

_____
_____

_____
James H. Cohen, Trustee

## Marian Cohen 2001 Residence Trust
## Certificate of Acknowledgment

State of New York       )
                        ) ss.:

County of New York    )

On the 20 day of September in the year 2001 before me, the undersigned, personally appeared Marian Cohen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of New York and the State of New York.

_____
Notary Public

Michael J. Parets
Notary Public, State of New York
Qualified in Queens County
No. 02PA6062769
Expires: 8/13/2005

State of New York       )
                        ) ss.:

County of New York    )

On the 20 day of September in the year 2001 before me, the undersigned personally appeared James H. Cohen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of New York and the State of New York.

_____
Notary Public

Michael J. Parets
Notary Public, State of New York
Qualified in Queens County
No. 02PA6062769
Expires: 8/13/2005

- 14 -

Marian Cohen

2001 Residence Trust

Exhibit A - Supplemental Provisions

Part 1 - Special Rules for Personal Residence Trust

A.    Definitions for Personal Residence Trust.  The following definitions shall apply to the Personal Residence Trust:

"Term Holder" means Marian Cohen as the grantor of this trust.

"Personal Residence Trust" means this entire trust during the Initial Trust Term (other than the Annuity Assets referred to in paragraph D).

"Initial Trust Term" means the period of the trust, as specified in Article 1, during which the Term Holder has an interest as a current beneficiary.

"Qualified Assets" means a single Personal Residence and Other Qualified Assets.

"Personal Residence" means a residence held for Personal Residential Use that is any one of the following:  (1) the principal residence of the Term Holder as defined in Code Section 1034, (2) one other residence of the Term Holder as defined in Code Section 280A(d)(1), but without regard to Code Section 280A(d)(2), or (3) an undivided fractional interest in either; for these purposes, the Personal Residence may include related structures and land and improvements as defined in Reg. § 25.2702-5(c)(2)(ii).

"Personal Residential Use" means that the residence is not occupied by any person other than the Term Holder, the spouse or a dependent of the Term Holder, and that the residence is available at all times for use as a Personal Residence by the Term Holder.  For these purposes, if damage or destruction renders the residence no longer useable as a residence, the Personal Residential Use shall be considered terminated on the date that is two years after the date of damage or destruction (or the expiration of the Initial Trust Term, if earlier) unless prior to such date the necessary repairs to or reconstruction of the residence are completed or another qualifying residence is acquired by the trust.

- 15 -

"Other Qualified Assets" means (1) proceeds from the sale of the Personal Residence, which are to be held in a separate Sales Proceeds account, unless and until held beyond the Permitted Period described below and as defined by Reg. § 25.2702-5(c)(7), (2) one or more policies of insurance on the Personal Residence, (3) proceeds of insurance payable to the trust as a result of damage to or destruction of the Personal Residence and amounts received as a result of an involuntary conversion of the Personal Residence within the meaning of Code Section 1033, in each case held in a separate Insurance Proceeds account, unless and until held beyond the Permitted Period as described below and as defined by Reg. § 25.2702-5(c)(7), and (4) cash added to the trust and held in a separate Qualified Cash account in an amount which, when added to the cash already held in the same account, does not exceed the Qualified Cash Amount. The Permitted Period ends on the earliest to occur of (i) two years after the sale, damage, destruction or involuntary conversion, as applicable, (ii) the termination of my interest in the trust, and (iii) the acquisition of a new residence, or the completion of replacement or repairs to the damaged residence, as applicable.

The "Qualified Cash Amount" means, as provided by Reg. § 25.2702-5(c)(5), the total amount of cash required for the following purposes: (1) for payment of trust expenses (including mortgage payments on the Personal Residence) already incurred or reasonably expected to be paid by the trust within six months from the date the addition is made; (2) for improvements to the Personal Residence to be paid by the trust within six months from the date the addition is made; (3) for purchase by the trust of an initial Personal Residence, within three months of the date the trust is created; and (4) for purchase by the trust of a residence to replace another residence as the Personal Residence, within three months of the date the addition is made; however, no amount shall be treated as required for the purchase of a residence unless and until the Trustee has entered into a contract to purchase that residence.

B.    Distributions and Allocations of Qualified Assets.   During the Initial Trust Term, any income of the Personal Residence Trust shall be distributed to the Term Holder at least annually, no distributions shall be made from that trust to anyone other than the Term Holder, and its assets shall be limited to Qualified Assets.   Any cash held in the separate Qualified Cash account during the Initial Trust Term that exceeds the Qualified Cash Amount

shall be identified at least quarterly and distributed immediately to the Term Holder; and all cash held in the separate Qualified Cash account at the end of the Initial Trust Term that exceeds the amount needed to pay trust expenses then due and payable (including expenses directly related to the termination) shall be distributed to the Term Holder within 30 days after the end of the Initial Trust Term. Aside from separate Qualified Cash Account cash, any other Qualified Assets that cease to be Qualified Assets during the Initial Trust Term shall, within 30 days thereafter, be converted to and held for the balance of the Initial Trust Term in a separate share of the trust under paragraph D, known as the Annuity Assets. The Term Holder's beneficial interest in any trust or share under this agreement shall not be commuted (prepaid) under any circumstances. If during the Initial Trust Term there is an attempt to add assets to the trust other than Qualified Assets, they shall be returned to the transferor and shall not become a part of the Trust.

      C.      Definitions for Annuity Assets. The following definitions shall also apply to the Annuity Assets:

      "Annuity Amount" means the annuity amount determined by dividing the Adjusted Retained Value by the Original Annuity Factor, to be increased accordingly whenever additional assets are allocated to the Annuity Assets. If the Personal Residence Trust continues to hold Qualified Assets as of the Conversion Date, the annuity amount determined as above shall be multiplied by a fraction, of which the numerator is the Adjusted Total Asset Value less the fair market value at the Conversion Date of all Qualified Assets (other than any cash held as the Qualified Cash Amount), and of which the denominator is the Adjusted Total Asset Value, to determine the pro-rated Annuity Amount.

      "Adjusted Retained Value" means the value of all interests retained by the Term Holder as of the date of the original transfer or transfers, or, if less, the Adjusted Total Asset Value.

      "Adjusted Total Asset Value" is the fair market value of all the trust assets as of the Conversion Date.

      "Original Annuity Factor" means the annuity factor determined by using the Initial Trust Term and the Code Section 7520 rate used in valuing the retained interest at the time of the original transfer.

- 17 -

"Annuity Assets" shall mean only those assets allocated hereto under paragraph B because they are no longer Qualified Assets.

"Cessation Date" means the date on which the assets in question ceased to be Qualified Assets.

"Conversion Date" means the date on which the assets in question were allocated to the Annuity Assets.

D.    Distributions from the Annuity Assets. If assets are ever allocated to the Annuity Assets, then for each taxable year of the remaining portion of the Initial Trust Term, the Trustee shall pay to me from the Annuity Assets an amount equal to the Annuity Amount, or, if applicable, the pro-rated Annuity Amount, and no distributions shall be made to any other person during the Initial Trust Term. The amount shall be paid annually, no later than 60 days after the close of each taxable year, from income and, to the extent income is insufficient, from principal. Any income from the Annuity Assets that remains after the payment of the Annuity Amount shall also be paid to me. The right to the payment of the Annuity Amount shall accrue from the Cessation Date and shall be prorated on a daily basis for short years (and, in the case of two Cessation Dates occurring in the same year, for short periods within years), including the last taxable year of the Initial Trust Term, pursuant to the proration method described in Reg. § 1.664-2(a)(1)(iv), as required by Reg. § 25.2702-3(b). Any payment due after the Cessation Date may be deferred for as long as 30 days after the Conversion Date as to those assets; however, any such deferred payment shall bear interest from the Cessation Date at a rate not less than the Code Section 7520 rate in effect on the Cessation Date. As required by Reg. § 25.2702-3(b), if the initial net fair market value of the trust assets is incorrectly determined by the Trustee, then within a reasonable period after the final determination of the correct value, the Trustee shall pay to me, in case of an undervaluation, or I shall pay to the Trustee, in the case of an overvaluation, an amount equal to the difference between the Annuity Amount properly payable and the Annuity Amount actually paid, plus interest on such amounts computed at the rate required by any applicable Treasury Department regulations. I intend that the Annuity Assets qualify under Reg. § 25.2702-3, and under Reg. § 25.2702-5, and all provisions of this agreement shall be construed accordingly.

- 18 -

### Part 2 - Spendthrift Provision

The interests of any beneficiary in the income or principal of any trust held under this agreement shall not be subject to the obligations or liabilities of the beneficiary and shall not be assignable in anticipation of payment thereof in whole or in part by the beneficiary or by operation of law (except that the beneficiary may disclaim or waive rights under the trust).

### Part 3 - Rule Against Perpetuities

Notwithstanding any other provision of this trust, immediately before the expiration of 21 years after the death of the survivor of myself, my husband, and my descendants living at the time I enter into this agreement, each trust estate held under Article 2 shall be distributed to the principal person for whom it is then held.

### Part 4 - Trustee Powers and Other Administrative Terms

A.   Self-interest, voting and delegation.  The following rules shall apply to the exercise and performance of the powers, duties and authority of the Trustee.

1.   Matters involving self-interest.  No Trustee shall be qualified to participate in any Trustee decision regarding discretionary distributions to or for himself or herself or to any person whom the Trustee has a legal obligation to support, or which would discharge his or her legal obligations.  No Trustee may exercise any control over any incident of ownership of any life insurance policy on the Trustee's life and owned by the trust (or on the life of any beneficiary who appointed the Trustee).  No Trustee shall be qualified to participate in any Trustee decision regarding the disposition of an interest in the trust that the individual has disclaimed.  No Trustee may participate in any Trustee decision regarding trust modifications under this Part of Exhibit A in order to hold subchapter S corporations, as applied to shares in which he or she has an interest.  If no available Trustee is qualified to take action due to the rules in this subparagraph 1, the action may be taken instead in a fiduciary capacity by the next available potential successor(s) if qualified under this subparagraph 1.

2.    Voting when co-Trustees. Except as provided in these rules, the functions of the Trustee may be performed only by agreement of the Trustee or Trustees qualified to pass on the question as provided in these rules, or if more than two, by majority vote, but while I am serving as Trustee, I may bind the trust even if I act alone.

3.    Temporary delegation. Subject to subparagraph (i) of this paragraph, the Trustee functions may be performed for a temporary period without the participation of a particular Trustee (a) to the extent delegated to the other Trustee or Trustees by written agreement, or (b) to the extent that the other Trustee or Trustees, in their reasonable discretion, determine that it is necessary or desirable to take certain action even though it appears that a particular Trustee is temporarily incapacitated or unavailable.

4.    Delegation of other matters. Whenever there are co-Trustees, they may agree in writing for one Trustee to assume sole continuing responsibility for performing all or any part of the following: (a) safekeeping of trust assets and evidences thereof, (b) maintaining and preparing trust records and accountings, and (c) ministerial functions. Delegation to others is authorized under the "Agents and Nominees" paragraph of paragraph B of this Part.

B.    Powers and other administrative terms. Except as otherwise provided in this trust, such as the asset restrictions in the Personal Residence Trust in Part 1 of Exhibit A, the following administrative provisions shall apply, and the Trustee shall have the following powers, duties, and authority, in addition to (or if inconsistent, in place of) those provided by law, without necessity of order or approval of court:

1.    Additions to Trust. The Trustee shall accept any property added to the trust by myself by any method intended to take effect at or after death. With the Trustee's consent, other additions may be made by myself and, after my death, by other persons. The Trustee may accept property from a fiduciary without inquiring into the administration thereof by the fiduciary, without review of the fiduciary's tax returns and accounts, without determining if the proper property has been delivered, and without incurrence of liability for acts or omissions of the prior fiduciary.

2.    Agents and Nominees. The Trustee may employ, compensate, and rely upon the advice, representations, and actions of, and information provided by, attorneys and accountants, independent agents, temporary employees, and advisors (including investment advisors with discretionary account authority), without liability for neglect or wrongdoing of any

- 20 -

of those persons who are selected with reasonable care, and even if the person (or a related person) is also acting as a Trustee or as my executor or other fiduciary. The Trustee may hold property in the name of a nominee, or the Trustee's name, without disclosing the fiduciary capacity, to the fullest extent permitted by law. Powers of attorney and other agency authority may be granted, to the fullest extent allowed by law, to authorize others to take discretionary or nondiscretionary action on behalf of the Trustee to, among other things, sign checks on trust accounts, access safekeeping arrangements, make loans, borrow money, enter into contracts, issue orders for the purchase or sale of securities or other trust property, and execute deeds and bills of sale.

   3. <u>Ancillary Trustees</u>. Whenever the Trustee considers it necessary or desirable, the Trustee may appoint any corporation, bank, partnership or trust company having trust powers, and/or any individual or individuals, as ancillary Trustee or Trustees for any trust property, and may transfer or direct transfer of trust property to, and may remove, any party so designated. An ancillary Trustee shall have the powers, duties, authority, and discretion of the Trustee, except as, and subject to any conditions, specified by the Trustee making the appointment. An ancillary Trustee shall be entitled to compensation for services as the Trustee approves, shall submit regular accountings to the Trustee, and shall promptly remit income and the net proceeds of sale of property to the Trustee. The Trustee shall not be responsible for any neglect or wrongdoing of any ancillary Trustee selected with reasonable care.

   4. <u>Borrowing Money</u>. The Trustee may make advances to the trust, and borrow money for the trust from the Trustee or others, upon any terms and conditions, at any time or times, and for any purpose, all as the Trustee considers appropriate. The Trustee may issue promissory notes and mortgage and pledge trust property to evidence and secure borrowings, or guarantees authorized by this agreement.

   5. <u>Business Interests</u>. The Trustee shall have the powers: to participate in the management of any business in which the trust has an interest, in whatever form the business is conducted, and to be compensated from the business for services rendered and to charge the cost of any related liability insurance against the trust; to select and compensate others (including trust beneficiaries); to participate in the management of any such business; to invest additional trust property in a business, and to give guarantees and security interests in trust property to facilitate loans by others to the business, regardless of any resulting lack of diversification; to incorporate trust property; to begin and fund new businesses, in whatever form, either alone or with others; to sell business interests to other existing owners or managers without being required to test the price available from outside parties and to liquidate or participate in the liquidation of business interests.

   6. <u>Claims</u>. The Trustee may compromise, abandon, sue on or defend, and otherwise deal with and settle, claims or demands in favor of or against the trust estate, upon the terms and conditions the Trustee determines, and shall be entitled to reimbursement from the trust property for expenses so incurred.

7.    Combination of Trusts. After the Initial Trust Term, if two or more trusts are held under this agreement and/or any other agreement by the same Trustee, for the benefit of the same person or persons, and on the same irrevocable terms and conditions, the Trustee may combine them into a single trust to be held under the agreement designated by the Trustee.

8.    Commingling Property. The Trustee may hold all or any part of any separate trust under this document and/or any other trust document in a common fund with other such separate trusts, assign undivided interests in trust assets to any separate trusts, and make joint investments of funds held in separate trusts.

9.    Distributions in Kind. The Trustee may make any division or distribution in cash or other property, or partly in cash and partly in other property, and in any distribution or division, the Trustee may allocate undivided interests in property, and dissimilar property, to different trusts or shares, all as the Trustee determines. If it is necessary to value property to be distributed or divided, it shall be valued at current fair market value.

10.    Division of Trusts. The Trustee may divide any trust held under this agreement into two or more trusts if, in the Trustee's discretion, such action would facilitate future decisions as to distributions or is otherwise considered necessary or appropriate. The division may be made before a separate trust is funded or before property is added to a separate trust, in order to establish two separate trusts (so that, for example, the trusts will have different inclusion ratios for generation-skipping tax purposes). After the division, any discretionary authority of the Trustee, including over distributions, may be exercised differently with respect to each such new trust. Trusts that were originally divided may later be recombined by the Trustee under the authority provided in the "Combination of Trusts" paragraph.

11.    Facility of Payment. Any payment to any beneficiary who is a minor or, in the sole judgment of the Trustee, unable for any reason to manage his or her financial affairs may, in the Trustee's discretion, be paid to the beneficiary or his or her natural or legal guardian, applied directly for his or her benefit, or, in the case of a minor, paid to a Custodian chosen by the Trustee under the applicable Transfers to Minors Act (or any similar law), selecting age 21 as the termination age if the law so allows and the Trustee so decides, or, in the case of any mandatory distribution of income (other than from the Personal Residence Trust), may be retained and added to the trust. The Trustee shall have no further responsibility for any payment made under the authority of this paragraph.

12.    General Management Powers. The Trustee shall have the powers: to manage the trust property; to collect income; to pay taxes and reasonable expenses, including the Trustee's compensation; to insure against loss and risk; to purchase, repair, replace and improve trust property; to exercise partnership or other ownership rights with respect to partnership or other interests in the trust (including interests in a so-called "limited liability company" or "limited duration company"); to enter into agreements, including partnership and indemnity agreements; and to execute, deliver and accept any deeds, leases, assignments or other

- 22 -

conveyances, general or special proxies, voting trusts, powers of attorney and all other types of documents on behalf of the trust. It is intended that the trust, and not the Trustee, personally and in its separate capacity, shall be liable on any obligation entered into on behalf of the trust; agreements and undertakings for the trust may so provide. The Trustee may engage in sale, loan or other transactions with the trust in its separate capacity, notwithstanding an apparent conflict of interest.

13.    Income and Principal. Allocations and adjustments shall be made to and between income and principal as the Trustee considers fair, but established legal principles shall be followed. Any trust income that is not distributable shall be accumulated and added to principal at least annually.

14.    Insurance. The Trustee may retain or acquire life insurance policies in, or maintain from, any part of the trust (other than the Personal Residence Trust), provided proceeds from the policy are payable to the trust estate from which the premiums are paid. The Trustee shall promptly collect all insurance, annuity and other contract benefits payable to the Trustee. The trust's interest in life insurance proceeds is limited to the proceeds net of any indebtedness. The Trustee is not required to pay premiums on or otherwise maintain any policy held in or payable to the trust, but may do so.

15.    Investments. The Trustee shall have the powers: to retain any property transferred to the trust, or received in exchange for it, including equity or debt issued or guaranteed by any corporate Trustee, or its parent or affiliate or common trust fund, for as long as the Trustee considers appropriate, without liability for depreciation or for failure to diversify investments; to sell, exchange or grant options exercisable for any period on trust property; to purchase property by exercising options, regardless of the proportion of the trust property needed to exercise the options; to trade in securities, including by options, short sales, futures and on margin, and to maintain margin accounts and pledge securities held in the trust for loans and advances to the trust; to invest and reinvest any cash or property in loans, bonds, notes, futures, stock or other foreign or domestic securities of any kind, and for any term (including by transactions with the Trustee in its separate capacity, and including investment in shares of a so-called "limited liability company" or "limited duration company"), and in shares of, or participating interests in, any common trust fund (including those of a corporate Trustee), insurance, annuities, real estate, senior and subordinated mortgages, real estate trusts, partnerships, mutual funds, oil and gas and other natural resource interests, equipment, commodities, currencies, collectibles, precious metals, or any other real or personal property of any kind considered appropriate in the Trustee's discretion, regardless of whether the investment is authorized by law for trusts, and regardless of any duty to diversify or any limitation on the location of fiduciary assets, except that the restrictions on assets to be held by the Personal Residence Trust shall be followed.

16.    Payments to Estate. Upon my death, and if any trust property is included in my estate for federal estate tax purposes, the Trustee shall pay from this trust to my probate estate, or pay directly, the amounts needed to pay or permit payment of the Incremental

- 23 -

Taxes. "Taxes" means any federal, state, local, or foreign estate, inheritance, succession, gift or other transfer taxes, and any interest or penalties thereon, due at or by reason of my death and "Incremental" means any increase due by reason of property in or subject to this trust being subject to such taxes, all as determined in the Trustee's sole discretion; but for these purposes, the Trustee shall be entitled to rely on any representations or calculations made by my Executor. The Trustee (a) shall make or provide for the payments prior to any division of the trust upon my death, (b) may withhold distributions or defer division under this agreement as needed for this purpose, (c) shall assess these payments against the shares burdened by these payments, in proportion to their values upon division, if the shares have already been divided when the payment is needed, and (d) shall not seek contribution or reimbursement for these payments from any other source.

17.    Purchases from Estate. The Trustee may purchase assets at fair market value from, and loan money upon provision for adequate interest and security to my estate and any other irrevocable trust created by me.

18.    Real Estate. In accepting title to real estate the Trustee, or the Trustee's nominee, shall not be held to have assumed the payment of any taxes or encumbrances thereon. The Trustee shall not be responsible for the validity of title to real estate conveyed to or conveyed by the Trustee. All conveyances executed and delivered by the Trustee may be without covenants of warranty except as against the Trustee's own acts. The Trustee is empowered to take all actions with respect to real property the Trustee considers necessary or desirable; without limitation, the Trustee may raze, abandon, repair, improve, develop, plat, partition, dedicate, condominiumize and subdivide real property.

19.    Records and Accounts. The Trustee shall keep and own accurate records showing the manner in which the trust is invested, and all transactions involving the trust, but they, together with the trust property and the evidences thereof, shall be available at reasonable times for inspection and copying to any beneficiary of the trust, or his or her representative, to the extent relating to his or her interest. The Trustee shall furnish quarterly statements of receipts and disbursements, and annual statements which show trust assets, to the primary beneficiary then permitted to receive income distributions from the trust. To the fullest extent permitted by law, the Trustee shall be relieved of any requirement to submit accounts for judicial settlement, but may do so. Even without judicial settlement, the written consent of all available beneficiaries shall settle an account and release the Trustee as against a later claim by any interested party, including those who were unborn or under legal disability, to the same extent as would a judicial settlement before all appropriate parties. A beneficiary for this purpose shall mean any person who, during the accounting period, has a current interest in the income or would be presumptively entitled to the remainder if the trust terminated. The availability of a beneficiary to give consent shall be determined by the standards that generally apply to consents and consultations under this agreement, except that the natural or legal guardian of any beneficiary under legal disability shall represent the interests of that beneficiary. In any judicial proceeding relating to the trust, service upon any person under a disability shall

- 24 -

not be required if service has been made upon another person who has the same interest and is not under a disability.

20.    Reliance on Others.  Any party dealing with the trust may rely absolutely on the representation, deed, transfer or other assurance of any party purporting to act as Trustee, without any duty or right to question whether any other Trustee then serving, or any other party, must agree to, or has agreed to, the action, or to question whether there is another party who might have a prior or joint right to serve as Trustee, and shall be indemnified and held harmless by the trust for so doing.

21.    Residential Real Estate.  The Trustee shall have the powers:  to retain or acquire residential property in any trust under this agreement and to allow beneficiaries of that trust and any person charged with their care, to occupy it without paying rent; to pay all or any part of the maintenance, repair, insurance, assessment, tax and sale expenses of the property, as the Trustee considers appropriate, and to apportion these expenses among any separate trusts or shares, and to the principal or income account, all as the Trustee considers appropriate.  Any interest in a residence held in the trust shall be made available rent free for personal use as a residence as specified in this agreement by me if the residence is held in the Personal Residence Trust and the costs of maintenance, repair and sale attributable to that interest, including taxes, insurance and assessments, shall be paid by the trust, or if the trust assets are not sufficient, then by myself if held in the Personal Residence Trust.

22.    Sales and Leases.  The Trustee may sell, lease, grant or exchange options on, partition, transfer or exchange all or any part of the trust property at any time, at any price, and on other terms and conditions, all as the Trustee considers appropriate, including at private sale, without appraisal, for credit, and by transactions with the Trustee in its separate capacity (and transferees are not responsible for seeing whether the sale proceeds are properly applied), and may enter into leases of, and grant options on, real or personal property that will last longer than the term of the trust.

23.    Securities.  The Trustee shall have the powers:  to exercise, buy or sell any exchange, conversion, option, warrant and/or subscription rights for any securities or other property; to participate in public offerings and enter into related indemnity or other agreements; to vote securities, including stock of a corporate Trustee or its parent or affiliate; to consent to, or dissent from, the reorganization, recapitalization, consolidation, merger, liquidation or charter amendment of any corporation or other organization, or the sale, mortgage, pledge, lease or distribution of all or any of its property; and to deposit any securities or other trust property with any protective, reorganization or similar committee, delegate discretionary power thereto and pay related expenses and assessments.  If for any reason the stock of a corporate Trustee (or its parent or affiliate) would not otherwise be voted on any matter, the oldest available adult beneficiary who is willing to act may direct that vote.  The Trustee need not forward proxy materials except as specifically requested by a person entitled to exercise or direct the vote of the particular security.

24.    Situs. For the purpose of preserving assets, reducing taxes or expenses, or otherwise benefiting the trust, the Trustee may, at any time or times in the Trustee's discretion, remove to another jurisdiction all or part of the trust property or the situs of administration of a trust.

25.    Subchapter S. If, after my death, any trust held under this agreement (other than the Personal Residence Trust) includes or acquires stock in a corporation for which all the shareholders (including that trust) wish to make or continue a subchapter S election, then the Trustee is authorized, with the consent of the current available beneficiaries of that trust (and the natural or legal guardian of any current beneficiaries under legal disability), to irrevocably modify the terms of that portion of that trust then consisting of the stock to the extent needed in order to comply with Section 1361(d) of the Code. This may require, for example, holding the trust for only one beneficiary (or dividing the trust into separate shares or trusts to be held for only one beneficiary), requiring that all income be payable to that beneficiary at least annually, and denying the beneficiary any right he or she might otherwise have had to appoint the trust during his or her life.

26.    Successor Trustee. Each successor Trustee shall serve without bond, shall have all powers, duties, authority, and discretion applicable to the predecessor Trustee. Each successor Trustee serving under this agreement shall, immediately upon written acceptance of the trust, be vested with title as Trustee to the trust property. A Trustee replaced shall cooperate in the transfer of the trust to the successor Trustee. During the transition, the Trustee replaced shall continue to have the authority necessary to administer and transfer the trust. A successor Trustee shall not have any duty to review the accounts of predecessor Trustees. Any institution having trust powers and resulting from any merger or consolidation to which any institutional Trustee under this agreement is a party, or any such institution purchasing all of the assets and assuming all the liabilities of any such Trustee, shall be substituted in place of the Trustee without any further action by any party. Similarly, any designation of an institution to serve as Trustee shall include its successor in interest following such a merger, consolidation or asset sale.


This is the end of Exhibit A.

Marian Cohen
2001 Residence Trust

Exhibit B - Initial Trust Assets

Concurrently with the execution of the trust I have transferred all of my right, title and interest to the following property to the Trustee to be held in this trust:

6 Pintail Lane, Amagansett, New York

This is the end of Exhibit B.

# EXHIBIT 14

FEB-10-2009 TUE 11:58 AM Four-Leaf Towers _____ __ _ FAX NO. 7135529919          P. 03

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Geoffrey S. Connor
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF ORGANIZATION
## OF

### BK INTEREST, LLC
Filing Number: 800389789

The undersigned, as Secretary of State of Texas, hereby certifies that Articles of Organization for the above named company have been received in this office and have been found to conform to law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary by law, hereby issues this Certificate of Organization.

Issuance of this Certificate of Organization does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 09/15/2004

Effective: 09/15/2004





Geoffrey S. Connor
Secretary of State

Come visit us on the internet at http://www.sos.state.tx.us/

PHONE(512) 463-5555                      FAX(512) 463-5709                      TTY7-1-1
Prepared by: Delores Eitt

FEB-10-2009 TUE 11:58 AM Four-Leaf Towers          FAX NO. 7135529919          P. 04

# ARTICLES OF ORGANIZATION
## OF
## BK INTEREST, LLC

The undersigned, being a domestic corporation, acting as organizer of a limited liability company under the Texas Limited Liability Company Act, do hereby adopt the following Articles of Organization for such Limited Liability Company.

### ARTICLE ONE

The name of the Limited Liability Company is BK INTEREST, LLC.

### ARTICLE TWO

The period of duration of this Limited Liability Company is thirty (30) years from the date of the filing of these Articles of Organization with the Secretary of State or until the earlier dissolution of the Limited Liability Company in accordance with the provisions of its Regulations.

### ARTICLE THREE

The purpose for which the Limited Liability Company is organized is to conduct any lawful business, to promote any lawful purpose and to engage in any lawful act or activity for which limited liability companies may be organized under the Texas Limited Liability Company Act, including, but not limited to, the purchase, development, sale, service, lease and management of personal and real properties of all kinds and descriptions.

### ARTICLE FOUR

The Limited Liability Company shall have the powers provided for a corporation under the Texas Business Corporation Act and a limited partnership under the Texas Revised Limited Partnership Act.

### ARTICLE FIVE

There may be one or more Members.

On each matter on which the membership interest is entitled to vote, a Member will have one (1) vote per one percent of membership interest (or a fraction of one vote per fraction of one percent of membership interest) owned by the Member.

Cumulative voting is not allowed.

Each Member of the Limited Liability Company shall be entitled to full preemptive or preferential rights, as such rights are defined by law, to subscribe for or purchase the Member's part of any membership interest which may be issued at any time by the Limited Liability Company.

### ARTICLE SIX

The street address of the initial registered office of the Limited Liability Company is 8 Greenway Plaza #1300, Houston, Texas 77046, and the name of its initial registered agent at such address is LAW TECH SERVICES, INC.

## ARTICLE SEVEN

. The Limited Liability Company will have one or more managers and the name and address of its initial Managers are as follows:

Barry Kaufman                    9121 Briar Forest
                                 Houston, Texas 77024

## ARTICLE EIGHT

The name and address of the organizer is:

Law Tech Services, Inc.          8 Greenway Plaza #1300
                                 Houston, Texas 77046

## ARTICLE NINE

The initial Regulations will be adopted by the Members. The powers to alter, amend or repeal the Regulations or adopt new Regulations is vested in the Members.

## ARTICLE TEN

To the full extent permitted by Texas law, no Manager or officer of the Limited Liability Company shall be liable to the Limited Liability Company or the Members for monetary damages for an act or omission in such Manager or officer's capacity as a Manager or officer of the Limited Liability Company, except that this Article does not eliminate or limit the liability of a Manager or officer to the extent the Manger or officer is found liable for (i) a breach of the Manager or officer's duty of loyalty to the Company or its Members; (ii) an act or omission not in good faith that constitutes a breach of duty of the Manager or officer to the Company or an act or omission that involves intentional misconduct or a knowing violation of the law; (iii) a transaction from which the Manager or officer received an improper benefit whether or not the benefit resulted from an action taken within the scope of the Manager or officer's office; or (iv) an act or omission for which the liability of a Manager or officer is expressly provided by an applicable statute. Any repeal or amendment of this Article by the Members of the Company shall be prospective only and shall not adversely affect any limitation on the liability of a Manager or officer of the Company existing at the time of such repeal or amendment. In addition to the circumstances in which the Manager or officer of the Company is not liable as set forth in the preceding sentences, the Manager or officer shall not be liable to the fullest extent permitted by any provision of the Statutes of Texas hereafter enacted that further limits the liability of a member or manager or agent of a limited liability company or of a director or officer or agent of a corporation. The foregoing elimination of the liability to the Limited Liability Company or the Members for monetary damages shall not be deemed exclusive of any other rights or limitations of liability or indemnity to which a Manager or officer may be entitled under any other provision of the Articles of Organization or the Regulations of the Limited Liability Company, contract or agreement, vote of Members and/or disinterested Members of the Limited Liability Company, or otherwise.

