## **EXHIBIT A**

There are three factual scenarios that will arise in the "net equity" litigation. The goal of the Trustee is to have each of the scenarios represented in the Net Equity Dispute. The three scenarios include:

1) "Net Winner" – A customer that deposited funds with BLMIS, but withdrew more funds from BLMIS than the customer deposited. Thus, the customer received payments constituting a full return of her principal investment, plus some amount of fictitious profits generated by BLMIS. In other words, this customer received more money from the BLMIS ponzi scheme than she put into the BLMIS ponzi scheme. Although she has already withdrawn all of her principal, this customer is claiming the fictitious amount stated on her November 30, 2008 fictitious account statement.

2) "Over-the-Limits Net Losers that have Received Full SIPC Protection" – under the cash in/cash out approach, customers that withdrew less money from BLMIS than they deposited are entitled to an allowed claim for the amount that they invested less the amount that they have withdrawn from BLMIS. The net difference is the customer's "net equity." The customer will receive a pro rata share of any customer property based upon her net equity. These customers will have net equities that are more than their share of customer property, plus the maximum SIPC advance of $500,000. Although their claims should be based on their net equity as measured by the net amount invested, these claimants assert that the amount of their net equity should be the fictitious amount shown on their November 30, 2008 fictitious account statement. This scenario also includes the claimant who argues that the claim for the fictitious amount should be satisfied in securities and not cash.

For example, assume that a customer invests $1,100,000 with BLMIS and subsequently withdraws $100,000. Her net equity therefore is $1 million. Assume that the customer's November 30, 2008 customer statement shows a balance of $2,000,000 in the customer's account. The Trustee asserts that the customer is entitled to a pro rata share of customer property based on a net equity of $1 million. To the extent that there is not enough customer property to make the customer whole, SIPC advances up to $500,000 for the customer. In this hypothetical, we assume that the customer is still owed money after she has received her share of customer property and the SIPC advance. Because her claim is more than the limit of SIPC protection, she is an "over-the-limits" claimant. Incorrectly believing that it will result in her recovering more money, this claimant alleges that her net equity should be based on the $2 million shown in her fictitious account statement and that she should receive a pro rata share of customer property based on a $2 million claim in addition to the SIPC advance of $500,000.

3) "Net Losers that have not received a full $500,000 in SIPC Protection" – This is the same situation as number 2 above, except that the net amount deposited by the customer (the customer's net equity) is less than $500,000, but the fictitious customer account statement shows a balance of more than $500,000.

For example, the customer deposits $550,000 with BLMIS but withdraws $50,000. Her net equity is the difference or $500,000. Her share of customer property is a fraction based on a net equity of $500,000. Assume that the customer's share of customer property is $300,000. With a SIPC advance of $200,000, the customer is made whole. However, the customer's fictitious account statement shows a fictitious balance of $3 million. In order to increase the amount of protection received from SIPC and because she incorrectly believes that it also will increase the amount of customer property that she is entitled to, the customer asserts that the amount owed to her is $3 million.

095879, 300027879