1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------
In the Matter of:                    )      *800-8178 288*
                                     )
NEW TIMES SECURITIES                 )
SERVICES, INC.                       )
                                     )
          Debtor                     )
                                     )
-------------------------------

1) Application filed by proposed class claimants to
authorize and approve the filing of a class proof of claim
and for a certification of the putative class and to
shorten time for the hearing

Memorandum by proposed class claimants

Memorandum by Plaintiff Securities Investor Protection
Corporation

Memorandum of law by Trustee James W. Giddens

Affidavit of Derek J. T. Adler in opposition

                              United States Bankruptcy
                              Court
                              Westbury, New York

                              July 28, 2000
                              10:00 a.m.

B E F O R E:

          HONORABLE STAN BERNSTEIN
          United States Bankruptcy Judge

A P P E A R A N C E S:

     HUGHES HUBBARD & REED LLP
          Attorney for James W. Giddens, Trustee
     One Battery Park Plaza
     New York, New York  10004
          BY:   JAMES W. KOBAK, JR, ESQ.
                DANIEL S. LUBELL, ESQ.


     (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

2

APPEARANCES (Contd.)

STEPHEN P. HARBECK, ESQ.
     General Counsel and Secretary
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, D.C.  20005


FARRELL FRITZ
     Co-Counsel for Class Claimants and
     Putative Class Plaintiffs
EAB Plaza
Uniondale, New York  11556
     BY:  TED A. BERKOWITZ, ESQ.


HELLER HOROWITZ & FEIT, P.C.
     Co-Counsel for Class Claimants and
     Putative Class Plaintiffs
292 Madison Avenue
New York, New York  10017
     BY:  SIGMUND S. WISSNER-GROSS. ESQ.
          ALAN EISENBERG, ESQ.


RICHARD L. STONE, ESQ.
     Receiver for New Age Financial Services
830 Third Avenue
New York, New York  10022


SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
7 World Trade Center
New York, New York  10048   .
     BY:  ALISTAIRE BAMBACH, ESQ.

```
1                    P R O C E E D I N G S
2              THE CLERK:  The next matter is New Times
3    Securities Services.
4              (Pause)
5              THE COURT:  All right, gentlemen, let's have
6    your appearances, please.
7              I'd say on behalf of the SIPC Trustee, but I
8    would get a four-page letter denouncing my lack of
9    sophistication and my failure to appreciate that the SIPC
10   Trustee is not really the SIPC Trustee, but the SIPC
11   Trustee is the Debtor's Trustee.
12             (Pause)
13             THE COURT:  Let's have your appearances,
14   please, starting with the Trustee for the Debtor.
15             MR. KOBAK:  James B. Kobak, Junior, Hughes
16   Hubbard and Reid.  And, with me is Dan Lubell.
17             THE COURT:  Okay.
18             MR. LUBELL:  Dan Lubell, from Hughes Hubbard
19   and Reed, on behalf of James. W. Giddens, the Trustee of
20   New Times Securities Services, Inc.
21             THE COURT:  Does Mr. Miller know that you're
22   not spending all of your time working for him?
23             MR. LUBELL:  I'm not sure who you mean, Mr.
24   Miller.
25             THE COURT:  Who's the -- who's the Trustee in
```

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1        A. R. Baron?

2                MR. LUBELL:  Oh, that's Mr. Giddens, as well.

3                THE COURT:  Oh, also -- oh, I see.  I thought

4        you were working for Mr. Miller.  He's the Trustee in some

5        case?  Which is that.

6                MR. KOBAK:  That would be Stratton Oakmont.

7                THE COURT:  Oh, okay.  Oh, you didn't get that

8        one?  Okay.

9                All right, so we have Mr. Lubell, Mr. Kobak,

10       counsel for Mr. Giddens, the partner of Hughes Hubbard and

11       Reed who is acting as the Trustee in this case.

12               And, who else do we have?

13               MR. HARBECK:  Good morning, Your Honor.  I am

14       Steve Harbeck.  I am the General Counsel for the

15       Securities Investor Protection Corporation.

16               THE COURT:  Oh, boy, we brought the brass.

17       Okay.

18               MR. HARBECK:  Well, Your Honor, the worst thing

19       that can --

20               THE COURT:  What happened -- Miss Caplan is on

21       vacation, okay.

22               MR. HARBECK:  The worst thing that can happen

23       to a General Counsel is that the associate goes on

24       vacation.

25                       [Laughter]

                 (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1                    THE COURT:  Mr. Berkowitz?

2                    MR. BERKOWITZ:  Good morning, Judge.  Ted

3    Berkowitz, from Farrell Fritz, co-counsel to the Class

4    Representatives and Putative Class Plaintiffs.

5                    THE COURT:  Okay.  Who else is here?

6                    MR. WISSNER-GROSS:  Good morning.  Sigmund

7    Wissner-Gross, co-counsel with Mr. Berkowitz to the Class

8    Plaintiffs and the Proposed Class Representatives.

9                    THE COURT:  All right.  It's Wissner-Gross?

10                   MR. WISSNER-GROSS:  Wissner-Gross.

11                   THE COURT:  Wissner-Gross, all right, thank

12   you.

13                   MR. WISSNER-GROSS:  And, along with me is Alan

14   Eisenberg of my firm.

15                   THE COURT:  Okay.

16                   MR. STONE:  Good morning, Your Honor.  Richard

17   Stone, receiver for New Age Financial Services.

18                   (Pause)

19                   MS. BAMBACH:  Good morning, Judge Bernstein.

20   Alistaire Bambach, from the Securities and Exchange

21   Commission, Northeast Regional Office.

22                   THE COURT:  It's Bambach?

23                   MS. BAMBACH:  Yes, sir.

24                   THE COURT:  All right.

25                   MR. BERKOWITZ:  Your Honor, as a preliminary

1    matter, we do have reply papers, and I know you made a

2    reference to --

3            THE COURT:  Oh, was that -- were you there?  I

4    didn't realize you were listening.

5            MR. BERKOWITZ:  -- to that, but we have

6    endeavored, in the thirty-six hours that we've had an

7    opportunity to review the papers submitted both by SIPC

8    and the Trustee, we have put together a reply memorandum

9    of law and an affidavit of Mr. Wissner-Gross.

10           Your Honor, I'd like to hand these up --

11           THE COURT:  Fine.

12           MR. BERKOWITZ:  -- if I may, and I would like

13   to request that we just take a brief period of time to

14   have Your Honor --

15           THE COURT:  No, no, no.  I'm not doing that.

16           I want to address all of you.  We could do it

17   - -

18           MR. BERKOWITZ:  In addition, --

19           THE COURT:  -- I could it in chambers, or I

20   could do it on the record or off the record.  So, rather

21   than schleppe you all into chambers, I'm going to shut off

22   the microphones, and I'm going to talk to you off the

23   record, --

24           MR. BERKOWITZ:  Okay, very good.

25           THE COURT:  -- and then we'll go back on the

1       record.

2                   MR. BERKOWITZ:  Judge, in addition, there is

3       the -- but, these are the back-up documents --

4                   THE COURT:  All right.

5                   MR. BERKOWITZ:  -- for each of the Class Reps,

6       which we --

7                   THE COURT:  Okay.

8                   MR. BERKOWITZ:  -- are submitting in response

9       to the comments made in the objections.

10                  THE COURT:  Okay.

11                  [OFF THE RECORD]

12                  THE COURT:  We've just had an opportunity to

13      discuss this matter in an overall view, so that counsel

14      can understand how the Court's likely to approach this

15      matter.  I did it off the record in order to be candid.

16                  I recognize this is a very difficult issue.  I

17      know it's being presented to the Court on a very, very

18      accelerated track that I would not normally entertain but

19      for a concern that a notice was sent, setting a bar date,

20      under a provision of the Bankruptcy Code applicable to

21      SIPC that seems to draw a distinction between filing

22      claims within sixty days and filing claims within six

23      months.  And, the first issue I want to focus on is

24      whether or not there is a material difference between the

25      sixty-day rule and the six-month rule.  And, if a

1    customer, as defined under the SIPC proceeding, doesn't

2    file his, her, their, or its claim within the sixty-day

3    period, what rights, if any, that can be translated into

4    dollars, will be lost?

5           And so, in that sense, I'm going to ask Mr.

6    Giddens or Mr. Kobak or any of the persons from Hughes

7    Hubbard and Reed who are prepared to address this, to

8    explain to me, as precisely and as patiently as they can,

9    what the difference is between the sixty days and the six

10   months, in terms of any conceivable prejudice to any

11   creditor of this estate.

12          MR. KOBAK:  Your Honor, I'm actually going to

13   make my job easier and refer that question to Mr. Harbeck,

14   if I may, --

15          THE COURT:  Okay, fine.

16          MR. KOBAK:  -- because I think he's the person

17   here who's most familiar with the history of SIPC and so

18   forth and those provisions.

19          THE COURT:  Okay.

20          MR. KOBAK:  I would like to inform everybody of

21   the most recent figures, with respect to claims that have

22   been filed.

23          THE COURT:  Okay.

24          MR. KOBAK:  And, the current figures, as of

25   yesterday afternoon, are that we've received six hundred

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    and fifty-eight claims.

2                    THE COURT:   Okay.

3                    MR. KOBAK:   Two hundred and thirty-three of

4    those are the so-called "OXY account claims," which we

5    believe are all people in Mr. Wissner-Gross's proposed

6    class.

7                    We've been receiving claims at the rate of

8    about thirty-five to fifty-five a day, and about half to

9    maybe sixty percent of those have been from OXY account

10   customers.  So, if that rate were to continue, --

11                   THE COURT:   Well, the bar date is --

12                   MR. KOBAK:   -- we would probably --

13                   THE COURT:   -- July 31st?

14                   MR. KOBAK:   Yeah.  We would probably be up to

15   three hundred or maybe above that.  So, I'm not sure that

16   we're talking about very many people who won't, in fact,

17   file claims.  But, of course, no one knows that for sure.

18                   But, I thought everyone --

19                   THE COURT:   Well, but --

20                   MR. KOBAK:   -- would benefit from --

21                   THE COURT:   -- but the Trustee sent out --

22                   MR. KOBAK:   -- that information.

23                   THE COURT:   If I understood this, the Trustee,

24   gleaning as much information as -- from as many sources as

25   possible, without validating the integrity of those

1        records, sent out something like thirty-four hundred

2        notices --

3                      MR. KOBAK:  Originally, --

4                      THE COURT:  -- plus newspaper publications?

5                      MR. KOBAK:  Originally, thirty-four hundred.

6        Then, we added some to it, from the Receiver's records,

7        and -- and other sources.  We did publish, pursuant to the

8        order that was approved by the Court.

9                      At Mr. Stone's request, I personally attended

10       two fairly substantial meetings with credits, one at Kaye

11       Scholer on a Friday, and one in Westchester, on a

12       Saturday.  I --

13                     THE COURT:  Now, how does Kaye Scholer come

14       into this picture?

15                     MR. KOBAK:  Oh, they represent Mr. Stone, the

16       Receiver.

17                     THE COURT:  All right.

18                     MR. KOBAK:  And, the purpose of those meetings

19       were to inform people about the claims, the claims

20       process, and give them advice on filling out the claim.

21                     THE COURT:  Okay, but that -- the receivership

22       is the case pending before Judge Platt.

23                     MR. KOBAK:  Yeah, that's correct.

24                     THE COURT:  And, you refer to that as -- how --

25       what's the moniker you use for the receivership?

                    (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1                    MR. KOBAK:   I --

2                    THE COURT:   What's this entity that you're

3        referring to?

4                    MR. KOBAK:   Well, it's Mr. Gorren [phonetic]

5        and his related companies.

6                    THE COURT:   Okay, but --

7                    MR. KOBAK:   Other than New Times Securities

8        Services Corp. [sic].

9                    THE COURT:   So, is it called New Age?   What --

10       I mean, what's the --

11                   MR. KOBAK:   New Age we can call it.

12                   THE COURT:   Okay, all right.

13                   So, New Age is differentiated from the Debtor

14       here, New Financial?

15                   MR. KOBAK:   Well, the Debtor here is New Times

16       Securities Services Corp.      .

17                   THE COURT:   New Times -- okay.   New Times

18       Securities --

19                   MR. KOBAK:   Inc.

20                   THE COURT:   New Times Securities, Inc.

21                   MR. KOBAK:   That's why we called it NTSSI in

22       our papers, to differentiate it from these others.

23                   THE COURT:   NT, New Times -- what was the --

24                   MR. KOBAK:   Securities Services, Incorporated.

25                   THE COURT:   Okay, all right.   And, that was the

1        broker/dealer?

2                    MR. KOBAK:  That was the broker/dealer.

3                    And, I do --

4                    THE COURT:  Okay.

5                    MR. KOBAK:  -- want to make it clear that it

6        was a real broker/dealer, apart from any of the Ponzi

7        Schemes of Mr. Gorren.  It had three thousand customers.

8        As far as we can determine, there wasn't any hanky-panky

9        in those accounts.  So, it had an independent --

10                    THE COURT:  No, but, you haven't --

11                    MR. KOBAK:  -- existence.

12                    THE COURT:  -- you haven't completed your

13        investigation, so --

14                    MR. KOBAK:  No, we haven't.

15                    THE COURT:  All right.

16                    MR. KOBAK:  And, frankly, Mr. Adler submitted

17        the affidavit the way he did to lay out the facts as we

18        know them, and we think it's a difficult issue.  We don't

19        know the answer, as we're here today.

20                    THE COURT:  That's okay.

21                    MR. KOBAK:  And, we've considered many options

22        for dealing with that issue.

23                    THE COURT:  Look, these are all difficult

24        litigation judgments, and you're always subject to the

25        risk of being second-guessed.  I understand that.

1            MR. KOBAK: Well, we weren't trying to present

2     an advocate's paper so much as to lay out for the Court

3     what the facts are, as we know them, and that it is a

4     difficult issue.

5            THE COURT: Okay.

6            MR. KOBAK: We give --

7            THE COURT: Well, let's -- let's focus in, if

8     you --

9            MR. KOBAK: All right, let -- why don't --

10            THE COURT: Let's -- let's hear from Mr. --

11            MR. KOBAK: -- we have Mr. Harbeck address the

12     first --

13            THE COURT: All right, let's hear from Mr.

14     Harbeck --

15            MR. KOBAK: -- question, the sixty days.

16            THE COURT: Okay. Thank you.

17            (Pause)

18            MR. HARBECK: Your Honor, I think you've hit

19     the nail on the head. The sixty-day period here is the

20     first issue you should be addressing, and I put it to you

21     that there is no urgency in this case.

22            THE COURT: Well, just tell me what rights are

23     -- are captured --

24            MR. HARBECK: Okay.

25            THE COURT: -- by the sixty days.

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

14

1              MR. HARBECK: Congress set two different

2     periods for the filing of customer claims. Those periods,

3     by the way, are both different from what you'd see in an

4     ordinary eleven, where you'd see an ordinary ninety-day

5     period for all claims.

6              But, as to customers --

7              THE COURT: What ninety-day period are you

8     talking about?

9              MR. HARBECK: For the -- after the first

10    meeting of creditors, --

11             THE COURT: All right.

12             MR. HARBECK: -- for the filing of claims.

13             THE COURT: Okay.

14             MR. HARBECK: But, in this statute, what we

15    have is a sixty-day period during which --

16             THE COURT: I mean, in the Chapter 11, it's not

17    a ninety-day period, is it? That's when we set a bar

18    date. Okay, all right.

19             MR. HARBECK: What you have in this --

20             THE COURT: Let's -- let's go back to SIPC.

21             MR. HARBECK: What you have in this statute is

22    a period of sixty days during which Congress wanted

23    claimants to file claims for securities, so that the

24    Trustee in SIPC could get a good idea of what the cost of

25    buying those securities in the market would be, if the

1    securities were missing.

2                THE COURT:  Okay, so -- so, let -- just explain

3    the process to me, okay?

4                MR. HARBECK:  Okay.

5                Let's -- let's talk about this case, because I

6    don't think anybody --

7                THE COURT:  No, no, let's talk --

8                MR. HARBECK:  -- would be prejudiced.

9                THE COURT:  Let's talk about a customer.

10               MR. HARBECK:  Okay.

11               THE COURT:  When you say cost of buying

12   securities.  So, if I understand this correctly, and I'm

13   sure you'll correct me if I'm wrong in my assumption, a

14   buyer -- a customer of a broker/dealer authorizes the

15   broker/dealer to go into the market, to purchase

16   securities for that customer's account.

17               And, as of the date that this petition becomes

18   effective, that transaction has not been concluded.  So,

19   there's an -- basically, an open buy order that hasn't

20   been fulfilled, and is there any obligation on the part of

21   anybody to consummate that transaction after there's a

22   SIPC liquidation?

23               MR. HARBECK:  The customer has an option for

24   sixty days.  You won't find that in the time limits.

25   You'll find that in the definition of the term "net

1       equity."

