Brian J. Neville (BN 8251)
Barry R. Lax (BL 1302)
Brian Maddox (BM 6128)
LAX & NEVILLE, LLP
1412 Broadway, Suite 1407
New York, NY 10018
Tel: (212) 696-1999
Fax: (212) 566-4531

*Counsel for Plaintiffs and*
*Proposed Counsel for Class in*
*Adv. P. No. 09-01265*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
:
:
SECURITIES INVESTOR PROTECTION          :   SIPA LIQUIDATION
CORPORATION,                             :
:
Plaintiff,   :
:   Adv. Pro. No. 08-01789 (BRL)
v.                           :
:
:
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                          :
:
Defendant.   :
------------------------------------------------------------ :
In re:                                   :
:
BERNARD L. MADOFF,                       :
-----------------------------------------------------------X

**OBJECTION TO TRUSTEE'S MOTION FOR AN**
**ORDER TO SCHEDULE HEARING ON "NET EQUITY"**

Mary Albanese, the Brow Family Partnership, Allan Goldstein, Laurence Kaye, Suzanne Kaye, Rose Less and Gordon Bennett ("Class Action Plaintiffs"), and on behalf the proposed putative class, by and through their attorneys, Lax & Neville, LLP, hereby object to the Motion

Of Trustee For An Order To Schedule Hearing On "Net Equity" Issue ("Trustee's Motion"), attached as Exhibit A.

## BACKGROUND

1. On December 11, 2008, the above-captioned liquidation proceeding was commenced against Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC (collectively "Madoff"), pursuant to Securities Investor Protection Act ("SIPA"). *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA, 15 U.S.C. §§ 78aaa, and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Docket. No. 4]. Irving H. Picard was appointed Trustee ("Trustee"), charged with overseeing and administering the liquidation of Madoff and processing customer claims pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a*)* (2009).

2. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate and make available notice and claim forms to Madoff customers and advise Madoff customers of claim-filing deadlines. *See* Order [Docket. No. 12].

3. The December 23, 2008 Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . . ." *See* Order at 6 [Docket. No. 12].

4. Following the December 23, 2008 Order, the Trustee began voicing his position that, in this <u>one</u> SIPC liquidation, a customer's "net equity" equals his deposits to his Madoff account minus withdrawals, without any credit for the value of securities appearing on the customer's account statement. Even though the Trustee's position on "net equity" contradicts

2

the plain language of SIPA, its legislative history, and the position that the Securities Investor Protection Corporation ("SIPC") has itself taken in a similar case in this Circuit, the Trustee began issuing Determination Letters consistent with his unlawful position.

5. On June 5, 2009, Mary Albanese, the Brow Family Partnership, Allan Goldstein, Laurence Kaye, Suzanne Kaye and Rose Less, prospectively on behalf of a class of similarly injured plaintiffs, filed a Class Action Complaint, in the United States Bankruptcy Court for the Southern District of New York against the Trustee, Irving H. Picard, (Adv. Pro. No. 09-01265) (hereafter the "Class Action").

6. On June 23, 2009, the Class Action Plaintiffs, prospectively on behalf of a class of similarly injured plaintiffs, filed an Amended Class Action Complaint for Declaratory Judgment (Adv. Pro. No. 09-01265) seeking the following relief:

> A. a determination that the Class Action is a proper and certifying the Class Action Plaintiffs as class representatives under Rule 7023 of the Federal Rules of Bankruptcy Procedure, and Class Action Plaintiffs' counsel as counsel for the class;
>
> B. a determination that the Trustee's definition of "net equity" as deposits minus withdrawals is incorrect as a matter of law;
>
> C. a determination that a customer's "net equity" under SIPA is the value of the securities positions reflected in that customer's Madoff account(s) as of the SIPA filing date;
>
> D. a determination that the Amended Class Action Complaint be deemed a written statement of claim for all class members who fail to file their individual Securities Investment Protection Corporation ("SIPC") Customer Claim Forms prior to the Bar Date;
>
> E. a determination that the Amended Class Action Complaint is not a waiver of any Class Action Plaintiffs' or prospective class member's right to a jury trial, nor may it be used by the Trustee to contest any Class Action Plaintiff or prospective class member's right to a jury trial;
>
> F. a determination that the Amended Class Action Complaint does not confer jurisdiction over any prospective class member, nor may it be used

3

    by the Trustee to assert jurisdiction over any prospective class member;

  G. an order that the Trustee cease and desist from requiring the execution of a release as a condition precedent to the distribution of SIPC funds to a class member;

  H. an order that all releases executed by any class member in the Madoff liquidation be declared void; and

  I. an order awarding the Class Action Plaintiffs and the proposed class, their reasonable costs and expenses incurred in this action, including counsel fees and expert fees.

