James H.M. Sprayregen, P.C.
Christopher J. Marcus, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James A. Stempel (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Angela M. Snell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NINE WEST HOLDINGS, INC., *et al.*,[1] | ) | Case No. 18-10947 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CERTIFICATE OF NO OBJECTION REGARDING DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Pursuant to the case management procedures in these chapter 11 cases [Docket No. 107] (the "Case Management Procedures"), the undersigned proposed counsel for the above-captioned debtors and debtors in possession (the "Debtors") hereby certifies as follows:

1.    On April 6, 2018, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Nine West Holdings, Inc. (7645); Jasper Parent LLC (4157); Nine West Management Service LLC (4508); Kasper Group LLC (7906); Kasper U.S. Blocker LLC (2390); Nine West Apparel Holdings LLC (3348); Nine West Development LLC (2089); Nine West Distribution LLC (3029); Nine West Jeanswear Holding LLC (7263); One Jeanswear Group Inc. (0179); and US KIC Top Hat LLC (3076).  The location of the Debtors' service address is:  1411 Broadway, New York, New York 10018.

*Business Forms, and (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 7] (the "<u>Motion</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

2.      The deadline for parties to object or file responses to the Motion was set for June 11, 2018, at 5:00 p.m., prevailing Eastern Time (the "<u>Objection Deadline</u>"). The Case Management Procedures provide that a Motion may be granted without a hearing, provided that, after the passage of the Objection Deadline, the movant submit a proposed order granting the Motion to the Court along with a certificate that no objection or other response has been filed or served in accordance with the Case Management Procedures.

3.      The Objection Deadline has now passed and, to the best of my knowledge, no objections to the Motion have been filed with the Court on the docket of these chapter 11 cases or served on proposed counsel to the Debtors.

4.      The Debtors received informal comments from parties in interest, including the Office of the United States Trustee, the Official Committee of Unsecured Creditors, and their DIP Lenders. Those comments are reflected in the revised proposed order approving the Motion attached hereto as **<u>Exhibit A</u>** (the "<u>Revised Proposed Final Order</u>"). Attached hereto as **<u>Exhibit B</u>** is a redline of the Revised Proposed Final Order, reflecting changes from the proposed form of order attached to the Motion.

5.      Accordingly, the Debtors respectfully request entry of the Revised Proposed Order, attached hereto as **<u>Exhibit A</u>**, at the Court's earliest convenience. If not entered prior to the hearing, the Debtors will seek entry of the Revised Proposed Final Order at the omnibus hearing scheduled for 11:00 a.m., prevailing Eastern Time, on June 25, 2018, before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court for the

2

Southern District of New York, One Bowling Green, Courtroom No. 623, New York, New York

10004-1408.

New York, New York                          /s/ Joseph M. Graham
Dated:  June 22, 2018                        James H.M. Sprayregen, P.C.
                                             Christopher J. Marcus, P.C.
                                             **KIRKLAND & ELLIS LLP**
                                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                             601 Lexington Avenue
                                             New York, New York 10022
                                             Telephone:    (212) 446-4800
                                             Facsimile:    (212) 446-4900

                                             - and -

                                             James A. Stempel (admitted *pro hac vice*)
                                             Joseph M. Graham (admitted *pro hac vice*)
                                             Angela M. Snell (admitted *pro hac vice*)
                                             **KIRKLAND & ELLIS LLP**
                                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                             300 North LaSalle Street
                                             Chicago, Illinois 60654
                                             Telephone:    (312) 862-2000
                                             Facsimile:    (312) 862-2200

                                             *Proposed Counsel to the Debtors and Debtors in*
                                             *Possession*

3

## Exhibit A

**Revised Proposed Final Order**

KE 55126321

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| NINE WEST HOLDINGS, INC., *et al.*,[1] | ) | Case No. 18-10947 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 7, 69** |

---

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) continue to operate their Cash Management System as illustrated on **Exhibit 1** hereto and maintain their existing Bank Accounts, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms, and (iv) continue to perform Intercompany Transactions with each other and with non-debtor affiliates consistent with historical practice, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nine West Holdings, Inc. (7645); Jasper Parent LLC (4157); Nine West Management Service LLC (4508); Kasper Group LLC (7906); Kasper U.S. Blocker LLC (2390); Nine West Apparel Holdings LLC (3348); Nine West Development LLC (2089); Nine West Distribution LLC (3029); Nine West Jeanswear Holding LLC (7263); One Jeanswear Group Inc. (0179); and US KIC Top Hat LLC (3076). The location of the Debtors' service address is: 1411 Broadway, New York, New York 10018.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis only as set forth herein.

2.      Subject to the limitations of this Final Order, the Debtors are authorized, but not directed, to: (a) continue using the Cash Management System and honor any prepetition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on a final basis their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on **Exhibit 2** hereto, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (d) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; and (e) open new debtor-in-possession Bank Accounts, *provided* that in the case of each of (a) through (e), such action is taken in the ordinary course of business.

KE 53888420

3.      The Debtors are authorized, but not directed, to continue using the Purchase Cards and the Purchase Card Program, the Company Cards,[3] the Business Travel Account, and the E-Payable Account and to pay any prepetition or postpetition amounts due in connection therewith in the ordinary course of business and consistent with prepetition practices.

4.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, *provided*, *however*, that once the Debtors have exhausted their existing stock of Business Forms and checks, they shall ensure that any new Business Forms and checks are clearly labeled "Debtor in Possession" and *provided*, *further*, that with respect to any Business Forms and checks that are generated electronically, the Debtors shall ensure that such electronic Business Forms and checks are clearly labeled "Debtor in Possession."

5.      Except as otherwise provided in this Final Order, and only to the extent sufficient funds are on deposit and standing in the Debtors' credit in each applicable Bank Account, all Cash Management Banks at which the Bank Accounts are maintained are authorized to (a) continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and (b) debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for (I) all checks drawn on the Debtors'

---

[3]     A description of the Company Cards is set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 9].

