James H.M. Sprayregen, P.C.
Christopher J. Marcus, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James A. Stempel (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Angela M. Snell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NINE WEST HOLDINGS, INC., *et al.*,[1] | ) | Case No. 18-10947 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUPPLEMENTAL DECLARATION OF RALPH SCHIPANI**
**IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. §§ 105(a)**
**AND 363(b) TO RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC TO**
**PROVIDE THE DEBTORS AN INTERIM CHIEF EXECUTIVE OFFICER AND**
**CERTAIN ADDITIONAL PERSONNEL AND (B) DESIGNATE RALPH SCHIPANI**
**AS INTERIM CHIEF EXECUTIVE OFFICER FOR NINE WEST HOLDINGS, INC.**
**AND ITS DEBTOR AFFILIATES, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Ralph Schipani, under penalty of perjury, declare as follows:

1.    I previously submitted a declaration (the "Initial Declaration") in support of the

Debtors' application to retain Alvarez & Marsal North America LLC to provide the Debtors with

an Interim CEO and Engagement Personnel.[2]  I submit this supplemental declaration to provide

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Nine West Holdings, Inc. (7645); Jasper Parent LLC (4157); Nine West Management Service LLC (4508); Kasper Group LLC (7906); Kasper U.S. Blocker LLC (2390); Nine West Apparel Holdings LLC (3348); Nine West Development LLC (2089); Nine West Distribution LLC (3029); Nine West Jeanswear Holding LLC (7263); One Jeanswear Group Inc. (0179); and US KIC Top Hat LLC (3076).  The location of the Debtors' service address is:  1411 Broadway, New York, New York 10018.

[2]    Capitalized terms not defined herein have the same meanings as in the Initial Declaration.

additional background concerning my role with respect to A&M's pre-petition engagement by the Debtors, including my role on the Subsidiary Boards as referenced in paragraph 4 of the Initial Declaration, and the nature of the services A&M has provided.

### A&M's Role in Managing the Day-to-Day Affairs of the Company

2.      A&M was first retained by Jones Holdings LLC and Nine West Holdings, Inc. (together with their subsidiaries and affiliates, the "Company") in accordance with an engagement letter dated April 8, 2014.  Before A&M's engagement, the Company had operated as a publicly traded firm.  It was subsequently purchased by Sycamore Partners, L.P. ("Sycamore"), a private equity investment group, in a transaction announced in late 2013.  A&M was engaged by the Company shortly after the acquisition closed for the purpose of facilitating the transition and implementing the new board of directors' business plan, which focused on organizing and developing the Company's various brands and lines as separate business units.[3]

3.      At the outset of the A&M engagement, I was appointed Interim Vice President of Operations.  My focus was principally on assisting the Company with an internal restructuring of operational functions across various business units: before the Company was taken private, its various business lines received shared services, such as accounts payable and information technology, from a single cost center within the firm.  After the acquisition, the Company's new business plan involved separating the business lines and assignment each its own services functions.  At that time, I was made Interim President of Shared Services.  As Vice President of

---

[3]      In the Initial Declaration, I stated that "The Firm has provided services to Potential Party in Interest Sycamore Partners, L.P. ('Sycamore') and its portfolio companies unrelated to the Debtors."  In connection with my collection of documents in response to a subpoena served by the Office of the United States Trustee, I came to learn that another group of professionals within A&M was retained to provide limited services to Sycamore with respect to the Company before Sycamore's acquisition in April 2014.  My understanding is that these services involved approximately 500 hours of work over the course of one month, in connection with developing a 100-day post-acquisition plan for Sycamore.  This work was not related to the development or execution of the Company's business plan.  Nor did it relate to any work done as part of Sycamore's assessment of the investment.  None of the professionals who provided services to Sycamore provided services to any Debtor entity.

Operations and Interim President of Shared Services, I was tasked with determining which shared services would be distributed to each of the business units.  I also was responsible for assigning employees to the different units, determining what expenses would be charged by each unit for any shared services, and managing the team that ran the non-redistributed services functions.

4.      I was appointed Interim President in May 2015.  In that role, I became heavily involved in the financials of the Company, assuming responsibility for public financial reporting and conducting earnings calls.  I also oversaw the creation of annual business plans, cash flow management, and overall capital management.

5.      I was appointed Interim CEO in June 2016.  I assumed responsibility for all aspects of the Company, including ensuring that the business plans of the individual business unit heads were coordinated and executed in a consistent manner.  In this capacity, I became involved in the sale of the Company's Easy Spirit brand, the acquisition of Kasper Topco Limited in January 2017, and  the integration of the Kasper businesses into the Company.

6.      A&M's role since our initial engagement by the Company in 2014 has been focused exclusively on making personnel available to manage the day-to-day business of the Company, exploring corporate opportunities, and planning and executing business strategies.  Specifically, the A&M team has been involved with managing the company's relationships with vendors and customers, assessing the viability of the Company's brick-and-mortar retail presence, and improving operations at Nine West Canada.  We were not hired for the purpose of restructuring the Company's obligations or otherwise assisting in the administration of a bankruptcy proceeding. Bankruptcy was not a possibility that was discussed until the summer of 2017, when the Company, in consultation with other advisors and independent of A&M's activities and responsibilities, began considering debt restructuring options.

7.      When the Company approached and entered bankruptcy earlier this year, A&M personnel performed some services relating to the Company's chapter 11 process.  This was a necessary extension and continuation of the A&M team's existing role in managing operations. Additional A&M personnel were added to the team to assist in the Company's preparation of bankruptcy schedules and disclosures, as well as the collection of documentation to facilitate analysis of creditor claims.  These services bolstered the function of the finance department, and in my experience could have been performed solely by existing Company personnel, rather than A&M personnel, had the necessary resources been available within the Company.

