# EXHIBIT A

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**REVISED NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

August 17, 2009

Howard Israel
PO Box 718
555 Crowell's Bog Road
Brewster, Massachusetts 02631

Dear Mr. Israel:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1I0009 designated as Claim Number 005500:

Your claim for a credit balance of $2,782,791.15 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $389,342.95, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals by you as listed in Table 1.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300026399.1

As discussed with my legal counsel, Thomas Wearsch on July 16, 2009, the last two withdrawals from your BLMIS Account were made within 90 days of the Filing Date and are therefore preferential transfers which are recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). To facilitate the prompt partial satisfaction of your allowed claim, the Trustee has proposed to deduct the preferential payment of $250,000.00 from his initial payment to you.

You have disputed this treatment of the preferential payment. Pursuant to the terms of the Hardship Program instituted by the Trustee, the Trustee is willing to pay the undisputed portion of claims (up to the limit of available SIPC protection) to claimants that qualify for the Hardship Program, but have disputed the Trustee's proposed treatment of their claims. Because you have qualified for the Hardship Program and because you have disputed the treatment of the preferential payment you received, the Trustee is willing to make an initial payment to you of $139,342.95 which is your available SIPC protection of $389,342.95 minus the amount of the preferential payment of $250,000.00. This is not a set off, rather, you and the Trustee reserve all rights regarding the disputed portion of your claim (including the disputed portion of your SIPC protection). Your rights to the remainder of the SIPC protection available to you and the Trustee's rights to seek recovery of the preferential payment you received will be determined at a later date either by settlement between you and the Trustee or by court order.

The enclosed **REVISED PARTIAL ASSIGNMENT AND RELEASE** relating to the undisputed portion of the Trustee's initial payment to you must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **REVISED PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $139,342.95 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. The remainder of your SIPC protection will be held by the Trustee pending resolution of the dispute over the preferential payment that you received. By executing the Revised Partial Assignment and Release, you will not be waiving any rights to seek the full payment of the SIPC protection potentially available to you. The remainder of your claim - $250,000.00 - will remain as a claim against the fund of customer property.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78lll(4). Accordingly, Customers, as defined by SIPA §

300026399.1

> 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after August 17, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you and the Trustee are not able to agree upon the portion of your SIPC protection that has been withheld due to the preferential payment you received, the Trustee will obtain a hearing date for this controversy at a time and date determined by the Trustee, in his sole discretion. You will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

300026399.1

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

300026399.1

SCHEDULE A

### Table 1

#### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---:|:---:|---:|
| 12/18/1997 | CHECK WIRE | $677,342.95 |
| 12/23/1997 | CHECK | $22,000.00 |
| 4/25/2001 | CHECK | $200,000.00 |
| 2/15/2002 | CHECK | $200,000.00 |
| 5/23/2002 | CHECK | $300,000.00 |
| 5/4/2006 | CHECK WIRE | $260,000.00 |
| 5/7/2007 | STOP PAYMENT | $100,000.00 |
| 5/18/2007 | CHECK WIRE | $680,000.00 |
| **Total Deposits:** | | $2,439,342.95 |

#### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---:|:---:|---:|
| 7/6/2001 | CHECK | ($100,000.00) |
| 11/15/2001 | CHECK | ($100,000.00) |
| 8/15/2002 | CHECK | ($100,000.00) |
| 7/14/2003 | CHECK | ($100,000.00) |
| 11/17/2003 | CHECK | ($100,000.00) |
| 11/26/2003 | CHECK | ($100,000.00) |
| 11/10/2004 | CHECK | ($100,000.00) |
| 4/20/2005 | CHECK | ($100,000.00) |
| 6/6/2005 | CHECK | ($100,000.00) |
| 3/23/2006 | CHECK | ($100,000.00) |
| 9/28/2006 | CHECK | ($100,000.00) |
| 12/29/2006 | CHECK | ($100,000.00) |
| 4/25/2007 | CHECK | ($100,000.00) |
| 5/7/2007 | CHECK | ($100,000.00) |
| 7/13/2007 | CHECK | ($100,000.00) |
| 10/4/2007 | CHECK | ($100,000.00) |
| 2/12/2008 | CHECK | ($100,000.00) |
| 6/4/2008 | CHECK | ($100,000.00) |
| 9/8/2008 | CHECK | ($100,000.00) |
| 11/24/2008 | CHECK | ($150,000.00) |
| **Total Withdrawals:** | | ($2,050,000.00) |
| **Total deposits less withdrawals:** | | $389,342.95 |

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

## REVISED PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that HOWARD ISRAEL, located at PO Box 718, 555 Crowell's Bog Road, Brewster, Massachusetts 02631 (hereinafter referred to as the "Assignor") in consideration of the payment of $139,342.95 to satisfy in part his claim for customer protection (the "Customer Claim", having been designated Claim Number 005500) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for himself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1I0009, the "BLMIS Account"), which gave rise to the allowed Customer Claim for

securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $139,342.95 as set forth in the SIPA Trustee's Revised Notice of Determination of the Customer Claim dated August 17, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Revised Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor

now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Revised Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

If Assignor and the SIPA Trustee are not able to agree upon the portion of Assignor's SIPC protection that has been withheld due to the preferential payment received by Assignor, the SIPA Trustee will obtain a hearing date for this controversy at a time and date determined by the SIPA Trustee, in his sole discretion. Assignor will be notified of that hearing date. Assignor's failure to appear personally or through counsel at such hearing will result in the SIPA Trustee's determination with respect to Assignor's claim being confirmed by the Court and binding on Assignor.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Revised Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having his customer claim re-determined in accordance with any such Court order.

IN WITNESS WHEREOF, the undersigned has on this day set forth below duly executed this Revised Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

_____
HOWARD ISRAEL

Sworn and subscribed before me this
____ day of _____, 2009.

_____
Notary Public