# ⚡ DowLohnes

Richard L. Braunstein
D 202.776.2520  E rbraunstein@dowlohnes.com

September 15, 2009

**VIA OVERNIGHT COURIER**



Clerk of the United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Re:   Bankruptcy Case No. 08-1789 (BRL)
      Michael S. Leeds and Andrea R. Leeds
      Claim No: 14350
      BLMIS Account No: IL0177

Gentlemen:

We acknowledge receipt of the notice of Trustee's Determination of Claim dated August 28, 2009, in which Mr. and Mrs. Leeds SIPC claim for $500,000 was denied. Mr. and Mrs. Leeds disagree with said determination and request a hearing before Bankruptcy Judge Burton R. Lifland.

As indicated in Mr. and Mrs. Leeds customer claim, they transferred $17,087,527 in cash to their account with Bernard L. Madoff Investment Securities LLC ("BLMIS") and withdrew only $15 million in cash, with the result that Mr. and Mrs. Leeds deposited $2,087,527 ($17,087,527 – $15,000,000) more in cash then they withdrew from their account. Accordingly, the determination that Mr. and Mrs. Leeds withdrew more from their account then they deposited is incorrect.

The determination that "the amount of money" that Mr. and Mrs. Leeds withdrew from their account was greater than the cash they deposited is clearly erroneous and resulted from the Trustee giving effect to certain fictitious Book Entries made by BLMIS which indicated that an additional $1 million was deposited to Mr. and Mrs. Leeds account on 11/22/2000 and that Mr. and Mrs. Leeds were deemed to have withdrawn a total of $8,587,527 based on transfers purportedly made from their account on 1/21/2005, 6/30/2005, and 12/29/2005. As reflected in the deposit and withdrawal schedule prepared by the Trustee, a copy of which is enclosed, the aforementioned transfers reflect Book Entries made by BLMIS. Clearly the determination of the Trustee that these fictitious Book Entries represented cash deposits and withdrawals is incorrect. The position taken by the Trustee in denying the SIPC claim of Mr. and Mrs. Leeds is contrary to

**Dow Lohnes PLLC**
Attorneys at Law
www.dowlohnes.com

WASHINGTON, DC | ATLANTA, GA

1200 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036-6802
T 202.776.2000  F 202.776.2222

Clerk of the United States Bankruptcy Court
September 15, 2009
Page 2

and inconsistent with the Trustee's own view of this matter in which the "Trustee has assessed accounts based on money in/money out analysis (i.e. has the investor deposited more or less than he or she withdrew from BLMIS)." Further, in its filings with the Bankruptcy Court, the Trustee has argued that SIPC claims should be calculated on an investors "net equity" which he defined as money deposited less money withdrawn.

In its Notice of Denial, the Trustee stated that "no securities were ever purchased for your account [and that] any and all profits reported to you by BLMIS on account statements were fictitious". Thus once an investor made a cash deposit to BLMIS, his or her cash was not devoted to his or her account. Rather, the cash deposited by an investor was utilized by BLMIS in whatever manner it chose; in reality, an investor had no account with BLMIS. Thus any cash withdrawn by an investor could have been a return of funds which he or she deposited or from funds deposited by other investors. Accordingly, the only asset that an investor had after a deposit of cash with BLMIS was the cash that BLMIS actually distributed to the investor.

The statement by the trustee that "whenever a customer requested a transfer from one account to another, the trustee analyzed whether the transferor account had principal in the account at the time of transfer" is inconsistent with the fact that the financial statements furnished by BLMIS to its investors were fictitious since, as the Trustee acknowledged, "securities were never purchased by BLMIS for your account". The financial statements issued by BLMIS were fictitious and any purported transfers, other than cash actually received by Mr. and Mrs. Leeds, were fictitious transfers since there were no securities or cash in Mr. and Mrs. Leeds account to be transferred. Thus there is no factual basis for the Trustee to treat as a "cash" withdrawal to Mr. and Mrs. Leeds fictitious Book Entries purportedly effecting transfers of non-existent cash and securities to another account.

Concluding, the Trustee's analysis that Mr. and Mrs. Leeds withdrew from their account at BLMIS a total of $23,587,527 is clearly erroneous since Mr. and Mrs. Leeds only withdrew $15 million from their account to which they had deposited a total of $17,087,527. Under these circumstances, the SIPC claim filed by Mr. and Mrs. Leeds is proper and need be granted.

Respectfully submitted,

Richard L. Braunstein

Enclosure

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($5,500,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

## Table 1

### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 6/8/1999 | CHECK WIRE | $15,000,000.00 | $15,000,000.00 |
| 11/22/2000 | TRANS FROM 1L017630 | $1,000,000.00 | $1,000,000.00 |
| 4/1/2003 | CHECK WIRE | $2,087,527.00 | $2,087,527.00 |
| Total Deposits: | | $18,087,527.00 | $18,087,527.00 |

### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/4/2000 | CHECK WIRE | ($5,000,000.00) | ($5,000,000.00) |
| 10/10/2000 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 10/17/2000 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 11/27/2000 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 8/24/2001 | CHECK WIRE | ($1,500,000.00) | ($1,500,000.00) |
| 1/21/2005 | TRANS TO 1L017630 | ($6,500,000.00) | ($6,500,000.00) |
| 6/30/2005 | TRANS TO 1CM93530 | ($2,000,000.00) | ($2,000,000.00) |
| 12/29/2005 | TRANS TO 1CM93530 | ($892,689.61) | ($87,527.00) |
| 4/12/2006 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 5/25/2006 | CHECK WIRE | ($1,500,000.00) | ($1,500,000.00) |
| 10/4/2006 | CHECK WIRE | ($2,000,000.00) | ($2,000,000.00) |
| 6/5/2007 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 3/13/2008 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| Total Withdrawals: | | ($24,392,689.61) | ($23,587,527.00) |
| | | | |
| Total deposits less withdrawals: | | ($6,305,162.61) | ($5,500,000.00) |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were