**GIBBONS P.C.**
One Pennsylvania Plaza
New York, New York 10119
Telephone: 212-613-2009
Facsimile: 212-554-9696
By: Jeffrey A. Mitchell, Esq.
    Jeffrey S. Berkowitz, Esq.

*Attorneys for Donald G. Rynne*

RECEIVED SEP 24 2009 U.S. BANKRUPTCY COURT, SDNY

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | Bankruptcy Case No. 08-1789 (BRL) |

## OBJECTION TO DENIAL OF CLAIMS 690, 908 AND 100072 BY TRUSTEE DATED AUGUST 28, 2009

Pursuant to the Denial of Claims 690, 908 and 100072 (the "Combined Claims") dated August 28, 2009 (the "Denial") by the Trustee concerning Bernard L. Madoff Investment Securities ("BLMIS") account number 100072 (the "Account"), the undersigned, as counsel for Donald G. Rynne ("Rynne"), hereby files its written disagreement with the Denial for the reasons set forth below.

**A.  Background**

1.  Rynne is an 86 year old World War II veteran. During and after the war, he flew missions as an Air Force pilot in support of allied operations throughout North Africa, the Middle East, China, Burma and India. Rynne is also a lung cancer survivor, having had one half of one lung removed after his diagnosis nearly five years ago. He has never in his life been charged with any crime, and is not alleged to have had any role whatsoever in the criminal

activity that led to the demise of BLMIS. Rynne is simply an innocent BLMIS customer who on December 10, 2008 believed he had over $6-million in the above-referenced Account to generate sufficient income to finance his retirement, only to learn the next day that not only was that nest egg gone, but also his primary source of retirement income had vaporized.

2. Even though Rynne lost everything he thought was on deposit at BLMIS, by the Denial, the Trustee claims he is not even a victim. Based solely on simple arithmetic calculations derived exclusively from business records of a company which depended on fraudulent business records to survive, the Trustee claims those records show BLMIS paid $1.945-million more to Rynne over the years than he actually invested. Even though a $6-million retirement account disappeared overnight, according to the Trustee, Rynne did not suffer any loss. The only records relied upon by the Trustee to make that determination are the fraudulent records of BLMIS.

3. There is no dispute that for each year during which the Account was open, Rynne paid taxes on all reported income. At the time he did so, BLMIS was regulated, monitored and/or audited by government authorities, such as the SEC, NASD, FINRA, and the IRS, as well as insurers and others with which it did business. Those far closer to BLMIS than Rynne, and with actual oversight capability and authority, never observed or reported fraud to anyone right up to and including December 11, 2008, the day Madoff was arrested. Customers like Rynne were never warned that BLMIS might be anything other than a legitimate company honestly and accurately reporting securities related activities to its customers. Therefore, they treated their account statements no differently than customers of any other financial institution – as accurately reflecting a true account value maintained at a legitimate regulated company. Consequently,

#1438738 v2
109422-67219

whatever was reported by BLMIS as being in Rynne's account on the day it collapsed was, until he and the general public learned of the Madoff scandal, considered part of his liquid net worth.

**B.    The Denial**

4.    The Denial purports to claim that the Trustee determined, solely from the same fraudulent business records that were also used to deceive regulators and customers for years, that Rynne actually did not lose the more than the $6-million he believed was in the Account on the day BLMIS failed. To the contrary, the Trustee claims that over time, Rynne was able to withdraw more than he initially deposited, and "the amount of money you received in excess of the deposits in your account ($1,945,000) was taken from other customers and given to you."

5.    That conclusion has no basis in fact or law. All financial institutions commingle deposits, and customers are always paid, in one form or another, funds of others – whether those are deposits from customers or income generated by other business activities of the institution. Here, BLMIS similarly earned income from other business activities, the amount of which was reported each year on financial statements and tax returns. That income likely amounted to billions of dollars over the years Rynne's account was open. Withdrawals made by Rynne could just as easily have been from that other income. Unless there can be an accurate tracing of funds, the Trustee cannot know the source of funds for any withdrawal.

