SONNENSCHEIN NATH & ROSENTHAL LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
cneville@sonnenschein.com

*Attorneys for Barry Weisfeld*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Barry Weisfeld, hereby objects to the Notice of Trustee's Determination of Claim dated

August 28, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

**BACKGROUND**

1.    In or about May 1999, Mr. Weisfeld opened an account (Account No. 1-CM584-3-

4) with Bernard L. Madoff Investment Securities LLC ("Madoff").[1]  Mr. Weisfeld is a

"customer" of Madoff, as defined by the Securities Investor Protection Act ("SIPA").

2.    From the creation of the account, Mr. Weisfeld received regular communications

from Madoff, including monthly statements, trade confirmations, and quarterly portfolio

management reports.

---

[1]  All personal information relating to the Weisfeld Customer Account has been redacted for security reasons.

3.    Mr. Weisfeld's final Madoff Statement dated November 30, 2008 shows that he owns securities with a market value of $4,472,252.80 in account 1-CM583-3 (less positions in account 1-CM583-4) for a total of $4,407,652.80.  A copy of the final statement is annexed to his Customer Claim.

4.    On December 11, 2008, an action was commenced against Madoff by the Securities & Exchange Commission in the United States District Court for the Southern District of New York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA.  See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4].  Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. Id.; 15 U.S.C. 78fff-1(a).

5.    On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines.  See Order [Dkt. No. 12].

6.    The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, **and the reason therefor** . . . ." See Order at 6 (emphasis added) [Dkt. No. 12].

7.    On or about June 17, 2009, Mr. Weisfeld timely filed a claim for the Weisfeld Account for securities (the "Weisfeld Customer Claim") based on the November 30, 2008 statement from Madoff in the amount of $4,407,652.80 (the "Final Madoff Statement").  A copy of the Weisfeld Customer Claim with the Final Madoff Statement is attached as Exhibit B.

8.    On August 28, 2009, the Trustee sent Mr. Weisfeld the Determination Letter rejecting the claim for $4,407,652.80 and stating he was not entitled to a payment based on (a) the total in the Weisfeld Customer Account (b) less withdrawals, and (c) less any appreciation.

## GROUNDS FOR OBJECTION

### I.    THE DETERMINATION LETTER FAILS TO COMPLY WITH THE COURT'S ORDER

9.    The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12].  The Weisfeld Customer Claim was evidenced by the Final Madoff Statement showing a final balance of $4,407,652.80 and listing the securities purportedly purchased for the account, which reflects the "Debtor's books and records" and by which the Trustee is bound absent proof that the owner of the Weisfeld Customer Account did not have a "legitimate expectation" that the balance on the Final Madoff Statement, confirmations, credit advices and portfolio management report represented his property.

### II.    THE TRUSTEE DOES NOT SET FORTH THE LEGAL BASIS FOR DISALLOWING THE CLAIM IN FULL

10.    The Trustee failed to set forth a legal basis for the position he has taken for the calculation of the claim.  *See* Determination Letter.  The Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)    is insufficient to rebut the prima facie validity of the Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which

the objection is based.  *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n

objection to a claim should . . . meet the [pleading] standards of an answer; *In re Enron Corp.*,

No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

>        (d)    includes an exhibit which purportedly calculates the money deposited

less subsequent withdrawals, but is completely unsubstantiated and incorrect.

## III.    THE TRUSTEE HAS FAILED TO HONOR CUSTOMER EXPECTATIONS

11.   The Trustee has failed to fulfill the requirement that he honor the legitimate

expectations of a customer.

12.   The legislative history of SIPA makes clear that Congress' intent in enacting the

legislation was to protect the legitimate expectations of customers.  Congressman Robert

Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance

available to customers and expedite the process, commented on the purpose of the legislation as

follows:

> "Under present law, because securities belonging to customers
> may have been lost, improperly hypothecated, misappropriated,
> *never purchased* or even stolen, it is not always possible to
> provide to customers that which they expect to receive, that is,
> securities which they maintained in their brokerage account. . . .
> By seeking to make customer accounts whole and returning them
> to customers in the form they existed on the filing date, the
> amendments  .  .  .  would  satisfy  the  customers'  legitimate
> expectations . . . ."

