DAVID I. LUSTIG
P.O. Box 532
Pescadero, CA 94060
Tel: (415)492-2041
Fax: (415)492-2108

*Claimant in pro persona*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION CORPORATION,

   Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC.,

   Defendant.

) Bankruptcy Case. No. 08-01789 (BRL)
)
) SIPA LIQUIDATION

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

David Lustig, Trustee of the Lustig Family 1990 Trust, hereby objects to the Notice of Trustee's Determination of Claim dated August 28, 2009, ("Determination Letter"), attached as Exhibit A, as described herein.

RECEIVED SEP 25 2009 U.S. BANKRUPTCY COURT, SDNY

- 1 -

Objection to Trustee's Determination of Claim

## BACKGROUND

1. David I. Lustig, trustee of the Lustig Family 1990 Trust dated 1/31/90 (hereinafter "David Lustig or "Lustig") is a "customer," as defined by the Securities Investor Protection Act ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2. Mr. Lustig's final BMIS statement, dated November 30, 2008, states that he owns securities valued at $5,788,202 ("Final BMIS Statement").

3. On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. Id.; 15 U.S.C. 78fff-1(a).

4. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. See Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5. The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor* . . ." See Order at 6 (emphasis added) [Dkt. No. 12]

6. On or about June 30, 2009, Mr. Lustig submitted a customer claim form to SIPC, setting forth his claim in the amount of $5,788,202, the amount set forth on Mr. Lustig's Final BMIS Statement. See Lustig Family 1990 Trust Customer Claim for Acct. No. 1-ZB263-3.

-2-

Objection to Trustee's Determination of Claim

("Lustig Trust Customer Claim").

7.  On August 28, 2009, the BMIS Trustee sent Mr. Lustig the Determination Letter disallowing Mr. Lustig's claim in its entirety. See Determination Letter (Exhibit A).

8.  Mr. Lustig hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

9.  First Objection. The Trustee has set forth no legal basis for disallowing the Lustig Trust Customer Claim in full as filed. The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) the "claim is allowed for . . . the amount of money you deposited with BLMIS for the purchase of securities as outlined in Table 1." Determination Letter at 1 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)  does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, see Order [Dkt. No. 12];

(b)  is inadequate to rebut the prima facie validity of the Lustig Trust Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)  violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. See, e.g., Collier on Bankruptcy 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); In re Enron Corp., No. 01-16034, 2003 Bankr. LEXIS 2261, at * (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

-3-

Objection to Trustee's Determination of Claim

10. **Second Objection.** 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Lustig Trust Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. See Determination Letter Table 1. This is incorrect for the following reasons:

(a) The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
> (B) any indebtedness of such customer to the debtor on the filing date;
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b) SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by Mr. Lustig stated that he owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

- 4 -

Objection to Trustee's Determination of Claim

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Mr. Lustig's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

(c)    The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the New Times SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted - -
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000). The Second Circuit's discussion of SIPC's claims processing in New Times further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even

- 5 -
Objection to Trustee's Determination of Claim

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions - - the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004). Mr. Lustig is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, his claim should be recognized in full.

11. In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Mr. Lustig is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. See *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Mr. Lustig.

(b) Under New York law, which is applicable here, customers are entitled to

-6-

Objection to Trustee's Determination of Claim

any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Mr. Lustig's deposits. See, e.g., Steinberg v. Sherman, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as ... conversion and unjust enrichment qualify for the recovery of prejudgment interest."); Eighteen Holding Corp. v. Drizin, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

12.    Third Objection. The BMIS Trustee's action in reducing the amount shown on Lustig Trust Customer Claim by any prior gains reflected on his final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination letter should be stricken. See Fed. R. Bankr. P. 7001(1); 7008.

13.    Fourth Objection. The Trustee sets forth in the Determination Letter a list of deposits and withdrawals from the BMIS account held by Mr. Lustug. There are more than one withdrawals acknowledged by the Trustee to be transfers from one BMIS account to at least one other BMIS account. In addition, Mr. Lustig did in fact withdraw $5,000,000 on July 24, 2007 (the "July 07 Withdrawal") (see page 3 of Exhibit A) for the purpose of investing, and which was immediately invested, with a third party feeder fund, which in turn invested said sum in Tremont Capital and HSBC Luxemburg/Senator. All of the July 07 Withdrawal was deposited indirectly into one or more BMIS accounts. Mr. Lustig is entitled to a credit for the July 07 Withdrawal in addition to the acknowledged transfers into another BMIS account, resulting in a positive balance of more than $500,000. Mr. Lustig is entitled to receive immediate payment of $500,000, plus interest from the date of the determination and appropriate equitable relief as determined by the Court.

Objection to Trustee's Determination of Claim

## RELIEF REQUESTED

14. For the reasons stated herein, the Lustig Trust Customer Claim should be allowed in its entirety.

15. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Lustig in the amount of $500,000, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

16. The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. See Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Mr. Lustig will file a response.

17. Mr. Lustig requests such other relief as may be just and equitable.

## CONCLUSION

18. Mr. Lustig reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Lustig's right to object on any additional grounds.

19. Mr. Lustig reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. See Fed. R. Bankr. P. 9014.

20. Mr. Lustig reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other

action for any purpose whatsoever.

21.  Mr. Lustig incorporates by reference all reservations of rights set forth in the Lustig Trust Customer Claim.

Dated: September 23, 2009

_____
DAVID I. LUSTIG

*Trustee of the Lustig Family 1990 Trust*

-9-

Objection to Trustee's Determination of Claim

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>Plaintiff,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC.,<br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION |

**Proof of Service**

_France Winddance Twine_, hereby certifies that on the 24th day of September, 2009, he/she mailed a copy of the **OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM** and Proof of Service by placing same in a Federal Express envelope and depositing it in the Federal Express box for collection and delivery on that date following ordinary business practice. A copy of the affidavit of deposit is attached herewith. The envelope was addressed to:

Irving H. Picard, Trustee
c/o Baker Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_France Winddance Twine_

Name:

Address:

Phone Number: