# COSNER & COSNER

*Counsellors at Law*

**197 STATE HIGHWAY 18, SUITE 308
EAST BRUNSWICK, NEW JERSEY 08816**

(732) 937-8000
FAX (732) 937-5439
EMAIL: **COSNER@COSNERLAW.COM**
**WWW.COSNERLAW.COM**

ALAN G. COSNER
STACI A. COSNER *
RUSSELL L. FRANK**
———
BENJAMIN J. GINTER
* ADMITTED N.J. & N.Y.
** ADMITTED N.J. & AZ.

NEW YORK OFFICE
58 THOMAS STREET
NEW YORK, NY 10013
(212) 913-0635
REPLY TO EAST BRUNSWICK

October 14, 2009

**<u>Via Overnight Delivery</u>**

Irving H. Picard, Trustee
c/o Baker & Hostetler
45 Rockefeller Plaza
New York, New York 10011



Clerk of the United States Bankruptcy Court for
The Southern District of New York
One Bowling Green
New York, New York 10004

Re:    September 21, 2009 Notice of Trustee's Claim Determination for Joel B. Sand-
berg and Iris B. Sandberg

Dear Mr. Picard:

This firm represents Joel B. Sandberg and Iris B. Sandberg (the "Sandbergs") in connection with the above-referenced claim determination (the "Determination"). (A copy of the Determination is annexed hereto as Exhibit A for your convenience.) For the reasons set forth below, the Sandbergs respectfully object to the Determination.

First, the Trustee did not credit the Sandbergs with the full amount of a $97,500 deposit that was made on August 30, 2007 (the "August 30 Deposit"), apparently disallowing approximately $97,743 of that deposit. (See Exh. A, Table 1.) The Trustee's reasons for doing so are not set forth in the Determination and therefore are unclear.

The August 30 Deposit was a transfer from a Madoff BMIS account owned by Helen Browner (Iris Sandberg's mother) to the Madoff account belonging to Joel and Iris Sandberg. The transfer represented a payment by Ms. Browner to Iris and Joel Sandberg under a personal services contract that was prepared by an elder care attorney in Florida in connection with a legal restructuring of Helen Browner's husband's finances in anticipation of his potential need to apply for Medicaid benefits.[1]   (A copy of that contract is annexed hereto as Exhibit B.)

---

[1]    This firm did not represent, and has not provided any legal advice to, the Sandbergs concerning their personal services contract with Mr. and Mrs. Browner.

Documents substantiating the August 30 Deposit to the Sandberg's account previously were submitted with their claim. Copies of those documents are annexed hereto as Exhibit C.

The Sandbergs did not have beneficial ownership of Ms. Browner's Madoff account (account #1ZA28830). The Joel B. Sandberg and Iris B. Sandberg Revocable Trust similarly did not have beneficial ownership of that account. To the best of the Sandberg's knowledge, Mrs. Browner did not file a SIPC claim, as the August 30 transfer closed out her account.

Simply put, the August 30 Deposit was made to the Sandberg's account in accordance with a legal contract. It represented new monies – over which they did not previously have any ownership interest – that were transferred to them pursuant to a lawful contract.

Second, the Sandbergs join in all of the objections that previously have been raised concerning the Trustee's determination of each customer's "Net Equity." We respectfully request that this objection be determined in accordance with the procedures set forth in the Trustee's September 18, 2009 notice to customers regarding the "Net Equity" issue.

Accordingly, for the foregoing reasons, the Sandbergs object to the Determination and request that their Claim be allowed in an amount reflecting both (i) the August 30 Deposit; and (ii) the ultimate ruling on the "Net Equity" issue.

We are available to discuss the foregoing at your convenience.

Very truly yours,

Marc D. Youngelson

Enclosures

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on October __, 2009.

Joel Sandberg

Documents substantiating the August 30 Deposit to the Sandberg's account previously were submitted with their claim. Copies of those documents are annexed hereto as Exhibit C.

The Sandbergs did not have beneficial ownership of Ms. Browner's Madoff account (account #1ZA28830). The Joel B. Sandberg and Iris B. Sandberg Revocable Trust similarly did not have beneficial ownership of that account. To the best of the Sandberg's knowledge, Mrs. Browner did not file a SIPC claim, as the August 30 transfer closed out her account.

Simply put, the August 30 Deposit was made to the Sandberg's account in accordance with a legal contract. It represented new monies – over which they did not previously have any ownership interest – that were transferred to them pursuant to a lawful contract.

