Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Marc E. Hirschfield  
Email: mhirschfield@bakerlaw.com  
Seanna R. Brown  
Email: sbrown@bakerlaw.com  

Hearing Date:   February 2, 2010  
Hearing Time:  10:00 AM (EST)  
Objection Deadline: November 13, 2009  

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>            v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

**TRUSTEE'S MOTION FOR AN ORDER UPHOLDING TRUSTEE'S DETERMINATION DENYING CUSTOMER CLAIMS' FOR AMOUNTS LISTED ON LAST STATEMENT, AFFIRMING TRUSTEE'S DETERMINATION OF NET EQUITY, AND EXPUNGING THOSE OBJECTIONS WITH RESPECT TO THE DETERMINATIONS RELATING TO NET EQUITY**

Pursuant to this Court's order of September 16, 2009 scheduling adjudication of the "Net Equity" issue (the "Scheduling Order"), Irving H. Picard, trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Corporation Act, 15 U.S.C. § 78aaa et seq. ("SIPA"),[1] and for Bernard L. Madoff ("Madoff") ("collectively, "Debtor"), respectfully submits this motion ("Motion") for an order (a) upholding the Trustee's determinations of the Claims listed on Exhibit A to the extent such determinations relate to the Trustee's interpretation of "Net Equity" as such term is used at 15 U.S.C. § 78lll(11), (b) upholding the Trustee's denial of the Claims to the extent they are a claim for the amounts listed on the respective customer's November 30, 2008 BLMIS customer statement, (c) affirming the Trustee's interpretation of "Net Equity," and (d) expunging the objections to the Trustee's determinations listed on Exhibit A insofar as they object to the Trustee's interpretation of the term "Net Equity:"

In support of his Motion, the Trustee states and represents as follows:

**Factual Background:**

1.  On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York, captioned *United States v. Madoff*, No. 08-CV-2735 (the "Criminal Action").[2]

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

[2] On March 10, 2009, the Criminal Action was transferred to Judge Denny Chin in the United States District Court for the Southern District of New York and was assigned a new docket number, No. 09 CR 213 (DC).

2

2. Also on December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against Madoff and BLMIS (Case No. 08-CV-10791) (the "SEC Action").

3. On December 15, 2008, under section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under section 78eee(a)(3) of SIPA, SIPC filed an application in the district court alleging that BLMIS was not able to meet its obligations to securities customers as they came due and that its customers needed the protection afforded by SIPA as a result.

4. That same day, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part:

(a) Appointed Irving H. Picard as trustee for the liquidation of the business of BLMIS, pursuant to section 78eee(b)(3) of SIPA;

(b) Appointed Baker & Hostetler, LLP as counsel to the Trustee ("Counsel") pursuant to section 78eee(b)(3) of SIPA;

(c) Removed the case to this Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA; and

(d) Authorized the Trustee to take immediate possession of the property of the debtor, wherever located.

5. On December 23, 2008, this Court entered a claims procedure order that specifies the procedures for the filing, determination, and adjudication of customer claims in this

---

[3] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA, 15 U.S.C. § 78 *lll*(7)(B).

3

proceeding. The order provides that under section 78fff-2(a)(2) of SIPA, all claims against BLMIS must be filed with the Trustee. The order further provides that the Trustee will determine customer and creditor claims in writing and allows any claimant who opposes the Trustee's determination to file an objection with this Court, after which the Court will hear the matter.

6. As the Trustee appointed under SIPA, the Trustee has the job of recovering and distributing customer property to BLMIS's customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. Pursuant to section § 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA. Pursuant to section 78fff(b) of SIPA, Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case.

7. In accordance with his statutory responsibilities, the Trustee is in the process of marshalling BLMIS's assets, and the liquidation of BLMIS's assets for the benefit of the estate's customers and creditors is well underway. To date, the Trustee has recovered more than $1.2 billion in assets to date, although it is not expected that the total value of assets ultimately recovered will be sufficient to fully reimburse the customers of BLMIS for the many billions of dollars they invested with BLMIS over the years. In addition, the Trustee has determined more than 1,530 customer claims and has committed to pay over $484 million to BLMIS customers in funds advanced from SIPC in full or partial satisfaction of those claims, upon the return of the appropriate assignment and release.

### Trustee's Interpretation of Net Equity:

8.  The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that customers share pro rata in customer property to the extent of their "net equity," as defined in section 78*lll*(11) of SIPA ("Net Equity"), and to the extent that a customer's Net Equity exceeds his or her ratable share of customer property, SIPC shall advance funds to the SIPA trustee up to $500,000 for securities for that customer.

9.  The Trustee has determined each customer's Net Equity by crediting the amount of cash deposited by the customer into her BLMIS account, less any amounts withdrawn from her BLMIS customer account, otherwise known as the "cash in/cash out approach."

10. Certain claimants disagree with the Trustee as to the construction of the term Net Equity and how that term should be applied to determine the amount of the valid customer claim of each claimant.

11. Various claimants have asserted that Net Equity should be determined on the basis of each claimant's fictitious balance as shown on their fabricated November 30, 2008 account statement provided by BLMIS.

### Motion for Scheduling Order on Net Equity:

12. After certain claimants objected to the Trustee's interpretation of Net Equity, the Trustee, moved the Court for a briefing schedule and hearing on the matter.

5

13. On September 16, 2009, this Court entered the Scheduling Order setting forth dates for briefing and hearing on the Net Equity issue. In accordance with the Scheduling Order, the Trustee submits the herein Motion.

### Customer claims Determinations:

14. **Net Winners** – Under the parlance of this proceeding, a "net winner" is defined as a BLMIS customer that withdrew more funds from BLMIS than the customer deposited with BLMIS. Thus, the customer received payments constituting a full return of her principal investment, plus some amount of fictitious "profits" generated by BLMIS. Although she has already withdrawn all of her principal, along with some amount of fictitious profits (in reality, funds deposited by other customers), the "net winner" customer who objects to the Trustee's methodology is claiming that she is due the fictitious amount fabricated on her final fake November 30, 2008 BLMIS customer statement. The Trustee has to date received thirty one (31) timely filed objections (containing objections on the basis of Net Equity) from "net winners" (as defined above). Please see Exhibit A-1 for summaries of the "net winners" claims, determinations and objections.

15. **Net Losers (Over-the-Limit)** – Under the "cash in/cash out" approach, the customers that fall within the category of "over-the-limits net losers that have received full SIPC protection" are customers that withdrew less money from BLMIS than they deposited over time, and had net investment amounts in excess of $500,000. They are entitled to an allowed claim for the amount that they invested, less the amount that they have withdrawn from BLMIS. The difference between the amount invested and the withdrawn amount over time is the customer's Net Equity. The customer has received or will receive a *pro rata* share of any

6

customer property based upon her Net Equity, and will receive a check from the Trustee of $500,000 from funds advanced by SIPC against her share of customer property. Although the claims of these investors should be based on their Net Equity as measured by the net amount invested, these claimants assert that the amount of their Net Equity should be equal to the fictitious amounts represented on their final fake November 30, 2008 BLMIS customer statement. Some of these claimants also argue that their claim for this last reported fictitious amount should be satisfied in securities and not cash. The Trustee has to date received nine (9) objections (containing objections on the basis of Net Equity) from "net losers (over-the-limit)" (as defined above). Please see Exhibit A-2 for summaries of the "net losers (over-the-limit)" claims, determinations and objections.

16.     **Net Losers (Under-the-Limit)** – Like the previous category, customers that fall within this category also have allowable claims because they invested more over time than they withdrew from the fraudulent scheme. The net investment amount is less than $500,000, so their respective SIPC protection is limited to the amount of their respective net investment. They will not be entitled to a further distribution from the fund of customer property because their Net Equity claim will have been fully satisfied by the SIPC advance, and SIPC will receive the customers' share of customer property as subrogee. These customers' respective final fake November 30, 2008 BLMIS customer statements may, however, show a balance higher than $500,000. The Trustee has to date received thirty eight (38) objections (containing objections on the basis of Net Equity) from "net losers (under-the-limit)" (as defined above). Please see Exhibit A-3 for summaries of the "net losers (under-the-limit)" claims, determinations and objections.

**Relief Requested:**

17. Pursuant to the Scheduling Order and for the reasons more fully developed in the memorandum of law submitted in support of this Motion, the Trustee respectfully requests an order (a) upholding the Trustee's determinations of the Claims listed on Exhibit A to the extent such determinations relate to the Trustee's interpretation of "Net Equity" as such term is used at 15 U.S.C. § 78*lll*(11), (b) upholding the Trustee's denial of the Claims to the extent they are a claim for the amounts listed on the respective customer's November 30, 2008 BLMIS customer statement, (c) affirming the Trustee's interpretation of "Net Equity", and (d) expunging the objections to the Trustee's determinations listed on Exhibit A insofar as they object to the Trustee's interpretation of the term "Net Equity."

**NOTICE**

1. Notice of this Motion has been provided by U.S. mail, postage prepaid, email, or by ECF to (i) customers listed in Exhibit A (ii) all parties that have filed a notice of appearance in this case; (iii) the SEC; (iv) the Internal Revenue Service; and (v) the United States Attorney for the Southern District of New York; (collectively, the "Notice Parties"). The Trustee submits that no other or further notice need be given.

**WHEREFORE**, the Trustee respectfully requests that the Court issue an order granting the relief requested herein, and grant such other and further relief to the Trustee as the Court deems proper.

Dated: New York, New York
       October 16, 2009

**BAKER & HOSTETLER LLP**

By: /s/ *David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*