**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |

**DECLARATION OF BIK CHEEMA IN SUPPORT OF TRUSTEE'S MOTION FOR AN ORDER UPHOLDING TRUSTEE'S DETERMINATION DENYING "CUSTOMER" CLAIMS FOR AMOUNTS LISTED ON LAST CUSTOMER STATEMENT, AFFIRMING TRUSTEE'S DETERMINATION OF NET EQUITY, AND EXPUNGING THOSE OBJECTIONS WITH RESPECT TO THE DETERMINATIONS RELATING TO NET EQUITY**

I, Bik Cheema, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am an associate with Baker & Hostetler LLP ("BH"). I am member of the New York Bar Association and the Southern District of New York, and am in good standing.

2.  Baker & Hostetler LLP is counsel to Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"), and for Bernard L. Madoff ("Madoff").

3.  On or about June 22, 2008, I began reviewing objections to determinations of customer claims in this SIPA liquidation.

4.    I make this declaration based upon the information and knowledge acquired during the course of Baker & Hostetler LLP's engagement as counsel to the Trustee, as described herein.

**Claims, Determinations and Objections**

5.    During the course of my engagement in this matter, I have personally reviewed thousands of documents, including claims filed by customers, determination letters issued by the Trustee in response to these claims, and objections filed by customers in response to the Trustee's determination of their claims.

6.    As part of my review, I reviewed all objections received by the Trustee in response to his determination of all timely filed claims. Most of the objections I reviewed had more than one basis for objection, but for purposes of this motion, I have isolated the net equity[1] objections which were then categorized as follows:

*"Net Winners"* - Under the parlance of this proceeding, a "net winner" is defined as a BLMIS customer that withdrew more funds from BLMIS than the customer deposited with BLMIS.  Thus, the customer received payments constituting a full return of her principal investment, plus some amount of fictitious "profits" generated by BLMIS.  Although she has already withdrawn all of her principal, along with some amount of fictitious profits (in reality, funds deposited by other customers), the "net winner" customer who objects to the Trustee's

---

[1] The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that customers share pro rata in customer property to the extent of their "Net Equity," as defined in section 78*lll*(11) of SIPA, and to the extent that a customer's Net Equity exceeds his or her ratable share of customer property, SIPC shall advance funds to the SIPA trustee up to $500,000 for securities for that customer. The Trustee has determined each customer's Net Equity by crediting the amount of cash deposited by the customer into her BLMIS account, less any amounts withdrawn from her BLMIS customer account, otherwise known as the "cash in/cash out approach." Certain claimants disagree with the Trustee as to the construction of the term Net Equity and how that term should be applied to determine the amount of the valid customer claim of each claimant. Various claimants have asserted that Net Equity should be determined on the basis of each claimant's balance as shown on their November 30, 2008 account statement provided by BLMIS.

methodology is claiming that she is due the fictitious amount fabricated on her final fake

November 30, 2008 BLMIS customer statement.

*"Net Losers" (over-the-limit)* - Under the "cash in/cash out" approach, the customers that

fall within the category of "over-the-limits net losers that have received full SIPC protection" are

customers that withdrew less money from BLMIS than they deposited over time, and had net

investment amounts in excess of $500,000.  They are entitled to an allowed claim for the amount

that they invested, less the amount that they have withdrawn from BLMIS.  The difference

between the amount invested and the withdrawn amount over time is the customer's Net Equity.

The customer has received or will receive a *pro rata* share of any customer property based upon

her Net Equity, and will receive a check from the Trustee of $500,000 from funds advanced by

SIPC against her share of customer property.  Although the claims of these investors should be

based on their Net Equity as measured by the net amount invested, these claimants assert that the

amount of their Net Equity should be equal to the fictitious amounts represented on their final

fake November 30, 2008 BLMIS customer statement.  Some of these claimants also argue that

their claim for this last reported fictitious amount should be satisfied in securities and not cash.

*"Net Losers" (under-the-limit)* - Like the previous category, customers that fall within

this category also have allowable claims because they invested more over time than they

withdrew from the fraudulent scheme.  The net investment amount is less than $500,000, so their

respective SIPC protection is limited to the amount of their respective net investment.  They will

not be entitled to a further distribution from the fund of customer property because their Net

Equity claim will have been fully satisfied by the SIPC advance, and SIPC will receive the

3

customers' share of customer property as subrogee.  These customers' respective final fake

November 30, 2008 BLMIS customer statements may, however, show a balance higher than

$500,000.

In connection with the investigation, I drafted a document entitled "Description of Net Equity

Claimants," which serves as Exhibit A ("Exhibit A") to the Trustee's Motion for an order

upholding the Trustee's determination denying customer claims for amounts listed on last

statement, affirming Trustee's determination of net equity, and expunging those objections with

respect to the determinations relating to net equity.

**Basis of Personal Knowledge**

7.    Specifically, in order to populate Exhibit A, I reviewed claims filed by claimants

who objected on the basis of the Trustee's determination of net equity, reviewed the respective

determination letters issued by the Trustee, and reviewed the respective objections by claimants.

8.    In order to perform my review, I accessed and reviewed documents using PACER

in addition to files filed by customers with the Trustee pursuant to this Court's Claims

Procedures Order, determination letters issued by the Trustee, and objections to those

determinations by claimants, filed with the Court.

9.    The purpose of the review was to ascertain the number and details of each

objecting claimant on the basis of the Trustee's determination of net equity.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        October 16, 2009

**BAKER & HOSTETLER LLP**

By:/s/  *Bik Cheema*_____
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Bik Cheema
Email: bcheema@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*