Wendy L. Grabel
Trustee, The Grabel Family Trust

101 West 12th Street #18F
New York, New York 10011-8136
office telephone: (212) 337-9502
cell phone: (917) 846-5418
email: WLGrabel@aol.com
fax: (212) 645-0120

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                :
                                                     :
BERNARD L. MADOFF INVESTMENT         :     Case No. 08-1789 (BRL)
SECURITIES LLC, Debtor                         :     SIPA LIQUIDATION
                                                     :
-----------------------------------------------------------x

Clerk of the US Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

Irving H. Picard, Esq.
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
11th Floor
New York, NY 10111



October 25, 2009

**FORMAL OPPOSITION TO NOTICE OF TRUSTEE'S DETERMINATION OF SIPA CLAIM**

Bankruptcy Case No. 08-1789 (BRL)
Liquidation of Bernard L. Madoff Investment Securities ("BLMIS")
The Grabel Family Trust
BLMIS Account No. 1-ZB001-3-0
Claim Number 9815
Notice of Trustee's Determination of Claim Dated August 28, 2009

To the Clerk and Mr. Picard:

    I am writing as a trustee of the trust captioned above, the Grabel Family Trust. This letter constitutes a formal opposition to the Notice of Trustee's Determination of Claim dated August 28, 2009, concerning the Liquidation of Bernard L. Madoff Investment Securities ("BLMIS"), Claim Number 9815, concerning the Madoff account #001 captioned above (the "8/28/09 Notice.")[1]

    The Grabel Family Trust opposes the determination of its Securities Investor Protection Act ("SIPA") claim, as follows:

---

[1] On 9/24/2009, Mr. Kurt A. Leeper of Baker & Hostetler graciously extended our deadline to respond to the 8/28/09 Notice by 30 days, in a telephone conversation. Mr. Leeper was uncertain whether our initial due date was 9/27/09 (a Sunday) or 9/28/09, and so was uncertain of the precise extension date. He said that we would not "be dinged for missing the deadline by a day" He added, "you can quote me on that," and so we have.

Formal Opposition to Notice of Trustee's Determination of Claim
Bankruptcy Case No. 08-1789 (BRL); BLMIS; Claim No. 9815
October 25, 2009
Page 2

1) **Under certain limited conditions, the Grabel Family Trust does not object to the negative determination of its SIPA claim, but preserves its objections to the Trustee's claim calculations**

   (a) Conditional acknowledgment that net cash distributions were made from #001 account.

   The Grabel Family Trust conditionally acknowledges that the cash distributions made from the BLMIS account #001 exceeded cash deposits by an uncertain amount.

   This acknowledgment is conditioned upon the Grabel Family Trust's confirmation of the account's net cash distributions, through its examination of copies of the monthly account statements issued for BLMIS account #001, for all years from the account's inception through the close of March 2004, inclusive. We no longer retain copies of those records, and can only obtain them from the BLMIS Trustee. Without these account statements, we cannot reliably confirm the net cash transactions made with respect to account #001.

   We note that this record request is repeated and expanded, in Item 3. We also note that when we use the terms "net cash distributions" and "net cash transactions" throughout this entire letter, we do not characterize any book-keeping transfer as either a cash deposit or a cash distribution.

   (b) Conditional, limited acceptance of the denial of SIPA protection.

   If the preceding condition is satisfied, so that the Grabel Family Trust can confirm that net cash distributions were made with respect to account #001, then all of the following provisions of this Item 1 will apply.

   Based on the foregoing, if certain rulings of law ultimately apply to the BLMIS liquidation proceedings, the Grabel Family Trust does not object to the determination denying its SIPA claim made with respect to account #001, although it would continue to maintain its formal objection to those elements of the 8/28/09 Notice described in the paragraphs immediately following, as Items 2 - 3, inclusive, and it would also reserve all rights noted in the final subsection of this Item 1, subsection (d).

   Specifically, the Grabel Family Trust's limited acceptance of its SIPA claim denial would be premised on the satisfaction of the condition set out in Item 1(a); the BLMIS Trustee's continued use of his current definition of "net equity;" and an operative interpretation of SIPA that does not allow for collapsing three BLMIS accounts numbered 001, 257 and 404. These three accounts were held by Grabel family members and separate legal entities established by Grabel family members.

   (c) Alternative, limited opposition to the SIPA determination.

   A SIPA claim was filed for the Grabel Family Trust, designated as Claim # 9815, based on our understanding that SIPA would not permit two or more BLMIS accounts to be collapsed and treated as one, if they were held in different legal capacities. See SIPA §78fff-3(a)(2).

   To the extent that we are proven incorrect in our understanding, and that the operative interpretation of SIPA does permit the collapse of the three BLMIS accounts identified in this subsection 1(c); to the extent that the BLMIS Trustee is not obliged to change the definition of "net equity" under SIPA that he is currently using; and to the extent that the condition of Item 1(a) is satisfied, then the Grabel Family Trust would oppose the denial of our SIPA claim made with respect to account #001 on the very limited grounds set out immediately below, while preserving our formal objections raised in Items 2 -3, inclusive, and reserving the rights noted in the final subsection of this Item 1, subsection (d).

Formal Opposition to Notice of Trustee's Determination of Claim
Bankruptcy Case No. 08-1789 (BRL); BLMIS; Claim No. 9815
October 25, 2009
Page 3

We would maintain that BLMIS accounts #001 and #404 should together be treated as a "compound" single account, as the two BLMIS accounts were established and operated solely as complementary parts of a single estate-planning arrangement.

We would further maintain that BLMIS account #257 should be considered to be the same account as #404, due to the origins of those accounts.

Therefore, under the circumstances outlined immediately above in this subsection (c) of Item 1, we would maintain that only a single SIPA award should be made with respect to the "compound" single account consisting of the two collapsed accounts (BLMIS accounts #001 and #404/257)[2], and would object to the extent that the Grabel Family Trust account #001 was not acknowledged by the BLMIS Trustee as one recipient of that single award, and its records not reflected in the award's determination.

### (d) Bankruptcy Code & "net equity" issues.

The Grabel Family Trust assumes that the issue of collapsing separate BLMIS accounts under the Bankruptcy Code [Title 11 USC] is outside the scope of the SIPA claim determination of the 8/28/09 Notice and our formal objection to it. We reserve all rights to raise this issue in further BLMIS liquidation / bankruptcy proceedings.

Finally, the Grabel Family Trust reserves all rights with respect to the BLMIS liquidation issues concerning the definition of "net equity," under SIPA.[3]

## 2) The BLMIS Trustee has incorrectly characterized book-keeping transfers

The BLMIS Trustee has incorrectly characterized as cash withdrawals: (1) transfers between a current BLMIS customer and a former BLMIS customer and (2) transfers between two BLMIS accounts.[4]

The book-keeping transfers between two BLMIS accounts at issue are reflected in the 8/28/09 Notice as occurring on 6/14/1995 and 3/24/1999 (the "BLMIS Transfers.") 8/28/09 Notice, Table 1, p.3. Neither of the BLMIS Transfers reflects a cash distribution, neither diminished the liquidation estate, nor harmed any creditor. The BLMIS Trustee therefore erred in characterizing the BLMIS Transfers as cash withdrawals.

The Grabel Family Trust is making this formal objection so that it will not be collaterally estopped from subsequently challenging the BLMIS Trustee's accounting of book-keeping transfers, in further liquidation / bankruptcy proceedings.

## 3) The BLMIS Trustee has failed to give copies of original BLMIS monthly account statements for accounts #001 and #257; and failed to give an accounting for #257

The 8/28/09 Notice includes a record of deposits and withdrawals made with respect to account #001, which also reflects book-keeping transfers between #001 and account #1-ZB257-3-0. These book-keeping transfers involving account #257 are the basis of the BLMIS Trustee's calculation of "the amount of money [BLMIS account #001] received in excess of the deposits in [the] account." 8/28/09 Notice p. 2.

---

[2] This approach might alternatively be construed as collapsing three BLMIS accounts: 001, 257, and 404.
[3] The Grabel Family Trust objects to the definition of "net equity" being used by the BLMIS Trustee, but we understand that we do not need to formally oppose this definition, in order to preserve our rights to have our SIPA claim re-determined by the Trustee, in the event that a controlling court ruling changes this definition. See 8/28/09 Notice p. 4.
[4] Our use of the term "customer" reflects that used in *In Re Bernard L. Madoff Investment Securities LLC*, 2009 WL 2882718, footnotes 14, 15, Sept. 10, 2009 (Bkrtcy.S.D.N.Y.)

Formal Opposition to Notice of Trustee's Determination of Claim
Bankruptcy Case No. 08-1789 (BRL); BLMIS; Claim No. 9815
October 25, 2009
Page 4

    Yet the BLMIS Trustee has not disclosed its reckoning of account #257 to us. We are prevented from making a full examination of our SIPA claim determination for account #001, because we cannot fully view or confirm the BLMIS Trustee's accounting for accounts #257 or #001.

    In order for the Grabel Family Trust to have a reliable basis to determine the accuracy of its SIPA claim determination, we request:

(i) Copies of all monthly BLMIS account statements for account #001, from its inception until the close of March 2004, inclusive.
(ii) Copies of all monthly BLMIS account statements for account #257, from its inception until its last statement.
(iii) A Table reflecting the BLMIS Trustee's accounting of all cash deposits and cash withdrawals, and all book-keeping entries recorded as transfers in or out, for account #257, equivalent to the Table 1 of the 8/28/09 Notice.

    We note that our family no longer retains the monthly account statements we have requested, and that the holder of account #257 has affirmed our request for records in an enclosed letter. We formally object to the SIPA determination of the 8/28/09 Notice because of its failure to include these requested records.

Sincerely yours,

*/s/ Wendy L. Grabel*

Wendy L. Grabel
Trustee

Encls: Notice of Trustee's Determination of Claim, dated 8/28/2009
       Letter from Jack Grabel, holder of BLMIS account #257, dated 10/26/2009

```
                        Jack Grabel
                   101 West 12th Street
                      Apartment 10G
                  New York, New York 10011
```

Mr. Irving Picard
Baker & Hostetler
45 Rockefeller Plaza
New York, NY 10111

                                                  October 26, 2009

        Request for Documents for Madoff Account 1-ZB257-3-0

Dear Mr. Picard:

I am the account holder of the Bernard L. Madoff Investment Securities account numbered 1-ZB257-3-0. I have read a letter to you from my daughter, Wendy Grabel, that is an objection to your denial of the SIPC claim made for the Grabel Family Trust, Madoff account 1-ZB001-3-0. The SIPC claim number is 9815, and the Bankruptcy case number is 08-1789 (BRL).

The Grabel Family Trust objection requests (1) all monthly account statements ever issued and (2) a record of your accounting for my account number 257. I affirm and approve this request.

                                                  Yours truly,

                                                  *[signature]*

                                                  Jack Grabel

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

August 28, 2009

The Grabel Family Trust Dtd 3/29/99
Attn: Wendy L. Grabel, Trustee
101 West 12th Street, Apartment 18F
New York, New York 10011

Dear Ms. Grabel:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB001 designated as Claim Number 9815:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $4,785,414.18), as more fully set forth in Table 1, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $2,205,000.00). As noted, no

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($2,580,414.18) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

## Table 1 - DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 1/26/1993 | CHECK | $200,000.00 | $200,000.00 |
| 1/26/1993 | CHECK | $100,000.00 | $100,000.00 |
| 11/3/1993 | CHECK | $60,000.00 | $60,000.00 |
| 11/3/1993 | CHECK | $40,000.00 | $40,000.00 |
| 4/4/1994 | CHECK | $180,900.00 | $180,900.00 |
| 4/4/1994 | CHECK | $156,700.00 | $156,700.00 |
| 4/4/1994 | CHECK | $62,400.00 | $62,400.00 |
| 4/15/1994 | CHECK | $98,000.00 | $98,000.00 |
| 4/15/1994 | CHECK | $81,000.00 | $81,000.00 |
| 4/15/1994 | CHECK | $54,000.00 | $54,000.00 |
| 4/15/1994 | CHECK | $17,000.00 | $17,000.00 |
| 7/5/1994 | CHECK | $87,000.00 | $87,000.00 |
| 7/5/1994 | CHECK | $78,000.00 | $78,000.00 |
| 7/5/1994 | CHECK | $35,000.00 | $35,000.00 |
| 12/1/1994 | CHECK | $53,000.00 | $53,000.00 |
| 12/1/1994 | CHECK | $47,000.00 | $47,000.00 |
| 7/5/1995 | CHECK | $258,000.00 | $258,000.00 |
| 7/5/1995 | CHECK | $39,000.00 | $39,000.00 |
| 7/5/1995 | CHECK | $3,000.00 | $3,000.00 |
| 12/11/1995 | CHECK | $75,000.00 | $75,000.00 |
| 12/11/1995 | CHECK | $75,000.00 | $75,000.00 |
| 2/12/1996 | CHECK | $175,000.00 | $175,000.00 |
| 2/12/1996 | CHECK | $100,000.00 | $100,000.00 |
| 4/28/1998 | CHECK | $40,000.00 | $40,000.00 |
| 7/6/1998 | CHECK | $40,000.00 | $40,000.00 |
| 9/21/1998 | CHECK | $50,000.00 | $50,000.00 |
| **Total Deposits:** | | $2,205,000.00 | $2,205,000.00 |

| | WITHDRAWALS | | |
|---|---|---|---|
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 6/14/1995 | TRANS TO 1ZB25730 | ($500,000.00) | ($500,000.00) |
| 3/24/1999 | TRANS TO 1ZB25730 | ($1,788,861.43) | ($1,705,000.00) |
| 2/16/2000 | CHECK | ($200.00) | ($200.00) |
| 3/17/2000 | CHECK | ($360,761.00) | ($360,761.00) |
| 3/21/2001 | CHECK | ($360,779.00) | ($360,779.00) |
| 4/4/2002 | CHECK | ($360,779.00) | ($360,779.00) |
| 4/4/2003 | CHECK | ($360,779.00) | ($360,779.00) |
| 3/26/2004 | CHECK | ($364,779.00) | ($364,779.00) |
| 7/7/2004 | CHECK | ($49,987.98) | ($49,987.98) |
| 7/8/2004 | CHECK | ($1,297.25) | ($1,297.25) |
| 10/7/2004 | CHECK | ($42,198.15) | ($42,198.15) |
| 1/7/2005 | CHECK | ($31,551.27) | ($31,551.27) |
| 4/7/2005 | CHECK | ($33,272.53) | ($33,272.53) |
| 7/7/2005 | CHECK | ($34,374.93) | ($34,374.93) |
| 10/7/2005 | CHECK | ($31,260.26) | ($31,260.26) |
| 1/9/2006 | CHECK | ($50,747.34) | ($50,747.34) |
| 4/7/2006 | CHECK | ($39,264.35) | ($39,264.35) |
| 7/10/2006 | CHECK | ($43,513.39) | ($43,513.39) |
| 10/6/2006 | CHECK | ($75,769.03) | ($75,769.03) |
| 1/8/2007 | CHECK | ($41,162.00) | ($41,162.00) |
| 4/4/2007 | CHECK | ($35,636.80) | ($35,636.80) |
| 7/6/2007 | CHECK | ($46,924.80) | ($46,924.80) |
| 10/4/2007 | CHECK | ($48,511.92) | ($48,511.92) |
| 1/8/2008 | CHECK | ($38,082.10) | ($38,082.10) |
| 4/7/2008 | CHECK | ($19,079.01) | ($19,079.01) |
| 7/7/2008 | CHECK | ($86,066.55) | ($86,066.55) |
| 10/6/2008 | CHECK | ($23,637.52) | ($23,637.52) |
| Total Withdrawals: | | ($4,869,275.61) | ($4,785,414.18) |
| Total deposits less withdrawals: | | ($2,664,275.61) | ($2,580,414.18) |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available

principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after August 28, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC