Hearing Date: November 24, 2009
Hearing Time: 10:00 a.m.
Objection Deadline: November 19, 2009

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>             v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>             Debtor. | |

300035136

## TRUSTEE'S MOTION FOR A PROTECTIVE ORDER DENYING DISCOVERY SOUGHT BY LAWRENCE R. VELVEL

Irving H. Picard, Esq., as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"),[1] and Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, submits this Motion for a Protective Order Denying Discovery Sought by Lawrence R. Velvel, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, relevant herein pursuant to Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

The Trustee is seeking a protective order denying discovery of documents that are not relevant and are privileged, documents that are protected by, among other things, attorney-client privilege, the work product doctrine and the joint interest privilege, sought in connection with two exceptionally broad Requests for Production of Documents (the "Document Requests") made by Lawrence R. Velvel ("Velvel"). Copies of the Documents Requests are attached hereto as Exhibit A. Velvel continues to utilize inappropriate means to attempt to insert himself into the determination of the appropriate interpretation of a BLMIS customer's net equity. Velvel first sought leave to file an amicus brief in a related adversary proceeding, portraying himself as a disinterested party when in fact he is a "net winner" in the parlance of this case. The Trustee opposed this first motion and leave was denied by this Court. Velvel now seeks access to documents relating to the Trustee's and SIPC's motivations for establishing their view of the definition of "net equity." The requests made by Velvel first, have no bearing on whether the Trustee's interpretation of "net equity" is legally correct, second, relate to documents that are

subject to, among other things, attorney-client privilege, the work product doctrine and common interest privilege and third, are extremely broad, such that responding to the requests would impose a substantial and undue burden on the Trustee. These requests should be denied and this Court should enter a protective order to ensure that the Trustee, his counsel and SIPC are able to continue to work as efficiently as possible to address the fallout from Madoff's massive Ponzi scheme.

## FACTUAL BACKGROUND

### A.  Procedural History

On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York, captioned *United States v. Madoff*, No. 08 MAG 2735.[2]  Also on December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Bernard L. Madoff and BLMIS (together, the "Defendants") (Case No. 08-CV-10791) (the "SEC Action").

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection

---

[1] For convenience, subsequent references to SIPA shall omit "15 U.S.C."

[2] On March 10, 2009, the criminal case was transferred to Judge Denny Chin in the United States District Court for the Southern District of New York and was assigned a new docket number, No. 09 CR 213 (DC).

[3] Section 78*lll*(7)(B) of the Securities Investor Protection Act ("SIPA"), states that the filing date is "the date on which an application for a protective decree is filed under section 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

1. appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA;

2. appointed Baker & Hostetler LLP ("B&H") as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

3. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

On March 12, 2009, Madoff pled guilty to an 11-count criminal information. At the March 12th Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See United States v. Madoff*, No. 09 CR 213 (DC), Docket No. 57, Plea Hr'g Tr. at 23:14-17. In pleading guilty to the crimes he committed, Madoff admitted that, since at least the early 1990s, the investment advisory business of BLMIS was used to operate a Ponzi scheme. *See* Allocution of Bernard L. Madoff, *United States v. Madoff*, No. 09 CR 213 (DC), Docket No. 50, at p. 2. The criminal information to which Frank DiPascali Jr., one of Madoff's co-conspirators, pled guilty on August 11, 2009 (the "DiPascali Information"), stated that the Ponzi scheme commenced at least as early as the 1980s.[4] *See* DiPascali Information at p. 3. On June 29, 2009, Madoff was sentenced to imprisonment of 150 years for his crimes and was ordered to make restitution to his victims. On September 24, 2009, the District Court found that restitution was impracticable and ordered that "[t]he Government

---

[4] The Trustee is investigating whether the fraud at BLMIS extends back further than the 1980s.

300035136                                - 4 -

may proceed through the process of remission as authorized under the forfeiture statutes. 21 U.S.C. § 853(i); 28 C.F.R. Part 9." *United States v. Madoff* No. 09 CR 213 (DC), Docket Entry 106, Order dated September 24, 2009. A motion for reconsideration of this decision was denied on October 27, 2009.

### B. The Trustee and SIPA

As a trustee appointed under SIPA, the Trustee has the job of recovering and distributing customer property to BLMIS's customers, assessing claims and liquidating any other assets of the firm for the benefit of the estate and its creditors. Pursuant to section § 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA. The Trustee is authorized, with SIPC's approval to, *inter alia,* hire personnel necessary for the liquidation, utilize SIPC employees, and maintain customer accounts of the debtor. 15 U.S.C. § 78fff-1(a). The Trustee is required to provide written reports to the Court and to SIPC detailing the progress of the liquidation. 15 U.S.C. § 78fff-1(c).

Pursuant to section 78fff(b) of SIPA, Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case. Consistent with his duties, the Trustee is in the process of marshalling BLMIS's assets, and the liquidation of BLMIS's assets is well underway. The Trustee has recovered close to $1.4 billion dollars in assets to date.

### C. Velvel's Claim

Velvel filed a claim in the Debtors' liquidation on or about June 24, 2009. A copy of the claim is attached hereto as Exhibit B. In his claim, Velvel sought $3,903,236.86 in securities, which amount represented the net value of his securities positions as stated on the final account statement received by Velvel from BLMIS. On August 28, 2009, the Trustee sent Velvel a determination letter (the "Determination Letter") in which Velvel's customer claim was

denied on the basis that the amount withdrawn from his account exceeded the aggregate deposits by a sum of $341,012.09. A copy of the Determination Letter is attached hereto as Exhibit C.

The Determination Letter advises Velvel that, should he wish to file an opposition to the determination, he should do so within 30 days. The Determination Letter further provides that the opposition should set out the grounds for his disagreement with the determination. Velvel filed an objection to the Determination Letter with the Court on or about September 22, 2009 (the "Objection") [Dkt No. 456]. The Objection merely stated the Velvel believed that the Trustee's position on net equity was incorrect for reasons stated in briefs filed by others.

The first of the Document Requests was served on the Trustee on or about September 29, 2009. In that Document Request, Velvel seeks to obtain from, *inter alia*, the Trustee and all of his employees, personnel, representatives, agents, and hired organizations or persons, documents relating to "any reason or reasons for or against using or not using, or relating to the decision on whether to use or not use" various methods for calculating a BLMIS customer's net equity. *See* Ex. A.

Velvel also filed a " Notification to the Court of Request for Production of Documents" (the "Notification") with the Court on or about September 29, 2009 [Dkt No. 485]. The Notification states that the purpose of the first Document Request is to determine whether the Trustee and SIPC decided to use the cash-in/cash-out method of determining net equity to advance SIPC's economic position. Velvel argues, without providing any legal basis, that if a desire to save the economic position of SIPC motivated the decision to use a cash-in/cash-out

methodology, the methodology must be inappropriate (even if it is otherwise lawful to utilize a cash-in/cash-out approach).[5]

A second Document Request was served on the Trustee on October 28, 2009. In that Document Request, Velvel seeks to obtain from, *inter alia*, the Trustee and all of his employees, personnel, representatives, agents, and hired organizations or persons, documents relating to "any reason or reasons for or against satisfying the claims of Madoff investors by acquiring and providing to them the securities shown on their statements of November 30, 2008." *See* Ex. A.

Counsel for the Trustee has conferred with Velvel (*see* Affidavit of Marc Hirschfield, attached hereto as Exhibit D) and Velvel has agreed that the Trustee need not respond to the Document Requests until this motion has been decided by the Court.

### D.    The Net Equity Motion

On October 16, 2009, the Trustee filed with this Court and served a Motion for an Order Upholding Trustee's Determination Denying "Customer" Claims for Amounts Listed on Last Customer Statement, Affirming Trustee's Determination of Net Equity, and Expunging Those Objections with Respect to the Determinations Relating to Net Equity (the "Net Equity Motion") [Dkt No. 524]. The Trustee's Memorandum of Law filed in support of his Motion describes, in extensive detail, why the cash-in/cash-out methodology is the only legally supportable method for calculating customer claims [Dkt No. 525]. Pursuant to the Order Scheduling Adjudication of "Net Equity" Issue entered by this Court on September 16, 2009 (the "Scheduling Order"), Velvel has the right to file a brief in opposition to the Net Equity Motion. The opposition brief must be filed by November 13, 2009. Scheduling Order, p. 4 [Dkt. No. 437].

---

[5] It is unclear on what this theory is based given that no legal basis is provided and the provisions of SIPA that address the calculation of net equity refer neither to the Trustee nor SIPC. *See* SIPA § 78lll(11).

# ARGUMENT

### A.  The Discovery Sought is Outside the Scope of Civil Rule 26(b)

Rule 26(b) of the Federal Rules of Civil Procedure provides that a party may obtain discovery of material regarding any matter that is relevant to a party's claim or defense and is nonprivileged.  The Document Requests satisfy neither of those criteria.

1.  Privilege

The Trustee has a legally protectable interest in the documents sought from him by Velvel, which protections include the attorney-client privilege, the work product doctrine and the joint interest privilege.

a.  Attorney-Client Privilege

Certain of the documents that could fall within the broad category identified by Velvel were prepared by counsel to the Trustee for the Trustee.  In the first instance, these documents are protected by the attorney-client privilege. What constitutes attorney-client privilege is well-settled.  The attorney-client privilege protects confidential communications between a client and an attorney, made in order to obtain or deliver legal advice or services.  *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998); s*ee also Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002).  By shielding confidential communications from disclosure, the attorney-client privilege encourages "full and open consultation between attorneys and their client…." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

Many of the documents sought by Velvel are confidential communications prepared by the Trustee's counsel for the purpose of providing legal advice.  These documents reflect the analysis and advice of the Trustee's counsel regarding the appropriate manner of determining a customer's net equity and thus fall squarely within the protection provided by the attorney-client

privilege. To the extent the Trustee has in his possession any responsive documents that were not prepared by his counsel, those documents are also protected, as described below.

b. Work Product Doctrine

The documents that Velvel has requested are protected by the work-product doctrine. The work-product doctrine protects from discovery materials obtained or prepared in anticipation of litigation, including those prepared by financial consultants and counsel, as well as the attorney's thought processes, opinions, conclusions and legal theories. *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998); *Shelton v. American Motors Corporation*, 805 F.2d 1323, 1328 (8th Cir. 1986); *In re Commercial Fin. Servs.*, 247 B.R. 828, 846-47 (Bankr. N.D. Okla. 2000). The purpose of the work product doctrine is to protect the adversary process:

> A primary function of the work product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case.

*United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 560 (C.D. Cal. 2003) (internal citations omitted).

Rule 26(b)(3) of the Federal Rules of Civil Procedure establishes the parameters of the work product doctrine and sets forth the showing which must be made to overcome the protection afforded to materials falling within its scope. Generally, a party may discover documents prepared in anticipation of litigation or for trial by an attorney only if that party can demonstrate substantial need or undue hardship. Even if that showing is made, no disclosure may be had of the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). Not only can Velvel not overcome the hurdle of demonstrating substantial need or undue hardship, "mental

impressions, conclusions, opinions or legal theories" are exactly what are being sought by Velvel.

The Trustee is in the midst of litigating the "net equity" issue and has recently filed his memorandum of law setting out the basis for use of a "cash in – cash out" methodology in support of the Net Equity Motion. The basis for the Trustee's methodology is set out therein and is a purely legal, as opposed to factual, determination. The documents requested by Velvel are, on the face of the request, work product. Velvel has requested all documents that relate to the reasoning and the decision-making of the Trustee and his counsel on the net equity issue. There could be no clearer example of work product and as such, production of these documents is inappropriate.

      c.  Joint Interest Privilege

The fact that certain of the documents demanded by Velvel in the Document Request may have been shared between the Trustee and counsel for SIPC does not constitute a waiver of the privilege that attaches to those documents due to the commonality of interest between the Trustee and SIPC. Any information shared between the Trustee and SIPC would not, in the ordinary course, be made available to a third party.

The joint or common interest doctrine "serves to protect the confidentiality of communication passing from one party to the attorney for another party when a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989); s*ee also Cavallero v. United States,* 284 F.3d 236, 250 (1st Cir. 2002) (common interest doctrine operates as a shield to preclude waiver of attorney-client privilege when disclosure of confidential information is made to third-party who shares community of interest with the represented party). There is no question

that the rule extends to parties on the same side of an issue. The parties need not be "defendants." *See In re Grand Jury Supoenas 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990).

Courts have held that as long as parties "anticipate litigation against a common adversary," they have strong common interests in the "fruits of the trial preparation efforts." *Citizens Progressive Alliance v. United States Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1363. Here, the Trustee and SIPC do not just anticipate litigation against a common adversary but currently share a common interest with respect to the determination of the Net Equity Motion and the resolution of Velvel's Objection. This commonality is evident in the recommendation in support of the Net Equity Motion filed by SIPC on October 16, 2009. As such, it cannot be argued that there has been any waiver of privilege.

While the invocation of privilege often requires the production of a privilege log (*see, e.g., U.S. v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996)), courts have frequently entered protective orders relieving a party of the obligation of preparing a log when the document request in question is overbroad and seeks materials covered by privilege. *SEC v. Thrasher,* 1996 WL 125661 **1, 2 (S.D.N.Y. 1996) (holding that protective order was appropriate to relieve party of burden of producing privilege log in response to document request seeking the "wholesale production of documents that are ordinarily covered by the work-product rule, and … very probably by the attorney-client privilege"). In the instant case, given the fact that the broad Document Requests seek irrelevant and largely privileged material, it would be unduly burdensome to require the Trustee to review what could be thousands of documents that could potentially be responsive to the Documents Requests and prepare a privilege log.

2. <u>Relevance</u>

The Document Requests do not seek information that is relevant to either the resolution of Velvel's Objection or the Net Equity Motion. The reasoning utilized by SIPC and the Trustee in determining that the cash-in/cash-out approach is the appropriate manner in which to value customer claims, particularly whether the Trustee and SIPC were motivated by a desire to protect SIPC's economic interest, is completely irrelevant to the question of the legal correctness of the Trustee's interpretation of net equity. Similarly, reasons for or against purchasing securities for investors is not relevant to the question of the legal correctness of the Trustee's interpretation of net equity.

All discovery requests are limited by Rule 26(b)(2)(C), which requires a court to limit discovery if the material sought can be obtained form another source that is more convenient, less burdensome, or less expensive or if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

Courts have often enforced these limitations and barred discovery requests that seek information relating to a party's reason for taking a legal position, or for filing suit, because such reasoning typically has no bearing on the merits of the legal position or suit and is simply irrelevant. *Cresswell v. Prudential Bache Secs., Inc.*, 105 F.R.D. 64, 64-65 (S.D.N.Y. 1985) (information concerning reasons for plaintiff's decision to file suit not discoverable because not relevant); *Magida v. Continental Can Co.*, 12 F.R.D. 74, 78 (S.D.N.Y. 1951) (same); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 414-16 (M.D.N.C. 1992) ( plaintiff's motive for bringing securities fraud suit not relevant and not a matter for discovery). Accordingly, based on the plain language of Rule 26(b)(2)(C) and the relevant case law, the Document Requests are objectionable due to their complete lack of relevance, and any time and expense that the Trustee

would have to expend in responding thereto would be unduly burdensome with no benefit to Velvel.

### B. A Protective Order Should be Entered Pursuant to Civil Rule 26(c)

Rule 26(c) of the Rules of Civil Procedure provides that a party from whom discovery is sought may move for a protective order and a court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense forbidding the disclosure or discovery. Fed. R. Civ. Pro. 26(c)(1)(A). Based on the foregoing, the Trustee respectfully submits that there is good cause in the instant case for the entry of a protective order. Given the irrelevant and privileged information sought, responding to the Document Requests would result in undue burden and expense to the Trustee without a corresponding benefit to Velvel.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court grant the Trustee's motion for a protective order denying the discovery sought in the Document Requests and relieving the Trustee of any obligation to respond thereto.

Date:  New York, New York
       October 30, 2009

    *s/Marc E. Hirschfield*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*