SECURITIES INVESTOR PROTECTION            Hearing Date: Nov. 24, 2009
 CORPORATION                               Hearing Time: 10:00 a.m.
805 Fifteenth Street, N.W., Suite 800      Objection Deadline: Nov. 19, 2009
Washington, D.C. 20005-2207
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
Email: jwang@sipc.org
CHRISTOPHER H. LAROSA
Associate General Counsel
Email: clarosa@sipc.org

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION ) <br> CORPORATION, ) <br> ) <br> Plaintiff-Applicant, ) <br> ) <br> v. ) <br> ) <br> BERNARD L. MADOFF INVESTMENT ) <br> SECURITIES LLC, ) <br> ) <br> Defendant. ) <br> ) <br> IN RE: ) <br> ) <br> BERNARD L. MADOFF, ) <br> ) <br> Debtor. ) | Adv. Proc. No. 08-1789 (BRL) <br> SIPA Liquidation <br><br> (Substantively Consolidated) |

**MOTION FOR PROTECTIVE ORDER DENYING DISCOVERY SOUGHT BY
CLAIMANT LAWRENCE R. VELVEL THROUGH HIS
<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, as made applicable by Rule

9014 of the Federal Rules of Bankruptcy Procedure, the Securities Investor Protection Corporation

("SIPC") hereby moves for entry of a protective order denying the discovery sought by claimant Lawrence R. Velvel ("Velvel") through requests for protection of documents served by him upon SIPC and dated September 29, 2009 ("First Production Request") and October 28, 2009 ("Second Production Request"). Copies of the First and Second Production Requests are attached hereto as Exhibits A and B. The certification required by Civil Rule 26(c)(1) is attached hereto as Exhibit G. Counsel for SIPC has conferred with Velvel, who has indicated that SIPC need not respond to the First and Second Production Requests until after the Court rules on the instant motion.

As detailed below, through the First Production Request, Velvel seeks information regarding the "net equity" calculus used by Irving H. Picard ("Trustee"), trustee for the liquidation of Bernard L. Madoff Securities, Inc. ("BLMIS"), to determine his claim for "customer" relief in this liquidation, purportedly for the sole purpose of ascertaining the motivations of the Trustee and SIPC in arriving at their interpretation of "net equity." In a related effort, through the Second Production Request, Velvel seeks documents "relating to any reason or reasons for or against satisfying the claims of Madoff investors by acquiring and providing to them the securities shown on their (account) statements of November 30, 2008."

The reasons and motivations which Velvel seeks to explore - while reflecting the continuing good faith of both the Trustee and SIPC - have no bearing whatsoever on whether their interpretation of "net equity" is correct. The meaning of "net equity" is the sole issue raised by Velvel's objection and the Trustee's recently-filed motion to uphold his determination of Velvel's claim. (See DE 524, 525.) In fact, Velvel's Production Requests appear to be part of an effort to divert the Court's attention away from the substance of the Trustee's position and toward Velvel's erroneous and irrelevant allegations of improper motive. Moreover, Vevel's Production Requests are exceptionally

2

broad, and responding to them would impose on SIPC a substantial and undue burden and expense. Accordingly, SIPC requests that the Court enter an order denying the discovery sought by Velvel through the First and Second Production Request.

**I.     Background**

On or about June 24, 2009, the Trustee received a claim from Velvel in this liquidation proceeding seeking "customer" relief under the relevant provisions of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq. ("SIPA"). (See Ex. C.) Through that claim, Velvel sought $3,903,236.86 in securities, a figure representing the reported net value of the securities positions reflected in the final account statement received by Velvel from BLMIS. (See Ex. C.)

On August 28, 2009, the Trustee issued a determination ("Determination") denying Velvel's "customer" claim on the ground that the aggregate amount that Velvel withdrew from his account at BLMIS exceeded the amount of his aggregate deposits into that account by the sum of $341,012.09, and that Velvel therefore lacked any "net equity," the basis for "customer" relief under SIPA. (See Ex. D.) The Trustee explained as follows:

> Your claim for securities is **DENIED**. No securities were ever purchased for your account.
>
> Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS ($2,203,300.00)...is greater than the amount that was deposited with BLMIS for the purchase of securities ($1,8862,287.91). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.
>
> Since there were no profits to use either to purchase securities or to pay you any

> money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($341,012.09) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

(See Ex. D.) The Trustee attached to his Determination a table listing by date and amount all deposits and withdrawals made with respect to Velvel's account at BLMIS. (See Ex. D, Table 1.) In the Determination, the Trustee notified Velvel that any opposition to the Determination had to be filed within thirty days of the date of the Determination, and had to set out any grounds for disagreement with the Determination and enclose "copies of any documents in support of your position." (See Ex. D.)

On or about September 22, 2009, Velvel filed with this Court an objection ("Objection") to the Trustee's Determination. In his Objection, Velvel did not object to the Trustee's calculation of the net amount of his investment in his BLMIS account. Instead, Velvel's Objection consisted of a single, short paragraph in which he stated, without further elaboration, that "I believe the Trustee's position on net equity is erroneous," and added vaguely that "my reasons are those stated in briefs filed previously by objectors and amicus curiae." (See Ex. E; DE 456.) Velvel failed to identify with any specificity, or to attach, any of the briefs on which he purported to rely. (See Ex. E; DE 456.)

On or about September 29, 2009, Velvel served SIPC, among others, with the First Production Request, along with a document styled "Notification to the Court of Request for Production of Documents" ("Notification"). (See Ex. A; DE 485.) Through the Production Request, Velvel seeks the following documents:

> All documents relating to any reason or reasons for or against using or not using, or

4

relating to the decision on whether to use or not use, any of the following methods for determining an investor's net equity in the Madoff case:

1. The cash-in minus cash-out method;
2. The amount shown to an investor on his/her November 30, 2009 statement from Madoff;
3. The cash-in plus interest minus cash-out method;
4. Any other method.

(See Ex. A; DE 485.) On October 28, 2009, Velvel served his Second Production Request upon SIPC by electronic mail. (See Ex. B; DE 547.) As noted, through that request, Velvel seeks documents relating to the reasons, presumably of the Trustee and SIPC, "for or against" satisfying the claims of BLMIS investors by providing them with the securities shown on their final account statements. (See Ex B; DE 547.)

Nearly all of the documents that Velvel seeks are either protected from disclosure by privilege or other doctrine (e.g., documents reflecting SIPC's internal communications with or among its in-house counsel, communications between SIPC and the Trustee, etc.) or already available to Velvel in the public record (e.g., pleadings and memoranda filed in the BLMIS liquidation), and Velvel has made no attempt to limit the scope of his requests to exclude such documents. (See Ex. F, Wang Decl. ¶¶ 5, 6.) Moreover, Velvel's requests encompass thousands of pages of responsive documents, all of which would have to be reviewed for privilege prior to any production. (See Ex. F, Wang Decl. ¶ 4-7.) Accordingly, the creation of a privilege log with respect to those documents would be time-consuming, expensive, and extremely burdensome. (See Ex E., Wang Decl. ¶ 8.)

Velvel explains the reason for his conduct in the Notification, stating that he needs the requested documents in order to determine whether "SIPC and the Trustee...decided to use the cash-in/cash-out method to determine net equity in order to advance or save SIPC's economic position."

5

(See Ex. A, Notif. at 1; DE 485.) Although the definition of "net equity" in SIPA makes no reference to the intent of the Trustee or SIPC - and, in fact, reflects a simple and straightforward calculus independent of any such intent - Velvel announces confidently, and without any citation to authority of any kind, that the "net equity" calculus used by the Trustee to determine Velvel's claim is inapplicable "if a desire to aid or save the economic position of SIPC...played any role in the decision" to use that calculus. (See Ex. A, Notif. at 3; DE 485.) Even more remarkably, Velvel asserts that such an intent disqualifies the Trustee's calculus even if it is legally *correct*; in Velvel's phrase, if it "might otherwise be proper." (Id.)

On October 16, 2009, the Trustee filed a motion to uphold his determinations denying various claims (including Velvel's) which the Trustee determined using the "net equity" calculus to which Velvel objects. (See DE 524.) SIPC filed its recommendation in support of that motion on the same day. (See DE 519.) In their respective memoranda in support of the Trustee's motion, the Trustee and SIPC explain in extensive detail why the "net equity" calculus used by the Trustee is *required* by the language, purposes, and legislative history of SIPA, and by the case law interpreting the statute. (See DE 519, 525.)

**II. Applicable Law**

    **A.    "Net Equity" Under SIPA**

"Customer" status under SIPA confers priority over other creditors, and entitles "customers" to limited advances from SIPC where the fund of "customer property" administered by the SIPA trustee is insufficient to satisfy allowed "customer" claims. See SIPA §§ 78fff-2(b) and (c)(1), 78lll(4) and (11). To qualify for this preferred status, a claimant must demonstrate that he or she was a "customer" on the "filing date," and that he or she had a cognizable claim for "net equity" on

<mark>08-01789-cgm    Doc 555    Filed 10/30/09    Entered 10/30/09 16:46:06    Main Document
                                      Pg 7 of 11</mark>

that date.  See id.

"Net equity" is the measure of "customer" relief and is, as defined in SIPA, the total value of the cash and securities owed to the customer by the debtor on the filing date, less any indebtedness owed by the customer to the debtor on that date.[1]  See SIPA § 78*lll*(11).  See also, e.g., In re Adler, Coleman Clearing Corp., 218 B.R. 689, 695 (Bankr. S.D.N.Y. 1998).  Needless to say, no part of this simple formula makes any reference to the intent or motivation of SIPC or a SIPA trustee, or the reasons behind their views concerning the formula's meaning.  In fact, nothing in SIPA, the legislative history to the statute, or the case law interpreting it, suggests that a trustee's reasons for interpreting "net equity" in one way or another have any effect on the *correctness* of the trustee's interpretation.  On the contrary, the correctness of *any* interpretation of "net equity" is governed solely by whether that interpretation properly reflects the language and purposes of the statute, not the motivation of the party advancing it.  Either the interpretation is correct or it is not.  The reasons why the party advancing that interpretation elected to do so are irrelevant.

      **B.**      **Discovery Limitations**

---

[1]SIPA defines "net equity," in pertinent part, as:

[T]he dollar amount of the account or accounts of a customer, to be determined by–

(A)    calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B)    any indebtedness of such customer to the debtor on the filing date;...

See SIPA § 78*lll*(11).

<mark>7</mark>

Under Fed. R. Civ. P. 26(b)(1), discovery is limited to items that are both non-privileged and relevant to any party's claims or defenses. Relevant discovery requests include only those "reasonably calculated to lead to the discovery of admissible evidence." Id. Moreover, all discovery requests are subject to the limitations imposed by Rule 26(b)(2)(C), which authorizes a court to limit discovery if it determines, inter alia, that "the discovery sought...can be obtained from some other source that is more convenient, less burdensome, or less expensive," or "the burden or expense of the discovery outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(2)(C). To enable implementation of these rules, Civil Rule 26(c) authorizes a court to forbid or otherwise limit discovery for good cause shown in order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense..." Fed. R. Civ. P. 26(c)(2).

The courts in this circuit and elsewhere have regularly invoked these limitations to bar discovery requests seeking information regarding a party's reasons for taking a legal position, or filing suit, as those reasons typically have no bearing on the merits of the legal position or suit in question, and the requests are often made for harassment or other improper purposes. See, e.g., Cresswell v. Prudential Bache Secs., Inc., 105 F.R.D. 64, 64-65 (S.D.N.Y. 1985) (information concerning reasons for plaintiffs' decision to file securities suit not discoverable because not relevant); Magida v. Continental Can Co., 12 F.R.D. 74, 78 (S.D.N.Y. 1951) (same). See also, Mullins v. United States, 210 F.R.D. 629, 629-30 (E.D. Tenn. 2002) (entering protective order denying deposition of IRS appeals officer on ground that officer's motives and opinion not relevant to whether plaintiff owed tax at issue); Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 414-16 (M.D.N.C. 1992) (in ordinary securities fraud litigation, plaintiff's motive for bringing suit not relevant and not matter for discovery); Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.R.D.

128, 129-30 (N.D. Ill. 1953) (denying discovery because "[i]t is difficult to see how an inquiry into the circumstances of the instigation of the action could affect the substance of the claim...").

In the same vein, although the invocation of privilege ordinarily requires the production of a privilege log providing sufficient detail to permit a judgment as to whether a document is at least partly protected from disclosure (see, e.g., U.S. v. Constr. Prods. Research, 73 F.3d 464, 473 (2d Cir. 1996); Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 240 F.R.D. 44, 47 (D. Conn. 2007)), the courts have frequently entered protective orders to relieve a party of the burden of preparing such a log in response to an overbroad or otherwise unjustified request. See, e.g., SEC v. Thrasher, 1996 WL 125661 ** 1, 2 (S.D.N.Y. 1996) (entering protective order relieving party of burden of producing privilege log in response to document request seeking "wholesale production of documents that are ordinarily covered by the work-product rule, and, if the joint-defense privilege is applicable, very probably by the attorney-client privilege"). See also, Aikens v. Deluxe Fin. Servs., Inc., 217 B.R. 533, 537-40 (D. Kans. 2003) (limiting overbroad discovery requests and confining obligation to prepare privilege log to requests of limited scope).

### III. Argument

The Production Request does not seek any information relevant to the resolution of Velvel's objection to the Trustee's Determination, or to the Trustee's motion to uphold that Determination. As noted, the correctness of the Trustee's interpretation of "net equity" is the only issue raised by Velvel's objection and the Trustee's motion. Through the First Production Request, Velvel seeks only documents that he believes will shed light on the motivations of the Trustee and SIPC in interpreting "net equity," even though those motivations have absolutely no bearing on whether the Trustee's interpretation is correct. His Second Production Request is a variation on the same theme,

seeking documents regarding why the Trustee cannot deliver satisfy investor claims by delivering the securities shown on their final account statements - an indirect way of asking why the Trustee interprets SIPA to require to satisfaction of investors' "net equity" claims with cash in this context.

The entirety of each Production Request thus is objectionable on its face, and any time and expense incurred in responding to either request is unduly burdensome. See, e.g., Cresswell, 105 F.R.D. at 64-65; Magida, 12 F.R.D. at 78; Mullins, 210 F.R.D. at 629-30. In fact, given the obvious absence of any connection between the meaning of the term "net equity" and the Trustee's motives, Vevel's First and Second Production Requests appear to be designed solely to enable him to attempt to impugn those motives, and thereby to divert the attention of the Court from the only issue before it.

Moreover, the Production Requests are grossly overbroad, seeking principally production of documents that are easily accessible in the public record or a wholesale production of documents covered by various protections against disclosure. (See Ex. F, Wang Decl. ¶¶ 5, 6.) Under these circumstances, and given the complete irrelevance of the documents sought to the only issues raised by Velvel's objection to the Trustee's Determination, it would be unduly burdensome to require SIPC to expend any time and resources to review for privilege the large number of documents to the Production Request and to prepare a proper privilege log. See, e.g., SEC v. Thrasher, 1996 WL 125661 at ** 1, 2.

WHEREFORE, for the reasons stated, the Court should enter a protective order denying the discovery sought through the First and Second Production Requests and relieving SIPC of any obligation to respond to those requests.

DATED: October 30, 2009

Respectfully submitted,

s/Josephine Wang
JOSEPHINE WANG
General Counsel

s/Christopher H. LaRosa
CHRISTOPHER H. LAROSA
Associate General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
Facsimile: (202) 371-6728
E-mail: jwang@sipc.org
E-mail: clarosa@sipc.org