**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:  )  SIPA LIQUIDATION
  )  No. 08-01789 (BRL)
BERNARD L. MADOFF INVESTMENT  )
SECURITIES LLC,  )
  )
             Debtor.  )

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. <u>Recipients Of Document Request</u>.

This simplified and streamlined request for production of documents is directed to (a) the Securities Investor Protection Corporation and all of its officers, employees, directors, personnel, representatives, agents, and hired organizations or persons, and (b) the SIPC Trustee and all of his employees, personnel, representatives, agents, and hired organizations or persons.

2. <u>Requested Documents</u>.

All documents relating to any reason or reasons for or against using or not using, or relating to the decision on whether to use or not use, any of the following methods for determining an investor's net equity in the Madoff case:

1. The cash-in minus cash-out method;
2. The amount shown owing to an investor on his/her November 30, 2009 statement from Madoff;
3. The cash-in plus interest minus cash-out method;
4. Any other method.


EXHIBIT A

1

3. Definition.

"Documents" includes records; books; papers; emails; electronic messages of any kind; transcriptions; tapes; videotapes; disks; recordings; copies, drafts, reproductions no matter how produced or reproduced; contracts; memoranda; invoices; correspondence; notes; minutes of any meetings, including meetings with agents or employees; instructions; guides; compilations of rules, regulations, or policies; daybooks; calendars; photographs; telegrams; messages; drawings; charts; graphs; other writings; recording tapes; recording discs; mechanical or electronic information storage or recording elements; and any other "documents" as that word is defined in Rule 34 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Lawrence R. Velvel*

Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: Velvel@mslaw.edu

Dated: September 29, 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                    )    SIPA LIQUIDATION
                                          )    no. 08-01789 (BRL)
BERNARD L. MADOFF INVESTMENT              )
SECURITIES LLC,                           )
                                          )
                    Debtor.               )

## NOTIFICATION TO THE COURT OF
## REQUEST FOR PRODUCTION OF DOCUMENTS

Objector Lawrence R. Velvel is taking the unusual step of providing a brief notification to the Court of the filing of a short document request.[1] Velvel is doing so because of the circumstances existing in this case -- a briefing and argument schedule has recently been established on the vital issue of net equity, with the briefing to begin two weeks from now, and appeals by one side or the other likely to be taken all the way to the Supreme Court. Normally, of course, one would simply file the document request and, when its recipients object to it, would then file a motion to compel. Here the recipients of the request, the SIPC Trustee Irving Picard and SIPC itself, are certain to object to the request. And, while a motion to compel will follow, it seemed wise, because of the compressed amount of time available on the net equity issue, to provide a brief notification to the Court of the request and the fundamental reasons for it.

The request seeks documents relating to whether SIPC and the Trustee, to any extent, decided to use the cash-in/cash-out method to determine net equity in order to advance or save SIPC's economic position. There already is evidence of this possibility

---

[1] Objector's claim has been designated by the Trustee as "Combined Claim" numbers 10963 and 11245.

1

because SIPC's President, Stephen Harbeck, testified in a prior case - - in the *New Times* case - - that victims would receive the full value of their purported securities positions even if the securities had never been bought for the victim, and SIPC's General Counsel, Josephine Wang, is reported to have publicly asserted exactly the same position in mid December 2008, saying that SIPC would have to purchase securities which Madoff's statements showed that a customer owned even if the securities had not in fact been purchased previously. Yet, when SIPC began to better understand the full scope of the huge amounts that it would owe victims under this traditional position if the November 30th statements were used to determine net equity, SIPC and the Trustee changed their tune and began to assert that cash-in/cash-out, *not* the November 30th statements, were the measure of net equity.

In addition, it seems obvious that using other methods than cash-in/cash-out to determine net equity (e.g., use of the November 30th statements) would result in SIPC having to pay out sums of money so large that they are in all likelihood *far* more than it possesses. This would require SIPC to have to request more money from Congress, to assess the investment industry, to draw down lines of credit, and/or to take other nonstandard steps to raise the needed monies (and avoid bankruptcy). Such consequences, of course, almost surely were deeply unwanted, and cash-in/cash-out could logically have been adopted - - is *likely* to have logically been adopted - - to avoid the consequences once it was realized that use of the November 30th statements would bring them on. This is only the more probable because the consequences of using the November 30th statements were so dire that they would probably have required the replacement of current management, which had failed to foresee and guard against the

consequences and would therefore lose jobs paying several to many hundreds of thousands of dollars per year.

In sum, the question is whether a desire to save SIPC's economic position, and conceivably the jobs of management, played any role in the decision to use cash-in/cash-out rather than the standard method, and to do so even though use of the cash-in/cash-out method would, for the benefit of SIPC, result in enormous hardship to victimized investors whom it was Congress' purpose to help. (Congress' intent, one notes, was to help injured investors, not to help SIPC.) If a desire to aid or save the economic position of SIPC, and conceivably the jobs of its management, played a role in the decision to use cash-in/cash-out, then this would make such use entirely inappropriate in this case. It would do so, moreover, even if one could envision extraordinarily unusual circumstances when cash-in, cash-out might otherwise *be* proper.[2] For even if cash-in/cash-out could be proper in the appropriate circumstances, it *cannot* be used to benefit or save the economic position of SIPC, much less to benefit or save SIPC at the expense of investors -- whom Congress intended to be helped. If a desire to aid or save the economic position of SIPC (or its management) played a role here in the decision to use cash-in/cash-out, that should be the end of the question of whether it might have been lawful to use cash-in/cash-out.

On the other hand, if such a desire played no role in the decision to use cash-in/cash-out, then the Trustee and SIPC have nothing to fear from the requested discovery. For the documents would *show* that the improper purpose under discussion played no role in the decision to use cash-in/cash-out, and the question of the proper method of

---

[2] E.g., circumstances where a fraud is exposed after only one month, no interest or profit has yet been credited to investors, no statements have been received by them, some of them withdrew part of their money during the one month that the fraud was in existence and cash-in/cash-out is *not* used to benefit or save SIPC or its management. In such a case, cash-in/cash-out would seem appropriate.

3

determining net equity in the Madoff proceeding could be decided on other grounds entirely.[3]

In arguing in a memorandum of August 27th that the net equity question should be decided not in a case brought by only a few victims, but rather in a proceeding that includes *all* victims, the Trustee recently said, "Moreover, in resolving the Net Equity Dispute, the Court as well as all the parties would benefit from the submission *of a full and complete record*. Reply To Plaintiffs' Opposition To Defendant Irving H. Picard, Trustee's, Motion To Dismiss Complaint, Or In The Alternative To Strike, p. 6 (emphasis added). Though the Trustee doubtlessly did not think that, as would occur in a more standard case, "a full and complete record" would include information, on his and SIPC's motive, that is obtained in discovery, his own statement nonetheless *is* applicable here. For the record here cannot be "full and complete" without discovery on the potentially dispositive question of the motives underlying the use of cash-in/cash-out. Such information is not only vital in this Court, but will be important in, and to, appellate tribunals.

Also, in an order dated September 10, 2009 establishing that there would be one overall procedure for all to participate in with regard to the question of net equity, (*Memorandum Decision And Order Granting Trustee's Motion To Dismiss Plaintiffs' Complaint*), this Court said, when speaking of the benefits of having all victims participate in the procedure rather than just a few, that this "will provide everyone

---

[3] That SIPC and the Trustee would have nothing to fear from the documents if they were to show that the improper purpose under discussion played no role in the decision to use cash-in/cash-out, makes one wonder why SIPC and the Trustee would object to the requested production, which would *benefit* them, at least to the extent of eliminating a dispositive point against them. One understands, however, that wholesale objections to any and all discovery, no matter how warranted the discovery may be, is the way the "game has been played" in "big time litigation" for at least 45 to 50 years.

4

involved with the benefits from a submission of a comprehensive and complete record on this issue." (*Id.* at p. 13.) There cannot be a "comprehensive and complete record on this issue" of net equity without discovery of information on why SIPC and the Trustee decided to use cash-in/cash-out to determine net equity, including whether a reason for using it was to save the economic position of SIPC and, possibly, its management.

Respectfully submitted,

Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: Velvel@mslaw.edu

Dated: September 29, 2009

R:\My Files\Madoff\NotificationRequestForDocuments.doc

5

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing Notification to the Court of Request for Production of Documents and a Request For Production of Documents to be served on persons listed below by first class mail, postage prepaid, on this 29th day of September, 2009.

_____
Lawrence R. Velvel

Josephine Wang, Esq.
Securities Investor Protection Corp.
805 15th Street, N.W., Suite 800
Washington, DC 20005-2207

Stephen P. Harbeck
President
Securities Investor Protection Corp.
805 15th Street, N.W., Suite 800
Washington, DC 20005-2207

David J. Sheehan, Esq.
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111

Helen Chaitman, Esq.
Phillips Nizer, LLP
666 Fifth Avenue
New York, NY 10103

Jonathan M. Landers, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Brian Neville, Esq.
Lax & Neville LLP
1412 Broadway, Suite 1407
New York, NY 10018