**Hearing Date: To be Obtained from the Trustee**
**Objection Deadline: Extended to October 30, 2009 by Counsel for the Trustee**

Lee S. Attanasio
Alex R. Rovira
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

Counsel For HHI Investment Trust #2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
Securities Investor Protection Corporation,  : Adv. Pro. No. 08-01789 (BRL)
                             Plaintiff, :
                                      : SIPA Liquidation
                       v. :
                                        : (Substantively Consolidated)
Bernard L. Madoff Investment Securities LLC, :
                             Defendant. :
-------------------------------------------------------------:
                                        :
In re: :
                                        :
Bernard L. Madoff, :
                                        :
                            Debtor. :
                                        :
-------------------------------------------------------------

## HHI INVESTMENT TRUST #2'S OBJECTION
## TO THE TRUSTEE'S DETERMINATION OF CLAIM

TO:   THE HONORABLE BURTON R. LIFTON
        UNITED STATES BANKRUPTCY JUDGE:

        HHI Investment Trust #2 ("HHI2") by its undersigned counsel hereby files this objection (the "Objection") to that certain Notice of Trustee's Determination of Claim dated August 31, 2009 (the "Determination Notice") with respect to HHI2's Customer Claim Number 013546 (the "Customer Claim"),[1] and respectfully states as follows:

---

[1] A copy of HHI2's Customer Claim is attached hereto as Exhibit A.

## RELEVANT BACKGROUND

1. On or about February 10, 1997, Bernard L. Madoff Investment Securities LLC ("BLMIS") and HHI2 entered into a Customer Agreement and Option Agreement (the "Customer Agreements"), each attached as Exhibit A to the Customer Claim. Pursuant to the Customer Agreements, BLMIS, in the ordinary course of its business as a registered broker dealer, maintained account number 1-H0076-3-0 and account number H0076-4-0 (collectively, the "Customer Account") for and on behalf of HHI2.

2. From time to time from the creation of the Customer Account, HHI2 transferred funds to BLMIS for the purpose of executing securities transactions, including the purchase of securities. In addition, HHI2 received regular communications from Madoff, including monthly statements, trade confirmations and quarterly portfolio management reports.

3. HHI2's final statement dated November 30, 2008 (the "HHI2 Final Statement"), attached as Exhibit B to the Customer Claim, showed that BLMIS acquired, received and/or held cash in the amount of $7,982.00 and securities with a value of approximately $27,032,526.34.

4. On December 11, 2008, the above captioned action was commenced against BLMIS by the Securities & Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, the United States District Court for the Southern District of New York entered an order placing BLMIS into a liquidation proceeding pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), appointed Irving H. Picard as the trustee (the "Trustee") for the liquidation of the business of BLMIS under SIPA and removed BLMIS's liquidation proceeding to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5. Consistent with the customer claim bar date notice filed by the Trustee in the SIPA proceeding, on or before June 30, 2009, HHI2 filed its Customer Claim numbered 013546 asserting its Customer Claim for cash and/or securities in the aggregate amount of $27,032,526.34.

6. On August 31, 2009, the Trustee issued the Determination Notice to HHI2 indicating that the Trustee had made the following determination regarding HHI2's Customer Claim:

> Your claim for a credit balance of $27,861,938.34 and for securities is DENIED. No securities were ever purchased for your account.
>
> Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $54,608,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $47,265,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS were fictitious.
>
> Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($7,343,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is DENIED in its entirety.
>
> Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

7. The Determination Notice required that any opposition to the Determination Notice be filed with the United States Bankruptcy Court and the Trustee within thirty days from the date on which the Trustee mailed the Determination Notice, and such deadline was extended by counsel to the Trustee to October 30, 2009. In its Determination

3

Notice, the Trustee failed to provide a proper basis for his determination that the Customer Claim was not eligible to share from the fund of customer property and from the advances transferred to the Trustee (the "SIPC Advances") by the Securities Investor Protection Corporation ("SIPC"). A copy of the Determination Notice is attached hereto as Exhibit B.

## OBJECTION

    A.   HHI2 is Entitled to the Protections afforded a Customer under SIPA

        8.   Pursuant to section 78fff-2(b) of SIPA, after receipt of a written statement asserting a customer claim, "the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer … insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." See 15 U.S.C. §78fff-2(b). In addition, SIPA provides that the trustee shall allocate customer property of the debtor to customers of such debtor, who shall share ratably in such customer property on the basis and to the extent of their respective net equities. See 15 U.S.C. §78fff - 2(c)(1). Thus, in order to have a customer claim and share ratably in the debtor's customer property, a claimant must be a "customer" as defined under SIPA, and its claim must be for "customer property" as that term is defined under SIPA. See In re Adler Coleman Clearing Corp., 204 B.R. 111, 114-15 (Bankr. S.D.N.Y. 1997).

        9.   Pursuant to section 78lll(2) of SIPA, a "customer" of a debtor under SIPA is defined, in pertinent part, as "any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales,

4

pursuant to purchases, as collateral security, or for purpose of effecting transfer." Courts have indicated that "the definition of customer consists of three basic elements: (1) the claimant must have a claim for securities or cash 'received, acquired, or held' by the broker-dealer in the ordinary course of its business; (2) the securities or cash must have been received, acquired, or held "from or for the securities account" of the claimant; and (3) the securities or cash must have been received, acquired, or held by the broker-dealer either (i) for safekeeping, (ii) with a view to sale, (iii) to cover consummated sales, (iv) pursuant to purchases, (v) as collateral, or (vi) for effecting transfer." See In the Matter of Bevill, Bresler & Schulman Asset Management Corp., 67 B.R. 557 (D. N.J. 1986).

10. Here, HHI2 meets each of the three elements of a "customer" under SIPA because HHI2 entered into the Customer Agreements with BLMIS pursuant to which BLMIS purported to receive, acquire and/or hold for HHI2's Customer Account, in the ordinary course of BLMIS's business as a broker dealer, cash and/or securities relating to conventional investment, trading and participation in the securities market for the benefit of and on behalf of HHI2. See Customer Agreements and HHI2 Final Statement. Nothing in the Determination Notice denies that HHI2 is a customer under SIPA or suggests otherwise.

**B.** Return of Net Equity in HHI2's Customer Account

11. By this Objection, HHI2 respectfully requests that this Court overturn the Trustee's denial of its Customer Claim and requests that the Court require the Trustee to comply with its statutory requirement to "promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer…" 15 U.S.C. §78fff-2(b).

5

12. Nothing in the statutory definition of "net equity" supports the Trustee's interpretation of "net equity" (i.e., the difference between the amount deposited with BLMIS minus the amount withdrawn from BLMIS). SIPA expressly defines "net equity" as the value of the securities positions in a customer's account as of the commencement of the SIPA liquidation – *i.e.*, December 11, 2008 – minus any amount the customer owed to the debtor. Specifically, section 78lll(11) of SIPA provides, in pertinent part, that:

> [t]he term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the filing date*, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date ….

15 U.S.C. § 78lll(11); see also In re New Times Secs. Servs., Inc., 371 F.3d 68, 72 (2d Cir. 2004) ("In re NTSS") ("Each customer's 'net equity' is 'the dollar amount of the account or accounts of a customer, to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer' corrected for 'any indebtedness of such customer to the debtor on the filing date.'") Therefore, HHI2's customer claim for its "net equity" should be calculated as the value of the securities reflected in HHI2's Final Statement minus any indebtedness of HHI2 owed to BLMIS. HHI2's Customer Account on the filing date (having netted the long and short positions) and adding the amount of cash held in its account demonstrates a "net equity" claim of $27,032,526.34.

13. Moreover, the fact that securities were never actually purchased by BLMIS does not affect the calculation of "net equity" as defined by SIPA, nor does it change the claim from a "claim for securities" to a "claim for cash". See 15 U.S.C. § 78lll(11); see also In

6

re NTSS at 88. In In re NTSS, the Second Circuit noted that the trustee in that case deemed those customer claims based on "real" securities to be "securities claims" eligible to receive up to $500,000 in SIPC Advances notwithstanding the fact that the customer never actually invested in the securities since the debtor broker had never executed the transactions. Id. at 74. The trustee calculated the "net equity" of those customers claims as the value of "real" securities reflected in a customer's account statement as of the filing date. Id. at 74. The Second Circuit further held that with respect to customer claims based on "fictitious securities" (i.e., securities which were not "real" and never existed) such customer claims should also be treated as claims for securities as opposed to a claim for cash and would therefore be entitled to the maximum amount of $500,000 of SIPC Advances for claims on securities. Id. at 88 (adopting the SEC's view, the court found that "[w]hen a customer has been sent confirmations and account statements reflecting his securities purchases and showing that he holds the securities in his account, his claim, in the Commission's view, involves the debtor's function as securities custodian and is one for securities entitled to SIPC protection up to $500,000.").

        14.    All of the securities reflected in HHI2's Final Statement are real, publicly verifiable securities. Therefore, HHI2 has a valid securities customer claim for its "net equity" calculated as the value of the securities reflected in HHI2's Final Statement minus any indebtedness of HHI2 owed to BLMIS, notwithstanding that the securities were never purchased by BLMIS. HHI2's Customer Claim as submitted is for its "net equity" calculated as the dollar amount of the sum which would have been owed by BLMIS to HHI2 if BLMIS had liquidated, by sale or purchase the securities purported to be held in the Customer Account on the filing date (having netted the long and short positions) and adding the amount of cash held in its account for a total of $27,032,526.34.

15. In addition, the Trustee's Determination Notice is inconsistent with SIPA's legislative history, which requires the Trustee to meet customer's "legitimate expectations." Neither SIPA nor its legislative history excuses the Trustee from this duty because no securities were purchased by the debtor. <u>See</u>, e.g., S. Rep. No. 95-763, at 2 (1978); H.R. Rep. No. 95-746, at 21. The legislative history of SIPA makes clear that Congress' intent in enacting the legislation was to protect the legitimate expectations of customers:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, never purchased or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978).

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

H.R. Rep. No. 95-746, at 21.

16. HHI2's legitimate expectations arise from the written confirmations and account statements HHI2 received from BLMIS, which reflected that HHI2 owned those specifically listed securities valued at the amounts reflected in the HHI2 Final Statement. HHI2 certainly had no expectation - nor should it have had - that BLMIS only owed it the net of what HHI2 deposited and withdrew over the life of his account.

**C.** <u>Reservation of Rights</u>

17. To the extent the Determination Notice is based on some avoidance theory or other basis, HHI2 hereby reserve all of its rights, defenses, remedies and privileges under

8

applicable law, whether at law or in equity, including under section 546 of the Bankruptcy Code, and nothing herein shall be deemed or otherwise relied upon as a waiver of any of HHI2's rights, defenses, privileges and remedies under applicable law.  In addition, HHI2 reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of HHI2's right to object on any additional grounds.

WHEREFORE, HHI2 respectfully requests that this Court overturn the Trustee's denial determination in his Notice of Determination, confirm that HHI2 is a "customer" under SIPA entitled to its "Net Equity" as calculated herein pursuant to the express statutory definition in section 78lll(11) of SIPA and that the Trustee distribute to HHI2 its pro rata share of the pool of customer property and/or up to $500,000 in SIPA Advances on account of its valid Customer Claim.

                                                Respectfully submitted,

Dated:  October 30, 2009              SIDLEY AUSTIN LLP
       New York, New York

                                           /s/ Lee S. Attanasio
                                           Lee S. Attanasio
                                           Alex R. Rovira
                                           787 Seventh Avenue
                                           New York, NY 10019
                                           Tel: (212) 839-5300
                                           Fax: (212) 839-5959

                                           Counsel for HHI Investment Trust #2