# CUSTOMER CLAIM

Claim Number  _____

Date Received  _____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

**(Please print or type)**

Name of Customer: <u>HHI Investment Trust #2 c/o Harris Holdings, Inc.</u>
Mailing Address: <u>200 South Wacker Drive, Suite 3900</u>
City: <u>Chicago</u>                State: <u>IL</u>            Zip: <u>60606</u>
Account No.: <u>1-H0076</u>
Taxpayer I.D. Number (Social Security No.): <u>36-7120055</u>

**NOTE:** **BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Claim for money balances as of **December 11, 2008**:

   a.   The Broker owes me a Credit (Cr.) Balance of          $<u>See</u> Attached
                                                              <u>Schedule – Item 1</u>

   b.   I owe the Broker a Debit (Dr.) Balance of             $_____

   c.   If you wish to repay the Debit Balance,
        please insert the amount you wish to repay and
        attach a check payable to "Irving H. Picard, Esq.,
        Trustee for Bernard L. Madoff Investment Securities LLC."
        If you wish to make a payment, **it must be enclosed**
        with this claim form.                                 $_____

   d.   If balance is zero, insert "None."                    _____

2. Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | See Attached Schedule – Item 2 | _____ |
| b. | I owe the Broker securities | _____ | _____ |
| c. | If yes to either, please list below: | _____ | _____ |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | Number of Shares or Face Amount of Bonds | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. **PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED
EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS
ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR
YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | See Attached Schedule: Item 8 | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the
preparation of this claim form:    See Attached Schedule, Part III, ¶15

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date ____June 25, 2009____          Signature _____

Date _____          Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

4



**SCHEDULE TO CUSTOMER CLAIM
FORM
BERNARD L. MADOFF
INVESTMENT SECURITIES LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BERNARD L. MADOFF | ) | Adv. Proc. No. 08-01789(BRL) |
| INVESTMENT SECURITIES LLC | ) | SIPA Liquidation |
| | ) | |
| Debtor | ) | |
| | ) | |

### SCHEDULE TO CUSTOMER CLAIM FORM OF
### HHI INVESTMENT TRUST # 2

**I.    Background**

        1.    This Schedule to the Customer Claim Form of HHI Investment Trust #2

("HHI2") shall be deemed a part of, and incorporated by reference in, the Customer Claim Form

to which this Schedule is attached (the Customer Claim Form, together with this Schedule, the

"Customer Claim") filed by HHI2.

        2.    On December 15, 2008, the District Court for the Southern District of

New York commenced liquidation proceedings in respect of Bernard L. Madoff Investment

Securities LLC ("BMIS") and appointed Irving H. Picard as the SIPC Trustee (the "Trustee") to

administer the liquidation of BMIS pursuant to the Securities Investor Protection Act of 1970

("SIPA"). The District Court also transferred BMIS's liquidation proceedings to the Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court").

**ITEM 1.  CLAIM FOR MONEY BALANCES OR CASH AS OF DECEMBER 11, 2008:**

3.      BMIS maintained account number 1-H0076-3-0 and account number 1-H0076-4-0 (the "Account") for or on behalf of HHI2 pursuant to a Customer Agreement and Option Agreement each dated February 10, 1997, and in the ordinary course of business, BMIS received, acquired, and/or held cash in the Account for or on behalf of HHI2. See Customer Agreement and Option Agreement, attached hereto as Exhibit A.  HHI2 hereby files this Customer Claim for the value of all cash received, acquired, and/or held for or on behalf of HHI2 by BMIS in the Account, and specifically HHI2 submits that BMIS holds approximately $7,982.00 in the Account or otherwise, for or on behalf of HHI2.  See BMIS Account Statement (1-H0076-3-0) dated November 30, 2008, pg. 14, attached hereto as Exhibit B.

**ITEM 2.  CLAIM FOR SECURITIES AS OF DECEMBER 11, 2008:**

4.      Upon information and belief, BMIS received, acquired, and/or held securities in the Account for or on behalf of HHI2.  HHI2 hereby files this Customer Claim for the value of all securities received, acquired, and/or held for or on behalf of HHI2 by BMIS in the Account, and specifically HHI2 submits that BMIS holds approximately $27,032,526.34 in value of securities in the Account (netting the long and short positions, and deducting the cash claim amount in Item 1) for or on behalf of HHI2.  See Exhibit B, BMIS Account Statement (1-H0076-3-0) dated November 30, 2008, pg 16 and BMIS Account Statement (1-H0076-4-0) dated November 30, 2008, pg 2.

**ITEM 8.     PERSON GIVEN DISCRETIONARY AUTHORITY TO EXECUTE SECURITIES TRANSACTIONS WITH AND THROUGH BMIS:**

5.      No person other than Bernard L. Madoff, as the investment manager of Bernard L. Madoff Investment Securities LLC, was given discretionary authority to execute securities transactions with and through BMIS on behalf of HHI2.

2

## II.    Reservation of Rights

6.    To the extent BMIS held, acquired or received any other cash and/or securities for or on behalf of HHI2, the value of all such cash and/or securities shall be included in this Customer Claim. HHI2 hereby also asserts any and all rights of setoff it may have in respect of the Claims, including, without limitation, the right to setoff its Claims against any claims that BMIS (or any successor, assignee, trustee or person claiming through BMIS) may assert against it.

7.    In filing this Customer Claim, HHI2 expressly reserves all rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against BMIS. The description of the claims and the classification thereof herein by HHI2 is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of HHI2. Furthermore, HHI2 expressly reserves all rights to amend, clarify, modify and/or supplement the Customer Claim at any time and for any reason, in any respect, including, without limitation to: (a) correct, increase or amend the amounts referred to herein; (b) add or amend documents and other information, and to describe further, the claims asserted herein; (c) file proofs of claim for a general claim that may be duplicative in respect of the relevant and applicable documents or any other indebtedness, obligations or liability to HHI2; (d) assert a further priority, security interest or similar right with respect to the claims asserted herein; (e) file an amended Customer Claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein; (g) file additional customer claims or proofs of claims for additional claims, including, without limitation, claims for additional cash or securities, interest, fees and related expenses that are not ascertainable at this time, or requests

3

for payment with respect to any other indebtedness, liability or obligations whatsoever of BMIS to HHI2.

8.     In executing and filing this Customer Claim, HHI2 does not submit itself to the jurisdiction of the Bankruptcy Court for any purpose other than with respect to this claim against BMIS and does not waive or release: (a) its rights, claims, defenses and remedies, whether under applicable law, the relevant and applicable documents, or otherwise, against BMIS or any other person or entity that may be liable for all or part of the claims set forth herein, whether an affiliate or subsidiary of BMIS, an assignee, guarantor, custodian or otherwise, including any rights that HHI2 may have with respect to any property held by BMIS or other entity in an actual, constructive, or other trust or similar relationship for the benefit of HHI2; (b) any obligation owed to it, or any right to any security in connection with the claims; (c) any past, present or future defaults (or events of default) by the BMIS or others in connection with the relevant and applicable documents or otherwise; or (d) any right to the subordination, in favor of HHI2, of indebtedness or liens held by other creditors of the BMIS.

9.     Without limiting any of the foregoing, HHI2 hereby also reserves all of its rights to assert additional claims for interest, fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Customer Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to December 11, 2008, in each case to the extent and/or as may be permitted, provided and/or contemplated in the supporting documentation and under applicable law.

4

10.    Nothing contained in this Customer Claim nor subsequent appearance, pleading, claim or suit is intended to be: (a) a consent to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. § 157(e) or otherwise; (b) an election of remedies or limitation of rights or remedies; or (c) an admission that any property received by HHI2 under the relevant and applicable documents or held by BMIS or other entity constitutes property of BMIS's estate.

11.    Nothing contained in this Customer Claim nor subsequent appearance, pleading, claim or suit is intended to be a waiver or release of: (a) the right of HHI2 to have final orders in non-core matters entered only after de novo review by a district court judge; (b) the right of HHI2 to a jury trial in any proceeding so triable herein or, in any case, any controversy or proceeding related hereto, notwithstanding any designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution; (c) any ownership, lien, or other property rights, any rights to setoff, recoupment, or counterclaim, or any other right, rights of action, causes of action, claims, or defenses, whether existing now or hereinafter arising to which HHI2 is or may be entitled under agreements, documents, or instruments, in law or equity, against BMIS or any other person or persons (including any current or prior affiliated or related entity of BMIS).

12.    Nothing herein shall be deemed to waive, estop or derogate from any rights of HHI2, including, without limitation, HHI2's rights under the relevant and applicable documents, or otherwise. This Customer Claim also is without prejudice to any and all of HHI2's rights, claims and defenses in conjunction with the relevant and applicable documents, SIPA and/or the Bankruptcy Code.

5

13.    The descriptions in this Customer Claim of the relevant and applicable documents are qualified in their entirety by reference to the applicable provisions of such documents, and such documents are incorporated herein by reference. In the event of any inconsistency between this Customer Claim and such documents, the documents shall control.

14.    HHI2 expressly reserves all procedural and substantive rights, claims and defenses with respect to any claim that has been or may be asserted against HHI2 by the BMIS trustee, or any other person or entity whatsoever.

III.    **Additional Persons Assisting with Preparation of Claim Form**

15.    The following individual(s) assisted with the preparation of this claim form, and copies of all notices and correspondence relating to this Customer Claim should be delivered to such individual(s) per the below:

Full name:   Sidley Austin LLP, Attn: Lee S. Attanasio, Alex R. Rovira
Address:   787 Seventh Avenue, NY, NY 10019
Phone number:  (212) 839-5300
Email address:   lattanasio@sidley.com; arovira@sidley.com

6



EXHIBIT A



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

### CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 19 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

1. **APPLICABLE RULES AND REGULATIONS**

    All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

2. **AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT**

    This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

3. **SEVERABILITY**

    If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

4. **WAIVER**

    Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

5. **DELIVERY OF SECURITIES**

    Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

6. **SALES BY CUSTOMER**

    The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 071-374 0801



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 18, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

_____ Yes, I do object to the disclosure of information.

__X__ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

HHI Investment Trust #2

(X) _King Harris, Trustee_____

(Customer Signature/date)

King Harris, Trustee

_333 Skokie Boulevard, Suite 114_

(Customer Address)

_Northbrook, IL 60062_____


(X) _____

(Customer Signature/date)

_____

(Account Number)



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO
## PURCHASES AND SALES OF SECURITIES

Gentlemen:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, _August 15, 1995_

_Northbrook_       _Illinois_
(City)                (State)

Very truly yours, _____ HHI Investment Trust #2 _____
(Client Signature)

Signature Of Authorized Agent: _____ _K. Harris, Trustee_ _____
King Harris, Trustee

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payors including banks, corporations and funds must withhold 10% of all dividends or interest paid UNLESS you complete and return the form at the bottom of this page.

### Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as with-holding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payor) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payor is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".

Please sign the form and return it to us.

Even if you have already provided this information it is required by the IRS that all information requested below be provided again.

Thank you for your cooperation.

(Corporations are exempt from this requirement and should not return this form.)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): _____

Taxpayer Identification Number:

36-7120055

Name: _____ HHI Investment Trust #2 _____

Address: _____ 333 Skokie Boulevard, Suite 114, Northbrook, IL 60062 _____

(Signature) _King Harris, Trustee_
"Under penalties of perjury, I certify that the number shown on this form is my correct Taxpayer Identification Number".
King Harris, Trustee

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 071-374 0891



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

TAX ID NO.

ACCT# ASSIGNED

Mr./Mrs./Ms.  NAME  _H. H. I. INVESTMENT TRUST #5_

STREET  333 Skokie Boulevard, Suite 114

CITY  Northbrook          STATE  IL          ZIP  60062

TEL NUMBER  708/498-1261          BUSINESS          N/A          RESIDENCE

REG. REP

WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE "KNOW YOUR CUSTOMER" RULE
OF THE NATIONAL ASSOCIATION OF SECURITY DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.

RESIDENCE  N/A

NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)

EMPLOYER'S ADDRESS

OCCUPATION

BANK REFERENCE AND ADDRESS

OTHER BROKERAGE ACCOUNTS WITH

CLIENT INTRODUCED BY

### FOR OFFICE USE ONLY

R. R.'S ESTIMATE OF CLIENTS NET WORTH

IS CLIENT OVER 21 YEARS OF AGE          YES_____          NO_____

HOW LONG HAVE YOU KNOWN CLIENT

CLIENT IS CITIZEN OF

APPROVED BY

| DATE SENT TO CLIENT | | DATE SENT TO CLIENT | |
|---|---|---|---|
| MARGIN AGREEMENT | _____ | MAIL WAIVER FORM | _____ |
| JOINT AGREEMENT | _____ | MULTIPLE A/C FORM | _____ |
| CORPORATE ACCOUNT FORM | _____ | CORPORATE RESOLUTION | _____ |
| CO-PARTNERSHIP FORM | _____ | | |

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 071-374 0891



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-3242
Telex 235130
Fax 212 486-8178

# OPTION AGREEMENT

### TO: BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1.    I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me. I agree to hold BERNARD L. MADOFF, its other Divisions, and its officers, Directors and Agents harmless for such loss.

2.    I understand that any option transaction made for any account of mine is subject to the rules, regulations, customs and usages of The Options Clearing Corporation and of the registered national securities exchange, national securities association, clearing organization or market where such transaction was executed; I agree to abide by such rules, regulations, custom and usages and I agree that, acting individually or in concert with others, I will not exceed any applicable position or exercise limits imposed by such exchange, association, clearing organization or other market with respect to option trading.

3.    If I do not satisfy, on a timely basis, your money or security calls, you are authorized in your sole discretion and without notification, to take any and all steps you deem necessary to protect yourself (for any reason) in connection with option transactions for my account including the right to buy and/or sell (including short or short exempt) for my account and risk any part or all of the shares represented by options handled, purchased, sold and/or endorsed by you for my account or to buy for my account and risk any option as you may deem necessary or appropriate. Any and all expenses or losses incurred in this connection will be reimbursed by me.

4.    In addition to the terms and conditions hereof, my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the purchase and sale of securities and commodities except to the extent that such other agreements are contrary to or inconsistent herewith.

Affiliated with
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 071-374 0891

5. This agreement shall apply to all puts or call which you may have executed, purchased, sold or handled for any account of mine and also shall apply to all puts, or calls which you may hereafter purchase, sell, handle or execute for any account of mine.

6. I have received from BERNARD L. MADOFF the most recent risk disclosure documents entitled "Understanding the Risks and Uses of Listed Options", "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments". I have read and understand the information contained in these documents.

7. I understand that you assign exercise notices on a random basis except that with respect to options on the following debt instruments: Treasury Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially assign exercises of block-size (i.e. covering $1,000,000 or more of underlying securities) to block-size writing positions and you may preferentially assign smaller exercises to smaller writing positions. I understand that upon my request you will provide me with further information regarding the procedure used to assign exercise notices.

DATED _February 10th 1997_    ACCOUNT NO. _____

**SIGNATURES**

(If a Corporation)                        (If Individuals)

_____        _____

(Name of Corporation)                (Second Party If Joint Account)

By_____

                                      (If a Partnership)

Title_____

                                     _____

        SEAL                          (Name of Partnership)

                                      By_____

                                              (A Partner)

# BERNARD L. MADOFF INVESTMENT SECURITIES
## NEW YORK    LONDON
### 885 THIRD AVENUE
NEW YORK, NY 10022-4834
212-230-2424
800-334-1343
FAX 212-486-8178

## FACSIMILE TRANSMITTAL SHEET

| | | |
|---|---|---|
| TO: Pat Gerber | FROM: Eleanor Plata | |
| COMPANY: | DATE: 2-10-97 | |
| FAX NUMBER: 847-295-2618 | TOTAL NO. OF PAGES INCLUDING COVER: 3 | |
| PHONE NUMBER: | SENDER'S FAX NUMBER: 212-486-8178 | |
| RE: | | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

① Attached is copy that we signed in 1995 for comparison.

I am sending to you new
account papers in the mail
to be filled out and sent back
to the attention of Frank Dipascali
Thank you.

IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION PLEASE CALL 212-230-2424

② Attached Option Agreement is same as the one we signed in 1995.

AFFILIATED WITH
MADOFF SECURITIES INTERNATIONAL LTD.
43 LONDON WALL, LONDON ENGLAND EC2M 5TB 071 374 0592

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

| YOUR ACCOUNT NUMBER | DATE | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-H0076-3-0 | 11/30/08 | *****0055 | 1 |

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 1,006,443.15 |
| 11/06 | | | APPLE INC | | | |
| 11/06 | | | ABBOTT LABORATORIES | | | |
| 11/06 | 24486 | | AMGEN INC | 60.350 | | 150,129.10 |
| 11/06 | 1808 | | BOEING CO | 51.120 | | 92,496.96 |
| 11/06 | | | BANK OF AMERICA | | | |
| 11/06 | 2712 | | BAXTER INTERNATIONAL INC | 32.290 | | 87,678.48 |
| 11/06 | 4520 | | BANK OF NEW YORK MELLON CORP | 20.610 | | 93,337.20 |
| 11/06 | | | BRISTOL MYERS SQUIBB COMPANY | | | |
| 11/06 | | | ANHEUSER BUSCH COS INC | | | |
| 11/06 | 6780 | | CITY GROUP INC | 15.790 | | 107,327.20 |
| | | | COMCAST CORP | | | |
| 11/06 | | | CL A | | | |
| 11/06 | | | CISCO SYSTEMS INC | | | |
| 11/06 | 3390 | | CVS CAREMARK CORP | 30.510 | | 103,563.90 |
| 11/06 | 4766 | | CHEVRON CORP | 73.760 | | 350,555.04 |
| 11/06 | | | THE WALT DISNEY CO | | | |
| 11/06 | | | GENERAL ELECTRIC CO | | | |
| 11/06 | 452 | | GOOGLE | 356.520 | | 161,165.04 |
| 11/06 | 904 | | GOLDMAN SACHS GROUP INC | 91.870 | | 83,085.48 |
| 11/06 | | | HOME DEPOT INC | | | |
| 11/06 | | | HEWLETT PACKARD CO | | | |
| 11/06 | 3164 | | INTERNATIONAL BUSINESS MACHS | 92.800 | | 293,745.20 |
| | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

| Date | Bought Received | Sold Delivered | Tran | Description | Price Per Share | Amount Debited | Amount Credited |
|------|------|------|------|------|------|------|------|
| 11/06 | 12,882 | | 16175 | INTEL CORP | 16.070 | | 207,528.74 |
| 11/06 | 5,554 | | 16410 | JOHNSON & JOHNSON | 61.310 | | 402,087.74 |
| 11/06 | 8,588 | | 16645 | J.P. MORGAN CHASE & CO | 40.730 | | |
| 11/06 | 3,616 | | 16880 | KRAFT FOOD INC | 29.120 | | 105,405.76 |
| 11/06 | 4,520 | | 17115 | COCA COLA CO | 44.490 | | 201,274.80 |
| 11/06 | 2,712 | | 17350 | MCDONALDS CORP | 57.900 | | 157,132.80 |
| 11/06 | 2,712 | | 17585 | MEDTRONIC INC | 40.530 | | 109,... |
| 11/06 | 1,582 | | 17820 | 3M COMPANY | 63.590 | | 100,... |
| 11/06 | 4,746 | | 18055 | ALTRIA GROUP INC | 19.160 | | 91,122.36 |
| 11/06 | 4,972 | | 18290 | MERCK & CO | 30.780 | | 153,236.16 |
| 11/06 | | | 18525 | MICROSOFT CORP | 22.330 | | 209,... |
| 11/06 | | | 18760 | ORACLE CORPORATION | 84.330 | | |
| 11/06 | 2,034 | | 19465 | OCCIDENTAL PETROLEUM CORP | 54.290 | | 110,506.86 |
| 11/06 | 7,006 | | 19700 | PEPSICO INC | 64.860 | | |
| 11/06 | | | 19935 | PROCTER & GAMBLE CO | 44.570 | | |
| 11/06 | 4,972 | | 20405 | PHILLIP MORRIS INTERNATIONAL | 42.730 | | 212,651.56 |
| 11/06 | 3,842 | | 20640 | QUALCOMM INC | 37.810 | | 145,419.02 |
| 11/06 | | | 20875 | SCHLUMBERGER LTD | | | |
| 11/06 | 137,560 | | 21110 | AT&T INC | 26.960 | | 306,390.00 |
| 11/06 | 8,362 | | 21345 | TIME WARNER INC | 10.060 | | 84,455.72 |
| 11/06 | 2,260 | | 21580 | UNITED PARCEL SVC INC CLASS B | 52.780 | | 119,395.40 |
| 11/06 | 47,068 | | 21815 | U S BANCORP | 295.550 | | |
| 11/06 | 2,260 | | 22050 | UNITED TECHNOLOGIES CORP | 54.920 | | 124,209.20 |
| | | | | CONTINUED ON PAGE 3 | | | |

Date 11/30/08   Page 2   Account Number 1-H0076-3-0

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

MADF  **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

**TRADE DATE:** 11/30/08   **PAGE:** 3

**YOUR ACCOUNT NUMBER:** ******0055

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | SYMBOL | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/06 | 6,554 | | VERIZON COMMUNICATIONS | 22285 | 29.990 | 196,750.92 | |
| 11/06 | 4,684 | | WELLS FARGO & CO NEW | 22520 | 33.660 | 158,250.44 | |
| 11/06 | 3,636 | | WAL MART STORES INC | 22755 | 55.290 | 201,205.83 | |
| 11/06 | 2,720 | | EXXON MOBIL CORP | 22990 | 73.380 | 199,979.02 | |
| 11/06 | | | FIDELITY SPARTAN | | DIV | | 6.24 |
| 11/06 | | 57,051 | U S TREASURY MONEY MARKET | 10770 | 1 | | 57,051.00 |
| | | | FIDELITY 11/06/08 | | | | |
| 11/06 | | | FIDELITY SPARTAN | | | | |
| 11/06 | 20,968 | | U S TREASURY MONEY MARKET | 46287 | 1 | | 20,968.00 |
| 11/06 | 725,000 | | FIDELITY SPARTAN | 48498 | 99.980 | 724,920.25 | |
| | | | U S TREASURY BILL | | | | |
| | | | DUE 12/11/2008 | | | | |
| 11/06 | 2,125,000 | | U S TREASURY BILL | 49714 | 99.932 | 2,123,255.00 | |
| | | | DUE 12/11/2008 | | | | |
| | | | DUE 12/18/2008 | | | | |
| 11/06 | 2,775,000 | | U S TREASURY BILL | 48930 | 99.960 | 2,773,890.00 | |
| | | | DUE 01/08/2009 | | | | |
| | | | 01/08/2009 | | | | |
| 11/06 | 2,775,000 | | U S TREASURY BILL | 49141 | 99.946 | 2,773,501.50 | |
| | | | DUE 01/15/2009 | | | | |
| | | | 1/15/2009 | | | | |
| 11/06 | 2,775,000 | | U S TREASURY BILL | 49356 | 99.994 | 2,773,160.50 | |
| | | | DUE 01/22/2009 | | | | |
| | | | 1/22/2009 | | | | |
| | | | CONTINUED ON PAGE 4 | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO        IL   60606

| Date | 11/30/06 | Sheet 4 |
| --- | --- | --- |
| Account Number | 1-H0076-3-0 | |
| Tax ID | *****0055 | |

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRANS. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 11/06 | 2,775,000 | | 49573 | U S TREASURY BILL DUE 01/29/2009 | 99.928 | | 2,773,002.00 |
| 11/06 | | 2,775,000 | 49780 | U S TREASURY BILL DUE 1/29/2009 2/12/2009 | 99.902 | | 2,773,135.50 |
| 11/06 | 1,925,000 | | 50016 | U S TREASURY BILL DUE 2/12/2009 | 99.902 | 1,923,186.50 | |
| 11/06 | 1,825,000 | | 50245 | U S TREASURY BILL DUE 03/26/2009 | 99.751 | 1,820,656.75 | |
| 11/06 | 1,825,000 | | 50474 | U S TREASURY BILL DUE 04/09/2009 | 99.726 | 1,819,999.50 | |
| 11/07 | 2,494 | | 23526 | APPLE INC | 168.000 | 162,611.20 | |
| 11/07 | 2,496 | | 23761 | ABBOTT LABORATORIES | 56.590 | 141,347.64 | |
| 11/07 | 1,716 | | 23996 | AMGEN INC | 52.070 | 106,580.12 | |
| 11/07 | 1,248 | | 24233 | BOEING CO | 23.340 | 106,991.72 | |
| 11/07 | 7,956 | | 24466 | BANK OF AMERICA | 23.720 | 189,003.32 | |
| 11/07 | 936 | | 24701 | BAXTER INTERNATIONAL INC | 61.740 | 57,825.64 | |
| 11/07 | 3,716 | | 24936 | BANK OF NEW YORK MELLON CORP | 34.210 | 58,772.36 | |
| 11/07 | 31,220 | | 25177 | BRISTOL MYERS SQUIBB COMPANY | 21.920 | 684,706.40 | |
| 11/07 | 17,092 | | 25406 | ANHEUSER BUSCH COS INC | 164.990 | 709,236.48 | |
| 11/07 | 8,424 | | 25641 | CITI GROUP INC | 14.410 | 121,725.84 | |

CONTINUED ON PAGE

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO                 IL    60606

| DATE PAID OR ENTERED | YOUR ACCOUNT NUMBER | YOUR TAX IDENTIFICATION NUMBER | AMOUNT OF ACCOUNT PAGE |
|---|---|---|---|
| 11/30/08 | 1-H0076-3-0 | ******0055 | 5 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRAN. | DESCRIPTION | PRICE PER SHARE | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/07 | 4,6524 | | 25876 | COMCAST CORP CL A | 17.390 | 78,852.36 |
| 11/07 | | | 26211 | CONOCOPHILLIPS | | |
| 11/07 | | | 26346 | CISCO SYSTEMS INC | | |
| 11/07 | 2,184 | | 26581 | CVS CAREMARK CORP | 31.720 | 69,363.48 |
| 11/07 | 3,276 | | 26816 | CHEVRON CORP | 75.450 | 247,305.20 |
| 11/07 | | | 27051 | THE WALT DISNEY CO | | |
| 11/07 | | | 27286 | GENERAL ELECTRIC CO | | |
| 11/07 | 312 | | 27521 | GOOGLE | 349.160 | 108,949.92 |
| 11/07 | | | 27756 | | | |
| 11/07 | | | 27991 | GOLDMAN SACHS GROUP INC | 89.070 | |
| 11/07 | | | 28226 | HOME DEPOT INC | | |
| 11/07 | | | 28461 | HEWLETT PACKARD CO | 38.820 | |
| 11/07 | 27,184 | | 28696 | INTERNATIONAL BUSINESS MACHS | 92.430 | 201,954.12 |
| 11/07 | | | 28931 | INTEL CORP | | |
| 11/07 | | | 29166 | JOHNSON JOHNSON | | |
| 11/07 | | | 29401 | J P MORGAN CHASE & CO | | |
| 11/07 | 2,340 | | 29636 | KRAFT FOOD INC | 29.710 | 69,614.40 |
| 11/07 | | | 29871 | COCA COLA CO | | |
| 11/07 | | | 30106 | MCDONALDS CORP | | |
| 11/07 | | | | MEDTRONIC INC | | |
| 11/07 | 1,092 | | 30341 | 3M COMPANY | 64.880 | 70,891.96 |
| 11/07 | 3,276 | | 30576 | ALTRIA GROUP INC | 19.370 | 63,587.12 |
| 11/07 | | | 30811 | MERCK & CO | | |
| 11/07 | 6,240 | | 31046 | MICROSOFT CORP | 22.940 | |
| 11/07 | | | 31281 | ORACLE CORPORATION | 18.470 | 115,501.80 |
| | | | | CONTINUED ON PAGE 6 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO      IL      60606

| Date | Page |
|------|------|
| 11/30/08 | 6 |

Account Number: 1-H0076-3-0      *******0055

| Bought Received | Sold Delivered | Date | Description | Price | Amount Debited to Your Account | Amount Credited to Your Account |
|---|---|---|---|---|---|---|
| 1,248 | | 31986 | OCCIDENTAL PETROLEUM CORP | 54.380 | 67,915.24 | |
| 2,496 | | 32221 | PEPSICO INC | 58.630 | 146,439.48 | |
| 10,068 | | 32556 | PFIZER INC | 18.780 | 191,261.00 | |
| 4,836 | | 32691 | PROCTER & GAMBLE CO | 65.280 | 157,403.48 | |
| 3,276 | | 32926 | PHILLIP MORRIS INTERNATIONAL | 43.640 | 143,095.64 | |
| 2,652 | | 33164 | QUALCOMM INC | 37.690 | 100,059.88 | |
| 1,872 | | 33396 | SCHLUMBERGER LTD | 55.770 | 104,732.44 | |
| 9,048 | | 33631 | AT&T INC | 28.910 | 261,938.68 | |
| 5,616 | | 33866 | TIME WARNER INC | 10.110 | 57,001.76 | |
| 4,500 | | 34103 | UNITED PARCEL SVC INC CLASS B | 53.680 | 243,062.80 | |
| 2,808 | | 34336 | U S BANCORP | 30.490 | 80,570.92 | |
| 1,560 | | 34571 | UNITED TECHNOLOGIES CORP | 56 | 87,422.00 | |
| 4,368 | | 24806 | VERIZON COMMUNICATIONS | 34.480 | 139,120.48 | |
| 4,304 | | 35041 | WELLS FARGO & CO NEW | 31.810 | 304,372.32 | |
| 3,588 | | 35276 | WAL-MART STORES INC | 55.930 | 200,090.24 | |
| 8,268 | | 35511 | EXXON MOBIL CORP | 75.280 | 622,745.04 | |
| | | | FIDELITY SPARTAN | DIV | | 1.03 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | DIV 11/07/08 | | | |
| | 57,051 | 11014 | FIDELITY SPARTAN | 1 | | 57,051.00 |
| | | | U.S. TREASURY MONEY MARKET | | | |
| | 13,029,000 | 11279 | U.S. TREASURY BILL | 99.923 | | 13,029,250.75 |
| | | | DUE 02/05/09 | | | |
| | | | 2/05/2009 | | | |
| | | | CONTINUED ON PAGE 7 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2
C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO     IL   60606

| Date | Bought Received | TR.NO. | Transaction | Price | Sold Delivered | Credit to your Account | Balance |
|------|------|------|------|------|------|------|------|
| 11/07 | 1,725,000 | 11492 | U S TREASURY BILL DUE 02/19/2009 | 99.887 | | | 1,723,050.75 |
| 11/07 | 1,725,000 | 18708 | U S TREASURY BILL DUE 02/19/2009 | 99.889 | 1,725,000 | | 1,723,085.25 |
| 11/07 | 1,925,000 | 11920 | U S TREASURY BILL DUE 02/26/2009 | 99.866 | | | 1,922,358.50 |
| 11/07 | 50,000 | 12258 | U S TREASURY BILL DUE 03/05/2009 | 99.720 | 50,000 | 49,860.00 | |
| 11/07 | 50,000 | 12478 | U S TREASURY BILL DUE 04/16/2009 | 99.671 | 50,000 | 49,835.50 | |
| 11/07 | 214,473 | 12705 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 214,473 | 214,473.00 | |
| 11/10 | 1,937 | 35986 | APPLE INC | 108.720 | | 189,915.64 | |
| 11/10 | 15088 | 36225 | ABBOTT LABORATORIES | 55.310 | | 475,717.90 | |
| 11/10 | 29123 | 36656 | AMGEN INC | 99.620 | | 1,267,657.26 | |
| 11/10 | 1544 | 36691 | BOEING CO | 52.190 | | 80,642.36 | |
| 11/10 | 10056 | 36926 | BANK OF AMERICA | 24.050 | | 241,765.80 | |
| 11/10 | 7165 | 37151 | BAXTER INTERNATIONAL INC | 46.770 | | 335,104.27 | |
| 11/10 | 2313 | 37356 | BANK OF NEW YORK MELLON CORP | 33.480 | | 77,451.68 | |
| 11/10 | 4053 | 37631 | BRISTOL MYERS SQUIBB COMPANY | 21.310 | | 86,531.43 | |
| | | | CONTINUED ON PAGE | | | | |

NEW BROUGHT FORWARD BALANCE: 11/30/08

YOUR ACCOUNT NUMBER: 1-H0076-3-0
TAX PAYER IDENTIFICATION NUMBER: *****-0055
PAGE: 7

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO         IL    60606

**11/30/08**

**1-H00176-3-0**

**8**

*****-****-0055**

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | NUMBER | DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/10 | 1,351 | | 37866 | ANHEUSER-BUSCH COS INC | 64.090 | | 86,639.59 |
| 11/10 | 11,001 | | 38101 | CITI GROUP INC | 14.270 | | 157,422.27 |
| 11/10 | 5,750 | | 38833 | COMCAST CORP CL A | 17.410 | | 101,103.50 |
| 11/10 | 3,088 | | 38571 | CONOCOPHILLIPS | 54.130 | | 167,276.44 |
| 11/10 | 11,772 | | 38806 | CISCO SYSTEMS INC | 18.080 | | 213,125.84 |
| 11/10 | 2,895 | | 39041 | CVS CAREMARK CORP | 31.300 | | 90,728.50 |
| 11/10 | 4,276 | | 39276 | CHEVRON CORP | 76.410 | | 326,905.86 |
| 11/10 | 3,667 | | 39511 | THE WALT DISNEY CO | 25.660 | | 94,241.22 |
| 11/10 | 21,037 | | 39746 | GENERAL ELECTRIC CO | 20.530 | | 432,730.61 |
| 11/10 | 3,465 | | 39981 | GOOGLE INC | 362.660 | | 1,409,550.00 |
| 11/10 | 3,474 | | 40216 | GOLDMAN SACHS GROUP INC | 52.660 | | 891,474.20 |
| 11/10 | 3,918 | | 40451 | HOME DEPOT INC | 23.030 | | 80,144.22 |
| 11/10 | 5,702 | | 40686 | HEWLETT PACKARD CO | 32.290 | | 187,321.22 |
| 11/10 | 1,987 | | 41156 | INTEL CORP | 13.860 | | 204,052.32 |
| 11/10 | 5,597 | | 41391 | JOHNSON & JOHNSON | 61.320 | | 343,430.04 |
| 11/10 | 7,334 | | 41626 | J.P. MORGAN CHASE & CO | 41.820 | | 306,680.80 |
| 11/10 | 3,090 | | 41861 | KRAFT FOOD INC | 30.100 | | 93,309.00 |
| 11/10 | 4,053 | | 42096 | COCA COLA CO | 45.500 | | 184,573.50 |
| 11/10 | 2,316 | | 42331 | MCDONALDS CORP | 57.230 | | 132,636.68 |
| 11/10 | 2,316 | | 42566 | MEDTRONIC, INC | 40.300 | | 93,426.80 |
| 11/10 | 47,035 | | 42801 | SWI COMPANY | 18.260 | | 858,950.19 |
| 11/10 | 2,551 | | 43036 | ALTRIA GROUP INC | 16.890 | | 767,425.17 |
| 11/10 | 4,246 | | 43271 | MERCK & CO | 30.510 | | 129,714.46 |
| | | | | CONTINUED ON PAGE  9 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

MADE ☐ **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

MHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO            IL    60606

| Date | Page |
|---|---|
| 11/30/08 | 9 |

| Account Number | Account |
|---|---|
| 1-H0076-3-0 | ******0055 |

| Bought | Sold | Description | Price | Amount Debited | Amount Credited |
|---|---|---|---|---|---|
| 15,633 | | MICROSOFT CORP | 23.200 | 363,310.60 | |
| 7,913 | | ORACLE CORPORATION | 18.600 | 147,497.80 | |
| 3,737 | | OCCIDENTAL PETROLEUM CORP | 55.010 | 273,935.37 | |
| 3,088 | | PEPSICO INC | 57.500 | 177,031.40 | |
| 13,703 | | PFIZER INC | 17.960 | 246,653.88 | |
| 5,983 | | PROCTER & GAMBLE CO | 65.230 | 390,510.09 | |
| 14,053 | | PHILIP MORRIS INTERNATIONAL | 44.000 | | |
| 3,281 | | QUALCOMM INC | 37.310 | 122,545.11 | |
| 2,509 | | SCHLUMBERGER LTD | 50.500 | 126,804.50 | |
| 11,866 | | AT&T INC | 28.580 | 342,466.28 | |
| | | TIME WARNER INC | 11.410 | 161,577.43 | |
| | | UNITED PARCEL SVC INC | 54.420 | 105,103.60 | |
| | | CLASS B | | | |
| 3,474 | | U S BANCORP | 31.510 | 109,603.76 | |
| | | SPRINT NEXTEL CORP | | 168,935.20 | |
| 5,790 | | VERIZON COMMUNICATIONS | 32.300 | 187,515.20 | |
| 6,562 | | WELLS FARGO & CO NEW | 34.600 | 227,307.20 | |
| 42,439 | | WAL-MART STORES INC | 55.710 | 247,673.69 | |
| 10,422 | | EXXON MOBIL CORP | 75.600 | 507,760.60 | |
| | | FIDELITY SPARTAN | DIV | | |
| | | U S TREASURY MONEY MARKET | | | |
| | | DIV 11/10/08 | | | |
| 23,473 | | FIDELITY SPARTAN | | | 23,473.00 |
| | | U S TREASURY MONEY MARKET | | | |
| 1,850,000 | | U S TREASURY BILL | 99.875 | 1,847,687.50 | |
| 13130 | | DUE 3/12/2009 | | | |
| | | | | | |
| | | CONTINUED ON PAGE    10 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HRI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

| Date | Account number | Pages |
|------|----------------|-------|
| 11/30/08 | *****0055 | 10 |

| DATE | BROUGHT | BOUGHT OR RECEIVED | SOLD OR DELIVERED | TRANS# | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|---------|--------------------|--------------------|--------|-------------|-----------------|-------------------------------|--------------------------------|
| 11/10 | | 1,875,000 | | 13316 | U S TREASURY BILL DUE 03/19/2009 | 99.867 | | 1,872,506.25 |
| 11/10 | | | 1,925,000 | 13525 | U S TREASURY BILL DUE 3/19/2009 | | | |
| 11/10 | | 1,925,000 | | 13727 | U S TREASURY BILL DUE 03/26/2009 | 99.634 | | 1,927,970.50 |
| 11/10 | | | 1,875,000 | 13950 | U S TREASURY BILL DUE 3/26/2009 | | | |
| 11/10 | | 1,875,000 | | | U S TREASURY BILL DUE 4/02/2009 | 99.742 | | 1,929,802.50 |
| 11/10 | 23,052 | | | | U S TREASURY BILL DUE 4/02/2009 | 99.742 | | 1,870,162.50 |
| 11/10 | 50,000 | 50,000 | | 14178 | U S TREASURY BILL DUE 4/16/2009 | 99.686 | | 49,843.00 |
| 11/10 | | 50,000 | | 14400 | U S TREASURY BILL DUE 4/16/2009 | 99.685 | 49,843.00 | |
| 11/10 | 4,025 | | | 14527 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 235,922.50 | |
| 11/18 | 235,000 | | | 49375 | ANHEUSER-BUSCH COS INC | 70 | | 281,750.00 |
| 11/18 | | 99,830 | | 49610 | U S TREASURY BILL DUE 4/16/2009 | 99.830 | 276,532.50 | |
| 11/18 | 7,217 | | | 49848 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 7,217.00 | |
| | | | | | CONTINUED ON PAGE 11 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2
C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO        IL   60606

| Date | 11/30/08 |
| Your Account Number | ******0055 |
| Page | 11 |

| DATE | BOUGHT (Received In) | SOLD (Delivered Out) | DESCRIPTION | | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/39 | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | DIV | | | 3.78 |
| 11/19 | 30,246 | | FIDELITY SPARTAN DAY 11/19/08 | 1 | | | 30,246.00 |
| 11/19 | 2,575,000 | 51829 | U S TREASURY MONEY MARKET | 99,926 | | 2,573,094.50 | |
| 11/19 | | 54425 | U S TREASURY BILL DUE 11/26/2009 | | | | |
| 11/19 | 7,886 | 60868 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 7,886.00 | |
| 11/20 | 2,575,000 | 63824 | U.S. TREASURY BILL DUE 03/26/2009 | 99,965 | | | 1,573,021.50 |
| 11/20 | | 64062 | U S TREASURY BILL 3/26/2009 DUE 4/16/2009 | 99,967 | | 2,573,635.25 | |
| 11/20 | 386 | 64301 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 386.00 | |
| 11/25 | 653 | 64852 | APPLE INC | 85,070 | | 55,700.51 | |
| 11/25 | 1,232 | 64780 | ABBOTT LABORATORIES | 54,140 | | 86,749.48 | |
| 11/25 | 847 | 65018 | AMGEN INC | 53,630 | | 45,457.61 | |
| 11/25 | 3,125 | 65226 | BANK OF AMERICA | 12,980 | | 51,129.46 | |
| 11/25 | | 65132 | BANK OF NEW YORK MELLON CORP | 522,570 | | 243,305.24 | |
| 11/25 | 9,924 | | BANK OF NEW YORK MELLON CORP | 243,390 | | 12,849.58 | |
| 11/25 | 1,540 | 65970 | BRISTOL MYERS SQUIBB COMPANY | 20,140 | | 31,076.60 | |
| | | | CONTINUED ON PAGE  12 | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HRI INVESTMENT: TRUST #2
C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

Account Number: 1-H0076-3-0

Date: 11/30/08

Page: 12

| Date | Bought/Received | Sold/Delivered | Trans # | Description | Shares | Amount |
|---|---|---|---|---|---|---|
| 11/25 | 4,466 | | 66208 | CITI GROUP INC | 6,100 | 27,420.60 |
| 11/25 | 385 | | 66496 | COLGATE PALMOLIVE CO | 62,660 | 24,139.10 |
| 11/25 | 2,233 | | 66860 | COMCAST CORP | 25,970 | 30,720.01 |
| 11/25 | | | 66922 | CLA | | |
| 11/25 | 1,232 | | 67360 | CONOCOPHILLIPS | 45,100 | 55,612.20 |
| 11/25 | 4,620 | | 67398 | CISCO SYSTEMS INC | 14,970 | 69,345.40 |
| 11/25 | 1,155 | | 67636 | CVS CAREMARK CORP | 23,700 | 131,277.20 |
| 11/25 | 1,637 | | 67874 | CHEVRON CORP | 684,710 | 443,168.00 |
| 11/25 | 1,463 | | 68112 | THE WALT DISNEY CO | 19,760 | 28,966.88 |
| 11/25 | 559 | | 68350 | EXELON CORP | 48,760 | 284,721.86 |
| 11/25 | 154 | | 68588 | GENERAL ELECTRIC CO | 25,970 | 143,902.70 |
| 11/25 | 2,309 | | 68826 | GOOGLE | | 253,356.00 |
| 11/25 | 5,925 | | 69064 | HOME DEPOT INC | 19,530 | 23,616.77 |
| 11/25 | 1,070 | | 69302 | HEWLETT PACKARD CO | 12,530 | 103,242.25 |
| 11/25 | 4,668 | | 69540 | INTERNATIONAL BUSINESS MACHS | 75,680 | 84,949.82 |
| 11/25 | 2,233 | | 69778 | INTEL CORP | 122,270 | 126,821.45 |
| 11/25 | 2,726 | | 70016 | JOHNSON & JOHNSON | 57,650 | 81,342.76 |
| 11/25 | 1,155 | | 70254 | J.P. MORGAN CHASE & CO | 27,760 | 29,900.50 |
| 11/25 | 1,560 | | 70492 | KRAFT FOODS INC | 123,040 | 64,902.60 |
| 11/25 | 847 | | 70730 | COCA COLA CO | 55 | 46,618.00 |
| 11/25 | 924 | | 70968 | MCDONALDS CORP | 30,800 | 28,495.20 |
| 11/25 | 559 | | 71206 | MEDTRONIC INC | 16,250 | 226,340.25 |
| 11/25 | 1,637 | | 71444 | 3M COMPANY | | |
| 11/25 | 3,694 | | 71682 | ALTRIA GROUP INC | 25 | 42,417.00 |
| 11/25 | | | | MERCK & CO | | |

CONTINUED ON PAGE 15

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO        IL   60606

11/30/08

1-H0076-3-0        ******0055        13

| DATE | BOUGHT RECEIVED OR DELIVERED IN | SOLD DELIVERED OR RECEIVED OUT | MKT PRICE | DESCRIPTION | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/25 | 6,160 | 71920 | 18.100 | MICROSOFT CORP | 111,742.00 | |
| 11/25 | 3,080 | 72634 | 16.050 | ORACLE CORPORATION | 49,557.00 | |
| 11/25 | 992 | 72872 | 44.370 | OCCIDENTAL PETROLEUM CORP | 44,037.03 | |
| 11/25 | 11,232 | 73110 | 51.800 | PEPSICO INC | 83,065.00 | |
| 11/25 | 5,313 | 73348 | 15.320 | PFIZER INC | 81,607.16 | |
| 11/25 | 2,310 | 73586 | 61.940 | PROCTER & GAMBLE CO | 143,173.40 | |
| 11/25 | 1,617 | 73824 | 36.380 | PHILIP MORRIS INTERNATIONAL | 58,999.46 | |
| 11/25 | 1,509 | 74062 | 29.850 | QUALCOMM INC | 45,125.65 | |
| 11/25 | 924 | 74300 | 46.270 | SCHLUMBERGER LTD | 42,789.48 | |
| 11/25 | 25 | 74538 | | AT&T INC. | 155,684.00 | |
| 11/25 | 4,620 | 74776 | 33.690 | TIME WARNER INC. | 157,952.69 | |
| 11/25 | 2,589 | 75014 | 50.760 | UNITED PARCEL SVC INC | 39,115.20 | |
| | 776 | | | CLASS B | | |
| 11/25 | 3,386 | 75252 | 23.400 | U.S.BANCORP | 32,487.40 | |
| 11/25 | 1,770 | 75490 | 24.570 | VERIZON COMMUNICATIONS | 43,529.90 | |
| 11/25 | 2,235 | 75728 | 28.370 | WELLS FARGO & CO NEW | 63,435.21 | |
| 11/25 | 3,003 | 75966 | 23.820 | WAL-MART STORES INC | 71,651.46 | |
| 11/25 | 1,771 | 76204 | 51.450 | WYETH | 91,187.95 | |
| 11/25 | 1,078 | 76442 | 33.000 | EXXON MOBIL CORP | 35,617.00 | |
| 11/25 | 4,158 | 76680 | 72.000 | FIDELITY SPARTAN | 299,342.00 | |
| | | | DIV | U.S TREASURY MONEY MARKET | | *83 |
| | | | | DIV 11/25/08 | | |
| | | | | FIDELITY SPARTAN | | |
| 11/25 | 81,272 | 77256 | 1 | U S TREASURY MONEY MARKET | | 9,272.00 |
| | | | | CONTINUED ON PAGE 34 | | |

CONTINUED ON PAGE 34

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2
C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO        IL  60606

| (date) | BOUGHT | SOLD | TRN | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 13/25 | | 2,900,000 | 77511 | U S TREASURY BILL DUE 4/16/2009   4/16/2009 | 99.878 | | 2,896,462.00 |
| 11/25 | 77982 | | 77997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1. | 7,982,900. | |
| | | | | NEW BALANCE | | 3,696,742.13 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 30,196 | | | ALT. INC | 28.360 | | |
| | 26,622 | | | ABBOTT LABORATORIES | 53.390 | | |
| | 13,172 | | | ALTRIA GROUP INC | 15.060 | | |
| | 4,172 | | | AMGEN INC | 55.540 | | |
| | 5,608 | | | APPLE INC | 92.670 | | |
| | 38,691 | | | BANK OF AMERICA | 16.250 | | |
| | 77,658 | | | BANK OF NEW YORK MELLON CORP | 30.210 | | |
| | 44,105 | | | BAXTER INTERNATIONAL INC. | 52.900 | | |
| | 44,600 | | | BOEING CO | 42.630 | | |
| | 129,233 | | | BRISTOL MYERS SQUIBB COMPANY | 20.705 | | |
| | 77,654 | | | CVS CAREMARK CORP | 28.950 | | |
| | 13,885 | | | CHEVRON CORP | 79.010 | | |
| | 39,303 | | | CISCO SYSTEMS, INC | 16.540 | | |
| | 36,547 | | | CITIGROUP INC | 6.710 | | |
| | 13,233 | | | COCA-COLA CO | 45.370 | | |
| | 385 | | | COLGATE PALMOLIVE CO | 65.070 | | |
| | | | | CONTINUED ON PAGE   15 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

MADF  **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

H&1 INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO            IL    60606

| TAX PERIOD | PAGE | ACCOUNT NUMBER |
|---|---|---|
| 11/30/08 | 15 | ******0055 |

| TRADE DATE | SETTLEMENT DATE | TRANSACTION | AMOUNT |

| BOUGHT / RECEIVED | SOLD / DELIVERED | DESCRIPTION | PRICE SYMBOL | AMOUNT DEBITED / CREDITED |
|---|---|---|---|---|
| 19,327 | | COMCAST CORP CL A | 17.340 | |
| 30,276 | | CONOCOPHILLIPS | 52.520 | |
| 12,814 | | THE WALT DISNEY CO | 22.520 | |
| 539 | | EXELON CORP | 56.210 | |
| 35,052 | | EXXON MOBIL CORP | 80.150 | |
| 70,609 | | GENERAL ELECTRIC CO | 17.070 | |
| 13,425 | | GOLDMAN SACHS GROUP INC | 78.990 | |
| 1,304 | | GOOGLE | 292.960 | |
| 10,403 | | HEWLETT PACKARD CO | 35.240 | |
| 29,555 | | HOME DEPOT INC | 23.310 | |
| 59,411 | | INTEL CORP | 13.800 | |
| 9,128 | | INTERNATIONAL BUSINESS MACHS | 81.600 | |
| 24,776 | | J.P. MORGAN CHASE & CO | 33.650 | |
| 16,622 | | JOHNSON & JOHNSON | 58.580 | |
| 10,499 | | KRAFT FOODS INC | 26.960 | |
| 7,591 | | MCDONALDS CORP | 58.750 | |
| 14,668 | | MEDTRONIC INC | 30.520 | |
| 52,579 | | MERCK & CO | 26.420 | |
| 54,954 | | MICROSOFT CORP | 20.220 | |
| 5,712 | | OCCIDENTAL PETROLEUM CORP | 54.140 | |
| 26,499 | | ORACLE CORPORATION | 16.090 | |
| 16,232 | | PEPSICO INC | 55.400 | |
| 49,218 | | PFIZER INC | 16.430 | |
| 133,918 | | PHILLIP MORRIS INTERNATIONAL | 42.160 | |
| | | CONTINUED ON PAGE   16 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2
C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO       IL    60606

Date: 11/30/08
Account number: 1-H0UT6-3-0
Page: 16
Tax ID: ****-**0055

| BOUGHT Received In | SOLD Delivered Out | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|
| 20,135 | | | PROCTER & GAMBLE CO | 64.350 | |
| 13,084 | | | QUALCOMM INC | 33.520 | |
| 8,017 | | | SCHLUMBERGER LTD | 50.740 | |
| 7,982 | | | FIDELITY SPARTAN | 1 | |
| | | | U S TREASURY MONEY MARKET | | |
| 4,564 | | | 3M COMPANY | 66.930 | |
| 23,712 | | | TIME WARNER INC | 9.050 | |
| 14,736 | | | U S BANCORP | 28.980 | |
| 6,520 | | | UNITED PARCEL SVC INC | 57.600 | |
| | | | CLASS B | | |
| 13,530 | | | UNITED TECHNOLOGIES CORP | 52.530 | |
| 18,415 | | | VERIZON COMMUNICATIONS | 32.650 | |
| 14,996 | | | WAL-MART STORES INC | 55.880 | |
| 22,553 | | | WELLS FARGO & CO NEW | 26.050 | |
| 7,073 | | | INVESTMENT | | |

MARKET VALUE OF SECURITIES
LONG
SHORT
2,178,514,936.34

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL    60606

| | | | | | | |
|---|---|---|---|---|---|---|

YEAR-TO-DATE SUMMARY

DIVIDENDS
GROSS PROCEEDS FROM SALES

| BOUGHT | SOLD | DESCRIPTION | DATE | ACCOUNT NUMBER | | |
|---|---|---|---|---|---|---|

11/30/08    1-H0076-3-0    ********0055    17

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

| Date | Account Number | | Page |
|---|---|---|---|
| 11/30/08 | 1-H0076-4-0 | ******0055 | 1 |

| BOUGHT/RECEIVED | SOLD/DELIVERED | | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 1,006,444.00 |
| | 226 | 19995 | NOVEMBER 470 CALL | 20.300 | | 458,555.00 |
| 226 | | 19230 | S & P 100 INDEX | 20.500 | 463,526.00 | |
| | 156 | 31516 | NOVEMBER 460 PUT | | | 323,044.00 |
| 156 | | 31751 | S & P 100 INDEX | 13.800 | 215,436.00 | |
| | 193 | 30976 | NOVEMBER 460 PUT | | | 294,122.00 |
| 193 | | 44211 | S & P 100 INDEX | 16.800 | 324,433.00 | |
| | 575 | 30390 | NOVEMBER 475 PUT | | | 1,389,925.00 |
| 575 | | 30428 | DECEMBER 430 CALL | 30 | 3,725,575.00 | |
| | 382 | 30665 | DECEMBER 420 PUT | 1.500 | | 79,632.00 |
| 193 | | 30904 | NOVEMBER 470 CALL | .900 | 17,563.00 | |
| | 382 | 31142 | NOVEMBER 465 CALL | | | 11,713,213.00 |
| 193 | | 31380 | NOVEMBER 460 PUT | 59 | | 1,138,507.00 |
| | | | NOVEMBER 475 PUT | | | |
| | | | CONTINUED ON PAGE   2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HHI INVESTMENT TRUST #2

C/O HARRIS HOLDINGS, INC
200 SOUTH WACKER DR STE 3900
CHICAGO          IL   60606

| | | | DESCRIPTION | | | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/25 | 77 | 72158 | S & P 100 INDEX DECEMBER 330 CALL | 34 | | 261,723.00 |
| | | 72396 | S & P 100 INDEX DECEMBER 370 PUT | 23 | 181,771.50 | |
| | | | NEW BALANCE | | | |
| | 575 | | SECURITY POSITIONS | MKT PRICE | | |
| | | | S & P 100 INDEX DECEMBER 330 CALL | 23,300 | | 3,697,450.00 |
| | 77 | | S & P 100 INDEX DECEMBER 380 CALL | | | |
| | | | S & P 100 INDEX DECEMBER 420 PUT | 16,500 | | |
| | 575 | | S & P 100 INDEX DECEMBER 370 PUT | 85,100 | | |
| | 77 | | MARKET VALUE OF SECURITIES LONG 988,020.00 SHORT 1,809,450.00 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

## GRANTOR TRUST

The parties to this Trust Agreement are those persons listed on Schedule A attached hereto, each being a resident of the state listed opposite such person's name on Schedule A (each a "Grantor" and collectively the "Grantors"), and King Harris, a resident of Chicago, Illinois, Katherine P. Harris, a resident of Chicago, Illinois, and Toni H. Paul, a resident of Potomac, Maryland, as Trustees.

## ARTICLE I

### Definitions

1.1    "**Admission Date**" shall mean the date of this Agreement, and March 31, June 30, September 30 and December 31 of each year.

1.2    "**Capital Account**" of a Grantor shall mean an account maintained for each Grantor, which shall initially be credited with his Contribution, and which shall be adjusted on each Revaluation Date in accordance with the provisions of Article X hereof.

1.3    "**Code**" shall mean the Internal Revenue Code of 1986, as amended (or any corresponding provision of succeeding law).

1.4    "**Contribution**" of a Grantor shall mean the total amount of cash contributed to the Trust from time to time by such Grantor, as reflected in Schedule A attached hereto as it may be amended from time to time.

1.5    "**Net Asset Value**" shall mean the fair market value of the Trust Property, valued in accordance with Article IX.

1.6    "**Net Gain**" for any period shall refer to the amount, if any, by which (i) the Net Asset Value of the Trust as of the end of such period, minus the amount of any Contributions made during such period, and plus the amount of any withdrawals or distributions made during such period exceeds (ii) the Net Asset Value of the Trust as of the beginning of such period.

1.7    "**Net Loss**" for any period shall mean the amount, if any, by which (i) the Net Asset Value of the Trust as of the beginning of such period exceeds (ii) the Net Asset Value of the Trust as of the end of such period, minus the amount of any Contributions made during such period, and plus the amount of any withdrawals or distributions made during such period.

1.8    "**Net Capital Gain**" and "**Net Capital Loss**" for any period shall mean the amount of net capital gain or net capital loss (both long term and short term) of the Trust, as determined under the Code and the corresponding regulations.

1.9 "Net Ordinary Income" and "Net Ordinary Loss" for any period shall mean the amount of net ordinary income or net ordinary loss of the Trust, as determined under the Code and the corresponding regulations.

1.10 "Percentage Interest" shall mean the percentage interest that each Grantor shall have in the Trust Property, which shall be equal to the percentage that the Grantor's Capital Account bears to all of the Capital Accounts of all of the Grantors.

1.11 "Revaluation Date" shall mean each Admission Date and the date of termination in accordance with Article XI.

1.12 "Securities" shall mean capital stock, subscriptions, warrants, bonds, notes, debentures, depository receipts, trust receipts, contracts, commercial paper, certificates of deposit, treasury bills, bonds and notes, when-issued securities, and rights and options relating thereto, issued by any corporation, partnership, trust, stock exchange, the Federal Government or any State Government, foreign governments, or any political subdivision thereof, or by any other entity.

1.13 "Trust Property" shall mean the Contributions of each Grantor, and all investments and reinvestments thereof and additions thereto, so long as such property is held by the Trustees hereunder.

## ARTICLE II

### Trust Name and Address

2.1 This agreement and the trust hereby evidenced, as from time to time amended, may be designated the "HHI Investment Trust #2 dated August 15, 1995".

2.2 The principal office of the Trust shall be 333 Skokie Boulevard, Northbrook, Illinois. The Trustees may change the principal office of the Trust at any time by notice to the Grantors.

## ARTICLE III

### Declaration of Trust and Purpose

3.1 Each of the Grantors hereby appoints the Trustees as trustees hereunder and transfers, conveys, and assigns to the Trustees, in trust, the Contribution listed in schedule A opposite such person's name. The Trust Property will be held in trust, for the benefit of the Grantors, for the uses and purposes provided herein.

3.2 This Trust is formed solely for the purpose of buying, selling, exchanging, holding, trading and otherwise investing in Securities.

## ARTICLE IV

### Withdrawals and Distributions; Prohibition on Transfers

4.1    During the lifetime of the Grantors, the Trustees shall pay to each Grantor such part of the Trust Property, but not in excess of such Grantor's Percentage Interest as such Grantor may direct by notice to the Trustees not less than 15 days prior to any Admission Date.   Distributions pursuant to any such notice shall be made as soon as practicable after any such Admission Date.   Any undistributed income shall be added to principal.

4.2    No Grantor shall sell, transfer, assign, mortgage, grant a security interest in, or otherwise dispose of all or any part of his interest in the Trust or this instrument.

## ARTICLE V

### Trustees' Powers

5.1    Except as otherwise provided in this instrument, the Trustees shall have the following powers, and any others that may be granted by law, to be exercised as the Trustees, in their discretion, determine to be to the best interest of the Grantors:

(a)    To buy, sell, exchange, hold, trade and otherwise invest in Securities;

(b)    To exercise all rights, powers, and privileges and other incidents of ownership or possession with respect to Securities;

(c)    To purchase, sell and write covered put and call options, to sell securities short against the box, and to make purchases or sales increasing, decreasing, or liquidating such positions without any limitation as to the frequency of the fluctuations in such positions;

(d)    To acquire Securities on the basis of investment representation;

(e)    To open, maintain and close bank and brokerage accounts and draw checks or other orders for the payment of money, and to delegate to other persons the right to sign checks, withdraw and transfer funds and endorse items on behalf of the Trust and the Trustees;

(f)    To engage in short-term, speculative trading activities, resulting in a high portfolio turnover and substantial brokerage fees (provided, however, that the Trust shall not write any put options or uncovered call options, or sell any securities short unless the Trust owns or has the right to acquire the securities subject to the short sale);

(g)   To invest and reinvest the Trust Property without being limited by any statute or rule of law concerning investments by trustees;

(h)   To employ attorneys, auditors, depositaries, investment advisers, proxies and agents and to delegate to them any powers of the Trustees;

(i)   To hold property in the name of a nominee or in bearer form, with or without disclosure of the fiduciary relationship;

(j)   To determine in accordance with applicable rules of law the manner of ascertainment of income and principal and the allocation or apportionment between income and principal of all receipts and disbursements;

(k)   To take any action with respect to conserving or realizing upon the value of any Trust Property and with respect to foreclosures, reorganizations or other changes affecting the Trust Property;

(l)   To collect, pay, contest, compromise or abandon demands of or against the Trust Property, wherever situated;

(m)   To execute contracts, notes, conveyances and other instruments, including instruments containing covenants and warranties binding upon and creating a charge against the Trust Property;

(n)   To continue to exercise any powers or discretion hereunder for a reasonable period after the termination of the Trust, but only for so long as no rule of law relating to perpetuities would be violated;

(o)   To appoint or remove by written instrument any person or corporation authorized under the laws of the United States or of any State to administer trusts, wherever located, as Substitute Trustees as to part or all of the Trust Property, including property as to which the Trustees do not or cannot act, and such Substitute Trustees, except as specifically limited or provided by this or the appointing instrument, shall have all of the rights, powers and duties of the Trustees and shall remit the net income and proceeds of sale of any portion of such Trust Property to the Trustees;

(p)   To perform other acts necessary or appropriate for the proper administration of the Trust Property, execute and deliver necessary instruments and give full receipts and discharges;

(q)   To maintain one or more offices within or without the State of Illinois, and in connection therewith to rent or acquire office space, engage personnel and do such other acts as may be advisable or necessary in connection with such offices and personnel; and

(r)    To do everything necessary, proper, advisable or convenient for the accomplishment of the foregoing purposes, and to do all other things incidental to them or connected with them that are not forbidden by other law or by this Agreement.

5.2    The Trustees shall have the power to segregate Trust Property in a separate trust, to be held on the same terms and conditions as the original trust, if the Trustees have any concern that such property could cause potential liability under any federal, state or local law.

5.3    To the extent that any such requirements can legally be waived, no Trustee shall ever be required to give any bond as Trustee, to qualify before, be appointed by, or in the absence of a breach of trust account to, any court; or to obtain the order or approval of any court in the exercise of any power or discretion hereunder.

5.4    The Trustees shall submit an account of the receipts and disbursements and a statement of assets at least annually to each Grantor.

5.5    The Trustees shall be entitled to reasonable compensation for services in administering and distributing the Trust Property, and to reimbursement for expenses.

5.6    Except as otherwise specifically provided in this instrument, the Trustees may rely upon any notice, certificate, affidavit, letter, telegram or other paper or document believed by them to be genuine, or upon any evidence deemed by them to be sufficient, in making any payment or distribution hereunder. The Trustees shall incur no liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in the trust.

## ARTICLE VI

### Additional Grantors and Additions to Trust Property

6.1    The Trustees shall have the right to accept additional Grantors to the Trust from time to time, on each Admission Date; provided, however that whether any new Grantor shall be accepted, the actual date of admission, and the required Contribution shall be subject to the sole discretion of the Trustees. Each new Grantor will have an interest in the Trust equal to the percentage that his Contribution bears to the Net Asset Value of all assets in the Trust on his Admission Date.

6.2    The Trustees shall have the right to accept additional Contributions from Grantors from time to time on each Admission Date, in the minimum amount of $10,000. Whether any additional Contributions are accepted, the actual date of acceptance, and the amount of the additional Contribution permitted shall be subject to the sole discretion of the Trustees.

- 5 -

6.3    Upon the admission of any new Grantor, such Grantor shall sign a copy of this Trust Agreement, and by doing so shall accept all of the terms and conditions hereof. The Trustees shall amend Schedule A to reflect additional Grantors and additional Contributions by a Grantor, shall date and certify a copy of each such amended Schedule A, and shall attach a copy to this Trust Agreement.

## ARTICLE VII

### Investment Advisers

7.1    The Trustees shall have the right to enter into an investment advisory agreement with any investment adviser registered as such with the Securities and Exchange Commission under the Investment Advisers Act of 1940. Any such agreement shall include such terms and conditions as the Trustees shall, in their sole discretion, deem appropriate. Any such agreement may grant to the adviser discretionary authority with respect to any or all of the Trust Property. The Trustees may terminate any such advisory agreement at any time and enter into agreements with other registered investment advisers from time to time; provided, however that the Trust shall never have more than one advisory contract at any one time.

7.2    While an adviser shall be acting as such, the Trustees shall be permitted to follow the advice, suggestions or recommendations of the adviser with respect to transactions in Securities, and the Trustees shall not have any liability for following any such advice, suggestions and recommendation, or for the acts of any adviser who shall have been granted discretionary authority.

## ARTICLE VIII

### Trustees

8.1    Edward J. Schwartz shall be the successor Trustee to King Harris, to serve as Trustee in his place if King Harris ceases to act as Trustee. Pam F. Szokol, William J. Friend and Scott C. Friend (each a child of Katherine P. Harris) shall be successor Trustees to Katherine P. Harris and Toni H. Paul, and to each other, in the order named, to serve as Trustee if such person's predecessor ceases to act as Trustee. If any individual Trustee fails or ceases to act, and no successor Trustee is designated and acting, the remaining Trustees or Trustee shall continue to act as such, with all the powers and discretion of the Trustees, and no other successor individual Trustee or Trustees shall be appointed.

8.2    At any time or times, the Grantors entitled to receive or have the benefit of at least two thirds (2/3rds) of the Percentage Interest may designate an individual or individuals or a qualified corporation (defined below) to serve as Co-Trustee or Co-Trustees or as successor Trustee or Trustees by written instrument delivered to the individual or corporation so designated. Such designation shall be revocable until such time as it takes effect. If more than one designation exists, the latest in time shall be deemed effective.

8.3    The individual Trustee or Trustees, from time to time acting, at any time or from time to time, may designate an individual or individuals or a qualified corporation (defined below) to serve as Co-Trustee or Co-Trustees or as successor Trustee or Trustees by written instrument delivered to the individual or corporation so designated. Such designation shall be revocable until such time as it takes effect. If more than one designation exists, the latest in time shall be deemed effective.

8.4    Any person acting or named to act in a fiduciary capacity hereunder or required to be legally competent in order to act hereunder shall be considered to have ceased or failed to act or to be legally incompetent to act when a physician whom such person has consulted within the prior three (3) years has certified that such person does not have physical or mental capacity to manage his or her financial affairs.

8.5    The Grantors entitled to receive or have the benefit of at least two-thirds (2/3rds) of the Percentage Interest may remove any Trustee by giving written notice to such Trustee. Edward J. Schwartz may be removed as Trustee at any time by the other Trustees (or Trustee, if there is only one other Trustee).

8.6    A qualified corporation shall be a bank or trust company authorized under the laws of the United States or of any State to administer trusts, which, in the case of a bank, has a total equity capital of not less than One Hundred Million Dollars ($100,000,000) or, in the case of a trust company, has assets under management of not less than Five Hundred Million Dollars ($500,000,000).

8.7    Any Trustee may resign as Trustee at any time by written notice to the other Trustee or Trustees, his or her successor Trustee (if any) and the Grantors.

8.8    Whenever more than two Trustees are acting, the decision of a majority of the Trustees shall control. In the event that any Trustee shall not concur or participate in the action taken by the majority, such non-concurring or non-participating Trustee shall have no responsibility or liability for such action. The designation of a temporary Trustee pursuant to Section 8.10 shall not result in an increase in the number of Trustees which constitute a majority of the Trustees for purposes of this Section.

8.9    Any Trustee or Trustees, at any time or from time to time, by signed instrument delivered to any other Trustee, may delegate to such other Trustee any or all powers, duties and discretion (including the power to convey real property) either for a specified time or until the delegation is revoked by a similar instrument. Any person dealing with the Trustee to whom such delegation has been given may rely without inquiry upon such Trustee's certificate with respect to any delegation.

8.10    Any Trustee or Trustees, at any time or from time to time, by signed instrument delivered to any of the named successor Trustees, may delegate to such successor Trustee any or all powers, duties and discretion (including the power to convey real property) of the Trustee or Trustees making such delegation. Such delegation may be either for a specified time or until the delegation is revoked by a similar instrument. Upon any such delegation, and provided such person agrees to act pursuant to such delegation (such

- 7 -

agreement to be conclusively evidenced by the taking of any action by such person pursuant to such delegation), such successor Trustee shall be a temporary Trustee hereunder, solely for such purpose and/or period specified in the delegation. Any person dealing with the temporary Trustee to whom such delegation has been given may rely without inquiry upon such temporary Trustee's certificate with respect to any delegation.

8.11    Any individual Trustee or Trustees, at any time or from time to time, by a signed instrument delivered to the corporate Trustee, may delegate to it any or all powers, duties and discretion under this instrument (including the power to convey real property) either for a specified time or until the delegation is revoked by a similar instrument. Any person dealing with the corporate Trustee may rely without inquiry upon its certificate with respect to any delegation.

8.12    For administrative convenience, if a majority of the Trustees agree, any one of the then acting Trustees may sign any instrument or document on behalf of all the Trustees and any person may rely without inquiry on the signature of one Trustee.

8.13    No person paying money or delivering property to or otherwise dealing with any Trustee shall be obliged to inquire as to the Trustee's rights, powers and privileges or to see to the application of any money or other property delivered to the Trustee. A certification by a Trustee acting hereunder that this trust instrument is in full force and effect, that an act is done in accordance with the provisions of this trust instrument, or that the Trustee is duly empowered to perform an act shall be conclusive evidence in favor of any person or organization relying thereon.

8.14    No one Trustee shall be held liable or responsible in any way for any acts or failures to act or any loss or damage chargeable against another Trustee.

8.15    Upon termination of this Trust or upon the resignation or removal of the last Trustee, the Grantors entitled to receive or have the benefit of at least two-thirds (2/3) of the Percentage Interest may approve the accounts of and give a full and complete release and discharge to any Trustee hereunder. Any such approval, release and discharge shall be binding upon all the Grantors and shall constitute: (a) a complete bar to any action by any Grantor to question any transaction occurring during the period covered by the account so approved; and (b) a valid and effective release with respect to any such transaction, with all the force and effect of a decree of a court of competent jurisdiction judicially settling such accounts and discharging such Trustee from any and all liability in respect to the administration of the Trust Property for the period covered by such account.

8.16    Any successor Trustee hereunder shall have all the title, powers and discretion of the Trustee succeeded, without the necessity of any conveyance or transfer. No successor Trustee shall be personally liable for any act or omission of any predecessor or for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Property prior to his, her or its becoming a Trustee, nor be required to inquire into or take any notice of the prior administration of the Trust Property. With the approval of a majority in interest of the Grantors, a successor Trustee

- 8 -

may accept the account rendered and the property received as a full and complete discharge to the predecessor Trustee without incurring any liability for so doing.

8.17    Any corporate Trustee at any time acting hereunder shall be the custodian of the Trust Property and of the books and records of the Trustees, and may perform for the Trustees all acts necessary for the acquisition and transfer of personal property and money, including the signing or endorsement of checks, receipts, stock certificates and other instruments, and no person need inquire into the propriety of any such act.

8.18    The guardian or conservator of the estate of a Grantor under legal disability, or the parent or surviving parent or guardian of the person of a minor Grantor for whose estate no guardian has been appointed, may act for the Grantor in signing any instrument hereunder.

8.19    Any corporate successor to the trust business of any corporate Trustee named herein or acting hereunder shall become Trustee in place of its predecessor, without the necessity of any conveyance or transfer.

## ARTICLE IX

### Net Asset Value

9.1    The Net Asset Value of the Trust as of any date shall be determined by the Trustees, and shall be equal to the sum of the Trust's cash, cash equivalents and Securities, minus the amount of any liabilities of the Trust.

9.2    Cash and cash equivalents shall be valued at their face amount.

9.3    Listed options will be valued at their last sales prices on the date of determination on the largest national securities exchange (measured by dollar volume of options transactions) on which such options shall have traded on such date (or, in the event that the date of determination is not a date upon which a national securities exchange on which such options are listed was open for trading, on the last prior date on which such a national securities exchange was so open), or if no sales occurred on either of the foregoing dates, at the mean between the "bid" and "asked" prices on the largest national securities exchange (measured by dollar volume of options transactions) on which such options are traded, on the date of determination (or, in the event that the date of determination is not a date upon which such national securities exchange was open for trading, on the last prior date on which such national securities exchange was so open), or if no "bid" and "asked" prices are available, at such value as the Trustees may determine. Premiums for the sale of listed options written by the Trust will be included in the assets of the Trust, and the market value of such options will be included as a liability of the Trust.

9.4    Over-the-counter options will be valued at fair value as determined by the Trustees, based upon representative brokers' bids or valuations. If such bids or valuations

- 9 -

are not available, or in the opinion of the Trustees do not represent fair value, over the counter options will be valued as follows:

(a)    With respect to calls purchased by the Trust:

(i)    If the market value of the underlying securities exceeds the exercise price, calls will be valued at the greater of (A) the premium amortized on a straight-line basis over the option period, or (B) such excess; and

(ii)    If the exercise price exceeds the market value of the underlying securities, calls will be valued at the greater of (A) the premium amortized on a straight-line basis over the option period less the decline in the market value of the underlying securities during the option period, or (B) zero.

(b)    With respect to puts purchased by the Trust:

(i)    If the market value of the underlying securities exceeds the exercise price, puts will be valued at the greater of (A) the premium amortized on a straight-line basis over the option period less the increase in the market value of the underlying securities during the option period, or (B) zero; and

(ii)    If the exercise price exceeds the market value of the underlying securities, puts will be valued at the greater of (A) the premium amortized on a straight-line basis over the option period or (B) such excess.

(c)    With respect to the over-the-counter options written by the Trust:

(i)    Premiums will be included in the assets of the Trust, and the unamortized portion of such premiums will be included as a liability of the Trust; premiums received will be amortized on a straight-line basis over the option period;

(ii)    A call will be treated as a liability to the extent that the market value of the underlying securities exceeds the sum of (A) the unamortized premium and (B) the exercise price; and

(iii)    A put will be treated as a liability to the extent that the exercise price exceeds the sum of (A) the unamortized premium and (B) the market value of the underlying securities.

9.5    Securities which are listed on a national securities exchange shall be valued at their last sales prices on the date of determination on the largest national securities exchange on which such Securities shall have traded on such date (or, if the date of determination is not a date upon which a national securities exchange on which such Securities are listed was open for trading, on the last prior date on which such Securities

- 10 -

exchange was so open, but not more than ten (10) days prior to the date of determination). If no such sales of such Securities occurred on either of the foregoing dates, such Securities shall be valued at the "bid" price for long positions and "asked" price for short positions on the largest national securities exchange on which such Securities are traded, on the date of determination (or, if the date of determination is not a date upon which such national securities exchange was open for trading, on the last prior date on which such national securities exchange was so open, but not more than ten (10) days prior to the date of determination). Securities which are not listed shall be valued at their last closing "bid" prices if held "long" by the Trust and their last closing "asked" prices if held "short" by the Trust. Securities for which no such market prices are available, or as to which, in the judgment of the Trustees, such market prices exceed the amount realizable by the Trust upon a sale thereof, shall be valued at the fair value thereof as determined by the Trustees.

9.6     If for any reason the method described herein for the valuation of any Trust asset is inconsistent with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations issued thereunder, then the method in the Code and the regulations shall control. Subject to the foregoing, all values assigned to Securities by the Trustees shall be final and conclusive as to all the Grantors.

## ARTICLE X

### Capital Accounts; Allocations of Income of Loss

10.1     An opening Capital Account shall be established for each Grantor, which shall be the amount of his initial Contribution. The Capital Account of each such Grantor shall be adjusted on each Revaluation Date as follows:

(a)     The amount of any Contribution by such Grantor since the prior Revaluation Date shall be added to his Capital Account.

(b)     The amount of any distributions to such Grantor since the prior Revaluation Date shall be subtracted from his Capital Account.

(c)     His Percentage Interest of any Net Gain for the period between the last Revaluation Date and the current Revaluation Date shall be credited to his Capital Account.

(d)     His Percentage Interest of any Net Loss for the period between the last Revaluation Date and the current Revaluation Date shall be debited to his Capital Account.

10.2     All Net Ordinary Income and Net Ordinary Loss for any period shall be allocated among the Grantors in proportion to their Percentage Interests during the period.

10.3     All Net Capital Gain or Net Capital Loss, if any, shall be allocated to each Grantor as determined by the Trustees in such equitable manner and in accordance with

- 11 -

the Code and the Regulations issued thereunder, as will equalize, to the extent practicable, the Federal income tax treatment of the Grantors and the economic allocations made under Section 10.1.

10.4    Except with respect to matters as to which the Trustees are granted discretion hereunder, the opinion of the independent public accountants retained by the Trustees from time to time shall be final and binding with respect to all computations and determinations required to be made under this Agreement; provided, however, that the Trustees shall not be required to retain independent accountants. If any computation or determination involves a choice of different alternatives, the accountants, if any, making such computations and determinations shall be permitted to rely upon the judgment of the Trustees.

10.5    Notwithstanding any provision herein to the contrary, if in the judgment of the Trustees, the allocations for federal income tax purposes shall not satisfy the requirements of the Code or regulations issued thereunder or shall not properly take into account any expenditure by, or receipt of, the Trust, the Trustees shall adjust the allocations accordingly.

## ARTICLE XI

### Termination of Trust

11.1    This Trust will terminate upon the death of any Grantor; provided, however, that until the Trustees shall have actual notice of any such death, the Trustees shall be entitled to assume that no such death shall have occurred, and they shall be entitled to deal with the Trust Property as though the Trust did not terminate.

11.2    This Trust may be terminated by any Grantor on any Admission Date, by the giving of notice by such Grantor to the Trustees not less than 15 days prior to any Admission Date.

11.3    This Trust will terminate, without any action by the Grantors or the Trustees, on July 6, 2003, unless sooner terminated pursuant to the other provisions hereof.

## ARTICLE XII

### Distribution Upon Termination of the Trust

12.1    Upon termination of the Trust, the Trustees shall distribute to each of the Grantors, and to the estate of any deceased Grantor, each Grantor's proportionate share of the Trust Property.

- 12 -

## ARTICLE XIII

### Indemnification

13.1    The Trust and each of its Grantors shall indemnify and hold harmless the Trustees and their beneficiaries, heirs, executors, successors and assigns, free and harmless from any and all liabilities of the Trust, including any liabilities incurred by the Trust in excess of the value of the Trust Property.

13.2    The Trust and each of its Grantors shall indemnify and hold harmless the Trustees and their beneficiaries, heirs, executors, successors, assigns, and each of them who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including any action by or in the right of the Trust) by reason of any acts, omissions, or alleged acts or omissions, arising out of his, her or its activities as or on behalf of the Trust or the Grantors under this Agreement, or in furtherance of the interests of the Trust or the Grantors, against expenses for which such person has not otherwise been reimbursed (including attorney's fees, judgments, fines and amounts paid in settlement) actually and reasonably incurred by any such person in connection with such action, suit or proceeding so long as such person did not act fraudulently, or in a manner which constituted willful misconduct or gross negligence, or, with respect to any criminal action or proceeding, had no reasonable cause to believe such conduct was unlawful.  During the course of any investigation, proceeding or other matter, the Trust shall pay the legal fees and expenses of any person who may be entitled to indemnification hereunder, notwithstanding that at the time of such payment it shall not have been finally determined whether such person is actually entitled to indemnification, provided such Person agrees to reimburse the Trust if it is finally determined that he, her or it was not entitled to such indemnification.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not of itself create a presumption that the person acted fraudulently, or in a manner which constituted willful misconduct or gross negligence, or, with respect to any criminal action or proceeding, had reasonable cause to believe that its or his conduct was unlawful.

## ARTICLE XIV

### Miscellaneous

14.1    The laws of the State of Illinois shall govern the interpretation and validity of the provisions of this instrument and all questions relating to the management, administration, investment and distribution of the Trust hereby created.

14.2    This Trust may be amended, in whole or in part, by the unanimous action of all of the Grantors, except that, if amended, the duties, powers and responsibilities of the Trustees shall not be changed substantially without the Trustees' written consent.

- 13 -

14.3    Whenever necessary hereunder, and where the context admits, the singular term and the related pronoun shall include the plural, the plural the singular, the feminine the masculine and the masculine the feminine. All Trustees at any time are sometimes for convenience herein individually and collectively called Trustee, unless the context otherwise requires.

14.4    Any notice, request, demand or other communication required or permitted under this Trust Agreement shall be in writing and shall be deemed to have been given when delivered personally or when mailed by certified mail, return receipt requested, addressed to the Trustees at their addresses below their signatures, and to the Grantors at their addresses set forth in Schedule A, or to such other address or addresses as may be specified from time to time by notice to the Trustee; provided, however, that any notice of change of address shall not be effective until its receipt by the party to be charged therewith.

14.5    This Trust Agreement may be signed in counterparts, each of which shall be deemed an original, and together all of which shall constitute one and the same document.

**HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995**
**Acceptance by Trustees**

The undersigned accept the HHI Investment Trust #2 dated August 15, 1995, as of that date.

King Harris, as Trustee

Address:    c/o Pittway Corporation
            200 S. Wacker Drive
            Suite 700
            Chicago, IL 60606-5802

Katherine P. Harris, as Trustee

Address:    1000 N. State Street
            Unit #1
            Chicago, IL 60610-2862

Toni H. Paul, as Trustee

Address:    10827 Lockland Road
            Potomac, MD 20854

Each of the undersigned, each a named successor Trustee, hereby agrees that upon the performance of any act pursuant to any delegatin under Section 8.10 of the foregoing Trust, he or she will have accepted the foregoing Trust and will act as a temporary Trustee thereunder, solely during the term of, and for the purposes set forth in, such delegation; provided, however, that none of the following persons, solely by execution hereof, shall be deemed to have accepted any such delegation. The execution hereof by the undersigned shall not be deemed to be an acceptance of the foregoing Trust as Trustee for purposes of Section 8.1 hereof.

Edward J. Schwartz

Pam F. Szokol

William J. Friend

Scott C. Friend

## HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995

### Grantor Signature Page

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

Pam F. Szokol Trust dated 02/18/93

By: _King Harris, Trustee_
King Harris, Trustee

William J. Friend Trust
dated 06/22/95

By: _King Harris, Trustee_
King Harris, Trustee

Scott C. Friend Trust of 1984 under
Trust Agreement dated 11/21/84

By: _King Harris, Trustee_
King Harris, Trustee

## HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995

### Grantor Signature Page

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

Bette D. Harris Grandchildren's Trust for the Children of Katherine Harris - Pam Friend Szokol under Trust Agreement dated 01/13/59

By: _King Harris, Trustee_
King Harris, Trustee

By: _Katherine Harris, Trustee_
Katherine Harris, Trustee

Bette D. Harris Grandchildren's Trust for the Children of Katherine Harris - William Friend under Trust Agreement dated 01/13/59

By: _King Harris, Trustee_
King Harris, Trustee

By: _Katherine Harris, Trustee_
Katherine Harris, Trustee

**HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995**

**Grantor Signature Page**

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

Bette D. Harris Grandchildren's Trust for the Children of King Harris - John B. Harris under Trust Agreement dated 01/13/59

By: _____
    King Harris, Trustee

By: _____
    Katherine Harris, Trustee

Bette D. Harris Grandchildren's Trust for the Children of Toni Paul under Trust Agreement dated 01/13/59

By: _____
    King Harris, Trustee

By: _____
    Katherine Harris, Trustee

King W. W. Harris Trust for Children under Trust Agreement dated 12/15/76

By: _____
    Katherine Harris, Trustee

By: _____
    Denise Saul, Trustee

By: _____
    Sidney Barrows, Trustee

## HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995

### Grantor Signature Page

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

Bette    D.    Harris Grandchildren's Trust for the    Children    of    King Harris - John B. Harris under    Trust    Agreement dated 01/13/59

By: _____
    King Harris, Trustee

By: _____
    Katherine Harris, Trustee

Bette    D.    Harris Grandchildren's Trust for the Children of Toni Paul under    Trust    Agreement dated 01/13/59

By: _____
    King Harris, Trustee

By: _____
    Katherine Harris, Trustee

King W. W. Harris Trust for Children under Trust Agreement dated 12/15/76

By: _____
    Katherine Harris, Trustee

By: _____
    Denise Sall, Trustee

By: _____
    Sidney Barrows, Trustee

**HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995**

**Grantor Signature Page**

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

Toni   Harris   Paul
Children's   Trust   dated
12/15/76

By: _____
King Harris, Trustee

By: _____
Katherine Harris, Trustee

The   Harris   Family
Foundation

By: _____
Neison Harris, President

Katherine   Harris
Custodian  for  John  B.
Harris Under the Illinois
Uniform  Gifts  to  Minors
Act under Agreement dated
12/01/76

By: _____
Katherine   Harris,
Custodian

King Harris Custodian for
Charles Henry Paul under
the   Illinois   Uniform
Gifts to Minors Act under
Agreement dated 06/01/79

By: _____
King Harris, Custodian

**HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995**

**Grantor Signature Page**

IN WITNESS WHEREOF, the undesigned Grantors under the HHI Investment Trust #2 dated August 15, 1995, have set their hands and seals as Grantors this 15th day of August, 1995.

King Harris Custodian for Kelly Lynn Paul under the Illinois Uniform Gifts to Minors Act under Agreement dated 10/01/80

By: _____
    King Harris, Custodian

King Harris Custodian for Alan Harris Paul under the Illinois Uniform Gifts to Minors Act under Agreement dated 12/20/84

By: _____
    King Harris, Custodian

King Harris Custodian for Laurie Beth Paul under the Illinois Uniform Gifts to Minors Act under Agreement dated 12/20/84

By: _____
    King Harris, Custodian

**HHI INVESTMENT TRUST #2 DATED AUGUST 15, 1995**
**Acceptance by Trustees**

The undersigned accept the HHI Investment Trust #2 dated August 15, 1995, as of that date.

King Harris, as Trustee

Address:    c/o Pittway Corporation
            200 S. Wacker Drive
            Suite 700
            Chicago, IL 60606-5802

Katherine P. Harris, as Trustee

Address:    1000 N. State Street
            Unit #1
            Chicago, IL 60610-2862

Toni H. Paul, as Trustee

Address:    10827 Lockland Road
            Potomac, MD 20854

Each of the undersigned, each a named successor Trustee, hereby agrees that upon the performance of any act pursuant to any delegation under Section 8.10 of the foregoing Trust, he or she will have accepted the foregoing Trust and will act as a temporary Trustee thereunder, solely during the term of, and for the purposes set forth in, such delegation; provided, however, that none of the following persons, solely by execution hereof, shall be deemed to have accepted any such delegation. The execution hereof by the undersigned shall not be deemed to be an acceptance of the foregoing Trust as Trustee for purposes of Section 8.1 hereof.

Edward J. Schwartz

Pam F. Szokol

William J. Friend

Scott C. Friend

## AGREEMENT AMONG THE TRUSTEES
### OF HHI INVESTMENT TRUST #2
#### Dated as of September 10, 2004

Pursuant to paragraph 8.12 of the HHI Investment Trust #2 trust agreement dated August 15, 1995 (the "Trust"), the undersigned, being all of the Trustees of the Trust, agree that, for administrative convenience, any one of the Trustees may sign any instrument or document on behalf of all of the Trustees and any person may rely without inquiry on the signature of one Trustee.

This agreement may be terminated by any Trustee by giving written notice thereof to the other Trustees. This agreement will terminate at such time as any other individual or qualified corporation becomes a Co-Trustee or successor Trustee pursuant to paragraphs 8.1, 8.2 or 8.3 of the Trust unless the Co-Trustee or successor Trustee accepts this agreement by giving written notice thereof to the other Trustees.

King Harris

Date: 9/3/04

Katherine P. Harris

Date: 9/15/04

Toni H. Paul

Date: 9/8/04