

Gary S. Goldberg
45 Holly Oak Dr.
Voorhees, NJ 08043
Telephone: (856) 772-9661
Facsimile: (856) 772-9661

*email: garygoldberg@comcast.net*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,
                        Plaintiff,

       v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

I, Gary S. Goldberg, hereby object to the Notice of Trustee's

Determination of Claim dated July 31, 2009 ("Determination Letter"), attached as Exhibit A, as

described herein.

1

## BACKGROUND

1.      I am "customer," as defined by the Securities Investor Protection

Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.      My final BMIS statement for Account Number 1ZB394, dated

November 30, 2008, states that I own securities valued at $168,984.62 ("Final BMIS

Statement").

3.      On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission*

*v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring

proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt.

No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the

liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C.

78fff-1(a).

4.      On December 23, 2008, the Court issued an Order directing the Trustee to

disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines.

*See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice

and claim forms to BMIS's customers in accordance with the Court's Order.

5.      The December 23, 2008 Order further provided that, to the extent the BMIS

Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall

notify such claimant by mail of his determination that the claim is disallowed, in whole or in

part, *and the reason therefor* . . . ." *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.      On or about January 1, 2008, I submitted a

2

customer claim form to SIPC setting forth my claim in the amount of $168,984.62. *See*

Customer Claim for Acct. No. 1ZB394 (Exhibit B) ("Customer

Claim"). My Final BMIS Statement was submitted with my Customer

Claim. *See* Customer Claim (Exhibit B).

7.    On October 19, 2009, the BMIS Trustee sent me the Determination Letter

denying my claim.

*See* Determination Letter (Exhibit A).

8.    I hereby object to the Determination Letter for the reasons

described below.

### GROUNDS FOR OBJECTION

9.    <u>First Objection</u>. The Determination Letter fails to comply with this Court's

December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and

deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5

[Dkt. No. 12]. Included with my Customer Claim was my final BMIS statement

showing a final balance of $168,984.62. *See* Customer Claim (Exhibit B). The Final

BMIS statement is the best evidence of the amount owed based on the Debtor's books and

records. Accordingly, the claim should be allowed in the full amount of $168,984.62.

10.    <u>Second Objection</u>. The Trustee has set forth no legal basis for disallowing my

Customer Claim in full as filed. The only explanations set forth in the Determination

Letter are that (1) "[n]o securities were ever purchased for your account," and (2) the "money

you withdrew from your account ... set forth in Table 1 ... is greater than the amount that was

deposited with BLMIS for the purchase of securities." Determination Letter at 1 (Exhibit A).

Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)     does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)     is inadequate to rebut the prima facie validity of my Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)     violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11.     Third Objection. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to my Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1. See also "Another View: Unwinding Madoff Fraud Fairly," Deal Blog. NY times.com (May 6, 2009). This is incorrect for the following reasons:

(a)     The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be
> determined by --

4

(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B) any indebtedness of such customer to the debtor on the filing date;

*********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)    SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by me stated that I owned a list of blue chip securities. It makes no difference whether the securities were purchased:

A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on my Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

(c)    I    deposited funds in BMIS in the expectation the amount would grow, my account statements showed such growth, and the balance on my Final BMIS

Statement reflects the benefit of this bargan. The Trustee's formula is an improper and wholly

inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir.

2007), the Court declined to set aside an arbitration award that appeared to have applied an

expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the

"money in/money out" formula as not reflecting the expectations of the parties. The Court

explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria [the dishonest broker], not to hide under a rock or
> lock in a safe, but for the express purpose of investment, with a
> hope -- indeed a reasonable expectation -- that it would grow.
> Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs
> only the $21 million they originally invested less their subsequent
> withdrawals, is a wholly inadequate measure of damages. Had
> Gruttadauria invested Plaintiffs' money as requested, their funds
> would like grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they
> hired an honest broker . . . , would have placed their money in the
> stock market during one of the strongest markets in recent
> memory. In fact, the fictitious statements issued by Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly invested, indicate that Plaintiffs' accounts would have
> grown to more than $37.9 million (even accounting for the
> withdrawal of more than $31.3 million). Plaintiffs thus could have
> reasonably believed that they were entitled to the full $37.9 million
> balance shown, regardless of the amounts of their previous
> deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added). This applies precisely to my

claim.

(d)     The Trustee's Determination Letter is contrary to SIPC's own policies and

practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO,

and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA

liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that

6

SIPC would replace securities listed on customer account statements, even if the securities had

never been purchased:

> Harbeck:  [I]f you file within sixty days, you'll get the securities,
> without question. Whether -- if they triple in value, you'll get the
> securities. . . . Even if they're not there.
>
> Court:  Even if they're not there.
>
> Harbeck:  Correct.
>
> Court:  In other words, if the money was diverted, converted --
>
> Harbeck:  And the securities were never purchased.
>
> Court.  Okay.
>
> Harbeck:  And if those positions triple, we will gladly give the
> people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y.

July 28, 2000) (Exhibit C).  The Second Circuit's discussion of SIPC's claims processing in *New

Times* further indicates that, with respect to customers who thought they were invested in listed

securities, SIPC paid customer claims based on the customers' final account statements, even

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably.  Although they were not actually invested in
> those real funds -- because Goren never executed the transactions -
> - the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed.  As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up to
> $500,000 in SIPC advances.  The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims.  Furthermore,
> the Trustee notes that, if they were checking on their mutual funds,
> the "securities claimants," . . . could have confirmed the existence
> of those funds and tracked the funds' performance against Goren's
> account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at

23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA

"reasonable and legitimate claimant expectations on the filing date are controlling even where

inconsistent with transactional reality" such as when the customer receives a confirmation

reflecting a purchase, "even where the purchase never actually incurred and the debtor instead

converted the cash deposited by the claimant to fund that purchase").[1] I am situated

no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, my

claim should be recognized in full.

12.    In the event that the Court should determine that claimed gains on deposited funds

should not be allowed, then in the alternative, I am entitled to recover interest on

such deposited amounts.  Such interest is required as a matter of state law, and the United States

Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to

interest, are determined by state law.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S.

443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is

that state law governs the substance of claims, Congress having generally left the determination

of property rights in the assets of a bankrupt's estate to state law.").

(a)    Under New York law, which is applicable here, funds deposited with the

Debtors under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y.

Gen. Oblig. § 5-501, *et seq.*  Accordingly, Customer claims should be recalculated by adding

interest to all funds deposited by customers such as myself.

---

[1] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost ... misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

8

(b)    Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on my deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13.    <u>Fourth Objection.</u>  The BMIS Trustee's action in reducing the amount shown on my Customer Claim by any prior gains reflected on his final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

14.    <u>Fifth Objection.</u>  The Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The Trustee is required to state and prove when the Ponzi scheme began.

15.    <u>Sixth Objection.</u>  I was required to pay significant income taxes on distributions which the Trustee has alleged are fictitious. The Trustee has justified his proposed

method of calculating claims is fair and reasonable because fictitious gains should not compete

dollar for dollar with claims for funds actually deposited by customers, and his proposed method

equalizes the treatment of all customers. This justification is not correct insofar as customers did

not have the use of reported but fictitious gains because of required income tax payments. Even

assuming *arguendo* the Trustee's method is correct, my customer claims should be

adjusted by adding all amounts I actually paid as income taxes on allegedly fictitious gains to

equalize my treatment with that of other customers. See *SEC v. Byers*, No. 08-7104, 2009 U.S.

Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing

claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared

with customers receiving distributions).

16.    <u>Seventh Objection</u>. SIPA provides that (a) SIPC shall pay the first $500,000 of

each customer claims, and (b) customers have an unsecured claim against customer property for

the balance of their claims which is paid pro rata with other customers. See 15 USCS § 78fff-3

("In order to provide for prompt payment and satisfaction of net equity claims of customers of

debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required

to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall

share ratably in . . . customer property on the basis and to the extent of their net equities").

Documents which accompanied the Trustee's Notice of Determination did not adequately

preserve my full rights in connection with the contested claims including, without

10

limitation, my ability to continue to assert the rights in the Third, Fourth, Fifth and Sixth Objection herein, and also, required certain assignments and releases which the Trustee is not authorized to obtain.

## RELIEF REQUESTED

17.     For the reasons stated herein, my Customer Claim should be allowed in its entirety.

18.     For the reasons stated herein, the Court should direct SIPC to issue immediate payment to me in the amount of $168,984.62 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

19.     The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and I will file a response.

20.     I request such other relief as may be just and equitable.

## CONCLUSION

21.     I reserve the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of my right to object on any additional grounds.

22.    I reserve all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

23.    I reserve all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24.    I incorporate by reference all reservations of rights set forth in my Customer Claim.

Dated: October 27, 2009

Gary S. Goldberg
45 Holly Oak Dr.
Voorhees, NJ  08043
Tel: (856) 772-9661
Fax: (856) 772-9661

email: garygodlberg@comcast.net

*Exhibit A*

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

GARY S GOLDBERG
45 Holly Oak Drive
Vorhees, NJ 08043

Dear MR. GOLDBER:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB394 designated as Claim Number 001341:

Your claim for a credit balance of $168,984.62 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $46,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $28,659.77). As noted, no securities were ever purchased by BLMIS for your account. Any and

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($17,340.23) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 10/2/2000 | TRANS FROM 1ZA39330 | $100,000.00 | $28,659.77 |
| **Total Deposits:** | | $100,000.00 | $28,659.77 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/10/2006 | CHECK | ($3,000.00) | ($3,000.00) |
| 3/20/2007 | CHECK | ($21,000.00) | ($21,000.00) |
| 10/10/2007 | CHECK | ($12,000.00) | ($12,000.00) |
| 5/20/2008 | CHECK | ($10,000.00) | ($10,000.00) |
| **Total Withdrawals:** | | ($46,000.00) | ($46,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | $54,000.00 | ($17,340.23) |

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: _856  566  6718_

HOME: _856  772  9661_

Taxpayer I.D. Number (Social Security No.)
_021 - 52 - 2108_

Account Number:   1ZB394
GARY S GOLDBERG
45 HOLLY OAK DRIVE
VOORHEES, NJ  08043

(If incorrect, please change)

**NOTE:**   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

***************************************************************************

1.     Claim for money balances as of **December 11, 2008**:
       a.     The Broker owes me a Credit (Cr.) Balance of        $ _168,984,62_
       b.     I owe the Broker a Debit (Dr.) Balance of           $_____

502180406



c.    If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."
If you wish to make a payment, **it must be enclosed**
with this claim form.          $_____

d.    If balance is zero, insert "None."    _____

2.    Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a. The Broker owes me securities | See Section 1a |  |
| b. I owe the Broker securities |  |  |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| See statement for acent #1-?B 394-3 Dated 11/30/08 ✓ |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                    2



information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.    Have you or any member of your family
      ever filed a claim under the Securities
      Investor Protection Act of 1970?  if
      so, give name of that broker.          _____    ✓

      Please list the full name and address of anyone assisting you in the
      preparation of this claim form:_____

      _____.

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.

Date __/ / 14 / 09__    Signature _Jerry L. Goldberg_

Date _____    Signature_____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

MARY S GOLDBERG
45 HOLLY OAK DRIVE
VOORHEES        NJ        08043

*Final B m I s  St ate me nt*

| YOUR ACCOUNT NUMBER | PERIOD ENDING | PAGE |
|---|---|---|
| 1-ZB394-3-0 | 11/30/08 | 1 |

YOUR TAX PAYER IDENTIFICATION NUMBER: *********2108

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | 7,487.78 | |
| 126 | | 1491 | WELLS FARGO & CO NEW | 29.800 | 3,759.80 | |
| 90 | | 1993 | HEWLETT PACKARD CO | 34.900 | 3,144.00 | |
| 78 | | 5817 | WAL-MART STORES INC | 55.830 | 4,357.74 | |
| 51 | | 6319 | INTERNATIONAL BUSINESS MACHS | 87.270 | 4,452.77 | |
| 189 | | 10143 | EXXON MOBIL CORP | 72.880 | 13,781.32 | |
| 207 | | 10645 | INTEL CORP | 14.510 | 3,011.57 | |
| 99 | | 14971 | JOHNSON & JOHNSON | 59.500 | 5,901.42 | |
| 135 | | 19296 | J.P. MORGAN CHASE & CO | 38.530 | 5,206.55 | |
| 72 | | 23622 | COCA COLA CO | 44.660 | 3,217.52 | |
| 42 | | 27948 | MCDONALDS CORP | 55.370 | 2,329.54 | |
| 78 | | 32274 | MERCK & CO | 28.550 | 2,229.90 | |
| 285 | | 36600 | MICROSOFT CORP | 21.810 | 6,226.85 | |
| 144 | | 40926 | ORACLE CORPORATION | 17.300 | 2,496.20 | |
| 57 | | 53904 | APPLE INC | 100.780 | 5,746.76 | |
| 33 | | 54406 | PEPSICO INC | 56.410 | 1,865.42 | |
| 243 | | 58230 | PFIZER INC | 16.940 | 4,119.77 | |
| 57 | | 58732 | ABBOTT LABORATORIES | 54.610 | 3,114.77 | |
| 108 | | 62556 | PROCTER & GAMBLE CO | 64.080 | 6,924.64 | |
| 39 | | 63058 | AMGEN INC | 59.160 | 2,308.24 | |
| 75 | | 66882 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 3,273.00 | |
| 180 | | 67384 | BANK OF AMERICA | 21.590 | 3,893.20 | |
| 60 | | 71208 | QUALCOMM INC | 33.770 | 2,028.20 | |
| 195 | | 71710 | CITI GROUP INC | 12.510 | 2,446.45 | |

CONTINUED ON PAGE    2

IN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
MADF | INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

GARY S GOLDBERG
45 HOLLY OAK DRIVE
VOORHEES          NJ    08043

YOUR ACCOUNT NUMBER: 1-Z8394-3-0
PERIOD ENDING: 11/30/08
PAGE: 2
YOUR TAX PAYER IDENTIFICATION NUMBER: ******2108

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/12 | 45 | | 75534 | SCHLUMBERGER LTD | 49.480 | 2,227.60 | |
| 11/12 | 108 | | 76036 | COMCAST CORP | 16.510 | 1,787.08 | |
| 11/12 | 213 | | 79860 | CL A AT&T INC | 27 | 5,759.00 | |
| 11/12 | 54 | | 80362 | CONOCOPHILLIPS | 52.510 | 2,833.54 | |
| 11/12 | 36 | | 84186 | UNITED PARCEL SVC INC CLASS B | 52.040 | 1,874.44 | |
| 11/12 | 219 | | 84688 | CISCO SYSTEMS INC | 16.730 | 3,671.87 | |
| 11/12 | 63 | | 88512 | U S BANCORP | 29.530 | 1,862.39 | |
| 11/12 | 75 | | 89014 | CHEVRON CORP | 73.530 | 5,510.25 | |
| 11/12 | 36 | | 92838 | UNITED TECHNOLOGIES CORP | 55.160 | 1,991.76 | |
| 11/12 | 381 | | 93340 | GENERAL ELECTRIC CO | 19.630 | 7,469.03 | |
| 11/12 | 102 | | 97164 | VERIZON COMMUNICATIONS | 30.410 | 3,105.02 | |
| 11/12 | 9 | | 97666 | GOOGLE | 337.400 | 3,030.60 | |
| 11/12 | | 100,000 | 24097 | U S TREASURY BILL DUE 2/12/2009 | 99.936 | | 99,936.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 79.01 |
| 11/12 | | 64,250 | 19201 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 64,250.00 |
| 11/12 | 277,807 | | 28569 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 277,807.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 3.41 |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

SHELLY OAK DRIVE
NJ 08043

GOLDBERG

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-ZB394-3-0 | 11/30/08 | **********2108 | 3 |

| SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| 27,807 | 54107 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 27,807.00 |
| 25,000 | 58535 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 24,981.50 | |
| 11,817 | 63143 | FIDELITY SPARTAN U S TREASURY MONEY MARKET 3/26/2009 | 1 | 11,817.00 | |
| | | NEW BALANCE | | 15,869.45 | |
| | | SECURITY POSITIONS | MKT PRICE | | |
| 213 | | AT&T INC | 28.560 | | |
| 57 | | ABBOTT LABORATORIES | 52.390 | | |
| 39 | | AMGEN INC | 55.540 | | |
| 33 | | APPLE INC | 22.670 | | |
| 180 | | BANK OF AMERICA | 16.250 | | |
| 75 | | CHEVRON CORP | 79.010 | | |
| 219 | | CISCO SYSTEMS INC | 16.540 | | |
| 195 | | CITI GROUP INC | 8.290 | | |
| 72 | | COCA COLA CO | 46.870 | | |
| 108 | | COMCAST CORP CL A | 17.340 | | |
| 54 | | CONOCOPHILLIPS | 52.520 | | |
| 189 | | EXXON MOBIL CORP | 80.150 | | |
| 381 | | GENERAL ELECTRIC CO | 17.170 | | |

CONTINUED ON PAGE 4

(13)

STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

GARY S GOLDBERG

45 HOLLY OAK DRIVE
VOORHEES                    NJ    08043

YOUR ACCOUNT NUMBER
1-ZB394-3-0

PERIOD ENDING
11/30/08

PAGE
4

YOUR TAX PAYER IDENTIFICATION NUMBER
*********2108

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 9 | | | GOOGLE | 292.960 | | |
| | 90 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 207 | | | INTEL CORP | 13.800 | | |
| | 51 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 135 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 99 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 42 | | | MCDONALDS CORP | 58.790 | | |
| | 78 | | | MERCK & CO | 26.720 | | |
| | 205 | | | MICROSOFT CORP | 20.220 | | |
| | 144 | | | ORACLE CORPORATION | 16.090 | | |
| | 57 | | | PEPSICO INC | 56.700 | | |
| | 243 | | | PFIZER INC | 16.430 | | |
| | 108 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 75 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 60 | | | QUALCOMM INC | 33.570 | | |
| | 45 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 11,817 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | | | | U S BANCORP | 26.980 | | |
| | 63 | | | UNITED PARCEL SVC INC CLASS B | 57.600 | | |
| 25,000 | | | | U S TREASURY BILL DUE: 03/26/2009        3/26/2009 | 99.971 | | |
| | 36 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE  5 | | | |

CONTINUED ON PAGE 5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| SOLD<br>DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED<br>TO YOUR ACCOUNT | AMOUNT CREDITED<br>TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| | | VERIZON COMMUNICATIONS | 32.650 | | |
| | | WAL-MART STORES INC | 55.880 | | |
| | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | | |
| | | MARKET VALUE OF SECURITIES | | | |
| | | LONG | | | |
| | | 168,984.62 | | | |
| | | SHORT | | | |

YOUR ACCOUNT NUMBER
1-ZB394-3-0

PERIOD ENDING
11/30/08

PAGE
5

YOUR TAX PAYER IDENTIFICATION NUMBER
*********2108

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

Y GOLDBERG

HURLY OAK DRIVE

RULES

NJ   08043

**YOUR ACCOUNT NUMBER** 1-ZB394-3-0

**PERIOD ENDING** 11/30/08

**PAGE** 6

**YOUR TAX PAYER IDENTIFICATION NUMBER** **-**-***2108

STATEMENT FOR INCOME TAX PURPOSES

| GING | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | YEAR-TO-DATE SUMMARY | | | |
| | | | DIVIDENDS | | | 1,179.13 |
| | | | GROSS PROCEEDS FROM SALES | | | 815,161.93 |

(16)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------- )
In the Matter of:                      )
                                       )
NEW TIMES SECURITIES                   )
SERVICES, INC.                         )
                                       )
                   Debtor              )
                                       )
-------------------------------------- )

1) Application filed by proposed class claimants to
authorize and approve the filing of a class proof of claim
and for a certification of the putative class and to
shorten time for the hearing

Memorandum by proposed class claimants

Memorandum by Plaintiff Securities Investor Protection
Corporation

Memorandum of law by Trustee James W. Giddens

Affidavit of Derek J. T. Adler in opposition

                        United States Bankruptcy
                        Court
                        Westbury, New York

                        July 28, 2000
                        10:00 a.m.

B E F O R E:

          HONORABLE STAN BERNSTEIN
          United States Bankruptcy Judge

A P P E A R A N C E S:

          HUGHES HUBBARD & REED LLP
               Attorney for James W. Giddens, Trustee
          One Battery Park Plaza
          New York, New York  10004
               BY:  JAMES W. KOBAK, JR., ESQ.
                    DANIEL S. LUBELL, ESQ.

37

1          THE COURT:  Okay, so, you're telling me that

2     this is very different from the open transaction.

3          MR. HARBECK:  Correct.

4          THE COURT:  Okay, so, now we're dealing with a

5     closed transaction, where the money is there, you have

6     interest in a --

7          MR. HARBECK:  The securities are there.

8          THE COURT:  -- real --

9          MR. HARBECK:  Not the money is there.  The

10    securities are supposed to be there.

11         THE COURT:  No, no -- yeah, you have -- you

12    have an ownership interest in the securities; namely,

13    shares of the mutual fund, of a mutual fund that is real,

14    existing as of the petition date.

15         MR. HARBECK:  Dreyfus, Janus, you name it.

16         THE COURT:  Okay.

17         MR. HARBECK:  Now, what Congress did is it said

18    it wants to give the Trustee and SIPC a very good idea of

19    what securities have to -- that the Trustee is going to

20    have to go out into the marketplace and buy.  So, if you

21    file within sixty days, you'll get the securities, without

22    question.  Whether -- if they triple in value, you'll get

23    the securities.

24         But, if --

25         THE COURT:  Even -- even if --

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

38

MR. HARBECK:  Even if they're not there.

THE COURT:  Even if they're not there.

MR. HARBECK:  Correct.

THE COURT:  In other words, if the money was diverted, converted --

MR. HARBECK:  And the securities were never purchased.

THE COURT:  Okay.

MR. HARBECK:  And, if those positions triple, we will gladly give the people their securities positions.

THE COURT:  But, you've got to jump.

MR. HARBECK:  But, you've got to act fast, yeah.  And, Congress did that --

THE COURT:  Because -- because --

MR. HARBECK:  -- because of the fluctuations.

THE COURT:  -- because there's a concern -- because there's a concern that the value of this mutual fund might skyrocket and it's going to cost SIPC a lot more money.

MR. HARBECK:  Six months down the line, that's right.

THE COURT:  Okay, all right.  And, you don't want people playing games with you.

MR. HARBECK:  That's correct.

THE COURT:  Deciding when they're going to --

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692