7. On or about March 3, 2009, Mr. Rappaport submitted a customer claim form to SIPC, setting forth his claim in the amount of $20,838,043.73. *See* Rappaport Customer Claim for Acct. No. 1-CM701 (Exhibit B) ("Rappaport Customer Claim"). This figure is comprised of $16,838,043.73, the amount set forth on Mr. Rappaport's Final BMIS Statement, plus the $4,000,000 that Mr. Rappaport wired to BMIS on December 3, 2008. *Id.* Mr. Rappaport's Final BMIS Statement and documentation relating to his December 3, 2008 wire transfer were submitted with the Rappaport Customer Claim. *See* Rappaport Customer Claim (Exhibit B).

8. On May 15, 2009, the BMIS Trustee sent Mr. Rappaport the Determination Letter allowing Mr. Rappaport's claim only in the amount of $12,600,000.00, rather than $20,838,043.73, the total amount that Mr. Rappaport claimed. *See* Determination Letter (Exhibit A).

9. Mr. Rappaport hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

10. First Objection. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with Mr. Rappaport's Customer Claim was his final BMIS statement showing a final balance of $16,838,043.73 and documents demonstrating that Mr. Rappaport wired an additional $4,000,000 to BMIS on December 3, 2008. *See* Rappaport Customer Claim (Exhibit B). The Final BMIS statement is the best evidence of the amount owed based on the Debtor's books and records, and the Trustee has admitted the wired amount. *See* Determination

3



Letter at Table 1 (Exhibit A). Accordingly, the claim should be allowed in the full amount of $20,838,043.73.

11. <u>Second Objection</u>. The Trustee has set forth no legal basis for disallowing the Rappaport Customer Claim in full as filed. The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) the "claim is allowed for . . . the amount of money you deposited with BLMIS for the purchase of securities as outlined in Table 1." Determination Letter at 1 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)    is inadequate to rebut the prima facie validity of the Rappaport Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at * (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

12. <u>Third Objection</u>. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Rappaport Customer Claim on the ground that

Exhibit C

"net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1. This is incorrect for the following reasons:

(a) The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b) SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by Mr. Rappaport stated that he owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing

Exhibit C

> date, the amendments . . . would satisfy customers' legitimate
> expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Mr. Rappaport's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

       (c)    The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted --
>
> Harbeck: And the securities were never purchased.
>
> Court: Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed

6


Exhibit C

securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004). Mr. Rappaport is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, his claim should be recognized in full.

13. In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Mr. Rappaport is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y.



Exhibit C

Gen. Oblig. § 5-501, *et seq.* Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Mr. Rappaport.

(b)   Under New York law, which is applicable here, customers are entitled to any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Mr. Rappaport's deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

14.   <u>Fourth Objection</u>. The BMIS Trustee's action in reducing the amount shown on Mr. Rappaport's Customer Claim by any prior gains reflected on his final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

15.   <u>Fifth Objection</u>. The BMIS Trustee has sought to condition Mr. Rappaport's receipt of any SIPC funds (including undisputed amounts) on the execution of a Partial Assignment and Release that would "release and forever discharge the SIPA Trustee and SIPC . . . from any and all claims arising out of or relating to [Mr. Rappaport's] BMIS Account, the Customer Claim filed with the SIPA Trustee . . . , and any and all circumstances giving rise to the Customer Claim . . . ." *See* Determination Letter and Partial Assignment and Release attached thereto at 2-3 (Exhibit A). There is no legal basis for requiring such a Partial


Exhibit C

Assignment and Release, and the Trustee's actions attempt to compel Mr. Rappaport to give up substantial rights which are disputed as a condition to receiving amounts that are undisputed. Indeed, conditioning the payment of funds to which customers are statutorily entitled on the execution of a release is contrary to the provisions of SIPA which direct that customer claims be paid "promptly." *See* 15 U.S.C. § 78fff(a)(1) (noting that one of the purposes of a SIPA liquidation proceeding is "to distribute customer property and . . . otherwise satisfy net equity claims of customers . . . as *promptly as possible* after the appointment of a trustee."); 15 U.S.C. § 78fff-2(b) ("[T]he trustee shall *promptly* discharge . . . all obligations of the debtor to a customer . . . by the . . . making of payments to or for the account of such customer."). Moreover, the demand for a release and assignment violates specific provisions of SIPA providing limited subrogation rights to the BMIS Trustee, which do not include the assignment and release sought by the BMIS Trustee. *See, e.g.*, 15 U.S.C. § 78fff(a)(3) (providing that Trustee has "rights of subrogation as provided in this chapter"); 15 U.S.C. § 78fff-2(c)(3) (providing that Trustee's rights as subrogee are subordinate to rights of customers to customer property). In addition, the Trustee's demand is both unconscionable and contrary to public policy and should be stricken.

16.  <u>Sixth Objection</u>. SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claims, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 USCS § 78fff-3 ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). Here, the BMIS Trustee has acknowledged in the Determination Letter $12,600,000 of Mr. Rappaport's

9

Exhibit C

claim is undisputed -- an amount far in excess of the $500,000 amount Mr. Rappaport is entitled to receive from SIPC. As such, SIPC is obligated to pay Mr. Rappaport $500,000 regardless of how the disputed portion of the claim is resolved. Under these circumstances, the BMIS Trustee's failure to pay the $500,000 immediately violates SIPA's mandate that payment be "prompt," is not justified by any statutory provision, unjustly enriches SIPC, and seeks to compel Mr. Rappaport into surrendering a significant portion of his claim without consideration or compensation in order to obtain funds to which he is entitled as a matter of statute. Mr. Rappaport is entitled to receive immediate payment of $500,000, plus interest from the date of the determination and appropriate equitable relief as determined by the Court.

### RELIEF REQUESTED

17. For the reasons stated herein, the Rappaport Customer Claim should be allowed in its entirety.

18. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Rappaport in the amount of $500,000, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

19. The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Mr. Rappaport will file a response.

20. Mr. Rappaport requests such other relief as may be just and equitable.

10



## CONCLUSION

21.  Mr. Rappaport reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Rappaport's right to object on any additional grounds.

22.  Mr. Rappaport reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

23.  Mr. Rappaport reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24.  Mr. Rappaport incorporates by reference all reservations of rights set forth in the Rappaport Customer Claim.

Dated: June 12, 2009

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher A. Seeger
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

*Attorneys for Martin Rappaport*

Exhibit C