**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff,                    Adv. Pro. 08-01789 (BRL)

            v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.



SIPA Liquidation

NOV - 6 2009

U.S. BANKRUPTCY COURT, SDNY

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Janis Weiss, ("Ms. Weiss"), by her attorneys, hereby objects to the Notice of

Determination of Claim dated October 19, 2009 (the "Determination Letter"), attached as

Exhibit A, for the reasons stated below.

1.    Ms. Weiss is a "customer," as defined by the Securities Investor Protection

      Act of 1970 ("SIPA), of Bernard L. Madoff Investment Securities, LLC

      ("BLMIS").

2.    Ms. Weiss filed a timely claim against BLMIS in the amount of

      $1,659,988.50 with respect to her BLMIS Account No. 1W0084. This claim

      has been designated by the Trustee as Claim Number 000954 (the "Claim").

3.    The Determination Letter gives notice that the Trustee has denied the Claim

      but fails to set forth the reasons for that determination and fails to disclose any

      facts to support the adjustment in the amount of an internal transfer of assets

      that occurred on July 14, 1997. Ms. Weiss disagrees with the adjustment

made by the Trustee and asserts that the Determination Letter is legally insufficient to rebut the prima facie validity of the Claim.

4.    A single line on Table 1 attached to the Determination Letter purports to show the adjustment to the Claim amount without offering any rationale for the accounting judgments that have been made. This transfer of funds from one account to another, while central to the Trustee's determination, is devoid of any details to support the conclusion that the amount transferred into Ms. Weiss's account over twelve years ago actually includes any fictitious gain.

5.    As described in Table 1, funds totaling $451,413.95 were transferred from an earlier account designated 1W001010 to Ms. Weiss's Account No. 1W0084. Rather than giving credit for the full amount of this transfer, the Trustee has chosen to recognize only $229,123.72 as the starting principal balance for purposes of the various deposits and withdrawals shown in Table 1[1].

6.    The Determination Letter offers no explanation to justify this material downward adjustment in the account balance other than the general unsupported statement that the transferor account "did not have sufficient principal to effectuate the full transfer." The Determination Letter takes the position that the disregarded amounts from 1997 are "fictitious gains that were fabricated by BLMIS" but does nothing to demonstrate the truth of this bald assertion as it relates to the Claim.

---

[1] Table 1 correctly lists a $1 million deposit to the account on April 21, 2003 and various withdrawals that occurred during the period from March 31, 2000 through October 6, 2008. The Trustee made no adjustments to this cash deposit or to any of these withdrawals.

2

7.   Here the allegedly fictitious gains reflected in the amounts transferred in 1997 represent the entire basis for the Trustee's determination to deny the Claim in its entirety. The swing in value is significant. But for the adjustment, amounts listed in the books and records of BLMIS, less withdrawals, would produce a positive balance in the account of $146,034.40 instead of a deficit of $76,255.83. $222,290.23 has been erased from the account without adequate explanation and without even trying to show why any portion of the transferred funds properly should be excluded from the account balance. Because of this complete failure to explain the adjustment, the Determination Letter does not properly seek to deny allowance of the Claim.

8.   Many other customers have received substantially similar notices of the Trustee's determination of their claims and have formally opposed these determinations. Ms. Weiss joins in these other objections relating to the use by the Trustee of a "cash in/cash out" methodology for calculating net equity. This approach is not supported by applicable legal authorities and appears calculated to lead to the denial of many claims in their entirety. While this methodology removes all fictitious gains, it has proven to be detrimental to the interests of a multitude of customers. Ms. Weiss also makes the following additional objections:

(a) The Determination Letter fails to comply with the bankruptcy court's December 23, 2008 Order directing the Trustee to satisfy customer claims in accordance with "the Debtor's books and records." [ECF Doc. # 12]. Ms. Weiss relied on the Debtor's books and records and had a

legitimate expectation that her account held assets having a value of $1,659,988.50.

(b) The Determination Letter is deficient in failing to set forth a legal basis for calculating the amount of the Claim in the manner set forth in Table 1 and is otherwise unsubstantiated. There is no reason given for adjusting the amount of the Claim, and the letter states no relevant facts and no legal theories underlying the decision of the Trustee to deny the Claim. Consequently, the Determination Letter is insufficient to rebut the prima facie validity of the Claim as provided in § 502(a) of the Bankruptcy Code and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.

(c) The Determination Letter is a shocking disappointment. The letter inflicts incremental harm by taking away an anticipated source of recovery for the benefit of a customer who has already suffered a catastrophic loss as a result of the fraud at BLMIS. Ms. Weiss is a retired individual who has relied over the years upon the assets in her account at BLMIS for her maintenance and support and who had no reason to suspect that her investments ever were at risk. She also reasonably has relied upon the protection afforded by SIPA itself and still is counting on that protection.

(d) The adjustment is unsustainable as a matter of law. In effect, the Trustee is exercising self-help to strong-arm a result that may not be achieved even if he were to utilize all available legal remedies. In the case of Ms. Weiss, the so-called fictitious gains that are being disallowed are so old at

4

this point that they are incontestable, even if it could be shown that BLMIS was engaged in fraudulent activities as of that early period. There has been no showing that any of the gains realized more than a decade ago in account 1W001010 are the result of any fraudulent activity impacting that account, and even if such activity could be proven, the questioned gains from 1997 and prior years are barred by the statute of limitations and now are beyond the reach of the Trustee's avoiding powers. The adjustment made by the Trustee blithely assumes a victory in a fraudulent conveyance litigation that he should not win. The adjustment should be reversed and the Claim amount should be recalculated.

(e) The calculations performed by the Trustee treat the funds deposited with BLMIS as if they had been placed under a mattress instead of having been invested with an insured brokerage firm. For purposes of the calculations on Table 1, it is assumed that no earnings have accrued for a period of more than twelve years. This distorts the rights of Ms. Weiss and necessarily understates the amount of her Claim. The funds deposited by Ms. Weiss are entitled to earn interest, and the calculations on Table 1 should be further adjusted to reflect interest earned on these funds.

## RELIEF REQUESTED

For the reasons stated, Ms. Weiss disagrees with the Determination Letter and requests that (i) the Claim be allowed in the full amount of $1,659,988.50 together with interest; (ii) the Determination Letter be stricken and the Trustee recalculate amounts payable with interest and without regard to the adjustment taken in connection with the transfer between accounts that took place on July 14, 1997, (iii) SIPC be required to promptly pay all amounts due with respect to the Claim, (iv) a hearing be scheduled to consider allowance of the Claim, the Determination Letter and this objection, (v) to the extent that the Trustee persists in seeking to deny the Claim, the Trustee agree to enter into a discovery stipulation requiring the Trustee to state in detail all pertinent facts, legal theories and authorities that support the Determination Letter and produce all documents that relate directly or indirectly to the deposits, withdrawals and adjustment listed on Table 1, and (vi) if needed, that a further evidentiary hearing be scheduled to resolve any factual disputes relating to allowance of the Claim.

SHERMAN, CITRON & KARASIK, P.C.

By: _____
Howard Karasik
605 Third Avenue, 25th Floor
New York, New York 10158
Telephone: (212) 455-0450
Facsimile: (212) 986-1455

Attorneys for Janis Weiss

Exhibit A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Janis Weiss
415 East 54th Street, Apt 10C
New York, NY 10022

Dear Ms. Weiss:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1W0084 designated as Claim Number 000954:

Your claim for a credit balance of $1,659,988.50 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,305,379.55), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $1,229,123.72). As noted, no securities were ever purchased by BLMIS for your account. Any

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($76,255.83) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

2

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| **Table 4** | | | |
| **DEPOSITS** | | | |
| 7/14/1997 | TRANS FROM 1W001010 | $451,413.95 | $229,123.72 |
| 4/21/2003 | CHECK | $1,000,000.00 | $1,000,000.00 |
| **Total Deposits:** | | $1,451,413.95 | $1,229,123.72 |
| | | | |
| **WITHDRAWALS** | | | |
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 3/31/2000 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/18/2000 | CHECK | ($38,996.12) | ($38,996.12) |
| 7/7/2000 | CHECK | ($20,842.52) | ($20,842.52) |
| 10/11/2000 | CHECK | ($14,839.45) | ($14,839.45) |
| 1/10/2001 | CHECK | ($12,972.28) | ($12,972.28) |
| 4/6/2001 | CHECK | ($30,591.45) | ($30,591.45) |
| 7/9/2001 | CHECK | ($20,187.66) | ($20,187.66) |
| 10/9/2001 | CHECK | ($15,014.66) | ($15,014.66) |
| 1/11/2002 | CHECK | ($23,100.90) | ($23,100.90) |
| 4/10/2002 | CHECK | ($8,028.32) | ($8,028.32) |
| 7/8/2002 | CHECK | ($28,476.88) | ($28,476.88) |
| 10/7/2002 | CHECK | ($35,664.36) | ($35,664.36) |
| 1/10/2003 | CHECK | ($12,705.82) | ($12,705.82) |
| 4/9/2003 | CHECK | ($14,475.47) | ($14,475.47) |
| 7/8/2003 | CHECK | ($46,569.46) | ($46,569.46) |
| 10/9/2003 | CHECK | ($58,215.80) | ($58,215.80) |
| 1/8/2004 | CHECK | ($24,296.09) | ($24,296.09) |
| 4/8/2004 | CHECK | ($34,838.53) | ($34,838.53) |
| 7/7/2004 | CHECK | ($53,683.75) | ($53,683.75) |
| 10/7/2004 | CHECK | ($45,091.37) | ($45,091.37) |
| 1/7/2005 | CHECK | ($34,818.11) | ($34,818.11) |
| 4/7/2005 | CHECK | ($34,881.40) | ($34,881.40) |
| 7/7/2005 | CHECK | ($36,759.91) | ($36,759.91) |
| 7/22/2005 | STOP PAYMENT | $36,759.91 | $36,759.91 |
| 7/25/2005 | CHECK | ($36,759.91) | ($36,759.91) |
| 10/7/2005 | CHECK | ($33,467.11) | ($33,467.11) |
| 1/9/2006 | CHECK | ($54,315.46) | ($54,315.46) |
| 4/7/2006 | CHECK | ($42,109.60) | ($42,109.60) |
| 7/10/2006 | CHECK | ($45,780.47) | ($45,780.47) |
| 10/6/2006 | CHECK | ($81,343.93) | ($81,343.93) |
| 1/8/2007 | CHECK | ($43,336.37) | ($43,336.37) |
| 4/4/2007 | CHECK | ($38,235.88) | ($38,235.88) |
| 7/6/2007 | CHECK | ($49,504.74) | ($49,504.74) |

4

| | | | |
|---|---|---|---|
| 10/4/2007 | CHECK | ($52,270.44) | ($52,270.44) |
| 1/8/2008 | CHECK | ($41,198.67) | ($41,198.67) |
| 4/7/2008 | CHECK | ($20,488.28) | ($20,488.28) |
| 7/7/2008 | CHECK | ($92,875.59) | ($92,875.59) |
| 10/6/2008 | CHECK | ($25,402.70) | ($25,402.70) |
| **Total Withdrawals:** | | ($1,305,379.55) | ($1,305,379.55) |
| | | | |
| **Total deposits less withdrawals:** | | $146,034.40 | ($76,255.83) |

5