To: Clerk of the United States Bankruptcy Court for
    The Southern District of New York
     One Bowling Green  New York, New York 10004
    Bankruptcy Judge Burton R. Lifland
Re: Bankruptcy Case No. 08-1789 (BRL)

From: Hilda F. Brody
    Trustee for the Hilda F. Brody Revocable Trust
    BLMIS Account No. 1ZA510 Claim # 003088


RECEIVED NOV - 6 2009 U.S. BANKRUPTCY COURT, SDNY

Your Honor,

The trustee, Irving H. Picard, for the liquidation of BLMIS has determined my claim for $1,989,185 is denied. He is allowing a claim of $115,000. His determination is based on my deposits less withdrawals.

I disagree with his determination.

Your honor - please excuse the actions of a very old widow - I'll be 95 on May 17. I've lost enough money with Madoff. I've decided from both a moral and monetary point of view (I don't wish to lose more money) to appeal Mr. Picards decision with the assistance of my son Albert and without the services of a lawyer. My appeal of his decision is based on what I believe are both legal and moral issues.

Please excuse the digressions - I'm taking advantage of age. I remember, as if it was yesterday, my father telling my mother, brother, and myself how much money we lost when are bank deposits became worthless because our bank failed in the depression. He died in his forties - a direct result of the pressure of losing almost everything.
I remember, again as yesterday, President Roosevelt's administration creating and enacting the FDIC. The FDIC giving people faith in the banking system. Monies deposited in banks would be secure - insured by the federal government.

This brings me to the SPIC.

SIPC was created in 1970 in response to various broker-dealer bankruptcies of the 1960's. Senator Edward Muskie was instrumental in Congress's decision to ensure investors would be protected against brokerage failures.
It is not a leap of thought and leap of logic to realize our banking industry's growth was dependent on the FDIC as the brokerage industry's growth was dependent on SIPC.
Faith in these industries, faith in these institutions were based on monetary protection for investors.

The following are some thoughts and facts to support my position that I should be insured by SIPC if not for $1,989,185 then at least for SIPC's $500,000 and certainly not $115,000.

1) My husband and I felt secure in our investment with Madoff
   A) Madoff's reputation, especially his involvement with NASDQ, was impeccable.
   B) The SEC, over the years, always gave Madoff a "clean bill of health".
 Should I continue to have any faith in government regulators?

2) Excerpts from NY Times - 7/7/09
   Mr. Picards "money - in / money - out" interpretation of "net equity" is contrary to SIPA, contradicts 39
   Years of SIPC's prior positions, and is unsupported by any legal precedent.
   Now that Madoff's victims seek the very protection offered by SIPC, the trustee is seeking to change the
   The definition and application of the statute. This approach contradicts SPIC's own rules, which state
   that a claimants legitimate expectations are based on written confirmations sent by broker-dealer to
   Customers. SIPC's General Counsel, Josephine Wang, confirmed this approval on 12/16/08.

3) Are there not legal precedents that my "net equity" is the $1,989,185 as reported on Madoff's 11/30/08 statement - or at least providing a "fair" rate of return to the principal of the investment for the period invested?

Are there not legal precedents suggesting that " net equity " is deposits plus an interest factor less withdrawals?

Are there not legal precedents of using 9% as the interest factor or interest computed at the "risk-free rate" - U. S. Government Securities?

Using the 30 year government bond with a compounded interest rate - my net equity would exceed $500,000 - not the trustees $115,000.

In conclusion, It seems to me, Congress's intention in it's enactment of SIPC, was the protection of the investor. In giving investors faith in the security industry - the by product was dramatic growth of that industry.

Does Mr. Picard's interpretation of a customer's " net equity " meet the intention of Congress and their protection of the investor? I think not.

In today's era of immorality - with the Madoffs of this world seemingly running rampant, would individual investors leave securities at a broker-dealer knowing with each withdrawal for interest, dividends, or increase of principal their protection from SPIC would decrease. Securities in street name would surely decrease.

If you decide against me - I would like you to instruct the broker-dealer community that the SIPC wording on all customer statements should be changed. The new verbiage should be as follows: Your account is insured up to $500,000 - HOWEVER - each withdrawal, whether interest, dividends, or principal will reduce your insurance by that amount.

Thanks for your consideration

*Hilda F. Brody*

Hilda F. Brody
Trustee for the Hilda F. Brody Revocable Trust
11/04/2009

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 9, 2009

Hilda F. Brody
Trustee for the Hilda F. Brody Revocable Trust
4251 Rock Island Road, #809
Lauderhill, FL 33319

Dear Mrs. Brody:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZA510 designated as Claim Number 003088:

Your claim for a credit balance of $1,989,185 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $115,000.00, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals (see Table 1 attached hereto).

Your **ALLOWED CLAIM** of $115,000.00 will be satisfied in the following manner:

The enclosed **ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. In addition, you must also submit a copy of the IRS Form W-9 for the Hilda F. Brody Revocable Trust with your returned **ASSIGNMENT AND RELEASE**. Upon

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

receipt of the executed and notarized **ASSIGNMENT AND RELEASE**, as well the copy of the IRS Form W-9 for the Hilda F. Brody Revocable Trust, the Trustee will fully satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $115,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you <u>MUST</u> file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 9, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

2

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

## Table 1

### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 12/14/1992 | CHECK | $100,000.00 | $100,000.00 |
| 3/25/1993 | CHECK | $25,000.00 | $25,000.00 |
| 5/6/1993 | CHECK | $25,000.00 | $25,000.00 |
| 9/22/1993 | CHECK | $25,000.00 | $25,000.00 |
| 10/19/1993 | CHECK | $25,000.00 | $25,000.00 |
| 1/6/1994 | CHECK | $25,000.00 | $25,000.00 |
| 1/6/1994 | CHECK | $25,000.00 | $25,000.00 |
| 1/10/1994 | CXL CHECK | ($25,000.00) | ($25,000.00) |
| 4/4/1994 | CHECK | $25,000.00 | $25,000.00 |
| 9/16/1994 | CHECK | $50,000.00 | $50,000.00 |
| 11/25/1994 | CHECK | $25,000.00 | $25,000.00 |
| 1/23/1995 | CHECK | $89,276.00 | $89,276.00 |
| 3/30/1995 | CHECK | $35,000.00 | $35,000.00 |
| 9/5/1995 | CHECK | $50,000.00 | $50,000.00 |
| 5/19/1997 | TRANS FROM 1ZB31130 | $150,000.00 | $150,000.00 |
| 6/16/1997 | CHECK | $75,000.00 | $75,000.00 |
| 6/16/1997 | CHECK | $75,000.00 | $75,000.00 |
| 9/29/1997 | CHECK | $50,000.00 | $50,000.00 |
| 11/24/1997 | CHECK | $25,000.00 | $25,000.00 |
| 11/24/1997 | CHECK | $25,000.00 | $25,000.00 |
| 1/7/1998 | CHECK | $50,000.00 | $50,000.00 |
| 3/31/1999 | CHECK | $55,000.00 | $55,000.00 |
| 3/31/1999 | CHECK | $10,000.00 | $10,000.00 |
| 12/28/1999 | CHECK | $75,000.00 | $75,000.00 |
| 12/28/1999 | CHECK | $75,000.00 | $75,000.00 |
| 9/11/2000 | CHECK | $50,000.00 | $50,000.00 |
| 1/11/2001 | CHECK | $50,000.00 | $50,000.00 |
| 3/12/2001 | CHECK | $25,000.00 | $25,000.00 |
| 4/24/2001 | CHECK | $150,000.00 | $150,000.00 |
| 1/4/2002 | CHECK | $75,000.00 | $75,000.00 |
| 2/28/2002 | CHECK | $75,000.00 | $75,000.00 |
| 11/21/2002 | CHECK | $100,000.00 | $100,000.00 |
| 7/17/2003 | CHECK | $100,000.00 | $100,000.00 |
| **Total Deposits:** | | $1,789,276.00 | $1,789,276.00 |

### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/8/1993 | CHECK | ($5,216.76) | ($5,216.76) |
| 7/13/1993 | CHECK | ($6,170.55) | ($6,170.55) |
| 10/13/1993 | CHECK | ($3,799.84) | ($3,799.84) |
| 1/14/1994 | CHECK | ($7,570.32) | ($7,570.32) |
| 4/13/1995 | CHECK | ($16,497.22) | ($16,497.22) |
| 7/14/1995 | CHECK | ($23,614.92) | ($23,614.92) |

4

| Date | Type | Amount | Balance |
|---|---|---|---|
| 10/16/1995 | CHECK | ($18,737.83) | ($18,737.83) |
| 1/12/1996 | CHECK | ($23,234.08) | ($23,234.08) |
| 4/12/1996 | CHECK | ($22,578.90) | ($22,578.90) |
| 7/12/1996 | CHECK | ($20,451.51) | ($20,451.51) |
| 10/11/1996 | CHECK | ($24,095.31) | ($24,095.31) |
| 1/13/1997 | CHECK | ($24,830.54) | ($24,830.54) |
| 2/3/1997 | TRANS TO 1ZB31130 | ($552,117.52) | ($302,478.22) |
| 3/13/1997 | TRANS TO 1ZB31130 | ($69.93) | $0.00 |
| 4/1/1998 | CHECK | ($5,000.00) | ($5,000.00) |
| 7/1/1998 | CHECK | ($5,000.00) | ($5,000.00) |
| 10/1/1998 | CHECK | ($5,000.00) | ($5,000.00) |
| 1/4/1999 | CHECK | ($5,000.00) | ($5,000.00) |
| 4/1/1999 | CHECK | ($5,000.00) | ($5,000.00) |
| 7/1/1999 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/1999 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/3/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/3/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/3/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/2/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2002 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2002 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2002 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2002 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/6/2003 | STOP PAYMENT | $20,000.00 | $20,000.00 |
| 1/7/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2004 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2004 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2004 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2004 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/3/2005 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2005 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2005 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/3/2005 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/3/2006 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/3/2006 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/3/2006 | CHECK | ($20,000.00) | ($20,000.00) |
| 9/11/2006 | CHECK | ($50,000.00) | ($50,000.00) |
| 10/2/2006 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 5/21/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/2/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2007 | CHECK | ($25,000.00) | ($25,000.00) |

5

| | | | |
|---|---|---|---|
| 11/16/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 1/2/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 1/7/2008 | CHECK | ($75,000.00) | ($75,000.00) |
| 4/1/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 7/1/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 9/23/2008 | TRANS TO 1ZB31130 | ($100,000.00) | ($100,000.00) |
| 10/1/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| **Total Withdrawals:** | | ($1,923,985.23) | ($1,674,276.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($134,709.23) | $115,000.00 |

6