# EXHIBIT A
**(Plan Amendments)**

**AMENDMENT AND TERMINATION OF THE
BERNARD L. MADOFF INVESTMENT SECURITIES LLC
PLAN (401(k) Plan)
(Amended and Restated Effective June 9, 2003)**

This Declaration of Amendment is made this ____ day of November, 2009, by Irving H. Picard, as Trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), on behalf of BLMIS:

**WITNESSETH THAT:**

WHEREAS, BLMIS has previously adopted the Bernard L. Madoff Investment Securities LLC Plan (the "401(k) Plan") for the benefit of those employees who are eligible thereunder, which such Plan was last amended and restated effective June 9, 2003, and has been amended from time to time thereafter;

WHEREAS, the 401(k) Plan is maintained on a Profit Sharing/401(k) Plan Fidelity Prototype Plan Non-Standardized Adoption Agreement #001 ("Adoption Agreement"), which was adopted by BLMIS on May 7, 2003, and the related Fidelity Basic Plan Document #02, revised October 9, 2003 ("Basic Plan Document"), which together, along with subsequent amendments, administrative contracts, administrative procedures and trust documents, comprise the governing document for the 401(k) Plan;

WHEREAS, the Trustee was appointed to liquidate the business of BLMIS by order of the United States District Court for the Southern District of New York on December 15, 2008, pursuant to section 78eee(b)(3) of the Securities Investor Protection Act of 1970, 15 U.S.C. 78aaa et seq.;

WHEREAS, the Trustee has retained the power and authority to amend and terminate the 401(k) Plan according to Article 16 of the Basic Plan Document, and as authorized

by order of the United States Bankruptcy Court for the Southern District of New York entered on November ___, 2009;

WHEREAS, Trustee is authorized to liquidate the 401(k) Plan's related trust fund ("Trust Fund") by order of the United States Bankruptcy Court for the Southern District of New York entered on November ___, 2009;

WHEREAS, the Trustee desires that the 401(k) Plan be terminated effective as of November 30, 2009 (the "Plan Termination Date"), and the Trust Fund be liquidated as soon as administratively feasible thereafter by the distribution of remaining accounts to participants, beneficiaries or alternate payees, as appropriate;

WHEREAS, various recent changes in statutes, regulations and other published guidance under the Internal Revenue Code ("Code") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), have revised the requirements related to the tax-qualified status of the 401(k) Plan under Code Section 401, et seq., and the tax-exempt status of the Trust Fund under Code Section 501, including without limitation changes imposed by the Pension Protection Act of 2006 ("PPA"), as amended; the Heroes Earnings Assistance and Relief Tax Act of 2008 ("HEART Act"); the Worker, Retiree, and Employer Recovery Act of 2008 ("WRERA"); and various related revenue rulings, notices and regulations;

WHEREAS, Section 8 of Revenue Procedure. 2007-44 , I.R.B. 2007-28 (June 13, 2007), requires that, to maintain its tax-qualified status, the 401(k) Plan must be amended for all relevant changes to the tax-qualification requirements (including requirements that are effective retroactively, as permitted by governing law), that are applicable or effective as of the Plan Termination Date, regardless of any applicable extensions to the deadline for adopting such amendments that may apply to ongoing tax-qualified plans;

NOW THEREFORE, the Trustee, on behalf of BLMIS, hereby amends the 401(k) Plan and the Trust Fund effective as of the dates indicated herein:

1.  **Termination of the 401(k) Plan.**  The 401(k) Plan is hereby effectively terminated as of the Plan Termination Date, and all relevant terms of the 401(k) Plan, as amended herein, shall have continuing effect until after the complete liquidation of the related Trust Fund and to wind-down the administrative matters related to the 401(k) Plan and the Trust Fund.

2.  **Liquidation of the Plan Trust Fund.**  The Trust Fund shall be completely liquidated in connection with the termination of the Plan on November 30, 2009, or as soon as administratively feasible thereafter, by the distribution of Accounts to Participants, beneficiaries or alternate payees, as appropriate.  Any amounts not allocable to an Account may be used to pay reasonable expenses of the 401(k) Plan.

3.  **Eligibility for Participation in the 401(k) Plan.**   Effective November 30, 2009, Section 1.04 of the Adoption Agreement is amended such that no employee shall be eligible to participate in the 401(k) Plan regardless of continued employment after the Plan Termination Date.

4.  **Credited Compensation.**  Effective November 30, 2009, Section 1.05 of the Adoption Agreement is amended such that no compensation is credited for any Participant regardless of continued employment after the Plan Termination Date.

5.  **Acceptance of Contributions.** Effective November 30, 2009, Section 1.07 of the Adoption Agreement is amended such that no Participant may make a Deferral Contribution to the 401(k) Plan, nor shall the 401(k) Plan accept a Deferral Contribution after the Plan Termination Date other than (i) contributions that have been accrued on behalf of Participants in

the 401(k) Plan prior to the Plan Termination Date, and (ii) Deferral Contributions made on behalf of Participants in the 401(k) Plan that are based upon compensation earned before the Plan Termination Date.

**6.    Participant Loans.**  Effective November 30, 2009, Section 1.17 of the Adoption Agreement, Section 9.10 of the Basic Plan Document, and the 401(k) Plan's Participant Loan Procedures are amended such that, in connection with the liquidation of the Trust Fund, each Participant with an outstanding loan or loans shall have his or her Account offset by the outstanding loan balance.  In the alternative, if the Participant makes a timely election prior to the distribution of the Participant's Account, any outstanding loan may be repaid in full or part, or the Participant may elect a Direct Rollover to an Eligible Retirement Plan of the loan note (contingent on the willingness of such Eligible Retirement Plan to accept such loan note).  No applications for Participant loans will be accepted after the Plan Termination Date.

**7.    Elimination of Installment Distributions.**  Effective November 10, 2009, Section 1.19 of the Adoption Agreement is hereby amended by the elimination of the availability of installment distributions.  In light of the previous elimination of annuity payments effective November 3, 2003, and in connection with the liquidation and termination of the 401(k) Plan, only lump sum payments shall be available.

**8.    Amendment of the Plan.**  Effective November 30, 2009, Section 16.02 of the Basic Plan Document is amended by the addition of the following paragraphs to read as follows:

> "The Trustee for the Liquidation of the Plan Sponsor, Bernard L. Madoff Investment Securities LLC (the 'Trustee'), acting on behalf of the Plan Sponsor, by action taken in writing, reserves the right, at any time, without prior notice, to retroactively and/or prospectively amend, suspend, or terminate the Plan in whole or in part, including any amendments that may be adopted after the termination of the Plan, which are effective with respect to the Plan prior to the Plan Termination Date or in connection with the liquidation of the Trust Fund."

9. **Claims and Review Procedures.** Effective November 30, 2009, Section 19.03 of the Basic Plan Document is amended by the addition of the following new subsection (c) to read as follows:

> "(c) Any legal action, to the extent any such claim is not otherwise extinguished by action of the U.S. Bankruptcy Court for the Southern District of New York, in relation to Case No. 08-1789 (BRL), must be commenced or maintained by a claimant to recover benefits under the Plan by the end of the twelfth month after the final review/appeal decision by the Administrator has been rendered (or deemed rendered)."

10. **Correction of Operational Failures.** Effective November 30, 2009, Article 18 of the Basic Plan Document is amended by the addition of the following new subsection 18.13 to the end thereof, such new subsection 18.13 to read as follows:

> "**18.13 Administration Actions to Correct Operational Failures.** No provision of this Plan shall prevent the Administrator from taking any such appropriate action to correct any operational failure in a manner consistent with the Employee Plan Correction Resolution Program as described in Revenue Procedure 2008-50. Corrective actions may include, without limitation: (a) making corrective contributions for failures in past years; (b) making corrective distributions for failures in past years, (c) seeking corrective repayments, (d) correcting failures related to defaulted loans, or (e) allowing Participants who were inadvertently excluded from making Deferral Contributions to contribute make-up contributions, including 'catch-up contributions' in excess of any Plan-imposed limitations during the year of the failure up to the maximum permissible contributions under applicable law."

11. **Compliance with Final 2007 Roth Regulations Under Code Section 402A.** Effective January 3, 2007, the safe harbor amendment to Section 5.03(c) of the Basic Plan document relating to Roth Deferral Contributions, is hereby amended by the addition of the following provisions, which such provisions shall take precedence over any prior inconsistent provisions:

> "(a) Roth Deferral Contributions Defined.
>
> (i) 'Roth Deferral Contributions' shall mean any Deferral Contributions that the Participant has irrevocably designated as Roth Deferral Contributions. A Participant's Roth Deferral

        Contributions in any calendar year are the sum of all Employer contributions made on behalf of such Participant pursuant to an election to make Roth Deferral Contributions to a Roth Deferral Contribution Account.

    (ii)    'Roth Deferral Contribution Account' means a Participant's interest in Plan assets composed of Roth Deferral Contributions allocated to the Participant under the Plan, plus all income and gains credited to, and minus all losses, expenses, withdrawals and distributions charged to, such Account.

(b)    Roth Deferral Contribution Elections.

An Active Participant may designate all or some of his or her Deferral Contributions (that the Active Participant is otherwise eligible to make) as Roth Deferral Contributions. Roth Deferral Contributions are Deferral Contributions that are:

    (i)    designated irrevocably by the Active Participant at the time of his or her cash or deferred election as Roth Deferral Contributions that are being made in lieu of all or a portion of the Deferral Contributions the Participant is otherwise eligible to make under the Plan;

    (ii)    treated by the Employer as not excludable from the Participant's gross income at the time the Participant would have received the amount in cash if the Participant had not made the cash or deferred election (e.g., by treating the contributions as includible in gross income by reporting the contribution as wages subject to applicable withholding requirements); and

    (iii)    maintained by the Plan in a separate account in accordance with Article 7 of the Basic Plan, as amended.

For purposes of the forgoing and for purposes of measuring any limitation, the Plan Administrator may assume that the Participant's tax year is the calendar year unless affirmative information to the contrary is provided by the Participant prior to any election to made Deferral Contributions or Roth Deferral Contributions. Further, notwithstanding subsection (ii), above, if all or a portion of the Participant's Deferral Contributions would not have been includible in gross income if paid directly to the Participant (rather than being subject to a cash or deferral election), the Deferral Contributions are nevertheless permitted to be Roth Deferral Contributions, provided the Participant is entitled to treat the amount as an investment in the contract pursuant to Code Section 72(f)(2).

(c)     Precedence of Terminology. Because Roth Deferral Contributions are in lieu of Deferral Contributions, all references to 'Deferral Contributions' in this Plan shall also include a reference to 'Roth Deferral Contributions' except as otherwise specified or is otherwise dictated by context. For example, the limitations on Deferral Contributions according to Code Section 402(g) apply to total Deferral Contributions and Roth Deferral Contributions that are elected by the Participant for the Plan Year. Further, Roth Deferral Contributions are treated as Employer Contributions for purposes of Code Sections 401(a), 401(k), 402, 404, 409, 411, 412, 415, 416 and 417. Similarly, each Roth Deferral Contribution Account is subject to the rules of Code Section 401(a)(9)(A) and (B) in the same manner as the Participant's Deferral Contribution Account. A Participant's Roth Deferral Contributions may be designated or recharacterized as Catch-Up Contributions.

(d)     Timing of Elections. A Participant may make or change an election regarding Roth Deferral Contributions prospectively but not retroactively in the same manner as a Participant may elect to make, modify, or cease an election that applies to Deferral Contributions by giving appropriate notice to the Administrator within the time limits prescribed by the Administrator.

(e)     Separate Account for Roth Deferral Contributions. Notwithstanding any provision of Article 7 or of this Plan to the contrary, any Roth Deferral Contributions that are elected by the Participant shall be allocated to and maintained in an account that is separate from Deferral Contributions and all other contributions under the Plan. Contributions and withdrawals of Roth Deferral Contributions must be credited and debited to a Roth Deferral Contribution Account maintained for the Participant, and the Plan must maintain a record of the Participant's investment in the contract (that is, Roth Deferral Contributions that have not been distributed) with respect to the Participant's Roth Deferral Contribution Account. Gains, losses, and other credits or charges must be separately allocated on a reasonable and consistent basis to each Roth Deferral Contribution Account. No contributions other than Roth Deferral Contributions and properly attributable earnings will be credited to a Participant's Roth Deferral Contribution Account. Any transaction or accounting methodology involving a Participant's Roth Deferral Contribution Account and any other accounts under the Plan or plans of an Employer that has the effect of directly or indirectly transferring value from another account under the Plan into the Roth Deferral Contribution Account violates the separate accounting requirement under Code Section 402A. However, any transaction that merely exchanges investments between accounts at fair market value will not violate the separate accounting requirement.

(f) Roth Direct Rollover Contributions. The Plan will accept on behalf of any Active Participant a direct rollover contribution eligible Roth Direct Rollover Contributions or Transfer Contributions of Roth deferral contributions from other designated Roth accounts or from Roth IRAs. If a distribution from another designated Roth account is rolled over to an Active Participant's Roth Deferral Contribution Account in a direct rollover, the amount of the rollover contribution allocated to investment in the contract in the recipient designated Roth account is the amount that would not have been includible in gross income (determined without regard to Code Section 402(e)(4)) if the distribution had not been rolled over. Thus, if an amount that is a Qualified Roth Distribution is rolled over, the entire amount of the Roth Direct Rollover Contribution is allocated to investment in the contract. Further, if the entire account balance of a designated Roth account is rolled over in a direct rollover to the Roth Deferral Contribution Account under this Plan, and, at the time of the distribution, the investment in the contract exceeds the balance of the designated Roth account, the investment in the contract in the distributing plan is included in the investment in the contract of the recipient Roth Deferral Contribution Account.

(g) Correction of Excess Roth Deferral Contributions.

  (i) Excess Deferrals. If any Roth Deferral Contributions were made to the Plan in a Plan Year in which Excess Deferrals are identified according to Section 6.02, the notification of such Excess Deferral must also identify the extent, if any, to which the Excess Deferrals are comprised of Roth Deferral Contributions. A Participant is deemed to have notified the Plan of Excess Deferrals (including the portion of Excess Deferrals that are comprised of Roth Deferral Contributions) to the extent the individual has Deferral Contributions and/or Roth Deferral Contributions for the taxable year, calculated by taking into account only the Deferral Contributions and/or Roth Deferral Contribution made to the Plan (and other plans of the Employer). The Employer will also assume that the Participant's tax year is the calendar year. Unless the Participant elects otherwise, the Excess Deferral shall be comprised first of Deferral Contributions, and then, to the extent necessary, Roth Deferral Contributions. If a Roth Deferral Contribution Account includes any Excess Deferrals, any distribution of such amounts attributable to those Excess Deferrals are includible in gross income (without adjustment for any return of investment in the contract under Section 72(e)(8)). In addition, such distributions cannot be Qualified Roth Distributions described in Code Section 402A(d)(2) and are not Eligible Rollover Distributions within the meaning of Code Section 402(c)(4). For

-9-

    this purpose, if a Roth Deferral Contribution Account includes any Excess Deferrals, any distributions from such account for that year are treated as attributable to those Excess Deferrals until the total amount distributed from the Roth Deferral Contribution Account equals the total of such Excess Deferrals and attributable income as determined according to Section 6.09.

  (ii) Excess Contributions. Any Excess Contributions, determined according to Section 6.04, that are distributed or recharacterized shall be deemed to be attributable to Deferral Contributions to the extent Deferral Contributions were made for the year. If Deferral Contributions are insufficient, any Roth Deferral Contributions made by the Participant shall be distributed until the Excess Contribution has been corrected. A distribution of Excess Contributions is not includible in gross income to the extent it represents a distribution of Roth Deferral Contributions. However, the income allocable to a corrective distribution of Excess Contributions that are comprised of Roth Deferral Contributions is included in gross income in the same manner as income allocable to a corrective distribution of Excess Contributions that are attributable to Deferral Contributions, as provided under Section 6.09 of the Plan.

  (iii) Excess Aggregate Contributions, as determined according to Section 6.07, are not includible in gross income to the extent attributable to Roth Deferral Contributions. However, the income allocable to a corrective distribution of Excess Aggregate Contributions according to Section 6.09 that is attributable to Roth Deferral Contributions, is taxed in the same manner as income allocable to a corrective distribution of Excess Aggregate Contributions that are attributable to contributions other than Roth Deferral Contributions.

(h) Direct Rollovers from a Roth Deferral Contribution Account. A direct rollover of a distribution from a Roth Deferral Contribution Account under the Plan will only be made to another designated Roth account under another applicable retirement plan described in Code Section 402A(e)(1), or to a Roth IRA described in Code Section 408A, and only to the extent the rollover is permitted under the rules of Code Section 402(c). Eligible Rollover Distributions from a Participant's non-Roth Account are not taken into account in determining whether a Participant's Roth Deferral Contribution Account exceeds $1,000 for purposes of any distributions limits under the Plan, and vice versa. Further, the Plan's $200 minimum rollover threshold shall apply to the distribution from the Roth Deferral Contribution Account to determine whether the Participant

    is eligible to make an direct rollover from the Roth Deferral Contribution Account.

(i) Definition of a Qualified Roth Distribution.

  (i) A Qualified Roth Distribution is generally a distribution that is made after a five (5) taxable-year period of participation, and satisfies one of the following: (A) is a distribution made on or after the date the Participant attains age fifty-nine and one-half (59-1/2), (B) is a distribution made after the Participant's death, or (C) is a distribution attributable to the Participant's being disabled within the meaning of Code Section 72(m)(7).

  (ii) For purposes of the foregoing, the five (5) taxable-year period begins on the first day of the Participant's taxable year for which the Participant first made Roth Deferral Contributions to the Plan, and ends when five (5) consecutive taxable years have been completed. The beginning of the five (5) taxable-year period is never redetermined even if the entire Roth Deferral Contribution Account is distributed within the five (5) taxable-year period and the Participant thereafter makes new Roth Deferral Contributions. However, in the case of the portion of the Account that is attributable to a Roth Direct Rollover Contribution, the five (5) year period begins on the first day of the Participant's taxable year (January 1) for which the Participant made designated Roth contributions to the plan that was the source of the rollover.

    In the case of a distribution to an alternate payee or a beneficiary, the Participant's age, death or disability shall be used to determine whether the distribution is a Qualified Roth Distribution. However, certain types of contributions do not start the five (5) taxable-year period of participation, including but not limited to, a year in which the only contributions consist of Excess Deferrals or Excess Contributions that are returned or distributed, or elective contributions that are returned to the Participant pursuant to Code Section 414(w).

  (iii) With respect to a Participant who is reemployed following Qualified Military Service who elects to make contributions pursuant to Code Section 414(u) for the years of absence due to his or her Qualified Military Service, any 'make-up' Roth Deferral Contributions are treated as made in the taxable year with respect to which the contributions relate. If the reemployed Participant fails to identify the taxable year for which such a make-up contribution is made (as permitted, such as entitlement to a match), the contribution is treated as made in the Participant's first taxable

-11-

year in which the Participant's Qualified Military Service began, or, if later, the first taxable year in which Roth Deferral Contributions could have been made under the Plan.

  (iv) Excess Contributions as Non-Qualified Roth Distributions. As noted above, a distribution from a Roth Deferral Contribution Account is not a Qualified Roth Distribution to the extent it consists of a distribution of Excess Deferrals and attributable income to the Participant, Excess Contributions and attributable income, or Excess Aggregate Contributions and attributable income as described above in subsection (g).

(j) Special Distribution Provisions Related to Roth Deferral Contributions. A Qualified Roth Distribution of the Participant's Roth Deferral Contribution Account is not includible in the gross income of the Participant or other Distributee (such as a beneficiary or alternate payee). The determination of whether any particular payment is a Qualified Roth Distribution is determined based upon the circumstances of the actual year of the payment from the Roth Deferral Contribution Account and does not take into account whether the payment is part of a series of distributions or whether the payment is attributable to a prior calendar year. Any distribution that is not a Qualified Roth Distribution of the Participant's Roth Deferral Contribution Account is taxable to Participant or other Distributee under Code Section 402 by treating the Roth Deferral Contribution Account as a separate contract under Code Section 72, as described under Q&A-3 of Treas. Reg. § 1.402A-1.

Because the Roth Deferral Contribution Account is treated as a separate contract, the Participant may make an election as to the time and form of payment with respect to distributions from his or her Roth Deferral Contributions Account, and that election may be separate and unique from the election of time and form of payment with respect to the distributions from his or her other Accounts under the Plan. Such a separate election is permitted regardless of whether the distribution of all or some of the Roth Deferral Contribution Account would have been a Qualified Roth Distribution. Likewise, to determine whether a Participant's Account balance (other than the Roth Deferral Contribution Account) exceeds the limit with respect to the mandatory distributions according to Code Section 411(a)(11), or exceeds the limit with respect to rollovers according to Code Section 401(a)(31), the balance of the Participant's Roth Deferral Contribution Account and the Participant's other Accounts under the Plan are deemed to be held under separate plans (within the meaning of Code Section 414(l)). All previous Eligible Rollover Distributions from a Participant's Roth Deferral Contribution Account will be taken into account in determining whether the balance of the

-12-

> Participant's Roth Deferral Contribution Account exceeds One Thousand Dollars ($1,000).
>
> If a distribution of the portion of the Participant's Roth Deferral Contribution Account would not be a 'Qualified Roth Distribution' pursuant to subsection (i), above, at such time as the Participant is eligible to receive a distribution of his vested Account, the Participant may made a separate election with regard to his Account attributable to Roth Deferral Contributions in the Plan. The Participant may elect a rollover distribution of his Roth Deferral Contribution Account to another plan which maintains Roth Deferral Contribution Accounts or to a Roth IRA.

(k) Loans Affecting Roth Deferral Contribution Accounts. The Participant's entire Account, including his or her Roth Deferral Contribution Account, shall be considered in determining the maximum available participant loan under the applicable provisions of this Plan."

12. **Gap Period Income Eliminated by PPA and WRERA.** Effective January 1, 2007, Section 6.09 of the Plan is amended by the addition of the following text to the end thereof to read as follows:

> "Notwithstanding the foregoing to the contrary, effective for the first Plan Year beginning after December 31, 2006, income or loss accruing between the end of the taxable year and the date of distribution (i.e., the 'gap period') must be distributed with respect to corrective distributions of Excess Deferrals. Effective for Plan Years beginning after December 31, 2007, 'gap period' income or losses allocable to Excess Deferrals, Excess Contributions and Excess Aggregate Contributions shall not be distributed."

13. **Quarterly Statements Required by PPA.** Effective January 1, 2007, Section 7.02 of the Plan is amended by the addition of the following text to the end thereof to read as follows:

> "Notwithstanding the foregoing, effective for Plan Years beginning after December 31, 2006, Participants must be provided with benefits statements at least once per quarter."

14. **"Qualified Default Investment Alternative" Defined by Department of Labor Regulations.** Effective January 1, 2007, Section 8.02(b) of the Plan is amended by the addition of the following text to the end thereof to read as follows:

"Notwithstanding the foregoing to the contrary, effective for investments occurring after April 30, 2009, Participants shall be treated as having affirmatively made investment selections under ERISA Section 404(c) to the extent timely Participant notices are provided in accordance with Department of Labor regulations under ERISA Section 404(c)(5) that discloses to Participants the appropriate 'designated investment alternative' into which contributions are invested when Participants do not provide affirmative investment direction."

15. **Hardship Distributions to Primary Beneficiaries.** Effective as of January 1, 2007, Section 10.05 of the Basic Plan Document is amended by the addition of the following text to the end thereof to read as follows:

"Effective as of January 1 2007, or such later date on which such provision was made available to Participants by inclusion in a summary plan description or summary of material modification, the Participant's Primary Beneficiary (as defined by IRS Notice 2007-7 (as modified by subsequent published guidance)) may be treated the same as the Participant's Spouse or dependent in determining whether the Participant has incurred a hardship or unforeseeable financial emergency to permit hardship distributions for expenses described this Section 10.05, in accordance with Treas. Reg. § 1.401(k)-1(d)(3)(iii)(B)(1), (3), or (5) (relating to medical, tuition, and funeral expenses, respectively)   For this purpose, a 'Primary Beneficiary' is an individual who is named as a Beneficiary under the Plan and has an unconditional right to all or a portion of the Participant's Account balance under the Plan upon the death of the Participant."

16. **Suspension of 2009 Required Minimum Distributions According to WRERA.** Effective as of the dates indicated herein, Section 12.05 of the Plan is amended by the addition of the following text to the end thereof to read as follows:

"In accordance with the changes made by the Worker, Retiree and Employer Recovery Act of 2008 (WRERA), or as extended by any subsequent legislation, no minimum distribution that is required according to Code Section 401(a)(9) ('required minimum distribution') shall be distributed for the 2009 distribution calendar year with respect to Participants who reach age 70-1/2 during or before 2009.  However, the initial required minimum distribution for the 2008 distribution calendar year (i.e., for a Participant who reached age 70-1/2 in 2008) is not suspended and must be made no later than April 1, 2009.  Notwithstanding the foregoing, Participants may affirmatively elect to receive the 2009 required minimum distribution that would otherwise have been required to be made if not for the suspension under WRERA.

In any event, any amounts distributed to Participants that would otherwise have been treated as the required minimum distribution for the 2009 distribution

-14-

calendar year will be treated as an Eligible Rollover Distribution as defined under Code Section 402 for purposes of being eligible for as a Direct Rollover into an Eligible Retirement Plan, as defined under Code Section 402."

17. **Automatic Rollovers for Missing Participants Permitted by PPA.** Effective as of November 30, 2009, Section 12.06 of the Basic Plan Document is amended by the addition of the following paragraphs to read as follows:

> "Notwithstanding the foregoing, if the Administrator is unable to locate any Participant or beneficiary whose Account: (1) is subject to mandatory distribution under Code Section 411(a)(11); (2) is otherwise distributable with the Participant's consent; or (3) becomes distributable because the Plan has terminated, the Account may be distributed without the Participant's consent, and rolled over into a safe harbor individual retirement account according to the automatic rollover provisions of Code Section 401(a)(31) and in a manner consistent with the Department of Labor regulations under 29 C.F.R. 2550.404a-3 (72 Federal Register 7516), published February 15, 2007."

18. **Direct Rollovers of Eligible Rollover Distributions as Revised by PPA and WRERA.** Effective as of the dates indicated herein, Section 13.04 of the Basic Plan Document is amended by the addition of the following paragraphs to read as follows:

> "In addition to the foregoing, effective for distributions on or after January 1, 2002, all or a portion of a distribution shall not fail to be an Eligible Rollover Distribution that is eligible for Direct Rollover merely because the portion consists of after-tax employee contributions, such as attributable to the Employee Contribution Account, which are not includible in gross income (the 'non-taxable portion'), and effective for distributions on or after January 1, 2007, attributable to designated Roth contributions (including designated Roth contributions that were rolled over into this Plan from other Eligible Retirement Plans).
>
> Effective January 1, 2002, the non-taxable portion of an Eligible Rollover Distribution attributable to the Employee Contribution Account may be paid in a Direct Rollover to an Eligible Retirement Plan that is an individual retirement account or annuity described on Section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income (the 'taxable portion') and the non-taxable portion, including attributable earnings. In addition to the foregoing, effective for distributions after December 31, 2006, the non-taxable portion of an Eligible Rollover Distribution may be rolled over to a defined benefit plan or an annuity contract described in

-15-

Code Section 403(b), as long as the distribution is a Direct Rollover and the receiving plan separately accounts for the non-taxable portion, including earnings thereon.

Effective for distributions occurring after December 31, 2007, a Direct Rollover of a distribution from a Participant's Roth Deferral Contribution Account under the Plan may be made directly to another designated Roth contribution account under another applicable Eligible Retirement Plan as described in Code Section 402A(e)(1), or directly to a Roth IRA described in Code Section 408A, but only to the extent such rollover is permitted according to Code Section 402(c).

Effective January 3, 2007, in connection with the addition of Roth Deferral Contributions, the provisions of this Section 13.04 that permit a Participant to elect a Direct Rollover of a portion of an Eligible Rollover Distribution, but only if the amount rolled over is at least Five Hundred Dollars ($500), is applied by treating any amount distributed from the Participant's Roth Deferral Contribution Account as a separate distribution from any amount distributed from the Participant's other Accounts in the Plan, even if the amounts are distributed at the same time.  Any distribution from a Participant's Designated Roth Contribution Account is not taken into account in determining whether distributions from a Participant's other Accounts under the Plan are reasonably expected to total less than Two Hundred Dollars ($200) during a year.   Moreover, the Plan will not provide for a Direct Rollover (including an automatic rollover) for distributions from a Participant's Roth Deferral Contribution Account if the amounts of the distributions that are Eligible Rollover Distributions are reasonably expected to total less than Two Hundred Dollars ($200) during a year.

Effective for distributions made on or after January 1, 2008, any Eligible Rollover Distribution may be rolled over into a Roth IRA if the distribution is a Direct Rollover, the Distributee includes in gross income the taxable portion of the amount transferred, and the distribution otherwise satisfies the requirements and limitations imposed by Code Section 408A(c).

Effective for distributions occurring after November 30, 2009, as permitted by Code Section 402(c)(11) (added by Section 829 of the Pension Protection Act of 2006, as amended by the Worker, Retiree, and Employer Recovery Act of 2008), a Distributee of a Direct Rollover may include the Participant's non-Spouse Designated Beneficiary.  In the case of a non-Spouse Designated Beneficiary, the Direct Rollover may be made only to an individual retirement account or annuity described in Code Section 408(a) or 408(b) (an 'IRA') that is established on behalf of the Designated Beneficiary and that will be treated as an inherited IRA within the meaning of Code Section 408(d)(3)(C) pursuant to the provisions of Code Section 402(c)(11).  Also, in this case, the determination of any required minimum distribution under Code Section 401(a)(9) that is ineligible for rollover shall be made in accordance with Notice 2007-7, Q&A 17 and 18, 2007-5 I.R.B. 395, or with any subsequent published guidance.  Effective for distributions after

> December 31, 2009, for purposes of the notice required by Code Section 401(a)(31) in relation to Direct Rollovers, an Eligible Rollover Distribution shall include any distribution to a Distributee who is a non-spouse beneficiary.
>
> Effective for the 2009 distribution calendar year under Section 12.05 of the Plan (or as may be extended by subsequent legislation), a distribution shall be deemed to be an Eligible Rollover Distribution because it is no longer a 'required minimum distribution' for the 2009 distribution calendar year (due to the waiver for 2009 provided by the Worker, Retiree, and Employer Recovery Act of 2008) solely for purposes of being eligible for tax-free rollover into an Eligible Retirement Plan."

19. **Maximum Notice Period Expanded by PPA.** Effective January 1, 2007, Section 13.05 of the Basic Plan Document is amended by the addition of the following paragraphs to read as follows:

> "Notwithstanding the foregoing to the contrary, effective for distributions occurring after December 31, 2006, the reference to the '90-day' period (or '90 days') in relation to the maximum applicable period for the provision of Participant distribution notices and making elections as provided under Code Sections 402(f), 411(a)(11), or 417, as appropriate, shall be replaced by a reference to the '180-day' period (or '180 days'), as provided by Section 1102 of the Pension Protection Act of 2006 and as described by IRS Notice 2007-7 (as modified by subsequent published guidance)."

20. **Notice Content Expanded by PPA.** Effective January 1, 2007, Section 16.06 of the Basic Plan Document is amended by the addition of the following paragraphs to read as follows:

> "In addition, effective for notices provided after December 31, 2006, the description of a Participant's right to defer a distribution must also include a description of the consequences of failing to defer receipt of a distribution, effective for notices provided after December 31, 2006."

21. **Revision to QDRO Rules by the PPA.** Effective for domestic relations orders received on or after April 7, 2007, Section 18.04 of the Plan is amended by the addition of the following text to read as follows:

> "Notwithstanding the foregoing to the contrary, a domestic relations order shall not fail to be treated as a qualified domestic relations order solely because the order is issued or revised after another domestic relations order or qualified

-17-

domestic relations order is issued, or because of the time it is issued (such as after payments of benefits to Participant have begun, after Participant's death or after the related divorce)."

**22.    Amendments to Uniformed Services Reemployment Rights by the PPA.**

Effective January 1, 2007, Section 18.07 of the Plan is amended by the addition of the following text to the end thereof to read as follows:

"In addition to the foregoing, in the case of a Participant who dies on or after January 1, 2007, while performing Qualified Military Service (as defined in Code Section 414(u)), the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of Qualified Military Service as provided by Code Section 414(u)) that are provided under the Plan assuming the Participant resumed and then terminated employment on account of death. However, the foregoing sentence shall not provide any additional benefit accruals, and the deemed resumption of employment of the Participant shall be applied only to determine eligibility of a beneficiary for any pre-retirement death benefits, and only to the extent required by published guidance, as incorporated herein.

Also, effective January 1, 2009, as required by Code Section 414(u), as amended by the Heroes Earnings Assistance and Relief Tax Act of 2008, any individual in qualified military service who is receiving differential wage payments (as defined in Code Section 3401(h)(2)) from the Employer shall be treated as an 'Employee' of the Employer solely for purposes of providing contributions, benefits and service credit with respect to Qualified Military Service according to Code Section 414(u). However, such individual shall otherwise be treated as having incurred a Separation from Employment for purposes of eligibility for distributions of the Participant's Account attributable to Deferral Contributions. However, if a Participant obtains a distribution according to the foregoing provision, and subsequently resumes active participation in the Plan, such Participant's Deferral Contributions to this Plan shall be suspended for six (6) months following the date of the distribution.

For purposes of this Section, 'Qualified Military Service' means any service in the uniformed services (as defined in Chapter 43 of Title 38 of the United States Code, as incorporated by Code Section 414(u)) by any individual if such individual is entitled to reemployment rights by law with respect to such military service."

-18-

-19-

IN WITNESS WHEREOF, the Trustee, on behalf of BLMIS, has caused this Amendment to be executed as of the date first written above.

                        **BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

                        By _____
                        Irving H. Picard, as Trustee for the Liquidation of
                        Bernard L. Madoff Investment Securities LLC

300030536