UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Appellant,     :  SIPA LIQUIDATION
                                                    :  (Substantively Consolidated)
        v.                                  :  Adv. Pro. No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

-------------------------------------------------- x

In re:

BERNARD L. MADOFF,

                Debtor.

-------------------------------------------------- x

[RECEIVED stamp: NOV 12 2009 U.S. BANKRUPTCY COURT SDNY]

## MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION

### PRELIMINARY STATEMENT

Just Empire, LLC, (the "Customer/Claimant") by its Managing member Josef Mittlemann, submits this Memorandum of Law in <u>opposition</u> to the Motion by Irving H. Picard, trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Corporation Act 15 U.S.C. § 78

aaa *et seq.* ("SIPA") and for Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an order (a) upholding the Trustee's denial of the Customer/Claimant's claim to the extent such denial is based upon or related to the Trustee's interpretation of "Net Equity," (b) upholding the Trustee's denial of the Customer/Claimant's claim to the extent such denial excludes consideration of and reliance upon the Customer/Claimant's November 30, 2008 BLMIS Customer/Claimant statement, (c) affirming the Trustee's interpretation of "Net Equity," and (d) expunging the objections to the Trustee's determination insofar as such objections rely upon the trustee's determination of "Net Equity."

## FACTS

The Court is respectfully referred to the Affidavit of Josef Mittlemann, Managing Member of the Customer/Claimant, sworn to on November 11, 2009 (the "Mittlemann Affidavit") for a statement of the relevant facts and procedural issues.

## ARGUMENT

**1.    The Trustee's Definition Violates SIPA.**

SIPA requires that customer "Net Equity" claims be allowed and paid promptly. See 15 U.S.C. § 78fff-2(b). "Net equity" is defined as the amount the debtor owes the customer, less any indebtedness of the customer to the debtor. Id. § 78lll(11). The definition of "Net Equity" binds the Trustee. See id. § 78ccc(b)(4)(A). As the Customer/Claimant has no indebtedness to the debtor, the Customer/Claimant's November 30, 2008 statement reflects the Customer/Claimant's "Net Equity."

The Trustee's Definition is contrary to law for at least the following reasons:

2

      a.      It violates SIPA's definition of "net equity."

      b.      It is inconsistent with SIPA's legislative history, which requires the Trustee to meet the Customer/Claimant's "legitimate expectations." Neither SIPA nor its legislative history excuses the Trustee from this duty because no securities were purchased by the debtor. <u>See, e.g.</u>, S. Rep. No. 95-763, at 2 (1978); H.R. Rep. No. 95-746, at 21. The Customer/Claimant was given regular statements by BLMIS in his name and under his unique Federal Tax ID number and paid taxes each year on the earnings reported by BLMIS until 2008 when the fraud was discovered.

      c.      It is foreclosed by SIPC's position and the Second Circuit's decision in *In re New Times Sec. Servs., Inc.*, 371 F.3d 68 (2d Cir. 2004).

      d.      It is contrary to past SIPC policies and practices.

**2. The Determination Violates the Claims Procedures Order.**

The Determination does not state that the Claim "disagree[s] with the Debtor's books and records" and therefore is inconsistent with the Claims Procedures Order.

**3. The Determination Fails to Provide Notice.**

The Determination is inadequate to rebut the <u>prima facie</u> validity of the Claim, and fails to set forth facts and legal theories upon which it is based. <u>See, e.g.</u>, 11 U.S.C. § 502(a); <u>Collier on Bankruptcy</u> ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe

3

the theoretical bases of those defenses.") The Determination sets forth no valid legal basis for disallowing the Claim in any respect. Although the Determination states that (1) "no securities were ever purchased for your account," and (2) includes a chart setting forth deposits, withdrawals and transfers to other Madoff accounts, neither has any basis in law for disallowing the Claim nor has Trustee referenced any basis in law for the Determination.

4.     **There is No Basis for Avoidance.**

To the extent the Determination is based upon any alternative valuation or avoidance theory, there is no basis in law for the Determination. The Trustee states in the Determination letter that his calculation of net equity is based on subtracting all withdrawals from all deposits made during the life of the Account as set forth in Table 1 annexed thereto. His calculations include withdrawals and inter-Madoff transfers from the Account that pre-date the maximum statute of limitations period, assuming under New York State law it begins on December 11, 2002 and not six years before the commencement of an adversary proceeding against Customer/Claimant.[1] Such a calculation would effectively create an avoidance action which is prohibited in the case of innocent customers of a broker dealer under Section 546e of the Bankruptcy Code.

---

[1] There is some argument that on avoidance claims the New York Statute of Limitations runs from the date an adversary proceeding is started. There is also some argument that avoidance claims under Section 546(e) may not go beyond two years as set forth in Section 548 (a)(1)(A) of the Bankruptcy Code.

4

The Trustee, by attempting to process this Determination in contradiction to the statute of limitations set forth in the fraudulent conveyance laws of the State of New York and the Bankruptcy Code, without the Customer/Claimant being given a full hearing has and would be denying the Customer/Claimant his due process.

Furthermore, by seeking to recover transfers outside the bankruptcy estate without full hearing has and would be denying the Customer/Claimant his due process.

Since the time that the Trustee has sent out this determination, he has submitted to the court and has been granted a scheduling motion so the court may determine the legally appropriate method of computing "Net Equity." To the extent the other issues raised in this Objection, including but not limited to issues of due process are not raised, Customer/Claimant wishes to preserve his rights thereto.

5. **All Customers Past and Present Should Be Considered in Determining a Fair Approach to Settling the Estate and Payments Under SIPA.**

To the extent the Determination is based upon any alternative valuation other than the balance in the statement as of November 30, 2008, said Determination and such methodology, if allowed to consider transactions that go beyond the applicable statute of limitations, would deny the Customer/Claimant fair and equitable considerations to his prejudice and detriment.

5

Madoff has testified that the scheme existed from the early 1990's and the Trustee has alleged a period even earlier than that expanding over a period of almost 30 years. The Trustee has noted that he has so far secured records going back more than 13 years and expects to go back further. Untold numbers of customers have opened accounts and closed them prior to December 11, 2002 withdrawing untold sums of money. Recovery of these pre December 11, 2002 transfers or account closings are precluded by New York State law[2] (statute of limitations), but furthermore would be both impractical of recovery, expensive, time consuming and in some instances cruel. Yet failure by the Trustee to include them in his construction of a fair and equitable distribution process weighs heavily against those investors who remained yet who took necessary distributions in reliance on their account balances.

The Trustee has stated publicly and in filings with this Court that his determination of "Net Equity" is based upon use of his "cash in" less "cash out" method. He has further stated that such a method is the only "fair" method under which this court can create an equitable and fair distribution process. The Trustee refers to only a two-tiered process in the Determination. A claimant is designated

---

[2] There is some argument that on avoidance claims the New York Statute of Limitations runs from the date an adversary proceeding is started. In that case, the date of December 11, 2002 would be moved later as would the application of any applicable limitations. There is also some argument that avoidance claims under Section 546(e) may not go beyond two years as set forth in Section 548 (a)(1)(A) of the Bankruptcy Code.

6

as either having a "positive net equity" or "negative net equity" and, upon information and belief, there are no claimants whose accounts terminated prior to December 12, 2002 nor will the Trustee seek avoidance of such former customers. Yet by including transfers earlier than December 11, 2002 current customers have a potential liability not extended to former customers even though they may have benefitted from withdrawals during the very same period of time. In its Memorandum Decision and Order dated September 10, 2009, this Court made reference to, the case of *S.E.C. v Byers*, 2009 WL 2185491 (S.D.N.Y.) as recent evidence of a District Court (Judge Chin) adopting an approach in a receivership plan of distribution that addressed all customers as noted below[3].

Judge Chin took special recognition of those investors who chose not to take their fictitious investment distributions in cash, but chose instead to roll them over and increase their investment. Even though Judge Chin recognized that such "rollovers" were clearly false profits under a "Ponzi" scheme, as in the BLMIS matter, his acknowledgment that the Customer/Claimant had the ability to withdraw those funds led to the Court <u>including</u> these "rolled-over distributions," as part of the customer statement balance. The Court stated that failing to do so would result in an inequity. This logic can rightfully be applied to the BLMIS matter. The Statute of Limitations date can be used as a guideline of both equity

---

[3] Judge Chin was dealing with a federal equity receivership where a more liberal claims process is allowed versus a SIPA liquidation where the claims process is very clearly defined.

and practicality. Since all funds in this Customer/Claimant's BMLIS accounts existing prior to December 11, 2002[4] could have been withdrawn, it is equitable for the Trustee and Court to treat such allegedly fictitious "profits" as "rolled-over" funds or new "cash" "reinvestment" funds. Federal taxes and state and city taxes (where applicable) were paid on these funds. The Trustee could then apply his "cash in / cash out" approach with greater fairness and equity. Net winners or net losers would be determined starting with their account balances as of December 11, 2002. Claimant thus challenges the Trustee's methodology on this additional basis.[5]

6. **The Customer/Claimant is Entitled to Prejudgment Interest.**

Under New York law, which is applicable here, funds deposited with Madoff are entitled to interest. The Trustee's proposed definition of "Net Equity" completely ignores this issue whereas the statutory definition (last statement) does not. See, e.g., N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Moreover, since Madoff converted the Customer's funds, that fact also entitles the Customer to prejudgment interest. See, e.g., Steinberg v. Sherman, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *

---

[4] As noted in footnotes 1 & 2 hereof, there is some argument that on avoidance claims the New York Statute of Limitations runs from the date an adversary proceeding is started. In that case, the date of December 11, 2002 would be moved later as would the application of any applicable limitations. There is also some argument that avoidance claims under Section 546(e) may not go beyond two years as set forth in Section 548 (a)(1)(A) of the Bankruptcy Code.

[5] Due to the fact that the *Byers* case was short-lived relative to this case and did not extend back in time more than 5 years, it bears noting that Judge Chin did not need to address whether or not pre-limitation transfers could be included. Accordingly, while a form of "net equity" was consented to by the Court in *Byers*, this Court should not fully and solely rely on such a process in connection herewith as many of the transfers that occurred were prior to the applicable statute of limitations.

8

14-15 (S.D.N.Y. May 2, 2008)("Causes of action such as ... conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y. S. 2d 427, 428 (151 Dept. 2000)(awarding prejudgment interest on claims for unjust enrichment and conversion).

7. **The "Net Equity" Definition of the Trustee Results in an Inadequate Measure of Damages to the Customer.**

The Sixth Circuit recently ruled on the propriety of using the "Net Equity" or cash in/cash out method. The Sixth Circuit ruling [*Visconsi v. Lehman Bros.*, 244 Fed. App.708, 2007, WL 225887 (C.A. 6, 2007) (Ex., *infra*.)] involved a securities fraud in which the perpetrator paid victims with monies obtained from other victims. The Sixth Circuit rejected the claim that one's harm, and damages, are limited to "the out-of-pocket theory," or "net equity" theory, which would give the plaintiff "only the $21 million they originally invested less their subsequent withdrawals." (Ex.,p. 5.) This artificial imposition of an inadequate measure of harm and damages suffered by the victim of the fraud is identical to the inadequacy of the "net equity" theory set forth by the Trustee in the Determination. It was ruled to be "an improper-and wholly inadequate measure of damages," because the plaintiffs had given the fraudster their money "not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow." (*Id.*)

8. **Incorporation by Reference**

As shown in the Mittlemann Affidavit, Mittlemann, the Managing Member of the Customer/Claimant, is not an attorney and is not trained in the law. An effort was made

9

to incorporate the essence of the Customer's Objection to the Trustee's denial of his Claim. In addition, the Customer hereby incorporates by reference, to the extent applicable, the legal arguments made by the following counsel for other customers who oppose the Motion: Lawrence R. Velvel, Davis Polk & Wardwell, LLP, Phillips Nizer, LLP and Lax and Neville, LLP.

## CONCLUSION

For the reasons set forth and incorporated by reference herein, the Trustee's Motion should be denied in its entirety, the statutory definition of "Net Equity" based upon the last statement of November 30, 2008 should be followed, and the Customer's Claim of $6,096,886.99 should be allowed in its entirety. In addition, the Court should direct SIPC to issue immediate payment to the Customer in the amount of $500,000.00, plus interest from the date of the Determination, together with and besides such other relief as the Court deems appropriate.

Dated: Providence, Rhode Island
November 11, 2009

Respectfully submitted,

_____
Josef Mittlemann, Managing
Member of Just Empire, LLC,
Customer/Claimant

107 Prospect Street
Providence, RI  02906

(401) 751 8923

11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Appellant,  :  SIPA LIQUIDATION
          :  (Substantively Consolidated)
   v.  :  Adv. Pro. No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

---------------------------------- x

In re:

BERNARD L. MADOFF,

        Debtor.

---------------------------------- x

[RECEIVED NOV 1 2 2009 U.S. BANKRUPTCY COURT SDNY]

**AFFIDAVIT IN SUPPORT OF MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION**

STATE OF RHODE ISLAND)

COUNTY OF PROVIDENCE) ss.:

    Josef Mittlemann, being duly sworn, deposes and says:

    1. I am the Managing Member of Just Empire, LLC, a Customer/Claimant named in the Motion by Irving H. Picard, trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Corporation Act 15 U.S.C. § 78 aaa *et seq.* ("SIPA") and for Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an order (a) upholding the Trustee's denial of the Customer/Claimant's claim to the extent such denial is based upon or related to the Trustee's interpretation of "Net Equity," (b) upholding the Trustee's denial of the Customer/Claimant's claim to the extent such denial excludes consideration of and reliance upon the Customer/Claimant's November 30, 2008 BLMIS customer statement, (c) affirming the Trustee's interpretation of "Net Equity," and (d) expunging the objections to the Trustee's determination insofar as such objections rely upon the trustee's determination of "Net Equity." The Trustee has assigned four Claim Numbers: 3222, 100253 and 100355 to the claims of the Customer/Claimant. Pursuant to the Court's order of September 16, 2009 scheduling adjudication of the "Net Equity" issue, I have standing to oppose the Motion. For reasons hereinafter set forth in this Affidavit, the attached Memorandum of Law and the Memoranda of other opposing counsel, the Motion should be denied.

2. Your deponent is not an attorney and is not trained in the law. However, I have been reading, following and, to an extent, adopting some of the arguments of attorneys who represent themselves or other clients who are similarly situated. For this reason, I apologize for any impropriety in these papers and respectfully request that the Court allow me to incorporate the arguments of other counsel as set forth more fully in the attached Memorandum of Law in opposition to the Trustee's Motion.

2

**FACTS AND PRIOR PROCEEDINGS**

3. The Customer/Claimant is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS"). BLMIS account numbers 1-KW261-3-0 and 1-KW261-4-0 for the Customer/Claimant were assigned by BLMIS in or about January 2005. It should be noted that accounts originally were opened in the name of R & J Company, LLC in late May, 1999 under its own Federal Tax ID number at BLMIS. The interests of R & J Company, LLC were assigned to Just Empire, LLC in or about January 2005 and accounts in the name of Just Empire, LLC under its own Federal Tax ID number were opened at that time at BLMIS. (BLMIS kept the same account numbers for the new accounts but reported income to the IRS under the new Just Empire, LLC Federal Tax ID number.) The first BLMIS account statements received in the name of Just Empire, LLC, account number 1-KW261-3-0 and 1-KW261-4-0, were March 31, 2005. There were no customer withdrawals or deposits between December 31, 2004 and April 30, 2005. No claim in this proceeding was made by or on behalf of R & J Company, LLC. Any reference to Customer's "Claim" includes the two above referenced BLMIS account numbers and any Claim number(s) given by the Trustee.

4. On February 11, 2009, the Customer/Claimant filed a customer claim in this proceeding. The Claim, including its reservation of rights, is incorporated herein. The Claim seeks recovery of $6,096,886.99, the value of the securities reflected in the Customer/Claimant's final BLMIS account statements dated November 30, 2008. This sum constitutes the Customer/Claimant's "Net Equity" as defined in SIPA. See 15

3

U.S.C. § 78lll(11). The Customer/Claimant's Claim is designated by the Trustee as Claim Numbers 3222, 100253 and 100355 for purposes of the Determination and the within opposition to the Motion.

5. On December 23, 2008, this Court issued, on an *ex parte* basis, an order directing the Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines, as well as processes by which claims were to be submitted. See Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, Docket No. 12, SIPC v. Bernard L. Madoff Inv. Sec. LLC, No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008) (the "Claims Procedures Order"). The Claims Procedures Order authorizes the Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Id. at 5. The Claims Procedures Order sets forth the procedure to be followed by the Trustee when a customer's claim "disagree[s] with the Debtor's books and records." Id. at 6. The Claims Procedures Order does not address the process by which other objections are to be made.

6. On August 31, 2009, the Trustee sent the Customer/Claimant the Determination, which states that "your claims for securities are "DENIED." The Determination also states that "no securities were ever purchased for your account" and that "because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore your claim is DENIED in its entirety."

4

7. The Customer/Claimant previously objected to the Determination.

8. On behalf of the Customer/Claimant, I object to the use of the revised definition of "Net Equity" devised and proposed by the Trustee. It is unfair, unjust and in direct violation of the statutory definition. The revised definition would unlawfully deprive the Customer/Claimant of its investments and earnings in violation of the law and its rights.

WHEREFORE, it is respectfully requested that the Court deny the Trustee's Motion to create a new definition of "Net Equity" in violation of law and in contravention of my entitlement to rely upon the November 30, 2008 BLMIS statement, direct SIPC to issue immediate payment to the Customer in the amount of $500,000.00, plus interest from the date of the Determination and request that the Court grant such other relief as it deems just and proper.

Just Empire, LLC

By: _____
Josef Mittlemann, Managing Member

Sworn to before me this

11 day of November 2009

5

RHODE ISLAND ACKNOWLEDGMENTS

Acknowledgment of Individual

STATE OF RHODE ISLAND

COUNTY OF Providence

On this  11  day of  November , 20 0 9 , before me the undersigned notary public, personally appeared  Josef Mittlemann  (name of document signer), personally known to the notary or proved to the notary through satisfactory evidence of identification, which was  Personally Known to me , to be the person whose name is signed on the preceding or attached document and acknowledged to the notary that (he) (she) signed it voluntarily for its stated purpose.

Nancy M Carroll
5?629
Notary Public

Printed Name: Nancy McCarroll

My Commission Expires:

2/27/2010

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused the foregoing Memorandum of Law in Opposition to Trustee's Motion on Net Equity and Affidavit in Support of Memorandum of Law in Opposition to Trustees Motion to be served on persons listed below electronically by email with their permission on this 12th day of November 2009.

Just Empire, LLC by
Josef Mittlemann, Managing Member

Josephine Wang, Esq. on behalf of
Securities Investor Protection Corp;
Stephen P. Harbeck and
Christopher LaRosa, Esq.
jwang@sipc.org
805 15th Street, N.W., Suite 800
Washington, DC 20005-2207 and

Brian Neville, Esq.
1412 Broadway, Suite 1407
New York, NY 10018
bneville@laxneville.com

Jonathan M. Landers, Esq.
Milberg LLP
jlanders@milberg.com
One Pennsylvania Plaza
New York, NY 10119

Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Email: Velvel@mslaw.edu

Nikko Landrio on behalf of
Irving Picard, Esq.,
David J. Sheehan, Esq.
Marc E. Hirschfield, Esq.
Baker & Hostetler, LLP
nlandrio@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111 and

Helen Chaitman, Esq.
Phillips Nizer, LLP
hchaitman@phillipsnizer.com
666 Fifth Avenue
New York, NY 10103

