Helen Davis Chaitman (4266)  Hearing Date: February 2, 2010
Phillips Nizer LLP  Hearing Time: 10:00 A.M.
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin, Maureen Ebel, and a group of other customers*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION  :
CORPORATION,  :   Adv. Pro. No. 08-01789 (BRL)
  :
  Plaintiff,  :   SIPA Liquidation
  :
  v.  :   (Substantively Consolidated)
  :
BERNARD L. MADOFF INVESTMENT  :
SECURITIES LLC,  :
  :
  Defendant.  :
------------------------------------------------------------:
  :
In re:  :
  :
BERNARD L. MADOFF,  :
  :
  Debtor.  :
------------------------------------------------------------x

**DECLARATION OF HELEN DAVIS CHAITMAN IN OPPOSITION TO TRUSTEE'S
MOTION FOR AN ORDER APPROVING THE TRUSTEE'S RE-DEFINITION OF
"NET EQUITY" UNDER THE SECURITIES INVESTOR PROTECTION ACT**

I, Helen Davis Chaitman, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

1. I am a partner in Phillips Nizer LLP (the "Firm"), counsel to a large group of customers (the "Customers") of Bernard L. Madoff Investment Securities LLC ("Madoff"). I am a member of the bars of New York and New Jersey and of this Court. I submit this declaration

1096889.1

in opposition to the motion by Irving H. Picard (the "Trustee") for an order upholding the Trustee's re-definition of "net equity" under the Securities Investor Protection Act ("SIPA") and in opposition to the position taken by the Securities Investor Protection Corporation ("SIPC") in support of the Trustee's motion. Attached hereto as Exhibit A is a list of the Customers the Firm represents who have filed objections to the Trustee's determination letters.

**The Customers I Represent**

2.      The typical profile of the Customers the Firm represents is a couple in their 70's, 80's or 90's, all of whose assets, other than their home, were invested in Madoff. They are often struggling with serious medical issues. Since December 11, 2008, many have been forced to sell their homes in a down market in order to cover their living expenses. They live in constant fear that the Trustee will take away their tax refund or the sales proceeds of their houses because they were long-time Madoff investors who used their Madoff accounts for their retirement funds. Although these Customers worked hard throughout their lives, and saved as much as they could, their lives have now effectively been ruined.

3.      Some of the Firm's clients received their Madoff accounts as part of a final, non-appealable divorce decree providing for equitable distribution of marital assets. Although the divorce decree treated the Madoff accounts as having the values shown on the Madoff customer statements, the Trustee is substantially reducing the value of the accounts through his net investment calculation. These clients have no way of re-opening the divorce decree to restructure equitable distribution.

4.      Many of the Firm's clients received their Madoff accounts as a gift from a family member or following the death of a parent, whose estate paid taxes on the value of the account as reflected on the Madoff customer statements. The law does not permit the estates to amend their

returns to recover taxes paid on these accounts, despite the fact that, in many instances, the Trustee has credited these accounts with $0 value.

5. Some of the Firm's clients took mandatory distributions from their accounts, either because they were over 70 years old and had IRA accounts, or because they had partnership accounts which, under the applicable agreements, required that all appreciation be withdrawn each year.

6. All of the Customers paid all required federal and state taxes on the appreciation in the accounts.

7. Upon each stock transaction, the Customers were sent trade confirmations, which confirmed that Madoff was a SIPC member, and thus that their accounts were insured by SIPC. A sample trade confirmation, with identifying information redacted, is attached hereto as Exhibit NN.

8. Every Customer the Firm represents has been economically harmed by the actions of the Trustee as set forth in the accompanying memorandum of law, including those Customers who are "net losers" in the Trustee's terminology. None of the Firm's clients, including a number of "net losers," supports the Trustee's efforts to claw back withdrawals from Customers.

**Legislative History of SIPC**

9. A true copy of Senate Report 91-218, dated September 21, 1970, as reprinted in Federal Securities Laws Legislative History 1933-1982, vol. IV, is attached hereto as Exhibit B.

10. A true copy of House of Representatives Report 95-746, dated October 26, 1977 is attached hereto as Exhibit C.

*SIPC v. SJ Salmon & Co.* **Order and** *In Re New Times Securities Services, Inc.* **Transcripts and Briefs**

11. A true copy of a November 14, 1972 order in *SIPC v. SJ Salmon & Co.*, No. 72 Civ. 560 (S.D.N.Y. 1972) is attached hereto as Exhibit D.

12. A true copy of the relevant pages from a July 28, 2000 hearing transcript in the United States Bankruptcy Court for the Eastern District of New York in *In re New Times Securities Services, Inc.* is attached hereto as Exhibit E.

13. A true copy of the March 26, 2001 Limited Objection to Trustee's Determination of Claim submitted to the United States Bankruptcy Court for the Eastern District of New York in *In re New Times Securities Services, Inc.* is attached hereto as Exhibit F.

14. A true copy of the May 1, 2001 Joint Memorandum of Law in Support of Trustee's Motion for an Order Upholding the Trustee's Determinations with Respect to Claims Filed for Investments in Non-Existent Money Market Funds and Expunging Objections to those Determinations submitted by SIPC and the trustee to the United States Bankruptcy Court for the Eastern District of New York in *In re New Times Securities Services, Inc.* is attached hereto as Exhibit G.

15. A true copy of the June 1, 2001 Claimants' Joint Memorandum of Law in Opposition to Joint Motion of Trustee and Securities Investor Protection Corporation for an Order Upholding The Trustee's Determinations submitted to the United States Bankruptcy Court for the Eastern District of New York in *In re New Times Securities Services, Inc.* is attached hereto as Exhibit H.

16. A true copy of the June 18, 2001 Reply Memorandum of Law in Further Support of Joint Motion for an Order Upholding the Trustee's Determinations Treating Claims Filed for Investments In New Age Securities Money Market Fund as Net Equity Claims for Cash and Expunging Objections Filed with Respect to Those Determinations submitted by SIPC and the

trustee to the United States Bankruptcy Court for the Eastern District of New York in *In re New Times Securities Services, Inc.* is attached hereto as Exhibit I.

17.     A true copy of the October 17, 2002 Brief for Appellants James W. Giddens as Trustee for the Liquidation of the Businesses of New Times Securities Services, Inc. and New Age Financial Services, Inc. and Securities Investor Protection Corporation submitted to the United States Court of Appeals for the Second Circuit in *In re New Times Securities Services, Inc.* ("*New Times I*"), available at 2002 WL 32487939, is attached hereto as Exhibit J.

18.     A true copy of the June 20, 2003 Brief of the SEC, Amicus Curiae, in Partial Support of the Position of Appellants and in Partial Support of the Position of Appellees submitted to the United States Court of Appeals for the Second Circuit in *New Times I*, available at 2003 WL 24132250, is attached hereto as Exhibit K.

19.     A true copy of the December 27, 2005 Brief of Appellant Securities Investor Protection Corporation submitted to the United States Court of Appeals for the Second Circuit in *In re New Times Securities Services, Inc.* ("*New Times II*"), available at 2005 WL 5338148, is attached hereto as Exhibit L.

**Statements By SIPC, its Members, the SEC and the Trustee**

20.     A true copy of a December 16, 2008 articled on StreetInsider.com entitled "SIPC's Role In Madoff-Of-All-Scams Could Save The Stock Market," available at http://www.streetinsider.com/Insiders+Blog/SIPCs+Role+In+Madoff-Of-All-Scams+Could+Save+The+Stock+Market/4243249.html, is attached hereto as Exhibit M.

21.     A true copy of the July 14, 2009 testimony of SEC Commissioner Mary Schapiro before the House of Representatives Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprise is attached hereto as Exhibit N.

22. A true copy of the October 28, 2009 Statement of Irving H. Picard, Court-Appointed Trustee, Bernard L. Madoff Investment Securities LLC, available at http://www.sipc.org/pdf/2009-10-28%20IHP%20Press%20Conference%20Statement.pdf, is attached hereto as Exhibit O.

23. A true copy of the Securities Industry and Financial Markets Association and SIPC's brochure entitled "Understanding Your Brokerage Account Statements" is attached hereto as Exhibit P.

24. A true copy of the October 1994 edition of "How SIPC Protects You: Questions and Answers about SIPC", downloaded at www.jprcapital.com/howsipc.pdf, is attached hereto as Exhibit Q.

25. A true copy of the bylaws of SIPC, Revision #12 as of November, 2009, available at http://www.sipc.org/pdf/Bylaws%202009%20Revision%2012.pdf, is attached hereto as Exhibit R. Pursuant to Article 10, Section 4(a)(5) of SIPC's bylaws, the Official Explanatory Statement that members of SIPC are authorized to use pursuant to SIPC's bylaws is either

> Member of SIPC, which protects securities customers of its members up to $500,000 (including $100,000 for claims for cash). Explanatory brochure available upon request or at www.sipc.org; or
>
> Member of SIPC. Securities in your account protected up to $500,000. For details, please see www.sipc.org.

26. In a letter sent out after January 13, 2009 (over a month after Madoff's fraud was exposed), Citigroup Global Markets Inc. ("CGMI") represented to its customers that:

> **SIPC Protection**: CGMI is a member of the Securities Investor Protection Corporation (SIPC), a federally mandated U.S. nonprofit corporation that protects investors if a broker-dealer becomes insolvent. When a brokerage firm that is a member of SIPC fails, **SIPC's role is to ensure that investors get back what belongs to them**. If, when SIPC and the trustee examine the client accounts at a failed broker-dealer, there is a shortfall in the amount of securities or cash owed

> clients due to record-keeping errors or fraud, the affected clients are protected by SIPC coverage.
>
> Each client with missing securities or cash will be reimbursed by SIPC up to a maximum of $500,000, of which $100,000 may be cash. SIPC does not cover market losses, and it does not cover certain types of investments such as commodity futures contracts and fixed-annuity contracts. (emphasis in original).

A copy of the letter from CGMI. to its customers is attached hereto as Exhibit MM.

**SIPC Annual Reports**

27. A true copy of the 1973 Securities Investor Protection Corporation Annual Report is attached hereto as Exhibit S.

28. A true copy of the 2008 Securities Investor Protection Corporation Annual Report is attached hereto as Exhibit T.

**Relevant News Articles**

29. A true copy of an August 7, 2000 article in The Street.com by Robert Kowalski entitled "Investor-Protection Agency's Scroogelike Ways Draw Fire," available at http://www.thestreet.com/story/1029090/1.html, is attached hereto as Exhibit U.

30. A true copy of a June 22, 2001 New York Times article by Gretchen Morgenson entitled "U.S. Report Faults Agency That Oversees Investor Claims," available at http://www.nytimes.com/2001/06/22/business/us-report-faults-agency-that-oversees-investor-claims.html?scp=1&sq=U.S.%20Report%20Faults%20Agency%20That%20Oversees%20Investor%20Claims&st=cse, is attached hereto as Exhibit V.

**Statements By Bernard Madoff to Authorities**

31. A true copy of the Plea Allocution of Bernard L. Madoff is attached hereto as Exhibit W.

32. A true copy of a document entitled "Interview of Bernard L. Madoff" available on the SEC's website at http://www.sec.gov/news/studies/2009/oig-509/exhibit-0104.pdf is attached hereto as Exhibit X.

**GAO Reports and Communications From the Government To SIPC**

33. A true copy of a report of a March 31, 2000 audit of SIPC conducted by the SEC Office of the Inspector General from June 1999 to October 1999, available at http://www.sec-oig.gov/Reports/Auditsinspections/2000/301fin.pdf, is attached hereto as Exhibit Y.

34. A true copy of a May 2001 General Accounting Office Report to the Ranking Minority Member, Energy and Commerce Committee, House of Representatives, entitled "Securities Investor Protection: Steps Needed to Better Disclose SIPC Policies to Investors" is attached hereto as Exhibit Z.

35. A true copy of June 20, 2001 letter from Rep. John D. Dingell to the Acting Chairman of the SEC and SIPC regarding SIPC's deficiencies, available at http://archives.energycommerce.house.gov/press/107ltr63.shtml, stating that

> the large number of claims denied in several recent high-profile SIPC liquidation proceedings have raised concerns that SIPC policies and practices may unduly limit the actual protection afforded customers. Critics argue that SIPC's main goal has been to protect its industry-supplied fund rather than to protect customers as contemplated by SIPC. *See,* "Many Holes Weaken Safety Net for Victims of Failed Brokerages," The New York Times, Sept. 25, 2000; "Group Assails Insurer of Investors," The Washington Post, July 21, 1999; and "Many Unhappy Returns: Ex-Stratton Customers still fighting to recoup $130m," Newsday, Dec. 20, 1998.

is attached hereto as Exhibit AA.

36. The 2001 GAO Report had made the following recommendations for SIPC's conduct, with which Rep. Dingell "strongly agreed:"

1096889.1                                                8

- As part of SIPC's ongoing effort to revise the informational brochure and Web site, include a full explanation of the steps necessary to document an unauthorized trading claim.

- Amend SIPC's advertising bylaws to require that the official explanatory statement about a firm's membership in SIPC include a statement that the SIPC coverage does not protect investors against losses caused by changes in the market value of their securities.

*Id.*

37. A true copy of SIPC's then-president, Michael E. Don, June 22, 2001 press release in response to the GAO report, available at http://www.sipc.org/media/gao.cfm, is attached hereto as Exhibit BB.

38. The GAO found in a July 2003 follow-up report that one of its recommendations had not been properly implemented. A true copy of the July 2003 United States Accounting Office Report to Congressional Requesters, "Securities Investor Protection: Update on Matters Related to the Securities Investor Protection Corporation" (the "2003 Report") is attached hereto as Exhibit CC.

39. The 2003 Report stated:

> Third, we recommended that SIPC revise its brochure to warn investors to exercise caution when calling to complain about an unauthorized trade in order to avoid unintentionally ratifying an unauthorized trade. In response, SIPC provided investors with links to Web sites, such as SEC's, that offer information about investment fraud. However, SIPC provides links to only the main Web site and not to specific Web pages that contain the relevant information, so investors may have difficulty locating information about specific types of fraud. For example, based on the Web address provided in the brochure, investors searching SEC's Web site for "fraud" would be linked to over 5,000 possible references. Providing more specific links to investor education information would make it much easier for investors to locate relevant information.

*Id.*

40. The 2003 Report also noted that in April 2003, the SEC found that

>   the SIPC fund was at risk in the case of failure of one or more of
>   the large securities firms. SEC found that even if SIPC were to
>   triple the fund in size, a very large liquidation could deplete the
>   fund. Therefore, SEC suggested that SIPC examine alternative
>   strategies for dealing with the costs of such a large liquidation.
>   SIPC management agreed to bring this issue to the attention of the
>   Board of Directors, who evaluates the adequacy of the fund on a
>   regular basis.

*Id.*

41. A true copy of an August 11, 2003 letter from Rep. Barney Frank, then the Ranking Member of the Committee on Financial Services, Rep. Paul E. Kanjorski, then the Ranking Member of the Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises of the Committee on Financial Services and Rep. John D. Dingell, then the Ranking Member on the Committee on Energy and Commerce to the then-Chairman of the SEC, the then-President of SIPC and the then-Comptroller General of the U.S. General Accounting Office regarding the July 2003 GAO Report and the concerns raised therein, available at http://archives.energycommerce.house.gov/press/108ltr47.shtml, is attached hereto as Exhibit DD.

42. In their August 11, 2003 letter, Reps. Frank, Kanjorski and Dingell declared that they were "deeply troubled by th[e] state of affairs" at SIPC outlined the GAO Report. Specifically, the SEC had found in an examination of SIPC that:

>   (1) some statements in SIPC's brochure and Web site might
>   overstate the extent of SIPC coverage and mislead investors; (2)
>   there was insufficient guidance for SIPC personnel and trustees to
>   follow when determining whether claimants have established valid
>   unauthorized trading claims, one. . principle source of investor
>   complaints; (3) SIPC had inadequate controls over the fees
>   awarded to trustees and their counsel for services rendered and
>   their expenses; (4) SIPC lacks a retention policy for records
>   generated in liquidations where SIPC appoints an outside trustee;
>   and (5) the SIPC fund was at risk in the case of failure of one or
>   more of the large securities firms.

*Id.*

43.     Reps. Frank, Kanjorski and Dingell stated that this situation was "totally unacceptable and [they] urge[d] SIPC to fix these shortcomings, which [they] consider[ed] to be significant, with all deliberate speed before a major problem occurs." *Id.*

44.     The Congressmen "strongly agree[d]" with the statement in the GAO Report that:

> Disclosure has an important role in securities market regulation, and the Securities Investor Protection Corporation (SIPC) has a responsibility to inform investors of actions they can take to protect their investments and help ensure that investors are afforded the full protections allowable under the Securities Investor Protection Act of 1970 (SIPA).

*Id.*

45.     Reps Frank, Kanjorski and Dingell added that they agreed with the GAO recommendation that SIPC revise its brochure to provide more specific references to links to investor education information on the SEC web site and web sites of SROs such as NYSE and NASD. *Id.*

46.     In conclusion, the Congressmen requested that the GAO submit a follow-up report by April 2004 on the SEC, SRO and SIPC progress in implementing GAO's recommendations and addressing the "myriad issues raised by this report and identified by [their] letter, the effectiveness of these reforms, and the need for any further actions." *Id.*

47.     A true copy of an August 11, 2003 statement by Stephen Harbeck (then-General counsel and now President of SIPC), available on SIPC's website at http://www.sipc.org/media/release11aug03.cfm, is attached hereto as Exhibit EE.

48.     A true copy of a July 9, 2004 letter report by the General Accounting Office entitled "Follow-Up on GAO Recommendations Concerning the Securities Investor Protection

Corporation," available online at http://www.gao.gov/new.items/d04848r.pdf, is attached hereto as Exhibit FF.

49. A true copy of a January 31, 2003 report by Fitch Risk Management entitled "Review of SIPC's Risk Profile and Practices: The MJK Clearing Event, the Securities Lending Exposure, Risk Management Practices and Capital Requirements" is attached hereto as Exhibit GG.

50. The Executive Summary of the Report of Investigation by the SEC's Office of Inspector General (the "OIG"), Case No. OIG-509, is attached hereto as Exhibit HH. This Report concluded that "despite numerous credible and detailed complaints, the SEC never properly examined or investigated Madoff's trading and never took the necessary, but basic, steps to determine if Madoff was operating a Ponzi scheme. Had these efforts been made with appropriate follow-up at any time beginning in June of 1992 until December 2008, the SEC could have uncovered the Ponzi scheme well before Madoff confessed."

**Declarations Submitted in This Proceeding**

51. A true copy of the August 3, 2009 Declaration of Roger Peskin in Support of Objection to First Application of Irving H. Picard, Trustee, and Baker & Hostetler LLP for Allowance of Interim Compensation For Services Rendered and Reimbursement of Expenses Incurred from December 15, 2008 through April 30, 2009 is attached hereto as Exhibit II.

52. A true copy of the August 3, 2009 Declaration of Diane Peskin in Support of Objection to First Application of Irving H. Picard, Trustee, and Baker & Hostetler LLP for Allowance of Interim Compensation For Services Rendered and Reimbursement of Expenses Incurred from December 15, 2008 through April 30, 2009 is attached hereto as Exhibit JJ.

53. A true copy of the August 3, 2009 Declaration of Maureen Ebel in Support of Objection to First Application of Irving H. Picard, Trustee, and Baker & Hostetler LLP for Allowance of Interim Compensation For Services Rendered and Reimbursement of Expenses Incurred from December 15, 2008 through April 30, 2009 is attached hereto as Exhibit KK.

**Errors in the Trustee's Description of Net Equity Claimants**

54. We have found a number of errors in the Trustee's Description of Net Equity Claimants, attached as Exhibit A to the Trustee's motion. These errors are set forth on Exhibit LL hereto.

November 13, 2009

/s/ Helen Davis Chaitman