# EXHIBIT Q

**Board of Directors**

| | |
|---|---|
| Clifford Hudson | Chairman |
| Debbie D. Branson, Esquire | Vice Chairman |
| Albert J. Dwoskin | |
| John D. Hawke, Jr., Esquire | |
| Charles L. Marinaccio, Esquire | |
| Michael J. Prell | |
| Marianne C. Spraggins, Esquire | |

TEXT OF THIS BROCHURE ISSUED BY SIPC AND
ONLY SIPC MAY MAKE CHANGES

© Securities Investor Protection Corporation 1994

# HOW SIPC

# PROTECTS YOU

## Questions and Answers About SIPC

Securities Investor Protection Corporation
805 Fifteenth Street, N.W.
Suite 800
Washington, D.C. 20005-2215
(202) 371-8300

# FOREWORD

The Securities Investor Protection Corporation (SIPC) protects customers of registered securities broker-dealers, thereby promoting confidence in United States securities markets. Though created by the Securities Investor Protection Act of 1970 (15 U.S.C. §78aaa et seq., as amended), SIPC is neither a government agency nor a regulatory authority. It is a nonprofit, membership corporation, funded by its member securities broker-dealers.

This text answers the most frequently asked questions about how claims are satisfied when securities customers of a member need SIPC protection. Of course, SIPC does not protect against losses from the rise or fall in market value of your investment. It does, however, provide important protections against certain losses if a SIPC member fails financially and is unable to meet obligations to its securities customers.

The Securities Investor Protection Act is a complex and technical statute. While this brochure provides a basic explanation, it does not purport to explain the statute with respect to any particular fact pattern. Answers to questions involving particular facts depend upon interpretations, administrative decisions, and court actions. **NO PERSON MAY, BY ANY REPRESENTATION, INTERPRETATION, OR OTHERWISE, AFFECT THE EXTENT OF THE COVERAGE PROVIDED CUSTOMERS' ACCOUNTS BY THE ACT OR THE RULES ADOPTED THEREUNDER.**

October, 1994
Seventh Edition

# CONTENTS

|  | Page |
|---|---|
| **Basic Protection** | |
| SIPC Protection | 5 |
| "Customer" Defined | 5 |
| Property Protected | 6 |
| Protected "Securities" | 7 |
| Mutual Funds and Money Market Funds | 7 |
| $100,000 Cash Limitation | 7 |
| Accounts at More Than One Broker | 8 |
| Several Accounts at One Broker | 8 |
| SIPC Fund Protects Customers | 8 |
| Dealing With a SIPC Member | 9 |
| | |
| **Customer Protection Proceedings** | |
| Notice to Customers | 11 |
| Submitting Claim Forms | 11 |
| Time Limits | 11 |
| Return of Customer Securities | 12 |
| Securities Valued | 12 |
| Return of Customer Property | 12 |
| Stock Option Protection | 13 |
| Determining Customer Claims | 13 |
| Customer Indebtedness | 13 |
| Customers Ineligible for Protection | 14 |
| | |
| **Membership and Financing** | |
| Member Broker-Dealers | 15 |
| SIPC's Governance | 15 |
| Source of Funds | 16 |
| Emergency Financing | 16 |
| Examination of Membership | 16 |

# BASIC PROTECTION

## 1.   What is SIPC's basic protection?

SIPC protects securities customers of member broker-dealers. If a member fails financially SIPC may ask a federal court to appoint a trustee to liquidate the firm and protect its customers, or, in limited situations involving smaller firms, SIPC may protect the customers directly. In both cases, protection of securities customers is similar.

The trustee and SIPC may arrange to have some or all customer accounts transferred to another SIPC member broker-dealer. Customers whose accounts are transferred are notified promptly and permitted to deal with the new firm or subsequently transfer their accounts to firms of their own choosing. Accounts so transferred are subject to the limitations of protection discussed below. This procedure minimizes disruption in customers' trading activities. In many cases (for example, where failed firms' records are inaccurate), account transfers are not feasible. SIPC then protects customer accounts in the following manner:

Customers of a failed firm receive all securities registered in their names or in the process of being so registered and which are not by endorsement or otherwise in negotiable form.

Customers receive, on a pro rata basis, all remaining customer cash and securities held by the firm.

After the above distribution, SIPC's funds are available to satisfy the remaining claims of each customer up to a maximum of $500,000, including up to $100,000 on claims for cash (as distinct from claims for securities). When a customer has sold a security, any claim with respect to that transaction would be subject to the $100,000 limit of protection for cash.

Any remaining assets after payment of liquidation expenses may be available to satisfy any remaining portion of customers' claims on a pro rata basis with other creditors.

## 2.   Who is a "customer" protected under the Act?

"Customers" are persons with claims for securities received,
acquired or held by the firm from or for the

securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting a transfer. Persons who have cash on deposit with a firm for the purpose of purchasing securities or as a result of sales thereof are also considered "customers."

Cash on deposit with a SIPC member for the purpose of earning interest or for any purpose other than purchasing securities is not protected under the Act (see question 3).

A person is not considered a "customer" under the Act to the extent that his claim (a) is for cash or securities which, by contract, agreement, or understanding, or by operation of law, is part of the capital of the firm or is subordinated to the claims of creditors of the firm, or (b) arises out of transactions with a foreign subsidiary of the firm (see question 20 for a discussion of customers who are ineligible to receive money from SIPC).

---

## 3.    What property does SIPC protect?

---

Customers' cash and securities. Most types of securities, such as notes, stocks, bonds and certificates of deposit, are covered. No protection, however, is provided for investment contracts which are not registered as securities with the Securities and Exchange Commission under the Securities Act of 1933. Many limited partnerships organized to finance things such as ventures in real estate or oil and gas exploration are not registered under the Securities Act of 1933 and are not, therefore, covered by SIPC protection. SIPC protection does not cover any interest in gold, silver or other commodity, or commodity contract, or commodity option. It is important to remember, however, that SIPC protection does not cover decline in the market value of securities.

Cash balances are protected under the Securities Investor Protection Act if the money was deposited or left in a securities account for the purpose of purchasing securities. This is true whether or not the broker pays interest on the cash balances. Cash balances maintained solely for the purpose of earning interest are not protected.

SIPC presumes that cash balances are left in securities accounts for the purpose of purchasing securities. It would require substantial evidence to the contrary to overcome this presumption. Standing alone, the fact that a cash balance was earning interest and was not used

to purchase securities for a considerable period of time, say several months, would not be sufficient to overcome the presumption.

---

## 4.   What are protected "securities?"

---

In addition to notes, stocks, bonds, debentures and certificates of deposit, the term "security" includes some investment contracts and certificates of participation or interest in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease. Such investment contracts or interests are securities protected by SIPC if and only if registered as securities with the Securities and Exchange Commission under the Securities Act of 1933. Warrants or rights to purchase, sell or subscribe to the protected securities mentioned above and any other instrument commonly referred to as a security are also protected under the Act.

---

## 5.   Does SIPC protect mutual funds or money market funds?

---

Shares of mutual funds are securities and are protected in the same manner as other securities in securities accounts with SIPC members. However, broker-dealers that deal exclusively in mutual funds are not members of SIPC and customers of such firms are not protected by SIPC.

Shares of money market funds, although often thought of by investors as cash, are in fact securities when such funds are organized as mutual funds. When held by a SIPC member in a customer's securities account, such fund shares are protected as any other covered security.

An investment in mutual fund shares, including money market mutual fund shares, is not protected or guaranteed by SIPC against loss in value.

---

## 6.   Why is cash protection limited to $100,000?

---

Two Federal Government agencies have similar limitations on cash claims: the Federal Deposit Insurance Corporation established by Congress in 1933 and the National Credit Union Administration's share

insurance program authorized in October 1970. Both limit cash protection to $100,000.

---

**7.   May a customer have protected accounts with more than one SIPC member?**

---

Yes. Customers' securities accounts with each SIPC member are protected without regard to accounts with other SIPC members.

---

**8.   May a customer have more than one protected account with the same SIPC member?**

---

Yes, where a customer holds accounts with the same SIPC member in separate capacities. For example, if a person deals with the member in the person's own capacity and also maintains accounts as a trustee for another person under certain trust arrangements, the person would be deemed a different customer in each capacity. A customer having several different accounts must be acting in a good faith separate capacity with respect to each.

An investor might, for example, have one account in his or her name and maintain a joint account with his or her spouse, providing each possesses authority to act with respect to the entire account.

All such accounts, however, must meet the requirements of SIPC rules identifying accounts of "separate" customers of SIPC members. Copies of these rules may be obtained by writing to SIPC and requesting the "Series 100 Rules."

A person who in a **single** capacity has several different accounts with the same firm, e.g., cash and margin, would be considered a single customer for purposes of applying the $500,000/$100,000 limits.

---

**9.   How does SIPC's Fund protect customers?**

The examples below apply to claims remaining **after** the return to customers of securities registered in their names and **after** the pro rata dis-

tribution of customer cash and securities held by the firm (see question 1).

—    A remaining claim is for $400,000 in securities. The claim would be satisfied in full.

—    A customer has a remaining claim for $400,000 in securities in an individual account and for $500,000 in securities in a joint account with his or her spouse, as to which each has full authority. The spouse also has an individual account in which there is a claim for $400,000 in securities. All three claims would be fully covered.

—    A customer has a remaining claim for $730,000 in securities in a margin account, but he owes the broker $230,000 on those securities. The customer's "net equity" would be $500,000 and would be fully covered. With the trustee's approval, the customer may pay the $230,000 and receive the $730,000 in securities (see question 19).

—    A remaining claim is for $420,000 in securities and $100,000 in cash. All but $20,000 would be covered.

—    A remaining claim is for $30,000 in securities and $110,000 in cash. The claim would be covered to the amount of $130,000 ($30,000 for securities and $100,000 for cash).

—    A customer has a remaining claim for $550,000 in securities and $120,000 in cash. The claim would be covered to the amount of $500,000 (the maximum).

In the last three examples, any portion of the claim remaining may be satisfied in part from assets of the failed firm if any are available for distribution to creditors.

**10.  How can I be sure that I am dealing with a SIPC member?**

SIPC members display this sign:



SECURITIES INVESTOR PROTECTION CORPORATION

If you have a question as to whether a firm is a member of SIPC, you may call or write to our Membership Department at the telephone number or address on the title page of this brochure.

Some SIPC members have affiliated or related companies or persons who conduct financial or investment businesses but who are not members of SIPC. Some of these affiliates have names which are similar to the name of the SIPC member, or which operate from the same offices or with the same employees. Be sure you receive written confirmation of each securities transaction in your securities account with the SIPC member, and that each confirmation statement and each statement of account is issued by the SIPC member and not by a non-SIPC member affiliate. Deposits for credit to your securities account, by check or otherwise, should not be made payable to your account executive, registered representative, or to any other individual, but generally only to your SIPC member broker-dealer or, if your account is carried at another SIPC member who provides clearing services for your SIPC member broker-dealer, then to that other SIPC member. If your check or deposit is payable to other than a SIPC member broker-dealer (such as to the issuer of the securities you are purchasing or to a bank escrow agent), you should take steps to insure that your funds are properly applied.

SIPC protects customers of SIPC member broker-dealers as long as the broker-dealer is a SIPC member. However, if a SIPC member broker-dealer's registration with the Securities and Exchange Commission is terminated, the broker-dealer's SIPC membership is also automatically terminated. SIPC loses its power to protect customers of former SIPC members 180 days after the broker-dealer ceases to be a member of SIPC. Normally, the Commission will not permit the termination of the registration and SIPC membership of a broker-dealer if the firm owes securities or cash to customers. However, a SIPC membership may be terminated if the Commission is unaware the firm owes securities or cash to customers.

You should be vigilant to assure that you receive your periodic statements on a timely basis. The failure to provide statements may

indicate the broker-dealer has gone out of business. If you do not receive your statement when due and cannot get a satisfactory explanation, or if for any other reason you believe your broker-dealer may have ceased doing business, you should promptly contact the nearest office of the Commission. Remember, if your broker-dealer ceases to be a SIPC member while still owing cash and securities to you, you should notify the Commission well within the 180-day period.

# CUSTOMER PROTECTION PROCEEDINGS

**11. How do customers learn that their broker has been placed in liquidation?**

Notice will be published in one or more newspapers of general circulation and a copy together with a claim form mailed to each customer's address as it appears from the broker's books and records.

**12. To whom does a customer submit a claim form?**

Directly to the trustee; if no trustee has been appointed, directly to SIPC. The notice and claim form (referred to above) will give instructions.

It is important that customers submit their completed claim forms promptly within the time limits set forth in the notice and in accordance with the instructions to the claim form. Failure to do so may result in the loss of all or a portion of a customer's claim for funds and securities.

Customers who are notified that their accounts have been transferred should nevertheless file claim forms to preserve their rights to correct any errors in their accounts as transferred.

---

**13.  Are there time limits for filing claims?**

---

There are two deadlines which apply to the filing of customer claims. One is set by the bankruptcy court supervising the proceeding and one is set by the law governing the proceeding. The time set by the bankruptcy court for filing customer claims is usually 60 days after the date notice of the proceeding is published but could be as little as 30 days after the publication date. The deadline appears in the published notice and a copy of the notice is mailed to customers along with claim forms and instructions which also prominently display the date. You should pay careful attention to the deadlines set forth in the notice and be certain your claims are filed in a timely manner.

If a customer claim for securities is received by the trustee after the date set by the bankruptcy court but within six months of the publication date, the claim is subject to delayed processing and to being satisfied by payment of cash at the filing date value of the securities, if the trustee determines that would cost less than satisfying the claim with the securities.

The six-month deadline is set by the law governing the proceeding. It absolutely bars the allowance of any claim, including a customer claim, not actually received by the trustee within six months after the publication date. Neither the Trustee nor SIPC has authority to grant extensions of time beyond the six-month period, regardless of the reason.

---

**14.  Will a customer get back all of the securities in the account?**

---

Usually, yes; but sometimes no. Here's why:

For various reasons, a failed firm may not have all customer securities on hand. The trustee attempts to purchase such missing securities in the market, providing a fair and orderly market for the securities can be found.

When missing securities cannot be replaced by market purchases, the customer receives cash based on the market value of the securities as of the value date (see question 15).

---

## 15. How is a customer's claim for securities valued?

---

Claims are valued as of a date prescribed by the Act ("value date"), generally the day customer protection proceedings commence.

To the extent possible (as indicated above), claims for securities are satisfied by delivering securities to customers. The amount of cash paid instead of securities reflects their worth on the value date and may, of course, differ from the securities' value on the date payment is made.

---

## 16. How quickly can a customer expect to receive property in the account?

---

This will vary from proceeding to proceeding. As a general rule, most customers can expect to receive their property in one to three months. When the records of the firm are accurate, deliveries of some securities and cash to customers may begin shortly after the trustee receives the completed claim forms from customers, or even earlier if the trustee can transfer customer accounts to another broker-dealer. On the other hand, there may be delays of several months where the firm's records are not accurate, or where it appears that the firm or its principals were involved in fraudulent activities. Some delays also may be caused by the need to send stock certificates to transfer agents with specific instructions to issue smaller denominations and issue certificates in other names. This can be a time-consuming operation.

---

**17.  How are stock options protected?**

All exchange-traded securities option positions will be closed and customers who have claims for such positions will, within the statutory limits, be paid the market value of those positions on the value date (see question 15).  The trustee, in his sole discretion, may choose not to close some covered short positions when the customer's broker has caused the cover to be deposited with either its correspondent broker or the Options Clearing Corporation.  The fact that the customer has given his broker the underlying securities does not guarantee the position is covered for purposes of a SIPC liquidation proceeding.

**18.  How is the amount of a customer's claim determined?**

The amount of the customer's claim, excluding any securities registered in his name and returned to him, is called his "net equity." The net equity of a customer's account is determined by adding the total value of cash and securities the firm owes the customer and subtracting the total value of cash and securities the customer owes the firm.

**19.  Must the customer pay what he owed the firm to the trustee?**

Usually no, because indebtedness is taken into account in computing a customer's net equity and the customer will receive a pro rata share of the securities in the account valued as of the value date. However, with the trustee's approval and within a time period determined by the trustee but not exceeding 60 days from publication of the notice described in question 11, the customer may pay the debit

balance and receive all of the securities in the account subject to the limitations described in question 1.

When the customer owes the firm more than the firm owes the customer, the customer must pay the difference to the trustee.

---

## 20. Which customers are ineligible for protection from SIPC funds?

---

SIPC's funds may not be used to pay claims of any customer who also is: (1) a general partner, officer, or director of the firm; (2) the beneficial owner of five percent or more of any class of equity security of the firm (other than certain nonconvertible preferred stocks); (3) a limited partner with a participation of five percent or more in the net assets or net profits of the firm; (4) someone with the power to exercise a controlling influence over the management or policies of the firm; or (5) a broker or dealer or bank acting for itself rather than for its own customer or customers.

---

# MEMBERSHIP AND FINANCING

---

## 21. Who are members of SIPC?

---

Broker-dealers registered with the Securities and Exchange Commission (other than banks registered as municipal securities dealers) whose principal business is conducted within the United States, its territories or possessions are automatically members of SIPC with two exceptions:

—   Broker-dealers whose business as a broker-dealer is exclusively (1) the distribution of shares of mutual funds, (2) the sale of variable annuities, (3) the business of insurance, or (4) the furnishing of investment advice to investment companies or insurance company separate accounts.

—   Broker-dealers whose securities business is limited to United States Government securities and who are registered with the Securities and Exchange Commission under a provision of law which does not confer SIPC membership. Investors interested in whether a particular government securities dealer is a member of SIPC should make appropriate inquiries.

A SIPC member displays this sign:



See also question 10.

---

## 22. Who runs SIPC?

---

SIPC's Board of Directors, which consists of seven members. Five are appointed by the President of the United States (subject to Senate confirmation), of whom two are representatives of the general public and three, the securities industry. From the public members, the President designates the Chairman and Vice Chair-

man. In addition, one member each is designated by the Secretary of the Treasury and the Federal Reserve Board from among their respective officers and employees.

The Securities and Exchange Commission has certain oversight and regulatory functions with respect to SIPC.

---

**23. Where does SIPC get its money?**

---

The money required to protect customers beyond that which is available from the property in the possession of the failed broker-dealer is advanced by SIPC from a fund maintained for that purpose. The sources of money for the SIPC Fund are assessments collected from SIPC members and interest on investments in United States Government securities.

---

**24. Is there emergency financing in the event the SIPC Fund is insufficient?**

---

Yes. In an emergency, SIPC may borrow up to $1 billion from the U.S. Treasury through the Securities and Exchange Commission if the Commission determines such a loan is necessary to protect customers and maintain confidence in United States securities markets. SIPC must present a plan which provides as reasonable an assurance of prompt repayment as may be feasible under the circumstances. If the Commission determines industry assessments would not satisfactorily repay the loan, it may impose a transaction fee on purchasers of equity securities at a rate not exceeding 1/50 of 1% of the purchase price ($.20 per $1,000). This fee would not apply to transactions of less than $5,000.

SIPC also has authority to establish confirmed lines of credit and has from time to time maintained confirmed lines of credit with a consortium of banks.

---

**25. Who examines the operational and financial conditions of SIPC members?**

---

The securities exchanges and the National Association of Securities Dealers, Inc. (NASD) are the "examining authorities" for their members.  SIPC has no authority to examine or inspect its members.