# EXHIBIT Y

# OVERSIGHT OF SECURITIES INVESTOR PROTECTION CORPORATION

## *EXECUTIVE SUMMARY*

*We conducted an audit of the Commission's oversight of the Securities Investor Protection Corporation (SIPC). Overall, we found that the Commission's oversight was generally efficient and in compliance with the Securities Investor Protection Act of 1970 (the Act). We also found that the Division of Market Regulation (MR) has a constructive working relationship with SIPC staff. SIPC trustees and officials were complimentary of the Commission's oversight efforts.*

*Commission officials generally agree that the Commission's oversight of SIPC would be enhanced if SIPC would articulate more specifically the standards it employs for initiating and acting on claims in SIPA proceedings, as discussed below. Other issues discussed below include monitoring claims, periodic inspections, oversight communications, investor awareness, tracking customer requests, evaluation of fund balance, and oversight documentation.*

*We have revised the draft report to reflect the efforts of Commission officials to resolve several issues in the report.*

## BACKGROUND

*Securities Investor Protection Act*

The Securities Investor Protection Act of 1970, 15 U.S.C. Section 78aaa et. seq., as amended (the Act) was created to protect customers from losses resulting from broker-dealer failure, thereby promoting investor confidence in the securities markets.

As interpreted, the Act protects customers whose securities were misappropriated, never purchased, or stolen. However, it has not covered sales practice claims against broker-dealers that do not involve misappropriation or conversion ( *e.g.,* fraudulent sales practices, unsuitable investments, failure to execute sell orders).

Customers are protected for cash and most types of securities, such as notes, stocks, bonds, and certificates of deposit. Other items, such as commodity or futures contracts, are not covered, nor are investment contracts, or certificates of interest or participations in profit-sharing agreements or oil, gas, or mineral royalties or leases unless registered with the Commission. Currently, the limits of protection are $500,000 per customer,

except for cash ($100,000 limit).

### *Securities Investor Protection Corporation*

The Securities Investor Protection Corporation (SIPC), a nonprofit, membership corporation created by the Act, pays customer claims. Registered broker-dealers are generally required to be SIPC members. SIPC operates under a set of bylaws, rules, and internal policies. A board of seven directors determines policies and governs SIPC operations.

The Commission and SROs report member broker-dealers in financial difficulty to SIPC. If SIPC determines that customers of a member require protection under the Act, it initiates a customer protection proceeding by applying to a federal district court to appoint a trustee.[1] Once the trustee is appointed, SIPC staff initiate the broker-dealer's liquidation, advise the trustee, review claims, and audit distributions of property in accordance with the Act.

SIPC maintains a Fund to protect customers if the broker-dealer's resources are inadequate. Fund resources are also used for administrative costs of a liquidation. Registered broker-dealers pay a $150 annual assessment into the Fund,[2] which also earns interest on investments in U.S. Government securities.

As a supplement to the Fund, SIPC obtained a $1 billion revolving line of credit from a consortium of banks. The Commission also has authority under the Act to lend SIPC up to $1 billion, which the Commission, in turn, would borrow from the U.S. Treasury.

As of December 31, 1998, SIPC had a Fund balance of nearly $1.2 billion (a net increase of $88 million during 1998),[3] 29 employees, and 7,542 members. SIPC initiated six protection proceedings in 1998 and processed about 1,500 claims. Over the last ten years, an average of seven liquidation proceedings have been initiated annually.

### *Commission Oversight*

MR is responsible for oversight of SIPC (17 C.F.R. section 200.19a). MR's general oversight functions include reviewing proposed rule changes, recommending adoption and amendment of Commission rules, and conducting inspections, examinations, and market surveillance.

MR also has delegated authority to notify SIPC of any member in or approaching financial difficulty. The Division of Enforcement (Enforcement), the regional offices, and the Office of Compliance Inspections and Examinations (OCIE) have similar authority.

The Commission may apply to a federal district court for an order requiring SIPC to discharge its obligations under the Act if it refuses to commit its funds or fails to act to protect customers of a SIPC member. SIPC is also required to submit its annual report to the Commission, which, in turn, must transmit it to the President and the Congress.

---

[1] In limited situations, SIPC may protect customers directly.
[2] During 1971-1977, 1983-1985, and 1989-1995, member assessments were based on a percentage of each member's gross revenue (net operating revenue for 1991-1995) from the securities business.
[3] The SIPC Fund balance as of September 30, 1999, was $1.17 billion.

# SCOPE AND OBJECTIVES

The primary audit objective was to evaluate the efficiency and effectiveness of the Commission's oversight of SIPC and to determine if oversight was in compliance with the Act. We did not directly review any financial or operational aspects of SIPC. We also did not test the propriety of specific claims submitted to SIPC trustees (or SIPC where no trustee was appointed). The audit was performed from June 1999 through October 1999 in accordance with generally accepted government auditing standards.

# AUDIT METHODOLOGY

We reviewed the Act and its legislative history to understand the Commission's oversight responsibilities. We also reviewed SIPC rules, bylaws, and related submissions to the Commission. Additionally, we reviewed recent SIPC annual reports, liquidation statements of account, and other correspondence between the Commission and SIPC, such as delinquency notices.

We examined past inspection reports prepared by MR (along with supporting documentation) and reviewed examples of investor requests to SIPC to initiate a liquidation proceeding. We also reviewed past reports on SIPC prepared by GAO and independent consultants, as well as relevant news articles.

We interviewed selected officials from MR, Enforcement, OCIE, Office of the General Counsel (OGC), and the Northeast Regional Office (NERO) (because many failed broker-dealers are headquartered in New York). Finally, we interviewed selected SIPC officials and trustees, and SRO officials to evaluate the Commission's oversight and identify potential enhancements.

# AUDIT RESULTS

We found that the Commission's oversight was generally efficient and in compliance with the Securities Investor Protection Act of 1970 (the Act). We also found that MR and SIPC staff have a constructive working relationship. SIPC officials and trustees were complimentary of the Commission's oversight efforts.

Commission officials generally agree that the Commission's oversight of SIPC would be enhanced if SIPC would articulate more specifically the standards it employs for initiating SIPA proceedings, as discussed below. We also have several other recommendations in this section that may enhance Commission oversight of SIPC.

## INITIATION OF SIPA PROCEEDINGS

SEC officials believe that SIPC usually is interpreting the Act properly. In the overwhelming majority of cases, SIPC and Commission staff have agreed whether a proceeding should be initiated pursuant to the Act. Nevertheless, there have been a few

instances in the past several years in which there has been disagreement both between Division of Market Regulation and Division of Enforcement staff and between Commission staff, on the one hand, and SIPC, on the other, on whether the requirements of the Act were met. These disagreements related generally to whether there was a "customer" as defined in the Act, and whether the customer purchased a "security" under the Act. To date, the staff has resolved all initial disagreements through consultations that yielded a staff consensus. The staff believes that the lack of specificity from SIPC as to the standards of proof it applies and the evidence upon which it relies has made it more difficult for staff to resolve disagreements on particular matters.

## Recommendation A

The Division of Market Regulation should obtain from SIPC a statement setting forth in writing the evidence necessary and the standard of proof SIPC uses in initiating and acting on claims in SIPC proceedings. In addition, MR should inform SIPC that it should provide written documentation of its reasons for denying coverage in particular case s upon the request of MR and Enforcement. This will allow the staff to evaluate SIPC's reasoning, taking into account other evidence available to the staff.

# MONITORING CLAIMS

Under Chapter 11 of the Bankruptcy Code, the Commission has authority to appear in corporate reorganization cases. This authority allows the Commission to enter an appearance and to take positions on issues in a case. The Commission has the authority under the Act to enter an appearance and participate in SIPC cases. Generally, the Commission has not exercised this authority, and no Commission division has been delegated such authority.

OGC, MR and Enforcement have been discussing whether the OGC staff should enter notices of appearance in SIPC cases. OGC believes that, given the limited number of active SIPC proceedings at any given time, it should be possible to accommodate the additional workload with the existing bankruptcy staff in OGC and the regional offices. The OGC staff would enter notices of appearance, as it does now in major public company corporate bankruptcies. OGC staff would consult with staff of MR and Enforcement in the consideration of issues arising in SIPC proceedings. If significant questions arise, the OGC staff would work with MR and Enforcement to determine how those questions should be resolved and whether the staff should seek Commission authorization to take a position in the proceeding. Commission authorization would be required before any formal position could be taken in a SIPC case. OGC, MR and Enforcement have agreed that OGC staff should enter appearances in SIPC cases on a one-year pilot basis.

## Recommendation B

OCG, MR and Enforcement should request that the Commission delegate authority to OGC to enter appearances in SIPC cases on a one-year pilot basis.

## PERIODIC INSPECTIONS

Since SIPC's inception in 1970, MR has inspected it in 1985 and 1994. Neither inspection identified significant operational weaknesses or noncompliance with the Act. An independent accounting firm audits SIPC's financial statements annually.

### *Inspection Responsibility*

OCIE was established in 1995 to consolidate the Commission's inspection and examination programs. At that time, most of the inspection and examination responsibilities of MR and the Division of Investment Management were transferred to OCIE. The creation of OCIE ensures greater consistency in examinations, a greater ability to direct resources where they are most needed, and increased responsiveness to changes in the industry. OCIE has valuable inspection expertise. MR has expertise in SIPC-related issues and a constructive working relationship with SIPC staff. MR has historically inspected SIPC.

MR and OCIE agree that OCIE and MR should coordinate joint inspections and make joint recommendations. MR and OCIE plan to conduct a joint inspection of SIPC in calendar year 2000.

### *Frequency and Scope*

In response to a 1992 General Accounting Office (GAO) recommendation,[4] MR agreed to inspect SIPC every 4-5 years. MR questions whether more frequent inspections would be an efficient use of resources, while Enforcement and NERO believe that more frequent SIPC inspections are necessary.

The 1994 inspection required five staff and took about two years to complete since staff was not dedicated to the project on a full-time basis (*i.e.*, had conflicting duties). SIPC officials stated that, although the inspection was not disruptive, it would have preferred a more timely inspection. OCIE's primary responsibility is to conduct inspections and examinations, and OCIE inspections are generally completed and sent to the Commission in less than a year.

The 1994 inspection primarily covered the financial condition of SIPC and the efficiency (*i.e.*, timeliness and cost) of four specific liquidations under the Act. MR was thorough in the areas it reviewed. Specific SIPC decisions on (1) requests to bring a liquidation proceeding and (2) claims submitted to the trustee during a liquidation were not covered since MR already reviews requests to initiate a proceeding denied by SIPC on an on-going basis. The 1985 inspection had a limited scope and did not address these issues.

We identified several areas not addressed on past SIPC inspections that could improve oversight effectiveness. These are briefly listed below:

- adequacy of SIPC policies, procedures, and/or standards used to determine whether a customer request to bring a liquidation proceeding (or claim submitted to the trustee during a proceeding) has merit under the Act;

- sufficiency of SIPC guidance given to trustees regarding (1) evidence (*e.g.*, type and amount) necessary to establish a valid customer claim and (2) recognition of legal precedents in liquidation proceedings;

---

[4] "Securities Investor Protection: The Regulatory Framework Has Minimized SIPC's Losses," (GGD-92-109) recommended that the Commission should periodically review SIPC operations.

- propriety of SIPC decisions made regarding claims submitted to the trustee during a proceeding, given Act requirements;
- consistency of trustee actions in acting as a fiduciary to investors;
- comparison of the timeliness of each stage of claim processing during a liquidation compared to results from past inspections (*e.g.,* 1994); and
- reasonableness of SIPC administrative expenses, including a comparison to amounts paid out in satisfaction of claims.

During the audit, OCIE and MR prepared planning memoranda for the 2000 joint inspection and stated that the inspection would cover all issues identified above. MR was working with OCIE to finalize the inspection scope. We commend OCIE and MR for their efforts in planning this inspection. OCIE officials stated that the frequency and scope of future SIPC inspections would be decided after the joint inspection.

## Recommendation C

The Division of Market Regulation and OCIE should conduct joint SIPC inspections and make joint recommendations.

## Recommendation D

The Division of Market Regulation and OCIE should decide on a review schedule and inspection scope for future SIPC inspections.

## OVERSIGHT COMMUNICATIONS

Communication between MR and SIPC staff was effective. Besides frequent phone contact, MR staff meet with SIPC quarterly to discuss relevant matters. SIPC also forwards its annual and monthly financial reports to MR. Finally, MR staff attend meetings of SIPC's board of directors, as necessary.

OCIE (except for recent inspection planning) and Enforcement have limited interaction with SIPC unless a specific issue arises. Regional examination and inspection staff typically notify SIPC directly when a firm is in financial difficulty. OCIE and Enforcement staff in headquarters relay information to MR, which contacts SIPC. SIPC officials stated that they generally receive timely and accurate information from the Commission.

MR, Enforcement, and NERO officials stated that internal communications regarding SIPC could be improved. These organizations stated that they attempt to keep each other informed about SIPC-related complaints and issues. However, we found no formal mechanism for sharing SIPC information. Periodic meetings could help ensure that information (e.g., investor complaints, status of current liquidations, etc.) is shared timely.

## Recommendation E

The Division of Market Regulation, Enforcement, NERO, and OCIE should conduct periodic briefings on SIPC related issues.

## INVESTOR AWARENESS

All officials interviewed believe that many investors do not sufficiently understand SIPC. While many investors may have heard of SIPC, they do not understand what it covers. For example, some investors equate SIPC coverage to the much broader Federal Deposit Insurance Corporation protection of bank deposits and think that SIPC covers any loss, including fraudulent broker activities.

The scope of SIPC coverage can also be confusing. For example, although unauthorized trades are covered, the failure to execute a trade is not. Several suggestions that could improve investor understanding of SIPC are described below.

MR and SIPC officials agreed that it would be useful to review the SIPC brochure, last updated in 1994, given changes in the market environment that could affect coverage. For example, the current brochure is silent about notifying the firm in a timely manner of improper account activity and documenting this notice. An unauthorized trade may be difficult to prove if the customer has not documented a timely complaint to the broker.

Investor awareness of SIPC could be improved in other ways. For example, the Office of Investor Education and Assistance (OIEA) could add a SIPC component to its website. This component could include a brief description of SIPC, the Commission's oversight role, and a link to SIPC's site. OIEA officials agreed and added a SIPC component to its website during the audit. OIEA officials also suggested that the SIPC brochure could be included in the Consumer Information Center's (CIC) catalog of consumer publications. The CIC, a Federal entity in Pueblo, Colorado, distributes consumer and investor publications upon request.

### Recommendation F

The Division of Market Regulation, in coordination with OIEA, should review the current SIPC brochure for adequacy, and encourage SIPC to make appropriate changes.

### Recommendation G

The Office of Investor Education and Assistance should add a SIPC component to its website. During the audit, OIEA implemented this recommendation.

### Recommendation H

The Office of Investor Education and Assistance should work with SIPC officials to have the SIPC brochure (or similar disclosures) included in CIC's catalog of publications.

## TRACKING CUSTOMER REQUESTS

MR's review of customer requests where SIPC has refused to bring a liquidation proceeding are critical due to time constraints for initiating a proceeding under the Act.[5] Although many requests are easily handled (e.g., a request against a firm that is not insolvent), others require more extensive analysis. MR has noticed an increase in

---

[5] SIPC has a total of eight months after a broker-dealer files a complete registration withdrawal request with the Commission to initiate a liquidation proceeding (SIPC retains jurisdiction over the broker-dealer until six months after the effective date of the broker-dealer's registration withdrawal, which is generally 60 days after a request is filed).

customer requests to bring a liquidation proceeding in the last several years.[6]

During the audit, MR began tracking SIPC requests reviewed in a Word document listing. As of September 1999, there were 11 active, 5 pending, and 15 resolved matters on the list. MR officials agreed that tracking SIPC requests reviewed in an ACCESS database may improve oversight due to enhanced querying and reporting capabilities. Improved tracking will be especially important if the number of requests continues to rise.

## Recommendation I

The Division of Market Regulation should transfer its Word listing of requests reviewed to an ACCESS database to improve tracking. During the audit, MR implemented this recommendation.

# EVALUATION OF FUND BALANCE

MR and SIPC believe that the SIPC Fund should be reviewed periodically and have been proactive in ensuring its adequacy. For example, the SIPC board of directors created a task force in 1991 to examine SIPC's assessment strategy. This resulted in changing the assessment base from gross revenue to net operating revenue from the securities business to make assessments based on the difference (spread) between interest revenue and interest expense.

An independent consultant also determined in 1998 that the SIPC Fund was sufficient for the foreseeable future. However, the consultant's conclusion was based on the current soundness of the securities markets (*e.g.,* if the need arose to liquidate a large broker-dealer, or multiple broker-dealers, the SIPC Fund may not be sufficient).

The adequacy of the SIPC Fund is not covered in MR inspections or in independent financial statement audits. Given the rapidly changing securities environment and potential turnover at SIPC and the Commission, MR should consider a policy that an independent consultant will evaluate the SIPC Fund and assessment structure at least every five years. Such an evaluation should consider potential changes in Act coverage.

## Recommendation J

The Division of Market Regulation, in consultation with OCIE, should consider a formal policy requiring an independent review of the SIPC Fund and assessment structure regularly (*e.g.,* every five years).

# OVERSIGHT DOCUMENTATION

MR keeps files for SIPC oversight in several attorney offices. We reviewed documentation for the last two SIPC rule filings (one from 1996 and one from 1987) and the last three annual report submissions (1996-1998). MR completed timely reviews of the rule filings in accordance with the Act.

---

[6] In the past, SIPC had taken the position that unauthorized trades were not covered under the Act. However, due to efforts by MR to protect investors better, SIPC began covering these claims several years ago, which led to the increase in requests.

Oversight of Securities Investor Protection Corporation (Audit 301)   March 31, 2000

MR located documentation related to both rule filings. However, MR was unable to locate transmittals for the 1997 SIPC annual report, showing that the report was forwarded to the President and Congress.

We believe that reasonable documentation should be maintained for SIPC oversight in order to locate documents in a timely manner. For example, a separate file should be maintained for each SIPC rule filing, which should include copies of key documents (*e.g.,* proposal submitted, public notice, response letters, time extension letters, and approval order). Transmittals for SIPC annual reports should also be kept in one place.

## Recommendation K

The Division of Market Regulation should centralize SIPC oversight documentation in one place and issue a memorandum to its staff describing documentation requirements.