# EXHIBIT AA

08-01789-cgm    Doc 761-30    Filed 11/13/09    Entered 11/13/09 16:16:57    Exhibit
Home Page > The Public Record                           Exhibit AA    Pg 2 of 4

Text only of letters sent from the Committee on Energy and Commerce Democrats.

June 20, 2001

The Honorable Laura Unger
Acting Chairman
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

Ms. Debbie Dudley Branson
Acting Chairman
Mr. Michael E. Don
President
Securities Investor Protection Corporation
805 Fifth Street, N.W., Suite 800
Washington, D.C. 20005

Dear Ms. Unger, Ms. Branson, and Mr. Don:

I am writing with respect to the enclosed U.S. General Accounting Office (GAO) report, Securities Investor Protection: Steps Needed to Better Disclose SIPC Policies to Investors (GAO-01-653, May 25, 2001), which was prepared in response to my November 16, 1999 and April 13, 2000 letters asking GAO to examine the operations of SIPC, the policies and procedures used by SIPC to determine the legitimacy of investor claims, the adequacy of SEC oversight of SIPC, and customer confusion about the insurance coverage offered for securities, banking, and insurance products as the financial services industry consolidates.

The Securities Investor Protection Act of 1970 (SIPA) created the Securities Investor Protection Corporation (SIPC) to provide certain financial protections to the customers of insolvent securities firms. SIPA's preamble describes it as "AN ACT to provide greater protection for customers of registered brokers and dealers and members of national securities exchanges." SIPC's mission thus is to promote confidence in securities markets by facilitating the prompt return of missing customer cash and/or securities held at a failed firm. However, the large number of claims denied in several recent high-profile SIPC liquidation proceedings have raised concerns that SIPC policies and practices may unduly limit the actual protection afforded customers. Critics argue that SIPC's main goal has been to protect its industry-supplied fund rather than to protect customers as contemplated by SIPA. See, "Many Holes Weaken Safety Net for Victims of Failed Brokerages," The New York Times, Sept. 25, 2000; "Group Assails Insurer of Investors," The Washington Post, July 21, 1999; and "Many Unhappy Returns: Ex-Stratton customers still fighting to recoup $130m," Newsday, Dec. 20, 1998.

The GAO report found significant deficiencies on the part of SIPC and on the part of SEC that appear to have operated to the detriment of investors. For example, according to GAO, SIPC and SEC have failed in their responsibilities to make sure that investors are informed of actions they need to take to protect their interests and ensure that they are afforded the full protections under SIPA. SIPC and trustees require objective evidence, such as reliable and timely written documentation that claimants complained of an unauthorized trade, to ensure claim accuracy and to protect against fraudulent claims. But GAO found that many investors are unaware that calling their brokerage firm to complain, without simultaneously writing a complaint letter to document their complaint, jeopardizes their ability to prove claims in SIPC liquidation proceedings. SIPC's brochure, last updated in 1994, provides no information on handling unauthorized trading complaints, the biggest problem area, and there is no requirement that securities firms provide customers with the SIPC brochure. Clearing firms that do provide disclosures that investors immediately complain in writing typically do so in small print on the back page of trade confirmations, along with a substantial amount of other information in similar type. SIPC officials told GAO that standardizing these disclosures would be helpful.

Claimants seeking SIPA protection must be customers of the SIPC member in liquidation, must purchase financial products that qualify as securities under SIPA, and the property they seek to have returned must have been in the member's custody. GAO reports that SIPC and trustees have denied claims by individuals who had purchased financial products from nonmember affiliates on several grounds, including the determination that they were not customers of the SIPC member firms. GAO found that SEC's Web site offered contradictory guidance in some areas and inadequate guidance in others, including the growing problem of SIPC members conducting frauds through nonmember affiliates.

According to GAO, SEC's on-site SIPC exams have been too infrequent and too limited in scope. SEC has initiated only three examinations in the past 30 years and the first two only focused on the adequacy of the SIPC fund and administrative issues. The exam initiated in May 2000 failed to address the more controversial issues raised in GAO's report. GAO found no formal mechanism for sharing SIPC information (*e.g.*, investor complaints, status of liquidations) that comes into various SEC divisions and offices. Finally, without improved investor education -- especially that SIPC does not cover losses due to changes in market prices -- GAO warns that investor confusion is likely to increase as the U.S. financial industry continues to consolidate and offer similar financial products under a single corporate umbrella.

Based on these and other findings, GAO has made the following recommendations, with which I strongly agree:

SIPC

- As part of SIPC's ongoing effort to revise the informational brochure and Web site, include a full explanation of the steps necessary to document an unauthorized trading claim.
- Amend SIPC advertising bylaws to require that the official explanatory statement about a firm's membership in SIPC include a statement that SIPC coverage does not protect investors against losses caused by changes in the market value of their securities.

SEC

- Require SIPC member firms to provide the SIPC brochure to their customers when they open an account and encourage firms to distribute it to its existing customers more widely.
- Review the sections of SEC's Web site and, where appropriate, advise customers to promptly complain in writing when they believe trades in their account were not authorized, including an explanation of SIPC's policies and practices and warnings about how to avoid ratifying potentially unauthorized trades during telephone conversations, and update the SEC Web site to include a full explanation of SIPC's policies and practices in liquidations involving nonmember affiliates.
- In conjunction with the SROs, establish a uniform disclosure rule to require that clearing firms disclose on trade confirmations and/or other account statements that investors should complain in writing about unauthorized trades in a timely manner. This information should be provided in a clear and conspicuous manner.
- Require firms that SEC determines to have engaged or are engaging in systematic or pervasive unauthorized trading to prominently notify their customers about the importance of documenting disputed transactions in writing.
- Ensure that the Office of Compliance Inspections and Examinations and the Division of Market Regulation include in their ongoing SIPC examination a larger sample of liquidations involving unauthorized trading and nonmember affiliates claims.
- Require Market Regulation, General Counsel, and Enforcement to establish a formal procedure to share information about SIPC issues on a timely basis.

This is the absolute minimum that should be done. An aggressive investor-education program also is called for. GAO reports that SEC and SIPC have begun to implement most of GAO's recommendations. In September 2000, SEC also established a pilot program to monitor SIPC liquidation proceedings. The GAO report says that "[a]lthough this program is a positive development, it is too soon to determine its efficacy." I therefore request that GAO submit a follow-up report by June 2002 on SEC and SIPC progress in implementing GAO's recommendations, the effectiveness of these reforms, and the need for any further actions. I urge the House Committee on Financial Services and the Senate Committee on Banking, Housing, and Urban Affairs to hold hearings on this important investor protection program. I am copying the Chairmen and Ranking Members of those committees on my letter.

I will be posting this letter and the <u>GAO report</u> on the Committee on Energy and Commerce Minority Web site to give the public access to this vital information. The SIPC report is part of a three-pronged investor-protection initiative that also includes a GAO report on SEC and SRO fine collection rates, expected in July 2001, and the March 2001 request by Rep. Paul Kanjorski and me asking GAO to examine the sharp decline in SEC collections of

illegal gains from stock swindlers and to recommend ways to improve collections and increase reimbursement of victims of financial schemes.

Thank you for your cooperation and attention to my request.

Sincerely,


JOHN D. DINGELL
RANKING MEMBER

Enclosure

cc: The Honorable W. J. "Billy" Tauzin, Chairman
Committee on Energy and Commerce

The Honorable Michael G. Oxley, Chairman
Committee on Financial Services

The Honorable John J. LaFalce, Ranking Member
Committee on Financial Services

The Honorable Paul Sarbanes
United States Senate

The Honorable Phil Gramm
United States Senate

The Honorable David M. Walker, Comptroller General
U.S. General Accounting Office