# EXHIBIT DD

August 11, 2003

The Honorable William H. Donaldson
Chairman
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

Mr. Michael E. Don
President
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, D.C. 20005-2215

The Honorable David M. Walker
Comptroller General
U.S. General Accounting Office
441 G Street, N.W.
Washington, D.C. 20548

Dear Chairman Donaldson and Messrs. Don and Walker:

We are writing with respect to the July 11, 2003, report, Securities Investor Protection: Update on Matters Related to the Securities Investor Protection Corporation, GAO-03-811, which was prepared by the U.S. General Accounting Office (GAO) at our request. It provides updated information on the program established under the Securities Investor Protection Act of 1970 for the protection of victims of failed brokerage firms and on actions taken to implement the recommendations contained in the previous GAO report, Securities Investor Protection: Steps Needed to Better Disclose SIPC Policies to Investors, GAO-01-653/ May 25, 2001. The 2001 report was requested in response to a New York Times article, "Many Holes Weaken Safety Net for Victims of Failed Brokerages," Monday, September 5, 2000, which indicated that there were serious shortcomings demanding immediate attention.

In the report that we are releasing today, GAO has determined that the Securities and Exchange Commission (SEC) and the Securities Investor Protection Corporation (SIPC) have made significant progress on these matters, but GAO also identifies additional problems and further recommendations for implementation, as well as new questions that merit further study. Our specific comments on the 35-page 2003 report are as follows:

1. The 2003 report at page 1 notes: "Disclosure has an important role in securities market regulation, and the Securities Investor Protection Corporation (SIPC) has a responsibility to inform investors of actions they can take to protect their investments and help ensure that investors are afforded the full protections allowable under the Securities Investor Protection Act of 1970 (SIPA)." This central tenet is repeated at the bottom of page 16 and top of page 17. We strongly agree with ths assessment.

2. GAO's 2001 report made seven recommendations to SEC to address needed improvements in the information made available to the public about SIPC and to the SEC's oversight of SIPC. GAO's 2003 report concludes that, for the most part, SEC has taken steps to address these recommendations either directly or indirectly by delegating the implementation to the self-regulatory organizations (SROs). The report notes at page 13 that, in response to both SEC Inspector General and GAO recommendations that SEC establish a formal procedure to share information about SIPC among its various divisions and offices, SEC officials "began to hold quarterly meetings but determined that more frequent informal meetings were more effective." We request that GAO monitor this activity and advise us in a followup report whether the SEC "continues to meet frequently and share information among all the relevant units" as promised in the report.

3. GAO reports that, in May 2000, the SEC Division of Market Regulation and the Office of Compliance, Inspections,

and Examinations initiated a joint exam of SIPC which was not completed until January 2003. GAO outlines on pages 14 and 15 the results of that examination. According to GAO, SEC found that: (1) some statements in SIPC's brochure and Web site might overstate the extent of SIPC coverage and mislead investors; (2) there was insufficient guidance for SIPC personnel and trustees to follow when determining whether claimants have established valid unauthorized trading claims, one the principle source of investor complaints; (3) SIPC had inadequate controls over the fees awarded to trustees and their counsel for services rendered and their expenses; (4) SIPC lacks a retention policy for records generated in liquidations where SIPC appoints an outside trustee; and (5) the SIPC fund was at risk in the case of failure of one or more of the large securities firms. We are deeply troubled by this state of affairs. It is totally unacceptable and we urge SIPC to fix these shortcomings, which we consider to be significant, with all deliberate speed before a major problem occurs. We request that SEC and SIPC provide us with a progress report on or before November 7, 2003, and that GAO monitor this matter and advise us in a followup report whether these issues have been resolved in a timely and effective manner.

4. Page 16 of the 2003 GAO report discusses two SEC-focused recommendations from the 2001 report that remain unresolved. These are: (1) the recommendation that SEC, in conjunction with the SROs, establish a uniform disclosure rule requiring clearing firms to put a standard statement about documenting unauthorized trading claims on their trade confirmations and/or other account statements, and (2) the recommendation that SEC require SIPC member firms to provide the SIPC brochure to their customers when they open an account and encourage firms to distribute the brochure to existing customers more widely. GAO indicates that SEC has asked NYSE and NASD to implement these recommendations through SRO rulemaking and Notices to Members. We know that the SROs have been busy this past year with implementation of the Sarbanes-Oxley Act, but we would now ask the parties to expedite their efforts and resolve these outstanding SIPC recommendations as quickly as possible.

5. The 2003 report discusses at page 17 how SIPC is working with its public relations firm on ways to improve investors' awareness of SIPC and its policies, including launching a new TV and radio campaign in July 2003, releasing a new brochure, and producing a new video. We commend SIPC for these efforts and request that GAO evaluate and report on the effectiveness of these new efforts in a followup report to us.

6. GAO reports on the turbulence in the private market for "excess SIPC" coverage, i.e., private insurance that securities firms can purchase to cover claims that are in excess of the $500,000 limits established by SIPA, at pages 20-28 of the 2003 report. Until this year, many well-capitalized, large, regional securities firms were able to purchase and provide excess SIPC coverage from four major insurers. GAO found that three of the four stopped underwriting the policies in 2003. We are concerned that, if just one firm remains at the end of the year, there is a potential for monopolistic practices, like price gouging.

GAO states at page 21: "Although an excess SIPC claim has never been filed in the more than 30 years that the coverage has been offered, we identified several potential investor protection issues." On pages 21-24, GAO outlines the problems with current excess SIPC coverage policies. Most of the holders of excess SIPC policies contacted by GAO said that they were currently exploring a number of options, including self-insuring, purchasing policies from the sole surviving insurer, or letting the policies expire without replacing them. On page 27, GAO notes: "Many of the securities firms we spoke with had policies that will expire by the end of 2003. All planned to notify affected customers, but many had not developed specific time frames." We believe that investors who maintain accounts with broker-dealers that currently provide excess SIPC coverage must receive appropriate, timely, and clear disclosures about any changes or cessation in coverage affecting their accounts. GAO notes that nothing in the federal statute, SEC regulations, or SRO rules specifically requires that broker-dealers take such actions.

Accordingly, we ask GAO and SEC to monitor these developments. Specifically, we request that you look into whether this product is really needed, whether the marketplace needs to be standardized, and whether investors are obtaining adequate and accurate information about whether excess SIPC coverage exists and what protection in provides. We request that the SEC report to us on or before December 15, 2003, about the nature and timing of disclosures to investors, and that GAO provide us with its overall findings and recommendations in a followup report.

7. To ensure that investors have access to relevant information about SIPC, GAO recommends that SIPC revise its brochure to provide more specific references to links to investor education information on SEC and SRO Web pages, particularly with respect to how to avoid ratifying unauthorized trades (p. 29). We agree. GAO also recommends that SEC, in conjunction with the SROs, ensure that firms are providing investors with meaningful disclosures about excess SIPC coverage and monitor firm disclosures about any changes in the coverage. As indicated previously, we agree and have amplified on this matter.

We request that GAO submit a followup report by April 2004 on SEC, SRO, and SIPC progress in implementing GAO's recommendations and addressing the myriad issues raised by this report and identified by our letter, the effectiveness of these reforms, and the need for any further actions. We cannot overstate the importance of the SIPC program in the ongoing effort to restore and maintain investor confidence. Thank you for your cooperation and attention to our requests.

Sincerely,

Barney Frank
Ranking Member
Committee on Financial Services

Paul E. Kanjorski
Ranking Member
Subcommittee on Capital Markets, Insurance and
Government Sponsored Enterprises
Committee on Financial Services

John D. Dingell
Ranking Member
Committee on Energy and Commerce

Enclosure

cc: The Honorable Michael G. Oxley, Chairman
    Committee on Financial Services

    The Honorable Richard H. Baker, Chairman
    Subcommittee on Capital Markets, Insurance and
    Government Sponsored Enterprises
    Committee on Financial Services

    The Honorable W.J. "Billy" Tauzin, Chairman
    Committee on Energy and Commerce