# EXHIBIT II

Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, with the support of more than*
*100 other customers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

In re:

BERNARD L. MADOFF,

                Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

**DECLARATION OF RODGER PESKIN IN SUPPORT OF OBJECTION TO FIRST**
**APPLICATION OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER**
**LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM**
**DECEMBER 15, 2008 THROUGH APRIL 30, 2009**

        I, Roger Peskin, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

        1.    I submit this declaration in support of the objection to the application for fees filed by Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") filed by myself, Diane Peskin (my wife) and Maureen Ebel, with the support of over 100 other customers

1087486.1

of Bernard L. Madoff Investment Securities, LLC ("Madoff"). I have personal knowledge of the facts and circumstances stated herein.

2. I began publishing the Art Now Gallery Guide (the "Guide") in 1970, working out of my Volkswagen bus. I began with one editorial assistant and personally delivered to my customers a one-page listing of gallery and museum exhibitions on Madison Avenue and on 57th Street.

3. Over time, I built up the Guide to become the most comprehensive source of information on gallery and museum exhibitions in major cities across the United States and, at times, it was published in Europe, South America and Japan.

4. By 2004, I employed approximately 20 people and published a 300+ page magazine which included art reproductions, gallery, museum and art fair information, and area maps of all the major cities in the United States and several major cities outside the United States.

5. The Guide was sold in August 2004 and my wife, Plaintiff Diane Peskin, and I invested the after-tax proceeds of the sale, along with the proceeds of two properties we sold, into Bernard L. Madoff Investment Securities LLC ("Madoff")

6. Specifically, on or about October 18, 2005, my wife and I invested $2,586,412.99 with Madoff.

7. In early May 2008, we invested another $181,000 into Madoff.

8. On or about November 12, 2008, we invested $470,265.98 into Madoff.

9. Every month we received from Madoff trade confirmations indicating the purchase and sale of Fortune 100 company stocks; the purchase and sale of Treasury securities;

2

and the purchase and sale of options to hedge the securities positions. In addition, we received monthly account statements from Madoff showing our securities positions.

10. In each instance, the trade confirmations and account statements reflected the purchase and sale of securities of Fortune 100 companies at prices consistent with those reported in the media.

11. I retired in 2004 and my wife and I planned to live off the income from our Madoff investment.

12. During the years of our investment in Madoff, we earned 9 – 11% each year, in short term capital gains, subject to the highest tax rate.

13. In the ordinary course, we regularly withdrew funds from our Madoff account to fund family living expenses, to pay taxes on our Madoff income, and for special expenditures.

14. On September 15, 2008, we received a check from Madoff for $50,000 which cleared our account on September 17, 2008.

15. On October 1, 2008, we received a check from Madoff for $33,000.

16. On November 6, 2008, we received a check from Madoff for $30,000.

17. At no time did we have any reason to believe that Madoff was dishonest.

18. As of November 30, 2008, the last month for which we received a Madoff account statement, the value of our account was $3,247,367.40.

19. Following December 11, 2008, our lives were decimated. The sudden termination of our sole source of income left us with no funds for our regular monthly payments, for the tuition for our children's school, or to fund other obligations.

20. My wife and I filed a SIPC claim on February 19, 2009.

1087486.1

21. We received no response to our claim for several months. Finally, on June 3, 2009, we were contacted by one of the Trustee's attorneys who informed us that we were only entitled to receive $387,000 as our full SIPC payment. The Trustee's attorney said that the Trustee was entitled to deduct from our SIPC payment the $113,000 that we withdrew from our Madoff account in the three months preceding December 15, 2008.

22. We were astonished to hear this. We pointed out to the Trustee's attorney that, although we had withdrawn $113,000 from Madoff within the 90 days before December 15, 2008, we had also *invested* $470,265.98 with Madoff on November 12, 2008, representing the sale proceeds of a piece of real estate owned by my wife and me. Thus, after receiving payments of $113,000, we had invested $470,265.98, leaving a net position in the last 90 days before the SIPA liquidation as a *positive* $357,265.98.

23. We asked the Trustee's attorney if we weren't entitled to the full $500,000 in SIPC insurance since we had invested more than we withdrew in the last 90 days. We were told that the law was absolutely clear that we were not entitled to a credit for the money we deposited.

24. My attorney has since informed me that the Trustee's attorney inaccurately stated the law to me in our conversation and that we are actually entitled to $500,000 in SIPC insurance because, even if the preference provision of the Bankruptcy Code applies, we gave new value in excess of the payments we received in the 90 days before the Debtor's filing.

25. We received a revised partial assignment and release by letter dated July 22, 2009 from B&H, representing that we would receive the full $500,000 in SIPC insurance to which we were entitled. We signed and returned the partial assignment and release to the Trustee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2009

/s/ Roger Peskin

1087486.1

# EXHIBIT A

# PHILLIPS NIZER LLP

666 Fifth Avenue
New York, NY 10103-0084
212.977.9700
Fax 212.262.5152

600 Old Country Road
Garden City, NY 11530-2011
516.229.9400
Fax 516.228.9612

**Helen Davis Chaitman***
212.841.1320
201.646.1664
hchaitman@phillipsnizer.com
*Admitted in New York and New Jersey

Court Plaza North
25 Main Street
Hackensack, NJ 07601-7015
201.487.3700
Fax 201.646.1764

www.phillipsnizer.com

July 30, 2009

**By Hand**

David J. Sheehan, Esq.
Baker & Hostetler, LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111

Dear Mr. Sheehan:

Enclosed please find the fully executed Partial Assignment and Release for the Peskins. I interpret the revised language of the release paragraph as preserving the claims that the Peskins have asserted against the Trustee in their complaint, except to the extent that those claims are satisfied by what I anticipate and hope will be a prompt payment from SIPC of $500,000. If you disagree and believe that the enclosed document constitutes a release of the Peskins' complaint, then please return this original document to me, because it is not our intent to release the Peskins' claims.

Yours sincerely

Helen Davis Chaitman

HDC:leb
Enclosure

cc:    Diane & Roger Peskin

1087426.1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Roger M Peskin and Diane Peskin J/T WROS, located at 51 East Wall Street, Bethlehem, Pennsylvania 18018 (hereinafter referred to as the "Assignor") in consideration of the payment of $500,000.00 to satisfy in part their claims for customer protection (together, the "Customer Claim", having been designated Claims #3301 and #12,843) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and § 78fff-3(a)(1) of SIPA), do for themselves hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2 (b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1CM948, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor against BLMIS. Such

action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 22, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively

to all previously determined customer claims in accordance with the Court's order. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

Should a final and unappealable court order determine that the Trustee is improperly limiting the payment of the $500,000 SIPC advance to one advance per BLMIS customer account, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's decision. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

**IN WITNESS WHEREOF**, the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By: _/s/ Roger M. Peskin_
ROGER M PESKIN

By: _/s/ Diane Peskin_
DIANE PESKIN

Sworn and subscribed before me this
28th day of July, 2009.

_____
Notary Public

Nancy A. Manookian
Notary Public, State of New Jersey
ID 2115741
Commission Expires September 20, 2013