UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SECURITIES INVESTOR PROTECTION :
CORPORATION, :
: Adv. Pro. No. 08-01789 (BRL)
          Plaintiff, :
: SIPA Liquidation
    v. :
: (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT :
SECURITIES, LLC, :
:
          Defendant. :
-----------------------------------------------------------x
In re: :
:
BERNARD L. MADOFF, :
:
          Debtor. :
-----------------------------------------------------------x

## DECLARATION OF LIANE WILLIS

I, LIANE WILLIS, under penalty of perjury, declare as follows:

1. I submit this affidavit in support of the Memorandum of Carl J. Shapiro and Associated Entities in Opposition to Trustee's Net Equity Motion filed in the above-captioned proceeding. I have personal knowledge of the facts set forth in this declaration.

2. I am employed at Wellesley Capital Management, Inc. ("Wellesley"). Wellesley is a private company, the purpose of which is to administer the bank accounts and investments of Mr. Carl J. Shapiro and certain members of his family (the "Shapiro Family"), and the Carl and Ruth Shapiro Family Foundation (the "Foundation"). Wellesley maintains an office at One Washington Street, #202, Wellesley, Massachusetts 02481.

3. I have worked continuously at Wellesley since 1994. Until December 2008, one of my primary job responsibilities was to provide administrative support relating to the investments of the Shapiro Family and the Foundation at Bernard L. Madoff Investment Securities, LLC ("Madoff"). Among other things, I regularly reviewed Madoff account statements and provided Mr. Shapiro and other family members with reports and information concerning their investments with Madoff.[1]

4. From the time I began working at Wellesley in 1994 until in or about December 2008, the Madoff accounts of the Shapiro Family and the Foundation generally held long-term positions in common stocks and bonds (and in fact, by 2008, mostly just bonds). While there was some shorter term trading activity, the vast majority of positions were in stocks and bonds that were held for at least a year, and in many cases, for several years or even decades. For example, a few of the stocks that were held in the Shapiro accounts for a long period of time were Proctor & Gamble (20 years), Pfizer (19 years), Coca Cola (18 years), General Electric (18 years), Dow Chemical (17 years), Microsoft (15 years), Citigroup (15

---

[1] The accounts that I was responsible for reviewing were: Andrew Jaffe Trust U/D/T DTD 5/12/75 As Amended; Andrew N. Jaffe 1993 Irrev. Trust U/D/T DTD 6/11/93 As Amended; Carl Shapiro Trust U/D/T 4/9/03; Carl Shapiro and Ruth Shapiro Family Foundation; Ellen Jaffe Trust U/D/T DTD 5/8/03 As Amended; Jaffe Family 2004 Irrevocable Trust; Jaffe GC-1 LLC; Jennifer Segal Herman Trust U/D/T DTD 5/1/67 As Amended; Jennifer Segal Herman 1985 Trust Dated 4/16/84; Jonathan M. Segal Trust U/D/T DTD 12/1/70; Jonathan M. Segal 1989 Trust U/D/T DTD 3/8/89 As Amended; Jonathan M. Segal 2007 Trust; Kimberly Strauss 1988 Trust; Kimberly Strauss 2006 Irrevocable Trust; L Shapiro Family Trust; Linda Shapiro Family Trust Dated 12/03/76; Linda Shapiro Waintrup 1992 Trust; LSW 2006 Irrevocable Trust; Michael S. Jaffe Trust U/D/T 9/25/71 As Amended; Michael Jaffe 1989 Trust U/D/T DTD 8/24/89 As Amended; Michael S. Jaffe 2007 Trust; Rhonda Shapiro Zinner 1993 Trust U/D/T DTD 7/7/93 As Amended; RSZ-JSH Partnership; Ruth Shapiro Trust U/D/T 4/9/03; Samantha Strauss 1985 Trust; Samantha L. Strauss 2003 Irrevocable Trust; Shapiro Family CLAT Joint Venture; Shapiro Family Ltd. Partnership; Shapiro GGC-1 LLC; Steven C. Jaffe Trust U/D/T DTD 9/25/71 As Amended; Steven Jaffe 1989 Trust U/D/T DTD 8/24/89 As Amended; and Steven C. Jaffe 2007 Trust.

2

years) and Intel (10 years). I do not recall that any of the Shapiro Family or Foundation accounts ever traded in options.[2]

5. In or about 1996, Wellesley acquired Axys, a computerized investment portfolio management system. At that time, I manually entered all the then-current holdings of the Shapiro Family and the Foundation at Madoff into Axys, and thereafter, whenever I was informed of buying or selling activity in those accounts, I manually entered that activity into Axys as well, keeping the system continuously up to date. Over that same time period, I regularly used Axys to track and monitor activity in those Madoff accounts. One of the features of the Axys system is that it links up electronically to an independent data service called FT Interactive Data ("FTID"),[3] which provides current market data on stock and bond prices, as well as dividends, on a daily basis. Using Axys and FTID, I was able to track the value of the portfolios, as well as unrealized gains and losses in the accounts, using actual market data from a source independent of Madoff. I also frequently used the Axys system to produce reports about the portfolios, such as reports showing their market value, and unrealized gains and losses.

6. Each month, Wellesley received account statements from Madoff for each of the Shapiro Family and the Foundation accounts, reflecting the month-end market value for the holdings in such accounts. I reviewed those statements and checked the values in those statements against the month-end values of the corresponding portfolios in the Axys/FTID

---

[2] My understanding of the securities holdings and transactions of the Shapiro Family and Foundation accounts at Madoff was based upon the account statements that Wellesley received from Madoff and the information that was available to me at the time.

[3] The name of this company has changed over time and is currently known as Interactive Data Pricing and Reference Data.

3

system. If the Madoff statements had listed incorrect values for the securities positions that we at Wellesley believed we held, I would have been able to detect any such discrepancies immediately, because the Axys system, in combination with FTID, was providing accurate market data from an independent source. I do not recall any such discrepancies in the Madoff account statements.[4] To my knowledge, and based on the market data features of Axys and FTID, the Madoff account statements reflected positions that could in fact have been held (and that I believed at the time were, in fact, held) at the values listed on the statements. In general, the Madoff statements were accurate in this respect. (Although infrequent, from time to time I discovered errors in the Madoff statements relating to, for example, whether certain stocks or cash or bond transfers had been posted to the correct family account – sometimes such errors were due to my own mistake, sometimes to a mistake made by a Madoff employee. But overall, I found fewer errors of this sort in the Madoff statements than I did in my experience with other major financial institutions. In any event, as far as I can recall these errors never related to the pricing of securities.)

7. To my knowledge, all of the securities listed on the Madoff statements were real securities. At no time did I ever become aware of any security in the Madoff accounts that was not actually a publicly traded security. If I had attempted to obtain from the FTID system pricing for anything other than a real security that actually traded in the market, FTID would have informed me that there was an error, because it would not be able to obtain

---

[4] On occasion, where a stock split occurred on the final day of a calendar month, the Madoff account statement might not reflect the post-split price per share, but nevertheless, on a total value basis, the statements in those instances were accurate, and the number of shares and price were always corrected on the following month's statement.

actual market prices for such a non-existent security. As far as I can recall, no Shapiro Family or Foundation account statement ever listed a non-existent security.

Executed this 12th day of November 2009.

_____
Liane Willis