# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Wachovia Bank, National Association*

Mailing Address: 1021 E. Cary Street, Attn: Joyce Barry

City: Richmond          State: VA          Zip: 23219

Account No.: 1-H0071-3-0

Taxpayer I.D. Number (Social Security No.): █████████

\* PER THE ATTACHED NOTICE OF EXCLUSIVE CONTROL, WACHOVIA BANK, NATIONAL ASSSOCIATION ("WACHOVIA"), HAS ASSUMED EXCLUSIVE CONTROL OVER THE CUSTOMER ACCOUNT OF HOLLYPLANT INVESTMENT LIMITED PARTNERSHIP ("HOLLYPLANT"), WHICH HAS AN ADDRESS OF 130 CLARENDON AVENUE, PALM BEACH, FLORIDA 33480, ATTN: PHYLLIS KROCK, AND A TAXPAYER I.D. OF █████████. ANY PAYMENT OR DISTRIBUTION MADE IN CONNECTION WITH THIS CLAIM SHALL BE MADE TO WACHOVIA.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Claim for money balances as of **December 11, 2008**: The Broker does not owe a Credit to Wachovia. Wachovia extended a loan to Hollyplant that is presently due and payable in the amount of approximately $30,000,000. Any distributions in excess of that amount would belong to Hollyplant.

    a.    The Broker owes me a Credit (Cr.) Balance of

    b.    I owe the Broker a Debit (Dr.) Balance of

    c.    If you wish to repay the Debit Balance, please insert the amount you wish to repay and attach a check payable to "Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC."

    If you wish to make a payment, **it must be enclosed with this claim form.**          $_____

    d.    If balance is zero, insert "None."          _____

2.        Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

\*\*Balance as of November 31, 2008.  This is the date of the last
statement provided by Bernard L. Madoff Investment Securities LLC.

Number of Shares or
Face Amount of Bonds

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| See attached customer statements. | | $44,531,795.04\*\* | |

WACHOVIA RECENTLY ASSUMED EXCLUSIVE CONTROL OVER THIS ACCOUNT.
WACHOVIA DOES NOT POSSESS CERTAIN INFORMATION REQUESTED IN THIS
CLAIM FORM.  WACHOVIA WILL AMEND AND SUPPLEMENT THIS CLAIM AS
SUCH INFORMATION BECOMES AVAILABLE TO WACHOVIA.

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                          2

**NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | Yes.  Wachovia assumed exclusive control over the Account. See the attached Notice of Exclusive Control. | |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s). | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X*** |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Joseph Lubertazzi, Jr., McCarter & English, LLP Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102; (973)639-2082

502180406                                  4

***Wachovia is filing this claim because the Account is collateral for a loan to Hollyplant, which is a "customer" as that term is defined under the Securities Investor Protection Act of 1970.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____1-29-09_____     Signature _____

Date _____     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4



January 5, 2009

**VIA OVERNIGHT MAIL**

Irving H. Picard, Esq.
Trustee for the SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

Joseph Lubertazzi, Jr.
Partner
T. 973.639.2082
F. 973.297.3940
jlubertazzi@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

Re:    Letter Agreement among Bernard L. Madoff Investment Securities, LLC ("Madoff"), Hollyplant Investment Limited Partnership ("Hollyplant"), and Wachovia Bank, National Association ("Wachovia") regarding customer accounts numbered 1-H0071-3-0 and 1-H0071-4-0 maintained by Hollyplant with Madoff (the "Customer Accounts")

### NOTICE OF EXCLUSIVE CONTROL

Dear Mr. Picard:

This Firm represents Wachovia. Wachovia extended to Hollyplant a Loan in the original principal amount of $11,000,000 (the "First Loan"), as evidenced by a Renewal Promissory Note dated January 26, 2005; and a loan in the modified principal amount of $21,500,000 (the "Second Loan"; together with the First Loan, the "Loans"), as evidenced by an Additional Advance and Renewal Promissory Note dated May 23, 2008. Security for the Loans are the Customer Accounts. Hollyplant is in default under the Loans.

In connection with the Loans, on May 31, 2008, Madoff executed a letter agreement (the "Letter Agreement"), in which Madoff assented to the terms of an Amended and Restated Collateral Pledge Agreement between Wachovia and Hollyplant, dated May 23, 2008 (the "Pledge Agreement"). A copy of the Letter Agreement and Pledge Agreement are enclosed for reference.

In accordance with the requirements of the Letter Agreement, Wachovia provides the following notice: Wachovia hereby assumes exclusive control over the Accounts given to Madoff in accordance with the Letter Agreement. The Trustee is directed to cease complying with any notice or direction regarding the Accounts that does not originate from Wachovia. Furthermore, no payment or distribution should be made to Hollyplant, as the same would violate the terms of the Letter Agreement.

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 8013490v.2

January 5, 2009
Page 2


Wachovia will be filing a Customer Claim in accordance with the SIPA proceedings.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

Joseph Lubertazzi, Jr.

Enclosures

cc:    Hollyplant Investment Limited Partnership (via overnight mail w/ encl.)
       Phyllis Krock (via overnight mail w/ encl.)

ME1 8013490v.2

DATE: May 23, 2008

Bernard L. Madoff Investment Securities, LLC
885 Third Avenue
New York, New York 10022

ATTN: Frank DiPascali

RE:    Collateral Pledge Agreement
       Hollyplant Investment Limited Partnership
       Madoff Accounts #1-H0071-3-0 and #1-H0071-4-0

Dear Sir:

This is to advise Bernard L. Madoff Investment Securities, LLC ("Madoff"), that the interest of Hollyplant Investment Limited Partnership ("Hollyplant") in all securities, securities entitlements, financial assets, and other property of every type and description (collectively the "Investment Property") now or hereafter credited or to be credited to Hollyplant's Account No. 1-H0071-3-0 and Account No. 1-H0071-4-0 with Madoff and any successor accounts (collectively the "Accounts") including interest and dividends and all replacements, substitutions, profits, products, cash and non-cash proceeds of the foregoing (collectively the "Collateral") has been pledged to Wachovia Bank, National Association (the "Bank"), pursuant to the terms of an Amended and Restated Collateral Pledge Agreement dated May 23, 2008 (the "Collateral Pledge Agreement"), securing certain obligations of Hollyplant to the Bank.

Accordingly, the Bank and Hollyplant agree to the following terms relating to the control of the Collateral and jointly request that Madoff agree as follows:

(1)    To register this pledge on its books and records, and control the Collateral on behalf of the Bank;

(2)    Not to register on its books and records any other pledge of or control over the Collateral until the Bank has released this pledge in writing;

(3)    To either redeem and deliver the proceeds of the Collateral to the Bank or transfer the Collateral to the Bank, all without further notice or consent from Hollyplant, upon receipt of notice from the Bank in the form attached hereto as Schedule A (a "Notice of Exclusive Control"), stating that Hollyplant is in default and the Bank is exercising its rights under the Collateral Pledge Agreement;

(4)    Until Madoff receives a Notice of Exclusive Control from the Bank pursuant to paragraph 3 above, continue to comply with all notices and other requests by Hollyplant, but not by anyone else (except the Bank) to trade or redeem any of the Collateral or to deliver, transfer

or pay any of the Collateral to Hollyplant, but not to anyone else (except the Bank) except that Madoff will not comply with any such notice or request by Hollyplant or anyone else (except the Bank) which would cause the fair market value of the Collateral in the Accounts, net of any margin account debt, to be less than $40,700,000.00 U.S.;

(5)    Until Madoff receives a Notice of Exclusive Control from the Bank pursuant to paragraph 3 above, continue to pay all cash dividends on the Collateral to Hollyplant; and

(6)    Madoff will make all reports relating to the Collateral to federal, state and local tax authorities under the name and tax identification number of Hollyplant, unless and until the Bank notifies Madoff to use a different tax identification number, after which Madoff shall use the tax identification number given by the Bank.

Hollyplant and Madoff represent to the Bank and agree as follows:

(1)    There currently is not in effect any security interest, lien or encumbrance against any of the Collateral to any party other than the Bank;

(2)    Neither Hollyplant nor Madoff has entered into or will in the future enter into, prior to the Bank releasing its interest in the Collateral, any agreement with anyone, except the Bank and Madoff, that gives control over the Collateral;

(3)    Hollyplant and Madoff will immediately notify the Bank if anyone (other than the Bank) makes a claim against or asserts any security interest, lien, encumbrance or other interest in the Collateral;

(4)    Madoff hereby subordinates any security interest liens and encumbrance it may have in the Collateral to the Bank's security interest in the Collateral;

(5)    Madoff maintains accounts for investment property for others in the ordinary course of its business and is acting in its capacity as a broker with respect to the Collateral. In addition, the Investment Property in the Accounts will be segregated from the firm securities of Madoff on Madoff's records and on the records of any clearing house with which Madoff maintains securities accounts;

(6)    Madoff will give the Bank: (i) within 20 days of each month end one copy of Madoff's monthly report to Hollyplant for each of the Accounts, with a listing of and value of all Investment Property held therein and reflecting activity within the Accounts; and (ii) such other information on the Accounts, including statements for the Accounts, as the Bank may reasonably request;

(7)    Madoff will give the Bank notice if at any time the current market value of the Collateral held by Madoff is less than $40,700,000.00; and

(8)    Madoff will give the Bank notice as soon as any deficiency in the current market value of the Collateral referred to above is cured.

PTC-872260_1.doc                                    2

Nothing in this Agreement can be waived, changed or canceled, except by a writing signed by Hollyplant, the Bank and Madoff. This Agreement binds and benefits Hollyplant, the Bank and Madoff and each of their representatives, successors and assigns, This Agreement is governed by the laws of the State of Florida which State is Madoff's jurisdiction for purposes of this Agreement and Article 8 of the Uniform Commercial Code.

The Bank agrees that any Notice of Exclusive Control given to Madoff to demand that Madoff transfer the Collateral to the Bank, shall constitute a representation by the Bank that Hollyplant is in default pursuant to the terms of the Promissory Note executed by Hollyplant in favor of Bank in the principal amount of $11,000,000.00 dated January 26, 2005 ("Facility #1 Note), the Promissory Note executed by Hollyplant in favor of Bank in the principal amount of $21,500,000.00 dated May 23, 2008 ("Facility #2 Note"), the Amended and Restated Collateral Pledge Agreement between Hollyplant and Bank dated May 23, 2008, to secure the Facility #1 Note and the Facility #2 Note, this Agreement, or other documents executed in connection therewith, and any amendments thereof, and that the Bank has the right to obtain possession of the Collateral.

Hollyplant, the Bank and Madoff may sign one or more different copies of this Agreement. All the signed copies together make up this Agreement.

Please confirm your consent and agreement to the terms of this Agreement by executing three originals of this Agreement as soon as possible and returning two copies to the Bank to the attention of the undersigned.

WACHOVIA BANK, NATIONAL ASSOCIATION

By: _____
Douglas M. Mrstik
As its Senior Vice President

HOLLYPLANT AUTHORIZATION

Hollyplant Investment Limited Partnership acknowledges its consent and agreement to this Agreement and hereby directs and authorizes Bernard L. Madoff Investment Securities, LLC, to execute this Agreement for its benefit.

Date: May 23, 2008

HOLLYPLANT INVESTMENT LIMITED PARTNERSHIP

By: _____
Phyllis Krock
As its General Partner

PTC-872260_1.doc                               3

## ACCEPTANCE

Bernard L. Madoff Investment Securities, LLC, hereby accepts and agrees to this Agreement.

BERNARD L. MADOFF INVESTMENT SECURITIES, LLC

By _____

Print Name: *FRANK DIPASCALI*

Title: *REGISTERED REP*

Effective Date: May 3/, 2008

State of New York
County of New York

*JUNE*

On the 2 day of ~~May~~ 2008 before me personally came *Frank DiPascal*, to me known, who, before by me duly sworn, did depose and say that he resides in New York; that he is the ~~general member~~ of Bernard L. Madoff Investment Securities LLC, the entity described in and which executed the above instrument.

*REP.*

_____
Notary Public – State of New York

My commission expires: *July 19, 2008*

(Notary seal/stamp)

JEAN LARSEN
Notary Public, State of New York
No. 01LA6113015
Qualified in New York County
Commission Expires July 19, 20 12

## SCHEDULE A

### NOTICE OF EXCLUSIVE CONTROL
**Securities Account**

Date: _____

Bernard L. Madoff Investment Securities, LLC
Attn: Frank DiPascali
885 Third Avenue
New York, New York 10022

RE:     Letter agreement dated May 23, 2008 (the "Control Agreement"), among Bernard L. Madoff Investment Securities, LLC ("Broker"), Hollyplant Investment Limited Partnership ("Hollyplant"), and Wachovia Bank, National Association ("Bank"), regarding Account Number 1-H0071-3-0 and 1-H0071-4-0 (the "Accounts")

This letter constitutes Bank's notice that it hereby assumes exclusive control over the Accounts given to Broker in accordance with the Control Agreement. Broker is hereby directed to cease complying with any other notice to transfer or redeem any property in the Accounts or other directions concerning the Accounts originated by Hollyplant.

Bank represents that Hollyplant is in default pursuant to the terms of the Promissory Note executed by Hollyplant in favor of Bank in the principal amount of $11,000,000.00 dated January 26, 2005 ("Facility #1 Note), the Promissory Note executed by Hollyplant in favor of Bank in the principal amount of $21,500,000.00 dated May 23, 2008 ("Facility #2 Note"), the Amended and Restated Collateral Pledge Agreement between Hollyplant and Bank dated May 23, 2008, to secure the Facility #1 Note and the Facility #2 Note, the Collateral Pledge Agreement described in the Control Agreement, or other documents executed in connection therewith, and any amendments thereof, and that the Bank has the right to obtain possession of the Accounts and all assets contained therein.

WACHOVIA BANK, NATIONAL ASSOCIATION

By: _____  (SEAL)
Name: _____
As its: _____

## AMENDED AND RESTATED COLLATERAL PLEDGE AGREEMENT

This Amended and Restated Collateral Pledge Agreement is made and entered into this 23rd day of May 2008 by and between HOLLYPLANT INVESTMENT LIMITED PARTNERSHIP, a Massachusetts limited partnership ("Pledgor"), and WACHOVIA BANK, NATIONAL ASSOCIATION ("Bank"). This Amended and Restated Collateral Pledge Agreement amends and restates in its entirety that certain Amended and Restated Collateral Pledge Agreement dated the 19th day of April 2007 between Pledgor and Bank.

1.    Security/Obligation: The purpose of this Amended and Restated Collateral Pledge Agreement ("Collateral Pledge Agreement") is to provide security for the payment of those certain loans ("Loans") made by Bank to Pledgor pursuant to a Commitment Letter dated January 31, 2003, and a commitment letter dated January 5, 2004 (collectively "Commitment"), as well as verbal discussions between Pledgor and Bank in May 2008, said Loans being currently evidenced as follows:

Revolving Line of Credit loan ("Facility #1 Loan") in the amount of Eleven Million Dollars ($11,000,000.00), evidenced by the promissory note of the Pledgor ("Facility #1 Note") in the original principal amount of $11,000,000.00 dated January 26, 2005; and

Revolving Line of Credit loan ("Facility #2 Loan") in the amount of Twenty-One Million Five Hundred Thousand Dollars ($21,500,000.00), evidenced by the promissory note of Pledgor ("Facility #2 Note") in the original principal amount of $21,500,000.00 dated May 23, 2008;

together with all amounts which may from time to time become due and owing by Pledgor to Bank under this Agreement, or under any swap agreements (as defined in 11 U.S.C. § 101) between Pledgor and Bank, or pursuant to the other documents (collectively "Loan Documents") executed in connection with or relating to the Loans (the Loans and all such amounts are collectively the "Obligations").

2.    Collateral Assignment: Pledgor hereby ratifies and confirms Pledgor's previous conveyance, assignment, pledge and transfer unto the Bank as security for the Obligations a continuing security interest in those certain investment accounts established by the Pledgor with Bernard L. Madoff Investment Securities, LLC ("Madoff") as follows:

| Name of Investment House | Account No. |
| --- | --- |
| Bernard L. Madoff Investment Securities, LLC | 1-H0071-3-0 |
| Bernard L. Madoff Investment Securities, LLC | 1-H0071-4-0 |

together with all investments, funds, securities, instruments and other property therein including, without limitation, additions, replacements, substitutions of securities, dividends, stock dividends, stock splits, warrants, options, stock purchase rights and all profits, interest,

dividends, income, distributions, products, cash and non-cash proceeds thereof and all books and records relating thereto (collectively "Collateral").

3.    Control Agreement: Pledgor and Bank have entered into a letter agreement with Madoff on even date herewith, a copy of which is attached hereto as Exhibit "A" ("Control Agreement"). The Control Agreement amends and supersedes all previous letter agreements entered into by Pledgor and Bank with Madoff in connection with the Obligations. The term "Control Agreement" shall include any amendments and restatements of the Control Agreement hereafter executed by Pledgor and Bank.

4.    Limitations on Principal Balances of Facility #1 Note and Facility #2 Note: The principal balance outstanding under the Facility #1 Note and the Facility #2 Note shall be limited as follows:

A.    The principal balance outstanding under the Facility #1 Note shall never exceed 50% of the Collateral Value. "Collateral Value" shall be defined to be the fair market value of the Collateral reflected on the most recent of the reports for the Accounts provided to Bank from time to time by Madoff under the Control Agreement.

B.    The principal balance outstanding under the Facility #2 Note shall never exceed 95% of the difference between the Minimum Market Value (as defined in Paragraph 5 below) of the Collateral and $22,000,000.00.

C.    No draws shall be permitted under either the Facility #1 Note or the Facility #2 Note which would result in a breach of either of the foregoing limitations.

D.    In the event the Collateral Value should decrease so as to result in the Subparagraph A above being breached, Pledgor shall, within five days thereafter, either reduce the principal balance of the Facility #1 Note, or add assets to the Accounts so as to comply with the requirements of this paragraph.

5.    Minimum Value of Collateral: The Collateral Value must be equal to or greater than $40,700,000.00 at all times ("Minimum Market Value"). In the event the Collateral Value should decrease so as to result in the foregoing limitation being breached, Pledgor shall, at Bank's option and within five days of receiving notice from Bank, add assets to the Accounts so as to comply with the requirements of this paragraph. Borrower acknowledges that the Minimum Market Value of $40,700,000.00 will not permit Borrower to draw fully under the Loans because of the covenants set forth in Paragraphs 4 (A) and (B) above. During the term of the Loans, Bank may, from time to time, agree to increase the Minimum Market Value by executing an amendment and restatement of the Control Agreement, in which event the Minimum Market Value shall be deemed to be the amount set forth in such Amended and Restated Control Agreement.

PTC-872255_1.doc                                    2

6.   Margin Stock:  Borrower shall not borrow money under the Facility #2 Loan for the purpose of purchasing "margin stock," as that term is defined in Regulation U (12 CFR221).

7.   Cross-Default and Cross-Collateralization:  Any default under Facility #1 Note or the loan documents executed in connection therewith ("Facility #1 Loan Documents") shall be a default under the Facility #2 Note or the loan documents executed in connection therewith ("Facility #2 Loan Documents).   Any default under the Facility #2 Note and the Facility #2 Loan Documents shall be a default under the Facility #1 Note and the Facility #1 Loan Documents.  This Agreement will not terminate until both the Facility #1 Loan and the Facility #2 Loan are paid in full and satisfied.

8.   Representations of Pledgor:  Pledgor covenants, represents, and agrees with Bank, for so long as the Obligations are owing to Bank, that:

A.   Other than as specified in the Control Agreement, there are no restrictions on the disposition of the Collateral or distributions of dividends;

B.   Pledgor is the legal registered owner of the Collateral and holds full and absolute beneficial title to same free and clear of all liens, charges, encumbrances, security interests and voting trust restrictions of every kind and nature;

C.   The security interest created herein is a first priority lien against the Collateral;

D.   Pledgor has authority to enter into this Agreement;

E.   Any and all information now or hereafter supplied to Bank by Pledgor, at the Pledgor's request or instruction, is correct. The Pledgor, upon Bank's request, will establish the correctness of any information supplied to Bank and will promptly notify Bank of any adverse changes and any information supplied to the Bank;

F.   Pledgor will not commence nor permit to conduct any proceeding in bankruptcy, receivership, or similar proceedings nor will Pledgor commit any act of bankruptcy, nor make any assist for creditors, or become insolvent; and

G.   The breach of any representation or warranty set forth herein shall be deemed a default under the terms of this Agreement.

9.   Voting Rights: Unless and until a default shall have occurred with respect to the Obligations or Loan Documents, Pledgor shall be entitled to exercise any and all voting and consensual rights and powers accruing to an owner of the Collateral, except as limited by the Control Agreement, for any purpose not inconsistent with the terms of this Agreement.

PTC-872255_1.doc   3

10.    Further Assurances: Pledgor agrees from time to time to execute and deliver to Bank, and Bank is authorized to file or record, any and all documents which in the opinion of Bank are necessary to perfect its security interest in the Collateral.

11.    Default: In the event of a default by Pledgor of the terms and conditions of this Agreement, the Control Agreement, the Commitment, the Facility #1 Note, the Facility #2 Note or any other of the Loan Documents, in addition to all other rights and remedies prescribed by the Loan Documents, without notice to Pledgor, Bank shall have the right, but not the obligation, to notify Madoff pursuant to the Control Agreement, that it is exercising exclusive control over the Accounts, and to liquidate the Collateral in full or in part and all the proceeds received therefrom and apply same to reduce or satisfy the Obligations. Pledgor shall remain liable for any deficiency. The rights and remedies of Bank under the Loan Documents in the event of default by Pledgor shall be cumulative. In the event of any litigation arising under the terms of this Agreement or the other Loan Documents, the prevailing party shall be entitled to recover costs and reasonable attorney's fees incurred at all levels of proceedings.

12.    Release: Pledgor acknowledges that the market value of the Collateral is volatile and unpredictable. Accordingly, Pledgor releases and holds harmless Bank from any and all liability in connection with the decline in market value of the Collateral during the term of the Obligations. Pledgor further waives, releases and discharges Bank from any and all liability in connection with the amount received by Bank as a result of a total or partial liquidation of the Collateral provided such liquidation was made in accordance with the terms and conditions of this Agreement and the Control Agreement.

13.    Power of Attorney: Pledgor hereby irrevocably constitutes and appoints Bank as Pledgor's agent and attorney-in-fact for the purpose of carrying out the provisions of this Agreement and taking any action and executing, filing and recording any instrument which Bank or Pledgor reasonably deems necessary or advisable to accomplish the purposes hereof. The foregoing power of attorney is coupled with an interest and shall be terminated only upon payment in full of the Obligations.

14.    Changes in the Obligations: Pledgor consents to any extensions, renewals or modifications of the Facility #1 Note and the Facility #2 Note and the release of any parties thereto.

15.    General: This Agreement shall be binding upon the Pledgor and heirs, personal representatives, successors and assigns of Pledgor and shall inure to the benefit of the Bank, its successors and assigns. In the event of any conflict between the terms of the Commitment and the terms of the Loan Documents, the terms of the Loan Documents shall control.

HOLLYPLANT    INVESTMENT    LIMITED
PARTNERSHIP

By: _____
Phyllis Krock
As its General Partner

PTC-872255_1.doc                                4

WACHOVIA        BANK,        NATIONAL
ASSOCIATION

By:_____

Douglas M. Mrstik
As its Senior Vice President