Therese M. Doherty, Esq.
John Oleske, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Email: joleske@herrick.com
Attorneys for Interested Party Magnify, Inc.

**Document Electronically Filed**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,

         v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

------------------------------------------------------------X

In re:

BERNARD L. MADOFF

                Debtor.

------------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

### MAGNIFY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S MOTION TO AFFIRM CUSTOMER CLAIMS DETERMINATIONS WITH REGARD TO THE TRUSTEE'S NET EQUITY DETERMINATIONS

Magnify Inc. ("Magnify"), by its attorneys Herrick, Feinstein LLP, hereby submits its opposition to the Trustee's Motion to affirm customer claims determinations with regard to the Trustee's Net Equity determinations (the "Motion"), pursuant to this Court's Order dated September 16, 2009. In the Order, the Court permitted "Interested Parties" to file briefs in

opposition to the Motion on or before November 13, 2009.

Magnify, and/or its predecessor in interest, was a customer of Bernard Madoff Investment Securities, LLC ("BLMIS") from at least 1979 until the collapse of BLMIS in December 2008. Magnify, which is now completely insolvent, subsequently filed claims for partial reimbursement for its losses in the two accounts it held at BLMIS from the Securities Investor Protection Corporation ("SIPC") on or about February 4, 2009. Although Magnify has not yet received a notice of the determination of its SIPC claims from the Trustee, any determination of the Motion potentially could effect the resolution of its SIPC claims and, for that reason, Magnify is an Interested Party within the meaning of the Order. Furthermore, Magnify's status as a BLMIS customer independently qualifies Magnify as an Interested Party to the extent that any determination of the Motion potentially could have a collateral effect on Magnify's rights, claims, defenses or other interests with respect to issues beyond the Trustee's determination of SIPC claims.[1]

As a preliminary Matter, Magnify hereby objects to the Trustee's argument that customer claims for SIPC determined pursuant to the Securities Investor Protection Act, 15 U.S.C. 78aaa *et seq.* ("SIPA"), should be calculated according to a "cash in/cash out" basis, as opposed to being based solely on the value of the securities positions and credit balances reflected in the customer's last statement from BLMIS. For the purposes of that objection, Magnify hereby adopts and incorporates herein the arguments already advanced by the customer claimants who have previously objected to the Trustee's position, and the arguments advanced

---

[1] In addition, the Order directed the Trustee to send notice of the Order to all "Interested Parties," and Magnify received such notice from the Trustee.

2

08-01789-cgm    Doc 772    Filed 11/13/09    Entered 11/13/09 17:25:38    Main Document
Pg 3 of 5

by those or other parties who submit such arguments pursuant to the Order, and, specifically, the arguments raised by attorney Helen Chaitman on behalf of multiple customer claimants which arguments are premised, in part, on the precedent established in *In re New Times Secs. Servs., Inc.*, 371 F. 3d 68, 72 (2d Cir. 2004), and the interpretation of SIPA that case requires this Court to apply.

However, Magnify primarily files this brief in order to raise, and preserve its arguments with respect to a discrete issue that, although not explicitly addressed in the Order, potentially could be impacted by a determination by the Court of the Trustee's motion. Specifically, to the extent any determination with respect to a customer's principal investments in BLMIS is based upon a "cash in/cash out" formulation, this Court, or any other tribunal or agency, *must* treat the total existing balance in a BLMIS account as reflected on the account statement at the time BLMIS ceased to be a legitimate brokerage operation, and became a Ponzi scheme, as "principal" of the account holder (*i.e.*, cash "in"), even if it includes funds that constituted profits earned on smaller principal contributions made during the period of time that BLMIS was a legitimate brokerage operation. Based upon the information available to date, including admissions by the Trustee, the date should be determined to be the early 1990's. Obviously, this formulation of "cash in/cash out" could have a direct impact on the Trustee's determination of customer claims under SIPC, in that the total "cash in" for customers who had positive balances at BLMIS at the time of its conversion from legitimate business to fraudulent scheme would be increased by the amount of the customer's legitimate earnings prior to that time. This would consequently increase the amount of SIPC recovery for customers who would already have been qualified for SIPC recovery, but have not yet met the $500,000 maximum

3

threshold, and would potentially allow other customers, who might otherwise be deemed "net winners" from the BLMIS scheme, to qualify for a SIPC recovery.

The resolution of this issue could also have a collateral impact on other determinations relevant to BLMIS customers. For example, separate from the satisfaction of SIPC claims, BLMIS customers will be entitled to distributions from the assets the Trustee is marshalling on behalf of BLMIS creditors *pro rata* according to their losses pursuant to SIPA. If the "cash in/cash out" formulation is eventually held to apply to those distributions, the question of whether balances existing at the onset of the Ponzi scheme should be considered principal investments will be crucial in determining the rights of those customers who had such balances to distributions under SIPA.

Magnify in particular could be directly impacted by the determination of this issue since it had an account at BLMIS as early as 1978. According to available information, including statements by the Trustee, Madoff himself, and Madoff's co-conspirators, BLMIS was not converted from a legitimate brokerage operation into a fraudulent scheme until an unspecified time in the early 1990's. By that time, between its direct cash contributions and earnings on those contributions, Magnify had accumulated a substantial amount in its BLMIS account. The amount Magnify may stand to recover from distributions from the BLMIS estate under SIPA will be affected by whether its account balance (including earnings) as of the early 1990s, or only its cash contributions before that time is the basis for its "cash in" to the Ponzi scheme.

Magnify does not advance in this brief any one particular date as the correct cutoff for when BLMIS was transformed from a legitimate business into a fraudulent scheme,

nor does it advocate a specific method or analysis by which the determination of that transformation should be made. The underlying facts critical to those determinations are not available to Magnify. Magnify simply contends that as a fundamental concept, a customer's legitimate earnings on investments made while BLMIS was actually conducting securities transactions cannot be deemed "fictitious profits" and disregarded as part of the customer's "cash in" at the inception of the Ponzi scheme. Moreover, the burden of proof in establishing the time and manner of the transition from legitimate business to fraudulent scheme rests squarely with the Trustee, and all uncertainties or ambiguities in that regard must be resolved in favor of customers' account balances having been the product of legitimate earnings and not constituting fictitious profits.

Although this specific issue should not be resolved by this Court on this Motion, whether directly or indirectly, Magnify submits this brief to identify that issue and to preserve its rights in that respect for future determination at the appropriate time because the Motion does address the question of customers' potential entitlements pursuant to the "cash in/cash out" formulation.

Dated: New York, New York
November 13, 2009

                                                  **HERRICK, FEINSTEIN LLP**

                                                  By:_____/s/_____
                                                      Therese M. Doherty
                                                      John Oleske
                                              2 Park Avenue
                                              New York, New York  10016
                                              (212) 592-1400
                                              joleske@herrick.com
                                              *Attorneys for Interested Party Magnify, Inc.*