# EXHIBIT 2



1 of 1 DOCUMENT

SECURITIES INVESTOR PROTECTION ACT AMENDMENTS OF 1977

OCTOBER 26, 1977. - Committed to the Committee of the Whole House on the State of
the Union and ordered to be printed

**ACT:** Securities Exchange Act of 1934 - amend

**CITE:** HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Mr. ECKHARDT, from the Committee on Interestate and Foreign Commerce, submitted the following

REPORT

[Including cost estimate of the Congressional Budget Office]

[To accompany H.R. 8331]

The Committee on Interestate and Foreign Commerce, to whom was referred the bill (H.R. 8331) to amdned the Securities Investor Protection Act of 1970, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended to pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

SHORT TITLE

SECTION 1.  This Act may be cited as the "Securities Investor Protection Act Amendments of 1977".

MEMSERSHIP OF SIPC

SEC. 2.  (a) Section 3(a) of the Securities Invstor Protection Act of 1970 (15 U.S.C. 78ccc(a)) is amended to read as follows:

"(a) CREATION AND MEMBERSHIP. -

(1) CREATION. - There is hereby established a body corporate to be known as the 'Securities Investor Protection Corporation' (hereafter in this Act referred to as 'SIPC').  SIPC shall be a nonprofit corporation and shall have succession until dissolved by Act of the Congress. SIPC shall -

(A) not be an agency or establishment of the United States Government; and

(B) except as otherwise provided in this Act, be subject to, and have all the powers conferred upon a nonprofit corporation by, the District of Columbia Nonprofit Corporation Act (D.C. Code, section 29-1001 and fol.).

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(2) MEMBERSHIP. -

(A) MEMBERS OF SIPC. - SIPC shall be a membership corporation the members of which shall be all persons registered as brokers or dealers under section 15(b) of the 1934 Act, other than -

(i) persons whose principal business, in the determination of SIPC, taking into account business of affiliated entities, is conducted outside the United States and its territories and possessions; and

(ii) persons whose business as a broker or dealer consists exclusively of (I) the distribution of shares of registered open end investment companies or unit investment trusts, (II) the sale of variable anpuities, (III) the business of insurance, or (IV) the business of rendering investment advisory services to one or more registered investment companies or insurance separate accounts.

(B) COMMISSION REVIEW. - SIPC shall file with the Commission a copy of any determination made pursuant to subparagrap (A)(i). Within thirty days after the date of such filing, or within such longer period as the Commission may designate of not more than ninety days after such date if it finds such longer period to be appropriate and publishes its reasons for so finding, the Commission shall, consistent with the public interest and the purposes of this Act, affirm, reverse, or amend any such determination of SIPC.

(C) ADDITIONAL MEMBERS. - SIPC shall provide by rule that persons excluded from membership in SIPC under subparagraph (A)(i) may become members of SIPC under such conditions and upon such terms as SIPC shall require by rule, taking into account such matters as the availability of assets and the ability to conduct a liquidation if necessary.

(D) DISCLOSURE. - Any broker or dealer excluded from membership in SIPC under subparagraph (A)(i) shall, as required by the Commission by rule, make disclosures of its exclusion and other relevant information to the customers of such broker or dealer who are living in the United States or its territories and possessions.".

(b) Section 3(f) of such Act (15 U.S.C. 78ccc(f)) is repealed.

POWERS OF SIPC

SEC. 3. Section 3(b) of such Act (15 U.S.C. 78ccc(b)) is amended -

(1) in paragraph (1), by striking out "court, State, or Federal" and inserting "State, Federal, or other court" in lieu thereof; and

(2) by striking out paragraph (3), redesignating paragraphs (4) through (8) as paragraphs (5) through (9), respectively, and inserting immediately after paragraph (2) the following new paragraphs:

"(3) to adopt, amend, and repeal, by its Board of Directors, such bylaws as may be necessary or appropriate to carry out the purposes of this Act, including by laws relating to -

(A) the conduct of its business; and

(B) the indemnity of its directors, officers, and employees (including any such person acting as trustee or otherwise in connection with a liquidation proceeding) for liabilities and expenses actually and reasonably incurred by any such person in connection with the defense or settlement of an action or suit if such person acted in good faith and in a manner reasonably believed to be consistent with the purposes of this Act.

(4) to adopt, amend, and repeal, by its Board of Directors, such rules as may be necessary or appropriate to carry out the purposes of this Act, including rules relating to -

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(A) the definition of terms used in this Act, other than those terms for which a definition is provided in section 16;

(B) the procedures for the liquidation of members and direct payment procedures, including the transfer of customer accounts, the distribution of customer property, and the advance and payment of SIPC funds; and

(C) the exercise if all other rights and powers granted to it by this Act.".

BOARD OF DIRECTORS

SEC. 4.  (a) Section 3(c)(2)(C)(ii) of such Act (15 U.S.C. 78ccc(c)(2)(C)(ii) is amended by striking out "associated with any" and all that follows through "group" and inserting in lieu thereof "asociated with a broker or dealer or associated with a member of a national securities exchange, within the meaning of section 3(a)(18) or section 3(a)(21), respectively, of the 1934 Act, or similarly associated with any self-regulatory organization or other securiies industry group,".

(b) Section 3(c)(5) of such Act (15 U.S.C. 78ccc(c)(5)) is amended to read as follows:

"(5) COMPENSATION. - All matters relating to compensation of directors shall be as provided in the bylaws of SIPC.".

BYLAWS AND RULES

SEC. 5.  Section 3(e) of such Act (15 U.S.C. 78ccc(e)) is amended to read as follows:

"(e) BYLAWS AND RULES. -

(1) PROPOSED BYLAW CHANGES. - The Board of Directors of SIPC shall file with the Commission a copy of any proposed bylaw or any proposed amendment to or repeal of any bylaw of SIPC (hereinafter in this paragraph collectively referred to as a 'proposed bylaw change'), accompanied by a concise general statement of the basis and purpose of such proposed bylaw change.  Each proposed bylaw change shall take effect thirty days after the date of the filing of a copy thereof with the Commission, or upon such later date as SIPC may designate or such earlier date as the Commission may determine, unless -

(A) the Commission, by notice to SIPC setting forth the reasons therefore, disapproves such proposed bylaw change as being contrary to the public interest or contrary to the purposes of this Act; or

(B) the Commianion finds that such proposed bylaw change involves a matter of such significant public interest that public comment should be obtained, in which case it may, after notifying SIPC in writing of such findings, require tht the procedures set forth in paragraph (2) be followed with respect to such proposed bylaw change, in the same manner as if such proposed bylaw change were a proposed rule change within the meaning of such paragraph.

(2) PROPOSED RULE CHANGES. -

(A) FILING OF PROPOSED RULE CHANGES. - The Board of Directors of SIPC shall file with the Commission, in accordance with such rules as the Commission may prescribe, a copy of any proposed rule or any proposed amendments to or repeal of any rule of SIPC (hereinafter in this subsection collectively referred to as a 'proposed rule change'), accompanied by a concise general statement of the basis and purpose of such proposed rule change.  The Commission shall, upon the filing of any proposed rule change, publish notice thereof, together with the terms of substance of such proposed rule change or a description of the subjects and issues involved.  The Commission shall give interested persons an opportunity to submit written data, views, and arguments with respect to such proposed rule change.  No proposed rule change shall take effect unless approved by the Commission or otherwise permitted in accordance with the provisions of this paragraph.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(B) ACTION BY THE COMMISSION. - Within thirty-five days after the date of publication of notice of the filing of a proposed rule change, or within such longer period as the Commission may designate of note more than ninety days after such date if it finds such longer period to be appropriate and publishes its reasons for so finding, or as to which SIPC consents, the Commission shall -

(i) by order approved such proposed rule change; or

(ii) institute proceedings to determine whether such proposed rule change should be disapproved

(C) PROCEEDINGS. - Proceedings instituted with respect to a proposed rule change pursuant to subparagrah (B)(ii) shall include notice of the grounds for disapproval under consideration and opportunity for hearing, and shall be concluded within one hundred eighty days after the date of publication of notice of the filing of such proposed rule change. At the conclusion of such proceedings, the Commission shall, by order, approve or disapprove such proposed rule change. The Commission may extend the time for conclusion of such proceedings for not more than sixty days if it finds good cause for such extension and publishes its reasons for so finding, or for such longer period as to which SIPC consents.

(D) GROUNDS FOR APPROVAL OR DISAPPROVAL. - The Commission shall approve a proposed rule change if it finds that such proposed rule change is in the public interest and is consistent with the purposes of this Act, and any proposed rule change so approved shall be given force and effect as if promulgated by the Commission. The Commission shall disapprove a proposed rule change it it does not make the finding referred to in the preceding sentence. The Commission shall not approve any proposed rule change prior to thirty days after the date of publication of notice of the filing thereof, unless the Commission finds good cause for so doing and publishes its reasons for so finding.

(E) EXCEPTION. - Notwithstanding any other provision of this paragraph, a proposed rule change may take effect -

(i) upon the date of filing with the Commission, if such proposed rule change is designated by SIPC as relating solely to matters which the Commission, consistent with the public interest and the purposes of this subsection, determines by rule do not require the procedures set forth in this paragraph; or

(ii) upon such date as the Commission shall for good cause determine any proposed rule change which takes effect under this cause shall be filed promptly thereafter and reviewed in accordance with the provisions of subparagraph (A).

At any time within sixty days after the date of filing of any rule change which has taken effect pursuant to this subparagraph, the Commission may summarily abrogate such rule change and require that it be refiled and reviewed in accordance with the provisions of this paragraph, if the Commission finds that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this Act. Any action of the Commission pursuant to the preceding sentence shall not affect the validity or force of a rule change during the period it was in effect and shall not be reviewable under section 25 of the 1934 Act or deemed to be final agency action for purposes of section 704 of title 5, United States Code.

(3) ACTION REQUIRED BY COMMISSION. - The Commission may, by such rules as it determines to be necessary or appropriate in the public interest or to carry out the purposes of this Act, require SIPC to adopt, amend, or repeal any SIPC by law or rule, whenever adopted.".

SIPC FUND

SEC. 6. (a) Section 4(a) of such Act (15 U.S.C. 78ddd(a)) is amended -

(1) in paragraph (2), by striking out "The" and inserting in lieu thereof "Except as otherwise provided in this

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

section, the";

(2) by amending paragraph (2)(C) to read as follows:

"(C) Such confirmed lines of credit as SIPC may from time to time maintain, other than those maintained pursuant to paragraph (4)."; and

(3) by adding at the end thereof the following new paragraph:

"(4) OTHER LINES. - SIPC may maintain such other confirmed lines of credit as it considers necessary or appropriate, and such other confirmed lines of credit shall not be included in the balance of the fund, but amounts received from such lines of redit may be disbursed by SIPC under this Act as though such amounts were part of the fund.".

(b) Section 4(c) of such Act (15 U.S.C. 78ddd(c)) is amended -

(1) by striking out "or rule" each place it appears; and

n2) in paragraph (3), by striking out "(other than section 3(f))".

(c) Section 4(d)(1) of such Act (15 U.S.C. 78ddd(d)(1)) is amended by adding at the end thereof the following new subparagraph:

"(C) MINIMUM ASSESSMENT. - The minimum assessment imposed upon each member of SIPC shall be $ 25 per annum through the year ending December 31, 1979, and thereafter shall be the amount from time to time set by SIPC bylaw, but in no event shall the minimum assessment be greater than $ 150 per annum.".

(d) Section 4(e) of such Act (15 U.S.C. 78ddd(e)) is amended -

(1) by amending paragraph (2) to read as follows:

"(2) OVERPAYMENTS. - To the extent that any payment by a member exceeds the maximum rate permitted by subsection (c) of this sectiin, the excess shall be recoverable only against future payments by such member, except as otherwise provided by SIPC bylaw."; and

(2) by amending paragraph (3) to read as follows:

"(3) UNDERPAYMENTS. - If a member fails to pay when due all or any part of an assessment made upon such member, the unpaid portion thereof shall bear interest at such rate as may be determined by SIPC bylaw and, in addition to such interest, SIPC may impose such penalty charge as may be determined by SIPC bylaw. Any such penalty charge imposed upon a SIPC member shall not exceed 25 per centum of any unpaid portion of the assessment. SIPC may waive such penalty charge in whole or in part in circumstances where it considers such waiver appropriate.".

(e) Section 4(f) of such Act (15 U.S.C. 78ddd(f)) is amended by striking out "examining authority as".

(f) Section 4(g) of such Act (15 U.S.C. 78ddd(g)) is amended by striking out the last two sentences and inserting in lieu thereof the following: "For the purposes of the next preceding sentence, (1) the fee shall be based upon the total dollar amount of each purchase; (2) the fee shall not apply to any purchase on a national securities exchange or in an over-the-counter market by or for the account of a broker or dealer registered under section 15(b) of the 1934 Act unless such purchase is for an investment account of such broker or dealer (and for this purpose any transfer from a trading account to an investment account shall be deemed a purchase at fair market value); and (3) the Commission may, by rule, exempt any transaction in the over-the-counter markets or on any national securities exchange where necessary to provide for the assessment of fees on purchasers in transactions in such markets and exchanges on a comparable basis.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Such fee shall be collected by the broker or dealer effecting the transaction for or with the purchaser, or by such other person as provided by the Commission by rule, and shall be paid to SIPC in the same manner as assessments imposed pursuant to subsection (c) but without regard to the limits on such assessments, or in such other manner as the Commission may be rule provide.".

(g) Section 4(i) of such Act (15 U.S.C. 78ddd(i)) is amended to read as follows:

"(i) CONSOLIDATED GROUP. - Except as otherwise provided by SIPC bylaw, gross revenues from the securities business of a member of SIPC shall be computed on a consolidated basis for such member and all its subsidiaries (other than the foreign subsidiaries of such member), and the operations of a member of SIPC shall include those of any business to which such member has succeeded.".

protection of investors/

SEC. 7. (a) Section 5(a) of such Act (15 U.S.C. 78eee(a)) is amended by striking out paragraphs (2) and (3) and inserting in lieu thereof the following new paragraphs:

"(2) ACTION BY SELF-REGULATORY ORGANIZATION. - If a self-regulatory organization has given notice to SIPC pursuant to subsection (a)(1) with respect to a broker or dealer, and such broker or dealer undertakes to liquidate or reduce its business either pursuant to the direction of a self-regulatory organization or voluntarily, such self-regulatory organization may render such assistance or oversight to such broker or dealer as it considers appropriate to protect the interests of customers of such broker or dealer.  The assistance of oversight by a self-regulatory organization shall not be deemed the assumption or adoption by such self-regulatory orgauization of any obligation or liability to customers, other creditors, shareholders, or partners of the broker or dearler, and shall not prevent or act as a bar to any action by SIPC.

(3) ACTION BY SIPC. - If SIPC determines that -

(A) any member of SIPC (including any person who was a member within one hundred eighty days prior to such determination) has failed or is in danger of failing to meet its obligations to customers; and

(B) one or more of the conditions specified in subsection (b)(1) exist with respect to such member,

SIPC may, upon notice to such member, file an application for a protective decree with any court of competent jurisdiction specified is section 21(e) or 27 of the 1984 Act, except that no such application shall be filed with respect to a member the only customers of which are persons whose claims could not be satisfied by SIPC advances pursuant to section 9.

(4) EFFECT OF OTHER PENDING ACTIONS. - An application with respect to a member of SIPC filed with a court under paragraph (3) -

(A) may, with the consent of the Commission, be combined with any action brought by the Commission, including an action by the Commission for a temporary receiver pending an appointment of a trustee under subsection (b)(3); and

(B) may be filed notwithstanding the pendency in the same or any other court of any bankruptcy, mortgage foreclosure, or equity receiver ship proceeding or any proceeding to reorganize, conserve, or liquidate such member or its property, or any proceeding to enforce a lien against property of such member.".

(b) Section 5(b) of such Act (15 U.S.C. 78eee(b)) is amended to read as follows:

"(b) COURT ACTION. -

(1) ISSUANCE OF PROTECTIVE DECREE. - Upon receipt of an application by SIPC uncer subsection (a)(3), the

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

court shall forthwith issue a protective decree if the debtor consents thereto, if the debtor fails to contest such application, or if the court finds that such debtor -

(A) is insolvent within the meaning of the Bankruptcy Act, or is unable to meet its obligations as they mature;

(B) has committed an act of bankruptcy within the meaning of the Bankruptcy Act;

(C) is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor has been appointed;

(D) is not in compliance with applicable requirements under the 1934 Act or rules of the Commission or any self-regulatory organization with respect to financial responsibility or hypothecation of customers' securities; or

(E) is unable to make such computations as may be necessary to establish compliance with such financial responsibility or hypothecation rules.

Unless the debtor consents to the issuance of a protective decree, the application shall be heard three business days after the date on which it is filed, or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require.

"(2) JURISDICTION AND POWERS OF COURT. -

(A) EXCLUSIVE JURISDICTION. - Upon the filing of an application with a court for a protective decree with respect to a debtor, such court -

(i) shall have exclusive jurisdiction of such debtor and its property wherever located (including property located outside the territorial limits of such court and property held by any other person as security for a debt or subject to a lien);

(ii) shall have exclusive jurisdiction of any suit against the trustee with respect to a liquidation proceeding; and

(iii) except as inconsistent with the provisions of this Act, shall have the jurisdiction, powers, and duties conferred upon a court of bankruptcy by the Bankruptcy Act, together with such other jurisdiction, powers, and duties as are prescribed by this Act.

(B) STAY OF PENDING ACTIONS, - Pending the issuance of a protective decree under paragraph (1), the court with which an application has been filed -

(i) shall stay any pending bankruptcy, mortgage foreclosure, equity receivership, or other proceeding to reorganise, conserve, or liquidate the debtor or its property and any other suit against any receiver, conservator, or trustee of the debtor or its property, and shall continue such stay upon appointement of a trustee pursuant to paragraph (3);

(ii) may stay any proceeding to enforce a lien against property of the debtor or any other suit against the debtor, including a suit by stockholders of the debtor which interferes with prosecution by the turstee of claims against former directors, officers, or employees of the debtor, and may continue such stay upon appointment of a trustee pursuant to paragraph (3);

(iii) may stay enforcement of, and upon appointment of a trustee pursuant to paragraph (3), may continue the stay for such period of time as may be appropriate, but shall abrogare, the right of setoff provided in section 68 of the Bankruptcy Act, and the right to enforce a valid, nonpreferential lien or pledge against the property of the debtor; and

(iv) may appoint a temporary receiver.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

"(3) APPOINTMENT OF TRUSTEE AND ATTORNEY. - If the court issues a protective decree under paragraph (1), such court shall forthwith appoint, as trustee for the liquidation of the business of the debtor and as attorney for the trustee, such persons as SIPC, in its sole discretion, specifies.  The persons appointed as trustee and as attorney for the trustee may be associated with the same firm.  SIPC may, in its sole discretion, specify itself or one of its employees as trustee in any case in which SIPC has determined that the liabilities of the debtor to unsecured general creditors and to subordinated lenders appear to aggregate less than $ 750,000 and that there appear to be fewer than five hundred customers of such debtor.  No person may be appointed to serve as trustee or attorney for the trustee if such person is not disinterested within the meaning of paragraph (6), except that for any specified purpose other than to represent a trustee in conducting a liquidation proceeding, the trustee may, with the approval of SIPC and the court, employ an attorney who is not disinterested.  A trustee appointed under this paragaph shall qualify by filing a bond in the manner prescribed by the applicable provisions of the Bankruptcy Act, except that neither SIPC nor any employee of SIPC shall be required to file a bond when appointed as trustee.

"(4) REFERENCE TO REFEREE IN BANKRUPTCY. - If the court issues a protective decree and appoints a trustee under this section, such court may, at any stage of the proceeding, refer the proceeding to a referee in bankruptcy to hear and determine any or all matters, or to a referee in bankruptcy as special master to hear and report generally or upon specified matters.  Only under special circumstances shall a reference be made to a special master who is not a referee in bankruptcy.

(5) COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES. -

(A) ALLOWANCES IN GENERAL. - The court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred (hereinafter in this paragraph referred to as 'allowances') by a trustee, and by the attorney for such a trustee, in connection with a liquidation proceeding.  No allowances (other than reimburse (Word Illegible) proper costs and expenses incurrede shall be granted to SIPC or any employee of SIPC for serving as trustee.  Allowances may be granted on an interim basis during the course of the liquidation proceeding at such times and in such amounts as the court considers appropriate.

(B) ALLOWANCES TO REFEREE IN BANKRUPTCY OR SPECIAL MASTER. - In the event a proceeding has been referred to a referee in bankruptcy or special master, the district judge may grant reasonabvle allowances to such referee in bankruptcy or a special master, in the manner provided for in a case filed under chapter X of the Bankruptcy Act, as now in effect or as amended from time to time.

(C) APPLICATION FOR ALLOWANCES. - Any person seeking allowances shall file with the court an application which complies in form and content with the provisions of the Bankruptcy Act governing applications for allowances under such Act.  A copy of such application shall be served upon SIPC when filed.  The court shall fix a time for a hearing on such application, and notice of such hearing shall be given to the applicant, the trustee, the debtor, the creditors, SIPC, and such other persons as the court may designate, except that notice need not be given to customers whose claims have been or will be satisfied in faull or to creditors who cannot reasonably be expected to receive any distribution during the course of the liquidation proceeding.

(D) RECOMMENDATIONS OF SIPC AND AWARDING OF ALLOWANCES. - Whenever an application for allowances is filed pursuant to subparagraph (C), SIPC shall file its recommendation with respect to such allowances with the court prior to the hearing on such application and shall, if it so requests, be allowed a reasonable time after such hearing within which to file a further recommendation.  In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this Act and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

(E) APPLICABLE RESTRICTIONS. - The restrictions on sharing of compensation set forth in the Bankruptcy Act

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

shall apply to allowances.

(F) CHARGE AGAINST ESTATE. - Allowances granted by the court, including interim allowances, shall be charged against the general estate of the debtor as a cost and expense of administration.  If the general estate is insufficient to pay allowances in whole or in part, SIPC shall advance such funds as are necessary for such payment.

(6) DISINTERESTEDNESS. -

(A) STANDARDS, - For purposes of paragraph (3), a person shall not be deemed disinterested if -

(i) such person is a creditor (including a customer), stockholder, or partner of the debtor;

(ii) such person is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the filing date was the underwriter of any securities of the dbetor;

(iii) such person is, or was within two yers prior to the filing date, a director, partner, officer, or employee of the debtor or such an underwritere, or an attorney for the debtor or such an underwriter; or

(iv) it appears that such person has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such an underwriter, or for any other reason, an interest materially adverse to the interests of any class of creditors (including customers) or stockholders,

except that SIPC shall in all cases be deemed disinterested, and an employee of SIPC shall be deemed disinterested if such employee would, except for his association with SIPC, meet the standars set forth in this subparagrah.

(B) HEARING. - The court shall fix a time for a hearing on disinterestedness, to be held promptly after the appointment of a trustee.  Notice of such hearing shall be mailed at least ten dys prior thereto to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtors, and to the creditors and stockholders of the debtor, to SIPC, and to such other persons as the court may designate.  The court may, in its discretion, also require that notice be given by publication in such newspaper or newspapers of general circulation as it may designate.  At such hearing, at any adjournment thereof, or upon application, the court shall hear objections to the retention in office of a trustee or attorney for a trustee on the grounds that such person is not disinterested.".

(c) Section 5 of such Act (15 U.S.C. 78eee) is amended by adding at the end thereof the following new subsection:

"(d) SIPC PARTICIPATION. - SIPC shall be deemed to be a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters, and shall be deemed to have intervened with respect to all such matters with the same force and effect as if a petition for such purpose had been allowed by the court."

GENERAL PROVISIONS OF A LIQUIDATION PROCEEDING

SEC. 8.  Section 6 of such Act (15 U.S.C. 78fff) is amended to read as follows:

"SEC. 6.  GENERAL PROVISIONS OF A LIQUIDATION PROCEEDING.

"(a) PURPOSES. - The purposes of a liquidation proceeding under this Act shall be -

(1) as promptly as possible after the appointment of a trustee in such liquidation proceeding, and in accordance with the provisions of this Act -

(A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto as provided in

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

section 8(c)(2); and

(B) to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers to the extent provided in this section;

(2) to sell or transfer offices and other productive units of the business of the debtor;

(3) to enforce rights of subrogation as provided in this Act; and

(4) to liquidate the business of the debtor.

(b) APPLICATION OF BANKRUPTCY ACT. - To the extent consistent with the provisions of this Act, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the Bankruptcy Act.For purpose of applying the Bankruptcy Act to this Act, any reference in the Bankruptcy Act to the date of commencement of proceedings under the Bankruptcy Act shall be deemed to be a reference to the filing date under this Act.

(c) DETERMINATION OF CUSTOMER STATUS. - In a liquidation proceeding under this Act, whenever a person has acted with respect to cash or securities with the debtor after the filing date and in a manner which would have given him the status of a customer with respect to such cash or securitis had the action occurred prior to the filing date, and the trustee is satisfied that such action was taken by the customer in good faith and prior to the appointment of the trustee, the date on which such action was taken shall be deemed to be the filing date for purposes of determining the net equity of such customer with respect to such cash or securities.

(d) APPORTIONMENTS. - In a liquidation proceeding under this Act, any cash or securities remaining after the liquidation of a lien or pledge made by a debtor shall be apportioned between his general estate and customer property in the proportion in which the general property of the debtor and the cash and securities of the customers of such debtor contributed to such lien or pledge.  Securities apportioned to the general estate under this subsection shall be subject to the provisions of section 16(5)(A).

(e) COSTS AND EXPENSES OF ADMINISTRATION. - All costs and expense of administration of the estate of the debtor and of the liquidation proceeding shall be bonre by the general estate of the debtor to the extent it is sufficient therefor, and the priorities of distribution from the general estate shall be a provided in the Bankruptcy Act.  Costs and expenses of administration shall include payments pursuant to section 8(e) and section 9(c)(1) (to the extent such payments recovered securities which were apportioned to the general estate pursuant to subsection (d)) and costs and expenses of SIPC employees utilized by the trustee pursuant to section 7(a)(2).  All funds advanced by SIPC to a trustee for such costs and expenses of administration shall be recouped from the general estate as a first priority under the Bankruptcy Act.".

NEW SECTIONS OF THE SECURITIES INVESTOR PROTECTION ACT OF 1970

SEC. 9.  The Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.) is amended by redesignating sections 7 through 12 as sections 11 through 16, respectively, and by inserting immediately after section 6 the following new sections:

"SEC. 7.  POWERS AND DUTIES OF A TRUSTEE.

(a) TRUSTEE POWERS. - A trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in bankruptcy under the Bankruptcy Act has with respect to a bankrupt and the property of a bankrupt.  In addition, a trustee may, with the approval of SIPC but without any need for court approval -

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(1) hire and fix the compensation of all personnel (including officers and employees of the debtor and of its examining authority) and other persons (including accountants) that are deemed by the trustee necessary for all or any purposes of the liquidation proceeding;

(2) utilize SIPC employees for all or any purposes of a liquidation proceeding; and

(3) margin and maintain customer accounts of the debtor for the purposes of section 8(f).

(b) TRUSTEE DUTIES. - To what extent consistent with the provisions of this Act or as otherwise ordered by the court, a trustee shall be subject to the same duties as a trustee in bankruptcy, except that a trustee may, but shall have no duty to, reduce to money any securities constituting customer property or in the general estate of the debtor.  In addition, the trustee shall -

(1) deliver securities to or on behalf of customers to the maximum extent practicable in satisfaction of customer claims for securities of the same class and series of an issuer; and

(2) subject to the prior approval of SIPC but without any need for court approval, pay or guarantee all or any part of the indebtedness of the debtor to a bank, lender, or other person if the trustee determines that the aggregate market value of securities to be made available to the trustee upon the payment or guarantee of such indebtedness does not appear to be less than the total amount of such payment or guarantee.

(c) REPORTS BY TRUSTEE TO COURT. - The trustee shall make to the court and to SIPS such written reports as may be required by the Bankruptcy Act, and shall include in such reports information with respect to the progress made in distributing cash and securities to customers.  Such reports shall be in such form and detail as the Commission determines by rule to present fairly the results of the liquidation proceeding as of the date of or for the period covered by such reports, having due regard for the requirements of section 17 of the 1934 Act and the rules prescribed under such section and the magnitude of items and transactions involved in connection with the operations of a broker or dealer.

(d) INVESTIGATIONS. - The trustee shall -

(1) as soon as practicable, investigate the acts, conduct, property, liabilities, and financal conditions of the debtor, the operation of its business, and any other matter to the extent relevant to the liquidation proceeding, and report thereon to the court;

(2) examine, by deposition or otherwise, the directors and officers of the debtor and any other witnesses concerning any of the matters referred to in paragraph (1);

(3) report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate; and

(4) as soon as practicable, prepare and submit, to SIPC and such other persons as the court designtes and in such from and manner as the court directs, a statement of his investigation of matters referred to in paragraph (1).

"SEC. 8.  SPECIAL PROVISIONS OF A LIQUIDATION PROCEEDING.

"(a) NOTICE AND CLAIMS. -

(1) NOTICE OF PROCEEDINGS. - Promptly after the appointment of the trustee, such trustee shall cause notice of the commencement of proceedings under this section to be published in one or more newspapers of general circulation in the form and manner determined by the court, and at the same time shall cause a copy of such notice to be mailed to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

records of the debtor.  Notice to creditors other than customers shall be given in the manner prescribed by the Brankruptcy Act, except that such notice shall be given by the trustee.

(2) STATEMENT OF CLAIM.  - A customer shall file with the trustee a written statement of claim but need not file a formed proof of claim, except that no obligation of the debtor to any person associated with the debtor within the meaning of section 3(a)(18) or section 3(a)(21) of the 1934 Act, any benefiical owner of 5 per centum or more of the voting stock of the debtor, or any member of the immediate family of any such person or owner may be satisfied without formal proof of claim.

(3) TIME LIMITATIONS. - No claim of a cusomer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice under paragaph (1) shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.  Any claim of a customer for a net equity which is received by the trustee after the expiration of such period of time as may be fixed by the court (not exceeding sixty days after the date of publication of notice under paragraph (1)) need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from moneys advanced by SIPC, it shall be satisfied in cash or securities (or both) as the trustee determines is most economical to the estate.

(4) EFFECT ON CLAIMS. - Except as otherwise provided in this section, and without limiting the powers and duties of the trustee to discharge obligations promptly as specified in this section, nothing in this section shall limit the right of any person, including any subrogee, to establish by formal proof or otherwise as the court may provide such claims as such person may have against the debtor, including claims for the payment of money and the delivery of specific securities, without resort to moneys advanced by SIPC to the trustee.

(b) PAYMENTS TO CUSTOMERS. - After receipt of a written statement of claim pursuant to subsection (a)(2), the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer (subject to the provisions of subsection (d) and section 9(a)) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee.  For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date.  For purposes of this subsection, the court shall, among other things -

(1) with respect to net equity claims, authorize the trustee to satisfy claims out of money made available to the trustee by SIPC notwithstanding the fact that there has not been any showing or determination that there are sufficient funds of the debtor available to satisfy such claims; and

(2) with respect to claims relating to, or net equities based upon, securities of a class and series of an issuer which are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee, authorize the trustee to deliver securities of such class and series if and to the extent available to satisfy such claims in whole or in part, with partial deliveries to be made pro rata to the greatest extent considered practicable by the trustee.

Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases, and assignments, but shall be without prejudice to any right of a claimant to file normal proof of claim within the period specified in subsection (a)(3) for any balance of securities or cash to which such claimant considers himself entitled.

(c) CUSTOMER RELATED PROPERTY. -

(1) ALLOCATION OF CUSTOMER PROPERTY. - The trustee shall allocate customer property of the debtor as follows:

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(A) first, to SIPC in repayment of advances made by SIPC pursuant to section 9(c)(1) to the extent such advances recovered securities which were apportioned to customer property pursuant to section 6(d);

(B) second, to customers of such debtor, who shall share ratably in such customer property on the basis and to the extent of their respective net equities;

(C) third, to SIPC as subrogee for the claims of customers;

(D) fourth, to SIPC in repayment of advances made by SIPC pursuant to section 9(c)(2).

Any customer property remaining after allocation in accordance with this paragraph shall become part of the general estate of the debtor. To the extent customer property and SIPC advances pursuant to section 9(a) are not sufficient to pay or otherwise satisfy in full the net equity claims of customers, such customers shall be entitled, to the extent only of their respective unsatisfied net equities, to participate in the general estate as unsecured creditors. For purposes of allocating customer property under this paragraph, securities to be delivered in payment of net equity claims for securities of the same class and series of an issuer shall be valued as of the close of business on the filing date.

(2) DELIVERY OF CUSTOMER NAME SECURITIES. - The trustee shall deliver customer name securities to or on behalf of a customer of the debtor entitled thereto if the customer is not indebted to the debtor. If the customer is so indebted, such customer may, with the approval of the trustee, reclaim customer name securities upon payment to the trustee, within such period of time as the trustee determines, of all indebtedness of such customer to the debtor.

(3) RECOVERY OF TRANSFERS. - Whenever customer property is not sufficient to pay in full the claims set forth in subpararaphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of the Bankruptcy Act. Such recovered property shall be treated as customer propery. For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.

(d) PURCHASE OF SECURITIES. - The trustee shall, to the extent that securities can be purchased in a fair and orderly marked, purchase securities as necessary for the delivery of securities to customers in satisfaction of their claims for net equities based on securities under section 7(b)(1) and for the transfer of customer accounts under subsection (f), in order to restore the accounts of such customers as of the filing date. To the extent consistent with subsection (c), customer property and moneys advanced by SIPC may be used by the trustee to pay for securities so purchased. Moneys advanced by SIPC for each account of a separate customer may not be used to purchase securities to the extent that the aggregate value of such securities on the filing date exceeded the amount permitted to be advanced by SIPC under the provisions of section 9(a).

(e) CLOSEOUTS. -

(1) IN GENERAL. - Any contract of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers of dealers which is wholly executory on the filing date shall not be completed by the trustee, except to the extent permitted by SIPC rule. Upon the adoption by SIPC of rules with respect to the closeout of such a contract but prior to the adoption of rules with respect to the completion of such a contract, the other broker or dealer shall close out such contract, without unnecessary delay, in the best available market and pursuant to such SIPC rules. Until such time as SIPC adopts rule with respect to the completion or closeout of such a contract, such a contract shall be closed out in accordance with Commission Rule S6(d)-1 as in effect on the date of enactment of this section, or any comparable rule of the Commission subsequently adopted, to the extent not inconsistent with the provisions of this subsection.

(2) NET PROFIT OR LOSS. - A broker or dealer shall net all profits and losses on all contracts closed out under

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

this subsection and -

(A) if such broker or dealer shows a net profit on such contracts, he shall pay such net proit the trustee; and

(B) if such broker or dealer sustains a net loss on such contracts, he shall be entitled to file a claim against the debtor with the trustee in the amount of such net loss.

To the extent that a net loss sustained by a broker or dealer arises from contracts pursuant to which such broker or dealer was acting for its own customer, such broker or dealer shall be entitled to receive funds advanced by SIPC to the trustee in the amount of such loss, except that such broker or dealer may not receive more than $ 40.000 for each separate customer with respect to whom it sustained a loss.  With respect to a net loss which is not payable under the preceding sentence from funds advanced by SIPC, the broker or dealer shall be entitled to participate in the general esate as an unsecured creditor.

(3) REGISTERED CLEARING ACENCIES. - Neither a registered clearing agency which by its rules has an established procedure for the closeout of open contracts between an insolvent broker or dealer and its participants, nor its participants to the extent such participants' claims are or may be processed within the registered clearing agency, shall be entitled to receive SIPC funds in payment of any losses on such contracts, except as SIPC may otherwise provide by rule.  If such registered clearing agency or its participants sustain a net loss on the closeout of such contracts with the debtor, they shall have the right to participate in the general estate as unsecured creditors to the extent of such loss.  Any funds or other property owed to the debtor, after the closeout of such contracts, shall be promptly paid to the trustee.  Rules adopted by SIPC under this paragraph shall provide that in no case may a registered clearing agency or its participants, to the extent such participants' claims are or may be processed within the registered clearing agency, be entitled to receive funds advanced by SIPC in an amount greater, in the aggregate, than could be received by the participants if such participants proceeded individually under paragraphs (1) and (2).

(4) DEFINITION. - For purposes of this subsection, the term 'customer' does not include any person who -

(A) is a broker or dealer;

(B) had a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, was part of the capital of the claiming broker or dealer or was subordinated to the claims of any or all creditors of such broker or dealer; or

(C) had a relationship of the kind specified in section 9(a)(5) with the debtor.

A claiming broker or dealer shall be deemed to have been acting on behalf of its customer if it acted as agent for such customer or if it held such customer's order which was to be executed as a part of its contract with the debtor.

(f) TRANSFER OF CUSTOMER ACCOUNTS. - In order to facilitate the prompt satisfaction of customer claims and the orderly liquidation of the debtor, the trustee may, pursuant to terms satisfactory to him and subject to the prior approval of SIPC, sell or otherwise transfer to another member of SIPC, without consent of any customer, all or any part of the account of a customer of the debtor.  In connection with any such sale or transfer to another member of SIPC and subject to the prior approval of SIPC, the trustee may -

(1) waive or modify the need to file a written statement of claim pursuant to subsection (a)(2); and

(2) enter into such agreements as the trustee considers appropriate under the circumstances to indemnify any such member of SIPC against shortages of cash or securities in the customer accounts sold or transferred.

The funds of SIPC may be made available to guarantee or secure any indemnification under paragraph (2).  The prior approval of SIPC to such indemnification shall be conditioned, among such other standards as SIPC may

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

determine, upon a determination by SIPC that the probable cost of any such indemnification can reasonably be expected not to exceed the cost to SIPC of proceeding under section 9(a) and section 9(b).

(a) ADVANCES FOR CUSTOMERS' CLAIMS. - In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $ 100.000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property, except that -

(1) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is a claim for cash, as distinct from a claim for securities, the amount advanced to satisfy such claim for cash shall not exceed $ 40,000 for each such customer;

(2) a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity;

(3) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is satisfied by the delivery of securities purchased by the trustee pursuant to section 8(d), the securities so purchased shall be valued as of the filing date for purposes of applying the dollar limitation of this subsection;

(4) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy, directly or indirectly, any net equity claim of a customer who is a general partner, officer, or director of the debtor, a beneficial owner of five per centum or more of any class of equity security of the debtor (other than a nonconvertible stock having fixed preferental dividend and liquidation rights), a limited partner with a participation of five per centum or more in the net assets or net profits of the debtor, or a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the debtor; and

(5) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank (which customers are not themselves a broker or dealer or bank or a person described in paragraph (4)), in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.

To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this Act, except that SIPC as subrogee may assert no claim against customer property until after the allocation thereof to customers as provided in section 8(c).

(b) OTHER ADVANCES. - SIPC shall advance to the trustee -

(1) such moneys as may be required to carry out section 8(e); and

(2) to the extent the general estate of the debtor is not sufficient to pay any and all costs and expenses of administration of the estate of the debtor and of the liquidation proceeding, the amount of such costs and expenses.

(c) DISCRETIONARY ADVANCES. - SIPC may advance to the trustee such moneys as may be required to -

(1) pay or guarantee indebtedness of the debtor to a bank, lender, or other person under section 7(b)(2);

(2) guarantee or secure any indemnity under section 8(f); and

(3) purchase securities under section 8(d).

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

"SEC. 10.  DIRECT PAYMENT PROCEDURE.

(a) DETERMINATION REGARDING DIRECT PAYMENTS. - If SIPC determines that -

(1) any member of SIPC (including a person who was a member within one hundred eighty days prior to such determination has failed or is in danger of failing to meet its obligations to customers;

(2) one or more of the conditions specified in section 5(b)(1) exist with respect to such member;

(3) the claim of each customer of the member is within the limits of protection provided in section 9(a);

(4) the claims of all customers of the member aggregate less than $ 250,000;

(5) the cost to SIPC of satisfying customer claims under this section will be less than the cost under a liquidation proceeding; and

(6) such member's registration as a broker-dealer under section 15(b) of the 1934 Act has been terminated, or such member has consented to the use of the direct payment procedure set forth in this section.

SIPC may, in its discretion, use the direct payment procedure set forth in this section in lieu of instituting a liquidation proceedings wich respect to such member.

(b) NOTICE. - Promptly after a determination under subsection (a) that the direct payment procedure is to be used with respect to a member, SIPC shall cause notice of such direct payment procedure to be published in one or more newspapers of general circulation in a forma and manner determined by SIPC, and at the same time shall cause to be mailed a copy of such notice to each person who appears, from the books and records of such member, to have been a customer of the member with an open account within the past twelve months, to the address of such person as it appears from the books and records of such member.  Such notice shall state that SIPC will satisfy customer claims directly, without a liquidation proceeding, and shall set forth the form and manner in which claims may be presented.  A direct payment procedure shall be deemed to commence on the date of first publication under this subsection and no claim by a customer shall be paid or otherwise satisfied by SIPC unless received within the six-month period beginning on such date, except that SIPC shall, upon application within such period, and for cause show, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

(c) PAYMENTS TO CUSTOMERS. - SIPC shall promptly satisfy all obligations of the member to each of its customers relating to, or net equity claims based upon, securities or cash by the delivery of securities or the effecting of payments to such customer (subject to the provisions of section 8(d) and section 9(a)) insofar as such obligations are ascertainable from the books and records of the member or are otherwise established to the satisfaction of SIPC. For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the date of publication under subsection (b).  Any payment or delivery of securities pursuant to this section may be conditioned upon the execution and delivery, in a form to be determined by SIPC, of appropriate receipts, supporting affidavits, releases, and assignments.  To the extent moneys of SIPC are used to satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers against the member.

(d) EFFECT ON CLAIMS. - Except as otherwise provided in this section, nothing in this section shall limit the right of any person, including any subrogee, to establish by formal proof or otherwise such claims as such person may have against the member, including claims for the payment of money and the delivery of specific securities, without resort to moneys of SIPC.

(e) JURISDICTION OF DISTRICT COURTS. - After SIPC has published this section, any person aggrieved by

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

any determination of SIPC with respect to his claim under subsection (c) may, within six months following mailing by SIPC of its determination with respect to such claim, seek a final adjudication of such claim.  The district courts of the United States shall have original and exclusive jurisdiction of any civil action for the adjudication of such claim, without regard to the citizenship of the parties or the amount in controversy.  Any such action shall be brought in the judicial district where the head office of the debtor is located.  Any determination of the rights of a customer under subsection (c) shall not prejudice any other right or remedy of the customer against the member.

(f) DISCONTINUANCE OF DIRECT PAYMENT PROCEDURES. - If, at any time after the institution of a direct payment procedure with respect to a member, SIPC determines, in its discretion, that continuation of such direct payment procedure is not appropriate, SIPC may cease such direct payment procedure and, upon so doing, may seek a protective decree pursuant to section 5.  To the extent payments of cash, distributions of securities, or determinations with respect to the validity of a customer's claim are made under this section, such payments, distributions, and determinations shall be recognized and given full effect in the event of any subsequent liquidation proceeding.  Any action brought under subsection (e) and pending at the time of the appointment of a trustee under section 5(b)(3) shall be permanently stayed by the court at the time of such appointment, and the court shall enter an order directing the transfer or removal to it of such suit.  Upon such removal or transfer the complaint in such action shall constitute the plaintiff's claim in the liquidation proceeding, if appropriate, and shall be deemed received by the trustee on the date of his appointment regardless of the date of actual transfer or removal of such action.

(g) REFERENCES. - For purposes of this section, any reference to the trustee in sections 7(b)(1), 8(d), 8(f), 9(a), 16(3) and 16(12) shall be deemed a reference to SIPC, and any reference to the date of publication of notice under section 8(a) shall be deemed a reference to the publication of notice under this section.".

COMMISSION FUNCTIONS

SEC. 10.  Section 11(a) of such Act (15 U.S.C. 78ggg(a)), as redesignated by this Act, is amended by strking out "or regulations pursuant to section 3(e) and section 9(f)" and inserting "pursuant to section 3(e)(3) and section 13(f)".

EXAMINING AUTHORITY FUNCTIONS

SEC. 11.  Section 12 of such Act (15 U.S.C. 78hhh), as redesigned by the Act, is amended -

(1) by inserting ", or collection agent if a collection agent has been designated pursuant to section 13(a)," immediately after "examining authority" the first place it appears; and

(2) by inserting "or collection agent" immediately after "examining authority" the second place it appears,

FUNCTIONS OF SELF-REGULATORY ORGANIZATIONS

SEC. 12.  Section 13(a) of such Act (15 U.S.C. 78iii(a)) is amended to read as follows:

"(a) COLLECTION AGENT. - Each self-regulatory organization shall act as collection agent for SIPC to collect the assessments payable by all members of SIPC for whom such self-regulatory organization is the examining authority, unless SIPC designates a self-regulatory organization other than the examining authority to act as collection agent for any member of SIPC who is a member of or participant in more than one self-regulatory organization.  If the only self-regulatory organization of which a member of SIPC is a member or in which it is a participant is a registered clearing agency that is not the examining authority for the member, SIPC may, nevertheless, designate such registered clearing agency as collection agent for the member or may require that payments be made directly to SIPC.  The collection agent shall be obligated to remit to SIPC assessments made under section 4 only to the extent that payments of such assessment are received by such collection agent.  Members of SIPC who are not members of or participants in a self-regulatory organization shall make payments directly to SIPC.".

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(b) Section 13(b) of such Act (15 U.S.C. 78iii(b)), as redesignated by this Act, is amended by inserting "and section 5(a)(2)" immediately after "section 5(a)(1)".

(c) Section 13(c) of such Act (15 U.S.C. 78iii(c)), as redesignated by this Act, is amended to read as follows:

(c) INSPECTIONS. - The self-regulatory organization of which a member of SIPC is a member or in which it is a participant shall inspect or examine such member for compliance with applicable financial responsibility rules, except that -

(1) if the self-regulatory organization is a registered clearing agency, the Commission may designate itself as responsible for the examination of such member for compliance with applicable financial responsibility rules; and

(2) if a member of SIPC is a member of or participant in more than one self-regulatory organization, the Commission, pursuant to section 17(d) of the 1934 Act, shall designate one of such self-regulatory organizations or itself as responsible for the examination of such member for compliance with applicable financial responsibility rules.".

(d) Section 13(f) of such Act (15 U.S.C. 78iii(f)), as redesignated by this Act, is amended to read as follows:

"(f) FINANCIAL CONDITION OF MEMBERS. - The Commission may, by such rules as it determines necessary or appropriate in the public interest and to carry out the purposes of this Act, require any self-regulatory organization to furnish SIPC with reports and records (or copies thereof) relating to the financial condition of members of or participants in such self-regulatory organization.".

PROHIBITED ACTS

SEC. 13.  (a) Section 14(a) of such Act (15 U.S.C. 78jjj(a)), as redesignated by this Act, is amended -

(1) by inserting "and penalty" immediately after "interest"; and

(2) by striking out "he" each plact it appears and inserting "it" in lieu thereof.

(b) Section 14(b) of such Act (15 U.S.C. 75jjj(b)), as redesignated by this Act, is amended -

(1) by inserting "or for whom a direct payment procedure has been initiated" immediately after "Act" each place it appears; and

(2) in the subsection heading, by inserting "OR INITIATION OF DIRECT PAYMENT PROCEDURE" immediately after "Trustee/".

(c) Section 14(c) of such Act (15 U.S.C. 78jjj(e)) is amended to read as follows:

(c) CONCEALMENT OF ASSETS; FALSE STATEMENTS OR CLAIMS. -

(1) SPECIFIC PROHIBITED ACTS. - Any person who, directly or indirectly, in connection with or in contemplation of any liquidation proceeding or direct payment procedure -

(A) employs any device, scheme, or artifice to defraud;

(B) engages in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; or

(C) fraudulently or with intent to defeat this Act -

(i) conceals or transfers any property belonging to the estate of a debtor;

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(ii) makes a false statement of account;

(iii) presents or uses any false claim for proof against the estate of a debtor;

(iv) receives any material amount of property from a debtor;

(v) gives, offers, receives, transfers, or obtains any money or property, remuneration, compensation, reward, advantage, other consideration, or promise thereof, for acting or forebearing to act;

(vi) conceals, destroys, mutilates, falsifies, makes a false entry in, or otherwise falsifies any document affecting or relating to the property or affairs of a debtor; or

(vii) withholds from any person entitled to its possession, any document affecting or relating to the property or affairs of a debtor.

shall be fined not more than $ 50,000 or imprisoned for not more than five years, or both.

(2) FRAUDULENT CONVERSION. - Any person who, directly or indirectly steals, embezzles, or fraudulently, or with intent to defeat this Act, abstracts or converts to his own use or to the use of another any of the moneys, securities, or other assets of SIPC, or otherwise defrauds or attempts to defraud SIPC or a trustee by any means, shall be fined not more than $ 50,000 or imprisoned not more than five years, or both.".

LIABILITY, ADVERTISINO, AND OTHER MISCELLANEOUS PROVISIONS

SEC. 14.  (a) Section 15(d) of such Act (15 U.S.C. 78kkk(d)), as redesignated by this Act, is amended -

(1) by inserting ", officers, or employees" immediately after "Directors"; and

(2) in the subsection heading, by inserting ", OFFICERS, OR EMPLOYEES" immediately after "DIRECTORS".

(b) Section 15(e) of such Act (15 U.S.C. 78kkk(e)), as redesignated by this Act, is amended to read as follows:

(e) ADVERTISING. - SIPC shall by bylaw prescribe the manner in which a member of SIPC may display any sign or signs (or include in any advertisement a statement) relating to the protection to customers and their accounts, or any other protetions, afforded under this Act.  No member may display any such sign, or include in an advertisement any such statement, except in accordance with such by laws.  SIPC may also by bylaw prescribe such minimal requirements as it considers necessary and appropriate to require a member of SIPC to provide public notice of its membership in SIPC.".

(c) Section 15(b) of such Act (15 U.S.C. 78kkk(b)), as redesignated by this Act, is repealed, and subsections (c) through (h) of section 15 are redesignated as subsections (b) through (g), respectively.

DEFINITIONS

SEC. 15.  Section 16 of such Act (15 U.S.C. 78lll), as redesignated by this Act, is amended to read as follows:

"SEC. 14.  DEFINITIONS.

For purposes of this Act, including the application of the Bankruptcy Act to a liquidation proceeding:

(1) BANKRUPTCY ACT. - The term 'Bankruptcy Act' means, except where the context indicates otherwise, those provisions of the Bankruptcy Act relating to ordinary bankruptcy (chapters I through VII) as now in effect or as amended from time to time, and includes the rules of bankruptcy procedure promulgated with respect to such provisions, but does not include the provisions of section 60e of the Bankruptcy Act, relating to stockholder

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

bankruptcies.

(2) COMMISSION. - The term 'Commission' means the Securities and Exchange Commission.

(3) CUSTOMER. - The term 'customer' of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include -

(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

(4) CUSTOMER NAME SECURITIES. - The term 'customer name securities' means securities which were held for the account of a customer on the filing date by or on behalf of the debtor and which on the filing date were registered in the name of the customer, or were in the process of being so registered pursuant to instructions from the debtor, but does not include securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form.

(5) CUSTOMER PROPERTY. - The term 'customer property' means cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted.  The term "customer property' includes -

(A) securities held as property of the debtor to the extent that the inability of the debtor to meet its obligations to customers for their net equity claims based on securities of the same class and series of an issuer is attributable to the debtor's non-compliance with the requirements of section 15(c)(3) of the 1934 Act and the rules prescribed under such section;

(B) resources provided through the use or realization of customers' debit cash balances and other customer-related debit items as defined by the Commission by rule;

(C) any cash or securities apportioned to customer property pursuant to section 6(d); and

(D) any other property of the debtor which, upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers,unless the trustee determines that including such property within the meaning of such term would not significantly increase customer property.

(6) DEBTOR. - The term 'debtor' means a member of SIPC with respect to whocm an application for a protective decree has been filed under section 5(a)(3) or a direct payment procedure has been instituted under section 10(h).

(7) EXAMINING AUTHORITY. - The term 'examining authority' means, with respect to any member of SIPC (A) the self-regulatory organization which inspects or examines such member of SIPC, or (B) the Commission if such member of SIPC is not a member of or participant in any self-regulatory organization or if the Commission has designated itself examining authority for such member pursuant to section 13(c).

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(8) FILING DATE. - The term 'filing date' means the date on which as application for a protective decree is filed under section 5(a)(3), except that -

(A) if a petition was filed before such date by or against the debtor under the Bankruptcy Act, or under chapter X or XI of such Act, as now in effect or as amended from time to time, the term 'filing date' means the date on which such petition was filed;

(B) if the debtor is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced; or

(C) if the debtor is the subject of a direct payment procedure or was the subject of a direct payment procedure discontinued by SIPC pursuant to section 10(f), the term 'filing date' means the date on which notice of such direct payment procedure was published under section 10(b).

(9) FOREIGN SUBSIDIARY. - The term 'foreign subsidiary' means any subsidiary of a member of SIPC which has its principal place of business in a foreign countryor which is organized under the laws of a foreign country.

(10) GROSS REVENUES FROM THE SECURITIES BUSINESS. - The term 'gross revenues from the securities business' means the sum of (but without duplication) -

(A) commissions earned in connection with transactions in securities effected for customers as agent (net of commissions paid to other brokers and dealers in connection with such transactions) and markups with respect to purchases or sales of securities as principal;

(B) charges for executing or clearing transactions in securities for other brokers and dealers;

(C) the net realized gain, if any, from principal transactions in securities in the trading accounts;

(D) the net profit, if any, from the management of or participation in the underwriting or distribution of securities;

(E) interest earned on customers' securities accounts;

(F) fees for investment advisory services (except when rendered to one or more registered investment companies or insurance company separate accounts) or account supervision with respect to securities;

(G) fees for the solicitation of proxies with respect to, or tenders or exchanges of, securities;

(H) income from service charges or other surcharges with respect to securities;

(I) except as otherwise provided by rule of the Commission, dividends and interest received on securities in investment accounts of the broker or dealer;

(J) fees in connection with put, call, and other option transactions in securities;

(K) commissions earned from transactions in (i) certificates of deposit, and (ii) Treasury bills, bankers acceptances, or commercial paper which have a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof, the maturity of which is likewise limited, except that SIPC shall by bylaw include in the aggregate of gross revenues only an appropriate percentage of such commissions based on SIPC's loss experience with respect to such instruments over at least the preceding five years; and

(L) fees and other income from such other categories of the securities business as SIPC shall provide by bylaw.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Such term does not include revenues received by a broker or dealer in connection with the distribution of shares of a registered open end investment company or unit investment trust or revenues derived by a broker or dealer from the sale of variable annuities or from the conduct of the business of insurance.

(11) LIQUIDATION PROCEEDING. -- The term 'liquidation proceeding' means any proceeding for the liquidation of a debtor under this Act in which a trustee has been appointed under section 5(b)(3).

(12) NET EQUITY. - The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by -

(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B) any indebtedness of such customer to the debtor on the filing date; plus

(C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 8(a)).

In determining net equity under this paragraph, accounts held by a customer i separate capacities shall be deemed to be accounts of separate customers.

(13) PERSONS REGISTERED AS BROKERS OR DEALERS. - The term 'persons registered as brokers or dealers' includes any person who is a member of a national securities exchange.

(14) PROTECTIVE DECREE. - The term 'protective decree' means a decree, issued by a court upon application of SIPC under section 5(a)(3), that the customers of a member of SIPC are in need of the protection provided under this Act.

(15) SECURITY. - The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate, preorganization certificate or subscription transferable share, voting trust certificate, certificate of deposit, certificate of deposit for a security, any investment contract or certificate of interest or participation in any profitsharing agreement o in any oil, gas, or mineral royalty or lease (if such invesment contract or interest is the subject of a registration statement with the Commission pursuant to the provisions of the Securities Act of 1933), any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase or sell any of the foregoing, and any other instrument commonly known as a security. The term 'security' does not include any currency, or any commodity or related contract or futures contract, or any warrant or right to subscribe to or purchase or sell any of the foregoing.".

AMENDMENT TO THE SECURITIES EXCHANGE ACT OF 1934

SEC. 16. Section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)) is amended by adding at the end thereof the following new paragraph:

"(40 The term 'financial responsibility rules' means the rules and regulations of the Commission or the rules and regulations prescribed by any selfregulatory organization relating to financial responsibility and related practices which are designated by the Commission, by rule or regulation, to be financial responsibility rules.".

TABLE OF CONTENTS

SEC. 17. The table of contents of the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.) is amended to read as follows:

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

TABLE OF CONTENTS

Sec. 1.      Short title.

Sec. 2.      Application of Securities Exchange Act of 1934.

Sec. 3.      Securities Investor Protection Corporation.

Sec. 4.      SIPC Fund.

Sec. 5.      Protection of customers.

Sec. 6.      General provisions of a liquidation proceeding.

Sec. 7.      Powers and duties of trustee.

Sec. 8.      Special provisions of a liquidation proceeding.

Sec. 9.      SIPC advances.

Sec. 10.     Direct payment procedure.

Sec. 11.     SEC functions.

Sec. 12.     Examining authority functions.

Sec. 13.     Functions of self-regulatory organizations.

Sec. 14.     Prohibited acts.

Sec. 15.     Miscellaneous provisions.

Sec. 16.     Definitions.".

THE PURPOSE AND NEED FOR THE LEGISLATION

The reported bill, which would amend the Securities Investor Protection Act of 1970 (SIPA), is designed to provide the federal courts and the Securities Investor Protection Corporation (SIPC) with speedier and more flexible procedures for the protection of customers of insolvent brokers and dealers and the attendant liquidation of those brokers and dealers. The bill would make SIPA more responsive to the reasonable expectations of public investors and would provide investors with greater protection against the financial failure of stockbrokers, thereby enhancing investor confidence in the securities markets.

Since enactment of SIPA at the end of 1970, the protections of the Act have been made available to approximately 105,000 customers in 124 liquidation proceedings across the country. In the course of those proceedings securities and cash having a value of approximately $ 277 million have been distributed to customers. In addition, SIPC has made net advances to trustees totalling approximately $ 53 million. Despite the impact which such protections have had on investors who would otherwise have lost millions of dollars, there are significant limitations on SIPC's ability to satisfy customers' claims and to complete the liquidation of the broker promptly and at reasonable cost. In the over-view the bill addresses (A) what the customer gets, (B) how fast the customer gets it, and (C) how much it costs to get it to him.

A. *What The Customer Gets* . - A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased or even stolen, this is not always possible. Accordingly, when the customer claims for a particular stock exceed the supply available to the trustee in the debter's estate, then customers generally receive pro rata portions of the securities claims, and as to any remainder, they will receive cash based on the market value as of the filing date (normally the day the liquidation proceeding is initiated). In addition, customers owing cash or securities to the stockbroker (e.g., margin customers) are not now permitted either to deliver the securities in or to pay their debit balances; instead their accounts are netted out. One of the principal underlying purposes of these amendments, is to permit a customer to receive securities to the maximum extent possible instead of cash, in satisfaction of a claim for securities. By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments not only would satisfy the customer's legitimate expectations, but also would allow him

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

to continue to exercise investment prerogatives and to avoid oftentimes adverse tax consequences.

B.  *How Fast He Gets It* . - The present liquidation procedures are slower than necessary, particularly in smaller liquidations.  Moreover, while customers are waiting to receive their property, they are unable to effect transactions in their accounts, they stand at market risk, and the normal flow of dividends and other distributions may be disrupted and tax problems may arise.  The amendments expedite the liquidation by minimizing cumbersome administrative procedures which have proven to be time-consuming and by eliminating certain procedures which have proven to be unnecessary.  The bill would, among other things, permit the direct payment of customer claims or the appointment of SIPC or an employee as trustee under certain circumstances.  In addition, the bill would allow for the prompt transfer of customer accounts from the debtor to another broker-dealer.

C.  *How Much It costs* . - The procedures prescribed in SIPA are unnecessarily expensive in many cases.  In every liquidation a trustee must be appointed by the court and in almost every liquidation counsel for the trustee is appointed and accountants are retained.  This is necessary and appropriate for larger broker-dealers, but, under SIPA, the same procedures must be utilized whether a broker-dealer has thousands of customers or only a few.  In small liquidation proceedings the expenses of administration are disproportionately high.

The reported bill is designed to meet these shortcomings.  Its provisions will reduce administrative expenses where possible and add speed and flexibility.  In order to increase the extent to which customer claims for securities are satisfied with securities rather than cash, the bill would authorize the trustee for a brokerage firm undergoing liquidation to make up for missing securities by purchasing shares, so long as this could be done in a fair and orderly market.  The words "fair and orderly market" are used to assure that the trustee will not be forced to purchase securities in a market controlled by artificial influences.  For example, a market might not be deemed fair and orderly where there were indications of manipulation by insiders or others.  In addition to open market purchases, the bill would authorize the trustee, subject to SIPC approval, to pay or guarantee loans collateralized by securities.  In appropriate cases SIPC could advance funds for this purpose.  Margin or other customers would be permitted to pay their indebtedness and receive the securities or cash in their accounts.  The current practice of paying cash in lieu of missing securities would be substantially eliminated.

To speed up distributions of securities to customers, the bill gives the trustee the power to transfer some or all of the debtor's customer accounts to other broker-dealers.  Customers would not, of course, have to leave their accounts with the transferee broker-dealers.  It must be recognized, however, that such transfers are not always feasible, and in many liquidations this procedure will not be utilized Bulk transfers would take place only where willing transferee firms are available, where the failed firm's records are reasonably accurate and complete, and where SIPC determines that the cost of such bulk transfer of accounts would not exceed the cost of ordinary distributions in a liquidation proceeding.

In order to pare administrative expenses, the bill would specifically authorize SIPC to designate itself or one of its employees as trustee in smaller cases (those where the failed firm's liabilities appear to be less than $ 750,000 and where there appear to be fewer than 500 customers).  Local counsel would still be retained.  Neither SIPC nor a SIPC employee would receive compensation for services rendered as trustee, though expenses would be reimbursed.  The appointment of a SIPC employee as trustee has been made in a few cases under SIPA, but has not been widely used because of uncertainty created by existing language.  In those cases where SIPC employees have served as trustee there have been substantial savings in expenses of administration and, because of the expertise of SIPC and its employees the liquidation process has been expedited.

The time and cost involved in liquidations can be further reduced by minimizing, in specific situations, excessive reliance upon judicial procedures.  Therefore, the reported bill authorizes SIPC, under certain conditions, to make payments directly to customers without the need for a court-supervised liquidation proceeding.  The direct payment procedure could be utilized only in those situations where SIPC determines that the claim of each customer of the broker-dealer appear to be within the limits of SIPC protection and where SIPC further determines that the aggregate of all customer claims appears to be less than $ 250,000.  The right of customers to a judicial determination as to disputes

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

with SIPC is preserved.

Under the current act, the maximum amount which SIPC can advance to satisfy the claim of any one customer is limited to $ 50,000 for a claim for securities and cash, of which no more than $ 20,000 can be advanced to satisfy that portion of the claim which is for cash. In order to increase investor confidence in the securities markets the bill would increase the limits of SIPC protection to $ 100,000 and $ 40,000, respectively. The monetary impact on SIPC from these increases is expected to be small. Out of the approximately 105,000 claims satisfied in all liquidation proceedings to date, there have been only 163 customers in 39 liquidations where claims exceeded the limits of SIPC protection.

In addition to the provisions discussed above, the bill makes miscellaneous substantive and technical changes in the present act. Among these are changes dealing with SPIC's rulemaking authority. SIPC's experience in liquidation proceedings to date demonstrates that many problems arise, and can be expected to arise in the future, which are not subject to statutory determination. Therefore, the reported bill would give SIPC substantive rulemaking authority, including authority to make rules relating to the definition of terms used but not defined in the act and to the procedures for the liquidation of broker-dealers and the conduct of direct payment procedures. The bill sets forth procedures whereby such rules are submitted to the Securities and Exchange Commission ("the Commission") and generally published for public comments prior to approval or disapproval by the Commission. Upon approval the rules have the force and effect of law.

Because of the jurisdictional and practical difficulties which would be involved should SIPC ever have to undertake the liquidation of a foreign broker-dealer, the bill would exclude from SIPC membership those broker-dealers whose principal business, in the determination of SIPC and subject to Commission review, is conducted outside of the United States and its territories and possessions. SIPC is required to provide that such foreign broker-dealers may become members of SIPC under terms and conditions specified by SIPC by rule.

The Committee determined to continue to exclude from SIPC membership all persons whose business consists exclusively of (1) the distribution of shares of registered open and investment companies or unit investment trusts, (2) the sale of variable annuities, (3) the business of insurance, or (4) the business of rendering investment advice to investment companies or insurance company separate accounts. As originally written, the bill sought to repeal this exemption from SIPC membership. However, after extensive deliberation the Committee concluded that the exemptions should be retained since SIPC's experience since 1970 has shown that the distribution system for mutual fund shares and variable annuities continues not to create the kinds of risk created by general brokerage activities.

SECTION BY SECTION SUMMARY

*Section 1 - Short Title*

The short title of the legislation is "Securities Investor Protection Act Amendments of 1977."

*Section 2 - Membership of SIPC*

Section 2(a) of the bill amends section 3(a)(2) of SIPA to excluded from SIPC membership those persons whose principal business, in SIPC's determination, is conducted outside the United States and its territories and possessions. SIPC's determination is reviewable by the SEC.

The bill continues the exemption from SIPC membership of all persons whose business consists exclusively of (1) the distribution of shares of registered open end investment companies or unit investment trusts, (2) the sale of variable annuities, (3) the business of insurance, or (4) the business of rendering investment advice to mutual funds or insurance company separate accounts. SIPC is authorized by rule to provide terms and conditions upon which registered brokerdealers whose principal business is conducted outside the United States and its territories and possessions can become SIPC members. The bill requires that any broker-dealer excluded by this section make disclosure of such exclusion to persons living in the United States, its territories and possessions, as may be required by the Commission

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

by rule.

*Section 3 - Powers of SIPC*

Section 3 of the bill amends section 3(b) of SIPA by authorizing SIPC to adopt bylaws relating to the indemnity of its directors, officers, and employees, and to adopt rules relating to the definition of terms used in SIPA and to the procedures for the liquidation of members and direct payment procedures. Notwithstanding the grant of this authority, SIPC may not redefine any term for which a definition is provided in section 16 of the bill. The definitional authority is designed to provide SIPC with flexibility in the interpretation of terms in the course of a liquidation for which no well-established legal meaning exists. The rulemaking authority is desirable in order to enable SIPC to deal with the many problems which arise in the course of the conduct of its business.

*Section 4 - Board of Directors*

Section 4 makes various technical and clarifying changes in sections 3(c)(2) and 3(c)(5) of SIPA.

*Section 5 - Bylaws and Rules*

Section 5 of the bill amends section 3(e) of SIPA by deleting provisions regarding initial bylaws and by establishing procedures for the adoption, amendment, and repeal by SIPC of bylaws and rules. Proposed bylaw changes are reviewable by the Commission, and may be subject to the rulemaking procedure where the Commission deems them significant. New procedures appropriate to legislative, rather than interpretive rules are provided since SIPC's rules will have the force and effect of law. Proposed rule changes must be specifically approved by the Commission, or be the subject of Commission proceedings to determine whether they should be disapproved. An exception is provided where the Commission determines by rule that the proposed change does not require such procedures.

*Section 6 - SIPC Fund*

Section 6 of the bill makes various technical changes in section 4 of SIPA. In addition the bill clarifies SIPC's authority to maintain confirmed lines of credit separate from the fund, thereby diminishing the possibility that SIPC might need to borrow from the United States Treasury. The bill imposes a minimum assessment on SIPC members of $ 25 per year through 1979. Thereafter SIPC is authorized to set a minimum assessment not exceeding $ 150 per year. SIPC is authorized to levy a penalty for late payment of assessments. Finally, this section continues the existing requirement that gross revenues from the securities business be computed on a consolidated basis, except that it excludes foreign subsidiaries from such consolidation. A companion change in the definition of "customer" contained in section 15 of the bill excludes from SIPC protection any person to the extent that his claim arises from transactions with a foreign subsidiary of a SIPC member.

*Sections 7, 8, and 9 - Protection of Investors, General Provisions of a Liquidation Proceeding and New Sections of SIPA*

Sections 7, 8, and 9 of the bill contain most of the substantive amendments relating to the protection of investors in the event of a broker-dealer's financial failure. Discussed below are sections of SIPA as they would be amended by the bill.

Section 5(a)(2).Action by a self-regulatory organization to assist a member of SIPC in financial difficulty or to take appropriate action with respect to such a member as may be appropriate to protect customers may obviate the need for a SIPC liquidation. This section would clarify the authority of self-regulatory organizations in this regard, and would assure that any assistance rendered by a self-regulatory organization would not result in the assumption by it of any obligation or liability to customers, other creditors, shareholders or partners of the debtor.

Section 5(a)(3). This subsection codifies existing Commission rules [See 17 C.F.R. §§ 240.15b5-1; 240.15b6-1]

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

under which potential subjects of a SIPC liquidation proceeding include only those persons who are members of SIPC or who have been members within the past 180 days. The subsection also makes clear that SIPC is not obliged to act where customer interests of the type protected by SIPC are not involved.

Section 5(b)(1). This subsection consolidates present subsections 5(b)(1)(A) and (B) of SIPA and is intended to eliminate possible ambiguity as to the action required of a court when presented with a SIPC application for a decree setting in motion the customer protection and liquidation procedures. The substance of existing subsection (B) is unchanged except that an application consented to by the debtor will be granted immediately.

Section 5(b)(2). This subsection, dealing with the court's jurisdiction, makes no substantive changes, but refines the relationship between SIPA and the Bankruptcy Act. The revisions limit the connection to those provisions of the Bankruptcy Act relating to ordinary bankruptcy, except those relating exclusively to stockbrokerage liquidations. SIPA's general incorporation of chapter X of the Bankruptcy Act is eliminated in favor of a specific incorporation of certain chapter X provisions considered desirable in a stockbroker liquidation proceeding. The pattern is continued throughout the bill.

The drafting of these revisions has been complicated by the expectation that the Bankruptcy Act may be substantially amended in the near future. Accordingly, the term "Bankruptcy Act" is defined (in subsection 16(1) of SIPA as amended) to mean the provisions of the Bankruptcy Act and bankruptcy rules relating to ordinary bankruptcy. The specific chapters of the Bankruptcy Act involved are referred to only parenthetically for purposes of clarification with a view to the possibility that equivalent provisions in an amended Bankruptcy Act will be numbered differently. The bill retains the jurisdictional provisions of SIPA (the language of which was drawn from chapter X of the Bankruptcy Act) and adds thereto language designed to codify case law precedents developed under chapter X. This is done to make clear that the elimination of the wholesale incorporation of chapter X provisions is not in any way intended to limit the jurisdiction of a court under SIPA.

Section 5(b)(2)(A)(i) of SIPA as amended would give the court authority to protect property located outside the territorial limits of the court but within the actual or constructive possession of the debtor. See, e.g., *Continental Illinois National Bank & Trust Co.* v. *Chicago Rock Island & Pacific Ry* ., 294 U.S. 648 (1935). This protection is unavailable in ordinary bankruptcy. Section 5(b)(2)(A)(i) of SIPA as amended would also incorporate the chapter X rule giving a court jurisdiction over property in the possession of a secured creditor who asserts a right to retain the property as security but who does not challenge the debtor's title. See, e.g., *6 Collier on Bankruptcy* , P3.05 (14th ed. 1976): *Continental Illinois National Bank & Trust Co* ., supra; *In re Prudence Bonds* . 77 F.2d 328 (2d Cir. 1935). The bill also incorporates various chapter X provisions relating to stays.

Section 5(b)(3). Amendments to this subsection would fortify SIPC's sole discretion to designate the trustee and his counsel, would make clear that the trustee and his counsel may be associated with the same law firm, and would authorize SIPC to designate itself or one of its employees as trustee when SIPC determines that the liabilities to unsecured general creditors and to subordinated lenders appear to aggregate less than $ 750,000, and where there appears to be fewer than 500 customers.

Section 5(b)(4). Authority for the existing practice of referring all or part of a liquidation proceeding to a referee in bankruptcy, thereby in many cases expediting liquidation proceedings, is clarified. See e.g., *Exchange National Bank* v. *Wyatt* , 517 F.2d 453 (2d Cir. 1975).

Section 5(b)(5). Under this subsection SIPC would be required to file a recommendation with respect to applications for compensation by trustees, their attorneys, and other persons. The recommendation would be binding on the court in "no-asset" cases unless it results in a controversy with the applicant. Cf., *SIPC* v. *Charisma Securities Corp* ., 506 F. 2d 1191 (2d Cir. 1974). In other cases, SIPC's recommendations would be entitled to great weight and would be followed unless inadequate or excessive as a matter of law. Compensation to trustees and their attorneys would be based on the services rendered and costs incurred rather than on the amount of assets marshaled.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Compensation on an interim basis is expressly provided for, as is compensation to referees in bankruptcy or special masters to whom proceedings have been referred.

Section 5(b)(6).  Since chapter X of the Bankruptcy Act would no longer be generally incorporated under the bill, this subsection expressly sets forth the essential provisions of sections 157, 158 and 161 of chapter X relating to disinterestedness of trustee and counsel.  Under this subsection, SIPC would be deemed disinterested in all instances and a SIPC employee would be deemed disinterested except to the extent his interest arises from a source other than his association with SIPC.

Section 5(d).  Under this subsection, whose language is drawn from section 208 of chapter X of the Bankruptcy Act, SIPC's right to participate fully in any matter arising in a liquidation proceeding, whether that matter is deemed a proceeding in bankruptcy or a controversy arising in a proceeding in bankruptcy, is confirmed.  Cf., *SEC*  v. *Krensman* , 397 F. 2d 55 (5th Cir. 1968).  This right, including the right of appeal, is essential for SIPC to carry out its proper functions as the entity charged with the administration of SIPA, as an advisor to the court, as the party initating a liquidation proceeding, and as the party which, to a large extent, is responsible for overseeing the funds available for use in a liquidation proceeding.

Section 6(a).  Changes in terminology have been made in this section to reflect substantive changes in the concepts of "specifically identifiable property" and "single and separate fund" which under the bill would be termed "customer name securities" and "customer property," respectively.  A new statement of purpose is added - that of selling or transferring offices and other productive units of the debtor's business.

Section 6(b).  The bill would eliminate the wholesale incorporation of chapter X of the Bankruptcy Act.  Except for incorporation of specific chapter X sections, liquidation proceedings under SIPA subject to those Bankruptcy Act provisions relating to ordinary bankruptcy, except those provisions related solely to stockbrokerage liquidations for which SIPA itself is a substitute.

SIPA's definition of the term "property" is deleted as no longer being useful since the substantive provisions of the bill make clear whether they apply to cash or securities or both.  The term "security" would be defined by section 15 of the bill (section 16(14) of SIPA as amended) and the somewhat confusing reference to "property of a similar character" has been deleted.

Section 6(c).  The bill would codify the present SIPC practice of providing protection to customers who, in good faith, enter into transactions with the debtor after the filing date but before the appointment of a trustee.

Section 6(e).  Under SIPA all costs and expenses of the administration of the debtor's estate are paid to the trustee (including reimbursement of any money advanced by SIPC) in priority to all other claims.  The amendments reflect a significant departure from current law by providing that these costs and expenses shall be paid from the general estate after all customer net equity claims have been satisfied.  The priorities of distribution from the general estate are to be governed by the Bankruptcy Act.  The bill makes clear that certain advances by SIPC will be deemed costs and expenses of administration.  SIPC is entitled to reimbursement from the general estate for advances made to broker-dealers for losses suffered in closing out contracts, and for discretionary advances made to pay or guarantee the indebtedness of the debtor to any bank, lender or other person.  SIPC is entitled to reimbursement for these latter advances only to the extent that they are made to recover securities which are apportioned to the general estate under section 8(d).

Section 7(a).  The bill here specifies the powers vested in a trustee.  They are the powers of a trustee under the Bankruptcy Act together with certain specifically granted powers which may be exercised only with SIPC approval.  The use of SIPC employees to aid the trustees in carrying out a liquidation proceeding is specifically authorized.  The trustee is further authorized to margin and maintain customer accounts so as to facilitate any possible transfer of accounts to other broker-dealers.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Section 7(b).  The bill charges the trustee with the duties of a trustee under the Bankruptcy Act, plus special duties relating to the satisfaction of customer claims for securities by the distribution of securities to the maximum extent possible.

Section 7(c).  The bill incorporates the reporting requirements of bankruptcy rule 218 and adds other special requirements.

Section 7(d).  The bill incorporates the investigatory and reporting requirements of section 167 of chapter X, which is broader than the comparable provision relating to ordinary bankruptcy.  Investigation of the causes of a brokerage firm's failure may be quite helpful in marshaling assets for the estate.

Section 8(a).The bill would make the trustee's duty to give notice of his appointment to customers applicable only to those customers who appear to have had an open account with the debtor within the year preceding the filing data.  Notice to creditors other than customers will, under the bill, be the same as under the Bankruptcy Act though given by the trustee rather than by the court.

The bill would require customers to file some written statement of claim promptly, reflecting the need for early certainty in regard to the allocation of customer property.

Claims of customers and other creditors must actually be received by the trustee within a six-month period from the date of publication of notice.  The trustee would be authorized to satisfy claims filed more than the time established by the court, not to exceed 60 days but less than dix months after the date of publication of notice in the most economical way, thereby protecting SIPC against speculation by customers who might withhold their claims for a period of time to see if a change in the market might give them a more valuable distribution.  Claims filed more than six months after publication would be barred except for certain claims by a government authority, an infant or an incompetent.  In anticipation of the possibility that first meetings of creditors may be eliminated when the Bankruptcy Act is revised, the period runs from the date of publication of notice rather than from the date set for the first meeting of creditors.

Section 8(b).  This section reflects one of the essential features of the amendments, namely the delivery of securities to customers to the greatest extent practicable in order to make customer accounts whole.  The section provides generally that a trustee shall seek to discharge promptly all obligations of the debtor relating to cash or securities to the extent the obligations may be established from the debtor's books.  In addition to authorizing the trustee to use SIPC funds to satisfy claims, this section authorizes a trustee to deliver securities in satisfaction of claims to the extent they are available.  After the available securities have been distributed to satisfy such claims, the trustee shall purchase the balance of the shares in open market purchase.  However, where there is no "fair and orderly market" in which to purchase securities, the trustee is provided with authority to satisfy claims for securities with cash.  Securities distributed to customers are to be valued as of the filing date.

Section 8(c).  This section establishes the priority in which customer property shall be allocated.

First, SIPC is entitled to reimbursement for discretionary advances made to recover securities through payment or guarantee of any indebtedness of the debtor to a bank, lender, or other person, to the extent that the securities are apportioned to customer property under section 6(d).  The recovery of securities given by the debtor to others as collateral for loans is an important means of facilitating the delivery of securities to customers.

Second, remaining customer property would be allocated ratably among customers in satisfaction of their respective net equity claims.  To the extent that a customer's net equity claim is unsatisfied by customer property, the customer is entitled to an advance of funds from SIPC up to the amount permitted by the bill.

Third, SIPC shall then be reimbursed as subrogee for the claims of customers which it has satisfied with its own funds.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Finally, SIPC shall be reimbursed for any advances it has made to guarantee or secure any indemnity pursuant to section 9(c)(2).

Any customer property remaining after the satisfaction of claims by customers and SIPC becomes part of the general estate.  A customer may file a claim against the general estate to the extent that his net equity exceeds his share of customer property plus SIPC protection.

Under subsection 8(c)(2) the trustee is directed to deliver customer name securities to customers if they are not indebted to the debtor. If a customer has any outstanding indebtedness, he may pay the trustee, and with the trustee's approval reclaim customer name securities.  If a customer does not liquidate any existing indebtedness, the trustee shall net the customer's account and pay to the customer his net equity on the filing date.

The bill would preserve the substance of SIPA subsection 6(c)(2)(D) which describes transactions deemed to be voidable under SIPA.  Such transactions include those void or violable under the Bankruptcy Act and those which have the effect of granting preferential treatment to individual customers.

Section 8(d).  One of the central features of the bill is this subsection's grant of authority to the trustee to purchase securities in the open market or otherwise obtain them for the purpose of restoring customer accounts to their filing date positions.  A key objective of the bill is the satisfaction of a customer's claim for securities by the delivery of securities to the greatest extent possible.  SIPC funds may be made available to the trustee to purchase securities to replace that part of a customer's deficiency in securities whose valud on the filing date did not exceed the limits of SIPC protection provided in subsection 9(a) of SIPA as amended.

Section 8(e).  This section describes the procedure to be followed for the closing out or the completion of contracts with other broker-dealers left open by the insolvency of the debtor.  Although the Commission may issue rules concerning the completion or the closing out of contracts, currently SIPC lacks such authority.  This bill would amend SIPA by providing that contracts shall be completed or closed out by the trustee pursuant to SIPC rule.  Until such rules with respect to trustee competition or close out the adopted, the other broker-dealer shall close out the contract in the best available market pursuant to SIPC rules.  Until SIPC adopts rules relating to closeouts by the other broker-dealer, those broker-dealers shall close them out in accordance with Commission Rule S6(d)-1.  That rule and the Commission's power to amend it from time shall be preserved by this statute until such time as SIPC adopts its own rules.

The broker or dealer will be entitled to SIPC protection up to $ 40,000 for losses sustained for each of his customers if he was in fact acting for a customer as defined in subsection 8(e)(4) of SIPA as amended.  Any loss suffered by the broker or dealer who was not acting for a customer will constitute a claim against the general estate and not be payable from SIPC advances.  Persons with contracts not wholly executory shall have a claim against the general estate for any losses.

The provisions allowing the payment of close-out losses will apply neither to a registered clearing agency that has its own rules on close-outs for its members, nor to participants in such an agency, to the extent their claims may be processed within the clearing agency, unless SIPC provides otherwise by rule.  Clearing agencies which suffer losses have claims against the general estate only, and may not be paid from SIPC funds.  SIPC's rulemaking authority in this regard is subject to certain limits set forth in subsection (e)(3).  It is recognized that the creation of a national clearance and settlement system is certain to cause changes in the operation of registered clearing agencies.  Therefore, in exercising its rulemaking authority under this section.  SIPC shall consult and cooperate with the Commission in carrying out the congressional directive in section 17A of the 1934 act to create a national clearance and settlement system.

Section 8(f).  The bill would give the trustee the right, subject to SIPC's prior approval, to transfer a customer's account in whole or in part to another broker or dealer without the consent of the customer.  The benefits to customers

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

and the savings to SIPC which may result from such transfers make it appropriate that SIPC funds be available to facilitate such transfers.

Section 9(a).  The bill would affect the limits of SIPC advances in three important respects.  First, the bill would increase to $ 100,000 the total amount which SIPC shall advance to a trustee to satisfy a customer's claim.Of this amount, up to $ 40,000 may be advanced to satisfy a customer's claim for cash.  Second, the bill would continue to apply these limits to the shortage remaining after the allocation of customer property rather than to the net value of a customer's account.  This makes the benefit of SIPC advances additional to whatever bankruptcy-type remedy the customer may have had.  Finally, the bill makes clear that the dollar limits apply to the filing date value of the securities in respect of which the SIPC advance is made, rather than to the cash advance itself.

The bill also makes clear which persons are excluded from the definition of "customer" for the purpose of satisfaction of claims.  First, any person who is a general partner, officer or director of the debtor, beneficial owner of five percent or more of any equity security of the debtor, a limited partner with a participation of 5 percent or more in the net assets or net profits of the debtor, or who has control over the debtor's management or policies in ineligible.  Second, any customer who is a broker, dealer or bank shall not qualify for a SIPC advance in satisfaction of a claim, unless it is established that the claim was made on behalf of a customer of such broker, dealer or bank, in which case each such customer shall be considered a separate customer of the debtor.  However, such customers cannot themselves be a broker or dealer or bank or person described in subsection 9(a)(4).

Section 9(b).  The bill requires SIPC to advance to the necessary funds where the debtor's estate is insufficient to pay losses on closed-out contracts and expenses of administration.

Section 9(c). The bill allows SIPC to make advances to aid the trustee in reclaiming pledged securities, in transferring accounts, and purchasing securities in a fair and orderly market.

Section 10.  SIPC is authorized, in appropiate circumstances, to make payments directly to customers without initiating judicial proceedings.  This direct payment procedure would be used only where the SIPC member's registration as a broker/dealer has been terminated or where the member has consented to the use of such procedure.

Section 10(a).  The bill provides guidelines for use by SIPC in determining whether to use a direct payment procedure.  In order to use such a procedure SIPC must determine, as best it can under the circumstances, (1) that no customer claim exceeds the limits of protection set forth in section 9(a) of SIPA as amended, (2) that customer claims aggregate less than $ 250,000, and (3) that use of the procedure will be less expensive than a judicially supervised liquidation proceeding.  SIPC's decision that a direct payment procedure should be utilized is not a pourely mechanical one based on the existence of the enumerated conditions.  Rather, SIPC must bring its experience to bear on the determination, which iswholly within its discretion.

Sections 10(b)-(g). - The direct payment procedure will provide the customer with basically the same protections he would be entitled to in a liquidation proceeding.  SIPC will give notice to customers by publication and by mail.  Customers must file claims within 6 months in order to be paid.  Satisfaction of customer claims will be accomplished in a manner similar to that utilized by a trustee in a liquidation proceeding.  The right of a claimant to an adjudication of a disputed claim is preserved, with the bill giving the Federal district court original and exclusive jurisdiction of controversies arising in the direct payment procedure.  SIPC may discontinue the direct payment procedure at any time it appears to SIPC that utilization of the procedure should be discontinued.  SIPC may thereafter initiate a liquidation proceeding, but prior payments or denials of claims in the direct payment procedure will be binding in subsequent proceedings.  The fact that SIPC may have initiated or carried out a direct payment procedure does not prejudice a person's right to pursue any other remedy he may have had against the member, except to the extent that his claim has been satisfied by SIPC.  The bill makes clear that the use of the term "trustee" in other applicable sections of SIPA as amended, when being read in conjunction with the provisions dealing with a direct payment procedure, is to be deemed a reference to SIPC. SIPC is the "trustee" for purposes of satisfying the claims or customers.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*Section 10 - Commission Functions*

This section of the bill makes conforming changes only.

*Section 11 - Examining Authority Functions*

This section of the bill makes conforming changes only.

*Section 12 - Functions of Self-Regulatory Organizations*

For the sake of efficiency, the bill gives SIPC a certain amount of flexibility in the designation of self-regulatory organization to collect assessments from SIPC members who are members of or participants in such self-regulatory organizations.

In order to encourage self-regulatory organizations to take prompt action to assist members is financial difficulty they are granted immunity from liability for good faith acts or omissions in connection with such action.

The bill provides that, if the only self-regulatory organization is a registered clearing agency, then the Commission may designate itself as responsible for the examination of the member.

The bill deletes from section 9(f) of SIPA certain Commission powers now granted to the Commission under the Securities Exchange Act of 1934.

*Section 13 - Prohibited Acts*

Drawing on concepts developed in connection with bankruptcy proceedings (see, 18 U.S.C. § 152) the bill makes it a criminal offense to defraud or to attempt to defraud any person and makes criminal under SIPA any act which would be criminal if taken in relation to a bankruptcy proceeding.

*Section 14 - Liability. Advertising, and Other Miscellaneous Provisions*

Under SIPA both SIPC and its directors are immune from liability for actions taken or omitted in good faith. Because of the probability of SIPC employees acting as trustees in liquidation proceedings, and for other reasons, the bill also provides immunity for SIPC's officers and employees.

The bill clarifies SIPC's power to require its members to publicize their SIPC membership in their advertisements and at their places of business. Under the current act, advertisement by SIPC members of SIPC protection is voluntary. The amendments would depart from current law by authorizing SIPC to adopt rules which would make mandatory the advertising of SIPC membership by all SIPC members. The committee has taken this position after reconsideration of the issue pursuant to the debate over the continued exemption of mutual funds and the insurance industry from SIPC membership. Because persons who engage exclusively in the sale of mutual fund shares or variable annuities continue to be exempt from SIPC membership, their customers remain ineligible for SIPC protection. The committee decided that some form of notice concerning a broker-dealer's membership in SIPC was the only means of adequately notifying the public of the existence of SIPC protection. The committee recognized that membership in SIPC can be an influential factor in an investor's decision to do business with a particular broker-dealer. This amendment is also designed to increase investor confidence in the securities markets by bringing about additional public awareness of SIPC.

The committee intends that. under the authority which would be conferred by this amendment, SIPC would not impose an unreasonable burden upon its members. This section is designed to permit SIPC, in its discretion, to require its members to display in a reasonable fashion only the bare minimum notice necessary of their membership in SIPC.

*Section 15 - Definitions*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

The term "Bankruptcy Act" is defined so that simple references to it at various places throughout SIPA as amended have the effect of incorporating the currently effective provisions relating to ordinary bankruptcy. Wholesale reference to chapter X of the Bankruptcy Act is inappropriate, since the aim of a SIPA proceeding is the liquidation of a member rather than its reorganization. The definition of the term "customer" is modified slightly. The amendments would continue to exclude from the definition of "customer" persons who have entered into subordinated lending agreements with the debtor. Under the terms of these agreements, individuals often receive direct consideration or have an expectation of receiving other remuneration in return for lending their capital to a broker-dealer.

The committee wishes to make clear that this provision does not affect the right of a subordinated lender to attempt to rescind his lending agreement, but rather denies to persons who rescind such agreements the status of "customer" for purposes of participation in a SIPC liquidation. In the event that such persons are successful in the rescission of their agreement through a judicial proceeding, they retain their right to participate as creditors in the distribution of the debtor's general estate.

The committee also believes the problems relative to subordinated lenders could be ameliorated through a requirement that all subordination agreements contain clear language which advises customers that, by becoming subordinated lenders, they are giving up all rights to SIPC protection. The committee recommends that the Commission consider whether the disclosures currently made in subordinated lending agreements are adequate to insure the protection of the investing public.

The committee intends, by its modifications of SIPA, that persons who lend securities to broker-dealers and who receive either collateral or consideration for their loans should not benefit from SIPC protection. On the other hand, persons who receive neither collateral nor consideration for loans of securities made to the debtor should continue to qualify for SIPC protection.

The bill defines the term "customer name securities" as those securities which are registered in the names of customers or are in the process of being so registered on the filing date. It treats those securities not as part of the debtor's estate but as property of the individual customers, which is being held by the debtor. Such securities will be returned to those individual customers. Except to this limited extent, the concept of "specifically identifiable property" is eliminated. SIPA's definition of "cash customer," closely related to the discarded concept of specifically identifiable property," is deleted as being no longer useful.

The bill provides for "customer property" to replace what is now termed the "single and separate fund." The bill provides that all cash and securities, exclusive of SIPC advances and customer name securities, which are available to the trustee for the satisfaction of customer claims shall be deemed to be customer property. Included in this category is property made available through the use of realization of debit cash balances in customers' accounts and, as determined by the Commission, other customer-related debit items. Also included is property which would have been set aside or held for the benefit of customers had the debtor complied with applicable provisions of law.

The bill makes conforming changes in the definitions of "debtor", "examining authority", and "filing date".

The bill also defines the term "foreign subsidiary" as meaning (1) any subsidiary of a member of SIPC which has its principal place of business in a foreign country, or (2) any subsidiary of a member which is organized under the laws of a foreign country.

The bill modifies the definition of "gross revenues" by including in gross revenues a certain percentage of commissions from transactions in money market instruments.

Because SIPA lacks a clear definition of the term "securities," SIPC has resolved the ambiguity in a way which has resulted in the use of different definitions for the purposes of protection and assessment. As a result, SIPC has extended protection to persons who have claims relating to money market instruments without assessing commissions earned from those transactions. In light of past investor losses in these securities, the committee has determined that SIPC

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

should be able to assess revenues earned from money market instruments.  However, the committee recognizes that many of these transactions are generally conducted for the benefit of large institutions rather than individuals, and that the COD nature of these transactions typically poses little or no risk to customers.

The committee has adopted a comprehensive definition of the term securities which will, among other things, resolve the dual treatment of money market instruments.  In addition, the committee has decided to permit SIPC to assess only that perecntage of revenues which would reflect SIPC's loss experience in these securities for the preceding 5 years.

The bill modifies the definition of "net equity" in order to make clear that margin and cash customers are to be treated equally and that certain protections are available to persons entering into transactions in good faith after the filing date.  Certain conforming changes are also made.

The present SIPA defines "security" by reference to section 60e of the Bankruptcy Act.  That section, however, does not itself define the term.  The bill adds a new definition of "security" patterned after the definition contained in the Securities Exchange Act of 1934.  That definition is not followed exactly, however, since the purposes of the 1934 act and SIPA are different.

Commodity contracts and options relating thereto are excluded, as are investment contracts, profit sharing plans, and an interest or participation in oil and gas leases which are not issued in a distribution pursuant to a registration statement filed with the Commission under the provisions of the Securities Act of 1933.

*Section 16 - Amendment to the Securities Exchange Act of 1934*

The bill amends the 1934 act by adding thereto a definition of the term "financial responsibility rules." By reason of section 2 of SIPA as amended, that definition will be applicable to SIPA as amended.

*Section 17 - Table of Contents*

The bill makes conforming changes in SIPA's table of contents.

COMMITTEE CONSIDERATION

The committee's consideration of amendments to the Securities Investor Protection Act commenced during the 94th Congress.  The original legislative proposal, H.R. 8064, represented an implementation of a majority of the recommendations of a SIPC task force which had been formed to suggest improvement in the act.  On October 20, 21, 22, 1975, the Subcommittee on Conssumer Protection and Finance held hearings on H.R. 8064.  Testimony was presented by SIPC, the Securities and Exchange Commission, the New York Stock Exchange, the National Association of Securities Dealers, Securities Industry Association, and the life insurance and investment company industries.

During the 95th Congress, Congressman Eckhardt introduced H.R. 8331 on July 14, 1977.  The subcommittee held 3 successive days of hearings on the bill, commencing August 1, 1977.  Testimony was heard from the Securities Investor Protection Corporation, the Securities and Exchange Commission, industry associations and representatives of broker-dealers who would be affected by the bill.

A subcommittee markup was held on September 7, 1977.  The subcommittee approved the bill unanimously, a quorum being present.

The full committee considered the bill on September 27, 1977, and approved the measure by a unanimous voice vote, a quorum being present.  There was no roll call vote.

OVERSIGHT FINDINGS AND RECOMMENDATIONS

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

No findings or recommendations on oversight activity pursuant to clause 2(1)(3)(A) of Rule XI of the House of Representatives have been received from the committee.

OVERSIGHT FINDINGS AND RECOMMENDATIONS OF THE COMMITTEE ON GOVERNMENT OPERATIONS

No findings or recommendations on oversight activity pursuant to clause 2(1)(3)(D) of Rule XI of the Rules of the House of Representatives have been submitted by the Committee on Government Operations for inclusion in this report.

INFLATIONARY IMPACT STATEMENT

Pursuant to rule XI, clause 2(1)(4) of the Rules of the House of Representatives, the committee makes the following statement regarding the inflationary impact of the bill:

The committee is unaware that any inflationary impact on the economy will result from the passage of H.R. 8331.

COST ESTIMATE

In accordance with clause 7(A) of Rule XIII of the Rules of the House of Representatives, the committee estimates there will be no additional cost to the Government on the enactment of H.R. 8331.

CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

The committee received the following communication from the Congressional Budget Office:

CONGRESSIONAL BUDGET OFFICE, U.S. CONGRESS,

*Washington, D.C., September 20, 1977* .

Hon. HARLEY O. STAGGERS,

*Chairman, Committee on Interstate and Foreign Commerce, U.S. House of Representatives, Washington, D.C* .

DEAR MR. CHAIRMAN: Pusuant to section 403 of the Congressional Budget Act of 1974, the Congressional Budget Office has reviewed H.R. 8331, the Securities Investor Protection Act Amendments of 1977, as ordered reported by the House Committee on Interstate and Foreign Commerce, September 27, 1977.

Based on this review, it appears that no additional cost to the government would be incurred as a result of enactment of this bill.

Sincerely,

ALICE M. RIVLIN, *Director* .

AGENCY REPORTS

STATEMENT BY HUGH F. OWENS, CHAIRMAN, SECURITIES INVESTOR PROTECTION CORPORATION

Mr. Chairman, and members of the Subcommittee, it is a pleasure for me to appear before you this morning and present the views of the Securities Investor Protection Corporation on H.R. 8331; the Securities Investor Protection Act amendments of 1977.  A very similar bill, H.R. 8064, was the subject of hearings before this Subcommittee in late 1975. The present bill incorporates many suggestions made by the Securities and Exchange Commission, SIPC, this Subcommittee's own staff, and others in regard to H.R. 8064.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

Before I review the many important improvements which H.R. 8331 would make in the Securities Investor Protection Act of 1976 (hereinafter referred to as the "1970 act"), perhaps it would be useful if I summarized briefly the activities of SIPC since its creation in December, 1970. As many of you will recall, SIPC had its origins in the difficult years of 1968-1970 when the paper crunch brought on by an unexpectedly high trading volume in securities was followed by the most severe decline in stock prices since the Great Depression. Hundreds of broker/dealers were merged, acquired or simply went out of business. There were some which were unable to meet their obligations to customers and went bankrupt. Public confidence in securities markets was in jeopardy.

In order to protect customers of failed broker/dealers against financial loss and, thereby, restore investor confidence in the securities markets, Congress passed the 1970 act. That statute, which was signed into law on December 30, 1970, created SIPC and established a program whereby monies from the SIPC Fund would be available for the purpose of protecting customers of broker/dealer firms which encountered financial difficulty. As the Act now stands, SIPC may advance a maximum of $ 50,000 to protect the claim of any one customer of a failed broker or dealer, but no more than $ 20,000 of that amount may be advanced to pay claims for cash as opposed to claims for securities. These payments supplement distributions of available securities and cash from the debtor's estate.

Since the enactment of the SIPC legislation, 123 of the over 8,700 broker/dealers which have been SIPC members over the past 6 1/2 years have been placed in liquidation proceedings. As of June 30, 1977, SIPC had made net advances to trustees totaling $ 53,411,014. In addition to these SIPC advances, significant amounts of securities and cash have been distributed to customers from assets which were acquired from the debtors' estates by the trustees at the time of their appointments. We estimate that to date securities and cash having a value of approximately $ 277 million have been distributed to approximately 105,000 customers in the course of liquidation proceedings under the 1970 act. I believe these figures demonstrate vividly the effect which the SIPC Program has had on investors throughout this country and point up the wisdom of Congress in establishing SIPC and the SIPC Program in 1970. It is especially noteworthy that this has been accomplished without any expenditure of federal funds. Rather, the program has been financed completely from industry funds raised through statutorily imposed assessments on SIPC members.

As of June 30, 1977, SIPC had received assessments from members of SIPC which totaled approximately § 181 million. In addition to those assessments, SIPC had received approximately § 24 million in interest income on its investments, giving SIPC total revenues of $ 205 million. SIBC's expenses from inception to this date totaled approximately $ 62 1/2 million. As noted above, $ 53.4 million of that total represents advances made to trustees in SIPC liquidations and the balance represents administrative expenses for SIPC operations to date. It may be noted that SIPC's administrative expenses for its internal operations have been approximately 37 percent of the interest income SIPC has earned on its investments. Currently, the SIPC Fund totals approximately $ 135 million.

I mentioned earlier that 123 members have been or are being liquidated under the provisions of the 1970 act. It is important to note the spread of those liquidations over the years of SIPC's operations.

| | |
|---|---|
| 1971 | 24 |
| 1972 | 40 |
| 1973 | 30 |
| 1974 | 15 |
| 1975 | 8 |
| 1976 | 4 |
| 1977 (6 months) | 2 |

We are pleased with the declining number of liquidations. While we recognize that there is no single cause for the decline, I am confident that one of the factors is the positive actions taken by the regulatory and self-regulatory authorities over the past years. These actions are manifested not only in strengthened rules and regulations regarding entry qualifications and operating standards, but also in improved surveillance and inspection programs. These

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

activities have had, and will continue to have, CIPC's full support and cooperation.

Despite all of the good which has been accomplished by the SIPC Program, there are serious limitations on SIPC's ability to satisfy customers' claims - limitations which were written into the act and which impair the restoration of investor confidence that the act was intended to achieve.  Many of these limitations were apparent when I was appointed Chairman of SIPC approximately 3 1/2 years ago, and at my confirmation hearings.  I pledged to move quickly to make recommendations for change.  One of my first official acts as Chairman of SIPC was to appoint a Task Force to review the 1970 act and its operations, with a view toward achieving better, faster, and more efficient methods of investor protection.  That Task Force was headed by SIPC's General Counsel and was composed of representatives of organizations having a substantial interest in the effective operations of the act. It conducted its study during the first half of 1974 and made its recommendations to the SIPC Board of Directors in July of that year.  Although the membership of the Task Force represented diverse views and organizations, it was able to arrive at a consensus on all subjects, except one.  Its recommendations represent an appropriate compromising and blending of views and positions in order to obtain the goal of all of us, namely, increased investor confidence through the existence of a viable and efficient SIPC Program.

The Task Force Report serves as the foundation for virtually all of the changes which the amendments being considered by you this morning would make in the 1970 act.  Accordingly, Mr. Chairman, I request that a copy of the Task Force's July 1974, Report [Report to the Board of Directors of the Securities Investor Protection Corporation of the Special Task Force to Consider Possible Amendments to the Securities Investor Protection Act of 1970] be included at this point in the record of these Hearings.

The Board of Directors of SIPC approved virtually all of the Task Force recommendations which were subsequently incorporated in H.R. 8064.  In addition to having the strong support of the Board of Directors of SIPC these proposals are generally supported by the Securities and Exchange Commission and the securities industry.

The proposed amendments carry out the Task Force recommendations and are designed to make the act more responsive to the reasonable expectations of investors.  Even though the overall purpose of the act is being met, that is to provide protection to customers of broker/dealers, some customers of failed members still believe that they are not receiving the protection they thought they were going to get and in the way they believe they should get it.  The proposed amendments will enhance investor confidence in our securities markets.

The difficulties are not so much with the administration of the 1970 act, as with some of the specific liquidation procedures and limitations set forth therein.  The trustees appointed by the Court are, for the most part, doing a good job, but they (and SIPC) are handicapped by some inflexibilities in the law.  In broad terms, there are three problems for which the present act does not provide adequate solutions.

The first is that customers generally expect to receive what is in their accounts when the members stops doing business.  If John Q. Investor has 100 fully-paid shares of IBM and a credit balance of $ 200 in his account, he expects to receive from the trustee a stock certificate for 100 shares of IBM and a check for $ 200.

But it many instances that has not always been possible because securities have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen.  When there are valid claims for more IBM stock than is on hand, under the present statute John Q. will receive only a pro rata portion of his 100 shares.  For the remainder of the shares due him, he will receive cash in lieu of stock based on the market price on the date the liquidation preceeding is initiated.  Naturally, if IBM stock goes up in price while John Q. is waiting to have his claim settled, he will be decidedly unhappy with the check he receives from the trustee.  On the other hand, if IBM declines in price, we may receive no complaints from John Q.  But even in that situation, customers can suffer certain disadvantages, for example, tax consequences of what is, in effect, a forced sale of their stock.

The second major problem with the act is that the prescribed liquidation procedures are slower than they need be.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

This works a hardship on customers because, while they are waiting to receive their property, they are unable to effect transactions in their accounts.  They stand at the risk of the market.  Then, too, the normal flow of dividends and other distributions is disrupted and, in certain instances, tax problems can arise.

Thirdly, the procedures are not only rigid and sometimes slow, they are expensive.  There have been some cases where the trustee's administration expenses have exceeded the amounts advanced to satisfy customer claims.  The framers of the act apparently had in mind the liquidation of large brokers such as Weis Securities, where there were 34,000 customer claims.  They did not contemplate that the bulk of SIPC cases would turn out to be considerably smaller firms.  Yet, under the present statute, whether a broker/dealer has 50 customers or 50,000, the same judicial procedures have to be followed.  Virtually everything a trustee does has to be sanctioned by the court.  Naturally, this is comparatively costly in a small liquidation proceeding.  To date, we have had liquidations with under 50 customer claims in 22 percent of our cases.

The proposed amendments are designed to meet these shortcomings in the law (as well as to make numerous other improvements in the 1970 act).  The amendments will, we believe, serve to maximize customer protection, add greater Flexibility and speed to existing procedures, and reduce administration expenses where possible.

As I mentioned earlier, under the present statute the amount of money which SIPC can advance to satisfy any one customer claim is limited to $ 50,000 with a maximum of $ 20,000 to satisfy a claim for cash.  One important provision in the proposals we sent to Congress in December, 1974 would raise these limits to $ 100,000, with a maximum of $ 40,000 to satisfy a claim for cash.  This corresponds to changes in 1974 in the FDIC, FSLIC and FCUIC legislation increasing the coverage for bank and savings deposits from $ 20,000 to $ 40,000.  Out of the 105,000 claims satisfied in all liquidations to date, there have been 163 customers in 39 liquidations with claims for cash and/or securities which were over the limits of SIPC protection.  That is about one-sixth of 1 percent of all claims received.  In terms of dollars, the amount of these claims which could not be satisfied came to approximately $ 3 million, representing approximately 1 percent of the value of all cash and securities distributed to customers.  Had these proposed higher limits of protection been in effect as to claims satisfied to date in liquidation proceedings, the monetary impact on SIPC would have been relatively small - the total additional cost would have been approximately $ 2 million and only 21 customers in 13 liquidations would not have had their entire claims satisfied.

Although H.R. 8331 incorporates our recommendation that the dollar limit of the advance which can be made by SIPC for the protection of a customer's account be increased to $ 100,000, we are disappointed to note that the corresponding increase in the limit of SIPC advances to satisfy claims for cash as opposed to securities was not included in H.R. 8331.  We strongly urge that the Bill be changed in this regard, and that our initial proposal for $ 40,000/$ 100,000 limits be reinstated.

The increase to $ 100,000 is, of course, very important to the overall objective of public confidence in our nation's securities markets.  We should not lose sight, however, of the importance of the proposed increase in cash protection to $ 40,000.  First, many customers have never been able to understand that their protection from SIPC is different if their claim is for cash as opposed to securities.  The distinction becomes especially dramatic when a customer who has had securities on deposit with his broker for many months (or years) sells those securities shortly before the filing date.  This converts his claim against the broker from a claim for securities to a claim for cash.  More important, perhaps, it converts the maximum advance he can get from the SIPC Fund from $ 100,000 to a much lower figure.  There is an inequity in that situation which is unfortunate, and it is severely aggravated if the maximum advance for cash claims is kept at the existing $ 20,000 instead of being raised to the recommended $ 40,000.

Second, it should be noted that the experience we have had to date would seem to indicate that the costs of this proposal can easily be handled by the SIPC Fund.  Of the 163 claims to date which have been over the existing limits of SIPC protection. 106 were claims for cash over the $ 20,000 limits.  The total dollar amount of the claims over the $ 20,000 limit was $ 1.2 million.  If the proposed $ 40,000 limit had been in effect for cash, 91 of those claimants would have been fully protected at an additional cost to the SIPC Fund of approximately $ 900,000.  We submit that that is a

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

sum which the industry. which is financing the SIPC Program, is willing and able to bear.

Finally, if our program is to achieve to the fullest the restoration of public confidence in our securities markets, there seems to be no compelling reason for failing to keep the limits of protection for cash of securities investors on a monetary par with protection to bank and savings depositors.

The proposed amendments call for changes in the act which would enable the trustee, to a much greater extent than is now possible, to render accounts to customers in the same form as they stood when the member went out of business. Under Section 8(d) n1 of the proposed amendments, the trustee would be authorized to go into the market and purchase securities to make up for those which are missing, so long as this could be done in a fair and orderly market. The trustee would also be empowered under Section 7(b) to pay, subject to SIPC approval, bank loans collateralized by securities, including margin securities, thereby reclaiming those securities for distribution to consumers. In appropriate cases, SIPC would be authorized to advance funds for this purpose. Margin customers would be permitted to pay their debit balances and receive the securities in their accounts. If these recommendations are implemented, the current practice of paying cash in lieu of missing securities would be eliminated for the most part. Customers would receive, instead, the securities in their accounts.

n1 All section references are to sections of the 1970 act as amended by H.R. 8331.

Our expectation is that, in almost all cases, a customer's claim for securities would be satisfied by the delivery of securities, and, where necessary, to accomplish this the trustee would go into the open market and purchase securities. We believe, however, that it is advisable to provide that the trustee would not be required to purchase securities where that could not be done in a fair and orderly market. One chief concern is that the trustee not be required to make purchase in a market which is being improperly controlled or manipulated. This may be of particular significance where the member being liquidated was a market maker. Under those circumstances, the trustee would decline to purchase the needed securities and would instead satisfy the claim by paying cash in lieu of the securities based on the market value of the securities on the filing date.

As I have already mentioned, one of the principal goals of the proposed legislation is to make it possible for the trustee to render accounts to customers as they stood when the member failed. One way to accomplish this in very rapid order is to empower the trustee to transfer accounts in bulk to another broker/dealer. Section 8(f) of the proposed amendments authorizes such a transfer, in whole or in part. thereby eliminating the delays in distributing property to customers which are inherent in any liquidation proceeding. Under the terms set forth in the proposed amendment, SIPC would guarantee that property availble to the trustee will be delivered and that shortages in customers' accounts will be made good. The customer would not, of course, be obligated to leave his account with the broker/dealer to whom it was so transferred.

In this connection, I should point out that such bulk transfers are not always feasible. First of all, the failed firm would have to have kept complete and accurate customer records and, unfortunately, records in too many SIPC liquidation proceedings have ranged from poor to virtually nonexistent. Second, the trustee has to be able to find another firm or firms willing to take on the accounts, which in many instances may not be possible. Third, SIPC would have to determine that the cost of a transfer in bulk would be no more than the cost of carrying out the liquidation in the usual fashion, that is account by account.

As I mentioned previously, administration expenses in liquidation proceedings can be disproportionately high, especially in the smaller cases. Fees paid to trustees and their counsel make up a substantial part of the expenses of administration of a liquidation proceeding. In order to cut down on such expenses and to provide experienced and competent trustees, Section 5(b)(3) of the proposed amendments gives SIPC discretion to specify itself or one of its employees as trustee where the failed firm's liabilities are less than $ 750,000 and there are fewer than 500 customers. Local counsel would still be retained. We believe that the use of SIPC personnel as trustees will not only help to

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

expedite the liquidation process, but will also result in substantial savings of administration expenses.  Some have questioned whether under the present statute SIPC may insist that a SIPC employee serve as trustee.  In a number of cases, we have sought such appointments, but in only five cases have the Courts involved been willing to make the appointments.  In those five cases, we have found a significant reduction in total administration expenses, and we believe the statute should be amended to authorize clearly such procedure.

Indeed, many of our cases have been so small (especially in terms of the number of customer claims filed), that we have come to the conclusion that the full judicial procedures are not essential in all liquidations.  Section 10 of the proposed amendments would implement what is termed a direct payment procedure.  Under that Section, SIPC is given discretion to make payments directly to customers without the necessity of a court-supervised liquidation proceeding, if certain conditions are met.  Once SIPC has determined to utilize the direct payment procedure, Section 10(c) of the proposed amendments requires that distributions of cash and securities to customers be made in a manner substantially similar to the manner in wich a trustee conducts a liquidation.  The direct payment procedure has the advances of speed of distributions, and a minimum of administration expenses (since there is no formal court proceeding) but without sacrificing the customers' rights to have court hearings as to disputes concerning their claims.  Naturally, it is not contemplated that the broker/dealer would be allowed to go back into business once SIPC had paid off the claims of its customers.  The procedure would be utilized only in cases where the failed broker/dealer's registration as a broker/dealer had been terminated by the SEC or where the broker/dealer intends to go out of business and consents to the use of the direct payment procedure.

While it is not possible to determine with precision the dollar amount that would be saved in administration costs by these two proposed amendments (i.e., direct payment procedures and SIPC as trustee), we at SIPC are confident that the savings would be significant.

Another area of change is in the completion of open contractual commitments with other broker/dealers.  The present Act's requirement for such completion in certain circumstances is eliminated under the proposed amendments as being unnecessary and cumbersome.  In the industry, the practice is for such contracts to be closed out by the other broker/dealer by either purchasing or selling the securities in the market.  A gain on a closeout is remitted to the trustee.  The loss suffered on such a close-out is charged to the debtor's estate and in SIPC liquidations to date, it has been the practice of trustees to "complete" open contractual commitments by paying close-out losses.  This practice has, in effect, been codified by Rule S6d-1, adopted by the Securities and Exchange Commission on July 25, 1973.

The effect of Section 8(e) of the proposed amendments is to continue what has been the practice in the industry and under the SEC Rule.  Where the closing broker/dealer was acting for his own customer, his loss would be paid by SIPC to a maximum of $ 40,000 n2 per customer account with respect to which the closing broker/dealer sustained a loss.  There is no present or proposed authority for the advance of SIPC funds to trustees for the protection of the closing broker/dealer who was acting for his own account, rather than for the account of his customer.

n2 At the present time, pursuant to SEC Rule, the limit of the SIPC advance for satisfaction of such claims is $ 20,000 (which compares to the limits of the SIPC advance for the protection of cash claims of a customer).  For that reason SIPC proposed this limit be increased when it proposed an increase to $ 40,000 for the limit of SIPC advances to protect customers' cash claims.  As noted above, we hope the Subcommittee will amend H.R. 8331 to reinstate SIPC's proposed increase for the protection of cash claims of customers.  If that is done, it would seem appropriate to keep the $ 40,000 limit in this section.

Other propoed changes have to do with the distributors of mutual funds and variable annuities and with foreign broker/dealers.  Firms dealing exclusively in the sale of mutual funds or variable annuities are not now required to be SIPC members.  Their exclusion is apparently based, at least in part, on the argument that since they are essentially sales organizations, not carrying customer accounts and generally not holding securities or funds, they present no risk to the SIPC Fund.  The proposed amendments call for the elimination of this exclusion from SIPC membership.  The

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

reason for this is, although those firms do not hold customers' securities or funds, they do handle them. Accordingly, the possibility of loss or misappropriation exists. In addition, the theory of inclusion in SIPC membership for many members has been that all who derive their livelihood from the securities industry should help to build the SIPC Fund which is used to support a program designed to maintain investor confidence in our nation's securities markets.For example, floor members and specialists of stock exchanges (who have no public customers) are requied to be members of SIPC.

A companion recommendation has to do with assessments. At the present time. SIPC members do not pay assessments on revenues from the distribution of mutual funds and variable annuities. To date, however, cash in lieu of missing mutual fund shares has been paid to 50 claimants in 8 different SIPC liquidations for a total of $ 190,656. In addition, in 3 of those liquidations, mutual fund shares having an aggregate value of $ 69,483 were distributed to 14 customer claimants. We believe that this experience establishes that (1) mutual fund transactions can give rise to claims in SIPC liquidations and (2) it is inequitable to be using SIPC funds to satisfy such claims if, at the same time. mutual fund transactions are not part of the assessment base for SIPC assessment purposes.

The SIPC Board of Directors recognizes that there is opposition to the inclusion of distributors of mutual funds and variable annuities in SIPC membership and to extending the assessment base to include revenues from the sale of these securities. With respect to variable annuities, we have not experienced losses to date. As noted above the same is not true with respect to mutual funds. We believe the public is entitled to protection in these transactions. Fairness, however, dictates that if the SIPC Fund is to be used to protect these transactions, they should be assessed. That is what we proposed three years ago, and we are pleased to see that H.R. 8331 incorporates that proposal.

If, however, those who oppose paying assessments based on revenues from these transactions prevail, we would suggest that again fairness requies that the program be amended to provide clearly that SIPC funds should not be used to satisfy claims based on these transactions.

To the best of our knowledge, no foreign broker/dealer which is a member of SIPC has ever failed to meet its obligations to customers within the meaning of the present act, and therefore SIPC has never had to attempt a liquidation of such a SIPC member. The question, however, of how SIPC would go about obtaining jurisdiction over a foreign broker/dealer and effectuating its liquidation under the 1970 act has arisen in connection with questions about assessments on the securities business of foreign members of SIPC. Because of such jurisdictional and practical difficulties, the proposed amendments exclude from SIPC membership those broker/dealers whose principal business, as determined by SIPC, is conducted outside the United States, at the same time empowering SIPC to adopt rules admitting such broker/dealers to membership upon such terms as SIPC shall require.

Another proposed modification to the 1970 act which has generated some opposition is the proposed change in SIPC's authority with repect to a member's advertisements relating to its SIPC membership. Under the present statute, SIPC prescribes the manner in which a SIPC member may advertise the fact of its membership in SIPC. A few years ago, at the urging of the Securities Industry Association, SIPC re-examined its existing bylaws which permitted advertising of the fact of SIPC membership and proposed a bylaw which would have required SIPC members to identify themselves as members of SIPC. The Securities and Exchange Commission disapproved the proposed bylaw apparently on the basis that, in the Commission's opinion, SIPC did not have authority to require members of SIPC to identify such membership.

H.R. 8331 would clarify SIPC's authority in this regard. We strongly support such clarification. One of the principal purposes of our program is public confidence in the securities markets. An important step towards reaching that goal is greater public awareness of the SIPC program. Based upon six years experience and observation we do not believe that investor knowledge of the protections afforded him even approaches the extent that it should. We would urge, therefore, that mandatory identification of SIPC membership is a reasonable means of increasing public awareness of the SIPC program. The proposed SIPC bylaw was drafted carefully to minimize the impact which the requiement would have had on SIPC members, and any future action in this area will be carefully considered with that in mind.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

This desirable result can be achieved without imposing any great burden, financial or otherwise, on SIPC members, and we believe it is important that SIPC's authority in this area be made clear.

Another important portion of the proposed amendments deals with rulemaking power.  SIPC's experience in liquidations to date makes it clear that many problems arise which are, understandably, not the subject of statutory determination.  Additionally, it has become obvious that problems will continue to arise which could not have been foreseen at the time of legislative action.  Therefore, proposed Section 3(b)(4) gives SIPC substantive rulemaking power, including power to make rules defining terms in the act and relating to liquidation proceedings and direct payment procedures.  Section 3(e) sets forth procedures for adoption of such rules and approval thereof by the Securities and Exchange Commission in such a manner as to give them the force and effect of law.

The proposed amendments also contain a definition of the term "Securities".  As the statute now reads, that term has the same meaning as it has under Section 60e of the Bankruptcy Act.  The Bankruptcy Act, however, contains no applicable definition of the term "securities".  In liquidation proceedings to date, questions concerning the parameters of the term have arisen from time to time.  Accordingly, a definition of this term is set forth in proposed Section 16(14). The starting point for this definition is the definition in the Securities Exchange Act of 1934.  Recognizing, however, that the term is defined there for enforcement and regulatory purposes, and that a definition tailored to the purposes of the 1970 act is necessary, some modifications have been made.  For example, the proposed definition excludes investment contracts and oil and gas interests which are not registered with the Commission under the Securities Act of 1933 since we have concluded that, while it is important to have them included in a definition for enforcement purposes, they are not the types of investments which should be protected by SIPC.  On the other hand, we have added certificates of deposit and short-term instruments to the definition since we believe such interests should be included within the protections of the act.

One final aspect of the proposed amendments requries comment.  Under the present statute, persons who make loans to a stockbroker on a subordinted basis are, to the extent of those loans, specifically excluded from the customer protection provisions.  In the Weis Securities proceeding in New York, persons who loaned millions of dollars to Weis on a subordinated basis are presently trying to rescind their subordination agreements on the ground that the agreements were fraudulently induced.  These rescission attempts are currently the subject of litigation in the federal courts.  One group of subordinated lenders, represented by Charles H. Morin, Esq., seeks not only to rescind the subordination agreements in question but also to be treated as customers of Weis entitled to all of the protections of the statute including advances from SIPC.  The trustee for Weis Securities and SIPC, with the support of the New York stock Exchange and the Securities and Exchange Commission, have resisted these attempts to rescind and to date have been successful.  In the case of *In re Weis Securities Inc* ., 425 F. Supp. 212 (S.D.N.Y. 1977), Judge Inzer B. Wyatt of the United States District Court for the Southern District of New York held that, even assuming that the subordintion agreements were obtained by fraud (a proposition which has yet to be proven) considerations of public policy require that the subordinated lenders not be allowed to rescind.  that decision is presently on appeal to the United States Court of Appeals for the Second Circuit.

Because of this litigation, and even though SIPC fully expects that its position will be upheld by the Second Circuit, we propose that the definition of customer be modified to make clear beyond peradventure that subordinated lenders cannot be treated as customers even if they might have some ground for voiding the subordination agreement in a suit against the debtor.

The importance of subordiated capital to the securities industry cannot be over-emphasized.  Subordination agreements enable stockbrokers to comply with net capital rules and therefore to continue to deal with the public.  The use of subordintion agreements to increase a broker's net capital can, as happened with Weis, result in that firm's being allowed to continue in business well beyond the time when it might otherwise have had to curtail its business for failure to comply with the applicable net capital rule.  the agreements are explicitly relied upon by the SEC and the self-regulatory organizations in determining whether or not a brokerage firm should be allowed to continue to do business.  Reliance by customers and other creditors upon the existence and continued enforcement of subordination

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

agreements is implicit and obvious.  To allow rescission of subordination agreements which were instrumental in enabling a brokerage firm to continue to amass obligations to its customers, and then to allow the rescinding subordinated lenders to share pari passu with such customers, is contrary to the purposes of permitting the subordinated liabilities to be counted as part of the firm's capital.  Indeed, it seems contrary to the purposes of net capital rules themselves, as well as to the desire of Congress, as expressed through the 1970 act, to enhance investor confidence in the securities markets.

In past hearings Mr. Morin has expressed the belief that the proposed amendment is "a shocking and unconscionable denial of a fundamental common law right * * *." Obviously there is no common law right to the very special preferential treatment afforded to customers by the 1970 act.  This, after all, is the only thing with which the proposed amendment deals.  It provides that subordinated lenders cannot share with customers in the single and separate fund or receive protection from SIPC's funds.

In conclusion, let me emphasize again the strong support the Board of Directors of SIPC gives to these proposed amendments and our hope that they will be enacted at the earliest practicable time.  We believe this is advisable from the standpoint of the public's interest generally in our nation's securities markets and particularly in the protections afforded to customers by the SIPC Program.

WRITTEN COMMENTS OF THE SECURITIES AND EXCHANGE COMMISSION

The Securities and Exchange Commission wholeheartedly supports H.R. 8331, a bill to amend the Securities Investor Protection Act of 1970 (the "SIPC Act").  The steps taken to increase the scope of customer protection and to limit the time required to satisfy customer claims are clearly in the public interest.  We have certain comments on the bill, however.

SUBSTANTIVE COMMENTS ON H.R. 8331 n1

n1 References to the pages of H.R. 8331 are denoted by "H" and the page number.

1.  In amending section 3(c)(2)(C)(ii) (H-4) regarding the appointment of SIPC directors, the disqualification of persons associated with any "other securities industry group" from serving as public directors of SIPC was deleted.  In addition, it may be useful to modify the provision slightly to reflect the fact that registered clearing agencies are now self-regulatory organizations.  There is also a technical error in the manner in which Section 3(a)(21) of the Securities Exchange Act was carried over.  Finally, the proposed amendment combined with the existing language refers to "persons who are persons associated" etc.; the repeat is unnecessary.  Accordingly, we suggest the following changes: (i) In lines 5 and 6, delete "persons." (ii) In line 6, add "member of a" before "national." (iii) In line 8, after "Act" add "or similarly associated with any self-regulatory organization or other securities industry group,".

2.  Proposed section 3(e)(2) (H-5) provides a rulemaking procedure for SIPC.  While the Commission is generally satisfied with the proposed procedure, we have several technical comments principally designed to make the procedure parallel to section 19(b) of the Securities Exchange Act.

(i) Proposed subparagraph (E) (H-8) sets forth the situations in which a proposed rule change may take effect summarily.  Under subparagraph (ii), there may be instances when an emergency rule proposal becomes effective before it is filed with the Commission.  In order to clarify that such a rule change, though already in effect, must be filed and reviewed under section 3(c)(2), we recommend the following sentence be added to subparagraph (ii) (H-8, at line 19):

Any proposed rule change that takes effect under this subparagraph shall be filed promptly thereafter and reviewed in accordance with the provisions of Section 3(e)(2)(A).

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(ii) Subparagraph (E) also provides that the Commission may abrogate any rule change that becomes effective pursuant to the summary procedure within a 60-day period that would run from the effective date of the rule change. Because the effective date is not necessarily the date of filing and may in fact be prior to the date of filing, we suggest that the deadline be calculated from the date the rule change is field as is done in section 19(b)(3)(C) of the Securities Exchange Act.

(iii) Finally, the abrogation procedure provides that the Commission may require the abrogated rule change to the refiled. This provision should be amended to clarify that the refiled rule change would also be subject to review in accordance with the usual procedures of section 3(e)(2). This can be accomplished by inserting the words "and reviewed" after "refiled" in line 24 of H-8.

3. The proposed amendment to section 4(e)(1) is intended to apply the prior trust provision to registered clearning agencies (H-11). The proposal is inapposite because clearing agencies were not self-regulatory organizations prior to 1970.

4. Section 4(g), which involves SEC loans to SIPC, as amended by H.R. 8331 (H-12), provides that any transaction fees imposed upon purchasers of equity securities are to be collected by the broker-dealey effecting the transaction "or by such other person as provided by the Commission by rule...." The requiement that the collected fees be paid to SIPC in the same manner as assessments may be inappropriate with respect to other designated persons. Accordingly, we suggest that the phrase "or in such other manner as the Commission may by rule provide" be inserted following "assessments" in line 3 of H-13.

5. The phrase "with respect to such member" in line 8 of H-15 is unnecessary and may restrict the scope of pending Commission actions with which an application for a protective decree may be combined. We recommend deletion of the phrase.

6. Proposed section 5(b)(2)(B)(iii) (H-18) provides that the court in which an application for a protective decree has been filed may, for an appropriate length of time pending issuance of the decree, stay enforcement of, but may not abrogate, the right of set-off under the Bankruptcy Act and right to enforce a valid nonpreferential lien against the property of the debtor. The section also provides that the court may continue the stay upon appointment of the trustee but does not place limits on the length of the latter stay. The legislative history of the SIPC Act indicates that the Committee on Interstate and Foreign Commerce intended such a stay to be limited. In House Report 91-1613 which accompanied the SIPC Act in 1970, the committee stated that the Court could stay these rights only "for an appropriate period of short duration." (at 10). The subcommittee should be aware that as revised, section 5(b)(2)(B)(iii) may be viewed by the banking community and others as constituting a substantive change in current law.

7. SIPC has, in administering the current act, experienced a problem with respect to customers who deal with a broker-dealer after the filing date. Because of the manner in which "filing date" is defined (proposed sec. 16(8), H-59), the filing date may relate back to a time days or weeks before the trustee is appointed. Accordingly, some customers may deal with the debtor after the filing date but prior to the appointment of a trustee and thus have claims which arise after the time at which all customers' claims are fixed. Although SIPC has advised us that it has been paying such claims, SIPC would prefer to see the matter clarified.

Proposed section 6(c) (H-26) provides that if the trustee fins that the customer dealt with the debtor in good faith and prior to the appointment of the trustee, the date on which such action was taken will be deemed to be the filing date for that customer's claim and the customer will be protected. Proposed section 9(a)(4) (H-42) provides, however, that SIPC is not required to make advances to protect such a customer.

While we understand SIPC's desire to assure that fraudulent claims are not paid, we believe the burden of screening out such claims should be placed on the trustee, subject to the supervision of the court. If the trustee makes a finding of good faith, the claimant should be elevated to the status of all other customers and should be entitled to receive full

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

protection.  It would be most inequitable to permit SIPC to veto the court-approved decisions of the trustee in this regard.  Accordingly, the Commission strongly recommends, as we did in 1975, that subsection 9(a)(4) be deleted.

8.  There is an overlap between proposed section 6(e) (H-27) and proposed section 8(c)(1) (H-34).  Under section 6(e).  SIPC recoups from the general estate all funds advanced to pay or guarantee bank loans.  This repayment has a first priority under the Bankruptcy Act.  In addition, pursuant to section 8(c)(1)(A) (H-35), SIPC has a first priority claim against customer property to recoup advances made to pay bank loans to the extent that such advances recovered securities that were apportioned to customer property.  Thus SIPC recovers part of its advances twice.  This can be corrected by inserting after "section 9(c)(1)" in line 19 on H-27, "(to the extent such advances recovered securities which were apportioned to the general estate pursuant to section 6(d))".

9.  Proposed section 7(d)(4) (H-30) requires a trustee to submit to SIPC and others a statement of his investigation of certain matters.  To assure that the report is comprehensive, we suggest that "matters referred to in paragraph (1)." be substituted for the enumeration of matters in lines 1-3 on H-31.  In addition, we believe the trustee should be required to file a copy of the report with the Commission.

10.  In order to reflect otherwise parallel language in the current Act, proposed section 8(a)(1) (H-31) should be amended by inserting the phrase "at the same time" between "and" and "shall" in line 12 of H-31.

11.  Proposed section 8(c)(3) (H-36), which provides for the trustee's recovery under the Bankruptcy Act of certain transfers, appears to misplace the qualification that the transfer be void or viodable.  As written, this condition serves to define what property, recovered from a transfer, should be allocated to customer property rather than what property may be recovered.  This may be corrected by moving the phrase that begins in line 18 with "if" and continues through "Bankruptcy Act" in line 20 to the middle of line 17 after "customer property."

12.  The saving clause in proposed section 8(e)(1) (H-37, lines 22-25, and H-38, lines 1-3), which preserves Commission Rule S6d-1 until SIPC adopts rules under the amended Act, might usefully be moved out of what will become the SIPC Act and made a separate section of the legislation itself.  This would avoid having in the Act a provision which quickly will become obsolete.

13.  Proposed section 8(e) (H-37) provides for closing out executory contracts of the debtor with other broker-dealers.  The other broker-dealer is entitled to make a claim, to be satisfied out of SIPC funds, up to a maximum amount of $ 40,000, for each customer account with respect to which such broker-dealer sustains a loss in closing out contracts with the debtor.

If the claiming broker-dealer closes out an executory contract that was entered into on behalf of an associated person of that broker-dealer, it may not consider any loss on the transaction for purposes of its claim against SIPC because, under subsection (e)(4), an associated or controlling person of the broker-dealer is not deemed a customer.  This should be contrasted with proposed section 9(a)(6) (H-43) and the equivalent section of the current act, section 6(f)(1)(D) (p. 16 of the current act).  Those sections provide that where a broker has deposited funds or securities with the debtor on behalf of customers, n2 each such customer is deemed to be a separate customer of the debtor.  Under section 9(a)(6) (and sec. 6(f)(1)(D) of the current act), associated and controlling persons of a broker-dealer other than the debtor are protected like all other customers.

n2 Generally, this would occur where the claiming broker-dealer has an omnibus account with the debtor.

An anomalous situation has thus been created in that where a broker-dealer has a claim for property left with a debtor on behalf of an associated or controlling person, the associated or controlling person is deemed a customer of the debtor, but where the broker-dealer suffers a loss closing transactions on behalf of an associated person, that person is not deemed a customer.  We believe that associated persons of other broker-dealers should be treated as any other customer for purposes of both sections 8(e)(4) and 9(a)(6) in the absence of any evidence of culpable behavior by those

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

persons.  Accordingly, we suggest that subparagraph (C) of proposed section 8(e)(4) (H-40) be amended as follows (deletions in brackets):

(C) had a relationship of the kind specified in subsection 9(a)(5) with [either] the debtor [or the claiming broker or dealer].

14.  Section 8(e)(3) (H-39) prohibits both a clearing corporation which has established a procedure for the closing out of open contracts between an insolvent broker-dealer and its participants, and the participants themselves, from receiving SIPC funds in payment of any losses on such contracts.  The provision was recommended in 1974 by the SIPC Task Force and, at that time, represented the consensus view of the industry members, SIPC and the Commission.  There have been significant changes since then, however.  Clearing agencies are now subject to registration under the Securities Exchange Act, and are self-regulatory organizations charged with a quasi-public responsibility.  Moreover, the Commission is directed under the Securities Exchange Act to assure, among other things, that registered clearing agencies are able to facilitate the prompt and accurate clearance and settlement of securities transactions.  In view of these developments, we believe the Act should provide the flexibility to extend SIPC protection to clearing agencies and their participants if that proves desirable.  Accordingly, we proposed the following revisions of section 8(e)(3):

(i) In line 13 after "contracts" and ", except as SIPC may otherwise provide by rule."; and

(ii) In line 19 after "trustee." add "Rules adopted by SIPC under this paragraph shall provide that in no case may a registered agency or its participants, to the extent such participants' claims are or may be processed within the clearing agency, be entitled to receive funds advanced by SIPC in an amount greater, in the aggregate, than could be received by the participants if such participants proceeded individually under sections 8(e)(1) and 8(e)(2)."

15.  Proposed section 10 (H-44) created a direct payment procedure that SIPC may use in lieu of instituting a liquidation proceeding with respect to a member of SIPC.  Various aspects of the proposed procedure parallel those of the liquidation provisions of the act, but the new procedure applies to "members" rather than "debtors" and the payment of customer claims is effected by SIPC rather than a courtappointed trustee.  The direct payment procedure is not self-contained in section 10, however, and, to implement this alternative method of satisfying claims.  SIPC must rely on other provisions, such as section 16(3) and 16(11) which define "customer" and "net equity" respectively, section 8(d) setting forth requirements for the purchase of securities, and section 9(a) limiting the protection available to each customer.  Because those sections refer to the "debtor" and "trustee," they are, on their face, inapplicable to the direct payment procedure.  In order to accommodate such provisions to direct payment procedures, we recommend that: (i) the definition of debtor in section 16(6) (H-58) be amended to include a member with respect to whom a direct payment procedure has been instituted under section 10(b); (ii) a new section 10(g) be added as follows:

For purposes of implementing this section, any reference to the 'trustee' in other applicable sections of the act, including but not limited to sections 7(b)(1), 8(d), 8(f), 9(a), 16(3) and 16(11), shall be deemed a reference to SIPC and any reference to the date of publication of notice under section 8(a) shall be deemed a reference to the publication of notice under this section.;

(iii) the parenthetical material on II-46, lines 20-23 be conformed by placing a period and closing parenthesis after "section 9(a)" in line 21 and deleting the rest of the phrase; and (iv) section 14(c)(2) (H-54) be deleted and section 14(3)(1) (H-53) be renumbered section 14(c).

16.  Proposed section 10(b) (H-45) requires customer claims in a direct payment procedure to be "filed" as well as "received" within a six month period in order to be entitled to protection.  Section 8 on liquidations requires only that the claim be "received," We recommend deletion of the words "filed and" from line 10 on H-46.

17.  The bill at H-49 proposes to repeal section 7(d), page 18 of the current act.  Section 7(d) amends section 15(c)(3) of the Securities Exchange Act of 1934, which empowers the Commission to establish financial responsibility standards for broker-dealers.  The proposed deletion would appear to have the effect of repealing the amendments to

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

section 15(c)(3) enacted in 1970.  Confusion may have arisen because of the addition of a definition of the term "financial responsibility rules" (M-64).  Both the definition and Section 7(d) of the current Act should be retained.

18.  Proposed section 13(a) (H-49) designates the collection agents to whom SIPC members remit assessments.  The proposed section is ambiguous with respect to the role of a registered clearing agency which, under the Securities Exchange Act is a self-regulatory organization.  Proposed section 13(a) states that the self-regulatory organization that is the examining authority for a SIPC member shall act as the member's collection agent unless, where the member is a member of or participant in more than one self-regulatory organizations, SIPC designates another self-regulatory organization.

When a registered clearing agency is the only self-regulatory organization in which a member is a participant, it often will not be the examining authority because section 13(c)(1) (H-50) provides in that case that the Commission may designate itself as examining authority.  We believe clearing agencies should act as collection agents if SIPC chooses to so designate them.  Accordingly, we propose the following sentence be inserted at H-50, line 7 after the period:

If the only self-regulatory organization of which a member of SIPC is a member or in which it is a participant is a registered clearing agency that is not the examining authority for the member, SIPC may, nevertheless, designate such clearing agency as collection agent for the member or may require that payments be made directly to SIPC.

19.  Proposed section 13(c) (H-50) discusses the allocation of inspection responsibility over SIPC members for compliance with applicable financial responsibility rules.  The Securities Acts Amendments of 1975 amended section 9(c) of the SIPC Act (predecessor of proposed sec. 13(c)) to authorize the Commission, rather than SIPC, pursuant to section 17(d) of the 1934 act, to designate the examining authority when a member of SIPC is a member of more than one self-regulatory organization.  In transposing the language, H.R. 8331 deleted the reference in current section 9(c) to section 17(d) of the Securities Exchange Act.  The phrase ", pursuant to section 17(d) of the 1934 Act," should be added in H-51, line 4, after "Commission."

20. If section 10(a) of the current act is amended by replacing "he" with "it" (H-51), the subcommittee should assure that conforming changes, if needed, are made elsewhere in the act.

21.  H.R. 8331 revises section 10(c), redesignated as section 14(c) (H-52), which enumerates certain criminal acts.  We have redrafted and renumbered the proposed language.  In addition, we have prepared two new sections.  Subparagraphs (1)(A) and (1)(B) of the proposed revision add general fraud language to cover violations not included in the enumeration of specific activities in subparagraphs (1)(C) and (2). The latter have been revised to make them clearer and to impose what we believe to be an appropriate standard of accountability throughout the section.  Our suggested version of Section 14(c) n3 is as follows:

        n3 You will note in paragraph 15(iv) above that we recommend deletion of Section 14(c)(2).

(c) Concealment of Assets; False Statements or Claims. -

(1) Specific Prohibited Acts - Any person who, directly or indirectly, in connection with or in contemplation of any liquidation proceeding or direct payment procedure -

(A) employs any device, scheme, or artifice to defraud; or

(B) engages in any act, pratice, or course of business which operates or would operate as a fraud or deceit upon any person; or

(C) fraudulently or with intent to defeat this Act -

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(i) conceals or transfers any property belonging to the estate of a debtor; or

(ii) makes a false statement or accout; or

(iii) presents or uses any false claim for proof against the estate of a debtor; or

(iv) receives any material amount of property from a debtor; or

(v) gives, offers, receives, transfers or obtains any money or property, remuneration, compensation, reward, advantage, other consideration, or promise thereof, for acting or forebearing to act; or

(vi) conceals, destroys, mutilates, falsifies, makes a false entry in, or otherwise falsifies any document affecting or relating to the property or affairs of a debtor; or

(vii) withholds from any person entitled to its possession, any document affecting or relating to the property or affairs of a debtor - shall be fined not more than $ 5,000 or imprisoned for not more than five years, or both.

(2) Any person who, directly or indirectly steals, embezzles, or fraudulently, or with intent to defeat this Act, abstracts, or converts to his own use or to the use of another, any of the moneys, securities, or other assets of SIPC, or otherwise defrauds or attempts to defraud SIPC or a trustee by any means, shall be fined not more than $ 5,000 or imprisoned not more than five years, or both.

22. Proposed Section 16(3) (H-56), amending the definition of "customer," would eliminate clause (VI) of Section 6(c)(2)(A)(ii) of the current Act which could be construed as providing SIPC protection to persons who lend their securities to brokers. Although the amended provision does not address stock loans, SIPC has indicated that lenders would not be protected if they receive either collateral or consideration for their loans, but would be protected if they do not receive collateral or consideration.

It is the Commission's understanding that, under current industry practice, lending of securities is primarily an institutional business. Institutions lend securities in order to add leverage to their portfolios, and they recognize and are capable of accepting the associated business risk. On the other hand, brokers might borrow from individual investors who would not realize that by entering into such arrangements they would lose SIPC coverage.

The Commission does not object to the change, but we believe that what SIPC proposes to de should be made clear in the legislative history. Moreover, if the proposed change is made, the Commission will consider providing, by rule, additional protections for retail customers who lend securities to their brokers.

23. The exclusion of subordinated lenders of securities from the proposed definition of "customer" (sec. 16(3), H-56) does not prevent subordinated lenders from seeking rescission but rather merely denies to them customer status. If some ground for the lender to seek rescission exists, the exclusion provision does not remove or modify that ground. The proposed "notwithstanding" clause (H-57, line 1) however, implies that the right of rescission is affected by the exclusion of the lender from customer status in that it refers to grounds that "might have existed." Since the exclusion does not derogate a subordinated lender's right to seek rescission, we recommend that the provision be clarified by substituting "exists" for "might have existed" in line 2.

24. We question whether, in the definition of "customer property" (Section 16(5), H-57), the explicit reference in paragraph (B) to Rule 15c3-3 under the 1934 Act and its reserve requirement formula is useful. The Subcommittee may wish to consider the following more general language as a substitute for paragraph (B) (H-58):

resorces provided through the use or realization of customers' debit cash balance and other customer-related debit items as defined by the Commission by rule;"

25. In section 16(8)(C) (H-59) there is an unintended ambiguity in the definition of "filing date" in relation to the

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

direct payment rocedure.  We believe it would be better phrased, "(C) if the debtor is the subject of a direct payment procedure, or has been the subject of a direct payment procedure discontinued by SIPC pursuant to section 10(f) * * *."

26.  Various provisions of the current act have spent their force.  The subcommittee may wish to consider whether such provisions need to remain in the Act or whether they should be repealed.

TECHNICAL COMMENTS

| Page | Line | Comment |
|------|------|---------|
| 3 | 12 | Strike "and not opposed to" as redundant with "consistent with" (line 11). |
| 4 | 18-19 | Strike "After the date of the enactment of this paragraph," as superfluous, and capitalize "t" in "the". |
| 5 | 23 | Strike "After the date of enactment of this paragraph," as superuouos, and capitalize "t" in "the". |
| 7 | 9 | Strike "and". |
|  | 20-21 | "proposal" should read "proposed". |
|  | 25 | Strike "prescribed" and insert "promulgated". |
| 12 | 7 | Strike "4(f)" and replace with "4(g)". |
| 14 | 14 | Strike "and". |
|  | 19 | "exist" is misspelled. |
| 20 | 15-16 | Strike "appointed under paragraph (3),". |
| 21 | 4 | Strike "holding". |
|  | 9 | Strike "an application with the court" and replace with "with the court an application". |
|  | 14 | Strike "holding" as redundant. |
| 32 | 1 | "beneficial" is misspelled. |
| 33 | 11 | Strike "(a)(1)" and replace with "(a)(2)". |
| 39 | 4 | "participate" is misspelled. |
|  | 6, 6-7, and 13 | Strike "clearing corporations"; replace with "registered clearing agencies". |
| 44 | 22 | Strike "and". |
| 46 | 17 | Strike "of each" and insert "to each" in lieu thereof. |
| 47 | 3 | "An" should read "Any". |
| 49 | 5 | Strike "SECURITIES AND EXCHANGE". |
|  | 9 | Strike "3(e)(4)" and insert "3(e)(3)". |
| 50 | 6 | Insert "or participant in" before "more". |
|  | 10 | Insert "or participants in" at the end of the line following "members of". |
|  | 11-12 | Strike "of assessments due" as superfluous. |
| 51 | 16 | Insert "of" after "members". |

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

| 51 | 17 | Strike "of" and insert "in". |
| 55 | 16 | Strike "(i)" and replace with "(g)". |
| 57 | 23 | Strike "only" as redundant. |
| 61 | 17 | Strike "law" and insert "bylaw". |
| 62 | 24 | Strike "(5)(b)(3)" and insert "5(a)(3)". |
| 63 | 6 | Insert comma after "subscription". |

Page 2, Section 2 of the current SIPC Act: Strike "was" and replace with "were".

We note that in several places the subcommittee has deleted "or regulations" from the phrase "rules or regulations". If the subcommittee wishes to make this change uniformly, there are a number of other places on both the bill and the current SIPC Act where conforming changes should be made.

It has been suggested to the Commission that the term "referee in bankruptcy" is no longer the term of art and should be replaced with "bankruptcy judge." If this is so, appropriate changes should be made on page 19, line 24; page 20, lines 2-3, 4, 7 and 25; and page 21, lines 1-2 and 3.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

SECURITIES INVESTOR PROTECTION ACT OF 1970

[TABLE OF CONTENTS

[Sec. 1, Short title, etc.

[(a) Short title; table of contents.

[(b) Section headings.

[Sec. 2.  Application of Securities Exchange Act of 1934.

[Sec. 3.  Securities Investor Protection Corporation.

[(a) Creation

[(b) Powers.

[(c) Board of Directors.

[(d) Meetings of Board.

[(e) Bylaws.

[(f) Other members.

[Sec. 4.  SIPC Fund.

[(a) In general.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[(b) Initial required balance for fund.

[(c) Assessments.

[(d) Requirements respecting assessments and line of credit.

[(e) Prior trusts; overpayments and underpayments.

[(f) Borrowing authority.

[(g) SEC loans to SIPC.

[(h) SEC notes issued to Treasury.

[(i) "Gross revenue" defined.

[Sec. 5.  Protection of customers.

[(a) Determination of need of protection.

[(b) Court action.

[(c) SEC participation in proceedings.

[Sec. 6.  Liquidation proceedings.

[(a) General purposes of liquidation proceeding.

[(b) Powers and duties of trustee.

[(c) application of Bankruptcy Act.

[(d) Completion of open contractual commitments.

[(e) Notice.

[(f) SIPC advances to trustee.

[(g) Payments to customers; no proof of claim required.

[(h) Proof of claim by associates and others.

[(i) Reports by trustee to court.

[(j) Effect of Act on claims.

[Sec. 7.  SEC functions.

[(a) Administrative procedure.

[(b) Enforcement of actions.

[(c) Examinations and reports.

[(d) Financial responsibility.



HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[Sec. 8.  Examining authority functions.

[Sec. 9.  Functions of self-regulatory organizations.

[(a) Collecting agent.

[(b) Immunity.

[(c) Inspections.

[(d) Reports.

[(e) Consultation.

[(f) Financial condition of members.

[Sec. 10.  Prohibited acts.

[(a) Failure to pay assessment, etc.

[(b) Engaging in business after appointment of trustee.

[(c) Embezzlement, etc. assets of SIPC.

[Sec. 11.  Miscellaneous provisions.

[(a) Public inspection of reports.

[(b) Application of Act to foreign members.

[(c) Liability of members of SIPC.

[(d) Liability of SIPC and Directors.

[(e) Advertising.

[(f) SIPC exempt from taxation.

[(g) Section 20(a) and 1934 Act not to apply.

[(h) SEC study of unsafe or unsound practices.

[Sec. 12.  Definitions.]

*TABLE OF CONTENTS*

*Sec. 1.*        *Short title*.

*Sec. 2.*        *Application of Securities Exchange Act of 1934.*

*Sec. 3.*        *Securities Investor Protection Corporation.*

*Sec. 4.*        *SIPC Fund.*

*Sec. 5.*        *Protection of customers.*

*Sec. 6.*        *General provision of a liquidation proceeding.*

*Sec. 7.*        *Powers and duties of trustee.*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

| Sec. 8. | Special provisions of a liquidation proceeding. |
| Sec. 9. | SIPC advances. |
| Sec. 10. | Direct payment procedure. |
| Sec. 11. | SEC functions. |
| Sec. 12. | Examining authority functions. |
| Sec. 13. | Functions of self-regulatory organizations. |
| Sec. 14. | Prohibited acts. |
| Sec. 15. | Miscellaneous provisions. |
| Sec. 16. | Definitions. |

SEC. 3.  SECURITIES INVESTOR PROTECTION CORPORATION

[(a) CREATION. - There is hereby established a body corporate to be known as "Securities Investor Protection Corporation" (hereafter in this Act referred to as "SIPC").  SIPC shall be a nonprofit corporation and shall have succession until dissolved by act of the Congress.  SIPC shall -

[(1) not be an agency or establishment of the United States Government;

[(2) be a membership corporation the members of which shall be -

[(A) all persons registered as brokers or dealers under section 15(b) of the 1934 Act, and

[(B) all persons who are members of a national securities exchange,

other than persons whose business as a broker or dealer consists exclusively of (i) the distribution of shares of registered open end investment companies or unit investment trusts, (ii) the sale of variable annuities, (iii) the business of insurance, or (iv) the business of rendering investment advisory services to one or more registered investment companies or insurance company separate accounts; and

[(3) except as otherwise provided in this Act, be subject to, and have all the powers conferred upon a nonprofit corporation by, the District of Columbia Nonprofit Corporation Act (D.C. Code, sec. 29-1001 and fol.).]

*(a) CREATION AND MEMBERSHIP . -*

*(1) @CREATION. - There is hereby established a body corporate to be known as the "Securities Investor Protection Corporation" (hereafter in this Act referred to as "SIPC").  SIPC shall be a nonprofit corporation and shall have succession until dissolved by Act of the Congress.  SIPC shall -*

*(A) not be an agency or establishment of the United States Government; and*

*(B) except as otherwise provided in this Act, be subject to, and have all the powers conferred upon a nonprofit corporation by, the District of Columbia Nonprofit Corporation Act (D.C.Code, section 29-1001 and fol.) .*

*(2) MEMBERSHIP . -*

*(A) MEMBERS OF SIPC. - SIPC shall be a membership corporation the members of which shall be all persons registered as brokers or dealers under section 15(b) of the 1934 Act, other than -*

*(i) persons whose principal business, in the determination of SIPC, taking into account business of affiliated entities, is conducted outside the United States and its territories and possessions; and*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(ii) persons whose business as a broker or dealer consists exclusively of (I) the distribution of shares of registered open end investment companies or unit investment trusts, (II) the sale of variable annuities, (III) the business of insurance, or (IV) the business of rendering investment advisory services to one or more registered investment companies or insurance separate accounts .*

*(B) COMMISSION REVIEW. - SIPC shall file with the Commission a copy of any determination made pursuant to subparagraph (A)(i). Within thirty days after the date of such filing, or within such longer period as the Commission may designate of not more than ninety days after such date if it finds such longer period to be appropriate and publishes its reasons for so finding, the Commission shall, consistent with the public interest and the purposes of this Act, affirm, reverse, or amend any such determination of SIPC .*

*(C) ADDITIONAL MEMBERS. - SIPC shall provide by rule that persons excluded from membership in SIPC under subparagraph (A)(i) may become members of SIPC under such conditions and upon such terms as SIPC shall require by rule, taking into account such matters as the availability of assets and the ability to conduct a liquidation if necessary .*

*(D) DISCLOSURE. - Any broker or dealer excluded from membership in SIPC under subparagraph (A)(i) shall, as required by the Commission by rule, make disclosures of its exclusion and other relevant information to the customers of such broker or dealer who are licing in the United States or its territories and possessions .*

(b) POWERS. - In addition to the powers granted to SIPC elsewhere in this Act, SIPC shall have the power -

(1) to sue and be sued, complain and defend, in its corporate name and through its own counsel, in any [court, State, or Federal] *State, Federal, or other court* ;

[(3) subject to the provisions of this Act, to adopt, amend, and repeal, by its Board of Directors, bylaws and rules relating to the conduct of its business and the exercise of all other rights and powers granted to it by this Act;]

*(3) to adopt, amend, and repeal, by its Board of Directors, such bylaws as may be necessary or appropriate to carry out the purposes of this Act, including bylaws relating to -*

*(A) the conduct of its business; and*

*(B) the indemnity of its directors, officers, and employees (including any such person acting as trustee or otherwise in connection with a liquidation proceeding) for liabilities and expenses actually and reasonably incurred by any such person in connection with the defense or settlement of an action or suit if such person acted in good faith and in a manner reasonably believed to be consistent with the purposes of this Act ;*

*(4) to adopt, amend, and repeal, by its Board of Directors, such rules as may be necessary or appropriate to carry out the purposes of this Act, including rules relating to -*

*(A) the definition of terms used in this Act, other than those terms for which a definition is provided in section 16 ;*

*(B) the procedures for the liquidation of members and direct payment procedures, including the transfer of customer accounts, the distribution of customer property, and the advance and payment of SIPC funds; and*

*(C) the exercise of all other rights and powers granted to it by this Act ;*

[(4)] *(5)* to conduct its business (including the carrying on of operations and the maintenance of offices) and to exercise all other rights and powers granted to it by this Act in any State or other jurisdiction without regard to any qualification, licensing, or other statute in such State or other jurisdiction;

[(5)] *(6)* to lease, purchase, accept gifts or donations of or otherwise acquire, to own, hold, improve, use, or

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

otherwise deal in or with, and to sell, convey, mortgage, pledge, lease, exchange or otherwise dispose of, any property, real, personal or mixed, or any interest therein, wherever situated;

[(6)] *(7)* subject to the provisions of subsection (c), to elect or appoint such officers, attorneys, employees, and agents as may be required, to determine their qualifications, to define their duties, to fix their salaries, require bonds for them and fix the penalty thereof; [(7)] *(8)* to enter into contracts, to execute instruments, to incur liabilities, and to do any and all other acts and things as may be necessary or incidental to the conduct of its business and the exercise of all other rights and powers granted to SIPC by this Act;and

[(8)] *(9)* by bylaw, to establish its fiscal year.

(c) BOARD OF DIRECTORS. -

(1) FUNCTIONS. - SIPC shall have a Board of Directors which, subject to the provisions of this Act, shall determine the policies which shall govern the operations of SIPC.

(2) NUMBER AND APPOINTMENT. - The Board of Directors shall consist of seven persons as follows:

(A) One director shall be appointed by the Secretary of the Treasury from among the officers and employees of the Department of the Treasury.

(B) One director shall be appointed by the Federal Reserve Board from among the officers and employees of the Federal Reserve Board.

(C) Five directors shall be appointed by the President, by and with the advice and consent of the Senate, as follows -

(i) three such directors shall be selected from among persons who are associated with, and representative of different aspects of, the securities industry, not all of whom shall be from the same geographical area of the United States, and

(ii) two such directors shall be selected from the general public from among persons who are not [associated with any broker or dealer, within the meaning of paragraph (18) of section 3(a) of the 1934 Act, or similarly associated with a national securities exchange or other securities industry group] *persons associated with a broker or dealer or persons associated with a member of a national securities exchange, within the meaning of section 3(a)(18) or section 3(a)(21), respectively, of the 1934 Act, or similarly associated with any self-regulatory organization or other securities industry group* , and who have not had any such association during the two years preceding appointment.

(5) COMPENSATION[. ETC.]. - All matters relating to compensation of directors [and the determination of dollar volume of trading on exchanges] shall be as provided in the bylaws of SIPC.

[(e) BLAWS. -

[(1) As soon as practicable but not later than forty-five days after the date of enactment of this Act, the Board of Directors shall adopt initial bylaws and rules relating to the conduct of the business of SIPC and the exercise of the rights and powers granted to it by this Act, and shall file a copy thereof with the Commission. Thereafter, the Board of Directors may alter, supplement, or repeal any existing bylaw or rule and may adopt additional bylaws and rules, and in each such case shall file a copy thereof with the Commission.

[(2) Each such initial bylaw or rule, alteration, supplement, or repeal, and additional bylaw or rule shall take effect upon the thirtieth day (or such later date as SIPC may designate) after the filing of the copy thereof with the Commission or upon such earlier date as the Commission may determine, unless the Commission shall, by notice to SIPC setting forth the reasons therefor, disapprove the same, in whole or in part, as being contrary to the public interest

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

or contrary to the purposes of this Act.

[(3) The Commission may, by such rules or regulations as it determines to be necessary or appropriate in the public interest or to effectuate the purposes of this Act. require the adoption, amendment, alteration of, supplement to or rescission of any bylaw or rule by SIPC, whenever adopted.]

*(e) BYLAWS AND RULES .* -

(1) PROPOSED BYLAW CHANGES. - The Board of Directors of SIPC shall file with the Commission a copy of any proposed bylaw or any proposed amendment to or repeat of any bylaw of SIPC (hereinafter in this paragraph collectively referred to as a proposed bylaw change"), accompanied by a concise general statement of the basis and purpose of such proposed bylaw change.  Each such proposed bylaw change shall take effect thirty days after the date of the filing of a copy thereof with the Commission, or upon such later date as SIPC may designate or such earlier date as the Commission may determine, unless -

(A) the Commission, by notice to SIPC setting forth the reasons therefor, disapproves such proposed bylaw change as being contrary to the public interest or contrary to the purposes of this Act; or

(B) the Commission finds that such proposed bylaw change involves a matter of such significant public interest that public comment should be obtained, in which case it may, after notifying SIPC in writing of such finding, require that the procedures set forth in paragraph (2) be followed with respect to such proposed bylaw change, in the same manner as if such proposed bylaw change were a proposed rule change within the meaning of such paragraph.

(2) PROPOSED RULE CHANGES. -

(A) FILING OF PROPOSED RULL CHANGES. - The Board of Directors of SIPC shall file with the Commission, in accordance with such rules as the @commission may prescribe, a copy of any proposed rule or any proposed amendment to or repeal of any rule of SIPC (hereinafter in this subsection collectively referred to as a "proposed rule change"), accompanied by a concise general statement of the basis and purpose of such proposed rule change.  The Commission shall, upon the filing of any proposed rule change, publish notice thereof, together with the terms of substance of such proposed rule change or a description of the subjects and issues involved.  The Commission shall give interested persons an opportunity to submit written data, views, and arguments with respect to such *proposed rule change.  No proposed rule change shall take effect unless approved by the Commission or otherwise permitted in accordance with the provisions of this paragraph.*

*(B) ACTION BY THE COMMISSION. - Within thirty-five days after the date of publication of notice of the filing of a proposed rule change, or within such longer period as the Commission may designate of not more than ninety days after such date if it finds such longer period to be appropriate and publishes its reasons for so finding, or as to which SIPC consents, the Commission shall -*

*(i) by order approve such proposed rule change; or*

*(ii) institute proceedings to determine whether such proposed rule change should be disapproved.*

*(C) PROCEEDINGS. - Proceedings instituted with respect to a proposed rule change pursuant to subparagraph (B)(ii) shall include notice of the grounds for disapproval under consideration and opportunity for hearing, and shall be concluded within one hundred eighty days after the date of publication of notice of the filing of such proposed rule change.  At the conclusion of such proceedings, the Commission shall, by order, approve or disapprove such proposed rule change.  The Commission may extend the time for conclusion of such proceedings for not more than sixty days if it finds good cause for such extension and publishes its reasons for so finding, or for such longer period as to which SIPC consents.*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(D) GROUNDS FOR APPROVAL OR DISAPPROVAL. - The Commission shall approve a proposed rule change if it finds that such proposed rule change is in the public interest and is consistent with the purposes of this Act, and any proposed rule change so approved shall be given force and effect as if promulgated by the Commission. The Commission shall disapprove a proposed rule change if it does not make the finding referred to in the preceding sentence. The Commission shall not approve any proposed rule change prior to thirty days after the date of publication of notice of the filing thereof, unless the Commission finds good cause for so doing and publishes its reasons for so finding.*

*(E) EXCEPTION. - Notwithstanding any other provision of this paragraph, a proposed rule change may take effect -*

*(i) upon the date of filing with the Commission, if such proposed rule change is designated by SIPC as relating solely to matters which the Commission, consistent with the public interest and the purposes of this subsection, determines by rule do not require the procedures set forth in this paragraph; or*

*(ii) upon such date as the Commission shall for good cause determine. Any proposed rule change which takes effect under this clause shall be filed promptly thereafter and reviewed in accordance with the provisions of subparagraph (A).*

*At any time within sixty days after the date of filing of any rule change which has taken effect pursuant to this subparagraph , the Commission may summarily abrogate such rule change and require that it be refiled and reviewed in accordance with the provisions of this paragraph, if the Commission finds that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this Act. Any action of the Commission pursuant to the preceding sentence shall not affect the validity or force of a rule change during the period it was in effect and shall not be reviewable under section 25 of the 1934 Act or deemed to be final agency action for purposes of section 704 of title 5, United States Code.*

*(3) ACTION REQUIRED BY COMMISSION. - The Commission may, by such rules as it determines to be necessary or appropriate in the public interest or to carry out the purposes of this Act, require SIPC to adopt, amend, or repeal any SIPC bylaw or rule, whenever adopted .*

[(f) OTHER MEMBERS. -

[(1) Any person who is a broker, dealer, or member of a national securities exchange and who is excluded from membership in SIPC under subsection (a) may become a member of SIPC under such conditions and upon such terms as SIPC shall require.

[(2) Notwithstanding anything contained in subsections (c) and (d) of section 4, any person who becomes a member of the corporation under this subsection shall be subject to such assessments as SIPC determines to be equitable.]

SEC. 4.  SIPC FUND.

(a) IN GENERAL. -

(1) * * *

(2) BALANCE OF THE FUND. - [The] *Except as otherwise provided in this section, the* balance of the fund at any time shall consist of the aggregate at such time of the following items:

(A) Cash on hand or on deposit.

(B) Amounts invested in United States Government or agency securities.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[(C) Confirmed lines of credit.]

*(C) Such confirmed lines of credit as SIPC may from time to time maintain, other than those maintained pursuant to paragraph (4) .*

*(4) OTHER LINES. - SIPC may maintain such other confirmed lines of credit as it considers necessary or appropriate, and such other confirmed lines of credit shall not be included in the balance of the fund, but amounts received from such lines of credit may be disbursed by SIPC under this Act as though such amounts were part of the fund .*

(c) ASSESSMENTS. -

(1) INITIAL ASSESSMENTS. - Each member of SIPC shall pay to SIPC, or the collection agent for SIPC specified in section 9(a), on or before the one hundred and twentieth day following the date of enactment of this Act, an assessment equal to one-eight of 1 per centum of the gross revenues from the securities business of such member during the calendar year 1969, or if the Commission shall determine that, for purposes of assessment pursuant to this paragraph, a lesser percentage of gross revenues from the securities business is appropriate for any class or classes of members (taking into account relevant factors, including but not limited to types of business done and nature of securities sold), such lesser percentages as the Commission, by rule or regulation, shall establish for such class or classes, but in no event less than one-sixteenth of 1 per centum for any such class.  In no event shall any assessment upon a member pursuant to this paragraph be less than $ 150.

(2) GENERAL ASSESSMENT AUTHORITY. - SIPC shall, by bylaw [or rule], impose upon its members such assessment as, after consultation with self-regulatory organizations, SIPC may deem necessary and appropriate to establish and maintain the fund and to repay any borrowings by SIPC.  Any assessments so made shall be in conformity with contractual obligations made by SIPC in connection with any borrowing incurred by SIPC. Subject to paragraph (3) and subsection (d)(1)(A), any such assessment upon the members, or any one or more classes thereof, may, in whole or in part, be based upon or measured by (A) the amount of their gross revenues from the securities business, or (B) all or any of the following factors: the amount or composition of their gross revenues from the securities business, the number or dollar volume of transactions effected by them, the number of customer accounts maintained by them or the amounts of cash and securities in such accounts, their net capital, the nature of their activities (whether in the securities business or otherwise) and the cosequent risks, or other relevant factors.

(3) LIMITATIONS. - Notwithstanding any other provision of this Act [other than section 3(f)] -

(A) no assessment shall be made upon a member otherwise than pursuant to paragraph (1) or (2) of this subsection.

(B) an assessment may be made under paragraph (2) of this subsection at a rate in excess of one-half of one per centum during any twelve-month period if SIPC determines, in accordance with a bylaw [or rule], that such rate of assessment during such period will not have a material adverse effect on the financial condition of its members or their customers, except that no assessments shall be made pursuant to such paragraph upon a member which require payments during any such period which exceed in the aggregate one per centum of such member's gross revenues from the securities business for such period, and.

(C) no assessment shall include any charge based upon the member's activities (i) in the distribution of shares of registered open end investment companies or unit investment trusts, (ii) in the sale of variable annuities, (iii) in the business of insurance, or (iv) in the business of rendering investment advisory services to one or more registered investment companies or insurance company separate accounts.

(d) REQUIREMENTS RESPECTING ASSESSMENTS AND LINES OF CREDIT. -

(1) ASSESSMENTS. -

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(A) 1/2 OF 1 PERCENT ASSESSMENT. - Subject to subsection (c)(3), SIPC shall impose upon each of its members an assessment at a rate of not less than one-half of 1 per centum per annum of the gross revenues from the securities business of such member -

(i) until the balance of the fund aggregates not less than $ 150,000,000 (or such other amount as the Commission may determine in the public interest),

(ii) during any period when there is outstanding borrowing by SIPC pursuant to subsection (f) or subsection (g) of this section, and

(iii) whenever the balance of the fund (exclusive of confirmed lines of credit) is below $ 100,000,000 (or such other amount as the Commission may determine in the public interest).

(B) 1/4 OF 1 PERCENT ASSESSMENT. - During any period during which -

(i) the balance of the fund (exclusive of confirmed lines of credit) aggregates less than $ 150,000,000 (or such other amount as the Commission has determined under paragraph (2)(B)), or

(ii) SIPC is required under paragraph (2)(B) to phase out of the fund all confirmed lines of credit,

SIPC shall endeavor to make assessments in such a manner that the aggregate assessments payable by its members during such period shall not be less than one-fourth of 1 per centum per annum of the aggregate gross revenues from the securities business for such members during such period.

*(C) MINIMUM ASSESSMENT. - The minimum assessment imposed upon each member of SIPC shall be $ 25 per annum through the year ending December 31, 1979, and thereafter shall be the amount from time to time set by SIPC bylaw, but in no event shall the minimum assessment be greater than $ 150 per annum* .

(e) PRIOR TRUSTS; OVERPAYMENTS AND UNDERPAYMENTS. -

(1) PRIOR TRUSTS. - There may be contributed and transferred at any time to SIPC any funds held by any trust established by a self-regulatory organization prior to January 1, 1970, and the amounts so contributed and transferred shall be applied, as may be determined by SIPC with approval of the Commission, as a reduction in the amounts payable pursuant to assessments made or to be made by SIPC upon members of such self-regulatory organization pursuant to subsection (c)(2). No such reduction shall be made at any time when there is outstanding any borrowing by SIPC pursuant to subsection (g) of this section or any borrowings under confirmed lines of credit.

(2) OVERPAYMENTS. - To the extent that any payment by a member exceeds the maximum rate permitted by subsection (c) of this section, the excess shall [not] be recoverable [except] *only* against future payments by such member [in accordance with a bylaw or rule of SIPC], *except as otherwise provided by CIPC bylaw* .

(3) UNDERPAYMENTS. - If a member fails to pay when due all or any part of an assessment made upon such member, the unpaid portion thereof shall bear interest at such rate as may be determined by [SIPC by bylaw or rule] *SPIC bylaw and, in addition to such interest, SIPC may impose such penalty charge as may be determined by SIPC bylaw. Any such penalty charge imposed upon a SIPC member shall not exceed 25 per centum of any unpaid portion of the assessment. SIPC may waive such penalty charge in whole or in part in circumstances where it considers such waiver appropriate* .

(f) BORROWING AUTHORITY. - SIPC shall have the power to borrow moneys and to evidence such borrowed moneys by the issuance of bonds, notes, or other evidences of indebtedness, all upon such terms and conditions as the Board of Directors may determine in the case of a borrowing other than pursuant to subsection (g) of this section, or as may be prescribed by the Commission in the case of a borrowing pursuant to subsection (g). The interest payable on a

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

borrowing pursuantr to subsection (g) shall be equal to the interest payable on the related notes or other obligations issued by the Commission to the Secretary of the Treasury.  To secure the payment of the principal of, and interest and premium, if any, on, all bonds, notes, or other evidences of indebtedness so issued, SIPC may make agreements with respect to the amount of future assessments to be made upon members and may pledge all or any part of the assets of SIPC and of the assessments made or to be made upon members.  Any such pledge of future assessments shall (subject to any prior pledge) be valid and binding from the time that it is made, and the assessments so pledged and thereafter received by SIPC, or any [examining authority as] collection agent for SIPC, shall immediately be subject to the lien of such pledge without any physical delivery thereof or further act, and the lien of such pledge shall be valid and binding against all parties having claims of any kind against SIPC or such collection agent whether pursuant to this Act, in tort, contract or otherwise, irrespective of whether such parties have notice thereof.  During any period when a borrowing by SIPC pursuant to subsection (g) of this section is outstanding, no pledge of any assessment upon a member to secure any bonds, notes, or other evidences of indebtedness issued other than pursuant to subsection (g) of this section shall be effective as to the excess of the payments under the assessment on such member during any twelve-month period over one-fourth of 1 per centum of such member's gross revenues from the securities business for such period.Neither the instrument by which a pledge is authorized or created, nor any statement or other document relative thereto, need be filed or recorded in any State or other jurisdiction.  The Commission may by rule or regulation provide for the filing of any instrument by which a pledge or borrowing is authorized or created, but the failure to make or any defect in any such filing shall not affect the validity of such pledge or borrowing.

   (g) SEC LOANS TO SIPC. - In the event that the fund is or may reasonably appear to be insufficient for the purposes of this Act, the Commission is authorized to make loans to SIPC.  At the time of application for, and as a condition to, any such loan, SIPC shall file with the Commission a statement with respect to the anticipated use of the proceeds of the loan.  If the Commission determines that such loan is necessary for the protection of customers of brokers or dealers and the maintenance of confidence in the United States securities markets and that SIPC has submitted a plan which provides as reasonable an assurance of prompt repayment as may be feasible under the circumstances, then the Commission shall so certify to the Secretary of the Treasury, and issue notes or other obligations to the Secretary of the Treasury pursuant to subsection (h).  If the Commission determines that the amount or time for payment of the assessments pursuant to such plan would not satisfactorily provide for the repayment of such loan, it may, by rules and regulations, impose upon the purchasers of equity securities in transactions on national securities exchanges and in the over-the-counter markets a transaction fee in such amount as at any time or from time to time it may determine to be appropriate, but not exceeding one-fiftieth of 1 per centum of the purchase price of the securities.  No such fee shall be imposed on a transaction (as efined by rules or regulations of the Commission) of less than $ 5,000.  For the purposes of the next preceding sentence, [(A)] (*1*) the fee shall be based upon the total dollar amount of each purchase; [(B)] (*2*) the fee shall not apply to any purchase on a national securities exchange or in an over-the-counter market by or for the account of a broker or dealer registered under section 15(b) of the 1934 Act or a member of a national securities exchange unless such purchase is for an investment account of such broker, dealer, or member (and for this purpose any transfer from a trading account to an investment account shall be deemed a purchase at fair market value); and [(C) the Commission by rules and regulations may exempt any transaction in the over-the-counter markets in order to provide for the assessment of fees on purchasers in transactions in those markets on a basis comparable to the assessment of fees on purchasers in transactions on national securities exchanges.  Such fee shall be collected by the broker or dealer effecting the transaction for or with the purchaser and shall be paid to SIPC in the same manner as assessments imposed pursuant to subsection (c)] *(3) the Commission may, by rule, exempt any transaction in the over-the-counter markets or on any national securities exchange where necessary to provide for the assessment of fees on purchasers in transactions in such markets and exchanges on a comparable basis.  Such fee shall be collected by the broker or dealer effecting the transaction for or with the purchaser, or by such other person as provided by the Commission by rule, and shall be paid to SIPC in the same manner as assessments imposed pursuant to subsection (c) but without regard to the limits on such assessments, or in such other manner as the Commission may by rule provide.*

   *[(i) "GROSS REVENUES" DEFINED.*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[(1) IN GENERAL. - For purposes of this Act, the term "gross revenues from the securities business" means the sum of (but without duplication):

[(A) commissions earned in connection with transactions in securities effected for customers as agent (net of commissions paid to other brokers and dealers in connection with such transactions) and markups in respect of purchases or sales of securities as principal,

[(B) charges for executing or clearing transactions in securities for other brokers and dealers,

[(C) the net realized gain, if any, from principal transactions in securities in trading accounts,

[(D) the net profit, if any, from the management of or participation in the underwriting or distribution of securities,

[(E) interest earned on customers' securities accounts,

[(F) fees for investment advisory services (except when rendered to one or more registered investment companies or insurance company separate accounts) or account supervision in respect of securities,

[(G) fees for the solicitation of proxies with respect to, or tenders or exchanges of, securities,

[(H) income from service charges or other surcharges in respect of securities,

[(I) except as otherwise provided by rule or regulation of the Commission, dividends and interest received on securities in investment accounts of the broker or dealer,

[(J) fees in connection with put, call, and other option transactions in securities, and

[(K) fees and other income for all other investment banking services.

[Such term does not include revenues received by a broker or dealer in connection with the distribution of shares of a registered open end investment company or unit investment trust or revenues derived by a broker or dealer from the sale of variable annuities or from the conduct of the business of insurance.

[(2) CONSOLIDATED GROUP. - Except as otherwise provided by SIPC by law or rule, gross revenues from the securities business of a broker or dealer shall be computed on a consolidated basis for such broker or dealer and all its subsidiaries, and the operations of a broker or dealer shall include those of any business to which such broker or dealer has succeeded.

[(3) MEANING OF TERMS NOT DEFINED. - SIPC may by bylaw or rule define all terms used in this subsection insofar as such definitions are not inconsistent with the provisions of this subsection.]

 (i) CONSOLIDATED GROUP. - Except as otherwise provided by SIPC bylaw, gross revenues from the securities business of a member of SIPC shall be computed on a consolidated basis for such member and all its subsidiaries (other than the foreign subsidiaries of such member), and the operations of a member of SIPC shall include those of any business to whichu such member has succeeded.

SEC. 5.  PROTECTION OF CUSTOMERS.

(a) DETERMINATION OF NEED OF PROTECTION. -

(1) * * *

[(2) ACTION BY SIPC. - If SIPC determines that any member has failed or is in danger of failing to meet its obligations to customers and that there exists one or more of the conditions specified in subsection (b)(1)(A), SIPC,

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*upon notice to such member, may apply to any court of competent jurisdiction specified in section 27 or 21(e) of the 1934 Act for a decree adjudicating that customers of such member are in need of the protection provided by this Act.*

*[(3) EFFECT OF OTHER PENDING ACTIONS. - An application under paragraph (2) -*

*[(A) with the consent of the Commission, may be combined with any action brought by the Commission including an action by it for a temporary receiver pending an appointment of a trustee under subsection (b)(3), and*

*[(B) may be filed notwithstanding the pendency in the same or any other court of any bankruptcy, mortgage foreclosure, or equity receivership proceeding or any proceeding to reorganize, conserve, or liquidate such member or its property, or any proceeding to enforce a lien against property of such member.]*

*(2) ACTION BY SELF-REGULATORY ORGANIZATION. - If a self-regulatory organization has given notice to SIPC pursuant to subsection (a)(1) with respect to a broker or dealer, and such broker or dealer undertakes to liquidate or reduce its business either pursuant to the direction of a self-regulatory organization or voluntarily, such self-regulatory organization may render such assistance or oversight to such broker or dealer as it consider appropriate to protect the interests of customers of such broker or dealer. The assistance or oversight by a self-regulatory organization shall not be deemed the assumption or adoption by such self-regulatory organization of any obligation or liability to customers, other creditors, shareholders, or partners of the broker or dealer, and shall not prevent or act as a bar to any action by SIPC.*

*(3) ACTION BY SIPC. - If SIPC determines that -*

*(A) any member of SIPC (including any person who was a member within one hundred eighty days prior to such determination) has failed or is in danger of failing to meet its obligations to customers; and*

*(B) one or more of the conditions specified in subsection (b)(1) exist with respect to such member,*

*SIPC may, upon notice to such member, file an application for a protective decree with any court of competent jurisdiction specified in section 21(e) or 27 of the 1934 Act, except that no such application shall be filed with respect to a member the only customers of which are persons whose claims could not be satisfied by SIPC advances pursuant to section 9.*

*(4) EFFECT OF OTHER PENDING ACTIONS.- An application with respect to a member of SIPC filed with a court under paragraph (3) -*

*(A) may, with the consent of the Commission, be combined with any action brought by the Commission, including an action by the Commission for a temporary receiver pending an appointment of a trustee under subsection (b)(3); and*

*(B) may be filed notwithstanding the pendency in the same or any other court of any bankruptcy, mortgage foreclosure, equity receivership proceeding or any proceeding to reorganize, conserve, or liquidate such member or its property, or any proceeding to enforce a lien against property of such member.*

*[(b) COURT ACTION. -*

*[(1) ISSUANCE OF DECREE. -*

*[(A) FINDINGS BY COURT. - A court to which application is made pursuant to subsection (a)(2) shall grant the application and issue a decree adjudicating that customers of the member named in the application are in need of protection under this Act if it finds that such member -*

*[(i) is insolvent within the meaning of section 1(19) of the Bankruptcy Act, or is unable to meet its obligations as they mature, or*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*[(ii) has committed an act of bankruptcy within the meaning of section 3 of the Bankruptcy Act, or*

*[(iii) is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such member has been appointed, or*

*[(iv) is not in compliance with applicable requirements under the 1934 Act or rules or regulations of the Commission or any self-regulatory organization with respect to financial responsibility or hypothecation of customers' securities, or*

*[(v) is unable to make such computations as may be necessary to establish compliance with such financial responsibility or hypothecation rules or regulations.*

*[(B) UNCONTESTED, ETC., APPLICATIONS. - If within three business days after the filing of an application pursuant to subsection (a)(2), or such other period as the court may order, the debtor shall consent to or fail to contest such application or shall fail to show facts sufficient to controvert any material allegation of such application, the court shall forthwith grant the application and issue a decree adjudicating that customers of the member named in the application are in need of protection under this Act.*

*[(2) EXCLUSIVE JURISDICTION OVER DEBTOR. - Upon the filing of an application pursuant to subsection (a)(2), the court to which application is made shall have exclusive jurisdiction of the debtor involved and its property wherever located with the powers, to the extent consistent with the purposes of this Act, of a court of bankruptcy and of a court in a proceeding under chapter X of the Bankruptcy Act. Pending an adjudication under paragraph (1) such court shall stay, and upon appointment by it of a trustee as provided in paragraph (3) such court shall continue the stay of, any pending bankruptcy, mortgage foreclosure, equity receivership, or other proceeding to reorganize, conserve, or liquidate the debtor or its property and any other suit against any receiver, conservator, or trustee of the debtor or its property. Pending such adjudication and upon the appointment by it of such trustee, the court may stay any proceeding to enforce a lien against property of the debtor or any other suit against the debtor. Pending such adjudication, such court may appoint a temporary receiver.*

[(3) APPOINTMENT OF TRUSTEE. - If the court grants an application and makes an adjudication under paragraph (1), the court shall forthwith appoint as trustee for the liquidation of the business of the debtor in accordance with section 6, and as attorney for such trustee, such persons as SIPC shall specify. No person shall be appointed as such trustee or attorney if such person is not "disinterested" within the meaning of section 158 of the Bankruptcy Act.

[(4) DEBTOR AND FILING DATE DEFINED. - For purposes of this Act -

[(A) DEBTOR. - The term "debtor" means a member of SIPC in respect of whom an application has been filed pursuant to subsection (a)(2).

[B] FILING DATE. - The term "filing date" means the date on which an application with respect to any debtor is filed under subsection (a)(2) except that if -

[(i) a petition was filed before such date by or against the debtor under the Bankruptcy Act, or

[(ii) the debtor is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor was appointed which proceeding was commenced before the date on which such application was filed,

then the term "filing date" means the date on which such petition was filed or such proceeding commenced.]

*(b) COURT ACTION . -*

*(1) ISSUANCE OF PROTECTIVE DEGREE. - Upon receipt of an application by SIPC under subsection (a)(3), the*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*court shall forthwith issue a protective decree if the debtor consents thereto, if the debtor fails to contest such application, or if the court finds that such debtor -*

*(A) is insolvent within the meaning of the Bankruptcy Act, or is unable to meet its obligations as they mature* ;

*(B) has committed on act of bankruptcy within the meaning of the Bankruptcy Act* ;

*(C) is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor has been appointed* ;

*(D) is not in compliance with applicable requirements under the 1934 Act or rules of the Commission or any self-regulatory organization with respect to financial responsibility or hypothecation of customers' securities; or*

*(E) is unable to make such computation as may be necessary to establish compliance with such financial responsibility or hypothecation rules* .

*Unless the debtor consents to the issuance of a protectice decree, the application shall be heard three business days after the date on which it is filed, or at such other time as the court shall determine, taking into consideration the urgency which the circumstances require* .

*(2) JURISDICTION AND POWERS OF COURT* . -

*(A) EXCLUSIVE JURISDICTION. - Upon the filing of an application with a court for a protective decree with respect to a debtor, such court -*

*(i) shall have exclusive jurisdiction of such debtor and its property wherever located (including property located outside the territorial limits of such court and property held by any other person as security for a debt or subject to a lien)* ;

*(ii) shall have exclusive jurisdiction of any suit against the trustee with respect to a liquidation proceeding; and*

*(iii) except as inconsistent with three provisions of this Act, shall have jurisdiction, powers, and duties conferred upon a court of bankruptcy by the Bankruptcy Act, together with such other jurisdiction, powers, and duties as are prescribed by this Act* .

*(B) STAY OF PENDING ACTIONS. -- Pending the issuance of a protective decree under paragraph (1), the court with which an application has been filed -*

*(i) shall stay any pending bankruptcy, mortgage foreclosure, equity receivership, or other proceeding to reorganize, conserve, or liquidate the debtor or its property and any other suit against any receiver, conservator, or trustee of the debtor or its property, and shall continue such stay on upon appointment of a trustee pursuant to paragraph (3)* ;

*(ii) may stay any proceeding to enforce a lien against property of the debtor or any other suit against the debtor, including a suit by stockholders of the debtor which interferes with prosecution by the trustee of claims against former directors, officers, or employees of the debtor, and may continue such stay upon appointment of a trustee pursuant to paragraph (3)* ;

*(iii) may stay enforcement of, and upon appointment of a trustee pursuant to paragraph (3), may continue the stay for such period of time as may be appropriate, but shall not abrogate, the right of setoff provided in section 68 of the Bankruptcy Act, and the right to enforce a valid, nonpreferential lien or pledge against the property of the debtor; and*

*(iv) may appoint a temporary receiver* .

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(3) APPOINTMENT OF TRUSTEE AND ATTORNEY. - If the If the court issues a protective decree under paragraph (1), such court shall forthwith appoint, as trustes for the liquidation of the business of the debtor and as attorney for the trustee, such persons as SPIC, in its sole discretion, specifies. The persons appointed as trustee and as attorney for the trustee may be associated with the same firm. SIPC may, in its sole discretion, specify itself or one of its employees as trustee in any case in which SIPC has determined that the liabilities of the debtor to unsecured general creditors and to subordinated lenders appear to aggregate less than $ 750,000 and that there appear to be fewer than five hundred customers of such debtor. No person may be appointed to serve as trustee or attorney for the trustee if such person is not disinterested within the meaning of paragraph a trustee in conducting a liquidation proceeding, the trustee may, with the approval of SIPC and the court, employ an attorney who is not disinterested. A trustee appointed under this paragraph shall qualify by filing a bond in the manner prescribed by the applicable provisions of the Bankruptcy Act, except that neither SIPC nor any employee of SIPC shall be required to file a bond when appointed as trustee .*

*(4) REFERENCE TO REFEREE IN BANKRUPTCY. -- If the court issues a protective decree and appoints a trustee under this section, such court may, of any stage of the proceeding, refer the proceeding to a referee in bankruptcy to hear and determine any or all matters, or to a referee in Bankruptcy as special master to hear and report generally or upon specified matters. Only under special circumstances shall a reference be made to a special master who is not a referee in bankruptcy .*

*(5) COMPENSATION FOR SERVICE AND REIMBURSEMENT OF EXPENSES . -*

*(A) ALLOWANCES IN GENERAL. - The court shall grant rensonable compensation for service rendered and reimbursement for proper costs and expenses incurred (hereinafter in this paragraph referred to as "allowances") by a trustee, and by the attorney for such a trustee, in connection with a liquidation proceeding. No allowance (other than reimbursement for proper costs and expense incurred) shall be granted to SIPC or any employee of SIPC for serring as trustee. Allowances may be granted on an interim basis during the course of the liquidation proceeding at such times and in such amounts as the court considers appropriate .*

*(B) ALLOWANCES TO REFEREE IN BANKRUPTCY OR SPECIAL MASTER. - In the event a proceeding has been referred to a referee in bankruptcy or a special master, the district judge may grant reasonable allowance to such referee in bankruptcy or a special master, in the manner provided for in a case filed under chapter X of the Bankruptcy Act, as now in effect or as amended from time to time .*

*(C) APPLICATION FOR ALLOWANCES. - Any person seeking allowances shall file with the court an application which complies in form and content with the provisions of the Bankruptcy Act governing applications for allowances under such Act. A copy of such application shall be served upon SIPC when filed. The court shall fix a time for a hearing on such application, and notice of such hearing shall be given to the applicant, the trustee, the debtor, the creditors, SIPC, and such other persons as the court may designate, except that notice need not be given to customers whose claims have been or will be satisfied in full or to creditors who cannot reasonably be expected to receive any distribution during the course of the liquidation proceeding .*

*(D) RECOMMENDATIONS OF SIPC AND AWARDING OF ALLOWANCES. - Whenever an application for allowances is filed pursuant to subparagraph (C), SIPC shall file its recommendation with respect to such allowances with the court prior to the hearing on such application and shall, if it so requests, be allowed a reasonable time after such hearing within which to file a further recommendation. In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this Act and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC .*

*(E) APPLICABLE RESTRICTIONS. - The restrictions on sharing of compensation set forth in the Bankruptcy Act*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*shall apply to allowances .*

*(F) CHARGE AGAINST ESTATE. - Allowances granted by the court, including interim allowances, shall be charged against the general estate of the debtor as a cost and expense of administration.  If the general estate is insufficient to pay allowances in whole or in part, SIPC shall advance such funds as are necessary for such payment .*

*(6) DISINTERESTEDNESS . -*

*(A) STANDARDS. - For purposes of paragraph (3), a person shall not be deemed disinterested if -*

*(i) such person is a creditor (including a customer), stockholder, or partner of the debtor ;*

*(ii) such person is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the filing date was the underwriter of any securities of the debtor ;*

*(iii) such person is, or was within two years prior to the filing date, a director, partner, officer, or employee of the debtor or such an underwriter, or an attorney for the debtor or such an underwriter; or*

*(iv) it appears that such person has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such an underwriter, or for any other reason, an interest materially adverse to the interests of any class of creditors (including customers) or stockholders , except that SIPC shall in all cases be deemed disinterested, and an employee of SIPC shall be deemed disinterested if such employes would, except for his association with SIPC, meet the standards set forth in this subparagraph .*

*(B) HEARING. - The court shall fix a time for a hearing on disinterestedness, to be held promptly after the appointment of a trustee.  Notice of such hearing shall be mailed at least ten days prior thereto to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor, and to the creditors and stockholders of the debtor, to SIPC, and to such other persons as the court may designate.  The court may, in its discretion, also require that notice be given by publication in such newspaper or newspapers of general circulation as it may designate.  At such hearing, at any adjournment thereof, or upon application, the court shall hear objections to the retention in office of a trustee or attorney for a trustee on the grounds that such person is not disinterested .*

*(d) SIPC PARTICIPATION. - SIPC shall be deemed to be a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters, and shall be deemed to have intervened with respect to all such matters with the same force and effect as if a petition for such purpose had been allowed by the court .*

[SEC. 6.  LIQUIDATION PROCEEDINGS.

[(a) GENERAL PURPOSES OF LIQUIDATION PROCEEDING. - The purposes of any proceeding in which a trustee has been appointed under section 5(b)(3) (hereinafter in this section referred to as a "liquidation proceeding") shall be:

[(1) as promptly as possible after such appointment and in accordance with the provisions of this section -

[(A) to return specifically identifiable property to the customers of the debtor entitled thereto;

[(B) to distribute the single and separate fund, and (in advance thereof or concurrently therewith) pay to customers money advanced by SIPC, as provided in subsection (f);

[(2) to operate the business of the debtor in order to complete open contractual commitments of the debtor pursuant

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

to subsection (d):

[(3) to enforce rights of subrogation as provided in this Act; and

[(4) to liquidate the businss of the debtor.

[(b) POWERS AND DUTIES OF TRUSTEE. -

[(1) TRUSTEE POWERS. - A trustee appointed under section 5(b)(3) (hereinafter referred to as "trustee") shall be vested with the same powers and title with respect to the debtor and the property of the debtor, and the same rights to avoid preferences, as a trustee in bankruptcy and a trustee under chapter X of the Bankruptcy Act have with respect to a bankrupt and a chapter X debtor.  In addition, a trustee shall have the right -

[(A) with the approval of SIPC, to hire and fix the compensation of all personnel (including officers and employees of the debtor and of its examining authority) and other persons (including but not limited to accountants) that are deemed by such trustee necessary for all or any purposes of the liquidation proceeding, and

[(B) to operate the business of the debtor in order to complete open contractual commitments pursuant to subsection (d),

and no approval of the court shall be required therefor.

[(2) TRUSTEE DUTIES. - Except as inconsistent with the provisions of this Act or otherwise ordered by the court, a trustee shall be subject to the same duties as a trustee appointed under section 44 of the Bankruptcy Act, except that a trustee may, but shall have no duty to, reduce to money any securities in the single and separate fund (provided under subsection (c)(2)(B)) or in the general estate of the debtor.[(c) APPLICATION OF BANKRUPTCY ACT. -

[(1) GENERAL PROVISIONS APPLICABLE. - Except as inconsistent with the provisions of this Act and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of chapter X and such of the provisions (other than section 60e) of chapters I to VII, inclusive, of the Bankruptcy Act as section 102 of chapter X would make applicable if an order if the court had been entered directing that bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII, inclusive; except that the court may, for such period as may be appropriate, stay enforcement of, but shall not abrogate, the rights provided in section 68 of the Bankruptcy Act and the right to enforce a valid, non-preferential lien or pledge against the property of the debtor.  For purposes of applying the Bankruptcy Act in carrying out this section, any reference in the Bankruptcy Act to the date of commencement of proceedings under the Bankruptcy Act shall be deemed to be a reference to the filing date (as defined in section 5(b)(4)(B)).

[(2) SPECIAL PROVISIONS. - The following subparagraphs of this paragraph shall apply to a liquidation proceeding in lieu of section 60e of the Bankruptcy Act:

[(A) DEFINITIONS. - Except as otherwise expressly provided in this section, for purposes of this section and the application of the Bankruptcy Act to a liquidation proceeding - [(i) "property" includes cash and securities, whether or not negotiable and all property of a similar character; [(ii) "customers" of a debtor means persons (including persons with whom the debtor deals as principal or agent) who have claims on account of securities received, acquired, or held by the debtor from or for the account of such persons (I) for safekeeping, or (II) with a view to sale, or (III) to cover consummated sales, or (IV) pursuant to purchases, or (V) as collateral security, or [VI] by way of loans of securities by such persons to the debtor, and shall include persons who have claims against the debtor arising out of sales or conversions of such securities, and shall include any person who has deposited cash with the debtor for the purpose of purchasing securities, but shall not include any person to the extent that such person has a claim for property which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor or is subordinated to the claims of creditors of the debtor;

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[(iii) "cash customer" means with respect to any securities or cash, customerse entitled to immediate possession of such securities or cash without the payment of any sum to the debtor, and for purposes of this clause, the same person may be a cash customer with reference to certain securities or cash and not a cash customer with reference to other securities or cash;

[(iv) "net equity" of a customer's account or accounts means the dollar amount thereof determined by giving effect to open contractual commitments completed as provided in subsection (d), by excluding any specifically identifiable property reclaimable by the customer, and by subtracting the indebtedness, it any, of the customer to the debtor from the sum which would have been owing by the debtor to the customer had the debtor liquidated, by sale or purchase on the filing date, all other securities and contractual commitments of the customer, and for purposes of this definition, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers; and

[(v) "securities" has the same meaning as such term has under section 60e of the Bankruptcy Act.

[(B) SINGLE AND SEPARATE FUND. - All property at any time received, acquired, or held by or for the account of a debtor from or for the account of customers except cash customers who are able to identify specifically their property in the manner prescribed in subparagraph (C), and the proceeds of all customers' property transferred by the debtor, including property unlawfully converted, shall constitute a single and separate fund: and all customers except such cash customers shall constitute a single and separate class of creditors, entitled to share ratably in such fund on the basis of their respective net equities as o f the filing date and in priority to all other payments, except that (i) there shall be repaid to SIPC, in priority to all other claims payable from such single and separate fund, the amount of all advances made by SIPC to the trustee to permit the completion of open contractual commitments pursuant to subsection (d), and (ii) to the extent that any other assets of the debtor may be available therefor, or as otherwise ordered by the court, all costs and expenses specified in clauses (1) and (2) of section 64a of the Bankruptcy Act shall be paid from such single and separate fund in priority to the claims of such single and separate class of creditors, and any moneys advanced by SIPC for such costs and expenses shall be recouped as such.  If such single and separate fund shall not be sufficient to pay in full the claims of such single and separate class of creditors, the creditors of such class shall be entitled, to the extent only of their respective unpaid balances, to share in the general estate with general creditors.  In, or for the purpose of, distributing such fund, all property other than cash shall be valued as of the close of business on the filing date.  To the greatest extent considered practicable by the trustee, the trustee shall deliver in payment of claims of customers for their net equities based upon securities held on the filing date in their accounts (after giving effect to open contractual commitments completed as hereinafter provided), securities of the same class and series of an issuer ratably up to the respective amounts which were so held in such accounts.  Any property remaining after the liquidation of a lien or pledge made by a debtor shall be apportioned between his general estate and the single and separate fund in the proportion in which the general property of the debtor and the property of his customers contributed to such lien or pledge.

[(C) SPECIFICALLY IDENTIFIABLE PROPERTY. - The trustee shall return specifically identifiable property to the customers of the debtor, entitled thereto.  No cash or securities at any time received, acquired, or held by or for the account of a debtor from or for the accounts of customers shall for the purposes of this paragraph be deemed to be specifically identified, unless such property remained in its identical form in the debtor's possession until the filing date, or unless such customers on the filing date.  In determining whether property was allocated to or physically set aside for such customers, it shall be sufficient that on the filing date:

[(i) securities are segregated individually, or in bulk for customers collectively;

[(ii) in the case of securities held for the account of the debtor as part of any central certificate service of any clearing corporation or any similar depositary -

[(I) the records of the debtor show or there is otherwise established to the satisfaction of the trustee that all or a specified part of the securities held by such clearing corporation or other similar depositary are held for specified

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

customers, or for customers collectively, and

[(II) such records of the debtor also show or there is otherwise established to the satisfaction of the trustee the identities of the particular customers entitled to receive specified numbers or units of such securities so held for customers collectively; or

[(iii) such property is held for the account of customers of the debtor in such other manner as the Commission, for the protection of customers and other creditors on a fair and equitable basis, by rule or regulation shall have determined to be sufficiently identifiable as the property of such customers.

[If there is any shortage in securities of the same class and series of an issuer so segregated in bulk or otherwise held for customers pursuant to this subparagraph, as compared to the aggregate rights of particular customers to receive securities of such class and series, the respective interests of such customers in such securities of such class and series shall be prorated, without prejudice, however, to the satisfaction of any claim for deficiencies as otherwise provided in this section.

[(D) Where such single and separate fund is not sufficient to pay in full the claims of such single and separate class of creditors, a transfer by a debtor of any property which, except for such transfer, would have been a part of such fund may be recovered by the trustee for the benefit of such fund, if such transfer is voidable or void under the provisions of the Bankruptcy Act. For the purpose of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding. Subject to the provisions of paragraph (D), if any securities received or acquired by a debtor from a cash customer are transferred by the debtor, such customer shall not have any specific interest in or specific right to any securities of like kind on hand on the filing date, but such securities of like kind or the proceeds thereof shall become part of such single and separate fund.

[(d) COMPLETION OF OPEN CONTRACTURAL COMMITMENTS. - The trustee shall complete those contractual commitments of the debtor relating to transactions in securities which were made in the ordinary course of debtor's business and which were outstanding on the filing date -

[(1) in which a customer had an interest, except those commitments the completion of which the Commission shall have determined by rule or regulation not to be in the public interest, or

[(2) in which a customer did not have an interest, to the extent that the Commission shall by rule or regulation have determined the completion of such commitments to be in the public interest.

[For purposes of this subsection (but not for any other purposes of this Act) (i) the term "customer" means any person other than a broker or dealer, and (ii) a customer shall be deemed to have had an interest in a transaction if a broker participating in the transaction was acting as agent for a customer, or if a dealer participating in the transaction held a customer's order which was to be executed as a part of the transaction. All property at any time received, acquired, or held by or for the account of the debtor (except for cash or securities that are specifically identifiable as the property of particular customers and are not the subject of an open contractual commitment), and all property in the single and separate fund, shall be available to complete open contractual commitments pursuant to this subsection. Securities purchased or cash received by the trustee upon completion of any such commitment shall constitute specifically identifiable property of a customer to the extent that such commitment was completed with property which constituted specifically identifiable property of such customer on the filing date, or was paid or delivered by or for the account of such customer to the debtor or the trustee after the filing date.

[(e) NOTICE. - Promptly after his appointment, the trustee shall cause notice of the commencement of proceedings under this section to be published in accordance with a designation of the court, made in accordance with the requirements of section 28 of the Bankruptcy Act, and at the same time shall cause to be mailed a copy of such notice to each of the customers of the debtor as their addresses shall appear from the debtor's books and records. Except as the

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

trustee may otherwise permit, claims for specifically identifiable property (other than securities registered in the name of the claimant or segregated for him in his individual name) or claims payable from property in the single and separate fund or payable with moneys advanced by SIPC, shall not be paid other than from the general estate of the debtor unless filed within such period of time (not exceeding sixty days after such publication) as may be fixed by the court, and no claim shall be allowed after the time specified in section 57 of the Bankruptcy Act.  Subject to the foregoing, and without limiting the powers and duties of the trustee to discharge promptly obligations as specified in this section, the court may make appropriate provision for proof and enforcement of all claims against the debtor including those of any subrogee.  [(f) SIPC ADVANCES TO TRUSTEE. -

[(1) ADVANCES FOR CUSTOMERS' CLAIMS. - In order to provide for prompt payment and satisfaction of the net equities of customers of debtor, SIPC shall advance to the trustee such moneys as may be required to pay or otherwise satisfy claims in full of each customer, but not to exceed $ 50,000 for such customer; except that -

[(A) insofar as all or any portion of the net equity of a customer is a claim for cash, as distinct from securities, the amount advanced by reason of such claim to cash shall not exceed $ 20,000;

[(B) a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity:

[(C) no such advance shall be made by SIPC to the trustee to pay or otherwise satisfy, directly or indirectly, any claims of any customer who is a general partner, officer, or director of the debtor, the beneficial owner of 5 per centum or more of any class of equity security of the debtor (other than a non-convertible stock having fixed preferential dividend and liquidation rights) or limited partner with a participation of 5 per centum or more in the net assets or net profits of the debtor; and

[(D) no such advance shall be made by SIPC to the trustee to pay or otherwise satisfy claims of any customer who is a broker or dealer or bank other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor or from the books and records of a broker or dealer or bank or otherwise, that claims of such broker or dealer or bank against the debtor arise out of transactions for customers of such broker or dealer or bank, in which event, each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.

[To the extent that moneys are advanced by SIPC to the trustee to pay the claims of customers, SPIC shall be subrogated to the claims of such customers with the rights and priorities provided in this section.

[(2) OTHER ADVANCES. - SIPC may advance to the trustee such moneys as may be required to effectuate subsection (b)(1)(A).  SIPC shall advance to the trustee such moneys as (with those available pursuant to subsection (d)) may be required to effectuate subsection (d).

[(g) PAYMENTS TO CUSTOMERS; NO PROOF OF CLAIM REQUIRED. - It shall be the duty of the trustee to discharge promptly, in accordance with the provisions of this section, all obligations of the debtor to each of its customers relating to, or net equities based upon, securities or cash by the delivery of securities or the effecting of payments to such customer (subject to subsection (f)(1), to the extent that such payments are made out of advances from SIPC under such subsection) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee, whether or not such customer shall have filed formal proof of such claim.  For that purpose the court among other things shall -

[(1) in respect of claims relating to securities or cash, authorize the trustee to make payment out of moneys made available to the trustee by SIPC notwithstanding the fact that there shall not have been any showing or determination that there are sufficient funds of the debtor available to make such payment; and

[(2) in respect of claims relating to, or net equities based upon, securities of a class and series of an issuer, which are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee,

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

authorize the trustee to deliver securities of such class and series if and to the extent available to satisfy such claims in whole or in part, with partial deliveries to be made pro rata to the greatest extent considered practicable by the trustee.

[Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute in a form to be determined by the trustee, appropriate receipts, supporting affidavits, and assignments, but shall be without prejudice to the right of any claimant to file formal proof of claim within the period specified in subsection (e) for any balance of securities or cash to which he may deem himself entitled.

[(h) PROOF OF CLAIM BY ASSOCIATES AND OTHERS. - The provisions of this section permitting discharge of obligations of the debtor to pay cash or to deliver securities without formal proof of claim shall not apply to any person "associated" with the debtor as defined in section 3(a)(18) of the 1934 Act, to any beneficial owner of 5 per centum or more of the voting stock of the debtor, or to any member of the immediate family of any of the foregoing.

[(i) REPORTS BY TRUSTEE TO COURT. - All reports to the court by a trustee (other than reports required to be filed pursuant to section 167(3) of the Bankruptcy Act) shall be in such form and detail as, having due regard to the requirements of section 17 of the 1934 Act and the rules and regulations thereunder and the magnitude of items and transactions involved in connection with the operations of a broker or dealer, the Commission shall determine by rules and regulations to present fairly the results of such proceeding as at the dates or for the periods covered by such reports.

[(j) EFFECT OF ACT ON CLAIMS. - Except as otherwise provided in this section, nothing in this section shall limit the right of any person to establish by formal proof such claims as such person may have to payment, or to delivery of specific securities, without resort to moneys advanced by SIPC to the trustee.]

*SEC. 6.  GENERAL PROVISIONS OF LIQUIDATION PROCEEDING.*

*(a) PURPOSES. - The purposes of a liquidation proceeding under this Act shall be -*

*(1) as promptly as possible after the appointment of a trustee in such liquidation proceeding, and in accordance with the provisions of this Act -*

*(A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto as provided in section 8(c)(2); and*

*(B) to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers to the extent provided in this section;*

*(2) to sell or transfer offices and other productive units of the business of the debtor;*

*(3) to enforce rights of subrogation as provided in this Act; and*

*(4) to liquidate the business of the debtor.*

*(b) APPLICATION OF BANKRUPTCY ACT. - To the extent consistent with the provisions of this Act, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the Bankruptcy Act. For purposes of applying the Bankruptcy Act to this Act, any reference in the Bankruptcy Act to the date of commencement of proceedings under the Bankruptcy Act shall be deemed to be a reference to the filing date under this Act.*

*(c) DETERMINATION OF CUSTOMER STATUS. - In a liquidation proceeding under this Act, whenever a person has acted with respect to cash or securities with the debtor after the filing date and in a manner which would have given him the status of a customer with respect to such cash or securities had the action occurred prior to the filing date, and the trustee is satisfied that such action was taken by the customer in good faith and prior to the appointment of the trustee, the date on which such action was taken shall be deemed to be the filing date for purposes of determining the*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*net equity of such customer with respect to such cash or securities.*

*(d) APPORTIONMENT. - In a liquidation proceeding under this Act, any cash or securities remaining after the liquidation of a lien or pledge made by a debtor shall be apportioned between his general estate and customer property in the proportion in which the general property of the debtor and the cash and securities of the customers of such debtor contributed to such lien or pledge.  Securities apportioned to the general estate under this subsection shall be subject to the provisions of section 16(5)(A).*

*(e) COSTS AND EXPENSES OF ADMINISTRATION. - All costs and expenses of administration of the estate of the debtor and of the liquidation proceeding shall be borne by the general estate of the debtor to the extent it is sufficient therefor, and the priorities of distribution from the general estate shall be as provided in the Bankruptcy Act. Costs and expenses of administration shall include payments pursuant to section 8(e) and section 9(c)(1) (to the extent such payments recovered securities which were apportioned to the general estate pursuant to subsection (d)) and costs and expenses of SIPC employees utilized by the trustee pursuant to section 7(a)(2).  All funds advanced by SIPC to a trustee for such costs and expenses of administration shall be recouped from the general estate as a first priority under the Bankruptcy Act.*

*SEC. 7.  POWERS AND DUTIES OF TRUSTEE.*

*(a) TRUSTEE POWERS. - A trustee shall be rested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in bankruptcy under the Bankruptcy Act has with respect to a bankrupt and the property of a bankrupt.  In addition, a trustee may, with the approval of SIPC but without any need for court approval -*

*(1) hire and fix the compensation of all personnel (including officers and employees of the debtor and of its examining authority) and other persons (including accountants) that are deemed by the trustee necessary for all or any purposes of the liquidation proceeding;*

*(2) utilize SIPC employees for all or any purposes of a liquidation proceeding; and*

*(3) margin and maintain customer accounts of the debtor for the purposes of section 8(f).*

*(b) TRUSTEE DUTIES. - To the extent consistent with the provisions of this Act or as otherwise ordered by the court, a trustee shall be subject to the same duties as a trustee in bankruptcy, except that a trustee may, but shall have no duty to, reduce to money any securities constituting customer property or in the general estate of the debtor. In addition, the trustee shall -*

*(1) deliver securities to or on behalf of customers to the maximum extent practicable in satisfaction of customer claims for securities of the same class and series of an issuer; and*

*(2) subject to the prior approval of SIPC but without any need for court approval, pay or guarantee all or any part of the indebtedness of the debtor to a bank, lender, or other person if the trustee determines that the aggregate market value of securities to be made available to the trustee upon the payment or guarantee of such indebtedness does not appear to be less than the total amount to such payment or guarantee.*

*(c) REPORTS BY TRUSTEE 10 COURT. - The trustee shall make to the court and to SIPC such written reports as may be required by the Bankruptcy Act, and shall include in such reports information with respect to the progress made in distributing cash and securities to customers.  Such reports shall be in such form and detail as the Commission determines by rule to present fairly the results of the liquidation proceeding as of the date of or for the period covered by such reports, having due regard for the requirements of section 17 of the 1934 Act and the rules prescribed under such section and the magnitude of items and transactions involved in connection with the operations of a broker or dealer.*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(d) INVESTIGATIONS. - The trustee shall -*

*(1) as soon as practicable, investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business, and any other matter, to the extent relevant to the liquidation proceeding, and report thereon to the court;*

*(2) examine, by deposition or otherwise, the directors and officers of the debtor and any other witnesses concerning any of the matters referred to in paragraph (1);*

*(3) report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate; and*

*(4) as soon as practicable, prepare and submit, to SIPC and such other persons as the court designates and in such form and manner as the court directs, a statement of his investigation of matters referred to in paragraph (1).*

*SEC. 8.  SPECIAL PROVISIONS OF A LIQUIDATION PROCEEDING.*

*(a) NOTICE AND CLAIMS. -*

*(1) NOTICE OF PROCEEDINGS. - Promptly after the appointment of the trustee, such trustee shall cause notice of the commencement of proceedings under this section to be published in one or more newspapers of general circulation in the form and manner determined by the court, and shall cause a copy of such notice to be mailed to each person who, from the books and records of the debtor, appears to hare been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor.  Notice to creditors other than customers shall be given in the manner prescribed by the Bankruptcy Act, except that such notice shall be given by the trustee.*

*(2) STATEMENT OF CLAIM. - A customer shall file with the trustee a written statement of claim but need not file a formal proof of claim, except that no obligation of the debtor to any person associated with the debtor within the meaning of section 3(a)(18) or section 3(a)(21) of the 1934 Act, any beneficial owner of 5 per centum or more of the voting stock of the debtor, or any member of the immediate family of any such person or owner may be satisfied without formal proof of claim.*

*(3) TIME LIMITATIONS. - No claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice under paragraph (1) shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.  Any claim of a customer for net equity which is received by the trustee after the expiration of such period of time as may be fixed by the court (not exceeding sixty days after the date of publication of notice under paragraph (1)), need not be paid or satisfied in whole or in part out of customer property, and to the extent such claim is satisfied from moneys advanced by SIPC, it shall be satisfied in cash or securities (or both) as the trustee determines is most economical to the estate.*

*(4) EFFECT ON CLAIMS. - Except as otherwise provided in this section, and without limiting the powers and duties of the trustee to discharge obligations promptly as specified in this section, nothing in this section shall limit the right of any person, including any subrogee, to establish by formal proof or otherwise as the court may provide such claims as such person may have against the debtor, including claims for the payment of money and the delivery of specific securities, without resort to moneys advanced by SIPC to the trustee.*

*(b) PAYMENTS TO CUSTOMERS. - After receipt of a written statement of claim pursuant to subsection (a)(2), the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*payments to or for the account of such customer (subject to the provisions of subsection (d) and section 9(a)) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee.  For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date.  For purposes of this subsection, the courts shall, among other things -*

*(1) with respect to net equity claims, authorize the trustee to satisfy claims out of moneys made available to the trustee by SIPC notwithstanding the fact that there has not been any showing or determination that there are sufficient funds of the debtor available to satisfy such claims; and*

*(2) with respect to claims relating to, or net equities based upon, securities of a class and series of an issuer which are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee, authorize the trustee to deliver securities of such class and series if and to the extent available to satisfy such claims in whole or in part, with partial deliveries to be made pro rata to the greatest extent considered practicable by the trustee.*

*Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases, and assignments, but shall be without prejudice to any right of a claimant to file formal proof of claim within the period specified in subsection (a)(3) for any balance of securities or cash to which such claimant considers himself entitled.*

*(c) CUSTOMER RELATED PROPERTY. -*

*(1) ALLOCATION OF CUSTOMER PROPERTY. - The trustee shall allocate customer property of the debtor as follows -*

*(A) first, to SIPC in repayment of advances made by SIPC pursuant to section 9(c)(1), to the extent such advances recovered securities which were apportioned to customer property pursuant to section 6(d);*

*(B) second, to customers of such debtor, who shall share ratably in such customer property on the basis and to the extent of their respective net equities;*

*(C) third, to SIPC as subrogee for the claims of customers;*

*(D) fourth, to SIPC in repayment of advances made by SIPC pursuant to section 9(c)(2).*

*Any customer property remaining after allocation in accordance with this paragraph shall become part of the general estate of the debtor.  To the extent customer property and SIPC advances pursuant to section 9(a) are not sufficient to pay or otherwise satisfy in full the net equity claims of customers, such customers shall be entitled, to the extent only of their respective unsatisfied net equities, to participate in the general estate as unsecured creditors.  For purposes of allocating customer property under this paragraph, securities to be delivered in payment of net equity claims for securities of the same class and series of an issuer shall be valued as of the close of business on the filing date.*

*(2) DELIVERY OF CUSTOMER NAME SECURITIES. - The trustee shall deliver customer name securities to or on behalf of a customer of the debtor entitled thereto if the customer is not indebted to the debtor.  If the customer is so indebted, such customer may, with the approval of the trustee, reclaim customer name securities upon payment to the trustee, within such period of time as the trustee determines, of all indebtedness of such customer to the debtor.*

*(3) RECOVERY OF TRANSFERS. - Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of the Bankruptcy Act.  Such recovered property shall be treated as customer property.  For*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.*

*(d) PURCHASE OF SECURITIES. - The trustee shall, to the extent that securities can be purchased in a fair and orderly market, purchase securities as necessary for the delivery of securities to customers in satisfaction of their claims for net equities based on securities under section 7(b)(1) and for the transfer of customer accounts under subsection (f), in order to restore the accounts of such customers as of the filing date. To the extent consistent with subsection (c), customer property and moneys advanced by SIPC may be used by the trustee to pay for securities so purchased. Moneys advanced by SIPC for each account of a separate customer may not be used to purchase securities to the extent that the aggregate value of such securities on the filing date exceeded the amount permitted to be advanced by SIPC under the provisions of section 9(a).*

*(e) CLOSE-OUTS. -*

*(1) IN GENERAL. - Any contract of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers or dealers which is wholly executory on the filing date shall not be completed by the trustee, except to the extent permitted by SIPC rule. Upon the adoption by SIPC of rules with respect to the closeout of such a contract but prior to the adoption of rules with respect to the completion of such a contract, the other broker or dealer shall close out such contract, without unnecessary delay, in the best available market and pursuant to such SIPC rules. Until such time as SIPC adopts rules with respect to the completion or closeout of such a contract, such a contract shall be closed out in accordance with Commission Rule S6(d)-1 as in effect on the date of enactment of this section, or any comparable rule of the Commission subsequently adopted, to the extent not inconsistent with the provisions of this subsection.*

*(2) NET PROFIT OR LOSS. - A broker or dealer shall net all profits and losses on all contracts closed-out under this subsection and -*

*(A) if such broker or dealer shows a net profit on such contracts, he shall pay such net profit to the trustee; and*

*(B) if such broker or dealer sustains a net loss on such contracts, he shall be entitled to file a claim against the debtor with the trustee in the amount of such net loss.*

*To the extent that a net loss sustained by a broker or dealer arises from contracts pursuant to which such broker or dealer was acting for its own customer, such broker or dealer shall be entitled to receive funds advanced by SIPC to the trustee in the amount of such loss, except that such broker or dealer may not receive more than $ 40,000 for each separate customer with respect to whom it sustained a loss. With respect to a net loss which is not payable under the preceding sentence from funds advanced by SIPC, the broker or dealer shall be entitled to participate in the general estate as an unsecured creditor.*

*(3) REGISTERED CLEARING AGENCIES. - Neither a registered clearing agency, which by its rules has an established procedure for the closeout of open contracts between an insolvent broker or dealer and its participants, nor its participants to the extent such participants' claims are or may be processed within the registered clearing agency, shall be entitled to receive SIPC funds in payment of any losses on such contracts, except as SIPC may otherwise provide by rule. If such registered clearing agency or its participants sustain a net loss on the closeout of such contracts with the debtor, they shall have the right to participate in the general estate as unsecured creditors to the extent of such loss. Any funds or other property owed to the debtor, after the closeout of such contracts, shall be promptly paid to the trustee. Rules adopted by SIPC under this paragraph shall provide that in no case may a registered clearing agency or its participants, to the extent such participants' claims are or may be processed within the registered clearing agency, be entitled to receive funds advanced by SIPC in an amount greater, in the aggregate, than could be received by the participants if such participants proceeded individually under paragraphs (1) and (2).*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(4) DEFINITION. - For purposes of this subsection, the term "customer" does not include any person who -*

*(A) is a broker or dealer;*

*(B) had a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, was part of the capital of the claiming broker or dealer or was subordinated to the claims of any or all creditors of such broker or dealer; or*

*(C) had a relationship of the kind specified in section 9(a)(5) with the debtor.*

*A claiming broker or dealer shall be deemed to have been acting on behalf of its customer if it acted as agent for such customer or if it held such customer's order which was to be executed as a part of its contract with the debtor.*

*(f) TRANSFER OF CUSTOMER ACCOUNTS. - In order to facilitate the prompt satisfaction of customer claims and the orderly liquidation of the debtor, the trustee may, pursuant to terms satisfactory to him and subject to the prior approval of SIPC, sell or otherwise transfer to another member of SIPC, without consent of any customer, all or any part of the account of a customer of the debtor. In connection with any such sale or transfer to another member of SIPC and subject to the prior approval of SIPC, the trustee may -*

*(1) waive or modify the need to file a written statement of claim pursuant to subsection (a)(2); and*

*(2) enter into such agreements as the trustee considers appropriate under the circumstances to indemnify any such member of SIPC against shortages of cash or securities in the customer accounts sold or transferred.*

*The funds of SIPC may be made available to guarantee or secure any indemnification under paragraph (2). The prior approval of SIPC to such indemnification shall be conditioned, among such other standards as SIPC may determine, upon a determination by SIPC that the probable cost of any such indemnification can reasonably be expected not to exceed the cost to SIPC of proceeding under section 9(a) and section 9(b).*

*SEC. 9.  SIPC ADVANCES.*

*(a) ADVANCES FOR CUSTOMERS' CLAIMS. - In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $ 100,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property, except that -*

*(1) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is a claim for cash, as distinct from a claim for securities, the amount advanced to satisfy such claim for cash shall not exceed $ 40,000 for each such customer;*

*(2) a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity ;*

*(3) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is satisfied by the delivery of securities purchased by the trustee pursuant to section 8(d), the securities so purchased shall be valued as to the filing date for purposes of applying the dollar limitations of this subsection;*

*(4) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy, directly or indirectly, any net equity claim of a customer who is a general partner, officer, or director of the debtor, a beneficial owner of five per centum or more of any class of equity security of the debtor (other than a nonconvertible stock having fixed preferential dividend and liquidation rights), a limited partner with a participation of five per centum or more in the net assets or net profits of the debtor, or a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the debtor; and*

*(5) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank (which customers are not themselves a broker or dealer or bank or a person described in paragraph (4)), in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.*

*To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this Act, except that SIPC as subrogee may assert no claim against customer property until after the allocation thereof to customers as provided in section 8(c).*

*(b) OTHER ADVANCES. - SIPC shall advance to the trustee -*

*(1) such moneys as may be required to carry out section 8(e); and*

*(2) to the extent the general estate of the debtor is not sufficient to pay any and all costs and expenses of administration of the estate of the debtor and of the liquidation proceeding, the amount of such costs and expenses.*

*(c) DISCRETIONARY ADVANCES. - SIPC may advance to the trustee such moneys as may be required to -*

*(1) pay or guarantee indebtedness of the debtor to a bank, lender, or other person under section 7(b)(2);*

*(2) guarantee or secure any indemnity under section 8(f); and*

*(3) purchase securities under section 8(d).*

SEC. 10.  DIRECT PAYMENT PROCEDURE.

*(a) DETERMINATION REGARDING DIRECT PAYMENTS. - If SIPC determines that -*

*(1) any member of SIPC (including a person who was a member within one hundred eighty days prior to such determination) has failed or is in danger of failing to meet its obligations to customers;*

*(2) one or more of the conditions specified in section 5(b)(1) exist with respect to such member;*

*(3) the claim of each customer of the member is within the limits of protection provided in section 9(a);*

*(4) the claims of all customers of the member aggregate less than $ 250,000;*

*(5) the cost to SIPC of satisfying customer claims under this section will be less than the cost under a liquidation proceeding; and*

*(6) such member's registration as a broker-dealer under section 15(b) of the 1934 Act has been terminated, or such member has consented to the use of the direct payment procedure set forth in this section,*

*SIPC may, in its discretion, use the direct payment procedure set forth in this section in lieu of instituting a liquidation proceeding with respect to such member.*

*(b) NOTICE. - Promptly after a determination under subsection (a) that the direct payment procedure is to be used with respect to a member, SIPC shall cause notice of such direct payment procedure to be published in one or more newspapers of general circulation in a form and manner determined by SIPC, and at the same time shall cause to be*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*mailed a copy of such notice to each person who appears, from the books and records of such member, to have been a customer of the member with an open account within the past twelve months, to the address of such person as it appears from the books and records of such member. Such notice shall state that SIPC will satisfy customer claims directly without a liquidation proceeding, and shall set forth the form and manner in which claims may be presented. A direct payment procedure shall be deemed to commence on the date of first publication under this subsection and no claim by a customer shall be paid or otherwise satisfied by SIPC unless received within the six-month period beginning on such date, except that SIPC shall, upon application within such period, and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.*

*(c) PAYMENTS TO CUSTOMERS. - SPIC shall promptly satisfy all obligations of the member of each of its customers relating to, or net equity claims based upon, securities or cash by the delivery of securities or the effecting of payments to such customer (subject to the provisions of section 8(d) and section 9(a)) insofar as such obligations are ascertainable from the books and records of the member or are otherwise established to the satisfaction of SIPC. For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the date of publication under subsection (b). Any payment or delivery of securities pursuant to this section may be conditioned upon the execution and delivery, in a form to be determined by SIPC, of appropriate receipts, supporting affidavits, releases, and assignments. To the extent moneys of SIPC are used to satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers against the member.*

*(d) EFFECT ON CLAIMS. - Except as otherwise provided in this section, nothing in this section shall limit the right of any person, including any subrogee, to establish by formal proof or otherwise such claims as such person may have against the member, including claims for the payment of money and the delivery of specific securities, without resort to moneys of SIPC.*

*(e) JURISDICTION OF DISTRICT COURTS. - After SIPC has published notice of the institution of a direct payment procedure under this section, any person aggrieved by any determination of SIPC with respect to his claim under subsection (c) may, within six months following mailing by SIPC of its determination with respect to such claim, seek a final adjudication of such claim. The district courts of the United States shall have original and exclusive jurisdiction of any civil action for the adjudication of such claim, without regard to the citizenship of the parties or the amount in controversy. Any such action shall be brought in the judicial district where the head office of the debtor is located. Any determination of the rights of a customer under subsection (c) shall not prejudice any other right or remedy of the customer against the member.*

*(f) DISCONTINUANCE OF DIRECT PAYMENT PROCEDURES. - If, at any time after the institution of a direct payment procedure with respect to a member, SIPC determines, in its discretion, that continuation of such direct payment procedures is not appropriate, SIPC may cease such direct payment procedure and, upon so doing, may seek a protective decree pursuant to section 5. To the extent payments of cash, distributions of securities, or determinations with respect to the validity of a customer's claim are made under this section, such payments, distributions, and determinations shall be recognized and given full effect in the event of any subsequent liquidation proceeding. Any action brought under subsection (e) and pending at the time of the appointment of a trustee under section 5(b)(3) shall be permanently stayed by the court at the time of such appointment, and the court shall enter an order directing the transfer or removal to it of such suit. Upon such removal or transfer the complaint in such action shall constitute the plaintiff's claim in the liquidation proceeding, it appropriate, and shall be deemed received by the trustee on the date of his appointment regardless of the date of actual transfer or removal of such action.*

*(g) REFERENCES. - For purposes of this section, any reference to the trustee in sections 7(b)(1), 8(d), 8(f), 9(a), 16(3) and 16(12) shall be deemed a reference to SIPC, and any reference to the date of publication of notice under section 8(a) shall be deemed a reference to the publication of notice under this section .*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

SEC. [7] 11 SEC FUNCTIONS.

(a) ADMINISTRATIVE PROCEDURE. - Determinations of the Commission, for purposes of making rules [or regulations] pursuant to section 3(e)(3) and section [9(f)] *13(f)* shall be after appropriate notice and opportunity for a hearing, and for submission of views of interested persons, in accordance with the rulemaking procedures specified in section 553 of title 5, United States Code, but the holding of a hearing shall not prevent adoption of any such rule or regulation upon expiration of the notice period specified in subsection (d) of such section and shall not be required to be on a record within the meaning of subchapter II of chapter 5 of such title.

[(d) FINANCIAL RESPONSIBILITY. - Section 15(c)(3) of the Securities Exchange Act of 1934 is amended to read as follows:

["(3) No broker or dealer shall make use of this mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) in contravention of such rules and regulations as the Commission shall prescribe as necessary or appropriate in the public interest or for the protection of inventors to provide safeguards with respect to the financial responsibility and related practices of brokers and dealers including, but not limited to, the acceptance of custody and use of customers' securities, and the carrying and use of customers' deposits or credit balances.  Such rules and regulations shall require the maintenance of reserves with respect to customers' deposits or credit balances, as determined by such rules and regulations."]

SEC. [8.] 12.  EXAMINING AUTHORITY FUNCTIONS.

Each member of SIPC shall file with such member's examining authority, *or collection agent if a collection agent has been designated pursuant to section 13(a)* , such information (including reports of, and information with respect to, the gross revenues from the securities business of such member, including the composition thereof, transactions in securities effected by such member, and other information with respect to such member's activities, whether in the securities business or otherwise including customer accounts maintained, net capital employed, and activities conducted) as SIPC may determine to be necessary or appropriate for the purpose of making assessments under section 4.  The examining authority *or collection agent* shall file with SIPC all or such part of such information (and such compilations and analyses thereof) as SIPC, by bylaw or rule, shall prescribe.  No application, report, or document filed pursuant to this section shall be deemed to be filed pursuant to section 18 of the 1934 Act.

SEC. [9] 13.  FUNCTIONS OF SELF-REGULATORY ORGANIZATIONS

(a) [COLLECTING] *COLLECTION* AGENT. - Each self-regulatory organization shall act as collection agent for SIPC to collect the assessments payable by all members of SIPC for whom such self-regulatory organization is the examining authority, [and members of SIPC who are not members of any self-regulatory organization shall make payment direct to SIPC.  An examining authority shall be obligated to remit to SIPC assessments made under section 4 only to the extent that payments of such assessments are received by such examining authority.] *unless SIPC designates a self-regulating organization other than the examining authority to act as collection agent for any member of SIPC who is a member of or participant in more than one self-regulatory organization.  If the only self-regulatory organization of which a member of SIPC is a member or in which it is a participant is a registered clearing agency that is not the examining authority for the members, SIPC may, nevertheless, designate such registered clearing agency as collection agent for the member or may require that payments be made directly to SIPC.  The collection agent shall be obligated to remit to SIPC assessments made under section 4 only to the extent that payments of such assessment are received by such collection agents.  Members of SIPC who are not members of or participants in a self-regulatory organization shall made payments directly to SIPC* .

(b) IMMUNITY. - No self-regulatory organization shall have any liability to any person for any action taken or omitted in good faith pursuant to section 5(a)(1) *and section 5(a)(2)* .

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(c) INSPECTIONS. - The self-regulatory organization of which a member of SIPC is a member *or in which it is a participant* shall inspect or examine such member for compliance with applicable financial responsibility rules, except [that if a member of SIPC is a member of more than one self-regulatory organization, the Commission, pursuant to section 17(d) of the 1934 Act, shall designate one of such self-regulatory organizations as responsible for the examination of such member for compliance with applicable financial responsibility rules.] *that -*

*(1) it the self-regulatory organization is a registered clearing agency, the Commission may designate itself as responsible for the examination of such member for compliance with applicable financial responsibility rules; and*

*(2) if a member of SIPC is a member of or participant in more than one self-regulatory organization, the Commission, pursuant to section 17(d) of the 1934 Act, shall designate one of such self-regulatory organizations or itself as responsible for the examination of such member for compliance with applicable financial responsibility rules .*

[(f) FINANCIAL CONDITION OF MEMBERS. - Notwithstanding the limitations contained in sections 15A and 19 of the 1934 Act and without limiting its powers under those or other sections of the 1934 Act, the Commission may by such rules or regulations as it determines to be necessary or appropriate in the public interest and to effectuate the purposes of this Act -

[(1) require any self-regulatory organization to adopt any specified alteration of or supplement to its rules, practices, and procedures with respect to the frequency and scope of inspections and examinations relating to the financial condition of members of such self-regulatory organization and the selection and qualification of examiners;

[(2) require any self-regulatory organization to furnish SIPC and the Commission with reports and records or copies thereof relating to the financial condition of members of such self-regulatory organization; and

[(3) require any self-regulatory organization to inspect or examine any members of such self-regulatory organization in relation to the financial condition of such members.  In the case of a broker or dealer who is a member of more than one self-regulatory organization the Commission, to the extent practicable, shall avoid requiring duplication of examinations, inspections, and reports.]

*(f) FINANCIAL CONDITION OF MEMBERS. - The Commission may, by such rules as it determines necessary or appropriate in the public interest and to carry out the purposes of this Act, require any self-regulatory organization to furnish SIPC with reports and records (or copies thereof) relating to the financial condition of members of or participants in such self-regulatory organization .*

SEC. [10.] 14.  PROHIBITED ACTS.

(a) FAILURE TO PAY ASSESSMENTS, ETC. - If a member of SIPC shall fail to file any report or information required pursuant to this Act, or shall fail to pay when due all or any part of an assessment made upon such member pursuant to this Act, and such failure shall not have been cured, by the filing of such report or information or by the making of such payment, together with interest *and penalty* thereon, within five days after receipt by such member of written notice of such failure given by or on behalf of SIPC, it shall be unlawful for such member, unless specifically authorized by the Commission, to engage in business as a broker or dealer.  If such member denies that [he] *it* owes all or any part of the amount specified in such notice, [he] *it* may after payment of the full amount so specified commence an action against SIPC in the appropriate United States district court to recover the amount [he] *it* denies owing.

(b) ENGAGING IN BUSINESS AFTER APPOINTMENT OF TRUSTEE *OR INITIATION OF DIRECT PAYMENT PROCEDURE* . - It shall be unlawful for any broker or dealer for when a trustee has been appointed pursuant to this Act *or for whom a direct payment procedure has been initiated* to engage thereafter in business as a broker or dealer, unless the Commission otherwise determines in the public interest.  The Commission may by order bar or suspend for any period, any officer, director, general partner, owner of 10 per centum or more of the voting securities, or controlling person of any broker or dealer for whom a trustee has been appointed pursuant to this Act *or*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*for whom a direct payment procedure has been initiated* from being or becoming associated with a broker or dealer, if after appropriate notice and opportunity for hearing, the Commission shall determine such bar or suspension to be in the public interest.

[(c) EMBEZZLEMENT, ETC., OF ASSETS OF SIPC. - Whoever steals, unlawfully abstracts, unlawfully and willfully converts to his own use or to the use of another, or embezzles any of the moneys, securities, or other assets of SIPC shall be fined not more than $ 50,000 or imprisoned not more than five years or both.]

(c) *CONCEALMENT OF ASSETS; FALSE STATEMENTS OR CLAIMS.* -

*(1) SPECIFIC PROHIBITED ACTS. - Any person who, directly or indirectly, in connection with or in contemplation of any liquidation proceeding or direct payment procedure -*

*(A) employs and device, scheme, or artifice to defraud;*

*(B) engages in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; or*

*(C) fraudulently or with intent to defeat this Act -*

*(i) conceals or transfers any property belonging to the estate of a debtor;*

*(ii) makes a false statement or account;*

*(iii) presents or uses any false claim for proof against the estate of a debtor;*

*(iv) receives any material amount of property from a debtor;*

*(v) gives, offers, receives, transfers or obtains any money or property, remuneration, compensation, reward, advantage, other consideration, or promise thereof, for acting or forebearing to act;*

*(vi) conceals, destroys, mutilates, falsifies, makes a false entry in, or otherwise falsifies any document affecting or relating to the property or affairs of a debtor; or*

*(vii) withholds, from any person entitled to its possession, any document affecting or relating to the property or affairs of a debtor,*

*shall be fined not more than $ 50,000 or imprisoned for not more than five years, or both.*

*(2) FRAUDULENT CONVERSION. - Any person who, directly or indirectly steals, embezzles, or fraudulently, or with intent to defeat this Act, abstracts or converts to his own use or to the use of another any of the moneys, securities, or other assets of SIPC, or otherwise defrauds or attempts to defraud SIPC or a trustee by any means, shall be fined not more than $ 50,000 or imprisoned not more than five years, or both .*

SEC. [11.] 15.  MISCELLANEOUS PROVISIONS.

(a) * * *

[(b) APPLICATION OF ACT TO FOREIGN MEMBERS. - Except as otherwise provided by rule or regulation of the Commission, if the head office of a member is located, and the member's principal business is conducted, outside the United States, the provisions of this Act shall apply to such member only in respect of the business of such member conducted in the United States.]

[(c)] (*b* ) LIABILITY OF MEMBERS OF SIPC. - Except for such assessments as may be made upon such member

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

pursuant to the provisions of section 4, no member of SIPC shall have any liability under this Act as a member of SIPC for, or in connection with, any act or omission of any other broker or dealer whether in connection with the conduct of the business or affairs of such broker or dealer or otherwise and, without limiting the generality of the foregoing, no member shall have any liability for or in respect of any indebtedness or other liability of SIPC.

[(d)] (*c* ) LIABILITY OF SIPC AND DIRECTORS, *OFFICERS, OR EMPLOYEES*. - Neither SIPC nor any of its Directors, *officers, or employees* shall have any liability to any person for any action taken or omitted in good faith under or in connection with any matter contemplated by the Act.

[(e)] (*d* ) ADVERTISING. - SIPC shall by bylaw [or rule] prescribe the manner in which a member of SIPC may *or shall* display any sign or signs (or include in any advertisement a statement) relating to the protection to customers and their accounts, or any other protections, afforded under this Act.  No member may display any such sign, or include in an advertisement any such statement, except in accordance with such bylaws [and rules].  *SIPC may also by bylaw prescribe such minimal requirements as it considers necessary and appropriate to require a member of SIPC to provide public notice of its membership in SIPC* .

[(f)] (*e* ) SIPC EXEMPT FROM TAXATION. - SIPC, its property, its franchise, capital, reserves, surplus, and its income, shall be exempt from all taxation now or hereafter imposed by the United States or by any State or local taxing authority, except that any real property and any tangible personal property (other than cash and securities) of SIPC shall be subject to State and local taxation to the same extent according to its value as other real and tangible personal property is taxed.  Assessments made upon a member of SIPC shall constitute ordinary and necessary expenses in carrying on the business of such member for the purpose of section 162(a) of the Internal Revenue Code of 1954.  The contribution and transfer to SIPC of funds or securities held by any trust established by a national securities exchange prior to January 1, 1970, for the purpose of providing assistance to customers of members of such exchange, shall not result in any taxable gain to such trust or give rise to any taxable income to any member of SIPC under any provision of the Internal Revenue Code of 1954, nor shall such contribution or transfer, or any reduction in assessments made pursuant to this Act, in any way affect the status, as ordinary and necessary expenses under section 162(a) of the Internal Revenue Code of 1954, of any contributions made to such trust by such exchange at any time prior to such transfer.  Upon dissolution of SIPC, none of its net assets shall inure to the benefit of any of its members.

[(g)] (*f* ) SECTION 20(a) of 1934 ACT NOT TO APPLY. - The provisions of subsection (a) of section 20 of the 1934 Act shall not apply to any liability under or in connection with this Act.

[(h)] (*g* ) SEC STUDY OF UNSAFE OR UNSOUND PRACTICES. - Not later than twelve months after the date of enactment of this Act, the Commission shall compile a list of unsafe or unsound practices by members of SIPC in conducting their business and report to the Congress (1) the steps being taken under the authority of existing law to eliminate those practices and (2) recommendations concerning additional legislation which may be needed to eliminate those unsafe or unsound practices.

[SEC. 12.  DEFINITIONS.

[For purposes of this Act:

[(1) SELF-REGULATORY ORGANIZATION. - The term "self-regulatory organization" means a national securities exchange or a national securities association registered pursuant to subsection (b) of section 15A of the 1934 Act.

[(2) FINANCIAL RESPONSIBILITY RULES. - The term "financial responsibility rules" means the rules and regulations pertaining to financial responsibility and related practices which are applicable to a broker or dealer, as prescribed by the Commission under subsection (c)(3) of section 15 of the 1934 Act or prescribed by a national securities exchange.

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

[(3) EXAMINING AUTHORITY. - The term "examining authority" means, with respect to any member of SIPC, the self-regulatory organization which inspects or examines such member of SIPC or the Commission if such member of SIPC is not a member of any self-regulatory organization.]

*SEC. 16.  DEFINITIONS.*

*For purposes of this Act, including the application of the Bankruptcy Act to a liquidation proceeding:*

*(1) BANKRUPTCY ACT. - The term "Bankruptcy Act" means, except where the context indicates otherwise, those provisions of the Bankruptcy Act relating to ordinary bankruptcy (chapters I through VII) as now in effect or as amended from time to time, and includes the rules of bankruptcy procedure promulgated with respect to such provisions, but does not include the provisions of section 60e of the Bankruptcy Act, relating to stockbroker bankruptcies.*

*(2) COMMISSION. - The term "Commission" means the Securities and Exchange Commission.*

*(3) CUSTOMER. - The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purose of purchasing securities, but does not include -*

*(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or*

*(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground might have existed for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.*

*(4) CUSTOMER NAME SECURITIES. - The term "customer name securities" means securities which were held for the account of a customer on the filing date by or on behalf of the debtor and which on the filing date were registered in the name of the customer, or were in the process of being so registered pursuant to instructions from the debtor, but does not include securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form.*

*(5) CUSTOMER PROPERTY. - The term "customer property" means cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted.  The term "customer property" includes -*

*(A) securities held as property of the debtor to the extent that the inability of the debtor to meet its obligations to customers for their net equity claims based on securities of the same class and series of an issuer is attributable to the debtor's noncompliance with the requirements of section 15 (c)(3) of the 1934 Act and the rules prescribed under such section;*

*(B) resources provided through the use or realization of customer's debit cash balances and other customer-related debit items as defined by the Commission by rule;*

*(C) any cash or securities apportioned to customer property pursuant to section 6(d); and*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

(D) any other property of the debtor which, upon comliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers, unless the trustee determines that including such property within the meaning of such term would not significantly increase customer property.

(6) DEBTOR. - The term "debtor" means a member of SIPC with respect to whom an application for a protective decree has been filed under section 5(a)(3) or a direct payment procedure has been instituted under section 10(b).

(7) EXAMINING AUTHORITY. - The term "examining authority" means, with respect to any member of SIPC (A) the self-regulatory organization which inspects or examines such member of SIPC, or (B) the Commission if such member of SIPC is not a member of or participant in any self-regulatory organization or if the Commission has designated itself examining authority for such member pursuant to section 13(c).

(8) FILING DATE. - The term "filing date" means the date on which an application for a protective decree is filed under section 5(a)(3), except that -

(A) if a petition was filed before such date by or against the debtor under the Bankruptcy Act, or under chapters X or XI of such Act, as now in effect or as amended from time to time, the term "filing date" means the date on which such petition was filed;

(B) if the debtor is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term "filing date" means the date on which such proceeding was commenced; or

(C) if the debtor is the subject of a direct payment procedure or was the subject of a direct payment procedure discontinued by SIPC pursuant to section 10(f), the term "filing date" means the date on which notice of such direct payment procedure was published under section 10(b).

(9) FOREIGN SUBSIDIARY. - The term "foreign subsidiary" means any subsidiary of a member of SIPC which has its principal place of business in a foreign country or which is organized under the laws of a foreign country.

(10) GROSS REVENUES FROM THE SECURITIES BUSINESS. - The term "gross revenues from the securities business" means the sum of (but without duplication) -

(A) commissions earned in connection with transactions in securities effected for customers as agent (net of commissions paid to other brokers and dealers in connection with such transactions) and markups with respect to purchases or sales of securities as principal;

(B) charges for excuting or clearing transactions in securities for other brokers and dealers;

(C) the net realized gain, if any, from principal transactions in securities in trading accounts;

(D) the net profit, if any, from the management of or participation in the underwriting or distribution of securities;

(E) interest earned on customers' securities accounts;

(F) fees for investment advisory services (except when rendered to one or more registered investment companies or insurance company separate accounts) or account supervision with respect to securities;

(G) fees for the solicitation of proxies with respect to, or tenders or exchanges of, securities;

(H) income from service charges or other surcharges with respect to securities;

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

*(I) except as otherwise provided by rule of the Commission, dividends and interest received on securities in investment accounts of the broker or dealer;*

*(J) fees in connection with put, call, and other option transactions in securities;*

*(K) commissions earned from transactions in (i) certificates of deposit, and (ii) Treasury bills, bankers acceptances, or commercial paper which have a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof, the maturity of which is likewise limited, except that SIPC shall by bylaw include in the aggregate of gross revenues only an appropriate percentage of such commissions based on SIPC's loss experience with respect to such instruments over at least the preceding five years; and*

*(L) fees and other income from such other categories of the securities business as SIPC shall provide by bylaw.*

*Such term does not include revenues received by a broker or dealer in connection with the distribution of shares of a registered open end investment company or unit investment trust or revenues derived by a broker or dealer from the sale of variable annuities or from the conduct of the business of insurance.*

*(11) LIQUIDATION PROCEEDING. - The term "liquidation proceeding" means any proceeding for the liquidation of a debtor under this Act in which a trustee has been appointed under section 5(b)(3).*

*(12) NET EQUITY. - The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by -*

*(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus*

*(B) any indebtedness of such customer to the debtor on the filing date; plus*

*(C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 8(a)).*

*In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.*

*(13) PERSONS REGISTERED AS BROKERS OF DEALERS - The term "persons registered as brokers or dealers" includes any person who is a members of a national securities exchange.*

*(14) PROTECTIVE DECREE. - The term "protective decree" means a decree, issued by a court upon application of SIPC under section 5(a)(3), that the customers of a member of SIPC are in need of the protection provided under this Act.*

*(15) SECURITY. - The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate, pre-organization certificate or subscription transferable share, voting trust certificate, certificate of deposit, certificate of deposit for a security, any investment contract or certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease (if such investment contract or interest is the subject of a registration statement with the Commission pursuant to the provisions of the Securities Act of 1933), any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase or sell any of the foregoing, and any other instrument commonly known as a security.  The term "security" does not include any currency, or any commodity or related contract or futures contract, or any warrant or right to subscribe to or purchase or sell any of the foregoing .*

HOUSE OF REPRESENTATIVES REPORT No. 95-746; 95TH CONGRESS 1st Session; H.R. 8331

SECTION 3 OF THE SECURITIES EXCHANGE ACT OF 1934

DEFINITIONS AND APPLICATION OF TITLE

SEC. 3 (a) When used in this title, unless the context otherwise requires -

(1) * * *

*(40) The term "financial responsibility rules" means the rules and regulations of the Commission or the rules and regulations prescribed by any self-regulatory organization relating to financial responsibility and related practices which are designated by the Commission, by rule or regulation, to be financial responsibility rules .*