Stanley Dale Cohen
41 Park Avenue Suite 17-F
New York, NY 10016
(212) 686-8200
Fax 686-4900
Email S@StanCohen.com

Hearing Date: February 2, 2010
Hearing Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,

  v.

BERNARD MADOFF INVESTMENT
SECURITIES LLC,
        Defendant.
------------------------------------------------------------X
In re:
       BERNARD L. MADOFF,
           Debtor.
------------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

**Claimants:**
**Lee Mellis**
**Lee Mellis (IRA)**
**Jean Pomerantz T.O.D. Bonita Savitt**

------------------------------------------------------------X

OBJECTING CLAIMANTS RESPONSE TO THE MOTION

Stanley Dale Cohen, an attorney duly licensed to practice before the Courts of the State

of New York and this Honorable Court hereby objects to the position of the Trustee in

denying the claims of the Claimants with respect to SIPC and in particular to the

Trustee's argument with respect to "Net Equity".

1. The Trustees position is incorrect and/or is not based in equity as regards those in the positions of the claimants herein.

### THE CLAIMANTS ARE NOT INSIDERS AND AS SUCH ARE NOT RESPONSIBLE FOR THE LOSSES TO OTHERS AS STATED IN THE POSITION OF THE TRUSTEE

2. The claimants here and those similarly situated, are not related to Madoff or any business person within the insiders (as that term may be defined under bankruptcy law or debtor creditor law) of the Madoff organization.

3. As such these claimants cannot be said to have had any knowledge of the fraud that has now been revealed to have been perpetrated upon them and others during their long terms as investors in the Madoff funds.

4. The Trustee takes the position that "Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account was taken from other customers and given to you.

5. It is respectfully requested that the Trustee's position should not be countenanced by this Court of equity, as regards the insurance claims to be paid by SIPC in such instances as those who have been victimized by the fraud of those in trust, who have been licensed by the United States government and the State and local governments to perform the tasks and have the positions of trust based upon such licenses.

6. The United States government under the auspices of SIPC owes the victims of fraud the full amount of the claim on the date of the claim, only limited by the Congress's authorized limit.

7. If the Trustee, in his representation of the United States Government and SIPC make claim that the claimants are involved in the fraud then the position of the Trustee would be both understandable and equitable.

8. But the Trustee does not make such claim as his investigation would otherwise have stated such to this Court and to the claimants. The Trustee cannot state that the claimants here are perpetrators of the fraud we have all learned about.

9. These victims of the fraud require a return of the insured amount to the extent of the full SIPC responsibility.

## THE "NET EQUITY" ARGUMENT IS INEQUITABLE IN CIRCUMSTANCES AS THESE CLAIMANTS ARE IN

10. The Claimants here are of retirement age and have been since their investments in the Madoff funds. As such they have little or no other income.

11. As with most other investors into the funds, these claimants invested in these funds from the outset and reinvested over time because of the imprimatur of the United States Government in not finding any wrongdoing in the actions of the Madoff business over the years.

12. Moreover, these particular investors were under guidance of rules with respect to withdrawals of income annually based upon laws set up by the United States government with respect to tax deferred accounts of various natures. These

claimants were required to withdraw funds, pay taxes and then use or reinvest funds, net of taxes.

13. Therefore the withdrawals of the funds over the years was in large part based upon the victims of this fraud being law abiding citizens following the rule of law as set up by the same government that set up the insurance funds of SIPC to protect investors against fraud and the same government that set up agencies to overlook and protect investors under the auspices of the SEC. The SEC as reported in a recent study convened by the United States government did not do their job in protecting investors before and during the years of the fraud, and so investors lost billions of dollars. But now the Trustee is creating a position that will allow another agency of the United States Government to not do its job in protecting investors from the fraud after the fact.

14. This Court, in its role, should not condone or allow the legislative and executive branches of the United States government to hurt its citizenry to the extent it has. This Court, in making rulings on the Trustee's arguments must say that insurance must be paid to victims based upon the insurance cap of $500,000.00

15. This Court should not accept the net equity argument proffered by the Trustee. At the least this Court should not accept the net equity argument with respect to funds received in accordance with the law of distribution of retirement funds.

THE TRUSTEE'S POSITION VICTIMIZES ONCE AGAIN CERTAIN VICTIMS OF MADOFF'S FRUAD WHILE ASSISTING OTHER VICTIMS: SUCH AS THOSE INVESTORS WHO (1) HAVE HAD THE LUXURY TO NOT NEED TO TAKE OUT FUNDS FROM MADOFF BECAUSE OF OTHER INCOME THEY HAVE HAD OR (2) BECAUSE THEY WERE NOT REQUIRED TO DO SO, OR (3)

BECAUSE THEY WERE ONLY IN THE FUND FOR SHORT
AMOUNTS OF TIME.

16. The "net equity" argument fails to be equitable because of the inequities of where the victims of the fraud were in their lives. Some were rich some were not so rich. Some were able to invest and continue to invest based upon trusts that could not be invaded or in accounts where recoupment was not the investment strategy. So those who were fortunate enough to roll over their funds for the past 18 years are not penalized and have a windfall as versus those who did not have such luxury or even such a plan.

17. The "net equity" argument fails to be equitable when retirement funds were invested and investors turned age 70 at which time the law requires withdrawals. Those investors took funds (from what was thought to be income or invasion of principal) and paid taxes on the amounts withdrawn. The claimants are such persons.

18. The "net equity" argument fails to be equitable when funds are invested by those in retirement wherein the funds of a lifetime of work are now put to use as an investment tool, so that wherever the funds may have been invested the principal would be protected and the retirees planned to pay for the day to day bills (and luxuries) from the income flowing from their "nest egg" saved over their lifetime of work. The Trustee's position now after the fact says that they were living on zero percent return on investment and had actually withdrawn all their income to the extent that insurance offered by law is not available to this small class of investors.

19. The "net equity" argument fails to be equitable when funds are invested by persons who have no other income. Many persons who the Trustee has allowed to be paid under SIPC obtained money from the insurance offered because they were working and earning incomes elsewhere and did not need the funds withdrawn. Many persons who the Trustee has allowed to be paid under SIPC obtained money from insurance offered because they had other trusts and other funds available so they did not need to withdraw from the Madoff funds. These claimants only withdrew what was required under law or what they understood to be interest on their principal (not principal) and made those withdrawals because they believed that their principal was in tact. Now it is true that a scandal has occurred and their principal is lost. That is what insurance provided by SIPC is for. This Trustee does not have the right to determine that all these years they have been living on their principal. That is ex post facto re-thinking of their claims especially with respect to those who were more fortunate and did not take the funds from Madoff because they had them available elsewhere or just did not need them.

20. The "net equity" argument fails to be equitable when funds are invested by persons just a short time ago. The claimants here, as with many other similarly situated investors were in the Madoff fund for many years. An investor who invested for less than six years could who committed to a plan to withdraw all profit and leave in all principal would be protected to the extent of his principal as he would have net equity and therefore have an insurance claim limited by the $500,000 as set forth by SIPC. But these claimants who have been in the fund for

years have taken out required funds and interest and believed their principal is still there (at least to the extent of SIPC protection).

21. To make it even worse, over the last few years, Mr. Mellis was repaid on an investment he made with much of his withdrawals and re-invested those returned funds into Madoff. However, the Trustee does not look at each investment; he looks at the portfolio, since the original investment in the fund in 1992. However, the investments by Mr. Mellis in the last years of the fund are not accounted differently than the first funds. His investment of more than $100,000 within ninety days of the collapse of the fund was money he just threw away according to the Trustee.

22. The Trustee does not credit Mr. Mellis even with that last investment or the several over the last year of the fund. The inequity can be seen by the example of the hypothetical investment of the Honorable Burton Lifland over the last five years of the fund. If Mr. Lifland had made an investment of $1,000,000 five years ago in hopes of gaining interest on that principal amount. And then taking interest at 10% per year Mr. Lifland had received $500,000 back during the five years before the fund collapsed, then the Trustee would grant Mr. Lifland the return of the SIPC funds. If Mr. Lifland had invested that same amount ten years ago, and received the same 10% over the ten years, then Mr. Lifland, according to the Trustee's net equity position would receive no SIPC claim. Why? The only difference is time in the fund. That is not an equitable or defensible position. Yet the Trustee would have the Court grant such a position as that by the court ordering that position as proper. Moreover, in the case of Mr. Mellis when he did

invest over the last few years, he did not know that he was returning principal taken, he understood he was re-investing money for future growth. The Trustee's position is not proper under any of these circumstances.

### THE TRUSTEE DOES NOT TAKE INTO CONSIDERATION A BASIS FOR CAPITALISM AND INVESTMENT OPPORTUNITY WHICH IS THE TIME USE OF FUNDS.

23. The "net equity" argument fails to be equitable because when funds are invested anywhere it is expected that the funds will grow over time. There are certainly risks associated with every investment but time is not factored into the risk. You can put money in a bank and earn 2% per year. If you had invested that amount 20 years ago you would have 40% return. If you had invested that money two years ago you would have 4% return. The Trustees position fails to adjust for time, and therefore is inequitable.

24. The Trustee can certainly argue that another character of capitalist investment is risk and reward and that Madoff's return, despite popular belief, had to be risky. However, that argument does not interfere with the basis of the time use of money. And in this case the risk might have been there, even though un-assumed, for all those years, but the risk came from a fraud and that is a covered incident to be paid by SIPC.

25. The Trustee's argument is that after all these years he is allowed to determine that the claimant's principal, held for as much as almost twenty years was actually returned without knowing it.

## THE TRUSTEE RELIES ON RECORDS TO PROVE NET EQUITY BUT VICTIMS ARE NOT ALLOWED TO RELY ON THOSE SAME RECORDS

26. The trustee was appointed after a massive fraud was discovered. He commandeered the office of the fraudulent group and sequestered the records. Then he used what we would assume were the finest minds to review those records, not to uncover the assets and how the fraud was undertaken over such a long period of time, which was the thought of the Madoff victims now having a court appointed champion, but no…he had his staff at the cost of tens of millions of dollars use estate money to determine that some people had been implicitly stealing from others. That audacious conclusion reeks from the central theme of the Trustee's argument before this court. A victim now penniless, selling his home and car so he can pay his bills, is now a thief because the Trustee has brilliantly come up with the theory of net equity.

27. One of the most ironic elements of the Trustee's inequitable position is that he has used the records provided by the Madoff fund to prove who shall live and who shall die, I mean who has equity and who has none.

28. Yet, these very same victims who believed, all along, from those very same records, that their principal was being safely held, and that they were living on income, and that reinvestments were being made for their benefit, not for the benefit of the newer members of the fund or the younger members of the fund, or the richer members of the fund, these victims are being told that their equity has been exhausted. Good bye. No insurance, no value, no champion. The principal whether invested 20 years ago or 1 year ago (or the day before the collapse), is

gone because according the perfect record keeping systems of Mr. Madoff, the claimants have received return of investment, not return on investment.

29. The Trustee in making that determination gives a list of deposits and a list of withdrawals all of which came from Madoff. In prior dealings with a paralegal at the Trustee's firm, we could not even show all deposits because of the age, and so the Trustee carefully went through these records, which he obtained because of the admitted fraud in every element of them, and he determines that the fraudulent records are not fraudulent with respect to deposits and withdrawals only fraudulent with respect to interest and principal.

### THE COURT MUST KEEP THE WORLD UPSIDE UP AND NOT ALLOW THIS TRUSTEE AND HIS RESPECTED ADVISORS THE ABILITY TO CREATE A NEW WORLD THAT IS UPSIDE DOWN

30. It is up to this Honorable Court, not to assist the government in determining that what was thought to be is not and what was unthinkable is.

31. It is up to this Honorable Court to determine equity based upon reasonableness, obligation and long standing belief that every man has.

32. This Court knows that people invest their hard earned income for future purposes.

33. This Court understands that after working a lifetime that our elderly citizens are entitled to retire and have their lifetime of earnings work for them to whatever extent they were able to accumulate those earnings.

34. This Court knows that when a retiree reaches age 70 there are mandatory withdrawals he must make under the law of IRA and 401(k) and/or other retirement accounts.

35. This Court is aware that when planning for and during retirement one tries to live on interest maintaining principal for emergencies or estate plans.

36. This Court cannot change the history of these claimants and the world in which they lived because a trustee determined that what they thought was wrong and that they have taken from others.

37. This Court must determine that SIPC must pay for all claims to the extent of the cap under the SIPC provisions.

38. This Court cannot compound the strains of the losses to these claimants and all those similarly situated, both financial and (maybe even more so) emotional, and determine that principal was used over their years in retirement and not interest. That they had invested in a fund which returned no interest all those years despite the statements saying otherwise. And that now there is no insurance for them because the strained and inequitable arguments put forth by this particular trustee, is condoned and determined to be right by this Court.

39. The Honorable Burton Lifland is too much a man of equity to allow this to be his legacy. We know better. The claimants here and the claimants similarly situated count on the fairness of this Court and await the determination of this Court to turn this world right-side up again for these claimants.

WHEREFORE, it is respectfully requested that the Court deny the motion of the Trustee with respect to his interpretation of "net equity" and order the Trustee to pay the claimants and all those similarly situated the full proceeds of SIPA funds in accordance with the Principal invested to the extent of the cap under that law,

together with costs and interest from June 1, 2009 (the date of the hardship application), and that the Court grant such other and further relief which as to it seems just and proper.

DATED: NEW YORK, NEW YORK
NOVEMBER 13, 2009

_____
Stanley Dale Cohen (3466)
41 Park Avenue Suite 17-F
New York, NY 10016
(212) 686-8200

To: Irving H. Picard, Trustee
   C/O Baker & Hostetler LLP
   45 Rockefeller Plaza
   New York, NY 10111

   Mark S. Mulholland
   Ruskin Moscou Faltischek,
   1425 RexCorp Plaza, East Tower, 15th Floor
   Uniondale, New York 11556

   NTC & CO.
   FBO Lee Mellis (95508)
   PO BOX 173859
   Denver, CO 80217

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,      Adv. Pro. No. 08-01789 (BRL)

    v.

BERNARD MADOFF INVESTMENT
SECURITIES LLC,
        Defendant.
------------------------------------------------X
In re:
       BERNARD L. MADOFF,
         Debtor.
------------------------------------------------X

**Claimants:**
**Lee Mellis**
**Lee Mellis (IRA)**
**Jean Pomerantz T.O.D. Bonita Savitt**

------------------------------------------------X

    Stanley Dale Cohen, an attorney duly licensed to practice before the Courts of the State of New York and this Honorable Court hereby affirms that on November 13, 2009 I served the within OBJECTING CLAIMANTS RESPONSE TO THE MOTION by mailing a copy to each of the following persons at the last known address set forth after each name below.

    Irving H. Picard, Trustee
    C/O Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, NY 10111

    Mark S. Mulholland
    Ruskin Moscou Faltischek,
    1425 RexCorp Plaza, East Tower, 15th Floor
    Uniondale, New York 11556

    NTC & CO.
    FBO Lee Mellis (95508)
    PO BOX 173859
    Denver, CO 80217