**THIS IS A PROTEST OF THE DENIAL OF CLAIM NOW KNOWN AS BANKRUPCY CASE #1789**

ROBERT F GAMMONS
38 Mill Hill Rd
Southport, CT 06890
203-292-6163

REFERENCE
BANKRUPCY
CASE 08-1789 (BRL)

RECEIVED NOV 16 2009 U.S. BANKRUPTCY COURT, SDNY

TO: BURTON R. LIFLAND, HON. JUDGE OF BANKRUPCY COURT OF SOUTHERN NEW YORK.

YOUR HONOR,

I WOULD FIRST LIKE TO APOLOGIZE FOR THIS DOCUMENTS APPEARANCE. I AM IN MY 90TH YR. & MOSTLY BLIND. HENCE I CANNOT SEE TO READ OR SEE WHAT I WRITE. HOWEVER, I HAVE A BIG SCREEN THAT IS VERY HELPFULL, ALLOWING ME TO SEE ONE OR TWO WORDS AT A TIME. THIS MESSAGE IS USING THE BIG SCREEN NOW. Tk YOU.

FIRST, I WOULD LIKE, YOUR HON., TO STATE THAT I AM NOT LOOKING FOR A HEARING AT THIS TIME BECAUSE THE MAIN ISSUE WITH THE TRUSTEE'S DENIAL IS CENTERED AROUND THE BIG QUESTION OF, "WHAT IS "NET EQUITY" IN THIS CASE? IF THE TRUSTEE'S INTERPRETATION HOLDS, COME FEBRUARY'S COURT ORDER, MY APPROACH, IF ANY, WILL BE ENTIRELY DIFFERENT. HENCE, I WOULD HOPE THE COURT WILL ISSUE A "HOLD" OR "A STAY" SO THAT MY HEARING WOULD OR WILL BE IN THE CONTEXTS OF THE FINAL DEFINITION OF "NET EQUITY".

→ I WILL, HOWEVER, INDICATE WHY I AM PROTESING THE TRUSTEES' DENIAL AS IT MIGHT, I BELIEVE, TO THINK A BIT TO SEE A REASON TO ISSUE A "HOLD" OR A "STAY" TO KEEP MY PROTEST ALIVE UNTIL THE DEFINITION OF "NET EQUITY" IS AVAILABLE.

THE TRUSTEE DID SAY THAT MY CLAIM, ALTHOUGH "DEAD" WITH A DENIAL, WILL BE RESURRECTED IF THE FINAL DEFINITIONS "NET EQUITY", VARIES FROM HIS INTERPRETATION AS APPIED TO MY CLAIM. IT IS POSSIBLE THAT MY CLAIM COULD BE LOST AMONG THE MOUNTAINS OF PAPERS & FILES THAT GROUP HAS TO DEAL WITH. I WOULD BE MUCH LESS NARUVOUS IF THIS OLD MAN (me) HAD AN ISSUED SOMETHING PERTINENT LIKE A COURT - ORDER. Tk. YOU.

AS TO A PROPER FORMAT, THE TRUSTEE SAID "PROPER" FORMAT IS NECESSARY, BUT NEGLECTED TO DEFINE THE FORM OR WHERE I COULD FIND THE SPECIFICATIONS. BUT I AM ASSUMING A VERY BRIEF INDICATION OF THE ITEMS I OPPOSE, WITH A SIDE BY SIDE, VERY BRIEF REASON WHY I DISAGREE WILL FIT THE BILL. DETAILS AVAILABLE IN CASE OF NEED.

| TRUSSTEE READY FOR DANIEL | CUSTOMER (VICTIM) RESPONSE |
|---|---|
| 1. "NO SECURITIES EVER PURCHASED" | • "AGREED"; HOWEVER, NOT PERTINENT. NO ONE KNEW THIS IN WASH., OR ALBANY, OR IN N.Y. CITY!! S.E.C. ?? |
| 2. "ALL PROFITS REPORTED TO ME WERE "FICTICIOUS." | • DISAGREE. "PROFITS" WERE NEVER REPORTED TO ME. ONLY "MKT VALUE OF SECURITIES LISTED" WERE REPORTED. NO PROFITS WERE CLAIMED, NOT PERTINENT |
| 3. TOTAL OF $348,000 WITHDRAWN | • DISAGREED. WITHDRAWALS WERE CLOSER TO $300,000. HOWEVER, THIS IS NOT PERTINENT AT THIS TIME. TRUSTEE PROBABLY USED MADDOFF FILES RATHER THAN THE CUSTODIAN. |
| 4. NO PROFITS WERE REPORTED TO YOUR ACC'T. HENCE, NO POSITIVE "NET EQUITY" WAS FORMED BEYOND THE DEPOSITS MADE. | • DISAGREED. OTHER THAN "PROFITS" CAN ENHANCE EQUITY. Things. FOR EXAMPLES: GIFTS, CHARITABLE CONTRIBS; GOV'T GRANTS, PURCHASE OF NEW STOCK ISSUES BY OUTSIDERS. MADOFF'S ADD-ONS WERE GIFTS TO HIS FAMILY; HE HAD TO LOOK "FAIR & SQUARE". IT WAS REAL MONEY, PER THE CUSTODIAN AND ITS BANK, TRUST INDUSTRIAL WHO WIRED THE MONEY IN THE LAST 3-4 YRS. REAL MONEY. |
| 5. MADOFF PAID WITH OTHER PEOPLE'S MONEY. | • AGREED; HOWEVER, BANKS PAY OUT MONEY FOR A NEW MORTGAGE. MONEY IS FONGIBLE. THE MONEY PD TO THE MORTGAGEE MAY HAVE COME IN THE DAY BEFORE AS A SAVINGS ACC'T CUSTOMER. NOT PERTINENT. THIS ITEM IS NOT PERTINENT. |

NOTES FOR PREVIOUS ITEMS

ITEM #1: "NO SECURITIES EVER PURCHASED (PER TRUSTEE) AGREED! BUT WHY BRING THIS UP? FOR 20 YRS OR SO, NOBODY BUT MADOFF KNEW THIS, OR SO THEY ALL SAY! 6 VISITS BY THE S.E.C. DID NOT REVEAL THIS FACT! WHY MAKE IT SOUND AS THOUGH I AM GUILTY OF SOMETHING IN NOT KNOWING THERE WERE NO STOCKS BOUGHT? WE ARE VICTIMS NOT "PERPS".

FURTHER, THE TRUSTEE GOES ON TO SAY THAT HIS DENIAL OF MY CLAIM DOES NOT ELIMINATE HIS RIGHTS AGAINST ME.!? HE THEREBY TELLS ME MY CLAIM IS DEAD (EXCEPT FOR THE ISSUE OF "WHAT IS NET EQUITY"), BUT HE CAN RAISE MY CLAIM FROM THE DEAD AND ACCUSE ME OF SOMETHING NOT NOW REVEALED! VERY ONE-SIDED.

ITEM #2: ("ALL PROFITS REPORTED TO ME WERE FICTICIOUS") HE DID NOT SAY PROFITS FROM WHAT. HE MAY MEAN PROFIT FROM MY DEPOSITS? BUT WHO KNOWS? IN ANY CASE, HIS PEOPLE APPARENTLY HAVE NOT STUDIED THE MADOFF REPORTS. NOWHERE DOES MADOFF USE THE WORD "PROFIT." HE MERELY STATES, "MKT. VALUE OF SECURITIES."

AS I SAY IN ITM #2 PREVIOUSLY, MANY THINGS OTHER THAN PROFITS CAN ENHANCE "EQUITY". I STATE EXAMPLES ON PAGE 2, ITEM 2. MADOFF'S REPORTS VALUES STATEMENTS WERE GIFTS TO FAMILY, & HE HAD TO DO THE SAME WITH US VICTIMS. GIFTS ENHANCE EQUITY EVERY TIME, ON ANY BAL. SHEET, AND THIS WAS REAL MONEY - NOT FICTICIOUS. "FICTICIOUS" MEANS NON-EXISTING. THIS MONEY I REC'D WAS REAL.

#30 (TOTAL WITHDRAWAL WAS $348,000) DISAGREE. THE CORRECT AMOUNT IS ABOUT $300,000. APPARENTLY THE TRUSTEE'S PEOPLE USED MADOFF FILES. I RECEIVED MONEY ONLY FROM THE CUSTODIAN, FIZER SERV, INC.   BANK, TRUST INDUSTRIAL,   REQUIRED BY LAW. NEVER FROM MADOFF. MADOFF AND FIZER DID EXCHANGE ERRORS, AND SOME CORRECTING CHECKS MAY HAVE CROSSED BETWEEN THEM, BUT MY FINANCIAL PICTURE CAME FROM 60 FIZER REPORTS, OVER 16 YRS, OF WHICH THE TRUSTEE HAS MADE 16 FULL YEAR REPORTS WITH ENDING BALANCES. — ANOTHER INDICATION IS THE TRUSTEE'S NUMBERS ON

CONT'D

HIS TABLE I, INCLUDED HEREIN, IS THAT EVERY WITHDRAWAL IS LABELED WITH THE WORD "CHECK" (WITH NO IDENTIFICATION AS TO PAYER NOR PAYEE), WHERE ACTUALLY NO CHECK EXISTS BECAUSE, FOR THE LAST 2 OR 3 YRS, THE MONEY WAS <u>WIRED</u> TO ME. HOWEVER IT IS NOT IMPORTANT TO WORK OUT THE DETAILS. WHEN THE MEANING OF "NET EQUITY" IS KNOWN, IT IS TIME ENOUGH. (NOTE: THE TRUSTEE HAS THE 16 YRS OF FIZR FINANCIALS IN HIS FILE ON ME. IN FACT, I BELIEVE HE HAS TWO COPIES OF THE CUSTODIAL FILE COPIES (FIZER SERVICES, INC. IS FROM WHOM I RECEIVED ALL THE MADOFF MONEY, NOT FROM MADOFF.

- ITEM #4: "[... NO PROFITS ... NO ENHANCED "NET EQUITY") DISAGREED. I THINK IT WAS ALL SAID ON THE PRIOR PAGES WITH THE VERY BRIEF STATEMENTS OF DISAGREEMENTS. BY ANYBODY'S ACCOUNTING SYSTEM, MORE ASSETS, AS A SOLE CHANGE, MEANS MORE EQUITY. THE AMERICAN G.A.P. SYSTEM (GENERALLY ACCEPTED ACCOUNTING PRACTICE) REQUIRES ALL TRANSACTIONS TO GO THRU THE P&L STATEMENTS BEFORE REACHING THE BALANCE SHEET. → PROFIT FROM P&L GOES TO RETAINED ERNINGS WHICH INCREASES EQUITY. GIFTS, CONTRIBUTIONS, GRANTS WOULD ALL FOLLOW THIS ROUTE. MADOFF'S "VALUE INCREAS" WERE GIFTS. THE TRUSTEE WOULD HAVE US BELIEVE THAT OUR ACCOUNTS ARE NO BETTER AFTER RECEIVING MONEY THAN BEFORE. HE LIKES TO STATE THE MONEY WAS "FICTIOUS", NEVER REALLY THERE. HOWEVER, THE CUSTOEDIAN & ITS B'K ASSOCIATE CASHED MADOFF'S (READ) B/P AND SENT TO ME WHERE ALL B'KS ACCEPTED THE MONEY AS REAL. HIS "FICTICIOUS" WORD MEANS THE MONEY, EVERY BODY USED, WAS NEVER THERE. FOR ONE PART OF GOV'T THE MONEY WAS REAL & TAXABLE; FOR ANOTHER IT WAS NEVER THERE."
- ITEM #5: "MADOFF PAID WITH OTHER PEOPLE'S MONEY." AGREED. HOWEVER, B'KS DO THIS ALL THE TIME AS A MATTER OF COMMON BUSINESS. A CUSTOMER COMES IN TODAY WITH MONEY FOR A SAVINGS ACCOUNT, AND TOMORROW THE SAME $ GO OUT TO A MORTGAGEE TO BUY A HOUSE. OUR SOC. SEC. HAS DONE THIS SINCE LYNDON JOHNSON STARTED THE PRACTICE. SOC. SEC. WILL HAVE ITS BIG PROBLEM IN 2-3 YRS. - OUTPUT WILL EXCEED INPUT!

WHY DOES THE TRUSTEE MAKE IT SOUND AS THOUGH WE VICTIMS HAVE CAUSED ALL THE PROBLEMS? MADOFF IS THE PROBLEM FIRST. BUT WASH., ALBANY, AND N.Y. CITY WERE THE SECONDARY PROBLEM. WE PAID THEM TO AUDIT, WATCH, & INVESTIGATE. FOR EX., THE S.E.C. SHOULD HIDE!

SUMMARY

THIS IS A SUMMARY OF THE "PROTEST" OF THE TRUSTEE'S DENIAL OF MY CLAIM IN THE MATTER OF BANKRUPCY CASE #1789(BRL) - MADOFF

YOUR HONOR:

I REPEAT THAT I AM NOT SEEKING A HEARING AT THIS TIME BECAUSE THE BASIC MATTER IS THE DEFINITION OF "NET EQUITY". IF THE Ct ACCEPTS THE TRUSTEE'S INTERPRETATION, THERE WILL BE NOTHING WE SMALL INVESTERS, WITH I.R.A.S, CAN DO. WE FOLLOWED THE LAW OF REQUIRED WITHDRAWALS & FULL TAXATION OF THE WITHDRAWALS, ONLY TO BE TOLD THAT WE WITHDREW "FICTITIOUS" MONEY AND PAID TAXES ON "FICTICOUS" MONEY. HENCE, A "STAY" OR "HOLD" KIND OF LETTER OR ORDER AT THIS TIME WOULD AT LEAST ASSURE THAT MY CLAIM WON'T GET LOST WHEN THE FEBRUARY DECISION HAS BEEN REACHED IN FEBRUARY. T'K YOU FOR YOUR CONSIDERATION OF THIS PICKEL WE ARE ALL IN.

MY REASONING FOR REVEALING MY VIEWPOINT AT THIS TIME WAS SO THAT MORE TIME TO THINK OF POINTS OF VIEW, WHICH CAN BE SUMMARIZED AS FOLLOWS: THE DEPOSITS TO MY ACCOUNT FROM MADOFF WERE MADE WITH REAL MONEY WHICH DID INCREASE MY AC- COUNT'S NET EQUITY. MY WITHDRAWALS & TAXES PAID WERE BY THE LAW OF THE LAND AS TO INDIVIDUAL RETIREMENT ACCOUNTS (I.R.A.'s). HENCE, THE OUTSTANDING BALANCE IN MY AC- COUNT OF $297,000 SHOULD BE PAID TO ME, MAINLY BECAUSE SIPCO WAS AND IS AN INSURANCE UP TO $500,000. I HELPED PAY FOR SIPCO'S EXISTANCE AS WE ALL DID. TRYING TO PREVENT AN INSURANCE PAY OUT IS PROBABLY ONE OF THE TRUSTEES DUTIES, AS IS SOME OF THE PEOPLE IN PRIVATE INSURANCE COMPANIES.

RESPECTIVELY YOURS,
Robert F Gemmons

ATTACHMENTS: COPY OF TRUSTEE'S DENIAL LETTER WITH "TABLE 1" OF HIS
COPY OF MY FINANCIAL NUMBERS OBTAINED FROM FIZER SERIES REPORTS
16 YRS OF FIZER FINANCIAL END OF YR. REPORTS ARE IN THE TRUSTEES FILE.

NOTICE FROM TRUSTEE OF BLMIS LIQUIDATION

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

TO: Robert F Gammons (IRA)
38 Mill Hill Road
Southport, Connecticut 06890

Dear Mr. Gammons (IRA):

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZR138 designated as Claim Number 8859.

Your claim for a credit balance of $297,037.80 and any claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $348,660.93), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $161,042.24). As noted, no securities were ever purchased by BLMIS for your account. Any and

CONT'D NEXT PAGE

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($187,618.69) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

2

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____
Irving H. Picard
Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: NTC & Co., FBO Robert F Gammons
PO Box 173859
Denver, Colorado 80217

3

*THESE NUMBERS CAME FROM THE TRUSTEE ABOUT 10/28/2009*

## Table 1

### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 12/30/1992 | CHECK | $118,852.17  *— AGREE* |
| 12/18/1996 | CHECK | $7,024.46 |
| 12/23/1997 | CHECK | $10,165.61 |
| 1/5/2005 | CHECK | $25,000.00 |
| **Total Deposits:** | | $161,042.24 |

### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 11/22/1993 | CHECK | ($3,000.00) |
| 12/6/1995 | CHECK | ($6,000.00) |
| 9/30/1996 | CHECK | ($7,000.00) |
| 10/3/1996 | CHECK | ($7,000.00) |
| 9/12/1997 | CHECK | ($8,500.00) |
| 12/4/1997 | CHECK | ($10,160.93) |
| 10/6/1998 | CHECK | ($12,000.00) |
| 4/21/1999 | CHECK | ($10,000.00) |
| 9/1/1999 | CHECK | ($20,000.00) |
| 3/21/2000 | CHECK | ($15,000.00) |
| 11/16/2000 | CHECK | ($15,000.00) |
| 11/2/2001 | CHECK | ($20,000.00) |
| 10/29/2002 | CHECK | ($30,000.00) |
| 11/26/2003 | CHECK | ($5,000.00) |
| 11/17/2004 | CHECK | ($25,000.00) |
| 12/10/2004 | CHECK | ($25,000.00) |
| 12/5/2005 | CHECK | ($30,000.00) |
| 11/27/2006 | WIRED ~~CHECK~~ | ($30,000.00) |
| 11/27/2007 | WIRED ~~CHECK~~ | ($35,000.00) |
| 11/20/2008 | WIRED ~~CHECK~~ | ($35,000.00) |
| **Total Withdrawals:** | | ($348,660.93) *— DISAGREE* |
| **Total deposits less withdrawals:** | | ($187,618.69) *— DISAGREE* |

Handwritten annotations:
- "WHO WAS PAYER & PAYEE" (bracketing the check entries)
- "NO CHECKS HERE - WIRE TRANSFER." (next to the 2006/2007/2008 entries)

NOTE BY R.F. GAMMONS - CLAIMANT: IT IS PROBABLE THAT THE ABOVE CAME FROM MADOFF FILES WHERE MY $ NUMBERS COME FROM THE CUSTODIAN, FIZER RETIREMENT SERVICES, NOT FROM MADOFF DIRECTLY. I NEVER RECEIVED A CHECK DIRECTLY FROM MADOFF, BUT ONLY FROM A CUSTODIAN AS REQUIRED BY LAW AS I INVESTED I.R.A. MONEY. FOR EXAMPLE, THE ABOVE SHOWS A "CHECK", WHEN I REC'D MONEY IN TWO OR THREE YEARS BY WIRE TRANSFER??!!

ADPOV. 10/30/2009   R.F. GAMMONS

MADOFF LIQUIDATION
PREPARED APRIL 2009

ROBERT SAMMONS
39 Mill Hill Rd
Southport, CT 06890
203-292-6163
203-216-6685 (CELL)

SUMATION OF FIZER SERV,INC (CUSTODIAN) YR. END BALANCES & WITHDRAW

| YR. ENDING | WITHDRAWS | BALANCE AT YR. END | COMMENTS |
|---|---|---|---|
| 1992 | 0 | AT LEAST 118,862 → 118,862 ORIGINAL INVESTMENT | EXH "B" SEE EXH B |
| 93 | 11,653 (FROM PRINC?) | NO YR.END REPORTS ? | FOR THESE TWO → 93 & '94 YEARS, THE WITHDRAWALS CAME FROM TAX FILINGS - SEE EXH "D" FOR '93 & '94 |
| 94 | 10,179 | | |
| 95 | ZERO ? PROBABLY ? SEE → | FOUND FOR MID 1992 TO 1993 | 1995 WAS THE YR. AVELINO WAS CLOSED & ACCOUNT MOVED DIRECTLY TO MAD. |
| 96 | 7,000 | 191,025 | |
| 97 | 8,500 | 216,300 | |
| 98 | 12,000 | 242,700 | FROM 1996 ON DOWN, ALL FROM FIZER - EXH "D" BY THE YR REPORTS |
| 99 | 30,000 | 255,337 | |
| 2000 | 30,000 | 257,040 | |
| 2001 | 20,000 | 270,836 | |
| 2 | 30,000 | 276,195 | |
| 3 | 5,000 | 297,723 | |
| 4 | 25,000 | 278,117 | |
| 5 | 30,000 | 291,584 | |
| 6 | 30,000 | 310,135 | |
| 7 | 35,000 | 307,722 | |
| 2008 | 35,000 | 297,038 | |
| | 319,332 | | |

SOURCE OF MOST NUMBERS: CUSTOADIAN - FIZER SERVICES REPORTS

SOURCE: COMPLET FILE OF CUSTOADIAN FIZER SERVICES, INC.