**LILLIAN GILDEN**
145 East 74 Street
New York, NY 10021
ldgilden@gmail.com

November 12, 2009

Hon. Burton R. Lifland
United States Bankruptcy Court
One Bowling Green, 6th Floor
New York, NY 10004

## OBJECTION TO TRUSTEE'S CLAIM DETERMINATION

Re: *Bernard L. Madoff Investment Securities LLC*
*SIPA Liquidation -- Adv. Pro No. 08-01789*
*Lillian Gilden, Claim No. 000819*
*BMLIS Account Number 1CM282*

Dear Judge Lifland,

My name is Lillian Gilden and I was an investor in Bernard L. Madoff Investment Securities LLC ("BLMIS"). I am 74 years old and have been a self-supporting, single woman of relatively modest means for more than 25 years. The Madoff fraud left me without any present means to support myself. Aside from an undeveloped property in Massachusetts, itself bogged down in litigation, this money represented essentially everything I had. Though the amount invested was small by comparison to the large sums that most others invested, it was an enormous sum for me.

More than 17 years ago, I invested my entire life's savings of $290,000 with BLMIS. I made withdrawals over the years to pay taxes, support my elderly mother and my children's needs, but mainly, this money was intended to support my eventual retirement. At the time the fraud was discovered, I showed a final statement balance of $487,952.65. I have heard that many other investors' "profits" were routinely above 50%, 75%, and even in excess of 100% during some years. If that is true, those investors should not have the right to participate in any distribution from the estate; whether they had actual knowledge of the fraud or not, such impossibly high returns should have put anyone on notice that something was amiss and, as a matter of equity, those claimants should, at minimum, get to the end of the line and perhaps even be forced to repay the fictitious "profits" they withdrew over the years.

In my case, however, the returns were not exceptional, even during the boom years of the late 1990's. Rarely were returns in excess of 12% in any single year, and many years were in the vicinity of 8-9% -- hardly the kind of returns that would have suggested to me that something was suspect here. In point of fact, even taking into account the withdrawals that I made, my overall return over the 17 years my money sat with BLMIS was probably very comparable to what I would have earned had my money been invested in an index of S&P 500 stocks or other similar investment over the same period.

Hon. Burton R. Lifland
November 12, 2009
Page 2 of 3

I learned early in the case that the Trustee, Mr. Picard, had established a Hardship Program to allow those who qualified to receive priority in the processing of claims, including the SIPC reimbursement amount. Based on my dire financial condition, I made a request to participate in the Hardship program, and I was very pleased to learn that the Trustee was kind enough to approve me for hardship status. I would learn later, however, that my status would offer me no refuge, at least if the Trustee's methodology for determining my claim amount is upheld by the Court.

On October 16th, I received from the Trustee a Determination Letter denying my claim of $487,952.65[1] in its entirety based on application of the "net equity rule". Please consider this letter my objection to the Trustee's determination that my claim should be disallowed altogether. While I do not take any position concerning standards applied to other claimants, under my very unique circumstances, including the length of time my money was invested and the relatively modest "returns" I made on those investments over the years, I feel that to allow the Trustee to apply that rule to my claim would result in a terrible injustice to me vis a vis other claimants and should not be accepted as the methodology for resolving my claim. In my judgment, my final statement balance of approximately $488,000 represents the proper measure of the damages I suffered as a result of this fraud and that is the amount of the claim I should be permitted to assert. It is important to say, however, that I take this position -- not because this was my final statement balance -- but because it accurately reflects, if only by coincidence, something resembling the actual damages I suffered as a result of this horrendous crime.

Though I would certainly benefit if the court were to require the trustee to use the "final statement balance" of each customer as the appropriate measure of our claims – and I understand that is a question being separately considered by the court at a hearing to be held on February 2nd, 2010 – I do not see how this standard could prove to be a fair one. Given the immense disparity with which fictitious returns were doled out and the sheer randomness of stated returns for each claimant, this approach would create immense advantage for those claimants "lucky enough" to have received oversized returns of fictitious profits, and would lead to many similar claimants receiving very different outcomes. By the same token, however, the "net-equity" rule, if applied blindly across all categories of claims, would necessarily lead to unfair and inequitable results for people such as me. How is that two people who invested the same dollar amount, one, like me, in 1994 and the other in 2007, and made the same withdrawals at the same time should be treated the same for purposes of establishing their claim?

It seems to me that using any "cookie-cutter" approach – be it final statement balance, net-equity, or something else—with such an immense group of claimants, no two of which are remotely alike, would by necessity create truly unfair results in some cases that would seem counter to the goals and policies of the Bankruptcy laws. If the court feels that a one size fits all approach has to be

---

[1] The Determination Letter indicated that the amount of the claim I was asserting was $0.29 rather than the final statement balance of approximately $488,000. I see now that I somehow misunderstood the instructions on the claim form and did not put the correct claim amount on the correct line of the short claim form. I did, however, include with my claim form a copy of my final BLMIS statement which clearly showed a final account balance of $487,952.65 (see attached). I do not think there was any question in anyone's mind what I was seeking, or that the $0.29 amount was a proper reflection of my claim. I would ask that for purposes of considering my claim and the Trustee's determination, that the Court consider the amount I am asserting to be $487,952.65 as per the statement attached to my claim form.

Hon. Burton R. Lifland
November 12, 2009
Page 3 of 3

and policies of the Bankruptcy laws. If the court feels that a one size fits all approach has to be employed, if only to keep the claims administration process somewhat manageable, then I suggest a better alternative to either the final statement or net-equity rule would be to apply a single, uniform rate of return that would be applied to each claimant's actual investments over the period they remained in the brokerage accounts. Monies invested earlier and left in the accounts longer would result in a higher imputed value than those invested later or for shorter periods of time. At least as between the claimants themselves, this would seem to represent the fairest way to ensure that similarly situated claimants be treated similarly.

In my opinion, no single formula should be blindly applied to all claims, but rather, each claim should be evaluated on its merits. Perhaps the court could employ a "presumptive rule" in which a single formula is used unless the claimant comes forward with compelling reasons the formula shouldn't apply in that person's case. In my own case, I hope the Court would conclude that such an approach would lead to an allowed claim of approximately $488,000, rather than the $0 calculated by the Trustee.

I would like to conclude this letter by pointing out to the court one last factor which, in addition to the above, makes a compelling case for allowing my claim to be evaluated outside the rigid confines of the net equity rule, even if that rule were applied generally to most other claimants. Whether my claim is allowed at $488,000, as I have requested, or disallowed in its entirety, there will be no adverse impact on the estate whatsoever, and no other claimant's recovery will be affected by one penny. That is because 100% of the amount of my loss is within SIPC reimbursement levels. For this reason alone, there is no reason to lump me with all other claimants when my own claim's determination will have no impact on those I am being lumped with. When combined with other equitable factors in my favor, including my Hardship status and the circumstances surrounding my investments with BLMIS, I believe the case for treating my claim in the manner suggested in this letter is not only compelling, but is the fairest and most equitable result.

For the reasons stated above, I believe that my claim should be allowed in the amount of $487,952.65, and I respectfully request that the court allow my claim in that amount.

Sincerely,

Lillian Gilden

cc:  Irving H. Picard, Trustee
     c/o Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, NY 10111

     Clerk of the United States Bankruptcy Court
     Southern District of New York
     One Bowling Green
     New York, NY 10004

# LILLIAN GILDEN
145 East 74 Street
New York, NY 10021
ldgilden@gmail.com

November 12, 2009

Hon. Burton R. Lifland
United States Bankruptcy Court
One Bowling Green, 6th Floor
New York, NY 10004

## OBJECTION TO TRUSTEE'S CLAIM DETERMINATION

Re: *Bernard L. Madoff Investment Securities LLC*
*SIPA Liquidation -- Adv. Pro No. 08-01789*
*Lillian Gilden, Claim No. 000819*
*BMLIS Account Number 1CM282*

Dear Judge Lifland,

My name is Lillian Gilden and I was an investor in Bernard L. Madoff Investment Securities LLC ("BLMIS").  I am 74 years old and have been a self-supporting, single woman of relatively modest means for more than 25 years.  The Madoff fraud left me without any present means to support myself.  Aside from an undeveloped property in Massachusetts, itself bogged down in litigation, this money represented essentially everything I had.  Though the amount invested was small by comparison to the large sums that most others invested, it was an enormous sum for me.

More than 17 years ago, I invested my entire life's savings of $290,000 with BLMIS. I made withdrawals over the years to pay taxes, support my elderly mother and my children's needs, but mainly, this money was intended to support my eventual retirement.  At the time the fraud was discovered, I showed a final statement balance of $487,952.65. I have heard that many other investors' "profits" were routinely above 50%, 75%, and even in excess of 100% during some years.  If that is true, those investors should not have the right to participate in any distribution from the estate; whether they had actual knowledge of the fraud or not, such impossibly high returns should have put anyone on notice that something was amiss and, as a matter of equity, those claimants should, at minimum, get to the end of the line and perhaps even be forced to repay the fictitious "profits" they withdrew over the years.

In my case, however, the returns were not exceptional, even during the boom years of the late 1990's. Rarely were returns in excess of 12% in any single year, and many years were in the vicinity of 8-9% -- hardly the kind of returns that would have suggested to me that something was suspect here.  In point of fact, even taking into account the withdrawals that I made, my overall return over the 17 years my money sat with BLMIS was probably very comparable to what I would have earned had my money been invested in an index of S&P 500 stocks or other similar investment over the same period.

Hon. Burton R. Lifland
November 12, 2009
Page 2 of 3

I learned early in the case that the Trustee, Mr. Picard, had established a Hardship Program to allow those who qualified to receive priority in the processing of claims, including the SIPC reimbursement amount. Based on my dire financial condition, I made a request to participate in the Hardship program, and I was very pleased to learn that the Trustee was kind enough to approve me for hardship status. I would learn later, however, that my status would offer me no refuge, at least if the Trustee's methodology for determining my claim amount is upheld by the Court.

On October 16th, I received from the Trustee a Determination Letter denying my claim of $487,952.65[1] in its entirety based on application of the "net equity rule". Please consider this letter my objection to the Trustee's determination that my claim should be disallowed altogether. While I do not take any position concerning standards applied to other claimants, under my very unique circumstances, including the length of time my money was invested and the relatively modest "returns" I made on those investments over the years, I feel that to allow the Trustee to apply that rule to my claim would result in a terrible injustice to me vis a vis other claimants and should not be accepted as the methodology for resolving my claim. In my judgment, my final statement balance of approximately $488,000 represents the proper measure of the damages I suffered as a result of this fraud and that is the amount of the claim I should be permitted to assert. It is important to say, however, that I take this position -- not because this was my final statement balance -- but because it accurately reflects, if only by coincidence, something resembling the actual damages I suffered as a result of this horrendous crime.

Though I would certainly benefit if the court were to require the trustee to use the "final statement balance" of each customer as the appropriate measure of our claims – and I understand that is a question being separately considered by the court at a hearing to be held on February 2nd, 2010 – I do not see how this standard could prove to be a fair one. Given the immense disparity with which fictitious returns were doled out and the sheer randomness of stated returns for each claimant, this approach would create immense advantage for those claimants "lucky enough" to have received oversized returns of fictitious profits, and would lead to many similar claimants receiving very different outcomes. By the same token, however, the "net-equity" rule, if applied blindly across all categories of claims, would necessarily lead to unfair and inequitable results for people such as me. How is that two people who invested the same dollar amount, one, like me, in 1994 and the other in 2007, and made the same withdrawals at the same time should be treated the same for purposes of establishing their claim?

It seems to me that using any "cookie-cutter" approach – be it final statement balance, net-equity, or something else—with such an immense group of claimants, no two of which are remotely alike, would by necessity create truly unfair results in some cases that would seem counter to the goals and policies of the Bankruptcy laws. If the court feels that a one size fits all approach has to be

---

[1] The Determination Letter indicated that the amount of the claim I was asserting was $0.29 rather than the final statement balance of approximately $488,000. I see now that I somehow misunderstood the instructions on the claim form and did not put the correct claim amount on the correct line of the short claim form. I did, however, include with my claim form a copy of my final BLMIS statement which clearly showed a final account balance of $487,952.65 (see attached). I do not think there was any question in anyone's mind what I was seeking, or that the $0.29 amount was a proper reflection of my claim. I would ask that for purposes of considering my claim and the Trustee's determination, that the Court consider the amount I am asserting to be $487,952.65 as per the statement attached to my claim form.

Hon. Burton R. Lifland
November 12, 2009
Page 3 of 3

and policies of the Bankruptcy laws. If the court feels that a one size fits all approach has to be employed, if only to keep the claims administration process somewhat manageable, then I suggest a better alternative to either the final statement or net-equity rule would be to apply a single, uniform rate of return that would be applied to each claimant's actual investments over the period they remained in the brokerage accounts. Monies invested earlier and left in the accounts longer would result in a higher imputed value than those invested later or for shorter periods of time. At least as between the claimants themselves, this would seem to represent the fairest way to ensure that similarly situated claimants be treated similarly.

In my opinion, no single formula should be blindly applied to all claims, but rather, each claim should be evaluated on its merits. Perhaps the court could employ a "presumptive rule" in which a single formula is used unless the claimant comes forward with compelling reasons the formula shouldn't apply in that person's case. In my own case, I hope the Court would conclude that such an approach would lead to an allowed claim of approximately $488,000, rather than the $0 calculated by the Trustee.

I would like to conclude this letter by pointing out to the court one last factor which, in addition to the above, makes a compelling case for allowing my claim to be evaluated outside the rigid confines of the net equity rule, even if that rule were applied generally to most other claimants. Whether my claim is allowed at $488,000, as I have requested, or disallowed in its entirety, there will be no adverse impact on the estate whatsoever, and no other claimant's recovery will be affected by one penny. That is because 100% of the amount of my loss is within SIPC reimbursement levels. For this reason alone, there is no reason to lump me with all other claimants when my own claim's determination will have no impact on those I am being lumped with. When combined with other equitable factors in my favor, including my Hardship status and the circumstances surrounding my investments with BLMIS, I believe the case for treating my claim in the manner suggested in this letter is not only compelling, but is the fairest and most equitable result.

For the reasons stated above, I believe that my claim should be allowed in the amount of $487,952.65, and I respectfully request that the court allow my claim in that amount.

Sincerely,

Lillian Gilden

cc:   Irving H. Picard, Trustee
      c/o Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, NY 10111

      Clerk of the United States Bankruptcy Court
      Southern District of New York
      One Bowling Green
      New York, NY 10004

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated wi
Madoff Securities International Limit
12 Berkeley Stre
Mayfair, London W1J 8L
Tel 020 7493 62:

LILLIAN D GILDEN
145 EAST 74TH STREET PH C
NEW YORK    NY    10021

YOUR ACCOUNT NUMBER: 1-CM282-3-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0061
PAGE: 1

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 29,006.70 |
| 11/12 | 260 | | 2342 | WAL-MART STORES INC | 55.830 | 14,525.80 | |
| 11/12 | 170 | | 2844 | INTERNATIONAL BUSINESS MACHS | 87.270 | 14,841.90 | |
| 11/12 | 630 | | 6668 | EXXON MOBIL CORP | 72.880 | 45,939.40 | |
| 11/12 | 690 | | 7370 | INTEL CORP | 14.510 | 10,038.90 | |
| 11/12 | 330 | | 11496 | JOHNSON & JOHNSON | 59.580 | 19,674.40 | |
| 11/12 | 450 | | 15822 | J.P. MORGAN CHASE & CO | 38.530 | 17,356.50 | |
| 11/12 | 240 | | 20147 | COCA COLA CO | 44.660 | 10,727.40 | |
| 11/12 | 140 | | 24473 | MCDONALDS CORP | 55.370 | 7,756.80 | |
| 11/12 | 260 | | 28799 | MERCK & CO | 28.550 | 7,433.00 | |
| 11/12 | 950 | | 33125 | MICROSOFT CORP | 21.810 | 20,757.50 | |
| 11/12 | 480 | | 37451 | ORACLE CORPORATION | 17.300 | 8,323.00 | |
| 11/12 | 190 | | 50429 | PEPSICO INC | 56.410 | 10,724.90 | |
| 11/12 | 110 | | 50931 | APPLE INC | 100.780 | 11,089.80 | |
| 11/12 | 810 | | 54755 | PFIZER INC | 16.940 | 13,753.40 | |
| 11/12 | 190 | | 55257 | ABBOTT LABORATORIES | 54.610 | 10,382.90 | |
| 11/12 | 360 | | 59081 | PROCTER & GAMBLE CO | 64.080 | 23,082.80 | |
| 11/12 | 130 | | 59583 | ARGEN INC | 59.160 | 7,695.80 | |
| 11/12 | 250 | | 63407 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 10,910.00 | |
| 11/12 | 600 | | 63909 | BANK OF AMERICA | 21.590 | 12,978.00 | |
| 11/12 | 200 | | 67733 | QUALCOMM INC | 33.770 | 6,762.00 | |
| 11/12 | 650 | | 68235 | CITI GROUP INC | 12.510 | 8,157.50 | |
| 11/12 | 150 | | 72059 | SCHLUMBERGER LTD | 49.480 | 7,428.00 | |
| 11/12 | 360 | | 72561 | COMCAST CORP CL A | 16.510 | 5,957.60 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

08-01789-cgm    Doc 822    Filed 11/13/09    Entered 11/16/09 15:38:36    Main Document
Pg 8 of 12

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

YOUR ACCOUNT NUMBER: 1-CM282-3-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0061
PAGE: 2

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

LILLIAN D GILDEN
145 EAST 74TH STREET PH C
NEW YORK    NY 10021

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 710 | | 76385 | AT&T INC | 27 | 19,198.00 | |
| 11/12 | 180 | | 76887 | CONOCOPHILLIPS | 52.510 | 9,458.80 | |
| 11/12 | 120 | | 80711 | UNITED PARCEL SVC INC CLASS B | 52.040 | 6,248.80 | |
| 11/12 | 730 | | 81213 | CISCO SYSTEMS INC | 16.730 | 12,241.90 | |
| 11/12 | 210 | | 85037 | U S BANCORP | 29.530 | 6,209.30 | |
| 11/12 | 250 | | 85539 | CHEVRON CORP | 73.430 | 18,367.50 | |
| 11/12 | 120 | | 89363 | UNITED TECHNOLOGIES CORP | 53.160 | 6,383.20 | |
| 11/12 | 1,270 | | 89865 | GENERAL ELECTRIC CO | 19.630 | 24,980.10 | |
| 11/12 | 340 | | 93689 | VERIZON COMMUNICATIONS | 30.410 | 10,352.40 | |
| 11/12 | 30 | | 94191 | GOOGLE | 337.400 | 10,123.00 | |
| 11/12 | 420 | | 98015 | WELLS FARGO & CO NEW | 29.800 | 12,532.00 | |
| 11/12 | 300 | | 98517 | HEWLETT PACKARD CO | 34.900 | 10,482.00 | |
| 11/12 | | 450,000 | 20628 | U S TREASURY BILL DUE 2/12/2009 2/12/2009 | 99.936 | | 449,7 |
| 11/12 | | | 15726 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV 11/12/08 | DIV | | |
| 11/12 | | 22,566 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 22,5 |
| 11/12 | 17,397 | | 25095 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 17,397.00 | |
| 11/12 | | | | FIDELITY SPARTAN DIV 11/12/08 | DIV | | |
| 11/19 | | | | U S TREASURY MONEY MARKET | | | |

CONTINUED ON PAGE 3

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated wi
Madoff Securities International Limit
12 Berkeley Stre
Mayfair, London W1J 8I
Tel. 020 7493 62

LILLIAN D GILDEN
145 EAST 74TH STREET PH C
NEW YORK NY 10021

YOUR ACCOUNT NUMBER: 1-CM282-3-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ********0061
PAGE: 3

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CRE TO YOUR ACC |
|---|---|---|---|---|---|---|---|
| 11/19 | | 17,397 | 50351 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 17, |
| 11/19 | 25,000 | | 54988 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 24,981.50 | |
| 11/19 | 22,377 | | 59392 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 22,377.00 | |
| | | | | NEW BALANCE | | 56,946.33 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 710 | | | AT&T INC | 28.560 | | |
| | 190 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 130 | | | AMGEN INC | 55.540 | | |
| | 110 | | | APPLE INC | 92.670 | | |
| | 600 | | | BANK OF AMERICA | 16.250 | | |
| | 250 | | | CHEVRON CORP | 79.010 | | |
| | 730 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 650 | | | CITI GROUP INC | 8.290 | | |
| | 240 | | | COCA COLA CO | 46.870 | | |
| | 360 | | | COMCAST CORP CL A | 17.340 | | |
| | 180 | | | CONOCOPHILIPS | 52.520 | | |
| | 630 | | | EXXON MOBIL CORP | 80.150 | | |
| | 1,270 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

LILLIAN D GILDEN
145 EAST 74TH STREET PH C
NEW YORK          NY 10021

YOUR ACCOUNT NUMBER: 1-CM282-3-0
PERIOD ENDING: 11/30/08
YOUR TAXPAYER IDENTIFICATION NUMBER: ********0061
PAGE: 4

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 30 | | | GOOGLE | 292.960 | | |
| | 300 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 690 | | | INTEL CORP | 13.800 | | |
| | 170 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 450 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 330 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 140 | | | MCDONALDS CORP | 58.750 | | |
| | 260 | | | MERCK & CO | 26.720 | | |
| | 950 | | | MICROSOFT CORP | 20.220 | | |
| | 480 | | | ORACLE CORPORATION | 16.090 | | |
| | 190 | | | PEPSICO INC | 56.700 | | |
| | 810 | | | PFIZER INC | 16.430 | | |
| | 250 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 360 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 200 | | | QUALCOMM INC | 33.570 | | |
| | 150 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 22,377 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 210 | | | U S BANCORP | 26.980 | | |
| | 120 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 25,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/25/2009 | | | |
| | 120 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE 5 | | | |

Affiliated wit
Madoff Securities International Limite
12 Berkeley Stre
Mayfair, London W1J 8D
Tel 020 7493 622



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
☒ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

LILLIAN D. GILDEN
145 EAST 74TH STREET PH C
NEW YORK    NY    10021

YOUR ACCOUNT NUMBER: 1-CM282-3-0
PERIOD ENDING: 11/30/08
PAGE: 6
YOUR TAXPAYER IDENTIFICATION NUMBER: ##########0061

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 3,336. |
| | | | | GROSS PROCEEDS FROM SALES | | | 3,691,823. |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES