1299 N. Tamiami Trail Apt 624
Sarasota, Florida, 34236

November 10, 2009

Clerk of The United StatesBankrupcy Court
The Suthern District Of New York
One Bowling Green
New York, New York 19904

REF TO:Bankrupcy Case
00-8-1789(BRL)
JUDGE BURTON  LIFLAND

Dear Sir:

    Enclosed is a copy of the letter Mr Erving Picard sent to me. I disagree 100% with his statements and findings. The fraud was almost perfect. Why should Mr Picard believe the statements he got his information fro. It was all mishandled.

    I withdrew every quarter of the year to pay my estimated tax and then in April of each year. I never took fab. vactions except I did go to New York for four days at Christmas, twice. I also spent time in New Jersey during the summer but slways for a short time. I am alone and hace no immediate family but saving money, I thought, for my grand and great grand kids for college.My late "will" can verify all this.

    Shortly after my husbans death the company for which he worked was sold (American Cyanamid) was sold to American Home. I had to sell our stock and put that money into the Madorff Investment Group. All of my money went int o that account.

    When I became leggaly blind I moved into a assisted living complex which costs me three thousen dollars without food a month. I own my small apt. and pay taxes on it. I receive 3,544 pension which I am living on. This also can be verified.

    Years ago I made plans for buriel in New Jerseybut not paid for.As of new I have no money for that or for anything elseAt my age (87) this frightens me.

    In my lettet to Mr Picard I asked to be excusted from the bankrupcy hearing due to my age eye problem but if it is necessay and of help to get my money I will attend. It will be just another hardship to handel

It seems to me that Mr Picard is only interested in making money for his law firm by delaying this case so long and helping the big investors. It is a pity. This seems to happen all the the time. Perhaps this time my prayers will be answered

Thank you for taking the time to read my letter. May God be with you.

Yours truly

*[signature]*

Verna T. Smith

Please excuse all the errors. It is better than my handwriting at this time,

1299 N. Tamiami Trail Apt 624
Sarasota, Florida 34236

November 4, 2009

Acount   No 1S0261



Mr. Irying Picard Trustee
C/O Baker & Hostetler
45 Rocketfeller Plazer
New York, New York 10111

Dear Mr R Picard

In reply to your letter dated October 10, 2009 I totaly disagree with your findings and statements. In my opion you have handeled and delayed this case ilegaly and blundered every step along the way. You, in fact, should be in the cell with Madorf. You are just as guilty.

I hesitate to give you a reason to deny my claim but I would like to be excused from the bankruptcy court hearing due to the fact I am legally blind and age 86. Traveling to New York would be another hardship but will do it if need be.

The SIPA legally owes me $500,000 from the protection act, and I expect to receive the total amount of money on my acount 1S0261 at the end of November 2008 which was $1,821,573.06.

Yours truly

Verna T. Smith

# Ophthalmic Consultants

**Robert K. Snyder, M.D.**
*Vitreoretinal Specialist*

**Paul E. Runge, M.D.**
*Vitreoretinal Specialist*

**Walter F. Rutkowsky, O.D.**
*Low Vision Specialist*

May 1, 2006

RE: Verna T. Smith

To Whom It May Concern:

This letter is written at the request of my patient, Verna T. Smith. Her visual acuity with best correction as of her last visit on April 17, 2006 was 20/200 in the right eye and 20/200 in the left eye.

In view of these facts she meets the requirements to be considered legally blind. This letter should serve as record of legal blindness currently and for the future, as needed. Therefore, please extend to her the benefits for which she is now entitled.

If you have any further questions, please do not hesitate to contact me directly.

Sincerely,

*[signature]*

Robert K. Snyder, M.D.
RKS/lmg

**Reply to:**
1700 S. Tuttle Avenue
Sarasota, FL 34239
(941) 952-0900 voice
(941) 365-6051 fax

201 Fourth Avenue East
Suite 3
Bradenton, FL 34208
(941) 747-1515 voice
(941) 747-4509 fax

111 San Marco Drive
Venice, FL 34285
(941) 488-3200 voice
(941) 485-6045 fax

Patient Information:   Verna T. Smith
1299 North Tamiami Trail
#624
Sarasota, FL 34236
DOB: 10/24/1922

SS#: 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

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Verna T Smith Trustee U/A DTD 5/25/95
F/B/O Verna Smith, et al.
1299 N Tamiami Trail Apt. # 624
Sarasota, FL 34236

Dear Verna T Smith Trustee U/A DTD 5/25/95:

## PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1S0261 designated as Claim Number 2439:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $966,800.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $639,373.32). As noted, no securities were ever purchased by BLMIS for your account. Any and

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($327,426.68) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

>Clerk of the United States Bankruptcy Court for
>the Southern District of New York
>One Bowling Green
>New York, New York 10004

>and

>Irving H. Picard, Trustee
>c/o Baker & Hostetler LLP
>45 Rockefeller Plaza
>New York, New York 10111

_____
Irving H. Picard
Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

## DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/24/1997 | TRANS FROM 1S012210 | $764,349.22 | $440,000.00 |
| 10/19/1999 | CHECK | $166,573.32 | $166,573.32 |
| 10/19/1999 | CHECK | $32,800.00 | $32,800.00 |
| **Total Deposits:** | | $963,722.54 | $639,373.32 |

## WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 8/6/1997 | CHECK | ($40,000.00) | ($40,000.00) |
| 12/9/1997 | CHECK | ($30,000.00) | ($30,000.00) |
| 4/3/1998 | CHECK | ($30,000.00) | ($30,000.00) |
| 7/28/1998 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/21/1998 | CHECK | ($15,000.00) | ($15,000.00) |
| 3/22/1999 | CHECK | ($30,000.00) | ($30,000.00) |
| 6/16/1999 | CHECK | ($1,800.00) | ($1,800.00) |
| 6/23/1999 | CHECK | ($18,000.00) | ($18,000.00) |
| 9/2/1999 | CHECK | ($18,000.00) | ($18,000.00) |
| 10/13/1999 | CHECK | ($10,000.00) | ($10,000.00) |
| 12/2/1999 | CHECK | ($18,000.00) | ($18,000.00) |
| 12/28/1999 | CHECK | ($18,000.00) | ($18,000.00) |
| 4/5/2000 | CHECK | ($25,000.00) | ($25,000.00) |
| 5/24/2000 | CHECK | ($25,000.00) | ($25,000.00) |
| 9/5/2000 | CHECK | ($30,000.00) | ($30,000.00) |
| 11/21/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/11/2001 | CHECK | ($30,000.00) | ($30,000.00) |
| 4/9/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 6/6/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/25/2001 | CHECK | ($15,000.00) | ($15,000.00) |
| 9/13/2001 | CHECK | ($16,000.00) | ($16,000.00) |
| 11/13/2001 | CHECK | ($10,000.00) | ($10,000.00) |
| 12/24/2001 | CHECK | ($30,000.00) | ($30,000.00) |
| 1/25/2002 | CHECK | ($54,000.00) | ($54,000.00) |
| 4/4/2002 | CHECK | ($14,000.00) | ($14,000.00) |
| 5/29/2002 | CHECK | ($17,000.00) | ($17,000.00) |
| 8/9/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 9/18/2002 | CHECK | ($15,000.00) | ($15,000.00) |
| 12/20/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 3/10/2003 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/16/2003 | CHECK | ($40,000.00) | ($40,000.00) |
| 5/12/2003 | CHECK | ($11,000.00) | ($11,000.00) |
| 9/15/2003 | CHECK | ($10,000.00) | ($10,000.00) |
| 10/27/2003 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/5/2004 | CHECK | ($16,000.00) | ($16,000.00) |

| | | | |
|---|---|---|---|
| 12/6/2006 | CHECK | ($20,000.00) | ($20,000.00) |
| 1/12/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 3/27/2007 | CHECK | ($40,000.00) | ($40,000.00) |
| 5/23/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 8/31/2007 | CHECK | ($30,000.00) | ($30,000.00) |
| 1/15/2008 | CHECK | ($25,000.00) | ($25,000.00) |
| 6/4/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 8/26/2008 | CHECK | ($25,000.00) | ($25,000.00) |
| **Total Withdrawals:** | | ($966,800.00) | ($966,800.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($3,077.46) | ($327,426.68) |