MARSHALL W. KRAUSE
P. O. BOX 70
SAN GERONIMO, CA 949063
415 488 1223
FAX: 415 488 1945
EMAIL: MRKRUZE@COMCAST.NET

IN PRO PER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

BERNARD MADOFF INVESTMENT
SECURITIES, LLC,

DEBTOR

SIPA LIQUIDATION
No. 08-01789 (BRL)

RECEIVED
NOV 1 3 2009
U.S. BANKRUPTCY COURT, SDNY

MEMORANDUM OF OBJECTOR MARSHALL W. KRAUSE

This Memorandum is filed by Marshall W. Krause ("Objector") in opposition to the Memorandum of the Trustee and SIPC. Objector is a retired attorney who had two accounts with BMIS, one

1

an investment account and one a before-tax IRA account; neither account exceeded $500,000 in value according to the final Madoff statement of 11/30/08. These accounts were established in the early 1990's and were meant to be Objector's retirement income until his death at which time they were meant to benefit his wife and children. Regular quarterly withdrawals of what was reported to him by his broker as income were made from these accounts from approximately 1995 to late 2008. In response to the position of the Trustee and SIPC, Objector incorporates without repeating the arguments of the other Objectors and makes the following additional points:

## PONZI SCHEME EARNINGS ARE INCLUDED IN SIPA PROTECTIONS

Bernard Madoff's operation, though mind-bogglingly bodacious in scale and Houdini-like in evading the pervasive regulatory scheme known to be in place, was just another Ponzi scheme of the type Congress and the securities industry wished to assure investors they were insured against by the operation of SIPA. This is clear, as detailed in other briefing, from the wording of the statute and the explicit legislative history. The position of the Trustee ignores this purpose and treats the issues as if they were bankruptcy claims without the benefit of these salubrious directions of Congress and without regard for the injurious effect its proposed resolution would have on the investing public.

Rather than protecting the reasonable expectations of investors which are created by the SIPA law, the Trustee proposes to protect only capital investments so that the "protected" investor might as well have

2

put his or her capital under the mattress drawing out cash for his necessary daily expenses until the cache was exhausted. This was not the purpose for which the investors entrusted their funds to a licensed and regulated broker and instructed him to invest those funds within the limits of his regulated authority. Most, if not all, investors withdrawing funds from their BMIS accounts believed, as did Objector, that these funds were legitimate gains from a lawful investment strategy certified as accurate by Certified Public Accountants also regulated by the Securities and Exchange Commission. The position of the Trustee would allow Bernard Madoff to defraud investors innocent of any wrong of their statutory rights under SIPA merely because they had withdrawn a portion of or all of their capital.

Contrary to the position taken at p. 51 of the Trustee-SIPC Memorandum, the claim of this Objector is not as a claimant for preferential treatment as to the funds of an insolvent broker; this Objector is claiming as a beneficiary of the Congressional policy to provide insurance against those licensed brokers who defraud their customers. Whether the fraud is accomplished by taking their capital or by taking their earnings, or both, is of no moment to the statutory plan. This Objector is not claiming other people's money, but a separate fund of money guaranteed to those who are victimized by licensed brokers. A substantial portion of this money comes from the brokerage industry itself which wishes to assure members of the public that their assets and promised earnings are protected against broker fraud even if the estates of those brokers have no assets. The "net equity" protected by the Act is that promised to the customer on the statements of the broker, at least when the statement is plausible and comparable to those routinely produced in the industry. The Court is respectfully invited to view the

typical BMIS statement; it is complete, rational, fully explanatory and does not exhibit miraculous or out of the ordinary results.

## GOVERNMENT TREATMENT OF MADOFF EARNINGS HAS BEEN ESTABLISHED BY THE INTERNAL REVENUE SERVICE

Rather than "phantom profits" amounting to nothing, there is another characterization for the Madoff investors' accounts' earnings given by an agency of the federal government not notorious for its generous treatment of the public, the Internal Revenue Service. The IRS in Revenue Ruling 2009-09 states that for the Madoff Ponzi scheme the theft loss deduction allowed from total income under IRC sec. 165 (c) (2) is calculated by the amount invested **plus the amounts reported as income,** less any amounts withdrawn. Here we have a government agency treating the exact property which the Trustee argues is not part of "net equity" under SIPA as "property" the loss of which is a deduction from the total income of taxpayers. Government treatment of Madoff earnings as actual property the loss of which diminishes total income of a taxpayer is inconsistent with the Trustee's view but consistent with the Objector's view of the meaning of SIPA.

4

For these reasons Objector respectfully requests the Court to order the Trustee to honor the closing values of the Madoff accounts as required by SIPA and as already done by the Internal Revenue Service.

_____
Marshall W. Krause, In Pro Per

CERTIFICATE OF SERVICE BY MAIL

Marshall W. Krause certifies that I have served the within Memorandum as follows on the date stated below by United States Mail.

> David J. Sheehan
> Baker Law
> 45 Rockefeller Plaza
> New York, New York 10111

*Marshall W. Krause*
Marshall W. Krause
November 12, 2009

6