**GIBBONS P.C.**
One Pennsylvania Plaza
New York, New York  10119
Telephone: 212-613-2009
Facsimile: 212-554-9696
By:    Jeffrey A. Mitchell, Esq.
        Don Abraham, Esq.

*Attorneys for George N. Faris*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Bankruptcy Case No. 08-1789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |

## OBJECTION TO DENIAL OF CLAIMS 907, 688 AND 100082 BY TRUSTEE DATED OCTOBER 19, 2009

Pursuant to the Denial of Claims 907, 688 and 100082 (the "Combined Claims") dated October 19, 2009 (the "Denial") by the Trustee concerning Bernard L. Madoff Investment Securities ("BLMIS") account number 1ZB316 (the "Account"), the undersigned, as counsel for George N. Faris ("Faris"), hereby files its written disagreement with the Denial for the reasons set forth below.

### A.    Background

1.    Faris will be 69 years old in March 2010, and retired in 2002 after a long and successful career in the oil and gas industry.  Since his retirement, Faris had until December 2008 essentially lived off his BLMIS account.  He has been married for over 40 years to Claudia Faris ("Claudia"), who had her own separate account at BLMIS.

2.      The cash-in/cash-out analysis made by the Trustee, which looks to undermine the last statement issued by BLMIS, fails to properly account all deposits.  The schedule of deposits and withdrawals removes as a "deposit" $600,000 transferred from Claudia's BLMIS account to Faris, which was the amount she paid for a Manhattan apartment she purchased from him.  If the Court confirms the Trustee's calculation and rejects the balance reflected on Faris's last statement from BLMIS for purposes of determining net equity, Faris will have transferred the apartment to Claudia and received nothing in return.

3.      There is no dispute that for each year during which the Account was open, Faris paid taxes on all reported income.  At the time he did so, BLMIS was regulated, monitored and/or audited by government authorities, such as the SEC, NASD, FINRA, and the IRS, as well as insurers and others with which it did business.  Those far closer to BLMIS than Faris, and with actual oversight capability and authority, never observed or reported fraud to anyone right up to and including December 11, 2008, the day Madoff was arrested.  Customers like Faris were never warned that BLMIS might be anything other than a legitimate company honestly and accurately reporting securities related activities to its customers.  Therefore, they treated their account statements no differently than customers of any other financial institution – as accurately reflecting a true account value maintained at a legitimate regulated company.  Consequently, whatever was reported by BLMIS as being in Faris's account on the day it collapsed was, until he and the general public learned of the Madoff scandal, considered part of his liquid net worth.

**B.**    **The Denial**

4.      The Denial purports to claim that the Trustee determined, solely from the same fraudulent business records that were also used to deceive regulators and customers for years, that Faris actually did not lose the more than the $1.7-million he believed was in the Account on

-2-

the day BLMIS failed. By going back far beyond any applicable statute of limitations period, disregarding entirely the $600,000 paid by Claudia for the apartment, and neglecting to consider tax payments for which no refund can be obtained from the government, the Trustee calculates that over time, Faris was able to withdraw more than he initially deposited, and "the amount of money you received in excess of the deposits in your account ($1,661,000) was taken from other customers and given to you."

5.    That conclusion has no basis in fact or law.

**C.    Disagreement of Faris with The Denial**

6.    Faris hereby sets forth the following grounds for his disagreement with the Denial by the Trustee, without prejudice to his right to supplement the stated grounds in the future:

a.    The formula used by the Trustee to calculate "net equity":

i.    is not supported by legal authority;

ii.    fails to take into account taxes paid on reported profits over the years;

iii.    fails to add to "principal" the amount of such taxes, as well as the interest that would be due on such overpayment for all of the years on which tax payments should not have been made;

iv.    fails to include all deposits into the Account; and

v.    fails to properly treat the balance reflected on Faris's BLMIS statements for the Account as creating an obligation of BLMIS;

b.    The calculation of "net equity" is based upon business records maintained by a felon convicted of fraud and which were themselves falsified to conceal his own misconduct, and are therefore inherently unreliable;

c.    The calculation of "net equity" violates applicable statutes of limitations;

d.    The calculation of "net equity" is barred by the doctrine of laches;

e.    The calculation of "net equity" fails to take into account that Faris in good faith relied upon the fact that government authorities regulated BLMIS, and

-3-

therefore paid taxes on and ultimately spent distributions of reported income from the Account, and the Trustee is therefore estopped from seeking to reverse any such transactions or from otherwise trying to undermine the value reflected in the Account at the time Madoff was arrested;

      f.   The calculation of "net equity" fails to treat all BLMIS customers equally, including in the following respects:

          i.   It fails to take into account the time-value of funds deposited by customers;

          ii.   It targets customers who, for reasons of need or otherwise, withdrew funds for personal use; and

          iii.   It fails to base its calculations on a reversal of every distribution made to every customer of BLMIS from the beginning of the fraud, and instead only targets some customers, such as Faris;

      g.   The calculation of "net equity" fails to take into account that it was reported to customers of BLMIS that at year end, all trading positions had been liquidated, and any reported "profit" for the year on which taxes were paid was based upon a supposed cash-on-cash "profit" at year end; and

      h.   Because the business records of BLMIS are inherently unreliable, the Trustee cannot know that funds withdrawn by Faris were "taken from other customers and given to [Faris]," as claimed.

      7.   In addition, SIPC protection is intended, in part, to protect a customer from fraud of a SIPC protected firm, such as the fraud perpetrated by BLMIS. Indeed, the SIPC website states that it replaces "missing stocks and other securities where it is possible to do so." Accordingly, Faris is entitled to SIPC coverage based upon value shown in his Account at the time of Madoff's arrest, without reduction or set-off.

      8.   Faris also reserves his right to supplement his objections and to adopt, where appropriate, the objections of other similarly situated account holders of BLMIS.

## D.   FAILURE TO SAFEGUARD PERSONAL INFORMATION

      9.   It has been reported in the media that an agent of the Trustee, AlixPartners, may have failed to safeguard the personal and financial information of account holders such as Faris.

#1450754 v2
109522-67634

To the extent Faris's personal and financial information has been compromised, Faris reserves his right to assert such claims as are appropriate against the Trustee as a result thereof.

## CONCLUSION

10.    By the Denial, the Trustee purports to unwind more than a decade of activity reported as having taken place in the Account in an effort to cast a victim like Faris as a beneficiary of misconduct. To do so, the Trustee relies upon fraudulent business records that cannot properly be authenticated and admitted into evidence. Therefore, Faris objects to the Denial, and claims that he, like all other innocent customers of BLMIS, is entitled to have his loss calculated based on value reported as being in his account as of the day immediately preceding Madoff's arrest.

#1450754 v2
109522-67634

Dated: New York, New York
      November 17, 2009

**GIBBONS P.C.**

By: _____
    Jeffrey A. Mitchell
    Don Abraham
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
(212) 613-2009
*Attorneys for George N. Faris*

**TO:**

Clerk of the United States Bankruptcy Court
    Southern District of New York
One Bowling Green
New York, New York  10004

Irvin H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10004

#1450754 v2
109522-67634

## CERTIFICATE OF SERVICE

I herby certify that on November 17, 2009, I caused the foregoing Objection to Denial of Claims 907, 688, and 100082 by the Trustee to be served on all parties by electronically filing it with the Court via CM/ECF, and caused a hard copy to be served via regular mail upon:

Irvin H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10004

Dated: November 17, 2009

_____
Don Abraham