Joseph M. Hughart CPA
208 Main Street Suite 105
Milford, MA 01757

Telephone:  508-473-9190
Tax:        508-473-9160
Email:      jhughart@hughart.com



UNITED STATES BANKRUPCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Bernard L. In Re:**

**Madoff Investment Securities LLC**                            SIPA Liquation
                                                                No. 08-01789 (BRL)

**Response of Objector, Joseph M. Hughart, in opposition
To the position of SIPC and the Trustee regarding "Net Equity"**

## Table of Contents

| | |
|---|---|
| **SEC's Responsibilities** | **Page 1** |
| **Secretary of the Commonwealth of Massachusetts** | **Page 1** |
| **Insurance coverage provided to Investors** | **Page 2** |
| **Definition of "Net Equity"** | **Page 2 & 3** |
| **Conclusion** | **Page 4** |
| **Exhibit A** | **SIPC Brochure** |

## ARGUMENTS:

### SEC'S RESPONSIBILITIES

SEC Inspector General David Kotz's 477-page report states in detail of the failure of the SEC to follow up on several complaints lodged against Madoff over a 16-year span. He further writes "That the SEC received numerous substantive complaints since 1992 that raised significant red flags concerning Madoff's hedge fund operations should have led to questions about whether he was actually engaged in trading and should have led to a thorough examination of the possibility that he was operating a Ponzi scheme."

The report cites a number of opportunities to catch Madoff that the SEC missed, including failing to pursue allegations brought roughly eight years ago by Harry Markopolos, a certified fraud inspector, who proposed that Madoff's entire fund was nothing more than a Ponzi scheme. Markopolos explained his analysis to the commission in two separate meetings, but no investigations resulted.

At a Senate Banking Committee in September 2009 SEC officials said they "deeply regret having missed the fraud". At the same meeting Senate Banking Committee Chairman Christopher Dodd called the report findings "ugly" and further stated his congressional committee will explore ways to compensate victims of the fraud.

Currently the SEC is being sued by two investors and to date Senator Dodd's ability to find a way to compensate victims of the fraud has only resulted in political rhetoric with no suitable compensation to the victims. Why cannot the SEC be held accountable for their negligence? In a separate action just this week the accountant who certified the books and records to be accurate has pleated guilty and will most likely be serving prison time in the near term. If a private accountant can be held responsible, then the SEC should be held accountable.

Furthermore from what I understand SIPC has a substantial amount in a line of credit from the SEC. So the financial condition of SIPC should not be a serious concern.

### SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS

In a separately negotiated settlement between the Massachusetts Secretary of the Commonwealth, William Galvin and Fairfield Greenwich Advisors a settlement was reached whereby Fairfield will reimburse Massachusetts investors the sum of $8 million. This settlement amount will repay investors their original investment sums invested with Madoff plus 6% annual interest. Why can not the Court resolve a settlement similar to the one reached with Fairfield Greenwich Advisors? This would be a more equitable way to settle investor's claims subject to the SIPC insurance limit of $500,000 vs. the Trustee's method of "Cash in minus Cash Out".

-1-

**INSURANCE COVERAGE PROVIDED TO INVESTORS:**

Prior to investing with Bernard L. Madoff Investments I had researched the insurance coverage made available through SIPC and have enclosed copies of those brochures and nowhere is there made a mention of the so called net-equity arrangement which Mr. Picard is using to administer the calculation of loss. Additionally the document which SIPC uses as their operating document does not have a definition of net-equity as has been interrepreted by Mr. Picard. It simply says the investments in your account are insured up to $500,000 and makes no mention of funds invested less funds withdrawn.

SIPC charges brokerage firms an insurance premium to support it operations and raise capital for its insurance reserves. So, SIPC would have been charging Madoff a premium based on the account balances of individual investors. If the account balances were insured based on asset size then one would conclude that the account balances should have been insured to their full account value as of November 30, 2008 subject to the SIPC maximum of $500,000. Insurance is a contract between two parties and the Courts have held under the "Doctrine of Reasonable Expectations" what a reasonable policyholder could expect to receive for coverage. Similarly, if I insure my house for $500,000 and pay a premium for the insurance and it is destroyed by a casualty loss. Would it not be reasonable to think I would receive $500,000 to cover the loss?

And the fact that securities were never purchased should not have any bearing as we were paying a premium for coverage in the event of fraud.

**DEFINITION OF "NET EQUITY"**

When the news of the Madoff fraud was first discovered Mr. Stephen Harbeck appeared on the National Television show of CNBC and he was asked about how the insurance would be computed and he repeated the fact that investments would be replaced and again there was no mention of any so called net-equity computations. As a small investor who had invested his entire life's retirement savings with Madoff I relied on government agencies like the SEC and SIPC to protect my investments and I had informed and substiated documentation that my investment was protected similar to the same group that insures banks and financial institutions known as FDIC. As I am sure the Court is aware of the Securities Investor Protection Act of 1970 15 U.S.C. Section 78aaa-111, as amended through December 12, 2006 and I quote the definition of Net Equity:
> "The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by

(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B) any indebtedness of such customer to the debtor on the filing date; plus

(C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 78fff-2(a) of this title).

In determining net equity under this paragraph accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.

This definition of net equity is completely different from the Trustee's. No where in the definition do I see any reference to "cash in less cash out". The terms of the SIPC operating agreement is clear and I fail to understand why the Trustee can arbitrarily use some other method contrary to the SICA agreement. Investors received account statements monthly indicating named securities which comprise the S&P 100. These names are commonly recognized by nearly all investors, so why would a reasonable person not think that they were actively buying and selling such stocks as Wal-Mart, IBM, Exxon, Intel, Johnson & Johnson, J.P. Morgan Chase, Coca Cola, McDonalds, Merck, Microsoft, Oracle, PepsiCo, Apple, Pfizer, Abbott Labs, Proctor & Gamble, Amgen, Phillip Morris, Bank of America, Qualcomm, Citi Group, Schlumberger, Comcast, AT& T, ConocoPhillips, UPS, Cisco, US Bancorp, Chevron, United Technology, GE, Verizon, Google, Wells Fargo, Hewlett Packard, and US Treasury Bills.

If you refer to the case of "New Time Securities Inc." the debtor had listed fictitious or fake securities that did not exist. In the case of Bernard L. Madoff Investment Securities LLC the debtor was allegedly buying actual known securities as those mentioned above. It is not fair to rely on "New Times" as the fact and circumstances are completely different.

## CONCLUSION

The SEC was as much a party to the Fraud by not providing due care in the exercise of their audits of Bernard L. Madoff Investment Securities LLC. The private auditor for Bernard L. Madoff Investment Securities has now pleated guilty and will most likely be incarcerated. The SEC should share in its responsibility to investors in helping to finance much of this burden. There needs to be a better way to compensate investors on a more equitable basis. Why is it fair that many investors have withdrawn far in excess of their original investment while others who have not made any withdrawals have suffered? A settlement agreement modeled after the Secretary of the Commonwealth of Massachusetts with Fairfield Greenwich Investors would be a positive step in making a more fair distribution to investors. The insurance that SIPC was charging Madoff and other brokers should be looked upon as an insurance contract and since a premium was being charged then the insurance benefits should be paid out to the beneficiaries or investors. Finally the question of "Net Equity" as defined in the SIPC operating agreement as amended December 12, 2006 clearly defines the term "Net Equity" in language that is clear to any investor and it is not the same terms that Trustee Irving Picard is using to compute the "Net Equity".

Respectfully submitted,

Joseph M. Hughart
208 Main Street Suite 105
Milford, MA 01757

Dated: November 13, 2009

home | help | contact us | disclaimer | privacy policy | members site | map | en español

# SIPC
**SECURITIES INVESTOR PROTECTION CORPORATION**

Who We Are | How Who We Are | How SIPC® Protects Investors | SIPC® Cases | Claim Help Center | Protecting Yourself Against Fraud | Media Center

## Brochure

Download this brochure
*(Need Adobe Acrobat? Click here for free version.)*

**HOW SIPC PROTECTS YOU**

Understanding the Securities
Investor Protection Corporation

ROLE OF SIPC
WHAT SIPC COVERS AND WHAT IT DOES NOT
HOW WE HELP: WHAT YOU NEED TO KNOW ABOUT SIPC
SEVEN QUESTIONS INVESTORS ASK MOST OFTEN
AVOIDING INVESTMENT FRAUD

**THE ROLE OF SIPC**

SIPC is the first line of defense in the event a brokerage firm fails owing customers cash and securities that are missing from customer accounts. Although not every investor is protected by SIPC, no fewer than 99 percent of persons who are eligible get their investments back from SIPC. From its creation by Congress in 1970 through December 2008, SIPC advanced $520 million in order to make possible the recovery of $160.0 billion in assets for an estimated 761,000 investors.

When a brokerage is closed due to bankruptcy or other financial difficulties and customer assets are missing, SIPC steps in as quickly as possible and, within certain limits, works to return customers' cash, stock and other securities. Without SIPC, investors at financially troubled brokerage firms might lose their securities or money forever...or wait for years while their assets are tied up in court. However, because not everyone, and not every loss, is protected by SIPC, you are urged to read this whole brochure carefully to learn about the limits of protection.

Back to Top

**WHAT SIPC COVERS AND WHAT IT DOES NOT**

SIPC is not the FDIC. The Securities Investor Protection Corporation does not offer to investors the same blanket protection that the Federal Deposit Insurance Corporation provides to bank depositors.

How are SIPC and the FDIC different? When a member bank fails, the FDIC insures all depositors at that institution against loss up to a certain dollar limit. The FDIC's no-questions-asked approach makes sense because the banking world is "risk averse." Most savers put their money in FDIC-insured bank accounts because they can't afford to lose their money.

That is precisely the opposite of how investors behave in the stock market, in which rewards are only possible with risk. Most market losses are a normal part of the ups and downs of the risk-oriented world of investing. That is why SIPC does not bail out investors when the value of their stocks, bonds and other investments falls for any reason. Instead, SIPC replaces **missing** stocks and other securities where it is possible to do so ... even when the investments have increased in value.

SIPC does not cover individuals who are sold worthless stocks and other securities. SIPC helps individuals whose money, stocks and other securities are stolen by a broker or put at risk when a brokerage fails for other reasons.

Back to Top

**HOW WE HELP: WHAT YOU NEED TO KNOW ABOUT SIPC**

Understanding the rules is the key to protecting yourself and your money.

- **When SIPC gets involved.** When a brokerage firm fails owing customers cash and securities that are missing from customer accounts, SIPC usually asks a federal court to appoint a trustee to liquidate the firm and protect its customers. With smaller brokerage firm failures, SIPC sometimes deals directly with customers.

- **Investors eligible for SIPC help.** SIPC aids most customers of failed brokerage firms when assets are missing from customer accounts. (A list of **ineligible** investors may be found in the fourth question in the next section of this brochure).

- **Investments protected by SIPC.** The cash and securities – such as stocks and bonds – held by a customer at a financially troubled brokerage firm are protected by SIPC. Among the investments that are **ineligible** for SIPC protection are commodity futures contracts and currency, as well investment contracts (such as limited partnerships) that are not registered with the U.S. Securities and Exchange Commission under the Securities Act of 1933.

- **Terms of SIPC help.** Customers of a failed brokerage firm get back all securities (such as stocks and bonds) that already are registered in their name or are in the process of being registered. After this first step, the firm's remaining customer assets are then divided on a pro rata basis with funds shared in proportion to the size of claims. If sufficient funds are not available in the firm's customer accounts to satisfy claims within these limits, the reserve funds of SIPC are used to supplement the distribution, up to a ceiling of $500,000 per customer, including a maximum of $100,000 for cash claims. Additional funds may be available to satisfy the remainder of customer claims after the cost of liquidating the brokerage firm is taken into account.

Sidebar:
Read Our Brochure
Lea Nuestro Folleto en Español
Documenting Unauthorized Trading
When SIPC Gets Involved
What SIPC Covers....What it Does Not
Proper Use of the SIPC Logo
Test Your Knowledge/SIPC Quiz
Request a Speaker

http://www.sipc.org/how/brochure.cfm    **EXHIBIT A**    11/13/2009

- **How account transfers work.** In a failed brokerage firm with accurate records, the court-appointed trustee and SIPC may arrange to have some or all customer accounts transferred to another brokerage firm. Customers whose accounts are transferred are notified promptly and then have the option of staying at the new firm or moving to another brokerage of their choosing.

- **How claims are valued.** Typically, when SIPC asks a court to put a troubled brokerage firm in liquidation, the financial worth of a customer's account is calculated as of the "filing date." Wherever possible, the actual stocks and other securities owned by a customer are returned to him or her. To accomplish this, SIPC's reserve funds will be used, if necessary, to purchase replacement securities (such as stocks) in the open market. It is always possible that market changes or fraud at the failed brokerage firm (or elsewhere) will result in the returned securities having lost some – or even all – of their value. In other cases, the securities may have increased in value.

Back to Top

**SEVEN QUESTIONS INVESTORS ASK MOST OFTEN**

1. How can I be sure I am dealing with a SIPC member? Why is that important?

    Look for this language:

    MEMBER SECURITIES INVESTOR PROTECTION CORPORATION

    Those words – or "Member SIPC" – appear in all signs and ads of SIPC members. If you have a question as to whether or not a particular firm is a member of SIPC, you may call the SIPC Membership Department at 202/371-8300 or visit us on the Web at www.sipc.org.

    Why is the issue of SIPC membership relevant to you? SIPC protects customers of broker-dealers as long as the broker-dealer is a SIPC member. However, if a SIPC member's registration with the U.S. Securities and Exchange Commission is terminated, the broker-dealer's SIPC membership is also automatically terminated. SIPC loses its power to protect customers of former SIPC members 180 days after the broker-dealer ceases to be a member of SIPC. Normally, the SEC will attempt to prevent the termination of the registration and SIPC membership of a broker-dealer if the firm owes securities or cash to customers. However, a SIPC membership may be terminated if the Commission is unaware the firm owes securities or cash to customers.

2. What should I be vigilant about before a problem strikes?

    Some SIPC members have affiliated or related companies or persons that conduct financial or investment businesses but are not members of SIPC. Some of these affiliates have names which are similar to the name of the SIPC member, or which operate from the same offices or with the same employees. Be sure you receive written confirmation of each securities transaction in your securities account with the SIPC member, and that each confirmation statement and each statement of account is issued by the SIPC member and not by a non-SIPC affiliate. Deposits for credit to your securities account, by check or otherwise, should not be made payable to your account executive, registered representative, or to any other individual, but generally only to your SIPC member broker-dealer or, if your account is carried at another SIPC member who provides clearing services for your SIPC member broker-dealer, then to that other SIPC member. If your check or deposit is payable to other than a SIPC member broker-dealer (such as to the issuer of the securities you are purchasing or to a bank escrow agent), you should take steps to insure that your funds are properly applied.

    You should be vigilant to assure that you receive your periodic statements on a timely basis. The failure to provide statements may indicate the broker-dealer has gone out of business. If you do not receive your statement when due and cannot get a satisfactory explanation, or if for any other reason you believe your broker-dealer may have ceased doing business, you should promptly contact the nearest office of the Commission. If your broker-dealer ceases to be a SIPC member while still owing cash and securities to you, you should notify the Commission well within the 180-day period.

3. How quickly will I get my investments back?

    Most customers can expect to receive their property in one to three months. When the records of the brokerage firm are accurate, deliveries of some securities and cash to customers may begin shortly after the trustee receives the completed claim forms from customers, or even earlier if the trustee can transfer customer accounts to another broker-dealer. Delays of several months usually arise when the failed brokerage firm's records are not accurate. It also is not uncommon for delays to take place when the troubled brokerage firm or its principals were involved in fraud.

4. Who is not eligible for SIPC protections?

    Most customers with cash and securities missing from customer accounts are eligible for SIPC assistance. However, SIPC's funds may not be used to pay claims of any failed brokerage firm customer who also is:

    - A general partner, officer, or director of the firm.

    - The beneficial owner of five percent or more of any class of equity security of the firm (other than certain nonconvertible preferred stocks).

    - A limited partner with a participation of five percent or more in the net assets or net profits of the firm.

    - Someone with the power to exercise a controlling influence over the management or policies of the firm.

    - A broker or dealer or bank acting for itself rather than for its own customer or customers.

5. Where do I submit my claim form?

If your brokerage firm is put into liquidation, the court-appointed trustee will notify you and send a claim form and instructions. You must return the completed claim forms to the trustee within the time limits set forth in the notice and as described in the instructions. Failure to do so may result in the loss of all or a portion of your claim. If you are notified that your brokerage account has been transferred to another brokerage firm, you should still file a claim form in order to preserve the right to correct any errors that may crop up during the transfer of accounts. For a step-by-step guide to this process, see the SIPC Web site at www.sipc.org.

6. Is there a time limit for filing claims?

   Yes. There are two deadlines for the filing of customer claims:

   o Court deadline. The time set by the bankruptcy court for filing of customer claims is usually 60 days after the date the notice of the proceeding is published, but could be as little as 30 days after the publication date. The deadline appears in the published notice and a copy of the notice is mailed to customers along with claim forms and instructions that also prominently display the date. Pay close attention to the deadline set forth in the notice and be certain the trustee receives your claim in a timely manner.

   o Federal law deadline. If your completed claim form is received by the trustee after the date set by the bankruptcy court but no later than six months after public notice is published, the claim is subject to delayed processing and, possibly, limited payment. The six-month deadline is set out in the federal law governing SIPC. The federal deadline absolutely bars any claim that is received more than six months after the publication date. Except for some very narrow exceptions, there are no grounds for time extensions beyond the deadline.

7. Do I have to prove what the broker owes me? How does that work?

   Yes, usually that is done by describing in your claim form the cash and securities that are owed to you. The court-appointed trustee will compare what you claim against the books and records of the brokerage firm. SIPC and court-appointed trustees assume that the brokerage firm's records are accurate. Frequently, your entire account can be transferred to another brokerage firm for your benefit before you have even filed a claim. However, there are sometimes instances of mistakes in brokerage firm records. In rare cases, these mistakes show transactions made without your authority. You should keep copies of trade confirmations. You should keep copies of your latest monthly or quarterly statement of account from your brokerage firm. A trustee may ask you to supply copies of these documents. If you ever discover an error in a confirmation or statement, you should immediately bring the error to the attention of the brokerage firm in writing. Keep a copy of any such writing you send to the brokerage firm. Remember, if there is something wrong with the brokerage firm's records of your account, you will have to prove that, or SIPC and the trustee will assume that the firm's records are accurate.

Back to Top

**AVOIDING INVESTMENT FRAUD**

Learn about investment fraud ... and where to turn for help.

SIPC urges all investors to understand the dangers of investment fraud and where to turn for help if swindled. That is why SIPC works with regulatory and self-regulatory agencies, consumer groups, and other concerned parties to increase investor awareness about scams. Check out the investment fraud warnings on the following Web sites:

U.S. Securities and Exchange Commission
www.sec.gov/

FINRA (Financial Industry Regulatory Authority)
www.finra.org

National Fraud Information Center
www.fraud.org

Investor Protection Trust
http://www.investorprotection.org/downloads/pdf/learn/basics/basics_unit4.pdf

Alliance for Investor Education
www.investoreducation.org

Your state securities agency
http://www.nasaa.org/QuickLinks/ContactYourRegulator.cfm

Securities Industry and Financial Markets Association
www.sifma.org

Canadian Investor Protection Fund
www.cipf.ca

You can find a list of the best investment fraud education resources on the Web by visiting SIPC on the Web at www.sipc.org.

IMPORTANT NOTICE: The Securities Investor Protection Act of 1970 (SIPA) is a complex and technical statute. This brochure provides a basic explanation of the Securities Investor Protection Corporation and SIPA. However, it does not explain the SIPA statute with respect to any particular fact pattern. Answers to questions involving particular facts depend upon interpretations, trustees' decisions, and court actions.

Back to Top

© Copyright 2009 Securities Investor Protection Corporation. All rights reserved.

Designed by The Hastings Group