| | |
|---|---|
| MILBERG LLP | SEEGER WEISS LLP |
| Jonathan M. Landers | Stephen A. Weiss |
| Matthew Gluck | Christopher M. Van de Kieft |
| Brad N. Friedman | Parvin K. Aminolroaya |
| Sanford P. Dumain | One William Street |
| Jennifer L. Young | New York, NY 10004 |
| One Pennsylvania Plaza | Tel: (212) 584-0700 |
| 48th Floor | Fax: (212) 584-0799 |
| New York, NY 10119 | |
| Tel: (212) 594-5300 | |
| Fax: (212) 868-1229 | |

*Attorneys for Robin Popkin Logue, Trustee of the
Joseph S. Popkin Revocable Trust Dated 2/19/06*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Robin Popkin Logue, as Trustee of the Joseph S. Popkin Revocable Trust Dated 2/19/06, by and through her attorneys, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

**BACKGROUND**

1.　The Joseph S. Popkin Revocable Trust Dated 2/19/06 (the "Popkin Trust") is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

1

2. The Popkin Trust's final BMIS statement for Account No. 1ZA121, dated November 30, 2008, states that it owns securities valued at $645,341.02 ("Final BMIS Statement").

3. On or about October 28, 2008, by letter to BMIS, Ms. Logue requested that a new BMIS account, the Logue Family Revocable Trust (the "Logue Family Trust") be created and that $450,000 from the Popkin Trust's BMIS account be transferred to the Logue Family Trust. *See* Joseph S. Popkin Revocable Trust Dated 2/19/06 Customer Claim for Acct. No. 1ZA121 (Exhibit B (B1)). On or about October 29, 2009, Ms. Logue and Peter Logue, Co-Trustees of the Logue Family Trust, received an Existing Account Record Notification from BMIS confirming that an account was opened for the Logue Family Trust bearing the BMIS Account No. 1L0329. *See* Ex. B at B1.

4. On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

5. On December 23, 2008, the Court issued an Order directing the BMIS Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

6. The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor* . . . ." *See* Order at 6 (emphasis added) [Dkt. No. 12].

2

7. On or about May 1, 2009, the Popkin Trust submitted a customer claim form to the BMIS Trustee. *See* Joseph S. Popkin Revocable Trust Customer Claim for Acct. No. 1ZA121 (Exhibit B) (the "Popkin Trust Customer Claim"). The Popkin Trust's Final BMIS Statement was submitted with the Popkin Trust's Customer Claim. *See* Popkin Trust Customer Claim (Exhibit B).

8. On October 19, 2009, the BMIS Trustee sent the Popkin Trust a Determination Letter disallowing the Popkin Trust's claim in its entirety, rather than allowing the claim in the amount of $195,341.02, the total amount that the Popkin Trust claimed. *See* Determination Letter (Exhibit A).

9. The Popkin Trust hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

10. <u>First Objection</u>. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with the Popkin Trust's Customer Claim was the Popkin Trust's Final BMIS Statement showing a final balance of $645,341.02 and documents demonstrating that on or about October 28, 2008 Ms. Logue directed BMIS to transfer $450,000 from the Popkin Trust's BMIS Account to the Logue Family Trust's BMIS Account. *See* Popkin Trust Customer Claim (Exhibit B (B2)). The Popkin Trust's claim should be allowed in the amount of $195,341.02 because the Final BMIS Statement is the best evidence of the amount owed based on the Debtor's books and records and the transfer of funds directed by Ms. Logue should be deemed to have taken place. Alternatively, should the BMIS Trustee and/or a Court not recognize the $450,000 transfer from the Popkin Trust to the Logue Family Trust, the Popkin Trust's claim should be allowed in the full amount of the November 30, 2008 statement, or $645,341.02.

11. <u>Second Objection</u>. The BMIS Trustee has set forth no legal basis for disallowing the Popkin Trust's Customer Claim in full as filed. The only explanations set forth in the Determination

3

Letter are that (1) "[n]o securities were ever purchased for your account," and (2) that "because you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS Liquidation proceeding." Determination Letter 1-2 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

    (a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, s*ee* Order [Dkt. No. 12];

    (b)    is inadequate to rebut the prima facie validity of the Popkin Trust's Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

    (c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

    12.    <u>Third Objection</u>. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the BMIS Trustee objects to the Popkin Trust's Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1; *see also* "Another View: Unwinding Madoff Fraud Fairly," Deal Blog, www.nytimes.com (May 6, 2009). This is incorrect for the following reasons:

    (a)    The BMIS Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

4

>the dollar amount of the account or accounts of a customer, to be determined by --
>
>(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
>(B) any indebtedness of such customer to the debtor on the filing date;
>
>* * * * * * * * *

11. 15 U.S.C. § 78lll(11).  The BMIS Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

       (b)    SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The BMIS statements received by the Popkin Trust stated that the Popkin Trust owned a list of blue chip securities.  It makes no difference whether the securities were purchased:

>A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business.  But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . .  By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on the Popkin Trust's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

       (c)    The Popkin Trust deposited funds with BMIS in the expectation the amount would grow, the Popkin Trust's account statements showed such growth, and the balance on the Final BMIS Statement reflects the benefit of this bargain.  The BMIS Trustee's formula is an improper and

5

wholly inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007) the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties. *Id*. The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id*. This applies precisely to the Popkin Trust's claim.

        (d)      The BMIS Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.

6

>Court:  In other words, if the money was diverted, converted --
>
>Harbeck:  And the securities were never purchased.
>
>Court.  Okay.
>
>Harbeck:  And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C).  The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

>Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably.  Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed.  As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances.  The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims.  Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even where the purchase never actually occurred and the debtor instead converted the cash deposited by the

7

claimant to fund that purchase").[1]  The Popkin Trust is situated no differently from the "securities claimants" discussed by the Second Circuit.  Accordingly, the Popkin Trust's claim should be recognized in full.

13.  In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, the Popkin Trust is entitled to recover interest on such deposited amounts.  Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a)  Under New York law, which is applicable here, funds deposited with the Debtor under these circumstances are entitled to interest.  *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*.  Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as the Popkin Trust.

(b)  Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtor earned on the deposited funds under principles of unjust enrichment.  Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtor on the Popkin Trust's deposits.  *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701

---

[1] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost . . . misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

8

N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

14. <u>Fourth Objection</u>. The BMIS Trustee's action in reducing the amount shown on the Popkin Trust's Customer Claim by any prior gains reflected on the Popkin Trust's Final BMIS Statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. Any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

15. <u>Fifth Objection</u>. The BMIS Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the BMIS Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The BMIS Trustee is required to state and prove when the Ponzi scheme began.

16. <u>Sixth Objection</u>. The Popkin Trust may have been required to pay significant income taxes on distributions which the BMIS Trustee has alleged are fictitious. The BMIS Trustee has justified his proposed method of calculating claims as fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method purportedly equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the BMIS Trustee's method is correct, the Popkin Trust's customer claim should be adjusted by adding all amounts the Popkin Trust actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. *See SEC v. Byers*, No. 08-7104,

9

2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

17.     <u>Seventh Objection</u>.  The Determination Letter purports to calculate the "net equity" for the Popkin Trust's BMIS account on the basis of certain withdrawal transactions for which the Popkin Trust has no or incomplete records.  Many of these withdrawal transactions allegedly occurred more than ten years ago.  It is unreasonable to anticipate that customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request.  Under these circumstances, the BMIS Trustee should be required to prove that the alleged withdrawal transactions occurred by furnishing the appropriate records to the Popkin Trust and, absent such records, such transactions should be deleted from the calculation of the Popkin Trust's "net equity."  Likewise, the BMIS Trustee should be required to prove that the deposit transactions are completely listed by furnishing the appropriate records to the Popkin Trust.

## RELIEF REQUESTED

18.     For the reasons stated herein, the Popkin Trust's Customer Claim should be allowed in its entirety.

19.     For the reasons stated herein, the Court should direct SIPC to issue immediate payment to the Popkin Trust in the amount of $195,341.02 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.  Alternatively, should the BMIS Trustee and/or a Court not recognize the $450,000 transfer from the Popkin Trust to the Logue Family Trust, the Court should direct SIPC to issue payment to the Popkin Trust in the amount of

10

$500,000 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

20. The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and the Popkin Trust will file a response.

21. The Popkin Trust requests such other relief as may be just and equitable.

## CONCLUSION

22. The Popkin Trust reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Popkin Trust's right to object on any additional grounds.

23. The Popkin Trust reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

24. The Popkin Trust reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

25. The Popkin Trust incorporates by reference all reservations of rights set forth in the Popkin Trust's Customer Claim.

Dated: November 17, 2009

    s/Stephen A. Weiss
SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van de Kieft
Parvin K. Aminolroaya
One William Street
New York, NY 10004
Tel: (212) 584-0700
Fax: (212) 584-0799

MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Attorneys for Robin Popkin Logue, Trustee of the Joseph S. Popkin Revocable Trust Dated 2/19/06*