**Schulte Roth & Zabel LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
Marcy Ressler Harris
Email: marcy.harris@srz.com
Sahar H. Shirazi
Email: sahar.shirazi@srz.com

*Attorneys for Dale Ellen Leff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Dale Ellen Leff ("Claimant"), by and through her attorneys, Schulte Roth & Zabel LLP, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"), attached as Exhibit A.

**BACKGROUND**

1. On December 15, 2008, the above-captioned liquidation proceeding was commenced against Bernard L. Madoff Investment Securities, LLC ("BLMIS"), pursuant to the

Securities Investor Protection Act ("SIPA"). (*See* Order, *SEC v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008).) Irving Picard was appointed Trustee ("the BLMIS Trustee") charged with overseeing the liquidation of BLMIS and processing customer claims pursuant to SIPA. (*Id.*; *see also* 15 U.S.C. § 78fff-1.)

2. On December 23, 2008, the Court entered an Order directing the BLMIS Trustee to give notice of the liquidation proceeding and claims procedure to BLMIS customers and setting forth claim filing deadlines. (*See* Order, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008).) Upon information and belief, the BLMIS Trustee provided notice and claim forms to BLMIS' customers in accordance with the Court's Order.

3. The December 23, 2008 Order further provided that, to the extent the BLMIS Trustee disagrees with the amount set forth on a customer claim form, the BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor." (*See* Dec. 23, 2008 Order at 6.)

4. Claimant is a "customer" of BLMIS, as defined by SIPA, and maintained Account No. 1L0082 at BLMIS. (*See* Affidavit of Dale Ellen Leff (Exhibit B) ("Leff Aff.").)

5. Claimant became the accountholder of Account No. 1L0082 on December 9, 2003, five months after the death of her husband Norman M. Leff on July 3, 2003. (Leff Aff. ¶¶ 3-4; IRA Beneficiary Distribution and Spousal Assumption or Inherited IRA Request Form (Exhibit D).) Prior to July 3, 2003, Account No. 1L0082 was Mr. Leff's personal IRA account, and Claimant was neither an accountholder of Account No. 1L0082 nor had any control over Account No. 1L0082; Norman M. Leff was the sole accountholder of Account No. 1L0082. (Leff Aff. ¶¶ 3-4.)

6. After becoming the accountholder of Account No. 1L0082, Claimant deposited funds into the account, and Claimant made no withdrawals from the account, with the exception of one *de minimis* withdrawal of $51.10 (to pay the account custodian) on July 11, 2007. (*Id*. ¶¶ 5-6.)

7. Claimant's final BLMIS statement, dated November 30, 2008 ("Final BLMIS Statement"), reflects that she owned securities in Account No. 1L0082 valued at $2,315,891.96.

8. On or about June 23, 2009, Claimant submitted a customer claim form to SIPC, setting forth her claim in the amount of $2,315,891.96.[1] (*See* Dale Ellen Leff Customer Claim for Account No. 1L0082 (Exhibit C) (collectively with attachments thereto, the "Customer Claim").) Claimant submitted the Final BLMIS Statement and other documentation with the Customer Claim. (*Id.*)

9. All of the securities reflected in the Final BLMIS Statement are real, publicly verifiable securities (*e.g.*, General Electric Co., Google, Wal-Mart Stores, Inc.). (*See id.*)

10. The BLMIS Trustee sent Claimant the Determination Letter, dated October 19, 2009, denying Claimant's claim in its entirety. (*See* Determination Letter (Exhibit A).)

11. The Determination Letter provides that: "[B]ecause you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding." (Determination Letter (Exhibit A).) The BLMIS Trustee has taken the position that "net equity"

---

[1] Claimant's SIPA claim reflects the value of the securities as listed on the Final BLMIS Statement. Claimant does not dispute that the proper date on which to value those securities may be the filing date, *i.e.*, December 11, 2008, for which date market values of the securities reflected on the Final BLMIS Statement are readily available.

3

should be determined by netting all deposits and withdrawals by the customer over the life of the customer's BLMIS account (*i.e.*, the "cash in/cash out method"), without regard to any gains reflected in the Final BLMIS Statement or prior BLMIS statements. (*See* Memorandum Of Law In Support Of Trustee's Motion For An Order Upholding Trustee's Determination Denying "Customer" Claims For Amounts Listed On Last Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating to Net Equity, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Oct. 16, 2009).)

12. Claimant objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

### A. The BLMIS Trustee's View of "Net Equity" is Contrary to SIPA, Second Circuit Precedent, and SIPC's Own Practices.[2]

13. Under SIPA, the BLMIS Trustee is obligated to "satisfy net equity claims of customers." 15 U.S.C. § 78fff(a)(1)(B).

14. The BLMIS Trustee's cash in/cash out method of calculating "net equity" is erroneous.

15. SIPA plainly defines "net equity" as the value of the securities positions in a customer's account as of the SIPA filing date, in this case, December 11, 2008, minus any amount the customer owes the debtor. Specifically:

> The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by–
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the*

---

[2] Claimant incorporates by reference the arguments set forth in the Memorandum of Law Submitted By The SRZ Claimants In Opposition To The Trustee's Interpretation of "Net Equity," filed on November 13, 2009.

4

> *filing date*, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor *on the filing date* . . . .

15 U.S.C. § 78*lll*(11) (emphasis added); *see also In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 72 (2d Cir. 2004) ("*New Times I*") ("Each customer's 'net equity' is 'the dollar amount of the account or accounts of a customer, to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer' corrected for 'any indebtedness of such customer to the debtor on the filing date.'").

    16.  The fact that securities were never purchased by BLMIS does not affect the calculation of "net equity" as defined by SIPA.  The Second Circuit specifically addressed the situation where no securities were purchased by a broker in *New Times I*, holding that net equity claims for "fictitious" securities (which never existed and the market value for which could not be independently obtained or verified) were properly valued based on the amount of money that the claimants initially provided to the debtor. *Id*. at 88.  In contrast, where the securities at issue were "real" and had publicly verifiable values, there was no dispute that "net equity" was calculated as the value of the "real" securities reflected in a customer's account statements on the filing date. *Id*. at 74; *see also Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 129 (2d Cir. 2006) ("*New Times II*") ("[T]he usual remedies when customers hold specific securities" is "to reimburse customers with the actual securities or their market value on the filing date."); Brief for Appellant James W. Giddens as Trustee for the Liquidation of the Businesses of the Substantively Consolidated Estates of New Times Securities Services, Inc. and New Age Financial Services, Inc., and Securities Investor Protection Corporation at 3, *New Times I* (No. 02-6166), 2003 WL 24132249, at *3 ("[I]f the claims are for

5

securities, the only proper measure permitted by the statute is the liquidation value of the security.").

17.  There is no reason to treat Claimant's claim for "real" securities differently from the claims of the New Times claimants who held "real" securities. In both cases, the value of the securities is publicly verifiable, and the "reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality." Brief of Appellant SIPC, *New Times II* at 23 (No. 05-5527-bk), 2005 WL 5338148, at *12; *see also* Reply Brief for Appellant James W. Giddens as Trustee for the Liquidation of the Businesses of New Times Securities Services, Inc. and New Age Financial Services, Inc. at 3, *New Times II* (No. 05-5527(bk)), 2006 WL 4452912, at *3 ("What counts for purposes of SIPA protection is the legitimate expectations of a claimant on the filing date, not a prior relationship or the 'fictive' nature of the transaction.").

18.  Likewise, SIPA's legislative history reflects that Congress was well aware of the possibility of fictitious trading, and explicitly elected to protect the legitimate expectations of customers, even where no securities actually were purchased. As the Senate Report stated:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765 (emphasis added). Likewise, the House Report explained that

> [a] customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, that is not always possible. Accordingly, [when this is not possible, customers] will receive cash based on the market value as of the filing date.

6

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added).

      19.    SIPC itself has acknowledged that a customer's legitimate expectations control the determination of "net equity."  In a brief submitted to the Second Circuit in 2005, SIPC wrote:

> [R]easonable and legitimate claimant expectations of the filing date *are controlling even where inconsistent with transactional reality*.  Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase.

Brief of Appellant SIPC at 23-24, *New Times II* (No. 05-5527-bk), 2005 WL 5338148, at *12 (emphasis added).

      20.    The Second Circuit recognized in *New Times I* that SIPC promulgated (and the SEC approved) the Series 500 rules, 17 C.F.R. §§ 300.500-300.503, which confirm the importance of protecting a customer's legitimate expectations.  *New Times I*, 371 F.3d at 87 ("[T]he premise underlying the Series 500 Rules [is] that a customer's 'legitimate expectations,' based on written confirmations of transactions, ought to be protected.").

      21.    Claimant's legitimate expectations arise from the written confirmations and account statements she received from BLMIS, which reflected that she owned securities valued, as of November 30, 2008, at $2,315,891.96.  (*See* Customer Claim (Exhibit C).)  Claimant's legitimate expectations were further buttressed by the fact that she received independent quarterly account statements from Fiserv, the account custodian, which largely mirrored the account values reflected on Claimant's BLMIS account statements.  Claimant certainly had no expectation that BLMIS only owed her the net of what she deposited and withdrew over the life of her account.

**B.      The BLMIS Trustee's Calculation of Total Deposits and Withdrawals is Incorrect.**

22.     Assuming *arguendo* that the BLMIS Trustee's "cash in/cash out" approach is the correct method for determining a customer's "net equity" in this case, the BLMIS Trustee's determination of Claimant's claim still is incorrect because it erroneously includes deposits and withdrawals that were made before Claimant was the accountholder of Account No. 1L0082. (*See* Determination Letter (Exhibit A); Leff Aff. ¶¶ 3-4.)

23.     The BLMIS Trustee has determined that Claimant made deposits totaling $799,342.22 and withdrawals totaling $1,362,151.10, thus purportedly making Claimant a "net winner." (*See* Determination Letter (Exhibit A).) However, virtually all of the deposits and withdrawals identified by the Trustee were made prior to the date upon which Claimant became the accountholder. (*Id*.; Leff Aff. ¶¶ 3-4.)

24.     There is no basis under SIPA to determine Claimant's net equity claim based upon account activity of a separate customer, which occurred before Claimant ever became an accountholder. The definition of "net equity" is explicitly focused on the specific "customer" at issue. Thus, "net equity" is defined as the "dollar amount of the account . . . *of a customer*," as determined by "calculating the sum which would have been owed by the debtor *to such customer* . . . minus any indebtedness *of such customer* to the debtor." *See* 15 U.S.C. § 78*lll*(11) (emphasis added). Indeed, SIPA plainly provides that accounts are treated separately unless they are held by the same customer in the same capacity. *Id.* ("In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers."). Thus, deposits or withdrawals made before Claimant became the accountholder are irrelevant – they were made by another "customer."

25.     The only deposits and withdrawals that should matter for determining Claimant's "net equity" under the BLMIS Trustee's erroneous "cash in/cash out" methodology

8

are Claimant's deposits totaling $97,487.70 made in 2004 and 2005, and her nominal withdrawal of $51.10 (to pay the account custodian) on July 11, 2007.  (*See* Leff Aff. ¶¶ 5-6.)  Based upon those deposits and withdrawals, Claimant is entitled, at a minimum, to "net equity" in the amount of $97,436.60.

## CONCLUSION

26.    For the reasons stated above,

    a)    the Customer Claim should be allowed in its entirety;

    b)    the Court should direct SIPC to issue immediate payment to Claimant in the amount of $2,315,891.96, which is the November 30, 2008 value, or in the amount of the filing date value, plus interest[3];

    c)    in the alternative, the Court should direct SIPC to issue immediate payment to the Claimant in the amount of $97,436.60, plus interest; and

    d)    the Court should order such other and further equitable relief as the Court deems appropriate.

Dated:  New York, New York
         November 17, 2009

SCHULTE ROTH & ZABEL LLP

By:  /s/ Marcy R. Harris
Marcy Ressler Harris
Sahar H. Shirazi
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Dale Ellen Leff*

---

[3]    To the extent it is determined that BLMIS customers are entitled to interest or other such compensation as a result of the BLMIS Trustee's misapplication of SIPA, Claimant is entitled to recover such interest on her claim as well.