Edward P. Grosz (EG-9120)
Reitler Kailas & Rosenblatt LLC
800 Third Avenue
New York, New York 10022
(212) 209-3050
egrosz@reitlerlaw.com
*Attorneys for Leo Silverstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                       Plaintiff,

   -against-

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                       Defendant.
-------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIMS 000097, 000098 AND 009711**

      Leo Silverstein hereby objects to two Notices of Trustee's Determination of Claim, both dated October 19, 2008, and states as follows:

## BACKGROUND

      1.     Leo Silverstein is a "customer" of Bernard L. Madoff Investment Securities, LLC ("BMIS"), as defined by the Securities Investor Protection Act of 1970, as amended ("SIPA"). See 15 U.S.C. § 78lll(2).

      2.     Leo Silverstein established an individual retirement account ("IRA") with BMIS bearing BMIS account number 1-ZR110.

      3.     According to the account statement issued by BMIS for the period ending November 30, 2008, Mr. Silverstein's IRA held securities valued at approximately $1,571,619.32.

4. Leo Silverstein established a personal account with BMIS bearing BMIS account number 1-ZA566.

5. According to the account statement issued by BMIS for the period ending November 30, 2008, Mr. Silverstein's personal account held securities valued at approximately $262,309.20.

6. This liquidation proceeding was commenced on December 11, 2008 by the filing of a Complaint by the United States Securities and Exchange Commission in the United States District Court for the Southern District of New York. Securities and Exchange Commission v. Madoff, et al., Civ. Docket No. 08-10791 (LLS). By Order dated December 15, 2009, the District Court (Stanton, U.S.D.J.) appointed Irving H. Picard trustee (the "BMIS Trustee") for the liquidation of the business of BMIS and removed this proceeding to this Court. See ECF Docket No. 1.

7. On December 23, 2008, this Court issued an Order directing the BMIS Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. ECF Docket No. 12. The December 23 Order provided that "with respect to customer claims which disagree with the Debtor's books and records and which are not resolved by settlement . . . [t]he Trustee shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor . . . ." Id., p. 6 (emphasis added).

8. On or about January 9, 2009, Mr. Silverstein submitted a customer claim form to the BMIS Trustee for his IRA. The IRA's BMIS Statement for November 30, 2008 was submitted with the claim form. A copy of the claim form and the BMIS Statement is attached hereto as Exhibit A.

9. On October 19, 2009, the BMIS Trustee sent Mr. Silverstein a determination letter disallowing Mr. Silverstein's IRA claim in its entirety. A copy of the determination letter is attached hereto as Exhibit B. In his letter, the BMIS Trustee identified Mr. Silverstein's IRA claim as Claim Number 000098 and 009711, the latter claim being duplicative of the former claim.

10. On or about January 9, 2009, Mr. Silverstein submitted a customer claim form to the BMIS Trustee for his personal account. The BMIS Statement for November 30, 2008 was submitted with the claim form. A copy of the claim form and the BMIS Statement is attached hereto as Exhibit C.

11. On October 19, 2009, the BMIS Trustee sent Mr. Silverstein a determination letter disallowing Mr. Silverstein's personal account claim in its entirety. A copy of the determination letter is attached hereto as Exhibit D. In his letter, the BMIS Trustee identified Mr. Silverstein's personal claim as Claim Number 000097.

## GROUNDS FOR OBJECTION

12. <u>First Objection</u>. The BMIS Trustee's determination letters fail to comply with this Court's December 23, 2008 Order authorizing the BMIS Trustee to "satisfy . . . those portions of any and all customer claims and accounts which agree with the Debtor's books and records . . . ." ECF Docket No. 12, p. 5. The BMIS account statement for the IRA and the personal account, included in Mr. Silverstein's customer claim forms, is the best evidence of the amount owed based on the Debtor's books and records. Accordingly, the claims should have been allowed in the full amount shown on those account statements.

3

13. <u>Second Objection</u>. The BMIS Trustee has set forth no legal basis for disallowing Mr. Silverstein's customer claims in full as filed. Only two explanations were set forth in the BMIS Trustee's determination letters for rejecting the claims. The BMIS Trustee stated that "No securities were ever purchased for your account," and that "because you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BMIS liquidation proceeding." Ex. B, pp. 1-2; Ex. D, pp. 1-2. These statements in the determination letters are inadequate, as a matter of law. The BMIS Trustee's determination letter does not provide a clear reason for the rejection of Mr. Silverstein's claims, as required by this Court's December 23, 2008 Order. Moreover, the BMIS Trustee does not and cannot rebut the prima facie validity of the account statements sent by BMIS to Mr. Silverstein. Finally, the BMIS Trustee's determination letters violate his legal obligation to set forth clearly the relevant facts and legal theories upon which the objections are based. <u>See</u> Collier on Bankruptcy ¶ 3007.01(3) (2009) ("[A]n objection to a claim should . . . meet the standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); <u>In re: Enron Corp.</u>, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y., Jan. 13, 2003) (same).

14. <u>Third Objection</u>. 15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." The BMIS Trustee has taken the position that Mr. Silverstein does not have a positive "net equity" in either his IRA or his personal account because no securities were ever actually purchased on Mr. Silverstein's behalf by BMIS and because Mr. Silverstein supposedly withdrew more

4

money from each of those accounts than he deposited. <u>See</u> Exs. B, D. The BMIS Trustee's position is inconsistent with the express language of SIPA, which defines net equity in terms of "the sum which would have been owed by the debtor to such customer if the debtor had been liquidated, by sale or purchase on the filing date, <u>all securities positions of such customer</u> . . . ." 15 U.S.C. § 78lll(11)(a) (emphasis added). SIPA's legislative history makes clear that Congress intended to protect customer expectations, as reflected in their brokerage account statements, even where, as here, no securities were actually purchased on behalf of the customer:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, <u>never purchased</u> or even stolen, it is not always possible to provide to customers that which they expect to receive, <u>that is, securities which they maintained in their brokerage account.</u> . . . A principal underlying purpose of the bill is to permit a customer to receive securities to the maximum extent possible instead of cash, in satisfaction of a claim for securities. <u>By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, *the amendments not only would satisfy the customers' legitimate expectations,*</u> but also would restore the customer to his position prior to the broker-dealer's financial difficulties.

S. Rep. No. 95-763, p. 2 (1978) (emphasis added). The BMIS Trustee should be required to satisfy the legitimate expectations of BMIS' customers, as reflected in the account statements delivered to them by BMIS.

15. Mr. Silverstein deposited funds with BMIS with the expectation that his investment would grow. BMIS' account statements showed such growth, and the balance on his final BMIS statements reflected the benefit of his bargain. The BMIS Trustee's determination reflects a wholly improper and inadequate calculation of Mr. Silverstein's losses. In <u>Visconsi v. Lehman Bros., Inc.</u>, 244 Fed. Appx. 708 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit upheld an arbitration award that

5

awarded damages to the victim of a Ponzi scheme, and rejected the same argument made by the BMIS Trustee herein, that the victims were not damaged if they withdrew more funds from their account than they invested:

> [W]e find that the out-of-pocket theory of damages, which underlies Lehman's assertion that it did not harm Plaintiffs, is an improper means of determining damages under the circumstances, and thus Lehman's argument is wholly without merit. The out-of-pocket theory focuses on the direct cash flow to and from Plaintiffs; it is a reliance measure of damages, which seeks to return Plaintiffs to the position they held before investing their money with Gruttadauria, SG Cowen, and Lehman.
>
> \*             \*             \*
>
> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope – indeed a reasonable expectation – that it would grow. . . . Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990's, which, had they hired an honest broker or a watchful company that reasonably supervised its employees, would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amount of their previous deposits and withdrawals. We therefore reject Lehman's argument because it is founded on an improper – and wholly inadequate – measure of damages.

Id., pp. 713-714. The Sixth Circuit's reasoning applies precisely to Mr. Silverstein's claims.

16. The BMIS Trustee's determination letters are contrary to the policies of plaintiff Securities Investor Protection Corporation ("SIPC"). In In re: New Times Securities Services, Inc., 371 F.3d 68 (2d Cir. 2004), the United States Court of Appeals

6

for the Second Circuit described SIPC's policies towards investors like Mr. Silverstein who were fraudulently misled that their money had been invested in listed securities as follows:

> Meanwhile, investors who were misled by Goren to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds – because Goren never executed the transactions – the information that these claimants received on their account statements "mirrored what would have happened had the given transaction been executed." As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicated that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," in contrast to the "cash claimants" bringing this appeal, could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

Id., p. 74 (citations omitted). In its brief before the United States Circuit Court for the Second Circuit in In re: New Times Securities Services, Inc. (Docket No. 05-5527), SIPC could not have been clearer in reaffirming the centrality of the customer's expectations – and of the statements provided by the broker upon which those expectations were based – in determining the relief to which a customer is entitled:

> Most importantly for purposes of this appeal, *the availability, nature, and extent of "customer" relief under SIPA are measured by claimant expectations as of the "filing date"* .... Claimant expectations lie at the heart of SIPA due to Congress's desire to treat brokerage customers as investors and, where appropriate, to return their securities to them, not merely the cash equivalent thereof.
>
> Of vital importance here, *reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality.* Thus, for example, where a claimant orders a securities purchase and receives a written confirmation reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), *even where the purchase never actually occurred and the*

7

*debtor instead converted the cash deposited by the claimant to fund the purchase.* . . . .

The centrality of claimant filing-date expectations is evident throughout SIPA. . . . ***The first component in the net equity calculus – the cash or securities owed by the debtor to the customer – turns entirely on the claimant's legitimate, filing date expectations regarding his or her account.***

Brief of Appellant Securities Investor Protection Corporation, pp. 22-25 (citations omitted) (emphasis added).

17.    Fourth Objection. In the event that the Court should determine that claimed gains on deposited funds should not be allowed, Mr. Silverstein is entitled to recover interest on such deposited amounts. In bankruptcy cases, state law governs the substantive rights of creditors against bankrupt estates. See Travelers Cas. & Sur. Co. of Amer. v. Pacific Gas & Elec. Co., 549 U.S. 443, 450-451 (2007). Under New York law, which is applicable here, customers making claims of conversion and unjust enrichment are entitled to prejudgment interest at the statutory rate of 9%. Eighteen Holding Corp. v. Drizin, 268 A.D.2d 371 (1st Dep't 2000); Sternberg v. Sherman, 2008 WL 1968297 (S.D.N.Y., May 2, 2008).

18.    Fifth Objection. The BMIS Trustee is, in effect, imposing upon Mr. Silverstein a fraudulent conveyance judgment for sums that Mr. Silverstein purportedly withdrew from his accounts beyond the six-year statute of limitations period applicable to such claims under New York State law. Fiber Consultants, Inc. v. Fiber Optek Interconnect Corp., 56 A.D.3d 605 (2d Dep't 2008). To the extent the BMIS Trustee is seeking to count withdrawals Mr. Silverstein made from his accounts more than six years ago as purportedly fraudulent transfers, such withdrawals should not be counted as cash

8

received by Mr. Silverstein, even under the BMIS Trustee's "money in/money out" formula.

19. <u>Sixth Objection</u>. Mr. Silverstein disputes the BMIS Trustee's compilation of deposits and withdrawals from his IRA account and his personal account. Mr. Silverstein reserves the right to seek discovery from the BMIS Trustee regarding the full history of his account in the event he is unable to recreate that history from his own records.

20. <u>Seventh Objection</u>. Mr. Silverstein's IRA account was established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, <u>et seq.</u>, whose provisions preempt the state fraudulent conveyance law upon which the BMIS Trustee presumably relies. 29 U.S.C. § 1144(a). As evidence of Congressional intent to protect ERISA-qualified plans, the Bankruptcy code provides that such plans are protected from the claims of creditors. 11 U.S.C. § 541(b)(7)(a)(i)(I). <u>See</u> <u>also</u> <u>Patterson v. Shumate</u>, 504 U.S. 753 (1992) (holding that debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankrupt estate pursuant to 11 U.S.C. § 541(c)(2)).

## **RELIEF REQUESTED**

21. For the reasons stated herein, Mr. Silverstein's IRA claim (Number 000098 and 009711) and his personal account claim (Number 000097) should be allowed in its entirety, and the Court should direct SIPC to issue immediate payment to Mr. Silverstein in the full amount of his claims, up to the amount of $500,000 for each claim, plus interest from the date of the determination letters, without imposing conditions to payment which are not authorized or warranted.

9

22. Mr. Silverstein requests such other relief as may be just and equitable.

23. Mr. Silverstein reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Silverstein's right to object on any additional grounds.

Dated: New York, New York
November 17, 2009

REITLER KAILAS & ROSENBLATT LLC

By:  /s/ Edward P. Grosz
Edward P. Grosz (EG-9120)
egrosz@reitlerbrown.com
Reitler Kailas & Rosenblatt LLC
800 Third Avenue
New York, New York 10022
(212) 209-3050
*Attorneys for Leo Silverstein*

TO: Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111