EXHIBIT C

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------
In the Matter of:                    )
                                     )          800-8178-288
NEW TIMES SECURITIES                 )
SERVICES, INC.                       )
                                     )
         Debtor                      )
                                     )
------------------------------------

1) Application filed by proposed class claimants to
authorize and approve the filing of a class proof of claim
and for a certification of the putative class and to
shorten time for the hearing

Memorandum by proposed class claimants

Memorandum by Plaintiff Securities Investor Protection
Corporation

Memorandum of law by Trustee James W. Giddens

Affidavit of Derek J. T. Adler in opposition

                              United States Bankruptcy
                              Court
                              Westbury, New York

                              July 28, 2000
                              10:00 a.m.

B E F O R E:

      HONORABLE STAN BERNSTEIN
      United States Bankruptcy Judge

A P P E A R A N C E S:

      HUGHES HUBBARD & REED LLP
            Attorney for James W. Giddens, Trustee
      One Battery Park Plaza
      New York, New York  10004
            BY:  JAMES W. KOBAK, JR, ESQ.
                 DANIEL S. LUBELL, ESQ.

         (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

APPEARANCES (Contd.)

STEPHEN P. HARBECK, ESQ.
    General Counsel and Secretary
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, D.C.  20005


FARRELL FRITZ
    Co-Counsel for Class Claimants and
    Putative Class Plaintiffs
EAB Plaza
Uniondale, New York  11556
    BY:  TED A. BERKOWITZ, ESQ.


HELLER HOROWITZ & FEIT, P.C.
    Co-Counsel for Class Claimants and
    Putative Class Plaintiffs
292 Madison Avenue
New York, New York  10017
    BY:  SIGMUND S. WISSNER-GROSS, ESQ.
        ALAN EISENBERG, ESQ.


RICHARD L. STONE, ESQ.
    Receiver for New Age Financial Services
830 Third Avenue
New York, New York  10022


SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
7 World Trade Center
New York, New York  10048
    BY:  ALISTAIRE BAMBACH, ESQ.

1       THE COURT: But, there were -- there were
2  persons in that class.
3       MR. HARBECK: Yes, sir, there were persons who
4  deposited money with at least one of them, and I assume
5  with the Debtor --
6       THE COURT: Okay, well, we're --
7       MR. HARBECK: -- to buy those.
8       THE COURT: -- assuming that, for the purpose
9  of argument, --
10      MR. HARBECK: Correct.
11      THE COURT: -- with the Debtor.
12      All right. So, what's the second kind of
13 claim?
14      MR. HARBECK: The second kind of claims are for
15 people who bought real honest-to-goodness mutual funds.
16      THE COURT: Okay, and that's different from
17 securities.
18      MR. HARBECK: No, they are securities, but
19 they're real securities, unlike these fictitious shares of
20 the New Age Money Market.
21      THE COURT: But, SIPC draws a distinction for
22 purposes of administration of this case, between my having
23 shares of IBM, versus my having shares of --
24      MR. HARBECK: New Age Money Market Fund.
25      THE COURT: No, no, no. Third category.

1   MR. HARBECK: No. The mutual fund shares are
2   just the kind of securities these people bought. You
3   could think of them in terms of being IBM, if you want.
4   It's the same -- same analysis.
5   THE COURT: Okay. But, it -- at the macro
6   level, the mutual fund has securities. Those may be IBM,
7   or anything else.
8   MR. HARBECK: But it, itself, is a security.
9   THE COURT: But, I -- but, I have some kind of
10  percentage interest in that mutual fund.
11  MR. HARBECK: You have shares in it, and those
12  shares are securities.
13  THE COURT: Okay, all right.
14  So, from the -- whether I have direct shares
15  or, in effect, indirect shares, you don't care.
16  MR. HARBECK: No, we do. You have direct
17  shares of the mutual fund, and here is where Congress
18  comes into play.
19  THE COURT: Okay.
20  MR. HARBECK: To the extent members -- people
21  who dealt with this Debtor bought any kind of securities
22  and want those securities, --
23  THE COURT: Okay.
24  MR. HARBECK: -- Congress put them on a short
25  leash, and this is a very specific leash. It says if you

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

```
 1    file within sixty days, you'll get the securities,
 2    absolutely.  If you file between sixty days and six
 3    months, the Trustee will have an option --
 4            THE COURT:  Well, wait a minute.  I get the --
 5    I get the shares absolutely.  Okay.
 6            MR. HARBECK:  The Trustee will have an option
 7    to pay you in either the shares or the value of the shares
 8    on the filing date of the bankruptcy.
 9            THE COURT:  Okay, so, now tell me the economic
10    consequences of filing before sixty days and after sixty
11    days, if you --
12            MR. HARBECK:  Some people could win; some
13    people could lose.
14            THE COURT:  -- deposited monies for a mutual
15    fund that has a fluctuating value.
16            MR. HARBECK:  No, you -- at this point, the
17    shares -- the mutual fund shares should be in your
18    account.  It's not depositing money for them.  You've
19    bought them.  You've got a confirmation -- you've got a
20    statement from the firm, saying you have in your account
21    shares of one, two, and three different securities.  These
22    securities happen to be mutual funds.
23            THE COURT:  Okay.
24            MR. HARBECK:  And, what Congress did is
25    Congress said, --
```

1   THE COURT: Okay, so, you're telling me that
2   this is very different from the open transaction.
3   MR. HARBECK: Correct.
4   THE COURT: Okay, so, now we're dealing with a
5   closed transaction, where the money is there, you have
6   interest in a --
7   MR. HARBECK: The securities are there.
8   THE COURT: -- real --
9   MR. HARBECK: Not the money is there. The
10  securities are supposed to be there.
11  THE COURT: No, no -- yeah, you have -- you
12  have an ownership interest in the securities; namely,
13  shares of the mutual fund, of a mutual fund that is real,
14  existing as of the petition date.
15  MR. HARBECK: Dreyfus, Janus, you name it.
16  THE COURT: Okay.
17  MR. HARBECK: Now, what Congress did is it said
18  it wants to give the Trustee and SIPC a very good idea of
19  what securities have to -- that the Trustee is going to
20  have to go out into the marketplace and buy. So, if you
21  file within sixty days, you'll get the securities, without
22  question. Whether -- if they triple in value, you'll get
23  the securities.
24  But, if --
25  THE COURT: Even -- even if --

1     MR. HARBECK: Even if they're not there.
2     THE COURT: Even if they're not there.
3     MR. HARBECK: Correct.
4     THE COURT: In other words, if the money was
5     diverted, converted --
6     MR. HARBECK: And the securities were never
7     purchased.
8     THE COURT: Okay.
9     MR. HARBECK: And, if those positions triple,
10    we will gladly give the people their securities positions.
11    THE COURT: But, you've got to jump.
12    MR. HARBECK: But, you've got to act fast,
13    yeah. And, Congress did that --
14    THE COURT: Because -- because --
15    MR. HARBECK: -- because of the fluctuations.
16    THE COURT: -- because there's a concern --
17    because there's a concern that the value of this mutual
18    fund might skyrocket and it's going to cost SIPC a lot
19    more money.
20    MR. HARBECK: Six months down the line, that's
21    right.
22    THE COURT: Okay, all right. And, you don't
23    want people playing games with you.
24    MR. HARBECK: That's correct.
25    THE COURT: Deciding when they're going to --

1   it's like the -- do you know about price-laters?

2   MR. HARBECK: Sorry?

3   THE COURT: Price-laters?

4   MR. HARBECK: I can't say that I do.

5   THE COURT: Oh, gee, it's a great analogy.

6   MR. HARBECK: In any event --

7   THE COURT: Do you know what a price-later

8   agreement is, Mr. Berkowitz?

9   MR. BERKOWITZ: No, I'm going to play even with

10  Mr. Harbeck --

11  MR. HARBECK: Thank you, very much.

12  MR. BERKOWITZ: -- for insurance.

13  THE COURT: I deposit grain in the elevator.

14  This goes back to my days in the rural counties of

15  Michigan. And, of course, the grain is all co-mingled.

16  And, I look to the board price and say, "Bingo. That's

17  the price. Pay me."

18  So, I deposit the grain under a price-later

19  agreement, under an agreement in which the price is later

20  to be fixed. And, of course, I'm going to speculate on

21  the market. I'm going to wait until the price is high

22  enough to say "Pay me that."

23  So, basically, I'm a commodities broker, but

24  it's not in futures. It's grain in the elevator. And,

25  God help you if the elevator goes into bankruptcy. Then,

1    it all falls apart.

2         So, --

3         MR. HARBECK: At a later date, perhaps we could
4    talk about the similarities between --

5         THE COURT: No, no, no --

6         MR. HARBECK: -- that grain and the concept of
7    customer property, Your Honor.

8         THE COURT: I suspect so, but I'm glad I had
9    this prior experience, so I can resort to these fruitful
10   analogies.

11        MR. HARBECK: All right. So, Congress says do
12   that in sixty days.

13        THE COURT: Okay.

14        MR. HARBECK: And, that -- that is a very
15   specific and a very special proceeding that you don't see
16   in bankruptcy.

17        THE COURT: Okay, and that has -- that's tied
18   into a policy analysis of the operation of the markets and
19   a determination by Congress that parties are entitled to a
20   certain protection, but they have to act expeditiously.

21        MR. HARBECK: So, let's look at the effect
22   here.

23        THE COURT: Okay, great.

24        MR. HARBECK: As to the money market fund
25   investors, there is no effect at all. The securities are