**Schulte Roth & Zabel LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
William D. Zabel
Email: william.zabel@srz.com
Marcy Ressler Harris
Email: marcy.harris@srz.com
Frank J. LaSalle
Email: frank.lasalle@srz.com

*Attorneys for JA Special Limited Partnership*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

JA Special Limited Partnership ("Claimant"), by and through its attorneys, Schulte Roth & Zabel LLP, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"), attached as Exhibit A.

**BACKGROUND**

1. On December 15, 2008, the above-captioned liquidation proceeding was commenced against Bernard L. Madoff Investment Securities, LLC ("BLMIS"), pursuant to the Securities Investor Protection Act ("SIPA"). (*See* Order, *SEC v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008).) Irving Picard was appointed Trustee ("the BLMIS Trustee") charged with overseeing the liquidation of BLMIS and processing customer claims pursuant to SIPA. (*Id.*; *see also* 15 U.S.C. § 78fff-1.)

2. On December 23, 2008, the Court entered an Order directing the BLMIS Trustee to give notice of the liquidation proceeding and claims procedure to BLMIS customers and setting forth claim filing deadlines. (*See* Order, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008).) Upon information and belief, the BLMIS Trustee provided notice and claim forms to BLMIS' customers in accordance with the Court's Order.

3. The December 23, 2008 Order further provided that, to the extent the BLMIS Trustee disagrees with the amount set forth on a customer claim form, the BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor." (*See* Dec. 23, 2008 Order at 6.)

4. Claimant is a "customer" of BLMIS, as defined by SIPA.

5. Claimant's final BLMIS statement, dated November 30, 2008 ("Final BLMIS Statement"), reflects that it owned securities valued at $88,476,461.90.

6. On or about June 26, 2009, Claimant submitted a customer claim form to SIPC, setting forth its claim in the amount of $88,476,461.90.[1] (*See* JA Special Limited

---

[1] Claimant's SIPA claim reflects the value of the securities as listed on the Final BLMIS Statement. Claimant does not dispute that the proper date on which to value those securities may be the filing date, *i.e.*,

2

Partnership Customer Claim for Account No. 1J0024 (Exhibit B) (collectively with attachments thereto, the "Customer Claim").)  Claimant submitted the Final BLMIS Statement and other requested documentation with the Customer Claim.  (*Id*.)

       7.    All of the securities reflected in the Final BLMIS Statement are real, publicly verifiable securities, such as United States Treasury Bills and the common stock of well-known companies Texas Instruments, Inc., Priceline.com, Inc., Discover Financial Services, Altera Corp. and Morgan Stanley (the "Stock Positions").[2]  (*See id*.)

       8.    The BLMIS Trustee sent Claimant the Determination Letter, dated October 19, 2009, denying Claimant's claim in its entirety.  (*See* Determination Letter (Exhibit A).)

       9.    The Determination Letter provides that:  "[B]ecause you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding." (Determination Letter (Exhibit A).)  The BLMIS Trustee has taken the position that "net equity" should be determined by netting all deposits and withdrawals by the customer over the life of the customer's BLMIS account (*i.e.*, the "cash in/cash out method"), without regard to any gains reflected in the Final BLMIS Statement or prior BLMIS statements.  (*See* Memorandum Of Law In Support Of Trustee's Motion For An Order Upholding Trustee's Determination Denying

---

December 11, 2008, for which date market values of the securities reflected on the Final BLMIS Statement are readily available.

[2]    The sole exception was a purported investment in Fidelity Spartan U.S. Treasury Money Market Fund ("Fidelity Spartan"), which existed prior to 2005 and either closed or was renamed thereafter. *See* Trustee Mem. at 41; Beth Healy, *Madoff Might Not Have Made Any Trades*, THE BOSTON GLOBE, Jan. 15, 2009, http://www.boston.com/business/articles/2009/01/15/madoff_might_not_have_made_any_trades/. The purported investment in Fidelity Spartan accounted for less than 1% of Claimant's total account value.  Thus, while Claimant believes the BLMIS Trustee can value the Fidelity Spartan investment, its inclusion among the remaining indisputably "real" securities reflected on the Final BLMIS Statement should not impact how Claimant's net equity claim is valued.  At worst, the Fidelity Spartan investment can be ignored in valuing Claimant's account.

3

"Customer" Claims For Amounts Listed On Last Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating to Net Equity, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Oct. 16, 2009) ("Trustee Mem.").)

10. The amounts set forth by the BLMIS Trustee in Table 1 annexed to the Determination Letter are incorrect insofar as they do not reflect certain deposits made into Account No. 1J0024, including a deposit of actual securities valued in excess of $152 million made in 1992, as reflected in account statements that we understand the BLMIS Trustee has in his possession.

11. Beyond the BLMIS Trustee's inaccurate calculation of Claimant's deposits, Claimant objects to the Determination Letter for the additional reasons described below.

## GROUNDS FOR OBJECTION

**A.    The BLMIS Trustee's View of "Net Equity" is Contrary to SIPA, Second Circuit Precedent, and SIPC's Own Practices.[3]**

12. Under SIPA, the BLMIS Trustee is obligated to "satisfy net equity claims of customers."  15 U.S.C. § 78fff(a)(1)(B).

13. The BLMIS Trustee's cash in/cash out method of calculating "net equity" is erroneous.

14. SIPA defines "net equity" as the value of the securities positions in a customer's account as of the SIPA filing date, in this case, December 11, 2008, minus any amount the customer owes the debtor.  Specifically:

---

[3]    Claimant incorporates by reference the arguments set forth in the Memorandum of Law Submitted By The SRZ Claimants In Opposition To The Trustee's Interpretation Of "Net Equity," filed on November 13, 2009 (the "SRZ Claimants 'Net Equity' Memorandum").

4

> The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by–
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the filing date*, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor *on the filing date* . . . .

15 U.S.C. § 78*lll*(11) (emphasis added); *see also In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 72 (2d Cir. 2004) ("*New Times I*") ("Each customer's 'net equity' is 'the dollar amount of the account or accounts of a customer, to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer' corrected for 'any indebtedness of such customer to the debtor on the filing date.'").

15. The fact that securities were never purchased by BLMIS does not affect the calculation of "net equity" as defined by SIPA. The Second Circuit specifically addressed the situation where no securities were purchased by a broker in *New Times I*, holding that net equity claims for "fictitious" securities (which never existed and the market value for which could not be independently obtained or verified) were properly valued based on the amount of money that the claimants initially provided to the debtor. *Id*. at 88. In contrast, where the securities at issue were "real" and had publicly verifiable values, there was no dispute that "net equity" was calculated as the value of the "real" securities reflected in a customer's account statements on the filing date. *Id*. at 74; *see also Stafford v. Giddens (In re New Times Secs. Servs., Inc.)*, 463 F.3d 125, 129 (2d Cir. 2006) ("*New Times II*") ("[T]he usual remedies when customers hold specific securities" is "to reimburse customers with the actual securities or their market value on the filing date."); Brief for Appellant James W. Giddens as Trustee for the

5

Liquidation of the Businesses of the Substantively Consolidated Estates of New Times Securities Services, Inc. and New Age Financial Services, Inc., and Securities Investor Protection Corporation at 3, *New Times I* (No. 02-6166), 2003 WL 24132249, at *3 ("[I]f the claims are for securities, the only proper measure permitted by the statute is the liquidation value of the security.").

16. Likewise, SIPA's legislative history reflects that Congress was well aware of the possibility of fictitious trading, and explicitly elected to protect the legitimate expectations of customers, even where no securities actually were purchased. As the Senate Report stated:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765 (emphasis added). Likewise, the House Report explained that

> [a] customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, that is not always possible. Accordingly, [when this is not possible, customers] will receive cash based on the market value as of the filing date.

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added).

17. SIPC itself has acknowledged that a customer's legitimate expectations control the determination of "net equity." In a brief submitted to the Second Circuit in 2005, SIPC wrote:

> [R]easonable and legitimate claimant expectations of the filing date *are controlling even where inconsistent with transactional reality*. Thus, for example, where a claimant orders a securities purchase and receives a

6

> written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase.

Brief of Appellant SIPC at 23-24, *New Times II* (No. 05-5527-bk), 2005 WL 5338148, at *12 (emphasis added).

18.  The Second Circuit recognized in *New Times I* that SIPC promulgated (and the SEC approved) the Series 500 rules, 17 C.F.R. §§ 300.500-300.503, which confirm the importance of protecting a customer's legitimate expectations. *New Times I*, 371 F.3d at 87 ("[T]he premise underlying the Series 500 Rules [is] that a customer's 'legitimate expectations,' based on written confirmations of transactions, ought to be protected.").

19.  Claimant's legitimate expectations arise from the written confirmations and account statements it received from BLMIS, which reflected that it owned securities valued, as of November 30, 2008, at $88,476,461.90. (*See* Customer Claim (Exhibit B).) Claimant certainly had no expectation that BLMIS only owed it the net of what it deposited and withdrew over the life of its account.

    **B.  Under the BLMIS Trustee's Own Reading of *New Times*, Claimant is Entitled to the Value of the Securities in its Account as of the Filing Date.**

20.  In attempting to distinguish BLMIS customers from the New Times customers who held "real" securities, the BLMIS Trustee has improperly focused on the "transactional reality" that BLMIS purportedly never engaged in any actual securities trading, and then points to several purported aspects of the way in which BLMIS conducted its Ponzi scheme to argue that the treatment afforded the New Times investors is inappropriate here. (*See* Trustee Mem. at 40-42.) In particular, the BLMIS Trustee contends that the BLMIS customers'

7

investments "were not subject to any of the risks of the market," did not "behave[] 'on paper' the way the actual securities performed in the marketplace," and "did not represent the growth of long-term holdings over time." (*Id.* at 41-42.)

21.     As set forth in the SRZ Claimants "Net Equity" Memorandum, these "distinctions" identified by the BLMIS Trustee are irrelevant because, as SIPC itself has acknowledged, the "reasonable and legitimate claimant expectations of the filing date are controlling even where inconsistent with transactional reality." SIPC Br. *New Times II* at 23 (No. 05-5527-bk), 2005 WL 5338148, at *12; *see also* Reply Brief for Appellant James W. Giddens as Trustee for the Liquidation of the Businesses of New Times Securities Services, Inc. and New Age Financial Services, Inc. at 3, *New Times II* (No. 05-5527(bk)), 2006 WL 4452912, at *3 ("What counts for purposes of SIPA protection is the legitimate expectations of a claimant on the filing date, not a prior relationship or the 'fictive' nature of the transaction.").

22.     Even if the BLMIS Trustee's supposed distinctions were relevant, they only highlight why Claimant's claim, based on the value of the securities reflected on the Final BLMIS Statement, must be allowed. First, the Stock Positions all reflect long-term investments. Claimant's account statements, which we understand the BLMIS Trustee has in his possession, reflect that its positions in Priceline.com, Morgan Stanley, Texas Instruments and Altera Corp. all were acquired in 2000 – more than *eight years* prior to the filing date of this liquidation proceeding. In fact, even Claimant's position in Discover Financial Services, which was acquired in 2007 as a spin-off from Morgan Stanley, reflects a long-term investment, as the position was acquired solely as a result of Claimant's long-standing position in Morgan Stanley.[4]

---

[4] Putting aside Claimant's nominal position in Fidelity Spartan, the only investments reflected on Claimant's account statements that were not long-term investments were Claimant's investments in shorter maturity United States Treasury Bills. Investing in low-risk, low-yield government debt should not disqualify an investor from SIPA protection.

23.     Second, Claimant's securities positions performed "on paper" exactly as real investments in those securities performed in the market. With the exception of a 6-for-1 buy back of Priceline.com stock in 2003, Claimant's Stock Positions were unchanged for the entire time they were reflected on Claimant's account statements. They were not subject to any manipulations, and their values (as reflected on account statements) rose and fell with the performance of the securities in the market. Indeed, every single Stock Position reflected on the Final BLMIS Statement was worth *less* then than it was when the positions were acquired, which reflects not only that the Stock Positions were subject to market risks, but that they suffered the effect of those risks as well.[5]

24.     In sum, Claimant's Final BLMIS Statement reflects long-term positions in actual securities. Claimant's securities are fully capable of being valued as of the filing date, and could have been bought at that time had the BLMIS Trustee elected to do so. The "usual remedies" under SIPA should apply here, as they did in *New Times II*. Claimant is entitled to the value, as of the filing date, of the securities positions reflected on its Final BLMIS Statement.

    **C.     Claimant is Entitled to Interest.**

25.     SIPA's definition of "net equity" is clear, *see* 15 U.S.C. § 78*lll*(11), and SIPA customers are entitled to the prompt satisfaction of their net equity claims. *See* 15 U.S.C. §§ 78fff(a)(1), 78fff-2(b), 78fff-3(a). As a result of SIPC's and the BLMIS Trustee's incorrect interpretation of "net equity," Claimant has been denied the use of funds belonging to it. As a matter of public policy, the only way to ensure that SIPC and the BLMIS Trustee promptly fulfill their duties under SIPA is to require SIPC to compensate claimants for failing to promptly satisfy

---

[5] For example, according to Claimant's account statements and confirmations, which the Trustee has in his possession, Morgan Stanley was acquired for approximately $61 per share, but closed at only $14.75 per share on November 28, 2008 (the last trading day in November), and at $13.74 on the filing date. Texas Instruments was acquired for $37 per share, but closed at only $15.57 on November 28, 2008, and dropped to $15.14 on the filing date.

net equity claims. For that reason, Claimant seeks to recover interest on its claim, accruing from October 19, 2009, the date of the BLMIS Trustee's erroneous Determination Letter.

## CONCLUSION

26. For the reasons stated above,

    a)     the Customer Claim should be allowed in its entirety;

    b)     the Court should direct SIPC to issue immediate payment to Claimant in the amount of $88,476,461.90, which is the November 30, 2008 value, or in the amount of the filing date value, plus interest; and

    c)     the Court should order such other and further equitable relief as the Court deems appropriate.

Dated: New York, New York
November 18, 2009

SCHULTE ROTH & ZABEL LLP

By: /s/ Marcy R. Harris
William D. Zabel
Marcy Ressler Harris
Frank J. LaSalle
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for JA Special Limited Partnership*