**REDACTED**

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Robert Horowitz & Harlene Horowitz as Trustees of the Horowitz
Mailing Address: ___1743 Westridge Road_____ Family Trust
City: ___Los Angeles___ State: ___CA___ Zip: ___90049___
Account No.: ___1-H0084_____
Taxpayer I.D. Number (Social Security No.): _ _____-0936_____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of    $_____0_____

    b.    I owe the Broker a Debit (Dr.) Balance of    $_____0_____

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.    $_____

    d.    If balance is zero, insert "None."    _____None_____

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

| | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | **Number of Shares or Face Amount of Bonds** | |
| See Nov. 30, 2008 statements, attached hereto as Exhibit A. | | | |
| $8,887,239.10 (market value of securities long, per H0084-3 statement) | | | |
| 313,500.00 (market value of securities long, per H0084-4 statement) | | | |
| (442,700.00) (market value of securities short, per H0084-4 statement) | | | |
| **TOTAL** $8,758,039.10 | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.** See Exhibits A and B, and documents submitted herewith.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

EXHIBIT B

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | _____ | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | _____ | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | _____ | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | _____ | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form:    Jennifer L. Young, Esq., Milberg LLP, One Pennsylvania Plaza, New York, NY   10119

EXHIBIT B

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  _2/16/09_____  Signature _____ TRUSTEE

Date  _2/16/09_____  Signature _____ Trustee

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406

# Exhibit A

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROBERT HOROWITZ
& MARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
1243 WESTRIDGE ROAD
LOS ANGELES        CA    90049

| DATE | BOUGHT RECEIVED OR DELIVERED | SOLD DELIVERED OR SHIPPED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 548,405.79 |
| 11/12 | 4,940 | | 3696 | WAL-MART STORES INC | 55.830 | 275,991.20 | |
| 11/12 | 3,230 | | 4258 | INTERNATIONAL BUSINESS MACHS | 87.270 | 282,011.10 | |
| 11/12 | 11,970 | | 8022 | EXXON MOBIL CORP | 72.680 | 872,851.60 | |
| 11/12 | 13,110 | | 8524 | INTEL CORP | 14.510 | 190,780.10 | |
| 11/12 | 6,270 | | 12880 | JOHNSON & JOHNSON | 59.580 | 373,616.60 | |
| 11/12 | 8,550 | | 21178 | J.P. MORGAN CHASE & CO | 38.530 | 329,773.50 | |
| 11/12 | 4,156 | | 21501 | COCA COLA CO | 49.060 | 203,831.60 | |
| 11/12 | 2,466 | | 23827 | MCDONALDS CORP | 55.370 | 147,390.20 | |
| 11/12 | 4,940 | | 30153 | MERCK & CO | 28.550 | 141,234.00 | |
| 11/12 | 18,050 | | 34479 | MICROSOFT CORP | 21.810 | 394,392.50 | |
| 11/12 | 9,120 | | 38805 | ORACLE CORPORATION | 17.300 | 158,140.00 | |
| 11/12 | 3,610 | | 51783 | PEPSICO INC | 56.410 | 203,784.10 | |
| 11/12 | 2,090 | | 52285 | APPLE INC | 110.780 | 230,713.20 | |
| 11/12 | 15,390 | | 56109 | PFIZER INC | 16.940 | 261,321.60 | |
| 11/12 | 3,610 | | 56611 | ABBOTT LABORATORIES | 54.610 | 197,286.10 | |
| 11/12 | 6,840 | | 60435 | PROCTER & GAMBLE CO | 64.680 | 438,580.20 | |
| 11/12 | 2,470 | | 60937 | AMGEN INC | 59.160 | 146,222.20 | |
| 11/12 | 4,750 | | 65263 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 201,290.00 | |
| 11/12 | 11,400 | | 69081 | BANK OF AMERICA | 23.590 | 246,472.00 | |
| 11/12 | 3,800 | | 69589 | QUALCOMM INC | 33.770 | 128,479.00 | |
| 11/12 | 12,390 | | 73413 | CITI GROUP INC | 12.510 | 154,992.50 | |
| 11/12 | 2,850 | | 73915 | SCHLUMBERGER LTD | 49.480 | 141,132.00 | |
| 11/12 | 6,040 | | | COMCAST CORP CL A | 16.510 | 113,201.40 | |
| | | | | CONTINUED ON PAGE 2 | | | |

TRUE ACCOUNT NUMBER: 1-H0084-3-0

YOUR ACCOUNT NUMBER: 1-H0084-3-0

TAX I.D. NUMBER/EXPIRATION NUMBER: ******0936

FOR PERIOD: 11/30/08

PAGE: 1

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROBERT HOROWITZ
& MARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
17143 WESTRIDGE ROAD
LOS ANGELES                    CA    90049

PAGE 2 | 11/30/08 | YOUR TAX PAYER IDENTIFICATION NUMBER ******0936 | YOUR ACCOUNT NUMBER 1-H0034-3-0

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 13,690 | | 77739 | AT&T INC | 27 | 366,769.00 | |
| 11/12 | 2,420 | | 78244 | CONOCO PHILLIPS | 52.510 | 179,720.20 | |
| 11/12 | 2,280 | | 82065 | UNITED PARCEL SVC SVC INC CLASS B | 52.040 | 118,742.20 | |
| 11/12 | 13,870 | | 82567 | CISCO SYSTEMS INC | 16.730 | 232,599.10 | |
| 11/12 | 3,990 | | 86391 | U S BANCORP | 29.530 | 117,983.70 | |
| 11/12 | 4,750 | | 86893 | CHEVRON CORP | 73.630 | 349,982.50 | |
| 11/12 | 2,280 | | 90717 | UNITED TECHNOLOGIES CORP | 53.160 | 121,295.80 | |
| 11/12 | 24,130 | | 91219 | GENERAL ELECTRIC CO | 19.630 | 474,636.90 | |
| 11/12 | 6,460 | | 95043 | VERIZON COMMUNICATIONS | 30.410 | 196,706.60 | |
| 11/12 | 570 | | 95545 | GOOGLE | 337.400 | 192,340.00 | |
| 11/12 | 7,980 | | 99369 | WELLS FARGO & CO NEW | 29.800 | 238,123.00 | |
| 11/12 | 5,700 | | 99871 | HEWLETT PACKARD CO | 34.900 | 199,158.00 | |
| 11/12 | | 8,650,000 | 22981 | U S TREASURY BILL Due 2/12/2009 | 99.936 | | 8,644,464.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 10.35 |
| 11/12 | 20,396 | | 17080 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 20,396.00 |
| 11/12 | 21,660 | | 26449 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 21,660.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 2.65 |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROBERT HOROWITZ
& HARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
1743 WESTRIDGE ROAD
LOS ANGELES          CA   90049

| PAGE | 3 |
| DATE | 11/30/08 |
| YOUR ACCOUNT NUMBER | 1-H0084-3-0 |
| YOUR TAX PAYER IDENTIFICATION NUMBER | ******0936 |

| DATE | BOUGHT Received on Long | SOLD Delivered on Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 21,660 | 51832 | FIDELITY SPARTAN U S TREASURY MONEY MARKET DUE 03/26/2009 | 1 | | 21,660.00 |
| 11/19 | 575,000 | | 56428 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 574,574.50 | |
| 11/19 | 16,329 | | 60871 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,329.00 | |
| 11/28 | | | 78276 | CHECK | CK | 75,000.00 | |
| 11/28 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/28/08 | DIV | | 2.44 |
| 11/28 | | 16,329 | 78276 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 16,329.00 |
| 11/28 | | 515,000 | 78304 | U S TREASURY BILL DUE 03/26/2009 | 99.971 | | 574,833.25 |
| 11/28 | 500,000 | | 78328 | U S TREASURY BILL DUE 03/26/2009 | 99.971 | 499,855.00 | |
| 11/28 | 16,309 | | 79160 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,309.00 | |
| | 13,490 | | | NEW BALANCE | | 1,079,265.25 | |
| | | | | SECURITY POSITIONS AT&T INC | MKT PRICE 28.560 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (01) 1493 6221

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

ROBERT HOROWITZ
& HARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
1743 WESTRIDGE ROAD
LOS ANGELES          CA   90049

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 11/30/08 | ****-***-*0936 | 4 |

YOUR ACCOUNT NUMBER   1-H0081-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 3,610 | | | ABBOTT LABORATORIES | 52,390 | | |
| | 2,470 | | | AMGEN INC | 55,540 | | |
| | 2,090 | | | APPLE INC | 92,670 | | |
| | 11,400 | | | BANK OF AMERICA | 16,250 | | |
| | 4,750 | | | CHEVRON CORP | 79,010 | | |
| | 13,870 | | | CISCO SYSTEMS INC | 16,540 | | |
| | 12,350 | | | CITI GROUP INC | 8,290 | | |
| | 4,560 | | | COCA COLA CO | 46,970 | | |
| | 6,860 | | | COMCAST CORP | 17,340 | | |
| | | | | CL A | | | |
| | 3,420 | | | CONOCOPHILLIPS | 52,520 | | |
| | 11,970 | | | EXXON MOBIL CORP | 80,150 | | |
| | 24,130 | | | GENERAL ELECTRIC CO | 17,170 | | |
| | 570 | | | GOOGLE | 292,960 | | |
| | 5,700 | | | HEWLETT PACKARD CO | 35,280 | | |
| | 13,210 | | | INTEL CORP | 13,800 | | |
| | 3,230 | | | INTERNATIONAL BUSINESS MACHS | 81,600 | | |
| | 8,550 | | | J.P. MORGAN CHASE & CO | 31,660 | | |
| | 6,270 | | | JOHNSON & JOHNSON | 58,580 | | |
| | 2,660 | | | MCDONALDS CORP | 58,750 | | |
| | 4,540 | | | MERCK & CO | 27,120 | | |
| | 18,050 | | | MICROSOFT CORP | 20,120 | | |
| | 9,120 | | | ORACLE CORPORATION | 16,090 | | |
| | 3,610 | | | PEPSICO INC | 56,700 | | |
| | 15,390 | | | PFIZER INC | 16,430 | | |
| | | | | | | | |
| | | | | CONTINUED ON PAGE   5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
☐ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROBERT HOROWITZ
& MARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
1743 WESTRIDGE ROAD
LOS ANGELES                CA    90049

| YOUR ACCOUNT NUMBER | PERIOD ENDING | PAGE |
| --- | --- | --- |
| 1-H0084-3-0 | 11/30/08 | 5 |

YOUR TAX PAYER IDENTIFICATION NUMBER    *****#0936

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | 1,750 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 6,840 | | | PROCTER & GAMBLE CO | 66.350 | | |
| | 3,800 | | | QUALCOMM INC | 33.570 | | |
| | 2,850 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 16,309 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 3,990 | | | U S BANCORP | 26.980 | | |
| | 2,280 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 500,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 2,280 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | 6,460 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 4,940 | | | WAL-MART STORES INC | 55.880 | | |
| | 7,980 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG    9,887,299.10 | | | |
| | | | | SHORT | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

888 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROBERT HOROWITZ
& MARLENE HOROWITZ AS TTEES OF
HOROWITZ FAMILY DTD 8/28/03
1743 WESTRIDGE ROAD
LOS ANGELES          CA   90049

YOUR ACCOUNT NUMBER: 1-H0081-4-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: *****-**-0936
PAGE: 1

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 548,406.00 |
| 11/12 | 190 | | 43131 | S & P 100 INDEX | 15.800 | | 300,010.00 |
| 11/12 | | 190 | 47457 | NOVEMBER 460 CALL | 17.800 | 338,390.00 | |
| | | | | NOVEMBER 450 PUT | | | |
| 11/19 | 190 | | 33561 | S & P 100 INDEX | 26 | | 493,810.00 |
| 11/19 | 190 | | 37886 | DECEMBER 430 CALL | 30 | 570,190.00 | |
| | | | | S & P 100 INDEX | | | |
| 11/19 | 190 | | 42211 | DECEMBER 420 PUT | 3 | 57,190.00 | |
| | | | | S & P 100 INDEX | | | |
| 11/19 | | 190 | 46536 | NOVEMBER 460 CALL | 3T | | 702,810.00 |
| | | | | NOVEMBER 450 PUT | | | |
| | | | | | | | |
| | | | | NEW BALANCE | | | 1,079,266.00 |

| | | | | SECURITY POSITIONS | MKT PRICE | |
|---|---|---|---|---|---|---|
| | | | | S & P 100 INDEX | 23.300 | |
| | | 190 | | DECEMBER 430 CALL | | |
| | 190 | | | S & P 100 INDEX | 16.500 | |
| | | | | DECEMBER 420 PUT | | |

MARKET VALUE OF SECURITIES
LONG        313,500.00
SHORT      452,700.00-

# Exhibit B

## EXHIBIT B

1. This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

2. The information provided in the Claim Form is based on the information provided in the Claimant's latest Madoff account statement and any additional information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

3. The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law and equity.

4. The Claimant hereby requests that the Claim Form additionally be considered as a proof of claim, as a general creditor or otherwise, in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

5. This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by the applicable law, the Claimant does not consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

6. The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, Bernard L. Madoff Investment Securities LLC and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

7. The Claimant further reserves all rights, claims, and/or defenses as to and/or against any persons and/or creditors asserting claims against Bernard L. Madoff Investment Securities LLC, its employees, owners, and/or affiliates, in bankruptcy or otherwise.

8. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of

this or any other action for any purpose whatsoever, notwithstanding the submission of any such information to the Trustee.

9. To the extent the Claimant has disclosed to the Trustee documents containing accounting and/or legal advice, the Claimant does not waive any potential privileges applicable thereto.

10. The Claimant reserves all rights with respect to submitting information to the Internal Revenue Service regarding gains, losses, and/or theft of assets.

11. The Claim Form and supporting documents contain confidential information. The Claimant submits this information to the Trustee subject to the condition that this information will not to be disclosed to any third parties, other than under seal to the Court, absent the Claimant's express consent or Court order.

12. The Claimant submits herewith documents in support of the Claimant's claim. The Claimant reserves any arguments that such documents are not relevant to the Trustee's inquiry. The Claimant further reserves the right to supplement this submission, including the submission of additional documents if deemed necessary. Below is a list of the documents submitted herewith:

    Declaration of Trust for the Horowitz Family Trust (dated Aug. 28, 2003)

EXHIBIT B

**DECLARATION OF TRUST
FOR THE
HOROWITZ FAMILY TRUST**

*Prepared by*
**MITCHELL SILBERBERG & KNUPP LLP**

0563535.1

# TABLE OF CONTENTS

**Page**

ARTICLE 1    DECLARATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.1    Family Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.2    Property Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 2    RIGHTS RESERVED BY THE TRUSTORS . . . . . . . . . . . . . . . . . . . . 2
    2.1    Rights as to Community Property and Separate Property . . . . . . . . . . . . . . . . . . 2
    2.2    Right to Add Property to the Trust Estate . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.3    Right to Withdraw Property from the Trust Estate . . . . . . . . . . . . . . . . . . . . . 2
    2.4    Right to Amend the Declaration of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.5    Right to Revoke the Declaration of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.6    Right to Appoint and Remove Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.7    Right to Direct and Approve the Trustee's Actions . . . . . . . . . . . . . . . . . . . . . 3
    2.8    Exercise of the Trustors' Reserved Rights by the Surviving Spouse . . . . . . . . . . . 3
    2.9    Exercise of the Trustors' Reserved Rights by Others . . . . . . . . . . . . . . . . . . . . 3
    2.10    Manner of Exercise of the Trustors' Reserved Rights . . . . . . . . . . . . . . . . . . . 3

ARTICLE 3    ADMINISTRATION DURING THE TRUSTORS' JOINT LIFETIMES . . . . . 3
    3.1    Distributions of Income and Principal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    3.2    Incapacity of a Trustor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    3.3    Gifts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    3.4    Qualification for Government Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    3.5    Distribution Upon the Death of the Deceased Spouse . . . . . . . . . . . . . . . . . . . . 6

ARTICLE 4    DISPOSITION UPON THE DECEASED SPOUSE'S DEATH . . . . . . . . . 6
    4.1    Division of the Trust Estate Upon the Death of the Deceased Spouse . . . . . . . . . . 6
    4.2    Disposition of the Deceased Spouse's Share . . . . . . . . . . . . . . . . . . . . . . . . . 7
    4.3    Disposition of Otherwise Undisposed of Property . . . . . . . . . . . . . . . . . . . . . 7
    4.4    Rules Governing the Allocation of Trust Property . . . . . . . . . . . . . . . . . . . . . 8

ARTICLE 5    GIFTS OF TANGIBLE PERSONAL PROPERTY . . . . . . . . . . . . . . . . 9
    5.1    Gifts on Death of Deceased Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    5.2    Gifts on Death of the Surviving Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE 6    GIFTS OF MONEY AND OTHER PROPERTY . . . . . . . . . . . . . . . . . . 9
    6.1    Gifts of Money Upon the Deceased Spouse's Death . . . . . . . . . . . . . . . . . . . . 9
    6.2    Gifts Upon the Surviving Spouse's Death . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE 7    THE SURVIVOR'S TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    7.1    Right to Direct and Approve the Trustee's Actions . . . . . . . . . . . . . . . . . . . . 10
    7.2    Distributions of Net Income and Principal . . . . . . . . . . . . . . . . . . . . . . . . . 10
    7.3    Distribution of Principal to Complete Minimum Distribution . . . . . . . . . . . . . . 10

i

7.4    Gifts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
7.5    General Power of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
7.6    Disposition of Survivor's Trust Upon the Death of the Surviving Spouse . . . . . 11

ARTICLE 8    THE MARITAL TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
8.1    Distributions During Surviving Spouse's Lifetime . . . . . . . . . . . . . . . . . . 12
8.2    Calculation of Distribution Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
8.3    Purpose for Unitrust Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
8.4    Discretionary Distribution of Principal . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.5    Minimum Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.6    Distribution of Principal to Complete Minimum Distribution. . . . . . . . . . 14
8.7    Qualification of the Marital Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.8    Limitations on Trustee's Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8.9    Administering the Marital Trust: Unproductive Property . . . . . . . . . . . . 15
8.10    Electing Qualified Terminable Interest Property . . . . . . . . . . . . . . . . . . 15
8.11    No Trustee Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
8.12    Right to Demand Income from the Employee Benefit Plan . . . . . . . . . . . 16
8.13    Limited Power of Appointment to the Surviving Spouse . . . . . . . . . . . . . 16
8.14    Last Illness and Funeral Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
8.15    Disposition of the Marital Trust Upon the Death of the Surviving Spouse . . . . . 16

ARTICLE 9    THE EXEMPTION TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
9.1    Distributions During Surviving Spouse's Lifetime . . . . . . . . . . . . . . . . . 16
9.2    Calculation of Distribution Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9.3    Purpose for Unitrust Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
9.4    Discretionary Distribution of Principal . . . . . . . . . . . . . . . . . . . . . . . . . 18
9.5    Minimum Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
9.6    Distribution of Principal to Complete Minimum Distribution. . . . . . . . . . 19
9.7    Limited Power of Appointment to the Surviving Spouse . . . . . . . . . . . . . 19
9.8    Disposition of the Exemption Trust Upon the Death of the Surviving Spouse . . 19

ARTICLE 10    THE DESCENDANTS' TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
10.1    Gift of Westchester DLH, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
10.2    Division into Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
10.3    Allocation of Trust Assets to Gifts to Deceased Spouse's Children Upon
    Amendment to Survivor's Trust. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
10.4    Distributions of Net Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
10.5    Distributions of Principal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
10.6    Additional Distributions of Principal . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
10.7    Limited Power of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
10.8    Establishment of Trusts for Successor Beneficiaries . . . . . . . . . . . . . . . 23
10.9    Administration of Trusts for Successor Beneficiaries . . . . . . . . . . . . . . . 24
10.10    Contingent General Power of Appointment over GST Non-Exempt Trust . . . . . 24

ARTICLE 11    GENERATION-SKIPPING PROVISIONS . . . . . . . . . . . . . . . . . . . . . 24
11.1    Generation-Skipping Transfer Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11.2   Allocation of GST Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
11.3   Division of Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
11.4   Allocation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
11.5   Other GST-Related Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
11.6   No Trustee Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE 12   DISCLAIMERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
12.1   Disclaimers Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
12.2   Disclaimers of Property Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
12.3   Disclaimers by the Surviving Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
12.4   Disclaimers by Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
12.5   Effective Disclaimers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ARTICLE 13   POWERS OF APPOINTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
13.1   Manner of Exercise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
13.2   Permissible Donees--Powers Exercisable by the Surviving Spouse . . . . . . . . . 27
13.3   Permissible Donees--Powers Exercisable by Beneficiaries Other Than the
       Surviving Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
13.4   Terms and Conditions of Exercise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE 14   PAYMENT OF DEBTS AND EXPENSES . . . . . . . . . . . . . . . . . . . . . 28
14.1   Payment of Debts and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
14.2   Payment from Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
14.3   Charging of Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE 15   PAYMENT OF ESTATE TAXES AND GENERATION-SKIPPING
             TRANSFER TAXES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
15.1   Payment of Estate Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
15.2   No Proration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
15.3   Reserves . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
15.4   Tax Elections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE 16   APPOINTMENT OF TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
16.1   The Trustors' Powers of Appointment, Designation, and Removal . . . . . . . . . 30
16.2   Trustee Succession During Joint Lifetimes of Trustors . . . . . . . . . . . . . . . . . 30
16.3   Successor Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
16.4   Filling Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
16.5   Removal of Corporate Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
16.6   Effective Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
16.7   No Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ARTICLE 17   APPOINTMENT OF SPECIAL TRUSTEE . . . . . . . . . . . . . . . . . . . . 33
17.1   Power to Appoint Special Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
17.2   Scope and Exclusivity of Special Trustee's Powers . . . . . . . . . . . . . . . . . . . 33
17.3   Protection Provided Special Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ARTICLE 18  PROTECTION PROVIDED THE TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . 33
    18.1    Resignation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    18.2    Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    18.3    Dual Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    18.4    Right of Indemnification and Reimbursement . . . . . . . . . . . . . . . . . . . 34
    18.5    Notice to the Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    18.6    Confidentiality of Declaration of Trust . . . . . . . . . . . . . . . . . . . . . . . . . 35
    18.7    Disclosure to the Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    18.8    Reports and Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    18.9    The Trustors' Right to Release Trustee . . . . . . . . . . . . . . . . . . . . . . . . . 35
    18.10   Right of Trustee to Secure Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    18.11   Consultation with Legal Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    18.12   Extent of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ARTICLE 19  AUTHORITY OF THE TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    19.1    Trustee Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    19.2    Trustee Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    19.3    Trustee's Consideration of Beneficiary's Other Assets . . . . . . . . . . . . 38
    19.4    Limitation on Discretion of a Beneficiary Serving as Trustee . . . . . . . 39
    19.5    Power of a Trustor as a Co-Trustee to Act Individually . . . . . . . . . . . . 39
    19.6    Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    19.7    Delegation by One Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    19.8    Delegation by All Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    19.9    Delegation of Power to Expend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    19.10   Delegation of Investment Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    19.11   Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    19.12   Dealing with the Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    19.13   Reliance on Representations by the Trustee . . . . . . . . . . . . . . . . . . . . . 40
    19.14   Reliance on the Authority of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 41

ARTICLE 20  POWERS OF THE TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    20.1    To Accept Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    20.2    To Disclaim or Reject Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    20.3    To Retain Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    20.4    To Invest and Reinvest Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . 42
    20.5    To Purchase and Sell Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    20.6    To Manage Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    20.7    To Borrow Money and Encumber Trust Property . . . . . . . . . . . . . . . . . 42
    20.8    To Provide Guarantees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    20.9    To Make Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    20.10   To Purchase Liability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    20.11   To Purchase and Administer Life Insurance . . . . . . . . . . . . . . . . . . . . . 43
    20.12   To Pay, Contest and Settle Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    20.13   To Litigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    20.14   To Make Allocations Between Principal and Income . . . . . . . . . . . . . . 43
    20.15   To Hire and Employ Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

iv

20.16  To Maintain Custody . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
20.17  To Execute and Deliver Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
20.18  Other Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
20.19  S Corporation Stock Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
20.20  Shares in a Professional Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
20.21  Powers in a Closely Held Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
20.22  Limitation on Use of Employee Benefit Plans . . . . . . . . . . . . . . . . . . . . . . 49
20.23  Assets from Employee Benefit Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

ARTICLE 21  SPECIAL DISCRETIONARY POWERS OF THE TRUSTEE . . . . . . . . . . . . 49
21.1   To Deal with the Trustors' Estates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
21.2   To Make Payments and Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
21.3   To Sell Trust Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
21.4   To Postpone Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
21.5   To Determine Values and Allocate Property . . . . . . . . . . . . . . . . . . . . . . . 51
21.6   To Make QTIP Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
21.7   To Retain or Purchase Unproductive or Under-productive Property . . . . . . . . 51
21.8   To Invest Trust Assets Together . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
21.9   To Consolidate Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
21.10  To Divide Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
21.11  To Terminate Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
21.12  To Hold Personal Articles in Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

ARTICLE 22  SPECIAL PROVISIONS RELATING TO LIFE INSURANCE POLICIES . . . . 54
22.1   Designation of Trust as Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
22.2   Payment of Premiums . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
22.3   Receipt of Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
22.4   Collection of Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
22.5   Rights Retained by Owner of Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
22.6   Powers of Trustee Over Life Insurance Policies . . . . . . . . . . . . . . . . . . . . 55

ARTICLE 23  SPECIAL PROVISIONS FOR INVESTMENT COUNSEL . . . . . . . . . . . . . . 56
23.1   Reliance on Discretionary Investment Counsel . . . . . . . . . . . . . . . . . . . . . 56
23.2   Authority of Investment Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
23.3   Compliance with Directions of Discretionary Investment Counsel . . . . . . . . . 57
23.4   Reliance on Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
23.5   Fees of Investment Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

ARTICLE 24  DISINHERITANCE AND NO CONTEST . . . . . . . . . . . . . . . . . . . . . . . . . . 57
24.1   Disinheritance Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
24.2   No Contest Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
24.3   Expenses of Contest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

ARTICLE 25  RULE AGAINST PERPETUITIES: MAXIMUM DURATION OF TRUSTS . 59

ARTICLE 26  SPENDTHRIFT PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

26.1  No Voluntary Transfers of Trust Interests ............................ 60
26.2  No Involuntary Transfers of Trust Interests .......................... 60

ARTICLE 27  RESIDENCE PROVISIONS ................................ 61
27.1  For All Beneficiaries ...................................... 61
27.2  Additional Provisions For the Surviving Spouse ................ 61

ARTICLE 28  GENERAL TRUST PROVISIONS ......................... 62
28.1  Rules of Construction ..................................... 62
28.2  Governing Law ........................................... 62
28.3  Successors in Interest ..................................... 62
28.4  Court Supervision ........................................ 63
28.5  References to Statutes .................................... 63
28.6  Gender, Tense, and Numbers .............................. 63
28.7  Effect of Headings ....................................... 63
28.8  Severability ............................................. 63
                                                                 63

ARTICLE 29  DEFINITIONS ...................................... 63
29.1   Administer ............................................. 63
29.2   Agent ................................................. 63
29.3   Beneficiary ............................................ 64
29.4   Charitable Organization ................................. 64
29.5   Child, Parent, and Issue ................................ 64
29.6   Deceased Spouse; Surviving Spouse ....................... 65
29.7   Distribute ............................................. 65
29.8   Education .............................................. 65
29.9   Employee Benefit Plan .................................. 65
29.10  Estate Taxes ........................................... 65
29.11  Executor .............................................. 65
29.12  Expenses of Estate Administration ....................... 66
29.13  Federal Estate Tax Value ............................... 66
29.14  Generation-Skipping Transfer Tax ........................ 66
29.15  Gifts ................................................. 66
29.16  Guardian .............................................. 66
29.17  Health ................................................ 66
29.18  Heirs at Law ........................................... 66
29.19  Incapacity and Incapacitated ............................ 67
29.20  Interested Person ...................................... 67
29.21  Internal Revenue Code .................................. 68
29.22  Investment Counsel ..................................... 68
29.23  Marital Deduction ...................................... 68
29.24  May and Shall .......................................... 68
29.25  Probate Code .......................................... 68
29.26  Property .............................................. 68
29.27  QTIP Property ......................................... 68
29.28  Residence ............................................. 69

29.29    Residue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
29.30    Retirement Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
29.31    Right of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
29.32    Share . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
29.33    Survivorship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
29.34    Trust Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
29.35    Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

ARTICLE 30    RELIANCE ON CERTIFIED COPIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

0563535.1

# DECLARATION OF TRUST
## FOR THE
## HOROWITZ FAMILY TRUST

ROBERT M. HOROWITZ ("ROBERT") and HARLENE HOROWITZ ("HARLENE"), as Trustors and Trustees, declare that they have entered into this Declaration of Trust establishing the HOROWITZ FAMILY TRUST.

The Trustors transfer and deliver to themselves as the initial Trustees the property described in Schedule A, attached to this Declaration of Trust. As Trustees the Trustors accept the property and agree to administer the property, together with any other property added to the Trust Estate, in trust, under the terms of this Declaration of Trust. Definitions of certain important terms used in this Declaration of Trust are provided in Article 29.

The revocable trust initially established under this Declaration of Trust shall be known as the HOROWITZ FAMILY TRUST. Successor trusts established under this Declaration of Trust shall be known by the names designated below in this Declaration of Trust or as named by the Trustee. The Trustee may refer to these trusts by reference to the name of the income beneficiaries of these trusts or the tax elections made with respect to these trusts.

## ARTICLE 1
## DECLARATIONS

1.1    **Family Information**. The Trustors are married to each other and declare as follows:

(a)    **Citizenship**. The Trustors are United States citizens.

(b)    **Children of the Trustors**. The Trustors have no living children of their marriage. ROBERT has three (3) living children from a former marriage, namely, ANDREW B. HOROWITZ, TERRI MENLOW and JANE HOROWITZ. HARLENE has three (3) living children from a former marriage, namely, LAWRENCE SHAPIRO, PAUL SHAPIRO and RANDI SHAPIRO. Each of the Trustor's stepchildren shall be treated the same as said Trustor's children.

(c)    **Deceased Children of the Trustors**. The Trustors have no deceased children of their marriage.

(d)    **After Born Children**. All children born to or adopted by the Trustors after the execution of this Declaration of Trust shall share in the benefits of the Trust Estate equally with the Trustors' now living children.

(e)    **No Other Children**. The Trustors have no other living or deceased children.

0563535.1

1

**1.2    Property Information.** All the community property the Trustors transfer to the Trustee and the proceeds of that property shall remain the Trustors' community property. All separate property transferred to the Trustee by either Trustor and the proceeds of that property shall remain that Trustor's separate property. The Trustee shall segregate the community property and separate property and maintain books and records showing the character of all property.

## ARTICLE 2
## RIGHTS RESERVED BY THE TRUSTORS

The Trustors reserve the following rights under this Declaration of Trust.

**2.1    Rights as to Community Property and Separate Property.** During the Trustors' joint lifetimes, the Trustors shall retain their community rights in their community property as if this trust had not been created. During the Trustors' joint lifetimes, the Trustee's powers with respect to the community property transferred to this Trust shall be co-extensive with, but not more extensive than, those powers possessed by a husband and wife under Section 1100, et seq., of the California Family Code. However, upon the death of either Trustor, all the property held in the Trust Estate, including the Trustors' community property and separate property, shall be governed by the terms of this Declaration of Trust providing for the disposition of the Trustors' property upon the Trustors' respective deaths. Notwithstanding any other provisions of this Declaration of Trust, neither Trustor may withdraw the separate property of the other or revoke or amend this Declaration of Trust with respect to the other Trustor's separate property. The powers of withdrawal, revocation, and amendment are reserved exclusively to the owner of such separate property.

**2.2    Right to Add Property to the Trust Estate.** The Trustors each reserve the right to transfer additional property to the Trustee during their lifetimes and at their respective deaths. All property transferred to the Trustee shall be added to the Trust Estate and be administered under the terms of this Declaration of Trust. The Trustee is authorized and directed to accept the additions to the Trust Estate. Any other person may transfer property to the Trustee to be added to the Trust Estate, provided the property is acceptable to the Trustors (if living) and the Trustee.

**2.3    Right to Withdraw Property from the Trust Estate.** The Trustors each reserve the right to withdraw at any time all or any portion of their property held in the Trust Estate. The property described in any notice of withdrawal shall be delivered immediately to the Trustors. Upon any withdrawal, the property shall be transferred to the Trustors as their community or separate property as if the trust had not been created.

**2.4    Right to Amend the Declaration of Trust.** The Trustors, acting together, reserve the right to amend at any time all or any part of this Declaration of Trust, without obtaining the consent of or giving notice to any beneficiary.

**2.5    Right to Revoke the Declaration of Trust.** The Trustors each reserve the right to revoke at any time all or any part of this Declaration of Trust, without obtaining the consent of or giving notice to any beneficiary, as to all or any part of his or her share of the community

property and as to all or any part of his or her separate property. Upon revocation during the Trustors' joint lifetimes, the Trustee shall deliver to the revoking Trustor, free of trust, all or the designated portion of the separate or community property set forth in the written notice of revocation.

**2.6    Right to Appoint and Remove Trustees.** The Trustors, acting together, reserve the right to appoint, designate, and remove trustees.

**2.7    Right to Direct and Approve the Trustee's Actions.** The Trustors, acting together, reserve the right to direct and approve the Trustee's actions, including the Trustee's investment decisions and the use of trust property as collateral for any personal obligations of the Trustors. The Trustors' approval of the Trustee's actions shall be binding upon all other beneficiaries.

**2.8    Exercise of the Trustors' Reserved Rights by the Surviving Spouse.** Upon the death of either Trustor, this Declaration of Trust shall become irrevocable, except that the Surviving Spouse shall retain, during his or her lifetime, the rights of withdrawal, amendment, and revocation with respect to the Survivor's Trust and all the provisions of the Declaration of Trust relating to the Survivor's Trust. All the trusts created by this Declaration of Trust shall become irrevocable and not subject to amendment upon the death of the Surviving Spouse.

**2.9    Exercise of the Trustors' Reserved Rights by Others.** The rights reserved to the Trustors as described above are personal to them and shall not be exercisable on their behalf by any other person, except that those rights may be exercised by the following persons:

**(a)    By a Duly Appointed Conservator.** A duly appointed conservator of either of the Trustors' estates who has been authorized by court order to exercise those rights may exercise those rights in the manner authorized by the court order.

**(b)    By an Agent under a Power of Attorney.** Either Trustor may grant to an Agent, under a written power of attorney signed by that Trustor, the power to exercise those rights. If a Trustor gives an Agent the power to amend or revoke this Declaration of Trust, the Agent shall exercise those rights only in the manner and subject to the limitations set forth in the power of attorney.

**2.10    Manner of Exercise of the Trustors' Reserved Rights.** The Trustors may exercise the rights reserved to them only by a signed writing delivered to the Trustee. This Declaration of Trust may not, however, be revoked or amended by either Trustor in the Trustors' respective Wills.

## ARTICLE 3
## ADMINISTRATION DURING THE TRUSTORS'
## JOINT LIFETIMES

The following provisions shall apply to the distribution of the Trust Estate during the Trustors' joint lifetimes.

**3.1    Distributions of Income and Principal.** During the Trustors' joint lifetimes, the Trustee shall distribute to or for the benefit of the Trustors from their community property that amount of net income and principal as either Trustor directs. The Trustee shall distribute to or for the benefit of each Trustor from his or her separate property that amount of net income and principal as the Trustor directs. Also, the Trustee is authorized to distribute to or for the benefit of the Trustors that amount of net income and principal, up to the whole of the Trust Estate, as the Trustee deems appropriate in the exercise of his or her discretion, using the Trustors' accustomed manner of living as a guide and without regard to their other sources of support. Upon distribution, property shall retain its character as the Trustors' community property or either of the Trustors' separate property. The Trustee shall exercise this discretion in a liberal manner, and the rights of remainder beneficiaries shall be of no importance. The Trustee shall accumulate and add any undistributed net income to principal.

**3.2    Incapacity of a Trustor.** If either Trustor is Incapacitated, the other Trustor shall have the right to exercise the Incapacitated Trustor's right to request or direct distributions for the benefit of such Incapacitated Trustor. Further, if at any time either Trustor is Incapacitated, the Trustee shall pay to the other Trustor, or apply for the benefit of either Trustor the amounts of net income and principal necessary, in the Trustee's discretion, for the proper health, education, maintenance and support of both Trustors in accordance with their accustomed manner of living as a guide and without regard to their other sources of support. The Trustee shall make such payments first from community property and then equally from the separate property of both Trustors until the Incapacitated Trustor no longer is Incapacitated, or until the death of either Trustor. Any income in excess of the amounts applied for the benefit of the Trustors shall be accumulated and added to principal of the community or the separate estate, as the case may be. If a conservator of the person or the estate is appointed for either Trustor, the Trustee shall take into account any payments made for either Trustor's benefit by such conservator.

In addition, the Trustee may at any time or times distribute to any one or more persons whom either Trustor is legally obligated to support such sums as the Trustee determines to be necessary for such person's health, education, maintenance and support taking into account such person's other resources and the amount of support such person has received from either Trustor from time to time. The Trustee may also make distributions to any person related to a Trustor by blood, marriage or adoption whom either Trustor is supporting from time to time to continue such support. Any such payments shall be made first from income of the Trust Estate to the extent it is insufficient, from principal of the Trust Estate. The persons permitted to receive a distribution pursuant to this paragraph shall be referred to as "Supported Beneficiaries."

In connection with the foregoing, if a Trustor shall become Incapacitated, then it is Trustors' desire that the Trustee interpret the provisions of this Article 3 so that distributions of income and principal shall be deemed to be at such Incapacitated Trustor's direction, and in his or her interests, if made for the following purposes:

**(a)    Distributions for Incapacitated Trustor.** The Trustee may use net income, and if net income shall be insufficient then principal, to make provisions for a high quality of care for the Incapacitated Trustor because of any illness, infirmity or other physical or mental disability or other health-related emergency.

**(b)    Distribution of Income for the Other Trustor and the Supported Beneficiaries.** After taking into account the foregoing provisions, the Trustee may next use any remaining net income for the health, education, maintenance and support of the other Trustor and the Supported Beneficiaries.

**(c)    Distributions of Principal for the Other Trustor and the Supported Beneficiaries.** If distributions from income pursuant to Section 3.2(b) shall be insufficient to provide for the health, education, maintenance and support of such other Trustor and the Supported Beneficiaries, the Trustee may withdraw principal from the Trust for these purposes when, in the Trustee's sole discretion, the Trustee deems it in the best interests of the other Trustor and the Supported Beneficiaries, after considering the following factors:

**(i)**    The then accustomed manner of living of the other Trustor and the Supported Beneficiaries as a guide and without regard to their other sources of support;

**(ii)**    The nature of the illness or infirmity causing the Incapacitated Trustor's disability and the duration thereof;

**(iii)**    The nature of the assets then making up the Trust Estate;

**(iv)**    The consequences of a sale, exchange, encumbrance or other disposition of the assets then comprising the Trust Estate to accomplish such withdrawal; and

**(v)**    Whatever other factors the Trustee may deem necessary or appropriate in connection with the Incapacity of a Trustor.

**(d)    Trustors' Intent.** It is the Trustors' intent that income and principal of the Trust Estate shall be used to provide for the care for the Incapacitated Trustor. As to the other Trustor and as to a Supported Beneficiary who is a minor child of either Trustor, the Trustors intend to allow such persons to continue to enjoy the standard of living that such persons enjoyed while the Incapacitated Trustor was not Incapacitated. Nonetheless, the Trustors are aware of the facts that invasions of principal to provide for the other Trustor and the Supported Beneficiaries all of these needs may so deplete the Trust Estate as to affect substantially the Trustee's ability to continue to provide for the Incapacitated Trustor's care in the best possible manner. For these reasons the Trustors have prepared these instructions as a guide to the Trustee in making continued distributions from principal for purposes other than the Incapacitated Trustor's care during any period of Incapacity, after taking into consideration the condition of the Incapacitated Trustor.

**3.3    Gifts.** The Trustee is authorized to continue any gift program the Trustors start, including gifts made to use the Trustors' available federal gift tax annual exclusion amounts or lifetime exemption or exclusion amounts, at the same level and to the same persons as they made gifts. The Trustee may fulfill any charitable pledges made by the Trustors. Gifts may be made outright or in trust. In making the gifts authorized under this section, the Trustee may follow the directions given him or her by any Agent acting for either Trustor under a durable power of

0563535.1                                        5

attorney that expressly grants to the Agent the power to continue the Trustors' plan of giving. Also, the Trustee may distribute income or principal to an Agent acting under a durable power of attorney executed by either Trustor to enable the Agent to make gifts as provided under the durable power of attorney, including gifts to the Trustors' issue and to Charitable Organizations.

**3.4    Qualification for Government Benefits.** The Trustors authorize the Trustee to take any actions that the Trustee determines to be appropriate or necessary in connection with the Trustors' qualification for or receipt of government benefits, including benefits (whether income, medical, disability, or otherwise) from any agency (whether state, federal, or otherwise), such as Social Security, MediCal, Medicare, or supplemental security income/state supplemental programs. In particular, the Trustors authorize and direct the Trustee, upon receiving written notice from either Trustor, the conservator of either Trustor, or the person holding a Durable Power of Attorney for either Trustor, to partition all of the community property of the Trust for the purpose of transmuting such community property to be the separate property of either Trustor. Upon such partition, if one Trustor is Incapacitated, the Trustee shall have the authority to award the Trustors' Residence and their other assets to the one Trustor who is not Incapacitated and not receiving or seeking to obtain any such government benefits.

**3.5    Distribution Upon the Death of the Deceased Spouse.** Upon the death of the first Trustor to die (the "Deceased Spouse"), the balance of the Trust Estate administered under this article shall be allocated and distributed as provided in Article 4.

# ARTICLE 4
# DISPOSITION UPON THE
# DECEASED SPOUSE'S DEATH

Upon the Deceased Spouse's death, subject to the payment of, or satisfactory provision being made for, all debts and taxes (including Estate Taxes), the following allocations and dispositions of the Trust Estate shall be made by the Trustee.

**4.1    Division of the Trust Estate Upon the Death of the Deceased Spouse.** Upon the death of the Deceased Spouse, the Trustee shall divide the remaining Trust Estate, including any additions to the Trust Estate resulting from the Deceased Spouse's death, into two separate shares: the Surviving Spouse's share and the Deceased Spouse's share.

(a)    **The Surviving Spouse's Share.** The Trustee shall allocate to the Surviving Spouse's share:

(i)    The Surviving Spouse's separate property, if any.

(ii)    The portion of the Trust Estate determined to represent the Surviving Spouse's interest in the Trustors' community property held in or received by the trust (not reduced by Estate Taxes). The Trustee shall have the discretion to determine how the Trustors' community property will be divided and allocated. The assets selected shall be valued at the date or dates of allocation.

The Trustee shall administer the property allocated to the Surviving Spouse's share as provided in Article 7.

      **(b)**    **The Deceased Spouse's Share.**  The Trustee shall allocate to the Deceased Spouse's share:

        **(i)**    The Deceased Spouse's separate property, if any.

        **(ii)**    The remaining Trust Estate not allocated to the Surviving Spouse's share.

The Trustee shall allocate the Deceased Spouse's share as provided in Section 4.2.

    **4.2**    **Disposition of the Deceased Spouse's Share.**  Upon the Deceased Spouse's death, the Trustee shall allocate the Deceased Spouse's share of the Trust Estate, including the property held in the Trust Estate at the date of the Deceased Spouse's death and the property transferred to the Trust Estate by reason of his or her death, as follows:

      **(a)**    **Gifts of Tangible Personal Property.**  The Trustee shall make distributions of the Deceased Spouse's tangible personal property as provided in Article 5.

      **(b)**    **Pecuniary Marital Deduction Formula.**

        **(i)**    **The Marital Trust.**  From the balance of the Deceased Spouse's share of the Trust Estate, the Trustee shall allocate to the Marital Trust the smallest pecuniary amount which, if allowed as a federal estate tax marital deduction, would result in the least possible federal estate tax payable by reason of the Deceased Spouse's death. In determining the pecuniary amount the Trustee shall consider the credit for state death taxes only to the extent those taxes are not incurred or increased by considering them and shall assume that none of the Exemption Trust qualifies for a federal estate tax deduction. The Trustee shall administer the property allocated to the Marital Trust as provided in Article 8.

        **(ii)**    **The Exemption Trust.**  The Trustee shall allocate to the Exemption Trust the balance of the remainder of the Deceased Spouse's share of the Trust Estate.  The Trustee shall administer the property allocated to the Exemption Trust as provided in Article 9.

    **4.3**    **Disposition of Otherwise Undisposed of Property.**  If at any time before the complete distribution of the Trust Estate of any trust created under this Declaration of Trust, the disposition of all or any portion of that Trust Estate is not otherwise directed under the provisions of this Declaration of Trust, or if all the beneficiaries otherwise described in this Declaration of Trust die before the complete distribution of the Trust Estate and the disposition of all or any portion of the Trust Estate is not otherwise directed under the provisions of this Declaration of Trust, the Trustee shall distribute the remaining Trust Estate one-half to the heirs at law of the Deceased Spouse and one-half to the heirs at law of the Surviving Spouse.  The respective

          7

EXHIBIT B

identities and shares of these heirs shall be determined at the time of the event as though the Trustors' deaths occurred simultaneously immediately following the event, and according to the California laws of intestate succession then in effect relating to separate property not acquired from a previously deceased spouse. If, however, after nine months of reasonable search following the occurrence of the event, the Trustee has been unable to identify and locate the heirs of one of the Trustors, the remaining Trust Estate otherwise distributable to those heirs shall instead be distributed to the heirs at law of the other Trustor as provided in this section. If within that time period the Trustee has been unable to identify and locate any heirs of either Trustor, the undisposed of property shall be distributed to one or more Charitable Organizations selected by the Trustee.

**4.4    Rules Governing the Allocation of Trust Property.** The Trustee shall select a date or dates of allocation or distribution for purposes of satisfying gifts and funding shares. The Trustee may provide for allocations prior to the final determination of federal estate taxes, with the allocations being made upon the information then available to the Trustee. The Trustee may thereafter from time to time adjust properties among the shares or trusts created under this Declaration of Trust, when and if it is determined that the allocation should have been made differently.

In allocating property to satisfy gifts and fund shares, the Trustee is authorized to allocate property in appropriate undivided interests. Each gift or share may be satisfied or funded in cash or in kind, or partly in each. In addition, the Trustee shall be under no obligation to make a pro rata division; rather, the Trustee may make a non-pro rata division between gifts and fund shares, as long as the respective assets allocated to separate gifts and fund shares have equivalent fair market values. Assets allocated in kind shall be deemed to satisfy gifts or fund shares, including all of the marital deduction gift or share, on the basis of their fair market values at the date or dates of allocation or distribution.

No property for which a marital deduction would not be allowed if the property were distributed outright to the Surviving Spouse shall be allocated to a marital deduction gift or the Marital Trust. The Trustee may satisfy the marital deduction gifts only with property that qualifies for the marital deduction. No property or interests with respect to which the federal estate tax foreign death tax credit is otherwise available shall be allocated to a marital deduction gift or the Marital Trust unless no other property or interests are available to complete the funding of the marital deduction gifts.

In selecting assets to satisfy gifts and fund shares, property that would produce income recognition if allocated to fund a pecuniary amount shall, if possible, be allocated to fund non-pecuniary shares. These assets should be allocated on a non-pro rata basis when funding fractional shares. These assets include: items of income in respect of a decedent (particularly interests in pension plans or contracts of deferred compensation paid in installments); installment sale contracts; and life insurance contracts to which the transfer for value rule under I.R.C. §101 may apply.

0563535.1

8

## ARTICLE 5
## GIFTS OF TANGIBLE PERSONAL PROPERTY

Upon the Trustors' deaths, subject to the payment of, or satisfactory provision being made for, all their debts and taxes (including all Estate Taxes), the following distributions shall be made by the Trustee from the Trust Estate in which the property is held.

**5.1    Gifts on Death of Deceased Spouse.**  Upon the Deceased Spouse's death, all of the Deceased Spouse's interest in his or her tangible personal property, together with any insurance on the property, shall pass in trust to the Trustee of the Survivor's Trust, to be administered under Article 7.

**5.2    Gifts on Death of the Surviving Spouse.**  Upon the Surviving Spouse's death, the Trustee shall distribute all tangible personal property held in the Trust Estate to the Trustors' children who survive the Surviving Spouse, to be divided among them in shares of substantially equal value as they agree.  If the Trustors' children fail to agree on the division of the tangible personal property, the property shall be divided among them as the Trustee may determine in his or her discretion.  Alternatively, the Trustee may instead sell the property and the net proceeds of sale shall be distributed as part of the Trust Estate.  If none of the Trustors' children survive the Surviving Spouse, this gift shall lapse and the tangible personal property shall be administered as part of the Trust Estate.   It is anticipated that if the Trustors' children do not want items of approximately equal value, then the Trustee shall distribute only so much as will result in equal shares for the children based on the child who wants the least items.  The balance of the items will then be sold in a way that any child may purchase a desired item, in a manner similar to a public auction.

## ARTICLE 6
## GIFTS OF MONEY AND OTHER PROPERTY

Upon the Trustors' deaths, subject to the payment of, or satisfactory provision being made for, all their debts and taxes (including all Estate Taxes), the following distributions shall be made by the Trustee.

**6.1    Gifts of Money Upon the Deceased Spouse's Death.**  Upon the Deceased Spouse's death, the Trustee shall make the following distributions from the Deceased Spouse's property:

(a)    The Trustee shall distribute the sum of One Hundred Thousand Dollars ($100,000) outright to RANDI SHAPIRO, provided she survives the Deceased Spouse and is unmarried at the death of the Deceased Spouse.  If RANDI SHAPIRO is married at the death of the Deceased Spouse or if she does not survive the Deceased Spouse, the gift shall lapse and shall not be made.

(b)    The Trustee shall distribute the sum of One Hundred Thousand Dollars ($100,000) outright to JANE HOROWITZ, provided she survives the Deceased Spouse and is unmarried at the death of the Deceased Spouse.  If JANE HOROWITZ is married at the death of

the Deceased Spouse or if she does not survive the Deceased Spouse, the gift shall lapse and shall not be made.

  **6.2**  **Gifts Upon the Surviving Spouse's Death**. Upon the Surviving Spouse's death, the Trustee shall make no specific gifts.

## ARTICLE 7
## THE SURVIVOR'S TRUST

  Upon the death of the Deceased Spouse, the Surviving Spouse's share of the Trust Estate shall continue in trust and shall be administered as a separate trust, called the Survivor's Trust, according to the terms of this Declaration of Trust, specifically including the following provisions. All references in this Declaration of Trust to the "Survivor's Trust" shall be to the trust or trusts established under this article.

  **7.1**  **Right to Direct and Approve the Trustee's Actions**. The Surviving Spouse reserves the right to direct and approve the actions of the Trustee of the Survivor's Trust, including the Trustee's investment decisions and the use of trust property as collateral for any personal obligations of the Surviving Spouse. The Surviving Spouse's approval of the Trustee's actions shall be binding upon all other beneficiaries.

  **7.2**  **Distributions of Net Income and Principal**. During the Surviving Spouse's lifetime, the Trustee shall distribute to him or her from the Trust Estate of the Survivor's Trust the entire net income and as much of the principal as he or she directs. Also, the Trustee is authorized to distribute to or for the benefit of the Surviving Spouse that amount of principal, up to the whole of the Trust Estate, as the Trustee deems appropriate in the exercise of his or her discretion, for the Surviving Spouse's health, education, maintenance and support, using the Surviving Spouse's accustomed manner of living as a guide and without regard to his or her other sources of support. The Trustee shall exercise this discretion in a liberal manner, and the rights of remainder beneficiaries shall be of no importance. Further, if the Surviving Spouse is or becomes Incapacitated, the Trustee is authorized to distribute to any person whom the Surviving Spouse is then legally obligated to support or who has been receiving support from him or her that amount of net income and principal as the Trustee deems appropriate in his or her discretion to continue that support.

  **7.3**  **Distribution of Principal to Complete Minimum Distribution**. To the extent the total amount distributed to the Surviving Spouse from the Marital Trust, the Exemption Trust and the Survivor's Trust, as well as all "deemed income" to the Surviving Spouse resulting from assets owned by the Surviving Spouse outside of the trusts (as defined in Section 8.5, below), in any year falls short of the "Minimum Distribution" (as defined in Section 8.5, below), the Trustee shall distribute to or for the benefit of the Surviving Spouse such sums out of the principal of the Survivor's Trust as are necessary to remedy such short fall ("Make-Up Principal Distributions"). All Make-Up Principal Distributions from the Survivor's Trust shall be made on a pro rata basis with the Make-Up Principal Distributions made from the Marital Trust pursuant to Section 8.6, and once the Marital Trust is exhausted, on a pro rata basis with the Make-Up Principal Distributions made from the Exemption Trust pursuant to Section 9.6, such that the portion of

             10

the Make-Up Principal Distribution payable from the Survivor's Trust and the portion of the Make-Up Principal Distribution payable from the Marital Trust or the Exemption Trust, as the case may be, shall bear the same ratio as the fair market value of the principal of the Survivor's Trust bears to the fair market value of the principal of the Marital Trust or Exemption Trust, as the case may be, at the time said Make-Up Principal Distribution is being made.

**7.4    Gifts.** The Trustee is authorized to continue any gift program the Surviving Spouse starts, including gifts made to use the Surviving Spouse's available federal gift tax annual exclusion amounts or lifetime exemption or exclusion amounts, at the same level and to the same persons as he or she made such gifts. The Trustee may fulfill any charitable pledges made by the Surviving Spouse. Gifts may be made outright or in trust. In making the gifts authorized under this section, the Trustee may follow the directions given him or her by any Agent acting for the Surviving Spouse under a durable power of attorney that expressly grants to the Agent the power to continue the Surviving Spouse's plan of giving. Also, the Trustee may distribute income or principal to an Agent acting under a durable power of attorney executed by the Surviving Spouse to enable the Agent to make gifts as provided under the durable power of attorney, including gifts to the Surviving Spouse's issue and to Charitable Organizations.

**7.5    General Power of Appointment.** The Surviving Spouse shall have a General Power of Appointment over the entire Trust Estate, including any accrued and undistributed income, administered under this article in the Survivor's Trust. Upon the death of the Surviving Spouse, the Trustee shall distribute all or any part of the property remaining in the Survivor's Trust as the Surviving Spouse may direct by the exercise of such General Power of Appointment.

**7.6    Disposition of Survivor's Trust Upon the Death of the Surviving Spouse.** Upon the Surviving Spouse's death, the Survivor's Trust shall terminate. The Trustee may pay from the remaining Trust Estate of the Survivor's Trust the expenses of the Surviving Spouse's last illness and funeral. Thereafter, subject to the payment of debts and taxes and the exercise of the General Power of Appointment provided in Section 7.5, the remaining Trust Estate of the Survivor's Trust, including the property held in the Trust Estate at the date of the Surviving Spouse's death and the property transferred to the Trust Estate by reason of his or her death, shall be allocated and distributed, as follows:

**(a)    Gifts of Tangible Personal Property.** The Trustee shall make distributions of the Surviving Spouse's tangible personal property as provided in Article 5.

**(b)    Balance of the Trust Estate.** The balance of the Trust Estate of the Survivor's Trust shall be allocated to the Descendants' Trust. The Trustee shall administer the property allocated to the Descendants' Trust as provided in Article 10.

## ARTICLE 8
## THE MARITAL TRUST

Upon the Deceased Spouse's death, all trust property subject to the provisions of this article shall be held by the Trustee in trust for the Surviving Spouse for his or her lifetime, and shall be administered as a separate trust, called the Marital Trust, according to the terms of this

0563535.1                                        11

Declaration of Trust, specifically including the following provisions. All references in this Declaration of Trust to the "Marital Trust" shall be to the trust or trusts established under this article.

**8.1    Distributions During Surviving Spouse's Lifetime.** The Trustee shall distribute to or for the benefit of the Surviving Spouse the greater of (i) all of the net income of the Marital Trust, and (ii) the Distribution Amount (as defined below) in quarterly or other convenient installments, but at least annually.

**8.2    Calculation of Distribution Amount.** The Distribution Amount shall be calculated in accordance with the following provisions:

(a)    **Distribution Base.** On the first day of each taxable year of the Marital Trust (including any short taxable year), the Trustee shall compute the net fair market value of the Trust Estate of the Marital Trust taking into account all assets and liabilities of the Trust Estate of the Marital Trust excluding the Residence (or any successor Residence) and any furniture, furnishings or any other items of tangible personal property in the Marital Trust, but including the proceeds from the sale of the Residence if such proceeds are not invested in a new Residence. The Trustee may use the net fair market value of the Trust Estate of the Marital Trust on the first business day of the taxable year to determine the net fair market value of the Trust Estate of the Marital Trust on the first day of the taxable year. Such net fair market value as thus determined shall be referred to hereinafter as the "Distribution Base".

(b)    **Average Distribution Base.** Except as provided in this Section 8.2, at the beginning of each taxable year of the Marital Trust, the Trustee shall compute the average of the Distribution Base (as computed in Section 8.2(a)) for such taxable year and for the two (2) immediately preceding taxable years. In the second taxable year of the Marital Trust, the Trustee shall compute the average of the Distribution Base (as computed in Section 8.2(a)) for such taxable year and for the one (1) immediately preceding taxable year. In either case, the amount so computed shall constitute the "Average Distribution Base" for the current taxable year of the Marital Trust. In the first taxable year of the Marital Trust, the Average Distribution Base shall equal the Distribution Base calculated under Section 8.2(a), prorated on a daily basis.

(c)    **Distribution Amount.** After the Average Distribution Base is determined for a particular taxable year, the Trustee shall multiply the Average Distribution Base by Six percent (6%). The product of that calculation shall be referred to as the "Distribution Amount". As soon as reasonably practical after the close of the taxable year for which such Distribution Amount has been determined, the Trustee shall determine the net income of the Marital Trust for such taxable year. No later than the earlier of (i) ninety (90) days after the close of such taxable year and (ii) thirty (30) days after such determination of the net income of the Marital Trust for such taxable year (the "Distribution Date"), if the net income of the Marital Trust is greater than the greater of the Distribution Amount, the Trustee shall distribute to or for the benefit of the Surviving Spouse the amount by which the net income of the Marital Trust exceeds the Distribution Amount.

0563535.1

(d)    **Prorated Distributions.** Notwithstanding the foregoing, the Trustee may, in the Trustee's discretion, make prorated distributions to the Surviving Spouse of the Distribution Amount for such year in monthly installments. If upon the Distribution Date the amounts advanced to the Surviving Spouse shall be less than an amount equal to the Distribution Amount or the net income of the Marital Trust, then the Trustee shall pay to the Surviving Spouse the difference between the amounts actually advanced to the Surviving Spouse and the greater of the Distribution Amount or the net income of the Marital Trust.

(e)    **Adjustments to Value.** In the event that the value of the Trust Estate of the Marital Trust (other than the value of the Residence (or any successor Residence) and any furniture, furnishings or any other items of tangible personal property in the Marital Trust) is finally determined for federal estate tax purposes at a value different than that reported on the last federal estate tax return filed with respect to the Deceased Spouse, then the Distribution Amount for the year of the Deceased Spouse's death (and any subsequent years on which a Distribution Amount was based on a value other than as so finally determined) shall be redetermined. In such event, the Trustee shall pay to the Surviving Spouse (in the case of an underpayment), or be repaid by the Surviving Spouse (in the case of an overpayment), an amount equal to the difference between the amount which the Trustee should have paid to the Surviving Spouse and the amount which the Trustee actually paid to the Surviving Spouse, in either case without interest. Such payments or repayments shall be made within a reasonable period after the final determination of the net fair market value of the Trust Estate of the Marital Trust for federal estate tax purposes.

(f)    **Year of Surviving Spouse's Death.** A pro rated Distribution Amount shall be distributed with respect to the taxable year of the Marital Trust in which occurs the death of the Surviving Spouse.

(g)    **Surviving Spouse Entitled to Net Income.** Nothing in this paragraph shall be construed in any way so as to limit the Surviving Spouse's right to the entire net income of the Marital Trust beginning from the Deceased Spouse's date of death.

**8.3    Purpose for Unitrust Distributions.** The Trustors specifically and consciously chose to make distributions to the Surviving Spouse from the Marital Trust in this manner described in Section 8.2 so that the Trustee could invest the assets of the Marital Trust with regard to the total return on investment, rather than specifically to produce income for the Surviving Spouse. The Trustors understand that by paying the greater of the Distribution Amount and the net income of the Marital Trust to the Surviving Spouse each year, the Surviving Spouse may receive more than the total income of the Marital Trust, and based upon the actual total return realized, could effectively be invading principal of the Marital Trust. In encouraging the Trustee to pursue an appropriate "total return" investment strategy, the Trustors are not in any way requiring the Trustee to attempt to earn extraordinary rates of return to protect the remainder beneficiaries. Instead, the Trustors simply hope that the Trustee can focus on earning an appropriate total return which will allow the Marital Trust to provide the intended annual benefit to the Surviving Spouse for the remainder of his or her life with the preservation of the value of the Marital Trust for the remainder beneficiaries being of secondary importance.

**8.4    Discretionary Distribution of Principal.** If the Trustee shall deem payments of the Marital Trust net income and any Distribution Amount for a particular taxable year to be insufficient, the Trustee shall also distribute to or for the benefit of the Surviving Spouse such sums out of the principal of the Marital Trust as the Trustee, in the Trustee's discretion, shall deem necessary for the Surviving Spouse's health, education, maintenance and support.

**8.5    Minimum Distribution.** Notwithstanding any other provision hereof, it is the Trustors' intent that the Surviving Spouse receive an annual "Minimum Distribution" of Five Hundred Thousand Dollars ($500,000), net of income taxes, from all sources available to the Surviving Spouse, including, but not limited to, the Survivor's Trust, the Marital Trust, the Exemption Trust and any assets owned by the Surviving Spouse outside of the various trusts. For purposes of determining the Minimum Distribution, any assets owned by the Surviving Spouse outside of the various trusts shall be deemed to provide the Surviving Spouse with income equal to six percent (6%) of the fair market value of such assets, as determined on the first business day of the taxable year.

**8.6    Distribution of Principal to Complete Minimum Distribution.** Except as otherwise provided in this Section 8.6, below, to the extent the total amount distributed to the Surviving Spouse from the Marital Trust, the Exemption Trust and the Survivor's Trust, as well as all deemed income to the Surviving Spouse resulting from assets owned by the Surviving Spouse outside of the trusts pursuant to Section 8.5, above, in any year falls short of the Minimum Distribution, the Trustee shall distribute to or for the benefit of the Surviving Spouse such sums out of the principal of the Marital Trust as are necessary to remedy such short fall ("Make-Up Principal Distributions"). All Make-Up Principal Distributions from the Marital Trust shall be made on a pro rata basis with the Make-Up Principal Distributions made from the Survivor's Trust pursuant to Section 7.3, such that the portion of the Make-Up Principal Distribution payable from the Survivor's Trust and the portion of the Make-Up Principal Distribution payable from the Marital Trust shall bear the same ratio as the fair market value of the principal of the Survivor's Trust bears to the fair market value of the principal of the Marital Trust at the time said Make-Up Principal Distribution is being made.

Notwithstanding the foregoing, in the event that the Surviving Spouse depletes all of the assets held by the Survivor's Trust and all assets owned by the Surviving Spouse outside of the various trusts by way of transfers made to third parties, including individuals, charities and/or other entities, then no Minimum Distribution shall be payable to the Surviving Spouse pursuant to Section 8.5 and thus no Make-Up Principal Distributions shall be made pursuant to this Section 8.6; rather, the Surviving Spouse shall simply be entitled to receive the amount specified in Section 8.1, above.

**8.7    Qualification of the Marital Trust.** The Trustors intend that the Marital Trust, and the property passing to the Marital Trust, shall qualify for the unlimited marital deduction under I.R.C. §2056(b). The provisions of this Declaration of Trust, including any power, duty, or discretionary authority given to the Trustee, shall be construed to comply with the marital deduction provisions of the I.R.C. Any questions of construction or interpretation shall be resolved to achieve or protect the marital deduction for trust property. If the existence, construction, or operation of any provision of this Declaration of Trust would disqualify the

Marital Trust or any part of it for the marital deduction, that provision is made invalid ab initio in whole or appropriate part as necessary to prevent that disqualification, or shall be construed by the Trustee so as to qualify the Marital Trust for the marital deduction as fully as possible, reasonably consistent with the other provisions of this Declaration of Trust.

**8.8    Limitations on Trustee's Powers.** The Trustee of the Marital Trust shall exercise his or her trustee powers so as to comply with the marital deduction statutes under local law and the I.R.C. and applicable regulations. The Trustee shall take no action and shall have no power, authority, or discretion over the division, establishment, or funding of the trusts created under this Declaration of Trust, over investments, over the income or principal of the trust, or over distributions to the Surviving Spouse, which would impair the marital deduction as applied to the marital deduction gift or which would disqualify the Marital Trust or other property passing to or for the benefit of the Surviving Spouse for the allowance of a marital deduction. Any rights, powers, and discretion granted to the Trustee that might disqualify property for the marital deduction shall not be effective as to the Marital Trust or the marital deduction gift. The Trustee is granted any and all powers not otherwise granted in this Declaration of Trust which would be necessary to qualify all or any portion of the Marital Trust, or other property passing to or for the benefit of the Surviving Spouse, for the marital deduction.

**8.9    Administering the Marital Trust: Unproductive Property.** Unproductive or under-productive property shall not be held as an asset of the Marital Trust for more than a reasonable time during the lifetime of the Surviving Spouse without his or her consent. If any of the property allocated to the Marital Trust is not producing a reasonable current income, the Trustee, upon the written request of the Surviving Spouse, shall sell that property and reinvest the proceeds in investments producing a reasonable current income.

**8.10    Electing Qualified Terminable Interest Property.** With respect to all property passing under the Deceased Spouse's Will, any trust agreement signed by the Deceased Spouse (including this Declaration of Trust), or any non-probate asset to or for the benefit of the Surviving Spouse which may qualify as "qualified terminable interest property" within the meaning of I.R.C. §2056(b)(7), the Deceased Spouse's Executor may elect to qualify all or any portion of that property for the federal estate tax marital deduction. If the timing of the Deceased Spouse's and the Surviving Spouse's deaths are such that the exercise of the election would cause the combined Estate Taxes imposed upon the Deceased Spouse's and the Surviving Spouse's estates to be greater than if the election were made in a lesser amount or not at all, the Trustors suggest to the Deceased Spouse's Executor that he or she make the election described above, if at all, in a manner appropriate to minimize the combined Estate Taxes imposed upon the two estates. The Deceased Spouse's Executor is also authorized to make the election provided for in I.R.C. §2652(a)(3).

A full or partial "qualified terminable interest property" election may be made under I.R.C. §2056(b)(7) with respect to qualifying property to be administered under the provisions of Article 8 (The Marital Trust). If a QTIP election is made with respect to a portion of the trust property passing to the Marital Trust, then that property shall be divided into at least two trusts, with one or more separate trusts holding the portion with respect to which the QTIP election has been made

and other separate trusts containing the portion with respect to which a QTIP election has not been made. Each separate trust shall be administered as provided in Article 8.

**8.11    No Trustee Liability.**  The Trustee and the Deceased Spouse's Executor shall not be liable for a good faith decision to make any election, or not to make any election, referred to in I.R.C. §2056(b)(7) or §2523(f), relating to QTIP Property, or in I.R.C. §2652(a)(3), relating to the GST Tax.

**8.12    Right to Demand Income from the Employee Benefit Plan.**  If the total installment payments received by the Trustee in any calendar year are less than the total income earned by an Employee Benefit Plan in that calendar year, the Surviving Spouse shall have the power, acting alone, to compel the Trustee to demand an additional distribution from the Employee Benefit Plan, so that the total distribution received in that year equals at least the total income earned by the Employee Benefit Plan in that year. The Surviving Spouse's power to annually compel additional distributions is cumulative, and any amount subject to the power that is not distributed in any calendar year shall be carried over, and shall remain subject to the Surviving Spouse's power, in each succeeding calendar year.

**8.13    Limited Power of Appointment to the Surviving Spouse.**  Upon the death of the Surviving Spouse, the Trustee shall distribute all or any part of the property remaining in the Marital Trust as the Surviving Spouse may direct by the exercise of a Limited Power of Appointment (as defined in Article 13) over the Trust Estate of the Marital Trust remaining at his or her death.

**8.14    Last Illness and Funeral Expenses.**  The Trustee may pay from the Trust Estate of the Marital Trust the expenses of the Surviving Spouse's last illness and funeral.

**8.15    Disposition of the Marital Trust Upon the Death of the Surviving Spouse.**  Upon the death of the Surviving Spouse, the Marital Trust shall terminate and, subject to the exercise of the Limited Power of Appointment provided in Section 8.13, the Trustee shall allocate the remaining Trust Estate of the Marital Trust to the Descendants' Trust. The Trustee shall administer the property allocated to the Descendants' Trust as provided in Article 10.

### ARTICLE 9
### THE EXEMPTION TRUST

Upon the Deceased Spouse's death, all trust property subject to the provisions of this article shall be held by the Trustee in trust during the Surviving Spouse's lifetime, and shall be administered as a separate trust, called the Exemption Trust, according to the terms of this Declaration of Trust, specifically including the following provisions. All references in this Declaration of Trust to the "Exemption Trust" shall be to the trust or trusts established under this article.

**9.1    Distributions During Surviving Spouse's Lifetime.**  The Trustee shall distribute to or for the benefit of the Surviving Spouse the greater of (i) all of the net income of the

0563535.1

16

Exemption Trust, and (ii) the Distribution Amount (as defined below) in quarterly or other convenient installments, but at least annually.

**9.2    Calculation of Distribution Amount.** The Distribution Amount shall be calculated in accordance with the following provisions:

(a)    **Distribution Base.** On the first day of each taxable year of the Exemption Trust (including any short taxable year), the Trustee shall compute the net fair market value of the Trust Estate of the Exemption Trust taking into account all assets and liabilities of the Trust Estate of the Exemption Trust excluding the Residence (or any successor Residence) and any furniture, furnishings or any other items of tangible personal property in the Exemption Trust, but including the proceeds from the sale of the Residence if such proceeds are not invested in a new Residence. The Trustee may use the net fair market value of the Trust Estate of the Exemption Trust on the first business day of the taxable year to determine the net fair market value of the Trust Estate of the Exemption Trust on the first day of the taxable year. Such net fair market value as thus determined shall be referred to hereinafter as the "Distribution Base".

(b)    **Average Distribution Base.** Except as provided in this Section 9.2, at the beginning of each taxable year of the Exemption Trust, the Trustee shall compute the average of the Distribution Base (as computed in Section 9.2(a)) for such taxable year and for the two (2) immediately preceding taxable years. In the second taxable year of the Exemption Trust, the Trustee shall compute the average of the Distribution Base (as computed in Section 9.2(a)) for such taxable year and for the one (1) immediately preceding taxable year. In either case, the amount so computed shall constitute the "Average Distribution Base" for the current taxable year of the Exemption Trust. In the first taxable year of the Exemption Trust, the Average Distribution Base shall equal the Distribution Base calculated under Section 9.2(a), prorated on a daily basis.

(c)    **Distribution Amount.** After the Average Distribution Base is determined for a particular taxable year, the Trustee shall multiply the Average Distribution Base by Six percent (6%). The product of that calculation shall be referred to as the "Distribution Amount". As soon as reasonably practical after the close of the taxable year for which such Distribution Amount has been determined, the Trustee shall determine the net income of the Exemption Trust for such taxable year. No later than the earlier of (i) ninety (90) days after the close of such taxable year and (ii) thirty (30) days after such determination of the net income of the Exemption Trust for such taxable year (the "Distribution Date"), if the net income of the Exemption Trust is greater than the greater of the Distribution Amount, the Trustee shall distribute to or for the benefit of the Surviving Spouse the amount by which the net income of the Exemption Trust exceeds the Distribution Amount.

(d)    **Prorated Distributions.** Notwithstanding the foregoing, the Trustee may, in the Trustee's discretion, make prorated distributions to the Surviving Spouse of the Distribution Amount for such year in monthly installments. If upon the Distribution Date the amounts advanced to the Surviving Spouse shall be less than an amount equal to the Distribution Amount or the net income of the Exemption Trust, then the Trustee shall pay to the Surviving Spouse the difference between the amounts actually advanced to the Surviving Spouse and the greater of the Distribution Amount or the net income of the Exemption Trust.

(e)    **Adjustments to Value.**  In the event that the value of the Trust Estate of the Exemption Trust (other than the value of the Residence (or any successor Residence) and any furniture, furnishings or any other items of tangible personal property in the Exemption Trust) is finally determined for federal estate tax purposes at a value different than that reported on the last federal estate tax return filed with respect to the Deceased Spouse, then the Distribution Amount for the year of the Deceased Spouse's death (and any subsequent years on which a Distribution Amount was based on a value other than as so finally determined) shall be redetermined.  In such event, the Trustee shall pay to the Surviving Spouse (in the case of an underpayment), or be repaid by the Surviving Spouse (in the case of an overpayment), an amount equal to the difference between the amount which the Trustee should have paid to the Surviving Spouse and the amount which the Trustee actually paid to the Surviving Spouse, in either case without interest.  Such payments or repayments shall be made within a reasonable period after the final determination of the net fair market value of the Trust Estate of the Exemption Trust for federal estate tax purposes.

(f)    **Year of Surviving Spouse's Death**.  A pro rated Distribution Amount shall be distributed with respect to the taxable year of the Exemption Trust in which occurs the death of the Surviving Spouse.

**9.3    Purpose for Unitrust Distributions.**  The Trustors specifically and consciously chose to make distributions to the Surviving Spouse from the Exemption Trust in this manner described in Section 9.2 so that the Trustee could invest the assets of the Exemption Trust with regard to the total return on investment, rather than specifically to produce income for the Surviving Spouse.  The Trustors understand that by paying the greater of the Distribution Amount and the net income of the Exemption Trust to the Surviving Spouse each year, the Surviving Spouse may receive more than the total income of the Exemption Trust, and based upon the actual total return realized, could effectively be invading principal of the Exemption Trust.  In encouraging the Trustee to pursue an appropriate "total return" investment strategy, the Trustors are not in any way requiring the Trustee to attempt to earn extraordinary rates of return to protect the remainder beneficiaries.  Instead, the Trustors simply hope that the Trustee can focus on earning an appropriate total return which will allow the Exemption Trust to provide the intended annual benefit to the Surviving Spouse for the remainder of his or her life with the preservation of the value of the Exemption Trust for the remainder beneficiaries being of secondary importance.

**9.4    Discretionary Distribution of Principal.**  If the Trustee shall deem payments of the Exemption Trust net income and any Distribution Amount for a particular taxable year to be insufficient, the Trustee shall also distribute to or for the benefit of the Surviving Spouse such sums out of the principal of the Exemption Trust as the Trustee, in the Trustee's discretion, shall deem necessary for the Surviving Spouse's health, education, maintenance and support.

**9.5    Minimum Distribution.**  Notwithstanding any other provision hereof, it is the Trustors' intent that the Surviving Spouse receive an annual "Minimum Distribution" of Five Hundred Thousand Dollars ($500,000), net of income taxes, from all sources available to the Surviving Spouse, including, but not limited to, the Survivor's Trust, the Marital Trust, the Exemption Trust and any assets owned by the Surviving Spouse outside of the various trusts.  For purposes of determining the Minimum Distribution, any assets owned by the Surviving Spouse

outside of the various trusts shall be deemed to provide the Surviving Spouse with income equal to six percent (6%) of the fair market value of such assets, as determined on the first business day of the taxable year.

**9.6    Distribution of Principal to Complete Minimum Distribution.**  Except as otherwise provided in this Section 9.6, below, to the extent the total amount distributed to the Surviving Spouse from the Marital Trust, the Exemption Trust and the Survivor's Trust, as well as all deemed income to the Surviving Spouse resulting from assets owned by the Surviving Spouse outside of the trusts pursuant to Section 9.5, above, in any year falls short of the Minimum Distribution, the Trustee shall distribute to or for the benefit of the Surviving Spouse such sums out of the principal of the Exemption Trust as are necessary to remedy such short fall ("Make-Up Principal Distributions").  All Make-Up Principal Distributions from the Exemption Trust shall be made on a pro rata basis with the Make-Up Principal Distributions made from the Survivor's Trust pursuant to Section 7.3, such that the portion of the Make-Up Principal Distribution payable from the Survivor's Trust and the portion of the Make-Up Principal Distribution payable from the Exemption Trust shall bear the same ratio as the fair market value of the principal of the Survivor's Trust bears to the fair market value of the principal of the Exemption Trust at the time said Make-Up Principal Distribution is being made.  Notwithstanding the foregoing, no Make-Up Principal Distributions shall be made from the Exemption Trust until such time when the assets of the Marital Trust have been completely exhausted.

Notwithstanding the foregoing, in the event that the Surviving Spouse depletes all of the assets held by the Survivor's Trust and all assets owned by the Surviving Spouse outside of the various trusts by way of transfers made to third parties, including individuals, charities and/or other entities, then no Minimum Distribution shall be payable to the Surviving Spouse pursuant to Section 9.5 and thus no Make-Up Principal Distributions shall be made pursuant to this Section 9.6; rather, the Surviving Spouse shall simply be entitled to receive the amount specified in Section 9.1, above.

**9.7    Limited Power of Appointment to the Surviving Spouse.**  Upon the death of the Surviving Spouse, the Trustee shall distribute all or any part of the property remaining in the Exemption Trust as the Surviving Spouse may direct by the exercise of a Limited Power of Appointment (as defined in Article 13) over the Trust Estate of the Exemption Trust remaining at his or her death.

**9.8    Disposition of the Exemption Trust Upon the Death of the Surviving Spouse.**  Upon the death of the Surviving Spouse, the Exemption Trust shall terminate and, subject to the exercise of the Limited Power of Appointment provided in Section 9.7, the Trustee shall allocate the remaining Trust Estate of the Exemption Trust to the Descendants' Trust.  The Trustee shall administer the property allocated to the Descendants' Trust as provided in Article 10.

## ARTICLE 10
## THE DESCENDANTS' TRUST

All trust property allocated to the Descendants' Trust shall be administered as one or more separate trusts, according to the terms of this Declaration of Trust, specifically including the

0563535.1

19

following provisions. All references in this Declaration of Trust to the "Descendants' Trust" shall be to the trust or trusts established under this article.

**10.1    Gift of Westchester DLH, LLC.** The Trustee shall distribute the interest in Westchester DLH, LLC held as part of the trust estate in equal shares to RANDI SHAPIRO, PAUL SHAPIRO and LAWRENCE SHAPIRO. If any of the foregoing individuals is deceased, his or her interest in Westchester DLH, LLC shall instead be added to his or her share of the Descendants' Trust allocated to his or her living issue pursuant to Section 10.2, below, to be held, administered and distributed for the benefit of his or her issue in the manner provided in Section 10.2, below. If any of the foregoing individuals is deceased without living issue, his or her interest in Westchester DLH, LLC shall instead be added to and augment proportionately the shares created under this Section 10.1 for his or her siblings (or the issue of a deceased sibling).

**10.2    Division into Shares.** The balance of the property held in the Descendants' Trust and any property added to the Descendants' Trust shall be divided, by right of representation, into separate trust shares, one trust share for each of the Trustors' children then living, but excluding ANDREW B. HOROWITZ, and one trust share collectively for the living issue of any deceased child of the Trustors, but excluding the issue of ANDREW B. HOROWITZ. Any collective share for the living issue of a deceased child shall be divided (or continue to be divided) among further successor trust shares for those issue by right of representation.

For purposes of funding the shares created under this Section 10.2, the Trustee shall gross up the amount allocable to the Trustors' children ("Grossed Up Estate") to take into account the cumulative amount of gifts made to a child of the Trustors in excess of Fifty Thousand Dollars ($50,000) during the period of time commencing with the Deceased Spouse's death and ending on the death of the Surviving Spouse ("Lifetime Gifts"). Thereafter, the Grossed Up Estate shall be divided into shares for the Trustors' issue as provided in the preceding paragraph. Finally, each child's share of the Grossed Up Estate shall be reduced by the amount of their Lifetime Gifts, it being the Trustors' intent that all of their children (excluding ANDREW B. HOROWITZ) ultimately receive equal amounts of the residue of the Trustors' estates.

To illustrate, assume that at the time of the Surviving Spouse's death, the amount allocated to the Descendants' Trust totals Five Million Dollars ($5,000,000). Also assume that following the Deceased Spouse's death, during the lifetime of the Surviving Spouse, the Surviving Spouse made the following cumulative amount of gifts to the Trustors' children: To PAUL SHAPIRO, $75,000 (so excess is $25,000); to LAWRENCE SHAPIRO, $100,000 (so excess is $50,000); to TERRI MENLOW $25,000 (so no excess); to JANE HOROWITZ, $25,000 (so no excess); and to RANDI SHAPIRO, $80,000 (so excess is $30,000). Also assume that at the time of the Deceased Spouse's death, JANE HOROWITZ is not married so she receives a gift of $100,000 pursuant to the terms of this trust (so now she is in excess by $75,000 [$25,000 plus $100,000 less $50,000]). In order to properly fund each child's share pursuant to this Section 10.2, the Grossed Up Amount to be allocated amongst the Trustors' children is $5,180,000 [$5,000,000 allocated to Descendants' Trusts plus total of Lifetime Gifts to children in excess of $50,000 each]. Thus each child's equal share of the Grossed Up Amount is $1,036,000, and each child's ultimate share of the Descendants' Trust is as follows after netting out the Lifetime Gifts:

| | |
|---|---|
| PAUL SHAPIRO: | $1,036,000 less $25,000 = $1,011,000 |
| LAWRENCE SHAPIRO: | $1,036,000 less $50,000 = $   986,000 |
| TERRI MENLOW: | $1,036,000 less $0     = $1,036,000 |
| JANE HOROWITZ: | $1,036,000 less $75,000 = $   961,000 |
| RANDI SHAPIRO: | $1,036,000 less $30,000 = $1,006,000 |

**Amount Held in Descendants' Trust:**                    **$5,000,000**

Each trust share allocated to a living child of the Trustors shall be distributed to such child outright and free of trust. Each trust share allocated to a living issue of a deceased child of the Trustors shall be held in trust as provided in the remaining sections of this article subject, however, to the provisions of any exercised power of appointment. Each trust share shall be a separate trust for all purposes and be named for its current income beneficiary.

**10.3     Allocation of Trust Assets to Gifts to Deceased Spouse's Children Upon Amendment to Survivor's Trust.** Notwithstanding the foregoing, if the Surviving Spouse amends, modifies or revokes the Survivor's Trust in such a manner that will defeat the ultimate distribution plan to the Deceased Spouse's children set forth in Section 10.2 ("Beneficiary Change"), then in that case, the Trustee shall use the assets received by the Descendants' Trust from the Marital Trust and the Exemption Trust first to fund the gifts made to the Deceased Spouse's children under Section 10.2 as if no such amendment, modification or revocation had been made to the Survivor's Trust to the fullest extent possible on a pro rata basis, and only thereafter to fund the gifts made to the Surviving Spouse's children under Section 10.2. Nothing in this Section 10.3 is intended to restrict the Surviving Spouse from reducing the amount of the Trust Estate that passes to or for the benefit of his or her own children; rather, it is the Trustors' intent under this Section 10.3 to protect the Deceased Spouses's children's shares from being reduced by an act of the Surviving Spouse following the death of the Deceased Spouse.

For purposes of determining whether a Beneficiary Change has occurred, the Trustee shall compare the value of (a) the "Base Amount," namely, the total value of (i) the gifts made by the Surviving Spouse following the Deceased Spouse's death that are in excess of his or her applicable exclusion amount, (ii) the Surviving Spouse's gross estate for federal estate tax purposes, (iii) the value of the assets held in the Exemption Trust on the Surviving Spouse's date of death, and (iv) the value of the assets held in the Marital Trust on the Surviving Spouse's date of death if such assets are not included in the Surviving Spouse's gross estate for federal estate tax purposes, against (b) the actual value of the assets allocated to the Descendants' Trust upon the Surviving Spouse's death under the terms of this trust ("Modified Amount"). For purposes of determining both the Base Amount and the Modified Amount, the value of the interest in Westchester DLH, LLC held as part of the Trust Estate shall be excluded since such asset is specifically gifted pursuant to Section 10.1, above. If the Base Amount exceeds the Modified Amount, then a Beneficiary Change shall be deemed to have occurred and the provisions of this Section 10.3 shall apply.

By way of illustration, assume that HARLENE is the Surviving Spouse and if she did not amend, modify or revoke the Survivor's Trust in any manner subsequent to the date of this trust being executed, the Base Amount upon HARLENE's death equals $10,000,000. In that case,

under Section 10.2, the equal share allocable to each of the Trustors' children is $2,000,000. Now assume that HARLENE, as the Surviving Spouse, did amend the Survivor's Trust to provide that upon her death, the entirety of the Survivor's Trust passes to her children PAUL SHAPIRO, LAWRENCE SHAPIRO and RANDI SHAPIRO in equal shares and nothing passes to ROBERT's children JANE HOROWITZ and TERRI MENLOW from the Survivor's Trust. As a result of such amendment, the Modified Amount (namely the assets actually passing to the Descendants' Trust from the Marital Trust and the Exemption Trust) equals $3,000,000. Since the Base Amount, $10,000,000 exceeds the Modified Amount, $3,000,000, this Section 10.3 applies since a Beneficiary Change has occurred.

Thus, the $3,000,000 received by the Descendants' Trust from the Marital Trust and the Exemption Trust would first be utilized to fund the shares of the Base Amount that would have been allocable to ROBERT's children JANE HOROWITZ and TERRI MENLOW had the Survivor's Trust not been amended, which shares would have totaled $4,000,000. Since the total amount available from the Marital Trust and the Exemption Trust is insufficient to fully fund each son's share of the Base Amount, each of JANE's and TERRI's shares would be funded on a pro rata basis resulting in each of them receiving $1,500,000 [$2,000,000/$4,000,000 x $3,000,000], and HARLENE's children would receive no portion of the assets passing to the Descendants' Trust from the Marital Trust and the Exemption Trust.

If, on the other hand, HARLENE had amended the Survivor's Trust to give all of her assets held in the Survivor's Trust to her son LAWRENCE SHAPIRO to the exclusion of her son PAUL SHAPIRO, her daughter RANDI SHAPIRO, and ROBERT's daughters JANE and TERRI, the adjustment called for under this Section 10.3 would apply only to restore the shares allocable to ROBERT's daughters JANE and TERRI by utilizing the assets received by the Descendants' Trust from the Marital Trust and the Exemption Trust as described above, and no such adjustment would be made for the benefit of HARLENE's other children PAUL and RANDI.

**10.4    Distributions of Net Income.** The Trustee shall distribute to or for the benefit of the beneficiary of each trust the net income of the trust established for him or her in convenient installments, but at least annually, during his or her lifetime or until termination of his or her trust. However, until the beneficiary attains age 25, the income of his or her trust may be distributed to or for the benefit of the beneficiary in the amounts and at the times that the Trustee, in his or her discretion, determines as reasonably necessary for the beneficiary's health, education, maintenance and support in his or her accustomed manner of living. The income not distributed shall be accumulated and added to principal.

**10.5    Distributions of Principal.** The Trustee, in the Trustee's discretion, may distribute to or for the benefit of the beneficiary of each trust the sums from the principal of the beneficiary's trust, up to the entire Trust Estate, that the Trustee, in his or her discretion, determines as reasonably necessary for the beneficiary's health, education, maintenance and support in his or her accustomed manner of living. In particular, the Trustee is authorized in his or her discretion to pay to or for the benefit of a beneficiary to assist a beneficiary in establishing the business or profession of the beneficiary's choosing or in purchasing a residence.

**10.6    Additional Distributions of Principal.**  After a trust has been established under the provisions of this article for a beneficiary, the following provisions shall apply.  When the beneficiary is or attains the age of 25 years, one-third of the Trust Estate of the beneficiary's trust shall be distributed to the beneficiary.  When the beneficiary is or attains the age of 30 years, one-half of the remaining Trust Estate of the beneficiary's trust will be distributed to the beneficiary. When the beneficiary attains the age of 35 years, the entire balance of the Trust Estate of the beneficiary's trust shall be distributed to the beneficiary and the beneficiary's trust shall terminate.

**10.7    Limited Power of Appointment.**  The beneficiary of each trust administered under this article shall have a Limited Power of Appointment (as defined in Article 13) over the Trust Estate of his or her trust remaining at his or her death.  If the beneficiary dies before receiving full distribution of his or her trust, the Trustee shall distribute all or any part of the property remaining in the beneficiary's trust as he or she may direct by the exercise of such Limited Power of Appointment.

**10.8    Establishment of Trusts for Successor Beneficiaries.**  Unless otherwise provided in this Declaration of Trust, if a beneficiary (including any successor beneficiary) dies after a separate trust has been established for him or her, but before receiving full distribution of that trust, the portion of the trust not appointed by the beneficiary pursuant to any power of appointment granted to him or her shall continue in trust for successor beneficiaries to be determined as follows:

**(a)    For the beneficiary's issue.**  If the beneficiary's children or other issue survive him or her, the Trustee shall divide the property, by right of representation, into separate trusts for the surviving issue of the deceased beneficiary.

**(b)    For the beneficiary's brothers and sisters.**  If the beneficiary dies without surviving issue, the Trustee shall divide the property into separate equal trust shares among his or her surviving brothers and sisters, provided that one equal share shall pass, by right of representation, for the benefit of the surviving issue of any deceased brother or sister.

**(c)    For the Trustors' issue.**  If the beneficiary dies without surviving issue and without any surviving brothers or sisters or surviving issue of deceased brothers or sisters, the property shall be allocated to a separate trust for the beneficiary's nearest then living ancestor who is the Trustors' issue.  If there is no such ancestor, the Trustee shall divide the property, by right of representation, among separate trust shares for the surviving issue of the beneficiary's nearest ancestor who was the Trustors' issue, and if there are no such issue then living, by right of representation among separate trust shares for the Trustors' issue who survive the beneficiary.

**(d)    For existing shares.**  Any addition to a trust that at that time has been wholly distributed shall be distributed to the beneficiary of the trust.  If a trust's beneficiary is then deceased, the addition shall be distributed in the manner provided in this Declaration of Trust as if the beneficiary had died before becoming entitled to distribution of his or her entire trust.  Any addition to a trust that at that time has been partially distributed shall augment proportionately the distributed and undistributed portions of the trust.  Any addition to a trust over which a power of appointment has been exercised shall be held in a separate trust or distributed as if the power had

not been exercised, unless the instrument exercising the power specifies the manner in which a subsequent addition to the trust shall be distributed.

**10.9    Administration of Trusts for Successor Beneficiaries.** Except as otherwise expressly provided above, each of the trust shares and subdivided trust shares created under the foregoing provisions for successor beneficiaries shall be administered as separate trusts for the successor beneficiaries under the same provisions as applied to the prior beneficiary's trust.

**10.10    Contingent General Power of Appointment over GST Non-Exempt Trust.** If the Trustee is administering a GST Non-Exempt Trust for a beneficiary, the following provisions shall apply to such trust:

> **(a)**    If upon the death of a beneficiary other than the Trustor, all or a portion of the assets held in the beneficiary's GST Non-Exempt Trust would otherwise be subject to the GST Tax, then notwithstanding anything to the contrary set forth in Section 10.7 and Section 10.8, the beneficiary shall have a General Power of Appointment over the smallest fractional share of such GST Non-Exempt Trust that would be necessary to reduce to the minimum the aggregate Estate Tax and GST Tax payable upon the beneficiary's death.

> **(b)**    The default provisions set forth in Section 10.8 shall apply to the extent the beneficiary fails to exercise the General Power of Appointment given to him or her under the provisions of this section.

> **(c)**    The determination of whether all or a portion of the beneficiary's GST Non-Exempt Trust "would otherwise be subject to the GST Tax" shall be made by assuming that the Limited Power of Appointment granted to the beneficiary under Section 10.7 has not been exercised.

## ARTICLE 11
## GENERATION-SKIPPING PROVISIONS

**11.1    Generation-Skipping Transfer Tax.** The Trustors intend to use effectively all available generation-skipping transfer tax exemptions, including the exemption available under the election authorized in I.R.C. §2652(a)(3). All provisions of the Trustors' respective Wills and this Declaration of Trust shall be construed in a manner consistent with that objective, and to the extent possible, so as to create and maintain trusts or shares of the Trust Estate that have inclusion ratios of either zero or one and are entirely exempt or nonexempt from GST Tax.

**11.2    Allocation of GST Exemption.** In allocating a Trustor's GST Exemption, the Trustee may include or exclude from that allocation any property as to which the Trustor is the transferor for GST Tax purposes, including property transferred prior to the Trustor's death. The Trustee's decisions may be based on the Trustor's estate tax return, gift tax returns, and other information known to the Trustee. The Trustee shall allocate the exemption in good faith, but shall not be required to allocate the exemption to benefit the various transferees or beneficiaries of the property equally, proportionally, or in any other particular manner.

0563535.1

24

**11.3    Division of Trusts.** The Trustee (other than issue of the Trustors) may divide any trust into two or more separate trusts to create one or more trusts with assets completely exempt from any application of any GST Tax or to create trusts so that the federal generation-skipping tax inclusion ratio for each such trust shall be either zero or one. Divisions shall be made based on the fair market value of the assets at the time of the division. If permitted by the regulations under the GST Tax, the allocation of property between or among separate trusts created from a single trust or trust share may be unequal in amount and in the type of assets, and the division may be non-pro rata. All trusts so established shall be administered under the same terms as would have applied to the undivided trust or trust share. The Trustee is directed to divide any trust that may be subject to the GST Tax into two separate subtrusts of equal or unequal value, but with the same terms and with the same beneficiaries, so that the transferor's exemption under I.R.C. §2631 may be allocated to one subtrust to the exclusion of the other or disproportionately between them.

**11.4    Allocation of Assets.** The Trustee may allocate any property payable or distributable to the trust or any of its subtrusts so that all trusts or property with an inclusion ratio of zero shall be allocated to a trust with an inclusion ratio of zero and all trusts or property with an inclusion ratio of other than zero shall be allocated to a trust with an inclusion ratio of other than zero. The Trustee may allocate any property that may become payable or distributable to the trust to one of its subtrusts to the exclusion of the other trusts or disproportionately between the subtrusts.

**11.5    Other GST-Related Provisions.** The Trustee, in the Trustee's discretion, may pay to a beneficiary (other than a beneficiary of a trust intended to qualify for the marital deduction in the estate of the deceased Trustor) the amount of income due to such beneficiary hereunder entirely from the income and principal of such beneficiary's GST Non-Exempt Trust until such trust is exhausted. Any discretionary distributions of principal to a beneficiary shall be made first from the beneficiary's GST Non-Exempt Trust, to the extent the Trustee deems it practical to do so. The Trustee, in the Trustee's discretion, is authorized, to the extent the Trustee deems it necessary to accomplish the order of distributions provided in this Section 11.5, to cause a GST Exempt Trust either to purchase assets from a GST Non-Exempt Trust or loan funds from the GST Exempt Trust to the GST Non-Exempt Trust, at an appropriate rate of interest on and terms of repayment determined in the Trustee's discretion.

It is the Trustors' intention to encourage the Trustee to administer separate trusts under this Declaration of Trust in ways that, in the long run, are intended to reduce unnecessary income and transfer taxation among trusts and their beneficiaries and to make efficient utilization of available tax privileges, such as each Trustor's GST Exemption. Without limiting the foregoing, the Trustors authorize the Trustee, in administering different trusts wholly or in part for the benefit of a particular beneficiary or group of beneficiaries, to adopt different investment strategies and objectives for different trusts based on their inclusion ratios, and to prefer making distributions from GST Non-Exempt Trusts to beneficiaries who are non-skip persons for GST purposes and from GST Exempt Trusts to those who are skip persons. Consistent with these objectives, the Trustee of any trust may share information, consult, and in all reasonable ways coordinate decisions and actions with other trustees and with personal representatives of either Trustor's estate, under other dispositions made by Trustors, or either of them, and under the wills

0563535.1

and trusts of others when the various trusts or estates have, in whole or in part, similar beneficiaries or objectives.

**11.6    No Trustee Liability.**  The Trustee shall not be liable for any exercise or nonexercise of any of the powers granted under this article.

## ARTICLE 12
## DISCLAIMERS

**12.1    Disclaimers Allowed.**  In addition to any rights granted by law, any person granted any right, title, interest, benefit, privilege, or power under this Declaration of Trust, including the Surviving Spouse, may at any time renounce, release, or disclaim all or any part of that right, title, interest, benefit, privilege, or power, including his or her right, title, and interest in and to trust income or principal.  The natural or legal guardians of a minor shall have the authority and power to disclaim the interests of the minor; the conservator of the estate shall have the authority and power to disclaim the interests of the conservatee; the fiduciary of a trust or estate shall have the authority and power to disclaim the interests of the trust or estate; and the youngest adult ancestor of any unborn, unknown, or unascertained issue shall have the power to disclaim the interests of those issue.

**12.2    Disclaimers of Property Interests.**  In general, a disclaimer or renunciation of a property interest shall accelerate the succeeding interest.  Except as otherwise expressly provided in this Declaration of Trust, any interest in property so disclaimed shall be allocated or distributed as if the beneficiary had predeceased the person from whom the interest in the property would have been received.  Further, except as otherwise expressly provided in this Declaration of Trust, if a beneficiary disclaims his or her entire interest in one or more specific assets held in any trust, the assets shall be distributed from the trust as if the beneficiary predeceased the person from whom the interest in the assets would have been received.  If all living current and contingent beneficiaries of a trust provided for under this Declaration of Trust disclaim their interests in the trust, any contingent remainder interest shall be destroyed and the remaining trust property shall pass as provided in Section 4.3.

**12.3    Disclaimers by the Surviving Spouse.**  The Surviving Spouse shall have the power to disclaim all or any portion of or interest in the Deceased Spouse's property allocable to or otherwise passing to the Survivor's Trust, the Marital Trust, or the Exemption Trust.  Notwithstanding any other provision of this Declaration of Trust, if the Surviving Spouse effectively disclaims all or any portion of his or her interest in the property in or passing to the Survivor's Trust, the portion of the property or interests so disclaimed shall immediately pass to the Marital Trust.  Similarly, if the Surviving Spouse effectively disclaims all or any portion of his or her interest in the property in or passing to the Marital Trust, the portion of the property or interests so disclaimed shall immediately pass to the Exemption Trust.  In the event of a disclaimer, however, there shall first be deducted from the disclaimed property or interests the additional Estate Taxes, if any, which may become payable because no marital deduction is allowable to the Deceased Spouse's estate for the property or interests disclaimed.

0563535.1

Finally, notwithstanding any contrary provision in this Declaration of Trust, if the Surviving Spouse disclaims any interest in property otherwise passing to him or her or for his or her benefit, the Surviving Spouse shall have no power, as a Trustee or otherwise, to distribute, allocate, or appoint income or principal from such disclaimed property to or for the benefit of any person other than himself or herself, whether by exercising a special power of appointment or the powers of a Trustee. Moreover, the Trustee shall keep a separate account for the property comprising the disclaimed interest and any power of appointment granted the Surviving Spouse over the property distributed to the Marital Trust or the Exemption Trust shall not apply to such property.

**12.4    Disclaimers by Trustee.**  Any person granted any fiduciary power, authority, right, privilege, or discretion ("Fiduciary Power") under this Declaration of Trust or under the law applicable to this trust may at any time renounce, release, or disclaim all or any part of such Fiduciary Power. Unless otherwise expressly provided in the disclaimer, if any Fiduciary Power shall be disclaimed, the power shall cease to exist and shall not pass to any successor fiduciary. The disclaimer may expressly provide that the Fiduciary Power shall be exercisable by the remaining Trustees, if any, or any successor Trustees.

**12.5    Effective Disclaimers.**  To be effective, disclaimers must be in writing, signed by the disclaiming person, and irrevocable. Disclaimers shall be effective only upon delivery to the Trustee or to a court having jurisdiction over the administration of the trust.

## ARTICLE 13
## POWERS OF APPOINTMENT

The following provisions apply to Powers of Appointment granted under this Declaration of Trust:

**13.1    Manner of Exercise.**  A Power of Appointment may be exercised by an acknowledged written instrument delivered to the Trustee during the beneficiary's lifetime or by the provisions of the beneficiary's Will (whether or not admitted to probate), but, in either case, only by specific reference to the power being exercised.

**13.2    Permissible Donees--Powers Exercisable by the Surviving Spouse.**  A General Power of Appointment granted to the Surviving Spouse may be exercised in favor of any person or entity without limitation. A Limited Power of Appointment granted to the Surviving Spouse authorizes the Surviving Spouse to change the manner in which the Surviving Spouse's issue receive the property passing from the trust in question to the trust designated to receive such assets for the benefit of the Trustors' issue. The Surviving Spouse may exercise this Limited Power of Appointment to provide that one or more of such issue shall receive his or her share of such property either outright or in trust on terms as the Surviving Spouse may set forth in the instrument exercising such power, but in no event shall the Surviving Spouse have the power to change the amounts allocated to each share created for the Surviving Spouse's issue nor shall the Surviving Spouse have any power to affect the shares of the Trust Estate allocated to his or her stepchildren hereunder.

0563535.1

27

**13.3    Permissible Donees--Powers Exercisable by Beneficiaries Other Than the Surviving Spouse.** The following provisions shall apply to Powers of Appointment granted to the beneficiaries other than the Surviving Spouse (the "holder"):

> **(a)**    A General Power of Appointment granted to the holder may be exercised only in favor of one or more creditors of the holder's estate.

> **(b)**    A Limited Power of Appointment granted to the holder may be exercised only in favor of the Trustors' issue.

> **(c)**    In no event, however, may a Limited Power of Appointment be exercised in favor of the holder, the holder's estate, the creditors of the holder, or the creditors of the holder's estate.

**13.4    Terms and Conditions of Exercise.** Any Power of Appointment granted to a beneficiary may be exercised outright or in further trust, in such shares and on such terms and conditions as the holder may specify.

## ARTICLE 14
## PAYMENT OF DEBTS AND EXPENSES

The following provisions shall apply upon the death of each Trustor to the payment of their debts and expenses.

**14.1    Payment of Debts and Expenses.** Upon the death of each Trustor, the Trustee may pay on behalf of the deceased Trustor from his or her share of the Trust Estate, in the manner and at the time the Trustee determines, any and all of the deceased Trustor's outstanding unsecured debts (including unpaid tax liabilities arising prior to the Trustor's death and interest and penalties imposed on those tax liabilities), expenses of last illness, burial and funeral claims, Expenses of Estate Administration, any allowances by court order for those persons dependent upon the deceased Trustor, and any other proper expenses of the deceased Trustor's estate. In making such payments, the Trustee shall charge the community debts (except last illness and burial and funeral expenses) to the Trustors' community property. All other debts and expenses shall be charged to the Deceased Spouse's separate property and his or her one-half share of community property as set forth in Section 14.3.

**14.2    Payment from Trust.** The Trustee is authorized to pay from the assets of the trust the deceased Trustor's debts and expenses that the deceased Trustor's Executor may request. If there are insufficient assets in the deceased Trustor's probate estate to make any gifts provided under the deceased Trustor's Will or to pay the deceased Trustor's debts and expenses, or if there are sufficient assets in the deceased Trustor's probate estate but, in the sole judgment of the Trustee, it would be to the advantage of the estate that those gifts or payments be made from the assets in the trust, the Trustee may pay from the assets of the trust all of those gifts, debts, and expenses. If the assets of the deceased Trustor's probate estate (exclusive of residential real property and tangible personal property) are insufficient to pay all unsecured debts, funeral expenses, and expenses of administration, the Trustee may pay to the deceased Trustor's estate

28

from the principal of the Trust Estate that amount that the deceased Trustor's Executor may request for those purposes. The Trustee shall not be under any duty to take part in determining the amount of those debts or expenses, and may rely upon the written certification of the deceased Trustor's Executor for the amount to be paid as authorized by these provisions. The Trustee shall be under no duty to see to the application of any such payment. The Trustee shall not require any reimbursement for payments made to the deceased Trustor's Executor.

**14.3   Charging of Payments.**  Debts and expenses paid by the Trustee, as authorized above, shall first be charged against and paid from assets or the proceeds from assets subject to the federal estate tax on the deceased Trustor's estate but which do not qualify for the marital deduction. If possible, those payments shall not be made from or charged against property otherwise qualifying for the federal estate tax marital deduction or property exempt from GST Tax, but shall be made from other trust property. Those amounts shall not be prorated or apportioned against any beneficiary's interest under this Declaration of Trust. The Trustee shall also make payments in a manner to preserve, in so far as is possible, all tax exemptions applicable to life insurance proceeds that become part of the Trust Estate.

## ARTICLE 15
## PAYMENT OF ESTATE TAXES AND GENERATION-SKIPPING TRANSFER TAXES

**15.1   Payment of Estate Taxes.**  All Estate Taxes and charges imposed upon any property by reason of a Trustor's death, whether passing under the Will or not, shall be paid (1) first, by the deceased Trustor's Executors out of the residue of the deceased Trustor's probate estate, to the extent funds are sufficient, and (2) second, by the Trustee out of the residue of the Trust Estate. All Estate Taxes shall be paid without proration or reimbursement from any other property or person. If, however, Estate Taxes are attributable to a QTIP property trust created under the deceased Trustor's spouse's Will or this Declaration of Trust, such taxes shall be paid from the QTIP property trust.

**15.2   No Proration.**  No portion of the Estate Taxes payable under these provisions shall be charged against, prorated among, or recovered from any person entitled to benefits under this instrument, except as provided above as to QTIP property.

**15.3   Reserves.**  The Trustee may establish reserves from trust income and principal that the Trustee considers necessary for the payment of Estate Taxes.

**15.4   Tax Elections.**  The Trustee shall have the power, in their discretion, to take any action and to make any election to minimize the tax liabilities of our probate estates, any trust, and the beneficiaries. The Trustee may make those elections and allocations under the tax laws as they deem advisable. The Trustee may, but shall not be required to, allocate the benefits of an election among the various beneficiaries or make adjustments in the rights of any beneficiaries or between the income and principal accounts to compensate for the consequences of any tax election or any investment or administrative decision made by the Trustee that may have had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over another.

0563535.1

## ARTICLE 16
## APPOINTMENT OF TRUSTEE

The following provisions shall apply to the appointment, designation, and removal of the Trustee of each of the trusts established under this Declaration of Trust.

**16.1    The Trustors' Powers of Appointment, Designation, and Removal.** During the Trustors' joint lifetimes, the Trustors shall have the power to appoint, designate, and remove, with or without cause, Trustees and Co-Trustees. The Trustors may appoint or designate individuals or entities to serve as Trustee. The Trustors may appoint or designate Trustees to serve alone, to serve with both or either of them, or to serve with other persons and to serve currently or in the future. The Trustors may also prescribe the conditions and terms governing the actions, authority, and duties of the Trustees they appoint or designate. Further, the Trustors may designate a series of persons to serve as Trustees following their deaths or following the death, resignation, or inability, failure, or refusal to serve of any Trustee. There shall be no limit on the number of times the Trustors may exercise the foregoing powers. The appointments and designations shall be in writing and shall be filed with the current Trustee of the trust. All the Trustors' appointments and designations shall be revocable and amendable by them unless they provide otherwise. All the Trustors' appointments and designations shall continue to be effective after their deaths and shall take precedence over the appointments made under any other provisions of this article.

**16.2    Trustee Succession During Joint Lifetimes of Trustors.** Pursuant to the Trustors' powers to appoint Trustees, the Trustors appoint themselves as the initial Trustees under this Declaration of Trust. If either Trustor becomes unwilling or unable to serve as Co-Trustee, the other Trustor shall serve with DENNIS WASSER as Co-Trustees. If DENNIS WASSER is or becomes unwilling or unable to act, then U.S TRUST shall act as his successor as Co-Trustee. If the Trustor who is acting as Co-Trustee becomes unwilling or unable to serve as Co-Trustee, then the following, in the order nominated, shall act as successor Co-Trustee in the Trustor's place, it being the Trustors' intent that there always be two (2) Co-Trustees acting hereunder:

       **(i)**     LAWRENCE SHAPIRO; then
       **(ii)**    PAUL SHAPIRO.

References in this Declaration of Trust to U.S. TRUST shall include its successor by merger, conversion, or consolidation.

**16.3    Successor Trustee Following Death of a Trustor.**

       **(a)**    **The Surviving Spouse's Right to Appoint, Designate, and Remove Trustees of the Survivor's Trust.** Upon the death of the Deceased Spouse, the Surviving Spouse shall act as sole Trustee of the Survivor's Trust. If the Surviving Spouse is or becomes unwilling or unable to act, then DENNIS WASSER and U.S. TRUST shall act as successor Co-Trustees of the Survivor's Trust. If DENNIS WASSER is or becomes unwilling or unable to act, then the following, in the order nominated, shall act as successor Co-Trustee of the Survivor's Trust with U.S. TRUST, it being the Trustors' intent that, except when the Surviving Spouse is acting as sole

Trustee of the Survivor's Trust, there always be two (2) Co-Trustees of the Survivor's Trust acting hereunder:

    **(i)**    LAWRENCE SHAPIRO; then

    **(ii)**    PAUL SHAPIRO.

References in this Declaration of Trust to U.S. TRUST shall include its successor by merger, conversion, or consolidation. The Surviving Spouse shall have the right to exercise the power to appoint, designate, and remove Trustees of the Survivor's Trust as reserved to the Trustors under Section 16.1. The Surviving Spouse may appoint any individual (including himself or herself) or entity to serve as Trustee of the Survivor's Trust established under this Declaration of Trust, and remove that person and appoint and remove successor Trustees. The Surviving Spouse shall have no liability for the acts or omissions of any person appointed by him or her to serve as a Trustee. Further, the Surviving Spouse shall have the right to renounce the power granted him or her to appoint and remove Trustees by delivering a written renunciation to the current Trustee of the Survivor's Trust.

    **(b)**    **Successor Trustee of Marital Trust and Exemption Trust.** Upon the death of the Deceased Spouse, the Surviving Spouse and DENNIS WASSER shall serve as Co-Trustees of the Marital Trust and the Exemption Trust. If DENNIS WASSER is or becomes unwilling or unable to act, then U.S. TRUST shall act as his successor as Co-Trustee of the Exemption Trust and the Marital Trust. If the Surviving Spouse becomes unwilling or unable to serve as Co-Trustee, then the following, in the order nominated, shall act as the Surviving Spouse's successor as Co-Trustee of the Exemption Trust and the Marital Trust, it being the Trustors' intent that there always be two (2) Co-Trustees acting hereunder:

    **(i)**    LAWRENCE SHAPIRO; then

    **(ii)**    PAUL SHAPIRO.

References in this Declaration of Trust to U.S. TRUST shall include its successor by merger, conversion, or consolidation. Should all of the individuals designated to serve as successor Trustee become unable or unwilling to serve, then the Surviving Spouse, and thereafter each of the individuals designated above, in the order so designated, shall have the right to exercise the power to appoint, designate, and remove Trustees of such trust as provided for in Section 16.3(d).

    **(c)**    **Descendants' Trust.** Notwithstanding Section 16.3(b), each beneficiary of a trust created for his or her benefit under the Descendants' Trust shall commence to act as a Co-Trustee of such trust upon attaining age 25 and shall commence to act as the sole Trustee of such trust at age 30. A beneficiary of such trust shall have the right to exercise the power to appoint and designate successor Trustees of such trust (and to remove such persons) as provided for in Section 16.3(d). If the beneficiary is unable or unwilling to serve as the Trustee of his or her trust and such beneficiary does not appoint successor Trustees of the beneficiary's trust, then the provisions of Section 16.3(b) shall apply to such beneficiary's trust.

0563535.1

(d)    **Power to Appoint Trustee.**  A person entitled to exercise a power under this Section 16.3(d) shall be referred to as a "power holder." When a vacancy occurs in the office of Trustee which is not filled under Section 16.3(b), the power holder may appoint any individual or entity to serve as a Trustee of the trust in question. In addition, the power holder may remove any person so appointed. The power holder also may and appoint and remove further successor Trustees. The power holder shall have no liability for the acts or omissions of any person appointed by him or her to serve as a Trustee. Further, the power holder shall have the right to renounce the power granted him or her to appoint and remove Trustees by delivering a written renunciation to the current Trustees of the trust in question.

**16.4    Filling Vacancies.**  If a vacancy in a Trustee position is not filled as otherwise provided in this Declaration of Trust, a successor Trustee shall be appointed by a majority of the beneficiaries currently entitled to receive trust income (with the guardian of any minor beneficiary acting on his or her behalf), or if none, a majority of beneficiaries who are entitled to distribution in the discretion of the Trustee. If the beneficiaries entitled to appoint the successor trustee fail to act, the court having jurisdiction over the trust shall appoint one or more Trustees upon the application of any former Trustee or any trust beneficiary, current or contingent.

**16.5    Removal of Corporate Trustee.**  Following the death of both Trustors, a majority of the beneficiaries currently entitled to receive trust income (with the guardian or any minor beneficiary acting on his or her behalf), or if none, a majority of beneficiaries who are entitled to distribution in the discretion of the Trustee, may remove any corporate Trustee of the trust then acting and appoint a corporate Trustee or corporate Trustees to succeed the removed corporate Trustee. Any successor corporate Trustee must be qualified to do business in California and then managing assets as a trustee in excess of Five Hundred Million Dollars ($500,000,000). Notwithstanding the foregoing, no person shall have the power to exercise any right granted hereunder if the existence of such power would cause all or a portion of the Trust Estate of such trust to be a part of such person's estate for Estate Tax purposes.

**16.6    Effective Dates.**  Any and all appointments, designations, removals, or revocations affecting a Trustee position shall be made by a written instrument executed by the person entitled to make the appointment, designation, removal, or revocation. The written instrument shall be effective upon its delivery to the current Trustee of the trust affected; provided, however, that the appointment of a successor Trustee or Co-Trustee shall become effective only upon the new Trustee's written acceptance of the appointment and the delivery of this written acceptance to the person who appointed him or her, the other Trustees, or the current beneficiaries.

**16.7    No Bond.**  No bond or other security shall be required of any Trustee named in this Declaration of Trust or of any Trustee appointed in the manner provided under this Declaration of Trust unless the terms of the appointment require a bond. The foregoing provisions shall apply whether the Trustee serves alone or together with one or more other Trustees.

0563535.1

## ARTICLE 17
## APPOINTMENT OF SPECIAL TRUSTEE

**17.1   Power to Appoint Special Trustee.** The current Trustee may appoint one or more individuals or corporate Trustees to serve as a Special Trustee. A Special Trustee shall have all the rights and powers granted to the Trustee under this Declaration of Trust solely and exclusively with reference to the subject matter and duties and responsibilities specified by the persons appointing the Special Trustee, such as making discretionary distributions to certain beneficiaries (including beneficiaries who are Trustees) or managing specific trust property.

**17.2   Scope and Exclusivity of Special Trustee's Powers.** While serving, a Special Trustee shall have all the rights and powers necessary to carry out the duties and responsibilities specified with respect to the matters under the Special Trustee's authority, including, limited by the scope of those duties and responsibilities, all rights and powers granted to the Trustee under this Declaration of Trust for the administration and management of the Trust Estate. A Special Trustee also shall have all special powers granted by the persons appointing the Special Trustee. The powers granted to the Special Trustee shall not limit or restrict the powers granted to the Trustee, except that while the Special Trustee is serving, no other Trustee may exercise the powers granted to the Special Trustee with respect to the subject matter reserved exclusively to the management and discretion of the Special Trustee.

**17.3   Protection Provided Special Trustee.** Except as otherwise expressly provided by the persons appointing the Special Trustee, a Special Trustee shall be entitled to all the protection provided the Trustee under Article 18. However, the Trustee shall determine the compensation to be paid to the Special Trustee and the trust assets from which the compensation will be paid.

## ARTICLE 18
## PROTECTION PROVIDED THE TRUSTEE

The following provisions shall apply to each of the trusts established under this Declaration of Trust.

**18.1   Resignation.** Each Trustee shall have the right to resign his or her position at any time without the consent of any beneficiary or the approval of any court. A Trustee shall have the right to resign as Trustee of one or more separate trusts created under this Declaration of Trust without resigning as Trustee of all separate trusts. A Trustee may resign for any reason by delivering a written resignation signed by him or her to the person holding the power to revoke or amend the Declaration of Trust, the other currently serving Trustees, the successor Trustees, or the current income beneficiaries (or, if none, the beneficiaries). The resignation shall be effective according to its terms. But, if the resigning Trustee is the sole Trustee, the resigning Trustee shall continue to be responsible for the trust property until it is delivered to the successor Trustee and shall continue to hold title and custody to the trust assets and administer the trust assets and perform the actions that are reasonably necessary to preserve the trust property and to complete the Trustee's administration of the trust, until a successor Trustee has been appointed and has accepted the position of Trustee.

**18.2   Compensation.** As to each separate trust, the Trustee shall be entitled to pay himself or herself from the Trust Estate an amount of compensation that he or she determines in his or her absolute discretion. Compensation must, however, be reasonable in light of the size of the Trust, the services performed, and the risks undertaken by the Trustee. The Trustee is authorized to pay himself or herself compensation without first obtaining the approval of any trust beneficiaries or the court having jurisdiction over the trust.

The Trustee also is authorized to pay to the attorneys and accountants retained by the Trustee to advise him or her in the administration of the trust those amounts for fees and costs as the Trustee shall determine in his or her discretion. The Trustee is authorized to pay these fees and costs without first obtaining approval of the trust beneficiaries or the court having jurisdiction over the trust.

**18.3   Dual Compensation.** A Trustee serving as a director, officer, partner, or employee of any corporation, partnership, or other business in which the trust owns an interest shall also be entitled to receive reasonable compensation for his or her services rendered as Trustee in addition to the compensation being paid to him or her by such business. The compensation paid to the Trustee in either capacity shall not be offset against the other. A Trustee who is an investment advisor, attorney, accountant, or other professional shall not be disqualified from rendering professional services to the trust and being compensated on a reasonable basis therefore in addition to any compensation that he or she otherwise is entitled to receive as Trustee. Neither shall a firm with which a Trustee is associated as a partner, officer, or employee be disqualified from dealing with, rendering services to, or discharging duties for the trust and being compensated therefore on a reasonable basis. A Trustee is authorized to retain himself or herself or any firm with which he or she is associated to render investment, legal, accounting, or other professional services. Fees may be paid for such services without respect to such relationship and without respect to any agreement that the Trustee may have with his or her firm concerning the division of fees and commissions after complying with the requirements of Probate Code §15687, if applicable.

**18.4   Right of Indemnification and Reimbursement.** A Trustee shall be entitled to indemnification and reimbursement from the Trust Estate of which that person serves as Trustee for any expense, loss, damage, liability, costs, or claim (including, without limitation, attorney's fees and costs of litigation) incurred by the Trustee by reason of any act performed or omitted to be performed by the Trustee, acting in good faith, in the administration of the trust. The Trustee shall be deemed to have acted in good faith on behalf of the trust if the Trustee acted in a manner reasonably believed by the Trustee to be within the scope of his or her authority and in the best interest of the trust and its beneficiaries. Notwithstanding the foregoing, a Trustee shall not be indemnified or reimbursed with respect to any expense, loss, damage, or claim incurred by reason of any breaches of trust, by acts or omissions, committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interests of the beneficiaries.

**18.5   Notice to the Trustee.** Until the Trustee receives written notice of any birth, marriage, death, or other event affecting the rights of beneficiaries to payments or distributions from the trust, the Trustee shall incur no liability to any persons whose interests may have been

affected by that event for payments or distributions made by the Trustee in good faith as though the event had not occurred.

### 18.6   Confidentiality of Declaration of Trust.

Except as otherwise provided in this Declaration of Trust, the Trustee shall not disclose the contents of this Declaration of Trust, or the fact of its existence unless required to do so by law or applicable regulation, regulatory authorities, or legal process, without the Trustors' prior written consent. The Trustee may, however, disclose the terms of this Declaration of Trust where necessary to carry out his or her powers, to enforce the rights and remedies belonging to the trust, or as required by a court in its supervision of the trust. The Trustee may also disclose the contents of this Declaration of Trust to persons employed by him or her to advise or assist him or her in the administration of the trusts, including attorneys and accountants, provided these professionals agree to keep the disclosed information confidential on the same terms as provided in this section.

### 18.7   Disclosure to the Beneficiaries.

During the Trustors' lifetimes, the Trustee shall have no duty to provide any information regarding the trust to anyone other than the Trustors. After the Deceased Spouse's death, the Trustee shall have no duty to provide any information regarding the trust or subtrusts created under this Declaration of Trust to any one other than the Surviving Spouse, except as required by law. Prior to the death of the Surviving Spouse, the Trustee shall have no duty to disclose to any beneficiary other than the Surviving Spouse the existence of this trust or any information about its terms or administration, except as required by law.

### 18.8   Reports and Accounts.

The Trustors hereby waive all statutory requirements, including the requirement under Probate Code §16062(a), that the Trustee of any trust created under this Declaration of Trust render a report or account to the beneficiaries of the trust. The Trustee shall not be required to make any current reports or render any annual or other periodic accounts to any trust beneficiary or to any court, whether or not required by statute, except pursuant to the request of a beneficiary or pursuant to court order. The Trustee may take action for the approval of his or her accounts at the times and before the courts, or without court proceedings, as he or she determines in the exercise of his or her discretion. The Trustee shall pay the costs and expenses of such action, including the compensation and expenses of accountants, attorneys, and guardians, from the principal or income, or both, of the trust as he or she determines.

### 18.9   The Trustors' Right to Release Trustee.

The Trustors, acting together or the survivor of them acting alone, reserve the right to execute a release, with or without an account, approving the administration of the trust by the Trustee. A release shall discharge the Trustee from any accountability and liability to the Trustors or their estates or to any other persons interested or claiming to be interested in the trust as to all matters covered by the release or in the account, if any, with the same effect as if an account of the Trustee for the period concerned had been judicially settled and allowed in a proceeding to which these other persons (including all interested persons) were parties. No beneficiary other than the Trustors or their Executor shall have the right to question or assert any liability by the Trustee for the Trustee's acts or omissions during the Trustors' lifetimes.

0563535.1

**18.10  Right of Trustee to Secure Releases.**  As to each separate trust, the Trustee is authorized to secure from any beneficiary a full and complete release from any and all liabilities arising from the Trustee's administration of the trust and the beneficiary's written approval of any account or report of the Trustee.  The release or approval shall be binding and conclusive upon the beneficiary and upon all of the beneficiary's issue (including then unborn, unknown, and unascertained issue) and other successors in interest who may then have or later acquire any interest in the separate trust.  All written instruments to be delivered to or executed by a beneficiary may be delivered to or executed by the legally appointed conservator of any incompetent beneficiary or a parent or legal guardian of a minor beneficiary.  When so delivered or executed, the written instrument shall be binding upon the beneficiary and shall be of the same force and effect as if delivered to or executed by a beneficiary acting under no legal disability. The foregoing provisions shall apply to all reports and statements, accounts, releases, and notices, as well as documents appointing, removing, or designating Trustees.

**18.11  Consultation with Legal Counsel.**  The Trustee may retain and consult with legal counsel on any matters related to the administration of the trusts created under this Declaration of Trust or the construction or interpretation of this Declaration of Trust, and the Trustors encourage the Trustee to do so.  The Trustee may select the legal counsel to advise or represent him or her, and the Trustee is expressly authorized to pay the fees and costs of the legal counsel from the Trust Estate.  The time, place, subject matter, and content of any such consultation with legal counsel, all communication (written or oral) between the Trustee and legal counsel, and all work product of legal counsel shall be privileged and confidential and shall be absolutely protected and free from any duty or right of disclosure to any successor Trustee or any beneficiary and any duty to account.  The Trustee shall, however, include the amount of any disbursement for the legal counsel fees and costs in any report or account prepared by the Trustee for the period during which the expenses were paid.

Notwithstanding any provision to the contrary contained in this Declaration of Trust, in any statute, or under the common law of any jurisdiction to which any trust established under this Declaration of Trust may be subject, no successor Trustee shall succeed to the power held by any predecessor Trustee to assert, waive, or otherwise hold any privilege created under the statutory or decisional law of any state respecting confidential communications between the predecessor Trustee and such predecessor Trustee's attorneys, whether or not the fees of such attorneys are paid from any trust established under this Declaration of Trust.  This Section 18.11 is intended to protect the Trustee's attorney-client communications from disclosure to a successor Trustee.

**18.12  Extent of Liability.**  The Trustors do not want the Trustee to be personally liable for his or her good faith efforts in administering the Trust Estate.

      **(a)  In general.**  A Trustee shall not be personally liable to the trust or its beneficiaries, and shall be held harmless, for any loss, expense, damage, or claim incurred by the Trustee by reason of any act performed or omitted to be performed by the Trustee, acting in good faith, in the administration of the trust.  The Trustee shall be deemed to have acted in good faith on behalf of the trust if the Trustee acted in a manner reasonably believed by the Trustee to be within the scope of his or her authority and in the best interest of the trust and its beneficiaries. Further, a Trustee shall not be personally liable for obligations arising from the Trustee's

36

ownership or control of trust property or for torts committed in the course of the Trustee's administration of the trust unless the Trustee is personally at fault. Notwithstanding the foregoing, a Trustee shall be personally liable for his or her breach of trust by acts or omissions, committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interests of the beneficiaries, and as to any profit that the Trustee derives from any breach of trust.

(b)    **While trust is revocable.** During the Trustors' lifetimes, the Trustee shall follow all written directions given from time to time to him or her by the Trustors or by the person or persons to whom the Trustors delegate the right to direct the Trustee. In consenting to and carrying out those directions, the Trustee shall not be liable to any person having a vested or contingent interest in the trust for any act performed or omitted pursuant to those directions. Moreover, the Trustee may follow those directions regardless of any fiduciary obligations to which the directing party may also be subject. These provisions shall be construed consistently with Probate Code §§16001 and 16462.

(c)    **As to other Trustees.** The liability of the Trustee is further limited as follows.

(i)    **As to prior Trustees.** No successor Trustee shall be responsible or liable for any acts, omissions, or default of any prior Trustee. Unless requested in writing by a beneficiary within 60 days of the appointment of the successor Trustee, no successor Trustee shall be required or have any duty to review or investigate the actions or omissions of a prior Trustee. A successor Trustee shall not be required or have any duty or obligation to review, audit, or examine the transactions, accounts, or records of any prior Trustee, or any allocation of the Trust Estate made by any prior Trustee. No successor Trustee shall have any obligation to take any action to obtain redress for any breach of trust by any prior Trustee unless instructed by a court to do so. Each Trustee is responsible only for those assets that are actually delivered to the Trustee's custody or control.

(ii)    **As to Co-Trustees.** A Trustee shall be liable to the beneficiaries for the acts or omissions of a Co-Trustee only as provided in Probate Code §16402.

(d)    **As to Agents and investment managers.** The Trustors want the Trustee to be able to rely on the advice of professionals hired to advise him or her. Accordingly, the Trustee's liability is further limited as follows.

(i)    **As to Agents.** A Trustee shall be liable to the beneficiaries for the acts or omissions of an Agent only as provided in Probate Code §16401.

(ii)    **As to investment managers.** A Trustee shall not be liable for the acts or omissions of any investment manager, or be under an obligation to invest or otherwise manage any asset that is subject to the management of an investment manager.

(e)    **As to taxes.** The Trustors want the Trustee to be aggressive in minimizing the taxes, including estate and income taxes, imposed on the Trust Estate. Accordingly, the

0563535.1

Trustee shall not be liable for any accuracy-related penalty, such as is currently imposed under I.R.C. §6662, arising from the preparation and filing of any income tax or estate tax return.

(f)    **Liability insurance.** The Trustee may carry general public liability insurance, including but not limited to fiduciary liability insurance, and may charge the premiums to trust income or principal, or both, as a cost of administration.

# ARTICLE 19
# AUTHORITY OF THE TRUSTEE

The following provisions shall apply to each of the trusts established under this Declaration of Trust.

**19.1    Trustee Authority.** Except as otherwise expressly provided, a successor Trustee upon commencing to serve as Trustee shall immediately become vested with all the rights, titles, powers (including discretionary powers), and obligations, with like effect as if named as an initial Trustee. Where this Declaration of Trust states that the Trustee "shall" perform an act, the Trustee is required to perform that act. Where this Declaration of Trust states that the Trustee "may" do an act or Trustee is "authorized" to act, the Trustee is expressly permitted or authorized to do the act described, and his or her decision to do or not to do the act shall be made in the Trustee's sole and absolute discretion in the exercise of his or her fiduciary powers and duties.

**19.2    Trustee Discretion.** The discretionary powers granted to the Trustee under this Declaration of Trust shall be absolute. In particular, the decision of the Trustee as to the distributions to be made to beneficiaries under the distribution standards provided in this Declaration of Trust shall be conclusive on all persons.

**19.3    Trustee's Consideration of Beneficiary's Other Assets.** Except as otherwise provided in this Declaration of Trust, in exercising his or her discretion to distribute trust funds to any beneficiary, the Trustee shall be required and shall have a duty to, consider all income and assets, including other sources of income or financial support, reasonably available to the beneficiary, as are actually known to the Trustee. The Trustee shall have no duty of inquiry as to the property owned by or held for the benefit of the beneficiary. In making discretionary distributions from any trust created under this Declaration of Trust, the Trustee may rely absolutely upon a declaration executed under penalty of perjury by the beneficiary describing his or her expenses and financial needs and any other financial resources available to him or her, without further investigation. The Trustee may continue to rely upon a declaration until otherwise advised in another declaration from the beneficiary.

In making principal distributions to the Surviving Spouse from any trust held for his or her benefit the following additional rules shall apply. The Trustee shall use his or her best efforts not to make distributions of principal to the Surviving Spouse from a Trust Estate that will not be includible in the Surviving Spouse's gross estate until the principal of the Trust Estates that will be includible in the Surviving Spouse's gross estate has been substantially exhausted. It is not, however, the Trustors' intent to force sales of assets that are being used by the Surviving Spouse for his or her living requirements, such as his or her Residence or automobiles, nor to force a sale

of any assets that would result in a sale disadvantageous to the owner of such assets because of market conditions or timing. Consistent with the foregoing provisions, the Trustee is requested, but not directed, to make distributions to the Surviving Spouse from the Trust Estates held for his or her benefit, as otherwise provided in this Declaration of Trust, in the following order, until each Trust Estate has been substantially exhausted: first, from the Trust Estate of the Survivor's Trust; second, from the Trust Estates of trusts that qualified for the marital deduction in the Deceased Spouse's gross estate and which are not exempt from GST Tax; third, from the Trust Estates of trusts that qualified for the marital deduction in the Deceased Spouse's gross estate and which are exempt from GST Tax; fourth, from the Trust Estates of trusts that were not qualified for the marital deduction in the Deceased Spouse's gross estate and which are not exempt from GST Tax; and finally, from Trust Estates of trusts that were not qualified for the marital deduction in the Deceased Spouse's gross estate and are exempt from GST Tax.

**19.4    Limitation on Discretion of a Beneficiary Serving as Trustee.** Notwithstanding any other provisions of this Declaration of Trust, a Trustee (other than a Trustor) who is also a beneficiary of the trust shall not have, and shall not participate in the exercise of, the power to invade trust principal for his or her own benefit (except as necessary to provide for his or her health, education, maintenance and support in his or her accustomed manner of living) or the power to make distributions for the benefit of a person that the Trustee (including the Surviving Spouse) has a legal obligation to support.

**19.5    Power of a Trustor as a Co-Trustee to Act Individually.** If a Trustor is serving as a Co-Trustee, such Co-Trustee shall have the right and power to act on behalf of this trust alone in all matters, including but not limited to (1) the right to buy and sell trust securities and other assets, (2) the right to execute documents including trust income tax returns, and (3) the right to open, deposit and withdraw from bank savings and checking accounts, and savings and loan accounts, and money market funds, all for trust purposes. However, the power to act alone with respect to item (3) above shall apply only if all Co-Trustees have signed the account card of the financial institution or money market fund agreeing that only one signature is required.

**19.6    Voting.** While more than two Trustees are serving, the decision of the majority of the Trustees shall prevail and be binding with respect to all matters affecting the Trust Estate. If one or more Trustees are excluded or precluded from participating in making a decision with respect to a particular matter, the decision shall be made by the remaining Trustees acting by majority vote. Any act by or instrument executed by the majority of the Trustees shall constitute the action of the Trustees as if done by all Trustees. Any nonconcurring Trustee shall not be liable to any person for the action or failure to act of the other Trustees acting by majority vote.

**19.7    Delegation by One Trustee.** Each Trustee may at any time, by a signed revocable instrument, delegate to another Trustee the exercise of all or less than all of the powers conferred on a Trustee. Nonetheless, the delegating Trustee shall be liable for the proper exercise of the delegated powers by the other Trustee.

**19.8    Delegation by All Trustees.** The Trustees may delegate their powers to one or more of the Trustees in a writing signed by all of them. The writing must state the powers delegated to the particular Trustees and provide a date when the delegation will terminate

39

0563535.1

automatically if not previously terminated. Any delegation shall be revocable by any one Trustee in a writing delivered to the delegate. A Trustee acting pursuant to a delegation shall have the authority to bind the trust and third persons may rely on his or her authority to act for the trust. Any act by or instrument executed by a Trustee acting pursuant to this delegation shall constitute the action of the Trustees as if done by all Trustees.

**19.9    Delegation of Power to Expend.** The Trustees may delegate to one or more of the Trustees, for any period, the power to bind the trust in any transaction obligating the trust to expend up to or less than a certain sum of money as specified by the delegating Trustees. The Trustee to whom the power is delegated may be the sole signatory of all checks necessary to accomplish the expenditure. The Trustees may also delegate to a property management company authority to be the sole signatory of all checks written on behalf of the trust relating to real estate owned by the trust or on checks written on behalf of the trust in an amount less than the amount specified by the Trustees.

**19.10    Delegation of Investment Authority.** The Trustees may delegate to one or more Trustees or to Agents (including independent investment advisors, investment counsel or managers, banks, or trust companies) the power and authority to act for the Trustees in the investment and reinvestment of trust assets. The Trustees, acting by majority vote, may also authorize the payment of compensation for investment advisory or management services.

**19.11    Agents.** The Trustee may act under this Declaration of Trust through an Agent or attorney-in-fact acting under a power of attorney duly executed by the Trustee.

**19.12    Dealing with the Trustee.** In accordance with Probate Code §18100, if a third person dealing with the Trustee or assisting him or her in the conduct of a transaction acts in good faith and for a valuable consideration and without actual knowledge that the Trustee is exceeding the Trustee's powers or improperly exercising them, the third person is not bound to inquire whether the Trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise. That third person shall be fully protected in dealing with or assisting the Trustee just as if the Trustee has and is properly exercising the powers the Trustee purports to exercise. In addition, that person has no duty to see to the application of any money paid or property transferred to or upon the order of one or more Trustees.

**19.13    Reliance on Representations by the Trustee.** A third person dealing with the Trustee also shall be fully protected in relying on written statements of fact, certified or declared under penalty of perjury by any one or more of the persons who appear from the original or certified copy of this Declaration of Trust (or documents of appointment) to be a Trustee or successor Trustee, regarding the Trustee's authority to act under this Declaration of Trust, the calling of any meeting of the Trustees, the giving of any notice of a meeting, the action taken at a meeting, and other facts concerning the trusts established under this Declaration of Trust. Anyone may rely on a copy of this Declaration of Trust certified by a Trustee, by the Trustee's legal counsel, or by a Notary Public, to be a counterpart or true copy of this Declaration of Trust.

0563535.1

40

**19.14  Reliance on the Authority of Trustee.**  No persons or organizations employed by the Trustee or retained by the Trustee as provided in this article shall be required to oversee or supervise the activities of the Trustee or to inquire into the Trustee's powers, authority, or discretion.  Each person or organization so employed or retained may rely implicitly upon the written instructions of the Trustee with respect to the property and business of the trust, including instructions of the Trustee to deal directly with investment counsel employed by the Trustee.  In no event shall any person or organization so employed or retained be liable for any act or omission of any Trustee in which that person or organization may also have participated.

# ARTICLE 20
## POWERS OF THE TRUSTEE

Subject in all instances to his or her fiduciary duties, with regard to the entire Trust Estate and all trusts established under this Declaration of Trust, the Trustee shall have all the powers described below, all powers granted by law (including all the powers set forth in Probate Code §§16220 et seq.), and all powers reasonably necessary to carry out his or her duties as Trustee to administer, manage, protect, and invest the Trust Estate.  These powers may be exercised by the Trustee in his or her discretion, without court approval, authorization, or supervision, except as expressly required in this Declaration of Trust.

**20.1  To Accept Trust Property.**  The Trustee may accept or receive additions and contributions to the Trust Estate from either Trustor or any other person and hold the property in trust under the provisions of this Declaration of Trust.  If the Trustee receives property from another fiduciary and if the Trustee believes the action to be in the best interests of the Trust Estate, the Trustee is authorized to waive an accounting from the fiduciary, to approve his or her actions, to consent to his or her proposed actions, and to consent to his or her discharge.

**20.2  To Disclaim or Reject Property.**  The Trustee may renounce or otherwise disclaim all or any part of any interest in property passing to the trust, by gift or bequest, and any right, power, privilege, or discretion granted the Trustee under this Declaration of Trust.  The Trustee may reject any property or interest in property passing to the trust, including property that by reason of hazardous materials or substance the Trustee determines (after investigation at the expense of the trust) would be detrimental to the trust purpose.

**20.3  To Retain Property.**  The Trustee may retain trust property received at the inception of the trust or at any other time, from either Trustor or any other person until, in the judgment of the Trustee, disposition or distribution of the property should be made.  The property may be retained even though the property is unproductive, is property in which a Trustee is personally interested or in which the Trustee owns an undivided interest personally or as trustee of another trust, or there is known or later discovered to be hazardous materials or substances requiring remedial action pursuant to environmental laws.  Notwithstanding Probate Code §§16048 and 16049, the Trustee shall have no duty to dispose of any part of the trust property included in the trust at the time of its creation, or later added to the trust by either Trustor or another person, that would not be a proper investment for the Trustee to make.  The Trustee may, without liability, continue to hold that property.  The Trustee may hold trust property in bearer form so that title may pass by delivery, or in the name of any one Trustee or a nominee without

41

indication of any fiduciary capacity by the nominee. These provisions are subject to the limitations set forth in Article 8 (The Marital Trust).

**20.4    To Invest and Reinvest Trust Property.** The Trustee may invest and reinvest trust property (including income and principal) in any kind of property, whether real, personal, or mixed, including (1) real property (including leaseholds; royalty interests; interests in mines, oil and gas wells, timberlands, and other wasting assets), (2) intangible personal property (including common and preferred stock and all other kinds of securities (on margin or otherwise); investment company shares, mutual funds, index funds, common trust funds (including any common trust fund under the management of a corporate trustee) and other collective investment vehicles; interests in partnerships (whether as a general or limited partner); commodities; obligations of corporations or unincorporated associations; and patents, copyrights, trademarks, and other intangible rights), and (3) tangible personal property (including precious metals, works of art, and other collectibles). The Trustee is authorized to establish and maintain brokerage accounts, including margin accounts, for the purpose of purchasing, acquiring, possessing, pledging, hypothecating, selling and otherwise disposing of, and generally dealing in and with any of the foregoing types of investments.

**20.5    To Purchase and Sell Trust Property.** The Trustee may buy, purchase, acquire, sell, convey, dispose of, exchange, or otherwise transfer any trust property, or any interest in property, for cash or on credit, at public or private sale, with or without notice, and for the prices and upon the terms as the Trustee determines. The Trustee may grant options and rights of first refusal to trust property. The Trustee may also grant easements or dedicate real property to public use with or without consideration.

**20.6    To Manage Trust Property.** The Trustee may manage, control, divide, develop, improve, exchange, partition, change the character of, repair, or abandon trust property or any interest in trust property. The Trustee may enter into a lease for any purpose as lessor or lessee with or without the option to purchase or renew and for a term within or extending beyond the term of the trust. The Trustee may also demolish or remove buildings or other improvements on trust property.

**20.7    To Borrow Money and Encumber Trust Property.** The Trustee may borrow money for any trust purpose from any person on terms and conditions as determined by the Trustee, and obligate the trust to make repayment from trust property. The Trustors or the Trustee may loan or advance funds to the trust, and the loans or advances together with the interest charged shall be treated as a first lien on the Trust Estate until repaid. The Trustee may also encumber, mortgage, or pledge trust property for a term within or extending beyond the term of the trust in connection with the exercise of any power vested in the Trustee, or to create restrictions, easements, or other servitudes on trust property.

**20.8    To Provide Guarantees.** The Trustee may guarantee any indebtedness incurred by either Trustor, or by any entity owned directly or indirectly by either Trustor or by the trust, as the Trustors may direct.

42

0563535.1

**20.9    To Make Loans.** The Trustee may loan or advance trust property of any kind (including money) for any trust purpose to any person on terms and conditions as determined by the Trustee, subject to limitations stated in this Declaration of Trust. The Trustee may make loans out of trust property to the beneficiary on terms and conditions that the Trustee determines are fair and reasonable under the circumstances, and guarantee loans to the beneficiary by encumbrances on trust property.

**20.10    To Purchase Liability Insurance.** The Trustee may purchase and pay the premiums on policies to insure the property of the Trust Estate against damage or loss and to insure the Trustee against liability with respect to third persons. The premiums shall be a proper expense to be charged against the trust.

**20.11    To Purchase and Administer Life Insurance.** The Trustee may purchase, own, and pay the premiums on life insurance on the life of either Trustor, and collect the proceeds of life insurance policies payable to the trust. The Trustee shall have the power to compromise, arbitrate, or otherwise adjust any claim, dispute, or controversy arising under any policy payable to the trust and shall have authority to initiate, defend, settle, and compromise any legal proceeding necessary in the Trustee's discretion to collect the proceeds of any policy. The Trustee's receipt to any insurer shall be a sufficient release of the insurer. The insurer shall not be under any duty to inquire concerning the Trustee's application of the policy proceeds.

**20.12    To Pay, Contest and Settle Claims.** The Trustee may pay or contest any claim; settle a claim by or against the trust by compromise, arbitration, or otherwise; and release, in whole or in part, any claim belonging to the trust.

**20.13    To Litigate.** In accordance with his or her duties to enforce claims and defend actions as set forth in Probate Code §§16010 and 16011, the Trustee may prosecute or defend actions, claims, or proceedings for the protection of the Trust Estate and the Trustee in the performance of his or her duties.

**20.14    To Make Allocations Between Principal and Income.** Subject to any contrary provision in this Declaration of Trust, from and after the Deceased Spouse's death, the California Uniform Principal and Income Act in effect from time to time ("UPAIA") shall govern matters concerning principal and income. If the UPAIA contains no provision concerning a particular item, the Trustee shall determine what is principal or income and apportion and allocate, in the Trustee's discretion, receipts and expenses between these accounts. Income accrued or unpaid on trust property when received into any trust shall be treated as any other income. All of the Trustee's discretionary powers under this Section 20.14 are subject to the Trustee's duties to treat equitably both the income beneficiaries and the remainder beneficiaries of any trust. In this connection, by way of example only, the Trustee may establish reasonable reserves for depreciation or amortization of appropriate assets. Notwithstanding the foregoing, all required minimum distributions from an Employee Benefit Plan shall be treated as income.

**20.15    To Hire and Employ Persons.** The Trustee may hire and employ persons (including individuals, corporations, partnerships, associations and other companies), including accountants, attorneys, auditors, investment advisers, or other Agents or experts, even if they are

43

associated or affiliated with a Trustee, to advise or assist the Trustee in the performance of his or her duties and obligations. The Trustee may not delegate either the administration of the trust or acts that are not delegable except as expressly provided in this Declaration of Trust.

**20.16    To Maintain Custody.** The Trustee may keep any or all of the trust property at any place in California or elsewhere, within the United States or abroad, or with a depository or custodian at those places. If no bank or trust company is acting as sole or a Co-Trustee hereunder, the Trustee is authorized to appoint a bank or trust company as custodian for the securities and any other trust assets. Any appointment shall terminate when a bank or trust company begins to serve as sole or as a Co-Trustee under this Declaration of Trust. The custodian shall keep the deposited property; collect and receive the income and principal; and hold, invest, disburse, or otherwise dispose of the property or its proceeds (specifically including selling and purchasing securities and delivering securities sold and receiving securities purchased) upon the order of the Trustee. The custodian shall not be liable to any person interested in the trust for any action taken pursuant to the order or instructions of the Trustee or his or her authorized Agents.

**20.17    To Execute and Deliver Documents.** The Trustee may execute and deliver all documents and instruments (including checks withdrawing or disbursing trust funds, stock powers, deeds and other conveyances, receipts, releases, contracts, and other agreements and transfer documents) which are needed to accomplish or facilitate the exercise of the powers vested in the Trustee, and to disclose the provisions of this Declaration of Trust whenever in the Trustee's discretion disclosure is appropriate.

**20.18    Other Powers.**

(a)    The Trustee may invest in obligations of the United States Government as authorized in Probate Code §16224.

(b)    The Trustee may deposit trust funds at reasonable interest in any of the accounts listed in Probate Code §16225, whether or not the account is insured by a government agency or collateralized. The accounts may be maintained in the name of any one of the Trustees or in the name of a nominee.

(c)    The Trustee may make repairs, alterations, and improvements, and perform the other acts affecting trust property as authorized in Probate Code §16229.

(d)    The Trustee may develop land in the ways authorized in Probate Code §16230.

(e)    The Trustee may enter into leases and other arrangements regarding minerals as authorized in Probate Code §16232.

(f)    The Trustee may grant or take options as authorized in Probate Code §16233.

0563535.1

(g)    The Trustee may exercise the powers granted in Probate Code §16234 (voting rights), Probate Code §16235 (payment of calls and assessments), Probate Code §16236 (stock subscriptions and conversions), and Probate Code §16237 (consent to change in form of business and participation in voting trusts).

(h)    The Trustee may hold securities as authorized in Probate Code §16238, and deposit securities in a securities depository as authorized in Probate Code §16239.

**20.19  S Corporation Stock Provisions**.  The following provisions shall apply to any subtrust or share of this Trust containing shares of stock ("S Stock") of a corporation ("S Corporation") for which an election under Subchapter "S" of the Internal Revenue Code, as amended, is in effect or contemplated.

(a)    **Division**.  The Trustee shall have discretion at any time to divide such subtrust or share (the "original trust") into two or more separate sub-shares (the "sub-shares"), each of which shall be a separate trust having the same terms as the original trust, except as otherwise provided below.

(b)    **Qualification**.  In order to continue or cause qualification of a corporation under Subchapter "S", the Trustee shall have discretion in making such division to allocate S Stock to one or more sub-shares (the "QSST sub-shares") and to allocate other assets to the other one or more sub-shares (the "Non-QSST sub-shares").

(c)    **Elections**.  If the Trustee has allocated S Stock to a QSST sub-share, then the Trustee shall have discretion to make an election as a qualified Subchapter S Trust under I.R.C. §1361(d) (herein the "QSST Election"), or as an Electing Small Business Trust under I.R.C. §1361(e).  In the case of either such election, the Trustee shall have the power to modify the provisions of such affected trust share to comply with the requirements of such election.  In the case of a QSST Election, then so long as S Stock is held in the QSST sub-share, the following shall apply:

(i)    During the life of the beneficiary of the QSST sub-share, he or she shall be the only income beneficiary of that QSST sub-share.

(ii)    Any corpus distributed during the life of the current income beneficiary may be distributed only to such beneficiary.  The Trustee shall have discretion to make principal distributions to the beneficiary if the Trustee determines that such distributions are necessary for the beneficiary to satisfy any income tax liability with respect to income in connection with any S Stock not sufficiently provided for in current cash distributions for the corporation.

(iii)    The income interest of the current income beneficiary in the QSST sub-share shall terminate on the earlier of such beneficiary's death or the termination of the QSST sub-share.

(iv)    Upon the termination of the QSST sub-share during the life of the current income beneficiary, the QSST sub-share shall distribute all of its assets to such beneficiary.

(d)    **Election and Failure of a Trust to Qualify as a QSST.**  It is the Trustors' intention that each beneficiary of a QSST subshare (including a beneficiary's guardian or legal representative) shall make a QSST Election with respect thereto.  If any beneficiary of a QSST sub-share fails to make the QSST Election within a reasonable time following a request by the Trustee or an S Corporation that the QSST Election be made, or if a trust that owns S Stock fails or ceases to qualify as a QSST, the Trustee shall have the sole and absolute discretion to reallocate assets among the trusts created pursuant to this instrument, based on the then fair market value of the assets, in a manner which will enable the S Corporation to retain its status as a S Corporation. The Trustee shall not be liable to any beneficiary hereof or to any other person as a result of the exercise of the Trustee's discretion hereunder.  Furthermore, the Trustee shall not be liable to any beneficiary hereof, to any corporation (including an officer, director or shareholder thereof) or to any other person, if for any reason a corporation loses its status as an S Corporation. Nothing contained in this Paragraph shall in any way be construed to limit the Trustee's power to sell the S Stock owned by any trust or liquidate an S Corporation pursuant to the powers otherwise granted to the Trustee herein.

(e)    **Powers Regarding S Stock.**  In addition to other powers herein granted, the Trustee of a QSST sub-share shall have the power to vote to liquidate any corporation, in whole or in part; to vote its interest in any corporation in a manner which will cause the corporation to make distributions or loans for any purpose and upon any terms as the Trustee of the QSST sub-share shall determine so long as there is adequate security and a fair return to the QSST sub-share; to make, join in, or consent to any election or consent under Subchapter S of the Internal Revenue Code and/or to hold stock in a corporation with respect to which a Subchapter S election is in effect, provided, however that the Trustee shall in no way be required to make, join in, or consent to any such election or consent and shall not be required to administer or distribute any QSST sub-share in a manner which will enable such trust to qualify as a shareholder of an S Corporation, it being Trustors' intention that the Trustee shall have the power to make all discretionary distributions with respect to any QSST sub-share without regard to whether the making of or failure to make any such distribution will cause a QSST sub-share to fail to qualify as a shareholder of an S Corporation; and to enter into any agreement with such corporation or any of its shareholders whereby minimum dividends are guaranteed.  If the Trustee holds as an asset of any separate trust established hereunder the common stock of a corporation for which an election under I.R.C. §1362(a) is either in effect or is in the process of becoming effective, the Trustee shall inform the beneficiary of that trust, or each distributee upon termination of the trust, or any and all information received from such corporation or the other shareholders of such corporation concerning the need of the beneficiary or distributee to make any election or consent to any election to maintain the status, or to pursue the election process, of the S Corporation. The Trustee shall assist said corporation and other shareholders in facilitating any such election or consent by presenting to the beneficiary any documents for the beneficiary's signature to carry out these purposes.

0563535.1

**20.20  Shares in a Professional Corporation**.  Notwithstanding any other provisions contained herein to the contrary, in the event that any trust created herein shall hold any interest in shares of the capital stock of a professional corporation ("the Shares"), as defined in the California Corporations Code §13401(b), or successor section thereto, then the following provisions shall apply with respect to the Shares:

(a)    So long as the Trustee then serving shall be a licensed person, as that term is defined in California Corporations Code § 13401(d), or successor section thereto, with respect to the professional corporation and with respect to the Shares, such Trustee shall have exclusive control and shall be the sole Trustee who shall exercise any Trustee power set forth herein; provided, however, that any Trustee then serving shall have the power to dispose of, sell or otherwise transfer the Shares pursuant to Section 20.20(c).

(b)    Any beneficiary other than such licensed person shall have only a beneficial interest in the proceeds to be received from the sale or other disposition of the Shares and shall have no equitable title to the Shares.

(c)    At such time as no Trustee then serving shall be a licensed person with respect to the professional corporation, the Trustee shall take all steps necessary to sell or otherwise transfer the Shares, either to the professional corporation or to another licensed person, in order to maintain the corporation in compliance with the requirements of California Corporations Code §13401(b), or successor section thereto.

**20.21  Powers in a Closely Held Business**.  The Trustee shall have the power to continue to hold any or all of the issued and outstanding shares of any business making up a part of the Trust Estate, or of any successor thereto, and the power to continue to hold a controlling interest in any other business enterprise which may hereafter become part of the Trust Estate, whether operated in the form of a corporation, partnership, limited liability company or a sole proprietorship. Each such corporation, partnership, limited liability company or sole proprietorship is hereinafter referred to as a "Business." In this regard, the Trustee shall have the following powers and authority in addition to the powers conferred by law, and in addition to the ones contained in this Article 20, the applicability of which to each such Business is hereby confirmed without limitation by reason of specification, and all of which may be exercised with respect to each such Business:

(a)    To retain and continue to operate the Business for such period as the Trustee may deem advisable.

(b)    To control, direct and manage the Business. In this connection, the Trustee, in the Trustee's sole discretion, shall determine the manner and extent of the Trustee's active participation in the operation of the Business, and the Trustee may delegate all or any part of the Trustee's powers to supervise and operate the Business to such person or persons as the Trustee may select, including any associate, partner, member, officer or employee of the Business.

(c)    To hire and discharge officers and employees, fix their compensation and define their duties; and similarly to employ, compensate and discharge Agents, attorneys, consultants, accountants, and such other representatives as the Trustee may deem appropriate;

including the right to employ any beneficiary (or individual Trustee) in any of the foregoing capacities.

(d)    To invest other trust funds in such Business; to pledge other assets of the Trust Estate as security for loans made to such Business; and to fund loans from the Trust Estate to such Business. To borrow from any bank or other lending institution, including any corporate Trustee acting hereunder, on competitive terms.

(e)    To organize a corporation under the laws of this or any other state or country and to transfer thereto all or any part of the Business or other property held in trust, and to receive in exchange therefor such stocks, bonds and other securities as the Trustee may deem advisable.

(f)    To take any action required to convert any corporation into a partnership, limited liability company, limited liability partnership or sole proprietorship, and vice-versa.

(g)    To treat the Business as an entity separate from the trust or trusts established under this Declaration of Trust.   In its accounting to any beneficiaries, the Trustee shall only be required to report the earnings and conditions of the Business in accordance with standard corporate accounting procedures.

(h)    To retain in the Business such amount of the net earnings for working capital and other purposes of the Business as the Trustee may deem advisable in conformity with sound business practice.

(i)    To purchase, process and sell merchandise of every kind and description; and to purchase and sell machinery and equipment, furniture and fixtures and supplies of all kinds.

(j)    To sell or liquidate all or any part of the Business at such time as upon such terms and conditions (including credit) as the Trustee may determine. The Trustee is specifically authorized and empowered to make such sale to any partner, officer or employee of the Business (or to any individual Trustee) or to any beneficiary hereunder.

(k)    To exercise any of the rights and powers herein conferred in conjunction with another or others.

(l)    To diminish, enlarge or change the scope or nature of the Business.

It is recognized that certain risks are inherent in the operation of each such Business. Accordingly, the Trustee shall be empowered to make decisions of a "business judgment rule" nature in contrast to the prudency standard imposed on fiduciaries under the Probate Code. The Trustee shall not be held liable for any loss resulting from the retention and operation of any such Business unless such loss shall result directly from the Trustee's bad faith or willful misconduct. In determining any question of liability for losses, it should be considered that the Trustee is engaging in a speculative enterprise as expressly authorized in this Declaration of Trust.

If any such Business shall be incorporated, then all liabilities rising therefrom shall be satisfied first from the Business itself and second out of the Trust Estate if it is liable therefore, and in no event shall any such liability be enforced against the Trustee personally. If the Trustee shall be held personally liable, then the Trustee shall be entitled to indemnity first from such Business and second from the Trust Estate.

**20.22    Limitation on Use of Employee Benefit Plans.** Notwithstanding any other provisions of this Declaration of Trust or of law, no benefits or other assets payable to the Trustee or to any trust created under this Declaration of Trust under any Employee Benefit Plan shall be distributed to or used for the benefit of (i) any Charitable Organization, (ii) any other non-individual beneficiary, (iii) the estate of either Trustor, or (iv) to pay either Trustor's debts or expenses of estate administration.

**20.23    Assets from Employee Benefit Plans.** The Trustors desire (precatory not mandatory) that the Trustee take distributions from an Employee Benefit Plan over the maximum duration allowable under applicable law in order to obtain the maximum income tax deferral on the assets in the Employee Benefit Plan.

## ARTICLE 21
## SPECIAL DISCRETIONARY POWERS OF THE TRUSTEE

The following provisions shall apply to each of the trusts established under this Declaration of Trust.

**21.1    To Deal with the Trustors' Estates.** The Trustee may loan money to and borrow money from, sell property to and buy property from, exchange property with, and otherwise deal with, on reasonable, arm's-length terms (including adequate security, fair market prices, and market rates of interest), the Trustors' estates or the trustees of other trusts created by the Trustors, for the purpose of providing liquidity to the estates or trusts or for any other purpose. The Trustee shall not be obligated to make any such loans or purchases.

**21.2    To Make Payments and Distributions.** Except as to income payable to the Surviving Spouse from the Marital Trust, the Trustee shall have the discretion to make any payments or transfers of income or principal or other sums distributable to a beneficiary in any one or more of the following ways. The Trustee shall not be required to supervise or inquire into the application of any funds so paid or applied, and the receipt of the payee shall be full acquittance of the Trustee. The Trustee may withhold from distribution all or any part of any trust property, so long as the Trustee, exercising its discretion, determines that such property may be subject to conflicting claims, tax deficiencies, or liabilities (contingent or otherwise) properly incurred in the administration of the trust.

(a)    By payment directly to the beneficiary or by deposit in any bank or similar account designated by the beneficiary even if the beneficiary is a minor or under a legal disability, without the intervention of a custodian, guardian, or conservator. Payments may be made directly to minor beneficiaries who, in the Trustee's judgment, have attained sufficient age and discretion to manage their own funds.

**(b)** . By payment to the legally appointed guardian or conservator of the beneficiary's person or estate or by payment for the benefit of the beneficiary to any person with whom the beneficiary resides or to any person who has custody of the beneficiary.

**(c)** If the beneficiary entitled to distribution is a minor, by transferring the trust property to a custodian for the beneficiary under the California Uniform Transfers to Minors Act, Probate Code §3900 et seq., or a similar law of any other state in which the beneficiary or custodian resides. The custodian shall be named by the Trustee, and may, but need not be, the beneficiary's parent or legal guardian or person already serving as custodian for other property. The Trustee shall provide that the trust property shall be held under the custodianship until the minor reaches age 25 or the maximum age then allowed under the applicable Uniform Transfers to Minors Act. Alternatively, the Trustee may deposit the payment for the beneficiary in a savings or similar account in the minor's name payable to the minor when he or she reaches age 18, or the Trustee may distribute the share to the Trustee of any other trust maintained for the minor, provided no other person will become entitled to any interest in the funds, and all the accumulated income and principal for the funds will be distributed to the minor when he or she reaches age 18 or, upon the minor's death, to his or her estate.

**(d)** By payment to any person or organization furnishing health care, education, maintenance, or support of the beneficiary.

**(e)** By making expenditures directly for the benefit of the beneficiary or for the reasonable health, education, maintenance and support of persons whom the beneficiary has a legal obligation to support.

**(f)** By purchasing an annuity contract or other property for the benefit of a beneficiary entitled to receive a distribution.

**21.3    To Sell Trust Assets.** The Trustee may sell trust assets to obtain cash with which to pay the Trustors' debts, income taxes, Estate Taxes, expenses of administration, and other liabilities of the trust, or to satisfy pecuniary gifts provided for under this Declaration of Trust. The Trustee's selection of assets to be sold for these purposes, and the tax effects of that selection, shall not be subject to question by any beneficiary. Property, assets, or funds otherwise excludable from a Trustor's gross estate for federal estate tax purposes shall not be used to make any of these payments.

**21.4    To Postpone Distributions.** Notwithstanding other provisions of this Declaration of Trust, the Trustee shall have the power to postpone the distribution of any fractional portion or part of the principal of any Trust Estate or of an entire Trust Estate of any trust created under this Declaration of Trust for any person other than either Trustor if the Trustee determines that there is a compelling reason to postpone the distribution. Compelling reasons shall include, but are not limited to, a serious disability, drug addiction or dependency, a pending divorce, a potential financial difficulty, pending or threatened litigation, a serious tax disadvantage, or similar substantial cause affecting the beneficiary who otherwise would be entitled to the distribution. In that event, the distribution from or termination of any trust may be postponed, and any postponement may be continued from time to time, up to and including the entire lifetime of the

beneficiary. During the postponement, the retained portion or part of the Trust Estate shall be administered under the same terms as applied immediately prior to the postponement.

**21.5    To Determine Values and Allocate Property.** The Trustee, in his or her discretion, shall determine the valuations of trust property for purposes of divisions, allocations, and distributions, and those valuations, reasonably determined, shall be final and binding on all beneficiaries and other persons having an interest in the trust. The Trustee may adjust any valuations retroactively if a different valuation is finally determined for federal estate tax purposes. The Trustee is authorized to effect the division, allocation, or distribution of trust property in divided or undivided interests, in cash or in kind or partly in both, as the Trustee shall determine, and to sell any property in connection with the division, allocation, or distribution if the Trustee deems that action necessary or appropriate. A distribution in kind may be made pro rata or non-pro rata, and a beneficiary may receive all or a portion of any asset as part of a distribution or allocation in kind. The Trustee may allocate or distribute property (or the right to receive property) which is subject to estate tax and federal income tax as income in respect of a decedent ("IRD") to any one or more of the trusts created under this Declaration of Trust or the beneficiaries of any trust; in such case, other trust assets shall be used to equalize any disproportionate allocation or distribution of items of IRD to any one or more trusts or beneficiaries. In making such divisions, allocations, and distributions, the Trustee is not required to consider the income tax bases of such assets or the potential income tax consequences to the beneficiaries receiving such assets.

**21.6    To Make QTIP Election.** The Trustee is authorized to make a full or partial "qualified terminable interest property" ("QTIP") election under I.R.C. §2056(b)(7) with respect to property to be administered under the provisions of the Marital Trust for the purpose of treating such property as qualified terminable interest property for federal estate tax purposes and obtaining a marital deduction in the Deceased Spouse's estate. If a QTIP election is made as to less than all of the property to be administered under the provisions of the Marital Trust, the specific portion subject to the QTIP election shall be expressed as a fraction or percentage of the Marital Trust and may be defined by means of a formula. The Trustee shall divide the property into at least two trusts, with one or more separate trusts holding the portion with respect to which the QTIP election has been made and the other separate trusts holding the portion with respect to which a QTIP election has not been made. The Trustors intend that the specific portion made subject to the election shall qualify for the federal estate tax marital deduction in the Deceased Spouse's estate.

**21.7    To Retain or Purchase Unproductive or Under-productive Property.** The Trustee may retain, purchase, or otherwise acquire property that is unproductive or under-productive of current income. Because of the substantial potential for appreciation presented by unproductive assets such as unimproved real estate and growth stocks, the Trustors want the Trustee to have broad discretion to acquire those assets. The Trustee shall have a duty to make the trust property productive, but property may be made productive by appreciation in value as well as by the production of income. The Trustee may acquire and retain assets for appreciation as part of a portfolio that produces a reasonable level of current income. These provisions are subject to the limitations set forth in Article 8 (The Marital Trust) .

0563535.1

51

**21.8    To Invest Trust Assets Together.** Each of the trusts and trust shares created under this Declaration of Trust shall be a separate trust for trust, accounting, tax, and all other purposes. The Trustee shall keep an account for each trust and may, but shall not be required to, segregate trust assets. Rather, the Trustee may invest together the property of the separate trusts, allotting to each separate trust its proportionate undivided interest in the collective fund. The undivided interest always shall be equal to that trust's proportionate contribution to the mingled assets.

**21.9    To Consolidate Trusts.** If a trust is to be established or exists under this Declaration of Trust for a beneficiary for whom another trust has been established under this Declaration of Trust, the Trustee may allocate the property for the one trust to the other trust. Similarly, if either Trustor has established a trust for a beneficiary for whom a trust is to be established or exists under this Declaration of Trust, and the dispositive provisions of that trust are substantially the same as the dispositive provisions of the trust to be established or existing under this Declaration of Trust, the Trustee may transfer the property for the trust to be established or existing under this Declaration of Trust to the Trustee of the other trust, to be held on the terms of that other trust. Further, where the dispositive provisions of each trust or trust share are substantially similar, the Trustee shall have the discretion to combine any trusts or trust shares into one trust because of changed circumstances, litigation among beneficiaries, administrative difficulties, or other reasons suggesting a need for such a combination. A combination must not materially impair the interests of any beneficiaries. Trusts may be combined or consolidated whether created inter vivos or by will, by the same or different trust instruments, by the same or different Trustors, whether the Trustee is the same, and regardless of where the trusts were created or administered. When combining trusts, however, the Trustee shall only combine GST Exempt Trusts with other GST Exempt Trusts.

**21.10    To Divide Trusts.** With respect to all trusts established under this Declaration of Trust, the Trustee shall have the discretionary power, exercisable without need of court approval, to divide the trust into one or more separate trusts for any purpose, including, without limitation, any of the following purposes.

**(a)**    To create one or more separate trusts to hold the qualified and nonqualified portions of any trust where an election has been properly made to qualify a portion but not all of the trust for the federal estate tax marital deduction.

**(b)**    To create one or more separate trusts that qualify as a qualified S corporation shareholder or as any other type of special trust provided for under the I.R.C.

**(c)**    To create one or more separate trusts with assets completely exempt from any application of any Generation-Skipping Transfer Tax. If the Trustee exercises the election provided by I.R.C. §2652(a)(3) as to any trust, the Trustee is authorized in his or her discretion to hold the property of the trust in two separate fractional share trusts, one in an amount equal to the Deceased Spouse's GST Exemption allocated to the trust and one in an amount equal to the balance of the property of the trust.

0563535.1

EXHIBIT B

(d)    To create one or more separate trusts to accomplish other proper tax planning purposes.

(e)    To create a separate trust as to any share or portion of a trust disclaimed by a beneficiary, and to sever the disclaimed portion to be administered as a separate trust.

(f)    To create a separate trust for each current income beneficiary of a trust or trust share, and to divide any trust along family lines to be administered as separate trusts.

(g)    To create one or more separate trusts because of changed circumstances, litigation among beneficiaries, administrative difficulties, or other reasons suggesting a need for a division.

The allocation of property between or among separate trusts created from a single trust or trust share may be unequal in amount and in the type of assets, and the division may be non-pro rata. The fair market values of the trust property at the date or dates of allocation shall be used in making the allocations. All trusts so established shall be designated and named by the Trustee and the property allocated to the divided trusts shall be held and administered under the same terms and provisions as would have applied to the undivided trust or trust share. With regard to planning for the marital deduction, the QTIP election, the S corporation election, the GST Tax inclusion ratio, the Reverse QTIP Election, or other tax purposes, this power to divide trusts shall be exercised in a manner that complies with the I.R.C. and applicable Treasury regulations.

**21.11   To Terminate Trusts.** The Trustors recognize that circumstances may change so that continuation of a trust provided for in this Declaration of Trust may not be in the best interests of its income beneficiary, taking into account all relevant factors, including but not limited to the costs of administration and tax consequences. Accordingly, after the death of the Surviving Spouse, if the Trustee determines that the size of a trust that has a fair market value less than One Hundred Thousand Dollars ($100,000) does not warrant the cost of continuing that trust or that continued administration of any trust would be impractical for any reason, the Trustee, without further responsibility or liability, may transfer that trust property outright to the living beneficiaries on an actuarial basis.

The existence of spendthrift or similar protective provisions in this Declaration of Trust shall not make this section inapplicable. A Trustee may not terminate a trust under this section if the Trustee is a beneficiary of the trust or has a duty of support for the beneficiary of the trust. Furthermore, the foregoing provisions of this Section 21.11 shall not apply to any QTIP trust, the Exemption Trust or any trust created under this Declaration of Trust that is initially funded with Two Hundred Thousand Dollars ($200,000) or less.

Notwithstanding the foregoing, any trust created under this Declaration of Trust may be terminated in accordance with Probate Code §15408(b).

**21.12   To Hold Personal Articles in Trust.** If the Trustee of any trust receives furniture or furnishings, household items, clothing and other personal effects, or vehicles or accessories to vehicles, the Trustee may distribute that property to the beneficiary or beneficiaries of the trust, at

the times and in the manner the Trustee, in his or her discretion, determines to be proper. In addition, the Trustee may allow the current beneficiaries to use this property. Neither the Trustee nor any beneficiary who uses this property shall be liable to other beneficiaries for permitting the use of this property or for the loss or damage of this property.

## ARTICLE 22
## SPECIAL PROVISIONS RELATING TO LIFE INSURANCE POLICIES

The following provisions shall apply to the administration of any life insurance policies purchased by, made payable to, transferred to, or held in the Trust Estate of any trust created under this Declaration of Trust.

**22.1    Designation of Trust as Beneficiary.** The Trustors may from time to time designate the trust as beneficiary of the life insurance policies. The proceeds of these policies, when received, shall be added to the Trust Estate and held, in trust, upon the terms of this Declaration of Trust.

**22.2    Payment of Premiums.** The Trustee shall have no obligation to pay any premiums, assessments, charges, or any other money that may be payable with respect to any life insurance policies or to determine whether premiums or other money have been paid. The Trustee shall have no obligation to keep or maintain life insurance policies as binding contracts of insurance. The sole obligation of the Trustee with respect to the policies shall be to receive and administer any proceeds and other money actually paid under the policies, as provided in this Declaration of Trust.

If at any time during a Trustor's lifetime, the Trustee receives actual notice that the Trustor/insured has failed to make adequate provision for the payment of premiums due on one or more life insurance policies owned by the trust, the Trustee shall notify the Trustor/insured in writing of the amount necessary to pay the premiums. If the Trustor/insured or any other person fails to advance sufficient funds to pay the premiums, the Trustee is authorized to take any action with respect to the policies that he or she determines to be necessary or advisable, including receiving from the insurers or any financial institution advances or loans on account of the policies that may be available to maintain the policies. The Trustee may also determine to allow the policies to lapse.

**22.3    Receipt of Proceeds.** Upon receiving proof of the death of the insured or that life insurance policy proceeds have become payable to the trust, the Trustee shall receive the proceeds and any other amounts due under the policies. The receipt by the Trustee to the insurer shall be a full discharge of the insurer, and the insurer shall not be required to see to the application of the policy proceeds. Upon receipt, the proceeds shall become principal of the Trust Estate, except that the interest paid by the insurer shall become income.

**22.4    Collection of Proceeds.** The Trustee shall use reasonable efforts to collect all amounts due under the policies, and may exercise any settlement options under the policies. The Trustee shall have full power and authority to compromise, arbitrate, or otherwise adjust any claims, dispute, or controversy arising under the policies. The Trustee shall have no obligation to

take any action to collect any policy proceeds, or to defend any action relating to any policy, unless and until the Trustee has been indemnified in the amount and manner that the Trustee may require against all liability, cost, or expense the Trustee may incur in taking the actions.

**22.5    Rights Retained by Owner of Policies.**  Without the consent of the Trustee, the named owner of the life insurance policies may sell, assign, or hypothecate the policies, or any of them; may exercise any option or privilege granted by any policy; may borrow any sum in accordance with the provisions of any policy; and may receive all payments, dividends, surrender values, benefits, or privileges of any kind that may be associated with the policies during the insured's lifetime. The Trustee may exercise these same rights with respect to any life insurance policies owned by the trust.

**22.6    Powers of Trustee Over Life Insurance Policies.**  Except as otherwise expressly provided above in this article, the Trustee shall have the following powers with respect to life insurance policies:

(a)    To acquire in any trust, by purchase, bequest, gift, or otherwise, one or more policies insuring the life, health, or income of a Trustor, any beneficiary of the trust or any person in whom any beneficiary has an insurable interest.

(b)    To retain each policy as a part of the Trust Estate of that trust, provided, however, that so long as any policy constitutes a part of the Trust Estate of the trust, the benefits under the policy shall be payable to the trust.

(c)    To divide or otherwise sever any policy into two or more policies insuring any insured of any such original policy.

(d)    To sell, assign (absolutely or as collateral), pledge, or hypothecate each policy.

(e)    To convert each policy into, or exchange such policy for, an extended term coverage contract, supplementary contract, fully or reduced paid up contract, or into any other form of insurance or annuity on the life of the insured or any other person described in subsection (a) above.

(f)    To pay premiums on each policy as they become due, and to prepay for any reasonable period any premiums that may reasonably be expected to become due on the policy.

(g)    To receive dividends or distributive shares of surplus in cash, or to apply the same to the payment of premiums or the purchase of additional insurance, including term or paid up insurance, or to permit the same to remain on deposit at interest, and to receive such interest or permit it to accumulate.

(h)    To receive from the insurer or from any other lender advances or loans on account of each policy that are available.

55

(i)    To receive all or part of any disability benefits, medical payments, cash surrender values, proceeds of matured endowments, and other lifetime policy benefits, by loan, withdrawal or otherwise.

(j)    To elect the death benefit option under any policy held hereunder which offers a choice among death benefit options, and to change such election from time to time, as provided in such policy.

(k)    To direct the manner in which the policy account of any variable life insurance policy held hereunder shall be allocated among the various investment options available from time to time under such policy, and to change such allocation from time to time, as provided in such policy.

(l)    To exercise any and all options, elections, rights, powers, and privileges granted in each policy, including, but not limited to, the right to obtain additional insurance coverage on the life of any other person, pursuant to any insurability rider allowing such acquisition, if the Trustee shall deem such acquisition to be in the best interest of the Trust beneficiaries, taking into account such considerations as the Trustee shall deem relevant in his or her discretion.

(m)    To exercise any and all options, elections, rights, powers, and privileges granted in each policy (or granted to policy owners by practice of the insurer) with respect to the acquisition, retention, disposition, and maintenance in force of each policy and all incidents of ownership in each policy that could be exercised by persons owning similar policies in their own right.

## ARTICLE 23
## SPECIAL PROVISIONS FOR INVESTMENT COUNSEL

The Trustee may employ investment counsel to serve in an advisory capacity to the Trustee or employ discretionary investment counsel to manage with full discretion the investment of all or any part of the Trust Estate. The provisions of this article and Probate Code §16052 shall apply to the employment of investment counsel.

23.1    **Reliance on Discretionary Investment Counsel.**  The Trustee shall be entitled to rely on discretionary investment counsel to make investment decisions and to initiate all steps or transactions relating to the investment of the Trust Estate. The Trustee shall have no duty to provide investment advice while discretionary investment counsel is serving.

23.2    **Authority of Investment Counsel.**  Investment counsel shall have the authority to issue instructions directly to brokers, dealers, custodians, and underwriters designated by the Trustee or, with the permission of the Trustee, by investment counsel. Neither the Trustee nor investment counsel shall be liable or responsible for any loss incurred because of the acts or omissions of any broker, dealer, custodian, or underwriter. The trust and its beneficiaries shall look to the broker, dealer, custodian, or underwriter for compensation for any loss.

0563535.1

56

**23.3    Compliance with Directions of Discretionary Investment Counsel.** The Trustee shall follow and comply with any instructions or directions of discretionary investment counsel with respect to investments of the trust. Those instructions or directions may, but need not, include the minimum or maximum prices at which trust assets shall be sold or purchased, the time at which the assets shall be sold or purchased, and any other details of each transaction of sale or purchase. To the extent that any of the matters referred to in the preceding sentence are not included in instructions from discretionary investment counsel, the Trustee shall take action with respect to those matters as he or she would take had discretionary investment counsel not been employed or retained. The Trustee is authorized to accept and act upon telephonic, facsimile, or electronic mail instructions (thereafter to be confirmed in writing) of discretionary investment counsel that he or she believes to be genuine. The Trustee shall not be liable or responsible for any act or omission of discretionary investment counsel and shall have no duty to inquire into the propriety of the instructions from discretionary investment counsel. Any and all action taken by the Trustee pursuant to instructions or directions from discretionary investment counsel shall be incontestable by any beneficiary or other person interested in the trust. The Trustee shall have no liability to those persons for compliance with any instructions or directions.

**23.4    Reliance on Trustee.** Investment counsel shall be under no duty to any beneficiary or other person interested in the trust to see to the compliance by the Trustee with the instructions or directions from investment counsel. Investment counsel shall be entitled to presume conclusively that the Trustee will comply with its instructions and directions. No provision of this article shall make investment counsel a Trustee.

**23.5    Fees of Investment Counsel.** Investment counsel shall be entitled to a reasonable fee which the Trustee shall pay as an expense of the administration of the trust and shall charge against income or principal, or both, of the trust in the proportions (or all against either income or principal) that the Trustee determines to be proper.

## ARTICLE 24
## DISINHERITANCE AND NO CONTEST

**24.1    Disinheritance Clause.** After having given it extensive thought and consideration, the Trustors are not providing anything under this Trust or their Wills for ANDREW B. HOROWITZ or any of his issue. The Trustors have intentionally omitted from this Declaration of Trust any provision for any of their heirs, issue, relatives, or other persons who are not named, mentioned, designated, or described in this Declaration of Trust. The Trustors have intentionally omitted any person who would be a pretermitted heir under the provisions of the Probate Code and those persons referred to in Probate Code §§21600 through 21623. Except as specifically provided in this Declaration of Trust, the Trustors have intentionally omitted any provision for any of their children now alive or hereafter born or adopted, or for the issue of any of their children who may predecease them. After-born children shall have no rights in the Trustors' respective shares of the Trust Estate other than those expressly given the Trustors' children in the Trustors' respective Wills or this Declaration of Trust. Except as specifically provided in this Declaration fo Trust, the Trustors have intentionally omitted any provision for any stepchildren or foster children that they now have or may later acquire. The Trustors generally and expressly

0563535.1

disinherit each and every person whomsoever claiming to be and who may be determined to be their heirs at law, except as they are otherwise expressly provided for in this Declaration of Trust.

**24.2    No Contest Clause.** The Trustors want the greatest deterrence against interference with the Trustors' estate plan that the law allows. If any heir, issue, relative, legatee, devisee, beneficiary, or other interested person; or any person who is provided for under this Declaration of Trust, the Trustors' Wills, any beneficiary designation, or any non-probate asset; or any person who would be entitled to any of the Trustors' property under the laws of succession or otherwise, alone or in conjunction with any other person or persons, directly or indirectly (1) institutes any legal proceeding that attacks or contests this Declaration of Trust or the Trustors' Wills (or any amendment or codicil to this Declaration of Trust or the Trustors' Wills), or seeks to impair, nullify, void, or invalidate such documents or any of their provisions; (2) asserts or pursues in any manner any claim, including any creditor's claim, against either of the Trustors' estates or property other than as permitted in this Declaration of Trust and the Trustors' Wills; (3) attacks or contests or seeks to change any beneficiary designation under an insurance policy, employee benefit plan, deferred compensation plan, retirement plan, annuity, or other non-probate asset of the Trustors; or (4) conspires with or voluntarily assists any person or persons attempting to do any of these things, the Trustor directs that that person (the "Contestant") and all persons conspiring with or assisting him or her shall take none of the Trustors' property and nothing from the Trustors' estate. All these persons are expressly disinherited. Any and all gifts or property that otherwise would have gone to these persons shall be forfeited and shall pass as if these persons had predeceased the Trustors without leaving living issue; provided, however, if the Surviving Spouse is the Contestant, the Trustors' issue shall not be barred by reason of his or her actions. The foregoing provisions shall apply to any persons who claim that the Trustors entered into an oral agreement providing for the disposition or transfer of property to those persons or others in any way inconsistent with the provisions of this Declaration of Trust or the Trustors' Wills. The foregoing provisions shall also apply to any action or proceeding brought by any person, other than the Trustors (or the Trustors' authorized Agents) during the Trustors' lifetime, to change the ownership title of the Trustors' property already characterized in a document signed by the Trustors (excluding any action by the Trustors' Executor or Trustee to confirm ownership of the Trustors' property in the trust or the Trustors' estate) and any challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document providing for or directing the disposition of the Trustors' property.

Pursuant to Probate Code Section 21305, the foregoing provisions shall not be violated by the filing of the following: (1) a petition seeking relief under Chapter 3 (commencing with Section 15400) of Part 2 of Division 9 ("Modification and Termination of Trusts"); (2) a petition under Part 3 (commencing with Section 1800) of Division 4 ("Conservatorship"); (3) a petition under Part 2 (commencing with Section 4100) of Division 4.5 ("Powers of Attorney Generally"); (4) a petition pursuant to Section 2403 (instructions in a guardianship or conservatorship); (5) a petition challenging the exercise of a fiduciary power; (6) a petition objecting to the appointment of a fiduciary or seeking the removal of a fiduciary; and (7) objections or other responsive pleadings to the accounting of a fiduciary. Nor shall any acts done or omitted pursuant to a final judgment in any judicial proceeding violate these provisions.

58

In addition, the foregoing provisions shall not be violated by (1) the disclaimer of any right or interest in trust property; (2) the assertion or submission of any creditors' claims by any person to the Trustors' Executors or the Trustee that are believed by such person, in good faith, to be owed by the Trustors to that person or the prosecution of an action based upon any such creditor's claims; (3) the participation in a mediation or settlement discussions or the filing of a petition for settlement or compromise affecting the terms of this Declaration of Trust, the Trustors' Wills, or other documents governing the disposition of the Trustors' estates or property, (4) the filing of any petition or the taking of other action by the Trustee or the Trustors' Executors seeking judicial construction or interpretation of this Declaration of Trust or the Trustors' Wills, or of any amendment or codicil to this Declaration of Trust or the Trustors' Wills, or (5) the commencement of any proceeding for declaratory relief to determine whether any action by any person would constitute a contest under these provisions.

**24.3    Expenses of Contest.** The Trustors' Executors and the Trustee serving under this Declaration of Trust are expressly authorized to defend against any and all of the actions described in Section 24.2, including any contest or attack of any nature upon this Declaration of Trust, the Trustors' respective Wills, or any of their provisions. All expenses incurred in the defense of any of the actions or matters described in Section 24.2 shall be paid, as the Trustee determines, from either the Trustors' probate estates or the Trust Estate as expenses of administration. If, however, a Contestant is or becomes entitled to receive any property or property interests included in the Trustors' probate estates or the Trust Estate, whether under this Declaration of Trust, the Trustors' Wills, or any other instrument, then all expenses incurred by the Trustee or the Trustors' Executors in the defense of the actions undertaken by the Contestant shall be charged against and paid from the property or property interests that the Contestant otherwise would be entitled to receive, whether or not the Trustee or the Trustors' Executors was successful in the defense of the Contestant's actions.

## ARTICLE 25
## RULE AGAINST PERPETUITIES: MAXIMUM DURATION OF TRUSTS

Notwithstanding any other provision of this Declaration of Trust, unless terminated at an earlier date, all trusts created under this Declaration of Trust (including any interest created by the exercise of any limited power of appointment granted under this Declaration of Trust, other than an appointed trust in which some or all of the appointed interests are allowed a new perpetuities period because of a new power of appointment or withdrawal conferred by the exercise of the original power) shall terminate one day prior to the date that is twenty-one (21) years after the date of death of the last survivor of the class of persons consisting of the Trustors, the Trustors' issue, and the issue of the Trustors' grandparents living on the Deceased Spouse's date of death, and each natural person who is designated in this Declaration of Trust by name as a beneficiary. Any trust created by the exercise of a general power of appointment granted under this Declaration of Trust shall terminate as provided in the instrument by which the power is exercised.

Upon termination, the Trustee shall immediately distribute the remaining Trust Estate of each separate trust to the person or persons who would have been entitled to receive income distributions from the Trust Estate if it had not been terminated under this provision. If more than one person would have been entitled to receive income distributions, the Trustee shall

immediately distribute the property among these persons in the proportions in which income would have been distributed to them. If these proportions are not described in this Declaration of Trust, the Trustee shall distribute the property in the proportions he or she determines in the exercise of his or her discretion. If no person would have been entitled to receive income distributions, but the income would have been held for possible distribution to one or more persons, the Trustee shall immediately distribute the property among those persons in the proportions in which income could have been distributed to them, or if those proportions cannot be determined from this Declaration of Trust, in the proportions as the Trustee determines in the exercise of his or her discretion. If no person is identified under the foregoing provisions, the remaining Trust Estate shall be distributed to the presumptive remainder beneficiaries of the remaining Trust Estate, in proportion to their respective interests, or if none, to those persons and in those shares as determined by the Trustee, in his or her discretion, taking into account the other terms of this Declaration of Trust.

Notwithstanding the foregoing provisions of this article, no trust shall terminate pursuant to the provisions of this article if the trust would otherwise be legally valid and lawfully permitted to continue under applicable state law without the application of the provisions of this article.

## ARTICLE 26
## SPENDTHRIFT PROVISIONS

The following provisions shall apply only as to the separate irrevocable trusts established under this Declaration of Trust following the Deceased Spouse's death. These provisions shall not, however, enable the Trustee to withhold any distributions otherwise payable to the Surviving Spouse.

**26.1    No Voluntary Transfers of Trust Interests.** A beneficiary's interest in trust income or principal shall not be subject to his or her voluntary transfer. Specifically, a beneficiary (including the Surviving Spouse as a beneficiary) may not sell, transfer, assign, alienate, encumber, hypothecate, or otherwise dispose of his or her interest in trust income or principal. This provision does not, however, prohibit a beneficiary from exercising any power of appointment granted under this Declaration of Trust or from disclaiming or renouncing at any time all or any part of his or her interest in trust property.

**26.2    No Involuntary Transfers of Trust Interests.** A beneficiary's interest in trust income or principal also shall not be subject to involuntary transfer. Specifically, a beneficiary's interest shall not be subject to the beneficiary's liabilities, contracts, debts, or other obligations; to the claims of the beneficiary's creditors or assignees or others; to the enforcement of a money judgment against the beneficiary; or to assignment, attachment, anticipation, levy, execution, garnishment, pledge, claims arising from bankruptcy proceedings, or any other form of legal or equitable levy or lien or legal process or proceedings. Income or principal of any trust created under this Declaration of Trust shall not be used to discharge, in whole or in part, (1) the legal obligations of any person to support any beneficiary of the trusts, or (2) the legal obligation of any beneficiary to support any other person, except if required by court order.

0563535.1

60

## ARTICLE 27
## RESIDENCE PROVISIONS

**27.1    For All Beneficiaries**. The following provisions shall apply to the administration, management, and distribution of any Residences held under the terms of this Declaration of Trust for any beneficiary, whether or not the Residences are held in a separate trust.

(a)    **Right to Live in Residences**. The Trustee shall permit a beneficiary to live in and occupy the Residences during his or her lifetime and to possess and use any furniture and furnishings located in or about such Residence and transferred to the Trustee. The beneficiary shall not be charged any rent or other amount for living at the Residences. Further, the beneficiary shall have no obligation to reimburse the trust for any Residence expenses.

(b)    **Payment of Mortgage**. The Trustee shall make all payments for any debts, notes, or other obligations secured by mortgages, deeds of trust, or other encumbrances on the Residences, including both principal and interest payments.

(c)    **Payment of Expenses**. The Trustee shall pay all expenses for maintenance and repair of the Residences, including both normal and extraordinary costs. The Trustee shall pay the cost of premiums for liability and homeowners' insurance for the Residences, including fire and extended coverage insurance premiums on the building and fixtures at the full insurable value of the property and earthquake insurance if appropriate. The Trustee shall also pay the property taxes imposed on the Residences.

**27.2    Additional Provisions For the Surviving Spouse**. In addition to the provisions of Section 27.1, the following provisions shall apply to a Residence held for the benefit of the Surviving Spouse:

(a)    **Waste**. The Surviving Spouse shall not be liable for any waste of the Residences.

(b)    **Improvements**. Any improvements made to a Residence by the Surviving Spouse shall become part of the Residence, and the Surviving Spouse shall not have any claim for reimbursement for amounts expended for improvements.

(c)    **Sale of Residence**. The Trustee may sell a Residence with the consent of the Surviving Spouse, which the Surviving Spouse may withhold with or without cause or justification. Upon receipt of written instructions from the Surviving Spouse, the Trustee shall exchange or sell any such Residence and replace it with or rent or lease another Residence selected by the Surviving Spouse of comparable or lower value. Any such sale or purchase may be solely for cash or partly for cash and partly on credit, and at such price and upon such terms as the Surviving Spouse shall determine. Any residential property thus received in exchange or by purchase shall be subject to all of the terms and conditions of this Article 27, including the provisions hereof relating to possession and occupancy, sale or exchange, and the acquisition of other residential property in the place thereof. If the Surviving Spouse does not request acquisition of other residential property, the Trustee shall invest the proceeds of any such sale and

0563535.1

61

shall administer and distribute such proceeds under the terms of this trust, exclusive of this Article 27.

In the event that the Surviving Spouse shall notify the Trustee in writing of the Surviving Spouse's desire to lease or rent an apartment in lieu of residing in any such Residence, the Trustee shall pay the rent for such apartment proportionately from the income of the trusts which own an interest in such Residence. In the event that the Surviving Spouse shall subsequently desire to acquire a private Residence, the Trustee shall acquire such a Residence upon the terms and conditions provided in this Article 27.

In addition, upon receipt of written instructions from the Surviving Spouse, the Trustee shall replace any or all of such furniture and furnishings as the Surviving Spouse shall direct with other furniture and furnishings of substantially the same kind and quality as the furniture and furnishings in existence at the date of execution hereof (disregarding normal wear and tear), with all expenses thereof to be charged proportionately to the income of the trusts which own an interest in such furniture and furnishings thus being replaced.

The Trustee shall not be liable to any person for following any written instructions receive from the Surviving Spouse under this Article 27.

## ARTICLE 28
## GENERAL TRUST PROVISIONS

The following provisions shall apply in all matters of construction and interpretation of this Declaration of Trust.

**28.1    Rules of Construction.** Unless the specific provision or term being construed or the context of the provision or term otherwise requires, and except as otherwise expressly provided in this Declaration of Trust, the general provisions and rules of construction and interpretation set forth in the Probate Code and in this article and the definitions set forth in Article 29 (Definitions) shall govern the construction and interpretation of this Declaration of Trust. Where the provisions and rules of construction or definitions set forth in the Probate Code and in this article and Article 29 conflict, the provisions and rules and definitions set forth in this article and Article 29 shall govern. As to any questions of construction or interpretation of this Declaration of Trust, the construction or interpretation that would favor the Surviving Spouse and the Trustors' children, in that order, shall be adopted or applied.

**28.2    Governing Law.** This Declaration of Trust has been executed in California, and its validity and construction shall be governed by the laws of California regardless of where the trusts are administered. Further, except as otherwise provided in this section, the trusts established under this Declaration of Trust shall be administered in California regardless of where the Trustee or beneficiaries reside, and all matters and questions related to their administration shall be governed by the laws of California. A majority of the beneficiaries then entitled to trust income (whether discretionary or not) shall have the power to direct the Trustee, by written instrument delivered to the Trustee, to transfer the situs of a trust to another state of the United States that the beneficiaries select. After any change of situs for a trust, the administration of the

transferred trust shall be governed by the laws of the state of the new situs, but the validity of this Declaration of Trust and its construction shall continue to be governed by the laws of California.

**28.3    Successors in Interest.**  This Declaration of Trust shall be binding upon the Trustors' heirs, executors, successors, and assigns, the Trustee and the successor Trustee, and all the beneficiaries and interested persons under this Declaration of Trust.

**28.4    Court Supervision.**  Under California law the California courts have jurisdiction to consider petitions concerning each trust created by this Declaration of Trust. The Trustors intend that the provisions of Probate Code §17000 et seq. shall be applicable to the trusts established under this Declaration of Trust.

**28.5    References to Statutes.**  Whenever a reference is made to any portion of the Internal Revenue Code, the Probate Code, or to any other law, the statutory reference shall be construed to refer to the statutory section mentioned, related successor or substitute sections, and corresponding provisions of any subsequent law, including all amendments and additions.

**28.6    Gender, Tense, and Numbers.**  Unless the context clearly requires another construction, the masculine, feminine, and neuter genders shall each include the others as appropriate; the present tense shall include the past and future tenses, and the future tense shall include the present tense; and the singular number shall include the plural, and the plural shall include the singular.

**28.7    Effect of Headings.**  Article, section, and paragraph numbers and headings, as well as titles, used in this Declaration of Trust are used for convenience of reference only and shall not be considered in the construction or interpretation of this Declaration of Trust. They are not intended to have any legal effect or to affect the scope, meaning, or intent of the provisions of this Declaration of Trust.

**28.8    Severability.**  If any part, clause, or provision of this Declaration of Trust, or the application of any part, clause, or provision of this Declaration of Trust to any person or circumstances, is held to be void, invalid, unenforceable, or inoperative, this invalidity shall not affect any other parts, clauses, or provisions or applications of this Declaration of Trust that can be given effect without the invalid provision or application. The remaining provisions of this Declaration of Trust shall be effective and fully operative as though the part, clause, or provision had not been contained in this Declaration of Trust. To this end, the provisions of this Declaration of Trust are severable.

## ARTICLE 29
## DEFINITIONS

The following definitions shall apply in all matters of construction and interpretation of this Declaration of Trust.

**29.1    Administer.**  The term "administer" means to hold, manage, administer, allocate, and distribute.

**29.2    Agent**. The term "Agent" means (1) an individual's attorney-in-fact acting under a power of attorney, to the extent the power of attorney specifically authorizes the attorney-in-fact to take the proposed actions, or (2) an individual's court-appointed conservator or guardian, to the extent the conservator or guardian has obtained, from the court that appointed the Agent as conservator or guardian, approval of its proposed actions at a hearing for which the Trustee received timely notice.

**29.3    Beneficiary**. The terms "beneficiary" or "beneficiaries" mean a person to whom a donative transfer of property or a distribution from a trust is or could be made or that person's successor in interest, and shall include an heir, devisee, legatee, a person with any interest in a trust, and any person entitled to enforce a charitable trust, as provided in Probate Code §24. "Income beneficiary" means a person currently entitled to receive distributions of net income from a trust or to whom distributions could be made by the Trustee in the exercise of his or her discretion.

**29.4    Charitable Organization**. The term "Charitable Organization" means an organization or trust described in I.R.C. §2055(a) to which contributions or bequests are deductible Estate Tax purposes.

**29.5    Child, Parent, and Issue**. The term "child" means any individual entitled to take as a child under the Probate Code by intestate succession from the parent whose relationship is involved. References to "child" or "children" mean descendants in the first degree of the parent designated. A child of the Trustors shall include a child born or adopted after the execution of the Trustors' respective Wills and this Declaration of Trust. The term "parent" means any individual entitled to take as a parent under the Probate Code by intestate succession from the child whose relation is involved. The term "issue" of a person means all the person's lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of parent and child. The term "grandchild" includes only a child of a child of the person referred to.

**(a)    Limitations as to Lawful Issue**. The terms "child," "children," "issue," and "descendants" shall refer only to children or issue either (1) conceived or born during a valid marriage, or (2) legally adopted as provided below. These terms shall not include children born out of wedlock to male children or male issue, regardless of whether a parent and child relationship existed (other than by adoption) between a child and his or her deceased male parent, but do include children born out of wedlock to female children or female issue.

**(b)    Limitations as to Adopted Children**. The terms "child," "children," "issue," and "descendant" shall include "adopted children" or "adopted child." The term "adopted child" means a person who was adopted and who lived a substantial part of his or her minority with the adopting parent. An adopted child and the adopted child's issue shall be considered issue of the adopting parent or parents and of anyone who is by blood or adoption an ancestor of the adopting parent or of either of the adopting parents.

**(c)    Limitations as to Stepchildren and Foster Children**. Except as otherwise provided in Section 1.1(b), above, the terms "child," "children," "issue," and

0563535.1

64

"descendants" shall not include a foster child or a stepchild, even if a parent-child relationship existed between the foster parent and the foster child or between the stepparent and the stepchild.

    **(d)**    **Limitation as to Brothers and Sisters.**  Except as otherwise expressly provided, whenever an allocation or distribution is to be made to a brother or sister of a beneficiary who is a lineal descendant of either Trustor, the distribution shall be made only to those brothers and sisters who are also lineal descendants of either Trustor.

    **29.6**    **Deceased Spouse; Surviving Spouse.**  The term "Deceased Spouse" means the first Trustor to die.  The term "Surviving Spouse" means the Trustor who survives the other.  If the Trustors die under circumstances where it cannot be established whether or not one Trustor survived the other, then it shall be conclusively presumed that HARLENE survived ROBERT.  In connection with such determination, or if the Surviving Spouse fails to survive the Deceased Spouse by more than 180 days, then the amount to be computed under Section 4.2(b)(i) of this Declaration of Trust shall instead equal the following amount:  there shall then be allocated to the Marital Trust from the Trust Estate the amount which shall, when taken together with all other interests and property that qualify for the marital deduction and that pass or shall have passed to the Surviving Spouse under other provisions of this Declaration of Trust or otherwise, obtain for the estate of the Deceased Spouse a marital deduction which would result in the lowest federal estate taxes in the estate of the Deceased Spouse and the estate of the Surviving Spouse, on the assumption that the Surviving Spouse died after the Deceased Spouse, but on the date of death of the Deceased Spouse, and that the estate of the Surviving Spouse was valued as of the date on (and in the manner in) which the estate of the Deceased Spouse is valued for federal estate tax purposes; the Trustors' purpose being to equalize, insofar as possible, each of the Trustors' estates for federal estate tax purposes, based upon such assumptions.

    **29.7**    **Distribute.**  The term "distribute" means to pay directly to, or apply for the benefit of, the designated beneficiary, donee, or transferee or that person's Agent.

    **29.8**    **Education.**  The term "education" shall include, but not be limited to, elementary, primary, secondary, college, graduate, postgraduate, and professional study or schooling, and vocational training, as well as instruction in drama, music, art, science, computers, religion, and other subjects taught before or after a regular school day.  Payments for education shall include tuition, books, supplies, tutors, and the beneficiary's reasonable related living and travel expenses, including clothing, room and board, and a reasonable living allowance.

    **29.9**    **Employee Benefit Plan.**  The term "Employee Benefit Plan", as provided in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended and as it may be amended, means any employee welfare benefit plan or an employee pension benefit or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

    **29.10**    **Estate Taxes.**  The term "Estate Taxes" means all estate, inheritance, transfer, succession, legacy, death, and other similar taxes, including any interest or penalties on these taxes, that may be imposed by reason of a Trustor's death.  "Estate Taxes" excludes any income tax, Generation-Skipping Transfer Tax, excise tax, and other similar taxes.

0563535.1

**29.11   Executor.** The term "Executor" means an executor, administrator, administrator with the will annexed, special administrator, personal representative, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status, including all successors or persons holding the office temporarily. If, however, there is no Executor serving within the United States, the term means the Trustee of this trust for purposes of the property held in the Trust Estate, as provided in I.R.C. §2203. The terms "Executor" and "Executors" each include both the singular and the plural.

**29.12   Expenses of Estate Administration.** The term "Expenses of Estate Administration" means those expenses incurred following the death of either Trustor by his or her estate or by the Trustee of the trust that are deductible (whether or not so deducted) for estate tax purposes pursuant to I.R.C. §2053. Such expenses shall include attorney's, appraiser's, and accountant's fees and all expenses incurred in determining the amount of any Estate tax.

**29.13   Federal Estate Tax Value.** The term "Federal Estate Tax Value" means the value of property included in the deceased Trustor's gross estate, valued either as of the deceased Trustor's date of death or the alternate valuation date, as finally determined for federal estate tax purposes. The Federal Estate Tax Value of any property acquired after the deceased Trustor's death shall be deemed to be its adjusted basis at the time of its acquisition as finally determined for federal income tax purposes. References to "Adjusted Gross Estate" shall mean the deceased Trustor's gross estate as finally determined for federal estate tax purposes, but excluding property includible in the deceased Trustor's gross estate pursuant to I.R.C. §2044 and subtracting allowable deductions under I.R.C. §2053 and §2054.

**29.14   Generation-Skipping Transfer Tax.** The terms "Generation-Skipping Transfer Tax" or "GST Tax" refer to the federal Generation-Skipping Transfer Tax imposed by Chapter 13 of the I.R.C. The term "GST Exemption" refers to the exemption provided in I.R.C. §2631(a). "Unused GST Exemption" means the amount of a person's GST Exemption that is then remaining available for allocation to property or a trust as to which the person is the transferor. A "GST Exempt Trust" is a trust that has an inclusion ratio of zero for purposes of the GST Tax. A "GST Non-Exempt Trust" is a trust that has an inclusion ratio of greater than zero for purposes of the GST Tax. The term "Reverse QTIP Election" refers to the election provided for qualified terminable interest property under I.R.C. §2652(a)(3) to treat all of a QTIP trust as if, for purposes of the GST Tax, the QTIP election had not been made.

**29.15   Gifts.** The term "gifts" mean devises, legacies, bequests, and all other types of donative transfers, inter vivos and testamentary.

**29.16   Guardian.** The term "guardian" means the court-appointed guardian of the person or estate of a minor person. The term "natural guardian" means the child's parents.

**29.17   Health.** The term "health" refers to all matters related to the health of the designated person, including medical, dental, hospital, and nursing expenses and expenses of home care and therapy incurred for the person's benefit.

**29.18  Heirs at Law**.  The terms "heirs at law" or "heirs" mean the persons determined according to the California laws of intestate succession then in effect relating to separate property not acquired from a previously deceased spouse.  For purposes of Section 4.3 ("Disposition of Otherwise Undisposed of Property"), the terms "heirs at law" or "heirs" shall not include either Trustor's ancestors.

**29.19  Incapacity and Incapacitated**.  The terms "Incapacity" or "Incapacitated" is defined as follows:

**(a)    As to a Trustor**.  The terms "Incapacity" or "Incapacitated" when used with respect to a Trustor (either in the capacity as a Trustor or as a Trustee) shall have the following meaning.  A Trustor shall be considered to be Incapacitated or unable to serve as a Trustee (an "Incapacitated Trustor"), if the Trustor does not have sufficient understanding or ability to make or communicate decisions about the Trustor's property, finances or personal business.  The Trustors grant the following persons the power to determine conclusively that a Trustor has become Incapacitated:

    (i)    The Trustor's treating physician; and
    (ii)   The Trustor's spouse.

When all persons above execute written declarations under penalty of perjury that the Incapacitated Trustor is Incapacitated (unless the Incapacitated Trustor's spouse is Incapacitated, in which case the Incapacitated Trustor's treating physician, acting alone, may determine the Incapacitated Trustor's Incapacity in the manner set forth above) a Trustor shall conclusively be determined to be Incapacitated .  No person who executes an opinion of Incapacity shall be subject to liability because of such execution.  The Trustors waive any privilege either of them may have that may apply to release of information included in a medical opinion.

The Incapacitated Trustor shall be deemed to have been restored to capacity when any two of the following persons shall execute written declarations under penalty of perjury that in his or her opinion that the Incapacitated Trustor has sufficient understanding or ability to make or communicate decisions about the Incapacitated Trustor's property, finances or business affairs, and when such declarations have been delivered to the currently acting Trustee:

    (i)    The Trustor;
    (ii)   The Trustor's treating physician; and
    (iii)  The Trustor's spouse.

**(b)    As to a Trustee who is not a Trustor**.  The terms "Incapacity" and "Incapacitated" when used with respect to any person appointed to serve or serving as Trustee (other than a Trustor) shall have the following meaning.  A person shall be considered to be Incapacitated, and unable to serve or continue to serve as a Trustee, if the person is under a legal disability or by reason of illness or mental or physical disability is or would be unable to give prompt and intelligent consideration to the financial and administrative matters affecting the trust or trusts for which he or she serves as Trustee.  The determination of a person's Incapacity at any time shall be made by either (i) the person's treating physician (by written declaration under

0563535.1

penalty of perjury) or (ii) an order of a court appointing a conservator for that person. No person who executes an opinion of Incapacity shall be subject to liability because of such execution.

      **(c)**      **As to a Beneficiary.** The terms "Incapacity"and "Incapacitated" when used with respect to any beneficiary of any trust created under this Declaration of Trust shall have the following meaning. A person shall be considered to be Incapacitated if the person does not have sufficient understanding or ability to make or communicate decisions about his or her property, finances or personal business. The determination of a person's Incapacity at any time shall be made by either (i) the person's treating physician (by written declaration under penalty of perjury), or (ii) an order of a court appointing a conservator for that person. No person who executes an opinion of Incapacity shall be subject to liability because of such execution.

      **29.20    Interested Person.** The term "interested person" includes (1) an heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against the Trust Estate; (2) any person having priority for appointment as a fiduciary under this Declaration of Trust; and (3) a fiduciary representing an interested person.

      **29.21    Internal Revenue Code.** The term "Internal Revenue Code" or "I.R.C." means the United States Internal Revenue Code of 1986, as amended from time to time, and corresponding provisions of any subsequent federal internal revenue law.

      **29.22    Investment Counsel.** The term "investment counsel" means reputable, professional, independent, and disinterested investment counsel that is (1) currently managing at least five other accounts of equal or larger size, (2) compensated for services on a fee basis, but not on any percentage of the price of assets purchased or sold, and (3) not personally or financially interested in the sale or purchase of assets to or by the trust. The term "discretionary investment counsel" means investment counsel that has been given the authority to manage the investment of all or any portion of the Trust Estate with full discretion to act without seeking the approval of the Trustee as to individual transactions.

      **29.23    Marital Deduction.** The term "marital deduction" means the federal estate tax deduction allowed for transfers to or for a spouse under the provisions of I.R.C. §2056 or the federal gift tax deduction allowed for transfers under I.R.C. §2523. The term "marital deduction gift" means a transfer of property that is intended to qualify for the marital deduction.

      **29.24    May and Shall.** Wherever used in this Declaration of Trust, the term "may" means the Executor or Trustee is authorized, at his or her option, to take or not take an action as he or she determines, in his or her sole and absolute discretion. The term "shall" means that the Executor or Trustee must take the designated action.

      **29.25    Probate Code.** The term "Probate Code" means the California Probate Code, as amended from time to time, and corresponding provisions of any subsequent California laws.

      **29.26    Property.** The term "property" means anything that may be the subject of ownership and includes real and personal property, tangible and intangible property, and any interest in such property.

0563535.1

68

    **(a)**    The term "real property" (including any Residence) includes the land (including all easements appurtenant to the land), all buildings and improvements on the land, all policies of insurance on the land and buildings and improvements on the land, and all oil, gas, mineral, and similar interests. A gift of real property, including any gift of a Residence, shall be made subject to any and all liens, mortgages, deeds of trust, or other encumbrances on the property or secured by the property, whether or not recorded in the official county records.

    **(b)**    The term "tangible personal property" includes clothing, jewelry, and other personal effects; household furniture, furnishings, equipment, and appliances (including rugs, linen, and other household decorations); china, silverware, glassware, crystal, and other household items of use and decoration; books, pictures, works of art (including paintings, sculptures, and works on paper), antiques, stamp and coin collections, wine, and other collectibles; automobiles, boats, other vehicles, and accessories to vehicles; and other items of domestic, household, or personal use. "Tangible personal property" shall not include ordinary currency, cash, or bullion or property primarily held for investment purposes, such as investment funds, or any property held for use in a trade or business.

    **(c)**    The term "intangible property" includes rights in literary or musical properties, rights in works of art, contract rights, copyrights, publishing rights, and rights to a deceased personality's name, voice, signature, photograph, or likeness.

    **29.27**  **QTIP Property**. The term "QTIP Property" means "qualified terminable interest property" as defined in I.R.C. §2056(b)(7). The term "QTIP election" means an election under I.R.C. §2056(b)(7) to treat all of the property allocated to a trust or all of a trust as QTIP Property. A "QTIP trust" means a trust with respect to which a valid QTIP election has been made.

    **29.28**  **Residence**. The term "Residence" means that dwelling or dwellings, as the case may be, in which either Trustor normally lived prior to either of the Trustors' deaths. The term "Residence" includes the fixtures, exterior planting, built-in appliances, and other items that in the ordinary course of the sale and purchase of the dwellings would remain in or be regarded as part of the dwellings.

    **29.29**  **Residue**. The term "residue" means the property remaining after the payment of all expenses of administration and debts and the distribution of all specific gifts and tangible personal property, and before the payment of Estate Taxes. Estate Taxes shall be handled separately, and shall be paid and charged as specifically provided in this Declaration of Trust.

    **29.30**  **Retirement Plan**. The term "Retirement Plan" means any qualified retirement plan, individual retirement account or other plan or arrangement that is subject to the minimum distribution rules of I.R.C. §401(a)(9).

    **29.31**  **Right of Representation**. The term "right of representation" means that the property shall be distributed or taken in the manner provided in Section 246 of the Probate Code. Unless otherwise specified, distributions or allocations of property to or among children or issue, and among successor beneficiaries, shall in all cases be made in the manner provided in Section 246 of the Probate Code.

0563535.1

**29.32    Share.** The term "share" means a beneficiary's proportional interest as determined by the provisions of this Declaration of Trust in the principal and accumulated income of the trusts established under this Declaration of Trust.

**29.33    Survivorship.** The term "survive" or "survivorship" means to live for at least thirty (30) days past the designated event. No beneficiary shall be considered to have survived a Trustor's death, the death of a prior beneficiary, or the event terminating any trust (and be entitled to any trust funds) unless the beneficiary survives for at least thirty (30) days after the event. Any beneficiary required to survive any other person, who fails to survive the other person by thirty (30) days, shall be deemed to have predeceased that person. If it cannot be established whether a beneficiary has survived by thirty (30) days, the beneficiary shall be deemed to have failed to survive for the required time. Except as otherwise expressly provided, any gift or bequest to any person made contingent upon the survivorship of that person shall lapse and shall not be made if the conditions of survivorship stated in this section or elsewhere in this Declaration of Trust are not met. The lapsed gifts or bequests shall pass instead as part of the residue of the trust from which the gifts or bequests were directed to be made. The foregoing provisions shall not apply, however, to the Surviving Spouse.

**29.34    Trust Estate.** The term "Trust Estate" means property transferred to the Trustee, in trust, to be administered under the terms of this Declaration of Trust, including the property transferred to the Trustee upon the establishment of the trusts and following the Trustors' respective deaths, and all the income from and appreciation in the property transferred to the Trustee.

**29.35    Trustee.** The terms "Trustee" or "Trustees" mean the persons who are serving from time to time as the Trustees or Co-Trustees under this Declaration of Trust, including each initial, additional, or successor Trustee, whether or not appointed or confirmed by any court. Unless otherwise expressly provided, all references in this Declaration of Trust to the "Trustees" shall include all Trustees. The terms "Trustee" and "Trustees" each include both the singular and the plural. The term "corporate Trustee" means a corporation, a bank, a trust company, or other entity that is authorized by law to serve as a professional Trustee. The term "independent Trustee" means a Trustee who is not any of the following: (1) a beneficiary of the trust for which he or she is serving as Trustee, (2) a person who has transferred property to such trust; or (3) a person who is a related or subordinate party as to any such beneficiary or grantor.

## ARTICLE 30
## RELIANCE ON CERTIFIED COPIES

To the same effect as if it were the original, anyone may rely upon a copy of this Declaration of Trust, or any part of this Declaration of Trust, certified by a Trustor or Trustee or their legal counsel to be a true and correct copy of all or any part of this Declaration of Trust, or of any document required to be filed with or maintained at the office of the Trustee. Anyone may rely upon any statements of fact concerning this trust certified by anyone who appears from an original document, or a certified copy, to be serving as a Trustee under this Declaration of Trust, including a certification of trust made pursuant to Probate Code §18100.5.

0563535.1

EXHIBIT B

ROBERT M. HOROWITZ and HARLENE HOROWITZ, as the Trustees of the HOROWITZ
FAMILY TRUST, hereby accept and acknowledge receipt of the foregoing.

Dated: ___8/28___, 2003

_____
ROBERT M. HOROWITZ
Trustee

_____
HARLENE HOROWITZ
Trustee

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

    On _____8/28_____, 2003, before me, the undersigned, a Notary Public in and for
said County and State, personally appeared ROBERT M. HOROWITZ and HARLENE
HOROWITZ, personally known to me (or proved to me on the basis of satisfactory evidence) to
be the persons whose names are subscribed to the within instrument, and acknowledged to me that
they executed the same in their authorized capacities, and that by their signatures on the
instrument the persons, or the entity upon behalf of which the persons acted, executed the
instrument.

    WITNESS my hand and official seal.

_____
Notary Public in and for said County and State



ALLAN B. CUTROW
Commission # 1292752
Notary Public - California
Los Angeles County
My Comm. Expires Feb 9, 2005

73

0563535.1