Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Steven R. Schlesinger, Esq. (SS 4225)

*Attorneys for Sylvia Samuels*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Applicant,        Adv. Pro. No. 08-01789 (BRL)

   v.        SIPA Liquidation

BERNARD L. MADOFF INVESTMENT        (Substantively Consolidated)
SECURITIES LLC,

        Defendant.
---------------------------------------------------------------X

IN RE:

BERNARD L. MADOFF,

        Debtor.
---------------------------------------------------------------X

## SYLVIA SAMUELS' OBJECTION TO
## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

     Sylvia Samuels ("Samuels"), by and through her counsel, Jaspan Schlesinger LLP, hereby raises and files this Objection to the Notice of Trustee's Determination of Claim, dated October 19, 2009, and respectfully shows and alleges as follows:

     1.    On or about February 23, 2009, Samuels mailed certified mail – return receipt a Custom Claim form (the "Customer Claim Form") with respect to Account Number 1S0494 of Bernard L. Madoff Investment Securities LLC ("BLMIS"). A copy of the Customer Claim

Form is annexed hereto as Exhibit "A". The Customer Claim Form reflected a November 30, 2008 balance of $720,093.56 with respect to Account Number 1S0494.

2. Thereafter, on or about May 15, 2009, Sylvia Samuels mailed certified mail – return receipt a Hardship Application for Securities Investor Protection Corporation ("SIPC") protection for individual victims of BLMIS (the "Hardship Application"). A copy of the Hardship Application is annexed hereto as Exhibit "B." By letter dated June 1, 2009, counsel to Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC (the "Trustee") informed Samuels that her Hardship Application was approved and that her claim had been accepted into the Hardship Program. A copy of this June 1, 2009 letter is annexed hereto as Exhibit "C".

3. In support of her Customer Claim and Hardship Application, letters were submitted to counsel to the Trustee explaining the circumstances surrounding Samuels' claim and investment with BLMIS. Copies of the June 4, 2009, August 17, 2009 and August 24, 2009 letters sent to counsel for the Trustee are annexed hereto as Exhibits "D", "E", and "F" respectively.

4. Following the submission of these letters to counsel to the Trustee, the Trustee issued the Notice of Trustee's Determination of Claim, dated October 19, 2009 (the "Determination of Claim"). A copy of the Determination of Claim is annexed hereto as Exhibit "G". As reflected in the Determination of Claim, the Trustee denied Samuels' claim under Account Number 1S0494 in its entirety. Specifically, the Trustee denied Samuels' claim for a credit balance of $720,093.56 on the ground that "[n]o securities were ever purchased for [her] account." See Exhibit G. The Trustee also stated that based upon his analysis, the

amount of money withdrawn from the account was greater than the amount deposited with BLMIS. See Exhibit G.

5. The Determination of Claim Trustee's determination should be overturned and Samuels should be allowed a claim for the maximum amount under SIPC ($500,000.00) with the balance as a claim against the estate and any remaining proceeds, totaling $720,093.56 as reflected on her last statement from BLMIS, dated November 30, 2008.

### A. FACTUAL BACKGROUND ON SAMUELS' INVESTMENT WITH BLMIS AND MARTIN JOEL

6. In 1994, Samuels opened an account with Martin Joel, Jr. under Account Number 1S0188. This account was managed and traded only by Mr. Joel, who rented office space from Bernard L. Madoff ("Madoff") until his passing in 2003. This account, though statements bore the letterhead and name of BLMIS, was exclusively traded and managed by Joel until his passing in 2003 when Madoff closed Account Number 1S0188 and unilaterally transferred the funds that were legitimately traded by Joel to Account Number 1S0494. A copy of the account statement dated November 30, 2003 reflecting the closing of Account Number 1S0188 and the transfer of its funds is annexed hereto as Exhibit "H". A copy of the account statement dated November 30, 2003 reflecting the opening of Account Number 1S0494 with a balance of $570,348.49 is annexed hereto as Exhibit "I".

7. Until Madoff closed Samuels' legitimate trading account (Account Number 1S0188) and opened a new account for Samuels that only Madoff had custody and control over (Account Number 1S0494), Samuels' funds held at BLMIS were not part of the ultimate Ponzi scheme committed at BLMIS.

8. Tax returns of Samuels for the years 1996, 1997, 1998, 1999 and 2000 have every indicia of an account not under the control of Madoff or part of the Ponzi scheme. Copies of

these tax returns are annexed as part of Exhibit "F" and with the letter dated August 24, 2009 that was submitted to counsel to the Trustee.  A review of the tax returns for this five (5) year period demonstrate that Samuel was not receiving or earning the typical returns of Madoff customers with accounts that were part of the Ponzi scheme.

9.    In comparison, a review of the tax returns for the years following Mr. Joel's death and after Madoff transferred Samuels' money into Account Number 1S0494 shows that only then was Samuels receiving and earning the types of returns associated with Madoff's Ponzi scheme. Copies of Samuels' tax returns for the years 2003, 2004, 2005 and 2006 are annexed as part of Exhibit "F" with the letter dated August 24, 2009 that was submitted to counsel to the Trustee.  It appears from the face of these documents that following Mr. Joel's death in 2003 at the earliest, Samuels may no longer have had a legitimate account through BLMIS and the $570,348.49 that was transferred into Account Number 1S0494 in November 2003 was then made part of Madoff's Ponzi scheme.

**B.  THE DETERMINATION OF CLAIM SHOULD BE OVERTURNED AS SAMUELS IS ENTITLED TO A CLAIM FOR THE FULL AMOUNT ON HER NOVEMBER 30, 2008 ACCOUNT STATEMENT**

10.    The Determination of Claim should be overturned as Samuels is entitled to receive the full amount of her claim from SIPC for Account Number 1S0494 in the amount of $720,093.56, as reflected on her Customer Claim Form.

11.    The Trustee has failed to render a determination and to satisfy Samuels' Customer Claim for Account Number 1S0494 in accordance with the books and records of BLMIS. Additionally, the Trustee has failed to give any weight to the documents not only in his possession regarding this account but to the documents submitted by Samuels' in connection with her Customer Claim and Hardship Application.  Further, a proof of claim filed by a creditor

is prima facie evidence of the amount and validity of the claim. See Fed. R. Bankr. P. 3001. The Trustee bears the burden of proof in challenging the amount and validity of Samuels' Customer Claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re 37-02 Plaza LLC, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008) ("The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's prima facie validity."). The Trustee has failed to meet this burden.

12. Specifically, the Trustee has failed to give Samuels any credit for Account Number 1S0188 that was managed solely by Mr. Joel through the legitimate side of BLMIS until 2003 and has, inter alia, ignored not only Samuels' tax returns for period of 1996 to 2000 but also BLMIS statements for both Account Numbers 1S0188 and 1S0494 for this same time period. The documents submitted in connection with Samuels' Customer Claim and Hardship Application establish that Samuels was not earning the high rate of interest that other Madoff customers were receiving due to Madoff's alleged split/strike strategy. Rather, the account statements and tax returns for the period of 1994 to 2003 when Mr. Joel died exhibit a more traditional trading account with marginal returns and conservative investments that were not typical of Madoff Ponzi scheme customers. Copies of year-end statements for the years 1994-2002 for Account Number 1S0188 are annexed hereto as Exhibit "J". Copies of year-end statements for the years 2005-2007 and the final statement of November 30, 2008 are annexed hereto as Exhibit "K". A basic review of these statements reveals a noticeable difference in trading strategies and types of trades when Mr. Joel was in control of Samuels' account, see Exhibit K, and when Madoff was in control of Samuels' account, see Exhibit K.

13. The documentary evidence therefore establishes that Samuels' funds were not part of the Madoff Ponzi scheme until November 2003 when Madoff closed Account Number

1S0188 and opened Account Number 1S0494. Only then was Samuels' account part of the Madoff Ponzi scheme and subsequently lost.

14. The Determination of Claim fails to give Samuels' credit for the $570,348.49 transferred from the legitimate side of BLMIS to Madoff's Ponzi scheme. Instead, the Trustee only gives Samuels credit for a total deposit of $23,972.72, which is improper and must be overturned. Nowhere in the Determination of Claim does the Trustee explain where and how he calculated this "total deposit" for Samuels' account. Instead, the schedule annexed to the Determination of Claim shows the November 25, 2003 transfer of $570,348.49 from Account Number 1S0188 which is somehow "adjusted" to $19,972.72. No explanation is offered as to how the Trustee "adjusted" the amount of the deposit or how he reached the conclusion that Samuels should not be given credit for approximately $550,375.77 (or 97%) of Samuels' money that was part of her legitimate account with Mr. Joel at BLMIS.

15. Assuming, *arguendo*, that the Trustee is correct with his definition of "net equity" and his money in/money out analysis (which Samuels submits is also incorrect), Samuels should be given the credit for the $570,348.49 transferred into her account and the Trustee's conclusion that she withdrew more funds than were deposited for her account should be overturned. The Trustee's money in/money out analysis fails to give customers of BLMIS credit for basic interest that could have been earned on the funds deposited with Madoff and BLMIS during the years in which they were investors, and also fails to reflect the time value of money. Clearly, the amounts Samuels deposited with Mr. Joel in 1994 and the years following do not have the same value now in 2009.

16. The Trustee's definition of "net equity" only serves to punish victims of Madoff and BLMIS and fails to honor their reasonable expectations. The Determination of Claim must

therefore be reversed and Samuels should be entitled to receive the full amount of her claim ($720,093.56) as reflected on her last statement from BLMIS, dated November 30, 2008.

17. Samuels also submits that the issue of "net equity" with respect to her account will be affected by the various motions and objections to the Trustee's definition of "net equity" that is being briefed for this Court pursuant to its September 16, 2009 Order [Docket # 437]. Samuels respectfully requests that a hearing and ruling on her Objection to the Determination of Claim be stayed pending a decision by this Court on the Trustee's definition of "net equity" and his money in/money out approach as such decision will undoubtedly affect this Objection, the amount of Samuels' claim and entitlement to recovery from SIPC and the Trustee's Determination of Claim.

18. Samuels further reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of her right to object.

**WHEREFORE**, Sylvia Samuels requests that her Customer Claim be allowed in its entirety in the amount of $720,093.56, together with such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
November 18, 2009

                                                  JASPAN SCHLESINGER LLP
                                                  *Attorneys for Sylvia Samuels*


                                          By:    s/ Steven R. Schlesinger
                                                   STEVEN R. SCHLESINGER (SS 4225)
                                                   300 Garden City Plaza
                                                   Garden City, New York 11530
                                                   (516) 746-8000

08-01789-cgm    Doc 907    Filed 11/18/09    Entered 11/18/09 14:46:03    Main Document
          Pg 8 of 8

TO: Clerk of the United States Bankruptcy Court (via ECF)
for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

HY/D676303v1/M053602/C0143600                    8