# UNITED STATE BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

Adv. Pro. 08-01789 (BRL)



## AMENDED
## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

1.    James S. Werter, representing James S. Werter Revocable Trust dtd 9/25/03" is a "customer," as defined by the Securities Investor Protection Act ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.    Mr. Werter's final BMIS statement, dated November 30, 2008, states that he owns securities valued at approximately $1,150,000.00 ("Final BMIS Statement").

3.    Mr. Werters BMIS account number is 1ZA979 and his SPIC claim number is 000086.

4.    On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). *See* Order, *Securities and Exchange Commission v. Madoff,* No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIP A and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No.4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *fd.;* 15 u.S.C. 78fff-l(a).

5.    On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

6.    The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor ....* " *See* Order at 6 (emphasis added) [DIet. No. 12].

7.    On or about March 3, 2009, Mr. Werter submitted a customer claim form to SIPC, setting forth his claim in the approximate amount of $1,150,000.00. *See* Werter Customer Claim for Acct. No. 1ZA979 (Exhibit A).

8.    On October 19, 2009, the BMIS Trustee sent Mr. Werter the Determination Letter disallowing Mr. Werter's claim in its entirety. *See* Determination Letter (Exhibit B).

9.    Mr. Werter hereby objects to the Determination Letter for the reasons stated in the Objection to Trustee's Determination of Claim entered on behalf of Martin Rappaport, on or about June 12, 2009, by and through Mr. Rappaport's attorney of the law firm of Milberg, LLP and Seeger Weiss LLP and requests this Honorable Court to consider those arguments for consideration as Mr. Werter's position. *See* Martin Rappaport's Objection to Notice of Trustee's Determination of Claim (Exhibit C).

## RELIEF REQUESTED

10.    For the reasons stated herein, the Werter Customer Claim should be allowed in its entirety.

11.    For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Werter in the amount of $500,000, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

12.    The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Mr. Werter will file a response.

13.    Mr. Werter requests such other relief as may be just and equitable.

I HEREBY CERTIFY that a copy of this instrument has been delivered by U.S. Mail to the Irving H. Picard, Esquire, Trustee, 2100 McKinney Avenue, Suite 800, Dallas, TX 75201, and Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, NY 20005-2215, this _ll_ day of November, 2009.

JAMES S. WERTER, PRO SE
1201 Arapaho Avenue, Suite B
St. Augustine, FL 32084
(904) 827-0446

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: (904) 827-0446

HOME: (904) 543-9439

Taxpayer I.D. Number (Social Security No.)
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

Account Number:  1ZA979
JAMES S WERTER
REVOCABLE TRUST DTD 9/25/03
1201 ARAPAHO AVENUE #B
ST AUGUSTINE, FL 32084

(If incorrect, please change)

NOTE:  BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1. Claim for money balances as of **December 11, 2008** :
   a.  The Broker owes me a Credit (Cr.) Balance of   $ 1,150,000 Approx.
   b.  I owe the Broker a Debit (Dr.) Balance of   $ 0

502180406                           1                    Exhibit A

c.   If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**
with this claim form.

d.   If balance is zero, insert "None."

$ 0̸
$1,130,000 Approx

2.   Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  | YES | NO |
|---|---|---|
| a.   The Broker owes me securities | ✕ | |
| b.   I owe the Broker securities | | ✕ |

c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
|  |  | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|  | Unknown |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation.  You should also provide all documentation or**

502180406

2

Exhibit A

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. **PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE: IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | X |

EXHIBIT A

9. Have you or any member of your family
   ever filed a claim under the Securities
   Investor Protection Act of 1970?  if                                    X
   so, give name of that broker.

   Please list the full name and address of anyone assisting you in the
   preparation of this claim form:   *None*

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date 01/07/2009       Signature James S. Vertu

Date _____       Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                              Exhibit A

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

James S. Werter Revocable Trust dtd 9/25/03
1201 Arapaho Avenue #B
St. Augustine, FL 32084

Dear James S. Werter Revocable Trust dtd 9/25/03:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZA979 designated as Claim Number 000086:

Your claim for a credit balance of $1,150,000.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,773,547.58), as more fully set forth in Table 1 annexed hereto and made a part

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.


Exhibit B

hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $958,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($815,547.58) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

Exhibit D

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3

Exhibit B

| Table I | | |
| --- | --- | --- |
| DEPOSITS | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 1/22/1993 | CHECK | $380,000.00 |
| 8/22/1994 | CHECK | $15,000.00 |
| 3/10/1995 | CHECK | $5,000.00 |
| 8/14/1995 | CHECK | $10,000.00 |
| 4/12/1996 | CHECK | $20,000.00 |
| 9/23/1996 | CHECK | $45,000.00 |
| 11/29/1996 | CHECK | $20,000.00 |
| 9/22/1997 | CHECK | $8,000.00 |
| 7/2/1998 | CHECK | $10,000.00 |
| 10/19/1998 | CHECK | $125,000.00 |
| 12/17/1998 | CHECK | $10,000.00 |
| 12/29/1998 | CHECK RETURNED | ($10,000.00) |
| 1/15/1999 | CHECK | $30,000.00 |
| 1/29/1999 | CHECK | $30,000.00 |
| 2/5/1999 | CHECK | $100,000.00 |
| 3/26/1999 | CHECK | $40,000.00 |
| 5/12/1999 | CHECK WIRE | $35,000.00 |
| 9/24/1999 | CHECK | $15,000.00 |
| 11/5/1999 | CHECK | $30,000.00 |
| 11/1/2002 | CHECK | $40,000.00 |
| **Total Deposits:** | | $958,000.00 |
| WITHDRAWALS | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 4/8/1993 | CHECK | ($11,547.58) |
| 6/21/1993 | CHECK | ($20,000.00) |
| 7/13/1993 | CHECK | ($14,713.30) |
| 7/22/1993 | CXL CHECK 7/13/93 | $14,713.30 |
| 3/1/1994 | CHECK | ($15,000.00) |
| 5/3/1994 | CHECK | ($5,000.00) |
| 6/1/1994 | CHECK | ($5,000.00) |
| 6/22/1994 | CHECK | ($5,000.00) |
| 6/27/1994 | CHECK | ($5,000.00) |
| 3/1/1995 | CHECK | ($20,000.00) |
| 6/22/1995 | CHECK | ($5,000.00) |
| 10/19/1995 | CHECK | ($5,000.00) |
| 12/5/1995 | CHECK | ($5,000.00) |
| 4/2/1996 | CHECK | ($30,000.00) |

Exhibit B

| | | |
|---|---|---|
| 6/7/1996 | CHECK | ($40,000.00) |
| 8/5/1996 | CHECK | ($5,000.00) |
| 10/24/1996 | CHECK | ($3,000.00) |
| 11/21/1996 | CHECK | ($8,000.00) |
| 12/16/1996 | CHECK | ($8,000.00) |
| 1/24/1997 | CHECK | ($5,000.00) |
| 2/21/1997 | CHECK | ($4,000.00) |
| 3/21/1997 | CHECK | ($40,000.00) |
| 5/21/1997 | CHECK | ($5,000.00) |
| 6/19/1997 | CHECK | ($5,000.00) |
| 7/2/1997 | CHECK | ($20,000.00) |
| 11/21/1997 | CHECK | ($4,000.00) |
| 11/26/1997 | CHECK | ($4,000.00) |
| 2/5/1998 | CHECK | ($5,000.00) |
| 4/2/1998 | CHECK | ($25,000.00) |
| 4/24/1998 | CHECK | ($5,000.00) |
| 5/12/1998 | CHECK | ($5,000.00) |
| 8/12/1998 | CHECK | ($5,000.00) |
| 9/11/1998 | CHECK | ($5,000.00) |
| 9/24/1998 | CHECK | ($40,000.00) |
| 9/29/1998 | CHECK | ($10,000.00) |
| 6/3/1999 | CHECK | ($10,000.00) |
| 2/24/2000 | CHECK | ($5,000.00) |
| 3/27/2000 | CHECK | ($100,000.00) |
| 5/24/2000 | CHECK | ($10,000.00) |
| 6/19/2000 | CHECK | ($5,000.00) |
| 7/12/2000 | CHECK | ($5,000.00) |
| 8/1/2000 | CHECK | ($5,000.00) |
| 9/5/2000 | CHECK | ($10,000.00) |
| 10/18/2000 | CHECK | ($15,000.00) |
| 11/14/2000 | CHECK | ($10,000.00) |
| 12/20/2000 | CHECK | ($10,000.00) |
| 1/31/2001 | CHECK | ($5,000.00) |
| 3/30/2001 | CHECK | ($100,000.00) |
| 5/22/2001 | CHECK | ($5,000.00) |
| 7/2/2001 | CHECK | ($5,000.00) |
| 8/7/2001 | CHECK | ($5,000.00) |
| 9/5/2001 | CHECK | ($5,000.00) |
| 9/10/2001 | CHECK | ($5,000.00) |
| 11/5/2001 | CHECK | ($10,000.00) |
| 11/20/2001 | CHECK | ($10,000.00) |
| 12/11/2001 | CHECK | ($5,000.00) |
| 1/17/2002 | CHECK | ($5,000.00) |
| 2/13/2002 | CHECK | ($5,000.00) |
| 3/14/2002 | CHECK | ($5,000.00) |
| 4/2/2002 | CHECK | ($50,000.00) |

5

Exhibit B

| | | |
|---|---|---|
| 6/3/2002 | CHECK | ($25,000.00) |
| 8/13/2002 | CHECK | ($25,000.00) |
| 11/19/2002 | CHECK | ($10,000.00) |
| 1/15/2003 | CHECK | ($5,000.00) |
| 3/19/2003 | CHECK | ($5,000.00) |
| 4/1/2003 | CHECK | ($45,000.00) |
| 4/25/2003 | CHECK | ($5,000.00) |
| 5/6/2003 | CHECK | ($5,000.00) |
| 7/8/2003 | CHECK | ($5,000.00) |
| 7/29/2003 | CHECK | ($10,000.00) |
| 8/6/2003 | CHECK | ($5,000.00) |
| 8/26/2003 | CHECK | ($5,000.00) |
| 9/9/2003 | CHECK | ($5,000.00) |
| 9/23/2003 | CHECK | ($10,000.00) |
| 10/17/2003 | CHECK | ($5,000.00) |
| 10/27/2003 | CHECK | ($5,000.00) |
| 11/12/2003 | CHECK | ($15,000.00) |
| 12/2/2003 | CHECK | ($5,000.00) |
| 12/15/2003 | CHECK | ($5,000.00) |
| 1/23/2004 | CHECK | ($10,000.00) |
| 2/19/2004 | CHECK | ($5,000.00) |
| 3/2/2004 | CHECK | ($5,000.00) |
| 3/23/2004 | CHECK | ($5,000.00) |
| 3/29/2004 | CHECK | ($35,000.00) |
| 6/1/2004 | CHECK | ($5,000.00) |
| 7/20/2004 | CHECK | ($5,000.00) |
| 8/30/2004 | CHECK | ($5,000.00) |
| 9/15/2004 | CHECK | ($5,000.00) |
| 11/12/2004 | CHECK | ($4,000.00) |
| 12/10/2004 | CHECK | ($4,000.00) |
| 12/28/2004 | CHECK | ($5,000.00) |
| 1/26/2005 | CHECK | ($5,000.00) |
| 2/15/2005 | CHECK | ($5,000.00) |
| 3/7/2005 | CHECK | ($5,000.00) |
| 3/22/2005 | CHECK | ($5,000.00) |
| 4/4/2005 | CHECK | ($40,000.00) |
| 5/10/2005 | CHECK | ($5,000.00) |
| 6/1/2005 | CHECK | ($5,000.00) |
| 6/24/2005 | CHECK | ($5,000.00) |
| 7/19/2005 | CHECK | ($5,000.00) |
| 7/26/2005 | CHECK | ($5,000.00) |
| 8/30/2005 | CHECK | ($5,000.00) |
| 9/15/2005 | CHECK | ($40,000.00) |
| 10/25/2005 | CHECK | ($5,000.00) |
| 11/22/2005 | CHECK | ($5,000.00) |
| 12/1/2005 | CHECK | ($5,000.00) |

Exhibit B

| | | |
|---|---|---|
| 12/8/2005 | CHECK | ($5,000.00) |
| 12/27/2005 | CHECK | ($5,000.00) |
| 1/9/2006 | CHECK | ($5,000.00) |
| 1/26/2006 | CHECK | ($5,000.00) |
| 2/7/2006 | CHECK | ($5,000.00) |
| 2/23/2006 | CHECK | ($5,000.00) |
| 2/28/2006 | CHECK | ($5,000.00) |
| 3/15/2006 | CHECK | ($5,000.00) |
| 3/28/2006 | CHECK | ($25,000.00) |
| 4/21/2006 | CHECK | ($5,000.00) |
| 5/11/2006 | CHECK | ($5,000.00) |
| 6/22/2006 | CHECK | ($5,000.00) |
| 7/18/2006 | CHECK | ($5,000.00) |
| 8/8/2006 | CHECK | ($5,000.00) |
| 8/22/2006 | CHECK | ($5,000.00) |
| 8/30/2006 | CHECK | ($5,000.00) |
| 9/14/2006 | CHECK | ($5,000.00) |
| 9/25/2006 | CHECK | ($10,000.00) |
| 10/16/2006 | CHECK | ($70,000.00) |
| 11/9/2006 | CHECK | ($5,000.00) |
| 11/22/2006 | CHECK | ($5,000.00) |
| 11/28/2006 | CHECK | ($5,000.00) |
| 12/18/2006 | CHECK | ($5,000.00) |
| 1/3/2007 | CHECK | ($5,000.00) |
| 1/9/2007 | CHECK | ($5,000.00) |
| 1/23/2007 | CHECK | ($5,000.00) |
| 2/2/2007 | CHECK | ($5,000.00) |
| 2/8/2007 | CHECK | ($10,000.00) |
| 2/26/2007 | CHECK | ($10,000.00) |
| 3/5/2007 | CHECK | ($10,000.00) |
| 3/28/2007 | CHECK | ($5,000.00) |
| 4/3/2007 | CHECK | ($50,000.00) |
| 4/27/2007 | CHECK | ($5,000.00) |
| 5/7/2007 | CHECK | ($5,000.00) |
| 5/25/2007 | CHECK | ($5,000.00) |
| 5/31/2007 | CHECK | ($5,000.00) |
| 6/21/2007 | CHECK | ($7,000.00) |
| 6/26/2007 | CHECK | ($10,000.00) |
| 7/18/2007 | CHECK | ($5,000.00) |
| 7/31/2007 | CHECK | ($5,000.00) |
| 8/21/2007 | CHECK | ($5,000.00) |
| 8/27/2007 | CHECK | ($5,000.00) |
| 9/6/2007 | CHECK | ($5,000.00) |
| 10/1/2007 | CHECK | ($5,000.00) |
| 10/11/2007 | CHECK | ($5,000.00) |
| 10/26/2007 | CHECK | ($5,000.00) |

Exhibit B

| | | |
|---|---|---|
| 11/6/2007 | CHECK | ($25,000.00) |
| 11/9/2007 | CHECK | ($10,000.00) |
| 11/20/2007 | CHECK | ($5,000.00) |
| 11/27/2007 | CHECK | ($5,000.00) |
| 12/5/2007 | CHECK | ($5,000.00) |
| 12/14/2007 | CHECK | ($5,000.00) |
| 12/27/2007 | CHECK | ($5,000.00) |
| 1/8/2008 | CHECK | ($5,000.00) |
| 1/29/2008 | CHECK | ($5,000.00) |
| 2/29/2008 | CHECK | ($5,000.00) |
| 4/8/2008 | CHECK | ($10,000.00) |
| 5/1/2008 | CHECK | ($4,000.00) |
| 5/27/2008 | CHECK | ($5,000.00) |
| 7/1/2008 | CHECK | ($4,000.00) |
| 7/22/2008 | CHECK | ($5,000.00) |
| 7/24/2008 | CHECK | ($5,000.00) |
| 8/11/2008 | CHECK | ($5,000.00) |
| 8/21/2008 | CHECK | ($8,000.00) |
| 9/2/2008 | CHECK | ($5,000.00) |
| 9/12/2008 | CHECK | ($5,000.00) |
| 9/23/2008 | CHECK | ($5,000.00) |
| 10/2/2008 | CHECK | ($5,000.00) |
| 10/22/2008 | CHECK | ($5,000.00) |
| 11/4/2008 | CHECK | ($5,000.00) |
| 11/19/2008 | CHECK | ($5,000.00) |
| 12/3/2008 | CHECK | ($5,000.00) |
| **Total Withdrawals:** | | ($1,773,547.58) |
| | | |
| **Total deposits less withdrawals:** | | ($815,547.58) |

095879, 000001, 300033212.1

8



MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher A. Seeger
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

*Attorneys for Martin Rappaport*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Martin Rappaport, by and through his attorneys, hereby objects to the Notice of Trustee's

Determination of Claim dated May 15, 2009 ("Determination Letter"), attached as Exhibit A, as

described herein.



## BACKGROUND

1.    Martin Rappaport is a "customer," as defined by the Securities Investor Protection Act ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.    Mr. Rappaport's final BMIS statement, dated November 30, 2008, states that he owns securities valued at $16,838,043.73 ("Final BMIS Statement").

3.    On December 3, 2008, Mr. Rappaport wired $4,000,000 to BMIS to invest on his behalf.

4.    On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

5.    On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

6.    The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

2


Exhibit C

7.    On or about March 3, 2009, Mr. Rappaport submitted a customer claim form to SIPC, setting forth his claim in the amount of $20,838,043.73. *See* Rappaport Customer Claim for Acct. No. 1-CM701 (Exhibit B) ("Rappaport Customer Claim"). This figure is comprised of $16,838,043.73, the amount set forth on Mr. Rappaport's Final BMIS Statement, plus the $4,000,000 that Mr. Rappaport wired to BMIS on December 3, 2008. *Id.* Mr. Rappaport's Final BMIS Statement and documentation relating to his December 3, 2008 wire transfer were submitted with the Rappaport Customer Claim. *See* Rappaport Customer Claim (Exhibit B).

8.    On May 15, 2009, the BMIS Trustee sent Mr. Rappaport the Determination Letter allowing Mr. Rappaport's claim only in the amount of $12,600,000.00, rather than $20,838,043.73, the total amount that Mr. Rappaport claimed. *See* Determination Letter (Exhibit A).

9.    Mr. Rappaport hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

10.    First Objection. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with Mr. Rappaport's Customer Claim was his final BMIS statement showing a final balance of $16,838,043.73 and documents demonstrating that Mr. Rappaport wired an additional $4,000,000 to BMIS on December 3, 2008. *See* Rappaport Customer Claim (Exhibit B). The Final BMIS statement is the best evidence of the amount owed based on the Debtor's books and records, and the Trustee has admitted the wired amount. *See* Determination

3



Letter at Table 1 (Exhibit A). Accordingly, the claim should be allowed in the full amount of $20,838,043.73.

11.  **Second Objection.** The Trustee has set forth no legal basis for disallowing the Rappaport Customer Claim in full as filed. The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) the "claim is allowed for . . . the amount of money you deposited with BLMIS for the purchase of securities as outlined in Table 1." Determination Letter at 1 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)  does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)  is inadequate to rebut the prima facie validity of the Rappaport Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)  violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.,* Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.,* No. 01-16034, 2003 Bankr. LEXIS 2261, at * (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

12.  **Third Objection.** 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Rappaport Customer Claim on the ground that

4

 Exhibit C

"net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1. This is incorrect for the following reasons:

(a)    The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)    SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by Mr. Rappaport stated that he owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing

5


Exhibit C

date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Mr. Rappaport's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

(c)    The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck:  [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court:  Even if they're not there.
>
> Harbeck:  Correct.
>
> Court:  In other words, if the money was diverted, converted --
>
> Harbeck:  And the securities were never purchased.
>
> Court:  Okay.
>
> Harbeck:  And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed



Exhibit C

securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004). Mr. Rappaport is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, his claim should be recognized in full.

13.    In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Mr. Rappaport is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a)    Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y.

7


Exhibit C

Gen. Oblig. § 5-501, *et seq.* Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Mr. Rappaport.

(b)   Under New York law, which is applicable here, customers are entitled to any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Mr. Rappaport's deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

14.   Fourth Objection. The BMIS Trustee's action in reducing the amount shown on Mr. Rappaport's Customer Claim by any prior gains reflected on his final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

15.   Fifth Objection. The BMIS Trustee has sought to condition Mr. Rappaport's receipt of any SIPC funds (including undisputed amounts) on the execution of a Partial Assignment and Release that would "release and forever discharge the SIPA Trustee and SIPC . . . from any and all claims arising out of or relating to [Mr. Rappaport's] BMIS Account, the Customer Claim filed with the SIPA Trustee . . . , and any and all circumstances giving rise to the Customer Claim . . . ." *See* Determination Letter and Partial Assignment and Release attached thereto at 2-3 (Exhibit A). There is no legal basis for requiring such a Partial

8


Exhibit C

Assignment and Release, and the Trustee's actions attempt to compel Mr. Rappaport to give up substantial rights which are disputed as a condition to receiving amounts that are undisputed. Indeed, conditioning the payment of funds to which customers are statutorily entitled on the execution of a release is contrary to the provisions of SIPA which direct that customer claims be paid "promptly." *See* 15 U.S.C. § 78fff(a)(1) (noting that one of the purposes of a SIPA liquidation proceeding is "to distribute customer property and . . . otherwise satisfy net equity claims of customers . . . as *promptly as possible* after the appointment of a trustee."); 15 U.S.C. § 78fff-2(b) ("[T]he trustee shall *promptly* discharge . . . all obligations of the debtor to a customer . . . by the . . . making of payments to or for the account of such customer."). Moreover, the demand for a release and assignment violates specific provisions of SIPA providing limited subrogation rights to the BMIS Trustee, which do not include the assignment and release sought by the BMIS Trustee. *See, e.g.,* 15 U.S.C. § 78fff(a)(3) (providing that Trustee has "rights of subrogation as provided in this chapter"); 15 U.S.C. § 78fff-2(c)(3) (providing that Trustee's rights as subrogee are subordinate to rights of customers to customer property). In addition, the Trustee's demand is both unconscionable and contrary to public policy and should be stricken.

16.    Sixth Objection. SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claims, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 USCS § 78fff-3 ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). Here, the BMIS Trustee has acknowledged in the Determination Letter $12,600,000 of Mr. Rappaport's

9



claim is undisputed -- an amount far in excess of the $500,000 amount Mr. Rappaport is entitled to receive from SIPC. As such, SIPC is obligated to pay Mr. Rappaport $500,000 regardless of how the disputed portion of the claim is resolved. Under these circumstances, the BMIS Trustee's failure to pay the $500,000 immediately violates SIPA's mandate that payment be "prompt," is not justified by any statutory provision, unjustly enriches SIPC, and seeks to compel Mr. Rappaport into surrendering a significant portion of his claim without consideration or compensation in order to obtain funds to which he is entitled as a matter of statute. Mr. Rappaport is entitled to receive immediate payment of $500,000, plus interest from the date of the determination and appropriate equitable relief as determined by the Court.

## RELIEF REQUESTED

17.    For the reasons stated herein, the Rappaport Customer Claim should be allowed in its entirety.

18.    For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Rappaport in the amount of $500,000, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

19.    The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Mr. Rappaport will file a response.

20.    Mr. Rappaport requests such other relief as may be just and equitable.

10



## CONCLUSION

21.     Mr. Rappaport reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Rappaport's right to object on any additional grounds.

22.     Mr. Rappaport reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

23.     Mr. Rappaport reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24.     Mr. Rappaport incorporates by reference all reservations of rights set forth in the Rappaport Customer Claim.

Dated: June 12, 2009

<div style="margin-left:40%">

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher A. Seeger
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Martin Rappaport*

</div>

11

Exhibit C