# EXHIBIT B

**CUSTOMER CLAIM**

Bernard L. Madoff Investment Securities LLC
Case No 08-01789-BRL
U.S. Bankruptcy Court for the Southern District of New York
Claim Number:        **008177**

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

**RECEIVED**

MAR 27 2009

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

*Cell*
OFFICE: _561) 307-4946_

HOME: _561) 799-6518_

Account Number:    1ZA081

Taxpayer I.D. Number (Social Security No.)
_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_

P J F N INVESTORS L P
ATTN: GILBERT FISCH
108 WINSOR POINTE DRIVE
PALM BEACH GARDENS, FL  33418

(If incorrect, please change)

**NOTE:**    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of **December 11, 2008**:
  a.    The Broker owes me a Credit (Cr.) Balance of        $_____
  b.    I owe the Broker a Debit (Dr.) Balance of        $_____

1,178211 - money in    30,453. Claim

502180406

1147758  money out

1

c.   If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                                           $_____

d.   If balance is zero, insert "None."                          _____

2.   Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a.   The Broker owes me securities | ✓ | |
| b.   I owe the Broker securities | | |

c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | *See attached list* | | |
| | | | |
| | | | |
| | | | |

Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.     Have you or any member of your family
ever filed a claim under the Securities
Investor Protection Act of 1970? if
so, give name of that broker.         _____    ✓ _____

Please list the full name and address of anyone assisting you in the
preparation of this claim form:_____

_____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _3/5/09_       Signature _Gilbert R. Tisch_

Date _3/5/09_       Signature _Marcia V. Tisch_

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CUSTOMER CLAIM**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Attachment to Item 2. c. List of Securities

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes ME (Long) | I Owe the Broker (Short) |
| 11/06/08 | AT&T INC | 3763 | |
| 11/06/08 | ABBOTT LABORATORIES | 1007 | |
| 11/06/08 | AMGEN INC | 689 | |
| 11/06/08 | APPLE | 583 | |
| 11/06/08 | BANK OF AMERICA | 3180 | |
| 11/06/08 | CHEVRON CORP | 1325 | |
| 11/06/08 | CISCO SYSTEMS INC | 3869 | |
| 11/06/08 | CITI GROUP INC | 3445 | |
| 11/06/08 | COCA COLA CO | 1272 | |
| 11/06/08 | COMCAST CORP CL A | 1908 | |
| 11/06/08 | CONOCOPHILIPS | 954 | |
| 11/06/08 | EXXON MOBIL | 3339 | |
| 11/06/08 | GENERAL ELECTRIC CO | 6731 | |
| 11/06/08 | GOOGLE | 159 | |
| 11/06/08 | HEWLETT PACKARD CO | 1590 | |

## CUSTOMER CLAIM

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Attachment to Item 2. c. List of Securities

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes ME (Long) | I Owe the Broker (Short) |
| 11/06/08 | INTEL CORP | 3657 | |
| 11/06/08 | INTERNATIONAL BUSINESS MACHS | 901 | |
| 11/06/08 | J.P. MORGAN CHASE & CO | 2385 | |
| 11/06/08 | JOHNSON & JOHNSON | 1749 | |
| 11/06/08 | MCDONALDS CORP | 742 | |
| 11/06/08 | MERK & CO | 1378 | |
| 11/06/08 | MICRSOFT CORP | 5035 | |
| 11/06/08 | ORACLE | 2544 | |
| 11/06/08 | PEPSICO INC | 1007. | |
| 11/06/08 | PFIZER INC | 4293 | |
| 11/06/08 | PHILLIP MORRIS INTERNATIONAL | 1325 | |
| 11/06/08 | PROCTER & GAMBLE CO | 1908 | |
| 11/06/08 | QUALCOMM INC | 1060 | |
| 11/06/08 | SCHLUMBERGER LTD | 795 | |
| NO CONF SLIP | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 16,527 | |

CUSTOMER CLAIM

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Attachment to Item 2. c. List of Securities

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes ME (Long) | I Owe the Broker (Short) |
| 11/06/08 | U S BANCORP | 1113 | |
| 11/06/08 | UNITED PARCEL SVC INC CLASS B | 636 | |
| 11/19/08 | U S TREASURY BILL DUE 03/26/2009 03/09/2009 | 150,000 | |
| 11/06/08 | UNITED TECHNOLOGIES CORP | 636 | |
| 11/06/08 | VERIZON COMMUNICATIONS | 1802 | |
| 11/06/08 | WAL-MART STORES INC | 1378 | |
| 11/06/08 | WELLS FARGO & CO NEW | 2226 | |
| 11/14/2008 | S & P 100 INDEX DECEMBER 430 CALL | | 53 |
| 11/14/2008 | S & P 100 INDEX DECEMBER 420 PUT | 53 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## *P J F N INVESTORS LIMITED PARTNERSHIP*
### *ACCOUNT NUMBER  1ZAO 81-3   1ZAO 81-4*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities, LLC
Claims Processing Center
2100 McKinney Ave.  Suite 800
Dallas, Texas 75201

Dear Mr. Picard:

Enclosed is the following:

- Customer claim form listing all securities
- November 30,  2008 monthly statement
- Confirmation slips for all securities listed (will send if needed)
- Quarterly reports for 2008 ending 9/30/08 (missing '01)
- Portfolio management reports of the last quarter from 2002 to 9/30/08
- Copy of PJFN Investors limited partnership.

We never complained about the management of our account.  Our accountant has
provided the enclosed worksheet  for Gilbert and Marcia Fisch, the general partrners.
Our four sons and daughter in law who are limited partners will be filing separately.

The losses incurred have created an acute financial crises for my wife and myself .
This information is compiled to the best of my ability.
  Money In 1,178,211.        Money Out 1,147,758        Claim 30,453

Sincerely,

*Gilbert R. Fisch   3/5/09*
*Marcia V. Fisch  3/5/09*

Gilbert R. Fisch, M.D. &   Marcia V. Fisch        Phone    561 799 6518
108 Windsor  Pointe Drive                               Fax        561 799 0219
Palm Beach Gardens, Florida 33418                 E-mail   Mfisch1043@
                                                                            Aol.com
                                                                  Cell       561 307 4946

PORTFOLIO MANAGEMENT REPORT AS OF   3/31/08

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


     P J F N INVESTORS L P          1-ZA081-3
     ATTN: GILBERT FISCH

     108 WINSOR POINTE DRIVE
     PALM BEACH GARDENS    FL 33418


STARTING EQUITY FOR CURRENT YEAR                     2,387,426.18CR
CAPITAL ADDITIONS                                       15,500.00CR
CAPITAL WITHDRAWALS                                     75,000.00-
REALIZED P/L FOR CURRENT YEAR                           20,600.13CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS                  705.00-
CURRENT CASH BALANCE                                         .31CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS        2,347,821.00    NET LONG
TOTAL EQUITY                                         2,347,821.31CR

ANNUALIZED RETURN FOR CURRENT YEAR       3.35 %

---

PORTFOLIO MANAGEMENT REPORT AS OF   6/30/08


THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


     P J F N INVESTORS L P          1-ZA081-3                              M
     ATTN: GILBERT FISCH

     108 WINSOR POINTE DRIVE
     PALM BEACH GARDENS    FL 33418


STARTING EQUITY FOR CURRENT YEAR                     2,387,426.18CR
CAPITAL ADDITIONS                                       15,500.00CR
CAPITAL WITHDRAWALS                                    135,000.00-
REALIZED P/L FOR CURRENT YEAR                          146,794.04CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS                2,691.75CR
CURRENT CASH BALANCE                                         .47CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS        2,417,411.50    NET LONG
TOTAL EQUITY                                         2,417,411.97CR

ANNUALIZED RETURN FOR CURRENT YEAR      12.81 %

PORTFOLIO MANAGEMENT REPORT AS OF   9/30/08

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


    P J F N INVESTORS L P              1-ZA081-3                              M
    ATTN: GILBERT FISCH

    108 WINSOR POINTE DRIVE
    PALM BEACH GARDENS    FL 33418


STARTING EQUITY FOR CURRENT YEAR                  2,387,426.18CR
CAPITAL ADDITIONS                                    15,500.00CR
CAPITAL WITHDRAWALS                                  160,000.00-
REALIZED P/L FOR CURRENT YEAR                       184,456.00CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS             2,326.50CR
CURRENT CASH BALANCE                                       .68CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS     2,429,708.00    NET LONG
TOTAL EQUITY                                      2,429,708.68CR

ANNUALIZED RETURN FOR CURRENT YEAR    10.77 %

Missing '01

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/02

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

GILBERT R FISCH                       1-ZA081-3
OR MARCIA V FISCH  J/T WROS

106 NO VILLAGE WAY
JUPITER              FL 33458

| | |
|---|---|
| STARTING EQUITY FOR CURRENT YEAR | 1,656,674.87CR |
| CAPITAL ADDITIONS | 310,000.00CR |
| CAPITAL WITHDRAWALS | 230,000.00- |
| REALIZED P/L FOR CURRENT YEAR | 242,934.54CR |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | |
| CURRENT CASH BALANCE | .16CR |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | 1,979,609.25  NET LONG |
| TOTAL EQUITY | 1,979,609.41CR |

ANNUALIZED RETURN FOR CURRENT YEAR     13.98 %

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/03

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

```
P J F N INVESTORS L P            1-ZA081-3
ATTN: GILBERT FISCH

106 NO VILLAGE WAY
JUPITER            FL 33458
```

```
STARTING EQUITY FOR CURRENT YEAR                    1,979,609.41CR
CAPITAL ADDITIONS                                     615,000.00CR
CAPITAL WITHDRAWALS                                  1,200,000.00-
REALIZED P/L FOR CURRENT YEAR                         194,204.03CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                         .94CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS       1,588,812.50    NET LONG
TOTAL EQUITY                                        1,588,813.44CR

ANNUALIZED RETURN FOR CURRENT YEAR    10.34 %
```

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/04

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

P J F N INVESTORS L P          1-ZA081-3
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS   FL 33418

| | |
|---|---|
| STARTING EQUITY FOR CURRENT YEAR | 1,588,813.44CR |
| CAPITAL ADDITIONS | 501,800.00CR |
| CAPITAL WITHDRAWALS | 765,000.00- |
| REALIZED P/L FOR CURRENT YEAR | 175,958.42CR |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | |
| CURRENT CASH BALANCE | .86CR |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | 1,501,571.00   NET LONG |
| TOTAL EQUITY | 1,501,571.86CR |

ANNUALIZED RETURN FOR CURRENT YEAR   10.55 %

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/05

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

```
P J F N INVESTORS L P              1-ZA081-3
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL 33418
```

```
STARTING EQUITY FOR CURRENT YEAR                 1,501,571.86CR
CAPITAL ADDITIONS                                    80,000.00CR
CAPITAL WITHDRAWALS                                  10,000.00-
REALIZED P/L FOR CURRENT YEAR                       156,472.05CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                       .41CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS    1,728,043.50    NET LONG
TOTAL EQUITY                                     1,728,043.91CR

ANNUALIZED RETURN FOR CURRENT YEAR    9.95 %
```

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/06

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


P J F N INVESTORS L P          1-ZA081-3
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL 33418


| | | |
|---|---|---|
| STARTING EQUITY FOR CURRENT YEAR | 1,728,043.91CR | |
| CAPITAL ADDITIONS | 249,400.00CR | |
| CAPITAL WITHDRAWALS | | |
| REALIZED P/L FOR CURRENT YEAR | 240,052.76CR | |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | | |
| CURRENT CASH BALANCE | .67CR | |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | 2,217,496.00 | NET LONG |
| TOTAL EQUITY | 2,217,496.67CR | |

ANNUALIZED RETURN FOR CURRENT YEAR    13.25 %

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/07

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.


P J F N INVESTORS L P          1-ZA081-3
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL 33418


STARTING EQUITY FOR CURRENT YEAR                    2,217,496.67CR
CAPITAL ADDITIONS                                      44,000.00CR
CAPITAL WITHDRAWALS                                   125,000.00-
REALIZED P/L FOR CURRENT YEAR                         250,929.51CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS
CURRENT CASH BALANCE                                        .18CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS       2,387,426.00   NET LONG
TOTAL EQUITY                                        2,387,426.18CR

ANNUALIZED RETURN FOR CURRENT YEAR      11.57 %

PORTFOLIO MANAGEMENT REPORT AS OF   9/30/08

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

```
P  J F N INVESTORS L P          1-ZA081-3                              M
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL 33418
```

```
STARTING EQUITY FOR CURRENT YEAR                   2,387,426.18CR
CAPITAL ADDITIONS                                     15,500.00CR
CAPITAL WITHDRAWALS                                   160,000.00-
REALIZED P/L FOR CURRENT YEAR                        184,456.00CR
UNREALIZED P/L ON OPEN SECURITY POSITIONS              2,326.50CR
CURRENT CASH BALANCE                                       .68CR
NET MARKET VALUE OF OPEN SECURITIES POSITIONS      2,429,708.00    NET LONG
TOTAL EQUITY                                       2,429,708.68CR

ANNUALIZED RETURN FOR CURRENT YEAR     10.77 %
```

ACCOUNTANTS
SUPPLY HOUSE    GREEN-TINT NO. A5604
BUFF NO. A7704

| | Initials | Date |
|---|---|---|
| Prepared By | | |
| Approved By | | |

DR. GILBERT + MARCIA FISCH
(TAXABLE A/C)

| | | (1) FMV | (2) CONTRIB | (3) W/D | (4) BALANCE | |
|---|---|---|---|---|---|---|
| 1-1-01 | BEG BAL | | | | 100 2411 | 1 |
| | | | | | | 2 |
| 1-10-01 | W/D | | | 〈 29642 〉 | | 3 |
| | | | | | | 4 |
| 4-6-01 | W/D | | | 〈 64690 〉 | | 5 |
| | | | | | | 6 |
| 6-1-01 | CONTRIB | | 20000 | | | 7 |
| | | | | | | 8 |
| 7-9-01 | W/D | | | 〈 43741 〉 | | 9 |
| | | | | | | 10 |
| 1-29-02 | W/D | | | 〈 25000 〉 | | 11 |
| | | | | | | 12 |
| 1-31-02 | W/D | | | 〈 25000 〉 | | 13 |
| | | | | | | 14 |
| 3-27-02 | W/D | | | 〈 50000 〉 | | 15 |
| | | | | | | 16 |
| 3-24-03 | CONTRIB | | 65800 | | | 17 |
| | | | | | | 18 |
| 7-29-03 | W/D | | | 〈 50000 〉 | | 19 |
| 3-11-04 | W/D - TRANSFER TO BE A/C TO PAY BILLS | | | 〈 2477 〉 | | 20 |
| 8-31-04 | W/D | | | 〈 125000 〉 | | 21 |
| | | | | | | 22 |
| 11-17-04 | W/D | | | 〈 390000 〉 | | 23 |
| 12-31-04 | BAL - FMV | 1080034 | | | | 24 |
| 1-18-05 | CONTRIB | | 60000 | | | 25 |
| | | | | | | 26 |
| 5-3-05 | W/D - TRANSFER TO BE A/C | | | 〈 7208 〉 | | 27 |
| | | | | | | 28 |
| 3-16-07 | W/D | | | 〈 50000 〉 | | 29 |
| | | | | | | 30 |
| 8-23-07 | W/D | | | 〈 25000 〉 | | 31 |
| | | | | | | 32 |
| 9-20-07 | W/D | | | 〈 25000 〉 | | 33 |

ACCOUNTANTS
SUPPLY HOUSE

GREEN-TINT NO. A5924
BUFF NO. A7724

|  | Initials | Date |
|---|---|---|
| Prepared By |  |  |
| Approved By |  |  |

DR. GILBERT + MARCIA FISCH
(TAXABLE A/C)

| | | (1) FMV | (2) CONTRIB | (3) W/D | (4) BALANCE |
|---|---|---|---|---|---|
| 1-1-01 | BEG BAL | | | | 1002411 |
| 1-10-01 | W/D | | | ‹29642› | |
| 4-6-01 | W/D | | | ‹64670.› | |
| 6-1-01 | CONTRIB | | 20000 | | |
| 7-9-01 | W/D | | | ‹43741› | |
| 1-29-02 | W/D | | | ‹25000› | |
| 1-31-02 | W/D | | | ‹25000.› | |
| 3-27-02 | W/D | | | ‹50000› | |
| 3-24-03 | CONTRIB | | 65500 | | |
| 7-29-03 | W/D | | | ‹50000› | |
| 3-11-04 | W/D - TRANSFER TO BK A/C TO PAY BILLS | | | ‹2477› | |
| 8-31-04 | W/D | | | ‹25000› | |
| 11-17-04 | W/D | | | ‹390000› | |
| 12-31-04 | BAL - FMV | 1080034 | | | |
| 1-18-05 | CONTRIB | | 60000 | | |
| 5-3-05 | W/D - TRANSFER TO BK A/C | | | ‹7208› | |
| 3-16-07 | W/D | | | ‹50000› | |
| 8-23-07 | W/D | | | ‹25000› | |
| 9-20-07 | W/D | | | ‹25000› | |
| 11-30-07 | W/D | | | ‹25000› | |
| 2-8-08 | W/D | | | ‹25000› | |
| 3-18-08 | W/D | | | ‹50000› | |
| 4-1-08 | W/D | | | ‹10000› | |
| | BAL FWD | | | | |

ACCOUNTANTS
SUPPLY HOUSE

GREEN-TINT NO. A6604
BUFF NO. A7704

| | Initials | Date |
|---|---|---|
| Prepared By | | |
| Approved By | | |

## Dr. Gilbert + Marcia Fisch
### (Taxable a/c)

| | | | (1) | (2) CONTRIB | (3) W/D | (4) BALANCE | |
|---|---|---|---|---|---|---|---|
| 1 | | Bal Fwd | | | | | 1 |
| 2 | | | | | | | 2 |
| 3 | 6-3-08 | W/D | | | (50000) | | 3 |
| 4 | | | | | | | 4 |
| 5 | 7-28-08 | W/D | | | (25000) | | 5 |
| 6 | | | | | | | 6 |
| 7 | 10-2-08 | W/D | | | (50000) | | 7 |
| 8 | | | | | | | 8 |
| 9 | 1-1-01 to 12-11-08 | | | 145800 | (1147758) | 453 | 9 |
| 10 | | | | 1146211 | | | 10 |
| 11 | | | | | | | 11 |
| 12 | | | | | | | 12 |
| 13 | | marcia Fisch IRA | | 30000- | | 30453 | 13 |
| 14 | | | | | | | 14 |
| 15 | | | | | | | 15 |
| 16 | | | | | | | 16 |
| 17 | | | | | | | 17 |
| 18 | | | | | | | 18 |
| 19 | | | | | | | 19 |
| 20 | | | | | | | 20 |
| 21 | | | | | | | 21 |
| 22 | | | | | | | 22 |
| 23 | | | | | | | 23 |
| 24 | | | | | | | 24 |
| 25 | | | | | | | 25 |
| 26 | | | | | | | 26 |
| 27 | | | | | | | 27 |
| 28 | | | | | | | 28 |
| 29 | | | | | | | 29 |
| 30 | | | | | | | 30 |
| 31 | | | | | | | 31 |
| 32 | | | | | | | 32 |
| 33 | | | | | | | 33 |
| 34 | | | | | | | 34 |
| 35 | | | | | | | 35 |
| 36 | | | | | | | 36 |
| 37 | | | | | | | 37 |
| 38 | | | | | | | 38 |
| 39 | | | | | | | 39 |
| 40 | | | | | | | 40 |
| 41 | | | | | | | 41 |
| 42 | | | | | | | 42 |
| 43 | | | | | | | 43 |

| | | | (1) | (2) | (3) | (4) | |
|---|---|---|---|---|---|---|---|
| | | | | CONTRIB | W/D | BALANCE | |
| 1-1-01 | | | | | | | 1 |
| | | | | | | | 2 |
| 10-25-01 | CONTRIB | | | 30000 | | 30000 | 3 |
| | | | | | | | 4 |
| | | | | | | | 5 |
| | | | | | | | 6 |
| | | | | | | | 7 |
| | | | | | | | 8 |
| | | | | | | | 9 |
| | | | | | | | 10 |
| | | | | | | | 11 |
| | | | | | | | 12 |
| | | | | | | | 13 |
| | | | | | | | 14 |
| | | | | | | | 15 |
| | | | | | | | 16 |
| | | | | | | | 17 |
| | | | | | | | 18 |
| | | | | | | | 19 |
| | | | | | | | 20 |
| | | | | | | | 21 |
| | | | | | | | 22 |
| | | | | | | | 23 |
| | | | | | | | 24 |
| | | | | | | | 25 |
| | | | | | | | 26 |
| | | | | | | | 27 |
| | | | | | | | 28 |
| | | | | | | | 29 |
| | | | | | | | 30 |
| | | | | | | | 31 |
| | | | | | | | 32 |
| | | | | | | | 33 |
| | | | | | | | 34 |
| | | | | | | | 35 |
| | | | | | | | 36 |

# BERNARD L. MADOFF
### INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P J F N INVESTORS L P
ATTN: GILBERT FISCH
108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL    33418

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-ZA061-3-0 | 11/30/08 | ****-****8019 | 1 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 147,869.38 |
| 11/12 | 2,226 | | 160 | WELLS FARGO & CO NEW | 29.800 | 66,423.80 | |
| 11/12 | 2,590 | | 1262 | HEWLETT PACKARD CO | 34.900 | 55,554.00 | |
| 11/12 | 1,378 | | 5086 | WAL-MART STORES INC | 55.830 | 76,988.74 | |
| 11/12 | 901 | | 5580 | INTERNATIONAL BUSINESS MACHS | 87.270 | 78,666.27 | |
| 11/12 | 3,339 | | 9412 | EXXON MOBIL CORP | 72.880 | 243,479.32 | |
| 11/12 | 3,657 | | 9914 | INTEL CORP | 14.510 | 53,209.07 | |
| 11/12 | 1,749 | | 14240 | JOHNSON & JOHNSON | 59.580 | 104,274.42 | |
| 11/12 | 2,385 | | 18565 | J.P. MORGAN CHASE & CO | 38.530 | 91,989.05 | |
| 11/12 | 1,272 | | 2289 | COCA COLA CO | 44.600 | 56,857.52 | |
| 11/12 | 742 | | 27217 | MCDONALDS CORP | 55.370 | 41,113.54 | |
| 11/12 | 1,378 | | 31543 | MERCK & CO | 26.550 | 39,396.90 | |
| 11/12 | 5,035 | | 35869 | MICROSOFT CORP | 21.810 | 110,014.35 | |
| 11/12 | 2,544 | | 40199 | ORACLE CORPORATION | 17.309 | 44,112.20 | |
| 11/12 | 1,007 | | 53173 | PEPSICO INC | 56.430 | 56,844.87 | |
| 11/12 | 583 | | 53675 | APPLE INC | 100.780 | 58,777.74 | |
| 11/12 | 4,293 | | 57499 | PFIZER INC | 16.940 | 72,894.42 | |
| 11/12 | 1,007 | | 58001 | ABBOTT LABORATORIES | 54.610 | 55,032.27 | |
| 11/12 | 1,908 | | 61825 | PROCTER & GAMBLE CO | 64.080 | 122,340.64 | |
| 11/12 | 689 | | 62327 | AMGEN INC | 59.160 | 40,788.24 | |
| 11/12 | 1,325 | | 66151 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 57,823.00 | |
| 11/12 | 3,180 | | 66653 | BANK OF AMERICA | 21.590 | 68,783.20 | |
| 11/12 | 1,060 | | 70477 | QUALCOMM INC | 33.770 | 35,838.20 | |
| 11/12 | 3,445 | | 70979 | CITI GROUP INC | 12.510 | 43,233.95 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PAGE: 2

PERIOD ENDING: 11/30/08

YOUR TAX PAYER IDENTIFICATION NUMBER: ******8019

YOUR ACCOUNT NUMBER: 1-ZA081-3-0

P J F N INVESTORS L P
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL    33418

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|----------|----------|------|-------------|-----------------|----------------|-----------------|
| 11/12 | 795 | | 74803 | SCHLUMBERGER LTD | 49.480 | 39,367.60 | |
| 11/12 | 1,908 | | 75305 | COMCAST CORP | 16.510 | 31,577.08 | |
| | | | | CL A | | | |
| 11/12 | 3,763 | | 79129 | AT&T INC | 27 | 101,751.00 | |
| 11/12 | 954 | | 79631 | CONOCOPHILIPS | 52.510 | 50,132.54 | |
| 11/12 | 636 | | 83455 | UNITED PARCEL SVC INC | 52.040 | 33,122.44 | |
| | | | | CLASS B | | | |
| 11/12 | 3,865 | | 83957 | CISCO SYSTEMS INC | 16.730 | 64,882.37 | |
| 11/12 | 1,113 | | 87781 | U S BANCORP | 29.530 | 32,910.89 | |
| 11/12 | 1,325 | | 88283 | CHEVRON CORP | 73.430 | 97,347.75 | |
| 11/12 | 636 | | 92207 | UNITED TECHNOLOGIES CORP | 53.120 | 33,934.76 | |
| 11/12 | 6,731 | | 92609 | GENERAL ELECTRIC CO | 19.630 | 132,396.53 | |
| 11/12 | 1,802 | | 96433 | VERIZON COMMUNICATIONS | 30.410 | 54,870.82 | |
| 11/12 | 159 | | 96935 | GOOGLE | 337.400 | 53,652.60 | |
| 11/12 | | 2,400,000 | 23358 | U S TREASURY BILL DUE 2/12/2009 2/12/2009 | 99.936 | | 2,398,464. |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 12. |
| 11/12 | | 20,141 | 18470 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 20,141. |
| 11/12 | 7,627 | | 27838 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 7,627.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | .9? |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| | BERNARD L. MADOFF | |
|---|---|---|
| MADF | INVESTMENT SECURITIES LLC | |
| | New York ☐ London | |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

P J F N INVESTORS L P
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS   FL   33418

| PERIOD ENDING | YOUR ACCOUNT NUMBER | PAGE |
|---|---|---|
| 11/30/08 | 1-ZA081-3-0 | 3 |

YOUR TAX PAYER IDENTIFICATION NUMBER
******8019

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 7,627 | 53349 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | | 7,627.00 |
| 11/19 | 150,000 | | 57860 | U.S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 149,889.00 | |
| 11/19 | 16,527 | | 62385 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | 16,527.00 | |
| | | | | NEW BALANCE | | 295,951.50 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 3,763 | | | AT&T INC | 28.360 | | |
| | 1,007 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 689 | | | AMGEN INC | 55.540 | | |
| | 583 | | | APPLE INC | 92.670 | | |
| | 3,180 | | | BANK OF AMERICA | 16.250 | | |
| | 1,325 | | | CHEVRON CORP | 79.010 | | |
| | 3,869 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 3,445 | | | CITI GROUP INC | 8.330 | | |
| | 1,272 | | | COCA COLA CO | 46.870 | | |
| | 1,908 | | | COMCAST CORP CL A | 17.340 | | |
| | 954 | | | CONOCOPHILIPS | 54.520 | | |
| | 3,939 | | | EXXON MOBIL CORP | 80.150 | | |
| | 6,731 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE  4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| | MADF | **BERNARD L. MADOFF** |
|---|---|---|
| | | INVESTMENT SECURITIES LLC |
| | | New York □ London |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

P J F N INVESTORS L P
ATTN: GILBERT FISCH

108 MINSOR POINTE DRIVE
PALM BEACH GARDENS    FL    33418

PAGE: 4
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******8019
YOUR ACCOUNT NUMBER: 1-ZA081-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 159 | | | GOOGLE | 292.960 | | |
| | 1,590 | | | HEWLETT PACKARD CO | 35.200 | | |
| | 3,657 | | | INTEL CORP | 13.300 | | |
| | 901 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 2,385 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,749 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 742 | | | MCDONALDS CORP | 58.750 | | |
| | 1,378 | | | MERCK & CO | 26.720 | | |
| | 5,035 | | | MICROSOFT CORP | 20.220 | | |
| | 2,544 | | | ORACLE CORPORATION | 16.090 | | |
| | 1,007 | | | PEPSICO INC | 56.700 | | |
| | 4,295 | | | PFIZER INC | 16.430 | | |
| | 1,325 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 1,908 | | | PROCTER & GAMBLE CO | 64.330 | | |
| | 1,060 | | | QUALCOMM INC | 33.570 | | |
| | 795 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 16,527 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 1,113 | | | U S BANCORP | 26.900 | | |
| | 636 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 150,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 636 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE   5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

P J F N INVESTORS L P
ATTN: GILBERT FISCH

108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL    33418

PERIOD ENDING: 11/30/08

PAGE: 5

YOUR ACCOUNT NUMBER: 1-ZA081-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER: ********8019

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 1,802 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,378 | | | WAL-MART STORES INC | 55.080 | | |
| | 2,228 | | | WELLS FARGO & CO NEW | 28.090 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG          SHORT | | | |
| | | | | 2,501,372.87 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Matdoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

P J F N INVESTORS L P
ATTN: GILBERT FISCH
108 WINSOR POINTE DRIVE
PALM BEACH GARDENS    FL    33418

| PAGE | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | YOUR ACCOUNT NUMBER |
|---|---|---|---|
| 5 | 11/30/08 | *******8019 | 1-ZA081-3-0 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 16,551.78 |
| | | | | GROSS PROCEEDS FROM SALES | | | 19,098,923.77 |

**PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES**

## PJFN INVESTORS LIMITED PARTNERSHIP

## AGREEMENT OF LIMITED PARTNERSHIP

AGREEMENT made as of the 18th day of November, 2003, by and among (a)(i) Gilbert R. Fisch, of Jupiter, Florida, and (ii) Marcia V. Fisch, of Jupiter Florida, as General Partners, and (b)(i) Gilbert R. Fisch, of Jupiter, Florida, (ii) Marcia V. Fisch, of Jupiter, Florida, (iii) Paul J. Fisch, of North Syracuse, New York, (iv) Robert B. Fisch, of Discovery Bay, Hong Kong, (v) Michael E. Fisch, of Chestnut Hill, Massachusetts, and (vi) Steven H. Fisch, of Waban, Massachusetts, as Limited Partners.

WHEREAS, the parties hereto wish to form a limited partnership under the laws of the State of Florida to acquire and manage investments in real and personal property of any kind or nature; and

WHEREAS, the parties desire to operate such limited partnership pursuant to the terms and conditions set forth hereafter.

NOW, THEREFORE, the parties agree as follows:

### ARTICLE I

### FORMATION

1.　　Formation. Upon the execution of this agreement (the "Agreement") and the filing of a Certificate of Limited Partnership with the Department of State of the State of Florida, the parties shall form a limited partnership (hereinafter called the "Partnership") pursuant to the provisions of Section 620.108 of the Florida Statutes.

2.　　Certificate. The parties hereto shall forthwith execute and swear to a Certificate of Limited Partnership and cause the same to be filed for record in the Department of State of the State of Florida in accordance with the provisions of said Section 620.108.

### ARTICLE II

### DEFINED TERMS

The defined terms used in this Agreement shall have the meanings specified below. The singular shall include the plural, and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires:

"Affiliate" shall mean any (i) Partner; (ii) member of the Immediate Family of any Partner; (iii) member of the Fisch Family; (iv) the Legal Representative, successor or assignee of, or any trustee of a trust for the benefit of any Person referred to in any of the preceding clauses

(i), (ii), or (iii); (v) Entity of which a majority of the voting or beneficial interest is owned, directly or indirectly, by one or more of the Persons referred to in any of the preceding clauses (i), (ii), (iii) or (iv); (vi) Person who is an officer, director, trustee, employee, stockholder, partner, or member of any Person referred to in any of the preceding clauses (i), (ii), (iii), (iv), or (v); and (vii) Person directly or indirectly controlling, or under direct or indirect common control with, any Person referred to in any of the preceding clauses (i), (ii), (iii), (iv), (v) or (vi).

"Allocation Regulations" shall mean the income tax regulations promulgated by the U.S. Department of Treasury under Sections 704(b) and 752 of the Code, as such regulations have been or may be interpreted, amended, modified, amplified or supplemented, and shall include any regulation issued under any successor Code section.

"Fisch Family" shall mean any one or more of the following:

(i)     Gilbert R. Fisch;

(ii)    Marcia V. Fisch;

(iii)   the issue of Gilbert R. Fisch and Marcia V. Fisch;

(iv)    a trust for the exclusive benefit of one or more of the Persons referred to in any of the preceding clauses (i), (ii) or (iii);

(v)     a trust that gives to the spouse of any Person referred to in the preceding clauses (i), (ii) or (iii) a qualifying income interest for life (within the meaning of Section 2056(b)(7) of the Code) and gives the remainder to one or more Persons referred to in the preceding clauses (i), (ii), (iii), or (iv);

(vi)    any one or more Legal Representatives of a Person referred to in any of the preceding clauses (i), (ii) or (iii); and

(vii)   an Entity of which a majority of the voting or beneficial interest is owned, directly or indirectly, by one or more of the Persons referred to in any of the preceding clauses (i), (ii), (iii), (iv), (v), or (vi).

"Fisch Qualified Plan" shall mean a qualified retirement plan, simplified employee pension, or individual retirement account (collectively, a "qualified plan"), provided that one or more members of the Fisch Family represent a majority of the participants or beneficiaries in such qualified plan. Notwithstanding anything to the contrary contained in this Agreement, a qualified plan shall continue to qualify as a "Fisch Qualified Plan" even if the spouse of any of the issue of Gilbert R. Fisch and Marcia V. Fisch is a beneficiary; provided, however, that, after distributions are made to such spouse from the applicable Fisch Qualified Plan, such spouse shall not be a permitted transferee unless the Transfer to such spouse complies with the provisions of Article VII.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

"Consent of the General Partners" shall mean the written consent or approval of the General Partners who own in the aggregate more than fifty percent (50%) of the general interests in the Partnership.

2

"Consent of the Limited Partners" shall mean the written consent or approval of the Limited Partners who own in the aggregate more than fifty percent (50%) of the limited interests in the Partnership.

"Consent of the Partners" shall mean the written consent or approval of (a) the General Partners who own in the aggregate more than fifty percent (50%) of the general interests in the Partnership, and (b) the Limited Partners who own in the aggregate more than fifty percent (50%) of the limited interests in the Partnership.

"Entity" shall mean any general partnership, limited partnership, corporation, limited liability company, joint venture, trust, business trust, cooperative, association, qualified retirement plan, simplified employee pension, or individual retirement account.

"General Partner" shall mean each of Gilbert R. Fisch and Marcia V. Fisch, in their capacities as General Partners, and any Person or Persons who become additional or successor General Partners as permitted by this Agreement, at the time of reference thereto, in his, her, their or its capacity as such. "General Partners" shall mean all of such Persons.

"Immediate Family" shall mean, with respect to any Person who is an individual, such individual's spouse, issue, siblings, and issue of siblings

"Legal Representative" shall mean, with respect to any individual, a duly appointed executor, administrator, guardian, conservator, personal representative or other legal representative appointed as a result of the death, minority or incompetency of such individual.

"Limited Partner" shall mean each of Gilbert R. Fisch, Marcia V. Fisch, Paul J. Fisch, Robert B. Fisch, Michael E. Fisch, and Steven H. Fisch, in their capacities as Limited Partners, and any Person or Persons who become additional or successor Limited Partners as permitted by this Agreement, at the time of reference thereto, in his, her, their or its capacity as such. "Limited Partners" shall mean all of such Persons.

"Partner" shall mean any General Partner or Limited Partner. "Partners" shall mean all of such Persons.

"Person" shall mean any individual or Entity, and the heirs, executors, administrators, successors and assigns of such person where the context so permits.

"Transfer" and any grammatical variation thereof shall refer to any sale, exchange, assignment, distribution, encumbrance, hypothecation, gift, pledge, transfer or other withdrawal, disposition or alienation in any way as to any interest as a Partner. Transfer shall specifically include, without limitation, assignments and distributions resulting from death, incompetency, bankruptcy, liquidation and dissolution.

3

"Uniform Act" means the Florida Revised Uniform Limited Partnership Act, as in effect in the State of Florida, and codified as Sections 620.101 – 620.186 of the Florida Statutes, as the same may be amended from time to time.

## ARTICLE III

### NAME, CHARACTER, PLACE OF BUSINESS AND TERM OF PARTNERSHIP

1.     Name. The Partnership shall be conducted under the name of PJFN Investors Limited Partnership.

2.     Purpose and Character of Business. The purpose of the Partnership shall be to acquire, hold for investment, manage, lease, develop, improve, mortgage, sell and otherwise deal with real and personal property of any kind or nature, as the Partnership may now or hereafter acquire, and to make investments of any kind or nature. The business of the Partnership shall include the conduct of such other activities as are necessary or desirable to protect or enhance the assets of the Partnership, to supervise and direct investments on behalf of the Partnership, or to otherwise carry out the purposes of this Agreement, including but not limited to, the power to borrow sums of money, to grant mortgages and other security interests, to loan money, to buy, sell, sell short, exchange, convert, trade in and otherwise deal with the investment assets of the Partnership, to enter into advisory or other agreements, contracts, ventures, partnerships or other arrangements, to hire, retain or otherwise engage advisors, agents, analysts or consultants in connection with any such transactions or activities, and to own shares of stock in corporations and ownership interests in other partnerships, all as more specifically provided below. The business of the Partnership shall include the participation in such other activities as are necessary or appropriate to protect or enhance the assets of the Partnership or to carry out the purposes of the Partnership.

3.     Place of Business. The principal place of business of the Partnership shall be at 106 North Village Way, Jupiter, FL 33458, or such other location or locations as the General Partners, acting with the Consent of the General Partners, may select from time to time.

4.     Agent for Service of Process. The address of the Partnership in Florida and the name and address of the agent for service of process required to be maintained by Section 620.105 of the Uniform Act shall be Gilbert R. Fisch, 106 North Village Way, Jupiter, FL 33458, or such other address and/or agent for service of process location or locations as may be selected from time to time by the General Partners, acting with the Consent of the General Partners.

5.     Term and Dissolution. The Partnership shall continue in full force and effect from the date first set forth above until the close of business on December 31, 2078, unless earlier terminated by the Consent of the Partners.

4

ARTICLE IV

CAPITAL CONTRIBUTIONS, ACCOUNTS, AND WITHDRAWALS

1.    Capital. The capital of the Partnership shall be the aggregate amount of the cash or property contributed or agreed to be contributed by the Partners as hereinafter described in Paragraphs 2 and 3 of this Article IV.

2.    General Partners and Their Initial Contributions. The General Partners are identified on Schedule A attached hereto, which Schedule shall be amended by the General Partners from time to time to reflect changes in the general interests of the General Partners permitted by this Agreement, and/or changes in the addresses of the General Partners. The General Partners shall each contribute to the capital of the Partnership cash or property with Gross Asset Values (as such term is defined in Subparagraph b of Paragraph 5 of this Article IV) as described in Schedule B attached hereto.

3.    Limited Partner and Their Initial Contributions. The Limited Partners are identified on Schedule A attached hereto, which Schedule shall be amended by the General Partners from time to time to reflect changes in the limited interests of the Limited Partners permitted by this Agreement, and/or changes in the addresses of the Limited Partners. The Limited Partners shall each contribute to the capital of the Partnership cash or property with Gross Asset Values as described in Schedule B attached hereto.

4.    Additional Capital Contributions. Any existing or new Partner may from time to time tender additional Capital Contributions to the General Partners who shall be free to accept or to reject the same on behalf of the Partnership. The Partners are under no obligation to make equal Capital Contributions. Each time that the General Partners accept an additional Capital Contribution from an existing Partner or a Capital Contribution from a new Partner, the share of each Partner in the profits and losses of the Partnership shall change accordingly as of a date convenient to the General Partners.

5.    Capital Accounts.

    a.    Definition of Capital Account. An individual capital account shall be maintained for each Partner. The capital account of a Partner as of any date shall equal the amount of the Partner's paid-in capital contribution, thereafter increased by (i) any cash contributions, (ii) the Gross Asset Value, as defined in Subparagraph b of this Paragraph, of any property contributions he, she or it may make (net of liabilities secured by the property assumed by the Partnership or taken subject thereto), (iii) his, her or its distributive share of Partnership profits and income (including tax-exempt income), and (iv) the amount of any Partnership liabilities that are assumed by such Partner or that are secured by any Partnership properties distributed to such Partner, and decreased by (i) such Partner's distributive share of Partnership losses and deductions, (ii) cash distributed by the Partnership to such Partner, (iii) the Gross Asset Value of any Partnership property distributed to such Partner, (iv) the amount of any

5

liabilities of such Partner that are assumed by the Partnership or are secured by any properties contributed by such Partner to the Partnership, (v) expenditures of the Partnership not deductible in computing its taxable income, and (vi) reductions in the basis of Partnership assets not otherwise taken into account (such as the reduction in basis provided by Section 48(q) of the Code). Capital Accounts shall also be adjusted as provided in Subparagraph c of this Paragraph.

    b.    Gross Asset Value. "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

        (i) The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the gross fair market value of such asset, as determined by the contributing Partner and the Partnership.

        (ii) The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partners, as of the following times:

            (A)    The acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution;

            (B)    The distribution by the Partnership to a Partner of more than a de minimis amount of Partnership property other than money, unless all Partners receive simultaneous distributions of undivided interests in the distributed property in proportion to their interests in the Partnership; and

            (C)    The termination of the Partnership for federal income tax purposes pursuant to Code Section 708(b)(1)(B).

        (iii) If the Gross Asset Value of an asset has been determined or adjusted pursuant to Clauses (i) or (ii) of this Subparagraph b, such Gross Asset Value shall thereafter be adjusted by the depreciation taken into account with respect to such asset for purposes of computing profits and losses.

    c.    Adjustments to Capital Accounts. If the Gross Asset Values of Partnership assets are adjusted pursuant to Clause (ii) of Subparagraph b of this Paragraph 4, the capital accounts of all Partners shall be adjusted simultaneously to reflect the aggregate net adjustment as if the Partnership recognized gain or loss equal to the amount of such aggregate net adjustment.

    d.    Transfer of Partnership Interest. If a Partnership interest is transferred in accordance with the terms of Article VII of this Agreement, the transferee shall succeed to the capital account of the transferring Partner to the extent such capital account relates to the transferred interest.

6

e.      Other Adjustments.  See Article IX for additional provisions regarding capital accounts.

f.      Partners' Rights in Capital Account.  No Partner shall be entitled to receive interest from the Partnership on any capital account in the Partnership.

6.      Withdrawals.  Withdrawals during the year shall be limited to such amounts as the General Partners, in their sole discretion, shall determine from time to time.  All withdrawals by a Partner shall be charged to that Partner's capital account.

7.      Loans by Partners.  If any Partner shall loan any monies to the Partnership, the amount of any such loan shall not be an increase of his, her or its capital contribution or entitle him, her or it to any increase in his, her or its share of the profits, losses or distributions of the Partnership; but the amount of any such loan shall be an obligation of the Partnership to such Partner and, unless otherwise provided for and agreed upon, shall be repaid to such Partner with interest at the rate of two percent (2%) above the prime rate in effect from time to time as set forth in The Wall Street Journal.  No Partner shall have any obligation to make a loan to the Partnership.

## ARTICLE V

## INCOME AND LOSSES

1.      Accounting.  The fiscal year of the Partnership shall be the calendar year.  The net income or net loss of the Partnership shall be determined in accordance with approved and accepted accounting practice as soon as possible after the close of each fiscal year.

2.      Income.  Except as provided in Paragraphs 4 and 5 of this Article V, the net income earned by the Partnership during each fiscal year shall be allocated among the Partners in proportion to the amount of the capital account of each, adjusted each time that there is a change in any Partner's capital account, as of a date convenient to the General Partners.

3.      Losses.  The net loss incurred by the Partnership during any fiscal year shall be debited as of the close thereof to the capital accounts of the Partners in the same proportions in which the Partners are entitled to share the income pursuant to Paragraph 2 of this Article V.

4.      Section 704(c) Items.  Gain upon the sale or other disposition of any appreciated property which may be contributed to the Partnership shall be allocated among the Partners as provided in Section 704(c) of the Code.  The preceding sentence shall apply to the extent of the difference at the time of said contribution to the Partnership between (i) the fair market value of such properties or property, as applicable, and (ii) their bases or basis, as applicable.  Any special allocation of gain to any Partner pursuant to this Paragraph 4 shall be an allocation for tax purposes only and shall not affect such Partner's book capital account.

7

5.  Distributions of Appreciated Property. For the purpose of making adjustments to book capital accounts only, a distribution of appreciated property to a Partner shall be treated as a distribution of the cash proceeds from a sale by the Partnership of such property at its then fair market value.

6.  Distributions. Subject to the provisions of Subparagraphs a and b of this Paragraph, distributions to the Partners shall be made at such times as the General Partners, in their sole discretion, shall determine, and the General Partners shall have the right to hold in reserve and not distribute such amounts as they deem advisable or necessary for purposes of the Partnership. At each time that distributions are made to the Partners, such distributions shall be made in accordance with the Partners' respective Percentage Interests in the Partnership.

a.  Minimum Required Distributions. Notwithstanding anything to the contrary herein, in the event that a Partner is subject to the "minimum distribution rules" of Section 401(a)(9) of the Code, the General Partners shall make distributions to the Partners at such times and in such amounts as necessary to ensure compliance with the minimum distribution rules of Section 401(a)(9).

b.  Distributions to Cover Taxes. Notwithstanding anything to the contrary herein, prior to the April 15th next succeeding the end of any fiscal year of the Partnership, the General Partners shall distribute to each Partner an amount equal to the taxes on the portion of the Partnership's income allocated to such Partner for such fiscal year, determined at the highest marginal rate of federal and state tax for the Partner who lives in the state with the highest tax rate.

7.  Liability of Limited Partners. Any other provision of this Agreement to the contrary notwithstanding, no Limited Partner shall be personally liable for any of the debts or losses of the Partnership beyond the amount contributed by such Limited Partner to the capital of the Partnership.

ARTICLE VI

RIGHTS, POWERS AND DUTIES OF THE GENERAL PARTNERS

1.  Management. The overall management and control of the business and affairs of the Partnership shall be vested in the General Partners, acting with the Consent of the General Partners.

2.  Authorized Acts. Subject to the provisions of this Agreement and, specifically, Paragraph 9 of this Article VI, the General Partners, for, in the name of, and on behalf of the Partnership, are hereby authorized to perform all acts necessary or appropriate to carry on the business of the Partnership (acting in each instance with the Consent of the General Partners) without the consent of any Limited Partner, including without limitation:

8

a.    To buy, sell, sell short, exchange, convert and otherwise trade in any stocks, bonds, notes, debentures, put and call options, repurchase obligations, debt security options, warrants and rights, mortgages, and other interests in, to, and in respect thereof, certificates of deposit, mutual funds, partnership interests, money market instruments, bankers' acceptances, demand and time deposits, commercial paper, commodities, futures contracts, forward contracts, options on commodities and on futures contracts, foreign exchange commitments, spot (cash) commodities, currencies and financial instruments, swaps, caps, floors, collars, options and similar transactions involving or relating to commodities, currencies, securities, financial instruments, interest rates, securities or commodities interests and prices, indices and other items, and options, rights, warrants and other interests in, to, and in respect thereof, all in the discretion of the General Partners;

b.    To borrow money and issue evidences of indebtedness in furtherance of any or all of the purposes of the Partnership, and to secure the same by mortgage, pledge or other lien on the assets of the Partnership;

c.    To prepay, in whole or in part, refinance or modify any mortgage or loan of the Partnership;

d.    To employ persons, firms or corporations (including an Affiliate) to provide advisory, administrative, professional and other services to the Partnership, and to pay reasonable compensation for such services, provided that any contract with any Affiliate shall provide for compensation on terms and conditions no less favorable to the Partnership than any third-party contract would so provide;

e.    To place orders for the execution of any of the transactions authorized pursuant to the preceding Subparagraphs of this Paragraph 2, with or through such brokers, dealers, commercial banks or issuers as the General Partners may select, on United States and foreign exchanges, in over-the-counter markets, in interbank markets, and in privately negotiated transactions, and otherwise;

f.    To enter into any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of, the purposes of the Partnership, so long as said activities and contracts may be lawfully carried on or performed by a partnership under the laws of the State of Florida; and

g.    To execute and file amendments to the Certificate of Limited Partnership with the Florida Department of State.

3.    <u>Action by the General Partners</u>.  The General Partners are specifically authorized, except as otherwise set forth in this Article VI, to execute, sign, seal and deliver in the name and on behalf of the Partnership:

9

a.    Any deed, lease, mortgage, mortgage note, bill of sale, contract or any other instrument purporting to convey or encumber the assets of the Partnership;

b.    Any and all instruments or documents requisite to carrying out the intention and purpose of this Agreement, including, without limitation, the filing of all business certificates and all amendments thereto, and any documents deemed advisable by the General Partners in connection with obtaining or maintaining any financing arrangements for the Partnership; and

c.    Any and all agreements, contracts, documents, notes, certificates and instruments whatsoever involving the management and maintenance of the assets of the Partnership.

4.    Reliance on General Partners' Acts. Every contract, deed, mortgage, lease and other instrument executed by any General Partner shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof (a) this Partnership was in existence, (b) this Agreement had not been terminated or canceled or amended in any manner so as to restrict the authority of the General Partners (except as shown in certificates or other instruments duly filed in the office of the Florida Department of State), and (c) the execution and delivery of such instruments were duly authorized under this Agreement. Any person dealing with the Partnership or the General Partners may always rely on a certificate signed by any General Partner (a) as to the existence or non-existence of any fact or facts which constitute conditions precedent to acts by the General Partners or which are in any other manner germane to the affairs of the Partnership, (b) as to who is authorized to execute and deliver any instrument or document of the Partnership, (c) as to the authenticity of any copy of this Agreement and amendments thereto, or (d) as to any act or failure to act by the Partnership.

5.    General Management of Partnership Business. The business affairs of the Partnership shall be managed by the General Partners who shall devote such amount of their time and services as they, in their absolute discretion, deem necessary to discharge their obligations hereunder.

6.    Business Control. No Limited Partner shall participate in, or have any control over, the Partnership business, except as required by law or except as otherwise specifically provided in this Agreement. The Limited Partners hereby consent to the exercise by the General Partners of the powers conferred upon them by this Agreement, and to the employment of such brokers, agents or attorneys as the General Partners may determine, in their sole discretion, are necessary or advisable (notwithstanding that any parties to this Agreement may have an interest in, or be one of, such brokers, agents or attorneys). No Limited Partner shall have any authority or right to act for or bind the Partnership. No Limited Partner shall participate in the control of the business of the Partnership within the meaning of Section 620.129 of the Uniform Act.

7.    Indemnification. The Partnership shall indemnify and save harmless each General Partner against any claims or liability incurred by him, her or it which indemnification shall

10

include all reasonable expenses incurred, including reasonable legal and other professional fees and expenses, provided that the General Partner performed the acts or omissions giving rise to such claims or liabilities in good faith and in the belief that he, she or it was acting within the scope of his, her or its authority under this Agreement. Nothing contained in this Paragraph shall be construed as imposing any liability on any Limited Partner of any kind whatsoever.

8.    Dealing with Affiliates.  Except as provided in the following Article VII, the General Partners may, in the name and on behalf of the Partnership, enter into such agreements, contracts or the like with any Affiliate individually, as distinguished from such Affiliate's capacity, if any, as a Partner, to undertake and carry out the business of the Partnership as if such Affiliate were an independent contractor; and the General Partners may obligate the Partnership to pay reasonable compensation for and on account of any such services.

9.    Prohibited Acts.  The General Partners hereby agree not to (a) take any action or omit to take any action in contravention of this Agreement, (b) confess a judgment against the Partnership, (c) terminate the Partnership by withdrawing or otherwise, or (d) take any action or omit to take any action which would cause the Partnership to be classified as an association taxable as a corporation for federal income tax purposes, including specifically, the failure of the General Partners to satisfy, on a continuing basis, all Internal Revenue Service requirements, as amended from time to time, for partnership classification.

10.    Tax Matters Partner.  Gilbert R. Fisch is hereby designated as the Tax Matters Partner within the meaning of Section 6231(a)(7) of the Code.

ARTICLE VII

TRANSFER OF PARTNERSHIP INTERESTS
AND ADMISSION OR PARTNERS

1.    General Restriction on Transfers.  No General Partner or Limited Partner shall Transfer all or any part of his, her or its interest in the Partnership or otherwise withdraw from the Partnership except as provided in this Paragraph and the following Paragraph 2. Every Transfer permitted by this Article VII shall nevertheless be subject to the following:

a.    In the event of any Transfer, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument effecting such Transfer. The transferee shall execute such additional instruments as shall be reasonably required by the General Partners, which shall include an agreement acknowledging and consenting to the terms of this Agreement. If and for so long as such instruments are not so executed and filed, the Partnership need not recognize any such Transfer for any purpose.

b.    Upon the admission or withdrawal of a Partner, Schedule A and/or the certificate of limited partnership (if applicable) shall be amended appropriately by the General

11

Partners to reflect the then existing names and addresses of the Partners and their interests in the Partnership.

c.    Any Person who acquires in any manner whatsoever an interest in the Partnership, whether or not such Person has accepted and assumed in writing the terms and provisions of this Agreement or been admitted into the Partnership as a Partner as provided in this Article VII, shall be deemed, by acceptance of the acquisition thereof, to have agreed to be subject to and bound by all of the terms, conditions, and obligations of this Agreement with respect to such interest and shall be subject to the provisions of this Agreement with respect to any subsequent Transfer of such interest.

d.    Any Transfer in contravention of this Paragraph 1 shall be void and ineffective, and shall not be binding upon the Partnership.

2.    <u>Permitted Transfers</u>. The following Transfers shall be permitted; provided, however, that any such Transfer shall be subject to the provisions of Subparagraphs a, b, c, and d of the preceding Paragraph 1.

a.    An interest as Partner may be Transferred from time to time to one or more members of the Fisch Family or to a Fisch Qualified Plan.

b.    An interest as Partner may be Transferred from time to time with the Consent of the General Partners.

3.    <u>Permitted Partners</u>. The following Persons shall be permitted as Partners of the Partnership:

a.    Any member of the Fisch Family.

b.    A Fisch Qualified Plan, even if the spouse of any of the issue of Gilbert R. Fisch and Marcia V. Fisch is a beneficiary; provided, however, that, after distributions are made to such spouse from the applicable Fisch Qualified Plan, such spouse shall not be a permitted transferee unless the Transfer to such spouse complies with the provisions of this Article VII.

c.    Any other Person who, with the Consent of the General Partners, is permitted to become a Partner in the Partnership.

A Person who acquires an interest as Partner in the Partnership shall execute such instruments as shall be reasonably required by the General Partners, which shall include an agreement acknowledging and consenting to the terms of this Agreement. If and for so long as such instruments are not so executed and filed, the Partnership need not recognize any such Person as a Partner for any purpose. Upon the admission of a Partner, <u>Schedule A</u> and/or the certificate of limited partnership (if applicable) shall be amended appropriately by the General

12

Partners to reflect the then existing names and addresses of the Partners and their interests in the Partnership.

4.    Rights of Unadmitted Assignees.  A Person shall be admitted as a Partner with the Consent of the General Partners.  A Person who acquires one or more Partnership interests but who is not admitted to the Partnership as a Partner shall be entitled only to allocations and distributions with respect to such interests in accordance with this Agreement, and shall have no right to any information or accounting of the affairs of the Partnership, shall not be entitled to inspect the books or records of the Partnership, and shall not have any of the rights of a General Partner or a Limited Partner under the Uniform Law or this Agreement.

## ARTICLE VIII

### TERMINATION OF PARTNERSHIP

1.    Return of Capital.  All Partners shall have the right to the return of their positive capital account balances at the end of the term of the Partnership.  All distributions pursuant hereto shall be made in the priority set forth in the following Paragraph 5 of this Article VIII, provided, however, that a reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partners to minimize the normal losses attendant upon a liquidation.  See Article IX for additional provisions regarding liquidation distributions.

2.    Liability of General Partners.  The General Partners shall not be personally liable for the return of the capital contributions of Limited Partners.

3.    Medium of Payment.  Except as provided hereinbefore, Limited Partners have only the right to receive cash in return for their contributions to the capital of the Partnership. The General Partners, however, may, at any time and in their sole discretion, make distributions wholly or partly in kind, and any such distributions shall be accepted by the distributee Partners notwithstanding the provisions of Section 620.145 of the Uniform Act.

4.    ' Certificate of Cancellation.  After dissolution of the Partnership and liquidation of the assets, the General Partners shall execute, acknowledge and cause to be filed a certificate of cancellation of the Partnership.

5.    Disposition of Proceeds.  Subject to the provisions of Section 620.162 of the Uniform Act, the proceeds of the liquidation of the assets of the Partnership shall be applied and distributed in the following order of priority:

a.    To the payment of the debts and liabilities of the Partnership, other than credit balances in Partners' capital accounts, and the expenses of liquidation.

13

b.    To the setting up of any reserves which the General Partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership or of the General Partners arising out of, or in connection with, the Partnership or its liquidation. Such reserves shall be paid over by the General Partners to any attorney at law as escrowee. Such escrowee shall hold such reserves in one or more interest-bearing, insured accounts for the purpose of disbursing the same in payment of any of the aforementioned contingencies and, at the expiration of such period as the General Partners shall deem advisable, shall distribute the balance thereafter remaining in the manner provided in the following clauses of this Subparagraph b.

(i) To the Partner with the greatest positive capital account until his, her or its capital account balance is equal to that of the Partner or Partners with the next greatest capital account(s), then equally to such Partners with the then greatest capital accounts, and so forth until such time as all positive capital account balances have been reduced to zero.

(ii) Any balance remaining shall be distributed among all Partners in the same proportions in which the Partners are respectively entitled to share in the profits and losses of the Partnership pursuant to Paragraphs 2 and 3 of Article V hereof. Each of the Partners shall be furnished with a statement prepared by the Partnership's accountants, which statement shall set forth the assets and liabilities of the Partnership as of the date of complete liquidation and the General Partners' proposed final disposition of such assets and liabilities.

6.    <u>Makeup of Deficit Balance</u>.  If there is a deficit balance in the capital account of a General Partner following the liquidation of such General Partner's interest in the Partnership, such General Partner shall, within sixty (60) days after the date of such liquidation, pay to the Partnership, in cash or cash equivalents, the full amount of such deficit balance.  Any amount paid to the Partnership pursuant to this Paragraph 6 shall, if the Partnership has terminated, be disbursed in accordance with the provisions of the immediately preceding Paragraph 5.

## ARTICLE IX

### SUBSTANTIAL ECONOMIC EFFECT

1.    <u>Compliance with Allocation Regulations</u>.  Notwithstanding anything to the contrary contained herein, all Partnership allocations shall be made, and this Agreement shall in all ways be construed, to contain all necessary provisions such that its allocations have substantial economic effect as provided in the Allocation Regulations.  In the event that the Allocation Regulations require the Partnership Agreement to contain any express language for such purpose, such language is hereby adopted by reference thereto.  To the greatest extent possible, and consistent with the provisions of the preceding sentence, (a) such allocations shall be made in the manner expressly set forth in this Agreement, and (b) this Agreement shall not be construed to contain any provisions not expressly set forth herein.

14

2.    Maintenance of Capital Accounts.  Notwithstanding any provision to the contrary, the capital accounts of the Partners shall be determined and maintained as provided in the Allocation Regulations.

3.    Liquidation Distributions.  Notwithstanding any provision to the contrary, liquidation proceeds shall be distributed according to the positive balances of the Partners' capital accounts as provided in the Allocation Regulations.

4.    Restoration of Capital Account By General Partner.  Notwithstanding any provision to the contrary, any General Partner with a deficit capital account upon liquidation is unconditionally required to restore such deficit as provided in the Allocation Regulations.

5.    Alternate Test for Economic Effect for Limited Partners.  No Limited Partner with a deficit capital account upon liquidation shall be required to restore such deficit.  Rather, this Agreement hereby adopts the "qualified income offset" provisions contained in the Allocation Regulations to the minimum extent necessary to meet the aforenoted alternate test for economic effect.

6.    Allocations of Nonrecourse Deductions.  Notwithstanding any provision to the contrary, nonrecourse deductions shall be allocated in accordance with the Partners' interests in the Partnership pursuant to the test provided for and in accordance with the requirements set forth in the Allocation Regulations.  The Partnership Agreement hereby adopts the "minimum gain chargeback" provisions contained in the Allocation Regulations to the minimum extent necessary to meet the aforenoted test for allocations of nonrecourse deductions.  In any year in which the "qualified income offset" and the "minimum gain chargeback" both apply, they shall be applied in the order and manner consistent with the Allocation Regulations.

ARTICLE X

POWER OF ATTORNEY - BOOKS AND RECORDS

1.    Power of Attorney.  Each of the Limited Partners constitutes and appoints the General Partners as his, her or its true and lawful attorney, and in his, her or its name, place, and stead, to make, execute, sign, acknowledge, and file:

a.    Any certificate or certificates of amendment under the Uniform Act, specifically including a certificate of amendment reflecting the admission of a successor General Partner pursuant to Article VII hereof;

b.    Any certificate or other instrument which may be required to be filed by the Partnership under the laws of the State of Florida;

c.    Any and all amendments or modifications of the instruments described in the preceding Subparagraphs a and b of this Paragraph 1; and

15

    d.    All documents which may be required to effectuate the dissolution and termination of the Partnership and cancellation of its certificate of limited partnership, as amended from time to time.

2.    <u>Fiscal Year</u>. The Partnership shall keep its books and file its income tax returns on the basis of a calendar year.

3.    <u>Books and Records</u>. At all times during the continuance of the Partnership, the General Partners shall keep or cause to be kept full and true books of account, in which shall be entered fully and accurately each transaction of the Partnership. All of such books of account together with copies of the certificate of limited partnership and of any amendments thereto, such copies to be receipted by the office of the Florida Department of State, shall at all times be maintained at the principal office of the Partnership, and shall be open, upon ten (10) business days' prior written request, to the reasonable inspection and examination of the Limited Partners or their representatives.

4.    <u>Financial Statements, Tax Returns, and Accountants</u>. The General Partners shall, within one hundred twenty (120) days after the end of the Partnership's fiscal year, deliver to the Limited Partners annual financial statements prepared in accordance with generally accepted accounting principles, or any other comprehensive basis of accounting at a level of service (e.g., compilation, review, or audit) now or hereafter recognized by the American Institute of Certified Public Accountants. Such basis of accounting and level of service shall be selected by the General Partners in their sole discretion. The General Partners shall also deliver to the Limited Partners within ninety (90) days after the end of the Partnership's fiscal year information sufficient to enable them to file their respective individual income tax returns for such year, and shall, upon request of any Limited Partner, provide to each Limited Partner a full and complete copy of the Partnership's annual federal and state partnership information returns for such year. All such annual financial statements and tax returns shall be prepared by such firm of accountants as the General Partners shall, in their sole discretion, employ for the preparation thereof and for the purpose of rendering accounting services to the Partnership.

5.    <u>Section 754 Election</u>. Upon the request of any Partner, or the executor, administrator or legal representative of the estate of any deceased Partner, the Partnership shall file an election regarding adjustment of the basis of Partnership property pursuant to Section 754 of the Code.

6.    <u>Bank Accounts</u>. All funds of the Partnership shall be deposited in the Partnership name and/or in such trade name or names as the General Partners shall select, in such bank account or accounts as shall be designated by the General Partners. Withdrawals from any such bank account or accounts shall be made upon such signature or signatures as the General Partners may designate.

7.    Nominees. For purposes of convenience in conveyancing, or for any other reason, record legal title to any real or personal properties of the Partnership may be acquired and/or held in the name of a nominee of the Partnership. Without limiting the generality of the foregoing, said nominee may be a nominee trust established for the benefit of the Partnership.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

1.    Notices. All notices shall be effective if given in writing, by registered or certified mail, and addressed, if to the Partnership to its principal office, and if to a Partner, to the last address of record on the Partnership books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

2.    Amendment of Agreement. The General Partners, acting with the Consent of the General Partners, may adopt any amendment to this Agreement, retroactively or prospectively, which in the opinion of counsel is for the purpose of clarifying or removing ambiguities or inconsistencies, or which may be necessary to comply with the law of any state, or to enable the Partnership to qualify or to continue to qualify as a partnership for federal tax purposes, or to enable the Partners to qualify or to continue to qualify for their allocations of income or loss for federal tax purposes, or which otherwise does not materially and adversely affect the rights of any Limited Partner; provided, however, that except as specifically set forth above with reference to federal taxes and state law, this Agreement shall not be amended without the unanimous written consent of all Partners if the effect of any such amendment would be (a) to increase the liability or change the capital contributions required of any Partner, (b) to change the provisions of this Agreement relating to federal income tax or distribution allocations, (c) to change the rights of any Partner upon liquidation of the Partnership, (d) to change the provisions of this Agreement relating to the termination of the Partnership, (e) to change any provisions of Article VII of this Agreement, (f) to enlarge, detract from, or otherwise modify the purposes of the Partnership, or the character of its business, (g) to impose or create any new or additional liability on any Limited Partner, or enlarge the obligation of any Partner to make contributions to the capital of the Partnership as provided in this Agreement, or (h) to enlarge, detract from, or otherwise modify any obligation of the General Partners as provided in this Agreement.

3.    Captions. All paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the content of such Agreement.

4.    Benefit. This Agreement shall be binding upon, and shall inure to the benefit of the parties, their executors, legal representatives, successors and assigns.

5.    Gender. Where a noun or pronoun is used in the Agreement, said noun or pronoun shall be regarded as referring to the appropriate person or persons, even though it be incorrect as to gender or as to being in the singular or plural.

17

# PJFN INVESTORS LIMITED PARTNERSHIP

## SCHEDULE A

## PARTNERS

### GENERAL PARTNERS:

Gilbert R. Fisch
106 North Village Way
Jupiter, FL  33458

Marcia V. Fisch
106 North Village Way
Jupiter, FL  33458

### LIMITED PARTNER:

Gilbert R. Fisch
106 North Village Way
Jupiter, FL  33458

Marcia V. Fisch
106 North Village Way
Jupiter, FL  33458

Paul J. Fisch
5111 Coffee Tree Lane
North Syracuse, NY  13212

Robert B. Fisch
39D Seahorse Lane
Discovery Bay, Hong Kong

Michael E. Fisch
250 Gerry Road
Chestnut Hill, MA  02467

Steven H. Fisch
50 Stanley Road
Waban, MA  02468

19

# PJFN INVESTORS LIMITED PARTNERSHIP

## SCHEDULE B

## INITIAL CONTRIBUTIONS TO CAPITAL

| GENERAL PARTNERS: | CONTRIBUTION | PERCENTAGE INTEREST |
|---|---|---|
| Gilbert R. Fisch | $ | % |
| Marcia V. Fisch | $ | % |
| LIMITED PARTNERS: | | |
| Gilbert R. Fisch | $ | % |
| Marcia V. Fisch | $ | % |
| Paul J. Fisch | $ | % |
| Robert B. Fisch | $ | % |
| Michael E. Fisch | $ | % |
| Steven H. Fisch | $ | % |
| Total | $ | 100% |

F:\USERS\JPICO\DOCS.03\PJFN INVESTORS LP-FL\PSHIP-AGR-5.DOC

20

**FORMATION**
**OF**
**PJFN INVESTORS LIMITED PARTNERSHIP**
**(a Florida limited partnership)**

### DOCUMENT LIST

1.    Certificate of Limited Partnership.

2.    Affidavit of Capital Contributions for Florida Limited Partnership.

2.    Agreement of Partnership.

3.    IRS Form SS-4, Application for Employer Identification Number.

F:\USERS\JPICO\DOCS.03\PJFN INVESTORS LP-FL\DOCLIST.DOC

# CERTIFICATE OF LIMITED PARTNERSHIP

1. __PJFN Investors Limited Partnership__
   (Name of Limited Partnership; must contain a suffix such as "Limited", "Ltd.", or "Limited Partnership")

2. __106 North Village Way, Jupiter, Florida  33458__
   (Business address of Limited Partnership)

3. __Gilbert R. Fisch__
   (Name of Registered Agent for Service of Process)

4. __106 North Village Way, Jupiter, Florida, 33458__
   (Florida street address for Registered Agent)

5. _____  Gilbert R. Fisch_____
   (Registered Agent must sign here to accept designation as Registered Agent for Service of Process)

6. __106 North Village Way, Jupiter, Florida  33458__
   (Mailing Address of the Limited Partnership)

7. The latest date upon which the Limited Partnership is to be dissolved is: __December 31,__ 2078

8. Name(s) of general partner(s):                          Street address:

   __Gilbert R. Fisch__                          __106 North Village Way, Jupiter, FL__

   __Marcia V. Fisch__                          __106 North Village Way, Jupiter, FL__

   _____                          _____

   _____                          _____

*Under penalties of perjury I (we) declare that I (we) have read the foregoing and know the contents thereof and that the facts stated herein are true and correct.*

*Signed this* _____ *day of* _____, __2003__ .

Signature of all general partners:

| | |
|---|---|
| General Partner __Gilbert R. Fisch__ | General Partner |
| General Partner __Marcia V. Fisch__ | General Partner |
| General Partner | General Partner |

# AFFIDAVIT OF CAPITAL CONTRIBUTIONS
# FOR FLORIDA LIMITED PARTNERSHIP

*The undersigned constituting all of the general partners of* PJFN Investors Limited Partnership

_____ ,

*a Florida Limited Partnership, certify:*

The amount of capital contributions to date of the limited partners is $ _____ .

The total amount contributed and anticipated to be contributed by the limited partners at this time

totals $_____ .

Signed this _____ day of _____ ; 2003 _____ .

FURTHER AFFIANT SAYETH NOT.

*Under the penalties of perjury I (we) declare that I (we) have read the foregoing and know the
contents thereof and that the facts stated herein are true and correct.*


_____          _____
General Partner Gilbert R. Fisch          General Partner


_____          _____
General Partner Marcia V. Fisch          General Partner


_____          _____
General Partner          General Partner

## PJFN INVESTORS LIMITED PARTNERSHIP

## AGREEMENT OF PARTNERSHIP

AGREEMENT made as of the _____ day of _____, 2003, by and among Gilbert R. Fisch, of Jupiter, Florida, and Marcia V. Fisch, of Jupiter Florida, as General Partners, and Gilbert R. Fisch, of Jupiter, Florida, Marcia V. Fisch, of Jupiter Florida, Paul J. Fisch, of North Syracuse, New York, Robert B. Fisch, of _____, Michael E. Fisch, of _____ _____, and Steven H. Fisch, of Waban, Massachusetts, as Limited Partners.

WHEREAS, the parties hereto wish to form a limited partnership under the laws of the State of Florida to acquire and manage investments in real and personal property of any kind or nature; and

WHEREAS, the parties desire to operate such limited partnership pursuant to the terms and conditions set forth hereafter.

NOW, THEREFORE, the parties agree as follows:

### ARTICLE I

### FORMATION

1. <u>Formation</u>.  Upon the execution of this agreement (the "Agreement") and the filing of a Certificate of Limited Partnership with the Department of State of the State of Florida, the parties shall form a limited partnership (hereinafter called the "Partnership") pursuant to the provisions of Section 620.108 of the Florida Statutes.

2. <u>Certificate</u>.  The parties hereto shall forthwith execute and swear to a Certificate of Limited Partnership and cause the same to be filed for record in the Department of State of the State of Florida in accordance with the provisions of said Section 620.108.

### ARTICLE II

### DEFINED TERMS

The defined terms used in this Agreement shall have the meanings specified below.  The singular shall include the plural, and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires:

"Affiliate" shall mean any (i) Partner; (ii) member of the Immediate Family of any Partner; (iii) member of the Fisch Family; (iv) the Legal Representative, successor or assignee of,

or any trustee of a trust for the benefit of any Person referred to in any of the preceding clauses (i), (ii), or (iii); (v) Entity of which a majority of the voting or beneficial interest is owned, directly or indirectly, by one or more of the Persons referred to in any of the preceding clauses (i), (ii), (iii) or (iv); (vi) Person who is an officer, director, trustee, employee, stockholder, partner, or member of any Person referred to in any of the preceding clauses (i), (ii), (iii), (iv), or (v); and (vii) Person directly or indirectly controlling, or under direct or indirect common control with, any Person referred to in any of the preceding clauses (i), (ii), (iii), (iv), (v) or (vi).

"Allocation Regulations" shall mean the income tax regulations promulgated by the U.S. Department of Treasury under Sections 704(b) and 752 of the Code, as such regulations have been or may be interpreted, amended, modified, amplified or supplemented, and shall include any regulation issued under any successor Code section.

"Fisch Family" shall mean any one or more of the following:

(i)    Gilbert R. Fisch;

(ii)   Marcia V. Fisch;

(iii)  the issue of Gilbert R. Fisch and Marcia V. Fisch;

(iv)   a trust for the exclusive benefit of one or more of the Persons referred to in any of the preceding clauses (i), (ii) or (iii);

(v)    a trust that gives to the spouse of any Person referred to in the preceding clauses (i), (ii) or (iii) a qualifying income interest for life (within the meaning of Section 2056(b)(7) of the Code) and gives the remainder to one or more Persons referred to in the preceding clauses (i), (ii), (iii), or (iv);

(vi)   any one or more Legal Representatives of a Person referred to in any of the preceding clauses (i), (ii) or (iii); and

(vii)  an Entity of which a majority of the voting or beneficial interest is owned, directly or indirectly, by one or more of the Persons referred to in any of the preceding clauses (i), (ii), (iii), (iv), (v), or (vi).

"Fisch Qualified Plan" shall mean a qualified retirement plan, simplified employee pension, or individual retirement account (collectively, a "qualified plan"), provided that one or more members of the Fisch Family represent a majority of the participants or beneficiaries in such qualified plan. Notwithstanding anything to the contrary contained in this Agreement, a qualified plan shall continue to qualify as a "Fisch Qualified Plan" even if the spouse of any of the issue of Gilbert R. Fisch and Marcia V. Fisch is a beneficiary; provided, however, that, after distributions are made to such spouse from the applicable Fisch Qualified Plan, such spouse shall not be a permitted transferee unless the Transfer to such spouse complies with the provisions of Article VII.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

2

"Consent of the General Partners" shall mean the written consent or approval of the General Partners who own in the aggregate more than fifty percent (50%) of the general interests in the Partnership.

"Consent of the Limited Partners" shall mean the written consent or approval of the Limited Partners who own in the aggregate more than fifty percent (50%) of the limited interests in the Partnership.

"Consent of the Partners" shall mean the written consent or approval of (a) the General Partners who own in the aggregate more than fifty percent (50%) of the general interests in the Partnership, and (b) the Limited Partners who own in the aggregate more than fifty percent (50%) of the limited interests in the Partnership.

"Entity" shall mean any general partnership, limited partnership, corporation, limited liability company, joint venture, trust, business trust, cooperative or association.

"General Partner" shall mean each of Gilbert R. Fisch and Marcia V. Fisch, in their capacities as General Partners, and any Person or Persons who become additional or successor General Partners as permitted by this Agreement, at the time of reference thereto, in his, her, their or its capacity as such. "General Partners" shall mean all of such Persons.

"Immediate Family" shall mean, with respect to any Person who is an individual, such individual's spouse, issue, siblings, and issue of siblings

"Legal Representative" shall mean, with respect to any individual, a duly appointed executor, administrator, guardian, conservator, personal representative or other legal representative appointed as a result of the death, minority or incompetency of such individual.

"Limited Partner" shall mean each of Gilbert R. Fisch, Marcia V. Fisch, Paul J. Fisch, Robert B. Fisch, Michael E. Fisch, and Steven H. Fisch, in their capacities as Limited Partners, and any Person or Persons who become additional or successor Limited Partners as permitted by this Agreement, at the time of reference thereto, in his, her, their or its capacity as such. "Limited Partners" shall mean all of such Persons.

"Partner" shall mean any General Partner or Limited Partner. "Partners" shall mean all of such Persons.

"Person" shall mean any individual or Entity, and the heirs, executors, administrators, successors and assigns of such person where the context so permits.

"Transfer" and any grammatical variation thereof shall refer to any sale, exchange, assignment, distribution, encumbrance, hypothecation, gift, pledge, transfer or other withdrawal, disposition or alienation in any way as to any interest as a Partner. Transfer shall specifically

3

include, without limitation, assignments and distributions resulting from death, incompetency, bankruptcy, liquidation and dissolution.

"Uniform Act" means the Florida Revised Uniform Limited Partnership Act, as in effect in the State of Florida, and codified as Sections 620.101 – 620.186 of the Florida Statutes, as the same may be amended from time to time.

## ARTICLE III

## NAME, CHARACTER, PLACE OF BUSINESS AND TERM OF PARTNERSHIP

1.     Name.  The Partnership shall be conducted under the name of PJFN Investors Limited Partnership.

2.     Purpose and Character of Business.  The purpose of the Partnership shall be to acquire, hold for investment, manage, lease, develop, improve, mortgage, sell and otherwise deal with real and personal property of any kind or nature, as the Partnership may now or hereafter acquire, and to make investments of any kind or nature.  The business of the Partnership shall include the conduct of such other activities as are necessary or desirable to protect or enhance the assets of the Partnership, to supervise and direct investments on behalf of the Partnership, or to otherwise carry out the purposes of this Agreement, including but not limited to, the power to borrow sums of money, to grant mortgages and other security interests, to loan money, to buy, sell, sell short, exchange, convert, trade in and otherwise deal with the investment assets of the Partnership, to enter into advisory or other agreements, contracts, ventures, partnerships or other arrangements, to hire, retain or otherwise engage advisors, agents, analysts or consultants in connection with any such transactions or activities, and to own shares of stock in corporations and ownership interests in other partnerships, all as more specifically provided below.  The business of the Partnership shall include the participation in such other activities as are necessary or appropriate to protect or enhance the assets of the Partnership or to carry out the purposes of the Partnership.

3.     Place of Business.  The principal place of business of the Partnership shall be at 106 North Village Way, Jupiter, FL  33458, or such other location or locations as the General Partners, acting with the Consent of the General Partners, may select from time to time.

4.     Agent for Service of Process.  The address of the Partnership in Florida and the name and address of the agent for service of process required to be maintained by Section 620.105 of the Uniform Act shall be Gilbert R. Fisch, 106 North Village Way, Jupiter, FL 33458, or such other address and/or agent for service of process location or locations as may be selected from time to time by the General Partners, acting with the Consent of the General Partners.

4

5.    Term and Dissolution.  The Partnership shall continue in full force and effect from the date first set forth above until the close of business on December 31, 2078, unless earlier terminated by the Consent of the Partners.

## ARTICLE IV

### CAPITAL CONTRIBUTIONS, ACCOUNTS, AND WITHDRAWALS

1.    Capital.  The capital of the Partnership shall be the aggregate amount of the cash or property contributed or agreed to be contributed by the Partners as hereinafter described in Paragraphs 2 and 3 of this Article IV.

2.    General Partners and Their Initial Contributions.  The General Partners are identified on Schedule A attached hereto, which Schedule shall be amended by the General Partners from time to time to reflect changes in the general interests of the General Partners permitted by this Agreement, and/or changes in the addresses of the General Partners.  The General Partners shall each contribute to the capital of the Partnership cash or property with Gross Asset Values (as such term is defined in Subparagraph b of Paragraph 5 of this Article IV) as described in Schedule B attached hereto.

3.    Limited Partner and Their Initial Contributions.  The Limited Partners are identified on Schedule A attached hereto, which Schedule shall be amended by the General Partners from time to time to reflect changes in the limited interests of the Limited Partners permitted by this Agreement, and/or changes in the addresses of the Limited Partners.  The Limited Partners shall each contribute to the capital of the Partnership cash or property with Gross Asset Values as described in Schedule B attached hereto.

4.    Additional Capital Contributions.  Any Partner may from time to time tender additional Capital Contributions to the General Partners who shall be free to accept or to reject the same on behalf of the Partnership.  The Partners are under no obligation to make equal Capital Contributions.  Each time that the General Partners accept an additional Capital Contribution, the share of each Partner in the profits and losses of the Partnership shall change accordingly as of a date convenient to the General Partners.

5.    Capital Accounts.

a.    Definition of Capital Account.  An individual capital account shall be maintained for each Partner.  The capital account of a Partner as of any date shall equal the amount of the Partner's paid-in capital contribution, thereafter increased by (i) any cash contributions, (ii) the Gross Asset Value, as defined in Subparagraph b of this Paragraph, of any property contributions he, she or it may make (net of liabilities secured by the property assumed by the Partnership or taken subject thereto), (iii) his, her or its distributive share of Partnership

5

profits and income (including tax-exempt income), and (iv) the amount of any Partnership liabilities that are assumed by such Partner or that are secured by any Partnership properties distributed to such Partner, and decreased by (i) such Partner's distributive share of Partnership losses and deductions, (ii) cash distributed by the Partnership to such Partner, (iii) the Gross Asset Value of any Partnership property distributed to such Partner, (iv) the amount of any liabilities of such Partner that are assumed by the Partnership or are secured by any properties contributed by such Partner to the Partnership, (v) expenditures of the Partnership not deductible in computing its taxable income, and (vi) reductions in the basis of Partnership assets not otherwise taken into account (such as the reduction in basis provided by Section 48(q) of the Code). Capital Accounts shall also be adjusted as provided in Subparagraph c of this Paragraph.

      b.    <u>Gross Asset Value</u>. "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

      (i) The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the gross fair market value of such asset, as determined by the contributing Partner and the Partnership.

      (ii) The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partners, as of the following times:

      (A)    The acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution;

      (B)    The distribution by the Partnership to a Partner of more than a de minimis amount of Partnership property other than money, unless all Partners receive simultaneous distributions of undivided interests in the distributed property in proportion to their interests in the Partnership; and

      (C)    The termination of the Partnership for federal income tax purposes pursuant to Code Section 708(b)(1)(B).

      (iii) If the Gross Asset Value of an asset has been determined or adjusted pursuant to Clauses (i) or (ii) of this Subparagraph b, such Gross Asset Value shall thereafter be adjusted by the depreciation taken into account with respect to such asset for purposes of computing profits and losses.

      c.    <u>Adjustments to Capital Accounts</u>. If the Gross Asset Values of Partnership assets are adjusted pursuant to Clause (ii) of Subparagraph b of this Paragraph 4, the capital accounts of all Partners shall be adjusted simultaneously to reflect the aggregate net adjustment as if the Partnership recognized gain or loss equal to the amount of such aggregate net adjustment.

    d.    <u>Transfer of Partnership Interest</u>. If a Partnership interest is transferred in accordance with the terms of Article VII of this Agreement, the transferee shall succeed to the capital account of the transferring Partner to the extent such capital account relates to the transferred interest.

    e.    <u>Other Adjustments</u>. See Article IX for additional provisions regarding capital accounts.

    f.    <u>Partners' Rights in Capital Account</u>. No Partner shall be entitled to receive interest from the Partnership on any capital account in the Partnership.

6.    <u>Withdrawals</u>. Withdrawals during the year shall be limited to such amounts as the General Partners, in their sole discretion, shall determine from time to time. All withdrawals by a Partner shall be charged to that Partner's capital account.

7.    <u>Loans by Partners</u>. If any Partner shall loan any monies to the Partnership, the amount of any such loan shall not be an increase of his, her or its capital contribution or entitle him, her or it to any increase in his, her or its share of the profits, losses or distributions of the Partnership; but the amount of any such loan shall be an obligation of the Partnership to such Partner and, unless otherwise provided for and agreed upon, shall be repaid to such Partner with interest at the rate of two percent (2%) above the prime rate in effect from time to time as set forth in The Wall Street Journal. No Partner shall have any obligation to make a loan to the Partnership.

ARTICLE V

INCOME AND LOSSES

1.    <u>Accounting</u>. The fiscal year of the Partnership shall be the calendar year. The net income or net loss of the Partnership shall be determined in accordance with approved and accepted accounting practice as soon as possible after the close of each fiscal year.

2.    <u>Income</u>. Except as provided in Paragraphs 4 and 5 of this Article V, the net income earned by the Partnership during each fiscal year shall be allocated among the Partners in proportion to the amount of the capital account of each, adjusted each time that there is a change in any Partner's capital account, as of a date convenient to the General Partners.

3.    <u>Losses</u>. The net loss incurred by the Partnership during any fiscal year shall be debited as of the close thereof to the capital accounts of the Partners in the same proportions in which the Partners are entitled to share the income pursuant to Paragraph 2 of this Article V.

7

4.    <u>Section 704(c) Items</u>.  Gain upon the sale or other disposition of any appreciated property which may be contributed to the Partnership shall be allocated among the Partners as provided in Section 704(c) of the Code.  The preceding sentence shall apply to the extent of the difference at the time of said contribution to the Partnership between (i) the fair market value of such properties or property, as applicable, and (ii) their bases or basis, as applicable.  Any special allocation of gain to any Partner pursuant to this Paragraph 4 shall be an allocation for tax purposes only and shall not affect such Partner's book capital account.

5.    <u>Distributions of Appreciated Property</u>.  For the purpose of making adjustments to book capital accounts only, a distribution of appreciated property to a Partner shall be treated as a distribution of the cash proceeds from a sale by the Partnership of such property at its then fair market value.

6.    <u>Distributions</u>.  Subject to the provisions of Subparagraphs a and b of this Paragraph, distributions to the Partners shall be made at such times as the General Partners, in their sole discretion, shall determine, and the General Partners shall have the right to hold in reserve and not distribute such amounts as they deem advisable or necessary for purposes of the Partnership.  At each time that distributions are made to the Partners, such distributions shall be made in accordance with the Partners' respective Percentage Interests in the Partnership.

a.    <u>Minimum Required Distributions</u>.  Notwithstanding anything to the contrary herein, in the event that a Partner is subject to the "minimum distribution rules" of Section 401(a)(9) of the Code, the General Partners shall make distributions to the Partners at such times and in such amounts as necessary to ensure compliance with the minimum distribution rules of Section 401(a)(9).

b.    <u>Distributions to Cover Taxes</u>.  Notwithstanding anything to the contrary herein, prior to the April 15th next succeeding the end of any fiscal year of the Partnership, the General Partners shall distribute to each Partner an amount equal to the taxes on the portion of the Partnership's income allocated to such Partner for such fiscal year, determined at the highest marginal rate of federal and state tax for the Partner who lives in the state with the highest tax rate.

7.    <u>Liability of Limited Partners</u>.  Any other provision of this Agreement to the contrary notwithstanding, no Limited Partner shall be personally liable for any of the debts or losses of the Partnership beyond the amount contributed by such Limited Partner to the capital of the Partnership.

ARTICLE VI

<u>RIGHTS, POWERS AND DUTIES OF THE GENERAL PARTNERS</u>

8

1.    <u>Management</u>. The overall management and control of the business and affairs of the Partnership shall be vested in the General Partners, acting with the Consent of the General Partners.

2.    <u>Authorized Acts</u>. Subject to the provisions of this Agreement and, specifically, Paragraph 9 of this Article VI, the General Partners, for, in the name of, and on behalf of the Partnership, are hereby authorized to perform all acts necessary or appropriate to carry on the business of the Partnership (acting in each instance with the Consent of the General Partners) without the consent of any Limited Partner, including without limitation:

a.    To buy, sell, sell short, exchange, convert and otherwise trade in any stocks, bonds, notes, debentures, put and call options, repurchase obligations, debt security options, warrants and rights, mortgages, and other interests in, to, and in respect thereof, certificates of deposit, mutual funds, partnership interests, money market instruments, bankers' acceptances, demand and time deposits, commercial paper, commodities, futures contracts, forward contracts, options on commodities and on futures contracts, foreign exchange commitments, spot (cash) commodities, currencies and financial instruments, swaps, caps, floors, collars, options and similar transactions involving or relating to commodities, currencies, securities, financial instruments, interest rates, securities or commodities interests and prices, indices and other items, and options, rights, warrants and other interests in, to, and in respect thereof, all in the discretion of the General Partners;

b.    To borrow money and issue evidences of indebtedness in furtherance of any or all of the purposes of the Partnership, and to secure the same by mortgage, pledge or other lien on the assets of the Partnership;

c.    To prepay, in whole or in part, refinance or modify any mortgage or loan of the Partnership;

d.    To employ persons, firms or corporations (including an Affiliate) to provide advisory, administrative, professional and other services to the Partnership, and to pay reasonable compensation for such services, provided that any contract with any Affiliate shall provide for compensation on terms and conditions no less favorable to the Partnership than any third-party contract would so provide;

e.    To place orders for the execution of any of the transactions authorized pursuant to the preceding Subparagraphs of this Paragraph 2, with or through such brokers, dealers, commercial banks or issuers as the General Partners may select, on United States and foreign exchanges, in over-the-counter markets, in interbank markets, and in privately negotiated transactions, and otherwise;

f.    To enter into any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of, the purposes

of the Partnership, so long as said activities and contracts may be lawfully carried on or performed by a partnership under the laws of the State of Florida; and

       g.     To execute and file amendments to the Certificate of Limited Partnership with the Florida Department of State.

    3.    <u>Action by the General Partners</u>.  The General Partners are specifically authorized, except as otherwise set forth in this Article VI, to execute, sign, seal and deliver in the name and on behalf of the Partnership:

       a.     Any deed, lease, mortgage, mortgage note, bill of sale, contract or any other instrument purporting to convey or encumber the assets of the Partnership;

       b.     Any and all instruments or documents requisite to carrying out the intention and purpose of this Agreement, including, without limitation, the filing of all business certificates and all amendments thereto, and any documents deemed advisable by the General Partners in connection with obtaining or maintaining any financing arrangements for the Partnership; and

       c.     Any and all agreements, contracts, documents, notes, certificates and instruments whatsoever involving the management and maintenance of the assets of the Partnership.

    4.    <u>Reliance on General Partners' Acts</u>.  Every contract, deed, mortgage, lease and other instrument executed by any General Partner shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof (a) this Partnership was in existence, (b) this Agreement had not been terminated or canceled or amended in any manner so as to restrict the authority of the General Partners (except as shown in certificates or other instruments duly filed in the office of the Florida Department of State), and (c) the execution and delivery of such instruments were duly authorized under this Agreement. Any person dealing with the Partnership or the General Partners may always rely on a certificate signed by any General Partner (a) as to the existence or non-existence of any fact or facts which constitute conditions precedent to acts by the General Partners or which are in any other manner germane to the affairs of the Partnership, (b) as to who is authorized to execute and deliver any instrument or document of the Partnership, (c) as to the authenticity of any copy of this Agreement and amendments thereto, or (d) as to any act or failure to act by the Partnership.

    5.    <u>General Management of Partnership Business</u>.  The business affairs of the Partnership shall be managed by the General Partners who shall devote such amount of their time and services as they, in their absolute discretion, deem necessary to discharge their obligations hereunder.

6.    Business Control.  No Limited Partner shall participate in, or have any control over, the Partnership business, except as required by law or except as otherwise specifically provided in this Agreement.  The Limited Partners hereby consent to the exercise by the General Partners of the powers conferred upon them by this Agreement, and to the employment of such brokers, agents or attorneys as the General Partners may determine, in their sole discretion, are necessary or advisable (notwithstanding that any parties to this Agreement may have an interest in, or be one of, such brokers, agents or attorneys).  No Limited Partner shall have any authority or right to act for or bind the Partnership.  No Limited Partner shall participate in the control of the business of the Partnership within the meaning of Section 620.129 of the Uniform Act.

7.    Indemnification.  The Partnership shall indemnify and save harmless each General Partner against any claims or liability incurred by him, her or it which indemnification shall include all reasonable expenses incurred, including reasonable legal and other professional fees and expenses, provided that the General Partner performed the acts or omissions giving rise to such claims or liabilities in good faith and in the belief that he, she or it was acting within the scope of his, her or its authority under this Agreement.  Nothing contained in this Paragraph shall be construed as imposing any liability on any Limited Partner of any kind whatsoever.

8.    Dealing with Affiliates.  Except as provided in the following Article VII, the General Partners may, in the name and on behalf of the Partnership, enter into such agreements, contracts or the like with any Affiliate individually, as distinguished from such Affiliate's capacity, if any, as a Partner, to undertake and carry out the business of the Partnership as if such Affiliate were an independent contractor; and the General Partners may obligate the Partnership to pay reasonable compensation for and on account of any such services.

9.    Prohibited Acts.  The General Partners hereby agree not to (a) take any action or omit to take any action in contravention of this Agreement, (b) confess a judgment against the Partnership, (c) terminate the Partnership by withdrawing or otherwise, or (d) take any action or omit to take any action which would cause the Partnership to be classified as an association taxable as a corporation for federal income tax purposes, including specifically, the failure of the General Partners to satisfy, on a continuing basis, all Internal Revenue Service requirements, as amended from time to time, for partnership classification.

10.    Tax Matters Partner.  Gilbert R. Fisch is hereby designated as the Tax Matters Partner within the meaning of Section 6231(a)(7) of the Code.

## ARTICLE VII

### TRANSFER OF PARTNERSHIP INTERESTS

1.    General Restriction on Transfers.  No General Partner or Limited Partner shall

11

Transfer all or any part of his, her or its interest in the Partnership or otherwise withdraw from the Partnership except as provided in this Paragraph and the following Paragraph 2. Every Transfer permitted by this Article VII shall nevertheless be subject to the following:

a.    In the event of any Transfer, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument effecting such Transfer. The transferee shall execute such additional instruments as shall be reasonably required by the General Partners, which shall include an agreement acknowledging and consenting to the terms of this Agreement. If and for so long as such instruments are not so executed and filed, the Partnership need not recognize any such Transfer for any purpose.

b.    Upon the admission or withdrawal of a Partner, <u>Schedule A</u> and/or the certificate of limited partnership (if applicable) shall be amended appropriately by the General Partners to reflect the then existing names and addresses of the Partners and their interests in the Partnership.

c.    Any Person who acquires in any manner whatsoever an interest in the Partnership, whether or not such Person has accepted and assumed in writing the terms and provisions of this Agreement or been admitted into the Partnership as a Partner as provided in this Article VII, shall be deemed, by acceptance of the acquisition thereof, to have agreed to be subject to and bound by all of the terms, conditions, and obligations of this Agreement with respect to such interest and shall be subject to the provisions of this Agreement with respect to any subsequent Transfer of such interest.

d.    Any Transfer in contravention of this Paragraph 1 shall be void and ineffective, and shall not be binding upon the Partnership.

2.    <u>Permitted Transfers</u>. The following Transfers shall be permitted; provided, however, that any such Transfer shall be subject to the provisions of Subparagraphs a, b, c, and d of the preceding Paragraph 1.

a.    An interest as Partner may be Transferred from time to time to one or more members of the Fisch Family or to a Fisch Qualified Plan.

b.    An interest as Partner may be Transferred from time to time with the Consent of the General Partners.

3.    <u>Rights of Unadmitted Assignees</u>. A person who acquires one or more Partnership interests but who is not admitted to the Partnership as a Partner shall be entitled only to allocations and distributions with respect to such interests in accordance with this Agreement, and shall have no right to any information or accounting of the affairs of the Partnership, shall not be entitled to inspect the books or records of the Partnership, and shall not have any of the rights of a General Partner or a Limited Partner under the Uniform Law or this Agreement.

12

## ARTICLE VIII

### TERMINATION OF PARTNERSHIP

1.   <u>Return of Capital</u>.  All Partners shall have the right to the return of their positive capital account balances at the end of the term of the Partnership.  All distributions pursuant hereto shall be made in the priority set forth in the following Paragraph 5 of this Article VIII, provided, however, that a reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partners to minimize the normal losses attendant upon a liquidation.  See Article IX for additional provisions regarding liquidation distributions.

2.   <u>Liability of General Partners</u>.  The General Partners shall not be personally liable for the return of the capital contributions of Limited Partners.

3.   <u>Medium of Payment</u>.  Except as provided hereinbefore, Limited Partners have only the right to receive cash in return for their contributions to the capital of the Partnership. The General Partners, however, may, at any time and in their sole discretion, make distributions wholly or partly in kind, and any such distributions shall be accepted by the distributee Partners notwithstanding the provisions of Section 620.145 of the Uniform Act.

4.   <u>Certificate of Cancellation</u>.  After dissolution of the Partnership and liquidation of the assets, the General Partners shall execute, acknowledge and cause to be filed a certificate of cancellation of the Partnership.

5.   <u>Disposition of Proceeds</u>.  Subject to the provisions of Section 620.162 of the Uniform Act, the proceeds of the liquidation of the assets of the Partnership shall be applied and distributed in the following order of priority:

a.   To the payment of the debts and liabilities of the Partnership, other than credit balances in Partners' capital accounts, and the expenses of liquidation.

b.   To the setting up of any reserves which the General Partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership or of the General Partners arising out of, or in connection with, the Partnership or its liquidation. Such reserves shall be paid over by the General Partners to any attorney at law as escrowee. Such escrowee shall hold such reserves in one or more interest-bearing, insured accounts for the purpose of disbursing the same in payment of any of the aforementioned contingencies and, at the expiration of such period as the General Partners shall deem advisable, shall distribute the balance thereafter remaining in the manner provided in the following clauses of this Subparagraph b.

(i) To the Partner with the greatest positive capital account until his, her or its capital account balance is equal to that of the Partner or Partners with the next greatest capital account(s), then equally to such Partners with the then greatest capital accounts, and so forth until such time as all positive capital account balances have been reduced to zero.

(ii) Any balance remaining shall be distributed among all Partners in the same proportions in which the Partners are respectively entitled to share in the profits and losses of the Partnership pursuant to Paragraphs 2 and 3 of Article V hereof. Each of the Partners shall be furnished with a statement prepared by the Partnership's accountants, which statement shall set forth the assets and liabilities of the Partnership as of the date of complete liquidation and the General Partners' proposed final disposition of such assets and liabilities.

6.      Makeup of Deficit Balance. If there is a deficit balance in the capital account of a General Partner following the liquidation of such General Partner's interest in the Partnership, such General Partner shall, within sixty (60) days after the date of such liquidation, pay to the Partnership, in cash or cash equivalents, the full amount of such deficit balance. Any amount paid to the Partnership pursuant to this Paragraph 6 shall, if the Partnership has terminated, be disbursed in accordance with the provisions of the immediately preceding Paragraph 5.

ARTICLE IX

SUBSTANTIAL ECONOMIC EFFECT

1.      Compliance with Allocation Regulations. Notwithstanding anything to the contrary contained herein, all Partnership allocations shall be made, and this Agreement shall in all ways be construed, to contain all necessary provisions such that its allocations have substantial economic effect as provided in the Allocation Regulations. In the event that the Allocation Regulations require the Partnership Agreement to contain any express language for such purpose, such language is hereby adopted by reference thereto. To the greatest extent possible, and consistent with the provisions of the preceding sentence, (a) such allocations shall be made in the manner expressly set forth in this Agreement, and (b) this Agreement shall not be construed to contain any provisions not expressly set forth herein.

2.      Maintenance of Capital Accounts. Notwithstanding any provision to the contrary, the capital accounts of the Partners shall be determined and maintained as provided in the Allocation Regulations.

3.      Liquidation Distributions. Notwithstanding any provision to the contrary, liquidation proceeds shall be distributed according to the positive balances of the Partners' capital accounts as provided in the Allocation Regulations.

14

4.    <u>Restoration of Capital Account By General Partner</u>.  Notwithstanding any provision to the contrary, any General Partner with a deficit capital account upon liquidation is unconditionally required to restore such deficit as provided in the Allocation Regulations.

5.    <u>Alternate Test for Economic Effect for Limited Partners</u>.  No Limited Partner with a deficit capital account upon liquidation shall be required to restore such deficit.  Rather, this Agreement hereby adopts the "qualified income offset" provisions contained in the Allocation Regulations to the minimum extent necessary to meet the aforenoted alternate test for economic effect.

6.    <u>Allocations of Nonrecourse Deductions</u>.  Notwithstanding any provision to the contrary, nonrecourse deductions shall be allocated in accordance with the Partners' interests in the Partnership pursuant to the test provided for and in accordance with the requirements set forth in the Allocation Regulations.  The Partnership Agreement hereby adopts the "minimum gain chargeback" provisions contained in the Allocation Regulations to the minimum extent necessary to meet the aforenoted test for allocations of nonrecourse deductions.  In any year in which the "qualified income offset" and the "minimum gain chargeback" both apply, they shall be applied in the order and manner consistent with the Allocation Regulations.

ARTICLE X

POWER OF ATTORNEY - BOOKS AND RECORDS

1.    <u>Power of Attorney</u>.  Each of the Limited Partners constitutes and appoints the General Partners as his, her or its true and lawful attorney, and in his, her or its name, place, and stead, to make, execute, sign, acknowledge, and file:

a.    Any certificate or certificates of amendment under the Uniform Act, specifically including a certificate of amendment reflecting the admission of a successor General Partner pursuant to Article VII hereof;

b.    Any certificate or other instrument which may be required to be filed by the Partnership under the laws of the State of Florida;

c.    Any and all amendments or modifications of the instruments described in the preceding Subparagraphs a and b of this Paragraph 1; and

d.    All documents which may be required to effectuate the dissolution and termination of the Partnership and cancellation of its certificate of limited partnership, as amended from time to time.

15

2.    Fiscal Year. The Partnership shall keep its books and file its income tax returns on the basis of a calendar year.

3.    Books and Records. At all times during the continuance of the Partnership, the General Partners shall keep or cause to be kept full and true books of account, in which shall be entered fully and accurately each transaction of the Partnership. All of such books of account together with copies of the certificate of limited partnership and of any amendments thereto, such copies to be receipted by the office of the Florida Department of State, shall at all times be maintained at the principal office of the Partnership, and shall be open, upon ten (10) business days' prior written request, to the reasonable inspection and examination of the Limited Partners or their representatives.

4.    Financial Statements, Tax Returns, and Accountants. The General Partners shall, within one hundred twenty (120) days after the end of the Partnership's fiscal year, deliver to the Limited Partners annual financial statements prepared in accordance with generally accepted accounting principles, or any other comprehensive basis of accounting at a level of service (e.g., compilation, review, or audit) now or hereafter recognized by the American Institute of Certified Public Accountants. Such basis of accounting and level of service shall be selected by the General Partners in their sole discretion. The General Partners shall also deliver to the Limited Partners within ninety (90) days after the end of the Partnership's fiscal year information sufficient to enable them to file their respective individual income tax returns for such year, and shall, upon request of any Limited Partner, provide to each Limited Partner a full and complete copy of the Partnership's annual federal and state partnership information returns for such year. All such annual financial statements and tax returns shall be prepared by such firm of accountants as the General Partners shall, in their sole discretion, employ for the preparation thereof and for the purpose of rendering accounting services to the Partnership.

5.    Section 754 Election. Upon the request of any Partner, or the executor, administrator or legal representative of the estate of any deceased Partner, the Partnership shall file an election regarding adjustment of the basis of Partnership property pursuant to Section 754 of the Code.

6.    Bank Accounts. All funds of the Partnership shall be deposited in the Partnership name and/or in such trade name or names as the General Partners shall select, in such bank account or accounts as shall be designated by the General Partners. Withdrawals from any such bank account or accounts shall be made upon such signature or signatures as the General Partners may designate.

7.    Nominees. For purposes of convenience in conveyancing, or for any other reason, record legal title to any real or personal properties of the Partnership may be acquired and/or held in the name of a nominee of the Partnership. Without limiting the generality of the foregoing, said nominee may be a nominee trust established for the benefit of the Partnership.

16

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

1.    <u>Notices</u>.  All notices shall be effective if given in writing, by registered or certified mail, and addressed, if to the Partnership to its principal office, and if to a Partner, to the last address of record on the Partnership books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

2.    <u>Amendment of Agreement</u>.  The General Partners, acting with the Consent of the General Partners, may adopt any amendment to this Agreement, retroactively or prospectively, which in the opinion of counsel is for the purpose of clarifying or removing ambiguities or inconsistencies, or which may be necessary to comply with the law of any state, or to enable the Partnership to qualify or to continue to qualify as a partnership for federal tax purposes, or to enable the Partners to qualify or to continue to qualify for their allocations of income or loss for federal tax purposes, or which otherwise does not materially and adversely affect the rights of any Limited Partner; provided, however, that except as specifically set forth above with reference to federal taxes and state law, this Agreement shall not be amended without the unanimous written consent of all Partners if the effect of any such amendment would be (a) to increase the liability or change the capital contributions required of any Partner, (b) to change the provisions of this Agreement relating to federal income tax or distribution allocations, (c) to change the rights of any Partner upon liquidation of the Partnership, (d) to change the provisions of this Agreement relating to the termination of the Partnership, (e) to change any provisions of Article VII of this Agreement, (f) to enlarge, detract from, or otherwise modify the purposes of the Partnership, or the character of its business, (g) to impose or create any new or additional liability on any Limited Partner, or enlarge the obligation of any Partner to make contributions to the capital of the Partnership as provided in this Agreement, or (h) to enlarge, detract from, or otherwise modify any obligation of the General Partners as provided in this Agreement.

3.    <u>Captions</u>.  All paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the content of such Agreement.

4.    <u>Benefit</u>.  This Agreement shall be binding upon, and shall inure to the benefit of the parties, their executors, legal representatives, successors and assigns.

5.    <u>Gender</u>.  Where a noun or pronoun is used in the Agreement, said noun or pronoun shall be regarded as referring to the appropriate person or persons, even though it be incorrect as to gender or as to being in the singular or plural.

6.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, all of which taken together shall be deemed one original.

17

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the day and year first written above.

**GENERAL PARTNERS:**

_Gilbert R Fisch_
Gilbert R. Fisch

_Marcia V. Fisch_
Marcia V. Fisch

**LIMITED PARTNERS:**

| | |
|---|---|
| _____ | _____ |
| Gilbert R. Fisch | Paul J. Fisch |
| _____ | _____ |
| Marcia V. Fisch | Robert B. Fisch |
| _____ | _____ |
| Steven H. Fisch | Michael E. Fisch |

_Children will file separately_

18

## PJFN INVESTORS LIMITED PARTNERSHIP

### SCHEDULE A

### PARTNERS

### GENERAL PARTNERS:

Gilbert R. Fisch
106 North Village Way
Jupiter, FL  33458

Marcia V. Fisch
106 North Village Way
Jupiter, FL  33458

### LIMITED PARTNER:

Gilbert R. Fisch
106 North Village Way
Jupiter, FL  33458

Marcia V. Fisch
106 North Village Way
Jupiter, FL  33458

Paul J. Fisch
5111 Coffee Tree Lane
North Syracuse, NY  13212

Robert B. Fisch

_____

_____

Michael E. Fisch

_____

_____

Steven H. Fisch
50 Stanley Road
Waban, MA  02468

19

## PJFN INVESTORS LIMITED PARTNERSHIP

### SCHEDULE B

### INITIAL CONTRIBUTIONS TO CAPITAL

| GENERAL PARTNERS: | CONTRIBUTION | PERCENTAGE INTEREST |
|---|---|---|
| Gilbert R. Fisch | $ | % |
| Marcia V. Fisch | $ | % |
| LIMITED PARTNERS: | | |
| Gilbert R. Fisch | $ | % |
| Marcia V. Fisch | $ | % |
| Paul J. Fisch | $ | % |
| Robert B. Fisch | $ | % |
| Michael E. Fisch | $ | % |
| Steven H. Fisch | $ | % |
| Total | $ | 100% |

Form **SS-4**

(Rev. December 2001)
Department of the Treasury
Internal Revenue Service

## Application for Employer Identification Number

(For use by employers, corporations, partnerships, trusts, estates, churches,
government agencies, Indian tribal entities, certain individuals, and others.)
► See separate instructions for each line.    ► Keep a copy for your records.

| EIN | |
| --- | --- |
| OMB No. 1545-0003 | |

**1** Legal name of entity (or individual) for whom the EIN is being requested
PJFN INVESTORS LIMITED PARTNERSHIP

**2** Trade name of business (if different from name on line 1)

**3** Executor, trustee, "care of" name

**4a** Mailing address (room, apt., suite no. and street, or P.O. Box)
106 NORTH VILLAGE WAY

**4b** City, state and ZIP code
JUPITER FL 33458

**5a** Street address (if different) (Do not enter a P.O. box.)

**5b** City, state, and ZIP code

**6** County and state where principal business is located
PALM BEACH COUNTY, FLORIDA

**7a** Name of principal officer, general partner, grantor, owner, or trustor
GILBERT R. FISCH, General Partner

**7b** SSN, ITIN, or EIN

**8a** Type of entity (check only one box)
- ☐ Sole proprietor (SSN) _____
- ☒ Partnership
- ☐ Corporation (enter form number to be filed) ►
- ☐ Personal service corp.
- ☐ Church or church-controlled organization
- ☐ Other nonprofit organization (specify) ►
- ☐ Other (specify) ►

- ☐ Estate (SSN of decedent) _____
- ☐ Plan administrator (SSN) _____
- ☐ Trust (SSN of grantor) _____
- ☐ National Guard           ☐ State/local government
- ☐ Farmers' cooperative      ☐ Federal government/military
- ☐ REMIC                     ☐ Indian tribal governments/enterprises
- Group Exemption Number (GEN) ►

**8b** If a corporation, name the state or foreign country (if applicable) where incorporated

| State | Foreign country |
| --- | --- |
| | |

**9** Reason for applying (check only one box)
- ☒ Started new business (specify type) ► *investment*
- ☐ Hired employees (Check the box and see line 12.)
- ☐ Compliance with IRS withholding regulations
- ☐ Other (specify) ►

- ☐ Banking purpose (specify purpose) ►
- ☐ Changed type of organization (specify new type) ►
- ☐ Purchased going business
- ☐ Created a trust (specify type) ►
- ☐ Created a pension plan (specify type) ►

**10** Date business started or acquired (month, day, year)

**11** Closing month of accounting year
December

**12** First date wages or annuities were paid or will be paid (month, day, year). Note: *If applicant is a withholding agent, enter date income will first be paid to nonresident alien. (month, day, year)* ► n/a

**13** Highest number of employees expected in the next 12 months. Note: *If the applicant does not* . . . . . . . . . .
*expect to have employees during the period, enter "-0-".* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ►

| Agricultural | Household | Other |
| --- | --- | --- |
| 0 | 0 | 0 |

**14** Check one box that best describes the principal activity of your business.
- ☐ Construction   ☐ Rental & leasing   ☐ Transportation & warehousing   ☐ Health care & social assistance   ☐ Wholesale - agent/broker
- ☐ Real estate    ☐ Manufacturing      ☐ Finance & insurance           ☐ Accommodation & food service   ☐ Wholesale - other   ☐ Retail
- ☒ Other (specify) *investments*

**15** Indicate principal line of merchandise sold; specific construction work done; products produced; or services provided.
n/a

**16a** Has the applicant ever applied for an employer identification number for this or any other business? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No
Note: *If "Yes," please complete lines 16b and 16c.*

**16b** If you checked "Yes" on line 16a, give applicant's legal name and trade name shown on prior application if different from line 1 or 2 above.
Legal name ► n/a          Trade name ► n/a

**16c** Approximate date when, and city and state where, the application was filed. Enter previous employer identification number if known.

| Approximate date when filed (mo., day, year) | City and state where filed | Previous EIN |
| --- | --- | --- |
| n/a | n/a | n/a |

**Third Party Designee**

Complete this section only if you want to authorize the named individual to receive the entity's EIN and answer questions about the completion of this form.

Designee's name
Juliette Galicia Pico, Esq.

Address and ZIP code  Lourie & Cutler, P.C.
60 State Street, Boston, MA  02109

Designee's telephone number (include area code)
617-742-6720

Designee's fax number (include area code)
617-742-5720

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

Name and title (type or print clearly) ► Gilbert R. Fisch, General Partner

Signature ►                          Date ►

Applicant's telephone number (include area code)

Applicant's fax number (include area code)

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

Form **SS-4** (Rev. 12-2001)

ISA
STF FED7769F.1



U.S. POSTAGE PAID
PALM BEACH GARD, FL
MAR 24 09
AMOUNT
$7.60
00006597-18
75281
0000

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL

7008 3230 0000 0515 9766

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

P J F N INVESTORS L P
ATTN: GILBERT FISCH
108 WINSOR POINTE DRIVE
PALM BEACH GARDENS, FL 33418