**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ADV. NO. 08-01789 (BRL) |
| Plaintiff, | HON. BURTON R. LIFLAND |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | (Substantively Consolidated) |
| Defendant. | |
| In the Matter of: | NOV 1 8 2009 |
| BERNARD L. MADOFF, | U.S. BANKRUPTCY COURT SDNY |
| Debtor. | |

**OPPOSITION OF MILTON AND CYNTHIA LEVIN TO NOTICE OF TRUSTEE'S DETERMINATION OF SIPC CLAIM**

CYNTHIA LEVIN certifies and declares under penalty of perjury as follows:

**Introduction**

1. I respectfully submit this statement to oppose the Notice of Trustee's Determination of Claim, dated October 19, 2009 (the "Notice of Determination"), denying a claim that my husband, Milton Levin, and I submitted for relief from the losses that we sustained due to our investments with Bernard L. Madoff Investment Securities, LLC ("BMIS") and to object to the Trustee's definition of "net equity."

**Procedural History**

2. On or about February 23, 2009, my husband, Milton Levin, and I submitted a Customer Claim, Claim No. 004223, (the "Claim"), to the Trustee for BMIS pursuant to the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA") in

connection with a retirement account that we held with BMIS, Account No. 1L0104, (the "Account").

3. By the Notice of Determination, dated October 19, 2009, I learned that my Claim for relief from the Securities Investor Protection Corporation ("SIPC") was denied.

4. The Notice of Determination states that no securities were purchased for the Account. "Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $925,500.00)…is greater than the amount that was deposited with BLMIS," which amount totals $676,000.00. (Notice of Determination at 1.)

5. Annexed to the Notice of Determination is a table purports to indicate when my husband and I deposited or withdrew funds from the Account, including the date of each transaction, a transaction description, the amount of each deposit, and the amount of each withdrawal (the "Table"). The table also purportedly reflects the Account's balance and an "adjusted" balance that does not include "fictitious gains" that were fabricated by BMIS.

6. I maintained numerous BMIS statements and forwarded copies of them to the Trustee along with the Claim. The statements that I maintained, however, do not provide a comprehensive description of the deposits and withdrawals on the Account.

7. It is my belief that the total amount that my husband and I withdrew from the Account did not exceed the total amount that we deposited.

41792/0001-6098357v1

8. In order to understand the Trustee's position, with which we disagree, I hereby request copies of the documents that were used to create the Table and that support the Trustee's Notice of Determination.

## Background and Objection to Notice of Determination

9. Beginning in or around 1996, my husband and I opened the Account with BMIS. My records of the Account go back to 2000, but the Notice of Determination's Table reflects that deposits were made as early as May 13, 1996. I have no reason to believe the Table is inaccurate in that regard.

10. We intended to use the BMIS account as a retirement account. Indeed, my husband is 83 years old and retired in 2001. Further, he is unable to return to work due to his medical condition, and I am responsible for his care.

11. In addition, I am 72 years old and retired in 2002.

12. Over the years that my husband and I invested with BMIS, we maintained a principal balance for the Account that, as far as we could tell, typically exceeded $500,000.

13. As part of our retirement strategy, we withdrew from the Account almost exclusively for the purpose of applying the withdrawn funds towards tax obligations, some of which were actually based on apparent profits from our investments with BMIS.

14. We made those withdrawals based upon the assumption that our principal investment with BMIS was safe and that it exceeded approximately $500,000. We would not have made the withdrawals if we had reason to believe that the Account's balance was less than $500,000.

3

41792/0001-6098357v1

15. Indeed, as of November 30, 2008, based on a statement from BMIS, we were under the impression that the Account's balance was $632,346.27.

16. If we had reason to believe that the Account balance was below $500,000, we would have covered our tax obligations by making withdrawals from a different investment account that we held with KML Asset Management, Inc. ("KML"), an investment fund where we placed a substantial portion of our savings.

17. KML, however, also had substantial investments with BMIS and suffered dramatic losses due to the Madoff fraud. KML is presently in liquidation and it is not making any payments to Class B investors like me and my husband.

18. The losses that we suffered due to the Madoff fraud have wiped our retirement savings, and the Notice of Determination denying our Claim for SIPC relief has deepened our financial distress and risked our ability to sustain ourselves.

19. Based on the foregoing, I respectfully object to the Trustees' definition of "net equity" as it relates to this action. Based upon our reasonable expectations that the principal of our investment in BMIS was secure, the Court should define net equity as equal to the value reflected in our November 2008 BMIS Account statement, which was $632,346.27.

## Request for Reversal of Determination

WHEREFORE, I respectfully request this Court define net equity as the value of the customer's November 2008 BMIS account statement, which was $632,346.27, and

WHEREFORE, I respectfully request that this Court reverse the Trustee's Notice of Determination and award $500,000 to Milton and Cynthia Levin based on the Account's balance as of November 30, 2008, which exceeded $500,000.

                              Milton Levin and Cynthia Levin

DATED: November 13, 2009

By: _____
     Cynthia Levin