ARENT FOX LLP
Heike M. Vogel
1675 Broadway
New York, NY 10019
Telephone: (202) 484-3900
Facsimile: (202) 484-3990

*Attorneys for Marjet LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | )<br>)<br>)<br>) Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | )<br>) SIPA Liquidation |
| v. | )<br>) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | )<br>)<br>) |
| Defendant. | ) |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Marjet LLC, by and through its undersigned counsel, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

## BACKGROUND

1. In or about September 2003, Marjet LLC ("Marjet") opened an account (Account No. 1M0193) with Bernard L. Madoff Investment Securities LLC ("Madoff"). Marjet is a "customer" of Madoff, as defined by the Securities Investor Protection Act of 1970 ("SIPA").

2. The Marjet Account was initially funded by a transfer of $4,000,000.00 from an existing account with Madoff, Account No. 1K015130. The existing account was held by an individual, Mr. Edward Kaplan. Mr. Kaplan is a "customer" of Madoff as defined by SIPA.

3. From creation of the Marjet Account, Marjet regularly received purchase confirmations and monthly statements detailing the securities held in its account.

4. Marjet's final Madoff statement ("Final Statement"), dated November 30, 2008, identifies securities owned having a value of approximately $3,690,681.41.

5. On December 11, 2008, an action was commenced against Madoff by the Securities and Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceedings to the United States Bankruptcy Court for the Southern District of New York) [Docket No. 4]. Irving H. Picard was appointed Trustee (the "Trustee") and charged with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

6. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. *See* Order [Docket No. 12].

7. The December 23, 2008 Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefore*." *See* Order at 6 (emphasis added).

8. On or about March 4, 2009, Marjet timely filed a Customer Claim Form for the Marjet Account based on the Final Statement from Madoff in the amount of $3,690,681.41. *See* Marjet Customer Claim Form, attached as Exhibit B.[1]

9. On October 19, 2009, the Trustee sent Marjet a Notice of Trustee's Determination of Claim ("Determination Letter") stating that Marjet's claim was (1) denied because no securities were ever purchased for its account; (2) Marjet withdrew more from its account than it contributed; and (3) the $4,000,000 transferred into the account was adjusted to $2,500,000. *See* Determination Letter. As a result, and based on the Trustee's determined "money in/money out" accounting method, the Trustee allegedly determined that Marjet was not entitled to relief. Marjet objects to the Determination Letter for the reasons described below.

## OBJECTIONS

10. **First Objection**. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtors' books and records." *See* December 23, 2008 Order at 5 [Docket No. 12]. The Marjet Claim was evidenced by the Final Statement, showing a final balance of $3,690,681.41 and listing the securities purportedly purchased for the account. The Final Statement is the best evidence of the amount owed to Marjet based on "Debtors' books and records" and by which the Trustee is bound. Accordingly, Marjet's Claim should be allowed in the full amount of $3,690,681.41.

---

[1] The tax identification number on Exhibit B has been redacted to protect Marjet's security.

11. **Second Objection**. The Trustee failed to set forth a legal basis for the methodology employed in determining the claim. *See* Determination Letter. Further:

    a. The Determination Letter does not clearly provide the legal justification and basis of calculating the downward adjustment of $4,000,000 deposit to $2,500,000, as required by the Court's December 23, 2008 Order. *See* Order [Docket No. 12];

    b. The Determination Letter is insufficient to rebut the *prima facie* validity of the Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

    c. The Determination Letter violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003); and

    d. The Determination Letter includes an exhibit (Table 1) that purportedly adjusts the money deposited but is completely unsubstantiated.

12. **Third Objection**. The Trustee's determination of "net equity" fails to honor the legitimate expectations of a customer and is incorrect as a matter of law.

13. The Trustee failed to set forth a legal basis for the position that he can calculate Marjet's "net equity" based on his valuation of deposits minus withdrawals without regard to the value of the securities reflected in Marjet's account statements or interest. The Trustee's "money in/money out" approach is incorrect for several reasons:

14. The Trustee's methodology contradicts the plain language of SIPA, which defines "net equity" as the value of the securities positions in the customer's account as of the SIPA filing date, minus any amount the customer owes the debtor. Specifically,

> The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer …. ; minus
>
> (B) any indebtedness of such customer to the debtor on the filing date…

15 U.S.C. § 78lll(11).

15. Consistent with this definition of "net equity," Marjet filed a customer claim for approximately $3,690,681.41, which is the "sum which would have been owed" to it if the securities positions reflected in its Final Statement had been liquidated, minus any amounts owed to Madoff. Despite the unambiguous and express language of SIPA, the Trustee has taken the position that Marjet's "net equity" is the total amount of the deposits in its account (adjusted downward based on the same improper "net equity" calculation for a separate customer account) minus the total amount withdrawn. The Trustee's proposed methodology is inconsistent with the language of SIPA and is unsupported by relevant case law. In fact, the Trustee's approach requires reading new words and concepts into the statute, a result prohibited by principles of statutory construction.

16. In addition, the Trustee's method is inconsistent with the Rules promulgated under SIPA. The Series 500 Rules promulgated under SIPA by the Securities Investor Protection Corporation ("SIPC") provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customers. *See* 17 C.F.R. § 300.501, 300.502. Pursuant to the Rules, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased for or sold to the customer's account. *See* § 300.502.

5

17. Further, the Trustee's approach is inconsistent with the legislative history of the statute. SIPA legislative history reflects Congress's intention that broker-dealer customers have valid "net equity" claims even when the securities identified on their confirmation sheets and account statements were never purchased. Both the Senate and House Reports on the 1978 amendments clearly reflect that a customer's net equity claim is not dependent on whether the securities were actually purchased by the broker-dealer.

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, <u>never purchased</u> or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account…. By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations….

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, <u>never purchased</u>, or even stolen, this is not always possible. Accordingly, [when securities are not available, customers] will receive cash based on the market value as of the filing date.

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added). Based on regular monthly statements and trade confirmations, Marjet believed and expected that Madoff executed such transactions and that its account actually held such securities. The fact that the securities listed in the confirmations and account statements were never actually purchased is irrelevant in determining Marjet's net equity.

18. Furthermore, the Trustee's formula is an improper and wholly inadequate measure of loss. Marjet deposited funds with Madoff in the expectation that the amount would grow and its statements reflected this. In *Visconsi v. Lehman Brothers*, 244 Fed. Appx. 708 (6th Cir. 2007), the Sixth Circuit considered a Ponzi scheme case and rejected the same money

6

in/money out methodology employed by the Trustee in this case. The Sixth Circuit stated that "the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages." *Visconsi*, 244 Fed. App. at 713. Similarly, Marjet's net equity is the full amount reflected on its Final Statement, not the Trustee's calculation of money in/money out.

19. The Trustee's methodology also conflicts with other federal laws, including, but not limited to, the Internal Revenue Code. For example, IRS Rev. Proc. 2009-20, issued by the IRS on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes. Yet the Trustee simultaneously is taking the position that the income earned by customers is not the customer's money.

20. In sum, the Trustee has created his own definition of "net equity" that is inconsistent with statutes, regulations, and SIPC's own course of conduct.

21. **Fourth Objection**. The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the $4,000,000 initial deposit into the Marjet Account to $2,500,000. Upon information and belief, the Trustee reduced the transfer amount based on an undisclosed calculation relating to a separate customer account. No legal basis exists for such an analysis. The Trustee's calculation violates SIPA.

22. 15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). The Trustee calculated "net equity" by reducing the principal deposit into the Marjet Account for unstated reasons relating to a separate customer account. This is inconsistent with the language of the statute and Rules promulgated thereunder.

23. The statutory definition of "net equity" expressly prohibits the adjustment employed by the Trustee in this case: "[i]n determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers." 15 U.S.C. § 78lll(11).

24. The Series 500 Regulations make clear the same requirement that a customer account be considered uniquely, and not with reference to another account: "Accounts held by a customer in different capacities, as specified by these rules, shall be deemed to be accounts of 'separate' customers." 17 C.F.R. § 300.100(b).

25. The Trustee's method is inconsistent with both the statute and Rules as it does not consider customer accounts separately, but rather expressly adjusted a deposit into the Marjet account because of the trustee's independent investigation into and analysis of the net equity of a separate customer account. This approach is flatly prohibited by the statute and regulations.

26. **Fifth Objection**. The Trustee's calculation is an improper avoidance under the Bankruptcy Code. The Trustee's action in reducing the amount shown on Marjet's Customer Claim by any prior gains is an attempt to avoid such gains without alleging any grounds for establishing an avoidable claim under the Bankruptcy Code. *See* Bankruptcy Code § 502(a). The Trustee has offered no factual or legal basis for an avoidance, and accordingly the Trustee's Determination Letter should be stricken, or alternatively, the Trustee should describe his position in detail, including all relevant facts, legal theories, and authorities.

27. **Alternate Considerations/Relief**: In the event that the Court determines that the money in/money out formula is permissible, then in the alternative, Marjet is entitled to recover interest or appreciation on the investments.

a. Under New York law, funds deposited with debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Accordingly, the Marjet account should be recalculated by adding interest on all funds deposited.

b. Under New York law, customers are entitled to any returns that Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, Marjet's claim should be recalculated by adding the amounts earned by Madoff on its deposits. *See, e.g.*, *Steinberg v. Sherman*, No 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008).

c. Marjet is entitled to interest on its investments under federal securities law. *See, e.g.*, *Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986) (the statute's "deterrent purpose is ill served by a too rigid insistence on limiting plaintiffs to recovery of their 'net economic loss'").

28. Further, even if the Court determines that the Trustee's money in/money out calculation is permissible, the Trustee's adjustment of the $4,000,000 deposit into the Marjet account represents a failure to consider separately customer accounts as required under statute and regulations. Accordingly, the $4,000,000 must be credited in full, with the result that Marjet is entitled to recover $1,368,500.

## **RESERVATION OF RIGHTS**

29. Marjet reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground(s) shall not be construed as a waiver of Marjet's right to object on any additional grounds.

30. Marjet reserves all rights set forth in Rule 9014, including, without limitation, the right to discovery. *See* Fed. R. Bankr. P. 9014.

31. Marjet reserves all objections as to competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

32. Marjet incorporates by reference all reservations of rights set forth in Marjet's Customer Claim.

33. Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, Marjet respectfully requests that the Court waive the requirement that it file a separate memorandum of law in support of this Objection because this Objection does not appear to present a new or novel issue of law and this Objection sets forth the relevant points and authority.

## **RELIEF REQUESTED**

34. For the reasons stated herein, Marjet's Customer Claim should be allowed in its entirety in the amount of $3,690,681.41. In the alternative, at a minimum, Marjet's Customer Claim must be recalculated to include interest.

35. Alternatively, the $4,000,000 initial deposit into Marjet's account must be credited in full and the Trustee prohibited from adjusting the $4,000,000 downward to $2,500,000. Accordingly, even under the money in/money out calculation, the Marjet Account should reflect a $1,368,500 loss, the full amount of which Marjet is entitled to recover in these proceedings.

36. For the reasons stated herein, the Determination Letter should be stricken.

37. Marjet requests other such relief as may be just and equitable.

Dated:  November 18, 2009

ARENT FOX LLP

By: */s/ Heike M. Vogel*
Heike M. Vogel
1675 Broadway
New York, NY 10019
Telephone: (202) 484-3900
Facsimile: (202) 484-3990

*Attorneys for Marjet LLC*