ARENT FOX LLP
Heike M. Vogel
1675 Broadway
New York, NY 10019
Telephone: (202) 484-3900
Facsimile: (202) 484-3990

*Attorneys for Eleven Eighteen Ltd Partnership*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Eleven Eighteen Ltd. Partnership, by and through its undersigned counsel, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"), attached as Exhibit A, as described herein.

**BACKGROUND**

1.  In or about December 1995, Eleven Eighteen Ltd. Partnership ("Eleven Eighteen") opened an account (Account No. 1E0136) with Bernard L. Madoff Investment Securities LLC ("Madoff"). Eleven Eighteen is a "customer" of Madoff, as defined by the Securities Investor Protection Act of 1970 ("SIPA").

2.  From creation of the account, Eleven Eighteen regularly received purchase confirmations and monthly statements detailing the securities held in its account. Eleven Eighteen's final Madoff statement ("Final Statement"), dated November 30, 2008, states securities owned valued at approximately $11,477,850.13.

3.  On December 11, 2008, an action was commenced against Madoff by the Securities and Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceedings to the United States Bankruptcy Court for the Southern District of New York) [Docket No. 4]. Irving H. Picard was appointed Trustee (the "Trustee") and charged with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. § 78fff-1(a).

4.  On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. *See* Order [Docket No. 12].

5.  The December 23, 2008 Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such

claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefore*." *See* Order at 6 (emphasis added).

6. On or about June 24, 2009, Eleven Eighteen timely filed a Customer Claim Form for the Eleven Eighteen Account based on the Final Statement from Madoff in the amount of $11,477,850.13. *See* Eleven Eighteen Customer Claim Form, attached as Exhibit B.[1]

7. On October 19, 2009, the Trustee sent Eleven Eighteen a Notice of Trustee's Determination of Claim ("Determination Letter") stating, *inter alia*, that Eleven Eighteen's claim was (1) denied because no securities were ever purchased for its account; and (2) Eleven Eighteen withdrew more from its account than it deposited. *See* Determination Letter. As a result, based on the Trustee's money in/money out accounting method, the Trustee allegedly determined that Eleven Eighteen was not entitled to relief. Eleven Eighteen objects to the Determination Letter for the reasons described below.

## OBJECTIONS

8. **First Objection**. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtors' books and records." *See* December 23, 2008 Order at 5 [Docket No. 12]. The Eleven Eighteen Claim was evidenced by the Final Statement, showing a final balance of $11,477,850.13 and listing the securities purportedly purchased for the account. The Final Statement is the best evidence of the amount owed to Eleven Eighteen based on "Debtors' books and records" and by which the Trustee is bound. Accordingly, Eleven Eighteen's Claim should be allowed in the full amount of $11,477,850.13.

9. **Second Objection**. The Trustee failed to set forth a legal basis for the methodology employed in determining the claim. *See* Determination Letter. Further:

---

[1] The tax identification number on Exhibit B has been redacted to protect Eleven Eighteen's security.

3

      a.    the Determination Letter does not clearly provide the legal justification and basis for its calculations, as required by the Court's December 23, 2008 Order, *see* Order [Docket No. 12];

      b.    the Determination Letter is insufficient to rebut the *prima facie* validity of the Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

      c.    the Determination Letter violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 2007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer"); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

      d.    the Determination Letter includes an exhibit (Table 1) that purportedly adjusts the money deposited but is completely unsubstantiated.

10.    **<u>Third Objection</u>**.  The Trustee's determination of "net equity" fails to honor the legitimate expectations of a customer and is incorrect as a matter of law.

11.    The Trustee failed to set forth a legal basis for the position that he can calculate Eleven Eighteen's "net equity" based on his valuation of deposits minus withdrawals without regard to the value of the securities reflected in Eleven Eighteen's account statements or interest. The Trustee's "money in/money out" approach is incorrect for several reasons:

12.    The Trustee's methodology contradicts the plain language of SIPA, which defines "net equity" as the value of the securities positions in the customer's account as of the SIPA filing date, minus any amount the customer owes the debtor.  Specifically,

4

> The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer …. ; minus
> (B) any indebtedness of such customer to the debtor on the filing date…

15 U.S.C. § 78lll(11).

13. Consistent with this definition of "net equity," Eleven Eighteen filed a customer claim for approximately $11,477,850.13, which is the sum "which would have been owed" to it if the securities positions reflected in its Final Statement had been liquidated, minus any amounts owed to Madoff. Despite the unambiguous and express language of SIPA, the Trustee has taken the position that Eleven Eighteen's "net equity" is the total amount of the deposits in its account (adjusted downward based on the same improper "net equity" calculation for a separate customer account) minus the total amount withdrawn. The Trustee's proposed methodology is inconsistent with the language of SIPA and is unsupported by relevant case law. In fact, the Trustee's approach requires reading new words and concepts into the statute, a result prohibited by principles of statutory construction.

14. In addition, the Trustee's method is inconsistent with the Rules promulgated under SIPA. The Series 500 Rules promulgated under SIPA by the Securities Investor Protection Corporation ("SIPC") provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customers. *See* 17 C.F.R. §§ 300.501, 300.502. Pursuant to the Rules, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased for or sold to the customer's account. *See* § 300.502.

15.     Further, the Trustee's approach is inconsistent with the legislative history of the statute. SIPA's legislative history reflects Congress's intention that broker-dealer customers have valid "net equity" claims even when the securities identified on their confirmation sheets and account statements were never purchased. Both the Senate and House Reports on the 1978 amendments clearly reflect that a customer's net equity claim is not dependent on whether the securities were actually purchased by the broker-dealer.

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, <u>never purchased</u> or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account…. By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations….

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, <u>never purchased</u>, or even stolen, this is not always possible. Accordingly, [when securities are not available, customers] will receive cash based on the market value as of the filing date.

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added). Based on regular monthly statements and trade confirmations, Eleven Eighteen believed and expected that Madoff executed such transactions and that its account actually held such securities. The fact that the securities listed in the confirmations and account statements were never actually purchased is irrelevant in determining Eleven Eighteen's net equity.

16.     Furthermore, the Trustee's formula is an improper and wholly inadequate measure of loss. Eleven Eighteen deposited funds with Madoff in the expectation that the amount would grow and its statements reflected this. In *Visconsi v. Lehman Brothers*, 244 Fed. Appx. 708 (6th Cir. 2007), the Sixth Circuit considered a Ponzi scheme case and rejected the same money in/money out methodology employed by the Trustee in this case. The Sixth Circuit

6

stated that "the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages." *Visconsi*, 244 Fed. App. at 713. Similarly, Eleven Eighteen's net equity is the full amount reflected on its Final Statement, not the Trustee's calculation of money in/money out.

17. The Trustee's methodology also conflicts with other federal laws, including, but not limited to, the Internal Revenue Code. For example, Rev. Proc. 2009-20, issued by the IRS on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes. Yet the Trustee simultaneously is taking the position that the income earned by customers is not the customer's money.

18. In sum, the Trustee has created his own definition of "net equity" that is inconsistent with the statute, regulations, and SIPC's own course of conduct.

19. **Fourth Objection**. The Trustee's calculation is an improper avoidance under the Bankruptcy Code. The Trustee's action in reducing the amount shown on Eleven Eighteen's Customer Claim by any prior gains is an attempt to avoid such gains without alleging any grounds for establishing an avoidable claim under the Bankruptcy Code. *See* Bankruptcy Code § 502(a). The Trustee has offered no factual or legal basis for an avoidance, and accordingly the Trustee's Determination Letter should be stricken, or alternatively, the Trustee should describe his position in detail, including all relevant facts, legal theories, and authorities.

20. **Alternate Considerations/Relief**: In the event that the Court determines that the money in/money out formula is permissible, then in the alternative, Eleven Eighteen is entitled to recover interest or appreciation on the investments:

   a. Under New York law, funds deposited with debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig.

§ 5-501, et seq. Accordingly, the Eleven Eighteen Account should be recalculated by adding interest on all funds deposited.

b. Under New York law, customers are entitled to any returns that Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, Eleven Eighteen's claim should be recalculated by adding the amounts earned by Madoff on its deposits. *See, e.g.*, *Steinberg v. Sherman*, No 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008).

c. Eleven Eighteen is entitled to interest on its investments under federal securities law. *See, e.g.*, *Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986) (the statute's "deterrent purpose is ill served by a too rigid insistence on limiting plaintiffs to recovery of their 'net economic loss'").

## **RESERVATION OF RIGHTS**

21. Eleven Eighteen reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground(s) shall not be construed as a waiver of Eleven Eighteen's right to object on any additional grounds.

22. Eleven Eighteen reserves all rights set forth in Rule 9014, including, without limitation, the right to discovery. *See* Fed. R. Bankr. P. 9014.

23. Eleven Eighteen reserves all objections as to competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24. Eleven Eighteen incorporates by reference all reservations of rights set forth in Eleven Eighteen's Customer Claim.

25. Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, Eleven Eighteen respectfully requests that the Court waive the requirement that it file a separate memorandum of law in support of this Objection because this Objection does not appear to present a new or novel issue of law and this Objection sets forth the relevant points and authority.

## **RELIEF REQUESTED**

26. For the reasons stated herein, Eleven Eighteen's Customer Claim should be allowed in its entirety in the amount of $11,477,850.13. In the alternative, at a minimum, Eleven Eighteen's Customer Claim must be recalculated to include interest.

27. For the reasons stated herein, the Determination Letter should be stricken.

28. Eleven Eighteen requests other such relief as may be just and equitable.

Dated: November 18, 2009　　　　　　　　　　ARENT FOX LLP

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Heike M. Vogel*
　　　　　　　　　　　　　　　　　　　　　　Heike M. Vogel
　　　　　　　　　　　　　　　　　　　　　　1675 Broadway
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 484-3900
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 484-3990

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Eleven Eighteen Ltd*
　　　　　　　　　　　　　　　　　　　　　　*Partnership*