Max Folkenflik, Esq.
FOLKENFLIK & McGERITY
1500 Broadway
21st Floor
New York, New York 10036
(212) 757-0400
mfolkenflik@fmlaw.net
*Attorneys for S. James Coppersmith*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> Vs. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> **OBJECTION OF S. JAMES COPPERSMITH, TRUSTEE OF THE S. JAMES COPPERSMITH CHARITABLE REMAINDER TRUST, TO SIPC TRUSTEE'S DETERMINATION OF CLAIM AND REQUEST FOR A HEARING** |

S. James Coppersmith ("Claimant"), Trustee of the S. James Coppersmith Charitable Trust, by his attorneys Folkenflik & McGerity, hereby objects to the Notice of Trustee's Determination of Claim dated October 19, 2009 sent by Irving H. Picard (the "Trustee") and states as follows:

## BACKGROUND FACTS

1.    Commencing on or about July 7, 1997, and continuing through December 11, 2008, the date of the filing of this proceeding, Claimant maintained an account with Bernard L. Madoff Investment Securities, LLC ("BLMIS"), account no. C1264 (the "Coppersmith CRUT Account").

2.    As of November 30, 2008, the Coppersmith CRUT Account showed a positive cash balance of $1,187,175.50, comprised of a positive balance of specifically identified publicly-traded stocks, treasury bills and money market funds net of any negative balance

{10449050:2}

in publicly traded options position.

3.    The investment instruments which were identified as being held in the Coppersmith CRUT Account on November 30, 2008, were all "securities" as that term is used in the Securities Investor Protection Act ("SIPA").    As of December 11, 2008, all of the investments held in the Coppersmith CRUT Account were reported to be held in securities within the meaning of that term under SIPA.

4.    In June, 2009, Claimant filed a claim with Irving H. Picard, Trustee appointed by the Securities Investor Protection Corporation ("SIPC") for BLMIS (the "Trustee"), designated as Claim Number 014597.    Following the instructions of the Trustee to account for only deposits and withdrawals, but without prejudice to Claimant's right to assert that the proper computation of the loss of securities in the Coppersmith CRUT Account should be based on the balances shown on the November 30, 2008 statement, claimant computed the "net equity" in the account.

5.    Because of the effect of the applicable statutes of limitation and because the reported returns on the Madoff investments were not disproportionate to the returns on a well-managed equity account during the period up to December 2002, Claimant believes that the appropriate starting balance for the computation of the losses in the account is the balance shown on the monthly statement for the account as of 6 years prior to December 11, 2008.    Claimant submits this claim on that basis.    Claimant has used the November 30, 2002 balance as the last balance available to Claimant before December 11, 2002. Pursuant to the above methodology, Coppersmith submitted a claim for loss of securities in the value of $568,757.00.    The Schedule of Deposits and Withdrawals submitted by Coppersmith to the Trustee is annexed as Exhibit A.

6.      By notice dated October 19, 2009, the Trustee issued a Determination of Claim (the

"Trustee's Determination," a copy of which is annexed as Exhibit B).    The Trustee's

Determination rejected the Claimant's claim for securities and rejected the claim for any

amount of loss.    Instead, the Trustee concluded that computing the deposits from July 7,

1997, and the withdrawals, which started on May 1, 1998, led to a computation of

withdrawals in excess of deposits in the amount of $697,105.41.        Accordingly, the

Trustee concluded that there is no net equity in the account.    The Trustee also concluded

that no securities were ever purchased for the account, and denied claimant's claims for

securities under SIPA.

7.      Claimant hereby objects to the Trustee's Determination and each and every part

thereof, and requests a hearing before the court to correctly determine the Claimant's

claim.

## THE TRUSTEE'S DETERMINATION DENYING COPPERSMITH'S CLAIM FOR SECURITIES IN THE COPPERSMITH CRUT ACCOUNT WAS IN ERROR.

8.      The Trustee determined to deny the trust's claim for securities apparently based on

the claim that "No securities were ever purchased for your account."      Trustee's

Determination at 1.    Claimant has not seen the books and record of BLMIS, and therefore is

unable to verify the truth of that statement.    In all events, the actual purchase of securities

for the Coppersmith CRUT Account is not the standard in this Circuit for determining

whether a claimant has a "securities claim" under SIPA.    Instead, binding Second Circuit

authority provides that "the Claimants in this case should be treated as having claims for

securities because the confirmations and account statements that they received from the

Debtors stated that the Claimants held securities in their accounts." *In re New Times Sec.*

*Servs.*, 371 F.3d 68, 87 (2d Cir. N.Y. 2004), *citing* Amicus Curiae Brief filed by the Securities and Exchange Commission at 8. Claimant received confirmations for each trade and an account statement each month. On information and belief, each account statement, and each confirmation including the final account statement dated November 30, 2008, stated that the Claimant "held securities in [its] accounts." The Trustee and this Court are bound to follow the decision of the Second Circuit. The Trustee's Determination must be reversed in this respect.

## THE TRUSTEE'S DETERMINATION THAT COPPERMITH'S NET EQUITY MUST BE DETERMINED BY SUBTRACTING WITHDRAWALS FROM DEPOSITS WAS IN ERROR.

9.     The Trustee determined that the net equity of the Coppersmith CRUT Account should be determined by subtracting the total withdrawals from the total deposits in the Coppersmith CRUT Account starting with withdrawals in May 1998. This approach may be consistent with the approach adopted by the Second Circuit in *In re New Times*. However, Claimant believes this approach to be in error in this case for two separate and independently sufficient reasons.

10.     First, in this case to apply such a rule would be to effectively apply the fraudulent conveyance rules to distributions which occurred more than six years ago, and thus are immune from attack based on the applicable statute of limitations for fraudulent conveyances. *See*, N.Y. C.P.L.R. 213. Claimant believes that the Trustee must take as his starting balance in the Coppersmith CRUT Account the amount which was reported on the BLMIS statements for the Coppersmith CRUT Account six years prior to December 11, 2008. The balance in the Coppersmith CRUT Account as of December 11, 2006, as shown on the account statement of November 30, 2002, was $1,298,257.00. Using that starting

balance, the Trustee should have determined that the "net equity" in the Coppersmith CRUT Account as of December 11, 2008, was $568,757.00. The Trustee's determination to deny Coppersmith's claim in that amount was in error.

11.    Second, Claimant respectfully asserts that for the purpose of determining "net equity" disregarding of the amounts of earnings and interest shown on BLMIS account statements is inconsistent with SIPA and its legislative history and entirely illogical and unsupportable. In *In re New Times,* the Second Circuit reviewed at length "the language of the statute, its purposes of protecting investors and inspiring confidence in the securities markets, and the specific history surrounding the drafting of the relevant language found in section 9(a)(1) of SIPA, 15 U.S.C. § 78fff-3(a)(1)..." *Id.* at 87.    Section 9(a)(1) relates to distinguishing "cash" from "securities" for the purpose of determining the amount of SIPC insurance protection an investment has.    The Second Circuit and the SEC concluded that "When a customer has been sent confirmations and account statements reflecting his securities purchases and showing that he holds the securities in his account, his claim, in the Commission's view, involves the debtor's function as securities custodian and is one for securities ... " *In re New Times Sec. Servs.,* 371 F.3d at 87.    However, there is nothing in the purpose of the act, the language of the statute, or the legislative history which would allow the character of the holdings in the account to be characterized as securities, and the broker's conduct to be one of a "securities custodian," and to nonetheless ignore those conclusions when determining whether to credit the customer for profits and losses in those "securities."

12.    The Second Circuit and SEC argued that to credit the customer with such profits and losses would be to base recovery on "fictitious amounts in the [brokerage] firm's books and

records [and] would allow customers to recover arbitrary amounts that necessarily have no relation to reality..." *In re New Times Sec. Servs.*, 371 F.3d at 88, *citing* Amicus Curiae Brief filed by the Securities and Exchange Commission at 16. To the contrary, however, the amounts are not merely found on the brokerage firm's books, but are publicly available securities trading records, found in published newspapers, magazines, and in numerous online sources. The trading profits and loses shown on the BLMIS account statements were consistent with the public information available to claimant and in fact represented the profits and losses which would have been realized if the securities shown in the Coppersmith CRUT Account had in fact been purchased. Therefore, it is neither "irrational" nor "unworkable" to give the customer the benefits of trading in securities which should have been in the customer's account, but were not. What is irrational is to conclude, and the Second Circuit and SEC conceded they must, that Congress intended to treat securities shown in confirmations and monthly statements as securities which were purchased, even if they were not, but to deny the customer the benefits of holding those securities.

Dated: New York, New York
       September 28, 2009

Respectfully submitted,

FOLKENFLIK & McGERITY

By: _____
        Max Folkenflik
1500 Broadway, 21st Floor
New York, New York  10036
(212) 757-0400

Attorneys for *S. James Coppersmith Charitable Remainder Trust*

# EXHIBIT A

## CLAIM OF S. JAMES COPPERSMITH CHARITABLE TRUST

Schedule of Deposits and Withdrawals

Bernard L. Madoff Investment Securities LLC.

Account No. 1-C1264

| Transaction | Date | Amount | |
|---|---|---|---|
| | | | |
| **Balance As of:** | **11/30/2002\*\*** | **$1,298,257.00** | |
| | | | |
| Withdrawal | 1/23/03* | $43,000.00 | |
| Withdrawal | 4/15/03* | $44,500.00 | |
| Withdrawal | 7/23/03* | $43,000.00 | |
| Withdrawal | 10/24/03* | $42,000.00 | |
| Withdrawal | 1/15/04* | $45,000.00 | |
| Withdrawal | 7/12/05* | $40,000.00 | |
| Withdrawal | 1/23/06* | $41,000.00 | |
| Withdrawal | 4/19/06* | $40,000.00 | |
| Withdrawal | 7/27/06* | $39,000.00 | |
| Withdrawal | 10/13/06* | $38,000.00 | |
| Withdrawal | 1/10/07* | $40,000.00 | |
| Withdrawal | 4/10/07* | $38,000.00 | |
| Withdrawal | 7/31/07* | $38,000.00 | |
| Withdrawal | 10/17/07* | $40,000.00 | |
| Withdrawal | 1/15/08* | $40,000.00 | |
| Withdrawal | 4/17/08* | $40,000.00 | |
| Withdrawal | 7/16/08* | $39,000.00 | |
| Withdrawal | 10/20/08* | $39,000.00 | |
| **Net Deposits Total** | | | **$568,757.00** |

*Claimants have been unable to verify any of these amounts against BMIS statements

** Because of the effect of the applicable statutes of limitation and because the reported returns on the Madoff investments were not disproportionate to the returns on a well managed equity account during the period up to December 2002, Claimant believes that the appropriate starting balance for the computation of the losses in the account is the balance shown on the monthly statement for the account as of 6 years prior to December 11, 2008. Claimant submits this claim on that basis. Claimant has used the November 30, 2002 balance as the last balance available to Claimant before December 11, 2002. Claimant's claim is without prejudice to Claimant's right to assert that the amount of the loss should be computed based on the reported statement values as of December 11, 2008, should a court determine that such an approach is appropriate.

# EXHIBIT B

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

The S. James Coppersmith Charitable Remainder Unitrust
Attn: S. James Coppersmith
7 Elmwood Road
Marblehead, MA 01945

Dear S. James Coppersmith:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1C1264 designated as Claim Number 014597:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,887,991.90), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $1,190,886.49). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($697,105.41) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  Folkenflik & McGerity
     1500 Broadway
     New York, NY 10036

|  |  |  |
|---|---|---|
|  |  |  |

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 7/7/1997 | CHECK WIRE | $870,910.39 |
| 7/7/1997 | CHECK WIRE | $319,976.10 |
| **Total Deposits:** |  | $1,190,886.49 |

|  |  |  |
|---|---|---|

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 5/1/1998 | CHECK | ($85,028.38) |
| 5/21/1998 | CHECK | ($77,484.47) |
| 7/10/1998 | CHECK | ($40,293.54) |
| 7/28/1998 | STOP PAYMENT | $40,293.54 |
| 7/29/1998 | CHECK | ($40,293.54) |
| 10/30/1998 | CHECK | ($40,293.54) |
| 2/1/1999 | CHECK | ($39,062.50) |
| 4/15/1999 | CHECK | ($39,062.50) |
| 7/27/1999 | CHECK | ($39,062.50) |
| 10/8/1999 | CHECK | ($39,062.50) |
| 1/24/2000 | CHECK | ($41,883.03) |
| 4/20/2000 | CHECK | ($41,883.03) |
| 6/21/2000 | CHECK | ($43,615.60) |
| 7/10/2000 | STOP PAYMENT | $43,615.60 |
| 7/11/2000 | CHECK | ($43,615.60) |
| 10/12/2000 | CHECK | ($41,884.65) |
| 1/10/2001 | CHECK | ($42,100.00) |
| 4/17/2001 | CHECK | ($44,000.00) |
| 7/10/2001 | CHECK | ($42,000.00) |
| 10/16/2001 | CHECK | ($42,100.00) |
| 1/22/2002 | CHECK | ($42,100.00) |
| 4/15/2002 | CHECK | ($45,000.00) |
| 7/1/2002 | CHECK | ($42,500.00) |
| 10/3/2002 | CHECK | ($43,000.00) |
| 1/16/2003 | CHECK | ($43,000.00) |
| 4/2/2003 | CHECK | ($44,500.00) |
| 7/16/2003 | CHECK | ($43,000.00) |
| 10/21/2003 | CHECK | ($42,000.00) |
| 1/12/2004 | CHECK | ($45,000.00) |
| 4/12/2004 | TRANS TO 1C126330 | ($75.66) |
| 4/13/2004 | CHECK | ($45,000.00) |
| 7/13/2004 | CHECK | ($38,000.00) |
| 10/4/2004 | CHECK | ($41,000.00) |
| 1/5/2005 | CHECK | ($42,000.00) |

| | | |
|---|---|---|
| 4/8/2005 | CHECK | ($40,000.00) |
| 7/1/2005 | CHECK | ($40,000.00) |
| 9/30/2005 | CHECK | ($41,000.00) |
| 1/18/2006 | CHECK | ($41,000.00) |
| 4/11/2006 | CHECK | ($40,000.00) |
| 7/26/2006 | CHECK | ($39,000.00) |
| 10/10/2006 | CHECK | ($38,000.00) |
| 1/9/2007 | CHECK | ($40,000.00) |
| 4/10/2007 | CHECK | ($38,000.00) |
| 7/31/2007 | CHECK | ($38,000.00) |
| 10/17/2007 | CHECK | ($40,000.00) |
| 1/15/2008 | CHECK | ($40,000.00) |
| 4/17/2008 | CHECK | ($40,000.00) |
| 7/15/2008 | CHECK | ($39,000.00) |
| 10/20/2008 | CHECK | ($39,000.00) |
| **Total Withdrawals:** | | ($1,887,991.90) |
| | | |
| **Total deposits less withdrawals:** | | ($697,105.41) |