Stephen Fishbein
James Garrity, Jr.
Richard Schwed
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Petitioner Carl J. Shapiro*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| In the Matter of the Petition of Carl J. Shapiro to Perpetuate Testimony Pursuant to Federal Rule of Civil Procedure 27 and Federal Rules of Bankruptcy Procedure 9014 and 7027 | 09 Civ. No. _____ |

**VERIFIED PETITION OF CARL J. SHAPIRO TO PERPETUATE TESTIMONY**

1.  Petitioner Carl J. Shapiro, by and through his undersigned attorneys, hereby petitions this Court for an order pursuant to Federal Rule of Civil Procedure 27 (made applicable by Federal Rules of Bankruptcy Procedure 9014 and 7027) authorizing the deposition

of Mr. Shapiro to perpetuate his testimony. Petitioner requests (i) that the deposition proceed on December 14, 2009 in Palm Beach, Florida; (ii) that time limits be established for the deposition in view of Mr. Shapiro's advanced age and fragile health; (iii) that the court-appointed Trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") be required to produce certain documents in advance of the deposition; and (iv) that an appropriate confidentiality order be entered covering Mr. Shapiro's deposition and the documents he and his family have produced.

2.  Mr. Shapiro is a U.S. citizen and resides at 2 North Breakers Row, Apt. #45 in Palm Beach, Florida. Mr. Shapiro was an early investor with Bernard Madoff, having first invested with Madoff around 1960. Since then, Mr. Shapiro and members of his family (the "Shapiro Family") and the Carl and Ruth Shapiro Family Foundation (the "Foundation") have continuously been BLMIS investors. Indeed, the Shapiro Family invested an additional $250 million with BLMIS just weeks before Madoff's scheme was exposed.

3.  Over the years, the Shapiro's accounts at BLMIS thrived and the Shapiro Family and Foundation withdrew more from their accounts than they deposited. Beginning in May 2009, counsel for the Trustee informed counsel for Mr. Shapiro that the Trustee will pursue avoidance claims against the Shapiro Family and Foundation to "claw back" the amounts withdrawn from their BLMIS accounts. Since then, the parties have been engaged in discussions to resolve the case, but have been unable to reach a settlement. The Trustee has advised that he already has a complaint drafted, which he will file if settlement discussions are unsuccessful.

4.  Mr. Shapiro is 96 years old. Apart from his advanced age, he suffers from a number of serious medical conditions. In 1986, Mr. Shapiro suffered Ramsey Hunt Syndrome, a viral infection of the nerves of the face, that left him virtually blind in one eye. He also suffers

from coronary artery disease, which has required several stents and ongoing treatment with medication. Mr. Shapiro also has atrial fibrillation, which has required anticoagulant and other medication. He also has hypothyroidism requiring medication and other treatment. (*See* October 26, 2009 letter from Dr. Kenneth L. Baughman, attached hereto as Exhibit "A".)

    5.  Mr. Shapiro's physical condition worsened considerably in October 2009. He was diagnosed with wet macular degeneration, an eye disease that threatened the eyesight in his remaining "good" eye. He has been receiving treatment for this condition, but his vision has not improved. (*Id.*) Currently, Mr. Shapiro cannot read.

    6.  Mr. Shapiro intends to testify about the following matters:

- His personal background, including education and early professional life;

- His work in the clothing business, the establishment and development of the Kay Windsor clothing company, and the sale of Kay Windsor;

- His investments and business ventures other than Kay Windsor;

- The circumstances of his meeting Bernard Madoff, and the understandings he had concerning the operation of the Shapiro Family and Foundation accounts at BLMIS;

- The basis for his understanding that Madoff was investing in real securities and that Madoff's operation was at all times legitimate, including Madoff's statements to the effect that the SEC had given him a "clean bill of health";

- The circumstances of his investment of an additional $250 million with Madoff several weeks before Madoff's scheme collapsed;

- His use of the money withdrawn from BLMIS for such purposes as charitable donations and the payment of taxes; and

- Other matters concerning his relationship with Bernard Madoff.

**Relief Requested**

7. Based on the foregoing, Mr. Shapiro requests the Court to order the following relief:

(a) That a deposition of Mr. Shapiro be held on December 14, 2009 at 9:00 a.m. in a private conference room at the Breakers Hotel in Palm Beach, Florida, or such other location in Palm Beach as may be agreed by the parties;

(b) That the deposition be limited to a total of six hours of testimony, of which the Trustee is entitled to question for four hours and Mr. Shapiro's counsel may question for two hours;

(c) That Mr. Shapiro be permitted extended breaks during the deposition as needed given his level of fatigue and concentration;

(d) That the Trustee provide to counsel for Mr. Shapiro by December 1, 2009 the following documents in his possession:

(i) BLMIS records including account statements, correspondence, analyses or other documents that relate or refer to the Shapiro Family or the Foundation or to their accounts at BLMIS; and,

(ii) All other documents that were created prior to December 12, 2008 and which relate or refer to the Shapiro Family or the Foundation or to their accounts at BLMIS.

(e) That the Trustee and Mr. Shapiro enter into a confidentiality agreement covering document production and depositions that does not contain any limitation on the Court's authority to sanction discovery violations.

Dated: New York, New York
November 18, 2009

Respectfully submitted,

**SHEARMAN & STERLING LLP**

By: /s/Stephen Fishbein
Stephen Fishbein
James Garrity, Jr.
Richard Schwed
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Petitioner Carl J. Shapiro*

## VERIFICATION

I, Carl J. Shapiro, verify under penalty of perjury that the foregoing petition is true and correct.

*Carl Shapiro*
Carl J. Shapiro

11/17/09
Date

# EXHIBIT A

 BRIGHAM AND WOMEN'S HOSPITAL

 HARVARD MEDICAL SCHOOL

Kenneth L. Baughman, M.D.
Professor of Medicine, Harvard Medical School
Director, Advanced Heart Disease Section
Cardiovascular Division

Brigham & Women's Hospital
Cardiovascular Division
75 Francis Street
Boston, Massachusetts 02115
Email: kbaughman@partners.org
Office: 857-307-1964
Fax: 857-307-1955

October 26, 2009

Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Concerning: Carl J. Shapiro

Dear Mr. Fishbein,

    I have had the opportunity to be Mr. Shapiro's cardiologist since 2004. At that time, at age 91, he presented with symptoms typical of angina pectoris. An exercise stress echocardiogram was remarkable for multiple areas of ischemia and heart dilation with exertion suggesting multi-vessel coronary disease. He underwent cardiac catheterization confirming a high-grade narrowing in two of the three arteries to the heart including the left anterior descending and the circumflex coronary arteries. Because of the critical nature of the narrowings and the risk to him, an intra-aortic balloon counter pulsation device was inserted. This is a large percutaneous device which enhances coronary artery perfusion and maintains blood pressure during high risk percutaneous coronary interventions (angioplasty or stents). Stents were placed into the left anterior descending circumflex and obtuse marginal (branch of the circumflex) coronary arteries. Although the intra-aortic balloon pump was removed, its use resulted in a pseudo-aneurysm in the groin which was closed with another catheterization technique; and injection of a clotting agent (Thrombonin) into the aneurysm head. This type of coronary disease is considered high risk for any therapy, particularly stent placement.

    Because of the multiple stents inserted and the risks involved, Mr. Shapiro has been on Aspirin and Plavix since that time. To control his elevated cholesterol, he is treated with Zocor (Simvastatin).

    In addition, Mr. Shapiro has paroxysmal of atrial fibrillation. This has been associated with systemic blood clots which have affected his spleen and perhaps other organs in a silent fashion. Because of his atrial fibrillation, he is receiving medications including a beta blocker (Cogard). Similarly, he must be chronically anticaoagualted with Warfarin (Coumadin) such that he is protected from further embolic events when his fibrillation occurs. He has had several episodes of fibrillation since that time. Because his aging heart is thick and stiff, these fibrillation episodes significantly diminish his blood flow from the heart and cause shortness of breath.

    Mr. Shapiro suffered Ramsey Hunt Syndrome (a viral infection of the nerves of the face). This acquired a multitude of operative interventions to protect his eye and allow increased facial symmetry and speech capability. The eye affected from the

Ramsey Hunt Syndrome is virtually nonfunctional. He is now suffering from macular degeneration in his "good" eye and is receiving Avastin injections. Thus far, the injections have not improved vision.

Mr. Shapiro also has hypothyroidism and receives thyroid replacement in addition to treatment to his benign prosthetic hypertrophy.

The events of the last several months, combined with his multitude of medical problems, have caused a clear cut decline in his state of wellbeing and robustness. He is now fragile and, for the first time since I have known him, less confident of the future.

If there is to be meaningful discussion with Mr. Shapiro concerning the events of the Madoff affair, I would urge you to complete those in an expedited fashion. We have been thrilled with Carl's survival to this point; however I cannot be certain that it will persist long enough to see him through the intricacies of Madoff resolution. I urge you to use good judgment in the timing of your interviews with this individual.

Sincerely,

Kenneth L. Baughman, MD
Professor of Medicine
Harvard Medical School