1012 Bluff Drive
Portland, TX 78374
(361) 777-2108
andelmanro@pol.net

November 17, 2009

**VIA FEDERAL EXPRESS**

Clerk
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

RECEIVED NOV 18 2009

    *Re:*    *Bankr. Case No. 08-1789 (BRL)*

## OBJECTION AND OPPOSITION
## TO TRUSTEE'S DETERMINATION OF CLAIM NO. 000412

Dear Judge Lifland and Mr. Picard:

    Robert Andelman, on behalf of the interest-holders of account No. 1ZA266, held in the name of "Robert Andelman and Elizabeth Andelman JT WROS" (the "Account"), objects and files this opposition to the Trustee's Determination of Claim No. 00412 (the "Claim") dated October 19, 2009 (the "Determination"). The Trustee erred and abused his discretion in failing to make a determination on what was the only essential issue in the Claim – whether, for net equity purposes, the Account was created in March 2008.[1] Instead, the Trustee performed what amounted to a net equity analysis of a different account, without explaining why it chose that

---

[1] Dr. Andelman reserves all rights, arguments, and potential benefits relating to the question of whether net equity is the appropriate measure for compensation of claims. This Objection and Opposition addresses only the Trustee's net equity analysis itself.

Objection and Opposition
Claim No. 000412
November 17, 2009
Page 2

account to analyze. Because the Trustee failed even to address Dr. Andelman's argument in the Determination, the Court should dismiss the Determination and order the Trustee to reconsider Dr. Andelman's Claim in a *de novo* re-evaluation and issue a new Determination of Claim.

## Background

Although Dr. Andelman believes that the Account was created in March 2008, he explains the events that led to the creation of the Account in order to place the Trustee's analysis into context. The story of Dr. Andelman's Account starts with Dr. Andelman's mother, Evelyn Andelman ("Evelyn"). Evelyn created an account with Bernard L. Madoff Investment Securities LLC or its predecessors (collectively, "BLMIS") in December 1992 with a $65,000 deposit. Members of Evelyn's family (although not Dr. Andelman) had been long-time investors with BLMIS, and BLMIS created an account for Evelyn with the relatively-low initial deposit as a courtesy to them. Over the course of the next 15 years, Evelyn deposited about an additional $300,000 into her account.

In early 2008, Evelyn, ever-prescient despite her 92 years of age, became worried about the state of the stock market and asked BLMIS for a $400,000 withdrawal from her account. She received the check but never deposited it.

Evelyn became gravely ill without warning in March 2008 after returning home to Corpus Christi, TX from a trip to Washington, DC for the naming of her newborn triplet great-granddaughters (identical!). In order to ease any potential burdens that would arise with the distribution of her relatively small estate, Dr. Andelman's name was added to Evelyn's BLMIS account. In this manner, Dr. Andelman would be able to have control of the money in the BLMIS account to pay out Evelyn's creditors without the hassle of having to go through the probate courts to do so. Evelyn passed away three days after she returned home, on March 20, 2008.

It was not until after Evelyn's death that the undeposited $400,000 withdrawal check from her BLMIS account was discovered. The executor of Evelyn's estate, Dr. Andelman's brother Steven, without objection from Dr. Andelman, deposited the $400,000 check into an unrelated bank account, and used the money to pay out Evelyn's known creditors. A small reserve was set aside for any unknown or future creditors. The remainder in Evelyn's BLMIS account after the $400,000 withdrawal (about $163,000), was nearly identical to the amount bequeathed by Evelyn to Dr. Andelman. The estate therefore distributed to Dr. Andelman his inheritance by providing him the remaining assets in Evelyn's BLMIS account.

Objection and Opposition
Claim No. 000412
November 17, 2009
Page 3

After the estate's decision that Dr. Andelman should receive the funds in Evelyn's account as his inheritance, Dr. Andelman created a new Account for himself by removing Evelyn's name from the account and adding the name of Dr. Andelman's wife. The account statements for the new Account were sent to Dr. Andelman's house in Corpus Christi, Texas (Evelyn's account statements had been sent to her apartment in that city). Dr. Andelman funded the Account with the approximately $163,393 inheritance that he received from Evelyn. Dr. Andelman withdrew $10,000 from the Account on or about April 29, 2008, his only withdrawal from the Account.

Dr. Andelman described the history of both his Account and Evelyn's BLMIS account in a letter sent to the Trustee on January 12, 2009 as part of Dr. Andelman's claim. The Trustee did not even acknowledge the existence of the January 12 letter or of any of the circumstances relating to Evelyn's account, her death, or the effect of her bequest on the status of the funds in the Account in his October 19, 2009 Determination of Claim. *See* Notice of Trustee's Determination of Claim (attached as Ex. A).

## Argument

### I. The Trustee Did Not Provide Any Explanation as to Why Dr. Andelman's Account Was Not Considered a New Account Created in March 2008.

This Court's December 23, 2008 Claims Procedure Order [Dkt. No. 12] ("Order") required the Trustee to provide a claimant notice of not only a determination that a claim was disallowed, but also "the reason therefor . . . ." *See* Order at 6. While the Trustee explained in the Determination that there was a negative net equity based on deposits and withdrawals dating back to Evelyn's initial deposit in 1992, the Trustee did not explain in any manner why it chose to analyze the net equity of Dr. Andelman's account from that point in time instead of from March 2008, when Dr. Andelman created the account. Thus, the Trustee's Determination of Claim failed to comply with the Court's Order because it did not give the reasons why it did not consider the Account to be created in March 2008.

Included with Dr. Andelman's Claim was a letter explaining the circumstances regarding his Account, with Evelyn's death certificate provided for corroboration. *See* Ex. B. What is at issue is whether the Account was created by Dr. Andelman in March 2008 with approximately $163,000 of deposits (*i.e.*, Dr. Andelman's inheritance from Evelyn). The Trustee made <u>no</u> determination regarding this issue. Instead, the Trustee simply undertook an analysis of the net equity of Evelyn's account. The Trustee did not acknowledge any of the materials that Dr. Andelman included with his claim, or the issues relating to the Account's creation.

Objection and Opposition
Claim No. 000412
November 17, 2009
Page 4

The Trustee's own language in the Determination shows that it failed to address the issue regarding the creation date of the Account. For example, the Trustee stated "the amount of money <u>you</u> withdrew from your account at BLMIS (total of $575,502.00)… is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $251,611.02)." Ex. A at 1 (emphasis added). But, regardless of any position on when the Account was created, this is a patently incorrect statement: at no time has *Dr. Andelman* withdrawn more than $10,000, and the remaining withdrawals listed by the Trustee were made by Evelyn, not Dr. Andelman. The Trustee is aware of this, as he has the documentation showing when Dr. Andelman first was added to Evelyn's account and then became a new accountholder on his own. Yet, the Trustee did not address the issue.

Dr. Andelman does not know whether the Trustee considered his position and rejected it, whether the Trustee improperly ignored the information that he provided, whether the Trustee considered the issue but needed further supporting documentation, or whether the Trustee was unaware that Dr. Andelman's claim hinged on this issue. Most importantly, if the Trustee <u>did</u> analyze the issue, Dr. Andelman has no notice of the basis for the Trustee's decision. He does not know if the Trustee perhaps got the facts wrong or got the law wrong, and he has no notion as to how to substantively object to the Trustee's decision. In short, there is nothing for Dr. Andelman to respond *to*.

Dr. Andelman is entitled to a determination of his claim as provided by the Court's Order. He should not be left to guess at <u>both</u> whether the Trustee even made a determination regarding the crucial issue in his claim <u>and</u> what the Trustee's basis was for his adverse decision.

### II. To the Extent a Substantive Opposition is Required, the Account Was Created in March 2008 and Had a Net Equity of Approximately $153,000.

Dr. Andelman should not be required to provide a substantive objection to the Trustee's Determination at this time. As stated above, the Trustee did not explain why he determined that Dr. Andelman's account was not created in March 2008. Dr. Andelman should not be left to "bargain against himself" and attempt to counter any possible reason the Trustee may have had. Thus, to the extent that the Court wishes to hear a substantive opposition to the Trustee's Determination without further explanation from the Trustee, Dr. Andelman requests that the Court provide an additional 30 days from the date of the Court's order to provide additional documentation. Substantively, though, Dr. Andelman's opposition would be as follows.

Objection and Opposition
Claim No. 000412
November 17, 2009
Page 5

As set forth above, the Account was created in March 2008 with approximately $163,393 of deposits that Dr. Andelman bequeathed from Evelyn.[2] Dr. Andelman had $10,000 of withdrawals. The "net equity" of the Account therefore is around $153,393. It is improper for the Account to be treated as a continuation of Evelyn's account, which is how the Trustee has effectively analyzed the situation. Dr. Andelman was bequeathed $177,530 by Evelyn. Had he taken his inheritance in the form of a check, cashed it out, and deposited it in a new BLMIS account, there would be no question that the net equity analysis would involve only that new account, not the transaction history of the person who bequeathed the money to him. Dr. Andelman's Account should not be treated any differently; this would elevate form over substance.

### III. Dr. Andelman Should Be Allowed to Attend Any Hearing on This Matter Telephonically.

Finally, Dr. Andelman respectfully requests that he be allowed to appear by telephone for any hearing regarding his Claim. Dr. Andelman is appearing *pro se*, his Claim is for a relatively small amount (and is likely among the smallest of customer claims made in this proceeding), and as an emergency room physician in Corpus Christi, Texas, it will be unduly burdensome for him to attend a hearing in person in New York, especially one that is scheduled less than four months in advance.

Respectfully Submitted,

*[signature]*

Robert P. Andelman, MD

---

[2] The precise amount of deposits into the Account is the same as the balance on Evelyn's account on the day that Evelyn's name was removed from the account. This amount should be known to the Trustee.

Objection and Opposition
Claim No. 000412
November 17, 2009
Page 6

### Declaration of Robert P. Andelman, MD

I declare under penalty of perjury that the factual statements made in the above Objection and Opposition to Trustee's Determination of Claim No. 000412 is true and correct.

Executed on November 17, 2009

*[signature]*
Robert P. Andelman, MD

**EXHIBIT A**

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

October 19, 2009

ROBERT ANDELMAN AND ELIZABETH ANDELMAN JT WROS
1012 BLUFF DRIVE
PORTLAND, TEXAS 78374

Dear ROBERT ANDELMAN AND ELIZABETH ANDELMAN JT WROS:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZA266 designated as Claim Number 000412:

Your claim for a credit balance of $167,530.62 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $575,502.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $251,611.02). As noted, no securities were ever purchased by BLMIS for your account. Any and

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($323,890.98) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition,

2

the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

>Clerk of the United States Bankruptcy Court for
>the Southern District of New York
>One Bowling Green
>New York, New York 10004

>and

>Irving H. Picard, Trustee
>c/o Baker & Hostetler LLP
>45 Rockefeller Plaza
>New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 12/7/1992 | CHECK | $65,000.00 | $65,000.00 |
| 12/10/1993 | CHECK | $15,000.00 | $15,000.00 |
| 8/19/1994 | CHECK | $10,000.00 | $10,000.00 |
| 11/7/1994 | CHECK | $10,000.00 | $10,000.00 |
| 9/20/1995 | TRANS FROM 1ZA09230 | $105,514.55 | $0.00 |
| 12/1/1995 | CHECK | $30,000.00 | $30,000.00 |
| 5/2/2005 | CHECK | $15,000.00 | $15,000.00 |
| 1/31/2008 | CHECK | $106,611.02 | $106,611.02 |
| Total Deposits: | | $357,125.57 | $251,611.02 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 9/20/1995 | CANCEL TRANS 9/20/95 | ($105,514.55) | $0.00 |
| 4/17/1997 | CHECK | ($28,000.00) | ($28,000.00) |
| 2/19/1998 | CHECK | ($10,000.00) | ($10,000.00) |
| 10/15/1999 | CHECK | ($5,000.00) | ($5,000.00) |
| 1/26/2000 | CHECK | ($6,782.00) | ($6,782.00) |
| 5/23/2000 | CHECK | ($4,507.00) | ($4,507.00) |
| 9/29/2000 | CHECK | ($10,000.00) | ($10,000.00) |
| 3/27/2001 | CHECK | ($10,000.00) | ($10,000.00) |
| 5/9/2001 | CHECK | ($10,000.00) | ($10,000.00) |
| 9/4/2002 | CHECK | ($7,000.00) | ($7,000.00) |
| 11/18/2002 | CHECK | ($10,000.00) | ($10,000.00) |
| 2/3/2004 | CHECK | ($6,397.00) | ($6,397.00) |
| 9/16/2005 | CHECK | ($25,000.00) | ($25,000.00) |
| 5/2/2007 | CHECK | ($7,816.00) | ($7,816.00) |
| 10/10/2007 | CHECK | ($10,000.00) | ($10,000.00) |
| 3/4/2008 | CHECK | ($15,000.00) | ($15,000.00) |
| 3/14/2008 | CHECK | ($400,000.00) | ($400,000.00) |
| 4/1/2008 | CHECK | ($6,300.00) | ($6,300.00) |
| 4/21/2008 | RETURNED CHECK | $6,300.00 | $6,300.00 |
| 4/29/2008 | CHECK | ($10,000.00) | ($10,000.00) |
| Total Withdrawals: | | ($681,016.55) | ($575,502.00) |
| Total deposits less withdrawals: | | ($323,890.98) | ($323,890.98) |

4

**EXHIBIT B**

1012 Bluff Drive
Portland, TX 78374
361.777.2108
andelmanro@pol.net

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Ref: Customer Claims for Account 1-ZA266-4-0

January 12, 2009

Dear Mr. Picard

When my mother died on 3/20/08, I received as inheritance her Madoff account and $163,393.00 which I left in the account. Soon after, I changed the ownership to myself and my wife so that it is listed as Robert Andelman and Elizabeth Andelman JT WROS. To help cover expenses, we withdrew $10,000 from the account (documentation enclosed). Otherwise no funds have been withdrawn since I took over ownership of the account. Please note that the address is incorrect as listed in Madoff's and your records. The address and zip code are correct but the city is Portland Texas not Corpus Christi. Please make the necessary changes in your records.

In order to document the securities, deposits, and withdrawals, please find for account referenced above:
1. CUSTOMER CLAIM. Note: separate sheets have been inserted to list all securities.
2. Last STATEMENT for regular securities and options dated 11/30/08.
3. CONFIRMATION slips that I have still in my possession
4. CHECK (photocopy) of single Madoff account withdrawal dated 4/29/2008 for $10,000.
5. Photocopy of mother's death certificate

Note: all documentation has been marked with the number corresponding to the above documentation list. The documents themselves contain the account number.

Please let me know if any other information than what has been supplied will be of assistance.

Yours truly,

Robert P. Andelman

Elizabeth P. Andelman