Lewis Franck
Trustee, Florence Law Irrevocable Trust
340 East 74th Street,
New York, NY 10021
Tel: 212 988-0499
NO FAX
*Pro Se*



RECEIVED
NOV 19 2009
U.S. BANKRUPTCY COURT, SDNY

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,
                    Plaintiff,

          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.

Adv. Pro. No. 08-01789 (BRL)


SIPA Liquidation

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

The Florence Law Irrevocable Trust dtd 1/24/05, (hereinafter "The TRUST") hereby objects to

the Notice of Trustee's Determination of Claim dated October 19, 2009 ("Determination Letter"),

attached as Exhibit A, as described herein.

### BACKGROUND

1.      The Trust is a "customer," as defined by the Securities Investor Protection Act of 1970

("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.      The trust's final BMIS statement for Account No. 1ZA359, dated November 30, 2008,

states that the Trust owns securities valued at $771,288.  Annexed as Exhibit "A" ("Final BMIS

Statement").

3.    On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

4.    On December 23, 2008, the Court issued an Order directing the BMIS Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.    The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.    On or about February 3, 2009, The Trust submitted a customer claim form to the BMIS Trustee. On or about July 2, 2009, The Trust submitted an amended customer claim form to the BMIS Trustee. *See* The Trust Customer Claim for Acct. No. 1Z359 (Exhibit B). The Trust's Final BMIS Statement was submitted with The Trust's Customer Claim. *See* The Trust's customer claim (Exhibit B).

7.    On October 19, 2009, the BMIS Trustee sent The Trust a Determination Letter disallowing the Trust's claim in its entirety, rather than allowing the claim in the amount of $771,288., the total amount that The Trust claimed. *See* Determination Letter (Exhibit A).

8.    The Trust hereby objects to the Determination Letter for the reasons described below.

**GROUNDS FOR OBJECTION**

3

9.    <u>First Objection</u>.  The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  Included with The Trust's Customer Claim was Mr. Franck's Final BMIS Statement showing a final balance of $771,288.  *See* The Trust Customer Claim (Exhibit B).  The Final BMIS Statement is the best evidence of the amount owed based on the Debtor's books and records.  Accordingly, the claim should be allowed in the full amount of $771,288.

10.    <u>Second Objection</u>.  The BMIS Trustee has set forth no legal basis for disallowing The Trust's Customer Claim in full as filed.  The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) that "because you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS Liquidation proceeding."  Determination Letter 1-2 (Exhibit A).  Neither of these purported grounds for disallowance have any statutory or other legal basis.  Moreover, the Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order  [Dkt. No. 12];

(b)    is inadequate to rebut the prima facie validity of The Trust's Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based.  *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer.  It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11.    _Third Objection._ 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the BMIS Trustee objects to The Trust's Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. _See_ Determination Letter Table 1; _see also_ "Another View: Unwinding Madoff Fraud Fairly," Deal Blog, www.nytimes.com (May 6, 2009). This is incorrect for the following reasons:

(a)    The BMIS Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;

\* \* \* \* \* \* \* \* \*

11. 15 U.S.C. § 78lll(11). The BMIS Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)    SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by The Trust stated that The Trust owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive _what he believes_ is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, _never purchased_, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts

5

> whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on The Trust's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

      (c)    The Trust deposited funds with BMIS in the expectation the amount would grow, The Trust's account statements showed such growth, and the balance on the Final BMIS Statement reflects the benefit of this bargain. The BMIS Trustee's formula is an improper and wholly inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007) the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties. *Id.* The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id.* This applies precisely to The Trust's claim.

(d)     The BMIS Trustee's Determination Letter is contrary to SIPC's own policies and

practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its

actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the

context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities

listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without
> question. Whether -- if they triple in value, you'll get the securities. . . .
> Even if they're not there.
>
> Court:  Even if they're not there.
>
> Harbeck:  Correct.
>
> Court: In other words, if the money was diverted, converted --
>
> Harbeck:  And the securities were never purchased.
>
> Court.  Okay.
>
> Harbeck:  And if those positions triple, we will gladly give the people their
> securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28,

2000) (Exhibit C). The Second Circuit's discussion of SIPC's claims processing in *New Times* further

indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid

customer claims based on the customers' final account statements, even where the securities had never

been purchased:

> Meanwhile, investors who were misled . . . to believe that they were
> investing in mutual funds that in reality existed were treated much more
> favorably. Although they were not actually invested in those real funds --
> because Goren never executed the transactions -- the information that
> these claimants received on their account statements mirrored what would
> have happened had the given transaction been executed. As a result, the
> Trustee deemed those customers' claims to be "securities claims" eligible
> to receive up to $500,000 in SIPC advances. The Trustee indicates that
> this disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore, the
> Trustee notes that, if they were checking on their mutual funds, the

7

> "securities claimants," . . . could have confirmed the existence of those
> funds and tracked the funds' performance against Goren's account
> statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24,

*In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable

and legitimate claimant expectations on the filing date are controlling even where inconsistent with

transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even

where the purchase never actually occurred and the debtor instead converted the cash deposited by the

claimant to fund that purchase").[1] The Trust is situated no differently from the "securities claimants"

discussed by the Second Circuit. Accordingly, The Trust's claim should be recognized in full.

12. In the event that the Court should determine that claimed gains on deposited funds should

not be allowed, then in the alternative, The Trust is entitled to recover interest on such deposited

amounts. Such interest is required as a matter of state law, and the United States Supreme Court has

determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by

state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have

long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of

claims, Congress having generally left the determination of property rights in the assets of a bankrupt's

estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtor

under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-

501, *et seq.* Accordingly, Customer claims should be recalculated by adding interest to all funds

deposited by customers such as The Trust.

---

[1] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole
even if securities of customers are "lost . . . misappropriated, never purchased or even stolen"); H.R.
Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if
securities were "never purchased").

(b)    Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtor earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtor on The Trust's deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13.    <u>Fourth Objection</u>. The BMIS Trustee's action in reducing the amount shown on The Trust's Customer Claim by any prior gains reflected on The Trust's Final BMIS Statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. Any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

14.    <u>Fifth Objection</u>. The BMIS Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the BMIS Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The BMIS Trustee is required to state and prove when the Ponzi scheme began.

15.    <u>Sixth Objection</u>. The Trust was required to pay income taxes on distributions which the BMIS Trustee has alleged are fictitious. The BMIS Trustee has justified his proposed method of calculating claims as fair and reasonable because fictitious gains should not compete dollar for dollar

with claims for funds actually deposited by customers, and his proposed method purportedly equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the BMIS Trustee's method is correct, The Trust's customer claim should be adjusted by adding all amounts The Trust actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. *See SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

16. Seventh Objection. The Determination Letter purports to calculate the "net equity" for The Trust's BMIS account on the basis of certain withdrawal transactions for which The Trust has no or incomplete records. Many of these withdrawal transactions allegedly occurred years ago. It is unreasonable to anticipate that customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS as acknowledged by the United States Securities and Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove that the alleged withdrawal transactions occurred by furnishing the appropriate records to The Trust and, absent such records, such transactions should be deleted from the calculation of the The Trust's "net equity."

17. Eighth Objection. The Trust's present BMIS account (account number 1ZA359) is a successor to, or assignee or transferee from, one or more prior accounts ("Transferor Accounts"). In calculating the "net equity" for The Trust's BMIS account, the BMIS Trustee's accounting does not reflect the actual amounts transferred from the Transferor Accounts to The Trust's account as reflected

on the records of The Trust, the contemporaneous documents furnished to The Trust at the time of the transfer, and/or the records of BMIS which reflected the transfer. Instead, the BMIS Trustee has redetermined each transferred amount in accordance with his "money in/money out" formula (as described in the Third Objection) so that the transferred amount is limited by the amount of "money in/money out" (*i.e.*, deposits less withdrawals) in the Transferor Account at the time the transfer occurred. There is no basis in law or fact for such a result or redetermination. The Trustee has not alleged any factual basis for claiming that The Trust is not a bona fide transferee and purchaser, acting in good faith. The Trustee has not alleged any basis for reducing the balance in the Transferor Accounts at the time of the transfer under applicable state law, which is governing pursuant to the decision in *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (2007), and has not alleged any basis to avoid or reduce said balance pursuant to the avoidance powers of the Bankruptcy Code. Instead, the reduction (a) is an attempt to assert an avoidance power retroactively, to assert such a power as against the owner of the Transferor Accounts who is not a party to this Case; (b) has no basis in any statute or rule and no such statute of rule is stated by the BMIS Trustee; (c) makes no attempt to satisfy the requirements which are applicable to actions under such avoidance powers including applicable statutes of limitations and indeed fails to identify any provision of the avoidance powers which is applicable; (d) is subject to the various defenses set forth in the avoidance powers; and (e) is an improper attempt to impose liability on a transferee of the initial transferee without alleging or satisfying the conditions of section 550(b) of the Bankruptcy Code. The Trustee should be required to redetermine [customer]'s claim by recognizing the full amounts transferred from any Transferor Accounts.

18.    Ninth Objection. The Determination Letter purports to calculate amounts transferred from one or more Transferor Accounts to The Trust's account based on certain withdrawal transactions in the Transferor Accounts for which The Trust has no or incomplete records and for which the Trustee has not provided any records. Many of these withdrawal transactions occurred years ago. Even

assuming that The Trust never had access to records concerning the Transferor Accounts, it is unreasonable to anticipate the customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS as acknowledged by the United States Securities and Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove that the alleged withdrawal transactions in the Transferor Account(s) occurred by furnishing the appropriate records to The Trust and, absent such records, the Trustee should be required to redetermine The Trust's claim by recognizing the full amounts transferred from any Transferor Accounts.

19.    Tenth Objection None of the amounts claimed as withdrawals in the Determination "Exhibit B" were made or could have been made by the Trust before January 24, 2005 were made or could have been made by the Trust because the Trust did not incept until on or after January 24, 2005. All withdrawals made before January 24, 2005 were made on, or behalf of Florence K. Law who died on January 24, 2005. Attached hereto and Marked as Exhibit "C" is her death certificate. Attached hereto and marked as Exhibit "D" a Madoff statement closest to the date of death showing assets of approximately $767,827.45. The Court will note that Ms. Law's Social Security number is 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. No further withdrawals were made to that tax account. On January 24, 2005 The Trust incepted with a taxpayer number 65-6390124. Also the Court will note that the last four digits in the box entitled "your tax payer identification number is" is "0124." The first withdrawal by the Trust, could not have been made until on or after January 24, 2005. The Court's attention is pointed to the General Motors' Bankruptcy wherein the old General Motors ceased to exist and was replaced by New General Motors. On the surface it appears that there is no difference, however, Old General Motors can not be charged

with transactions belonging to New General Motors and vice-versa. Since none of the withdrawals of this Trust account were made by the Trust dated January 25, 2005 there were no withdrawals prior to said date, and the SIPA Trustee may not use that for calculations. Assuming, but not admitting that the amounts were correct then $252,000 was withdrawn by the Trust not $1,044,000. Thus the Court must not allow the amount claimed by the SIPA Trustee.

## RELIEF REQUESTED

20.    For the reasons stated herein, The Trust's Customer Claim should be allowed in its entirety.

21.    For the reasons stated herein, the Court should direct SIPC to issue immediate payment to The Trust the amount of $500,000.00 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

22.    The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and The Trust will file a response.

23.    Regardless of the ruling on the definition of "Net Equity," the BMIS Trustee must the Court should direct SIPC to issue immediate payment to The Trust the amount of $248,000.00 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted due to the fact that the Trust did not withdraw any amount prior to January 24, 2005 and the BMIS Trustee can not bootstrap earlier withdrawals to a deceased person.

24.    The Trust requests such other relief as may be just and equitable.

## CONCLUSION

13

25.    The Trust reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of The Trust's right to object on any additional grounds.

26.    The Trust reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

27.    The Trust reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

28.    The Trust incorporates by reference all reservations of rights set forth in The Trust's Customer Claim.

Dated: November 18, 2009

Lewis Franck
Trustee
Florence Law Irrevocable Trust dtd 1/24/05
340 East 74th Street
New York, NY 10021
Tel: (212) 988-0499
No Fax

14

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

FLORENCE LAW
IRREVOCABLE TRUST DTD 1/24/05
LEWIS FRANCK TRUSTEE
360 EAST 74TH STREET APT 4F
NEW YORK NY 10021

*EXHIBIT "A"*

YOUR ACCOUNT NUMBER: 1-ZA359-3-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0124
PAGE: 5

| BOUGHT (COVERED OR LONG) | SOLD (DELIVERED OR SHORT) | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 544 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| 416 | | | WAL-MART STORES INC | 55.880 | | |
| 672 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | MARKET VALUE OF SECURITIES LONG  782,168.89 | | | |
| | | | SHORT | | | |

FOR INCOME TAX PURPOSES

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Florence Law Irrevocable Trust DTD 1/24/05
Lewis Franck, Trustee
340 East 74th Street, Apt 4F
New York, NY 10021

Dear Florence Law Irrevocable Trust DTD 1/24/05:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No 1ZA359 designated as Claim Number 003894 and Claim Number 015366 (the latter of which is duplicative of Claim Number 003894) and are combined ("Combined Claim") for purposes of this determination. This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim for a credit balance of $771,288.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,036,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $661,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($375,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 12/9/1992 | CHECK WIRE | $150,000.00 | $150,000.00 |
| 9/20/1994 | CHECK | $24,000.00 | $24,000.00 |
| 12/18/1995 | CHECK | $5,000.00 | $5,000.00 |
| 5/17/1996 | CHECK | $5,000.00 | $5,000.00 |
| 10/28/1996 | TRANS FROM 1ZA36030 | $5,000.00 | $5,000.00 |
| 11/18/1996 | CHECK | $12,000.00 | $12,000.00 |
| 2/13/1997 | CHECK | $50,000.00 | $50,000.00 |
| 3/21/1997 | CHECK | $13,000.00 | $13,000.00 |
| 4/18/1997 | CHECK | $5,000.00 | $5,000.00 |
| 7/24/1997 | CHECK | $15,000.00 | $15,000.00 |
| 8/15/1997 | CHECK | $10,000.00 | $10,000.00 |
| 9/19/1997 | CHECK | $20,000.00 | $20,000.00 |
| 1/16/1998 | CHECK | $15,000.00 | $15,000.00 |
| 2/17/1998 | CHECK | $21,000.00 | $21,000.00 |
| 8/24/1998 | CHECK | $5,000.00 | $5,000.00 |
| 11/12/1998 | CHECK | $12,000.00 | $12,000.00 |
| 2/16/1999 | CHECK | $16,000.00 | $16,000.00 |
| 6/1/1999 | CHECK | $14,000.00 | $14,000.00 |
| 7/14/1999 | CHECK | $20,000.00 | $20,000.00 |
| 7/13/2000 | CHECK | $15,000.00 | $15,000.00 |
| 1/16/2001 | CHECK | $10,000.00 | $10,000.00 |
| 3/23/2001 | CHECK | $35,000.00 | $35,000.00 |
| 5/21/2001 | CHECK | $13,000.00 | $13,000.00 |
| 11/27/2001 | CHECK | $30,000.00 | $30,000.00 |
| 1/28/2002 | CHECK | $11,000.00 | $11,000.00 |
| 4/5/2002 | CHECK | $15,000.00 | $15,000.00 |
| 6/19/2002 | CHECK | $14,000.00 | $14,000.00 |
| 7/18/2002 | CHECK | $20,000.00 | $20,000.00 |
| 9/18/2002 | CHECK | $25,000.00 | $25,000.00 |
| 10/28/2002 | CHECK | $20,000.00 | $20,000.00 |
| 10/21/2003 | CHECK | $11,000.00 | $11,000.00 |
| 2/10/2004 | CHECK | $5,000.00 | $5,000.00 |
| 4/8/2004 | CHECK | $10,000.00 | $10,000.00 |
| 12/16/2004 | CHECK | $10,000.00 | $10,000.00 |
| **Total Deposits:** | | $661,000.00 | $661,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 3/25/1993 | CHECK | ($4,500.00) | ($4,500.00) |
| 7/1/1993 | CHECK | ($4,500.00) | ($4,500.00) |

| | | | |
|---|---|---|---|
| 7/14/1993 | STOP PAYMENT | $4,500.00 | $4,500.00 |
| 7/14/1993 | CHECK | ($4,500.00) | ($4,500.00) |
| 10/1/1993 | CHECK | ($3,000.00) | ($3,000.00) |
| 1/3/1994 | CHECK | ($3,000.00) | ($3,000.00) |
| 4/4/1994 | CHECK | ($3,000.00) | ($3,000.00) |
| 10/1/1997 | CHECK | ($10,000.00) | ($10,000.00) |
| 1/2/1998 | CHECK | ($10,000.00) | ($10,000.00) |
| 4/6/1998 | CHECK | ($10,000.00) | ($10,000.00) |
| 7/1/1998 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/1/1998 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/4/1999 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/1/1999 | CHECK | ($15,000.00) | ($15,000.00) |
| 6/23/1999 | CHECK | ($15,000.00) | ($15,000.00) |
| 7/1/1999 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/1/1999 | CHECK | ($15,000.00) | ($15,000.00) |
| 1/3/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 4/3/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 6/20/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/3/2000 | CHECK | ($15,000.00) | ($15,000.00) |
| 10/2/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/16/2000 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/24/2000 | RETURNED CHECK | $20,000.00 | $20,000.00 |
| 1/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/2/2001 | CHECK | ($20,000.00) | ($20,000.00) |
| 8/1/2001 | TRANS TO 1ZA44030 | ($200,000.00) | ($192,000.00) |
| 10/1/2001 | CHECK | ($16,000.00) | ($16,000.00) |
| 1/2/2002 | CHECK | ($16,000.00) | ($16,000.00) |
| 4/1/2002 | CHECK | ($16,000.00) | ($16,000.00) |
| 7/1/2002 | CHECK | ($16,000.00) | ($16,000.00) |
| 10/1/2002 | CHECK | ($16,000.00) | ($16,000.00) |
| 1/2/2003 | CHECK | ($16,000.00) | ($16,000.00) |
| 4/1/2003 | CHECK | ($16,000.00) | ($16,000.00) |
| 7/1/2003 | CHECK | ($16,000.00) | ($16,000.00) |
| 10/1/2003 | CHECK | ($16,000.00) | ($16,000.00) |
| 1/2/2004 | CHECK | ($16,000.00) | ($16,000.00) |
| 4/1/2004 | CHECK | ($16,000.00) | ($16,000.00) |
| 7/1/2004 | CHECK | ($16,000.00) | ($16,000.00) |
| 10/1/2004 | CHECK | ($16,000.00) | ($16,000.00) |
| 1/3/2005 | CHECK | ($16,000.00) | ($16,000.00) |
| 4/1/2005 | CHECK | ($16,000.00) | ($16,000.00) |
| 7/1/2005 | CHECK | ($16,000.00) | ($16,000.00) |
| 10/3/2005 | CHECK | ($16,000.00) | ($16,000.00) |
| 1/3/2006 | CHECK | ($16,000.00) | ($16,000.00) |
| 4/3/2006 | CHECK | ($17,000.00) | ($17,000.00) |
| 7/3/2006 | CHECK | ($17,000.00) | ($17,000.00) |
| 10/2/2006 | CHECK | ($18,000.00) | ($18,000.00) |
| 1/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |

| | | | |
|---|---|---|---|
| 4/2/2007 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/12/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 7/2/2007 | CHECK | ($18,000.00) | ($18,000.00) |
| 10/1/2007 | CHECK | ($18,000.00) | ($18,000.00) |
| 1/2/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/2008 | CHECK | ($20,000.00) | ($20,000.00) |
| **Total Withdrawals:** | | ($1,044,000.00) | ($1,036,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($383,000.00) | ($375,000.00) |

STATE OF FLORIDA

## OFFICE of VITAL STATISTICS
### CERTIFIED COPY
### FLORIDA CERTIFICATE OF DEATH

Exhibit "C"

| | | |
|---|---|---|
| 1. DECEDENT'S NAME | | 2. SEX |
| Florence Lew | | Female |
| 6. DATE OF BIRTH | | 8. DATE OF DEATH |
| July 23, 1909 | | January 24, 2005 |
| 9. SOCIAL SECURITY NUMBER | BIRTHPLACE | COUNTY OF DEATH |
| 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 | Brooklyn, New York | Miami-Dade |

9. PLACE OF DEATH — HOSPITAL / NON-HOSPITAL

10. FACILITY NAME
5700 Collins Avenue #N8

Miami Beach

13. RESIDENCE - STATE
Florida — Miami-Dade — Miami Beach

14. STREET ADDRESS
5700 Collins Avenue — N8 — 33140

USUAL OCCUPATION
Self Employed — Executive

DECEDENT'S RACE — White

FATHER'S NAME
Abraham Kronstadt

MOTHER'S NAME
Jenny Silinsky

INFORMANT'S NAME
Reuben — New York

CITY OR TOWN
New York — 42 West 83rd Street #4B — 10024

PLACE OF DISPOSITION
Vista Memorial Park — Florida — Miami

METHOD OF DISPOSITION — Burial

FUNERAL FACILITY
Riverside Gordon Memorial Chapels — Florida

CITY OR TOWN
Miami Beach — 33139

20. CERTIFIER
Nathan Sekel — MD — Florida — Miami Beach — 6302 Alton Road #520 — 33140

1/28/2005 — JAN 31 2005

CAUSE OF DEATH
Cerebrovascular accident

FEB 1 2005

HEALTH

C1209585    CERTIFICATION OF VITAL RECORD



EXHIBIT "D"

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

FLORENCE LAW
REVOCABLE TRUST DTD 7/6/92
5700 COLLINS AVENUE
MIAMI BEACH     FL  33140

YOUR ACCOUNT NUMBER: 1-ZA359-3-0

PERIOD ENDING: 1/31/05

YOUR TAX PAYER IDENTIFICATION NUMBER: 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

PAGE: 5

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 117 | | | 3M COMPANY | 84.360 | | |
| 728 | | | TIME WARNER INC | 18 | | |
| 312 | | | TYCO INTERNATIONAL LTD | 36.160 | | |
| 299 | | | U S BANCORP | 30.850 | | |
| 442 | | | VERIZON COMMUNICATIONS | 35.590 | | |
| 273 | | | VIACOM INC | 37.340 | | |
| | | | CLASS B NON VOTING SHS | | | |
| 663 | | | WAL-MART STORES INC | 52.400 | | |
| 273 | | | WELLS FARGO & CO NEW | 61.300 | | |
| | | | MARKET VALUE OF SECURITIES LONG   767,827.45 | | | |
| | | | SHORT | | | |