Max Folkenflik, Esq.
FOLKENFLIK & McGERITY
1500 Broadway
21st Floor
New York, New York 10036
(212) 757-0400
mfolkenflik@fmlaw.net
*Attorneys for S. James Coppersmith*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>Vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>**OBJECTION OF S. JAMES COPPERSMITH TO TRUSTEE'S DETERMINATION OF CLAIM AND REQUEST FOR A HEARING** |

S. James Coppersmith ("Coppersmith" or "Claimant"), by its attorneys Folkenflik & McGerity, hereby objects to the Notice of Trustee's Determination of Claim dated October 22, 2009 sent by Irving H. Picard and states as follows:

**BACKGROUND FACTS**

1. Commencing on or about January 2, 2004, and continuing through December 11, 2008, the date of the filing of this proceeding, Claimant maintained an account with Bernard L. Madoff Investment Securities, LLC ("BLMIS"), account no. C1326 (the "Coppersmith Personal Account").

2. As of December 2, 2008, the Coppersmith Personal Account showed a positive cash balance of $2,717,496.32, comprised of a positive balance of specifically identified

{10449050:2}

publicly-traded stocks, treasury bills and money market funds net of any negative balance in publicly traded options positions.

3.      The investment instruments which were identified as being held in the Coppersmith Personal Account on November 30, 2008, were all "securities" as that term is used in the Securities Investor Protection Act ("SIPA"). As of November 30, 2008, all of the investments held in the Coppersmith Personal Account was reported to be held in securities within the meaning of that term under SIPA.

4.      In June, 2009, Claimant filed a claim with Irving H. Picard, Trustee appointed by the Securities Investor Protection Corporation ("SIPC") for BLMIS (the "Trustee"), designated as Claim Number 08527. Following the instructions of the Trustee to account for only deposits and withdrawals, but without prejudice to Claimant's right to assert that the proper computation of the loss of securities in the Coppersmith Personal Account should be based on the balances shown on the November 30, 2008 statement, Claimant computed the "net equity" in the account.

5.      Because of the effect of the applicable statutes of limitation and because the reported returns on the Madoff investments were not disproportionate to the returns on a well-managed equity account during the period up to December 2002, Claimant believes that the appropriate starting balance for the computation of the losses in any account is at the earliest the balance shown on the monthly statement for the account as of 6 years prior to December 11, 2008. Claimant believes there is no basis to adjust that amount and submitted his claim on that basis. This account commenced on or about January 2, 2004 with a deposit from an account held by an LLC in which Mr. Coppersmith had an interest. Claimant has used the January 2, 2004 balance as the starting balance. Pursuant to the

above methodology, Claimant submitted a claim for loss of securities in the value of $2,717,496.32. The Schedule of Deposits and Withdrawals submitted by Coppersmith to the Trustee is annexed as Exhibit A.

6.  By notice dated October 22, 2009, the Trustee issued a Determination of Claim (the "Trustee's Determination," a copy of which is annexed as Exhibit B). The Trustee's Determination rejected the Claimant's claim for securities and rejected the claim for any amount of loss. Instead, the Trustee concluded that computing the deposits from March 3, 1998, and the withdrawals, which started on February 2, 2000, led to a computation of net equity in the amount of $1,118,000.00.

7.  The Trustee also determined that the withdrawal made on December 1, 2008 of $332,000.00 was avoidable and shall be deducted from a) the claims in net equity and b) from the $500,000.00 payment due from SIPC pursuant to 15 U.S.C. § 77666-3(a)(1)

8.  Claimant hereby objects to the Trustee's Determination and each and every part thereof, and requests a hearing before the court to correctly determine the claim of Coppersmith.

## THE TRUSTEE'S DETERMINATION THAT THE WITHDRAWAL OF DECEMBER 1, 2008 IS AVOIDABLE IS IN ERROR.

9.  The Trustee determined that the withdrawal of $332,000.00 on December 1, 2008 was avoidable pursuant to Section 547 of the Bankruptcy Code, because it was made within 90 days of the filing of this proceeding. However, Section 547 (b)(5) only makes such payments preferential and avoidable if the payment

(5) ... enables such creditor to receive more than such creditor would receive if-    (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
    (B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].
11 USCS § 547(b)(5).

Prior to the withdrawal on December 1, 2008, the net equity in the account, as computed by the Trustee, was $1,512,000.00. The withdrawal of $332,000.00 represented 21.96% of the amount of net equity. It is the Claimant's understanding that the Trustee has computed the total net equity of the claims made on the Estate as approximately $13,000,000,000.00, and has recovered to date approximately $1,800,000,000.00 or 13.85% of the claims. Because of the nature of liquidations pursuant to SIPA, 100% of the amounts collected will be distributed to customers. *See*, 15 U.S.C. § 78fff-2(c)(1). The Trustee intends such distributions to be pro rata based on the computation of net equity pursuant to the methodology the Trustee has adopted. Accordingly, if the Trustee obtains recoveries for the Estate of an additional $1,054,497,354.50, the withdrawal by the Claimant on December 1, 2008 will exactly equal Claimant's proportionate share of the amount to be distributed by the Estate and will not, therefore, be avoidable. It is the Claimant's understanding that the Trustee anticipates additional recoveries in excess of $1,054,497,354.50, and, indeed, is currently in negotiations with the Estate of Jeffry Pickower, to settle a multi-billion dollar claim against the Estate for an amount in excess of $1,054,497,354.50. Accordingly, it is Claimant's position that the withdrawal of December 1, 2008, is not avoidable under Section 547.

**THE TRUSTEE'S DETERMINATION TO DEDUCT THE AMOUNT OF THEWITHDRAWAL OF DECEMBER 1, 2008 FROM THE ADVANCE DUE FROM SIPC IS IN ERROR**

10.  The Trustee has taken the position that the Claimant's withdrawal of December 1, 2008 was preferential and that accordingly a) the Trustee will not make a distribution of the

SIPC advance of $500,000.00 pursuant to 15 U.S.C. § 78fff-3 until the preference claim is resolved, and b) the amount of the preferential withdrawal, or such lesser amount as the parties may agree to settle the preferential claim for, should be deducted from the SIPC advance. The Claimant believes the Trustee's position is flawed because the withdrawal is not avoidable under Section 547 for the reasons set forth above. Even if the withdrawal were avoidable, the Claimant believes the Trustee's position is in error for several separate and independently sufficient reasons. First, the payment of the $500,000.00 advance is not a payment from the assets of the Estate and will not deplete the amount available for distribution to customers. It is more in the nature of an insurance payment which will not be repaid to SIPC unless and until all customers are made whole, an eventuality which seems to be highly unlikely. Under the statutory scheme, deducting the amount of a preferential payment from the SIPC advance distorts the statutory scheme to the benefit of SIPC and the detriment of customers in violation of the priority provisions of 15 U.S.C. § 78fff-2(c)(1).

Second, given the amount of net equity in the Claimant's account, there is no set of facts which could deny the Claimant's right to recover at least the $500,000.00 amount advanced, even if the Trustee had never and will never recover a single penny for the Estate.

Third, there is nothing in SIPA or the Code which would allow, let alone require, the delay of payment of the full SIPC advance to the Claimant. Claimant recognizes that no distribution of the property of the Estate can be made to Claimant until the preference claim is resolved. However, the Trustee has ample authority to seek to recover any preferential payments and to resolve any such dispute before or at the time of distribution. There is no

reason in law or policy to reduce the "insurance" payment of $500,000 to the Claimant at this time.

## THE TRUSTEE'S DETERMINATION DENYING COPPERSMITH'S CLAIM FOR SECURITIES IN THE COPPERSMITH ACCOUNT WAS IN ERROR.

11.    The Trustee determined to deny Claimant's claim for securities apparently based on the claim that "No securities were ever purchased for your account." Trustee's Determination at 1. Claimant has not seen the books and record of BLMIS, and therefore is unable to verify the truth of that statement. In all events, the actual purchase of securities for the Coppersmith Personal Account is not the standard in this Circuit for determining whether a claimant has a "securities claim" under SIPA. Instead, binding Second Circuit authority provides that "the Claimants in this case should be treated as having claims for securities because the confirmations and account statements that they received from the Debtors stated that the Claimants held securities in their accounts." *In re New Times Sec. Servs.*, 371 F.3d 68, 87 (2d Cir. N.Y. 2004), *citing* Amicus Curiae Brief filed by the Securities and Exchange Commission at 8. Coppersmith received confirmations for each trade and an account statement each month. The final account statement dated November 30, 2008, "stated that the Claimant held securities in [his] accounts." The Trustee and this Court are bound to follow the decision of the Second Circuit. The Trustee's Determination must be reversed in this respect.

## THE TRUSTEE'S DETERMINATION THAT COPPERSMITH'S NET EQUITY MUST BE DETERMINED BY SUBTRACTING WITHDRAWALS FROM DEPOSITS WAS IN ERROR.

12.     The Trustee determined that the net equity of Claimant's account should be determined by subtracting the total withdrawals from the total deposits in the Coppersmith Personal Account. This approach may be consistent with the approach adopted by the Second Circuit in *In re New Times*. However, Claimant believes this approach to be in error in this case for two separate and independently sufficient reasons.

13.     First, in this case to apply such a rule would be to effectively apply the fraudulent conveyance rules to distributions which occurred more than six years ago, and thus are immune from attack based on the applicable statute of limitations for fraudulent conveyances. *See*, N.Y. C.P.L.R. 213. Claimant believes that at the earliest the Trustee must take as his starting balance in the Coppersmith Personal Account the amount which was reported on the BLMIS statements for the Coppersmith Personal Account six years prior to December 11, 2008. However, the Coppersmith Personal Account was opened on January 2, 2004. It was opened with cash credited from another account held by an LLC in which Mr. Coppersmith had an interest. That amount should be treated as the starting balance. The balance in the Coppersmith Personal Account as of January 2, 2004, as shown on the account statement of January 2, 2004, was $3,599,496.32. Using that starting balance, the Trustee should have determined that the "net equity" in the Coppersmith Account as of December 11, 2008, was $2,717,496.32. The Trustee's determination to deny Claimant's claim in that amount was in error.

14.     Second, Claimant respectfully asserts that for the purpose of determining "net equity" disregarding of the amounts of earnings and interest shown on BLMIS account statements is inconsistent with SIPA and its legislative history and entirely illogical and unsupportable. In *In re New Times,* the Second Circuit reviewed at length

"the language of the statute, its purposes of protecting investors and inspiring confidence in the securities markets, and the specific history surrounding the drafting of the relevant language found in section 9(a)(1) of SIPA, 15 U.S.C. § 78fff-3(a)(1)..." *Id.* at 87. Section 9(a)(1) relates to distinguishing "cash" from "securities" for the purpose of determining the amount of SIPC insurance protection an investment has. The Second Circuit and the SEC concluded that "When a customer has been sent confirmations and account statements reflecting his securities purchases and showing that he holds the securities in his account, his claim, in the Commission's view, involves the debtor's function as securities custodian and is one for securities ... " *In re New Times Sec. Servs.*, 371 F.3d at 87. There is nothing in the purpose of the act, the language of the statute, or the legislative history which would allow the character of the holdings in the account to be characterized as securities, and the broker's conduct to be one of a "securities custodian," and to nonetheless ignore those conclusions when determining whether to credit the customer for profits and losses in those "securities."

15.     The Second Circuit and SEC argued that to credit the customer with such profits and losses would be to base recovery on "fictitious amounts in the [brokerage] firm's books and records [and] would allow customers to recover arbitrary amounts that necessarily have no relation to reality..." *In re New Times Sec. Servs.*, 371 F.3d at 88, *citing* Amicus Curiae Brief filed by the Securities and Exchange Commission at 16. To the contrary, however, the amounts are not merely found on the brokerage firm's books, but are publicly available securities trading records, found in published newspapers, magazines, and in numerous online sources. The trading profits and loses shown on the BLMIS account statements were consistent with the public information available to

Claimant and in fact represented the profits and losses which would have been realized if the securities shown in the Coppersmith Personal Account had in fact been purchased. Therefore, it is neither "irrational" nor "unworkable" to give the customer the benefits of trading in securities which should have been in the customer's account, but were not. What is irrational is to conclude, and the Second Circuit and SEC conceded they must, that Congress intended to treat securities shown in confirmations and monthly statements as securities which were purchased, even if they were not, but to deny the customer the benefits of holding those securities.

Dated: New York, New York
November 18, 2009

                    Respectfully submitted,

                    FOLKENFLIK & McGERITY

                    By:_____
                            Max Folkenflik
                    1500 Broadway, 21st Floor
                    New York, New York 10036
                    (212) 757-0400

                    *Attorneys for S. James Coppersmith*

# EXHIBIT A

## CLAIM OF S. JAMES COPPERSMITH PERSONAL ACCOUNT

Schedule of Deposits and Withdrawals

Bernard L. Madoff Investment Securities LLC.

Account No. 1-C1326

From 1-2-04 to 11-30-08

| Transaction | Date | Amount | |
|---|---|---|---|
| **Initial Investment Contribution** | 1/2/04 | $3,599,496.32* | |
| Withdrawal | 9/19/05 | $175,000.00** | |
| Withdrawal | 9/14/06 | $100,000.00** | |
| Withdrawal | 2007*** | $275,000.00** | |
| Withdrawal | 12/2/08 | $332,000.00** | |
| **Net Deposits** | | $2,717,496.32 | |

\*       The deposited amount was rolled over from S. James Coppersmith's 50% interest in the account captioned Copperose Family LLC, account no. 1-C1281 (the "Copperose Account"). The Copperose Account was funded with $4 million, $2 million from Mr. Coppersmith, deposited as follows: $1,000,000 on January 4, 1999, $500,000 on October 7, 1999, and $500,000 on January 10, 2000. No withdrawals were taken. The $3,599,496.32 is the distribution to Mr. Coppersmith from the Copperose Account capital and profits. If Copperose profits are excluded from consideration in connection with the January 2, 2004 deposit in account no. 1-C1326 (Mr. Coppersmith reserves all rights to argue that they should not be excluded), the net deposits in 1-C1326 would in that event be the $2 million of net deposits by Mr. Coppersmith into Copperose which was rolled over into 1-C1326. Under that scenario, the net deposits for 1-C1326 would be $1,118,000, not the $2,717,496.32 shown.

\*\*      Claimant has been unable to verify any of these amounts against BMIS statements.

\*\*\*     Claimant believes this withdrawal was during the fourth quarter - unable to confirm exact date.

# EXHIBIT B



**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

October 22, 2009

S. James Coppersmith
7 Elmwood Road
Marblehead, MA  01945

Dear Mr. Coppersmith:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No. 1C1326 designated as Claim Number 008527 and Claim Number 008492 (the latter of which is duplicative of Claim Number 008527) and are combined ("Combined Claim") for purposes of this determination. This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim for securities is **DENIED**. No securities were ever purchased for your account.

Your Combined Claim is **ALLOWED** for $1,350,000.00 (the "Allowed Claim"), which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, <u>less</u> subsequent withdrawals, as outlined in Table 1, <u>plus</u> the preferential $232,000.00 as discussed below.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300037147.1

| Table 1 ||||
|---|---|---|---|
| **DEPOSITS** ||||
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 1/2/2004 | TRANS FROM 1C128130 | $3,599,496.32 | $2,000,000.00 |
| **Total Deposits:** | | $3,599,496.32 | $2,000,000.00 |
| **WITHDRAWALS** ||||
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 9/26/2005 | CHECK | ($175,000.00) | ($175,000.00) |
| 9/14/2006 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/12/2007 | CHECK | ($150,000.00) | ($150,000.00) |
| 6/8/2007 | CHECK | ($125,000.00) | ($125,000.00) |
| 12/1/2008 | CHECK | ($332,000.00) | ($332,000.00) |
| **Total Withdrawals:** | | ($882,000.00) | ($882,000.00) |
| **Total deposits less withdrawals:** | | $2,717,496.32 | $1,118,000.00 |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

As discussed with my legal counsel, Deanna Campbell, on October 20, 2009, the last withdrawal from your BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). You

2

agreed with Ms. Campbell that to facilitate the prompt partial satisfaction of your allowed claim, the Trustee was authorized to deduct the preferential payment of $232,000.00 from his initial payment to you.

Accordingly, your **ALLOWED CLAIM** of $1,350,000.00 will be satisfied in the following manner:

The enclosed **PARTIAL RELEASE AND ASSIGNMENT** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL RELEASE AND ASSIGNMENT**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $268,000.00 - the $500,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA, less the repayment of the preferential $232,000.00. In addition, you will be entitled to receive an additional distribution based upon your **ALLOWED CLAIM** from the fund of customer property, if any.

The manner of this allowance and partial satisfaction of your **ALLOWED CLAIM** shall be in final settlement of any preference action the Trustee may have otherwise brought against you.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78lll(4). Accordingly, Customers, as defined by SIPA § 78lll(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 22, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:   Folkenflik & McGerity
      1500 Broadway
      New York, New York 10036

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that S. James Coppersmith, with an address of 7 Elmwood Road, Marblehead, MA 01945 (hereinafter referred to as the "Assignor"), in consideration of the payment of $268,000.00 to satisfy in part its claim for customer protection (the "Customer Claim", having been designated Claim #008527 and Claim #008492) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for himself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1C1326, the "BLMIS Account"), which gave rise to the allowed Customer Claim for

protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release. Assignor further acknowledges that the consideration to be received is in final settlement of any preference action the Trustee may have otherwise brought against Assignor.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
S. James Coppersmith

Sworn and subscribed before me this
\_\_\_\_ day of _____, 2009.

_____
Notary Public