**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**APPLICATION OF ATTIAS & LEVY AS SPECIAL COUNSEL FOR THE TRUSTEE FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
<u>MAY 1, 2009 THROUGH OCTOBER 31, 2009</u>**

Keith Azopardi, together with other members and associates at the law firm of Attias & Levy, special counsel for Irving H. Picard (the "Trustee"), Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. ("SIPA"), submits this Application for Interim Allowance of Fees and Reimbursement of Expenses (the "Application") for compensation of legal fees in the amount of <u>$216,793.92</u> (of which 20% is to be deferred through the conclusion of the liquidation period) plus an additional <u>$2,895.07</u> in respect of amounts that are owed to Attias & Levy for services rendered during the Prior Compensation Period (as defined below), as further described in ¶ 34 *infra*, and reimbursement of expenses in the amount

1

of $14,506.80 for the period from May 1, 2009 through October 31, 2009 (the "Compensation Period"). In support of the Application, Attias & Levy respectfully submits as follows:

## I. BACKGROUND

1. On December 15, 2008, Judge Stanton of the United States District Court for the Southern District of New York, upon application filed on the same date by the Securities Investor Protection Corporation ("SIPC"), entered an order (the "Decree Order") calling for the liquidation of the business of the Debtor in accordance with SIPA and by Paragraph II of the Decree Order, the Trustee was appointed as the trustee for the liquidation of the Debtor's business.

2. The Debtor's liquidation proceeding was removed to this Court pursuant to SIPA § 78eee(b)(4), and, to the extent consistent with the provisions of SIPA, is being conducted as though it were a case under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to SIPA § 78fff(b).

3. Beginning on March 13, 2009, Attias & Levy has served as special counsel for the Trustee.

4. On April 7, 2009, this Court entered an order approving the Trustee's motion for authority to retain Attias & Levy as special counsel to the Trustee in matters pertaining to Gibraltar.

5. The Trustee's motion to retain Attias & Levy established a fee arrangement pursuant to which Attias & Levy agreed to a fee reduction in the amount of 20% as well as an additional holdback of fees in the amount of 20%.

## II. SERVICES RENDERED BY ATTIAS & LEVY

6. The legal services performed on behalf of the Trustee during the time period covered by this Application are as follows:

7. In general terms the work conducted during the period was aimed at pursuing a

2

claim by the Trustee for disclosure of information, freezing orders, payment into Court and the eventual turnover of a transfer of $150 million (the "Transfer") made on or about October 31, 2008 to Vizcaya Partners Limited ("Vizcaya") through Bank J Safra (Gibraltar) Limited ("Bank Safra"). Some of the monies derived from the Transfer were also transferred into the accounts of other parties, namely Zeus Partners Limited ("Zeus"), Asphalia Fund Limited ("Asphalia") and Siam Capital Management Limited ("Siam"). All the above parties are parties to Gibraltar litigation.

8. There are four related Gibraltar actions in which Gibraltar Special Counsel for the Trustee has been involved, namely (i) a judicial review brought by Vizcaya against the decision by the Gibraltar Financial Intelligence Unit1 to issue "no consent" orders, freezing monies held at Bank Safra in the names of Vizcaya, Zeus, Asphalia and Siam (the "Vizcaya judicial review"); (ii) an action brought by Siam against the Attorney General and the Bank seeking the release of the sums held in its account (the "Siam action"); (iii) an action brought by Bank Safra to pay into Court approximately $63 million held by it in the accounts of Zeus and Asphalia pending determination of the claims (the "Safra claim"); and (iv) an action brought by the Trustee against Vizcaya, Zeus, Asphalia, Siam and Bank Safra for assistance from the Gibraltar Court relating to the transfer of $150 million and seeking orders for disclosure of information, freezing orders, payment into Court and turnover of the monies to the Trustee and/or the US Bankruptcy Court.

9. During the invoice period Attias & Levy conducted significant work in relation to the Gibraltar actions.

10. Initial instructions were received from the Trustee on the nature of the proposed action. Letters had been written in April of a pre-action nature to Vizcaya, Zeus, Asphalia, Siam and Bank Safra. There was substantial correspondence during this period and an evidence-gathering process was engaged in.

11. There were discussions between counsel for all parties and the US Trustee on the claims of the respective parties. There was also discussion with Crown Counsel for the Attorney General in respect of the Vizcaya judicial review.

12. There was a Court appearance on May 19th when an application was made for the Court to make the US Trustee an interested party in the Vizcaya judicial review. This application was granted by Mr Justice Dudley after a hearing that involved counsel for the Attorney General and for Vizcaya, Bank Safra and Siam.

13. On May 28th, after intensive discussions between the parties an application was heard by the Supreme Court who ordered the payment into Court of approximately $10.02 million in the Vizcaya judicial review. These sums were held by Bank Safra in an account in the name of Vizcaya. The funds currently remain in the Supreme Court pending further order in that action or in any other action in the Gibraltar Courts.

14. Correspondence ensued between the parties to establish whether voluntary undertakings would be given as to the non-removal of monies from Gibraltar and voluntary disclosure as to the whereabouts of the transferred monies. These discussions and correspondence did not achieve the necessary undertakings or disclosure at that stage.

15. Siam had discussions with counsel for the Trustee in respect of the monies received by it derived from the transfer of the October 31, 2008. By June counsel for the Trustee had been able to establish the provenance and flow of funds through the Siam account. However Vizcaya, Zeus and Asphalia refused to provide information at that stage. It became increasingly clear that an action would need to be launched for general assistance seeking for disclosure, freezing orders, payment in and turnover of the funds to the Trustee/Court pending determination of the claims to the monies.

16. A Letter of Request was issued by the Hon. Burton Lifland to the Supreme Court

---

[1] A unit of the Royal Gibraltar Police and represented in the proceedings by the Attorney General.

4

of Gibraltar seeking the assistance of the Gibraltar Court in respect of certain matters detailed in that letter in the context of the bankruptcy proceedings being administered by the US Court and the adversary action issued by the Trustee in New York against Safra and Vizcaya. Siam also issued its own action described above to seek the release of monies in its account at Safra.

17. On the 26th of June, Safra issued its action seeking the payment into Court of the funds located in the Zeus and Asphalia accounts. The Trustee had to respond to the Safra action. On his behalf an acknowledgment of service was filed in connection with the same and all the relevant papers filed in that action were considered. The information provided in the Safra action assisted in identifying the extent of funds and the location of the funds held in Gibraltar at Safra Bank.

18. Significant amendments were made to the claim for assistance brought by the Trustee. This was issued on the July 9, 2009 and served on all parties, namely Safra, Vizcaya, Zeus, Asphalia and Siam. A Part 8 Claim Form was issued out of the Supreme Court backed by an Affidavit of Irving Picard which described the nature of the claim for assistance and the claim brought in the United States Bankruptcy Court against Safra and Vizcaya. Draft orders for freezing relief and disclosure were prepared.

19. After service of proceedings most of the activity in that month concentrated on discussions between Counsel for all parties as to how best to take forward the four Gibraltar actions that had been issued. Significant correspondence, telephone calls and meetings were dedicated to this.

20. On the July 27, 2009 Vizcaya filed another application for the release of funds to it from monies held in Court for the purposes of defending the Gibraltar proceedings and for taking legal advice in the British Virgin Islands and New York. Supporting papers were considered.

21. Additionally papers were filed seeking a case management conference before one of the Supreme Court Judges.

5

22. Significant work was done to progress the civil action issued by Irving Picard against Vizcaya, Zeus, Asphalia, Siam and Safra. There were discussions between counsel for all the parties on a without prejudice basis to try to agree directions for a prospective hearing.

23. In late July GFIU had partially lifted its "no consent" in respect of Siam's account. This led to the potential release of funds. Steps were taken to file an application for urgent consideration of injunctive relief by the Court. This led to discussions between Safra, Siam and counsel for the Trustee. Eventually undertakings were provided which were embodied into the form of an order to preserve the funds in the accounts held by Safra in the name of Zeus, Asphalia and Siam up to specified levels until trial. This in effect managed to freeze another approximately $64 million until trial or further order.

24. Intensive discussions were held between the parties and there were exchanges of numerous drafts of possible directions orders in the respective actions.

25. Directions were set by the Court for the provision of evidence, skeleton arguments and evidence in reply to take place during September in preparation for the October hearing.

26. Significant work had to be done in respect of the preparation of skeleton arguments for the hearing of the October 26, 2009. These had to be served by the Trustees on October 1, 2009.

27. Additionally work on preparing bundles for the hearing namely Volume A (pleadings, orders and particulars), Volumes B to D (evidence, statements and affidavits) and Bundles of authorities, (case law and statutory material) was commenced. That work was continued during October in order to comply with the deadlines of the 5th October and 20th October for the serving of those documents on other parties and lodging of material at the Court.

### III. COMPENSATION REQUESTED

28. The Application demonstrates how Attias & Levy has both added value to the Debtor's estate and has advanced the Debtor's SIPC liquidation proceeding.

6

29. Attias & Levy has been mindful of the need to avoid undue legal fees in this case and has taken all reasonable steps to provide cost-effective representation while rendering services with the highest degree of skill and professionalism. To that end, Attias & Levy has staffed this matter leanly and endeavored to eliminate duplication of effort by giving primary responsibility of the case to one partner, Mr. Keith Azopardi.

30. From May 1, 2009 through October 31, 2009, Attias & Levy provided a total of 759.8 hours of legal services to the Trustee in this case. Prior to the 20% discount, the total amount of fees incurred in this time period was $270,992.40 and the total blended hourly rate for professional services was $356.66. After the 20% discount, the total amount of fees incurred is $216,793.92 and the total blended hourly rate is $285.33. Attias & Levy has agreed to a further holdback of 20% of its fees in the amount of $43,358.78 resulting in the present request for compensation in the amount of $173,435.14.

31. A breakdown of the total number of hours performed by each Attias & Levy timekeeper is provided on **Exhibit A** annexed hereto.

32. Attias & Levy seeks reimbursement for out-of-pocket expenses incurred in connection with its representation of the Trustee during the Compensation Period of $14,506.80. An itemized list of these expenses is detailed on Exhibit B attached hereto.

33. Attias & Levy typically charges its clients $0.17 per page for photocopying and printing. Attias & Levy does not charge for incoming faxes. Charges for electronic research, overnight delivery, postage, long distance telephone calls, and other out-of-pocket disbursements are based on the actual amounts paid by Attias & Levy for those services.

### IV. COMPENSATION OWED FROM PRIOR COMPENSATION PERIOD

34. Attias & Levy's fees for the period March 13, 2009 through April 30, 2009 ("Prior Compensation Period") were correctly detailed in its application to this Court, dated July 17, 2009 (the "Prior Application") [Docket No. 328] and in SIPC's recommendation in support of Foreign

7

Counsels' fees, dated August 3, 2009 [Docket No. 355]. However, Baker & Hostetler, LLP, counsel for the Trustee, incorrectly extrapolated the amount of fees requested for Attias & Levy. As a result, Exhibit A to the Order Approving Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses, dated August 6, 2009 (the "Order") [Docket No. 363] mistakenly listed only eighty percent (80%) of Attias & Levy's discounted fees as "Interim Compensation Requested" instead of one hundred percent (100%) of the discounted fees that had been incurred during the Prior Compensation Period. Pursuant to an agreement with SIPC, a twenty percent (20%) holdback in fees until the end of the liquidation is required. Attias & Levy was thus awarded only sixty-four percent (64%) of its actual discounted fees, or $11,580.25, as opposed to the eighty percent (80%), or $14,475.32, it was entitled to receive. The Application seeks to correct this error; thus an additional $2,895.07 should be granted to Attias & Levy in respect of compensation for services rendered during the Prior Compensation Period.

## V. GENERAL MATTERS

35.     All of the professional services for which compensation is requested herein were performed by Attias & Levy for and on behalf of the Trustee and not on behalf of any other person or entity.

36.     No agreement or understanding exists between Attias & Levy and any other person for sharing compensation received in connection with this case nor has any other person or entity agreed to provide Attias & Levy with compensation for the legal services described herein.

37.     This Court is authorized by SIPA to award to the attorneys for a SIPA Trustee "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred." SIPA § 78eee(b)(5)(A). SIPA also permits interim allowances to the attorneys for a SIPA Trustee. Id.

38.     Pursuant to § 78eee(b)(5)(E) of SIPA, allowances granted by this Court are to be

8

charged against the general estate as a cost of administration. If the general estate is insufficient to pay such allowances in whole, or in part, SIPC shall advance any necessary funds for such payment. SIPA § 78eee(b)(5)(E). Section 78eee(b)(5)(C) of SIPA provides that SIPC shall file a recommendation with regard to the allowance of fees and reimbursement of expenses requested by this Application, and that this Court shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C). Attias & Levy expects that SIPC's recommendation shall be filed with this Court separately.

**WHEREFORE**, Attias & Levy respectfully requests that this Court enter an Order:

 a. Granting this Application;

 b. Allowing payment to Attias & Levy for interim compensation of legal fees, after (a) a reduction of 20% (in the amount of $54,198.48    ) and (b) a holdback of 20% (in the amount of $43,358.78) pending final approval of Attias & Levy' fees in this case, in the aggregate amount of $173,435.13 for professional services rendered to the Trustee from May 1, 2009 through October 31, 2009;

 c. Allowing payments to Attias & Levy in the amount of $2,895.07 in respect of compensation for services rendered during the Prior Compensation Period;

 d. Allowing payment to Attias & Levy in the amount of $14,506.80 for reimbursement of expenses incurred by Attias & Levy from May 1, 2009 through October 31, 2009; and

 e. Granting Attias & Levy such other and further relief as this Court deems just and proper.

Dated: November 23, 2009

Respectfully submitted,

ATTIAS & LEVY

By: ___s/Keith Azopardi_____

Keith Azopardi
First Floor Suites
39 Irish Town
P.O. Box 466
Gibraltar
London EC1A 2FG
Telephone: +350 200 72150
Fax: +350 200 74986

# EXHIBIT A

## SUMMARY OF SECOND INTERIM FEE APPLICATION OF ATTIAS & LEVY FOR SERVICES RENDERED FOR THE PERIOD MAY 1, 2009 THROUGH OCTOBER 31, 2009

|  | **YEAR ADMITTED** | **HOURLY RATE** | **TOTAL HOURS BILLED** | **TOTAL COMPENSATION** |
|---|---|---|---|---|
| Keith Azopardi | 1990 (UK & Gib) | 420.00 | 395.5 | $166,110.00 |
| Samantha Sacramento | 2000(UK) 2004(Gib) | 336.00 | 157.4 | $52,886.40 |
| Graceanne Parody | 2004 (UK) 2005 (Gib) | 315.00 | 81.4 | $25,641.00 |
| Tom Hillman | 2007 (UK) 2009 (Gib) | 210.00 | 81.6 | $17,136.00 |
| Bernard Valarino | 2009 (UK) Pending (Gib) | 210.00 | 43.9 | $9,219.00 |
| Total: |  |  | 759.8 | $270,992.40 |
| Total minus 20% Discount |  | $285.33 |  | $216.793.92 |
| **Total Net of 20% Holdback:** |  |  |  | **$173,435.14** |

11

# EXHIBIT B

## EXPENSE SUMMARY OF ATTIAS & LEVY
## FOR THE SECOND INTERIM PERIOD
## OF MAY 1, 2009 THROUGH OCTOBER 31, 2009

| **EXPENSES** | **AMOUNTS** |
|---|---|
| Communication | $1,276.8 |
| Court Fees | $630.00 |
| Professional Fees for Expert Witness | $12,600.00 |
| **Total Expenses Requested:** | **$14,506.80** |