UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**APPLICATION OF SCA CREQUE AS SPECIAL COUNSEL TO THE TRUSTEE FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED <u>FROM MAY 1, 2009 THROUGH OCTOBER 31, 2009</u>**

SCA Creque ("SCAC"), special counsel for Irving H. Picard (the "Trustee"), Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. ("SIPA"), submits this Application for Interim Allowance of Fees and Reimbursement of Expenses (the "Application") for compensation of legal fees in the amount of <u>$106,677.50</u> (of which 20% is to be deferred through the conclusion of the liquidation period) for the period from May 1, 2009 through October 31, 2009 (the "Compensation Period").

In support of the Application, SCAC respectfully submits as follows:

## I. BACKGROUND

1.   On December 15, 2008, Judge Stanton of the United States District Court for

1

the Southern District of New York, upon application filed on the same date by the Securities Investor Protection Corporation ("SIPC"), entered an order (the "Decree Order") calling for the liquidation of the business of the Debtor in accordance with SIPA and by Paragraph II of the Decree Order, the Trustee was appointed as the trustee for the liquidation of the Debtor's business.

2. The Debtor's liquidation proceeding was removed to this Court pursuant to SIPA § 78eee(b)(4), and, to the extent consistent with the provisions of SIPA, is being conducted as though it were a case under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to SIPA § 78fff(b).

3. Beginning on June 5, 2009, SCAC has served as special counsel for the Trustee.

4. On July 14, 2009, this Court entered an order approving the Trustee's motion for authority to retain SCAC as special counsel to the Trustee in matters pertaining to the British Virgin Islands.

5. The Trustee's motion to retain SCAC established a fee arrangement pursuant to which SCAC agreed to a fee reduction in the amount of 10%. SCAC also agreed to an additional holdback of fees in the amount of 20%.

## II. SERVICES RENDERED BY SCAC

6. The legal services performed on behalf of the Trustee during the time period covered by this Application are as follows:

7. Throughout the Compensation Period, SCAC has represented the Trustee in the British Virgin Islands ("BVI"). The BVI is a relevant jurisdiction since several of the customers / brokerage clients of BLMIS were large investment funds domiciled in BVI, e.g., the Kingate and Fairfield funds. A number of these funds are the subject of Court supervised liquidation proceedings in the BVI. We have been instructed to advise on issues related to those

2

proceedings, and on options which the Trustee has in the BVI for recovering monies, as set out in further detail below.

### *Advice related to Kingate funds*

8. We were asked to advise in relation to Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together "**Kingate**"), both funds domiciled in the BVI and the subject of BVI Court supervised liquidations, in particular on whether the BVI Court might be used to assist the Trustee in recovering monies (amounting to approximately US$485 million) currently in the Kingate accounts of the Bank of Bermuda. Those monies are already the subject of proceedings issued by the Trustee in the United States Bankruptcy Court for the Southern District of New York against Kingate and Bank of Bermuda – in those proceedings the Trustee has claimed the monies are returnable as a matter of US insolvency law as recoverable preferences or fraudulent transfers.

9. Our advice included a consideration of the applicable cross-border insolvency provisions, the relevant BVI legal provisions, the relationship between the US and potential BVI proceedings, comments on the chances of success of obtaining a helpful order from the BVI Court in respect of the disputed sums at the Bank of Bermuda and details of the possible Court orders that might be obtained. The advice was also applicable more generally to assistance which the BVI Court might be able to give to the Trustee in relation to other claims.

10. We were also asked to assist Lovells' London office in relation to advice they were giving to the Trustee on the Kingate proceedings in Bermuda.

### *Advice related to Fairfield funds*

11. We were asked to advise in relation to (i) possible claims which Fairfield Sentry Limited ("**Sentry**") might have against Fairfield Sigma Limited ("**Sigma**") under BVI law, and (ii) possible claims which the Trustee may have against Sigma in relation to the same subject matter. The potential claims arose since Sentry was a brokerage client of BLMIS and

3

BLMIS made payments of approximately $1.1 billion to Sentry in the 90 days prior to December 11, 2008, the date of commencement of the initial SEC action against BLMIS.  In addition claims arise from the fact that in the same 90 day period we understand that $450 million was paid out by Sentry to Sigma.

12. We advised on the merits of the above claims, considering both the relevant BVI insolvency provisions relating to voidable transactions (including unfair preferences and undervalue transactions) as well as claims relating to restitution, tracing and "*assistance to foreign office holder*" provisions applicable in the BVI.  Our advice was encapsulated in a detailed memorandum dated October 8, 2009.

13. We were also asked to advise in relation to the position of investors in Sentry who subscribed for shares in late November and early December 2008 but never received their shares. In particular we were asked to consider whether a trust would exist under BVI law over the subscription monies.

14. The above advice has enabled the Trustee to be aware of the BVI ramifications of the ongoing steps which it is taking in the US, Bermuda and other jurisdictions and the potential assistance which the Trustee might obtain from the BVI Court.

### III. COMPENSATION REQUESTED

15. SCAC's Application demonstrates how SCAC has both added value to the Debtor's estate and has advanced the Debtor's SIPC liquidation proceeding.

16. SCAC has been mindful of the need to avoid undue legal fees in this case and has taken all reasonable steps to provide cost-effective representation while rendering services with the highest degree of skill and professionalism.

17. From June 5, 2009 through October 30, 2009, SCAC provided a total of 206.3 hours of legal services to the Trustee in this case. Prior to the 10% discount, the total amount of fees incurred in this time period was $118,530.56 and the total blended hourly rate for professional

4

services was $574.55. After the 10% discount, the total amount of fees incurred is $106,677.50 and the total blended hourly rate is $517.10. SCAC has agreed to a further 20% holdback of fees in the amount of $21,335.50 resulting in the present request for compensation in the amount of $85,342.00.

18.     A breakdown of the total number of hours performed by each SCAC timekeeper is provided on **Exhibit A** annexed hereto.

## IV. GENERAL MATTERS

19.     All of the professional services for which compensation is requested herein were performed by SCAC for and on behalf of the Trustee and not on behalf of any other person or entity.

20.     No agreement or understanding exists between SCAC and any other person for sharing compensation received in connection with this case nor has any other person or entity agreed to provide SCAC with compensation for the legal services described herein.

21.     This Court is authorized by SIPA to award to the attorneys for a SIPA Trustee "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred." SIPA § 78eee(b)(5)(A). SIPA also permits interim allowances to the attorneys for a SIPA Trustee. Id.

22.     Pursuant to § 78eee(b)(5)(E) of SIPA, allowances granted by this Court are to be charged against the general estate as a cost of administration. If the general estate is insufficient to pay such allowances in whole, or in part, SIPC shall advance any necessary funds for such payment. SIPA § 78eee(b)(5)(E). Section 78eee(b)(5)(C) of SIPA provides that SIPC shall file a recommendation with regard to the allowance of fees and reimbursement of expenses requested by this Application, and that this Court shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C). SCAC expects that SIPC's recommendation shall be filed with this Court separately.

5

**WHEREFORE**, SCAC respectfully requests that this Court enter an Order:

a.   Granting this Application;

b.   Allowing payment to SCAC for interim compensation of legal fees, after (a) a reduction of 10% (in the amount of $11,853.06) and (b) a holdback of 20% (in the amount of $21,335.50) pending final approval of SCAC's fees in this case, in the aggregate amount of $85,342.00 for professional services rendered to the Trustee from June 5, 2009 through October 30, 2009; and

c.   Granting SCAC such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: November 23, 2009          SCAC Creque

By:   *s/Seamus Andrew*

Seamus Andrew
P.O. Box 2344
Mandar House, Johnson's Ghut
Road Town
Tortola VG1110
British Virgin Islands
Telephone: +1(284) 494-0075
Fax: +1(284) 494-0854

**EXHIBIT A**

**SUMMARY OF FIRST INTERIM FEE APPLICATION
OF SCA CREQUE FOR SERVICES RENDERED
FOR THE PERIOD MAY 1, 2009 THROUGH SEPTEMBER 30, 2009**

|  | **YEAR ADMITTED** | **HOURLY RATE** | **TOTAL HOURS BILLED** | **TOTAL COMPENSATION** |
|---|---|---|---|---|
| Seamus Andrew | 1991 | $694.44 | 41.2 | $28,611.11 |
| Niki Olympitis | 1980 | $694.44 | 41.8 | $29,027.78 |
| Steven Mash | 1997 | $694.44 | 0.6 | $416.67 |
| Chris Alderton | 2002 | 583.33 | 64.2 | $37,450.00 |
| Alexander Madgwick | 2003 | 583.33 | 25.2 | $14,700.00 |
| Laura Jenkins | Trainee | 250.00 | 33.3 | $8,325.00 |
| Total: |  |  | 206.3 | $118,530.56 |
| Total minus 10% Discount |  | $517.10 |  | $106,677.50 |
| **Total Net of 20% Holdback:** |  |  |  | **$85,342.00** |

7