Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Hearing Date: December 17, 2009
Hearing Time: 10:00 am
Objection Deadline: December 14, 2009

*Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC And Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**SECOND APPLICATION OF IRVING H. PICARD, TRUSTEE, FOR ALLOWANCE OF
INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
MAY 1, 2009 THROUGH SEPTEMBER 30, 2009
AND REQUEST FOR REDUCTION OF HOLDBACK**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard as trustee (the "Trustee") for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor")

and Bernard L. Madoff ("Madoff"), respectfully submits his second application (the

"Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection

Act, 15 U.S.C. 78eee(b)(5),[1] sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to

Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy

Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim

Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (the

"Compensation Order") [Docket No. 126], allowing and awarding interim compensation for

services performed by the Trustee for the period commencing May 1, 2009 through and

including September 30, 2009 (the "Compensation Period") in the amount of $835,605.00 (of

which $710,264.25 is to be paid currently and 15%, or $125,340.75,  is to be deferred through

the conclusion of the Liquidation Proceeding or further order of the Court),[2] plus $37,961.44 of

the previously deferred portion of interim fees awarded by the Court and reimbursement of

actual and necessary expenses incurred during the Compensation Period in the amount of

$921.25; and in support thereof, respectfully represents as follows:

---

[1] The Securities Investor Protection Act ("SIPA") is found at 15 U.S.C. § 78aaa et seq.  For convenience, subsequent references to SIPA will omit "15 U.S.C. ____."

[2] Pursuant to the Compensation Order, the Trustee's fees are subject to a 20% holdback to be paid at the conclusion of the liquidation.  By the Second Application of Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009 and Request for Reduction of Holdback ("B&H Fee Application"), filed concurrently herewith, the Trustee and Baker & Hostetler LLP ("B&H"), with the approval and support of the Securities Investor Protection Corporation ("SIPC"), are requesting that the Court amend the Compensation Order to reduce the holdback of the Trustee and B&H's fees from 20% to 15%, retroactive to the Filing Date (as defined below) and going forward.  See section VI of the B&H Fee Application.

300039247

## I. <u>INTRODUCTION</u>

1.     Contrary to what has mistakenly been reported by the news media and on blogs, <u>no administration costs, including the compensation of the Trustee and his Counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers</u>.  The Trustee has previously made this clarification in this Court (*see* Disinterestedness Hr'g Tr. at 10:14, 11:4, Feb. 4, 2009; First Interim Fee Hr'g Tr. at 7:19, Aug. 6, 2009) and publicly (*see, e.g.,* Trustee's website, www.madofftrustee.com, under News/Press Releases (Feb. 6, 2009)). Trustee compensation is dealt with under section 78eee(b)(5) of SIPA, which  provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ...." The percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is <u>not</u> applicable in a SIPA liquidation.  (*See* §78fff(b) of SIPA.)

2.     As noted at ¶¶ 54-56, *infra*, SIPC plays a specific role regarding trustee compensation in a liquidation proceeding such as this one, where the <u>general estate</u> is insufficient to pay trustee compensation and SIPC is required to advance funds to pay costs of administration.  *See* SIPA §§ 78fff(5) and 78fff-3(b)(2).  The Trustee's requested fees and expenses in this Application only include (i) fees at the Trustee's hourly billable rate to which a public interest discount of 10% has been applied, as described at ¶ 41, *infra*, and (ii) actual, necessary and reasonable expenses incurred within the Compensation Period.  Neither this Application nor any application filed or to be filed by the Trustee has or will include a fee request equal to three (3%) percent (or any other percentage) of the total amount of recoveries made by the Trustee for the benefit of customers of BLMIS.

3

3.      Furthermore, and as noted above and *infra*, the fees and expenses of the
Trustee and of all Counsel to the Trustee (including, but not limited to, B&H, various
international special counsel retained the Trustee as described in ¶ 116 of the Second Interim
Report ("International Counsel"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"),
special counsel to the Trustee, and together with International Counsel and B&H, collectively
referred to herein as "Counsel") are paid from SIPC administrative advances (as are all
administrative costs incurred by the Trustee).  Since these fees and expenses are chargeable to
the general estate and <u>not</u> to customer property, the payment of fees and expenses to the Trustee
and/or to any of his Counsel has absolutely <u>no</u> <u>impact</u> on recoveries that the Trustee has obtained
and will obtain and that will be allocated to the fund of customer property for <u>pro</u> <u>rata</u>
distribution to BLMIS customers whose claims have been allowed by the Trustee.

## II. <u>PRELIMINARY STATEMENT</u>

4.      No single document could comprehensively set forth all of the tasks engaged in
by the Trustee since his appointment on December 15, 2008.  The Trustee has expended
substantial amount of time in connection with his efforts to liquidate the estate, advance the
cause of customer-claimants and initiate litigation and negotiations for the return of customer
property for distribution to customer claimants.  Accordingly, what is set forth below is a broad
overview of the work performed by the Trustee with the support of his Counsel and consultants
(as the Trustee may retain from time to time, including, but not limited to, AlixPartners LLP
("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the
Trustee's forensic consultant and Renaissance Associates, Ltd., an investigative consultant
("Renaissance"), and together, collectively referred to herein as "Consultants").  Additional
information is provided in the Trustee's Second Interim Report (the "Second Interim Report",

4

which is being filed concurrently herewith) which sets forth in greater detail the activities

engaged in by the Trustee and his Counsel during the course of these proceedings. That Report

is incorporated herein by reference. These activities include:

5.      The Trustee, with the assistance of his Counsel and Consultants, has undertaken a

comprehensive investigation of all of the affairs of BLMIS, Bernard L. Madoff and dozens of

related individuals. This investigation remains ongoing in that the Ponzi scheme engaged in by

Mr. Madoff was not only vast in scope but long in duration. The many layers of complex

financial transactions engaged in by Mr. Madoff and his minions require intensive investigation

involving literally hundreds of subpoenas to a variety of individuals and third parties, the

analysis of the documentation received and follow up activities by the Trustee to further

investigate and then enforce the Trustee's rights to the return of customer property. To this end,

the Trustee has engaged not only the services of Counsel but those of several investigative

outside agencies, as well as forensic accountants and legal experts. This task is ongoing and will

be engaged in for a number of years in order to fully understand the scope and depth of the fraud

perpetrated by Mr. Madoff. As noted above, this undertaking will not be at the expense of

recoveries of customer property available for distribution to customers with allowed claims.

6.      The Trustee has received 16,239 timely claims from customers covering a wide

spectrum of the individuals who lost money by virtue of their involvement with BLMIS. These

customer claims include those individuals who had active accounts with BLMIS at the time of its

demise, as well as those customers who suffered over the course of the years at the hands of Mr.

Madoff. In addition, there are the thousands of individuals who indirectly invested in BLMIS

through various feeder funds and other entities who have filed claims against the BLMIS estate

as a result of those investments. From the very beginning of this proceeding, the Trustee and

300039247

B&H, together with the Trustee's Consultants, have been processing each of the customer claims for the purpose of evaluating those claims, allowing those that have a positive net equity balance, disallowing those not entitled to the coverage SIPA and investigating the balance. Given the duration and complexity of the fraud engaged in here, each of these accounts has a history of its own going back many years and involving multiple transfers in many instances, thereby requiring the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination. The Trustee is required by statute to look at all the books and records of the debtor in order to determine and evaluate each customer claim. As of November 19, 2009, the Trustee had determined 3,021 customer claims and committed $554,790.758.86 in SIPC advances. The allowed claims totaled $4,672,040,364.53. The Trustee's efforts will be ongoing and will continue into 2010.

7.      In addition, the Trustee implemented a Hardship Program, which allows customers suffering from the worst financial circumstances to apply to a streamlined program aimed at getting out advances provided by SIPC in a timely manner to those customers who qualify. As of November 19, 2009, the Trustee had received 317 Hardship Program applications and approved 207. Most of the remaining Hardship applications await the reconstruction of their account records.

8.      As a result of the investigative efforts of the Trustee, he has initiated litigation against individuals and feeder funds, most of which are well known to the public through the press and other media. The Trustee is seeking the return of billions of dollars to the estate of BLMIS for the ultimate distribution of those funds to customers with allowed claims who were victims of the fraud perpetrated by Mr. Madoff and others. As with all complex litigation involving sums of this nature, the issues involved are complex, the discovery is wide

300039247

ranging and deep and the litigation itself is hotly contested.  All of this leads to enormous effort

by the Trustee and his Counsel in prosecuting this litigation to a successful conclusion for the

benefit of the victims.  As a result of these efforts, the Trustee has already had a degree of

success in returning millions of dollars to the estate by virtue of settlements that he is engaged in

with a number of parties.  Those efforts are ongoing and will continue throughout the course of

the liquidation proceeding.  It is the Trustee's purpose to recover all of the dollars that are

available to him for the benefit of customers with allowed claims by way of settlement or

litigation.

9.      To date, the Trustee has filed fourteen (14) avoidance actions seeking to

recover over $14.8 billion in funds from various feeders funds, Madoff friends and family

members and other Madoff-related parties.  The Trustee anticipates that he will file extensive

additional litigation based on investigations being conducted by the Trustee's Counsel and

Consultants.  Because of these efforts being made by the Trustee and his Counsel, as of

November 18, 2009, $1,183,779,811.89 has been recovered for the benefit of the customers.

10.      The international arena is one in which BLMIS and its investors played a

significant role.  As is set forth in the Second Interim Report, the Trustee is engaged in a

litigation in Europe, Gibraltar and throughout the Caribbean including Bermuda, the Cayman

Islands and the British Virgin Islands.  He has retained International Counsel in all of these

jurisdictions for the purpose of preserving and protecting customer funds that are being held in

those countries, and for the ultimate purpose of having those funds returned to him for

distribution to the victims of BLMIS and Mr. Madoff.  These international relationships involve

both feeder funds, as well as international banking institutions through a variety of complex

transactions which are being untangled by the Trustee and his staff with the assistance of his

7

Counsel here in the United States and in each of the foreign jurisdictions. Each of these international matters represents millions of dollars in terms of funds that were diverted wrongfully from the estate of BLMIS, and which the Trustee is seeking to return. This requires an extensive legal effort on the part of the Trustee, for which he has committed the resources of his Counsel and Consultants for the purpose of achieving the best outcome for victims.

11.    In support of all of the foregoing efforts, there are daily tasks that must be engaged in to further the investigation, the customer claims process and the litigation. For all of these efforts the Trustee requires the support of Counsel and Consultants. Indeed, the general categories above do not comprehensively describe all of the other work engaged in by the Trustee, his Counsel and Consultants in support of the liquidation proceeding. As noted, the details associated with these endeavors are set forth in greater detail in the Trustee's Second Interim Report to which the reader is referred.

12.    During the Compensation Period, the Trustee, his Counsel and Consultants have met extraordinary challenges in their continuing efforts to pursue assets and benefit the customers of BLMIS. The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought by the Trustee.

### III. BACKGROUND

13.    BLMIS was founded by Madoff in 1960 and engaged in three primary types of business: market making, proprietary trading and investment advisory services. BLMIS was registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and beginning in 2006 as an investment adviser. Pursuant to such registration as a broker-dealer, BLMIS was a member of SIPC.

14.     On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned <u>USA v. Madoff</u> (No. 08-2735). That case number was terminated on March 10, 2009 and a new case <u>USA v. Madoff</u> (No. 09 CR 213) was opened and assigned to District Court Judge Denny Chin (the "Criminal Case").

15.     Also on December 11, 2008 (the "Filing Date" for the SIPA liquidation proceeding),[3] the SEC filed a complaint in the District Court against defendants Madoff and BLMIS, captioned <u>Securities and Exchange Commision v. Madoff, et al.</u> (No. 08 CV 10791) (the "Civil Case"). The complaint alleged that the defendants engaged in fraud through the investment advisor (or "IA") activities of BLMIS.

16.     On December 12, 2008, based on allegations brought by the SEC against Madoff and BLMIS in the Civil Case, the Honorable Louis L. Stanton of the District Court entered an order which appointed Lee S. Richards, Esq. as receiver (the "Receiver") for BLMIS.

17.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC. Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, <u>inter alia</u>, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

---

[3] Section 78*lll*(7) of SIPA states that the filing date for a SIPA liquidation is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except, under subparagraph (B), where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

18.     On that date, the District Court entered the order (the "Protective Decree") [District Court Docket No. 4], to which BLMIS consented, which, in pertinent part:

a.     appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA, therefore, effectively replacing the Receiver as to BLMIS;

b.     appointed B&H as Counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.     removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") pursuant to section 78eee(b)(4) of SIPA.[4]

19.     On February 4, 2009, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee [Docket No. 69], finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

## IV. <u>TRUSTEE'S EXPERIENCE</u>

20.     The Trustee is a member of B&H.  He practices principally in the areas of corporate reorganizations, bankruptcy and insolvency.  He also has been a contributing author to Collier on Bankruptcy, 15th Edition Revised.

21.     The Trustee was admitted to practice before this Court in 1982.  He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.  Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in

---

[4] Pursuant to section 78fff(b) of SIPA, "[t]o the extent consistent with [SIPA], [this] liquidation proceeding [is] be[ing] conducted in accordance with, and as though it [is] being conducted under chapter 1, 3, 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."

300039247

Washington, D.C., for three and a half years during which time his responsibilities included,

among other things, disclosure and enforcement matters and bankruptcy reorganizations. Before

becoming Assistant General Counsel, he spent approximately four years in various legal

positions in the SEC's then Division of Corporate Regulation, where his responsibilities

primarily involved bankruptcy reorganizations. Prior thereto, Mr. Picard spent more than six (6)

years working in the securities industry.

    22.  Mr. Picard has previously served as trustee in the following ten (10) SIPA

liquidations, which have been concluded: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No

TP 84¬70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors

Center Inc. (Bankr. E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-

1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic

Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr.

S.D.N.Y. No. 96/8396A (REG)); Klein Maus & Shire, Inc.. (Bankr. S.D.N.Y., No. 00/8193A

(AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park

South Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)).  He also has served as Counsel

to SIPC as trustee in two (2) liquidation proceedings.

### V. SUMMARY OF SERVICES

    23.  The services rendered by the Trustee during the five (5) month

Compensation Period (1,198.0 hours) are described below.  The Trustee does not wish to burden

the Court with an overly detailed recitation of each and every matter with respect to which it has

rendered services during the Compensation Period.  Accordingly, this Application is intended to

serve as a summary description of the more significant services rendered by the Trustee, and to

highlight the benefits which have been conferred upon SIPC, customers and creditors of the

Debtor's estate as a result of his efforts. The following section provides an overview of services rendered by the Trustee during the Compensation Period by the task codes in use during the Compensation Period. [5]

24.    As mentioned above, the Court is also respectfully referred to the Trustee's Second Interim Report for further detail regarding the administration of the estate, the investigation into the Debtor, Madoff and related parties, and other progress made by the Trustee and B&H during and subsequent to the Compensation Period.

A.    **Case Administration – Task Code 01** (176.7 hours)

25.    This category is for time expended by the Trustee relating to the wind-down of the Debtor's business and other administrative matters. Substantial time was expended by the Trustee in this category, as the Trustee was, among other things, able to close the sale of the Debtor's on-going market making operations and conclude the Trustee's investigation at Debtor's office at 885 Third Avenue in Manhattan. Time in this category relates to various administrative matters, including:

- Discussions with B&H regarding matters relating to Surge Trading Inc. (f/k/a Castor Pollux Inc.) and closing of the sale of the BLMIS market making business.

- Review of mail forwarded by AlixPartners received at the BLMIS offices or at the Claims Processing Center and prepare appropriate response or assign for follow-up.

- Discussions with B&H regarding negotiations with landlords of BLMIS properties, including terminations of lease at Bulova building and renegotiating lease at 885 Third Avenue.

---

[5] The Trustee has seventeen (17) task codes for specific categories of work to permit a more detailed analysis of the fees incurred. Task code 15 (Travel Time) is not described herein as no time was billed to that task code during the Compensation Period.

300039247

- Maintaining brokerage accounts, opening of money management account and purchase of Treasury bills.

- Obtaining SIPC administrative cash advances, communications with accountants concerning payment of bills rendered to Trustee, reviewing and signing monthly SIPC-17 cash receipts and disbursements reports, reviewing monthly projected administrative budgets, and communications with the SIPC staff.

- Storage of artwork previously located at BLMIS offices and purchase of insurance policy to cover such artwork.

- Preparing responses to and revising proposed responses to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the U.S. Department of Labor, Internal Revenue Service, New York State Department of Tax & Finance, New York State Bureau of Workers Compensation and New York State Department of Labor Unemployment Division.

- Attending to various employee and benefits related issues, including correspondence with administrators of payroll, 401(k), healthcare and other benefit plans, termination of remaining BLMIS employees, and wind-down of BLMIS sponsored employee benefit plans (including healthcare and 401(k) plans).

- Reviewing monthly invoices of AlixPartners, FTI, Renaissance, and International Counsel and communicating with SIPC staff.

- Communications with B&H attorneys and Consultants regarding vacating the BLMIS offices, the return of leased equipment located at BLMIS offices and the negotiating and resolution of outstanding estate obligations.

300039247

B.    **Claims Review and Related Matters – Task Code 02** (385.4 hours)

26.    This category is for time expended by the Trustee with respect to customer claims.  The Trustee dedicated a substantial amount of time to this task code during the Compensation Period, as significant headway has been made in reviewing and determining customer claims during the Period.  The mandatory six-month statutory bar date expired on July 2, 2009.  As of September 30, 2009, the Trustee had received 16,239 timely claims and 66 untimely or late-filed claims for customer protection under SIPA and the Trustee had allowed 1,347 customers claims, for a total of $4,030,806,115.49 in allowed claims.  As of September 30, 2009, approximately $465 million in SIPC advances had been paid to, or committed to be paid to claimants and the BLMIS estate; the amount by which the allowed claims exceeded the statutory limits of SIPC protection (or "over-the-limit claims") was approximately $3.57 billion.  The receipt (of late-filed claims) and review of customer claims is on a continuing basis.

27.    Included in this category of services by the Trustee were the following:

- Implementation of the Trustee's Hardship Program; creation of and review of Hardship Applications; regular communications with B&H attorneys, SIPC staff and AlixPartners regarding the review and determination of Hardship applicants.

- Ongoing review of submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Communications with SIPC staff and B&H regarding revisions to the form of determination letters and assignment and release forms to be sent to all customers.

- Review and revise determinations; advise customers and their representatives of conclusions reached regarding allowance or denial of their respective claims and review proposed customer assignments and releases to the extent of claims to be satisfied.

14

- Regular communications with AlixPartners, the SIPC staff and B&H attorneys regarding the customer claims review process, the customer claims database, reconciliation of IA accounts and other matters of interest in determining claims.

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, status of claims review and other matters of concern to customers and when necessary, communicate with B&H claims team and/or refer for follow-up and response.

- Review, revise and approve the mailing of two (2) reminder notices of statutory bar date for filing claims sent in May and June 2009 to known past and present customers of BLMIS.

C.    **Trustee Investigation – Task Code 03**  (124.4 hours)

28.    This category relates to time spent with respect to the Trustee's investigation into BLMIS, Madoff and various assets, including meetings, correspondence and cooperative efforts with B&H, SIPC, AlixPartners, FTI, International Counsel, Windels Marx, the Joint Provisional Liquidators ("JPLs") investigating the Madoff U.K. entity, Madoff Securities International Ltd. ("MSIL"), and various other government agencies involved with the on-going investigation.  The Trustee expended a substantial amount of time in this task code during the Compensation Period.  As further described below in ¶ 32, as a result of these efforts, to date the Trustee has filed a total of fourteen (14) avoidance actions against feeder funds, Madoff family members, Madoff friends and other Madoff-related insiders for the return of customer property.

29.    Included in this category of services by the Trustee were the following:

- Communications with B&H attorneys, SIPC, Windels Marx, JPLs, AlixPartners and FTI regarding the IA accounts and records of the transactions, business investments and ventures between the potential insiders and BLMIS, Madoff and Madoff family members.

- Review of account information and statements of BLMIS IA customers in connection with various investigatory matters.

- Overseeing B&H's issuance of hundreds of inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation.

- Review of certain discovery received from responses to issued subpoenas and from other third parties.

- Discussions and conferences regarding investigation and litigation strategy, both internally and with SIPC, Windels Marx, JPLs, International Counsel and various government entities.

D.    **Banks and Feeder Funds – Task Code 04**  (3.1 hours)

30.    The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor banks and potential feeder funds, and bring actions against such banks and funds for the recovery of estate assets where possible.  This category relates to those efforts during the Compensation Period.

E.    **Asset Search, Recovery and Sale – Task Code 06** (43.6 hours)

31.    This category relates to time spent with respect to discovery of, recovery of and liquidation of various assets for the benefit of the estate.  Included in this category of services are the following:

16

- Discussions with B&H and Windels Marx concerning settlement possibilities and discussions regarding BLMIS'/Madoff's interest in a shared aircraft.

- Discussions with B&H regarding the closing of the sale of the BLMIS market maker to Surge Trading Inc. (f/k/a Castor Pollux Inc.), and potential recoveries from the negotiated earn-out fees and various related matters.

- Discussions with JPLs, Windels Marx and United States Attorney's Office for the Southern District of New York ("USAO") regarding Madoff personal assets and status of efforts to sell.

- Review claims and affidavits for filing in connection with the settlement of various class actions involving securities owned by BLMIS in its market making and trading capacities; and conferences with AlixPartners regarding same.

- Discussions with B&H concerning sale of certain loan participations owned by BLMIS and follow up on other loan participation matters.

- Discussions with broker concerning status of securities, including Special Purpose Acquisition Companies, remaining in Trustee's account and sale possibilities.

    F.    **Avoidance Actions – Task Code 07** (68.3 hours)

         32.    Prior to the Compensation Period, the Trustee filed avoidance actions against Vizcaya Partners Limited for the return of $150 million and Kingate Euro Fund Ltd. and Kingate Global Fund Ltd. for the return of $257 million.  During the Compensation Period the Trustee was involved in discussions with his Counsel that resulted in the filing of the following eleven (11) additional avoidance actions against feeder funds, Madoff friends and family members and other Madoff-insiders for the return of customer property:

17

- Stanley Chais, Pamela Chais (the "Chais Defendants") and a number of related entities (collectively, the "Chais-related entities") seeking return of more then $1.1 billion;

- Jeffry M. and Barbara Picower, individually and as trustee for various foundations (collectively, the "Picower-related entities") seeking return of more then $7.2 billion;

- Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation and J. Ezra Merkin (collectively, the "Merkin Funds") seeking return of more then $557 million;

- Ruth Madoff seeking the return of more than $44 million;

- Harley International (Cayman) Limited ("Harley"), seeking return of approximately $1.1 billion;

- Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P. (collectively, "the Fairfield Funds"), seeking return of approximately $3.5 billion;

- Cohmad Securities Corporation ("Cohmad"), the principals of Cohmad, various Cohmad employees and their family members (the "Cohmad Defendants") seeking return of over $132 million;

- Herald Fund SPC ("Herald") seeking return of $578 million;

- Alpha Prime Fund Limited ("Alpha Prime") seeking return of $86 million;

- Thybo Asset Management Limited; Thybo Global Fund Limited; Thybo Return Fund Limited; and Thybo Stable Fund Ltd. (collectively, the "Thybo Funds"), seeking return of approximately $63 million; and

- Primeo Fund ("Primeo") seeking return of $145 million.

18

For further discussion of these avoidance actions, please see section IX.E of the Second Interim Report.

33.    The time spent in this category relates to various communications, investigation and litigation strategy sessions which the Trustee engaged in with B&H, SIPC, AlixPartners and FTI; communications with Counsel for the counter-parties to the various avoidance actions; negotiation of potential settlement agreements; and review of documents related to the various avoidance actions.

G.    **Bankruptcy Court Litigation and Related Matters – Task Code 08**
(125.3 hours)

34.    This category relates to time spent with respect to reviewing and the filing of various motions and pleadings and the initiation of as well as defense against certain adversary proceedings in the Bankruptcy Court.  Included in this category of services were the following:

- Defense of adversary proceedings, including a class action complaint and a separate complaint brought on behalf of certain customers against the Trustee relating to "customer" status and definition of "net equity" under SIPA.

- Involvement with preparation and revision of the Trustee's memorandum regarding net equity issue; attendance at Court and discussions with Counsel regarding the briefing schedule.

- Regular communications with the SIPC staff, B&H attorneys and Counsel for various customers who have filed actions regarding customer claims, the "net equity" definition and other issues.

19

- Review of and regular communications with the SIPC staff, B&H attorneys and Counsel for various customers who have filed objections to the Trustee's determination of their claim.  As of September 30, seventy-nine (79) objections had been filed with the Bankruptcy Court.[6]

- Participate in negotiation of a consent order substantively consolidating the Madoff chapter 7 estate with the SIPA liquidation.

- Obtaining, through B&H, entry of applications to retain International Counsel in the British Virgin Islands and Switzerland to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

- Hearing on first fee applications of B&H, Trustee and International Counsel.

- Preparation for the filing of the eleven (11) avoidance actions against feeder funds, Madoff family members, Madoff friends and other Madoff-related insiders, as discussed above in ¶ 32; the review of all complaints, motions, pleadings, proposed orders and other documents to be submitted to the Bankruptcy Court in connection with all on-going avoidance actions.

- Retention of Windels Marx as special Counsel to the Trustee to coordinate with B&H attorneys in conducting investigations of certain insiders and BLMIS related entities and corporate assets.

- Approval of termination and liquidation of certain BLMIS-sponsored benefit plans.

- Assumption and rejection of certain BLMIS leases and executory contracts.

- Recognition of the Cross Border Protocol with the JPLs regarding their investigation into

---

[6] As of November 19, 2009, a total of 388 objections to the Trustee's determination of claims have been filed in the Bankruptcy Court by customers of BLMIS.

300039247

MSIL and the sharing of information between the JPLs and the Trustee.

H.        **Non-Bankruptcy Court Litigation – Task Code 09** (33.6 hours)

35.        The Trustee has formed teams of B&H attorneys to monitor all third-party actions, domestic and international, that may be related to BLMIS or Madoff.  This category relates to time the Trustee spent engaging in strategy with the teams, reviewing information related to such matters, and correspondence with the teams regarding their on-going investigations and findings and the status of such third party litigations, as well as discussions with various state attorney generals regarding certain of the third-party litigations.  Time in this category also relates to matters in the District Court in the Civil Case and Criminal Case, as well as the civil and criminal cases of Frank DiPascali and David Friehling (as further described in Section II.D the Second Interim Report), and various appeals of avoidance actions filed by the Trustee and adversary proceedings against the Trustee.

I.        **Court Appearance – Task Code 10** (8.0 hours)

36.        This category relates to time spent by the Trustee making court appearances for the events described in sections G and H  above.

J.        **Internal Office Meetings with Staff and Out of Office Meetings–**
**Task Codes 11 and 12** (51.3 hours)

37.        This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties such as the SEC, USAO, Financial Industry Regulatory Authority ("FINRA"), Federal Bureau of Investigation ("FBI") and other regulators and government officials (as further described in Section K *infra*).

21

K.      **USAO and SEC/FINRA - Task Codes 13 and 14**  (39.2 hours)

38.      This category relates to time spent with respect to the Trustee's communications with the various government agencies involved in the investigation into BLMIS, Madoff and various assets.  This includes meetings, correspondence and cooperative efforts with the USAO, the SEC and FINRA.   Included in this category of services by the Trustee were the following:

- Coordinating efforts with the SEC, USAO, FINRA, FBI and many other local, federal and international officials involved in this investigation.

- Obtaining copies of records seized by the FBI and SEC, and other information from USAO, FINRA and other securities regulators.

- Communication with the USAO regarding B&H's issuance of hundreds of inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation.

- Discussions and conferences regarding litigation strategy with FINRA, USAO and SEC.

L.      **Second Interim Report/ Fee Application and Related Matters –
         Task Code 05 and 16** (46.7 hours)

39.      In addition to preparation of the Trustee's first fee application and this Application, this section relates to the time spent by the Trustee in reviewing his and B&H's monthly statements prior to submission to SIPC to correct any errors in time entries and to write off certain time and expenses as agreed to by the Trustee for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly fee statement, as well as to time spent by the Trustee in preparing his interim Second Interim Reports which are required every 150-180 days and summarize all activities conducted by the Trustee and all his Counsel within that reporting period.

22

M.    **Press Inquiries and Responses – Task Code 17** (92.4 hours)

40.    This section relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of funds.  During the Compensation Period, the Trustee held a press conference together with SIPC on May 14, 2009. In addition, the Trustee and his Counsel were interviewed in late August and early September 2009 by 60 Minutes regarding the case.  The segment aired on Sunday, September 27, 2009.

## VI. COMPENSATION REQUESTED[7]

41.    The Trustee expended and billed for 1,198.0 hours at an hourly rate of $775.00, totaling $928,450.00 in fees.  Owing to the quasi-public nature of the Trustee's appointment and services which he performed, prior to being appointed, the Trustee agreed with SIPC to discount his normal hourly rate by 10%.  This public interest discount has resulted in a voluntary reduction during the Compensation Period of $92,845.00.  Thus, the Trustee's discounted request for fees in this Application is $835,605.00 (at an hourly rate of $697.50), of which 15%, or $125,340.75 is being deferred until the conclusion of this liquidation proceeding, or further order of the Court.  In addition to the discount the Trustee has, in consideration of judicious billing practice, either written off or not billed 228.1 hours devoted to this matter during the Compensation Period, thus reducing his discounted fees by $159,099.75 (or $176,777.50 before the  discount).

---

[7]  By order entered on August 6, 2009 [Docket No. 363], in respect of his first interim fee application, the Trustee was awarded $759,228.75 in fees and $45.00 in expenses for the period December 15, 2008 through April 30, 2009. In accordance with the Compensation Order, the Trustee received 80% of his approved fees ($607,383.00) and the payment of the remaining 20% ($151,845.75) was deferred until the conclusion of the SIPA Liquidation Proceeding or further order of the Court.

300039247

42.     As discussed in ¶ 1 *supra*, the commission schedule for trustee compensation under §326(a) of the Bankruptcy Code does not apply in a SIPA liquidation proceeding.  *See* SIPA § 78fff(b).  Thus the Trustee's requested fees in this Application are based <u>solely</u> on the Trustee's discounted hourly billable rate, as described above, plus actual and necessary expenses.  They do <u>not</u> and will <u>not</u> include a fee equal to three (3%) percent (or any other percentage) of the total amount of recoveries made for the benefit of customers of BLMIS.

43.     The Trustee submits that his requested discounted fees are reasonable based on the customary compensation charged by practitioners with substantial experience in SIPA matters and comparably skilled bankruptcy practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

44.     Prior to filing this Application, the Trustee provided to SIPC, in accordance with the Compensation Order, (i) monthly fee statements setting forth the Trustee's fees for services rendered and expenses incurred during the Compensation Period beginning May 1, 2009 through September 30, 2009 and (ii) a draft of this Application.

45.     Pursuant to the Compensation Order, on June 22, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case in May 2009 (the "May 2009 Fee Statement").  The May 2009 Fee Statement reflected fees of $161,122.50 and expenses of $16.00.  Accordingly, the Trustee received funds advanced by SIPC in the amount of $128,898.00 for services rendered after subtracting the Court-ordered 20% holdback[8] and $16.00 for expenses incurred in May 2009.

---

[8] As described above in fn. 2, *supra*, by the B&H Fee Application, the Trustee and B&H, with the approval and support of SIPC, are requesting an amended to the Compensation Order reducing in the amount of holdback from 20% to 15%, retroactive to the Filing Date and going forward.  Pursuant to the Compensation Order, the Trustee was paid 80% of his fees for May through September 2009.  Upon entry of the proposed order amending the Compensation Order and reducing the holdback to 15%, the Trustee will receive an additional 5% of total fees incurred since the Filing Date, and will receive 85% of fees requested going forward.

300039247

46.     Pursuant to the Compensation Order, on July 21, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case in June 2009 (the "June 2009 Fee Statement").  The June 2009 Fee Statement reflected fees of $185,883.75 and expenses of $838.55.  Accordingly, the Trustee received funds advanced by SIPC in the amount of $148,707.00 for services rendered after subtracting the Court-ordered 20% holdback and $838.55 for expenses incurred in June 2009.

47.     Pursuant to the Compensation Order, on August 20, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case in July 2009 (the "July 2009 Fee Statement").  The July 2009 Fee Statement reflected fees of $174,793.50 and expenses of $12.00.  Accordingly, the Trustee received funds advanced by SIPC in the amount of $139,834.80 for services rendered after subtracting the Court-ordered 20% holdback and $12.00 for expenses incurred in July 2009.

48.     Pursuant to the Compensation Order, on September 22, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case in August 2009 (the "August 2009 Fee Statement").  The August 2009 Fee Statement reflected fees of $152,194.50 and expenses of $13.50.  Accordingly, the Trustee received funds advanced by SIPC in the amount of $121,755.60 for services rendered after subtracting the Court-ordered 20% holdback and $13.50 for expenses incurred during August 2009.

49.     Pursuant to the Compensation Order, on October 16, 2009, the Trustee provided to SIPC his statement of fees and expenses incurred in connection with this case in September 2009 (the "September 2009 Fee Statement").  The September 2009 Fee Statement reflected fees of $161,610.75 and expenses of $41.20.  Accordingly, the Trustee received funds

25

300039247

advanced by SIPC in the amount of $129,288.60 for services rendered after subtracting the

Court-ordered 20% holdback and $41.20 for expenses incurred during September 2009.

50.     Exhibit A annexed hereto is a summary by task code of total hours

expended and total fees for services rendered by the Trustee during the Compensation Period.

51.     Exhibit B annexed hereto provides a schedule of the Trustee's total

expenses incurred during the Compensation Period for which reimbursement is requested.  The

requested expenses are customarily charged to and paid by B&H's bankruptcy and non-

bankruptcy clients.

52.     In seeking payment of interim compensation of (a) $835,605.00, of which

$710,264.25 is to be paid currently and 15%, or $125,340.75, is to be deferred through the

conclusion of the Liquidation Proceeding or further order of the Court, (b) $37,961.44 of the

previously deferred portion of interim fees awarded by the Court and (c) disbursements of

$921.25, the Trustee will pay over to B&H the full amount of any interim compensation and

disbursements awarded to him.  In accordance with section 504 of the Bankruptcy Code and Fed.

R. Bankr. P. 2016(a), the Trustee represents that no other agreement or understanding exists or

shall be made between him and any other person respecting the sharing of compensation to be

received for the services he has rendered and will render in connection with this SIPA

proceeding.  Furthermore, the Trustee has not entered (and will not enter) into any agreement or

understanding prohibited by 18 U.S.C. §155.

53.     To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period, but were not classified or processed

prior to the preparation of this Application, the Trustee reserves the right to request additional

compensation for such services and reimbursement of such expenses in a future application.

300039247

## VII. TRUSTEE'S REQUEST FOR INTERIM
## COMPENSATION SHOULD BE GRANTED

54.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon

appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for

services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ...".

Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with

applications for compensation and the consideration the Court should give to SIPC's

recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by
> SIPC, the court shall award the amounts recommended by SIPC.  In determining
> the amount of allowances in all other cases, the court shall give due consideration
> to the nature, extent, and value of the services rendered, and shall place
> considerable reliance on the recommendations of SIPC.

55.    To the extent the general estate is insufficient to pay such allowances as an

expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds

necessary to pay the compensation of the Trustee (*see* SIPA § 78fff-3(b)(2)).

56.    Based on the allocation process set forth in SIPA, at this time the Trustee

believes that there is no reasonable expectation that the general estate will be sufficient to make

any distribution to general creditors or pay any administrative expenses.  That is, the Trustee

believes that any assets allocated to the BLMIS general estate will be exhausted prior to his

being able to reimburse SIPC fully for its administrative advances.  The Trustee has been advised

by SIPC that it concurs with this belief of the Trustee.  Accordingly, any fees and expenses

allowed by this Court will be paid from advances by SIPC without any reasonable expectation by

SIPC of recoupment thereof.

57.     Therefore, with respect to this Application, the Truste requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "award [him] the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). The Trustee expects that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for December 17, 2009.

58.     The Trustee submits that the request for interim allowance of compensation made through this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

28

300039247

## VIII. <u>CONCLUSION</u>

The Trustee respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding (a) $<u>835,605.00</u> (of which $710,264.25 is to be paid currently and 15%, or $125,340.75 is to be deferred through the conclusion of the Liquidation Proceeding or further order of the Court) as an interim payment for professional services rendered by the Trustee during the Compensation Period, (b) $<u>37,961.44</u> of the previously deferred portion of interim fees awarded by the Court as an interim payment for professional services rendered by the Trustee and (c) $<u>921.95</u> as reimbursement of the actual and necessary costs and expenses incurred by the Trustee in connection with the rendition of such services; and (ii) amending the Compensation Order and allowing the reduction in Holdback from 20% to 15% of fees, as described in the B&H Fee Application; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York           Respectfully submitted,
      November 23, 2009

                                              **BAKER & HOSTETLER LLP**

                                              By:/s/  *Irving H. Picard*
                                                     Irving H. Picard, Trustee
                                                     c/o Baker & Hostetler LLP
                                                     45 Rockefeller Plaza
                                                   New York, NY  10111
                                                   Telephone: (212) 589-4200
                                                   Facsimile: (212) 589-4201

                                                   *Trustee for the Substantively Consolidated*
                                                 *SIPA Liquidation of Bernard L. Madoff*
                                                 *Investment Securities LLC And*
                                                 *Bernard L. Madoff*

300039247