Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
And Bernard L. Madoff*

Hearing Date: December 17, 2009
Hearing Time: 10:00 am
Objection Deadline: December 14, 2009

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-1789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**SECOND APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE OF
INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
MAY 1, 2009 THROUGH SEPTEMBER 30, 2009
AND REQUEST FOR REDUCTION OF HOLDBACK**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H") as counsel to Irving H. Picard as trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") and Bernard L. Madoff ("Madoff"), respectfully submits its second application (the "Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act, 15 U.S.C. 78eee(b)(5),[1] sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (the "Compensation Order") [Docket No. 126], allowing and awarding interim compensation for services performed by B&H for the period commencing May 1, 2009 through and including September 30, 2009 (the "Compensation Period") in the amount of $21,279,101.85 (of which $18,087,236.57 is to be paid currently and 15%, or $3,191,865.28, is to be deferred through the conclusion of the Liquidation Proceeding or further order of the Court),[2] plus $1,797,074.52 of the previously deferred portion of interim fees awarded by the Court and reimbursement of B&H's actual and necessary expenses incurred during the Compensation Period in the amount of $280,681.62; and in support thereof, respectfully represents as follows:

---

[1] The Securities Investor Protection Act ("SIPA") is found at 15 U.S.C. § 78aaa et seq. For convenience, subsequent references to SIPA will omit "15 U.S.C. ____."

[2] As further described in ¶¶ 90-95 infra, by this Application, B&H and the Trustee are requesting a reduction in the amount of holdback from 20% to 15% of fees.

2

# I. PRELIMINARY STATEMENT

1.      No single document could comprehensively set forth all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Literally thousands of hours have been expended by B&H in support of the Trustee's efforts to liquidate the estate, advance the cause of all of the customer claimants and initiate litigation and negotiations for the return of customer property for distribution by the Trustee to customer claimants.  Accordingly, what is set forth below is a broad overview of the work performed by B&H in assisting the Trustee.  Additional information is provided in the Trustee's Second Interim Report (the "Second Interim Report", which is being filed concurrently herewith) which sets forth in greater detail the activities engaged in by the Trustee and his counsel during the course of these proceedings.  That Report is incorporated herein.  These activities include:

2.      The Trustee, with the assistance of his counsel (including, but not limited to, B&H, various international special counsel retained the Trustee as described in ¶ 116 of the Second Interim Report ("International Counsel"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), special counsel to the Trustee, and together with International Counsel and B&H, collectively referred to herein as "Counsel"), has undertaken a comprehensive investigation of all of the affairs of BLMIS, Bernard L. Madoff and dozens of related individuals.  This investigation remains ongoing in that the Ponzi scheme engaged in by Mr. Madoff was not only vast in scope but long in duration.   The many layers of complex financial transactions engaged in by Mr. Madoff and his minions require intensive investigation involving literally hundreds of subpoenas to a variety of individuals and third parties, the analysis of the documentation received and follow up activities by the Trustee to further investigate and then enforce the Trustee's rights to the return of customer property.  To this end, the Trustee has

3

engaged not only the services of Counsel but those of several investigative outside agencies, as well as forensic accountants and legal experts (as the Trustee may retain from time to time, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the Trustee's forensic consultant and Renaissance Associates, Ltd., an investigative consultant ("Renaissance"), and together, collectively referred to herein as "Consultants").  This task is ongoing and will be engaged in for a number of years in order to fully understand the scope and depth of the fraud perpetrated by Mr. Madoff.  This undertaking will not be at the expense of recoveries of customer property available for distribution to customers with allowed claims

    3.  The Trustee has received 16,239 timely claims from customers covering a wide spectrum of the individuals who lost money by virtue of their involvement with BLMIS. These customer claims include those individuals who had active accounts with BLMIS at the time of its demise, as well as those customers who suffered over the course of the years at the hands of Mr. Madoff.  In addition, there are the thousands of individuals who indirectly invested in BLMIS through various feeder funds and other entities who have filed claims against the BLMIS estate as a result of those investments.  From the very beginning of this proceeding, the Trustee and B&H, together with the Trustee's Consultants, have been processing each of the customer claims for the purpose of evaluating those claims, allowing those that have a positive net equity balance, disallowing those not entitled to the coverage SIPA and investigating the balance.  Given the duration and complexity of the fraud engaged in here, each of these accounts has a history of its own going back many years and involving multiple transfers in many instances, thereby requiring the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination.  The Trustee is required by statute to look at all the books and records

4

of the debtor in order to determine and evaluate each customer claim.  As of November 19, 2009, the Trustee had determined 3,021 customer claims and committed $554,790.758.86 in advances from the Securities Investor Protection Corporation ("SIPC").  The allowed claims totaled $4,672,040,364.53.  The Trustee's efforts will be ongoing and will continue into 2010.

4.      In addition, the Trustee and B&H implemented a Hardship Program, which allows customers suffering from the worst financial circumstances to apply to a streamlined program aimed at getting out advances provided by SIPC in a timely manner to those customers who qualify.  As of November 19, 2009, the Trustee had received 317 Hardship Program applications and approved 207.  Most of the remaining Hardship applications await the reconstruction of their account records.

5.      As a result of the investigative efforts of the Trustee, he has initiated litigation against individuals and feeder funds, most of which are well known to the public through the press and other media.  The Trustee is seeking the return of billions of dollars to the estate of BLMIS for the ultimate distribution of those funds to customers with allowed claims who were victims of the fraud perpetrated by Mr. Madoff and others.  As with all complex litigation involving sums of this nature, the issues involved are complex, the discovery is wide ranging and deep and the litigation itself is hotly contested.  All of this leads to enormous effort by the Trustee and his Counsel in prosecuting this litigation to a successful conclusion for the benefit of the victims.  As a result of these efforts, the Trustee has already had a degree of success in returning millions of dollars to the estate by virtue of settlements that he is engaged in with a number of parties.  Those efforts are ongoing and will continue throughout the course of the liquidation proceeding.  It is the Trustee's purpose to recover all of the dollars that are

5

available to him for the benefit of customers with allowed claims by way of settlement or litigation.

6. To date, the Trustee has filed fourteen (14) avoidance actions seeking to recover over $14.8 billion in funds from various feeders funds, Madoff friends and family members and other Madoff-related parties. The Trustee anticipates that he will file extensive additional litigation based on investigations being conducted by the Trustee's Counsel and Consultants. Because of these efforts being made by the Trustee and his Counsel, as of November 18, 2009, $1,183,779,811.89 has been recovered for the benefit of the customers.

7. The international arena is one in which BLMIS and its investors played a significant role. As is set forth in the Second Interim Report, the Trustee is engaged in a litigation in Europe, Gibraltar and throughout the Caribbean including Bermuda, the Cayman Islands and the British Virgin Islands. He has retained counsel in all of these jurisdictions for the purpose of preserving and protecting customer funds that are being held in those countries, and for the ultimate purpose of having those funds returned to him for distribution to the victims of BLMIS and Mr. Madoff. These international relationships involve both feeder funds, as well as international banking institutions through a variety of complex transactions which are being untangled by the Trustee and his staff with the assistance of his counsel here in the United States and in each of the foreign jurisdictions. Each of these international matters represents millions of dollars in terms of funds that were diverted wrongfully from the estate of BLMIS, and which the Trustee is seeking to return. This requires an extensive legal effort on the part of the Trustee and he has committed the resources of his Counsel and Consultants for the purpose of achieving the best outcome for victims.

300039123

8. In support of all of the foregoing efforts, there are daily tasks that must be engaged in to further the investigation, the customer claims process and the litigation. For all of these efforts the Trustee requires the support of Counsel and Consultants. Indeed, the general categories above do not comprehensively describe all of the other work engaged in by the Trustee, his Counsel and Consultants in support of the liquidation proceeding. As noted, the details associated with these endeavors are set forth in greater detail in the Trustee's Second Interim Report to which the reader is referred.

9. During the Compensation Period, the Trustee, his Counsel and Consultants have met extraordinary challenges in their continuing efforts to pursue assets and benefit the customers of BLMIS. The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought by B&H.

## II. BACKGROUND

10. BLMIS was founded by Madoff in 1960 and engaged in three primary types of business: market making, proprietary trading and investment advisory services. BLMIS was registered with the SEC as a broker-dealer and beginning in 2006 as an investment adviser. Pursuant to such registration as a broker-dealer, BLMIS was a member of SIPC.

11. On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned USA v. Madoff (No. 08-2735). That case number was terminated on March 10, 2009, and a new case USA v. Madoff (No. 09 CR 213) was opened and assigned to District Court Judge Denny Chin (the "Criminal Case").

7

12.     Also on December 11, 2008 (the "Filing Date" for the SIPA liquidation proceeding),[3] the SEC filed a complaint in the District Court against defendants Madoff and BLMIS, captioned <u>Securities and Exchange Commision v. Madoff, et al.</u> (No. 08 CV 10791) (the "Civil Case").  The complaint alleged that the defendants engaged in fraud through the investment advisor (or "IA") activities of BLMIS.

13.     On December 12, 2008, based on allegations brought by the SEC against Madoff and BLMIS in the Civil Case, the Honorable Louis L. Stanton of the District Court entered an order which appointed Lee S. Richards, Esq., as receiver (the "Receiver") for BLMIS.

14.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, <u>inter alia</u>, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

15.     On that date, the District Court entered the order (the "Protective Decree") [District Court Docket No. 4], to which BLMIS consented, which, in pertinent part:

a.     appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA, therefore, effectively replacing the Receiver as to BLMIS;

b.     appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

---

[3] Section 78*lll*(7) of SIPA states that the filing date for a SIPA liquidation is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except, under subparagraph (B), where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced."  Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300039123

c.      removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") pursuant to section 78eee(b)(4) of SIPA.[4]

16.      On February 4, 2009, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee [Docket No. 69], finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

### III. COUNSEL'S EXPERIENCE

17.      B&H has been engaged in the general practice of law since 1916, and has substantial expertise in such areas as white collar investigation and defense, corporate finance and securities, examinerships, insolvency and creditors rights and commercial and securities litigation.

18.      The Trustee, a member of B&H, and an attorney admitted to practice before this Court, has supervised a significant portion of the legal services for which compensation is sought herein.  He has an extensive background in the fields of bankruptcy and securities, including SIPA liquidations, all as set forth more fully in the Trustee's Second Interim Fee Application ("Trustee Fee Application"), which is being filed contemporaneously herewith.

### IV. SUMMARY OF SERVICES

19.      The services rendered by B&H during the five (5) month Compensation Period are described below.  In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in,

---

[4] Pursuant to section 78fff(b) of SIPA, "[t]o the extent consistent with [SIPA], [this] liquidation proceeding [is] be[ing] conducted in accordance with, and as though it [is] being conducted under chapter 1, 3, 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."

300039123

among others, bankruptcy, securities, tax, corporate law and litigation. B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to maximize efficiency and avoid any duplication of effort.

20. B&H does not wish to burden the Court with an overly detailed recitation of each and every matter with respect to which it has rendered services during the Compensation Period. Accordingly, this Application is intended to serve as a summary description of the significant services rendered by B&H, and to highlight the benefits which have been conferred upon SIPC, customers and creditors of the Debtor's estate as a result of B&H's efforts. The following section provides an overview of the services rendered by B&H during the Compensation Period by the matter numbers and task codes in use during the Compensation Period.[5]

21. The Court is also respectfully referred to the Trustee's Second Interim Report being filed concurrently herewith for further detail regarding the administration of the estate, the investigation into the Debtor, Madoff and related parties, and other progress made by the Trustee and B&H during and subsequent to the Compensation Period (but as a result of investigative efforts during the Compensation Period).

---

[5] Beginning on January 1, 2009, B&H implemented five (5) task codes for specific categories of work to permit a more detailed analysis of the fees incurred. As the case has evolved, B&H has added additional task codes and opened separate matter numbers to ensure that work on a specific issue or matter is billed to the same task code or matter.

**MATTER 01 – COUNSEL TO THE TRUSTEE** (56,688.15 hours)

A.     **Trustee Investigation – Task Code 01** (13,035.10 hours)[6]

22.     This category relates to time spent with respect to the investigation into BLMIS, Madoff and various assets, including meetings, correspondence and cooperative efforts with the SIPC, AlixPartners, FTI, Windels Marx, the Joint Provisional Liquidators ("JPLs") investigating the Madoff U.K. entity, Madoff Securities International Ltd. ("MSIL"), and the various government agencies involved with the on-going investigation.  B&H expended a substantial amount of time in this task code during the Compensation Period.  As further described in ¶ 24 *infra*, as a result of these efforts, to date the Trustee has filed a total of fourteen (14) avoidance actions against feeder funds, Madoff family members, Madoff friends and other Madoff-related insiders for the return of customer property.

23.     Included in this category of services by B&H were the following:

- Investigation of banks, feeder funds, insiders, Madoff friends and family members, former BLMIS employees and other Madoff-related parties.

- The initiation of, participation in, and/or monitoring of over 166 pending and 78 potential international third-party proceedings and 160 domestic third-party proceedings involving Madoff and/or BLMIS.

- Coordinating efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), and many other local, federal and international officials involved in this investigation.

---

[6] B&H began to open separate matter numbers for each avoidance action initiated by the Trustee starting in May 2009.  Many of the additional matter numbers were not opened until well into the Compensation Period. Consequently, thousands of hours that were spent by B&H attorneys and other professionals preparing for and bringing such avoidance actions were billed to Task Code 01.

300039123

- Communications with the Trustee, SIPC, Windels Marx, JPLs, AlixPartners and FTI regarding: the IA accounts and records of the transactions, business investments and ventures between the potential insiders and BLMIS, Madoff and Madoff family members and discovery from third parties.

- Obtaining copies of records seized by the FBI, SEC and other information from USAO and securities regulators and review of same.

- Review of account information and statements of BLMIS IA customers.

- Review BLMIS employee interviews.

- Drafting and issuing of hundreds of inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation; organizing and reviewing documents sent in response to such inquiries and subpoenas.

- Discussions and conferences regarding investigation and litigation strategy, both internally and with SIPC, Windels Marx, JPLs, International Counsel and various government entities.

B.    **Bankruptcy Court Litigation – Task Code 02** (5,641.00 hours)

24.    This category relates to time spent with respect to legal research, drafting and filing various motions and pleadings, the initiation of eleven (11) avoidance actions[7] against various feeder funds, and Madoff friends and family members, for the return of more than $14.6 billion to the estate for the benefit of customers, as well as defense against certain adversary proceedings in the Bankruptcy Court.  Included in this category of services by B&H were the following:

---

[7] To date, the Trustee has filed a total of fourteen (14) avoidance actions against various parties – two (2) were filed prior to the Compensation Period and one (1) was filed subsequent to such Period.

300039123

- Defense of adversary proceedings, including a class action complaint and a separate complaint brought on behalf of certain customers against the Trustee relating to "customer" status and definition of "net equity" under SIPA.

- Preparation and revision of Trustee's memorandum regarding net equity issue and discussions with the Court and counsel regarding the briefing schedule.

- Entry of applications to retain International Counsel in the British Virgin Islands and Switzerland to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

- Hearing on first fee applications of B&H, Trustee and International Counsel and defense of such applications.

- As further described below, initiate eleven (11) avoidance actions on behalf of the Trustee; draft and file various draft complaints, motions, pleadings, proposed orders and other documents to be submitted to the Bankruptcy Court in connection with all on-going avoidance actions, including amended complaints, responses to defendants' answers to such complaints, motions to dismiss, scheduling orders, and various other motions, pleadings and stipulations relating to such avoidance actions.

- Defense of Motion to Intervene filed on behalf of Toks, Inc.

- Approval of termination and liquidation of certain BLMIS-sponsored benefit plans.

- Assumption and rejection of certain BLMIS leases and executory contracts.

- Approval of a consent order substantively consolidating the Madoff chapter 7 estate with the SIPA liquidation.

300039123

- Retention of Windels Marx as special counsel to the Trustee to coordinate with B&H in conducting investigations of certain insiders and BLMIS related entities and corporate assets.

- Recognition of the Cross Border Protocol with the JPLs regarding their investigation into MSIL and the sharing of information between the JPLs and the Trustee.

C.    **Feeder Funds – Task Code 03**  (8,508.10 hours)

25.    The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds, in the U.S. and abroad, and bring actions against such funds for the recovery of estate assets where possible.  This category relates to their efforts during the Compensation Period.  Many of the funds are still under investigation.

26.    As mentioned above and further described below, B&H expended a significant amount of time during the Compensation Period preparing and filing avoidance actions against feeder funds (and various other parties).  For further discussion, please see ¶¶ 40-75 *infra*.

D.    **Asset Research and Sale – Task Code 04** (844.20 hours)

27.    This category relates to time spent with respect to discovery of, recovery of and liquidation of various assets for the benefit of the estate.  Included in this category of services by B&H were the following:

- Negotiation of a settlement regarding BLMIS's/Madoff's interest in a shared aircraft.

- Discussions with the purchaser of the BLMIS market maker, Surge Trading Inc. (f/k/a Castor Pollux Inc.), regarding the closing of the sale, potential recoveries from the negotiated earn-out fees, and various related matters.

- Discussions with JPLs, Windels Marx and USAO regarding Madoff personal assets and

status of efforts to sell.

- Review claims and affidavits for filing in connection with the settlement of various class actions involving securities owned by BLMIS in its market making and trading capacities; and conferences with AlixPartners related to same.

- Sale of certain loan participations owned by BLMIS.

E.   **Internal Meetings with Staff – Task Code 05** (1,319.30 hours)

28.   This category relates to internal B&H meetings related to the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.

F.   **Customer Claims – Task Code 06** (1,621.60 hours)

29.   This task code is no longer in use. A separate matter number was opened for work related to customer claims on June 3, 2009, and B&H attorneys and paraprofessionals began to bill to such matter number. *See* ¶¶ 45-46 *infra* for a discussion of this time.

G.   **Billing – Task Code 07** (565.20 hours)

30.   In addition to preparation of this Application, this section relates to the time spent by attorneys and paraprofessionals in reviewing the monthly B&H billing statements prior to submission to SIPC to ensure that time was properly billed by B&H, to correct any errors in time entries and to write off certain time and expenses as agreed to by B&H for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly invoice. This section also relates to time spent preparing and reviewing the fee applications of the Trustee and various International Counsel.

300039123

H.     **Case Administration – Task Code 08** (1,715.40 hours)

31.     This category is for time expended by B&H in assisting the Trustee in the wind-down of the Debtor's business and other administrative matters, including:

- Review of mail forwarded by AlixPartners that was received at the BLMIS offices; discuss with Trustee and prepare appropriate responses.

- Negotiations with landlords of BLMIS properties, including terminations of lease at Bulova building and renegotiating lease at 885 Third Avenue.

- Discussions with Surge Trading Inc. (f/k/a Castor Pollux Inc.) regarding the closing of the sale of the BLMIS market making business.

- Assisting the Trustee in responding to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the U.S. Department of Labor, Internal Revenue Service, New York State Department of Tax & Finance, New York State Bureau of Workers Compensation and New York State Department of Labor Unemployment Division.

- Consult with AlixPartners regarding various employee and benefits related issues, including correspondence with administrators of payroll, 401(k), healthcare and other benefit plans; termination of remaining BLMIS employees, and the wind-down of BLMIS sponsored employee benefit plans (including healthcare and 401(k) plans).

- Discussions with AlixPartners and the Trustee regarding the return of leased equipment located at BLMIS offices and the negotiating and resolution of outstanding estate obligations.

16

I.    **Banks – Task Code 09** (211.30 hours)

32.    During the Compensation Period, and primarily as a result of international and domestic feeder fund investigations, the Trustee has identified and commenced investigations of numerous banks involved with various feeder funds and BLMIS.  The Trustee's investigation of these banks is continuing.  The time in this category relates to time spent developing investigation teams, identifying certain banks as targets, investigation into the various capacities of such banks and the roll they may have played in Madoff's Ponzi scheme, preparing letters of inquiry and subpoenas, and reviewing responses to such letters and subpoenas received from such banks and from other third parties.

J.    **Court Appearances – Task Code 10** (40.20 hours)

33.    This category relates to time spent by B&H attorneys making court appearances for the events described in section B above, as well as court appearances in the District Court for the Civil Case and for various appeals of litigation initiated in the Bankruptcy Court.

K.    **Press Inquiries and Responses – Task Code 11** (37.20 hours)

34.    This section relates to time spent by B&H attorneys assisting the Trustee in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of funds.  During the Compensation Period, the Trustee held a press conference together with SIPC on May 14, 2009.  In addition, the Trustee and his counsel were interviewed in late August and early September 2009 by 60 Minutes regarding the case.  The segment aired on Sunday, September 27, 2009.

300039123

L.  **Document Review – Task Code 12** (4,775.70 hours)

35.     The time in this task code relates to time spent by B&H and other contract attorneys conducting the ongoing review of 1.4 million emails captured from the Debtor's computer server and more than 1,500 other sources of electronically stored information, and of approximately seven thousand boxes of BLMIS's paper documents recovered from the Debtor's office and warehouse locations.

36.     In addition, B&H attorneys have accumulated, prepared for review, and begun review of documents received from more than 100 parties in response to letters and subpoenas and received from other third parties.

M.  **Discovery - Depositions and Document Productions by the Trustee – Task Code 13** (327.90 hours)

37.     This task code relates to time spent by B&H attorneys conducting depositions and responding to discovery requests issued by various opposing and third parties involved in the ongoing litigations.

N.  **International – Task Code 14** (253.40 hours)

38.     The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in no fewer than eleven different jurisdictions including England, Gibraltar, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain. These investigations, which are comprised of a combination of voluntary requests for information and the use of subpoena power, both in the U.S. and abroad, have focused primarily on international feeder funds, banks, related financial services entities and certain individuals. Time in this category relates to this ongoing investigation, the preparation and service of no fewer than thirty-five (35) subpoenas against more than twenty-five (25) entities in ten (10) jurisdictions, and the communication with

18

International Counsel to utilize local laws to obtain necessary discovery. The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery by U.S. entities.

### MATTER 02 – TRUSTEE TIME

39. This matter number is reserved for billing of time spent by the Trustee. See the Trustee Fee Application for a summary of this time.

### MATTER 03 – CHAIS (433.10 hours)

40. Time in this matter relates to all time spent by B&H attorneys preparing for the filing of and the filing of an avoidance action against Stanley Chais, Pamela Chais and a number of related entities (collectively, the "Chais Defendants") seeking return of more then $1.1 billion based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants. The action was filed on May 1, 2009.

41. Such time includes: conducting legal research; review of documents related to the Chais Defendants; drafting of the complaint; drafting of discovery requests; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for the Chais Defendants; and all other time related to the Chais litigation.

### MATTER 04 – MERKIN (1,061.50 hours)

42. Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd.,

Ascot Partners, L.P., Gabriel Capital Corporation (the "Merkin Funds") and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking return of more then $557 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. The action was filed on May 7, 2009. An amended complaint was filed on August 6, 2009.

43.     In the summer of 2009, pursuant to an action commenced by the New York State Attorney General ("NYAG") in the Supreme Court of New York, receivers were appointed over each of the Merkin Funds. The receivers for the Merkin Defendants filed motions to dismiss the amended complaint on September 4, 2009.

44.     Such time includes: conducting legal research; review of documents received through discovery and from the NYAG related to the Merkin Defendants; drafting and filing of the initial complaint and amended complaint; drafting of discovery requests; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court, including responses to the motions to dismiss; drafting of internal memoranda; internal meetings with B&H attorneys and  FTI regarding investigation and litigation strategy; communications with counsel for the Merkin Defendants and the receivers appointed for the Merkin Funds; and all other time related to the Merkin litigation.

**MATTER 05 – CUSTOMER CLAIMS** (7,565.50 hours)

45.     This category is for time expended by B&H with respect to customer claims.  B&H expended a considerable amount of time in this category, as significant progress was made during the Compensation Period with respect to Customer Claims.  The mandatory

20

six-month statutory bar date expired on July 2, 2009. As of September 30, 2009, the Trustee had received 16,239 timely claims and 66 untimely or late-filed claims for customer protection under SIPA and the Trustee had allowed 1,347 customers claims, for a total of $4,030,806,115.49 in allowed claims. As of September 30, 2009, approximately $465 million in SIPC advances had been paid to, or committed to be paid to claimants and the BLMIS estate; the amount by which the allowed claims exceeded the statutory limits of SIPC protection (or "over-the-limit claims") was approximately $3.57 billion. The receipt (of late-filed claims) and review of customer claims is on a continuing basis.

46.    Included in this category of services by B&H were the following:

- Implementation of the Trustee's Hardship Program; creation of and review of Hardship Applications; regular communications with the Trustee, SIPC and AlixPartners regarding the review and determination of Hardship applicants.

- Communications with the Trustee and SIPC staff regarding revisions to the form of determination letters and assignment and release forms to be sent to all customers.

- Ongoing review of submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Assisting the Trustee in making determinations regarding customer claims; advising customers and/or their representatives of conclusions reached regarding allowance or denial of their respective claims; preparation of the Trustee's determination letters and assignment and release forms for execution by customers.

- Training of a team of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

300039123

- Regular communications with the Trustee, SIPC and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts and other matters of interest in determining claims.

- Review of and regular communications with the Trustee, SIPC, and counsel for various customers who have filed actions regarding customer claims, the "net equity" definition and other issues.

- Review of and regular communications with the Trustee, SIPC and counsel for various customers who have filed objections to the Trustee's determination of their claim. As of September 30, 2009, seventy-nine (79) objections have been filed with the Bankruptcy Court.[8]

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, status of claims review and other matters of concern to customers.

- Review schedules of information prepared by AlixPartners; preparation of additional reports for the Trustee and SIPC.

**MATTER 06 – VIZCAYA** (522.70 hours)

47. On April 9, 2009 (prior to this Compensation Period), the Trustee filed a complaint against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra", and together with Vizcaya, the "Vizcaya Defendants"), seeking return of $150,000,000 based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences,

---

[8] As of November 19, 2009, a total of 388 objections to the Trustee's determination of claims have been filed in the Bankruptcy Court by customers of BLMIS.

300039123

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

48. A Gibraltar-based Judicial Review Action was filed by Vizcaya on February 18, 2009 against the Gibraltar Attorney General and Bank Safra in order to regain control over frozen funds held in its account at Bank Safra.

49. Time in this matter includes: conducting legal research; review of documents related to the Vizcaya Defendants; drafting of discovery requests; drafting and review of pleadings, motions and other related documents to be filed with the Bankruptcy Court and in the Gibraltar Supreme Court; drafting of internal memoranda; internal meetings with B&H attorneys, the Trustee's counsel in Gibraltar and FTI regarding investigation and litigation strategy; correspondence with counsel in Gibraltar regarding the Judicial Review Action; communications with counsel for the Vizcaya Defendants; and all other time related to the Vizcaya litigation.

### **MATTER 07 – MADOFF FAMILY** (2,042.30 hours)

50. On October 2, 2009 (subsequent to the Compensation Period), the Trustee filed a complaint against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (the "Family Defendants") seeking the return of nearly $200 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

51. While the complaint was filed subsequent to the Compensation Period, the time in this matter relates to the time B&H attorneys spent investigating and reviewing documents related to Family Defendants, drafting and preparing for the filing of the complaint.

23

**MATTER 08 – CONFIDENTIAL** (83.70 hours)

52.     This matter is currently under investigation.  Time relating to this matter is confidential as attorney work-product.

**MATTER 09 – FAIRFIELD GREENWICH** (1,486.50 hours)

53.     Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P., (collectively, "the Fairfield Defendants") seeking return of approximately $3.5 billion based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Defendants.  The action was filed on May 18, 2009.

54.     Such time includes: conducting legal research; review of documents related to the Fairfield Defendants; drafting of the complaint; drafting of discovery requests; issuance of Rule 2004 subpoenas to the Fairfield Defendants and third parties; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys and FTI regarding investigation and litigation strategy; communications with counsel for the principals of the Fairfield Defendants and the liquidators who have been appointed to liquidate the Fairfield Defendants; and all other time related to the Fairfield litigation.

**MATTER 10 – HARLEY** (148.60 hours)

55.     Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Harley International (Cayman) Limited

24

("Harley"), seeking return of approximately $1.1 billion based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley. The action was filed on May 12, 2009. As Harley failed to answer the complaint, a default was entered against Harley on July 8, 2009 by the Bankruptcy Court.

56.     Such time includes: conducting legal research; review of documents related to Harley; drafting of the complaint and other related documents to be filed with the Bankruptcy Court; issuance of a Rule 2004 subpoena; drafting of internal memoranda; internal meetings with B&H attorneys and FTI regarding investigation and litigation strategy; communications with counsel for Harley; and all other time related to the Harley litigation.

**MATTER 11 – COHMAD SECURITIES CORPORATION** (1,188.60 hours)

57.     Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals and certain employees of Cohmad and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking return of over $132 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. The action was filed on June 22, 2009. An amended complaint was filed on October 8, 2009 (subsequent to the Compensation Period), which added defendants and increased the demand of the complaint.

300039123

58.     Such time includes: conducting legal research; review of documents related to the Cohmad Defendants; drafting of the complaint and amended complaint; drafting of discovery requests; issuance of Rule 2004 subpoenas to third parties; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court and District Court, including responses to counter-claims, motions to dismiss, and motions to withdraw the reference filed by various Cohmad Defendants; drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for the Cohmad Defendants; and all other time related to the Cohmad litigation.

## MATTER 12 – PICOWER (1,639.40 hours)

59.     Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as trustee for various foundations, and other various Picower entities (collectively, "the Picower Defendants") seeking return of approximately $7.2 billion based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.  The action was filed on May 12, 2009.

60.     Such time includes: conducting legal research; review of documents related to the Picower Defendants; drafting of the complaint; drafting of discovery requests; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court, including the Trustee's opposition to the Picower Defendants' motion to dismiss the complaint; drafting of internal memoranda; internal meetings with B&H attorneys and FTI

26

regarding investigation and litigation strategy; communications with counsel for the Picower Defendants; and all other time related to the Picower litigation.

## MATTER 13 – KINGATE (793.30 hours)

61.    On April 17, 2009 (prior to this Compensation Period), the Trustee filed a complaint against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (the "Kingate Defendants"), seeking return of $395 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants. An amended complaint was filed on May 8, 2008, also naming Bank of Bermuda Limited as a defendant. A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

62.    The Kingate Defendants are currently in liquidation in the British Virgin Islands ("BVI") and the BVI court has appointed liquidators to manage the Kingate Defendants.

63.    Time in this matter includes: conducting legal research; review of documents related to the Kingate Defendants; drafting and filing the initial complaint and amended complaints; drafting of discovery requests to the Kingate Defendants and third parties; drafting and review of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, the Trustee's counsel in BVI and FTI regarding investigation and litigation strategy; correspondence with counsel in BVI regarding the liquidation proceedings and related litigation in BVI and Bermuda; communications with counsel for the Bank of Bermuda and the BVI court-appointed

27

liquidators, including settlement communications; and all other time related to the Kingate litigation.

## **MATTER 14 – RESERVED**

## **MATTER 15 – HERALD** (297.60 hours)

64.     Time in this matter relates to all time spent by B&H attorneys preparing for the filing of, and filing, an avoidance action against Herald Fund SPC ("Herald") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $578 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Herald.  The action was filed on July 14, 2009.  An amended complaint was filed on August 14, 2009, which added an objection to Herald's SIPA claim.  A second amended complaint was filed on October 13, 2009 (subsequent to the Compensation Period), which dismissed certain causes of action against Herald.

65.     Such time includes: conducting legal research; review of documents related to Herald and HSBC; drafting of the initial and amended complaints; drafting of discovery requests to the defendants and other third parties; issuance of Rule 2004 subpoenas; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys and FTI regarding investigation and litigation strategy; communications with counsel for Herald and HSBC; and all other time related to the litigation against Herald and HSBC.

28

## MATTER 16 – ALPHA PRIME (89.60 hours)

66.      Time in this matter relates to all time spent by B&H attorneys in preparing for the filing of, and filing, an avoidance action against Alpha Prime Fund Limited, HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (the "Alpha Prime Defendants") seeking return of $86 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Alpha Prime Defendants.  The action was filed on July 15, 2009.

67.      Such time includes: conducting legal research; review of documents related to the Alpha Prime Defendants; drafting of the complaint; drafting of discovery requests; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for the Alpha Prime Defendants; and all other time related to the litigation against the Alpha Prime Defendants.

## MATTER 17 – PRIMEO FUND (123.70 hours)

68.      Time in this matter relates to all time spent by B&H attorneys in preparing for the filing of, and filing, an avoidance action against Primeo Fund ("Primeo"), HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $145 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Primeo and HSBC.  The action was filed on July 15, 2009.

29

69. Primeo is in liquidation in the Cayman Islands. The Trustee and the Cayman Islands court-appointed liquidators (the "Liquidators") are in negotiations regarding a partial settlement.

70. Such time includes: conducting legal research; review of documents related to Primeo and HSBC; drafting of the complaint; drafting of discovery requests; issuance of Rule 2004 subpoenas; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, Trustee's counsel in the Cayman Islands and FTI regarding investigation and litigation strategy; communications with counsel for the Liquidators and HSBC, including settlement negotiations; and all other time related to the litigation against the Primeo and HSBC.

### **MATTER 18 – THYBO** (47.90 hours)

71. Time in this matter relates to all time spent by B&H attorneys in preparing for the filing of, and filing, an avoidance action against Thybo Asset Management Limited; Thybo Global Fund Limited; Thybo Return Fund Limited; and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants"), seeking return of approximately $63 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants. The action was filed on July 15, 2009. An amended complaint was filed on August 25, 2008, adding an objection to Thybo Stable Fund Ltd.'s SIPA claim.

72. Such time includes: conducting legal research; review of documents related to the Thybo Defendants; drafting and filing of the complaint and the amended complaint; issuance of Rule 2004 subpoenas; drafting of internal memoranda; internal meetings

30

with B&H attorneys, and FTI regarding investigation and litigation strategy; communications with counsel for the Thybo Defendants; and all other time related to the litigation against the Thybo Defendants.

## MATTER 19 – RUTH MADOFF (257.20 hours)

73.     Time in this matter relates to all time spent by B&H attorneys in preparing for the filing of, and filing, an avoidance action against Ruth Madoff seeking return of approximately $44 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.  The action was filed on July 29, 2009.

74.     Such time includes: conducting legal research; review of documents related to Mrs. Madoff; drafting of the complaint; drafting of and responding to discovery requests; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for Mrs. Madoff; and all other time related to the litigation against Mrs. Madoff.

## MATTER 20 –CONFIDENTIAL (11.40 hours)

75.     This matter is currently under investigation.  Time relating to this matter is confidential as attorney work-product.

# V. **COMPENSATION REQUESTED**

76.    B&H expended 56,688.20 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in an average hourly rate of $417.08 for fees incurred.

77.    Prior to filing this Application, B&H provided to SIPC, in accordance with the Compensation Order, (i) monthly fee statements setting forth B&H's fees for services rendered and expenses incurred during the Compensation Period beginning May 1, 2009 through September 30, 2009 and (ii) a draft of this Application.  In connection with preparing each of the five monthly statements and this Application, B&H voluntarily adjusted its fees by writing off $134,622.25 (in addition to the 10% discount, as discussed below) and wrote off expenses in the amount of $165,071.71 customarily charged to other clients.

78.    In addition, at SIPC's request, B&H's fees in this case reflect a 10% public interest discount from B&H's standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $2,364,344.65.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in the Chapter 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

79.    Pursuant to the Compensation Order, on June 22, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in May 2009 (the "May 2009 Fee Statement").  SIPC made certain adjustments and suggestions to the May 2009 Fee Statement, which were adopted by B&H.  After such adjustments, the May 2009 Fee Statement reflected fees of $3,398,555.25 and expenses of $62,955.81.  Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of

32

$2,718,844.20 for services rendered after subtracting the Court-ordered 20% holdback[9] and $62,955.81 for expenses incurred during May 2009.

80.     Pursuant to the Compensation Order, on July 21, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in June 2009 (the "June Fee Statement").  SIPC made certain adjustments and suggestions to the June 2009 Fee Statement, which were adopted by B&H.  After such adjustments, the June 2009 Fee Statement reflected fees of $4,226,969.25 and expenses of $42,768.46.  Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,381,575.40 for services rendered after subtracting the Court-ordered 20% holdback and $42,768.46 for expenses incurred during June 2009.

81.     Pursuant to the Compensation Order, on August 20, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in July 2009 (the "July 2009 Fee Statement").  SIPC made certain adjustments and suggestions to the July 2009 Fee Statement, which were adopted by B&H.  After such adjustments, the July 2009 Fee Statement reflected fees of $4,326,562.80 and expenses of $44,588.92.  Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,461,250.24 for services rendered after subtracting the Court-ordered 20% holdback and $44,588.92 for expenses incurred during July 2009.

82.     Pursuant to the Compensation Order, on September 22, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in

---

[9] As mentioned above and discussed further below, B&H and the Trustee are requesting a reduction in the amount of holdback from 20% to 15%, retroactive to the Filing Date and going forward.  Pursuant to the Compensation Order, B&H was paid 80% of its fees for May through September 2009.  If the Court grants the requested relief, B&H will receive an additional 5% of fees incurred (for a total of 85% of fees incurred) since the Filing Date.

August 2009 (the "August 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the August 2009 Fee Statement, which were adopted by B&H. After such adjustments, the August 2009 Fee Statement reflected fees of $4,346,061.30 and expenses of $69,207.24. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,476,849.04 for services rendered after subtracting the Court-ordered 20% holdback and $69,207.24 for expenses incurred during August 2009.

83.     Pursuant to the Compensation Order, on October 16, 2009, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in September 2009 (the "September 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the September 2009 Fee Statement, which were adopted by B&H. After such adjustments, the September 2009 Fee Statement reflected fees of $4,980,953.25 and expenses of $61,161.19. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $3,984,762.60 for services rendered after subtracting the Court-ordered 20% holdback and $61,161.19 for expenses incurred during September 2009.

84.     There is no agreement or understanding among the Trustee, B&H and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.

85.     This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Compensation Order. Pursuant to the Local Guidelines, the certification of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

300039123

86.     Exhibit B annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtors during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual and the aggregate number of hours billed by each individual and the total compensation, prior to the 10% discount, requested for each individual. The 10% discount ($2,364,344.65, as described above) is taken off the total cumulative amount billed, as reflected on Exhibit B.

87.     Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients. B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients including certain inter-office travel and related expenses (lodging, meals, airfare and other transportation). As mentioned above, these amounts combine to a voluntary reduction of $165,071.71.

88.     Exhibit D annexed hereto is a summary of services performed by B&H from during the Compensation Period by B&H task code and matter number.

89.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

300039123

# VI. REDUCTION OF HOLDBACK

90.    By this Application, B&H and the Trustee also seek entry of an order amending the Compensation Order, which Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and B&H, his counsel (collectively, the "Applicants").  By the Compensation Order, the Applicants' fees are subject to a 20% holdback (the "Holdback"), which is to be deferred through the conclusion of the liquidation period.

91.    B&H and the Trustee seek to reduce the Holdback from 20% to 15%, both retroactive to the Filing Date and going forward.  To accomplish this, the Application seeks to amend the Compensation Order by modifying, upon the consent and approval of SIPC, paragraph 2(e) thereto to provide that "the Trustee shall promptly pay eighty-five percent (85%) of the fees and one hundred percent of the expenses identified in each Monthly Statement...".  Paragraph 2(e) of the Compensation Order currently provides that the Trustee shall pay eight percent (80%) of fees.  The proposed amended Compensation Order is annexed hereto as Exhibit E.

92.    The Trustee and B&H request that such reduction in the Holdback be retroactive to the Filing Date, as well as going forward.  The Applicants have already received 80% of their approved fees for (i) the period December 15, 2008 through April 30, 2009, in accordance with the order entered by this Court on August 6, 2009 (the "Order Approving Fees") [Docket No. 363], and (ii) May through September of 2009 as described in ¶¶ 79-83 *supra*, and in ¶¶ 45-49 of the Trustee Fee Application (approval of which is requested by this Application and by the Trustee Fee Application).  Upon entry of the proposed amended Compensation Order, Applicants will be entitled to eighty-five percent (85%) of their incurred fees to date. Accordingly, the Trustee will be authorized to immediately disburse to the Applicants an

36

additional five percent (5%) of the amounts awarded in the Order Approving Fees, the amounts requested in this Application and in the Trustee Fee Application, and any other amounts the Applicants have received subsequent to the filing of this Application. The additional 5%, or $1,797,071.08 is set forth in the proposed amended Compensation Order.

93. SIPC supports the reduction in Holdback, as the Trustee and his counsel have made significant progress into the investigation of Madoff's fraud and have attained positive results for the benefit of the customers of BLMIS, as summarized in this Application, the Trustee Fee Application, and as further described in the Second Interim Report. As is also described in the Second Interim Report, the work of the Applicants, while already substantial, has only just begun and there is much more work to be done in this matter. Taking into account these accomplishments, and based on the efforts and dedication of the Trustee and B&H to this matter, SIPC has agreed to and fully supports the reduction in the amount of the Holdback requested herein to apply to this and future Applications for fees, as well as retroactively to the Filing Date. SIPC will be filing a recommendation in support of the fees and expenses requested in this Application, as well as those requested in the Trustee Fee Application. The SIPC recommendation will also support a reduction in the amount of the Holdback from 20% to 15% of fees.

94. Furthermore, as stated in this Application, the Trustee Fee Application, and as further explained by Kevin Bell on behalf of SIPC at the hearing held before this Court on August 6, 2009, all fee applications, as well as monthly invoices, of the Trustee and B&H are thoroughly reviewed and highly scrutinized by SIPC – not only by Mr. Bell but by the General Counsel of SIPC as well.

300039123

95.     In light of the above, the Trustee and B&H respectfully request that the

Compensation Order be amended to reflect the reduction in Holdback from 20% to 15%.

## VIII.  B&H'S REQUEST FOR INTERIM
## COMPENSATION SHOULD BE GRANTED

96.     Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon

appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for

services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..."

Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with

applications for compensation and the consideration the Court should give to SIPC's

recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by
> SIPC, the court shall award the amounts recommended by SIPC.  In determining
> the amount of allowances in all other cases, the court shall give due consideration
> to the nature, extent, and value of the services rendered, and shall place
> considerable reliance on the recommendation of SIPC.

97.     To the extent the general estate is insufficient to pay such allowances as an

expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds

necessary to pay the compensation of B&H (*see* SIPA § 78fff-3(b)(2)).

98.     Based on the allocation process set forth in SIPA, the Trustee has

determined at this time that he has no reasonable expectation that the general estate will be

sufficient to make any distribution to general creditors or pay any administrative expenses.  That

is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted

prior to his being able to reimburse SIPC fully.  The Trustee has been advised by SIPC that it

concurs in this belief of the Trustee.  Accordingly, any fees and expenses allowed by this Court

will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

99.     Therefore, with respect to this Application, B&H requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). B&H expects that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for December 17, 2009.

100.     B&H submits that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VIII. <u>CONCLUSION</u>

B&H respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding (a) $21,279,101.85 (of which $18,087,236.57 is to be paid currently and 15%, or $3,191,865.28, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the Compensation Period, (b) $1,797,074.52 of the previously deferred portion of interim fees awarded by the Court as an interim payment for professional services rendered by the Trustee and (c) $280,681.62 as reimbursement of the actual and necessary costs and expenses incurred by B&H in connection with the rendition of such services; (ii) amending the Compensation Order substantially in the form of the proposed order attached hereto as Exhibit E, allowing the

reduction in Holdback retroactive to the Filing Date and going forward; and (iii) granting such

other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 23, 2009

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/ *David J. Sheehan*
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, NY 10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      David J. Sheehan
      Email: dsheehan@bakerlaw.com
      Marc E. Hirschfield
      Email: mhirschfield@bakerlaw.com

      *Attorneys for Irving H. Picard, Esq. Trustee*
      *for the Substantively Consolidated SIPA*
      *Liquidation of Bernard L. Madoff*
      *Investment Securities LLC And Bernard L.*
      *Madoff*

300039123