Pauline Silverstein Rev. Trust UAD 4/7/86
Robert Silverstein, Trustee
9204 White Chimney Lane
Great Falls, Virginia 22066
Tel: (703) 303-9466

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

             Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

             Defendant.
-----------------------------------------------------------x

SIPA LIQUIDATION

Adv. Pro. No. 08-01789 (BRL)

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM NUMBER 010657**

As the duly appointed Personal Representative of the Estate of Pauline Silverstein and the named trustee of the Pauline Silverstein Revocable Trust U/A/D 4/07/86 (Madoff Account No. 1ZB 594), I hereby object to the Notice of Trustee's Determination of Claim No. 010657, dated October 19, 2009. I request that the court decide my claim based on the papers submitted.

**Factual background**

1. On November 6, 2008, after the death of Pauline Silverstein, the Trust established an account with Bernard L. Madoff Investment Securities, LLC ("Madoff"), bearing account number 1ZB 594 (the "Trust Account").

2. The beneficiaries of the Trust are Pauline Silverstein's five children: Robert Silverstein, Marilyn Medrano, Rita Levin, Michael Silverstein, and Mindy Levy (together, the "Beneficiaries").

3. According to Mr. Picard, $1,475,997.49 was deposited into the Trust Account and $550,000 was withdrawn from the Trust Account during the period from November 6, 2008 through December 11, 2008. However, Mr. Picard is giving the Trust Account $0 credit for the deposits into the Trust Account.[1] The Trust disputes Mr. Picard's calculations.

4. All of the transfers into the Trust Account occurred on November 6, 2008 and totaled $1,475,997.49. The transfer occurred because of the death of Pauline Silverstein. The transfers were from Madoff Account No. 1ZB 422, which was titled in the name of Pauline Silverstein (the "Pauline Silverstein Account").

5. Each of the Beneficiaries of the Trust had inherited an equal portion from the Trust Account and each of the Beneficiaries deposited funds into the Trust Account for the purpose of purchasing securities. Thus, each of the Beneficiaries is a "customer" under the Securities Investor Protection Act ("SIPA").

6. The Pauline Silverstein Account was opened with Madoff on January 11, 2002.[2] The initial investment in the Pauline Silverstein Account was $673,413.38.[3] This initial investment was deposited into the Pauline Silverstein Account via a transfer from

---

[1] See Mr. Picard's October 19, 2009 Determination Letter at 4 [Appendix 15].
[2] See Trading Authorization and Customer Agreement with Bernard L. Madoff establishing a new Account [Appendix 1].
[3] See Madoff Monthly Statement for period ending 2/28/2002 indicating transfer of $673,413.38. [Appendix 2]

2

the Madoff Account of H.J. Silverstein (Account No. 1ZB145), Pauline Silverstein's recently deceased husband.[4]

7. The determination letter makes no reference to the deposit of $673,413.38 into the Pauline Silverstein Account on February 21, 2002.

8. On February 21, 2002, Pauline Silverstein added $85,000 to the Pauline Silverstein Account. This amount was transferred from the Account of the Silverstein Investment Club (Account No. 1ZA 521).[5]

9. The determination letter makes no reference to the deposit of $85,000 into the Pauline Silverstein Account on February 21, 2002.

10. On September 16, 2009, the Silverstein Investment Club received a Notice from the Trustee informing the Club that its claim had been allowed for $1,152,878.15.[6]

11. For the period February 2002 through May 2008, there were no withdrawals from the Pauline Silverstein Account.[7]

12. On June 3, 2008, $50,000 was withdrawn from the Pauline Silverstein Account to pay taxes on the Madoff profits and for her living expenses.[8]

13. On September 24, 2008, $50,000 was withdrawn from the Pauline Silverstein Account to pay taxes on the Madoff profits and for her living expenses.[9]

14. On October 20, 2008, Pauline Silverstein died at the age 93.[10]

---

[4] Herman J. Silverstein died on May 21, 2001. See Certificate of Death [Appendix 3]. See also United States Estate Tax Return (cover page) and Schedule M Bequests to Surviving Spouse [Appendix 4].
[5] See Madoff Monthly Statement for period ending 2/28/2002 indicating transfer of $85,000 from Account 1ZA521 in the name of the Silverstein Investment Club (of which Pauline Silverstein was a member for the period January 1, 2002 through February 21, 2002). [Appendix 2]
[6] September 16, 2009 Notice of Trustee's Determination of Claim Re Silverstein Investment Club. [Appendix 16]
[7] See Madoff Portfolio Management Reports as of 12/31/2003; 12/31/2004; 12/31/2005; 12/31/2006; and 12/31/2007. [Appendix 5]
[8] See Madoff Monthly Statement for the period ending 6/30/2008. [Appendix 6]
[9] See Madoff Monthly Statement for the period ending 9/30/2008 and a memo from Madoff indicating a wire transfer. [Appendix 7]

3

15. On November 5, 2008, the attorney for the estate of Pauline Silverstein instructed Madoff to transfer the entire amount in the Pauline Silverstein Account to a new account to be opened under the name "Pauline Silverstein Revocable Trust U/A/D 4/7/86, Robert Silverstein Trustee, the Trust Account.[11]

16. On November 6, 2008 the transfer was documented.[12]

17. On November 11, 2008, Robert Silverstein, Trustee, signed papers with Madoff, including Trading Authorization and Customer Agreement.[13]

18. On November 12, 2008, Robert Silverstein, Trustee requested that $550,000 be transferred to the bank account of the Estate of Pauline Silverstein to pay funeral expenses, estate lawyer fees, and for partial distribution to beneficiaries.[14]

19. On November 14, 2008, Madoff wired a check in the amount of $550,000 to the Estate of Pauline Silverstein bank account.[15]

20. The closing balance as of November 30, 2008 in the Madoff Trust Account was $958,096.05.[16]

21. Deposits into the Pauline Silverstein Account, No. 1ZB 422, which on her death were transferred to the Trust Account totaled $758,413.38 ($673,413.38 +

---

[10] Pauline Silverstein Certificate of Death. [Appendix 8]
[11] Letter from Thorton M. Henry to Frank DiPascali, Bernard L. Madoff Investment Securities, LLC (November 5, 2008). [Appendix 9]
[12] Pauline Silverstein Madoff Monthly Statement for the period ending 11/30/2008. [Appendix 11] See also Pauline Silverstein Revocable Trust UAD 4/07/86 Robert Silverstein Madoff Monthly Statement for the period ending 11/30/2008. [Appendix 12]
[13] Madoff Trading Authorization and Customer Agreement. [Appendix 10]
[14] FAX from Robert Silverstein, Trustee to Frank DiPascali requesting transfer of $550,000 to Estate Bank Account (November 12, 2008). [Appendix 13]
[15] Madoff Documentation indicating Pauline Silverstein's Madoff Account debited in the amount of $550,000 (11/14/2008). [Appendix 14]
[16] Pauline Silverstein Revocable Trust UAD 4/07/86 Robert Silverstein, Trustee Madoff Monthly Statement for the period ending 11/30/2008. [Appendix 12].

4

$85,000); withdrawals totaled $650,000,[17] and the net investment, on Mr. Picard's theory of net equity, was $108,413.38.

22. The Trust filed a SIPC claim asserting a claim for securities in the amount of $958,096.05, the November 30, 2008 balance in the Trust Account. In the alternative, the Trust asserted a claim for $108,413.38 (using Mr. Picard's theory of net equity).

23. By letter dated October 19, 2009, Mr. Picard rejected the Trust's claim for securities, indicating that he gave no credit for the $1,475,997.49 transferred into the Trust Account from the Pauline Silverstein Account, and claiming that the Trust had withdrawn from the Trust Account $550,000 more than had been deposited.[18]

**Grounds for objection**

24. In general, the Trust incorporates by reference the grounds for objection set forth in filings before this court in "Objections to Trustee's Determination of Claim" made by attorneys for the Ronald Gene Wohl Credit Shelter Trust, Stanley T. Miller IRA, and the Morse Family Foundation, including the following:

- Mr. Picard has failed to comply with the Court's December 23, 2008 Order which directs him to satisfy customer claims and deliver securities in accordance with the "debtor's books and records" and has failed to state a basis in the Determination letter for the position he has taken.

- Without legal authority, Mr. Picard has established his own definition of "net equity."

- The Trust is entitled to prejudgment interest on its investments and profits.

- Mr. Picard has violated SIPA by delaying the payment of SIPC insurance.

---

[17] See paragraphs 6, 8, 12, 13, 18, and 19.
[18] See Mr. Picard's October 19, 2009 Determination Letter [Appendix 15].

5

- The beneficiaries are each "customers" under SIPA entitled to up to $500,000 in SIPC insurance.

25. In addition to incorporating by reference the general grounds described in paragraph 24, the Trust incorporates by reference the particular ground asserted in filings by the attorneys, referenced in paragraph 24, that Mr. Picard has violated the requirement that he honor a customer's "legitimate expectations." The H.J. Silverstein Account, the Pauline Silverstein Account, and the Trust Account all received monthly statements from Madoff indicating returns on the Madoff investment in the range of 9 – 20% per year, subject to short term capital gains tax rates. H.J. Silverstein, Pauline Silverstein, and The Trust had entered into standard brokerage agreements with Madoff, a licensed SEC-regulated broker-dealer, pursuant to which they had specified, numbered accounts for the purchase and sale of securities; they received regular monthly statements and trade confirmations reflecting the purchase and sale of Fortune 100 company stocks and the purchase of US Treasury securities. H.J. Silverstein and Pauline Silverstein paid taxes on the annual growth of the investments with Madoff. Moreover, upon his death, the estate of H.J. Silverstein paid all appropriate estate taxes upon his assets, concurrent with the transfer of remaining funds to the Pauline Silverstein Account. There is no basis to claim that H.J. Silverstein, Pauline Silverstein, and the Trust did not have a "legitimate expectation" that the assets reflected on their statements sent by Madoff belonged to them.

26. In particular, the Trust also incorporates by reference the ground asserted in filings by the attorneys, referenced in paragraph 24, that Mr. Picard has no power to claw back withdrawals beyond the statute of limitation period and solely for SIPC's

6

benefit. As explained in paragraph 6, $673,413.38 was transferred from H.J. Silverstein, on his death, to Pauline Silverstein (his wife). This transfer occurred six years and eleven months prior to the arrest of Mr. Madoff on December 11, 2008. In derogation of his fiduciary duty to the Trust, Mr. Picard is, in effect, imposing upon the Trust a fraudulent conveyance judgment for sums that were transferred from the H.J. Silverstein Account into the Pauline Silverstein Account beyond the statute of limitations period applicable to fraudulent conveyances. Thus, even if Mr. Picard were entitled to utilize the fraudulent conveyance provisions of the Bankruptcy Code against customers, he could not possibly do so beyond the applicable statute of limitations. Yet, he has done so here and deprived the Trust and the Beneficiaries of SIPC insurance and the claim to which the Trust is entitled.[19]

27.  This decision to exercise power to claw back withdrawals beyond the statute of limitations period is particularly egregious in this situation because upon H.J. Silverstein's death, instead of transferring funds from his Madoff account to his wife's new Madoff account, the executor could have withdrawn these funds and then deposited the funds in a checking account in the name of Pauline Silverstein. Shortly thereafter, Pauline Silverstein could have written a check to Madoff in an amount equal to the amount of the transfer. Under these circumstances, the $673,413.38 deposited by Pauline Silverstein in the Pauline Silverstein Account would certainly have been recognized as an initial investment for purposes of calculating net equity under Mr. Picard's theory. In considering the claim, Mr. Picard certainly would have viewed a copy of the cancelled

---

[19] Moreover, Mr. Picard has employed the avoidance powers of the Capital Bankruptcy Code solely for SIPC's benefit. There is no authority in SIPA or the Bankruptcy Code for Mr. Picard to utilize the avoidance powers of a trustee to enrich SIPC at the Trust's expense.

7

check in the amount of $673,413.38 and considered the deposit into the newly-opened account as "new money."

28. The determination letter also makes no reference to the deposit of $85,000 into the Pauline Silverstein account on February 21, 2002. This deposit was the result of a transfer from Account No. 1ZA 521 (Silverstein Investment Club) to the Pauline Silverstein Account No. 1ZB 422, which in turn was transferred to the Trust Account No. 1ZB 594 on her death.

29. On September 16, 2009, the Silverstein Investment Club received a Notice from the Trustee informing the Club that its claim had been allowed for $1,152,878.15. Thus, the transferor account had sufficient principal in the account at the time of the transfer to effectuate the full transfer.

30. Deposits into the Pauline Silverstein Account, No. 1ZB 422, which on her death were transferred to the Trust Account totaled $758,413.38 ($673,413.38 + $85,000); withdrawals totaled $650,000,[20] and the net investment, on Mr. Picard's theory of net equity, was $108,413.38.

**Conclusion**

The Trust is entitled to an order compelling Mr. Picard and SIPC to immediately replace the securities in the Account to the extent of a valuation of $958,096.05 as of November 30, 2008, up to $500,000 for each of the Beneficiaries.

---

[20] See paragraphs 6, 8, 12, 13, 18, and 19.

8

The Trust is entitled to have its claim recognized in the amount of $958,096.05, consistent with the November 30, 2008 statement. In the alternative, the Trust is entitled to have its claim recognized in the amount of $108,413.38 using Mr. Picard's approach for calculating net equity.

November 18, 2009

By <u>Robert Silverstein</u>
9204 White Chimney Lane
Great Falls, Virginia 22066
(703) 303-9466

On behalf of Pauline Silverstein Revocable Trust, Robert Silverstein, Trustee; Robert Silverstein, Marilyn Medrano, Rita Levin, Michael Silverstein and Mindy Levy, Beneficiaries