# Ken Macher

354 Forrest Ave.  Fairfax, CA  94930


Clerk of United States Bankruptcy Court of the Southern District of New York
One Bowling Green
New York, NY  10004

December 3, 2009


Dear Sirs,

I am writing to appeal the Trustees' denial of my claim regarding our IRA account #1ZR049 (Bankruptcy Case # 08-1789 BRL) held by Bernard Madoff Securities. I am unable to afford an attorney at this time, so I ask your understanding of my layman's attempt to explain this appeal.

### Background

First, I wish to lay before you my financial and life situation as a context to understand my circumstances.  My wife and I lost our entire savings with Madoff.  We are both now in our 60's and a lifetime of savings is gone.  I had been retired for one year when BMIS went under.  When our money was lost I began trying to find work but remained unemployed for 9 months.  I recently found a part time, temporary consulting project that has enabled us, for the moment, to just meet our ongoing obligations

Our home is our only remaining asset.  We are trying desperately to stay in our house for now, but are not sure if we will be able to.  We recently had to take in a tenant in order to be able to make the mortgage payment. However, we have property taxes which we may not be able to pay over time.

In addition, our medical expenses are a constant strain.  We are self insured and the cost of our medical insurance is very high.  Since Madoff failed, we have had to reduce our medical coverage in order to afford the premiums so that it now only covers catastrophic conditions and all other medical expenses are out-of-pocket. I have a painful back condition and arthritis but have had to stop ameliorative treatment.

My wife and I have no pension and no resources for sickness or old age. The only money we had was with Madoff.

RECEIVED DEC - 7 2009 U.S. BANKRUPTCY COURT, SDNY

## The Basis for Appeal

For sixteen years I steadily contributed to our IRA account and only once, in all those years, did I make a withdrawal from which I received any funds. That withdrawal was for $10,400 in 1994.

The denial of our claim, and the focus of my appeal is based on one transaction dated August 14, 2007. The history of transactions in this account is not in dispute and the records I submitted to the Trustee are identical to his own finding of fact. The relevant history of this specific transaction is as follows:

On August 10, 2007, I placed a phone order to Madoff to transfer $1,000,000 to FiServe, the trustee for my IRA. I simultaneously instructed FiServe to move the entire $1,000,000 into Lakeview Investments LLC which is invested entirely in BMIS. FiServe received those funds on August 14, and executed the transfer to Lakeview. Records from FiServe and Lakeview verify these transfers. Those funds remained in my IRA at all times and we never received any of the money so transferred. The funds simply went from one Madoff account to another Madoff account via FiServe and Lakeview. My family and I never took possession of, or even had custody of, any of this money nor did we spend a single dollar. I continued to receive regular reports on my IRA from both Madoff accounts that held my IRA. Needless to say, all of the money has now been lost.

Our claim has been denied because this transaction has been classified as a "withdrawal". The Trustee concluded that because the funds were "withdrawn" from the Madoff account, we are deemed to have actually received those funds. As a consequence of that decision, the Trustee has further concluded that we received funds in excess of what we deposited over the history of the account. Therefore, we are not entitled to any relief. Such a conclusion is not only factually incorrect but also creates and enforces a rule set up by the Trustee to the detriment of all investors who are in a similar situation as I am. Factually, we never received any of the money we are deemed to have received. The money simply was moved from one Madoff account to another Madoff account in what was effectively nothing more than a transfer. Equating this transaction with a withdrawal in which the investor actually received the funds ignores the reality of the circumstances and is grossly unfair.

Furthermore, the Trustee has established a rule that treats two distinct classes of investors the same, when in fact, the circumstances demand that they be treated differently. One class of investors withdrew funds, took possession and thereby benefited. In our situation, as with other investors similarly situated, this did not occur. The money in

question never left BMIS and we never received any benefit from the transfer. Treating these two classes of investors as one and the same is a significant betrayal of the principles of justice and fairness and does not take into account the most basic facts. It penalizes an entire group of people without taking into account whether they deserve such penalty based on the facts. Such a conclusion, we believe, also betrays the principles and mission of SIPC, to compensate innocent victims of fraud.

In addition, there is another, secondary reason, supporting the granting of our claim. At the time of the $1,000,000 transfer in August 2007, our BMIS retirement account value was listed as approximately $1.6 million. According to the Trustee, all but $365,582 is defined as non-existent. However, there are other cases in which the Trustee is treating transfers between accounts as not actually having happened because the money thought to be transferred is also considered non-existent. If this reasoning were to be accepted, then a critical question arises in this particular case: did the $365,000 that *did* exist remain in our first Madoff account, or was it transferred to the second Madoff account? It is arbitrary, capricious and without any support whatsoever, to assume that the principal we actually contributed and saved over all these years was entirely in the pool of funds that were transferred to the second Madoff account and therefore no longer exists. It is just as reasonable, and certainly more just and compassionate, to assume that these funds remained in our first Madoff account. The only effect of such a conclusion by the Trustee is to deprive us of some small relief from the loss of our entire investment.

Lastly, I am aware that others are objecting to the formula used by the Trustee's to determine the "net equity" of BMIS accounts. I want to be clear that by not laying out a logical challenge to the Trustee's ruling on this matter does not imply agreement. At the very least it seems completely unrealistic and unjust to assume zero increase in invested assets over a 16 year period. Some rate of equitable interest and rate of return must be factored in. In general I reserve the right to revise or amend my appeal based on further information and/or relevant legal appeals of others.

Thank you for your thoughtful consideration of the unique elements of our case, which are so critical to our family and our future.

Sincerely,

Ken Macher