SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
UNITED STATES FIRE INSURANCE COMPANY,

                             Plaintiff,   : Index No.: 603284/09

      v.                                     : <u>SUMMONS</u>

NINE THIRTY FEF INVESTMENTS, LLC, and
NINE THIRTY VC INVESTMENTS, LLC,   : Date Index No. Purchased:
                                                   NEW YORK
                                             COUNTY CLERK'S OFFICE
                          Defendants.
------------------------------------------------------------X   OCT 28 2009

TO THE ABOVE-NAMED DEFENDANTS:   NOT COMPARED
                                                    COPY FILE

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorney within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after services is complete if this summons is not personally delivered to you within the State of New York.

    In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue in New York County is the defendants' principal place of business which is Carnegie Hall Tower, 152 West 57th Street, 56th Floor, New York, New York 10019.

Dated: New York, New York
         October 28, 2009.

                                                  By: _____
                                                       John P. Higgins
                                                      Attorneys for Plaintiff
                                                      D'Amato & Lynch, LLP
                                                      70 Pine Street
                                                      New York, New York 10270-0110
                                                      (212) 909-2036



EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------X
UNITED STATES FIRE INSURANCE
COMPANY,

                     Plaintiff,

                  v.

NINE THIRTY FEF INVESTMENTS, LLC,
AND NINE THIRTY VC INVESTMENTS,
LLC,

                     Defendants.
----------------------------------------------------------X

INDEX NO. 603284/09

**COMPLAINT**

      Plaintiff, United States Fire Insurance Company ("U.S. Fire"), through its attorneys, D'Amato & Lynch, LLP, as and for its complaint in the above-entitled action, alleges as follows:

I
**PARTIES**

      1.    U.S. Fire is a Delaware corporation with its principal place of business in New Jersey.

      2.    Nine Thirty FEF Investments, LLC ("FEF") and Nine Thirty VC Investments, LLC ("VC") are limited liability companies with their principal place of business in New York County, New York.

## II
## JURISDICTION AND VENUE

3. This court has jurisdiction in this action pursuant CPLR §§301 et seq., and venue is proper under CPLR §503, based upon the fact that FEF and VC maintain their principal place of business in the City and County of New York.

## III
## NATURE OF THE COMPLIANT

4. This coverage action involves the rights and obligations of the parties under two Financial Institution Bonds (the "Bonds"), issued by U.S. Fire to FEF and to VC. FEF and VC are among the numerous victims of the well-publicized Ponzi scheme perpetrated by Bernie Madoff ("Madoff") and Bernard L. Madoff Investment Securities ("Madoff Securities"). FEF and VC submitted claims to U.S. Fire under the Bonds, claiming losses of $9,232,811.71 and $5,536,493.01, respectively, and requesting U.S. Fire to indemnify FEF and VC under the Bonds for the full amount of such alleged losses, plus an additional $25,000.00 each in claims expense. U.S. Fire has denied FEF and VC's claim, and now requests this Court to enter judgment finding that the Bonds are rescinded and declared void *ab initio* or, alternatively, declare that the Bonds do not provide coverage for the losses incurred by FEF and VC.

5. As set forth below, an actual and justiciable controversy exists between the parties.

## IV
## FACTUAL ALLEGATIONS

### A. The Financial Institution Bonds

6. U.S. Fire issued to FEF that certain Financial Institution Bond, Standard Form No. 14, revised to October 1987, No. 626-031495-9 (the "FEF Bond"), with an effective date of February 1, 2008, to February 1, 2009. A true and accurate copy of the FEF Bond is attached hereto as **Exhibit 1** and incorporated herein by reference.

7. U.S. Fire issued to VC that certain Financial Institution Bond, Standard Form No. 14, revised to October 1987, No. 626-031565-2 (the "VC Bond"), with an effective date of March 1, 2008, to March 1, 2009. A true and accurate copy of the VC Bond is attached hereto as **Exhibit 2** and incorporated herein by reference.

### B. FEF and VC Invest With Madoff Securities

8. As their names imply, FEF and VC are investment companies, formed to "acquire, directly or indirectly, and hold, invest, and trade in securities (including interests in hedge funds, fund of funds and other funds and other pooled investment vehicles) and other financial instruments and rights and options relating thereto." FEF and VC were advised as to what investments to make by Nine Thirty Capital, which is headquarted in New York, New York.

9. At the recommendation of Nine Thirty Capital, whose principal Stuart Rabin was already acquainted with Madoff, FEF and VC opened discretionary brokerage accounts with Madoff Securities. FEF and VC signed the following documents in connection with their respective accounts with Madoff Securities: (1) Customer Agreement; (2) Option Agreement; and (3) Trading Authorization Limited to

3

Purchases and Sales of Securities and Options. The Customer Agreement refers to FEF/VC as the "Customer" and to Madoff Securities as the "Broker" and states that "the Broker is acting as the Customer's agent." The Trading Authorization gave Madoff discretionary trading authority, as follows:

> The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.
>
> In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades. All purchases, sales or trades shall be executed strictly in accordance with the established trading authorization directive.
>
> The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

10. FEF and VC did not pay Madoff Securities any fees for investment advice and did not receive any investment advice from Madoff Securities. Rather, Madoff Securities was to be compensated by charging commissions on the trades it chose to execute on behalf of FEF and VC.

11. FEF and VC made initial deposits of funds with Madoff Securities and, over the course of several years, FEF and VC made additional deposits with Madoff

4

Securities. FEF and VC also made withdrawals from time to time from their accounts with FEF and VC.

12. The net amount deposited by FEF with Madoff Securities, after deducting withdrawals paid by Madoff Securities to FEF, is $7,218,000.

13. The net amount deposited by VC with Madoff Securities, after deducting withdrawals paid by Madoff Securities to FEF, is $1,773,100.

## C. Madoff and Madoff Securities Operate A Ponzi Scheme

14. Madoff Securities issued monthly account statements to FEF and VC that noted the deposits into and withdrawals out of the accounts. The statements also listed various purchases and sales of blue chip stocks and U.S. Treasury Bills, plus transfers into and out of money market funds, none of which actually occurred, according to investigators and as acknowledged by Madoff at his guilty plea hearing. Rather, Madoff Securities simply stole the monies deposited by Customers such as FEF and VC.

15. On December 11, 2008, the SEC filed a Complaint against Madoff and Madoff Securities in the United States District Court for the Southern District of New York, pursuant to which the SEC charged them with securities fraud for a multi-billion dollar Ponzi scheme. The Complaint sought an emergency injunction to stop Madoff from accepting any more investments or from "distributing the remaining assets in an unfair and inequitable manner." The Complaint also sought an asset freeze and the appointment of a receiver for Madoff Securities. According to the Complaint, at the time he revealed his scheme to two senior employees, Madoff said that his business was "just one big lie" and "basically, a giant Ponzi scheme." Madoff also allegedly indicated to those employees that he only had approximately $200 million to $300 million left and

5

that investor losses were as much as $50 billion. The SEC also issued a press release on December 11 concerning the action filed against Madoff and Madoff Securities.

16. On February 9, 2009, Madoff and Madoff Securities entered into a partial judgment with the SEC, pursuant to which they stipulated to the injunctive relief sought by the SEC and agreed to disgorgement and a civil penalty, to be determined later by the SEC. In March 2009, Madoff was charged with eleven felony counts in a criminal Information that alleged from "at least as early as the 1980s through on or about December 11, 2008, BERNARD L. MADOFF, the defendant, perpetrated a scheme to defraud the clients of BLMIS [Madoff Securities] by soliciting billions of dollars of funds under false pretenses, failing to invest investors' funds as promised, and misappropriating and converting investors' funds to MADOFF's own benefit and the benefit of others without the knowledge or authorization of the investors." The Information further charged that to "execute the scheme, MADOFF solicited and caused others to solicit prospective clients to open trading accounts with [Madoff Securities]." On March 12, 2009, without entering into a plea bargain, Madoff pleaded guilty to all the charges.

### D.  FEF and VC Submit Bond Claims

17. On December 12, 2008, FEF and VC, by email from their broker Frank Crystal & Company ("Frank Crystal"), notified U.S. Fire that they were asserting claims under the Bonds for losses caused by Madoff Securities.

18. On June 9, 2009, FEF and VC submitted to U.S. Fire their Proofs of Loss, seeking indemnification under the Bonds for losses relating to their accounts with Madoff Securities. A true and accurate copy of the FEF Proof of Loss is attached

6

hereto as **Exhibit 3** and incorporated herein by reference. A true and accurate copy of the VC Proof of Loss is attached hereto as **Exhibit 4** and incorporated herein by reference.

19. By letter dated October 28, 2009, from Michael Keeley, counsel for U.S. Fire, to Peter N. Flocos, counsel for FEF and VC (the "Denial Letter"), U.S. Fire notified FEF and VC that, having considered FEF and VC's Proofs of Loss, and other documents and information provided by FEF and VC, the Bonds are void *ab initio* and had been rescinded due to FEF's and VC's incorrect statements of material facts in connection with their applications and purchase of the Bonds, and that, in the alternative, there is no coverage for FEF and VC's loss under the Bonds. U.S. Fire thusly notified FEF and VC that U.S. Fire had denied FEF and VC's claim for indemnification. A true and accurate copy of the Denial Letter is attached hereto as **Exhibit 5** and incorporated herein by reference.

20. In the Denial Letter, U.S. Fire tendered to FEF and VC the full amount of the Bond premiums. If such premiums are not accepted, St. Paul will deposit such premiums into the registry of this Court, prior to entry of final judgment in this matter.

V
## CONTROVERSY AND RIPENESS

21. As set forth above, U.S. Fire notified FEF and VC that there was no coverage under the Bonds for FEF and VC's claimed losses. In correspondence from their counsel subsequent to their Proofs of Loss, FEF and VC demanded that U.S. Fire pay FEF and VC's claim in full. U.S. Fire thus seeks a judgment from this Court declaring that the Bonds are void *ab initio* and are rescinded due to FEF's and VC's

7

incorrect statements of material facts in connection with their applications and purchase of the Bonds, that in any event there is no coverage for FEF and VC's loss under the Bonds, and that U.S. Fire properly denied FEF and VC's claim, either for the reasons stated in the Denial Letter, or based upon other provisions of the Bonds.

## VI
## FIRST CAUSE OF ACTION

### THE BONDS ARE VOID AB INITIO AND ARE RESCINDED BECAUSE THEY WERE ISSUED IN RELIANCE UPON MATERIAL MISREPRESENTATIONS

22.  U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 21 of this Complaint as though specifically alleged herein.

23.  FEF was formed on February 1, 2006. It initially obtained a fidelity bond from another insurer, Quanta, with a policy period of February 1, 2006, through February 1, 2007. Quanta ceased doing business. As a result, FEF applied to U.S. Fire for a fidelity bond, and on March 2, 2006, U.S. Fire issued its initial Financial Institution Bond to FEF (the "2006-07 FEF Bond"). In applying to U.S. Fire for the 2006-07 FEF Bond, FEF submitted a copy of the Quanta bond, FEF's application for the Quanta bond, and a spreadsheet that listed FEF's investments, including $5,000,000 listed as being invested with Madoff Securities as of February 1, 2006. Thereafter, U.S. Fire renewed the 2006-07 FEF Bond with a new policy period of February 1, 2007, through February 1, 2008 (the "2007-08 FEF Bond"). Thereafter, FEF renewed the 2007-08 FEF Bond with U.S. Fire, with a new policy period of February 1, 2008, through February 1, 2009. Included with FEF's application for this last renewal – the FEF Bond

8

– was an application dated January 16, 2008, signed by John Small, CFO of FEF, as well as FEF's 2006 audited financial statements.

24. Note 2 to the FEF 2006 audited financial statements, which FEF's broker, Frank Crystal, provided to U.S. Fire along with the application prior to issuance of the FEF Bond, stated that FEF's Madoff Securities investment was of cash and in a managed account:

> The Company [FEF] has provided cash to Bernard L. Madoff Investment Securities LLC, a portfolio manager, (the 'Portfolio Manager") which has discretion over the investment strategies of its managed portfolio. The underlying investments in the managed account include investments in securities and securities sold, not yet purchased, traded on a national securities exchange or listed on Nasdaq which are valued at the last reported sales price in the last business day of the year. Securities owned and securities sold, not yet purchased, that are not listed on a securities exchange or quoted on Nasdaq for which market quotations are readily available will be valued at the most recent quoted bid and ask process, respectively.
>
> . . . .
>
> As of December 31, 2006, all of the investments in the managed account reflected in the statement of assets and liabilities were short-term U.S. Treasury obligations held with the Portfolio Manager.

25. The FEF financial statements stated in two places that, as of December 31, 2006, FEF's investment with Madoff Securities had a value of $6,565,612. On page 3, under "ASSETS," $6,565,612 was listed under "Investments held in managed account, at fair value (cost $6,565,612)". Page 4 contained the following entry under "SCHEDULE OF INVESTMENTS," indicating that the amounts invested were held in U.S. Treasury Bills:

**Investments held in managed account:**
Managed account at Bernard L. Madoff Investment Securities LLC:

9

| | | | |
|---|---|---|---|
| $ 3,325,000 | United States Treasury Bill, due March 29, 2007 | 6.57% | $ 3,284,435 |
| $ 3,325,000 | United States Treasury Bill, due April 5, 2007 | 6.57 | $ 3,281,177 |
| | Total investments held in managed account (cost $6,565,612) | 13.14% | $ 6,565,612 |

26. VC was formed on February 23, 2005. VC initially applied for a fidelity bond from U.S. Fire in February 2007. In applying for such bond, VC submitted an application dated February 28, 2007, representing the amount of monies invested by VC. U.S. Fire issued its initial Financial Institution Bond to VC, with a policy period of March 1, 2007, through March 1, 2008 (the "2007-08 VC Bond"). In February 2008, VC applied to U.S. Fire to renew the 2007-08 VC Bond. Included in the application package which VC's broker, Frank Crystal, provided to U.S. Fire along with the application prior to issuance of the VC Bond were VC's audited financial statements, including a Schedule of Investments showing investments with Madoff Securities valued at $6,318,784.

27. Note 2 to the VC financial statement states that VC's investment with Madoff Securities was cash in a managed account:

> The Company [VC] has provided cash to Bernard L. Madoff Investment Securities LLC, a portfolio manager, (the 'Portfolio Manager") which has discretion over the investment strategies of its managed portfolio. The underlying investments in the managed account include investments in securities and securities sold, not yet purchased, traded on a national securities exchange or listed on Nasdaq which are valued at the last reported sales price in the last business day of the year. Securities owned and securities sold, not yet purchased, that are not listed on a securities exchange or quoted on Nasdaq for which market quotations are readily available will be valued at the most recent quoted bid and ask process, respectively.

. . . .

As of December 31, 2006, all of the investments in the managed account reflected in the statement of assets and liabilities were short-term U.S. Treasury obligations held with the Portfolio Manager.

28. The VC financial statements stated in two places that, as of December 31, 2006, VC's investment with Madoff had a value of $6,318,784. On page 3, under "ASSETS", $6,318,784 was listed under "Investments held in managed account, at fair value (cost $6,565,612)". Page 4 contained the following entry under "SCHEDULE OF INVESTMENTS," again indicating that the amounts invested were held in U.S. Treasury Bills:

**Investments held in managed account:**
Managed account at Bernard L. Madoff Investment Securities LLC:

| $ 3,200,000 | United States Treasury Bill, due March 29, 2007 | 4.71% | $ 3,160,960 |
|---|---|---|---|
| $ 3,200,000 | United States Treasury Bill, due April 5, 2007 | 4.70 | $ 3,157,824 |
| | Total investments held in managed account (cost $6,318,784) | 9.41% | $ 6,318,784 |

29. The above statements and representations made by FEF and VC in applying for each of the fidelity bonds issued by U.S. Fire, including the FEF Bond and the VC Bond, were material and false as to the amount and nature of assets held in managed accounts at Madoff Securities. In reality, Madoff Securities had already stolen the amounts invested by FEF and VC and thus was not holding such amounts for FEF and VC as FEF and VC represented to U.S. Fire. Further, Madoff Securities had not purchased, and was not holding, any United States Treasury Bills for the account of FEF or VC as FEF and VC represented to U.S. Fire. In deciding to issue the Bonds to FEF and VC, U.S. Fire relied on these statements and representations to its detriment.

Had U.S. Fire known the true facts, it would not have issued the Bonds to FEF and VC, or it would not have included Madoff Securities in the list of Outside Investment Advisers in Rider #9 to the Bonds.

30.  Therefore, U.S. Fire is entitled, by applicable law and principles of equity, to judgment that the Bonds are void *ab initio* and are rescinded.

## VII
## SECOND CAUSE OF ACTION

### RESCISSION OF THE BONDS UNDER RIDER #5

31.  U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 30 of this Complaint as though specifically alleged herein.

32.  Rider #5 to each of the Bonds provides, in pertinent part, as follows:

It is agreed that:

1. General Agreement D, REPRESENTATION OF INSURED, of the attached bond is deleted in its entirety and replaced by the following:

    REPRESENTATION OF INSURED

2. The Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of this bond.

    Any intentional misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for rescission of this bond.

33.  As previously noted, in connection with the application for and purchase of the Bonds, FEF and VC furnished financial statements and other information which contained incorrect statements of material facts, upon which U.S. Fire relied in issuing the Bonds.

12

34. Pursuant to the express terms of Rider #5, U.S. Fire is entitled to a judgment that the Bonds are void *ab initio* and are rescinded.

## VIII
## THIRD CAUSE OF ACTION

### JUDGMENT THAT FEF's AND VC'S CLAIMs are NOT COVERED UNDER RIDER #9 OF THE BONDS

35. U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 34 of this Complaint as though specifically alleged herein.

36. FEF and VC seek coverage for their losses caused by Madoff Securities under Rider #9 of each of the Bonds, which provides, in pertinent part, as follows:

### OUTSIDE INVESTMENT ADVISOR RIDER

1. The following Insuring Agreement will be added to the policy:

**Outside Investment Advisor**

Loss resulting directly from the dishonest acts of any Outside Investment Advisor, named in the Schedule below, solely for their duties as an Outside Investment Advisor, on behalf of the Insured, such loss limited to the Insured's investment interest, committed alone or in collusion with others, except with a director or trustee of the Insured who is not an Employee, provided however the Insured shall first establish that the loss was directly caused by dishonest acts of any Outside Investment Advisor which results in improper personal financial gain to such Outside Investment Advisor and which acts were committed with the intent to cause the Insured to sustain such loss.

The following Outside Investment Advisors shall be added as follows:

. . . .

Bernard L. Madoff Investment Securities

. . . .

2. By adding to Section 1. Definitions, the following:

13

(t) Outside Investment Advisor means any firm, corporation or individual named in the Schedule for the Insuring Agreement, Outside Investment Advisor, and an employee, officer or partner of such Outside Investment Advisor.

. . . .

37. However, the losses claimed by FEF and VC did not result directly from the dishonest acts of Madoff Securities acting solely as an outside investment advisor, on behalf of FEF and VC. Rather, the losses resulted from the dishonest acts of Madoff Securities acting, at least in part, as a broker.

38. Therefore, U.S. Fire seeks judgment declaring that FEF's and VC's losses are not covered under Rider #9 of the Bonds, nor under any other provision of the Bond.

## IX
## FOURTH CAUSE OF ACTION

### EXCLUSION (X) OF THE BONDS EXCLUDES COVERAGE FOR FEF AND VC'S CLAIMED LOSSES

39. U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 38 of this Complaint as though specifically alleged herein.

40. Exclusion (x) of the Bonds excludes coverage for:

[L]oss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities, commodities, money, mortgage, real estate, loan, insurance, property management, investment banking broker, agent or other representative of the same general character.

41. FEF's and VC's losses resulted directly or indirectly from dishonest and fraudulent acts committed by Madoff and Madoff Securities, non-Employees who are securities brokers. As a result, Exclusion (x) excludes coverage for FEF and VC's claimed losses.

14

42. Therefore, in the alternative, U.S. Fire is entitled to judgment that FEF and VC's losses are excluded by Exclusion (x) of the Bonds.

X
### FIFTH CAUSE OF ACTION

### AMOUNT OF LOSS POTENTIALLY COVERED

43. U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 42 of this Complaint as though specifically alleged herein.

44. FEF and VC received monthly account statements from Madoff Securities. However, these statements were fabrications, as the trading transactions reflected therein never occurred. Thus, the gains reflected on the account statements were fictitious. Nevertheless, FEF and VC improperly seek indemnity for the amount of the ending balances reflected on the account statements, including the fictitious gains.

45. Loss covered under a fidelity bond is limited to an actual depletion of the insured's funds. Further, the insuring clause upon which FEF and VC rely, Rider #9, provides that any loss is "limited to the Insured's investment interest," and that coverage is limited to loss "resulting directly from the dishonest acts of any Outside Investment Advisor." Additionally, Exclusion (s) of the Bonds provides that the Bonds do not cover "potential income, including but not limited to interest and dividends, not realized by the Insured or by any customer of the Insured." And, Exclusion (v) of the Bonds provides that the Bonds do not cover "indirect or consequential loss of any nature." Thus, even if FEF's and VC's losses are covered under the Bonds (which they are not), FEF and VC would only be entitled to the net amount of the monies they actually paid to Madoff

Securities, after deducting all withdrawals taken out of the accounts, and also after then applying the applicable deductible.

46. Therefore, in the alternative, U.S. Fire is entitled to judgment that FEF and VC's losses are limited to the net amount of the monies they actually paid to Madoff Securities, after deducting all withdrawals taken out of the accounts, and also after then applying the applicable deductible.

## XI
## OTHER COVERAGE DEFENSES

47. U.S. Fire incorporates herein by reference each of the allegations contained in Paragraphs 1 through 46 of this Complaint as though specifically alleged herein.

48. Other terms and conditions of the Bonds may ultimately be implicated. By seeking a declaration of coverage with respect to the issues identified in this Complaint, U.S. Fire in no way waives, and expressly and fully reserves, the right to rely on any other such provisions of the Bonds. Nothing in this Complaint should be construed as a waiver by U.S. Fire of any other coverage defenses under the Bonds or at law.

**WHEREFORE**, for the foregoing reasons, U.S. Fire Insurance Company respectfully requests that the Court enter judgment in its favor as set forth above, finding that the Bonds are void *ab initio* and are rescinded or, in the alternative, that there is no coverage for FEF and VC's losses and that such losses are excluded under the Bonds for the reasons set forth above, together with such other and further relief, both at law and equity, to which U.S. Fire may be entitled.

Dated: New York, New York
October 28, 2009

Yours, etc.,

D'AMATO & LYNCH

By: *[signature]*
JOHN P. HIGGINS
jhiggins@damato-lynch.com
70 Pine Street
New York, NY 10270-0110
Telephone: (212) 909-2036

and

**MICHAEL KEELEY**
*(Pro Hac Vice Motion to be Filed)*
Texas Bar No. 11157800
michael.keeley@strasburger.com
**JOHN R. RIDDLE**
*(Pro Hac Vice Motion to be Filed)*
Texas Bar No. 16890200
john.riddle@strasburger.com
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, TX 75202
Telephone: (214) 651-4300
Telecopier: (214) 651-4330

**ATTORNEYS FOR PLAINTIFF
U.S. FIRE INSURANCE COMPANY**