1  DAVID I. LUSTIG
   P.O. Box 532
2  Pescadero, CA 94060
   Tel: (415)492-2041
3  Fax: (415)492-2108

4
   Reisman, Peirez & Reisman, L.L.P.
5  1305 Franklin Avenue, Suite 270
   Garden City, NY 11530
6  Tel: (516)746-7799
   Fax: (516)742-4946
7
   *Attorneys for David I. Lustig*
8

9  **UNITED STATES BANKRUPTCY COURT**
   **SOUTHERN DISTRICT OF NEW YORK**
10                                              )   Bankruptcy Case. No. 08-01789 (BRL)
11 SECURITIES INVESTOR PROTECTION              )
   CORPORATION,                                )
12                                              )   SIPA LIQUIDATION
                     Plaintiff,                 )
13                                              )
                                                )
14          v.                                  )
                                                )
15 BERNARD L. MADOFF INVESTMENT               )
   SECURITIES LLC.,                            )
16                                              )
                     Defendant.                 )
17 _____)

18

19           **OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

20         David Lustig, account holder of NTC & Co., FBO David Lustig (IRA), hereby objects to

21 the Notice of Trustee's Determination of Claim dated October 19, 2009, ("Determination

22 Letter"), attached as Exhibit A, as described herein.

23

24

25

- 1 -

# BACKGROUND

1.      David I. Lustig, account holder of NTC & Co., FBO David Lustig (IRA) (hereinafter "David Lustig or "Lustig") is a "customer," as defined by the Securities Investor Protection Act ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.      Mr. Lustig's final BMIS statement, dated November 30, 2008, states that he owns securities valued at $1,133,322 ("Final BMIS Statement").

3.      On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. Id.; 15 U.S.C. 78fff-1(a).

4.      On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. See Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.      The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . .*" See Order at 6 (emphasis added) [Dkt. No. 12]

6.      On or about June 30, 2009, Mr. Lustig submitted a customer claim form to SIPC, setting forth his claim in the amount of $1,133,322, the amount set forth on Mr. Lustig's Final BMIS Statement. See David Ivan Lustig, IRA Claim for Acct. No. 1-ZR297-3. ("Lustig IRA

Objection to Trustee's Determination of Claim

Customer Claim").

7.    On October 19, 2009, the BMIS Trustee sent Mr. Lustig the Determination Letter disallowing Mr. Lustig's claim in its entirety. See Determination Letter (Exhibit A).

8.    Mr. Lustig hereby objects to the Determination Letter for the reasons described below.

### GROUNDS FOR OBJECTION

9.    First Objection. The Determination Letter fails to comply with the Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with Mr. Lustig's IRA Customer Claim was his Final BMIS Statement showing a final balance of $1,133,322. See Lustig IRA Customer Claim. The Final BMIS Statement is the best evidence of the amount owed based on the Debtor's books and records. Accordingly, the claim should be allowed in the full amount of $1,133,322.

10.    Second Objection. The Trustee has set forth no legal basis for disallowing the Lustig IRA Customer Claim in full as filed. The only explanations set forth in the Determination Letter are that "[n]o securities were ever purchased for your account." Determination Letter at 1 (Exhibit A). This purported ground for disallowance does not have any statutory or other legal basis. Moreover, the Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, see Order [Dkt. No. 12];

(b)    is inadequate to rebut the prima facie validity of the Lustig IRA Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the

- 3 -

1  objection is based. See, e.g., Collier on Bankruptcy 3007.01(3) (15th ed.) ("[A]n objection to a

2  claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are

3  disputed; it should allege facts necessary to affirmative defenses; and it should describe the

4  theoretical bases of those defenses."); In re Enron Corp., No. 01-16034, 2003 Bankr. LEXIS

5  2261, at * (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

6      11.    Third Objection. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim

7  shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon

8  information and belief, the Trustee objects to the Lustig IRA Customer Claim on the ground that

9  "net equity" should be determined by principal contributed to the account less any withdrawals,

10  without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. See

11  Determination Letter Table 1. This is incorrect for the following reasons:

12      (a)    The Trustee's construction of the statute ignores SIPA's express language which

13  defines "net equity" as

the dollar amount of the account or accounts of a customer, to be determined by --

(A)    calculating the sum which would have been owed by the debtor to such customer
if the debtor had liquidated, by sale or purchase on the filing date, all securities positions
of such customer (other than customer name securities reclaimed by such customer);
minus

(B)    any indebtedness of such customer to the debtor on the filing date;
*********

15 U.S.C. § 78111(11). The Trustee's proposed formulation has no support in the language of the

statute or interpreting case law and in fact, adds words and concepts to the statute which do not

exist.

(b)    SIPA's legislative history emphasizes Congress's intention that the statute protect

customer expectations by ensuring that customers of retail brokerage firms can rely on their

account statements. The BMIS statements received by Mr. Lustig stated that he owned a list of

blue chip securities. It makes no difference whether the securities were purchased:

- 4 -

Objection to Trustee's Determination of Claim

> A customer generally expects to receive *what he believes* is in his account at the time the
> stockbroker ceases business. But because securities may have been lost, improperly
> hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible
> to provide to customers that which they expect to receive, that is, securities which they
> maintained in their brokerage account. . . . By seeking to make customer accounts whole
> and returning them to customers in the form they existed on the filing date, the
> amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow

customer claims for wholly fictitious securities of nonexisting entities, here the securities set

forth on Mr. Lustig's Final BMIS Statement and prior statements were those of actual companies

listed on the stock exchange.

    (c)    The Trustee's Determination Letter is contrary to SIPC's own policies and

practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO,

and its actions in similar liquidation proceedings. For example, in the New Times SIPA

liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that

SIPC would replace securities listed on customer account statements, even if the securities had

never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question.
> Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted - -
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities
> positions.

- 5 -

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000). The Second Circuit's discussion of SIPC's claims processing in New Times further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions - - the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004). Mr. Lustig is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, his claim should be recognized in full.

12.     In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Mr. Lustig is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. See *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

- 6 -

Objection to Trustee's Determination of Claim

(a)     Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Mr. Lustig.

(b)     Under New York law, which is applicable here, customers are entitled to any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Mr. Lustig's deposits. See, e.g., Steinberg v. Sherman, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as ... conversion and unjust enrichment qualify for the recovery of prejudgment interest."); Eighteen Holding Corp. v. Drizin, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13.     Fourth Objection. The BMIS Trustee's action in reducing the amount shown on Lustig IRA Customer Claim by any prior gains reflected on his Final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination letter should be stricken. See Fed. R. Bankr. P. 7001(1); 7008.

14.     Fifth Objection. The Trustee sets forth in the Determination Letter a list of deposits and withdrawals from the BMIS account held by Mr. Lustig. There are more than one withdrawal acknowledged by the Trustee to be transfers from one BMIS account to at least one other BMIS account. In addition, Mr. Lustig did in fact withdraw $2,000,000 on July 25, 2007 (the "July 07 Withdrawal") (see page 4 of Exhibit A) for the purpose of investing, and which was immediately invested, with a third party feeder fund, which in turn invested said sum in Tremont Capital and HSBC Luxemburg/Senator. All of the July 07 Withdrawal was deposited indirectly

- 7 -

into one or more BMIS accounts. Mr. Lustig is entitled to a credit for the July 07 Withdrawal in addition to the acknowledged transfers into another BMIS account, resulting in a positive balance of $1,133,322. Mr. Lustig is entitled to receive immediate payment of $1,133,322, plus interest from the date of the determination and appropriate equitable relief as determined by the Court.

15.    Sixth Objection. In the event that the Court should determine that claimed gains on deposited funds should not be allowed and the Trustee's "net equity" method of calculating gains should be applied, then, in the alternative, Mr. Lustig is entitled to have his claims adjusted for inflation. The "net equity" approach adopted by the Trustee benefits investors who happened to invest late in BMIS accounts, or who never withdrew funds over the years. Conversely, the Trustee's "net equity" approach unjustly devalues and outright denies Mr. Lustig's claim, who invested earlier in his BMIS account and faces serious financial hardship as a result of the fraud. By way of example, assume that one claimant invested $500 in a BMIS account in 1987, and a second claimant invested $500 in 2007, and neither claimant withdrew any funds from their accounts. The Trustee's "net equity" approach would treat both amounts the same although the more recent contribution is worth about $415 less than the investment made more than 20 years ago. In order to avoid this gross inequity, and to make the Trustee's misguided "net equity" calculations at least somewhat more equitable, the value of Mr. Lustig's deposits should be adjusted for inflation and thereby increased. An adjustment for inflation would at least afford Mr. Lustig a more just and proper opportunity to claim a cash loss under the Trustee's objectionable "net equity" approach. It would also serve to put him on more equal footing with other investors in BMIS accounts.

## RELIEF REQUESTED

16.    For the reasons stated herein, the Lustig IRA Customer Claim should be allowed

Objection to Trustee's Determination of Claim

in its entirety.

17.     For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Lustig in the amount of $1,133,322, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

18.     The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. See Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Mr. Lustig will file a response.

19.     Mr. Lustig requests such other relief as may be just and equitable.

## CONCLUSION

20.     Mr. Lustig reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Lustig's right to object on any additional grounds.

21.     Mr. Lustig reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. See Fed. R. Bankr. P. 9014.

22.     Mr. Lustig reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

Objection to Trustee's Determination of Claim

1    23.    Mr. Lustig incorporates by reference all reservations of rights set forth in the

2  Lustig IRA Customer Claim.

3

4  Dated: December 17, 2009

5

6                                        DAVID I. LUSTIG

7                                *Account Holder of David Ivan Lustig IRA*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        10