**Schulte Roth & Zabel LLP**  Hearing Date: February 2, 2010
919 Third Avenue  Hearing Time: 10:00 AM (EST)
New York, New York  10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
William D. Zabel
Email:  william.zabel@srz.com
Marcy Ressler Harris
Email:  marcy.harris@srz.com
Frank J. LaSalle
Email:  frank.lasalle@srz.com

*Attorneys for the SRZ Claimants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff,<br><br>             v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |
| In re:<br><br>BERNARD L. MADOFF,<br><br>         Debtor. | |

**MEMORANDUM OF LAW SUBMITTED BY THE SRZ CLAIMANTS IN
RESPONSE TO THE SEC'S "CONSTANT DOLLAR" APPROACH TO "NET EQUITY"**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.    THE SEC'S APPROACH TO "NET EQUITY" IS INCONSISTENT WITH THE LANGUAGE, PURPOSE, AND PRIOR INTERPRETATIONS OF SIPA.. ..................... 2

II.   THE SEC'S APPLICATION OF SIPA IN THIS CASE IS INCONSISTENT WITH THE APPLICATION OF SIPA IN *NEW TIMES* ...................................................... 5

III.  THE SEC'S PROPOSED "CONSTANT DOLLAR" METHOD OF CALCULATING CLAIMANTS' NET INVESTMENTS DOES NOT ADDRESS THE INEQUITIES OF DENYING CLAIMANTS THEIR FULL SIPA CLAIMS .......... 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**                                         **PAGE(S)**

*In re New Times Sec. Servs., Inc.*,
   371 F.3d 68 (2d Cir. 2004).................................................................................................5

*In re New Times Sec. Servs., Inc.*,
   463 F.3d 125 (2d Cir. 2006) ............................................................................................5, 6

**STATUTES**

15 U.S.C. § 78fff-2(b) (2009) ..................................................................................................2, 3

15 U.S.C. § 78*lll*(11) (2009) ...................................................................................................1, 4

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 95-746 (1977)....................................................................................................1, 4

S. Rep. No. 95-763 (1978), *reprinted in* 1978 U.S.C.C.A.N. 765 ..................................................4

**MISCELLANEOUS**

Brief of Appellant SIPC, *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
   463 F.3d 125 (2d Cir. 2006) (No. 05-5527-bk), 2005 WL 5338148 ..........................................4

Brief for Appellants James W. Giddens as Trustee for the Liquidation of
   the Businesses of the Substantively Consolidated Estates of New Times
   Securities Services, Inc. and New Age Financial Services, Inc., and Securities
   Investor Protection Corporation, *In re New Times Sec. Servs., Inc.*,
   371 F.3d 68 (2d Cir. 2004) (No. 02-6166), 2003 WL 24132249............................................6-7

Brief of the Securities and Exchange Commission, Amicus Curiae, in Partial
   Support of the Position of Appellees, *In re New Times Sec. Servs., Inc.*,
   371 F.3d 68 (2d Cir. 2004) (No. 02-6166), 2003 WL 24132250...................................4, 6, 7-8

*Additional Reforms to SIPA*, Hearing Before the Capital Mkts., Ins., and
   Gov't Sponsored Enters., (Dec. 9, 2009) (Statement of Michael Conley,
   Deputy Solicitor, SEC) ....................................................................................................5, 6

Revenue Ruling 2009-09 ................................................................................................................9

Pursuant to the Court's Order Scheduling Adjudication of "Net Equity" Issue, dated September 16, 2009, the SRZ Claimants[1] respectfully submit this memorandum of law in response to the Memorandum of Law of the Securities and Exchange Commission Supporting the Trustee's Determination that Net Equity Should Not Be Based on Securities Positions Listed on Last Statements, and Supporting in Part Trustee's Determination that Net Equity Should Be Based upon Amounts Deposited Less Amounts Withdrawn (the "SEC Memorandum" or "SEC Mem.").

## PRELIMINARY STATEMENT

The Trustee, SIPC, and now the SEC have contrived to complicate the calculation of "net equity" that, under the Securities Investor Protection Act ("SIPA"), is altogether clear. SIPA plainly and unambiguously defines "net equity" as the liquidation value of a claimant's "securities positions" as of the filing date of the SIPA liquidation proceeding, less any amounts owed by the claimant to the broker. *See* 15 U.S.C. § 78*lll*(11). The purpose of a "net equity" claim by a customer of a failed broker-dealer is equally clear: to "assur[e] that a customer 'receive[s] what he believes is in his account at the time the stockbroker ceases business.'" (SEC Mem. at 10 (quoting H.R. Rep. No. 95-746 at 21 (1977)) (second alteration in original).) Thus, to calculate net equity where real securities are involved – as indisputably is the case here – a trustee first must determine the securities positions purportedly held in the claimant's account, which may be determined from trade confirmations and from a claimant's last account statement. Then, the trustee must calculate the market value of those securities on the filing date, and subtract any amounts owing to the broker.

---

[1] The SRZ Claimants are the 18 claimants identified in Exhibit A to the Memorandum Of Law Submitted By The SRZ Claimants In Opposition To The Trustee's Interpretation of "Net Equity," dated November 13, 2009 (the "SRZ Claimants' Memorandum"). References to the SRZ Claimants' November 13 submission are cited herein as "SRZ Mem. at ___." To avoid repetition of issues discussed in the SRZ Claimants' Memorandum, to the extent possible, this memorandum is addressed solely to issues raised for the first time by the SEC.

1

Disregarding SIPA's language, and Congress's intent in enacting SIPA, the SEC urges adoption of the Trustee's "cash-in/cash-out" approach, adjusted for inflation. Like the Trustee's approach to "net equity," the SEC's approach has no roots in the language of SIPA or in its legislative history, nor does it promote investor protection, as SIPA requires. The SEC's approach should be rejected and SIPA should be enforced as written.

## ARGUMENT

### I. THE SEC'S APPROACH TO "NET EQUITY" IS INCONSISTENT WITH THE LANGUAGE, PURPOSE, AND PRIOR INTERPRETATIONS OF SIPA.

The Trustee, purportedly grounding his "cash-in/cash-out" approach to "net equity" in ordinary bankruptcy case law, argues that investors in Ponzi schemes are entitled to recover only their investments in the scheme. (*See* Trustee Mem. at 30-33.) As it must, the SEC rejects that position, acknowledging that "[b]rokerage firm customers caught in Ponzi schemes that result in SIPA liquidations are treated differently than investors in Ponzi schemes that do not involve SIPC-member brokerage firms . . . . While customers in Ponzi schemes may be limited to a return of their initial principal, customers in SIPA liquidations have claims for the net equity in their accounts." (SEC Mem. at 10.)

Nevertheless, the SEC contends that, in this case, a claimant's "net equity" is his investment principal (albeit on an inflation-adjusted basis) – not the securities positions reflected on his last account statement – because those securities positions purportedly are not "'ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee.'" (SEC Mem. at 3 (quoting 15 U.S.C. § 78fff-2(b)).) According to the SEC, BLMIS' "other books and records" contradict BLMIS customers' account statements and confirmations because they show that no securities ever were purchased, or could have been purchased in "real market trading." (*Id.* at 3.) Moreover, according to the SEC, claimants

2

cannot establish "net equity" "to the Trustee's satisfaction" because they cannot show that they paid for the securities in their accounts. (*Id.* at 3-4.)

The SEC's arguments for ignoring SIPA's definition of "net equity" are no more meritorious than the baseless Ponzi-scheme justification put forward by the Trustee. Indeed, the SEC's arguments are based on a misreading and misapplication of SIPA Section 8(b), which provides that

> the trustee shall promptly discharge . . . all *obligations* of the debtor to a customer relating to, *or net equity claims* based upon, securities or cash, by the delivery of securities or the making payments to or for the account of such customer . . . insofar as such *obligations* are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee. . . . For purposes of this subsection, the court shall, among other things--
>
> (1) with respect to net equity claims, authorize the trustee to satisfy claims out of moneys made available to the trustee by SIPC . . .: and
>
> (2) with respect to claims relating to, or net equities based upon, securities of a class and series of an issuer which are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee, *authorize the trustee to deliver securities* of such class and series if and to the extent available to satisfy such claims in whole or in part . . . .

15 U.S.C. § 78fff-2(b) (emphasis added).

Under the plain terms of Section 8(b), the "books and records" provisions are only relevant to "obligations of the debtor," which are distinguished from "net equity claims" by the disjunctive "or," and instances where a trustee is being authorized "to deliver securities." Neither of those circumstances is present in this case.

Moreover, even if Section 8(b)'s "books and records" provision were applicable to "net equity" claims, it would not address how "net equity" claims are to be calculated. The

3

calculation of "net equity" claims is governed by SIPA Section 16(11), which defines "net equity" as the filing-date liquidation value of a claimant's securities position. Section 16(11) makes no mention of "books and records." *See* 15 U.S.C. § 78*lll*(11). The Court should not permit the SEC to read such a "books and records" requirement into the statute, and should not permit the determination to be based on "books and records" to which BLIMS customers did not have access as of the filing date.

Moreover, the SEC's interpretation of "net equity," like the Trustee's, improperly shifts the focus of the inquiry from the legitimate expectations of claimants to the realities of the securities transactions underlying their claims. (*See* SRZ Mem. at 8.) The SEC itself argued against this shift in connection with the New Times SIPA liquidation, concluding that "SIPA should be interpreted consistently with a customer's legitimate expectations based on confirmations and account statements," not the realities of the transactions at issue. Brief of the Securities and Exchange Commission, Amicus Curiae, in Partial Support of the Position of Appellees, at 7, *In re New Times Sec. Servs., Inc.*, 371 F.3d 68 (2d Cir. 2004) ("*New Times I*") (No. 02-6166), 2003 WL 24132250, at *13 ("SEC Br. *New Times*"); *see also* Brief of Appellant SIPC at 23, *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125 (2d Cir. 2006) ("*New Times II*") (No. 05-5527-bk), 2005 WL 5338148, at *12 ("SIPC Br. *New Times II*") ("[R]easonable and legitimate claimant expectations on the filing date are controlling *even where inconsistent with transactional reality* . . . [such as] where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund the purchase." (emphasis added)); S. Rep. No. 95-763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765; H.R. Rep. No. 95-746, at 21 (1977).

The SEC's misplaced reliance on Section 8(b) of SIPA should be rejected.

4

## II. THE SEC'S APPLICATION OF SIPA IN THIS CASE IS INCONSISTENT WITH THE APPLICATION OF SIPA IN *NEW TIMES*.

Unable to provide any relevant statutory support for its (or the Trustee's) interpretation of "net equity," the SEC prognosticates that the Second Circuit would reject the last "account statement" interpretation of "net equity" based on the Circuit's holding in *New Times I*. *New Times I* involved the liquidation of a broker-dealer engaged in a long-running Ponzi scheme in which investors were offered investments in one or more wholly fictional money market funds (the "Fictitious Funds"), and investments in mutual funds offered by bona fide investment companies, such as the Vanguard Group and Putnam Investments (the "Real Funds"). *New Times I*, 371 F.3d at 71. Although the account statements of both sets of investors reflected fictitious securities positions, because New Times never purchased any securities, investors in the Real Funds were afforded full SIPA protection based on their last account statements. However, the "net equity" claims of investors in the Fictitious Funds were limited to their net investments because the securities reflected on their last account statements did not exist, "and it was therefore impossible to reimburse customers with the actual securities or their market value on the filing date (the usual remedies when customers hold specific securities)." *New Times II*, 463 F.3d at 129.

The SEC acknowledges that BLMIS claimants' account statements reflected investments in real securities, like the *New Times* Real Funds investors. (*See* SEC Mem. at 7; *Additional Reforms to SIPA*, Hearing Before the Capital Mkts., Ins., and Gov't Sponsored Enters., (Dec. 9, 2009) (Statement of Michael Conley, Deputy Solicitor, SEC) ("Conley Testimony") at 3.) The SEC also concedes that, "[u]nder settled law," the *New Times* Real Funds investors were entitled to net equity claims based on their account statements because they "were in the same position as any customer whose broker simply fails to make an investment that

5

has been confirmed by the broker-dealer." (Conley Testimony at 3.) Nonetheless, the SEC erroneously argues here that BLMIS claimants should be treated like the *New Times* Fictitious Funds investors, and thus have their net equity claims limited to some form of net investment, because unlike the Real Funds investors, the BLMIS claimants' account statements "showed the results of securities transactions selected by Madoff and 'executed' at prices calibrated after the fact to produce predetermined favorable returns." (SEC Mem. at 8.) The SEC contends that fictitious securities positions are no different from fictitious securities because "[b]oth situations involve 'fictitious paper profits' and would "'leave[] the SIPC fund unacceptably exposed.'" (*Id.*)

However, the Second Circuit's decision in *New Times I* was not based on the fictitious nature of the securities positions, or the fictitious nature of the profits reflected in the accounts; the positions and profits in the Real Funds investors' accounts were fictitious as well. Rather, the *New Times I* decision was based on the fact that the Fictitious Funds did not exist, and therefore could not be bought or valued as required to satisfy a net equity claim under SIPA. *See New Times II*, 463 F.3d at 129. Indeed, the SEC's argument in *New Times* for a net investment approach to "net equity" was based entirely on the fact that the Fictitious Funds could not be valued, and that relying on the fictitious value of the securities created by the broker-dealer was inappropriate. SEC Br. *New Times* at 9, 2003 WL 24132250, at *15-16.

In this case, there is no dispute that the securities reflected on the BLMIS customers' account statements can be independently valued – virtually all are blue chip securities. Thus, BLMIS investors are exactly like the *New Times* Real Funds investors in that "the information provided on the account and confirmation statements mirrored what would have happened had the given transaction been executed." Brief for Appellants James W. Giddens as

6

Trustee for the Liquidation of the Businesses of New Times Securities Services, Inc. and New Age Financial Services, Inc., and Securities Investor Protection Corporation at 7 n.6, *New Times I*, 371 F.3d 68 (2d Cir. 2004) (No. 02-6166), 2002 WL 32487939, at *7.

The SEC here also relies on the fact that BLMIS' account statements reflected "historical" stock prices that "could not have been achieved through actual trading in the securities markets." (SEC Mem. at 2, 8.) The SEC's argument ignores the fact that "historical" stock prices, by definition, are "historical" exactly because they are the prices that *actually occurred*. Therefore, anyone who bought and sold the securities listed on the claimants' account statements on the dates reflected on the claimants' trade confirmations *did achieve* the reported returns.

Also to be disregarded is the SEC's contention that claimants should be denied their SIPA protections in order to protect the SIPC fund. SIPA was enacted to protect investors, and the SIPC fund is the vehicle through which that protection is afforded. There is no point to having the SIPC fund, let alone protecting it, if it is not going to be used for the purpose for which it was created. What is more, there is (or should be) no threat to the SIPC fund from applying SIPA in this case as the statute is written. There are approximately fewer than 5000 BLMIS investors with SIPA claims, a tiny fraction of the millions of investors with accounts at SIPC-member broker-dealers. If SIPC is not sufficiently funded to handle fewer than 5000 customers' claims, where there are millions of potential claimants participating in the markets, SIPC's management should be changed and its funding increased, or the SIPA statute should be repealed so investors do not harbor false expectations concerning their investments upon broker failures.

The SEC recognized the legitimacy of customer expectations in *New Times I*. *See*

7

SEC Br. *New Times* at 10 n.5, 2003 WL 24132250, at *18 n.5 ("There are two distinct risks . . . facing broker-dealer customers: the risk that the security purchased will be a bad investment and the risk that the broker-dealer will not execute the order, convert the customer's funds and become insolvent, leaving the customer with no cash or securities. SIPA was intended to protect customers against the latter risk."). The SEC should not ignore the legitimacy of customer expectations in this case.

**III.    THE SEC'S PROPOSED "CONSTANT DOLLAR" METHOD OF CALCULATING CLAIMANTS' NET INVESTMENTS DOES NOT ADDRESS THE INEQUITIES OF DENYING CLAIMANTS THEIR FULL SIPA CLAIMS.**

Although generally supporting a net investment approach to "net equity," the SEC correctly recognizes that the Trustee's "net equity" interpretation in this case is grossly inequitable as it relates to long-term BLMIS investors, many of whom have had accounts at BLMIS for decades. (*See* SEC Mem. at 1.) Thus, the SEC concedes that claimants' net equity claims should not be calculated on a pure "cash-in/cash-out" basis, as argued by the Trustee, but "should be calculated in constant dollars by adjusting for the effects of inflation (or deflation)." (*Id.*) In this way, the SEC purports to treat all investors fairly "by taking into account the economic reality that a dollar in 2008 has a different value than a dollar invested twenty years earlier." (*Id.*)

Even assuming the SEC's "constant dollar" approach were permissible under SIPA – which the SEC does not bother to demonstrate – it would not address the manifest unfairness of the net investment approach. Indeed, the "constant dollar" approach would not increase significantly the number of claimants with allowable claims, and it still would deny more than half of BLMIS' customers the SIPA protections Congress provided them.

While the "constant dollar" method normalizes the valuation of deposits between short-term investors and long-term investors, it does nothing to address the lost investment

opportunities experienced by long-term investors. It also does not take into consideration the fact that certain investors have an ability to supplement their SIPA recovery with "theft loss" tax benefits that permit them to deduct from their ordinary income their net BLMIS investments and their fictitious BLMIS income reported during the past five years, *see* Rev. Rul. 2009-9, at 5 (*available at* http://www.irs.gov/pub/irs-drop/rr-09-09.pdf), relief that is unavailable to long-term investors for the majority of the time they were invested with BLMIS. Finally, the SEC's "constant dollars" approach denies long-term investors credit for their legitimate BLMIS investments prior to the commencement of the BLMIS fraud.

## **CONCLUSION**

For all of these reasons, the SEC's interpretation of "net equity," like the Trustee's interpretation, should be rejected as inconsistent with SIPA. Instead, the Court should enforce the SIPA statute as written and intended by Congress.

Dated: New York, New York
December 21, 2009

SCHULTE ROTH & ZABEL LLP

By: /s/ Marcy R. Harris
William D. Zabel
Marcy Ressler Harris
Frank J. LaSalle
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for the SRZ Claimants*

9