AITKEN BERLIN LLP
Bernard V. Kleinman, Esq.
Alan Berlin, Esq.
Two Gannett Drive
Suite 418
White Plains, NY 10604
Tel. 914.644.6660
Fax: 914.694.1647
Email: bvkleinman@aitkenberlin.com
       adberlin@aitkenberlin.com

*Attorneys for:*  Susan Saltz Charitable Lead Annuity Trust
               *Susan Saltz Descendants Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | |
| — *versus* — | Adversary Proceeding<br><br>No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA Liquidation |
| Defendant. | |
| In re BERNARD L. MADOFF, | OBJECTION TO<br>TRUSTEE'S DETERMINATION<br>OF CLAIMS |
| Debtor. | |

**OBJECTIONS TO TRUSTEE PICARD'S DETERMINATION OF CLAIMS**

Susan Saltz Charitable Lead Annuity Trust, and Susan Saltz Descendants Trust, by

and through their attorney of record, Aitken Berlin LLP, do hereby object to the

1

determination by Trustee Irving Picard's determination that the said Claimants are foreclosed from any claim under the Securities Investor Protection Act.

*Background*

1. In the period from 2005 through 2007 the Claimant Susan Saltz Descendants Trust (hereinafter referred to as "SDT") invested a total of three million dollars ($3,000,000.00) with First Frontier, L.P.

2. On or about 28 February 2008 Claimant Susan Saltz Charitable Lead Annuity Trust (hereinafter referred to as "SCLAT") invested two million two hundred thousand dollars ($2,200,000.00) with First Frontier, L.P.

3. According to the offering statement for First Frontier, L.P. the named investment manager was Bernard L. Madoff Investment Investment Securities, LLC (hereinafter referred to as "BLMIS"), the Defendant in the above-captioned adversary proceeding.

4. Pursuant to the offering plan, BLMIS was to be solely responsible for all investment decisions.

5. According to the December 31, 2008 statement of account for the SCLAT, of the $2,200,000.00 in contributions, there was an allocated loss of $1,641,403.00. A copy of this statement is annexed hereto as **Exhibit A**.[1]

---

[1] Note that these loss amounts are based upon "Unaudited" statements from accountants, Anchin, Block & Anchin, LLP, 1375 Broadway, NY, NY 10008. The actual amounts of loss, if different from the amounts asserted herein, have yet to be fully determined.

2

6. According to the December 31, 2008 statement of account for the SDT, of the $3,000,000.00 in contributions, there was an allocated loss of $2,576,388.00. A copy of this statement is annexed hereto as **Exhibit B**.[2]

7. On or about December 11, 2008 the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*

8. On or about December 15, 2008 jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and appointing Irving Picard as Trustee. See Docket Entry No. 4.

9. Pursuant to the SIPA Trustee Picard was directed to oversee the liquidation of the assets of BLMIS and to process all claims against the Defendant, BLMIS, and the Debtor Bernard L. Madoff. 15 U.S.C. § 78fff-1(a)

10. By order of this Court dated December 23, 2008, the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines. See Order entered as Docket No. 12.

11. According to said Order, the Trustee was directed to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . ."

---

[2] Note that these loss amounts are based upon "Unaudited" statements from accountants, Anchin, Block & Anchin, LLP, 1375 Broadway, NY, NY 10008. The actual amounts of loss, if different from the amounts asserted herein, have yet to be fully determined.

12. Prior to the claims filing deadline, the SCLAT and the SDT did, respectively, file Notices of Claim with the Trustee pursuant to the direction of the Court in its December 23, 2008 Order, as referenced above.

13. On or about December 8, 2009, the Trustee did formally notify both the SCLAT and the SDT that their respective claims had been disallowed.  The basis for the denial of both claims was as follows,

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS.  Because you did not have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78*lll*(2).  Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

Copies of the Notices of Trustee's Determination are annexed hereto as **Exhibit C** (SCLAT) and **Exhibit D** (SDT), respectively.

14. By this Notice of Objection, the Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust, do hereby formally object to the aforementioned determination by the Trustee.

*Grounds for Objection*

15. Objection First: The letter received from the Trustee fails to comply with the December 23, 2008 Order of the Court which had directed the Trustee "to satisfy customer's claims in accordance with the Debtors [*i.e.*, BLMIS and Bernard L. Madoff] books and records." Dec. 23, 2008 Order at p. 5.  Both the claims of the SCLAT and SDT included the last statements received (dated December 31, 2008) which showed a total combined balance of $1,452,697.00.  These statements are the best evidence of the amount owed to the Claimants.  Accordingly, the claims should be allowed in full.

4

16. <u>Objection Second</u>: The Trustee has failed to provide the necessary legal basis for his determination relying upon a perfunctory assertion of the absence of a direct customer/investment advisor relationship. See ¶ 13 *supra*. Thus, the Determination Letters are inadequate and violate the Court's Order for the following reasons:

(a) the Letters' failure to clearly provide a reason for the disallowance as required by Judge Lifland's December 23, 2008 Order;

(b) the Letters are inadequate to rebut the claims of the SCLAT and the SDT, as provided for by Section 502(a) of the Bankruptcy Code,[3] and R. 3001(f)[4] of the Federal R. of Bankr. Proc.,[5] by merely asserting a bald disallowance notice;[6] and

(c) the Trustee's determination violates the general rule that any determination of a claim set forth, minimally, relevant facts and legal theories upon which the objection and determination are based. As set forth in COLLIER, "an objection to a claim should meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and[,] it should describe the theoretical bases of those defenses.". COLLIER ON

---

[3] 11 U.S.C. § 502(a) provides as follows,
**(a)** A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

A liquidation under SIPA is essentially a bankruptcy proceeding, and incorporates Section 502(a) of the Bankruptcy Code. 15 U.S.C. § 78fff(b). See *In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 74 (S.D.N.Y. 1996), and cases cited therein.

[4] Rule 3001(f) provides a s follows,
(f) Evidentiary effect
A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

[5] See generally *Gardner v. State of New Jersey*, 329 U.S. 565, 571, *reh'g denied* 330 U.S. 853 (1947).

[6] "Because a properly executed and filed claim is deemed allowed, the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case." *In re G. Marine Diesel Corp.*, 155 B.R. 851, 853 (E.D.N.Y. 1993), and cases cited therein.

5

BANKRUPTCY at ¶ 3007.01(3).  See also generally *In re Chain*, 255 B.R. 278 (D. Conn. 2000).

17. <u>Objection Third</u>: Notwithstanding the "determination" of the Trustee, both the SCLAT and the SDT are "customer[s]" as provided for by the Securities Investor Protection Act.  As such, they are each entitled to receive up to $500,000.00 in SIPC insurance.  Section 78*lll*(2), of the SIPA defines "customer" as "any person who has deposited cash with the debtor for the purpose of purchasing securities."[7]  Although the statute does provide exclusions from this definition, none of these are applicable to either the SCLAT or the SDT.[8]  Apparently, the Trustee has taken the position that the fact that neither the SCLAT nor the SDT <u>directly</u> deposited funds with BLMIS is fatal to their respective claims as "customers" under SIPA.  This position is both legally and factually flawed.

---

[7] The statute provides in full as follows,
> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  <u>The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities</u>, . . .

Emphasis added.

[8] The two enumerated exceptions are as set forth below, neither of which apply, *viz*.,
> (A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or
> (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

6

18. The offering plan under which both of the Claimants invested funds directly with First Frontier made clear, in unequivocal terms, that funds would be directly deposited with BLMIS, and that BLMIS would be making all of the investments. BLMIS was the named "Investment Manager" and was a broker/dealer under the 1934 Act, subject to SIPA. See " Summary of the Offering" at page "A". The Limited Partnership Agreement was very clear about BLMIS's role, and made every attempt to utilize BLMIS's "reputation" to market itself to investors, *viz.*,

> Bernard L. Madoff Investment Securities is registered as a broker/dealer under the 1934 Act. The General Partner has selected the Investment Manager to trade, invest and deal in securities and financial instruments for the Partnership. The Investment Manager is a market maker for dealers, banks and institutions. The Investment Manager has locations in New York and London, and makes markets in both listed and unlisted securities. The Investment Manager currently is a market maker for approximately 650 securities. The Investment Manager also trades in convertible bonds, convertible preferred stocks, warrants and listed equity and index options. The Investment Manager began operations in 1960 and has approximately 210 employees.

Offering Plan at p. 4.

19. It was made clear to all potential and actual investors that the objectives of the limited partnership would be achieved by entrusting ALL of the partnership assets with BLMIS, *viz.*,

> The General Partner believes that the objective can be achieved through the investment of the Partnership's assets with the Investment Manager that is engaged in a strategy of purchasing a basket of equity securities included in the S&P 100 (OEX) Index (the "Index") and hedging the basket through the use of options on the Index.

Offering Plan Introduction at page 1.

See also Investment Strategies at p. 2; Conflicts of Interest at p. 13; Limited Partnership Agreement at p. 3 ("It is the present intention of the General Partner to allocate the capital of the Partnership to one (1) independent investment manager (the "Investment Manager")").

7

20. First and foremost, the SIPA was enacted by Congress as remedial legislation to be liberally construed to effect the purpose of protecting the investments of customers of broker-dealers and investment advisors. *In re First State Securities Corp.*, 34 B.R. 492 (S.D. Fla. 1980). The fundamental purpose of the SIPA was to protect the public in the event that the licensee's with whom they dealt went bankrupt, or were otherwise unable to satisfy their customer agreements. *SEC v. S.J. Salmon & Co., Inc.*, 375 F. Supp. 867, 871 (S.D.N.Y. 1974) ("The principal purpose of the [Securities Investor Protection] Act was to protect investors against financial losses arising from the insolvency of their brokers."); *SEC v. Schreiber Bosse & Co., Inc.*, 368 F. Supp. 24 (N.D. Ohio 1973).

21. Under the Securities Investor Protection Act, the term "customer" is a term of art, and does not have its ordinary and customary meaning. *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *aff'd sub nom. In re Stratton Oakmont*, 210 F.3d 420 (2d Cir. 2000). It is to be construed within the context of the definitional section of the SIPA, and as interpreted by the courts.

22. The statute, itself makes clear that one need not have a direct relationship with the subject trader or advisor to be considered a "customer" under SIPA. In defining "customer" Congress used the conjunctive in describing the subject relationship. The statute states that a "customer" "includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities". Thus, the only requirements are (a) the claim against the debtor arose out of sales or conversion of securities, and (b) that the customer made deposits with the fiduciary of cash or securities. *Cf., In re*

8

*Adler Coleman Clearing Corp.*, N. 3 *supra*, where the Court found dispositive the fact that the clearing firm for the claimants' accounts had no fiduciary relationship with the customers, and was the "agent" of the introducing broker. 198 B.R. at 73. Compare this to the case at bar, where it was clear the relationship between First Frontier and BLMIS was one where BLMIS acted as an agent of First Frontier and subject to its control. See Offering Plan at p. 6, ¶ 5.

23. First of all, there is no mandate that the funds or securities received by the "debtor" were received "directly" by the customer. Had this been a requirement, Congress would have clearly seen fit to so require it. Indeed, Section 9 of the SIPA (15 U.S.C. § 78fff-3(a)(5)), covering advances by the SIPC to the bankruptcy trustee, states that

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, <u>other than to the extent that it shall be established to the satisfaction of the trustee</u>, from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, <u>that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank</u> . . ., <u>in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor</u>.

Emphasis added.

- 24. The offering plan makes clear that BLMIS, a registered broker/dealer under the 1934 Act, was the sole and exclusive recipient of funds from First Frontier, save any commissions that First Frontier may have asserted to which it was entitled.**⁹** Hence, both

---

**⁹** Neither the SCLAT nor the SDT waive any claim against First Frontier, LP, its general partners, accountants, attorneys, principals, or any other persons, parties, or entity which held a business or other relationship with First Frontier in making this claim against BLMIS and Bernard L. Madoff.

9

SCLAT and SDT are entitled to have their claims, under SIPA, ratified by this Court, and the determination letters of the Trustee rejected.

25. As this cause of action arose in New York, and New York law is applicable, both CLAT and SDT assert that they are entitled to interest on all of the funds deposited with BLMIS at the statutory rate. New York CPLR § 5004, New York General Oblig. L. § 5-501 *et seq*. Furthermore, as the actions by BLMIS and the Debtor Bernard L. Madoff arose out of conversion and fraud, both Claimants are entitled to pre-judgment interest. New York CPLR § 5001(a). See also *Singapore Recycle Centre Pte Ltd. v. Kad Int'l*, 2009 WL 2424333 at *20 (E.D.N.Y. 2009).

*Relief Requested*

26. For the reasons set forth herein, the Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust should have their claims allowed in full by this Court to the extent covered under SIPC.

27. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to the Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust in the amount of $500,000.00, plus interest from the date of claim, individually.

28. To the extent applicable, the Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust join in the claims of any other Claimants, and demand such further relief as this Court shall deem fair and equitable.

*Conclusion*

29. The Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust reserve the right to amend, alter, revise or supplement this Objection, and that any failure to object on a particular procedural or substantive ground shall not be deemed a waiver of any such rights.

30. The Susan Saltz Charitable Lead Annuity Trust, and the Susan Saltz Descendants Trust reserve all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, all rights of discovery.

Dated:  December 22, 2009
        White Plains, NY

/s/ *Bernard V. Kleinman*
AITKEN BERLIN LLP
Bernard V. Kleinman, Esq.
Alan Berlin, Esq.
Two Gannett Drive
Suite 418
White Plains, NY 10604
Tel. 914.644.6660
Fax: 914.694.1647
Email: bvkleinman@aitkenberlin.com
        adberlin@aitkenberlin.com
*Attorneys for:  Susan Saltz Charitable Lead Annuity Trust*
*Susan Saltz Descendants Trust*

11

CERTIFICATE OF SERVICE

I am Bernard V. Kleinman, Esq., of the law firm Aitken Berlin LLP, attorneys of record for Claimants Susan Saltz Charitable Lead Annuity Trust and Susan Saltz Descendants Trust, and I do affirm that on December 22, 2009, I did file the annexed Objections to Trustee's Determination of Claim, and did file same by electronically filing, under the Court's ECF system, on this date.  And, that the parties, below, to be served electronically, were so served, along with service by depositing in an official depository of the U.S.P.S. for delivery to the parties and addresses below:

**Irving H. Picard**
**Trustee**
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111

**Office of the United States Trustee**
33 Whitehall Street
Suite 2100
New York, NY 10004

/s/ *Bernard V. Kleinman*
Bernard V. Kleinman
AITKEN BERLIN LLP
Bernard V. Kleinman, Esq.
Alan Berlin, Esq.
Two Gannett Drive
Suite 418
White Plains, NY 10604
Tel. 914.644.6660
Fax: 914.694.1647
Email: bvkleinman@aitkenberlin.com
          adberlin@aitkenberlin.com
*Attorneys for:  Susan Saltz Charitable Lead Annuity Trust*
*Susan Saltz Descendants Trust*

Dated: Dec. 22, 2009
       White Plains, NY