Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, and a large group of other*
*Customers*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Case No._____ |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 2

STATEMENT OF FACTS ....................................................................................................... 4

STATEMENT OF QUESTIONS PRESENTED AND RELIEF SOUGHT ................................. 9

ARGUMENT ........................................................................................................................... 10

I.   OBJECTANTS HAVE STANDING TO APPEAL ............................................................. 10

II.  THE COURT SHOULD GRANT LEAVE TO APPEAL ..................................................... 11

    A. This Appeal Involves A Controlling Question of Law ...................................................... 11

    B. There Is Substantial Ground for Difference of Opinion .................................................. 21

    C. An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation ....... 23

CONCLUSION ......................................................................................................................... 23

1100606.1

# TABLE OF AUTHORITIES

## CASES

In re AFI Holding, Inc., 355 B.R. 139 (9th Cir. BAP 2006) ........................................................12

In re Angelika Films 57th, Inc., 246 B.R. 176 (S.D.N.Y. 2000) ....................................................13

Aurelius Capital Master, Ltd. v. Tousa Inc., 2009 U.S. Dist. LEXIS 12735 (S.D. Fla. Feb 6, 2009) .................................................................................................................................11

Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147 (D.N.J. 2005) .......................................................................................................................................21

In re Big Rivers Electric Corp., 266 B.R. 100 (W.D.Ky. 2000)....................................................23

In re: Bush, 131 B.R. 364 (B.W.D. Mich. 1991) ..........................................................................20

In re: CCB BES, Inc., 147 B.R. 219 (D.Ore. 1992).......................................................................10

Concrete Pipe & Products v. Construction Laborers Pension Trust, 508 U.S. 602 (1993) .....16, 17

In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702 (B. S.D.N.Y. 1991)...........................18

In re Drouin, 1999 Bankr. LEXIS 1878 (B.D.N.H. Nov. 19, 1999).............................................21

In re Enron Corp., 281 B.R. 836 (B.S.D.N.Y. 2002).....................................................................22

Garcia v. U.S., 666 F.2d 690 (5th Cir. 1982)................................................................................16

Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447 (1st Cir. 1983)...................................16

In re Hot Tin Roof, 205 B.R. 1000 (1st Cir BAP 1997).................................................................12

International Trade Administration v. Rensselaer Polytechnic Institute, 936 F.2d 744 (2d Cir. 1991) .....................................................................................................................................10

In re Jartran, Inc., 886 F.2d 859 (7th Cir. 1989) ..........................................................................11

In re Johns-Manville Corp., 42 B.R. 362 (S.D.N.Y. 1984) ..........................................................18

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave, 921 F.2d 21 (2d Cir. 1990) ......................................................................................................................................21

Louisville Bank v. Radford, 295 U.S. 555 (1935) ........................................................................15

McFarlin v. Conseco Services, LLC, 381 F.3d 1251 (11th Cir. 2004)...........................................11

In re Mercury, 122 Fed. Appx. 528 (2d Cir. 2004).........................................................................12

In re Miguel, 30 B.R. 893 (B.E.D.CA 1983) ..................................................................................21

Northeast Savings F.A. v. Geremia, 191 B.R. 275 (D.R.I. 1996)..................................................21

In re Pappas, 207 B.R. 379 (2d Cir. BAP 1997)............................................................................21

In re Phillips, 13 B.R. 82 (B. C.D. Ill. 1981) .................................................................................15

In re Plaza Hotel Corp., 111 B.R. 882 (B.E.D. Cal. 1990) ............................................................12

S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962 (2d. Cir. 1988).........................................16

SEC v. Oxford Securities, Ltd., 354 F. Supp. 301 (S.D.N.Y.) .......................................................22

Schweiker v. McClure, 456 U.S. 188 (1982)............................................................................16, 17

In re: Schweitzer, Inc., 1999 Bankr. LEXIS 2038 (B.D.Ida. Jan. 8, 1999) ..................................20

Sequa Corp. v. Gelmin, 1995 WL 404726 (S.D.N.Y. 1995)....................................................18, 19

Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361 (9th Cir. 1976)......................................16

In re Vebeliunas, 231 B.R. 181 (B.S.D.N.Y. 1999)........................................................................12

Matter of Wilcher, 56 B.R. 428 (B. N.D. Ill. 1985)........................................................................18

In re: Williams, 2007 Bankr. LEXIS 2214 (B.N.D.Ohio June 27, 2007)......................................20

Young v. Paramount Comm'ns Inc., 186 B.R. 803 (S.D.N.Y. 1995) .............................................11

## STATUTES

11 U.S.C. § 329(b) .........................................................................................................................20

11 U.S.C. § 546(e) ........................................................................................................................8, 9

15 U.S.C. § 78(fff-3) ......................................................................................................................16

15 U.S.C. §§ 78eee(b)(6) ......................................................................................................2, 13, 14

28 U.S.C. § 158(a) ...........................................................................................................................1

28 U.S.C. § 1292(b) ........................................................................................................................11

1100606.TOA

Helen Davis Chaitman (4266)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103-0084
(212) 841-1320
hchaitman@phillipsnizer.com
*Attorneys for Diane and Roger Peskin and*
*Maureen Ebel, and a large group of other*
*Customers*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | Case No._____<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL

Diane and Roger Peskin and Maureen Ebel, and a large group of other customers of

Bernard L. Madoff Investment Securities LLC ("Madoff") ("Objectants"),[1] submit this

memorandum of law in support of their motion for leave to appeal, pursuant to 28 U.S.C.

§ 158(a) and Federal Rule of Bankruptcy Procedure 8003, the December 17, 2009 order of the

United States Bankruptcy Court for the Southern District of New York Approving Applications

of Irving H. Picard, Trustee (the "Trustee"), and Baker & Hostetler LLP ("B&H")(I) For

---

[1] Phillips Nizer LLP files this motion on behalf of all of the customers listed on Exh. A hereto.

1100606.1

Allowance of Compensation for Services Rendered and Reimbursement of Expenses and (II) To

Amend the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the

Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing

Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP

(the "Order"), to the extent that the Order approved the second applications for interim

compensation of the Trustee and his counsel, B&H.

## PRELIMINARY STATEMENT

In the largest financial fraud in the history of this country, in a case which is being

watched by people around the world, the bankruptcy court has approved the payment of

compensation to the Trustee and B&H at the rate of $1 million per week despite the fact that they

have an egregious conflict of interest which disables them from serving in this proceeding under

the Securities Investor Protection Act ("SIPA") for the liquidation of Madoff.  That conflict of

interest also bars them from receiving any compensation.  It is axiomatic that the Trustee has a

fiduciary duty to the customers of Madoff (the "Customers").  Indeed, SIPA was enacted by

Congress specifically to protect customers of SEC-regulated broker/dealers and the statute

expressly requires the Trustee to "promptly" pay Customers up to $500,000 in SIPC insurance

based upon their last account statements (their "Statutory Balances") so as to reduce any loss

Customers may suffer.

Yet, rather than fulfill this clear statutory mandate, the Trustee has acted to enrich the

Securities Investor Protection Corporation ("SIPC") at the expense of Customers, by asserting

that a Customer is only insured by SIPC for the amount of his net investment.  The Trustee has

not even "promptly" paid those claims that he acknowledges are valid – indeed, more than one

year after the Madoff liquidation began, he has only determined approximately 70% of such

2

claims. The Trustee's strategy is clear: he is seeking to delay payment of SIPC insurance to the vast majority of Customers for a period of five or more years.

The conflict of interest of the Trustee and B&H has manifested itself in other ways as well. The Trustee and B&H have engaged in *ex parte*, secret discovery of the assets and financial dealings of Customers in violation of law and for no purpose other than to determine how much the Trustee could recover against Customers in clawback litigation that has not yet been instituted.

The Trustee's conflict of interest – representing the defaulting insurance company against the injured insureds – is patent. The Trustee made clear that his loyalty lies with SIPC – even seeking to charge the Customers with Madoff's fraud in a brief written in support of his incorrect "net investment" theory. This conflict is particularly egregious here because the Trustee and his counsel are being compensated at the rate of approximately $1 million per week by SIPC at a time when SIPC is insolvent. Thus, every dollar paid to the Trustee and B&H is a dollar that is not available to pay Customer claims.

The bankruptcy court swept these issues aside, granting the fee application in full. The Court found that it had determined these issues before, except for the subpoena issue, and that it would decline to penalize the Trustee for potentially being too aggressive in discovery. In its earlier ruling on the first interim fee applications of the Trustee and B&H, the bankruptcy court had relied on its February 2009 finding of disinterestedness – at a time before the Trustee and B&H revealed their strategy in the case. Thus, the bankruptcy court ignored the overwhelming evidence of the conflict of interest of the Trustee and B&H which only became apparent after the disinterestedness hearing and ignored its obligation to continuously monitor for conflicts of interest throughout the proceeding.

3

It is urgent that an immediate appeal be permitted so as to mitigate the damages already inflicted upon the thousands of Customers who have been denied SIPC insurance. The continuation of this case under the management of a Trustee and his counsel who are disabled by an egregious conflict of interest must be remedied immediately in order to avoid further devastation to the Customers and destruction to the national policy of honoring the legitimate expectations of customers of a liquidated SEC-regulated broker/dealer. Moreover, the conflict of interest issue goes to the very integrity of this proceeding at a time when the world is focusing on the American economic and legal system.

## STATEMENT OF FACTS

The facts set forth herein are taken from the Objection filed by Objectors to the fee applications of the Trustee and B&H in which they asked the court to set an evidentiary hearing at which they could prove the facts set forth in the Objection. A copy of the Objection is annexed to the Declaration of Helen Davis Chaitman as Exh. B. The Objection expressly states that it is an "offer of proof." Neither the Trustee nor B&H submitted any affidavits in opposition to the Objection. Nonetheless, the bankruptcy court refused to schedule an evidentiary hearing. Thus, the Objection contains the undisputed facts in the record on appeal.

SIPA was enacted in 1970 at the behest of the SEC-regulated broker/dealers (the "Financial Services Industry") in order to relieve the Industry of the financial and administrative burden of registering securities in the names of investors with each of the issuing corporations. In order to induce investors to assume the risk of their brokers' dishonesty and to allow the Financial Services Industry to hold their life savings in "street name," SIPA established SIPC to provide insurance to protect investors against brokers who were dishonest and either never purchased the securities or purchased the securities and then stole them. Objection ¶¶ 49-53.

4

By holding securities in "street name," the Financial Services Industry was able to profit from the securities and not share those profits with the investors who owned them. For example, broker/dealers could lease out the securities, sell them and buy them back, or borrow against them, while the securities were in street name. Objection ¶ 51.

Rather than charge its members based upon the insurance risk assumed, as SIPC President Stephen Harbeck testified before the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises on December 9, 2009, for the past 19 years, SIPC charged each member a mere $150 per year for the privilege of printing on hundreds of billions of dollars of trade confirmations that customer accounts were insured up to $500,000 by SIPC. Objection ¶ 53. This allowed the Financial Services Industry to make tens of billions of dollars of profits because the false assurance that accounts were insured induced gullible investors to pour money into brokerage firms. *Id.*

SIPC's generosity towards its members left it with insufficient funds to pay Customer claims. *Id.* ¶ 54. Indeed, SEC Commissioner Mary Schapiro testified before Congress on July 14, 2009:

> The tragic truth is there is not enough money available to pay off
> all the customer claims.

*Id.* ¶ 9. While SIPC can borrow money under SIPA, SIPC has apparently decided that it would rather cheat Customers out of their insurance than borrow money and have to assess its members to repay the loans. *Id.* ¶ 54.

The Trustee has served as SIPC trustee in ten other SIPA liquidations and has acted in this case to enrich SIPC at the expense of Customers. *Id.* ¶ 6; Trustee's Fee Application ¶ 22. SIPC, as the insurer of Customer accounts, is in a direct adversarial position to the Customers, and, by violating the clear mandates of SIPA, the Trustee and B&H have put themselves in a

5

position of an untenable conflict of interest. *Id.* With full knowledge of the devastation that

Madoff caused to Customers, and despite the clear provisions of SIPA as incorporated into the

Bankruptcy Court's December 23, 2008 order, the Trustee and B&H have caused needless

devastation to Customers by ignoring SIPA's mandate that Customer claims be paid "promptly"

based upon their Statutory Balances.

Under SIPA, the Trustee's most important function is to promptly pay SIPC insurance to

customers. *Id.* ¶ 16. The Trustee has been an abysmal failure on this issue. Of the more than

15,400 Customer claims filed, the Trustee has allowed a mere 1,651 claims in approximately one

year, although even these 1,651 claims have not all been paid. *Id.* Despite this pathetic track

record, the Trustee and B&H were awarded the following amounts for the period May 1, 2009

through September 30, 2009:

> Baker & Hostetler LLP as Counsel to the Trustee
> Fees: $21,279,101.85    Expenses: $280,681.62
>
> Irving H. Picard, Esq. as SIPA Liquidation Trustee
> Fees: $835,605.00       Expenses: $921.25

*Id.* ¶. The Order granted the application, subject to an agreed upon holdback.

The payment of $23 million of SIPC's money to the Trustee and B&H means that 44

destitute Customers will not be paid the SIPC insurance to which they are entitled by the express

language of SIPA. This depletion of SIPC's funds cannot be justified. At this rate, the Trustee

and B&H, exclusive of all the other professionals retained in this case, will incur administrative

expenses of $52 million a year and, undoubtedly, will keep the case open for seven to ten years.

Thus, the administrative expenses for the Trustee and B&H alone could easily exceed $500

million. The administrative expenses are to be paid by SIPC which, itself, is insolvent and does

not have sufficient funds to fulfill its insurance obligations to Customers. *Id.* ¶¶ 17-18.

1100606.1

By disregarding the express provisions of SIPA requiring prompt payment of SIPC insurance to Customers based upon their Statutory Balances, the Trustee has necessitated the additional administrative expense of having "forensic" accountants determine the net investment of each Customer, in many cases encompassing 30 – 40 years of records. *Id.* ¶ 21. The "forensic" accountants, of course, are also being paid by SIPC with money which should be paid to Customers. The Trustee's self-serving *legerdemain* is calculated to save SIPC billions of dollars and, at the same time, necessitates the incurrence of tens of millions of dollars of unnecessary administrative expenses that would be avoided if the Trustee simply complied with the law. *Id.* ¶ 21.

As a result of the Trustee's defiance of SIPA, Customers have suffered tragic additional losses. Many Customers have been forced to sell their homes on a fire-sale basis in an extraordinarily depressed market, simply because they did not have the money to cover the monthly housing expenses for a sufficient period to sell their homes over a more reasonable time period. Customers have been forced to put loved ones into nursing homes because they could not afford to continue to support them in their own homes. Customers on chemotherapy drugs have not had the funds to pay for their medical treatment. *Id.* ¶ 22.

In recognition of the unconscionable delay in payment of SIPC insurance to destitute Customers, but without any statutory authority, the Trustee established a "Hardship Program" pursuant to which Customers who, through the disclosure of the most intimate personal information, are deemed in the Trustee's sole discretion to be hardship cases, are entitled to receive "expedited" treatment. *Id.* ¶ 23. However, the Trustee has given himself more time to pay "hardship" cases than SIPA contemplates a trustee will need to pay all customers. *Id.* ¶ 24. There is nothing in SIPA that restricts prompt payment to those who can demonstrate to the

7

Trustee's satisfaction that they are suffering "hardship." *Id.* ¶ 25. That is precisely why SIPA requires the Trustee to fix a customer's claim at his last statement.

The Trustee's conduct has been particularly injurious to elderly investors. He has denied SIPC insurance to "hardship" Customers whose investments in Madoff date back 15-40 years who did not retain their records of deposits. *Id.* ¶ 26. The Trustee and B&H have taken the position that it is the Customer's burden to prove his investments and, if the Customer did not retain records from 15-40 years ago, the Customer loses and SIPC wins. *Id.* In fact, B&H has informed Customers that the Trustee will not provide Customers with Madoff's own records – to which the Trustee has exclusive access. *Id.* Thus, even if the Trustee has a record of Customer deposits, the Trustee will not make those records available to Customers. In this way, of course, SIPC can deny coverage to Customers who had no reason to, and did not, retain records of deposits going back 15-40 years. *Id.*.

As to the remainder of the "hardship cases, the Trustee and B&H have taken months to resolve "hardship" cases, during which the Trustee has sought to exact compromises from elderly, destitute Customers. In several instances, attorneys at B&H have affirmatively misrepresented the law to "hardship" cases in order to induce them to accept from SIPC less than the sums to which they are indisputably entitled. In addition, the Trustee has regularly deducted from Customers' SIPC insurance alleged "preferences," despite the fact that SIPA does not authorize such offsets and despite the fact that, under the Bankruptcy Code, the Trustee has no right to recover preferential payments. *See* 11 U.S.C. Section 546(e). *Id.* ¶ 27.

B&H is deliberately acting to delay and frustrate the payment of Customer claims, even to the point of misrepresenting the law to destitute Customers who cannot afford to retain their own counsel. *Id.* ¶ 27. The Trustee and his counsel have also secretly subpoenaed bank records

8

concerning Customers for the sole purpose of determining if those Customers have sufficient assets to satisfy a fraudulent conveyance judgment. *Id.* ¶ 29. This is contrary to law and is another example of the conflict of interest which prohibits the Trustee and B&H from continuing to serve in this case.

## STATEMENT OF QUESTIONS PRESENTED AND RELIEF SOUGHT

QUESTION 1: Should the Trustee and B&H be disqualified and should they be required to disgorge all funds they have received from SIPC because of the indisputable evidence of their defiance of their statutory obligations in order to enrich SIPC at the expense of the Customers?

**RELIEF SOUGHT 1**: Reversal of the bankruptcy court finding that there was no conflict of interest, disqualification of the Trustee and B&H, and an order of disgorgement of all fees paid to the Trustee and B&H.

QUESTION 2: May the Trustee and B&H rely on a provision of SIPA that provides for the payment of their fees when SIPC agrees to such payment, despite the fact that the Trustee and B&H have ignored other provisions of SIPA which mandate prompt payment of Customer claims based upon their Statutory Balances? In other words, can the Trustee, B&H and SIPC treat SIPA like a Chinese menu from which they can choose to comply with one provision from Column A and two provisions from Column B and ignore their other statutory obligations?

**RELIEF SOUGHT 2**: Reversal of the Order based upon a finding that the Trustee, B&H and SIPC have violated SIPA's fundamental mandate to promptly pay customer claims and, therefore, they are not entitled to any of the benefits of the statute.

QUESTION 3: Were the Objectants denied due process of law by the bankruptcy court's refusal to schedule an evidentiary hearing at which Objectants' offer of proof could be established and their right to due process of law could be protected?

9

**RELIEF SOUGHT 3**:  Reversal of the Order, disqualification of the Trustee and B&H, and an order of disgorgement of all fees paid to the Trustee and B&H.

QUESTION 4:  Should the Trustee and B&H be awarded fees for their secret service of broad subpoenas on Customers' banks seeking discovery regarding all of the Customers' assets, without a judgment, where such work was illegal?

**RELIEF SOUGHT 4**:  Reversal of the Order and a disgorgement of all fees paid to the Trustee and B&H associated with the subpoena of Customers' bank records.

## ARGUMENT

## I.    OBJECTANTS HAVE STANDING TO APPEAL

Objectants have standing to appeal the Order.  An appellant has standing to appeal a bankruptcy court order when he or she is "directly and adversely affected pecuniarily by" the challenged order. *Int'l Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 747 (2d Cir. 1991) (citations omitted).  An appellant is directly and adversely affected pecuniarily by an order if it disposes of assets from a limited fund, to which there are competing claims. *In re: CCB BES, Inc.*, 147 B.R. 219, 220 (D.Ore. 1992).

Here, all fees awarded by the Order have been paid by SIPC.  Thus, the Order has disposed of $23 million of assets from a limited fund, the SIPC Fund.  SEC Commissioner Mary Schapiro testified before a House Subcommittee on July 14, 2009, in response to a question as to when Customers would be paid, that the SIPC Fund was inadequate:

> The tragic truth is there is not enough money available to pay off
> all the customer claims.

(Objection, Exh. C).  In light of SIPC's insolvency, every dollar spent to enrich the Trustee and B&H is a dollar that is not available to pay Objectants and other Customers.  Because the

10

Objectants have been directly and adversely affected pecuniarily by the unavailability of money

from the limited SIPC Fund to pay their claims, they have standing to appeal.

## II.    THE COURT SHOULD GRANT LEAVE TO APPEAL

The Court should exercise its broad discretion to grant leave to appeal the Order pursuant

to 28 U.S.C. § 1292(b). *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989) ("review of

interlocutory appeals from the bankruptcy court is in the district court's discretion").  A court

may exercise its discretion to grant leave to appeal where the order:  (1) "involves a controlling

question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3)

"an immediate appeal from the order may materially advance the ultimate termination of the

litigation." *Young v. Paramount Comm'ns Inc.,* 186 B.R. 803, 806 (S.D.N.Y. 1995).  Here, each

of those criteria are met.

### A.    This Appeal Involves A Controlling Question of Law

To show that there is a controlling question of law:

> the movant must demonstrate that there is a question of *law,* and it
> is *controlling. In re Pac. Forest Prods. Corp.,* 335 B.R. at 919
> (quoting *Ahrenholz v. Bd. of Tr. of the Univ. of Ill.,* 219 F.3d 674,
> 675 (7th Cir. 2000)) (emphasis in original). Indeed, an issue meets
> this exacting standard if it deals with a question of "pure" law, or
> matters that can be decided "quickly and cleanly without having to
> study the record." *McFarlin v. Conseco Servs., LLC,* 381 F.3d
> 1251, 1258, 1260-62 (11th Cir. 2004) (finding that because the
> issues presented involved application of the facts to the law, the
> movant could not prove a "controlling question of law") (quoting
> *Ahrenholz,* 219 F.3d at 677 (7th Cir. 2000)) . . . [A] controlling
> question is one that rises from the details of the case to a place of
> relevance among similar cases.

*Aurelius Capital Master, Ltd. v. Tousa Inc.,* 2009 U.S. Dist. LEXIS 12735, at *53  (S.D. Fla. Feb

6, 2009).  This appeal raises several controlling questions of law.  The first is whether a SIPC

trustee and his counsel may continue to serve when they are conflicted by their loyalty to SIPC. This question is a question of "pure law."

It is axiomatic that the bankruptcy court has a fundamental obligation to monitor the integrity of proceedings before it. *In re Plaza Hotel Corp.*, 111 B.R. 882, 891 (B.E.D. Cal. 1990). In addition, the disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned." *In re Vebeliunas*, 231 B.R. 181 (B.S.D.N.Y. 1999), *citing In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978). A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee. *In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee).

In addition to the Trustee's conflict, B&H are conflicted because an attorney cannot represent adverse interests. Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a). An attorney must avoid even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code. *In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997). Here, B&H represents the Trustee who has a fiduciary duty to Customers. Yet, B&H is deliberately acting to delay and frustrate the payment of Customer claims, even to the point of misrepresenting the law to destitute Customers who cannot afford to retain their own counsel. Such misrepresentation itself is grounds for denial of fees. *See In re Mercury*, 122 Fed. Appx. 528 (2d Cir. 2004) (affirming denial of compensation to firm that acted as counsel for debtors and counsel for trustee, where the attorneys acted in the interest of the trustee instead of debtors and incorrectly advised debtors regarding their rights to convert Chapter 7 filing to Chapter 11 filing). It also violates B&H's ethical obligations. *See* Rule 4.1 of the New York Rules of

Professional Conduct, 22 N.Y.C. R.R. § 1200.32 ("In the course of representing a client, a

lawyer shall not knowingly make a false statement of fact or law to a third person.").

The conflict between the Customers and the Trustee and B&H is patent. Indeed, in his

brief on the net equity issue, the Trustee argued that the Customers should be chargeable with

Madoff's fraud. Exh. B to Objection. The Trustee, through his counsel, B&H, stated that "[t]o

the extent the claimants wish to give effect to the transactions reflected on their BLMIS customer

statements at the expense of other innocent parties, they would be improperly attempting to

benefit from their agent's fraud." Exh. B at 48-49.

Although SIPC is deemed to be "disinterested," 15 U.S.C. §§ 78eee(b)(6)(A), SIPA does

not, and could not, provide that a trustee, who is not an employee of SIPC, is "disinterested" or

that an attorney retained by the Trustee is deemed, as a matter of law, to be "disinterested,"

particularly in a case like this where the Trustee and his counsel have flatly rejected the

fundamental mandates of SIPA that were intended to protect customers.

The Trustee and B&H have a conflict of interest as a result of which they are barred from

receiving any compensation under established precedents and principles of professional conduct.

*See In re Angelika Films 57th, Inc.*, 246 B.R. 176 (S.D.N.Y. 2000) (affirming bankruptcy court's

denial **in its entirety** of fee application of debtor's counsel where counsel represented debtor's

principal in other matters and took actions in the bankruptcy that "placed the interests of the

Debtor's principal. . . over those of the Debtor.")

Here, the bankruptcy court ignored its responsibility to monitor the proceedings and

rested on its February 2009 finding that there was no conflict, even though the conflict did not

arise until the Trustee revealed that he was going to act as SIPC's agent in violating the statutory

rights of Customers, all of which took place **after** the disinterestedness hearing.   At that point,

the Trustee and his counsel became conflicted and should have been disqualified and their fee

application should have been denied.

The second controlling question of law is whether the bankruptcy court was required to

approve the second interim fee applications because SIPC recommended that such applications

be approved.  SIPC argued that 15 U.S.C. § 78eee(b)(5)(C) required the Court to approve the

amounts requested because it provided that:

> Whenever an application for allowances is filed pursuant to
> subparagraph (B), SIPC shall file its recommendation with respect
> to such allowances with the court prior to the hearing on such
> application and shall, if it so requests, be allowed reasonable time
> after such hearing within which to file a further recommendation.
> In any case in which such allowances are to be paid by SIPC
> without reasonable expectation of recoupment thereof as provided
> in this chapter and there is no difference between the amounts
> requested and the amounts recommended by SIPC, the court shall
> award the amounts recommended by SIPC. . . .

Because the Trustee had stated in his fee application that he had "no reasonable expectation that

the general estate will be sufficient to make any distribution to general creditors or pay any

administrative expenses" (Trustee Fee App. ¶ 56), SIPC argued that the bankruptcy court was

required to allow payment of all amounts sought in accordance with SIPC's recommendation.

However, SIPC and the bankruptcy court did not address whether SIPC and the Trustee

were entitled to the benefit of that provision when they had ignored their fundamental obligation

under SIPA to promptly pay Customer claims based upon the Customers' Statutory Balances.

In other words, can the Trustee, B&H and SIPC simply decide to reject certain of their statutory

obligations and yet seek the protection of others.  This issue is particularly important in this case

in view of the fact that SIPC is insolvent and unable to pay its debts to the Customers.

Over 15,400 claims have been filed.  Objection ¶ 16.  If each of those claimants had an

account holding at least $500,000, that would mean SIPC has a liability to the claimants of $7.7

billion. SIPC has stated publicly that it has approximately $1.4 billion and, under SIPA, it has a

$1 billion line of credit with the SEC and a $1 billion line of credit with the US Treasury. Of

course, those lines of credit constitute loans which would have to be repaid by SIPC's members,

the SEC-regulated broker/dealers. Objection ¶ 54.

The fact that SIPC is insolvent and unable to pay its debts as they become due is

indisputable. SEC Commissioner Mary Schapiro so testified before a House Subcommittee on

July 14, 2009, in response to a question as to when Customers would be paid. She testified:

> The tragic truth is there is not enough money available to pay off
> all the customer claims.

Objection, Exh. C. Thus, every dollar paid to the Trustee and B&H – and their fees alone are

accruing at the rate of $1 million per week – is a dollar taken away from Customers. See

Objection ¶ 18. At the rate the Trustee and B&H are going, they will be paid $52 million per

year for 5 – 10 years, for a total of $250 million to $500 million.

With the other administrative expenses SIPC is incurring in this case, it is incurring

expenses of $2 million per week. Objection ¶ 18. Because of their patent conflict of interest,

the Trustee and B&H have overseen the incurrence of those expenses which have been

necessitated solely because they have defied SIPA's mandate to promptly pay Customer claims

based upon the Statutory Balances.

The third controlling question of law is whether the Customers have been denied due

process of law as guaranteed to them under the Due Process Clause of the Fifth Amendment to

the United States Constitution. "The bankruptcy power, like other great substantive powers of

Congress, is subject to the Fifth Amendment." *Louisville Bank v. Radford*, 295 U.S. 555, 589,

602 (1935); *see also In re Phillips*, 13 B.R. 82 (B. C.D. Ill. 1981). Accordingly, any statutory

08-01789-cgm    Doc 1116    Filed 12/23/09    Entered 12/23/09 16:27:07    Main Document
Pg 21 of 28

scheme resulting from Congress' exercise of its Constitutional bankruptcy powers must be

constrained by the requirements of the Due Process Clause of the Fifth Amendment.

Evaluating a Fifth Amendment due process claim begins with a two-part analysis: 1)

whether the interest asserted rises to the level of a "property interest"; and 2) if it does, the court

must weigh the competing interests of the individual and the state to determine what process is

constitutionally required. *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361 (9th Cir. 1976).

Congress, through SIPA, has statutorily created a property interest for the Customers: the right to

receive SIPC insurance of up to $500,000. *See* 15 U.S.C. § 78(fff-3). This is a protected

"property interest" under the Fifth Amendment because it is an entitlement to a government

benefit conferred by statute. *See S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 965 (2d.

Cir. 1988); *Garcia v. U.S.*, 666 F.2d 690 (5th Cir. 1982).

While SIPC is not a governmental agency, it is a creation of Congress and performs

public functions, one of which is the designation of trustees and counsel in bankruptcy

proceedings who have the power, in the first instance, to determine claims. The conduct of a

private entity amounts to state action when, like SIPC, it acts in a judicial or quasi-judicial

capacity pursuant to a legislative delegation of authority. *See Concrete Pipe & Prods. v. Constr.

Laborers Pension Trust*, 508 U.S. 602, 617 (1993); *see also Gerena v. Puerto Rico Legal

Services, Inc.*, 697 F.2d 447 (1st Cir. 1983).    Here, Congress has created SIPC which functions

in a quasi-judicial capacity pursuant to a legislative delegation of authority.

It is axiomatic that "due process demands impartiality on the part of those who function

in judicial or quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).

Congress has impermissibly created a statutory scheme that is permeated by partiality, conflicts

of interest, and bias by permitting SIPC to appoint and control the Trustee and the Trustee's

16

1100606.1

counsel, regardless of the obvious conflict of interest between SIPC and the Customers.  SIPC

has a financial incentive to deny Customer claims and has acted solely to protect its members,

the Financial Services Industry, from the obligation to fund the payments to Customers.

In *Schweiker*, the Supreme Court would have found a violation of due process if the

carriers, who appointed the hearing officers, had a financial interest in the outcome.  *Schweiker*,

456 U.S. at 197 ("In the absence of proof of financial interest on the part of the carriers, there is

no basis for assuming a derivative bias among their hearing officers").  SIPA's grant of power to

SIPC to select the trustee who, in turns, chooses counsel in bankruptcy proceedings, and

designation of SIPC and its employees as statutorily disinterested, violates the Customers' due

process rights.  *See Concrete Pipe,* 508 U.S. at 618-19 (where trustee functions in an

adjudicative capacity, appearance of bias alone violates Due Process).

The fourth controlling question of law is whether the portion of the fees of the Trustee

and B&H that relates to subpoenaing Customers' financial records from their banks and other

sources should be denied.  The subpoenas, which were issued under Bankruptcy Rule of

Procedure 2004, seek information from Customers' banks regarding the Customers' general

assets, not just any investments or withdrawals in Madoff.  Specifically, the subpoenas seek:

All documents concerning any Fund Account, including:

(a) monthly statements, including account numbers;
(b) present and historical account balance information;
(c) incoming and outgoing wire transfer records;
(d) copies of checks, both deposited and drawn;
(e) records reflecting cash activity:
(f) account opening documents and any credit file;
(g) administrative or custodial agreements between the holder of the Fund
Account and [bank]; and
(h) account closing documents.

Objection ¶ 61.

17

The subpoenas also seek "documents reflecting transfers and/or transactions between Fund Accounts," "documents that reflect or relate to any communications and/or correspondence pertaining to any Fund Account," and "documents, agreements and/or contracts . . . related to any lines of credit/letters of credit maintained by or for the benefit of any of the Fund Accounts or holders of the Fund Accounts." "Fund Account" is defined as "any account into which any [bank] customer received funds, whether by wire transfer or check, from Madoff. . ." Objection ¶ 62.

Although discovery under Rule 2004 is broad, it is not without limitation, particularly as to third parties and as to matters unrelated to the debtor. *See In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 711 (B. S.D.N.Y. 1991). "The examination of a witness about matters having no relationship or no effect on the administration of an estate is improper." *Id.* (citing *In re Johns-Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y. 1984) (scope of Rule 2004 discovery is subject to "general restriction of inquiry to the financial affairs of the debtor")). "It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Matter of Wilcher,* 56 B.R. 428, 434 (B. N.D. Ill. 1985) (language of Rule 2004 "makes it 'evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy'") (quoting *In Re GHR Energy Corp.,* 35 B.R. 534, 537 (B. D. Mass. 1983)).

B&H has admitted that the sole reason for the subpoenas it has served on Customers' banks is to determine if the Customers have sufficient assets to satisfy a fraudulent conveyance judgment. However, discovery of an adversary's assets is impermissible absent a judgment. *Sequa Corp. v. Gelmin,* 1995 WL 404726, *2 (S.D.N.Y. 1995). "[S]uch discovery is properly

18

reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment." *Id.* at *3. The only information concerning Customers' assets that could possibly be relevant at this point in the proceedings would be information relating to Madoff. But the subpoenas that B&H have served are unrestricted: they seek all documents concerning the Customers. In its reply, B&H did not even attempt to justify any requests for documents other than those relating to Madoff, thus implicitly recognizing that requests for documents that were unrelated to Madoff were indefensible.

In addition, to the extent that Customers' bank records are being subpoenaed in order to obtain information that will allow the Trustee to bolster fraudulent conveyance claims when such claims are ultimately filed, they are improper. The Trustee's effort to circumvent the traditional rules of discovery by using Rule 2004 is not permitted. *See* 10 Collier on Bankruptcy ¶ 7026.01, 7026-3 (15th ed. 2007) ("If an adversary proceeding or contested matter is pending or is likely to be filed, it is improper for one of the parties to use a Rule 2004 examination as a substitute for, or in addition to, discovery pursuant to Rule 26 . . . or to circumvent the rule's procedural protections provided to the parties and witnesses") (emphasis added) (citing *In re Bennet Funding Group*, 203 B.R. 24 (B. N.D.N.Y. 1996); *In re GHR Energy Corp.*, 35 B.R. 534, 538 (B. D. Mass. 1983) (once party is in position to file suit, it cannot use Rule 2004 to circumvent FRCP procedural safeguards)).

This pattern of conduct by the Trustee and B&H is another example of them taking the law into their own hands and disregarding established law in order to accomplish SIPC's goal of cheating Customers of their statutory rights. Any fees associated with the subpoena of Customers' bank records, such as preparation of the subpoenas, motions to compel productions in response to the subpoenas, responding to objections to subpoenas and related costs should not

19

have been granted by the bankruptcy court because such fees were incurred for an illegal and improper purpose. "Sections 329 and 330 limit compensation in a bankruptcy case to the reasonable value of the services provided by the professional. If the compensation paid or agreed to be paid exceeds the reasonable value of services, the court may order the return of any excess payment to the bankruptcy estate. 11 U.S.C. § 329(b). Even if there are no objections to a fee application, the court has an obligation to review all fee applications to prevent waste of estate assets or overreaching by attorneys." *In re: Williams*, 2007 Bankr. LEXIS 2214, at *9 (B.N.D.Ohio June 27, 2007) (disallowing fees in Chapter 7 case arising from attorneys' filing of improper schedules). *See also In re: Bush*, 131 B.R. 364, 365-67 (B.W.D. Mich. 1991) (reducing amount of fees awarded in Chapter 13 case from amount requested due to inflated time entries and stating that "[t]he court has an obligation to examine the propriety of fees and expenses requested even if no objections are raised"). Yet, the bankruptcy court refused to review these fees, instead mistakenly characterizing them as a potential issue of the Trustee being too aggressive, rather than unnecessarily overbroad and seeking documents that had nothing to do with the case.

Moreover, if, as here, fees are incurred for "services which were neither reasonably provided nor necessary in the context of this case," the Court may decline to award such fees. *In re: Schweitzer, Inc.*, 1999 Bankr. LEXIS 2038, at *19 (B.D.Ida. Jan. 8, 1999) (declining to award fees for services that the court did not deem necessary or beneficial). Thus, this Court should reverse that portion of the Order that granted fees that have any relation to the subpoenas served on the Customers' banks. It appears that these fees would have been incurred in the "Trustee Investigation" Task Code, which lists "overseeing B&H's issuance of hundreds of inquiry letters and subpoenas to potentially related third parties concerning BLMIS litigation" as one of the

20

tasks undertaken. Trustee's Fee Application at 16. All such fees and related expenses should be disallowed.

All of these questions are questions of law, not of fact, because the Objection constituted an offer of proof, and the Trustee and B&H did not dispute any fact in the offer of proof, thereby rendering it indisputable. *See, e.g., In re Drouin*, 1999 Bankr. LEXIS 1878, at *7 (B.D.N.H. Nov. 19, 1999)(court based finding of fact on unrefuted offer of proof)). *See also In re Miguel*, 30 B.R. 893, 894 (B.E.D.CA 1983) (judgment granted to plaintiffs upon their offer of proof because of failure of defendants or their counsel to appear at trial). Moreover, as set forth above, the questions are controlling because they concern other cases beyond this case – in fact, they are directly applicable in all SIPC cases.

## B.    There Is Substantial Ground for Difference of Opinion

There is also a "substantial ground for difference of opinion" here because the questions involve "one or more difficult and pivotal questions of law not settled by controlling authority." *Northeast Savings F.A. v. Geremia*, 191 B.R. 275,278 (D.R.I. 1996); see *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 25 (2d Cir. 1990) (hearing interlocutory appeal involving the difficult issue of first impression concerning the PLO's functional immunity as an observer of the United Nations); *In re Pappas*, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (hearing interlocutory appeal where there is a difference of opinion on whether court may extend the time of a creditor to commence an adversary proceeding based on another creditor's general motion without a particularized showing). There is often a substantial ground for difference of opinion where, as here, "precedent bearing on the matter is relatively thin," *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 156 (D.N.J. 2005).

1100606.1

Plainly, there is substantial ground for a difference of opinion concerning the Trustee's conflict of interest as evidenced by his defiance of his statutory responsibilities. There is virtually no case law on this issue of which we are aware. Because it is an issue of first impression in this Circuit, this Court should hear the appeal and rule on the matter. In addition, there is substantial ground for a difference of opinion with respect to the bankruptcy court's obligation to honor SIPC's request for payment of a SIPA trustee's fees when SIPC is insolvent and unable to honor its insurance obligations. That too is an issue of first impression.

The due process issue is subject to a substantial difference of opinion because there are no cases directly on point in which a court found that a biased SIPA Trustee violated the due process rights of customers. While the Second Circuit reversed without opinion a decision of this Court finding that the requirement of appointment of a trustee and his attorney specified by SIPC violated the equity powers of the Court and offended the separation of powers of the legislative, judicial and executive branches of government, there was no conflict of issue apparent in that case; nor was there any indication that customers' rights had been violated. *See SEC v. Oxford Securities, Ltd.*, 354 F. Supp. 301 (S.D.N.Y.), *reversed without op.*, 486 F.2d 1396 (2d Cir. 1973).

Lastly, the issue of the proper scope of Rule 2004 subpoenas is subject to a substantial difference of opinion because the Trustee's counsel has asserted that Rule 2004 subpoenas are an appropriate mechanism for "discovery of information, including from third parties, relating to the acts, conduct, assets and potential claims of the BLMIS estate, as they are intended to reveal the nature and extent of the bankruptcy estate, and to discover assets, examine transactions and determine whether wrongdoing has occurred." Reply at 4, citing *In re Enron Corp.*, 281 B.R. 836 (B.S.D.N.Y. 2002), in which the Court found that the discovery sought was improper as it

22

was to be used in a pending securities fraud action. Plainly, this Court must rein in the Trustee's

overbroad interpretation of Rule 2004 to avoid additional abuses and the incurrence of additional

unnecessary fees.

Indeed, the broader issue here of the propriety of payment of interim fees has even been

found to be an issue of law over which a substantial difference of opinion existed. *See also In re*

*Big Rivers Electric Corp.*, 266 B.R. 100, 105 (W.D.Ky. 2000) (issue of the propriety of the

bankruptcy court's order for payment of interim fees to examiner's counsel was issue of law over

which a substantial difference of opinion existed).

## C.    An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation

This case will be materially advanced for the benefit of all Customers if the Order is

immediately appealable. Appointment of a new trustee who will fulfill his fiduciary duty to

Customers is urgently needed. If a new trustee were appointed who complied with his statutory

obligations, Customers could receive SIPC insurance based upon their Statutory Balances within

weeks, rather than within years, as will otherwise occur.

### CONCLUSION

For the foregoing reasons, Objectants' motion for leave to appeal the Order should be

granted.

December 23, 2009

PHILLIPS NIZER LLP

By   s/s Helen Davis Chaitman
666 Fifth Avenue
New York, New York 10103-0084
(212) 841-1320
*Attorneys for Diane and Roger Peskin and
Maureen Ebel, with the support of more than
100 other customers*

23

1100606.1