JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
911 Chestnut Street
Clearwater, FL  33757-1368
Telephone: (727) 461-1818;
Fax: (727) 443-6548
Angelina E. Lim, Esq. (8845)
E-mail: angelinal@jpfirm.com
Michael C. Cronin, Esq.
E-mail: mikec@jpfirm.com

*Counsel for Anchor Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,                                                                  Adversary Proceeding
                                                                                              No. 08-01789-BRL
        Plaintiff-Applicant,

  v.                                                                                      SIPA Liquidation
                                                                                              (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.
---------------------------------------------------------------X
In re:

BERNARD L. MADOFF,

        Debtor.
---------------------------------------------------------------X

**OBJECTION TO DETERMINATION OF CLAIMS OF**
**JOHN A. JAMISON, *ET AL* BY ANCHOR HOLDINGS, LLC**

ANCHOR HOLDINGS, LLC ("Anchor Holdings"), on its own behalf and on behalf of its customers listed on its filed claim, and listed as Exhibit A hereto ("Customers") with a total $12,160,364.80 ultimately invested in Bernard L. Madoff Investment Securities, LLC, by and through its counsel, hereby files this Objection to The Trustee's Determination of Claim, and respectfully represents as follows:

Background

1.     Anchor Holdings invested the Funds in Anchor Hedge Fund "Class A," (an unrelated entity which happens to have a similar name) a segregated subfund of Anchor Hedge Fund Limited (another unrelated entity which happens to have a similar name).  In turn, Anchor Hedge Fund "Class A," ultimately invested the Funds in a series of underlying funds – Primeo Funds, Alpha Prime Fund, FMG Select Fund Classes K and I, Galaxy Fund Class C, Santa Clara Fund, Santa Clara II Fund and Santa Barbara Holdings (collectively, "Underlying Funds") which all invested their assets in Bernard L. Madoff Investment Securities LLC.

2.     The Customers bear the ultimate loss in this SIPC Liquidation of the ponzi scheme perpetrated by Bernard L. Madoff.

3.     Anchor Holdings and its Customers have been unsuccessful in forcing Anchor Hedge Fund "A" or the Underlying Funds to file a customer claim on behalf of the Customers.

4.     Certain Customers who filed customer claims have received "Notice of Trustee's Determination of Claim," including John A. Jamison (who filed two claims – one individually and another for his IRA), notifying them that their claims are denied as "customers claims" under 15 U.S.C. § 78lll(2). [John Jamison and other Customers have authorized Anchor Holdings, for the sake of efficiency and economy, to respond to the Notices Determination of Claims].

Legal Arguments

5.     SIPA protects the assets of investors held by broker-dealers who become insolvent.  As explained by the Supreme Court, Congress enacted the law to protect and

2

restore investor confidence in the capital markets. *Securities Investor Protection Corp. v. Bourbor,* 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC ("Madoff"),* 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009). SIPA created SIPC to administer SIPA. 15 U.S.C. §78ccc. In a liquidation proceeding, the SIPC fund is available to "customers" if the debtor's general estate is insufficient to pay "customer claims." According to SIPA, only "customers," a term of art, defined in 15 U.S.C. § 78lll(2) will be protected. A denial of "customer" status would relegate an investor to a general unsecured creditor who can only seek recovery from the general estate. *Madoff*, 401 B.R. at 634.

      6.    SIPA defined "customers as:

> Any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities…[1]

15 U.S.C. §78lll.

      7.    The Customers fall within section 78lll under the plain reading of the statute. Courts have limited the definition when the claimant had a lending relationship with the debtor. *E.g., In re New Times Securities Services, Inc.* 463 F.3d 125 (2d Cir. 2006). The reality in this case is that Madoff perpetrated the largest *ponzi* scheme in the history of America. He used feeder funds to attract new investors to continue his fraud and there is no substantive difference between those who gave the Debtor, BLMIS, their

---

[1] The term excludes two exceptions not relevant here.

3

funds directly or the Customers at issue here. It was in the ordinary course of the Debtor to solicit investors through other funds.

8. Whether a claimant is a "customer" does not depend upon whom he or she or it handed her cash or made her check payable, or even where the funds were initially deposited. *In re Old Naples Securities, Inc.,* 223 F.3d 1296, 1302-1303 (11th Cir. 2000). Instead, the issue depends upon whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *Id.* (internal quotations omitted but see cites to supporting cases). Here, the Customers can show that there was "actual receipt, acquisition or possession" of their property by the Debtor.

9. The securities market has changed and many securities transactions are held in "street names" or via mere book-entries. The fact that there is no direct statement form the Debtor to the Customers is of no significance. More complicated financial transactions like repos and reverse repos have been given "customer" status. *In re Beville, Bresser & Schulman Asset Management Corp.,* 67 B.R. 557 (D. N.J. 1986).

10. The issue here is less complicated. It is all a matter of equity and this Court is one of equity. The Customers are individuals who trusted the market and the Debtor. They all have suffered financial losses which have devastating impacts upon their personal lives. Their losses are no less real merely because they did not directly send the Debtor their property. The fact remains is that their money still ended with the Debtor in its *ponzi* scheme.

## Relief Requested

11.   For the reasons stated, the Court should find the Customers within the definition of 15 U.S.C. § 78lll(2).

12.   To the extent applicable, Anchor Holdings joins in the Objections of other claimants in the same position and reserves its right to respond to the Trustee and to the extent it deems necessary, to file a supplemental memorandum of law.

Dated: December 28, 2009
      Clearwater, Florida

        /s/ Angelina E. Lim
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
Michael C. Cronin, Esq.
Angelina E. Lim, Esq. (8845)
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
911 Chestnut Street
Clearwater, FL  33757-1368
Telephone: (727) 461-1818;
Fax: (727) 443-6548
E-mail: mikec@jpfirm.com
E-mail: angelinal@jpfirm.com

(512183\1)

5