AKERMAN SENTERFITT LLP
335 Madison Avenue
Suite 2600
New York, NY 10017-4636
Main: 212.880.3800
Fax: 212.880.8965
By: Susan F. Balaschak, Esq.
    Keith N. Costa, Esq.
Attorneys for David Gross and Irma Gross

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

BERNARD L. MADOFF INVESTMENTS    Bankruptcy Case No. 08-1789 (BRL)
SECURITIES, LLC,

Debtor.
_____/

### OBJECTION TO TRUSTEE'S DETERMINATION OF
### CLAIMS 000058 AND 015790 BY
### DAVID AND IRMA GROSS AND REQUEST FOR HEARING

Pursuant to the Trustee's Denial of Claims 000058 and 015790 filed by David Gross and Irma Gross ("Claimants"), dated November 30, 2009 (the "Denial") by the Trustee, concerning Bernard L. Madoff Investment Securities ("BLMIS") account numbers (David Gross and Irma Gross) 1CM404 and (David Gross) 1CM302 (jointly the "Accounts"), the undersigned, as counsel for David Gross and Irma Gross, hereby files their written dispute with the Denial, as required under the claims resolution procedures, for the reasons set forth below:

1.      The Trustee has failed to provide a full and proper accounting of the relationship between the Claimants and BLMIS. The relationship between the Claimant and BLMIS goes back well over 12 years. The relationship included, without limitation, roll-over of existing retirement accounts. It is impossible for the Trustee to have undertaken a comprehensive

{M2887525;1}

analysis of the transactional relationship based upon the enumerated support for the Denial. Indeed, the Claimants are in possession of voluminous documentation which supports their Claims and are in the process of reviewing same. As such, the thirty days afforded by the Denial is simply insufficient to afford the Claimants adequate time to formulate a cogent and pointed response to the amorphous objection interposed by the Trustee.

2. The cash-in/cash out analysis made by the Trustee is not supported by existing law. The Claimants had a legitimate expectation, based upon their receipt of account statements and trade confirmations, that securities in listed companies were being purchased for their Accounts. They, like all other customers of BLMIS, relied upon their account statements as reflecting the actual equity value of their Accounts, and as representing a substantial portion of their net worth available to provide support for living and other expenses for themselves and their family. Consistent with existing law and SIPC precedent, the Claimants should be entitled to rely upon the last account statement issued by BLMIS which reflected the value set forth in the Claims for purposes of determining their "net equity," and the cash-in/cash out methodology proposed by the Trustee should be rejected.

3. There is also no dispute that for each year that the Accounts were open, the Claimants paid taxes on all reported income. At the time that they did so, BLMIS was regulated, monitored and/or audited by government authorities such as SEC, NASD, FINRA, and the IRS, as well as issuers and others with which it did business. Those far closer to BLMIS than the Claimants, and with actual oversight capability and authority, never observed or reported fraud to anyone right up until December 11, 2008, the day that Mr. Madoff was arrested. Customers like the Claimants were never warned that BLMIS might be anything other than a legitimate company honestly and accurately reporting securities related activities to its customers.

Therefore, Claimants treated their account statements no differently than customers of any other financial institution-as accurately reflecting the true value maintained at a legitimate regulated company. Consequently, whatever was reported to the Claimants by BLMIS as being in their account immediately prior to its collapse should be the only information utilized to determine their net equity.

4. The Denial purports to claim that the Trustee determined, solely from the same fraudulent business records that were used to deceive regulators and customers for years that the Claimants did not lose the millions that they believed was in their Accounts on the day that BLMIS collapsed. By going back far beyond the applicable statutes of limitation period, ignoring existing legal precedent from other SIPA liquidations and neglecting to consider tax payments for which no refunds can be obtained from the government, the Trustee calculates that over time, the Claimants were able to withdraw more than they initially deposited and "the amount of money [Claimants] received in excess of the deposits in your account ($325,000) was taken from other customers and given to you."

5. This conclusion has no basis in fact or in law.

6. The Claimants assert the following bases for disputing the Trustee's determination, without waiving the right to supplement this response:

    a. the formula used by the Trustee to calculate "net equity":

        (i) is not supported by legal authority;

        (ii) fails to take into account taxes paid on reported profits over the years;

    (iii) fails to add to "principal" the amount of such taxes, as well as the interest that would be due on such overpayment for all of the years on which tax payments should not have been made;

    (iv) fails to include all deposits into the Accounts; and

    (v) fails to properly treat the balance reflected on the Claimants BLMIS statements for the Accounts as creating an obligation of BLMIS;

  b. The calculation of "net equity" is based upon business records maintained by a felon convicted of one of the most massive financial frauds in the history of the country and which were themselves falsified to conceal his own misconduct from regulators and customers alike, and are therefore inherently unreliable as a source for the Trustee;

  c. The calculation of "net equity" violates applicable statutes of limitation;

  d. The calculation of "net equity" is barred by the doctrine of laches;

  e. The calculation of "net equity" fails to take into account that the Claimants in good faith relied upon the fact that numerous governmental authorities regulated BLMIS, and therefore paid taxes on and ultimately spent distributions of reported income from the Accounts, and the Trustee is therefore estopped from seeking to reverse any such transactions or from otherwise trying to undermine the value reflected in the Accounts at the time of the failure of BLMIS;

  f. The calculation of "net equity" fails to treat all BLMIS customers equally, including in the following respects:

    (i) it fails to take into account the time-value of funds deposited by customers;

(ii) it targets customers who, for reason of need or otherwise, withdrew funds for personal, honest and good faith use; and

(iii) it fails to base its calculations on a reversal of every distribution made to every customer of BLMIS from the beginning of the fraud, and instead, only targets some customers, such as the Claimants.

g. The calculation of "net equity" fails to take into account that it was reported to customers of BLMIS that at year end, all trading positions had been liquidated, and any reported "profit" for the year on which taxes were paid was based upon a supposed cash-on-cash "profit" at year end; and

h. Because the business records of BLMIS are inherently unreliable and likely inadmissible, the Trustee cannot know that the funds withdrawn by the Claimants were "taken from other customers" and given to [Claimants,] as claimed.

7. In addition, SIPC protection is intended, in part, to protect a customer from fraud of an SIPC protected firm, such as was perpetrated here. The Claimants are entitled to SIPC coverage based upon the values reflected in their Accounts at the time of the collapse of BLMIS, without reduction or set-off.

8. As noted, the Claimants reserve the right to supplement this Response and where appropriate, the objections, arguments and analysis of other similarly situated account holders are adopted and made a part of this Response.

9. As noted, the Claimants had a business relationship with BLMIS for a dozen years or more and it is wholly improper to cast the Claimants as the beneficiary of some form of misconduct. This is especially so when the determination is fundamentally suspect based upon the fraudulent and inherently unreliable and probably inadmissible records of BLMIS. The

Claimants are entitled to have their loss calculated based upon the reported value of the Accounts as of the date of the collapse of BLMIS, as reflected in the Claims.

10. The Claimants request a hearing as provided under the claims objection procedures.

Dated: New York, New York
      December 28, 2009        AKERMAN SENTERFITT

By: *Susan F Balaschak*
Susan F. Balaschak, Esq. (SFB 1901)
Keith N. Costa, Esq. (KNC 1213)
335 Madison Avenue
Suite 2600
New York, NY 10017-4636
Main: 212.880.3800
Fax: 212.880.8965

To:

Clerk of the United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10004

{M2887525;1}                    6