Arthur M. Handler
Robert S. Goodman
MOUND COTTON WOLLAN
& GREENGRASS
One Battery Park Plaza
New York, New York 10004
Tel. 212-804-4200
Fax: 212-344-8066
Email: ahandler@moundcotton.com
      rgoodman@moundcotton.com
Attorneys for: Esteban Arce Herrera
             and Nieves Santisteban

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SECURITIES INVESTOR PROTECTION   :
CORPORATION,
                                        :          Adv. Pro. No. 08-01789 (BRL)

        Plaintiff,            :          SIPA Liquidation

       v.                          :          OBJECTION TO TRUSTEE'S
                                        :          <u>DETERMINATION OF CLAIM</u>

BERNARD L. MADOFF INVESTMENT     :
SECURITIES LLC,
                                        :
        Defendant.
------------------------------------X

        Esteban Arce Herrera and Nieves Santisteban ("Claimants"), by their attorneys, Mound Cotton Wollan & Greengrass, hereby object to the denial of claim in the Trustee's Determination of Claim dated December 8, 2009[1] and state as follows:

<u>Background Facts</u>

        1.    On October 29, 2007, Claimants purchased 196.0186 shares of Fairfield Sentry Ltd. for $250,000.00 through American Express Bank International ("American Express Bank"). In February 2008, American Express Bank was acquired by Standard Chartered Private

---

[1] A copy of Claimants' Claim is annexed hereto as Exhibit A and a copy of the Trustee's Determination of Claim is annexed hereto as Exhibit B.

Bank ("Standard Chartered") and, as a result, Claimants' account was transferred to Standard Chartered which account was in turn transferred in November 2008 to its subsidiary StanChart Securities International, Inc. As of December 11, 2008, Claimants owned 196.019 shares of Fairfield Sentry Ltd., valued at $264,581.99 (see Exhibit A).

2. All of the monies which Claimants invested in shares of Fairfield Sentry were invested in Bernard L. Madoff Investment Securities LLC ("BLMIS"). At no time did Claimants sell any shares of Fairfield Sentry (see Exhibit A).

3. According to the Fairfield Sentry strategy description dated July 2007 provided to Claimants prior to their making their investment in Fairfield Sentry, Fairfield Sentry allocated the predominant portion of its assets to accounts maintained at BLMIS, which acted as investment manager and was solely responsible for investment decisions (see Exhibit C hereto).

4. On or about December 11, 2008 the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*

5. On or about December 15, 2008 jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee (see Docket Entry No. 1).

6. Pursuant to SIPA, Trustee Picard was directed to oversee the liquidation of the assets of BLMIS and to process all claims against BLMIS. 15 U.S.C. § 78fff-1(a).

7. By order of this Court dated December 23, 2008, the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines (see Order entered as Docket Entry No. 12). The order, among other things, directed

the Trustee to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . ."

8. On March 9, 2009, prior to the claims filing deadline, Claimants duly filed a customer claim with the Trustee in the amount of $264,581.99, which was designated as Claim No. 007367 (see Exhibit A hereto).

9. By notice of Trustee's determination of claim dated December 8, 2009 (Exhibit B hereto), the Trustee notified the Claimants that their claim had been denied on the following basis:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78lll(2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

10. Claimants object to the Trustee's determination for the reasons set forth herein and for such additional reasons as may be set forth by other objectants in similar circumstances to Claimants and for the purpose of preserving any rights which may be recognized for persons who made indirect investments in BLMIS through feeder funds.

Grounds for Objection

11. <u>Objection First</u>: The notice of Trustee's determination of claim fails to comply with the December 23, 2008 Order of the Court which had directed the Trustee "to satisfy customer's claims in accordance with the Debtors [*i.e.*, BLMIS] books and records or are otherwise established to the satisfaction of the Trustee" (Dec. 23, 2008 Order at p. 5). The Claimants' Claim included a statement dated November 30, 2008, which showed a balance of $264,581.99. This statement is the best evidence of the amount owed to the Claimants. Accordingly, the claim should be allowed in full.

3

12. <u>Objection Second</u>: Contrary to the "determination" of the Trustee, the Claimants are "customers[s]" as provided for by the Securities Investor Protection Act. As such, they are each entitled to receive SIPC insurance. Section 78*lll*(2) of the SIPA defines "customer" as "any person who has deposited cash with the debtor for the purpose of purchasing securities." <u>Rosenman Family, LLC v. Picard</u>, 401 B.R. 629, 635 (S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status . . ."). Apparently, the Trustee has taken the position that the fact that the Claimants deposited funds with BLMIS indirectly is fatal to their respective claims as "customers" under SIPA. This position is both legally and factually incorrect.

13. The literature of Fairfield Sentry with respect to the Claimants' investment made clear, in unequivocal terms, that funds invested by the Claimants with Fairfield Sentry would be directly deposited by Fairfield Sentry with BLMIS, and that BLMIS would be making all of the investments. BLMIS was the named "Investment Manager" and was a broker/dealer under the 1934 Act, subject to SIPA (see Exhibit C hereto).

14. "SIPA is remedial legislation. As such it should be liberally construed to effect its purposes" of protecting the investments of customers of broker-dealers and investment advisors. <u>In re First State Securities Corp.</u>, 34 B.R. 492, 496 (S.D. Fla. 1980), citing <u>Tcherepnin v. Knight</u>, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The fundamental purpose of the SIPA was to protect the public in the event that the entities with whom they dealt went bankrupt, or were otherwise unable to satisfy their customer agreements. <u>SEC v. S.J. Salmon & Co., Inc.</u>, 375 F. Supp. 867, 871 (S.D.N.Y. 1974) ("The principal purpose of the [Securities Investor Protection] Act was to protect investors against financial losses arising from the insolvency of their brokers."); <u>SEC v. Schreiber Bosse & Co., Inc.</u>, 368 F. Supp. 24 (N.D. Ohio 1973).

15. Under SIPA, the term "customer" is a term of art, and does not have its ordinary and customary meaning. <u>Arford v. Miller</u>, 239 B.R. 698, 701 (S.D.N.Y. 1999), <u>aff'd sub nom. In re Stratton Oakmont</u>, 210 F.3d 420 (2d Cir. 2000). It is to be construed within the context of the definitional section of the SIPA and as interpreted by the courts.

16. Congress intended for "customer" to be broadly interpreted. In the first draft of the bill, there was no entitlement to insurance under SIPA for any customer whose name or interest was not disclosed on the records of the broker/dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug. 4, 1969). Significantly, such exclusion was eliminated and the final bill did not include such exclusion.

17. There is no statutory mandate that the funds or securities received by the "debtor" be received "directly" from the customer. Had this been a requirement, Congress would have clearly seen fit to so require it. Indeed, Section 9 of the SIPA (15 U.S.C. § 78fff-3(a)(5)), covering advances by the SIPC to the bankruptcy trustee, states that:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, <u>other than to the extent that it shall be established to the satisfaction of the trustee</u>, from the books and records of the debtor or from the books and records of a broker of dealer or bank, or otherwise, <u>that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker of dealer or bank</u> . . ., <u>in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.</u>

Emphasis supplied.

5

21. The Fairfield Sentry literature evidences that BLMIS, a registered broker/dealer under the 1934 Act, received Claimants' funds from Fairfield Sentry.[2] Hence, Claimants are entitled to have their claim under SIPA allowed by this Court and the determination notice of the Trustee overruled and rejected.

22. As this cause of action arose in New York, and New York law is applicable, Claimants are entitled to interest on all of the funds deposited with BLMIS at the statutory rate. New York CPLR § 5004, New York General Oblig. L. § 5-501 et seq. Furthermore, as the actions by BLMIS arose out of conversion and fraud, Claimants are entitled to pre-judgment interest. New York CPLR § 5001(a). See also Singapore Recycle Centre Pte Ltd. v. Kad Int'l, 2009 WL 2424333 at *20 (E.D.N.Y. 2009).

Reservation of Rights

23. Claimants reserve the right to amend, alter, revise or supplement this Objection; any failure to object on a particular procedural or substantive ground shall not be deemed a waiver of any such rights, all of which are hereby reserved.

24. Claimants reserve all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, all rights of discovery.

Relief Requested

25. For the reasons set forth herein, Claimants' claim should be allowed in full by this Court to the extent covered under SIPA and the Trustee's objection should be overruled.

26. For the reasons stated herein, the Court should direct the Security Investors Protection Corporation to issue immediate payment to the Claimants in the amount of $264,581.99, plus interest from the date of the claim.

---

[2] In making the claim against BLMIS, Claimants do not waive any claim against Fairfield Sentry, its officers, principals, accountants, attorneys, or any other persons, parties or entities.

27. To the extent applicable, Claimants join in the claims of any other Claimants similarly situated and demand such further relief as this Court shall deem fair and equitable.

Dated: New York, New York
      December 30, 2009

      MOUND COTTON WOLLAN &
      GREENGRASS

By: *[signature]*
    Arthur M. Handler
    Robert S. Goodman
    One Battery Park Plaza
    New York, New York 10004
    (212) 804-4200

Email: ahandler@moundcotton.com
         rgoodman@moundcotton.com

Attorneys for Esteban Arce Herrera and
  Nieves Santisteban

## CERTIFICATE OF SERVICE

I, Robert S. Goodman, certify that a copy of the annexed objection to trustee's determination of claim was served and filed by electronic mail through the Court's electronic filing system on December 30, 2009.

I further certify that copies of the annexed objection to trustee's determination of claim were served on the below persons at the addresses set forth below by depositing said copies in an official depository of the United States Postal Service with postage prepaid on December 30, 2009.

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> Attn: Claims Department
> 45 Rockefeller Plaza
> New York, New York 10111

Dated: New York, New York
       December 30, 2009

_____
Robert S. Goodman