# EXHIBIT A

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Esteban Arce Herrera & Nieves Santisteban

Mailing Address: Bosques de Ciclamoros 26, Col. Bosques de las Lomas

City: DF, Mexico    State: Del. Cuajimalpa  Zip: 011700

Account No.: 12-30;    45-3-0;    609-4-0;    70-4-0

Taxpayer I.D. Number (Social Security No.): N/A

---

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1.      Claim for money balances as of **December 11, 2008**:

   a.   The Broker owes me a Credit (Cr.) Balance of     $ 264,581.99

   b.   I owe the Broker a Debit (Dr.) Balance of        $      0.00

   c.   If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC."

       If you wish to make a payment, **it must be enclosed**

       with this claim form.                              $_____

   d.   If balance is zero, insert "None."                _____

502180406                         1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | _____ | X |
| b. | I owe the Broker securities | _____ | X |

c.        If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.** (see attached)

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:**    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Arthur M. Handler, Mound Cotton Wollan & Greengrass, One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  03 / 05 / 09          Signature _____

Date  03 / 05 / 09          Signature _____

Esteban Nice, Herrera  (joint account holder)

Nieves Santisteban  (joint account holder)

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

**Irving H. Picard, Esq.,**
**Trustee for Bernard L. Madoff Investment Securities LLC**
**Claims Processing Center**
**2100 McKinney Ave., Suite 800**
**Dallas, TX 75201**

Esteban Arce Herrera
Bosques de Ciclamoros 26
Col. Bosques de las Lomas
DF, Mexico CP 11700

On October 29, 2007, I purchased 196.0186 shares of Fairfield Sentry Ltd. for $250,000.000 USD through American Express Bank International ("American Express Bank") (see attached account statements and a trade confirmation from American Express Bank documenting my purchase). In February 2008, American Express Bank was acquired by Standard Chartered Private Bank ("Standard Chartered") and, as a result, my account was transferred to Standard Chartered which in turn transferred my account in November 2008 to its subsidiary StanChart Securities International, Inc. As of December 11, 2008, I owned 196.019 shares of Fairfield Sentry Ltd., valued at $264,581.99 (see attached November 2008 statement StanChart Securities International Inc.). It is my understanding from recent published news reports that all of the monies which I invested in shares of Fairfield Sentry were invested in BMIS. At no time did I sell any shares of Fairfield Sentry.

The following documents are attached confirming the foregoing:

- American Express Bank application for joint brokerage account (relevant pages)

- American Express Contract Note confirmation documenting the purchase of 196.0186 shares of Fairield Sentry on October 29, 2007 for $250,000 USD

- American Express Statement of Accounts (relevant pages) dated October 31, 2007

- Fairfield Sentry Subscription Agreement

- StanChart Securities International, Inc. Brokerage Account Statement dated November 30, 2008

267871.1

# American Express Bank International
## Application for Brokerage Account



Questions?
1-305-350-7750

For use by individuals,
joint accounts and sole
proprietorships

Please complete and return this application to:
American Express Bank International
Suite 1600, 1111 Brickell Avenue, Miami, Florida, 33131, USA

## Account Registration for this account (check one)

If no box is checked the account will be registered
as an individual account, or if a co-accountholder
is listed as a joint account with rights of
survivorship

☐ Individual
☐ Joint (tenants in common)

☐ Sole Proprietorship
☒ Joint (with rights of survivorship)

American Express Bank International portfolio number  to be used for settlement purposes:   *105252*

## Agreements  (all account holders must accept these agreements by signing on page 2)

1.  I confirm that I am of full legal age in my country of residence or otherwise legally empowered to enter into this agreement.
2.  I understand that securities execution, clearing and custody services may be separately provided by American Express Bank International ("AEBI"), as well as affiliated and non-affiliated companies.
3.  I understand and agree to the terms for release of information about me as described in the Privacy of Account Holder Information section of the American Express Bank International Brokerage Client Agreement (the "Client Agreement").
4.  I confirm that all written communications to me related to my account(s) opened under the Client Agreement should be delivered through AEBI to my address of record and in a manner consistent with the instructions I have provided to AEBI for delivering other written communications to me.
5.  I authorize AEBI to settle against the AEBI Portfolio identified above all security orders directed through my account(s) opened under the Client Agreement.  AEBI is also authorized and indemnified against any losses arising to AEBI in consequence of acting in reliance of securities settlement instructions relayed by third parties as necessary to receive or deliver securities or effect cash settlements consistent with the instructions I provide regarding the operation of my account(s).
6.  I request that any broker dealers or financial institutions used as clearing agent or custodian not release my name, address and security position to requesting companies in which they hold securities for my account unless I specify otherwise.
7.  I acknowledge I have received the Client Agreement and agree to abide by the terms as currently in effect or as they may be amended from time to time. All account(s) opened under this agreement are governed by a predispute arbitration clause which is found in the arbitration section, Section 6 of the agreement. I acknowledge receipt of and agree to the predispute arbitration clause.
8.  Tax certifications (see sections 14 and 15 of the Client Agreement for important information):

**Certification made by US Persons:**
By signing below I confirm I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
•   I am a US person (including a US resident alien), and
•   My correct US Taxpayer Identification Number (TIN) is provided below, and
•   I am not subject to backup withholding because a) I am exempt from backup withholding, or b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends or c) the IRS has notified me that I am no longer subject to back up withholding.
    You must cross out the preceding sentence if you have been notified by the IRS.

**Certification made by non US persons:**
By signing below I confirm I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
•   I am the beneficial owner of all the income to which this form relates,
•   I am not a US person,
•   The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States or is effectively connected but is not subject to tax under an income tax treaty,
•   For broker transactions, I am an exempt foreign person as defined in section 15 of the Client Agreement, and
•   If I am claiming treaty benefits, (1) I am a resident of the country indicated below (permanent residence address) within the meaning of the income tax treaty between the United States and that country, (2) if I have a US Taxpayer Identification Number (TIN) that correct number is provided below, and (3) if I am not an individual, I derive the item(s) of income for which the treaty benefits are claimed, and if applicable, meet the requirements of the treaty provision dealing with limitation on benefits.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

THE U.S. INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN, FOR U.S. PERSONS, THE CERTIFICATION REQUIRED TO AVOID BACK UP WITHHOLDING OR, FOR NON-U.S. PERSONS, THE CERTIFICATIONS REQUIRED TO ESTABLISH YOUR STATUS AS A NON-U.S. PERSON, AND IF APPLICABLE, OBTAIN A REDUCED RATE OF WITHHOLDING.

## Application for Brokerage Account - Account holder Information

Information provided in this section will be used for Internal Revenue Service reporting. Check the boxes corresponding to the tax certification you are making.  By signing below you confirm your acceptance of the agreements on page 1 of this application.

Account holder Name (Full name):

Mr. ESTEBAN ARCE HERRERA

☑ I am not a US Person for tax purposes.
☐ I am a US Person for tax purposes.
☐ I hold a US Taxpayer Identification Number which is:
   ☐ a social security number ☐ an EIN ☐ an ITIN.
   The number is:

Permanent residence address (use street address of your home):

BOSQUE DE CICLAMOROS #26 CP11700

MEXICO  D F          1962

I am employed by an investment firm, broker dealer or bank. The name and address is:

Country of citizenship:

Efe. MEXICO

Date of birth SEPT 1 - 2007

OCT-01-2007

I am a director, 10% shareholder or policy making officer of a publicly traded company. The name and address is:

Signature
X    Efe.          SIGNATURE Date: VERIFIED
                   BY

---

Co-Account holder Name (Full name):

Mrs. MARIA DE LAS NIEVES SANTISTEBAN ESPINOSA

☑ I am not a US Person for tax purposes.
☐ I am a US Person for tax purposes.
☐ I hold a US Taxpayer Identification Number which is:
   ☐ a social security number ☐ an EIN ☐ an ITIN.
   The number is:

Permanent residence address (use street address of your home):

BOSQUE DE CICLAMOROS #26 COL. BOSQUES

DE LAS LOMAS 11700 MEXICO D.F.

I am employed by an investment firm, broker dealer or bank. The name and address is:

Country of citizenship:

MEXICO          Date of birth          1962

I am a director, 10% shareholder or policy making officer of a publicly traded company. The name and address is:

Signature          Date:
X Ni Sott ba          AEBI
                   SIGNATURE OCTION - 2007
                   BY:

---

Co-Account holder Name (Full name):

☐ I am not a US Person for tax purposes.
☐ I am a US Person for tax purposes.
☐ I hold a US Taxpayer Identification Number which is:
   ☐ a social security number ☐ an EIN ☐ an ITIN.
   The number is:

Permanent residence address (use street address of your home):

I am employed by an investment firm, broker dealer or bank. The name and address is:

Country of citizenship:          Date of birth

I am a director, 10% shareholder or policy making officer of a publicly traded company. The name and address is:

Signature          Date:
X

---

Co-Account holder Name (Full name):

☐ I am not a US Person for tax purposes.
☐ I am a US Person for tax purposes.
☐ I hold a US Taxpayer Identification Number which is:
   ☐ a social security number ☐ an EIN ☐ an ITIN.
   The number is:

Permanent residence address (use street address of your home):

I am employed by an investment firm, broker dealer or bank. The name and address is:

Country of citizenship:          Date of birth

I am a director, 10% shareholder or policy making officer of a publicly traded company. The name and address is:

Signature          Date:
X

---

### For office use only

We approve the account for trading and attest to the fact that all necessary account documents are on file with us or are being obtained by us. Approved and attested to by AEBI

Date

Securities available through American Express Bank International are not backed or guaranteed by any bank, nor are they FDIC insured.  Investments in your brokerage account are subject to investment risk including loss of principal and may lose value.

10/29



American Express Bank International
Miami Branch
1111 Brickell Avenue Suite 1600
Miami, Florida 33131

Tel: (305) 350 7750; SWIFT: AEIBUS33MIA
Fax: (305) 374 4524

REFERENCE : SCTRSC/07327/00027        ESTEBAN ARCE
                                      BOSQUE DE CICLAMOROS NO. 26
CUSTOMER   :    252-1                 COL. BOSQUES DE LAS LOMAS
                                      DF, MEXICO
                                      CP 11700
                                      . . .

                                      ADVICE DATE: 23 NOVEMBER 2007

-----------------------------------------------------------------
                          CONTRACT NOTE
-----------------------------------------------------------------

WE BOUGHT FOR YOUR ACCOUNT

    IN        :   CCE LUX CHF

SECURITY NO. :   994280-001
SECURITY NAME:   FAIRFIELD SENTRY LTD -SHARES-
SWISS.NO     :   0009942800

TRADE DATE   :   29 OCT 2007

VALUE DATE   :   29 OCTOBER 2007

WE HAVE DEBITED YOUR ACCOUNT        8192


NOMINAL :        196.0186 AT   1,275.3893    USD       250,000.03
          SEC FEE                            USD            -0.03
                                                   --------------------
          NET AMOUNT                         USD       250,000.00

          AMOUNT DEBITED                     USD       250,000.00
                                                   ====================




IF YOU HAVE ANY REMARK REGARDING THE ABOVE DETAILS PLEASE
CONTACT US AS SOON AS POSSIBLE QUOTING OUR REFERENCE

THIS CONFIRMATION DOES NOT REQUIRE AN AUTHORISED SIGNATURE



## American Express Private Bank

## American Express Bank International

Miami Branch
1111 Brickell Avenue
Miami, Florida 33131

**ESTEBAN ARCE**
**BOSQUE DE CICLAMOROS NO. 26**
**COL. BOSQUES DE LAS LOMAS**
**DF, MEXICO**
**CP 11700**

### Statement of Accounts

Statement Date: 31 October 2007

Client Number-Portfolio:      252-1

Reference Currency: US DOLLAR

Relationship Manager: JON IRURETAGOYENA

### INTRODUCING "THE LEARNING CENTER"

For clients seeking more general investment information, we
encourage you to visit "The Learning Center," an informative
online educational guide to the world of international finance
and investment management. Explore asset allocation and portfolio
building and learn the basic principles of risk and return, which
underlie all successful asset allocation strategies. For more
information, log on to www.americanexpress.com/privatebank.

## www.americanexpress.com/privatebank

American Express Private Bank is the global marketing name used by
American Express Bank Ltd., a subsidiary of American Express Company.



**American Express Bank International**
Miami Branch
1111 Brickell Avenue
Miami, Florida 33131

Telephone    (305) 350 7750
Telefax    (305) 374 4524
www.americanexpress.com/privatebank

Page 3
Statement Date: 31 October 2007
Reference Currency: US DOLLAR

Client Number-Portfolio:    252-1

## SUMMARY OF INVESTMENT POSITIONS
### (US DOLLAR EQUIVALENT)

## INVESTMENT ALLOCATION

Portfolio Value
as of 31 OCT 07
USD 902,960.33



| | % of Portfolio | Current Value 31 OCT 07 | Value Last Statement 30 SEP 07 |
|---|---|---|---|
| Cash Accounts | 0.69 | 6,218.83 | |
| Short-Term Investments | 71.62 | 646,741.50 | |
| Bonds | | | |
| Mutual Funds | | | |
| Equities | | | |
| Portfolio Investments | | | |
| Alternative Investments | 27.69 | 250,000.00 | |
| Other Investments | | | |



TOTAL    100.00    902,960.33

This document is considered approved unless we are notified in writing of any objection within one month.



**American Express Bank International**
Miami Branch
1111 Brickell Avenue
Miami, Florida 33131

Telephone    (305) 350 7750
Telefax      (305) 374 4524
www.americanexpress.com/privatebank

Page 6
Statement Date: 31 October 2007
Reference Currency: US DOLLAR

Client Number-Portfolio:    252-1

## Alternative Investments

| Currency | Balance or Quantity | Description | Average Purchase Price | Price As of Date | Valuation | Reference Currency | % |
|---|---|---|---|---|---|---|---|
| USD | 250,000.00 | FAIRFIELD SENTRY LTD SHARES (PENDING DELIVERY) | 1.000 | 1.000 30 OCT 07 | 250,000.00 | 250,000.00    USD | 27.69 |

Total Alternative Investments    250,000.00    USD    250,000.00    USD    27.69

Total Assets    902,960.25    USD 100.00

Securities positions are held by the Bank or a nominee except those shown with a (+) sign which are held in client name by the issuer or,
in the case of Portfolio Investments, are held by the custodian or sub-custodian of such securities positions.
Prices are believed to be reliable, but their accuracy is not guaranteed. This document is considered approved unless we are notified in writing of any objection within one month.

**AMERICAN EXPRESS** ®

**American Express Bank International**
Miami Branch
1111 Brickell Avenue
Miami, Florida 33131

Telephone   (305) 350 7760
Telefax     (305) 374 4624
www.americanexpress.com/privatebank

Statement Date: 31 October 2007
Page 7
Reference Currency: US DOLLAR

Client Number-Portfolio:     252-1

## SECURITIES ACCOUNT ACTIVITY

| Transaction | Trade Date | Nominal | Description | Currency | Transaction Price | Cost/ Proceeds |
|---|---|---|---|---|---|---|
| SECURITY PURCHASE | 29 OCT 2007 | 250,000.00 | FAIRFIELD SENTRY LTD -PEND DEL- | USD | 1.00 | 250,000.00 USD |

This document is considered approved unless we are notified in writing of any objection within one month.

303  Name of Subscriber:  *ESTEBAN ARCE and NIEVES SANTISTEBAN*

   Amount of Subscription: $  *250,000.00*

## SUBSCRIPTION AGREEMENT

### (NON-UNITED STATES OF AMERICA SUBSCRIBERS ONLY)

### FAIRFIELD SENTRY LIMITED

Fairfield Sentry Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2100
Facsimile: (31-20) 572-2610

Dear Sirs:

   1.    **Subscription.** The undersigned ("Subscriber") hereby subscribes for voting, participating shares, each with a par value U.S. $0.01 per share (the "Shares") of Fairfield Sentry Limited (the "Fund"), an international business company organized under the laws of the Territory of the British Virgin Islands ("BVI"). The Shares will be offered at the net asset value ("Net Asset Value") per Share as of the opening of business on the effective date of purchase. The Shares have identical rights and privileges in all respects (including the right to one vote per Share). All capitalized terms used in this Subscription Agreement (the "Agreement") that are not defined herein have the meanings set forth in the Fund's Confidential Private Placement Memorandum dated October 1, 2004 (as amended from time to time, the "Memorandum"). Subscriber subscribes for that number of Shares that can be purchased for the subscription amount above. Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the "Fund Documents"). All references herein to "dollars" or "$" are to U.S. dollars.

   2.    **Acceptance or Rejection.** If the Fund accepts this subscription, Subscriber shall become a shareholder of the Fund and be bound by the Fund Documents. The minimum initial subscription is $100,000. The Board of Directors, in consultation with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), may reject a subscription for any reason or no reason. Subscriptions shall become irrevocable to the subscriber on the third to the last business day of the month in which such subscription is received by the Fund. If rejected, the Fund shall promptly return the subscription funds, with any interest actually earned thereon, and this Agreement shall be void.

   3.    **Payment of Subscription Funds.** Subscription funds should be wired to the Fund at the following account, concurrently with the delivery of this Agreement to the Fund. In order to comply with anti-money laundering regulations applicable to the Fund and Citco Fund Services (Europe) B.V. (the "Administrator"), the sample bank letter attached hereto as Schedule A MUST be completed by the financial institution which will be remitting the subscription moneys on behalf of the subscriber.

1

*Intermediary Bank - Field 56*
HSBC Bank, New York
BIC: MRMDUS33
Fed Wire: 021001088

*Account with Institution - Field 57*
Account Name: Citco Bank Nederland N.V. Dublin Branch
Account Number: 000306487
BIC: CITCIE2D

*Beneficiary Customer - Field 59*
Beneficiary Account Name:  Fairfield Sentry Limited
Beneficiary International Account Number (IBAN):
IE23 CITC 0000 0035 810 501

*Reference – SWIFT Field 70:*  Name and Full Address of Subscriber

4.      Delivery of Subscription Agreement.   Subscriber should fax and mail an executed, completed copy of this Agreement to the Administrator at the above facsimile number and address, with a copy to the Manager at Fairfield Greenwich (Bermuda) Ltd., 12 Church Street, Suite 606, Hamilton, Bermuda, fax (441) 292-5413.

5.      Status Representations.

a.      SEC Regulation S.  Subscriber is not a "U.S. Person" under Regulation S of the U.S. Securities and Exchange Commission (adopted under the U.S. Securities Act of 1933, as amended (the "1933 Act")) because (a) if an individual, Subscriber is not a resident of the United States of America or its territories or possessions (the "U.S.") or "resident alien" as defined under the U.S. income tax laws, and (b) if an entity, Subscriber is not any of the following: (i) a partnership or corporation organized or incorporated under U.S. law; (ii) an estate of which any executor or administrator is a U.S. Person; (iii) a trust of which a trustee is a U.S. Person; (iv) any agency or branch of a foreign entity located in the U.S.; (v) a partnership or corporation organized under non-U.S. law but formed by a U.S. Person principally for the purpose of investing in securities not registered under the 1933 Act (unless organized and incorporated, and owned, by accredited investors as defined in Rule 501 under the 1933 Act who are not natural persons, estates or trusts); (vi) a non-discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary for a U.S. Person; or (vii) a discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the U.S.

Subscriber acknowledges that, except with the consent of the Fund, the Shares may not be owned by a U.S. Person, that the Shares will not at any time be held for the account or benefit, directly or indirectly, of any U.S. Person, and that, except with the consent of the Fund, the Subscriber will not resell, reoffer or transfer any Shares or any interest therein to any person, including a U.S. Person or any non-U.S. Person subject to the above restrictions.  Subscriber acknowledges that reoffers, resales or any transfer of the Shares is subject to the limitations imposed by the Fund's Articles of Association and may be made only in compliance with applicable securities laws and only with the prior written consent of the Board of Directors which may, in its sole discretion, decline to issue any Shares to, or register Shares in the name of, any person, and the Subscriber will not transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible to purchase Shares in

2

*the Fund as described above and in the Memorandum. Subscriber understands that the Fund may compulsorily repurchase such Shares in accordance with the Fund Documents.*

        b.    <u>CFTC Regulations</u>. *Subscriber is not a "U.S. Person" under Regulation 4.7 of the U.S. Commodity Futures Trading Commission (adopted under the U.S. Commodity and Exchange Act of 1974, as amended) ("Rule 4.7") because (a) if an individual, Subscriber is not a resident of the U.S., and (b) if an entity, Subscriber is not (i) a partnership, corporation or other entity (other than an entity organized principally for passive investment) organized under U.S. law or with its principal place of business in the U.S.; (ii) an entity (whether organized under U.S. or non-U.S. law) that is organized principally for passive investment and that is beneficially owned 10% or more by U.S. Persons or persons who are not otherwise "qualified eligible persons", as defined in Rule 4.7; (iii) an estate or trust the income of which is subject to U.S. income taxation regardless of source; or (iv) a pension plan for the employees, officers or principals of an entity organized or with its principal place of business in the U.S.*

        c.    <u>Professional Investor Status</u>. *Subscriber is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI and the Irish Stock Exchange, because Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000 or, (in the case of an institution) $5,000,000, and Subscriber consents to being treated as a Professional Investor for the purpose of investing in the Fund, and Subscriber warrants that he has such knowledge and expertise in financial matters sufficient to evaluate the risks involved in an investment in the Fund, that he is aware of the risks and can bear the loss of the entire investment in the Fund.*

        d.    <u>Employee Benefit Plans</u>. *Investment in the Fund by "Employee Benefit Plans", as defined under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), may be limited to less than 25% of the total capital of the Fund (excluding investments by the Investor). To help determine whether investment by Subscriber is included in the 25% limitation, Subscriber has initialed here (_____) if it is an Employee Benefit Plan (such as a retirement account, corporate pension or profit sharing plan, or governmental retirement plan). If the Subscriber at any time becomes an Employee Benefit Plan, the Subscriber shall forthwith inform this to the Fund.*

If the Subscriber is an insurance company investing the assets of its general account in the Fund, less than 25% of the Subscriber's general account constitutes assets of an Employee Benefit Plan (as determined under Section 401(c) of ERISA). If the Subscriber is such an entity and at any time 25% or more of its general account constitute assets of an Employee Benefit Plan, the Subscriber shall forthwith disclose to the Fund the amount of Employee Benefit Plan assets held in its general account. By signing this Subscription Agreement, the Subscriber expressly acknowledges that the Fund may require that the Subscriber redeem its Shares and withdraw from the Fund if 25% or more of the Subscriber's general account constitutes assets of an Employee Benefit Plan.

        6.        <u>Related Professionals</u>.
                (Subscriptions cannot be accepted if this section is not completed)

Please indicate the name of the person at the Fairfield Greenwich Group with whom this subscription is associated.
Name: _____ _____

Please indicate the name, if applicable, of the person and/or entity who acts as an advisor with respect to this subscription.

Name of Advisor:

_____ ___ ___ ___ ___ _____

3

Name of Advisor's firm or organization:

_____

Not Applicable: _____

     7.     Receipt of Fund Documents and Other Documents. Subscriber has received and read a copy of the Memorandum. Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied solely upon the Fund Documents and independent investigations made by Subscriber and has not relied on any representation inconsistent with the information in the Fund Documents. Subscriber is not relying on the Fund, the Fund's Board of Directors, administrator, the Investment Manager, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. The Subscriber's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for diversification and liquidity.

     8.     Subscriber Sophistication and Financial Condition. Subscriber has such knowledge and experience in financial and business matters that it is capable of evaluating the risks of this investment. Subscriber has obtained sufficient information from the Fund or its authorized representatives to evaluate such risks and has consulted with the Subscriber's own advisors and is fully informed as to the legal and tax requirements within the Subscriber's own country (countries) regarding a purchase of the Shares. Subscriber is not relying on the Fund or the Board of Directors, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. Subscriber has not relied on any person as a purchaser representative in connection with that evaluation. Subscriber has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Subscriber. Subscriber's investment is consistent with its investment purposes and objectives and cash flow requirements, and will not adversely affect Subscriber's overall need for diversification and liquidity.

Subscriber understands that (a) the Fund's operating history is not a prediction of its future success; (b) no governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and (c) the representations, warranties, agreements, undertakings and acknowledgments made by the Subscriber in this Agreement will be relied upon by the Fund, the Board of Directors, the Investment Manager and the Administrator in determining the Subscriber's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Subscriber's becoming a shareholder of the Fund.

All information which the Subscriber has provided to the Fund or the Administrator concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

The Subscriber irrevocably authorizes the Fund and/or the Administrator to disclose, at any time, any information held by the Fund or the Administrator in relation to the Subscriber or his investment in the Fund to the Investment Manager or any affiliate of the Investment Manager or the Administrator.

4

9.   _Redemptions_.  Subscriber is aware of the limited provisions for redemptions and has read the section in the Memorandum entitled "Transfers, Redemptions and Termination." Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the Shares for an indefinite period of time.  Subscriber understands that the Fund will generally redeem Shares as of the last day of each month (the "Redemption Date"); provided that the redemption request is received by the Administrator in proper form no later than 5:00 p.m. Amsterdam time on a date that is at least 15 calendar days prior to the Redemption Date.

10.   _Valuations_.  Subscriber understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value.

11.   _Beneficial Owner_.  Subscriber acknowledges, or if the Subscriber is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Subscriber has advised the Beneficial Owner that (a) the Investment Manager, on behalf of the Fund, may enter into agreements with placement agents or other sales relationships to market the Fund providing for a payment from the Investment Manager to the particular placement agent for the introduction, out of the fees the Investment Manager receives from the Fund.

12.   _Investment Intent_.  Subscriber is buying the Shares solely for investment purposes and not with a view to distribute, subdivide or resell the Shares.

13.   _Subsequent Subscriptions_.  If Subscriber subscribes for additional Shares at a later date, Subscriber shall be deemed to have re-executed this Agreement in subscribing for those Shares.

14.   _Registration of Shares; Certificates_.  The Shares issued to Subscriber will be registered on the Fund's books in the name of Subscriber and not any nominee.  Shares will be issued in registered, book-entry form.

15.   _Binding Nature of Agreement_.  This Agreement shall be binding upon Subscriber and its heirs, representatives, successors and permitted assigns, and shall inure to the benefit of the Fund's successors and assigns.  The Agreement shall survive the acceptance of the subscription.  If Subscriber consists of more than one person, the Agreement shall be the joint and several obligation of each person.

16.   _Governing Law_.  This Agreement shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions.

17.   _Legal Representation_.  Subscriber understands that the Law Offices of Andrew E. Goldstein acts as U.S. counsel to the Fund, and as counsel to the Investment Manager and its affiliates. Subscriber also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Law Offices of Andrew E. Goldstein will not be representing the shareholder, and no independent counsel has been engaged by the Fund to represent the shareholders.

18.   _Authority_.  Subscriber's execution, delivery and performance of this Agreement are within its powers, have been duly authorized and will not constitute or result in a breach or default under or conflict with any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which Subscriber is a party or by which it is bound, and, if Subscriber is not an individual, will not violate any provision of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Subscriber.  The signature on this Agreement is genuine, and the signatory, if Subscriber is an individual, has legal

5

competence and capacity to execute the Agreement, or, if Subscriber is not an individual, the signatory has been duly authorized to execute the Agreement, and the Agreement constitutes a legal, valid and binding obligation of Subscriber, enforceable in accordance with its terms.

19.    New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

20.    Office of Foreign Assets Control. (A)    Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(B)    Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and (ii) to the extent Subscriber has any beneficial owners[4] or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such

---

[1]    The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]    Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation  In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure  The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws.  A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure

[3]    Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate  A post office box or electronic address would not be considered a physical presence.  A regulated affiliate means a foreign shell bank that (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable, and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]    Beneficial owners will include, but shall not be limited to  (i) shareholders of a corporation  (ii) partners of a partnership, (iii) members of a limited liability company, (iv) investors in a fund of funds; (v) the grantor of a revocable or grantor  trust (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA, (viii) the participant in a self-directed pension plan, (ix) the sponsor of any other pension plan, and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity  If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners  If Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners

6

beneficial owners, (b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

(C)     If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(D)     Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

(E)     If any of the foregoing representations cease to be true, Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

21.     <u>Anti-Money Laundering</u>.  Subscriber represents that the subscription funds are not the direct or indirect proceeds of drug trafficking or other such criminal conduct or activity.  Subscriber understands that, as part of the responsibility of the Fund and Administrator for protection against money laundering, the Administrator may require a detailed verification of Subscriber's identity. Depending on the circumstances of each application, a detailed verification might not be required where Subscriber makes the payment from an account held in Subscriber's name at a recognized financial institution; or the application is made through a recognized intermediary. These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations. For example, an individual may be required to produce a copy of a passport or identification card duly certified by a notary public, together with evidence of his/her address such as a utility bill or bank statement and date of birth. In the case of entity subscribers, this may require production of a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors. The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of Subscriber. In the event of delay or failure by Subscriber to produce any information required for verification purposes, the Administrator may refuse to accept the subscription and the subscription monies relating thereto or in the case where the Shares have already been issued, the Subscriber acknowledges and agrees that it will not be able to redeem any Shares so issued until proper identification information has been provided.  Subscriber further agrees that the Fund and any other service provider shall be held harmless and indemnified against any loss arising as a result of a failure to process the subscription or redemption or Subscriber's rejection if such information as has been required by the parties referred to has not been provided by Subscriber.

7

22.    Confidentiality.  The Fund may disclose the information about Subscriber that is contained herein as the Fund deems necessary to comply with applicable law or as required in any suit, action, or proceeding.

23.    Indemnification.  Subscriber agrees to indemnify and hold harmless the Fund and any of its service providers, and any partner, manager, officer, director, shareholder, agent, employee or affiliate thereof, against any loss, liability or expense relating to (a) any misrepresentation or breach of covenant by Subscriber herein or in any other document furnished by Subscriber in connection with its subscription or (b) any action for securities law violations instituted by Subscriber which is finally resolved by judgment against Subscriber.

Subscriber acknowledges that each director and officer of the Fund is entitled to be indemnified out of the assets of the Fund against all costs, losses or expenses arising from mistakes of judgement or any action or inaction that the person reasonably believed to be within the scope of the authority granted to him, provided that such actions or inactions did not constitute gross negligence, willful misconduct or breach of fiduciary duty.

24.    Enforceability.  If any provision hereof is invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent (and modified to the extent necessary to comply with that law) and its invalidity or unenforceability shall not affect any other provision hereof.

25.    Currencies.  If Subscriber subscribes in a currency other than U.S. Dollars, Subscriber agrees that the Fund may sell such subscription funds at the market rate for that currency and that the Shares will be issued to the value of the proceeds, minus the reasonable costs relating to the sale.

26.    Appointment of Revocable Proxy.  Subscriber hereby designates and appoints the Administrator, with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by shareholders present in person at that meeting. This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Administrator at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a shareholder) received before the meeting.

27.    If Subscriber is acting as a Representative.  If Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder.  Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder.  Subscriber also agrees to indemnify the Fund, the Investment Manager and the Administrator and their respective directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Agreement or perform the obligations hereof.

If the Subscriber enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Subscriber represents and warrants that with respect to a Third Party entering into a Swap:  (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws,

8

partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Memorandum and the Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Subscriber is not an agent of the Fund; and (d) the Third Party is an "eligible swap participant" and a "qualified eligible person" under Commodity Futures Trading Commission rules, and an "accredited investor" under Regulation D promulgated under the 1933 Act and a "qualified purchaser" under the Investment Company Act of 1940. Subscriber also agrees to indemnify the Fund, the Investment Manager and their respective officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines, and amounts paid in settlement) in connection with any damages resulting from the Subscriber's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

     28.    Country-Specific Disclosures. Subscriber has reviewed the country-specific disclosures in the Memorandum.

     29.    Additional Information. The Fund may request from the Subscriber such additional information as it may deem necessary to evaluate the eligibility of the Subscriber to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Subscriber to hold Shares or to enable the Fund to determine its compliance with applicable regulatory requirements or its tax status, and the Subscriber agrees to provide such information as may reasonably be requested.

Subscriber agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

     30.    Subscriber Information and Execution.

         a.    Amount of Subscription. U.S. $ _250,000_ .

         b.    Registration of Shares. The Shares issued to Subscriber are to be registered in the Fund's books in the name of (insert name and address):

_____

_____

9

      c.    **Written Communications.** All written communications from the Fund to Subscriber should be sent to Subscriber at the following address (insert address):

_____

_____

      d.    **Telephone, Fax and Email.** Telephone: _____

Fax: _____ Email: _____

      e.    **Domicile, Etc.** Subscriber, if an individual, is a citizen of _____

_____ and a resident of _____. Subscriber, if an entity, is

organized under the laws of _____ and has its principal place of business in

_____

      f.    **Authorized Persons (for Subscribers that are not corporate entities).** The names of the persons authorized by Subscriber to give and receive instructions between the Fund and Subscriber, together with their signatures, are set forth below. Such persons are the only persons so authorized by Subscriber until further notice to the Fund by any one of such persons:

| Print Name | Signature |
|---|---|
| 1. ESTEBAN ARCE | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

    The Administrator and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by Subscriber in written form or by facsimile. If instructions are given by Subscriber by facsimile, Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund, and Subscriber agrees to keep each of them indemnified against any loss of any nature whatsoever arising as to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

    For corporate entities, please provide an authorized signatory list which must include the name(s) and specimen signature(s) of the person(s) who are authorized by Subscriber to give and receive instructions between the Fund and Subscriber.

     g.    *Redemption Payments.* Until further notice from Subscriber to the Fund, signed by any authorized person listed above, redemption or other payments by the Fund to Subscriber should be wired only to Subscriber and only as follows (please print or type):

Bank name: _____

Bank address: _____

ABA/ CHIPS/ BIC Codes: _____

Account name: _____

Account number: _____

For further credit: _____

     h.    *Financial Institution Wiring/Paying Subscription Monies.*

Name: _____

Address: _____

Name of account at financial institution being debited for subscription payment: _____

Number of such account: _____

     i.    *Execution.* In witness whereof, Subscriber has executed this Agreement on the date set forth below:

Date: *Oct - 8* , 200_7_

*For individuals*

Print name: _ *ESTEBAN ARCE* _____

Signature: _____

*For entities*

Print name: _____

Print name of authorized signatory: _____

Print title of authorized signatory: _____

Signature: _____

11

## SCHEDULE A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE WIRED.

### SAMPLE LETTER

[to be placed on letterhead of the financial institution remitting payment]

Date

**Via mail and facsimile: (31-20) 572-2610**
Fairfield Sentry Limited
Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

Dear Sirs

RE:    **FAIRFIELD SENTRY LIMITED (the "Fund")**

1.    Name of Remitting Financial Institution:
2.    Address of Remitting Financial Institution:
3.    Name of Customer:
4.    Address of Customer:
5.    We have credited your account at [Bank], Account Number [number] for [amount] by order of [subscriber] on [date].

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

Yours faithfully,

Signed:             _____

Full Name:         _____

Position:           _____

**For additional information, please contact the Administrator at Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands, Telephone: (31-20) 572-2100, Facsimile:  (31-20) 572-2610.**

A-1

Santander Securities
International, Inc.
1111 Brickell Avenue, 16th Floor, Miami, FL 33131
tel 305.350.2169   fax 305.373.3804

NOT FDIC INSURED · NOT A BANK DEPOSIT ·
NO BANK GUARANTEE · MAY LOSE VALUE

# Brokerage
## Account Statement

**Account Number:** 9701
**Statement Period: 11/01/2008 - 11/30/2008**

*  000398  X410AD01  010000

ESTEBAN ARCE
BOSQUE DE CICLAMOROS NO 26
COL. BOSQUES DE LAS LOMAS
DF MEXICO CP 11700

## Valuation at a Glance

| | This Period |
|---|---|
| Beginning Account Value | $0.00 |
| Change in Account Value | 264,581.99 |
| Ending Account Value | $264,581.99 |

**Your Registered Representative:**
JON IRURETAGOYENA

*(handwritten: 0152 55 322 356 9A)*

## Asset Allocation

| | Value Prior Year-End | Value Last Period | Value This Period | Percent Allocation | |
|---|---|---|---|---|---|
| Mutual Funds | 0.00 | 0.00 | 264,581.99 | 100% | Your Account is 100% invested in Mutual Funds. |
| **Account Total** | **$0.00** | **$0.00** | **$264,581.99** | **100%** | |

DALBAR RATED
for Transparency

A000039CSF9100P

DAG MO RPU I

Clearing Through Pershing LLC, a subsidiary of The Bank of New York Mellon Corporation
Member FINRA, NYSE, SIPC

Page 1 of 4

## Customer Service Information

**Your Registered Representative:** 650

JON (R)URETA(C)OYENA
1111 BRICKELL AVE
(SUITE 1600
(M)IAMI    FL 33131

**Customer Service Information**
**Customer Service Telephone Number:** (305) 350-2169
**Web Site:** www.privatebank.standardchartered.com

## Portfolio Holdings

| Quantity | Acquisition Date | Unit Cost | Cost Basis | Market Price | Market Value | Unrealized Gain/Loss | Accrued Interest | Estimated Annual Income | Estimated Yield |
|---|---|---|---|---|---|---|---|---|---|
| **Mutual Funds** | | | | | | | | | |
| **Mutual Funds 100.00% of Portfolio** | | | | | | | | | |
| FAIRFIELD SENTRY LTD SHS HEDGE FD (OFFSHORE) ISIN VGG3291L1004 | | N/A | Please Provide | 1,349.7800 | 264,581.99 | N/A | | | |
| Open End Fund | | | | | | | | | |
| Security Identifier: G3291L100 | | | | | | | | | |
| Dividend Option: Cash; Capital Gains Option: Cash | | | | | | | | | |
| 106.019 | 11/25/08 | | | | | | | | |
| **Total Mutual Funds** | | | | $0.00 | | $264,581.99 | $0.00 | $0.00 | $0.00 |
| **Total Mutual Funds** | | | | $0.00 | | $264,581.99 | $0.00 | $0.00 | $0.00 |
| **Total Portfolio Holdings** | | | Cost Basis $0.00 | | Market Value $264,581.99 | Unrealized Gain/Loss $0.00 | Accrued Interest $0.00 | Estimated Annual Income $0.00 | |

**Disclosures and Other Information**

Unrealized gains and losses are not reported for securities for which cost basis or market value is not available.

Pricing - Securities prices may vary from actual liquidation value. Prices shown should only be used as a general guide to portfolio value. Prices are received from various pricing services. However, pricing services are sometimes unable to provide timely information. Where pricing sources are not readily available, particularly on certain debt securities, estimated prices may be generated by a matrix system taking various factors into consideration. The pricing of listed options takes into account the last closing price, as well as the current bid and offer prices. Where securities have not been priced, such securities have not been included in the Asset Allocation information at the beginning of this statement.

DALBAR RATED

Clearing Through Pershing LLC, a subsidiary of The Bank of New York Mellon Corporation

# International, Inc.

1111 Brickell Avenue, 16th Floor, Miami, FL 33131
tel 305.350.2169   fax 305.373.3804

**NOT FDIC INSURED • NOT A BANK DEPOSIT •
NO BANK GUARANTEE • MAY LOSE VALUE**

## Brokerage Account Statement

Statement Period: 11/01/2008 - 11/30/2008

Page 3 of 4

Account Number:  19701
ESTEBAN ARCF

## Portfolio Holdings (continued)

Reinvestment - The dollar amount of Mutual Fund distributions, Money Market Fund dividend income, Bank Deposit interest income, or dividends for other securities shown on your Statement may have been reinvested. You will not receive confirmation of these reinvestments. However, information pertaining to these transactions which would otherwise appear on confirmations, including the time of execution and the name of the person from whom your security was purchased, will be furnished to you upon written request to your introducing firm. In dividend reinvestment transactions, Pershing acts as your agent and receives payment for order flow, the source and nature of which compensation will be furnished to you upon written request to your introducing firm.

Option Disclosure - Information with respect to commissions and other charges incurred in connection with the execution of option transactions has been included in confirmations previously furnished to you. A summary of this information is available to you promptly upon your written request directed to your introducing firm. In order to assist your introducing firm in maintaining current background and financial information concerning your option accounts, please promptly advise them in writing of any material change in your investment objectives or financial situation. Expiring options which are valuable are exercised automatically pursuant to the exercise procedure of the Options Clearing Corporation. Additional information regarding this procedure is available upon written request to your introducing firm.

Foreign Currency Transactions - Pershing may execute foreign currency transactions as principal for your account. Pershing may automatically convert foreign currency to or from U.S. dollars for dividends and certain corporate action transactions unless you instruct your financial organization otherwise. Pershing's currency conversion rate will not exceed the highest interbank conversion rate identified from customary banking sources on the conversion date or the prior business day, increased by up to 1%, unless a particular rate is required by applicable law. Your financial organization may also increase the currency conversion rate. This conversion rate may differ from rates in effect on the date you executed a transaction, incurred a charge, or received a credit. Transactions converted by agents (such as depositories) will be billed at the rates such agents use.

Proxy Vote - Securities held by you on margin (securities not fully paid for by you) may be lent by Pershing to itself or others in accordance with the terms outlined in the Margin Agreement. The right to vote your shares held on margin will be reduced by the amount of shares on loan. The Proxy Voting Instruction Form sent to you may reflect a smaller number of shares entitled to vote than the number of shares in your account.

## Transactions in Date Sequence

| Trade/ Settlement Date | Activity Type | Description | Quantity | Price | Accrued Interest | Amount | CCY |
|---|---|---|---|---|---|---|---|
| 11/05/08 | BOOKS & RECORDS CUSTOMER INFORMATION PRINT FEE | CHARGE FOR BOOKS AND RECORDS PRINT ACCT JS209701 COPIES:1 MONTH: NOV 2008 | | | | -1.50 | USD |
| 11/05/08 | BOOKS & RECORDS CUSTOMER INFORMATION PRINT FEE | REV BOOKS&RECORDS PRINT 11/05/2008 | | | | 1.50 | USD |
| 11/05/08 | CORRESPONDENT CONVERSION | FAIRFIELD SENTRY LTD SHS HEDGE FD (OFFSHORE) ISIN VGG3299L1004 A/C CONV 105252   1 | 196.019 | | | 0.00 | USD |

**Total Value of all Transactions**  $0.00   $0.00

The price and quantity displayed may have been rounded.

# Customer Account Information

## Account Investment Objective: BALANCED/GROWTH

INVESTMENT APPROACH WITH AN EMPHASIS ON CAPITAL APPRECIATION. PRIMARY OBJECTIVE IS MAXIMIZING CAPITAL GROWTH. WILLING TO TOLERATE MORE THAN ONE YEAR OF NEGATIVE RETURNS.

**Account Mailing Address:**
ESTEBAN ARCE
BOSQUE DE CICLAMOROS NO 26
C8 BOSQUES DE LAS LOMAS
D.F. MEXICO CP 11700

**Account Participant:**
**Annual Income:** $100,000 - $999,999,999
**Net Worth:** $1,000,000 - $999,999,999
**Legal Address:**
ESTEBAN ARCE
BOSQUE DE CICLAMOROS NO 26
**Home Telephone Number:**
**Work Telephone Number:**
**E-mail Address:** ESTEBANARCEZ@AOL.COM
**Employment Status:**
**Occupation:** ENTERTAINER

☐ Employed by this broker-dealer;
☐ Related to an employee of this broker-dealer:

☐ Employed by another broker-dealer:
☐ Related to an employee of another broker-dealer:

## Messages

Please carefully read the Customer Account Information section. If any of the information is either missing or incorrect, please indicate any corrections on the statement and return this document to the introducing broker-dealer at the address listed above. You may also send a letter with any changes to the address listed above. If you are aware of any impending changes to the data displayed above, please notify your Investment Professional.

This information is being provided to you in accordance with the Securities and Exchange Commission Rule 17a-3.

Please note that your investment objective term and/or explanation have changed.

The Customer Information reflected on this statement was received from your financial institution and has not been verified by Pershing.

Although a money market mutual fund seeks to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in a money market mutual fund. Please see the money market mutual fund's prospectus or contact your investment professional for additional information.

DALBAR RATED

Account Number:   9701   ESTEBAN ARCE

Clearing Through Pershing LLC, a subsidiary of The Bank of New York Mellon Corporation

Page 4 of 4

# EXHIBIT B

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

ESTEBAN ARCE HERRERA & NIEVES SANTISTEBAN
BOSQUES DE CICLAMOROS 26
COL. BOSQUES DE LAS LAMAS
DF MEXICO, CP  011700

Dear ESTEBAN ARCE HERRERA & NIEVES SANTISTEBAN:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 007367:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_Irving H. Picard_

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  ARTHUR M. HANDLER/ MOUND COTTON WOLLAN & GREENGRASS
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

# EXHIBIT C

# Fairfield Greenwich Group

**Fairfield Sentry, Ltd.**

**July 2007**

## STRATEGY DESCRIPTION

The Fund seeks to obtain capital appreciation of its assets principally through the utilization of a nontraditional options trading strategy described as "split strike conversion", to which the Fund allocates the predominant portion of its assets. The investment strategy has defined risk and reward parameters. The establishment of a typical position entails (i) the purchase of a group or basket of equity securities that are intended to highly correlate to the S&P 100 Index, (ii) the purchase of out-of-the-money S&P 100 Index put options with a notional value that approximately equals the market value of the basket of equity securities and (iii) the sale of out-of-the-money S&P 100 Index call options with a notional value that approximately equals the market value of basket of equity securities. The basket typically consists of between 40 to 50 stocks in the S&P 100 Index. The primary purpose of the long put options is to limit the market risk of the stock basket at the strike price of the long puts. The primary purpose of the short call options is to largely finance the cost of the put hedge and to increase the stand-still rate of return. The "split strike conversion" strategy is implemented by Bernard L. Madoff Investment Securities LLC ("BLM"), a broker-dealer registered with the Securities and Exchange Commission, through accounts maintained by the Fund at that firm. The services of BLM and its personnel are essential to the continued operation of the Fund, and its profitability, if any. The Investment Manager, in its sole and exclusive discretion, may allocate a portion of the Fund's assets (never to exceed, in the aggregate, 5% of the Fund's Net Asset Value, measured at the time of investment) to alternative investment opportunities other than its "split strike conversion" investments.

## HIGHLIGHTS

- Sixteen year track record
- Only 14 down months since inception
- Provides long term capital appreciation by delivering short-term gains
- Excellent risk adjusted return
- Market timing strategy
- Highly hedged portfolio

## FUND PERFORMANCE

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2007 | 0.29% | -0.11% | 1.64% | 0.98% | 0.81% | 0.34% | 0.17% | | | | | | 4.18% |
| 2006 | 0.70% | 0.20% | 1.31% | 0.94% | 0.70% | 0.51% | 1.06% | 0.77% | 0.68% | 0.42% | 0.86% | 0.86% | 9.38% |
| 2005 | 0.51% | 0.37% | 0.85% | 0.14% | 0.63% | 0.46% | 0.13% | 0.16% | 0.89% | 1.61% | 0.75% | 0.54% | 7.26% |
| 2004 | 0.88% | 0.44% | -0.01% | 0.37% | 0.59% | 1.21% | 0.02% | 1.26% | 0.46% | 0.03% | 0.79% | 0.24% | 6.44% |
| 2003 | -0.35% | -0.05% | 1.85% | 0.03% | 0.90% | 0.93% | 1.37% | 0.16% | 0.86% | 1.26% | -0.14% | 0.25% | 7.27% |
| 2002 | -0.04% | 0.53% | 0.39% | 1.09% | 2.05% | 0.19% | 3.29% | -0.14% | 0.06% | 0.66% | 0.10% | 0.00% | 8.43% |
| 2001 | 2.14% | 0.08% | 1.07% | 1.26% | 0.26% | 0.17% | 0.38% | 0.94% | 0.66% | 1.22% | 1.14% | 0.12% | 9.82% |
| 2000 | 2.14% | 0.13% | 1.77% | 0.27% | 1.30% | 0.73% | 0.58% | 1.26% | 0.18% | 0.86% | 0.62% | 0.36% | 10.67% |
| 1999 | 1.99% | 0.11% | 2.22% | 0.29% | 1.45% | 1.70% | 0.36% | 0.87% | 0.66% | 1.05% | 1.54% | 0.32% | 13.29% |
| 1998 | 0.85% | 1.23% | 1.68% | 0.36% | 1.69% | 1.22% | 0.76% | 0.21% | 0.98% | 1.86% | 0.78% | 0.26% | 12.52% |
| 1997 | 2.38% | 0.67% | 0.80% | 1.10% | 0.57% | 1.28% | 0.68% | 0.28% | 2.32% | 0.49% | 1.49% | 0.36% | 13.10% |
| 1996 | 1.42% | 0.66% | 1.16% | 0.57% | 1.34% | 0.15% | 1.86% | 0.20% | 1.16% | 1.03% | 1.51% | 0.41% | 12.08% |
| 1995 | 0.85% | 0.69% | 0.78% | 1.62% | 1.65% | 0.43% | 1.02% | -0.24% | 1.63% | 1.53% | 0.44% | 1.03% | 12.04% |
| 1994 | 2.11% | -0.44% | 1.45% | 1.75% | 0.44% | 0.23% | 1.71% | 0.35% | 0.75% | 1.81% | -0.64% | 0.60% | 10.57% |
| 1993 | -0.09% | 1.86% | 1.79% | -0.01% | 1.65% | 0.79% | 0.02% | 1.71% | 0.28% | 1.71% | 0.19% | 0.39% | 10.75% |
| 1992 | 0.42% | 2.72% | 0.94% | 2.79% | -0.27% | 1.22% | -0.09% | 0.86% | 0.33% | 1.33% | 1.36% | 1.36% | 13.72% |
| 1991 | 3.01% | 1.40% | 0.52% | 1.32% | 1.82% | 0.30% | 1.98% | 1.00% | 0.73% | 2.75% | 0.01% | 1.56% | 17.64% |
| 1990 | | | | | | | | | | | | 2.77% | 2.77% |

## ANALYTICS

| | Fund | S&P 100 | Lehman Agg. |
|---|---|---|---|
| Compound Annual Returns | 10.89% | 11.14% | 6.92% |
| YTD Compound Returns | 4.18% | 3.55% | 0.67% |
| Annual Standard Deviation | 2.50% | 14.14% | 3.74% |
| Correlation | N/A | 0.32 | 0.07 |
| Sharpe Ratio | 2.76 | 0.51 | 0.78 |
| Worst Drawdown | -0.64% | -49.37% | -5.15% |
| Months To Recover | 2 | N/A | 8 |
| Percentage Up Months | 92.50% | 63.00% | 70.00% |
| NAV | $ 1,253.50 | | |
| Fund Assets | $ 7.0 Billion | | |

## MONTHLY RETURN DISTRIBUTION





# Fairfield Greenwich Group

## Fairfield Sentry, Ltd.

| TERMS AND CONDITIONS | | | Published: | Irish Stock Exchange/International Herald Tribune |
|---|---|---|---|---|
| Investment Manager: | Fairfield Greenwich (Bermuda) Ltd. | | ISIN: | VGG3299L1004 |
| Fees: | Management: 1 % | Performance: 20 % | Administrator: | Citco Fund Services (Europe) B.V. |
| Minimum Investment: | $ 100,000 | | Custodian: | Citco Global Custody NV |
| Subscriptions: | Monthly | | | |
| Redemptions: | Monthly, with 15 calendar days notice | | | |

**FAIRFIELD GREENWICH GROUP**

Founded in 1983, Fairfield Greenwich Group's ("FGG") mission is to offer its clients superior alternative asset management funds and related products. Throughout its history, FGG has internally managed its own hedge funds and selectively identified external managers for strategic affiliations. For risk monitoring purposes, FGG obtains portfolio transparency from all managers which are included in its multi-strategy funds. We seek to align our interests more fully with those of our clients by investing a significant portion of our own shareholders' capital with our managers. FGG has approximately USD $15 billion in client and firm assets under management. It is an employee owned firm with over 100 employees, 16 of whom are shareholders, and has offices in New York, London, and Bermuda, and representative offices in the U.S., Europe, Latin America, and Asia. FGG-related funds have over 900 registered shareholders, including private banks, financial advisors, family offices, pension funds, government authorities, and institutional investors. FGG entities are registered with the U.S. SEC as an investment advisor and broker dealer, and with the U.K. Financial Services Authority as an Investment Manager.

**IMPORTANT NOTICE**

Fund performance is net of a 1% annual management fee and a 20% performance fee. Past performance is not a guarantee of future results. Effective October 1, 2004, Fairfield Sentry Limited began charging investors a 1% management fee plus a 20% performance fee. Returns prior to October 2004 have been restated to reflect the current fee structure. All performance results portrayed reflect the reinvestment of dividends, gains and other earnings. The index information is included merely to show the general trend in applicable markets in the periods indicated and is not intended to imply that the Fund was similar to the index either in composition or element of risk. It is not possible to invest directly in an index. The S&P 100 Index is a capitalization-weighted index made up of 100 highly capitalized stocks for which options are listed and dividends are reinvested. The Lehman Brothers Aggregate Bond Index is a benchmark index made up of the Lehman Brothers Government/Corporate Bond Index, Mortgage-Backed Securities Index, and Asset-Backed Securities Index, including securities that are all investment-grade quality or better, have at least one year to maturity, and have an outstanding par value of at least $100 million. This document does not constitute an offering of any security, product, service or fund, including interests in the Fund, for which an offer can only be made to qualified investors by the Fund's confidential Private Placement Memorandum (the "PPM"). It is for informational purposes only and may not be relied upon by you in evaluating the merits of investing in the Fund. It is qualified in its entirety by the PPM and no offering of interests in the Fund may be made by any literature, advertising, or document in whatever form other than the PPM, which may qualify, and differ from, the information and opinions contained herein. The PPM contains important information regarding the Fund's investment objectives, risks, fees, and other matters of interest and should be carefully read prior to any investment in the Fund. There are no assurances that the stated investment objectives of the Fund will be met. The purchase of interests of the Fund is suitable only for sophisticated investors for whom an investment in the Fund does not constitute a complete investment program and who fully understand and are willing to assume the risks involved in the Fund's investment program. The interests described herein will not be registered under the laws of any jurisdiction including the United States Securities Act of 1933 or the United States Investment Company Act of 1940, the laws of any state of the United States or the laws of any foreign jurisdiction and may not be offered or sold without compliance to applicable securities laws. Hedge funds (or funds of hedge funds): Often engage in leveraging and other speculative investment practices that may increase the risk of investment loss; Can be highly illiquid; Are not required to provide periodic pricing or valuation information to investors; May involve complex tax structures and delays in distributing important tax information; Are not subject to the same regulatory requirements as registered investment companies; and Often charge high fees. An investor could lose all or substantially all of his or her investment. Further, any number of conflicts of interest may exist in the context of the management and/or operation of any hedge fund. Securities are distributed by Fairfield Greenwich Limited, the Fund's placement agent, and its subsidiaries: In the United States, securities are offered through Fairfield Heathcliff Capital LLC, a broker-dealer and member NASD and SIPC. Investment advisory services are offered by Fairfield Greenwich Advisors LLC and Fairfield Greenwich (Bermuda) Ltd. In the EU, securities and investment advisory services are offered through Fairfield Greenwich (UK) Limited, 10 Cork Street, London W1S 3NP (Company Number 3440032) which is authorized and regulated by the Financial Services Authority (FSA), and which has approved this document for publication in the UK. In Singapore, securities and investment advisory services are offered through Lion Capital Management Ltd., which holds a capital markets services license issued by the Monetary Authority of Singapore under the provisions of the Securities and Futures Act (Cap 289). The Fund is not recognised as a collective investment scheme for the purposes of the Financial Services and Markets Act 2000 of the United Kingdom (the "Act"). This information is directed only at persons to whom such investment funds may lawfully be promoted by a person authorised under the Act (an "authorised person") by virtue of Section 238(5) of the Act and Annex 5 to Chapter 3 of the FSA Conduct of Business Sourcebook. Shares in the Fund are only available to such persons. This information must not be relied or acted upon by any other persons. Investors in the Fund will not benefit from the rules and regulations made under the Act for the protection of investors, nor from the Financial Services Compensation Scheme. Shares in the Fund are not dealt in or on a recognised or designated investment exchange for the purposes of the Act, nor is there a market maker in such shares, and it may therefore be difficult for an investor to dispose of his shares otherwise than by way of redemption. The summary/prices/quotes/statistics in this document have been obtained from sources deemed to be reliable, but we do not guarantee their accuracy or completeness. This document is confidential and may not be reproduced or distributed without the prior written consent of Fairfield Greenwich Group. Fairfield Greenwich Group is the marketing name for the securities and investment advisory businesses of Fairfield Greenwich Limited and its subsidiaries worldwide. Additional information is available upon request.

| PRINCIPAL OFFICES : | NEW YORK Office | LONDON Office | BERMUDA Office | ADDITIONAL LOCATIONS AND REPRESENTATIVE OFFICES: |
|---|---|---|---|---|
| | 919 Third Avenue, 39th Floor | Pollen House, 10 Cork Street | 12 Church Street, Suite 606 | Greenwich, CT, and Miami, FL, USA |
| | New York, NY 10022 | London W1S 3NP | Hamilton, Bermuda HM11 | Madrid, Spain  Rotterdam, The Netherlands |
| | Tel:   (212) 319-6060 | Tel:   +44 207 534 9244 | Tel:   (441) 292-5401 | Lugano, Switzerland |
| www.fggus.com | Fax:  (212) 319-0450 | Fax:  +44 207 534 9245 | Fax:   (441) 292-5413 | Joint Venture: Singapore |
| | E-mail: main@fggus.com | E-mail: main@fgguk.com | E-mail:  main@fggbm.com | |