**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com


IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | SIPA LIQUIDATION<br><br>Case No.  08-01789 (BRL)<br><br>(Substantively Consolidated)<br><br>Appeal No.: _____ |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |

**MEMORANDUM OF LAW OF IRVING H. PICARD, TRUSTEE,**
**IN OPPOSITION TO MOTION OF DIANE AND ROGER PESKIN, MAUREEN EBEL**
**<u>AND CERTAIN OTHER CUSTOMERS FOR LEAVE TO APPEAL</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

    I.    Commencement of the Action ................................................................ 4

    II.    Orders Regarding Disinterestedness and Interim Compensation of Trustee
and Counsel........................................................................................... 4

    III.    Movants' Filings Relating to the Trustee and SIPA Liquidation of BLMIS ......... 6

        A.    The Adversary Proceeding........................................................ 6

        B.    Objection to the First Interim Fee Applications and the First
Interim Fee Hearing ................................................................ 7

        C.    Objection to the Second Interim Fee Applications and the Second
Interim Fee Hearing ................................................................ 9

        D.    The Instant Motion.................................................................. 10

ARGUMENT ...................................................................................................... 11

    I.    Movants Lack Standing to Appeal........................................................ 11

    II.    Movants Have Not Met the Standard For Leave to Appeal an Interlocutory
Order ................................................................................................... 13

        A.    Standards for Leave to Appeal from an Interlocutory Order ................... 13

        B.    The Net Equity Dispute Raised by Movants in Support of Leave to
Appeal Was Not Before, Or Determined By, the Bankruptcy Court
in Connection with the Second Interim Fee Hearing.............................. 15

        C.    The Remaining "Controlling Issues of Law" Asserted by Movants
Fail to Meet the Standard for Leave to Appeal ....................................... 18

            1.    The Bankruptcy Court found that the Trustee and B&H are
Disinterested .............................................................. 19

            2.    Approval of the Interim Fee Applications ................................... 23

            3.    The Order Involved No Violation of Due Process Rights .......... 24

            4.    The Trustee's Use of Rule 2004 Subpoenas is Proper................. 26

CONCLUSION.................................................................................................... 29

300064128

# **TABLE OF AUTHORITIES**

## **CASES**

*Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554 (D. Del. 1996) ........................................... 18

*German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp 1385 (S.D.N.Y. 1995).................. 14

*In re A.R. Baron Co., Inc.*, 226 B.R. 790 (S.D.N.Y. 1998) ........................................... 26

*In re Adelphia Communications Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) ............................. 14, 22

*In re Adler Coleman Clearing Corp.*, 211 B.R. 486 (S.D.N.Y. 1997) ................................... 26

*In re Adler*, 1998 Bankr. LEXIS 1076  (S.D.N.Y. Aug. 25, 1998), *aff'd*, 2000 U.S. App. LEXIS 14008 (2d Cir. Mar. 13, 2000)............................................................... 20

*In re Drouin*, 1999 Bankr. LEXIS 1878 (Bankr. D.N.H. Nov. 19, 1999) ................................. 19

*In re Flor*, 79 F.3d 281 (2d Cir. 1996)............................................................... 14, 15

*In re IBI Sec. Serv., Inc.*, 174 B.R. 664 (E.D.N.Y. 1994).......................................... 14, 23

*In re Ionosphere Clubs,* Inc., 179 B.R. 24 (S.D.N.Y. 1995).............................. 13, 14, 18, 22

*In re Johns Manville Corp.*, 340 B.R. 49 (S.D.N.Y. 2006) ........................................... 11

*In re Miguel,* 30 B.R. 893 (Bankr. E.D. Ca 1983) ........................................................... 19

*In re O'Brien*, 184 F.3d 140 (2d Cir. 1999)...................................................................... 11

*In re Pan Am* Corp., 159 B.R. 396 (S.D.N.Y. 1993) .................................................. 13

*In re Rea Holding Corp.*, 2. B.R. 733 (S.D.N.Y. 1980) ................................................. 21

*In re Victory Markets, Inc.*, 195 B.R. 9 (N.D.N.Y. 1996) ........................................ 11, 12

*In re War Eagle Constr. Co., Inc.*, 249 B.R. 686 (S.D. W.Va. 2000) ......................... 18

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 n.2 (2d Cir. 1988) ................................ 11

*Matter of W.T. Grant Co.*, 4 B.R. 53 (Bankr. S.D.N.Y. 1980) ................................... 21

*North Fork Bank v. Abelson*, 207 B.R. 382 (E.D.N.Y. 1997) ..................................... 14

*Oxford Sec.*, 486 F.2d 1396 ....................................................................................... 24

*P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*, 161 F. Supp.2d 355 (D.N.J. 2001) ............................................................................................................ 14

Peskin, et al. v. Picard, No. 09-08730............................................................................. 7

*SEC v. Oxford Sec., Ltd.*, 486 F.2d 1396 (2d Cir. 1973)(reversing district court's finding of unconstitutionality of SIPA) ........................................................... 17

*Securities Investor Protection Corp. v. Saxon Secs. Corp.*, No. 75 Civ. 377 (RJW), 1975 U.S. Dist. LEXIS 14757 (S.D.N.Y. 1975) ........................................ 26

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273 (S.D.N.Y. 1999) ........................................................................................ 26

*United States v. Madoff*, No. 08 CV 2735 ................................................................... 4

**STATUTES**

15 U.S.C. § 78aaa *et seq.* ........................................................................... 4

15 U.S.C. § 78ff ........................................................................................... 4

15 U.S.C. § 78j(b) ....................................................................................... 4

17 C.F.R. 240.10b-5 .................................................................................... 4

28 U.S.C. § 158(a) ..................................................................................... 13

28 U.S.C.§ 1292(b) .................................................................................... 13

78eee(6) of the Securities Investor Protection Act ("SIPA") .................... 20

78eee(6)(A)-(B) ......................................................................................... 20

78eee(a)(4)(A) of the Securities Investor Protection Act ("SIPA") ........... 4

78eee(b)(3) ................................................................................................. 24

78eee(b)(5) of SIPA .................................................................................... 5

78eee(b)(5)(B) of the Securities Investor Protection Act ("SIPA") .......... 23

78eee(b)(5)(C) of the Securities Investor Protection Act ("SIPA") .... 23, 24

78eee(b)(6) of the Securities Investor Protection Act ("SIPA") .......... 5, 20

78fff-2(b) of the Securities Investor Protection Act ("SIPA") .................. 25

78fff-3 of the Securities Investor Protection Act ("SIPA") ...................... 24

78fff-3(a) of the Securities Investor Protection Act ("SIPA") .................. 12

*Hearings on H.R. 8331* ............................................................................. 20

**RULES**

327(a) of the Bankruptcy Code ............................................................... 5, 20

330 of the Bankruptcy Code ........................................................................ 5

331 of the Bankruptcy Code ........................................................................ 5

Bankruptcy Rule 2016(a) ............................................................................. 5

Federal Rule of Bankruptcy Procedure 2014(a) ...................................... 5, 20

Local Bankruptcy Rule 2016-1 ................................................................... 5

Local Bankruptcy Rule 9014-2 .................................................................. 19

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (collectively, "Debtors"), respectfully submits this memorandum of law in opposition to the motion and accompanying pleadings (collectively, the "Motion") of Diane Peskin, Roger Peskin, Maureen Ebel and certain other customers[1] (collectively, "Movants") for leave to appeal the *Order Approving Applications of Trustee and Baker & Hostetler LLP (I) For Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses and (II) To Amend the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP*, dated December 17, 2009 ("Second Interim Fee Order") of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), to the extent the Second Interim Fee Order granted the second applications for interim compensation of the Trustee and his counsel, Baker & Hostetler LLP ("B&H").[2]

## PRELIMINARY STATEMENT

The Motion is functionally duplicative of the Movants' previous motion for leave to appeal the Bankruptcy Court's order approving the first interim fee applications of the Trustee and B&H, which remains pending before the Honorable George B. Daniels in this Court ("First Motion for Leave").[3]  In their current Motion, Movants once again have improperly interjected an ongoing legal dispute they have concerning the Trustee's use of a "cash-in, cash-out"

---

[1] A list identifying by name the Movants upon whose behalf the Motion is filed is annexed as Exhibit A to the Declaration of Helen Davis Chaitman in Support of Motion for Leave to Appeal (the "Chaitman Declaration"), dated December 23, 2009, filed with the Motion.

[2] A copy of the Second Interim Fee Order is annexed as Exhibit C to the Chaitman Declaration.

[3] For this reason, the Motion should be assigned to Judge Daniels on the grounds of judicial economy.

methodology of calculating a customer's net equity to determine claims filed in this case (the "Net Equity Dispute") as the basis for objecting to interim fees.  Time and time again, the Bankruptcy Court has instructed the Movants to await determination of the Net Equity Dispute, which is currently scheduled for argument on February 2, 2010 (the "Net Equity Hearing").  Movants are a small group of customers, who should not be able to circumvent procedures established by the Bankruptcy Court to determine an issue that applies to all customer claims.  Nonetheless, Movants are raising this issue at every turn, essentially "churning" their arguments multiple times in various pleadings, all of which must be addressed by the Trustee, B&H, the Bankruptcy Court, and this Court.

Courts do not grant motions for leave to file interlocutory appeals lightly, as one of the key concerns is to prevent the resultant disruption and delay caused by piecemeal litigation.  As discussed below, Movants' arguments in support of the Motion demonstrate the very essence of concerns relating to piecemeal litigation.

The Net Equity Dispute is an issue of comprehensive application in this liquidation proceeding.  It is not an appropriate issue for determination in the context of an objection to fee applications.  In order to have the issue litigated in a manner in which all interested parties can participate, the Trustee sought and the Bankruptcy Court issued an Order Scheduling Adjudication of "Net Equity" Issue ("Net Equity Scheduling Order") dated September 16, 2009, which set forth a short-term schedule in which the issue of the proper methodology for calculating net equity in this liquidation proceeding will be heard and determined in the first instance by the Bankruptcy Court.  Movants have had an opportunity to file briefs on the Net

Equity Dispute pursuant to the Net Equity Scheduling Order, and have done so.[4]  The ultimate outcome of that matter will determine whether the Trustee's interpretation is or is not correct, and claims will thus be determined and paid -- both prospectively, and retroactively with respect to the claims which were previously determined -- in accordance with the final decision on this issue.

The only new issue which Movants raise in the Motion, as compared with Movants' First Motion for Leave, is whether the Trustee and B&H should have been awarded fees relating to the issuance of subpoenas under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") to the banks of customers who received funds from BLMIS.   As discussed herein, Movants' argument with respect to this issue is baseless.

The Motion should be denied for multiple reasons:  (i) Movants lack standing to appeal because they have not shown that they will be directly and adversely affected pecuniarily by the Order; (ii) the issues unilaterally raised by Movants were not the subject of the Second Interim Fee Hearing (as defined below), and they are completely self-serving in that they are attempts to sidetrack existing, pending litigation and to disqualify the Trustee and B&H because of a legal dispute centered on the Net Equity issue; and (iii) Movants have failed to meet the standards for leave to appeal from the interlocutory Order even under the issues as framed by them.

## STATEMENT OF FACTS

Despite the prolixity of assertions set forth by Movants in their Motion, the factual background relevant to this motion is discrete and narrow, as set forth below.[5]

---

[4] *See* Customers' Memorandum of Law in Opposition to Trustee's Motion for an Order Approving the Trustee's Re-Definition of "Net Equity" Under the Securities Investor Protection Act, *SIPC v. BLMIS*, 08-1789 (BRL) (Dkt. No. 755).

[5] The facts and many of the arguments of the Movants and responses by the Trustee are set forth in pleadings already submitted to the District Court in connection with the First Motion for Leave.  Nonetheless, the Trustee and B&H repeat them here in the event that this Motion is not assigned to Judge Daniels.

I.      **Commencement of the Action**

On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was criminally charged with a multi-million dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b) , 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York (the "District Court"), captioned *United States v. Madoff*, No. 08 CV 2735.[6]   Also on December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against defendants Bernard L. Madoff and BLMIS (together, the "Defendants") (Case No. 08-CV-10791).

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §78aaa *et seq.*,[7] the SEC consented to a combination of the SEC Action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part, appointed the Trustee and B&H as his counsel, and removed the case to the Bankruptcy Court.

II.     **Orders Regarding Disinterestedness and Interim Compensation of Trustee and Counsel**

On January 2, 2009, the Trustee and B&H filed with the Bankruptcy Court declarations of disinterestedness (*BLMIS*, Dkt. No. 24).  On February 4, 2009, after notice and a hearing, the Bankruptcy Court entered an Order Regarding Disinterestedness of the Trustee and Counsel to

---

[6] On March 10, 2009, the criminal case was transferred to District Judge Denny Chin in the United States District Court for the Southern District of New York and was assigned a new docket number, No. 09 CR 213 (DC).
[7] Subsequent references to SIPA shall omit "15 U.S.C."

                                    - 4 -

the Trustee (*BLMIS*, Dkt. No. 69), finding that the Trustee and B&H were disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 2014(a) (the "Bankruptcy Rules"), and were therefore in compliance with the disinterestedness requirement in §78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

On February 25, 2009, the Bankruptcy Court entered an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1, which established Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP (*BLMIS*, Dkt. No. 126) (the "Compensation Order").    The Compensation Order allows the Trustee to seek interim compensation for services performed by the Trustee and B&H and sets forth the governing procedures regarding the same.

Pursuant to the Compensation Order, on July 10, 2009, the Trustee and his counsel filed with the Bankruptcy Court their First Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*, Dkt. Nos. 320 and 321, respectively) (the "First Interim Fee Applications"), which were approved by order dated August 6, 2009.

On November 24, 2009, the Trustee and his counsel filed the Second Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Court (*BLMIS*, Dkt. Nos. 998 and 1010, respectively) (the "Second Interim Fee Applications"), which were approved by the Second Interim Fee Order. [8]

---

[8] The Second Interim Fee Order, among other things, amends certain provisions of the Compensation Order. The amendment is not material to the instant Motion and the Motion does not take issue with such amendment.

- 5 -

### III.    Movants' Filings Relating to the Trustee and SIPA Liquidation of BLMIS

In a variety of different fora[9] and pleadings, Movants and their counsel have repeated

many of the same allegations and "facts" they have presented in their Motion.  The thrust of their

argument in the various pleadings is that the Trustee's interpretation of "net equity" is incorrect

and contrary to SIPA (as defined earlier, the "Net Equity Dispute").  They argue that the Trustee

must allow their customer claims in the amount shown on their last customer statements issued

by BLMIS.

Because those customer statements issued by BLMIS were based on fictitious profits and

were entirely fraudulent, however, the Trustee has disregarded the customer statements for

purposes of claims determinations.  Instead, consistent with the treatment of claims in other

Ponzi scheme liquidations, the Trustee is allowing claims in the amounts that a customer actually

deposited with BLMIS, less the amounts that the customer withdrew from the account,

sometimes referred to as the "cash-in, cash-out" approach.  Although there are some customers

that disagree with the Trustee's approach, all have been given an opportunity to brief the issue

pursuant to the Net Equity Scheduling Order, and on February 2, 2010, this issue will be heard

by the Bankruptcy Court in a manner that allows all parties to participate and be heard.

### A.    The Adversary Proceeding

Movants Diane and Roger Peskin and Maureen Ebel ("Plaintiffs") filed customer claims

with the Trustee prior to the statutory bar date of July 2, 2009, and each of their claims has been

determined by the Trustee.  On June 10, 2009, Plaintiffs filed a complaint (the "Complaint")

commencing an adversary proceeding (the "Adversary Proceeding") against the Trustee in the

Bankruptcy Court captioned *Peskin, et al. v. Picard, as Trustee*, No. 09-1272 (BRL),

---

[9] Counsel for Movants and at least one of Movants have made written and oral public statements that will not be
detailed here.

("hereinafter "*Peskin*") (Dkt. No. 1).  Plaintiffs' Complaint sought a declaration that, *inter alia*, the Trustee's net equity interpretation is incorrect and that he is bound by SIPA to fix a customer's claim at the balance shown on the customer's last BLMIS statement.  (Compl. ¶ 97).

The Trustee moved to dismiss the Complaint in pursuant to Federal Rule of Civil Procedure 12(b)(6) on multiple grounds, and on September 10, 2009, the Bankruptcy Court granted the Trustee's motion and dismissed the complaint in its entirety.  (*Peskin*, Dkt. No. 42, at 10-11).   On that same date, the Bankruptcy Court granted the Trustee's motion for the Scheduling Order on the Net Equity Dispute, which permitted all customers to participate in the litigation of that issue, rather than having it determined within the confines of a single adversary proceeding.  *Id*. at 14.  As to the claim as relating to the Net Equity Dispute, the Bankruptcy Court held that because its resolution hinged on the outcome of that dispute, the claim was not yet ripe. *Id.* at 16.

On September 18, 2009, Plaintiffs filed a Notice of Appeal with respect to the dismissal of the Complaint (*Peskin*, Dkt. No. 44), and on December 2, 2009, they filed their brief in support of their appeal in this Court. (*Peskin, et al. v. Picard*, No. 09-08730 (S.D.N.Y.), Dkt. No. 8).  On December 23, 2009, the Trustee filed an opposition brief.  Id. at Dkt. No. 13.  This appeal remains pending as of the date hereof before the Honorable John G. Koeltl.

**B.    Objection to the First Interim Fee Applications and the First Interim Fee Hearing**

On August 3, 2009, Movants Peskins and Ebel filed a fifty-one page objection to the First Interim Fee Applications in the Bankruptcy Court (the "First Objection").  (*BLMIS*, Dkt. No. 351).  Raising issues ancillary to the services and compensation of the Trustee and B&H, the Objection raised the very same arguments and allegations previously raised in the Complaint regarding the Net Equity Dispute and certain factual allegations relating to their particular

customer accounts. The First Objection attempted to use Movants' prior arguments about the Net Equity Dispute as a basis for alleging that the Trustee and B&H have a conflict of interest and should be disqualified from serving. SIPC and the Trustee each filed a reply to the First Objection on August 3, 2009 (*BLMIS*, Dkt. No. 357), and August 5, 2009, respectively. (*BLMIS*, Dkt. No. 358). A hearing was held before the Bankruptcy Court on the First Interim Fee Applications on August 6, 2009.

At the Hearing before Judge Lifland (the "First Interim Fee Hearing"), the Trustee, counsel for the Trustee, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Interim Fee Applications was reasonable. Counsel for Movants was also heard, and essentially asserted the same arguments set forth in their First Objection - - that the Trustee's interpretation of "net equity" was contrary to SIPA.

After consideration of each of the applications and responses, the Court stated that it found "no merit to the objections." Transcript of Hearing on August 6, 2009 ("First Interim Fee Hearing Transcript") at 34.[10] The Bankruptcy Court found that it had already held a disinterestedness hearing, at which there were no objections, and there were "no new facts that have come forward that would change the disinterestedness concept with respect to the fee applications" before the Court. First Interim Fee Hearing Transcript at 34-35. The Bankruptcy Court also rejected those claims raised in the objections filed that payment of fees to the Trustee and B&H resulted in less funds to be distributed to customers. First Interim Fee Hearing Transcript, at 35-36.

---

10 A copy of the First Interim Fee Hearing Transcript is annexed as Exhibit A to the Declaration of Keith R. Murphy dated January 5, 2010 ("Murphy Decl.") submitted simultaneously herewith.

Thus, despite "the disagreement of methodology being applied here in this unique and unusual case," the Bankruptcy Court held that the services rendered "have been reasonable, that they have been done responsibly, and to this point have been with a salutary effect." First Interim Fee Hearing Transcript, at 38. In an order dated August 6, 2009 (the "First Interim Fee Order"), the Bankruptcy Court approved the First Interim Fee Applications.

On August 14, 2009, Movants Peskins and Ebel filed a Motion for Leave to Appeal (*BLMIS*, Dkt. No. 367), memorandum of law in support of the motion (*BLMIS*, Dkt. No. 368), and a notice of appeal (*BLMIS*, Dkt. No. 366), seeking interlocutory review of the First Interim Fee Order. On August 24, 2009, the Trustee filed an Opposition to the Motion for Leave to Appeal (*BLMIS*, Dkt. No. 378). The Motion for Leave to Appeal the First Interim Fee Order is currently pending in this Court before Judge Daniels.

### C.      Objection to the Second Interim Fee Applications and the Second Interim Fee Hearing

On December 14, 2009, Movants filed an objection to the Second Interim Fee Applications in the Bankruptcy Court (the "Second Objection") (*BLMIS*, Dkt. No. 1055). Although styled as an objection to the Interim Fee Applications, the Objection also "offer[s] to prove the facts set forth [therein] at an evidentiary hearing at a time set by the Court." Second Objection at ¶ 10.

In the Second Objection, the Movants raised virtually the identical issues as in the First Objection, regurgitating once again the arguments made in the Complaint. However, by the time the Second Objection was filed, the Complaint had been dismissed in its entirety and the Movants were instructed by the Court that the Net Equity Issue was not ripe in light of the Net Equity Scheduling Order. The only additional issue that was raised by the Movants in the Second Objection relates to the Trustee's use of Rule 2004 to subpoena the bank records of

BLMIS customers. *See* Second Objection at ¶¶ 61-68. The Trustee filed a response to the Second Objection on December 16, 2009 (*BLMIS*, Dkt. No. 1075).

At the fee hearing held on December 17, 2009 (the "Second Interim Fee Hearing"), the Trustee, his counsel and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Second Interim Fee Applications was reasonable. In response, Judge Lifland stated that the Trustee's response and presentation "makes it clear that there is nothing in the objection to the Trustee's fees or the fees of Baker Hostetler that creates issues even that I haven't addressed previously, nor do they raise any sufficient concerns that this Court should order some kind of an evidentiary hearing." Transcript of Hearing on December 17, 2009 (the "Second Interim Fee Hearing Transcript"), at 33.[11]

Furthermore, the Bankruptcy Court dismissed the Movants' Rule 2004 argument as "bordering on frivolous." *Id.* The court stated that the use of broad 2004 subpoenas is "almost basic" in a case such as this one, and refused to penalize the Trustee for being appropriately aggressive in his hunt to recover assets of the estate. *Id.* The Movants' Second Objection was thus overruled by Judge Lifland on "the same ground that [he] ha[d] done previously" as there was "nothing new in the current objection that overlaps the original rulings." *Id.* at 33-34. The Court thereafter entered the Second Interim Fee Order approving the applications.

### D.    The Instant Motion

On December 23, 2009, Movants filed the instant Motion (*BLMIS*, Dkt. No. 1115) and a memorandum of law in support of the Motion ("Movants Br.") (*BLMIS*, Dkt. No. 1116), seeking interlocutory review of the Second Interim Fee Order. Once again, Movants' Motion and supporting papers contain the same allegations -- alleged bad acts of the Trustee, his alleged

---

[11] A copy of the Second Interim Fee Hearing Transcript is annexed to the Murphy Decl. as <u>Exhibit B</u>.

improper interpretation and implementation of SIPA with regard to "net equity," spurious allegations regarding the purposes and history of SIPA and SIPC, as well as *ad hominem* attacks against the Trustee and SIPC.  In addition, the Motion raises an issue that Movants raised in the Second Objection – the Trustee's use of Rule 2004 to subpoena certain BLMIS customers' bank records -- which they assert is in violation of the law.  Although this claim joins the rest of Movants' arguments as meritless, the Trustee addresses it below.

## ARGUMENT

### I.    Movants Lack Standing to Appeal

Movants cannot meet their threshold burden to establish standing to appeal the Order. *See In re Johns Manville Corp.*, 340 B.R. 49, 56 (S.D.N.Y. 2006) (appellant bears the burden of showing standing to appeal).   To meet the threshold to appeal a bankruptcy court's order, Movants must be "persons aggrieved," meaning that they are "directly and adversely affected pecuniarily by the challenged order of the bankruptcy court."  *In re O'Brien*, 184 F.3d 140 (2d Cir. 1999).   This test, which requires financial injury, is different from the "injury in fact" test from Article III of the Constitution, and it makes it more difficult to secure appellate standing in bankruptcy cases than in other kinds of civil actions.  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636 n.2 (2d Cir. 1988); *In re Victory Markets, Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996).   The "person aggrieved" standard reflects the concern that bankruptcy litigation would become mired in endless appeals by a litany of parties who are indirectly affected by every bankruptcy court order.  *See Kane*, 843 F.2d at 642; *Victory Markets*, 195 B.R. at 15.

As observed by the court in *Kane*, generally "creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims." *Kane*, 843 F.2d at 642.  This rule however

- 11 -

is not applicable to orders which do not dispose of assets in the debtor's estate. *See Victory Markets*, 195 B.R. at 15.

Movants here have failed to meet their burden to establish standing because they have not shown the requisite direct and adverse pecuniary harm. They have not, and cannot, because they have not suffered *any* harm by the Order. The Trustee and B&H are paid by SIPC, not from customer funds collected and recovered by the Trustee for the benefit of the fund of customer property. Furthermore, Movants have not shown that SIPC is unable to pay their claims for an advance of funds provided for under §78fff-3(a) of SIPA. As a point of fact, Movants Ebel and the Peskins have each already been paid their maximum SIPC advances: Movant Ebel has already received funds from the Trustee amounting to $1 million from funds advanced by SIPC in connection with her two claims, and Movants Peskins have received $500,000 in connection with an advance from SIPC.[12]

In an effort to "cure" a standing defect in their prior motion for leave to appeal the First Interim Fee Order, Movants have now asserted their arguments on behalf of additional customers whose claims may not yet be fully determined. However Movants also have not shown that such customers are entitled to any SIPC advance, and that even if so entitled, that SIPC is not able to satisfy such advances.

Thus, if the Motion is denied, Movants will not suffer direct and adverse pecuniary harm. Based on the foregoing, Movants lack standing to pursue the appeal.

---

[12] Movants are under a misguided impression that SIPC is insolvent. *See* Movants' Br. at 10. However, in just one year since the inception of this case, the Trustee has determined more than 11,600 customer claims and SIPC has committed to advance over $569 million to BLMIS customers in full or partial satisfaction of those claims. That number is increasing every day, and there is no present indication that SIPC will not be able to fulfill its monetary obligations.

300064128

## II.    Movants Have Not Met the Standard For Leave to Appeal an Interlocutory Order

As set forth below, one of the elements that a movant seeking leave to appeal must demonstrate is that the disputed ruling involves a controlling issue of law.  It is the Trustee's position that the Order addressed no controlling issues of law, and therefore the Motion must fail.  Nonetheless, the Trustee addresses each of Movants' asserted issues of law herein.

### A.    Standards for Leave to Appeal from an Interlocutory Order

Pursuant to 28 U.S.C. §158(a), the district court has jurisdiction to hear appeals of interlocutory orders of the bankruptcy court, provided that the district court grants leave to appeal.  However, it is well-established that leave to appeal is granted only in exceptional circumstances. *See In re Ionosphere Clubs,* Inc., 179 B.R. 24, 28 (S.D.N.Y. 1995); *In re Pan Am Corp.*, 159 B.R. 396, 401 (S.D.N.Y. 1993).  This serves the established judicial policy of discouraging interlocutory appeals and avoiding the resulting disruption and delay which is caused by such piecemeal litigation. *See Ionosphere*, 179 B.R. at 28.

District courts generally apply the standards set forth in 28 U.S.C. §1292(b) when determining whether to grant leave to appeal from an interlocutory order. *See, e.g., Pan Am Corp.*, 159 B.R. at 401 ("28 U.S.C.§1292(b), which governs interlocutory appeals from the district courts to the courts of appeal, provides the standard for determining whether leave to appeal from an interlocutory bankruptcy order should be granted"); *Ionosphere*, 179 B.R. at 28.

Under 28 U.S.C. §1292(b), the party seeking leave to appeal must establish that (1) the disputed ruling involves a controlling question of law, (2) as to which there are substantial grounds for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See Pan Am* Corp., 159 B.R. at 401.  As stated above, exceptional circumstances are generally required to support leave to file an

interlocutory appeal. *See In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *In re Adelphia Communications Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005). The granting of a permissive interlocutory appeal is limited to "extraordinary cases where appellate review might avoid protracted and expensive litigation," and its purpose is not to provide early review of difficult rulings in hard cases. *See German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp 1385, 1398 (S.D.N.Y. 1995). Whether to grant an interlocutory appeal from a bankruptcy court's order lies within the district court's discretion. *See Adelphia*, 333 B.R. at 658.

A "controlling question of law" is one in which reversal of the decision of the bankruptcy court would terminate the action, or at minimum, determination of the issue appealed would materially affect the outcome of the litigation. *See North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997). The " 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Adelphia*, 333 B.R. at 658 (citations omitted). Mere disagreement with the lower court's ruling is insufficient to meet this standard. *See P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*, 161 F. Supp.2d 355, 359 (D.N.J. 2001). Where a controlling question of law was not decided by the bankruptcy court, leave to appeal should be denied by the district court. *See Ionosphere*, 179 B.R. at 29.

There are substantial grounds for difference of opinion on a controlling issue of law where the issue is difficult and of first impression. *See In re IBI Sec. Serv., Inc.*, 174 B.R. 664, 670 (E.D.N.Y. 1994). Substantial grounds for difference of opinion must arise out of a genuine doubt with respect to the correct applicable legal standard relied on in the order below. *See Adelphia*, 333 B.R. at 658. It is not sufficient that there is merely a strong disagreement on an issue between the adversary parties. *See IBI Sec. Serv*, 174 B.R. at 670. Furthermore, the mere

presence of a disputed issue that may be a question of first impression, standing alone, is not sufficient to show a substantial ground for difference of opinion. *See Flor*, 79 F.3d at 284.

> **B.    The Net Equity Dispute Raised by Movants in Support of Leave to Appeal Was Not Before, Or Determined By, the Bankruptcy Court in Connection with the Second Interim Fee Hearing**

A review of Movants' "Statement of Questions Presented and Relief Sought" in their Brief tellingly reveals that their request for leave to appeal the interlocutory Order is almost completely based on the Net Equity Dispute. *See* Movants Br. at 9-10. Although four separate questions are presented, three of them would be rendered effectively moot if the Trustee interpreted "net equity" in the manner proposed by Movants. As discussed below, because the Net Equity Dispute (i) is the subject of the Net Equity Hearing, where all interested parties will have had an opportunity to respond and will be heard, and (ii) was not properly before the Bankruptcy Court or ruled upon in connection with the Second Interim Fee Hearing on the Second Interim Fee Applications, the Motion must be denied.

Movants' first question posits whether the Trustee and B&H should be disqualified and have their Second Interim Fee Applications denied because of their alleged "defiance" of their statutory obligations in order to "enrich" SIPC. *See* Movants Br. at 9. Movants allege that the Trustee and B&H have a conflict of interest which arises from the alleged "rejection" of fundamental mandates of SIPA intended to protect customers. *Id.* at 13. This argument, and others cited in Movants' Brief in support of it, revolve around the methodology being used by the Trustee to compute "net equity." Although Movants have tried to conceal this argument by removing the repetitive references to the words "net equity," this tactic is transparent. In fact, Movants acknowledge that no alleged conflict of interest arose "until the Trustee revealed that he was going to act as SIPC's agent in violating the statutory rights of Customers, all of which took

300064128

place *after* the disinterestedness hearing." *Id*. at 13 (emphasis in original). The statutory rights of Customers to which Movants are referring is their claim that they are entitled to be paid their BLMIS account balance based on the last account statements. *See, e.g.,* Movants' Br. at 5-6 ("[T]he Trustee and B&H have put themselves in a position of an untenable conflict of interest . . . by ignoring SIPA's mandate that Customer claims be paid 'promptly' based upon their Statutory Balances.").[13]

Movants' second question presented posits whether the Trustee and B&H can rely upon provisions in SIPA relating to payment of their fees "despite the fact that the Trustee and B&H have ignored other provisions of SIPA which mandate prompt payment of Customer claims based upon their Statutory Balances." *Id*. at 9. As argued by Movants, "[h]owever, SIPC and the Bankruptcy Court did not address whether SIPC and the Trustee were entitled to the benefit of [the SIPA provision relating to payment of fees] when they had ignored their fundamental obligation under SIPA to promptly pay Customer claims based upon the Customers' Statutory Balances." *Id*. at 14. This question also arises entirely out of Movants' argument that the Trustee's calculation of "net equity" is not in accordance with their interpretation.

The third question presented by Movants is whether they were denied due process of law by the Bankruptcy Court's refusal to schedule an evidentiary hearing with respect to the Trustee's and B&H's disinterestedness. *Id*. at 9-10, 15-17. Among other arguments in support of this point, Movants state that Congress, through SIPA, statutorily created a protected property interest for the customers in the form of a right to receive SIPC "insurance" of up to $500,000. *Id*. at 16. Movants further argue that Congress impermissibly created a statutory scheme permeated by partiality, conflicts of interest and bias, and that SIPC has a financial incentive to

---

[13] The Trustee notes that Movants are relying upon their final BLMIS statements for their definition of "Statutory Balances," however such statements are at best only part of the books and records to be examined by the Trustee and referenced in §78fff-2(b).

deny customer claims and has acted solely to protect its members from the obligation to fund the payments to customers. *Id*. at 16-17.

Aside from challenging the fundamental statutory scheme of SIPA based on Movants' perception of inherent conflicts of interest[14] -- which Movants believe is a pure question of law that the district court could decide quickly and cleanly without having to study the record – *see id*. at 21, it is clear again that Movants' argument is founded upon the Trustee's application of "net equity" in a manner inconsistent with their interpretation. *See* Movants Br. at 16 ("While SIPC is not a governmental agency, it is a creation of Congress and performs public functions, one of which is the designation of trustees and counsel in bankruptcy proceedings who have the power, in the first instance, to determine claims").

At the First Interim Fee Hearing, the Bankruptcy Court found that the Objection lodged by Movants to the First Interim Fee Applications of the Trustee and B&H essentially related to the dispute concerning the different interpretation of net equity. *See* First Interim Fee Hearing Transcript, at 31-32. The Bankruptcy Court further found that it was not appropriate for Movants to use that as a fulcrum to object to fees. *See id*. At the Second Interim Fee Hearing, the Bankruptcy Court essentially reiterated the findings above by stating that, with the exception of objections to the use of Rule 2004 subpoenas, addressed *infra*, the Movants presented no issue which the court has not dealt with previously. *See* Second Hearing Transcript, at 34.

Because the Net Equity Dispute explicitly was not decided by the Bankruptcy Court in connection with the Interim Fee Applications, and because it will be the subject of a separate hearing to be held on February 2, 2010 in the main case,[15] this Court should decline to grant Movants leave to appeal. *See, e.g., In re War Eagle Constr. Co., Inc.*, 249 B.R. 686, 689 (S.D.

---

[14] Movants' constitutional argument should be rejected. S*ee, e.g., SEC v. Oxford Sec., Ltd.*, 486 F.2d 1396 (2d Cir. 1973)(reversing district court's finding of unconstitutionality of SIPA).

[15] Adversary Proceeding No. 08-1789 (BRL).

W.Va. 2000) (denying permission to appeal interlocutory order where part of issue on appeal was the subject of pending adversary proceeding, and finding the potential for duplicative proceedings); *Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554, 557 (D. Del. 1996) (denying appeal of interlocutory order because issues presented on appeal may be mooted by later decision of bankruptcy court, and movant failed to demonstrate existence of exceptional circumstances that warranted granting interlocutory appeal to demonstrate existence of exceptional circumstances that warranted granting interlocutory appeal); *Ionosphere*, 179 B.R. at 28 ("[L]eave to appeal from interlocutory orders should be granted only in 'exceptional circumstances' because to do otherwise would contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation") (internal quotation omitted).

### C.    The Remaining "Controlling Issues of Law" Asserted by Movants Fail to Meet the Standard for Leave to Appeal

The Movants' assertion that the issues are pure legal questions belies the fact that they would involve mixed questions of law and fact, or otherwise fail to meet the standards to appeal an interlocutory order, and therefore are not proper grounds to support a motion for leave to appeal.

As an initial procedural matter, Movants misleadingly claim that the questions presented are of law, not of fact, because their Objection to the Interim Fee Applications constituted an offer of proof, to which the Trustee did not introduce any evidence in opposition, thereby rendering their "facts" indisputable. *See* Movants Br. at 21.    However, in their Second Objection, and again at the Second Interim Fee Hearing, counsel for Movants stated that the Second Objection is an offer of proof and request that the Court set a hearing at which the facts set forth in the objection can be proven. *See* Second Objection, at ¶ 10; Second Interim Fee

300064128

Hearing Transcript, at 31. Judge Lifland plainly indicated during the hearing that no issues raised by Movants warranted an evidentiary hearing.[16] *See* Second Hearing Transcript, at 33. Furthermore, counsel's claim that the Objection constitutes the facts in this matter also is contrary to Local Bankruptcy Rule 9014-2, which states that, in a contested matter, the first scheduled hearing "will not be an evidentiary hearing . . . ." *Id.*

The alleged controlling issues of law as asserted by the Movants relate to: (i) whether the Trustee and B&H are inherently conflicted based on the relationship with SIPC; (ii) whether the Bankruptcy Court was required to approve the Fee Applications because SIPC recommended that they be paid; (iii) whether the customers have been denied due process of law; and (iv) whether the portion of the fees of the Trustee and B&H that relate to Rule 2004 subpoenas for financial records from customers' banks. *See* Movants Br. at 11-12, 14, 15, 17. The Trustee addresses each of these points in turn below to demonstrate that they fail to meet the standards for granting leave to appeal the interlocutory Order.

1.    **The Bankruptcy Court found that the Trustee and B&H are Disinterested**

Procedurally, when a district court determines that circumstances warrant the application of the protections of SIPA to customers of a brokerage firm, the court is to appoint as trustee for the liquidation of the business and as attorney for the trustee those persons that SIPC, in its sole discretion, specifies. *See* §78eee(b)(3). After the proceeding is removed to the bankruptcy court, that court is to hold a hearing on the issue of disinterestedness for the purpose of determining

---

[16] Movants cite two cases in support of their assertion, *In re Drouin*, 1999 Bankr. LEXIS 1878 (Bankr. D.N.H. Nov. 19, 1999), and *In re Miguel,* 30 B.R. 893 (Bankr. E.D. Ca 1983). In *In re Miguel*, a post-trial judgment was granted to plaintiffs after making an offer of proof, when the defendants and their attorney failed to appear at the trial. *In re Miguel*, 30 B.R. at 894. Similarly, in *In re Drouin*, the court's findings were based on the Trustee's offer of proof, when the party against whom an order to show cause was issued failed to appear at the hearing concerning the Order. *In re Drouin*, 1999 Bankr. LEXIS at *7-9. Both cases reflect situations akin to default judgments, where the court was forced to accept the facts presented by the only party appearing as true. These cases are plainly inapposite and do not support Movants' position.

- 19 -

whether the trustee and his counsel are disinterested within the meaning of §78eee(6)(A).  *See*
§78eee(6)(A)-(B).  With respect to the issue of whether Congress intended the power to choose
trustees and their counsel to lie with SIPC, legislative history makes the matter clear: "because of
the numerous times courts have questioned the authority of SIPC to designate the trustee and
counsel, the existing provision that such designations are within the discretion of SIPC is
sharpened."  *Hearings on H.R. 8331 Before the Subcommittee on Consumer Protection and*
*Finance of the H. Comm. On Interstate and Foreign Commerce, 95th Cong. 173 (1977).*

In accordance with the statutory provisions of SIPA, on February 4, 2009, after notice
and a hearing, and upon consideration of the declarations of disinterestedness filed by the
Trustee and B&H, the Bankruptcy Court entered an Order Regarding Disinterestedness of the
Trustee and Counsel to the Trustee (*BLMIS*, Dkt No. 69), finding that the Trustee and B&H were
disinterested pursuant to §78eee(b)(6), section 327(a) of the Bankruptcy Code, and Federal Rule
of Bankruptcy Procedure 2014(a), and were therefore in compliance with the disinterestedness
requirement in §78eee(b)(3), section 327(a) of the Bankruptcy Code, and Bankruptcy Rule
2014(a).

In addition to being disinterested, the Trustee is acting on behalf of the estate.  A SIPA
trustee's primary duty, like that of a chapter 7 trustee, "is not to any individual creditor or even
any particular class of creditors, but to the estate as a whole," and accordingly, "the trustee's
duty to the SIPA estate as a whole clearly prevails over the interests of any single customer."
*See In re Adler*, 1998 Bankr. LEXIS 1076, at *49-50 (S.D.N.Y. Aug. 25, 1998), *aff'd*, 2000 U.S.
App. LEXIS 14008 (2d Cir. Mar. 13, 2000).  The Trustee notes that Movants' demand that the
customers be paid based on their last account balances is essentially a request that the Trustee act
in a way that will be to the detriment of other customers who would benefit under the Trustee's

- 20 -

interpretation of net equity.[17]  The Trustee is well within his rights and duties in the exercise of discretion given to him by Congress to take his position.

Although Movants assert in the Motion that the Bankruptcy Court simply rested on its February 2009 finding that there was no conflict of interest, *see* Movants Br. at 13, the Bankruptcy Court expressly determined at both the First Interim Fee Hearing and the Second Interim Fee Hearing that no new facts were presented which would alter the court's prior findings.  *See* First Interim Fee Hearing Transcript at 34-35; Second Interim Fee Hearing Transcript at 34.  The Bankruptcy Court heard Movants' argument, and effectively determined that even if the "facts" as asserted by Movants were correct, it did not as a legal matter rise to the level of a conflict.  "I do not find that any basis exists for changing this Court's view of disinterestedness exists, and I am very familiar with a lot of the activities that have taking (sic) place in connection with this matter."  First Interim Fee Hearing Transcript at 37.  Furthermore, the Bankruptcy Court found no evidence that the Trustee is not acting in good faith, or that he is guilty of any fraud or dereliction of duty.  *Id.* at 35.  During the Second Interim Fee hearing, the Bankruptcy Court also found no basis to alter its prior findings.  *See* Second Interim Fee Hearing Transcript, at 33-34.  Therefore, no grounds for removal of the Trustee or B&H exist.[18]  *See, e.g., In re Rea Holding Corp.*, 2. B.R. 733, 735 (S.D.N.Y. 1980) (noting that grounds for removal of a trustee are not found in a trustee's formal relationships, rather they are based on fraud and actual injury to the estate); *see also Matter of W.T. Grant Co.*, 4 B.R. 53, 82 (Bankr. S.D.N.Y. 1980) (recognizing that disqualification of attorney requires considerable reluctance because of its

---

[17] As the distribution mechanism is a zero sum game, to the extent that net winners (*i.e.*, those who received more from BLMIS than they invested) receive recoveries from BLMIS in addition to the amounts they already received, it will adversely affect net losers (*i.e.*, those who received less from BLMIS than they invested) since there will be less available to repay their claims.  Thus, determination of the Net Equity Dispute in the manner proposed by Movants would help some customers but harm others.

[18] The Movants did not add any new arguments relating to this point at the Second Interim Fee Hearing, and instead relied upon their papers as filed and request for an evidentiary hearing.

immediate adverse effect on the administration of the estate and because attempts to disqualify attorneys are often interposed for tactical purposes).[19]

Viewing Movants' "controlling issue" of possible conflict for what it really is – an indirect attack on the Trustee's methodology for determining claims – it is clear that they cannot satisfy the standards for granting an interlocutory appeal. Determination of a conflict of interest necessarily involves a review of the facts in the case. In addition to SIPA's statutory right to select trustees and their counsel, *see* §78eee(b)(3); *Oxford Sec.*, 486 F.2d 1396 (reversing district court's finding of unconstitutionality of SIPA), a separate disinterestedness hearing is held by the bankruptcy court. In this case, the Bankruptcy Court specifically found that no basis was presented by Movants which would justify an alteration of the court's prior finding of disinterestedness. *See, e.g.,* First Interim Fee Hearing Transcript, at 37. Issues relating to the disinterestedness of the Trustee and B&H are not "pure" questions of law that the district court could decide quickly and cleanly without having to study the record. Therefore, Movants fail this prong of the standard, which warrants denial of their request for leave to appeal this issue. *See Adelphia*, 333 B.R. at 658; *Ionosphere*, 179 B.R. at 29 (where a controlling question of law was not decided by the bankruptcy court, leave to appeal should be denied).

Movants also fail to demonstrate that their challenge of the disinterestedness of the Trustee and B&H involve difficult questions of law. To demonstrate a substantial ground for a difference of opinion, an appellant must show that the issue is difficult and of first impression. *See, e.g.*, *Adelphia*, 333 B.R. at 658-59. Again, Movants tie their argument of conflict of interest to the Trustee's alleged "defiance of his statutory responsibilities." Movants Br., at 22. This simply relates to their disagreement with the Trustee's method of calculation of net equity.

---

[19] Any other trustee and law firm would presumably suffer from the same asserted conflicts alleged by Movants unless they took Movants' position with respect to the Net Equity Dispute.

However, to satisfy this prong, it is not sufficient that there is merely a strong disagreement on an issue between the adversary parties. *See In re IBI Sec. Serv.*, 174 B.R. at 670. Thus, Movants have failed to demonstrate this element.

Lastly, an immediate appeal of this issue will not materially advance the termination of the litigation. The dispute concerning the Trustee's methodology for determining net equity is the subject of the Net Equity Hearing, at which point the Net Equity Dispute will be fully presented to, and explicitly addressed by, the Bankruptcy Court. Therefore, immediate appeal of this issue would not materially advance the termination of the litigation. Instead, it would have the opposite effect, as it would require the Bankruptcy Court to divert its determination on the Net Equity Dispute from the context of the Net Equity Hearing – its proper context.

## 2.    Approval of the Interim Fee Applications

Under SIPA as promulgated by Congress, SIPC has the responsibility to review fee applications submitted in SIPA proceedings, and is required to file its recommendation prior to the hearing on such applications. *See* § 78eee(b)(5)(B)-(C). Furthermore, § 78eee(b)(5)(C) requires that the court award the amount recommended by SIPC when the following conditions are met: (i) SIPC will advance funds to pay the fee allowances "without any reasonable expectation of recoupment thereof," and (ii) when there is no difference between the amounts requested and the amounts recommended by SIPC. Even with respect to those fee allowances that do not meet these parameters, SIPA requires that the court place considerable reliance on SIPC's recommendation and give "due consideration to the nature, extent, and value of the services rendered." *See* §78eee (b)(5)(C).

As recognized by the Bankruptcy Court, the statutory provisions of SIPA provide that the court *shall* award the amount recommended by SIPC in cases where the amount requested and

- 23 -

the amount recommended by SIPC are the same, and in which allowances are to be paid by SIPC without reasonable expectation of recoupment, as is the case here. *See* Second Interim Fee Hearing Transcript at 32; §78eee(b)(5)(C).

Movants have not set forth any controlling issue of law over which there is a substantial difference of opinion with respect to this argument. Payment of the fees in a SIPC case under the circumstances set forth above are mandated by statute. In light of the statutory provision, Movants' have not shown that there is any substantial difference of opinion as to whether such fees can be paid. Therefore, Movants have failed to satisfy this prong.

Movants' argument that an immediate appeal will advance the ultimate termination of the litigation also is fundamentally flawed with respect to this point. Movants seek the appointment of a new trustee, one who will share their view of the methodology for calculating net equity. *See* Movants Br. at 23. However, this would not resolve the alleged issue that they raise relating to SIPC's right to pay a trustee and his counsel. Removing the current Trustee and his counsel would merely necessitate replacements in this complex and convoluted case, who also would be entitled to payment from SIPC.

### 3.    The Order Involved No Violation of Due Process Rights

Among the points raised by Movants in support of their argument that they were denied due process is that Congress, through SIPA, created a statutory right to receive SIPC "insurance" of up to $500,000.[20] They assert that because SIPC functions in a quasi-judicial capacity, due process demands impartiality, however Congress created a statutory scheme "permeated by partiality, conflicts of interest and bias by permitting SIPC to appoint and control the Trustee and

---

[20] Funds paid under §78fff-3 of SIPA are referred to as "advances," not insurance. As discussed earlier, Movants Peskins and Ebel already have been paid the maximum amount of SIPA advances that they can receive.

- 24 -

the Trustee's counsel, regardless of the obvious conflict of interest between SIPC and the Customers." Movants Br. at 16-17.

Based simply on the above description, it is clear that these issues, even if they had been addressed by the Bankruptcy Court in the Order, involve mixed questions of law and fact, and clearly do not fall within the parameters of a "pure" question of law to be reviewed by the district court. Thus, they are improper grounds to support the Motion.[21]

Movants also ignore the Claims Procedure Order entered in this case on December 23, 2008. The Claims Procedure Order, *inter alia*, specified the procedures for the filing, determination, and adjudication of claims against the debtors in this proceeding.[22]

Under the Claims Procedure Order, all claims of customers must be filed with the Trustee. The Trustee satisfies customer claims by distributing customer property supplemented by SIPC advances. *See* Claims Procedure Order at 5; SIPA at §78fff-2(b). If a claim is not supported by the Debtor's books and records or otherwise established to the Trustee's satisfaction, he may deny it and must notify the claimant of the determination in writing. If the claimant does not oppose the determination, that determination is deemed approved by the Bankruptcy Court and binding on the Claimant. If any opposition is filed, the Trustee obtains a hearing date and notifies the claimant of the date, time, and place of the hearing. *See* Claims Procedure Order at 6-7. Where appropriate, the Trustee may settle the claim. *Id*. at 6.

The procedures mandated by the Bankruptcy Court in the Claims Procedure Order comport with due process, SIPA, and the Bankruptcy Code. The procedures employed in this liquidation proceeding are not novel. Rather, they have been consistently approved and applied

---

[21] Furthermore, any fundamental challenge by Movants to the statutory scheme as enacted by Congress is an issue for Congress, not for this Court in the context of a proposed appeal from the Order approving the Second Interim Fee Applications.
[22] A copy of the Claims Procedure Order is annexed to the Murphy Decl. as Exhibit C.

in SIPA proceedings at least since 1975. *See Securities Investor Protection Corp. v. Saxon Secs. Corp.*, No. 75 Civ. 377 (RJW), 1975 U.S. Dist. LEXIS 14757 (S.D.N.Y. 1975) (entering claims procedure order substantially similar to that entered herein); *see also Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 275 (S.D.N.Y. 1999) (detailing claims process and relevant order substantially similar to that herein); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 792-93 (S.D.N.Y. 1998) (same); *In re Adler Coleman Clearing Corp.*, 211 B.R. 486 (S.D.N.Y. 1997) (same).

In addition to foregoing, Movants, and any other interested parties, have had and will have ample opportunity to present their case with respect to the determination of the Net Equity Dispute at the Net Equity Hearing. They have been afforded notice and an opportunity to be heard on this issue, and thus due process will have been satisfied. The Trustee submits that given the foregoing, Movants cannot demonstrate that immediate appeal will advance the ultimate termination of the litigation.

### 4.    The Trustee's Use of Rule 2004 Subpoenas is Proper

The Movants take issue with the Trustee's issuance of Bankruptcy Rule 2004 subpoenas to the banks of customers who received funds from BLMIS. However, Rule 2004 examinations are an appropriate mechanism for the discovery of information, including from third parties, relating to the acts, conduct, assets and potential claims of the BLMIS estate, as they are intended to reveal the nature and extent of the bankruptcy estate, and to discover assets, examine transactions and determine whether wrongdoing has occurred. *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (Lifland, J). Courts have universally interpreted the rule to permit the broadest of examinations

- 26 -

and have compared the scope of Rule 2004 to permissible "fishing expeditions." *See Hughes,* 281 B.R. at 226; *In re Enron Corp.*, 281 B.R. at 840.

Although Movants assert that the Trustee and B&H should not be granted fees for work relating to the subpoenas, Helen Davis Chaitman, counsel for the Movants, effectively acknowledged the Trustee's right to information contained in the bank records.  In response to a subpoena sent to the bank of a customer, Ms. Chaitman wrote to B&H on November 6, 2009 that "[f]urthermore, we have no objection to the Subpoena to the extent it requests information from [the bank] regarding 'Madoff' as defined in the Subpoena."[23]  Rather, Ms. Chaitman felt that the subpoena was overbroad.  Thus, it is clear from Ms. Chaitman's own prior statement that the Trustee's work and request for information is not inherently objectionable or unnecessary, but rather that she objects to the scope of the request.

The representation by Movants, s*ee* Movants' Br. at 18, that B&H has "admitted" that the sole reason for issuing subpoenas to customers' banks is to determine whether they have assets sufficient to satisfy a judgment – is false.  To the contrary, B&H has explicitly identified multiple reasons for seeking information from the banks in communications with Ms. Chaitman, including in a November 11, 2009 responsive letter to Ms. Chaitman, wherein B&H advised that the bank subpoena was tailored to obtain documents that will demonstrate ownership of the accounts, the flow of funds from BLMIS to the customer's accounts, and documents that will demonstrate any subsequent transfers, pledging or other disposition by the customer of the funds received from BLIMS, and communications regarding same.[24]  As B&H advised Ms. Chaitman in that letter, such documents are directly related to the Trustee's investigation and analysis of the

---

[23] *See* Murphy Decl. at Exhibit D.
[24] *See* Murphy Decl. at Exhibit E.

300064128

customer as a BLMIS accountholder and transferee, and will assist the Trustee in determining whether to pursue an action against the customer or others.[25]

The Movants' argument that the Trustee is attempting to circumvent Federal Rule of Civil Procedure 26 discovery by improperly subpoenaing bank records in order to obtain information that will bolster the Trustee's case against the customers fails as well. Most courts that have addressed this issue find that the actual *commencement* of the litigation is the trigger for when use of a 2004 examination is no longer available to a trustee. *See, e.g., In re Enron Corp.*, 281 B.R. at 840; *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711-12 (Bankr. S.D.N.Y. 1991); *In re Blinder, Robinson & Company, Inc.*, 127 B.R. 267 (D. Col. 1991); *In re 2435 Plainfield Avenue, Inc.*, 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998). However, even if the standard cited by the Movants is used, a trustee must inexorably cross the line and absolutely intend to bring litigation against the Rule 2004 target in order for a 2004 examination to be inappropriate. The Trustee has not commenced any such action, nor has he finally determined to bring an action against any particular customer whose information was subject to Rule 2004 discovery.

The Rule 2004 subpoena is the trustee's primary tool for gathering information. "Discovery under Rule 2004 may be properly employed as a pre-litigation device for assessing whether grounds exist to commence an action . . . ." *In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996). By issuing a Rule 2004 subpoena, the Trustee is able to compel documents and testimony to develop the facts needed to determine whether to bring an adversary proceeding in order to effectuate maximum recovery of assets on behalf of the estate, which is

---

[25] More troubling to the Trustee is that he raised this very fact in his response to the Movants' Fee Objection, and the Movants failed to counter it at the Second Interim Fee Hearing. *See* Murphy Decl. at <u>Exhibit F</u> (Trustee's Response to objections to Second Interim Fee Applications, dated December 16, 2009). Yet the Movants blithely reiterate this baseless claim in the Motion.

300064128

the Trustee's primary responsibility.  At the Second Interim Fee Hearing, Judge Lifland echoed

this reasoning: "[T]he use of 2004 subpoenas on a broad base is something that is almost basic

that it is a requirement of a case like this and the objection on that ground that the Trustee is too

aggressive doesn't resonate with appropriate sincerity."  Second Interim Fee Hearing Transcript,

at 33.  As a result, he found this objection as "bordering on frivolous." *Id.*

Based on the foregoing, the Movants' statement that fees associated with the bank

subpoenas should not be allowed because "such fees were incurred for an illegal and improper

purpose," is baseless and without merit.  Furthermore, Movants have not presented a controlling

issue of law over which there is substantial grounds for a difference of opinion.  As explained

above, even using Movants' standard, the Trustee is well within his rights to issue Rule 2004

subpoenas to customers' banks.  In any event, this is clearly not a question of pure law, but rather

would involve questions of fact that cannot simply be gleaned from the pleadings.  The Movants

also fail to provide a single reason indicating how the immediate appeal of the Order granting the

Trustee's fees earned in connection with the issuance of the subpoenas will advance the ultimate

termination of the litigation.

## CONCLUSION

Movants have failed to demonstrate the elements supporting a request for leave to appeal

the interlocutory Order.  Movants lack standing to appeal, there are no controlling issues of law

as to which there are substantial grounds for difference of opinion, and immediate appeal of the

Order will not advance the ultimate termination of ongoing litigation. Movants further have

failed to demonstrate any extraordinary circumstances which would justify leave to appeal of the

Order.

Based on the foregoing, the Motion should be denied and the appeal dismissed.

Dated:  New York, New York                          Respectfully submitted,
        January 5, 2010


                                                     _s/Keith R. Murphy_____
                                                    Baker & Hostetler LLP
                                                    45 Rockefeller Plaza
                                                    New York, New York 10111
                                                    Telephone: (212) 589-4200
                                                    Facsimile: (212) 589-4201
                                                    David J. Sheehan
                                                    Email: dsheehan@bakerlaw.com
                                                    Marc Hirschfield
                                                    Email: mhirschfield@bakerlaw.com
                                                    Keith R. Murphy
                                                    Email: kmurphy@bakerlaw.com
                                                    Tatiana Markel
                                                    Email: tmarkel@bakerlaw.com

                                                    *Attorneys for  Irving H. Picard,*
                                                    *Trustee for the Substantively Consolidated*
                                                    *SIPA Liquidation of Bernard L. Madoff*
                                                    *Investment Securities LLC and Bernard L.*
                                                    *Madoff*

300064128