**Objection Deadline: January 7, 2010**

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
Jeffrey G. Tougas
jtougas@mayerbrown.com

*Attorneys for Fondomutua Fondo de Pensiones, SA*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | : SIPA Liquidation |
| v. | : |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : |
| Defendant. | : |

---

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

1.  Fondomutua Fondo de Pensiones, SA (the "**Claimant**"), by and through its undersigned counsel, hereby files this Objection to Trustee's Determination of Claim and respectfully represents as follows:

### BACKGROUND

2.  This Objection stems from an investment made by Claimant in Optimal Strategic US Equity Ireland Euro Fund Class B Eur, a "feeder-fund" of Optimal Multiadvisors Ireland Ltd., an umbrella fund (collectively "**Optimal**"). Optimal in turn invested Claimants' funds with Bernard L. Madoff Investment Securities ("**BLMIS**"). Substantially all the assets of Optimal

17611676.3

were invested directly or indirectly through BLMIS, and the investment strategy of Optimal was determined and implemented by BLMIS.

3.      BLMIS owes Claimant, indirectly through Optimal, securities, and/or the proceeds thereof, having an aggregate value of $779,300 (the "**Customer Claim**"). A complete breakdown of this amount is provided in the timely-filed Customer Claim, a copy of which is attached as Exhibit A hereto.

4.      On December 11, 2008, the Securities and Exchange Commission commenced an action against BLMIS in the United States District Court for the Southern District of New York. On December 15, 2008, a liquidation of BLMIS was commenced pursuant to the Securities Investor Protection Act of 1970 ("**SIPA**"), with Irving Piccard designated as the Trustee ("**Trustee**") in charge of the liquidation and processing of claims. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) [Dkt. No. 4]. 15 U.S.C. § 78fff-1(a).

5.      On December 23, 2008, this Court issued an Order setting certain claims filing deadlines and directing the Trustee to distribute notice and claim forms to BLMIS customers. *See* Order [Dkt. No. 12]. The December 23, 2008 Order further mandated that the Trustee "shall notify such claimant by mail of their determination that the claim is disallowed, in whole or in part, and the reason therefor . . . ." *See* Order at 6 [Dkt. No. 12].

6.      On July 2, 2009, Claimant timely filed the Customer Claim for securities, and/or the proceeds thereof, in the amount of $779,300, based on the balance owed by BLMIS, through Optimal, to Claimant. The Customer Claim has been assigned claim number 015028. *See* Exh. A.

7. On December 8, 2009, the Trustee sent Claimant a letter containing notice of the Trustee's determination of the Customer Claim (the "**Determination Letter**"). A copy of the Determination Letter is attached hereto as <u>Exhibit B</u>. The Determination Letter summarily stated that the Customer Claim was denied in full. The Trustee explained this determination as follows:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78lll(2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

*See* Exh. B at 1.

## GROUNDS FOR OBJECTION

**A.    Claimant Qualifies as a "Customer" Under a Plain Reading of the SIPA Definition of "Customer."**

8. Contrary to the Trustee's determination, Claimant qualifies as a BLMIS "customer" and is entitled to have its claim satisfied, to the extent thereof, by payment from the Securities Investor Protection Corporation ("**SIPC**") of up to $500,000. 15 U.S.C. § 78fff-3(a); 15 U.S.C. §78lll(2). The Trustee's determination that Claimant must have a specifically titled account recorded among BLMIS's "available books and records" is found nowhere within the statutory language of SIPA. Moreover, BLMIS principal Bernard L. Madoff's conviction on having committed a massive fraud within BLMIS makes reliance on such books and records, as the sole basis for the Trustee's determination, inherently unsound. Clearly, to be protected under SIPA, an investor must come within the definition of "customer" as that term in defined in 15 U.S.C. § 78lll(2). *In re Stalvey and Assoc., Inc.*, 750 F.2d 464 (5th Cir. 1985). 15 U.S.C. § 78lll(2) sets forth the definition of "customer" as follows:

> **Customer.** The term "customer" of a debtor means *any* person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of

> such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes *any* person who has a claim against the debtor *arising out of* sales or conversions of such securities, and *any* person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include--
>> (A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or
>> (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

15 U.S.C. § 78lll(2) (emphasis added).

9. SIPA's definition of "customer" is broad, requiring only that the "customer's" claim arises out of sales or conversions of securities "received, acquired, or held by the debtor in the ordinary course of business as a broker or dealer." *Id.* It is notable that this definition does not require that the debtor receive securities *directly* from the claimant. Similarly notable is the fact that the statute does not, by its terms, require that an *account* be created *directly* by the customer in his/her/its own name, or otherwise, with the debtor. *Id.*

10. The definition of "customer" also includes investors who deposited *cash* with the debtor for the purpose of purchasing securities. *Id.* Like the securities deposit and account requirements addressed in the preceding paragraph, the statute does *not* expressly require that investors *directly* deposit cash with the debtor never mind, as the Trustee apparently sees as the touchstone, create a specifically titled account with the debtor. *See S.E.C. v. Ambassador Church Fin. Dev. Group, Inc.*, 679 F. 2d 608, 614 (6th Cir. 1982) ("the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status . . . .").

17611676.3                                    4

11.     Section 78fff(3)(a) of SIPA, which covers "Advances for Customers' Claims" specifically contemplates indirect claimants as "customers." Section 78fff(3)(a) states that:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . **in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.**

15 U.S.C. § 78fff(3)(a) (emphasis added). This language makes clear that SIPA affirmatively affords positive treatment to certain indirect customers, particularly when such indirect customers were attempting to participate in the securities markets through financial intermediaries who obviate the need for a direct account relationship between the indirect customer and a debtor. Congress specifically intended to protect indirect customers – and other similarly situated "public investors" when it passed SIPA. *See S.I.P.C. v. Barbour*, 421 U.S. 412, 415 (1975). *See also In re Primeline Sec. Corp.*, 295 F.3d 1100, 1105-06 (10th Cir. 2002) ("Congress passed SIPA to protect public investors against financial losses arising from the insolvency of registered brokers and dealers.").

12.     In terms of statutory construction, the SIPA definition of "customer" notably contains the following two enumerated exceptions which specifically indicate that certain entities do not come within the "customer" definition: (i) any person with a claim arising out of transactions with a foreign subsidiary of a member of SIPC; or (ii) any person with a claim for cash or securities which can be considered part of the capital of the debtor, or which is subordinated to the claims of any or all creditors of the debtor. 15 U.S.C. § 78lll(2)(A); 15 U.S.C. § 78lll(2)(B). These two enumerated exceptions indicate a desire by the drafters of SIPA specifically to indicate when an entity, which might otherwise meet the "customer" criteria, is nonetheless ineligible for "customer" status. Indirect customers, such as Claimant, are *not* listed

among the enumerated exceptions. Had Congress intended to exclude indirect claimants from the definition of "customer," they would have done so explicitly – either by specifying them within a third enumerated exception, and/or by making the existence of a specifically titled account within the debtor's "available books and records" a *sine qua non* of "customer" status.

**B.      The Claimant is a Customer Via Conversion.**

13.     The SIPA definition of "customer" also includes investors who can show that the claim against the debtor arises out of sales or conversions of securities held on the investor's behalf. In this regard, the definition states, in relevant part, that "[t]he term "customer" includes *any* person who has a claim against the debtor *arising out of* sales or conversions of such securities . . . ." 15 U.S.C. § 78lll(2) (emphasis added). This broad language in no way limits the grant of "customer" status arising via conversion to only *direct* claimants having a specifically titled account appearing among the debtor's "available books and records." Rather, the grant of "customer" status to *any* person who has a claim against the debtor *arising out of* a conversion clearly contemplates a potentially very broad range of claimants. BLMIS, via its multi-billion dollar Ponzi scheme, undeniably *converted* Claimant's property which had been funneled to BLMIS through so-called "feeder-funds" such as Optimal. (which themselves may well ultimately be found to be agents of BLMIS, thereby triggering "customer" status under SIPA, whether arising via conversion or otherwise), with the result of bringing Claimant squarely within the SIPA definition of "customer." *See Primeline*, 295 F.3d, at 1107 ("[w]hether a claimant deposited funds "with the debtor" does not depend simply on to whom claimants made their checks payable . . . . The relevant inquiry is whether the brokerage firm actually received, acquired or possessed Claimants' property." (citing *In re Old Naples*, 223 F.3d 1296, 1302 (11th Cir. 2000)). *See also In re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D.

17611676.3                                                                            6

Fl. 1983) ("There is nothing in SIPA which suggests that coverage should be denied merely because the debtor used the facilities of another innocent broker in converting its customer's property"); *In re Stratton Oakmont, Inc.*, 2003 WL 22698876, *3 (S.D.N.Y. Nov. 14, 2003) (holding that the debtor-broker's conversion of the claimant's property brings the customers within the meaning of SIPA).

14. There is no precedent in modern history for the massive conversion of property which was put in the hands of BLMIS by "feeder-fund" brokers such as Optimal. Unlike previous cases which have held that indirect claimants (such as, for example, trust beneficiaries) are not "customers" under SIPA, the case at hand involves investors who were attempting to participate *directly* in the securities market on a large scale. Our national securities market is now comprised, in great part, of investors who regularly entrust their funds to financial intermediaries such as Optimal. *C.f., S.I.P.C. v. Morgan Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir. 1976) (holding that slightly more than one-hundred trust beneficiaries, ***who were not each individually active in the securities market***, were not "customers" under SIPA.)

15. The Supreme Court of the United States has held that SIPA is remedial legislation, intended for the protection of the insolvent broker's customers and, as such, should be construed liberally to effect its purpose. *Tcherepnin v. Knight*, 389 U.S. 332 (1967). *See also First State Sec.*, 34 B.R., at 495. The Trustee's overly strict construction of SIPA is plainly inconsistent with such purpose.

## RELIEF REQUESTED

16. For the reasons stated herein, the Trustee's Determination Letter should be stricken.

17. For the reasons stated herein, the Claimant should be deemed a "customer" as per 15 U.S.C. § 78lll(2), entitled to a proper determination and allowance of a "customer" claim by the Trustee.

18. The Claimant should, to the extent permitted by applicable law, have interest added to its allowed claim amount.

19. The Claimant requests such other relief as may be just and equitable.

20. The Claimant reserves the right at any time to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Claimants' right to object on any other grounds.

21. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

22. To the extent applicable, the Claimant joins in the objections of other claimants in these proceedings that are in the same or similar positions.

Dated: January 5, 2010.

/s/ Jeffrey G. Tougas
MAYER BROWN LLP
Jeffrey G. Tougas
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
jtougas@mayerbrown.com

*Attorneys for Attorneys for Fondomutua Fondo de Pensiones, SA*

## CERTIFICATE OF SERVICE

I, Jeffrey G. Tougas, hereby certify that on the 5th day of January, 2010, I electronically transmitted a true and correct copy of the foregoing document entitled OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM, to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing (NEF) to all attorneys of record who are ECF registrants. I also certify that on said date, I caused to be served a true and correct copy of the aforementioned document, via U.P.S., on Irving H. Picard, Trustee, c/o Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, New York 10111.

/s/ Jeffrey G. Tougas
Jeffrey G. Tougas

17611676.3