# EXHIBIT B

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

**(Please print or type)**

**Name of Customer:** Burt Moss & Associates, Inc. 401K Plan

**Mailing Address:** 1675 North Military Trail, Suite 570

**City:** Boca Raton    **State:** Florida    **Zip:** 33486

**Account No.:** P&S Associates General Partnership(Beneficial Interest)    3-3-0

**Taxpayer I.D. Number (Social Security No.):** 51-0522-723

**NOTE:** **BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of **December 11, 2008**:

    a.   The Broker owes me a Credit (Cr.) Balance of       $_____

    b.   I owe the Broker a Debit (Dr.) Balance of       $_____

    c.   If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.       $_____

    d.   If balance is zero, insert "None."       _____

**EXHIBIT B**

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | **Number of Shares or Face Amount of Bonds** | |
| | See Attached Exhibit A | $521,381.34 | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. in particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE: IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Carl F. Schoenpl, Esq., Schoenpl & Burke, P.A. 4651 N. Federal Highway, Boca Raton, Florida 33431-5133 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  02/26/09 _____     Signature _____
                                            Burton H. Moss, Trustee
Date  02/26/09 _____     Signature _____
                                            Susan Moss, Trustee

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

# EXHIBIT A

# EXHIBIT A

1/26/09

**P & S Associates, General Partnership**
**c/o Sullivan & Powell**
**Port Royale Financial Center**
**6550 North Federal Highway**
**Suite 210**
**Ft. Lauderdale, FL 33308**
**Phone: (954) 492-0088 Fax: (954) 938-0069**
**Email: InvestIt@bellsouth.net**

**Burt Moss & Associates, Inc. 401K Plan**
Burt Moss & Susan Moss, Trustee
1675 N. Military Trail, Ste. 570                          TIN
Boca Raton, FL 33486                                     51-0522723

*NOTE: This report is provided to assist you in evaluating the operations of P&S Associates, General Partnership, and the performance of your general partnership interest. This information should NOT be relied upon for Income Tax purposes.*

## Activity/ Status Report
### 1/1/08 to 12/31/08

| | |
|---|---:|
| Balance Forward 12/31/07 | 50,153.78 |
| Deposits | 433,101.28 |
| Withdrawals | 0.00 |
| *Miscellaneous Expenses | -1,485.96 |
| Management Fee Expense | -4,401.36 |
| Realized Gain for Current Year | 33,509.21 |
| REALIZED ENDING BALANCE | 510,876.94 |
| Unrealized Gain/Loss on Open Securities | 10,504.39 |
| TOTAL REALIZED/UNREALIZED BALANCE | $521,381.34 |

NET ANNUALIZED RETURN                9.02%

*Miscellaneous Expenses include legal and accounting fees, taxes, and bank service charges.

---

*This information is being provided to you for your review and decision making in your capacity as a general partner. All data provided above is subject to verification by you. Please review data for discrepancies. Please also note that the ending balance may not represent your actual capital account balance. Rather, it represents your balance, subject to the terms of the Amended and Restated General Partnership Agreement, assuming a liquidation of the partnership.*

1/26/09

PS M67          **Burt Moss & Associates, Inc. 401K Plan**          ████723

1/1/08          1/1/09

| | Date | Amount | Avg. Balance |
|---|---|---|---|
| BAL FWD | 1/1/08 | 50,153.78 | 50,153.78 |
| deposit | 2/21/08 | 433,101.28 | 372,751.10 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| 1Q dist. | | | 0.00 |
| 2Q dist. | | | 0.00 |
| 3Q dist. | | | 0.00 |
| 4Q dist. | | | 0.00 |
| TOT DIST | | 0.00 | |

Avg. Bal. Total    422,904.88
Net P/L for period    38,126.28
YTD Value    521,381.34
Ptrshp %    0.025226          0.0902  Net Annualized Return

Total Realized P/L    1,328,341.71
Total Unrealized P/L    416,405.62

Ptr. Realized P/L    33,509.21
Ptr. Unrealized P/L    10,504.39

Total Misc. Expenses    58,905.17
Ptr. Misc. Expenses    1,485.96

Ptr. Mgt. fee    4,401.38

**THE OAKMARK FUNDS**
P.O. BOX 219558
KANSAS CITY, MO 64121-9558

### REDEMPTION CHECK



OAKMARK

5-2
110

| CHECK NUMBER | FUND NUMBER | ACCOUNT NUMBER | DATE OF CHECK | AMOUNT |
|---|---|---|---|---|
| 472275 | 2712 | ███████164 | 01/31/2008 | $*********343,829.02 |

PAYABLE AT
STATE STREET BANK
BOSTON, MA 02222

PAY TO THE ORDER OF:

BURT MOSS TTEE
BURT MOSS & ASSOCIATES INC 401K
PLAN TRANSFER ACCOUNT FBO BURT MOSS
09/13/2004
1191 E NEWPORT CENTER DR STE 104
DEERFIELD BCH FL 33442-7736

_Jay A. Shaw_
AUTHORIZED SIGNATURE

⑊000000472275⑊ ⑊0110000028⑊ 9904 357 2⑊



# P&S Associates, General Partnership
## c/o Michael D. Sullivan & Associates

Port Royale Financial Center, Suite 210
6550 North Federal Highway
Fort Lauderdale, FL  33308

Michael D. Sullivan

Telephone 954-492-0088

Fax 954-938-0069

Susan H. Moss, E.A.

February 5, 2008

Burt Moss & Associates, Inc. 401K Plan
Burt Moss & Susan Moss, Trustee
1191 E. Newport Center Dr., Ste 104
Deerfield Beach, FL 33442
Dear Burt & Susan:

We are in receipt of your checks in the amount of $433,101.28 as a capital contribution to P&S Associates, General Partnership, an investment club. At your direction, these funds are being forwarded to the investment broker. As a general partner, you have the right to make additional contributions to your capital account at any time.

You should have a copy of the Amended and Restated Partnership Agreement which you signed to become a general partner. If you need an additional copy, please contact us at the number above.

As managing partners, we intend to keep you updated about the partnership so you can make informed decisions as a general partner about the business and administration of the partnership.

If we are in need of additional information, it will be indicated below. We would appreciate your timely response to any requests for information so our records will be accurate and we will be in compliance with all reporting and filing requirements.

If you have any questions or if we can be of assistance, please contact us.

Sincerely,

Michael Sullivan . Managing Partner
P & S Associates, General Partnership

* Please be advised as of July 1, 2003 all investments and withdrawals into and out of the partnership will be done on a quarterly basis only. All funds for deposit and requests for withdrawals must be received by the 15th of March, June, September, and December for each quarter. Thank you for your cooperation.

12/12/08

**P & S Associates, General Partnership**
c/o Sullivan & Powell
**Port Royale Financial Center**
**6550 North Federal Highway**
**Suite 210**
**Ft. Lauderdale, FL  33308**
**Phone: (954) 492-0088 Fax: (954) 938-0069**
**Email: InvestIt@bellsouth.net**

Burt Moss & Associates, Inc. 401K Plan
Burt Moss & Susan Moss, Trustee
1191 E. Newport Center Dr., Ste 104          TIN
Deerfield Beach, FL 33442                    51-0522723

*NOTE: This report is provided to assist you in evaluating the operations of P&S Associates, General Partnership, and the*
*performance of your general partnership interest. This information should NOT be relied upon for Income Tax purposes.*

### Activity/ Status Report
### 1/1/08 to 9/30/08

| | |
|---|---:|
| Balance Forward 12/31/07 | 50,153.78 |
| Deposits | 433,101.28 |
| Withdrawals | 0.00 |
| *Miscellaneous Expenses | -232.25 |
| Management Fee Expense | -3,202.26 |
| Realized Gain for Current Year | 31,591.52 |
| REALIZED ENDING BALANCE | 511,412.08 |
| | |
| Unrealized Gain/Loss on Open Securities | 431.04 |
| | |
| TOTAL REALIZED/UNREALIZED BALANCE | $511,843.12 |

NET ANNUALIZED RETURN          <u>9.46%</u>

*Miscellaneous Expenses include legal and accounting fees, taxes, and bank service charges.

_____

*This information is being provided to you for your review and decision making in your capacity as a general partner.*
*All data provided above is subject to verification by you.  Please review data for discrepancies.  Please also note that*
*the ending balance may not represent your actual capital account balance.  Rather, it represents your balance, subject*
*to the terms of the Amended and Restated General Partnership Agreement, assuming a liquidation of the partnership.*

12/12/08

PS M67          **Burt Moss & Associates, Inc. 401K Plan**          51-0522723

1/1/08     10/1/08

| | Date | Amount | Avg. Balance |
|---|---|---|---|
| BAL FWD | 1/1/08 | 50,153.78 | 50,153.78 |
| deposit | 2/21/08 | 433,101.28 | 352,487.54 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| deposit | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| w/d | | | 0.00 |
| 1Q dist. | | | 0.00 |
| 2Q dist. | | | 0.00 |
| 3Q dist. | | | 0.00 |
| 4Q dist. | | | 0.00 |
| TOT DIST | | 0.00 | |
| | Avg. Bal. Total | | 402,641.32 |
| | Net P/L for period | | 28,588.06 |
| | YTD Value | | 511,843.12 |
| | Ptrshp % | 0.024107 | |

0.0946  Net Annualized Return

| | |
|---|---|
| Total Realized P/L | 1,310,461.46 |
| Total Unrealized P/L | 17,880.25 |
| | |
| Ptr. Realized P/L | 31,591.52 |
| Ptr. Unrealized P/L | 431.04 |
| | |
| Total Misc. Expenses | 9,633.92 |
| Ptr. Misc. Expenses | 232.25 |
| | |
| Ptr. Mgt. fee | 3,202.28 |

## EXHIBIT A  (How you would like your account titled)

## IMPORTANT - Please indicate your beneficiary.
## Please include address & phone #.

| Name, Address Telephone No. and Fax No. | Social Security No. or Federal ID No. | Capital Contribution |
|---|---|---|
| Burt Moss & Assoc. Inc 401K Plan Burt Moss, Trustee Susan Moss, Trustee | 51-0522723 | 50,000.00 |

## IMPORTANT - Please indicate your beneficiary.
## Please include address & phone #.

Beneficiary —
    Burt Moss & Assoc Inc.
  401 K Plan

16

**Complete #1, #2, #3 and Exhibit A and mail this page only with
check made payable to "P&S Associates, G/P" to:**

**P & S ASSOCIATES, General Partnership**
**c/o SULLIVAN & POWELL**
**6550 N. Federal Hwy., Suite 210**
**Ft. Lauderdale, FL 33308-1404**

1) The Parties hereto have executed this Agreement by the signature and date set forth below. Each party signing below hereby represents and warrants that such party is sophisticated and experienced in financial and business matters and, as a result, is in a position to evaluate and participate in the business and administration of the Partnership.

Burt Moss, Trustee                      Date: 12-19-07

Susan Moss Trustee                      Date: 12-19-07
~~Susan Moss~~

2)   **Please check one of the following distribution options:**

_____ I elect to receive distributions on a quarterly basis in the amount of $_____.

___✓___ I elect to have my quarterly distribution reinvested in the Partnership.

3)   **Please check one of the following accredited investor choices:**

___✓___ I am an accredited investor as defined below.

_____ I am not an accredited investor.

**The following would qualify as an "accredited investor:"**

(i)  A person with an individual net worth, or together with his or her spouse a combined net worth, in excess of $1,000,000.  Net worth means the excess of total assets at fair market value, including home, home furnishings and automobiles, over total liabilities.

(ii)  A person with an individual income (exclusive of any income attributable to his or her spouse) in excess of $200,000 in each of the past two years, and that he or she reasonably expects to have an individual income in excess of $200,000 during this year.  Individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse):  (i) the amount of any tax-exempt interest income received under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of form 1040, (iii) any deduction claimed for depletion under Section 611 et seq. of the Code and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code.

(iii)  A person that together with his or her spouse, had a combined income in excess of $300,000 in each of the past two years, and reasonably expects to have a combined income in excess of $300,000 during this year.

**P&S Associates, General Partnership**

6407

**Bank of America.**

ACH R/T 063100277

**BURT MOSS & ASSOCIATES, INC.**
1191 EAST NEWPORT CENTER DRIVE
SUITE NO. 104
DEERFIELD BEACH, FL 33442

63-27-631

12/19/2007

PAY TO THE
ORDER OF:   P&S Associates, G/P                                        $ **20,500.00

Twenty Thousand Five Hundred and 00/100************************************** DOLLARS

_Susan H. Moss_
AUTHORIZED SIGNATURE

MEMO   401K-employee contribution-Burt Moss

⑈006407⑈ ⑆063100277⑆ ████ 4603⑈

---

6406

**Bank of America.**

ACH R/T 063100277

**BURT MOSS & ASSOCIATES, INC.**
1191 EAST NEWPORT CENTER DRIVE
SUITE NO. 104
DEERFIELD BEACH, FL 33442

63-27-631

12/19/2007

PAY TO THE
ORDER OF:   P&S Associates, G/P                                        $ **29,500.00

Twenty-Nine Thousand Five Hundred and 00/100************************************ DOLLARS

_Susan H. Moss_
AUTHORIZED SIGNATURE

MEMO   401K-company contribution-Burt Moss

⑈006406⑈ ⑆063100277⑆ ████ 4603⑈

_Rec'd_

1/27/09

**P & S Associates, General Partnership**
c/o Sullivan & Powell
Port Royale Financial Center
6550 North Federal Highway
Suite 210
Ft. Lauderdale, FL  33308
(954) 492-0088   fax (954) 938-0069

Burt Moss & Associates, Inc. 401K Plan
Burt Moss & Susan Moss, Trustee
1191 E. Newport Center Dr., Ste 104                    TIN
Deerfield Beach, FL 33442                              51-0522723

*NOTE:  This report is provided to assist you in evaluating the operations of P&S Associates, General Partne*
*performance of your general partnership interest.  This information should NOT be relied upon for Incoi*

**Activity/ Status Report**
1/1/07 to 12/31/07

| | |
|---|---:|
| Balance Forward 12/31/06 | 0.00 |
| Deposits | 50,000.00 |
| Withdrawals | 0.00 |
| *Miscellaneous Expenses | -0.42 |
| Management Fee Expense | -38.55 |
| Realized Gain for Current Year | 192.74 |
| REALIZED ENDING BALANCE | 50,153.78 |
| | |
| Unrealized Gain/Loss on Open Securities | 0.00 |
| | |
| TOTAL REALIZED/UNREALIZED BALANCE | $50,153.78 |

NET ANNUALIZED RETURN            **9.35%**

*Miscellaneous Expenses include legal and accounting fees, taxes, and bank service chai

---

*This information is being provided to you for your review and decision making in your capacity as a general*
*All data provided above is subject to verification by you. Please review data for discrepancies. Please also .*
*the ending balance may not represent your actual capital account balance. Rather, it represents your balance*
*to the terms of the Amended and Restated General Partnership Agreement, assuming a liquidation of the pai*

1/27/09

PS M67            **Burt Moss & Associates, Inc. 401K Plan**            51-0522723

1/1/07        1/1/08

| | Date | Amount | Avg. Balance | |
|---|---|---|---|---|
| BAL FWD | 1/1/07 | | 0.00 | |
| deposit | 12/20/07 | 50,000.00 | 1,643.84 | #6407,6406 |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| deposit | | | 0.00 | |
| w/d | | | 0.00 | |
| w/d | | | 0.00 | |
| w/d | | | 0.00 | |
| w/d | | | 0.00 | |
| w/d | | | 0.00 | |
| 1Q dist. | | | 0.00 | |
| 2Q dist. | | | 0.00 | |
| 3Q dist. | | | 0.00 | |
| 4Q dist. | | | 0.00 | |
| TOT DIST | | 0.00 | | |
| | Avg. Bal. Total | | 1,643.84 | |
| | Net P/L for period | | 153.78 | |
| | YTD Value | | 50,153.78 | |
| | Ptrshp % | 0.000094 | | |

0.0935  Net Annualized Return

Total Realized P/L  2,060,694.15
Total Unrealized P/L        0.00

Ptr. Realized P/L       192.74
Ptr. Unrealized P/L       0.00

Total Misc. Expenses  4,488.50
Ptr. Misc. Expenses       0.42

Ptr. Mgt. fee        38.55

# RICE PUGATCH ROBINSON & SCHILLER, P.A.

101 N.E. THIRD AVENUE, SUITE 1800
FT. LAUDERDALE, FLORIDA 33301
TELEPHONE: (954) 462-8000
TELEPHONE (305)-379-3121
FACSIMILE: (954) 462-4300
FACISMILE (305) 379-4119

www.rprslaw.com

## MEMORANDUM

**TO:**   All Partners of P&S Associates, General Partnership

**FROM:**   Chad Pugatch, Esq.

**DATE:**   February 3, 2009

**RE:**   P&S Associates, General Partnership

Pursuant to the discussion held at the partnership meeting of January 30, 2009 you will need to consult with your own legal advisors and determine whether you will or will not file your own SIPC claims. We are filing the claims for the Partnership itself. The package of information you received at the meeting contained the SIPC claim form in the event you do decide to file yourself. The forms may be downloaded from the website at http://www.sipc.org/ or specifically the proof of claim form can be found at

http://www.sipc.org/cases/docs/Madoff%20Customer%20Web%20Claim%20Form.pdf

In the event you decide to file your own claims after consultation with your legal advisor the Partnership is providing to you the following information which you may attach along with any items you feel are necessary:

1. November 30, 2008 monthly statement for Bernard L. Madoff Investment Securities, LLC;
2. Copies of your K-1 tax forms filed with the IRS from the time you started your investment through 2007;
3. December 31, 2008 quarterly statement from P&S Associates, GP showing your status as a partner;
4. The actual dollars you invested in and received from your investment from inception.

Yours very truly,

Chad P. Pugatch, Esq.

CPP:be

J:\Wpdocs\4370 Sullivan S&PMemos\All Partners Memos\P&S Partnership Memo 2-3-09.doc

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: _____

Mailing Address: _____

City: _____ State: _____ Zip: _____

Account No.: _____

Taxpayer I.D. Number (Social Security No.): _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008**:

   a.    The Broker owes me a Credit (Cr.) Balance of          $_____

   b.    I owe the Broker a Debit (Dr.) Balance of          $_____

   c.    If you wish to repay the Debit Balance,

   please insert the amount you wish to repay and

   attach a check payable to "Irving H. Picard, Esq.,

   Trustee for Bernard L. Madoff Investment Securities LLC."

   If you wish to make a payment, **it must be enclosed**

   with this claim form.          $_____

   d.    If balance is zero, insert "None."          _____

2.      Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | _____ | _____ |
| b. | I owe the Broker securities | _____ | _____ |
| c. | If yes to either, please list below: | | |

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:  IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | _____ | _____ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | _____ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | _____ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | _____ | _____ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | _____ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | _____ | _____ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | _____ | _____ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:_____
_____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____    Signature_____

Date _____    Signature_____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

## <u>READ CAREFULLY</u>

## INSTRUCTIONS FOR COMPLETING CUSTOMER CLAIM FORM

These instructions are to help you complete the customer claim form enclosed. If Bernard L. Madoff Investment Securities LLC ("Broker") owes you cash or securities and you wish to claim them, the trustee must **receive** your claim on or before the date specified on the claim form. An improperly completed claim form will not be processed but will be returned to you and, consequently, will cause a delay in the satisfaction of your claim.

Item 1 is to be completed if on the date shown, the Broker owed you cash or if you owed the Broker cash.

If the Broker owes money to you, please indicate the amount in the space provided [Item 1a]. If you owe the Broker money, please so indicate in the space provided [Item 1b]. If the Broker owes you securities and you wish to receive those securities without deduction, then you must enclose your check for the amount shown in Item 1c payable to "Irving H. Picard, Esq., Trustee for the Broker." **Payments not enclosed with this claim form will not be accepted by the trustee for purposes of determining what securities are to be distributed to you.**

Item 2 deals with securities (including any options) held for you. If the Broker is holding securities for you or has failed to deliver securities to you, please indicate by checking the appropriate box under Item 2 and set forth in detail the information required with respect to the date of the transaction, the name of the security and the number of shares or face value of bonds. With respect to options, set forth number and type of options, the exercise price and expiration date, *e.g.*, 3 options [call] or [put] Xerox at 70 2x October 81. PLEASE DO NOT CLAIM ANY SECURITIES YOU ALREADY HAVE IN YOUR POSSESSION.

It would expedite satisfaction of your claim if you enclose copies of:

1.    Your last account statement;

2.  An explanation of any differences between cash balances and securities on your last account statement and cash balances and securities you claim;

3.  Purchase and sale confirmations and canceled checks covering the items referred to on your customer claim form; and

4.  Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

5.  Any other documentation which may assist the processing of your claim, such as correspondence, receipts, etc.   In particular, if, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**Items 3 through 9** must each be marked and details supplied where appropriate.

A claim form must be filed for each account.

## When To File

There are two deadlines for filing customer claims.  One is set by the bankruptcy court for customer claims and one is set by the law for all claims.

The bankruptcy court has set March 4, 2009 as the final day for filing customer claims. If your claim is received by the Trustee after March 4, 2009 but on or before July 2, 2009, your claim is subject to delayed processing and to being satisfied on terms less favorable to you.

**The law governing this proceeding absolutely bars the allowance of any claim, including a customer claim, not actually received by the trustee on or before July 2, 2009. Neither the Trustee nor SIPC has authority to grant extensions of time for filing of claims, regardless of the reason. If your claim is received even one day late, it will be disallowed.**

Please file well in advance so that there will be time to re-file if, for instance, your claim is lost in the mail.

### Where To File

The completed and signed claim form, together with supporting documents should be mailed **promptly** in the enclosed envelope to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**\*\*\*   PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL -   \*\*\***
**RETURN RECEIPT REQUESTED**

Your claim is not filed until received by the Trustee. If the Trustee does not receive your claim, although timely mailed, you could lose all your rights against the Broker. Your return receipt will be the only document you will receive that shows your claim has been received by the Trustee.

**THIS INSTRUCTION SHEET IS FOR YOUR FILE - DO NOT RETURN**

**YOU SHOULD RETAIN A COPY OF THE COMPLETED CLAIM FORM FOR YOUR RECORDS.**

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P & S ASSOCIATES GEN PTNRSHIP

6650 N FEDERAL HWY #220
FT LAUDERDALE        FL    33308

PERIOD ENDING 11/30/06 · PAGE 1
YOUR TAX PAYER IDENTIFICATION NUMBER ******1258
YOUR ACCOUNT NUMBER 3-0

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | 1,092,050.45 | |
| 16,864 | | 1239 | WELLS FARGO & CO NEW | 29.800 | 491,285.20 | |
| 11,760 | | 1741 | HEWLETT PACKARD CO | 34.900 | 410,894.00 | |
| 10,192 | | 5565 | WAL-MART STORES INC | 55.030 | 569,426.36 | |
| 6,664 | | 6067 | INTERNATIONAL BUSINESS MACHS | 87.270 | 581,833.28 | |
| 24,696 | | 9891 | EXXON MOBIL CORP | 72.880 | 1,800,831.48 | |
| 27,048 | | 10393 | INTEL CORP | 14.510 | 393,547.48 | |
| 12,936 | | 14719 | JOHNSON & JOHNSON | 59.580 | 771,243.88 | |
| 17,640 | | 19044 | J.P. MORGAN CHASE & CO | 38.530 | 680,374.20 | |
| 9,408 | | 23370 | COCA COLA CO | 44.660 | 420,537.28 | |
| 5,488 | | 27696 | MCDONALDS CORP | 55.370 | 304,089.56 | |
| 10,192 | | 32022 | MERCK & CO | 28.550 | 291,388.60 | |
| 37,240 | | 36348 | MICROSOFT CORP | 21.810 | 813,693.40 | |
| 18,616 | | 40674 | ORACLE CORPORATION | 17.300 | 326,268.80 | |
| 7,648 | | 53652 | PEPSICO INC | 56.410 | 420,438.68 | |
| 4,312 | | 54154 | APPLE INC | 100.780 | 434,735.36 | |
| 31,752 | | 57978 | PFIZER INC | 16.940 | 539,148.88 | |
| 7,448 | | 58480 | ABBOTT LABORATORIES | 54.610 | 407,032.28 | |
| 14,112 | | 62304 | PROCTER & GAMBLE CO | 64.080 | 904,860.96 | |
| 5,096 | | 62806 | AMGEN INC | 59.160 | 301,682.36 | |
| 9,800 | | 66630 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 427,672.00 | |
| 23,520 | | 67132 | BANK OF AMERICA | 21.590 | 508,736.80 | |
| 7,640 | | 70956 | QUALCOMM INC | 33.770 | 265,069.80 | |
| 25,480 | | 71458 | CITI GROUP INC | 12.510 | 319,773.80 | |
| | | | CONTINUED ON PAGE 2 | | | |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P & S ASSOCIATES GEN PTNRSHIP
6550 N FEDERAL HWY #210
FT LAUDERDALE      FL    33308

**YOUR ACCOUNT NUMBER** ▉-3-0   **PERIOD ENDING** 11/30/08   **YOUR TAX PAYER IDENTIFICATION NUMBER** ******1258   **PAGE** 2

| BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 5,680 | | 75282 | SCHLUMBERGER LTD | 49.480 | 291,177.40 | |
| 14,112 | | 75784 | COMCAST CORP | 16.510 | 233,553.12 | |
| | | | CL A | 27 | | |
| 27,832 | | 79608 | AT&T INC | 52.510 | 752,577.00 | |
| 7,056 | | 80110 | CONOCOPHILIPS | 52.040 | 370,792.56 | |
| 4,704 | | 83934 | UNITED PARCEL SVC INC | | 244,984.16 | |
| | | | CLASS B | 16.730 | | |
| 28,616 | | 84436 | CISCO SYSTEMS INC | 29.530 | 479,889.68 | |
| 8,232 | | 88260 | U S BANCORP | 73.430 | 243,419.96 | |
| 9,800 | | 88762 | CHEVRON CORP | 53.160 | 720,006.00 | |
| 4,704 | | 92586 | UNITED TECHNOLOGIES CORP | 19.630 | 250,252.64 | |
| 49,704 | | 93088 | GENERAL ELECTRIC CO | 30.410 | 979,250.92 | |
| 13,328 | | 96912 | VERIZON COMMUNICATIONS | 337.400 | 405,837.48 | |
| 1,176 | | 97414 | GOOGLE | 99.942 | 396,829.40 | |
| | 100,000 | 20213 | U S TREASURY BILL | | | 99,942.00 |
| | | | DUE 12/18/2008 | | | |
| | | | 12/18/2008 | | | |
| | 17,675,000 | 23845 | U S TREASURY BILL | 99.936 | | 17,663,688.00 |
| | | | DUE 2/12/2009 | | | |
| | | | 2/12/2009 | | | |
| | | | FIDELITY SPARTAN | DIV | | 61.96 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | DIV 11/12/08 | | | |
| 76,109 | | 18949 | FIDELITY SPARTAN | 1 | | 76,109.00 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | CONTINUED ON PAGE      3 | | | |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P & S ASSOCIATES GEN PTNRSHIP

6550 N FEDERAL HWY #210
FT LAUDERDALE          FL    33306

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 3-0 ▊▊-3-0 | 11/30/08 | ******1258 | 3 |

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 7,482 | | 28317 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 7,482.00 | |
| | 7,482 | 53842 | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | .92 |
| 1,175,000 | | 58298 | FIDELITY SPARTAN U S TREASURY MONEY MARKET U S TREASURY BILL DUE 03/26/2009     3/26/2009 | 1 99.926 | 1,174,130.50 | 7,482.00 |
| 7,785 | | 62078 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 7,785.00 | |
| | | | NEW BALANCE | | 2,187,298.83 | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 27,832 | | | AT&T INC | 28.560 | | |
| 7,448 | | | ABBOTT LABORATORIES | 52.390 | | |
| 5,096 | | | AMGEN INC | 55.540 | | |
| 4,312 | | | APPLE INC | 92.670 | | |
| 23,520 | | | BANK OF AMERICA | 16.250 | | |
| 9,800 | | | CHEVRON CORP | 79.010 | | |
| 28,616 | | | CISCO SYSTEMS INC | 16.540 | | |
| 25,480 | | | CITI GROUP INC | 8.290 | | |
| 9,408 | | | COCA COLA CO | 46.870 | | |
| | | | CONTINUED ON PAGE   4 | | | |

CONTINUED ON PAGE   4

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P & S ASSOCIATES GEN PTNKSHIP
6550 N FEDERAL HWY #210
FT LAUDERDALE       FL    33308

YOUR ACCOUNT NUMBER: 3-0
PERIOD ENDING: 11/30/06
YOUR TAX PAYER IDENTIFICATION NUMBER: *****1258
PAGE: 4

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 14,112 | | | COMCAST CORP | 17.340 | | |
| | | | CL A | | | |
| 7,056 | | | CONOCOPHILLIPS | 52.520 | | |
| 24,696 | | | EXXON MOBIL CORP | 80.150 | | |
| 49,784 | | | GENERAL ELECTRIC CO | 17.170 | | |
| 1,176 | | | GOOGLE | 292.960 | | |
| 11,760 | | | HEWLETT PACKARD CO | 35.280 | | |
| 21,048 | | | INTEL CORP | 13.800 | | |
| 6,664 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| 17,640 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| 12,936 | | | JOHNSON & JOHNSON | 58.580 | | |
| 5,488 | | | MCDONALDS CORP | 58.750 | | |
| 10,192 | | | MERCK & CO | 26.720 | | |
| 37,240 | | | MICROSOFT CORP | 20.220 | | |
| 18,816 | | | ORACLE CORPORATION | 16.090 | | |
| 7,448 | | | PEPSICO INC | 56.700 | | |
| 31,752 | | | PFIZER INC | 16.430 | | |
| 9,800 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| 14,112 | | | PROCTER & GAMBLE CO | 64.350 | | |
| 7,840 | | | QUALCOMM INC | 33.570 | | |
| 5,680 | | | SCHLUMBERGER LTD | 50.740 | | |
| 7,785 | | | FIDELITY SPARTAN | 1 | | |
| | | | U S TREASURY MONEY MARKET | | | |
| 8,232 | | | U S BANCORP | 26.980 | | |
| 4,704 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | CLASS B | | | |
| | | | CONTINUED ON PAGE   5 | | | |

SEE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

PAGE 5
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER *****1258
YOUR ACCOUNT NUMBER 3-0

P & S ASSOCIATES GEN PTNRSHIP
6550 N FEDERAL HWY #210
FT LAUDERDALE          FL  33308

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 1,175,000 | | | U S TREASURY BILL DUE 03/26/2009 | 99.971 | | |
| 4,704 | | | 3/26/2009 UNITED TECHNOLOGIES CORP | 48.530 | | |
| 13,328 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| 10,192 | | | WAL-MART STORES INC | 55.880 | | |
| 16,464 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | MARKET VALUE OF SECURITIES | | | |
| | | | LONG        10,453,293.93 | | | |
| | | | SHORT | | | |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

P & S ASSOCIATES GEN PTNRSHIP

6550 N FEDERAL HWY #210
FT LAUDERDALE    FL    33308

| | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| YOUR ACCOUNT NUMBER ➤ 3-0 | 11/30/08 | ******1258 | 6 |

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | YEAR-TO-DATE SUMMARY | | | |
| | | | DIVIDENDS | | | 121,398.21 |
| | | | GROSS PROCEEDS FROM SALES | | | 103,092,528.75 |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PAGE **1**

PERIOD ENDING **11/30/00**

YOUR TAX PAYER IDENTIFICATION NUMBER **\*\*\*\*\*\*1258**

YOUR ACCOUNT NUMBER **4-0**

P & S ASSOCIATES GEN PTNRSHIP
6550 N FEDERAL HWY #210
FT LAUDERDALE      FL   33308

| BOUGHT Received on Long | SOLD Delivered on Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 1,092,051.00 |
| | 392 | 45000 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 618,968.00 |
| 392 | | 49326 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 698,152.00 | |
| | 392 | 35430 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 1,018,808.00 |
| 392 | | 39755 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 1,176,392.00 | |
| 392 | | 44080 | S & P 100 INDEX NOVEMBER 460 CALL | 3 | 117,992.00 | |
| | 392 | 48405 | S & P 100 INDEX NOVEMBER 450 PUT | 57 | | 1,450,000.00 |
| | | | NEW BALANCE | | | 2,187,299.00 |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| | 392 | | S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | |
| 392 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | MARKET VALUE OF SECURITIES LONG        646,600.00           SHORT        913,360.00- | | | |

IE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| PAGE |
|---|
| 1 |

| PERIOD ENDING |
|---|
| 10/31/08 |

| YOUR TAX PAYER IDENTIFICATION NUMBER |
|---|
| *****1258 |

| YOUR ACCOUNT NUMBER |
|---|
| ▬▬3-0 |

P & S ASSOCIATES GEN PTNRSHIP

6550 N FEDERAL HWY #210
FT LAUDERDALE      FL      33306

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | 1,092,050.02 | |
| 1 | | | COCA COLA CO | DIV | | 2,840.50 |
| | | | DIV 9/15/08 10/01/08 | | | |
| 1 | | | HEWLETT PACKARD CO | DIV | | 741.52 |
| | | | DIV 9/10/08 10/01/08 | | | |
| 1 | | | MERCK & CO | DIV | | 3,067.74 |
| | | | DIV 9/05/08 10/01/08 | | | |
| 3 | | | SCHLUMBERGER LTD | DIV | | 941.85 |
| | | | DIV 9/03/08 10/03/08 | | | |
| 2 | | | PHILLIP MORRIS INTERNATIONAL | DIV | | 4,197.96 |
| | | | DIV 9/15/08 10/10/08 | | | |
| 11,790 | | 10123 | FIDELITY SPARTAN | 1 | 11,790.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | NEW BALANCE | | 1,092,050.45 | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 76,109 | | | FIDELITY SPARTAN | 1 | | |
| 100,000 | | | U S TREASURY MONEY MARKET | | | |
| | | | U S TREASURY BILL | 99.923 | | |
| | | | DUE 12/18/2008 | | | |
| 17,675,000 | | | 12/18/2008 | | | |
| | | | U S TREASURY BILL | 99.879 | | |
| | | | DUE 2/12/2009 | | | |
| | | | 2/12/2009 | | | |
| | | | MARKET VALUE OF SECURITIES | | | |
| | | | LONG                  SHORT | | | |
| | | | 17,829,665.25 | | | |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

P & S ASSOCIATES GEN PTNRSHIP

6550 N FEDERAL HWY #210
FT LAUDERDALE    FL    33308

PERIOD ENDING 10/31/08
YOUR TAX PAYER IDENTIFICATION NUMBER ******1258
PAGE 2
YOUR ACCOUNT NUMBER 3-0

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | YEAR-TO-DATE SUMMARY | | | |
| | | | DIVIDENDS | | | 121,335.33 |
| | | | GROSS PROCEEDS FROM SALES | | | 85,328,898.75 |

SEE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

P & S ASSOCIATES GEN PTNRSHIP

6550 N FEDERAL HWY #210
FT LAUDERDALE    FL    33308

YOUR ACCOUNT NUMBER    -4-0

PERIOD ENDING    10/31/08

PAGE    1

YOUR TAX PAYER IDENTIFICATION NUMBER    ****1258

| BOUGHT<br>RECEIVED OR LONG | SOLD<br>DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED<br>TO YOUR ACCOUNT | AMOUNT CREDITED<br>TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 1,092,051.00 |
| | | | NEW BALANCE | | | 1,092,051.00 |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

12/17/2008 WED 14:47  FAX 5613619369 Edward H. Gilbert P. A.                    ⓩ001/001



**BERNARD L. MADOFF**
Investment Securities

888 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO
## PURCHASES AND SALES OF SECURITIES

Gentlemen:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, _12/28/92_

_Pompano Beach_                _FL_
(City)                            (State)

Very truly yours, _Gary Powell, Mg. Ptr.  P+S Associates Ben. Auth_
(Client Signature)

Signature Of Authorized Agent: _____

Affiliated with
Madoff Securities International Ltd.



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
212 230-2424
800 334-1343
Fax 212 838-4061

MEMBER
FINRA NSX SIPC NSCC DTC

CONFIRMATION (Please see reverse for further details.)

| ORIGINATOR NO. | TRANSFERRED IN | ACCOUNT NUMBER | DR | TRANS. NO. | TR | CAP | SETT | TRADE DATE | SETTLEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 0848 | | 3-3 | D | 67132 | 5 | 1 | | 11/06/08 | 11/12/08 |

17

P & S ASSOCIATES GEN PTNRSHIP
6550 N FEDERAL HWY #210
FT LAUDERDALE    FL 33308

| M/B | QUANTITY | CUSIP NUMBER | SECURITY DESCRIPTION | NET AMOUNT |
|---|---|---|---|---|
| SLD | 23,520 | 060505104 | BANK OF AMERICA | 508736.80 |

| PRICE | PRINCIPAL | COMMISSION | STATE TAX | INTEREST | FEE | MISC. |
|---|---|---|---|---|---|---|
| 21.590 | 507796.80 | 940.00 | | | | |

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222
Member of The London Stock Exchange

# P&S ASSOCIATES, G/P AMENDED AND RESTATED PARTNERSHIP AGREEMENT

This AMENDED & RESTATED Partnership Agreement (the "Agreement") is MADE AND ENTERED INTO THIS 21ST DAY OF DECEMBER, 1994 by and among the party or parties whose names and signatures appear personally or by power of attorney at the end of this Agreement and whose addresses are listed on Exhibit "A" annexed hereto (information regarding other Partners will be furnished to a Partner upon written request) (COLLECTIVELY, THE "PARTNERS"). THE TERM "PARTNER" SHALL ALSO APPLY TO ANY INDIVIDUAL WHO, SUBSEQUENT TO THE DATE OF THIS AGREEMENT, JOINS IN THIS AGREEMENT OR ANY ADDENDUM TO THIS AGREEMENT.

WHEREAS, THE PARTNERS, ENTERED A PARTNERSHIP AGREEMENT DATED DECEMBER 11, 1992, ("PARTNERSHIP AGREEMENT"); AND

WHEREAS, PURSUANT TO ARTICLE THIRTEEN OF THE PARTNERSHIP AGREEMENT, THE PARTNERS RESERVED THE RIGHT TO AMEND OR MODIFY IN WRITING AT ANY TIME THE PARTNERSHIP AGREEMENT; AND

WHEREAS, THE PARTNERS BELIEVE IT TO BE IN THEIR BEST INTEREST AND ALSO THE BEST INTEREST OF THE PARTNERSHIP TO AMEND, REVISE AND RESTATE THE TERMS AND CONDITIONS OF THE PARTNERSHIP AGREEMENT.

NOW THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES MADE HEREIN AND IN CONSIDERATION OF THE BENEFIT TO BE RECEIVED FROM THE MUTUAL OBSERVANCE OF THE COVENANTS MADE HEREIN, AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THE PARTNERS AGREE AS FOLLOWS:

## Background

The Partners desire to form a general partnership for the purpose of engaging in the business of investing. For and in consideration of the mutual covenants contained herein, the Partners hereby form, create and agree to associate themselves in a general partnership in accordance with the Florida Uniform Partnership Law, on the terms and subject to the conditions set forth below:

## ARTICLE ONE

## ORGANIZATION

### Name

1.01        The activities and business of the partnership shall be conducted under the name P & S Associates, General Partnership (the "Partnership") in Florida, and under any variations of this name that may be necessary to comply with the laws of other states within which the Partnership may do business or make investments.

### Organization

1.02        The Partnership shall be organized as a general partnership under the Uniform Partnership Law of the state of Florida. Following the execution of this Agreement, the partners shall execute or cause to be executed and filed any documents or instruments with such authorities that may be necessary or appropriate from time to time to comply with all requirements for the qualification of the Partnership as a general partnership in any jurisdiction.

### Place of Business and Mailing Address

1.03        The principle place of business and mailing address of the Partnership shall be located at 6550 North Federal Highway, Suite 210, Ft. Lauderdale, FL 33308, or any such place or places of business that may be designated by the Managing General Partners.

*1*

## ARTICLE TWO

## PURPOSE OF THE PARTNERSHIP

### By Consent of Partners

2.01        The Partnership shall not engage in any business except as provided in this Agreement without prior written consent of all Partners.

2.02        The general purpose of the Partnership is to invest, in cash or on margin, in all types of marketplace securities, including, without limitation, the purchase and sale of and dealing in stocks, bonds, notes and evidences in indebtedness of any person, firm, enterprise, corporation or association, whether domestic or foreign; bills of exchange and commercial paper; any and all other securities of any kind, nature or description; and gold, silver, grain, cotton or other commodities and provisions usually dealt in on exchanges, on the over-the-counter market or otherwise. In general, without limitation of the above securities, to conduct any commodities, future contracts, precious mental, options and other investment vehicles of whatever nature.  The Partnership shall have the right to allow OR TERMINATE a specific broker, or brokers, as selected by fifty-one (51) Percent in interest, not in numbers, of the Partners, and allow such broker, or brokers, AS SELECTED BY FIFTY-ONE PERCENT (51%) IN INTEREST, NOT IN NUMBERS, OF THE PARTNERS, to have discretionary investment powers with the investment funds of the Partnership.

## ARTICLE THREE

## DURATION

### Date of Organization

3.01        The Partnership shall begin on January 1, 1993 and shall continue until dissolved as specifically provided in this Agreement or by applicable law.

## ARTICLE FOUR

## CAPITAL CONTRIBUTIONS

### Initial Contributions

4.01        The Partners acknowledge that each Partner shall be obligated to contribute and will, on demand, contribute to the Partnership  the amount of cash set out opposite the name of each Partner on Exhibit A as an initial capital contribution.

### Additional Contributions

4.02        No Partner shall be required to contribute any capital or lend any funds to the Partnership except as provided in Section 4.01 or as may otherwise be agreed on by all of the Partners.

### Contributions Secured

4.03        Each Partner grants to the Managing General Partners a lien on his or her interest in the Partnership to secure payment of all contributions and the performance of all obligations required or permitted under this agreement.

### No Priority

4.04        No Partner shall have any priority over any other Partner as to allocations of profits, losses, dividends, distributions or returns of capital contributions, and no Partner shall be entitled to withdraw any part of their capital contribution without at least THIRTY (30) DAYS written notice.

### Capital Accounts

4.05          An individual capital account shall be maintained for each Partner.  The capital account shall consist of that Partner's initial capital contribution:

a.          increased by his or her additional contributions to capital and by his or her share of Partnership profits transferred to capital; and

b.          decreased by his or her share of partnership losses and by distributions to him or her in reduction of his or her capital.

### No Interest on Capital

No  Partner shall be entitled to interest on his or her contribution to capital of the Partnership.

### ARTICLE FIVE

### ALLOCATIONS AND DISTRIBUTIONS

#### Allocation of Profits and Losses

5.01          The capital gains, capital losses, dividends, interest, margin interest expense, and all other profits and losses attributable to the Partnership shall be allocated among the Partners IN THE RATIO EACH PARTNER'S CAPITAL ACCOUNT BEARS TO THE AGGREGATE TOTAL CAPITAL CONTRIBUTION OF ALL THE PARTNERS ON AN ACTUAL DAILY BASIS COMMENCING ON THE DATE OF EACH PARTNER'S ADMISSION INTO THE PARTNERSHIP AS FOLLOWS:  TWENTY PERCENT (20%) TO THE MANAGING GENERAL PARTNERS AND EIGHTY PERCENT (80%) TO THE PARTNERS.

### DISTRIBUTIONS

5.02          Distributions of PROFITS shall be made at least once per year, and may be made at such other time as the Managing General Partners shall in their sole discretion determine, and upon the Partnership's termination.  Partners shall also have the election to receive such distributions within ten (10) days after the end of each calender quarter, or to have such distributions remain in the Partnership, thus increasing the Partner's capital contribution.  CASH FLOW SHALL BE DISTRIBUTED AMONG ALL THE PARTNERS, IN THE RATIO EACH PARTNER'S CAPITAL ACCOUNT BEARS TO THE AGGREGATE TOTAL CAPITAL CONTRIBUTION OF ALL THE PARTNERS ON AN ACTUAL DAILY BASIS COMMENCING ON THE DATE OF EACH PARTNER'S ADMISSION INTO THE PARTNERSHIP, FOR ANY FISCAL YEAR AS FOLLOWS:  TWENTY PERCENT (20%) TO THE MANAGING GENERAL PARTNERS AND EIGHTY PERCENT (80%) TO THE PARTNERS.

### ARTICLE SIX

### OWNERSHIP OF PARTNERSHIP PROPERTY
#### Title to Partnership Property

6.01          All property acquired by the Partnership shall be owned by and in the name of the Partnership, that ownership being subject to the other terms and conditions of this Agreement.  Each Partner expressly waives the right to require partition of any Partnership property or any part of it.  The Partners shall execute any documents that may be necessary to reflect the Partnership's ownership of its assets and shall record the same in the public offices that may be necessary or desirable in the discretion of the Managing General Partner.

### ARTICLE SEVEN

### FISCAL MATTERS

#### Title to Partnership Property
#### Accounting

3

*P&S Associates, General Partnership*

7.01         A complete and accurate inventory OF THE PARTNERSHIP shall be taken BY THE MANAGING GENERAL PARTNERS, and a complete and accurate statement of the condition of the Partnership shall be made and an accounting among the Partners shall be MADE ANNUALLY per fiscal year BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTING FIRM. NOT LATER THAN NINETY (90) DAYS AFTER THE END OF THE PARTNERSHIP'S FISCAL YEAR THE PARTNERSHIP'S INDEPENDENT PUBLIC ACCOUNTING FIRM SHALL TRANSMIT TO THE PARTNERS A COPY OF THE CURRENT PARTNERSHIP TAX RETURN TOGETHER WITH FORM K-1. The profits and losses of the preceding year, to the extent such shall exist and shall not have been divided and paid or distributed previously, shall then be divided and paid or distributed, or otherwise retained by the agreement of the Partners. Distributions SHALL BE made at such time(s) as the General Managing Partners shall in their discretion deem necessary and appropriate.

### Fiscal Year

7.02         The fiscal year of the Partnership for both accounting and Federal income tax purposes shall begin on January 1 of each year.

### Books and Records

7.03         PROPER AND COMPLETE BOOKS OF ACCOUNT OF THE BUSINESS OF the Partnership shall be KEPT BY THE MANAGING GENERAL PARTNERS AND maintained at the offices of the Partnership. Proper books and records shall be kept with reference to all Partnership transactions. Each Partner or his or her authorized representative shall have access to AND THE RIGHT TO AUDIT AND / OR REVIEW the Partnership books and records at all reasonable times during business hours.

### Method of Accounting

7.04         The books of account of the Partnership shall be kept on a cash basis.

### Expenses

7.05         All rents, payments for office supplies, premiums for insurance, professional fees and disbursements, and other expenses incidental to the Partnership business shall be paid out of the Partnership profits or capital and shall, for the purpose of this Agreement, be considered ordinary and necessary expenses of the Partnership deductible before determination of net profits.

## ARTICLE EIGHT
## MANAGEMENT AND AUTHORITY

### Management and Control

8.01         Except as expressly provided in the Agreement, the management and control of the day-to-day operations of the Partnership and the maintenance of the Partnership property shall rest exclusively with the Managing General Partners, Michael D. Sullivan and Greg Powell.  Except as provided in Article FIVE Section 5.01, the Managing General Partners shall receive no salary or other compensation for their services as such.  The Managing General Partners shall devote as much time as they deem necessary or advisable to the conduct and supervision of the Partnership's business.  The Managing General Partners may engage in any activity for personal profit or advantage without the consent of the Partners.

### Powers of Managing General Partners

8.02         The Managing General Partners are authorized and empowered to carry out and implement any and all purposes of the Partnership.  In that connection, the powers of the General Managing Partners shall include but shall not be limited to the following:

4

*P&S Associates, General Partnership*

a.      to engage, fire or terminate personnel, attorneys, accountants or other persons that may be deemed necessary or advisable

b.      to open, maintain and close bank or investment accounts and draw checks, drafts or other orders for the payment of money

c.      to borrow money; to make, issue, accept, endorse and execute promissory notes, drafts, loan agreements and other instruments and evidences of indebtedness on behalf of the Partnership; and to secure the payment of indebtedness by mortgage, hypothecation, pledge or other assignment or arrangement of security interests in all or any part of the property then owned or subsequently acquired by the Partnership.

d.      to take any actions and to incur any expense on behalf of the Partnership that may be necessary or advisable in connection with the conduct of the Partnership's affairs.

e.      to enter into, make and perform any contracts, agreements and other undertakings that may be deemed necessary or advisable for the conducting of the Partnership's affairs

f.      to make such elections under the tax laws of the United Stated and Florida regarding the treatment of items of Partnership income, gain, loss, deduction or credit and all other matters as they deem appropriate or necessary.

g.      TO ADMIT PARTNERS INTO THE PARTNERSHIP NOT EXCEEDING ONE HUNDRED AND FIFTY (150) PARTNERS UNLESS THE PARTNERS HAVE APPROVED PURSUANT TO SECTION 14.04 THE ADMISSION INTO THE PARTNERSHIP OF MORE THAN ON HUNDRED AND FIFTY (150) PARTNERS.

### Restrictions on Partners

3.03      Without the prior consent of the Managing General Partners or all of the other partners, no other Partner may act on behalf of the Partnership to: (i) borrow or lend money; (ii) make, deliver or accept any commercial paper;  (iii) execute any mortgage, security agreement, bond or lease; or (iv) purchase or sell any property for or of the Partnership.

### Meetings of the Partners

3.04      The Partners shall hold regular quarterly meetings on the 3rd Tuesday during the months of January, April, July, and October at 1:00 p.m. at the principle office of the Partnership. In the event such Tuesday falls on a declared Holiday, such meeting will take place the next following business day.  In addition fifty-one percent (51%) in interest, not in numbers, of the Partners may call a special meeting   to be held at any time after the giving of twenty (20) days' notice to all of the Partners.  Any Partner may waive notice of or attendance at any meeting of the Partners, may attend by telephone or any other electronic communication device, or may execute a signed written consent to representation by another Partner or representative. At the meeting, Partners WILL REVIEW THE ENGAGEMENT WITH THE PARTNERSHIP OF ANY BROKER OR BROKERS AND  shall transact any business that may properly be brought before the meeting. the Partners shall designate someone to keep regular minutes of all the proceedings. the minutes shall be placed in the minute book of the Partnership.

### Action without Meeting

3.05      Any action required by statute or by this Agreement to be taken at a meeting of the Partners or any action that may be taken at a meeting of the Partners may be taken without a meeting if a consent in writing, setting forth the action taken or to be taken, shall be signed by all of the Partners entitled to vote with respect to the subject matter of the consent. That consent shall have the same force and effect as a unanimous vote of the Partners.  Any signed consent, or a signed copy thereof, shall be placed in the minute book of the Partnership.

### Death, Removal or Appointment of Managing General Partner

*P&S Associates, General Partnership*

8.06        ANY MANAGING GENERAL PARTNER MAY BE REMOVED WITH OR WITHOUT
CAUSE AS DETERMINED BY THE AFFIRMATIVE VOTE OF FIFTY-ONE PERCENT (51%) in interest,
not in numbers, of Partners. In the event of any such removal, the removed Managing General Partner
shall not be relieved of his obligations OR LIABILITIES to the Partnership and to the other Partners
resulting from the events, actions, or transactions occurring during the period in which such remove
Managing General Partner served as a Managing General Partner. From and after the effective date of
such removal, however, the removed Managing General Partner may be deemed to be a Partner, shall
forfeit all rights and obligations of a Managing General Partner, and thereafter shall have the same rights
and obligations as a Partner. A MANAGING GENERAL PARTNER SHALL BE APPOINTED BY THE
AFFIRMATIVE VOTE OF FIFTY-ONE PERCENT (51%) IN INTEREST, NOT IN NUMBERS, OF THE
PARTNERS. THE PARTNERSHIP SHALL HAVE AS MANY MANAGING GENERAL PARTNERS AS
THE PARTNERS BY THE AFFIRMATIVE VOTE OF FIFTY-ONE (51%) IN INTEREST, NOT IN
NUMBERS, OF THE PARTNERS SHALL DETERMINE TO BE IN THE BEST INTEREST OF THE
PARTNERSHIP. ON THE DEATH OR INCOMPETENCY OF A MANAGING GENERAL PARTNER,
ANY CO-MANAGING GENERAL PARTNER SHALL CONTINUE AS THE MANAGING GENERAL
PARTNER OR IF THERE SHALL BE NO CO-MANAGING GENERAL PARTNER, THEN THE
PARTNERS SHALL, WITHIN TEN (10) DAYS OF SUCH DEATH OR DECLARATION OF
INCOMPETENCY, APPOINT A NEW MANAGING GENERAL PARTNER IN ACCORDANCE WITH
THE TERMS PROVIDED IN THIS AGREEMENT.

## ARTICLE NINE

### TRANSFERS AND ASSIGNMENTS
#### No Transfer of Assignment Without Consent

9.01        No Partner's interest may be transferred or assigned without the express written consent
of fifty-one percent (51%) in interest, not in number, of the Partners provided, however, that a Partner's
interest may be transferred or assigned to a party who at the time of the transfer or assignment is a
Partner. Any transferee or assignee to whom an interest in the Partnership has been transferred or
assigned and who is not at the time of the transfer or assignment to a party to this Agreement shall be
entitled to receive, in accordance with the terms of the transfer or assignment, the net profits to which the
assigning Partner would otherwise be entitled. Except as provided in the preceding sentence, the
transferee or assignee shall not be a Partner and shall not have any of the rights of the Partner, unless and
until the transferee or assignee shall have (i) received the approval of the Partners as provided IN THIS
AGREEMENT, and (ii) accepted and assumed, in writing, the terms and conditions of this Agreement.

#### Death or Incompetency of Partner

9.02        Neither the death or incompetency of a Partner shall cause the dissolution of the
Partnership. On the death or incompetency of any Partner, the Partnership business shall be continued
and the surviving Partners shall have the option to allow the assets of the deceased or incompetent
Partner to continue in the deceased or incompetent Partner's HEIR'S OR SUCCESSOR'S place, or to
terminate the deceased or incompetent partner's interest and return to the estate his or her interest in the
partnership.

B.        If the surviving Partners elect to allow the estate of a deceased Partner to continue in the
deceased Partner's place, the estate shall be bound by the terms and provisions of this Agreement.
However, in the event that the interest of a deceased Partners does not pass in trust or passes to more
than one heir or devices or, on termination of a trust, is distributed to more than one beneficiary, then the
Partnership shall have the right to terminate immediately the deceased Partner's interest in the
Partnership. In that event, the Partnership shall return to the deceased Partner's heirs, devises or
beneficiaries, in cash, the value of the Partnership interest as calculated in ARTICLE ELEVEN as of the
date of termination.

#### Withdrawals of Partners

9.03        Any Partner may withdraw from the Partnership at any given time; provided, however,
that the withdrawing Partner shall give at least thirty (30) days written notice. THE PARTNERSHIP
SHALL, WITHIN THIRTY (30) DAYS OF RECEIVING NOTICE OF THE PARTNER'S WITHDRAWAL,

6

*P&S Associates, General Partnership*

PAY the withdrawing Partner, in cash, the value of his or her Partnership interest as calculated in ARTICLE ELEVEN as of the date of withdrawal. the withdrawing Partner or his or her legal representative shall execute such documents and take further actions as shall reasonable be required to effectuate the termination of the withdrawing Partner's interest in the Partnership.

## ARTICLE TEN

## TERMINATION OF PARTNERS

### Events of Default

10.01        The following events shall be deemed to be defaults by a Partner:

a.        the failure to make when due any contribution or advance required to be made under the terms of this agreement and continuing that failure for a period of ten (10) days after written notice of the failure from the Managing general Partners.

b.        the violation of any of the other provisions of this Agreement and failure to remedy or cure that violation within (10) days after written notice of the failure from the Managing General Partners.

c.        THE INSTITUTION OF PROCEEDINGS UNDER ANY LAW OF THE UNITED STATES OR OF ANY STATE FOR THE RELIEF OF DEBTORS, FILING A VOLUNTARY PETITION IN BANKRUPTCY OR FOR AN ARRANGEMENT OR REORGANIZATION OR ADJUDICATION TO BE INSOLVENT OR A BANKRUPT, MAKING AN ASSIGNMENT FOR THE BENEFIT OF CREDITORS.

d.        SUFFERING TO BE SEIZED BY A RECEIVER, TRUSTEE, OR OTHER OFFER APPOINTED BY ANY COURT OR ANY SHERIFF, CONSTABLE, MARSHALL OR OTHER SIMILAR GOVERNMENT OFFICER, UNDER LEGAL AUTHORITY, ANY SUBSTANTIAL PORTION OF ITS ASSETS OR ALL OR ANY PART OF ANY INTEREST THE PARTNER MAY HAVE IN THIS PARTNERSHIP AND SUCH IS HELD IN SUCH OFFICER'S POSSESSION FOR A PERIOD OF THIRTY (30) DAYS OR LONGER.

e.        the appointment of a receiver for all or substantially all of the Partner's assets and the failure to have the receiver discharged within ninety (90) days after the appointment.

f.        the bringing of any legal action against the Partner by his or her creditor(s), resulting in litigation that, in the opinion if the General Managing Partners or fifty-one (51) percent in interest, not in numbers, of the other Partners, creates a real and substantial risk of involvement of the Partnership property.

g.        THE COMMITTING OR PARTICIPATION IN AN INJURIOUS ACT OF FRAUD, GROSS NEGLECT, MISREPRESENTATION, EMBEZZLEMENT OR DISHONESTY AGAINST THE PARTNERSHIP, OR COMMITTING OR PARTICIPATING IN ANY OTHER INJURIOUS ACT OR OMISSION WANTONLY, WILLFULLY, RECKLESSLY, OR IN A MANNER WHICH WAS GROSSLY NEGLIGENT AGAINST THE PARTNERSHIP, MONETARILY OR OTHERWISE, OR BEING CONVICTED OF ANY ACT OR ACTS CONSTITUTING A FELONY OR MISDEMEANOR, OTHER THAN TRAFFIC VIOLATIONS, UNDER THE LAWS OF THE UNITED STATES OR ANY STATE THEREOF.

10.02        On the occurrence of an event of a default by a Partner, fifty-one (51) percent in interest, not in numbers, or more of the other Partners shall have the right to elect to terminate the interest of the defaulting Partner without affecting a termination of the Partnership. This election may be made at any time within one (1) year from the date of default, on giving the defaulting Partner five (5) days written notice of the election, provided the default is continuing on the date the notice is given. The defaulting Partner's interest shall be returned to him or her in accordance with the provisions of ARTICLE ELEVEN OF THIS AGREEMENT.

        The defaulting Partner's Partnership interest shall be reduced by the aggregate amount of any outstanding debts of the defaulting Partner to the Partnership and also by all damages caused to the Partnership by the default of the defaulting Partner.

On return to the defaulting Partner of his or her interest in the Partnership, the defaulting Partner shall have no further interest in the Partnership or its business or assets and the defaulting Partner shall execute and deliver as required any assignments or other instruments that may be necessary to evidence and fully AND effectively transfer the interest of the defaulting Partner to the non-defaulting Partners. If the appropriate instruments are not delivered, after notice by the Managing General Partner that the interest is available to the defaulting Partner, the Managing General Partner may tender delivery of the interest to the defaulting Partner and execute, as the defaulting Partner's POWER OF ATTORNEY, any instruments AS ABOVE REFERENCED. All parties agree that the General Managing Partners shall not have any individual liability for any actions taken in connection HERETO.

No assignment, transfer OR TERMINATION of a defaulting Partner's INTEREST as provided in this Agreement shall relieve the defaulting Partner from any personal liability for outstanding indebtedness, liabilities, liens or obligations relating to the Partnership that may exist on the date of the assignment, transfer OR TERMINATION. The default of any Partner under this Agreement shall not relieve any other Partner from his, her or its interest in the Partnership.

### Foreclosure for Default

10.03    If a Partner is in default under the terms of this Agreement, the lien provided for in Article four, Section 4.03 may be foreclosed by the Managing General Partner at the option of fifty-one (51) percent IN INTEREST, NOT IN NUMBERS, of the non-defaulting Partners.

### Transfer by Attorney-in-Fact

10.04    Each Partner makes, constitutes, and appoints the Managing General Partners as the Partner's attorney-in-fact in the event that the Partner becomes a defaulting Partner whose interest in the Partnership has been foreclosed in the manner prescribed in this Article Ten. On foreclosure, the Managing General Partners are authorized and allowed to execute and deliver a full assignment or other transfer of the defaulting partner's interest in the Partnership and at the Managing General Partners shall have no liability to any person for making the assignment or transfer.

### Additional Effects of Default

10.05    Pursuit of any of the remedies permitted by this Article Ten shall not preclude pursuit of any other remedies allowed by law, nor shall pursuit of any remedy provided in this Agreement constitute a forfeiture or waiver of any amount due to the PARTNERSHIP OR remaining partners or of any damages accruing to IT OR them by reason of the violation of any of the terms, provisions and covenants contained in this Agreement.

## ARTICLE ELEVEN
## VALUATION OF PARTNERSHIP INTERESTS
### Purchase Price of Partnership Interests

11.01    The full purchase price of the Partnership interest of a deceased, incompetent, withdrawn or terminated Partner shall be an amount equal to the Partner's capital and income accounts as the appear on the Partnership books on the date of death, incompetence, withdrawal or termination and adjusted to include the Partner's distributive share of any Partnership net profits or losses not previously credited to or charged against the income and capital accounts. In determining the amount payable under this Section, no value shall be attributed to the goodwill of the Partnership, and adequate provision shall be make for any existing contingent liabilities of the Partnership.

## ARTICLE TWELVE

## TERMINATION OF THE PARTNERSHIP

### Termination Events

12.01    The Partnership SHALL be terminated AND DISSOLVED UPON THE FIRST TO OCCUR OF THE FOLLOWING:

*P&S Associates, General Partnership*

a.    UPON THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF THE PARTNERSHIP, UNLESS SUCH ASSETS ARE REPLACED BY SIMILAR ASSETS WITHIN A REASONABLE TIME FOR THE PURPOSE OF CONTINUING THE PARTNERSHIP BUSINESS;

b.    at any time on the WRITTEN affirmative vote of AT LEAST fifty-one (51) percent in interest, not in numbers, of the Partners; AND

c.    except as otherwise provided in this Agreement, on the occurrence of any other event that under the Uniform Partnership Law would require the dissolution of general Partnership.

### Distribution of Assets

12.02    On termination, the Partnership' business shall be wound up as timely as in practical under the circumstances; the Partnership's assets shall be applied as follows: (i) first to payment of the outstanding Partnership liabilities; (ii) then to a return of the Partner's capital in accordance with their Partnership interests. Any remainder shall be distributed according to the terms of Article Five; provided, however, that the Managing General Partners may retain a reserve in the amount they determine advisable for any contingent liability until such time as that liability is satisfied or discharged. If the Partner's capital has been returned, them the balance of the reserve shall be distributed in accordance with Article Five, otherwise, capital shall be returned in accordance with their Partnership interests, and then any remaining sums shall be distributed in accordance with Article Five.

### ARTICLE THIRTEEN

### AMENDMENTS

### In Writing

13.01    Subject to the provisions of Article 8.01 and 8.02, this Agreement, except with respect to vested rights of any Partner, may be amended or modified in writing at any time by the agreement of Partners owning collectively at least fifty-one (51) percent in interest, not in numbers, in the Partnership.

### ARTICLE FOURTEEN

### MISCELLANEOUS

### Partners

14.01    THE PARTNERSHIP MAY ADMIT AS A PARTNER ANY CORPORATION, INCLUDING AN ELECTING SMALL BUSINESS CORPORATION ("S CORPORATION") AS THAT TERM IS DEFINED IN THE INTERNAL REVENUE CODE OF 1986, AS AMENDED ("IRC"), CERTAIN EMPLOYEE BENEFIT PLANS INCLUDING PENSION PLANS, AND CERTAIN TAX EXEMPT ORGANIZATIONS, INCLUDING INDIVIDUAL RETIREMENT ACCOUNTS ("IRA") AS DEFINED IN THE IRC. IT WILL BE THE OBLIGATION OF ANY CORPORATE, BENEFIT PLAN, OR TAX EXEMPT ENTITY PARTNER TO COMPLY WITH ALL STATE AND FEDERAL LAWS, RULES AND REGULATIONS GOVERNING ITS EXISTENCE AS IT RELATES TO BECOMING A PARTNER IN THE PARTNERSHIP.    WHETHER OR NOT AN ENTITY CAN BECOME A PARTNER OF THE PARTNERSHIP, WILL DEPEND UPON ITS CHARACTER AND LOCAL LAW. EACH PARTNER, IF NOT AN INDIVIDUAL, SHOULD CONSULT WITH THEIR OWN ATTORNEY AS TO ANY LIMITATIONS OR QUALIFICATIONS OF BEING A PARTNER IN THE PARTNERSHIP.    THE PARTNERSHIP SHALL HAVE NO DUTY TO INQUIRE AND SHALL HAVE THE RIGHT TO ASSUME THAT ANY ENTITY APPLYING AND BECOMING A PARTNER IN THE PARTNERSHIP IS IN FACT UNDER ITS GOVERNING LAWS, ENTITLED TO BE A PARTNER IN THE PARTNERSHIP.    THE PARTNERSHIP SHALL HAVE NO DUTY TO INQUIRE AND SHALL HAVE THE TIGHT TO ASSUME THAT ANY ENTITY APPLYING AND BECOMING A PARTNER IN THE PARTNERSHIP IS IN FACT UNDER ITS GOVERNING LAWS, ENTITLED TO BE A PARTNER IN THE PARTNERSHIP.

9

*P&S Associates, General Partnership*

FURTHERMORE, A PARTNER , IF OTHER THAN AN INDIVIDUAL, WILL BE REQUIRED TO DESIGNATE TO THE MANAGING GENERAL PARTNER PRIOR TO ADMITTANCE IN THE PARTNERSHIP, A PERSON UPON WHOM ALL NOTICES RELATING TO THE PARTNERSHIP AND SHALL BE THE ONLY PERSON ON BEHALF OF THE PARTNER THE PARTNERSHIP WILL BE REQUIRED TO BE BOUND BY AND COMMUNICATE WITH WHEN NECESSARY. FURTHERMORE, AND IN THIS REGARD, ALL DISTRIBUTIONS TO BE MADE TO THE PARTNER PURSUANT TO THIS SECTION AND THIS AGREEMENT SHALL BE MADE ONLY TO THE PARTNER'S REPRESENTATIVE. IF NOT AN INDIVIDUAL, AND THE PARTNERSHIP SHALL NOT BE OBLIGATED TO MAKE DISTRIBUTIONS TO ANY OTHER PERSON WHO HAS AN INTEREST IN A PARTNER. PAYMENT TO SUCH PARTNER'S REPRESENTATIVE SHALL EXTINGUISH ALL LIABILITIES THE PARTNERSHIP MAY HAVE TO SUCH PARTNER.

### IRA ACCOUNTS

14.02    NOTICE IS HEREBY GIVEN TO ANY PARTNER CONSISTING OF AN IRA ACCOUNT THAT THE PARTNERSHIP IS NOT ACTION AS A FIDUCIARY ON BEHALF OF THE IRA ACCOUNT.

### LIMITATIONS ON LIABILITY

14.03    THE PARTNERS SHALL HAVE NO LIABILITY TO THE PARTNERSHIP OR TO ANY OTHER PARTNER FOR ANY MISTAKES OR ERRORS IN JUDGMENT, NOR FOR ANY ACT OR OMISSIONS BELIEVED IN GOOD, FAITH TO BE WITHIN THE SCOPE OF AUTHORITY CONFERRED BY THIS AGREEMENT. THE PARTNERS SHALL BE LIABLE ONLY FOR ACTS AND/OR OMISSIONS INVOLVING INTENTIONAL WRONGDOING, FRAUD, AND BREACHES OF FIDUCIARY DUTIES OF CARE AND LOYALTY. ACTIONS OR OMISSIONS TAKEN IN RELIANCE UPON THE ADVICE OF LEGAL COUNSEL APPROVED BY FIFTY-ONE PERCENT (51%) IN INTEREST, NOT IN NUMBERS, OF THE PARTNERS AS BEING WITHIN THE SCOPE CONFERRED BY THIS AGREEMENT SHALL BE CONCLUSIVE EVIDENCE OF GOOD FAITH; HOWEVER, THE PARTNERS SHALL NOT BE REQUIRED TO PROCURE SUCH ADVICE TO BE ENTITLED TO THE BENEFIT OF THIS SECTION. THE PARTNERS HAVE THE RESPONSIBILITY TO DISCHARGE THEIR FIDUCIARY DUTIES OF CARE AND LOYALTY AND THOSE ENUMERATED IN THIS AGREEMENT CONSISTENTLY WITH THE OBLIGATION OF GOOD FAITH AND FAIR DEALING.

#### Additional Partners

14.04    THE PARTNERSHIP MAY ADMIT UP TO ONE HUNDRED AND FIFTY (150) PARTNERS INTO THE PARTNERSHIP IN ACCORDANCE WITH SECTION 8.02. THE PARTNERSHIP SHALL HAVE THE RIGHT TO ADMIT MORE THAN ONE HUNDRED AND FIFTY (150) PARTNERS INTO THE PARTNERSHIP ONLY BY THE EXPRESS WRITTEN CONSENT OF FIFTY-ONE PERCENT (51%) IN INTEREST, NOT IN NUMBER, OF THE PARTNERS. ANY NEW OR ADDITIONAL PARTNER SHALL ACCEPT AND ASSUME IN WRITING THE TERMS AND CONDITIONS OF THIS AGREEMENT.

### SUITABILITY

14.05    EACH PARTNER REPRESENTS TO THE PARTNERSHIP THAT IF THE PARTNER IS NOT AN ACCREDITED INVESTOR, AS DEFINED IN THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") (AS DEFINED BELOW), THAT THEY WILL NOTIFY THE MANAGING GENERAL PARTNERS IN WRITING WITHIN TEN (10) DAYS FROM THE DATE OF THAT PARTNER'S ADMISSION INTO THE PARTNERSHIP. AN ACCREDITED INVESTOR AS DEFINED IN THE ACT IS: A NATURAL PERSON WHO HAD INDIVIDUAL INCOME OF MORE THAN $200,000.00 IN EACH OF THE MOST RECENT TWO (2) YEARS OR JOINT INCOME WITH THEIR SPOUSE IN EXCESS OF $300,000.00 IN EACH OF THE MOST RECENT TWO (2) YEARS AND REASONABLY EXPECTS TO REACH THAT SAME INCOME LEVEL FOR THE CURRENT YEAR; A NATURAL PERSON WHOSE INDIVIDUAL NET WORTH (I.E., TOTAL ASSETS IN EXCESS OF TOTAL LIABILITIES), OR JOINT NET WORTH WITH THEIR SPOUSE, AT THE TIME OF ADMISSION INTO THE PARTNERSHIP IS IN EXCESS OF $1,000,000.00; A TRUST, WHICH TRUST HAS TOTAL ASSETS IN EXCESS OF $5,000,000.00, WHICH IS

*P&S Associates, General Partnership*

NOT FORMED FOR THE SPECIFIC PURPOSE OF ACQUIRING THE PARTNERSHIP INTEREST HEREIN AND WHOSE INVESTMENT IS DIRECTED BY A SOPHISTICATED PERSON WHO HAS SUCH KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT HE IS CAPABLE OF EVALUATING THE MERITS AND RISKS INVOLVED IN BECOMING A PARTNER; ANY ORGANIZATION DESCRIBED IN SECTION 501(c)(3) OF THE IRC, CORPORATION, MASSACHUSETTS OR SIMILAR BUSINESS TRUST, OR PARTNERSHIP, NOT FORMED FOR THE SPECIFIC PURPOSE OF ACQUIRING THE PARTNERSHIP INTEREST HEREIN, WITH TOTAL ASSETS IN EXCESS OF $5,000,000.00; ANY PRIVATE BUSINESS DEVELOPMENT COMPANY AS DEFINED IN SECTION 3(a)(2) OF THE ACT OR ANY SAVINGS AND LOAN ASSOCIATION OR OTHER INSTITUTION AS DEFINED IN SECTION 3(a)(5) (A) OF THE ACT, WHETHER ACTING IN ITS INDIVIDUAL OR FIDUCIARY CAPACITY; ANY BROKER-DEALER REGISTERED PURSUANT TO SECTION 15 OR SECTION 2(13) OF THE ACT; ANY INVESTMENT COMPANY REGISTERED UNDER THE INVESTMENT COMPANY ACT OF 1940 OR A BUSINESS DEVELOPMENT COMPANY AS DEFINED IN SECTION 2(a)(48) OF THE ACT; ANY SMALL BUSINESS INVESTMENT COMPANY LICENSED BY THE U.S. SMALL BUSINESS ADMINISTRATION UNDER SECTION 301(c) OR (d) OF THE SMALL BUSINESS INVESTMENT ACT OF 1958; ANY PLAN ESTABLISHED AND MAINTAINED BY A STATE, ITS POLITICAL SUBDIVISION, OR ANY AGENCY OR INSTRUMENTALITY OF A STATE OR ITS POLITICAL SUBDIVISIONS, FOR THE BENEFIT OF ITS EMPLOYEES, IF SUCH PLAN HAS TOTAL ASSETS IN EXCESS OF $5,000,000; ANY EMPLOYEE BENEFIT PLAN WITHIN THE MEANING OF THE EMPLOYEE RETIREMENT INCOME SECURITIES ACT OF 1974, IF THE INVESTMENT DECISION IS MADE BY A PLAN FIDUCIARY, AS DEFINED IN SECTION 3(21) OF SUCH ACT, WHICH IS EITHER A BANK, SAVINGS AND LOAN ASSOCIATION, INSURANCE COMPANY, OR REGISTERED INVESTMENT ADVISOR, OR IF THE EMPLOYEE BENEFIT PLAN HAS TOTAL ASSETS IN EXCESS OF $5,000,000.00, OR, IF A SELF-DIRECTED PLAN, WITH INVESTMENT DECISIONS MADE SOLELY BY PERSONS THAT ARE ACCREDITED INVESTORS; AND, ANY ENTITY WHICH ALL OF THE EQUITY OWNERS ARE ACCREDITED INVESTORS AS DEFINED ABOVE.

### Notices

14.06    Unless otherwise provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telecopies, telexed or sent by United States mail and shall be deemed t have been given when delivered in person, or upon receipt of telecopy or telex or three (3) business days after depositing it in the United States mail, registered or certified, when postage prepaid and properly addressed. For purposes thereof, the addresses of the parties hereto are as set forth in Exhibit "A" and may be changed if specified in writing and delivered in accordance with the terms of this Agreement.

### FLORIDA LAW TO APPLY

14.07    THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS.
11

### Disputes

14.08        The Partners shall make a good faith effort to settle any dispute or claim arising under this Agreement. If, however, the Partners shall fail to resolve a dispute or claim, the Partners shall submit it to arbitration before the Florida office of the American Arbitration Association. In any arbitration, the Federal rules of Civil Procedure and the Federal rules of Evidence, as then existing, shall apply. Judgment on any arbitration awards may be entered by any court of competent jurisdiction.

### Headings

14.09        Section headings used in this Agreement are included herein for convenience or reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

### Parties Bound

14.10        This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns when permitted by this Agreement.

### Severability

14.11        In case any one or more of the provisions contained in this Agreement shall, for any reason, be held invalid, illegal or unenforceable in any respect, that invalid, illegal or unenforceable provisions shall not affect any other provision contained IN THIS AGREEMENT.

### Counterparts

14.12        This Agreement and any amendments, waivers, consents or supplements may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute by one and the same instrument.

### Gender and Number

14.13        Whenever the context shall require, all words in this Agreement in the male gender shall be deemed to include the female or neuter gender AND VICE VERSA, AND all singular words shall include the plural, and all plural works shall include the singular.

### Prior Agreements Superseded

14.14        This Agreement supersedes any prior understandings or written or oral agreements among the parties respecting the subject matter contained herein.

*12*                                                                    ***P&S Associates, General Partnership***

<u>Complete #1, #2, #3 and Exhibit A and mail this page only with
check made payable to "P&S Associates, G/P" to:</u>

**P & S ASSOCIATES, General Partnership**
c/o SULLIVAN & POWELL
6550 N. Federal Hwy., Suite 210
Ft. Lauderdale, FL 33308-1404

1)      The Parties hereto have executed this Agreement by the signature and date set forth below.
Each party signing below hereby represents and warrants that such party is sophisticated and
experienced in financial and business matters and, as a result, is in a position to evaluate and
participate in the business and administration of the Partnership..

_____     Date:_____

_____     Date:_____

2)      <u>Please check one of the following distribution options</u>

_____ I elect to receive distributions on a quarterly basis in the amount of $_____.

_____ I elect to have my quarterly distribution reinvested in the Partnership.

3)      <u>Please check one of the following accredited investor choices:</u>

_____ I am an accredited investor as defined below.

_____ I am not an accredited investor.

<u>The following would qualify as an "accredited investor"</u>

(i)   A person with an individual net worth, or together with his or her spouse a combined net
worth, in excess of $1,000,000. Net worth means the excess of total assets at fair market value, including
home, home furnishings and automobiles, over total liabilities.

(ii)   A person with an individual income (exclusive of any income attributable to his or her
spouse) in excess of $200,000 in each of the past two years, and that he or she reasonably expects to have
an individual income in excess of $200,000 during this year. Individual income means adjusted gross
income, as reported for federal income tax purposes, less any income attributable to a spouse or to
property owned by a spouse, increased by the following amounts (but not including any amounts
attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest
income received under Section 103 of the United States Internal Revenue Code of 1986, as amended (the
"Code"), (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on
Schedule E of form 1040, (iii) any deduction claimed for depletion under Section 611 et seq. of the Code
and (iv) any amount by which income from long-term capital gains has been reduced in arriving at
adjusted gross income pursuant to the provisions of Section 1202 of the Code.

(iii)  A person that together with his or her spouse, had a combined income in excess of $300,000 in each
of the past two years, and reasonably expects to have a combined income in excess of $300,000 during this
year.

*13*

*P&S Associates, General Partnership*