**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Michael J. Riela (MR-7829)
Email: robert.rosenberg@lw.com
       michael.riela@lw.com

Counsel for the Calesa Family Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, ) ) ) | Adv. Pro. No. 08-01789 (BRL) |
| ) | SIPA Liquidation |
| Plaintiff, ) ) |  |
| v. ) ) |  |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, ) ) ) |  |
| Defendant. ) ) |  |

**OBJECTION OF THE CALESA FAMILY TRUST**
**TO TRUSTEE'S DETERMINATION OF CLAIM**

The Calesa Family Trust (the "Trust"), by and through its attorneys, hereby objects to the

Notice of Trustee's Determination of Claim dated December 8, 2009 (the "Determination

Letter") that is annexed hereto as Exhibit A. In support of this Objection, the Trust respectfully

states as follows:

**BACKGROUND**

1.      On December 11, 2008, the above-captioned liquidation proceeding under the

Securities Investor Protection Act of 1970 ("SIPA") was commenced against Bernard L. Madoff

NY\1605993.1

Investment Securities LLC ("BLMIS"). The United States District Court for the Southern District of New York ordered relief under SIPA and transferred the above-captioned proceeding to this Court. Irving H. Picard was appointed the trustee (the "Trustee"), and is charged with overseeing the liquidation of BLMIS and processing customer claims.

**I.    The Establishment of the Trust Account With BLMIS**

2.    On or about December 14, 1996, Calesa Associates, L.P. ("Calesa Associates") established an account with BLMIS (the "Calesa Associates Account").[1] On or about June 1, 2005, the Trust established an account with BLMIS (the "Trust Account") that was separate and distinct from the Calesa Associates Account.[2]

3.    Shortly after the Trust Account was established, BLMIS transferred the balance of funds that was reportedly held in the Calesa Associates Account to the Trust Account, and the Calesa Associates Account was closed. In particular, two transfers were made from the Calesa Associates Account to the Trust Account in 2005 (the "Initial Deposits"). First, on or about June 10, 2005, a transfer in the amount of $5,533,102.76 was made from the Calesa Associates Account to the Trust Account. Second, on or about July 29, 2005, a transfer in the amount of $4,017.00 was made from the Calesa Associates Account to the Trust Account. A copy of the Trustee's reconciliation of the Calesa Associates Account, showing the transfer of the Initial Deposits to the Trust Account, is annexed hereto as Exhibit B.

---

[1] Calesa Associates is a limited partnership, in which Edward F. Calesa is the general partner and his three children are limited partners.

[2] The Trust is a revocable, inter vivos trust. Edward F. Calesa and Sandra Calesa are the settlors and co-trustees of the Trust. Certain members of the Calesa family are beneficiaries of the Trust. The Trust and Calesa Associates are different and distinct legal entities.

NY\1605993.1

## II. The $2.3 Million New Money Deposit in 2006

4. Nearly one year after all of the funds in the Calesa Associates Account were withdrawn and that account was closed, Mr. Calesa decided to invest new money with BLMIS. In that regard, on or about April 28, 2006, Mr. and Mrs. Calesa withdrew $2.3 million from their checking account and wired those funds to BLMIS to be deposited in the Trust Account (the "New Money Deposit"). A copy of the Calesas' statement from their bank depicting the $2.3 million wire from their checking account to BLMIS on April 28, 2006 is annexed hereto as Exhibit C.[3] A copy of a facsimile message that Mrs. Calesa sent to the bank, providing the wire instructions for BLMIS (which instructions indicated that the New Money Deposit *was to be made to the Trust Account*) is annexed hereto as Exhibit D.

5. Notwithstanding that the New Money Deposit was supposed to be made to the Trust Account and that the Calesa Associates Account was closed nearly one year earlier, BLMIS mistakenly applied the New Money Deposit as a deposit into the Calesa Associates Account. The Calesas very quickly detected BLMIS' mistake, and on May 18, 2006, Mrs. Calesa sent a facsimile message to Frank DiPascali at BLMIS, requesting that the mistake be fixed and the New Money Deposit be transferred from the Calesa Associates Account to the Trust Account. A copy of that facsimile message is annexed hereto as Exhibit E. On or about May 18, 2006, BLMIS rectified its mistake by transferring $2,305,146.75 from the Calesa Associates Account to the Trust Account. *See* Exhibit B. Thus, the New Money Deposit was held in the wrong account for only three weeks before it was correctly applied to the Trust Account.

---

[3] For confidentiality purposes, Exhibit C is not being filed herewith. Exhibit C will be included in the copy of the Objection that is served on the Trustee, and will be made available to this Court upon request.

3

6. It should be noted that even if the Trustee's interpretation of "net equity" is correct (as discussed below, the Trustee's interpretation is not correct), the Trust Account was a "net loser" in the amount of $1,479,665, and thus is entitled to receive a SIPA insurance payment and a customer claim in this liquidation proceeding. Specifically, three cash deposits totaling $9,174,665 were made to the Trust Account from April 28, 2006 to July 21, 2008 (which amount includes the New Money Deposit), and nine withdrawals totaling $7,695,000 were made from the Trust Account from June 20, 2005 to October 6, 2008. *See* Exhibit F.

### III. The Trust's Claim and the Trustee's Objection Thereto

7. On or about March 3, 2009, the Trust filed a customer claim in this SIPA liquidation proceeding noting the securities that were purportedly held in the Trust Account,[4] and noting that the amount of deposits into the Trust Account exceeded its withdrawals by approximately $7,016,785 (the "Claim"). A copy of the Claim is annexed hereto as Exhibit G.

8. The Trustee issued the Determination Letter on December 8, 2009. The Trustee denied the Trust's claim in its entirety, on the basis that the amount that was withdrawn from the Trust Account was purportedly greater than the amount that was deposited into that account, leaving the Trust without a positive "net equity," and thus no allowed customer claim.

9. To reach this conclusion, the Trust made two improper "adjustments" to the amounts that had been deposited into the Trust Account. First, the Trustee erroneously "adjusted" the New Money Deposit to zero, incorrectly concluding that because the $2,305,146.75 was transferred from the Calesa Associates Account to the Trust Account (as a result of BLMIS' error in initially directing the New Money Deposit to the wrong account that had already been closed), such funds constituted "fictitious profits" generated through the Calesa

---

[4] The Claim stated that the fair market value of the securities purportedly held in the Trust Account as of November 30, 2009 was over $8.8 million.

Associates Account. Second, the Trustee improperly "adjusted" the Initial Deposits to zero, asserting that the funds that were transferred to the Trust Account from the Calesa Associates Account were fictitious profits, and stating that "[u]nder the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim." See Determination Letter at 2.

## OBJECTION

10. The Trust hereby objects to the Trustee's determination of its claim as set forth in the Determination Letter, and submits that the Claim must be allowed in the full amount asserted therein.

11. First, the full amount of the New Money Deposit must be taken into account in determining the amount of the Trust's allowed customer claim against BLMIS. In "adjusting" the New Money Deposit to zero in the Determination Letter, the Trustee incorrectly concluded that because the $2,305,146.75 was transferred from the Calesa Associates Account to the Trust Account, such funds constituted "fictitious profits" generated through the Calesa Associates Account. In fact, as described above and as reflected in the Exhibits hereto, these funds constituted a deposit of *new money* to BLMIS in 2006, and did not constitute "fictitious profits" at all. BLMIS simply made an error in 2006 by depositing the New Money Deposit to the wrong account, and later corrected that error by transferring the funds to the Trust Account. Therefore, the Trustee's adjustment of the amount of the New Money Deposit to zero for the purpose of determining the allowed Claim is erroneous.

12. Second, the Trustee asserts that the Trust's "net equity" should be determined by the amount of principal contributed to the Trust Account, less the amount of withdrawals. As such, the Trustee disregards gains reflected in BLMIS' customer statements.

13. The Trust asserts that the Trustee's interpretation of "net equity" is incorrect, and that the full amount of the Initial Deposits must be taken into account in determining the allowed amount of the Trust's Claim. Specifically, the Trustee's construction of SIPA ignores the statute's express language, which defines "net equity" as

> "the dollar amount of the account or accounts of a customer, to be determined by -
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
> (B) any indebtedness of such customer to the debtor on the filing date; plus
> (C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 8(a)).
>
> In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers."

15 U.S.C. § 78lll(11). The Trustee's proposed formulation of "net equity" has no support in the language of the SIPA statute.

14. The Trust understands that a hearing will be held in February 2010 with respect to the Trustee's interpretation of "net equity," and that if a final and unappealable Court order determines that the Trustee is incorrect in his interpretation of "net equity," the Trustee will be bound by that order and will apply it retroactively to all previously-determined customer claims. *See* Determination Letter at 2. The Trust reserves all of its rights with respect to the interpretation of its "net equity."

15. The Trust reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground shall not be construed as a waiver of the Trust's right to object on such ground.

6

**WHEREFORE,** the Trust respectfully requests that this Court (a) overrule the Trustee's determination of the Claim, and allow the Claim in full, in the amount asserted by the Trust and (b) grant the Trust such other and further relief as may be just and proper.

Dated:    January 6, 2010
          New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Michael J. Riela (MR-7829)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone: (212) 906-1200

Counsel for the Calesa Family Trust

7