**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | JAN - 6 2010 |
| Plaintiff-Applicant, | |
| v. | Adversary Proceeding No. 08-01789-BRL |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## OBJECTION

NOW COMES Harvey A. Taylor, Claimant in the above-referenced matter, and objects to the Trustee's denial of his claim under the Securities Investor Protection Act, 15 U.S.C. §78aaa, *et. seq.* (Notice dated December 8, 2009, Claim No. 008096). Claimant deposited $150,000 in cash with Debtor for the purpose of purchasing securities. The Trustee denied the claim because Claimant "did not have an account with the BLMIS" and, therefore, "you are not a customer of the BLMIS under SIPA as that term is defined at 15 U.S.C. §78*lll*(2)." Claimant respectfully objects and submits that the Trustee's determination was erroneous; he is a customer as required by SIPA.

### The Facts

(1)    On October 1, 2008, Claimant purchased a limited partnership interest in Spectrum Select, L.P. ("Spectrum") for $150,000. Spectrum is a limited partnership organized solely for the purpose of enabling Claimant and the other Spectrum limited partners to invest with Debtor. See Exhibit 1, Affidavit of Harvey A. Taylor attached to

1

his Customer Claim ("Taylor Aff.") at ¶(2). It was Claimant's specific intent and understanding that, by purchasing a Spectrum limited partnership interest, his $150,000 cash contribution would be deposited by Spectrum with Debtor to be invested in three Rye Investment Management funds, Rye Select Broad Market Fund LP, Rye Select Broad Market Prime Fund LP, and Rye Select Broad Market XL Funds LP, each of which was managed by Madoff.

(2) On the basis of information and belief, Debtor maintained brokerage accounts in the names of the three Rye funds. See Exhibit 2, Rye Investment Management January 7, 2009 Letter.

(3) Claimant on a regular basis has invested in the securities market. To acquire his limited partnership interest in Spectrum, he had to meet the definition of an "Accredited Investor" within the meaning of the Securities Act of 1933. That qualification was part of the subscription agreement he completed to acquire his limited partnership interest. Exhibit 1, Taylor Aff. at ¶(3).

(4) On October 1, 2008, $150,000 was wired from Claimant's account at Charles Schwab to Spectrum. Exhibit 1, Taylor Aff. at ¶(4). That same day, Spectrum wired $2 million to be invested in the Rye Select Broad Market Fund, LP; $6.4 million to be invested in the Rye Select Broad Market Prime Fund, LP; and $4.8 million to be invested in the Rye Select Broad Market XL Fund, LP. See Exhibit 3, Spectrum Select, L.P. Customer Claim, dated March 2, 2009.

(5) In October 2008, Rye Investment Management confirmed receipt of the Spectrum funds. See Exhibit 4, Rye Investment Management Trade Confirmations.

**Argument**

(6) As a public investor in the capital markets, Claimant is precisely whom Congress sought to protect when it enacted SIPA. The House Report stated: "The primary purpose of the reported bill is to provide protection for investors in the event broker-dealers with whom they are doing business encounter financial troubles." H. Rep. No. 91-1613, 91st Congress, Second Session (1970). As the Second Circuit stated in *Securities Investor Protection Corporation v. Morgan-Kennedy & Co., Inc.*, 533 F.2d 1314, 1317 (2nd Cir. 1976), *cert. denied* 426 U.S. 936 (1976): "Throughout the [House] report 'investors' is used synonymously with 'customers' indicating that, in the eyes of Congress, the Act would protect capital markets by instilling confidence in securities traders." *Accord, In re New Times Securities Service, Inc.*, 318 B.R. 753, 759 (Bankr. E.D.N.Y. 2005)("The emphasis throughout [the legislative history] was on the customer as investor and trader ....").

(7) Under SIPA, a claimant need not have an account with the debtor. "Customer" is defined to include "any person who has deposited cash with the debtor for the purposes of purchasing securities." 15 U.S.C. §78*lll*(2). That an account with the debtor is not a requirement for customer status is confirmed by 15 U.S.C. §78*fff*-2(b). In relevant part, section 2(b) requires the trustee to "discharge...all obligations of the debtor to a customer...insofar as such obligations are ascertainable from the books and records of the debtor *or are otherwise established to the satisfaction of the Trustee*" (emphasis added). *See In re MV Securities, Inc.*, 48 B.R. 156, 159 (Bankr. S.D.N.Y. 1985)("The Trustee discharges customer obligations of the debtor from the debtor's books and records insofar as the debtor's obligations are ascertainable from them *or from such other*

3

*evidence as otherwise establishes the claim to the satisfaction of the trustee*" (emphasis added). In fact, this Court's December 15, 2008 order stated at page 5: "ORDERED, that the Trustee be, and hereby is, authorized to satisfy, within the limits provided by SIPA, those portions of any customer claims and accounts which ... are otherwise established to the satisfaction of the Trustee pursuant to 15 U.S.C. §78fff-2(b)."

(8)  There is a reason why Congress did not limit customer status to only those investors or whom a debtor maintained an account: such limitation would mean the debtor could deprive an investor of the protection afforded by SIPA simply by not establishing an account in the investor's name or by setting up an account that was inaccurate. *See In re MV Securities, Inc.*, 48 B.R. at 159, n.5 (observing that SIPA was enacted at a time of "severe back office problems in the securities industry," and "that Congress did not intend to base SIPC coverage solely on what the debtor's books stated").

(9)  Courts have rejected an interpretation of "customer" that would undermine congressional intent. In *In re Brentwood Securities, Inc.*, 925 F.2d 325, 327 (9th Cir. 1991), the court stated that customer "embodies a common-sense concept: An investor is entitled to compensation from SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent ...." This is just what Claimant did. He wired $150,000 to Spectrum for the sole purpose of having Spectrum deposit the cash with three Rye funds to be managed by Madoff.[1] That his deposit was transmitted through

---

[1] Claimant's cash deposit with Debtor also meets the definition of "customer property" under 15 U.S.C. §78*lll*(4): "cash ... at any time received, acquired, or held by or for the account of a debtor ...." *See Securities Investor Protection Corporation*, 229 B.R. 273, 279 (Bankr. S.D.N.Y. 1999)("Flowing from these definitions [of "customer" and "customer property"], it is well established that SIPA protects customers of registered broker-dealers who have entrusted to those broker-dealers cash or securities in the ordinary course of business for the purpose of trading and investing").

4

Spectrum is no different than if Claimant had asked a family member or agent to hand deliver the deposit to Debtor.

(10) The common-sense concept of "customer" has been applied by courts in a common-sense way. The Tenth Circuit in *In re Primeline Securities Corporation*, 295 F.3d 1100, 1107 (10th Cir. 2002), reversed the trustee's denial of customer status to claimants who "'reasonably thought Ameen [their broker] was acting as an agent of Primeline when he directed them to make out their checks to one of his third-party companies.'" The court stated: "Whether a claimant deposited funds 'with the debtor' does not depend simply on *to whom claimants made their checks payable ... The relevant inquiry is whether the brokerage firm actually received, acquired or possessed Claimants' property*" (emphasis added). The court cited *In re Old Naples*, 223 F.3d 1296 (11th Cir. 2000), where the Eleventh Circuit took the same common-sense view of the meaning of customer: "Whether a claimant 'deposited cash with a debtor,' however, does not ... depend simply on *to whom the claimant handed his cash or made his check payable, or even where the funds initially [were] deposited.* Instead the question is whether there was '*actual receipt*, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.'" *Id.* at 1302 (emphasis added). Here, there can be no dispute that Debtor received Claimant's $150,000. See paragraphs (4) and (5) hereof. Claimant's cash claim has the "two elements" the court discussed in *In re Omni Mutual, Inc.*, 193 B.R. 678, 681 (S.D.N.Y. 1996): "(1) the cash must be on deposit with a broker-dealer; and (2) it must have been paid for the purpose of purchasing securities." Claimant is a "customer" of Debtor within the meaning of SIPA.

5

(11) Recognizing Claimant as a customer of Debtor would not extend SIPA coverage to those Congress did not intend to protect. Given the specific reason why Claimant purchased a Spectrum limited partnership interest, he cannot be likened to those who invest in "feeder" funds or participate in retirement plans. Those investors and plan participants do not make the decision to have their cash contributions managed by a specific broker-dealer, as Claimant did by having $150,000 deposited with Debtor to invest in three Rye funds managed by Madoff. Claimant in no way can be likened to the "trust beneficiaries" claimants in *Morgan-Kennedy*; rather he is an "investor and purchaser/trader" of securities. *Morgan-Kennedy*, 553 F.2d. at 1317 ("Emphasis on the customer as investor and purchaser/trader has been a consistent theme in cases in this Circuit").

(12) Here, recognizing Claimant's status as a "customer" of Debtor and approving his claim squarely fits with Congress' goal of fostering confidence in today's recovering but still uncertain capital markets. *See Securities and Exchange Commission v. F. O. Baroff Company, Inc.*, 497 F.2d 280, 283 (2nd Cir. 1974) ("there was considerable concern [by Congress] that investors, particularly smaller ones would lose confidence in the stability of broker-dealers, and withdraw from the securities market").

### Relief Requested

A. As set forth in the Court's December 14, 2008 order at page 7, Claimant requests the Trustee to obtain a date and time for a hearing before the Court and to notify Claimant of the date, time and place of hearing;

B.  Upon hearing his objection, Claimant requests the Court to vacate the Trustee's denial, rule that Claimant is a customer of Debtor and is entitled to recover $150,000; and

C.  Grant Claimant such other relief as may be just and necessary.

Respectfully Submitted,

HARVEY A. TAYLOR

By his Attorneys,

ORR & RENO, P.A.

Date: January 5, 2010    By: /s/ William L. Chapman
William L. Chapman (NH Bar No. 397)
One Eagle Square
P.O. Box 3550
Concord, NH 03302-3550
(603) 224-2381
wchapman@orr-reno.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Objection has been sent this day, by overnight mail, to Irving H. Picard, Trustee.

Date: January 5, 2010    /s/ William L. Chapman
William L. Chapman

623226_1.DOC

7