# EXHIBIT C

# R**M**F
## RUSKIN MOSCOU FALTISCHEK P.C.
*Counselors at Law*

Writer's Direct Dial:  (516) 663-6528
Writer's Direct Fax:  (516) 663-6728
Writer's E-Mail:  mmulholland@rmfpc.com

February 27, 2009

**USPS EXPRESS MAIL OVERNIGHT**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

Re:    Bernard L. Madoff Investment Securities, LLC ("Madoff")
       Account No.: 1-C1260-3-0 Customer Claim Form Package

Dear Mr. Picard:

On behalf of Madoff customer The 2001 Frederick DeMatteis Revocable Trust, investor in Foredestine Series Fund LLC- Broad Market Prime Series which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in Rye Select Broad Market Prime Fund, LP, enclosed please find the Customer Claim Form Package in connection with the liquidation of Bernard L. Madoff Investment Securities, LLC.

The following documents are included in this package:

- Customer Claim Form signed in counterparts by Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin as Independent Trustees of The 2001 Frederick DeMatteis Revocable Trust.
- Exhibit A: Containing the 10/31/08 Foredestine Statement.
- Exhibit B: Containing The 2001 Frederick DeMatteis Revocable Trust Agreement.

# R M F

## RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

*February 27, 2009*
*Page 2 of 2*

      Please contact me to discuss any questions or additional information needed with respect to the enclosed Customer Claim Form Package.

Very truly yours,

MARK S. MULHOLLAND
For the Firm

MSM:ds
Enclosures
cc:    Customer The 2001 Frederick DeMatteis Revocable Trust (with enclosures)

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

in Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: __The 2001 Frederick DeMatteis Revocable Trust__
Mailing Address: __c/o THe DeMatteis Trusts, 1230 RXR Plaza, 12th Floor, West Tower
City: __Uniondale__   State: __New York__   Zip: __11556-1230*__
Account No.: __1-C1260-3-0__
Taxpayer I.D. Number (Social Security No.): __13-7295400__
*Attn: Donald M. Schaeffer

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1. Claim for money balances as of **December 11, 2008**:

   a.   The Broker owes me a Credit (Cr.) Balance of          $_____

   b.   I owe the Broker a Debit (Dr.) Balance of              $_____

   c.   If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.                                  $_____

   d.   If balance is zero, insert "None."                     _____

2.     Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  | YES | NO |
|---|---|---|
|  | YES |  |
| a.  The Broker owes me securities | $4,742,166.39* |  |
| b.  I owe the Broker securities | _____ | X |

c.     If yes to either, please list below:

*This amount represents the value of the securities held on 10/31/08
by the customer's investment in the Foredestine Series Fund LLC-
Broad Market Prime Series which is invested in Bernard L. Madoff
Investment Securities LLC, Account No.: 1-C1260-3-0, through its
exclusive investment in Rye Select Broad Market Prime Fund, LP.
(Exhibit A)

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| Please see attached Exhibit A. | | | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please see attached Exhibit A.

**Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.**

## PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.

502180406                                    2

**NOTE:**  **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

| | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Mark S. Mulholland, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556-1425

502180406

3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.
Date  2/26/09 _____   Signature _____
                                        Donald M. Schaeffer*

Date _____   Signature _____
                                        Stanley Sirote*

Date _____   Signature _____
                                        Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*As Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust.

S02180406                         4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____   Signature _____
                                           Donald M. Schaeffer*

Date  2/25/09   Signature _____
                                           Stanley Sirote*

Date _____   Signature _____
                                           Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*As Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust.

502180406

4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____    Signature _____
                                            Donald M. Schaeffer*

Date _____    Signature _____
                                            Stanley Sirote*

Date 25 FEB 2009    Signature _____
                                            Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*As Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust.

502180406                    4

# EXHIBIT A

Broad Market Prime Series

Statement of Changes in Member's Capital (Net Asset Value)

October 1, 2008 through October 31, 2008

(Prepared from Books without Audit)



### Investor Account Statement

2001 Frederick DeMatteis Revocable Trust
The DeMatteis Trusts
1230 Reckson Plaza
12th Floor, West Tower
Uniondale, NY 11556

| Member | Current Period | | Year to Date 2008 | |
|---|---|---|---|---|
| Beginning Net Asset Value | $ | 4,746,943.39 | $ | 0.00 |
| Additions | $ | 0.00 | $ | 4,640,318.20 |
| Net Income (Loss) | $ | (4,776.99) | $ | 101,848.19 |
| Withdrawals | $ | 0.00 | $ | 0.00 |
| Ending Net Asset Value | $ | 4,742,166.39 | $ | 4,742,166.39 |

| | |
|---|---|
| Period Time Weighted Return | (0.10%) |
| Year to Date Time Weighted Return | 2.19% |

# EXHIBIT B

## THE 2001 FREDERICK DeMATTEIS REVOCABLE TRUST

AMENDED AND RESTATED AGREEMENT OF TRUST (the "Agreement")
dated the 13TH day of July, 2001, between FREDERICK DeMATTEIS, as
Settlor (the "Settlor"), and FREDERICK DeMATTEIS, NANCY DeMATTEIS,
DONALD M. SCHAEFFER, STANLEY SIROTE and RONALD L. GALLATIN, as
Trustees (the "Trustees").

## W I T N E S S E T H:

A.   The Settlor and the Trustees heretofore entered
into an Agreement of Trust dated July 12, 2001, (the "Prior
Agreement") establishing a revocable trust (the "Trust") for the
benefit of the Settlor during his life and thereafter for the
benefit of his wife, NANCY DeMATTEIS, the Settlor's lawful issue
and other beneficiaries as therein specified.

B.   Pursuant to the preamble to the Prior Agreement,
the Prior Agreement was effective upon the date that FREDERICK
DeMATTEIS signed the Prior Agreement as Settlor and as a Trustee,
such date being the 12th day of July, 2001.

C.   Pursuant to the provisions of Paragraph "A.2" of
Article "EIGHTEENTH" of the Prior Agreement, the Settlor reserved
the right to amend or modify the Trust, in whole or in part.

D.   The Settlor desires to amend and restate the provisions of the Prior Agreement in its entirety as hereinafter provided.

E.   The Trustees are willing to continue to act as Trustees upon the terms and conditions hereinafter set forth.

<u>FIRST</u>

The Trustees shall retain the property in their hands, together with any additional property added to the Trust, IN TRUST, during the life of the Settlor or until the earlier termination of the Trust, for the following purposes:

A.   To pay the income to the Settlor at least quarter-annually.

B.   To pay such sums from or any part or all of the principal of the Trust as the Trustees, in their discretion, from time to time determine to, for, or on behalf of the Settlor for any reason whatsoever.

C.   To pay to the Settlor or others such sums from, or any part, or all of the principal of the Trust as the Settlor may from time to time direct in writing.

D.   1.   Any provision hereof to the contrary notwithstanding, in the event that the Settlor is determined to be incompetent or otherwise unable to act rationally or prudently in his own best interests, as determined pursuant to Article "FIFTEENTH" hereof, the Settlor shall cease to act as a Trustee during such period of incompetency and the provisions of

Paragraphs "A", "B" and "C" of this Article "FIRST" shall be

inoperative during any period of the Settlor's incompetency as so

determined and the remaining Trustees then acting (a) may, at any

time and/or from time to time, pay over or apply so much of the

net income and/or principal of the Trust to or for the use and

benefit of the Settlor, as the Trustees, in their sole and

absolute discretion, without regard to any and all other property,

funds or resources (income or principal) which may be available to

or for the use and benefit of the Settlor, may deem necessary or

proper, and (b) may, at any time and/or from time to time, pay

over or apply so much of the net income and/or principal of the

Trust to or for the use and benefit of the Settlor's wife, NANCY

~~DeMATTEIS, as the Trustees (other than the Settlor's wife),~~ in

such Trustees' sole and absolute discretion, without regard to any

and all other property, funds or resources (income and principal)

which may be available to or for the use and benefit of the

Settlor's wife, may deem advisable.

      2.   At all times during the term of this Trust

when the Settlor shall be acting as a Trustee, all decisions and

actions of any kind regarding or on behalf of the Trust hereunder

(including, without limitation, any ministerial, discretionary or

substantive actions and/or decisions), shall be accomplished

solely by the Settlor as such Trustee, and, without limitation to

the provisions of Paragraph "D.2" of Article "TWELFTH" hereof, it

is hereby provided that the Settlor's co-Trustees shall have no

authority or obligation to take any action hereunder or to review the actions of the Settlor as Trustee, nor shall the Settlor's co-Trustees incur any liability hereunder for any actions taken by the Settlor as such Trustee. Thus, for example, all bank account, securities account and all other transactions, including the collection of income, making of investments and the selling or exchanging of any of the property, or interests therein, comprising the Trust, shall be accomplished at all such times solely upon the signature or other action of the Settlor as such Trustee.

<u>SECOND</u>

Upon the death of the Settlor, the following provisions shall apply:

A.   The Settlor directs that the following amounts be paid from the Trust to the following organizations, provided that (i) in each case such organization is a "qualified charitable organization" at the date of the Settlor's death, which term for purposes of this Agreement means any organization contributions to which are deductible for Federal Estate Tax purposes, and (ii) each such disposition shall be subject to any further conditions stated below with regard thereto. If any such organization is not a qualified charitable organization at the date of the Settlor's death, the disposition to such organization shall lapse.

1.   (a)   Subject to Paragraph "A.1(b)" of this Article, Thirty-Five Million ($35,000,000) Dollars to THE

FREDERICK DeMATTEIS FAMILY FOUNDATION (or any successor thereto),

for its general purposes.

(b)   Notwithstanding the provisions of

Paragraph "A.1" of this Article, if there shall be in existence at

the date of the Settlor's death an exclusively charitable inter

vivos trust (expressly excluding any charitable remainder trust)

that is then a qualified charitable organization and that shall

have been created by the Settlor after July 4, 2001 (such

charitable trust, if any, as amended through the operative date of

such reference, being hereafter in this Agreement referred to as

"THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST";

provided, however, that if there shall be more than one of such

trusts in existence at the date of the Settlor's death, THE

FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST for purposes

of this Agreement shall be deemed to be such one of such trusts as

shall be governed by an instrument dated later than the other(s)

that does not contain any express direction that it shall not be

considered THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE

TRUST for purposes hereof) then the disposition of Thirty-Five

Million ($35,000,000) Dollars in Paragraph "A.1(a)" of this

Article to THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any

successor thereto) shall lapse and, in lieu thereof, the Settlor

directs that Thirty-Five Million ($35,000,000) Dollars be paid to

THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST.

2.   Two Million Five Hundred Thousand

($2,500,000) Dollars to ST. VINCENT'S SERVICES, INC., Brooklyn,

New York, reduced by the amount of any contribution(s) (including,

without limitation, any portion thereof actuarially attributable

to non-charitable interests) made by the Settlor after July 4,

2001, to any charitable remainder trust(s) as defined in § 664(d)

of the Internal Revenue Code of 1986, as amended from time to time

(hereinafter the "Code"), that the Settlor has created and in

which he has specifically named ST. VINCENT'S SERVICES, INC. as

either a mandatory or potential charitable beneficiary; provided,

however, that as a condition to such disposition, ST. VINCENT'S

SERVICES, INC. shall be required (a) to memorialize such

disposition in the Settlor's name in such manner and (b) to commit

to use such disposition and its proceeds in such manner

(consistent with the status of ST. VINCENT'S SERVICES, INC. as a

qualified charitable organization) as the Trustees and ST.

VINCENT'S SERVICES, INC. shall agree and if ST. VINCENT'S

SERVICES, INC. and the Trustees are unable to reach an agreement

in such regard within one year following the date of the Settlor's

death, such amount shall instead be paid over and distributed by

the Trustees to such organization as the Trustees shall select and

which shall be a qualified charitable organization at the date of

the Settlor's death and at the date of such distribution.

3.   Two Million ($2,000,000) Dollars to

WHEELCHAIR CLASSICS CHARITIES INC., Jackson Heights, New York,

reduced by the amount of any contribution(s) (including, without

limitation, any portion thereof actuarially attributable to non-

charitable interests) made by the Settlor after July 4, 2001, to

any charitable remainder trust(s) as defined in § 664(d) of the

Code, that the Settlor has created and in which he has

specifically named WHEELCHAIR CLASSICS CHARITIES INC. as either a

mandatory or potential charitable beneficiary, such disposition to

be used for its general purposes; provided, however, that as a

condition to such disposition, WHEELCHAIR CLASSICS CHARITIES INC.

shall be required to commit to use such disposition and its

proceeds in such manner (consistent with the status of WHEELCHAIR

CLASSICS CHARITIES INC. as a qualified charitable organization) as

the Trustees and WHEELCHAIR CLASSICS CHARITIES INC. shall agree

and if WHEELCHAIR CLASSICS CHARITIES INC. and the Trustees are

unable to reach an agreement in either such regard within one year

following the date of the Settlor's death, such amount shall

instead be paid over and distributed by the Trustees to such

organization as the Trustees shall select and which shall be a

qualified charitable organization at the date of the Settlor's

death and at the date of such distribution.

B.   The Settlor directs that the following amounts be

paid from the Trust to the individuals listed in this Paragraph

"B" of this Article who shall survive the Settlor:

1.   The sum of Five Hundred Thousand ($500,000)

Dollars in equal shares to the Settlor's sister and her husband,

DOLLY MARCONI and SAL MARCONI, if they survive the Settlor, or all
to the survivor of them if only one of them shall survive the
Settlor.

2. The sum of Five Hundred Thousand ($500,000)
Dollars in equal shares to the Settlor's brother and his wife,
ALFONSO DeMATTEIS and MARGARET DeMATTEIS, if they survive the
Settlor, or all to the survivor of them if only one of them shall
survive the Settlor.

C. If (i) the Settlor's wife, NANCY DEMATTEIS, shall
not survive the Settlor, and (ii) any of the Settlor's lawful
issue shall survive the Settlor, all right, title and interest in
and to the real property located in Quogue, New York, including,
without limitation, the real property in Quogue located at 34 Dune
Road (but also including, without limitation, any related,
adjacent or nearby real property in Quogue), and including the
building(s) and fixtures thereon and improvements thereto and all
other rights and easements appurtenant thereto (all such property
hereafter in this Agreement being referred to collectively as the
"Quogue Residence"), held in the Trust, together with all casualty
insurance policies insuring all such property against any loss or
liability, but subject to any and all mortgages, realty taxes,
liens and other similar encumbrances existing at the Settlor's
death upon or with respect to all such property, together with the
sum of One Million ($1,000,000) Dollars, shall be retained by the
Trustees, in further trust, nevertheless, to hold, manage, invest

and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to administer such trust as follows:

1. The Trustees shall keep the Quogue Residence in good condition and repair, shall make improvements, shall pay any and all carrying expenses in connection with the same, including, but not limited to, mortgage payments, real property taxes, school taxes, water and sewer charges, homeowners insurance premiums, utilities, heating expenses, water bills, repairs, gardening expenses and all other maintenance charges, and improvement costs from the net income of this Trust, and to the extent that the income shall be insufficient, from the principal of this Trust, and shall keep the Quogue Residence insured against loss, theft or damage, all of the foregoing in this Paragraph "C.1" to be accomplished to the extent and in such manner as the Trustees determine in their sole and absolute discretion.

2. The Trustees may, in their sole and absolute discretion, permit any one or more of the Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other lawful issue from time to time living, as they shall select in their sole and absolute discretion, to use and occupy the Quogue Residence (including allowing guests of such issue to use the Quogue Residence), upon such terms and conditions

as the Trustees shall direct in their sole and absolute discretion.

3.    This Trust shall terminate on the first to occur of (i) the determination by the Trustees to terminate this Trust, which determination may be made by the Trustees, in their sole and absolute discretion for any reason (including, but not limited to, their determination that the income and principal of the Trust is no longer sufficient to pay for the expenses of the Quogue Residence) and if the Trustees so determine to terminate this Trust, the Trustees shall be authorized (but not directed) to sell all or a portion of the Quogue Residence, upon such terms as they shall determine in their sole and absolute discretion, in which case any net proceeds of any such sale shall be disposed of as principal of this Trust as hereinafter provided, (ii) the expiration of twenty-one (21) years after the death of the last surviving of the Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other lawful issue in being at the date of the Settlor's death, or (iii) such time when the Settlor has no lawful issue then living.  Upon such termination pursuant to (i) or (ii), the principal of this Trust, together with any accrued, accumulated or undistributed income thereof, shall be paid over and distributed to such of the Settlor's lawful issue who shall then be surviving, in shares and sub-shares, per stirpes.  Upon such termination pursuant to (iii),

such property shall be disposed of in accordance with the

provisions of Article "EIGHTH" of this Agreement.

D.    If the Settlor's wife, NANCY DEMATTEIS, shall not

survive the Settlor, the following provisions shall apply:

1.    The Settlor gives to such of his daughters,

LINDA LANGER and TRACEY SERKO, who shall survive him, such amount,

if any, of the Trust's interest in Coliseum Towers Associates, a

limited partnership (or any successor or successors thereto)

(hereinafter "Coliseum Towers"), which when added to the

partnership interest already owned by each of the Settlor's said

daughters at the date of the Settlor's death, if any, shall equal

two and one half (2-1/2%) percent of the total partnership

~~interests in Coliseum Towers, it being the Settlor's intention~~

that each of his said daughters shall own two and one half

(2-1/2%) percent of all of such partnership interests. If either

of the Settlor's said daughters shall not survive the Settlor, the

Settlor gives to her lawful issue who shall survive the Settlor,

in shares and sub-shares, per stirpes, such interest in Coliseum

Towers as his said predeceased daughter would have received

hereunder had she survived him, taking into account, however, for

purposes of the calculation of such interest, the percentage of

partnership interest in Coliseum Towers owned by the Settlor's

said predeceased daughter at the time of her death.

2.    If at the date of the Settlor's death the

Trust shall not own any interest in Coliseum Towers, the Settlor

gives to such of his daughters, LINDA LANGER and TRACEY SERKO, who shall survive him, the sum of One Million Five Hundred Thousand ($1,500,000) Dollars each. If either of the Settlor's said daughters shall not survive him, said sum shall be given to her lawful issue who shall survive the Settlor, in shares and sub-shares, per stirpes.

E.   The Settlor (whether or not his said wife shall survive him) gives all of the shares of stock which are owned by the Trust at the time of the Settlor's death in Leon D. DeMatteis Construction Corporation (or any successor thereto) in equal parts to his sons, RICHARD F. DeMATTEIS and SCOTT L. DeMATTEIS, if they shall survive the Settlor, or all to the survivor of them if only one of them shall survive the Settlor.

## THIRD

Upon the death of the Settlor, all the rest of the property comprising the Trust, including any property payable to the Trust on account of the Settlor's death pursuant to his Last Will and Testament or otherwise to the extent not hereinbefore disposed of (hereinafter referred to as the "Trust Balance"), shall be disposed of as follows:

A.   If the Settlor's wife, NANCY DeMATTEIS, survives the Settlor, the Trust Balance shall be divided into two (2) parts and distributed as follows:

1.   One of such parts (hereinafter referred to as the "Non-Marital Part") shall consist of the fractional part of

the Trust Balance, the numerator of which shall be a sum equal to the largest amount, if any, that can pass free of Federal Estate Tax under this Paragraph by reason of the application of the Federal Estate Tax applicable exclusion amount (formerly and sometimes referred to as the "unified credit"), available to the Settlor's estate as provided under the Code in effect at the time of the Settlor's death, but no other Federal Estate Tax credits. The numerator shall be reduced by the value of dispositions under the Settlor's Will and property passing outside of the Settlor's Will and outside of this Agreement included in the Settlor's estate for Federal Estate Tax purposes, but which do not qualify for the Federal Estate Tax marital deduction or charitable deduction. The numerator shall further be reduced by the amount of any adjusted taxable gifts as defined by the Code added to the Settlor's taxable estate for the purpose of computing the Federal Estate Tax in the Settlor's estate. The numerator shall further be reduced by charges to principal if such items are not deducted or not allowed as deductions in computing said Federal Estate Tax, but only to the extent such charges reduce the amount of property disposed of by the Settlor's Last Will and Testament and/or this Agreement that may qualify for the Federal Estate Tax marital deduction or charitable deduction. The denominator of the fraction shall be the value of the Trust Balance. The Settlor recognizes that the numerator of such fraction may be zero, in which case no property shall pass under this Paragraph, and that

said numerator may be affected by the actions of the Settlor's fiduciaries in exercising certain tax elections. It is hereby directed that for the purpose of establishing such fraction, the values used shall be those finally determined for Federal Estate Tax purposes.

2.   The other such part (hereinafter referred to as the "Spouse's Part") shall consist of the remainder of the Trust Balance, if any, or the entire Trust if the Non-Marital Part shall be equal to zero.

3.   The property allocated to the Spouse's Part pursuant to this Article shall consist exclusively of assets which qualify for the Federal Estate Tax marital deduction.

B.   ~~If the Settlor's wife, NANCY DeMATTEIS, shall not~~ survive the Settlor, the Settlor directs that the Trust Balance shall be divided into so many equal shares that there shall be one (1) equal share for each of his children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, who shall survive him and one (1) equal share (to be divided into sub-shares, per stirpes) for the lawful issue (collectively) of each of his said children who shall have not so survived, but who shall have died leaving lawful issue so surviving and the Settlor directs that such shares and sub-shares be given to such persons.

## FOURTH

The Trustees shall retain the Spouse's Part, as computed pursuant to Article "THIRD" hereof, if any, in a further separate trust, to hold, manage, invest and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to pay or apply the entire net income thereof to or for the use and benefit of the Settlor's wife, NANCY DeMATTEIS, during her lifetime, in quarterly installments or such more frequent installments as the Trustees, in their sole and absolute discretion, may determine.

A.    The Trustees may, at any time and/or from time to ~~time during the lifetime of the Settlor's wife, NANCY DeMATTEIS,~~ pay over to the Settlor's wife, or apply for her use and benefit, so much of the principal of the Trust of the Spouse's Part as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds and resources (income or principal) which may be available to or for the Settlor's wife's use and benefit, may deem advisable.

B.    Upon the subsequent death of the Settlor's wife, NANCY DeMATTEIS, the Trustees shall pay over and distribute any accrued or undistributed income of the Trust of the Spouse's Part to the Executors of the Settlor's wife's estate, and the balance, if any, of the then principal of the Trust of the Spouse's Part

shall be disposed of in accordance with the provisions of Article "SIXTH" of this Agreement.

<u>FIFTH</u>

The Trustees shall retain the Non-Marital Part, as computed pursuant to Article "THIRD" hereof, if any, in a further separate trust, to hold, manage, invest and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to pay or apply the entire net income thereof to or for the use and benefit of the Settlor's wife, NANCY DeMATTEIS, during her lifetime, in quarterly installments or such more frequent installments as the Trustees, in their sole and absolute discretion, may determine.

A.   The Trustees may, at any time and/or from time to time during the lifetime of the Settlor's wife, NANCY DeMATTEIS, pay over to the Settlor's wife, or apply for her use and benefit, so much of the principal of the Trust of the Non-Marital Part as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds and resources (income or principal) which may be available to or for the Settlor's wife's use and benefit, may deem advisable.

B.   Upon the death of the Settlor's wife, NANCY DeMATTEIS, the Trustees shall pay over and distribute any accrued

or undistributed income of the Trust of the Non-Marital Part to the Executors of the Settlor's wife's estate, and the balance, if any, of the then principal of the Trust of the Non-Marital Part shall be disposed of in accordance with the provisions of Article "SIXTH" of this Agreement.

<u>SIXTH</u>

A.   Upon the subsequent death of the Settlor's wife, NANCY DeMATTEIS, the balance of the principal of the Trust of the Spouse's Part, if any, and the balance of the principal of the Trust of the Non-Marital Part, if any, (hereinafter sometimes referred to collectively as "Nancy's Trusts"), shall be disposed of as follows:

1.   The Trustees shall pay and distribute to such of the Settlor's daughters, LINDA LANGER and TRACEY SERKO, who shall then be surviving, such amount, if any, of the interest of Nancy's Trusts in Coliseum Towers, which when added to the partnership interest already owned by each of the Settlor's said daughters at the date of the Settlor's wife's death, if any, shall equal two and one-half (2-1/2%) percent of the total partnership interests in Coliseum Towers, it being the Settlor's intention that each of his said daughters shall own two and one half (2-1/2%) percent of all of such partnership interests.  If either of the Settlor's said daughters shall not then be surviving, the Trustees shall distribute to her lawful issue who shall then be surviving, in shares and sub-shares, <u>per stirpes</u>, such interest in

Coliseum Towers as his said predeceased daughter would have received hereunder had she then been surviving, taking into account, however, for purposes of the calculation of such interest, the percentage of partnership interest in Coliseum Towers owned by his said predeceased daughter at the time of her death.

2.   If at the time of the Settlor's wife's death, Nancy's Trusts shall not own any interest in Coliseum Towers, the Trustees shall pay over and distribute to such of the Settlor's daughters, LINDA LANGER and TRACEY SERKO, who shall then be surviving, the sum of One Million Five Hundred Thousand ($1,500,000) Dollars each. If either of the Settlor's said daughters is not then surviving, the Trustees shall pay and distribute said sum to her lawful issue who shall then be surviving, in shares and sub-shares, _per stirpes_.

3.   If either or both of Nancy's Trusts shall own any interest in the Quogue Residence (as defined in Paragraph "C" of Article "SECOND" hereof), and any of the Settlor's lawful issue shall then be surviving, the Trustees shall retain in a separate further trust, nevertheless, (1) the sum of One Million ($1,000,000) Dollars (to be paid from the principal of such one or both of Nancy's Trusts, and if from both, then in such proportions, as the Trustees, in their sole and absolute discretion, shall determine) and (2) any interest of either or both of Nancy's Trusts in and to the Quogue Residence, together

with all of the interest of either or both of Nancy's Trusts in
all casualty insurance policies insuring all such property against
any loss or liability, but subject to any and all mortgages,
realty taxes, liens and other similar encumbrances existing at the
date of the Settlor's wife's death upon or with respect to such
property, and the Trustees shall hold, manage, invest and reinvest
the principal of such separate trust, and collect the rents,
income, interest and dividends therefrom and after deducting any
and all lawful and proper charges, commissions and expenses,
administer such trust as follows:

(a)   The Trustees shall keep the Quogue
Residence in good condition and repair, shall make improvements,
shall pay any and all carrying expenses in connection with the
same, including, but not limited to, mortgage payments, real
property taxes, school taxes, water and sewer charges, homeowners
insurance premiums, utilities, heating expenses, water bills,
repairs, gardening expenses and all other maintenance charges, and
improvement costs from the net income of this Trust, and to the
extent that the income shall be insufficient, from the principal
of this Trust, and shall keep the Quogue Residence insured against
loss, theft or damage, all of the foregoing in this Paragraph
"A.3(a)" to be accomplished to the extent and in such manner as
the Trustees determine in their sole and absolute discretion.

(b)   The Trustees may, in their sole and
absolute discretion, permit any one or more of the Settlor's