# EXHIBIT C

# RMF

## RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

Writer's Direct Dial: (516) 663-6528
Writer's Direct Fax: (516) 663-6728
Writer's E-Mail: mmulholland@rmfpc.com

February 27, 2009

**USPS EXPRESS MAIL OVERNIGHT**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

      Re:    Bernard L. Madoff Investment Securities, LLC ("Madoff")
             Account No.: 1-C1260-3-0 Customer Claim Form Package

Dear Mr. Picard:

      On behalf of Madoff customer DeMatteis FLP Assets, LLC, investor in Foredestine Series Fund LLC- Broad Market Prime Series which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in Rye Select Broad Market Prime Fund, LP, enclosed please find the Customer Claim Form Package in connection with the liquidation of Bernard L. Madoff Investment Securities, LLC.

      The following documents are included in this package:

- Customer Claim Form signed in counterparts by Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin, Independent Trustees of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.
- Exhibit A: Containing the 10/31/08 Foredestine Statement.
- Exhibit B: Containing the Operating Agreement for DeMatteis FLP Assets, LLC and The 2001 Frederick DeMatteis Revocable Trust Agreement.

# R⋁F
RUSKINMOSCOUFALTISCHEK P.C.
*Counselors at Law*

*February 27, 2009*
*Page 2 of 2*

      Please contact me to discuss any questions or additional information needed with respect to the enclosed Customer Claim Form Package.

Very truly yours,

MARK S. MULHOLLAND
For the Firm

MSM:ds
Enclosures
cc:    Customer DeMatteis FLP Assets, LLC (with enclosures)

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

**(Please print or type)**

Name of Customer: DeMatteis FLP Assets, LLC
Mailing Address: c/o The DeMatteis Trusts, 1230 RXR Plaza, 12th Floor, West Tower
City: Uniondale          State: New York          Zip: 11556-1230*
Account No.: 1-C1260-3-0
Taxpayer I.D. Number (Social Security No.): 510471632
*Attn: Donald M. Schaeffer

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of **December 11, 2008**:

    a.   The Broker owes me a Credit (Cr.) Balance of          $_____

    b.   I owe the Broker a Debit (Dr.) Balance of          $_____

    c.   If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC."

       If you wish to make a payment, **it must be enclosed**

       with this claim form.          $_____

    d.   If balance is zero, insert "None."          _____

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| | YES | |
| a.  The Broker owes me securities | $1,185,541.82* | |
| b.  I owe the Broker securities | | X |

c.    If yes to either, please list below:

*This amount represents the value of the securities held on 10/31/08 by the customer's investment in the Foredestine Series Fund LLC-Broad Market Prime Series which is invested in Bernard L. Madoff Investment Securities LLC, Account No.: 1-C1260-3-0, through its exclusive investment in Rye Select Broad Market Prime Fund, LP.
(Exhibit A)

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| Please see attached Exhibit A. | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please see attached Exhibit A.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                    2

**NOTE:  IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Mark S. Mulholland, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556-1425

502180406

3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  2/26/09 _____    Signature _____
                                    Donald M. Schaeffer*

Date _____    Signature _____
                                    Stanley Sirote*

Date _____    Signature _____
                                    Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

502180406

4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____    Signature _____
                                            Donald M. Schaeffer*

Date ___2/ 20 /05___    Signature _____
                                            Stanley Sirote*

Date _____    Signature _____
                                            Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

4

502180406

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date_____ Signature_____
                                          Donald M. Schaeffer*

Date _____ Signature_____
                                          Stanley Simons*

Date __25 FEB 2009_____ Signature_____
                                          Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

502180406

4

# EXHIBIT A

Broad Market Prime Series

Statement of Changes in Member's Capital (Net Asset Value)

October 1, 2008 through October 31, 2008

(Prepared from Books without Audit)



### Investor Account Statement

DeMatteis FLP Assets LLC
The DeMatteis Trusts
1230 Reckson Plaza
12th Floor, West Tower
Uniondale, NY 11556

| Member | | Current<br>Period | | Year to Date<br>2008 |
|---|---|---|---|---|
| Beginning Net Asset Value | $ | 1,186,736.07 | $ | 0.00 |
| Additions | $ | 0.00 | $ | 1,160,079.77 |
| Net Income (Loss) | $ | (1,194.25) | $ | 25,462.05 |
| Withdrawals | $ | 0.00 | $ | 0.00 |
| Ending Net Asset Value | $ | 1,185,541.82 | $ | 1,185,541.82 |

| | |
|---|---|
| Period Time Weighted Return | (0.10%) |
| Year to Date Time Weighted Return | 2.19% |

# EXHIBIT B

LIMITED LIABILITY COMPANY OPERATING AGREEMENT

OF

DEMATTEIS FLP ASSETS, LLC
(A New York limited liability company)

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT is dated June 6, 2003, between DEMATTEIS FLP ASSETS, LLC, a New York limited liability company (the "Company"), and THE FREDERICK DEMATTEIS FAMILY LIMITED PARTNERSHIP, a New York limited partnership (the "Member").

The parties desire to organize the Company and to provide herein for its management and the conduct of its business and affairs and the rights and obligations of the Member (as defined herein) with respect thereto.

It is therefore agreed as follows:

ARTICLE I
FORMATION

Section 1.1  Formation.  The Member hereby organizes the Company under the New York Limited Liability Company Law (the "Act") and upon the execution and delivery hereof by each of the parties hereto, all upon the terms and subject to the conditions set forth in this agreement.

Section 1.2  Name of the Company.  The name of the Company is DeMatteis FLP Assets, LLC (or such other name as the Manager (as defined in section 4.2) may provide in an amendment to the Company's Articles of Organization), and the Company shall conduct its business under such name, or under any assumed, fictitious or other name as directed by the Manager, but only to the extent permitted by law.

Section 1.3  Places of Business.  The principal place of business of the Company shall be located at c/o The DeMatteis Organizations, West Tower, EAB Plaza, Uniondale, New York 11556-0102, or at such other place which the Manager may direct.

Section 1.4  Purposes.  The purposes of the Company are:

(a)    investing in, trading, and purchasing (on margin or otherwise), or otherwise acquiring, holding, pledging, selling (including short sales) and disposing of all types of stocks, shares, bonds, debentures, obligations, notes, evidences of indebtedness, certificates of interest, partnership interests, limited liability company membership interests, units of trust, evidences of ownership, warrants, options, puts or calls, or other interests (collectively "Securities") issued or created by any and all corporations, partnerships, limited liability companies, limited liability partnerships, trusts, funds,

associations, banks, federal, state or local governmental units or other entities and to exercise any and all rights, powers and privileges of ownership or interest relating thereto, including, without limitation, the right to vote thereon and consent and otherwise act with respect thereto;

       (b)     managing or operating (or participating with others in the management or operation of) any entities in which the Company has invested;

       (c)     accomplishing any lawful business whatsoever or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets;

       (d)     engaging in any lawful act or activity for which limited liability companies may be formed under the Act; and

       (e)     engaging in all activities necessary, customary, convenient or incident to any of the foregoing.

ARTICLE II
CAPITALIZATION; DISTRIBUTIONS

Section 2.1   Capital Contributions.   The Member shall make an initial contribution in the amount set forth on Schedule A attached hereto. Such contribution is being made simultaneously with the execution of this agreement and the Company hereby acknowledges receipt thereof. In addition to the initial contribution, the Member may make additional contributions, as determined in the Member's sole discretion.

Section 2.2   Distributions.   The Company shall make such distributions (including interim distributions) as the Manager, in the Manager's sole discretion, shall determine, except that the Company may not make distributions prohibited by the Act.

ARTICLE III
FISCAL MATTERS

Section 3.1   Tax Elections.   The Manager may make any tax elections for the Company allowed under the Internal Revenue Code (the "Code") or the tax laws of any state or other jurisdiction having taxing jurisdiction over the Company.

Section 3.2   Method of Accounting.   The records of the Company shall be maintained on the same method of accounting as that of the Member or on such other basis as the Manager, in the Manager's sole discretion, shall determine.

Section 3.3   Books and Records.   The Manager shall maintain or cause to be maintained at the Company's principal place of business (or at such other place as the

Manager may deem appropriate) complete and accurate books and records of the assets, business and affairs of the Company including, without limitation:

> (a)    true and full information regarding the status of the business and financial condition of the Company;

> (b)    a copy of this agreement and the Articles of Organization of the Company and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which this agreement and any certificate and all amendments thereto have been executed;

> (c)    any financial statements of the Company for the three most recent fiscal years;

> (d)    copies of the Company's federal, foreign, state and local income tax returns and reports (or the portions of the returns of others showing the taxable income deductions, gain, loss and credits of the Company), if any, for the three most recent years; and

> (e)    other information regarding the affairs of the Company as in the judgment of the Manager is just and reasonable.

## ARTICLE IV
## ADMINISTRATION

Section 4.1    Management of the Company.

> (a)    The Manager shall have the exclusive right, power and authority to manage the assets, properties, business and affairs of the Company, with all rights and powers and the full authority necessary, desirable or convenient to administer and operate the same for Company purposes, to incur, perform, satisfy and compromise all manner of obligations on behalf of the Company, and to make all decisions and do all things necessary or desirable in connection therewith.

> (b)    Without limiting the generality of section 4.1(a) above, or any other term or provision of this agreement and except as otherwise prohibited or limited by the provisions of this agreement or applicable law, the Manager shall have the exclusive right, power and authority to, directly or indirectly, take or omit to take whatever action for Company purposes that the Manager may, in the Manager's sole discretion, deem necessary or desirable to carry out the Company's purposes, including but not limited to the right, power and authority:

> > (i)    to purchase or otherwise acquire any Securities;

> > (ii)    to purchase, lease or otherwise acquire any real or personal property;

(iii)    to sell, convey, mortgage, grant a security interest in, pledge, lease, exchange or otherwise dispose or encumber any Securities or any real or personal property;

(iv)    to vote, give consents, proxies or otherwise take action with respect to Securities;

(v)    to open one or more depository accounts and make deposits into, and sign checks and make withdrawals against, such accounts;

(vi)    to borrow money, incur liabilities and other obligations either on a secured or unsecured basis;

(vii)    to commence, prosecute or defend any proceeding in the Company's name;

(viii)    to participate with others in partnerships, joint ventures and other associations and strategic alliances;

(ix)    to deposit, withdraw, invest, pay, retain and distribute the Company's funds in any manner not inconsistent with the provisions of this Agreement;

(x)    to bring, defend and settlement actions at law or at equity;

(xi)    to enter into and carry out contracts and agreements and any or all documents and instruments and do and perform all such other things as may be necessary in furtherance of the Company's purposes or furtherance of the Company's purposes or appropriate to the conduct of the Company's activities;

(xii)    to employ on behalf of the Company such persons, firms or corporations as the Manager, in the Manager's sole and absolute discretion, deems advisable for the operation and management of the business of the Company on such terms and for such compensation, as the Manager shall determine;

(xiii)    to cause the lease, mortgage or pledge of the assets or business of the Company;

(xiv)    to cause the Company to convert, by sale, merger, reorganization, consolidation or otherwise, to any other type of business entity;

(xv)    to execute and file the Articles of Organization and any other certificate or other instrument which may be required to be filed by the Company to transact business under the laws of the State of New

York, or any other foreign, federal or state government where the Company may transact business or any amendments thereto; and

    (xvi)   to execute, acknowledge and deliver any and all instruments, and take any and all actions, which may be deemed necessary or desirable to effect any of the foregoing or any of the other provisions of this Agreement.

    (c)   The Manager shall (1) perform its services in such capacity diligently and faithfully for the benefit of the Company, (2) perform such services in accordance with all applicable policies and practices of the Company, and (3) devote such portion of his business time and attention to the business and affairs of the Company as he deems necessary to carry out its duties hereunder.

Section 4.2 _The Manager_. The Manager shall serve until such time as the Manager resigns, is incapacitated or dies, or is removed. In the event of any temporary incapacity or other unavailability of the Manager, the Manager may appoint a substitute Manager for the duration of such incapacity or unavailability. The Manager may resign at any time by giving at least 30 days prior written notice of such resignation to the Member. Any such resignation shall take effect on the date specified in such notice. The initial Manager shall be The 2001 Frederick DeMatteis Revocable Trust under Agreement dated July 18, 2001 (the "Trust"), and, by executing this agreement where indicated below, the Trust agrees and consents to be the initial Manager of the Company hereunder. For purposes of this agreement, it is noted, acknowledged and agreed to by each of the Company and the Member that: (i) the currently acting Trustees of the Trust are Nancy DeMatteis, Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin (Mr. Schaeffer, Mr. Sirote and Mr. Gallatin being referred to in this agreement and in the Trust collectively as the "Independent Trustees"), and (ii) pursuant to applicable law and the relevant provisions of the said Trust Agreement all decisions and actions by the Trust are authorized to be made by a majority of the four (4) Trustees or, in default thereof, by a majority of the three (3) Independent Trustees. Accordingly, any decision or action by the Trust in its capacity as Manager of the Company for all purposes under this agreement, including, without limitation, such decisions and actions by the Trust in its capacity as Manager of the Company with respect to investment transactions and the delivery or receipt of funds by wire transfer, check or otherwise, are authorized to be made by either a majority of the four (4) Trustees or a majority of the three (3) Independent Trustees, as the case may be.

Section 4.3 _Interested Member_.

    (a)   The Member shall be entitled to enter into transactions that may be considered to be competitive with, or a business opportunity that may be beneficial to, the Company, it being expressly understood that the Member may enter into transactions that are similar to the transactions into which the Company may enter.

(b)    The Member does not violate a duty or obligation to the Company merely because its conduct furthers its own interest. The Member may lend money to and transact other business with the Company. The rights and obligations of the Member when it lends money to or transacts business with the Company are the same as those of anyone who is not a Member, subject to other applicable law. No transaction with the Company shall be voidable solely because the Member has a direct or indirect interest in the transaction.

Section 4.4    <u>Limitation of Liability</u>.   Neither the Member nor the Manager shall be liable to the Company, or the other, for any loss, damage, liability or expense ("Liability") suffered or incurred by any person on account of, or by reason of any claim based on or arising from, any action taken or omitted to be taken in the course of representing or performing services for the Company or otherwise in its capacity as the Member or Manager, as the case may be, including, without limitation, its appointment or retention of, or reliance upon, any employee or agent of the Company, notwithstanding any negligence, fraud or willful misconduct by such employee or agent, except to the extent that a judgment or other final adjudication adverse to it establishes that its acts or omissions (a) were in violation of any provision of this agreement or the Act, (b) were in bad faith, (c) involved intentional misconduct or a knowing violation of law, or (d) resulted in personal gain or financial profit or other advantage to which it was not legally entitled.

Section 4.5    <u>Indemnification</u>.

(a)    The Company shall indemnify the Member and the Manager, and their respective legal representatives, successors and assigns, and hold each of them harmless from and against any Liability suffered or incurred by the Company or the Manager (or the Member, as the case may be) while acting for or on behalf of the Company to the fullest extent permitted by applicable law. The Company may procure insurance in such amounts and covering such risks as the Manager deems appropriate to fund any indemnification required or permitted to be made hereunder. The indemnification required or permitted to be made hereunder shall include, without limitation, indemnification for attorneys' fees and other costs and expenses to the fullest extent permitted by applicable law.

(b)    Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern:

ARTICLE V
<u>TRANSFERS</u>

Section 5.1    <u>Disposition</u>.   The Member's interest in the Company is transferable by the Member, in whole or in part.

Section 5.2   <u>Admission of Additional Members</u>.   The Member may cause the Company to admit additional members.

### ARTICLE VI
### DISSOLUTION AND LIQUIDATION

Section 6.1   <u>Dissolution</u>.   Subject to the provisions of applicable law, the Company shall be dissolved upon the consent of the Manager.

Section 6.2   <u>Disability of a Manager or Member</u>.

(a)   The death, retirement, insanity, withdrawal, bankruptcy, dissolution, insolvency or termination and liquidation of a Manager (a "Disabled Manager"), shall not cause a dissolution of the Company.   The successor Manager upon the Manager becoming a Disabled Manager such be such person as the Member shall appoint.

(b)   In the event of the death, retirement, insanity, withdrawal, bankruptcy, dissolution, insolvency or termination or liquidation of a Member or the making by a Member of an assignment for the benefit of creditors (such Member thereafter being referred to as the "Disabled Member"), the Company shall not be dissolved but shall continue in existence.   If a Member shall become a Disabled Member, the executor, administrator, guardian or other legal representative or successor in interest of such Member shall succeed in such representative capacity to all of the rights and liabilities of such Member under this Agreement.

Section 6.3   <u>Liquidation</u>.

(a)   Upon a dissolution of the Company, the Manager shall distribute the Company's assets, or the proceeds from the liquidation thereof, in cash or in kind, in the following order:

(i)   to the payment of all liabilities and obligations of the Company, including expenses of the liquidation and obligations and liabilities to the Member (other than on liabilities for distributions under applicable law); and

(ii)   to the Member, in cash, in-kind or both, as determined by the Manager.

(b)   The Manager shall be allowed a reasonable time for the orderly liquidation of the Company's assets and properties and the discharge of indebtedness and other liabilities to creditors, so as to preserve and, upon disposition, maximize the value of the Company's assets and properties.

Section 6.4    Winding Up and Certificate of Cancellation.    The winding up of the Company shall be completed when all debts, liabilities, and obligations of the Company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining property and assets of the Company have been distributed to the Member.    Upon the completion of winding up of the Company, a Certificate of Cancellation shall be delivered to the Secretary of State of New York for filing.    The Certificate of Cancellation shall set forth the information required by the Act.

ARTICLE VII
MISCELLANEOUS

Section 7.1    Limitation of Authority.    No provision hereof shall be deemed to create any partnership, joint venture or joint enterprise or association between the parties hereto, or to authorize or to empower either party hereto to act on behalf of, obligate or bind the other party hereto.

Section 7.2    Notices.    Any notice, demand, request or other communication which is required, called for or contemplated to be given or made hereunder to or upon any party hereto shall be deemed to have been duly given or made for all purposes if (a) in writing and sent by (i) messenger or an overnight courier service for next day delivery with receipt therefor, or (ii) certified or registered mail, postage paid, return receipt requested, or (b) sent by telegram, facsimile transmission, telex or similar electronic means, with a written copy thereof sent on the same day by postage paid first-class mail, to such party at the following address:

To the Member at:

c/o The DeMatteis Organizations
West Tower
EAB Plaza
Uniondale, New York 11556-0102


To the Company or Manager at:

c/o The DeMatteis Organizations
West Tower
EAB Plaza
Uniondale, New York 11556-0102

or such other address as either party hereto may at any time, or from time to time, direct by notice given to the other party in accordance with this section.    The date of giving or making of any such notice or demand shall be, in the case of clause (a)(i), the date of the receipt; in the case of clause (a)(ii), five business days after such notice or demand is

sent; and, in the case of clause (b), the business day next following the date such notice or demand is sent.

Section 7.3   Amendment.  Except as otherwise provided herein, no amendment of this Agreement shall be valid or effective unless in writing and signed by or on behalf of the Manager and each Member.

Section 7.4   Governing Law.   This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in New York.

Section 7.5   Severability.   The provisions hereof are severable and if any provision of this agreement shall be determined to be legally invalid, inoperative or unenforceable in any respect by a court of competent jurisdiction, then the remaining provisions hereof shall not be affected, but shall, subject to the discretion of such court, remain in full force and effect, and any such invalid, inoperative or unenforceable provision shall be deemed, without any further action on the part of the parties hereto, amended and limited to the extent necessary to render such provision valid, operative and enforceable.

Section 7.6   Assignment.   Except as otherwise provided elsewhere herein, this Agreement, and each right, interest and obligation hereunder, may not be assigned by any party hereto without the prior written consent of the other party hereto.  Any purported assignment without such consent shall be void and without effect.

Section 7.7   Binding Effect.  This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors and permitted assigns.

Section 7.8   No Third Party Beneficiaries.  Nothing contained in this agreement, whether express or implied, is intended, or shall be deemed, to create or confer any right, interest or remedy for the benefit of any Person other than the parties hereto and their successors in interest and their actual permitted assignees.

Section 7.9   Entire Agreement.  This agreement (including any schedules and exhibits hereto), together with the certificates specifically referred to herein or required to be delivered pursuant to the terms hereof, contains, and is intended as, a complete statement of all of the terms of the agreements between the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, commitments, understandings, discussions, negotiations or arrangements of any nature relating thereto.

Section 7.10   Headings.  The headings contained in this agreement are included for convenience and reference purposes only and shall be given no effect in the construction or interpretation of this Agreement.

Section 7.11 <u>Counterparts; Facsimile Signatures</u>.    This agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This agreement may be executed by facsimile signature of a party, which shall have the same binding force and effect on such party as an original signature.

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:    THE 2001 FREDERICK DEMATTEIS
      REVOCABLE TRUST UNDER AGREEMENT
      DATED JULY 18, 2001, Manager

By: *Nancy DeMatteis*
    Name:   Nancy DeMatteis
    Title:    Co-Trustee

By:_____
    Name:   Donald M. Schaeffer
    Title:    Co-Trustee

By:_____
    Name:   Stanley Sirote
    Title:    Co-Trustee

By:_____
    Name:   Ronald L. Gallatin
    Title:    Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By: FDF ASSOCIATES LLC, general partner

By:_____
    Name: Robert Vaccarello
    Title:  Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:    THE 2001 FREDERICK DEMATTEIS
   REVOCABLE TRUST UNDER AGREEMENT
   DATED JULY 18, 2001, Manager

   By:_____
     Name:    Nancy DeMatteis
     Title:    Co-Trustee

   By:_____
     Name:    Donald M. Schaeffer
     Title:    Co-Trustee

   By:_____
     Name:    Stanley Sirote
     Title:    Co-Trustee

   By:_____
     Name:    Ronald L. Gallatin
     Title:    Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By: FDF ASSOCIATES LLC, general partner

   By:_____
     Name: Robert Vaccarello
     Title:  Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:   THE 2001 FREDERICK DEMATTEIS
       REVOCABLE TRUST UNDER AGREEMENT
       DATED JULY 18, 2001, Manager

By:_____
    Name:   Nancy DeMatteis
    Title:    Co-Trustee

By:_____
    Name:   Donald M. Schaeffer
    Title:    Co-Trustee

By:_____
    Name:   Stanley Sirote
    Title:    Co-Trustee

By:_____
    Name:   Ronald L. Gallatin
    Title:    Co-Trustee


SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership


By:  FDF ASSOCIATES LLC, general partner


By:_____
    Name: Robert Vaccarello
    Title:  Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:    THE 2001 FREDERICK DEMATTEIS
       REVOCABLE TRUST UNDER AGREEMENT
       DATED JULY 18, 2001, Manager

By:_____
       Name:    Nancy DeMatteis
       Title:    Co-Trustee

By:_____
       Name:    Donald M. Schaeffer
       Title:    Co-Trustee

By:_____
       Name:    Stanley Sirote
       Title:    Co-Trustee

By:_____
       Name:    Ronald L. Gallatin
       Title:    Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By:  FDF ASSOCIATES LLC, general partner

By:_____
       Name: Robert Vaccarello
       Title:  Manager

## THE 2001 FREDERICK DeMATTEIS REVOCABLE TRUST

AMENDED AND RESTATED AGREEMENT OF TRUST (the "Agreement") dated the 13TH day of July, 2001, between FREDERICK DeMATTEIS, as Settlor (the "Settlor"), and FREDERICK DeMATTEIS, NANCY DeMATTEIS, DONALD M. SCHAEFFER, STANLEY SIROTE and RONALD L. GALLATIN, as Trustees (the "Trustees").

### W I T N E S S E T H:

A.    The Settlor and the Trustees heretofore entered into an Agreement of Trust dated July 12, 2001, (the "Prior Agreement") establishing a revocable trust (the "Trust") for the benefit of the Settlor during his life and thereafter for the benefit of his wife, NANCY DeMATTEIS, the Settlor's lawful issue and other beneficiaries as therein specified.

B.    Pursuant to the preamble to the Prior Agreement, the Prior Agreement was effective upon the date that FREDERICK DeMATTEIS signed the Prior Agreement as Settlor and as a Trustee, such date being the 12th day of July, 2001.

C.    Pursuant to the provisions of Paragraph "A.2" of Article "EIGHTEENTH" of the Prior Agreement, the Settlor reserved the right to amend or modify the Trust, in whole or in part.

D.   The Settlor desires to amend and restate the provisions of the Prior Agreement in its entirety as hereinafter provided.

E.   The Trustees are willing to continue to act as Trustees upon the terms and conditions hereinafter set forth.

<u>FIRST</u>

The Trustees shall retain the property in their hands, together with any additional property added to the Trust, IN TRUST, during the life of the Settlor or until the earlier termination of the Trust, for the following purposes:

A.   To pay the income to the Settlor at least quarter-annually.

B.   To pay such sums from or any part or all of the principal of the Trust as the Trustees, in their discretion, from time to time determine to, for, or on behalf of the Settlor for any reason whatsoever.

C.   To pay to the Settlor or others such sums from, or any part, or all of the principal of the Trust as the Settlor may from time to time direct in writing.

D.   1.   Any provision hereof to the contrary notwithstanding, in the event that the Settlor is determined to be incompetent or otherwise unable to act rationally or prudently his own best interests, as determined pursuant to Article "FIFTEENTH" hereof, the Settlor shall cease to act as a Trustee during such period of incompetency and the provisions of

Paragraphs "A", "B" and "C" of this Article "FIRST" shall be inoperative during any period of the Settlor's incompetency as so determined and the remaining Trustees then acting (a) may, at any time and/or from time to time, pay over or apply so much of the net income and/or principal of the Trust to or for the use and benefit of the Settlor, as the Trustees, in their sole and absolute discretion, without regard to any and all other property, funds or resources (income or principal) which may be available to or for the use and benefit of the Settlor, may deem necessary or proper, and (b) may, at any time and/or from time to time, pay over or apply so much of the net income and/or principal of the Trust to or for the use and benefit of the Settlor's wife, NANCY DeMATTEIS, as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds or resources (income and principal) which may be available to or for the use and benefit of the Settlor's wife, may deem advisable.

2.   At all times during the term of this Trust when the Settlor shall be acting as a Trustee, all decisions and actions of any kind regarding or on behalf of the Trust hereunder (including, without limitation, any ministerial, discretionary or substantive actions and/or decisions), shall be accomplished solely by the Settlor as such Trustee, and, without limitation to the provisions of Paragraph "D.2" of Article "TWELFTH" hereof, it is hereby provided that the Settlor's co-Trustees shall have no

authority or obligation to take any action hereunder or to review the actions of the Settlor as Trustee, nor shall the Settlor's co-Trustees incur any liability hereunder for any actions taken by the Settlor as such Trustee. Thus, for example, all bank account, securities account and all other transactions, including the collection of income, making of investments and the selling or exchanging of any of the property, or interests therein, comprising the Trust, shall be accomplished at all such times solely upon the signature or other action of the Settlor as such Trustee.

## SECOND

Upon the death of the Settlor, the following provisions shall apply:

A.   The Settlor directs that the following amounts be paid from the Trust to the following organizations, provided that (i) in each case such organization is a "qualified charitable organization" at the date of the Settlor's death, which term for purposes of this Agreement means any organization contributions to which are deductible for Federal Estate Tax purposes, and (ii) each such disposition shall be subject to any further conditions stated below with regard thereto. If any such organization is not a qualified charitable organization at the date of the Settlor's death, the disposition to such organization shall lapse.

1.   (a)   Subject to Paragraph "A.1(b)" of this Article, Thirty-Five Million ($35,000,000) Dollars to THE

FREDERICK DeMATTEIS FAMILY FOUNDATION (or any successor thereto),

for its general purposes.

(b)   Notwithstanding the provisions of

Paragraph "A.1" of this Article, if there shall be in existence at

the date of the Settlor's death an exclusively charitable inter

vivos trust (expressly excluding any charitable remainder trust)

that is then a qualified charitable organization and that shall

have been created by the Settlor after July 4, 2001 (such

charitable trust, if any, as amended through the operative date of

such reference, being hereafter in this Agreement referred to as

"THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST";

provided, however, that if there shall be more than one of such

trusts in existence at the date of the Settlor's death, THE

FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST for purposes

of this Agreement shall be deemed to be such one of such trusts as

shall be governed by an instrument dated later than the other(s)

that does not contain any express direction that it shall not be

considered THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE

TRUST for purposes hereof) then the disposition of Thirty-Five

Million ($35,000,000) Dollars in Paragraph "A.1(a)" of this

Article to THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any

successor thereto) shall lapse and, in lieu thereof, the Settlor

directs that Thirty-Five Million ($35,000,000) Dollars be paid to

THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST.

2.   Two Million Five Hundred Thousand

($2,500,000) Dollars to ST. VINCENT'S SERVICES, INC., Brooklyn,

New York, reduced by the amount of any contribution(s) (including,

without limitation, any portion thereof actuarially attributable

to non-charitable interests) made by the Settlor after July 4,

2001, to any charitable remainder trust(s) as defined in § 664(d)

of the Internal Revenue Code of 1986, as amended from time to time

(hereinafter the "Code"), that the Settlor has created and in

which he has specifically named ST. VINCENT'S SERVICES, INC. as

either a mandatory or potential charitable beneficiary; provided,

however, that as a condition to such disposition, ST. VINCENT'S

SERVICES, INC. shall be required (a) to memorialize such

disposition in the Settlor's name in such manner and (b) to commit

to use such disposition and its proceeds in such manner

(consistent with the status of ST. VINCENT'S SERVICES, INC. as a

qualified charitable organization) as the Trustees and ST.

VINCENT'S SERVICES, INC. shall agree and if ST. VINCENT'S

SERVICES, INC. and the Trustees are unable to reach an agreement

in such regard within one year following the date of the Settlor's

death, such amount shall instead be paid over and distributed by

the Trustees to such organization as the Trustees shall select and

which shall be a qualified charitable organization at the date of

the Settlor's death and at the date of such distribution.

3.   Two Million ($2,000,000) Dollars to

WHEELCHAIR CLASSICS CHARITIES INC., Jackson Heights, New York,

reduced by the amount of any contribution(s) (including, without limitation, any portion thereof actuarially attributable to non-charitable interests) made by the Settlor after July 4, 2001, to any charitable remainder trust(s) as defined in § 664(d) of the Code, that the Settlor has created and in which he has specifically named WHEELCHAIR CLASSICS CHARITIES INC. as either a mandatory or potential charitable beneficiary, such disposition to be used for its general purposes; provided, however, that as a condition to such disposition, WHEELCHAIR CLASSICS CHARITIES INC. shall be required to commit to use such disposition and its proceeds in such manner (consistent with the status of WHEELCHAIR CLASSICS CHARITIES INC. as a qualified charitable organization) as the Trustees and WHEELCHAIR CLASSICS CHARITIES INC. shall agree and if WHEELCHAIR CLASSICS CHARITIES INC. and the Trustees are unable to reach an agreement in either such regard within one year following the date of the Settlor's death, such amount shall instead be paid over and distributed by the Trustees to such organization as the Trustees shall select and which shall be a qualified charitable organization at the date of the Settlor's death and at the date of such distribution.

B.   The Settlor directs that the following amounts be paid from the Trust to the individuals listed in this Paragraph "B" of this Article who shall survive the Settlor:

1.   The sum of Five Hundred Thousand ($500,000) Dollars in equal shares to the Settlor's sister and her husband,

DOLLY MARCONI and SAL MARCONI, if they survive the Settlor, or all to the survivor of them if only one of them shall survive the Settlor.

2.   The sum of Five Hundred Thousand ($500,000) Dollars in equal shares to the Settlor's brother and his wife, ALFONSO DeMATTEIS and MARGARET DeMATTEIS, if they survive the Settlor, or all to the survivor of them if only one of them shall survive the Settlor.

C.   If (i) the Settlor's wife, NANCY DEMATTEIS, shall not survive the Settlor, and (ii) any of the Settlor's lawful issue shall survive the Settlor, all right, title and interest in and to the real property located in Quogue, New York, including, without limitation, the real property in Quogue located at 34 Dune Road (but also including, without limitation, any related, adjacent or nearby real property in Quogue), and including the building(s) and fixtures thereon and improvements thereto and all other rights and easements appurtenant thereto (all such property hereafter in this Agreement being referred to collectively as the "Quogue Residence"), held in the Trust, together with all casualty insurance policies insuring all such property against any loss or liability, but subject to any and all mortgages, realty taxes, liens and other similar encumbrances existing at the Settlor's death upon or with respect to all such property, together with the sum of One Million ($1,000,000) Dollars, shall be retained by the Trustees, in further trust, nevertheless, to hold, manage, invest

8

and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to administer such trust as follows:

1. The Trustees shall keep the Quogue Residence in good condition and repair, shall make improvements, shall pay any and all carrying expenses in connection with the same, including, but not limited to, mortgage payments, real property taxes, school taxes, water and sewer charges, homeowners insurance premiums, utilities, heating expenses, water bills, repairs, gardening expenses and all other maintenance charges, and improvement costs from the net income of this Trust, and to the extent that the income shall be insufficient, from the principal of this Trust, and shall keep the Quogue Residence insured against loss, theft or damage, all of the foregoing in this Paragraph "C.1" to be accomplished to the extent and in such manner as the Trustees determine in their sole and absolute discretion.

2. The Trustees may, in their sole and absolute discretion, permit any one or more of the Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other lawful issue from time to time living, as they shall select in their sole and absolute discretion, to use and occupy the Quogue Residence (including allowing guests of such issue to use the Quogue Residence), upon such terms and conditions

as the Trustees shall direct in their sole and absolute

discretion.

3.    This Trust shall terminate on the first to

occur of (i) the determination by the Trustees to terminate this

Trust, which determination may be made by the Trustees, in their

sole and absolute discretion for any reason (including, but not

limited to, their determination that the income and principal of

the Trust is no longer sufficient to pay for the expenses of the

Quogue Residence) and if the Trustees so determine to terminate

this Trust, the Trustees shall be authorized (but not directed) to

sell all or a portion of the Quogue Residence, upon such terms as

they shall determine in their sole and absolute discretion, in

which case any net proceeds of any such sale shall be disposed of

as principal of this Trust as hereinafter provided, (ii) the

expiration of twenty-one (21) years after the death of the last

surviving of the Settlor's children, LINDA LANGER, RICHARD F.

DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other

lawful issue in being at the date of the Settlor's death, or (iii)

such time when the Settlor has no lawful issue then living.  Upon

such termination pursuant to (i) or (ii), the principal of this

Trust, together with any accrued, accumulated or undistributed

income thereof, shall be paid over and distributed to such of the

Settlor's lawful issue who shall then be surviving, in shares and

sub-shares, per stirpes.  Upon such termination pursuant to (iii),

such property shall be disposed of in accordance with the provisions of Article "EIGHTH" of this Agreement.

D.    If the Settlor's wife, NANCY DEMATTEIS, shall not survive the Settlor, the following provisions shall apply:

1.    The Settlor gives to such of his daughters, LINDA LANGER and TRACEY SERKO, who shall survive him, such amount, if any, of the Trust's interest in Coliseum Towers Associates, a limited partnership (or any successor or successors thereto) (hereinafter "Coliseum Towers"), which when added to the partnership interest already owned by each of the Settlor's said daughters at the date of the Settlor's death, if any, shall equal two and one half (2-1/2%) percent of the total partnership interests in Coliseum Towers, it being the Settlor's intention that each of his said daughters shall own two and one half (2-1/2%) percent of all of such partnership interests. If either of the Settlor's said daughters shall not survive the Settlor, the Settlor gives to her lawful issue who shall survive the Settlor, in shares and sub-shares, per stirpes, such interest in Coliseum Towers as his said predeceased daughter would have received hereunder had she survived him, taking into account, however, for purposes of the calculation of such interest, the percentage of partnership interest in Coliseum Towers owned by the Settlor's said predeceased daughter at the time of her death.

2.    If at the date of the Settlor's death the Trust shall not own any interest in Coliseum Towers, the Settlor

gives to such of his daughters, LINDA LANGER and TRACEY SERKO, who shall survive him, the sum of One Million Five Hundred Thousand ($1,500,000) Dollars each.  If either of the Settlor's said daughters shall not survive him, said sum shall be given to her lawful issue who shall survive the Settlor, in shares and sub-shares, per stirpes.

E.   The Settlor (whether or not his said wife shall survive him) gives all of the shares of stock which are owned by the Trust at the time of the Settlor's death in Leon D. DeMatteis Construction Corporation (or any successor thereto) in equal parts to his sons, RICHARD F. DeMATTEIS and SCOTT L. DeMATTEIS, if they shall survive the Settlor, or all to the survivor of them if only one of them shall survive the Settlor.

## THIRD

Upon the death of the Settlor, all the rest of the property comprising the Trust, including any property payable to the Trust on account of the Settlor's death pursuant to his Last Will and Testament or otherwise to the extent not hereinbefore disposed of (hereinafter referred to as the "Trust Balance"), shall be disposed of as follows:

A.   If the Settlor's wife, NANCY DeMATTEIS, survives the Settlor, the Trust Balance shall be divided into two (2) parts and distributed as follows:

1.   One of such parts (hereinafter referred to as the "Non-Marital Part") shall consist of the fractional part of

the Trust Balance, the numerator of which shall be a sum equal to the largest amount, if any, that can pass free of Federal Estate Tax under this Paragraph by reason of the application of the Federal Estate Tax applicable exclusion amount (formerly and sometimes referred to as the "unified credit"), available to the Settlor's estate as provided under the Code in effect at the time of the Settlor's death, but no other Federal Estate Tax credits. The numerator shall be reduced by the value of dispositions under the Settlor's Will and property passing outside of the Settlor's Will and outside of this Agreement included in the Settlor's estate for Federal Estate Tax purposes, but which do not qualify for the Federal Estate Tax marital deduction or charitable deduction. The numerator shall further be reduced by the amount of any adjusted taxable gifts as defined by the Code added to the Settlor's taxable estate for the purpose of computing the Federal Estate Tax in the Settlor's estate. The numerator shall further be reduced by charges to principal if such items are not deducted or not allowed as deductions in computing said Federal Estate Tax, but only to the extent such charges reduce the amount of property disposed of by the Settlor's Last Will and Testament and/or this Agreement that may qualify for the Federal Estate Tax marital deduction or charitable deduction. The denominator of the fraction shall be the value of the Trust Balance. The Settlor recognizes that the numerator of such fraction may be zero, in which case no property shall pass under this Paragraph, and that

said numerator may be affected by the actions of the Settlor's fiduciaries in exercising certain tax elections. It is hereby directed that for the purpose of establishing such fraction, the values used shall be those finally determined for Federal Estate Tax purposes.

2.    The other such part (hereinafter referred to as the "Spouse's Part") shall consist of the remainder of the Trust Balance, if any, or the entire Trust if the Non-Marital Part shall be equal to zero.

3.    The property allocated to the Spouse's Part pursuant to this Article shall consist exclusively of assets which qualify for the Federal Estate Tax marital deduction.

B.    If the Settlor's wife, NANCY DeMATTEIS, shall not survive the Settlor, the Settlor directs that the Trust Balance shall be divided into so many equal shares that there shall be one (1) equal share for each of his children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, who shall survive him and one (1) equal share (to be divided into sub-shares, per stirpes) for the lawful issue (collectively) of each of his said children who shall have not so survived, but who shall have died leaving lawful issue so surviving and the Settlor directs that such shares and sub-shares be given to such persons.