# EXHIBIT D

# R F

## RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

Writer's Direct Dial: (516) 663-6528
Writer's Direct Fax: (516) 663-6728
Writer's E-Mail: mmulholland@rmfpc.com

June 11, 2009

**USPS EXPRESS MAIL OVERNIGHT**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

      Re:    Bernard L. Madoff Investment Securities, LLC ("Madoff")
            Account No.: 1-C1260-3-0 Customer Claim Form Package Supplement
            for DeMatteis FLP Assets, LLC

Dear Mr. Picard:

      On behalf of Madoff customer, DeMatteis FLP Assets, LLC, investor in Foredestine Series Fund LLC- Broad Market Prime Series which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in Rye Select Broad Market Prime Fund, LP, please accept this letter and the enclosed exhibits as a supplemental submission to the DeMatteis FLP Assets, LLC's Customer Claim Form Package, which was submitted on February 27, 2009 under cover of the enclosed transmittal letter (Exhibit A).

      According to our client's records, the DeMatteis FLP Assets, LLC originally deposited $1,000,000.00 dollars in the Rye Select Broad Market Prime Fund, LP and these funds remained invested with Rye Select Broad Market Prime Fund, LP until the liquidation of Madoff (Exhibit B).



R**M**F

RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

*Page 2 of 2*

          Please contact me to discuss any questions or additional information needed with respect
to the enclosed Customer Claim Form Package Supplement.

                                                Very truly yours,

                                                MARK S. MULHOLLAND
                                                For the Firm

MSM:drs
Enclosures
cc:     Customer DeMatteis FLP Assets, LLC (with enclosures)

Donald M. Schaeffer, as Independent Trustee                    Date: 6/16/09
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Stanley Sirote, as Independent Trustee                         Date: _____
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Ronald L. Gallatin, as Independent Trustee                     Date: _____
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

# R M F

## RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

*Page 2 of 2*

        Please contact me to discuss any questions or additional information needed with respect to the enclosed Customer Claim Form Package Supplement.

                                            Very truly yours,

                                            MARK S. MULHOLLAND
                                            For the Firm

MSM:drs
Enclosures
cc:    Customer DeMatteis FLP Assets, LLC (with enclosures)

---

Donald M. Schaeffer, as Independent Trustee
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Date: _____

Stanley Sirote, as Independent Trustee
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Date: 6/16/09

Ronald L. Gallatin, as Independent Trustee
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Date: _____

**RMF**

RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

*Page 2 of 2*

Please contact me to discuss any questions or additional information needed with respect to the enclosed Customer Claim Form Package Supplement.

Very truly yours,

MARK S. MULHOLLAND
For the Firm

MSM:drs
Enclosures
cc:     Customer DeMatteis FLP Assets, LLC (with enclosures)

---

Donald M. Schaeffer, as Independent Trustee          Date: _____
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Stanley Sirote, as Independent Trustee          Date: _____
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

Ronald L. Gallatin, as Independent Trustee          Date: 6/17/09
of The 2001 Frederick DeMatteis Revocable Trust,
Manager of DeMatteis FLP Assets, LLC

# EXHIBIT A

# R M F
## RUSKINMOSCOUFALTISCHEK P.C.
*Counselors at Law*

Writer's Direct Dial:  (516) 663-6528
Writer's Direct Fax:  (516) 663-6728
Writer's E-Mail: mmulholland@rmfpc.com

February 27, 2009

<u>USPS EXPRESS MAIL OVERNIGHT</u>
<u>RETURN RECEIPT REQUESTED</u>

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

    Re:    Bernard L. Madoff Investment Securities, LLC ("Madoff")
           <u>Account No.: 1-C1260-3-0 Customer Claim Form Package</u>

Dear Mr. Picard:

        On behalf of Madoff customer DeMatteis FLP Assets, LLC, investor in Foredestine Series Fund LLC- Broad Market Prime Series which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in Rye Select Broad Market Prime Fund, LP, enclosed please find the Customer Claim Form Package in connection with the liquidation of Bernard L. Madoff Investment Securities, LLC.

    The following documents are included in this package:

- Customer Claim Form signed in counterparts by Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin, Independent Trustees of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.
- <u>Exhibit A:</u> Containing the 10/31/08 Foredestine Statement.
- <u>Exhibit B:</u> Containing the Operating Agreement for DeMatteis FLP Assets, LLC and The 2001 Frederick DeMatteis Revocable Trust Agreement.

# EXHIBIT B



# R Y E
Investment Management

A Division of Tremont Group Holdings, Inc.

# Rye Select Broad Market Prime Fund, L.P.

## Subscription Documents

# RYE SELECT BROAD MARKET PRIME FUND, L.P.

## INVESTMENT PROCEDURES

Prospective investors (each an "Investor") should complete the following steps prior to the intended date of subscription:

(1)     Complete the attached Subscription Agreement and send the completed original Subscription Agreement to Tremont Partners, Inc. (the "General Partner") at the address below, to arrive as soon as possible and in any event at least three (3) days prior to the anticipated date of admission, so that the General Partner may determine whether the prospective Investor is eligible to subscribe for limited partnership interests ("Interests"). Please retain a copy for your records.

U.S. tax-exempt investors must complete Exhibit A if the Investor is an Employee Benefit Plan or a Keogh Plan or Exhibit B if the Investor is an Individual Retirement Plan.

Please send the completed Subscription Agreement, Limited Partner Signature Pages, applicable Exhibits, and the appropriate Tax Certification and direct all questions to:

> Rye Select Broad Market Prime Fund, L.P.
> c/o Tremont Partners, Inc.
> 555 Theodore Fremd Avenue
> Rye, New York 10580
> Attn: Harry Hodges
> Telephone:  (914) 925-1179
> Facsimile:  (914) 925-4090

(2)     Please send the intended subscription amount (the "Subscription Amount") to the General Partner, at least one (1) Business Day prior to the applicable subscription date, using the attached Payment Information sheet. If the subscription is not accepted for any reason the Subscription Amount will be returned to the prospective Investor.

(3)     The Investor acknowledges that the General Partner reserves the right to request such information as is necessary to verify the Investor's identity. In the event of delay or failure by the Investor to produce any information requested in this Subscription Document or required for verification purposes, the General Partner may refuse to accept the Subscription.

(4)     The General Partner will notify the prospective Investor as to whether it is eligible to subscribe for Interests and will provide notification as to the net available subscription date (the "Offering Date"). Upon acceptance of the subscription, a copy of the executed Subscription Agreement, signed as accepted on behalf of the Partnership, will be returned to the Investor.

(5)     By subscribing, each prospective Investor which is an entity represents that its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) permits it to make investments in securities such as the Interests, that all appropriate action has been taken by the prospective Investor to authorize the investment, and that the person(s) executing the Subscription Agreement has the authority to do so. Copies of such documents must be provided, upon request, to the General Partner.

(6)     If the prospective Investor is not a qualified Investor or if the prospective Investor does not wish to subscribe for an Interest, please return all of the enclosed documents to the above address. Except as authorized by the General Partner, the enclosed documents may not be reproduced, duplicated or delivered to any other person.

# RYE SELECT BROAD MARKET PRIME FUND, L.P.
## PAYMENT INFORMATION

**PAYMENT BY WIRE**

### *(If wiring funds, please give a copy of this page to your bank)*

Payments in full for the amount subscribed are to be made in U.S. dollars by bank telegraphic transfer as follows:

Your bank should wire transfer only U.S. dollars via Fedwire to:

|  |  |
|---|---|
| To: | Citibank NA |
|  | 111 Wall Street |
|  | New York, NY 10043 |
|  | ABA #021-000-089 |
| For Credit To: | Rye Select Broad Market Prime Fund, L.P. |
| Account No: | 30604569 |

Please also have your bank send the following message (facsimile number ([insert]) to the General Partner:

"Rye Select Broad Market Prime Fund, L.P. – We have credited your account for _____ *(insert amount)* by order of _____ *(insert name of investor)* on _____ *(insert date)*."

### IMPORTANT:

1)    Please have your bank identify on the wire transfer the name of the intended investor.

2)    We recommend that your bank charge its wiring fees separately so that an even amount may be invested.

**PAYMENT BY CHECK**

If payment is in check form, it must be in U.S. dollars made payable to "Rye Select Broad Market Prime Fund, L.P." and mailed to the following address:

Rye Select Broad Market Prime Fund, L.P.,
c/o Tremont Partners, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Attention: Harry Hodges

RYE SELECT BROAD MARKET PRIME FUND, L.P.
SUBSCRIPTION AGREEMENT

Amount of Subscription: $ _1, 000, 000_

Rye Select Broad Market Prime Fund, L.P.
c/o Tremont Partners, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Attention: Harry Hodges

Re:    Rye Select Broad Market Prime Fund, L.P. (the "Partnership")
       Issuance of Limited Partnership Interests ("Interests")

**Investor Information** (*please print or type*):

Name of Investor:

DeMatteis FLP Assets LLC

Nationality of Investor (if natural person)/
Jurisdiction of organization (if entity):

Social Security or taxpayer identification number:

510471632

Date of birth (if natural person):

**Investor Type** (*please check one*):

\_\_ Individual
\_\_ Joint Tenants
\_\_ Tenants in Common
\_\_ Partnership
\_\_ Corporation
✓ Limited Liability Company
\_\_ Trust
\_\_ Foundation
\_\_ Endowment
\_\_ Employee Benefit Plan
(complete Exhibit A attached hereto)
\_\_ Keogh Plan
(complete Exhibit A attached hereto)
\_\_ Individual Retirement Plan
(complete Exhibit B attached hereto)
Other: (specify):

Name of person exercising investment discretion for investor
(trustee or fiduciary, etc.): Any two of the "Independent Trustees," Donald M. Schaeffer, Stanley Sirote
and Ronald L. Gallatin or any three of Nancy DeMatteis, Donald M. Schaeffer,
Stanley Sirote and Ronald L. Gallatin.

**Subscription Information** (*please print or type*):

Amount of Subscription: U.S.$_____

**FOR NATURAL PERSONS:**

[790969-1]                                      S-5

**Education**

| College or University | Degree and Year | Major Concentration |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | | |

**Employment**

Name of Current Employer: _____

Address of Current Employer: _____

_____

_____

_____

Employer's Telephone Number: _____

Employer's Facsimile Number: _____

Name of Spouse's Current Employer: _____

Marital Status: _____

Number of Dependents: _____

Describe briefly all positions (including directorships) held during the past five years which were related to financial, business, accounting, economics, taxation or investment matters and which you feel demonstrate your investment sophistication. Where appropriate, briefly describe the business of the company or other entity in which the position was held (attach separate sheet as necessary):

_____

_____

_____

_____

_____

**FOR U.S. TAX-EXEMPT INVESTORS ONLY:**

If applicable, please indicate the basis on which the Investor is exempt from U.S. federal income taxation and please attach to this Subscription Agreement, when submitted to the General Partner, applicable written evidence of the tax-exempt status for purposes of U.S. federal income taxation of the intended investor:

_____

_____

_____

_____

**FOR INVESTMENT COMPANIES ONLY:**

Is the Investor an investment company, or a company that is excluded from the definition of investment company solely by reason of the provisions of either Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act of 1940, as amended (the "Company Act")?

Yes ___  No ___

If the answer to the question above is yes, please indicate which: _____

If the answer to the question above is yes, please state the number of the Investor's beneficial owners:

_____

**COMMUNICATIONS:**

Residence or Principal Place of Business Address:

The 2001 Frederick DeMatteis Revocable Trust

c/o The DeMatteis Trusts
_____          DMS @ schaeffersam.com
Name                                                                 E-Mail Address:

1230 Reckson Plaza

12th Floor — West Tower
_____
Street

Uniondale, NY 11556-1230
_____
City, State, Zip Code

Attn: Donald M. Schaeffer, Trustee

(516) 832-9100
_____
Telephone No.

(___)_____
Facsimile No.

[790969-1]                                    S-7

Mailing Address (*if different from above*)

_____

_____

_____

_____

Please send confirmation of a subscription for an interest, a copy of this Subscription Agreement and any other communications (including distribution, if any, and withdrawal proceeds checks) to *(initial one)*:

✓    _____    residence or principal business address above;
*(Initial)*

     _____    mailing address above.
*(Initial)*

Special instructions regarding communication:

_____ Please "cc" all emails to Ronald L. Gallatin _____

_____ RonGallatin@aol.com _____

_____

**AUTHORIZATION OF AGENT(S):**

Set forth below are the names of persons authorized by the Investor to give and receive instructions between the Partnership and the Investor, together with their respective signatures. Such persons are the only persons so authorized until further notice to the Partnership signed by one or more of such persons. ✱

*(Please attach additional pages if needed)*

Name                                      Signature

Nancy DeMatteis, Trustee          _____

Donald M. Schaeffer, Trustee      _____

Stanley Sirote, Trustee           _____

Ronald L. Gallatin, Trustee       _____

✱ The Investor, an LLC, acts by its Manager, The 2001 Frederick DeMatteis Revocable Trust. Such Manager can act by (i) a majority of the four Trustees, or (ii) by any two of the "Independent Trustees." The four Trustees are Nancy DeMatteis, Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin. Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin are the "Independent Trustees."

**WIRING INSTRUCTIONS:**

Until further written notice to the Partnership signed by one or more of the persons listed above, funds may be wired to the Investor using the following instructions:

Bank name: _____

Bank address: _____

ABA or CHIPS number: _____

Account name: _____

Account number: _____

For further credit: _____

Ladies and Gentlemen:

The offer and sale of limited partnership interests (the "Interests") in Rye Select Broad Market Prime Fund, L.P., a Delaware limited partnership (the "Partnership"), to each Investor has not been registered under the Securities Act of 1933, as amended (the "Securities Act") or the securities laws of any jurisdiction, but rather is being made privately by the Partnership pursuant to the private placement exemption from registration provided in Section 4(2) of the Securities Act and Rule 506 of Regulation D ("Regulation D") promulgated thereunder by the United States Securities and Exchange Commission (the "SEC") on the basis of the Amended and Restated Confidential Private Placement Memorandum of the Partnership, as the same may be updated, amended or modified from time to time (the "Memorandum").

The information requested in this Subscription Agreement is needed in order to ensure compliance with the applicable regulations and to determine whether (1) an investment in the Partnership by the Investor is suitable in light of the Investor's financial position, (2) the Investor meets certain minimum net worth tests to be deemed an "accredited investor" as defined in Regulation D and a "qualified purchaser" as defined in the Investment Company Act of 1940, as amended (the "Company Act"), and (3) has such knowledge and experience in financial and business matters that is capable of evaluating the merits and risks of the investment.

The Investor also understands and agrees that, although the Partnership will use its best efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties as it deems advisable if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership, the General Partner and their affiliates, if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Partnership, the General Partner or any of their affiliates is a party or by which it is or may be bound or if such information is otherwise required by the agents or employees of the General Partner or any of their affiliates in rendering services to the Partnership.

The Investor hereby agrees as follows:

I.    SUBSCRIPTION FOR AN INTEREST

The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and in connection therewith subscribes for and agrees to purchase an Interest in and to make a capital contribution ("Capital Contribution") to the Partnership on the terms provided for herein and in the Memorandum and in the limited partnership agreement of the Partnership (the "Partnership Agreement"). The minimum initial investment is U.S.$500,000, subject to the General Partner's discretion to reduce such amount. The Investor agrees to, and understands, the terms and conditions upon which the Interests are being offered, including, without limitation, the risk factors referred to in the Memorandum.

The Investor understands and agrees that the Partnership reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part and at any time prior to acceptance thereof. In the event of rejection of this subscription, this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Partnership, the Investor shall be a Limited Partner. The Investor hereby agrees that by its execution of this Subscription Agreement and upon acceptance hereof by the Partnership, it shall become a party to the Partnership Agreement. The Investor shall sign and date the Limited Partner Signature Pages attached to the Partnership Agreement and promptly return them to the General Partner.

## II.    ELIGIBILITY REPRESENTATIONS OF THE INVESTOR

(A)    **General:**
*Initial one and complete blanks*

The Investor hereby warrants and represents that:

✓ _____
*(Initial)*

(1)    If the Investor is an employee benefit plan, an endowment, a foundation, a corporation, partnership, trust or other legal entity, it is:

- organized under the laws of:    New York

- has its principal place of business in:    New York

OR

_____
*(Initial)*

(2)    If the Investor is an individual or if beneficial ownership of the Investor is held by an individual (for example, an Individual Retirement Account or Keogh Plan), such individual is of legal age and is a:

- citizen of:    _____
- resident of:    _____
- approximate net worth of the Investor    _____

(B)    Accredited Investor Status:

*Initial all appropriate spaces on the following pages indicating the basis upon which the Investor qualifies as an accredited investor under Regulation D.*

*For Individual Investors Only*

_____
*(Initial)*

(1)    The Investor hereby certifies that he/she is an accredited investor because he/she has an individual net worth, or with his/her spouse has a joint net worth, in excess of $1,000,000. *For purposes of this questionnaire, "net worth" means the excess of total assets at fair market value, including home, home furnishings and automobiles, over total liabilities.*

_____
*(Initial)*

(2)    The Investor hereby certifies that he/she is an accredited investor because he/she has individual income (exclusive of any income attributable to his/her spouse) of more than $200,000 in each of the past two years, or joint income with his/her spouse in excess of $300,000 in each of those years, and such investor reasonably expects to reach the same income level in the current year.

_____
*(Initial)*

(3)    The Investor hereby certifies that he/she is an accredited investor because he/she is a director, executive officer or general partner of the Partnership, or any director, executive officer or general partner of a general partner of the Partnership.

*For Corporations, Foundations, Endowments, Partnerships, Limited Liability Companies, Limited Partnerships or Limited Liability Partnerships*

✓ _____
(Initial)

(4)    The Investor hereby certifies that it is an accredited investor because it has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the securities offered.

_____
(Initial)

(5)    The Investor hereby certifies that it is an accredited investor because all of its equity owners are accredited investors. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

*For Employee Benefit Plans (Please complete Exhibit A attached hereto)*

_____
(Initial)

(6)    The Investor hereby certifies that it is an accredited investor because it is an employee benefit plan within the meaning of the United States Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the decision to invest in the Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is:

_____

_____
(Initial)

(7)    The Investor hereby certifies that it is an accredited investor because it is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000

_____
(Initial)

(8)    The Investor hereby certifies that it is an accredited investor because it is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

*For Individual Retirement Accounts (Please complete Exhibit B attached hereto), Self-Directed Benefit Plans and Keogh Plans (Please complete Exhibit A attached hereto)*

_____
(Initial)

(9)    The Investor hereby certifies that it is an accredited investor because it is a self-directed plan (i.e., a tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) in which all persons directing the investment in the Partnership are accredited investors because each participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years. *The General Partner, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

Total number of participants of the plan directing an investment in the Partnership: _____

*For Not-for-Profit Entities (Including Endowments, Private Foundations and Charities)*

_____
(Initial)

(10)    The Investor hereby certifies that it is an accredited investor because it is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, was not formed for the specific purpose of acquiring the securities offered,

[?90969-1]

S-12

and has total assets in excess of $5,000,000.

*For Trusts*

| | |
|---|---|
| _____<br>*(Initial)* | (11) |

The Investor hereby certifies that it is an accredited investor because it has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered, and its purchase is directed by a sophisticated person. *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment.*

_____
*(Initial)*

(12)  The Investor hereby certifies that it is an accredited investor because it is (i) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act, (ii) acting in a fiduciary capacity and (iii) subscribing for the purchase of the securities being offered on behalf of a trust account or accounts.

_____
*(Initial)*

(13)  The Investor hereby certifies that it is an accredited investor because it is a revocable trust which may be amended or revoked at any time by the grantors thereof, the tax benefits of investments made by the trust pass through to the grantors and all of the grantors are accredited investors. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

*For Banks, Savings and Loans and Similar Institutions*

_____
*(Initial)*

(14)  The Investor hereby certifies that it is an accredited investor because it is a bank as defined in Section 3(a)(2) of the Securities Act acting in its individual capacity.

_____
*(Initial)*

(15)  The Investor hereby certifies that it is an accredited investor because it is an investment company registered under the Company Act or a business development company as defined in Section 2(a)(48) of that Act.

_____
*(Initial)*

(16)  The Investor hereby certifies that it is an accredited investor because it is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

_____
*(Initial)*

(17)  The Investor hereby certifies that it is an accredited investor because it is an insurance company as defined in Section 2(13) of the Securities Act.

(C)    Qualified Purchaser Status:

*Initial all appropriate spaces on the following pages indicating the basis upon which the Investor qualifies as a qualified purchaser under the Company Act.*

### For Individual Investors Only

_____
(Initial)

(1)    The Investor hereby certifies that he/she is a qualified purchaser because he/she owns not less than $5,000,000 in investments[1], including any investments held jointly, in community property or other similarly shared ownership interest with his/her spouse, including the amount of his/her investment held in an individual retirement account or similar account and the investments of which are directed by and held for his/her benefit[2].

### For IRA or Self-Directed Pension Plan

_____
(Initial)

(2)    The Investor hereby certifies that it is a qualified purchaser because it is an IRA or a self-directed pension plan and the individual who established the IRA or the individual who established the IRA or the individual responsible for directing the investment of assets in the Partnership is an individual who owns not less than $5,000,000 in investments.

### For "Family" Corporations, "Family" Trusts, "Family" Partnerships, "Family" Limited Liability Companies, "Family" Foundations or "Family" Endowments

_____
(Initial)

(3)    The Investor hereby certifies that it is a qualified purchaser because it was not formed for the specific purpose of investing in the Partnership, owns not less than $5,000,000 in investments and is (i) owned directly or indirectly by or for two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, spouses or such persons, and the estates of such persons, or (ii) a foundation, charitable organization or trust established by or for the benefit of such persons in (i) above.

OR

The Investor hereby certifies that it is a qualified purchaser because each beneficial

---

[1]    The term "investments" shall mean any or all (1) securities (as defined in Securities Act), except for securities of issuers controlled by the Investor ("Control Securities") unless (A) the issuer of the Control Securities is itself a registered or private investment company or is excepted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the United States Securities Exchange Act of 1934, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of the Investor's purchase of Interests); (2) futures contracts or options thereon held for investment purposes, (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

[2]    In determining whether spouses who are making a joint investment are qualified purchasers, there may be included in the amount of each spouse's investments any investments owned by the other spouse (whether or not such investments are held jointly).

owner of the Investor's securities is a qualified purchaser.

**For Trusts**

_____
(Initial)

(4)   The Investor hereby certifies that it is a qualified purchaser because it was not formed for the specific purpose of acquiring Interests, and the trustee or other authorized person making decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a person described in Items (1), (3) or (8) of this Section.

**For Employee Benefit Plans**

_____
(Initial)

(5)   The Investor hereby certifies that it is a qualified purchaser because it is an employee benefit plan that (i) owns not less than $25,000,000 in investments and (ii) does not permit its participants to decide whether and how much to invest in particular investment alternatives.

**For Qualified Institutional Buyers**

_____
(Initial)

(6)   The Investor hereby certifies that it is a qualified purchaser because it is a "qualified institutional buyer" as defined in Rule 144A under the Securities Act, acting for its own account, the account of another qualified institutional buyer, or the account of a qualified purchaser, _provided that_ (i) a dealer described in paragraph (a)(1)(ii) of Rule 144A shall own and invest on a discretionary basis at least $25,000,000 in securities of issuers that are not affiliated persons of the dealer; and (ii) a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(F) of Rule 144A that holds the assets of such a plan will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

**For Knowledgeable Employees**

_____
(Initial)

(7)   The Investor hereby certifies that he/she is a qualified purchaser because he/she is an individual who is a "knowledgeable employee" as defined in Rule 3c-5 under the Company Act including, but not limited to, a director, executive officer, trustee, general partner, advisory board member, or an employee of the Partnership, the General Partner (other than an employee performing solely clerical, secretarial or administrative functions) who has participated in investment activities of the Company or a similar entity for at least twelve (12) months.

**For Other Entities**

_____
(Initial)

(8)   The Investor hereby certifies that it is a qualified purchaser because it was not formed for the specific purpose of investing in the Company and is acting for its own account or for the accounts of other qualified purchasers for which it owns and invests on a discretionary basis not less than $25,000,000 in investments.

OR

The Investor hereby certifies that is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser.

**Plus, For all Investors Other Than Individuals**



_____ (9)    The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or Section 3(c)(7); or
(Initial)

_____ (10)    The Investor is a 3(c)(1) or 3(c)(7) Company and does not have any direct "beneficial owners" that have held an interest in the Investor from on or before April 30, 1996 (a "Pre-April 30 Holder"); or
(Initial)

_____ (11)    The Investor is a 3(c)(1) or 3 (c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.
(Initial)

If the Investor is described in Item (3) or (4), the Investor may initial Item (12) instead of Item (11)

_____ (12)    The Investor is a 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its directors, general partners or trustees.
(Initial)

If the Investor has initialed Item (10) or Item (11), the Investor must also respond to Item (13)

_____ (13)    No direct or indirect beneficial owner of the Investor is itself a 3(c)(1) or 3(c)(7) company which controls, is controlled by, or is under common control with the Investor.
(Initial)

If the Investor cannot initial Item (13) because it has a control relationship with a beneficial owner and is itself a 3(c)(1)/3(c)(7) Company, the Investor may be required to obtain consent from the security holders of such owners.

<u>Note</u>: In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or market value as of a recent date provided that in the case of Commodity Interests, the amount of Investments shall be the value of the initial margin or option premium deposited in connection with such Commodity Interests <u>and</u> in each case, if investments have been acquired with indebtedness, the amount of indebtedness must be deducted in determining whether the threshold has been met.

**(D)    Foreign/Non-Foreign Status:**

*For U.S. Individuals*

_____ (1)    The Investor hereby certifies that it is not a non-resident alien for purposes of income taxation (as such term is defined in the Internal Revenue Code of 1986, as amended, and Income Tax Regulations).
(Initial)

*For U.S. Entities*

✓ _____    (2)    The Investor hereby certifies that is not a foreign corporation, foreign partnership,
*(Initial)*              foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code
                        of 1986, as amended, and Income Tax Regulations).

*For Foreign Individuals or Entities*

_____    (3)    The Investor certifies that it is a non-resident alien, foreign corporation, foreign
*(Initial)*              partnership, foreign trust or foreign estate (as those terms are defined in the Internal
                        Revenue Code of 1986, as amended, and Income Tax Regulations).

(E)    Benefit Plans Investor Status:

*Please initial the following certifications as appropriate:*

_____    (1) The Investor, an affiliate of the Investor, or the person or entity for which the
*(Initial)*         Investor is acting is not a "benefit plan investor" as defined in 29 C.F.R. 2510.3-
                   101(f)(2) (the "Plan Asset Regulation"). For purposes of illustration, "benefit plan
                   investors" are pension plans, profit-sharing plans, or other "employee benefit plans" as
                   defined in ERISA, regardless of whether the plans are subject to ERISA, and plans
                   defined in Section 4975 of the Internal Revenue Code of 1986. "Benefit plan
                   investors" also include simplified employee pension plans, KEOGH plans, individual
                   retirement accounts, health insurance plans, life insurance plans, church or other
                   charitable plans, governmental plans, and foreign plans. "Benefit plan investors" also
                   include entities deemed under Department of Labor regulations to hold "plan assets"
                   due to investments made in the entity by employee benefit plans and other such plans.

                   If the Investor is an entity, the Investor certifies that less than 25% of the value of each
                   class of equity interests in the Investor (excluding any equity interests held by an
                   individual or entity with discretionary authority or control over the equity interests of
                   the Investor) is held by "benefit plan investors.

                   *Or*

_____    (2) The Investor, an affiliate of the Investor, or the person or entity for which the
*(Initial)*         Investor is acting is a "benefit plan investor" as defined in the Plan Asset Regulation.

                   If the Investor is a "benefit plan investor," please indicate whether the Investor is a plan
                   defined in Section 4975 of the Internal Revenue Code of 1986 (e.g., an individual
                   retirement account, Coverdell account, etc.):

                   _____              _____
                        Yes                      No

_____
*(Initial)*

(3) The Investor is a life insurance company. Please indicate the relative percentages of the Investor's interest in the Interest being acquired with the assets of the Investor's general account and separate accounts:

_____ % is being acquired with the assets of the general account

_____ % is being acquired with the assets of one or more separate accounts

(4) If the Investor indicated in question (3) above that general account assets are being used to acquire the Investor's interest in the Interests, please complete the following:

_____ % of such general account assets used to acquire Interests represent "plan assets" within the meaning of the Plan Asset Regulation

_____
*(Initial)*

(5) The Investor is a person who has discretionary authority or control[1] with respect to the assets of the Partnership or provides investment advice to the Partnership for a fee, direct or indirect, with respect to such assets or any affiliate of any such person[*] (a "Controlling Person").

The Investor understands and agrees that the information supplied above will be utilized to determine whether benefit plan investors own less than 25% of the value of the Interests, as determined under the Plan Asset Regulation, both upon the original issuance of Interests and upon subsequent transfer of Interests.

(G)     General - For All Investors:

✓
_____
*(Initial)*

The Investor hereby agrees that if any of the information in this Item II changes, the Investor will notify the General Partner within 10 days thereof. The Investor understands that the information contained in this Item II may be disclosed to the Internal Revenue Service by the Partnership and that any false statement contained in this Item II could be punished by fine, imprisonment or both.

## III.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

(A)     The Investor agrees that it will not sell or otherwise transfer the Interest without registration under the Securities Act or an exemption therefrom, and fully understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is subsequently registered under the Securities Act and under applicable securities laws of such states or an exemption from such registration is available. The Investor acknowledges

---

[1] For purposes of this question, "control" means, with respect to a person other than an individual, the power to exercise a controlling influence over the management or policies of such person.

[*] For purposes of this question, "affiliate of a person" includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the person.

that it is aware and understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from such registration under the Securities Act. The Investor also acknowledges that it is aware and understands that sales or transfers of the Interest are further restricted by the provisions of the Partnership Agreement and state securities laws. The Investor further acknowledges that it is aware and understands that the Partnership is not registered as an investment company under the Company Act, in reliance upon an exemption from such registration.

(B)      The Investor represents that it has received and read a copy of the Memorandum and the Partnership Agreement outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership and the Investor hereby adopts all provisions therein. The Investor represents that in making a decision to subscribe for an Interest, that it has relied solely upon the Memorandum, the Partnership Agreement and its own independent investigations. The Investor represents that it understands the investment objectives and policies of, and the investment strategies that may be pursued by, the Partnership. The Investor represents that its investment in the Interest is consistent with its investment purposes and objectives and cash flow requirements and that its investment will not adversely affect its overall need for diversification and liquidity. The Investor represents that it is not subscribing pursuant hereto for any Interest as a result of or subsequent to (a) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media or broadcast over television or radio, or (b) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, subsequent to or pursuant to any of the foregoing.

(C)      The Investor represents that it has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except its own professional advisors or as instructed by the General Partner.

(D)      The Investor represents that it has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of its investment in the Interest and that it is able to bear such risks, and has obtained, in its judgment, sufficient information from the Partnership or the Partnership's authorized representatives to evaluate the merits and risks of such investment. The Investor represents that it has evaluated the risks of investing in the Interest and has determined that the Interest is a suitable investment for it.

(E)      The Investor represents that it can afford a partial or complete loss of its investment in the Interest, can afford to hold the investment in the Interest for an indefinite period of time and acknowledges that it is aware and understands that distributions may be paid in cash or in kind.

(F)      The Investor represents that it is acquiring the Interest subscribed for herein for its own account, for investment purposes only and not with a view to distribute or resell such Interest, either as a whole or in part.

(G)      The Investor acknowledges that it is aware of and understands the method of compensation of the General Partner by the Partnership as set forth in the Partnership Agreement. The Investor acknowledges and agrees that the Partnership Agreement constitutes an arm's length arrangement with respect to the receipt of net cash proceeds which may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case if this allocation were not made.

(H)    The Investor acknowledges that it understands and is aware that the General Partner has the authority to allocate transaction costs to obtain research, investment management related services and equipment as set forth in the Memorandum. The Investor acknowledges that it understands that by signing this Subscription Agreement that it expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(I)    The Investor acknowledges that it understands that the General Partner may open "average price" accounts with brokers, in which purchase and sale orders placed during a trading day on behalf of the Partnership and other clients or affiliates of the General Partner and its affiliates are combined, and securities bought and sold pursuant to such orders are allocated among such accounts on an average price basis.

(J)    If the Investor is an employee benefit plan (a "Plan"), the fiduciary executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

(1)    the Plan is not a participant-directed defined contribution plan unless each participant directing an investment in the Company is an accredited investor and a qualified purchaser;

(2)    the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interest and has determined that, in view of such considerations, the purchase of the Interests is consistent with the Fiduciary's responsibilities under ERISA. The Fiduciaries of such Plan represent and warrant that they have been informed of and understand the Partnership's investment objectives, policies and strategies and that the decision to invest such Plan's assets in the Interests was made with appropriate consideration of relevant investment factors with regard to such Plan and is consistent with the duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA. Such factors include, but are not limited to:

(a)    the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)    whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom;

(c)    the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

(d)    the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)    the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan;

(f)    an investment in the Partnership is permissible under the documents governing the Plan and the Fiduciary; and

(g)    the risks associated with an investment in the Partnership.

(3)    the Fiduciary (a) is responsible for the decision to invest in the Partnership; (b) is independent of the Partnership, the General Partner or any of their affiliates; and (c) is qualified to make such investment decision and

(4)    it will promptly dispose of its Interests in a manner consistent with the Partnership's restrictions on transfer if it is becoming a benefit plan investor or a controlling person and it has been notified that its ownership of the Interests would result in 25% or more, as determined under the Plan Asset Regulation, of the value of the Interests being held by benefit plan investors.

(K)    If the Investor is, or is acting on behalf of, a benefit plan investor (as defined in the Plan Asset Regulation), the Investor represents and warrants that, its purchase, ownership and disposition of the Interests will not result in or constitute a "prohibited transaction" under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church plan, any similar federal, state or local law) for which an exemption is not available.

(L)    The Investor represents that it has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (countries) and U.S. tax considerations applicable to Investor's purchase of the Interests.

(M)    The Investor acknowledges that it is aware and understands that:

(1)    no federal or state agency has passed upon the Interests or made any findings or determination as to the fairness or merits of this investment;

(2)    there are risks of loss of investment incidental to the purchase of the Interest, including those summarized in the Memorandum; and

(3)    the General Partner and each of its affiliates may provide similar services to investment funds and managed accounts in which the Investor will have no interest and there are other potential conflicts as described in the Memorandum.

(N)    The Investor represents that the execution, delivery and performance by the Investor of this Subscription Agreement are within the powers of the Investor, have been duly authorized and will not constitute or result in a breach or default under, or conflict with, any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which the Investor is a party or by which the Investor is bound, and, if the Investor is not an individual, will not violate any provisions of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Investor. The Investor represents that the signature on this agreement is genuine, and the signatory, if the Investor is an individual, has legal competence and capacity to execute the same, or, if the Investor is not an individual, the signatory has been duly authorized to execute the same, and this Subscription Agreement constitutes a legal, valid and binding obligation of the Investor, enforceable in accordance with its terms.

(O)    The Investor acknowledges that it is aware and understands that Tannenbaum Helpern Syracuse & Hirschtritt LLP acts as counsel to the Partnership and as counsel to the General Partner and their respective affiliates. The Investor also acknowledges that it is aware and understands that, in connection with this offering of Interests and subsequent advice to the Partnership, Tannenbaum Helpern Syracuse & Hirschtritt LLP will not be representing Investors in the Partnership, including the Investor, and no independent counsel has been retained by the Partnership to represent Investors in the Partnership.

(P)    The Investor understands that the Partnership intends to comply with Section 3(c)(7) of the Company Act, which will permit private investment companies (such as the Partnership) to sell their interests, on a private placement basis, to an unlimited number of "qualified purchasers" as defined in Section 2(a)(51) of the Company Act. The Investor understands that, for this reason, the General Partner, in its discretion, may offer Interests only to Investors that it believes will meet the definition of qualified purchaser.

(Q)    The Investor covenants to advise the General Partner in writing if any warranty or any information contained herein becomes untrue.

(R)    The Investor has received a copy of the General Partner's Form ADV Part II a minimum of 48 hours prior to entering into this Agreement.

IV.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Partnership, the General Partner and their respective officers, directors, employees, agents and shareholders, and each other person, if any, who controls or is controlled by any thereof, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage, cost and expense whatsoever (including, but not limited to, legal fees and disbursements and any and all other expenses whatsoever incurred in investigating, preparing for or defending against any litigation, arbitration proceeding, or other action or proceeding, commenced or threatened, or any claim whatsoever) arising out of or in connection with, or based upon or resulting from, (a) any false representation or warranty or breach or failure by the Investor to comply with any covenant or agreement made by the Investor in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (b) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor. Notwithstanding anything to the contrary, the foregoing shall not be construed so as to relieve (or attempt to relieve) the General Partner of any liability to the extent (but only to the extent) such liability may not be waived, modified or limited under applicable law (including liability under U.S. securities laws which, under certain circumstances, impose liability even on persons acting in good faith), but shall be construed so as to effectuate the foregoing provisions to the fullest extent permitted by law.

(B)    The Investor, as principal, hereby appoints the General Partner as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

    (1)    any partnership certificate, business certificate, fictitious name certificate, amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state, or local or foreign law;

    (2)    the Partnership Agreement of the Partnership and any amendment duly approved as provided therein; and

    (3)    any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including, but not limited to, a notice of dissolution of the Partnership).

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetence, termination, bankruptcy, insolvency or dissolution of the Investor, *provided, however,* that this power of attorney will terminate upon the substitution of another

[790969-1]                                    S-22

Limited Partner for all of the Investor's investment in the Partnership, upon the withdrawal of the Investor from the Partnership or upon the redemption of all of the Interest owned by the Investor.

(C)    This Subscription Agreement (i) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Partnership and its successors and assigns, (ii) shall be governed, construed and enforced in accordance with the laws of Delaware, regardless of the conflicts of law provisions thereof, (iii) shall survive the acceptance of the Investor as a limited partner of the Partnership and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each of such persons.

(D)    The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement and any or all transactions relating hereto and thereto may be brought in U.S. federal and state courts in the State of New York. The Investor hereby irrevocably submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by U.S. federal and New York law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum. The Investor hereby further irrevocably consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Investor at the address of the Investor then appearing on the records of the Partnership. Nothing contained herein shall affect the right of the Partnership to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(E)    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law or in any particular instance shall not affect the validity or enforceability of any other provisions hereof or of such provision in any other instance, and to this extent the provisions hereof shall be severable.

V.    TRUSTEE, AGENT, REPRESENTATIVE, NOMINEE OR OTHER THIRD PARTIES

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor with respect to the Investor *and* with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Partnership, the General Partner and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum, the Limited Partnership Agreement and the Subscription Agreement; (c) the Third Party acknowledges that

the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (d) the Third Party is a "qualified eligible participant" under the Commodity Exchange Act, as amended, an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act. The Investor also agrees to indemnify the Partnership, the General Partner and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

## VI.    ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The General Partner may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's compliance with applicable regulatory requirements or tax status, and the Investor shall provide such information as may reasonably be requested.

Each person acquiring an Interest must satisfy the foregoing investor eligibility criteria both at the time of subscription and at all times thereafter until such person ceases to be a Limited Partner of the Partnership. Accordingly, the Investor agrees to notify the General Partner promptly if there is any change with respect to any of the foregoing information or representations and to provide the General Partner with such further information as the General Partner may reasonably require. In addition, the Investor agrees that at any time in the future at which the Investor may acquire additional Interests, the Investor shall be deemed to have reaffirmed, as of the date of such acquisition of additional Interests, each and every representation made by the Investor in this Subscription Agreement, except to the extent modified in writing by the Investor and consented to by the Partnership.

The Subscription Agreement and the Partnership Agreement constitute the entire arrangement and understanding between the parties hereto regarding its subject matter, and supersede any prior or contemporaneous agreements, arrangements and understandings, written or oral, between the parties regarding the same.

## VII.    ANTI-MONEY LAUNDERING REPRESENTATIONS

(A)    The Investor represents that all evidence of identity provided in connection with the Subscription Agreement is true and correct and all related information furnished is genuine and accurate.

(B)    The Investor agrees to provide any information deemed by the Partnership or the General Partner, from time to time and in its sole and absolute discretion, necessary to comply with any anti-money laundering program that the Partnership and/or the General Partner may, either presently or in the future, adopt and any related responsibilities. The Investor agrees and acknowledges that in the event of delay or failure by the Investor to produce any information requested in this Subscription Agreement or required for verification purposes, the Partnership may refuse to accept the subscription.

(C)    The Investor represents and covenants that neither it, nor any person controlling, controlled by, or under common control with it, nor any person having a beneficial interest in it, is an individual, organization, or entity listed on the List of Specially Designated Nationals and Blocked Persons (the "OFAC Control List") maintained by the U.S. Office of Foreign Assets Control ("OFAC")[5], and that it is

---

[5] Available at http://www.ustreas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf

not investing and will not invest in the Partnership on behalf of or for the benefit of any individual, organization, or entity listed on the OFAC Control List.

(D)     The Investor represents that (i) the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that contravene U.S. federal or state laws or regulations and international laws and regulations, including anti-money laundering laws and regulations, and (ii) the proceeds from the Investor's investment in the Partnership will not be used to finance any illegal activities.

(E)     The Investor agrees and acknowledges (i) that additional subscriptions by the Investor may be refused and/or (ii) that requests for withdrawals may be delayed or declined if the General Partner reasonably believes it does not have satisfactory evidence of the Investor's identity.

(F)     The Investor agrees and acknowledges that, if, following its subscription in the Partnership and/or, the General Partner reasonably believes that the Investor is listed on the OFAC Control List or has otherwise breached its representations and covenants as to its identity, the General Partner may be obligated to block the Investor's investment in accordance with applicable law, and the Investor shall have no claim against the General Partner for any form of damages as a result of blocking the investment.

(G)     If the Investor is a "fund of funds" or an entity that invests on behalf of others, the Investor, in addition to and not by way of limiting the foregoing, represents and certifies that it is aware of the requirements of the USA PATRIOT Act of 2001, and rules and regulations promulgated thereunder and other applicable anti-money laundering measures in any jurisdiction (collectively, the "AML Rules") and that it has adopted anti-money laundering policies and procedures in place reasonably designed to verify the identity of its beneficial owners or underlying investors, as the case may be, and their respective sources of funds. Such policies and procedures are properly enforced and are consistent with such AML Rules. The Investor represents and certifies that to the best of its knowledge, the beneficial owners or investors, as the case may be, are not individuals, entities, or countries that may subject the Partnership or any of its affiliates to criminal or civil violations of any AML Rules. The Investor agrees and acknowledges that it is to furnish a copy of its anti-money laundering policies and procedures to the Partnership when requested. Among its other obligations hereunder, the Investor agrees to promptly notify the Partnership if the foregoing representation and certification becomes inaccurate.

(H)     Investor represents that:

(1)     it is not a Senior Foreign Political Figure[6], a member of a Senior Foreign Political Figure's Immediate Family[7], and/or any Close Associate[8] of a Senior Foreign Political Figure residing in a non-cooperative country or territory or a jurisdiction that has been designated by the U.S. Treasury as warranting special measures due to primary money laundering concerns;

---

[6] The term "senior foreign political figure" is defined to mean a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation.

[7] The term "immediate family" is defined to mean the parents, siblings, spouse, children and in-laws of a senior foreign political figure.

[8] The term "close associate" is defined to mean a person who is widely and publicly known to maintain an unusually close relationship with a senior foreign political figure.

[790969-1]                                                    S-25

(2)     it is <u>not</u> a <u>former</u> Senior Foreign Political Figure residing in a non-cooperative country or territory or a jurisdiction that has been designated as warranting special measures due to primary money laundering concerns;

(3)     it is <u>not</u> resident in, or organized or chartered under the laws of a jurisdiction that has been designated by the U.S. Secretary of Treasury under Sections 311 and 312 of the USA PATRIOT Act as warranting special measures due to primary money laundering concerns;

(4)     it is <u>not</u> a Foreign Shell Bank as the term is defined in the USA PATRIOT Act; and

(5)     its subscription funds do not originate from, nor will they be routed through, an account maintained at a Foreign Shell Bank, an "offshore bank,"[9] or a bank organized or charted under the laws of a jurisdiction deemed to be a non-cooperative country or territory ("NCCT")[10].

- Investors who are natural persons from non-FATF member jurisdictions must complete and return EXHIBIT E to the General Partner along with the Investor's signed Subscription Agreement.

- Investors who are entities from non-FATF member jurisdictions must complete and return EXHIBITS C, E, F (if privately held) and G (if a trust) to the General Partner along with the Investor's signed Subscription Agreement.

- Investors who are funds of funds from non-FATF member jurisdictions must complete and return EXHIBITS C, E, F (if privately held) and G (if a trust) to the General Partner along with the Investor's signed Subscription Agreement.

- Investors who are entities from FATF member jurisdictions must complete and return EXHIBITS C and D (if an entity subscribing on behalf of third parties) to the General Partner along with the Investor's signed Subscription Agreement.

- Investors who are funds of funds from FATF member jurisdictions must complete and return EXHIBITS C and D to the General Partner along with the Investor's signed Subscription Agreement.

---

[9] The term "offshore bank" refers to a foreign bank that is barred, pursuant to its banking license, from conducting banking activities with the citizens of, or with the local currency of, the country that issued the license.

[10] The Financial Action Task Force on Money Laundering ("FATF") has designated certain countries or territories as NCCTs. The list of countries or territories deemed to be NCCTS is available at: http://www1.oecd.org/fatf.

SET 1 OF 2

IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement as of the date set forth below under penalties of perjury.

Date: _____, _____

*For Individual Investors:*

_____
Signature

_____
(Please Type Name)

*For Investors other than Individuals:*

DeMatteis FLP Assets LLC,
By: The 2001 Frederick DeMatteis Revocable Trust, Man
_____
(Please Type or Print Name of Investor)

By: _____
Signature

_____
(Please Type or Print Name of Signatory)

Title: _____ Trustee _____

*Name of Trustees or Other Fiduciaries Exercising Investment*
*Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By: _____
Signature of Authorized Signatory

_____
Name of Custodian (Print)

_____
Name of Authorized Signatory (Print)

SET 2 OF 2

      IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement as of the date set forth below under penalties of perjury.

Date: _____, _____

**For Individual Investors:**

_____
Signature

_____
(Please Type Name)

**For Investors other than Individuals:**

_____
(Please Type or Print Name of Investor)

By: _____
Signature

_____
(Please Type or Print Name of Signatory)

Title: _____

*Name of Trustees or Other Fiduciaries Exercising Investment*
*Discretion with Respect to Benefit Plan or Trust*

| Signature | Printed Name | Title |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By: _____          _____
    Signature of Authorized Signatory          Name of Custodian (Print)

_____
Name of Authorized Signatory (Print)

SET 1 OF 2

## RYE SELECT BROAD MARKET PRIME FUND, L.P.

### LIMITED PARTNERSHIP AGREEMENT

### LIMITED PARTNER SIGNATURE PAGE

By its signature below, the undersigned hereby agrees that effective as of the date of its admission to Rye Select Broad Market Prime Fund, L.P. as a Limited Partner it shall (i) be bound by each and every term and provision of the Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P., as the same may be duly amended from time to time in accordance with the provisions thereof, and (ii) become and be a party to said Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P..

DeMattis FLP Assets LLC,

By: The 2001 Frederick DeMattis Revocable Trust, Mana
_____
(Type or Print Name)

By: _____
(Signature)

Trustee
_____
(Representative capacity, if any)

_____
Date

*(Page 1 of 2)*