# Bird, Loechl, Brittain & McCants

### A LIMITED LIABILITY COMPANY ‡
### ATTORNEYS AT LAW
### 1150 MONARCH PLAZA
### 3414 PEACHTREE ROAD, NORTHEAST
### ATLANTA, GEORGIA 30326
### (404) 264-9400

WENDELL R. BIRD\*, P.C.
RICHARD L. BRITTAIN
KEVIN J. LOECHL\*\*
JONATHAN T. McCANTS\*\*\*

MARK P. MILLER\*\*\*\*
MARTIN C. MUÑOZ\*\*\*\*\*
TROY G. WOOLLEN

THOMAS O. KOTOUC†\*\*\*\*\*\*
RUSSELL P. REACH†\*\*\*\*\*\*\*

FACSIMILE: (404) 365-9731
E-MAIL: INFO@BIRDLAWFIRM.COM
WEB SITE: WWW.BIRDLAWFIRM.COM

\*ALSO ADMITTED IN FLORIDA,
ALABAMA AND CALIFORNIA
\*\*ALSO ADMITTED IN ILLINOIS
\*\*\*ALSO ADMITTED IN MISSISSIPPI
\*\*\*\*ALSO ADMITTED IN VIRGINIA
\*\*\*\*\*ADMITTED IN CALIFORNIA
\*\*\*\*\*\*ALSO ADMITTED IN ALABAMA
NEBRASKA AND SOUTH CAROLINA
†\*\*\*\*\*\* (1960-2007)
†OF COUNSEL
‡INCLUDING PROFESSIONAL CORPORATIONS

January 5, 2010

**Via Express Mail:**
Clerk, United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

### RE: Securities Inv. Protection Corp. v. Bernard L. Madoff Investment Securities, LLC
### Case No. 08-1789-BRL

Dear Sir / Madam:

I hope you are doing well.

Enclosed in the above referenced matter please find a copy of the Opposition and Objections to Trustee Picard's Determination of Claim that has been filed on behalf of Festus & Helen Stacy Foundation, Inc. We submit this copy pursuant to Mr. Picard's December 8, 2008 letter.

Please contact our office if you need additional information.

Sincerely,

Richard L. Brittain
Bird, Loechl, Brittain & McCants, LLC

Enclosure

JAN - 6 2010

Richard L. Brittain
BIRD, LOECHL, BRITTAIN & MCCANTS, LLC
1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Tel: (404) 264-9400
Fax: (404) 365-9731
Email: rbrittain@birdlawfirm.com
*Attorneys for Festus & Helen Stacy Foundation, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DIVISION OF NEW YORK
-------------------------------------------------------------x
                                                             :
SECURITIES INVESTOR PROTECTION          :        Adversary Proceeding
CORPORATION,                            :        No. 08-01789-BRL
                                        :
            Plaintiff,                  :        SIPA Liquidation
                                        :
v.                                      :
                                        :
BERNARD L. MADOFF INVESTMENT            :
SECURITIES, LLC,                        :
                                        :
            Defendant.                  :
-------------------------------------------------------------x

## OPPOSITION AND OBJECTIONS TO TRUSTEE PICARD'S DETERMINATION OF CLAIMS

The Festus & Helen Stacy Foundation, Inc. ("Stacy Foundation" or "Foundation"), by and through its attorneys, Bird, Loechl, Brittain & McCants, LLC, hereby submits its written opposition and objections to the determination by Trustee Irving Picard denying its claim and application under the Securities Investor Protection Act, and states as follows:

I.    **BACKGROUND:**

JAN - 6 2010

1.     The Stacy Foundation is a private family foundation organized under I.R.S. Section 501(c)(3). It has spent the last three decades investing in the lives of those less fortunate, both throughout the United States and around the world.

2.     The Stacy Foundation invested with Bernard L. Madoff Investment Securities LLC ("Madoff"), via S&P Associates, G.P., Account No. 1-ZA874-3-0 and/or Account No. 1-ZA874-4-0 (collectively the "Account").   S&P's express purpose was to deposit money with Madoff in order to purchase securities; the Foundation's funds were deposited with Madoff for that very reason.

3.     On or about February 26, 2009, the Stacy Foundation filed a SIPC claim in the amount of $12,800,695.86, representing the Foundation's November 30, 2008 balance in the Account.[1]  Mr. Picard designated the Foundation's claim as Claim No. 005407.

4.     In the Determination Letter, Mr. Picard rejected the Foundation's claims on the alleged ground that "Based upon a review of available books and records of [Madoff] by the Trustee's staff, you did not have an account with [Madoff]. Because you did not have an account, you are not a customer of [Madoff] under SIPA as that term is defined at 15 U.S.C.A. § 78*lll*(2)." *See* Ex. B hereto. Mr. Picard ignored the fact that the Stacy Foundation is a "Customer" under the Securities Investor Protection Act ("SIPA") and entitled to SIPC insurance.

II.     **GROUNDS FOR OBJECTION:**

A.     **The Stacy Foundation Is A "Customer" Under SIPA And Entitled To $500,000 In SIPC Insurance.**

---

[1] A copy of the Foundation's SIPC claim form, redacted and without all attachments, is attached hereto as Exhibit A.

2

5.   The Stacy Foundation is a "customer" under the plain definition of that term in SIPA and entitled to receive $500,000 in SIPC insurance.  SIPA defines "customer" to include:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities. . . .[2]

15 U.S.C. § 78lll(2).

6.   The Stacy Foundation falls squarely within the definition of "customer" under a plain reading of the statute.  It unquestionably deposited and entrusted its cash with Madoff for the purpose of purchasing securities and is therefore covered by the Act. 15 U.S.C. § 78lll(2).  *See also Rosenman Family, LLC v. Picard,* 401 B.R. 629, 635 (B.S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status. . ."); *SEC v. Ambassador Church Financial Devel. Group, Inc.,* 679 F. 2d 608, 614 (6th Cir. 1982); *In re Primeline Sec. Corp.,* 295 F. 3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who try to attempt to invest through their brokerage firm but are defrauded by dishonest brokers . . . . If a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment,

---

[2] The term excludes two exceptions not relevant here: 1) any person to the extent that the claim of that person arises out of transactions with a foreign subsidiary of a member of SIPC; or 2) any person who has a claim for cash or securities which by contract, agreement, or understanding or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor.  *See* 15 U.S.C. § 78lll(2)(A) & (B).

the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds"); *Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, 2003 WL 22698876 at *3 (S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of Claimants' property makes them customers within the meaning of SIPA.").

7.    Had Congress intended to limit the definition of customers to account holders, it could have easily done so by adding a few simple words. Instead, Congress' definition of "customer" is expansive and is further clarified in 15 U.S.C. § 78fff-3(a) to make clear that customers of a bank, broker, or dealer that invests in Madoff are all customers under SIPA ("no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , **in which event each such customer of such broker or dealer or bank shall be deemed a separate customer** of the debtor") (emphasis added).

8.    Whether a claimant is a "customer" does not depend upon to whom it handed its cash or to whom it made its check payable, or even where the funds initially may have been deposited. *See In re Old Naples Securities, Inc.*, 223 F. 3d 1296, 1302-1303 (11th Cir. 2000). Rather, the issue depends upon whether there was actual receipt, acquisition, or possession of the claimant's property by the brokerage firm under liquidation. *Id.* Here, there is no question but that the Stacy Foundation's property was actually received, acquired, and possessed by Madoff.

9.    The securities markets have changed over time, and many securities transactions are held in "street names", nominee names, or via mere book-entries. The

4

fact that there may be no direct statement from Madoff to the Foundation is of no significance, especially since there is no question but that the Foundation entrusted to Madoff its funds for a purpose directly connected with participating in the securities market. The Foundation should not be penalized because Mr. Madoff directed and decided in whose names accounts might be held:

> It is not likely that Congress . . . intended to make eligibility for protection [under SIPA] dependent upon whether the broker complied with the rules of the SEC or practices of the trade . . . . The trusting customer is not to be penalized for choosing a careless, unethical or dishonest broker. The primary purpose of the Act is to assure the unsophisticated participant in securities transactions that there is protection when a bad choice of brokers is made.

*Securities & Exchange Comm. v. Ambassador Church Finance/Development Group, Inc.,* 679 F.2d 608, 614 (6th Cir. 1982).

10.      As explained by the Supreme Court, Congress enacted SIPA to protect and restore investor confidence in the capital markets. *Securities Investor Protection Corp. v. Bourbor,* 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities,* LLC, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009). The Foundation is precisely the type investor that SIPA was designed to protect. *See Securities & Exchange Comm. v. Ambassador Church Finance/Development Group,* Inc., 679 F.2d 608, 612 (6th Cir. 1982) (Congress' purpose in passing SIPA was to protect "small investors as a means of restoring confidence" in the markets). Failing to treat the Foundation as a customer would frustrate the very purpose the law was intended to protect.

11.      Further, any ambiguity in the definition of "customer" (and there is none here), should be construed in favor of the Stacy Foundation because "SIPA is remedial legislation. As such, it should be construed liberally to effect its purpose." *Tcherepin v.*

5

*Knight*, 389 U.S. 332 (1967). *See also In re First State Securities Corp.*, 34 B.R. 492

(S.D. Fla. 1980) (SIPA enacted by Congress as remedial legislation to be liberally

construed to effect purpose of protecting investments of customers of broker-dealers and

investment advisors).

12.   Moreover, it is clear that Congress intended for "customer" to be broadly

interpreted. In the first draft of the bill, there was no entitlement to SIPC insurance for

any customer whose name or interest was not disclosed on the records of the

broker/dealer "if such recognition would increase the aggregate amount of the insured

customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st

Cong. Section 7(d)(June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug.4, 1969).

The final bill dropped this restriction in favor a much broader definition.

13.   The Trustee may erroneously rely upon SIPC Rule 103. SIPA does not

permit SIPC, by the promulgation of Rules, to change the definition of "customer" under

the statute. Hence, Rule 103 is invalid. 15 U.S.C. § 78ccc(b)(4)(A).

**B.   Mr. Picard Failed To Comply With The Court's December 23, 2008 Order.**

14.   Mr. Picard has failed to comply with the Court's December 23, 2008

Order, which directs Mr. Picard to satisfy customer claims and deliver securities in

accordance with "the Debtor's books and records." December 23, 2008 Order at 5

(Docket No. 12). The November 30, 2008 account statement generated by Madoff is

reflective of "the Debtor's books and records" by which Mr. Picard is bound, absent

proof that the Foundation did not have a "legitimate expectation" that the balance on the

Account statement represented its property.

6

15.     Mr. Picard has failed to state a legitimate basis in the Determination Letter

for the position he has taken.  Thus, he has not complied with the requirement that an

"objection to a claim should . . . meet the [pleading] standards of an answer.  It should

make clear which facts are disputed; it should allege facts necessary to affirmative

defenses; and it should describe the theoretical bases of those defenses."  Collier on

Bankruptcy ¶ 3007.01(3)(15th ed.); *In re Enron Corp.,* No. 01-16034, 2003 Bankr. LEXIS

2261, at * (B.S.D.N.Y. Jan. 13, 2003).

**C.     Mr. Picard Violated The Requirement That He Honor A Customer's "Legitimate Expectations".**

16.     The legislative history of SIPA makes clear that Congress' intent was to

protect a customer's "legitimate expectations."  For example, Congressman Robert

Eckhardt commented when SIPA was amended in 1978:

> One of the greatest shortcomings of the procedure under the 1970 Act, to
> be remedied by [the 1978 amendments] is the failure to meet legitimate
> customer expectations of receiving what was in their account at the time of
> their broker's insolvency.
>
> *         *         *
>
> A customer generally expects to receive what he believes is in his account
> at the time the stockbroker ceases business. But because securities may
> have been lost, improperly hypothecated, misappropriated, never
> purchased, or even stolen, this is not always possible. Accordingly, [when
> this is not possible, customers] will receive cash based on the market value
> as of the filing date.

H.R. Rep. 95-746 at 21.

17.     SIPC's Series 500 Rules, 17 C.F.R. 300.500, enacted pursuant to SIPA,

provide for the classification of claims in accordance with the "legitimate expectations"

of a customer based upon the written transaction confirmations sent by the broker-dealer

to the customer.

18.    Thus, SIPC is statutorily bound to honor a customer's "legitimate expectations." This was acknowledged by SIPC in a brief it submitted to the Second Circuit in 2006, wherein SIPC assured the appeals court that its policy was to honor the legitimate expectations of investors, even where the broker never purchased the securities. SIPC wrote:

> Reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, **where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase** . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transaction reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

Br. of Appellant SIPC at 23-24 (citing *In re New Times Securities Services, Inc.*, No 00-8178 (B.E.D.N.Y. 7/28/00) (emphasis added).

19.    Mr. Picard's position in the Madoff case is contradicted not only by SIPC's prior treatment of customers in the *New Times* case, but also by a statement that SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang acknowledged that a Madoff customer is entitled to the securities in his account:

> Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each. So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

8

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

20.     As indicated *infra*, in the *New Times* case, SIPC voluntarily recognized its

obligation under SIPA to pay customers up to $500,000 based on their final brokerage

statement, inclusive of appreciation in their accounts, despite the fact that the broker had

operated a Ponzi scheme for a period of approximately 17 years and had never purchased

the securities reflected on the customers' monthly statements.   In fact, SIPC's president,

Stephen Harbeck, assured the *New Times* bankruptcy court that customers would receive

securities up to $500,000 including the appreciation in their accounts.

> HARBECK:  . . . if you file within sixty days, you'll get the securities,
> without question.   Whether – if they triple in value, you'll get the
> securities . . . Even if they're not there.
>
> COURT:  Even if they're not there.
>
> HARBECK:  Correct.
>
> COURT:   In other words, if the money was diverted, converted –
>
> HARBECK:  And the securities were never purchased.
>
> COURT:  Okay.
>
> HARBECK:  **And if those positions triple we will gladly give the
> people their securities positions.**

Tr. at 37-39, *In re New Times Securities Services, Inc.*, No 00-8178 (B.E.D.N.Y. 7/28/00)

(emphasis added).

**D.      Without Legal Authority, Mr. Picard Has Invented His Own
Definition Of "Net Equity".**

21.     Though unclear from the Determination Letter, Mr. Picard may have also

decided that the Foundation's claim should be analyzed and/or rejected under his

definition of "net equity".   To the extent he did so or would do so, the Foundation

9

objects.   SIPA defines "net equity" as the value of the securities positions in the

customer's account as of the SIPA filing date, less any amount the customer owes the

debtor.

> The term 'net equity' means the dollar amount of the account or
> accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the
> debtor to such customer if the debtor had liquidated, by sale or
> purchase on the filing date, all securities positions of such
> customer . . .; minus
>
> (B) any indebtedness of such customer to the debtor on the filing
> date . . .

15 U.S.C. § 78*lll*(11).

    22.    SIPA specifically prohibits SIPC from changing the definition of "net

equity." 15 U.S.C. § 78ccc(b)(4)(A).

    23.    The Second Circuit has recognized that:

> Each customer's "net equity" is "the dollar amount of the account or
> accounts of a customer, to be determined by calculating the sum which
> would have been owed by the debtor to such customer if the debtor had
> liquidated, by sale or purchase on the filing date, all securities positions of
> such customer" [corrected for] any indebtedness of such customer to the
> debtor on the filing date.

*In re New Times Securities Services, Inc.*, 371 F. 3d 68, 72 (2d Cir. 2004); *See also, In re*

*Adler Coleman Clearing Corp.*, 247 B.R. 51, 62 N. 2 (B.S.D.N.Y. 1999) ("'Net equity' is

calculated as the difference between what the debtor owes the customer and what the

customer owes the debtor on the date the SIPA proceeding is filed.").

    24.    In derogation of his obligations to carry out the provisions of SIPA, Mr.

Picard has created his own definition of "net equity," thereby depriving investors of

protections afforded them under applicable law.  Mr. Picard has asserted that he has a

right to recognize claims only for the amount of their net investment, disregarding all appreciation in the investor's accounts.

25.    Stephen Harbeck, the President of SIPC, justifies this conduct by claiming that:

> Using the final statements created by Mr. Madoff as the sole criteria for what a claimant is owed perpetuates the Ponzi Scheme. It allows the thief . . . Mr. Madoff . . . to determine who receives a larger proportion of the assets collected by the Trustee.

26.    Mr. Harbeck's statement is a rationalization of what appears to be SIPC's goal, *i.e.,* to save money for the brokerage community at the expense of innocent investors, such as the Foundation, who relied upon the SEC's competence and integrity in investigating Madoff seven times over an 11-year period.

27.    The Stacy Foundation, like thousands of other customers, received monthly statements from Madoff indicating returns on their Madoff investment in the past few years in the range of 9 – 11% per year. The Foundation, through S&P, had entered into standard brokerage agreements with Madoff, a licensed SEC-regulated broker-dealer, pursuant to which there were specified, numbered accounts for the purchase and sale of securities. The Foundation received copies of regular monthly statements reflecting the purchase and sale of Fortune 100 company stocks and the purchase of US Treasury securities. The Foundation prepared its tax returns in reliance upon the statements produced by Madoff. There is no basis to claim that the Foundation did not have a "legitimate expectation" that the assets reflected on the Madoff statements sent by Madoff belonged to them.

11

28.    Thus, the Foundation is entitled to a claim for $12,800,695.86, the November 30, 2008 balance for the Foundation on the Account as reflected on the Madoff statement.

**E.    The Stacy Foundation Is Entitled To Prejudgment Interest On Its Investment And Profits.**

29.    At a minimum, under New York law, funds deposited with Madoff are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq.* Moreover, since Madoff converted the Foundation's funds, it is also entitled to prejudgment interest. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 *U.S.* Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S. 2d 427, 428 (1st Dept. 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

30.    In a Ponzi scheme, out of pocket damages are an improper and inadequate remedy. *See, e.g., Donell v. Kowell,* 533 F.3d 762, 772 (9th Cir. 2008).    Where a Ponzi scheme is operated by an SEC-regulated broker-dealer, victims are not limited to "out-of-pocket damages." *See Visconsi v. Lehman Bros., Inc.,* No. 06-3304, 2007 WL 2258827, at *5 (6th Cir. Aug. 8, 2007).    In *Visconsi,* Lehman Brothers made the same argument that the Trustee makes here, i.e., that the plaintiffs were not entitled to any recovery because they already had withdrawn more than they had invested.    The Sixth Circuit rejected that argument because, as the court explained, the plaintiffs gave $21 million to Lehman, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a reasonable expectation that it would grow.    Thus, the out-of-pocket theory, which seeks to restore to plaintiffs only the $21 million they originally invested

less their subsequent withdrawals, is a wholly inadequate measure of damages. *Id.*

Instead, the Sixth Circuit upheld an arbitration award to the plaintiffs of "an expectancy

measure of damages, which seeks to put Plaintiffs in the position they would have held

had [the brokers] not breached their 'bargain' to invest Plaintiffs' money." *Id. Cf., S.E.C.

v. Byers*, 2009 W.L. 2185491 (S.D.N.Y.) (district court sitting in equity in non-SIPA

liquidation approved distribution to victims in Ponzi scheme whereby claims were

allowed in the amount of their net investment plus their re-invested earnings).

**F.     Mr. Picard Has No Power To Claw Back Withdrawals Beyond The Statute
Of Limitations Period And Solely For SIPC's Benefit.**

31.     In derogation of his fiduciary duty to the Stacy Foundation, Mr. Picard is,

in effect, imposing upon the Foundation a fraudulent conveyance judgment for sums that

may have been withdrawn from the Account beyond the statute of limitations period

applicable to fraudulent conveyances.  Thus, even if Mr. Picard were entitled to utilize

the fraudulent conveyance provisions of the Bankruptcy Code against customers, he

could not possibly do so beyond the applicable statute of limitations.  Yet, he apparently

has done so here and may have deprived the Foundation of SIPC insurance and the claim

to which it is entitled.

32.     Moreover, Mr. Picard has employed the avoidance powers of the

Bankruptcy Code solely for SIPC's benefit.  There is no authority in SIPA or the

Bankruptcy Code for Mr. Picard to utilize the avoidance powers of a trustee to enrich

SIPC at the Foundation's expense.  The legislative history of Sections 544, 547 and 548

of the Bankruptcy Code makes clear that the purpose of a trustee's avoidance powers is

to assure an equal distribution of a debtor's assets among its creditors. *See, e.g., 5 Collier

on Bankruptcy* ¶ 547.01 (15th ed. 2008); *see also In re Dorholt, Inc.*, 224 F.3d 871, 873

13

(8th Cir. 2000) (preferential transfer rule "is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy"); *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 656 (B.S.D.N.Y. 1996) (purpose of Section 547 is to discourage creditors from racing to the courthouse to dismember the debtor and, "[s]econd, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally") (quotations omitted).

33.    Here, however, Mr. Picard is not acting to assure equal distribution among prepetition creditors. On the contrary, he is simply acting as SIPC's agent in depriving the Foundation of the SIPC insurance to which it is statutorily entitled.

**G.    Mr. Picard Violated SIPA By Delaying Payment Of SIPC Insurance.**

34.    Mr. Picard has breached his statutory obligation to replace "promptly" a customer's securities. 15 U.S.C. § 78fff-2(b). Mr. Picard is obligated to replace the Foundation's securities up to a value of $500,000 each, as valued on the November 30, 2008 statements and as set forth on Ex. B hereto.

**III.    CONCLUSION**

35.    The Stacy Foundation reserves the right to revise, supplement, or amend these Objections, and any failure to object on any ground or grounds shall not be construed as a waiver of the Foundation's right to object on any additional grounds. To the extent applicable, the Foundation also joins in the Objections of other claimants in the same position and reserves its rights to respond to the Trustee, and to the extent it deems necessary, to file a supplemental memorandum of law.

14

36.    The Foundation reserves all rights under Rule 9014, including without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014 (2009).

37.    The Foundation reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

38.    The Foundation is entitled to an order compelling Mr. Picard and SIPC immediately to replace the securities in the Account to the extent of a valuation of $500,000, using the values as of November 30, 2008. The Foundation further seeks any and all other relief to which it may be entitled.

Dated: January 5, 2010
Atlanta, Georgia

/s/ Richard L. Brittain
Richard L. Brittain
Georgia Bar No. 083275
Bird, Loechl, Brittain & McCants, LLC
1150 Monarch Plaza
3414 Peachtree Road, NE
Atlanta, GA 30326
*E-mail address*: rbrittain@birdlawfirm.com
Telephone: (404) 264-9400
Fax: (404) 365-9731

**Copies To:**

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

Richard L. Brittain
BIRD, LOECHL, BRITTAIN & MCCANTS, LLC
1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Tel: (404) 264-9400
Fax: (404) 365-9731
Email: rbrittain@birdlawfirm.com
*Attorneys for Festus & Helen Stacy Foundation, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DIVISION OF NEW YORK
-----------------------------------------------------------x

|  |  |  |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | Adversary Proceeding No. 08-01789-BRL |
|  | : |  |
| Plaintiff, | : | SIPA Liquidation |
|  | : | **Certificate of Service** |
| v. | : |  |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | : |  |
|  | : |  |
| Defendant. | : |  |

-----------------------------------------------------------x

I, Richard L. Brittain, hereby certify that on January 5, 2010, I caused a true and correct copy of the **Opposition and Objections to Trustee Picard's Determination of Claims** on behalf of the Festus & Helen Stacy Foundation, Inc. to be filed electronically with the Court and served upon parties in this action who receive electronic service through CM/ECF, and served by express mail to:

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

January 5, 2010

/s/ Richard L. Brittain

# EXHIBIT A

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Festus & Helen Stacy Foundation, Inc.
Mailing Address: 5110 N. Federal Highway, Suite 100
City: Fort Lauderdale          State: Florida          Zip: 33308
Account No.: Please see Attachment A, Item A
Taxpayer I.D. Number (Social Security No.): ▉▉▉▉▉▉▉

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of **December 11, 2008**:

Please see

   a.   The Broker owes me a Credit (Cr.) Balance of      $Attachment A, Item B

   b.   I owe the Broker a Debit (Dr.) Balance of          $ None

   c.   If you wish to repay the Debit Balance,

         please insert the amount you wish to repay and

         attach a check payable to "Irving H. Picard, Esq.,

         Trustee for Bernard L. Madoff Investment Securities LLC."

         If you wish to make a payment, **it must be enclosed**

         with this claim form.                              $ N/A

   d.   If balance is zero, insert "None."       Please see Attachment A, Item B

502180406                                    1

2.    Claim for securities as of **December 11, 2008:**

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|   | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

Please see Attachment A, Item C

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | Number of Shares or Face Amount of Bonds | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | Please see Attachment A, Item D | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Bird, Loechl, Brittain & McCants, LLC 1150 Monarch Plaza, 3414 Peachtree Rd NE, Atlanta, GA 30326

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _2 - 2 5 - 0 9_    Signature _____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                    4

**ATTACHMENT A**
**TO CUSTOMER CLAIM FORM OF**
## FESTUS & HELEN STACY FOUNDATION, INC.
*INVESTED THROUGH ACCOUNTS OF S&P ASSOCIATES, G.P. ("S&P"),*
*ACCOUNT NOS. 1-ZA874-3-0 AND 1-ZA874-4-0*

### TOTAL NET AMOUNT OF
### INVESTMENT CONTRIBUTIONS INVESTED WITH
### BERNARD L. MADOFF INVESTMENT SECURITIES:
### $5,343,298.00

### AS REPORTED BY S&P,
### TOTAL REALIZED/UNREALIZED VALUE
### OF SUCH INVESTMENTS AS OF
### DECEMBER 31, 2008:
### $12,800,695.86

### TOTAL NET LOSS BEING CLAIMED: $12,800,695.86

**BERNARD L. MADOFF INVESTMENT SECURITIES, LLC**

Redacted

# EXHIBIT B

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FESTUS & HELEN STACY FOUNDATION, INC.
5110 N FEDERAL HWY, SUITE 100
FT LAUDERDALE, FL  33308

Dear FESTUS & HELEN STACY FOUNDATION, INC.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 005407:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_____

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: RICHARD L. BRITTAIN, BIRD, LOECHL, BRITTAIN & MCCANTS, LLC
1150 MONARCH PLAZA, 3414 PEACHTREE RD NE
ATLANTA, GA  30326