WOLFF & SAMSON PC
*Attorneys for Braymar Holdings Limited*
140 Broadway, 46th Floor
New York, NY 10005

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                       Plaintiffs,

     v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                       Defendant.

Adv. Pro. No. 08-01789

SIPA Liquidation

OBJECTION TO TRUSTEE'S
DETERMINATION OF CLAIM

---

Braymar Holdings Limited ("Braymar"), which submitted claims numbered 011628 and 011629 (the "Braymar Claims") to Irving H. Picard, the Trustee for the above-captioned liquidation, hereby objects to the Trustee's Determination of Claims dated December 8, 2009 and states as follows:

## BACKGROUND

1. On or around January 1, 2004, Braymar, through its nominee Citco Global Holdings NV, invested in the Ascot Fund Limited ("Ascot Account"), which in turn deposited 100 percent of the assets it received from Braymar with Bernard L. Madoff Investment Securities, LLC ("BLMIS").

1213586.2

2. Also on or around January 1, 2004, Braymar, through its nominee Citco Global Holdings NV, invested in the Ariel Fund Limited ("Ariel Account"), which in turn deposited approximately 30 percent of the assets it received from Braymar with BLMIS.

3. On November 30, 2008, Braymar's balance in the Ariel Account was $5,953,099.61. See Exhibit A. 29.83 percent of the Ariel fund was invested in BLMIS, which amounts to $1,775,809.62 of the Ariel Account.

4. On November 30, 2008, Braymar's balance in the Ascot Account was $7,607,561.58. See Exhibit B.

5. On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS.

6. Accordingly, Braymar filed the Braymar Claims, in the amounts of $1,775,809.62 and $7,607,561.58, based upon the balances in the Ariel Account and Ascot Account and the percentage of the Ariel and Ascot funds' investment in BLMIS, respectively. See Exhibits A and B.

7. On December 8, 2009, Braymar received two "Notices of Trustee's Determination of Claims" (the "Determination Notices"), in which the Trustee determined that Braymar did not maintain an account with BLMIS.

8. Based solely on the determination that Braymar did not maintain an account with BLMIS, the Trustee erroneously concluded that Braymar is not a "customer" of BLMIS, under 15 U.S.C. § 78*lll* (2), and denied the Braymar Claims. See Exhibits C and D.

2

## Legal Arguments

### A. The Trustee Erroneously Determined that Braymar Is Not a "Customer" Under the Securities Investor Protection Act.

9. The Securities Investor Protection Act ("SIPA") was enacted by Congress in order to protect investors' assets where the brokerages holding those assets fail. SIPA established the Securities Investor Protection Corporation "to maintain a fund for investor protection, oversee the liquidation of brokerages in a manner similar to bankruptcy proceedings, and, under certain circumstances, reimburse customers of a failed brokerage." In re Old Naples Sec., Inc., 223 F.3d 1296, 1300 (11th Cir. 2000). SIPA permits only "customers," as defined in 15 U.S.C. § 78*lll* (2), to file claims with the Trustee for any outstanding obligations by the brokerage. Id.

10. SIPA defines "customer" as follows:

> Any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for the purposes of effecting transfer. The term "customer" includes any person . . . who has deposited cash with the debtor for the purpose of purchasing securities . . . .

15 U.S.C. § 78*lll* (2).

11. Braymar was a "customer" of BLMIS according to the plain meaning of the term under SIPA. 15 U.S.C. § 78*lll* (2) ("The term "customer" includes. . . any person who has deposited cash with the debtor for the purposes of purchasing securities."); see also 15 U.S.C. § 78fff-3(a) (individual customers of a broker or dealer or bank, which conducted transactions with a SIPC debtor on behalf of those customers, are deemed separate customers of the debtor for purposes of determining whether customer is entitled to SIPC advance).

3

12. Whether a claimant "deposited cash with the debtor," under 15 U.S.C. § 78*lll* (2), does not depend on the entity to whom the claimant "handed her cash or made her check payable, or **even where the funds were initially deposited,**" but on whether there was "**actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.**" Old Naples Sec., Inc., supra, 223 F.3d at 1302 (emphasis added); see also In re Waddell Jenmar Sec., Inc., 126 B.R. 935, 939-45 (Bankr. E.D.N.C. 1991) (allowing SIPA claims by investors who made checks payable to third-party because funds were made available to the broker-dealer).

13. Here, notwithstanding the fact that Braymar did not deposit funds directly with BLMIS, it is indisputable that 100 percent of the cash funds Braymar invested in the Ascot Account and a significant portion of the funds it invested in the Ariel Account were received by BLMIS. In fact, since 100 percent of the Ascot Fund's assets were deposited with BLMIS, the Ascot Fund operated as an agent, alter ego or affiliate of BLMIS. Hence, there was "actual receipt, acquisition or possession" of Braymar's cash funds by BLMIS.

14. Furthermore, the funds Braymar deposited into the Ascot Account and Ariel Account were so deposited for the purpose of purchasing securities as defined by 15 U.S.C. § 78*lll*(14).

15. Despite the fact that BLMIS received millions of dollars of Braymar's funds, and returned none of those funds to Braymar, the Trustee baselessly denied the Braymar Claims "because [Braymar] did not have an account with BLMIS." Congress did not intend, and SIPA does not define, "customers" of a debtor to be limited to investors who maintained an account with the debtor. Had Congress so intended, 15 U.S.C. § 78*lll* (2) would have been drafted to define a "customer" as "an account-holder of the debtor."

4

16. Even if the Court finds SIPA's definition of "customer" to be imprecise, SIPA should be construed broadly to effectuate its remedial purposes. See In re Park South Securities, LLC, 326 B.R. 505 (S.D.N.Y. 2005). Although Braymar maintains that it is a "customer" of BLMIS under the statutory definition of the term, any ambiguity in that definition must be construed in favor of Braymar, an innocent investor who trusted the securities markets only to lose millions of dollars due to the failures of those markets, and the regulators who oversee them.

17. Moreover, Braymar's losses are no less authentic because it did not deposit funds into a BLMIS account. This Court is one of equity. Braymar's entire investment in the Ascot Fund and a large portion of its investment in the Ariel Fund were transferred to BLMIS and subsequently evaporated in history's largest Ponzi scheme. The Trustee's denial of the Braymar Claims, based on his determination that Braymar did not maintain an account with BLMIS, arbitrarily and unjustly bars a class of investors, whose funds were also stolen by BLMIS, from recovery from the SIPC insurance fund.

Principles of equity and justice demand that the Trustee and this Court treat Braymar, whose cash investments were acquired, received and possessed by BLMIS through a de facto agent or alter ego of BLMIS, as they would treat any investor who maintained an account with BLMIS. Allowing the Trustee's elevation of form over substance to arbitrarily deny the claims of one class of investors would contravene both the fundamental purpose of SIPA – to protect investors from failed brokerages – as well as principles of equity and justice.

## Conclusion

18. For the reasons stated, Braymar respectfully requests that the Court find that Braymar falls within the definition of Customer set forth in 15 U.S.C. § 78*lll* (2), grant the Braymar Claims and strike the Determination Notices.

19. Braymar reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Braymar's right to object on any additional grounds.

20. To the extent applicable, Braymar joins in the Objections of other claimants in a similar position and reserves its right to respond to the Trustee and to the extent it deems necessary, to file a supplemental memorandum of law.

Dated: January 6, 2010

WOLFF & SAMSON PC
*Attorneys for Braymar Holdings Limited*
140 Broadway, 46th Floor
New York, NY 10005

By: __/s/ Ronald L. Israel__
    RONALD L. ISRAEL