# Exhibit A

# BRAYMAR HOLDINGS LIMITED

Address for Correspondence:

**P.O. Box 134, Town Mills,
Trinity Square, St. Peter Port,
Guernsey GY1 3HN, U.K.**

24th June, 2009.

Telephone: (0) 1481 728228
Fax: (0) 1481 711335

REF: GRLS/CF

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC.,
Claims Processing Center,
2100 McKinney Avenue,
Suite 800,
Dallas, TX 75201,
USA.

Dear Mr. Picard,

**ARIEL FUND LIMITED**

We herewith submit our Customer Claim form and all supporting documentation in respect of our investment in the Ariel Fund Limited.

Yours sincerely,
For and on behalf of
AZURE LIMITED
As Corporate Director

P.M. WHITFORD (MRS.)
Director

Encs.

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER) THROUGH ITS CUSTODIAL AGENT, CITCO GLOBAL HOLDINGS NV (REF JPMIB)

Mailing Address: P.O. BOX 134, TOWN MILLS, TRINITY SQUARE, ST. PETER PORT,

City: GUERNSEY, CHANNEL ISLANDS    State: _____    Zip: GY1 3HN

Account No.: INVESTMENT IN ARIEL FUND LIMITED - CITCO GLOBAL CUSTODY NV -

Taxpayer I.D. Number (Social Security No.): REF JPMIB, JPMORGAN INTL. BANK, A/C
PLEASE SEE ADDITIONAL DISCLOSURE ATTACHED                    9112450

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of     $ 1,775,809.62

    b.    I owe the Broker a Debit (Dr.) Balance of     $ _____—

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.     $ _____—

    d.    If balance is zero, insert "None."     1,775,809.62

✱ PLEASE SEE ATTACHED CERTIFICATE OF
ARIEL FUND LIMITED NAV WHICH WAS USED
TO CALCULATE EXPOSURE TO BROKER

502180406

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities |  | ✕ |
| b. | I owe the Broker securities |  | ✕ |

c.    If yes to either, please list below:

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                                2

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X | *PLEASE SEE ADDITIONAL DISCLOSURE ATTACHED* |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: *OBJECTIVE INFORMATION PROVIDED BY INVESTMENT ADVISOR SPRING MOUNTAIN CAPITAL LP, 65 E 55th STREET, 33RD FLOOR, NEW YORK, NY 10022, USA BENEFICIAL OWNER, BRAYMAR HOLDINGS LIMITED, P.O. BOX 134, TOWN MILLS, TRINITY 3 SQUARE, ST. PETER PORT, GUERNSEY GY1 3HN*

502180406

*Additional Disclosure for Braymar Holdings Limited Customer Claim of Bernard L. Madoff Investment Securities, LLC*

Braymar Holdings Limited ("BHL") did not maintain a direct account with Bernard L. Madoff Investment Securities LLC ("BLMIS"). Instead, BHL invested in Ariel Fund Limited ("Ariel") under the nominee Citco Global Custody NV (ref JPMIB) which in turn, invested in BLMIS. BHL understands that Ariel invested 29.83% of its capital with BLMIS. BHL further understands that Ariel has submitted a claim in this liquidation proceeding and that the Trustee has taken the position that because those who invested with funds that had no direct contractual relationship with BLMIS and BLMIS had no record or knowledge of the investors in the fund, claims should be asserted by direct BLMIS investors such as Ariel, rather than by indirect investors such as BHL. However, BHL is also mindful of the fact that no court has adjudicated the question of whether indirect investors in BLMIS have a right to assert a claim in this proceeding, a fact which the Trustee has itself acknowledged. BHL also notes that the Trustee appears to have objected to Ariel's claim in its May 6, 2009 complaint. Accordingly, BHL submits this claim in order to preserve all of its rights to any recovery due to it in this liquidation proceeding, whether that recovery be made directly from the liquidation estate, indirectly through the Ariel claim, or in any other appropriate manner.

*Additional information requested for question 8*

As disclosed above, BHL invested with Ariel Fund Limited. This investment gave discretionary authority to the manager of Ariel Fund Limited, J. Ezra Merkin, the authority to execute securities transactions with or through the broker on Ariel Fund Limited's behalf. Mr. Merkin's contact information is the following:

J. Ezra Merkin
Gabriel Capital
450 Park Avenue
Suite 3201
New York, NY 10022
(212) 838-7200

We hereby submit our Customer Claim form in respect of our investment in the Ariel Fund Limited. The original cost of our investment was $ 4,000,000. As at 30th November, 2008 the market value was $ 5,953,099.63 as set out in the Certificate of Ariel fund Limited NAV, Appendix 1 to the letter dated 27th February, 2009 (enclosed) from Schulte Roth & Zabel LLP. The Certificate states that the Fund was 29.83% invested into Bernard L. Madoff Investment Securities LLC. Accordingly the amount claimed is $ 1,775,809.62.

We confirm that Braymar Holdings Limited received no withdrawals as requested in page 2 of the Claim form.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

For and on behalf of
AZURE LIMITED

Date _____   Signature _BRAYMAR HOLDINGS LIMITED_   Corporate Director of

Date _24 - 6 - 09_   Signature _P. W_____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

28-APR-2004  08:25   FROM CITCO TRADING DESK      TO  DOCS         P.01/19

## CITCO
*Citco Bank Nederland N.V.*

FAXED ON 24/12/03

Original Document
**Do Not Duplicate**

| | |
|---|---|
| DATE | 24-DEC-2003 |
| COMPANY | FORTIS FUND SERVICES (CAYMAN) LIMITED |
| CITY AND COUNTRY | GEORGE TOWN, CAYMAN ISLANDS |
| ATTENTION OF | TRADING DEPT-JULIET MYERS |
| FAX NUMBER | 0013459149903 |
| FROM | David Byrne |
| REFERENCE | 190181-24754-S000001 |

**Remarks: TD 2nd January 2004 Payment date: 29th December 2003 Investment in the HOT ISSUE CLASS.Thank you.**

Dear Sir / Madam,

We would like to        **buy/subscribe:**

For the countervalue of:   **USD 4'000'000.00**          (In words see below)

Four million US DOLLAR

in: **ARIEL FUND LTD SHARES**

ISIN #: QT0000677804

We expect net asset value date 02-JAN-2004 and will pay US DOLLARS for value 29-DEC-2003.
Please notify us immediately if our order will not be accepted for this net asset value date or if you require payment for a different value date.

The shares should be registered in the name of:

**CITCO GLOBAL CUSTODY NV - REF JPMIB**

| REGISTERED ADDRESS | MAILING ADDRESS |
|---|---|
| TELESTONE 8 - TELEPORT | C/O CITCO DATA PROCESSING SERVICES LTD |
| NARITAWEG 165 | 2600 CORK AIRPORT BUSINESS PARK |
| 1043BW AMSTERDAM | KINSALE ROAD |
| NETHERLANDS | CORK  IRELAND |

**Please confirm subscription details to (353 21) 4910331 (fax) or to** tradeconfirm@citco.com

Citco Bank Nederland NV Dublin

*The information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax in error, or the information contained within is in any way unclear, please immediately notify us by telephone at (353 1) 636 7100.*

*Citco Bank Nederland N.V.*
*Dublin Branch*
*Custom House Plaza Block 6*
*International Financial*
*Services Centre*
*PO Box 6689*
*Dublin 1 Ireland*

*Phone: 353 1 6367100*
*Fax: 353 1 6367102*
*BIC: CITCIE2D*
*www.citco.com*

*Citco Bank Nederland N.V. is established in Amsterdam and is registered with the Trade Registry of the Amsterdam Chamber of Commerce under number 33185291 pursuant to the terms of its Articles of Association as contained in the Deed of its Interpretation. Citco Bank Netherland N.V. Dublin Branch is registered in Dublin No. 904070*

Ref 24754 - 51

# Ariel Fund Limited

## Subscription Documents

## (FOR NON-U.S. INVESTORS)

**Registrar:**

Fortis Fund Services (Cayman) Limited
P.O. Box 2003
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman
Cayman Islands, British West Indies

9314251.2

## Ariel Fund Limited

### INVESTMENT PROCEDURES

Prospective Investors should read the Prospectus for Ariel Fund Limited (the "Fund") as well as this booklet prior to subscribing for Redeeming Participating Preference Shares (the "Shares") in the Fund.

Please complete all applicable pages as indicated below and promptly fax a copy to (345) 949-8340 and send the original copy of this booklet to Fortis Fund Services (Cayman) Limited. (the "Registrar"), P.O. Box 2003, George Town, Grand Pavilion Commercial Center, 802 West Bay Road, Grand Cayman, Cayman Islands, British West Indies, Attn: Share Registration Department to reserve Shares in the Fund:

- ☐  Background Documentation (pages 2-3)
- ☐  Investor Profile Form (page 9)
- ☐  General Eligibility Representations (page 10)
- ☐  Wiring Instructions (page 11)
- ☐  Signature Page (page 12)

Upon approval of the Investor's subscription by the Board of Directors of the Fund (the "Board of Directors" or the "Board"), a copy of the executed Signature Page will be countersigned by the Registrar and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.

**For additional information, please contact the Manager of Share Registration Services at the Registrar at (345) 949-7942.**

9314251.2

## BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations, you are required to provide the following information:

**I.    Payment Information**

    (a)    Name of the bank from which your payment to the Fund is being wired (the "Wiring Bank"):

                HSBC  BANK

    (b)    Is the Wiring Bank located in the U.S. or another "FATF Country"*?

                ✓Yes        ____ No

        If yes, please answer question (c) below.

        If no, please provide the information described in Item II below.

    (c)    Are you a customer of the Wiring Bank?

                ✓Yes        ____ No

        If yes, you may skip Item II below.

        If no, please provide the information described in Item II below.

**II.    Additional Information**

*Note: this section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the Registrar:**

**For Individual Investors**

☐    A copy of a government issued form of picture identification (*e.g.*, passport or drivers license).

☐    Proof of the individual's current address (*e.g.*, current utility bill), if not included in the form of picture identification.

---

    *    As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are: Argentina, Australia, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States.

93142512

**For Fund of Funds or Entities that Invest on Behalf of Third Parties that are Not Located in the FATF Countries**

☐   A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐   An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐   A completed copy of <u>Exhibit B</u> certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or non-U.S. anti-money laundering laws and regulations.

☐   A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

**For All Other Entity Investors**

☐   A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing), if applicable.

☐   An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐   A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

☐   If the prospective investor is a privately-held entity, a completed copy of <u>Exhibit D</u> listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐   If the prospective investor is a trust, a completed copy of <u>Exhibit E</u> listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note:   Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the Registrar. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the Fund and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.**

9314251.2

3

## Ariel Fund Limited

### SUBSCRIPTION AGREEMENT

Ariel Fund Limited
Fortis Fund Services (Cayman) Limited
P.O. Box 2003
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman
Cayman Islands, British West Indies
Attn.: Share Registration Department

**Re:    Ariel Fund Limited—Issuance of Shares**

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a shareholder of Ariel Fund Limited (the "Fund"), an exempted company incorporated in the Cayman Islands, and to purchase Redeemable Participating Preference Shares ("Shares") in the Fund upon the terms and conditions set forth herein, in the Prospectus of the Fund, as the same may be updated or modified from time to time (the " Prospectus "), and in the Memorandum of Association and the Articles of Association of the Fund, as each may be amended from time to time (collectively, and together with the Prospectus, the "Fund Documents"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Prospectus. All references herein to "dollars" or "$" are to U.S. dollars.

Accordingly, the Investor agrees as follows:

**I.    SUBSCRIPTION FOR SHARES**

(A)    The Investor agrees to become a shareholder of the Fund and, in connection therewith, subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) which can be purchased with this subscription at a purchase price of $1,000 per Share. Payment in good funds for Shares must be received prior to the closing date established by the Fund for the subscription (the "Closing Date"). Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Fund in a non-interest bearing account. The minimum initial subscription is $500,000, subject to the discretion of the board of directors of the Fund (the "Board of Directors") to accept a lower amount. At no time will the Fund accept a minimum subscription of less than $50,000.

(B)    The Investor understands and agrees that the Fund reserves the right to reject this subscription for Shares for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Fund, the Investor shall become a shareholder of the Fund and shall be subject to the terms of the Fund Documents.

**II.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR**

(A)    The Investor represents that it is not a U.S. Person.[*] The Investor (i) covenants that it will not resell, reoffer or transfer any Shares or any interest therein, except with the consent of the Fund, to a U.S. Person; (ii) acknowledges that reoffers, resales or any transfer of the Shares may be made only in compliance with applicable securities laws and only with the prior authorization of the Fund, which may, in its discretion,

---

[*]    See the section of the Prospectus captioned "Suitability ".

decline to issue any Shares to, or register Shares in the name of, any person; and (iii) agrees not to transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible investors as described in the Prospectus. The Investor understands that the Fund may compulsorily repurchase all or any portion of the Investor's Shares in accordance with the Fund Documents.

(B)    The Investor has received, carefully read and understands the Prospectus outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Fund. The Investor acknowledges that it has made an independent decision to invest in the Fund and that, in making its decision to subscribe for Shares, the Investor has relied solely upon the Fund Documents and independent investigations made by the Investor. The Investor is not relying on the Fund, the Fund's Board of Directors, Fortis Fund Services (Cayman) Limited (the "Registrar") or Gabriel Capital Corporation (the 'Investment Advisor"), or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for Shares as a result of, or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Fund is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Fund and all other information to the extent the Fund or its authorized representatives possess such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the Fund or its authorized representatives concerning the terms and conditions of the offering and other matters pertaining to this investment.

(C)    The Investor has not reproduced, duplicated or delivered the Prospectus or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the Fund.

(D)    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Fund and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the Fund or its authorized representatives to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Investor.

(E)    The Investor has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (or countries) regarding a purchase of the Shares.

(F)    The Investor is aware of the limited provisions for transferability and redemptions from the Fund and has read the sections of the Prospectus entitled "The Participating Shares – Redemption and Transfer" and "Realization, Reconversion or Deemed Disposition of Special Investments". The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the investment for an indefinite period of time.

(G)    The Investor is acquiring the Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.

9314251 3

2

(H)   The Investor understands the method of compensation by which the Investment Advisor is compensated under the Investment Management Agreement between the Investment Advisor and the Fund and understands the Investment Advisory Fee (as defined in the Prospectus) and its risks including that:

    (i)   the Investment Advisory Fee may create an incentive for the Investment Advisor to cause the Fund to make investments that are riskier or more speculative than would be the case in the absence of an Investment Advisory Fee; and

    (ii)  the Investment Advisor may receive increased compensation since the Investment Advisory Fee will be calculated on a basis which includes realized and unrealized appreciation.

(I)   The Investor understands that:

    (i)   No governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and

    (ii)  The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Fund, the Board of Directors, the Registrar and the Investment Advisor, in determining the Investor's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Investor's becoming a shareholder of the Fund.

(J)   The Investor has all requisite power, authority and capacity to acquire and hold the Shares and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Shares, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Fund or the Registrar, will furnish to the Fund a true and correct copy of any instruments governing the Investor, including all amendments thereto.

(K)   All information which the Investor has provided to the Fund or the Registrar concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(L)   The Investor understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(M)   If the Investor is a corporation, partnership, limited liability company, trust or other entity, it is not a benefit plan investor (a "Benefit Plan Investor") as defined under the Department of Labor Regulation Section 2510.3-101(f) and less than 25% of the value of each class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined). If the Investor is such an entity because 25% or more of such value is held by Benefit Plan Investors, or if the Investor becomes such an entity because 25% or more of such value is held by Benefit Plan Investors, the Investor shall forthwith disclose to the Fund the amount of such investment by Benefit Plan Investors. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely

93142512

-3-

withdraw from the Fund if 25% or more of the value of each class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined).

(N)    If the Investor is an insurance company investing the assets of its general account in the Fund, none of the Investor's general account constitutes assets of an employee benefit plan ("Employee Benefit Plan") as defined in Section 3(3) of ERISA. If the Investor is such an entity and any portion of its general account assets constitute assets of an Employee Benefit Plan (as so defined) or, at any time any portion of its general account become assets of an Employee Benefit Plan, the Investor shall forthwith disclose to the Fund the percentage of its general account assets held by Employee Benefit Plans. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely withdraw from the Fund if any portion of the Investor's general account constitutes assets of an Employee Benefit Plan.

(O)    The Investor acknowledges, understands and agrees that the Investment Advisor has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Prospectus. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the Investment Advisor obtains such products and services.

(P)    The Investor understands that the Investment Advisor may open "average" price accounts with brokers. In an "average price" account, purchase and sale orders placed during a trading day on behalf of the Fund and other clients or affiliates of the Investment Advisor and its affiliates are combined, and securities bought and sold pursuant to such orders are allocated among such accounts on an average price basis.

(Q)    The Investor acknowledges, or if the Investor is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor has advised the Beneficial Owner that (i) the Fund may enter into agreements with placement agents providing for a payment from the Investor to the particular placement agent and (ii) the Investment Advisor may agree to pay a placement agent a one-time or ongoing fee based upon the amount of the subscription amount of an Investor introduced to the Fund by the agent.

(R)    The Investor understands that Schulte Roth & Zabel LLP acts as U.S. counsel to the Fund, the Investment Advisor and its affiliates. The Investor also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Investment Advisor and its affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Fund, including the Investor, and no independent counsel has been retained to represent investors in the Fund.

(S)    The Investor understands and agrees that, although the Fund, the Investment Advisor and the Registrar will use their reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Fund, the Investment Advisor and the Registrar may present this Subscription Agreement and the information provided in answers to it to such parties (e.g., affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's subscription for Shares including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Shares, the compliance with applicable law and any relevant exemptions thereto by the Fund, the Investment Advisor, the Registrar or any of their affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Fund, the Investment Advisor, the Registrar or their affiliates are a party or by which they are or may be bound. The Fund may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

(T)    **Prospective Investors should check the OFAC website at <http://www.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts used to purchase Shares of the Fund were not and are not directly or indirectly derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and Executive Orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.* The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(i)    the Investor;

(ii)    any person controlling or controlled by the Investor;

(iii)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Fund may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor cannot make these representations, the Fund may require the redemption of the Investor's Shares.

The Investor agrees to notify the Fund promptly should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Fund may be obligated to "freeze the account" of such Investor, either by prohibiting additional subscriptions from the Investor, declining any redemption requests and/or segregating the assets in the account in compliance with governmental regulations, and the Fund may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the Fund may, by written notice to the Investor, suspend the payment of redemption proceeds payable to such Investor if the Fund reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, the Investment Advisor or any of the Fund's other service providers.

(U)    The Investor represents and warrants that, to the best of its knowledge, none of:

(i)    the Investor;

(ii)    any person controlling or controlled by the Investor;

---

* These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

9314251.2

5

(iii)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

(V)    If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Fund that:

    (i)    the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

    (ii)    the Foreign Bank employs one or more individuals on a full-time basis;

    (iii)    the Foreign Bank maintains operating records related to its banking activities;

    (iv)    the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

    (v)    the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(W)    The Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Investor's investment in the Fund was originally remitted, unless the Fund agrees otherwise.

## III.   GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Fund, the Investment Advisor, each director and officer of the Fund, the Registrar, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the U.S. Securities Act o 1933, as amended, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

---

[*]    A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[**]    "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[***]    A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

9314251.2

(B)    The Investor hereby acknowledges that the Investment Advisor, the Registrar, and each director and officer of the Fund is entitled to be indemnified out of the assets of the Fund as provided in the Fund Documents.

(C)    This Subscription Agreement (i) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Fund and its successors and assigns, (ii) shall be governed, construed, and enforced in accordance with the laws of Cayman Islands, (iii) shall survive the acceptance of the Investor as a shareholder of the Fund, and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each such person.

(D)    The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement or the Fund and any or all transactions relating hereto and thereto may be brought in the courts of Cayman Islands. The Investor hereby irrevocably (i) submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by Cayman Islands law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum and (ii) consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Investor at the address of the Investor then appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(E)    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(F)    If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the Fund may compulsorily redeem the Shares held by such Investor in accordance with the Fund Documents.

## IV.    TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Fund, the Investment Advisor, the Registrar, and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, bylaws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Fund Documents and this Subscription Agreement; (c) the Third Party acknowledges that the Fund and its

9314251.1

7

affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Fund; and (d) the Third Party is (i) an "eligible contract participant, (ii) either a Permitted U.S. Person who is an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act or a non-U.S. Person, and (iii) is eligible to receive "hot issues" because it is not a restricted person as contemplated under the rules of the National Association of Securities Dealers, Inc. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

## V.    ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Fund may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Shares or to enable the Fund to determine the Fund's, the Investment Advisor's, or the Registrar's compliance with applicable regulatory requirements or the Fund's tax status, and the Investor agrees to provide such information as may reasonably be requested.

The Investor agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

## VI.    LEGENDS

A.    If the Prospectus is issued, circulated or distributed to the Investor in the United Kingdom, the Investor hereby acknowledges that the sale of Shares pursuant to this Subscription Agreement is effected by private placing and that, accordingly, no steps have been taken in any jurisdiction that would permit the issue of any prospectus, application form, notice, circular or other invitation offering the Shares to the public for subscription or purchase, and hereby confirms and represents that the Investor is a person falling within Articles 19, 49 or 50 of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (as amended) (the "Financial Promotion Order"). The Investor undertakes not to communicate or cause to be communicated in the United Kingdom any financial promotion within the meaning of the Financial Services and Markets Act 2000 relating to the Shares other than to persons who fall within Articles 19, 49 or 50 of the Financial Promotion Order.

B.    Investors in Hong Kong shall not sell, transfer or otherwise dispose of the legal or the beneficial interest in any Shares unless such sale, transfer or disposition is to another holder of the Shares or to a person whose ordinary business it is to buy or sell shares or debentures and is subject to the condition that such person shall undertake to observe all restrictions (including the requirement to impose similar restrictions on any subsequent holder) applicable to the original holder of such Shares.

93142511.1

8

### INVESTOR PROFILE FORM

**ALL INVESTORS MUST COMPLETE THIS PAGE.**

CITCO GLOBAL CUSTODY N.V. REF JPMIB

Name of Investor (Please Print or Type)

$ 4,000,000.00

Amount of Subscription

_____
Class of Shares (If more than one class is being offered as of the Closing Date)

Type of Investor—Please check one:
- [ ] Individual
- [ ] Joint Tenants (with Rights of Survivorship)
- [ ] Tenants in Common
- [ ] Limited Liability Company
- [x] Corporation
- [ ] Partnership
- [ ] Trust
- [ ] Other:
Specify: _____

Full Mailing Address (Exactly as it should appear on labels):

- [ ] Mr.  [ ] Mrs.  [ ] Ms.  [ ] Miss  [ ] Dr.  [ ] Other _____

Mailing Address ;
Citco Data Processing Services Ltd.
2600 Cork Airport Business Park
Kinsale Road
Cork
Ireland.
Main Fax: +353-21- 4910300
Main Number: +353-21-4324700

Telephone number

Residence (if an individual) or Principal Place of Business (if an entity) Address (No P.O. Boxes Please):

Citco Global Custody N.V. REF JPMIB
Telestone 8 -Teleport
Naritaweg 165
1043BW Amsterdam
The Netherlands

Telephone number

Address of Authorized Repr.

Telephone number          Fax number

E-Mail: _____

Attention: _____

**COMMUNICATIONS TO INVESTOR**

Please send all communications to (*Initial one*):

_____ Mailing Address_____    _____ Residence or Principal Place of Business Address
Initial                              Initial

9314251.2

9

## GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.    **INVESTOR INFORMATION**

(1)    Formation Date of Entity, if applicable: ___1985___

(2)    Was the Investor referred to the Fund by a Placement Agent?    Yes___    No ✓

If yes, please provide name of Placement Agent: _____

(3)    The Investor hereby warrants and represents that:

*(Initial one and complete blanks)*

_____    (a)    if an individual, the Investor is of legal age and is a:
*(initial)*

citizen of: _____

resident of: _____

**OR**

__✓__    (b)    if a corporation, partnership, trust, or other legal entity, the Investor is:
*(initial)*

organized under the laws of: ___NEDERLANDS___

has its principal place of business in: ___AMSTERDAM___

(4)    The Investor _____ (is) __✓__ (is not) *(check one)* a "benefit plan investor" *(e.g.,* any employee pension benefit plan or employee welfare plan, such as a non-U.S. pension fund).

(5)    The Investor has received the Prospectus outside the U.S. in the following country:
___Dublin    Ireland___

(6)    The Investor has signed the Subscription Documents outside the U.S. in the following country:
___Dublin    Ireland___

9314251.2                                    10

## Wiring Instructions[*]

Chase Manhattan Bank, New York
FED.ABA No: 021000021 CHIPS Participant No: 002
SWIFT Address: CHASUS33
Account Number: 544-7-07901
INFO Fortis Bank (Cayman) Limited
Sub A/c Ariel Fund Limited and/or 238131

**\*IMPORTANT**

1.  Please have your bank identify on the wire transfer the name of the prospective Investor.

2.  We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

**CLEARED FUNDS MUST BE IN THE FUND'S ACCOUNT
TWO BUSINESS DAYS PRIOR TO THE DATE ON WHICH SHARES WILL BE ISSUED
TO THE INVESTOR**

9314251.2

11

## SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

(a)    the undersigned has carefully read and is familiar with this Subscription Agreement and the Fund Documents;

(b)    the information contained herein is complete and accurate and may be relied upon; and

(c)    the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this __24__ day of __December__ 200_3_.

INDIVIDUALS

_____
Signature

_____
Print Name

_____
Additional Investor Signature

_____
Print Name

ENTITIES
CITCO GLOBAL CUSTODY N.V. *Ref JPHIB*

_____
Print Name of Entity

By: _____
Authorized Signature    **CITCO BANK NEDERLAND N.V.**

_____
Print Name and Title

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by ARIEL FUND LIMITED**

_____
SUBSCRIPTION ACCEPTED
AS TO $_____

**ARIEL FUND LIMITED**
By: Fortis Fund Services (Cayman) Limited

By: _____

Date: _____, 200____

9314251.2

12

**EXHIBIT A**

### FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the _Custodian Bank_ CITCO GLOBAL CUSTODY N.V. *Ref JTMiO*

       *Insert Title*        *Insert Name of Entity*

CITCO BANK NEDERLAND N.V. organized under the laws of _NEDERLANDS_

*Insert Type of Entity*        *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are

directors and/or officers of the Company and that the signature at the right of said name, respectively, is

the genuine signature of said person and that the persons listed below are each an authorized signatory for

the Company.

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the _24_ day of

_December_, 200_3_

         CITCO BANK NEDERLAND N.V.

         Name:  *Print Name of Signatory #1*

         Title:  *Print Title of Signatory #1*

THE UNDERSIGNED CITCO BANK NEDERLAND N.V., a duly authorized _Custodian_

       *Insert Name of Signatory #2*      *Insert Title*

of the Company, does hereby certify that _CITCO BANK NEDERLAND N.V._ is a duly authorized

       *Insert Name of Signatory #1*

officer of CITCO GLOBAL CUSTODY N.V. *Ref JTMiO* and that the signature set forth above is [his][her] true and

   *Insert Name of Company*

correct signature.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the _24_ day

of _Dec_, 200_3_.

         CITCO BANK NEDERLAND N.V.

         Name:  *Print Name of Signatory #2*

         Title:  *Print Title of Signatory #2*

9314251.2

A-1

**EXHIBIT B**

### AML CERTIFICATION FORM FOR ENTITIES
### THAT INVEST ON BEHALF OF THIRD PARTIES

The undersigned, being the _Custodian_ of _____, CITCO GLOBAL CUSTODY N.V. *Ref JPMiB*

_Insert Title_                        _Insert Name of Entity_

CITCO BANK NEDERLAND N.V.
a _____ organized under the laws of _NEDERLANDS_

_Insert Type of Entity_                        _Insert Jurisdiction of Organization_

(the "Company"), does hereby certify on behalf of the Company that it is aware of the requirements of the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control, and other applicable U.S. federal, state or non-U.S. anti-money laundering laws and regulations (collectively, the "anti-money laundering/OFAC laws"). The Company has anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that the Fund may rely on this Certification.

The Company hereby represents to the Fund that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Fund to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Warranties of the Investor" in the Fund's Subscription Agreement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Fund should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: _24/12/03_

By: _CITCO BANK NEDERLAND N.V._
Name:
Title:

9314251.2

B-1

# CITCO
*Citco Bank Nederland N.V.*

FAXED ON 24/12/03
Original Document
**Do Not Duplicate**
PAGES 1

DATE             24-DEC-2003
COMPANY          FORTIS FUND SERVICES (CAYMAN)
CITY AND COUNTRY GEORGE TOWN, CAYMAN ISLANDS
ATTENTION OF     TRADING DEPT-JULIET MYERS
FAX NUMBER       0013459149903
FROM             David Byrne
REFERENCE        190181-24754-S000001

Remarks: TD 2nd January 2004 Payment date: 29th December 2003 Investment in the HOT ISSUE CLASS.Thank you.

Dear Sir / Madam,
We would like to     buy/subscribe:
For the countervalue of:  USD 4'000'000.00          (In words see below)
Four million US DOLLAR
in: ARIEL FUND LTD SHARES
ISIN #: QT0000677804
We expect net asset value date 02-JAN-2004 and will pay US DOLLARS for value 29-DEC-2003.
Please notify us immediately if our order will not be accepted for this net asset value date or if you require payment for a different value date.

The shares should be registered in the name of:
CITCO GLOBAL CUSTODY NV - REF JPMIB

REGISTERED ADDRESS          MAILING ADDRESS
TELESTONE 8 - TELEPORT      C/O CITCO DATA PROCESSING SERVICES LTD
NARITAWEG 165               2600 CORK AIRPORT BUSINESS PARK
1043BW AMSTERDAM            KINSALE ROAD
NETHERLANDS                 CORK  IRELAND

Please confirm subscription details to (353 21) 4910331 (fax) or to tradeconfirm@citco.com

Citco Bank Nederland NV Dublin

*This information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax in error, or the information contained within is in any way unclear please immediately notify us by telephone at (353 1) 636 7100.*

*Citco Bank Nederland N.V. Dublin Branch Custom House Plaza Block 6 International Financial Services Centre PO Box 6639 Dublin 1 Ireland*

*Phone: 353 1 6367100 Fax: 353 1 6367102 BIC: CITCIE2D www.citco.com*

*Citco Bank Nederland N.V. is established in Amsterdam and is registered with the Trade Registry of the Amsterdam Chamber of Commerce under number 33181291 pursuant to the terms of its Articles of Association as contained in the De d of its Incorporation. Citco Bank Nederland N.V. Dublin Branch is registered in Dublin No. 904070*

FORTIS FUND SERVICES (CAYMAN)
ATTN: TRADING DEPT-JULIET MYERS
PO BOX 2003 GT
GRAND PAVILLION COMM BOUGAINVILLEA
802 WEST BAY ROAD
GEORGE TOWN GRAND CAYMAN
CAYMAN ISLANDS

REF :  24754    - S000001    ARIEL FU

```
************ -COMM. JOURNAL- ************ DATE 09-JAN-2004 ***** TIME 13:40 *** *****

    MODE = MEMORY TRANSMISSION           START=09-JAN 13:26    END=09-JAN 13:40
    FILE NO.=842

STN   COMM.   ONE-TOUCH/  STATION NAME/EMAIL ADDRESS/TELEPHONE NO.   PAGES   DURATION
NO.           ABBR NO.

001   OK      ☆          90013459149903                            004/004  00:02:17
```

```
                                            -CITCO TRADING DESK     -
************ ***************************** -         - ***** -   00353163367104- *********
```

**CITCO**
*Citco Bank Nederland N.V.*

[stamp] 24 Dec 2003 Original Document Do Not Duplicate

DATE             24-DEC-2003                          PAGES  1
COMPANY          FORTIS FUND SERVICES (CAYMAN) LIMITED
CITY AND COUNTRY GEORGE TOWN, CAYMAN ISLANDS
ATTENTION OF     TRADING DEPT-JULIET MYERS
FAX NUMBER       0013459149903
FROM             David Byrne
REFERENCE        190181-24754-S000001

Remarks: TD 2nd January 2004 Payment date: 29th December 2003 Investment in the HOT
ISSUE CLASS.Thank you.
Dear Sir / Madam,
We would like to        buy/subscribe:
For the countervalue of: USD 4'000'000.00
Four million US DOLLAR                               (In words see below)
in: ARIEL FUND LTD SHARES
ISIN #: QT0000677804
We expect net asset value date 02-JAN-2004 and will pay US DOLLARS for value 29-DEC-2003.
Please notify us immediately if our order will not be accepted for this net asset value date or if you
require payment for a different value date.


The shares should be registered in the name of:
                    CITCO GLOBAL CUSTODY NV - REF JPMIB
REGISTERED ADDRESS              MAILING ADDRESS
TELESTONE 8 - TELEPORT          C/O CITCO DATA PROCESSING SERVICES LTD
NARITAWEG 165                   2600 CORK AIRPORT BUSINESS PARK
1043BW AMSTERDAM                KINSALE ROAD
NETHERLANDS                     CORK. IRELAND

Please confirm subscription details to (353 21) 4910331 (fax) or to tradeconfirm@citco.com

Citco Bank Nederland NV, Dublin

*The information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax
in error, or the information contained within is in any way unclear, please immediately notify us by telephone at (353 1) 636 7100.*

Citco Bank Nederland N.V.
Dublin Branch
Custom House Plaza Block 6
International Financial
Services Centre
PO Box 6859
Dublin 1 Ireland

Phone: 353 1 6367100
Fax: 353 1 6367102
BIC: CITCIEID
www.citco.com

Citco Bank Nederland N.V. is established in
Amsterdam and is registered with the Trade
Registry of the Amsterdam Chamber of
Commerce under number 33185291
pursuant to the laws of the Kingdom of
Netherlands as contained in the Deed of its
Incorporation. Citco Bank Nederland N.V.
Dublin Branch is registered in Dublin No. 904370

OUR REF : 10197

### Subscription Application

Ariel Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Centre
802 West Bay Road·
Grand Cayman
Cayman Islands

Dear Sirs:

We hereby subscribe for Redeemable Participating Preference Shares (the "Participating Shares") of Ariel Fund Limited (the "Fund"), on the terms of this Subscription Application and Prospectus II of the Fund, dated February  , 1996, receipt of which we hereby acknowledge.

We hereby represent that we:

1)  (a) are not a citizen or a resident of the United States of America (including the States and the District of Columbia), its possessions, its territories and other areas subject to its jurisdiction (the "United States"), a partnership, corporation or other entity created or organized in or under the laws of the United States, or an estate or trust the income of which is subject to United States federal income taxation regardless of its source (a "U.S. Person"), or (b) if we are a U.S. Person, we are purchasing the Participating Shares with funds that constitute the assets of either: (x) a "plan" as such term is defined in Section 4975 (e) (i) of the United States Internal Revenue Code, as amended from time to time, or assets of an "employee benefit plan" (as such term is defined in Section 3(3) of ERISA) whether or not subject to Title I of ERISA or assets that otherwise constitute "plan assets" within the meaning of U.S. Department of Labor Regulations Section 2510.3-101, 29 CRF Section 2510.3-101, as amended from time to time or (y) an organization described in Section 501(c) (3) of the Internal Revenue Code of 1986 as amended from time to time.

2)  will not purchase Participating Shares directly or indirectly in the United States, provided, however, that we may so purchase Participating Shares if we are a U.S. Person and are either: (a) an organization described in Section 501 (c) (3) of the Internal Revenue Code of 1986 as amended from time to time, or (b) purchasing Participating Shares with "plan assets."

3)  immediately after the purchase applied for hereby will own at least $500,000 worth of Participating Shares.

25

4)    are not a person considered to be a resident of the Cayman islands or a citizen or a resident of any jurisdiction under whose laws this subscription or receipt by us of the Prospectus would constitute an offense.

5)    are fully informed as to (a) the legal requirements within our own country for the purchase of the Participating Shares, (b) any foreign exchange restrictions applicable to us, and (c) any relevant tax considerations imposed upon us by our country.

6)    agree that the above are continuous representations, and that if any of the above become untrue, will promptly apply to the Fund for the redemption of all Participating Shares owned by us.

7)    have had an opportunity to meet with and ask questions of representatives of the Fund and the Investment Advisor to the Fund.

It is understood that the Fund may reject subscriptions, in whole or in part, for any reason it deems to be sufficient in its sole discretion and need not assign any reason therefore.

It is understood that this application is irrevocable.

It is further understood and agreed that the Fund may compulsorily redeem the Participating Shares or any other Participating Shares acquired by us under certain circumstances referred to in the Prospectus or the Articles of Association of the Fund, including, without limitation, if the holding of Participating shares by us is in any way unlawful or detrimental to the interests of the Fund.

We hereby waive the right to confidentiality conferred upon us by the Confidential Relationships (Preservation) Law of the Cayman Islands.

We understand that changes may have occurred in the Fund subsequent to the date of the Prospectus.

The following information has been completed by us and may be relied on by you for all purposes:

1.    We hereby subscribe for $4,000,000 = Participating Shares at the price of U.S.$1,000.00 per share.

2.    The full address to which any communications (including Participating Share Certificates) should be sent is

Mailing Address :
Citco Data Processing Services Ltd.
2600 Cork Airport Business Park
Kinsale Road
Cork
Ireland

HSBC Bank, 452 Fifth Avenue
New York NY 10018
SWIFT: MRMDUS33
3.   Account name   : CITCO Bank Nederland N.V. Dublin Branch
     Account Number  : 000306487
     Chips ABA      : 0108
     ABA routing no  : 021001088

any proceeds of redempt
forwarded by check to r
          Account N

ar to which
oceeds will be

This Subscription Application must be signed and must be accompanied
by evidence of payment and sent to ARIEL FUND LIMITED, c/o Fortis Fund Services (Cayman)
Limited, P.O. Box 2003, Grand Pavilion Commercial Centre  802 West Bay Road
Grand Cayman, Cayman Islands, British West Indies.

Payments for Participating Shares should be made to
Chase Manhattan Bank NY  ABA #021 000 021 for the account of Fortisbank (Cayman) Limited,
a/c No 544-7-07901 for the  sub account of Ariel Fund Limited a/c #236131

1)   For Individual Investors:

Name:_____        Date_____

Joint Owner:_____    Date 24 Dec 2003

Citco Global Custody N.V. - ref  ∫PMB
Telestone 8 -Teleport
Naritaweg 164
1043BW Amsterdam
The Nederlands

CITCO BANK NEDERLAND N.V.
Name:
Title:
By:

Name:
Title:

By execution of this Subscription Application, the person or persons
signing on behalf of the entity named above represent and warrant that they are duly
authorized to sign this Subscription Application and to purchase or redeem shares on behalf of
such entity.

27

Confirmation Report — Memory Send

Time    : 07—Jan—04  16:11
Tel line : +6387103
Name    : CBN DUBLIN

| | | |
|---|---|---|
| Job number | : | 844 |
| Date | : | 07—Jan 15:53 |
| To | : | 80013459149903 |
| Document pages | : | 04 |
| Start time | : | 07—Jan 16:10 |
| End time | : | 07—Jan 16:11 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number    : 844            *** SEND SUCCESSFUL ***

CITCO
Citco Bank Nederland v.V.

PAXED ON 24/12/0.2
Original Document
Do Not Duplicate

DATE                    24-DEC-2003
COMPANY                 FORTIS FUND SERVICES (CAYMAN)...
CITY AND COUNTRY        GEORGE TOWN, CAYMAN ISLANDS
ATTENTION OF            TRADING DEPT-/JULIET MYERS
FAX NUMBER              0013459149903
FROM                    David Byrne
REFERENCE               190181-247544-8000001

Remarks: TD 2nd January 2004 Payment date: 29th December 2003 Investment in the JEPT
ISSUE CLASS: Thank you.
Dear Sir / Madam,
We would like to        buy/subscribe:
For the countervalue of: USD 4'000'000.00            (In words see below)
Four million US DOLLAR

In: ARIEL FUND LTD SHARES
ISIN #: Q'10000577804
We expect net asset value: date 02-JAN-2004 and will pay US DOLLARS for value 29-DEC-2003.
Please notify us immediately if our order will not be accepted for this net asset value date or if you
require payment for a different value date.

The shares should be registered in the name of:
                        CITCO GLOBAL CUSTODY NV - REF JPMIB
REGISTERED ADDRESS                      MAILING ADDRESS
TELEPHONE # - TELEPORT                  CITCO DATA PROCESSING SERVICES LTD
NAARDWEG 165                            500 COBX AIRPORT BUSINESS PARK
1043BW AMSTERDAM                        KINSALE ROAD
NETHERLANDS                             CORK IRELAND

Please confirm subscription details to (353 21) 4910331 (fax) or to tradeconfirm@citco.com

Citco Bank Nederland NV Dublin

This information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax
in error, or the information contained within is in any way unclear, please immediately notify us by telephone, at (353 1) 6.6.700.

Citco Bank Nederland N.V.        Phone: 353 1 6367100
Dublin Branch                    Fax: 353 1 6367103
Custom House Plaza Block 6       BIC: CITIIE2D
International Financial          www.citco.com
Services Centre
PO Box 4650
Dublin 1 Ireland

OUR REF : 10197

## Subscription Application

Ariel Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Centre
802 West Bay Road
Grand Cayman
Cayman Islands

Dear Sirs:

We hereby subscribe for Redeemable Participating Preference Shares (the "Participating Shares") of Ariel Fund Limited (the "Fund"), on the terms of this Subscription Application and Prospectus II of the Fund, dated February  , 1996, receipt of which we hereby acknowledge.

We hereby represent that we:

1)  (a) are not a citizen or a resident of the United States of America (including the States and the District of Columbia), its possessions, its territories and other areas subject to its jurisdiction (the "United States"), a partnership, corporation or other entity created or organized in or under the laws of the United States, or an estate or trust the income of which is subject to United States federal income taxation regardless of its source (a "U.S. Person"), or (b) if we are a U.S. Person, we are purchasing the Participating Shares with funds that constitute the assets of either: (x) a "plan" as such term is defined in Section 4975 (c) (i) of the United States Internal Revenue Code, as amended from time to time, or assets of an "employee benefit plan" (as such term is defined in Section 3(3) of ERISA) whether or not subject to Title I of ERISA or assets that otherwise constitute "plan assets" within the meaning of U.S. Department of Labor Regulations Section 2510.3-101, 29 CRF Section 2510.3-101, as amended from time to time or (y) an organization described in Section 501(c) (3) of the Internal Revenue Code of 1986 as amended from time to time.

2)  will not purchase Participating Shares directly or indirectly in the United States, provided, however, that we may so purchase Participating Shares if we are a U.S. Person and are either: (a) an organization described in Section 501 (c) (3) of the Internal Revenue Code of 1986 as amended from time to time, or (b) purchasing Participating Shares with "plan assets."

3)  immediately after the purchase applied for hereby will own at least $500,000 worth of Participating Shares.

25

4)    are not a person considered to be a resident of the Cayman islands or a citizen or a resident of any jurisdiction under whose laws this subscription or receipt by us of the Prospectus would constitute an offense.

5)    are fully informed as to (a) the legal requirements within our own country for the purchase of the Participating Shares, (b) any foreign exchange restrictions applicable to us, and (c) any relevant tax considerations imposed upon us by our country.

6)    agree that the above are continuous representations, and that if any of the above become untrue, will promptly apply to the Fund for the redemption of all Participating Shares owned by us.

7)    have had an opportunity to meet with and ask questions of representatives of the Fund and the Investment Advisor to the Fund.

It is understood that the Fund may reject subscriptions, in whole or in part, for any reason it deems to be sufficient in its sole discretion and need not assign any reason therefore.

It is understood that this application is irrevocable.

It is further understood and agreed that the Fund may compulsorily redeem the Participating Shares or any other Participating Shares acquired by us under certain circumstances referred to in the Prospectus or the Articles of Association of the Fund, including, without limitation, if the holding of Participating shares by us is in any way unlawful or detrimental to the interests of the Fund.

We hereby waive the right to confidentiality conferred upon us by the Confidential Relationships (Preservation) Law of the Cayman Islands.

We understand that changes may have occurred in the Fund subsequent to the date of the Prospectus.

The following information has been completed by us and may be relied on by you for all purposes:

1.    We hereby subscribe for $4,000,000 ─ Participating Shares at the price of U.S.$1,000.00 per share.

2.    The full address to which any communications (including Participating Share Certificates) should be sent is

Mailing Address ;
Citco Data Processing Services Ltd.
2600 Cork Airport Business Park
Kinsale Road
Cork
Ireland

JAN. 30. 2001    5:43PM                                    NO.700    P.4

HSBC Bank, 452 Fifth Avenue
New York NY 10018
SWIFT: MRMDUS33

3.    Account name    : CITCO Bank Nederland N.V. Dublin Branch          r to which
any proceeds of redempl    Account Number : 000306487                              oceeds will be
forwarded by check to n    Chips ABA    : 0108
Account N:              ABA routing no : 021001088

This Subscription Application must be signed and must be accompanied by evidence of payment and sent to ARIEL FUND LIMITED, c/o Fortis Fund Services (Cayman) Limited, P.O. Box 2003, Grand Pavillon Commercial Centre  802 West Bay Road Grand Cayman, Cayman Islands, British West Indies.

Payments for Participating Shares should be made to Chase Manhattan Bank NY  ABA #021 000 021 for the account of Fortisbank (Cayman) Limited, a/c No 544-7-07901 for the  sub account of Ariel Fund Limited a/c #238131

1)    For Individual Investors:

Name:_____    Date _____

Joint Owner:_____    Date  24 Dec 2001

Citco Global Custody N.V. ~ref  JPMI B
Telestone 8 -Teleport
Naritaweg 165
1043BW Amsterdam
The Netherlands

CITCO BANK NEDERLAND N.V.
Name:
Title:

By:

Name:
Title:

By execution of this Subscription Application, the person or persons signing on behalf of the entity named above represent and warrant that they are duly authorized to sign this Subscription Application and to purchase or redeem shares on behalf of such entity.

27

# Schulte Roth&Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2431

Writer's E-mail Address
andre.weiss@srz.com

February 27, 2009

Citco Global Custody NV
c/o Citco Data Processing Services
2600 Cork Airport Business Park
Kinsale Road, P.O. Box 238
Cork
IRELAND

Dear Sirs:

We are writing to you at the request of Ariel Fund Limited ("Ariel") to discuss the advisability of filing proofs of claim in the pending liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("Madoff") under the Securities Investor Protection Act ("SIPA"). As explained below, *recent developments point to a Thursday, July 2, 2009 deadline for you to make a direct claim against the Madoff estate, if you so elect*.

We will file with the trustee appointed by the Securities Investor Protection Corporation ("SIPC") a proof of claim on behalf of Ariel for all amounts it invested with Madoff. We will not be filing claims on behalf of individual investors, but as described below, investors may file claims if they like, and have been encouraged to do so by the SIPC trustee. *The deadline for filing such claims is July 2, 2009 and the claims must reach the trustee (not merely be placed in the mailbox) by that date.*

At a meeting on February 20, the SIPC trustee indicated his view that funds that invested with Madoff, rather than the funds' ultimate investors, were the proper parties to file SIPC claims and receive distributions, i.e., a pro rata share of assets recovered plus $500,000 of SIPC insurance. Notwithstanding the trustee's position that fund investors do not meet the definition of Madoff "customers" under SIPA, *he recommended that fund investors file their own individual proofs of claim*, so that they not be barred from recovery in the event that his view of SIPA is challenged successfully in court. Against this background, we plan to indicate, in filing a proof of claim on behalf of Ariel, that our filing is not intended to, and does not, prejudice the right of any investor to file a separate proof of claim. We strongly recommend that you consult with your own attorney before filing a proof of claim.

February 27, 2009
Page 2

   Should you decide to follow the recommendation of the trustee and file your own proof of claim, you may download a claims package at the trustee's website, www.madofftrustee.com/ClaimsPackages.html. Please note that, notwithstanding the instructions on the trustee's website requesting that you provide "documentation or information regarding any withdrawals you have ever made or payments received from the Debtor," we do not believe that it is necessary for you to include such information with your claim. Instead, we suggest that you attach a copy of Appendix 1 to this letter as proof of the Net Asset Value of your investment in Ariel Fund Limited as of November 30, 2008. Please note again that the July 2, 2009 cut-off date for filing is an "in-hand" rather than mailing deadline, meaning that the trustee must have received the filing by that date.

   As you are a shareholder of a company, there may be further difficulty in sustaining your claim as a customer under SIPA.


                              Sincerely,


                              /s/ André Weiss
                              André Weiss

February 27, 2009
Page 3

**APPENDIX 1**

CERTIFICATE OF ARIEL FUND LIMITED NAV

AS AT NOVEMBER 30, 2008

FOR

Citco Global Custody NV - JPMIB
c/o Citco Data Processing Services
2600 Cork Airport Business Park
Kinsale Road, P.O. Box 238
Cork
IRELAND

As of November 30, 2008, the Net Asset Value of your investment in Ariel

Fund Limited was $5,953,099.63, of which 29.83% was invested in Bernard L. Madoff

Investment Securities LLC.

Very truly yours,
Gabriel Capital Corp.

J. Ezra Merkin
President

J.P.Morgan

# 11 | 2008

Account Number:    9112450

IBAN:    BE67 9459 1124 5000
BIC:    JPMGBEBB

J.P. Morgan International Bank Limited
1 Boulevard du Roi Albert II, B-1210 Brussels, Belgium

Confidential

# Statement of Account

01 November - 30 November 2008

## Table of Contents

| | Page |
|---|---|
| Portfolio Summary | 2 |
| Cash, Deposits & Short Term | 4 |
| Miscellaneous | 6 |
| Cash Account Transactions | 9 |

Account pledged in accordance with the Private Client Terms.
J.P. Morgan International Bank Limited ("JPMIB") with registered office at 125 London Wall, London, EC2Y 5AJ. Registration No. 3838766. Authorised and regulated by the Financial Services Authority.
Droit de timbre de 0.15 Euro payé sur declaration par J.P. Morgan International Bank Limited (Stamp duty of 0.15 EUR paid by declaration by J.P. Morgan International Bank Limited)

V.A.T. number: BE 0471.564.015 RPM Bruxelles

8X779

J.P.Morgan

J.P. Morgan International Bank Limited
1 Boulevard du Roi Albert II, B-1210 Brussels, Belgium

Statement of Account
01 November - 30 November 2008

Page 6

# 11 | 2008

Account Number:    9112450

# Miscellaneous

## Miscellaneous

| Description | Currency | Quantity/ Status | Unit Cost | Market Price Price Date | Average Cost USD | Market Value of Holdings USD/ Accrued Interest | Unrealised Gain/Loss USD: Capital (C)/ Foreign Exchange (F) | % of Portfolio |
|---|---|---|---|---|---|---|---|---|
| ARIEL FUND LTD CLASS A SERIES 2008 | USD | 6,746.68 | 592.95 | 896.04 31.10.2008 | 4,000,499.82 | 6,045,308.15 | 2,044,808.33(C) | 8.12% |
| ASCOT FUND LTD CLASS A SERIES 2008 | USD | 7,075.43 | 706.74 | 1,062.62 31.10.2008 | 5,000,499.81 | 7,518,513.04 | 2,518,013.23(C) | 10.10% |

1. DEC. 2008 11:42    CDPSL  BLACKROCK    NO. 313    P. 56

01/22/08  08:48:55
Page  10

Portfolio as per 2008 - 28/11

Bank Vontobel N.V. Dublin
Clico Global Custody N.V.
P.O.Box 659 Dublin 1 Ireland
Telephone(353 1) 6367100
Fax: (353 1) 6367100

Attn: ... INTERNATIONAL BANK LTD (BRUSSELS/CLIEUR) A
Attn: ABP SUPPORT
PO BOX 5160 RUE DE LA CONFEDER 8
GENEVA 11 CH 1211
SWITZERLAND

| INVESTMENT NAME | ISIN CODE | QUANTITY | NAV PER SHARE | NAV DATE | NET ASSET VALUE TOTAL ASSET VALUE | CURRENCY RATE NAV CURR TO USD | MARKET VALUE |
|---|---|---|---|---|---|---|---|
| ASCOT FUND LTD CLASS A SERIES 2008 | CC00B132970 | 7,075.430610 USD | 1,062.52268 | 31-OCT-08 USD | 7,518,513.00 | 1.0000 | 7,518,513.00 |
| 4RETL FUND LTD CLASS A SERIES 2008 | CCC03E123168 | 6,745.675959 USD | 896.34196 | 31-OCT-08 USD | 6,045,308.14 | 1.0000 | 6,245,308.14 |

continued on next page.

The net asset values on this portfolio statement, while believed to be reliable, are not guaranteed.

002/002

NO. 096   P. 55

05/03/09
Page   15:

Itco Bank Nederland N.V. Dublin.
Itco Global Custody N.V.
P.O. Box 669 Dublin, 1 Ireland
Telephone ...
(353 1) 6357101

Portfolio as per 2009 - 5/01.

150181 JP MORGAN INTERNATIONAL BANK LTD (BRUSSELS)/CLIENT A
Attn: NAV SUPPORT
PO BOX 5160 RUE DE
GENEVA 11 CH 1211
SWITZERLAND

| INVESTMENT NAME | ISIN CODE | QUANTITY | NAV PER SHARE | NAV RATE | TOTAL NET ASSET VALUE | CURRENCY RATE NAV CURR TO USD | MARKET VALUE |
|---|---|---|---|---|---|---|---|
| OPSI | | | | | | | |
| :CCT FUND LTD CLASS A SERIES 2008 | QTC03S132970 | 7,075.43C650 USD | 1,075.20823 30-NOV-08 USD | | 7,607,561.61 | 1.0000 | 7,607,561.61 |
| :TEI FUND LTD CLASS A SERIES 2008 | QTC03S133140 | 6,716.07970 USD | 842.37471 30-NOV-08 USD | | 5,557,695.61 | 1.0000 | 5,557,695.61 |

5. JAN. 2
continued on next page

Net asset values on this portfolio statement, while believed to be reliable, are not guaranteed.

J.P. Morgan International Bank Ltd
1 Boulevard du Roi Albert II
B-1210 Brussels - Belgium

TVA: BE 471 564 015

**JPMorgan Private Bank**

```
Date           :       26.12.03

Ref.           :    SFI 0734526

Portfolio No. :     9112450/000
```

BRAYMAR HOLDINGS LIMITED
PO BOX 154, TOWN MILLS
TRINITY SQUARE
ST PETER PORT, GUERNSEY
GY1 3HN

SUBSCRIPTION
ABSOLUTE RETURN PRODUCTS

Confirmation

FOR YOUR ACCOUNT

```
Trade date            31.12.03
Trade place           UNQUOTED SECURITIES

ARIEL FUND LIMITED              Security Number        452714-100
                   *PRELIMINARY*


Quantity                   4.000.000
Price          USD         1,00000

Gross amount                               USD    4.000.000,00
Commission                                 USD          500,00

                                           --------------------
Net amount                                 USD    4.000.500,00

By the debit of your account
9112450/011.000.840                        USD    4.000.500,00
                                           ====================
                                           Value date   29.12.03
```

With reference to the Private Client Terms (or such other agreement as we may have with you) J.P. Morgan International Bank Limited ("JPMIB") acts as principal for all
investment transactions except those in the following securities, where JPMIB acts as your agent: (i) equity securities traded in the United Kingdom, China, Ireland,
Italy, Hong Kong, Australia, the Philippines and Thailand; (ii) private equity investments; (iii) exchange traded options; (iv) market participation notes and other
structured notes (whether issued by JPMorgan or other third party entities); (v)Regulated and Unregulated Collective Investment Schemes. JPMIB may act as agent in the
exercise of rights or obligations previously acquired through the purchase or sale of derivatives.
Subscription and redemptions in shares or units of the JPMorgan Fleming funds are generally effected on a forward price basis. Transactions in regulated collective
investment schemes from non JPMorgan providers may have been executed on a forward or historic price basis; please refer to the relevant prospectus.
Further details are available on request.
All or part of this transaction may have been effected with, or through, an affiliate. JPMIB may have received payment or remuneration from another person and/or may
have shared charges with another person in respect of this transaction. JPMIB or its associates may have passed some, or all, remuneration received from its clients
to a third party as remuneration for introducing the business. Details of JPMIB's charges, any remuneration paid to, or received from, other persons and any other
fee sharing arrangements related to this transaction, are available on request.
Banking transactions are executed by JPMIB, Brussels branch. All other transactions are effected through JPMIB London branch, at 125 London Wall, London EC2Y 5AJ
(authorised and regulated by the Financial Services Authority), or its agents, for settlement with JPMIB Brussels branch. The time of execution is available on request.
IMPORTANT                                                                          This confirmation requires no signature
Please check this confirmation carefully and inform your Client Services Specialist of any error within five days after the date of the trade.

## BRAYMAR HOLDINGS LIMITED

### RESOLUTIONS OF THE FIRST DIRECTORS IN ACCORDANCE WITH THE MEMORANDUM AND ARTICLES OF ASSOCIATION OF THE COMPANY

It was noted:

1.  that the Company had been incorporated in the British Virgin Islands as an International Business Company on 2nd January 2003, company number 527077;

2.  that in accordance with Article 50 of the Articles of Association, the Subscriber to the Memorandum of Association had appointed Azure Limited as the Sole Director of the Company;

3.  that the registered office of the Company is Beaufort House, P.O. Box 438, Road Town, Tortola, British Virgin Islands;

4.  that the registered agent of the Company is Insinger Corporate Services (BVI) Limited, P.O. Box 438, Road Town, Tortola, British Virgin Islands.

5.  that an application had been received from Interco Services Limited to subscribe for 1 share in the capital of the Company;

It is hereby resolved:

1.  that Interco Services Limited be appointed Secretary of the Company;

2.  that in accordance with the Memorandum and Articles of Association, the authorised capital of the Company of US$50,000 be divided into 50,000 registered shares with a par value of US$1.00 each;

3.  that the seal, an impression of which is affixed hereto, be and is hereby adopted as the common seal of the Company;

4.  that the issue of 1 share of US$1.00 for cash at par to Interco Services Limited be approved;

5.  that the company seal be affixed to the following share certificate and that it be signed on behalf of the Company by the Director and the Secretary:

| Certificate Number | In the name of | No. of Shares | Shares Numbered |
|---|---|---|---|
| 1 | Interco Services Limited | 1 | 1 – 1 |

Signed this 15th day of January 2003

Certified as a true copy as at
23rd June, 2009.

_P. W_

_P. W_

**P.M. Whitford (Mrs.)**
Director
Azure Limited as Corporate Director

Azure Limited
Director

# Exhibit B

# BRAYMAR HOLDINGS LIMITED

Address for Correspondence:

**P.O. Box 134, Town Mills,
Trinity Square, St. Peter Port,
Guernsey GY1 3HN, U.K.**

Telephone: (0) 1481 728228
Fax: (0) 1481 711335

24th June, 2009.

REF: GRLS/CF

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC.,
Claims Processing Center,
2100 McKinney Avenue,
Suite 800,
Dallas, TX 75201,
USA.

Dear Mr. Picard,

**ASCOT FUND LIMITED**

We herewith submit our Customer Claim form and all supporting documentation in respect of our
investment in the Ariel Fund Limited.

Yours sincerely,
For and on behalf of
AZURE LIMITED
As Corporate Director

P.M. WHITFORD (MRS.)
Director

Encs.

Registered Office: Palm Grove House, P. O. Box 438, Road Town, Tortola, British Virgin Islands.

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)
Name of Customer: BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER) THROUGH ITS CUSTODIAL AGENT, CITCO GLOBAL HOLDINGS NV (REF JPMIB)
Mailing Address: P.O. BOX 134, TOWN MILLS, TRINITY SQUARE, ST. PETER PORT,
City: GUERNSEY, CHANNEL ISLANDS State: _____ Zip: GY1 3HN
Account No.: INVESTMENT IN ASCOT FUND LIMITED - CITCO GLOBAL CUSTODY NV -
Taxpayer I.D. Number (Social Security No.): REF JPMIB, JP MORGAN INTL BANK A/C
        PLEASE SEE ADDITIONAL DISCLOSURE ATTACHED        9112450

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of    $ 7,607,561.58

    b.    I owe the Broker a Debit (Dr.) Balance of    $ _____

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.    $ _____

    d.    If balance is zero, insert "None."    7,607,561.58

502180406                          1

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | | ✕ |
| b. | I owe the Broker securities | | ✕ |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                          2

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | ✕ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | ✕ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | ✕ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | ✕ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | ✕ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | ✕ PLEASE SEE ADDITIONAL DISCLOSURE ATTACHED |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | ✕ |

Please list the full name and address of anyone assisting you in the preparation of this claim form: OBJECTIVE INFORMATION PROVIDED BY INVESTMENT ADVISOR, SPRING MOUNTAIN CAPITAL LP,
65 E. 55th STREET, 33RD FLOOR, NEW YORK, NY 10022, USA
BENEFICIAL OWNER, BRAYMAR HOLDINGS LIMITED
P.O. BOX 134, TOWN MILLS TRINITY SQUARE, ST. PETER PORT,
GUERNSEY, GY1 3HN

502180406

*Additional Disclosure for Braymar Holdings Limited Customer Claim of Bernard L. Madoff Investment Securities, LLC*

Braymar Holdings Limited ("BHL") did not maintain a direct account with Bernard L. Madoff Investment Securities LLC ("BLMIS"). Instead, BHL invested in Ascot Fund Limited under the nominee Citco Global Custody NV (ref JPMIB). Ascot Fund Limited is a feeder fund to Ascot Partners, L.P. ("Ascot") which in turn, invested in BLMIS. BHL understands that Ascot invested materially all of its capital with BLMIS. BHL further understands that Ascot has submitted a claim in this liquidation proceeding and that the Trustee has taken the position that because those who invested with "feeder funds" had no direct contractual relationship with BLMIS and BLMIS had no record or knowledge of the investors in the feeder fund, claims should be asserted by direct BLMIS investors such as Ascot, rather than by indirect investors such as BHL. However, BHL is also mindful of the fact that no court has adjudicated the question of whether indirect investors in BLMIS have a right to assert a claim in this proceeding, a fact which the Trustee has itself acknowledged. BHL also notes that the Trustee appears to have objected to Ascot's claim in its May 6, 2009 complaint. Accordingly, BHL submits this claim in order to preserve all of its rights to any recovery due to it in this liquidation proceeding, whether that recovery be made directly from the liquidation estate, indirectly through the Ascot claim, or in any other appropriate manner.

### Additional information requested for question 8

As disclosed above, BHL invested with Ascot Fund Limited. This investment gave discretionary authority to the manager of Ascot Fund Limited, J. Ezra Merkin, the authority to execute securities transactions with or through the broker on Ascot Fund Limited's behalf. Mr. Merkin's contact information is the following:

J. Ezra Merkin
Gabriel Capital
450 Park Avenue
Suite 3201
New York, NY 10022
(212) 838-7200

We hereby submit our Customer Claim form in respect of our investment in the Ascot Fund Limited. The original cost of our investment was $ 5,000,000 and as at 30th November, 2008 the market value was $ 7,607,561.58. The latter amount is accordingly claimed.

We confirm that Braymar Holdings Limited received no withdrawals, as requested on page 2 of the claim form.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

For and on behalf of
AZURE LIMITED
Corporate Director oF

Date _____    Signature _BRAYMAR HOLDINGS LIMITED_

Date _24 - 6 - 09_    Signature _P. us___._

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

09-MAR-2004  17:28   FROM  CITCO TRADING DESK          TO  DOCS                P.01/23

**CITCO**
*Citco Bank Nederland N.V.*

FAXED ON  23|12|03

**Original Document**

**Do Not Duplicate**

PAGES  1

| | |
|---|---|
| DATE | 23-DEC-2003 |
| COMPANY | FORTIS FUND SERVICES (CAYMAN) LIMITED |
| CITY AND COUNTRY | GEORGE TOWN, CAYMAN ISLANDS |
| ATTENTION OF | TRADING DEPT-JULIET MYERS |
| FAX NUMBER | 0013459149903 |
| FROM | Aonghus McDonnell |
| REFERENCE | 190181-18120-S000002 |

**Remarks: REF: HOT ISSUE CLASS Subscription/Purchase form to follow by Mail**

Dear Sir / Madam,

We would like to          **buy/subscribe:**

For the countervalue of:  **USD 5'000'000.00**          (In words see below)

Five million US DOLLAR

in: **ASCOT FUND LTD PTG PREF SHS**

ISIN #: **KYG050642100**

We expect net asset value date **01-JAN-2004** and will pay US DOLLARS for value **31-DEC-2003**.
Please notify us immediately if our order will not be accepted for this net asset value date or if you
require payment for a different value date.

The shares should be registered in the name of:
**CITCO GLOBAL CUSTODY NV JPMIB**

REGISTERED ADDRESS          MAILING ADDRESS
TELESTONE 8 - TELEPORT      C/O CITCO DATA PROCESSING SERVICES LTD
NARITAWEG 165               2600 CORK AIRPORT BUSINESS PARK
1043BW AMSTERDAM            KINSALE ROAD
NETHERLANDS                 CORK  IRELAND

Please confirm subscription details to (353/21) 4910331 (fax) or to tradeconfirm@citco.com

Citco Bank Nederland NV Dublin

*The information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax
in error, or the information contained within is in any way unclear, please immediately notify us by telephone at (353 1) 636 7100.*

*Citco Bank Nederland N.V.
Dublin Branch
Custom House Plaza Block 6
International Financial
Services Centre
PO Box 6639
Dublin 1 Ireland*

*Phone: 353 1 6367100
Fax: 353 1 6367102
BIC: CITGIE2D
www.citco.com*

*Citco Bank Nederland N.V. is established in
Amsterdam and is registered with the Trade
Registry of the Amsterdam Chamber of
Commerce under number 33185291
pursuant to the terms of its Articles of
Association as contained in its Deed of its
Incorporation. Citco Bank Nederland N.V.
Dublin Branch is registered in Dublin No. 904070*

# Ascot Fund Limited

## Subscription Documents

## (FOR NON-U.S. INVESTORS)

Registrar and Transfer Agent:

Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman, Cayman Islands
British West Indies

08-MAR-2004  17:28  FROM  CITCO TRADING DESK            TO  DOCS            P.03/23

### Ascot Fund Limited

---

#### INVESTMENT PROCEDURES

Prospective Investors should read the Confidential Memorandum for Ascot Fund Limited (the "Fund") and this booklet prior to subscribing to the Fund.

If you are interested in purchasing Shares (as defined herein), please complete all applicable pages as indicated below and promptly send a copy of this booklet by facsimile and then return the original booklet by overnight courier to Fortis Fund Services (Cayman) Limited, P.O. Box 2003, Grand Pavilion Commercial Center, 802 West Bay Road, Grand Cayman, Cayman Islands, British West Indies, Attn:  Manager, Shareholder Services (the "Registrar and Transfer Agent"), Telephone (345) 949-7942, Facsimile (345) 914-9903:

- ☐   Background Documentation (pages 2-3)
- ☐   Investor Profile Form (page 9)
- ☐   General Eligibility Representations (pages 10-15)
- ☐   Wiring Instructions (page 16)
- ☐   Signature Page (page 17)

---

### BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations, you are required to provide the following information:

I.    **Payment Information**

   (a)   Name of the bank from which your payment to the Fund is being wired (the "Wiring Bank"):

   HSBC NY

   (b)   Is the Wiring Bank located in the U.S. or another "FATF Country"*?

   ✓ Yes    ___ No

   If yes, please answer question (c) below.

   If no, please provide the information described in Item II below.

   (c)   Are you a customer of the Wiring Bank?

   ✓ Yes    ___ No

   If yes, you may skip Item II below.

   If no, please provide the information described in Item II below.

II.   **Additional Information**

*Note: this section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the Registrar and Transfer Agent:**

**For Individual Investors**

☐    A certified copy of a government issued form of picture identification (*e.g.*, passport or driver's license).

☐    Proof of the individual's current address (*e.g.*, original or certified copy of a current utility bill), if not included in the form of picture identification.

---

*   As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are:  Argentina, Australia, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, Spain, Sweden, Switzerland, Turkey, United Kingdom and the United States.

---

2

**For Fund of Funds or Entities that Invest on Behalf of Third Parties that are Not Located in the FATF Countries**

- ☐ A certified copy of the certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (e.g., certificate of good standing).

- ☐ An original or certified copy of an incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

- ☐ A completed copy of Exhibit B certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or non-U.S. anti-money laundering laws and regulations.

- ☐ A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (i.e., the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

**For All Other Entity Investors**

- ☐ A certified copy of the certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (e.g., certificate of good standing), if applicable.

- ☐ An original or certified copy of an incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

- ☐ A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (i.e., the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

- ☐ If the prospective investor is a privately-held entity, a completed copy of Exhibit D listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 10% or more of any voting or non-voting class of equity interests of the prospective investor.

- ☐ If the prospective investor is a trust, a completed copy of Exhibit E listing the current beneficiaries of the trust that have, directly or indirectly, 10% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note: Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the Registrar and Transfer Agent. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the Fund and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.**

3

## Ascot Fund Limited

### SUBSCRIPTION AGREEMENT

Ascot Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman, Cayman Islands
British West Indies
Attn.: Manager, Shareholder Services
Telephone: (345) 949-7942
Facsimile: (345) 914-9903

Re:    Ascot Fund Limited—Issuance of Shares

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a shareholder of Ascot Fund Limited (the "Fund"), an exempted company incorporated in the Cayman Islands, and to purchase shares ("Shares") in the Fund upon the terms and conditions set forth herein, in the Confidential Memorandum of the Fund, as the same may be updated or modified from time to time (the "Memorandum"), and in the Memorandum of Association and the Articles of Association of the Fund, as each may be amended from time to time (collectively, and together with the Memorandum, the "Fund Documents"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Memorandum. All references herein to "dollars" or "$" are to U.S. dollars.

Accordingly, the Investor agrees as follows:

I.    **SUBSCRIPTION FOR SHARES**

(A)    The Investor agrees to become a shareholder of the Fund and, in connection therewith, subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) which can be purchased with this subscription at a purchase price of $1,000 per Share. Payment in good funds for Shares must be received prior to the closing date established by the Fund for the subscription (the "Closing Date"). Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Fund in a non-interest bearing account. The minimum initial subscription is $500,000, subject to the discretion of the board of directors of the Fund (the "Board of Directors") to accept a lower amount. At no time will the Fund accept a minimum subscription of less than $50,000.

(B)    The Investor understands and agrees that the Fund reserves the right to reject this subscription for Shares for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Fund, the Investor shall become a shareholder of the Fund and shall be subject to the terms of the Fund Documents.

II.    **REPRESENTATIONS AND COVENANTS OF THE INVESTOR**

(A)    The Investor represents that it is not a U.S. Person. The Investor (i) covenants that it will not resell, reoffer or transfer any Shares or any interest therein, except with the consent of the Fund, to a U.S. Person; (ii) acknowledges that reoffers, resales or any transfer of the Shares may be made only in compliance with applicable securities laws and only with the prior authorization of the Fund, which may, in its discretion, decline to issue any Shares to, or register Shares in the name of, any person; and (iii) agrees not to transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible investors as described in the Memorandum. The Investor understands

1

that the Fund may compulsorily repurchase all or any portion of the Investor's Shares in accordance with the Fund Documents.

(B)     The Investor has received, carefully read and understands the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Fund. The Investor acknowledges that it has made an independent decision to invest in the Fund and that, in making its decision to subscribe for Shares, the Investor has relied solely upon the Fund Documents and independent investigations made by the Investor. The Investor is not relying on the Fund, the Fund's Board of Directors, the Registrar and Transfer Agent or J. Ezra Merkin (the "General Partner"), or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for Shares as a result of, or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Fund is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Fund and all other information to the extent the Fund or its authorized representatives possess such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the Fund or its authorized representatives concerning the terms and conditions of the offering and other matters pertaining to this investment.

(C)     The Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the Fund.

(D)     The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Fund and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the Fund or its authorized representatives to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Investor.

(E)     The Investor has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (or countries) regarding a purchase of the Shares.

(F)     The Investor is aware of the limited provisions for transferability and redemptions from the Fund and has read the section of the Memorandum entitled "The Participating Shares – Redemption and Transfer." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the investment for an indefinite period of time.

(G)     The Investor understands that the Fund expects to invest substantially all of its capital through a "master-feeder" structure in Ascot Partners, L.P., a Delaware Limited Partnership (the "Partnership"). Notwithstanding the foregoing, the Fund may invest all or a portion of its securities and assets directly rather than investing through the Partnership.

(H)     The Investor is acquiring the Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.

2

(I)    The Investor understands the method of compensation under the Limited Partnership Agreement of the Partnership (the "Partnership Agreement") between the Partnership and the General Partner and understands the Investment Advisory Fee (as described in the Partnership Agreement) and its risks including that:

    (i)    the Investment Advisory Fee may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case in the absence of a Investment Advisory Fee; and

    (ii)    the General Partner may receive increased compensation since the Investment Advisory Fee will be calculated on a basis which includes realized and unrealized appreciation.

(J)    The Investor understands that:

    (i)    No governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and

    (ii)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Fund, the Board of Directors and the Registrar and Transfer Agent, in determining the Investor's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Investor's becoming a shareholder of the Fund.

(K)    The Investor has all requisite power, authority and capacity to acquire and hold the Shares and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Shares, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Fund or the Registrar and Transfer Agent, will furnish to the Fund a true and correct copy of any instruments governing the Investor, including all amendments thereto.

(L)    All information which the Investor has provided to the Fund or the Registrar and Transfer Agent concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(M)    The Investor understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(N)    If the Investor is a corporation, partnership, limited liability company, trust or other entity, it is not a benefit plan investor (a "Benefit Plan Investor") as defined under the Department of Labor Regulation Section 2510.3-101(f), and less than 25% of the value of each class of equity interests in the Investor (excluding from the computation Interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined). If the Investor is a Benefit Plan Investor because either (a) it is an employee benefit plan ("Employee Benefit Plan") within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (b) 25% or more of the value of each class of equity interests in the Investor (excluding from such computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is

3

held by Benefit Plan Investors, or if the Investor becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the Fund promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely withdraw from the Fund if the Investor is an Employee Benefit Plan or if 25% or more of the value of any class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors (as so defined).

(O)  If the Investor is an insurance company investing the assets of its general account in the Fund, none of the Investor's general account constitutes assets of an employee benefit plan ("Employee Benefit Plan") as defined in Section 3(3) of ERISA. If the Investor is such an entity and any portion of its general account assets constitute assets of an Employee Benefit Plan (as so defined) or, at any time any portion of its general account become assets of an Employee Benefit Plan, the Investor shall forthwith disclose to the Fund the percentage of its general account assets held by Employee Benefit Plans. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely withdraw from the Fund if any portion of the Investor's general account constitutes assets of an Employee Benefit Plan.

(P)  The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(Q)  The Investor understands that Schulte Roth & Zabel LLP acts as U.S. counsel to the Fund, the Partnership, the General Partner and their affiliates. The Investor also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Partnership, the General Partner and their affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Fund, including the Investor, and no independent counsel has been retained to represent investors in the Fund.

(R)  The Investor understands and agrees that, although the Fund, the General Partner and the Registrar and Transfer Agent will use their reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Fund, the General Partner and the Registrar and Transfer Agent may present this Subscription Agreement and the information provided in answers to it to such parties (e.g., affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's subscription for Shares including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Shares, the compliance with applicable law and any relevant exemptions thereto by the Fund, the General Partner, the Registrar and Transfer Agent or any of their affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Fund, the General Partner, the Registrar and Transfer Agent or their affiliates are a party or by which they are or may be bound. The Fund, the General Partner and the Registrar and Transfer Agent may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

(S)    **Prospective Investors should check the OFAC website at <http://www.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts used to purchase Shares of the Fund were not and are not directly or indirectly derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and Executive Orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.* The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(i)     the Investor;

(ii)    any person controlling or controlled by the Investor;

(iii)   if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Fund may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor cannot make these representations, the Fund may require the redemption of the Investor's Shares.

The Investor agrees to notify the Fund promptly should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Fund may be obligated to "freeze the account" of such Investor, either by prohibiting additional subscriptions from the Investor, declining any redemption requests and/or segregating the assets in the account in compliance with governmental regulations, and the Fund may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the Fund may, by written notice to the Investor, suspend the payment of redemption proceeds payable to such Investor if the Fund reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, or any of the Fund's other service providers.

(T)    The Investor represents and warrants that, to the best of its knowledge, none of:

(i)     the Investor;

(ii)    any person controlling or controlled by the Investor;

---

*     These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

5

(iii)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

(U)    If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Fund that:

(i)    the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

(ii)    the Foreign Bank employs one or more individuals on a full-time basis;

(iii)    the Foreign Bank maintains operating records related to its banking activities;

(iv)    the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

(v)    the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(V)    The Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Investor's investment in the Fund was originally remitted, unless the Fund agrees otherwise.

## III.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Fund, the Partnership, the General Partner, each director and officer of the Fund, the Registrar and Transfer Agent, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

---

[*]    A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[**]    "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[***]    A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

(B)    The Investor hereby acknowledges that the Partnership, the General Partner, the Registrar and Transfer Agent and each director and officer of the Fund are entitled to be indemnified out of the assets of the Fund as provided in the Fund Documents.

(C)    This Subscription Agreement (i) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Fund and its successors and assigns, (ii) shall be governed, construed, and enforced in accordance with the laws of Cayman Islands, (iii) shall survive the acceptance of the Investor as a shareholder of the Fund, and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each such person.

(D)    The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement or the Fund and any or all transactions relating hereto and thereto may be brought in the courts of Cayman Islands. The Investor hereby irrevocably (i) submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by Cayman Islands law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum and (ii) consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by overnight courier addressed to the Investor at the address of the Investor then appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(E)    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(F)    If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the Fund may compulsorily redeem the Shares held by such Investor in accordance with the Fund Documents.

## IV.    TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Fund, the Partnership, the General Partner, the Registrar and Transfer Agent, and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, bylaws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of

7

the Fund Documents and this Subscription Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Fund; and (d) the Third Party is (i) an "eligible contract participant" under Commodity Futures Trading Commission rules, and (ii) either a Permitted U.S. Person who is an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act or a non-U.S. Person, and (iii) is eligible to receive "hot issues" because it is not a restricted person as contemplated under the rules of the National Association of Securities Dealers, Inc. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

## V.    ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Fund may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Shares or to enable the Fund to determine the Fund's, the General Partner's, or the Registrar and Transfer Agent's compliance with applicable regulatory requirements or the Fund's tax status, and the Investor agrees to provide such information as may reasonably be requested.

The Investor agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

## VI.    LEGENDS

(A)    If the Memorandum is issued, circulated or distributed to the Investor in the United Kingdom, the Investor hereby acknowledges that the sale of Shares pursuant to this Subscription Agreement is effected by private placing and that, accordingly, no steps have been taken in any jurisdiction that would permit the issue of any prospectus, application form, notice, circular or other invitation offering the Shares to the public for subscription or purchase, and hereby confirms and represents that the Investor is a person falling within Articles 19, 49 or 50 of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (as amended) (the "Financial Promotion Order").   The Investor undertakes not to communicate or cause to be communicated in the United Kingdom any financial promotion within the meaning of the Financial Services and Markets Act 2000 relating to the Shares other than to persons who fall within Articles 19, 49 or 50 of the Financial Promotion Order.

(B)    Investors in Hong Kong shall not sell, transfer or otherwise dispose of the legal or the beneficial interest in any Shares unless such sale, transfer or disposition is to another holder of the Shares or to a person whose ordinary business it is to buy or sell shares or debentures and is subject to the condition that such person shall undertake to observe all restrictions (including the requirement to impose similar restrictions on any subsequent holder) applicable to the original holder of such Shares.

08-MAR-2004  17:28  FROM  CITCO TRADING DESK           TO  DOCS                P.14/23

## ASCOT FUND LIMITED

INVESTOR PROFILE FORM

### ALL INVESTORS MUST COMPLETE THIS PAGE.

CITCO GLOBAL CUSTODY N.V. JPMIB

Name of Investor (Please Print or Type)

$  5,000,000.

Amount of Subscription

Type of Investor—Please check one:
- [ ] Individual
- [ ] Joint Tenants (with Rights of Survivorship)
- [ ] Tenants in Common
- [ ] Limited Liability Company
- [x] Corporation
- [ ] Partnership
- [ ] Trust
- [ ] Other:
  Specify: _____

Full Mailing Address (Exactly as it should appear on labels):

Dr. [ ]   Other _____

Mailing Address :
Citco Data Processing Services Ltd.
2600 Cork Airport Business Park
Kinsale Road
Cork
Ireland
Main Fax: +353-21- 4910300
Main Number: +353-21-4324700

Telephone number                    Fax number

Citco Global Custody N.V. JPMIB .
Telestone 8 -Teleport
Naritaweg 165
1043BW Amsterdam
The Netherlands

in entity) Address (No P.O. Boxes Please):

Address of Authorized Representative/Agent (No P.O. Boxes Please):

Telephone number              Fax number

E-Mail: tradeconfirm@citco.com .

Attention: _____

### COMMUNICATIONS TO INVESTOR

Please send all communications to (*Initial one*):

_m_   Mailing Address_____   Residence or Principal Place of Business Address

*Initial*            *Initial*

9

## ASCOT FUND LIMITED

| GENERAL ELIGIBILITY REPRESENTATIONS |
|---|

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.    **INVESTOR INFORMATION**

   (1)    Formation Date of Entity, if applicable: _____ 1985 _____

   (2)    Was the Investor referred to the Fund by a Placement Agent?    Yes ___    No ✓

           If yes, please provide name of Placement Agent: _____

   (3)    The Investor hereby warrants and represents that:

           *(Initial one and complete blanks)*

           _____    (a)    If an individual, the Investor is of legal age and is a:
           *(initial)*

                              citizen of: _____

                              resident of: _____

           **OR**

           ᴧ    (b)    if a corporation, partnership, trust, or other legal entity, the Investor is:
           *(initial)*

                              organized under the laws of: THE NETHERLAND _____

                              has its principal place of business in: THE NETHERLANDS.

   (4)    The Investor _____ (is) ___✓ (is not) *(check one)* a "benefit plan investor" *(e.g.*, any
           employee pension benefit plan or employee welfare plan, including a non-U.S. pension fund).

   (5)    The Investor has received the Memorandum outside the U.S. in the following country:

           IRELAND.

   (6)    The Investor has signed the Subscription Documents outside the U.S. in the following country:

           IRELAND.

10

## ASCOT FUND LIMITED

### GENERAL ELIGIBILITY REPRESENTATIONS

**II.   QUALIFIED PURCHASER STATUS**

The Investor is a "qualified purchaser" under the Company Act (generally, $5 million in qualified investments for individuals and family entities and $25 million in qualified investments for non-family entities) as set forth herein. **Read the following representations carefully and initial each applicable statement.** The Investor certifies that:

**A.   Individuals**

_____     The Investor is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing
*Initial*      jointly) owns not less that $5,000,000 in investments.

**B.   "Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or other "Family" Entities**

_____  (1)   The Investor was not formed for the specific purpose of investing in the Fund;
*Initial*

_____  (2)   The Investor owns not less than $5,000,000 in investments; and
*Initial*

_____  (3)   The Investor is owned directly or indirectly by or for (i) two or more natural persons who are related
*Initial*         as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, (ii) spouses of such persons, (iii) the estates of such persons or (iv) foundations, Section 501(c)(3) organizations, or trusts established by or for the benefit of such persons.

**C.   Trusts (Other Than Trusts That Qualify under B or C hereof)**

_____  (1)   The Investor was not formed for the specific purpose of investing in the Fund; and
*Initial*
_____  (2)   Each trustee (or other authorized person) that is authorized and required to make decisions with
*Initial*         respect to this investment is a person described in A, B or D, at the time the decision to purchase Shares is made, and each settlor or other person who has contributed assets to the trust is a person described in A, B or D at any time such person contributed assets to the trust.

---

*        The term "investments" means any or all (1) securities (as defined in the Securities Act), except for securities of issuers controlled by the investor ("Control Securities") unless the (A) issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Exchange Act, (C) the issuer of the Control Securities has a oless of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of investor's purchase of Shares); (2) futures contracts or options thereon held for investment purposes; (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

Note:   In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.

11

08-MAR-2004  17:28  FROM  CITCO TRADING DESK                TO  DOCS                    P.17/23

## ASCOT FUND LIMITED



### GENERAL ELIGIBILITY REPRESENTATIONS

**D.    Other Entities**

(1)    The Investor was not formed for the specific purpose of investing in the Fund; and

(2)    The Investor is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

**E.    Entities That Do Not Qualify Under B-D***

The Investor is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser as described in these representations.

**F.    All Investors That Are Entities**

(1)    The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "3(c)(1) or 3(c)(7) Company"); or

(2)    The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a "Pre-April 30 Holder"); or

(3)    The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.

**G.    Investors That Checked B or C May Check G Instead Of F**

The Investor has obtained consent to its treatment as a qualified purchaser from all of its trustees, directors or general partners.

**H.    Investors That Checked F(2) Or F(3) Must Also Respond YES or NO To H**

Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7) Company that controls, is controlled by, or is under common control with the Investor?

☐ YES        ☑ NO

If the Investor cannot answer NO to H because it has a control relationship with a beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be required to obtain consent from the security-holders of such owner.

*    This certification does not apply to beneficiaries of an irrevocable trust.

12

ASCOT FUND LIMITED

GENERAL ELIGIBILITY REPRESENTATIONS

III.    ALLOCATIONS OF HOT ISSUES

The Fund from time to time may invest, directly or through partnerships or other pooled investment vehicles, in "hot issues," as defined in the rules of the NASD. In order for the Fund to determine whether the Investor is eligible to participate in profits and losses from such "hot issues," the Investor has initialed those statements below which apply to it and, if the Investor is a corporation, partnership, trust or other entity, which apply to any person having a beneficial interest in the Investor:

A.    General:

*(Initial as Appropriate)*

\_\_\_\_\_    1.    The Investor, or a person having a beneficial interest in the Investor, is a broker-dealer.

\_\_\_\_\_    2.    The Investor, or a person having a beneficial interest in the Investor, is an officer, director, general partner, employee or agent of a broker-dealer, or a person associated with a broker-dealer.*

\_\_\_\_\_    3.    The Investor, or a person having a beneficial interest in the Investor, has acted as a finder in respect of the public offering of any securities or acted in a fiduciary capacity (including, among others, attorneys, accountants and financial consultants) to the managing underwriter in any such offering.

\_\_\_\_\_    4.    The Investor, or a person having a beneficial interest in the Investor, is (i) a senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm, or any other institutional type account (including, but not limited to, hedge funds, private investment partnerships, investment corporations or investment clubs), U.S. or non-U.S., or (ii) a person in the securities department of, or an employee or a person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for, any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or other institutional type account, U.S. or non-U.S.

\_\_\_\_\_    5(a)    The Investor, or a person having a beneficial interest in the Investor, is a member of the immediate family** of an employee or agent of, or person associated with, a broker-dealer. If the foregoing statement applies to the Investor, or to a person with a beneficial interest in the Investor, the name of the broker-dealer is _____.

---

\*    For purposes of statement 2 above, "a person associated with a broker-dealer" includes every sole proprietor, partner, officer, director or branch manager of any NASD member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the NASD. For purposes of statement 2 above, broker-dealers do not include members engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

\*\*    The Investor understands that for purposes of the NASD Rules, the term "immediate family" includes parents, mother-in-law or father-in-law, husband or wife, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law, children and any other person supported, directly or indirectly to a material extent, by a person identified in statement 1 or 2 above.

13

## ASCOT FUND LIMITED

### GENERAL ELIGIBILITY REPRESENTATIONS

_____  5(b)  If 5(a) is applicable, the Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly by the immediate family member referred to in 5(a).

_____  6.  The Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly, to a material extent, by a person described in statements 3 or 4 above.

_____  7.  The Investor owns equity securities of or has contributed capital to (i) a broker-dealer or (ii) an entity which owns equity securities of or has contributed capital to a broker-dealer." The name of the broker-dealer is: _____.

_____  8.  The Investor is supported directly or indirectly, to a material extent, by an immediate family member who is a person referred to in 7 above.  The name of the broker-dealer is: _____.

OR

_/\n\_  9.  None of the above statements are applicable.

**B.  Owners, Direct or Indirect, of Securities of or Interests in Broker-Dealers:**

_If statement 7 or statement 8 has been initialed, please indicate which of the following statements are true (initial as appropriate):_

_____  A.  The Investor's interest" in the broker-dealer is passive and constitutes less than 10% of the equity interest or capital of the broker-dealer.

_____  B.  The Investor is not in a position, by virtue of its ownership interest in a broker-dealer, to direct the allocation of hot issues.

_____  C.  The shares of the broker-dealer in which the Investor has an interest, or the shares of the parent of such broker-dealer, are publicly traded on an exchange or on NASDAQ.

_____  D.  The Investor is an account established for the benefit of _bona fide_ public customers (such as an insurance company separate, general or investment account or a bank trust account).

OR

_/\n\_  E.  None of the above statements (A, B, C and D) are applicable.

---

\*    For purposes of statements 7 and 8 above, broker-dealers do not include broker-dealers engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

\*\*   The interest of the Investor in a broker-dealer as a result of an investment in an entity (the "Intermediate Owner") which owns or has contributed capital to such broker-dealer is equal to the product of the Investor's percentage interest in the Intermediate Owner and the Intermediate Owner's percentage interest in the broker-dealer.

14

## ASCOT FUND LIMITED

### GENERAL ELIGIBILITY REPRESENTATIONS

**C.    Nominees:**

*Please answer each of the following questions, if applicable*

1.    Is the Investor investing as a nominee for, or otherwise for or on behalf of, anyone other than the Investor?

_____ Yes    _____ No

2.    If the answer to question C. 1. is "yes," the person for whom the Investor is acting:

*Please check one*

_____    is an individual

_____    is an entity, but is not an investment fund

_____    is an investment fund (including any family investment vehicle, trust, hedge fund, investment club or other entity, group or association by means of which more than one individual makes investments)

**D.    Additional Information:**

If the Investor is a natural person, indicate the occupation and business affiliation of the Investor. If the Investor is a private corporation, partnership, trust, or other private entity, indicate the name(s), occupation(s) and business affiliations of all person(s) having a beneficial interest in the Investor. In the case of an Investor which is an investment fund, the Investor may either (i) provide the information requested below with respect to its beneficial owners that participate in profits and losses attributable to hot issues or (ii) if the Investor does not wish to provide such information, contact the Registrar and Transfer Agent to obtain a form of letter to be delivered to the Fund by legal counsel or independent certified public accountants to the Investor relating to participation in "hot issues".

**Name**                                                    **Occupation**

_____                    _____

_____                    _____

          The Investor hereby agrees to promptly notify the Fund should there be any change in the information set forth in this response.

15

**ASCOT FUND LIMITED**

---

**WIRING INSTRUCTIONS***

JP Morgan Chase Bank, NY
SWIFT ADDRESS: CHASUS33
ABA Number 021000021
Account Name: Fortis Bank (Cayman) Limited
Account Number: 544 707 901
SWIFT ADDRESS: FBCIKYKY
Sub Account Name: Ascot Fund Limited
Sub Account Number: 238336


*IMPORTANT

1.    Please have your bank identify on the wire transfer the name of the prospective Investor.

2.    We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

---

16

**ASCOT FUND LIMITED**

---

### SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

(a)    the undersigned has carefully read and is familiar with this Subscription Agreement and the Fund Documents;

(b).    the information contained herein is complete and accurate and may be relied upon; and

(c)    the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this 23rd day of DECEMBER, 2003.

INDIVIDUALS                                    ENTITIES

                                                        CITCO GLOBAL CUSTODY N.V. JPMIB
_____                    _____
Signature                                            Print Name of Entity
                                                        CITCO BANK NEDERLAND N.V

                                                        By: _____
_____                    Authorized Signature
Print Name

_____                    _____
Additional Investor Signature              Print Name and Title

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
To be completed by ASCOT FUND LIMITED

_____
SUBSCRIPTION ACCEPTED
AS TO $_____

ASCOT FUND LIMITED
By: FORTIS FUND SERVICES (CAYMAN) LIMITED

By: _____

Date: _____, 200____

17

08-MAR-2004  17:28  FROM  CITCO TRADING DESK         TO  DOCS              P.23/23

**AML CERTIFICATION FORM FOR ENTITIES**
**THAT INVEST ON BEHALF OF THIRD PARTIES**

The undersigned, being the _____ of CITCO GLOBAL CUSTODY N.V. JPM iB ,

                *Insert Title*                *Insert Name of Entity*

a  BANK  organized under the laws of  THE NETHERLANDS.

  *Insert Type of Entity*                          *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that it is aware of the requirements of the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control, and other applicable U.S. federal, state or non-U.S. anti-money laundering laws and regulations (collectively, the "anti-money laundering/OFAC laws"). The Company has anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that the Fund may rely on this Certification.

      The Company hereby represents to the Fund that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Fund to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Warranties of the Investor" in the Fund's Subscription Agreement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Fund should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: 23|12|03

By: _____
    CITCO BANK NEDERLAND N.V
    Name:
    Title:

B-1

TOTAL P.23

************ –COMM. JOURNAL– ************ DATE 05-JAN-2004 ***** TIME 15:59 **** ***

MODE = MEMORY TRANSMISSION          START=05-JAN 15:57   END=05-JAN 15:59

FILE NO.=548

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL. NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | * | 90013459149903 | 004/004 | 00:01:12 |

–CITCO BANK

## CITCO
*Citco Bank Nederland N.V.*

FAXED ON 23/12/03
Original Document
Do Not Duplicate
PAGES

DATE               23-DEC-2003
COMPANY            FORTIS FUND SERVICES (CAYMAN)
CITY AND COUNTRY   GEORGE TOWN, CAYMAN ISLANDS
ATTENTION OF       TRADING DEPT-JULIET MYERS
FAX NUMBER         0013459149903
FROM               Aonghus McDonnell
REFERENCE          190181-18120-S000002

**Remarks: REF: HOT ISSUE CLASS Subscription/Purchase form to follow by Mail**

Dear Sir / Madam,
We would like to      **buy/subscribe:**
For the countervalue of:  USD 5'000'000.00      (In words see below)
Five million US DOLLAR
in: ASCOT FUND LTD FTG PREF SHS
ISIN #: KYG050642100
We expect net asset value date 01-JAN-2004 and will pay US DOLLARS for value 31-DEC-2003.
Please notify us immediately if your order will not be accepted for this net asset value date or if you
require payment for a different value date.

The shares should be registered in the name of:
**CITCO GLOBAL CUSTODY NV JPMIB**

REGISTERED ADDRESS        MAILING ADDRESS
TELESTONE 8 - TELEPORT    C/O CITCO DATA PROCESSING SERVICES LTD
NARITAWEG 165             2600 CORK AIRPORT BUSINESS PARK
1043BW AMSTERDAM          KINSALE ROAD
NETHERLANDS               CORK IRELAND

Please confirm subscription details to (353 21) 491xxx (fax) or to tradeconfirm@citco.com

Citco Bank Nederland NV Dublin

*The information contained in this fax is private and confidential and intended only for the addressee. If you have received this fax
in error, or the information contained within is in any way unclear, please immediately notify us by telephone at (353 1) 436 7100.*

Citco Bank Nederland N.V.
Dublin Branch
Custom House Plaza Block 6
International Financial
Services Centre
PO Box 6639
Dublin 1 Ireland

Phone: 353 1 636/7100
Fax: 353 1 636/7102
BIC: CITCIEED
www.citco.com

Citco Bank Nederland N.V. is established in
Amsterdam and is registered with the Trade
Registry of the Amsterdam Chamber of
Commerce under number 33145191
pursuant to the terms of the Articles of
Association as amended in the Deed of In-
corporation. Citco Bank Nederland N.V.
Dublin Branch is registered in Dublin No. 905270

**J.P. Morgan International Bank Limited**
**1 Boulevard du Roi Albert II, B-1210 Brussels, Belgium**

J.P.Morgan

# 11 | 2008

Account Number:    9112450

Confidential

BIC:    JPMGBEBB
IBAN:    BE67 9459 1124 5000

# Statement of Account

01 November - 30 November 2008

## Table of Contents

|                              | Page |
|------------------------------|------|
| Portfolio Summary            | 2    |
| Cash, Deposits & Short Term  | 4    |
| Miscellaneous                | 6    |
| Cash Account Transactions    | 9    |

Account pledged in accordance with the Private Client Terms.
J.P. Morgan International Bank Limited ("JPMIB") with registered office at 125 London Wall, London, EC2Y 5AJ. Registration No. 3838766. Authorised and regulated by the Financial Services Authority.
Droit de timbre de 0.15 Euro payé sur déclaration par J.P. Morgan International Bank Limited (Stamp duty of 0.15 EUR paid by declaration by J.P. Morgan International Bank Limited)

V.A.T. number: BE 0471.564.015 RPM Bruxelles

8X779

# 11 | 2008

**J.P.Morgan**

J.P. Morgan International Bank Limited
1 Boulevard du Roi Albert II, B-1210 Brussels, Belgium

**Statement of Account**
01 November - 30 November 2008

Account Number:    9112450

Page 6

## Miscellaneous

### Miscellaneous

| Description | Currency | Quantity Status | Unit Cost | Market Price / Price Date | Average Cost USD | Market Value of Holdings USD / Accrued Interest | Unrealised Gain/Loss USD - Series (U) / Foreign Exchange (F) | % of Portfolio |
|---|---|---|---|---|---|---|---|---|
| ARIEL FUND LTD CLASS A SERIES 2008 | USD | 6,746.68 | 592.96 | 896.04 31.10.2008 | 4,000,499.82 | 6,045,308.15 | 2,044,808.33(C) | 8.12% |
| ASCOT FUND LTD CLASS A SERIES 2008 | USD | 7,075.43 | 706.74 | 1,062.62 31.10.2008 | 5,000,499.81 | 7,518,513.04 | 2,518,013.23(C) | 10.10% |

Cisco Global Custody B.V. Dublin
P.O.Box 6639 Dublin 2, Ireland
Telephone (353 1) 6361100
Fax: (353 1) 6361103

Portfolio as per 2008 - 28/11

01/12/08      08:48:53
Page      10

NOMURA INTERNATIONAL BANK LTD (BRUSSELS)/CLIENT A
Attn: AIM SUPPORT
PO BOX 5160 RUE DE LA CONFEDER &
GENEVA 11 CH 1211
SWITZERLAND

| INVESTMENT NAME | ISIN CODE | QUANTITY | NAV PER SHARE | NAV DATE | TOTAL NET ASSET VALUE | CURRENCY RATE NAV CURR TO USD | MARKET VALUE |
|---|---|---|---|---|---|---|---|
| ASCOT FUND LTD CLASS A SERIES 2008 | CC002813329070 | 1,375.43061D USD | 1,062.62269 | 31-OCT-08 USD | 7,518,513.09 | 1.0000 | 7,518,513.00 |
| ARIEL FUND LTD CLASS A SERIES 2008 | QTC03813329168 | 6,746.679750 USD | 896.74156 | 31-OCT-08 USD | 6,045,509.14 | 1.0000 | 6,045,509.14 |

continued on next page.

The net asset values on this portfolio statement, while believed to be reliable, are not guaranteed.

Ø002/002

5. JAN. 2                                                                    NO. 096    P. 55

Fortis Bank (Nederland) N.V. Dublin                                        05/01/09    09:37:19
Fortis Global Custody N.V.                                                 Page        1:
P.O.Box 6639 Dublin 1 Ireland
Telephone: 0: ::: ::::::
(353 1) 6367101

Portfolio as per 2009 - 5/01

JP MORGAN INTERNATIONAL BANK LTD    ISIN/SSELSI/CLIENT A
Att: APF SUPPORT
PO BOX 5160 RUE DE
GENEVA 11    CH 1211
SWITZERLAND

| INVESTMENT NAME | ISIN CODE | QUANTITY | NAV PER SHARE | NAV DATE | TOTAL NET ASSET VALUE | CURRENCY RATE NAV CURR TO USD | MARKET VALUE |
|---|---|---|---|---|---|---|---|
| PSI FED LTD CLASS A SERIES 2008 | QT000812970 | 7,075.436610 USD | 1,055.20829 30-NOV-08 USD | | 7,467,561.61 | 1.0000 | 7,467,561.61 |
| IFL FUND LTD CLASS A SERIES 2008 | QT008131160 | 6,746.679360 USD | 882.57671 30-NOV-08 USD | | 5,953,099.61 | 1.0000 | 5,953,099.61 |

It is not asset values on this portfolio statement, while believed to be reliable, are not guaranteed.

It not asset values on next page.

continued on next page.

J.P. Morgan International Bank Ltd
1 Boulevard du Roi Albert II
B-1210 Brussels - Belgium

TVA: BE 471 564 015

**JPMorgan Private Bank**

| Date | : | 23.12.03 |
| Ref. | : | SFI 0734162 |
| Portfolio No. | : | 9112450/000 |

BRAYMAR HOLDINGS LIMITED
PO BOX 134, TOWN MILLS
TRINITY SQUARE
ST PETER PORT, GUERNSEY
GY1 3HN

SUBSCRIPTION
ABSOLUTE RETURN PRODUCTS

Confirmation

FOR YOUR ACCOUNT

Trade date       31.12.03
Trade place      UNQUOTED SECURITIES

ASCOT FUND LIMITED                    Security Number      452715-100
                 *PRELIMINARY*

Quantity                    5.000.000
Price            USD        1,00000

Gross amount                                    USD      5.000.000,00
Commission                                      USD            500,00
                                                --------------------
Net amount                                      USD      5.000.500,00

By the debit of your account
9112450/011.000.840                             USD      5.000.500,00
                                                ====================
                                                Value date   31.12.03

With reference to the Private Client Terms (or such other agreement as we may have with you) J.P.Morgan International Bank Limited ("JPMIB") acts as principal for all
investment transactions except those in the following securities, where JPMIB acts as your agent: (i) equity securities traded in the United Kingdom, China, Ireland,
Italy, Hong Kong, Australia, the Philippines and Thailand; (ii) private equity investments; (iii) exchange traded options; (iv) market participation notes and other
structured notes (whether issued by JPMorgan or other third party entities); (v)Regulated and Unregulated Collective Investment Schemes. JPMIB may act as agent in the
exercise of rights or obligations previously acquired through the purchase or sale of derivatives.
Subscription and redemptions in shares or units of the JPMorgan Fleming funds are generally effected on a forward price basis. Transactions in regulated collective
investment schemes from non JPMorgan providers may have been executed on a forward or historic price basis; please refer to the relevant prospectus.
Further details are available on request.
All or part of this transaction may have been effected with, or through, an affiliate. JPMIB may have received payment or remuneration from another person and/or may
have shared charges with another person in respect of this transaction. JPMIB or its associates may have passed some, or all, remuneration received from its clients
to a third party as remuneration for introducing the business. Details of JPMIB's charges, any remuneration paid to, or received from, other persons and any other
fee sharing arrangements related to this transaction, are available on request.
Banking transactions are executed by JPMIB, Brussels branch. All other transactions are effected through JPMIB London branch, at 125 London Wall, London EC2Y 5AJ
(authorised and regulated by the Financial Services Authority), or its agents, for settlement with JPMIB Brussels branch. The time of execution is available on request.
**IMPORTANT**                                                                    This confirmation requires no signature
Please check this confirmation carefully and inform your Client Services Specialist of any error within five days after the date of the trade.

## BRAYMAR HOLDINGS LIMITED

### RESOLUTIONS OF THE FIRST DIRECTORS IN ACCORDANCE WITH THE MEMORANDUM AND ARTICLES OF ASSOCIATION OF THE COMPANY

It was noted:

1. that the Company had been incorporated in the British Virgin Islands as an International Business Company on 2nd January 2003, company number 527077;

2. that in accordance with Article 50 of the Articles of Association, the Subscriber to the Memorandum of Association had appointed Azure Limited as the Sole Director of the Company;

3. that the registered office of the Company is Beaufort House, P.O. Box 438, Road Town, Tortola, British Virgin Islands;

4. that the registered agent of the Company is Insinger Corporate Services (BVI) Limited, P.O. Box 438, Road Town, Tortola, British Virgin Islands.

5. that an application had been received from Interco Services Limited to subscribe for 1 share in the capital of the Company;

It is hereby resolved:

1. that Interco Services Limited be appointed Secretary of the Company;

2. that in accordance with the Memorandum and Articles of Association, the authorised capital of the Company of US$50,000 be divided into 50,000 registered shares with a par value of US$1.00 each;

3. that the seal, an impression of which is affixed hereto, be and is hereby adopted as the common seal of the Company;

4. that the issue of 1 share of US$1.00 for cash at par to Interco Services Limited be approved;

5. that the company seal be affixed to the following share certificate and that it be signed on behalf of the Company by the Director and the Secretary:

| Certificate Number | In the name of | No. of Shares | Shares Numbered |
|---|---|---|---|
| 1 | Interco Services Limited | 1 | 1 – 1 |

Signed this 15th day of January 2003

*P. W——*

Azure Limited
Director

Certified as a true copy as at
23rd June, 2009

*f. W——*

P.M. Whitford (Mrs.)
Director
Azure Limited as Corporate Director

# Exhibit C

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM    *14 DEC 2009*

December 8, 2009

BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER)
P O BOX 134, TOWN MILLS, TRINITY SQUARE
ST PETER PORT
GUERNSEY 941 3HN
CHANNEL ISLANDS

Dear BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER) THROUGH ITS
CUSTODIAL AGENT, CITCO GLOBAL HOLDINGS NV:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT
SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the
Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern District of
New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 011628:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are not a
customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly,
your Claim for securities and/or a credit balance is **DENIED**.

---

1 Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is
filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court
"in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced
before the date on which such application was filed, the term 'filing date' means the date on which such proceeding
was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on
December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

2

# Exhibit D

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008[1]**

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009                                                                 **1 4 DEC 2009**

BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER)
P O BOX 134, TOWN MILLS, TRINITY SQUARE
ST PETER PORT
GUERNSEY  941 3HN
CHANNEL ISLANDS

Dear BRAYMAR HOLDINGS LIMITED (BENEFICIAL OWNER) THROUGH ITS
CUSTODIAL AGENT, CITCO GLOBAL HOLDINGS NV (REF JPMIB):

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT
SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the
Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern District of
New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 011629:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are not a
customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly,
your Claim for securities and/or a credit balance is **DENIED**.

---

1 Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is
filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court
"in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced
before the date on which such application was filed, the term 'filing date' means the date on which such proceeding
was commenced." Section 78lll(7)(B).  Thus, even though the Application for a protective decree was filed on
December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York  10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

2