JAN - 6 2010

M.G.L Zeevi Invest Ltd.
c/o M. Seligman & Co.
23 Menahem Begin Rd.
p.o.b. 36090,
Tel-Aviv, 66184
Israel

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**THE HONORABLE BANKRUPTCY JUDGE**
**BURTON R. LIFLAND**

SECURITIES INVESTOR PROTECTION
CORPORATION,

   Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

   Defendant,

In re:

BERNARD L. MADOFF,

   Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

### WRITTEN OPPOSITION TO THE TRUSTEE'S DETERMINATION IN OUR CLAIM

We had indirectly invested in BERNARD L. MADOFF INVESTMENT SECURITIES LLC (hereinafter: "**BLMIS**") a sum of $154,664.35, all of which was lost, with no offsetting gains, due to the BLMIS Ponzi scheme (the "**Lost Funds**").

1. The Lost Funds were held in an account with UBS Bank (Zurich) and were invested in units of Fairfield Sentry Fund ("**Fairfield**"). 117.61 units were purchased on November 15th, 2007 and though we issued a 'sell' order on December 12th, 2008, we have never received any of our money back.

2. We understand that UBS Bank (Zurich) held the units in the name of their custodian CITCO.

See documents enclosed as **Exhibit 'A'** to this Opposition.

3. As it turned out, Fairfield was a Madoff "feeder funds" and the vast majority of the funds held by it were deposited into BLMIS. Per Fairfield's letter to shareholders dated February 6, 2009,

Fairfield's BLMIS account numbers are 1-FN012-3-0; 1-FN045-3-0; 1-FN-069-4-0; and 1-FN-070-4-0

See documents enclosed as **Exhibit 'B'** to this Opposition.

4. Despite numerous requests, we have not been able to obtain further information regarding the nature of Fairfield's indirect holdings with BLMIS such as the BLMIS account number used.

5. **Our Claim:**

Due to the reasons detailed above, we had filed a claim with regard to our Investment with the Trustee (hereinafter: "**the Claim**").

See documents enclosed as **Exhibit 'C'** to this Opposition.

6. **The Trustee Had Erred In Deciding That We Are Not A "Customer" of BLMIS Under SIPA:**

In his decision dated December 8, 2009, received by us on December 16, 2009, or thereabouts, the Trustee had denied the Claim finding that we did not have an account with BLMIS and thus are not considered a "customer" of BLMIS as this term is defined at 15 U.S.C. § 78/// (2).

With all due respect, the Trustee's said decision is erroneous in all of its aspects, as we shall demonstrate below.

**A. BLMIS is directly liable towards us under the law of Torts:**

The first major flaw in the Trustee's decision is that the denial of our Claim cannot be based solely on the finding whether we are a "Customer" of BLMIS as this term is defined at 15 U.S.C. § 78/// (2) or not.

Regardless of the finding of whether we are a "Customer" of BLMIS or not, BLMIS is still liable towards us due to the fact that it had fraudulently extracted monies from us through criminal offense.

At the outset we had invested in BLMIS based on false representations that the monies were to be invested in what we believed to be a lawful and legitimate investment fund.

As it had *ex-post* been discovered, the monies were extracted within the framework of an elaborate Ponzi scheme.

Accordingly, we, as all other investors in BLMIS, fell victim to fraud, and thus had sustained damages due to tort in the full amount of our Investment.

The fact that we had executed our Investment through a "feeder fund" is irrelevant. The "feeder fund" had served as a mere pipeline for our investment in BLMIS, and it was clear at

the outset to all parties involved, including BLMIS, that our Investment, as all investments in BLMIS through the various existing investment vehicles, was indeed an investment in BLMIS.

Moreover, it was explicitly known to BLMIS that its criminal behavior will lead to damages, which we will directly and personally sustain, regardless of the investment vehicle.

Accordingly, BLMIS had a duty of care, as well as fiduciary duties towards us, irrespective of our investment vehicle.

Its fraudulent and criminal conduct left no doubt whatsoever that BLMIS had been in blatant breach of its said duties, *inter alia*, towards us.

Accordingly, and solely in light of the reasons detailed above, the Honorable Court is requested to find that the Trustee had erred in his decision to deny our Claim.

**B. We are a "Customer" as this term is defined at 15 U.S.C. § 78/// (2):**

Without derogating from the above we shall further argue that the Trustee had erroneously found that we are not a "Customer", as this term is defined at 15 U.S.C. § 78/// (2).

Indeed we had invested in BLMIS through a "feeder fund". However, the "feeder fund" had served as a mere pipeline for our investment in BLMIS, and it was clear at the outset to all parties involved, including BLMIS, that our Investment, as all investments in BLMIS through the various existing investment vehicles, was indeed an investment in BLMIS.

It is inappropriate and unjustified to treat the Investment any differently than any other investment in BLMIS, merely on the basis of the vehicle through which it had been executed.

Ultimately, BLMIS received numerous investments through a wide variety of vehicles, instituted in order to allow various portfolio managers to invest therein.

All of the said investments have two basic and fundamental facts in common, as follows:

  a) All had been performed knowingly **in BLMIS**, regardless of the vehicle;
  b) All were victimized by Mr. Madoff's Ponzi scheme.

These facts negate the possibility that the investment vehicle be the only reason that two identical investments in BLMIS be treated differently.

Moreover, the language of 15 U.S.C. § 78/// (2) clearly supports our understanding that we indeed are a "Customer" of BLMIS under SIPA.

In 15 U.S.C. § 78/// (2) it is stated that *"any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of*

*effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities...".*

In the matter at hand, we had clearly deposited cash with BLMIS for the purpose of purchasing securities. The fact that BLMIS had misused the money it had received does not derogate from the said definition (it could only reinforce our Claim against it).

It is further clear that in the matter at hand the monies we had deposited with BLMIS were invested therein in its regular course of business, for safekeeping, with a view to sale / purchase / transfer.

Accordingly, and solely in light of the reasons detailed in this chapter above, the Honorable Court is requested to find that the Trustee had erred in his decision to deny our Claim.

**C. We Do Have An Account With BLMIS:**

Without derogating from the above we shall further argue that the Trustee erred in finding that we do not have an account with BLMIS.

As detailed within the framework of the Claim as well as within this Opposition above, the investment vehicle through which we had invested in BLMIS, has explicitly an account with BLMIS. Fairfield's BLMIS account numbers are 1-FN012-3-0; 1-FN045-3-0; 1-FN-069-4-0; and 1-FN-070-4-0.

Accordingly, and solely in light of the reasons detailed in this chapter above, the Honorable Court is requested to find that the Trustee had erred in his decision to deny our Claim.

**D. Preservation of Rights:**

Without derogating from the above and due to reasons of legal caution alone we shall further argue that in the event that despite the above the Honorable Court finds that the Trustee had not erred in interpreting 15 U.S.C. § 78/// (2) and implementing it to the matter at hand (a position which is in itself denied), this Opposition is filed in order to preserve our rights until the letter of 15 U.S.C. § 78/// (2) is reinterpreted or broadened in a manner that recognizes us as "customers" of BLMIS.

Yours sincerely,

*[signature]*

M.G.L Zeevi Invest Ltd.

CC:

Mr. Irving H. Picard
BLMIS Trustee

# ❊ UBS

UBS Connect Hotline +41 848 80 00 50

| | | |
|---|---|---|
| M.G.L. Zeevi Investm.Ltd | Banking relationship: | 0206-392740 |
| 69362 Tel Aviv  ISRAEL | | |
| | As of: | 30.12.2009 |
| | Valued in: | USD |

## Securities information

| Ccy. | Description | Security/ISIN | Duration |
|---|---|---|---|
| USD | Shs Fairfield Sentry Ltd<br>reliable market value n.a.<br>0206-392740.S1 | 994280<br>VGG3299L1004 | |

### Transaction

| Date | | Description<br>Transaction no. | Ccy. | Number/Amount Ccy. | Trans. price<br>Exchange rate |
|---|---|---|---|---|---|
| Trade date | 01.11.2007 | Purchase from Issue | | 117.611 USD | 1'275.389291 |
| Booking | 15.11.2007 | Fairfield Sentry | | | |
| Value date | 15.11.2007 | WS00900BOLC52663 | | | |

| Account | Custody account |
|---|---|
| 0206-392740.60 P | 0206-392740.S1 |

### Order

| | |
|---|---|
| Receipt of order | 15.11.2007 |
| Origin of order | regular call |
| Entered by | Mastel Céline |

### Trades

| City | Time | Number/Amount Ccy. | Price |
|---|---|---|---|
| XDUB | | 117 USD | 1'275.38 |

### Settlement details

Valued in USD

| | | |
|---|---|---|
| Transaction value | USD | 149'999.81 |
| Accrued interest | | |

Costs and expenses
| | | |
|---|---|---|
| Brokerage | USD | 1'500 |
| Costs/Expenses | USD | 254.06 |
| Money compensation | | |

Taxes
not refundable
refundable
Withholding tax

| | | |
|---|---|---|
| Settlement amount | USD | 1'753.87 |

**Client Information**
Portfolio no. 206-392740-01
M.G.L. Zeevi Investm.Ltd
69362 Tel Aviv  ISRAEL
Statement of Assets as of 31 December 2008
Produced on 2 January 2009

## Detailed Positions by Investment Category

Valued in USD

| Number/Amount | Description | | Cost Price<br>Exchange Rate<br>Yield | Market Price<br>Exchange Rate<br>Date<br>Profit/Loss | Market Value<br>Accrued Interest | % of<br>NA |
|---|---|---|---|---|---|---|
| **Equities and Similar Investments** | | | | | | |
| **Guernsey** | | | | | | |
| 50 000 | Shs PFB Data Centre Fund Ltd<br>class -A-<br>Security No. 3597692 | GBP | 1<br>2.01955 | 1.0183<br>1.43775<br>11.06.2008<br>-27.51% | 73 203 | 9.46 |
| **Subtotal Guernsey** | | | | | 73 203<br>0 | 9.46<br>0.00 |
| **Total Equities and Similar Investments** | | | | | 73 203 | 9.46 |
| **Total Accrued Interest Equities and Similar Investments** | | | | | 0 | 0.00 |
| **Alternative Investments** | | | | | | |
| **Hedge Funds** | | | | | | |
| | 117.611 | Shs Fairfield Sentry Ltd<br>reliable market value n.a.<br>Security No. 994280 | USD | 1 275.389 | n.a. | 0 | 0.00 |
| **Subtotal Hedge Funds** | | | | | 0<br>0 | 0.00<br>0.00 |
| **Total Alternative Investments** | | | | | 0 | 0.00 |
| **Total Accrued Interest Alternative Investments** | | | | | 0 | 0.00 |
| **Total Market Value** | | | | | 771 973 | 99.72 |
| **Total Accrued Interest** | | | | | 2 174 | 0.28 |
| **Total Net Assets** | | | | | 774 147 | 100.00 |

## Pending Orders by Investment Category

Valued in USD

| Number/Amount | Description | Currency<br>Price Limit<br>Trigger Limit<br>Valid Until | Transaction Type<br>Restriction<br>Account<br>Custody Account | Strike Price<br>Maturity Date<br>Contract size | Market Price<br>Date<br>Order Number |
|---|---|---|---|---|---|
| **Alternative Inv. - Sale** | | | | | |
| 117.611 | Shs Fairfield Sentry Ltd<br>reliable market value n.a.<br>Dublin<br>Security No.  994280 | USD<br>at best<br><br>07.12.2009 | Issue PM<br><br>206-392740.60P<br>206-392740.S1 | | 0<br>24.12.2008<br>FQ52631.8 |

### Foreign Exchange Rates

The market value in US Dollar (USD) is based on the following exchange rates:

GBP     Pound Sterling              1  =     1.437750

FAIRFIELD SENTRY LIMITED
Romasco Place, Wickhams Cay 1
Road Town, Tortola
British Virgin Islands, VG 1110

February 6, 2009

Dear Shareholder,

You will have received several letters from us as the directors of Fairfield Sentry Limited (the "**Company**"). These letters were sent as events unfolded regarding Bernard L. Madoff Investments Securities LLC ("**BMIS**"). The purpose of this letter is to now provide a significant level of additional information so that shareholders are aware of the actions being taken by the Company and its directors. As this letter contains detailed information concerning the Company, it should be considered confidential.

## Management

As a preliminary matter, we believe that it would be beneficial for you to understand how the Company is being managed at this time. As you are likely aware, the Company has three directors, Walter Noel, Peter Schmid and Jan Naess. Walter Noel is a principal of the Fairfield Greenwich Group. Peter Schmid and Jan Naess are the independent (non-executive) directors and have no financial interest in Fairfield Greenwich (Bermuda) Limited (the "**Manager**") or Fairfield Greenwich Group.

The board of directors has assumed responsibility for the management of the Company. We are meeting on a regular basis to discuss the affairs of the Company. Walter Noel has not attended these meetings and has recused himself from such meetings since the events of December 11, 2008. We have also amended the signing authority on the bank account with Citco Bank Nederland N.V. Dublin Branch to ensure that no funds are wired out of this account without the approval of either of the independent directors, Peter Schmid or Jan Naess. We continue to work closely with the Manager, in particular to liquidate the remaining assets of the Company (discussed further below). We are also working closely with the administrator, Citco Fund Services (Europe) B.V., in this regard. We value these relationships. However, we are also acting independently recognising that we owe our duties to the Company.

## Background

On October 31, 2008 the published net asset value of the Company was US$7,283,393,967 resulting in a published net asset value per share of US$1,349.7782. On December 11, 2008, Bernard L. Madoff was arrested. On December 18, 2008 the Company suspended the calculation of net asset value with a consequential suspension on subscriptions and redemptions. The November 30, 2008 net asset value had not been published by the time of such suspension.

February 6, 2009
Page 2 of 5

### Current Assets

The Company currently has cash at a bank account with the custodian in the amount of US$67,179,754 (which includes the proceeds of subscription of the December 1, 2008 and January 2, 2009 subscribers which are not assets of the Company – see below). The Company has investments, other than with BMIS, with a value as at November 30, 2008 of US$81,723,813. Of these investments, US$55,947,567 represents investments in the Non-SSC Investments as defined on page 10 of the private placement memorandum of the Company. The Company has liabilities as at November 30, 2008 in the amount of US$62,211,252.

### Potential Claims

In addition to the foregoing assets held directly by the Company, the Company recognises it may be able to realise assets from each of the following:

(a) The Company is currently analysing its position with respect to Securities Investor Protection Corporation ("SIPC"). In particular, it is making a determination as to whether it is likely to receive cash from SIPC or whether it is likely that there will be a clawback from SIPC. The filing deadline is March 4, 2009. Prior to this time, the Company will make a decision as to whether it is in the Company's best interest to make a filing with SIPC and proceed accordingly. Please see below for a discussion as to whether shareholders of or investors in the Company should individually file with SIPC.

(b) We also recognise that there may be claims available to the Company which may be pursued in order to recover the losses of the Company. We have retained legal counsel in several jurisdictions to examine potential causes of action and will pursue all lawsuits where there is a likelihood of success on a cost effective basis. However, we are proceeding cautiously and carefully with respect to both when and how to bring such actions. Unfortunately, we cannot provide further information at this time so as not to prejudice any such actions or the Company, but as soon as we are able to do so, we will communicate further in this regard.

(c) In addition, the Company is exploring whether it is able to make any claims with the Internal Revenue Services for overpayment of taxes (i.e. United States withholding tax paid on dividend income purportedly by the Company through BMIS). All such claims will be pursued to the extent that it is appropriate for the Company to do so.

Otherwise, we confirm that we will take any and all actions which are appropriate to recover the losses of the Company.

February 6, 2009
Page 3 of 5

### SIPC and You

By Order dated December 15, 2008, the United States District Court, Southern District of New York, authorised SIPC to commence a liquidation proceeding against BMIS under the United States Securities Investor Protection Act ("SIPA") and appointed Irving Picard, Esq. as the trustee to oversee the liquidation proceeding (the "**SIPC Trustee**"). SIPC, a nonprofit United States corporation funded by assessments on brokerage firms, protects investors against financial losses arising from insolvency of their brokers. SIPC reimburses customers of brokers for up to US$100,000 for cash and up to US$500,000 for securities in their accounts when their brokerage firms become insolvent.

SIPA provides protection to those who meet the statutory definition of a "customer". The Company had brokerage accounts with BMIS. Therefore it qualifies as a "customer" under SIPA. We have received several inquiries from shareholders about whether they should be filing claims with SIPC individually.

The Company does not know whether the SIPC Trustee is going to consider indirect investors such as the shareholders of the Company as meeting the statutory definition of "customer". Accordingly, the Company has reached out to the SIPC Trustee to inquire as to his position on this issue. As yet, we have not received any advice on this issue from the SIPC Trustee. We understand from published reports that the SIPC Board met Friday, January 30, 2009 to discuss how claims will be treated, and possibly, whether indirect investors will be treated as "customers".

Given the uncertainty in how claims will be handled, you may wish to consider filing a claim with SIPC. For your convenience, we have attached a claim form to this letter, along with instructions on how to complete it. The Company's BMIS account numbers are 1-FN012-3-0; 1-FN045-3-0; 1-FN-069-4-0; and 1-FN-070-4-0.

Please be advised that neither the Company nor its counsel represent you individually and will not give legal advice in connection with the filing of a claim with SIPC. You should seek advice from your own lawyer or advisor before you decide whether to file a claim with SIPC as the filing may have implications for you concerning, among other things, the jurisdiction of the Bankruptcy Court over possible attempts by the SIPC Trustee to recover withdrawals you have made from the Company.

### November 30 Redeemers, December 31 Redeemers and Shareholders

As indicated above, the Company suspended the calculation of net asset value of the Company on December 18, 2008. As a result, the December 31, 2008 redeeming shareholders as well as all other shareholders continue to be shareholders of the Company. With respect to the November 30, 2008 redeemers, the payment of their proceeds of redemption has been suspended pursuant to the suspension of the calculation of net asset value and article 10(1)(c) of the articles of association of the Company.

Pg 10 of 15

February 6, 2009
Page 4 of 5

Once the Company is in a position to effect redemptions, which may take several years, it is anticipated that all shares will be redeemed at the same time. The result of this is that all shareholders, including the November 30, 2008 redeeming shareholders, the December 31, 2008 redeeming shareholders and the continuing shareholders, should all receive cash at the same time and share pro rata in the assets of the Company.

### December 1 and January 2 Subscribers

The Company received proceeds of subscription for both the December 1, 2008 and the January 2, 2009 dealing day. The directors have sought advice from both British Virgin Islands counsel, Conyers Dill & Pearman, as well as from Queen's Counsel in London, Richard Millet QC, concerning the nature of such assets. We have carefully considered the facts surrounding such proceeds of subscription. We have been advised by both Conyers Dill & Pearman and Richard Millet QC and we have concluded that such proceeds of subscription are not in fact assets of the Company. Rather, they are assets held in trust by the Company and should be returned to such subscribers. It is our intention to return such proceeds of subscription as soon as is practicable.

### Dutch Court Order

In the desire to provide full information to shareholders, we have to advise you of a court order freezing the bank account of the Company maintained with Citco Bank Nederland N.V. Dublin Branch obtained by a shareholder of the Company. This court order has frozen the cash in this account. This court order is having a serious detrimental effect on the Company, as it is causing amongst other matters, delays in the Company's ability to retain counsel and pursue potential lawsuits. The effect of this court order is that the Company does not have any cash to pay expenses nor the ability to return the proceeds of subscription to the December 1, 2008 and January 2, 2009 subscribers. The directors of the Company are currently in discussions with this one investor and hope to resolve this issue soon for the benefit of all shareholders who will all be treated equitably.

### Timeframe

As indicated above, the Company suspended the calculation of net asset value on December 18, 2008. This had the effect of stopping all cash flows from and to the shareholders of the Company. We are unable to advise as to when the Company will start to realise cash from its assets as described above, including from SIPC as well as any claims the Company may bring. This is likely to take several years. The directors will endeavour to distribute cash when possible, taking into account its cash requirements in order to fund continued operations, including lawsuits, as well contingent liabilities, such as potential clawbacks from SIPC. With this in mind, the directors do not envisage returning cash in the immediate future, but will do so once the directors have determined that it is appropriate to do so.

February 6, 2009
Page 5 of 5

**Conclusion**

We wish to assure you that we are acting faithfully and working hard in your best interests. It is our intention to recover the losses of the Company to the greatest extent possible for your benefit.

Yours faithfully,

The Board of Directors

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: H.G.L. Zeevi Investments Ltd
Mailing Address: 11 Ahad St
City: Tel Aviv   State: ISRAEL   Zip: ____
Account No.: _____
Taxpayer I.D. Number (Social Security No.): _____

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************

1. Claim for money balances as of December 11, 2008:

   See attached letter

   *a. The Broker owes me a Credit (Cr.) Balance of    $ 158,383
   b. I owe the Broker a Debit (Dr.) Balance of    $_____
   c. If you wish to repay the Debit Balance,
      please insert the amount you wish to repay and
      attach a check payable to "Irving H. Picard, Esq.,
      Trustee for Bernard L. Madoff Investment Securities LLC."
      If you wish to make a payment, it must be enclosed
      with this claim form.    $_____
   d. If balance is zero, insert "None."    _____

1

2.     Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ |  |
| b. | I owe the Broker securities |  | ✓ |

c.     If yes to either, please list below:

|   |   | Number of Shares or Face Amount of Bonds ||
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE: IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | X |  |
| | A redemption request has been sent and received by the Fund. | | |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: _____

302180406                                    4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date __March 2, 2009__   Signature __Zeev A_____   מ.ג.ל. זאבי השקעות בע"מ

Date _____   Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201