CLAYMAN & ROSENBERG
Seth L. Rosenberg   (SR4563)
Paul S. Hugel   (PH 4749)
305 Madison Avenue
New York, NY 10165
Telephone:     (212) 922-1080
Telefax:        (212) 949-8255

*Attorneys for Maxrob, L.P.*
(BLMIS Account No. 1-B0081 designated Claim Number 011050)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION          :
CORPORATION,
                                        :        Adv. Pro. No. 08-01789(BRL)

                    Plaintiff,
                                        :

        -against-
                                        :        SIPA Liquidation

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,                         :

                    Defendant           :

-------------------------------------------------------X

**OBJECTION TO TRUSTEE'S DETERMIMNATION OF CLAIM**

        Maxrob, L.P. ("Objector"), by counsel, CLAYMAN & ROSENBERG, hereby objects to the

Notice of Trustee's Determination of Claim dated December 8, 2009 (the "Determination

Letter"), appended hereto as Exhibit A, as set forth herein.

## BACKGROUND

1.      Objector is a "Customer" as that term is defined by the Securities Investor
Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS").

2.      Objector was and is a member of Bull Market Fund, a general partnership
organized in the State of New York in 1986.

3.      The Bull Market Fund partnership was organized with the knowledge and
encouragement of BMLIS for the purpose of consolidating the bookkeeping for the investment
of certain small investors with BLMIS.

4.      Bull Market Fund received a final statement from BLMIS which indicated that
Bull Market Fund owned securities valued at $36,833,462.86.

5.      On or about December 31, 2008, Objector received a statement from Bull Market
Fund which indicated that Objector's funds invested by Bull Market Fund in BLMIS were
valued at $331,815.

6.      On December 11, 2008, the above-captioned liquidation proceeding was
commenced against BLMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").
Irving Picard was appointed Trustee ("BLMIS Trustee") with oversight of the liquidation of
BLMIS and responsibility for processing customer claims for money pursuant to SIPA.

7.      By Order dated December 23, 2008, the Court directed the Trustee to disseminate
notice and claim forms to BLMIS customers and set forth claim-filing deadlines. The Order
further authorized the Trustee, *inter alia*, "to satisfy, within the limits provided by SIPA, those
portions of any and all customer claims and accounts which agree with the Debtor's books and
records," and provided that, where the BLMIS Trustee disagrees with the amount claimed in a

customer's claim form, the BLMIS Trustee, "shall notify such claimant by mail of his

determination that the claim is disallowed, in whole or in part, and the reason therefor…"

8.    On or about June 23, 2009, Objector timely submitted a customer claim form to

SIPC setting forth his claim in the amount of $331,815 ("Objector's claim"). Objector's claim

cross-referenced the BLMIS account of Bull Market Fund. A copy of Objector's claim form is

appended hereto as Exhibit B.

9.    On December 8, 2009, the BLMIS Trustee sent Objector a Determination Letter

denying Objector's claim, "in its entirety." Exhibit A. The Determination Letter stated, in part,

"Based upon a review of available books and records of BLMIS by the Trustee's staff, you did

not have an account with BLMIS. Because you did not have an account, you are not a customer

of BLMIS under SIPA as that term is defined at 15 U.S.C. Section 78111 (2).  Accordingly,

your Claim for securities and/or a credit balance is **DENIED**."

10.    Objector objects to the BLMIS Trustee's disallowance of his claim for the reasons

set forth hereinbelow.

## GROUNDS FOR OBJECTION

11.    First:    The Trustee's definition and application of the term, "account" as

set forth in the Determination Letter is incorrect.

12.    Second:    The Trustee's definition and application of the term, "customer" as

set forth in the Determination Letter is incorrect.

13.    Objector reserves the right to revise or amend this Objection. Objector's failure

to assert an objection on a particular ground or grounds shall not be construed as a waiver of its

right to object or join in the objection of other claimants on any additional grounds.

14.    Objector reserves all rights set forth in Rule 9014.

3

15.    Objector incorporates herein by reference all claims and reservations of rights set forth in Objector's claim form. Exhibit B.

## RELIEF SOUGHT

16.    Objector's claim should be allowed in its entirety.

17.    The Court should direct SIPC to pay Objector the full amount of Objector's claim together with interest thereon commencing not later than the date of the Determination Letter.

18.    Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
      January 6, 2010

CLAYMAN & ROSENBERG
By:    Seth L. Rosenberg (SR4563)
        Paul S. Hugel    (PH4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:       (212) 949-8255
rosenberg@clayro.com
hugel@clayro.com

4

EXHIBIT A

DETERMINATION LETTER

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

MAXROB, L.P.
6800 JERICHO TURNPIKE
SYOSSET, NY  11791

Dear MAXROB, L.P.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 011050:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111



**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC


cc:  DAVID KAPLAN
     300 ROBBINS LANE
     SYOSSET, NY  11791

EXHIBIT B

CUSTOMER CLAIM FORM

MAXROB L.P.
300 ROBBINS LANE
SYOSSET, NY 11791

June 23, 2009

*Via UPS Overnight*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, Texas 75201

Re:    Account Number:  1-B0081
       MaxRob, L.P. through Bull Market Fund
       300 Robbins Lane
       Syosset, New York  11791

Dear Mr. Picard:

MaxRob, L.P. is a partner in Bull Market Fund, which had an account with Bernard L. Madoff
Investment Securities ("BLMIS"), Account No. 1-B0081.

It is our understanding that Bull Market Fund has submitted its own SIPC Customer Claim Form to your
office.

We wish to submit our own personal SIPC Customer Claim Form at this time.  We are attaching the
following:

1.   Our SIPC Customer Claim Form;
2.   Bull Market Fund's November 30, 2008 BLMIS statement;
3.   Our 2007 Schedule K-1;
4.   Our personal account balance as of December 11, 2008; and
5.   Amended and Restated Agreement of Limited Partnership of MaxRob, L.P.

We reserve the right to amend or modify this claim if and to the extent warranted by facts and
circumstances not presently known to us, or as a result of a subsequent determination by a court of
competent jurisdiction with respect to any issue pertaining to our claim.

This letter is hereby incorporated by reference in and made a part of our SIPC Customer Claim Form.

Very truly yours,

MaxRob, L.P.

By:  MaxRob Corp., its General Partner

By: _____
    Name:  Edward Blumenfeld
    Title:    President

G:\Legal\MADOFF\Correspondence\Picard\Entity Investors\IHPicard Ltr - MaxRob, L.P. 6-09.doc



## Shipment Receipt

**Transaction Date:**    23 Jun 2009
**Tracking Number:**    1Z12X2361393852681

---

### Address Information

**Ship To:**
Trustee for Bernard L. Madoff Sec.
Irving H. Picard, Esq.
2100 McKinney Avenue
Suite 800
Claims Processing Center
DALLAS TX 75201-6910

**Ship From:**
Blumenfeld Dev. Group, Ltd.
BDG
300 Robbins Lane
Syosset NY 11791
Telephone: 5169210800

**Return Address:**
Blumenfeld Dev. Group, Ltd.
BDG
300 Robbins Lane
Syosset NY 11791
Telephone: 5169210800

---

### Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | {Reference#1 - 01 lmc} |

---

### UPS Shipping Service and Shipping Options

**Service:**
UPS Next Day Air Saver
**Guaranteed By:[1]:**
3:00 P.M. Wednesday, 6/24/2009

**Shipping Fees Subtotal:**    20.15 USD
Transportation    19.95 USD
Fuel Surcharge    0.20 USD

---

### Payment Information

**Bill Shipping Charges to:**    Shipper's Account 12X236

| Total Charged: | 20.15 USD |
|---|---|

Note: Your invoice may vary from the displayed reference rates.
[1] * For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

**Responsibility for Loss or Damage.**
Unless a greater value is recorded in the declared value field as appropriate for the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. If additional protection is desired, a shipper may increase UPS's limit of liability by declaring a higher value and paying an additional charge. UPS does not accept for transportation and shipper's requesting service through the Internet are prohibited from shipping packages with a value of more than $50,000. The maximum liability per package assumed by UPS shall not exceed $50,000, regardless of value in excess of the maximum. Claims not made within nine months after delivery of the package (sixty days for international shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for international shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Tariff and the UPS Terms and Conditions of Service, which can be found at www.ups.com.



☒Close Window

# Tracking Detail

**Your package has been delivered.**

| | |
|---|---|
| Tracking Number: | 1Z 12X 236 13 9365 268 1 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 06/24/2009  12:49 P.M. |
| Signed By: | DOSS |
| Location: | OFFICE |
| Delivered To: | 2100 MCKINNEY AVE 800 DALLAS, TX, US 75201 |
| Shipped/Billed On: | 06/23/2009 |
| Reference Number(s): | 01 LMC |
| Service: | NEXT DAY AIR SAVER |

### Package Progress

| Location | Date | Local Time | Description |
|---|---|---|---|
| DALLAS, TX, US | 06/24/2009 | 12:49 P.M. | DELIVERY |
| | 06/24/2009 | 7:11 A.M. | OUT FOR DELIVERY |
| | 06/24/2009 | 6:40 A.M. | ARRIVAL SCAN |
| DALLAS/FT. WORTH A/P, TX, US | 06/24/2009 | 6:17 A.M. | DEPARTURE SCAN |
| | 06/24/2009 | 5:11 A.M. | ARRIVAL SCAN |
| ROCKFORD, IL, US | 06/24/2009 | 3:27 A.M. | DEPARTURE SCAN |
| ROCKFORD, IL, US | 06/23/2009 | 11:45 P.M. | ARRIVAL SCAN |
| JAMAICA, NY, US | 06/23/2009 | 10:18 P.M. | DEPARTURE SCAN |
| | 06/23/2009 | 9:13 P.M. | ARRIVAL SCAN |
| UNIONDALE, NY, US | 06/23/2009 | 8:35 P.M. | DEPARTURE SCAN |
| | 06/23/2009 | 8:03 P.M. | ORIGIN SCAN |
| | 06/23/2009 | 7:09 P.M. | PICKUP SCAN |
| | 06/23/2009 | 7:08 P.M. | PICKUP SCAN |

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

MAXROB, L.P.

Name of Customer: ___ THROUGH BULL MARKET FUND _____
Mailing Address: ____ 300 ROBBINS LANE _____
City: _____ SYOSSET ___ State: _NY_ ___ Zip: _11791__
Account No.: _____ BULL MARKET FUND'S ACCOUNT NO.: 1-B0081 ____
Taxpayer I.D. Number (Social Security No.): _11-3277303_

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of December 11, 2008:

a.    The Broker owes me a Credit (Cr.) Balance of          $ _-0-_____

b.    I owe the Broker a Debit (Dr.) Balance of             $ _-0-_____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, it must be enclosed

with this claim form.                                      $ ___-0-_____

d.    If balance is zero, insert "None."                         NONE

502180406                                    1

2.      Claim for securities as of December 11, 2008:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | SEE BULL MARKET FUND ACCOUNT STATEMENT | $331,815 * | |
| | | | |
| | | | |
| | | | |

Number of Shares or Face Amount of Bonds

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.

502180406

2

* PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION
  ATTACHMENT A

**NOTE:**    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X * | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  DAVID KAPLAN, 300 ROBBINS LANE, SYOSSET, NY 11791

* SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

MAXROB, L.P.
By: Max Rob Corp., its General

Date    JUNE 23, 2009                    Signature _____
                                         EDWARD BLUMENFELD, PRESIDENT

Date _____                 Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

SUPPLEMENTAL CLAIM INFORMATION
ATTACHMENT A

Claimant is filing this claim form as a customer of Bernard L. Investment Securities LLC ("BLMIS"), having invested in BLMIS through a partnership, Bull Market Fund ("BMF"). Pursuant to the partnership agreement of BMF and other written agreements amongst the Partners of BMF, BMF invested all of its funds with BLMIS. BMF has informed claimant that its customer account number with BLMIS was 1-B0081. BMF has also advised claimant that it is filing a customer claim for the losses in its customer account with BLMIS.

BMF typically issued quarterly statements showing each partner's account summary. In light of the BLMIS fraud, BMF issued a statement to each partner showing their closing balance as of December 10, 2008, a copy of which is enclosed. Claimant believes that as of December 11, 2008, the amount of claimant's investment was all held in the securities as shown on the November 30, 2008 BLMIS statement for BMF, a copy of which is also enclosed.



PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

1-80081-3-0        11/30/08        *****6934        1

| DATE | PROCESS DATE | | BALANCE FORWARD | | | | |
|---|---|---|---|---|---|---|---|
| 11/06 | 20,808 | 100000 | MADOFF LABORATORIES | | | | 1,428,340.08 |
| 11/06 | 44,992 | | ABBOTT INC | | | | |
| 11/06 | 3,432 | 11353 | AMGEN INC | 60,350 | 297,258.20 | | |
| 11/06 | 2,496 | 15083 | BOEING CO | 51,130 | 121,457.52 | | |
| 11/06 | 1,872 | | BAXTER INTERNATIONAL INC | | | | |
| 11/06 | 3,744 | 12293 | BANK OF NEW YORK MELLON CORP | 32,250 | 121,042.76 | | |
| 11/06 | 5,240 | 12528 | BRISTOL MYERS SQUIBB COMPANY | 20,610 | 128,955.40 | | |
| 11/06 | 23,184 | | | | | | |
| 11/06 | 174,472 | | COMCAST GROUP INC | | | | |
| 11/06 | 9,360 | 13233 | COMCAST CORP | 15,790 | 148,168.40 | | |
| 11/06 | 1,992 | | CA | | | | |
| 11/06 | 174,032 | 14405 | CONOCOPHILLIPS | | | | |
| 11/06 | 44,680 | | CISCO SYSTEMS INC | | | | |
| 11/06 | 6,552 | 13938 | CVS CAREMARK CORP | 30,550 | 142,973.80 | | |
| 11/06 | 61,240 | 14173 | CHEVRON CORP | 73,760 | 183,406.48 | | |
| 11/06 | 539,584 | | GENERAL ELECTRIC CO | | | | |
| 11/06 | 624 | 14078 | GOOGLE | | | | |
| 11/06 | 1,248 | 15113 | GOLDMAN SACHS GROUP INC | 356,520 | 222,492.48 | | |
| 11/06 | 5,616 | | | 91,870 | 114,702.76 | | |
| 11/06 | 7,800 | | NEWELL PACKARD CO | | | | |
| 11/06 | 4,368 | 15818 | INTERNATIONAL BUSINESS MACHS | 92,800 | 405,524.40 | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 338-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| ACCOUNT NUMBER | DATE | | | |
|---|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | *******6934 | | 2 |

| DATE | AMOUNT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT |
|---|---|---|---|---|---|
| 11/06 | 17,784 | 16053 | INTEL CORP | 16.070 | 286,499.88 |
| 11/06 | 17,648 | 16288 | JOHNSON & JOHNSON | 61.310 | 555,031.88 |
| 11/06 | 11,856 | 36529 | J P MORGAN CHASE & CO | 40.500 | 485,502.90 |
| 11/06 | 4,992 | 36758 | KRAFT FOOD INC | 29.120 | 145,559.04 |
| 11/06 | 6,240 | 16993 | COCA COLA CO | 44.490 | 277,866.60 |
| 11/06 | 3,744 | 37288 | MCDONALDS CORP | 57.900 | 216,926.00 |
| 11/06 | 3,744 | 17693 | METLIFE INC | 34.550 | |
| 11/06 | 6,564 | 17898 | ALTRIA GROUP INC | 19.160 | 125,798.32 |
| 11/06 | 6,552 | 17933 | MERCK & CO | 30.780 | 211,567.92 |
| 11/06 | | 18160 | PROCTER & GAMBLE CO | | |
| 11/06 | 12,792 | 19335 | ORACLE CORPORATION | | |
| 11/06 | 2,808 | 19343 | OCCIDENTAL PETROLEUM CORP | 54.290 | 152,558.32 |
| 11/06 | 4,992 | 19570 | PEPSICO INC | 57 | 284,743.00 |
| 11/06 | 21,528 | 20046 | PFIZER INC | 13.390 | 287,867.32 |
| 11/06 | 9,672 | 20283 | PROCTER & GAMBLE CO | 64.570 | 624,907.04 |
| 11/06 | 6,864 | 20513 | PHILLIP MORRIS INTERNATIONAL | 42.730 | 293,572.72 |
| 11/06 | 5,304 | 20735 | QUALCOMM INC | 37.010 | 200,756.24 |
| 11/06 | 3,744 | 20986 | SCHLUMBERGER LTD | 51.700 | 193,533.44 |
| 11/06 | 18,720 | 21223 | AT&T INC | 27.060 | 505,819.60 |
| 11/06 | 11,544 | 21456 | TIME WARNER INC | 10.060 | 116,593.64 |
| 11/06 | 3,120 | | UNITED PARCEL SVC INC | 52.790 | 164,828.80 |
| 11/06 | 5,616 | 21693 | U S BANCORP | 29.550 | 166,176.00 |
| 11/06 | 3,120 | 21920 | UNITED TECHNOLOGIES CORP | 54.920 | 171,474.40 |

CONTINUED ON PAGE  3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# BERNARD L. MADOFF

MADF

INVESTMENT SECURITIES LLC
New York □ London

835 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY    11791

1-B0081-3-0     11/30/08     *****6934     3

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| 11/06 | 9,048 | | 22163 VERIZON COMMUNICATIONS | 29.980 | 271,620.04 | |
| 11/06 | 10,608 | | 23398 WELLS FARGO & CO NEW | 33.660 | 357,639.28 | |
| 11/06 | 7,176 | | 22633 WALMART STORE INC NEW | 55.660 | 400,061.581.0 | |
| 11/06 | 169,848 | | 228688 EXXON MOBIL CORP | 72.880 | 12,432,638.84 | |
| 11/06 | | | FIDELITY SPARTAN | DIV | | 2-54 |
| 11/06 | 169,704 | | 16970 FIDELITY SPARTAN U S TREASURY MONEY MARKET | | | 169,704.00 |
| 11/06 | | 1 | U S TREASURY MONEY MARKET FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| 11/06 | | 4,925,000 | 4925 U S TREASURY BILL DUE 12/11/2008 | 99.982 | | 24,408.00 |
| 11/06 | 24,408 | 48166 | 48166 FIDELITY SPARTAN U S TREASURY MONEY MARKET DUE 12/11/2008 | | | 24,408.00 |
| 11/06 | | 49002 | U S TREASURY BILL DUE 12/18/2008 | 99.957 | | |
| 11/06 | 3,925,000 | 48824 | U S TREASURY BILL DUE 12/18/2008 | 99.960 | | 3,923,430.00 |
| 11/06 | 3,925,000 | 49033 | U S TREASURY BILL DUE 01/15/2009 | 99.946 | | 3,922,880.50 |
| 11/06 | 3,925,000 | 49246 | U S TREASURY BILL DUE 01/22/2009 1/22/2009 | 99.934 | | 3,922,405.00 |
| | | | CONTINUED ON PAGE 4 | | | |

CONTINUED ON PAGE 4

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF INVESTMENT SECURITIES
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADF

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| 1-B0081-3-0 | 11/30/08 | *****6934 | 4 |

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| Date | Amount Debited | Amount Credited | Description | Price | Amount | Balance |
|---|---|---|---|---|---|---|
| 11/06 | | 3,925,000 | 49461 | U S TREASURY BILL DUE 01/29/2009 | 99.928 | 99.928 | |
| 11/06 | 1,550,000 | | 49677 | U S TREASURY BILL DUE 1/29/2009 | 99.302 | | |
| 11/06 | 2,870,000 | | 49059 | U S TREASURY BILL DUE 2/12/2009 | 2,12/2009 | | |
| 11/06 | 2,575,000 | | 49059 | U S TREASURY BILL DUE 03/26/2009 | 3/26/2009 | | |
| 11/06 | | | 50137 | U S TREASURY BILL DUE 4/02/2009 | 4/02/2009 | 2,568,588.25 | |
| 11/06 | 2,575,000 | | 50356 | U S TREASURY BILL DUE 04/02/2009 | 99.726 | 2,567,944.50 | |
| 11/07 | 1,956 | | 23404 | APPLE INC | 98.400 | 195,223,920 | |
| 11/07 | 3,456 | | 23639 | ABBOTT LABORATORIES | 56.590 | 195,713.04 | |
| 11/07 | 776 | | 23874 | AMGEN INC | 62.070 | 147,573.12 | |
| 11/07 | | | 24109 | BANK OF AMERICA | 25.490 | | |
| 11/07 | 1,296 | | 24344 | BANK OF AMERICA | 25.490 | 80,969.52 | |
| 11/07 | 1,716 | | 24579 | BAXTER INTERNATIONAL INC | 61.740 | 80,066.04 | |
| 11/07 | 24874 | | BANK OF NEW YORK MELLON CORP | 34.210 | 81,377.26 | |
| 11/07 | 25069 | | ANHEUSER-BUSCH COS INC | 64.890 | | |
| 11/07 | 1,512 | | 25284 | CITI GROUP INC | 14.410 | 168,544.24 | |
| 11/07 | 11,664 | | 25519 | CITI GROUP INC | 14.410 | 168,544.24 | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

CONTINUED ON PAGE   5

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

1-B0081-3-0     11/30/08     *****6934     5

| Date | Bought Received | Sold Delivered | Security | Price | Amount |
|------|-----------------|----------------|----------|-------|--------|
| 11/07 | 6,264 | | 25754 COMCAST CORP CL A | 17.390 | 109,180.96 |
| 11/07 | 3,240 | | 25989 CONOCOPHILLIPS | | |
| 11/07 | 12,744 | | 26224 CISCO SYSTEMS INC | | |
| 11/07 | 3,024 | | 26459 CVS CAREMARK CORP | 31.720 | 96,041.28 |
| 11/07 | 4,536 | | 26696 CHEVRON CORP | | 34,242.20 |
| 11/07 | 24,100 | | 26932 GENERAL ELECTRIC CO | | |
| 11/07 | 22,680 | | 27168 GENERAL ELECTRIC CO | | |
| 11/07 | 432 | | 27399 GOOGLE INC | 349.160 | 150,854.12 |
| 11/07 | 664 | | 27635 GOLDMAN SACHS GROUP INC | 83.070 | |
| 11/07 | 3,672 | | 27872 HOME DEPOT INC | | |
| 11/07 | 5,400 | | 28104 HEWLETT-PACKARD CO | | |
| 11/07 | 3,024 | | 28339 INTERNATIONAL BUSINESS MACHS | 92.430 | 279,628.32 |
| 11/07 | 22,896 | | 28574 INTEL CORP | | |
| 11/07 | 2,808 | | 28809 JOHNSON & JOHNSON | 16 | |
| 11/07 | 5,208 | | 29043 JP MORGAN CHASE & CO | | |
| 11/07 | 3,240 | | 29279 KRAFT FOOD INC | 29.760 | |
| 11/07 | 4,320 | | 29514 COCA COLA CO | | |
| 11/07 | 2,376 | | 29749 MCDONALDS CORP | 46.580 | 201,357.60 |
| 11/07 | 2,376 | | 29984 MERCK & CO INC | | |
| 11/07 | 1,512 | | 30219 3M COMPANY | | |
| 11/07 | 4,536 | | 30454 ALTRIA GROUP INC | 64.880 | 88,158.56 |
| 11/07 | 4,752 | | 30688 TEXACO CO | 19.370 | |
| 11/07 | 17,280 | | 30924 MICROSOFT CORP | | |
| 11/07 | 8,640 | | 31159 ORACLE CORPORATION | 18.470 | 159,925.80 |
| | | | CONTINUED ON PAGE 6 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

| 1-B0083-3-0 | 11/30/08 | 6 | *****5934 |

| Date | Bought | Received | Sold | Delivered | Security | Price | Amount |
|------|--------|----------|------|-----------|----------|-------|--------|
| 11/07 | 1,728 | | 31864 | | OCCIDENTAL PETROLEUM CORP | 54.380 | 94,037.64 |
| 11/07 | 3,456 | | 32098 | | PEPSICO INC | 58.650 | 202,763.28 |
| 11/07 | 14,800 | | 32234 | | PFIZER INC | | |
| 11/07 | 6,096 | | 32509 | | PROCTER & GAMBLE CO | | |
| 11/07 | 4,536 | | 32804 | | PHILLIP MORRIS INTERNATIONAL | 43.640 | 198,132.24 |
| 11/07 | 3,672 | | 33030 | | QUALCOMM INC | 37.639 | 138,243.68 |
| 11/07 | 2,592 | | 33270 | | SCHLUMBERGER LTD | | |
| 11/07 | 12,528 | | 33505 | | AT&T INC | | |
| 11/07 | 7,776 | | 33744 | | TIME WARNER INC | 10.110 | 78,932.36 |
| 11/07 | 2,160 | | 33979 | | UNITED PARCEL SVC INC | 51.660 | 116,103.80 |
| 11/07 | 37,808 | | 34214 | | U S BANCORP | | |
| 11/07 | 2,160 | | 34449 | | UNITED TECHNOLOGIES CORP | 56.490 | 121,044.00 |
| 11/07 | 24,624 | | 34684 | | VERIZON COMMUNICATIONS | | |
| 11/07 | 7,344 | | 34919 | | WELLS FARGO & CO NEW | | |
| 11/07 | 4,968 | | 35154 | | WAL-MART STORES INC | | |
| 11/07 | 11,448 | | 35389 | | EXXON MOBIL CORP | 75.280 | 862,262.44 |
| 11/07 | | | | | DIV  11/07/08 | DIV | |
| 11/07 | | 18,784 | 10883 | | FIDELITY SPARTAN | 1 | 18,784.00 |
| 11/07 | | 2,075,000 | 11114 | | U S TREASURY MONEY MARKET | 99.923 | 2,073,401.75 |
| | | | | | DUE 02/05/09 | | |

CONTINUED ON PAGE    2/05/2009

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET           NY   11791

1-B0081-3-0          11/30/08          7

*******6934

BERNARD L. MADOFF INVESTMENT SECURITIES LLC
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| Date | Amount Bought | Bought or Received | Amount Sold | Sold or Delivered | Description | Price or Symbol | Amount Debited | Amount Credited |
|---|---|---|---|---|---|---|---|---|
| 11/07 | | | 2,450,000 | 11382 | U S TREASURY BILL DUE 02/19/2009 | 99.887 | | 2,447,231.50 |
| 11/07 | | | 2,450,000 | 11597 | U S TREASURY BILL DUE 02/26/2009 | 99.869 | | 2,447,980.50 |
| 11/07 | | | 2,450,000 | 11843 | U S TREASURY BILL DUE 03/05/2009 | | | |
| 11/07 | | | 2,450,000 | 12010 | U S TREASURY BILL DUE 3/05/2009 | 99.840 | | 2,446,080.00 |
| 11/07 | 1,175,000 | | | 12141 | U S TREASURY BILL DUE 04/09/2009 | 99.720 | 1,171,710.00 | |
| 11/07 | 1,175,000 | | | 12341 | U S TREASURY BILL DUE 4/16/2009 | | | |
| 11/10 | 2,376 | | | 35864 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 304,307.20 | | |
| 11/10 | 4,324 | | | 36099 | APPLE INC | 108.720 | 258,413.72 | |
| 11/10 | 2,900 | | | 36337 | ABBOTT LABORATORIES | 55.510 | 236,331.84 | |
| 11/10 | 17,112 | | | 36567 | BOEING CO | 58.450 | 1,071,433.43 | |
| 11/10 | 13,728 | | | 36804 | BANK OF AMERICA | 24.050 | 330,707.40 | |
| | | | | | CONTINUED ON PAGE | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

1-B0081-3-0          11/30/08          *******6934          8

| DATE | BOUGHT RECEIVED IN | SOLD DELIVERED OUT | DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| 11/10 | 1,848 | | 37039 | BAXTER INTERNATIONAL INC | 60.770 | 112,375.96 | |
| 11/10 | 3,168 | | 37274 | BANK OF NEW YORK MELLON CORP | 33.480 | 106,194.64 | |
| 11/10 | 5,544 | | 37303 | BRISTOL MYERS SQUIBB COMPANY | 21.300 | 118,069.66 | |
| 11/10 | 1,848 | | 37744 | ANHEUSER-BUSCH COS INC | 64.090 | 118,541.53 | |
| 11/10 | 15,048 | | 37979 | CITI GROUP INC | 14.270 | 215,335.96 | |
| 11/10 | 4,920 | | 38314 | COMCAST CORP | 17.410 | 138,203.20 | |
| 11/10 | | | 37039 | | | | |
| 11/10 | 41,224 | | 30447 | CONAGRA FOODS | 54.430 | 228,081.25 | |
| 11/10 | 16,104 | | 38604 | CISCO SYSTEMS INC | 18.060 | 291,904.32 | |
| 11/10 | 3,960 | | 38919 | CVS CAREMARK CORP | 31.300 | 124,106.00 | |
| 11/10 | 5,808 | | 39167 | CREX CON CORP | 21.730 | 126,905.28 | |
| 11/10 | 5,016 | | 39389 | THE WALT DISNEY CO | 25.060 | 126,940.28 | |
| 11/10 | 28,776 | | 39624 | GENERAL ELECTRIC CO | 20.550 | 591,922.56 | |
| 11/10 | 528 | | 39859 | GOOGLE | 363.500 | 191,952.24 | |
| 11/10 | | | 40050 | GOLDMAN SACHS GROUP INC | 74.580 | 191,595.28 | |
| 11/10 | 4,752 | | 40329 | HOME DEPOT INC | | | |
| 11/10 | 6,864 | | 40564 | HEWLETT PACKARD CO | 37.290 | 256,728.96 | |
| 11/10 | 3,696 | | 40799 | INTERNATIONAL BUSINESS MACHS | 92.660 | 342,618.36 | |
| 11/10 | 15,576 | | 41035 | INTEL CORP | 21.550 | 336,933.30 | |
| 11/10 | 19,536 | | 41269 | JOHNSON & JOHNSON | 61.570 | 419,774.52 | |
| 11/10 | 10,032 | | 41504 | J-P- MORGAN CHASE & CO | 41.730 | 419,036.36 | |
| 11/10 | 4,224 | | 41739 | KRAFT FOOD INC | 29.100 | 122,310.40 | |
| 11/10 | 5,544 | | 41974 | COCA COLA | 44.550 | 247,473.08 | |
| 11/10 | 3,168 | | 42209 | MCDONALDS CORP | 58.250 | 184,450.64 | |
| 11/10 | 3,168 | | 42444 | MEDTRONIC INC | 40.300 | 127,796.40 | |
| 11/10 | | | | CONTINUED ON PAGE 9 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET        NY   11791

1-B0081-3-0     11/30/08     *******6934     9

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| Date | | | Account number | Description | | Amount |
|---|---|---|---|---|---|---|
| 11/30 | 1,848 | | 42679 | 3M COMPANY | 64,690 | 119,620.12 |
| 11/30 | 5,544 | | 42914 | ALTRIA GROUP INC | 18,890 | 104,711.16 |
| 11/30 | 5,608 | | 43647 | MERCK & CO INC | 30,510 | 171,138.00 |
| 11/30 | 21,384 | | 43684 | MICROSOFT CORP | 21,200 | 174,975.80 |
| 11/30 | 10,824 | | 43619 | ORACLE CORPORATION | 18,600 | 201,783.80 |
| 11/30 | 2,376 | | 44324 | OCCIDENTAL PETROLEUM CORP | 56,010 | 133,174.76 |
| 11/30 | 4,222 | | 44959 | PEPSICO INC | 57,350 | 242,159.28 |
| 11/30 | 107,744 | | 44994 | PFIZER INC | 16,550 | 5,841,592.24 |
| 11/30 | 8,184 | | 45029 | PROCTER & GAMBLE CO | 65,230 | 533,952.32 |
| 11/30 | 5,544 | | 45264 | PHILIP MORRIS INTERNATIONAL | 44,030 | 244,321.32 |
| 11/30 | 4,490 | | 45797 | QUALCOMM INC | 40,580 | 182,000.00 |
| 11/30 | 9,432 | | 45794 | SCHLUMBERGER LTD | 45,560 | 429,960.60 |
| 11/30 | 16,368 | | 45969 | AT&T INC | 28,580 | 468,451.44 |
| 11/30 | 5,604 | | 46204 | TIME WARNER INC | 18,750 | 105,019.04 |
| 11/30 | 7,670 | | 46493 | UNITED HEALTH GROUP INC | 19,280 | 147,773.10 |
| 11/30 | 4,752 | | 46674 | U S BANCORP | 31,510 | 149,925.52 |
| 11/30 | 2,640 | | 46909 | UNITED TECHNOLOGIES CORP | 56,430 | 149,080.20 |
| 11/30 | 7,970 | | 47142 | VERIZON COMMUNICATIONS | 30,720 | 244,869.20 |
| 11/30 | 4,976 | | 47379 | WELLS FARGO & CO NEW | 61,720 | 307,118.56 |
| 11/30 | 6,072 | | 47614 | WAL MART STORES INC | 55,710 | 338,272.60 |
| 11/30 | 14,226 | | 47849 | EXXON MOBIL CORP | 75,800 | 1,081,513.12 |
| 11/30 | | | | FIDELITY SPARTAN | DIV | 1,081,174.80 |
| | | | | U S TREASURY MONEY MARKET | DIV | |

DIV 11/10/08

CONTINUED ON PAGE 10

**BERNARD L. MADOFF**
**MADF** INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Adam International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                         NY  11791

| 1-B0081-3-0 | | 11/30/08 | 10 |
| *******6934 | | | |

| DATE | BOUGHT RECEIVED OR DELIVERED | SOLD DELIVERED OR RECEIVED | | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | | 30,199 | 12816 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 30,199.00 |
| 11/10 | | 2,600,000 | 132762 | U S TREASURY BILL DUE 03/19/2009 3/19/2009 | 99.867 | | 2,596,542.00 |
| 11/10 | | 2,575,000 | 132423 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.834 | | 2,570,725.50 |
| 11/10 | | 2,575,000 | 13625 | U S TREASURY BILL DUE 04/02/2009 4/02/2009 | 99.770 | | 2,569,077.50 |
| 11/10 | | 3,750,000 | 13626 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.742 | | 3,740,325.00 |
| 11/10 | | 1,975,000 | 14061 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.742 | | 1,970,310.50 |
| 11/10 | | 142 | 14281 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | | 49,843.00 |
| 11/10 | 50,000 | | | | | | |
| 11/23 | 685 | | 14508 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 685.00 | |
| 11/24 | | | 154412 | CHECK FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | | 100,672.00 | |
| 11/24 | | | | DIV. | | | .05 |
| | | | | CONTINUED ON PAGE 11 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| 1-B0081-3-0 | 11/30/08 | ******5934 | 11 |

| DATE | | | DESCRIPTION | | AMOUNT | |
|------|---|---|-------------|---|--------|---|
| 11/14 | | | FIDELITY SPARTAN | 1 | | 685.00 |
| 11/14 | 685 | 29393 | U S TREASURY MONEY MARKET | | | |
| 11/18 | 14,357 | 22864 | FIDELITY SPARTAN | | 14,357.00 | |
| 11/18 | | | U S TREASURY MONEY MARKET | | | |
| 11/18 | | | CHECK | CA | 225,000.00 | |
| 11/18 | | | CHECK | CA | 15,000.00 | |
| 11/18 | | | CHECK | CA | | |
| 11/18 | 575,000 | 49508 | CHECK | CA | 200,000.00 | |
| 11/18 | | | CHECK | CA | 15,000.00 | |
| 11/18 | 573,000 | 49509 | U S TREASURY BILL DUE 4/16/2009 | | | |
| 11/18 | 113,717 | 49122 | FIDELITY SPARTAN | | | |
| 11/18 | | | U S TREASURY MONEY MARKET | | | |
| 11/18 | 450,000 | 49954 | U S TREASURY BILL DUE 4/16/2009 | 99.830 | 449,235.00 | |
| 11/18 | 51765 | 49965 | FIDELITY SPARTAN | | | |
| 11/19 | | | U S TREASURY MONEY MARKET | | | |
| 11/19 | 20,839 | 49965 | FIDELITY SPARTAN | | | |
| 11/19 | | | U S TREASURY MONEY MARKET | | | |
| 11/19 | 20,839 | 50057 | FIDELITY SPARTAN | 1 DIV | 20,839.00 | 45 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | CONTINUED ON PAGE  12 | | | |

CONTINUED ON PAGE  12

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

1-B0081-3-0          11/30/08          12

************6934

| DATE | | | | | | |
|---|---|---|---|---|---|---|
| 11/19 | 3,525,000 | | 54708 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 3,522,391.50 |
| 11/19 | 91.20 | | 59098 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 91,200.00 |
| 11/20 | | | 63199 | U S TREASURY BILL DUE 03/26/2009 | CH | 675,000.00 |
| 11/20 | 21,850,000 | | 63633 | U S TREASURY BILL DUE 4/16/2009 | 99.947 | 21,848,480.50 |
| 11/20 | 171 | | 64475 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 171.00 |
| 11/25 | 1,882 | | 64741 | APPLE INC | 95.070 | |
| 11/25 | 1,568 | | 64655 | ABBOTT LABORATORIES | 54.240 | 57,855.14 |
| 11/25 | 1,078 | | 64893 | AMGEN INC | 53.630 | 57,855.14 |
| 11/25 | 4,598 | | 65232 | BANK OF AMERICA | 12.980 | 65,073.04 |
| 11/25 | 1,176 | | 65601 | BAXTER INTERNATIONAL INC | 54.690 | |
| 11/25 | 1,960 | | 65645 | BRISTOL MYERS SQUIBB COMPANY | 20.140 | 39,552.40 |
| 11/25 | 54,684 | | 66003 | CITI GROUP INC | 6.100 | 34,899.40 |
| 11/25 | 21,642 | | 66559 | COMCAST CORP | 13.910 | |

CONTINUED ON PAGE 13

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY  11791

| 1-B0081-3-0 | 11/30/08 | *****69934 | 13 |

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| DATE | AMOUNT | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|
| 11/25 | 1,568 | 66797 CONOCOPHILLIPS | 45.100 | | 70,778.80 |
| 11/25 | 5,880 | 67035 CISCO SYSTEMS INC | 14.570 | | 88,258.60 |
| 11/25 | 1,470 | 67112 CHEVRON CORP NEW | 27.940 | | 39,509.80 |
| 11/25 | 2,058 | 67511 THE WALT DISNEY CO | 19.260 | | 141,487.10 |
| 11/25 | 1,862 | 67749 EXXON CORP | 19.760 | | 36,867.12 |
| 11/25 | 686 | 67937 GOOGLE INC CLASS C CORP | 44.740 | | 33,452.66 |
| 11/25 | 10,780 | 68455 | 24.010 | | 554,904.00 |
| 11/25 | 196 | 68701 HOME DEPOT INC | 28.270 | | 8,347.50 |
| 11/25 | 1,666 | 68939 HEWLETT PACKARD CO | 19.530 | | 32,602.98 |
| 11/25 | 2,450 | 69415 INTEL CORP | 32.990 | | 80,923.50 |
| 11/25 | 1,372 | 69653 JOHNSON & JOHNSON | | | |
| 11/25 | 5,684 | 69891 JP MORGAN CHASE & CO | 51.650 | | 163,954.30 |
| 11/25 | 3,724 | 70129 COCA COLA CO | 27.460 | | 103,526.24 |
| 11/25 | 2,842 | 70367 | 58.580 | | 58,121.00 |
| 11/25 | 1,470 | 70605 MCDONALDS CORP | 30.800 | | 82,440.00 |
| 11/25 | 1,960 | 70843 MEDTRONIC INC | 55 | | 59,333.00 |
| 11/25 | 1,678 | 71001 3M COMPANY | | | 36,267.80 |
| 11/25 | 1,176 | 71319 ALTRIA GROUP INC | 16.580 | | 207,078.00 |
| 11/25 | 686 | 71557 MERCK & CO | 25 | | 36,983.80 |
| 11/25 | 2,058 | 71795 MICROSOFT CORP | 18.100 | | 53,986.00 |
| 11/25 | 2,156 | ORACLE CORP | 16.050 | | 142,211.00 |
| 11/25 | 7,840 | OCCIDENTAL PETROLEUM CORP | | | |
| 11/25 | 3,920 | 72747 | 44.570 | | 39,343.44 |
| 11/25 | 882 | | | | |
| 11/25 | 1,568 | 72985 PEPSICO INC | 51.800 | | 81,284.40 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV. GROUP LTD
300 ROBBINS LANE
SYOSSET                NY   11791

| Account Number | Date | Page | |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 14 | ******6934 |

| DATE | AMOUNT BOUGHT | AMOUNT SOLD | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| 11/25 | 6,762 | 73223 | PFIZER INC | 15.320 | 103,863.84 | |
| 11/25 | 2,949 | 73461 | PROCTER & GAMBLE CO | 61.940 | 182,220.69 | |
| 11/25 | 2,050 | 73699 | PHILLIP MORRIS INTERNATIONAL | 36.380 | 74,952.04 | |
| 11/25 | 1,666 | 73937 | QUALCOMM INC | 29.850 | 49,796.10 | |
| 11/25 | 1,176 | 74175 | SCHLUMBERGER LTD | 46.270 | 54,460.52 | |
| 11/25 | 5,880 | 74413 | AT&T INC | 24.075 | 141,235.00 | |
| 11/25 | 3,626 | 74651 | THE WALT DISNEY | 8.000 | 29,169.26 | |
| 11/25 | 980 | 74889 | UNITED PARCEL SVC INC | 50.760 | 49,783.86 | |
| | | | CLASS B | | | |
| 11/25 | 1,764 | 75127 | U.S. BANCORP | 23.600 | 41,347.60 | |
| 11/25 | 900 | 75365 | UNITED TECHNOLOGIES CORP | 46.850 | 42,201.30 | |
| 11/25 | 2,642 | 75603 | VERIZON COMMUNICATIONS CORP | 29.970 | 79,624.74 | |
| 11/25 | 3,822 | 75841 | WELLS FARGO & CO NEW | 23.820 | 91,192.04 | |
| 11/25 | 2,254 | 76079 | WAL-MART STORES INC | 51.460 | 116,058.30 | |
| 11/25 | 1,372 | 76317 | EXXON MOBILE CORP | 49.320 | 45,330.00 | |
| 11/25 | 57,292 | 76555 | FIDELITY SPARTAN | DIV | 381,235.00 | |
| | | | U.S. TREASURY. MONEY. MARKET | | | |
| 11/25 | | 77122 | FIDELITY SPARTAN | | | |
| | | | U.S. TREASURY. MONEY. MARKET | | | |
| 11/25 | | 77386 | U S TREASURY MONEY MARKET | | | |
| | | | DUE 44/26/2009 | | .93 | |
| 11/25 | 42,963 | 77681 | U S TREASURY BILL | 1 | 42,963.00 | |
| | | | FIDELITY SPARTAN | | | |
| | | | U.S. TREASURY. MONEY. MARKET | | | |

CONTINUED ON PAGE 15

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BERNARD L. MADOFF INVESTMENT SECURITIES LLC
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

| 1-B0081-3-0 | 11/30/08 | *******6934 | 15 |

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/26 | | | CHECK | | | |
| 11/26 | 5,000. | | FIDELITY SPARTAN | 1. | | 5,000.00 |
| | | | U.S. TREASURY MONEY MARKET | CA | | |
| 11/28 | | 100. | 78108 | FIDELITY SPARTAN | 1. | | 5,000.00 |
| 11/28 | | | 784420 | U.S. TREASURY MONEY MARKET | | 52,640. | |
| 11/28 | | | BAXTER INTERNATIONAL INC | CM | | |
| 11/28 | | | CHECK | | | 50,000.00 |
| 11/28 | 47,963 | 78257 | FIDELITY SPARTAN | 50,000.00 | | 47,963.00 |
| | | | U.S. TREASURY MONEY MARKET | DIV | | |
| 11/28 | 52,226 | 78672 | FIDELITY SPARTAN | 1 | | 2.26 |
| | | | U.S. TREASURY MONEY MARKET | 1 | | |
| | | | NEW BALANCE | | | |
| | | | SECURITY POSITIONS | MKT PRICE | | 5,119,352.95 |
| | 53,496 | | AT&T INC. | 28.560 | | |
| | 14,240 | | ABBOTT LABORATORIES | 52.390 | | |
| | 13,690 | | ALTRIA GROUP INC | 15.490 | | |
| | 9,790 | | AMGEN INC | 52.670 | | |
| | 8,010 | | APPLE INC | 92.670 | | |
| | 75,866 | | BANK OF AMERICA | 16.250 | | |
| | 10,167 | | BAXTER INTERNATIONAL INC | 55.540 | | |
| | 5,704 | | BANK OF NEW YORK FIDELITY CORP | 30.920 | | |
| | 6,336 | | BOEING CO | 42.630 | | |
| | | | CONTINUED ON PAGE 16 | | | |

CONTINUED ON PAGE 16

# BERNARD L. MADOFF
## INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| | Number | | |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | ******6934 | 16 |

| BOUGHT OR LONG | SOLD OR SHORT | DESCRIPTION | PRICE |
|---|---|---|---|
| 18,064 | | BRISTOL MYERS SQUIBB COMPANY | 20.700 |
| 13,134 | | CVS CAREMARK CORP | 31,520 |
| 18,554 | | CHEVRON CORP | 70.430 |
| 53,760 | | CISCO SYSTEMS INC | 16.560 |
| 49,868 | | CITI GROUP INC | 8.290 |
| 18,064 | | COCA COLA CO | 44.840 |
| 450 | | COLGATE PALMOLIVE CO | 65.000 |
| 26,386 | | COMCAST CORP CL A | 17.310 |
| 14,024 | | CONOCO PHILLIPS | 53.530 |
| 17,222 | | THE NASDAQ STOCK MARKET | 22.350 |
| 696 | | EXXON MOBIL CORP | 56.150 |
| 47,844 | | GENERAL ELECTRIC CO | 80.150 |
| 94,508 | | GOLDMAN SACHS GROUP INC | 17.170 |
| 3,432 | | GOOGLE | 285.970 |
| $700 | | HEWLETT PACKARD CO | 36.280 |
| 22,514 | | HOME DEPOT INC | 23.110 |
| 28,706 | | INTEL CORP | 11.600 |
| 51,110 | | INTERNATIONAL BUSINESS MACHS | |
| 12,400 | | J.P. MORGAN CHASE & CO | 31.660 |
| 33,820 | | JOHNSON & JOHNSON | 59.580 |
| 25,654 | | KRAFT FOODS INC | 22.210 |
| 13,926 | | MCDONALDS CORP | 56.750 |
| 10,366 | | MEDTRONIC INC | 30.520 |
| 10,464 | | CONTINUED ON PAGE 17 | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| 1-B0081-3-0 | 11/30/08 | *******6934 | 17 |

| DATE | BOUGHT (RECEIVED OR LONG) | SOLD (DELIVERED OR SHORT) | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| | 19,580 | | MERCK & CO | 26.720 | | |
| | 71,176 | | MICROSOFT CORP | 20.220 | | |
| | 7,794 | | OCCIDENTAL PETROLEUM CRP | 54.170 | | |
| | 36,176 | | SCHLUMBERGER CORPORATION | | | |
| | 14,240 | | PEPSICO INC | 56.700 | | |
| | 61,722 | | PFIZER INC | 16.430 | | |
| | 19,902 | | PROCTER & GAMBLE CO | | | |
| | 27,492 | | PHILIP MORRIS INTERNATIONAL | | | |
| | 15,130 | | QUALCOMM INC | 33.570 | | |
| | 19,944 | | SCHLUMBERGER LTD | 50.740 | | |
| | 3,226 | | U S TREASURY | | | |
| | 6,230 | | 3M COMPANY | 66.930 | | |
| | 22,060 | | TIME WARNER INC | 9.050 | | |
| | 16,020 | | UNITED PARCEL SVC INC | 57.600 | | |
| | 8,900 | | UNITED TECHNOLOGIES CORP | | | |
| | | | CLASS B | | | |
| | 8,900 | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | 25,858 | | WAL-MART STORES INC | 55.680 | | |
| | 20,470 | | WELLS FARGO & CO NEW | 20.890 | | |
| | 30,750 | | XXXTH | 36.010 | | |
| | 1,372 | | | | | |

| | | | MARKET VALUE OF SECURITIES | | | |
| | | LONG | 17,919,862.86 | | | |
| | | SHORT | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
MADF INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY 11791

| 1-B0081-4-0 | 11/30/08 | ******6934 | 1 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | DESCRIPTION | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| 11/06 | | | BALANCE FORWARD | | 1,428,341.00 |
| 11/06 | 312 | | S & P 100 INDEX NOVEMBER 470 CALL | | |
| 11/07 | 216 | | S & P 100 INDEX NOVEMBER 460 PUT | 639,912.00 | |
| 11/07 | | | S & P 100 INDEX NOVEMBER 460 PUT | 298,296.00 | |
| 11/10 | 264 | | S & P 100 INDEX NOVEMBER 465 CALL | 13,800 | |
| 11/10 | 264 | | S & P 100 INDEX NOVEMBER 475 PUT | 16,800 | 443,784.00 |
| 11/19 | 792 | | S & P 100 INDEX DECEMBER 420 PUT | 30 | 2,376,792.00 |
| 11/19 | 528 | | S & P 100 INDEX NOVEMBER 470 CALL | | |
| 11/19 | 264 | | S & P 100 INDEX NOVEMBER 485 CALL | .900 | 24,024.00 |
| 11/19 | | | S & P 100 INDEX NOVEMBER 485 PUT | | |
| 11/19 | | 264 | S & P 100 INDEX NOVEMBER 475 PUT | 59 | 1,557,336.00 |

CONTINUED ON PAGE 2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC.
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

| DATE | | | | DESCRIPTION | | | AMOUNT |
|------|---|---|---|---|---|---|---|
| 11/25 | | 98 | 72033 | S & P 100 INDEX | | | |
| 11/25 | | | 72270 | DECEMBER 380 CALL | | | |
| | | | | S & P 100 INDEX | | | |
| | | | | DECEMBER 570 PUT | | | |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | | MKT PRICE | |
| | | 792 | | S & P 100 INDEX | | 23.300 | |
| | | | | DECEMBER 430 CALL | | | |
| | 98 | | | S & P 100 INDEX | | | |
| | | | | DECEMBER 30 CALL | | | |
| | | | | S & P 100 INDEX | | 16.500 | |
| | | | | DECEMBER 420 PUT | | | |
| | | | | S & P 100 INDEX | | | |
| | | | | DECEMBER 570 PUT | | | |
| | | | | MARKET VALUE OF SECURITIES-LONG | | | |
| | | | | 1,956,760.00 | | | |
| | | | | 27,145,160.00 | | | |

1-800 81-4-0    11/30/08    ******6934    2

651107

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2007**

For calendar year 2007, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.**

▶ See separate instructions.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

**Part III   Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| | | |
|---|---|---|
| **1** Ordinary business income (loss)  0. | **15** Credits | |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income  3,786. | | |
| **6a** Ordinary dividends  2,275. | **17** Alternative min tax (AMT) items | |
| **6b** Qualified dividends | | |
| **7** Royalties | **18** Tax-exempt income and nondeductible expenses | |
| **8** Net short-term capital gain (loss)  20,805. | | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions | |
| **9c** Unrecaptured sec 1250 gain | **20** Other information | |
| **10** Net section 1231 gain (loss) | A  6,061. W*  3,786. | |
| **11** Other income (loss)  C  803. | | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| **14** Self-employment earnings (loss) | | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number
11-2796934

**B** Partnership's name, address, city, state, and ZIP code

BULL MARKET FUND
300 ROBBINS LANE
SYOSSET, NY   11791

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's identifying number

11-3277303

**F** Partner's name, address, city, state, and ZIP code

MAXROB L.P.
300 ROBBINS LANE
SYOSSET, NY 11791

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I** What type of entity is this partner?  PARTNERSHIP

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 254,379. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 27,669. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 282,048. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

*See attached statement for additional information.

For IRS Use Only

JWA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2007

711261
12-31-07

23

# MEMORANDUM

**TO:**     **Max Rob, L.P.**

**FROM:**   Harvey Cohen

**RE:**     Bull Market Fund

**DATE:**   **December 31, 2008**

---

Please find below your balance in the Bull Market Fund as of December 10, 2008.  This includes your November 30, 2008 balance plus any additions, if applicable, made subsequent to November 30, 2008 and sent to Bernard L. Madoff Investment Securities, LLC.

Account Balance as of December 10, 2008:  $331,815

Please call me if I can be of further service.

# AMENDED AND RESTATED
# AGREEMENT OF LIMITED PARTNERSHIP

## OF

## MAXROB L.P.

### A LIMITED PARTNERSHIP
### ORGANIZED UNDER THE LAWS OF
### THE STATE OF NEW YORK

Prepared by
Ross & Cohen, LLP
711 Third Avenue
New York, New York 10017

AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP

OF

MAXROB L.P.

THIS AMENDED AND RESTATED AGREEMENT dated as of the 6th day of September, 1995, by and among MAXROB CORP., a New York corporation (the "General Partner"), and those persons executing this document on the signature pages hereof as limited partners (each a "Limited Partner" and collectively, the "Limited Partners").

WHEREAS, the parties hereto have formed a limited partnership organized under the laws of the State of New York to acquire, develop and lease real property ("Partnership Property");

WHEREAS, the parties hereto entered into an Agreement of Limited Partnership (the "Original Agreement") dated as of August 15, 1995;

WHEREAS, the parties hereto desire to amend and restate the Original Agreement in its entirety; and

WHEREAS, the parties hereto desire to provide for the operation of the Partnership, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, it is agreed as follows:

ARTICLE I.
DEFINITIONS

Definitions.  As used in this Agreement, the following terms shall have meanings set forth below, which meanings shall be applicable equally to the singular and plural of the terms defined:

"Act" shall mean the New York Revised Limited Partnership Act as set forth in the New York Revised Uniform Limited Partnership Act, as amended from time to time.

"Affiliate" shall mean (i) any Person that directly or indirectly through one or more intermediaries controls or is controlled by or is under common control with another person, (ii) any Person owning or controlling twenty-five (25%) percent or more of the outstanding voting securities of such other person, (iii) any officer, director or partner of such Person, (iv) any relative of such Person and (v) if such other Person

is an officer, director or partner, any company for which such Person acts in any such capacity.

"Agreement" shall mean this Agreement, as same may hereafter be amended or modified from time to time.

"Available Cash" for any Fiscal Year means the excess, if any, of (A) the sum of (i) the amount of all cash receipts of the Partnership during such Fiscal Year, and (ii) any working capital of the Partnership existing at the start of such Fiscal Year over (B) the sum of (i) all amounts payable for such Fiscal Year on account of the amortization of any debts of the Partnership (including any loans described in Section 6.5), (ii) all amounts payable in Fiscal Year on account of expenses and capital expenditures incurred in connection with the Partnership's business (including, without limitation, general operating expenses, interest on loans and taxes), and (iii) such reserves which the General Partner reasonably determines may be required for the working capital and future needs of the Partnership.

"Bankruptcy" shall mean, with respect to the affected party, (i) the entry of an Order for Relief under Title 11 of the United States Code, (ii) the admission by it of its inability to pay its debts as they mature, (iii) the making by it of an assignment for the benefit of creditors, (iv) the filing by it of a petition in bankruptcy or a petition for relief under Title 11 of the United States Code or any other applicable Federal or state bankruptcy or insolvency statute, or under any applicable bankruptcy or insolvency statute under the laws of the United Kingdom, or the filing against it of any such petition looking toward such a proceeding which is not discharged within ninety (90) days from the date of filing thereof, or (v) the imposition of a judicial or statutory lien, whether in the United States or the United Kingdom, on all or a substantial part of its assets unless such lien is discharged or vacated or the enforcement thereof stayed within ninety (90) days after its effective date.

"Capital Account" when used in respect of any Partner shall mean the Capital Account maintained for such Partner in accordance with Section 7.1, as said Capital Account may be increased or decreased from time to time pursuant to the terms of Section 7.1.

"Capital Expense Excess" of any Partner shall mean the excess, if any, of (A) such Partners' Capital Account balance over (B) the sum of such Partner's Unreturned Capital Contributions.

1861J

- 2 -

"Capital Account Shortfall" of any Partner shall mean the excess, if any, of (A) the sum of such Partner's Unreturned Capital Contributions over (B) such Partner's Capital Account balance.

"Capital Contribution" when used with respect of any Partner shall mean the amount of capital contributed by such Partner in accordance with Section 6.1 or 6.2.

"Capital Transaction" shall mean a financing or refinancing, taking by eminent domain (or similar concept in the jurisdiction), casualty resulting in an insurance recovery (other than for a temporary loss of use), easement sale, sale, exchange, or other disposition of all or a substantial portion of the assets of the Partnership (other than to a nominee), or any other voluntary or involuntary disposition, conversion or loss of Partnership property the proceeds of which under normal tax accounting rules, are considered to be capital in nature.

"Certificate" shall mean the Certificate of Limited Partnership filed with the Office of the Secretary of State of the State of New York, by the Partnership.

"Code" shall mean the Internal Revenue Code of 1986, as amended or any corresponding provisions of succeeding law.

"Fiscal Year" shall mean the fiscal year of the Partnership, which shall be the calendar year; but upon termination of the Partnership, "Fiscal Year" shall mean the period from the end of the last preceding Fiscal Year to the date of such termination.

"Interest" shall mean the entire interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the terms and provisions of this Agreement.

"IRS" shall mean the Internal Revenue Service.

"Losses" shall have the meaning set forth in Section 7.2.

"Operations" shall mean all operations of the Partnership.

"Partners" shall mean, collectively, the Limited Partners as constituted from time to time and the General Partner.

- 3 -

1861J

"Partnership" shall mean the limited partnership created pursuant to the Partnership Agreement, as said Partnership may from time to time be hereafter constituted.

"Partnership Property" shall mean all right, title and interest of the Partnership in and to (i) the Premises (hereinafter defined in Section 2.4) and any improvements thereon and any property or estate acquired in exchange therefor and (ii) any other assets acquired by the Partnership.

"Percentage Interest" shall mean the percentage interest listed for each Partner on Exhibit "A" annexed hereto, as it may increase or decrease from time to time.

"Person" shall mean any individual, partnership, corporation, trust or other legal entity.

"Profits" shall have the meaning set forth in Section 7.2.

"Substituted Limited Partner" or "Substituted Partner" shall mean any Person admitted to the Partnership as a Limited Partner or a Partner pursuant to the provisions of Article IX.

"Tax Matters Partner" shall mean MaxRob L.P. as long as it is the General Partner.

"Treasury Regulations" shall mean regulations promulgated by the Department of the Treasury as in effect as of the date of this Agreement.

"Unreturned Capital Contributions" of any Partner shall mean the excess, if any, of such Partner's Capital Contributions over all distributions to such Partner pursuant to Section 8.1(c).

## ARTICLE II.
## THE PARTNERSHIP AND ITS BUSINESS

2.1   <u>Partnership Name</u>.  The business of the Partnership shall be conducted under the name MaxRob, L.P. and such name or such assumed names as the General Partner deems necessary or appropriate to comply with the requirements of any other jurisdiction in which the Partnership may elect to do business.

- 4 -

1861J

2.2   Term.   The term of the Partnership commenced on the date of the filing of the original Certificate with the Office of the Secretary of State of the State of New York, and shall continue in full force and effect until December 31, 2095, unless sooner terminated as hereinafter provided.

2.3   Filing of Amended Certificate.   The General Partner has filed the Certificate and shall file all necessary amendments thereto and shall do all other acts requisite for the protection and continuation of this Partnership as a limited partnership pursuant to the laws of the State of New York or any other applicable law.

2.4   Business.   The business of the Partnership is (i) to acquire a fee interest in, develop, hold, lease, sublease, or otherwise, improve, sell, exchange, transfer and otherwise deal in and with certain real property and various improvements thereon (the "Premises"), including, without limitation, a property known as 41 Daniel Street, located in the County of Suffolk, State of New York, and the property contiguous thereto known as 2110 Broad Hollow Road and any other property or estate hereafter acquired in exchange therefor or in connection therewith, and (ii) to engage in any business related or incidental to one or more of the foregoing activities.

2.5   Principal Office.   The principal office of the Partnership shall be at c/o Blumenfeld Development Group, Ltd., 6800 Jericho Turnpike, Syosset, New York  11791.   The Partnership may change its principal office to such location or locations as may be at any time or from time to time be determined by the General Partner.   The mailing office of the Partnership shall be c/o Blumenfeld Development Group, Ltd., 6800 Jericho Turnpike, Syosset, New York  11791 or such other office as may be selected from time to time by the General Partner.

2.6   Names and Addresses of Partners.

(a)   The name and address of the General Partner is as follows:

MaxRob Corp.
6800 Jericho Turnpike
Syosset, New York  11791

1861J

(b)   The names and addresses of the Limited
Partners shall be as set forth on Exhibit "A" attached hereto.

## ARTICLE III.
### MANAGEMENT OF PARTNERSHIP BUSINESS
### POWERS AND DUTIES OF THE GENERAL PARTNERS

3.1   <u>Management and Control</u>.   Except as otherwise
specifically set forth in this Agreement, the General Partner
shall have the exclusive right and power to conduct the
business and affairs of the Partnership and to do all things
necessary to carry on the business of the Partnership, and is
hereby authorized to take any action of any kind and to do
anything and everything the General Partner deems necessary or
appropriate in accordance with the provisions of this Agreement
and applicable law.   Without limiting the foregoing, the
General Partner is hereby authorized without consent of the
Limited Partners and empowered on behalf of the partnership,
unless expressly stated otherwise in this Agreement:

(a)   to incur all expenditures permitted by this
Agreement;

(b)   to employ and dismiss from employment all
employees, agents (including an Affiliated Person to
act as managing agent to manage Partnership Property
provided such managing agent's fee is commercially
reasonable), consultants, independent contractors,
attorneys and accountants;

(c)   to admit an assignee of any Limited
Partner's interest in the Partnership to be a
Substituted Limited Partner in the Partnership,
pursuant to and subject to the terms of Article IX;

(d)   to organize, invest in or otherwise
participate in, promote, finance, manage, operate and
hold and dispose of equity or debt interests in other
partnerships, corporations, associations, companies,
firms and other entities in furtherance of the
Partnership's business;

(e)   to deposit the funds of the Partnership in
the Partnership name in any bank or trust company as
the General Partner shall determine, with withdrawals
to be made on such signature or signatures as the
General Partner shall determine, and to invest the
funds designated for reserves of the Partnership in

- 6 -

the Partnership name as the General Partner deems appropriate;

(f)  to enter into, make and perform all contracts, agreements, documents, certifications, and other instruments and undertakings as the General Partner deems necessary, advisable or incidental to the carrying out of the business of the Partnership, the execution thereof by the General Partner to be conclusive evidence of such determination;

(g)  to execute, deliver and file all amendments to the Certificate, to qualify the Partnership under the laws of any jurisdiction in which the Partnership is doing business or owns property;

(h)  to prepare or have prepared all necessary Federal, state and local income, franchise, unincorporated business or similar tax returns; to make consents and elections on behalf of the Partnership under the Code or the tax statutes of any state or subdivision thereof and to effect the termination, revocation or cancellation of any such consent or election; and to pay from Partnership funds all income, franchise, unincorporated business or similar taxes, charges or assessments that may be levied, assessed or imposed upon the Partnership or any assets of the Partnership;

(i)  to purchase, at the expense of the Partnership, liability, hazard and such other insurance as the General Partner deems desirable;

(j)  to prepare the documents and correspondence connected with the ongoing reporting responsibilities of the Partnership to the Limited Partners and for all other communications to the Limited Partners;

(k)  to borrow money from the General Partner itself as provided in Section 6.5 or others (including Affiliates of the General Partner) and issue evidences of indebtedness necessary, convenient or incidental to the accomplishment of the purposes of the Partnership and to secure the same by mortgage, pledge or lien on the assets of the Partnership and to repay such loans in accordance with the terms thereof with Partnership funds;

- 7 -

1861J

(1)   to prepay in whole or in part, refinance,
fix the interest rate on any debt, recast, modify or
extend any mortgage debt affecting or encumbering any
of the Partnership's property and in connection
therewith to execute any extensions, consolidations,
modifications or renewals of mortgages on any assets
of the Partnership;

(m)   to take any actions necessary to assure that
the Partnership is complying with any laws, statutes
and regulations of the State of New York with respect
to its operation of the Premises;

(n)   to deal with, or otherwise engage in
business with, or provide services to and receive
compensation therefor from, any Person who has
provided or may in the future provide any services,
lend money or sell property or to purchase property
from the General Partner or any Affiliate of the
General Partner;

(o)   to lease, assign or mortgage the Partnership
Property, as determined in its sole discretion; and

(p)   to merge with one or more additional limited
partnerships in accordance with Section 121-1001 et.
seq. of the Act.


Notwithstanding anything contained herein to the contrary, the
General Partner may not sell, transfer or convey the Premises
without the written consent of the Limited Partners owning, in the
aggregate, at least a seventy (70%) percent partnership interest in
the Partnership.


3.2   <u>Limited Partners Shall Not Manage or Control</u>.   No
Limited Partner shall participate in or have control  whatsoever of
the Partnership business, shall transact business for the
Partnership nor shall have power to sign, act for or bind the
Partnership, all of such powers being vested solely and exclusively
in the General Partner.

3.3   <u>Acts of the Partnership</u>.   Whenever in this Agreement
or elsewhere it is provided that consent is required of, or a demand
shall be made by, or an act or things shall be done by or at the
discretion of, the Partnership or the General Partner, all such
consents, demands, acts and things are to be made, given or done
upon the consent of the General Partner or Person acting under the
authority of the General Partner, unless a contrary intention is
expressly indicated.

1861J

# ARTICLE IV.
## RIGHTS AND DUTIES OF PARTNERS

4.1 <u>Duties, Obligations and Compensation of The General Partner</u>.

(a)   The General Partner shall take all action which may be necessary or appropriate for the acquisition, development, maintenance, preservation and operation of the properties and assets of the Partnership in accordance with the provisions of this Agreement and applicable laws and regulations; it being understood and agreed, however, that (i) the direct performance of day-to-day management services for the properties of the Partnership is not an obligation of the General Partner as general partner of the Partnership, but, in the event the General Partner shall elect not to participate in the day-to-day management of the properties, it shall appoint a managing agent to do so, (ii) subject to Section 6.6, the General Partner shall have no obligation to make any Capital Contribution in excess of the amount set forth in Sections 6.1 and 6.2 or to loan any monies to the Partnership, notwithstanding that the failure to make such additional Capital Contribution(s) or loans(s) would render the Partnership unable to conduct its business or to meet the debts of the Partnership as said debts shall become due, and in the event of the occurrence of either of such events, the General Partner shall be authorized to deliver such instruments of conveyance, including a deed in lieu of foreclosure of the Partnership Property, as determined in the sole discretion of the General Partner, and (iii) each of the Limited Partners hereby consents to the sale, lease, assignment, mortgaging or transfer of the Partnership property at such price and on such terms as the General Partner shall determine in its sole discretion.   The General Partner shall devote to the Partnership such time and services as may in its judgment be required adequately to promote the interests of the Partnership, it being understood and agreed that the General Partner shall not be required to devote its full time or business attention to the business of the Partnership.

(b)   The General Partner and any of its Affiliates shall be entitled to reimbursement of all ordinary and necessary expenses incurred in the course of the Partnership's business, including but not limited to an allocable portion of general overhead, such allocable portion to be determined by the Partnership's accountants, whose determination shall be conclusive.

- 9 -

1861J

4.2   Other Activities of the Partners.   Except as
provided by Sections 4.9 and 4.10 hereof, each Partner may
engage or invest in any other activity or venture or possess
any interest therein independently or with others.   Except as
provided by Sections 4.9 and 4.10 hereof, none of the Partners,
the Partnership or any other person employed by, related to or
in any way affiliated with any Partner or the Partnership shall
have any duty or obligation to disclose or offer to the
Partnership or the Partners, or obtain for the benefit of the
Partnership or the Partners, any such other activity or venture
or interest therein.   Except as provided by Sections 4.9 and
4.10 hereof, none of the Partnership, the Partners, the
creditors of the Partnership or any other person having any
interest in the Partnership shall have (a) any claim, right or
cause of action against any of the Partners or any other Person
employed by, related to or in any way affiliated with, any of
the Partners by reason of any direct or indirect investment or
other participation, whether active or passive in any such
activity or venture or interest therein, or (b) any right to
any such activity or venture or interest therein or the income
or profits derived therefrom.

4.3   Indemnification of General Partner.   Neither the
General Partner nor any of the officers, directors, employees
or agents of the General Partner shall be liable, responsible
or accountable in damages or otherwise to the Partnership or to
any Partners for (a) any act performed within the scope of the
authority conferred on the General Partner by this Agreement,
including any action or inaction in connection with the General
Partner acting as Tax Matters partner, except for the gross
negligence or willful misconduct of the General Partner or of
such officers, directors, employees and agents in carrying out
the obligations of the General Partner hereunder, (b) the
General Partner's failure or refusal to perform any act, except
those expressly required by or pursuant to the terms of this
Agreement, (c) the General Partner's performance of, or failure
to perform, any act on advice of legal counsel, accountants,
consultants or brokers to the Partnership or (d) the
negligence, dishonesty or bad faith of any agent, consultant or
broker of the Partnership selected, engaged or retained in good
faith.   In any threatened, pending or completed action, suit or
proceeding, the General Partner and each of such officers,
directors, employees and agents of the General Partner shall be
fully protected and indemnified and held harmless by the
Partnership against all liabilities, obligations, losses,
damages, penalties, actions, judgments, suits, proceedings,
costs, expenses and disbursements of any kind or nature
whatsoever (including, without limitation, attorneys' fees,

1861J

costs of investigation, fines, judgments and amounts paid in settlement, actually incurred by the General Partner or such officer, director, employee or agent in connection with such action, suit or proceeding) by virtue of its status as General Partner or as an officer, director, employee or agent of the General Partner with respect to any action or omission taken or suffered in good faith, other than liabilities and losses resulting from the gross negligence or willful misconduct of the indemnified person. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of <u>nolo contendere</u> or its equivalent shall not, of itself, create a presumption that the General Partner or any such officer, director, employee or agent did not act in good faith. The indemnification provided by this Section 4.3 shall be recoverable only out of the assets of the Partnership and no Limited Partner shall have any personal liability on account thereof.

4.4   <u>Investment Representations</u>. Except as otherwise stated herein, the Limited Partners each represent that they are acquiring their interests as Limited Partners for their own account for investment purposes only and not with a view to the distribution or resale thereof, in whole or in part, and each agrees that they will not transfer, sell or dispose of all or any portion of, or offer to transfer, sell, or dispose of all or any portion of his interest as a Limited Partner, or solicit offers to buy from or otherwise approach or negotiate in respect thereof with any person or persons whomsoever, all or any portion of his Interest in any manner which would violate or cause the Partnership or the General Partner to violate applicable Federal or state securities laws.

4.5   <u>Limited Liability of Limited Partners</u>. The Limited Partners shall not be bound by, nor be personally liable for, the expenses, liabilities, indebtedness or obligations of the Partnership or of the General Partner. The liability of the Limited Partners shall be limited solely to the amount of his or her Capital Contribution, provided, however, to the extent required by the Act, Limited Partners who have received returns in whole or in part of their Capital contribution, may be liable to the Partnership for any sum, not in excess of such return, necessary to discharge the Partnership's liabilities to creditors who extended credit or whose claims arose before such return.

4.6   <u>Dealing with Partners</u>. The fact that the General Partner, or any officer, director, employee, partner, consultant or agent of the General Partner, or a member of the

- 11 -

18613

family of any of the foregoing, is directly or indirectly interested in or connected with any person, firm or corporation employed by the Partnership to render or perform a service, or from or to whom the Partnership may buy or sell any property or have other business dealings, shall not prohibit the General Partner from employing such person, firm or corporation or from dealing with him or it on customary terms and at competitive rates of compensation, and neither the Partnership nor any of the Partners shall have any rights in or to any income or profits derived therefrom.

4.7    <u>Use of Partnership Property</u>.  No Partner shall make use of the funds or property of the Partnership, or assign his or her rights to specific Partnership property, other than for the business or benefit of the Partnership.

4.8    <u>Designation of Tax Matters Partner</u>.  As long as it is the General Partner, MaxRob Corp. shall act as the Tax Matters Partner of the Partnership, as provided in the regulations pursuant to Section 6231 of the Code.  Each Partner hereby approves of such designation and agrees to execute, certify, acknowledge, deliver, swear to, file and record at the appropriate public offices such documents as may be deemed necessary or appropriate to evidence such approval.  To the extent and in the manner provided by applicable Code sections and regulations thereunder, the Tax Matters Partner (a) shall furnish the name, address, profits interest and taxpayer identification number of each Partner to the IRS, and (b) shall inform each Partner of administrative or judicial proceedings for the adjustment of Partnership items required to be taken into account by a Partner for income tax purposes.

## ARTICLE V.
## BOOKS AND RECORDS

5.1    <u>Books of Account</u>.  At all times during the continuance of the Partnership, the General Partner shall keep or cause to be kept true and complete books of account in which shall be entered fully and accurately each transaction of the Partnership.  Such books shall be kept on the basis of the Fiscal Year in accordance with the cash or accrual method of accounting, as determined by the General Partner, and shall reflect all Partnership transactions in accordance with tax accounting principles.

- 12 -

18613

5.2    <u>Availability of Books of Account</u>.  All of the
books of account referred to in Section 5.1, together with an
executed copy of this Agreement and the Certificate, and any
amendments thereto, shall at all times be maintained at the
principal office of the Partnership or such other place as the
General Partner may determine, and upon reasonable notice to
the General Partner, shall be open to the inspection and
examination of the Limited Partners or their representatives
during reasonable business hours.

5.3    <u>Annual Reports and Statements</u>.  For each Fiscal
Year, the General Partner shall use reasonable efforts to send
to each person who was a Partner at any time during such Fiscal
Year, within a reasonable time after the end of such Fiscal
Year an annual report of the Partnership, including an annual
balance sheet and profit and loss statement, a statement
showing distributions to the Partners and allocations to the
Partners of Partnership taxable income, gains, losses,
deductions and credits, all as prepared by the Partnership's
accountants and (b) such other information concerning the
Partnership as is necessary for the preparation of each
Partner's Federal, state and local income or other tax returns.

5.4    <u>Accounting Expenses</u>.  All expenses in connection
with the keeping of the books and records of the Partnership
and the preparation of audited or unaudited financial
statements required to implement the provisions of this
Agreement or required by any governmental authority with
jurisdiction over the Partnership shall be borne by the
Partnership as an ordinary expense of its business.
Notwithstanding the foregoing, if the books and records so kept
by the Partnership or the financial statements so prepared are
challenged by any Partner, former Partner or any legal
representative thereof, the entire cost and expense to the
Partnership of all additional outside accounting work resulting
from such challenge shall be paid and borne solely by the
person or persons so challenging such books and records or
financial statements; provided, however, that if as a result of
such challenge it is found that there are material inaccuracies
in the manner in which the Partnership has kept such books and
records and prepared such financial statements, the Partnership
shall bear all such reasonable costs and expenses.

### ARTICLE VI.
### CAPITAL CONTRIBUTIONS, LOANS AND LIABILITIES

6.1    <u>Initial Capital Contribution of the General
Partner</u>.  The General Partner, has contributed an Initial
Capital Contribution of $100.00 in cash to the Partnership.

18613

6.2    <u>Initial Capital Contribution of the Limited
Partners.</u>  The Limited Partners have contributed as their
Initial Capital Contribution the amounts in cash to the capital
of the Partnership as are set forth on Exhibit "A" annexed
hereto.

6.3    <u>Percentage Interests</u>.  The Percentage Interests
of each of the Partners shall be as set forth on Exhibit "A"
annexed hereto.

6.4    <u>Capital of the Partnership</u>.  The Initial Capital
Contributions of each Limited Partner and the General Partner
has been credited to each such Partner's Capital Account, and
the capital of the Partnership shall be the sum of the
Partners' Capital Accounts.  The Partners shall receive no
interest on their Capital Contribution.  Subject to Section 6.6
hereof, no Partner shall be required to restore any deficit
balance in his Capital Account.

6.5    <u>Advances</u>.  The General Partner and any of its
Affiliates may, but shall not be obligated to, advance money to
the Partnership from time to time (a "General Partner Loan").
If the General Partner or its Affiliates (including any
Affiliate that is also a Partner) shall make a General Partner
Loan, the amount of such advance shall not be deemed a Capital
Contribution unless the General Partner (or its Affiliate that
is a Partner) expressly agrees otherwise.  The amount of such
advance, unless otherwise agreed by the General Partner, shall
be a loan due from the Partnership to the General Partner or
its Affiliates and, except as otherwise provided in this
Agreement or agreed in writing at the time such funds are
advanced, shall be repaid to the General Partner or Affiliate
before any distributions are made to the Partner in any fiscal
year.  Any such General Partner Loan made shall bear interest
at the rate of two (2%) percent in excess of the "prime rate"
("Advance Rate").  The "Prime Rate" shall be defined as the
Prime Rate as announced by Chase Manhattan Bank from time to
time.  The amount of any such General Partner Loan shall not
increase the lending Partner's Capital Account or its
Percentage Interest in the Partnership.  If either of the
General Partner (or its Affiliate which is a Partner, as the
case may be) advances funds and the General Partner agrees that
such advance shall be treated as a Capital Contribution, such
Capital Contribution shall be credited to the Capital Account
of such advancing Partner.  Any such Capital Contribution shall
be returned to such Partners as provided in Section 8.1 hereof.

6.6    <u>Liability of General Partner</u>.  All debts and
obligations of the Partnership shall be paid or discharged
first with the assets of the Partnership before the General

- 14 -

1861J

Partner shall be obligated to pay or discharge such debts or
obligations with its personal assets.  The General Partner
shall not be liable for the return of the Capital Contribution
of any Limited Partner.

6.7   Return of Capital Contribution.  Except as
otherwise provided in this Agreement, no Partner shall have the
right to demand the return of all or any part of the Capital
Contribution until the Partnership has been dissolved and
terminated, or to demand or receive property other than cash in
return for the Capital Contribution.

6.8   Required General Partners Restoration.
Notwithstanding anything to the contrary contained in this
Agreement, upon liquidation of the Partnership, the General
Partner shall be required to contribute to the Partnership the
General Partner's deficit Capital Account balance.

ARTICLE VII.
CAPITAL ACCOUNTS, PROFITS
AND LOSSES AND ALLOCATIONS

7.1   Capital Accounts.

(a)   The Partnership shall maintain a Capital
Account for each Partner in accordance with the principles
described in Section 1.704-1(b)(2)(iv) of the Treasury
Regulations.  By way of example and not in limitation of the
foregoing, the Capital Account of each Partner shall be
increased by (i) the amount of any cash and the agreed net fair
market value as of the date of contribution of any property
contributed as a Capital Contribution to the capital of the
Partnership by such Partner, (ii) the amount of any Profits
allocated to such Partner and (iii) such Partner's pro rata
share (determined in the same manner as such Partner's share of
Profits from operations pursuant to Section 7.2) of income of
the Partnership that is exempt from tax.  The Capital Account
of each Partner shall be decreased by (i) the amount of
distributions to such Partner, (ii) the amount of any Losses
allocated to such Partner and (iii) such Partner's pro-rata
share (determined in the same manner as such Partner's share of
Losses from operations pursuant to Section 7.2) of any other
expenditures of the Partnership that are not deductible in
computing Partnership Profits or Losses and which are not
chargeable to such Capital Account.

- 15 -

1861J

(b)   For purposes of this Section 7.1, upon a distribution in kind of Partnership property, the Capital Accounts of the Partners will be debited or credited as though the property had been sold for an amount equal to its fair market value, and gain or loss which would have been recognized for Federal income tax purposes had the property actually been sold will be allocated to the Partners under this Article VII.

7.2   <u>Profits and Losses</u>.

(a)   <u>Definition</u>.   The profits and losses of the Partnership ("Profits" and "Losses") shall be the net income or net loss (including capital gains and losses), respectively, of the Partnership determined for each Fiscal Year in accordance with the accounting method followed for Federal income tax purposes (except as may otherwise be required by Treasury Regulations promulgated pursuant to Sections 704(b) and 704(c) of the Code)..

(b)   <u>Items</u>.   Whenever a proportionate part of the Profits or Losses is allocated to a Partner, every item of income, gain, loss, deduction or credit entering into the computation of such Profits or Losses or arising from the transactions with respect to which such Profits or Losses were realized shall be credited or charged, as the case may be, to such Partner in the same proportion; provided, however, that "recapture income", if any, shall be allocated to the Partners who were allocated the corresponding depreciation deductions.

(c)   <u>Transfer</u>.   If any Partner transfers all or any part of his Interest during any Fiscal Year or his interest is increased or decreased, Profits and Losses attributable to such Interest for such Fiscal Year shall be apportioned between the transferor and transferee or computed as to such Partner, as the case may be, in the discretion of the General Partner, either (i) on the basis of an interim closing of the books of the Partnership as of the date of such transfer, (ii) ratably on a daily basis or (iii) on the basis of such other method as the General Partner shall determine, provided, in all events that any apportionment described above shall be permissible under the Code and applicable regulations thereunder.

(d)   <u>Allocation of Profits and Losses</u>.

(i)   Profits shall be allocated each Fiscal Year among the Partners in the following order of priority:

- 16 -

1861J

(A)   First, to the Partners up to the amount, if any, of their respective negative Capital Account balance;

(B)   Second, to the Partners up to the amount, if any, necessary to eliminate their Capital Account Shortfalls;

(C)   Third, to the Partners in the ratio of their respective Percentage Interests; provided, however, that if the Partners' respective Capital Account Excesses, if any, are not in the ratio of their respective Percentage Interests, then Profits and Losses shall first be allocated so as to bring such Capital Account Excesses into such ratio.

(ii)  Losses shall be allocated each Fiscal Year among the Partners in the following order of priority:

(A)   First, to the Partners to eliminate their respective Capital Account Excess, if any;

(B)   Second, to the Partners to eliminate their respective positive Capital Account balances, if any.

(C)   Third, to the Partners, if any, that have made loans (or whose Affiliates have made loans) to the Partnership pursuant to Section 6.5 hereof, until their respective Capital Accounts have a negative balance equal to the outstanding balances of such loans; and

(D)   Fourth, to the partners in the ratio of their respective Percentage Interests.

(e)   <u>Required Special Allocations</u>. Notwithstanding Section 7.2(d) hereof,

(i)   Appropriate adjustments shall be made to the allocations to the extent required under Section 704(c) of the Code and the regulations thereunder and Sections 1.704-1(b)(2)(iv)(d),(e),(f) and (g) of the Treasury Regulations.

(ii)  Appropriate adjustments shall be made to the allocations to the extent required to comply with the "qualified income offset" and "minimum gain chargeback" provisions of the Treasury Regulations issued pursuant to Section 704(b) of the Code.  To the extent permitted by such Regulations, the allocations in such year and subsequent years

- 17 -

allocations shall be the same as if all such allocations were made pursuant to Section 7.2(e)(i) hereof (except as modified by Section 7.2(e)(i) hereof) without regard to this Section 7.2(e)(ii).

(f)  Minimum General Partners' Allocation.
Notwithstanding the foregoing, except as otherwise required pursuant to Section 7.2(e)(i) hereof and the first sentence of Section 7.2(e)(ii) hereof, if any of the allocations provided herein would not result in an allocation of Profits or Losses to the General Partner in an amount equal to an aggregate of at least two (2%) percent of the Profits or Losses allocable to all Partners in any fiscal year, the allocation to the Limited Partners shall be reduced by an amount necessary for the General Partner to receive an appropriate allocation of two (2%) percent of the Profits and Losses.


ARTICLE VIII.
APPLICATIONS AND DISTRIBUTIONS OF CASH


8.1   Operations.  Distributions of Available Cash shall be made at least annually in the following order of priority:

(a)  First, to the Partners up to the amount, if any, of their respective Advances plus interest thereon;

(b)  Second, to the Partners up to the amount, if any, of their respective Capital Contributions; and

(c)  Third, to the Partners in proportion to their Percentage Interests.

8.2   Draws for Payment of Estimated Taxes.  Within seventy-five (75) days after the end of each Fiscal Year in which a General Partner Loan is repaid, in whole or in part, Available Cash in the aggregate minimum amount hereafter set forth shall be distributed to the Partners until each Partner has received Available Cash equal to the product of (x) the Assumed Tax Rate (defined below) for the Fiscal Year in which a General Partner Loan is repaid, in whole or in part, and (y) such Partner's pro-rata share of the Profits for such Fiscal Year.  "Assumed Tax Rate" shall mean the highest effective marginal combined federal, state and local income tax rate applicable to capital gains prescribed for the relevant Partner, taking into account the deductibility of state and local income taxes for federal income tax purposes.

8.3   Liquidation.  In the event of the sale or other disposition of all or substantially all of the Partnership's assets, the Partnership shall be dissolved and the proceeds of such sale or other disposition shall be distributed to the Partners in liquidation as provided in Article XI.

— 18 —

1861J

## ARTICLE IX.
## TRANSFER OF PARTNERSHIP INTERESTS.

9.1   Limitations on Assignments of Interests by Limited Partners.

(a)   Each of the Limited Partners, hereby acknowledges and agrees that it will not, either directly or indirectly, transfer, sell, pledge, hypothecate, mortgage, encumber or assign any portion the Interest of a Limited Partner, or any proceeds thereof, without the prior written consent of the General Partner, except in accordance with the provisions of this Article IX.   Notwithstanding the foregoing, each of the Limited Partners may sell, transfer or assign their interests or any percentage thereof in the Partnership to another limited partner without the General Partner's consent. In the event that a Limited Partner contemplates the sale of all or any portion of its Interest to a third party (a "Prospective Purchaser"), such Limited Partner shall obtain a written bona fide offer from the Prospective Purchaser which shall set forth the price, terms and conditions for the sale of such Interest to the Prospective Purchaser, a copy of which such Limited Partner shall deliver to the General Partner. Such written bona fide offer shall not be structured so as to frustrate the ability of the General Partner to satisfy the terms of such offer.   The General Partner shall have the right, exerciseable within sixty (60) days from the receipt of such notice, to acquire such Interest on behalf of the Partnership on the same terms and conditions provided for in such notice pursuant to a closing which shall occur within ninety (90) days of the General Partner's receipt of such notice.   If the General Partner does not exercise such right of first refusal within the sixty (60) day period, the Limited Partners shall thereafter be permitted to sell such Interest to the Prospective Purchaser on the terms provided for in such notice within thirty (30) days following the expiration of such sixty (60) day period; provided, however, that the General Partner has given its written consent to such transfer, which shall not be unreasonably withheld.   Any purported transfer, sale, pledge, hypothecation, encumbrance or assignment of any portion of the Interest of a Limited Partner or the proceeds thereof in violation of this Section 9.1(a) shall be void ab initio and shall not bind the Partnership.   Any purported transfer, sale or assignment of any portion of the Interest of a Limited Partner, or the proceeds thereof, in violation of this Section 9.1(a) shall be deemed an irrevocable offer by the Limited Partner whose Interest was purportedly transferred, sold or

- 19 -

1861J

assigned to the Partnership to redeem such Interest against payment of such Limited Partners' Capital Contribution, and the Limited Partner making such purported transfer, sale or assignment shall indemnify and hold the Partnership and the other Partners harmless from and against any Federal, state or local income taxes, or transfer taxes, including without limitation, transfer gains taxes, arising as a result of, or caused directly or indirectly by, such purposed transfer, sale or assignment.

(b) Notwithstanding any provisions of this Article IX, each of the Limited Partners hereby agrees to pledge or hypothecate their respective Interests or any portion thereof or any proceeds of any of the foregoing, if such pledge or hypothecation shall be required by the General Partner in connection with any debt or equity financing with respect to the Partnership Property.

9.2   <u>Assignment Binding on Partnership</u>.  No assignment or transfer of all or any part of the Interest of a Limited Partner permitted to be made under this Agreement shall be binding upon the Partnership unless and until a duplicate original of such assignment or instrument of transfer, duly executed and acknowledged by the assignor or transferor, has been delivered to the Partnership, and such instrument evidences the written acceptance by the assignee of all of the terms and provisions of this Agreement and represents such assignment was made in accordance with all applicable laws and regulations.

9.3   <u>Death, Incapacity or Bankruptcy of a Limited Partner</u>.  In the event of the death of a Limited Partner, the executor, administrator or trustee or legal representative of the deceased Limited Partner, or if such Partner is adjudged incompetent or insane, the committee, guardian or conservator or, if such Partner becomes bankrupt, the trustee or receiver of the estate, shall have all rights of a Limited Partner for the purpose of settling or managing the estate and such power as the decedent or incompetent possessed to assign all or any part of the Interests and to join with the assignee thereof in satisfying conditions precedent to such assignee becoming a Substituted Limited Partner.  The Partnership shall not be dissolved or terminated by reason of the death, insanity, bankruptcy, incapacity, removal, withdrawal, dissolution or admission of any Limited Partner.

- 20 -

1861J

9.4     Substituted Limited Partners.

(a)   Limited Partners who assign all their interests pursuant to an assignment or assignments permitted under this Agreement shall cease to be Limited Partners of the Partnership except that unless and until a Substituted Limited Partner is admitted in his stead, the assigning Limited Partner shall not cease to be a Limited Partner of the Partnership and shall retain the statutory rights and powers of a limited partner under the Act.   Any Person who is an assignee of any of the Interests of a Limited Partner and who has satisfied the requirements of Section 9.1 and Section 9.2 shall become a Substituted Limited Partner when the General Partner has accepted such Person as a Limited Partner and has filed an amended Certificate, if required, to reflect such Person as admitted to the Partnership as a Limited Partner and such Person shall have paid all reasonable legal fees and filing costs, if any, in connection with such Person's substitution as a Limited Partner.   Notwithstanding the foregoing and any other provisions in this Agreement, no Person shall become a Substituted Limited Partner without the consent of the General Partner, which consent may be granted or withheld in its sole discretion.

(b)   Any Person who is an assignee of any of the Interest of a Limited Partner but who does not become a Substituted Limited Partner and desires to make a further assignment of any such Interests, shall be subject to all the provisions of this Article IX to the same extent and in the same manner as any Limited Partner desiring to make an assignment of the Interests.

9.5   Acceptance of Prior Acts.   Any person who becomes a Partner, by becoming a Partner, accepts, ratifies and agrees to be bound by all actions duly taken pursuant to the terms and provisions of this Agreement by the Partnership prior to the date it became a Partner and, without limiting the generality of the foregoing, specifically ratifies and approves all agreements and other instruments as may have been executed and delivered on behalf of the Partnership prior to said date and which are in force and effect on said date.

9.6   Opinion of Counsel.   Notwithstanding anything contained in this Agreement, the General Partner may refuse to accept any transfer or assignment of any Interest without an opinion of counsel in form and substance satisfactory to the General Partner that (i) registration is not required under the Securities Act of 1933, as amended; (ii) such assignment or

- 21 -

transfer does not violate any applicable Federal or state
securities, real estate syndication, or comparable laws; (iii)
such assignment or transfer would not cause a termination of
the Partnership for Federal income tax purposes; and (iv) such
assignment or transfer will not be subject to or such
assignment or transfer, when aggregated with prior transfers in
accordance with applicable law will not result in the
imposition of, any state, city or local transfer taxes,
including, without limitation, any transfer gains taxes.

     9.7 <u>Conversion</u>.  The General Partner reserves the
right, in its sole discretion, to convert any portion or
portions of its Interests as General Partner to that of a
Limited Partner in the Partnership, at any time, subsequent to
any such conversion the Partnership shall continue to be taxed
for Federal income tax purposes as a partnership.


**ARTICLE X.**
**DISSOLUTION, BANKRUPTCY OR**
<u>**WITHDRAWAL OF GENERAL PARTNER**</u>

     10.1 <u>Dissolution, Resignation or Bankruptcy of the
General Partner</u>.  In the event of the dissolution or
resignation of the General Partner, the Partnership shall be
dissolved, unless the Limited Partners by unanimous vote elect
to appoint a new General Partner and continue the business of
the Partnership.  In the event that the Limited Partners do not
elect to continue the business of the Partnership as provided
herein (collectively, a "Terminating Event"), the Partnership
shall be terminated.


**ARTICLE XI.**
**TERMINATION OF PARTNERSHIP**
<u>**LIQUIDATION AND DISTRIBUTION OF ASSETS**</u>

     11.1 <u>Dissolution and Termination</u>.

     (a)  The Partnership shall be liquidated only
upon the occurrence of any of the following:

     (i) dissolution of the Partnership pursuant to
Section 10.1, unless the the Limited Partners acting by
unanimous consent elect to continue the business of the
Partnership;


- 22 -

(ii) the sale or other disposition of all or substantially all of the Partnership's assets and receipt of the final payment of any installment obligation received as a result of any such sale or disposition;

(iii) the written consent of all of the Partners;

(iv) any event which makes it unlawful for the Partnership's business to be continued;

(v) the issuance of a decree by any court of competent jurisdiction that the Partnership be dissolved and liquidated;

(vi) December 31, 2095.

Upon termination, the Partnership shall wind up its affairs and shall be liquidated and a certificate of cancellation of the Partnership's certificate of limited partnership as required by law, shall be filed.

(b)  In the event of the dissolution and liquidation of the Partnership, its business activities shall wind up, any amounts due from the Partners shall be collected, its debts and liabilities shall be paid and its remaining assets, if any, shall be distributed as set forth in Section 11.2 below.  Dissolution shall be effective on the date of the occurrence of an event set forth in Section 11.1(a) but the Partnership shall not terminate until all of the Partnership assets have been liquidated and the proceeds distributed in accordance with the provisions of this Article XI. Notwith-standing the dissolution of the Partnership, prior to the termination of the Partnership, as aforesaid, the business of the Partnership and the affairs of the Partners as such, shall continue to be governed  by this Agreement.

11.2  <u>Distribution Upon Liquidation</u>.  Upon termination of the Partnership, the General Partner or if there shall be none, a duly appointed trustee or liquidator, shall proceed to the liquidation of the Partnership and the proceeds of such liquidation shall be applied and distributed in the following order of priority.

(i) to the payment of expenses of the liquidation;

(ii) to the payment of debts and liabilities of the Partnership, in order of priority as provided by law, other than debts or liabilities owed to Partners;

- 23 -

18613

(iii) to the payment of debts and liabilities of the Partnership owed to the General Partner and its Affiliates;

(iv) to the payment of debts and liabilities of the Partnership owed to the Limited Partners and its Affiliates;

(v) to the setting up of any reserves that the General Partner shall determine are reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership or the Partners; and

(vi) to the Partner in accordance with the order of priority contained in Section 8.1 hereof.

11.3   <u>No Recourse Against the General Partner</u>.   The Limited Partners shall look solely to the assets of the Partnership for the return of their respective investments, and if the property of the Partnership remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return such investment, they shall have no recourse therefor (upon dissolution or otherwise) against the General Partner, or if there shall be none, a duly appointed trustee or liquidator, any of its Affiliates or any other limited Partner.

11.4   <u>Sale of Partnership Assets</u>.

(a)   As expeditiously as possible the General Partner, or any such trustee or liquidator, shall pay all Partnership liabilities, establish the reserves and make the distributions provided for in Section 11.2. Except as agreed by the General Partner, no Partner shall have the right to demand or receive property other than cash upon liquidation, and the General Partner, or any such trustee or liquidator, shall, in any event, have the power to sell Partnership assets for cash as necessary to provide for the payment of all Partnership liabilities and the establishment of reserves. All saleable assets of the Partnership may be sold in connection with any liquidation at public or private sale, at such price and upon such terms as the General Partner, or any such trustee or liquidator, in its sole and absolute discretion deems advisable.

(b)   In connection with the sale by the Partnership and reduction to cash of its assets, although the Partnership has no obligation to offer to sell any property to the Partners, any Partner or any Affiliate of any Partner may bid on and purchase any Partnership assets. If the General

- 24 -

Partner or any such trustee or liquidator, determines that an immediate sale of part or all of the Partnership assets would cause undue loss to the Partners, the General Partner, or any such trustee or liquidator, may either defer liquidation of and withhold from distribution for a reasonable time any assets of the Partnership (except those necessary to satisfy the Partnership's current obligations) or distribute assets to the Partners in kind.  If the Partnership assets or any part thereof are distributed to the Partners in kind, each Partner shall accept in satisfaction of his interest in the Partnership an undivided interest in such Partnership assets subject to a proportionate share of its liabilities.

### ARTICLE XII.
### AMENDMENTS

12.1  Amendments.  Subject to Section 12.2, amendments may be made to this Agreement from time to time by the General Partner with the written consent of the Limited Partners; provided, however, that no such consent of the Limited Partners shall be necessary to the making by the General Partner of any such amendment entered into (i) to add to the duties or obligations of the General Partner, or surrender any right or power granted to the General Partner; (ii) to cure any ambiguity, to correct or supplement any provision herein which may be inconsistent with any other provision herein, or to add any other provision necessary to clarify matters or questions arising under this Agreement which will not be inconsistent with the existing provisions of this Agreement; or (iii) to delete or add any provision of this Agreement required to be so deleted or added by any Federal agency or by a State "Blue Sky" commission or similar agency, which addition or deletion is deemed by such agency or commission to be for the benefit or protection of the Limited Partners; and provided, further, that without the consent of the Partner to be adversely affected by the amendment, this Agreement may not be amended so as to (i) convert a Limited Partner's interest to that of General Partner; (ii) modify the limited liability of a Limited Partner; (iii) except as otherwise provided herein, alter the allocations set forth in Article VII, or (iv) effect any amendment or modification to this Section 12.1, or to take any other action for which such consent is required hereunder.  Any proposed amendment shall be adopted if, within thirty (30) days after the mailing of such amendment to the Limited Partners, the General Partner shall have received written approval thereof from the Limited Partners; provided, however, that

- 25 -

1861J

failure by the Limited Partners to give written notice of
disapproval within thirty (30) days after the mailing (or
actual written notice, if sent by method other than mailing) of
such proposed amendment shall be conclusively deemed to be
approval thereof.  A written approval may not be withdrawn or
voided once it is received by the General Partner.  A Limited
Partner who objects to a proposed amendment may thereafter file
a valid written approval.  Any proposed amendment which is not
adopted may be resubmitted, but if any proposed amendment is
not adopted, any written approval received with respect thereto
shall be void and shall not be effective with respect to any
resubmission of the proposed amendment.

12.2  <u>Additional Limited Partner</u>.  If this Agreement
shall be amended as a result of adding or substituting a
Limited Partner, the amendment to this Agreement shall be
signed by the General Partner and by the Person to be
substituted or added, if a Limited Partner is to be
substituted, and by the assigning Limited Partner.  In making
any amendments, there shall be prepared and filed for
recordation by the General Partner such documents and
certificates as shall be required to be prepared and filed.

## ARTICLE XIII.
## MISCELLANEOUS

13.1  <u>Further Assurances</u>.  Each party to this
Agreement agrees to execute, acknowledge, deliver, file and
record such further certificates, amendments, instruments and
documents, and to do all such other acts and things, as may be
required by law or as, in the opinion of the General Partner,
may be necessary or advisable to carry out the intent and
purpose of this Agreement.

13.2  <u>Notices</u>.  unless otherwise specified in this
Agreement, all notices, demands, elections, requests or other
communications that any party to this Agreement may desire or
be required to give hereunder shall be in writing and shall be
given by depositing the same in the United States mail, first
class postage prepaid, or by hand delivery, addressed as
follows:

(a)  To the Partnership, c/o Blumenfeld
Development Group, L.P., 6800 Jericho Turnpike, Syosset, New
York  11791 or at such other address as may be designed by the
General Partner upon written notice to all of the Partners; and

18613

(b)  to the Partners at their respective addresses set forth herein, or at such other addresses as may be designated by such Partners by written notice to the Partnership.

All notices given pursuant to this Section 13.2 shall be deemed to have been given or served on the date so deposited in the United States mail or, in the case of hand delivery, when so delivered.

13.3  <u>Further Signatures</u>.  Each Limited Partner agrees to execute any document, certificate or instrument that the General Partner reasonably requests in furtherance of the provisions of this Agreement.

13.4  <u>Headings and Captions</u>.  All headings and captions contained in this Agreement and the table of contents hereto are inserted for convenience only and shall not be deemed a part of this Agreement.

13.5  <u>Variance of Pronouns</u>.  All pronouns and all variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or entity may require.

13.6  <u>Counterparts</u>.  This Agreement may be executed in two (2) or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one (1) Agreement.

13.7  <u>Governing Law</u>.  This Agreement shall be construed in accordance with the laws of the State of New York.

13.8  <u>Partition</u>.  The Partners hereby agree that no Partner nor any successor-in-interest to any Partner shall have the right while this Agreement remains in effect, to have the property of the Partnership partitioned, or to file a complaint or institute any proceeding at law or in equity to have the property of the Partnership partitioned, and each Partner, on behalf of himself, his successors, representatives, heirs and assigns, hereby waives any such right.

13.9  <u>Invalidity</u>.  Every provision of this Agreement is intended to be severable.  The invalidity and unenforceability of any particular provision of this Agreement in any jurisdiction shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

- 27 -

18613

13.10  Successors and Assigns.  This Agreement shall be binding  upon the parties hereto and their respective successors, executors, administrators, legal representatives, heirs and legal assigns and shall inure to the benefit of the parties hereto and, except as otherwise provided herein, their respective successors, executors, administrators, legal representatives, heirs and legal assigns.

13.11   Entire Agreement.  This Agreement supersedes all prior agreements among the parties with respect to the subject matter hereof and contains the entire Agreement among the parties with respect to such subject matter.  This instrument may not be amended, supplemented or discharged, and, except as otherwise provided in Section 12.1, no provisions hereof may be modified or waived, except expressly by an instrument in writing signed by the General Partner and the Limited Partners and, in the case of an amendment, modification or supplement, in compliance with Section 12.1.  No waiver of any provision hereof by any party hereto shall be deemed a waiver by any party be deemed a continuing waiver of any matter by such party.  No amendment, modification, supplement, discharge or waiver hereof or hereunder shall require the consent of any person not a party to this Agreement.

13.12   Power of Attorney.  Each Limited Partner hereby makes, constitutes and appoints the General Partner its true and lawful attorney-in-fact with full power and authority in its name, place and stead to make, complete, execute, sign, acknowledge, deliver, file and record at the appropriate public offices such documents as may be necessary to carry out the provisions of this Agreement, including all instruments which the General Partner deems to be in the best interests of the Partnership to file and which are not inconsistent with this Agreement.

1861J

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MAXROB CORP.

By: _____
Edward Blumenfeld,
President

LIMITED PARTNERS:

_____
Jonathan Cohen

_____
Harvey Cohen,

_____
Anthony Galu

B. E. D. REALTY I

By: _____
Edward Blumenfeld,
General Partner

- 29 -

1861J

## EXHIBIT "A"

| General Partner | Percentage Interests | Capital Contributio and Capital Account |
|---|---|---|
| MaxRob Corp.<br>6800 Jericho Turnpike<br>Syosset, New York  11791 | 3.3338% | $ 3.33 |

### Limited Partners

| | | |
|---|---|---|
| Jonathan Cohen<br>6800 Jericho Turnpike<br>Syosset, New York  11791 | 15.0000% | $15.00 |
| Harvey Cohen<br>6800 Jericho Turnpike<br>Syosset, New York  11791 | 5.0000% | $ 5.00 |
| Anthony Galu<br>6800 Jericho Turnpike<br>Syosset, New York  11791 | 3.3333% | $ 3.33 |
| B.E.D. Realty I<br>6800 Jericho Turnpike<br>Syosset, New York  11791 | 73.3334% | $73.34 |

100.0000%

- 30 -

1861J

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF NASSAU           )

On this 6th day of September, 1995, before me personally appeared ANTHONY GALU to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public

MARGARET A. PARLEFSKY
Notary Public, State of New York
No. 4892831
Qualified in Suffolk County
Commission Expires July 27, 19 97

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF NASSAU           )

On the 6th day of September, 1995, before me personally came EDWARD BLUMENFELD, to me known to be the individual and, who, being duly sworn by me, did depose and say that he is a member of the firm of B.E.D. REALTY I, a co-partnership, and that he executed the foregoing instrument in the firm name of B.E.D. REALTY I, and that he had authority to sign the same, and acknowledged that he executed the same as the act and deed of said firm.

_____
Notary Public

MARGARET A. PARLEFSKY
Notary Public, State of New York
No. 4892831
Qualified in Suffolk County
Commission Expires July 27, 19 97

1861J/33

DECLARATION OF SERVICE

State of New York, County of New York )ss:

    Ramsey Hinkle an attorney admitted to practice in the courts of New York, hereby declares:

    I am not a party to this action, am over 18 years of age and am an associate at the law office of Clayman & Rosenberg, LLP 305 Madison Avenue, New York, New York 10165.

    On January 6, 2010, I served a true copy of the annexed OBJECTIONS TO TRUSTEES DETERMINATIONS by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee for that purpose.  Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery.  The address and delivery service are indicated below:

          VIA FEDERAL EXPRESS
          Irving H. Picard, Trustee
          c/o Baker and Hostetler LLP
          45 Rockefeller Plaza – 11th Floor
          New York, New York 10111

    I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on:   January 6, 2010
              New York, New York

                                    _____
                                      Ramsey Hinkle