CLAYMAN & ROSENBERG
Seth L. Rosenberg    (SR4563)
Paul S. Hugel    (PH4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:    (212) 949-8255

*Attorneys for BDG Larkfield Associates, LLC*
(BLMIS Account No. 1-B0081 designated Claim Number 011212)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION            :
CORPORATION,
                                          :        Adv. Pro. No. 08-01789(BRL)
                    Plaintiff,
                                          :
        -against-
                                          :        SIPA Liquidation
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,                           :

                    Defendant            :

-------------------------------------------------------X

**OBJECTION TO TRUSTEE'S DETERMIMNATION OF CLAIM**

BDG Larkfield Associates, LLC ("Objector"), by counsel, CLAYMAN & ROSENBERG,

hereby objects to the Notice of Trustee's Determination of Claim dated December 8, 2009 (the

"Determination Letter"), appended hereto as Exhibit A, as set forth herein.

## BACKGROUND

1.    Objector is a "Customer" as that term is defined by the Securities Investor

Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS").

2.    Objector was and is a member of Bull Market Fund, a general partnership

organized in the State of New York in 1986.

3.    The Bull Market Fund partnership was organized with the knowledge and

encouragement of BMLIS for the purpose of consolidating the bookkeeping for the investment

of certain small investors with BLMIS.

4.    Bull Market Fund received a final statement from BLMIS which indicated that

Bull Market Fund owned securities valued at $36,833,462.86.

5.    On or about December 31, 2008, Objector received a statement from Bull Market

Fund which indicated that Objector's funds invested by Bull Market Fund in BLMIS were

valued at $755,873.

6.    On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

Irving Picard was appointed Trustee ("BLMIS Trustee") with oversight of the liquidation of

BLMIS and responsibility for processing customer claims for money pursuant to SIPA.

7.    By Order dated December 23, 2008, the Court directed the Trustee to disseminate

notice and claim forms to BLMIS customers and set forth claim-filing deadlines.  The Order

further authorized the Trustee, *inter alia*, "to satisfy, within the limits provided by SIPA, those

portions of any and all customer claims and accounts which agree with the Debtor's books and

records," and provided that, where the BLMIS Trustee disagrees with the amount claimed in a

customer's claim form, the BLMIS Trustee, "shall notify such claimant by mail of his

determination that the claim is disallowed, in whole or in part, and the reason therefor…"

8.      On or about June 24, 2009, Objector timely submitted a customer claim form to

SIPC setting forth his claim in the amount of $755,873 ("Objector's claim").  Objector's claim

cross-referenced the BLMIS account of Bull Market Fund. A copy of Objector's claim form is

appended hereto as Exhibit B.

9.      On December 8, 2009, the BLMIS Trustee sent Objector a Determination Letter

denying Objector's claim, "in its entirety."  Exhibit A.  The Determination Letter stated, in part,

"Based upon a review of available books and records of BLMIS by the Trustee's staff, you did

not have an account with BLMIS.  Because you did not have an account, you are not a customer

of BLMIS under SIPA as that term is defined at 15 U.S.C. Section 78111 (2).  Accordingly,

your Claim for securities and/or a credit balance is **DENIED**."

10.      Objector objects to the BLMIS Trustee's disallowance of his claim for the reasons

set forth hereinbelow.

## GROUNDS FOR OBJECTION

11.      First:        The Trustee's definition and application of the term, "account" as

set forth in the Determination Letter is incorrect.

12.      Second:        The Trustee's definition and application of the term, "customer" as

set forth in the Determination Letter is incorrect.

13.      Objector reserves the right to revise or amend this Objection.  Objector's failure

to assert an objection on a particular ground or grounds shall not be construed as a waiver of its

right to object or join in the objection of other claimants on any additional grounds.

14.      Objector reserves all rights set forth in Rule 9014.

15.    Objector incorporates herein by reference all claims and reservations of rights set forth in Objector's claim form. Exhibit B.

## RELIEF SOUGHT

16.    Objector's claim should be allowed in its entirety.

17.    The Court should direct SIPC to pay Objector the full amount of Objector's claim together with interest thereon commencing not later than the date of the Determination Letter.

18.    Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
       January 6, 2010

CLAYMAN & ROSENBERG
By:    Seth L. Rosenberg    (SR 4563)
       Paul S. Hugel       (PH 4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:      (212) 949-8255
rosenberg@clayro.com
hugel@clayro.com

4

## EXHIBIT A

## DETERMINATION LETTER

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008[1]**


**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009

BDG LARKFIELD ASSOCIATES, LLC
6800 JERICHO TURNPIKE
SYOSSET, NY 11791


Dear BDG LARKFIELD ASSOCIATES, LLC :

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 011212:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_____
**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  DAVID KAPLAN
     300 ROBBINS LANE
     SYOSSET, NY  11791

EXHIBIT B

CUSTOMER CLAIM FORM

**BDG LARKFIELD ASSOCIATES, LLC**
**300 ROBBINS LANE**
**SYOSSET, NY 11791**

June 24, 2009

*Via UPS Overnight*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, Texas 75201

Re:    Account Number:  1-B0081
       BDG Larkfield Associates, LLC through Bull Market Fund
       300 Robbins Lane
       Syosset, New York  11791

Dear Mr. Picard:

BDG Larkfield Associates, LLC is a partner in Bull Market Fund, which had an account with Bernard L. Madoff Investment Securities ("BLMIS"), Account No. 1-B0081.

It is our understanding that Bull Market Fund has submitted its own SIPC Customer Claim Form to your office.

We wish to submit our own personal SIPC Customer Claim Form at this time.  We are attaching the following:

1.  Our SIPC Customer Claim Form;
2.  Bull Market Fund's November 30, 2008 BLMIS statement;
3.  Our personal account balance as of December 11, 2008; and
4.  Operating Agreement of BDG Larkfield Associates, LLC

We reserve the right to amend or modify this claim if and to the extent warranted by facts and circumstances not presently known to us, or as a result of a subsequent determination by a court of competent jurisdiction with respect to any issue pertaining to our claim.

This letter is hereby incorporated by reference in and made a part of our SIPC Customer Claim Form.

Very truly yours,

BDG Larkfield Associates, LLC
By:  BDG Asset Management, Inc.,
     its General Manager

By: _____
    Name:  Edward Blumenfeld
    Title:    President



☒Close Window

# Tracking Summary

**Tracking Numbers**

| | |
|---|---|
| **Tracking Number:** | 1Z 12X 236 13 9318 078 0 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 06/25/2009 |
| | 1:10 P.M. |
| Delivered To: | DALLAS,  TX,  US |
| Signed By: | THOMASSON |
| Service: | NEXT DAY AIR SAVER |

Tracking results provided by UPS:  06/25/2009 5:16 P.M.  ET

**NOTICE:** UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited.

☒Close Window

Copyright © 1994-2009 United Parcel Service of America, Inc. All rights reserved.

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**

(Please print or type)

Name of Customer:    BDG LARKFIELD ASSOCIATES, LLC
                     THROUGH BULL MARKET FUND
Mailing Address:     300 ROBBINS LANE
City:        SYOSSET      State:  NY          Zip:  11791
Account No.:         BULL MARKET FUND'S ACCOUNT NO.: 1-B0081
Taxpayer I.D. Number (Social Security No.): 02-0602118

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
         THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
         SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
         PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
         RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
         RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
         SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
         LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
         CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

      a.    The Broker owes me a Credit (Cr.) Balance of        $   –0–_____

      b.    I owe the Broker a Debit (Dr.) Balance of           $   –0–_____

      c.    If you wish to repay the Debit Balance,
            please insert the amount you wish to repay and
            attach a check payable to "Irving H. Picard, Esq.,
            Trustee for Bernard L. Madoff Investment Securities LLC."
            If you wish to make a payment, **it must be enclosed**
            with this claim form.                               $   –0–_____

      d.    If balance is zero, insert "None."                    _____NONE_____

502180406                              1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | SEE BULL MARKET FUND ACCOUNT STATEMENT | $155,873 * | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

* PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

**NOTE:**   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | X * | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: <u>DAVID KAPLAN, 300 ROBBINS LANE,</u>
<u>SYOSSET, NY  11791</u>

502180406

3

* SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

BDG LARKFIELD ASSOCIATES, LLC
By: BDG Asset Management, Inc., its general
manage

Date JUNE 24 , 2009          Signature _____
Edward Blumenfeld, President

Date _____          Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## SUPPLEMENTAL CLAIM INFORMATION
## ATTACHMENT A

Claimant is filing this claim form as a customer of Bernard L. Investment Securities LLC ("BLMIS"), having invested in BLMIS through a partnership, Bull Market Fund ("BMF"). Pursuant to the partnership agreement of BMF and other written agreements amongst the Partners of BMF, BMF invested all of its funds with BLMIS. BMF has informed claimant that its customer account number with BLMIS was 1-B0081. BMF has also advised claimant that it is filing a customer claim for the losses in its customer account with BLMIS.

BMF typically issued quarterly statements showing each partner's account summary. In light of the BLMIS fraud, BMF issued a statement to each partner showing their closing balance as of December 10, 2008, a copy of which is enclosed. Claimant believes that as of December 11, 2008, the amount of claimant's investment was all held in the securities as shown on the November 30, 2008 BLMIS statement for BMF, a copy of which is also enclosed.



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                     NY   11791

11/30/08     1-B0081-3-0     ******6934     1

| | | | 11/30/08 |
|---|---|---|---|
| | BALANCE FORWARD | | 1,428,340.08 |
| | APPLE INC | | |
| 11353 | ABBOTT LABORATORIES | 55,090 | 2,765,308.00 |
| 11588 | AMGEN INC | 60,350 | 207,258.20 |
| | BOEING CO | 51,320 | 126,654.52 |
| 12696 | BAXTER INTERNATIONAL INC | 24,040 | |
| 12293 | BANK OF NEW YORK MELLON CORP | 32,290 | 121,042.76 |
| 12528 | BRISTOL MYERS SQUIBB COMPANY | 20,810 | 128,855.40 |
| | ENTERGY GROUP INC | 62,790 | |
| 13233 | COMCAST CORP CL A | 15,790 | 148,168.40 |
| | CISCO SYSTEMS INC | | |
| 13938 | CVS CAREMARK CORP | 30,510 | 142,973.30 |
| 14172 | CHEVRON CORP | 73,740 | 483,406.68 |
| 14878 | GENERAL ELECTRIC CO | | |
| | GOOGLE | 356,520 | 222,492.48 |
| 15113 | GOLDMAN SACHS GROUP INC | 91,870 | 114,702.76 |
| 15585 | HEWLETT PACKARD CO | | |
| 15818 | INTERNATIONAL BUSINESS MACHS | 92,800 | 405,524.40 |
| | CONTINUED ON PAGE | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

11/30/08    1-B0081-3-0    ******6934    2

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET        NY  11791

| Date | | | Description | Price | Amount |
|---|---|---|---|---|---|
| 11/06 | 17,784 | 16053 | INTEL CORP | 16.070 | 286,499.88 |
| 11/06 | 9,048 | 16288 | JOHNSON & JOHNSON | 61.310 | 555,093.88 |
| 11/06 | 14,556 | | J.P. MORGAN CHASE & CO | 61.310 | 451,502.96 |
| 11/06 | 4,992 | 16758 | KRAFT FOOD INC | 29.210 | 145,936.12 |
| 11/06 | 6,240 | 16993 | COCA COLA CO | 44.490 | 277,866.60 |
| 11/06 | 3,744 | 17220 | MCDONALDS CORP | 57.900 | 211,326.60 |
| 11/06 | | | MEDTRONIC INC | | |
| 11/06 | 21,134 | 17698 | 3M COMPANY | 61.590 | |
| 11/06 | 6,552 | 17933 | ALTRIA GROUP INC | 19.160 | 125,796.96 |
| 11/06 | 6,054 | 18158 | MERCK & CO | 30.780 | 211,567.92 |
| 11/06 | | | MICROSOFT CORP | 22.310 | |
| 11/06 | 21,792 | 18683 | ORACLE CORPORATION | 116.110 | |
| 11/06 | 2,808 | 19343 | OCCIDENTAL PETROLEUM CORP | 54.290 | 152,558.32 |
| 11/06 | 4,992 | 19578 | PEPSICO INC | 57. | 284,743.00 |
| 11/06 | | | PFIZER INC | 57.570 | 321,603. |
| 11/06 | | 20040 | PROCTER & GAMBLE CO | 42.730 | 624,907.04 |
| 11/06 | 6,864 | 20283 | PHILLIP MORRIS INTERNATIONAL | 42.730 | 293,572.72 |
| 11/06 | 5,304 | 20518 | QUALCOMM INC | 37.810 | 200,736.24 |
| 11/06 | | 20758 | SCHLUMBERGER LTD | 51.760 | 193,098. |
| 11/06 | 187,720 | 20988 | AT&T INC | 26.980 | 505,803.60 |
| 11/06 | 11,544 | 21223 | TIME WARNER INC | 10.060 | 116,593.64 |
| 11/06 | 3,120 | 21458 | UNITED PARCEL SVC INC | 52.790 | 164,828.00 |
| 11/06 | 5,616 | 21693 | U S BANCORP | 29.550 | 380,076.80 |
| 11/06 | 3,120 | 21928 | UNITED TECHNOLOGIES CORP | 54.920 | 171,474.40 |
| | | | CONTINUED ON PAGE | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

| DATE | BOUGHT | SOLD | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|------|--------|------|-------------|-------|----------------|-----------------|
| 11/06 | 9,048 | | VERIZON COMMUNICATIONS | 29.980 | 271,620.04 | |
| 11/06 | 10,608 | | WELLS FARGO & CO NEW | 33.660 | 357,459.28 | |
| 11/06 | 74,176 | | WAL MART STORES INC | 54.700 | 4,061,381.56 | |
| 11/06 | 169,948 | | EXXON MOBIL CORP | 73.680 | 12,522,905.84 | |
| 11/05 | | | FIDELITY SPARTAN | DIV | | 2.58 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | DIV 11/05/08 | | | |
| 11/06 | 107,784 | | FIDELITY SPARTAN | 1 | 107,784.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| 11/06 | | 24,408 | FIDELITY SPARTAN | 1 | | 24,408.00 |
| | | | U S TREASURY MONEY MARKET | 999,989 | | 1,032,449,684.25 |
| 11/06 | | 1,032,251,000 | U S TREASURY BILL | | | |
| | | | DUE 12/11/2008 | | | |
| 11/06 | | 3,250,000 | U S TREASURY BILL | 99.921 | | 3,247,474,722.00 |
| | | | DUE 12/18/2008 | | | |
| 11/06 | | 48,826 | U S TREASURY BILL | 99.960 | | 3,923,430.00 |
| | | | DUE 12/18/2008 | | | |
| 11/06 | 3,925,000 | | U S TREASURY BILL | 99.960 | | |
| | | | DUE 01/15/2009 | | | |
| 11/06 | | 49,033 | U S TREASURY BILL | 99.946 | | 3,923,880.50 |
| | | | DUE 01/15/2009 | | | |
| 11/06 | 3,925,000 | | U S TREASURY BILL | 99.984 | | 3,923,409.00 |
| | | | DUE 01/22/2009 | | | |

CONTINUED ON PAGE

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/D BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY   11791

1-B0081-3-0        11/30/08        ******6934

| Trade Date | Quantity | | | Description | Price | Amount Debited | Amount Credited |
|---|---|---|---|---|---|---|---|
| 11/06 | 3,925,000 | | 49461 | U S TREASURY BILL DUE 01/29/2009 | 99.928 | | 3,922,174.0 |
| 11/06 | 18,500,000 | | 499371 | U S TREASURY BILL DUE 2/12/2009 | 99.902 | 18,049,883,000 | |
| 11/06 | 2,575,000 | | 498390 | U S TREASURY BILL DUE 09/26/2009 | 99.802 | 2,569,901,500 | |
| 11/06 | 2,675,000 | | 50127 | U S TREASURY BILL DUE 3/26/2009 | 99.751 | 2,569,588.25 | |
| 11/06 | 2,575,000 | | 50956 | U S TREASURY BILL DUE 04/09/2009 | 99.726 | 2,567,944.50 | |
| 11/07 | 1,944 | | 23409 | APPLE INC | 108.800 | 211,584.20 | |
| 11/07 | 3,456 | | 23639 | ABBOTT LABORATORIES | 56.590 | 195,713.04 | |
| 11/07 | 2,376 | | 23874 | AMGEN INC | 62.070 | 147,573.12 | |
| 11/07 | 1,728 | | 24100 | BOEING CO | 56.300 | 97,395.92 | |
| 11/07 | 11,016 | | 24341 | BANK OF AMERICA | 23.760 | 261,996.52 | |
| 11/07 | 1,296 | | 24579 | BAXTER INTERNATIONAL INC | 61.740 | 80,066.04 | |
| 11/07 | 2,376 | | 24814 | BANK OF NEW YORK MELON CORP | 34.210 | 81,377.96 | |
| 11/07 | 4,320 | | 22524 | BRISTOL-MYERS SQUIBB COMPANY | 20.100 | 86,900.20 | |
| 11/07 | 11,664 | | 25519 | CITI GROUP INC | 14.410 | 168,554.24 | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1843
Fax (212) 838-4061

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

11/30/08          *****6934

1-B0061-3-0

| DATE | | | | SECURITY | | MARKET PRICE | AMOUNT/DIVIDEND |
|---|---|---|---|---|---|---|---|
| 11/07 | 6,264 | | 25754 | COMCAST CORP | 17.390 | 109,180.96 |
| 11/07 | | | 25909 | COVIDIEN LTD | | 172,043.40 |
| 11/07 | 127,744 | | 26224 | CISCO SYSTEMS INC | 17.580 | 224,546.52 |
| 11/07 | 3,024 | | 26459 | CVS CAREMARK CORP | 31.720 | 96,041.28 |
| 11/07 | 4,536 | | 26694 | CHEVRON CORP | 75.450 | 342,422.20 |
| 11/07 | 24,100 | | 26925 | THE WALT DISNEY CO | | 110,300.48 |
| 11/07 | 22,680 | | 27100 | GENERAL ELECTRIC CO | | 450,197.80 |
| 11/07 | 432 | | 27399 | GOOGLE | 349.160 | 150,854.12 |
| 11/07 | 864 | | 27636 | GOLDMAN SACHS GROUP INC | 85.070 | 76,990.48 |
| 11/07 | 5,400 | | 28109 | HOME DEPOT INC | | 202,692.56 |
| 11/07 | 3,024 | | 28339 | HEWLETT-PACKARD CO | 96.820 | 209,844.00 |
| 11/07 | 12,096 | | 28574 | INTEL CORP | 92.430 | 219,628.32 |
| 11/07 | | | 29047 | JOHNSON & JOHNSON | 16.900 | 194,019.00 |
| 11/07 | 8,208 | | 29279 | JPM MORGAN CHASE & CO | 40.900 | 374,121.26 |
| 11/07 | 3,240 | | 29513 | KRAFT FOOD INC | 29.710 | 336,527.68 |
| 11/07 | 4,320 | | 29746 | COCA-COLA CO | 46.500 | 96,389.40 |
| 11/07 | 22,970 | | 29755 | MCDONALDS CORP | | 201,397.60 |
| 11/07 | 1,512 | | 29960 | MEDTRONIC INC | 41.440 | 128,573.70 |
| 11/07 | 4,536 | | 30219 | 3M COMPANY | 64.080 | 971,843.64 |
| 11/07 | 11,752 | | 30455 | ALTRIA GROUP INC | 19.370 | 98,158.56 |
| 11/07 | 11,200 | | 30690 | MERCK & CO | | 88,043.32 |
| 11/07 | | | 30924 | MICROSOFT CORP | 22.490 | 1,255,037.95 |
| 11/07 | 8,640 | | 31159 | ORACLE CORPORATION | 18.470 | 397,094.20 |
| | | | | CONTINUED ON NEXT PAGE | | 159,925.80 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY    11791

| Date | (col) | Number | Description | No. of Shares | Amount Debited | Amount Credited |
|------|-------|--------|-------------|---------------|----------------|-----------------|
| 11/07 | 1,728 | 31864 | OCCIDENTAL PETROLEUM CORP | 54,380 | | 949,037.64 |
| 11/07 | 3,456 | 32009 | PEPSICO INC | 58,630 | | 202,763.28 |
| 11/07 | | | PROCTER & GAMBLE CO | 65,180 | | 284,971.00 |
| 11/07 | 67,590 | 32569 | PROCTER & GAMBLE CO | 43,640 | | 436,702.28 |
| 11/07 | 4,536 | 32804 | PHILLIP MORRIS INTERNATIONAL | 43,640 | | 198,132.04 |
| 11/07 | 3,672 | 33200 | QUALCOMM INC | 37,690 | | 136,543.68 |
| 11/07 | | | SCHLUMBERGER LTD | 1,771 | | 134,290.085 |
| 11/07 | 12,528 | 33509 | AT&T INC | 208,910 | | 362,605.48 |
| 11/07 | 7,776 | 33744 | TIME WARNER INC | 10,110 | | 78,926.36 |
| 11/07 | 27,469 | 33973 | UNITED PARCEL SVC INC | 53,680 | | 116,034.80 |
| 11/07 | | | US BANCORP | | | |
| 11/07 | 3,888 | 34214 | UNITED TECHNOLOGIES CORP | 363,790 | | 1,097,066.521 |
| 11/07 | 2,160 | 34449 | VERIZON COMMUNICATIONS | 56 | | 121,045.00 |
| 11/07 | 0,960 | 34614 | WAL-MART STORES INC NEW | 31,810 | | 192,627.08 |
| 11/07 | 4,968 | 35154 | WAL-MART STORES INC | 344,088 | | 250,370.521 |
| 11/07 | 11,448 | 35309 | EXXON MOBIL CORP | 564,750 | | 282,1092.04 |
| 11/07 | | | FIDELITY SPARTAN | 75,280 | DIV | 862,262.44 |
| | | | U S TREASURY MONEY MARKET | | | .34 |
| 11/07 | 18,784 | 10863 | FIDELITY SPARTAN | 1 | 18,784.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| 11/07 | 2,375,400 | 31714 | U.S. TREASURY BILL | 999,925 | | 2,373,101.25 |
| | | | DUE 02/05/09 2/05/2009 | | | |
| | | | CONTINUED ON PAGE 7 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADF

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET              NY   11791

7
11/30/08
*******6934
1-B0081-3-0

| Date | | Qty | | | Amount |
|---|---|---|---|---|---|
| 11/07 | 2,450,000 | 11382 | U S TREASURY BILL DUE 02/19/2009 | 99.887 | 2,447,231.- |
| 11/07 | 2,450,000 | 11597 | U S TREASURY BILL DUE 02/26/2009 | 99.889 | 2,447,280.50 |
| 11/07 | 2,450,000 | 11565 | U S TREASURY BILL DUE 03/05/2009 | 99.766 | 2,971,947.50 |
| 11/07 | 2,450,000 | 12019 | U S TREASURY BILL DUE 03/12/2009 | 99.840 | 2,446,080.00 |
| 11/07 | 1,175,000 | 12141 | U S TREASURY BILL DUE 04/09/2009 | 99.720 | 1,171,710.00 |
| 11/07 | 1,175,000 | 12361 | U S TREASURY BILL DUE 4/16/2009 | 99.674 | 1,171,184.25 |
| 11/10 | 0,3.97 | 12341 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 30,199.00 |
| 11/10 | 2,376 | 35864 | APPLE INC | 108.720 | 258,413.72 |
| 11/10 | 4,224 | 36099 | ABBOTT LABORATORIES | 55.910 | 236,331.84 |
| 11/10 | 2,304 | 36007 | AMGEN INC | 75.800 | 173,252.80 |
| 11/10 | 2,112 | 36569 | BOEING CO | 52.190 | 110,409.28 |
| 11/10 | 13,728 | 36904 | BANK OF AMERICA | 24.050 | 330,707.40 |
| | | | CONTINUED ON PAGE | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| YOUR ACCOUNT NUMBER | TAX PERIOD | YOUR TAX IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | ******6934 | 8 |

| DATE | AMOUNT OF TRANSACTION | BOUGHT/RECEIVED | SOLD/DELIVERED | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | 1,848 | | 37039 | BAXTER INTERNATIONAL INC | 60.770 | 112,375.96 | |
| 11/10 | 3,360 | | 37374 | BANK OF NEW YORK MELLON CORP | 33.480 | 106,170.64 | |
| 11/10 | | | 37109 | BRISTOL MYERS SQUIBB COMPANY | 21.130 | 110,303.64 | |
| 11/10 | 17,048 | | 37744 | ANHEUSER-BUSCH COS INC | 64.090 | 1184,511.52 | |
| 11/10 | 15,048 | | 37979 | CITI GROUP INC | 14.270 | 215,335.96 | |
| 11/10 | 7,920 | | 28214 | COMCAST CORP | 17.410 | 138,203.20 | |
| 11/10 | 4,224 | | 38441 | CONOCOPHILLIPS | 54.150 | 229,803.12 | |
| 11/10 | 16,104 | | 38684 | CISCO SYSTEMS INC | 18.080 | 291,904.32 | |
| 11/10 | 3,960 | | 38939 | CVS CAREMARK CORP | 31.300 | 124,106.00 | |
| 11/10 | | | 39054 | CHEVRON CORP | | | |
| 11/10 | 5,016 | | 39389 | THE WALT DISNEY CO | 25.600 | 129,910.00 | |
| 11/10 | 28,776 | | 39624 | GENERAL ELECTRIC CO | 20.530 | 591,922.28 | |
| 11/10 | 528 | | 39850 | GOOGLE | 363.590 | 124,381.20 | |
| 11/10 | | | 40039 | GOLDMAN SACHS GROUP INC | 92.980 | 109,203.56 | |
| 11/10 | 47,752 | | 40329 | HOME DEPOT INC | 22.050 | 109,203.56 | |
| 11/10 | 6,864 | | 40564 | HEWLETT-PACKARD CO | 37.290 | 256,232.56 | |
| 11/10 | 3,696 | | 40709 | INTERNATIONAL BUSINESS MACHS | 92.660 | 342,618.36 | |
| 11/10 | | | 41034 | JOHNSON & JOHNSON | | 241,109.80 | |
| 11/10 | 10,032 | | 41504 | J.P. MORGAN CHASE & CO | 41.730 | 419,036.36 | |
| 11/10 | 4,224 | | 41739 | KRAFT FOOD INC | 30.300 | 121,310.40 | |
| 11/10 | 5,544 | | 41914 | MCDONALDS CORP | 57.990 | 152,473.80 | |
| 11/10 | 3,168 | | 42209 | MEDTRONIC INC | | 181,480.64 | |
| 11/10 | 3,168 | | 42444 | MEDTRONIC INC | 40.300 | 127,796.40 | |

CONTINUED ON PAGE 9

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET    NY    11791

1-B0081-3-0    11/30/08    *****6934    9

| Date | Bought/Received | | Description | | Amount Debited/Credited |
|---|---|---|---|---|---|
| 11/10 | 1,848 | 42679 | 3M COMPANY | 644,690 | 119,620.12 |
| 11/10 | 5,544 | 42914 | ALTRIA GROUP INC | 18,890 | 104,947.16 |
| 11/10 |  |  | MERCK & CO |  | 177,234.08 |
| 11/10 | 217,384 | 43584 | MICROSOFT CORP | 23,200 | 496,985.80 |
| 11/10 | 10,624 | 43619 | ORACLE CORPORATION | 18,600 | 201,758.40 |
| 11/10 | 2,336 | 44324 | OCCIDENTAL PETROLEUM CORP | 56,010 | 133,174.76 |
| 11/10 |  |  | PEPSICO INC |  | 243,259.20 |
| 11/10 | 18,744 | 44794 | PFIZER INC | 17,960 | 337,592.24 |
| 11/10 | 8,184 | 45029 | PROCTER & GAMBLE CO | 65,230 | 534,169.32 |
| 11/10 | 5,544 | 45264 | PHILLIP MORRIS INTERNATIONAL | 44,030 | 244,321.32 |
| 11/10 |  |  | QUALCOMM INC |  |  |
| 11/10 |  |  | SCHLUMBERGER LTD | 36,500 |  |
| 11/10 | 16,368 | 45969 | AT&T INC | 28,500 | 468,451.44 |
| 11/10 | 9,504 | 46204 | TIME WARNER INC | 11,010 | 105,019.04 |
| 11/10 |  |  | UNITED PARCEL SVC INC CLASS B |  | 123,773.80 |
| 11/10 | 4,752 | 46674 | U S BANCORP | 31,510 | 149,925.52 |
| 11/10 | 2,640 | 46902 | UNITED TECHNOLOGIES CORP | 56,430 | 149,010.20 |
| 11/10 |  |  | VERIZON COMMUNICATIONS | | 252,928.00 |
| 11/10 |  |  | WELLS FARGO & CO NEW | 04,800 | 310,928.60 |
| 11/10 | 6,072 | 47614 | WAL-MART STORES INC | 55,710 | 338,513.12 |
| 11/10 | 14,256 | 47849 | EXXON MOBIL CORP | 75,800 | 1,081,174.80 |
| | | | FIDELITY SPARTAN | | |
| | | | U S TREASURY MONEY MARKET | | |
| | | | DIV 11/10/08 | | |

CONTINUED ON PAGE

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BERNARD L. MADOFF INVESTMENT SECURITIES Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET        NY   11791

| PAGE | DATE | ACCOUNT NUMBER | ACCOUNT NUMBER |
|---|---|---|---|
| 10 | 11/30/08 | ******6934 | 1-B0081-3-0 |

| DATE | BOUGHT RECEIVED OR IN | SOLD DELIVERED OR OUT | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/10 | | 30,199 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 30,199.00 |
| 11/10 | 2,600,000 | | U.S. TREASURY BILL DUE 03/19/2009 3/19/2009 | 99.867 | | 2,596,542.00 |
| 11/10 | 2,575,000 | | U.S. TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.834 | 2,570,725.50 | |
| 11/10 | 2,575,000 | | U.S. TREASURY BILL DUE 4/02/2009 4/02/2009 | 99.770 | 2,569,077.50 | |
| 11/10 | 3,750,000 | | U.S. TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.742 | 3,740,325.00 | |
| 11/10 | 1,115,000 | | U.S. TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | 1,171,310.50 | |
| 11/10 | 50,000 | | U.S. TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | 49,843.00 | |
| 11/10 | 685 | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 685.00 | |
| 11/24 | 104,400 | 2,944,422 | CHECK TIME WARNER INC | 94,728 CXL | 100,000,000.00 | 100,672.00 |
| 11/24 | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV 11/24/2008 | DIV | | .05 |

CONTINUED ON PAGE   11

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET       NY    11791

11    11/30/08    ******6934    1-B0081-3-0

| Date | | Description | | Amount |
|------|--------|-------------|------|--------|
| 11/24 | 685 | 29393 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 685.00 |
| 11/18 | | 2966 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | CA 1,257.00 |
| 11/18 | | | CHECK | CA 25,000.00 |
| 11/18 | | | CHECK | CA 25,000.00 |
| 11/18 | | | CHECK | CA 15,000.00 |
| 11/18 | | | CHECK | CA 100,000.00 |
| 11/18 | | | CHECK | CA 200,000.00 |
| 11/18 | 5,574 | 42206 | ANHEUSER BUSCH COS INC | CA 325,000.00 5,981,300 |
| 11/18 | | 49480 | U S TREASURY BILL DUE 4/16/2009 | 70.830 374,062.45 |
| 11/18 | 13,717 | 49723 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 13,717.00 |
| 11/18 | 450,000 | 49954 | U S TREASURY BILL DUE 4/16/2009 | 99.830 449,235.00 |
| 11/18 | 5,785 | 49995 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 5,785.00 |
| 11/19 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | DIV .45 |
| 11/19 | 20,839 | 50057 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 20,839.00 |
| | | | CONTINUED ON PAGE 27 | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| | | | | |
|---|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | *****6934 | 12 | |

| Date | Bought/Received | Sold/Delivered | Description | Price | Amount Debited | Amount Credited |
|---|---|---|---|---|---|---|
| 11/19 | 3,525,000 | | U S TREASURY BILL DUE 03/26/2009 | 99.926 | | 3,522,391.50 |
| 11/19 | 9,120 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 9,120.00 | |
| 11/20 | | 3,525,000 | U S TREASURY BILL DUE 03/26/2009 CH | 99.926 | 675,000.00 | 3,523,860.50 |
| 11/20 | | 2,850,000 | U S TREASURY BILL DUE 03/26/2009 | 99.947 | | 2,846,489.50 |
| 11/20 | 171 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 171.00 | |
| 11/25 | 662 | | ADULT LABORATORIES | | | |
| 11/25 | 14,568 | | AMGEN INC | | | |
| 11/25 | 1,078 | | APPLE INC | | | |
| 11/25 | | | BANK OF AMERICA | | | |
| 11/25 | 1,176 | | BAXTER INTERNATIONAL INC | | | |
| 11/25 | 1,960 | | BANK OF NEW YORK MELLON CORP | | | |
| 11/25 | 5,884 | | BRISTOL MYERS SQUIBB COMPANY | | | |
| 11/25 | | | CITI GROUP INC | | | |
| 11/25 | 2,842 | | COCA COLA COMPANY | | | |
| 11/25 | | | COMCAST CORP CL A | | | |

CONTINUED ON PAGE 13

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

MADF

385 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel: 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

| DATE | BOUGHT | SOLD | DESCRIPTION | PRICE | AMOUNT DEBITED/(CREDITED) |
|------|--------|------|-------------|-------|---------------------------|
| 11/25 | 1,568 | | CONOCOPHILLIPS | 45.100 | 70,778.80 |
| 11/25 | 5,890 | | CISCO SYSTEMS INC | 14.970 | 88,253.60 |
| 11/25 | 1,470 | | DNS CO REMARK STOD | 27.040 | 39,806.80 |
| 11/25 | 2,050 | | CHEVRON CORP | 68.710 | 141,407.18 |
| 11/25 | 1,862 | | THE WALT DISNEY CO | 19.760 | 36,867.12 |
| 11/25 | 686 | | EXELON CORP | 48.740 | 33,462.64 |
| 11/25 | | | GENERAL ELECTRIC CO | 14.010 | 151,450.80 |
| 11/25 | 190 | | GOOGLE | 275 | 59,907.00 |
| 11/25 | 1,666 | | HOME DEPOT INC | 19.530 | 32,602.98 |
| 11/25 | 2,450 | | HEWLETT-PACKARD CO | 12.990 | 80,923.50 |
| 11/25 | | | INTL NATIONAL BUSINESS MACHS | | 103,003.76 |
| 11/25 | 3,684 | | INTEL CORP | | 694,969.288 |
| 11/25 | 2,842 | | JOHNSON & JOHNSON | 57.650 | 163,954.30 |
| 11/25 | 3,724 | | J.P. MORGAN CHASE & CO | 27.760 | 103,526.24 |
| 11/25 | | | KRAFT FOODS INC | 25.760 | |
| 11/25 | 1,960 | | COCA COLA CO | 42.040 | 82,447.00 |
| 11/25 | 1,078 | | MCDONALDS CORP | 55 | 59,335.00 |
| 11/25 | 1,075 | | MEDTRONIC INC | 30.800 | 36,267.80 |
| 11/25 | 2,058 | | 3M COMPANY | 116.250 | 40,007.00 |
| 11/25 | 2,156 | | ALTRIA GROUP INC | 15 | 33,524.50 |
| 11/25 | 7,840 | | MERCK & CO | 25 | 53,986.00 |
| 11/25 | | | MICROSOFT CORP | 18.100 | 142,217.00 |
| 11/25 | 662 | | ORACLE CORPORATION | 14.050 | 65,072.00 |
| 11/25 | | | OCCIDENTAL PETROLEUM CORP | 44.570 | 30,345.74 |
| 11/25 | 1,568 | | PEPSICO INC | 51.800 | 81,204.40 |
| | | | CONTINUED ON PAGE 2 | | |

11/30/08          1-80081-3-0          ******6934          13

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
MADF INVESTMENT SECURITIES LLC
New York □ London

New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 9438 6322

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| 11/25 | 6,762 | | PFIZER INC | 15.320 | 103,863.84 | |
| 11/25 | 2,940 | | PROCTER & GAMBLE CO | 61.940 | 182,220.50 | |
| 11/25 | 2,048 | | PHILIP MORRIS INTERNATIONAL | 36.300 | 74,952.04 | |
| 11/25 | 1,666 | | QUALCOMM INC | 29.850 | 49,796.10 | |
| 11/25 | 1,176 | | SCHLUMBERGER LTD | 46.270 | 54,460.52 | |
| 11/25 | 5,898 | | AT&T INC | 25 | 147,235.00 | |
| 11/25 | 3,625 | | UNITED PARCEL SVC INC | 8.010 | 29,109.26 | |
| 11/25 | 980 | | CLASS B | 504.760 | 49,783.80 | |
| 11/25 | 1,764 | | U S BANCORP | 23.400 | 41,347.60 | |
| 11/25 | 2,900 | | UNITED TECHNOLOGIES CORP | 47.090 | 47,051.20 | |
| 11/25 | 2,842 | | VERIZON COMMUNICATIONS | 26.570 | 75,621.94 | |
| 11/25 | 3,822 | | WELLS FARGO & CO NEW | 23.820 | 91,192.04 | |
| 11/25 | 2,254 | | WAL-MART STORES INC | 51.450 | 116,058.30 | |
| 11/25 | 1,372 | | EXXON MOBIL CORP | 33 | 45,330.00 | |
| 11/25 | 5,292 | | FIDELITY SPARTAN | 72 | 381,235.00 | |
| | | | U S TREASURY MONEY MARKET | DIV | | .93 |
| 11/25 | 97,291 | | FIDELITY SPARTAN | | | |
| | | | DUE 4/16/2009 | | | |
| 11/25 | | 3,725,000 | U S TREASURY MONEY MARKET | 99.878 | | 3,720,455.50 |
| | | | U S TREASURY BILL | | | |
| | | | DUE 4/16/2009 4/16/2009 | | | |
| 11/25 | 42,963 | | FIDELITY SPARTAN | 1 | 42,963.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | CONTINUED ON PAGE 15 | | | |

ACCOUNT NUMBER: 1-B0081-3-0

DATE: 11/30/08

TAX NUMBER: ***xxx-xx-6934

PAGE: 14

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 11/30/08 | | | | | | |
| ******6934 | | | | | | |
| 1-80081-3-0 | | | | | | |
| 15 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/26 | 5,000 | | CHECK | CA | | 5,000.00 |
| 11/26 | | 78108 | FIDELITY SPARTAN | 1 | 5,000.00 | |
| 11/28 | 100 | 78420 | U.S. TREASURY MONEY MARKET | CM | | |
| 11/28 | | | BAXTER INTERNATIONAL INC | 52.640 | 52,640.00 | 5,260.00 |
| | | | CHECK | CH | 50,000.00 | 2.23 |
| | | | FIDELITY SPARTAN | DIV | | |
| | | | U.S. TREASURY MONEY MARKET | | | |
| 11/28 | 47,963 | 78257 | DIV 11/28/08 | | | |
| | | | FIDELITY SPARTAN | 1 | 47,226.00 | 47,963.00 |
| 11/28 | 47,226 | 78124 | U.S. TREASURY MONEY MARKET | | | |
| | | | FIDELITY SPARTAN | 1 | | |
| | | | U.S. TREASURY MONEY MARKET | | | |
| | | | NEW BALANCE | | | |
| | | | SECURITY POSITIONS | | 5,119,352.95 | |
| | 53,496 | | AT&T INC | MKT PRICE | | |
| | 14,240 | | ABBOTT LABORATORIES | 28.560 | | |
| | 128,390 | | ALTRIA GROUP INC | 52.390 | | |
| | 9,790 | | AMGEN INC | 15.380 | | |
| | 8,010 | | APPLE INC | 55.650 | | |
| | 45,260 | | BANK OF AMERICA | 92.670 | | |
| | 109,000 | | BANK OF NEW YORK MELLON CORP | 16.250 | | |
| | 5,504 | | BAXTER INTERNATIONAL INC | 30.250 | | |
| | 6,336 | | BOEING CO | 5.900 | | |
| | | | | 42.630 | | |
| | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

PERIOD ENDING: 11/30/08

YOUR ACCOUNT NUMBER: 1-B0081-3-0

PAGE: 16

YOUR TAX PAYER IDENTIFICATION NUMBER: ******6934

| Bought/Received or Long | Sold/Delivered or Short | Description | Price per Share | Amount Debited | Amount Credited |
|---|---|---|---|---|---|
| 18,064 | | BRISTOL MYERS SQUIBB COMPANY | 20.700 | | |
| 13,134 | | CVS CAREMARK CORP | 28.930 | | |
| 38,954 | | CHEVRON CORP | 79.600 | | |
| 53,760 | | CISCO SYSTEMS INC | 16.540 | | |
| 49,868 | | CITI GROUP INC | 8.290 | | |
| 18,064 | | COCA COLA CO | 46.870 | | |
| 490 | | COLGATE PALMOLIVE CO | 65.870 | | |
| 26,386 | | CONOCO PHILLIPS CONP | 44.340 | | |
| | | CL A | | | |
| 14,024 | | CONAGRA FOODS INC | 52.520 | | |
| 17,212 | | WALT DISNEY CO | 19.200 | | |
| 686 | | EXXON MOBIL CORP | 56.210 | | |
| 47,844 | | GENERAL ELECTRIC CO | 80.150 | | |
| 95,620 | | GOLDMAN SACHS GROUP INC | 17.170 | | |
| 1,780 | | GOOGLE | 296.910 | | |
| 22,514 | | HEWLETT PACKARD CO | 35.280 | | |
| 35,706 | | HOME DEPOT INC | 23.110 | | |
| 42,780 | | INTEL CORP | | | |
| 53,110 | | INTERNATIONAL BUSINESS MACHS | 81.000 | | |
| 33,820 | | J.P. MORGAN CHASE & CO | 31.660 | | |
| 25,594 | | JOHNSON & JOHNSON | 58.500 | | |
| 111,926 | | KRAFT FOODS INC | | | |
| 109,388 | | MCDONALDS CORP | 57.510 | | |
| 10,464 | | MEDTRONIC INC | 30.520 | | |
| | | CONTINUED ON PAGE 17 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| PAGE | DATE | ACCOUNT NUMBER |
|---|---|---|
| 17 | 11/30/08 | ******6934 / 1-B0081-3-0 |

| DATE | BOUGHT Received or Delivered In Long | SOLD Delivered or Received Out Short | SECURITY | PRICE OR SYMBOL | AMOUNT DEBITED OR CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| | 19,580 | | MERCK & CO | 26.720 | |
| | 74,776 | | MICROSOFT CORP | 20.220 | |
| | 7,794 | | OCCIDENTAL PETROLEUM CORP | 14.040 | |
| | 36,176 | | ORANGE CORPORATION | 16.090 | |
| | 14,240 | | PEPSICO INC | 56.700 | |
| | 61,722 | | PFIZER INC | 16.430 | |
| | 19,002 | | PHILIP MORRIS INTERNATIONAL INC | | |
| | 27,492 | | PROCTER & GAMBLE CO | 64.360 | |
| | 15,130 | | QUALCOMM INC | 33.570 | |
| | 10,944 | | SCHLUMBERGER LTD | 50.740 | |
| | 3,226 | | FIDELITY SPARTAN | | |
| | | | U.S. TREASURY - MONEY MARKET | | |
| | 6,230 | | 3M COMPANY | 66.930 | |
| | 22,050 | | TIME WARNER INC | | |
| | 16,020 | | U.S. BANCORP | 2.050 | |
| | 81,900 | | UNITED PARCEL SVC INC | 57.000 | |
| | | | CLASS B | | |
| | 8,900 | | UNITED TECHNOLOGIES CORP | 48.530 | |
| | 251,658 | | VERIZON COMMUNICATIONS | | |
| | 204,470 | | WAL MART STORES | | |
| | 30,750 | | WELLS FARGO & CO NEW | 28.890 | |
| | 1,372 | | WYETH | 36.010 | |
| | | | MARKET VALUE OF SECURITIES | | |
| | | | LONG | 37,919,842.86 | |
| | | | SHORT | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PAGE 1

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY    11791

Date: 11/30/08          Account no.: ******6934          1-800081-4-0

| DATE | AMOUNT RECEIVED OR DELIVERED | | DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/06 | | | BALANCE FORWARD | | | 1,428,341.00 |
| 11/06 | 312 | | NOVEMBER 470 CALL | | | 635,048.00 |
| 11/06 | | 312 | S & P 100 INDEX | | | |
| 11/07 | 216 | | NOVEMBER 460 PUT | 20.500 | 639,912.00 | 47,904.00 |
| 11/07 | | 216 | S & P 100 INDEX | | | |
| 11/07 | 264 | | NOVEMBER 460 CALL | 13.800 | 298,296.00 | 327,096.00 |
| 11/10 | | 264 | S & P 100 INDEX | | | |
| 11/10 | 264 | | NOVEMBER 475 PUT | 16.800 | 443,784.00 | |
| 11/19 | | 792 | S & P 100 INDEX | | | 2,058,408.00 |
| 11/19 | 792 | | DECEMBER 420 CALL | 30 | 2,376,792.00 | |
| 11/19 | | 264 | DECEMBER 420 PUT | | | |
| 11/19 | 264 | | NOVEMBER 470 CALL | .900 | 24,024.00 | |
| 11/19 | | | NOVEMBER 485 CALL | | | 2,375,472.00 |
| 11/19 | 264 | | NOVEMBER 460 PUT | 59 | | 1,557,336.00 |
| | | | NOVEMBER 475 PUT | | | |
| | | | CONTINUED ON PAGE | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| 11/25 | 98 | 72033 | S & P 100 INDEX DECEMBER 380 CALL | 34 | | 333,102.40 |
| 11/25 | | 72271 | S & P 100 INDEX DECEMBER 370 PUT | 21 | 205,898.00 | |
| | | | NEW BALANCE | | | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| | 792 | | S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | 5,119,353. |
| | 98 | | S & P 100 INDEX DECEMBER 380 CALL | 61 | | |
| | | | S & P 100 INDEX DECEMBER 309 CALL | 16.500 | | |
| 792 | | | S & P 100 INDEX DECEMBER 430 PUT | 5.300 | | |
| 98 | | | S & P 100 INDEX DECEMBER 370 PUT | | | |
| | | | MARKET VALUE OF SECURITIES   SHORT | | | 2,443,100.00 |
| | | | LONG | | 1,355,170.00 | |

1-B0081-4-0          11/30/08          *******6934          2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# MEMORANDUM

| | |
|---|---|
| **TO:** | **BDG Larkfield Associates, LLC** |
| **FROM:** | Harvey Cohen |
| **RE:** | Bull Market Fund |
| **DATE:** | **December 31, 2008** |

Please find below your balance in the Bull Market Fund as of December 10, 2008. This includes your November 30, 2008 balance plus any additions, if applicable, made subsequent to November 30, 2008 and sent to Bernard L. Madoff Investment Securities, LLC.

Account Balance as of December 10, 2008:  $755,873

Please call me if I can be of further service.

## Operating Agreement of
## BDG Larkfield Associates, LLC

This Operating Agreement (this "Agreement") is entered into as of this 28th day of November, 2003, by and among BDG Asset Management, Inc., as General Manager, and the Members who are the signatories hereto.

### EXPLANATORY STATEMENT

The parties have agreed to organize and operate a limited liability company in accordance with the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the parties, intending legally to be bound, agree as follows:

## Article I
## Defined Terms

The following terms shall have the meaning specified in this Article I. Other terms are defined in the text of this Agreement; and, throughout this Agreement, those terms shall have the meanings respectively ascribed to them in their definitions.

"Adjusted Capital Account Deficit" means, with respect to any Interest Holder, the deficit balance, if any, in the Interest Holder's Capital Account as of the end of the relevant taxable year, after giving effect to the following adjustments:

  (i)  the deficit shall be decreased by the amounts which the Interest Holder is obligated to restore pursuant to Section 4.4.2 or is deemed obligated to restore pursuant to Regulation Section 1.704-1(b)(2)(ii)(c); and

  (ii)  the deficit shall be increased by the items described in Regulation Sections 1.704-1(b)(2)(ii)-(d)(4), (5), and (6).

"Adjusted Capital Balance" means, as of any day, an Interest Holder's total Capital Contributions less all amounts actually distributed to the Interest Holder pursuant to Sections 4.2.3.4.1 and 4.4 hereof.  If any Interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Adjusted Capital Balance of the transferor to the extent the Adjusted Capital Balance relates to the Interest transferred.

"Affiliate" means, with respect to any Member or the General
Manager, any Person:   (i) which owns more than 50% of the voting
interests in the Member; or (ii) in which the Member owns more
than 50% of the voting interests; or (iii) in which more than 50%
of the voting interests are owned by a Person who has a
relationship with the Member described in clause (i) or (ii)
above or (iv) who otherwise controls, is controlled by, or under
common control with, another Person.

"Agreement" means this Operating Agreement, as amended from
time to time.

"Capital Account" means the account to be maintained by the
Company for each Interest Holder in accordance with the following
provisions:

(i)   an Interest Holder's Capital Account shall be
credited with the Interest Holder's Capital Contributions,
the amount of any Company liabilities assumed by the
Interest Holder (or which are secured by Company property
distributed to the Interest Holder), the Interest Holder's
distributive share of Profit and any item in the nature of
income or gain specially allocated to the Interest Holder
pursuant to the provisions of Article IV (other than Section
4.3.3); and

(ii)   an Interest Holder's Capital Account shall be
debited with the amount of money and the fair market value
of any Company property distributed to the Interest Holder,
the amount of any liabilities of the Interest Holder assumed
by the Company (or which are secured by property contributed
by the Interest Holder to the Company), the Interest
Holder's distributive share of Loss and any item in the
nature of expenses or losses specially allocated to the
Interest Holder pursuant to the provisions of Article IV
(other than Section 4.3.3).

If any Interest is transferred pursuant to the terms of this
Agreement, the transferee shall succeed to the Capital Account of
the transferor to the extent the Capital Account is attributable
to the transferred Interest.   If the book value of Company
property is adjusted pursuant to Section 4.3.3, the Capital
Account of each Interest Holder shall be adjusted to reflect the
aggregate adjustment in the same manner as if the Company had
recognized gain or loss equal to the amount of such aggregate
adjustment.   It is intended that the Capital Accounts of all
Interest Holders shall be maintained in compliance with the
provisions of Regulation Section 1.704-1(b), and all provisions
of this Agreement relating to the maintenance of Capital Accounts
shall be interpreted and applied in a manner consistent with that
Regulation.

"Capital Contribution" means the total amount of cash and the fair market value of any other assets contributed (or deemed contributed under Regulation Section 1.704-1(b)(2)(iv)(d)) to the Company by a Member, net of liabilities assumed or to which the assets are subject.

"Capital Proceeds" means the gross receipts received by the Company from a Capital Transaction.

"Capital Transaction" means any transaction not in the ordinary course of business which results in the Company's receipt of cash or other consideration other than Capital Contributions, including, without limitation, proceeds of sales or exchanges or other dispositions of property not in the ordinary course of business, financings, refinancings, condemnations, recoveries of damage awards, and insurance proceeds.

"Cash Flow" means all cash funds derived from operations of the Company (including interest received on reserves), without reduction for any non-cash charges, but less cash funds used to pay Company Expenses. "Company Expenses" means all cash disbursements of the Company including, without limitation, (a) the fees and reimbursements described in Section 5.1.7.3; (b) the reimbursements described in Section 5.1.7.2; (c) management fees, leasing fees, brokerage commissions, and legal fees and expenses incurred in connection with the development and operation of the Property and Company business; (d) taxes; (e) all costs and expenses paid in connection with any sale or refinancing, including, without limitation, brokerage commissions, commitment fees, standby fees, mortgage taxes or charges, title insurance premiums, legal fees, collection costs, recording charges and appraisal fees; (f) amounts used or to be used in connection with repairs, alterations, additions, improvements, betterments or replacements, made or to be made, including, without limitation, any repair, improvement, replacement or addition required to be made as a result of any casualty or as a condition of sale, condemnation or refinancing; (g) debt service and/or required principal payments on any loan to the Company (including, without limitation, a Member Loan); and (h) amounts reserved in the General Manager's discretion. Cash Flow shall not include Capital Proceeds but shall be increased by the reduction of any reserve previously established.

"Code" means the Internal Revenue Code of 1986, as amended, or any corresponding provision of any succeeding law.

"Company" means the limited liability company formed in accordance with this Agreement.

"Family" means a Member's or a partner of a Member's spouse, lineal ancestors or descendants by birth or adoption, siblings, and trusts for the exclusive benefit of a Member or a partner of a Member or any of the foregoing individuals.

3

"General Manager" means the Person designated as such in Article V.

"Interest" means a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company.

"Interest Holder" means any Person who holds an Interest, whether as a Member or an unadmitted assignee of a Member.

"Involuntary Withdrawal" means, with respect to any Member, the occurrence of any of the following events:

(i)   the Member makes an assignment for the benefit of creditors;

(ii)   the Member files a voluntary petition of bankruptcy;

(iii)   the Member is adjudged bankrupt or insolvent or there is entered against the Member an order for relief in any bankruptcy or insolvency proceeding;

(iv)   the Member files a petition seeking for the Member any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation;

(v)   the Member seeks, consents to, or acquiesces in the appointment of a trustee for, receiver for, or liquidation of the Member or of all or any substantial part of the Member's properties;

(vi) the Member files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the Member in any proceeding described in Subsections (i) through (v);

(vii)   any proceeding against the Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation, continues for one hundred twenty (120) days after the commencement thereof, or the appointment of a trustee, receiver, or liquidator for the Member or all or any substantial part of the Member's properties without the Member's agreement or acquiescence, which appointment is not vacated or stayed for one hundred twenty (120) days or, if the appointment is stayed, for one hundred twenty (120) days after the expiration of the stay during which period the appointment is not vacated;

(viii)   if the Member is an individual, the Member's death, incapacity, or adjudication by a court of competent

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.3.doc

jurisdiction as incompetent to manage the Member's person or property;

(ix)    if the Member is acting as a Member by virtue of being a trustee of a trust, the termination of the trust;

(x)    if the Member is a partnership or limited liability company, the dissolution and commencement of winding up of the partnership or limited liability company;

(xi)    if the Member is a corporation, the dissolution of the corporation or the revocation of its charter;

(xii)    if the Member is an estate, the distribution by the fiduciary of the estate's entire interest in the Company;

"Law" means the New York Limited Liability Company Law, as amended from time to time.

"Member" has the meaning set forth in Section 2.6.3.

"Membership Interest" means all of the rights of a Member in the Company, including a Member's:   (i) Interest; (ii) right to inspect the Company's books and records; and (iii) right to participate in the vote on matters coming before the Company to the extent provided for in this Agreement.

"Member Loan Nonrecourse Deductions" means any Company deductions that would be Nonrecourse Deductions if they were not attributable to a loan made or guaranteed by a Member within the meaning of Regulation Section 1.704-2(i).

"Minimum Gain" has the meaning set forth in Regulation Section 1.704-2(d).  Minimum Gain shall be computed separately for each Interest Holder in a manner consistent with the Regulations under Code Section 704(b).

"Negative Capital Account" means a Capital Account with a balance of less than zero.

"Nonrecourse Deductions" has the meaning set forth in Regulation Section 1.704-2(b)(1).  The amount of Nonrecourse Deductions for a taxable year of the Company equals the net increase, if any, in the amount of Minimum Gain during that taxable year, determined according to the provisions of Regulation Section 1.704-2(c).

"Nonrecourse Liability" means any liability of the Company with respect to which no Member has personal liability, as determined in accordance with Code Section 752 and the Regulations promulgated thereunder.

5

"Percentage" means, as to a Member, the percentage set forth after the Member's name on Exhibit A, as amended from time to time, and as to an Interest Holder who is not a Member, the Percentage of the Member whose Interest has been acquired by such Interest Holder, to the extent the Interest Holder has succeeded to that Member's Interest.

"Person" means and includes an individual, corporation, partnership, association, limited liability company, trust, estate, or other entity.

"Positive Capital Account" means a Capital Account with a balance greater than zero.

"Profit" and "Loss" means, for each taxable year of the Company (or other period for which Profit or Loss must be computed), the Company's taxable income or loss determined in accordance with Code Section 703(a), with the following adjustments:

(i)   all items of income, gain, loss, deduction, or credit required to be stated separately pursuant to Code Section 703(a)(1) shall be included in computing taxable income or loss; and

(ii)   any tax-exempt income of the Company, not otherwise taken into account in computing Profit or Loss, shall be included in computing taxable income or loss; and

(iii)   any expenditures of the Company described in Code Section 705(a)(2)(B) (or treated as such pursuant to Regulation Section 1.704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profit or Loss, shall be subtracted from taxable income or loss; and

(iv)   gain or loss resulting from any taxable disposition of Company property shall be computed by reference to the adjusted book value of the property disposed of, notwithstanding the fact that the adjusted book value differs from the adjusted basis of the property for federal income tax purposes; and

(v)   in lieu of the depreciation, amortization, or cost recovery deductions allowable in computing taxable income or loss, there shall be taken into account the depreciation computed based upon the adjusted book value of the asset; and

(vi)   notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Section 4.3 hereof shall not be taken into account in computing Profit or Loss.

6

"Regulation" means the income tax regulations, including any temporary regulations, from time to time promulgated under the Code.

"Transfer" means, when used as a noun, any sale, hypothecation, pledge, assignment, encumbrance or other transfer, and, when used as a verb, means to sell, hypothecate, pledge, transfer, assign, encumber or otherwise dispose of.

"Voluntary Withdrawal" means a Member's disassociation with the Company by means other than a Transfer or an Involuntary Withdrawal.

"Withdrawn Member" means a Member which is the subject of an Involuntary Withdrawal.

## Article II
## Continuation and Name: Office; Purpose; Term

2.1. *Organization and Continuation of Company*.  The parties hereby organize a limited liability company pursuant to the Law and the provisions of this Agreement and, for that purpose, have caused Articles of Organization to be prepared, executed and filed with the New York Department of State on May 13, 2002.  The parties have also caused a Certificate of Amendment of the Articles of Organization to be prepared, executed and filed with the New York Department of State on October 22, 2003, changing the name of the Company from BDG Monticello, LLC to BDG Larkfield Associates, LLC.  The parties signatory hereto agree to continue the Company under the Law, as such Law may from time to time be amended, except to the extent any provision of the Law is inconsistent with any provision herein.  The Company shall be a limited liability company only for the purposes specified in Section 2.3 and shall not create or continue an association between the parties with respect to any other activities whatsoever.

2.2. *Name of the Company*.  The name of the Company shall be BDG Larkfield Associates, LLC.  The Company may do business under that name and under any other name or names which the General Manager selects.  If the Company does business under a name other than that set forth in its Articles of Organization, then the Company shall file a certificate with the Department of State as required by General Business Law Section 130.  Its office shall be located at 6800 Jericho Turnpike, Syosset, New York or at such other location as may be selected by the General Manager from time to time.  The General Manager shall give notice to the Members of any change in the location of the principal place of business of the Company.

2.3. *Purpose*.  The Company is organized solely to purchase, acquire, buy, sell, own, trade in, hold, develop, lease, manage, subdivide, and otherwise deal in and with certain parcels of real

7

property and improvements thereon located at 5000-5014 Jericho Turnpike, Commack, New York and known as TJ Maxx Plaza shopping center (collectively referred to herein as the "Property") and to do any and all things necessary, convenient, or incidental to that purpose.

2.4. *Term*.   The Company was formed on May 13, 2002 by the filing of the Articles of Organization with the New York State Department of State and shall have a perpetual existence, unless its existence is sooner terminated pursuant to Article VII of this Agreement.

2.5.   *Agent for Service of Process*.   The Secretary of State is designated as agent of the Company upon whom process against it may be served.   The post office address within or without this state to which the Secretary of State shall mail a copy of any process against the Company served upon him or her is:

c/o Blumenfeld Development Group, Ltd.
6800 Jericho Turnpike
Syosset, New York   11791

2.6. *Members*.   The name, present mailing address, taxpayer identification number and Percentage of each Member are set forth on Exhibit A attached hereto.

**Article III**
**Members; Capital; Capital Accounts**

3.1. *Initial Capital Contributions*.   Upon the execution of this Agreement, the Members shall contribute to the Company cash in the amounts respectively set forth on Exhibit A as its initial capital contribution.

3.2. *No Additional Capital Contributions*.   No Member shall be required to contribute any additional capital to the Company, and no Member shall have any personal liability for any obligation of the Company, including compensation to and/or indemnification of the General Manager.

3.3. *No Interest on Capital Contributions*.   Interest Holders shall not be paid interest on their Capital Contributions.

3.4.   *Return of Capital Contributions*.   Except as otherwise provided in this Agreement, no Interest Holder shall have the right to receive any return of any Capital Contribution or have priority over another Interest Holder, either as to the return of Capital Contributions or as to Cash Flow, Profits, Losses or Capital Proceeds.

3.5.   *Form of Return of Capital*.   If an Interest Holder is entitled to receive a return of a Capital Contribution, the

8

Interest Holder shall not have the right to receive anything but cash in return of the Interest Holder's Capital Contribution.

3.6.   *Capital Accounts*.   A separate Capital Account shall be maintained for each Interest Holder.

3.7.   *Loans*.   The General Manager, and if requested to do so by the General Manager, any Member or an Affiliate thereof, singly, or in conjunction with others, including Members, may lend money to the Company if in the opinion of the General Manager funds are (a) necessary for the business of the Company or (b) are desirable to maintain or effect an increase in distributable Cash Flow to the Members, but only if and to the extent funds are not otherwise available therefor from a lending institution on commercially reasonable terms, it being hereby agreed that the requirement of a personal guarantee by one or more Members or Affiliates thereof is not a "commercially reasonable term" (a loan meeting the criteria set forth in this sentence, is hereinafter referred to as a "Member Loan").   If the General Manager, a Member or an Affiliate thereof, singly or in conjunction with others, including Members makes a Member Loan, such entity may be referred to herein as a "Lending Party."   If a Member Loan is made, it shall bear interest at the Interest Rate (as hereinafter defined).   For purposes of this Agreement, "Interest Rate" shall mean the fluctuating rate per annum equal to two (2%) percent plus the rate announced from time to time by The Chase Manhattan Bank as its "prime rate".   A Member Loan shall be a limited obligation of the Company payable as to principal and interest and any other amounts due under such Member Loan solely from Cash Flow.   Interest on a Member Loan at the Interest Rate shall be payable only from and to the extent of Cash Flow on the first day of the first month following the date of the making of such Member Loan and on the first day of each month thereafter.   To the extent that Cash Flow for any such immediately preceding calendar month shall be insufficient to pay the interest due thereon for such month, the insufficiency shall accrue, without interest, and be payable out of Cash Flow for the next succeeding calendar month(s), until such payment of interest shall have been paid in full.   In addition to the interest payments required to be made under a Member Loan, an amortization payment in reduction of the aggregate principal balance of the Member Loan shall be payable in an amount equal to the Cash Flow for the preceding calendar month, as reduced by interest payments paid within such preceding calendar month, as heretofore provided.   Notwithstanding the foregoing, if for any calendar month it is determined that the amortization payments made during the immediately preceding calendar month exceed the aggregate Cash Flow for such calendar month, the Company shall be entitled to receive a dollar for dollar credit, equal to the amount of such excess, which credit shall be applied in reduction of the interest and amortization obligations of the Company, as applied by the payee of the Member Loan in its sole discretion, for the next succeeding calendar month(s).

9

### Article IV
### Profit, Loss, and Distributions

4.1. *Distributions of Cash Flow and Allocation of Profit or Loss other than from Capital Transactions.*

4.1.1.   *Cash Flow.*   For any taxable year of the Company, Cash Flow shall be distributed to the Interest Holders as follows:

4.1.1.1.   first, to the Lending Party up to the amount, if any, of the principal and interest and any other amount due under their respective Member Loan; then

4.1.1.2.   any Cash Flow remaining after distributions have been made pursuant to Section 4.1.1.1., shall be distributed to all of the Interest Holders in proportion to their respective Percentages.

4.1.2.   *Profit or Loss.*   For any taxable year of the Company, Profit or Loss (other than Profit or Loss resulting from a Capital Transaction, which Profit or Loss shall be allocated in accordance with the provisions of Sections 4.2.1 and 4.2.2) shall be allocated to the Interest Holders as follows:

4.1.2.1.   Loss shall be allocated to all the Interest Holders in proportion to their respective Percentages (within the meaning of Treasury Regulation Section 1.752-i) with respect to Loss.

4.1.2.2.   Profit shall first be allocated to all the Interest Holders in proportion to and to the extent that they have been allocated Loss pursuant to Section 4.1.2.1.

4.1.2.3.   Profit shall then be allocated to all the Interest Holders in accordance with, and in the order and priority of, the distributions made (other than distributions representing, in the judgment of the General Manager a return of capital which are hereinafter referred to as "Excluded Distributions") pursuant to this Agreement with respect to the current fiscal year and for all prior fiscal years until the aggregate amount allocated to each Member pursuant to this Section 4.1.2.3. equals the aggregate amount distributed to each Interest Holder (other than Excluded Distributions) pursuant to Section 4.1; *provided, however,* that if the profits allocable under this Section 4.1.2.3 for the current fiscal year and all prior fiscal years exceed the cumulative

distributions (other than Excluded Distributions) pursuant to Article 4 with respect to the current fiscal year and all prior fiscal years (the "Excess Profits"), the portion of the Excess Profits derived in the current fiscal year shall be allocated to the Interest Holders in accordance with, and in the order and priority of, the distributions that would have been made pursuant to Article 4 had distributions been made in the current fiscal year in an amount equal to the Excess Profits derived in the current fiscal year.

4.2. *Distributions of Capital Proceeds and Allocation of Profit or Loss from Capital Transactions.*

4.2.1. *Profit.* After giving effect to the special allocations set forth in Section 4.3., Profit from a Capital Transaction shall be allocated as follows:

4.2.1.1. If one or more Interest Holders has a Negative Capital Account, to those Interest Holders, in proportion to their Negative Capital Accounts, until all of those Negative Capital Accounts have been increased to zero.

4.2.1.2. Any Profit not allocated pursuant to Section 4.2.1.1 shall be allocated to the Interest Holders in proportion to, and to the extent of, the amounts distributable to them pursuant to Section 4.2.3.4.1 and 4.2.3.4.2.

4.2.1.3. Any Profit in excess of the foregoing allocations shall be allocated to the Interest Holders in proportion to their Percentages.

4.2.2. *Loss.* After giving effect to the special allocations set forth in Section 4.3, Loss from a Capital Transaction shall be allocated as follows:

4.2.2.1. If one or more Interest Holders has a Positive Capital Account, to those Interest Holders, in proportion to their Positive Capital Accounts, until all Positive Capital Accounts have been reduced to zero.

4.2.2.2. Any Loss not allocated to reduce Positive Capital Accounts to zero pursuant to Section 4.2.2.1 shall be allocated to the Interest Holders in proportion to their Percentages.

4.2.3. *Capital Proceeds.* Capital Proceeds shall be distributed and applied by the Company in the following order and priority:

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.3.doc

4.2.3.1.  to the payment of all expenses of the Company incident to the Capital Transaction; then

4.2.3.2.  to the payment of debts and liabilities of the Company then due and outstanding (including, without limitation, any Member Loan or any other debts due to any Interest Holder); then

4.2.3.3.  to the establishment of any reserves which the General Manager deems necessary for liabilities or obligations of the Company; then

4.2.3.4.  The balance shall be distributed as follows:

4.2.3.4.1.  to the Interest Holders in proportion to their Adjusted Capital Balances, until their remaining Adjusted Capital Balances have been paid in full; then

4.2.3.4.2.  the balance, to the Interest Holders in proportion to their Percentages.

4.3.  *Regulatory Allocations.*

4.3.1.  *Qualified Income Offset.*  No Interest Holder shall be allocated Losses or deductions if the allocation causes the Interest Holder to have an Adjusted Capital Account Deficit.  If an Interest Holder receives (1) an allocation of Loss or deduction (or item thereof) or (2) any distribution, which causes the Interest Holder to have an Adjusted Capital Account Deficit at the end of any taxable year, then all items of income and gain of the Company (consisting of a pro rata portion of each item of Company income, including gross income and gain) for that taxable year shall be allocated to that Interest Holder, before any other allocation is made of Company items for that taxable year, in the amount and in proportions required to eliminate the excess as quickly as possible.  This Section 4.3.1 is intended to comply with, and shall be interpreted consistently with, the "qualified income offset" provisions of the Regulations promulgated under Code Section 704(b).

4.3.2.  *Minimum Gain Chargeback.*  Except as set forth in Regulation Section 1.704-2(f)(2), (3), and (4), if, during any taxable year, there is a net decrease in Minimum Gain, each Interest Holder, prior to any other allocation pursuant to this Article IV, shall be specially allocated items of gross income and gain for such taxable year (and, if necessary, subsequent taxable years) in an amount equal to that Interest Holder's share of the net decrease of Minimum Gain, computed in accordance with Regulation Section 1.704-2(g).  Allocations of gross income and gain pursuant to this Section 4.3.2 shall be made first from gain

12

recognized from the disposition of Company assets subject to nonrecourse liabilities (within the meaning of the Regulations promulgated under Code Section 752), to the extent of the Minimum Gain attributable to those assets, and thereafter, from a pro rata portion of the Company's other items of income and gain for the taxable year. It is the intent of the parties hereto that any allocation pursuant to this Section 4.3.2 shall constitute a "minimum gain chargeback" under Regulation Section 1.704-2(f).

4.3.3.   *Contributed Property and Book-ups.*   In accordance with Code Section 704(c) and the Regulations thereunder, as well as Regulation Section 1.704-1(b)(2)(iv)(d)(3), income, gain, loss, and deduction with respect to any property contributed (or deemed contributed) to the Company shall, solely for tax purposes, be allocated among the Interest Holders so as to take account of any variation between the adjusted basis of the property to the Company for federal income tax purposes and its fair market value at the date of contribution (or deemed contribution). If the adjusted book value of any Company asset is adjusted as provided herein, subsequent allocations of income, gain, loss, and deduction with respect to the asset shall take account of any variation between the adjusted basis of the asset for federal income tax purposes and its adjusted book value in the manner required under Code Section 704(c) and the Regulations thereunder.

4.3.4.   *Code Section 754 Adjustment.*   To the extent an adjustment to the tax basis of any Company asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulation Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of the adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases basis), and the gain or loss shall be specially allocated to the Interest Holders in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to that Section of the Regulations.

4.3.5.   *Nonrecourse Deductions.*   Nonrecourse Deductions for a taxable year or other period shall be specially allocated among the Interest Holders in proportion to their Percentages.

4.3.6.   *Member Loan Nonrecourse Deductions.*   Any Member Loan Nonrecourse Deduction for any taxable year or other period shall be specially allocated to the Interest Holder who bears the risk of loss with respect to the loan to which the Member Loan Nonrecourse Deduction is attributable in accordance with Regulation Section 1.704-2(b).

13

4.3.7.   *Guaranteed Payments*.   To the extent any compensation paid to any Member by the Company, including any fees payable to any Member pursuant to Section 5.3 hereof, is determined by the Internal Revenue Service not to be a guaranteed payment under Code Section 707(c) or is not paid to the Member other than in the Person's capacity as a Member within the meaning of Code Section 707(a), the Member shall be specially allocated gross income of the Company in an amount equal to the amount of that compensation, and the Member's Capital Account shall be adjusted to reflect the payment of that compensation.

4.3.8.   *Unrealized Receivables*.   If an Interest Holder's Interest is reduced (provided the reduction does not result in a complete termination of the Interest Holder's Interest), the Interest Holder's share of the Company's "unrealized receivables" and "substantially appreciated inventory" (within the meaning of Code Section 751) shall not be reduced, so that, notwithstanding any other provision of this Agreement to the contrary, that portion of the Profit otherwise allocable upon a liquidation or dissolution of the Company pursuant to Section 4.4 hereof which is taxable as ordinary income (recaptured) for federal income tax purposes shall, to the extent possible without increasing the total gain to the Company or to any Interest Holder, be specially allocated among the Interest Holders in proportion to the deductions (or basis reductions treated as deductions) giving rise to such recapture.   Any questions as to the aforesaid allocation of ordinary income (recapture), to the extent such questions cannot be resolved in the manner specified above, shall be resolved by the General Manager.

4.3.9.   *Withholding*.   All amounts required to be withheld pursuant to Code Section 1446 or any other provision of federal, state, or local tax law shall be treated as amounts actually distributed to the affected Interest Holders for all purposes under this Agreement.

4.4.   *Liquidation and Dissolution*.

4.4.1.   If the Company is liquidated, the assets of the Company which shall have been reduced to cash in accordance with Section 7.2 shall be distributed as follows:

4.4.1.1.   to the Interest Holders in proportion to their Adjusted Capital Balances, until their remaining Adjusted Capital Balances have been paid in full; then

4.4.1.2.   the balance, to the Interest Holders in proportion to their Percentages.

4.4.2.   No Interest Holder shall be obligated to restore a Negative Capital Account.

4.5. *General.*

    4.5.1.    Except as otherwise provided in this Agreement, the timing and amount of all distributions shall be determined by the General Manager.

    4.5.2.    If any assets of the Company are distributed in kind to the Interest Holders, those assets shall be valued on the basis of their fair market value, and any Interest Holder entitled to any interest in those assets shall receive that interest as a tenant-in-common with all other Interest Holders so entitled.    Unless the Members otherwise agree, the fair market value of the assets shall be determined by an independent appraiser who shall be selected by the General Manager.    The Profit or Loss for each unsold asset shall be determined as if the asset had been sold at its fair market value, and the Profit or Loss shall be allocated as provided in Section 4.2 and shall be properly credited or charged to the Capital Accounts of the Interest Holders prior to the distribution of the assets in liquidation pursuant to Section 4.4.

    4.5.3.    All Profit and Loss shall be allocated, and all distributions shall be made to the Persons shown on the records of the Company to have been Interest Holders as of the last day of the taxable year for which the allocation or distribution is to be made.    Notwithstanding the foregoing, unless the Company's taxable year is separated into segments, if there is a Transfer or an Involuntary Withdrawal during the taxable year, the Profit and Loss shall be allocated between the original Interest Holder and the successor on the basis of the number of days each was an Interest Holder during the taxable year; provided, however, the Company's taxable year shall be segregated into two or more segments in order to account for Profit, Loss, or proceeds attributable to a Capital Transaction or to any other extraordinary nonrecurring items of the Company.

    4.5.4.    The General Manager is hereby authorized, upon the advice of the Company's tax counsel, to amend this Article IV to comply with the Code and the Regulations promulgated under Code Section 704(b); provided, however, that no amendment shall materially affect distributions to an Interest Holder without the Interest Holder's prior written consent.

## Article V
## Management: Rights, Powers, and Duties

5.1. *Management*.

5.1.1.   *General Manager*.   The Company shall be managed by a general manager, who may, but need not, be a Member. BDG Asset Management, Inc., is hereby designated to serve as the general manager of the Company.   The Members who are signatory hereto, hereby ratify and confirm all proceedings and acts heretofore taken by the General Manager, its officers and directors in furtherance of the purpose of the Company provided in Section 2.3 hereof.

5.1.2.   *Management Powers of the General Manager*.

5.1.2.1.   Except as otherwise provided herein, including, without limitation, Section 5.1.3 hereof, management, operation and control of the Company and its business and affairs shall vest solely in the General Manager.   In such capacity, the General Manager shall have the power on behalf of and in the name of the Company to carry out any and all of the purposes of the Company set forth in Section 2.3 and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto on behalf of the Company. Without limiting the generality of the foregoing, the General Manager is hereby authorized, empowered, obligated and responsible on behalf of the Company:

(i)     to carry on the business referred to in Section 2.3 hereof and to execute and deliver in the Company name any and all instruments necessary in connection therewith;

(ii)     to employ, engage or consult such persons, firms or corporations as it shall deem advisable for the operation and management of the Company business including, without limitation, brokers, accountants, managing agents, attorneys or specialists in any field of endeavor whatsoever, including any Person (including a Member or an Affiliate of a Member);

(iii)     to deposit the funds of the Company in the Company name in any bank or trust company and to entrust to such bank or trust company the securities, monies, documents and papers belonging to or relating to the Company;

(iv)     to own, possess, renovate, improve, sell, transfer, mortgage, pledge, lease or otherwise deal with, and to exercise all rights, powers, privileges

16

and other incidents of ownership or possession with respect to, all or any portion of the Property;

(v)      to borrow monies from any party, issue evidences of indebtedness, mortgages, pledges or other collateral in connection therewith, increase the amount of, modify, amend or change the terms of, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment thereof and of the interest thereon by mortgage upon or by pledge, conveyance or assignment in trust of the whole or any part of the Property whether at the time owned or thereafter acquired, and to sell, pledge or otherwise dispose of such bonds or other obligations of the Company;

(vi)     to pay all expenses and fees incurred in connection with the Company and its business;

(vii)    to sue on, defend or compromise any and all claims or liabilities in favor of or against the Company, and submit any or all such claims or liabilities to arbitration;

(viii)   to file applications, communicate and otherwise deal with any and all governmental agencies having jurisdiction over, or in any way affecting, the Property or any aspect of the Company's business;

(ix)     to make or revoke any election permitted to the Company by any taxing authority;

(x)      to maintain such insurance coverage for public liability, fire and casualty, and any and all other insurance, necessary or appropriate to the business of the Company;

(xi)     to determine whether or not to apply any insurance proceeds for any property to the restoration of Company property or to distribute the same;

(xii)    to purchase, lease, rent, or otherwise acquire or obtain the right to use machinery, equipment, tools, materials, and all other kinds and types of personal property that may in any way be deemed necessary, convenient, or advisable in connection with carrying on the business of the Company;

17

(xiii) to enter into, make and perform all
contracts, agreements and other undertakings, to
execute all other instruments of any kind or
character and to perform any and all other acts that
the General Manager determines to be necessary,
advisable or incidental to the carrying out of the
foregoing objects and purposes.

5.1.2.2.   The General Manager shall use ordinary
care and reasonable diligence in carrying out the
affairs of the Company.   Neither the General Manager
nor any of its Affiliates, to the extent that such
Affiliates are acting within the scope of the authority
of the General Manager, will be liable to the Company
or to any Member for any action taken or failure to
act, on behalf of the Company, within the scope of
authority conferred on the General Manager unless there
shall be a non-appealable judgment or other final
adjudication adverse to the General Manager
establishing that the General Manager's acts or
omissions were in bad faith or involved intentional
misconduct or a knowing violation of law; or the
General Manager personally gained in fact a financial
profit or other advantage to which General Manager was
not legally entitled.   The General Manager may consult
with legal counsel selected by it on matters relating
to the Company, and any action taken or omitted to be
taken by it in good faith in reliance and in accordance
with the opinion or advice of such counsel shall be
full protection and justification to it with respect to
the action taken or omitted to be taken.

5.1.2.3.   The General Manager shall not be obligated
to devote substantially all of its time and effort to
the Company and its affairs.

5.1.2.4.   Each Member understands and acknowledges
that the conduct of the Company's business may involve
business dealings and undertakings with Members and
their Affiliates.   In any of those cases, those
dealings and undertakings shall be at arm's length and
on commercially reasonable terms.

5.1.2.5.   Except as otherwise expressly provided in
Section 5.1.2.4., nothing in this Agreement shall be
deemed to restrict in any way the rights of any Member,
or of any Affiliate of any Member, or the General
Manager, or any officer, director or shareholder of the
General Manager, to conduct any other business or
activity whatsoever, and no Member nor the General
Manager, shall be accountable to the Company or to any
other Member with respect to that business or activity
even if the business or activity competes with the
Company's business.   The organization of the Company

18

shall be without prejudice to the Members' respective rights (or the rights of their respective Affiliates to maintain, expand, or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member, the Member's Affiliates, the General Manger, or any officer, director or shareholder of the General Manager.

5.1.3.  *Restrictions on Powers of the General Manager*:

The General Manager shall have no authority to:

(i) alter the purposes of the Company as set forth in Section 2.3 above;

(ii)  confess a judgment against the Company;

(iii)  possess any Company property or assign the rights of the Company in specific Company property for other than a Company purpose;

(iv)  borrow money from the Company; or

(v) sell or otherwise dispose of all of the Property, without obtaining the prior consent of the Members holding not less than seventy (70%) percent of the Percentages of the Members unless such transfer is to a newly created entity having the same ownership, organization and management structure as that of the Company, and if, in the good faith determination of the General Manager (a) more beneficial or favorable financing terms could be obtained in respect of such individual Property rather than that currently available with respect to all of the Properties, or (b) the Members of the Company would otherwise benefit from such a transfer.  If a Member does not notify the General Manager in writing of its approval or disapproval of any proposed sale within ten (10) business days after its receipt of a written request for approval, the General Manager shall again request the approval of the Member in accordance with the notice provisions set forth in Section 9.2 of this Agreement which notice will make specific reference to this Section 5.1.3.(v).  If the Member then does not notify the General Manager of its disapproval of the transaction or action within five (5) business days following such request, the matter shall conclusively be deemed approved by such Member. Any purchaser of the Property and any title insurer insuring the title of the purchaser may rely on an affidavit furnished by a principal officer of the General Manager with regard to

19

the attainment of the required percentage of approval and, with regard to such approval, the furnishing of such affidavit shall be conclusive as to its contents as between such purchaser and its title insurer and each and all of the Members at the time. Notwithstanding anything contained herein to the contrary, the General Manager shall have the authority to sell or otherwise dispose of any portion of the Property.

5.1.4.   *Members Have No Management Powers; Limitation on Authority of Members.*

5.1.4.1.   The Members shall have no voice or participation in the management of the Company business, and no power to bind the Company or to act on behalf of the Company in any manner whatsoever.

5.1.4.2.   No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member.

5.1.4.3.   This Section 5.1 supersedes any authority granted to the Members pursuant to Section 401 of the Law.   Any Member who takes any action or binds the Company in violation of this Section 5.1 shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company harmless with respect to the loss or expense.

5.1.5.   *Removal of Manager.*   The Members holding three fourths (3/4) of the Percentages then held by the Members, at any time and from time to time and with or without cause, may remove any or all general managers of the Company then acting and elect a new general manager or managers or make other provisions or arrangements for the management of the Company.

5.1.6.   *Resignation of General Manager.*   The General Manager may resign as such only upon thirty (30) days prior written notice to each Member; provided that such resignation shall not become effective until a successor General Manager shall have been elected or other provisions or arrangements for the management of the Company have been made by the Members holding three-fourths (3/4) of the Percentages then held by the Members.

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.3.doc

5.1.7.    *Compensation of the General Manager;
Reimbursement for Expenses.*

5.1.7.1.    The General Manager shall be entitled to compensation of $100.00 per year for acting as general manager of the Company.

5.1.7.2.    All costs and expenses actually incurred in connection with the organization of the Company and the ongoing operation or management of the business of the Company shall be borne by the Company.  The General Manager shall be entitled to prompt reimbursement for all out-of-pocket costs and expenses incurred by the General Manager or its agents, attorneys or advisors in connection with such organization, operation and management.

5.1.7.3.    The General Manager is hereby authorized and directed to hire Blumenfeld Development Group, Ltd. ("BDG") or an affiliated entity thereof, either of which is an Affiliate of the General Manager, as managing agent of the Property and hereby notifies the other Members that it has done so.  In consideration for managing the Property, BDG or such affiliated entity shall be paid a commercially reasonable monthly management fee.  As of the date of this Agreement, BDG charges a commercially reasonable monthly management fee equal to five (5%) percent monthly of all amounts due and owing each month whether or not collected, as rent, including electric current and from all other sources whatsoever, provided that such amount shall not be less than $2,000.00 per month.  In addition, BDG shall be reimbursed for a pro rata portion of the salaries of persons employed by BDG or an affiliated entity for their on site management, leasing and construction activities.

5.1.8.    *Indemnification.*  The General Manager and its officers, directors, employees, shareholders, agents and Affiliates shall be indemnified and held harmless by the Company (but not by any Member except to the extent of its Capital Contributions) to the fullest extent permitted by law from and against any and all claims, demands, liabilities, costs, damages and causes of action of any nature whatsoever arising out of or in connection with the transactions contemplated by this Agreement or the General Manager's management of the Company's affairs; provided, however, that no indemnification may be provided to, or on behalf of, the General Manager if a non-appealable judgment or other final non-appealable adjudication establishes that either the General Manager's acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated or

the General Manager personally gained in fact a financial profit or other advantage to which the General Manager was not legally entitled.    The indemnification authorized by this Section shall include, without limitation, payment of (i) reasonable attorneys' fees or other expenses incurred in connection with settlement or in defense of any legal proceeding and (ii) the removal of any liens affecting the property of the indemnitee.    Such attorneys' fees and expenses shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the indemnified Person to repay such amounts if it is ultimately determined that such Person is not entitled to indemnification with respect thereto.    The indemnification rights contained in this Section shall be cumulative of, and in addition to, any and all rights remedies and recourse to which the General Manager, its officers, directors, employees, shareholders, agents and Affiliates may be entitled, whether pursuant to the provisions of this Agreement, at law or in equity.    Indemnification hereunder shall be made from assets of the Company and no Member shall be personally liable to any indemnitee.

5.2.    *Power of Attorney.*

5.2.1.    *Grant of Power.*    Each Member constitutes and appoints the General Manager as the Member's true and lawful attorney-in-fact ("Attorney-in-Fact"), and in the Member's name, place, and stead, to make, execute, sign, acknowledge, and file:

5.2.1.1.    one or more articles of organization;

5.2.1.2.    all documents (including amendments to articles of organization) which the Attorney-in-Fact deems appropriate to reflect any amendment, change, or modification of this Agreement which has been adopted by the Members in accordance with the terms hereof;

5.2.1.3.    any and all other certificates or other instruments required to be filed by the Company under the laws of the State of New York or of any other state or jurisdiction, including, without limitation, any certificate or other instruments necessary in order for the Company to continue to qualify as a limited liability company under the laws of the State of New York;

5.2.1.4.    one or more fictitious or trade name certificates;

5.2.1.5.    all documents which may be required to dissolve and terminate the Company and to cancel its articles of organization; and

5.2.1.6.  any amendment to this Agreement which may be required by any institutional lender as a condition to its providing financing to the Company, provided that the subject matter of such amendment is limited to bankruptcy remoteness matters, including, without limitation, preserving and ensuring the separate and distinct identity of the Company.

5.2.2.  *Irrevocability*.  The foregoing power of attorney is irrevocable and is coupled with an interest, and, to the extent permitted by applicable law, shall survive the death or disability of a Member.  It also shall survive the Transfer of an  Interest, except that if the transferee is admitted as a Member, this power of attorney shall survive the delivery of the assignment for the sole purpose of enabling the Attorney-in-Fact to execute, acknowledge, and file any documents needed to effectuate the substitution.   Each Member shall be bound by any representations made by the Attorney-in-Fact acting in good faith pursuant to this power of attorney, and each Member hereby waives any and all defenses which may be available to contest, negate, or disaffirm the action of the Attorney-in-Fact taken in good faith under this power of attorney.

## Article VI
## Transfer of Interests and Withdrawal of Members

6.1. *Transfers*. A Member may not Transfer all or any portion of its interest as a Member of the Company either voluntarily or by operation of law (hereinafter collectively referred to as an "Assignment"), except as follows:

6.1.1.  A Member may make an Assignment of all, but not less than all, of its interest as a Member if such assignment is in compliance with this Section 6.1 and Section 6.3.

6.1.2.  A Member may make an Assignment of its interest as a Member in the Company, provided that (a) the assignee shall not be a natural person younger than 18 years of age nor a natural person who shall have been adjudged incompetent; (b) the Assignment shall be in writing and form reasonably satisfactory to the General Manager; (c) the assignee shall have agreed in writing and form reasonably satisfactory to the General Manager to be bound by the terms of this Agreement; and (d) the General Manager shall have consented in writing to the Assignment.

6.1.3.  An assignee shall be required to reimburse the Company and the General Manager in connection with such Assignment to cover any legal fees, accounting fees,

23

overhead charges, and other fees or expenses incurred as a result of any such Assignment.

6.1.4.    The General Manager may require an opinion of counsel, in form and substance satisfactory to it in its sole discretion, by experienced tax and securities law counsel, to the effect (i) that the proposed Assignment will be in compliance with applicable securities laws, rules and regulations, (ii) that the proposed Assignment will not cause adverse tax consequences, and (iii) such other matters as may be determined by the General Manager in its reasonable discretion.    The fee for such opinion shall be the responsibility of the assignor.

6.1.5.    Any purported Assignment which is not in compliance with this Agreement is null and void and of no force or effect whatsoever.    Each Member hereby acknowledges the reasonableness of the prohibition contained in this Section 6.1 in view of the purposes of the Company and the relationship of the Members.

6.2. *Assignee's Rights.*

6.2.1.    An assignee or transferee of the interest of a Member shall be entitled to receive allocations and distributions attributable to the interest acquired by reason of such Assignment from and after the Effective Date (as hereafter defined) of the Assignment of such interest to such assignee; however, anything herein to the contrary notwithstanding, the Company and the General Manager shall be entitled to treat the assignor of such interest of the Member as the absolute owner thereof in all respects; and shall incur no liability for allocations of net income, net loss, or gain or loss on sale of Company property, or transmittal of reports and notices required to be given to Members hereunder which are made in good faith to such assignor until such time as the written assignment has been received by the Company, approved and recorded on its books and the Effective Date of the Assignment has passed.    The "Effective Date" of an Assignment shall be that date specified in the written instrument whereby the General Manager consents to the Assignment, which date shall not be later than sixty (60) days following receipt by the General Manager of a written notice of Assignment and the fulfillment of all conditions precedent to such Assignment provided for in this Agreement.

6.2.2.    *Assignment of Rights to Distributions by Members.*    Any Member may assign the right to receive all distributions applicable to its interest as a Member of the Company, and such assignment of distributions shall be effective notwithstanding failure to satisfy the conditions set forth in Section 6.1, provided that (a) the instrument of assignment shall be in form reasonably satisfactory to

the General Manager, and (b) a duly executed and acknowledged counterpart of such instrument shall be delivered to the Company. Any purported assignment which does not meet the requirements set forth in this Section shall be void and shall not bind the Company. Such an assignment shall not entitle the assignee to become or to exercise any rights of a Member.

6.3. *Right of First Refusal on Sale or Transfer of Interest.*

6.3.1. If a Member or assignee thereof proposes to sell, assign, or transfer its interest, it shall first offer the interest in writing to the General Manager at the price and on the terms on which such Member proposes to sell, assign, or transfer the interest (the "Price" and the "Terms").

6.3.2. The General Manager shall, in its sole discretion, decide whether to accept or reject the offer within thirty (30) days after receipt of the offer. If the offer is rejected by the General Manager or its designee, then the Member or assignee may, subject to this Article 6, sell its interests to an outside party at the Price and on the Terms. If such sale is not completed at the Price and on the Terms within (90) days after the rejection by the General Manager, then the Member or assignee must reoffer his interest to the General Manager in accordance with this Section 6.3 before any other sale, assignment or transfer of all or any part of its interest can be effected.

6.3.3. This Section 6.3 shall not apply to transfers, sales, assignments, gifts, and devices to the spouse or lineal descendants of the transferring Member or assignee, to a trust for the benefit of that spouse or a Member's or assignee's lineal descendants, or to an entity if there is no change in beneficial interest to the interest transferred. Nevertheless, all such transferees shall take the transferred interests subject to this Section 6.3. Notwithstanding the foregoing, Section 6.1 shall apply to any transfer of an interest in the Company.

6.4. *Voluntary Withdrawal.* No Member shall have the right or power to Voluntarily Withdraw from the Company. Any withdrawal in violation of this Agreement shall entitle the Company to damages for breach, which may be offset against the amounts otherwise distributable to such member.

6.5. *Involuntary Withdrawal.* Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the Withdrawn Member shall thereupon become an Interest Holder, but shall not become a Member. If the Company is continued as provided in Section 7.1.3, the successor Interest Holder shall have all the rights of an Interest Holder, but shall not be entitled by reason of the withdrawal to receive in liquidation of

the Interest, the fair market value of the Member's Interest as of the date the Member Involuntarily Withdrew from the Company.

## Article VII
### Dissolution, Liquidation, and Termination of the Company

7.1. *Events of Dissolution.* The Company shall be dissolved upon the happening of any of the following events:

7.1.1.  upon the written agreement of all of the Members; or

7.1.2. the occurrence of an Involuntary Withdrawal, unless remaining Members holding a majority or more of the Percentages then held by Members, within ninety (90) days after the occurrence of the Involuntary Withdrawal, elect to continue the business of the Company pursuant to the terms of this Agreement.

7.2. *Liquidating Trustee.* If the Company is dissolved, the General Manager shall act as liquidating trustee. The General Manager shall liquidate and reduce to cash the assets of the Company in accordance with the requirements of Section 5.1.4.2. as promptly as is consistent with obtaining a fair value therefor and, unless otherwise required by law, shall apply and distribute the proceeds of liquidation, as well as any other Company assets, first, to the payment of creditors of the Company, including Interest Holders who are creditors, in satisfaction of the liabilities of the Company, and then to the Interest Holders in accordance with Section 4.4.

7.3. *Filing of Articles of Dissolution.* If the Company is dissolved, the General Manager shall promptly file Articles of Dissolution with the Department of State. If there is no General Manager, then the Articles of Dissolution shall be filed by the remaining Members; if there are no remaining Members, the Articles shall be filed by the last Person to be a Member; if there is neither a General Manager, remaining Members, or a Person who last was a Member, the Articles shall be filed by the legal or personal representatives of the Person who last was a Member.

## Article VIII
### Books, Records, Accounting, and Tax Elections

8.1. *Bank Accounts.* All funds of the Company shall be deposited in a bank account or accounts opened in the Company's name. The General Manager shall determine the institution or institutions at which the accounts will be opened and maintained, the types of accounts, and the Persons who will have authority with respect to the accounts and the funds therein.

26

8.2.    *Books and Records.*

8.2.1.    The General Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the Company's business.  The records shall include, but not be limited to:

(1)    a current alphabetized list of the names and addresses of all of the Members, as well as the contribution and the share of profits and losses of each Member or information from which such share can be readily derived;

(2) a copy of the articles of organization and all amendments thereto or restatements thereof, together with executed copies of any powers of attorney pursuant to which any certificate or amendment has been executed;

(3) a copy of the operating agreement and any amendments thereto and any amended and restated operating agreement; and

(4) a copy of the Company's federal, state, and local income tax or information returns and reports, if any, for the three most recent fiscal years.

8.2.2.    The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

8.2.3.    Each Member shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member's inspection and copying of the Company's books and records.

8.3.    *Annual Accounting Period*.  The annual accounting period of the Company shall be its taxable year.  The Company's taxable year shall be selected by the General Manager, subject to the requirements and limitations of the Code.

8.4. *Reports*.  Within seventy-five (75) days after the end of each taxable year of the Company, the General Manager shall cause to be sent to each Person who was a Member at any time during the taxable year then ended:  (i) an annual compilation report, prepared by the Company's independent accountants in accordance with standards issued by the American Institute of Certified Public Accountants; and (ii) a report summarizing the fees and other remuneration paid by the Company to any Member,

27

the General Manager, or any Affiliate in respect of the taxable year.   In addition, within seventy-five (75) days after the end of each taxable year of the Company, the General Manager shall cause to be sent to each Person who was an Interest Holder at any time during the taxable year then ended, that tax information concerning the Company which is necessary for preparing the Interest Holder's income tax returns for that year.   At the request of Members holding fifty (50%) percent or more of the Percentages then held by Members, the General Manager shall cause an audit of the Company's books and records to be prepared by independent accountants for the period so requested.

   8.5. *Tax Matters Member*.   Edward Blumenfeld shall be the Company's tax matters Member ("Tax Matters Member").   The Tax Matters Member shall have all powers and responsibilities provided in Code Section 6221, *et seq*.   The Tax Matters Member shall keep all Members informed of all notices from government taxing authorities, which may come to the attention of the Tax Matters Member. The Company shall pay and be responsible for all reasonable third party costs and expenses incurred by the Tax Matters Member in performing those duties.   A Member shall be responsible for any costs incurred by the Member with respect to any tax audit or tax-related administrative or judicial proceeding against any Member, even though it relates to the Company.   The Tax Matters Member shall not compromise any dispute with the Internal Revenue Service without the approval of the Members.   Edward Blumenfeld shall be indemnified and held harmless by the Company (but not by any Member except to the extent of its Capital Contributions) to the fullest extent permitted by law from and against any and all claims, demands, liabilities, costs, damages and causes of action of any nature whatsoever arising out of or in connection with his acting as Tax Matters Member; provided, however, that no indemnification may be provided to, or on behalf of, Edward Blumenfeld if a non-appealable judgment or other final non-appealable adjudication establishes that either Edward Blumenfeld's acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated.   The indemnification authorized by this Section shall include, without limitation, payment of (i) reasonable attorneys' fees or other expenses incurred in connection with settlement or in defense of any legal proceeding and (ii) the removal of any liens affecting the property of the indemnitee.   Such attorneys' fees and expenses shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the indemnified Person to repay such amounts if it is ultimately determined that such Person is not entitled to indemnification with respect thereto.   The indemnification rights contained in this Section shall be cumulative of, and in addition to, any and all rights remedies and recourse to which Edward Blumenfeld may be entitled, whether pursuant to the provisions of this Agreement, at law or in equity. Indemnification hereunder shall be made from assets of the

Company and no Member shall be personally liable to any indemnitee.

8.6. *Tax Elections*.    The General Manager shall have the authority to make all Company elections permitted under the Code, including, without limitation, elections of methods of depreciation and elections under Code Section 754.    The decision to make or not make an election shall be at the General Manager's sole and absolute discretion.

8.7.    *Title to Company Property*.

8.7.1.    Except as provided in Section 8.7.2, all real and personal property acquired by the Company shall be acquired and held by the Company in its name.

8.7.2.    The General Manager may direct that legal title to all or any portion of the Company's property be acquired or held in a name other than the Company's name provided, that the Company is and remains the beneficial owner of any such property.    Without limiting the foregoing, the General Manager may cause title to be acquired and held in its name or in the names of trustees, nominees, or straw parties for the Company.    It is expressly understood and agreed that the manner of holding title to the Company's property (or any part thereof) is solely for the convenience of the Company and all of that property shall be treated as Company property.

## Article IX
## General Provisions

9.1.    *Assurances*.    Each Member shall execute all certificates and other documents and shall do all such filing, recording, publishing, and other acts as the General Manager deems appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules, and regulations relating to the acquisition, operation, or holding of the property of the Company.

9.2.    *Notifications*.    Any notice, demand, consent, election, offer, approval, request, or other communication (collectively a "notice") required or permitted under this Agreement must be in writing and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested or by facsimile transmission, provided receipt of facsimile transmission is actually acknowledged by the member or member's agent.    Any notice to be given hereunder by the Company shall be given by the General Manager.    A notice must be addressed to a Member at the Member's last known address on the records of the Company.    A notice to the Company must be addressed to the Company's principal office.    A notice that is sent by mail will be deemed given three (3) business days after it is mailed.    Any

party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees. A notice sent by facsimile is deemed given when receipt is acknowledged.

9.3. *Specific Performance*. The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

9.4. *Complete Agreement*. This Agreement constitutes the complete and exclusive statement of the agreement among the Members with respect to the subject matter thereof. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of a majority of the Members. Notwithstanding the foregoing, any modification of the terms of this Agreement which increases the obligations of a Member or decrease the rights of a Member may not be made without the prior written consent of the Member affected by such modification.

9.5. *Applicable Law*. All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of New York.

9.6. *Article and Section Titles*. The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

9.7. *Binding Provisions*. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and permitted assigns.

9.8. *Exclusive Jurisdiction and Venue*. Any suit involving any dispute or matter arising under this Agreement or relating to the organization or operation of the Company may only be brought in a United States District Court located in the State of New York or any New York State Court having jurisdiction over the subject matter of the dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such

30

court with respect to any such proceeding and waive any objection to venue or inconvenient forum.

9.9. *Terms.* Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the identity of the Person may in the context require.

9.10. *Separability of Provisions.* Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

9.11. *Counterparts.* This Agreement may be executed through the use of separate counterpart signature pages, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

9.12. *Estoppel Certificate.* Each Member shall, within ten (10) days after written request by the General Manager, deliver to the requesting Person a certificate stating, to the Member's knowledge, that: (a) this Agreement is in full force and effect; (b) this Agreement has not been modified except by any instrument or instruments identified in the certificate; and (c) there is no default hereunder by the requesting Person, or if there is a default, the nature and extent thereof. If the certificate is not received within that ten (10) day period, the General Manager shall execute and deliver the certificate on behalf of the requested Member, without qualification, pursuant to the power of attorney granted in Section 5.6.

**IN WITNESS WHEREOF**, the parties hereto intending to be legally bound, have executed, or caused this Agreement to be executed, as of the date set forth hereinabove.

**GENERAL MANAGER:**

BDG Asset Management, Inc.,

By: _____
     Name:
     Title:

31

MEMBERS:

_Edward Blumenfeld_ (signature)
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
      Name:
      Title:

32

**MEMBERS:**

_____
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
     Name:
     Title:

32

**MEMBERS:**

_____
Edward Blumenfeld


_____
Harold Silverman


_____
Gerald Mordfin


_____
Scott Galin


_____
Noel Hecht


_____
Irving Baras


_____
Stephen Obstbaum


_____
Raymond Kurzner


_____
Kenneth Barasch


_____
Cathi Goldfischer


Goldfisher Spendthrift Trust


By: _____
       Name:
       Title:


32

**MEMBERS:**

_____
Edward Blumenfeld


_____
Harold Silverman


_____
Gerald Mordfin

_____
Scott Galin


_____
Noel Hecht


_____
Irving Baras


_____
Stephen Obstbaum


_____
Raymond Kurzner


_____
Kenneth Barasch


_____
Cathi Goldfischer


Goldfisher Spendthrift Trust

By: _____
    Name:
    Title:


32

**MEMBERS:**

_____
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
     Name:
     Title:

32

**MEMBERS:**

_____
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
        Name:
        Title:

32

**MEMBERS:**

_____

Edward Blumenfeld

_____

Harold Silverman

_____

Gerald Mordfin

_____

Scott Galin

_____

Noel Hecht

_____

Irving Baras

_____

Stephen Obstbaum

_____

Raymond Kurzner

_____

Kenneth Barasch

_____

Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
      Name:
      Title:

32

**MEMBERS:**

_____
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
    Name:
    Title:

33

**MEMBERS:**

_____
Edward Blumenfeld

_____
Harold Silverman

_____
Gerald Mordfin

_____
Scott Galin

_____
Noel Hecht

_____
Irving Baras

_____
Stephen Obstbaum

_____
Raymond Kurzner

_____
Kenneth Barasch

_____
Cathi Goldfischer


Goldfisher Spendthrift Trust

By: _____
    Name:
    Title:

**MEMBERS:**

Edward Blumenfeld

Harold Silverman

Gerald Mordfin

Scott Galin

Noel Hecht

Irving Baras

Stephen Obstbaum

Raymond Kurzner

Kenneth Barasch

Cathi Goldfischer

Goldfisher Spendthrift Trust

By: _____
    Name:
    Title:

32

_____

Robin Hollander


_____

Mindy Innerfield


_____

Susan Blumenfeld

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.3.doc

Robin Hollander

Mindy Innerfield

Susan Blumenfeld

Robin Hollander
_____

Mindy Innerfield
_____

Susan Blumenfeld
_____

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.1.doc

**EXHIBIT A**

| NAME, ADDRESS AND TAXPAYER I.D. NUMBER | PERCENTAGES | INITIAL CASH CAPITAL CONTRIBUTIONS |
|---|---|---|
| Edward Blumenfeld<br>c/o Blumenfeld Development<br>       Group, Ltd.<br>Syosset, New York  11791<br>Taxpayer I.D. No. 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 | 27.6050% | $276.05 |
| Harold Silverman<br>34 Deerpath Lane<br>Syosset, New York  11791<br>Taxpayer I.D. No. 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 | 13.0210% | $130.21 |
| Gerald Mordfin<br>2 Kristi Drive<br>Jericho, New York  11753<br>Taxpayer I.D. No. 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 | 13.0210% | $130.21 |
| Scott Galin<br>5 Fletcher Avenue<br>Lexington, MA  02420<br>Taxpayer I.D. No. 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 | 16.2760% | $162.76 |
| Noel Hecht<br>20 The Glenada<br>Roslyn Estates, New York  11576<br>Taxpayer I.D. No.  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 | 3.7500% | $37.50 |
| Irving Baras<br>1050 5th Avenue, Apt 12B<br>New York, New York  10028<br>Taxpayer I.D. No.  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 | 3.9060% | $39.06 |
| Stephen Obstbaum<br>463 Park Avenue<br>Leonia, New Jersey  07604<br>Taxpayer I.D. No.  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 | 1.9530% | $19.53 |

34

**Exhibit A** (continued)


| NAME, ADDRESS AND TAXPAYER I.D. NUMBER | PERCENTAGES | INITIAL CASH CAPITAL CONTRIBUTIONS |
|---|---|---|
| Raymond Kurzner<br>25-31 30th Road<br>Astoria, New York   11102<br>Taxpayer I.D. No.   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 | 3.9060% | $39.06 |
| Kenneth Barasch<br>455 East 57th Street<br>New York, New York   10022<br>Taxpayer I.D. No.   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 | 3.9060% | $39.06 |
| Cathi Goldfischer<br>900 Palisade Avenue, Apt. 9F<br>Fort Lee, New Jersey   07024<br>Taxpayer I.D. No.   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 | 0.9765% | $9.77 |
| Goldfischer Spendthrift Trust<br>1555 Center Avenue, 2nd Floor<br>Fort Lee, New Jersey   07024<br>Taxpayer I.D. No.   22-6806080 | 0.9765% | $9.77 |
| Robin Hollander<br>370 Lydecker Street<br>Engelwood, New Jersey   07631<br>Taxpayer I.D. No.   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 | 0.9765% | $9.76 |
| Mindy Innerfield<br>9 Carlton Court<br>New City, New York   10956<br>Taxper I.D. No.   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 | 0.9765% | $9.76 |
| Susan Blumenfeld<br>c/o Blumenfeld Development<br>      Group, Ltd.<br>6800 Jericho Turnpike<br>Syosset, New York   11791<br>Taxpayer I.D. No.   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 | 8.75% | $87.50 |

G:\Legal\Entities\BDG Larkfield Associates, LLC\Partnership Documents\Operating Agreement.3.doc

651107

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 |

OMB No. 1545-0099

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2007**

For calendar year 2007, or tax

year beginning _____

ending _____

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See separate instructions.

**Part III    Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| 1 Ordinary business income (loss) | 15 Credits |
|---|---|
| 0. | |
| 2 Net rental real estate income (loss) | |
| | 16 Foreign transactions |
| 3 Other net rental income (loss) | |
| 4 Guaranteed payments | |
| 5 Interest income | |
| 9,327. | |
| 6a Ordinary dividends | |
| 5,607. | 17 Alternative min tax (AMT) items |
| 6b Qualified dividends | |
| 7 Royalties | |
| | 18 Tax-exempt income and nondeductible expenses |
| 8 Net short-term capital gain (loss) | |
| 51,257. | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| | A    300,000. |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other information |
| | A    14,934. |
| | W*    9,327. |
| 11 Other income (loss) | |
| C    1,978. | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) | |

**Part I    Information About the Partnership**

A  Partnership's employer identification number
11-2796934

B  Partnership's name, address, city, state, and ZIP code

BULL MARKET FUND
300 ROBBINS LANE
SYOSSET, NY 11791

C  IRS Center where partnership filed return
OGDEN, UT

D  ☐ Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

E  Partner's identifying number
02-0602118

F  Partner's name, address, city, state, and ZIP code

BDG LARKFIELD ASSOCIATES LLC
300 ROBBINS LANE
SYOSSET, NY 11791

G  ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

H  ☒ Domestic partner    ☐ Foreign partner

I  What type of entity is this partner?  PARTNERSHIP

J  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

K  Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

*See attached statement for additional information.

L  Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 926,691. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 68,169. |
| Withdrawals & distributions | $( | 300,000.) |
| Ending capital account | $ | 694,860. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

For IRS Use Only

JWA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2007

711261
12-31-07

36

## DECLARATION OF SERVICE

State of New York, County of New York )ss:

Ramsey Hinkle an attorney admitted to practice in the courts of New York, hereby declares:

I am not a party to this action, am over 18 years of age and am an associate at the law office of Clayman & Rosenberg, LLP 305 Madison Avenue, New York, New York 10165.

On January 6, 2010, I served a true copy of the annexed OBJECTIONS TO TRUSTEES DETERMINATIONS by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee for that purpose. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

VIA FEDERAL EXPRESS
Irving H. Picard, Trustee
c/o Baker and Hostetler LLP
45 Rockefeller Plaza – 11th Floor
New York, New York 10111

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on:   January 6, 2010
New York, New York

_____
Ramsey Hinkle