CLAYMAN & ROSENBERG
Seth L. Rosenberg  (SR4563)
Paul S. Hugel        (PH4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:        (212) 949-8255

*Attorneys for BDG 115 Broadhollow, L.P.*
(BLMIS Account No. 1-B0081 designated Claim Number 011227)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION           :
CORPORATION,
                                                              :        Adv. Pro. No. 08-01789(BRL)

                          Plaintiff,
                                                              :

    -against-
                                                              :        SIPA Liquidation

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,                                        :

                          Defendant              :

-------------------------------------------------------X

**OBJECTION TO TRUSTEE'S DETERMIMNATION OF CLAIM**

    BDG 115 Broadhollow, L.P. ("Objector"), by counsel, CLAYMAN & ROSENBERG, hereby

objects to the Notice of Trustee's Determination of Claim dated December 8, 2009 (the

"Determination Letter"), appended hereto as Exhibit A, as set forth herein.

## BACKGROUND

1.      Objector is a "Customer" as that term is defined by the Securities Investor

Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS").

2.      Objector was and is a member of Bull Market Fund, a general partnership

organized in the State of New York in 1986.

3.      The Bull Market Fund partnership was organized with the knowledge and

encouragement of BMLIS for the purpose of consolidating the bookkeeping for the investment

of certain small investors with BLMIS.

4.      Bull Market Fund received a final statement from BLMIS which indicated that

Bull Market Fund owned securities valued at $36,833,462.86.

5.      On or about December 31, 2008, Objector received a statement from Bull Market

Fund which indicated that Objector's funds invested by Bull Market Fund in BLMIS were

valued at $245,103.

6.      On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

Irving Picard was appointed Trustee ("BLMIS Trustee") with oversight of the liquidation of

BLMIS and responsibility for processing customer claims for money pursuant to SIPA.

7.      By Order dated December 23, 2008, the Court directed the Trustee to disseminate

notice and claim forms to BLMIS customers and set forth claim-filing deadlines. The Order

further authorized the Trustee, *inter alia,* "to satisfy, within the limits provided by SIPA, those

portions of any and all customer claims and accounts which agree with the Debtor's books and

records," and provided that, where the BLMIS Trustee disagrees with the amount claimed in a

customer's claim form, the BLMIS Trustee, "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor…"

8.      On or about June 24, 2009, Objector timely submitted a customer claim form to SIPC setting forth his claim in the amount of $245,103 ("Objector's claim"). Objector's claim cross-referenced the BLMIS account of Bull Market Fund. A copy of Objector's claim form is appended hereto as Exhibit B.

9.      On December 8, 2009, the BLMIS Trustee sent Objector a Determination Letter denying Objector's claim, "in its entirety." Exhibit A. The Determination Letter stated, in part, "Based upon a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. Section 78111 (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**."

10.     Objector objects to the BLMIS Trustee's disallowance of his claim for the reasons set forth hereinbelow.

## GROUNDS FOR OBJECTION

11.     First:        The Trustee's definition and application of the term, "account" as set forth in the Determination Letter is incorrect.

12.     Second:       The Trustee's definition and application of the term, "customer" as set forth in the Determination Letter is incorrect.

13.     Objector reserves the right to revise or amend this Objection. Objector's failure to assert an objection on a particular ground or grounds shall not be construed as a waiver of its right to object or join in the objection of other claimants on any additional grounds.

14.     Objector reserves all rights set forth in Rule 9014.

15.     Objector incorporates herein by reference all claims and reservations of rights set forth in Objector's claim form. Exhibit B.

## RELIEF SOUGHT

16.     Objector's claim should be allowed in its entirety.

17.     The Court should direct SIPC to pay Objector the full amount of Objector's claim together with interest thereon commencing not later than the date of the Determination Letter.

18.     Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
       January 6, 2010

                                    CLAYMAN & ROSENBERG
                                    By:    Seth L. Rosenberg  (SR4563)
                                           Paul S. Hugel      (PH4749)
                                    305 Madison Avenue
                                    New York, NY 10165
                                    Telephone:    (212) 922-1080
                                    Telefax:      (212) 949-8255
                                    rosenberg@clayro.com
                                    hugel@clayro.com

EXHIBIT A

DETERMINATION LETTER

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

BDG 115 BROADHOLLOW, L.P.
6800 JERICHO TURNPIKE
SYOSSET, NY 11791

Dear BDG 115 BROADHOLLOW, L.P.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 011227:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  DAVID KAPLAN
300 ROBBINS LANE
SYOSSET, NY 11791

EXHIBIT B

CUSTOMER CLAIM FORM

**BDG 115 BROADHOLLOW, L.P.**
**300 ROBBINS LANE**
**SYOSSET, NY 11791**

June 24, 2009                                                                    *Via UPS Overnight*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, Texas 75201

Re:    Account Number: 1-B0081
       BDG 115 Broadhollow, L.P. through Bull Market Fund
       300 Robbins Lane
       Syosset, New York 11791

Dear Mr. Picard:

BDG 115 Broadhollow, L.P. is a partner in Bull Market Fund, which had an account with Bernard L. Madoff Investment Securities ("BLMIS"), Account No. 1-B0081.

It is our understanding that Bull Market Fund has submitted its own SIPC Customer Claim Form to your office.

We wish to submit our own personal SIPC Customer Claim Form at this time. We are attaching the following:

   1.  Our SIPC Customer Claim Form;
   2.  Bull Market Fund's November 30, 2008 BLMIS statement;
   3.  Our 2007 Schedule K-1;
   4.  Our personal account balance as of December 11, 2008; and
   5.  Amended and Restated Limited Partnership Agreement of BDG 115 Broadhollow, L.P.

We reserve the right to amend or modify this claim if and to the extent warranted by facts and circumstances not presently known to us, or as a result of a subsequent determination by a court of competent jurisdiction with respect to any issue pertaining to our claim.

This letter is hereby incorporated by reference in and made a part of our SIPC Customer Claim Form.

Very truly yours,

BDG 115 Broadhollow, L.P.

By: BDG 115 Broadhollow, Inc., its
       General Partner

By:
       Name: David Blumenfeld
       Title:   Vice President

☒Close Window



# Tracking Detail

**Your package has been delivered.**

| | |
|---|---|
| Tracking Number: | 1Z 12X 236 13 9950 682 8 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 06/25/2009  1:10 P.M. |
| Signed By: | THOMASSON |
| Location: | OFFICE |
| Delivered To: | 2100 MCKINNEY AVE 800 DALLAS, TX, US 75201 |
| Shipped/Billed On: | 06/24/2009 |
| Reference Number(s): | 01/SM, BDG 115 BROADHOLLOW, L.P. BMF |
| Service: | NEXT DAY AIR SAVER |

### Package Progress

| Location | Date | Local Time | Description |
|---|---|---|---|
| DALLAS, TX, US | 06/25/2009 | 1:10 P.M. | DELIVERY |
| | 06/25/2009 | 7:46 A.M. | OUT FOR DELIVERY |
| | 06/25/2009 | 6:07 A.M. | ARRIVAL SCAN |
| DALLAS/FT. WORTH A/P, TX, US | 06/25/2009 | 5:40 A.M. | DEPARTURE SCAN |
| | 06/25/2009 | 4:54 A.M. | ARRIVAL SCAN |
| ROCKFORD, IL, US | 06/25/2009 | 3:13 A.M. | DEPARTURE SCAN |
| ROCKFORD, IL, US | 06/24/2009 | 11:29 P.M. | ARRIVAL SCAN |
| JAMAICA, NY, US | 06/24/2009 | 10:16 P.M. | DEPARTURE SCAN |
| | 06/24/2009 | 9:18 P.M. | ARRIVAL SCAN |
| UNIONDALE, NY, US | 06/24/2009 | 8:39 P.M. | DEPARTURE SCAN |
| | 06/24/2009 | 8:22 P.M. | ORIGIN SCAN |
| | 06/24/2009 | 7:13 P.M. | PICKUP SCAN |
| | 06/24/2009 | 7:12 P.M. | PICKUP SCAN |

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: BDG 115 BROADHOLLOW, L.P.
THROUGH BULL MARKET FUND
Mailing Address: 300 ROBBINS LANE
City: SYOSSET   State: NY   Zip: 11791
Account No.: BULL MARKET FUND'S ACCOUNT NO.: 1-B0081
Taxpayer I.D. Number (Social Security No.): 11-3306060

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1.   Claim for money balances as of December 11, 2008:

a.   The Broker owes me a Credit (Cr.) Balance of          $   -0-

b.   I owe the Broker a Debit (Dr.) Balance of          $   -0-

c.   If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.          $   -0-

d.   If balance is zero, insert "None."          NONE

502180406

1

2.        Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | SEE BULL MARKET FUND ACCOUNT STATEMENT | $ 245,103 * | |
| | | | |
| | | | |
| | | | |
| | | | |

Number of Shares or Face Amount of Bonds

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.

502180406

2

* PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer:      BDG 115 BROADHOLLOW, L.P.
THROUGH BULL MARKET FUND
Mailing Address:      300 ROBBINS LANE
City:      SYOSSET      State:  NY      Zip:  11791
Account No.:      BULL MARKET FUND'S ACCOUNT NO.: 1-B0081
Taxpayer I.D. Number (Social Security No.):  11-3306060

NOTE:     BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.     Claim for money balances as of December 11, 2008:

    a.     The Broker owes me a Credit (Cr.) Balance of      $   -0-

    b.     I owe the Broker a Debit (Dr.) Balance of      $   -0-

    c.     If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC."

       If you wish to make a payment, **it must be enclosed**

       with this claim form.      $   -0-

    d.     If balance is zero, insert "None."      NONE

502180406                          1

2.       Claim for securities as of December 11, 2008:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | Number of Shares or Face Amount of Bonds — I Owe the Broker (Short) |
|---|---|---|---|
| | SEE BULL MARKET FUND ACCOUNT STATEMENT | $ 245,103 * | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.

502180406

2

\* PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X * |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: DAVID KAPLAN, 300 ROBBINS LANE, SYOSSET, NY 11791

502180406                                    3

\* SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

BDG 115 BROADHOLLOW, L.P.
By: BDG 115 Broadhollow, Inc., its general par

Date _JUNE 24, 2009_    Signature _DAVID BLUMENFELD, VICE PRESIDENT_

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                           4

## SUPPLEMENTAL CLAIM INFORMATION
### ATTACHMENT A

Claimant is filing this claim form as a customer of Bernard L. Investment Securities LLC ("BLMIS"), having invested in BLMIS through a partnership, Bull Market Fund ("BMF"). Pursuant to the partnership agreement of BMF and other written agreements amongst the Partners of BMF, BMF invested all of its funds with BLMIS. BMF has informed claimant that its customer account number with BLMIS was 1-B0081. BMF has also advised claimant that it is filing a customer claim for the losses in its customer account with BLMIS.

BMF typically issued quarterly statements showing each partner's account summary. In light of the BLMIS fraud, BMF issued a statement to each partner showing their closing balance as of December 10, 2008, a copy of which is enclosed. Claimant believes that as of December 11, 2008, the amount of claimant's investment was all held in the securities as shown on the November 30, 2008 BLMIS statement for BMF, a copy of which is also enclosed.

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY : 11791

1-B0081-3-0        11/30/08        ****** ** 6934        1

| DATE | | | | | | |
|---|---|---|---|---|---|---|
| | | BALANCE FORWARD | | | 1,428,340.08 | |
| 11/03 | 2,880 | | | | | |
| 11/05 | 4,992 | ROBERT HALF INTERNATIONAL | | | | |
| 11/05 | 3,432 | AMGEN INC | 66,350 | 207,258.20 | | |
| 11/06 | 2,466 | BOEING CO | 51,120 | 127,498.52 | | |
| 11/06 | 3,744 | BAXTER INTERNATIONAL INC | 58,600 | | | |
| 11/06 | 6,240 | BANK OF NEW YORK MELLON CORP | 32,290 | 121,042.76 | | |
| 11/06 | 1,528 | BRISTOL-MYERS SQUIBB COMPANY | 20,610 | 128,855.40 | | |
| 11/06 | | COCA COLA CO | | | | |
| 11/06 | 9,360 | COMCAST CORP | 15,790 | 148,160.40 | | |
| 11/06 | | CISCO SYSTEMS INC | | | | |
| 11/06 | 4,680 | CVS CAREMARK CORP | 30,510 | 142,971.80 | | |
| 11/06 | 6,552 | CHEVRON CORP | 73,740 | 483,406.68 | | |
| 11/06 | 624 | GOOGLE | 356,520 | 222,492.48 | | |
| 11/06 | 3,848 | GOLDMAN SACHS GROUP INC | 91,870 | 1,161,702.76 | | |
| 11/06 | 7,800 | HEWLETT PACKARD CO | | | | |
| 11/06 | 4,368 | INTERNATIONAL BUSINESS MACHS | 92,800 | 405,524.40 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY: 11791

1-B0081-3-0      11/30/08      *****6934      2

| BOUGHT RECEIVED | DATE | NUMBER | DESCRIPTION | AMOUNT | PRICE OR SYMBOL |
|---|---|---|---|---|---|
| 17,784 | 11/06 | 16053 | INTEL CORP | 16.070 | 286,499.88 |
| 18,768 | 11/06 | 16286 | JOHNSON & JOHNSON | 61.310 | 555,033.08 |
| 4,992 | 11/06 | 16752 | JPMORGAN CHASE & CO | 40.510 | 405,502.62 |
| 9,240 | 11/06 | 16756 | KRAFT FOODS INC | 29.120 | 149,555.92 |
| 6,240 | 11/06 | 16993 | COCA COLA CO | 44.490 | 277,866.60 |
| 3,744 | 11/06 | 17229 | MCDONALDS CORP | 57.900 | 216,926.60 |
| 21,024 | 11/06 | 17479 | MICROSOFT CORP | | 469,568.60 |
| 17,628 | 11/06 | 17698 | JPMCORP PAY | | 350,567.56 |
| 6,552 | 11/06 | 17923 | ALTRIA GROUP INC | 19.160 | 125,798.32 |
| 6,864 | 11/06 | 18141 | MERCK & CO | 30.780 | 211,547.92 |
| 12,792 | 11/06 | 18565 | HEWLETT PACKARD CO | | 450,141.82 |
| 2,808 | 11/06 | 19343 | ORACLE CORPORATION | | 52,494.16 |
| 4,992 | 11/06 | 19570 | OCCIDENTAL PETROLEUM CORP | 54.290 | 152,558.32 |
| 11,928 | 11/06 | 19921 | PEPSICO INC | 57. | 284,743.00 |
| 5,712 | 11/06 | 20048 | PROCTER & GAMBLE CO | 64.570 | 301,632.37 |
| 6,864 | 11/06 | 20283 | PHILIP MORRIS INTERNATIONAL | 42.730 | 293,572.72 |
| 5,304 | 11/06 | 20518 | QUALCOMM INC | 37.910 | 202,786.24 |
| 187,720 | 11/06 | 20753 | SCHLUMBERGER LTD | | 193,395.52 |
| 11,544 | 11/06 | 20968 | AT&T INC | 26.980 | 508,989.80 |
| 31,560 | 11/06 | 21223 | TIME WARNER INC | 10.060 | 116,593.64 |
| 5,148 | 11/06 | 21468 | UNITED PARCEL SVC INC | 52.780 | 164,828.80 |
| 5,616 | 11/06 | 21695 | VERIZON | 29.550 | 166,918.40 |
| 3,120 | 11/06 | 21928 | UNITED TECHNOLOGIES CORP | 54.920 | 171,474.40 |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADF

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

1-80081-3-0        11/30/08        *******6934        3

| DATE | BOUGHT | SOLD | DESCRIPTION | PRICE | | AMOUNT |
|------|--------|------|-------------|-------|--|--------|
| 11/06 | 9,048 | | 22163 VERIZON COMMUNICATIONS | 29.980 | 271,620.04 | |
| 11/06 | 10,608 | | 22398 WELLS FARGO & CO NEW | 33.660 | 357,499.28 | |
| 11/06 | 7,176 | | 22068 WALLS FARGO & CO NEW | 124.860 | | |
| 11/06 | 16,848 | | 22068 EXXON MOBIL CORP | | 1,742,703.84 | |
| 11/06 | | | FIDELITY SPARTAN | | | |
| 11/06 | | | U S TREASURY MONEY MARKET | DIV | | 2.54 |
| 11/06 | 109,794 | | 16696 FIDELITY SPARTAN | | 109,794.00 | |
| 11/06 | | | U S TREASURY MONEY MARKET | | | |
| 11/06 | 24,608 | | 43165 U S TREASURY SPARTAN | 1 | | 24,608.00 |
| 11/06 | | | FIDELITY SPARTAN | | | |
| 11/06 | 3,750,000 | | 43599 U S TREASURY MONEY MARKET | | | 3,750,000.00 |
| 11/06 | | | DUE 12/11/2008 | | | |
| 11/06 | 3,750,000 | | 43611 U S TREASURY BILL | 99. | | 3,750,000.00 |
| 11/06 | | | DUE 12/11/2008 | | | |
| 11/06 | 3,925,000 | | 48824 U S TREASURY BILL | 99.960 | | 3,923,430.00 |
| 11/06 | | | DUE 12/18/2008 | | | |
| 11/06 | 3,925,000 | | 49033 U S TREASURY BILL | 99.946 | | 3,922,880.50 |
| 11/06 | | | DUE 01/15/2009 | | | |
| 11/06 | 3,925,000 | | 49246 U S TREASURY SPARTAN | | | 3,925,000.00 |
| 11/06 | | | DUE 01/22/2009 | | | |
| | | | CONTINUED ON PAGE    4 | | | |

[MADF]

# BERNARD L. MADOFF
### INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| 1-B0081-3-0 | 11/30/08 | ******6934 | 4 | 3,922,174.00 |

| DATE | QUANTITY | | DESCRIPTION | PRICE OR SYMBOL | AMOUNT |
|---|---|---|---|---|---|
| 11/06 | 3,925,000 | 49461 | U.S TREASURY BILL DUE 01/29/2009 | 99.928 | |
| 11/06 | 1,750,000 | 49677 | U.S TREASURY BILL DUE 2/19/2009 | 99.902 | |
| 11/06 | | 49908 | U.S TREASURY BILL DUE 05/26/2009 | 99.102 | 2,559,390,015.50 |
| 11/06 | 2,575,000 | 50127 | U.S TREASURY BILL DUE 3/26/2009 | 99.751 | 2,568,583.25 |
| 11/06 | 2,575,000 | 50356 | U.S TREASURY BILL DUE 4/02/2009 | 99.726 | 2,567,944.50 |
| 12/07 | 1,564 | 230004 | APPLE INC | 198.800 | 221,504.20 |
| 12/07 | 3,456 | 233639 | ABBOTT LABORATORIES | 56.590 | 195,713.04 |
| 12/07 | 3,216 | 22074 | AMGEN INC | 52.070 | 147,573.32 |
| 11/07 | 11,716 | 24907 | BANK OF AMERICA | 23.470 | |
| 11/07 | 1,296 | 24544 | BAXTER INTERNATIONAL INC | 61.740 | 80,066.04 |
| 11/07 | 2,376 | 24579 | BANK OF NEW YORK MELLON CORP | 34.210 | 81,377.96 |
| 11/07 | | 22233 | CONSOLIDATED EDISON CO | | |
| 11/07 | 1,512 | 23030 | ANHEUSER BUSCH COMPANY INC | | |
| 11/07 | 11,664 | 25519 | CITI GROUP INC | 14.410 | 168,544.24 |

CONTINUED ON PAGE 5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET        NY   11791

1-B0081-3-0     11/30/08     5     *****6934

| Date | Bought/Long | Sold/Short | No. | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 11/07 | 6,264 | | 25754 | COMCAST CORP CL A | 17.390 | 109,180.96 |
| 11/07 | 3,174.0 | | 25907 | CONOCOPHILLIPS | | |
| 11/07 | 12,174 | | 26224 | CISCO SYSTEMS INC | | |
| 11/07 | 3,024 | | 26459 | CVS CAREMARK CORP | 31.720 | 96,041.28 |
| 11/07 | 4,536 | | 26592 | CHEVRON CORP | 75.450 | 342,422.20 |
| 11/07 | 4,104 | | 26927 | THE WALT DISNEY CO | 25.750 | 105,698.40 |
| 11/07 | 22,680 | | 27064 | GENERAL ELECTRIC CO | 20.010 | 450,697.80 |
| 11/07 | 432 | | 27359 | GOOGLE | 349.160 | 150,854.12 |
| 11/07 | 864 | | 27634 | GOLDMAN SACHS GROUP INC | 89.070 | 76,990.48 |
| 11/07 | 5,400 | | 27864 | HOME DEPOT INC | | |
| 11/07 | 9,072 | | 28094 | HEWLETT PACKARD CO | | |
| 11/07 | 3,024 | | 28339 | INTERNATIONAL BUSINESS MACHS | 92.430 | 279,628.32 |
| 11/07 | 12,096 | | 28574 | INTEL CORP | 16. | 194,019.00 |
| 11/07 | 6,000 | | 28909 | JOHNSON & JOHNSON | | |
| 11/07 | 3,240 | | 29046 | JP MORGAN CHASE & CO | | |
| 11/07 | 3,240 | | 29279 | KRAFT FOODS INC | 29.710 | 96,389.40 |
| 11/07 | 4,320 | | 29514 | COCA COLA CO | 46.580 | 201,357.60 |
| 11/07 | 2,376 | | 29644 | MCDONALDS CORP | | |
| 11/07 | 1,512 | | 30219 | 3M COMPANY | 64.880 | 98,150.56 |
| 11/07 | 4,536 | | 30654 | ALTRIA GROUP INC | 19.370 | 88,043.32 |
| 11/07 | 17,280 | | 30624 | MERCK & CO | 20.470 | 354,054.00 |
| 11/07 | 8,640 | | 31159 | ORACLE CORPORATION | 18.470 | 159,925.80 |
| 11/07 | | | | MICROSOFT CORP | | |

CONTINUED ON PAGE 5

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADF

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY   11791

1-B0081-3-0         11/30/08         ******6934         6.

| DATE | | | DESCRIPTION | | |
|------|--|--|-------------|--|--|
| 11/07 | 1,728 | | OCCIDENTAL PETROLEUM CORP | 54.380 | 94,037.64 |
| 11/07 | 3,456 | | PEPSICO INC | 58.630 | 202,763.28 |
| 11/07 | 4,608 | | PFIZER INC | | 85,772.16 |
| 11/07 | 6,996 | | PROCTER & GAMBLE CO | 65.480 | 459,412.80 |
| 11/07 | 4,536 | | PHILLIP MORRIS INTERNATIONAL | 43.640 | 198,132.04 |
| 11/07 | 3,312 | | QUALCOMM INC | 37.690 | 139,513.68 |
| 11/07 | 2,152 | | SCHLUMBERGER LTD | | |
| 11/07 | 2,528 | | AT&T INC | | |
| 11/07 | 7,776 | | TIME WARNER INC | 10.110 | 78,926.36 |
| 11/07 | 2,160 | | UNITED PARCEL SVC INC | 53.680 | 116,034.80 |
| 11/07 | | 33444 | US BANCORP | | |
| 11/07 | 59,888 | 34424 | UNITED TECHNOLOGIES CORP | 56 | |
| 11/07 | 2,160 | 34449 | VERIZON COMMUNICATIONS | 51.810 | 121,044.00 |
| 11/07 | 6,048 | 34604 | WELLS FARGO CO NEW | | 192,627.88 |
| 11/07 | 4,324 | | WAL-MART STORES INC | | |
| 11/07 | 4,968 | 35194 | EXXON MOBIL CORP | 75.280 | 862,262.44 |
| 11/07 | 11,448 | 35309 | FIDELITY SPARTAN | DIV | |
| 11/07 | | | DIV 11/07/08 | | |
| 11/07 | | 18,784 | FIDELITY SPARTAN | 1 | 18,784.00 |
| 11/07 | | 10803 | U S TREASURY MONEY MARKET | | |
| 11/07 | | 1314 | DUE 02/05/09 | 99.123 | |
| | | 2,370,000 | | | 2,375,171.25 |

CONTINUED ON PAGE         2/05/2009

18,784.00

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

MADF

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

1-B0081-3-0     11/30/08     7     ******6934

| DATE | | | | | | |
|------|--|--|--|--|--|--|
| 11/07 | | 2,450,000 | 11382 | U S TREASURY BILL DUE 02/19/2009 | 99.887 | 2,447,231.50 |
| 11/07 | | 2,450,000 | 11597 | U S TREASURY BILL DUE 02/26/2009 | 99.869 | 2,446,800.50 |
| 11/07 | | 2,450,000 | 11813 | U S TREASURY BILL DUE 03/05/2009 | | |
| 11/07 | | 2,450,000 | 12019 | U S TREASURY BILL DUE 03/05/2009 | | |
| 11/07 | 1,175,000 | | 12141 | U S TREASURY BILL DUE 04/09/2009 | 99.840 | 1,173,710.00 |
| 11/07 | 1,175,000 | | 12395 | U S TREASURY BILL DUE 4/16/2009 | | 2,446,080.00 |
| 11/10 | 100,176 | | 12371 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | |
| 11/10 | 2,376 | | 35864 | APPLE INC | 108.720 | 258,413.72 |
| 11/10 | 4,227 | | 36097 | ABBOTT LABORATORIES | 55.970 | 236,331.04 |
| 11/10 | 2,904 | | 36334 | AMGEN INC | | |
| 11/10 | 2,112 | | 36565 | BOEING CO | | |
| 11/10 | 13,728 | | 36804 | BANK OF AMERICA | 244.050 | 330,707.40 |
| | | | | CONTINUED ON PAGE | | |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET        NY    11791

1-B0081-3-0          11/30/08          8          ******6934

| DATE | AMOUNT RECEIVED/PAID | | | DESCRIPTION | PRICE PER SHARE | AMOUNT DEBITED/CREDITED | |
|---|---|---|---|---|---|---|---|
| 11/10 | 1,848 | | 37039 | BAXTER INTERNATIONAL INC | 60.770 | 112,375.96 | |
| 11/10 | 3,960 | | 37274 | BANK OF NEW YORK MELLON CORP | 33,410 | 104,190.64 | |
| 11/10 | 5,544 | | 37103 | BRISTOL MYERS SQUIBB COMPANY | 21.300 | 118,363.04 | |
| 11/10 | 1,848 | | 5744 | ANHEUSER-BUSCH COS INC | 62.690 | 118,955.52 | |
| 11/10 | 15,048 | | 37979 | CITI GROUP INC | 14.270 | 215,335.96 | |
| 11/10 | 7,920 | | 38216 | COMCAST CORP | 17.410 | 138,203.20 | |
| 11/10 | 41,224 | | 38449 | PEPSICO/PHILIPS | 54.150 | 228,063.12 | |
| 11/10 | 16,104 | | 38684 | CISCO SYSTEMS INC | 18.080 | 291,804.32 | |
| 11/10 | 3,960 | | 38819 | CVS CAREMARK CORP | 31.300 | 124,106.00 | |
| 11/10 | 51,000 | | 38954 | CHEVRON CORP | 78.070 | 47,053.28 | |
| 11/10 | 50,916 | | 59989 | THE WALT DISNEY CO | 22.660 | 120,429.58 | |
| 11/10 | 28,776 | | 39624 | GENERAL ELECTRIC CO | 20.530 | 591,922.28 | |
| 11/10 | 528 | | 39059 | GOOGLE | 362.580 | 191,991.24 | |
| 11/10 | 14,520 | | 40094 | GOLDMAN SACHS GROUP INC | 75.500 | 1,096,389.00 | |
| 11/10 | 44,752 | | 40521 | HOME DEPOT INC | 37.290 | 256,232.56 | |
| 11/10 | 6,864 | | 40564 | HEWLETT PACKARD CO | 37.290 | 256,232.56 | |
| 11/10 | 3,696 | | 40590 | INTERNATIONAL BUSINESS MACHS | 92.660 | 342,618.36 | |
| 11/10 | 15,576 | | 40084 | INTEL CORP | 15.080 | 235,950.88 | |
| 11/10 | 17,856 | | 42269 | JOHNSON & JOHNSON | 62.650 | 467,177.52 | |
| 11/10 | 10,032 | | 41504 | J P MORGAN CHASE & CO | 41.730 | 419,035.36 | |
| 11/10 | 44,224 | | 41739 | KRAFT FOODS INC | 30.100 | 124,310.40 | |
| 11/10 | 5,544 | | 41574 | COCA COLA CO | 44.390 | 253,144.32 | |
| 11/10 | 3,168 | | 42209 | MCDONALDS CORP | 57.250 | 181,480.64 | |
| 11/10 | 3,168 | | 42444 | MEDTRONIC INC | 40.300 | 127,796.40 | |

CONTINUED ON PAGE 2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

1-B00B01-3-0          11/30/08          9

*****6934

| DATE | BOUGHT | | | DESCRIPTION | | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|------|--------|---|---|-------------|---|-------|----------------|-----------------|
| 11/10 | 1,848 | | 42679 | 3M COMPANY | | 64.690 | | 119,620.12 |
| 11/10 | 5,544 | | 42914 | ALTRIA GROUP INC | | 19.890 | | 105,947.16 |
| 11/10 | 5,808 | | 42691 | AMGEN INC | | | | 177,414.08 |
| 11/10 | 219,384 | | 42904 | CISCO SYS CAP CORP | | 20.510 | | 494,968.00 |
| 11/10 | 10,824 | | 42904 | MICROSOFT CORP | | 25.200 | | 290,800.00 |
| 11/10 | 2,376 | | 43619 | ORACLE CORPORATION | | 18.600 | | 201,758.40 |
| 11/10 | 7,272 | | 44324 | OCCIDENTAL PETROLEUM CORP | | 56.010 | | 133,174.76 |
| 11/10 | 104,544 | | 44365 | PFIZER INC | | | | 143,259.00 |
| 11/10 | 8,184 | | 44794 | PEPSICO INC | | 174,060 | | 884,494.04 |
| 11/10 | 5,544 | | 45029 | PROCTER & GAMBLE CO | | 65.230 | | 534,169.32 |
| 11/10 | 14,788 | | 45264 | QUALCOMM INC | | 44.030 | | 244,323.32 |
| 11/10 | 16,368 | | 45969 | PHILIP MORRIS INTERNATIONAL | | | | 161,758.48 |
| 11/10 | 3,432 | | 45994 | SCHLUMBERGER LTD | | | | 878,496.00 |
| 11/10 | 9,504 | | 46204 | ATT INC NEW | | 28.580 | | 466,451.44 |
| 11/10 | 2,640 | | 46335 | TIME WARNER INC | | 11.010 | | 102,019.04 |
| 11/10 | | | | CLASS A COM DIV IN | | | | 143,771.04 |
| 11/10 | 4,752 | | 46674 | U S BANCORP | | 31.510 | | 149,925.52 |
| 11/10 | 2,640 | | 46698 | UNITED TECHNOLOGIES CORP | | 56.430 | | 149,080.20 |
| 11/10 | 7,920 | | 47049 | VERIZON COMMUNICATIONS | | | | 255,763.20 |
| 11/10 | 4,752 | | 47474 | WELLS FARGO CO NEW | | | | 140,928.00 |
| 11/10 | 6,072 | | 47614 | WAL-MART STORES INC | | 54.680 | | 338,933.12 |
| 11/10 | 142,256 | | 47869 | EXXON MOBIL CORP | | 75.800 | | 1,081,174.80 |
| 11/10 | | | | U S TREASURY BILL | | | | |
| | | | | DIV 11/10/08 | | | | |

CONTINUED ON PAGE 10

U/S TREASURY MONEY MARKET

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
[MADF] INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

BERNARD L. MADOFF INVESTMENT SECURITIES LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| 1-B0081-3-0 | 11/30/08 | *****6934 | 10 |

| DATE | BOUGHT RECEIVED OR DELIVERED | SOLD DELIVERED OR RECEIVED | | | | |
|---|---|---|---|---|---|---|
| 11/10 | | 30,199 | 12616 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1. | 30,199.00 |
| 11/10 | | 28,600,000 | 13623 | U S TREASURY BILL DUE 03/19/2009 | 99.870 | 28,562,840.00 |
| 11/10 | | 24,575,000 | 13623 | U S TREASURY BILL DUE 03/19/2009 | 99.834 | 24,534,225.50 |
| 11/10 | | 2,575,000 | 13625 | U S TREASURY BILL DUE 3/26/2009 | 99.770 | 2,569,077.50 |
| 11/10 | | 3,750,000 | 13628 | U S TREASURY BILL DUE 04/09/2009 | 99.674 | 3,744,085.00 |
| 11/10 | | 1,150,000 | 14606 | U S TREASURY BILL DUE 4/16/2009 | 99.686 | 1,147,100.50 |
| 11/10 | 50,000 | | 14281 | U S TREASURY BILL DUE 4/16/2009 | 99.686 | 49,843.00 |
| 11/10 | 685 | | 14508 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 685.00 |
| 11/12 | | 105,400 | 25942 | CHECK | DIV | 100,000.00 |
| 11/24 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | | 100,000.00 |
| 11/24 | | | | | | .05 |

CONTINUED ON PAGE 11

BLM
BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A- BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV. GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| (Account No.) | (Date) | (Page) |
|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 11 |

| DATE | AMOUNT QUANTITY SYMBOL | DESCRIPTION | PRICE DR | AMOUNT DEBITED OR CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|
| 11/14 | | 685  29393  FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 685.00 |
| 11/17 | 14,357 | | | |
| 11/18 | | 9994  FIDELITY SPARTAN MONEY MARKET | CA | 250,000.00 |
| 11/18 | | CHECK | CA | 150,000.00 |
| 11/18 | | CHECK | CA | 300,000.00 |
| 11/18 | | CHECK | CA | 500,000.00 |
| 11/18 | 3,757,000 | 9250  U S TREASURY BILL | 200,000.00 |
| 11/18 | | 99488  DUE 4/16/2009 | 99.0830 | 150,000.00 |
| 11/18 | 13,717 | 9972  U S TREASURY MONEY MARKET DUE 4/16/2009 | 100.0000 | |
| 11/18 | 450,000 | 49954  U S TREASURY BILL DUE 1/26/2009 | 99.830 | 449,235.00 |
| 11/18 | 5,765 | 49955  FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 5,765,000.00 |
| 11/19 | 20,839 | 50057  FIDELITY SPARTAN U S TREASURY MONEY MARKET | DIV.  1 | 20,839.00 |
| 11/19 | | CONTINUED ON PAGE 12 | | .45 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

1-B0081-3-0    11/30/08    *****6934    12

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRAN. CODE | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 11/19 | 3,525,000 | | 54708 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 3,522,391.50 | |
| 11/19 | 9,220 | | 59098 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 9,220.00 | |
| 11/20 | | 3,525,000 | 50678 | CHECK | | | 675,000.00 |
| | | | | DUE 03/26/2009 BILL 3/26/2009 | | | 3,522,391.50 |
| 11/20 | 2,850,000 | | 63097 | U S TREASURY BILL DUE 03/26/2009 | 99.947 | | 2,848,489.50 |
| 11/20 | 171 | | 64175 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 171.00 |
| 11/25 | 882 | | 64655 | ABBOTT LABORATORIES | | | |
| 11/25 | 588 | | 64993 | AMGEN INC | 54.140 | | |
| 11/25 | 1,078 | | 65132 | BANK OF AMERICA | 53.630 | | |
| 11/25 | 4,998 | | 65209 | BANK OF AMERICA | 12.980 | | |
| 11/25 | 588 | | 65801 | BANK OF NEW YORK MELLON CORP | | | |
| 11/25 | 1,176 | | 65645 | BRISTOL MYERS SQUIBB COMPANY | 20.140 | | |
| 11/25 | 1,960 | | 66093 | CITIGROUP INC | 6.100 | | |
| 11/25 | 5,684 | | 65321 | | | | |
| 11/25 | 790 | | 65352 | COMCAST CORP CL A | | | |
| 11/25 | 2,842 | | 65359 | | | | |

CONTINUED ON PAGE 13

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Bernard L. Madoff Investment Securities LLC
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY   11791

| | | | ACCOUNT NO. 1-B0081-3-0 | DATE 11/30/08 | PAGE 13 | ACCOUNT *****6934 |
|---|---|---|---|---|---|---|

| Date | Quantity | | Description | Price | Amount Debited to Your Account |
|---|---|---|---|---|---|
| 11/25 | 1,568 | 66797 | CONOCOPHILLIPS | 45.100 | 70,778.80 |
| 11/25 | 5,880 | 67035 | CISCO SYSTEMS INC | 14.970 | 88,256.60 |
| 11/25 | 1,470 | 67270 | CVS CAREMARK CORP | 27.040 | 39,806.80 |
| 11/25 | 10,586 | 67511 | CHEVRON CORP | 68.740 | 142,887.10 |
| 11/25 | 1,862 | 67749 | THE WALT DISNEY CO | 19.760 | 36,867.12 |
| 11/25 | 606 | 67987 | EXELON CORP | 48.740 | 33,466.64 |
| 11/25 | 10,780 | 68225 | GENERAL ELECTRIC CO | 14.010 | 151,420.80 |
| 11/25 | 196 | 68463 | GOOGLE | 275 | 53,907.05 |
| 11/25 | 1,666 | 68701 | HOME DEPOT INC | 19.530 | 32,602.98 |
| 11/25 | 2,450 | 68939 | HEWLETT PACKARD CO | 32.990 | 80,922.50 |
| 11/25 | 1,342 | 69171 | INTERNATIONAL BUSINESS MACHINES | 75.090 | 100,870.73 |
| 11/25 | 5,684 | 69415 | INTEL CORP | 14.270 | |
| 11/25 | 2,842 | 69653 | JOHNSON & JOHNSON | 57.650 | 163,954.30 |
| 11/25 | 3,724 | 69891 | J.P. MORGAN CHASE & CO | 27.760 | 103,526.24 |
| 11/25 | 1,470 | 70129 | KRAFT FOODS INC | 27.940 | |
| 11/25 | 7,960 | 70367 | COCA COLA CO | | |
| 11/25 | 1,078 | 70605 | MCDONALDS CORP | 55 | 59,333.00 |
| 11/25 | 1,176 | 70843 | MEDTRONIC INC | 30.800 | 36,267.80 |
| 11/25 | 7,898 | 71081 | CITIGROUP INC | 56.280 | |
| 11/25 | 2,956 | 71319 | ALTRIA GROUP INC | 18.250 | 53,984.00 |
| 11/26 | 2,156 | 71557 | MERCK & CO | 25 | 53,986.00 |
| 11/25 | 7,840 | 71795 | MICROSOFT CORP | 18.100 | 142,217.00 |
| 11/26 | 7,062 | 72033 | ORACLE CORPORATION | 16.050 | 63,672.00 |
| 11/25 | 1,862 | 72271 | OCCIDENTAL PETROLEUM CORP | 44.570 | 83,345.64 |
| 11/25 | 1,568 | 72985 | PEPSICO INC | 51.800 | 81,284.40 |

CONTINUED ON PAGE 14

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

DEANMARU L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7408 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV. GROUP. LTD
300 ROBBINS LANE
SYOSSET            NY   11791

1-80081-3-0      11/30/08      14      ******6934

| DATE | AMOUNT PURCHASED | AMOUNT SOLD | TIN | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 11/25 | 6,762 | | 73223 | PFIZER INC | 15.320 | 103,865.84 | |
| 11/25 | 2,940 | | 73661 | PROCTER & GAMBLE CO | 61.980 | 182,220.60 | |
| 11/25 | 2,450 | | 73097 | ALTRIA GROUP INC | 17.860 | | |
| 11/25 | 1,686 | | 73937 | PHILIP MORRIS INTERNATIONAL | 29.850 | | |
| 11/25 | 1,176 | | 74175 | QUALCOMM INC | 46.270 | 54,460.52 | |
| 11/25 | 5,880 | | 74415 | SCHLUMBERGER LTD | 25. | | |
| 11/25 | 3,626 | | 74751 | TIME WARNER INC | 9.010 | | |
| 11/25 | 980 | | 74889 | UNITED PARCEL SVC INC | | | |
| | | | | CLASS B | | | |
| 11/25 | 1,764 | | 75127 | U S BANCORP | 23.400 | 41,847.60 | |
| 11/25 | 903 | | 75365 | UNITED TECHNOLOGIES CORP | | | |
| 11/25 | 2,842 | | 75603 | VERIZON COMMUNICATIONS | 30.570 | | |
| 11/25 | 3,822 | | 75841 | WELLS FARGO & CO NEW | 25.820 | 91,192.04 | |
| 11/25 | 2,254 | | 76079 | WAL-MART STORES INC | 51.450 | 116,058.30 | |
| 11/25 | 657 | | 76317 | EXXON MOBIL CORP | | | |
| 11/25 | 572 | | 76555 | FIDELITY SPARTAN | DIV | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/25 | | 947,991 | 77122 | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/25 | | 3,725,000 | 77306 | U S TREASURY BILL | 99.878 | | 3,720,455.50 |
| | | | | 4/16/2009 | | | |
| 11/25 | 42,963 | | 77681 | FIDELITY SPARTAN | 1 | 42,963.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | CONTINUED ON PAGE 15 | | | |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

1-80081-3-0        11/30/08        *******6934        15

| DATE | | | | AMOUNT | TRANSACTION | | |
|---|---|---|---|---|---|---|---|
| 11/26 | | 5,000 | | | CHECK | CA | 5,000.00 |
| 11/26 | | | | | FIDELITY SPARTAN | | 5,000.00 |
| 11/28 | | | 100 | 70,420 | U S TREASURY MONEY MARKET | | |
| 11/28 | | | | | BAXTER INTERNATIONAL INC | 92.640 | 50,000.00 |
| 11/28 | | | | 78108 | CHECK | CW | 50,000.00 |
| 11/28 | | | | | FIDELITY SPARTAN | DIV | |
| 11/28 | | | | | U S TREASURY MONEY MARKET | | |
| 11/28 | | 3,226 | 47,963 | 78257 | FIDELITY SPARTAN | 1 | 2.26 |
| 11/28 | | | | 7912 | U S TREASURY MONEY MARKET | 1 | 47,963.00 |
| | | | | | FIDELITY SPARTAN MONEY MARKET | | |

| | | NEW BALANCE | | MKT PRICE | |
|---|---|---|---|---|---|
| | | SECURITY POSITIONS | | | 5,110,352.95 |
| | 53,496 | AT&T INC | 28.560 | | |
| | 14,740 | ABBOTT LABORATORIES | 52.390 | | |
| | 19,650 | ANDEN INC | 96.030 | | |
| | 9,790 | APPLE INC | 92.670 | | |
| | 8,010 | BANK OF AMERICA | 16.250 | | |
| | 65,966 | BANK NEW YORK MELLON CORP | 30.000 | | |
| | 10,267 | BAXTER INTERNATIONAL INC | 52.900 | | |
| | 5,904 | BOEING CO | 42.630 | | |
| | 6,336 | CONTINUED ON PAGE 2 | | | |

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

| Account Number | Date | Page | Tax ID |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 16 | ******6934 |

| BOUGHT Received or Long | SOLD Delivered or Short | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 18,064 | | BRISTOL MYERS SQUIBB COMPANY | 20.700 | |
| 13,134 | | CVS CAREMARK CORP | 28.030 | |
| 18,954 | | CHEVRON CORP | 79.510 | |
| 53,760 | | CISCO SYSTEMS INC | 16.940 | |
| 49,868 | | CITI GROUP INC | 8.290 | |
| 18,064 | | COCA COLA CO | 46.870 | |
| 490 | | COLGATE PALMOLIVE CO | 65.070 | |
| 26,386 | | COMCAST CORP CL A | 17.340 | |
| 14,024 | | CONOCOPHILLIPS | 52.520 | |
| 11,222 | | WALT DISNEY CO | 76.440 | |
| 686 | | EXELON CORP | 56.240 | |
| 47,844 | | EXXON MOBIL CORP | 80.150 | |
| 99,620 | | GENERAL ELECTRIC CO | 17.170 | |
| 1,432 | | GOLDMAN SACHS GROUP INC | 84.920 | |
| 1,780 | | GOOGLE | 329.960 | |
| 22,514 | | HEWLETT PACKARD CO | 354.280 | |
| 217,706 | | HOME DEPOT INC | 23.110 | |
| 111,330 | | INTEL CORP | 14.010 | |
| 32,820 | | INTERNATIONAL BUSINESS MACHS | 79.050 | |
| 35,820 | | J.P. MORGAN CHASE & CO | 31.660 | |
| 226,554 | | JOHNSON & JOHNSON | 58.580 | |
| 101,328 | | MCDONALDS CORP | 58.750 | |
| 10,368 | | MEDTRONIC INC | 30.520 | |
| 10,464 | | | | |

CONTINUED ON PAGE 17

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD BEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

| | 1-B0081-3-0 | | 11/30/08 | | 17 | ******6934 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | CUSIP | SECURITY | PRICE OR SYMBOL | | | |
|---|---|---|---|---|---|---|---|---|
| | 19,580 | | | MERCK & CO | 26.720 | | | |
| | 14,716 | | | MICROSOFT CORP | 20.220 | | | |
| | 17,194 | | | OCCIDENTAL PETROLEUM CORP | 54.740 | | | |
| | 36,176 | | | ORACLE CORPORATION | 16.050 | | | |
| | 14,240 | | | PEPSICO INC | 56.700 | | | |
| | 63,042 | | | PFIZER INC | 16.430 | | | |
| | 189,062 | | | PROCTER & GAMBLE CO | 62.250 | | | |
| | 27,492 | | | PHILIP MORRIS INTERNATIONAL | 42.320 | | | |
| | 15,130 | | | QUALCOMM INC | 64.650 | | | |
| | 110,944 | | | SCHLUMBERGER LTD | 33.570 | | | |
| | 34,226 | | | US TREASURY MONEY MARKET | 1.00 | | | |
| | | | | SENTRY MONEY MARKET | 50.740 | | | |
| | 6,230 | | | 3M COMPANY | 66.930 | | | |
| | 22,050 | | | TIME WARNER INC | 9.050 | | | |
| | 16,020 | | | UNITEDHEALTH GROUP INC | 25.000 | | | |
| | 8,906 | | | OWNED PARTNERSHIP PACKAGE SVC INC | 57.000 | | | |
| | | | | CLASS B | | | | |
| | 8,900 | | | UNITED TECHNOLOGIES CORP | 48.530 | | | |
| | 25,868 | | | VERIZON COMMUNICATIONS | 32.650 | | | |
| | 20,470 | | | WAL-MART STORES INC | 55.800 | | | |
| | 30,750 | | | WELLS FARGO & CO NEW | 28.890 | | | |
| | 1,372 | | | METU | 36.010 | | | |
| | | | | MARKET VALUE OF SECURITIES | | | | |
| | 27,818,862.86 | | | LONG | | | | |
| | | | SHORT | | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

(reproduction/scan artifact at top of page)

# BERNARD L. MADOFF
### INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

| | | |
|---|---|---|
| 1-B0081-4-0 | 11/30/08 | 1 |
| | | *****6934 |

| DATE | BOUGHT RECEIVED OR IN | SOLD DELIVERED OR OUT | DESCRIPTION | | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| 11/06 | | | BALANCE FORWARD | | | 1,428,341.00 |
| 11/06 | 312 | | 19108 S & P 100 INDEX NOVEMBER 470 CALL | 20.500 | 639,912.00 | |
| 11/07 | 216 | | 31629 S & P 100 INDEX NOVEMBER 460 PUT | 13.800 | 298,296.00 | |
| 11/10 | 264 | | 44089 S & P 100 INDEX NOVEMBER 475 PUT | 16.800 | 443,784.00 | |
| 11/19 | 792 | | 303903 S & P 100 INDEX DECEMBER 420 PUT | 30 | 2,376,792.00 | |
| 11/19 | 528 | | 30779 S & P 100 INDEX NOVEMBER 485 CALL | .900 | 24,024.00 | |
| 11/19 | 264 | | 31255 S & P 100 INDEX NOVEMBER 475 PUT | .59 | | 1,557,336.00 |

CONTINUED ON PAGE 2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# BERNARD L. MADOFF
## INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1-B0081-4-0 | | | 11/30/08 | | | *****6934 | | 2 |

| DATE | | | | DESCRIPTION | | AMOUNT | | |
|---|---|---|---|---|---|---|---|---|
| 11/25 | 98 | | | S & P 100 INDEX | 34 | | | 333,102.00 |
| 11/25 | 98 | 72033 | | S & P 100 INDEX DECEMBER 380 CALL | | | | |
| | | | | S & P 100 INDEX DECEMBER 570 PUT | | | | |
| | | | | NEW BALANCE | | | | |
| | | | | SECURITY POSITIONS | WHT PRICE | | | |
| | 792 | 792 | | S & P 100 INDEX DECEMBER 380 CALL | 23.300 | | | |
| | 98 | 98 | | S & P 100 INDEX DECEMBER 380 CALL | .61 | | | |
| | | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | | |
| | | | | S & P 100 INDEX DECEMBER 570 PUT | 51.100 | | | |
| | | | | MARKET VALUE OF SECURITIES — LONG | | | | 5,118,353.00 |
| | | | | — SHORT | | | | |

**Schedule K-1**
**(Form 1065)**

For calendar year 2007, or tax
year beginning _____
ending _____

# 2007

| Final K-1 | Amended K-1 | OMB No. 1545-0099 |

Department of the Treasury
Internal Revenue Service

**Part III  Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

**Partner's Share of Income, Deductions,**
**Credits, etc.**
▶ **See separate instructions.**

| | |
|---|---|
| **1** Ordinary business income (loss)  0. | **15** Credits |
| **2** Net rental real estate income (loss) | |
| | **16** Foreign transactions |
| **3** Other net rental income (loss) | |

## Part I    Information About the Partnership

**A**  Partnership's employer identification number
**11-2796934**

**B**  Partnership's name, address, city, state, and ZIP code

**BULL MARKET FUND**
**300 ROBBINS LANE**
**SYOSSET, NY 11791**

**C**  IRS Center where partnership filed return
**OGDEN, UT**

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II    Information About the Partner

**E**  Partner's identifying number
**11-3306060**

**F**  Partner's name, address, city, state, and ZIP code

**BDG 115 BROADHOLLOW ROAD**
**300 ROBBINS LANE**
**SYOSSET, NY 11791**

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I**  What type of entity is this partner?  **PARTNERSHIP**

**J**  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

**K**  Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

**L**  Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 78,221. |
| Capital contributed during the year | $ | 80,750. |
| Current year increase (decrease) | $ | 11,158. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 170,129. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

| | |
|---|---|
| **4** Guaranteed payments | |
| **5** Interest income  1,594. | |
| **6a** Ordinary dividends  886. | **17** Alternative min tax (AMT) items |
| **6b** Qualified dividends | |
| **7** Royalties | |
| **8** Net short-term capital gain (loss)  8,355. | **18** Tax-exempt income and nondeductible expenses |
| **9a** Net long-term capital gain (loss) | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions |
| **9c** Unrecaptured sec 1250 gain | |
| **10** Net section 1231 gain (loss) | **20** Other information |
| **11** Other income (loss) C  323. | A  2,480. W*  1,594. |
| **12** Section 179 deduction | |
| **13** Other deductions | |
| **14** Self-employment earnings (loss) | |

***See attached statement for additional information.**

*For IRS Use Only*

JWA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**

Schedule K-1 (Form 1065) 2007

711261
12-31-07

# MEMORANDUM

| | |
|---|---|
| **TO:** | **BDG 115 Broadhollow, L.P.** |
| **FROM:** | Harvey Cohen |
| **RE:** | Bull Market Fund |
| **DATE:** | December 31, 2008 |

---

Please find below your balance in the Bull Market Fund as of December 10, 2008. This includes your November 30, 2008 balance plus any additions, if applicable, made subsequent to November 30, 2008 and sent to Bernard L. Madoff Investment Securities, LLC.

Account Balance as of December 10, 2008:  $245,103

Please call me if I can be of further service.

100169E062696

EXHIBIT A

AMENDED AND RESTATED
LIMITED PARTNERSHIP AGREEMENT
OF
BDG 115 BROADHOLLOW, L.P.

AGREEMENT made as of _____ August 14 _____, 1998, by and between
BDG 115 Broadhollow, Inc., a New York corporation having its
principal place of business at 6800 Jericho Turnpike, Syosset,
New York 11791 ("GP CORP") and the persons executing this
document on the signature pages hereof as limited partners (each
a "Limited Partner" and collectively the "Limited Partners").

W I T N E S S E T H :

WHEREAS, GP CORP, Jonathan E. Cohen ("JEC"), and B-4
Partnership, a New York Partnership ("B-4") formed a limited
partnership styled BDG 115 Broadhollow, L.P. (hereafter the
"Partnership") on certain terms and conditions;

WHEREAS, the Limited Partners other than JEC and B-4 desire
to be admitted to the Partnership and GP CORP, JEC and B-4 desire
that the Limited Partners be admitted to the Partnership; and

WHEREAS, GP CORP and the Limited Partners desire to amend
and restate the Agreement of Limited Partnership of the
Partnership on the terms and conditions hereinafter set forth.

695

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto hereby agree to become partners, to continue the Partnership under the New York Revised Limited Partnership Act, Article 8-A of the Partnership Law of the State of New York (the "Law") and to amend and restate the Agreement of Limited Partnership upon the following terms and conditions:

## ARTICLE 1

### PARTNERS, TERM, NAME, PURPOSE AND PLACE OF BUSINESS

1.1  <u>Continuation of Partnership</u>.  The parties signatory hereto agree to continue the Partnership under the Law, as such Law may from time to time be amended, except to the extent any provision of the Law is inconsistent with any provision herein. The Partnership shall be a partnership only for the proposes specified in Section 1.3 and shall not create or continue a partnership between the parties with respect to any other activities whatsoever.

1.2  <u>Name</u>.  The name of the Partnership shall be BDG 115 BROADHOLLOW, L.P.  The business of the Partnership shall be conducted solely under such name and title to all assets of the Partnership shall be held in such name; provided, however, that if the General Partner deems it necessary to do so, it may cause title to its assets to be held by a nominee of the Partnership for such period of time as the General Partner deems necessary in the exercise of his discretion.

2

100169E062696

1.3   <u>Purposes of the Partnership</u>.

  1.3.1   <u>The Property of the Partnership</u>.  Prior to the execution of this Agreement, the Partnership entered into a ninety-nine (99) year ground lease for the real property commonly known as 115 and 121 Broadhollow Road, Melville, New York (hereinafter, the "Real Estate").

  1.3.2   <u>Purposes</u>.  The purposes of the Partnership are limited as follows:

   (a)   To acquire, improve, mortgage, lease and operate the (i) Real Estate and (ii) any other asset, including other parcels of real estate incident to the Real Estate, hereafter acquired by the Partnership ("Additional Assets") pursuant to and in accordance with this Agreement;

   (b)   To sell, exchange or otherwise convey, assign, transfer or dispose of the Real Estate and the Additional Assets, or any part thereof or interest therein (collectively, the "Property"), when and to the extent expressly permitted by this Agreement and not prohibited by other applicable agreement; and

   (c)   To engage in such other activities as are reasonably incident to the foregoing.

1.4   <u>Partners</u>.

  1.4.1   Unless and until a substitute or additional general partner is admitted to the Partnership in accordance with Article 7 or 8, the general partner of the Partnership shall be GP CORP (the holder of the general partnership interest in the

3

100169E062696

Partnership is sometimes referred to herein as the "General Partner").

1.4.2   Unless and until one or more substitute or additional limited partners are admitted to the Partnership in accordance with Article 7, the Class A Limited Partners of the Partnership shall be those persons set forth on Exhibit A attached hereto designated as a Class A Limited Partner (the holder(s) of Class A Limited Partnership interests in the Partnership are sometimes referred to herein individually as a "Class A Limited Partner" or collectively as the "Class A Limited Partners").

1.4.3   Unless and until one or more substitute or additional limited partners are admitted to the Partnership in accordance with Article 7, the Class B Limited Partners of the Partnership shall be those persons set forth on Exhibit A attached hereto designated as a Class B Limited Partner (the holder(s) of Class B Limited Partnership interests in the Partnership are sometimes referred to herein individually as a "Class B Limited Partner" or collectively as the "Class B Limited Partners").

1.4.4   The General Partner, the Class A Limited Partners and the Class B Limited Partners are sometimes referred to herein individually as a "Partner" or collectively as the "Partners".  The Class A Limited Partners and the Class B Limited Partners are sometimes referred to herein individually as a "Limited Partner" or collectively as the "Limited Partners".

4

100169E062696

1.4.5  For purposes of this Agreement, the term "Affiliate" shall mean any person or entity (a "Person") who directly or indirectly controls, is controlled by or is under common control with a Partner or other Person, it being agreed that a Partner or other Person shall be deemed to control any entity in which such Partner or other Person is director, officer or general partner or in which such Partner or other Person is the beneficial owner of 50% or more of (a) in the case of a corporation, the total combined voting power of all classes of stock of such corporation, or the capital, profits or beneficial interest in such voting stock of such corporation, or (b) in the case of a partnership, association, trust or other entity, the capital, profits or beneficial interest in such partnership, association, trust or other entity.

1.5  <u>Partnership Filings</u>.  The General Partner shall execute and file all documents required by the Law to be filed in connection with the continued existence of the Partnership and to preserve and maintain the limited liability of the Limited Partners.  The Partnership shall also qualify to do business as a foreign limited partnership in each state where such qualification is required.

1.6  <u>Place of Business</u>.  The principal place of business of the Partnership shall be at 6800 Jericho Turnpike, Syosset, New York 11791, or at such other location as may be selected by the General Partner from time to time.  The General Partner shall

5

100169E062696

give notice to the Limited Partners of any change in the location of the principal place of business of the Partnership.

1.7  Term.  The Partnership was formed on November 10, 1995 by the filing of the Certificate of Limited Partnership for the Partnership (the "Certificate") in the office of the Secretary of State of New York in accordance with the Law, and shall continue until dissolved and liquidated pursuant to the provisions of Article 8 hereof.

1.8  Registered Agent.  The name and address of the registered agent and the office of the Partnership in the State of New York upon whom process may be served is BDG 115 Broadhollow, Inc., c/o Blumenfeld Development Group, Ltd., 6800 Jericho Turnpike, Syosset, New York  11791.

1.9  Liability of the Partners.

1.9.1  The General Partner shall have unlimited liability for the satisfaction and discharge of all debts, liabilities, contracts and other obligations of the Partnership except as provided in the documents creating such obligations; provided that the General Partner shall not be liable for the return of any portion of the Capital Contribution (as defined below) of any Limited Partner, the return of which shall be made solely from Partnership assets.

1.9.2  Except as required by law, including the Law, the Limited Partners shall not be liable for the debts, liabilities, contracts or other obligations of the Partnership. The Limited Partners shall be liable only to make their Capital

6

100169E062696

Contribution as herein specifically provided and shall not be required, after their Capital Contribution shall have been paid, to make any further capital contribution to the Partnership, or to lend any funds to the Partnership or to repay to the Partnership, any Partner or any creditor of the Partnership any amount including any negative balance in such Limited Partners' Capital Account.

## ARTICLE 2

### CAPITAL CONTRIBUTIONS AND PERCENTAGE INTERESTS

2.1   Interests of Partners.

2.1.1   Subject to Article 7 hereof, the respective interests of the Partners ("Percentage Interests") in the Partnership shall be as set forth on Exhibit A attached hereto opposite each Partner's name.

2.1.2   If the Percentage Interests of any Partners are changed pursuant to the terms of this Agreement during any calendar year, then the amount of all items to be credited, charged, allocated or distributed to such Partners for such entire calendar year in accordance with Percentage Interests in the Partnership shall be apportioned to the portion of such calendar year which precedes the date of such change and to the portion of such calendar year which occurs on and after the date of such change, in proportion to the number of days in each such portion. The amounts of the items so allocated to each such portion shall be credited, charged, allocated or distributed to

7

100169E062696

such Partners in proportion to their Percentage Interests in the Partnership during each such portion of the calendar year in question.

2.1.3  In no event shall the General Partner's Percentage Interest as general partner be reduced below 1.00% unless the Partnership shall have first obtained an opinion of counsel expert in Federal income tax matters to the effect that such reduction will not cause adverse income tax consequences to the Partnership or the Limited Partners thereof.

2.2  <u>Capital Contribution.</u>

2.2.1  The Partners have each contributed or are deemed to have contributed to the capital of the Partnership concurrently with or prior to the execution of this Agreement the amounts of cash or the fair market value of property (net of liabilities secured thereby) set forth on Exhibit A to this Agreement ("Capital Contributions").  For purposes of this Agreement, a partner's "Unreturned Capital Contribution" means a Partner's Capital Contribution reduced by all amounts distributed to such Partner pursuant to Section 4.2.3.  All Capital Contributions set forth in Exhibit A hereto have been or will be made in cash.

2.2.2  No Partner may withdraw any capital from the Partnership without the consent of all the other Partners.

2.2.3  Except as otherwise provided herein, no Partner shall have the right to demand or receive property, other than cash, in return for a capital contribution or have priority over

8

100169E062696

another Partner, either as to the return of capital contributions or as to profits, losses or distributions, or as to compensation by way of income.

2.2.4  Except as set forth in Section 2.6, no Partner shall be entitled to interest of any kind on its Capital Contribution.

2.2.5  Except with the express written consent of all of the Partners or as provided in Section 8.3.3, no Partner shall be required to contribute any additional cash or property to the capital of the Partnership.

2.3  <u>Capital Accounts</u>.  A capital account ("Capital Account") has and shall be maintained for each Partner on the books of the Partnership in accordance with the provisions of Treasury Regulation section 1.704-1(b)(2)(iv) as such regulation is in effect on the date hereof.  Without limiting the foregoing, the following provisions shall apply.

2.3.1  The Capital Accounts of the Partners as of the date hereof are set forth on Exhibit A.

2.3.2  Subject to the last sentence of Section 2.3.4 below, the Capital Account of each Partner shall be further credited with (i) an amount equal to such Partner's Capital Contributions after the date hereof; and (ii) such Partner's share of the Partnership's Net Profit allocated to such Partner in accordance with Article 5 hereof, but for this purpose including income and gain exempt from tax.

9

100169E062696

2.3.3   Subject to the last sentence of Section 2.3.4,
below, the Capital Account of each Partner shall be further
debited by (i) the amount of cash distributions made to such
Partner and the fair market value of property distributed to the
Partner (net of liabilities secured by such property), and (ii)
such Partner's share of the Partnership's Net Loss allocated to
such Partner pursuant to Article 5 hereof, and of expenditures
which are permitted to be neither capitalized nor deducted for
tax purposes (including for this purpose losses or expenses which
may not be deducted for tax purposes pursuant to either Section
267(a)(1), Section 709 or Section 707(b) of the Internal Revenue
Code of 1986, as now or hereafter amended (the "Code")).

2.3.4   Upon the transfer of an interest in the
Partnership, the Capital Account of the transferor Partner (as
adjusted, if at all, as required by this Section 2.3.4)
attributable to the transferred interest will be carried over to
the transferee Partner.   The Capital Account will not be adjusted
to reflect any adjustment under Section 743 of the Code.   If (i)
such transfer causes a termination of the Partnership for tax
purposes within the meaning of Section 708(b)(1)(B) of the Code,
or (ii) upon (1) the liquidation of the Partnership, (2) the
liquidation of a Partner's interest in the Partnership, (3) the
distribution of money or property to a Partner, or (4) the
contribution of money or property to the Partnership by a new or
existing Partner as consideration for an interest in the
Partnership, adjustments shall be made to the Partners' Capital

10                          100169E062696

Account in the following manner.   All Assets and Additional Assets of the Partnership which are not sold in connection with such event shall be valued at their then fair market value.   Such fair market value shall be used to determine both the amount of gain or loss which would have been recognized by the Partnership if the property had been sold for its fair market value (subject to any liability secured by the property) at such time, and the amount of Net Cash Flow which would have been distributable by the Partnership pursuant to Article 4 if the property had been sold at such time for said fair market value (less the amount of any liability secured by the property).   The Capital Accounts of the Partners shall be adjusted to reflect the allocation of such hypothetical gain or loss (in accordance with Article 5).   The Capital Accounts of the Partners (or of a transferee of a Partner) shall thereafter be adjusted to reflect the Partner's share of "book items" rather than tax items in accordance with Treasury Regulation Sections 1.704-1(b)(2)(iv)(g) and 1.704(b)(4)(i) and subsequent allocations of income, gain, loss and deductions shall be made as necessary so as to take account of the variation between the adjusted tax basis and the fair market value of such property in accordance with Section 704 of the Code.

2.3.5   For purposes of this Agreement, (A) the term "liquidation of the Partnership" shall mean (1) a termination of the Partnership effected in accordance with Article 8 hereof, which shall be deemed to occur, for purposes of this Section

11                         100169E062696

2.3.5, on the date upon which the Partnership ceases to be a going concern and is continued in existence solely to wind-up its affairs, or (2) a termination of the Partnership pursuant to Section 708(b)(1) of the Code, and (B) the term "liquidation of a Partner's interest in the Partnership" shall mean the termination of the Partner's entire interest in the Partnership effected by a distribution, or a series of distributions, by the Partnership to the Partner.

2.3.6  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Sections 1.704-1(b) and 1.704-1T(b)(5) of the Treasury Regulations (the "Regulations"), and shall be interpreted and applied in a manner consistent with such Regulations.  In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Regulations, the General Partner may make such modification after notifying all other Partners of the intent to so modify the Capital Accounts and provided further that no Partner objects in writing to such modification within thirty (30) days of such notice.

2.4  Loans to the Partnership.  The General Partner, and if requested to do so by the General Partner, any Limited Partner or an Affiliate thereof, singly, or in conjunction with others, including Partners, may lend money to the Partnership if in the opinion of the General Partner funds are (a) necessary for the

12                                    100169E062696

business of the Partnership or (b) are desirable to maintain or
effect an increase in distributable Net Cash Flow to the
Partners, but only if and to the extent funds are not otherwise
available therefor from a lending institution on commercially
reasonable terms, it being hereby agreed that the requirement of
a personal guarantee by one or more Partners or Affiliates
thereof is not a "commercially reasonable term" (a loan meeting
the criteria set forth in this sentence, is hereinafter referred
to as a "Partner Loan").  If a Partner Loan is made, it shall
bear interest at the Interest Rate (as hereinafter defined).  For
purposes of this Agreement, "Interest Rate" shall mean the
fluctuating rate per annum equal  to two percent (2%) plus the
rate announced from time to time by Chase Manhattan Bank as its
"prime rate".  A Partner Loan shall be a limited obligation of
the Partnership payable as to principal and interest and any
other amounts due under such Partner Loan solely from Net Cash
Flow.  Interest on a Partner Loan at the Interest Rate shall be
payable only from and to the extent of Net Cash Flow on the first
day of the first month following the date of the making of such
Partner Loan and on the first day of each month thereafter.  To
the extent that Net Cash Flow for any such immediately preceding
calendar month shall be insufficient to pay the interest due
thereon for such month, the insufficiency shall accrue, without
interest, and be payable out of Net Cash Flow for the next
succeeding calendar month(s), until such payment of interest
shall have been paid in full.  In addition to the interest

13                        100169E062696

payments required to be made under a Partner Loan, an
amortization payment in reduction of the aggregate principal
balance of the Partner Loan shall be payable in an amount equal
to the Net Cash Flow for the preceding calendar month, as reduced
by interest payments paid within such preceding calendar month,
as heretofore provided.  Notwithstanding the foregoing, if for
any calendar month it is determined that the amortization
payments made during the immediately preceding calendar month
exceed the aggregate Net Cash Flow for such calendar month, the
Partnership shall be entitled to receive a dollar for dollar
credit, equal to the amount of such excess, which credit shall be
applied in reduction of the interest and amortization obligations
of the Partnership, as applied by the payee of the Partner Loan
in its sole discretion, for the next succeeding calendar
month(s).

2.5  <u>General Partner's Liability for Capital</u>.  The General
Partner shall have no personal liability for the return of any
capital contributions to the Limited Partners or to compensate a
negative balance in the Capital Account of any Limited Partner.

2.6  <u>Preferred Return</u>.  Each Class A Limited Partner shall
be entitled each calendar year to a non-cumulative preferred
return payable solely out of Net Cash Flow for such calendar
year, if any, equal to the product of (i) eleven (11%) percent,
and (ii) its Unreturned Capital Contribution (as defined in
Section 2.2.1) for such calendar year (the "Preferred Return").
In the event that the Unreturned Capital Contribution of a

14                    100169E062696

Limited Partner changes during a calendar year, the Preferred Return will be computed on a daily basis, without compounding.

2.7  Use of Proceeds.

2.7.1     Edward Blumenfeld has loaned $312,500 to the Partnership.  The proceeds of such loan have been utilized by the Partnership for construction costs and payment of real estate taxes.  The loan has been bearing interest since May, 1996 at the rate of two (2%) percent over the prime rate and will be repaid in full from the capital contributions of the Class A Limited Partners.

2.7.2     The Capital Contributions of the Class A Limited Partners referenced in Exhibit A hereto have been utilized by the Partnership as follows:

| Uses | Amount |
|------|--------|
| Reimbursement to Edward Blumenfeld for a loan made to the Partnership which has been bearing interest at a rate of two (2%) percent over the prime rate | $ 330,000.00[1] |
| Legal fees and organizational costs. | $ 50,000.00[2] |
| Working Capital | $1,120,000.00 |
| TOTAL | $1,500,000.00 |

---

[1]     Any funds not required for payment of principal and interest on the loan will be added to Working Capital.

[2]     Any funds not required for legal and organizational costs will be added to Working Capital.

15                          100169E062696

# ARTICLE 3

## MANAGEMENT

3.1  Management Powers of the General Partner

3.1.1  Except as otherwise provided herein, including, without limitation, Section 3.2 hereof, management, operation and control of the Partnership and its business and affairs shall vest solely in the General Partner.  In such capacity, the General Partner shall have the power on behalf of and in the name of the Partnership to carry out any and all of the purposes of the Partnership set forth in Section 1.3 and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto on behalf of the Partnership.  Without limiting the generality of the foregoing, the General Partner is hereby authorized, empowered, obligated and responsible on behalf of the Partnership:

(i)        to carry on the business referred to in Section 1.3 hereof and to execute and deliver in the Partnership name any and all instruments necessary in connection therewith;

(ii)        to employ, engage or consult such persons, firms or corporations as it shall deem advisable for the operation and management of the Partnership business including, without limitation, brokers, accountants, managing agents, attorneys or specialists in any field of endeavor whatsoever,

16

100169E062696

including any Person (including a Partner or an Affiliate or a Partner);

      (iii)    to deposit the funds of the Partnership in the Partnership name in any bank or trust company and to entrust to such bank or trust company the securities, monies, documents and papers belonging to or relating to the Partnership;

      (iv)    to own, possess, renovate, improve, sell, transfer, mortgage, pledge, lease or otherwise deal with, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to, all or any portion of the Property;

      (v)    to borrow monies from any party, issue evidences of indebtedness, mortgages or pledges in connection therewith, increase the amount of, modify, amend or change the terms of, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment thereof and of the interest thereon by mortgage upon or by pledge, conveyance or assignment in trust of the whole or any part of the Property whether at the time owned or thereafter acquired, and to sell, pledge or otherwise dispose of such bonds or other obligations of the Partnership;

      (vi)    to pay all expenses and fees incurred in connection with the Partnership and its business;

17

100169E062696

(vii)      to sue on, defend or compromise any and all claims or liabilities in favor of or against the Partnership, and submit any or all such claims or liabilities to arbitration;

(viii)     to file applications, communicate and otherwise deal with any and all governmental agencies having jurisdiction over, or in any way affecting, the Property or any aspect of the Partnership's business;

(ix)      to make or revoke any election permitted to the Partnership by any taxing authority;

(x)       to maintain such insurance coverage for public liability, fire and casualty, and any and all other insurance, necessary or appropriate to the business of the Partnership;

(xi)      to determine whether or not to apply any insurance proceeds for any property to the restoration of Partnership property or to distribute the same;

(xii)      to purchase, lease, rent, or otherwise acquire or obtain the right to use machinery, equipment, tools, materials, and all other kinds and types of personal property that may in any way be deemed necessary, convenient, or advisable in connection with carrying on the business of the Partnership;

(xiii)     to guarantee the payment of money or the performance of any contract or obligation of any person, firm, or corporation, which person, firm or corporation is acting on behalf of and with the full authority of the Partnership; and

18                              100169E062696

(xiv)      to enter into, make and perform all contracts, agreements and other undertakings, to execute all other instruments of any kind or character and to perform any and all other acts that the General Partner determines to be necessary, advisable or incidental to the carrying out of the foregoing objects and purposes.

3.1.2  The General Partner shall use ordinary care and reasonable diligence in carrying out the affairs of the Partnership.  The General Partner shall not be liable to the other Partners for any mistake of judgment, any action taken in good faith on behalf of the Partnership or for any loss due to the negligence, fraud or willful misconduct of any employee, broker or agent of the Partnership who was selected, engaged or employed by the General Partner, provided that such employee, broker or agent was selected, engaged or retained by the General Partner with reasonable care.  The General Partner may consult with legal counsel selected by it on matters relating to the Partnership, and any action taken or omitted to be taken by it in good faith in reliance and in accordance with the opinion or advice of such counsel shall be full protection and justification to it with respect to the action taken or omitted to be taken.

3.1.3  The General Partner shall not be obligated to devote substantially all of its time and effort to the Partnership and its affairs.

3.2  <u>Restrictions on Powers of the General Partner</u>:

The General Partner shall have no authority to:

19                        100169E062696

(a)   alter the purposes of the Partnership as set forth in Section 1.3 above;

(b)   confess a judgment against the Partnership;

(c)   possess any Partnership property or assign the rights of the Partnership in specific Partnership property for other than a Partnership purpose;

(d)   borrow money from the Partnership; or

(e)   sell or otherwise dispose of the Property without the prior consent of not less than fifty (50%) percent of the Percentage Interests of the Class A Limited Partners.  If a Class A Limited Partner does not notify the General Partner in writing of its approval or disapproval of any proposed sale within ten business days after its receipt of a written request for approval, the General Partner shall again request the approval of the Class A Limited Partner in accordance with the notice provisions set forth in Section 11.5 of this Agreement which notice will make specific reference to this Section 3.2(e).  If the Class A Limited Partner then does not notify the General Partner of its disapproval of the transaction or action within five business days following such request, the matter shall conclusively be deemed approved by such Class A Limited Partner. Any purchaser of the Property and any title insurer insuring the title of the purchaser may rely on an affidavit furnished by a principal officer of the General Partner with regard to the attainment of the required percentage of approval and, with regard to such approval, the furnishing of such affidavit shall

20

100159E062696

be conclusive as to its contents as between such purchaser and
its title insurer and each and all of the Class A Limited
Partners at the time.

3.3    <u>The Limited Partners Have No Management Powers</u>.

3.3.1  The Limited Partners shall have no voice or
participation in the management of the Partnership business, and
no power to (i) bind the Partnership or to act on behalf of the
Partnership in any manner whatsoever, except as specifically
authorized by Section 3.1(b) of this Agreement, or (ii) perform
any actions prohibited to limited partners under the Law or the
laws of any jurisdiction, including New York, in which the
Partnership conducts business.

3.4    <u>Compensation of the General Partner; Reimbursement for
Expenses</u>.

3.4.1  The General Partner shall not be entitled to
compensation for acting as general partner of the Partnership.

3.4.2  All costs and expenses actually incurred in
connection with the organization of the Partnership and the
ongoing operation or management of the business of the
Partnership shall be borne by the Partnership.  The General
Partner shall be entitled to prompt reimbursement for all out-of-
pocket costs and expenses incurred by the General Partner or its
agents, attorneys or advisors in connection with such
organization, operation and management.

3.4.3  The General Partner is hereby authorized to hire
Blumenfeld Development Group, Ltd. ("BDG") or an affiliated

100169E062696

entity thereof, either of which an Affiliate of the General
Partner, as managing agent of the Property and hereby notifies
the other Partners that it has done so.  In consideration for
managing the Property, BDG or such affiliated entity shall be
paid a monthly management fee equal to three (3%) percent of the
Property's collected gross monthly receipts derived from the Real
Estate and in addition, a pro rata portion of the salaries of
persons employed by BDG or an affiliated entity for their on site
management, leasing and construction activities.

3.5  Indemnification.  The General Partner and its officers,
directors, employees, shareholders, agents and Affiliates shall
be indemnified and held harmless by the Partnership (but not by
any Limited Partner except to the extent of its capital
contributions) to the fullest extent permitted by law from and
against any and all claims, demands, liabilities, costs, damages
and causes of action of any nature whatsoever arising out of or
in connection with the transactions contemplated by this
Agreement or the General Partner's management of the
Partnership's affairs; provided, however, that such
indemnification shall not apply with respect to liabilities
arising out of those acts for which the General Partner may be
held liable pursuant to Section 3.1.2 of this Agreement.  The
indemnification authorized by this Section shall include, without
limitation, payment of (i) reasonable attorneys' fees or other
expenses incurred in connection with settlement or in defense of
any legal proceeding and (ii) the removal of any liens affecting

22                        100169E062696

the property of the indemnitee. Such attorneys' fees and expenses shall be paid by the Partnership as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the indemnified Person to repay such amounts if it is ultimately determined that such Person is not entitled to indemnification with respect thereto. The indemnification rights contained in this Section shall be cumulative of, and in addition to, any and all rights remedies and recourse to which the General Partner, its officers, directors, employees, shareholders, agents and Affiliates may be entitled, whether pursuant to the provisions of this Agreement, at law or in equity. Indemnification hereunder shall be made from assets of the Partnership and no Partner shall be personally liable to any indemnitee.

3.6  <u>General Partner May Engage in Other Activities</u>. The General Partner and its officers, directors, employees, shareholders, partners and Affiliates shall have the right to engage in any other business (including, but not limited to, acting as a partner in any other partnership formed for purposes similar to the purposes of the Partnership) and to compete directly or indirectly, with the business of the Partnership, and neither the Partnership nor any Partners shall have any rights or claims as a result of such activities.

3.7  <u>Certain Tax Matters</u>.

3.7.1  The General Partner shall engage an accountant to prepare at the expense of the Partnership all tax returns and

23                                          100169E062696

statements, if any which must be filed by or on behalf of the Partnership.

3.7.2  The General Partner shall be the "tax matters partner" of the Partnership as defined in Section 6231(a)(7) of the Code, shall perform all duties imposed by Sections 6222 through 6232 of the Code and shall have the power to take all actions contemplated by such Sections.

3.7.3  The General Partner shall give prompt notice to the Limited Partners upon receipt of advise that the Internal Revenue Service intends to examine Partnership income tax returns for any calendar years.

3.7.4  The Limited Partners shall furnish the General Partner with such information as the General Partner may reasonably request to permit it to provide the Internal Revenue Service with sufficient information to allow proper notice to the parties in accordance with Section 6223 of the Code.

3.7.5  No Partner shall file, pursuant to Section 6227 of the Code, a request for an administrative adjustment of Partnership items for any Partnership taxable year without first notifying the other Partners.  If the other Partners agree with the requested adjustment, the General Partner shall file the request for administrative adjustment on behalf of the Partnership.  If the Partners do not reach agreement within thirty (30) days or within the period required to timely file the request for administrative adjustment, if shorter, any one may file a request for administrative adjustment on its own behalf.

24                          100169E062696

If, under Section 6227 of the Code, a request for an administrative adjustment must be filed on behalf of the Partnership, the General Partner shall also file such a request on behalf of the Partnership under the circumstances set forth in the preceding sentence.

3.7.6  If any Partner intends to file a petition under Section 6226 or 6228 of the Code with respect to any Partnership item or other tax matters involving the Partnership, the party so intending shall notify the other Partners of such intention and the nature of the contemplated proceeding.  Such notice shall be given within a reasonable time to allow the other Partners to participate in the choosing of the forum in which such petition will be filed.  If the Partners do not agree on the appropriate forum, the petition shall be filed in the United States Tax Court.  If any Partner intends to seek review of any court decision rendered as a result of the proceeding instituted under the preceding part of this Section, such party shall notify the other Partners of such intended action.

3.7.7  The General Partner shall not bind a Limited Partner to a settlement agreement without obtaining the written concurrence of such Limited Partner.  If any Partner enters into a settlement agreement with the Secretary of the Treasury with respect to any Partnership items, as defined by Section 6231(a)(3) of the Code, it shall notify the other Partners of such settlement agreement and its terms within thirty (30) days from the date of settlement.

25                                100169E062696

3.7.8   The provisions of this Section 3.7 shall survive the termination of the Partnership or the termination of any party's interest in the Partnership.

3.7.9   The General Partner agrees to use its good faith and reasonable efforts to meet all requirements of the Code and regulations, rulings and other procedures of the Internal Revenue Service to ensure that the Partnership will be classified for Federal Income tax purposes as a partnership and not as an association taxable as a corporation.

## ARTICLE 4

## CASH DISTRIBUTIONS

4.1   Net Cash Flow.  Subject to the provisions of Sections 4.3 and 8.3, the General Partner shall distribute or cause to be distributed to the Partners, not less than annually, in accordance with Section 4.2, the excess, if any ("Net Cash Flow"), of:

4.1.1   The aggregate amount of all income and receipts of all kinds received by the Partnership from all sources, including (a) rentals, (b) interest, (c) a sale, exchange or other disposition, or financing or refinancing, of all or any portion of the Property or any interest therein, and (d) a recovery for condemnation or casualty loss of any portion of the Property, all as determined on a cash basis, over

4.1.2   All cash disbursements of the Partnership including (a) the fee described in Section 3.4.3; (b) the reimbursements described in Section 3.4.2; (c) management fees,

26                        100169E062696

leasing fees, brokerage commissions, and legal fees incurred in connection with the Partnership business; (d) taxes; (e) all costs or expenses paid in connection with any sale or refinancing, including, without limitation, brokerage commissions, commitment fees, standby fees, mortgage taxes or charges, title insurance premiums, counsel fees, collection costs, recording charges and appraisal fees; (f) amounts used or to be used in connection with repairs, alterations, additions, improvements or replacements, made or to be made, including, without limitation, any repair, improvement, replacement or addition required to be made as a result of any casualty or as a condition of sale, condemnation or refinancing; (g) debt service and/or required principal payments on any loan to the Partnership other than a Partner Loan; and amounts reserved in the General Partner's discretion.  If the General Partner shall determine that any reserve described above is no longer necessary, funds so reserved shall be distributed to the Partners in the same proportion which would have been determined if such funds had been distributed pursuant to Section 4.2 at the time of placement in the reserve.

4.2  Allocation of Net Cash Flow.  Net Cash Flow distributable in accordance with Section 4.1 shall be distributed in the following order of priority and in the following proportions:

27

100169E062696

4.2.1   First, if and to the extent there then exists a Partner Loan, to pay interest on such Partner Loan to the extent provided in Section 2.4 of this Agreement;

4.2.2   Next, if and to the extent there then exists a Partner Loan, to pay outstanding principal on any Partner Loan to the extent provided in Section 2.4 of this Agreement;

4.2.3   Next, if and to the extent the distributable Net Cash Flow for a period resulted from a sale, exchange or other disposition of any item of Property, or from the financing or refinancing of any item of Property, to those Partners having Unreturned Capital Contributions, in proportion to such Unreturned Capital Contributions, an amount up to but not exceeding the amount of such Unreturned Capital Contributions;

4.2.4   Next, to the Class A Limited Partners, the Preferred Return determined pursuant to Section 2.6;

4.2.5   Lastly, to the Partners pro rata in accordance with their respective Percentage Interests.

4.3   Limitation on Distributions.

4.3.1   In order to comply with Section 1446 of the Code, and the regulations, revenue rulings, revenue procedures and administrative announcements promulgated thereunder ("Section 1446"), the Partnership shall withhold an amount otherwise distributable to a Partner hereunder, and shall apply the amount so withheld as required by Section 1446, unless the Partner shall have delivered to the Partnership the certification annexed hereto as Exhibit B unaltered and dated and executed exactly as

28                              100169E062696

required thereby.  Notwithstanding the preceding sentence, a

certification properly delivered to the Partnership shall not be

effective to prevent withholding if the Partnership shall have

received the certification more than three years preceding the

date of a distribution or if the Partnership has actual knowledge

that the Partner is not a "United States person" as that term is

defined in Section 7701(a)(30) of the Code.

    4.3.2  Notwithstanding Section 4.2, Net Cash Flow from

a transaction which is a part of the liquidation of the

Partnership in accordance with Section 8.3, together with other

funds remaining to be distributed at such time shall be

distributed to the Partners no later than the later of (a) the

end of the taxable year of the Partnership in which such

liquidation occurs or (b) within 90 days after the date of such

liquidation event, after payment of all Partnership liabilities

and expenses (or adequate provision therefor) in accordance with

Section 8.3, except that in no event shall the distribution to a

Partner exceed the positive balance in such Partner's Capital

Account after giving effect to all allocations to such Partner

under Article 5, assuming however distribution of such

liquidation proceeds in accordance with Section 4.2, so that

liquidation proceeds shall be distributed in accordance with each

Partner's positive Capital Account balance (within the meaning of

Treasury Regulation Section 1.704-1(b)(2)(ii)(b) as in effect on

the date hereof).

29

100169E062696

## ARTICLE 5

### ALLOCATION OF TAXES;
### SPECIAL ALLOCATIONS

5.1  <u>Definition of Net Profits and Net Losses</u>.  "Net
Profits" or "Net Losses", as the case may be, shall mean, for any
fiscal year of the Partnership, the net profit or net loss of the
Partnership determined for Federal income tax purposes, but
including as an item of income or gain any such item which is
earned by the Partnership during such fiscal year and is exempt
from Federal income tax, and deducting the amount of any
expenditures incurred by the Partnership during such fiscal year
that are described in Section 705(a)(2)(B) of the Code or the
corresponding provisions of any subsequent law and excluding any
items that are specially allocated under Section 5.4 hereof.

5.2  <u>Allocation of Net Profits</u>.  For each fiscal year of the
Partnership, Net Profits shall be allocated as follows:

5.2.1  First, to those Partners receiving a
distribution pursuant to Section 4.2.4 for such fiscal year, an
amount of Net Profits in proportion to (but not greater than) the
amount of such distribution.

5.2.2  Next, to those Partners having negative Capital
Account balances, in proportion to such negative balances, an
amount of Net Profits so as to increase the Capital Account
balances to, but not above, zero;

5.2.3  Next, to each of the Partners, in proportion to
(but not greater than) the amount by which (x) the amount of Net
Losses theretofore allocated to each Partner pursuant to Section

30                                   100169E062696

5.3 and not previously taken into account under this Section

5.2.3, exceeds (y) the Net Profits allocated to such Partner

under Section 5.2.2.

5.2.4  Next, if and to the extent that Net Profits

resulted from a sale, exchange or other disposition of the

Property, to each of the Partners in proportion to (but not

greater than) the amounts by which (x) the aggregate proceeds

derived from such transaction allocable to each Partner in

accordance with the provisions of Section 4.2, exceeds (y) the

positive balance, if any, in such Partner's Capital Account after

such Partner's Capital Account has been adjusted to reflect the

Net Profits allocated to such Partner pursuant to Section 5.2.2

and 5.2.3; and

5.2.5  Lastly, to the Partners pro rata in accordance

with their respective Percentage Interests.

5.3  <u>Allocation of Net Loss</u>.  For each fiscal year of the

Partnership, Net Loss shall be allocated to the Partners pro rata

in accordance with their respective Percentage Interests.

Notwithstanding the foregoing, if the allocation of Net Loss to a

Partner would create or increase a Qualified Income Offset Amount

(as hereinafter defined in Section 5.4.4), there shall be

allocated to such Partner only that amount of Net Loss as will

not create or increase a Qualified Income Offset Amount.  In the

event some but not all of the Partners would have a Qualified

Income Offset Amount as a consequence of an allocation of Net

Loss, the limitation set forth in this Section 5.3.5 shall be

31                          100169E062696

applied on a Partner-by-Partner basis so as to allocate the maximum permissible Net Loss to each Partner under Treasury Regulation Section 1.704-1(b)(2)(ii)(d).  All Net Losses in excess of the limitation set forth in this Section 5.3.5 shall be allocated to the General Partner.

5.4  Special Allocations.

5.4.1  If at any time other than the end of a fiscal year of the Partnership a Partner shall withdraw from or be admitted to the Partnership, or shall transfer all or a part of its interest in the Partnership, or a shift in the Percentage Interest of the Partners shall occur as the result of any other occurrence, the allocable share of the various items of Partnership income, gain, loss, deduction and credit shall be allocated, to the extent permitted by the Code, among the Partners in the same ratio as the number of days in the fiscal year respectively before and after the transfer or shift is recognized by the Partnership bears to the actual number of days in the entire fiscal year.

5.4.2  Notwithstanding any other provision of this Agreement to the contrary, if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulation Section 1.704-2(d)) during any fiscal year of the Partnership, then there shall be specially allocated to each Partner items of Partnership income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain

32                              100169E062696

(determined in accordance with Treasury Regulation Section 1.704-2(g)).  The items to be so allocated shall be determined in accordance with Treasury Regulation Section 1.704-2(f)(6) and 1.704-2(j)(2)(i) and (iii).  This Section 5.4.2 is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(f) and shall be interpreted consistently therewith.

 5.4.3  Notwithstanding any other provision of this Agreement to the contrary, if there is a net decrease in Partner Minimum Gain during any fiscal year, then each Partner shall be specially allocated items of Partnership income and gain for such fiscal year (and, if necessary, for subsequent fiscal years) in an amount equal to that Partner's share, if any (determined in accordance with Treasury Regulation Section 1.704-2(i)(4)), of the net decrease in Partner Minimum Gain.  The items to be so allocated shall be determined in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(4) and 1.704-2(j)(2)(i).  As used herein, the term "Partner Minimum Gain" means Partner nonrecourse debt minimum gain, as defined in Treasury Regulation Section 1.704-2(i)(2) and determined in accordance with Treasury Regulation Section 1.704-2(i)(3).  This Section 5.4.3 is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(i) and shall be interpreted consistently therewith.

 5.4.4  If during any fiscal year of the Partnership any Partner receives any adjustment, allocation or distribution

33

described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(4),
(5) or (6) and, as a result of such adjustment, allocation or
distribution, such Partner has a Qualified Income Offset Amount
(as hereinafter defined), then a _pro_ _rata_ portion of each item of
Partnership income and gain (including gross income) for such
fiscal year or other period (and, if necessary, for subsequent
fiscal years) shall (prior to any Net Profits allocation pursuant
to Section 5.1 hereof) be allocated to such Partner in an amount
and manner sufficient to eliminate such Qualified Income Offset
Amount as quickly as possible; provided, however, that any
allocation of income or gain under this sentence shall be
required only if and to the extent that such Partner would have a
Qualified Income Offset Amount after all other allocations
provided for in this Agreement have been tentatively made as if
this Section 5.4.4 were not contained herein.  As used herein,
the term "Qualified Income Offset Amount" for a Partner means the
excess, if any of (x) the negative balance a Partner has in its
Capital Account following an adjustment, allocation or
distribution described in the preceding sentence, over (y) the
maximum amount that it is obligated (or is deemed to be
obligated) to restore to the Partnership as determined in
accordance with Treasury Regulation Sections 1.704-
1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i)(5).  This Section
5.4.4 is intended to satisfy the provisions of Treasury
Regulation Section 1.704-1(b)(2)(ii)(d) and shall be interpreted
consistently therewith.

34

1001S9E062696

5.4.5   Notwithstanding any other provision of this Agreement to the contrary, Partnership losses, deductions, and Code Section 705(a)(2)(B) expenditures that are attributable to a particular Partner Nonrecourse Liability (as determined under Treasury Regulation Section 1.704-2(i)(2)) shall be specially allocated to the Partner(s) who bear the economic risk of loss for such liability.  As used herein, the term "Partner Nonrecourse Liability" has the meaning ascribed thereto in Treasury Regulation Section 1.704-2(b)(4).  This Section 5.4.5 is intended to comply with the allocation provision of Treasury Regulation Section 1.704-2(i)(1) and shall be interpreted consistently therewith.

5.4.6   Notwithstanding any other provision of this Agreement, the General Partners shall, in the aggregate, be allocated with respect to its general partnership interest for each fiscal year of the Partnership, or proportion thereof, at least 1.00% of each material item of Partnership income, gain, loss, deduction or credit of the Partnership.

5.4.7   Nonrecourse deductions (as defined in Treasury Regulation Section 1.704-2(b)) for any fiscal year shall be allocated in proportion to the Partners' Percentage Interests.

5.4.8   The allocation set forth in Sections 5.4.2, 5.4.3, 5.4.4, 5.4.5, 5.4.6, and 5.4.7 of this Agreement (the "Regulatory Allocations") are intended to comply with certain requirements of the Treasury Regulations including Sections 1.704-1(b) and 1.704-2 thereof.  The Regulatory Allocations may

35                              100169E062696

not be consistent with the manner in which the Partners intend to divide Partnership distributions. Accordingly, the General Partner shall cause the Partnership to allocate future Net Profits, Net Loss, and other items among the Partners so as to prevent the Regulatory Allocations from distorting the manner in which Partnership distributions will be divided among the Partners pursuant to this Agreement to the extent permitted under the Treasury Regulations.

5.5   <u>Negative Capital Accounts</u>.  Except as set forth in Section 8.3.3, no Partner shall be required to pay to the Partnership or to any Partner any deficit in any Partner's Capital Account, upon dissolution or otherwise.

5.6   <u>Section 704(c) Allocations</u>.  For Federal income tax purposes, all items of income gain, loss, deduction or credit shall be allocated to the Partners as provided herein; provided, however, that if the Book Value (as hereinafter defined) of any Asset differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit, for tax purposes, shall be allocated among the Partners in a manner determined by the General Partner that takes account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Section 704(c) of the Code and the regulations promulgated thereunder.  For purposes of this Agreement, "Book Value" of an asset shall mean the value of an asset on the books and records of the Partnership (as adjusted pursuant to Section 3.3.3) except

36                              100169E062696

that the initial Book Value of an asset contributed to the Partnership shall be the amount credited to the Capital Account of the contributing Partner with respect to such contribution.

## ARTICLE 6

### BOOKS, RECORDS, REPORTS AND ACCOUNTS

6.1   Books and Records.   At all times during the continuance of the Partnership, the General Partner shall keep or cause to be kept full and true books of account, in which shall be entered fully and accurately each transaction of the Partnership.   The Partnership shall keep its books and records on the same method of accounting as is employed for tax purposes.   The fiscal year of the Partnership shall be the calendar year.   The General Partner shall also cause to be prepared and filed all Federal, state and local tax returns required of the Partnership.

6.2   Retention of Books and Records.

6.2.1   The Partnership shall continuously maintain at its principal place of business set forth in Section 1.6:

(A)   A current list of the full name and last known business or residence address of each Partner set forth in alphabetical order together with the contribution and the share in profits and losses of each Partner;

(B)   A copy of the Certificate of Limited Partnership and all certificates of amendments thereto, together with executed copies of any powers of attorney pursuant to which any such certificate has been executed;

37                    100169E062696

(C)   Copies of the Partnership's Federal, state and local income tax or information returns and reports, if any, for the six most recent taxable years;

(D)   Copies of this Agreement and all amendments thereto;

(E)   Financial statements of the Partnership for the six most recent fiscal years;

(F)   The Partnership's books and records for at least the current and past three fiscal years; and

(G)   Such additional books and records as are necessary for the operation of the Partnership.

6.2.2   Any records maintained by the Partnership in the regular course of its business may be kept on, or be in the form of, punch cards, magnetic tape, photographs, micrographies, or any other information storage device, provided that the records so kept can be converted into clearly legible written form within a reasonable period of time.

6.3   Limited Partners' Rights Regarding Books, Records and Tax Information.

6.3.1   Each Limited Partner has the right upon reasonable request:

(A)   To inspect and copy during normal business hours, at the Limited Partner's expense, any of the Partnership's records required to be kept by the Partnership.

(B)   To obtain from the General Partner promptly after becoming available, at the Limited Partner's expense, a

38                     100169E062696

copy of the Partnership's Federal, state and local income tax or information returns for each taxable year.

6.3.2   The General Partner shall send to each Partner within ninety (90) days after the end of each taxable year such information as is necessary for each Partner to complete Federal and state income tax or information returns.

6.3.3   The Partner and the Partner's representatives shall not divulge to any other Person any confidential or proprietary data, information or property or any trade secrets of the Partnership discovered in any inspection of the Partnership's books and records.

6.4   Reports.

6.4.1   The General Partner shall cause the accountants for the Partnership, with the assistance of the General Partner, to send an annual audited report to each of the Limited Partners no later than ninety (90) days after the close of the fiscal year.  The report shall contain a balance sheet as of the end of the fiscal year, an income statement and a statement of partners' equity and of changes in financial position for the fiscal year. The report need not be audited unless requested by Partners holding, in the aggregate, 30% or more of the interests in the Partnership, held by investors other than the Class B Limited Partners and their respective Affiliates.

6.4.2   The General Partner shall cause the accountants for the Partnership, with the assistance of the General Partner, to send semi-annual unaudited reports of the Partnership's

39

100169E062696

operations to each of the Limited Partners as soon as practical
after the end of each semi-annual period, commencing with the
semi-annual period ending June 30, 1996.

6.5   Bank Accounts. The Partnership shall establish and
maintain accounts in financial institutions (including, without
limitation, national or state banks, trust companies, or savings
and loan institutions) in such manner as the General Partner
shall determine to be necessary or advisable to the carrying out
of the purposes of the Partnership.

6.6   Goodwill.   No value shall be placed for any purpose
upon the Partnership's name or the right to its use, or upon the
goodwill of the Partnership or its business.   Upon termination or
dissolution of the Partnership, neither the Partnership's name,
nor the right to its use, nor the goodwill of the Partnership,
shall be considered as an asset of the Partnership.

6.7   Election under Section 754 of the Code.   In the event
of any transaction described in Section 743(b) of the Code and
permitted by the provisions of this Agreement, the Partnership
shall, upon the timely written request of the Person succeeding
to a Partnership interest in such transaction, make the election
provided for in Section 754 of the Code.

## ARTICLE 7

## ASSIGNMENT OF INTERESTS

7.1   Sale, Transfer, or Assignment of Interest of the
General Partner.   The General Partner may not sell or transfer
all or any part of its general partnership interest in the

40                          1001698062696

Partnership except in connection with the merger, consolidation, or reorganization of the General Partner with or into an Affiliate of the General Partner or, with the prior consent of not less than fifty (50%) percent of the Percentage Interests of the Class A Limited Partners.

7.2  <u>Assignment by Limited Partner</u>.  A Limited Partner may not sell, transfer, assign, pledge, hypothecate, encumber or otherwise dispose of all or any portion of its limited partnership interest either voluntarily or by operation of law (hereinafter collectively referred to as an "Assignment"), except as follows:

7.2.1  A Limited Partner may make an Assignment of all or a portion of its interest as a limited partner is such assignment is in compliance with this Section 7.2 and Section 7.4.

7.2.2  A Limited Partner may make an Assignment of its interest as a limited partner in the Partnership, provided that (a) the assignee shall not be a natural person younger than 18 years of age nor a natural person who shall have been adjudged incompetent; (b) the Assignment shall be in writing and form reasonably satisfactory to the General Partner; (c) the assignee shall have agreed in writing and form reasonably satisfactory to the General Partner to be bound by the terms of this Agreement, and (d) the General Partner shall have consented in writing to the Assignment.

41                           100169E062696

7.2.3   An assignee shall be required to reimburse the Partnership and the General Partner in connection with such Assignment to cover any legal fees, accounting fees, overhead charges, and other fees or expenses incurred as a result of any such Assignment.

7.2.4   The General Partner may require an opinion of counsel, in form and substance satisfactory to it in its sole discretion, by experienced tax and securities law counsel, to the effect (i) that the proposed Assignment will be in compliance with applicable securities laws, rules and regulations, (ii) that the proposed Assignment will not cause adverse tax consequences, and (iii) such other matters as may be determined by the General Partner in its reasonable discretion.  The fee for such opinion shall be the responsibility of the assignor.

7.2.5   Any purported Assignment which is not in compliance with this Agreement is null and void and of no force or effect whatsoever.

7.3   Assignee's Rights.

7.3.1   An assignee or transferee of any portion of the interest of a Partner shall be entitled to receive allocations and distributions attributable to the interest acquired by reason of such Assignment from and after the Effective Date (as hereafter defined) of the Assignment of such interest to such assignee; however, anything herein to the contrary notwithstanding, the Partnership and the General Partner shall be entitled to treat the assignor of such interest of the Partner as

.42                               100169E062696

the absolute owner thereof in all respects, and shall incur no liability for allocations of net income, net loss, or gain or loss on sale of Partnership property, or transmittal of reports and notices required to be given to Partners hereunder which are made in good faith to such assignor until such time as the written assignment has been received by the Partnership, approved and recorded on its books and the Effective Date of the Assignment has passed.  The "Effective Date" of an Assignment shall be that date specified in the written instrument whereby the General Partner consents to the Assignment, which date shall not be later than sixty (60) days following receipt by the General Partner of a written notice of Assignment and the fulfillment of all conditions precedent to such Assignment provided for in this Agreement.

7.3.2  Assignment of Rights to Distributions by Limited Partners.  Any Limited Partner may assign the right to receive all distributions applicable to its Partnership interest, and such assignment of distributions shall be effective notwithstanding failure to satisfy the conditions set forth in Section 7.2, provided that (a) the instrument of assignment shall be in form reasonably satisfactory to the General Partner, and (b) a duly executed and acknowledged counterpart of such instrument shall be delivered to the Partnership.  Any purported assignment which does not meet the requirements set forth in this Section shall be void and shall not bind the Partnership.  Such

43                          100169E062696

an assignment shall not entitle the assignee to become or to
exercise any rights of a Partner.

    7.4  <u>Right of First Refusal on Sale or Transfer of Interest</u>.

    7.4.1  If a Limited Partner or assignee thereof
proposes to sell, assign, or transfer its interest, it shall
first offer the interest in writing to the General Partner at the
price and on the terms on which such Limited Partner proposes to
sell, assign, or transfer the interest (the "Price" and the
"Terms").

    7.4.2  The General Partner shall, in its sole
discretion, decide whether to accept or reject the offer within
twenty-one (21) days after receipt of the offer.  If the offer is
rejected by the General Partner or its designee, then the Limited
Partner or assignee may, subject to this Article 7, sell the
remaining unsold interests to an outside party at the Price and
on the Terms.  If such sale is not completed at the Price and on
the Terms within (90) days after the rejection by the General
Partner, then the Limited Partner or assignee must reoffer his
interest to the General Partner in accordance with this Section
7.4 before any other sale, assignment or transfer of all or any
part of its interest can be effected.

    7.4.3  This Section shall not apply to transfers,
sales, assignments, gifts, and devices to the spouse or lineal
descendants of the transferring Limited Partner or assignee, to a
trust for the benefit of that spouse or a Limited Partner's or
assignee's lineal descendants, or to an entity if there is no

44                    100169E062696

change in beneficial interest to the interest transferred.
Nevertheless, all such transferees shall take the transferred
interests subject to this Section 7.4.  Notwithstanding the
foregoing, Section 7.2 shall apply to any transfer of an interest
in the Partnership.

7.5   Death, Incompetency or Bankruptcy of a Limited Partner.
The death, adjudication of incompetency, dissolution or
bankruptcy of a Limited Partner shall not dissolve the
Partnership.  Except as set forth in this Agreement, the Limited
Partner's executor, administrator, guardian, conservator, or
other legal representative may exercise all of the Limited
Partner's rights and shall be responsible for all of the Limited
Partner's obligations hereunder.  Notwithstanding the foregoing,
in the case of the bankruptcy of a Limited Partner, the
Partnership may at any time, in the discretion of the General
Partner, redeem any such interest in the Partnership by payment
to the holder of such interest of its Capital Account balance.
The purchase price shall be paid in such manner and at such time
as is mutually agreed upon by the Partnership and the terminated
Partner or its representative.

45                          100169E062696

## ARTICLE 8

### DISSOLUTION, LIQUIDATION AND TERMINATION

#### OF THE PARTNERSHIP

8.1  <u>Dissolution</u>.  The Partnership shall be dissolved upon the happening of the first of the following to occur:

(a)  On the date designated by the General Partner and approved by all of the Limited Partners.

(b)  Upon the General Partner ceasing to be a general partner of the Partnership or upon the occurrence of an event specified in Section 8.2 unless (i) there is at least one other General Partner and all remaining General Partner(s) elect within thirty days of such event to continue the business of the Partnership, or (ii) if there is no remaining General Partner, all Limited Partners agree in writing to continue the business of the Partnership and agree to admit one or more successor General Partner(s) who agree in writing to serve in such capacity.  Such successor General Partner(s) shall be admitted to the Partnership only upon written notice from each of the Limited Partners (which notice shall specify the Partnership interest(s) of the successor General Partner(s)) that the person(s) described in such notice is or are satisfactory to such Limited Partner.

(c)  Upon the sale or other divestiture of all or substantially all of the Property of the Partnership; provided, however, that (i) if the Partnership receives a purchase money mortgage in connection with such sale, the Partnership shall continue until such mortgage is paid in full or otherwise

46                                          100169E062696

disposed of; and (ii) the Partnership shall continue if the Property is exchanged under Section 1031 of the Code;

(d)   Upon entry of a decree of judicial dissolution of the Partnership; or

(e)   At 5:00 p.m., December 31, 2078.

8.2   <u>Insolvency</u>.   If the General Partner shall (i) be adjudicated a bankrupt, (ii) suffer or permit a receiver to be appointed to hold or administer any substantial portion of his assets and such appointment shall remain in effect for 30 days, (iii) make an assignment for the benefit of creditors, (iv) file a petition in bankruptcy or for an arrangement with its creditors under the provisions of any Federal or state bankruptcy statute or other statute for the relief of debtors, or (v) admit by a pleading the material allegations of any bankruptcy petition or similar pleading filed against it, then the interest of such General Partner, as such, shall automatically terminate and, notwithstanding any other provision of this Agreement, such former General Partner shall thereafter have no right to participate in any manner in the management of the Partnership's business or in any decision, consent or approval affecting any transaction or proposed transaction whatsoever.

8.3   <u>Liquidation</u>.

8.3.1   Upon the dissolution of the Partnership as provided in Section 8.1, the Partnership shall be liquidated as hereinafter set forth.  Each of the Partners shall be furnished with a statement, reviewed by the Partnership's independent

47                                   100169E062696

accountants, which shall set forth the assets and liabilities of the Partnership as of the date of the Partnership's dissolution. The General Partner or, if there is no general partner, a liquidating agent selected by a majority in interest of the Limited Partners shall as promptly as practicable liquidate the assets of the Partnership, close out all positions, pay or discharge all debts, liabilities and obligations of the Partnership, and retain such reserves as are deemed necessary for any unforeseen and contingent liabilities in accordance with Section 8.3.4. The General Partner or such liquidating agent, as the case may be, shall then allocate and distribute the remaining proceeds in cash as follows:

(i)     to the payment of the expenses of liquidation, including a reasonable fee to the General Partner or liquidating agent, as the case may be;

(ii)     to the payment of the debts and liabilities of the Partnership to third parties in the order of priority provided by law;

(iii)     to the repayment of any loans or advances that may have been made to the Partnership by any Partner, but if the amount available for such repayment shall be insufficient to repay all such loans and advances, then repayment shall be made on a pro rata basis in accordance with the aggregate dollar amounts of loans made by each Partner; and

(iv)     to each Partner, pursuant to and in accordance with Section 4.3.3, the balance of its Capital

48                                    100169E062696

Account, but if the funds available therefor are insufficient to repay such amounts or are in excess of such amounts, then on a pro rata basis in accordance with the respective Percentage Interests.

8.3.2   Upon dissolution and liquidation, each Limited Partner shall look solely to the assets of the Partnership for the return of his Capital Contribution, and shall be entitled only to a cash distribution of Partnership Assets in return thereof, unless otherwise allowed by the General Partner or liquidating agent in accordance with Section 8.4.  If the Partnership property remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return the contribution of each Limited Partner, such Limited Partner shall have no recourse against the General Partner or any other Limited Partner.

8.3.3   Upon liquidation, the General Partner shall contribute to the Partnership the lesser of (i) any deficit balance in its Capital Account (or zero if its Capital Account is not negative), or (ii) the excess of 1.00% of the total Capital Contributions of the Limited Partners over the capital previously contributed by the General Partner.

.8.3.4   Notwithstanding anything to the contrary herein, the General Partner may retain such amounts as it deems reasonably necessary as a reserve for any contingent liabilities or obligations of the Partnership, which amount shall be paid over to a bank or trust company in New York, New York, as escrow

49                               100169E062696

agent to be held by it for the discharge of liabilities of the
Partnership and the distribution of the balance, if any, among
the Partners in the same manner and proportion as hereinabove
provided for in this Section.

8.4   Distribution in Kind or Sale.

8.4.1   In the event that any asset of the Partnership
is not sold within eighteen (18) months of the occurrence of the
event effecting the dissolution, the General Partner (if then
existing) or liquidating agent shall promptly thereafter offer to
the Limited Partners in satisfaction of such Partners' rights to
their liquidating distribution the option either to (1) acquire
ownership of any asset then held by the Partnership by means of a
distribution in kind; (2) sell any asset then held by the
Partnership to the General Partner or any designee thereof (the
"Buyer") for an amount equal to the appraised fair market value
of such asset, such price to be payable to the Limited Partners
pursuant to a promissory note delivered by the Buyer to the
Limited Partners on the terms hereinafter set forth; (3) allow
the General Partner, as liquidating trustee, or liquidating agent
to continue to wind up the affairs of the Partnership in
accordance with the terms of this Agreement; or (4) any
combination of the foregoing.  The promissory note referred to in
clause (2) above shall be nonnegotiable and shall bear interest
on its outstanding principal balance equal to the "applicable
Federal rate" set forth in Section 1274(d) of the Code and shall
be without recourse to the Buyer and its principals, employees

50                        100169E062696

and agents, but shall be secured by a pledge of the asset acquired by Buyer for which the note was delivered. The note shall have a maturity of five (5) years and no payments of principal or interest thereon shall be due until maturity unless the asset securing said note is sold, in which case all principal and interest shall be due seven (7) days after the Buyer receives the proceeds of such sale. In addition, the note shall be prepayable without penalty at any time.

8.4.2   If the General Partner or liquidating agent determines that a portion of the Partnership's assets should be distributed in kind to the Partners prior to the expiration of eighteen (18) months from the event effecting dissolution, it shall obtain an independent appraisal of the fair market value of each such asset as of a date reasonably close to the date of liquidation. Any unrealized appreciation or depreciation with respect to any asset to be distributed in kind shall be allocated among the Partners (in accordance with the provisions of Article 5, and assuming that the assets were sold for the appraised value), and taken into consideration in determining the balance in the Partners' Capital Accounts as of the date of final liquidation in accordance with Section 4.3.3. Distribution of any such asset in kind to a Partner shall be considered a distribution of an amount equal to the asset's fair market value for purposes of Section 8.3.

8.5   Termination.   The Partnership shall not terminate until all Partnership property shall have been disposed of and

51                                    100169E062696

the Partnership's assets, after payment of or due provisions for liabilities to the Partnership's creditors, shall have been distributed among the Partners as provided in this Agreement and until the Certificate shall have been cancelled.  Notwithstanding the dissolution of the Partnership, prior to the termination of the Partnership as aforesaid, the business of the Partnership and the affairs of the Partners, as such, shall continue to be governed by this Agreement.

8.6   Recognition.   Nothing contained in this Agreement shall impair, restrict or limit the rights and powers of the Partners under the laws of the State of New York and any other jurisdiction in which the Partnership is doing business to reform and constitute themselves as a limited partnership following dissolution of the Partnership either under provisions identical to those set forth herein or any others which they may deem appropriate.

8.7   Cancellation of Certificate of Limited Partnership. Upon the completion of the distribution of Partnership assets as provided in this Article 8 and the termination of the Partnership, the General Partner or liquidating agent shall cause the Certificate of Limited Partnership of the Partnership to be cancelled.

52

100169E062696

## ARTICLE 9

### LIMITED PARTNERS

9.1  <u>Limited Partner Representation and Warranties</u>.  The
Limited Partners, and any substitute or additional Limited
Partners prior to admittance to the Partnership in accordance
with Article 7 shall, represent, warrant, and agree as follows:

9.1.1  Each has full right, power and authority to
execute and deliver this Agreement; this Agreement has been duly
executed and delivered by the Limited Partner and constitutes the
valid and binding obligation of the Limited Partner in accordance
with its terms; and the Limited Partner is not subject to any
restriction or agreement which prohibits or would be violated by
the execution and delivery hereof or the consummation of the
transactions contemplated herein or pursuant to which the consent
of any third person, firm or corporation is required in order to
give effect to the transactions contemplated herein;

9.1.2  Each is (i) an "Accredited Investor" as such
term is defined under the Securities Act of 1933, as amended
(hereinafter called the "Securities Act") and has such knowledge
of business and financial affairs as is necessary to enable it to
understand the nature of and the risks attendant to an investment
in the Partnership, and to understand the particular financial,
legal and tax implication of the business to be conducted by the
Partnership; (ii) is able to bear the economic risk of such
investment; and (iii) has had access to any and all information
concerning the Partnership which it and its legal and tax

100169E062696

advisors requested or considered necessary to make a proper evaluation of such investment; and

9.1.3  The Limited Partners understand that the Partnership interests being acquired hereunder have not been and, in all likelihood, will never be, registered under the Securities Act on the ground that investment in the Partnership is exempt under Section 4(2) of the Securities Act and/or Regulation D promulgated thereunder as not involving a public offering.  Each Limited Partner represents that it is acquiring its interest in the Partnership for investment for its own account with no present intention of reselling or otherwise disposing of the same; that to the best of its knowledge and belief there are no circumstances in the foreseeable future which would require the resale of any portion of such interest; that it will, in no event, sell, transfer or otherwise dispose of its interest in the Partnership or any portion thereof unless, in the opinion of counsel to the Partnership, such interest may be legally sold, transferred or otherwise disposed of without registration and/or qualification under the Securities Act and under other state or Federal statutes; and it understands that the reliance of the General Partner upon such exemption is predicated upon such representations.  Each Limited Partner further acknowledges its understanding that no trading market for interests in the Partnership does or, in all likelihood, will exist at any time and that its interest will at no time be transferable without potential adverse tax consequences.  Each Limited Partner further

54                            100169E062696

understands that the disposition of its interest in the
Partnership is also limited by other provisions of this
Agreement.

## ARTICLE 10

### FURTHER DOCUMENTS

10.1  Execution by Limited Partners.    At any time, upon
the request of the General Partner, each Limited Partner shall
execute, acknowledge and swear to any certificate required by the
law of New York, any amendment to or cancellation thereof
required by law, and any certificate or affidavit of fictitious
firm name, trade name or the like (and any amendments or
cancellations thereof) required by law to carry out the purposes
of, and which are consistent with, the purposes of this
Agreement; and the General Partner shall cause to be filed of
record all such certificates and instruments as shall be required
so to be filed.

10.2  Completion of Publication.    The General Partner shall
cause a notice containing the substance of the Certificate filed
pursuant to Section 3.1 to be published once each week for six
successive weeks in two newspapers designated by the New York
County Clerk, all in accordance with Section 121-201(c) of the
Law.

55                    100169E062696

## ARTICLE 11

### MISCELLANEOUS

11.1  <u>Power of Attorney</u>. Each Limited Partner hereby makes, constitutes and appoints the General Partner and its officers, directors, employees, agents, successors and assigns, its true and lawful attorney-in-fact with full power and authority in its name, place and stead to make, complete, execute, sign, acknowledge, deliver, file and record at the appropriate public offices such documents as may be necessary or appropriate to carry out the provisions of this Agreement, including all instruments which the General Partner deems to be in the best interests of the Partnership to file and which are not inconsistent with this Agreement.

11.2  <u>Amendments</u>.  This Agreement may be amended, and any waiver, change, modification, consent or discharge shall be effective, only by the written agreement of the General Partner and all of the Limited Partners.

11.3  <u>Choice of Law</u>.    This Agreement shall be governed and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely within such State, without regard to principles of conflict of laws.

11.4  <u>Choice of Forum.</u>    The parties agree that none shall commence any litigation against the other arising out of this Agreement or the termination thereof except in a court located in

56                          100169E062696

the State of New York.   Each party consents to jurisdiction over

it by and exclusive venue in such a court.

11.5  Notices. Any notice or other communication required or

which may be given pursuant to this Agreement shall be in writing

and shall be delivered personally, telegraphed, sent by overnight

courier or telexed with a copy sent contemporaneously by

certified, registered, or express mail, postage prepaid, to the

relevant address set forth in the heading to this Agreement.   Any

such notice or communication shall be deemed given when so

delivered personally, telegraphed or received by overnight

courier or telexed, or if mailed, on the earlier of the date of

receipt or two days after the date of mailing.

11.6  Entire Agreement.  This Agreement and the Class A

Limited Partnership Interest Purchase Subscription Agreement (the

"Subscription Agreement") substantially in the form of Exhibit B

to the BDG 115 Broadhollow, L.P. Accredited Investor Summary

Memorandum, dated June 27, 1996 (the "Memorandum") contains the

entire understanding of the parties and supersedes and merges all

prior and contemporaneous agreements and discussions between the

parties.  Any and all representations or agreements by any agent

or representative of either party not contained in this

Agreement, the Subscription Agreement or the Memorandum shall be

null, void and of no effect.  This Agreement may not changed in

any way, except as provided in Section 11.2 of this Agreement.

11.7  Severability.  If for any reason any provision of this

Agreement, including but not limited to, any provision relating

100169E062696

to termination of this Agreement, shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable in any jurisdiction to which it applies, the validity of the remainder of the Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law, and, in its modified form, such provision shall then be enforceable and enforced.

11.8   <u>Binding Agreement</u>. This Agreement shall be binding upon the parties and shall inure to the benefit of the undersigned parties and, except to the extent provided herein, to their respective heirs, executors, personal representatives, successors and lawful permitted assigns.   Any reference in this instrument to any party or Partner is made, such reference shall be deemed to include a reference to the successors and assigns of such party or Partner.

11.9   <u>Waiver of Action for Partition</u>.   Each of the parties to this Agreement irrevocably waives and forfeits during the term of the Partnership any and all right that it may have to institute or maintain any action for partition with respect to any property of the Partnership.

11.10   <u>Terminology</u>.   All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, and the singular shall include the plural, and vice versa, as the context may require.

58                         100169E062696

11.11   Captions.   The captions of this Agreement are for convenience and reference only and in no way define, limit or describe the scope or intent of this Agreement nor effect it in any way.

11.12   Counterparts.   This Agreement may be executed through the use of separate signature pages or in any number of counterparts, and each of such signature pages or counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties are not signatories to the same counterpart.

IN WITNESS WHEREOF, the parties hereto intending to be legally bound, have executed this Agreement of the day and the year first above written.

General Partner:

BDG 115 Broadhollow, Inc.

By:
Name: David Blumenfeld
Title: Vice President

**SEE ADDITIONAL SIGNATURE PAGES ATTACHED HERETO FOR CLASS A AND CLASS B LIMITED PARTNER SIGNATURE PAGES**

59                    100169E062696

## DECLARATION OF SERVICE

State of New York, County of New York )ss:

Ramsey Hinkle an attorney admitted to practice in the courts of New York, hereby declares:

I am not a party to this action, am over 18 years of age and am an associate at the law office of Clayman & Rosenberg, LLP 305 Madison Avenue, New York, New York 10165.

On January 6, 2010, I served a true copy of the annexed OBJECTIONS TO TRUSTEES DETERMINATIONS by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee for that purpose. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

VIA FEDERAL EXPRESS
Irving H. Picard, Trustee
c/o Baker and Hostetler LLP
45 Rockefeller Plaza – 11th Floor
New York, New York 10111

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on: January 6, 2010
New York, New York

_____
Ramsey Hinkle