CLAYMAN & ROSENBERG
Seth L. Rosenberg  (SR 4563)
Paul S. Hugel  (PH 4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:      (212) 949-8255

*Attorneys for BCC II, LLC*
(BLMIS Account No. 1-B0081 designated Claim Number 011226)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

SECURITIES INVESTOR PROTECTION        :
CORPORATION,
                                      :        Adv. Pro. No. 08-01789(BRL)

                    Plaintiff,        :

     -against-                        :

                                      :        SIPA Liquidation

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,                       :

                    Defendant         :

------------------------------------------------------X

**OBJECTION TO TRUSTEE'S DETERMIMNATION OF CLAIM**

BCC II, LLC ("Objector"), by counsel, CLAYMAN & ROSENBERG, hereby objects to the

Notice of Trustee's Determination of Claim dated December 8, 2009 (the "Determination

Letter"), appended hereto as Exhibit A, as set forth herein.

## BACKGROUND

1.     Objector is a "Customer" as that term is defined by the Securities Investor

Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS").

2.     Objector was and is a member of Bull Market Fund, a general partnership

organized in the State of New York in 1986.

3.     The Bull Market Fund partnership was organized with the knowledge and

encouragement of BMLIS for the purpose of consolidating the bookkeeping for the investment

of certain small investors with BLMIS.

4.     Bull Market Fund received a final statement from BLMIS which indicated that

Bull Market Fund owned securities valued at $36,833,462.86.

5.     On or about December 31, 2008, Objector received a statement from Bull Market

Fund which indicated that Objector's funds invested by Bull Market Fund in BLMIS were

valued at $323,753.

6.     On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

Irving Picard was appointed Trustee ("BLMIS Trustee") with oversight of the liquidation of

BLMIS and responsibility for processing customer claims for money pursuant to SIPA.

7.     By Order dated December 23, 2008, the Court directed the Trustee to disseminate

notice and claim forms to BLMIS customers and set forth claim-filing deadlines. The Order

further authorized the Trustee, *inter alia*, "to satisfy, within the limits provided by SIPA, those

portions of any and all customer claims and accounts which agree with the Debtor's books and

records," and provided that, where the BLMIS Trustee disagrees with the amount claimed in a

2

customer's claim form, the BLMIS Trustee, "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor…"

8.     On or about June 24, 2009, Objector timely submitted a customer claim form to SIPC setting forth his claim in the amount of $323,753 ("Objector's claim"). Objector's claim cross-referenced the BLMIS account of Bull Market Fund. A copy of Objector's claim form is appended hereto as Exhibit B.

9.     On December 8, 2009, the BLMIS Trustee sent Objector a Determination Letter denying Objector's claim, "in its entirety." Exhibit A. The Determination Letter stated, in part, "Based upon a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. Section 78111 (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**."

10.     Objector objects to the BLMIS Trustee's disallowance of his claim for the reasons set forth hereinbelow.

**GROUNDS FOR OBJECTION**

11.     First:     The Trustee's definition and application of the term, "account" as set forth in the Determination Letter is incorrect.

12.     Second:     The Trustee's definition and application of the term, "customer" as set forth in the Determination Letter is incorrect.

13.     Objector reserves the right to revise or amend this Objection. Objector's failure to assert an objection on a particular ground or grounds shall not be construed as a waiver of its right to object or join in the objection of other claimants on any additional grounds.

14.     Objector reserves all rights set forth in Rule 9014.

3

15.    Objector incorporates herein by reference all claims and reservations of rights set forth in Objector's claim form. Exhibit B.

## RELIEF SOUGHT

16.    Objector's claim should be allowed in its entirety.

17.    The Court should direct SIPC to pay Objector the full amount of Objector's claim together with interest thereon commencing not later than the date of the Determination Letter.

18.    Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
       January 6, 2010

CLAYMAN & ROSENBERG
By:    Seth L. Rosenberg  (SR 4563)
       Paul S. Hugel      (PH 4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:      (212) 949-8255
rosenberg@clayro.com
hugel@clayro.com

EXHIBIT A

DETERMINATION LETTER

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]


### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

BCC II, LLC
6800 JERICHO TURNPIKE
SYOSSET, NY  11791


Dear BCC II, LLC:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 011226:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  DAVID KAPLAN
     300 ROBBINS LANE
     SYOSSET, NY  11791

# EXHIBIT B

## CUSTOMER CLAIM FORM

BCC II, LLC
300 ROBBINS LANE
SYOSSET, NY 11791

June 24, 2009

*Via UPS Overnight*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, Texas 75201

Re:    Account Number: 1-B0081
       BCC II, LLC through Bull Market Fund
       300 Robbins Lane
       Syosset, New York 11791

Dear Mr. Picard:

BCC II, LLC is a partner in Bull Market Fund, which had an account with Bernard L. Madoff Investment Securities ("BLMIS"), Account No. 1-B0081.

It is our understanding that Bull Market Fund has submitted its own SIPC Customer Claim Form to your office.

We wish to submit our own personal SIPC Customer Claim Form at this time. We are attaching the following:

1. Our SIPC Customer Claim Form;
2. Bull Market Fund's November 30, 2008 BLMIS statement;
3. Our 2007 Schedule K-1;
4. Our personal account balance as of December 11, 2008; and
5. Operating Agreement of BCC II, LLC.

We reserve the right to amend or modify this claim if and to the extent warranted by facts and circumstances not presently known to us, or as a result of a subsequent determination by a court of competent jurisdiction with respect to any issue pertaining to our claim.

This letter is hereby incorporated by reference in and made a part of our SIPC Customer Claim Form.

Very truly yours,

BCC II, LLC
By:  BDG Asset Management, Inc.,
     its General Manager

By: _____
    Name:   Edward Blumenfeld
    Title:    President

G:\Legal\MADOFF\Correspondence\Picard\Entity Investors\IHPicard Ltr - BCC II, LLC 6-09.doc

⊠Close Window



# Tracking Detail

**Your package has been delivered.**

| | |
|---|---|
| Tracking Number: | 1Z 12X 236 13 9067 119 3 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 06/25/2009  1:10 P.M. |
| Signed By: | THOMASSON |
| Location: | OFFICE |
| Delivered To: | 2100 MCKINNEY AVE<br>800<br>DALLAS, TX, US 75201 |
| Shipped/Billed On: | 06/24/2009 |
| Reference Number(s): | 01/SM, BCC II - BMF |
| Service: | NEXT DAY AIR SAVER |

## Package Progress

| Location | Date | Local Time | Description |
|---|---|---|---|
| DALLAS, TX, US | 06/25/2009 | 1:10 P.M. | DELIVERY |
| | 06/25/2009 | 6:40 A.M. | OUT FOR DELIVERY |
| | 06/25/2009 | 6:07 A.M. | ARRIVAL SCAN |
| DALLAS/FT. WORTH A/P, TX, US | 06/25/2009 | 5:40 A.M. | DEPARTURE SCAN |
| | 06/25/2009 | 4:54 A.M. | ARRIVAL SCAN |
| ROCKFORD, IL, US | 06/25/2009 | 3:13 A.M. | DEPARTURE SCAN |
| ROCKFORD, IL, US | 06/24/2009 | 11:29 P.M. | ARRIVAL SCAN |
| JAMAICA, NY, US | 06/24/2009 | 10:16 P.M. | DEPARTURE SCAN |
| | 06/24/2009 | 9:18 P.M. | ARRIVAL SCAN |
| UNIONDALE, NY, US | 06/24/2009 | 8:39 P.M. | DEPARTURE SCAN |
| | 06/24/2009 | 8:20 P.M. | ORIGIN SCAN |
| | 06/24/2009 | 7:13 P.M. | PICKUP SCAN |
| | 06/24/2009 | 7:12 P.M. | PICKUP SCAN |

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: BCC II, LLC THROUGH BULL MARKET FUND

Mailing Address: 300 ROBBINS LANE

City: SYOSSET   State: NY   Zip: 11791

Account No.: BULL MARKET FUND'S ACCOUNT NO.: 1-B0081

Taxpayer I.D. Number (Social Security No.): 11-3378990

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.   Claim for money balances as of December 11, 2008:

    a.   The Broker owes me a Credit (Cr.) Balance of      $ -0-

    b.   I owe the Broker a Debit (Dr.) Balance of      $ -0-

    c.   If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        **If you wish to make a payment, it must be enclosed**

        with this claim form.      $ -0-

    d.   If balance is zero, insert "None."      NONE

2.        Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | SEE BULL MARKET FUND ACCOUNT STATEMENT | $323,153* | |
| | | | |
| | | | |
| | | | |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406

2

\* PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | X * | |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X * | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the
preparation of this claim form: DAVID KAPLAN, 300 ROBBINS LANE,
SYOSSET, NY  11791

502180406

3

* SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

BCC II, LLC
By: PDG Asset Management, Inc., its general manager

Date _JUNE 24, 2009_     Signature _Edward Blumenfeld, President_

Date _____     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4

SUPPLEMENTAL CLAIM INFORMATION
ATTACHMENT A

Claimant is filing this claim form as a customer of Bernard L. Investment Securities LLC ("BLMIS"), having invested in BLMIS through a partnership, Bull Market Fund ("BMF"). Pursuant to the partnership agreement of BMF and other written agreements amongst the Partners of BMF, BMF invested all of its funds with BLMIS. BMF has informed claimant that its customer account number with BLMIS was 1-B0081. BMF has also advised claimant that it is filing a customer claim for the losses in its customer account with BLMIS.

BMF typically issued quarterly statements showing each partner's account summary. In light of the BLMIS fraud, BMF issued a statement to each partner showing their closing balance as of December 10, 2008, a copy of which is enclosed. Claimant believes that as of December 11, 2008, the amount of claimant's investment was all held in the securities as shown on the November 30, 2008 BLMIS statement for BMF, a copy of which is also enclosed.

Bernard L. Madoff ("BLM") has a 5% non-voting membership interest in W.D.I., LLC (f/k/a BDG Lake Success, LLC), which owns a 30% interest in BCC II, LLC. BLM has a 2% non-voting interest in 4th & Forty, LLC (f/k/a JK Capital, LLC), which owns a 70% interest in BCC II, LLC. Mark Madoff and Andrew Madoff each have a 1.5% non-voting membership interest in 4th & Forty, LLC.

BERNARD L. MADOFF

☐ MADF

INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY : 11791

1-B0083-3-0        11/30/08        1        *******6934

| DATE | | | | TRANSACTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 1,428,940.08 |
| 11/06 | 2,800 | 10750 | ABBOTT LABORATORIES | | | |
| 11/06 | 4,992 | 10950 | AMGEN INC | 60,350 | | |
| 11/06 | 3,432 | 11353 | AMGEN INC | 60,350 | | |
| 11/06 | 2,496 | 11458 | BOEING CO | 51,120 | | |
| 11/06 | 10,368 | 11632 | BANK OF AMERICA CORP | | | |
| 11/06 | 3,744 | 12293 | BANK OF NEW YORK MELLON CORP | 32,290 | | |
| 11/06 | 5,240 | 12520 | BRISTOL MYERS SQUIBB COMPANY | 20,610 | | |
| 11/06 | 2,184 | | CISCO SYSTEMS INC | | | |
| 11/06 | 7,472 | | CISCO SYSTEMS INC | | | |
| 11/06 | 9,360 | 13233 | COMCAST CORP | | | |
| 11/06 | | | CVS | 15,790 | | 148,168.40 |
| 11/06 | | | CUSTODIED SHARES | | | |
| 11/06 | 4,680 | 13938 | CVS CAREMARK CORP | 30,510 | | |
| 11/06 | 4,582 | 14172 | CHEVRON CORP | 73,740 | | |
| 11/06 | 6,240 | | GENERAL ELECTRIC CO | | | |
| 11/06 | 35,984 | | GENERAL ELECTRIC CO | | | |
| 11/06 | 624 | 14878 | GOOGLE INC | 356,520 | | |
| 11/06 | 1,248 | 15172 | GOLDMAN SACHS GROUP INC | 91,870 | | |
| 11/06 | 5,616 | | HEWLETT-PACKARD CO | | | |
| 11/06 | 7,800 | 15568 | HEWLETT-PACKARD CO | | | |
| 11/06 | 4,368 | 15818 | INTERNATIONAL BUSINESS MACHS | 92,800 | | 405,524.40 |
| | | | CONTINUED ON PAGE | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND EMPLOYEES
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY  11791

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

1-B0081-3-0    11/30/08    ***-**6934    2

| DATE | BOUGHT (Received) | SOLD (Delivered) | | DESCRIPTION | | | |
|---|---|---|---|---|---|---|---|
| 11/06 | 17,784 | | 16053 | INTEL CORP | 16.070 | | 286,499.88 |
| 11/06 | | | 16218 | JOHNSON & JOHNSON | 61,310 | | |
| 11/06 | | | 16522 | J.P. MORGAN CHASE & CO | | | |
| 11/06 | 6,240 | | 16758 | KRAFT FOOD INC | | | |
| 11/06 | | | 16993 | COCA COLA CO | 44,490 | | 277,865.60 |
| 11/06 | | | 17228 | MCDONALDS CORP | | | |
| 11/06 | | | 17463 | ELECTRONIC INC | | | |
| 11/06 | | | 17698 | SW COMPANY | | | |
| 11/06 | | | 17933 | ALTRIA GROUP INC | 19,160 | | 125,798.32 |
| 11/06 | | | 18168 | MERCK & CO | 30,780 | | |
| 11/06 | | | 18903 | XEROX CORPORATION | | | |
| 11/06 | 2,808 | | 19463 | OCCIDENTAL PETROLEUM CORP | 54,290 | | 152,558.32 |
| 11/06 | | | 19768 | PROCTER & GAMBLE CO | 57 | | |
| 11/06 | | | 20283 | PHILLIP MORRIS INTERNATIONAL | 42,730 | | 293,572.72 |
| 11/06 | | | 20518 | QUALCOMM INC | 37,810 | | |
| 11/06 | | | 20983 | AT&T | | | |
| 11/06 | 11,544 | | 21223 | TIME WARNER INC | | | |
| 11/06 | 3,120 | | 21458 | UNITED PARCEL SVC INC | 52,790 | | 164,928.80 |
| 11/06 | 5,616 | | 21693 | U S BANCORP | 29,550 | | 166,183.00 |
| 11/06 | 3,120 | | 21928 | UNITED TECHNOLOGIES CORP | 54,920 | | 171,474.40 |

CONTINUED ON PAGE

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

1-B0083-3-0          11/30/08          3
**********6934

| DATE | (amount) | (qty) | SECURITY | | (price/div) | (amount) |
|------|----------|-------|----------|---|---|---|
| 11/06 | 9,048 | 22163 | VERIZON COMMUNICATIONS | | 29.980 | 271,620.04 |
| 11/06 | 10,608 | 323398 | WELLS FARGO & CO NEW | | 33.660 | 357,489.28 |
| 11/06 | 1,116 | 22803 | WALMART STORES INC | | 55.260 | 705,181.56 |
| 11/06 | 16,646 | 22868 | EXXON MOBIL CORP | | 74.680 | 4,747,429.065,604 |
| 11/06 | | | FIDELITY SPARTAN | | | |
| 11/06 | | | U S TREASURY MONEY MARKET | | DIV | 2.54 |
| 11/06 | 109794 | 106848 | FIDELITY SPARTAN | | | 109,794.00 |
| 11/06 | | | U S TREASURY MONEY MARKET | | | |
| 11/06 | 24,408 | 49145 | FIDELITY SPARTAN | | 1 | 24,408.00 |
| 11/06 | 1,925,000 | 485999 | U S TREASURY MONEY MARKET | | | 1,925,044,009.00 |
| 11/06 | 1,925,000 | 485999 | U S TREASURY MONEY MARKET | | | |
| 11/06 | | | U S TREASURY BILL | | 1 | |
| 11/06 | | 485001 | DUE 12/11/2008 | | 999.987 | |
| 11/06 | | | U S TREASURY BILL | 12/11/2008 | | |
| 11/06 | | | DUE 12/18/2008 | 12/18/2008 | | |
| 13/06 | 3,925,000 | 48824 | U S TREASURY BILL | DUE 01/08/2009 | 99.960 | 3,923,430.00 |
| 13/06 | 3,925,000 | 49033 | U S TREASURY BILL | DUE 01/15/2009 | 99.946 | 3,922,880.50 |
| 41/06 | | 484246 | U S TREASURY BILL | DUE 01/22/2009 | 999.984 | 3,922,440.00 |
| | | | DUE 01/22/2009 | 1/22/2009 | | |

CONTINUED ON PAGE  4

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A LINENFELD-EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| 1-B0081-3-0 | 11/30/08 | ******6934 | 4 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | IND | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 11/06 | | 3,925,000 | 49461 | U S TREASURY BILL DUE 01/29/2009 | 99.928 | | |
| 11/06 | | 1,650,000 | 49677 | U S TREASURY BILL DUE 2/12/2009 | 99.902 | | |
| 11/06 | | 12,575,000 | | U S TREASURY BILL DUE 03/26/2009 | | | |
| 11/06 | | 2,575,000 | 50127 | U S TREASURY BILL NOTE 4/02/2009 | 99.751 | | 2,568,588.25 |
| 11/06 | 2,575,000 | | 50356 | U S TREASURY BILL DUE 4/02/2009 | 99.726 | | 2,567,944.50 |
| 11/07 | 1,947 | | 23904 | APPLE INC | | | |
| 11/07 | 3,456 | | 23639 | ABBOTT LABORATORIES | 56.590 | | 195,713.04 |
| 11/07 | 3,456 | | 23614 | BOEING CO | 52.070 | | |
| 11/07 | 11,016 | | 24574 | BANK OF AMERICA | 21.560 | | |
| 11/07 | 1,296 | | 24579 | BAXTER INTERNATIONAL INC | 61.740 | | 80,066.04 |
| 11/07 | 2,376 | | 24581 | BANK OF NEW YORK MELLON CORP | 34.210 | | 81,377.96 |
| 11/07 | 4,200 | | | AMOCO | | | |
| 11/07 | 1,512 | | 25256 | ANHEUSER-BUSCH COS INC | 64.190 | | |
| 11/07 | 11,664 | | 25519 | CITI GROUP INC | 14.410 | | 168,544.24 |

CONTINUED ON PAGE 5

| 3,922,174.00 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Mascot Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6622

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY   11791

**1-B0081-3-0**   **11/30/08**   ********6934**   **5**

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED |
|---|---|---|---|---|---|
| 11/07 | 6,264 | | COMCAST CORP CL A | 17.390 | 109,180.96 |
| 11/07 | | 25754 | CONOCOPHILLIPS | | |
| 11/07 | 3,270 | | CISCO SYSTEMS INC | | |
| 11/07 | 12,744 | 26224 | CVS CAREMARK CORP | 17.580 | |
| 11/07 | 3,024 | 26459 | CVS CAREMARK CORP | 31.720 | 96,041.28 |
| 11/07 | 4,556 | 26650 | CHEVRON CORP | 75.450 | 343,422.20 |
| 11/07 | 4,064 | | THE WALT DISNEY CO | | |
| 11/07 | 22,680 | | GENERAL ELECTRIC CO | | |
| 11/07 | 432 | 27199 | GOOGLE | 349.160 | 150,854.12 |
| 11/07 | 864 | 27163 | GOLDMAN SACHS GROUP INC | 89.070 | 74,990.48 |
| 11/07 | 672 | 27652 | HOME DEPOT INC | | |
| 11/07 | 5,400 | 28047 | HEWLETT PACKARD CO | | |
| 11/07 | 3,024 | 28339 | INTEL CORP | 92.430 | 279,628.32 |
| 11/07 | 12,096 | 28574 | INTERNATIONAL BUSINESS MACHS | 16. | 194,019.00 |
| 11/07 | | 29044 | JOHNSON & JOHNSON | | |
| 11/07 | 3,240 | 29279 | JP MORGAN CHASE & CO | 29.710 | 96,385.40 |
| 11/07 | 4,320 | 29766 | KRAFT FOOD INC | 66.500 | 201,337.60 |
| 11/07 | 2,916 | | COCA COLA CO | 94.10 | |
| 11/07 | 1,512 | 30219 | 3M COMPANY | 64.880 | 98,156.56 |
| 11/07 | 4,536 | 30456 | ALTRIA GROUP INC | 19.370 | 88,043.32 |
| 11/07 | 21,752 | 30924 | MERCK & CO | | |
| 11/07 | 8,640 | 31159 | ORACLE CORPORATION | 18.470 | 159,925.80 |
| | | | CONTINUED ON PAGE 6 | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                     NY   11791

| 1-B0081-3-0 | 11/30/08 | 6 | ******6934 |

| DATE | TRANSACTIONS | | BOUGHT | | TAX LOT | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|------|------|------|------|------|------|------|------|------|------|
| 11/07 | 1,728 | | | 31864 | | OCCIDENTAL PETROLEUM CORP | 54.380 | 94,037.64 | |
| 11/07 | 3,456 | | | 32099 | | PEPSICO INC | 58.630 | 202,763.28 | |
| 11/07 | 14,688 | | | 32232 | | PFIZER INC | 18. | 264,871.08 | |
| 11/07 | 8,096 | | | 32569 | | PROCTER & GAMBLE CO | 0.580 | 456,714.20 | |
| 11/07 | 4,536 | | | 32804 | | PHILLIP MORRIS INTERNATIONAL | 43.640 | 198,132.04 | |
| 11/07 | 3,672 | | | 33039 | | QUALCOMM INC | 37.690 | 138,543.68 | |
| 11/07 | 2,592 | | | 33274 | | SCHLUMBERGER LTD | 51.170 | 132,632.00 | |
| 11/07 | 12,528 | | | 33509 | | AT&T INC | 26.910 | 337,207.00 | |
| 11/07 | 7,776 | | | 33744 | | TIME WARNER INC | 10.110 | 78,926.36 | |
| 11/07 | 2,160 | | | 33979 | | UNITED PARCEL SVC INC | 53.680 | 116,034.80 | |
| 11/07 | | | | 34214 | | U S BANCORP | DIV | | |
| 11/07 | 3,888 | | | 34449 | | UNITED TECHNOLOGIES CORP | 56 | 119,066.52 | |
| 11/07 | 2,160 | | | 34684 | | VERIZON COMMUNICATIONS | 56 | 121,046.00 | |
| 11/07 | 6,048 | | | 34919 | | WELLS FARGO & CO NEW | 31.810 | 192,627.88 | |
| 11/07 | 7,344 | | | 35154 | | WAL-MART STORES INC | 34.030 | 250,717.32 | |
| 11/07 | 4,968 | | | 35389 | | EXXON MOBIL CORP | 75.280 | 282,082.64 | |
| 11/07 | 113,448 | | | 35389 | | EXXON MOBIL CORP | 75.280 | 863,262.44 | -34. |
| | | | | | | DIV 11/07/08 | 1 | 99,525 | |
| 11/07 | | | 18,784 | 10883 | | FIDELITY SPARTAN | | | 18,784.00 |
| | | | | | | U S TREASURY MONEY MARKET | | | |
| 11/07 | | | 2,375,000 | 11174 | | U S TREASURY BILL | 99.922 | | 2,373,147.25 |
| | | | | | | DUE 02/05/2009 | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY    11791

1-B0081-3-0     11/30/08     ******6934     7

| DATE | | | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 11/07 | | 2,450,000 | 11382 | U S TREASURY BILL DUE 02/19/2009 | 99.887 | 2,447,231.50 |
| 11/07 | 2,450,000 | | 11597 | U S TREASURY BILL DUE 02/26/2009 | 99.889 | 2,447,280.50 |
| 11/07 | 2,075,000 | | 11810 | U S TREASURY BILL DUE 03/05/2009 | 99.866 | 2,070,952.50 |
| 11/07 | | 12019 | | U S TREASURY BILL DUE 03/12/2009 | 99.840 | |
| 11/07 | 1,175,000 | | 12141 | U S TREASURY BILL DUE 04/16/2009 | 99.720 | 1,171,710.00 |
| 11/07 | 1,175,000 | | 12364 | U S TREASURY BILL DUE 04/16/2009 | 99.971 | 2,446,088.00 |
| 11/09 | 30,169,395 | | 12593 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 30,169,395.00 |
| 11/10 | 2,376 | | 35844 | APPLE INC. | 108.720 | 258,413.72 |
| 11/10 | 4,224 | | 35864 | ABBOTT LABORATORIES | 55.910 | 236,331.84 |
| 11/10 | 2,904 | | 36092 | AMGEN INC | 59.670 | 173,391.98 |
| 11/10 | 2,112 | | 36352 | BOEING CO | | |
| 11/10 | 13,728 | | 36569 | | | |
| 11/10 | | | 36804 | BANK OF AMERICA | 24.050 | 330,707.40 |
| | | | | CONTINUED ON PAGE 6 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| Account No. | Date | Page |
|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 8 |

******6934

| DATE | | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|
| 11/10 | 1,848 | 37039 | BAXTER INTERNATIONAL INC | 60.770 | 112,375.96 |
| 11/10 | 3,160 | 37274 | BANK OF NEW YORK MELLON CORP | 33.480 | 106,190.64 |
| 11/10 | 5,584 | 37191 | BRISTOL MYERS SQUIBB COMPANY | 22.010 | 123,363.54 |
| 11/10 | 1,848 | 37744 | ANHEUSER-BUSCH COS INC | 64.890 | 120,097.44 |
| 11/10 | 15,048 | 37979 | CITI GROUP INC | 14.270 | 215,335.96 |
| 11/10 | 7,920 | 38234 | COMCAST CORP | 17.410 | 138,203.20 |
| 11/10 | 4,224 | 38449 | CONOCO PHILLIPS | 54.850 | 231,881.32 |
| 11/10 | 16,104 | 38684 | CISCO SYSTEMS INC | 18.080 | 291,804.32 |
| 11/10 | 3,760 | 38919 | CVS CAREMARK CORP | 33.300 | 125,196.00 |
| 11/10 | 5,808 | 39065 | CHEVRON CORP | 72.510 | 421,200.08 |
| 11/10 | 5,016 | 39389 | THE WALT DISNEY CO | 25.660 | 128,760.56 |
| 11/10 | 20,776 | 39624 | GENERAL ELECTRIC CO | 20.530 | 591,922.28 |
| 11/10 | 528 | 39859 | GOOGLE | 363.560 | 191,961.24 |
| 11/10 | 330 | 40094 | GOLDMAN SACHS GROUP INC | 129.090 | 129,193.70 |
| 11/10 | 4,752 | 40329 | HOME DEPOT INC | 24.580 | 116,912.56 |
| 11/10 | 6,864 | 40564 | HEWLETT PACKARD CO | 37.290 | 256,232.56 |
| 11/10 | 3,696 | 40799 | INTERNATIONAL BUSINESS MACHS | 92.660 | 342,618.36 |
| 11/10 | 13,596 | 41034 | INTEL CORP | 15.180 | 206,903.88 |
| 11/10 | 10,032 | 41269 | JOHNSON & JOHNSON | 41.730 | 419,036.36 |
| 11/10 | 5,224 | 41504 | J.P. MORGAN CHASE & CO | 24.370 | 127,310.40 |
| 11/10 | 5,544 | 41739 | KRAFT FOODS INC | 30.100 | 166,834.40 |
| 11/10 | 3,168 | 41974 | COCA COLA CO | 45.100 | 142,956.80 |
| 11/10 | 3,168 | 42209 | MCDONALDS CORP | 57.230 | 181,480.64 |
| 11/10 | 3,168 | 42444 | MEDTRONIC INC | 40.300 | 127,796.40 |
| | | | CONTINUED ON PAGE 9 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES.

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| | | 1-B0081-3-0 | | 11/30/08 | | 9 | | *******8934 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|------|-----------------|----------------|--|-------------|-------|----------------|-----------------|
| 11/10 | 1,848 | | 42679 | 3M COMPANY | 64.690 | 119,620.32 | |
| 11/10 | 5,544 | | 42914 | ALTRIA GROUP INC | 18.690 | 103,947.16 | |
| 11/10 | | | | MERCK & CO | 27.510 | | |
| 11/10 | | | 42586 | MICROSOFT CORP | | | |
| 11/10 | 10,824 | | 43619 | ORACLE CORPORATION | 18.600 | 201,758.40 | |
| 11/10 | 2,376 | | 43324 | OCCIDENTAL PETROLEUM CORP | 56.010 | 133,174.76 | |
| 11/10 | | | 44035 | PEPSICO INC | | | |
| 11/10 | 3,872 | | 44295 | PFIZER INC | 17.960 | | |
| 11/10 | 8,184 | | 45029 | PROCTER & GAMBLE CO | 65.230 | 534,169.32 | |
| 11/10 | 5,544 | | 45266 | PHILLIP MORRIS INTERNATIONAL | 44.010 | 244,323.32 | |
| 11/10 | | | | QUALCOMM INC | | | |
| 11/10 | 16,368 | | 45969 | SBC COMMUNICATIONS INC | | | |
| 11/10 | 9,504 | | 46306 | AT&T INC | 28.580 | 468,451.44 | |
| 11/10 | 2,640 | | 46393 | TIME WARNER INC | 11.010 | 105,019.04 | |
| 11/10 | | | | CISCO SYSTEMS INC | | 143,775.80 | |
| 11/10 | 4,752 | | 46674 | U S BANCORP | 31.510 | 149,925.52 | |
| 11/10 | 2,640 | | 46909 | UNITED TECHNOLOGIES CORP | 56.730 | 149,080.20 | |
| 11/10 | 7,920 | | 47575 | VERIZON COMMUNICATIONS | | | |
| 11/10 | 6,975 | | | WELLS FARGO & CO - NEW | | | |
| 11/10 | 6,072 | | 47614 | WAL-MART STORES INC | 55.710 | 338,513.12 | |
| 11/10 | 14,256 | | 47849 | EXXON MOBIL CORP | 75.800 | 1,081,174.80 | |
| 11/10 | | | | U S TREASURY BILL | DIV | | |
| 11/10 | | | | DIV 11/10/08 | | | |

CONTINUED ON PAGE 2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

845 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADFF

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

BERNARD L. MADOFF INVESTMENT SECURITIES LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

| | | | | |
|---|---|---|---|---|
| **1-B0081-3-0** | | **11/30/08** | **10** | **********6934** |

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|
| 11/10 | | 30,199 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 30,199.00 |
| 11/10 | | 2,800,000 | 13266 U S TREASURY BILL DUE 03/19/2009 | 99.837 | 2,795,442.00 | |
| 11/10 | 2,800,000 | 13266 | U S TREASURY BILL 3/19/2009 | 99.837 | | 2,795,442.00 |
| 11/10 | | 2,575,000 | 13432 U S TREASURY BILL DUE 05/26/2009 | 99.834 | 2,570,725.50 | |
| 11/10 | 2,575,000 | 13625 | U S TREASURY BILL 5/26/2009 | 99.770 | | 2,569,077.50 |
| 11/10 | | 9,750,000 | 13628 U S TREASURY BILL DUE 04/02/2009 | 99.770 | 9,740,025.00 | |
| 11/10 | 9,750,000 | 13628 | U S TREASURY BILL DUE 04/02/2009 4/02/2009 | 99.742 | | 9,740,025.00 |
| 11/10 | | 11,175,000 | 14201 U S TREASURY BILL DUE 4/16/2009 | 99.665 | 11,137,511.50 | |
| 11/10 | 50,000 | 14201 | U S TREASURY BILL 4/16/2009 | 99.665 | | 49,843.00 |
| 11/10 | 685 | 14508 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 685.00 |
| 11/24 | | 10,400 | 2 FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK WRITING REDEMPTION | 1 | 100,000,000.00 | |
| 11/24 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIVIDEND | DIV | | .05 |

CONTINUED ON PAGE 11

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY  11791

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| 1-B0081-3-0 | 11/30/08 | *******6954 | 11 |

| DATE | | | | | | | |
|------|--|--|--|--|--|--|--|
| 11/14 | | 685 | 29393 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 685.00 |
| 11/18 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | CA | | 235.000.00 |
| 11/18 | | | | CHECK | CA | | 150.000.00 |
| 11/18 | | | | CHECK | CA | | 100.000.00 |
| 11/18 | | | | CHECK | CA | | 100.000.00 |
| 11/18 | | | | CHECK | CA | | 200.000.00 |
| 11/18 | | | | CHECK | CA | | 100.000.00 |
| 11/18 | | 375.000 | | U.S. TREASURY BILL DUE 4/16/2009 | | | 150.000.00 |
| 11/18 | | 1.317.717 | | U.S. TREASURY MONEY MARKET | 99.830 | 1.317.717.00 | |
| 11/18 | | 450.000 | 49954 | U.S. TREASURY MONEY MARKET DUE 4/16/2009 | 99.830 | 449.235.00 | |
| 11/18 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | |
| 11/19 | | 20.839 | 50057 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV | DIV | | 20.839.00 |

CONTINUED ON PAGE  12

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 888-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY   11791

Bernard L. Madoff Investment Securities Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

Account: 1-B0081-3-0   11/30/08   ****6934   12

| Date | Amount | Number | Description | Price | Amount |
|---|---|---|---|---|---|
| 11/19 | 3,525,000 | 54708 | U S TREASURY BILL DUE 03/26/2009 2/26/2009 | 99.926 | 3,522,391.50 |
| 11/19 | 9,120 | 59998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | 9,120.00 |
| 11/20 | 2,850,000 | 63537 | U S TREASURY BILL DUE 3/26/2009   3/26/2009 | 99.947 | 2,848,489.50 |
| 11/20 | 3,525,000 | 65699 | U S TREASURY BILL | | 675,000.00 |
| 11/20 | 171 | 64175 | FIDELITY SPARTAN U S TREASURY MONEY/MARKET DUE 3/26/2009 | 1 | 171.00 |
| 11/25 | 862 | 64417 | APPLE INC | 92.010 | |
| 11/25 | 1,568 | 64055 | ABBOTT LABORATORIES | 54.140 | |
| 11/25 | 1,578 | 64693 | AMGEN INC | 53.630 | |
| 11/25 | 4,566 | 64531 | BANK OF AMERICA | 12.980 | |
| 11/25 | 1,166 | 65697 | BAXTER INTERNATIONAL INC | 54.570 | |
| 11/25 | 1,966 | 65607 | BANK OF NEW YORK MELLON CORP | 24.050 | |
| 11/25 | 5,684 | 65645 | BRISTOL MYERS SQUIBB COMPANY | 20.140 | |
| 11/25 | 790 | 66321 | CITIGROUP INC | 6.100 | |
| 11/25 | 2,842 | 66559 | COLGATE PALMOLIVE CO | 62.690 | |
| | | | COMCAST CORP CL A | 15.970 | |

CONTINUED ON PAGE 13

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

███████████████████

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY  11791

| ACCOUNT NUMBER | DATE | PAGE | TAX ID |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 13 | ******6934 |

| DATE | QUANTITY | | DESCRIPTION | PRICE | AMOUNT DEBITED/CREDITED |
|---|---|---|---|---|---|
| 11/25 | 1,568 | 66797 | CONOCOPHILLPS | 45.100 | 70,778.80 |
| 11/25 | 5,880 | 67035 | CISCO SYSTEMS INC | 14.970 | 88,258.60 |
| 11/25 | 1,470 | 67270 | CVS CAREMARK CORP | 27.400 | 40,306.00 |
| 11/25 | 2,968 | 67541 | CHEVRON CORP | 68.710 | 204,097.28 |
| 11/25 | 1,862 | 67749 | THE WALT DISNEY CO | 19.760 | 36,867.12 |
| 11/25 | 686 | 67905 | EXXON CORP | 48.740 | 33,462.64 |
| 11/25 | 10,780 | 68220 | GENERAL ELECTRIC CO | 14.010 | 151,450.68 |
| 11/25 | 196 | 68465 | GOOGLE | 275.000 | 53,907.00 |
| 11/25 | 1,666 | 68701 | HOME DEPOT INC | 19.530 | 32,602.98 |
| 11/25 | 2,450 | 68939 | HEWLETT PACKARD CO | 32.990 | 80,925.50 |
| 11/25 | 3,272 | 69177 | INTERNATIONAL BUSINESS MACH | 79.030 | 259,002.16 |
| 11/25 | 5,664 | 69415 | INTEL CORP | 12.270 | 69,695.28 |
| 11/25 | 2,842 | 69653 | JOHNSON & JOHNSON | 57.650 | 163,954.30 |
| 11/25 | 3,724 | 69891 | J P MORGAN CHASE & CO | 27.760 | 103,536.24 |
| 11/25 | 1,470 | 70129 | KRAFT FOODS INC | 25.010 | 36,832.70 |
| 11/25 | 1,960 | 70367 | COCA COLA CO | 42.040 | 82,494.40 |
| 11/25 | 1,078 | 70605 | MCDONALDS CORP | 55. | 59,333.00 |
| 11/25 | 1,176 | 70843 | MEDTRONIC INC | 30.800 | 36,267.00 |
| 11/25 | 686 | 71081 | 3M COMPANY | 59. | 40,474.00 |
| 11/25 | 980 | 71319 | ALTRIA GROUP INC | 16.250 | 15,986.00 |
| 11/25 | 2,156 | 71557 | MERCK & CO | 25. | 53,986.00 |
| 11/25 | 7,840 | 71795 | MICROSOFT CORP | 18.100 | 142,217.00 |
| 11/25 | 7,320 | 72509 | ORACLE CORPORATION | 16.050 | 117,972.50 |
| 11/25 | 582 | 72747 | OCCIDENTAL PETROLEUM CORP | 44.970 | 34,365.14 |
| 11/25 | 1,568 | 72985 | PEPSICO INC | 51.800 | 81,284.40 |
| | | | CONTINUED ON PAGE 14 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

CONTINUED ON PAGE 14

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

1-80081-3-0    11/30/08    14    ******6934

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/25 | 6,762 | 73223 | PFIZER INC | 15.320 | 103,863.84 | |
| 11/25 | 2,940 | 73461 | PROCTER & GAMBLE CO | 61.990 | 182,220.60 | |
| 11/25 | 2,050 | 73690 | PHILLIP MORRIS INTERNATIONAL | 36.380 | 74,615.40 | |
| 11/25 | 1,666 | 73957 | QUALCOMM INC | 29.850 | 49,796.10 | |
| 11/25 | 1,176 | 74175 | SCHLUMBERGER LTD | 46.270 | 54,466.52 | |
| 11/25 | 5,800 | 74413 | AT&T INC | 25. | 147,235.00 | |
| 11/25 | 3,628 | 74651 | TIME WARNER INC | 8.000 | 29,183.26 | |
| 11/25 | 980 | 74889 | UNITED PARCEL SVC INC | 50.760 | 49,768.80 | |
| | | | CLASS B | | | |
| 11/25 | 1,764 | 75127 | U S BANCORP | 23.400 | 41,347.60 | |
| 11/25 | 980 | 75365 | UNITED TECHNOLOGIES CORP | 52.970 | 64,031.20 | |
| 11/25 | 2,842 | 75603 | VERIZON COMMUNICATIONS | 28.570 | 79,627.94 | |
| 11/25 | 3,822 | 75841 | WELLS FARGO & CO NEW | 23.820 | 91,192.04 | |
| 11/25 | 2,254 | 76079 | WAL-MART STORES INC | 51.450 | 116,058.30 | |
| 11/25 | 3,472 | 76317 | EXXON MOBIL CORP | 72. | 251,336.08 | |
| 11/25 | 5,292 | 76555 | | 90.740 | 487,105.38 | |
| | | | FIDELITY SPARTAN | DIV | | |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | DIV 11/25/08 | | | |
| | | | FIDELITY SPARTAN | | | |
| 11/25 | | 77122 | U S TREASURY MONEY MARKET | 1 | 99,878. | |
| 13/25 | 3,725,000 | 77306 | U S TREASURY BILL | | | 3,720,455.50 |
| | | | DUE 4/16/2009 | | | |
| 11/25 | 42,963 | 77681 | FIDELITY SPARTAN | 1 | | 42,963.00 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | CONTINUED ON PAGE  15 | | | |

CONTINUED ON PAGE 15

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

665 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BERNARD L. MADOFF INVESTMENT SECURITIES
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET              NY    11791

| 1-B0081-3-0 | 11/30/08 | 15 | *****6934 |
|---|---|---|---|

| DATE | BOUGHT | SOLD | | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 11/26 | 5,000 | | | CHECK | CA | 5,000.00 | | 5,000.00 |
| 11/26 | | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 5,000.00 | | |
| 11/28 | | 100 | 783.08 | BAXTER INTERNATIONAL INC | CM | | 50,000.00 | 50,000.00 |
| 11/28 | | | 78420 | CHECK | DIV | | | |
| 11/28 | | | | FIDELITY SPARTAN U.S. GOV MONEY MARKET | 1 | | | |
| 11/28 | 33,226 | 471,963 | 78257 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 471,963.00 | 471,963.00 |
| 11/28 | | | 78420 | U.S. TREASURY MONEY MARKET | | | | 3.26 |

NEW BALANCE                              5,119,352.95

| | | SECURITY POSITIONS | MKT PRICE |
|---|---|---|---|
| 53,496 | | AT&T INC | 28.560 |
| 14,240 | | ABBOTT LABORATORIES | 52.590 |
| 18,500 | | ALTRIA GROUP INC | 11.000 |
| 99,790 | | WALGREEN CO | 55.240 |
| 45,966 | | APPLE INC | 92.670 |
| 8,010 | | BANK OF AMERICA | 16.250 |
| 51,504 | | BANK OF NEW YORK MELLON CORP | 38.900 |
| | | BAXTER INTERNATIONAL INC | |
| 6,336 | | BOEING CO | 42.630 |

CONTINUED ON PAGE 16

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

1-B0081-3-0   11/30/08   16   ******6934

| BOUGHT (Received or Long) | SOLD (Delivered or Short) | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 18,064 | | BRISTOL MYERS SQUIBB COMPANY | 20,700 |
| 13,134 | | CVS CAREMARK CORP | 20,930 |
| 18,954 | | CISCO SYSTEMS INC | 26,900 |
| 53,760 | | CITI GROUP INC | 8,290 |
| 49,868 | | COCA COLA CO | 46,870 |
| 18,064 | | COMCAST CORP NEW | 17,540 |
| 490 | | CL A | |
| 26,386 | | CONOCOPHILLIPS | 52,520 |
| 14,024 | | EXXON MOBIL CORP | 56,520 |
| 17,222 | | GENERAL ELECTRIC CO | 80,150 |
| 686 | | GOOGLE INC | 17,170 |
| 47,844 | | | 292,980 |
| 95,620 | | HEWLETT PACKARD CO | 35,280 |
| 17,432 | | HOME DEPOT INC | 23,110 |
| 1,760 | | INTERNATIONAL BUSINESS MACHS | 113,300 |
| 22,514 | | J.P. MORGAN CHASE & CO | 31,660 |
| 15,702 | | JOHNSON & JOHNSON | 58,510 |
| 51,140 | | MCDONALDS CORP | 57,250 |
| 12,460 | | MEDTRONIC INC | 30,520 |
| 33,820 | | | |
| 25,594 | | | |
| 10,368 | | | |
| 13,932 | | | |
| 10,464 | | | |

CONTINUED ON PAGE

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY   11791

| ACCOUNT NO. | DATE | ...6934 | PAGE |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | ******6934 | 17 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|
| | 19,580 | | MERCK & CO | 26,720 | |
| | 71,776 | | MICROSOFT CORP | 20,520 | |
| | 7,794 | | GOLDENTREE DISTRIBUTION CORP | 14,140 | |
| | 36,176 | | ORACLE CORPORATION | 16,690 | |
| | 14,240 | | PEPSICO INC | 56,700 | |
| | 61,722 | | PFIZER INC | 16,430 | |
| | 19,002 | | PHILIP MORRIS INTERNATIONAL | | |
| | 27,492 | | QUALCOMM CO SAMBLE CO | 6,360 | |
| | 15,130 | | QUALCOMM INC | 33,570 | |
| | 10,944 | | SCHLUMBERGER LTD | 50,740 | |
| | 3,226 | | | | |
| | 6,230 | | 3M COMPANY | 66,930 | |
| | 22,660 | | TIME WARNER INC | 9,050 | |
| | 16,020 | | UNITED PARCEL SVC INC | | |
| | 8,900 | | CLASS B | | |
| | 25,858 | | UNITED TECHNOLOGIES CORP | 48,530 | |
| | 20,470 | | VERIZON COMMUNICATIONS | | |
| | 30,750 | | WELLS FARGO & CO NEW | 28,890 | |
| | 1,372 | | WYETH | 36,010 | |
| | | 27,819,842.16 | MARKET VALUE OF SECURITIES LONG SHORT | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY     11791

| | 1-80081-4-0 | 11/30/08 | ******6934 | 1 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRANSACTION DESCRIPTION | PRICE | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|
| | | | BALANCE FORWARD | | | 1,428,341.00 |
| 11/06 | | | NOVEMBER INDEX | 20.300 | | |
| 11/06 | 312 | | S & P 100 INDEX | | | |
| 11/06 | | 19108 | NOVEMBER 460 PUT | | 639,912.00 | |
| 11/07 | 216 | | S & P 100 INDEX | | | |
| 11/07 | | 31629 | NOVEMBER 460 PUT | 13.800 | 298,296.00 | |
| 11/10 | 264 | | S & P 100 INDEX | 16.800 | 443,784.00 | |
| 11/10 | | 44089 | NOVEMBER 475 PUT | | | |
| 11/19 | 792 | | S & P 100 INDEX | | | |
| 11/19 | | 30303 | DECEMBER 420 PUT | 30 | 2,376,792.00 | |
| 11/19 | 264 | | S & P 100 INDEX | .900 | 24,024.00 | |
| 11/19 | | 30779 | NOVEMBER 460 CALL | | | |
| 11/19 | | | NOVEMBER 460 CALL | | | |
| 11/19 | 264 | | S & P 100 INDEX | .59 | | |
| 11/19 | | 31255 | NOVEMBER 475 PUT | | | 1,557,336.00 |
| | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY 11791

| 1-B0081-4-0 | 11/30/08 | *******6934 | 2 |

| DATE | | | AMOUNT | DESCRIPTION | | MKT PRICE | | AMOUNT DEBITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|---|
| 11/25 | 98 | 98 | 72033 | S & P 100 INDEX DECEMBER 380 CALL | | 34 | | |
| 11/25 | 98 | 98 | 72270 | S & P 100 INDEX DECEMBER 370 PUT | | 21 | 205,098.00 | |
| | | | | NEW BALANCE | | | | 333,102.00- |
| | | | | SECURITY POSITIONS | | | | |
| | 792 | 792 | | S & P 100 INDEX DECEMBER 420 CALL | | 23,300 | | |
| | 98 | 98 | | S & P 100 INDEX DECEMBER 380 CALL | | | | |
| | 792 | 792 | | S & P 100 INDEX DECEMBER 420 PUT | | 16,500 | | |
| | 98 | 98 | | S & P 100 INDEX DECEMBER 370 PUT | | 25,100 | | |
| | | | | MARKET VALUE OF SECURITIES - LONG | 17,956,700.00 | | | 5,119,353.00 |
| | | | | MARKET VALUE OF SECURITIES - SHORT | 27,439,260.00- | | | |

**Schedule K-1**
**(Form 1065)**

**2007**

For calendar year 2007, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See separate instructions.

| Final K-1 | Amended K-1 | OMB No. 1545-0099 |

**Part III  Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | |
|---|---|
| 1 Ordinary business income (loss)  0. | 15 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest income  3,290. | |
| 6a Ordinary dividends  1,931. | 17 Alternative min tax (AMT) items |
| 6b Qualified dividends | |
| 7 Royalties | 18 Tax-exempt income and nondeductible expenses |
| 8 Net short-term capital gain (loss)  17,840. | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other information  A  5,221.  W*  3,290. |
| 11 Other income (loss)  C  689. | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) | |

*See attached statement for additional information.

**Part I   Information About the Partnership**

A  Partnership's employer identification number
11-2796934

B  Partnership's name, address, city, state, and ZIP code

BULL MARKET FUND
300 ROBBINS LANE
SYOSSET, NY  11791

C  IRS Center where partnership filed return
OGDEN, UT

D  ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

E  Partner's identifying number
11-3378990

F  Partner's name, address, city, state, and ZIP code

BCC II LLC
300 ROBBINS LANE
SYOSSET, NY  11791

G  ☒ General partner or LLC        ☐ Limited partner or other LLC
member-manager                      member

H  ☒ Domestic partner              ☐ Foreign partner

I   What type of entity is this partner?  PARTNERSHIP

J  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

K  Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

L  Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 200,296. |
| Capital contributed during the year | $ | 39,996. |
| Current year increase (decrease) | $ | 23,750. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 264,042. |

☒ Tax basis     ☐ GAAP     ☐ Section 704(b) book
☐ Other (explain)

For IRS Use Only

JWA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2007

711261
12-31-07

# MEMORANDUM

**TO:**        **BCC II, LLC**

**FROM:**      Harvey Cohen

**RE:**        Bull Market Fund

**DATE:**      December 31, 2008

---

Please find below your balance in the Bull Market Fund as of December 10, 2008.  This includes your November 30, 2008 balance plus any additions, if applicable, made subsequent to November 30, 2008 and sent to Bernard L. Madoff Investment Securities, LLC.

Account Balance as of December 10, 2008:  $323,753

Please call me if I can be of further service.

ORIGINAL

## BCC II, LLC
### Operating Agreement

This Operating Agreement (this "Agreement") is entered into as of this 1st day of November, 2000, by and among BDG Asset Management, Inc., as General Manager and the Members who are the signatories hereto.

### EXPLANATORY STATEMENT

The parties have agreed to organize and operate a limited liability company in accordance with the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the parties, intending legally to be bound, agree as follows:

## Article I
### Defined Terms

The following terms shall have the meanings specified in this Article I. Other terms are defined in the text of this Agreement; and, throughout this Agreement, those terms shall have the meanings respectively ascribed to them in their definitions.

"Adjusted Capital Account Deficit" means, with respect to any Interest Holder, the deficit balance, if any, in the Interest Holder's Capital Account as of the end of the relevant taxable year, after giving effect to the following adjustments:

    (i)   the deficit shall be decreased by the amounts which the Interest Holder is obligated to restore pursuant to Section 4.4.2 or is deemed obligated to restore pursuant to Regulation Section 1.704-1(b)(2)(ii)(c); and

    (ii)   the deficit shall be increased by the items described in Regulation Sections 1.704-1(b)(2)(ii)-(d)(4), (5), and (6).

"Adjusted Capital Balance" means, as of any day, an Interest Holder's total Capital Contributions less all amounts actually distributed to the Interest Holder pursuant to Sections 4.2.3.4.1 and 4.4 hereof. If any Interest is transferred in

accordance with the terms of this Agreement, the transferee
shall succeed to the Adjusted Capital Balance of the transferor
to the extent the Adjusted Capital Balance relates to the
Interest transferred.

"Affiliate" means, with respect to any Member or the
General Manager, any Person:   (i) which owns more than 50% of
the voting interests in the Member; or (ii) in which the Member
owns more than 50% of the voting interests; or (iii) in which
more than 50% of the voting interests are owned by a Person who
has a relationship with the Member described in clause (i) or
(ii) above, or (iv) who otherwise controls, is controlled by, or
under common control with, another Person.

"Agreement" means this Operating Agreement, as amended from
time to time.

"Assumed Tax Rate" means the highest effective marginal
combined federal, state and local income tax rate applicable to
capital gains or to the extent that this definition is operative
with regard to such gains prescribed for the relevant Interest
Holder in a taxable year (taking into account the deductibility
of the state and local income taxes for federal income tax
purposes).

"Capital Account" means the account to be maintained by the
Company for each Interest Holder in accordance with the
following provisions:

    (i)   an Interest Holder's Capital Account shall be
    credited with the Interest Holder's Capital Contributions,
    the amount of any Company liabilities assumed by the
    Interest Holder (or which are secured by Company property
    distributed to the Interest Holder), the Interest Holder's
    distributive share of Profit and any item in the nature of
    income or gain specially allocated to the Interest Holder
    pursuant to the provisions of Article IV (other than
    Section 4.3.3); and

    (ii)  an Interest Holder's Capital Account shall be
    debited with the amount of money and the fair market value
    of any Company property distributed to the Interest Holder,
    the amount of any liabilities of the Interest Holder
    assumed by the Company (or which are secured by property
    contributed by the Interest Holder to the Company), the
    Interest Holder's distributive share of Loss and any item
    in the nature of expenses or losses specially allocated to

2

the Interest Holder pursuant to the provisions of Article IV (other than Section 4.3.3).

If any Interest is transferred pursuant to the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent the Capital Account is attributable to the transferred Interest. If the book value of Company property is adjusted pursuant to Section 4.3.3, the Capital Account of each Interest Holder shall be adjusted to reflect the aggregate adjustment in the same manner as if the Company had recognized gain or loss equal to the amount of such aggregate adjustment. It is intended that the Capital Accounts of all Interest Holders shall be maintained in compliance with the provisions of Regulation Section 1.704-1(b), and all provisions of this Agreement relating to the maintenance of Capital Accounts shall be interpreted and applied in a manner consistent with that Regulation.

"Capital Contribution" means the total amount of cash and the fair market value of any other assets contributed (or deemed contributed under Regulation Section 1.704-1(b)(2)(iv)(d)) to the Company by a Member, net of liabilities assumed or to which the assets are subject.

"Capital Proceeds" means the gross receipts received by the Company from a Capital Transaction.

"Capital Transaction" means any transaction not in the ordinary course of business which results in the Company's receipt of cash or other consideration other than Capital Contributions, including, without limitation, proceeds of sales or exchanges or other dispositions of property not in the ordinary course of business, financings, refinancings, condemnations, recoveries of damage awards, and insurance proceeds.

"Cash Flow" means all cash funds derived from operations of the Company (including interest received on reserves), without reduction for any non-cash charges, but less cash funds used to pay current operating expenses and to pay or establish reasonable reserves for future expenses, debt payments (excluding any repayments of principal in respect of Loans as defined in Section 3.7), capital improvements, and replacements as determined by the General Manager. Cash Flow shall not include Capital Proceeds but shall be increased by the reduction of any reserve previously established.

3

"Code" means the Internal Revenue Code of 1986, as amended, or any corresponding provision of any succeeding law.

"Company" means the limited liability company formed in accordance with this Agreement.

"Family" means a Member's or a partner of a Member's spouse, lineal ancestors or descendants by birth or adoption, siblings, and trusts for the exclusive benefit of a Member or a partner of a Member or any of the foregoing individuals.

"General Manager" means the Person designated as such in Article V.

"Interest" means a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company.

"Interest Holder" means any Person who holds an Interest, whether as a Member or an unadmitted assignee of a Member.

"Involuntary Withdrawal" means, with respect to any Member, the occurrence of any of the following events:

     (i)   the Member makes an assignment for the benefit of creditors;

     (ii)   the Member files a voluntary petition of bankruptcy;

     (iii)   the Member is adjudged bankrupt or insolvent or there is entered against the Member an order for relief in any bankruptcy or insolvency proceeding;

     (iv)   the Member files a petition seeking for the Member any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation;

     (v)   the Member seeks, consents to, or acquiesces in the appointment of a trustee for, receiver for, or liquidation of the Member or of all or any substantial part of the Member's properties;

     (vi)   the Member files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the Member in any proceeding described in Subsections (i) through (v);

4

(vii). any proceeding against the Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation, continues for one hundred twenty (120) days after the commencement thereof, or the appointment of a trustee, receiver, or liquidator for the Member or all or any substantial part of the Member's properties without the Member's agreement or acquiescence, which appointment is not vacated or stayed for one hundred twenty (120) days or, if the appointment is stayed, for one hundred twenty (120) days after the expiration of the stay during which period the appointment is not vacated;

(viii) if the Member is an individual, the Member's death, incapacity, or adjudication by a court of competent jurisdiction as incompetent to manage the Member's person or property;

(ix)  if the Member is acting as a Member by virtue of being a trustee of a trust, the termination of the trust;

(x)  if the Member is a partnership or limited liability company, the dissolution and commencement of winding up of the partnership or limited liability company;

(xi)  if the Member is a corporation, the dissolution of the corporation or the revocation of its charter;

(xii)  if the Member is an estate, the distribution by the fiduciary of the estate's entire interest in the Company;

"Law" means the New York Limited Liability Company Law, as amended from time to time.

"Member" means each Person who has signed this Agreement and any Person who subsequently is admitted as a member of the Company.

"Membership Interest" means all of the rights of a Member in the Company, including a Member's:  (i) Interest; (ii) right to inspect the Company's books and records; and (iii) right to participate in the management of and vote on matters coming before the Company.

5

"Member Loan Nonrecourse Deductions" means any Company deductions that would be Nonrecourse Deductions if they were not attributable to a loan made or guaranteed by a Member within the meaning of Regulation Section 1.704-2(i).

"Minimum Gain" has the meaning set forth in Regulation Section 1.704-2(d). Minimum Gain shall be computed separately for each Interest Holder in a manner consistent with the Regulations under Code Section 704(b).

"Negative Capital Account" means a Capital Account with a balance of less than zero.

"Nonrecourse Deductions" has the meaning set forth in Regulation Section 1.704-2(b)(1). The amount of Nonrecourse Deductions for a taxable year of the Company equals the net increase, if any, in the amount of Minimum Gain during that taxable year, determined according to the provisions of Regulation Section 1.704-2(c).

"Nonrecourse Liability" means any liability of the Company with respect to which no Member has personal liability, as determined in accordance with Code Section 752 and the Regulations promulgated thereunder.

"Person" means and includes an individual, corporation, partnership, association, limited liability company, trust, estate, or other entity.

"Positive Capital Account" means a Capital Account with a balance greater than zero.

"Profit" and "Loss" means, for each taxable year of the Company (or other period for which Profit or Loss must be computed), the Company's taxable income or loss determined in accordance with Code Section 703(a), with the following adjustments:

    (i) all items of income, gain, loss, deduction, or credit required to be stated separately pursuant to Code Section 703(a)(1) shall be included in computing taxable income or loss; and

    (ii) any tax-exempt income of the Company, not otherwise taken into account in computing Profit or Loss, shall be included in computing taxable income or loss; and

6

(iii)   any expenditures of the Company described in Code Section 705(a)(2)(B) (or treated as such pursuant to Regulation Section 1.704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profit or Loss, shall be subtracted from taxable income or loss; and

(iv)   gain or loss resulting from any taxable disposition of Company property shall be computed by reference to the adjusted book value of the property disposed of, notwithstanding the fact that the adjusted book value differs from the adjusted basis of the property for federal income tax purposes; and

(v)   in lieu of the depreciation, amortization, or cost recovery deductions allowable in computing taxable income or loss, there shall be taken into account the depreciation computed based upon the adjusted book value of the asset; and

(vi)   notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Section 4.3 hereof shall not be taken into account in computing Profit or Loss.

"Regulation" means the income tax regulations, including any temporary regulations, from time to time promulgated under the Code.

"Transfer" means, when used as a noun, any sale, hypothecation, pledge, assignment, encumbrance, or other transfer, and, when used as a verb, means to sell, hypothecate, pledge, transfer, assign, encumber or otherwise dispose of.

"Units" means, as to a Member, the number of Units set forth after the Member's name on Exhibit A, as amended from time to time, and as to an Interest Holder who is not a Member, the number of Units of the Member whose Interest has been acquired by such Interest Holder, to the extent the Interest Holder has succeeded to that Member's Interest.

"Voluntary Withdrawal" means a Member's disassociation with the Company by means other than a Transfer or an Involuntary Withdrawal.

7

## Article II
### Formation and Name: Office; Purpose; Term

2.1.   *Organization.*   The parties hereby organize a limited liability company pursuant to the Law and the provisions of this Agreement and, for that purpose, have caused (a) Articles of Organization to be prepared, executed and filed with the New York Department of State on May 2, 1997, and (b) a Certificate of Amendment of the Articles of Organization to be prepared, executed and filed with the New York Department of State on August 7, 1997, changing the management of the limited liability company to management by one or more managers.

2.2.   *Name of the Company.*   The name of the Company shall be BCC II, LLC.   The Company may do business under that name and under any other name or names which the General Manager selects. If the Company does business under a name other than that set forth in its Articles of Organization, then the Company shall file a certificate with the Department of State as required by General Business Law § 130.   The Company's principal place of business shall be located at 6800 Jericho Turnpike, Syosset, New York 11791 or at such other location as may be selected by the General Manager from time to time.   The General Manager shall give notice to the Members of any change in the location of the principal place of business of the Company.

2.3.   *Purpose.*   The Company is organized solely to purchase, acquire, buy, sell, own, trade in, hold, develop, lease, manage, subdivide, and otherwise deal in and with the real property consisting of approximately 6.7 acres of land located at the intersection of the Grand Central Parkway and the Brooklyn Queens Expressway, Queens, New York (the "Property") and any other real property acquired by the Company as a result of a like-kind exchange under Section 1031 of the Code involving a sale of the Property, and to do any and all things necessary, convenient, or incidental to that purpose.

2.4.   *Term.*   The Company was formed on May 2, 1997 by the filing of the Articles of Organization with the New York State Department of State and shall terminate on January 31, 2095, unless its existence is sooner terminated pursuant to Article VII of this Agreement.

2.5.   *Agent for Service of Process.*   The Secretary of State is designated as agent of the Company upon whom process against it may be served.   The post office address within or without

this state to which the Secretary of State shall mail a copy of any process against the Company served upon him or her is:

> c/o Blumenfeld Development Group, Ltd.
> 6800 Jericho Turnpike
> Syosset, New York   11791

2.6.  *Members*.  The name, present mailing address, taxpayer identification number and number of Units held by each Member of the Company are set forth on Exhibit A attached hereto.

## Article III
### Members; Capital; Capital Accounts

3.1.  *Initial Capital Contributions*.  Upon the execution of this Agreement, the Members shall contribute to the Company cash or deliver to the Company a promissory note in the form attached hereto as Exhibit B in the amounts respectively set forth on Exhibit A as their respective initial capital contribution.

3.2.  *No Additional Capital Contributions*.  No Member shall be required to contribute any additional capital to the Company, and no Member shall have any personal liability for any debt, obligation, or liability of the Company, including compensation to and/or indemnification of the General Manager.

3.3.  *No Interest on Capital Contributions*. Interest Holders shall not be paid interest on their Capital Contributions.

3.4.  *Return of Capital Contributions*.  Except as otherwise provided in this Agreement, no Interest Holder shall have the right to receive any return of any Capital Contribution.

3.5.  *Form of Return of Capital*.  If an Interest Holder is entitled to receive a return of a Capital Contribution, the Interest Holder shall not have the right to receive anything but cash in return of the Interest Holder's Capital Contribution.

3.6.  *Capital Accounts*.  A separate Capital Account shall be maintained for each Interest Holder.

3.7.  *Loans*.  Any Member or a partner of a Member may, at any time, make or cause a loan to be made to the Company in any amount and on such arms' length commercially reasonable terms as shall be determined by the General Manager.  The General Manager

9

may, at any time, make or cause a loan to be made to the Company in any amount and on such arms' length commercially reasonable terms as approved by a majority in interest of the Members. If a Member or the General Manager makes a loan to the Company, such Person may be referred to herein as a "Lending Party," and such loan may be referred to herein as a "Loan."

### Article IV
### Profit, Loss, and Distributions

4.1. *Distributions of Cash Flow and Allocations of Profit or Loss Other than Capital Transactions.*

4.1.1. *Profit or Loss Other Than from a Capital Transaction.* After giving effect to the special allocations set forth in Section 4.3, for any taxable year of the Company, Profit or Loss (other than Profit or Loss resulting from a Capital Transaction, which Profit or Loss shall be allocated in accordance with the provisions of Sections 4.2.1 and 4.2.2) shall be allocated to the Interest Holders in proportion to the number of Units held by the respective Interest Holders.

4.1.2. *Mandatory Cash Flow.* Cash Flow for each taxable year of the Company shall be distributed no later than seventy-five (75) days after the end of the taxable year in the following order of priority:

4.1.2.1. First, to the Interest Holders until each Interest Holder has been distributed Cash Flow equal to the product of (x) the Assumed Tax Rate for the taxable year in which an allocation is made to it under Section 4.1.1. hereof and (y) the Profits allocated to it (reduced by any Losses previously allocated to such Interest Holder that have not previously been taken into account under this Section 4.1.2.1.);

4.1.2.2. Second, to the Lending Party up to the amount, if any, of the principal payable on their respective Loan; and

4.1.2.3. Third, to the Interest Holders in proportion to the number of Units held by the respective Interest Holders.

10

4.2.    *Distributions of Capital Proceeds and Allocation of Profit or Loss from Capital Transactions.*

4.2.1.    *Profit.*    After giving effect to the special allocations set forth in Section 4.3., Profit from a Capital Transaction shall be allocated as follows:

4.2.1.1.    If one or more Interest Holders has a Negative Capital Account, to those Interest Holders, in proportion to their Negative Capital Accounts, until all of those Negative Capital Accounts have been increased to zero.

4.2.1.2.    Any Profit not allocated pursuant to Section 4.2.1.1 shall be allocated to the Interest Holders in proportion to, and to the extent of, the amounts distributable to them pursuant to Section 4.2.3.4.1 and 4.2.3.4.2.

4.2.2.    *Loss.*    After giving effect to the special allocations set forth in Section 4.3, Loss from a Capital Transaction shall be allocated as follows:

4.2.2.1.    If one or more Interest Holders has a Positive Capital Account, to those Interest Holders, in proportion to their Positive Capital Accounts, until all Positive Capital Accounts have been reduced to zero.

4.2.2.2.    Any Loss not allocated to reduce Positive Capital Accounts to zero pursuant to Section 4.2.2.1 shall be allocated to the Interest Holders in proportion to the number of Units held by the respective Interest Holders.

4.2.3.    *Capital Proceeds.*    Capital Proceeds shall be distributed and applied by the Company in the following order and priority:

4.2.3.1.    to the payment of all expenses of the Company incident to the Capital Transaction; then

4.2.3.2.    to the payment of debts and liabilities of the Company then due and outstanding (including all debts due to any Interest Holder); then

11

4.2.3.3. to the establishment of any reserves which the General Manager deems necessary for liabilities or obligations of the Company; then

4.2.3.4. the balance shall be distributed as follows:

4.2.3.4.1. to the Interest Holders in proportion to their Adjusted Capital Balances, until their remaining Adjusted Capital Balances have been paid in full;

4.2.3.4.2. the balance, to the Interest Holders in proportion to the number of Units held by the respective Interest Holders.

4.3. *Regulatory Allocations.*

4.3.1. *Qualified Income Offset.* No Interest Holder shall be allocated Losses or deductions if the allocation causes the Interest Holder to have an Adjusted Capital Account Deficit. If an Interest Holder receives (1) an allocation of Loss or deduction (or item thereof) or (2) any distribution, which causes the Interest Holder to have an Adjusted Capital Account Deficit at the end of any taxable year, then all items of income and gain of the Company (consisting of a pro rata portion of each item of Company income, including gross income and gain) for that taxable year shall be allocated to that Interest Holder, before any other allocation is made of Company items for that taxable year, in the amount and in proportions required to eliminate the excess as quickly as possible. This Section 4.3.1 is intended to comply with, and shall be interpreted consistently with, the "qualified income offset" provisions of the Regulations promulgated under Code Section 704(b).

4.3.2. *Minimum Gain Chargeback.* Except as set forth in Regulation Section 1.704-2(f)(2), (3), and (4), if, during any taxable year, there is a net decrease in Minimum Gain, each Interest Holder, prior to any other allocation pursuant to this Article IV, shall be specially allocated items of gross income and gain for such taxable year (and, if necessary, subsequent taxable years) in an amount equal to that Interest Holder's share of the net decrease of Minimum Gain, computed in accordance with Regulation Section 1.704-2(g). Allocations of gross income and gain

12

pursuant to this Section 4.3.2 shall be made first from
gain recognized from the disposition of Company assets
subject to nonrecourse liabilities (within the meaning of
the Regulations promulgated under Code Section 752), to the
extent of the Minimum Gain attributable to those assets,
and thereafter, from a pro rata portion of the Company's
other items of income and gain for the taxable year.  It is
the intent of the parties hereto that any allocation
pursuant to this Section 4.3.2 shall constitute a "minimum
gain chargeback" under Regulation Section 1.704-2(f).

    4.3.3.  *Contributed Property and Book-ups*.  In
accordance with Code Section 704(c) and the Regulations
thereunder, as well as Regulation Section 1.704-
1(b)(2)(iv)(d)(3), income, gain, loss, and deduction with
respect to any property contributed (or deemed contributed)
to the Company shall, solely for tax purposes, be allocated
among the Interest Holders so as to take account of any
variation between the adjusted basis of the property to the
Company for federal income tax purposes and its fair market
value at the date of contribution (or deemed contribution).
If the adjusted book value of any Company asset is adjusted
as provided herein, subsequent allocations of income, gain,
loss, and deduction with respect to the asset shall take
account of any variation between the adjusted basis of the
asset for federal income tax purposes and its adjusted book
value in the manner required under Code Section 704(c) and
the Regulations thereunder.

    4.3.4.  *Code Section 754 Adjustment*.  To the extent an
adjustment to the tax basis of any Company asset pursuant
to Code Section 734(b) or Code Section 743(b) is required,
pursuant to Regulation Section 1.704-1(b)(2)(iv)(m), to be
taken into account in determining Capital Accounts, the
amount of the adjustment to the Capital Accounts shall be
treated as an item of gain (if the adjustment increases the
basis of the asset) or loss (if the adjustment decreases
basis), and the gain or loss shall be specially allocated
to the Interest Holders in a manner consistent with the
manner in which their Capital Accounts are required to be
adjusted pursuant to that Section of the Regulations.

    4.3.5.  *Nonrecourse Deductions*.  Nonrecourse
Deductions for a taxable year or other period shall be
specially allocated among the Interest Holders in
proportion to the number of Units held by the respective
Interest Holders.

4.3.6.  *Member Loan Nonrecourse Deductions.*  Any Member Loan Nonrecourse Deduction for any taxable year or other period shall be specially allocated to the Interest Holder who bears the risk of loss with respect to the loan to which the Member Loan Nonrecourse Deduction is attributable in accordance with Regulation Section 1.704-2(b).

4.3.7.  *Guaranteed Payments.*  To the extent any compensation paid to any Member by the Company, including any fees payable to any Member pursuant to Section 5.3 hereof, is determined by the Internal Revenue Service not to be a guaranteed payment under Code Section 707(c) or is not paid to the Member other than in the Person's capacity as a Member within the meaning of Code Section 707(a), the Member shall be specially allocated gross income of the Company in an amount equal to the amount of that compensation, and the Member's Capital Account shall be adjusted to reflect the payment of that compensation.

4.3.8.  *Unrealized Receivables.*  If an Interest Holder's Interest is reduced (provided the reduction does not result in a complete termination of the Interest Holder's Interest), the Interest Holder's share of the Company's "unrealized receivables" and "substantially appreciated inventory" (within the meaning of Code Section 751) shall not be reduced, so that, notwithstanding any other provision of this Agreement to the contrary, that portion of the Profit otherwise allocable upon a liquidation or dissolution of the Company pursuant to Section 4.4 hereof which is taxable as ordinary income (recaptured) for federal income tax purposes shall, to the extent possible without increasing the total gain to the Company or to any Interest Holder, be specially allocated among the Interest Holders in proportion to the deductions (or basis reductions treated as deductions) giving rise to such recapture.  Any questions as to the aforesaid allocation of ordinary income (recapture), to the extent such questions cannot be resolved in the manner specified above, shall be resolved by the General Manager.

4.3.9.  *Withholding.*  All amounts required to be withheld pursuant to Code Section 1446 or any other provision of federal, state, or local tax law shall be treated as amounts actually distributed to the affected Interest Holders for all purposes under this Agreement.

14

4.4.    *Liquidation and Dissolution*.

4.4.1.    If the Company is liquidated, the assets of
the Company which shall have been reduced to cash in
accordance with Section 7.2 shall be distributed to the
Interest Holders in accordance with the provisions of
Section 4.2.3.4.

4.4.2.    No Interest Holder shall be obligated to
restore a Negative Capital Account.

4.5.    *General*.

4.5.1.    Except as otherwise provided in this
Agreement, the timing and amount of all distributions shall
be determined by the General Manager.

4.5.2.    If any assets of the Company are distributed
in kind to the Interest Holders, those assets shall be
valued on the basis of their fair market value, and any
Interest Holder entitled to any interest in those assets
shall receive that interest as a tenant-in-common with all
other Interest Holders so entitled.    Unless the Members
otherwise agree, the fair market value of the assets shall
be determined by an independent appraiser who shall be
selected by the General Manager.    The Profit or Loss for
each unsold asset shall be determined as if the asset had
been sold at its fair market value, and the Profit or Loss
shall be allocated as provided in Section 4.2 and shall be
properly credited or charged to the Capital Accounts of the
Interest Holders prior to the distribution of the assets in
liquidation pursuant to Section 4.4.

4.5.3.    All Profit and Loss shall be allocated, and
all distributions shall be made to the Persons shown on the
records of the Company to have been Interest Holders as of
the last day of the taxable year for which the allocation
or distribution is to be made.    Notwithstanding the
foregoing, unless the Company's taxable year is separated
into segments, if there is a Transfer or an Involuntary
Withdrawal during the taxable year, the Profit and Loss
shall be allocated between the original Interest Holder and
the successor on the basis of the number of days each was
an Interest Holder during the taxable year; provided,
however, the Company's taxable year shall be segregated
into two or more segments in order to account for Profit,

15

Loss, or proceeds attributable to a Capital Transaction or to any other extraordinary nonrecurring items of the Company.

4.5.4.   The General Manager is hereby authorized, upon the advice of the Company's tax counsel, to amend this Article IV to comply with the Code and the Regulations promulgated under Code Section 704(b); provided, however, that no amendment shall materially affect distributions to an Interest Holder without the Interest Holder's prior written consent.

## Article V
### Management: Rights, Powers, and Duties

5.1.   *Management.*

5.1.1.   *General Manager.*   The Company shall be managed by a General Manager, who may, but need not, be a Member. BDG Asset Management, Inc. is hereby designated to serve as the initial General Manager.  The Members who are the signatories hereto, hereby ratify and confirm all proceedings and acts heretofore taken by the General Manager, its officers and directors in furtherance of the purpose of the Company provided in Section 2.3 hereof.

5.1.2.   *General Powers.*   The General Manager shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to manage, control, administer, and operate the business and affairs of the Company for the purposes herein stated, and to make all decisions affecting such business and affairs, including, without limitation, for Company purposes, the power to:

5.1.2.1.   acquire by purchase, lease, or otherwise, any real or personal property, tangible or intangible;

5.1.2.2.   construct (including demolition in connection therewith), operate, maintain, finance, and improve, and to own, sell, convey, assign, mortgage, or lease any real estate and any personal property;

16

5.1.2.3.   sell, dispose, trade, or exchange Company assets in the ordinary course of the Company's business;

5.1.2.4.   enter into agreements and contracts, including, but not limited to, contracts of guaranty and suretyship, and to give receipts, releases, and discharges;

5.1.2.5.   purchase liability and other insurance to protect the Company's properties and business;

5.1.2.6.   borrow money for and on behalf of the Company;

5.1.2.7.   execute or modify leases with respect to any part or all of the assets of the Company;

5.1.2.8.   prepay, in whole or in part, refinance, amend, modify, or extend any mortgages or deeds of trust which may affect any asset of the Company and in connection therewith to execute for and on behalf of the Company any extensions, renewals, or modifications of such mortgages or deeds of trust;

5.1.2.9.   execute any and all other instruments and documents which may be necessary or in the opinion of the General Manager desirable to carry out the intent and purpose of this Agreement, including, but not limited to, deeds, contracts, leases, mortgages, deeds of trust, promissory notes, security agreements, financing statements pertaining to the Company's assets or obligations, and documents whose operation and effect extend beyond the term of the Company;

5.1.2.10.   make any and all expenditures which the General Manager, in its sole discretion, deems necessary or appropriate in connection with the management of the affairs of the Company and the carrying out of its obligations and responsibilities under this Agreement, including, without limitation, all legal, accounting and other related expenses incurred in connection with the organization and financing and operation of the Company;

17

5.1.2.11.   enter into any kind of activity necessary to, in connection with, or incidental to, the accomplishment of the purposes of the Company; and

5.1.2.12.   invest and reinvest Company reserves in liquid investments that the General Manager in its sole discretion deems appropriate which need not be limited to government securities and similar investments.

5.1.3.   *Extraordinary Transactions.*   Notwithstanding anything contained in this Agreement to the contrary, (a) during such time that a Lending Party has (x) made a Loan to the Company which remains outstanding or (y) guaranteed repayment of a loan made by a third party to the Company (a "Guaranty") which Guaranty remains outstanding, the General Manager shall not undertake any of the following without the approval of such Lending Party, whose approval shall be the only approval required, and (b) provided that there does not then exist a Loan or a Guaranty, the General Manager shall not undertake any of the following without the approval of a majority in interest of the Members:

5.1.3.1.   any Capital Transaction;

5.1.3.2.   the Company's borrowing of more than $250,000.00;

5.1.3.3.   the admission of additional Members to the Company;

5.1.3.4.   the Company's engaging in business in any jurisdiction which does not provide for the registration of limited liability companies;

5.1.3.5.   the sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the Company;

5.1.3.6.   approval of a merger or consolidation of the Company with or into another LLC or other business entity; and

5.1.3.7.   amending the articles of organization (except as permitted in Law Section 213(b)).

18

5.1.3.8.  file or consent to the filing of a bankruptcy or insolvency petition, make a general assignment for the benefit of creditors, consent to the appointment of a trustee or receiver for its property and assets, or otherwise institute reorganization, insolvency, or similar proceedings.

5.1.4.  *Limitation on Authority of Members*.

5.1.4.1.  No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member.

5.1.4.2.  This Section 5.1 supersedes any authority granted to the Members pursuant to Section 401 or 402 of the Law.  Any Member who takes any action or binds the Company in violation of this Section 5.1 shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company harmless with respect to the loss or expense.

5.1.5.  *Removal of Manager*.  The Members holding at least two-thirds (2/3) of the Units then held by the Members, at any time and from time to time and with or without cause, may remove any or all managers of the Company then acting and elect a new manager or managers or make other provisions or arrangements for the management of the Company.

5.1.6.  *Resignation of General Manager*.  The General Manager may resign as such only upon thirty (30) days prior written notice to each Member; provided that such resignation shall not become effective until a successor General Manager shall have been elected or other provisions or arrangements for the management of the Company have been made by the Members holding at least two-thirds (2/3) of the Units then held by the Members.

5.2.  *Meetings of and Voting by Members*.

5.2.1.  No annual or regular meetings of the Members as such shall be required.

5.2.2.  A meeting of the Members may be called at any time by the General Manager or by those Members holding at

19

least thirty-three percent (33%) of the Units then held by
Members. Meetings of Members shall be held at the
Company's principal place of business. Not less than ten
(10) nor more than sixty (60) days before each meeting, the
Person calling the meeting shall give written notice of the
meeting to each Member entitled to vote at the meeting.
The notice shall state the place, date, hour, and purpose
of the meeting. Notwithstanding the foregoing provisions,
each Member who is entitled to notice waives notice if
before or after the meeting the Member signs a waiver of
the notice which is filed with the records of Members'
meetings, or is present at the meeting in person or by
proxy without objecting to the lack of notice. Unless this
Agreement provides otherwise, at a meeting of Members, the
presence in person or by proxy of Members holding not less
than a majority (over 50 percent) of the Units then held by
Members constitutes a quorum. A Member may vote either in
person or by written proxy signed by the Member or by the
Member's duly authorized attorney in fact.

5.2.3. Except as otherwise provided in this
Agreement, the affirmative vote of Members holding a
majority (over 50 percent) or more of the Units then held
by Members shall be required to approve any matter coming
before the Members.

5.2.4. In lieu of holding a meeting, the Members may
vote or otherwise take action by a written instrument
indicating the consent of Members holding such Units then
held by Members as would be required for Members to take
action under this operating agreement. If such consent is
not unanimous, prompt notice shall be given to those
Members who have not consented in writing but who would
have been entitled to vote thereon had such action been
taken at a meeting.

5.3. *Personal Service*.

5.3.1. No Member shall be required to perform
services for the Company solely by virtue of being a
Member. Unless approved by the General Manager, no Member
shall perform services for the Company or be entitled to
compensation for services performed for the Company.

5.3.2. The General Manager shall not be entitled to
compensation for services performed for the Company.
However, upon substantiation of the amount and purpose

20

thereof, the General Manager shall be entitled to reimbursement for expenses reasonably incurred in connection with the activities of the Company.

5.4.   *Duties of Parties.*

5.4.1.   The General Manager shall devote such time to the business and affairs of the Company as is necessary to carry out the General Manager's duties set forth in this Agreement.

5.4.2.   Except as otherwise expressly provided in Section 5.4.3, nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and no Member shall be accountable to the Company or to any other Member with respect to that business or activity even if the business or activity competes with the Company's business. The organization of the Company shall be without prejudice to the Members' respective rights (or the rights of their respective Affiliates) to maintain, expand, or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates.

5.4.3.   Each Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Members, the General Manager and their Affiliates. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms. Section 411 of the Law shall apply to business dealings and undertakings involving the General Manager, Members and their Affiliates and nothing in this Agreement is intended to limit or restrict the application of such provisions to the Company.

5.4.4.   Each Member understands and acknowledges that Blumenfeld Development Group, Ltd., an Affiliate of the Company, has been, and continues to be, the developer of the Property and will also be the property manager of the Property and shall be entitled to (a) a one-time developer's fee equal to four (4%) percent of the loan proceeds derived from the initial permanent financing of

21

the Property, and (b) an annual management fee equal to four (4%) percent of the gross income from the Property.

## 5.5. *Liability and Indemnification.*

5.5.1. Except as otherwise provided by law, neither the General Manager nor any Member shall be liable, responsible, or accountable in any way for damages or otherwise to the Company or to any of the Members for any act or failure to act pursuant to this Agreement or otherwise unless (i) such person acted in bad faith, (ii) the conduct of such person constituted intentional misconduct or a knowing violation of law, (iii) such person gained a financial benefit to which he or she was not legally entitled, or (iv) such person failed to perform his or her duties, specifically with respect to distributions under Section 508(a) of the Law, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

5.5.2. The Company shall indemnify, defend, and hold harmless the General Manager and each of the Members (severally, the "Indemnitee" and collectively, the "Indemnitees"), from and against any claims, losses, liabilities, damages, fines, penalties, costs, and expenses (including, without limitation, reasonable fees and disbursements of counsel and other professionals) arising out of or in connection with any act or failure to act by an Indemnitee pursuant to this Agreement, or the business and affairs of the Company; provided, however, that an Indemnitee shall not be entitled to indemnification hereunder if (a) such Indemnitee's actions or omissions to act were made in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or (b) such Indemnitee personally gained a financial benefit to which the Indemnitee was not legally entitled.

## 5.6. *Power of Attorney.*

5.6.1. *Grant of Power.* Each Member constitutes and appoints the General Manager as the Member's true and lawful attorney-in-fact ("Attorney-in-Fact"), and in the Member's name, place, and stead, to make, execute, sign, acknowledge, and file:

5.6.1.1. one or more articles of organization;

22

5.6.1.2.  all documents (including amendments to articles of organization) which the Attorney-in-Fact deems appropriate to reflect any amendment, change, or modification of this Agreement which has been adopted by the Members in accordance with the terms hereof;

5.6.1.3.  any and all other certificates or other instruments required to be filed by the Company under the laws of the State of New York or of any other state or jurisdiction, including, without limitation, any certificate or other instruments necessary in order for the Company to continue to qualify as a limited liability company under the laws of the State of New York;

5.6.1.4.  one or more fictitious or trade name certificates; and

5.6.1.5.  all documents which may be required to dissolve and terminate the Company and to cancel its articles of organization.

5.6.2.  *Irrevocability.*  The foregoing power of attorney is irrevocable and is coupled with an interest, and, to the extent permitted by applicable law, shall survive the death or disability of a Member.  It also shall survive the Transfer of an Interest, except that if the transferee is admitted as a Member, this power of attorney shall survive the delivery of the assignment for the sole purpose of enabling the Attorney-in-Fact to execute, acknowledge, and file any documents needed to effectuate the substitution.  Each Member shall be bound by any representations made by the Attorney-in-Fact acting in good faith pursuant to this power of attorney, and each Member hereby waives any and all defenses which may be available to contest, negate, or disaffirm the action of the Attorney-in-Fact taken in good faith under this power of attorney.

## Article VI
### Transfer of Interests and Withdrawal of Members

6.1.  *Transfers Generally.*  No Person may Transfer all or any portion of, or any interest or rights in, the Membership Interest owned by the Member.  Each Member hereby acknowledges

23

the reasonableness of the prohibition contained in this Section
6.1 in view of the purposes of the Company and the relationship
of the Members.   The Transfer of any Membership Interests,
including Interests, in violation of the prohibition contained
in this Section 6.1 shall be deemed invalid, null and void, and
of no force or effect.   Any Person to whom Membership Interests
are attempted to be transferred in violation of this Section
shall not be entitled to vote on matters coming before the
Members, participate in the management of the Company, act as an
agent of the Company, receive distributions from the Company, or
have any other rights in or with respect to the Membership
Interest.

    6.2.   *Transfers to Affiliates and Family.*   Notwithstanding
anything set forth in this Agreement to the contrary, but
provided that the conditions set forth below are satisfied, any
Member may at any time, and from time to time, Transfer all, or
any portion of, or any interest or rights in, the Member's
Interest or Membership Interest to (i) any other Member; (ii)
any member of the Member's Family; or (iii) any Affiliate of the
Member:

    6.2.1.   the Transfer will not require registration of
Interests or Membership Interests under any federal or
state securities laws;

    6.2.2.   the transferee delivers to the Company a
written agreement to be bound by the terms of this
Agreement;

    6.2.3.   the Transfer will not result in the
termination of the Company pursuant to Code Section 708;

    6.2.4.   the Transfer will not result in the Company
being subject to the Investment Company Act of 1940, as
amended;

    6.2.5.   the Transfer will not cause the Company to
be a "publicly traded partnership" within the meaning of
Section 7704 of the Code; and

    6.2.6.   the transferor or the transferee delivers the
following information to the Company:   (i) the transferee's
taxpayer identification number; and (ii) the transferee's
initial tax basis in the Transferred Interest.

24

6.3.  *Voluntary Withdrawal.*  No Member shall have the right
or power to Voluntarily Withdraw from the Company.  Any
withdrawal in violation of this Agreement shall entitle the
Company to injunctive relief as well as damages for breach,
which may be offset against the amounts otherwise distributable
to such member.

6.4.  *Involuntary Withdrawal.*  Immediately upon the
occurrence of an Involuntary Withdrawal, the successor of the
Withdrawn Member shall thereupon become an Interest Holder, but
shall not become a Member.  If the Company is continued as
provided in Section 7.1.3, the successor Interest Holder shall
have all the rights of an Interest Holder, but shall not be
entitled by reason of the withdrawal to receive in liquidation
of the Interest, the fair market value of the Member's Interest
as of the date the Member Involuntarily withdrew from the
Company.

## Article VII
## Dissolution, Liquidation, and
## Termination of the Company

7.1.  *Events of Dissolution.*  The Company shall be
dissolved upon the written agreement of the Members holding
seventy-five (75%) percent or more of the Units then held by
Members.

7.2.  *Liquidating Trustee.*  If the Company is dissolved,
the General Manager shall act as liquidating trustee.  The
General Manager shall liquidate and reduce to cash the assets of
the Company as promptly as is consistent with obtaining a fair
value therefor and, unless otherwise required by law, shall
apply and distribute the proceeds of liquidation, as well as any
other Company assets, first, to the payment of creditors of the
Company, including Lending Parties, in satisfaction of the
liabilities of the Company, and then to the Interest Holders in
accordance with Section 4.4.

7.3.  *Filing of Articles of Dissolution.*  If the Company is
dissolved, the General Manager shall promptly file Articles of
Dissolution with the Department of State.  If there is no
General Manager, then the Articles of Dissolution shall be filed
by the remaining Members; if there are no remaining Members, the
Articles shall be filed by the last Person to be a Member; if
there is neither a General Manager, remaining Members, or a
Person who last was a Member, the Articles shall be filed by the

25

legal or personal representatives of the Person who last was a Member.

## Article VIII
### Books, Records, Accounting, and Tax Elections

8.1.  *Bank Accounts*.  All funds of the Company shall be deposited in a bank account or accounts opened in the Company's name.  The General Manager shall determine the institution or institutions at which the accounts will be opened and maintained, the types of accounts, and the Persons who will have authority with respect to the accounts and the funds therein.

8.2.  *Books and Records*.

8.2.1.  The General Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the Company's business.  The records shall include, but not be limited to:

(1)  a current alphabetized list of the names and addresses of all of the members, as well as the contribution and the share of profits and losses of each member or information from which such share can be readily derived;

(2)  if the firm is managed by a manager or managers, a current alphabetized list of the names and addresses of the managers;

(3)  a copy of the articles of organization and all amendments thereto or restatements thereof, together with executed copies of any powers of attorney pursuant to which any certificate or amendment has been executed;

(4)  a copy of the operating agreement and any amendments thereto and any amended and restated operating agreement; and

(5)  a copy of the Company's federal, state, and local income tax or information returns and reports, if any, for the three most recent fiscal years.

26

8.2.2.   The books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

8.2.3.   Each Member shall reimburse the Company for all costs and expenses incurred by the Company in connection with the Member's inspection and copying of the Company's books and records.

8.3.   *Annual Accounting Period.*   The annual accounting period of the Company shall be its taxable year.   The Company's taxable year shall be selected by the General Manager, subject to the requirements and limitations of the Code.

8.4.   *Reports.*   Within seventy-five (75) days after the end of each taxable year of the Company, the General Manager shall cause to be sent to each Person who was a Member at any time during the taxable year then ended:   (i) an annual compilation report, prepared by the Company's independent accountants in accordance with standards issued by the American Institute of Certified Public Accountants; and (ii) a report summarizing the fees and other remuneration paid by the Company to any Member, the General Manager, or any Affiliate in respect of the taxable year.   In addition, within seventy-five (75) days after the end of each taxable year of the Company, the General Manager shall cause to be sent to each Person who was an Interest Holder at any time during the taxable year then ended, that tax information concerning the Company which is necessary for preparing the Interest Holder's income tax returns for that year.   At the request of any Member, and at the Member's expense, the General Manager shall cause an audit of the Company's books and records to be prepared by independent accountants for the period requested by the Member.

8.5.   *Tax Matters Member.*   The Members shall designate a Member to be the Company's tax matters partner pursuant to Code Section 6231(a)(7) ("Tax Matters Member").   The Tax Matters Member shall have all powers and responsibilities provided in Code Section 6221, *et seq.*   The Tax Matters Member shall keep all Members informed of all notices from government taxing authorities which may come to the attention of the Tax Matters Member. The Company shall pay and be responsible for all reasonable third party costs and expenses incurred by the Tax Matters Member in performing those duties.   A Member shall be

27

responsible for any costs incurred by the Member with respect to any tax audit or tax-related administrative or judicial proceeding against any Member, even though it relates to the Company.  The Tax Matters Member shall not compromise any dispute with the Internal Revenue Service without the approval of the Members.

8.6.  *Tax Elections*.  The Tax Matters Member hall have the authority to make all Company elections permitted under the Code, including, without limitation, elections of methods of depreciation and elections under Code Section 754.  The decision to make or not make an election shall be at the Tax Matters Member's sole and absolute discretion.

8.7.  *Title to Company Property*.

8.7.1.  Except as provided in Section 8.7.2, all real and personal property acquired by the Company shall be acquired and held by the Company in its name.

8.7.2.  The General Manager may direct that legal title to all or any portion of the Company's property be acquired or held in a name other than the Company's name provided, that the Company is and remains the beneficial owner of any such property.  Without limiting the foregoing, the General Manager may cause title to be acquired and held in its name or in the names of trustees, nominees, or straw parties for the Company.  It is expressly understood and agreed that the manner of holding title to the Company's property (or any part thereof) is solely for the convenience of the Company and all of that property shall be treated as Company property.

### Article IX
### General Provisions

9.1.  *Assurances*.  Each Member shall execute all certificates and other documents and shall do all such filing, recording, publishing, and other acts as the General Manager deems appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules, and regulations relating to the acquisition, operation, or holding of the property of the Company.

9.2.  *Notifications*.  Any notice, demand, consent, election, offer, approval, request, or other communication

28

(collectively a "notice") required or permitted under this Agreement must be in writing and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested or by facsimile transmission, provided receipt of facsimile transmission is actually acknowledged by the member or member's agent. Any notice to be given hereunder by the Company shall be given by the General Manager. A notice must be addressed to a Member at the Member's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice that is sent by mail will be deemed given three (3) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees. A notice sent by facsimile is deemed given when receipt is acknowledged.

9.3. *Specific Performance*. The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

9.4. *Complete Agreement*. This Agreement constitutes the complete and exclusive statement of the agreement among the Members with respect to the subject matter thereof. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of a majority of the Members. Notwithstanding the foregoing, any modification of the terms of this Agreement which increases the obligations of a Member or decrease the rights of a Member may not be made without the prior written consent of the Member affected by such modification.

9.5. *Applicable Law*. All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of New York.

29

9.6.   *Article and Section Titles*.   The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

9.7.   *Binding Provisions*.   This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and permitted assigns.

9.8.   *Exclusive Jurisdiction and Venue*.   Any suit involving any dispute or matter arising under this Agreement or relating to the organization or operation of the Company may only be brought in a United States District Court located in the State of New York or any New York State Court having jurisdiction over the subject matter of the dispute or matter.   All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding and waive any objection to venue or inconvenient forum.

9.9.   *Terms*.   Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the identity of the Person may in the context require.

9.10.   *Separability of Provisions*.   Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

9.11.   *Counterparts*.   This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document.   The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

9.12.   *Estoppel Certificate*.   Each Member shall, within ten (10) days after written request by the General Manager, deliver to the requesting Person a certificate stating, to the Member's knowledge, that:   (a) this Agreement is in full force and effect;  (b) this Agreement has not been modified except by any instrument or instruments identified in the certificate; and (c) there is no default hereunder by the requesting Person, or if there is a default, the nature and extent thereof.   If the

G:\Legal\Entities\BCC II, LLC\OPERATING AGREEMENT.1.doc

## Exhibit A
## List of Members, Capital, and Units

| Name, Address and Taxpayer I.D. Number | Initial Cash Capital Contribution | Units |
|---|---|---|
| JK Capital, LLC<br><br>c/o Blumenfeld Development<br>    Group, Ltd.<br>6800 Jericho Turnpike<br>Syosset, NY  11791<br>Tax I.D. No. 11-3594078 | $350,000 | 280 |
| BDG Lake Success, LLC<br>c/o Blumenfeld Development<br>    Group Ltd.<br>6800 Jericho Turnpike<br>Syosset, NY  11791<br>Tax I.D. No. 11-3555258 | $150,000 | 120 |

32

certificate is not received within that ten (10) day period, the General Manager shall execute and deliver the certificate on behalf of the requested Member, without qualification, pursuant to the power of attorney granted in Section 5.6.

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, under seal, as of the date set forth hereinabove.

GENERAL MANAGER:

BDG ASSET MANAGEMENT, INC.

By:
Name:   David Blumenfeld
Title: Vice President

JK Capital, LLC

By: BDG Asset Management, Inc.
    its General Manager

By:
Name: David Blumenfeld
Title: Vice President

BDG Lake Success, LLC

By: BDG Asset Management, Inc.
    its General Manager

By:
Name: David Blumenfeld
Title: Vice President

31

EXHIBIT B

BCC II, LLC
SUBSCRIPTION NOTE

$_____                    Syosset, New York    November 1, 2000

For value received, the undersigned, as maker of this Note
(the "Maker"), promises to pay to BCC II, LLC (the "Company"),
or    order,    the    sum    of    _____    Dollars
($_____) which shall be payable on or before December 31,
2005, and which shall bear interest at the rate of six percent
(6%) per annum.  Interest will be paid quarterly by Maker to the
Company from the Maker's share of the Company's net operating
revenues.  To the extent such revenues are not available or are
insufficient, such unpaid interest shall accrue.  All accrued
and unpaid interest shall be due and payable on December 31,
2005 (the "Due Date").  The Note shall be immediately due and
payable upon the occurrence of a Capital Transaction to the
extent of Capital Proceeds actually received by the Maker.  The
terms "Capital Transaction" and "Capital Proceeds" shall have
the meanings set forth in the Operating Agreement of the Company
dated as of the date hereof.

This Note is the payment of the non-cash portion of the
capital contribution to be paid by the Maker for subscription of
his limited liability company interest in the Company.  The
payment set forth herein shall be made in lawful money of the
United States of America to JK Capital, LLC at 6800 Jericho
Turnpike, Syosset, New York 11791 or at such other place
designated in writing by the payee, BCC II, LLC, at least ten
(10) days prior to any payment date set forth herein.

The Maker has the right to make payments of principal at
any time before they are due.  A payment of principal only is
known as "prepayment."  When the Maker makes a prepayment, it
will tell the Company in writing that it is doing so.  The Maker
may make a full prepayment or partial prepayments without paying
any prepayment charge.  The Company will use all of the Maker's
prepayments to reduce the amount of principal that the Maker
owes under this Note.  If the Maker makes a partial prepayment,
there will be no changes in the due date unless the Company
agrees in writing to those changes.

33

G:\Legal\Entities\BCC II, LLC\OPERATING AGREEMENT.2.doc

As Collateral for the payment of this Note, and for the payment and performance of all liabilities and obligations of the Maker to the Company, the Maker hereby pledges, transfers, assigns, grants a security interest in and delivers to the Company all of the Maker's right, title and interest as a Member in the Company.

The following shall be an Event of Default hereunder:

(i)    the failure to pay when due any installment of interest or principal of this Note;

(ii)    the failure to keep and perform any of the covenants or agreements contained in any of the aforementioned instruments; and

(ii)    the issuance of any writ of garnishment, or writ of attachment, or writ of injunction, or summons against the holder of this Note in connection with any suit or controversy involving the Maker, any surety, endorser or guarantor of this Note, or to which the Maker, any surety, endorser or guarantor of this Note may be made a party, or in any of said events.

Upon the occurrence of any such Event or Default, all of the unpaid principal balance hereof, together with unpaid interest accrued shall, at the election of the holder hereof, and without notice, immediately become due and payable.

All principal past-due under the terms of this Note shall bear interest from their maturity at the rate of twelve percent (12%) per annum, but not in excess of the highest lawful rate allowed by law.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion.

34

If any term or provision hereof is held to be illegal or invalid
for any reason whatsoever, this Note shall be reformed so that
such term or revision is legal or valid to the maximum extent
possible and such illegality or invalidity shall not affect the
validity of the remainder of this Agreement.

JK Capital, LLC

By: BDG Asset Management, Inc., its
    General Manager

By: _____
    Name:
    Title:

35

## DECLARATION OF SERVICE

State of New York, County of New York )ss:

Ramsey Hinkle an attorney admitted to practice in the courts of New York, hereby declares:

I am not a party to this action, am over 18 years of age and am an associate at the law office of Clayman & Rosenberg, LLP 305 Madison Avenue, New York, New York 10165.

On January 6, 2010, I served a true copy of the annexed OBJECTIONS TO TRUSTEES DETERMINATIONS by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee for that purpose. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

VIA FEDERAL EXPRESS
Irving H. Picard, Trustee
c/o Baker and Hostetler LLP
45 Rockefeller Plaza – 11th Floor
New York, New York 10111

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on:   January 6, 2010
            New York, New York

_____
Ramsey Hinkle