BERNFELD, DEMATTEO & BERNFELD LLP
by David B. Bernfeld and Jeffrey L. Bernfeld
*Attorneys for Eric Berniker*
600 Third Avenue
New York, New York 10016
(212) 661-1661

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA LIQUIDATION |

### OBJECTIONS TO TRUSTEE'S DETERMINATION OF CLAIM

**ERIC BERNIKER,** (the "Claimant"), by his attorneys, **BERNFELD, DEMATTEO & BERNFELD, LLP** hereby files the following Objections to a Determination Letter received from Irving Picard, as Trustee, dated December 8, 2009, rejecting Claimant's claim in its entirety.

### BACKGROUND

1.  On or about December 11, 2008, Plaintiff commenced the instant action against Bernard L. Madoff Investment Securities, LLC ("BLMIS") to liquidate BLMIS pursuant to the provisions of the Securities Investor Protection Act of 1970 ("SIPA").

2.  By Court order dated December 15, 2008, Irving Picard was appointed to act as the trustee (the "Trustee") to oversee and administer the liquidation of BLMIS in accordance

with the SIPA statute.

3. Pursuant to order dated December 23, 2008 (the December 23 Order"), the Court directed the Trustee :

    a. to disseminate and make available notice and claim forms to BLMIS customers for the filing of Customer Claims in the BLMIS Liquidation;

    b. to advise Customers of the relevant claim-filing cut off dates;

    c. to determine in writing all filed customer claims, and to the extent that the Trustee disallowed any claim, whether in whole or in part, to provide the reason for such disallowance.

4. Claimant has previously submitted a written customer claim to the Trustee ( the "Claim") with respect to his Madoff investment through the Rye Select Broad Market Prime fund ("Rye Select").

5. By letter dated December 8, 2009 (the "Determination Letter"), and received thereafter by Claimant, the Trustee rejected and disallowed the Claim in its entirety.

6. The sole stated basis in the Determination Letter for this denial is that Claimant allegedly did not have an account with BLMIS and was "not a customer of BLMIS under SIPA as that term is defined" by SIPA.

**GROUNDS FOR OBJECTIONS**

7. Claimant disagrees and disputes the Trustee's factual conclusions and assumptions and affirmatively alleges that under the specific facts and circumstances presented, Claimant is, and is entitled to be treated as, a customer of BLMIS for SIPA purposes.

8. Upon information and belief, the Trustee's allegation that Claimant was not a BLMIS customer is premised on the conclusion that Claimant's Madoff investment was made

through what the Trustee has previously characterized as a "feeder fund", although the Determination Letter does not specifically articulate that as the basis therefor.

9. However, as will be established at a hearing, that so-called feeder fund, in actuality, was acting merely as a conduit-an agency and affiliate for BLMIS-to receive and transmit funds to BLMIS for the purchase of securities.

10. As such, although Claimant's funds were maintained at BLMIS in an omnibus account established for administrative convenience, it was the understanding and intention of all of the parties to the transaction that Claimant's funds were invested with BLMIS and that in all material respects, Claimant was a customer of BLMIS' entitled to the protections afforded under SIPA.

11. For purposes of SIPA, the nominal account holder feeder fund should be treated as simply a conduit and agent for Madoff, and Claimant should be accorded *pro rata* customer status and treatment with respect to BLMIS in accordance with the intention of the parties and the transaction realities.

12. The SIPA statute (15 U.S.C. § 78lll(2)) has a specific definition of "customer" which, on these facts, includes Claimant:

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business, as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities...."

13.     It is well settled that when an investor delivers funds to an agent or affiliate of the debtor broker-dealer, for the purpose of having those funds transmitted to the broker-dealer to purchase securities, that investor is deemed a "customer" of the broker-dealer within the above SIPA definition.  See, e.g., *In re Old Naples Sec., Inc.* 233 F.3d 1296, 1302 (11th Cir. 2000) (customer status under SIPA is not determined based on who the investor delivered his or her payment, or even where those funds were initially deposited. "Instead the question is whether there was 'actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation'") (internal citation omitted).  See also, *In re Primeline Sec. Corp.,* 295 F.3d 1100 at 1107 (10th Cir. 2002).

14.     Consistent with the stated congressional purpose of SIPA to focus on reasonable customer expectations, when, as here, funds are deposited with a conduit entity for the specific purpose of having it delivered to the debtor/broker dealer (here, BLMIS), SIPA's "customer" includes the ultimate beneficial customer such as this Claimant.

15.     The Trustee has recognized in related litigations that various "feeder funds" were simply functional conduits for the transmission of customer funds from the individual investors to BLMIS.

16.     Claimant invested the funds covered by his Claim with the specific understanding and intention that it would be transmitted for securities investment by BLMIS.

17.     Claimant's account with the feeder fund in fact reflected the transactions and values that BLMIS reported to the feeder fund as having been executed for the benefit of customers, including the Claimant.

18.     Claimant's net BLMIS investment on the SIPA filing date was in excess of

4

$500,000. Accordingly, if Claimant is accorded customer status, as SIPA requires, Claimant's SIPA net equity would be in excess of $500,00 and Claimant is therefore entitled to (i) have his Claim allowed in full; (ii) receive an immediate SIPA payment of $500,000, and (iii)participate *pro rata* in any future distribution of "customer property" to the customers of BLMIS.

## DEMAND FOR A HEARING

19. In the Trustee's December 8, 2009, determination letter denying Claimant's claim, the Trustee advises that if a claimant disagrees with the Trustee's determination, the claimant is entitled to file written objections and to have a hearing before the court to determine the objections.

20. Claimant does disagree with the Trustee's determination denying Claimant's claim and this **OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM** is intended as, and shall constitute Claimant's disagreement with said determination and demand for a hearing to determine that disagreement.

21. Claimant hereby incorporates by reference as if annexed as exhibits hereto all prior submissions and documents heretofore submitted by Claimant to the Trustee

Dated: January 6, 2009

              Bernfeld, Dematteo & Bernfeld, LLP

              By:_____
               David Bernfeld (DBB-0177)
              Attorneys for Claimant Eric Berniker
              600 Third Avenue
              New York, New York 10016
              (212) 661-1661