CLAYMAN & ROSENBERG
Seth L. Rosenberg   (SR4563)
Paul S. Hugel       (PH4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:      (212) 949-8255

*Attorneys for 500 Bi-County Associates, L.P.*
(BLMIS Account No. 1-B0081 designated Claim Number 011046)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION          :
CORPORATION,

                                        :        Adv. Pro. No. 08-01789(BRL)

                Plaintiff,

                                        :

        -against-

                                        :        SIPA Liquidation

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,                         :

                Defendant               :

-------------------------------------------------------X

### OBJECTION TO TRUSTEE'S DETERMIMNATION OF CLAIM

500 Bi-County Associates, L.P. ("Objector"), by counsel, CLAYMAN & ROSENBERG,

hereby objects to the Notice of Trustee's Determination of Claim dated December 8, 2009 (the

"Determination Letter"), appended hereto as Exhibit A, as set forth herein.

## BACKGROUND

1.      Objector is a "Customer" as that term is defined by the Securities Investor

Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS").

2.      Objector was and is a member of Bull Market Fund, a general partnership

organized in the State of New York in 1986.

3.      The Bull Market Fund partnership was organized with the knowledge and

encouragement of BMLIS for the purpose of consolidating the bookkeeping for the investment

of certain small investors with BLMIS.

4.      Bull Market Fund received a final statement from BLMIS which indicated that

Bull Market Fund owned securities valued at $36,833,462.86.

5.      On or about December 31, 2008, Objector received a statement from Bull Market

Fund which indicated that Objector's funds invested by Bull Market Fund in BLMIS were

valued at $493,177.

6.      On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

Irving Picard was appointed Trustee ("BLMIS Trustee") with oversight of the liquidation of

BLMIS and responsibility for processing customer claims for money pursuant to SIPA.

7.      By Order dated December 23, 2008, the Court directed the Trustee to disseminate

notice and claim forms to BLMIS customers and set forth claim-filing deadlines.  The Order

further authorized the Trustee, *inter alia*, "to satisfy, within the limits provided by SIPA, those

portions of any and all customer claims and accounts which agree with the Debtor's books and

records," and provided that, where the BLMIS Trustee disagrees with the amount claimed in a

2

customer's claim form, the BLMIS Trustee, "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor…"

8.      On or about June 23, 2009, Objector timely submitted a customer claim form to SIPC setting forth his claim in the amount of $493,177 ("Objector's claim"). Objector's claim cross-referenced the BLMIS account of Bull Market Fund. A copy of Objector's claim form is appended hereto as Exhibit B.

9.      On December 8, 2009, the BLMIS Trustee sent Objector a Determination Letter denying Objector's claim, "in its entirety." Exhibit A. The Determination Letter stated, in part, "Based upon a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. Section 78111 (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**."

10.     Objector objects to the BLMIS Trustee's disallowance of his claim for the reasons set forth hereinbelow.

## GROUNDS FOR OBJECTION

11.     First:        The Trustee's definition and application of the term, "account" as set forth in the Determination Letter is incorrect.

12.     Second:       The Trustee's definition and application of the term, "customer" as set forth in the Determination Letter is incorrect.

13.     Objector reserves the right to revise or amend this Objection. Objector's failure to assert an objection on a particular ground or grounds shall not be construed as a waiver of its right to object or join in the objection of other claimants on any additional grounds.

14.     Objector reserves all rights set forth in Rule 9014.

3

15.    Objector incorporates herein by reference all claims and reservations of rights set forth in Objector's claim form. Exhibit B.

## RELIEF SOUGHT

16.    Objector's claim should be allowed in its entirety.

17.    The Court should direct SIPC to pay Objector the full amount of Objector's claim together with interest thereon commencing not later than the date of the Determination Letter.

18.    Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
      January 6, 2010

CLAYMAN & ROSENBERG
By:    Seth L. Rosenberg (SR 4563)
      Paul S. Hugel    (PH 4749)
305 Madison Avenue
New York, NY 10165
Telephone:    (212) 922-1080
Telefax:      (212) 949-8255
rosenberg@clayro.com
hugel@clayro.com

4

EXHIBIT A

DETERMINATION LETTER

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

500 BI-COUNTY ASSOCIATES, L.P.
6800 JERICHO TURNPIKE
SYOSSET, NY 11791

Dear 500 BI-COUNTY ASSOCIATES, L.P.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 011046:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and


Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111


_Irving Picard_

_____
**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC


cc:  DAVID KAPLAN
     300 ROBBINS LANE
     SYOSSET, NY 11791

EXHIBIT B

CUSTOMER CLAIM FORM

**500 BI-COUNTY ASSOCIATES, L.P.**
**300 ROBBINS LANE**
**SYOSSET, NY 11791**

June 23, 2009

*Via UPS Overnight*

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, Texas 75201

Re:    Account Number:  1-B0081
       500 Bi-County Associates, L.P. through Bull Market Fund
       300 Robbins Lane
       Syosset, New York  11791

Dear Mr. Picard:

500 Bi-County Associates, L.P. is a partner in Bull Market Fund, which had an account with Bernard L. Madoff Investment Securities ("BLMIS"), Account No. 1-B0081.

It is our understanding that Bull Market Fund has submitted its own SIPC Customer Claim Form to your office.

We wish to submit our own personal SIPC Customer Claim Form at this time.  We are attaching the following:

1.  Our SIPC Customer Claim Form;
2.  Bull Market Fund's November 30, 2008 BLMIS statement;
3.  Our 2007 Schedule K-1;
4.  Our personal account balance as of December 11, 2008; and
5.  Amended and Restated Limited Partnership Agreement of 500 Bi-County Associates, L.P.

We reserve the right to amend or modify this claim if and to the extent warranted by facts and circumstances not presently known to us, or as a result of a subsequent determination by a court of competent jurisdiction with respect to any issue pertaining to our claim.

This letter is hereby incorporated by reference in and made a part of our SIPC Customer Claim Form.

Very truly yours,

500 Bi-County Associates, L.P.

By:  500 Bi-County, Ltd., its General Partner

By:
    Name:  Edward Blumenfeld
    Title:   Vice President



## Shipment Receipt

**Transaction Date:** 23 Jun 2009
**Tracking Number:** 1Z12X2361390257462

### Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Trustee for Bernard L. Madoff Sec. | Blumenfeld Dev. Group, Ltd. | Blumenfeld Dev. Group, Ltd. |
| Irving H. Picard, Esq. | BDG | BDG |
| 2100 McKinney Avenue | 300 Robbins Lane | 300 Robbins Lane |
| Suite 800 | Syosset NY 11791 | Syosset NY 11791 |
| Claims Processing Center | Telephone: 5169210800 | Telephone: 5169210800 |
| DALLAS TX 75201-6910 | | |

### Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | {Reference#1 - 01 lmc} |

### UPS Shipping Service and Shipping Options

**Service:**
UPS Next Day Air Saver
**Guaranteed By:**[1]:
3:00 P.M. Wednesday, 6/24/2009

| | |
|---|---|
| Shipping Fees Subtotal: | 20.15 USD |
| Transportation | 19.95 USD |
| Fuel Surcharge | 0.20 USD |

### Payment Information

Bill Shipping Charges to:          Shipper's Account 12X236

| Total Charged: | 20.15 USD |
|---|---|

Note: Your invoice may vary from the displayed reference rates.
[1] * For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for International services.

**Responsibility for Loss or Damage**
Unless a greater value is recorded in the declared value field as appropriate for the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. If additional protection is desired, a shipper may increase UPS's limit of liability by declaring a higher value and paying an additional charge. UPS does not accept for transportation and shipper's requesting service through the Internet are prohibited from shipping packages with a value of more than $50,000. The maximum liability per package assumed by UPS shall not exceed $50,000, regardless of value in excess of the maximum. Claims not made within nine months after delivery of the package (sixty days for International shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for International shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Tariff and the UPS Terms and Conditions of Service, which can be found at www.ups.com.

☒Close Window



# Tracking Detail

**Your package has been delivered.**

| | |
|---|---|
| Tracking Number: | 1Z 12X 236 13 9025 746 2 |
| Type: | Package |
| Status: | **Delivered** |
| Delivered On: | 06/24/2009  12:49 P.M. |
| Signed By: | DOSS |
| Location: | OFFICE |
| Delivered To: | 2100 MCKINNEY AVE 800 DALLAS, TX, US 75201 |
| Shipped/Billed On: | 06/23/2009 |
| Reference Number(s): | 01 LMC |
| Service: | NEXT DAY AIR SAVER |

**Package Progress**

| Location | Date | Local Time | Description |
|---|---|---|---|
| DALLAS, TX, US | 06/24/2009 | 12:49 P.M. | DELIVERY |
| | 06/24/2009 | 7:18 A.M. | OUT FOR DELIVERY |
| | 06/24/2009 | 6:40 A.M. | ARRIVAL SCAN |
| DALLAS/FT. WORTH A/P, TX, US | 06/24/2009 | 6:25 A.M. | DEPARTURE SCAN |
| | 06/24/2009 | 5:28 A.M. | ARRIVAL SCAN |
| LOUISVILLE, KY, US | 06/24/2009 | 4:37 A.M. | DEPARTURE SCAN |
| | 06/24/2009 | 12:47 A.M. | ARRIVAL SCAN |
| JAMAICA, NY, US | 06/23/2009 | 10:51 P.M. | DEPARTURE SCAN |
| | 06/23/2009 | 10:15 P.M. | ARRIVAL SCAN |
| UNIONDALE, NY, US | 06/23/2009 | 9:43 P.M. | DEPARTURE SCAN |
| | 06/23/2009 | 9:25 P.M. | ORIGIN SCAN |
| | 06/23/2009 | 7:09 P.M. | PICKUP SCAN |
| | 06/23/2009 | 7:08 P.M. | PICKUP SCAN |

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

500 BI-COUNTY ASSOCIATES, L.P.

Name of Customer:     THROUGH BULL MARKET FUND
Mailing Address:     300 ROBBINS LANE
City:     SYOSSET     State:  NY     Zip:  11791
Account No.:     BULL MARKET FUND'S ACCOUNT NO.: 1-B0081
Taxpayer I.D. Number (Social Security No.):     11-3203900

NOTE:     BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.     Claim for money balances as of December 11, 2008:

   a.     The Broker owes me a Credit (Cr.) Balance of     $   -0-

   b.     I owe the Broker a Debit (Dr.) Balance of     $   -0-

   c.     If you wish to repay the Debit Balance,

         please insert the amount you wish to repay and

         attach a check payable to "Irving H. Picard, Esq.,

         Trustee for Bernard L. Madoff Investment Securities LLC."

         If you wish to make a payment, **it must be enclosed**

         with this claim form.     $   -0-

   d.     If balance is zero, insert "None."     NONE

502180406                                        1

2.          Claim for securities as of December 11, 2008:

### PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X |  |
| b. | I owe the Broker securities |  | X |
| c. | If yes to either, please list below: |  |  |

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|  | SEE BULL MARKET FUND ACCOUNT STATEMENT | $493,177 * |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

*  PROVIDED BY BULL MARKET, SEE SUPPLEMENTAL CLAIM INFORMATION
   ATTACHMENT A

**NOTE:**    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X * |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: DAVID KAPLAN, 300 ROBBINS LANE, SYOSSET, NY  11791

502180406                                    3

\* SEE SUPPLEMENTAL CLAIM INFORMATION ATTACHMENT A

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

500 BI-COUNTY ASSOCIATES, L.P.
By: 500 Bi-County, Ltd., its General Partner

Date ___JUNE 23 , 2009___    Signature _____
Edward Blumenfeld, Vice President

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

SUPPLEMENTAL CLAIM INFORMATION
ATTACHMENT A

Claimant is filing this claim form as a customer of Bernard L. Investment Securities LLC ("BLMIS"), having invested in BLMIS through a partnership, Bull Market Fund ("BMF"). Pursuant to the partnership agreement of BMF and other written agreements amongst the Partners of BMF, BMF invested all of its funds with BLMIS. BMF has informed claimant that its customer account number with BLMIS was 1-B0081. BMF has also advised claimant that it is filing a customer claim for the losses in its customer account with BLMIS.

BMF typically issued quarterly statements showing each partner's account summary. In light of the BLMIS fraud, BMF issued a statement to each partner showing their closing balance as of December 10, 2008, a copy of which is enclosed. Claimant believes that as of December 11, 2008, the amount of claimant's investment was all held in the securities as shown on the November 30, 2008 BLMIS statement for BMF, a copy of which is also enclosed.

# BERNARD L. MADOFF
## INVESTMENT SECURITIES LLC
### New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET            NY  11791

| 1-B0081-3-0 | 11/30/08 | ******6934 | 1 |

| Date | Shares | Description | Amount | Balance |
|---|---|---|---|---|
| | | BALANCE FORWARD | | 1,428,340.08 |
| 11/06 | 2,808 | ABBOTT LABORATORIES | | |
| 11/06 | 4,992 | | 56,590 | 207,258.20 |
| 11/06 | 3,432 | AMGEN INC | 60,350 | |
| 11/06 | 2,496 | BOEING CO | 51,120 | 127,604.52 |
| 12/06 | 1,872 | | | 300,920.16 |
| 12/06 | 3,744 | BAXTER INTERNATIONAL INC | 60,680 | 140,134.70 |
| 11/06 | 6,240 | BANK OF NEW YORK MELLON CORP | 32,290 | 121,042.76 |
| 11/06 | 3,120 | BRISTOL MYERS SQUIBB COMPANY | 21,630 | 128,055.60 |
| 11/06 | 14,412 | | | |
| 11/06 | 9,360 | COMCAST CORP | 15,790 | 148,168.40 |
| | | CL A | | |
| 11/06 | | | | |
| 11/06 | 4,992 | | | |
| 11/06 | 4,680 | CVS CAREMARK CORP | 30,510 | 142,973.80 |
| 11/06 | 6,552 | CHEVRON CORP | 73,740 | 483,406.48 |
| 11/06 | 33,904 | | | |
| 11/06 | 624 | GOOGLE | 356,520 | 222,492.48 |
| 11/06 | 14,878 | GENERAL ELECTRIC CO | | |
| 11/06 | 18,113 | GOLDMAN SACHS GROUP INC | 91,870 | 114,702.76 |
| 11/06 | 5,616 | | | |
| 11/06 | 7,800 | | | |
| 11/06 | 4,368 | INTERNATIONAL BUSINESS MACHS | 92,800 | 405,524.40 |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| 1-B0081-3-0 | | 11/30/08 | | ******6934 | | 2 |

| DATE | | | NAME | DESCRIPTION | PRICE OR SYMBOL | | AMOUNT DEBITED | AMOUNT CREDITED |
|------|--|--|------|-------------|-----------------|--|----------------|-----------------|
| 11/06 | | 17,784 | | 16053 | INTEL CORP | 16.070 | | 286,499.88 | |
| 11/06 | | 9,648 | | 16288 | JOHNSON & JOHNSON | 61.310 | | 555,093.88 | |
| 11/06 | | 4,992 | | 16752 | J P MORGAN CHASE & CO | | | | |
| 11/06 | | 16755 | | KRAFT FOOD INC | 29.110 | | 145,556.12 | |
| 11/06 | | 6,240 | | 16993 | COCA COLA CO | 44.490 | | 277,866.60 | |
| 11/06 | | 3,744 | | 17228 | MCDONALDS CORP | 57.500 | | 216,926.00 | |
| 11/06 | | 3,744 | | 17463 | METLIFE INC | | | | |
| 11/06 | | 2,184 | | 17696 | SCHLUMBERGER LTD | 65.590 | | 143,409.69 | |
| 11/06 | | 6,552 | | 17933 | ALTRIA GROUP INC | 191.160 | | 125,798.32 | |
| 11/06 | | 6,864 | | 18168 | MERCK & CO | 30.780 | | 211,547.92 | |
| 11/06 | | 25,272 | | 18393 | MICROSOFT CORP | | | | |
| 11/06 | | 12,792 | | 18658 | ORACLE CORPORATION | | | | |
| 11/06 | | 2,808 | | 18943 | OCCIDENTAL PETROLEUM CORP | 54.290 | | 152,558.32 | |
| 11/06 | | 19518 | | PEPSICO INC | | | | |
| 11/06 | | 19811 | | PROCTER & GAMBLE CO | | | | |
| 11/06 | | 20046 | | PHILLIP MORRIS INTERNATIONAL | 42.730 | | 293,572.72 | |
| 11/06 | | 5,304 | | 20283 | QUALCOMM INC | 37.810 | | 200,796.24 | |
| 11/06 | | 20518 | | SCHLUMBERGER LTD | | | | |
| 11/06 | | 18,722 | | 20768 | AT&T INC | 26.980 | | 505,819.60 | |
| 11/06 | | 11,544 | | 21223 | TIME WARNER INC | 10.060 | | 116,593.64 | |
| 11/06 | | 4,820 | | 21468 | UNITED PARCEL SVC INC | 52.790 | | 164,828.80 | |
| 11/06 | | 5,616 | | 21653 | U S BANCORP | | | | |
| 11/06 | | 3,120 | | 21928 | UNITED TECHNOLOGIES CORP | 54.950 | | 171,474.40 | |
| | | | | | CONTINUED ON PAGE | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

FINANCIAL OPERATIONS HEADQUARTERS (LONDON)
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY    11791

| 1-B0081-3-0 | 11/30/08 | 3 | ******6934 |

| Date | | | | Description | | | | |
|---|---|---|---|---|---|---|---|---|
| 11/06 | 9,048 | | 22163 | VERIZON COMMUNICATIONS | 29.980 | 271,620.04 | | |
| 11/06 | 10,608 | | 22398 | WELLS FARGO & CO NEW | 33.660 | 357,489.28 | | |
| 11/06 | 7,176 | | 22035 | WAL-MART STORES INC | 56.780 | 406,750.55 | | |
| 11/06 | 16,848 | | 22800 | EXXON MOBIL CORP | | | | |
| 11/06 | | | | FIDELITY SPARTAN | | | | |
| 11/06 | | | | U S TREASURY MONEY MARKET | DIV | | | 2.54 |
| 11/06 | 1697894 | | 31040 | FIDELITY SPARTAN | | | | |
| 11/06 | | | | U S TREASURY MONEY MARKET | 1 | | | |
| 11/06 | | | | FIDELITY SPARTAN | | | | |
| 11/06 | 24,408 | 48166 | | U S TREASURY MONEY MARKET | | | | 24,408.00 |
| 11/06 | 4192579000 | 43599 | | U S TREASURY BILL | | | | |
| 11/06 | | | | DUE 12/11/2008 | | | | |
| 11/06 | 3,925,000 | 48600 | | U S TREASURY BILL | | | | |
| 11/06 | | | | DUE 12/11/2008 | | | | |
| 11/06 | 3,925,000 | 48824 | | U S TREASURY BILL | 99.960 | | 3,923,430.00 |
| 11/06 | | | | DUE 12/18/2008 | | | | |
| 11/06 | 3,925,000 | 49033 | | U S TREASURY BILL | 99.946 | | 3,923,880.50 |
| 11/06 | | | | DUE 01/15/2009 | | | | |
| 11/06 | | | | U S TREASURY BILL | | | | |
| 11/06 | | | | DUE 01/22/2009     1/22/2009 | | | | |
| 11/06 | | | | CONTINUED ON PAGE     4 | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

MADF

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

285 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

MADOFF SECURITIES INTERNATIONAL Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

1-B0081-3-0    11/30/08    4    ******6934

| Date | | | | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 11/06 | 3,925,000 | 49461 | | U S TREASURY BILL DUE 01/29/2009 | 99.928 | |
| 11/06 | | 499611 | | U S TREASURY BILL DUE 12/12/2009 | 99.902 | |
| 11/06 | 2,575,000 | 50127 | | U S TREASURY BILL DUE 03/26/2009 | 99.751 | 2,568,588.25 |
| 11/06 | 2,575,000 | 50356 | | U S TREASURY BILL DUE 04/09/2009 | 99.726 | 2,567,944.50 |
| 11/07 | 1,704 | 25404 | | APPLE INC | 100.300 | |
| 11/07 | 3,456 | 23639 | | ABBOTT LABORATORIES | 56.590 | |
| 11/07 | 2,376 | 23876 | | AMGEN INC | 62.070 | |
| 11/07 | 1,728 | 24107 | | AMGEN INC | 61.740 | |
| 11/07 | 1,296 | 24579 | | BAXTER INTERNATIONAL INC | 62.070 | |
| 11/07 | 3,376 | 24814 | | BANK OF NEW YORK MELLON CORP | 34.110 | |
| 11/07 | 4,320 | 25049 | | ANHEUSER BUSCH COS INC | 84.490 | |
| 11/07 | 1,512 | 25284 | | CITI GROUP INC | 14.410 | |
| 11/07 | 11,664 | 25519 | | CITI GROUP INC | 14.410 | 168,544.24 |

3,922,174.00

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

1-B0081-3-0          11/30/08          5

\*\*\*\*\*\*6934

| Date | Quantity | Symbol | Description | Price | Amount |
|---|---|---|---|---|---|
| 11/07 | 6,264 | 25754 | COMCAST CORP CL A | 17.390 | 109,180.96 |
| 11/07 | 3,240 | 25282 | CONOCOPHILLIPS | | |
| 11/07 | 12,744 | 26229 | CISCO SYSTEMS INC | | |
| 11/07 | 3,024 | 26459 | CVS CAREMARK CORP | 31.720 | 96,041.28 |
| 11/07 | 4,536 | 26520 | CHEVRON CORP | 75.450 | |
| 11/07 | 4,104 | 26520 | GENERAL ELECTRIC CO | | |
| 11/07 | 22,680 | 26520 | AT&T INC | | |
| 11/07 | 432 | 27399 | GOOGLE | | |
| 11/07 | 864 | 27636 | GOLDMAN SACHS GROUP INC | 150,854.12 | |
| 11/07 | 3,672 | 27765 | HOME DEPOT INC | | |
| 11/07 | 5,400 | 28170 | HEWLETT PACKARD CO | | |
| 11/07 | 3,024 | 28339 | INTERNATIONAL BUSINESS MACHS | 92.430 | |
| 11/07 | 12,096 | 28574 | INTEL CORP | | |
| 11/07 | 6,048 | 28809 | JOHNSON & JOHNSON | | |
| 11/07 | 3,240 | 29047 | JP MORGAN CHASE & CO | | |
| 11/07 | 3,240 | 29279 | KRAFT FOODS INC | | |
| 11/07 | 4,320 | 29514 | COCA COLA CO | 29.710 | |
| 11/07 | 2,376 | 29743 | MCDONALDS CORP | | |
| 11/07 | 3,456 | 29976 | MEDTRONIC INC | | |
| 11/07 | 1,512 | 30219 | 3M COMPANY | 64.680 | |
| 11/07 | 4,536 | 30456 | ALTRIA GROUP INC | 19.370 | 88,156.56 |
| 11/07 | 17,280 | 30693 | MICROSOFT CORP | | |
| 11/07 | 8,640 | 31159 | ORACLE CORPORATION | 18.470 | 159,925.80 |

CONTINUED ON PAGE 6

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY     11791

| | | | |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | ******6934 | 6 |

| DATE | | | DESCRIPTION | | | |
|---|---|---|---|---|---|---|
| 11/07 | 1,728 | 31864 | OCCIDENTAL PETROLEUM CORP. | 54,380 | 94,037.64 | |
| 11/07 | 4,456 | 32099 | PEPSICO INC | 54,630 | 202,763.28 | |
| 11/07 | 1,928 | 32275 | | 16 | 434,771.100 | |
| 11/07 | 6,896 | 32565 | PROCTER & GAMBLE CO | 65,200 | 450,782.29 | |
| 11/07 | 4,536 | 32804 | PHILLIP MORRIS INTERNATIONAL | 43,640 | 198,132.04 | |
| 11/07 | 3,672 | 33093 | QUALCOMM INC | 37,690 | 138,763.68 | |
| 11/07 | 2,352 | 33270 | SCHLUMBERGER LTD | | | |
| 11/07 | 12,528 | 33509 | | | | |
| 11/07 | 7,776 | 33744 | TIME WARNER INC | 10,110 | 78,926.36 | |
| 11/07 | 2,360 | 33979 | UNITED PARCEL SVC. INC. | 53,680 | 116,036.80 | |
| 11/07 | 3,088 | | U S BANCORP | | | |
| 11/07 | 2,160 | 34449 | UNITED TECHNOLOGIES CORP. | 56 | 109,066.96 | |
| 11/07 | 6,048 | 34684 | VERIZON COMMUNICATIONS | 31,810 | 121,647.00 | |
| 11/07 | 7,848 | | WELLS FARGO & CO NEW | | 192,627.88 | |
| 11/07 | 4,968 | 35354 | WAL-MART STORES INC | | 280,557.12 | |
| 11/07 | 11,448 | 35589 | EXXON MOBIL CORP. | 75,280 | 862,262.44 | |
| | | | FIDELITY SPARTAN | DIV. | | |
| 11/07 | | | U S TREASURY MONEY MARKET | | | .34 |
| 11/07 | 18,784 | 10883 | FIDELITY SPARTAN | 1 | | 18,784.00 |
| 11/07 | | | U S TREASURY MONEY MARKET | | | |
| 11/07 | 18,975,000 | | DUE 02/05/09 | 99.923 | | 18,784,000.25 |
| | | | CONTINUED ON PAGE | 2/05/2009 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| | | 1-B0081-3-0 | 11/30/08 | 7 | ******6934 |
|---|---|---|---|---|---|

| DATE | BOUGHT / RECEIVED | SOLD / DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED / CREDITED |
|---|---|---|---|---|---|
| 11/07 | | 2,450,000 | 11382 U S TREASURY BILL DUE 02/19/2009 | 99.887 | 2,447,231.50 |
| 11/07 | | 2,450,000 | 11597 U S TREASURY BILL DUE 02/26/2009 | 99.889 | |
| 11/07 | | 2,450,000 | 11838 U S TREASURY BILL DUE 03/05/2009 | 99.866 | |
| 11/07 | | 12010 | U S TREASURY BILL | | 2,446,080.00 |
| 11/07 | 1,175,000 | 12141 | U S TREASURY BILL DUE 04/16/2009 | 99.840 | 1,171,710.00 |
| 11/07 | 1,175,000 | 12541 | U S TREASURY BILL DUE 4/16/2009 | 99.720 | 1,171,710.00 |
| 11/07 | 301,155 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 301,155 |
| 11/10 | 2,376 | 35864 | APPLE INC | 108.720 | 258,413.72 |
| 11/10 | 4,224 | 36092 | ABBOTT LABORATORIES | 55.910 | 236,331.84 |
| 11/10 | 2,904 | 36569 | BOEING INC | | |
| 11/10 | 21,112 | 36569 | BOEING CO | | |
| 11/10 | 13,728 | 36804 | BANK OF AMERICA | 24.050 | 330,707.40 |

CONTINUED ON REVERSE

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madrid

Mayfair, London W1J 8DT
12 Berkeley Street
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD - EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | SECURITY | PRICE | AMOUNT DEBITED/CREDITED |
|------|-----------------|----------------|----------|-------|-------------------------|
| 11/10 | 1,848 | | BAXTER INTERNATIONAL INC | 60.770 | 112,375.96 |
| 11/10 | 3,160 | | | 33,480 | 109,190.66 |
| 11/10 | 1,544 | | BANK OF NEW YORK MELLON CORP | 23,400 | |
| 11/10 | 7,848 | | BRISTOL MYERS SQUIBB COMPANY | 24,090 | 189,305.56 |
| 11/10 | 15,048 | | ANHEUSER BUSCH COS INC | | 116,911.32 |
| 11/10 | 7,920 | 37979 | CITI GROUP INC | 14,270 | 215,335.96 |
| 11/10 | | 38244 | COMCAST CORP | 17,410 | 138,203.200 |
| 11/10 | 43,224 | | CONOCOPHILLIPS | 26,490 | |
| 11/10 | 16,104 | 38684 | CISCO SYSTEMS INC | 18,080 | 291,804.32 |
| 11/10 | 3,560 | 38919 | CVS CAREMARK CORP | 31,300 | 124,106.00 |
| 11/10 | 5,008 | | CHEVRON CORP | | |
| 11/10 | 5,688 | | THE WALT DISNEY CO | 26,600 | |
| 11/10 | 28,776 | 39624 | GENERAL ELECTRIC CO | 20,550 | 591,922.28 |
| 11/10 | | | GOOGLE | | 1,911,991.74 |
| 11/10 | | | GOLDMAN SACHS GROUP INC | | |
| 11/10 | 43,224 | | HOME DEPOT INC | 22,490 | |
| 11/10 | 6,864 | 40564 | HEWLETT PACKARD CO | 37,290 | 256,232.56 |
| 11/10 | | | INTERNATIONAL BUSINESS MACHS | 82,660 | 342,618.36 |
| 11/10 | 7,556 | | INTEL CORP | | |
| 11/10 | 10,032 | 41289 | JOHNSON & JOHNSON | | 419,036.336 |
| 11/10 | 4,224 | 41504 | J.P. MORGAN CHASE & CO | 41,730 | 127,310.40 |
| 11/10 | | | KRAFT FOOD INC | 30,100 | |
| 11/10 | | | COCA COLA CO | 43,500 | |
| 11/10 | 3,168 | 42209 | MCDONALDS CORP | 57,230 | 181,450.04 |
| 11/10 | 3,168 | 42444 | MEDTRONIC INC | 40,300 | 127,796.40 |

CONTINUED ON PAGE 9

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET           NY    11791

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| 1-B0081-3-0 | 11/30/08 | 9 |
| *******6934 | | |

| DATE | | | | DESCRIPTION | | |
|---|---|---|---|---|---|---|
| 11/10 | 1,848 | | 42679 | 3M COMPANY | 64,690 | 119,620.12 |
| 11/10 | 5,544 | | 42914 | ALTRIA GROUP INC. | 181,890 | 104,947.16 |
| 11/10 | 5,808 | | 42934 | MERCK & CO | | 171,413.08 |
| 11/10 | 21,936 | | 42986 | MICROSOFT CORP | 19,520 | 428,296.80 |
| 11/10 | 10,824 | | 43619 | ORACLE CORPORATION | 18,600 | 201,758.40 |
| 11/10 | 7,276 | | 43924 | OCCIDENTAL PETROLEUM CORP | 55,010 | 133,174.76 |
| 11/10 | 4,224 | | 44750 | PEPSICO INC | 72,580 | 249,359.20 |
| 11/10 | 8,184 | | 45029 | PFIZER INC | 14,560 | 207,392.64 |
| 11/10 | 5,544 | | 45266 | PROCTER & GAMBLE CO | 65,230 | 534,169.32 |
| 11/10 | 3,748 | | 45782 | PHILIP MORRIS INTERNATIONAL | 44,030 | 244,323.32 |
| 11/10 | 16,368 | | 45969 | QUALCOMM INC | 57,010 | 1647,625.32 |
| 11/10 | 9,504 | | 46304 | SCHLUMBERGER LTD | 206,500 | 1704,456.00 |
| 11/10 | | | | AT&T INC | 28,560 | 468,451.44 |
| 11/10 | | | | TIME WARNER INC | 11,010 | 105,010.04 |
| 11/10 | | | | UNITED PARCEL SVC INC | 54,420 | 245,273.08 |
| 11/10 | 4,752 | | 46674 | U.S. BANCORP | 31,510 | 149,925.52 |
| 11/10 | 2,640 | | 46904 | UNITED TECHNOLOGIES CORP | 56,430 | 149,080.20 |
| 11/10 | 7,920 | | 47575 | VERIZON COMMUNICATIONS | | 243,766.80 |
| 11/10 | 6,072 | | 47614 | WELLS FARGO & CO NEW | 54,600 | 331,929.60 |
| 11/10 | 14,256 | | 47849 | WAL-MART STORES INC | 55,710 | 338,513.12 |
| 11/10 | | | | EXXON MOBIL CORP | 75,800 | 1,081,174.80 |
| | | | | U.S. TREASURY SPARTAN | DIV | |
| | | | DIV 11/10/08 | U.S. TREASURY MONEY MARKET | | |

CONTINUED ON PAGE 10

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
[MADF] INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| Account Number | | | Date |
|---|---|---|---|
| 1-B0081-3-0 | 11/30/08 | ***-***6934 | 10 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 11/10 | | 30,199 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 30,199.00 |
| 11/10 | | 12,016 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 12,016.00 |
| 11/10 | | 2,600,000 | U S TREASURY BILL DUE 05/21/2009 | 99.859 | | 2,596,342.00 |
| 11/10 | | 2,575,000 | U S TREASURY BILL DUE 03/19/2009 | 99.834 | | 2,570,725.50 |
| 11/10 | 2,575,000 | 13,625 | U S TREASURY BILL DUE 03/19/2009 | 99.770 | 2,569,077.50 | |
| 11/10 | 3,975,000 | | U S TREASURY BILL DUE 04/09/2009 | 99.742 | 3,740,925.00 | |
| 11/10 | 1,145,000 | | U S TREASURY BILL DUE 04/16/2009 | 99.686 | 1,139,410.50 | |
| 11/10 | 50,000 | | U S TREASURY BILL DUE 04/16/2009 | 99.686 | 49,843.00 | |
| 11/10 | 685 | 14,508 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 685.00 | |
| 11/14 | | 14,281 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | 100,000.00 | |
| 11/14 | | | CHECK | | | |
| 11/14 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | DIV | | .05 |
| | | | CONTINUED ON PAGE 11 | | | |

CONTINUED ON PAGE 11

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

MADOFF SECURITIES INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY    11791

| 1-B0081-3-0 | 11/30/08 | *******6934 | 11 |

| Date | | | | | Description | | | |
|------|---|---|---|---|-------------|---|---|---|
| 11/14 | | 685 | 29993 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 685.00 |
| 11/18 | | | | | CHECK | CA | | 250,000.00 |
| 11/18 | | | | | CHECK | CA | | 15,000.00 |
| 11/18 | | | | | CHECK | CA | | 200,000.00 |
| 11/18 | | | | | CHECK | EA | | 200,000.00 |
| 11/18 | | | | | CHECK | CA | | 15,000.00 |
| 11/18 | | | | | U S TREASURY BILL DUE 4/16/2009 | | | 200,000.00 |
| 11/18 | | | | | U S TREASURY BILL DUE 4/16/2009 | | | 200,000.00 |
| 11/18 | | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | | |
| 11/18 | 450,000 | | 49954 | | U S TREASURY BILL DUE 4/16/2009 | 99.830 | 449,235.00 | |
| 11/18 | | | 49905 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | | |
| 11/18 | | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | | | |
| 11/19 | 20,839 | | 50057 | | FIDELITY SPARTAN U S TREASURY MONEY MARKET CONTINUED ON PAGE 2 | 1 | DIV. | 20,839.00 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

madoff securities international limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY  11791

1-B0081-3-0

11/30/08

\*\*\*\*\*\*\*6934

12

| DATE | | | | | | | AMOUNT |
|------|---|---|---|---|---|---|--------|
| 11/19 | 3,525,000 | | | | | | |
| 11/19 | | | 54708 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | | 3,522,391.50 |
| 11/20 | | | | U S TREASURY BILL DUE 3/26/2009 | 1 | CW | |
| 11/20 | 3,850,000 | | 59098 | FIDELITY SPARTAN U S TREASURY MONEY MARKET CHECK | 1 | | 675,000.00 |
| 11/20 | 91,120 | | 63699 | FIRST U S TREASURY BILL DUE 03/26/2009 | | | 91,120.00 |
| 11/20 | | | 63937 | U S TREASURY BILL DUE 3/26/2009 | 99.947 | | 2,848,489.50 |
| 11/20 | 171 | | 64175 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 171.00 |
| 11/25 | 820 | | 64417 | APPLE INC | | | |
| 11/25 | 1,568 | | 64655 | ABBOTT LABORATORIES | | | |
| 11/25 | 1,078 | | 64893 | AMGEN INC | | | |
| 11/25 | 4,899 | | 65131 | BANK OF AMERICA | | | |
| 11/25 | 1,176 | | 65369 | BANK OF NEW YORK MELLON CORP | | | |
| 11/25 | 1,960 | | 65607 | BRISTOL MYERS SQUIBB COMPANY | | | |
| 11/25 | 5,684 | | 65845 | CITIGROUP INC | | | |
| 11/25 | 490 | | 66083 | CHEVRON CORP | | | |
| 11/25 | 2,842 | | 66321 | COMCAST CORP CL A | | | |

CONTINUED ON PAGE 13

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                          NY    11791

| Account Number | Period Ending | Page |
|---|---|---|
| 1-B0081-3-0 | 11/30/08 | 13 |

Tax Payer ID Number: *******6934

| Date | Quantity | Security No. | Description | Price | Amount Debited/Credited to Your Account |
|---|---|---|---|---|---|
| 11/25 | 1,568 | 66797 | CONOCOPHILLIPS | 45.100 | 70,774.80 |
| 11/25 | 5,880 | 67035 | CISCO SYSTEMS INC | 17.970 | 88,258.60 |
| 11/25 | 1,470 | 57710 | CHEVRON CORP | | |
| 11/25 | 2,058 | 87511 | | | |
| 11/25 | 1,862 | 67749 | THE WALT DISNEY CO | 19.760 | 36,867.12 |
| 10/23 | 686 | 67097 | EXELON CORP | | 33,462.66 |
| 11/25 | 196 | 69225 | GENERAL ELEC CO | | |
| 11/25 | 1,666 | 68463 | GOOGLE | | |
| 11/25 | 1,323 | 68701 | HOME DEPOT INC | | |
| 11/25 | 2,450 | 68939 | HEWLETT PACKARD CO | 32,990. | 60,923.50 |
| 11/25 | 5,884 | 65177 | INTEL CORP | | |
| 11/25 | 2,842 | 69495 | JOHNSON & JOHNSON | | |
| 11/25 | 3,724 | 69653 | J.P. MORGAN CHASE & CO | | |
| 11/25 | 1,710 | 68991 | COCA COLA CO | 57.650 | |
| 11/25 | 1,960 | 70129 | APPLE INC | | 163,954.30 |
| 11/25 | 1,078 | 70557 | MEDTRONIC INC | | 103,526.24 |
| 11/25 | 1,176 | 70605 | MCDONALDS CORP | | |
| 11/25 | 686 | 70843 | PFIZER INC | | |
| 11/25 | 2,156 | 71031 | ALTRIA GROUP INC | | |
| 11/25 | 685 | 71319 | MERCK & CO | 25 | 36,267.80 |
| 11/25 | 7,840 | 71557 | MICROSOFT CORP | 18.100 | 142,211.00 |
| 11/25 | 9,320 | 71795 | ORACLE CORP | | 53,986.00 |
| 11/25 | 882 | 72177 | OCCIDENTAL PETROLEUM CORP | | 39,345.74 |
| 11/25 | 1,568 | 72985 | PEPSICO INC | 51.800 | 81,284.40 |

CONTINUED ON PAGE 14

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

1-B0083-3-0     11/30/08     14     *******6934

| DATE | BOUGHT | SOLD | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| 11/25 | 6,762 | 73223 | PFIZER INC | 15.320 | 103,863.84 | |
| 11/25 | 2,940 | 73461 | PROCTER & GAMBLE CO | 64.540 | 182,420.60 | |
| 11/25 | 2,058 | 72995 | PHILIP MORRIS INTERNATIONAL | 40.300 | | |
| 11/25 | 1,666 | 73931 | QUALCOMM INC | 29.850 | | |
| 11/25 | 1,176 | 74175 | SCHLUMBERGER LTD | 46.270 | | |
| 11/25 | 5,880 | 74443 | ATCA INC | 25 | | |
| 11/25 | 7,626 | 74659 | TIME WARNER INC | 8.010 | | |
| 11/25 | 980 | 74899 | UNITED PARCEL SVC INC | 50.970 | | |
| | | | CLASS B | | | |
| 11/25 | 1,764 | 75127 | U S BANCORP | 23.400 | 41,347.60 | |
| 11/25 | 980 | 75365 | UNITED TECHNOLOGIES CORP | 44.970 | | |
| 11/25 | 2,842 | 75603 | VERIZON COMMUNICATIONS | 28.570 | | |
| 11/25 | 3,822 | 75841 | WELLS FARGO & CO NEW | 23.820 | | |
| 11/25 | 2,254 | 76079 | WAL-MART STORES INC | 51.450 | | |
| 11/25 | 5,292 | 76317 | EXXON MOBIL CORP | 79 | | |
| 11/25 | | 76555 | FIDELITY SPARTAN | | | |
| | | | U S TREASURY MONEY MARKET | | | |
| 11/25 | 9,291,000 | 77306 | FIDELITY SPARTAN | 1 | | 9,291,000 |
| | | | U S TREASURY MONEY MARKET | | | |
| 11/25 | | 77306 | U S TREASURY BILL | 99.878 | | 3,720,455.50 |
| | | | DUE 1/15/2009 | | | |
| 11/25 | 42,963 | 77681 | FIDELITY SPARTAN | 1 | 42,963.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | DIV | DIV | | -93 |

CONTINUED ON PAGE   5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Main Document

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BERNARD L. MADOFF INVESTMENT SECURITIES LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                      NY  11791

1-B0081-3-0          11/30/08          *******6934          15

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|
| 11/26 | 5,000 | | CHECK | CA | | 5,000.00 |
| 11/26 | | 785.08 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 5,000.00 | |
| 11/28 | | 100 | 784.20 BAXTER INTERNATIONAL INC | 52,640 | 52,640.00 | |
| 11/28 | 50,000 | | CHECK | CK | | 50,000.00 |
| 11/28 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | DIV | | 2.26 |
| | | | DIV 11/28/08 | | | |
| 11/28 | 3,226 | 471,963 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 471,963.00 | |
| 11/28 | | 78257 | 70521 FIDELITY SPARTAN MONEY MARKET | | | 471,963.00 |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | NEW BALANCE | | 5,119,352.05 | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| | 53,496 | | AT&T INC | 28,566 | | |
| | 53,240 | | ABBOTT LABORATORIES | 52,390 | | |
| | 10,290 | | AIRGAS GROUP INC | 76,280 | | |
| | 9,790 | | AMGEN INC | 55,570 | | |
| | 8,010 | | APPLE INC | 92,670 | | |
| | 65,866 | | BANK OF AMERICA | 16,250 | | |
| | 10,652 | | BANK OF NEW YORK MELLON CORP | 31,120 | | |
| | 5,502 | | BAXTER INTERNATIONAL INC | 52,700 | | |
| | 6,336 | | BOEING CO | 42,630 | | |
| | | | CONTINUED ON PAGE 16 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                    NY   11791

| YOUR ACCOUNT NUMBER | 1-B0081-3-0 |
| DATE | 11/30/08 |
| PAGE | 16 |
| TAX ID | ******6934 |

BERNARD L. MADOFF INTERNATIONAL LIMITED
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| BOUGHT Received or Long | SOLD Delivered or Short | DESCRIPTION | PRICE/ SYMBOL | AMOUNT DEBITED/CREDITED |
|---|---|---|---|---|
| 18,064 | | BRISTOL MYERS SQUIBB COMPANY | 20.700 | |
| 13,134 | | CVS CAREMARK CORP | 28.930 | |
| 18,554 | | CHEVRON CORP | 79.500 | |
| 53,760 | | CISCO SYSTEMS INC | 16.540 | |
| 49,868 | | CITI GROUP INC | 8.290 | |
| 18,064 | | COCA COLA CO | 46.870 | |
| 490 | | COLGATE PALMOLIVE CO | | |
| 26,386 | | COMCAST CORP | 17.340 | |
| 14,024 | | CL A | | |
| 17,222 | | CONOCOPHILLIPS | 52.520 | |
| 606 | | TYCO INTERNATIONAL LTD | | |
| 47,844 | | EXELON CORP | 56.220 | |
| 95,624 | | EXXON MOBIL CORP | 80.150 | |
| 3,432 | | GENERAL ELECTRIC CO | 17.170 | |
| 1,760 | | GOLDMAN SACHS GROUP INC | | |
| 22,514 | | GOOGLE | | |
| 15,706 | | HEWLETT PACKARD CO | 35.280 | |
| 51,140 | | HOME DEPOT INC | | |
| 12,460 | | INTEL CORP | 23.110 | |
| 33,820 | | INTERNATIONAL BUSINESS MACHS | 81.600 | |
| 25,594 | | J.P. MORGAN CHASE & CO | 31.660 | |
| 13,924 | | JOHNSON & JOHNSON | 58.580 | |
| 10,366 | | MCDONALDS CORP | 59.510 | |
| 10,464 | | MEDTRONIC INC | 30.520 | |
| | | CONTINUED ON PAGE 17 | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

madoff securities international limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

1-B0081-3-0          11/30/08          *****6934          17

| BOUGHT/REC'D | SOLD OR DELIVERED | DESCRIPTION | PRICE | LONG | SHORT |
|---|---|---|---|---|---|
| 19,580 | | MERCK & CO | 26,720 | | |
| 71,776 | | MICROSOFT CORP. | 20,220 | | |
| 7,794 | | OCCIDENTAL PETROLEUM CORP | 54,140 | | |
| 36,176 | | ORACLE CORPORATION | 16,050 | | |
| 14,240 | | PEPSICO INC | 56,700 | | |
| 61,722 | | PFIZER INC | 16,430 | | |
| 19,002 | | PHILLIP MORRIS INTERNATIONAL | 42,140 | | |
| 27,492 | | PROCTER & GAMBLE CO | 64,660 | | |
| 15,130 | | QUALCOMM INC | 33,570 | | |
| 10,944 | | SCHLUMBERGER LTD | 50,740 | | |
| 3,226 | | | | | |
| | | U.S. TREASURY MONEY MARKET | | | |
| 6,230 | | 3M COMPANY | 66,930 | | |
| 22,050 | | TIME WARNER INC | 9,050 | | |
| 16,020 | | UNITEDHEALTH GROUP | 26,020 | | |
| 8,900 | | UNITED PARCEL SVC INC | 57,060 | | |
| | | CLASS B | | | |
| 25,158 | | UNITED TECHNOLOGIES CORP | 48,530 | | |
| 20,470 | | VERIZON COMMUNICATIONS | 32,650 | | |
| 30,750 | | WAL-MART STORES INC | 55,860 | | |
| 1,372 | | WELLS FARGO & CO NEW | 28,890 | | |
| | | WYETH | 36,010 | | |

MARKET VALUE OF SECURITIES          LONG          17,019,862.86          SHORT

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Main Document

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 0282

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET          NY   11791

| | 1-B0081-4-0 | 11/30/08 | *****6934 | 1 |

| DATE | BOUGHT RECEIVED-IN LONG | | | DESCRIPTION | | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 1,428,342.00 |
| 11/06 | | | 18872 | S & P 100 INDEX | | | |
| 11/06 | 312 | | 19108 | S & P 100 INDEX NOVEMBER '70 CALL | | 639,912.00 | |
| 11/07 | | | 31953 | S & P 100 INDEX NOVEMBER '460 PUT | | | |
| 11/07 | 216 | | 31629 | S & P 100 INDEX NOVEMBER '460 CALL | | 298,296.00 | |
| 11/10 | | | 43851 | S & P 100 INDEX NOVEMBER '460 PUT | | | |
| 11/10 | 264 | | 44089 | S & P 100 INDEX NOVEMBER '475 PUT | 16.800 | 443,784.00 | |
| 11/19 | | | 30166 | S & P 100 INDEX DECEMBER '620 PUT | | | |
| 11/19 | 792 | | 30303 | S & P 100 INDEX DECEMBER '620 PUT | 30 | 2,376,792.00 | |
| 11/19 | | | 30513 | S & P 100 INDEX NOVEMBER '70 CALL | | | |
| 11/19 | 264 | | 30779 | S & P 100 INDEX NOVEMBER '70 CALL | .900 | 24,024.00 | |
| 11/19 | | | 30901 | S & P 100 INDEX NOVEMBER '605 CALL | | | |
| 11/19 | 264 | | 31255 | S & P 100 INDEX NOVEMBER '605 PUT | 59 | 1,557,336.00 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

BULL MARKET FUND
F/K/A BLUMENFELD EMPLOYEES
C/O BLUMENFELD DEV GROUP LTD
300 ROBBINS LANE
SYOSSET                NY   11791

| | | | | |
|---|---|---|---|---|
| 1-B0081-4-0 | 11/30/08 | ******6934 | 2 | |

| DATE | DATE | BOUGHT | SOLD | DESCRIPTION | UNIT PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 11/25 | 11/25 | | 98 | S & P 100 INDEX DECEMBER 380 CALL | 34 | 333,102.00 | |
| | | 98 | 72033 | S & P 100 INDEX DECEMBER 570 PUT | 21 | 205,098.00 | |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | MKT. PRICE | | |
| | | 98 | | S & P 100 INDEX DECEMBER 380 CALL | 23,300 | | |
| | | 792 | | S & P 100 INDEX DECEMBER 430 CALL | 611 | | |
| | | 98 | | S & P 100 INDEX DECEMBER 380 PUT | 16,500 | | |
| | | 792 | | S & P 100 INDEX DECEMBER 430 PUT | 5,100 | | |
| | | | | S & P 100 INDEX DECEMBER 570 PUT | | | |
| | | | | MARKET VALUE OF SECURITIES LONG 1,956,760.00 SHORT 2,456,160.00 | | | $ 1,113,353.00 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

For calendar year 2007, or tax
year beginning _____
ending _____

# 2007

OMB No. 1545-0099

☐ Final K-1    ☐ Amended K-1

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See separate instructions.

**Part III  Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | |
|---|---|---|
| **1** Ordinary business income (loss) 0. | **15** Credits | |
| **2** Net rental real estate income (loss) | **16** Foreign transactions | |
| **3** Other net rental income (loss) | | |
| **4** Guaranteed payments | | |
| **5** Interest income 3,523. | | |
| **6a** Ordinary dividends 1,958. | **17** Alternative min tax (AMT) items | |
| **6b** Qualified dividends | | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) 18,469. | **18** Tax-exempt income and nondeductible expenses | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions | |
| **9c** Unrecaptured sec 1250 gain | **20** Other information | |
| **10** Net section 1231 gain (loss) | A 5,481. | |
| | W* 3,523. | |
| **11** Other income (loss) C 713. | | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| **14** Self-employment earnings (loss) | | |
| | *See attached statement for additional information. | |

## Part I  Information About the Partnership

**A** Partnership's employer identification number
11-2796934

**B** Partnership's name, address, city, state, and ZIP code

BULL MARKET FUND
300 ROBBINS LANE
SYOSSET, NY  11791

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number

11-3203900

**F** Partner's name, address, city, state, and ZIP code

500 BI-COUNTY ASSOCIATES, LP
300 ROBBINS LANE
SYOSSET, NY 11791

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I** What type of entity is this partner?  PARTNERSHIP

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | VARIOUS% | VARIOUS% |
| Loss | VARIOUS% | VARIOUS% |
| Capital | VARIOUS% | VARIOUS% |

**K** Partner's share of liabilities at year end:

Nonrecourse ................................... $ _____
Qualified nonrecourse financing ......... $ _____
Recourse ......................................... $           0.

**L** Partner's capital account analysis:

Beginning capital account .................. $     172,908.
Capital contributed during the year ...... $     178,500.
Current year increase (decrease) ......... $      24,663.
Withdrawals & distributions ............... $(               )
Ending capital account ....................... $     376,071.

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

*For IRS Use Only*

# MEMORANDUM

TO:            **500 Bi-County Associates, L.P.**

FROM:          Harvey Cohen

RE:            Bull Market Fund

DATE:          **December 31, 2008**

---

Please find below your balance in the Bull Market Fund as of December 10, 2008.  This includes your November 30, 2008 balance plus any additions, if applicable, made subsequent to November 30, 2008 and sent to Bernard L. Madoff Investment Securities, LLC.

Account Balance as of December 10, 2008:  $493,177

Please call me if I can be of further service.

JIG 1-30

## AMENDED AND RESTATED

## LIMITED PARTNERSHIP AGREEMENT

## OF

## 500 BI-COUNTY ASSOCIATES, L.P.

AGREEMENT made as of January **30**, 1995, by and between 500 BI-COUNTY LTD., a New York corporation having its principal place of business at 6800 Jericho Turnpike, Syosset, New York 11791 ("GP CORP") and the persons executing this document on the signature pages hereof as limited partners (each a **"Limited Partner"** and collectively the **"Limited Partners"**).

## W I T N E S S E T H :

WHEREAS, GP CORP and Ed Blumenfeld ("Blumenfeld") formed a limited partnership styled 500 BI-COUNTY ASSOCIATES, L.P. (hereafter, the "Partnership") on certain terms and conditions;

WHEREAS, the Limited Partners other than Blumenfeld desire to be admitted to the Partnership and GP Corp and Blumenfeld desire that the Limited Partners be admitted to the Partnership;

WHEREAS, GP CORP and the Limited Partners desire to amend and restate the Agreement of Limited Partnership of the Partnership on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto hereby agree to become partners, to continue the Partnership under the New York Revised Limited Partnership Act, Article 8-A of the Partnership Law of the State of New York (the **"Law"**) and to amend and restate the Agreement of Limited Partnership upon the following terms and conditions:

## ARTICLE 1

### PARTNERS, TERM, NAME, PURPOSE
### AND PLACE OF BUSINESS

1.1    <u>Continuation of Partnership</u>.    The parties hereto agree to continue the Partnership under the Law, as such Law may from time to time be amended, except to the extent any provision of the Law is inconsistent with any provision herein.  The Partnership shall be a partnership only for the purposes specified in Section 1.3 and shall not create or continue a partnership between the parties with respect to any other activities whatsoever.

1.2    <u>Name</u>. The name of the Partnership shall be 500 BI-COUNTY ASSOCIATES, L.P.  The business of the Partnership shall be conducted solely under such name and title to all assets of the Partnership shall be held in such name.

1.3    <u>Purposes of the Partnership</u>.

1.3.1   <u>The Property of the Partnership</u>.  Prior to the execution of this Agreement, the Partnership acquired the real property commonly known as 500 Bi-County Boulevard, Farmingdale, New York (hereinafter, the **"Real Estate"**) for a purchase price of approximately $1,600,000.00.  The Class A Limited Partners have contributed or are deemed to have

2

contributed $2,000,000 to the capital of the Partnership, which funds will be used in part to repay the previously advanced purchase price.

1.3.2 <u>Purposes</u>. The sole and only purposes of the Partnership are:

(a)  To acquire own, improve, mortgage, lease and manage the (i) Real Estate and (ii) any other asset, including other parcels of real estate incident to the Real Estate, hereafter acquired by the Partnership ("Additional Assets") pursuant to and in accordance with this Agreement;

(b)  To sell or otherwise transfer or dispose of the Real Estate and the Additional Assets, or any part thereof or interest therein (collectively, the "Property"), when and to the extent expressly permitted by this Agreement and not prohibited by other applicable agreement; and

(c)  To engage in such other activities as are reasonably incident to the foregoing.

1.4    <u>Partners</u>.

1.4.1 Unless and until a substitute or additional general partner is admitted to the Partnership in accordance with Article 7 or 8, the general partner of the Partnership shall be GP CORP (the holder of the general partnership interest in the Partnership is sometimes referred to herein as the "General Partner").

1.4.2 Unless and until one or more substitute or additional limited partners are admitted to the Partnership in accordance with Article 7, the Class A Limited Partners of the Partnership shall be those persons set forth on Exhibit A attached hereto designated as a Class A Limited Partner (the holder(s) of Class A Limited Partnership interests in the Partnership are sometimes referred to herein individually as a "Class A Limited Partner" or collectively as the "Class A Limited Partners").

3

1.4.3 Unless and until one or more substitute or additional limited partners are admitted to the Partnership in accordance with Article 7, the Class B Limited Partners of the Partnership shall be those persons set forth on Exhibit A attached hereto designated as a Class B Limited Partner (the holder(s) of Class B Limited Partnership interests in the Partnership are sometimes referred to herein individually as a **"Class B Limited Partner"** or collectively as the **"Class B Limited Partners"**).

1.4.4 The General Partner, the Class A Limited Partners and the Class B Limited Partners are sometimes referred to herein individually as a **"Partner"** or collectively as the **"Partners"**. The Class A Limited Partners and the Class B Limited Partners are sometimes referred to herein individually as a **"Limited Partner"** or collectively as the **"Limited Partners."**

1.4.5 For purposes of this Agreement, the term **"Affiliate"** shall mean any person or entity (a **"Person"**) who directly or indirectly controls, is controlled by or is under common control with a Partner or other Person, it being agreed that a Partner or other Person shall be deemed to control any entity in which such Partner or other Person is a director, officer or general partner or in which such Partner or other Person is the beneficial owner of 50% or more of the interests or voting power therein.

1.5   Partnership Filings.  The General Partner shall execute and file all documents required by the Law to be filed in connection with the continued existence of the Partnership and to preserve and maintain the limited liability of the Limited Partners.  The Partnership shall also qualify to do business as a foreign limited partnership in each state where such qualification is required.

4

1.6   <u>Place of Business</u>.   The principal place of business of the Partnership shall be at 6800 Jericho Turnpike, Syosset, New York 11791, or at such other location as may be selected by the General Partner from time to time.  The General Partner shall give notice to the Limited Partners of any change in the location of the principal place of business of the Partnership.

1.7   <u>Term</u>.   The Partnership was formed upon the filing of the Certificate of Limited Partnership (the "Certificate") in the office of the Secretary of State of the State of New York in accordance with the Law and shall continue until dissolved and liquidated pursuant to the provisions of Article 8 hereof.

1.8   <u>Registered Agent</u>.   The name and address of the registered agent and the office of the Partnership in the State of New York upon whom process may be served is _____.

1.9   <u>Liability of the Partners</u>.

1.9.1 The General Partner shall have unlimited liability for the satisfaction and discharge of all debts, liabilities, contracts and other obligations of the Partnership except as provided in the documents creating such obligations; provided that the General Partner shall not be liable for the return of any portion of the capital contribution of any Limited Partner, the return of which shall be made solely from Partnership assets.

1.9.2 Except as required by the Law, the Limited Partners shall not be liable for the debts, liabilities, contracts or other obligations of the Partnership.  The Limited Partners shall be liable only to make their capital contribution as herein specifically provided and shall not be required, after their capital contribution shall have been paid, to make any further capital contribution to the Partnership, or to lend any funds to the Partnership or to

5

repay to the Partnership, any Partner or any creditor of the Partnership any amount including any negative balance in such Limited Partners' Capital Account.

# ARTICLE 2

## CAPITAL CONTRIBUTIONS AND PERCENTAGE INTERESTS

### 2.1    Interests of Partners.

2.1.1 Subject to Articles 7 and 8 hereof, the respective interests of the Partners ("Percentage Interests") in the Partnership shall be as set forth on Exhibit A attached hereto opposite each Partner's name.

2.1.2 If the Percentage Interests of any Partners are changed pursuant to the terms of this Agreement during any calendar year, then the amount of all items to be credited, charged, allocated or distributed to such Partners for such entire calendar year in accordance with Percentage Interests in the Partnership shall be apportioned to the portion of such calendar year which precedes the date of such change and to the portion of such calendar year which occurs on and after the date of such change, in proportion to the number of days in each such portion. The amounts of the items so allocated to each such portion shall be credited, charged, allocated or distributed to such Partners in proportion to their Percentage Interests in the Partnership during each such portion of the calendar year in question.

2.1.3 In no event shall the General Partner's Percentage Interest as general partner be reduced to 1.01% or less unless the Partnership shall have first obtained an opinion of counsel expert in Federal income tax matters to the effect that such reduction will not cause adverse income tax consequences to the Partnership or the Partners thereof.

6

2.2    Capital Contributions.

2.2.1 The Partners have each contributed or are deemed to have contributed to the capital of the Partnership concurrently with or prior to the execution of this Agreement the amounts of cash or the fair market value of property, net of liabilities secured thereby, set forth on Exhibit A to this Agreement ("Capital Contributions"). For purposes of this Agreement, a Partner's "Unreturned Capital Contribution" means a Partner's Capital Contribution reduced by all amounts distributed to such Partner pursuant to Section 4.2.1.;

2.2.2 No Partner may withdraw any capital from the Partnership without the consent of all the other Partners.

2.2.3 Except as otherwise provided herein, no Partner shall have the right to demand or receive property, other than cash, in return for a capital contribution or have priority over another Partner, either as to the return of capital contributions or as to profits, losses or distributions, or as to compensation by way of income.

2.2.4 Except as set forth in Section 2.6, Partner shall be entitled to interest of any kind on its Capital Contribution.

2.2.5 Except with the express written consent of all of the Partners or as provided in Section 8.3.3, no Partner shall be required to contribute any additional cash or property to the capital of the Partnership.

2.3    Capital Accounts.  A capital account ("Capital Account") has and shall be maintained for each Partner on the books of the Partnership in accordance with the provisions of Treasury Regulation section 1.704-1(b)(2)(iv) as such regulation is in effect on the date hereof.  Without limiting the foregoing, the following provisions shall apply.

7

2.3.1 The Capital Accounts of the Partners as of the date hereof are set forth on Exhibit A.

2.3.2 Subject to the last sentence of section 2.3.4 below, the Capital Account of each Partner shall be further credited with (i) an amount equal to such Partner's cash capital contributions and the fair market value of property contributed to the Partnership (net of liabilities secured by such property) after the date hereof, and (ii) such Partner's share of the Partnership's Net Profit allocated to such Partner in accordance with Article 5 hereof, but for this purpose including income and gain exempt from tax;

2.3.3 Subject to the last sentence of Section 2.3.4, below, the Capital Account of each Partner shall be further debited by (i) the amount of cash distributions to such Partner and the fair market value of property distributed to the Partner (net of liabilities secured by such property), and (ii) such Partner's share of the Partnership's Net Loss allocated to such Partner pursuant to Article 5 hereof, and of expenditures which are permitted to be neither capitalized nor deducted for tax purposes (including for this purpose losses or expenses which may not be deducted for tax purposes pursuant to either Section 267(a)(1), Section 709 or Section 707(b) of the Code).

2.3.4 Upon the transfer of an interest in the Partnership, the Capital Account of the transferor Partner (as adjusted, if at all, as required by this Section 2.3.4) attributable to the transferred interest will be carried over to the transferee Partner. The Capital Account will not be adjusted to reflect any adjustment under Section 743 of the Code. If (i) such transfer causes a termination of the Partnership for tax purposes within the meaning of Section 708(b)(1)(B) of the Code, or (ii) upon (1) the liquidation of the Partnership, (2) the liquidation of a Partner's interest in the Partnership, (3) the distribution of money or property to a Partner, or (4) the contribution of

8

money or property to the Partnership by a new or existing Partner as consideration for an interest in the Partnership, adjustments shall be made to the Partners' Capital Accounts in the following manner.  All Assets and Additional Assets of the Partnership which are not sold in connection with such event shall be valued at their then fair market value.  Such fair market value shall be used to determine both the amount of gain or loss which would have been recognized by the Partnership if the property had been sold for its fair market value (subject to any debt secured by the property) at such time, and the amount of Net Cash Flow which would have been distributable by the Partnership pursuant to Article 4 if the property had been sold at such time for said fair market value (less the amount of any debt secured by the property).  The Capital Accounts of the Partners shall be adjusted to reflect the allocation of such hypothetical gain or loss (in accordance with Article 5.)   The Capital Accounts of the Partners (or of a transferee of a Partner) shall thereafter be adjusted to reflect the Partner's share of "book items" rather than tax items in accordance with Treasury Regulation Sections 1.704-1(b)(2)(iv)(g) and 1.704(b)(4)(i) and subsequent allocations of income, gain, loss and deductions shall be made as necessary so as to take account of the variation between the adjusted tax basis and the fair market value of such property in accordance with Section 704 of the Code.

2.3.5 For purposes of this Agreement, (A) the term "liquidation of the Partnership" shall mean (1) a termination of the Partnership effected in accordance with Article 8, which shall be deemed to occur, for purposes of this Section 2.3.5, on the date upon which the Partnership ceases to be a going concern and is continued in existence solely to wind-up its affairs, or (2) a termination of the Partnership pursuant to Section 708(b)(1) of the

9

Code, and (B) the term "liquidation of a Partner's interest in the Partnership" shall mean the termination of the Partner's entire interest in the Partnership effected by a distribution, or a series of distributions, by the Partnership to the Partner.

2.3.6 The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Sections 1.704-1(b) and 1.704-1T(b)(5) of the Treasury Regulations (the "Regulations"), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Regulations, the General Partner may make such modification after notifying all other Partners of the intent to so modify the Capital Accounts and provided further that no Partner objects in writing to such modification within thirty (30) days of such notice.

2.4  <u>Loans to the Partnership</u>.  Any Partner or an Affiliate thereof may loan money to the Partnership if funds are necessary for the business of the Partnership or to increase the return to the Partners, but only if and to the extent funds are not otherwise available therefor from a lending institution on commercially reasonable terms, it being hereby agreed that the requirement of a personal guarantee by one or more Partners or Affiliates thereof is not commercially reasonable. If such a loan is made, it shall bear interest at the Interest Rate (as hereinafter defined). For purposes of this Agreement, "Interest Rate" shall mean the fluctuating rate per annum equal to two percent (2%) plus the rate announced from time to time by Chase Manhattan Bank as its "prime rate." In the event that Edward Blumenfeld or an Affiliate thereof makes a loan exceeding $1,000,000 in connection with

10

the start-up of the business of the Partnership because funds are not otherwise available therefor as aforesaid, said loan (a "**Blumenfeld Loan**") shall bear interest at the Interest Rate and shall require monthly payments of interest only; provided, however, that all Net Cash Flow in amounts in excess of that necessary to pay the Preferred Return set forth in section 4.6, and/or to repay capital in the circumstance set forth in sectin 4.2.1, shall be paid to Blumenfeld in repayment of a Blumenfeld Loan as opposed to distributed to the Partners in accordance with their Percentage Interest pursuant to section 4.2.4, it being the intent of the Partners that principal on any Blumenfeld Loan be repaid asquickly as possible.

2.5   <u>General Partner's Liability for Capital</u>. The General Partner shall have no personal liability for the return of any capital contributions to the Limited Partners or to compensate a negative balance in the Capital Account of any Limited Partner.

2.6   <u>Preferred Return</u>. Each Class A Limited Partner shall be entitled each year to a non-cumulative preferred return payable solely out of Net Cash Flow for such year, if any, equal to the product of (i) eleven (11%) percent, and (ii) its Unreturned Capital Contribution (as defined in Section 2.2.1) for such year. In the event that the Unreturned Capital Contribution of a Limited Partner changes during a year, the Preferred Return will be computed on a daily basis, without compounding.

11

## ARTICLE 3

## MANAGEMENT

3.1   Management Powers of the General Partner

3.1.1 Except as otherwise provided herein, including, without limitation, Section 3.2 hereof, management, operation and control of the Partnership and its day-to-day business and affairs shall vest solely in the General Partner. In such capacity, the General Partner shall have the power on behalf of and in the name of the Partnership to carry out any and all of the purposes of the Partnership set forth in Section 1.3 and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto on behalf of the Partnership. Without limiting the generality of the foregoing, the General Partner is hereby authorized, empowered, obligated and responsible on behalf of the Partnership:

(i) to carry on the business referred to in Section 1.3 hereof and to execute and deliver in the Partnership name any and all instruments necessary in connection therewith;

(ii) to employ or consult such persons, firms or corporations as it shall deem advisable for the operation and management of the Partnership business including, without limitation, brokers, accountants, attorneys or specialists in any field of endeavor whatsoever, including any Person (including a Partner or an Affiliate of a Partner);

(iii) to deposit the funds of the Partnership in the Partnership name in any bank or trust company and to entrust to such bank or trust company the securities, monies, documents and papers belonging to or relating to the Partnership;

12

(iv)  to own, possess, renovate, improve, sell, transfer, mortgage, pledge, lease or otherwise deal with, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to, all or any portion of the Property;

(v)  to borrow monies from any party, issue evidences of indebtedness, mortgages or pledges in connection therewith, increase the amount of, modify, amend or change the terms of, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment thereof and of the interest thereon by mortgage upon or by pledge, conveyance or assignment in trust of the whole or any part of the Property whether at the time owned or thereafter acquired, and to sell, pledge or otherwise dispose of such bonds or other obligations of the Partnership;

(vi)  to pay all expenses and fees incurred in connection with the Partnership and its business;

(vii)  to sue on, defend or compromise any and all claims or liabilities in favor of or against the Partnership, and submit any or all such claims or liabilities to arbitration;

(viii)  to file applications, communicate and otherwise deal with any and all governmental agencies having jurisdiction over, or in any way affecting, the Property or any aspect of the Partnership's business;

(ix)  to make or revoke any election permitted the Partnership by any taxing authority;

(x)  to maintain such insurance coverage for public liability, fire and casualty, and any and all other insurance, necessary or appropriate to the business of the Partnership;

13

(xi)  to determine whether or not to apply any insurance proceeds for any property to the restoration of Partnership property or to distribute the same;

(xii)   to purchase, lease, rent, or otherwise acquire or obtain the right to use machinery, equipment, tools, materials, and all other kinds and types of personal property they may in any way be deemed necessary, convenient, or advisable in connection with carrying on the business of the Partnership;

(xiii)    to guarantee the payment of money or the performance of any contract or obligation of any person, firm, or corporation on behalf of the Partnership; and

(xiv)  to enter into, make and perform all contracts, agreements and other undertakings, to execute all other instruments of any kind or character and to perform any and all other acts that the General Partner determines to be necessary, advisable or incidental to the carrying out of the foregoing objects and purposes.

3.1.2 The General Partner shall use ordinary care and reasonable diligence in carrying out the affairs of the Partnership.  The General Partner shall not be liable to the other Partners for any mistake of judgment, any action taken in good faith on behalf of the Partnership or for any loss due to the negligence, fraud or willful misconduct of any employee, broker or agent of the Partnership who was selected, engaged or employed by the General Partner, provided that such employee, broker or agent was selected, engaged or retained by the General Partner with reasonable care. The General Partner may consult with legal counsel selected by it on matters relating to the Partnership, and any action taken or omitted to be taken by it in good faith in reliance and in accordance with the opinion or

**14**

advice of such counsel shall be full protection and justification to it with respect to the action taken or omitted to be taken.

3.1.3 The General Partner shall not be obligated to devote substantially all of its time and effort to the Partnership and its affairs.

3.2    Restrictions on Powers of the General Partner:

The General Partner shall have no authority to:

(a)    alter the purposes of the Partnership as set forth in Section 1.3 above;

(b)    confess a judgment against the Partnership;

(c)    possess any Partnership property or assign the rights of the Partnership in specific Partnership property for other than a Partnership purpose;

(d)    borrow money from the Partnership; or

(e)    sell or otherwise dispose of the Property without the prior consent of Class A Limited Partners holding at least two-thirds of the Percentage Interests of all Class A Limited Partners. If a Class A Limited Partner does not notify the General Partner in writing of its approval or disapproval of any proposed sale within ten business days after its receipt of a written request for approval, the General Partner shall again request the approval of the Class A Limited Partner in accordance with the notice provisions set forth in Section 11.5 of this Agreement which notice will make specific reference to this Section 3.2(e). If the Class A Limited Partner then does not notify the General Partner of its disapproval of the transaction or action within five business days following such request, the matter shall be deemed approved by such Class A Limited Partner.

15

3.3    The Limited Partners Have No Management Powers.

3.3.1 The Limited Partners shall have no voice or participation in the management of the Partnership business, and no power to (i) bind the Partnership or to act on behalf of the Partnership in any manner whatsoever, except as is specifically authorized by Section 8.1(b) of this Agreement, or (ii) perform any actions prohibited to limited partners under the Law or the laws of other jurisdictions in which the Partnership conducts business.

3.4    Compensation of the General Partner; Reimbursement for Expenses.

3.4.1 The General Partner shall not be entitled to compensation for acting as general partner of the Partnership.

3.4.2 All costs and expenses actually incurred in connection with the organization of the Partnership and the ongoing operation or management of the business of the Partnership shall be borne by the Partnership. The General Partner shall be entitled to prompt reimbursement for all out-of-pocket costs and expenses incurred by the General Partner or its agents, attorneys or advisors in connection with such organization, operation and management.

3.4.3 The General Partner is hereby authorized to hire, and shall hire, Blumenfeld Development Group, Ltd., an Affiliate of the General Partner, as managing agent of the Property. In consideration for managing the Property, Blumenfeld Development Group, Ltd. shall be paid a monthly management fee equal to the greater of (i) four (4%) percent of the Property's collected gross monthly rental income or (ii) $2,500 monthly.

16

3.5   <u>Indemnification</u>.  The General Partner and its officers, directors, employees, shareholders, agents and Affiliates shall be indemnified and held harmless by the Partnership (but not by any Limited Partner except to the extent of its capital contributions) to the fullest extent permitted by law from and against any and all claims, demands, liabilities, costs, damages and causes of action of any nature whatsoever arising out of or in connection with the transactions contemplated by this Agreement or the General Partner's management of the Partnership's and the Operating Partnership's affairs; provided, however, that such indemnification shall not apply with respect to liabilities arising out of those acts for which the General Partner may be held liable pursuant to Section 3.1.2 of this Agreement.   The indemnification authorized by this Section shall include, without limitation, payment of (i) reasonable attorneys' fees or other expenses incurred in connection with settlement or in defense of any legal proceeding and (ii) the removal of any liens affecting the property of the indemnitee.   Such attorneys' fees and expenses shall be paid by the Partnership as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the indemnified Person to repay such amounts if it is ultimately determined that such Person is not entitled to indemnification with respect thereto.   The indemnification rights contained in this section shall be cumulative of, and in addition to, any and all rights, remedies and recourses to which the General Partner, its officers, directors, employees, shareholders, agents and Affiliates may be entitled, whether pursuant to the provisions of this Agreement, at law or in equity. Indemnification hereunder shall be made from assets of the Partnership and no Partner shall be personally liable to any indemnitee.

17

3.6    <u>General Partner May Engage in Other Activities</u>.  The General Partner and its officers, directors, employees, shareholders, partners and Affiliates shall have the right to engage in any other business (including, but not limited to, acting as a partner in any other partnership formed for purposes similar to the purposes of the Partnership) and to compete directly or indirectly, with the business of the Partnership, and neither the Partnership nor any Partners shall have any rights or claims as a result of such activities.

3.7    <u>Certain Tax Matters</u>.

3.7.1 The General Partner shall engage an accountant to prepare at the expense of the Partnership all tax returns and statements, if any which must be filed by or on behalf of the Partnership.

3.7.2 The General Partner shall be the **"tax matters partner"** of the Partnership as defined in Section 6231(a)(7) of the Internal Revenue Code of 1986, as amended (**"Code"**), shall perform all duties imposed by sections 6222 through 6232 of the Code and shall have the power to take all actions contemplated by such sections.

3.7.3 The General Partner shall give prompt notice to the Limited Partners upon receipt of advice that the Internal Revenue Service intends to examine Partnership income tax returns for any years.

3.7.4 The Limited Partners shall furnish the General Partner with such information as the General Partner may reasonably request to permit it to provide the Internal Revenue Service with sufficient information to allow proper notice to the parties in accordance with section 6223 of the Code.

**18**

3.7.5 No Partner shall file, pursuant to section 6227 of the Code, a request for an administrative adjustment of Partnership items for any Partnership taxable year without first notifying the other Partners. If the other Partners agree with the requested adjustment, the General Partner shall file the request for administrative adjustment on behalf of the Partnership. If the Partners do not reach agreement within thirty (30) days or within the period required to timely file the request for administrative adjustment, if shorter, any one may file a request for administrative adjustment on its own behalf. If, under section 6227 of the Code, a request for an administrative adjustment must be filed on behalf of the Partnership, the General Partner shall also file such a request on behalf of the Partnership under the circumstances set forth in the preceding sentence.

3.7.6 If any Partner intends to file a petition under section 6226 or 6228 of the Code with respect to any Partnership item or other tax matters involving the Partnership, the party so intending shall notify the other Partners of such intention and the nature of the contemplated proceeding. Such notice shall be given within a reasonable time to allow the other Partners to participate in the choosing of the forum in which such petition will be filed. If the Partners do not agree on the appropriate forum, the petition shall be filed in the United States Tax Court. If any Partner intends to seek review of any court decision rendered as a result of the proceeding instituted under the preceding part of this section, such party shall notify the other of such intended action.

19

3.7.7 The General Partner shall not bind the Limited Partner to a settlement agreement without obtaining the written concurrence of the Limited Partners. If any Partner enters into a settlement agreement with the Secretary of the Treasury with respect to any Partnership items, as defined by section 6231(a)(3) of the Code, it shall notify the others of such settlement agreement and its terms within thirty (30) days from the date of settlement.

3.7.8 The provisions of this Section 3.7 shall survive the termination of the Partnership or the termination of any party's interest in the Partnership.

3.7.9 The General Partner agrees to use its best efforts to meet all requirements of the Code and currently applicable regulations, rulings and other procedures of the Internal Revenue Service to ensure that the Partnership will be classified for Federal income tax purposes as a partnership and not as an association taxable as a corporation.

## ARTICLE 4

## CASH DISTRIBUTIONS

4.1    <u>Net Cash Flow</u>.  Subject to the provisions of Sections 4.3 and 8.3, the General Partner shall distribute or cause to be distributed to the Partners, not less often than annually, in accordance with Section 4.2, the excess, if any ("**Net Cash Flow**"), of:

20

4.1.1 The aggregate amount of all income and receipts of all kinds received by the Partnership from all sources, including (a) rentals, (b) interest, (c) a sale, exchange or other disposition, or financing or refinancing, of all or any portion the Property or any interest therein, and (d) a recovery for the destruction or other casualty loss of any portion of the Property, all as determined on a cash basis, over

4.1.2 All cash disbursements of the Partnership including (a) the fee described in Section 3.4.3; (b) the reimbursements described in Section 3.4.2; (c) management fees, leasing fees, brokerage commissions, and legal fees incurred in connection with the Partnership business; (d) taxes; (e) all costs or expenses paid in connection with any sale or refinancing, including, without limitation, brokerage commissions, commitment fees, standby fees, mortgage taxes or charges, title insurance premiums, counsel fees, collection costs, recording charges and appraisal fees; (f) amounts used or to be used in connection with repairs, alterations, additions, improvements or replacements, made or to be made, including, without limitation, any repair, improvement, replacement or addition required to be made as a result of any casualty or as a condition of sale, condemnation or refinancing; (g) debt service and/or required principal payments on any loan to the Partnership other than a Blumenfeld Loan; (h) interest (but not principal) on any Blumenfeld Loan, and (i) amounts reserved in the General Partner's unfettered descretion.  If the General Partner shall determine that any reserve described above is no longer necessary, funds so reserved shall be distributed to the Partners in the same proportion which would have been determined if such funds had been distributed pursuant to Section 4.2 at the time of placement in the reserve.

21

4.2    Allocation of Net Cash Flow.    Net Cash Flow distributable in accordance with Section 4.1 shall be distributed in the following order of priority and in the following proportions:

4.2.1 First, if and to the extent the distributable Net Cash Flow for a period resulted from a sale, exchange or other disposition of any item of Property, or from the financing or refinancing of any item of Property, to those Partners having Unreturned Capital Contributions, in proportion to such Unreturned Capital Contributions, an amount up to but not exceeding the amount of such Unreturned Capital Contributions;

4.2.2 Next, or first if and to the extent that distributable Net Cash Flow for a period did not result from a sale, exchange or other disposition of any item of Property, or from the financing or refinancing of any item of Property, to the Class A Limited Partners, the Preferred Return determined pursuant to Section 2.6;

4.2.3 Next, to pay outstanding principal on any outstanding Blumenfeld Loan.

4.2.4 Lastly, to the Partners in proportion to their respective Percentage Interests.

4.3    Limitation on Distributions.

4.3.1 In order to comply with Section 1446 of the Code, and the regulations, revenue rulings, revenue procedures and administrative announcements promulgated thereunder ("Section 1446"), the Partnership shall withhold an amount otherwise distributable to a Partner hereunder, and shall apply the amount so withheld as required by Section 1446, unless the Partner shall have delivered to the Partnership either the certification annexed hereto as Exhibit F (if such Partner is an individual) or the certification annexed hereto as Exhibit G (if such Partner is a corporation,

22

trust, Estate or partnership) unaltered and dated and executed exactly as required thereby.  Notwithstanding the preceding sentence, a certification properly delivered to the Partnership shall not be effective to prevent withholding if the Partnership shall have received the certification more than three years preceding the date of a distribution or if the Partnership has actual knowledge that the Partner is not a "United States person" as that term is defined in Section 7701(a)(30) of the Code.

4.3.2 Notwithstanding Section 4.2, Net Cash Flow from a transaction which is a part of the liquidation of the Partnership in accordance with Section 8.3, together with other funds remaining to be distributed at such time shall be distributed to the Partners no later than the later of (a) the end of the taxable year of the Partnership in which such liquidation occurs or (b) within 90 days after the date of such liquidation event, after payment of all Partnership liabilities and expenses (or adequate provision therefor) in accordance with Section 8.3, except that in no event shall the distribution to a Partner exceed the positive balance in such Partner's Capital Account after giving effect to all allocations to such Partner under Article 5, assuming however distribution of such liquidation proceeds in accordance with Section 4.2, so that liquidation proceeds shall be distributed in accordance with each Partner's positive Capital Account balance (within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(b) as in effect on the date hereof).

23

# ARTICLE 5

## ALLOCATION OF TAXES;
## SPECIAL ALLOCATIONS

5.1     <u>Definition of Net Profits and Net Losses</u>.  "Net Profits" or "Net Losses", as the case may be, shall mean, for any fiscal year of the Partnership, the net profit or net loss of the Partnership determined for Federal income tax purposes, but including as an item of income or gain any such item which is earned by the Partnership during such year and is exempt from Federal income tax, and deducting the amount of any expenditures incurred by the Partnership during such fiscal year that are described in Section 705(a)(2)(B) of the Code or the corresponding provisions of any subsequent law and excluding any items that are specially allocated under Section 5.4 hereof.

5.2     <u>Allocation of Net Profits</u>.   For each fiscal year of the Partnership, Net Profits shall be allocated as follows:

5.2.1  First, to those Partners receiving a distribution pursuant to Section 4.2.2 for such year, an amount of Net Profits in proportion to (but not greater than) the amount of such distribution.

5.2.2  Next, to those Partners having negative Capital Account balances, in proportion to such negative balances, an amount of Net Profits so as to increase the Capital Account balances to, but not above, zero;

5.2.3  Next, to each of the Partners, in proportion to (but not greater than) the amount by which (x) the amount of Net Losses theretofore allocated to each Partner pursuant to Section 5.3 and not previously taken into account under this Section 5.2.3, exceeds (y) the Net Profits allocated to such Partner under Section 5.2.2.

24

5.2.4 Next, if and to the extent that Net Profits resulted from a sale, exchange or other disposition of the Property, to each of the Partners in proportion to (but not greater than) the amounts by which (x) the aggregate proceeds derived from such transaction allocable to each Partner in accordance with the provisions of Section 4.2, exceeds (y) the positive balance, if any, in such Partner's Capital Account after such Partner's Capital Account has been adjusted to reflect the Net Profits allocated to such Partner pursuant to Section 5.2.2 and 5.2.3; and

5.2.5 Lastly, to the Partners pro rata in accordance with their Percentgage Interests.

5.3    Allocation of Net Loss.  For each fiscal year of the Partnership, Net Loss shall be allocated to the Partners pro rata in accordance with their respective Percentage Interests.   Notwithstanding the foregoing, if the allocation of Net Loss to a Partner would create or increase a Qualified Income Offset Amount (as hereinafter defined in Section 5.4.4), there shall be allocated to such Partner only that amount of Net Loss as will not create or increase a Qualified Income Offset Amount. In the event some but not all of the Partners would have a Qualified Income Offset Amount as a consequence of an allocation of Net Loss, the limitation set forth in this Section 5.3.5 shall be applied on a Partner-by-Partner basis so as to allocate the maximum permissible Net Loss to each Partner under Treasury Regulation Section 1.704-1(b)(2)(ii)(d).   All Net Losses in excess of the limitation set forth in this Section 5.3.5 shall be allocated to the General Partner.

25

5.4    Special Allocations.

5.4.1 If at any time other than the end of a fiscal year of the Partnership a Partner shall withdraw from or be admitted to the Partnership, or shall transfer all or a part of its interest in the Partnership, or a shift in the Percentage Interest of the Partners shall occur as the result of any other occurrence, the allocable share of the various items of Partnership income, gain, loss, deduction and credit shall be allocated, to the extent permitted by the Code, among the Partners in the same ratio as the number of days in the year respectively before and after the transfer or shift is recognized by the Partnership bears to the actual number of days in the entire fiscal year.

5.4.2 Notwithstanding any other provision of this Agreement to the contrary, if there is a net decrease in Partnership Minimum Gain (as defined in Treasury Regulation Section 1.704-2(d)) during any fiscal year of the Partnership, then there shall be specially allocated to each Partner items of Partnership income and gain for such year (and, if necessary, subsequent fiscal years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain (determined in accordance with Treasury Regulation Section 1.704-2(g)).  The items to be so allocated shall be determined in accordance with Treasury Regulation Section 1.704-2(f)(6) and 1.704-2(j)(2)(i) and (iii).  This Section 5.4.2 is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(f) and shall be interpreted consistently therewith.

5.4.3 Notwithstanding any other provision of this Agreement to the contrary, if there is a net decrease in Partner Minimum Gain during any fiscal year, then each Partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, for subsequent fiscal years) in an amount equal to that Partner's share, if any

26

(determined in accordance with Treasury Regulation Section 1.704-2(i)(4)), of the net decrease in Partner Minimum Gain. The items to be so allocated shall be determined in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(4) and 1.704-2(j)(2)(i). As used herein, the term "Partner Minimum Gain" means Partner nonrecourse debt minimum gain, as defined in Treasury Regulation Section 1.704-2(i)(2) and determined in accordance with Treasury Regulation Section 1.704-2(i)(3). This Section 5.4.3 is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(i) and shall be interpreted consistently therewith.

5.4.4 If during any fiscal year of the Partnership any Partner receives any adjustment, allocation or distribution described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) or (6) and, as a result of such adjustment, allocation or distribution, such Partner has a Qualified Income Offset Amount (as hereinafter defined), then a pro rata portion of each item of Partnership income and gain (including gross income) for such fiscal year or other period (and, if necessary, for subsequent fiscal years) shall (prior to any Net Profits allocation pursuant to Section 5.1 hereof) be allocated to such Partner in an amount and manner sufficient to eliminate such Qualified Income Offset Amount as quickly as possible; provided, however, that any allocation of income or gain under this sentence shall be required only if and to the extent that such Partner would have a Qualified Income Offset Amount after all other allocations provided for in this Agreement have been tentatively made as if this Section 5.4.4 were not contained herein. As used herein, the term "Qualified Income Offset Amount" for a Partner means the excess, if any of (x) the negative balance a Partner has in its Capital Account following an adjustment, allocation or distribution described

27

in the preceding sentence, over (y) the maximum amount that it is obligated (or is deemed to be obligated) to restore to the Partnership as determined in accordance with Treasury Regulation Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i)(5). This Section 5.4.4 is intended to satisfy the provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

5.4.5 Notwithstanding any other provision of this Agreement to the contrary, Partnership losses, deductions, and Code Section 705(a)(2)(B) expenditures that are attributable to a particular Partner Nonrecourse Liability (as determined under Treasury Regulation Section 1.704-2(i)(2)) shall be specially allocated to the Partner(s) who bear the economic risk of loss for such liability. As used herein, the term **"Partner Nonrecourse Liability"** has the meaning ascribed thereto in Treasury Regulation Section 1.704-2(b)(4). This Section 5.4.5 is intended to comply with the allocation provision of Treasury Regulation Section 1.704-2(i)(1) and shall be interpreted consistently therewith.

5.4.6 Notwithstanding any other provision of this Agreement, the General Partners shall, in the aggregate, be allocated with respect to its general partnership interest for each fiscal year of the Partnership, or proportion thereof, at least 1.01% of each material item of Partnership income, gain, loss, deduction or credit of the Partnership.

5.4.7 Nonrecourse deductions (as defined in Treasury Regulatin Section 1.704-2(b)) for any fiscal year shall be allocated in proportion to the Partners' Percentage Interests.

5.4.8 This allocations set forth in Sections 5.4.2, 5.4.3, 5.4.4, 5.4.5, 5.4.6 and 5.4.7 of this Agreement (the **"Regulatory Allocations"**) are intended to comply with certain requirements of the Treasury Regulations including Sections 1.704-1(b) and 1.704-2 thereof. The Regulatory Allocations may not be consistent with the manner in which the Partners intend to divide Partnership distributions. Accordingly, the General Partner shall cause the Partnership to allocate future Net Profits, Net Loss, and other items among the Partners so as to prevent the Regulatory Allocations from distorting the manner in which Partnership distributions will be divided among the Partners pursuant to this Agreement to the extent permitted under the Treasury Regulations.

5.5    <u>Negative Capital Accounts</u>.    Except as set forth in Section 8.3.3, no Partner shall be required to pay to the Partnership or to any Partner any deficit in any Partner's Capital Account, upon dissolution or otherwise.

5.6    <u>Section 704(c) Allocations</u>.    For Federal income tax purposes, all items of income gain, loss, deduction or credit shall be allocated to the Partners as provided herein; provided, however, that if the Book Value (as hereinafter defined) of any Asset differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit, for tax purposes, shall be allocated among the Partners in a manner determined by the General Partner that takes account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Section 704(c) of the Code and the regulations promulgated thereunder. For purposes of this Agreement, **"Book Value"** of an asset shall mean the value of an asset on the books and records of the Partnership (as adjusted pursuant to Section 3.3.3) except that the initial

Book Value of an asset contributed to the Partnership shall be the amount credited to the Capital Account of the contributing Partner with respect to such contribution.

## ARTICLE 6

## BOOKS, RECORDS, REPORTS AND ACCOUNTS

6.1    Books and Records.  At all times during the continuance of the Partnership, the General Partner shall keep or cause to be kept full and true books of account, in which shall be entered fully and accurately each transaction of the Partnership.  The Partnership shall keep its books and records on the same method of accounting employed for tax purposes.  The fiscal year of the Partnership shall be the calendar year.  The General Partner shall also cause to be prepared and filed all Federal, state and local tax returns required of the Partnership.

6.2    Retention of Books and Records.

6.2.1 The Partnership shall continuously maintain at its principal place of business set forth in Section 1.6:

(A)    A current list of the full name and last known business or residence address of each Partner set forth in alphabetical order together with the contribution and the share in profits and losses of each Partner;

(B)    A copy of the Certificate of Limited Partnership and all certificates of amendments thereto, together with executed copies of any powers of attorney pursuant to which any such certificate has been executed;

30

(C)     Copies of the Partnership's Federal, state and local income tax or information returns and reports, if any, for the six most recent taxable years;

(D)     Copies of this Agreement and all amendments thereto;

(E)     Financial statements of the Partnership for the six most recent fiscal years;

(F)     The Partnership's books and records for at least the current and past three fiscal years; and

(G)     Such additional books and records as are necessary for the operation of the Partnership.

6.2.2 Any records maintained by the Partnership in the regular course of its business may be kept on, or be in the form of, punch cards, magnetic tape, photographs, micrographics, or any other information storage device, provided that the records so kept can be converted into clearly legible written form within a reasonable period of time.

6.3     Limited Partners' Rights Regarding Books, Records, and Tax Information.

6.3.1 Each Limited Partner has the right upon reasonable request:

(A)     To inspect and copy during normal business hours, at the Limited Partner's expense, any of the Partnership's records required to be kept by the Partnership.

(B)     To obtain from the General Partner promptly after becoming available, at the Limited Partner's expense, a copy of the Partnership's Federal, state, and local income tax or information returns for each year.

31

6.3.2 The General Partner shall send to each Partner within ninety (90) days after the end of each taxable year such information as is necessary for each Partner to complete Federal and state income tax or information returns.

6.3.3 The Partner and the Partner's representatives shall not divulge to any other Person any confidential or proprietary data, information or property or any trade secrets of the Partnership discovered in any inspection of the Partnership's books and records.

6.4   Reports.

6.4.1 The General Partner shall cause the accountants for the Partnership, with the assistance of the General Partner, to send an annual audited report to each of the Limited Partners no later than ninety (90) days after the close of the fiscal year. The report shall contain a balance sheet as of the end of the fiscal year, an income statement and a statement of partners' equity and of changes in financial position for the fiscal year. The report need not be audited unless requested by Class A Limited Partners holding, in the aggregate, 30% or more of the Class A Limited Partnership Interests, held by Class A Limited Partners, other than officers and directors of the General Partner of their affiliates.

6.4.2 The General Partner shall cause the accountants for the Partnership, with the assistance of the General Partner, to send semi-annual unaudited reports of the Partnership's operations to each of the Limited Partners as soon as practical after the end of each semi-annual period, commencing with the semi-annual period ending _____, 19___ year.

6.5   Bank Accounts.   The Partnership shall establish and maintain accounts in financial institutions (including, without limitation, national or state banks, trust companies, or savings and loan institutions) in such

6.6  <u>Goodwill</u>.  No value shall be placed for any purpose upon the Partnership's name or the right to its use, or upon the goodwill of the Partnership or its business.  Upon termination or dissolution of the Partnership, neither the Partnership's name, nor the right to its use, nor the goodwill of the Partnership, shall be considered as an asset of the Partnership.

6.7  <u>Election under Section 754 of the Code</u>.  In the event of any transaction described in Section 743(b) of the Code and permitted by the provisions of this Agreement, the Partnership shall, upon the timely written request of the Person succeeding to a Partnership interest in such transaction, make the election provided for in Section 754 of the Code.

## ARTICLE 7

### ASSIGNMENT OF INTERESTS

7.1  <u>Sale, Transfer, or Assignment of Interest of the General Partner</u>.  The General Partner may not sell or transfer all or any part of its general partnership interest in the Partnership except in connection with the merger, consolidation, or reorganization of the General Partner with or into an Affiliate of the General Partner.

7.2  <u>Assignment by Limited Partner</u>.  A Limited Partner may not sell, transfer, assign, pledge, hypothecate, encumber or otherwise dispose of all or any portion of its limited partnership interest either voluntarily or by operation of law (hereinafter collectively referred to as an **"Assignment"**), except as follows:

7.2.1 A Partner may make an Assignment of all or a portion of its interest as a limited partner if such assignment is in compliance with this Section 7.2 and Sections 7.4 to 7.6.

33

7.2.2 A Limited Partner may make an Assignment of its interest as a limited partner in the Partnership, provided that (a) the assignee shall not be a natural person younger than 21 years of age nor a natural person who shall have been adjudged incompetent; (b) the Assignment shall be in writing and form reasonably satisfactory to the General Partner, (c) the assignee shall have agreed in writing in form reasonably satisfactory to the General Partner to be bound by the terms of this Agreement, and (d) the General Partner shall have consented in writing to the Assignment.

7.2.3 An Assignee shall be required to reimburse the Partnership and the General Partner in connection with such assignment to cover any legal fees, accounting fees, overhead charges, and other fees or expenses incurred as a result of any such assignment.

7.2.4 The General Partner may require an opinion of counsel, in form and substance satisfactory to it in its sole discretion, by experienced tax and securities laws counsel, to the effect (i) that the proposed assignment will be in compliance with applicable securities laws, rules and regulations, (ii) that the proposed assignment will not cause adverse tax consequences, and (iii) such other matters as may be determined by the General Partner in its reasonable discretion. The fee for such opinion shall be the responsibility of the assignor.

7.2.5 Any purported assignment which is not in compliance with this Agreement is null and void and of no force or effect whatsoever.

7.3 **Assignee's Rights.**

34

7.3.1 An assignee or transferee of any portion of the interest of a Partner shall be entitled to receive allocations and distributions attributable to the interest acquired by reason of such assignment from and after the Effective Date (as hereafter defined) of the assignment of such interest to such assignee; however, anything herein to the contrary notwithstanding, the Partnership and the General Partner shall be entitled to treat the assignor of such interest of the Partner as the absolute owner thereof in all respects, and shall incur no liability for allocations of net income, net losses, or gain or loss on sale of Partnership property, or transmittal of reports and notices required to be given to Partners hereunder which are made in good faith to such assignor until such time as the written assignment has been received by the Partnership, approved and recorded on its books and the Effective Date of the assignment has passed.    The **"Effective Date"** of an assignment shall be that date specified in the written instrument whereby the General Partner consents to the assignment, which date shall not be later than sixty (60) days following receipt by the General Partner of a written notice of assignment and the fulfillment of all conditions precedent to such assignment provided for in this Agreement.

7.3.2 <u>Assignment of Rights to Distributions by Limited Partners</u>.    Any Limited Partner may assign the right to receive all distributions applicable to its Partnership interest, and such assignment of distributions shall be effective notwithstanding failure to satisfy the conditions set forth in Section **7.2**, provided that (a) the instrument of assignment shall be in form reasonably satisfactory to the General Partner, and (b) a duly executed and acknowledged counterpart of such instrument shall be delivered to the Partnership.  Any purported assignment which does not meet the requirements set forth in this Section shall be void and shall

35

not bind the Partnership. Such an assignment shall not entitle the Assignee to become or to exercise any rights of a Partner.

7.4    Right of First Refusal on Sale or Transfer of Interest.

7.4.1 If a Limited Partner or assignee thereof proposes to sell, assign, or transfer its interest, it shall first offer the interest in writing to the General Partner at the price and on the terms on which such Limited Partner proposes to sell, assign, or transfer the interest ("the Price" and "the Terms").

7.4.2 The General Partner shall, in its sole discretion, decide whether to accept or reject the offer within twenty-one (21) days after receipt of the offer. If the offer is rejected by the General Partner or its designee, then the Limited Partner or assignee may, subject to this Article 7, sell the remaining unsold interests to an outside party at the Price and on the Terms. If such sale is not completed at the Price and on the Terms within ninety (90) days after the rejection by the General Partner, then the Limited Partner or assignee must reoffer his interest to the General Partner in accordance with this Section 7.4 before any other sale, assignment or transfer of all or any part of its interest can be effected.

7.4.3 This Section shall not apply to transfers, sales, assignments, gifts, and devices to the spouse or lineal descendants of the transferring Limited Partner or assignee, to a trust for the benefit of that spouse or a Limited Partner's or assignee's lineal descendants, or to an entity if there is no change in beneficial interest to the interest transferred. Nevertheless, all such transferees shall take the transferred interests subject to this Section 7.4. Nothwithstanding the foregoing, Section 7.2 shall apply to any transfer of an interest in the Partnership.

36

**7.5** <u>Death, Incompetency or Bankruptcy of a Limited Partner</u>.  The death, adjudication of incompetency, dissolution or bankruptcy of a Limited Partner shall not dissolve the Partnership.   Except as set forth in this Agreement, the Limited Partner's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Limited Partner's rights and shall be responsible for all of the Limited Partner's obligations hereunder.   Notwithstanding the foregoing, in the case of the bankruptcy of a Limited Partner, the Partnership may at any time, in the discretion of the General Partner, redeem any such interest in the Partnership by payment to the holder of such interest of its Capital Account balance.  The purchase price shall be paid in such manner and at such time as is mutually agreed upon by the Partnership and the terminated Partner or its representative.

## ARTICLE 8

## DISSOLUTION, LIQUIDATION AND TERMINATION

## OF THE PARTNERSHIP

**8.1** <u>Dissolution</u>.   The Partnership shall be dissolved upon the happening of the first of the following to occur:

(a)    On the date designated by the General Partner and approved by all of the Limited Partners.

(b)    Upon the General Partner ceasing to be a general partner of the Partnership or upon the occurrence of an event specified in Section 8.2 unless (i) there is at least one other General Partner and all remaining General Partner(s) elect within thirty days of such event to continue the business of the Partnership, or (ii) if there is no remaining General Partner, all Limited Partners agree in writing to continue the business of the

37

Partnership and agree to admit one or more successor General Partner(s) who agree in writing to serve in such capacity. Such successor General Partner(s) shall be admitted to the Partnership only upon written notice from each of the Limited Partners (which notice shall specify the Partnership Interest(s) of the successor General Partner(s)) that the person(s) described in such notice is or are satisfactory to such Limited Partner.

(c)   Upon the sale or other divestiture of all or substantially all of the Property of the Partnership; provided, however, that (i) if the Partnership receives a purchase money mortgage in connection with such sale, the Partnership shall continue until such mortgage is paid in full or otherwise disposed of; and (ii) the Partnership shall continue if the Property is exchanged under Section 1031 of the Code;

(d)   Upon entry of a decree of judicial dissolution of the Partnership; or

(e)   At 5:00 p.m., December 31, 2075.

8.2   <u>Insolvency.</u>   If the General Partner shall (i) be adjudicated a bankrupt, (ii) suffer or permit a receiver to be appointed to hold or administer any substantial portion of his assets and such appointment shall remain in effect for 30 days, (iii) make an assignment for the benefit of creditors, (iv) file a petition in bankruptcy or for an arrangement with its creditors under the provisions of any Federal or state bankruptcy statute or other statute for the relief of debtors, or (v) admit by a pleading the material allegations of any bankruptcy petition or similar pleading filed against it, then the interest of such General Partner, as such, shall automatically terminate and, notwithstanding any other provision of this Agreement, such former General Partner shall thereafter have no right to participate in any manner in the management of the Partnership's business or in any decision,

38

consent or approval affecting any transaction or proposed transaction whatsoever.

8.3    Liquidation.

8.3.1 Upon the dissolution of the Partnership as provided in Section 8.1, the Partnership shall be liquidated as hereinafter set forth. Each of the Partners shall be furnished with a statement, reviewed by the Partnership's independent accountants, which shall set forth the assets and liabilities of the Partnership as of the date of the Partnership's dissolution. The General Partner or, if there is no general partner, a liquidating agent selected by a majority in interest of the Limited Partners shall as promptly as practicable liquidate the assets of the Partnership, close out all positions, pay or discharge all debts, liabilities and obligations of the Partnership, and retain such reserves as are deemed necessary for any unforeseen and contingent liabilities in accordance with Section 8.3.4. The General Partner or such liquidating agent, as the case may be, shall then allocate and distribute the remaining proceeds in cash as follows:

(i)    to the payment of the expenses of liquidation, including a reasonable fee to the General Partner or liquidating agent, as the case may be;

(ii)    to the payment of the debts and liabilities of the Partnership to third parties in the order of priority provided by law;

(iii)    to the repayment of any loans or advances that may have been made to the Partnership by any Partner, but if the amount available for such repayment shall be insufficient to repay all such loans and advances, then repayment shall be made on a pro rata basis in accordance with the aggregate dollar amounts of loans made by each Partner; and

(iv)    to each Partner, pursuant to and in accordance with Section 4.3.3, the balance of its Capital Account, but if the funds available therefor are insufficient to repay such amounts or are in excess of such amounts, then on a pro rata basis in accordance with the Percentage Interests.

8.3.2 Upon dissolution and liquidation, each Limited Partner shall look solely to the assets of the Partnership for the return of his Capital Contribution, and shall be entitled only to a cash distribution of Partnership Assets in return thereof, unless otherwise allowed by the General Partner or liquidating agent in accordance with Section 8.4.  If the Partnership property remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return the contribution of each Limited Partner, such Limited Partner shall have no recourse against the General Partner or any other Limited Partner.

8.3.3 Upon liquidation, the General Partner shall contribute to the Partnership the lesser of (i) any deficit balance in its Capital Account (or zero if its Capital Account is not negative), or (ii) the excess of 1.01% of the total Capital Contributions of the Limited Partners over the capital previously contributed by the General Partner.

8.3.4 Notwithstanding anything to the contrary herein, the General Partner may retain such amounts as it deems reasonably necessary as a reserve for any contingent liabilities or obligations of the Partnership, which amount shall be paid over to a bank or trust company in New York, New York, as escrow agent to be held by it for the discharge of liabilities of the Partnership and the distribution of the balance, if any, among the Partners in the same manner and proportion as hereinabove provided for in this Section.

**40**

8.4    Distribution in Kind or Sale.

8.4.1 In the event that any asset of the Partnership is not sold within eighteen (18) months of the occurrence of the event effecting the dissolution, the General Partner (if then existing) or liquidating agent shall promptly thereafter offer to the Limited Partners in satisfaction of such Partners' rights to their liquidating distribution the option either to (1) acquire ownership of any asset then held by the Partnership by means of a distribution in kind; or (2) sell any asset then held by the Partnership to the General Partner or any designee thereof (the "Buyer") for an amount equal to the appraised fair market value of such asset, such price to be payable to the Limited Partners pursuant to a promissory note delivered by the Buyer to the Limited Partners on the terms hereinafter set forth; (3) allow the General Partner, as liquidating trustee, or liquidating agent to continue to wind up the affairs of the Partnership in accordance with the terms of this Agreement; or (4) any combination of the foregoing.  The promissory note referred to in clause (2) above shall be nonnegotiable and shall bear interest on its outstanding principal balance equal to the "applicable Federal rate" set forth in Section 1274(d) of the Code and shall be without recourse to the Buyer and its principals, employees and agents, but shall be secured by a pledge of the asset acquired by Buyer for which the note was delivered. The note shall have a maturity of five (5) years and no payments of principal or interest thereon shall be due until maturity unless the asset securing said note is sold, in which case all principal and interest shall be due seven (7) days after the Buyer receives the proceeds of such sale.  In addition, the note shall be prepayable without penalty at any time.

41

8.4.2 If the General Partner or liquidating agent determines that a portion of the Partnership's assets should be distributed in kind to the Partners prior to the expiration of eighteen (18) months from the event effecting dissolution, it shall obtain an independent appraisal of the fair market value of each such asset as of a date reasonably close to the date of liquidation. Any unrealized appreciation or depreciation with respect to any asset to be distributed in kind shall be allocated among the Partners (in accordance with the provisions of Article 5, and assuming that the assets were sold for the appraised value), and taken into consideration in determining the balance in the Partners' Capital Accounts as of the date of final liquidation in accordance with Section 4.3.3. Distribution of any such asset in kind to a Partner shall be considered a distribution of an amount equal to the asset's fair market value for purposes of Section 8.3.

8.5  Termination.  The Partnership shall not terminate until all Partnership property shall have been disposed of and the Partnership's assets, after payment of or due provisions for liabilities to the Partnership's creditors, shall have been distributed among the Partners as provided in this Agreement and until the Certificate shall have been cancelled. Notwithstanding the dissolution of the Partnership, prior to the termination of the Partnership as aforesaid, the business of the Partnership and the affairs of the Partners, as such, shall continue to be governed by this Agreement.

8.6  Reconstitution.  Nothing contained in this Agreement shall impair, restrict or limit the rights and powers of the Partners under the laws of the State of New York and any other jurisdiction in which the Partnership is doing business to reform and reconstitute themselves as a limited partnership following dissolution of the Partnership either under provisions

42

identical to those set forth herein or any others which they may deem appropriate.

8.7   Cancellation of Certificate of Limited Partnership.   Upon the completion of the distribution of Partnership assets as provided in this Article 8 and the termination of the Partnership, the General Partner or liquidating agent shall cause the Certificate of Limited Partnership of the Partnership to be cancelled.

## ARTICLE 9

## LIMITED PARTNERS

9.1   Limited Partner Representations and Warranties.   The Limited Partners, and any substitute or additional Limited Partners prior to admittance to the Partnership in accordance with Article 7 shall, represent, warrant, and agree as follows:

9.1.1 Each has full right, power and authority to execute and deliver this Agreement; this Agreement has been duly executed and delivered by the Limited Partner and constitutes the valid and binding obligation of the Limited Partner in accordance with its terms; and the Limited Partner is not subject to any restriction or agreement which prohibits or would be violated by the execution and delivery hereof or the consummation of the transactions contemplated herein or pursuant to which the consent of any third person, firm or corporation is required in order to give effect to the transactions contemplated herein;

9.1.2 Each is (i) an **"Accredited Investor"** as such term is defined under the Securities Act of 1933, as amended (hereinafter called the **"Securities Act"**) and has such knowledge of business and financial affairs as is necessary to enable it to understand the nature of and the risks

**43**

attendant to an investment in the Partnership, and to understand the particular financial, legal and tax implications of the business to be conducted by the Partnership; (ii) is able to bear the economic risk of such investment; and (iii) has had access to any and all information concerning the Partnership which it and its legal and tax advisors requested or considered necessary to make a proper evaluation of such investment; and

9.1.3 The Limited Partners understand that the Partnership interests being acquired hereunder have not been and, in all likelihood, will never be, registered under the Securities Act on the ground that investment in the Partnership is exempt under Section 4(2) of the Securities Act and/or Regulation D promulgated thereunder as not involving a public offering. Each Limited Partner represents that it is acquiring its interest in the Partnership for investment for its own account with no present intention of reselling or otherwise disposing of the same; that to the best of its knowledge and belief there are no circumstances in the foreseeable future which would require the resale of any portion of such interest; that it will, in no event, sell, transfer or otherwise dispose of its interest in the Partnership or any portion thereof unless, in the opinion of counsel to the Partnership, such interest may be legally sold, transferred or otherwise disposed of without registration and/or qualification under the Securities Act and under other state or federal statutes; and the it understands that the reliance of the General Partner upon such exemption is predicated upon such representations.    Each Limited Partner further acknowledges its understanding that no trading market for interests in the Partnership does or, in all likelihood, will exist at any time and that its interest will at no time be transferable without potential adverse tax consequences. Each Limited

44

Partner further understands that the disposition of its interest in the Partnership is also limited by other provisions of this Agreement.

## ARTICLE 10

## FURTHER DOCUMENTS

10.1 <u>Execution by Limited Partners</u>.  At any time, upon the request of the General Partner, each Limited Partner shall execute, acknowledge and swear to any certificate required by the law of New York, any amendment to or cancellation thereof required by law, and any certificate or affidavit of fictitious firm name, trade name or the like (and any amendments or cancellations thereof) required by law to carry out the purposes of, and which are consistent with, the purposes of this Agreement; and the General Partner shall cause to be filed of record all such certificates and instruments as shall be required so to be filed.

10.2 <u>Completion of Publication</u>.  The General Partner shall cause a notice containing the substance of the Certificate filed pursuant to Section 3.1 to be published once each week for six successive weeks in two newspapers designated by the New York County Clerk, all in accordance with Section 121-201(c) of the Law.

## ARTICLE 11

## MISCELLANEOUS

11.1 <u>Power of Attorney</u>.  Each Limited Partner hereby makes, constitutes and appoints the General Partner and its officers, directors, employees, agents, successors and assigns, its true and lawful attorney-in-fact with full power and authority in its name, place and stead to make, complete, execute, sign, acknowledge, deliver, file and record at the

45

appropriate public offices such documents as may be necessary or appropriate to carry out the provisions of this Agreement, including all instruments which the General Partner deems to be in the best interests of the Partnership to file and which are not inconsistent with this Agreement.

11.2 <u>Amendments</u>.   This Agreement may be amended, and any waiver, change, modification, consent or discharge shall be effective, only by the written agreement of the General Partner and all of the Limited Partners.

11.3 <u>Choice of Law</u>.   **This Agreement shall be governed any construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely within such State, without regard to principles of conflict of laws.**

11.4 <u>Choice of Forum</u>.   The parties agree that none shall commence any litigation against the other arising out of this Agreement or the termination thereof except in a court located in the State of New York. Each party consents to jurisdiction over it by and exclusive venue in such a court.

11.5 <u>Notices</u>.  Any notice or other communication required or which may be given pursuant to this Agreement shall be in writing and shall be delivered personally, telegraphed, sent by overnight courier or telexed with a copy sent contemporaneously by certified, registered, or express mail, postage prepaid, to the relevant address set forth for in the heading to this Agreement.   Any such notice or communication shall be deemed given when so delivered personally, telegraphed or received by overnight courier or telexed, or if mailed, on the earlier of the date of receipt or two days after the date of mailing.

46

11.6  Entire  Agreement.    This  Agreement  contains  the  entire understanding  of  the  parties  and  supersedes  and  merges  all  prior  and contemporaneous  agreements  and  discussions  between  the  parties.    Any and  all  representations  or  agreements  by  any  agent  or  representative  of either  party  not  contained  in  this  Agreement  shall  be  null,  void  and  of  no effect.    This  Agreement  may  not  be  changed  in  any  way,  except  as provided  in  Section  11.2  of  this  Agreement.

11.7  Severability.  If  for  any  reason  any  provision  of  this  Agreement, including  but  not  limited  to,  any  provision  relating  to  termination  of  this Agreement,  shall  be  deemed  by  a  court  of  competent  jurisdiction  to  be legally  invalid  or  unenforceable  in  any  jurisdiction  to  which  it  applies,  the validity  of  the  remainder  of  the  Agreement  shall  not  be  affected  and  such provision  shall  be  deemed  modified  to  the  minimum  extent  necessary  to make  such  provision  consistent  with  applicable  law,  and,  in  its  modified form,  such  provision  shall  then  be  enforceable  and  enforced.

11.8  Binding  Agreement.    This  Agreement  shall  be  binding  upon  the parties  and  shall  inure  to  the  benefit  of  the  undersigned  parties  and,  except to  the  extent  provided  herein,  to  their  respective  heirs,  executors,  personal representatives,  successors  and  lawful  permitted  assigns.    Any  reference  in this  instrument  to  any  party  or  Partner  is  made,  such  reference  shall  be deemed  to  include  a  reference  to  the  successors  and  assigns  of  such  party or  Partner.

11.9  Waiver  of  Action  for  Partition.    Each  of  the  parties  to  this Agreement  irrevocably  waives  and  forfeits  during  the  term  of  the Partnership  any  and  all  right  that  it  may  have  to  institute  or  maintain  any action  for  partition  with  respect  to  any  property  of  the  Partnership.

47

11.10 <u>Terminology.</u>   All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, and the singular shall include the plural, and vice versa, as the context may require.

11.11 <u>Captions.</u>   The captions of this Agreement are for convenience and reference only and in no way define, limit or describe the scope or intent of this Agreement nor affect it in any way.

11.12 <u>Counterparts.</u>   This Agreement may be executed through the use of separate signature pages or in any number of counterparts, and each of such signature pages or counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties are not signatories to the same counterpart.

**IN WITNESS WHEREOF,** the parties hereto intending to be legally bound, have executed this Agreement of the day and year first above written.

General Partner:

500 Bi-County Ltd.

By: _____
        David Blumenfeld, President

**SEE ADDITIONAL SIGNATURE PAGES ATTACHED HERETO FOR CLASS A AND CLASS B LIMITED PARTNER SIGNATURE PAGES**

48

## DECLARATION OF SERVICE

State of New York, County of New York )ss:

Ramsey Hinkle an attorney admitted to practice in the courts of New York, hereby declares:

I am not a party to this action, am over 18 years of age and am an associate at the law office of Clayman & Rosenberg, LLP 305 Madison Avenue, New York, New York 10165.

On January 6, 2010, I served a true copy of the annexed OBJECTIONS TO TRUSTEES DETERMINATIONS by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee for that purpose. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

VIA FEDERAL EXPRESS
Irving H. Picard, Trustee
c/o Baker and Hostetler LLP
45 Rockefeller Plaza – 11th Floor
New York, New York 10111

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on:   January 6, 2010
New York, New York

_____
Ramsey Hinkle