# EXHIBIT B

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

**Name of Customer:** Morning Mist Holdings Limited
**Mailing Address:** Edificio Tamaki, Dpto. 202, Calle Cochabamba, esq. Moldes
**City:** Santa Cruz                    **State:** Bolivia            **Zip:** _____
**Account No.:** 1-FN012-3-0; 1-FN045-3-0; 1-FN069-4-0; and 1-FN070-4-0
**Taxpayer I.D. Number (Social Security No.):** _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

a.    The Broker owes me a Credit (Cr.) Balance of        $_____0_____

b.    I owe the Broker a Debit (Dr.) Balance of        $_____0_____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.        $_____

d.    If balance is zero, insert "None."

_____None_____

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.        If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |

Please see exhibits A and B. The entity described in Exhibit A is believed

to be a customer of BMIS and the party filing this claim thus has an interest

in the assets of such entity.

Claim amount: 666.3685 units of Fairfield Sentry x 1,350.6040 = $899,999.96*

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

*Fairfield Sentry Ltd., invested 99% of its assets with BMIS. The above claim amount reflects the claimant's proportionate share of this investment, as demonstrated in Exhibit A.

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Christopher Van De Kieft, Esq., Seeger Weiss LLP, One William Street, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _April 16, 2009_    Signature _____

Jorge Arias Lazcano, Director

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## CUSTOMER CLAIM

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

December 11, 2008

### Account Ownership Information for
### Morning Mist Holdings Limited

**Fairfield Sentry
Customer Name:**    Morning Mist Holdings Limited/Jorge Arias Lazcano

**Director of
Morning Mist
Holding Limited:**    Jorge Arias Lazcano

**Director
Address:**    Edificio Tamaki, Dpto. 202, Calle Cochabamba esq. Moldes
Santa Cruz – Bolivia

**Director
Tel. No.:**    31 205722850

Pursuant to the Certificate of Incorporation and the Appointment of First Director(s) for
Morning Mist Holdings Limited ("Company") enclosed herewith, I am the sole Director of the
Company, and as such, I am authorized to file a SIPC Claim on behalf of the Company.

_Apri/ 16, 2009_
Date

Jorge Arias Lazcano,
Director of Morning Mist Holdings Limited

## CUSTOMER CLAIM

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

December 11, 2008

### Account Information for
### Morning Mist Holdings Limited

**Fairfield Sentry**
**Customer Name:**    Morning Mist Holdings Limited/Jorge Arias Lazcano

Morning Mist Holdings Limited ("Morning Mist Holdings") invested a total of $900,000 in Fairfield Sentry. In the Subscription Agreement, it was initially noted that Morning Mist Holdings would deposit $500,000 in its Fairfield Sentry Account. However, Morning Mist Holdings ultimately deposited $900,000 in its Fairfield Sentry Account, as is indicated by the November 14, 2008 Citco Fund Services Account statement, attached hereto in Exhibit B.

Mayo 4, 2009
Date

Jorge Arias Lazcano,
Director of Morning Mist Holdings Limited

# Exhibit A

**FAIRFIELD SENTRY LIMITED**
Romasco Place, Wickhams Cay 1
Road Town, Tortola
British Virgin Islands, VG 1110

February 4, 2009

Dear Shareholder,

You will have received several letters from us as the directors of Fairfield Sentry Limited (the "**Company**"). These letters were sent as events unfolded regarding Bernard L. Madoff Investments Securities LLC ("**BMIS**"). The purpose of this letter is to now provide a significant level of additional information so that shareholders are aware of the actions being taken by the Company and its directors. As this letter contains detailed information concerning the Company, it should be considered confidential.

<u>**Management**</u>

As a preliminary matter, we believe that it would be beneficial for you to understand how the Company is being managed at this time. As you are likely aware, the Company has three directors, Walter Noel, Peter Schmid and Jan Naess. Walter Noel is a principal of the Fairfield Greenwich Group. Peter Schmid and Jan Naess are the independent (non-executive) directors and have no financial interest in Fairfield Greenwich (Bermuda) Limited (the "**Manager**") or Fairfield Greenwich Group.

The board of directors has assumed responsibility for the management of the Company. We are meeting on a regular basis to discuss the affairs of the Company. Walter Noel has not attended these meetings and has recused himself from such meetings since the events of December 11, 2008. We have also amended the signing authority on the bank account with Citco Bank Nederland N.V. Dublin Branch to ensure that no funds are wired out of this account without the approval of either of the independent directors, Peter Schmid or Jan Naess. We continue to work closely with the Manager, in particular to liquidate the remaining assets of the Company (discussed further below). We are also working closely with the administrator, Citco Fund Services (Europe) B.V., in this regard. We value these relationships. However, we are also acting independently recognising that we owe our duties to the Company.

<u>**Background**</u>

On October 31, 2008 the published net asset value of the Company was US$7,283,393,967 resulting in a net asset value per share of US$1,349.7782. On December 11, 2008, Bernard L. Madoff was arrested. On December 18, 2008 the Company suspended the calculation of net asset value with a consequential suspension on subscriptions and redemptions. The November 30, 2008 net asset value had not been calculated by the time of such suspension.

February 4, 2009
Page 2 of 5

## Current Assets

The Company currently has cash at a bank account with Citco Bank Nederland N.V. Dublin Branch in the amount of US$67,179,754 (which includes the proceeds of subscription of the December 1, 2008 and January 2, 2009 subscribers which are not assets of the Company – see below). The Company has investments, other than with BMIS, with a value as at November 30, 2008 of US$81,723,813. Of these investments, US$55,947,567 represents investments in the Non-SSC Investments as defined on page 10 of the private placement memorandum of the Company. The Company has liabilities as at November 30, 2008 in the amount of US$62,211,252, which includes a liability to the Manager in the amount of US$61,403,895 being management and performance fees payable to the Manager the payment of which was deferred by the Manager.

## Potential Claims

In addition to the foregoing assets held directly by the Company, the Company recognises it may be able to realise assets from each of the following:

(a)     The Company is currently analysing its position with respect to Securities Investor Protection Corporation ("**SIPC**"). In particular, it is making a determination as to whether it is likely to receive cash from SIPC or whether it is likely that there will be a clawback from SIPC. The filing deadline is March 4, 2009. Prior to this time, the Company will make a decision as to whether it is in the Company's best interest to make a filing with SIPC and proceed accordingly. Please see below for a discussion as to whether shareholders of or investors in the Company should individually file with SIPC.

(b)     We also recognise that there may be claims available to the Company which may be pursued in order to recover the losses of the Company. We have retained legal counsel in several jurisdictions to examine potential causes of action and will pursue all lawsuits where there is a likelihood of success on a cost effective basis. However, we are proceeding cautiously and carefully with respect to both when and how to bring such actions. Unfortunately, we cannot provide further information at this time so as not to prejudice any such actions or the Company, but as soon as we are able to do so, we will communicate further in this regard.

(c)     In addition, the Company is exploring whether it is able to make any claims with the Internal Revenue Services for overpayment of taxes (ie United States withholding tax paid on dividend income purportedly by the Company through BMIS). All such claims will be pursued to the extent that it is appropriate for the Company to do so.

February 4, 2009
Page 3 of 5

Otherwise, we confirm that we will take any and all actions which are appropriate to recover the losses of the Company.

## SIPC and You

By Order dated December 15, 2008, the United States District Court, Southern District of New York, authorised SIPC to commence a liquidation proceeding against BMIS under the United States Securities Investor Protection Act ("**SIPA**") and appointed Irving Picard, Esq. as the trustee to oversee the liquidation proceeding (the "**SIPC Trustee**"). SIPC, a nonprofit United States corporation funded by assessments on brokerage firms, protects investors against financial losses arising from insolvency of their brokers. SIPC reimburses customers of brokers for up to US$100,000 for cash and up to US$500,000 for securities in their accounts when their brokerage firms become insolvent.

SIPA provides protection to those who meet the statutory definition of a "customer". The Company had brokerage accounts with BMIS. Therefore it qualifies as a "customer" under SIPA. We have received several inquiries from shareholders about whether they should be filing claims with SIPC individually.

The Company does not know whether the SIPC Trustee is going to consider indirect investors such as the shareholders of the Company as meeting the statutory definition of "customer". Accordingly, the Company has reached out to the SIPC Trustee to inquire as to his position on this issue. As yet, we have not received any advice on this issue from the SIPC Trustee. We understand from published reports that the SIPC Board met Friday, January 30, 2009 to discuss how claims will be treated, and possibly, whether indirect investors will be treated as "customers".

Given the uncertainty in how claims will be handled, you may wish to consider filing a claim with SIPC. For your convenience, we have attached a claim form to this letter, along with instructions on how to complete it. The Company's BMIS account numbers are 1-FN012-3-0; 1-FN045-3-0; 1-FN-069-4-0; and 1-FN-070-4-0.

Please be advised that neither the Company nor its counsel represent you individually and will not give legal advice in connection with the filing of a claim with SIPC. You should seek advice from your own lawyer or advisor before you decide whether to file a claim with SIPC as the filing may have implications for you concerning, among other things, the jurisdiction of the Bankruptcy Court over possible attempts by the SIPC Trustee to recover withdrawals you have made from the Company.

## November 30 Redeemers, December 31 Redeemers and Shareholders

As indicated above, the Company suspended the calculation of net asset value of the Company on December 18, 2008. As a result, the December 31, 2008 redeeming shareholders as well as all other shareholders continue to be shareholders of the Company. With respect to the November 30, 2008 redeemers, the payment of their proceeds of

February 4, 2009
Page 4 of 5

redemption has been suspended pursuant to the suspension of the calculation of net asset value and article 10(1)(c) of the articles of association of the Company.

Once the Company is in a position to effect redemptions, which may take several years, it is anticipated that all shares will be redeemed at the same time. The result of this is that all shareholders, including the November 30, 2008 redeeming shareholders, the December 31, 2008 redeeming shareholders and the continuing shareholders, should all receive cash at the same time and share pro rata in the assets of the Company.

**December 1 and January 2 Subscribers**

The Company received proceeds of subscription for both the December 1, 2008 and the January 2, 2009 dealing day. The directors have sought advice from both British Virgin Islands counsel, Conyers Dill & Pearman, as well as from Queen's Counsel in London, Richard Millet QC, concerning the nature of such assets. We have carefully considered the facts surrounding such proceeds of subscription. We have been advised by both Conyers Dill & Pearman and Richard Millet QC and we have concluded that such proceeds of subscription are not in fact assets of the Company. Rather, they are assets held in trust by the Company and should be returned to such subscribers. It is our intention to return such proceeds of subscription as soon as is practicable.

**Dutch Court Order**

In the desire to provide full information to shareholders, we have to advise you of a court order freezing the bank account of the Company maintained with Citco Bank Nederland N.V. Dublin Branch obtained by a shareholder of the Company. This court order has frozen the cash in this account. This court order is having a serious detrimental effect on the Company, as it is causing amongst other matters, delays in the Company's ability to retain counsel and pursue potential lawsuits. The effect of this court order is that the Company does not have any cash to pay expenses nor the ability to return the proceeds of subscription to the December 1, 2008 and January 2, 2009 subscribers. The directors of the Company are currently in negotiations with this one investor and hope to resolve this issue soon for the benefit of all shareholders who will all be treated equitably.

**Timeframe**

As indicated above, the Company suspended the calculation of net asset value on December 18, 2008. This had the effect of stopping all cash flows from and to the shareholders of the Company. We are unable to advise as to when the Company will start to realise cash from its assets as described above, including from SIPC as well as any claims the Company may bring. This is likely to take several years. The directors will endeavour to distribute cash when possible, taking into account its cash requirements in order to fund continued operations, including lawsuits, as well contingent liabilities, such as potential clawbacks from SIPC. With this in mind, the directors do not envisage returning cash in the immediate future, but will do so once the directors have determined that it is appropriate to do so.

February 4, 2009
Page 5 of 5

### Conclusion

We wish to assure you that we are acting faithfully and working hard in your best
interests.  It is our intention to recover the losses of the Company to the greatest extent
possible for your benefit.

Yours faithfully,

The Board of Directors

# Exhibit B

## EXHIBIT B

1. The Claimant is not a direct customer of Bernard L. Madoff Investment Securities LLC ("BMIS"), but instead is an investor in Fairfield Sentry Limited, which is believed to be a BMIS customer with claims to securities and other assets of BMIS. The Claimant believes it has or may have in the future a claim in this liquidation proceeding and/or rights to all or a portion of the claims of Fairfield Sentry Limited.

2. This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

3. The information provided in the Claim Form is based on information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

4. The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law or equity.

5. The Claimant hereby requests that the Claim Form be considered as a proof of claim in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

6. This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by applicable law, the Claimant does not, by submitting the Claim Form, consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

7. The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, BMIS and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

Morning Mist Holdings Limited

8. The Claimant further reserves all rights, claims, and/or defenses as to and/or against any persons and/or creditors asserting claims against BMIS, its employees, owners, and/or affiliates, in bankruptcy or otherwise.

9. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever, notwithstanding the submission of any such information to the Trustee.

10. To the extent the Claimant has disclosed to the Trustee documents containing accounting and/or legal advice, the Claimant does not waive any potential privileges applicable thereto.

11. The Claimant reserves all rights with respect to submitting information to the Internal Revenue Service regarding gains, losses, and/or theft of assets.

12. The Claim Form and supporting documents contain confidential information. The Claimant submits this information to the Trustee subject to the condition that this information will not to be disclosed to any third parties, other than under seal to the Court, absent the Claimant's express consent or Court order.

13. The Claimant submits herewith documents in support of the Claimant's claim. The Claimant reserves any arguments that such documents are not relevant to the Trustee's inquiry. The Claimant further reserves the right to supplement this submission, including the submission of additional documents, if deemed necessary. Attached is a list of the documents submitted herewith.

Morning Mist Holdings Limited

**Morning Mist Holdings Limited**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| 1 | 11/14/2008 | Citco Fund Services (Europe) B.V.-Investor Relations Group/Client Desk | Jorge Arias Lazcano | Fairfield Sentry Limited Account Report for the period September 30, 2008 through October 31, 2008. |
| 2 | 9/25/2008 | Citco Fund Services (Europe) B.V. | Jorge Arias Lazcano | Confirmation that Fairfield Sentry Limtied received $900,000 USD through the Citco Bank Nederland NV Dublin Branch. |
| 3 | 9/17/2008 | Fairfield Sentry Limited | Morning Mist Holdings Limited | Fairfield Sentry Limited Subscription Document including Fairfield Sentry Limited Subscription Agreement. |
| 4 | | Registrar of Corporate Affairs of the British Virgin Islands | Morning Mist Holdings Limited | Certificate of Incorporation. |
| 5 | 9/21/2005 | Trident Trust Company | | Appointment of First Directors of Morning Mist Holdings Limited. |

1

**C I T C O**
*Citco Fund Services*
*(Europe) B.V.*

| | | |
|---|---|---|
| DATE | : | **11/14/2008 4:19:26 PM** |
| REF. NUMBER | : | **1009133** |
| COMPANY | : | **JORGE ARIAS LAZCANO** |
| CITY AND COUNTRY | : | |
| ATTENTION OF | : | |
| FAX NUMBER | : | **00 591 3 3324723** |
| FROM | : | **INVESTOR RELATIONS GROUP / CLIENT DESK** |
| CONTACT DETAILS | : | **PHONE: + 31 205722850 FAX: +31 20 5722 610** |
| | | **E-MAIL: AMSCFSCLIENTDESK@CITCO.COM** |
| RE | : | |
| PAGES FOLLOWING | : | **2** |

This fax is confidential and may also be privileged. If you are not the intended recipient, please notify us immediately. You should not copy the fax or use it for any purpose, nor disclose its contents to any person.

MESSAGE    :

Dear Investor,



Please be advised that from now on, our standard reporting will be through email. We will use the email address as on the attached statement. If no email address was previously provided to us, or if you would like to change your details, kindly complete and return the attached form to the contact details below.



If you do not wish to receive correspondence by email, kindly inform us by sending an email to the below email address. Please make sure to mention your Holder ID, Account ID and the Fund it concerns.

Furthermore, please be advised that we also offer on-line access to your account information through our InvestorWeb site at www.citco.com/fundsDivisions_Fund_Services_Client_Login.jsp. In order to get access to your account information online, you need to send an email to cfsinvestor@citco.com, specifying your holder ID, account ID, registered shareholder name and the names and contact details of the persons that need access.

Should you require further information, please feel free to contact us.

Yours sincerely,

*Citco Fund Services (Europe) B.V.*
*Telestone 8 - Teleport*
*Naritaweg 165*
*P.O. Box 7241*
*1007 JE Amsterdam*
*The Netherlands*

*amscfsclientdesk@citco.com*
*www.citco.com*

*Phone : (31-20) 5722 850*
*Fax : (31-20) 5722 610*

# CITCO
### Citco Fund Services
### (Europe) B.V.

**JORGE ARIAS LAZCANO**
**CASILLA #4022**
**SANTA CRUZ**
**BOLIVIA**

| | |
|---|---|
| Date | : Nov-14-2008 |
| Valuation date | : Oct-31-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00033317 |
| Account Id | :    1857 |
| Currency | : US DOLLAR |
| Email | : GERENCIA@GRAVETAL.COM.BO |
| FAX Number | : 00 591 3 3324723 |

Account: JORGE ARIAS LAZCANO

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| Opening Price | Sep-30-2008 | 1,350.6040 |
| Closing Price | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Sep-30-2008 | 0.0000 | 1,350.6040 | 0.00 |
| Add:  Additions | | 666.3685 | | 899,999.96 |
| Less: Subtractions | | 0.0000 | | 0.00 |
| Closing Market Value of Account | Oct-31-2008 | 666.3685 | 1,349.7782 | 899,449.67 |
| Increase or decrease in market value due to change in the price in the period | | | | -550.29 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| 09-30-2008 | Opening Balance of voting shares | | | | | | | 0.0000 |
| 10-01-2008 | Subscription | 69118602 | 899,999.96 | (0.00) | 899,999.96 | 1,350.6040 | 666.3685 | 666.3685 |
| 10-31-2008 | Closing Balance of voting shares | | | | | | | 666.3685 |
| Total Additions | | 1 | 899,999.96 | 0.00 | 899,999.96 | | 666.3685 | |
| Total Subtractions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |

Note: All trade orders must be submitted in writing.  In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610  E-mail: amsterdamweb@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

Phone: (31-20) 5722100
Fax:   (31-20) 5722610
*Chamber of Commerce 33205112*

Kindly complete and return this form to CFS Client Desk, by email: amscfsclientdesk@citco.com. **To maintain shareholder confidentiality, we only update our records upon receipt of signed instructions from the registered shareholder. Therefore, please make sure this form is signed at the bottom.**

Registered shareholder: _____

Fund ID: _____

Holder ID: _____    Account ID: _____

| If you are the registered shareholder, you can expect to receive the following documentation: *Contract Notes, Confirmations of Order Received, Confirmations of Cash Received, Statements of Holding and any Fund related Mailings.* | **Address:**<br><br>....................................................................................<br><br>....................................................................................<br><br>**Phone:** ............................... / **Fax:** ...............................<br><br>**Email addresses\*:**<br><br>1. ................................................................<br><br>2. ................................................................<br><br>3. ................................................................ |
|---|---|
| If you are a **Related Party** for the account specified above, you will receive the below: *Contract Notes, Confirmations of Order Received, Confirmations of Cash Received and Statements of Holding.* | **Address:**<br><br>....................................................................................<br><br>....................................................................................<br><br>....................................................................................<br><br>**Phone:** ............................... / **Fax:** ...............................<br><br>**Email addresses\*:**<br><br>1. ................................................................<br><br>2. ................................................................<br><br>3. ................................................................ |

| Signed By Authorised signatories of the registered shareholder *(min. 2 required for Entity Investors)* | ............................... / ...............................<br><br>............................... / ............................... |
|---|---|

\* For security and ease of administration, a group email address is strongly recommended where an individual recipient may change in the future and/or more than one individual receives the distribution.

Email transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore will not accept liability for any errors, omissions or consequential loss which arises as a result of email transmission.

2

## CITCO
*Citco Fund Services*
*(Europe) B.V.*

### Confirmation of Cash Received

JORGE ARIAS LAZCANO
CASILLA #4022
SANTA CRUZ
BOLIVIA

| | |
|---|---|
| Date | : Sep-25-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00033317 |
| Account Id | : 1857 |
| CFI Cash Id | : 55547102 |
| Order Id | : 1807317 |

FAX Number : 00 591 3 3324723
Email:  GEREUCIA@GRAVETAL.COM.BO

Account name: JORGE ARIAS LAZCANO

### FAIRFIELD SENTRY LIMITED

We confirm the following receipt in respect of:
FAIRFIELD SENTRY LIMITED

| | | |
|---|---|---|
| Date Received | | Sep-23-2008 |
| Amount Received | USD | 900,000.00 |

The above funds were received by the following account:

| | |
|---|---|
| Bank Name: | HSBC BANK USA |
| Bank Address 1: | NEW YORK |
| Bank Address 2: | USA |
| ABA Ref.: | 021001088 |
| SWIFT Ref.: | MRMDUS33 |
| Further Cr. Num: | 000306487 |
| Further Cr. Name: | CITCO BANK NEDERLAND NV DUBLIN BRANCH |
| Further Cr. SWIFT Ref.: | CITCIE2D |
| Beneficiary Acct No: | IE23CITCO0000035810501 |
| Beneficiary Name: | FAIRFIELD SENTRY LIMITED |



Note : 267441084
Upon finalization of the NAV the trade confirmation will be forwarded to you.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 Email: amsterdamweb@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax:   (31-20) 5722610*
*Chamber of Commerce 33205112*

3

## FAIRFIELD SENTRY LIMITED SUBSCRIPTION DOCUMENTS

**Instructions**

A. **All subscribers.** Provide all information requested in the Subscription Agreement and execute in the appropriate place on the signature page.

B. **Items to be delivered by All Subscribers.**

(i)   Completed and signed Subscription Agreement.

(ii)   U.S. dollar denominated funds in the amount of the full purchase price for Shares. Wire transfer funds for the full amount of the subscription to the Fund's escrow account at:

*Intermediary Bank – Field 56*
HSBC Bank, New York
BIC:  MRMDUS33
Fed Wire: 021001088

*Account with Institution – Field 57*
Account Name: Citco Bank Nederland N.V. Dublin Branch
Account Number: 000306487
BIC: CITCIE2D

*Beneficiary Customer – Field 59*
Beneficiary Account Name:  Fairfield Sentry Limited
Beneficiary International Bank Account Number (IBAN):
IE23 CITC 0000 0035 810 501
*Reference – SWIFT Field 70:*  Name and Full Address of Subscriber:

(iii) Subscription documents should be delivered or sent by courier to Fairfield Sentry Limited, c/o Citco Fund Services (Europe) B.V., Telestone 8 ~Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands; fax no.: (31-20) 572-2610.

949

Name of Subscriber: *Morning Mist Holdings Limited*

Amount of Subscription: $ *5 00. 000. —*

## SUBSCRIPTION AGREEMENT

### (NON-UNITED STATES OF AMERICA SUBSCRIBERS ONLY)

### FAIRFIELD SENTRY LIMITED

Fairfield Sentry Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2850
Facsimile: (31-20) 572-2610

Dear Sirs:

1.    Subscription.  The undersigned ("Subscriber") hereby subscribes for voting, participating shares, each with a par value U.S. $0.01 per share (the "Shares") of Fairfield Sentry Limited (the "Fund"), an international business company organized under the laws of the Territory of the British Virgin Islands ("BVI").  The Shares will be offered at the net asset value ("Net Asset Value") per Share as of the opening of business on the effective date of purchase.  The Shares have identical rights and privileges in all respects (including the right to one vote per Share).  All capitalized terms used in this Subscription Agreement (the "Agreement") that are not defined herein have the meanings set forth in the Fund's Private Placement Memorandum (as amended from time to time; the "Memorandum").  Subscriber subscribes for that number of Shares that can be purchased for the subscription amount above.  Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the "Fund Documents").  All references herein to "dollars" or "$" are to U.S. dollars.

2.    Acceptance or Rejection.  If the Fund accepts this subscription, Subscriber shall become a shareholder of the Fund and be bound by the Fund Documents.  The minimum initial subscription is $100,000.  The Board of Directors, in consultation with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), may reject a subscription for any reason or no reason.  Subscriptions shall become irrevocable to the subscriber on the third to the last business day of the month in which such subscription is received by the Fund.  If rejected, the Fund shall promptly return the subscription funds, with any interest actually earned thereon, and this Agreement shall be void.

3.    Payment of Subscription Funds.  Subscription funds should be wired to the Fund at the following account, concurrently with the delivery of this Agreement to the Fund.  In order to comply with anti-money laundering regulations applicable to the Fund and Citco Fund Services (Europe) B.V. (the "Administrator"), the sample bank letter attached hereto as Schedule A MUST be completed by the financial institution which will be remitting the subscription moneys on behalf of the subscriber.

*Intermediary Bank – Field 56*
HSBC Bank, New York
BIC: MRMDUS33
Fed Wire: 021001088

*Account with Institution – Field 57*
Account Name: Citco Bank Nederland N.V. Dublin Branch
Account Number: 000306487
BIC: CITCIE2D

*Beneficiary Customer – Field 59*
Beneficiary Account Name: Fairfield Sentry Limited
Beneficiary International Account Number (IBAN):
IE23 CITC 0000 0035 810 501

*Reference – SWIFT Field 70*: Name and Full Address of Subscriber

    4.    <u>Delivery of Subscription Agreement</u>.  Subscriber should fax and mail an executed, completed copy of this Agreement to the Administrator at the above facsimile number and address, with a copy to the Investment Manager at Fairfield Greenwich (Bermuda) Ltd., 12 Church Street, Suite 606, Hamilton, Bermuda, fax (441) 292-5413.

    5.    <u>Status Representations</u>.

    a.    <u>SEC Regulation S</u>.  Subscriber is not a "U.S. Person" under Regulation S of the U.S. Securities and Exchange Commission (adopted under the U.S. Securities Act of 1933, as amended (the "1933 Act")) because (a) if an individual, Subscriber is not a resident of the United States of America or its territories or possessions (the "U.S.") or "resident alien" as defined under the U.S. income tax laws, and (b) if an entity, Subscriber is not any of the following: (i) a partnership or corporation organized or incorporated under U.S. law; (ii) an estate of which any executor or administrator is a U.S. Person; (iii) a trust of which a trustee is a U.S. Person; (iv) any agency or branch of a foreign entity located in the U.S.; (v) a partnership or corporation organized under non-U.S. law but formed by a U.S. Person principally for the purpose of investing in securities not registered under the 1933 Act (unless organized and incorporated, and owned, by accredited investors as defined in Rule 501 under the 1933 Act who are not natural persons, estates or trusts); (vi) a non-discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary for a U.S. Person; or (vii) a discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the U.S.

Subscriber acknowledges that, except with the consent of the Fund, the Shares may not be owned by a U.S. Person, that the Shares will not at any time be held for the account or benefit, directly or indirectly, of any U.S. Person, and that, except with the consent of the Fund, the Subscriber will not resell, reoffer or transfer any Shares or any interest therein to any person, including a U.S. Person or any non-U.S. Person subject to the above restrictions.  Subscriber acknowledges that reoffers, resales or any transfer of the Shares is subject to the limitations imposed by the Fund's Articles of Association and may be made only in compliance with applicable securities laws and only with the prior written consent of the Board of Directors which may, in its sole discretion, decline to issue any Shares to, or register Shares in the name of, any person, and the Subscriber will not transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible to purchase Shares in

the Fund as described above and in the Memorandum. Subscriber understands that the Fund may compulsorily repurchase such Shares in accordance with the Fund Documents.

      b.     _CFTC Regulation 4.7_. Subscriber is not a "U.S. Person" under Regulation 4.7 of the U.S. Commodity Futures Trading Commission (adopted under the U.S. Commodity and Exchange Act of 1974, as amended) ("Rule 4.7") because (a) if an individual, Subscriber is not a resident of the U.S., and (b) if an entity, Subscriber is not (i) a partnership, corporation or other entity (other than an entity organized principally for passive investment) organized under U.S. law or with its principal place of business in the U.S.; (ii) an entity (whether organized under U.S. or non-U.S. law) that is organized principally for passive investment and that is beneficially owned 10% or more by U.S. Persons or persons who are not otherwise "qualified eligible persons", as defined in Rule 4.7; (iii) an estate or trust the income of which is subject to U.S. income taxation regardless of source; or (iv) a pension plan for the employees, officers or principals of an entity organized or with its principal place of business in the U.S.

      c.     _Professional Investor Status_. Subscriber is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI and the Irish Stock Exchange, because Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000 or, (in the case of an institution) $5,000,000, and Subscriber consents to being treated as a Professional Investor for the purpose of investing in the Fund, and Subscriber warrants that he has such knowledge and expertise in financial matters sufficient to evaluate the risks involved in an investment in the Fund, that he is aware of the risks and can bear the loss of the entire investment in the Fund.

      d.     _Employee Benefit Plans_. Investment in the Fund by "Employee Benefit Plans", as defined under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), may be limited to less than 25% of the total capital of the Fund (excluding investments by the Investor). To help determine whether investment by Subscriber is included in the 25% limitation, Subscriber has initialed here (_____) if it is an Employee Benefit Plan (such as a retirement account, corporate pension or profit sharing plan, or governmental retirement plan). If the Subscriber at any time becomes an Employee Benefit Plan, the Subscriber shall forthwith inform this to the Fund.

If the Subscriber is an insurance company investing the assets of its general account in the Fund, less than 25% of the Subscriber's general account constitutes assets of an Employee Benefit Plan (as determined under Section 401(c) of ERISA). If the Subscriber is such an entity and at any time 25% or more of its general account constitute assets of an Employee Benefit Plan, the Subscriber shall forthwith disclose to the Fund the amount of Employee Benefit Plan assets held in its general account. By signing this Subscription Agreement, the Subscriber expressly acknowledges that the Fund may require that the Subscriber redeem its Shares and withdraw from the Fund if 25% or more of the Subscriber's general account constitutes assets of an Employee Benefit Plan.

      6.     _Related Professionals_.
           (Subscriptions cannot be accepted if this section is not completed)

Please indicate the name of the person at the Fairfield Greenwich Group with whom this subscription is associated.
Name: Santiago Reyes

Please indicate the name, if applicable, of the person and/or entity who acts as an advisor with respect to this subscription.

Name of Advisor:

Name of Advisor's firm or organization:

_____L. P. L._____

Not Applicable: _____

7.    <u>Receipt of Fund Documents and Other Documents</u>. Subscriber has received and read a copy of the Memorandum. Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied solely upon the Fund Documents and independent investigations made by Subscriber and has not relied on any representation inconsistent with the information in the Fund Documents. Subscriber is not relying on the Fund, the Fund's Board of Directors, administrator, the Investment Manager, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. The Subscriber's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for diversification and liquidity.

8.    <u>Subscriber Sophistication and Financial Condition</u>. Subscriber has such knowledge and experience in financial and business matters that it is capable of evaluating the risks of this investment. Subscriber has obtained sufficient information from the Fund or its authorized representatives to evaluate such risks and has consulted with the Subscriber's own advisors and is fully informed as to the legal and tax requirements within the Subscriber's own country (countries) regarding a purchase of the Shares. Subscriber is not relying on the Fund or the Board of Directors, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. Subscriber has not relied on any person as a purchaser representative in connection with that evaluation. Subscriber has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Subscriber. Subscriber's investment is consistent with its investment purposes and objectives and cash flow requirements, and will not adversely affect Subscriber's overall need for diversification and liquidity.

Subscriber understands that (a) the Fund's operating history is not a prediction of its future success; (b) no governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and (c) the representations, warranties, agreements, undertakings and acknowledgments made by the Subscriber in this Agreement will be relied upon by the Fund, the Board of Directors, the Investment Manager and the Administrator in determining the Subscriber's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Subscriber's becoming a shareholder of the Fund.

All information which the Subscriber has provided to the Fund or the Administrator concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

The Subscriber irrevocably authorizes the Fund and/or the Administrator to disclose, at any time, any information held by the Fund or the Administrator in relation to the Subscriber or his investment in the Fund to the Investment Manager or any affiliate of the Investment Manager or the Administrator.

9.      Redemptions. Subscriber is aware of the limited provisions for redemptions and has read the section in the Memorandum entitled "Transfers, Redemptions and Termination." Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the Shares for an indefinite period of time. Subscriber understands that the Fund will generally redeem Shares as of the last day of each month (the "Redemption Date"); provided that the redemption request is received by the Administrator in proper form no later than 5:00 p.m. Amsterdam time on a date that is at least 15 calendar days prior to the Redemption Date.

10.     Valuations. Subscriber understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value.

11.     Beneficial Owner. Subscriber acknowledges, or if the Subscriber is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Subscriber has advised the Beneficial Owner that (a) Fairfield Greenwich Limited ("FGL"), on behalf of the Fund, may enter into agreements with placement agents or other sales relationships to market the Fund providing for a payment from FGL to the particular placement agent for the introduction, out of the fees FGL receives from the Fund. If the Subscriber is acting as agent, representative or nominee for a Beneficial Owner, Subscriber represents that such Beneficial Owner is not a U.S Person under Regulation S, as set forth in Paragraph 5(a) of this Agreement, and if such Beneficial Owner is a corporation, partnership or other business entity, that its principal office and place of business are not in the United States.

12.     Investment Intent. Subscriber is buying the Shares solely for investment purposes and not with a view to distribute, subdivide or resell the Shares.

13.     The Subscriber acknowledges receipt of the Investment Manager's Form ADV Part II at least 48 hours prior to executing this Agreement.

14.     Subsequent Subscriptions. The Subscriber hereby agrees that (i) any statements, representations, warranties or covenants made hereunder will be deemed to be reaffirmed by it at any time it purchases additional Shares by completion of the annexed Additional Subscription Form and such additional contribution will be evidence of such reaffirmation, and (ii) if any of the statements, representations, warranties or covenants made herein become untrue or inaccurate, the undersigned shall immediately notify the Fund.

15.     The Subscriber recognizes that the Investment Manager does not disclose nonpublic personal information about current or former investors in the Fund to third parties other than as described below. The Investment Manager collects information about investors (such as name, address, social security number, assets and income) from its discussions with the investors, from documents that the investor may deliver to the Investment Manager and in the course of providing services for the investor. The Investment Manager may use this information to provide services to the investor, to cause the issuance of Shares of the Fund to the investor or otherwise in furtherance of the Investment Manager's business. In order to effect transactions on behalf of the investor, the Investment Manager may provide such personal information to its affiliates and to firms that assist the Investment Manager or its affiliates in servicing the Fund or other private investment funds managed by the Investment Manager or an affiliate and have a need for such information, such as a broker or fund administrator. The Investment Manager may also disclose such information to service providers. The Investment Manager requires third party service providers to protect the confidentiality of such information and to use the information only for the purposes for which they disclose the information to them. The Investment Manager does not

5

otherwise provide information about the undersigned to outside firms, organizations or individuals except to their attorneys, accountants and auditors or as required or permitted by law. The Investment Manager restricts access to nonpublic personal information about the investor to its employees who need to know that information to provide products or services to the investor. The Investment Manager maintains physical, electronic and procedural safeguards to guard personal information.

16.    _Registration of Shares; Certificates_. The Shares issued to Subscriber will be registered on the Fund's books in the name of Subscriber and not any nominee. Shares will be issued in registered, book-entry form.

17.    _Binding Nature of Agreement_. This Agreement shall be binding upon Subscriber and its heirs, representatives, successors and permitted assigns, and shall inure to the benefit of the Fund's successors and assigns. The Agreement shall survive the acceptance of the subscription. If Subscriber consists of more than one person, the Agreement shall be the joint and several obligation of each person.

18.    _Governing Law_. This Agreement shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions.

19.    _Legal Representation_. Subscriber understands that DLA Piper US LLP acts as U.S. counsel to the Fund, and as counsel to the Investment Manager and its affiliates. Subscriber also understands that, in connection with this offering of Shares and subsequent advice to the Fund, DLA Piper US LLP will not be representing the shareholder, and no independent counsel has been engaged by the Fund to represent the shareholders.

20.    _Authority_. Subscriber's execution, delivery and performance of this Agreement are within its powers, have been duly authorized and will not constitute or result in a breach or default under or conflict with any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which Subscriber is a party or by which it is bound, and, if Subscriber is not an individual, will not violate any provision of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Subscriber. The signature on this Agreement is genuine, and the signatory, if Subscriber is an individual, has legal competence and capacity to execute the Agreement, or, if Subscriber is not an individual, the signatory has been duly authorized to execute the Agreement, and the Agreement constitutes a legal, valid and binding obligation of Subscriber, enforceable in accordance with its terms.

21.    _New York Courts_. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

22.    _Office of Foreign Assets Control_. (A)    Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that

are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

       (B)    Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and (ii) to the extent Subscriber has any beneficial owners[4] or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such beneficial owners, (b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

       (C)    If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

---

[1]   The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]   Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

[3]   Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]   Beneficial owners will include, but shall not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund of funds; (v) the grantor of a revocable or grantor trust (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

(D)   Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

(E)   If any of the foregoing representations cease to be true, Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

23.   <u>Anti-Money Laundering</u>.  Subscriber represents that the subscription funds are not the direct or indirect proceeds of drug trafficking or other such criminal conduct or activity.  Subscriber understands that, as part of the responsibility of the Fund and Administrator for protection against money laundering, the Administrator may require a detailed verification of Subscriber's identity.  Depending on the circumstances of each application, a detailed verification might not be required where Subscriber makes the payment from an account held in Subscriber's name at a recognized financial institution; or the application is made through a recognized intermediary.  These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations.  For example, an individual may be required to produce a copy of a passport or identification card duly certified by a notary public, together with evidence of his/her address such as a utility bill or bank statement and date of birth.  In the case of entity subscribers, this may require production of a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors.  The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of Subscriber.  In the event of delay or failure by Subscriber to produce any information required for verification purposes, the Administrator may refuse to accept the subscription and the subscription monies relating thereto or may refuse to process a redemption request until proper information has been provided.  Subscriber further agrees that the Fund and any other service provider shall be held harmless and indemnified against any loss arising as a result of a failure to process the subscription or redemption or Subscriber's rejection if such information as has been required by the parties referred to has not been provided by Subscriber.

24.   <u>Indemnification</u>.  Subscriber agrees to indemnify and hold harmless the Fund and any of its service providers, and any partner, manager, officer, director, shareholder, agent, employee or affiliate thereof, against any loss, liability or expense relating to (a) any misrepresentation or breach of covenant by Subscriber herein or in any other document furnished by Subscriber in connection with its subscription or (b) any action for securities law violations instituted by Subscriber which is finally resolved by judgment against Subscriber.

Subscriber acknowledges that each director and officer of the Fund is entitled to be indemnified out of the assets of the Fund against all costs, losses or expenses arising from mistakes of judgement or any action or inaction that the person reasonably believed to be within the scope of the authority granted to him, provided that such actions or inactions did not constitute gross negligence, willful misconduct or breach of fiduciary duty.

25.   <u>Enforceability</u>.  If any provision hereof is invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent (and modified to the extent necessary to comply with that law) and its invalidity or unenforceability shall not affect any other provision hereof.

26.   <u>Currencies</u>.  If Subscriber subscribes in a currency other than U.S. Dollars, Subscriber agrees that the Fund may sell such subscription funds at the market rate for that currency and that the Shares will be issued to the value of the proceeds, minus the reasonable costs relating to the sale.

27.    _Appointment of Revocable Proxy._   Subscriber hereby designates and appoints the Administrator, with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by shareholders present in person at that meeting.  This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Administrator at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a shareholder) received before the meeting.

28.    _If Subscriber is acting as a Representative._   If Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder.  Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder.  Subscriber also agrees to indemnify the Fund, the Investment Manager and the Administrator and their respective directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Agreement or perform the obligations hereof.

If the Subscriber enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Subscriber represents and warrants that with respect to a Third Party entering into a Swap:  (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Memorandum and the Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Subscriber is not an agent of the Fund; and (d) the Third Party is an "eligible swap participant" and a "qualified eligible person" under Commodity Futures Trading Commission rules, and an "accredited investor" under Regulation D promulgated under the 1933 Act and a "qualified purchaser" under the Investment Company Act of 1940, as amended.  Subscriber also agrees to indemnify the Fund, the Investment Manager and their respective officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines, and amounts paid in settlement) in connection with any damages resulting from the Subscriber's misrepresentation or misstatement contained herein.  Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

29.    _Country-Specific Disclosures._   Subscriber has reviewed the country-specific disclosures in the Memorandum.

30.    _Additional Information._   The Fund may request from the Subscriber such additional information as it may deem necessary to evaluate the eligibility of the Subscriber to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Subscriber to hold Shares or to enable the Fund to determine its compliance with applicable regulatory requirements or its tax status, and the Subscriber agrees to provide such information as may reasonably be requested.

9

Subscriber agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

31.    Subscriber Information and Execution.

    a.    Amount of Subscription. U.S. $ 500.000.—

    b.    Registration of Shares. The Shares issued to Subscriber are to be registered in the Fund's books in the name of (insert name and address):

Morning Mist Holdings Limited
casilla # 4022 Santa Cruz - Bolivia

    c.    Written Communications. All written communications from the Fund to Subscriber should be sent to Subscriber at the following address (insert address):

casilla # 4022 Santa Cruz - Bolivia

    d.    Telephone, Fax and Email. Telephone: 591-3-3364326
Fax: 591-3-3324723 Email: gerencia @ gravetal.com.bo

    e.    Domicile, Etc. Subscriber, if an individual, is a citizen of Bolivia
_____ and a resident of Bolivia . Subscriber, if an entity, is organized under the laws of BVI _____ and has its principal place of business in
BVI

    f.    Authorized Persons. The names of the persons authorized by Subscriber to give and receive instructions between the Fund and Subscriber, together with their signatures, are set forth below. Such persons are the only persons so authorized by Subscriber until further notice to the Fund by any one of such persons:

| Print Name | Signature |
|---|---|
| 1. Veronica Caballero | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |

| 7.  | |
| 8.  | |
| 9.  | |
| 10. | |

The Administrator and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by Subscriber in written form or by facsimile. If instructions are given by Subscriber by facsimile, Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund, and Subscriber agrees to keep each of them indemnified against any loss of any nature whatsoever arising as to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

g.    Redemption Payments. Until further notice from Subscriber to the Fund, signed by any authorized person listed above, redemption or other payments by the Fund to Subscriber should be wired only to Subscriber and only as follows (please print or type):

Bank name: _Citibank F.S.B._

Bank address: _1401 Brickell Av._

ABA/ CHIPS/ BIC Codes: _6554_

Account name: _Jorge Arcas y/ Veronica Caballero_

Account number: _1811_

For further credit: _____

h.    Financial Institution Wiring/Paying Subscription Monies.

Name: _Citibank N.A._

Address: _21st Floor 111 Wall Street_
_New York, N.Y. 10043 - USA_

Name of account at financial institution being debited for subscription payment: _Bolerter S.A._

Number of such account: _4393_

i.    Execution. In witness whereof, Subscriber has executed this Agreement on the date set forth below:

Date: _09/17/_, 200_8_

For individuals

Print name: _____

Signature: _____

11

<u>For entities</u>

Print name: _Morning Mist Holding Limited_

Print name of authorized signatory: _Jorge Arias_

Print title of authorized signatory: _Director_

Signature: _____

12

## SCHEDULE A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE WIRED.

### SAMPLE LETTER

[to be placed on letterhead of the financial institution remitting payment]

Date

**Via mail and facsimile:** (31-20) 572-2610
Fairfield Sentry Limited
Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

Dear Sirs

RE:    FAIRFIELD SENTRY LIMITED (the "Fund")

1.    Name of Remitting Financial Institution:
2.    Address of Remitting Financial Institution:
3.    Name of Customer:
4.    Address of Customer:
5.    We have credited your account at [Bank], Account Number [number] for [amount] by order of [subscriber] on [date].

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

Yours faithfully,

Signed:          _____

Full Name:       _____

Position:        _____

**For additional information, please contact the Administrator at Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands, Telephone: (31-20) 572-2850, Facsimile: (31-20) 572-2610.**

A-1

4



TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT

(CAP. 291)

CERTIFICATE OF INCORPORATION   (SECTIONS 14 AND 15)

The Registrar of Corporate Affairs of the British Virgin Islands HEREBY CERTIFIES,

pursuant to the International Business Companies Act, Cap. 291, that all

the requirements of the Act in respect of incorporation having been satisfied,

No. 674666

**MORNING MIST HOLDINGS LIMITED**

is incorporated in the British Virgin Islands as an International Business

Company this 2nd day of September, 2005.

Given under my hand and seal at

Road Town, in the Territory of the

British Virgin Islands

REGISTRAR OF CORPORATE AFFAIRS

CRTI001W

5

# MORNING MIST HOLDINGS LIMITED

## (An International Business Company)

### Appointment of First Director/s

We, Trident Trust Company (B.V.I.) Limited, being the subscriber to the Memorandum and Articles of Association of the Company and having the power to appoint the first director/s of the Company hereby appoint the following as the first director/s of the Company:

**Jorge Arias Lazcano**

In witness whereof a duly authorised representative of Trident Trust Company (B.V.I.) Limited has executed this Appointment this 21st day of September, 2005

Authorised Representative

Trident Trust Company (B.V.I.) Limited