**BROWN RUDNICK LLP**
David J. Molton
Martin S. Siegel
Seven Times Square
New York, New York 10036
Telephone: (212)-209-4800
Facsimile: (212)-209-4801

Attorneys for Christopher D. Stride
as Liquidator of and for Fairfield Lambda Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. <br><br> In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) <br><br> **FAIRFIELD LAMBDA LIMITED'S OBJECTION TO THE TRUSTEE'S DETERMINATIONS OF CLAIMS** |

Fairfield Lambda Limited ("Lambda"), by its attorneys, Brown Rudnick LLP, hereby

objects to the four "Notice[s] of Trustee's Determination of Claim[s]" dated December 8, 2009

relating to SIPA customer claims designated by the Trustee as Claims Nos. 014661, 014761,

014762, 014795 and states as follows:

**Background Facts**

1.      Lambda is a business company organized under the laws of the British

Virgin Islands.  Lambda was incorporated on December 7, 1990.  Its registered office is

located in Road Town, Tortola, British Virgin Islands.  Lambda is a shareholder of

Fairfield Sentry Limited ("Sentry") -- a direct customer of Bernard L. Madoff Investment Securities ("BLMIS").

2.        On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"). *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York).  Irving Picard was appointed Trustee ("BLMIS Trustee"), charged with overseeing the liquidation of BLMIS and processing customer claims for money pursuant to SIPA.  *Id.*; 15 U.S.C. 78fff-1(a).

3.        On December 23, 2008, the Court issued an Order directing the BLMIS Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines.  Upon information and belief, the BLMIS Trustee disseminated notice and claim forms to BLMIS's customers in accordance with the Court's Order.

4.        The December 23, 2008 Order further provided that, to the extent the BLMIS Trustee disagrees with the amount set forth on a customer claim form, the BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor . . . ."

5.        On April 23, 2009, Mr. Christopher Stride, Managing Director of Krys & Associates (BVI) Limited, was appointed as Liquidator of Lambda, pursuant to Part VI of the Insolvency Act 2003, of the British Virgin Islands ("the Act").

6.        On July 21, 2009, Mr. Christopher Stride and Mr. Kenneth Krys, Managing Director of Krys & Associates Cayman Limited were jointly appointed as

Liquidators of Sentry and Fairfield Sigma Limited ("Sigma") pursuant to the provisions

of the Act.

7.      Sentry carried on business as an investment fund, largely operating as

what has been called a "feeder fund" into BLMIS.  Indeed, Sentry was the largest feeder

fund into BLMIS with approximately $7.2 billion invested at the end of October 2008.  In

turn, Sigma and Lambda were feeder funds into Sentry.  Sentry's shares are issued in

U.S. dollars, Sigma's in Euros and Lambda's in Swiss Francs.  As of October 2008,

Sigma held approximately EUR 723 million of investments in Sentry and Lambda held

approximately CHF 39 million of investments in Sentry.

8.      Shortly after the appointment of the Lambda Liquidator, Lambda filed

four separate customer claim forms with the BLMIS Trustee because Lambda maintained

four Madoff-related accounts denoted, BLMIS Account No. 1-FN012, BLMIS Account

No.1-FN045, BLMIS Account No.1-FN069 and BLMIS Account No.1-FN070.

Accordingly, as a shareholder of Sentry, Lambda submitted its claims based on the Net

Asset Valuation ("NAV") of its shares in Sentry as of October 2008.  The NAV of the

four Lambda accounts totals $36,676,205.92

9.      Lambda submitted its customer claim forms under its name only and

Lambda did not submit individual claims on behalf of its shareholders.

10.      By notices dated December 8, 2009, the BLMIS Trustee denied all four of

Lambda's customer claims and noted in each denial notice as follows:

> Based on a review of available books and records of BLMIS by
> the Trustee's staff, you did not have an account with BLMIS.
> Because you did not have an account, you are not a customer of
> BLMIS under SIPA as that term is defined at 15 U.S.C.
> § 78*lll*(2).  Accordingly, your claim for securities and/or a credit
> balance is DENIED.

**Grounds for Objection**

**Lambda is a "customer" under SIPA**

11.     SIPA protects the assets of investors held by broker-dealers who become

insolvent.  As explained by the Supreme Court, Congress enacted the law to protect and

restore investor confidence in the capital markets.  *See Securities Investor Protection*

*Corp. v. Bourbor*, 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v.*

*Bernard L. Madoff Investment Securities, LLC* ("Madoff"), 401 B.R. 629, 633-34 (Bankr.

S.D.N.Y. 2009).  SIPA created the Securities Investor Protection Corporation ("SIPC") to

administer SIPA.  15 U.S.C. §78ccc.  In a liquidation proceeding, the SIPC fund is

available to "customers" if the debtor's general estate is insufficient to pay "customer

claims."  According to SIPA, only "customers," a term of art defined in 15 U.S.C. §

78*lll*(2), will be protected.  A denial of "customer" status would relegate an investor to a

general unsecured creditor who can only seek recovery from the general estate.  *Madoff*,

401 B.R. at 634.

12.     SIPA defines "customers" as:

> Any person (including any person with whom the debtor deals as
> principal or agent) who has a claim on account of securities
> received, acquired, or held by the debtor in the ordinary course of
> its business as a broker or dealer from or for the securities
> accounts of such person for safekeeping, with a view to sale, to
> cover consummated sales, pursuant to purchases, as collateral
> security, or for purposes of effecting transfer. The term
> "customer" includes any person who has a claim against the
> debtor arising out of sales or conversions of such securities, and
> any person who has deposited cash with the debtor for the
> purpose of purchasing securities . . . .

15 U.S.C. §78*lll*.

13.     Lambda contends it is a "customer" under the plain definition of

"customer" in SIPA. Thus, it is entitled to receive the statutory maximum of $500,000 in

4

SIPC insurance for each of its four claims.  *See* 15 U.S.C. § 78*lll*(2) ("The term

"customer" includes . . . any person who has deposited cash with the debtor for the

purpose of purchasing securities.").  *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635

(Bankr. S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose

of effecting securities transactions . . . triggers customer status. . ."); *SEC v. Ambassador*

*Church Financial Devel. Group, Inc.*, 679 F. 2d 608, 614 (6th Cir. 1982); *In re Primeline*

*Sec. Corp.*, 295 F. 3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who

try to attempt to invest through their brokerage firm but are defrauded by dishonest

brokers . . . If a claimant intended to have the brokerage purchase securities on the

claimant's behalf and reasonably followed the broker's instructions regarding payment,

the claimant is a 'customer' under SIPA even if the brokerage or its agents

misappropriate the funds"); *Miller v. DeQuine* (*In re Stratton Oakmont, Inc.*), 2003 WL

22698876 at *3 (Bankr. S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of

Claimants' property makes them customers within the meaning of SIPA.").

14.    Any ambiguity in the definition of "customer," and there is none here,

should be construed in favor of Lambda because SIPA is remedial legislation.  As such, it

"should be construed broadly to effectuate its purposes."  *Tcherepin v. Knight*, 389 U.S.

332, 336 (1967).

15.    Although Lambda asserts it falls within section 78*lll* under the plain

reading of the statute, the BLMIS Trustee has taken the position that only direct investors

with BLMIS are "customers" under SIPA.  The reality in this case is, however, that

Madoff perpetrated the largest ponzi scheme in the history of America.  Feeder funds

attracted new investors for the disclosed purpose of investing in BLMIS, and there is no

substantive difference under SIPA's remedies between those who gave the Debtor, BLMIS, their funds directly and Lambda, who invested in a feeder fund which then invested in BLMIS.

16.    Whether a SIPA claimant is a "customer" under SIPA should not depend upon whom a customer handed its money to, or even where the funds were initially deposited.  *See In re Old Naples Securities, Inc.*, 223 F.3d 1296, 1302-1303 (11th Cir. 2000).  The issue should instead depend upon whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation."  *Id.* (internal quotations omitted).  Here, Lambda can show that there was "actual receipt, acquisition or possession" of its property by the Debtor.

17.    The securities market has changed and many securities transactions are held in "street names" or via mere book-entries.  The fact that there is no direct statement from the Debtor to Lambda is of no significance under SIPA.  Indeed, complicated financial transactions like repos and reverse repos have been given "customer" status. *See In re Beville, Bresser & Schulman Asset Management Corp.*, 67 B.R. 557 (Bankr. D. N.J. 1986).  The issue here is less complicated and, in fact, one of equity.  Lambda has suffered financial losses which have had devastating impacts upon its shareholders.  Such losses are no less real merely because Lambda did not directly send the Debtor its property.  As such, Lambda should be determined to be a BLMIS customer and entitled to payment from the SIPC fund.

**Reservation of Rights & Joinder of Objections**

18.    Lambda reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Lambda's right to object on any additional grounds.

19.    Lambda reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

20.    Lambda reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

21.    Lambda incorporates by reference all reservations of rights set forth in the Lambda customer claims.

22.    To the extent applicable, Lambda joins in the Objections of other claimants in the same or similar position and reserves its right to respond to the BLMIS Trustee and to the extent it deems necessary, to file supplemental memoranda of law.

**Relief Requested**

23.    For the reasons stated, the Court should find Lambda within the definition of 15 U.S.C. § 78*lll*(2).

Dated: January 7, 2010
      New York, New York

Respectfully submitted,

**BROWN RUDNICK LLP**


By:  /s/ David J. Molton, Esq.
David J. Molton
Martin S. Siegel
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

*Attorneys for Christopher D. Stride as*
*Liquidator of and for Fairfield Lambda Limited*