## ARTICLE ELEVEN

Any action required by the Texas Limited Liability Company Act, and any amendments thereto, to be taken at any annual or special meeting of Members of the Limited Liability Company, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of membership interest having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all membership interest entitled to vote on the action were present and voted. Any such written consent must be dated, signed and delivered in the manner required by, and shall be effective for the period

specified by the Texas Limited Liability Company Act, and any amendments thereto, and the taking of any such action by written consent shall be subject to satisfaction of all applicable requirements of such Act.

Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who did not consent in writing to the action.

## ARTICLE TWELVE

The membership interest of the Limited Liability Company will be subject to restrictions on its transferability as set out in the Regulations of the Limited Liability Company, which Regulations will be kept with the records of the Limited Liability Company. The Limited Liability Company will provide a copy of the Regulations without charge to any record holder of a membership interest upon written request addressed to the Limited Liability Company at its principal business office or its registered agent's address.

## ARTICLE THIRTEEN

These Articles of Organization may be amended, modified, supplemented or restated in any manner permitted by applicable law and approved by the affirmative vote of members owning all of the membership interests in the Company then outstanding.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of September, 2004.

ORGANIZER:

LAW TECH SERVICES, INC.

By: _____
Stephen L. Brochstein
President

RATIFICATION AND CONSENT IN LIEU OF
ORGANIZATIONAL MEETING
OF THE SOLE MEMBER OF
BK INTEREST, LLC
A LIMITED LIABILITY COMPANY

### I. Consent to Ratification

The undersigned member of BK Interest, LLC, hereinafter referred to as "Member", consents to and ratifies the action which was taken to organize the limited liability company as herein stated.

### II. Articles of Organization

The Articles of Organization for the limited liability company were filed on September 15, 2004. The Secretary of State of the State of Texas issued a formal Certificate of Organization on that date. The Articles of Organization for the limited liability company has been inserted in the company minute book.

### III. Regulations

The regulations which regulate the conduct of the limited liability company's business and affairs have been examined by the Member of the limited liability company and have been adopted and inserted in the company minute book.

### IV. Officers

The following persons have been elected to the following positions:

| Office | Officeholder |
|---|---|
| Manager | Barry Kaufman |
| President | Barry Kaufman |
| Secretary | Barry Kaufman |
| Treasurer | Barry Kaufman |

1

## V. Limited Liability Company Record Book

The Member adopted the use of a record book of BK Interest, LLC containing a copy of the Articles of Organization, the Certificate of Organization, the Regulations previously approved by the Member, and the company desires to use the record book to maintain its company records.

## VI. Issuance of Certificates of Membership Interests

The Member shall issue, from time to time, certificates of membership of the limited liability company as specified in the Articles of Organization, upon such terms as the Manager or Member, in their discretion, may determine.

Certificate of Membership Interest has been issued to the following Member in the percentage set opposite their name and for the consideration stated next thereto:

| Member's Name | Member's Interest | Consideration | Certificate Number |
|---|---|---|---|
| Barry E. Kaufman | 100% | $1,000 | 1 |

## VII. Commencing Business

Consideration has been received for the issuance of the certificates of Membership Interest, and the company is able to commence and transact business and to incur indebtedness.

## VIII. Organizational Expenses

Any officer is authorized to pay all charges and expenses incident to or arising out of the organization of BK Interest, LLC and to reimburse any person who has made any disbursement therefor.

## IX. Bank Account

Any officer is authorized to open a bank account on behalf of BK Interest, LLC with any banks.

2

## X. Office

An office has been established and shall be maintained at 9121 Briar Forest, Houston, Texas 77024. Meetings of the Manager(s) from time to time may be held either at the principal office or at such other place as the Manager(s) shall from time to time order.

## XI. Licenses and Permits

The officers were directed to obtain in the name of BK Interest, LLC, such other licenses and tax permits as may be required for the conduct of the business of BK Interest, LLC by any federal, state, county, or municipal governmental statute, ordinance, or regulations, and to do all things necessary or convenient to qualify to transact its business in compliance with the laws and regulations of any appropriate federal, state, or municipal governmental authority.

## XII. Other States

For the purpose of authorizing BK Interest, LLC to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the company to transact business, the proper officers are authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices and to make and file all necessary certificates, reports, powers of attorney and other instruments as may be required by the laws of such state, territory, dependency or country to authorize to transact business therein.

## XIII. Fiscal Year

The fiscal year shall be the calendar year ending December 31 subject to change, as appropriate, at the discretion of the Managers by resolution.

## XIV. Carry On Business

The signing of these minutes shall constitute full consent, confirmation, ratification, adoption and approval of the actions taken by the company, its Member and Managers.

Dated September 15, 2004

MEMBER:

_Bary Elfunfran,_
_manager_

# EXHIBIT 15

# FAX

| | |
|---|---|
| **Date** | July 10, 2006 |

Number of pages including cover sheet          1

**TO**     Bernard L Madoff Investments
            Client Services
            Attention: Jodi Crupi,
                        Administrator
**Phone**
**Fax**     212-486-8178
**Phone**

**CC**     Barry Kaufman

**FROM**    James H. Cohen

**Email**   jcohen49@nyc.rr.com
**Phone**   212 249 1459
**Fax**     212 717 2932

Re: James H Cohen Special Trust
     a/c 1CM793

**REMARKS:**     ☐ Urgent          ☐ For your review          ☐ Reply ASAP          ☐ Please Comment

Ladies and Gentlemen:

Please change the address for duplicate statements going to Barry Kaufman.
His new address is:

Barry Kaufman
5110 San Felipe, 182W
Houston, TX   77056

Thank you,

The information in this facsimile message is intended only for the receipt by and use of the individual or entity to whom or which it is addressed, and may contain information that is legally privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the address appearing above via United States Postal Service. We shall reimburse for postage.

# EXHIBIT 16

In re: NEW TIMES SECURITIES SER-
    VICES, INC. and New Age Financial
    Services, Inc., Debtors.

Myrna K. Jacobs, Simon and Helga No-
    veck, Miriam Seidenberg, Felice Lin-
    der, Angelo Scarlata, the Rose Marie
    Ceparano Irrevocable Trust, the Es-
    tate of Allan A. Blynd, Salvatore and
    Stella DiGiorgio, Project Earth Envi-
    ronmental    Fundraisers,   Inc.,   New
    York Optical, Inc., the Carl Carter
    Irrevocable Trust, Craig Roffman, El-
    len Eschen, and Jill Gundry, Claim-
    ants–Appellees.

Docket No. 02–6166.

United States Court of Appeals,
    Second Circuit.

Argued: June 26, 2003.

Last Supplemental Briefs
    Filed: July 22, 2003.

Decided: June 8, 2004.

**Background:** Purchasers of bogus securi-
ties filed objections to Securities Investor
Protection Corporation's (SIPC) classifica-
tion of their claims in liquidation proceed-
ing under Securities Investor Protection
Act. The United States District Court for
the Eastern District of New York, Thomas
C. Platt, J., 206 F.Supp.2d 344, sustained
purchasers' objections, and appeal was
taken.

IN RE NEW TIMES SECURITIES SERVICES, INC.     **69**
Cite as 371 F.3d 68 (2nd Cir. 2004)

**Holdings:** The Court of Appeals, Straub, Circuit Judge, addressing issues of first impression, held that:

(1) SIPC's interpretation of SIPA was not entitled to deference;

(2) Securities and Exchange Commission's (SEC) interpretation of SIPA was entitled to limited *Skidmore* deference;

(3) purchasers had "claims for securities" rather than "claims for cash" under SIPA; and

(4) purchasers' claims were required to be valued according to the amount they initially paid for the securities.

Affirmed in part; vacated and remanded in part.

**1. Securities Regulation** ⟜**185.10**

Although the drafters of SIPA clearly envisioned roles for both the Securities and Exchange Commission (SEC) and the Securities Investor Protection Corporation (SIPC) in administering the statute, Congress deliberately limited the authority of SIPC relative to the SEC. Securities Investor Protection Act of 1970, § 1 et seq., as amended, 15 U.S.C.A. § 78aaa et seq.

**2. Statutes** ⟜**219(6.1)**

Securities Investor Protection Corporation's (SIPC) interpretation of SIPA was not entitled to deference, where Securities and Exchange Commission (SEC) had offered a competing and more persuasive interpretation of the statute. Securities Investor Protection Act of 1970, § 1 et seq., as amended, 15 U.S.C.A. § 78aaa et seq.

**3. Statutes** ⟜**219(6.1)**

Whatever Securities Investor Protection Corporation's (SIPC) expertise in overseeing SIPA liquidations, Congress did not intend for the Securities and Exchange Commission's (SEC) interpretations of SIPA to be overruled by deference

to the entity that was made subject to the SEC's oversight. Securities Investor Protection Act of 1970, § 1 et seq., as amended, 15 U.S.C.A. § 78aaa et seq.

**4. Statutes** ⟜**219(6.1)**

Securities and Exchange Commission's (SEC) interpretation of SIPA, expressed in "informal opinion" proffered by SEC in amicus brief, under which purchasers of bogus securities were treated as having "claims for securities" rather than "claims for cash" under SIPA, was not entitled to mandatory *Chevron* deference; interpretation proffered by SEC had never been articulated in any rule or regulation, and was expressed in connection with a Securities Investor Protection Corporation (SIPC) liquidation, a context in which SEC had generally adopted a hands-off approach. Securities Investor Protection Act of 1970, § 9, as amended, 15 U.S.C.A. § 78fff–3(a)(1).

**5. Statutes** ⟜**219(1)**

If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, courts give the administrator's judgment controlling weight.

**6. Statutes** ⟜**219(6.1)**

Securities and Exchange Commission's (SEC) interpretation of SIPA, under which purchasers of bogus securities were treated as having "claims for securities" rather than "claims for cash" under SIPA, was entitled to limited *Skidmore* deference. Securities Investor Protection Act of 1970, § 9(a)(1), as amended, 15 U.S.C.A. § 78fff–3(a)(1).

**7. Statutes** ⟜**219(1)**

Level of deference owed to any particular agency interpretation of a statute depends upon the thoroughness evident in its consideration, the validity of its reasoning,

its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

**8. Securities Regulation ⟊185.16**

Purchasers of bogus securities had "claims for securities" rather than "claims for cash" during liquidation proceedings under SIPA; purchasers directed that the money they placed with the debtors be used to purchase securities and received confirmations and account statements reflecting such purchases. Securities Investor Protection Act of 1970, § 9(a)(19), as amended, 15 U.S.C.A. § 78fff–3(a)(1); 17 C.F.R. §§ 300.501(b), 300.502(a)(1).

> See publication Words and Phrases for other judicial constructions and definitions.

**9. Securities Regulation ⟊185.16**

Dichotomy between "claims for cash" and "claims for securities" in SIPA was introduced to distinguish the custodial functions of a broker-dealer with respect to securities from the broker-dealer's depository-like functions with respect to cash deposits; the "claims for cash" carve-out was intended to limit the protection of a brokerage firm customer who uses his account as a depository for cash to the same protection for that cash that bank depositors receive under Federal Deposit Insurance Corporation (FDIC) coverage. Securities Investor Protection Act of 1970, § 9(a)(1), as amended, 15 U.S.C.A. § 78fff–3(a)(1).

**10. Securities Regulation ⟊185.16**

"Series 500 Rules" proposed by the Securities Investor Protection Corporation (SIPC) and approved by the Securities and Exchange Commission (SEC) were promulgated to resolve whether a claim under SIPA is for securities or cash when a transaction in real securities straddled the filing date and do not govern transactions

involving fictitious securities. Securities Investor Protection Act of 1970, § 9(a)(1), as amended, 15 U.S.C.A. § 78fff–3(a)(1); 17 C.F.R. §§ 300.501(a, b), 300.502(b).

**11. Securities Regulation ⟊185.16**

Claims of purchasers of bogus securities were required to be valued in liquidation proceeding under SIPA according to the amount they initially paid for the securities, and could not include any artificial interest or dividend reinvestments reflected in fictitious account statements that they received from the debtors. Securities Investor Protection Act of 1970, § 9(a)(1),s amended, 15 U.S.C.A. § 78fff–3(a)(1).

———

James B. Kobak, Jr., Hughes Hubbard & Reed, LLP, New York, NY, for Appellant James W. Giddens as Trustee for the Liquidation of New Times Securities Services, Inc. and New Age Financial Services, Inc.

Karen A. Caplan, Securities Investor Protection Corporation (Stephen P. Harbeck, General Counsel, on the brief), Washington, DC, for Appellant Securities Investor Protection Corporation.

Sigmund S. Wissner–Gross, Heller Horowitz & Feit, P.C., New York, N.Y. (May Orenstein, Heller Horowitz & Feit, P.C., New York, NY, Ted A. Berkowitz, Farrel Fritz, P.C., Uniondale, NY, on the brief), for all Claimants–Appellees other than Jill Gundry.

Giovanni P. Prezioso, General Counsel, Securities and Exchange Commission (Jacob H. Stillman, Solicitor, Hope Hall Augustini, Senior Litigation Counsel, on the brief), Washington, DC, for amicus curiae Securities and Exchange Commission.

## IN RE NEW TIMES SECURITIES SERVICES, INC.
### Cite as 371 F.3d 68 (2nd Cir. 2004)

71

Before: STRAUB and POOLER, Circuit Judges, and HURD, District Judge.*

STRAUB, Circuit Judge.

The Claimants–Appellees (the "Claimants") whose reimbursement is the subject of this appeal are individuals and entities that were fraudulently induced by William Goren to purchase shares in bogus mutual funds offered by his investment companies, New Times Securities Services, Inc. ("New Times") and New Age Financial Services, Inc. ("New Age") (collectively, the "Debtors"). After Goren's long-running scheme was exposed, the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*) ordered that the assets of New Times and New Age be liquidated pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa–78*lll* (2003).

In the course of that liquidation, the SIPA Trustee concluded that the Claimants were eligible to receive cash advances from the Securities Investor Protection Corporation ("SIPC"), but that they had "claims for cash" subject to a $100,000 reimbursement limit under SIPA. He set the value of the claims at the amount of money that the Claimants paid to the Debtors to purchase the bogus funds. The Claimants filed objections to the Trustee's determinations and the District Court sustained the objections, holding that (i) the Claimants, in fact, had "claims for securities" eligible for much more generous SIPC advances of up to $500,000, and (ii) the claims were properly valued according to the equity positions reflected in the Claimants' final account statements from the Debtors, which included interest and fictitious dividend reinvestments. The Trustee and SIPC appeal from that ruling.

This appeal requires resolution of issues of first impression in the Second Circuit. We hold today that the District Court properly determined that the Claimants had "claims for securities" under SIPA but we find that the District Court erred by calculating the value of those claims by reference to the fictitious account statements that the Claimants received from the Debtors. Instead, each Claimant's net equity should be calculated by reference to the amount of money the Claimants originally invested with the Debtors (*not* including any fictitious interest or dividend reinvestments). In so holding, we decline to adopt SIPC's narrow reading of the relevant SIPA provisions and, instead, defer to the SEC's persuasive interpretation of the statute.

### BACKGROUND

#### A. Goren's Fraud

From approximately 1983 until 2000, through New Times and New Age, Goren defrauded hundreds of Long Island and Queens, New York investors out of approximately $32.7 million.[1] Goren's scheme was multifaceted. He solicited customers of New Age and New Times to invest in (i) one or more non-existent money market funds (often called the New Age Securities Money Market Fund), (ii) shares of bona fide mutual funds (from, e.g., The Vanguard Group and Putnam Investments), that were never, in fact, purchased, and (iii) fraudulent promissory notes issued by Goren and/or New Age. Instead of investing these customers'

---

* The Honorable David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.

1. The parties do not dispute the underlying facts of this case.

72              371 FEDERAL REPORTER, 3d SERIES

funds as represented, Goren misappropriated the money.[2]

On February 17, 2000, the SEC filed a complaint in the United States District Court for the Eastern District of New York against Goren and New Age (and naming New Times as a relief defendant), alleging violations of the Securities Acts and seeking preliminary and permanent injunctive relief. The following day, the District Court (Thomas C. Platt, *Judge*) issued a preliminary injunction freezing Goren's assets and appointed a temporary receiver for New Age and New Times. Goren eventually pleaded guilty to securities fraud charges arising from his role in orchestrating and operating this far-reaching scheme. He is currently serving an 87–month prison sentence.

## B. The SIPA Liquidation

On May 18, 2000, the District Court ordered that New Times, a registered member of SIPC,[3] be liquidated pursuant

to SIPA. Upon the recommendation of SIPC, the court appointed James W. Giddens to serve as the Trustee for the New Times liquidation. The proceeding was referred to the United States Bankruptcy Court for the Eastern District of New York (Stan Bernstein, *Bankruptcy Judge*). (New Age remained in receivership under the jurisdiction of the District Court.)

During a standard SIPA liquidation, the trustee must "satisfy net equity claims of customers" of the failed broker-dealer. 15 U.S.C. § 78fff(a)(1)(A)-(B). Each customer's "net equity" is "the dollar amount of the account or accounts of a customer, to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer" corrected for "any indebtedness of such customer to the debtor on the filing date." [4]  *Id.* § 78*lll* (11). These net equity claims are paid first by a pro rata distribu-

---

2.  Goren used some of this money to pay "dividends" on prior investments. Goren's fraud was, thus, a classic "Ponzi scheme," where money contributed by his later customers was paid out as "artificially high dividends for the original investors," which, in turn, attracted additional customers and investments. BLACK'S LAW DICTIONARY 1180 (7th ed.1999) (explaining that, in a Ponzi scheme, "[m]oney from the new investors is used directly to repay or pay interest to old investors, usually without any operation or revenue-producing activity other than the continual raising of new funds"); *see also United States v. Moloney,* 287 F.3d 236, 242 (2d Cir.), *cert. denied,* 537 U.S. 951, 123 S.Ct. 416, 154 L.Ed.2d 297 (2002).

3.  Formed pursuant to SIPA, SIPC is a "non-profit, private membership corporation to which most registered brokers and dealers are required to belong." *Sec. Investor Prot. Corp. v. Barbour,* 421 U.S. 412, 416, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975) (citing 15 U.S.C. § 78ccc). SIPC "monitors the activities of broker-dealers and insures customers in the

case of a broker-dealer's liquidation." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 66 (2d Cir.2000).

4.  SIPA defines a "security" as "any note, stock, ... bond, debenture, evidence of indebtedness, ... transferable share, ... certificate of deposit, certificate of deposit for a security, any investment contract or certificate of interest or participation in any profit-sharing agreement, ... any put, call, straddle, option, or privilege on any security, or group or index of securities (including any interest therein or based on the value thereof), ... and any other instrument commonly known as a security." 15 U.S.C. § 78*lll* (14). According to the District Court, "SIPC considers shares in money market funds organized as mutual funds to be securities, provided those shares are held in customers' securities accounts." *SEC v. Goren,* 206 F.Supp.2d 344, 350 (E.D.N.Y.2002).

    In this case, the SIPA "filing date" was February 17, 2000, the date that the SEC filed the initial complaint against Goren and the Debtors. *See* 15 U.S.C. § 78*lll* (7).

**IN RE NEW TIMES SECURITIES SERVICES, INC.**    **73**
Cite as 371 F.3d 68 (2nd Cir. 2004)

tion of "customer property," which is defined as "cash and securities" held by the debtor (excluding any non-negotiable securities held in a particular customer's name). *Id.* § 78*lll* (4).

SIPC maintains a substantial reserve fund that is supported by assessments on SIPC members' revenues and by interest generated from its investments in U.S. Treasury notes.[5] *See id.* § 78ddd(a), (c); *see also Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 66 (2d Cir. 2000); U.S. GENERAL ACCOUNTING OFFICE, PUB. NO. GAO–03–811, SEC. INVESTOR PROT.: UPDATE ON MATTERS RELATED TO THE SIPC 8 (2003), *available at* http://www.gao.gov ("2003 GAO REPORT"). To the extent that a customer's net equity exceeds his ratable share of customer property, the trustee may use SIPC advances from this fund to pay customers in cash or to purchase replacement securities for a customer.[6] 15 U.S.C. §§ 78fff–2(d), 78fff–3(a).

These SIPC advances are subject to one of two limits under SIPA, which is why the determination of whether a customer has a "claim for cash" or a "claim for securities" must be made. SIPA provides that the "SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property." *Id.* § 78fff–3(a). If, however, any portion of that claim is a "claim for cash, as distinct from a claim for securities, the amount advanced to satisfy such

claim for cash shall not exceed $100,000 for each such customer." *Id.* § 78fff–3(a)(1).

Early in the New Times liquidation, the Trustee's review of the operations of New Times and New Age "revealed extensive intermingling of the two entities in communications with the public." Br. for Appellants James W. Giddens and SIPC at 5. As a result, with the approval of SIPC, the Trustee "moved for an order substantively consolidating the estates of New Times and New Age . . . so as to maximize recovery to victims of Goren's fraudulent activities, irrespective of whether they had dealt with New Times, the broker-dealer entity or New Age, the non broker-dealer entity." *Id.* The SEC filed a brief in support of such a consolidation, and on November 27, 2000, the Bankruptcy Court granted the Trustee's motion. As a result, the assets and liabilities of the two entities were pooled and the combined estate has since been administered by the Trustee under the jurisdiction of the Bankruptcy Court. Customer claims have been determined according to SIPA and the debtor, for SIPA purposes, includes both New Times and New Age for claims arising after April 19, 1995, which is the date that New Times became an SEC-registered broker-dealer and a member of SIPC.

**C. The Trustee's Determination: "Claims for Cash" vs. "Claims for Securities"**

Over 900 claims have been filed in the liquidation proceeding. The fourteen Claimants whose reimbursement is the

5. As of December 31, 2002, the SIPC fund was valued at $1.26 billion. *See* SEC. INVESTOR PROT. CORP., 2002 ANNUAL REPORT 8, *available at* http://www.sipc.org/pdf/SIPC_Annual_Report _03.pdf. Since 1996, SIPC members have been assessed $150 per year. *Id.* at 9. In prior decades, assessment rates fluctuated annually depending on SIPC's expenses during

the prior year. *See id.; see also* 15 U.S.C. § 78ddd(d)(1).

6. The parties do not dispute that because the securities at issue in this case never existed, no substitute or replacement securities exist and the Claimants must be paid in cash. *Cf.* 15 U.S.C. §§ 78fff–1(b)(1), 78fff–2(b), 78fff–3(a).

subject of this appeal are among 174 claimants who, fraudulently induced by Goren, "invested" in his bogus money market funds ("the Funds" or "the New Age Funds").[7] It is worth noting that there is no suggestion that any of the Claimants, many of whom were elderly retirees, had any suspicion of Goren's criminality or of the non-existence of the New Age Funds in which he claimed to have invested their money. To the contrary, all of the Claimants have indicated that they believed they were investing in low-risk, conservative money market mutual funds.

To be clear—and this is the crucial fact in this case—the New Age Funds in which the Claimants invested *never* existed. They were not organized as mutual funds, they were never registered with the SEC and they did not issue any of the requisite prospectuses for investors. Although the Claimants received confirmations and monthly account statements indicating that their initial payments to the Debtors (and fictitious dividends) were invested in the New Age Funds, in reality, Goren had embezzled their money.

Because the claims were for non-existent securities, the Trustee concluded during the liquidation proceedings that the Claimants had "claims for cash" (eligible for only $100,000 in cash advances) and he valued those claims according to the amount paid to the Debtors for the purchase of the bogus shares, less any withdrawals or redemptions by the Claimants. Amounts shown on the Claimants' account statements as dividends or interest earned on the bogus funds were not included in the calculus. *SEC v. Goren*, 206 F.Supp.2d 344, 347 (E.D.N.Y.2002). The Trustee made it clear to the Claimants that any amounts they were owed in ex-

cess of $100,000 would be treated by the Debtors' estate as general unsecured claims, but the Trustee "warned the Claimants that the consolidated New Age and New Times estate would likely lack funds to satisfy any general unsecured claims." *Id.*

Meanwhile, investors who were misled by Goren to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds—because Goren never executed the transactions—the information that these claimants received on their account statements "mirrored what would have happened had the given transaction been executed." Br. for Appellants James W. Giddens and SIPC at 7 n. 6. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. *Id.* The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. *Id.* Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," in contrast to the "cash claimants" bringing this appeal, could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements. *Id.*

### D. The District Court Decision

Thereafter, the Claimants filed written objections to both (i) the Trustee's determination of their claims as cash claims and (ii) his refusal to compensate them for interest and dividend reinvestments. *See Goren*, 206 F.Supp.2d at 347. In response, the Trustee (joined by SIPC) moved for an

---

7. Some of the Claimants also made (or at least believed they had made) other investments through Goren but those investments, which were treated as "claims for securities" by the Trustee, are not the subject of this appeal.

order upholding his determination. *Id.* While these objections and motions were pending, Bankruptcy Judge Bernstein recused himself from the case. *Id.* at 348. Thereafter, District Court Judge Platt withdrew the reference and took exclusive jurisdiction of the SIPA proceeding. *Id.*

After reviewing the matter, the District Court denied the Trustee's motion and sustained the Claimants' objections in a May 28, 2002 Memorandum and Order. The court determined that the Claimants had claims for securities and that the value of those claims could be derived from the Claimants' equity positions as stated in their final account statements (including the fictitious interest and dividend reinvestments). *Id.* at 351–52. The court explained that, in keeping with SIPA policy goals, this result "turns on the transaction notice provided to customers and their legitimate expectations" and "promotes investor confidence." *Id.* at 351. The District Court relied on the "Series 500 Rules," 17 C.F.R. §§ 300.500–.503, in reaching this conclusion.[8] *Goren*, 206 F.Supp.2d at 350 (explaining that, under the Series 500 Rules, "receipt of written confirmation of the purchase or sale of a security generally determines what type of claim customers hold"). In the District Court's view, the Trustee's determination erroneously "hinge[d] on the unilateral actions of the fraudfeasor who embezzled his clients' funds." *Id.* at 351.

The Trustee and SIPC promptly filed a Joint Notice of Appeal. On June 20, 2003, responding to our request, the SEC filed an *amicus* brief in partial support of the Claimants and in partial support of the Trustee and SIPC.

## DISCUSSION

This appeal presents several issues of first impression in this Circuit. First, we are called upon to determine whether the Claimants should be treated as having "claims for securities" under section 9(a)(1) of SIPA, 15 U.S.C. § 78fff–3(a)(1), which are eligible for SIPC cash advances of up to $500,000, or as having "claims for cash," which are eligible for reimbursement capped at $100,000. Second, if the District Court properly held that the claims were "claims for securities," we must evaluate whether the District Court properly calculated the Claimants' "net equity" by referring to the fictitious securities positions reflected in the Claimants' account statements (which included artificial interest and dividend reinvestments). Finally, in the course of addressing these novel issues of statutory interpretation, we confront the still thornier question of whether and to what degree we ought to defer to the SEC's interpretation of the relevant provisions of SIPA when it *directly contradicts* SIPC's reading of the statute.

### I. THE CONFLICTING INTERPRETATIONS OF SIPA

We review *de novo* the District Court's conclusions of law, including its interpretation of SIPA and the Series 500 Rules. *See Gurary v. Nu–Tech Bio–Med, Inc.,* 303 F.3d 212, 219 (2d Cir.2002), *cert. denied,* 538 U.S. 923, 123 S.Ct. 1583, 155 L.Ed.2d 314 (2003); *Levy v. Southbrook Int'l Inv., Ltd.,* 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied,* 535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821 (2002).

---

**8.** As outlined *infra* at 86–87, the Series 500 Rules provide guidance for determining whether a customer has a cash claim or a securities claim when a relevant transaction straddled the filing date. The customer's "legitimate expectations" are the focus of the rule, which makes the cash/securities determination largely dependent on the receipt of written confirmations.

In this case, the SEC has outlined an interpretation of section 9(a)(1) of SIPA that plainly conflicts with the interpretation being pressed by SIPC and the Trustee.[9] All three agree, however, that (i) the Claimants were "customers" pursuant to SIPA because they "deposited cash with the debtor for the purpose of purchasing securities," 15 U.S.C. § 78*lll*(2); (ii) the securities in question did not exist and, thus, could not be liquidated or replaced by the Trustee; (iii) the Series 500 Rules do not govern this case; and (iv) the Trustee properly measured the Claimants' "net equity" by reference to the amount of money they paid to Goren and the Debtors to purchase the bogus funds.[10]

At this point, the interpretations diverge. The Trustee and SIPC work backward from the determination of the Claimants' "net equity," which is the sum they would have been owed by the Debtors if the Debtors had liquidated, on the filing date, all of the Claimants' securities positions. *See* 15 U.S.C. § 78*lll*(11). Because here there were no securities to liquidate, the Trustee had to value the claims according to the amount of "cash" that the Claimants initially paid to the Debtors for their investments in the New Age Funds. For that reason, SIPC and the Trustee conclude the claims are properly viewed as cash claims under section 9(a)(1) and, thus, limited to $100,000 in SIPC advances. *See id.* § 78fff–3(a)(1).

The SEC rejects this outcome-oriented test, instead focusing on Congress's intent in creating the distinction between the two types of claims and, derivatively, on satisfaction of the customer's legitimate expectations. According to the SEC, the Claimants should be treated as having "claims for securities"—regardless of the fact that the securities were fictitious—because they received purchase confirmations and account statements from Goren and the Debtors. Br. for *Amicus Curiae* SEC at 2, 8.

Before we consider whether and to what degree we ought to defer to either interpretation, we must examine the relationship between the SEC and SIPC.

## II. THE RELATIONSHIP BETWEEN SIPC AND THE SEC

### A. SIPA

[1] By the explicit language of SIPA, SIPC is *not* "an agency or establishment of the United States Government." 15 U.S.C. § 78ccc(a)(1)(A). SIPC asserts that although it is not an agency *"per se,"* it is, under SIPA, "an independent corporation" endowed with "its own voice and responsibilities in the conduct of liquidations and payment of net equity claims from the SIPC Fund." Letter from Harbeck, General Counsel, SIPC, to the Court of 7/3/03 ("Harbeck Letter"), at 1. According to SIPC, the SEC "possesses potential supervisory authority in some but not all areas of SIPC's operations." *Id.* (citing 15 U.S.C. § 78ggg(c)). Although we agree with SIPC that the drafters of SIPA clearly envisioned roles for both the SEC and SIPC in administering the statute,[11] *see* 3

---

9. SIPC and the Trustee submitted joint briefs.

10. The Claimants assert that, as the District Court found, the Series 500 Rules *do* dictate the result in this case and Claimants' net equity should be calculated by reference to the fictitious account statements they received from the Debtors.

11. We note, however, that SIPC's and the SEC's failure to come to consensus with respect to the issues presented on this appeal seems a far cry from the "cooperation and coordination" anticipated by SIPA's drafters. H.R. REP. No. 91–1613, at 12 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5254, 5266 ("Only with cooperation and coordination between the efforts of the self-regulatory organizations,

**IN RE NEW TIMES SECURITIES SERVICES, INC.**    **77**
Cite as 371 F.3d 68 (2nd Cir. 2004)

THOMAS LEE HAZEN, LAW SECURITIES REGULATION § 14.24 (2002), we find that Congress deliberately limited the authority of SIPC relative to the SEC.

The Supreme Court held in *Securities Investor Protection Corporation v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), that SIPA invests the SEC with " 'plenary authority' to supervise the SIPC." *Id.* at 417, 95 S.Ct. 1733. Indeed, SIPA drafters seem to have anticipated "substantial" and "vigorous" oversight of SIPC by the SEC. H.R. REP. No. 91–1613, at 11–12 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5254, 5265 (explaining that SIPA provides for "substantial oversight on the part of the Commission over the conduct of the affairs of SIPC"); *id.* at 5266 (noting that the House Committee on Interstate and Foreign Commerce "not only directs, but expects the Commission to use its oversight in a vigorous, but fair, manner"); *see also Sec. Investor Prot. Corp. v. Charisma Sec. Corp.*, 506 F.2d 1191, 1196 & n. 7 (2d Cir.1974) ("In fact, it is contemplated that the SEC will exercise a supervisory role over SIPC performance.").

For example, although SIPA provides SIPC with the power to adopt, amend or repeal bylaws and rules as "necessary or appropriate" to further the purposes of SIPA, 15 U.S.C. § 78ccc(b)(3), (4), the SEC may disapprove any such bylaw in whole or in part, and any proposed rule or rule change must be filed with and approved by the SEC before it takes effect,

*id.* § 78ccc(e)(1)(A), (2). Indeed, the Series 500 Rules, 17 C.F.R. §§ 300.500–.503, which the District Court held govern this case,[12] *see Goren*, 206 F.Supp.2d at 350–51, were proposed by SIPC and approved by the SEC in just that manner, *see* 17 C.F.R. § 300.100 (explanatory note). SIPA also empowers the SEC to take an even more proactive rule-making role: "The [SEC] may, by such rules as it determines to be necessary or appropriate in the public interest or to carry out the purposes of this chapter, *require* SIPC to adopt, amend or repeal any SIPC bylaw or rule, whenever adopted." 15 U.S.C. § 78ccc(f)(3) (emphasis added).

In addition, the SEC may, "on its own motion," file an appearance in any SIPC-initiated proceeding and "may thereafter participate as a party." *Id.* § 78eee(c). Even more significantly, "[i]n the event of the refusal of SIPC to commit its funds or otherwise to act for the protection of customers of any member of SIPC," SIPA authorizes the SEC to seek a court order "requiring SIPC to discharge its obligations under [SIPA] and for such other relief as the court may deem appropriate to carry out the purposes of [SIPA]." *Id.* § 78ggg(b); *see also Barbour*, 421 U.S. at 417–18, 95 S.Ct. 1733; 3 HAZEN, *supra*, § 14.24.

**B.  Deference to SIPC's Interpretation Is Inappropriate in this Case**

Shortly after SIPC was formed, this Court considered, in an entirely different

SIPC and the Commission, can this legislation see its fullest effectiveness.").

12. The Claimants assert that this dispute about whether the SEC or SIPC is owed deference is moot because the Series 500 Rules directly resolve this claim classification issue. Letter from Wissner-Gross, on behalf of the Claimants, to the Court of 7/3/03, at 7–8 ("Wissner-Gross Letter"). As outlined *infra* at 86–87, in light of the persuasive SIPC and

SEC analyses to the contrary, we disagree with the District Court's conclusion (and the Claimants' argument) that the Series 500 Rules govern this case and find, instead, that the Series 500 Rules were adopted to deal with transactions involving real, not fictitious, securities. We do, however, agree with the SEC's view that the Rules can be read broadly to support the SEC's reading of the remedial purposes of SIPA.

78                          371 **FEDERAL REPORTER, 3d SERIES**

context, the degree of deference that should be accorded to SIPC's interpretation of a different provision of SIPA. Noting its "familiarity with SIPA liquidations," SIPC argued that it should be given deference on a par with that given to an SEC interpretation. *Sec. Investor Prot. Corp. v. Charisma Sec. Corp.*, 506 F.2d 1191, 1196 (2d Cir.1974). The *Charisma Securities* court noted that while SIPC's expertise "should be accorded weight by a district judge," the court was "hesita[nt] to draw the analogy between the Corporation and the SEC," because the "SIPC is not an independent regulatory agency, ... nor has it yet had the opportunity to establish a long history of knowledgeable and conscientious performance as has the SEC." [13] *Id.; see also In re Lloyd Sec.*, 163 B.R. 242, 253 (Bankr.E.D.Pa.1994) (stating that because SIPC is "not a governmental agency, ... it cannot take advantage of the implicit deference which must be accorded to federal agencies' interpretations of their own pertinent statutory schemes and operative administrative regulations"), *aff'd in part, rev'd in part on other grounds*, 183 B.R. 386 (E.D.Pa.1995), *aff'd*, 75 F.3d 853 (3d Cir.1996).

Although SIPC now has the "history of knowledgeable and conscientious performance" under SIPA that it lacked when *Charisma Securities* was decided, its status vis-à-vis the SEC—and as a non-agency—has not changed. SIPC argues that other government-created corporations have been accorded *Chevron*-style deference, *see* Harbeck Letter at 6 (citing *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Velazquez v. Legal Servs. Corp.*,

164 F.3d 757 (2d Cir.1999), *aff'd*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001)), but we find that the entities at issue in those cases are dissimilar to SIPC in critical respects. The Pension Benefit Guaranty Corporation ("PBGC") was established as an entity "within the Department of Labor," with the power "to adopt, amend, and repeal" necessary "bylaws, rules, and regulations." 29 U.S.C. § 1302(a), (b)(3). As such, we have characterized PBGC as a "federal agency." *Jones & Laughlin Hourly Pension Plan v. LTV Corp.*, 824 F.2d 197, 201 (2d Cir.1987); *see also LTV Corp.*, 496 U.S. at 647, 110 S.Ct. 2668 (repeatedly characterizing PBGC as an agency). SIPC, on the other hand, does not have similar authority.

With respect to the Legal Services Corporation ("LSC"), the other government-created corporation cited by SIPC, the SEC notes that although LSC is not a government agency, it is unlike SIPC because "its enabling statute gives it final authority to promulgate rules." Letter from Prezioso, General Counsel, SEC, to the Court of 7/21/03 ("Prezioso Letter"), at 8. We agree. *See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 689–90 (D.C.Cir.1991) (according *Chevron* deference to LSC interpretation because, although LSC is not an agency, "Congress has entrusted LSC with the duty to administer the [Legal Services Corporation] Act and ... has delegated to LSC the authority to fill any gap left ... by Congress" through "notice-and-comment rulemaking ..., indicating that Congress intended that it be treated for these purposes like an

---

**13.** SIPC highlights the fact that, four years after *Charisma Securities* was decided, "Congress amended SIPA to instruct the courts to place 'considerable reliance' on SIPC's views" in determining appropriate trustee fee allowance amounts (the issue from *Charisma Securities*). Harbeck Letter at 8. We find that amendment cuts both ways. While it certainly explicitly expands the authority of SIPC, it does so *only* with respect to allowance determinations, an issue that is not presented in this case.

IN RE NEW TIMES SECURITIES SERVICES, INC.     **79**
Cite as 371 F.3d 68 (2nd Cir. 2004)

agency of the government") (citations and internal quotation marks omitted).

This case is also distinguishable from *LTV Corp.* and *Velazquez* because the SEC—the agency with " 'plenary authority' to supervise the SIPC," *Barbour,* 421 U.S. at 417, 95 S.Ct. 1733—has proffered a competing view of the meaning of the statute. The Trustee and SIPC suggest, however, that the SEC's oversight and rule-making authority has somehow atrophied because, in the over thirty years since SIPA's creation, it has never been exercised meaningfully. Harbeck Letter at 2. While the SEC's historically *laissez-faire* approach to its SIPA responsibilities is relevant to our deference analysis, *see infra* at 80–83, we do not believe it has effected the shift in the balance of power between the two organizations that SIPC and the Trustee seem to envision.[14]

[2] In *Chao v. Russell P. Le Frois Builder, Inc.,* 291 F.3d 219 (2d Cir.2002), we addressed a similar problem where "two administrative agents"—the Secretary of Labor and the Occupational Safety and Health Review Commission—offered competing views of the statute at issue. *Id.* at 226. We held that the very first step of that deference analysis required a choice between the two agencies: "For

purposes of [the deference] analysis, then, we must first decide to which administrative actor—the Secretary or the Commission—Congress 'delegated authority ... to make rules carrying the force of law.' Only then can we decide the nature or extent of that deference." *Id.* (quoting *United States v. Mead Corp.,* 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (citation omitted)). While SIPC clearly plays an essential administrative role, Congress deliberately chose *not* to grant SIPC agency authority, *see* 15 U.S.C. § 78ccc(a)(1)(A), and instead invested "plenary authority" over SIPA with the SEC, *Barbour,* 421 U.S. at 417, 95 S.Ct. 1733. Thus, while SIPC's proposed construction of the statute is a relevant part of our analysis—and will certainly inform the level of deference we accord to the SEC's reading of the statute—it is not an interpretation to which we must necessarily defer.[15] We confine our holding to the unique facts of this case where the SEC has offered a competing and more persuasive interpretation of the statute. We do not consider what measure of deference an SIPC interpretation might warrant under other circumstances, e.g., when it alone speaks to the meaning of one of its rules. Our decision in *Charisma Securities* left

---

14. The SEC certainly cannot be characterized as having engaged in the "substantial supervision" of SIPC that was anticipated by the statute's drafters. *Barbour,* 421 U.S. at 419, 95 S.Ct. 1733. We do note, however, that in recent years, the SEC has been making efforts to improve its oversight of SIPC. *See* U.S. General Accounting Office, Pub. No. GAO-01-653, Sec. Investor Prot.: Steps Needed To Better Disclose Sipc Policies To Investors 10, 53–59, 87 (2001) (noting that SEC has begun monitoring SIPC liquidations more closely), *available at* http://www.gao.gov; 2003 GAO Report at 3, 13–14 (noting that SEC has broadened the sample of SIPC liquidations it reviews and that SEC has modified internal procedures to make its review of SIPC more streamlined).

15. Although *Chao* involved two agencies that naturally begin on more equal footing in a deference analysis, the shared responsibility for rule-making under SIPA—and the SEC's relative non-involvement historically—arguably makes this deference choice a closer call than that presented in *Chao. See Chao,* 291 F.3d at 226. Even if we were to find that *Chao* did not require this threshold choice—and that we could somehow manage the analytical awkwardness of a side-by-side deference analysis—we would reach the same ultimate result because we find the SEC's interpretation to be more persuasive than that offered by SIPC. *See infra* at 83–87].

that general question open and we do so here as well.

[3] Ultimately, we agree with the SEC that "[w]hatever SIPC's expertise in overseeing SIPA liquidations, Congress did not intend for the Commission's interpretations of SIPA to be overruled by deference to the entity that was made subject to the Commission's oversight." Prezioso Letter at 8. The SEC has also highlighted that, under the statutory scheme, if SIPC filed a proposed rule that set forth its current interpretation of section 9(a)(1) of SIPA, 15 U.S.C. § 78fff-3(a)(1), the Commission would, after considering whether the proposed rule was consistent with SIPA and in the public interest, have authority to deny approval of such a rule. *Id.* Even more compelling, the SEC argues that it could require SIPC to adopt a rule that sets forth what the SEC believes is the appropriate interpretation of section 9(a)(1). *Id.* We agree that deference to SIPC, under the circumstances presented here, would impermissibly undermine that statutory hierarchy. Whether the SEC interpretation of section 9(a)(1) deserves deference from this Court is a separate question to which we now turn.

III. The SEC's Interpretation Is Persuasive And Merits *Skidmore* Deference

**A. Mandatory *Chevron* Deference Is Unwarranted in this Case**

[4] The first question we must ask in the deference analysis is "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Of course, if congressional intent could be discerned from the face of SIPA, our deference inquiry would be over because "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–

43, 104 S.Ct. 2778; *see also United States v. Gayle*, 342 F.3d 89, 92 (2d Cir.2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). SIPA does not address the precise issue presented in this case. The statute fails to provide any definition of a "claim for cash." *See* 15 U.S.C. § 78*lll*. None of the provisions outlines how the Claimants—who were fraudulently misled to "invest" their money in Goren's bogus securities—should be treated. This is precisely the type of "interstitial" question anticipated by *Chevron* and its progeny. *See, e.g., Barnhart v. Walton*, 535 U.S. 212, 222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).

[5] In light of the statute's silence, and because we have an agency interpretation of section 9(a)(1) of SIPA, 15 U.S.C. § 78fff-3(a)(1), the second *Chevron* step requires that, as opposed to proceeding to construe the statute ourselves (as we usually would), we must determine whether the SEC's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. "If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment 'controlling weight.'" *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (quoting *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778); *see also SEC v. Zandford*, 535 U.S. 813, 819–20, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) (explaining that SEC's interpretation of "the ambiguous text of § 10(b) . . . is entitled to deference if it is reasonable").

There are several reasons that the mandatory deference envisioned by *Chevron* would be inappropriate here. *First*, although the SEC has clearly had the power

to draft rules to address this ambiguity in SIPA, the interpretation proffered in its brief has never been articulated in any rule or regulation.[16] As the SEC admits, "[o]ther than the Series 500 Rules, which the Commission does not interpret to cover fictitious securities, the Commission has not defined by regulation the terms in Section 9(a)." Prezioso Letter at 6. In *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Supreme Court explained that it "ha[s] recognized a very good indicator of delegation meriting *Chevron* treatment in express congressional authorizations to engage in the process of rulemaking or adjudication *that produces regulations or rulings for which deference is claimed.*" *Id.* at 229, 121 S.Ct. 2164 (emphasis added). While the fact that the SEC interpretation has not been expressed in the form of a rule or regulation crafted after notice and comment does not alone determine the applicability of *Chevron, see id.* at 230–31, 121 S.Ct. 2164; *Walton*, 535 U.S. at 222, 122 S.Ct. 1265, taken together with the factors discussed *infra*, it counsels against affording *Chevron* deference to the SEC's interpretation.

*Second*, it appears that the position taken by the SEC in its brief is one that it has not previously articulated in *any* form. *Cf. Local 705, Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 566 & n. 20, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (noting that "considerable weight" is given to "an administrative agency's *consistent, longstanding* interpretation of the statute under which it operates") (emphasis added). To be clear, while the SEC's articulation of this position is new, the issue certainly is not. The SEC acknowledges that SIPC has long held its position regarding the treatment of non-existent securities. SIPC first articulated this argument—that a claim for fictitious securities is properly treated as a claim for cash—in cases that arose over a decade ago. *See Plumbers and Steamfitters Local 490 Severance and Ret. Fund v. Appleton (In re First Ohio Sec. Co.)*, No. 93–3313, 39 F.3d 1181 (table), 1994 WL 599433, at *1 (6th Cir. Nov.1, 1994) (unpublished decision) (finding that "the only legal conclusion possible" where claimants sought SIPC advances for securities that "never even existed" was that the claims were "for cash" and not "for securities"), *cert. denied*, 514 U.S. 1018, 115 S.Ct. 1362, 131 L.Ed.2d 219 (1995); *Appleton v. Hardy (In re First Ohio Sec. Co.)*, No. 590–0072 (Bankr.N.D.Ohio Dec. 1, 1992) (unpublished order affirming trustee's determination that a claim for non-existent securities is a "claim for cash"). SIPC also apprised the SEC of its position on this issue in its 1993 and 1994 Annual Reports. Harbeck Letter at 9.

*Third*, the SEC concedes that its new interpretation of SIPA has been expressed "for the first time . . . in an *amicus* brief filed at the request of this Court" and that, under those circumstances, its interpretation "may not be entitled to *Chevron* deference." Prezioso Letter at 6. As we observed in *Callaway v. Commissioner*, 231 F.3d 106 (2d Cir.2000), the Supreme Court has "accorded deference, even to agency interpretations appearing for the first time in an *amicus* brief, where there 'is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.' A new, and therefore inconsistent position, may yet be 'fair and considered.'" *Id.* at 132 (citations omitted); *see also Cedar Rapids Cmty. Sch. Dist. v.*

---

16. We agree with the SEC and SIPC that the Series 500 Rules do not govern this issue. Even if we were to view the text of the Series 500 Rules as ambiguous, we would defer to the SEC's and SIPC's common interpretation.

*Garret F. ex rel. Charlene F.*, 526 U.S. 66, 74–75 n. 6, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999); *Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). *But cf. Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference."). The SEC's opinion is certainly not the sort of "'post hoc rationalization' . . . to defend past agency action against attack" about which the Supreme Court has registered concern. *Auer*, 519 U.S. at 461–62, 117 S.Ct. 905 (citation omitted). We have no reason to doubt that the SEC's interpretation was the product of careful consideration. And the SEC's familiarity with this case from its inception lends credence to its view. Nevertheless, the SEC submitted its brief only after being invited to do so (and only once this dispute reached appeal).[17] Indeed, in some cases, we have declined to consider arguments raised for the first time in an appellate *amicus* brief. *See, e.g., Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*, 179 F.3d 38, 47 (2d Cir.1999). This, then, is another consideration that weighs against *Chevron* deference.

*Finally,* the SEC's historical relationship with SIPC and SIPC's arguably greater familiarity with the provisions of SIPA are yet additional reasons to decline to apply *Chevron* deference to the SEC's interpretation of SIPA. *Chevron* deference is predicated, in part, on the perceived superior expertise of the agency in question. *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651–52, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) ("[P]ractical agency expertise is one of the principal justifications behind *Chevron* deference."). With respect to SIPA and the determinations made by the Trustee and SIPC during liquidation proceedings, the SEC's role involves more removed oversight. Indeed, if the conduct of this litigation is any indication, it appears that the SEC generally adopts a hands-off approach with respect to SIPC liquidations (and litigation). As a result, the SEC's "expertise" in this context is arguably less compelling than it would be with respect to those portions of the Securities Exchange Act as to which it takes a more proactive day-to-day role. *Cf. Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 n. 30, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986) (noting that where the Department of Health and Human Services was one of twenty-seven agencies responsible for promulgating regulations forbidding discrimination, "there is . . . not the same basis for deference predicated on expertise as we found [in *Chevron* ]").

For these reasons, we find that the "informal opinion" proffered by the SEC in its *amicus* brief "lacks the force of law" and thus does not warrant *Chevron* deference. *Chao*, 291 F.3d at 227.

## B.  *Skidmore* Deference Is Appropriate

[6, 7]  The fact that *Chevron* is inapplicable to this case does not mean that the SEC's interpretation will merit no defer-

---

17.  The SEC asserts, however, that its "prior silence" should not preclude deference to its interpretation of SIPA because "[u]ntil this Court's request for an *amicus* brief, the Commission has never been asked to interpret Section 9(a) with respect to fictitious securities." Prezioso Letter at 9. We are not per-

suaded by this explanation for the SEC's silence because the statute explicitly allows SEC intervention and participation in any SIPC proceeding (and does not require the SEC to await an invitation from the court or the parties). *See* 15 U.S.C. § 78eee(c).

IN RE NEW TIMES SECURITIES SERVICES, INC.                    83
Cite as 371 F.3d 68 (2nd Cir. 2004)

ence whatsoever. Instead, it warrants the more limited standard of deference adopted by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *See United States v. Mead Corp.*, 533 U.S. 218, 234, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) ("*Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency.") (quoting *Skidmore*, 323 U.S. at 139, 65 S.Ct. 161); *Esden v. Bank of Boston*, 229 F.3d 154, 169 n. 19 (2d Cir.2000), *cert. denied*, 531 U.S. 1061, 121 S.Ct. 674, 148 L.Ed.2d 652 (2001). As the *Skidmore* Court explained, the level of deference owed to any particular interpretation depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140, 65 S.Ct. 161; *see also Mead*, 533 U.S. at 239, 121 S.Ct. 2164. In *Community Health Center v. Wilson–Coker*, 311 F.3d 132 (2d Cir.2002), we outlined the factors that inform our *Skidmore* analysis, including "the agency's expertise, the care it took in reaching its conclusions, the formality with which it promulgates its interpretations, the consistency of its views over time, and the ultimate persuasiveness of its arguments." *Id.* at 138, 65 S.Ct. 161.

Applying the *Community Health Center* factors in this case, we find that several factors—most notably the persuasiveness of the SEC's interpretation—weigh in favor of deference to the SEC's reading of section 9(a)(1) of SIPA, 15 U.S.C. § 78fff-3(a)(1). Under the federal securities laws, the SEC is responsible for regulating broker-dealers, administering the securities exchanges and protecting the public interest. The protections outlined in SIPA are merely one aspect of this much broader legislative scheme. Although the SEC has not always played a direct role in administering SIPA, its general oversight of the securities laws gives it expertise that merits some degree of deference. We decline to accord the SEC interpretation the "considerable deference" it requests, because the SEC has not had the kind of history of consistent interpretation of section 9(a)(1) that prompted our holding in *Community Health Center*. *See* 311 F.3d at 139. As we did in *Community Health Center*, we decline to determine "the exact molecular weight of the deference" to be accorded to the SEC's position without analyzing the persuasiveness of its interpretation (the final *Skidmore* factor). *Id.* at 137–38, 65 S.Ct. 161.

### C. The SEC's "Claims for Securities" Analysis Is Persuasive

The SEC disagrees with SIPC's "claims for cash" analysis, asserting that the mere fact that the Claimants' net equity is determined by the amount of cash paid for the securities does not mean that the Claimants have claims for cash within the meaning of section 9(a)(1). Br. for *Amicus Curiae* SEC at 17. Although it notes that the "SIPC's desire for cash-versus-securities consistency among the various provisions [of SIPA] is not an unreasonable approach," the SEC argues that the provisions relied upon by SIPC to supply this definition do not mention the terms "claim for cash" or "claim for securities." *Id.* at 14. In fact, the "net equity" definition, *see* 15 U.S.C. § 78*lll* (11), upon which SIPC heavily relies, does not even use the word "cash." None of the provisions relied upon by SIPC illuminate the definition of a "claim for cash."

### 1. The SEC's Interpretation Furthers SIPA's Investor Protection Goals

[8] Examination of SIPA's legislative history reveals that the SEC's interpreta-

84                    **371 FEDERAL REPORTER, 3d SERIES**

tion is better tailored to the original aims of SIPA's drafters. Congress enacted SIPA in 1970, in response to "a rash of failures among securities broker-dealers in the late 1960s" that had resulted in "significant losses to customers whose assets either were unrecoverable or became tied up in the broker-dealers' bankruptcy proceedings." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 66 (2d Cir. 2000). The statute was "designed to effect two aims." H.R. REP. No. 91–1613, at 2–4 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5254, 5257. First, the legislation immediately established "a substantial reserve fund ... [to] provide protection to customers of broker-dealers ... to reinforce the confidence that investors have in the U.S. securities markets." *Id.* Second, SIPA "strengthen[ed] ... the financial responsibilities of broker-dealers." *Id.* Later amendments to the statute have reiterated this emphasis on investor protection. In 1978, the statute was amended to, *inter alia,* "increase[] the amounts available to be distributed in liquidations to each customer from $50,000 to $100,000; no more than $40,000 (instead of the present $20,000) is available to satisfy claims for cash." [18] S. REP. No. 95–763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765. These and other changes included in the 1978 amendments were intended to ad-

dress the perceived "limitations ... upon SIPC's ability to provide the type and degree of protection for securities customers for which SIPA was enacted. Specifically, these limitations in some cases impair the satisfaction of customers' claims as fully, promptly and efficiently as the Committee believes is desirable." *Id.* These statutory goals—promoting investor confidence and providing protection to investors—are better served by the SEC's broader reading of section 9(a)(1). [19] *See Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) ("We are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.") (interpreting the 1934 Securities Exchange Act).

### 2. *The Legislative History of Section 9(a)(1) of SIPA Supports the SEC's Interpretation*

The distinction between "claims for cash" and "claims for securities" in section 9(a)(1) was introduced into SIPA shortly before the legislation was passed. It appears to have been intended to address concerns raised during the drafting process by the Department of the Treasury and the Board of Governors of the Federal Reserve. In April 1970, the Acting General Counsel of the Department of the Trea-

---

18. These numbers were increased to their current levels in 1980. *See* Amendments to the Securities Investor Protection Act, Pub.L. No. 96–433, § 1, 94 Stat. 1855 (1980).

19. SIPC emphasizes that the only two authorities that seem to be directly on point (both of which, we note, are unpublished and cursory) support its position. *See Plumbers and Steamfitters Local 490 Severance and Ret. Fund v. Appleton (In re First Ohio Sec. Co.),* No. 93–3313, 39 F.3d 1181 (table), 1994 WL 599433, at *1 (6th Cir. Nov.1, 1994) (unpublished decision), *cert. denied,* 514 U.S. 1018, 115 S.Ct. 1362, 131 L.Ed.2d 219 (1995); *Appleton v. Hardy (In re First Ohio Sec. Co.),* No. 590–

0072 (Bankr.N.D.Ohio Dec. 1, 1992). While SIPC relies heavily on the Third Circuit's 1973 decision in *SEC v. Aberdeen Securities Co., Inc.,* 480 F.2d 1121 (3d Cir.), *cert. denied sub nom. Seligsohn v. SEC,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973), that decision—which holds that in a case involving non-existent securities, the claimant is entitled to the "cash which the broker has, or should have, been holding," *id.* at 1127—does not resolve the issue of the applicability of the then-$20,000 limit on "claims for cash." Clearly, however, the caselaw on this issue is sparse. We do not find these authorities particularly enlightening.

IN RE NEW TIMES SECURITIES SERVICES, INC.    85
Cite as 371 F.3d 68 (2nd Cir. 2004)

sury sent letters to the chairmen of the relevant committees of both the Senate and the House stating that Treasury opposed the bills, in part because the proposed limit on cash advances of $50,000 per account far exceeded the $20,000 limit per account on coverage provided by FDIC and FSLIC, and, thus, "could be construed as an indication that the Federal Government attaches greater importance to the preservation of public confidence in broker-dealers than to the preservation of confidence in the banking system." [20] *Federal Broker–Dealer Insurance Corporation: Hearings on S. 2348, 3988 and 3989 Before the Subcomm. on Sec. of the Senate Comm. on Banking and Currency*, 91st Cong. 79–80 (1970) (letter from Englert to Sparkman); *Securities Investor Protection: Hearings on H.R. 13308, 17585, 18081, 18109 and 18458 Before the Subcomm. on Commerce and Fin. of the House Comm. on Interstate and Foreign Commerce*, 91st Cong. 148–49 (1970) [hereinafter *House Subcommittee Hearings*] (letter from Englert to Staggers). The Vice Chairman of the Board of Governors of the Federal Reserve System made a similar observation—that the proposed SIPC "insurance" would be "more generous than coverage afforded depositors" under the FDIC and FSLIC—in a July 1970 letter to the House Committee. *House Subcommittee Hearings, supra*, at 145–47 (letter from Robertson to Staggers). He indicated, however, that the Federal Reserve Board recognized that "coverage of customers of broker-dealers cannot be entirely parallel to that afforded depositors in banks, because the broker performs a custodial function—as an integral part of customer account services—in holding customers' fully paid securities in safekeeping." *Id.* He proceeded to explain that "[t]he accounts of customers of broker-dealers thus reflect *partly depository* claims (credit balances) comparable to claims insured by the FDIC and *partly custodial* claims comparable not to deposits but to bank trust accounts." *Id.*

Notwithstanding this disparity, both bills emerged from their respective committees without modification of the $50,000 limit, *see* 116 CONG. REC. 39,358 (Dec. 1, 1970) (draft of H.R. 19333, 91st Cong. § 6(e)(1) (1970)); *id.* at 40,865–66 (Dec. 10, 1970) (draft of S. 2348, 91st Cong. § 35(m)(11) (1970)), and the House bill containing the $50,000 limit was passed on December 1, 1970, *id.* at 39,369–70. At a December 10 debate, however, the Senate adopted an amendment proposed by Senators McIntyre and Muskie to reduce the "maximum insurance-type protection" for *all* SIPA claims from $50,000 to $20,000 in order to "bring investor protection in line with the protections which the Congress has already made available to depositors in banks and shareholders in savings and loan associations." *Id.* at 40,872 (statement of Sen. McIntyre). Another senator, after observing that it was reasonable to reduce the "coverage for cash" to $20,000 to "bring[ ] it in line with the insurance coverage for cash deposits" in other institutions, inquired whether "it might be more acceptable and more efficient in restoring confidence if the figure in the original bill with respect to securities only were left at $50,000 and the $20,000 applied to the cash." *Id.* (statement of Sen. Bennett). After considerable debate, the Senate passed the amended version—reducing

---

**20.** Apparently, the Department of the Treasury later changed its position. In a December 8, 1970 letter to the Chairman of the Senate Banking and Currency Committee, the Acting Secretary of the Treasury emphasized the Administration's support for S. 2348 and urged its prompt passage. 116 CONG. REC. 40,870 (1970) (letter from Walker to Sparkman).

all claims to $20,000—but with an understanding that the issue of a provision with separate limits for cash and securities would receive further examination in conference. *Id.* at 40,873–77.

Shortly thereafter, the Conference Committee reported that it had adopted the two-tiered system envisioned during the Senate debates, distinguishing the amount of protection available for securities claims from that available for cash claims. Conf. Rep. No. 91–1788, at 3 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5281, 5283 ("The Conference substitute continues the $50,000 limitation, but provides further that, insofar as all or any portion of a customer's claim is for cash (as distinct from securities), the amount advanced for such claim to cash shall not exceed $20,000."). The revised bill (H.R.19333) was passed by both chambers and signed into law on December 30, 1970.

[9] In light of this history, we are persuaded by the SEC's view that the dichotomy between "claims for cash" and "claims for securities" in section 9(a)(1) of SIPA, 15 U.S.C. § 78fff–3(a)(1), was introduced "to distinguish the custodial functions of a broker-dealer with respect to securities from the broker-dealer's depository-like functions with respect to cash deposits." Br. for *Amicus Curiae* SEC at 12. The "claims for cash" carve-out in section 9(a)(1) "was intended to … limit the protection of a brokerage firm customer who uses his account as a depository for cash to the same protection that bank depositors receive under FDIC coverage." *Id.* Adopting this view of the statute, we find that because the Claimants directed that the money they placed with the Debtors be used to purchase securities—and, importantly, because they received confirmations and account statements reflecting such purchases—they are not the types of cash depositors envisioned

by the drafters of the "claims for cash" provision.

3. *The Series 500 Rules Support an Outcome Based on the Claimants' Legitimate Expectations*

As a final source of support for its position, the SEC cites the Series 500 Rules. Under the Series 500 Rules, whether a claim is treated as one for securities or cash depends not on what is *actually* in the customer's account but on what the customer has been told by the debtor in written confirmations. Thus, if the debtor sends a written confirmation to the customer that the securities in the customer's account have been sold, then the customer has a "claim for cash," even if the sale never took place (unless there is a contract for the sale). 17 C.F.R. § 300.501(a). The customer is also viewed as having a "claim for cash" even if he or she placed an order for the purchase of securities unless (i) the debtor has sent a written confirmation of the purchase; or (ii) the securities have become "the subject of a completed or executory contract for purchase." 17 C.F.R. § 300.501(b). Conversely, another rule makes clear that if the customer's account actually holds cash but the customer received from the debtor a written confirmation of a securities purchase, then the customer has a "claim for securities" in the liquidation. 17 C.F.R. § 300.502(a)(1).

[10] The Claimants assert that "the Series 500 rules, by their plain language, unambiguously apply to the classification issue presented here." Wissner–Gross Letter at 2. While the Claimants are correct that the Series 500 Rules address the circumstance of non-existent *transactions*, there is nothing in the rules suggesting their applicability to cases involving non-existent *securities*. The SEC and SIPC both indicate that the Rules were promulgated to resolve whether a claim is for

## IN RE NEW TIMES SECURITIES SERVICES, INC.    87
Cite as 371 F.3d 68 (2nd Cir. 2004)

securities or cash when a transaction in real securities straddled the filing date and do not govern transactions involving fictitious securities, and we defer to their shared interpretation because we do not find that it is "plainly erroneous or inconsistent with" the Series 500 Rules. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (explaining that agency's interpretation of its own regulations is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation"); *see also Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (same).

Nevertheless, we are persuaded by the SEC's argument that the premise underlying the Series 500 Rules—that a customer's "legitimate expectations," based on written confirmations of transactions, ought to be protected—supports the SEC's interpretation of section 9(a)(1). *See* Rules of the Sec. Investor Prot. Corp., 53 Fed. Reg. 10368–69 & n. 3 (Mar. 31, 1988). In the SEC's view, the Claimants in this case should be treated as having claims for securities because the confirmations and account statements that they received from the Debtors stated that the Claimants held securities in their accounts. Br. for *Amicus Curiae* SEC at 8.

SIPC disputes that customers can have "legitimate" expectations as to non-existent securities. We note that SIPC's approach does perhaps promote an arguably laudable policy goal—encouraging investors to research and monitor their investments (and their brokers) with greater care. This goal of greater investor vigilance, however, is not emphasized in the legislative history of SIPA. Instead, as outlined *supra* at [26–27], the drafters' emphasis was on promoting investor confidence in the securities markets and protecting broker-dealer customers. We find the SEC's interpretation more in line with the goals of the statute and with the legislators' intent in introducing the securities/cash distinction in section 9(a)(1).

\*        \*        \*        \*        \*        \*

After reviewing the language of the statute, its purposes of protecting investors and inspiring confidence in the securities markets, and the specific history surrounding the drafting of the relevant language found in section 9(a)(1) of SIPA, 15 U.S.C. § 78fff–3(a)(1), we are persuaded by and, thus, defer to the SEC's interpretation. Indeed, even if we were not to adopt the SEC's interpretation as a matter of *Skidmore* deference, we would independently conclude that it is the proper interpretation of the statute. As the SEC explains:

> When a customer has been sent confirmations and account statements reflecting his securities purchases and showing that he holds the securities in his account, his claim, in the Commission's view, involves the debtor's function as securities custodian and is one for securities entitled to SIPC protection up to $500,000. Conversely, if the customer is using his brokerage account as a cash depository, as reflected in his account statements, he has a claim for cash entitled to protection up to $100,000—no more protection than that provided to bank depositors.

Br. for *Amicus Curiae* SEC at 12–13.

**D.  The Claims Should Be Valued According to the Amount Initially Paid by the Claimants to the Debtors for the Purchase of the New Age Funds and Should Not Include Fictitious Interest or Dividend Reinvestments**

[11]    Finally, we must consider how the Claimants' net equity under SIPA should be determined. The District Court made this calculation by relying on the "value" of the bogus securities (including artificial in-

**88**          **371 FEDERAL REPORTER, 3d SERIES**

terest and dividends) as set forth in the fictitious account statements that the Claimants received from Goren and the Debtors. *See SEC v. Goren,* 206 F.Supp.2d 344, 352 (E.D.N.Y.2002). The District Court defended this calculation as necessary to protect the Claimants' "legitimate expectations." *Id.* at 351.

The SEC and SIPC are in agreement that the Claimants' net equity should be valued according to the cash they initially provided to the Debtors to purchase the Funds and should not include any bogus interest or dividend reinvestments. *Cf. SEC v. Aberdeen Sec. Co., Inc.,* 480 F.2d 1121, 1127–28 (3d Cir.) (explaining that a customer's net equity includes cash that the broker should have been holding on the filing date), *cert. denied sub nom. Seligsohn v. SEC,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); *Focht v. Athens (In re Old Naples Sec., Inc.),* No. 2:00–cv–181–FTM–29D, slip op. at 15–17 (M.D.Fla. Sept. 30, 2002) (calculating net equity according to claimants' initial investment in Ponzi scheme and offsetting that number by any phony interest payments received). As the SEC indicated in its brief, basing customer recoveries on "fictitious amounts in the firm's books and records would allow customers to recover arbitrary amounts that necessarily have no relation to reality.... [and] leaves the SIPC fund unacceptably exposed." Br. for *Amicus Curiae* SEC at 16. SIPC and the SEC agree that such an approach is irrational and unworkable and we defer to their unanimous and persuasive analysis of the potential absurdities created by reliance on the entirely artificial numbers contained in fictitious account statements. Accordingly, we adopt the view that the Claimants' net equity is properly calculated as the amount of money that the Claimants initially placed with the Debtors to purchase the New Age Funds and does not include the artificial interest or dividend reinvest-

ments reflected in the fictitious account statements that the Claimants received from the Debtors.

## CONCLUSION

For the foregoing reasons, we affirm the District Court's determination that the Claimants have "claims for securities" under section 9(a)(1) of SIPA, 15 U.S.C. § 78fff–3(a)(1), but we vacate the District Court's calculation of the value of those claims and remand for further proceedings consistent with this opinion. The judgment of the District Court is hereby affirmed in part and vacated and remanded in part and the Claimants–Appellees may recover two-thirds of their costs on this appeal.



**UNITED STATES of America, Appellant,**

v.

**Albert HUERTA, Defendant–Appellee.**

Docket No. 03–1513.

United States Court of Appeals, Second Circuit.

Argued: May 17, 2004.

Decided: June 10, 2004.

**Background:** Defendant was convicted in the United States District Court for the Southern District of New York, Lawrence M. McKenna, J., upon his plea of guilty to two counts of conspiring to submit false statements and submitting false statements relating to health care matters. Parties cross-appealed sentence imposed.

EXHIBIT 17

7

JAMES H. COHN SPECIAL TRUST
PROFIT (LOSS) AND LOSS

| BENEFICIARY | Value of Account Jan. 1, 2008 | Ownership Percent | Earnings Jan. 2008 | Earnings Feb. 2008 | Earnings Mar. 2008 | Earnings Apr. 2008 | Earnings May. 2008 | Earnings Jun. 2008 | Earnings Jul 2008 | Earnings Aug. 2008 | Earnings Sept. 2008 | Earnings Oct. 2008 | Earnings Nov. 2008 | Value of Account Nov. 30, 2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| James H. Cohen | $1,054,059.00 | 19.0802% | $6,276.57 | $1,261.33 | $1,260.72 | $33,453.64 | $21,845.41 | $4,429.70 | $1,872.00 | -$1,215.50 | $16,247.64 | $3,776.83 | $22,779.69 | $1,166,008.03 |
| Morris K. Abramson | $1,054,059.00 | 19.0802% | $6,276.57 | $1,261.33 | $1,200.72 | $33,453.64 | $21,845.41 | $4,429.70 | $1,872.00 | -$1,215.50 | $16,247.64 | $3,776.83 | $22,779.69 | $1,166,008.03 |
| Barry E. Kaufman | $1,066,886.25 | 13.3631% | $9,368.61 | $1,281.33 | $1,300.33 | $33,949.62 | $22,166.29 | $4,495.38 | $1,896.76 | -$1,235.52 | $16,486.52 | $3,834.85 | $23,117.42 | $1,183,265.01 |
| Robin C. Berniker | $441,238.50 | 7.9871% | $2,627.01 | $538.38 | $502.63 | $14,003.99 | $9,144.68 | $1,854.31 | $783.84 | -$808.82 | $8,601.41 | $1,581.85 | $9,635.78 | $488,101.38 |
| Alan D. Garfield | $471,957.81 | 8.5432% | $2,809.90 | $573.72 | $537.62 | $14,978.96 | $9,781.34 | $1,983.41 | $838.20 | -$544.24 | $7,274.92 | $1,691.98 | $10,199.97 | $522,083.30 |
| Marion Garfield | $332,731.82 | 6.0230% | $1,980.99 | $404.47 | $379.03 | $10,560.22 | $6,895.58 | $1,398.31 | $690.93 | -$383.89 | $5,128.85 | $1,192.85 | $7,190.80 | $368,070.45 |
| Erin M. Helberg | $357,731.82 | 6.4756% | $2,129.83 | $434.86 | $407.81 | $11,353.69 | $7,414.00 | $1,503.37 | $635.33 | -$412.52 | $5,614.20 | $1,262.48 | $7,731.08 | $395,725.64 |
| Marian Cohen 2001 RT | $567,828.44 | 10.0076% | $3,321.15 | $678.10 | $635.44 | $17,704.32 | $11,561.01 | $2,344.28 | $990.70 | -$643.27 | $8,598.56 | $1,999.83 | $12,055.45 | $617,074.09 |
| BK Interest LLC | $185,071.85 | 3.3501% | $1,101.87 | $224.98 | $210.82 | $5,873.50 | $3,835.62 | $777.77 | $328.69 | -$213.42 | $2,652.76 | $663.49 | $3,989.66 | $204,727.68 |
| | | | | | | | | | | | | | | $0.00 |
| TOTAL | $5,524,364.49 | 100.0000% | $32,890.51 | $6,715.50 | $8,283.00 | $175,331.85 | $114,492.65 | $23,216.25 | $9,811.25 | -$6,370.50 | $85,154.50 | $19,605.00 | $119,369.24 | $6,111,063.74 |

Value of Account-Long ............ $6,200,173.74
Add: Long Positions-Puts .......... $216,150.00
Less: Short Positions-Calls ...... -$305,230.00
Value of Account-Nov 30, 2008 .... $6,111,063.74

Return on Investment          $119,369.24
                              $5,991,704.50          1.9926%

# EXHIBIT 18


**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 221-2242
Fax 212 486-8178

MAY 15, 2003

RE: JAMES H COHEN
    ACCOUNT #1CM793   30/40
    SPECIAL TRUST

    IN THE INTEREST OF KEEPING OUR FILES UP TO DATE AND IN ORDER, COULD YOU PLEASE

FORWARD A COPY OF THE TRUST AGREEEMENT TO OUR OFFICE AT YOUR EARLIEST CONVENIENCE.

THANK YOU

**James H. Cohen Special Trust**
**850 Park Ave. # 7C**
**New York NY 10021**

May 16, 2003

Bernard L. Madoff Investment Securities LLC
885 Third Ave
New York NY 10022
Attention: Jodi Crupi

Re: Account 1CM793

Ladies and Gentlemen:

As per your request, I am enclosing a copy of the agreement for this trust. Please note that this is a signed original copy.

Sincerely,

James H. Cohen
Trustee

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

Enclosed you will find an Account Information Verification Form.

Please review the information for accuracy.   If any account or customer information is not accurate, please contact us at (212) 230-2424 ext. 1871

Further, under SEC regulation 17A-3, we are required to maintain certain relevant information in our file depending on account type. Please provide a copy of the following as soon as possible:

( ) Copy of Passport or Government issued photo I.D.

(X) Copy of Trust Agreement

( ) Copy of Pension/Retirement Plan

( ) Copy of Partnership Agreement

( ) Copy of Death Certificate and Letters of Testamentary

( ) Corporate Resolution

Please include your account number on all documents submitted.

6/30/03    *[handwritten note]* Jodi Crupi said to prove this notice; that she had the trust agreement and everything was in order. JC

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1X 5AD. Tel 020-7493 6222

Dear Client:

All U.S. financial institutions are required to inform their clients of their policy relating to "Privacy of Consumer Financial Information." This notice complies with this federal regulation.

## Notice of Bernard L. Madoff Investment Securities LLC Privacy Policy

**Our Commitment to Your Privacy:** Bernard L. Madoff Investment Securities LLC ("Madoff") has a long standing policy of protecting the confidentiality and security of information we collect about our customers. We will not share nonpublic information about you ("information") with third parties without your consent, except for the specific purposes described below. This notice describes the information we may gather and the circumstances under which we may share it.

**How We Collect and How We Use Information:** We limit the collection and use of information to the minimum we require to deliver superior service to you. Such service includes maintaining your accounts with us, processing transactions requested by you and administering our business.

**How We Gather Information:** We get most information directly from you when you apply for, access and use financial products and services offered by us – whether in person, or by telephone. We may verify this information from public sources. This information may relate to your finances or employment.

**How We Protect Information:** Our employees are required to protect the confidentiality of information and to comply with our established policies. They may access information only when there is an appropriate reason to do so, such as to administer our products or services. We also maintain physical, electronic and procedural safeguards to protect information which comply with all applicable laws. Employees who violate our Privacy Policy are subject to disciplinary process.

**Disclosure of Information:** We may disclose information when we believe it necessary for the conduct of our business, or where disclosure is required by law. For example, information may be disclosed for audit or research purposes, to attorneys or other professionals, or to law enforcement and regulatory agencies, for example, to help prevent fraud or money laundering; to facilitate the processing of transactions requested by you; to assist us in offering products and services to you; or for credit review and reporting purposes. Except in those specific, limited situations, without your consent **we will not make any disclosures** of information to other companies who may want to sell their products or services to you. For example, **we do not sell customer lists** and **we will not sell your name** to a catalogue company or telemarketer. It is Madoff's policy to require all third parties that are to receive any information to sign strict confidentiality agreements.

**Former Customers:** Even if you are no longer a customer, our Privacy Policy will continue to apply to you.

**To Whom This Policy Applies:** This Privacy Policy applies to products or services provided by Madoff.

**Access to and Correction of Information:** If you desire to review any file we may maintain for your personal information, please contact us.

**Further Information:** We reserve the right to change this Privacy Policy. The examples contained within this Privacy Policy are illustrations and they are not intended to be exclusive. This notice complies with a Federal law and SEC regulations regarding privacy. You may have additional rights under other foreign or domestic laws that may apply to you.

EXHIBIT 19

☑001

*Erin and Rich Hellberg*
*5 Galleine*
*Commack, New York 11725*
*(631) 543-5575*

June 24, 2005

VIA FACSIMILE
(212) 717-2932

James H. Cohen Special Trust

Re:    Madoff Acct # Z43-307793

Dear Mr. Kaufman;

Enclosed please find a copy of a bank check in the sum of $100,000.00 and a deposit slip from Fidelity in the sum of $100,000.00 depositing said sum into the above account.

Sincerely,

Erin Hellberg

Cc: Alan Garfield
Via facsimile

01/07/2009 15:17 FAX

:KENNETH R. COX   COMPANY:

ERIN HELLBERG

| | |
|---|---|
| Amount: | $100,000.00 |
| Account: | 555000 |
| Bank Number: | 50055005 |

| | |
|---|---|
| Sequence Number: | 4280508917 |
| Capture Date: | 06/24/2005 |
| Check Number: | 374869629 |

**Bank of America**

**OFFICIAL CHECK**

**374869629**

Pay **\*\*100000.00\*\***

$

**NON NEGOTIABLE**

Drawer Bank of America

Credit Copy

:KENNETH R. COX  COMPANY:

Amount:        $100,000.00        Sequence Number:  4280508918
Account:       9509119363         Capture Date:      06/24/2005
Bank Number:   51604778           Check Number:      0



# Fidelity Investments

## Private Access

# Investment Report

June 1, 2005 - June 30, 2005

## Fidelity Account™ Z43-307793¹  JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE

Private Access Account Executive: John Marshall Team 229

### Core Account — Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| Beginning | $400,047.18 | $835.09 |

### Investment Activity

| Description | Amount | Balance |
|---|---|---|
| Securities bought | $400,047.18 | |
| Securities sold | 400,000.00 | |
| Core account income | 96.68 | |
| Income | 47.18 | |
| | | |
| Subtotal of Investment Activity | | |

| Description | Amount | Balance |
|---|---|---|
| Deposits | 400,000.00 | |
| Checking activity | 400,000.00 | |
| | | |
| Subtotal of Cash Management Activity | $0.00 | |

*Cash Management Activity*

| Description | Amount | Balance |
|---|---|---|
| Ending | | $980.95 |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Transaction Amount |
|---|---|---|---|---|---|
| 6/27 | SPARTAN NY MUNI MONEY MARKET | You bought | 400,000.0000 | $1.00000 | $400,000.00 |
| 6/29 | SPARTAN NY MUNI MONEY MARKET | Dividend received | | | 47.18 |
| 6/29 | SPARTAN NY MUNI MONEY MARKET | Reinvestment | 47.1800 | 1.00000 | 47.18 |
| 6/29 | SPARTAN NY MUNI MONEY MARKET | You sold | 400,047.1800 | 1.00000 | 400,047.18 |
| 6/30 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | 96.68 |

* Prospectus sent under separate cover.

### Cash Management Activity

#### Deposits (4)

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 6/23 | DEPOSIT RECEIVED | $100,000.00 | 6/23 | DEPOSIT RECEIVED | $100,000.00 |
| 6/23 | DEPOSIT RECEIVED | 100,000.00 | 6/24 | DEPOSIT RECEIVED | 100,000.00 |
| | | | | Total | $400,000.00 |

#### Checking Activity (2)

| Check # | Date | Description | Code | Amount | Check # | Date | Description | Code | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1010 | 6/6/30 | | | $300,000.00 | 1011 | 6/30 | | | $100,000.00 |
| | | | | | | | Total | | $400,000.00 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JAMES H COHEN
SPECIAL TRUST
850 PARK AVENUE #7C
NEW YORK    NY   10021

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-CMT93-3-0 | 6/30/05 | 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 | 3 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 6/28 | 810 | | 86929 | AMERICAN EXPRESS COMPANY | 54.480 | | 44,128.80 |
| 6/28 | 1,134 | | 89515 | PEPSICO INC | 55.090 | | 62,472.06 |
| 6/28 | 2,700 | | 91205 | BANK OF AMERICA | 47.110 | | 127,197.00 |
| 6/28 | 4,968 | | 93791 | PFIZER INC | 28.930 | | 143,724.24 |
| 6/28 | 3,510 | | 95481 | CITI GROUP INC | 47.360 | | 166,233.60 |
| 6/28 | 1,674 | | 98065 | PROCTER & GAMBLE CO | 54.200 | | 90,730.80 |
| 6/28 | 1,458 | | 99757 | COMCAST CORP CL A | 31.950 | | 46,583.10 |
| 6/28 | 1,550,000 | | 72332 | U S TREASURY BILL DUE 9/22/2005 | 99.271 | 1,538,700.50 | |
| 6/28 | 1,550,000 | | 76605 | U S TREASURY BILL DUE 9/29/2005 | 99.204 | 1,537,662.00 | |
| 6/29 | | | | CHECK          9/29/2005 | CA | | |
| 6/29 | | | | CHECK | CA | | 300,000.00 |
| 6/29 | 1,540 | | 81837 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 1,540.00 | 100,000.00 |
| 6/29 | 400,000 | | 86016 | U.S. TREASURY BILL DUE 09/15/2005 | 99.346 | | 397,384.00 |
| 6/30 | 2,616 | | 86048 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | 2,616.00 | |
| 6/30 | | | | PEPSICO INC DIV 6/10/05 6/30/05 | DIV | | 294.8 |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT 20

Dec 26 2007 2:59PM    HP LASERJET 3200                                    P.1

# GARFIELD DEVELOPMENT CORP.

675 THIRD AVENUE
SUITE 1606
NEW YORK, NY 10017

TELEPHONE (212) 661-0333
FACSIMILE (212) 661-9425

If there is a problem with transmission and telephone conversation is necessary, call the above telephone number. Please be advised that the office receives telephone calls from 9:00AM until 5:00PM weekdays.

## FAX TRANSMISSION

| | | | |
|---|---|---|---|
| | | DATE: | Wednesday, December 26, 2007 |
| TO: | James Cohen | FAX NUMBER: | (212) 717-2932 |
| COMPANY: | | TELEPHONE: | (212) |
| FROM: | Alan Garfield | PAGES: | ( 5 ) |
| RE: | | | |

### MISCELLANEOUS COMMENTS AND OTHER INSTRUCTIONS:

Dear Jim:

Attached hereto please find copies of checks deposited in your account, together with a copy of the deposit receipt. The original is being mailed to you under separate cover. The money is to be split up as follows:

Alan Garfield      $50,000
Marion Garfield    $25,000
Erin Hellberg      $50,000

Please call me if there are any problems, or if you have any questions.

CONFIDENTIALITY NOTICE

The document accompanying this telecopy transmission contains information which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone.

26 2007 3:00PM    HP LASERJET 3200                                          P.4

# VOID

**CHASE** ⬡

FOR YOUR PROTECTION SAVE THIS COPY
**OFFICIAL CHECK**

**Customer Copy**

**858255756**

12/26/2007

New York

Remitter  864 W.E. CORP.

Pay To The
Order Of    JAMES H. COHEN TRUST # Z 43307793

$ *********50,000.00 ***

Drawer  JPMORGAN CHASE BANK, N.A.
**NON NEGOTIABLE**

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION
ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THIS INSTRUMENT.

---

**OFFICIAL CHECK**

**CHASE** ⬡                                              858255756    23-97
                                                                      1020
New York            Remitter  864 W.E. CORP.            Date    12/26/2007

Pay:    FIFTY THOUSAND DOLLARS AND 00 CENTS

$ *********50,000.00 ***

Pay To The
Order Of    JAMES H. COHEN TRUST # Z 43307793

Drawer  JPMORGAN CHASE BANK, N.A.

First Vice President
Issued by Integrated Payment Systems Inc., Englewood, Colorado
JPMorgan Chase Bank, N.A., Denver, Colorado

⑈700100⑈ ⑆102000979⑆ 2500858255756⑈

*Private Access*

**Fidelity Investments®**

# Investment Report
December 1, 2007 - December 31, 2007

## Fidelity Account℠ Z43-307793    JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: JAKE MARSHALL, Team 229

### Core Account - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| Beginning | | $1,252.32 |
| *Investment Activity* | | |
| Exchanges In | $25,000.00 | |
| Core account income | 55.39 | |
| Subtotal of Investment Activity | $25,055.39 | |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Transaction Amount |
|---|---|---|---|---|---|
| 12/31 | X07-452009-1 | Transferred from | | | $25,000.00 |
| 12/31 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | 55.39 |

### Cash Management Activity

| Description | Amount | Balance |
|---|---|---|
| *Cash Management Activity* | | |
| Deposits | 225,000.00 | |
| Checking activity | -125,000.00 | |
| Subtotal of Cash Management Activity | $100,000.00 | |
| Ending | | $126,307.71 |

#### Deposits ( 4 )

| Date | Description | Amount |
|---|---|---|
| 12/26 | DEPOSIT RECEIVED | $50,000.00 |
| 12/26 | DEPOSIT RECEIVED | 50,000.00 |
| 12/26 | DEPOSIT RECEIVED | 25,000.00 |
| 12/31 | WIRE TRANS FROM BANK | 100,000.00 |
| Total | | $225,000.00 |

#### Checking Activity ( 1 )

| Check # | Date | Code | Amount | Balance |
|---|---|---|---|---|
| 1021 | 12/31 | | -$125,000.00 | 126,307.71 |
| Total | | | -$125,000.00 | |

### Daily Additions and Subtractions  *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance |
|---|---|---|
| 12/26 | $125,000.00 | $126,252.32 |
| 12/31 | 55.39 | 126,307.71 |

071231 0001 135063086      04:18



**Fidelity Investments®**

*Private Access*

# Investment Report

January 1, 2008 - January 31, 2008

**Fidelity Account℠** Z43-307793    JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: JAKE MARSHALL, Team 229

**Core Account** - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| Beginning | | $126,307.71 |
| *Investment Activity* | | |
| Exchanges out | -$25,000.00 | |
| Core account income | 23.50 | |
| Subtotal of Investment Activity | -$24,976.50 | |

| Description | Amount | Balance |
|---|---|---|
| *Cash Management Activity* | | |
| Checking activity | -100,000.00 | |
| Subtotal of Cash Management Activity | -$100,000.00 | |
| Ending | | $1,331.21 |

## Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Transaction Amount |
|---|---|---|---|---|---|
| 1/02 | X07-452009-1 FIDELITY TAX-FREE MONEY MARKET | Transferred to | | | -$25,000.00 |
| 1/31 | | Dividend received | | | 23.50 |

## Cash Management Activity

**Checking Activity ( 1 )**

| Check # | Date | Code | Amount | Balance | Code |
|---|---|---|---|---|---|
| 1022 | 1/02 | | -$125,000.00 | $1,307.71 | |
| | | Total | -$100,000.00 | -$100,000.00 | |

**Daily Additions and Subtractions**   *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance | Date | Amount | Balance |
|---|---|---|---|---|---|
| 1/02 | -$100,000.00 | $1,307.71 | 1/31 | 23.50 | 1,331.21 |

## Additional Information About Your Investment Report

A copy of your Investment Report is available to:
ALAN D GARFIELD            BARRY E KAUFMAN            MORRIE K ABRAMSON

0001                0801311 0001 235122925        04 18  000

MadF **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK          NY    10021

**PERIOD ENDING** 12/31/07
**PAGE** 3
**YOUR ACCOUNT NUMBER** 1-CM793-3-0
**YOUR TAX PAYER IDENTIFICATION NUMBER** ******0338

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-------------------------|-------------------------|-----|-------------|-----------------|--------------------------------|----------------------------------|
| 12/21 | | | | AMERICAN INTL GROUP INC | DIV | | 501.6 |
| 12/21 | 5,010 | | 52460 | DIV 12/07/07 12/21/07 FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | 5,010.00 | |
| 12/28 | | | | BANK OF AMERICA | CA | | 125,000.0 |
| 12/28 | | | | DIV 12/07/07 12/28/07 | DIV | | 2,772.4 |
| 12/28 | 125,000 | | 56294 | U S TREASURY BILL DUE 4/10/2008 | 99.113 | 123,891.25 | |
| 12/28 | 1,108 | | 56343 | FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | 1,108.00 | |
| 12/31 | | | | FIDELITY SPARTAN | CA | | 100,0000 |
| 12/31 | | | | U S TREASURY MONEY MARKET DIV 12/31/07 | DIV | | 238.4 |
| 12/31 | | 62,270 | 57569 | TRANS TO 40 ACCT FIDELITY SPARTAN | 1 | 78,860.00 | 62,270.0 |
| 12/31 | | 5,400,000 | 64439 | U S TREASURY MONEY MARKET U S TREASURY BILL DUE 4/10/2008 | 99.133 | | 5,353,182.0 |
| 12/31 | 5,550,000 | | 71798 | U S TREASURY BILL DUE 04/03/2008 4/03/2008 | 99.149 | 5,562,769.50 | |
| | | | | **CONTINUED ON PAGE 4** | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT 20A

Dec 26 2007 2:59PM    HP LASERJET 3200                              P.1

# GARFIELD DEVELOPMENT CORP.

**675 THIRD AVENUE**
**SUITE 1606**
**NEW YORK, NY 10017**

TELEPHONE (212) 661-0333
FACSIMILE (212) 661-9425

## FAX TRANSMISSION

| | | |
|---|---|---|
| | | **DATE:** Wednesday, December 26, 2007 |
| **TO:** | James Cohen | **FAX NUMBER:** (212) 717-2932 |
| **COMPANY:** | | **TELEPHONE:** (212) |
| **FROM:** | Alan Garfield | **PAGES:** ( 5 ) |
| **RE:** | | |

### MISCELLANEOUS COMMENTS AND OTHER INSTRUCTIONS:

Dear Jim:

Attached hereto please find copies of checks deposited in your account, together with a copy of the deposit receipt. The original is being mailed to you under separate cover. The money is to be split up as follows:

Alan Garfield    $50,000
Marion Garfield    $25,000 ✓
Erin Hellberg    $50,000

Please call me if there are any problems, or if you have any questions.

CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain information which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone.

Alan Garfield ( Garfield Development
                Corp check for Marion
Garfield/# 858255-755 — Chase
        official check and Marion
Garfields' reimbursement for
amount of $25,000⁰⁰   12/26/07

Dec 26 2007 3:00PM    HP LASERJET 3200

P.5

# VOID

## CHASE

FOR YOUR PROTECTION SAVE THIS COPY
**OFFICIAL CHECK**

**Customer Copy**

858255755

New York

12/26/2007

Remitter  GARFIELD DEVOLOPMENT CORP.

Pay To The
Order Of    JAMES COHEN SPECIAL TRUST Z 43307793

$ *********25,000.00 ***

Drawer:  JPMORGAN CHASE BANK, N.A.

**NON NEGOTIABLE**

M G

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION
ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.

499156243840 Rev.1 3/05 Ie C206-1420:8/



## CHASE    OFFICIAL CHECK    858255755    23-97
1020

New York    Remitter  GARFIELD DEVOLOPMENT CORP.    Date  12/26/2007

Pay:    TWENTY FIVE THOUSAND DOLLARS AND 00 CENTS

Pay To The
Order Of    JAMES COHEN SPECIAL TRUST Z 43307793

$ *********25,000.00 ***

Drawer:  JPMORGAN CHASE BANK, N.A.

First Vice President
Issued by Integrated Payment Systems Inc., Englewood, Colorado
JPMorgan Chase Bank, N.A., Denver, Colorado

⑆700100⑆ ⑈102000979⑇ 2500858255755⑆

Jan 08 2009 3:03PM    Garfield Development Corp    212-661-9425    p.14

## CHASE 

GDC- New Account

December 01, 2007 through December 31, 2007
Account Number: 000000733699441

## CHECKS PAID (continued)

| CHECK NUMBER | DATE PAID | AMOUNT | CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|---|---|---|
| 1501 | 12/06 | 593.01 | 1515 | 12/26 | 402.68 |
| 1502 | 12/11 | 1,500.00 | 1516 | 12/19 | 414.80 |
| 1503 | 12/11 | 442.00 | 1517 | 12/26 | 282.70 |
| 1505 * | 12/13 | 369.50 | 1518 | 12/19 | 353.22 |
| 1506 | 12/11 | 26.37 | 1519 | 12/20 | 1,000.00 |
| 1507 | 12/11 | 347.21 | 1520 | 12/31 | 169.39 |
| 1511 * | 12/27 | 20.40 | 1521 | 12/31 | 168.81 |
| 1512 | 12/21 | 9.66 | 1522 | 12/31 | 103.15 |
| 1513 | 12/24 | 184.14 | 1535 * | 12/28 | 282.70 |
| 1514 | 12/24 | 988.87 | | | |

Total Checks Paid    $32,272.17

Checks may not appear on your bank statement because they have not yet cleared or appeared on a previous statement. Checks that cleared as an electronic withdrawal will be listed in the Electronic Withdrawals section of the statement. All checks included in the Checks Paid section are viewable as images on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 12/07 | Irs | Usataxpymt 270774100207375 CCD ID: 3387702000 | $25,000.00 |
| 12/07 | Irs | Usataxpymt 270774100124041 CCD ID: 3387702000 | 10,600.00 |
| 12/07 | Irs | Usataxpymt 270774100851758 CCD ID: 3387702000 | 34.74 |

Total Electronic Withdrawals    $35,634.74

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/26 | Withdrawal | $25,000.00 |

Total Other Withdrawals, Fees & Charges    $25,000.00

Add. withdrawal for Marion

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 12/03 | $81,543.57 | 12/19 | 72,173.66 |
| 12/04 | 114,053.46 | 12/20 | 71,173.66 |
| 12/05 | 113,062.30 | 12/21 | 71,163.98 |
| 12/06 | 112,469.29 | 12/24 | 69,990.97 |
| 12/07 | 76,834.55 | 12/26 | 44,305.59 |
| 12/11 | 74,518.97 | 12/27 | 43,687.86 |
| 12/13 | 74,149.47 | 12/28 | 68,405.16 |
| 12/17 | 73,552.14 | 12/31 | 67,983.81 |
| 12/18 | 73,263.14 | | |

2009-01-07 15:27                                    >>        1212661942b    P 6/13

## CHASE ⬢

December 01, 2007 through December 31, 2007
Primary Account: 000907282559365

### TRANSACTION DETAIL (continued)



| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|------|--------|---------|
| 12/10 | Check | # 1887 | -500.00 | 90,332.01 |
| 12/10 | Check | # 1880 | -187.62 | 90,144.39 |
| 12/10 | Check | # 1905 | -115.24 | 90,029.15 |
| 12/10 | Check | # 1875 | -71.63 | 89,957.52 |
| 12/10 | Check | # 1881 | -36.19 | 89,921.33 |
| 12/10 | Check | # 1919 | -30.81 | 89,890.52 |
| 12/11 | Check | # 1912 | -66.42 | 89,824.10 |
| 12/11 | Check | # 1914 | -18.45 | 89,805.65 |
| 12/12 | Check | # 1576 | -15.00 | 89,790.65 |
| 12/13 | Check | # 1810 | -31.82 | 89,758.83 |
| 12/14 | Check | # 1911 | -272.75 | 88,466.08 |
| 12/17 | Check | # 1879 | -16.00 | 88,470.08 |
| 12/18 | Deposit | 1034 | 1,983.60 | 91,453.68 |
| 12/20 | Deposit | 1035 | 35,000.00 | 126,453.68 |
| 12/20 | Deposit | 1036 | 158.36 | 126,612.04 |
| 12/21 | Check | # 1975 | -101.86 | 126,510.18 |
| 12/24 | Check | 9 1665 | -22,500.00 | 104,010.18 |
| 12/24 | Check | # 1964 | -582.63 | 103,427.55 |
| 12/24 | Check | # 1972 | -391.03 | 103,036.52 |
| 12/24 | Check | # 1968 | -51.36 | 102,845.16 |
| 12/24 | Check | # 1941 | -50.00 | 102,895.16 |
| 12/26 | Check | # 1966 | -90,000.00 | 12,895.16 |
| 12/26 | Check | # 1973 | -983.82 | 11,911.34 |
| 12/26 | Check | # 1915 | -104.52 | 11,806.82 |
| 12/26 | Check | # 1920 | -75.00 | 11,731.82 |
| 12/26 | Check | # 1918 | -68.83 | 11,682.99 |
| 12/26 | Check | # 1917 | -53.02 | 11,609.97 |
| 12/26 | Check | # 1922 | -60.00 | 11,558.97 |
| 12/26 | Check | # 1921 | -50.00 | 11,508.97 |
| 12/26 | Check | # 1951 | -35.00 | 11,474.97 |
| 12/26 | Check | # 1952 | -15.00 | 11,459.97 |
| 12/27 | Fed Wire Credit Via: Mellon Bank N.A.-Due From Blk M/043000261 B/O: Erin Hellberg Commack NY 11725-1946 Ref: Chase Nyc/Ctr/Bnf=Alan D Garfield None New York, NY 10017/Ac=000009072625 Rfb=O/B Mellon Bank Imad: 1227D3Qc2b0D002992 Trn: 0392809361FI | | 50,000.00 | 61,459.97 |
| ✳ 12/27 | Funds Trans From Sav | | 25,000.00 | 86,459.97 |
| 12/27 | Check | # 1918 | -303.77 | 86,156.20 |
| 12/27 | Check | # 1960 | -50.00 | 86,106.20 |
| 12/27 | Check | # 1940 | -50.00 | 86,056.20 |
| 12/27 | Check | # 1935 | -50.00 | 86,006.20 |
| 12/27 | Check | # 1947 | -35.00 | 85,971.20 |
| 12/27 | Check | # 1928 | -25.00 | 85,946.20 |
| 12/27 | Check | # 1945 | -20.00 | 85,926.20 |
| 12/27 | Check | # 1957 | -15.00 | 85,911.20 |
| 12/28 | Check | # 2197 | -50,000.00 | 35,911.20 |
| 12/28 | Check | # 2188 | -25,000.00 | 10,911.20 |
| 12/28 | Check | # 1967 | -2,000.00 | 8,911.20 |

Page 5 of 8

## CHASE ⬡

JPMorgan Chase Bank, N.A.
Northeast Market
P O Box 260180
Baton Rouge, LA 70826-0180

ԱdllԱlldlԺldhlllԱllԱlllԱllllll
00077857 BDA 622 LA 36297-YYNT 1 000000000 16 0000
MARION TALLERING
150 E 59TH ST
APT 20P
NEW YORK NY 10021-5704

November 29, 2007 through December 27, 2007
Primary Account 000000752389387

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| WebSite: | www.Chase.com |
| Service Center: | 1-800-935-9935 |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |



**IMPORTANT INFORMATION ABOUT YOUR ACCOUNT(S)**
EFFECTIVE 2/1/08, THERE WILL BE CHANGES TO FEES ASSOCIATED WITH
YOUR ACCOUNT(S). THE DETAILS ARE ON THE LAST PAGE OF YOUR
STATEMENT.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| | ENDING BALANCE PRIOR PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|
| **Checking** | | |
| Chase Premier Checking 000000752389387 | $1,775.70 | $2,598.87 |
| Total | $1,775.70 | $2,598.87 |
| **Savings** | | |
| Chase Premier Savings 000002738896022 | 50,056.90 | 25,160.29 |
| Total | $50,056.90 | $25,160.29 |
| | | |
| **TOTAL ASSETS** | $51,832.60 | $27,754.16 |

### CREDIT CARDS, LOANS & LINES OF CREDIT

| | BALANCE |
|---|---|
| **Credit Cards** | |
| Visa ************2722 | $0.00 |
| Total | $0.00 |
| | |
| **TOTAL CREDIT CARDS, LOANS & LINES OF CREDIT** | $0.00 |

All Summary Balances shown are as of December 27, 2007 unless otherwise stated.   For details of your retirement
accounts, credit accounts or securities accounts, you will receive separate statements.   Balance summary information
for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its
completeness or accuracy.

Page 1 of 6

# CHASE ◻

November 28, 2007 through December 27, 2007
Primary Account: 000000702889887

## CHASE PREMIER SAVINGS

MARION TALLERING                          Account Number: 000002738890022

### SAVINGS SUMMARY



|  | AMOUNT |
|---|---|
| Beginning Balance | $50,936.90 |
| Deposits and Additions | 103.39 |
| Electronic Withdrawals | -25,000.00 |
| Ending Balance | $25,160.29 |
| Annual Percentage Yield Earned This Period | 2.89% |
| Interest Paid This Period | $103.39 |
| Interest Paid Year-to-Date | $739.05 |

You earned a preferred interest rate on your Chase Premier Savings account during this statement period because you had a qualifying Chase Premier Checking account.

The monthly service fee for this account was waived as an added feature of Chase Premier Checking account.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
|  | Beginning Balance |  | $50,056.90 |
| 12/27 | Funds Trans To Chk | -25,000.00 | 25,056.90 |
| 12/27 | Interest Payment | 103.39 | 25,160.29 |
|  | Ending Balance |  | $25,160.29 |

https://instantimage.bankone.net/Star/action/Print.do?singleItem=checkbox DDStmt_1_200...  1/7/2009

**Fidelity®** INVESTMENTS

*Private Access*

# Investment Report

December 1, 2007 - December 31, 2007

## Fidelity Account℠ Z43-307793    JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: JAKE MARSHALL, Team 229

### Core Account - *Fidelity Tax-Free Money Market*

| Description | Amount | Balance |
|---|---|---|
| Beginning | | $1,252.32 |
| Investment Activity | | |
| Exchanges In | $25,000.00 | |
| Core account Income | 55.39 | |
| Subtotal of Investment Activity | $25,055.39 | |

### Investment Activity

| Settlement Date | Security | Amount | Description |
|---|---|---|---|
| 12/31 | X07-462009-1 FIDELITY TAX-FREE MONEY MARKET | | Transferred from |
| 12/31 | | 55.39 | Dividend received |

### Cash Management Activity

**Deposits ( 4 )**

| Date | Description | Amount | Date | Description | Code |
|---|---|---|---|---|---|
| 12/26 | DEPOSIT RECEIVED | $50,000.00 | 12/26 | DEPOSIT RECEIVED | |
| 12/26 | DEPOSIT RECEIVED | 50,000.00 | 12/31 | WIRE TRANS FROM BANK | |

**Checking Activity ( 1 )**

| Check # | Date | Code | Amount | Balance | Date | Code |
|---|---|---|---|---|---|---|
| 1021 | 12/31 | | -$125,000.00 | $126,252.32 | | |
| | Total | | -$125,000.00 | | | |

### Cash Management Activity

| Description | Amount | Transaction Amount |
|---|---|---|
| Cash Management Activity | | |
| Deposits | 225,000.00 | $25,000.00 |
| Checking activity | -125,000.00 | 55.39 |
| Subtotal of Cash Management Activity | $100,000.00 | |
| Ending | | $126,307.71 |

| Quantity | Price per Unit | Amount |
|---|---|---|
| | | 225,000.00 |
| | | -125,000.00 |
| | | $100,000.00 |

| Date | Description | Amount |
|---|---|---|
| Total | | $225,000.00 |

| Check # | Date | Code | Amount |
|---|---|---|---|
| | | | |

| Date | | Amount | Balance |
|---|---|---|---|
| | | | |

**Daily Additions and Subtractions** *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance | Date | Amount | Balance |
|---|---|---|---|---|---|
| 12/26 | $125,000.00 | $126,252.32 | 12/31 | 55.39 | 126,307.71 |

071231 0001 135063086    04 18

Page 2 c



**Fidelity Investments®**

*Private Access*

# Investment Report

January 1, 2008 - January 31, 2008

## Fidelity Account℠ Z43-307793 · JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: JAKE MARSHALL, Team 229

### Core Account - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| Beginning | | $126,307.71 |
| **Investment Activity** | | |
| Exchanges out | -$25,000.00 | |
| Core account income | 23.50 | |
| Subtotal of Investment Activity | -$24,976.50 | |

| Description | Amount | Balance |
|---|---|---|
| **Cash Management Activity** | | |
| Checking activity | -100,000.00 | |
| Subtotal of Cash Management Activity | -$100,000.00 | |
| Ending | | $1,331.21 |

### Investment Activity

| Settlement Date | Security | Amount | Description | Check # | Date | Code | Quantity | Price per Unit | Transaction Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/02 | X07-452009-1 FIDELITY TAX-FREE MONEY MARKET | -$25,000.00 | Transferred to | | | | | | -$25,000.00 | |
| 1/31 | | 23.50 | Dividend received | | | | | | 23.50 | |

### Cash Management Activity

**Checking Activity (1)**

| Check # | Date | Code | Amount | Balance | Description | Date | Code | Amount | Date | Check # | Date | Code | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1022 | 1/02 | | -$100,000.00 | $1,307.71 | **Total** | | | -$100,000.00 | 1/31 | | | | 23.50 | 1,331.21 |

*Daily Additions and Subtractions* Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)

## Additional Information About Your Investment Report

A copy of your Investment Report is available to:
ALAN D GARFIELD
BARRY E KAUFMAN
MORRIE K ABRAMSON

0001      080131 0001 235122925      04 18  000

**MADF BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK          NY    10021

PERIOD ENDING: **12/31/07**
PAGE: **3**

YOUR ACCOUNT NUMBER: **1-CM793-3-0**
YOUR TAX PAYER IDENTIFICATION NUMBER: **********0338**

| DATE | BOUGHT (RECEIVED OR LONG) | SOLD (DELIVERED OR SHORT) | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 12/21 | | | | AMERICAN INTL GROUP INC / DIV 12/07/07 12/21/07 | DIV | | 501.6 |
| 12/21 | 5,010 | | 52460 | FIDELITY SPARTAN / U S TREASURY MONEY MARKET / CHECK | 1 | 5,010.00 | |
| 12/28 | | | | BANK OF AMERICA / CHECK | CA | | 125,000.00 |
| 12/28 | 125,000 | | | DIV 12/07/07 12/28/07 | DIV | | 2,772.44 |
| 12/28 | | | 56294 | U S TREASURY BILL / DUE 4/10/2008 | 99.113 | 123,891.25 | |
| 12/28 | 1,108 | | 56343 | FIDELITY SPARTAN / U S TREASURY MONEY MARKET / CHECK | 1 | 1,108.00 | |
| 12/31 | | | | FIDELITY SPARTAN / U S TREASURY MONEY MARKET / CHECK | CA | | 109,000.00 |
| 12/31 | | | | DIV 12/31/07 | DIV | | 238.4 |
| 12/31 | | 62,270 | 57569 | TRANS TO 40 ACCT | 1 JRNL | 78,860.00 | 62,270.00 |
| 12/31 | | 5,400,000 | 64439 | FIDELITY SPARTAN / U S TREASURY MONEY MARKET / U S TREASURY BILL / DUE 4/10/2008 | 99.133 | | 5,353,182.0 |
| 12/31 | 5,250,000 | | 71798 | U S TREASURY BILL / DUE 04/03/2008 / 4/03/2008 | 99.149 | 5,302,769.59 | |

CONTINUED ON PAGE 4

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT 20B

Dec 26 2007 2:59PM    HP LASERJET 3200                                    P.1

# GARFIELD DEVELOPMENT CORP.

**675 THIRD AVENUE**
**SUITE 1606**
**NEW YORK, NY 10017**

TELEPHONE (212) 661-0333
FACSIMILE (212) 661-9425

If there is a problem with transmission and telephone conversation is necessary, call the above telephone number. Please be advised that the office receives telephone calls from 9:00AM until 5:00 PM weekdays.

## FAX TRANSMISSION

| | |
|---|---|
| | **DATE:** Wednesday, December 26, 2007 |
| **TO:** James Cohen | **FAX NUMBER:** (212) 717-2932 |
| **COMPANY:** | **TELEPHONE:** (212) |
| **FROM:** Alan Garfield | **PAGES:** ( 5 ) |
| **RE:** | |

### MISCELLANEOUS COMMENTS AND OTHER INSTRUCTIONS:

Dear Jim:

   Attached hereto please find copies of checks deposited in your account, together with a copyo f the deposit receipt. The original is being mailed to you under separate cover. The money is to be split up as follows:

   Alan Garfield    $50,000
   Marion Garfield       $25,000
   Erin Hellberg    $50,000 ✓

   Please call me if there are any problems, or if you have any questions.

**CONFIDENTIALITY NOTICE**

The documents accompanying this telecopy transmission contain information which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone.

Alan Garfield advanced $50,000$^{00}$ for
Erin Hellberg on 12/26/07  # 858255751
from West End Ave Equities LLC — & Erin
Hellberg's reimbursement

Dec 26 2007 2:59PM    HP LASERJET 3200                                    p.3

# VOID

**CHASE** ⬤

FOR YOUR PROTECTION SAVE THIS COPY
**OFFICIAL CHECK**

Customer Copy

**858255757**

12/26/2007

New York

Remitter  WESTEND AVE. EQUITIES LLC

$ *********50,000.00 ***

Pay To The
Order Of    JAMES H. COHEN TRUST # Z 43307793

Drawer: JPMORGAN CHASE BANK, N.A.

**NON NEGOTIABLE**

E MH

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION
ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.

**CHASE** ⬤                    OFFICIAL CHECK          **858255757**   23-97
                                                                        1020

New York                                                Date   12/26/2007

Remitter  WESTEND AVE. EQUITIES LLC

Pay:    FIFTY THOUSAND DOLLARS AND 00 CENTS

Pay To The
Order Of    JAMES H. COHEN TRUST # Z 43307793              $ *********50,000.00 ***

Drawer: JPMORGAN CHASE BANK, N.A.

Stephen P. Hughes

First Vice President
Issued by Integrated Payment Systems Inc., Englewood, Colorado
JPMorgan Chase Bank, N.A., Denver, Colorado

⑈700100⑈ ⑆102000979⑆ 2500858255757 9⑈

2009-01-07 15:27                              >>        1212661942⊃   P 6/13
                                                        Page 5 of 8

**CHASE ◉**

December 01, 2007 through December 31, 2007
Primary Account: 000907262559365

## TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|---|--------|---------|
| 12/10 | Check | # 1897 | -500.00 | 90,332.01 |
| 12/10 | Check | # 1880 | -187.62 | 90,144.39 |
| 12/10 | Check | # 1905 | -115.24 | 90,029.15 |
| 12/10 | Check | # 1875 | -71.63 | 89,957.52 |
| 12/10 | Check | # 1881 | -96.19 | 89,921.33 |
| 12/10 | Check | # 1919 | -30.81 | 89,890.52 |
| 12/11 | Check | # 1912 | -66.42 | 89,824.10 |
| 12/11 | Check | # 1914 | -18.45 | 89,805.65 |
| 12/12 | Check | # 1876 | -15.00 | 89,790.65 |
| 12/13 | Check | # 1810 | -31.82 | 89,758.83 |
| 12/14 | Check | # 1911 | -272.75 | 89,486.08 |
| 12/17 | Check | # 1879 | -16.00 | 89,470.08 |
| 12/18 | Deposit | 1034 | 1,963.60 | 91,453.68 |
| 12/20 | Deposit | 1035 | 35,000.00 | 126,453.68 |
| 12/20 | Deposit | 1036 | 158.36 | 126,612.04 |
| 12/21 | Check | # 1975 | -101.86 | 126,510.18 |
| 12/24 | Check | ⊅ 1865 | -22,500.00 | 104,010.18 |
| 12/24 | Check | # 1954 | -582.63 | 103,427.55 |
| 12/24 | Check | # 1972 | -391.03 | 103,036.52 |
| 12/24 | Check | # 1968 | -91.36 | 102,945.16 |
| 12/24 | Check | # 1941 | -50.00 | 102,895.16 |
| 12/26 | Check | # 1966 | -90,000.00 | 12,895.16 |
| 12/26 | Check | # 1973 | -983.82 | 11,911.34 |
| 12/26 | Check | # 1915 | -104.52 | 11,806.82 |
| 12/26 | Check | # 1920 | -75.00 | 11,731.82 |
| 12/26 | Check | # 1916 | -68.83 | 11,662.99 |
| 12/26 | Check | # 1917 | -53.02 | 11,609.97 |
| 12/26 | Check | # 1922 | -50.00 | 11,559.97 |
| 12/26 | Check | # 1921 | -50.00 | 11,509.97 |
| 12/26 | Check | # 1951 | -35.00 | 11,474.97 |
| 12/26 | Check | # 1952 | -15.00 | 11,459.97 |
| 12/27 | Fed Wire Credit Via: Mellon Bank N.A.-Due From Bk M/043000291 B/O: Erin Hellberg Commack NY 11725-1948 Ref: Chase Nyc/Ctr/Bnf=Alan D Garfield None New York, NY 10017/Ac-000009072625 Rfb=O/B Mellon Bank Imad: 1227O3Oc120C002992 Trn: 0392609361Ff | | 50,000.00 | 61,459.97 |
| 12/27 | Funds Trans From Sav | | 25,000.00 | 86,459.97 |
| 12/27 | Check | # 1918 | -303.77 | 86,156.20 |
| 12/27 | Check | # 1960 | -50.00 | 86,106.20 |
| 12/27 | Check | # 1940 | -50.00 | 86,056.20 |
| 12/27 | Check | # 1935 | -50.00 | 86,006.20 |
| 12/27 | Check | # 1947 | -35.00 | 85,971.20 |
| 12/27 | Check | # 1926 | -25.00 | 85,946.20 |
| 12/27 | Check | # 1945 | -20.00 | 85,926.20 |
| 12/27 | Check | # 1957 | -15.00 | 85,911.20 |
| 12/28 | Check | # 2197 | -50,000.00 | 35,911.20 |
| 12/28 | Check | # 2198 | -25,000.00 | 10,911.20 |
| 12/28 | Check | # 1967 | -2,000.00 | 8,911.20 |



Page 5 of 8

Jan 08 2009 3:03PM    Garfield Development Corp    212-661-9425    P.13



864 W.E. Corp.

December 01, 2007 through December 31, 2007
Primary Account: 000907219844855

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/26 | Withdrawal | $50,000.00 |
| **Total Other Withdrawals, Fees & Charges** | | **$50,000.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 12/03 | $67,836.66 |
| 12/04 | 73,973.66 |
| 12/11 | 77,186.96 |
| 12/18 | 81,311.96 |
| 12/21 | 79,790.18 |
| 12/24 | 79,732.18 |
| 12/26 | 29,732.18 |
| 12/27 | 28,767.18 |
| 12/28 | 77,686.64 |
| 12/31 | 81,861.64 |

## SERVICE CHARGE SUMMARY

| | | |
|---|---|---|
| Maintenance Fees | $0.00 | Waived by average checking balance |
| Transaction Fees | $5.96 | |
| Other Service Charges | $0.00 | |
| Total Service Charges | $5.96 | |
| Less Earnings Credit | -$62.02 | |
| Net Service Charges | $0.00 | |

## SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/UNIT | TOTAL |
|-------------|--------|---------|---------|------------|-------|
| Account Maintenance | 0 | | | $20.00 | $0.00 |
| Checks Paid / Debits | 10 | 0 | 10 | $0.20 | $2.00 |
| Deposits / Credits | 6 | 0 | 6 | $0.30 | $1.80 |
| Deposited Items | 12 | 0 | 12 | $0.18 | $2.16 |
| Total Service Charges | | | | | $5.96 |
| Less Earnings Credit | $79,032 | | | 0.0008463 | -$62.02 |
| Net Service Charges | | | | | $0.00 |

* The monthly maintenance fees have been waived because you maintained a combined average collected balance of $40,000 in your checking accounts.

Jan 08 2009 3:07PM   Garfield Development Corp   212-661-9425          p.1

17833 (7)

**JPMorganChase**

JPMorgan Chase Bank, N.A.
Funds Transfer
P.O. Box 31339
Tampa, FL 33631-3339

Date 07/12/27
Our Ref. (TRN) NO. 0392809361FF
Please mention our Reference No. (TRN) in any correspondenc
Originator's Date 07/12/27
Related Ref. No. O/B MELLON BANK

**ORIGINAL
ADVICE OF CREDIT**

WE CREDIT YOUR ACCOUNT NO 907262559365
FOR PAYMENT INDICATED.    SAME DAY FUNDS

$50,000.00**

RECEIVED FROM
/I260192412

ERIN HELLBERG

COMMACK NY 11725-1946

ORDERING BANK
MELLON BANK N.A.-DUE FROM BK MGMT
CLIENT SERVICE CENTER, SUITE
154-0320 500 ROSS STREET
PITTSBURGH PA 15262-

ALAN D GARFIELD NONE
675 THIRD AVE @ 1606
NEW YORK, NY 10017

IMAD:1227 D3QCI20C 002992
OMAD:1227 B1QGC06R 003928

Authorized Signature

*Private Access*

# Investment Report

December 1, 2007 - December 31, 2007

## Fidelity Account℠ Z43-307793   JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: JAKE MARSHALL, Team 229

### Core Account - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| **Beginning** | | $1,252.32 |
| *Investment Activity* | | |
| Exchanges In | $25,000.00 | |
| Core account income | 55.39 | |
| Subtotal of Investment Activity | $25,055.39 | |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Amount |
|---|---|---|---|---|---|
| 12/31 | X07-462009-1 | Transferred from | | | $25,000.00 |
| 12/31 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | 55.39 |

| Description | Amount | Balance |
|---|---|---|
| *Cash Management Activity* | | |
| Deposits | 225,000.00 | |
| Checking activity | -125,000.00 | |
| Subtotal of Cash Management Activity | $100,000.00 | |
| **Ending** | | $126,307.71 |

### Cash Management Activity

**Deposits ( 4 )**

| Date | Description | Amount | Balance |
|---|---|---|---|
| 12/26 | DEPOSIT RECEIVED | $50,000.00 | $126,252.32 |
| 12/26 | DEPOSIT RECEIVED | 50,000.00 | |
| 12/26 | DEPOSIT RECEIVED | 25,000.00 | |
| 12/31 | WIRE TRANS FROM BANK | 100,000.00 | |
| | **Total** | $225,000.00 | |

**Checking Activity ( 1 )**

| Check # | Date | Code | Amount | Balance |
|---|---|---|---|---|
| 1021 | 12/31 | | -$125,000.00 | |
| | **Total** | | -$125,000.00 | |

**Daily Additions and Subtractions** *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Amount | Balance |
|---|---|---|
| 12/26 | $125,000.00 | |
| 12/31 | 55.39 | 126,307.71 |

071231 0001 135063086     04 18

Page 2 c

**Fidelity Investments®**

*Private Access*

# Investment Report

January 1, 2008 - January 31, 2008

## Fidelity Account℠ Z43-307793 · JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE

Private Access Account Executive: JAKE MARSHALL, Team 229

### Core Account - Fidelity Tax-Free Money Market

| Description | Amount | Balance |
|---|---|---|
| **Beginning** | | $126,307.71 |
| Investment Activity | | |
| Exchanges out | -$25,000.00 | |
| Core account income | 23.50 | |
| Subtotal of Investment Activity | -$24,976.50 | |

| Description | Amount | Balance |
|---|---|---|
| Cash Management Activity | | |
| Checking activity | -100,000.00 | |
| Subtotal of Cash Management Activity | -$100,000.00 | |
| **Ending** | | $1,331.21 |

### Investment Activity

| Settlement Date | Security | Amount | Description | Check # | Date | Code | Quantity | Price per Unit | Transaction Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/02 | X07-462009-1 FIDELITY TAX-FREE MONEY MARKET | -$25,000.00 | Transferred to | | | | | | -$25,000.00 | |
| 1/31 | | | Dividend received | | | | | | 23.50 | |

### Cash Management Activity

**Checking Activity (1)**

| Check # | Date | Code | Amount | Balance | Code | | | | | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1022 | 1/02 | | -$100,000.00 | | | | | | | | |
| | | **Total** | | $1,307.71 | | | | | | -$100,000.00 | 1,331.21 |

| Date | Amount | Balance | | | Date | | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 1/31 | 23.50 | $1,307.71 | | | 1/02 | | | 1,331.21 |

*Daily Additions and Subtractions* Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)

## Additional Information About Your Investment Report

A copy of your investment Report is available to:

ALAN D GARFIELD    BARRY E KAUFMAN    MORRIE K ABRAMSON

0001    080131 0001 235122925    04 18 000

Page 2 of 3

**MADF** | **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PERIOD ENDING: 12/31/07
PAGE: 3

YOUR TAX PAYER IDENTIFICATION NUMBER: ********0338

YOUR ACCOUNT NUMBER: 1-CM793-3-0

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK          NY    10021

| DATE | BOUGHT (RECEIVED OR LONG) | SOLD (DELIVERED OR SHORT) | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|---------|---------|-----|-------------|-----------------|--------------------------------|--------------------------------|
| 12/21 | | | | AMERICAN INTL GROUP INC | DIV | | 501.6 |
| 12/21 | 5,010 | | 52460 | DIV 12/07/07 12/21/07 FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | 5,010.00 | |
| 12/28 | | | | BANK OF AMERICA | CA DIV | | 125,000.00 |
| 12/28 | | | | DIV 12/07/07 12/28/07 | | | 2,772. |
| 12/28 | 125,000 | | 56294 | U S TREASURY BILL DUE 4/10/2008 | 99.113 | 123,891.25 | |
| 12/28 | | | | 4/10/2008 | | | |
| 12/28 | 1,108 | | 56343 | FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | 1,108.00 | |
| 12/31 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | CA DIV | | 100,000.00 |
| 12/31 | | | | DIV 12/31/07 | | | 238. |
| 12/31 | | 62,270 | 57569 | TRANS TD 40 ACCT FIDELITY SPARTAN | 1 | 78,860.00 | 62,270.00 |
| 12/31 | | 5,400,000 | 64439 | U S TREASURY MONEY MARKET U S TREASURY BILL DUE 4/10/2008 | 99.133 | | 5,353,182.0 |
| 12/31 | | | | 4/10/2008 | | | |
| 12/31 | 5,559,000 | | 71798 | U S TREASURY BILL DUE 04/03/2008 | 99.149 | 5,502,769.50 | |
| 12/31 | | | | 4/03/2008 | | | |
| | | | | CONTINUED ON PAGE 4 | | | |

**PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES**

02/23/2009 07:53 FAX                                                                                    ☑002

**Erin Hellberg**
**5 Galleine**
**Commack, NY  11725**

Linda Schoenheimer
Cohmad Securities
885 Third Avenue
New York, NY 10022

December 27, 2007

Dear Linda,

Please wire $50,000.00, (Fifty Thousand Dollars), from my account number 126-01924
to the following account:

JP Morgan Chase
ABA# 02100021
Acc Name; Alan Garfield
Acc # 907262559365

Thank you,

*Erin Hellberg*

# COHMAD Securities Corporation

OFFICE SERVICING YOUR ACCOUNT
885 Third Avenue
New York, NY 10022
(212) 230-2480

PRIVILEGED   ACCESS   GOLD   ACCOUNT

**CLEARANCE AGENT**

Bear, Stearns Securities Corp.
One Metrotech Center North
Brooklyn, New York 11201-3859
(212) 272-1000

ERIN HELLBERG

| | |
|---|---|
| STATEMENT PERIOD | December 1, 2007 |
| THROUGH | December 31, 2007 |
| ACCOUNT NUMBER | 125-01824 023 |
| TAXPAYER NUMBER | On File |
| LAST STATEMENT | November 30, 2007 |

6 of 12

## Transaction Detail

### DEPOSITS AND WITHDRAWALS

| DATE MM/DAY | TRANSACTION | DESCRIPTION | SYMBOL/CUSIP | DEBIT AMOUNT | CREDIT AMOUNT |
|---|---|---|---|---|---|
| 12/12/07 | CHECK | PRIVILEGED ACCESS<br>CHECK NUMBER 119 PAID | | 1,000.00 | |
| 12/13/07 | FND WIRED | PRIVILEGED ACCESS | | 4,023.67 | |
| | | AMERICAN EXPRESS CHECK PYMT<br>ACH REF # 0120 - ARC<br>ACH TRACE # 021000023933640 | | | |
| 12/14/07 | CHECK | PRIVILEGED ACCESS<br>CHECK NUMBER 121 PAID | | 821.21 | |
| 12/17/07 | CHECK | PRIVILEGED ACCESS<br>CHECK NUMBER 122 PAID | | 736.00 | |
| 12/27/07 | FND WIRED | MDA#FMB8119201 FNDS WIRED TO<br>JPMORGAN CHASE BANK, NA<br>#200282258395   FDM/2992 | | 50,000.00 | |
| **TOTAL** | | | | **$-57,180.28** | |

### MONEY FUND ACTIVITY

| DATE MM/DAY | TRANSACTION | DESCRIPTION | SYMBOL/CUSIP | QUANTITY | PRICE | DEBIT AMOUNT | CREDIT AMOUNT |
|---|---|---|---|---|---|---|---|
| 12/01/07 | | OPENING BALANCE | | 278,692.03 | | | |
| 12/03/07 | FUND | BEAR STEARNS PREMIER SHARES | BFPXX | 3.15 | 3.15 | 3.15 | |
| | | TEMPFUND<br>PURCHASE REQUESTED | | | | | |
| 12/12/07 | FUND | BEAR STEARNS PREMIER SHARES | BFPXX | -1,000 | | | 1,000.00 |
| | | TEMPFUND<br>WITHDRAW REDEMPTION | | | | | |

D161706.12.98 001

027

V024

100⍓
XVJ SS:/0 600Z/SZ/Z0

# EXHIBIT 21







Page 1 of 2)

*101000046*
06/28/2006
6613854686

his is a LEGAL COPY of
our check. You can use it
the same way you would
use the original check.

**JAMES H COHEN TTEE**
MARIAN COHEN 2001 RESIDENCE TR
850 PARK AVE APT 7C
NEW YORK, NY 10021

1016

80-569/3012

Date 6-27-06

Pay to the
Order of James H. Cohen Special Trust          $125,000.00

One Hundred Twenty-Five Thousand     NO
100     Dollars

EXPENSE CODE

Fidelity
Investments

United Missouri Bank
Kansas City, Missouri

For Madoff

⑈101205681⑈1016⑈ 771077504578 0⑈   ⑈0012500000⑈

4⑈101205681 1⑈1016⑈ 7710775045780⑈   ⑈0012500000⑈

---

Page 2 of 2)

FIMS

DEPOSIT ONLY ABS ENDORSE STD

JPMORGAN CHASE BANK, NA
6 ONE BRYN, NY 66-27/96
MEXBANK WA 0180 33

6600112605

↓Do not endorse or write below this line.↓

**Fidelity INVESTMENTS®**

*Private Access*

# Investment Report

April 1, 2005 - April 30, 2005

**Fidelity Account** Z43-307793    JAMES H COHEN SPECIAL TRUST U/A/JAMES H COHEN TRUSTEE
Private Access Account Executive: John Marshall Team 229

## Core Account Fidelity Tax-Free Money Market

| Description | | Amount | Balance |
|---|---|---|---|
| **Beginning** | | | $605.20 |
| *Investment Activity* | | | |
| Core account income | | $228.16 | |
| Subtotal of Investment Activity | | $228.16 | |
| *Cash Management Activity* | | | |
| Deposits | | 400,000.00 | |
| Checking activity | | -400,000.00 | |
| Subtotal of Cash Management Activity | | $0.00 | |
| **Ending** | | | $833.36 |

## Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Transaction Amount |
|---|---|---|---|---|---|
| 4/29 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | | | $228.16 |

## Cash Management Activity

### Deposits ( 2 )

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 4/14 | DEPOSIT RECEIVED | $100,000.00 | 4/21 | DEPOSIT RECEIVED | 300,000.00 |
| | | | **Total** | | $400,000.00 |

### Checking Activity ( 1 )

| Check # | Date | Code | Amount | Check # | Date | Code | Amount |
|---|---|---|---|---|---|---|---|
| 1009 | 4/28 | | $400,000.00 | | **Total** | | $400,000.00 |

## Daily Additions and Subtractions Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)

| Date | Code | Amount | Balance | Date | Code | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 4/14 | | $100,000.00 | $100,605.20 | 4/28 | | -400,000.00 | 605.20 |
| 4/21 | | 300,000.00 | 400,605.20 | 4/29 | | 228.16 | 833.36 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PAGE 2

PERIOD ENDING 4/30/05

YOUR TAX PAYER IDENTIFICATION NUMBER 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

YOUR ACCOUNT NUMBER 1-CM793-3-0

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK        NY    10021

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 4/25 | | | | GENERAL ELECTRIC CO DIV 2/28/05 4/25/05 | DIV | | 1,285.24 |
| 4/27 | | | | CHECK | | | |
| 4/27 | 400,000 | | 16664 | U S TREASURY BILL DUE 06/09/2005 | 99.680 | 398,720.00 | 400,000.00 |
| 4/27 | 1,280 | | 16665 | FIDELITY SPARTAN U S TREASURY MONEY MARKET 6/09/2005 | 1 | 1,280.00 | |
| 4/29 | 3,174 | | 17817 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 3,174.00 | |
| | | | | NEW BALANCE | | | 26,864.04 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 16,729 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 1,275,000 | | | U S TREASURY BILL DUE 06/02/2005 | 99.748 | | |
| | 1,775,000 | | | U S TREASURY BILL DUE 06/09/2005 | 99.697 | | |
| | | | | MARKET VALUE OF SECURITIES LONG 3,058,137.75 SHORT | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

*Private Access*

**Fidelity** INVESTMENTS®

# Investment Report

July 1, 2006 - July 31, 2006

**Fidelity Account℠  243-307793**    JAMES H COHEN SPECIAL TRUST U/A JAMES H COHEN TRUSTEE
Private Access Account Executive: John Marshall, Team 229

**Core Account** - *Fidelity Tax-Free Money Market*

| Description | Amount | Balance |
|---|---|---|
| **Beginning** | | $125,975.43 |
| *Investment Activity* | | |
| Core account income | $61.57 | |
| Subtotal of Investment Activity | $61.57 | |

| Description | Amount | Balance |
|---|---|---|
| *Cash Management Activity* | | |
| Checking activity | -125,000.00 | |
| Subtotal of Cash Management Activity | - $125,000.00 | |
| **Ending** | | $1,037.00 |

## Investment Activity

| Settlement Date | Security | Description | Amount | Balance |
|---|---|---|---|---|
| 7/31 | FIDELITY TAX-FREE MONEY MARKET | Dividend received | $61.57 | |

## Cash Management Activity

**Checking Activity ( 1 )**

| Check # | Date | Code | Amount | Balance |
|---|---|---|---|---|
| 1017 | 7/05 | | -$125,000.00 | $975.43 |
| | | **Total** | -$125,000.00 | |

**Daily Additions and Subtractions**  *Fidelity Tax-Free Money Market @ $1 per share (the following is provided to you in accordance with industry regulations)*

| Date | Quantity | Price per Unit | Amount | Transaction Amount | Balance |
|---|---|---|---|---|---|
| 7/05 | | | | $61.57 | |
| 7/31 | | | | | 1,037.00 |

| Check # | Date | Code | Amount | Balance |
|---|---|---|---|---|

## Additional Information About Your Investment Report

A copy of your Investment Report is available to:
ALAN D GARFIELD                          BARRY E KAUFMAN                          MORRIE K ABRAMSON

060731 0001 235118810          04 18

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JAMES H COHEN
SPECIAL TRUST

850 PARK AVENUE #7C
NEW YORK          NY    10021

| PERIOD ENDING | PAGE |
|---|---|
| 6/30/06 | 3 |

| YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER |
|---|---|
| 1-CM793-3-0 | 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 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 6/20 | | 8,450 | 80814 | GENERAL ELECTRIC CO | 34 | | 287,300.00 |
| 6/20 | | 2,340 | 82802 | VERIZON COMMUNICATIONS | 31.900 | | 74,646.00 |
| 6/20 | | 325 | 85071 | GOLDMAN SACHS GROUP INC | 141.310 | | 45,925.75 |
| 6/20 | | 1,365 | 87059 | WELLS FARGO & CO NEW | 66.640 | | 90,963.60 |
| 6/20 | | 1,690 | 89325 | HOME DEPOT INC | 37.040 | | 62,597.60 |
| 6/20 | | 2,015 | 91316 | WAL-MART STORES INC | 47.860 | | 96,437.90 |
| 6/20 | | 2,275 | 93582 | HEWLETT PACKARD CO | 30.610 | | 69,637.75 |
| 6/20 | | 4,940 | 95573 | EXXON MOBIL CORP | 59.100 | | 291,954.00 |
| 6/20 | | 1,235 | 97839 | INTERNATIONAL BUSINESS MACHS | 77.790 | | 96,070.65 |
| 6/20 | 1,875,000 | | 1664 | U S TREASURY BILL DUE 7/13/2006 | 99.708 | 1,869,525.00 | |
| 6/20 | 1,875,000 | | 5906 | U S TREASURY BILL DUE 7/20/2006 7/13/2006 7/20/2006 | 99.615 | 1,867,781.25 | |
| 6/20 | 42,206 | | 10148 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 42,206.00 | |
| 5/22 | | | | HOME DEPOT INC DIV 6/08/06  6/22/06 | DIV | | 253.50 |
| 6/23 | | | | BANK OF AMERICA DIV 6/02/06  6/23/06 | DIV | | 1,885.00 |
| 6/29 | | | | CHECK | CA | | 125,000.00 |
| 6/29 | 125,000 | | 14056 | U S TREASURY BILL DUE 7/20/2006 7/20/2006 | 99.739 | 124,673.75 | |
| | | | | CONTINUED ON PAGE  4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT 22

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON          TX   77024

PERIOD ENDING: 9/30/03
YOUR TAX PAYER IDENTIFICATION NUMBER: 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
PAGE: 1
YOUR ACCOUNT NUMBER: 1-CM793-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | BALANCE FORWARD | | 30,311.04 | |
| 9/02 | | | | INTEL CORP | | | |
| | | | | DIV 8/07/03  9/01/03 | DIV | | 54.00 |
| 9/02 | | | | WELLS FARGO & CO NEW | | | |
| | | | | DIV 8/08/03  9/01/03 | DIV | | 324.00 |
| 9/04 | | | | PFIZER INC | | | |
| | | | | DIV 8/15/03  9/04/03 | DIV | | 496.80 |
| 9/05 | 840 | | 2687 | U S BANCORP | 23.820 | 20,008.80 | |
| 9/05 | 2,240 | | 3017 | CITI GROUP INC | 43.300 | 96,992.00 | |
| 9/05 | 770 | | 6840 | VIACOM INC | 44.880 | 34,557.60 | |
| | | | | CLASS B NON VOTING SHS | | | |
| 9/05 | 3,045 | | 7170 | CISCO SYSTEMS INC | 19.270 | 58,677.15 | |
| 9/05 | 1,190 | | 10993 | VERIZON COMMUNICATIONS | 35.050 | 41,709.50 | |
| 9/05 | 4,375 | | 11323 | GENERAL ELECTRIC CO | 29.670 | 129,806.25 | |
| 9/05 | 735 | | 15146 | WELLS FARGO & CO NEW | 51.010 | 37,492.35 | |
| 9/05 | 980 | | 15476 | HOME DEPOT INC | 31.950 | 31,311.00 | |
| 9/05 | 1,890 | | 19299 | WAL-MART STORES INC | 58.980 | 111,472.20 | |
| 9/05 | 1,330 | | 19629 | HEWLETT PACKARD CO | 20.090 | 26,719.70 | |
| 9/05 | 2,905 | | 23452 | EXXON MOBIL CORP | 37.640 | 109,344.20 | |
| 9/05 | 770 | | 23782 | INTERNATIONAL BUSINESS MACHS | 82.390 | 63,440.30 | |
| 9/05 | 2,800 | | 27935 | INTEL CORP | 28.720 | 80,416.00 | |
| 9/05 | 1,295 | | 32088 | JOHNSON & JOHNSON | 49.690 | 64,348.55 | |
| 9/05 | 875 | | 36241 | JP MORGAN CHASE & CO | 34.240 | 29,960.00 | |
| 9/05 | 1,085 | | 40594 | COCA COLA CO | 43.330 | 47,013.05 | |
| | | | | CONTINUED ON PAGE    2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**PAGE** 2

**PERIOD ENDING** 9/30/03

**YOUR TAX PAYER IDENTIFICATION NUMBER** 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

**YOUR ACCOUNT NUMBER** 1-CM793-3-0

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON          TX   77024

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 9/05 | 525 | | 44547 | MEDTRONIC INC | 49.370 | 25,919.25 | |
| 9/05 | 420 | | 48700 | MERRILL LYNCH & CO INC | 53.580 | 22,503.60 | |
| 9/05 | 175 | | 52853 | 3M COMPANY | 141.100 | 24,692.50 | |
| 9/05 | 875 | | 57006 | ALTRIA GROUP INC | 41.040 | 35,910.00 | |
| 9/05 | 980 | | 61159 | MERCK & CO | 50.190 | 49,186.20 | |
| 9/05 | 4,690 | | 65312 | MICROSOFT CORP | 26.610 | 124,800.90 | |
| 9/05 | 490 | | 69465 | MORGAN STANLEY | 48.780 | 23,902.20 | |
| 9/05 | 1,120 | | 78098 | AMERICAN INTL GROUP INC | 59.380 | 66,505.60 | |
| 9/05 | 2,310 | | 81924 | ORACLE CORPORATION | 12.980 | 29,983.80 | |
| 9/05 | 560 | | 82251 | AMGEN INC | 65.870 | 36,887.20 | |
| 9/05 | 735 | | 86077 | PEPSICO INC | 44.310 | 32,567.85 | |
| 9/05 | 1,960 | | 86404 | AOL TIME WARNER INC | 16.310 | 31,967.60 | |
| 9/05 | 3,430 | | 90230 | PFIZER INC | 30.010 | 102,934.30 | |
| 9/05 | 560 | | 90557 | AMERICAN EXPRESS COMPANY | 45.070 | 25,239.20 | |
| 9/05 | 560 | | 94383 | PROCTER & GAMBLE CO | 87.180 | 48,820.80 | |
| 9/05 | 630 | | 94710 | BANK OF AMERICA | 79.280 | 49,946.40 | |
| 9/05 | 1,435 | | 98536 | SBC COMMUNICATIONS INC | 22.400 | 32,144.00 | |
| 9/05 | 840 | | 98863 | BRISTOL MYERS SQUIBB COMPANY | 25.460 | 21,386.40 | |
| 9/05 | | 25,000 | 61996 | U S TREASURY BILL | 99.900 | | 24,975.00 |
| | | | | DUE 10/16/03 | | | |
| 9/05 | | 850,000 | 65711 | U S TREASURY BILL | 99.765 | | 848,002.50 |
| | | | | DUE 12/4/2003 | | | |
| 9/05 | | 850,000 | 69718 | U S TREASURY BILL | 99.747 | | 847,849.50 |
| | | | | DUE 12/11/2003 | | | |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON        TX  77024

PAGE 3

PERIOD ENDING: 9/30/03

YOUR ACCOUNT NUMBER: 1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER: 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

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|-------------|------|------|------|
| 9/05 | | | | FIDELITY SPARTAN | DIV | | 32.60 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 09/05/03 | | | |
| 9/05 | 42,532 | | 27622 | FIDELITY SPARTAN | 1 | 42,532.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 9/05 | | 103,258 | 73883 | FIDELITY SPARTAN | 1 | | 103,258.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| 9/09 | | | | ANHEUSER BUSCH COS INC | DIV | | 79.20 |
| | | | | DIV 8/11/03  9/09/03 | | | |
| 9/10 | | | | EXXON MOBIL CORP | DIV | | 711.00 |
| | | | | DIV 8/13/03  9/10/03 | | | |
| 9/10 | | | | INTERNATIONAL BUSINESS MACHS | DIV | | 115.20 |
| | | | | DIV 8/08/03  9/10/03 | | | |
| 9/12 | | | | DU PONT E I DE NEMOURS & CO | DIV | | 151.20 |
| | | | | DIV 8/15/03  9/12/03 | | | |
| 9/19 | | | | AMERICAN INTL GROUP INC | DIV | | 72.80 |
| | | | | DIV 9/05/03  9/19/03 | | | |
| 9/23 | | 1,190 | 1322 | VERIZON COMMUNICATIONS | 35.700 | | 42,483.00 |
| 9/23 | | 3,045 | 2411 | CISCO SYSTEMS INC | 21.300 | | 64,858.50 |
| 9/23 | | 735 | 5451 | WELLS FARGO & CO NEW | 51.160 | | 37,602.60 |
| 9/23 | | 4,375 | 6540 | GENERAL ELECTRIC CO | 32.170 | | 140,744.75 |
| 9/23 | | 1,890 | 9580 | WAL-MART STORES INC | 58.420 | | 110,413.80 |
| 9/23 | | 980 | 10669 | HOME DEPOT INC | 32.950 | | 32,291.00 |
| 9/23 | | 2,905 | 13709 | EXXON MOBIL CORP | 36.940 | | 107,310.70 |
| 9/23 | | 1,330 | 14798 | HEWLETT PACKARD CO | 20.950 | | 27,863.50 |
| | | | | CONTINUED ON PAGE  4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
MADF INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

Affiliated with

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON                TX 77024

| PAGE | 4 |

| PERIOD ENDING | 9/30/03 |

| YOUR ACCOUNT NUMBER | 1-CM793-3-0 |

| YOUR TAX PAYER IDENTIFICATION NUMBER | 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 |

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|---|
| 9/23 | 770 | | 18927 | | INTERNATIONAL BUSINESS MACHS | 92.250 | | 71,032.50 |
| 9/23 | 2,800 | | 23056 | | INTEL CORP | 29.070 | | 81,396.00 |
| 9/23 | 1,295 | | 27185 | | JOHNSON & JOHNSON | 50.760 | | 65,721.25 |
| 9/23 | 875 | | 31314 | | JP MORGAN CHASE & CO | 35.340 | | 30,922.50 |
| 9/23 | 1,085 | | 35443 | | COCA COLA CO | 43.900 | | 47,631.50 |
| 9/23 | 525 | | 39572 | | MEDTRONIC INC | 49.330 | | 25,898.25 |
| 9/23 | 420 | | 43687 | | MERRILL LYNCH & CO INC | 55.250 | | 23,205.00 |
| 9/23 | 175 | | 47771 | | 3M COMPANY | 141.130 | | 24,697.75 |
| 9/23 | 875 | | 51900 | | ALTRIA GROUP INC | 44.650 | | 39,068.75 |
| 9/23 | 980 | | 56029 | | MERCK & CO | 53.600 | | 52,528.00 |
| 9/23 | 4,690 | | 60158 | | MICROSOFT CORP | 28.980 | | 135,916.20 |
| 9/23 | 490 | | 64273 | | MORGAN STANLEY | 52.550 | | 25,749.50 |
| 9/23 | 2,310 | | 72486 | | ORACLE CORPORATION | 12.400 | | 28,644.00 |
| 9/23 | 1,120 | | 73567 | | AMERICAN INTL GROUP INC | 60.640 | | 67,916.80 |
| 9/23 | 735 | | 76615 | | PEPSICO INC | 45.680 | | 33,574.80 |
| 9/23 | 560 | | 77696 | | AMGEN INC | 69.890 | | 39,138.40 |
| 9/23 | 3,430 | | 80744 | | PFIZER INC | 32.300 | | 110,789.00 |
| 9/23 | 1,960 | | 81825 | | AOL TIME WARNER INC | 16.440 | | 32,222.40 |
| 9/23 | 560 | | 84873 | | PROCTER & GAMBLE CO | 93.240 | | 52,214.40 |
| 9/23 | 560 | | 85954 | | AMERICAN EXPRESS COMPANY | 46.830 | | 26,224.80 |
| 9/23 | 1,435 | | 89002 | | SBC COMMUNICATIONS INC | 23.910 | | 34,310.85 |
| 9/23 | 630 | | 90083 | | BANK OF AMERICA | 78.930 | | 49,725.90 |
| 9/23 | 840 | | 93113 | | U S BANCORP | 24.530 | | 20,605.20 |
| 9/23 | 840 | | 94197 | | BRISTOL MYERS SQUIBB COMPANY | 27.130 | | 22,789.20 |
| 9/23 | 770 | | 97192 | | VIACOM INC | 43.480 | | 33,479.60 |
| | | | | | CLASS B NON VOTING SHS | | | |
| | | | | | | | | |
| | | | | | CONTINUED ON PAGE    5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
MADF INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**PAGE** 5

\*\*DUPLICATE\*\*  FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON     TX  77024

**YOUR ACCOUNT NUMBER** 1-CMT93-3-0
**PERIOD ENDING** 9/30/03
**YOUR TAX PAYER IDENTIFICATION NUMBER** 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

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 9/23 | | 2,240 | 98281 | CITI GROUP INC | 46 | | 103,040.00 |
| 9/23 | 900,000 | | 18809 | U S TREASURY BILL DUE 12/11/2003 | 99.805 | 898,245.00 | |
| 9/23 | 900,000 | | 23064 | U S TREASURY BILL DUE 12/18/2003 | 99.787 | 898,083.00 | |
| 9/23 | 24,051 | | 27954 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 24,051.00 | |
| 9/26 | | | | DIV 9/05/03  9/26/03 BANK OF AMERICA | DIV | | 504.00 |
| 9/30 | | | | PEPSICO INC DIV 9/12/03  9/30/03 | DIV | | 117.60 |
| 9/30 | 2,626 | | 33183 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 2,626.00 | |
| | | | | NEW BALANCE | | | 4,758.31 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 69,209 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 900,000 | | | U S TREASURY BILL DUE 12/11/2003 | 99.826 | | |
| | 900,000 | | | U S TREASURY BILL DUE 12/18/2003 | 99.809 | | |
| | | | | MARKET VALUE OF SECURITIES LONG 1,865,924.00 | SHORT | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

| MADF | **BERNARD L. MADOFF** |
|------|------------------------|
| | INVESTMENT SECURITIES LLC |
| | New York ☐ London |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE**   FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON                    TX  77024

**PAGE** 6

**PERIOD ENDING** 9/30/03

**YOUR TAX PAYER IDENTIFICATION NUMBER** 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

**YOUR ACCOUNT NUMBER** 1-CM793-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|-----|-------------|-----------------|----|----|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 4,835.03 |
| | | | | GROSS PROCEEDS FROM SALES | | | 8,921,858.20 |

**PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES**

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

9121 BRIAR FOREST
HOUSTON                TX  77024

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 9/30/03 | 1-CM793-4-0 | 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 | 1 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 30,312.00 |
| 9/03 | | 35 | 73618 | S & P 100 INDEX | 3.400 | | 11,865.00 |
| 9/03 | 35 | | 77771 | SEPTEMBER 515 CALL | | | |
| | | | | S & P 100 INDEX | 7.100 | 24,885.00 | |
| 9/19 | 35 | | 68357 | SEPTEMBER 505 PUT | | | |
| | | | | S & P 100 INDEX | 6.300 | 22,050.00 | |
| 9/22 | | 35 | | SEPTEMBER 515 CALL | | | |
| | | | | S & P 100 INDEX | DELV | | |
| | | | | SEPTEMBER 505 PUT | | | |
| | | | | EXPIRED WORTHLESS | | 4,758.00 | |
| | | | | | | | |
| | | | | NEW BALANCE | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Madoff Securities Inter
Mayfair, L

**MADF** | **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON       TX   77056

PERIOD ENDING: 1/31/08

YOUR ACCOUNT NUMBER: 1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NO: *******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|--------------------------------|
|      |                 |                |     | BALANCE FORWARD | | |
| 1/02 |                 |                |     | HEWLETT PACKARD CO DIV 12/12/07 1/02/08 | DIV | |
| 1/02 |                 |                |     | MERCK & CO DIV 12/07/07 1/02/08 | DIV | |
| 1/02 |                 |                |     | PEPSICO INC DIV 12/07/07 1/02/08 | DIV | |
| 1/02 |                 |                |     | WAL-MART STORES INC DIV 12/14/07 1/02/08 | DIV | |
| 1/03 |                 |                |     | UNITED PARCEL SVC INC CLASS B DIV 11/19/07 1/03/08 | DIV | |
| 1/04 |                 |                |     | SCHLUMBERGER LTD DIV 12/05/07 1/04/08 | DIV | |
| 1/31 | 2,754           |                | 1173 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 2,754.00 |
|      |                 |                |     | NEW BALANCE | | |
|      | 24,349          |                |     | SECURITY POSITIONS FIDELITY SPARTAN U S TREASURY MONEY MARKET | MKT PRICE 1 | |
|      | 5,550,000       |                |     | U S TREASURY BILL DUE 04/03/2008 4/03/2008 | 99.692 | |

MARKET VALUE OF SECURITIES
LONG           SHORT
5,557,255.00

5,524,364.49 - 1/01/09

52,890.51

Madoff Securities Inter
12
Mayfair, L

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON        TX  77056

YOUR ACCOUNT NUMBER
1-CM793-3-0

PERIOD ENDING
1/31/08

YOUR TAX PAYER IDENTIFICATION NUMBER
*******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
|      |                 |                |     | YEAR-TO-DATE SUMMARY |     |                               |
|      |                 |                |     | DIVIDENDS   |                 |                               |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON        TX   77056

Madoff Securities Inter
12
Mayfair, 1

PERIOD ENDING
2/29/08

YOUR TAX PAYER IDENTIFICATION NU
*******0338

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| | | | | BALANCE FORWARD | | |
| | | | | NEW BALANCE | | |
| | 24,349 | | | SECURITY POSITIONS FIDELITY SPARTAN U S TREASURY MONEY MARKET | MKT PRICE 1 | |
| | 5,550,000 | | | U S TREASURY BILL DUE 04/03/2008 4/03/2008 | 99.813 | |
| | | | | MARKET VALUE OF SECURITIES LONG        SHORT 5,563,970.50 | | |

Madoff Securities Inter    12
Mayfair, L

**PERIOD ENDING**
2/29/08

YOUR TAX PAYER IDENTIFICATION NO
**\*\*\*\*\*\*0338**

YOUR ACCOUNT NUMBER
1-CM793-3-0

**BERNARD L. MADOFF**
MADF  INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

\*\*DUPLICATE\*\*  FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON        TX  77056

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|--------------------------------|
|      |                 |                |     | YEAR-TO-DATE SUMMARY |         |                                |
|      |                 |                |     | DIVIDENDS   |                 |                                |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Inter... 12
Mayfair...

PERIOD ENDING
3/31/08

YOUR TAX PAYER IDENTIFICATION NUM
*******0338

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON          TX  77056

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| 3/19 | | | | BALANCE FORWARD | | |
| 3/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 03/19/08 | DIV | |
| 3/19 | | 24,349 | 25159 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | |
| 3/19 | | 5,550,000 | 29480 | U S TREASURY BILL DUE 04/03/2008 4/03/2008 | 99.954 | 5,551,362.00 |
| 3/19 | 5,575,000 | | 33950 | U S TREASURY BILL DUE 7/31/2008 7/31/2008 | 99.576 | |
| 3/19 | 20,574 | | 38297 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 20,574.00 |
| | | | | NEW BALANCE | | |
| | 20,574 | | | SECURITY POSITIONS FIDELITY SPARTAN | MKT PRICE 1 | |
| | 5,575,000 | | | U S TREASURY BILL DUE 7/31/2008 7/31/2008 | 99.546 | |
| | | | | MARKET VALUE OF SECURITIES LONG         SHORT 5,570,263.50 | | |

√ 5,63,970.50 – Feb. 2008
6293.00 profit

4,113 1/9 quite.

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON            TX    77056

PERIOD ENDING
3/31/08

YOUR TAX PAYER IDENTIFICATION NUMBER
*******0338

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
|      |                 |                |     | YEAR-TO-DATE SUMMARY |          |                               |
|      |                 |                |     | DIVIDENDS   |                 |                               |
|      |                 |                |     | GROSS PROCEEDS FROM SALES |   |                               |

Madoff Securities Intern 12
Mayfair,

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON        TX   77056

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUM |
|---|---|---|
| 4/30/08 | 1-CM793-3-0 | *******0338 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | |
| 4/04 | 3,276 | | 2013 | VERIZON COMMUNICATIONS | 37.090 | 121,637.84 |
| 4/04 | 11,466 | | 3228 | GENERAL ELECTRIC CO | 37.470 | 430,089.02 |
| 4/04 | 3,640 | | 6308 | WELLS FARGO & CO NEW | 30.220 | 110,145.80 |
| 4/04 | 273 | | 7523 | GOOGLE | 446.900 | 122,013.70 |
| 4/04 | 2,730 | | 10603 | WAL-MART STORES INC | 52.970 | 144,717.10 |
| 4/04 | 455 | | 11818 | GOLDMAN SACHS GROUP INC | 170.520 | 77,604.60 |
| 4/04 | 6,188 | | 14898 | EXXON MOBIL CORP | 84.530 | 523,318.64 |
| 4/04 | 2,821 | | 16113 | HEWLETT PACKARD CO | 46.270 | 130,639.67 |
| 4/04 | 1,638 | | 20408 | INTERNATIONAL BUSINESS MACHS | 115.620 | 189,450.56 |
| 4/04 | 6,643 | | 24703 | INTEL CORP | 21.470 | 142,890.21 |
| 4/04 | 3,276 | | 28998 | JOHNSON & JOHNSON | 64.820 | 212,481.32 |
| 4/04 | 3,731 | | 33293 | J.P. MORGAN CHASE & CO | 44.930 | 167,782.83 |
| 4/04 | 2,275 | | 37587 | COCA COLA CO | 61.120 | 139,139.00 |
| 4/04 | 1,365 | | 41882 | MCDONALDS CORP | 56.140 | 76,685.10 |
| 4/04 | 2,457 | | 46177 | MERCK & CO | 38.310 | 94,225.67 |
| 4/04 | 9,191 | | 50472 | MICROSOFT CORP | 28.700 | 264,883.98 |
| 4/04 | 1,001 | | 60278 | APPLE INC | 145.880 | 146,065.88 |
| 4/04 | 4,550 | | 63357 | ORACLE CORPORATION | 19.870 | 90,590.50 |
| 4/04 | 1,820 | | 64573 | ABBOTT LABORATORIES | 54.910 | 100,008.20 |
| 4/04 | 1,911 | | 67652 | PEPSICO INC | 71.360 | 136,444.96 |
| 4/04 | 2,821 | | 68868 | AMERICAN INTL GROUP INC | 44.860 | 126,662.06 |
| 4/04 | 7,826 | | 71947 | PFIZER INC | 20.930 | 164,111.18 |
| 4/04 | 4,914 | | 73162 | BANK OF AMERICA | 39.460 | 194,102.44 |
| | | | | CONTINUED ON PAGE  2 | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT
BARRY E KAUFMAN, CPA

JAMES H COHEN

5110 SAN FELIPE 182W
HOUSTON          TX  77056

PERIOD ENDING **4/30/08**

YOUR TAX PAYER IDENTIFICATION NUM *******0338

YOUR ACCOUNT NUMBER **1-CM793-3-0**

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 4/04 | 3,549 | | 76242 | PROCTER & GAMBLE CO | 69.900 | 248,216.10 |
| 4/04 | 5,733 | | 77451 | CITI GROUP INC | 22.650 | 130,081.45 |
| 4/04 | 2,457 | | 80537 | PHILLIP MORRIS INTERNATIONAL | 50.530 | 124,250.21 |
| 4/04 | 3,458 | | 81752 | COMCAST CORP CL A | 19.660 | 68,122.28 |
| 4/04 | 1,365 | | 84832 | SCHLUMBERGER, LTD | 86.410 | 118,003.65 |
| 4/04 | 1,820 | | 86047 | CONOCOPHILIPS | 75.930 | 138,264.60 |
| 4/04 | 6,916 | | 89127 | AT&T INC | 38.910 | 269,377.56 |
| 4/04 | 6,825 | | 90342 | CISCO SYSTEMS INC | 24.470 | 167,280.75 |
| 4/04 | 1,183 | | 93422 | UNITED PARCEL SVC INC CLASS B | 73.400 | 86,879.20 |
| 4/04 | 2,457 | | 94637 | CHEVRON CORP | 85.210 | 209,458.97 |
| 4/04 | 1,092 | | 97717 | UNITED TECHNOLOGIES CORP | 69.570 | 76,013.44 |
| 4/04 | 2,184 | | 98932 | THE WALT DISNEY CO | 31.770 | 69,472.68 |
| 4/04 | | | | FIDELITY SPARTAN US TREASURY MONEY MARKET DIV 04/04/08 | DIV | |
| 4/04 | | 20,574 | 19279 | FIDELITY SPARTAN US TREASURY MONEY MARKET | 1 | |
| 4/04 | | 5,575,000 | 23235 | US TREASURY BILL DUE 7/31/2008 7/31/2008 | 99.548 | |
| 4/07 | 25,000 | | 32185 | US TREASURY BILL DUE 9/18/2008 9/18/2008 | 99.317 | 24,829.25 |
| | | | | CONTINUED ON PAGE 3 | | |

Madoff Securities Intern.
Mayfair, Lo
T8

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON              TX  77056

PERIOD ENDING **4/30/08**

YOUR TAX PAYER IDENTIFICATION NUM.  **\*\*\*\*\*\*\*0338**

YOUR ACCOUNT NUMBER  **1-CM793-3-0**

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 4/07 | 12,529 | | 34368 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 12,529.00 |
| 4/23 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 04/23/08 | DIV | |
| 4/23 | | 12,529 | 57309 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | |
| 4/23 | 12,174 | | 61707 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 12,174.00 |
| 4/30 | | | | J.P. MORGAN CHASE & CO DIV 4/04/08  4/30/08 | DIV | |
| 4/30 | 1,418 | | 71883 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 1,418.00 |
| | | | | NEW BALANCE | | 77,713.65 |
| | | | | SECURITY POSITIONS | MKT PRICE | |
| | 6,916 | | | AT&T INC | 38.710 | |
| | 1,820 | | | ABBOTT LABORATORIES | 52.750 | |
| | 2,821 | | | AMERICAN INTL GROUP INC | 46.200 | |
| | 1,001 | | | APPLE INC | 173.950 | |
| | 4,914 | | | BANK OF AMERICA | 37.540 | |
| | 2,457 | | | CHEVRON CORP | 96.150 | |
| | 6,825 | | | CISCO SYSTEMS INC | 25.640 | |
| | 5,733 | | | CITI GROUP INC | 25.270 | |
| | | | | CONTINUED ON PAGE 4 | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC

New York ☐ London

Madoff Securities Intern
12 1
Mayfair, Lo

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON            TX 77056

PERIOD ENDING: 4/30/08

YOUR ACCOUNT NUMBER: 1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NU: ******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
| | 2,275 | | | COCA COLA CO | 58.870 | |
| | 3,458 | | | COMCAST CORP | 20.550 | |
| | | | | CL A | | |
| | 1,820 | | | CONOCOPHILIPS | 86.150 | |
| | 2,184 | | | THE WALT DISNEY CO | 32.430 | |
| | 6,188 | | | EXXON MOBIL CORP | 93.070 | |
| | 11,466 | | | GENERAL ELECTRIC CO | 32.700 | |
| | 455 | | | GOLDMAN SACHS GROUP INC | 191.370 | |
| | 273 | | | GOOGLE | 574.290 | |
| | 2,821 | | | HEWLETT PACKARD CO | 46.350 | |
| | 6,643 | | | INTEL CORP | 22.260 | |
| | 1,638 | | | INTERNATIONAL BUSINESS MACHS | 120.700 | |
| | 3,731 | | | J.P. MORGAN CHASE & CO | 47.650 | |
| | 3,276 | | | JOHNSON & JOHNSON | 67.090 | |
| | 1,365 | | | MCDONALDS CORP | 59.580 | |
| | 2,457 | | | MERCK & CO | 38.040 | |
| | 9,191 | | | MICROSOFT CORP | 28.520 | |
| | 4,550 | | | ORACLE CORPORATION | 20.850 | |
| | 1,911 | | | PEPSICO INC | 68.530 | |
| | 7,026 | | | PFIZER INC | 20.110 | |
| | 2,457 | | | PHILLIP MORRIS INTERNATIONAL | 51.030 | |
| | 3,549 | | | PROCTER & GAMBLE CO | 67.050 | |
| | 1,365 | | | SCHLUMBERGER LTD | 100.550 | |
| | 13,592 | | | FIDELITY SPARTAN | 1 | |
| | | | | U S TREASURY MONEY MARKET | | |
| | | | | CONTINUED ON PAGE 5 | | |

Madoff Securities Inter   12
Mayfair,

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON   TX   77056

PERIOD ENDING   4/30/08

YOUR TAX PAYER IDENTIFICATION NUM   ******0338

YOUR ACCOUNT NUMBER   1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
|  | 1,183 |  |  | UNITED PARCEL SVC INC CLASS B | 72.410 |  |
|  | 25,000 |  |  | U S TREASURY BILL DUE 9/18/2008 | 99.444 |  |
|  |  |  |  | 9/18/2008 |  |  |
|  | 1,092 |  |  | UNITED TECHNOLOGIES CORP | 72.470 |  |
|  | 3,276 |  |  | VERIZON COMMUNICATIONS | 38.480 |  |
|  | 2,730 |  |  | WAL-MART STORES INC | 57.980 |  |
|  | 3,640 |  |  | WELLS FARGO & CO NEW | 29.750 |  |
|  |  |  |  | MARKET VALUE OF SECURITIES |  |  |
|  |  |  |  | LONG   SHORT |  |  |
|  |  |  |  | 5,826,585.35 |  |  |

43,686.10 long
(124,670 m) short

5,945,666.35
5570263.50
M,331.95

2/1/ µmt 4/30/08
+ .05 ptg

Madoff Securities Intern
12
Mayfair, Lo

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE    182W
HOUSTON            TX  77056

PERIOD ENDING
4/30/08

YOUR ACCOUNT NUMBER
1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NUM
*******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
|      |                 |                |     | YEAR-TO-DATE SUMMARY |        |                               |
|      |                 |                |     | DIVIDENDS |             |                               |
|      |                 |                |     | GROSS PROCEEDS FROM SALES |  |                               |

Madoff Securities Inter

12
Mayfair, L

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182M
HOUSTON            TX  77056

PERIOD ENDING **4/30/08**

YOUR TAX/PAYER IDENTIFICATION NU

*******0338

YOUR ACCOUNT NUMBER  **1-CMT93-4-0**

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
|      |                 |                |     | NO BALANCE FORWARD | | |
| 4/04 | 91 |    | 59062 | S & P 100 INDEX<br>APRIL 615 PUT | 8.800 | 80,171.00 |
| 4/07 |    | 91 | 54767 | S & P 100 INDEX<br>APRIL 625 CALL | 17.400 | |
| 4/22 | 91 |    | 39264 | S & P 100 INDEX<br>APRIL 625 CALL | 4.600 | 41,951.00 |
| 4/22 |    | 91 | 48274 | S & P 100 INDEX<br>APRIL 615 PUT | 1 | |
| 4/22 | 91 |    | 52779 | S & P 100 INDEX<br>MAY 625 PUT | 12.200 | 111,111.00 |
| 4/23 |    | 91 | 43769 | S & P 100 INDEX<br>MAY 635 CALL | 15.800 | |
|      |                 |                |     | NEW BALANCE | | |
|      |                 |                |     | SECURITY POSITIONS | MKT PRICE | |
|      |                 |                |     | S & P 100 INDEX | 13.700 | |
|      |                 | 91             |     | MAY 635 CALL<br>MAY 625 PUT | 4.800 | |
|      |                 |                |     | MARKET VALUE OF SECURITIES<br>LONG      43,680.00<br>SHORT  124,670.00- | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Interr
12
Mayfair, Lc
T6

**DUPLICATE** FOR ACCOUNT     JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON              TX 77056

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
| | | | | BALANCE FORWARD | | 77,713.65 |
| 5/01 | | | | ATTT INC | DIV | |
| | | | | DIV 4/10/08 5/01/08 | | |
| 5/01 | | | | VERIZON COMMUNICATIONS | DIV | |
| | | | | DIV 4/10/08 5/01/08 | | |
| 5/15 | | | | ABBOTT LABORATORIES | DIV | |
| | | | | DIV 4/15/03 5/15/08 | | |
| 5/15 | | | | PROCTER & GAMBLE CO | DIV | |
| | | | | DIV 4/18/08 5/15/08 | | |
| 5/19 | | | | FIDELITY SPARTAN | DIV | |
| | | | | U S TREASURY MONEY MARKET | | |
| | | | | DIV 05/19/08 | | |
| 5/19 | | 13,592 | 9047 | FIDELITY SPARTAN | 1 | |
| | | | | U S TREASURY MONEY MARKET | | |
| 5/19 | | 255,000 | 12946 | U S TREASURY BILL | 99.363 | |
| | | | | DUE 9/18/2008 | | |
| | | | | 9/18/2008 | | |
| 5/23 | | | | CITI GROUP INC | DIV | |
| | | | | DIV 5/05/08 5/23/08 | | |
| 5/27 | | 11,466 | 1397 | GENERAL ELECTRIC CO | 31.740 | |
| 5/27 | | 2,730 | 3968 | WAL-MART STORES INC | 56.040 | |
| 5/27 | | 273 | 5684 | GOOGLE | 577.900 | |
| 5/27 | | 6,188 | 8255 | EXXON MOBIL CORP | 95.310 | |
| 5/27 | | 455 | 9953 | GOLDMAN SACHS GROUP INC | 183.260 | |
| | | | | CONTINUED ON PAGE 2 | | |

YOUR ACCOUNT NUMBER: 1-CM793-3-0

PERIOD ENDING: 5/31/08

YOUR TAX PAYER IDENTIFICATION NU: ******0338

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Interne
12]
Mayfair, Lo
Tel

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON         TX  77056

PERIOD ENDING: 5/31/08

YOUR TAX PAYER IDENTIFICATION NUM ******0338

YOUR ACCOUNT NUMBER 1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 5/27 | | 2,821 | 14131 | HEWLETT PACKARD CO | 46.300 | |
| 5/27 | | 1,638 | 18418 | INTERNATIONAL BUSINESS MACHS | 125.210 | |
| 5/27 | | 6,643 | 22705 | INTEL CORP | 24.120 | |
| 5/27 | | 3,276 | 26992 | JOHNSON & JOHNSON | 66.470 | |
| 5/27 | | 3,731 | 31279 | J.P. MORGAN CHASE & CO | 43.960 | |
| 5/27 | | 2,275 | 35565 | COCA COLA CO | 57.230 | |
| 5/27 | | 1,365 | 39830 | MCDONALDS CORP | 59.810 | |
| 5/27 | | 2,457 | 43966 | MERCK & CO | 39.960 | |
| 5/27 | | 9,191 | 48253 | MICROSOFT CORP | 28.820 | |
| 5/27 | | 4,550 | 56827 | ORACLE CORPORATION | 22.310 | |
| 5/27 | | 1,001 | 59172 | APPLE INC | 185.820 | |
| 5/27 | | 1,911 | 61114 | PEPSICO INC | 67.670 | |
| 5/27 | | 1,820 | 63459 | ABBOTT LABORATORIES | 55.030 | |
| 5/27 | | 7,826 | 65401 | PFIZER INC | 20.120 | |
| 5/27 | | 2,021 | 67746 | AMERICAN INTL GROUP INC | 38.430 | |
| 5/27 | | 3,549 | 69680 | PROCTER & GAMBLE CO | 65.880 | |
| 5/27 | | 4,914 | 72032 | BANK OF AMERICA | 35.490 | |
| 5/27 | | 2,457 | 73975 | PHILLIP MORRIS INTERNATIONAL | 52.900 | |
| 5/27 | | 5,733 | 76319 | CITI GROUP INC | 22.230 | |
| 5/27 | | 1,365 | 78262 | SCHLUMBERGER LTD | 106.430 | |
| 5/27 | | 3,458 | 80537 | COMCAST CORP CL A | 22 | |
| 5/27 | | 6,916 | 82549 | AT&T INC | 39.430 | |
| 5/27 | | 1,820 | 84486 | CONOCOPHILIPS | 93.070 | |
| 5/27 | | 1,183 | 86836 | UNITED PARCEL SVC INC CLASS B | 70.260 | |
| | | | | CONTINUED ON PAGE 3 | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

Madoff Securities Intern...
12]
Mayfair, Lo...

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE    182W
HOUSTON        TX  77056

PERIOD ENDING
5/31/08

YOUR TAX PAYER IDENTIFICATION NUM...
*******0338

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
| 5/27 | | 6,825 | 88773 | CISCO SYSTEMS INC | 25.880 | |
| 5/27 | | 1,092 | 91122 | UNITED TECHNOLOGIES CORP | 73.570 | |
| 5/27 | | 2,457 | 93060 | CHEVRON CORP | 103.450 | |
| 5/27 | | 3,276 | 95393 | VERIZON COMMUNICATIONS | 37.940 | |
| 5/27 | | 2,184 | 97310 | THE WALT DISNEY CO | 34.040 | |
| 5/27 | | 3,640 | 99680 | WELLS FARGO & CO NEW | 28.160 | |
| 5/27 | 5,700,000 | | 10127 | U S TREASURY BILL | 99.405 | 5,666,085.00 |
| | | | | DUE 9/18/2008 9/18/2008 | | |
| 5/27 | 33,916 | | 22322 | FIDELITY SPARTAN | 1 | 33,916.00 |
| | | | | U S TREASURY MONEY MARKET | | |
| 5/28 | | | | FIDELITY SPARTAN | DIV | |
| | | | | U S TREASURY MONEY MARKET | | |
| | | | | DIV 05/28/08 | | |
| 5/28 | | 33,916 | 26977 | FIDELITY SPARTAN | 1 | |
| | | | | U S TREASURY MONEY MARKET | | |
| 5/28 | 175,000 | | 31553 | U S TREASURY BILL | 99.410 | 173,967.50 |
| | | | | DUE 9/18/2008 9/18/2008 | | |
| 5/28 | 10,919 | | 36474 | FIDELITY SPARTAN | 1 | 10,919.00 |
| | | | | U S TREASURY MONEY MARKET | | |
| 5/29 | | | | GOLDMAN SACHS GROUP INC | DIV | |
| | | | | DIV 4/29/08 5/29/08 | | |
| 5/30 | 8,244 | | 41594 | FIDELITY SPARTAN | 1 | 8,244.00 |
| | | | | U S TREASURY MONEY MARKET | | |
| | | | | CONTINUED ON PAGE  4 | | |

Madoff Securities Intern
12 1
Mayfair, Lo

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE    182W
HOUSTON    TX    77056

| PERIOD ENDING | 5/31/08 |
| YOUR ACCOUNT NUMBER | 1-CM793-3-0 |
| YOUR TAX/PAYER IDENTIFICATION NUM. | *******0338 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | | NEW BALANCE | | 85,994.96 |
| | | | | SECURITY POSITIONS | | |
| | 19,163 | | | FIDELITY SPARTAN | MKT PRICE 1 | |
| | 5,875,000 | | | U.S. TREASURY MONEY MARKET | | |
| | | | | U.S. TREASURY BILL DUE 9/18/2008    9/18/2008 | 99.420 | |
| | | | | MARKET VALUE OF SECURITIES LONG | | |
| | | | | 5,860,088.00    SHORT | | |

−745,591.3 6
114,492.65 ＜ 0,95,3,5,7,8,1,8

MADF

Madoff Securities Intern    12
Mayfair, L...

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON        TX    77056

PERIOD ENDING
5/31/08

YOUR TAX PAYER IDENTIFICATION NUM
*******0338

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|
| | | | | YEAR-TO-DATE SUMMARY | | |
| | | | | DIVIDENDS | | |
| | | | | GROSS PROCEEDS FROM SALES | | |

Madoff Securities Intern
12
Mayfair, Lo

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON        TX    77056

PERIOD ENDING: 5/31/08
YOUR TAX PAYER IDENTIFICATION NUMBER: *******0338
YOUR ACCOUNT NUMBER: 1-CM793-4-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | |
| 5/16 | 91 | | 98527 | S & P 100 INDEX MAY 635 CALL | 10,600 | 96,551.00 |
| 5/19 | | 91 | 3240 | S & P 100 INDEX MAY 625 PUT | .300 | |
| 5/19 | 91 | | 89527 | S & P 100 INDEX JUNE 650 CALL | 12,300 | |
| 5/19 | | 91 | 94027 | S & P 100 INDEX JUNE 640 PUT | 10,500 | 95,641.00 |
| 5/22 | 91 | | 32536 | S & P 100 INDEX JUNE 645 PUT | 8,200 | 74,711.00 |
| 5/23 | | 91 | 19036 | S & P 100 INDEX JUNE 650 CALL | 10,900 | 99,281.00 |
| 5/23 | 91 | | 23536 | S & P 100 INDEX JUNE 655 CALL | 9,300 | |
| 5/23 | | 91 | 28036 | S & P 100 INDEX JUNE 640 PUT | 9,700 | |
| 5/27 | 91 | | 12542 | S & P 100 INDEX JUNE 655 CALL | 7 | 63,791.00 |
| 5/28 | | 91 | 52540 | S & P 100 INDEX JUNE 645 PUT | 16,600 | |
| | | | | NEW BALANCE | | |

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON            TX 77056

PERIOD ENDING: 6/30/08
YOUR ACCOUNT NUMBER: 1-CH793-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: *******0338
PAGE: 1

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 85,994.96 | |
| 6/02 | | | | INTEL CORP | DIV | | 930.02 |
| 6/02 | | | | DIV 5/01/08 6/01/08 WAL-MART STORES INC | DIV | | 648.36 |
| 6/02 | | | | DIV 5/16/08 6/02/08 WELLS FARGO & CO NEW | DIV | | 1,128.40 |
| 6/03 | | | | DIV 5/09/08 6/01/08 PFIZER INC | DIV | | 2,504.32 |
| 6/03 | | | | DIV 5/09/08 6/03/08 UNITED PARCEL SVC INC CLASS B | DIV | | 532.35 |
| 6/10 | | | | DIV 5/19/08 6/03/08 CHEVRON CORP | DIV | | 1,597.05 |
| 6/10 | | | | DIV 5/19/08 6/10/08 EXXON MOBIL CORP | DIV | | 2,475.20 |
| 6/10 | | | | DIV 5/13/08 6/10/08 INTERNATIONAL BUSINESS MACHS | DIV | | 819.00 |
| 6/10 | | | | DIV 5/09/08 6/10/08 UNITED TECHNOLOGIES CORP | DIV | | 349.44 |
| 6/12 | | | | DIV 5/16/08 6/10/08 MICROSOFT CORP | DIV | | 1,011.01 |
| 6/30 | 11,995 | | 49901 | DIV 5/15/08 6/12/08 FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 11,995.00 | |
| | | | | CONTINUED ON PAGE 2 | | | |

[MADF] **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON        TX  77056

| PERIOD ENDING | PAGE |
|---|---|
| 6/30/08 | 3 |

YOUR TAX PAYER IDENTIFICATION NUMBER
*******0338

YOUR ACCOUNT NUMBER
1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 24,591,49 |
| | | | | GROSS PROCEEDS FROM SALES | | | 16,926,330,64 |

MADF

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON            TX  77056

| PAGE |
|------|
| 1 |

| PERIOD ENDING |
|---------------|
| 6/30/08 |

| YOUR TAX PAYER IDENTIFICATION NUMBER |
|------|
| **-**-**-0338 |

| YOUR ACCOUNT NUMBER |
|------|
| 1-CM793-4-0 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | BALANCE FORWARD | | | 85,995.00 |
| | | | | NEW BALANCE | | | 85,995.00 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities Intern
12
Mayfair, Lo
To

**DUPLICATE** FOR ACCOUNT     JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON          TX   77056

PERIOD ENDING: 7/31/08
YOUR TAX PAYER IDENTIFICATION NUM: *******0338
YOUR ACCOUNT NUMBER: 1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 85,994.79 |
| | 31,158 | | | NEW BALANCE | | 85,994.79 |
| | | | | SECURITY POSITIONS | | |
| | 5,875,000 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET U S TREASURY BILL DUE 9/18/2008          9/18/2008 | MKT PRICE 1 99.778 | |
| | | | | MARKET VALUE OF SECURITIES LONG          5,893,115.50          SHORT | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

\*\*DUPLICATE\*\*  FOR ACCOUNT  JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON        TX   77056

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| | | | | YEAR-TO-DATE SUMMARY | | |
| | | | | DIVIDENDS | | |
| | | | | GROSS PROCEEDS FROM SALES | | |

YOUR ACCOUNT NUMBER  1-CM793-3-0

PERIOD ENDING  7/31/08

YOUR TAX PAYER IDENTIFICATION NUM  \*\*\*\*\*\*\*0338

Madoff Securities Interm
12 │
Mayfair, Lo
Te



Madoff Securities Intern
12 ]
Mayfair, Lo

**PERIOD ENDING**
7/31/08

**YOUR TAX PAYER IDENTIFICATION NUM**
******0338

**YOUR ACCOUNT NUMBER**
1-CM793-4-0

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT     JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON          TX  77056

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | |
| | | | | NEW BALANCE | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182M
HOUSTON          TX   77056

PERIOD ENDING: 8/31/08

YOUR ACCOUNT NUMBER: 1-CM793-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER: ******0338

PAGE: 1

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 85,994.79 |
| 8/14 | 3,800 | | 2836 | PROCTER & GAMBLE CO | 69.490 | 264,214.00 | |
| 8/14 | 1,400 | | 3729 | AMGEN INC | 63.040 | 88,312.00 | |
| 8/14 | 2,600 | | 7145 | PHILLIP MORRIS INTERNATIONAL | 55.110 | 143,390.00 | |
| 8/14 | 5,900 | | 8038 | BANK OF AMERICA | 32.070 | 189,449.00 | |
| 8/14 | 2,000 | | 11454 | QUALCOMM INC | 55.530 | 111,140.00 | |
| 8/14 | 6,900 | | 12347 | CITI GROUP INC | 19.300 | 133,446.00 | |
| 8/14 | 1,500 | | 15763 | SCHLUMBERGER LTD | 92.190 | 138,345.00 | |
| 8/14 | 1,900 | | 16656 | CONOCOPHILIPS | 81.290 | 154,527.00 | |
| 8/14 | 7,600 | | 20072 | AT&T INC | 31. | 235,904.00 | |
| 8/14 | 7,400 | | 20965 | CISCO SYSTEMS INC | 24.200 | 179,376.00 | |
| 8/14 | 1,300 | | 24381 | UNITED PARCEL SVC INC CLASS B | 65.030 | 84,591.00 | |
| 8/14 | 2,500 | | 25274 | CHEVRON CORP | 84.670 | 211,775.00 | |
| 8/14 | 1,200 | | 28690 | UNITED TECHNOLOGIES CORP | 66.460 | 79,800.00 | |
| 8/14 | 12,500 | | 29583 | GENERAL ELECTRIC CO | 29.600 | 370,500.00 | |
| 8/14 | 3,600 | | 32999 | VERIZON COMMUNICATIONS | 34.710 | 125,100.00 | |
| 8/14 | 300 | | 33892 | GOOGLE | 492.320 | 147,700.00 | |
| 8/14 | 4,300 | | 37308 | WELLS FARGO & CO NEW | 30.300 | 130,462.00 | |
| 8/14 | 500 | | 38201 | GOLDMAN SACHS GROUP INC | 175.950 | 87,995.00 | |
| 8/14 | 2,900 | | 41617 | WAL-MART STORES INC | 57.720 | 167,504.00 | |
| 8/14 | 3,100 | | 42510 | HEWLETT PACKARD CO | 45.660 | 141,670.00 | |
| 8/14 | 6,500 | | 45926 | EXXON MOBIL CORP | 78.440 | 510,120.00 | |
| 8/14 | 1,700 | | 46819 | INTERNATIONAL BUSINESS MACHS | 127.930 | 217,549.00 | |
| | | | | CONTINUED ON PAGE  2 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

**DUPLICATE** FOR ACCOUNT JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182M
HOUSTON TX 77056

| PERIOD ENDING | PAGE | YOUR TAX PAYER IDENTIFICATION NUMBER | YOUR ACCOUNT NUMBER |
|---|---|---|---|
| 8/31/08 | 2 | ******0338 | 1-CM793-3-0 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 8/14 | 7,200 | | 51128 | INTEL CORP | 24.040 | 173,376.00 | |
| 8/14 | 3,500 | | 55437 | JOHNSON & JOHNSON | 71.210 | 249,375.00 | |
| 8/14 | 4,400 | | 59746 | JP MORGAN CHASE & CO | 40.530 | 178,508.00 | |
| 8/14 | 2,500 | | 64054 | COCA COLA CO | 55.310 | 138,375.00 | |
| 8/14 | 1,400 | | 68363 | MCDONALDS CORP | 64.860 | 90,860.00 | |
| 8/14 | 2,700 | | 72672 | MERCK & CO | 35.800 | 96,768.00 | |
| 8/14 | 9,900 | | 76981 | MICROSOFT CORP | 27.810 | 275,715.00 | |
| 8/14 | 4,900 | | 89908 | ORACLE CORPORATION | 23.160 | 113,680.00 | |
| 8/14 | 1,100 | | 90802 | APPLE INC | 170.050 | 187,099.00 | |
| 8/14 | 2,000 | | 94217 | PEPSICO INC | 69.060 | 138,200.00 | |
| 8/14 | 1,900 | | 95111 | ABBOTT LABORATORIES | 58.020 | 111,454.00 | |
| 8/14 | 8,400 | | 98526 | PFIZER INC | 19.800 | 166,655.00 | |
| 8/14 | 3,300 | | 99420 | AMERICAN INTL GROUP INC | 24.880 | 82,236.00 | |
| 8/14 | | 5,875,000 | 55544 | U.S. TREASURY BILL DUE 9/18/2008 | 99.829 | | 5,864,953.75 |
| 8/14 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV 09/14/08 | DIV | | 78.23 |
| 8/14 | 31,158 | | 51360 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 31,158.00 |
| 8/14 | 29,811 | | 61671 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | 29,811.00 | |
| | | | | NEW BALANCE | | 134,794.81 | |
| | 7,600 | | | SECURITY POSITIONS AT&T INC | MKT PRICE 31.990 | | |
| | | | | CONTINUED ON PAGE 3 | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**\*\*DUPLICATE\*\*  FOR ACCOUNT   JAMES  H  COHEN**
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  1824
HOUSTON          TX  77056

PERIOD ENDING: 8/31/08
YOUR TAX PAYER IDENTIFICATION NUMBER: \*\*\*\*\*\*\*0338
PAGE: 3
YOUR ACCOUNT NUMBER: 1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TXN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 1,900 | | | ABBOTT LABORATORIES | 57.430 | | |
| | 3,300 | | | AMERICAN INTL GROUP INC | 21.490 | | |
| | 1,400 | | | AMGEN INC | 62.050 | | |
| | 1,100 | | | APPLE INC | 169.530 | | |
| | 5,900 | | | BANK OF AMERICA | 31.140 | | |
| | 2,500 | | | CHEVRON CORP. | 86.320 | | |
| | 7,400 | | | CISCO SYSTEMS INC | 24.050 | | |
| | 6,900 | | | CITI GROUP INC | 18.990 | | |
| | 2,500 | | | COCA COLA CO | 52.070 | | |
| | 1,900 | | | CONOCOPHILLIPS | 82.510 | | |
| | 6,500 | | | EXXON MOBIL CORP | 80.010 | | |
| | 12,500 | | | GENERAL ELECTRIC CO | 28.100 | | |
| | 500 | | | GOLDMAN SACHS GROUP INC | 163.970 | | |
| | 300 | | | GOOGLE | 463.290 | | |
| | 3,100 | | | HEWLETT PACKARD CO | 46.920 | | |
| | 7,200 | | | INTEL CORP | 22.870 | | |
| | 1,700 | | | INTERNATIONAL BUSINESS MACHS | 121.730 | | |
| | 4,400 | | | J.P. MORGAN CHASE & CO | 38.490 | | |
| | 3,500 | | | JOHNSON & JOHNSON | 70.430 | | |
| | 2,700 | | | MCDONALDS CORP | 62.050 | | |
| | 1,200 | | | MERCK & CO | 35.670 | | |
| | 9,900 | | | MICROSOFT CORP | 27.290 | | |
| | 4,900 | | | ORACLE CORPORATION | 21.530 | | |
| | 2,000 | | | PEPSICO INC | 68.480 | | |
| | 8,400 | | | PFIZER INC | 19.110 | | |
| | | | | CONTINUED ON PAGE 4 | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

**\*\*DUPLICATE\*\* FOR ACCOUNT   JAMES H COHEN**
**BARRY E KAUFMAN, CPA**

5110 SAN FELIPE   182W
HOUSTON        TX  77056

PAGE 4

PERIOD ENDING 8/31/08

YOUR TAX PAYER IDENTIFICATION NUMBER ******0338

YOUR ACCOUNT NUMBER 1-CMT93-3-0

| BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| 2,600 | | PHILLIP MORRIS INTERNATIONAL | 53.700 | | |
| 3,800 | | PROCTER & GAMBLE CO | 69.770 | | |
| 2,000 | | QUALCOMM INC | 52.650 | | |
| 1,500 | | SCHLUMBERGER LTD | 94.220 | | |
| 29,811 | | FIDELITY SPARTAN | 1 | | |
| | | U.S. TREASURY MONEY MARKET | | | |
| 1,300 | | UNITED PARCEL SVC INC | 64.120 | | |
| | | CLASS B | | | |
| 1,200 | | UNITED TECHNOLOGIES CORP | 65.590 | | |
| 3,600 | | VERIZON COMMUNICATIONS | 35.120 | | |
| 2,900 | | WAL-MART STORES INC | 59.070 | | |
| 4,300 | | WELLS FARGO & CO NEW | 30.270 | | |
| | | | | | |
| | | MARKET VALUE OF SECURITIES | | | |
| | | LONG          SHORT | | | |
| | | 5,847,745.00 | | | |

Handwritten annotations:
5,993,145.50 July 31st
(41,370.50 Dwr
+ 107,070.49 long
(65,000.49 short
(170,050.) loss.
586,743.00 [initials]



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**\*\*DUPLICATE\*\* FOR ACCOUNT    JAMES H COHEN**
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON          TX   77056

PAGE  5

PERIOD ENDING  8/31/08

YOUR TAX PAYER IDENTIFICATION NUMBER  \*\*\*\*\*\*\*0338

YOUR ACCOUNT NUMBER  1-CM793-3-0

| DATE | BOUGHT / RECEIVED | SOLD / DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-------------------|------------------|-----|-------------|-----------------|-------------------------------|---------------------------------|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 24,669.72 |
| | | | | GROSS PROCEEDS FROM SALES | | | 22,791,284.39 |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON           TX  77056

PERIOD ENDING 8/31/08

PAGE 1

YOUR ACCOUNT NUMBER 1-CM793-4-0

YOUR TAX PAYER IDENTIFICATION NUMBER *******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 85,995.00 |
| 8/14 | 100 | | 81290 | S & P 100 INDEX SEPTEMBER 590 PUT | 11.100 | 111,100.00 | |
| 8/14 | | 100 | 85599 | S & P 100 INDEX SEPTEMBER 600 CALL | 16 | | 159,900.00 |
| | | | | NEW BALANCE | | | 134,795.00 |
| | | | | SECURITY POSITIONS | | | |
| | | 100 | | S & P 100 INDEX SEPTEMBER 600 CALL | MKT PRICE 6.500 | | |
| | 100 | | | S & P 100 INDEX SEPTEMBER 590 PUT | 10.400 | | |
| | | | | MARKET VALUE OF SECURITIES LONG    SHORT 104,000.00   65,000.00- | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON                    TX    77056

PERIOD ENDING 9/30/08

PAGE 1

YOUR TAX PAYER IDENTIFICATION NUMBER *******0338

YOUR ACCOUNT NUMBER 1-CM793-3-0

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 134,794.81 | |
| 9/02 | | | | WAL-MART STORES INC DIV 8/15/08 9/02/08 | DIV | | 608.75 |
| 9/09 | | | | JOHNSON & JOHNSON | DIV | | 1,610.00 |
| 9/09 | | | | DIV 8/26/08 9/09/08 UNITED PARCEL SVC INC CLASS B DIV 9/25/08 9/09/08 | DIV | | 585.00 |
| 9/10 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV 09/10/08 | DIV | | 31.68 |
| 9/10 | | | | CHEVRON CORP | DIV | | 1,625.00 |
| 9/10 | | | | UNITED TECHNOLOGIES CORP DIV 8/29/08 9/10/08 | DIV | | 384.00 |
| 9/10 | | 29,811 | 81902 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 29,811.00 |
| 9/10 | 19,242 | | 87242 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 19,242.00 | |
| 9/11 | 50,000 | | 90615 | U S TREASURY BILL DUE 12/18/2008 | 99.559 | 49,779.50 | |
| 9/11 | | | | MICROSOFT CORP DIV 8/21/08 9/11/08 | DIV | | 1,089.00 |
| | | | | CONTINUED ON PAGE 2 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE    182W
HOUSTON              TX    77056

PERIOD ENDING: 9/30/08
PAGE: 2
YOUR TAX PAYER IDENTIFICATION NUMBER: *******0338
YOUR ACCOUNT NUMBER: 1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|----------------------------------|
| 9/11 | 1,121 | | 91962 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 1,121.00 | |
| 9/16 | | | | MCDONALDS CORP DIV 9/02/08  9/16/08 | DIV | | 525.00 |
| 9/17 | 4,900 | | 8061 | ORACLE CORPORATION | 19.310 | 94,423.00 | |
| 9/17 | 1,100 | | 9256 | APPLE INC. | 150.770 | 165,803.00 | |
| 9/17 | 2,000 | | 12359 | PEPSICO INC. | 72.460 | 144,840.00 | |
| 9/17 | 1,900 | | 13554 | ABBOTT LABORATORIES | 58.960 | 111,948.00 | |
| 9/17 | 8,400 | | 16657 | PFIZER INC | 18.360 | 153,888.00 | |
| 9/17 | 3,300 | | 17844 | AMERICAN INTL GROUP INC | 15.290 | 50,325.00 | |
| 9/17 | 3,800 | | 20955 | PROCTER & GAMBLE CO | 72.780 | 276,412.00 | |
| 9/17 | 1,400 | | 22111 | AMGEN INC | 63.320 | 88,592.00 | |
| 9/17 | 2,600 | | 25253 | PHILLIP MORRIS INTERNATIONAL | 54.170 | 140,738.00 | |
| 9/17 | 5,900 | | 26399 | BANK OF AMERICA | 33.040 | 194,700.00 | |
| 9/17 | 2,000 | | 29551 | QUALCOMM INC | 48.390 | 97,700.00 | |
| 9/17 | 6,900 | | 30597 | CITI GROUP INC | 18.220 | 125,422.00 | |
| 9/17 | 1,500 | | 33049 | SCHLUMBERGER LTD | 87.210 | 130,755.00 | |
| 9/17 | 1,900 | | 34995 | CONOCOPHILLIPS | 72.510 | 137,693.00 | |
| 9/17 | 7,400 | | 38147 | AT&T INC | 31.370 | 231,108.00 | |
| 9/17 | 7,400 | | 39293 | CISCO SYSTEMS INC | 23.050 | 170,274.00 | |
| 9/17 | 1,300 | | 42444 | UNITED PARCEL SVC INC CLASS B | 67.860 | 88,166.00 | |
| 9/17 | 2,500 | | 43591 | CHEVRON CORP | 83.210 | 207,925.00 | |
| 9/17 | 1,200 | | 46712 | UNITED TECHNOLOGIES CORP | 63.720 | 76,416.00 | |
| 9/17 | 12,500 | | 47089 | GENERAL ELECTRIC CO | 27.440 | 342,500.00 | |
| | | | | CONTINUED ON PAGE 3 | | | |

**MADF BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON        TX 77056

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 9/30/08 | 1-CM793-3-0 | *******0338 | 3 |

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 9/17 | | 3,600 | 50964 | VERIZON COMMUNICATIONS | 34.570 | | 124,308.00 |
| 9/17 | | 300 | 52187 | GOOGLE | 432.200 | | 129,668.00 |
| 9/17 | | 4,300 | 55262 | WELLS FARGO & CO NEW | 33.390 | | 143,405.00 |
| 9/17 | | 500 | 56685 | GOLDMAN SACHS GROUP INC | 154.700 | | 77,330.00 |
| 9/17 | | 2,900 | 59560 | WAL-MART STORES INC | 62.470 | | 181,067.00 |
| 9/17 | | 3,100 | 60783 | HEWLETT PACKARD CO | 46.880 | | 145,204.00 |
| 9/17 | | 6,500 | 63858 | EXXON MOBIL CORP | 76.080 | | 494,260.00 |
| 9/17 | | 1,700 | 65088 | INTERNATIONAL BUSINESS MACHS | 118.800 | | 201,892.00 |
| 9/17 | | 7,200 | 69379 | INTEL CORP | 19.970 | | 143,496.00 |
| 9/17 | | 3,500 | 73577 | JOHNSON & JOHNSON | 71.550 | | 248,885.00 |
| 9/17 | | 2,400 | 77975 | J.P. MORGAN CHASE & CO | 60.930 | | 144,975.00 |
| 9/17 | | 1,700 | 82272 | COCA COLA CO | 53.790 | | 90,146.00 |
| 9/17 | | 1,400 | 85570 | MCDONALDS CORP | 64.430 | | 92,124.00 |
| 9/17 | | 2,700 | 89868 | MERCK & CO | 34.160 | | |
| 9/17 | | 9,900 | 92376 | MICROSOFT CORP | 27.320 | | 271,062.00 |
| 9/17 | 5,900,000 | | 92511 | US TREASURY BILL DUE 2/12/2009 | 99.5511 | 5,871,149.00 | |
| 9/17 | 12,397 | | 86874 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | 12,397.00 | |
| 9/19 | | | | AMERICAN INTL GROUP INC DIV 9/05/08 9/19/08 | DIV | | 726.00 |
| 9/26 | | | | BANK OF AMERICA DIV 9/05/08 9/26/08 | DIV | | 3,776.00 |
| 9/26 | | | | QUALCOMM INC DIV 8/29/08 9/26/08 | DIV | | 320.00 |

CONTINUED ON PAGE 4



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON          TX  77056

PERIOD ENDING: 9/30/08
PAGE: 4
YOUR ACCOUNT NUMBER: 1-CM793-3-0
YOUR TAXPAYER IDENTIFICATION NUMBER: *******033B

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 9/30 | | | | PEPSICO INC | DIV | | 850.00 |
| | | | | DIV 9/05/08. 9/30/08 | | | |
| 9/30 | 12,179 | | 94510 | FIDELITY SPARTAN | 1 | 12,179.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | NEW BALANCE | | 365,894.88 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 44,939 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 50,000 | | | U S TREASURY BILL | 99.941 | | |
| | | | | DUE 12/16/2008  12/18/2008 | | | |
| | 5,900,000 | | | U S TREASURY BILL | 99.610 | | |
| | | | | DUE 2/12/2009  2/12/2009 | | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | 5,971,899.50   LONG        SHORT | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE    182W
HOUSTON    TX    77056

PERIOD ENDING: 9/30/08
PAGE: 5
YOUR ACCOUNT NUMBER: 1-CM793-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 36,880.15 |
| | | | | GROSS PROCEEDS FROM SALES | | | 28,484,030.39 |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON              TX  77056

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

PERIOD ENDING: 9/30/08
PAGE: 1

YOUR TAX PAYER IDENTIFICATION NUMBER: ******0338
YOUR ACCOUNT NUMBER: 1-CM793-4-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 134,795.00 |
| 9/10 | 100 | | 71746 | S & P 100 INDEX SEPTEMBER 600 CALL | 1.050 | 10,600.00 | |
| 9/11 | | 100 | 76271 | S & P 100 INDEX SEPTEMBER 600 CALL | 5.100 | | 50,900.00 |
| 9/17 | 100 | | 3763 | S & P 100 INDEX SEPTEMBER 600 CALL | .900 | 9,100.00 | |
| 9/17 | | 100 | 99464 | S & P 100 INDEX SEPTEMBER 590 PUT | 20 | | 199,900.00 |
| | | | | NEW BALANCE | | | 365,895.00 |

**ERNARD L. MADOFF**
/ESTMENT SECURITIES LLC
ew York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

UPLICATE** FOR ACCOUNT    JAMES H COHEN
RY E KAUFMAN, CPA

0 SAN FELIPE    182W
STON        TX 77056

| PERIOD SHOWN | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 10/31/08 | ***********0338 | 1 |

| GHT / IVED | SOLD / DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | YOUR ACCOUNT NUMBER 1-CM793-3-0 | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | 365,894.88 | | |
| | | | COCA COLA CO | DIV | | | 950.00 |
| | | | DIV 9/15/08 10/01/08 | | | | |
| | | | HEWLETT PACKARD CO | DIV | | | 248.00 |
| | | | DIV 9/10/08 10/01/08 | | | | |
| | | | MERCK & CO | DIV | | | 1,026.00 |
| | | | DIV 9/05/08 10/01/08 | | | | |
| | | | SCHLUMBERGER LTD | DIV | | | 315.00 |
| | | | DIV 9/03/08 10/03/08 | | | | |
| | | | PHILIP MORRIS INTERNATIONAL | DIV | | | 1,404.00 |
| | | | DIV 9/15/08 10/10/08 | | | | |
| 3,943 | | 7034 | FIDELITY SPARTAN | 1 | 3,943.00 | | |
| | | | U S TREASURY MONEY MARKET | | | | |
| | | | NEW BALANCE | | 365,894.88 | | |
| | | | SECURITY POSITIONS | MKT PRICE | | | |
| 48,882 | | | FIDELITY SPARTAN | 1 | | | |
| | | | U S TREASURY MONEY MARKET | | | | |
| 50,000 | | | U S TREASURY BILL | 99.923 | | | |
| | | | DUE 12/18/2008 | | | | |
| | | | 12/18/2008 | | | | |
| 900,000 | | | U S TREASURY BILL | 99.879 | | | |
| | | | DUE 2/12/2009 | | | | |
| | | | 2/12/2009 | | | | |
| | | | MARKET VALUE OF SECURITIES | | | | |
| | | | LONG          SHORT | | | | |
| | | | 5,991,704.50 | | | | |

$991,899.50 − oct 31st

19805.00

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE**    FOR ACCOUNT    JAMES H COHEN
C/O JERRY E KAUFMAN, CPA
2220 SAN FELIPE 182W
HOUSTON    TX  77056

| PAGE |
|------|
| 2 |

| PERIOD ENDING |
|---------------|
| 10/31/08 |

| YOUR TAX PAYER IDENTIFICATION NUMBER |
|--------------------------------------|
| ******033B |

| YOUR ACCOUNT NUMBER |
|---------------------|
| 1-CM793-3-0 |

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | YEAR-TO-DATE SUMMARY | | | |
| | | | DIVIDENDS | | | 40,823.15 |
| | | | GROSS PROCEEDS FROM SALES | | | 28,484,030.39 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
RY E KAUFMAN, CPA
0 SAN FELIPE   182W
STON      TX   77056

| PERIOD ENDING | YOUR ACCOUNT NUMBER | PAGE |
|---|---|---|
| 10/31/08 | 1-CM793-4-0 | 1 |

YOUR TAX PAYER IDENTIFICATION NUMBER ******0338

| SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| | | BALANCE FORWARD | | | 365,895.00 |
| | | NEW BALANCE | | | 365,895.00 |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT
BARRY E KAUFMAN, CPA

JAMES H COHEN

5110 SAN FELIPE   182N
HOUSTON        TX   77056

PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0338
PAGE: 1
YOUR ACCOUNT NUMBER: 1-CM793-4-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 365,895.00 |
| 11/12 | | 131 | 42130 | S & P 100 INDEX | 15.800 | | 206,849.00 |
| 11/12 | 131 | | 46464 | NOVEMBER 460 CALL | 17.800 | 233,311.00 | |
| 11/19 | | 131 | 32569 | S & P 100 INDEX | | | 340,469.00 |
| | | | | NOVEMBER 450 PUT | 26 | | |
| 11/19 | 131 | | 36894 | S & P 100 INDEX | 30 | 393,131.00 | |
| | | | | DECEMBER 430 CALL | | | |
| 11/19 | | 131 | 41229 | S & P 100 INDEX | 3 | 39,431.00 | |
| | | | | DECEMBER 420 PUT | | | |
| 11/19 | 131 | | 45544 | S & P 100 INDEX | 37 | | 484,569.00 |
| | | | | NOVEMBER 450 PUT | | | |
| | | | | NEW BALANCE | | | 731,909.00 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | 131 | | S & P 100 INDEX | 23.300 | | |
| | | | | DECEMBER 430 CALL | | | |
| | 131 | | | S & P 100 INDEX | 16.500 | | |
| | | | | DECEMBER 420 PUT | | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG                    SHORT | | | |
| | | | | 216,150.00      305,230.00- | | | |



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182M
HOUSTON          TX   77056

PAGE 1
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER ******0338
YOUR ACCOUNT NUMBER 1-CMT93-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 365,894.88 | |
| 11/12 | 3,406 | | 2703 | WAL-MART STORES INC | 55.830 | 190,292.98 | |
| 11/12 | 2,227 | | 3205 | INTERNATIONAL BUSINESS MACHS | 87.270 | 194,439.29 | |
| 11/12 | 8,253 | | 7029 | EXXON MOBIL CORP | 72.680 | 601,808.64 | |
| 11/12 | 9,039 | | 7931 | INTEL CORP | 14.510 | 131,516.89 | |
| 11/12 | 4,323 | | 11857 | JOHNSON & JOHNSON | 59.580 | 257,736.34 | |
| 11/12 | 5,899 | | 16183 | J.P. MORGAN CHASE & CO | 38.530 | 227,369.35 | |
| 11/12 | 3,144 | | 20508 | COCA COLA CO | 44.660 | 140,535.04 | |
| 11/12 | 1,834 | | 24834 | MCDONALDS CORP | 55.370 | 101,621.58 | |
| 11/12 | 3,406 | | 29160 | MERCK & CO | 28.590 | 97,377.30 | |
| 11/12 | 12,445 | | 33486 | MICROSOFT CORP | 21.810 | 271,922.45 | |
| 11/12 | 6,288 | | 37812 | ORACLE CORPORATION | 17.300 | 109,033.40 | |
| 11/12 | 2,489 | | 50790 | PEPSICO INC | 56.410 | 140,503.49 | |
| 11/12 | 1,441 | | 51292 | APPLE INC | 100.780 | 145,280.98 | |
| 11/12 | 10,611 | | 55116 | PFIZER INC | 16.940 | 180,117.34 | |
| 11/12 | 2,489 | | 55618 | ABBOTT LABORATORIES | 54.610 | 136,023.29 | |
| 11/12 | 4,716 | | 59442 | PROCTER & GAMBLE CO | 64.080 | 302,389.28 | |
| 11/12 | 1,703 | | 59944 | AMGEN INC | 59.160 | 100,817.40 | |
| 11/12 | 3,275 | | 63768 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 142,921.00 | |
| 11/12 | 7,860 | | 64270 | BANK OF AMERICA | 21.590 | 170,011.40 | |
| 11/12 | 2,620 | | 68094 | QUALCOMM INC | 33.370 | 88,581.40 | |
| 11/12 | 8,515 | | 68596 | CITI GROUP INC | 12.510 | 106,862.65 | |
| 11/12 | 1,965 | | 72420 | SCHLUMBERGER LTD | 49.480 | 97,306.20 | |
| 11/12 | 4,716 | | 72922 | COMCAST CORP CL A | 16.510 | 78,049.16 | |

CONTINUED ON PAGE 2

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182W
HOUSTON      TX   77056

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 2 |

YOUR ACCOUNT NUMBER: 1-CM793-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0338

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 9,301 | | 76746 | AT&T INC | 27 | 251,499.00 | |
| 11/12 | 2,358 | | 77248 | CONOCOPHILIPS | 52,510 | 123,912.58 | |
| 11/12 | 1,572 | | 81072 | UNITED PARCEL SVC INC CLASS B | 52,040 | 81,868.88 | |
| 11/12 | 9,563 | | 81574 | CISCO SYSTEMS INC | 16,730 | 160,370.99 | |
| 11/12 | 2,751 | | 85398 | U.S.BANCORP | 29,530 | 81,347.03 | |
| 11/12 | 3,275 | | 85900 | CHEVRON CORP | 73,430 | 240,614.25 | |
| 11/12 | 1,572 | | 89724 | UNITED TECHNOLOGIES CORP | 53,160 | 83,629.52 | |
| 11/12 | 16,637 | | 90226 | GENERAL ELECTRIC CO | 19,630 | 327,249.31 | |
| 11/12 | 4,454 | | 94050 | VERIZON COMMUNICATIONS | 30,410 | 135,624.14 | |
| 11/12 | 393 | | 94552 | GOOGLE | 337,400 | 132,613.20 | |
| 11/12 | 5,502 | | 98376 | WELLS FARGO & CO NEW | 29,800 | 164,179.60 | |
| 11/12 | 3,930 | | 98878 | HEWLETT PACKARD CO | 34,900 | 137,314.00 | |
| 11/12 | | 50,000 | 19845 | U S TREASURY BILL DUE 12/18/2008 | 99,942 | | 49,971.00 |
| 11/12 | | 5,900,000 | 20989 | U S TREASURY BILL DUE 12/18/2008 12/18/2008 | 99,936 | | 5,896,224.00 |
| 11/12 | | | | FIDELITY SPARTAN 2/12/2009 U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 48.64 |
| 11/12 | | 48,882 | 16087 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 48,882.00 |
| 11/12 | 35,866 | | 25456 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 35,865.00 | |
| | | | | CONTINUED ON PAGE 3 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA
5110 SAN FELIPE 182W
HOUSTON   TX   77056

PAGE: 3
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: *******0338
YOUR ACCOUNT NUMBER 1-CM793-3-0

| DATE | BOUGHT (Received) | SOLD (Delivered) | TIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV | DIV | | 4,440 |
| 11/19 | | 35,866 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | 1 | | 35,866.00 |
| 11/19 | 425,000 | | 50728 | FIDELITY SPARTAN U S TREASURY MONEY MARKET U S TREASURY BILL DUE 03/26/2009 | 99.926 | 424,685.50 | |
| 11/19 | 3,661 | | 55360 | FIDELITY SPARTAN U S TREASURY BILL 3/26/2009 | | | |
| 11/19 | 3,661 | | 59767 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 3,661.00 | |
| | | | | NEW BALANCE | | 731,908.77 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 9,201 | | | AT&T INC | 28.560 | | |
| | 2,489 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 1,703 | | | AMGEN INC | 55.540 | | |
| | 1,441 | | | APPLE INC | 92.670 | | |
| | 7,860 | | | BANK OF AMERICA | 16.250 | | |
| | 3,275 | | | CHEVRON CORP | 79.010 | | |
| | 9,563 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 8,515 | | | CITIGROUP INC | 8.290 | | |
| | 3,144 | | | COCA COLA CO | 42.870 | | |
| | 4,716 | | | COMCAST CORP CL A | 17.340 | | |

CONTINUED ON PAGE 4



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE  182W
HOUSTON            TX  77056

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE | YOUR ACCOUNT NUMBER |
|---|---|---|---|
| 11/30/08 | *****0338 | 4 | 1-CM793-3-0 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 2,358 | | | CONOCOPHILIPS | 52.520 | | |
| | 8,253 | | | EXXON MOBIL CORP | 80.150 | | |
| | 16,637 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | 3,393 | | | GOOGLE | 292.960 | | |
| | 3,930 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 9,039 | | | INTEL CORP | 13.800 | | |
| | 2,227 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 5,895 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 4,323 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 1,834 | | | MCDONALDS CORP | 58.750 | | |
| | 3,406 | | | MERCK & CO | 26.720 | | |
| | 12,445 | | | MICROSOFT CORP | 20.220 | | |
| | 6,288 | | | ORACLE CORPORATION | 16.090 | | |
| | 2,489 | | | PEPSICO INC | 56.700 | | |
| | 10,611 | | | PFIZER INC | 16.430 | | |
| | 3,275 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 4,716 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 2,620 | | | QUALCOMM INC | 33.570 | | |
| | 11,965 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 3,661 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 2,751 | | | U.S.BANCORP | 26.980 | | |
| | 1,572 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 425,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009  3/26/2009 | | | |

CONTINUED ON PAGE 5



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC

New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT  JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE 182W
HOUSTON        TX  77056

PAGE 5

PERIOD ENDING 11/30/08

YOUR TAX PAYER IDENTIFICATION NUMBER ******0338

YOUR ACCOUNT NUMBER 1-CM793-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|--------------------------------|
| | 1,572 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | 4,454 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 3,406 | | | WAL-MART STORES INC | 55.880 | | |
| | 5,502 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG | | | |
| | | | | SHORT | | | |

6,200,173.74 Long
216,580.4 Short
305,230.51 Cash

7,110,637.0
149,701.50 approx

119,587.24 port.-increase



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   JAMES H COHEN
BARRY E KAUFMAN, CPA

5110 SAN FELIPE   182M
HOUSTON   TX 77056

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 11/30/08 | 1-CM793-3-0 | ******0338 | 6 |

| DATE | BOUGHT / RECEIVED | SOLD / DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 40,876.19 |
| | | | | GROSS PROCEEDS FROM SALES | | | 34,430,225.39 |

# EXHIBIT 23

National Brand    45-505  Eye-Ease®    45-305  2-Pack    Made in USA

James H. Cohen Special Trust

Fidelity  243-207193

CHECK REGISTER

| | 2003 | Description | Check # | Check Amount | Deposit | Income Reinvest | Balance | |
|---|---|---|---|---|---|---|---|---|
| 1 | 4/18 | DEPOSIT | | | 1800000 00 | | | 1 |
| 2 | | MA 650,000 | | | | | | 2 |
| 3 | | BK 500,000 | | | | | | 3 |
| 4 | | JC 650,000 | | | | | | 4 |
| 5 | 30 | | | | | 9360 | | 5 |
| 6 | | VOID | 1001 | | | | | 6 |
| 7 | 5/12 | Bernard L. Madoff | 1002 | 1,800000 00 | | | | 7 |
| 8 | | Investment Securities LLC | | | | | | 8 |
| 9 | 16 | American Express | | | | | | 9 |
| 10 | | for FedEx | 1003 | 2804 | | | 6556 | 10 |
| 11 | 20 | | | | | 62827 | 67383 | 11 |
| 12 | 6/30 | | | | | 41 | | 12 |
| 13 | 7/31 | | | | | 30 | | 13 |
| 14 | 8/29 | | | | | 30 | | 14 |
| 15 | 9/30 | | | | | 32 | | 15 |
| 16 | 10/31 | | | | | 35 | | 16 |
| 17 | 11/28 | | | | | 38 | | 17 |
| 18 | 12/31 | | | | | 40 | 69629 | 18 |
| 19 | | | | | | | | 19 |
| 20 | 2004 | | | | | | | 20 |
| 21 | 1/30 | | | | | 35 | | 21 |
| 22 | 2/09 | | | | | 31 | | 22 |
| 23 | 3/31 | | | | | 33 | 67728 | 23 |
| 24 | 4/30 | | | | | 36 | | 24 |
| 25 | 5/28 | | | | | 39 | | 25 |
| 26 | 6/30 | | | | | 38 | | 26 |
| 27 | 7/30 | | | | | 38 | | 27 |
| 28 | 8/31 | | | | | 45 | | 28 |
| 29 | 9/30 | | | | | 56 | | 29 |
| 30 | 10/29 | | | | | 75 | | 30 |
| 31 | 11/30 | | | | | 72 | | 31 |
| 32 | 12/23 | A. Garfield | | | 125000 00 | | | 32 |
| 33 | 23 | M. Garfield | | | 125000 00 | | | 33 |
| 34 | 23 | R. Bennken | | | 125000 00 | | | 34 |
| 35 | 23 | E. Helberg | | | 125000 00 | | 500070 27 | 35 |
| 36 | 30 | Bernard L. Madoff | 1026 | 500000 00 | | | 721 27 | 36 |
| 37 | | Investment Securities, LLC | | | | | | 37 |
| 38 | 31 | | | | | 10449 | 80576 | 38 |
| 39 | | | | | | | | 39 |
| 40 | | | | | | | | 40 |

National Brand  45-605 Eye-Ease  45-305 2-Pack  Made in USA

James H. Cohen Special Trust
Fidelity Z 43 30 4 793
Check Register

| | | | Prepared By | Initials | Date |
| | | | Approved By | | |

| | Description | Check # | Amount | Deposit | Income Re Investment | Balance 2 |
|---|---|---|---|---|---|---|
| 2005 | | | | | | |
| 1 | Balance Brought Forward | | | | | 80576 |
| 2 | void | 1004 | | | | |
| 3 | void | 1005 | | | | |
| 4 | 1 | Betty E. Kaufman | 1006 | 7442 | | | |
| 5 | James H. Cohen | 1007 | 9678 | | | |
| 6 | Morrie K. Aronson | 1008 | 9678 | | | 53778 |
| 7 | 31 | | | | 6596 | 60374 |
| 8 | 2 28 | | | | 68 | |
| 9 | 3 31 | | | | 78 | |
| 10 | 4 14 | Alan Garfield | | | 100000 00 | |
| 11 | 22 | JHC Trust MC | | | 300000 00 | |
| 12 | 27 | Bernard L. Madoff Sec. | 1009 | 400000 00 | | |
| 13 | 29 | | | | 22816 | |
| 14 | 5 31 | | | | 173 | |
| 15 | 6 23 | Alan Garfield | 1004 | | 100000 00 | |
| 16 | for Marlon G. | | | | | |
| 17 | 23 | Robyn C. Berniker | 2090 3683 | | 100000 00 | |
| 18 | 23 | " | 2090 3684 | | 100000 00 | |
| 19 | 24 | Erin Hellberg | 3748 9629 | | 100000 00 | |
| 20 | 28 | Bernard L. Madoff | | | | |
| 21 | Investment Securities LLC | 1010 | 300000 00 | | | |
| 22 | 28 | " | 1011 | 100000 00 | | |
| 23 | 27 | | | | 14586 | |
| 24 | 7 14 | Marion Garfield | 1012 | 1180 | | |
| 25 | 14 | Erin Hellberg | 1013 | 1179 | | |
| 26 | 14 | Robyn C. Berniker | 1014 | 2359 | | |
| 27 | 29 | | | | 159 | |
| 28 | 8 31 | | | | 165 | |
| 29 | 9 30 | | | | 166 | |
| 30 | 10 31 | | | | 182 | |
| 31 | 11 30 | | | | 191 | |
| 32 | 12 23 | First Trust TTEE FBO | 1003 2327279 | | 550000 00 | |
| 33 | Betty Kaufman IRA | | | | | |
| 34 | 29 | Bernard L. Madoff | | | | |
| 35 | Investment Securities LLC | 1015 | 550000 00 | | | |
| 36 | 30 | | | | 2456 | |
| 37 | | | | | 47636 | 96596 |
| 38 | | | | | | |
| 39 | | | | | | |
| 40 | | | | | | |

National Brand  45-605 Eye-Ease®  45-305 2-Pack  Made in USA

James P. Cohen - Special Trust
243307793
Check Register

| | | Description | Check # | Amount | Deposit | Income Reimbursement | Balance |
|---|---|---|---|---|---|---|---|
| | 2006 | | | | | | |
| 1 | | Balance Brought Forward | | | | | 96676 |
| 2 | 1/31 | | | | | | 4126 |
| 3 | 2/28 | | | | | | 204 |
| 4 | 3/10 | Karen Knupp/secy Exp. | 1016 | 5000 | | 3/31 | 222 |
| 5 | 4/28 | | | | | | 230 |
| 6 | 5/31 | | | | | | 247 |
| 7 | 6/27 | The MEE Fox MC Trust | 1016 | | 12500000 | | |
| 8 | 27 | Bernard L. Madoff Inv Sec | 1017 | 12500000 | | 6/30 | 3818 |
| 9 | 7/31 | | | | | | 6157 |
| 10 | 8/31 | | | | | | 276 |
| 11 | 9/29 | | | | | | 269 |
| 12 | 10/31 | | | | | | 277 |
| 13 | 11/30 | | | | | | 274 |
| 14 | 12/18 | Alan Gotfield | | | 10000000 | | |
| 15 | 26 | BK Interest LLC | 1003270502 | | 10320000 | | |
| 16 | 28 | Bernard L. Madoff Inv Sec | 1018 | 20320000 | | | |
| 17 | 29 | | | | | 17384 | 122180 |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | 2007 | | | | | | |
| 21 | 1/31 | | | | | | 4197 |
| 22 | 2/28 | | | | | | 312 |
| 23 | 3/30 | | | | | | 346 |
| 24 | 4/4 | Karen Knupp/secy Exp | 1019 | 10000 | | 4/30 | 231 |
| 25 | 5/31 | | | | | | 345 |
| 26 | 6/28 | Wire Tfr from Benny Kaufman | | | 15000000 | | |
| 27 | 29 | Bernard L. Madoff Inv Sec | 1020 | 15000000 | | | |
| 28 | 29 | | | | | | 3073 |
| 29 | 7/31 | | | | | | 3095 |
| 30 | 8/31 | | | | | | 347 |
| 31 | 9/28 | | | | | | 349 | 124525 |
| 32 | 10/31 | | | | | | 337 |
| 33 | 11/30 | | | | | | 319 |
| 34 | 12/26 | Gotfield Development | 858255755 | | 2500000 | | |
| 35 | 26 | for Marion Gotfield | | | | | |
| 36 | 26 | 864 W.F. Corp | 858255756 | | 5000000 | | |
| 37 | | for Alan Granfield | | | | | |
| 38 | 26 | Westend Ave. Equities | 858255757 | | 5000000 | | |
| 39 | | for Erin Helberg | | | | | |
| 40 | 26 | Bernard L. Madoff Inv Sec | 1021 | 12500000 | | | |
| | | Garfields | | | | | |

| | | Description | Check # | Amount | Deposit | Income Reinvestment | Balance | 4 |
|---|---|---|---|---|---|---|---|---|
| 1 | 12 31 | Wire fm B. Kaufman | | | 10000000 | | | 1 |
| 2 | 31 | Bernard L. Madoff | 1022 | 10000000 | | | | 2 |
| 3 | | Invest Securities llc | | | | | | 3 |
| 4 | | / Barry Kaufman | | | | | | 4 |
| 5 | 31 | Loan from Trustee | Return uncleared checks | | 2500000 | | | 5 |
| 6 | 31 | | | | | 5589 | | 6 |
| 7 | 11 30 | Capital Gain | | | | 01 | 2630771 | 7 |
| 8 | | | | | | | | 8 |
| 9 | | | | | | | | 9 |
| 10 | | | | | | | | 10 |
| 11 | | | | | | | | 11 |
| 12 | | | | | | | | 12 |
| 13 | | | | | | | | 13 |
| 14 | | | | | | | | 14 |
| 15 | | | | | | | | 15 |
| 16 | | Repaid 1/2/08 | | | | | | 16 |
| 17 | | | | | | | | 17 |
| 18 | | | | | | | | 18 |
| 19 | | | | | | | | 19 |
| 20 | | | | | | | | 20 |

National Brand  45-605 Eye-Ease  45-305 2-Pack  Made In USA

James H. Cohen Special Trust
Fidelity Check Register
243 307793

| | 2008 | Description | Check # | Amount | Deposit | Income Reinvestment | Balance |
|---|---|---|---|---|---|---|---|
| 1 | | Balance Brought Forward | | | | | 2430771 |
| 2 | 1 2 | Repay loan to trustee Fidelity Rtr | | 2500000 | | | |
| 3 | 31 | | | | | 2350 | |
| 4 | 2 29 | | | | | 211 | |
| 5 | 3 19 | Karen Knopp Sec Exp 6023 | | | 10000 | | |
| 6 | 31 | | | | | 252 | |
| 7 | 4 30 | | | | | 178 | |
| 8 | 5 30 | | | | | 185 | |
| 9 | 6 30 | | | | | 137 | 1114084 |
| 10 | 7 31 | | | | | 141 | |
| 11 | 8 29 | | | | | 151 | |
| 12 | 9 30 | | | | | 285 | |
| 13 | 10 31 | | | | | 195 | |
| 14 | 11 28 | | | | | 56 | 1249112 |