2                   THE COURT:  Okay, all right.  So, tell me what

3       "net equity" means.

4                   MR. HARBECK:  Net equity means that all long

5       positions are netted against all short positions,

6       including the cost of the securities on that open

7       transaction.  And, the customer has an option --

8                   THE COURT:  No, wait a minute --

9                   MR. HARBECK:  -- and what you did --

10                  THE COURT:  Mr. Harbeck, you're going to have

11      to go very slowly, --

12                  MR. HARBECK:  Okay.

13                  THE COURT:  -- okay?  Because I don't own any

14      stocks.  Okay?  The most I ever owned was an interest in a

15      mutual fund.

16                  So, you're going to have to assume that I am a

17      complete rube when it comes to the operation of the

18      securities market.  So, you're going to have to get

19      outside your normal shorthand and explain these concepts

20      so that if --

21                  MR. HARBECK:  I'd be glad to.

22                  THE COURT:  -- push comes to shove, I can

23      explain it to the universe.

24                  MR. HARBECK:  I'd be glad to.

25                  THE COURT:  Okay.

                    (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1          MR. HARBECK:  Let's say you have, in your

2     account, a thousand shares of IBM.

3          THE COURT:  Okay.

4          MR. HARBECK:  And, according to your

5     hypothetical, you've just given an order to purchase

6     another thousand shares and it's been an actual

7     transaction, but you haven't paid for it yet.

8          THE COURT:  But, the second thousand has

9     already been purchased for my account?

10         MR. HARBECK:  The -- the -- yes.

11         THE COURT:  Okay.

12         MR. HARBECK:  Under the net equity definition,

13    in Section 78-LLL, --

14         THE COURT:  78-LLL, yeah.

15         MR. HARBECK:  -- and under the notice

16    provisions that you signed, in this case, the customer --

17    you, the customer, would have a sixty-day window --

18         THE COURT:  Yes.

19         MR. HARBECK:  -- and that window would be to

20    either pay --

21         THE COURT:  Okay.

22         MR. HARBECK:  -- for the IBM --

23         THE COURT:  Yes.

24         MR. HARBECK:  -- or not.

25         THE COURT:  Okay.

1              MR. HARBECK:  So, you can play around a bit in

2       the marketplace.

3              If you pay for it, you're going to get your

4       second thousand shares of IBM.  If you don't pay for it,

5       if the IBM goes up, it will be deducted from the value of

6       that --

7              THE COURT:  Wait, wait --

8              MR. HARBECK:  -- second thousand shares.

9              THE COURT:  You -- you decide that you want to

10      continue with this investment strategy, and you simply

11      write the check after you've gotten confirmation that

12       those securities --

13             MR. HARBECK:  And the Trustee --

14             THE COURT:  -- are available.

15             MR. HARBECK:  -- will send you two thousand

16      shares.

17             THE COURT:  Okay, all right.  And, you're --

18      you're free of the Bankruptcy Court.  You can do whatever

19      you want with those --

20             MR. HARBECK:  And you're then in control of

21      your account.

22             THE COURT:  Okay, and by that time, your

23      account's been shifted to another broker/dealer.

24             MR. HARBECK:  If we -- we hope so.

25             THE COURT:  Okay, all right.

                (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1                    MR. HARBECK:  Now, the second possibility --

2                    THE COURT:  So, your concern is that IBM has a

3         great quarter, and the value of its shares doubles.  So,

4         --

5                    MR. HARBECK:  If you send in that check, we'll

6         send you the IBM.

7                    THE COURT:  Okay, so, I'm going to make that

8         decision in part based upon my personal economic

9         advantage.

10                   MR. HARBECK:  Correct.

11                   THE COURT:  And, if the stock went down, I'm

12        going to say why should I put good money after bad.

13                   MR. HARBECK:  That's right.  And, all that will

14        happen, in that event, --

15                   THE COURT:  Okay.

16                   MR. HARBECK:  -- is the second -- that second

17        thousand shares will be sold, but you'll owe a little

18        more, and it might nick into your -- the cost might nick

19        into your net equity.

20                   THE COURT:  Wait.  Your second thousand -- your

21        second thousand shares will be sold by --

22                   MR. HARBECK:  The Trustee.

23                   THE COURT:  Okay.  And those --

24                   MR. HARBECK:  But, you'll be netted-out --

25                   THE COURT:  -- monies -- and those monies will

1      then come into the estate?

2                    MR. HARBECK:  That's correct, because you did,

3      in fact, owe that thousand dollars to the brokerage firm.

4                    THE COURT:  Okay.

5                    MR. HARBECK:  But, let me tell you why it's

6      irrelevant in this case.

7                    THE COURT:  No, no, let's tell me -- I need to

8      understand it --

9                    MR. HARBECK:  Okay.

10                   THE COURT:  -- generally, before we get to the

11     specifics of this case, and we are going to focus on the

12     specifics of this case.

13                   So, as a general transaction, if -- if I don't

14     go forward and "exercise" my option -- is this an option

15     or a put?

16                   MR. HARBECK:  It's a net.

17                   THE COURT:  Okay, that's a different --

18                   MR. HARBECK:  And, the --

19                   THE COURT:  -- thing, yeah?

20                   MR. HARBECK:  Yeah.  It's a netting process,

21     Your Honor.

22                   THE COURT:  If I breach my contractual

23     obligation, is that it?

24                   MR. HARBECK:  No, no, because --

25                   THE COURT:  Am I going to be --

1           MR. HARBECK: -- you have a defense to that,

2     and it's an anticipatory breach defense.

3           THE COURT: Okay.

4           MR. HARBECK: Because the Trustee isn't -- or

5     the firm isn't standing ready to deliver those second

6     thousand shares immediately. And, we've never sued anyone

7     who failed to pay.

8           THE COURT: Okay.

9           MR. HARBECK: Okay?

10          THE COURT: All right.

11          So, what happens if I don't exercise "my

12    option"?

13          MR. HARBECK: If you don't, then the value --

14    the cost of those securities, the contract cost, will be

15    subtracted from your portfolio.

16          THE COURT: The cost on the market as of the

17    date the sixty day runs --

18          MR. HARBECK: As of the date of the -- as of

19    the date of the bankruptcy.

20          THE COURT: Okay, all right. So, that cost of

21    the securities is subtracted from my --

22          MR. HARBECK: Net equity, which is paid to you

23    in securities in this case.

24          THE COURT: Who's going to pay me in

25    securities?

1                    MR. HARBECK:  The Trustee, whether the

2       securities are there or not.

3                    THE COURT:  He's going to pay me in securities.

4                    MR. HARBECK:  That's correct.

5                    THE COURT:  I already have a thousand shares of

6       IBM.

7                    MR. HARBECK:  Yeah, but they may be missing.

8       He'll give you a thousand shares anyway.

9                    THE COURT:  Oh, okay.  You're simply saying

10      once certain shares, in effect, are identified to my

11      account, then they're mine, and if they're missing, then

12      I'm going to be entitled to some compensation.

13                   MR. HARBECK:  No, sir, they are not identified

14      to your account.  They are a common pool of securities

15      called "customer property."

16                   THE COURT:  Okay.  I'm still sitting here with

17      my thousand shares of IBM, the only thing in my account,

18      and I'm now trying to decide what to do.

19                   MR. HARBECK:  Actually, it might be a little

20      less than the thousand shares, because if the price has

21      gone down, remember you had to pay for that second

22      thousand.  So, you'll probably get nine hundred and ninety

23      or something like that.

24                   THE COURT:  Okay.  But, the -- the point of the

25      matter is that -- what do I have to do within the sixty-

1      day period?

2              MR. HARBECK:  All you have to do is pay for the

3      securities, --

4              THE COURT:  But, I thought --

5              MR. HARBECK:  -- but we don't have that

6      situation here.

7              THE COURT:  -- I thought we talked about filing

8      a claim within sixty days.  So, what's the difference

9      between filing a claim and paying for securities within

10     this sixty-day window?

11             MR. HARBECK:  You do it both at the same time,

12     and, indeed, that's what the claim form requires.

13             THE COURT:  Both at the same --

14             MR. HARBECK:  But, since we don't have any of

15     those claims here --

16             THE COURT:  No, no, no.

17             MR. HARBECK:  Yeah.

18             THE COURT:  You keep jumping the gun on me.

19             MR. HARBECK:  Okay.

20             THE COURT:  Both at the same time.  File a

21     claim, and what are you filing a claim for?

22             MR. HARBECK:  You would be filing a claim for

23     either your two thousand shares, and submitting a check so

24     that the second thousand would be paid for.

25             THE COURT:  Okay, all right.

```
 1                   MR. HARBECK:  Or, you would just submit a claim
 2       at any time for --
 3                   THE COURT:  No, no, within the sixty days.
 4                   MR. HARBECK:  It -- or --
 5                   THE COURT:  Two thousand shares -- I get two
 6       thousand shares if I tender the check, --
 7                   MR. HARBECK:  Correct.
 8                   THE COURT:  -- based upon the market cost as of
 9       the date of the petition.
10                   MR. HARBECK:  No, as of your contract cost,
11       because you agreed to pay for them at a particular value.
12       The securities are valued for all purposes as of the date
13       of the bankruptcy.
14                   (Pause)
15                   THE COURT:  Okay, so, we're dealing with two
16       different operations here.
17                   MR. HARBECK:  Yes.
18                   THE COURT:  One --
19                   MR. HARBECK:  But, they're simultaneous.
20                   THE COURT:  Okay, but analytically, they're
21       different.  There's the contract cost, with the thousand
22       shares of IBM, and then there's the security value of
23       what?
24                   MR. HARBECK:  The securities would be valued,
25       the IBM in this case, as of the filing date, to determine
```

1      your net equity, and subtracted from that dollar amount

2      would be --

3                  THE COURT:  When -- when you talk about net

4      equity, you're going to take the value of my shares --

5                  MR. HARBECK:  And deduct from it --

6                  THE COURT:  -- less any obligations I have to

7      complete my --

8                  MR. HARBECK:  Exactly.

9                  THE COURT:  Okay.

10                 MR. HARBECK:  Exactly.

11                 THE COURT:  All right.

12                 MR. HARBECK:  And, that gives you a net equity

13     in dollar terms, --

14                 THE COURT:  Okay.

15                 MR. HARBECK:  -- and the statute requires Mr.

16     Giddens --

17                 THE COURT:  Yes.

18                 MR. HARBECK:  -- to pay you that number of

19     shares -- the number of shares that that would be --

20                 THE COURT:  Okay.

21                 MR. HARBECK:  -- because he is under Congress

22     -- Congressional instruction to satisfy claims for

23     securities with securities.

24                 THE COURT:  But, he doesn't pay -- does he pay

25     me in cash, or does he pay me in securities?

                 (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1             MR. HARBECK: Securities. And, he pays you in

2       securities whether there's a single, solitary share of IBM

3       in the brokerage house or not.

4             THE COURT: And, he gets to pick which

5       securities?

6             MR. HARBECK: No. He will pay you IBM. That's

7       what you are entitled to.

8             THE COURT: Oh, I see.

9             MR. HARBECK: He will use SIPC's funds, if

10      necessary, to --

11            THE COURT: Oh, I see.

12            MR. HARBECK: -- go out and buy them.

13            THE COURT: Oh, okay, all right.

14            So, you're not going to be paid in --

15            MR. HARBECK: Steve Madden Shoe Stores, --

16            THE COURT: -- market equivalents --

17            MR. HARBECK: No. You're not going to get

18      Steve Madden Shoe shares for an IBM claim. You're going

19      to get --

20            THE COURT: Okay. All right.

21            MR. HARBECK: -- the contents of your account

22      reconstructed, less any debt.

23            THE COURT: Okay. Now I'm beginning to get a

24      better picture. Thank you, Mr. Harbeck. See, there is an

25      advantage in having a pro explain these things.

        (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1                    Now, tell me why you don't think that model has

2        any specific application to the customers in this case.

3                    MR. HARBECK:  Three reasons.

4                    THE COURT:  Okay.

5                    MR. HARBECK:  First of all, your -- your

6        hypothetical is a very good one, because it focused in on

7        the open transactions.  There aren't any here.

8                    Second, --

9                    THE COURT:  How do you know there aren't any?

10                   MR. HARBECK:  Because, this Debtor died a long

11       time ago, and there aren't any open securities

12       transactions to our knowledge.

13                   THE COURT:  Because the -- the

14       broker/dealership closed before the petition date, there's

15       a window --

16                   MR. HARBECK:  Yes.

17                   THE COURT:  -- into which basically no

18       securities --

19                   MR. HARBECK:  Correct.

20                   THE COURT:  -- were being ordered by customers.

21                   MR. HARBECK:  Correct.

22                   THE COURT:  And, what's it -- and, that was

23       between December and when?

24                   MR. HARBECK:  The filing date of this

25       proceeding, which was in May.

         (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1          THE COURT: Okay, all right. So, there's like

2    a five-month window --

3          MR. HARBECK: Right.

4          THE COURT: -- okay, when the -- when --

5          MR. HARBECK: When there were no transactions

6    being done.

7          THE COURT: Okay, all right.

8          MR. HARBECK: But, what we do have is a --

9    let's focus in on the two kinds of claims which are most

10   common here.

11         THE COURT: Okay.

12         MR. HARBECK: People deposited money with one

13   or the other of these entities, but let's just assume it

14   was the Debtor, for non-existent money market funds,

15   shares that never came into existence, fictitious shares.

16         The value of those securities --

17         THE COURT: Wait. Non-existent --

18         MR. HARBECK: Yeah.

19         THE COURT: What did you call them?

20         MR. HARBECK: Non-existent fictitious shares of

21   something called, variously, the New Age Money Market

22   Fund, or some variation on that.

23         THE COURT: Okay, so, someone thought that --

24         MR. HARBECK: They were depositing money to buy

25   those shares --

1                    THE COURT:  The equivalent of --

2                    MR. HARBECK:  -- at a dollar a share.

3                    THE COURT:  -- of a pre-existing mutual fund.

4                    MR. HARBECK:  Correct.

5                    THE COURT:  Okay, so, it's, you know, Fidelity-

6         this, Magellan-this, --

7                    MR. HARBECK:  Here is why the sixty-day

8         difference may -- or the sixty-day filing period makes no

9         difference to people who had claims for these non-existent

10        money market fund shares.

11                   THE COURT:  Okay, but you said -- you said that

12        the common pattern here is, one, funds deposited by a

13        customer --

14                   MR. HARBECK:  With one of these entities --

15                   THE COURT:  -- of the Debtor for the purchase

16        of mutual funds in a designated account.

17                   MR. HARBECK:  Correct.

18                   THE COURT:  Okay, and you've been able to

19        ascertain that that --

20                   MR. HARBECK:  That those securities --

21                   THE COURT:  -- money market fund --

22                   MR. HARBECK:  -- never existed.

23                   THE COURT:  -- did not exist.

24                   MR. HARBECK:  Correct.

25                   THE COURT:  Never existed.

1            MR. HARBECK:  Never existed.

2            THE COURT:  Okay, so, this is a complete scam.

3            MR. HARBECK:  Yes, sir.

4            THE COURT:  As to that issue.

5            MR. HARBECK:  Yes, sir.

6            THE COURT:  And, there's really no fact

7    dispute?

8            MR. HARBECK:  I don't believe so.

9            THE COURT:  Okay, all right, well, we'll hear

10    from the other side.  All right.

11            MR. HARBECK:  So, what's the value of those

12    shares?  It's zero now, and it's never going to change.

13    It's not going to change between the sixty -- the end of

14    the sixty-day period and the end of the --

15            THE COURT:  Okay, so, unlike the IBM stock, --

16            MR. HARBECK:  -- the six-month period.

17            THE COURT:  -- Mr. Giddens can't go into the

18    market and buy shares in this money market fund, because

19    it's a null class.

20            MR. HARBECK:  That's correct.  The shares were

21    -- are -- were worth zero, are worth zero, and will always

22    be worth zero.

23            THE COURT:  Okay, so, that --

24            MR. HARBECK:  So, as to those investors, the

25    sixty-day period is irrelevant.

        (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1                    THE COURT:  So -- so --

2                    MR. HARBECK:  The value of their claim will

3       never change.

4                    THE COURT:  Well, but -- so, they're just out

5       of luck?

6                    MR. HARBECK:  No, sir, no.  We're not taking

7       the position that as it's -- it's intellectually or

8       Jesuitically, if you will, possible to take, that the

9       value of their portfolio is zero.  But, --

10                   THE COURT:  Okay.

11                   MR. HARBECK:  -- under a case called Boatland

12      Securities -- it's either -- it's either an Aberdeen

13      [phonetic] case or an Albert and McGuire [phonetic] case,

14      dating back to the early seventies -- we have taken the

15      position --

16                   THE COURT:  Wait, what is -- what was the

17      reference you made?

18                   MR. HARBECK:  We -- I believe the case is

19      either another decision in the Aberdeen liquidation or

20      possibly in the Albert and McGuire liquidation, I forgot

21      which --

22                   THE COURT:  But, I thought you called it

23      "Boatman" or something like that.

24                   MR. HARBECK:  Yes.  The -- the shares in

25      question were Boatland Securities.

                (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1           THE COURT:  B-O-A-T-L-A-N-D?

2           MR. HARBECK:  Yes, sir.

3           THE COURT:  Okay.

4           MR. HARBECK:  And, we took the position --

5           THE COURT:  Yeah.

6           MR. HARBECK:  -- that when you deposited money

7    to buy securities that never came into existence, --

8           THE COURT:  Yeah.

9           MR. HARBECK:  -- you didn't have a claim.  And,

10   we lost.  And, we have adhered to the court's decision

11   ever since.

12          So, these shares --

13          THE COURT:  Okay, so -- so you have a damage

14   for fraud -- you have a claim --

15          MR. HARBECK:  No, sir, no.  You would have the

16   deposit of cash for the purpose of purchasing securities,

17   but the securities were never purchased.  So, you would

18   have a claim for cash.

19          THE COURT:  All right, claim for --

20          MR. HARBECK:  That is the most expansive view

21   that we could possibly take under the statute, to help

22   these people.

23          THE COURT:  Okay.  So, if they -- if someone

24   has a valid claim, can demonstrate that they wrote the

25   check, or wire transferred the monies --

          (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1           MR. HARBECK:  To the Debtor.

2           THE COURT:  -- to the Debtor, they have a claim

3     for cash.

4           MR. HARBECK:  That's correct.

5           THE COURT:  And -- and who satisfies that claim

6     for cash?

7           MR. HARBECK:  The Trustee will satisfy the

8     claim for cash --

9           THE COURT:  Up to a hundred thousand?

10          MR. HARBECK:  -- using SIPC's funds.

11          THE COURT:  SIPC's funds, but up to a limit --

12    a dollar limit, isn't it?

13          MR. HARBECK:  That's correct.

14          THE COURT:  That's a hundred thousand, isn't

15    it?

16          MR. HARBECK:  Yes.

17          THE COURT:  Okay.

18          MR. HARBECK:  But, that limit will never

19    change.

20          THE COURT:  Okay.

21          MR. HARBECK:  As to any of those people, --

22          THE COURT:  Okay.

23          MR. HARBECK:  -- if they file after the sixty-

24    day period.

25               So, as to the --

1          THE COURT:  But, there were -- there were

2     persons in that class.

3          MR. HARBECK:  Yes, sir, there were persons who

4     deposited money with at least one of them, and I assume

5     with the Debtor --

6          THE COURT:  Okay, well, we're --

7          MR. HARBECK:  -- to buy those.

8          THE COURT:  -- assuming that, for the purpose

9     of argument, --

10         MR. HARBECK:  Correct.

11         THE COURT:  -- with the Debtor.

12         All right.  So, what's the second kind of

13    claim?

14         MR. HARBECK:  The second kind of claims are for

15    people who bought real honest-to-goodness mutual funds.

16         THE COURT:  Okay, and that's different from

17    securities.

18         MR. HARBECK:  No, they are securities, but

19    they're real securities, unlike these fictitious shares of

20    the New Age Money Market.

21         THE COURT:  But, SIPC draws a distinction for

22    purposes of administration of this case, between my having

23    shares of IBM, versus my having shares of --

24         MR. HARBECK:  New Age Money Market Fund.

25         THE COURT:  No, no, no.  Third category.

1                    MR. HARBECK:  No.  The mutual fund shares are

2         just the kind of securities these people bought.  You

3         could think of them in terms of being IBM, if you want.

4         It's the same -- same analysis.

5                    THE COURT:  Okay.  But, it -- at the macro

6         level, the mutual fund has securities.  Those may be IBM,

7         or anything else.

8                    MR. HARBECK:  But it, itself, is a security.

9                    THE COURT:  But, I -- but, I have some kind of

10        percentage interest in that mutual fund.

11                   MR. HARBECK:  You have shares in it, and those

12        shares are securities.

13                   THE COURT:  Okay, all right.

14                   So, from the -- whether I have direct shares

15        or, in effect, indirect shares, you don't care.

16              ·    MR. HARBECK:  No, we do.  You have direct

17        shares of the mutual fund, and here is where Congress

18        comes into play.

19                   THE COURT:  Okay.

20                   MR. HARBECK:  To the extent members -- people

21        who dealt with this Debtor bought any kind of securities

22        and want those securities, --

23                   THE COURT:  Okay.

24                   MR. HARBECK:  -- Congress put them on a short

25        leash, and this is a very specific leash.  It says if you

                    (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1    file within sixty days, you'll get the securities,

2    absolutely.  If you file between sixty days and six

3    months, the Trustee will have an option --

4                THE COURT:  Well, wait a minute.  I get the --

5    I get the shares absolutely.  Okay.

6                MR. HARBECK:  The Trustee will have an option

7    to pay you in either the shares or the value of the shares

8    on the filing date of the bankruptcy.

9                THE COURT:  Okay, so, now tell me the economic

10   consequences of filing before sixty days and after sixty

11   days, if you --

12               MR. HARBECK:  Some people could win; some

13   people could lose.

14               THE COURT:  -- deposited monies for a mutual

15   fund that has a fluctuating value.

16               MR. HARBECK:  No, you -- at this point, the

17   shares -- the mutual fund shares should be in your

18   account.  It's not depositing money for them.  You've

19   bought them.  You've got a confirmation -- you've got a

20   statement from the firm, saying you have in your account

21   shares of one, two, and three different securities.  These

22   securities happen to be mutual funds.

23               THE COURT:  Okay.

24               MR. HARBECK:  And, what Congress did is

25   Congress said, --

(516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1          THE COURT:  Okay, so, you're telling me that

2    this is very different from the open transaction.

3          MR. HARBECK:  Correct.

4          THE COURT:  Okay, so, now we're dealing with a

5    closed transaction, where the money is there, you have

6    interest in a --

7          MR. HARBECK:  The securities are there.

8          THE COURT:  -- real --

9          MR. HARBECK:  Not the money is there.  The

10   securities are supposed to be there.

11         THE COURT:  No, no -- yeah, you have -- you

12   have an ownership interest in the securities; namely,

13   shares of the mutual fund, of a mutual fund that is real,

14   existing as of the petition date.

15         MR. HARBECK:  Dreyfus, Janus, you name it.

16         THE COURT:  Okay.

17         MR. HARBECK:  Now, what Congress did is it said

18   it wants to give the Trustee and SIPC a very good idea of

19   what securities have to -- that the Trustee is going to

20   have to go out into the marketplace and buy.  So, if you

21   file within sixty days, you'll get the securities, without

22   question.  Whether -- if they triple in value, you'll get

23   the securities.

24         But, if --

25         THE COURT:  Even -- even if --

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1                    MR. HARBECK: Even if they're not there.

2                    THE COURT: Even if they're not there.

3                    MR. HARBECK: Correct.

4                    THE COURT: In other words, if the money was

5        diverted, converted --

6                    MR. HARBECK: And the securities were never

7        purchased.

8                    THE COURT: Okay.

9                    MR. HARBECK: And, if those positions triple,

10       we will gladly give the people their securities positions.

11                   THE COURT: But, you've got to jump.

12                   MR. HARBECK: But, you've got to act fast,

13       yeah. And, Congress did that --

14                   THE COURT: Because -- because --

15                   MR. HARBECK: -- because of the fluctuations.

16                   THE COURT: -- because there's a concern --

17       because there's a concern that the value of this mutual

18       fund might skyrocket and it's going to cost SIPC a lot

19       more money.

20                   MR. HARBECK: Six months down the line, that's

21       right.

22                   THE COURT: Okay, all right. And, you don't

23       want people playing games with you.

24                   MR. HARBECK: That's correct.

25                   THE COURT: Deciding when they're going to --

              (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

```
1        it's like the -- do you know about price-laters?
2                   MR. HARBECK:  Sorry?
3                   THE COURT:  Price-laters?
4                   MR. HARBECK:  I can't say that I do.
5                   THE COURT:  Oh, gee, it's a great analogy.
6                   MR. HARBECK:  In any event --
7                   THE COURT:  Do you know what a price-later
8        agreement is, Mr. Berkowitz?
9                   MR. BERKOWITZ:  No, I'm going to play even with
10       Mr. Harbeck --
11                  MR. HARBECK:  Thank you, very much.
12                  MR. BERKOWITZ:  -- for insurance.
13                  THE COURT:  I deposit grain in the elevator.
14       This goes back to my days in the rural counties of
15       Michigan.  And, of course, the grain is all co-mingled.
16       And, I look to the board price and say, "Bingo.  That's
17       the price.  Pay me."
18                  So, I deposit the grain under a price-later
19       agreement, under an agreement in which the price is later
20       to be fixed.  And, of course, I'm going to speculate on
21       the market.  I'm going to wait until the price is high
22       enough to say "Pay me that."
23                  So, basically, I'm a commodities broker, but
24       it's not in futures.  It's grain in the elevator.  And,
25       God help you if the elevator goes into bankruptcy.  Then,
```

1       it all falls apart.

2                    So, --

3                    MR. HARBECK:  At a later date, perhaps we could

4       talk about the similarities between --

5                    THE COURT:  No, no, no --

6                    MR. HARBECK:  -- that grain and the concept of

7       customer property, Your Honor.

8                    THE COURT:  I suspect so, but I'm glad I had

9       this prior experience, so I can resort to these fruitful

10      analogies.

11                   MR. HARBECK:  All right.  So, Congress says do

12      that in sixty days.

13                   THE COURT:  Okay.

14                   MR. HARBECK:  And, that -- that is a very

15      specific and a very special proceeding that you don't see

16      in bankruptcy.

17                   THE COURT:  Okay, and that has -- that's tied

18      into a policy analysis of the operation of the markets and

19      a determination by Congress that parties are entitled to a

20      certain protection, but they have to act expeditiously.

21                   MR. HARBECK:  So, let's look at the effect

22      here.

23                   THE COURT:  Okay, great.

24                   MR. HARBECK:  As to the money market fund

25      investors, there is no effect at all.  The securities are

        (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1    worth zero --

2              THE COURT:  Well, that's in --

3              MR. HARBECK:  -- then, now, and always.

4              THE COURT:  -- that's in that fictional --

5              MR. HARBECK:  Correct.

6              THE COURT:  Okay.

7              MR. HARBECK:  So, if they file a claim on the

8    one hundred and seventy-eighth day, their claim will be

9    treated exactly the same as it would be if it was filed in

10   the six months.

11             THE COURT:  So, that's garnished means

12   garnished, right?

13             MR. HARBECK:  Yeah.

14             As to the people who have what we would call

15   the "real securities," Congress said, "Hey, file that

16   claim or SIPC and the Trustee will have an option."

17             So, Congress said, different from any other

18   form of bankruptcy, because brokerage bankruptcy is a

19   unique form of bankruptcy, you have to act fast.

20             So, what does filing a class proof of claim do

21   here?  It says, "Well, let's ignore the Congressional

22   mandate that's unique to brokerage bankruptcy."

23             THE COURT:  It does what?

24             MR. HARBECK:  It ignores the unique

25   Congressional mandate --

1                    THE COURT:  Okay.

2          MR. HARBECK:  -- in the brokerage bankruptcy.

3                    THE COURT:  But -- but, what's the model that

4    Congress has in mind?  Doesn't it have in mind the

5    sophisticated investor, who is going to be able to respond

6    within this very short period of notice --

7                    MR. HARBECK:  Absolutely not.

8                    THE COURT:  -- and understand -- and

9    understands the consequences of not filing within sixty

10   days?

11                   MR. HARBECK:  Absolutely not.  The statute,

12   when it was drafted, was specifically drafted for the

13   small investor.  Indeed, as originally drafted, --

14                   THE COURT:  Well, what's the date of the

15   statute we're talking about?

16                   MR. HARBECK:  1970.  And, as originally --

17                   THE COURT:  Okay, and you know -- you know, and

18   I know that the world of persons who have interests in

19   securities doesn't bear the faintest resemblance in 2000,

20   to the world of persons who had securities in 1970.  And,

21   what drives the market these days, in no small measure,

22   apart from the international flow of funds, is the very

23   considerable significance of pension funds.

24                   So, to say that the law in 1970 is going to

25   help us understand the nature of investments by small

1          investors in 2000 strikes me as subject to a certain

2          amount of discount.

3                    MR. HARBECK:  Well, --

4                    THE COURT:  But, you know --

5                    MR. HARBECK:  -- the fact remains Congress has

6          spoken as to when you need to get your claim in and says

7          --

8                    THE COURT:  Okay.

9                    MR. HARBECK:  -- you're still going to get

10         money from a quasi-public fund, even if you file on the

11         hundred and seventy-ninth day.

12                   THE COURT:  Well, what -- what's quasi-public

13         about it?

14                   MR. HARBECK:  It's created by a federal statute

15         and it is backed by a one billion dollar line of credit on

16         . the United States Treasury.

17                   THE COURT:  Okay.  But, when was the last time

18         you drew a check on that?

19                   MR. HARBECK:  We are proud to say we've never

20         spent a nickel of public money.

21                   THE COURT:  Okay, great.  So, it's basically

22         the securities industry taking care of itself.

23                   MR. HARBECK:  Taking care of its customers.

24                   THE COURT:  Yeah, so, I mean one of the things

25         that gives credibility to the market is, up to a certain

1        dollar limit, if you deal with a registered broker/dealer,

2        you're going to be protected.

3                    MR. HARBECK:  That's correct.

4                    THE COURT:  It's like an FDIC insurance, right?

5                    MR. HARBECK:  There are analogies.

6                    THE COURT:  Okay.

7                    MR. HARBECK:  I would also point out one other

8        reason why, on the facts of this case, there is nothing --

9        there -- there is no applicability of the sixty-day

10       period.

11                   THE COURT:  Okay.  What you're saying is that

12       the concern about protecting a universe or a class of

13       persons who would be prejudiced is a null class.  No one

14       -- no member fits into those parameters.  So, no one is

15       going to be prejudiced.

16                   MR. HARBECK:  Certainly no one will be

17       prejudiced as to the people as seeking the fictitious

18       money market funds.  There is no prejudice whatsoever to

19       them.

20                   There may be some prejudice to people whose

21       securities portfolios skyrocket, although I don't believe

22       that's happened since the filing date of this bankruptcy.

23                   THE COURT:  Well, the market's been --

24                   MR. HARBECK:  But -- but if --

25                   THE COURT:  -- a little --

                (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1           MR. HARBECK:  -- but if that has happened, and

2      if all they get is the filing date value of their

3      portfolios, that is what Congress's absolute specific

4      mandate is, that that's what they get.  They can file on

5      the hundred and seventy-eighth day, the Trustee will have

6      an option to either buy them the securities --

7                THE COURT:  Okay.

8                MR. HARBECK:  -- or give them cash.

9                THE COURT:  So, if I engage in this

10     differential calculus, even if I can identify the persons

11     who fall into this, and maybe we do this after the fact,

12     and then we determine what the swing is, you're telling me

13     that no one fits in that category, or if they do fit in

14     that category --

15               MR. HARBECK:  It is by --

16               THE COURT:  -- Congress has simply --

17               MR. HARBECK:  -- it is by design.

18               THE COURT:  -- put a very short leash on this,

19     and their remedy is with Congress, not with the Bankruptcy

20     Court.

21               MR. HARBECK:  Yes, sir.

22               THE COURT:  Okay.  Thank you, very much.

23               (Pause)

24               MR. KOBAK:  Can I just add a couple of

25     footnotes, Your Honor?  The SIPC statute has --

1          THE COURT:  You can -- you can add footnotes.

2     You can add **bold**, *italics* --

3          MR. KOBAK:  Right.

4          THE COURT:  -- or <u>underline</u>.

5          MR. KOBAK:  The -- the SIPC statute has been

6     amended several times, including very extensively in 1978,

7     so we're not necessarily going back thirty years.

8          THE COURT:  Okay.

9          MR. KOBAK:  There are exceptions in the

10    statutes for incompetents and infants, so to the extent --

11    I mean, Congress must have given some consideration to how

12    sophisticated people are, and so forth.

13         THE COURT:  I don't think Congress can keep up

14    with the rate of innovation in the market.

15         MR. KOBAK:  There is one other effect of this

16    provision.  It says that, to the extent that someone's

17    over the limit of SIPC protection, --

18         THE COURT:  Right.

19         MR. KOBAK:  -- and we have claims against the

20    fund of customer property, --

21         THE COURT:  Right.

22         MR. KOBAK:  -- that would be marshaled by the

23    Trustee, if any, in the liquidation, the question --

24         THE COURT:  I thought that -- I thought you

25    indicated that there was virtually no customer property.

1         MR. KOBAK:  At this point, there isn't.  It

2    will probably depend on us bringing lawsuits if there are

3    any lawsuits to be brought --

4         THE COURT:  Okay.  And, those are in the nature

5    of --

6         MR. KOBAK:  -- against people.

7         THE COURT:  -- avoidance actions?

8         MR. KOBAK:  They could be avoidance actions or

9    they could be actions against third parties.

10         THE COURT:  Okay.

11         MR. KOBAK:  Similar in some respects to those

12    that Mr. Wissner-Gross is pursuing in his class action,

13    but also possibly different ones.

14         But, at this point, I don't think there is

15    necessarily any anticipation that there will be any fund

16    of customer property.  But, it is conceivable.

17         What the statute says is that if you don't file

18    within the sixty days, but do file within the six months,

19    the Trustee need not -- those are the words of the statute

20    -- need not give you a claim against the fund of customer

21    property.  But, it doesn't mean that the Trustee won't

22    give you that claim.

23         THE COURT:  Well, what's going --

24         MR. KOBAK:  And, in this case, --

25         THE COURT:  -- what's going to --

1           MR. KOBAK:  Well, I don't -- no one knows what

2     will happen.  But, in this case, we don't even know if we

3     have a fund of customer property.  And, frankly, at this

4     point, it seems like a remote possibility that will ever

5     exist.

6           It also seems like there will be very few, if

7     any -- any customers who don't file within the sixty days

8     who will be over the SIPC limits.  But, it is a

9     theoretical possibility.

10          THE COURT:  Okay.  But, one of the problems

11    that we have is that when I look at these cases, we're

12    really dealing with magnitudes that are very different

13    from the magnitude of this case.  That's why I said this

14    is at the lower end.  When you have twenty thousand

15    investors, a hundred thousand investors, you're dealing

16    with esoteric forms of investment.  That creates, perhaps,

17    a qualitative distinction.

18          But here, we're dealing with a fairly finite

19    universe of customers, that may not even exceed five

20    thousand --

21          MR. KOBAK:  Well, I think it's --

22          THE COURT:  -- and we have plenty of cases in

23    which we have more than five thousand claims filed within

24    certain classes -- whether they're priority classes,

25    secured creditor classes or not -- where we've been able

(516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1        to manage those cases fairly effectively.

2                Now, I know there's a kind of paternalism on

3        SIPC's part that comes through this, where they're trying

4        to protect the customers from being saddled with

5        attorney's fees.  But, I'm not sure how much weight I

6        should give that.

7                        MR. KOBAK:  Well, --

8                        THE COURT:  Particularly when the Trustee and

9        his counsel are going to be paid, and when it says, you

10       know, you guys shouldn't be paid, but, by the way, we're

11       going to get paid, it causes, you know, --

12                       MR. KOBAK:  Well, --

13                       THE COURT:  -- at least for me to raise an

14       eyebrow.

15                       MR. KOBAK:  In -- in Mr. Wissner-Gross's class,

16       there are only three hundred and eighteen people, or

17       that's the estimate.  As I've said, over almost two

18       hundred and fifty of those have already filed claims.  So,

19       it doesn't appear that there are going to many -- there --

20       it appears that there will be few, if any, who don't file

21       claims.

22                       THE COURT:  Well, but, let's -- let's assume

23       all --

24                       MR. KOBAK:  When we come --

25                       THE COURT:  -- let's assume that, to cover his

                 (516) 741-5342    Tankoos Reporting Co.  (212) 349-9692

1    down-side, he fervently encouraged everyone to file a

2    claim, of anyone he could reach.

3                    MR. KOBAK:   Right.

4                    THE COURT:   He was scrambling, you were

5    scrambling.   You're all basically, for different reasons,

6    on the same path, because you've wanted to reduce the

7    degree of uncertainty as to outcome.

8                    And then, it gets to a question, if I've got

9    three hundred clients, that's an awful lot of clients to

10   kind of manage, and under joinder rules, under other

11   concepts of --

12                   MR. KOBAK:   Right.

13                   THE COURT:   -- active judicial management of

14   cases, we try to resort to various minimizing devices.

15   And, I don't care what you call it, but it seems to me

16   that if there are common issues, even as to the processing

17   of these claims under these varying kinds of categories --

18   the ones that Mr. Harbeck so skillfully presented -- there

19   are some considerable efficiencies which we gain by having

20   a common representative, one law firm basically, helping

21   people do this together, resorting to the same kinds of

22   information sheets you use, and basically pooling their

23   resources so the net cost to each is reduced.

24                   MR. KOBAK:   Well, Your Honor, we've never

25   contended that these issues shouldn't be litigated, that

1       they won't be litigated. I think the point of our papers

2       were that there are alternatives like joinder, test cases,

3       what we've --

4                   THE COURT: Well, that's -- you know, when I

5       read the papers, I began to think, you know, it's -- it's

6       we, SIPC, are the good guys. We're going to process these

7       claims as quickly as possible. We don't want any

8       interference that's going to delay our administration.

9       We're not the enemy. We're not the broker/dealer. We're

10      not the debtor-in-possession. You know, we have a

11      statutory function to perform. We want to be able to do

12      that. We are concerned, ultimately, to the extent that we

13      identified with the community of investors, to get them as

14      much recovery as possible, at the lowest transactional

15      cost, and the Bankruptcy Court is set up for that, the

16      separate proceeding is set up for that. Everything is

17      designed to reduce transaction costs.

18                  But if, even in the representation of a

19      significant number -- and it seems to me three hundred is

20      a significant number, particularly when you're dealing

21      with claims of this magnitude. When I looked at the so-

22      called putative class representatives, they're out a lot

23      of money.

24                  MR. KOBAK: Well, he -- I think his claimants

25      have something like three and a half million dollars, if I

                (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1      read the claims --

2                  THE COURT:  Okay, so, that's not chump change.

3                  MR. KOBAK:  -- right.

4                  So, he'll be litigating these issues with us,

5      but he's pre-supposing that we're going to deny every one

6      of these --

7                  THE COURT:  I don't think he pre-supposes that,

8      at all.

9                  MR. KOBAK:  -- three hundred and eighteen

10     claims.

11                 THE COURT:  He says, "Look, I've got a number

12     of clients who are similarly situated, and they've

13     retained me.  I'd like to be able to extend this range of

14     services to other persons who are similarly situated."

15                 Now, there may be some sub-classes.  There may

16     be some conflicts of interest, but that's in the nature of

17     -- I mean, that's why we have, you know, class-action

18     rules and all these varying protective devices, and all

19     this public notice, and opt-out provisions, and things of

20     that sort, so that we can economize --

21                 MR. KOBAK:  If --

22                 THE COURT:  -- in terms of the representation.

23                 MR. KOBAK:  If -- if it's --

24                 THE COURT:  And, if -- if you're raising a

25     certain set of defenses or objections to claims, and

1      they're the same -- let's say there are -- he's got forty

2      people who are all being hit with the same kind of

3      objection. Then, it seems to me there's some economy in

4      having him recognized as the -- the person, the lawyer or

5      the law firm, who can respond to you on these common set

6      of objections, --

7                   MR. KOBAK:  Well, --

8                   THE COURT:  -- even within the universe of a

9      customer claim, a bona fide customer claim against --

10                   MR. KOBAK:  Well, let's say --

11                   THE COURT:  -- this broker/dealer.

12                   MR. KOBAK:  -- let's say we have a group of

13     forty, and Mr. Wissner-Gross has ten of them. He's going

14     to file briefs for those ten people. Some of the other

15     forty may have lawyers. There are over fifty claimants so

16     far who've filed claims through lawyers, some of whom

17     represent several clients. So, there are other lawyers,

18     there are other people who are going to protect their

19     interests.

20                   We will be -- I am confident, and we've done

21     this in other cases, --

22                   THE COURT:  Right.

23                   MR. KOBAK:  -- when -- when we have a bunch of

24     objections that are on the same grounds, --

25                   THE COURT:  All right.

1        MR. KOBAK: -- say that there are these New Age

2    people, and that doesn't count or something for SIPC --

3            THE COURT: Right.

4        MR. KOBAK: -- purposes. We would probably, in

5    all probability, make an omnibus application of some kind,

6    to have those treated on that common issue, if that's the

7    ground for denying them. And, there'll be representation

8    of those people. I'm not sure you need all the baggage of

9    a class action, certification, notices to people, --

10           THE COURT: Well, I -- I agree --

11       MR. KOBAK: -- and so forth.

12           THE COURT: -- with you.

13       MR. KOBAK: But, I think the time --

14           THE COURT: We may get to --

15       MR. KOBAK: But --

16           THE COURT: -- I'm looking for a device --

17       MR. KOBAK: -- I think the time for dealing

18   with that --

19           THE COURT: Right.

20       MR. KOBAK: -- is when we make our

21   determinations and object to these claims if, in fact, we

22   object to the claims. And, we may object to some and not

23   all. We may object to all. I don't think anyone knows

24   the answer to that now.

25           THE COURT: And, then, how do we deal with the

1    collateral issue of who is the Debtor?  How -- how are we

2    going to see that litigation going on?

3              MR. KOBAK:  Well, I'm not -- that's something

4    that we're addressing now.  Perhaps the answer is some

5    kind of substantive consolidation motion.

6              THE COURT:  Okay.

7              MR. KOBAK:  Perhaps it's an issue that can be

8    --

9              THE COURT:  But -- but if SIPC --

10             MR. KOBAK:  -- litigated on --

11             THE COURT:  -- but if SIPC wants --

12             MR. KOBAK:  -- more of a group basis.

13             THE COURT:  But, if SIPC wants to protect the

14   fund, I assume it has a portfolio interest in limiting its

15   exposure.

16             MR. KOBAK:  Well, I think -- well, I'll let Mr.

17   Harbeck speak to that, but I think SIPC wants to do what

18   it feels is consistent with the law and the facts of this

19   case.

20             And, the problem is that we've --

21             THE COURT:  But -- but it may have --

22             MR. KOBAK:  -- we don't know how that issue is

23   going to come out.

24             THE COURT:  I understand that.  But, SIPC may

25   have an institutional interest, perfectly valid, bona

              (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1      fide, legitimate, no skullduggery, --

2                  MR. KOBAK:  Right.

3                  THE COURT:  -- and says, "Look, this ultimately

4      comes from the broker/dealers.  It's a tax on their

5      operations.  We don't want to have to go to Congress to

6      tap the billion dollar line of credit.  But, we define

7      'customer' more narrowly than does Mr. Wissner-Gross."

8                  And, that's the issue.  It's a fundamental

9      conceptual disagreement about who is a customer, under

10     what kinds of circumstances.  And, I could see, just as a

11     matter of advocacy --

12                 MR. KOBAK:  Right, I --

13                 THE COURT:  -- different -- different persons

14     taking very different positions, particularly if you're

15     running the check book and you want to be one of the

16     payees.

17                 MR. KOBAK:  Yeah, and we anticipate that that

18     issue will be litigated.  We think there will be some kind

19     of joint representation of people, --

20                 THE COURT:  Okay.

21                 MR. KOBAK:  -- whether it's through a class

22     action, --

23                 THE COURT:  But, you're saying --

24                 MR. KOBAK:  -- joinder, or some other --

25                 THE COURT:  -- later.  Later.

                (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1              MR. KOBAK:    -- but -- yes --

2              THE COURT:    Later.

3              MR. KOBAK:    -- until -- I don't think -- until

4    we've objected to something, I don't think this whole

5    thing is ripe, as a matter of law.  And, as a practical

6    matter, I don't think there's any way to address it until

7    we know what --

8              THE COURT:    Well, I can --

9              MR. KOBAK:    -- position we're going to take.

10             THE COURT:    But -- but, when I read these

11   papers, I sure saw the flags flying.  It's not exactly

12   well, maybe we'll disagree about this.  I mean, this --

13   this request was vigorously opposed.

14             MR. KOBAK:    Well, because we don't think that

15   class treatment, especially at this time, is the way to

16   go.  And we -- I actually think it might be prejudicial to

17   some groups of customers to have to decide this case on

18   some kind of overall alter-ego basis, as opposed to

19   looking at expectations of individual customers.

20             THE COURT:    Well, I understand that, but I

21   think that's a little paternalistic.  I think that maybe

22   those persons who are the customers ought to be dealing

23   with that issue and not having SIPC watch out for them.

24             But, with the --

25             MR. KOBAK:    But, Your Honor, I think we --

1                    THE COURT:  -- with that --

2                    MR. KOBAK:  -- contemplate that, at some point,

3        we'll be back, when we know what our position is this

4        issue, when we have more --

5                    THE COURT:  Okay.

6                    MR. KOBAK:  -- of the claims in, --

7                    THE COURT:  Okay.

8                    MR. KOBAK:  -- when we've had a chance --

9                    THE COURT:  All right, I --

10                   MR. KOBAK:  -- to analyze them.  And, we'll try

11       to come up with what we think is a reasonable way of

12       dealing with it, an expeditious way, and we can address

13       this issue at that time.  I think it's just premature to

14       address it now.

15                   THE COURT:  I -- I understand that, Mr. Kobak,

16       and I think your position is defensible.  And, what I'm

17       trying to do is avoid Armageddon here, when there isn't

18       any necessity.

19                   So, back to the -- let's hear -- let's let me

20       hear from --

21                   MR. KOBAK:  And, I think, for the present

22       purposes, there is no real prejudice if somebody misses

23       the sixty days.  They're still going to get their hundred

24       thousand or five hundred thousand, depending on what kind

25       of claim they have.  They've still got SIPC protection.

1          THE COURT:  All right.  Let me --

2          MR. KOBAK:  As long as they file a claim by

3     December, --

4          THE COURT:  Okay.

5          MR. KOBAK:  -- they've got that protection.

6          THE COURT:  But, I'm focusing on those people

7     who haven't filed, who will not have filed by July 31st.

8          MR. KOBAK:  But, they still have until December

9     to --

10          THE COURT:  I -- I understand that, but --

11          MR. KOBAK:  -- to get SIPC coverage.

12          THE COURT:  -- but they're still going to lose

13     some benefits, based upon the exposition I've heard, and I

14     can't quantify it.

15          MR. KOBAK:  Well, if the stock goes up,

16     possibly.  If it goes down, they don't lose anything.

17          But, in any event, even if you assume there are

18     few of them -- and I think we are only talking about a few

19     who might lose something -- that seems to be exactly what

20     Congress intended with this special sixty-day rule.  It

21     gave them a fairly generous six-month rule to file a claim

22     for any kind of SIPC protection.

23          THE COURT:  Okay, all right.  I will repress

24     referring to the fact that I had very modest mutual funds.

25     And, the market went from eighty-three to seventy-eight,

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1    and my wife said, "Bail." I said, "You're nuts. Take the

2    long view." So, you can imagine our car talk since it

3    went from eighty-three hundred northward.

4            MR. WISSNER-GROSS: Your Honor, I think that

5    Mr. Harbeck has really made the point, in his

6    presentation, that we're trying to set forth in our

7    opening papers --

8            THE COURT: Okay.

9            MR. WISSNER-GROSS: -- and also in the reply

10   papers.

11           The fact is that there is a universe of

12   investors within -- among the three hundred and eighteen.

13   And, by the way, that three hundred and eighteen is what

14   we believe is the universe of the -- what are referred to

15   as the OXY account holders. I think it probably will be a

16   larger number of investors that we're talking about.

17           THE COURT: Okay.

18           MR. WISSNER-GROSS: But, as Mr. Harbeck has

19   indicated, there are clearly investors who purchased what

20   they thought were bona fide mutual funds -- and which

21   SIPC and the Trustee do not dispute were bona fide mutual

22   funds -- who, if they do not file their proof of claim by

23   July 31st, will in fact lose certain rights that, as Mr.

24   Harbeck explained, they would otherwise have by statute.

25           Now, what are those rights? As Mr. Harbeck

1    explained, it's the right, basically, to say I'm making an

2    informed business decision that I want to submit a

3    customer claim by July 31st so as to entitle me, as the

4    holder of what I thought was a legitimate mutual fund, in

5    fact, it's a mutual fund that does exist out in the

6    marketplace, to be able to receive the shares that my

7    account showed that I held.  And, --

8              THE COURT:  Before you get -- you agree that

9    there are no open orders for securities?

10             MR. WISSNER-GROSS:  To my knowledge, based on

11   my investigation, and I've spoken to quite a lot of

12   people, reviewed quite a lot of different documentation,

13   --

14             THE COURT:  Okay.

15             MR. WISSNER-GROSS:  -- I'm not aware of that.

16   The Receiver is here, for New Age, who has a more

17   historical involvement.  He may have a somewhat different

18   understanding.

19             But, to my knowledge, the universe of -- of

20   customers that we're talking about are those who,

21   essentially, purchased what they understood were shares of

22   this New Age Money Market Fund, which I agree never

23   existed.  But, I don't agree, is subject to the hundred

24   thousand dollar limitation.  I think that it's subject to

25   the five hundred thousand dollar limitation, but it's not

1    an issue that we have to address today, because I do agree

2    with Mr. Harbeck that, as to the shares of -- of that

3    fund, since it didn't exist, SIPC is really not in a

4    position to go out in the marketplace and buy it, because

5    it never existed.

6            THE COURT:  So, that's not --

7            MR. WISSNER-GROSS:  But, we have -- we have a

8    --

9            THE COURT:  -- so, that's not a sixty-day

10    problem.

11            MR. WISSNER-GROSS:  That's not a sixty-day

12    problem.  Although, it is a sixty-day problem in -- well,

13    it isn't a sixty-day problem, vis-à-vis going to purchase

14    the securities in the marketplace.  It is an issue as to

15    whether it's subject to a hundred thousand dollar

16    limitation or five hundred thousand dollar limitation.

17            THE COURT:  All right, look --

18            MR. WISSNER-GROSS:  But, as to --

19            THE COURT:  Okay.  That's another -- that's a

20    secondary issue.

21            MR. WISSNER-GROSS:  But, as to the customers

22    who purchased the Janus funds and the other --

23            THE COURT:  All right.

24            MR. WISSNER-GROSS:  -- legitimate mutual funds,

25    and most of the proposed class representatives purchased

1         some or many of those legitimate securities --

2                   THE COURT:  Okay.

3                   MR. WISSNER-GROSS:  -- which showed up in their

4         account.

5                   THE COURT:  All right.

6                   MR. WISSNER-GROSS:  Anyone who does not submit

7         a claim form by July 31st essentially waive their right to

8         exercise their own business judgment, to determine whether

9         they want to essentially request to get those securities

10        or take the option --

11                  THE COURT:  Okay, but -- so, now --

12                  MR. WISSNER-GROSS:  -- of the Trustee making a

13        discretionary judgment.

14                  THE COURT:  Okay.  Here are some persons out

15        there -- we have two persons.  One class for those persons

16        who got actual notice.

17                  MR. WISSNER-GROSS:  Well, let me -- if I could

18        speak to the issue of --

19                  THE COURT:  And, those persons who, because of

20        poor record keeping and the like, were not identified, and

21        were not given direct mailings, direct notice, and should

22        not be held to constructive notice based upon

23        publications.  And, we'll deal with that later.

24                  So, let's assume that there is some potential

25        class of persons, as a logical category, who bought real

1       mutual funds, whose names weren't reflected, and who,
2       therefore, are not the beneficiaries of actual notice.
3       You don't know who those people are.

4                   MR. WISSNER-GROSS:  Well, I can tell you
5       anecdotally, Your Honor, at the risk of injecting myself
6       as --

7                   THE COURT:  All right.

8                   MR. WISSNER-GROSS:  -- as a witness, --

9                   THE COURT:  Yes.

10                  MR. WISSNER-GROSS:  -- that I, personally, have
11      spoken to several investors, most of them in Florida, who
12      heard wind about the class action that we had filed -- and
13      this is before Judge Platt.  Some, within the last week or
14      two, called me up to find out the status of that, and I
15      asked them, "Did you receive the SIPC notice?"  And, they
16      said, "What SIPC notice?"  I said, "Well, it's -- there is
17      this notice.  It's important that, to preserve your
18      rights, you file a claim form by the end of July."

19                  And, I ended up faxing to them a copy of the
20      claim form, and assisted them in insuring that they submit
21      the claim form before the end of July, because, candidly,
22      I didn't know whether or not Your Honor was going to grant
23      the application.

24                  THE COURT:  All right, so -- but, --

25                  MR. WISSNER-GROSS:  But, --

                (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1       THE COURT:  -- Mr. Berkowitz knows, in his

2    other aspect of bankruptcy practice, that we have lots of

3    cases in which the Debtor's books and records aren't

4    adequate and there are folks who aren't given notice.  The

5    Bankruptcy Code is pretty severe about the discharge of

6    debts, even if you're not noticed.  If you read 1141, it's

7    got some pretty scary parts to it.

8            So, I'm concerned about the potential of

9    dealing with those persons -- and there may be one or

10   there may be ten or there may be a hundred -- who, despite

11   the best efforts of the SIPC Trustee and the New Age

12   Trustee, haven't been given notice and their rights may be

13   adversely affected.  And, if we had a vehicle for

14   preserving their rights, providing them with other kinds

15   of notice to avoid prejudice on their part, then maybe we

16   have to create an epicycle here to capture this very, very

17   small sub-class of persons.

18           And, I do think that if someone got actual

19   notice and they had all of this supplemental information

20   made available to them by the Trustee who really tried to

21   walk them through the numbers and provided other channels

22   of communication for informal explanations, that maybe

23   those persons should be put in a different category.  And,

24   if Congress should have, but hasn't, adjusted to the

25   realities of the investing public as it stands in 2001,

            (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1       then maybe that's something that we'll provide empirical
2       data for and this case will be one of many that will be
3       used as a feedback channel to Congress to say, "Hey, look,
4       you know, you've got to really re-think this proposition,
5       and here's -- you know, these are the persons who have
6       been adversely affected."

7                    And that's, I think, a useful function of
8       Bankruptcy Judges who are on the front lines, to report
9       back to Congress about how the world really works.  At
10      least that's the sense that I have.  And, it may be, you
11      know, tilting at windmills, but I think that's one of my
12      important functions, to report back to the Congress how
13      this Bankruptcy Code really works and whose ox is being
14      gored.  And, I did that in the context of re-affirmation
15      agreements, in terms of disclosures, and I've dealt with
16   .  that in terms of pension claims and some others, and I'll
17      continue to do that.

18                    But, if persons got actual notice under the
19      rules, what is the consequence of class certification or
20      class proof of claim?  Do they get, in effect, you'll
21      pardon me, a second bite at the apple?  Do they -- should
22      I be, in effect, opening up this sixty-day window for
23      those persons who got actual notice, but didn't understand
24      the consequence of that notice and didn't respond?  Maybe
25      because they were aged, infirm, they couldn't -- maybe

1      they were competent, in a legal sense, but they had to put

2      together a lot of information and maybe they suffer some

3      kind of disability.  Maybe they don't have the

4      sophistication that's imputed to them.

5              And, does this Court have any discretion

6      whatsoever, in the interests of justice and the fair

7      administration of a bankruptcy case, to create a mechanism

8      for opening up and extending that sixty-day period?  And,

9      what Mr. Giddens has told me, through his counsel and Mr.

10     Harbeck, is basically, "Look, that sixty-day limit is not

11     subject to excusable neglect.  It's a very firm deadline

12     that is tied to market fluctuations."

13             And, even though, in the *Pioneer* case, we

14     allowed for excusable neglect; and even though we're

15     torturing ourselves about what happens if you don't file a

16     complaint objecting to the discharge within sixty days, or

17     you don't file a complaint for a determination within

18     sixty days -- I mean, we deal with this every day in this

19     court.  And, we try to determine when is a rule a rule?

20     When is it jurisdictional?

21             If it says sixty days -- and there are sixty-

22     day limits all over the place in the Bankruptcy Court --

23     and, in the real world, it's very hard to satisfy that, so

24     I have constant motions to extend the deadlines.  And, if

25     you don't do the 2004 Examination before the sixty days,

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    and you don't file your papers, some judges say, "Tough

2    luck." Other judges are a little more liberal about those

3    things.

4           So, sixty-day limits is something that I know

5    about every day of the week, and I deal with it in

6    multiple contexts. And, we do try to pay some deference

7    to the concept of excusable neglect.

8           Now, I don't know why this sixty-day period is

9    any more sacrosanct than any other sixty-day period, and

10   the argument I assume that I've heard is it's different.

11   It's a different sixty-day rule because it's tied to a

12   very volatile market. And, what Congress was trying to do

13   is set some fairly severe limits for legitimate market-

14   based realities. And, if some person gets hurt, that's

15   unfortunate.

16          MR. WISSNER-GROSS: Well, Your Honor, I don't

17   view the sixty-day limit here as any different than any

18   other statute of limitations. I read the statute.

19          THE COURT: So, you're going to read me the

20   riot act under *Pioneer*, right?

21          MR. WISSNER-GROSS: Well, I think if you look

22   at the *Matter of Reserve*, the Seventh Circuit decision

23   that's the watershed case in this area for allowing class

24   proof of claims, and read that in conjunction with *First*

25   *Interregional*, I think the concept here is not that we're

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1   pushing back the sixty-day period, but that we're

2   satisfying it by allowing a class proof of claim.  There

3   is that analysis in *Matter of Reserve*, in the *Wang* case

4   which we cited when we've given our reply papers, and in

5   *First Interregional*.  And, that satisfaction is for --

6           THE COURT:  Well, --

7           MR. WISSNER-GROSS:  -- that satisfaction for

8   the people who never --

9           THE COURT:  -- counsel, I really think there's

10  a little bit of smoke and mirrors in that.  What you're

11  really saying is you're going to use a vehicle for one

12  purpose -- i.e., you've timely filed -- but then basically

13  you're going to back-door an extended period of time.

14          Are you telling me that, as a class

15  representative, for those persons who got actual notice

16  and didn't file, for those persons who didn't get actual

17  notice and didn't file, that their remedy is going to be

18  what?

19          MR. WISSNER-GROSS:  If I could address, for a

20  moment, the issue of actual notice, because I think that's

21  a threshold issue, and I think there may be a mis-

22  apprehension about the nature of the notice that went out

23  from the Trustee.

24          THE COURT:  Okay.

25          MR. WISSNER-GROSS:  The Trustee's initial

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    notice was sent out on June 1st.  That -- copies of that

2    notice have been attached -- are attached to our moving

3    papers, and attached to the Trustee's papers.

4              I think you'll search in vain in that notice to

5    find any discussion whatsoever of the significance of the

6    sixty-day period for this category of investors that we've

7    discussed, who have purchased mutual funds and would

8    forfeit their right if they did not submit a proof of

9    claim within the sixty days.

10             THE COURT:  Well, but, is -- is --

11             MR. WISSNER-GROSS:  There's no reference --

12             THE COURT:  But, is there an official form that

13   has to be sent out?

14             MR. WISSNER-GROSS:  I can't --

15             THE COURT:  I mean how much discretion does the

16   Trustee have, in terms of sending out a notice?

17             MR. WISSNER-GROSS:  That I can't speak to, Your

18   Honor, but I do know that the Trustee was certainly in

19   possession of information as to the nature of the specific

20   claims that we're talking about here well before that

21   letter went out.  And, the letter -- the June 1 letter

22   certainly does indicate an awareness of these affiliated

23   entities, although, interestingly, the June 1 notice

24   states that only customers of New Times would be entitled

25   to SIPC protection.  And, the notice caused enormous

             (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1      confusion among investors, and many investors --

2            THE COURT: Well, why would he send out a .

3      notice saying file your claims against entities other than

4      the broker/dealership which it's liquidating?

5            MR. WISSNER-GROSS: It said file your claims,

6      and the notice speaks for itself. It's been submitted to

7      you. But, it does say file your claims but, by the way,

8      SIPC protection is only extended to those who engaged in

9      transactions with New Times, the Debtor.

10           THE COURT: Why wouldn't it say that?

11           MR. WISSNER-GROSS: Well, it's appropriate to

12     say that, but it goes on to make reference to investors of

13     Gorren and his affiliated entities, --

14           THE COURT: Okay.

15           MR. WISSNER-GROSS: -- and we know, because of

16     the hearings that were held, the public sessions that were

17     held, really not at the request of the Trustee, but at the

18     decision of the Receiver who, through his contacts with

19     investors, had seen that there was just enormous confusion

20     among those who had received the notice as to whether, in

21     fact, they're even eligible to submit claims. There was

22     confusion at that level.

23           But, to the extent we're talking about a

24     category of those who clearly would be prejudiced by not

25     filing proofs of claim by July 31st, there is no

1    discussion whatsoever about the significance of that, even

2    though the Trustee clearly was in possession of

3    information as to that category.

4    THE COURT: Okay, so, you're -- you're saying

5    that the notice wasn't sufficient. It didn't put people

6    on notice about what they had to do in order to protect

7    significant rights.

8    MR. WISSNER-GROSS: That, number one.

9    And, number two, I think that if you engage in

10    a fair reading of the June 1 notice and then take the July

11    17th letter which they've attached --

12    THE COURT: Wait, didn't I approve the June 1

13    notice by the administrative order?

14    MR. WISSNER-GROSS: That is correct, Your

15    Honor, that it was -- the sending of the notice was

16    approved. But, my attack is really with respect to the

17    substance of the form of the notice.

18    THE COURT: Well, but how -- but, how do you go

19    -- how do you now go behind the order? I mean, the

20    question is -- look, at a matter of due process, this was

21    done on an ex-parte basis, notice to nobody?

22    MR. WISSNER-GROSS: No, but Judge, the issue is

23    not the deficiency of the notice per se. The issue is

24    that in this particular matter, under the facts of this

25    case, there are people who, but for the filing of a class

1    proof of claim, will not have the opportunity to protect

2    their potential rights under the class certification --

3    the issues that are going to arise in the class

4    certification.

5           And, we're not saying that -- stating that SIPC

6    is only available to customers of the broker/dealer was

7    itself incorrect or misleading.  The problem is that,

8    under the facts of this case, there are potential

9    plaintiffs who have claims under the alter-ego theory that

10   could boot-strap themselves into SIPC protection.  And,

11   because of the format of the notice, they would never

12   know.

13           THE COURT:  But, --

14           MR. WISSNER-GROSS:  They would never be able to

15   protect themselves --

16           THE COURT:  But, Mr. --

17           MR. WISSNER-GROSS:  -- in -- let me just finish

18   for a second.

19           THE COURT:  But, Mr. Wissner-Gross, I'm trying

20   to avoid begging the question here.

21           Let's assume that incident to some relief that

22   is fashioned, either negotiated or determined by a court.

23   I can't believe that if there was a determination after

24   the window had been opened and shut, that this Court or

25   any other court couldn't frame an equitable remedy that

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1          would correct this particular problem.  I can't believe --

2

3                    MR. WISSNER-GROSS:  Well, Judge, if you had --

4                    THE COURT:  -- that if we don't know who the

5          debtor is, and you had a claim against the Debtor as re-

6          defined after the fact, after the notice, that this Court

7          or any other court couldn't frame an appropriate remedy,

8          however difficult it might be, to put persons back into

9          that category that they would receive the benefit of

10         having timely filed within the sixty days.

11                    I mean, I can't believe that I'm that ostrich-

12         like, and I suspect, without anticipating the outcome of

13         any of this, that when we got to that issue, if I were the

14         Judge determining it, that I wouldn't call upon the

15         parties to fashion some appropriate equitable remedy for a

16         situation that wasn't intended.  I mean --

17                    MR. WISSNER-GROSS:  But, Judge, we have that

18         appropriate remedy right before you.

19                    THE COURT:  No, I -- no, I have to --

20                    MR. WISSNER-GROSS:  All you need do is --

21                    THE COURT:  I have to jump through all kinds of

22         hoops before I certify a class.  And what I'm trying to

23         understand is who is prejudiced.  And, I'm focusing not on

24         the -- what I am trying to focus on, just narrowly

25         remember, is who was clearly incontrovertibly a customer

1    of this broker/dealer who had direct contractual relations

2    with an entity named "X" and what happens if those persons

3    who received a notice didn't file a claim within sixty

4    days.

5    Now, with respect to that narrow range of

6    persons, if they didn't get their information sheets in on

7    time, they didn't fill in the blanks, and Mr. Giddens

8    didn't require them to submit all of their definitive

9    records within this sixty-day period of time -- they had a

10    -- you know, they had to have filed at least a proof of

11    claim that met certain threshold conditions, but it wasn't

12    going to be deemed a complete proof of claim, with no

13    opportunity to supplement or amend the proof of claim.  At

14    least that's the way I read the various papers.

15    So, under those kinds of circumstances, for

16    those persons who got actual notice, why should they be

17    entitled to any additional measure of protection, any

18    additional opportunity to get into the well?

19    MR. WISSNER-GROSS:  Your Honor, in terms of

20    equitably tolling the sixty-day period which you suggested

21    might be a mechanism that's available to the Court, my

22    understanding of the position of the Trustee is that you

23    don't have that right, that the statute doesn't permit it,

24    and that it's an irrevocable sixty-day period.  We --

25    THE COURT:  As to --

1          MR. WISSNER-GROSS:  -- as --

2          THE COURT:  As to the particular broker/dealer.

3    He's assuming that the broker/dealer was a valid,

4    subsisting, separate corporation.  He isn't making -- he's

5    not asking this Court to make any determination at this

6    level who was the Debtor.

7          MR. WISSNER-GROSS:  Right, but the claims that

8    are being asserted are on behalf of investors who believe

9    that they have a claim as customers of the broker/dealer,

10   pursuant to SIPA and the case law construing alter-ego

11   liability.

12         So, the -- the OXY account holders, who would

13   be members of the putative class are, in fact, asserting

14   the position that they are customers of the Debtor and are

15   entitled to the maximum relief and coverage available by

16   SIPA.

17         THE COURT:  Okay, but let's assume that there

18   was a universe of persons who dealt with other entities --

19   related, affiliated entities -- that, after we go through

20   the rigors of discovery and the like, that this Court

21   ultimately concludes that the Debtor should encompass --

22   the entity should encompass these other entities, one or

23   more.  And, persons who dealt with those other entities,

24   who bought securities, who bought market funds, should be

25   entitled to participate in this so-called guaranty fund.

1          Under those kinds of circumstances, why do I
2   need a class action there?  Why can't I create that relief
3   after the fact and simply say -- look, at the time Mr.
4   Giddens was operating under the assumption that he knew a
5   particular entity.  He expanded the network and gave
6   opportunities for people to file things, subject to his
7   opportunity to object.

8          But, since I'm not going to now determine the
9   issue of whether or not there was an alter-ego, and I
10  don't know why I should be conducting a hearing on such
11  expedited notice -- that's a very fact-intensive matter
12  and you haven't had time to complete your discovery, nor
13  has Mr. Giddens had opportunity to complete his discovery
14  -- so, why should I be forced to some kind of ersatz
15  determination on an issue that hasn't been subject to
16  discovery within the sixty-day window?

17         When I look at all the other cases, they're not
18  about shoe-horning something into sixty days.  They're
19  years later.  When you look at even the New Jersey case,
20  Judge Gambardella didn't make a decision about class
21  certification within the first sixty days.  I'm a little
22  concerned that -- that you're asking me to make
23  determinations that are very inchoate at this point, based
24  upon facts that have yet to be determined, and I don't
25  know why I have to -- you'll pardon me -- put the cart

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    before the horse. I don't know why we can't frame some

2    remedy now so that those persons who got actual notice and

3    who didn't file their claims can have some opportunity to

4    come in and argue that they had excusable neglect or some

5    equivalent for why they missed the sixty-day window.

6              And, for those persons who didn't get actual

7    notice, clearly it's going to be an easier case to make.

8    They shouldn't be prejudiced.

9              But, why do I have to decide that now? Why

10   can't the two of you -- Mr. Kobak and you -- with the

11   assistance of other counsel come up with some mechanism so

12   that those persons who got actual notice and didn't file

13   on time will have an opportunity to argue excusable

14   neglect? We don't need a class mechanism for that.

15             And, for those persons who didn't get actual

16   notice, since we can't even find out who they are, we'll

17   deal with that after the fact.

18             MR. WISSNER-GROSS: Your Honor, I think there

19   are --

20             THE COURT: I mean, you know, I believe that we

21   have to be sensitive to the nuances and the complexities

22   of life.

23             MR. WISSNER-GROSS: There --

24             THE COURT: And, that's why we have

25   opportunities to invoke these equitable doctrines, but it

          (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1    requires a special showing on the part of someone who's

2    coming in late to get that better benefit.

3        MR. WISSNER-GROSS: I think there are two

4    different concepts at play here that we can break out

5    separately. And, I think -- at the outset, I think you've

6    correctly identified the issue of focusing on the filing

7    of the class proof of claim as a discrete issue, separate

8    and distinct from certification.

9        The way, I think, to resolve the issue and the

10   problem you have posed, is to allow the class proof of

11   claim to be filed. That doesn't mean that for all time

12   eternal that it will stand. In a typical Rule 23 class

13   action setting, the permission of the court is not

14   required to file a class action. The significance of

15   filing the class action is that it, in effect, allows all

16   the absent class members to await the outcome of the

17   determination of a class certification motion, to see

18   whether or not they have to bring their own claims or

19   participate via the class mechanism.

20       Here, if a class proof of claim is allowed to

21   be filed now, we're not saying that you have to decide the

22   alter-ego issue. You don't even have to decide whether

23   there are common issues that predominate, or whether the

24   investors' claims are typical, although we think there has

25   been an adequate showing. You can leave that for another

1    day.

2         You can leave that, for example, to allow for a

3    full record to be developed on the appropriateness of

4    class certification.  And, if Mr. Kobak next week honors

5    every claim, in the fullest, he may come back and say to

6    me and say to Your Honor the motion is moot, because

7    everyone's claims have been satisfied.  Or, the numbers of

8    investors whose claims haven't been satisfied are so low,

9    that they're somehow less than the magical forty person

10   member the Second Circuit has utilized.

11        In fact, when we were before you on the 28th of

12   June, and afterwards, I've had discussions with Mr. Kobak

13   and had said we will hold off a bit filing the motion.  If

14   you end up honoring all the claims, obviously there's no

15   need to file it.

16        But, the proof of claim is only one step, and I

17   think, as a practical matter, it's a lot simpler to allow

18   a proof of claim which would encompass everybody in the

19   category --

20             THE COURT:  Okay, but --

21             MR. WISSNER-GROSS:  -- in these various

22   categories, --

23             THE COURT:  But, --

24             MR. WISSNER-GROSS:  -- than having to go on

25   some piecemeal basis --

1              THE COURT:  But, when the --

2              MR. WISSNER-GROSS:  -- and --

3              THE COURT:  But, when we get down to crunch

4      time, the question is what happens to the person who

5      received actual notice and didn't get his claim in?  What

6      is -- Mr. Giddens makes a very strong argument:

7              "Look, I deal with this one customer at a time,

8      you know.  Classic broker/dealer.  I deal with customers

9      one at a time.  And, until I have a full file on each

10     claim, I can't really make a determination about it, and

11     I'll move as expeditiously as possible.

12             "You know, I'm basically a service

13     representative for the industry, and I want to get money

14     out to these folks.  I want to get them their satisfaction

15     as quickly as possible.  I want them to continue to invest

16     in the market.  That's my function, in some broader sense.

17             "But, I can't deal with a class action claim.

18     I can deal with facilitative devices, within some rubric,

19     but at the end, if I'm going to write anybody a check, I

20     need to have their discrete account history, and the

21     documentation relative to that account history."

22             How does a class proof of claim enhance that

23     function?

24             MR. BERKOWITZ:  Judge, every -- every

25     individual class member ultimately has to prove the amount

           (516) 741-5342   Tankoos Reporting Co.  (212) 349-9692

1    and the validity of their claim.  The issue that arises

2    out of the filing of the class proof of claim arises from

3    the alter-ego issues.

4         There are people out there who may never have

5    dealt with the broker/dealer, who dealt with the other

6    affiliated entities, who will not file a claim, but they

7    will, by virtue of not filing the claim, --

8         THE COURT:  Well, why do I have to now permit

9    the filing of a claim for persons who did not deal

10   directly with an entity?

11        MR. BERKOWITZ:  Well, but, the issue is if

12   ultimately someone prevails, whether in a class setting or

13   otherwise, on the alter-ego theories, then even if you

14   substantively consolidate to the various entities, people

15   who failed to file claims will be out to lunch.

16        THE COURT:  You're telling me that there's

17   going to be an estoppel, that -- that --

18        MR. BERKOWITZ:  Well, I think --

19        THE COURT:  -- even if you win, you lose,

20   because at least as to this, whatever these benefits are

21   within the sixty-day period Mr. Harbeck's explained, that

22   Mr. Giddens is going to turn around and say, "Okay, we

23   didn't really care who the Debtor was.  A determination

24   has been made.  Now the Debtor includes entities "X," "Y,"

25   and "Z."  But, because "X" was the Debtor, and your claim

1       initially was against "Z," you're out of time."

2               So, even though after the fact the Court makes

3       a substantive determination that the Debtor is "X," "Y,"

4       and "Z," if you had a claim against "Z" and you didn't

5       file in the sixty days, tough luck, Charlie.

6               MR. BERKOWITZ:  Judge, we don't know --

7               THE COURT:  You're telling me that that's --

8               MR. BERKOWITZ:  -- whether Mr. Giddens is going

9       to --

10              THE COURT:  -- what you're worried about?

11              MR. BERKOWITZ:  -- do that or not.  That's why

12      you file a class proof of claim.  That's why --

13              THE COURT:  No, no, why don't I deal with --

14              MR. BERKOWITZ:  -- 7023 exists.

15              THE COURT:  -- why don't I deal with this

16      incidence of the relief granted after a substantive

17      determination on the merits of this alter-ego theory?

18      And, why can't I, at that point, back-door a resolution of

19      it that is fair?

20              I don't know why we have to be buying insurance

21      policies at this time, that say if you had a claim against

22      "Z" and you got actual notice, constructive notice, or no

23      notice at all, and you didn't file within the sixty-day

24      window, you don't get this limited additional measure of

25      protection.  How could I put myself in that situation?

1    And, how -- and, how could I assume that as a responsible
2    jurist I would do that to people?
3              You're telling me, "Well, Judge, we trust you,
4    but we don't trust the Second Circuit. We don't believe
5    that we should have to litigate this issue after the
6    fact," --
7              MR. BERKOWITZ: When we have a very --
8              THE COURT: -- "so, we're now buying insurance
9    policies"?
10             MR. BERKOWITZ: When we have a very simple
11   solution, which is provided for under the rules and the
12   case law.
13             MR. WISSNER-GROSS: Your Honor, your suggestion
14   that the proof of claim be addressed at the same time as
15   the merit certification is not procedurally how a typical
16   class action operates. A class action --
17             THE COURT: Well, but this isn't a typical
18   class action.
19             MR. WISSNER-GROSS: But, once you choose to
20   invoke the procedures to --
21             THE COURT: Look, if I understand this, the
22   Debtor doesn't exist.
23             MR. WISSNER-GROSS: That's correct.
24             THE COURT: Okay? And, there's no enemy here.
25   Mr. Giddens isn't the enemy. SIPC isn't the enemy. I

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    mean, you know, if you have fraud claims against one or
2    more of these entities, you may have an unrecoverable
3    judgment. And, let's assume that these people were, in
4    fact, defrauded, egregiously defrauded, by a guy who
5    should be put in jail. But, even if they put him in jail,
6    that's not going to get them any money. He doesn't have
7    any basis of restitution.

8            So, what I'm trying to do is, why do I have to
9    jump through all of these hoops to cover this
10   hypothetical, namely that you may, at some point in the
11   future, persuade me or Judge Platt or some other jurist,
12   that these people are entitled to some unique equitable
13   remedy, and we had to protect them ex ante by filing a
14   class proof of claim and having you stretch the limits of
15   the jurisprudence to validate that in advance? Why -- why
16   am I so powerless to construct a remedy after the fact?

17           MR. BERKOWITZ: First of all, it's not unique.

18           THE COURT: What's not unique?

19           MR. BERKOWITZ: The alter-ego -- the alter-ego
20   theories are not unique. Secondly, the class proof of
21   claim theory is not unique.

22           And, while we don't believe that SIPC is the
23   bad guy, or that the Trustee is the bad guy, there has
24   been some institutional subjective intention here,
25   evidenced by the de facto  objection filed against the

1    relief we've sought.

2           THE COURT:  Well, wait a minute.  I'm trying to

3    track all these fictions.

4           Not the bad guy.  That I understand.  What was

5    the institutional what?

6           MR. BERKOWITZ:  Subjective institutional

7    intention.

8           THE COURT:  Subjective institutional intention.

9    And, who's the institution?

10          MR. BERKOWITZ:  SIPC.

11          THE COURT:  Okay, and what's the subjective

12   intention that you're reading in the tea leaves here?

13          MR. BERKOWITZ:  Well, look -- Mr. Harbeck stood

14   up here, right before you and very proudly told you he's

15   never dipped into the public funds.

16          THE COURT:  Okay.

17          MR. BERKOWITZ:  They don't want to pay out, all

18   right?  You can accept that.  They filed seventy pages'

19   worth of argument, basically arguing the merits on -- on

20   the alter-ego theory, which to my way of thinking is a de

21   facto objection on -- on those issues.

22          So, you're right.  There are -- there are no

23   bad guys here, and this certainly isn't personal --

24          THE COURT:  Okay, so, in --

25          MR. BERKOWITZ:  -- but -- but there are

        (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1      adversaries --

2                    THE COURT: -- so, subjective institutional

3      intention.  I got that.

4                    What was the next one?  *De facto* what?

5                    MR. WISSNER-GROSS:  *De facto* objection.

6                    THE COURT:  *De facto* objection.  Okay, great.

7      I love this stuff.

8                    [Laughter]

9                    MR. BERKOWITZ:  I knew you would.

10                   THE COURT:  Yeah, I know you know.  I like

11     labels as much as you do.  Okay, inventive labels.  I love

12     them.

13                   Okay.

14                   MR. BERKOWITZ:  And, you know, if you look at

15     the section on 7023 in Collier's, --

16                   THE COURT:  Yeah.

17                   MR. BERKOWITZ:  -- which cites to the *REA* case,

18     it's exactly the situation we have there.  In that case,

19     it says --

20                   THE COURT:  I'm surprised you guys didn't read

21     my former colleague's paper.

22                   MR. BERKOWITZ:  How do you know we didn't?

23                   THE COURT:  Well, it's not cited in the

24     materials that I saw.

25                   MR. WISSNER-GROSS:  We only had three days.

                 (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1          MR. BERKOWITZ: *REA* says, furthermore, --

2          THE COURT: No, no, let me tell you about this

3     paper.

4          When I taught for a limited period of time at

5     the University of Toledo College of Law, one of my

6     colleagues was Paul Wahlmuth [phonetic] who taught a class

7     on criminal law. And, my wife would come home every night

8     screaming that this guy had his head in the clouds, that

9     he only wanted to talk about these philosophical concepts,

10    and she simply wanted to learn the elements of the

11    criminal offenses. And, he didn't want to do that. He

12    wanted to spend, you know, the first nine weeks talking

13    about *mens rea* and various, you know, theories of

14    deterrents and rehabilitation. And, all she wanted to

15    know is, you know, what happens with breaking and

16    entering. She's a very practical lady.

17         Well, one of Professor Wahlmuth's minor

18    achievements was to submit a paper, I believe in 1973, to

19    the Bankruptcy Reform Commission, urging the Bankruptcy

20    Reform Commission to make a proposal to Congress to resort

21    to class action concepts in bankruptcy. And, that paper

22    was published, I believe, in the *University of California*

23    *Law Review*, and for many years, was regarded as the

24    leading piece on this issue.

25         Professor Wahlmuth lost. He lost that

1    argument.  It wasn't adopted by the Bankruptcy Reform

2    Commission, and it wasn't adopted by the Congress.

3    So, the idea was surely around at the time, and

4    he made a very persuasive case, I thought, for using class

5    action concepts.  But, he didn't prevail.  So, this idea

6    has been around during the gestation period of the Code,

7    back when, you know, Professor Kennan [phonetic] and the

8    others were doing phenomenal work trying to make sense out

9    of bankruptcy.  And, the quality of their deliberations

10   was hardly exceeded by the last Reform Commission.  I

11   mean, those papers are still a gold mine of very

12   thoughtful analysis.

13   But, I have trouble putting 7023 into the

14   context of this kind of proceeding, not because I accept

15   the plain language constructions that somehow Congress

16   says, "A creditor shall file a claim" and that's radically

17   different from "A creditor may" in a non-SIPC proceeding,

18   and somehow the whole world should turn on the selection

19   of that semantic distinction.  And, all kinds of other

20   arguments are advanced in the SIPC vein.  I don't buy that

21   kind of stuff.

22   I'm not going to make this decision based upon

23   the distinction between "shall" and "may" although the

24   Second Circuit loves that distinction, as we've recently

25   seen, coming out of the Bankruptcy Court here.  And, they

1     don't allow us to exercise any discretion when it says

2     "shall."

3          So, I know that at least SIPC has the winning

4     argument on that before the Second Circuit, about the

5     significance of "shall," and if it says "creditor" and it

6     doesn't say "class representative," that's fatal. Okay?

7     I'm not writing an opinion on that line. Let them take an

8     appeal on that issue. That's not persuasive at all to me.

9          But, I am still trying to focus on whose ox is

10    being gored when that person was a customer of this

11    Debtor, who got the notice, and didn't file within the

12    sixty days, and whether or not we should create an extra

13    loop, in the form of a class proof of claim somehow if we

14    can analytically divide class certifications from class

15    proofs of claim. And, it's a little hard to do that, but

16    I'm willing to split this baby very, very cleanly.

17          And, the question is, what procedure do you

18    anticipate is going to take place that will allow, if at

19    all, someone to submit the detailed information necessary

20    to get this additional limited benefit within the sixty-

21    day window, if that person, as of July 31st, hasn't filed?

22    That's the practical question.

23          And, maybe it's six people and who could care

24    less.

25          MR. WISSNER-GROSS: Your Honor, if it's six

1    people and who could care less, respectfully, there's no

2    prejudice to SIPC and the Trustee by having a class proof

3    of claim. Because, if you don't have to decide the class

4    certification motion now, and they have thirty days to

5    come out with their decision on some basic issues that

6    will certainly shape whether or not we're going to have --

7

8            THE COURT:  Well, maybe it takes them a hundred

9    and twenty days.  I'm not going to put them into a

10   straightjacket and --

11           MR. WISSNER-GROSS:  But, you can certainly --

12           THE COURT:  -- make them decide things before

13   they can.

14           MR. WISSNER-GROSS:  You can certainly reserve

15   decision on a class certification motion while allowing

16   the class proof of claim to be filed, and see how this

17   plays out --

18           THE COURT:  But, you're still not answering me.

19   What is going to happen?  Let's be specific.

20           What is going to happen to Mrs. Berman, who has

21   a claim as a customer against this particular Debtor for

22   two hundred and fifty thousand dollars' worth of money

23   market funds in a fund that did exist and continues to

24   exist, and she didn't get her claim in within the sixty

25   days?  Is she going to get some expanded opportunity by

1    virtue of your vehicle to file that claim?  And, maybe

2    that's a good idea, but I just want to know what you have

3    under your shell.

4    MR. WISSNER-GROSS:  The only thing that Mrs.

5    Berman would get the right, if the class is ultimately

6    certified, to make a determination or an election whether

7    she wants to get the securities, basically, the mutual

8    funds purchased and delivered to her if, ultimately, we

9    establish that other criteria for customer claims are

10    satisfied, as opposed to leaving it to the discretion of

11    the SIPC Trustee, if he's satisfied that we're correct on

12    the alter-ego theory that he should honor the claim.

13    So, no, we're not talking about every aspect of

14    their rights.  That's --

15    THE COURT:  No, no, no.  I'm still trying to

16    focus.  You keep shifting the ground on me on the alter-

17    ego.  I'm still trying to deal with Mrs. Berman, who was a

18    customer --

19    MR. WISSNER-GROSS:  Mrs. Berman --

20    THE COURT:  -- of this particular

21    broker/dealer, who didn't file her claim within sixty

22    days, with respect to her interest as an investor in a

23    bona fide, subsisting mutual fund.  Let's just focus on

24    that narrowest of issues.

25    Does she get any additional benefit that she

1    wouldn't get absent this class proof of claim?

2            MR. WISSNER-GROSS:  The benefit she gets is

3    that if she hadn't filed within sixty days, and the class

4    is ultimately certified, and we prevail in all the points,

5    she will get that right of -- she will have the right to

6    receive the securities, as opposed to leaving it to the

7    discretion of the Trustee whether to satisfy her claim in

8    cash or securities.

9            THE COURT:  And, the measuring point is --

10           MR. WISSNER-GROSS:  Well, I --

11           THE COURT:  -- the same measuring point for

12   those persons who filed within sixty days, right?

13           MR. WISSNER-GROSS:  Correct.

14           THE COURT:  Okay.

15           MR. WISSNER-GROSS:  Correct.

16           THE COURT:  All right.  So, now, we go to the

17   second category, those persons who bought shares in a

18   subsisting, bona fide money market fund from not the

19   Debtor, but an entity nominally called "Z."  What rights

20   does Mrs. Berman have if she's in that category?

21           MR. WISSNER-GROSS:  It should be exactly the

22   same, exactly the same.

23           THE COURT:  Okay.  And, if I said I'm going to

24   let this class certification -- I'm going to let this

25   class proof of claim go to only those persons who were

        (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1          actual customers of the Debtor, there's some benefit to

2          that.

3                    Why can't I limit the class to that, and leave

4          open the other issues of what's going to happen if "X" and

5          "Z" are determined to be the same?

6                    MR. WISSNER-GROSS:  If you're saying only limit

7          the class to those customers -- those customers who were

8          customers of --

9                    THE COURT:  The broker/dealer.

10                   MR. WISSNER-GROSS:  -- New Times, the Debtor,

11         --

12                   THE COURT:  Right.

13                   MR. WISSNER-GROSS:  -- who purchased these

14         fictitious money market funds or these --

15                   THE COURT:  No, no --

16                   MR. WISSNER-GROSS:  -- mutual funds --

17                   THE COURT:  -- purchased subsisting, actual

18         funds.

19                   MR. WISSNER-GROSS:  Right.

20                   THE COURT:  The Janus Fund.

21                   MR. WISSNER-GROSS:  To -- to my understanding,

22         --

23                   THE COURT:  Yeah.

24                   MR. WISSNER-GROSS:  -- in terms of how the OXY

25         account holders were set up by Gorren and the customer

                    (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1    statements they received, I don't believe that the

2    majority of them were also receiving simultaneously New

3    Times broker/dealer statements.  So, what you would be

4    effectively doing by carving out some --

5          THE COURT:  So, you're telling me that -- that

6    the purchaser -- Mrs. Berman, who purchased Janus Fund

7    from the broker/dealer is a member of null class.  She

8    didn't exist.  So, she doesn't need to be protected.

9          MR. WISSNER-GROSS:  Well, no, let me put it

10   this way.  Let me explain to you, in essence, how it

11   operated.

12         Most of the investors -- the Mrs. Bermans, as

13   you characterize them -- went to Gorren and thought they

14   were dealing with a registered broker/dealer and

15   purchased, gave orders to purchase real mutual funds which

16   they thought were being purchased through a real

17   broker/dealer, and they received confirmations that --

18         THE COURT:  Okay.

19         MR. WISSNER-GROSS:  -- spend a hundred thousand

20   dollars of my retirement money to buy Janus, --

21         THE COURT:  Okay.

22         MR. WISSNER-GROSS:  -- here's your statement

23   the next month.  You bought "X" number of shares, and then

24   every subsequent month, they would show how the dividends

25   have -- how it's been appreciating.

1            THE COURT:  Correct, okay.  Complete --

2            MR. WISSNER-GROSS:  The statements they

3    received --

4            THE COURT:  -- complete phonies.

5            MR. WISSNER-GROSS:  -- were -- were not on the

6    New Times broker/dealer statement, but on these affiliate

7    statements that looked, smelled, and tasted like real

8    brokerage statements, and we've submitted some

9    illustrations to Your Honor, --

10           THE COURT:  Okay.

11           MR. WISSNER-GROSS:  -- and we submitted this

12   morning all the back-up for the class representatives.

13           So, the class that you've defined is, perhaps,

14   the more limited class of customers who purchased through

15   the broker/dealer.  For purposes of our class, probably

16   wouldn't exist, in the sense that these people did not get

17   statements from New Times broker/dealer, but got

18   statements from the phony Gorren-affiliated entities --

19   New Age Securities Corp., New Times --

20           THE COURT:  Okay, so, why do I have to assume,

21   for purposes of protecting this group, that with respect

22   to the sixty-day window, I need to determine that a class

23   proof of claim can be filed in this case for the OXY

24   purchasers from the non-Debtor entities, who purchased

25   real securities, and they were given statements for that,

1    and (a) those securities were never purchased, or (b) if

2    they were purchased, they were converted, and they

3    continued to get fraudulent statements?  Why, now, do I

4    have to protect the OXY customers?

5              MR. WISSNER-GROSS:  Because, if you don't

6    afford them the relief we're requesting, and six months

7    from now we're before you, litigating the issue of alter-

8    ego liability on a common basis, across the board, --

9              THE COURT:  And you win.

10             MR. WISSNER-GROSS:  -- these -- and we win,

11   then --

12             THE COURT:  You don't think I can't --

13             MR. WISSNER-GROSS:  -- then -- then --

14             THE COURT:  -- frame a remedy that's going to

15   protect these people after the fact?

16             MR. WISSNER-GROSS:  As I understood -- if SIPC

17   were to consent to some form of equitable remedy now,

18   which we could fashion here, we're perfectly prepared to

19   work with them.  But, my understanding of their position

20   is that there's a line in the sand.  They don't have any

21   authority to extend the sixty-day period.  The statute

22   provides very limited circumstances if you are

23   incompetent, for example, or you're a child.  But that,

24   from their perspective, you don't have the authority.

25   They don't have the authority.  And, Congress didn't give

1    them the authority. And, that's why a class proof of
2    claim is the simplest most non-threatening and most non-
3    prejudicial way, to them, to be able to preserve the
4    rights of these people.

5        THE COURT: Okay, so, now -- now let's try to
6    be a little practical about this. I go ahead and grant
7    your motion. Okay? And, the sixty-day window just
8    evaporates. Now it's a six-month window. And, we have to
9    keep very detailed differentiations between those who
10   would be in the sixty-day window and those who are outside
11   of it.

12       Then, I have an interlocutory decision, and the
13   only way they get to appeal it is to now argue that the
14   court should take jurisdiction over an interlocutory
15   decision. And, now they've got to go through all of those
16   hoops. And, if they don't take the appeal, then you're
17   going to argue that the order became final, and by
18   operation of law, they've lost any appeal rights. And,
19   now they're incurring all these transaction costs in
20   dealing with you, whom they don't think they should be
21   dealing with, on all of these kinds of questions.

22       And, you keep getting in their face, at every
23   single hearing. "Judge, you've got to remember. Take
24   care of the OXY people." And, you're here on every single
25   hearing, and you keep making these arguments.

(516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1          Or, they file their motion for interlocutory

2     appeal and it sits on a certain judge's docket for two and

3     a half years.  Hasn't been reversed, and they're still

4     dealing with you.  I mean, we have these problems in this

5     court.

6          Now, some judges are very expeditious about

7     this, and they'll jump on a interlocutory appeal faster

8     than I can sign it.  Others will say, "Hey, you know, go

9     back to Judge Bernstein."

10         You know, this is John Paul Sartre's notion of

11    hell.  No exit.  Everyone in the room together.  You

12    living there for the rest of your days.

13         [Laughter]

14         THE COURT:  Okay?  So, we have these competing

15    images.  So, it's not -- it's not such an innocent thing

16    when I enter an order.  It has certain practical

17    consequences.  It imposes a relationship, whether I had

18    the jurisdiction or not to do it.  The Supreme Court of

19    the United States says Bankruptcy Judges can enter

20    whatever orders they want, even if they have a colorable

21    basis for jurisdiction.  And, if you don't take a timely

22    appeal, tough.

23         You know, this arose out of the asbestos cases.

24         MR. WISSNER-GROSS:  Your Honor, respectfully, I

25    think you're going to be seeing us, regardless of the

(516) 741-5342    Tankoos Reporting Co.  (212) 349-9692

1    outcome of this motion, because we do represent already a

2    significant --

3                    THE COURT:  Mr. Wissner-Gross, --

4                    MR. WISSNER-GROSS:  -- investor loss.

5                    THE COURT:  -- I am delighted that you're here.

6    I'm delighted that you have associated yourself with this

7    experienced counsel.  And, I'm delighted that you'll

8    indulge me for all these hours, as if you had nothing else

9    to do but to entertain me.

10                   And, we go through this argument because I'm

11   going to lose my summer clerks in a few weeks, and after

12   that, we won't have any of this colloquy.  This is only

13   really for their benefit.  We've already been through

14   this.

15                   [Laughter]

16                   THE COURT:  Mr. Kobak knows about why I conduct

17   these hearings for the benefit of my summer clerks, so --

18   other than embarrassing them and myself.

19                   It's now about ten past twelve.  We've been

20   going at this for a while.  I'd like to see you try to put

21   your heads together and see if you come up with some

22   interim, provisional, ad hoc solution, limited to this

23   case only, not to be published, that deals with both the

24   customers of the Debtor who got actual notice and didn't

25   file, those who, perhaps should have been given notice and

(516) 741-5342    Tankoos Reporting Co.  (212) 349-9692

1    who will be identified during the process of time, through

2    word of mouth or through other means of communication,

3    through re-solicitations of notice, if that's appropriate,

4    with all kinds of detailed supplemental information.  We

5    can work on all that in a practical way.  And, also deal

6    with the OXY customers, who clearly aren't customers at

7    first blush of the broker/dealer, and the sixty-day

8    period.  And, see if you can't come up with -- you can

9    call it an "elephant."  It doesn't have to be called a

10   "class."  You can call it whatever you want.

11           And, see if you can't put your heads together

12   in a practical way and avoid burdening me with having to

13   write this brilliant opinion that's likely to be roundly

14   criticized in one forum after another.  Because, I just

15   want to administer this case and keep the costs down.

16   And, see if you can't split these very fine distinctions

17   in a way that it's viable.

18           And if, after a reasonable period of time, you

19   say, "Look, we can't work it out.  It's just a judgment

20   call.  You've got to make it."  Then, I deal with it then,

21   and I'll --

22           MR. WISSNER-GROSS:  We're happy to --

23           THE COURT:  -- come up with some, you know,

24   refined set of distinctions that will only satisfy me.

25   But, I'll be ultimately pleased that I thought it through,

1    with the aid of my summer clerks.

2              MR. WISSNER-GROSS:  We're happy to work with

3    the other side.

4              THE COURT:  All right.

5              MR. KOBAK:  Your Honor, we're of course willing

6    to sit down with Mr. Gross and Mr. Berkowitz.  I don't

7    think I'm very optimistic of --

8              THE COURT:  Well, don't -- don't start with

9    that kind of negativism.

10             MR. KOBAK:  -- that we're going to -- all

11   right.

12             THE COURT:  Have --

13             MR. KOBAK:  And, I also think --

14             THE COURT:  -- have some help from the SEC.

15   I'm sure that she has all the solutions.

16             MR. KOBAK:  We're --

17             THE COURT:  Or by the Receiver --

18             MR. KOBAK:  -- we're talking about a --

19             THE COURT:  -- of the other entity, because he

20   wants to be the hell out of here.  He's not getting paid

21   for this.

22             [Laughter]

23             MR. KOBAK:  We're talking about a problem that

24   may be non-existent, because --

25             THE COURT:  I agree with you.

       (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1          MR. KOBAK:  -- we don't know if there are any

2     of these people.  We don't know what the Trustee --

3          THE COURT:  Mr. Kobak, you're absolutely right.

4     Those are --

5          MR. KOBAK:  -- is going to do in the future --

6          THE COURT:  -- the kinds of problems that

7     lawyers indulge in.

8          I remember, when I was in practice, I was

9     representing a participant in a multi-bank facility, and

10    we were dealing in the early stages of securitization of

11    accounts receivable.  I think we were financing chattel

12    paper from car dealers, or something of that sort, and I

13    represented National Bank of Detroit.

14          So, I get thrown into these conversations, and

15    I get the lawyers in San Francisco and Chicago out-

16    stunting each other and imagining one hypothetical

17    disaster after another and papering that over.  It went on

18    and on and on for two and a half hours.  And, I thought it

19    was a delightful set of exchanges over non-existent

20    problems that showed the inventiveness of lawyers.

21          But, I didn't have any control over that, and I

22    tried to explain it to the client, and he said, "What?

23    That isn't what our problem is."

24          The next time I had an opportunity to do this,

25    I had a young partner, a brilliant lawyer whose father was

1    a partner in one of the leading New York firms, who had
2    been an outstanding honors graduate from the University of
3    California at Berkeley, and I was trying to draft some
4    documents, and he kept raising these issues. And, he got
5    -- went around and around with some of the tax lawyers at
6    Weil Gotschal, thinking of all kinds of inventive problems
7    that we had to fix. And, I finally threw him out of my
8    office.

9            I said, "Look, this is ridiculous. Our client
10   can't afford this. You're just playing with yourself.
11   We've got a deal. We've got to get it closed. I don't
12   want to take any more write-offs." And, I threw him out
13   of my office. I said, "There's a time when you've got to
14   make a decision and cut your losses. It's not going to be
15   perfect, but we're not going to sit here speculating over
16   all kinds of horror stories that have a very low
17   probability of occurrence."

18           But, I do think that the putative class
19   representatives here do represent significant economic
20   interests where measurable harm has been suffered
21   involving significant dollars. And, if we have to frame
22   some *ad hoc* remedy to make sure that no one gets
23   prejudiced, we'll do that. And, we will try to keep the
24   hypotheticals under reasonable check, because this isn't
25   an academic exercise. As much as I love academic

1   exercises, I'm still trying to be pragmatic.  I realize

2   that there are significant dollars here, and this case may

3   have some portfolio significance for other kinds of cases.

4           MR. KOBAK:  With all due respect, Your Honor, I

5   don't see how anyone is prejudiced.  If they got actual

6   notice, they still are entitled to -- in Mrs. Berman's

7   case -- SIPC protection of at least two hundred and fifty

8   thousand dollars.  We don't know.  It seems very unlikely

9   to me that her securities would have gone up in this

10  period.  Even if they did, --

11          THE COURT:  Okay.

12          MR. KOBAK:  -- there is discretion as to how

13  the Trustee would handle it.  It seems to me we're talking

14  about --

15          THE COURT:  Okay, but I wanted to -- I --

16          MR. KOBAK:  -- a situation that's not going to

17  exist.

18          THE COURT:  -- look, Mr. Kobak, I understand

19  your reservations, and you have a very sensible position.

20  But, I also think that your opposing counsel have a

21  sensible position.  And, I'm trying to suggest to you, but

22  I'm not going to force it -- I'm trying to suggest to you,

23  if you can't decide together, informally, and get to a

24  position of yes between yourselves that doesn't compromise

25  the administration of this case, that recognizes that the

1   world is a far more difficult thing to navigate than

2   Congress imagines, and we will try to keep the collateral

3   damage to an absolute minimum. That's all I'm trying to

4   achieve.

5           MR. KOBAK: All right. Well, I said I was

6   willing to talk. I'm also willing to talk to Mr. Wissner-

7   Gross and Mr. Berkowitz, Your Honor.

8           THE COURT: Okay, all right. Well, let -- let

9   the SEC and the Receiver participate in that, because I'm

10  sure if they lend their good offices to this, along with

11  Mr. Harbeck, you're going to be able to come up with

12  something.

13          And, I know that Mr. Berkowitz prides himself

14  on being highly responsive to novel situations. That's

15  how he gets his reputation in this jurisdiction. He's

16  very good at mediating controversies.

17          So, I'm sure, together, you'll be able to do it

18  without my further intervention. But, if it comes to

19  naught, now that I've had this extended colloquy, I'll

20  give counsel an opportunity to make any additional points

21  that I have denied them an opportunity to make, so that I

22  have your considerations before you.

23          And then, we have to deal with the fact that

24  we've had a flurry of papers in a very, very short period

25  of time, without any opportunity for taking any evidence,

1    and we need to decide what due process requires for any

2    further disposition. Even if we patch together some Band-

3    Aid for the next few weeks, obviously we're going to have

4    to address this more fully and if it requires an

5    evidentiary hearing, we have to schedule one.

6                  Okay?

7                  MR. HARBECK: Your Honor, let's take a slice

8    out of the potential controversy here.

9                  THE COURT: You have a plane to catch?

10                 MR. HARBECK: No, sir.

11                 THE COURT: Okay.

12                 [Laughter]

13                 THE COURT: Are you going to the Hamptons?

14                 MR. HARBECK: Rockville Centre is a far -- a

15   far piece from the Hamptons, Your Honor.

16                 THE COURT: Oh, it's a lovely community. Wait

17   until next year.

18                 MR. HARBECK: Pardon?

19                 THE COURT: Wait until next year. Do you know

20   what Rockville Centre --

21                 MR. HARBECK: Yes, I do. Doris Kerns Goodman

22   lived there and wrote it.

23                 THE COURT: Great. My colleague. All right.

24                 MR. HARBECK: A fine Saint Agnes girl, I

25   believe.

            (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1          THE COURT: What's that?

2          MR. HARBECK: A fine Saint Agnes girl.

3          THE COURT: [Laughter]

4          MR. BERKOWITZ: Your Honor, that's a real

5    Rockville Centre guy.

6          MR. HARBECK: Your Honor, we could -- we could

7    take a slice out of this, perhaps, by saying that anybody

8    that Mr. Wissner-Gross identifies to the Trustee will be

9    sent a notice. They can file it -- you know, they may not

10   have been noticed yet. We'll -- at SIPC's expense, since

11   we're picking up all the admin here, at least until a

12   general estate is generated, if ever, we'll notify anybody

13   else and that will solve the problem with respect to

14   anybody who hasn't received a notice and can file until

15   December.

16         Does it solve the sixty-day period? No. But,

17   that's where I think there's no real dispute here. Each

18   and every one of Mr. Wissner-Gross's actual clients has

19   filed a claim. They're not prejudiced by the sixty-day

20   period.

21         I think the overwhelming majority of people who

22   do have real mutual fund claims got actual notice, so

23   they're not prejudiced in any real way.

24         We're talking about the angel that dances on

25   the head of the pin now. And, identify the individual who

          (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1    doesn't have notice, doesn't have a claim form?  It will

2    be in the mail the next day.  And, they'll have until the

3    end of that full six-month period to file it.

4             THE COURT:  Why can't you agree to give them a

5    brief extension period, if they didn't in fact receive

6    actual notice?  Why won't you put them back in the

7    position they would have been in had they been identified

8    and sent an actual notice?

9             MR. HARBECK:  You --

10            THE COURT:  If these are people who surfaced

11   through indirect channels of communication, --

12            MR. HARBECK:  Your Honor, I --

13            THE COURT:  -- or read the newspaper, why can't

14   you create an epicycle without doing woeful damage to the

15   fund, SIPC, or the precedents for the administration of

16   this case?  That's what I want you to think about.

17            MR. HARBECK:  The answer is there's no woeful

18   damage to anybody, but Congress apportioned it, and if you

19   look at -- if you want to run a search engine on excusable

20   neglect and SIPA, you'll find that those time limits do

21   not allow of excusable neglect.  And, those concepts are

22   rejected universally.

23            THE COURT:  And, if I run this engine, how many

24   cases am I going to find in which this was ever identified

25   as an issue?

     (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1          MR. HARBECK:  About ten.

2          THE COURT:  Okay, and you've cited these in

3     your memoranda?

4          MR. HARBECK:  Some of them.  Not all of them.

5     There -- the time limits of our statute are derived from

6     old Bankruptcy Section 57 -- Bankruptcy Act Section 57(n),

7     and those were incorporated into our statute, and those

8     have been described as mandatory and non-discretionary.

9          Now, the sixty-day period is unique to this

10    statute, --

11         THE COURT:  All right.

12         MR. HARBECK:  -- but I don't think we have any

13    discretion over it.

14         So, let's take a slice out of the -- out of

15    this.  We'll identify anybody.  We'll re-mail to anybody.

16    And, if they --.if they are in some way prejudiced by the

17    sixty-day period, there are two -- there are two responses

18    to that.

19         One is that that's what Congress intended.

20    And, two is we can even defer until a later point, because

21    it says the Trustee need not satisfy it with securities,

22    but we don't have to decide that today.  It doesn't

23    mandate that the Trustee do it in the most economical

24    fashion.  He -- he has to look at that issue.

25         THE COURT:  All right, Mr. Harbeck.  You're

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

1    inching along in the right direction.

2           MR. HARBECK:  Well, that's about as many inches

3    as I've got to give.

4           THE COURT:  No, no, no, now, now, let's not

5    draw any lines in the sand.  We're just dealing with, you

6    know, real peoples' lives and their money.

7           MR. HARBECK:  And, that's why I think we'll

8    give them until December.  We'll re-notice them --

9           THE COURT:  All right.

10          Okay, you're going to --

11          MR. HARBECK:  -- and we'll -- and we'll solve

12   the problem.

13          THE COURT:  -- chat about this.  Let's try to

14   take this in the most positive frame of mind.

15          Okay?

16          MR. BERKOWITZ:  Judge, may we use the court

17   room?

18          THE COURT:  You can use this court room, you

19   can use the next court room, you can use the various

20   conferences, because I don't think there's anyone home but

21   Judge Eisenberg and me.

22          MR. BERKOWITZ:  Thank you.

23          THE COURT:  And, Miss Fitzgerald will make sure

24   the guards open up the other court rooms.

25          And, if you need to talk to me on some limited

1        capacity, in a non-ex parte basis, I'm going nowhere.   I'm

2        here.

3                    Okay?

4                    MR. BERKOWITZ:   Thanks, Judge.

5                    THE COURT:   Thank you.

6                    (Whereupon, the proceeding was recessed, to

7        reconvene this same day.)

1          R E S U M E D    P R O C E E D I N G S

2                                                    2:10 P.M.

3              THE COURT: All right, please be seated.

4              On the matter of New Times Financial -- New

5    Times Securities Services, right?

6              Where are we, gentlemen?

7              MR. KOBAK: Your Honor, as you suggested, we

8    have talked, and we've worked out, I think, an agreement

9    among ourselves.

10             THE COURT: Okay.

11             MR. KOBAK: Pursuant to this agreement, the

12   Trustee will provide to Mr. Wissner-Gross's office a list

13   of people that we believe to be the OXY account customers,

14   with their last known address, together with a list of the

15   people who have already submitted claims.

16             Mr. Wissner-Gross will undertake to contact all

17   those people today and over the weekend and on early

18   Monday, and advise them to file something with the

19   Trustee, indicating that they wish to file a claim.  We'll

20   accept those if they're faxed.  We'll accept them as long

21   as they say they intend to make a claim and sign them and

22   give us their name.

23             So, we think that ought to provide notice to

24   anyone who may not have had notice or may not have

25   understood that whatever kind of claim they have against

         (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1      whatever of these entities is involved, they ought to be

2      asserting it now.

3                    THE COURT:  Okay, but the thirty-first is

4      Monday, is it not?

5                    MR. KOBAK:  That's correct.

6                    THE COURT:  Okay, and --

7                    MR. KOBAK:  But, as long as we get it, any time

8      on the thirty-first, by fax, any other way, we'll accept

9      it as a claim --

10                   THE COURT:  Okay.

11                   MR. KOBAK:  -- and they can supplement it or

12     amend it later.

13                   THE COURT:  Okay, all right.

14                   MR. KOBAK:  And, on the other issues, we've

15     agreed that the class action motion will be adjourned.

16     The Trustee will undertake to review the facts and make a

17     determination.  I don't know quite how to describe this

18     issue, but on this issue of which entities might be

19     considered to be the broker, whether you consider that an

20     alter-ego theory or some other theory, whether it involves

21     substantive consolidation of the entities or not.

22                   But, in any event, we'll undertake -- the

23     Trustee will undertake to make that determination within

24     ninety days, and to advise Mr. Berkowitz and Mr. Wissner-

25     Gross.  And, at that point, we can talk about whether the

                (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1    motion is moot or what the best procedures should be for

2    going forward at that point.

3              THE COURT:   Okay.

4              MR. BERKOWITZ:   In principal, I think we're in

5    agreement.   That's slightly different than what I think we

6    actually agreed to.

7              What we agreed to is to carry the motion until

8    a date which is approximately ninety days from today,

9    October 27th, to be exact.   I think that's a day that

10   works well within the Jewish Holidays.   And that, prior to

11   that time, the Trustee and his office will attempt to keep

12   us advised as to the status of their investigation and

13   their determinations, and to allow us to discuss with them

14   some of these issues.

15             But, if they determine that they are not going

16   to bring a motion for substantive consolidation or to

17   pierce the corporate veil, or to pursue alter-ego, then

18   our motion would be on again for that October 27th date.

19   And up -- right before the actual date occurs, we can

20   continue to have discussions and even adjourn that date if

21   it's appropriate.   But, the intent was to have our motion

22   back on if we don't have an agreement on the direction in

23   which the Trustee is going to take.

24             In fact, the Trustee may make a determination

25   to pursue substantive consolidation or alter-ego, but not

1    in a way which we believe is in the best interest of our

2    clients, and we might still determine to push forward on

3    our class certification.

4    But, the real point of our agreement was to

5    give the Trustee a reasonable period within which to

6    conduct and conclude his investigation, and to make a

7    determination about how these claims are going to go down.

8    Look, it's our sincere hope that these issues

9    will all be resolved by the Trustee determining that he

10    has sufficient facts to treat all of the claims which fall

11    within the putative class as claims which are entitled to

12    SIPC coverage.  In that case, there would be no need for a

13    class action.

14    Also, in our discussions, Mr. Giddens

15    represented that, to the extent -- and I think this flows

16    from his statutory authority -- to the extent that there

17    are people who file claims after the sixty-day period, but

18    prior to the end of the six-month period, that he will use

19    his reasonable discretion in deciding whether or not to

20    compensate them, assuming that they have claims which are

21    covered under SIPC, either by purchasing securities or by

22    providing them with securities, or by providing them with

23    cash.

24    THE COURT:  Okay.  And, presumably, by that

25    point in time, when as much of the facts are in that can

1    be anticipated, he'll know what his exposure is.

2              MR. BERKOWITZ:  The Trustee.

3              THE COURT:  Yeah.

4              MR. BERKOWITZ:  Yes.

5              THE COURT:  I mean, he'll be able to quantify

6    it and determine what is the portfolio impact of that

7    decision in this particular case, and perhaps -- or

8    generally, outside this case.

9              But then, we won't be speculating.  We'll know

10   we've got real, live people, with claims that are

11   documented, and he'll be able to determine -- I think the

12   word is that he has the discretion to determine whether he

13   needs to purchase securities, and that's a discretionary

14   determination, I think.

15             All right.  So, we're not holding him to a

16   standard, but we're simply expecting him to be reasonable

17   in the exercise of his discretion.

18             MR. KOBAK:  Yeah, he agreed --

19             THE COURT:  And, maybe this --

20             MR. KOBAK:  -- that he'd look at them in good

21   faith.

22             THE COURT:  That's right.

23             MR. KOBAK:  But, with respect to this date, our

24   understanding was October 27th was the date we were going

25   to make our determination, not that the class action is

1      automatically deemed --

2      THE COURT:  I don't think he said --

3      MR. KOBAK:  -- deemed re-filed.

4      THE COURT:  He said he was going to carry his

5      motion.  He didn't say anything about it being automatic.

6      MR. KOBAK:  Well, I don't --

7      THE COURT:  He just wanted a sunset date, to

8      know whether or not he had to return --

9      MR. KOBAK:  Well, we've agreed that it's

10     October --

11     THE COURT:  -- to litigate.

12     MR. BERKOWITZ:  I wasn't suggesting that it be

13     automatically certified on that date.

14     MR. KOBAK:  No, no, I --

15     MR. BERKOWITZ:  I was saying that the motion be

16     heard on that date again.

17     MR. WISSNER-GROSS:  In other words, if we don't

18     have a resolution, that we would come, and if necessary,

19     we'd augment the argument.

20     THE COURT:  Okay, but what I --

21     MR. KOBAK:  Your Honor, the problem I have with

22     that is that by the 27th, let's assume we come out the

23     wrong way from Mr. Wissner-Gross's point of view.  We'll

24     know a lot more than we do today, and we might have

25     different grounds for opposing it.  We might permit

1    certain claims, but not others.

2              THE COURT: All right, but this is what I want

3    to do --

4              MR. KOBAK: The situation could be much

5    different.

6              THE COURT: All right, but this is what I'd

7    like to do, because I want to avoid these Chinese fire

8    drills, if you'll pardon me, with, you know, a flurry of

9    pleadings and people feeling aggrieved that they didn't

10   really have an adequate opportunity to prepare responses

11   and replies and rebuttals and the like.

12             So, what I'd like to be able to do is by then,

13   even then, I assume, we'll be in Central Islip, is that we

14   can -- I'll block off the time. I'll schedule a

15   conference call or you can drag your way out there and

16   we'll take you on a pumpkin party so you can be adequately

17   prepared for Hallowe'en, whatever your druthers are. But,

18   call me before -- call me in the early part of the week,

19   so I'll leave time on that day now. I want to keep it

20   blocked so we can have, in effect, a pre-hearing

21   conference, so we can schedule a reasonable set of

22   deadlines to put this on.

23             I mean, my calendar, at this point, isn't such

24   that anybody has to fear any delay.

25             MR. BERKOWITZ: That's amenable to us, Your

1        Honor.

2                    MR. KOBAK: Yes, that's fine, Your Honor.

3                    THE COURT: Okay, fine.

4                    So, the 27th of October is what day of the

5        week?  Do you know?

6                    MR. KOBAK: Friday.

7                    THE COURT: All right.  So, call me by no later

8        than Tuesday, at two o'clock and let me know where you

9        stand, and then we'll have a conference call on the 27th.

10       I'll determine how much time we have.  And then, we'll set

11       a schedule for some expedited hearing on this matter.

12                   And, by then, I think that, you know, you would

13       have shaken the trees and see what's fallen to the ground.

14       And, I hope this other expedient will result in some

15       closure on some of these matters.

16                   So, I'm going to so order this on the record.

17       You can reduce it to a stipulation.  And, I understand by

18       this that I'm not making a determination if there's a

19       class representative.  I'm not making a determination that

20       it's a class action.  But, it will facilitate some

21       organized coordination by Mr. Wissner-Gross on behalf of

22       this universe of creditors that may be in excess of two

23       hundred and fifty to four hundred people.  And, that a

24       substantial number of those would fall into this

25       categorization of OXY claimants or customers.

                (516) 741-5342    Tankoos Reporting Co.   (212) 349-9692

1                    So, we're going to treat this as a device

2          that's without prejudice to any continued prosecution of

3          this motion for class claim or class certification.

4                    All right?  Yes?

5                    MR. BERKOWITZ:  Very good.  Thank you, Your

6          Honor.

7                    MR. KOBAK:  Thank you, Your Honor.

8                    THE COURT:  Okay, I'm going to so order the

9          record.  If there's a problem, just arrange a telephone

10         conference.  I'm happy to help you.

11                   (Whereupon, at 2:30 p.m., the proceeding was

12         concluded.)

C E R T I F I C A T E

I, June Accornero, do hereby certify that I typed the proceeding In the Matter of New Times Securities Services, taken on July 28, 2000, before The Honorable Stan Bernstein, at the United States Bankruptcy Court, Eastern District of New York, Westbury, New York, from tapes provided by the Court, and that this is an accurate transcript of what happened at that time and place.

June Accornero