  6. On July 17, 2009, the Trustee's filed an Answer and Counterclaims in response to the Amended Class Action Complaint for Declaratory Judgment (Adv. Pro. No. 09-01265).

  7. Class Action Plaintiff Laurence Kaye previously filed Objections with respect to the Trustee's determination of their SIPC claim. The Objection is incorporated herein by reference. The remaining Class Action Plaintiffs have yet to receive determination letters.

  8. On August 27, 2009, the Trustee filed a Motion Of Trustee For An Order To Schedule Hearing On "Net Equity" Issue [Docket No. 395] with a proposed briefing schedule in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (BRL).

  9. Class Action Plaintiffs hereby object to the Trustee's Motion for an Order to Schedule Hearing on "Net Equity" Issue for the reasons described below.

## GROUNDS FOR OBJECTION

**I. The Class Action Forum Is The Proper Method**
**For Resolving The "Net Equity" Issue**

  10. The Class Action Plaintiffs object to the resolution of this issue in the manner and

4

method proposed by the Trustee.[1]  Although the Class Action Plaintiffs agree with the Trustee and SIPC that the "net equity" issue needs to be resolved quickly, there are several fundamental issues that prevent the Class Action Plaintiffs from consenting to the Trustee's Motion.  First and foremost being that a class action is the most fair and efficient method for resolving the "net equity" dispute—not "test cases" as proposed by the Trustee.

11. The Trustee's Motion proposes that this Court utilize "test cases" to resolve the "net equity" issue.  Pursuant to Paragraph 13, sub-sections A-C of the Trustee's Motion, the Trustee is going to select certain test cases, at his discretion.  Under this proposal, the Trustee will selectively choose approximately 15 to 20 claimants for "test cases" by "affirm[ing]" their "claims determinations."  (Trustee's Motion at Paragraph 13, sub-section A).  The proposed "test cases" raise possible due process concerns, leave uncertain the *stare decisis* effect of such decisions, waste judicial resources and increase costs to all parties.  Therefore, the "net equity" issue should be resolved in the Class Action.

12. In an almost identical context, the United States Bankruptcy Court of New Jersey chose to utilize the class action method in lieu of "test cases," over the objections of both the Trustee and SIPC.  *In re First Interregional Equity Corporation*, 227 B.R. 358, 370 (Bankr. N.J. 1998).  *In re First Interregional*, involved the liquidation of registered broker-dealer pursuant to the Securities Investor Protection Act (SIPA).  The core dispute involved the claimants' status as "customer," where the claimants were duped into purchasing no-existent or duplicative leases with governmental entities and/or municipalities for office equipment and vehicles from First Interregional Equity Corp.  The proposed class action plaintiffs brought a motion seeking the

---

[1] Nothing in the Class Action Plaintiffs' Objection should be considered a waiver or endorsement of the terms and/or contextual arguments proffered by the Trustee's Motion and Exhibits concerning the "net equity" issue.  Both the Class Action Plaintiffs and the proposed Class, reserve the right to fully brief the "net equity" issue when it is deemed prudent by this Court.

5

approval of the class proof of claim and class certification. The SIPA trustee and general counsel for the SIPC objected to class certification. The New Jersey Bankruptcy Court, held that: (1) existence of over 2,000 geographically dispersed investors satisfied numerosity; (2) each class member was victim of alleged fraudulent "ponzi" scheme, thus satisfying commonality prerequisite; (3) given the massive fraudulent scheme, common issues of law predominated the action; and most importantly to in this instance, that (4) a class action, as opposed to trying several "test cases," was a superior method for obtaining a fair and efficient adjudication of the controversy. *Id.* at 371-72.

13.     As described above, test case rulings raise possible due process concerns, leave uncertain the *stare decisis* effect of such decisions, waste judicial resources and increase costs to all parties. *In re First Interregional Equity Corporation*, 227 B.R. 358, 370 (Bankr. N.J. 1998). Prosecuting a separate action against individual claimants, or a group chosen by the Trustee, creates (i) a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class; and (ii) a risk of adjudications with respect to individual claimants that, as a practical matter, would be dispositive of the interests of the other claimants not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Therefore, the "net equity" issue should be resolved in the Class Action.

## II.     The "Net Equity" Issue Is A Discrete Legal Issue Which Should Be Resolved Without Delving Into Unnecessary Factual Disputes.

14.     The "net equity" issue is a discrete legal issue. This Court can resolve the dispute without the superfluous factual claims proffered by the Trustee in his Exhibit A to the Trustee's Motion or those offered by some objecting claimants. The "net equity"

6

definition utilized by the Trustee either adversely affects claimants or it does not. Resolving the definition of "net equity" requires a review of the statutory language and legal precedent, not the facts surrounding each individual claimant's Madoff account. Resolution of legal question concerning the "net equity" issue, within the confines of the Class Action, eliminates any due process concerns and establishes a legal precedent that all parties may rely upon. As such, the briefs submitted to the Court pursuant to the Class Action Plaintiffs' proposed schedule and proposed Order should be limited to discussing the proper interpretation of "net equity," as defined by 15 U.S.C. § 78111(11). Such briefing should not include ancillary or customer-specific issues or arguments.

## **RELIEF REQUESTED**

15. For the reasons stated herein, the Class Action Plaintiffs request that the motion regarding the "net equity" be resolved within the Class Action (Adv. Pro. No. 09-01265).

16. To facilitate the resolution of the "net equity" issue, the Class Actions Plaintiffs propose the following schedule, which is nearly identical to the one proposed by the Trustee, minus the "test case" provisions included in Paragraph 13, sub-headings A-C:

    A. The Trustee shall file a motion ("Net Equity Motion") and memorandum of law and supporting papers, in *Less, et al. v. Picard, Trustee*, Adv. Pro. No. 09 CV 1265 (Bankr.S.D.N.Y.) (BRL), setting forth the factual and legal bases for the Trustee's construction of the term Net Equity on October 16, 2009.

    B. SIPC shall file any brief with reference to the Net Equity Motion on or before October 16, 2009.

    C. The Objecting Claimants shall file their responses to the Net Equity Motion on or before November 13, 2009.

    D. Any Interested Parties (as further defined below in paragraph 21) who wish to file a brief in opposition to the Net Equity Motion shall file their briefs on or before November 13, 2009.

  E. Any Interested Parties who wish to file a brief in support of the Net Equity Motion shall file their briefs on or before December 11, 2009.

  F. To the extent that Interested Parties who filed briefs in accordance with paragraph E above raise issues, factual or legal, that have not been previously raised, Interested Parties who filed a brief in opposition to the Trustee's Net Equity Motion in accordance with paragraph D above may file a reply brief addressing such issues on or before December 21, 2009.

  G. The Trustee and SIPC shall file any reply papers on or before January 15, 2010.

  H. The Court shall hold a hearing on the Net Equity Motion on February 2, 2010, at 10:00 a.m., or such other time as the Court determines.

20. The briefing to be submitted to the Court pursuant to the proposed schedule and proposed Order shall be limited to discussing the proper interpretation of "net equity," as defined by 15 U.S.C. § 78111(11). Such briefing shall not include ancillary or customer-specific issues or arguments. Interested Parties shall reserve all rights, claims, and defenses as to any issues and/or arguments not resolved by the Court in connection with the briefing described herein on the Net Equity issue.

21. Interested Parties that are permitted to file briefs regarding the Net Equity Motion in accordance with this proposed scheduling order shall be limited to claimants who have filed a timely customer claim with the Trustee, or any governmental unit or division. Such briefs may be filed without seeking leave from the Court.

22. Any claimant who files a brief regarding the Net Equity Motion in accordance with this proposed scheduling order shall submit a copy of or otherwise identify their timely filed customer claim at the time of filing their brief. Counsel filing a brief on behalf of any Interested Party shall identify all such Interested Parties they represent.

23. Any party, other than governmental units, who did not file a timely

8

customer claim but wishes to file a brief regarding the Net Equity Motion in accordance with this proposed scheduling order must seek leave of court prior to filing such a brief and must identify their interest in this matter, including, but not limited to, whether they had an account at BLMIS. If any such party had an account at BLMIS, or if counsel is representing one or more persons who had an account(s) or an interest in an account(s) at BLMIS, they must identify all holders of the BLMIS accounts in their motion for leave to file briefs in accordance with this paragraph.

**WHEREFORE,** the Class Action Plaintiffs respectfully requests that the Court (a) enter an order substantially in the form attached hereto as Exhibit B, granting the relief requested herein; and (b) grant such other and further relief to the Class Action Plaintiffs as the Court deems proper.

Dated: September 3, 2009

/s/ *Brian J. Neville*
LAX & NEVILLE, LLP
Brian J. Neville (BN 8251)
Barry R. Lax (BL 1302)
Brian Maddox (BM 6128)
1412 Broadway, Suite 1407
New York, NY 10018
Tel: (212) 696-1999
Fax: (212) 566-4531

*Counsel for Plaintiffs and*
*Proposed Counsel for Class in*
*Adv. P. No. 09-01265*

9