3

accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (II) all checks or other items deposited in one of the Debtors' accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date, and (III) all applicable fees and expenses, including the Bank Fees, associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the applicable Bank Accounts consistent with historical practice, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

6.      The Debtors will instruct the Cash Management Banks as to which checks, drafts, wire transfers (excluding any wire transfers that the Cash Management Banks are obligated to settle), or other items presented, issued, or drawn shall not be honored.  Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date.

7.      Notwithstanding any other provision of this Final Order, the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check, draft, wire, transfer, or other payment order drawn or issued by the Debtors prior to the Petition Date

4

should be honored pursuant to this Final Order or any other order of the Court, and should a Cash Management Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Cash Management Bank shall not be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition or otherwise be in violation of this Final Order.

8.      Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination, right of offset, analysis fees, overdrafts, and fee and expense provisions, shall remain in full force and effect.  Either the Debtors or the Cash Management Banks may, without further order of the Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to the terms of those existing deposit agreements, including, without limitation, the opening and closing of bank accounts, *provided* that such changes are in accordance with the terms of this Final Order, the DIP Orders, and the DIP Documents (as defined in the DIP Orders).

9.      As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Cash Management Banks.

10.     The requirement to establish separate accounts for tax payments is hereby waived.

5

11.     Subject to paragraphs 12 and 13 below, the Debtors are authorized to (a) continue performing Intercompany Transactions in the ordinary course of business and (b) set off mutual postpetition obligations relating to intercompany receivables and payables through the Cash Management System, *provided* that the Debtors shall not be authorized by this Final Order to undertake any Intercompany Transactions or set off mutual postpetition obligations relating to intercompany receivables and payables that are (x) not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period or (y) prohibited or restricted by the terms of the DIP Orders and the DIP Documents (as defined in the DIP Orders).  In administering the Cash Management System, including the Bank Accounts, each Cash Management Bank and the DIP Agents (as defined in the DIP Orders) shall be authorized to assume, without further inquiry, that the foregoing provisions relating to the Intercompany Transactions have been complied with by the Debtors. In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

12.     All Intercompany Claims between Debtors arising after the Petition Date shall be accorded administrative expense status in accordance with section 503(b) and 364(b) of the Bankruptcy Code, subject and junior to the claims, including adequate protection claims, granted in connection with the DIP Financing, in accordance with the DIP Orders.  For the avoidance of doubt, to the extent any Debtor makes a payment (or has made a payment since the Petition Date) on behalf of another Debtor pursuant to either the (a) *Final Order (A) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (B) Granting Related Relief* [Docket No. 215] or (b) *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of*

6

*(A) Foreign Vendors, (B) Lien Claimants, (C) Import Claimants, and (D) 503(b)(9) Claimants, and (II) Granting Related Relief* [Docket No. 214] (or, in each case, any prior entered orders providing interim relief), such payment shall result in an Intercompany Claim with the administrative expense status as set forth in the preceding sentence; the Debtors will provide to the official committee of unsecured creditors (the "UCC") and the advisors to each of the DIP Lenders (x) a summary of all payments made pursuant to the aforementioned orders within two weeks of entry of this Order, in form and substance reasonably satisfactory to the advisors to the UCC, which summary shall confirm the status of all such Intercompany Claims arising from such payments as post-petition administrative expense claims and (y) supporting rationale and transaction level detail, if requested by the advisors to the UCC or any of the advisors to the DIP Lenders.  The Debtors shall ensure that all Intercompany Claims between Debtors after the Petition Date are recorded or designated as administrative expenses in the Debtors' books and records in a form and manner to be agreed upon by the Debtors, the advisors to the UCC, and the advisors to each of the DIP Lenders.  Further, within one business day of the filing of the Debtors' Monthly Operating Report, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders with a report detailing all Intercompany Claims and/or Intercompany Transactions as recorded in the Debtors' general ledger system for the period covered by such Monthly Operating Report and, if requested by the advisors to the UCC or any of the advisors to the DIP Lenders, any additional detail and supporting documentation for any and all Intercompany Claims and/or Intercompany Transactions reported therein.

13.    The following protocol will govern any and all transfers from a Debtor to a non-debtor affiliate or subsidiary of the Debtors (each, a "Subject Transfer"):

KE 53888420

(a)    The Debtors may make a Subject Transfer to a non-debtor without the prior consent of the UCC if:

(i)    with respect to any individual non-debtor, the aggregate amount transferred to such non-debtor in a single month is less than $25,000;

(ii)    with respect to any individual non-debtor, the aggregate amount transferred to such non-debtor during these chapter 11 cases is less than $75,000; and

(iii)    with respect to all non-debtors, the aggregate amount transferred to all non-debtors in a single month is less than $75,000.

(b)    Prior to making any other Subject Transfer, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders the following information, no less than three (3) business days prior to making such proposed Subject Transfer:

(i)    the amount of such proposed Subject Transfer;

(ii)    the Debtor making the proposed Subject Transfer and the Debtor on whose behalf the proposed Subject Transfer is being made (if different);

(iii)    the non-debtor receiving the proposed Subject Transfer;

(iv)    the rationale for such proposed Subject Transfer, including (A) reasonably detailed supporting financial information, (B) the bases for the Subject Transfer, and (C) complete detailed billings (i.e., detail sufficient to show the individual components of the aggregate amount of the Subject Transfer) from the non-debtor to any Debtor related to such proposed Subject Transfer; and

(v)    if the Subject Transfer is for anything other than a service, the form in which the non-debtor intends on repaying the Subject Transfer, including (A) which entity will be making the repayment, (B) the terms of such repayment (including, but not limited to, the anticipated date of such repayment and interest being charged (if any)), and (C) whether the repayment will be a secured or unsecured obligation of the payor.

8

(c)     Except for the Subject Transfers described in subparagraph (a) above, the Debtors shall not make any proposed Subject Transfer without the consent of the UCC, the Required Lenders (as defined in the Term DIP Credit Agreement, as defined in the DIP Orders), and the Requisite Lenders (as defined in the ABL/FILO DIP Credit Agreement, as defined in the DIP Orders), which consent shall not be unreasonably withheld, delayed, or conditioned, *provided* that if the advisors to the UCC, the Required Lenders, or the Requisite Lenders do not respond within three (3) business days from the receipt of notice of a Subject Transfer, the UCC, the Required Lenders, and/or the Requisite Lenders shall be deemed to consent to the proposed Subject Transfer.

(d)     If a Subject Transfer is for services rendered by the non-debtor to a Debtor other than the Debtor making the Subject Transfer, the Debtors shall contemporaneously record such Subject Transfer as an administrative expense claim owing from the Debtor on which behalf the Subject Transfer was made to the Debtor that made such Subject Transfer, in a form and manner to be agreed upon by the Debtors, the UCC, the Required Lenders, and the Requisite Lenders.  Upon the request of the advisors to the UCC or any of the advisors to the DIP Lenders, the Debtors shall provide the UCC and the DIP Lenders proof of the intercompany accounting entry of a Subject Transfer after the Subject Transfer is made.

(e)     By no later than June 29, 2018, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders any and all information reasonably requested with regard to the Debtors' and their non-debtor subsidiaries' intercompany ledgers since April 9, 2014, to the extent practicable, which time period may be changed by agreement between the Debtors, the UCC, and the DIP Lenders.

14.     The Debtors are authorized, upon prior notice to the DIP Agents, to open new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their reasonable business judgment, *provided* that such actions are in compliance with, and not prohibited or restricted by, the terms of the DIP Orders and the DIP Documents (as defined in the DIP Orders); *provided*, *further*, that (a) prior to opening any new bank accounts the Debtors shall give fourteen days advance notice (if practicable) to the U.S. Trustee and counsel to any statutory committees appointed in these chapter 11 cases, counsel to Brigade Capital Management, LP, counsel to the Ad Hoc Group of Crossover Lenders, and counsel to the Ad Hoc Group of Secured Lenders, and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at such bank that is willing to immediately execute such an agreement.

15.     The Debtors, having obtained a surety bond in favor of the United States, in accordance with section 345(b)(1) of the Bankruptcy Code, in a form acceptable to and from a certified surety company approved by the U.S. Trustee, and in the amount of $150,000 USD to protect the deposit of estate funds held in the Indonesian account, are hereby authorized to continue using the Indonesian Account for sourcing operations in Indonesia and Asia and for maintaining funds held in Indonesian Rupiah.

16.     Subject to paragraphs 12 and 13 above, notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) other than with respect to the Intercompany Claims, an implication or admission that any particular claim is of a

type specified or defined in this Final Order or the Motion or a finding that any particular claim is an administrative expense or other priority claim; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of any party in interest under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

17.     Nothing contained in this Final Order or any action taken by the Debtors in implementing this Final Order shall be deemed (a) a waiver of the rights of any party in interest to dispute the amount of, basis for, validity of, or treatment of any Intercompany Claim or the allocation of expenses or other costs between any Debtor entities, (b) to override paragraph 8 of the *Order (A) Approving the Sale of Substantially All of the Assets of the Debtors' Nine West, Bandolino, and Associated Brands Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts, and (D) Granting Related Relief* [Docket No. 404] (the "Sale Order"), or (c) to prejudice any parties' rights with respect to whether the payment of the ABL Priority Proceeds and/or Term Priority Proceeds (as those terms are defined in the Sale Order) by one Debtor by or on behalf of another Debtor creates an Intercompany Claim entitled to administrative priority or whether such payment (i) does not create an Intercompany Claim or (ii) if it does create an Intercompany Claim, is not entitled to administrative priority.

KE 53888420

18.     Notwithstanding the relief granted in this Final Order, but without limiting the terms of paragraphs 12 and 13 above, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Orders and the DIP Documents (as defined in the DIP Orders).  To the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control; *provided*, *however*, that the UCC's rights set forth in paragraphs 12 and 13 above are hereby deemed consistent with the terms of the DIP Orders; *provided further*, that for the avoidance of doubt, all payments and transfers described in paragraphs 12 and 13 above shall be subject to and comply with the Budget set forth in the DIP Orders, and nothing in this Order shall relieve the Debtors from their obligations under, or shall override any negative covenants set forth in, the DIP Documents (as defined in the DIP Orders).

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

21.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

22.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2018

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

12

KE 53888420

**<u>Exhibit 1</u>**

**Cash Management System Schematic**

KE 53888420

# Cash Management System Flow of Funds Overview



KE 53888420

**Exhibit 2**

**Debtor Bank Accounts**

| | Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|---|
| 1 | Nine West Holdings, Inc. | Bank of America | Ending 9362 | Operating Account |
| 2 | Nine West Holdings, Inc. | Bank of America | Ending 1A23 | Closed Account |
| 3 | Nine West Holdings, Inc. | Bank of America | Ending 3058 | Disbursement - AP (via wires) |
| 4 | Nine West Holdings, Inc. | Bank of America | Ending 2882 | Lockbox (#277512) |
| 5 | Nine West Holdings, Inc. | Bank of America | Ending 3018 | Corporate Retail Store Banking |
| 6 | Nine West Holdings, Inc. | Bank of America | Ending 3598 | Receipt - International |
| 7 | Nine West Holdings, Inc. | Wells Fargo | Ending 1550 | WF Master Operating |
| 8 | Nine West Holdings, Inc. | Wells Fargo | Ending 4014 | Disbursement - Payroll |
| 9 | Nine West Holdings, Inc. | Wells Fargo | Ending 6820 | Disbursement - AP (via ACH) |
| 10 | Nine West Holdings, Inc. | Wells Fargo | Ending 6833 | Disbursement - AP (via EDI) |
| 11 | Nine West Holdings, Inc. | Wells Fargo | Ending 0583 | Receipts - Retail (lockbox) |
| 12 | Nine West Holdings, Inc. | Wells Fargo | Ending 7833 | Disbursement - AP (via checks) |
| 13 | Nine West Development LLC | Wells Fargo | Ending 3536 | Disbursement - AP (via ACH, checks, EDI) |
| 14 | Nine West Development LLC | Wells Fargo | Ending 2563 | Receipts - Licensing |
| 15 | Nine West Holdings, Inc. | Wells Fargo | Ending 3990 | WF Master Collections |
| 16 | Nine West Holdings, Inc. | Wells Fargo | Ending 4094 | Receipt - Easy Spirit Credit Card |
| 17 | Nine West Holdings, Inc. | Wells Fargo | Ending 6185 | Receipt - Credit Card |
| 18 | Nine West Holdings, Inc. | Wells Fargo | Ending 8700 | Closed Account |
| 19 | Nine West Holdings, Inc. | Wells Fargo | Ending 2531 | Receipt - from International |
| 20 | Nine West Holdings, Inc. | Citibank | Ending 9196 | Disbursement - Inventory |

|     | Entity | Bank Name | Account Number | Account Type |
|-----|--------|-----------|----------------|--------------|
| 21 | One Jeanswear Group Inc. | Bank of America | Ending 3015 | Indonesia Local |
| 22 | Nine West Holdings, Inc. | Bank of America | Ending 4745 | Closed Account |
| 23 | Nine West Holdings, Inc. | Bank of America | Ending 5796 | Closed Account |
| 24 | Nine West Holdings, Inc. | Bank of America | Ending 7898 | Closed Account |
| 25 | Nine West Holdings, Inc. | Bank of America | Ending 7219 | Closed Account |
| 26 | Nine West Holdings, Inc. | Bank of America | Ending 5806 | Closed Account |
| 27 | Nine West Holdings, Inc. | Bank of America | Ending 5302 | Closed Account |
| 28 | Nine West Holdings, Inc. | Bank of America | Ending 7167 | Closed Account |
| 29 | Nine West Holdings, Inc. | Bank of America | Ending 7060 | Closed Account |
| 30 | Nine West Holdings, Inc. | Bank of America | Ending 6510 | Closed Account |
| 31 | Nine West Holdings, Inc. | Bank of America | Ending 4135 | Closed Account |
| 32 | Nine West Holdings, Inc. | Bank of America | Ending 5952 | Closed Account |
| 33 | Nine West Holdings, Inc. | Bank of America | Ending 6648 | Closed Account |
| 34 | Nine West Holdings, Inc. | Bank of America | Ending 1202 | Closed Account |
| 35 | Nine West Holdings, Inc. | Bank of America | Ending 0494 | Closed Account |
| 36 | Nine West Holdings, Inc. | Bank of America | Ending 4758 | Closed Account |
| 37 | Nine West Holdings, Inc. | Bank of America | Ending 7908 | Closed Account |
| 38 | Nine West Holdings, Inc. | Bank of America | Ending 6935 | Closed Account |
| 39 | Nine West Holdings, Inc. | Bank of America | Ending 8978 | Closed Account |
| 40 | Nine West Holdings, Inc. | Bank of Hawaii | Ending 5654 | Closed Account |
| 41 | Nine West Holdings, Inc. | Bank of Hawaii | Ending 0338 | Closed Account |
| 42 | Nine West Holdings, Inc. | BB&T Bank | Ending 4935 | Closed Account |
| 43 | Nine West Holdings, Inc. | Capital One | Ending 4036 | Closed Account |
| 44 | Nine West Holdings, Inc. | Fifth Third Bank | Ending 9463 | Closed Account |
| 45 | Nine West Holdings, Inc. | Five Star Bank | Ending 4215 | Closed Account |

KE 53888420

|    | Entity | Bank Name | Account Number | Account Type |
|----|--------|-----------|----------------|--------------|
| 46 | Nine West Holdings, Inc. | Frost National Bank | Ending 1383 | Closed Account |
| 47 | Nine West Holdings, Inc. | Hamilton State Bank | Ending 7557 | Closed Account |
| 48 | Nine West Holdings, Inc. | JP Morgan Chase | Ending 9834 | Closed Account |
| 49 | Nine West Holdings, Inc. | M&T Bank | Ending 8255 | Closed Account |
| 50 | Nine West Holdings, Inc. | MainSource Bank | Ending 5650 | Closed Account |
| 51 | Nine West Holdings, Inc. | Northeast Georgia Bank | Ending 4805 | Closed Account |
| 52 | Nine West Holdings, Inc. | PNC Bank | Ending 4276 | Closed Account |
| 53 | Nine West Holdings, Inc. | Premier Bank | Ending 5188 | Closed Account |
| 54 | Nine West Holdings, Inc. | Regions Bank | Ending 2585 | Closed Account |
| 55 | Nine West Holdings, Inc. | South State Bank | Ending 8633 | Closed Account |
| 56 | Nine West Holdings, Inc. | South State Bank | Ending 6060 | Closed Account |
| 57 | Nine West Holdings, Inc. | SunTrust Bank | Ending 1340 | Closed Account |
| 58 | Nine West Holdings, Inc. | TD Bank | Ending 9130 | Closed Account |
| 59 | Nine West Holdings, Inc. | US Bank | Ending 1764 | Closed Account |
| 60 | Nine West Holdings, Inc. | US Bank | Ending 1673 | Closed Account |
| 61 | Nine West Holdings, Inc. | US Bank | Ending 1554 | Closed Account |
| 62 | JH Apparel (US) LLC | Bank of America | Ending 0599 | Lockbox  (#742995) |
| 63 | Nine West Holdings, Inc. | Bank of America | Ending 7944 | Closed Account |
| 64 | Nine West Holdings, Inc. | Wells Fargo | Ending 7746 | Utilities Adequate Assurance |
| 65 | Nine West Holdings, Inc. | Wells Fargo | Ending 1863 | DIP Term Loan Proceeds Account |
| 66 | Nine West Holdings, Inc. | Bank of America | Ending 1189 | Closed Account |

KE 53888420

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| NINE WEST HOLDINGS, INC., *et al.*,[1] ) | Case No. 18-10947 (SCC) |
| ) | |
| Debtors. ) | ~~(Joint Administration Requested)~~(Jointly Administered) |
| ) | |
| ) | **Re:  Docket No~~.~~s. 7, 69** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO**
**(A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM,**
**(B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,**
**(C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM**
**INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of ~~an~~a final order (this "Final Order")~~,~~ (a) authorizing the Debtors to (i) continue to operate their Cash Management System as illustrated on **Exhibit 1** hereto and maintain their existing Bank Accounts, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms, and (iv) continue to perform Intercompany Transactions with each other and with non-debtor affiliates consistent with historical practice, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nine West Holdings, Inc. (7645); Jasper Parent LLC (4157); Nine West Management Service LLC (4508); Kasper Group LLC (7906); Kasper U.S. Blocker LLC (2390); Nine West Apparel Holdings LLC (3348); Nine West Development LLC (2089); Nine West Distribution LLC (3029); Nine West Jeanswear Holding LLC (7263); One Jeanswear Group Inc. (0179); and US KIC Top Hat LLC (3076).  The location of the Debtors' service address is:  1411 Broadway, New York, New York 10018.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

*States District Court for the Southern District of New York*, dated January 31, 2012; and ~~that~~ this

Court ~~may~~having the power to enter a final order consistent with Article III of the United States

Constitution; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate

under the circumstances and no other notice need be provided; and this Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual

bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

and upon all of the proceedings had before this Court; and after due deliberation and sufficient

cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis only as set forth herein.

2.      Subject to the limitations of this Final Order, the Debtors are authorized, but not

directed, to: (a) continue using the Cash Management System and honor any prepetition

obligations related to the use thereof; (b) designate, maintain, close, and continue to use on a

final basis their existing Bank Accounts, including, but not limited to, the Bank Accounts

identified on **Exhibit 2** hereto, in the names and with the account numbers existing immediately

before the Petition Date; (c) deposit funds in, and withdraw funds from, the Bank Accounts by

all usual means, including checks, wire transfers, ACH transfers, and other debits; (d) treat their

prepetition Bank Accounts for all purposes as debtor-in-possession accounts; and (e) open new

debtor-in-possession Bank Accounts, *provided* that in the case of each of (a) through (e), such

action is taken in the ordinary course of business.

2

3.      The Debtors are authorized, but not directed, to continue using the Purchase Cards and the Purchase Card Program, the Company Cards,[3] the Business Travel Account, and the E-Payable Account and to pay any prepetition or postpetition amounts due in connection therewith in the ordinary course of business and consistent with prepetition practices.

4.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, *provided*, *however*, that once the Debtors have exhausted their existing stock of Business Forms and checks, they shall ensure that any new Business Forms and checks are clearly labeled "Debtor in Possession" and *provided*, *further*, that with respect to any Business Forms and checks that are generated electronically, the Debtors shall ensure that such electronic Business Forms and checks are clearly labeled "Debtor in Possession."

5.      Except as otherwise provided in this Final Order, and only to the extent sufficient funds are on deposit and standing in the Debtors' credit in each applicable Bank Account, all Cash Management Banks at which the Bank Accounts are maintained are authorized to (a) continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and (b) debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for (I) all checks drawn on the Debtors'

---

[3]      A description of the Company Cards is set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 9].

3

accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (II) all checks or other items deposited in one of the Debtors' accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date, and (III) all applicable fees and expenses, including the Bank Fees, associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the applicable Bank Accounts consistent with historical practice, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

6.      The Debtors will instruct the Cash Management Banks as to which checks, drafts, wire transfers (excluding any wire transfers that the Cash Management Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored.  Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date.

7.      Notwithstanding any other provision of this Final Order, the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check, draft, wire, transfer, or other payment order drawn or issued by the Debtors prior to the Petition Date

4

should be honored pursuant to this Final Order or any other order of the Court, and should a Cash Management Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Cash Management Bank shall not be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition or otherwise be in violation of this Final Order.

8.      Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination, right of offset, analysis fees, overdrafts, and fee and expense provisions, shall remain in full force and effect. Either the Debtors or the Cash Management Banks may, without further order of the Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to the terms of those existing deposit agreements, including, without limitation, the opening and closing of bank accounts, *provided* that such changes are in accordance with the terms of this Final Order, the DIP Orders, and the DIP Documents (as defined in the DIP Orders).

9.      As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Cash Management Banks.

10.     The requirement to establish separate accounts for tax payments is hereby waived.

KE 53888420

11.    ~~The~~Subject to paragraphs 12 and 13 below, the Debtors are authorized to (a) continue performing Intercompany Transactions in the ordinary course of business and (b) set off mutual postpetition obligations relating to intercompany receivables and payables through the Cash Management System, *provided* that the Debtors shall not be authorized by this Final Order to undertake any Intercompany Transactions or set off mutual postpetition obligations relating to intercompany receivables and payables that are (x) not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period or (y) prohibited or restricted by the terms of the DIP Orders and the DIP Documents (as defined in the DIP Orders).  In administering the Cash Management System, including the Bank Accounts, each Cash Management Bank and the DIP Agents (as defined in the DIP Orders) shall be authorized to assume, without further inquiry, that the foregoing provisions relating to the Intercompany Transactions have been complied with by the Debtors. In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

~~11.~~12.  All Intercompany Claims between Debtors arising after the Petition Date shall be accorded administrative expense status in accordance with section 503(b) and 364(b) of the Bankruptcy Code, subject and junior to the claims, including adequate protection claims, granted in connection with the DIP Financing, in accordance with the DIP Orders.  For the avoidance of doubt, to the extent any Debtor makes a payment (or has made a payment since the Petition Date) on behalf of another Debtor pursuant to either the (a) *Final Order (A) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (B) Granting Related Relief* [Docket No. 215] or (b) *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of*

6

*(A) Foreign Vendors, (B) Lien Claimants, (C) Import Claimants, and (D) 503(b)(9) Claimants, and (II) Granting Related Relief* [Docket No. 214] (or, in each case, any prior entered orders providing interim relief), such payment shall result in an Intercompany Claim with the administrative expense status as set forth in the preceding sentence; the Debtors will provide to the official committee of unsecured creditors (the "UCC") and the advisors to each of the DIP Lenders (x) a summary of all payments made pursuant to the aforementioned orders within two weeks of entry of this Order, in form and substance reasonably satisfactory to the advisors to the UCC, which summary shall confirm the status of all such Intercompany Claims arising from such payments as post-petition administrative expense claims and (y) supporting rationale and transaction level detail, if requested by the advisors to the UCC or any of the advisors to the DIP Lenders.  The Debtors shall ensure that all Intercompany Claims between Debtors after the Petition Date are recorded or designated as administrative expenses in the Debtors' books and records in a form and manner to be agreed upon by the Debtors, the advisors to the UCC, and the advisors to each of the DIP Lenders.  Further, within one business day of the filing of the Debtors' Monthly Operating Report, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders with a report detailing all Intercompany Claims and/or Intercompany Transactions as recorded in the Debtors' general ledger system for the period covered by such Monthly Operating Report and, if requested by the advisors to the UCC or any of the advisors to the DIP Lenders, any additional detail and supporting documentation for any and all Intercompany Claims and/or Intercompany Transactions reported therein.

13.    The following protocol will govern any and all transfers from a Debtor to a non-debtor affiliate or subsidiary of the Debtors (each, a "Subject Transfer"):

7

(a)     The Debtors may make a Subject Transfer to a non-debtor without the prior consent of the UCC if:

(i)     with respect to any individual non-debtor, the aggregate amount transferred to such non-debtor in a single month is less than $25,000;

(ii)     with respect to any individual non-debtor, the aggregate amount transferred to such non-debtor during these chapter 11 cases is less than $75,000; and

(iii)     with respect to all non-debtors, the aggregate amount transferred to all non-debtors in a single month is less than $75,000.

(b)     Prior to making any other Subject Transfer, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders the following information, no less than three (3) business days prior to making such proposed Subject Transfer:

(i)     the amount of such proposed Subject Transfer;

(ii)     the Debtor making the proposed Subject Transfer and the Debtor on whose behalf the proposed Subject Transfer is being made (if different);

(iii)     the non-debtor receiving the proposed Subject Transfer;

(iv)     the rationale for such proposed Subject Transfer, including (A) reasonably detailed supporting financial information, (B) the bases for the Subject Transfer, and (C) complete detailed billings (i.e., detail sufficient to show the individual components of the aggregate amount of the Subject Transfer) from the non-debtor to any Debtor related to such proposed Subject Transfer; and

(v)     if the Subject Transfer is for anything other than a service, the form in which the non-debtor intends on repaying the Subject Transfer, including (A) which entity will be making the repayment, (B) the terms of such repayment (including, but not limited to, the anticipated date of such repayment and interest being charged (if any)), and (C) whether the repayment will be a secured or unsecured obligation of the payor.

8

(c)      Except for the Subject Transfers described in subparagraph (a) above, the Debtors shall not make any proposed Subject Transfer without the consent of the UCC, the Required Lenders (as defined in the Term DIP Credit Agreement, as defined in the DIP Orders), and the Requisite Lenders (as defined in the ABL/FILO DIP Credit Agreement, as defined in the DIP Orders), which consent shall not be unreasonably withheld, delayed, or conditioned, *provided* that if the advisors to the UCC, the Required Lenders, or the Requisite Lenders do not respond within three (3) business days from the receipt of notice of a Subject Transfer, the UCC, the Required Lenders, and/or the Requisite Lenders shall be deemed to consent to the proposed Subject Transfer.

(d)      If a Subject Transfer is for services rendered by the non-debtor to a Debtor other than the Debtor making the Subject Transfer, the Debtors shall contemporaneously record such Subject Transfer as an administrative expense claim owing from the Debtor on which behalf the Subject Transfer was made to the Debtor that made such Subject Transfer, in a form and manner to be agreed upon by the Debtors, the UCC, the Required Lenders, and the Requisite Lenders.  Upon the request of the advisors to the UCC or any of the advisors to the DIP Lenders, the Debtors shall provide the UCC and the DIP Lenders proof of the intercompany accounting entry of a Subject Transfer after the Subject Transfer is made.

(e)      By no later than June 29, 2018, the Debtors shall provide the advisors to the UCC and the advisors to each of the DIP Lenders any and all information reasonably requested with regard to the Debtors' and their non-debtor subsidiaries' intercompany ledgers since April 9, 2014, to the extent practicable, which time period may be changed by agreement between the Debtors, the UCC, and the DIP Lenders.

9

12.14.  The Debtors are authorized, upon prior notice to the DIP Agents, to open new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their reasonable business judgment, *provided* that such actions are in compliance with, and not prohibited or restricted by, the terms of the DIP Orders and the DIP Documents (as defined in the DIP Orders); *provided*, *further*, that (a) prior to opening any new bank accounts the Debtors shall give fourteen days advance notice (if practicable) to the U.S. Trustee and counsel to any statutory committees appointed in these chapter 11 cases, counsel to Brigade Capital Management, LP, counsel to the Ad Hoc Group of Crossover Lenders, and counsel to the Ad Hoc Group of Secured Lenders, and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at such bank that is willing to immediately execute such an agreement.

1.    Except as otherwise provided herein, in the event that a Bank Account does not comply or ceases to comply with the requirements of section 345(b) of the Bankruptcy Code, the Debtors shall have either forty-five days thereafter, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy code or sufficient time, in the Debtors' sole discretion, to close such Bank Account.

15.    NotwithstandingThe Debtors, having obtained a surety bond in favor of the United States, in accordance with section 345(b)(1) of the Bankruptcy Code, in a form acceptable to and from a certified surety company approved by the U.S. Trustee, and in the amount of $150,000 USD to protect the deposit of estate funds held in the Indonesian account, are hereby authorized to continue using the Indonesian Account for sourcing operations in Indonesia and Asia and for maintaining funds held in Indonesian Rupiah.

10

13.16.  Subject to paragraphs 12 and 13 above, notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) other than with respect to the Intercompany Claims, an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion or a finding that any particular claim is an administrative expense or other priority claim; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of any party in interest under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

14.17.  Nothing contained in this Final Order or any action taken by the Debtors in implementing this Final Order shall be deemed (a) a waiver of the rights of any party- in- interest to dispute the amount of, basis for, validity of, or treatment of any Intercompany Claim or the allocation of expenses or other costs between any Debtor entities, (b) to override paragraph 8 of the *Order (A) Approving the Sale of Substantially All of the Assets of the Debtors' Nine West, Bandolino, and Associated Brands Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts, and (D) Granting Related Relief* [Docket No. 404] (the "Sale Order"), or (c) to

11

KE 53888420

prejudice any parties' rights with respect to whether the payment of the ABL Priority Proceeds and/or Term Priority Proceeds (as those terms are defined in the Sale Order) by one Debtor by or on behalf of another Debtor creates an Intercompany Claim entitled to administrative priority or whether such payment (i) does not create an Intercompany Claim or (ii) if it does create an Intercompany Claim, is not entitled to administrative priority.

15.18.  Notwithstanding the relief granted in this Final Order, but without limiting the terms of paragraphs 12 and 13 above, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Orders and the DIP Documents (as defined in the DIP Orders).  To the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control.; *provided*, *however*, that the UCC's rights set forth in paragraphs 12 and 13 above are hereby deemed consistent with the terms of the DIP Orders; *provided further*, that for the avoidance of doubt, all payments and transfers described in paragraphs 12 and 13 above shall be subject to and comply with the Budget set forth in the DIP Orders, and nothing in this Order shall relieve the Debtors from their obligations under, or shall override any negative covenants set forth in, the DIP Documents (as defined in the DIP Orders).

16.19.  Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.20.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

18.21.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12

19.22.   The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2018

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

13

**Exhibit 1**

**Cash Management System Schematic**

KE 47864730

# Cash Management System Flow of Funds Overview



**Exhibit 2**

**Debtor Bank Accounts**

| | Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|---|
| 1 | Nine West Holdings, Inc. | Bank of America | Ending 9362 | Operating Account |
| 2 | Nine West Holdings, Inc. | Bank of America | Ending 1A23 | ~~Investment~~Closed Account |
| 3 | Nine West Holdings, Inc. | Bank of America | Ending 3058 | Disbursement - AP (via wires) |
| 4 | Nine West Holdings, Inc. | Bank of America | Ending 2882 | Lockbox (#277512) |
| 5 | Nine West Holdings, Inc. | Bank of America | Ending 3018 | Corporate Retail Store Banking |
| 6 | Nine West Holdings, Inc. | Bank of America | Ending 3598 | Receipt - International |
| 7 | Nine West Holdings, Inc. | Wells Fargo | Ending 1550 | WF Master Operating |
| 8 | Nine West Holdings, Inc. | Wells Fargo | Ending 4014 | Disbursement - Payroll |
| 9 | Nine West Holdings, Inc. | Wells Fargo | Ending 6820 | Disbursement - AP (via ACH) |
| 10 | Nine West Holdings, Inc. | Wells Fargo | Ending 6833 | Disbursement - AP (via EDI) |
| 11 | Nine West Holdings, Inc. | Wells Fargo | Ending 0583 | Receipts - Retail (lockbox) |
| 12 | Nine West Holdings, Inc. | Wells Fargo | Ending 7833 | Disbursement - AP (via checks) |
| 13 | Nine West Development LLC | Wells Fargo | Ending 3536 | Disbursement - AP (via ACH, checks, EDI) |
| 14 | Nine West Development LLC | Wells Fargo | Ending 2563 | Receipts - Licensing |
| 15 | Nine West Holdings, Inc. | Wells Fargo | Ending 3990 | WF Master Collections |
| 16 | Nine West Holdings, Inc. | Wells Fargo | Ending 4094 | Receipt - Easy Spirit Credit Card |
| 17 | Nine West Holdings, Inc. | Wells Fargo | Ending 6185 | Receipt - Credit Card |
| 18 | Nine West Holdings, Inc. | Wells Fargo | Ending 8700 | ~~Receipt - Retail Banking~~Closed Account |
| 19 | Nine West Holdings, Inc. | Wells Fargo | Ending 2531 | Receipt - from International |

| | Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|---|
| 20 | Nine West Holdings, Inc. | Citibank | Ending 9196 | Disbursement - Inventory |
| 21 | One Jeanswear Group Inc. | Bank of America | Ending 3015 | Indonesia Local |
| 22 | Nine West Holdings, Inc. | Bank of America | Ending 4745 | ~~Retail Store Depository~~Closed Account |
| 23 | Nine West Holdings, Inc. | Bank of America | Ending 5796 | ~~Retail Store Depository~~Closed Account |
| 24 | Nine West Holdings, Inc. | Bank of America | Ending 7898 | ~~Retail Store Depository~~Closed Account |
| 25 | Nine West Holdings, Inc. | Bank of America | Ending 7219 | ~~Retail Store Depository~~Closed Account |
| 26 | Nine West Holdings, Inc. | Bank of America | Ending 5806 | ~~Retail Store Depository~~Closed Account |
| 27 | Nine West Holdings, Inc. | Bank of America | Ending 5302 | ~~Retail Store Depository~~Closed Account |
| 28 | Nine West Holdings, Inc. | Bank of America | Ending 7167 | ~~Retail Store Depository~~Closed Account |
| 29 | Nine West Holdings, Inc. | Bank of America | Ending 7060 | ~~Retail Store Depository~~Closed Account |
| 30 | Nine West Holdings, Inc. | Bank of America | Ending 6510 | ~~Retail Store Depository~~Closed Account |
| 31 | Nine West Holdings, Inc. | Bank of America | Ending 4135 | ~~Retail Store Depository~~Closed Account |
| 32 | Nine West Holdings, Inc. | Bank of America | Ending 5952 | ~~Retail Store Depository~~Closed Account |
| 33 | Nine West Holdings, Inc. | Bank of America | Ending 6648 | ~~Retail Store Depository~~Closed Account |
| 34 | Nine West Holdings, Inc. | Bank of America | Ending 1202 | ~~Retail Store Depository~~Closed Account |
| 35 | Nine West Holdings, Inc. | Bank of America | Ending 0494 | ~~Retail Store Depository~~Closed Account |
| 36 | Nine West Holdings, Inc. | Bank of America | Ending 4758 | ~~Retail Store Depository~~Closed Account |
| 37 | Nine West Holdings, Inc. | Bank of America | Ending 7908 | ~~Retail Store Depository~~Closed Account |

KE 53888420

| | Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|---|
| 38 | Nine West Holdings, Inc. | Bank of America | Ending 6935 | ~~Retail Store Depository~~Closed Account |
| 39 | Nine West Holdings, Inc. | Bank of America | Ending 8978 | ~~Retail Store Depository~~Closed Account |
| 40 | Nine West Holdings, Inc. | Bank of Hawaii | Ending 5654 | ~~Retail Store Depository~~Closed Account |
| 41 | Nine West Holdings, Inc. | Bank of Hawaii | Ending 0338 | ~~Retail Store Depository~~Closed Account |
| 42 | Nine West Holdings, Inc. | BB&T Bank | Ending 4935 | ~~Retail Store Depository~~Closed Account |
| 43 | Nine West Holdings, Inc. | Capital One | Ending 4036 | ~~Retail Store Depository~~Closed Account |
| 44 | Nine West Holdings, Inc. | Fifth Third Bank | Ending 9463 | ~~Retail Store Depository~~Closed Account |
| 45 | Nine West Holdings, Inc. | Five Star Bank | Ending 4215 | ~~Retail Store Depository~~Closed Account |
| 46 | Nine West Holdings, Inc. | Frost National Bank | Ending 1383 | ~~Retail Store Depository~~Closed Account |
| 47 | Nine West Holdings, Inc. | Hamilton State Bank | Ending 7557 | ~~Retail Store Depository~~Closed Account |
| 48 | Nine West Holdings, Inc. | JP Morgan Chase | Ending 9834 | ~~Retail Store Depository~~Closed Account |
| 49 | Nine West Holdings, Inc. | M&T Bank | Ending 8255 | ~~Retail Store Depository~~Closed Account |
| 50 | Nine West Holdings, Inc. | MainSource Bank | Ending 5650 | ~~Retail Store Depository~~Closed Account |
| 51 | Nine West Holdings, Inc. | Northeast Georgia Bank | Ending 4805 | ~~Retail Store Depository~~Closed Account |
| 52 | Nine West Holdings, Inc. | PNC Bank | Ending 4276 | ~~Retail Store Depository~~Closed Account |
| 53 | Nine West Holdings, Inc. | Premier Bank | Ending 5188 | ~~Retail Store Depository~~Closed Account |
| 54 | Nine West Holdings, Inc. | Regions Bank | Ending 2585 | ~~Retail Store Depository~~Closed Account |

KE 53888420

|  | Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|---|
| 55 | Nine West Holdings, Inc. | South State Bank | Ending 8633 | ~~Retail Store Depository~~Closed Account |
| 56 | Nine West Holdings, Inc. | South State Bank | Ending 6060 | ~~Retail Store Depository~~Closed Account |
| 57 | Nine West Holdings, Inc. | SunTrust Bank | Ending 1340 | ~~Retail Store Depository~~Closed Account |
| 58 | Nine West Holdings, Inc. | TD Bank | Ending 9130 | ~~Retail Store Depository~~Closed Account |
| 59 | Nine West Holdings, Inc. | US Bank | Ending 1764 | ~~Retail Store Depository~~Closed Account |
| 60 | Nine West Holdings, Inc. | US Bank | Ending 1673 | ~~Retail Store Depository~~Closed Account |
| 61 | Nine West Holdings, Inc. | US Bank | Ending 1554 | ~~Retail Store Depository~~Closed Account |
| 62 | JH Apparel (US) LLC | Bank of America | Ending 0599 | Lockbox  (#742995) |
| 63 | Nine West Holdings, Inc. | Bank of America | Ending 7944 | ~~Retail Store Depository~~Closed Account |
| 64 | Nine West Holdings, Inc. | Wells Fargo | Ending 7746 | Utilities Adequate Assurance |
| 65 | Nine West Holdings, Inc. | Wells Fargo | Ending 1863 | DIP Term Loan Proceeds Account |
| 66 | Nine West Holdings, Inc. | Bank of America | Ending 1189 | Closed Account |

4

KE 53888420