8.      To the extent that A&M personnel play a role in other bankruptcy activities, such as the Company's formulation of a chapter 11 plan or its obtaining debtor-in-possession financing, this too is an inevitable outgrowth of our role in managing the daily operations of the business. A&M personnel support the professionals who were hired by the Company specifically for bankruptcy purposes, such as Lazard Frères & Co. LLC and Kirkland and Ellis, LLP, but does so in the same way that in-house employees and officers of any company going through a restructuring typically would in my experience.  For example, we help gather relevant information and prepare forecasts and similar work product to present to stakeholders so that they can evaluate restructuring and financing options.  These activities involve the same kind of work that we have been performing for years, outside the context of bankruptcy.

### My Role as Member of Subsidiary Boards

9.      At the outset of A&M's engagement, my role was solely as an officer; I did not serve as a director of the Company or any subsidiary.

10.     In connection with A&M's engagement on April 8, 2014, Andrew Hede (another A&M professional at the time) was appointed to serve as Interim Chief Operating Officer.  In 2014

and 2015, Mr. Hede further was appointed to the boards of the following subsidiaries or affiliates of the Company: Dongguan Jones Commerce and Trading Co. Ltd.; Dongguan Nine West Commerce and Trading Co. Ltd.; GRI Group Ltd.; Kasper Global Limited (f/k/a Jones International Limited); and Nine West Group International Limited.  These appointments of Mr. Hede were made to replace a departing Company executive who had previously occupied seats on these boards.

11.     In May 2015, Mr. Hede ceased to be involved with the services A&M was providing to the Company, and he resigned from his positions on these boards around this time. On May 15, 2015, I was appointed to replace Mr. Hede on the boards of Dongguan Jones Commerce and Trading Co. Ltd., and Kasper Global Limited.  In connection with Mr. Hede's departure from this engagement, I was also appointed by the board of Nine West Holdings, Inc. to be President of Nine West Holdings, Inc.  In June 2016, I was appointed as the Chief Executive Officer of Nine West Holdings, Inc. by the same board.

12.     On September 10, 2015, Christopher Cade, who is not affiliated with A&M and who had served as the Chief Financial Officer of the Company and a member of the board of One Jeanswear Group Inc. and other affiliates of the Company, resigned from his positions on those boards.  I was appointed to replace Mr. Cade on the boards he was departing: the boards of One Jeanswear Group Inc. (f/k/a/ Nine West Jeanswear Group Inc.); Nine West Distribution Inc. (now known as Nine West Distribution LLC); Dongguan Nine West Commerce and Trading Co. Ltd.; Jones Apparel Group Canada ULC; and Nine West Management Services LLC (f/k/a Jones Management Services Co.).  Also around this time, I was appointed to the boards of Nine West Group International Limited and GRI Group Ltd. to replace a Company employee who resigned

from her board positions.  Each of these board appointments occurred pursuant to the request of and under the supervision of the debtors' parent level boards.

13.    I and Joseph Donnalley, another officer of the Company (who is not affiliated with A&M), served as the only two members of the One Jeanswear Group Inc. board beginning on September 10, 2015, after Mr. Cade's resignation.  Mr. Donnalley left the Company effective October 3, 2016, at which point he resigned from all board positions.  After that time, I was the only member of the board of One Jeanswear Group, Inc. until August 2017, when Alan Miller and Harvey Tepner were appointed as additional board members.[4]  In approximately January 2017, the Company acquired Kasper Topco Limited; I was appointed to the board of that entity on January 27, 2017, for administrative purposes.

14.    I resigned from each of my board positions as of November 22, 2017.

15.    My role on each of the Subsidiary Boards, including One Jeanswear Group, Inc. and the various foreign subsidiaries, was strictly administrative and did not entail substantive decision making as a director.  The boards on which I sat did not hold any meetings, formal or informal.  Over the course of my service on these boards, my involvement was always ministerial in nature: my actions were limited to signing written consents to enact decisions that were directed by the parent board (of which I was not a member).  I estimate I did so fewer than 20 times over the two year period during which I served on the Subsidiary Boards.

16.    On some occasions, the transactions I approved were purely administrative, such as authorizing an agreement that allowed a small Indonesian office of a subsidiary to open a local bank account.  With respect to all of the transactions I approved as a director, I necessarily had to

---

[4]    In the Initial Declaration, I listed the date of appointment of Messrs. Miller and Tepner to the board of One Jeansworld Group, Inc. as August 2014.  (Doc. 507 at page 2, fn 3.)  That date was a typo.  It should have been August 2017.

and did conduct a prior substantive review and deliberation in my capacity as an officer of the Company, which was my primary role. It was incidental that I would later sign a written consent in my role as a director to formalize the approval of a transaction, or the hiring of an individual, that I had already vetted as part of my officer responsibilities.

17.    From April 2014 until the petition date, I billed approximately 9,857 hours in connection with the Company's engagement of A&M. Of that time, I estimate that I have spent less than one half of one hour, in total, on all matters relating to my service on the Subsidiary Boards. I did not receive any additional compensation by virtue of my positions on the Subsidiary Boards.

18.    I have never served on the board of directors of Debtor parent Jasper Parent LLC or lead debtor Nine West Holdings, Inc. These parent level boards made decisions with respect to hiring, retaining, and compensating professional firms and officers of the company, including A&M's and my prepetition and proposed post-petition retention and compensation.

19.    I was never a member of any of the limited liability companies for which I served as an officer or director.

Executed on June 25, 2018

By: _____
Ralph Schipani
Managing Director
Alvarez & Marsal North America, LLC