**C.    Disagreement of Rynne with The Denial**

6.    Rynne hereby sets forth the following grounds for his disagreement with the Denial by the Trustee, without prejudice to his right to supplement the stated grounds in the future:

    a.    The formula used by the Trustee to calculate "net equity":

        i.    is not supported by legal authority;

        ii. fails to take into account taxes paid on reported profits over the years; and

        iii. fails to add to "principal" the amount of such taxes, as well as the interest that would be due on such overpayment for all of the years on which tax payments should not have been made;

    b. The calculation of "net equity" is based upon business records maintained by a felon convicted of fraud and which were themselves falsified to conceal his own misconduct, and are therefore inherently unreliable;

    c. The calculation of "net equity" violates applicable statutes of limitations;

    d. The calculation of "net equity" is barred by the doctrine of laches;

    e. The calculation of "net equity" fails to take into account that Rynne in good faith relied upon the fact that government authorities regulated BLMIS, and therefore paid taxes on and ultimately spent distributions of reported income from the Account, and the Trustee is therefore estopped from seeking to reverse any such transactions or from otherwise trying to undermine the value reflected in the Account at the time Madoff was arrested;

    f. The calculation of "net equity" fails to treat all BLMIS customers equally, including in the following respects:

        i. It fails to take into account the time-value of funds deposited by customers;

        ii. It targets customers who, for reasons of need or otherwise, withdrew funds for personal use; and

        iii. It fails to base its calculations on a reversal of every distribution made to every customer of BLMIS from the beginning of the fraud, and instead only targets some customers, such as Rynne;

    g. The calculation of "net equity" fails to take into account that it was reported to customers of BLMIS that at year end, all trading positions had been liquidated, and any reported "profit" for the year on which taxes were paid was based upon a supposed cash-on-cash "profit" at year end; and

    h. Because the business records of BLMIS are inherently unreliable, the Trustee cannot know that funds withdrawn by Rynne were "taken from other customers and given to [Rynne]," as claimed.

#1438738 v2
109422-67219

7. In addition, SIPC insurance coverage is intended, in part, to protect a customer from fraud of a regulated entity, such as the fraud perpetrated by BLMIS. Indeed, the SIPC website states that it replaces "missing stocks and other securities where it is possible to do so." Rynne's statements issued by BLMIS showed specific securities positions in the Account which the Denial alleges were never purchased. Accordingly, Rynne is entitled to SIPC coverage based upon the positions shown in his Account at the time of Madoff's arrest, without reduction or set-off.

8. Rynne also reserves his right to supplement his objections and to adopt, where appropriate, the objections of other similarly situated account holders of BLMIS.

### D. **FAILURE TO SAFEGUARD PERSONAL INFORMATION**

9. It has been reported in the media that an agent of the Trustee, AlixPartners, may have failed to safeguard the personal and financial information of account holders such as Rynne. To the extent Rynne's personal and financial information has been compromised, Rynne reserves his right to assert such claims as are appropriate against the Trustee as a result thereof.

### CONCLUSION

10. By the Denial, the Trustee purports to unwind more than a decade of activity reported as having taken place in the account in an effort to cast a victim like Rynne as a beneficiary of misconduct. To do so, the Trustee knows full well that he will need to rely on fraudulent business records that cannot properly be authenticated and admitted into evidence. Therefore, Rynne objects to the Denial, and claims that he, like all other innocent customers of BLMIS, is entitled to have his loss calculated based on value reported as being in his account as of the day immediately preceding Madoff's arrest.

#1438738 v2
109422-67219

Dated: New York, New York
September 23, 2009

GIBBONS P.C.

By: _____
Jeffrey A. Mitchell
Jeffrey S. Berkowitz
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
(212) 613-2009
*Attorneys for Donald G. Rynne*

**TO:**

Clerk of the United States Bankruptcy Court
  Southern District of New York
One Bowling Green
New York, New York  10004

Irvin H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10004