S. Rep. No. 95-763, at 2 (1978) (*emphasis added*).

> A customer generally expects to receive *what he believes* is in his
> account at the time the stockbroker ceases business. But because
> securities may have been lost, improperly hypothecated,
> misappropriated, *never purchased*, or even stolen, it is not always
> possible to provide to customers that which they expect to
> receive, that is, securities which they maintained in their
> brokerage account. . . . By seeking to make customer accounts
> whole and returning them to customers in the form they existed

on the filing date, the amendments . . . would satisfy customers'
legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

13. The Securities Investor Protection Corporation ("SIPC"), charged with
administering SIPA, acknowledged that it was bound by the statute and the rules to satisfy the
reasonable expectations of customers even when the securities had never been purchased, in the
brief it submitted to the Court of Appeals for the Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date
> are controlling even where inconsistent with transaction reality.
> Thus, for example, where a claimant orders a securities purchase
> and receives a written confirmation statement reflecting that
> purchase , the claimant generally has a reasonable expectation that
> he or she holds the securities identified in the confirmation and
> therefore generally is entitled to recover those securities (within
> the limits of SIPA) even where the purchase never actually
> occurred and the debtor instead converted the cash deposited by
> the claimant to fund that purchase…[T]his emphasis on the
> reasonable and legitimate customer expectations frequently yields
> much greater customer protection than would be the case if the
> transaction reality, not the claimants expectations, were
> controlling, as this court's earlier opinion in this liquidation well
> illustrates.

Brief of the Appellant SIPC at 23-24.

14. Based on regular statements, confirmation reports and other communications
received from Madoff, Mr. Weisfeld at all times reasonably believed and expected that Madoff
executed such transactions and that the Weisfeld Customer Account actually held such
securities.

15. The Trustee's position in the Madoff case is completely inconsistent with the
purpose and goals of SIPA and the position that SIPC, has taken unequivocally with respect to
the treatment of customers in accordance with their reasonable expectations reflected in the
communications from the broker-dealer.

### IV.    THE TRUSTEE'S DEFINITION OF "NET EQUITY" IS INCONSISTENT WITH SIPA AND SIPA RULES, PRACTICE AND PRONOUNCEMENT AND CASE LAW INTERPRETING THE STATUS AND RULES

16.    The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the amount of the claim by appreciation in the Weisfeld Customer Account or calculate the claim by counting only investment principal less withdrawals without regard to the securities reflected in Mr. Weisfeld's statement.  No legal basis for the method exists.  The Trustee's calculation violates SIPA.

17.    15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee calculates "net equity" by reducing the principal contributed to the account less any withdrawals or appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior statement delivered by Madoff to the customer.   This is incorrect for the following reasons:

(a)    the Trustee's method of calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a customer's net equity claim as the value of the customer's "securities positions" in customer's account, less any amount the customer owes the debtor, as of the date of the filing of the SIPA liquidation:

> "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . .; minus
>
> (B) any indebtedness of such customer to the debtor on the filing date . . ."[2]

---

[2]  The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most often in the context of a customer having borrowed from the debtor on margin.  *See, e.g.*, H.R. Rep. No. 95-746 at 21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

   (b)  The Trustee's method is inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under SIPA by the Securities Investor Protection Corporation ('SIPC") provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer. 17 C.F.R. 300.500.  Pursuant to the Rule, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased or sold for the account.

   (c)  The Trustee's method is inconsistent with the legislative history of the statute.  SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The Madoff statements and confirmations sent to Mr. Weisfeld on his Account indicated that the Weisfeld Account owned a list of blue chip securities.  It makes no difference whether the securities were ever actually purchased.

   (d)  The Trustee's formula is an improper and wholly inadequate measure of loss.  Mr. Weisfeld deposited funds with Madoff in the expectation the amount would grow, the Weisfeld Customer Account statements showed such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain. In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007) the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages

---

available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker); *In re First Street Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D. Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock purchase was funded in part by borrowing on margin).

against a successor in a Ponzi scheme case and rejected the money in / money out formula as

not reflecting the expectations of the parties. *Id*. The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope – indeed a reasonable expectation – that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id*. This applies precisely to Mr. Weisfeld's claim.

    (e) The Trustee's Determination Letter is contrary to SIPC's own policies

and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and

CEO, and its actions in similar liquidation proceedings.  For example, in the *New Times* SIPA

liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if

broker-dealer customers have been led to believe that "real existing" securities had been

purchased for their accounts, then those customers are entitled to the full value of their

securities positions as of the filing date, even if that value represents a substantial increase

from the purported purchase price of the securities and even if the securities had never been

purchased.  Harbeck testified as follows:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted –
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C).

Moreover, SIPC faced very similar circumstances in the New Times Securities Services, Inc. ("New Times") liquidation and took a very different position than it is taking in the Madoff case in support of the Trustee. There, the New Times Trustee's position on "net equity" was in full accord with SIPA, and thus directly contrary to the Trustee's position in this case. Specifically, with respect to any claims that were based on confirmations and account statements reflecting securities positions in "real" securities that could have been purchased (i.e., securities that actually existed on the public market and whose valuations were objectively and publicly verifiable by the customers), the New Times Trustee allowed all such net equity claims to the full extent of the filing date valuations of those securities, even though none of the securities identified in those records had ever, in fact, been purchased by the broker-dealer. [3]

---

[3] As with Madoff Securities and Bernard Madoff, New Times Securities and its principal, William Goren, defrauded scores of investors by providing them with confirmations and account statements reflecting purported securities investments made on their behalf when, in fact, no such investments had been made and their money had, instead, been misappropriated for other purposes. Two of the investment opportunities Goren purported to offer were: (1) money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real

(f)    The Trustee's determination is inconsistent with the case law.  The

Second Circuit's discussion of SIPC's claims processing in *New Times,* the only case in this

jurisdiction dealing with the issue in the Madoff case, further indicates that, with respect to

customers who thought they were invested in listed securities, SIPC properly paid customer

claims based on the customers' final account statements, even where the securities had never

been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably. Although they were not actually invested in
> those real funds – because Goren never executed the transactions –
> the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed. As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up
> to $500,000 in SIPC advances. The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore,
> the Trustee notes that, if they were checking on their mutual
> funds, the "securities claimants," . . . could have confirmed the
> existence of those funds and tracked the funds' performance
> against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC

at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> "[R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality.  Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or she holds the securities identified in the confirmation

---

Securities"). *See In re New Times Sec. Services, Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*").  Goren's
was "a classic Ponzi scheme," *Id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were
purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased.  Consistent
with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to
the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities
positions as of the date of the liquidation filing.  When challenged by "Fictitious New Age Funds" customers who
had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent
concurrence of the SEC) vigorously defended their approach in court.

> and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase. . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates."

Mr. Weisfeld is in the same position as those investors in the *New Times* case who received confirmations and statements reflecting real securities.

　　　　　(g)　　The Trustee's position in the Madoff case is contradicted, not only by SIPC's prior treatment of customers in the *New Times* case, but also by a statement that SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang acknowledged that a Madoff customer is entitled to the securities in his account:

> Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each.  So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

　　　　　(h)　　The Trustee's methodology also conflicts with other federal laws.  For example,  Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually.  Yet the Trustee's position is that the income earned by customers on their investments is not their money.  In addition, some customers were required to take distribution from their retirement accounts.  Yet the Trustee is deducting from their customer claim the mandatory withdrawals that the customers were required by law to take.

11

18.   In sum, the Trustee has created his own definition of "net equity" that is not based on statutes prior practice, or case law.  The procedure is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying SIPC insurance to the thousands of Madoff investors who, like Mr. Weisfeld, have depended upon their Madoff investments for their current and future living expenses.

19.   Because of his refusal to comply with SIPA's mandate that he "promptly" satisfy customer claims based on their last statements (their "Statutory Balances"), 15 U.S.C. § 78fff-3(a) and 4(c), the Trustee employs a vast team of forensic accountants to pore through decades of records to determine each customer's net investment before SIPC pays any amount to a customer.  Clearly, this is inconsistent with the statutory scheme and the legislative intent.  Mr. Weisfeld's "securities position" are readily ascertainable from his Final Madoff Statement.

## V.    THE TRUSTEE HAS NO LEGAL BASIS FOR REDUCING THE CLAIM

20.   The Trustee's action in reducing the amount shown on the Weisfeld Customer Claim by any prior gains or withdrawals reflected on the Final Madoff Statement or prior statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. Any such disallowance is improper and unjustified, and the Determination Letter should be stricken on that ground alone. *See* Fed. R. Bankr. P. 7001(1); 7008.  The avoidance of those gains and withdrawals have been taken well beyond any limitations period for avoidance of a claim under either state or federal law.

## VI.    THE TRUSTEE'S REDUCTIONS ARE BARRED BY THE STATUE OF LIMITATIONS

21.   The Trustee's action in reducing the amount shown on the Weisfeld Customer Claim by gains or withdrawals from the account is an attempt to avoid such gains and withdrawals without alleging any grounds for avoidance or proving that such gains are

avoidable under the state law avoidance provisions or other theories of law.  The avoidance of those gains and withdrawals have been taken well beyond any limitations period for avoidance of a claim under either state or federal law.

## VII.    THE TRUSTEE'S DENIAL IS INCONSISTENT WITH SIPC

22.    SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities").  Mr. Weisfeld is entitled to an advance of $500,000 and a claim against customer property for the remainder.

## VIII.    MR. WEISFELD IS ENTITLED TO INTEREST ON HIS INVESTMENTS

23.    In the event that the Court should determine that customer claims should not be allowed in the amount of the Final Madoff Statement, then in the alternative, Mr. Weisfeld is entitled to recover interest or appreciation the investments based upon the following.

(a)    Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. See, e.g., N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Accordingly, the Weisfeld Customer Claim should be recalculated by adding interest to all funds deposited.

(b)    Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by BMIS

on the customer's deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist.

LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion

and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding

Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on

claims for unjust enrichment and conversion).

(c)    Mr. Weisfeld is entitled to interest on his investment under federal securities

laws. In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the

different measures of recovery of "actual damages" for fraud, primarily including rescission and

restitution. The *Randall* Court concluded that Congress intended to deter wrongdoers, and

hence, that wide latitude in choosing the measure of damages was warranted. *See id.* at 664

(citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31

L.Ed.2d 741 (1972)). The Randall Court continued by holding that:

> This deterrent purpose is ill-served by a too rigid insistence on
> limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp*., 744 F.2d 935, 940 (2d Cir. 1984)).

## RESERVATION OF RIGHTS

24.    Mr. Weisfeld reserves the right to revise, supplement, or amend this Objection, and

any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr.

Weisfeld's right to object on any additional grounds.

25.    Mr. Weisfeld reserves all rights set forth in Rule 9014, including, without

limitation, rights of discovery. See Fed. R. Bankr. P. 9014.

26.    Mr. Weisfeld reserves all objections as to the competence, relevance, materiality,

privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other

action for any purpose whatsoever.

27.   Mr. Weisfeld incorporates by reference all reservations of rights set forth in the Weisfeld Customer Claim.

### RELIEF REQUESTED

For the reasons stated herein, the Weisfeld Customer Claim should be allowed in its entirety in the amount of $4,407,652.80, which is the amount stated on his Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, the Court should direct SIPC to immediately replace $500,000 of the securities in the Weisfeld Customer Account based upon the values reflected on his November 30, 2008 account statement.

For the reasons stated herein, the Determination Letter should be stricken.

Mr. Weisfeld requests such other relief as may be just and equitable.

Dated: September 25, 2009                     SONNENSCHEIN NATH & ROSENTHAL LLP


                                              By:    /s/ Carole Neville
                                                  Carole Neville
                                                  1221 Avenue of the Americas
                                                  New York, New York 10020
                                                  Telephone:  (212) 768-6700
                                                  Facsimile:  (212) 768-6800

                                              *Attorneys for Barry Weisfeld*

## <u>CERTIFICATE OF SERVICE</u>

I, Carole Neville, hereby certify that on September 25, 2009 I caused a true and correct copy of the foregoing **Objection to Trustee's Determination of Claim** on behalf of Barry Weisfeld to be filed electronically with the Court and served upon the parties in this action who receive electronic service through CM/ECF, and served by hand upon:

> David J. Sheehan, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY 10111

Dated: September 25, 2009

 /s/ Carole Neville
Carole Neville

# EXHIBIT A

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

August 28, 2009

Barry Weisfeld

Scarsdale, New York  10583

Dear Mr. Weisfeld:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM584 designated as Claim Number 009817:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $8,000,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $5,178,317.25). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($2,821,682.75) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after August 28, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10011

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:    Carole Neville
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
25th Floor
New York, New York  10020

| - Table 1 - | | |
|---|---|---|
| **DEPOSITS** | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 5/6/1999 | CHECK WIRE | $2,500,000.00 |
| 4/3/2000 | CHECK WIRE | $1,600,000.00 |
| 8/14/2000 | CHECK WIRE | $1,078,317.25 |
| **Total Deposits:** | | $5,178,317.25 |
| | | |
| **WITHDRAWALS** | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 7/13/2005 | CHECK WIRE | ($3,000,000.00) |
| 5/19/2006 | CHECK WIRE | ($1,250,000.00) |
| 9/5/2006 | CHECK WIRE | ($1,250,000.00) |
| 5/23/2007 | CHECK WIRE | ($2,500,000.00) |
| **Total Withdrawals:** | | ($8,000,000.00) |
| | | |
| **Total deposits less withdrawals:** | | ($2,821,682.75) |

# EXHIBIT B

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

RECEIVED

JUN 1 7 2009

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:  (212) 768-6889 _____

HOME: _____

Taxpayer I.D. Number (Social Security No.)
_____

Account Number:  1-CM584-3 & 1-CM584-4

Barry Weisfeld
~~█████████~~
Scarsdale, NY 10583

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.   A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT.   PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

......................................................................................

1.       Claim for money balances as of **December 11, 2008_**:
         a.    The Broker owes me a Credit (Cr.) Balance of        $_____
         b.    I owe the Broker a Debit (Dr.) Balance of           $ _____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                        $_____

d.    If balance is zero, insert "None."              _____NONE_____

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number **of** Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| **SEE STATEMENT DATED NOVEMBER 30, 2008** | | ✓ | |
| | | | |
| | | | |
| | | | |
| | | | |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

10291403

9.    Have you or any member of your family
ever filed a claim under the Securities
Investor Protection Act of 1970? if
so, give name of that broker.                                   ✓

Please list the full name and address of anyone assisting you in the
preparation of this claim form: Carole Neville, Sonnenschein Nath &
Rosenthal LLP, 1221 Avenue of the Americas, 25th Floor, New York, NY 10020 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.


**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**


**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.** *

Date _____6/17/09_____    Signature _Barry Weisfeld___

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)


**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

────────────────

\* This form includes and incorporates in full the attached Addendum.  Customer
reserves the right to amend the claim for any purpose, including without
limitation, to add interest, costs and other losses associated with this account.

10291403

# ADDENDUM

**Customer:**    **Barry Weisfeld**

**Address:**    ▬▬▬▬▬▬▬
                **Scarsdale, NY 10583**

**Account #:**    **1-CM584-3**
                  **1-CM584-4**


November 30, 2008 Statement – Closing balance net equity $4,407,652.80

10291406

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020-7493-6222

BARRY WEISFELD
[redacted] NY 10583

YOUR ACCOUNT NUMBER: 1-CM584-3-0
PERIOD ENDING: 11/30/09
PAGE: 1

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 263,897.88 |
| 11/12 | 2,470 | | 2539 | WAL-MART STORES INC | 55.830 | 137,998.10 | |
| 11/12 | 1,615 | | 3041 | INTERNATIONAL BUSINESS MACHS | 87.270 | 141,005.05 | |
| 11/12 | 5,985 | | 6865 | EXXON MOBIL CORP | 72.880 | 436,425.80 | |
| 11/12 | 6,555 | | 7367 | INTEL CORP | 14.510 | 95,375.30 | |
| 11/12 | 3,135 | | 11693 | JOHNSON & JOHNSON | 59.580 | 186,908.30 | |
| 11/12 | 4,275 | | 16019 | COCA COLA CO | 38.530 | 164,886.75 | |
| 11/12 | 2,280 | | 20344 | J.P. MORGAN CHASE & CO | 44.360 | 101,915.80 | |
| 11/12 | 1,330 | | 24670 | MCDONALDS CORP | 55.360 | 73,695.10 | |
| 11/12 | 2,470 | | 28996 | MERCK & CO | 28.550 | 70,616.50 | |
| 11/12 | 9,025 | | 33322 | MICROSOFT CORP | 21.810 | 197,196.25 | |
| 11/12 | 4,560 | | 37648 | ORACLE CORPORATION | 17.300 | 79,070.00 | |
| 11/12 | 1,605 | | 50626 | PEPSICO INC | 56.610 | 101,892.05 | |
| 11/12 | 1,605 | | 51128 | APPLE INC | 100.780 | 105,356.10 | |
| 11/12 | 7,605 | | 54952 | PFIZER INC | 16.940 | 130,660.30 | |
| 11/12 | 1,805 | | 54952 | ABBOTT LABORATORIES | 54.610 | 98,643.05 | |
| 11/12 | 3,605 | | 55454 | PROCTER & GAMBLE CO | 64.080 | 219,289.60 | |
| 11/12 | 2,375 | | 59280 | AMGEN INC | 59.160 | 73,111.60 | |
| 11/12 | 5,700 | | 63604 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 103,645.00 | |
| 11/12 | 1,900 | | 64106 | BANK OF AMERICA | 21.590 | 123,291.00 | |
| 11/12 | 6,175 | | 67930 | QUALCOMM INC | 33.770 | 64,239.00 | |
| 11/12 | 1,425 | | 68432 | CITI GROUP INC | 12.510 | 71,496.25 | |
| 11/12 | 3,420 | | 72256 | SCHLUMBERGER LTD | 49.480 | 70,566.00 | |
| 11/12 | | | 72758 | COMCAST CORP CL A | 16.510 | 56,600.20 | |
| | | | | CONTINUED ON PAGE 2 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BARKY WEISFELD

SCARSDALE                    NY    10583

YOUR ACCOUNT NUMBER: 1-CM584-3-0
PERIOD ENDING: 11/30/08
PAGE: 2

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 6,745 | | 76582 | AT&T INC | 27 | 182,384.00 | |
| 11/12 | 1,710 | | 77004 | CONOCOPHILLIPS | 52.510 | 89,860.10 | |
| 11/12 | 1,140 | | 80908 | UNITED PARCEL SVC INC | 52.040 | 59,370.60 | |
| | | | | CLASS B | | | |
| 11/12 | 6,935 | | 81410 | CISCO SYSTEMS INC | 16.730 | 116,299.55 | |
| 11/12 | 1,995 | | 85234 | U S BANCORP | 29.530 | 58,991.85 | |
| 11/12 | 2,375 | | 85736 | CHEVRON CORP | 73.430 | 174,491.25 | |
| 11/12 | 1,140 | | 89560 | UNITED TECHNOLOGIES CORP | 53.160 | 60,647.40 | |
| 11/12 | 12,065 | | 90062 | GENERAL ELECTRIC CO | 19.630 | 237,317.95 | |
| 11/12 | 3,630 | | 93886 | VERIZON COMMUNICATIONS | 30.410 | 98,353.30 | |
| 11/12 | 285 | | 94388 | GOOGLE | 337,400 | 96,170.00 | |
| 11/12 | 3,990 | | 98212 | WELLS FARGO & CO NEW | 29.800 | 119,061.00 | |
| 11/12 | 2,850 | | 98714 | HEWLETT PACKARD CO | 34.900 | 99,579.00 | |
| | | 4,250,000 | 20825 | U S TREASURY BILL | 99.936 | | 4,247,280.00 |
| | | | | DUE 2/12/2009 | | | |
| | | | | 2/12/2009 | | | |
| 11/12 | | | | FIDELITY SPARTAN | DIV | | 87.92 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/12/08 | | | |
| 11/12 | | 76,202 | 15923 | FIDELITY SPARTAN | 1 | | 76,202.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/12 | 1,971 | | 25292 | FIDELITY SPARTAN | 1 | 1,971.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/19 | | | | FIDELITY SPARTAN | DIV | | .24 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/19/08 | | | |

CONTINUED ON PAGE 3

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
[MADF] New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-1061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

YOUR ACCOUNT NUMBER  1-CM584-3-0

PERIOD ENDING  11/30/08

PAGE  3

BARRY WEISFELD

SCARSDALE    NY    10583

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | NEW BALANCE | | | |
| 11/19 | | 1,971 | 50558 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 1,971.00 |
| 11/19 | 275,000 | | 55191 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 274,796.50 | |
| 11/19 | 11,795 | | 59597 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 11,795.00 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 6,745 | | | AT&T INC | 28.560 | | |
| | 1,805 | | | ABBOTT LABORATORIES | 52.330 | | |
| | 1,235 | | | AMGEN INC | 55.540 | | |
| | 1,045 | | | APPLE INC | 92.670 | | |
| | 5,700 | | | BANK OF AMERICA | 16.250 | | |
| | 2,375 | | | CHEVRON CORP | 79.010 | | |
| | 6,935 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 6,175 | | | CITI GROUP INC | 8.290 | | |
| | 2,280 | | | COCA COLA CO | 46.870 | | |
| | 3,420 | | | COMCAST CORP | 17.340 | | |
| | | | | CL A | | | |
| | 1,710 | | | CONOCOPHILLPS | 52.520 | | |
| | 5,985 | | | EXXON MOBIL CORP | 80.350 | | |
| | 12,065 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

CONTINUED ON PAGE 4

529,327.57

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020-7493-6222

BARRY WEISFELD

SCARSDALE            NY    10583

**YOUR ACCOUNT NUMBER** 1-CM584-3-0

**PERIOD ENDING** 11/30/08

**PAGE** 4

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | 2,650 | 285 | | GOOGLE | 292.960 | | |
| | 6,555 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 1,615 | | | INTEL CORP | 13.800 | | |
| | 4,275 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 3,135 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,330 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 2,470 | | | MCDONALDS CORP | 58.750 | | |
| | 9,025 | | | MERCK & CO | 26.720 | | |
| | 4,560 | | | MICROSOFT CORP | 20.220 | | |
| | 1,805 | | | ORACLE CORPORATION | 16.090 | | |
| | 7,695 | | | PEPSICO INC | 56.700 | | |
| | 2,375 | | | PFIZER INC | 16.430 | | |
| | 3,420 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 1,900 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 1,425 | | | QUALCOMM INC | 33.570 | | |
| | 1,795 | | | SCHLUMBERGER LTD | 50.740 | | |
| | | | | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | | |
| | 1,995 | | | U S BANCORP | 26.980 | | |
| | 1,140 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 275,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 1,140 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE   5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
PLMIS INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BARRY WEISFELD

■■■■■
SCARSDALE                        NY    10583

YOUR ACCOUNT NUMBER  1-CM584-3-0

PERIOD ENDING  11/30/08

PAGE  5

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | 3,230 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 2,470 | | | WAL-MART STORES INC | 55.880 | | |
| | 3,990 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG    4,472,252.80 | | | |
| | | | | SHORT | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020-7493-6222

BARRY WEISFELD

SCARSDALE

NUE          NY   10583

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 29,716.20 |
| | | | | GROSS PROCEEDS FROM SALES | | | 24,778,490.99 |

YOUR ACCOUNT NUMBER  1-CM584-3-0

PERIOD ENDING  11/30/08

PAGE  6

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
☐ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BARRY WEISFELD

SCARSDALE    NY    10583

YOUR ACCOUNT NUMBER: 1-CM586-4-0

PERIOD ENDING: 11/30/08    PAGE: 1

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----|-----|-----|-------------|-----------------|----------|----------|
| 11/12 | | | 41974 | BALANCE FORWARD S & P 100 INDEX NOVEMBER 480 CALL | 15.800 | | 263,898.00 |
| 11/12 | | 95 | 46300 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | | 150,905.00 |
| 11/19 | | 95 | 32605 | S & P 100 INDEX DECEMBER 450 CALL | | 169,195.00 | |
| 11/19 | 95 | | 36730 | S & P 100 INDEX DECEMBER 420 PUT | | 285,095.00 | 246,905.00 |
| 11/19 | 195 | | | S & P 100 INDEX NOVEMBER 480 CALL | 30 | | |
| 11/19 | | 95 | 45380 | S & P 100 INDEX NOVEMBER 450 PUT NEW BALANCE | 37 | | 351,405.00 |
| | | | | SECURITY POSITIONS DECEMBER 450 CALL DECEMBER 420 PUT | 16.500 | | 529,528.00 |
| | | | | MARKET VALUE OF SECURITIES LONG | | 164,160.00 | |
| | | | | SHORT | | 221,560.00 | |