Second, the Sandbergs join in all of the objections that previously have been raised concerning the Trustee's determination of each customer's "Net Equity." We respectfully request that this objection be determined in accordance with the procedures set forth in the Trustee's September 18, 2009 notice to customers regarding the "Net Equity" issue.

Accordingly, for the foregoing reasons, the Sandbergs object to the Determination and request that their Claim be allowed in an amount reflecting both (i) the August 30 Deposit; and (ii) the ultimate ruling on the "Net Equity" issue.

We are available to discuss the foregoing at your convenience.

Very truly yours,

Marc D. Youngelson

Enclosures

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on October \3 , 2009.

Joel Sandberg

**EXHIBIT A**



## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]


### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

September 21, 2009

Joel B. Sandberg and Iris B. Sandberg
Trustees of the Joel B. Sandberg and Iris B. Sandberg Revocable Trust
9247 Caserta Street
Lake Worth, FL 33467

Dear Mr. and Mrs. Sandberg:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZA162 designated as Claim Number 001195:

Your claim for a credit balance of $2,251,414.42 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $93,257.49, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals (see Table 1 attached hereto).

Your **ALLOWED CLAIM** of $93,257.49 will be satisfied in the following manner:

The enclosed **ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. In addition, you must also submit a copy of the IRS Form W-9 for

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

the Joel B. Sandberg and Iris B. Sandberg Revocable Trust with your returned **ASSIGNMENT AND RELEASE.** Upon receipt of the executed and notarized **ASSIGNMENT AND RELEASE,** as well the copy of the IRS Form W-9 for the Joel B. Sandberg and Iris B. Sandberg Revocable Trust, the Trustee will fully satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $93,257.49, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after September 21, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:    Alan Cosner
Cosner & Cosner, Counsellors at Law
197 State Highway 18, Suite 308
East Brunswick, NJ 08816

095879, 000001, 300029811.1

3

## Table 1

### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 12/4/1992 | CHECK | $237,000.00 | $237,000.00 |
| 6/9/1993 | CHECK | $10,000.00 | $10,000.00 |
| 9/24/1993 | CHECK | $50,000.00 | $50,000.00 |
| 7/22/1997 | CHECK | $30,000.00 | $30,000.00 |
| 3/12/1999 | CHECK | $100,000.00 | $100,000.00 |
| 1/25/2002 | CHECK | $75,000.00 | $75,000.00 |
| 7/17/2003 | CHECK | $300,000.00 | $300,000.00 |
| 8/30/2007 | TRANS FROM 1ZA28830 | $97,500.00 | $3,757.49 |
| Total Deposits: | | $899,500.00 | $805,757.49 |

### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 7/1/1994 | CHECK | ($7,500.00) | ($7,500.00) |
| 10/3/1994 | CHECK | ($7,500.00) | ($7,500.00) |
| 1/3/1995 | CHECK | ($7,500.00) | ($7,500.00) |
| 4/3/1995 | CHECK | ($7,500.00) | ($7,500.00) |
| 7/3/1995 | CHECK | ($7,500.00) | ($7,500.00) |
| 10/2/1995 | CHECK | ($7,500.00) | ($7,500.00) |
| 1/2/1996 | CHECK | ($7,500.00) | ($7,500.00) |
| 4/1/1996 | CHECK | ($7,500.00) | ($7,500.00) |
| 7/1/1996 | CHECK | ($7,500.00) | ($7,500.00) |
| 10/1/1996 | CHECK | ($7,500.00) | ($7,500.00) |
| 1/2/1997 | CHECK | ($7,500.00) | ($7,500.00) |
| 4/1/1997 | CHECK | ($7,500.00) | ($7,500.00) |
| 7/1/1997 | CHECK | ($7,500.00) | ($7,500.00) |
| 10/1/1997 | CHECK | ($7,500.00) | ($7,500.00) |
| 1/2/1998 | CHECK | ($7,500.00) | ($7,500.00) |
| 7/3/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/2/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/2/2001 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/2/2001 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/2/2001 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/1/2001 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/2/2002 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/1/2002 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/1/2002 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/2/2003 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/1/2003 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/1/2003 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/1/2003 | CHECK | ($15,000.00) | ($15,000.00) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that the Joel B. Sandberg and Iris B. Sandberg Revocable Trust, located at 9247 Caserta Street, Lake Worth, FL, 33467 (hereinafter referred to as the "Assignor") in consideration of the payment of $93,257.49 to satisfy its claim for customer protection (the "Customer Claim", having been designated Claim #001195) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for itself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZA162, the "BLMIS Account"), which gave rise to the allowed Customer Claim for

| 4/1/2004 | CHECK | ($15,000.00) | ($15,000.00) |
|---|---|---|---|
| 7/1/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 10/1/2004 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/3/2005 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/1/2005 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/1/2005 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/3/2005 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/3/2006 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/3/2006 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/3/2006 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/2/2006 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/2/2007 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| **Total Withdrawals:** | | ($712,500.00) | ($712,500.00) |
| | | | |
| **Total deposits less withdrawals:** | | $187,000.00 | $93,257.49 |

securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $93,257.49 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated September 21, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may

2

have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

This Assignment and Release may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

The undersigned acknowledges that he or she is authorized to execute this Assignment and Release on behalf of the Joel B. Sandberg and Iris B. Sandberg Revocable Trust.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
       JOEL B. SANDBERG


By:_____
       IRIS B. SANDBERG


Sworn and subscribed before me this
_____ day of _____, 2009.


_____
     Notary Public

4

**EXHIBIT B**

# PERSONAL SERVICE CONTRACT

THIS AGREEMENT, made this 19th day of July, 2007, between MORRIS BROWNER (hereinafter referred to as "Parent") and IRIS SANDBERG and JOEL SANDBERG (hereinafter referred to as "Children").

1.  <u>Services to be Provided</u>: The Parent contracts to receive and the Children agree to provide the following personal support and maintenance services over the lifetime of the Parent on an "as-needed" basis:

   a.  <u>Monitor Health Care</u>: The Children shall monitor the health status, emotional and physical condition of the Parent.

   b.  <u>Secure Health Care</u>: The Children shall attempt to secure qualified health care professionals, including doctors, nurses, nurse's aides, therapists, etcetera, to aid in diagnosis, treatment, palliation, cure and remedy of the health, physical and emotional status of Parent as may be deemed necessary due to illness, discomfiture or mental health as is found to exist from time to time.

   c.  <u>Personal Needs</u>: The Children will periodically assess the personal needs and desires of the Parent as to social, physical, entertainment, hobby, personal hygiene, beauty maintenance and other personal factors and shall seek to provide the services of others, equipment, apparatus, supplies, goods and wares so these needs and desires are met.

   d.  <u>Visitation</u>: The Children will periodically visit with the Parent, wherever the Parent shall be, to provide the services required of the Children herein, to provide social interaction and entertainment and, further will seek visitations of family and friends of the Parent with the Parent.

   e.  <u>Financial Management</u>: The Children will assist the Parent in investments, bill-paying, and daily money management to the extent funds of the Parent are available therefor and to the extent the Children may have access to such funds to accomplish such services.

   f.  <u>Deal with Others</u>: The Children shall act as the spokesperson of Parent and/or shall aid any other agent of the Parent in dealing with health care providers and others, assuring the Parent freedom of communication and decision-making as is appropriate under the circumstances.

g.  <u>Resident's Rights</u>: The Children shall oversee the safeguard of resident rights and benefits of the Parent while the Parent may reside in a hospital, assisted living facility or skilled nursing facility. The Children shall continue to assist in the Medicaid application process and any annual reviews.

h.  <u>The Personal Wishes of Parent</u>: The Children will attempt to obey and satisfy all of the personal desires of Parent if feasible, practical and responsible (in the sole judgment of the Children), including, but not limited to (a) bringing special foods, snacks and treats to the Parent; (b) receive and read mail to for and to the Parent; (c) correspond for the Parent with the family and friends of the Parent.

2.  <u>Term</u>: The term of the contract will be for the life of the Parent. The life expectancy of Parent is currently 2.74 years. The Children and the Parent acknowledge that geriatric care managers and professional guardians provide services that are same as or similar to those detailed in the personal service contract. Geriatric care managers charge anywhere from $45.00 to $125.00 per hour for their services in South Florida. Guardians for incapacitated elders are awarded by the courts, $35.00 to $55.00 per hour for their work. The Children are non-professional caregivers and therefore agree to perform the services for $25.00 per hour, well below the rates charged by other providers of similar services. The Children intend to expend 30 hours per week while the Parent is living, based upon the desires and requirements of the Parent and what is reasonable under the circumstances. It is recognized that some weeks the Children will work less hours and some weeks will work more hours. However, it is anticipated that the Children will work an average of 30 hours per week.

3.  <u>Payment</u>: The Parent and the Children agree that the Children will be compensated at the reduced rate of $25.00 per hour 30 hours per week for 2.5 years; which is $750.00 per week, $39,000.00 per year, or an aggregate total of $97,500.00.

4.  <u>Method of Payment</u>: Full amount due and payable shall be paid on demand of the Children from the Parent or the Parent's agent. Any funds not paid at the time of the demand shall be made upon the Parent receiving additional funds and the Children's subsequent demand to complete the payment on the terms of this contract.

5.  <u>Costs</u>: Any costs incurred in the care of the Parent, whether provided under this contract or through any other expenses, shall solely be those of the Parent, and the Children assume no responsibility therefor.

6.  <u>Personal Nature</u>: Neither party to this Agreement may assign, transfer, convey, hypothecate or otherwise alienate any rights or benefits, damages, costs and/or expenses he or she is to obtain or could obtain under this Agreement to any third party. This Agreement is for services unique to both the Parent and the Children. Neither party shall have any obligation to act as to any third party.

2

7.    <u>Liability of Caregiver</u>:    It is the intent of the Parent that the Children shall assume no
liability for any damages incurred by the Parent and the Children cannot be held liable for
any negligence as a result of any damages that fall to the Parent.

8.    <u>Taxes</u>: Any and all taxes owed as a result of the sale of any capital gains assets shall be borne
by the Parent.


_Morris Browner_
MORRIS BROWNER


_Iris Sandberg_
IRIS SANDBERG

_Joel Sandberg_
JOEL SANDBERG


3

# LIFE EXPECTANCY TABLE

*Morris Brauner DCF* (handwritten)

| AGE | MALE LIFE EXPECTANCY | FEMALE LIFE EXPECTANCY | | AGE | MALE LIFE EXPECTANCY | FEMALE LIFE EXPECTANCY |
|---|---|---|---|---|---|---|
| 0 | 74.21 | 79.49 | | 60 | 19.81 | 23.11 |
| 1 | 73.78 | 78.99 | | 61 | 19.05 | 22.28 |
| 2 | 72.82 | 78.02 | | 62 | 18.31 | 21.47 |
| 3 | 71.85 | 77.05 | | 63 | 17.57 | 20.67 |
| 4 | 70.87 | 76.06 | | 64 | 16.85 | 19.88 |
| 5 | 69.88 | 75.07 | | 65 | 16.15 | 19.09 |
| 6 | 68.90 | 74.08 | | 66 | 15.45 | 18.32 |
| 7 | 67.91 | 73.10 | | 67 | 14.77 | 17.56 |
| 8 | 66.92 | 72.11 | | 68 | 14.10 | 16.82 |
| 9 | 65.93 | 71.11 | | 69 | 13.45 | 16.08 |
| 10 | 64.94 | 70.12 | | 70 | 12.81 | 15.36 |
| 11 | 63.95 | 69.13 | | 71 | 12.19 | 14.66 |
| 12 | 62.96 | 68.14 | | 72 | 11.59 | 13.96 |
| 13 | 61.97 | 67.15 | | 73 | 11.00 | 13.29 |
| 14 | 60.98 | 66.16 | | 74 | 10.42 | 12.62 |
| 15 | 60.01 | 65.18 | | 75 | 9.86 | 11.97 |
| 16 | 59.05 | 64.20 | | 76 | 9.32 | 11.33 |
| 17 | 58.10 | 63.22 | | 77 | 8.79 | 10.71 |
| 18 | 57.15 | 62.25 | | 78 | 8.29 | 10.10 |
| 19 | 56.22 | 61.27 | | 79 | 7.79 | 9.51 |
| 20 | 55.28 | 60.30 | | 80 | 7.31 | 8.94 |
| 21 | 54.35 | 59.33 | | 81 | 6.85 | 8.39 |
| 22 | 53.43 | 58.36 | | 82 | 6.41 | 7.86 |
| 23 | 52.50 | 57.38 | | 83 | 5.99 | 7.35 |
| 24 | 51.58 | 56.41 | | 84 | 5.58 | 6.86 |
| 25 | 50.65 | 55.44 | | 85 | 5.20 | 6.40 |
| 26 | 49.72 | 54.47 | | 86 | 4.85 | 5.96 |
| 27 | 48.79 | 53.49 | | 87 | 4.51 | 5.54 |
| 28 | 47.85 | 52.52 | | 88 | 4.20 | 5.14 |
| 29 | 46.91 | 51.55 | | 89 | 3.90 | 4.78 |
| 30 | 45.98 | 50.58 | | 90 | 3.63 | 4.43 |
| 31 | 45.04 | 49.61 | | 91 | 3.38 | 4.11 |
| 32 | 44.10 | 48.65 | | 92 | 3.15 | 3.82 |
| 33 | 43.17 | 47.68 | | 93 | 2.93 | 3.55 |
| 34 | 42.24 | 46.72 | | 94 | 2.74 | 3.30 |
| 35 | 41.31 | 45.76 | | 95 | 2.56 | 3.08 |
| 36 | 40.38 | 44.80 | | 96 | 2.41 | 2.88 |
| 37 | 39.45 | 43.85 | | 97 | 2.27 | 2.70 |
| 38 | 38.53 | 42.90 | | 98 | 2.15 | 2.54 |
| 39 | 37.62 | 41.95 | | 99 | 2.04 | 2.39 |
| 40 | 36.71 | 41.01 | | 100 | 1.93 | 2.25 |
| 41 | 35.80 | 40.07 | | 101 | 1.82 | 2.11 |
| 42 | 34.90 | 39.14 | | 102 | 1.72 | 1.98 |
| 43 | 34.00 | 38.21 | | 103 | 1.63 | 1.86 |
| 44 | 33.12 | 37.28 | | 104 | 1.53 | 1.74 |
| 45 | 32.23 | 36.36 | | 105 | 1.44 | 1.63 |
| 46 | 31.36 | 35.44 | | 106 | 1.36 | 1.52 |
| 47 | 30.49 | 34.52 | | 107 | 1.28 | 1.41 |
| 48 | 29.63 | 33.61 | | 108 | 1.20 | 1.31 |
| 49 | 28.77 | 32.71 | | 109 | 1.12 | 1.22 |
| 50 | 27.92 | 31.80 | | 110 | 1.05 | 1.13 |
| 51 | 27.07 | 30.90 | | 111 | 0.98 | 1.05 |
| 52 | 26.24 | 30.01 | | 112 | 0.92 | 0.97 |
| 53 | 25.40 | 29.12 | | 113 | 0.85 | 0.89 |
| 54 | 24.58 | 28.24 | | 114 | 0.79 | 0.82 |
| 55 | 23.76 | 27.36 | | 115 | 0.73 | 0.75 |
| 56 | 22.95 | 26.50 | | 116 | 0.68 | 0.68 |
| 57 | 22.15 | 25.64 | | 117 | 0.63 | 0.63 |
| 58 | 21.36 | 24.78 | | 118 | 0.57 | 0.57 |
| 59 | 20.58 | 23.94 | | 119 | 0.53 | 0.53 |

Social Security Period Life Table - June 27, 2006

**Appendix A-14**

(rec'd 3/21/07) (handwritten)

# Source Finders

## Care Options for the Elderly

Source Finders, Inc
14041 US Highway 1, Suite C
Juno Beach, FL 33408
561 626-1576 Fax: 561 626-8796
WebSite: http://www.source-finders.com
eMail: sourcefinders@source-finders.com

### FEE SCHEDULE
### Comprehensive Assessment and Evaluation
### $80.00 per hour

After the first call to us requesting assistance, one of our professional staff of Geriatric Care Managers will contact you to schedule an assessment at the client's place of residence. This visit includes a needs assessment of each person's physical, social, nutritional, financial, environmental, home safety and medication status. In addition to the current assessment, a long term care needs assessment may also be conducted. A report will then be forwarded to you with recommendations to assist you in considering the best options for present and future care management.

### Coordination of Services
### $80.00 per hour

Many of our clients need services over a long period of time and our Care Mangers provide that coordination with a frequency of visits that is individualized to meet each person's unique needs. With these visits, our Care Managers are often able to prevent a crisis from developing and maintain our clients in the setting of their choice by implementing services such as home care, transportation to appointments or day care. With this coordination we can assist our clients towards their optimal level of health.

### Medicaid Representation

Applying for Medicaid or other entitlements can often be a daunting task. With the assistance of a Care Manager however, finances are evaluated and eligibility determined quickly and conveniently. We explain the Medicaid rules and regulations, complete the application as well as securing or locating all necessary documents. In addition, we can represent the applicant at the Medicaid interview and follow-up until the case is approved. For clients needing nursing home services, we can assist in finding placement in an area of your choice.

### After-Hours Consultation
### $100.00 per hour

Often, family members may be working, or are from out of town and are only available evenings or weekends. We want to be responsive to your needs. Therefore, a Geriatric Care Manager can be there when you need us.

Source Finders is a private, fee for service agency not covered by insurance. All fees are payable monthly upon receipt of statement. Each case is evaluated separately and monthly fees are determined on the client's individual needs.



*Because Aging Poses So Many Challenges*

### CARE MANAGEMENT FEES

$110.00/hour

(Travel time is extra)

Services may include:

An assessment of concerns - emotional, social, medical, and functional.

Counseling - assist in coping with losses, changes, fears, family relationships.

Coordination of services including community services and medical care.

Assistance with placements should the need arise.

Acting as a liaison to out-of-town family who may need more information about the individual's health and well-being to give them peace of mind.

### CASES INVOLVING LEGAL WORK

Cost: $150.00/hour
(Travel time and expenses are extra)

Services may include:

- Researching care needs
- Care plan development and costs
- Mediation
- Expert testimony
- Depositions

*info-006 (rev.08/08/01)*

# *Rona Bartelstone Associates, Inc.*
### *Serving Older Adults, The Disabled and Their Families*

2699 Stirling Road, Suite C-304, Fort Lauderdale, FL 33312

**EXHIBIT C**

**BERNARD L. MADOFF**
[MADF] INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY
ACCOUNT WITH THE FOLLOWING:

CREDITED YOUR
TRANS FROM 1ZA28830

8/30/07

97,500.00

JOEL SANDBERG
AND IRIS B SANDBERG TRUSTEES
JOEL B SANDBERG AND IRIS B
SANDBERG JOINT REV TST 7/13/05

CLIENT'S ACCOUNT NUMBER

1-ZA162-3

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
doff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JOEL SANDBERG
AND IRIS B SANDBERG TRUSTEES
JOEL B SANDBERG AND IRIS B
SANDBERG JOINT REV 1ST 7/13/05

| YOUR ACCOUNT NUMBER | PERIOD ENDING | PAGE |
|---|---|---|
| 1-ZA162-3-0 | 8/31/07 | 1 |

YOUR TAX PAYER IDENTIFICATION NUMBER: **********6379

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 20,747.58 |
| 8/30 | 751,000 | | 70820 | TRANSFER FROM 1ZA28830 U S TREASURY BILL DUE 12/13/2007 | 1 | 744,138.25 | |
| 8/30 | 23,362 | | 70854 | FIDELITY SPARTAN U S TREASURY MONEY MARKET 12/13/2007 | 1 | 23,362.00 | |
| | | | | NEW BALANCE | | | 20,747.83 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 23,362 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 2,025,000 | | | U S TREASURY BILL DUE 12/13/2007 | 98.8551 | | 971,500.00 |
| | | | | 12/13/2007 | 98.833 | | |
| | | | | MARKET VALUE OF SECURITIES LONG | 2,040,806.25 | | |
| | | | | MARKET VALUE OF SECURITIES SHORT | | | |



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
...doff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JOEL SANDBERG
AND IRIS B SANDBERG TRUSTEES
JOEL B SANDBERG AND IRIS B
SANDBERG JOINT REV TST 7/13/05

YOUR ACCOUNT NUMBER    1-ZA162-3-0
PERIOD ENDING    8/31/07
PAGE    2
YOUR TAX IDENTIFICATION NUMBER    ********6379

YEAR-TO-DATE SUMMARY

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | DIVIDENDS | | | 152,941.92 |
| | | | | GROSS PROCEEDS FROM SALES | | | 10,407,146.36 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

JOEL SANDBERG
AND IRIS B SANDBERG TRUSTEES
JOEL B SANDBERG AND IRIS B
SANDBERG JOINT REV 1ST 7/13/05

YOUR ACCOUNT NUMBER: 1-ZA162-4-0

PERIOD ENDING: 8/31/07    PAGE: 1

YOUR TAX PAYER IDENTIFICATION NUMBER: ********6379

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------------------------|--------------------------|-----|-------------|------------------|-------------------------------|--------------------------------|
| | | | | BALANCE FORWARD | | | 20,748.00 |
| | | | | NEW BALANCE | | | 20,748.00 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES