# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: ___Trustees of Tufts College_____
Mailing Address: ___Investment Office, 151 Merrimac St. # 600_____
City: __Boston_____ State: __MA_____ Zip: __02114____
Account No.: ___see attachment_____
Taxpayer I.D. Number (Social Security No.): ___[redacted]3634_____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of    $ 20,000,000.00

    b.    I owe the Broker a Debit (Dr.) Balance of    $ 0

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.    $ 0

    d.    If balance is zero, insert "None."    see Attachment

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

| | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.      If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | see Attachment | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  Christopher G. Green, Ropes & Gray LLP, One International Place, Boston, Massachusetts 02110-2624                            .

502180406

3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____    Signature _____
                                **Executive Vice President, Tufts University**

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Name of Customer:      **Trustees of Tufts College**
Mailing Address:       **Investment Office**
                              **151 Merrimac St. #600**
                              **Boston, MA 02114**

Beginning on July 1, 2005, the Trustees of Tufts College (the "Customer") deposited cash in the amount of $20,000,000.00 to be invested in Ascot Partners, L.P.. The Customer's $20,000,000.00 cash was then deposited by Ascot Partners, L.P. with Bernard L. Madoff Investment Securities LLC ("BLMIS") to purchase various securities. The Customer did not redeem or otherwise withdraw any amount of its cash deposited with BLMIS.

Attached hereto as Exhibit A is the Customer's statement from the Gabriel Capital Group dated December 2, 2008, identifying the value of Customer's deposit with BLMIS.

Attached hereto as Exhibit B are the Customer's subscription confirmations setting forth the amounts deposited with BLMIS through Ascot Partners, L.P.. As set forth in Exhibit B, the Customer deposited $15,000,000.00 on July 1, 2005, and $5,000,000.00 on April 1, 2008.

The Customer acknowledges that the Trustee has reported to have found no securities purchased on behalf of customers for at least the past thirteen years and does not expect to discover any such securities. Accordingly, the Trustee has reported that he does not foresee any valid claims for securities. To the extent that any valid securities claims exist due to any future recovery of securities by the Trustee, or otherwise, the Customer expressly claims any and all such securities purchased for its benefit.

11641556_1.DOC

# EXHIBIT A

# GABRIEL CAPITAL GROUP

450 Park Avenue
New York, NY 10022
TELEPHONE 212 838-7200
FACSIMILE  212 838-9603

TO:    TUFTSTEAM
       (617) 946-8132

       MR. ANDREW MUTSCHLER
       (617) 627-6754

FROM:  MICHAEL J. ACHILARRE

DATE:  DECEMBER 2, 2008

RE:    **ESTIMATED PARTNERSHIP VALUATION / RETURN**

---

The estimated net value of your partnership interest in Ascot Partners, L.P. is as follows:

|                              | 1/1/08 Balance | 11/30/08 Balance | YTD % |
|------------------------------|----------------|------------------|-------|
| **Ascot Partners, L.P.**     |                |                  |       |
| TUFTS UNIVERSITY             | $19,198,899    | $20,681,948      | 7.7%  |
| TUFTS UNIVERSITY - 4/1/08    | $5,000,000     | $5,316,586       | 6.3%  |

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

# EXHIBIT B



# TUFTS UNIVERSITY

April 28, 2005

Mr. Michael E. Autera, Jr.
Ascot Partners, L.P.
Gabriel Capital Group
450 Park Avenue
New York, NY  10022

Dear Mike:

Attached please find the executed subscription agreement for the Ascot Partners, L.p. on behalf of the Trustees of Tufts College.  The Trustees of Tufts College is investing a total of $15,000,000.00 on July 1, 2005.

This letter outlines the Tufts University's current investment staff, reporting requirements and wiring instructions.

Investment Office Contacts

The principal business address is:

> Investment Office
> Tufts University
> 151 Merrimac Street, Suite 600
> Boston, MA  02114  USA
> phone:  617.627.6707
> fax:      617.627.6754

Please provide information about Tufts' investment to the following staff members.

> Shawna Kristin, Investment Performance Analyst, 617.627.6749
> Elisabeth Lang, Director of Operations, 617.627.6753
> Renee Nadler, Senior Investment Officer, 617.627.3491

As outlined in Tufts' corporate resolution, I remain fully authorized to give and receive instructions between the Fund or its administrator and the University.  I am the only person so authorized until further written notice to the Fund is provided.

Investment Office
151 Merrimac Street, Suite 600
Boston, MA 02114
(617) 628-5000  Fax: (617) 627-6754

Page Two

<u>Custodial Contacts</u>

Our custodian bank is Mellon Trust of New England.  The Mellon contact information is:

> Mellon Trust of NE
> 135 Santilli Highway
> Everett, MA  02149-1950
> Attn: Bryan LeDuc, Carrie Cassidy & Charlie Teeple
> leduc.br@mellon.com
> phone: 617.382.4339
> fax:    617.382.2819

Wiring instructions are:

| | |
|---|---|
| Bank: | Mellon Trust of NE/Boston Safe Deposit & Trust |
| Address: | 135 Santilli Highway, Everett, MA |
| ABA Number: | 011-001-234 |
| DDA Account #: | 108111 |
| For further credit to: | Tufts Ascot Account / [redacted]5-002 |
| Reference: | Your organization's name |

<u>Reporting Requirements</u>

The Investment Office and custodian have agreed upon a reporting schedule to enable our office to disseminate performance and accounting information in a timely fashion, and thereby comply with our reporting requirements to the Trustees and the Administration.  We have agreed that our investment managers will provide to Mellon performance information as follows:

- by the <u>close</u> of the 7th business day after the end of the calendar month, a final estimate of the market value of the Tufts portfolio/investment.

Going forward, please provide the information directly to Mellon Trust of New England by the 7th business day of each month using the following format:

| | # of Shares | NAV | Final Market value | Monthly Return | Calendar YTD Return | Fiscal YTD |
|---|---|---|---|---|---|---|
| Return Previous Month | _____ | _____ | $_____ | ____% | ____% | ____% |

| | # of Shares | NAV | Estimated Market value | Monthly Return | Calendar YTD Return | Fiscal YTD |
|---|---|---|---|---|---|---|
| Return Current Month | _____ | _____ | $_____ | ____% | ____% | ____% |

Page Three

We have arrived at this deadline in consultation with a cross-section of our managers.  If for any
reason your firm is unable to provide the information according to this schedule, please contact
Elisabeth Lang immediately.

For Tufts' reporting purposes, we would appreciate all reports to be emailed to the four
Investment Office staff members at the following addresses:

> smdungan@invoff.trustees.tufts.edu
> skristin@invoff.trustees.tufts.edu
> elang@invoff.trustees.tufts.edu
> rnadler@invoff.trustees.tufts.edu

A hard copy of all correspondence should be sent to:

> Elisabeth Lang
> Director of Operations
> Investment Office
> Tufts University
> 151 Merrimac Street, Suite 600
> Boston, MA  02114  USA

If you have any questions, please contact Elisabeth Lang at 617.627.6753.  Thank you.

Sincerely,

Sally M. Dungan
Chief Investment Officer

# ASCOT PARTNERS, L.P.

450 Park Avenue
New York, NY 10022
Telephone 212 838-7200
Facsimile 212 838-9603

April 9, 2008

Ms. Sally M. Dungan
Trustees of Tufts College
Investment Office
151 Merrimac Street
Suite 600
Boston, MA   02114

Dear Ms. Dungan,

This letter should serve as formal confirmation of your new Class C investment in Ascot Partners, L.P., of $5,000,000.00 on April 1, 2008.

Please do not hesitate to call me if any questions arise or if I may be otherwise helpful.

Sincerely yours,

J. Ezra Merkin
General Partner

# ASCOT PARTNERS, L.P.

## Subscription Documents

## ASCOT PARTNERS, L.P.

### INVESTMENT PROCEDURES

Prospective Investors should read the Confidential Memorandum for Ascot Partners, L.P. (the "Partnership") and the Limited Partnership Agreement of the Partnership as well as this booklet prior to subscribing for a limited partnership interest (the "Interest").

Please complete all applicable pages as indicated below and promptly return this booklet to J. Ezra Merkin (the "General Partner") to reserve an Interest in the Partnership:

- ☐ Background Documentation (pages 2-3)

- ☐ Investor Profile Form (page 11)

- ☐ General Eligibility Representations (pages 12-19)

- ☐ Certification of Non-Foreign Status & Substitute Form W-9 (page 13)

- ☐ Wiring Instructions (page 20)

- ☐ Signature Page (page 21)

- ☐ Notarization Acknowledgment (page 22)

BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations, you are required to provide the following information:

I.    Payment Information

   (a)    Name of the bank from which your payment to the Partnership is being wired (the "Wiring Bank"):
   _____Mellon Trust of New England_____

   (b)    Is the Wiring Bank located in the U.S. or another "FATF Country"?

   __X__Yes    ____No

   If yes, please answer question (c) below.

   If no, please provide the information described in Item II below.

   (c)    Are you a customer of the Wiring Bank?

   _X_ Yes    ____No

   If yes, you may skip Item II below.

   If no, please provide the information described in Item II below.

II.    Additional Information

*Note:  This section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the General Partner:**

**For Individual Investors, Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

   ☐    A government issued form of picture identification (*e.g.*, passport or driver's license) of the individual or individual plan participant.

   ☐    Proof of the individual's or the individual plan participant's current address (*e.g.*, current utility bill), if not included in the form of picture identification.

**For Fund of Funds or Entities that Invest on Behalf of Third Parties Not Located in the U.S. or Other FATF Countries**

---

As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are:  Argentina, Australia, Austria, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States.

☐     A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (e.g., certificate of good standing).

☐     An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐     A completed copy of Exhibit B certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or foreign anti-money laundering laws and regulations.

☐     A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (i.e., the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

**For All Other Entity Investors**

☐     A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (e.g., certificate of good standing).

☐     An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐     A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (i.e., the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

☐     If the prospective investor is a privately-held entity, a completed copy of Exhibit D listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐     If the prospective investor is a trust, a completed copy of Exhibit E listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note:** Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the General Partner. Note that exceptions to any of the above requirements may only be made with the consent of the Compliance Officer. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the General Partner and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.

**For additional information, please contact J. Ezra Merkin at 212-838-7200.**

ASCOT PARTNERS, L.P.

SUBSCRIPTION AGREEMENT

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin
**Re:  Ascot Partners, L.P.—Issuance of Limited Partnership Interests**

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a limited partner of Ascot Partners, L.P. (the "Partnership"), a Delaware limited partnership, and to purchase a limited partnership interest (an "Interest") in the Partnership upon the terms and conditions set forth herein, in the Confidential Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement").

Accordingly, the Investor agrees as follows:

I.      SUBSCRIPTION FOR AN INTEREST

(A)     The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and, in connection therewith, subscribes for and agrees to purchase an Interest in and to make a capital contribution (a "Capital Contribution") to the Partnership. Payment in good funds for an Interest must be received prior to the closing date established by the Partnership for the subscription (the "Closing Date").  Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Partnership in a non-interest bearing account.  The minimum initial subscription is $500,000, subject to the discretion of J. Ezra Merkin (the "General Partner") to accept a lower amount.

(B)     The Investor understands and agrees that the Partnership reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part, and at any time prior to its acceptance.  If the subscription is rejected, the Payment will be returned promptly to the Investor and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Partnership, the Investor shall become a Limited Partner.

II.     REPRESENTATIONS AND COVENANTS OF THE INVESTOR

The Investor will not sell or otherwise transfer the Interest without registration under the Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom.  The Investor understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available.  The Investor understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from registration under the Securities Act.  Furthermore, the Interest can only be transferred with the prior authorization of the General Partner,

which may be withheld in General Partner's sole discretion. The Investor understands that the General Partner may cause a compulsory withdrawal of all or any portion of the Investor's Interest in accordance with the Partnership Agreement.

(A)    The Investor has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership. The Investor acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for an Interest, the Investor has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Investor. The Investor is not relying on the Partnership or the General Partner, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Interest is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for an Interest as a result of or pursuant to (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site that is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

(B)    The Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the General Partner.

(C)    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Partnership and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of an Interest and has determined that the Interest is a suitable investment for the Investor.

(D)    The Investor is aware of the limited provisions for transferability and withdrawal from the Partnership and has read the sections of the Memorandum entitled "Summary of Restated Partnership Agreement—Limited Partner Withdrawals" and "—Transfer of Interests." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Interest and can afford to hold the investment for an indefinite period of time. The Investor acknowledges that distributions, including, without limitation, the proceeds of withdrawals, may be paid in cash or in kind.

(E)    The Investor is acquiring the Interest for its own account, for investment purposes only and not with a view toward distributing or reselling the Interest in whole or in part.

(F)     The Investor understands the method of compensation under the Partnership Agreement between the Partnership and the General Partner and understands the profit allocation (as described in the Partnership Agreement) and its risks including that:

    (1)     the profit allocation may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case in the absence of a profit allocation; and

    (2)     the General Partner may receive increased compensation since the profit allocation will be calculated on a basis which includes realized and unrealized appreciation.

(G)     The Investor understands that:

    (1)     No federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment; and

    (2)     The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Agreement will be relied upon by the Partnership and the General Partner in determining the Investor's suitability as a purchaser of an Interest and the Partnership's compliance with federal and state securities laws, and shall survive the Investor's admission as a Limited Partner.

(H)     The Investor has all requisite power, authority and capacity to acquire and hold the Interest and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Interest, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Partnership or the General Partner, will furnish to the Partnership a true and correct copy of any instruments governing the Investor, including all amendments thereto.

(I)     All information which the Investor has provided to the Partnership or the General Partner concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(J)     The Investor understands that the value of a Limited Partner's capital account and withdrawals therefrom under the Partnership Agreement, and the performance of the Partnership, may be based on unaudited and in some cases, estimated, valuations of the Partnership's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(K)     The Investor understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the United States. The Investor understands that the Partnership complies with Section 3(c)(7) of the Company Act, which permits private investment companies (such as the Partnership) to sell their interests, on a private placement basis, to an unlimited number of investors that are "qualified

3

purchasers" under the Company Act. If the Investor is an entity, the Investor represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Investor pro rata in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt in or out of investments made by the Investor, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

(L)     If the Investor is a plan (a "Plan") as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

(1)     such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, and/or Section 4975(e)(3) of the Code and such person is authorized to execute the Subscription Agreement;

(2)     unless otherwise indicated in writing to the Partnership, the Plan is not a participant-directed defined contribution plan;

(3)     the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interests and has determined that, in view of such considerations, the purchase of an Interest is consistent with the Fiduciary's responsibilities under ERISA.  Such factors include, but are not limited to:

(a)     the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)     whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result there from;

(c)     the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

(d)     the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)     the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and

(f)     the risks associated with an investment in the Partnership and the fact that the Investor has only limited withdrawal rights.

(4)     the investment in the Partnership has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

(5)     the Fiduciary is: (a) responsible for the decision to invest in the Partnership; (b) independent of the Partnership; and (c) qualified to make such investment decision;

4

(6)    neither the General Partner nor any of its employees or affiliates: (a) manages any part of the Investor's investment portfolio on a discretionary basis; (b) regularly gives investment advice with respect to the assets of the Investor; (c) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the Investor's investment decisions; or (d) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives individualized investment advice concerning the Investor's assets;

(7)    if any of the foregoing representations in subsection (6) above are false, this subscription for Interests will be rejected unless all of the representations and warranties in this subsection (7) are true and correct:

(a)    though the General Partner may have provided the Fiduciary with a copy of the Memorandum, the Fiduciary, who is independent of the General Partner, has studied the Memorandum and has made an independent decision to purchase Interests solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Investor; and

(b)    The Investor represents and warrants that neither the General Partner nor any of its employees or affiliates: (1) has exercised any investment discretion or control with respect to the Investor's purchase of the Interests; (2) has authority, responsibility to give, or has given individualized investment advice with respect to the Investor's purchase of the Interests; or (3) is the employer maintaining or contributing to such Plan.

(M)    If the Investor is a corporation, partnership, limited liability company, trust or other entity, it is not a benefit plan investor (a "Benefit Plan Investor") as defined under the Department of Labor Regulation Section 2510.3-101(f), and less than 25% of the value of each class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined). If the Investor is a Benefit Plan Investor because either (a) it is an employee benefit plan ("Employee Benefit Plan") within the meaning of Section 3(3) of ERISA, or (b) 25% or more of the value of each class of equity interests in the Investor (excluding from such computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors, or if the Investor becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the General Partner promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. By signing this Subscription Agreement, the Investor expressly acknowledges that the Partnership may require that the Investor completely withdraw from the Partnership if the Investor is an Employee Benefit Plan or if 25% or more of the value of any class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors (as so defined).

(N)    If the Investor is an insurance company investing the assets of its general account in the Partnership, none of the Investor's general account constitutes assets of an employee benefit plan ("Employee Benefit Plan") as defined in Section 3(3) of ERISA. If the Investor is such an entity and any portion of its general account assets constitute assets of an Employee Benefit Plan (as so defined) or, at any time any portion of its general account become assets of an Employee Benefit Plan, the Investor shall forthwith disclose to the General Partner the percentage of its general account assets held by Employee Benefit Plans. By signing this Subscription Agreement, the Investor expressly acknowledges that the Partnership may require that the

5

Investor completely withdraw from the Partnership if any portion of the Investor's general account constitutes assets of an Employee Benefit Plan.

(O)     The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(P)     The Investor understands that Schulte Roth & Zabel LLP acts as counsel to the Partnership, the General Partner and its affiliates. The Investor also understands that, in connection with this offering of Interests and subsequent advice to the Partnership, the General Partner, and its affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Partnership, including the Investor, and no independent counsel has been retained to represent investors in the Partnership.

(Q)     If the Investor is a "charitable remainder trust" within the meaning of Section 664 of the Internal Revenue Code of 1986, as amended, the Investor has advised the General Partner in writing of such fact and the Investor acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

(R)     The Investor understands and agrees that, although the Partnership will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.*, affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's Capital Contributions including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemption thereto by the Partnership, the General Partner or its affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Partnership, the General Partner or its affiliates are a party or by which they are or may be bound. The Partnership may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law or in connection with any government or self regulatory organization request or investigation.

(S)     **Prospective Investors should check the OFAC website at <http://www.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and Executive Orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.[*] The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs")

---

[*] These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(1)     the Investor;

(2)     any person controlling or controlled by the Investor;

(3)     if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)     any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Partnership may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor can not make these representations, the Partnership may require the withdrawal of interests.

The Investor agrees promptly to notify the Partnership should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Partnership may be obligated to "freeze the account" of such Investor, either by prohibiting additional investments from the Investor, declining any withdrawal requests and/or segregating the assets in the account in compliance with governmental regulations, and the Partnership may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the General Partner may, by written notice to the Investor, suspend the payment of withdrawal proceeds to such Investor if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the Investment Manager or any of the Partnership's other service providers.

(T)     The Investor represents and warrants that, to the best of its knowledge, none of:

(1)     the Investor;

(2)     any person controlling or controlled by the Investor;

(3)     if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)     any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

---

[*]     A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

(U)    If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Partnership that:

   (1)    the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

   (2)    the Foreign Bank employs one or more individuals on a full-time basis;

   (3)    the Foreign Bank maintains operating records related to its banking activities;

   (4)    the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

   (5)    the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(V)    The Investor understands and agrees that any withdrawal proceeds paid to it will be paid to the same account from which the Investor's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

## III.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Partnership, its General Partner, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

(B)    The Investor hereby appoints the General Partner of the Partnership as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

   (1)    any partnership certificate, business certificate, fictitious name certificate, or amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state, local or foreign law;

   (2)    the Partnership Agreement and any amendment duly approved as provided therein; and

---

**    "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

***    A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

8

(3)     any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including a certificate of cancellation of the certificate of limited partnership).

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetency, termination, bankruptcy, insolvency or dissolution of the Investor; *provided, however,* that this power of attorney will terminate upon the substitution of another Limited Partner for all of the Investor's investment in the Partnership or upon the withdrawal of the Investor from the Partnership. The Investor hereby waives any and all defenses which may be available to contest, negate or disaffirm the actions of the General Partner taken in good faith under such power of attorney.

(C)     If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(D)     If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the General Partner may require such Investor to fully withdraw from the Partnership as permitted under the Limited Partnership Agreement of the Partnership.

## IV.     TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor agrees to indemnify the Partnership, the General Partner and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum, the Partnership Agreement and the Subscription Agreement; (c) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (d) the Third Party is an "eligible contract participant" under Commodity Futures Trading Commission rules, an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act and is eligible to receive "hot issues" because it is not a restricted person as contemplated under the rules of the National Association of Securities Dealers, Inc. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

9

## V.  ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Partnership may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's or the General Partner's compliance with applicable regulatory requirements or the Partnership's tax status, and the Investor agrees to provide such information as may reasonably be requested.

The Investor agrees to notify the General Partner promptly if there is any change with respect to any of the information or representations made herein and to provide the General Partner with such further information as the General Partner may reasonably require.

This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts.  Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

**GEORGIA SUBSCRIBERS.**  The Interests have been issued or sold in reliance on Paragraph (13) of Code Section 10-5-9 of the Georgia Securities Act of 1973, and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

ASCOT PARTNERS, L.P.

INVESTOR PROFILE FORM

## ALL INVESTORS MUST COMPLETE THIS PAGE.

Trustees of Tufts College

Name of Investor (Please Print or Type)

$ 15,000,000.00

Amount of Subscription

[redacted]3634

Social Security No./Tax I.D. Number

Type of Investor—Please check one:

☐ Individual   ☐ Registered  Investment Company   ☐ Joint Tenants (with Rights of Survivorship)   ☐ Employee Benefit Plan

☐ Partnership   ☐ Limited Liability Company   ☐ Tenants in Common   ☐ Individual Retirement Plan
☒ Corporation   ☐ Trust   ☐ Foundation   ☐ Keogh Plan
☐ Endowment   ☐ Charitable Remainder Trust

Other —Specify:_____

Full Mailing Address (Exactly as it should appear on labels):

☐ Mr.   ☐ Mrs.   ☐ Ms.   ☐ Miss   ☐ Dr.   ☐ Other _____

| T | r | u | s | t | e | e | s | | o | f | | T | u | f | t | s | | C | o | l | l | e | g | e |

| I | n | v | e | s | t | m | e | n | t | | O | f | f | i | c | e |

| 1 | 5 | 1 | | M | e | r | r | i | m | a | c | | S | t | . | | # | 6 | 0 | 0 | | 0 | 2 | 1 | 1 | 4 |

| 6 | 1 | 7 | | 6 | 2 | 7 | – | 6 | 7 | 0 | 7 | | | 6 | 1 | 7 | | 6 | 2 | 7 | – | 6 | 7 | 5 | 4 |

Telephone number                    Fax number

Residence (if an individual) or Principal Place of Business (if an entity) Address (No P.O. Boxes Please):

Telephone number                    Fax number

Attention:_____

E-mail address:  smdungan@invoff.trustees.tufts.edu

## COMMUNICATIONS TO INVESTOR

Please send all communications to (Initial one):

____/JD____   Mailing Address   _____   Residence or Principal Place of Business Address
*Initial*                        *Initial*

11

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.   **INVESTOR INFORMATION**

   (1)   Formation Date of Entity, if applicable:   __1852_____

   (2)   If an entity, the Investor is organized under the laws of:   __Massachusetts, USA_____

   (3)   Was the Investor referred to the Partnership by a Placement Agent?      Yes _____   No
          _X___

          If yes, please provide name of Placement Agent: _____

   (4)   The Investor _____ (is) __X___ (is not) (*check one*) a "benefit plan investor" (*e.g.*, any
          employee pension benefit plan or employee welfare plan, including a non-U.S. pension fund).

          (a)   If the Investor is a benefit plan investor, it ___ (is) ___ (is not) subject to the fiduciary
                 responsibility provisions of the Employee Retirement Income Security Act of 1974, as
                 amended ("ERISA") and/or the prohibited transaction provisions of Section 4975 of the
                 Internal Revenue Code of 1986, as amended (the "Code").

          (b)   If the Investor is a life insurance company, it ___ (is) ___ (is not) investing in the Fund with
                 assets from its general account and _____% of its general account constitute plan assets
                 within the meaning of ERISA.

   (5)   If the Investor is exempt from U.S. Federal income tax, please indicate the basis for the
          exemption:   __501 (c) (3) corporation, non-profit university_____

   (6)   Is the investor a registered investment company, or a company that is excluded from the
          definition of investment company solely by reason of the provisions of either Section 3(c)(1) or
          Section 3(c)(7) of the Investment Company Act of 1940, as amended?

                              Yes         (No)

   If the answer to the question above is yes, please state the number of the investor's beneficial owners:

   _____

ASCOT PARTNERS, L.P.

**II.**     <u>CERTIFICATION OF NON-FOREIGN STATUS & SUBSTITUTE FORM W-9</u>

For All Investors

The Investor certifies that it is a U.S. person and that it is **NOT** (1) a non-resident alien or (2) a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, including income tax regulations) for purposes of U.S. Federal income taxation. The Investor agrees to notify the Partnership within 60 days of the date it becomes a foreign person or entity. The Investor further certifies that its name, U.S. tax identification number, home address (in the case of an individual) and business address (in the case of an entity), as they appear on the Investor Profile Form in this Subscription Agreement, are true and correct. The Investor further certifies that it is **NOT** subject to backup withholding because either (1) it is exempt from backup withholding, (2) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (3) the IRS has notified it that it is no longer subject to backup withholding. *   The Investor makes these certifications under penalty of perjury and understands that they may be disclosed to the IRS by the Partnership and that any false statement contained in this paragraph could be punished by fine and/or imprisonment.

_____     _____
Signature                                                 Date

---

\*     The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

13

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

III.    INVESTOR ELIGIBILITY

i.    The Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act as set forth on Schedule I hereto.  **Read Schedule I carefully and check the appropriate boxes below.**

Individuals:

☐ (I)a  or  ☐ (I)b

Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies:

☒ (II)a  or  ☐ (II)b

Employee Benefit Plans:

☐ (III)a  or  ☐ (III)b  or  ☐ (III)c

Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans:

☐ (IV)

Section 501(c)(3) Organizations:

☒ (V)

Trusts:

☐ (VI)a  or  ☐ (VI)b  or  ☐ (VI)c

Banks, Savings and Loans, and Similar Institutions:

☐ (VII)

Insurance Companies:

☐ (VIII)

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

ii.     The Investor is a "qualified purchaser" under the Company Act (generally, $5 million in qualified investments for individuals and family entities and $25 million in qualified investments for non-family entities) as set forth on Schedule II hereto.  **Read Schedule II carefully and check the appropriate boxes below.**

| | |
|---|---|
| Individuals: | ☐ (I) |
| "Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or Other "Family" Entities: | ☐ (II)a-c |
| Trusts (Other Than Trusts That Qualify under II or IV hereof): | ☐ (III)a-b |
| Other Entities: | ☒ (IV)a-b |
| Entities That Do Not Qualify under II-IV: | ☐ (V) |
| All Investors That Are Entities: | ☐ (VI)a    ☐ (VI)b*    ☐ (VI)c* |
| Investors That Checked II or III May Check VII Instead of VI: | ☐ (VII) |
| *Investors That Checked VI(b) or VI(c) Must Also Respond YES or NO To Item VIII: | ☐ YES    ☐ NO |

15

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

## IV.    ALLOCATIONS OF HOT ISSUES

The Partnership from time to time may invest, directly or through partnerships or other pooled investment vehicles, in "hot issues", as defined in the rules of the National Association of Securities Dealers, Inc. (the "NASD"). In order for the Partnership to determine whether the Investor is eligible to participate in profits and losses from such "hot issues", the Investor has initialed those statements below which apply to it and, if the Investor is a corporation, partnership, trust or other entity, which apply to any person having a beneficial interest in the Investor:

## A.    General:

**(Initial as Appropriate)**

_____  1.   The Investor, or a person having a beneficial interest in the Investor, is a broker-dealer.

_____  2.   The Investor, or a person having a beneficial interest in the Investor, is an officer, director, general partner, employee or agent of a broker-dealer, or a person associated with a broker-dealer.[*]

_____  3.   The Investor, or a person having a beneficial interest in the Investor, has acted as a finder in respect of the public offering of any securities or acted in a fiduciary capacity (including, among others, attorneys, accountants and financial consultants) to the managing underwriter in any such offering.

_____  4.   The Investor, or a person having a beneficial interest in the Investor, is (i) a senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm, or any other institutional type account (including, but not limited to, hedge funds, private investment partnerships, investment corporations or investment clubs), domestic or foreign, or (ii) a person in the securities department of, or an employee or a person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for, any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or other institutional type account, domestic or foreign.

---

[*]   For purposes of statement 2 above, "a person associated with a broker-dealer" includes every sole proprietor, partner, officer, director or branch manager of any NASD member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the NASD. For purposes of statement 2 above, broker-dealers do not include members engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

16

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

_____ 5(a)   The Investor, or a person having a beneficial interest in the Investor, is a member of the immediate family* of an employee or agent of, or person associated with, a broker-dealer.  If the foregoing statement applies to the Investor, or to a person with a beneficial interest in the Investor, the name of the broker-dealer is _____.

_____ 5(b)   If 5(a) is applicable, the Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly by the immediate family member referred to in 5(a).

_____ 6.   The Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly, to a material extent, by a person described in statements 3 or 4 above.

_____ 7.   The Investor owns equity securities of or has contributed capital to (i) a broker-dealer or (ii) an entity which owns equity securities of or has contributed capital to a broker-dealer.**  The name of the broker-dealer is: _____.

_____ 8.   The Investor is supported directly or indirectly, to a material extent, by an immediate family member who is a person referred to in 7 above.   The name of the broker-dealer is:
_____.

_____ 9.   The Investor is an employee benefit plan qualified under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA") and

(a) is sponsored by a broker-dealer; or

(b) is sponsored by an entity engaged in financial services and either does not permit participation by a broad class of participants or is designed primarily for the benefit of persons restricted from purchasing hot issues under the rules of the NASD.

OR

_____ 10.   None of the above statements are applicable.

_____

* The Investor understands that for purposes of the NASD Rules, the term "immediate family" includes parents, mother-in-law or father-in-law, husband or wife, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law, children and any other person supported, directly or indirectly to a material extent, by a person identified in statement 1 or 2 above.

** For purposes of statements 7 and 8 above, broker-dealers do not include broker-dealers engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

B.     Owners, Direct or Indirect, of Securities of or Interests in Broker-Dealers:

*If statement 7 or statement 8 has been initialed, please indicate which of the following statements are true:*

_____  A.     The Investor's interest in the broker-dealer is passive and constitutes less than 10% of the equity interest or capital of the broker-dealer.

_____  B.     The Investor is not in a position, by virtue of its ownership interest in a broker-dealer, to direct the allocation of hot issues.

_____  C.     The shares of the broker-dealer in which the Investor has an interest, or the shares of the parent of such broker-dealer, are publicly traded on an exchange or on NASDAQ.

_____  D.     The Investor is an account established for the benefit of *bona fide* public customers (such as an insurance company separate, general or investment account or a bank trust account).

OR

_____  E.     None of the above statements (A, B, C and D) are applicable.

C.     **Nominees:**

*Please answer each of the following questions, if applicable*

1.     Is the Investor investing as a nominee for, or otherwise for or on behalf of, anyone other than the Investor?

_____ Yes     _____ No

2.     If the answer to question C. 1. is "yes", the person for whom the Investor is acting:

*Please check one*

_____ is an individual

_____ is an entity, but is not an investment fund

_____ is an investment fund (including any family investment vehicle, trust, hedge fund, investment club or other entity, group or association by means of which more than one individual makes investments)

_____

The interest of the Investor in a broker-dealer as a result of an investment in an entity (the "Intermediate Owner") which owns or has contributed capital to such broker-dealer is equal to the product of the investor's percentage interest in the Intermediate Owner and the Intermediate Owner's percentage interest in the broker-dealer.

18

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

D.    Additional Information:

If the Investor is a natural person, indicate the occupation and business affiliation of the Investor. If the Investor is a private corporation, partnership, trust, self-directed employee benefit plan (*e.g.*, an Individual Retirement Account) or other private entity, indicate the name(s), occupation(s) and business affiliations of all person(s) having a beneficial interest in the Investor.  In the case of an Investor which is an investment fund, the Investor may either (i) provide the information requested below with respect to its beneficial owners that participate in profits and losses attributable to hot issues or (ii) if the Investor does not wish to provide such information, contact the General Partner to obtain a form of letter to be delivered to the Partnership by legal counsel or independent certified public accountants to the Investor relating to participation in "hot issues".

<u>Name</u>                                                      <u>Occupation</u>

_____                          _____

_____                          _____

_____                          _____

The Investor hereby agrees to promptly notify the Partnership should there be any change in the information set forth in this response.

19

ASCOT PARTNERS, L.P.

WIRING INSTRUCTIONS*

Citibank, NA
New York, New York
ABA Number 021-000089
Account Name: Morgan Stanley & Co., Inc.
Account Number:  3889-0774
Sub Account Name: Ascot Partners, L.P.
Sub Account Number: 038-23021

*IMPORTANT

1.     Please have your bank identify on the wire transfer the name of the prospective Investor.

2.     We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

ASCOT PARTNERS, L.P.

SIGNATURE PAGE

ALL INVESTORS MUST COMPLETE THIS SECTION.

The undersigned hereby represents that:

(a)     the undersigned has carefully read and is familiar with this Subscription Agreement, the Memorandum and the Partnership Agreement;

(b)     the information contained herein is complete and accurate and may be relied upon; and

(c)     the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement and the execution and receipt of the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this __*ll*__ day of __*May*__, *2005*

| INDIVIDUALS | ENTITIES |
|---|---|
| | Trustees of Tufts College |
| _____ | _____ |
| Signature | Print Name of Entity |
| | By: *Sally M Dungan* |
| _____ | _____ |
| Print Name | Authorized Signature |
| | Sally M. Dungan, Chief Investment Officer |
| _____ | _____ |
| Additional Investor Signature | Print Name and Title |
| | Trustees of Tufts College is a |
| _____ | not-for-profit university. |
| Print Name | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by J. Ezra Merkin**

_____

SUBSCRIPTION ACCEPTED
AS TO $_____
**ASCOT PARTNERS, L.P.**
By: J. Ezra Merkin

By:_____
Date: _____, _____

21

ASCOT PARTNERS, L.P.

NOTARIZATION ACKNOWLEDGMENT

ACKNOWLEDGMENT

STATE OF __MA__ )
                            ) ss:
COUNTY OF __Suffolk__ )

On this __6__ day of __May__, 2005 before me personally appeared __Sally M. Dungan__, to me known and known to me to be the individual who executed the foregoing Subscription Agreement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

_Shawna Kristin_
Notary Public

My Commission Expires:

__May 14, 2010__

SHAWNA KRISTIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 14, 2010

22

ASCOT PARTNERS, L.P.

Schedule I

i.    ACCREDITED INVESTOR STATUS

The Investor must certify that:

I.    **Individuals**

    (a)    The Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000. As used herein, "net worth" means the excess of total assets at fair market value, including home, home furnishings and automobiles, over total liabilities; or

    (b)    The Investor had individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.**

II.    **Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies**

    (a)    The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the securities offered; or

    (b)    All of the Investor's equity owners are accredited investors as described in this Schedule I. The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.

III.    **Employee Benefit Plans**

    (a)    The Investor is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the decision to invest in the

---

*    Notwithstanding anything to the contrary herein, for purposes of determining "net worth", the principal residence owned by an individual shall be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property. "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

**    For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

SI-1

Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is:

_____

or

(b)     The Investor is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000; or

(c)     The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

IV.     **Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years and reasonably expects to reach the same income level in the current year. *The General Partner, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

V.     **Section 501(c)(3) Organizations**

The Investor is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, was not formed for the specific purpose of acquiring the securities offered, and has total assets in excess of $5,000,000.

VI.     **Trusts**

(a)     The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered, and its purchase is directed by a sophisticated person. As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment; or

(b)     The Investor is (i) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act, (ii) acting in a fiduciary capacity and (iii) subscribing for the purchase of the securities being offered on behalf of a trust account or accounts; or

(c)     The Investor is a revocable trust which may be amended or revoked at any time by the grantors thereof and all of the grantors are accredited investors as described in this Schedule I. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

SI-2

VII.    Banks, Savings and Loans and Similar Institutions

The Investor is a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual capacity.

VIII.    Insurance Companies

The Investor is an insurance company as defined in Section 2(13) of the Securities Act.

ASCOT PARTNERS, L.P.

---

SCHEDULE II

ii.    <u>QUALIFIED PURCHASER STATUS</u>

The Investor must certify that:

I.    **Individuals**

The Investor is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less that $5,000,000 in investments.[*]

II.    **"Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or other "Family" Entities**

(a)    The Investor was not formed for the specific purpose of investing in the Partnership;

(b)    The Investor owns not less than $5,000,000 in investments; and

(c)    The Investor is owned directly or indirectly by or for (i) two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, (ii) spouses of such persons, (iii) the estates of such persons or (iv) foundations, Section 501(c)(3) organizations, or trusts established by or for the benefit of such persons.

III.    **Trusts (Other Than Trusts That Qualify under II or IV hereof)**

(a)    The Investor was not formed for the specific purpose of investing in the Partnership; and

---

The term "investments" means any or all (1) securities (as defined in the Securities Act), except for securities of issuers controlled by the Investor ("Control Securities") unless the (A) issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Exchange Act, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of Investor's purchase of Shares); (2) futures contracts or options thereon held for investment purposes; (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

Note:    In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.

(b)     Each trustee (or other authorized person) that is authorized and required to make decisions with respect to this investment is a person described in I, II or IV, at the time the decision to purchase Interests is made, and each settlor or other person who has contributed assets to the trust is a person described in I, II or IV at any time such person contributed assets to the trust.

## IV.     Other Entities

(a)     The Investor was not formed for the specific purpose of investing in the Partnership; and

(b)     The Investor is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

## V.     Entities That Do Not Qualify Under II-IV

The Investor is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser as described in this Schedule II.[*]

## VI.     All Investors That Are Entities

(a)     The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "3(c)(1) or 3(c)(7) Company"); or

(b)     The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a "Pre-April 30 Holder"); or

(c)     The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.

## VII.     Investors That Checked II or III May Check VII Instead Of VI

The Investor has obtained consent to its treatment as a qualified purchaser from all of its trustees, directors or general partners.

## VIII.     Investors That Checked VI(b) Or VI(c) Must Also Respond YES or NO To VIII

Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7) Company that controls, is controlled by, or is under common control with the Investor?

If the Investor cannot answer NO to VIII because it has a control relationship with a beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be required to obtain consent from the security-holders of such owner.

---

[*]     This certification does not apply to beneficiaries of an irrevocable trust.

SII-2

## FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the _____ of _____,

*Insert Title*                    *Insert Name of Entity*

a _____ organized under the laws of _____

*Insert Type of Entity*                    *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are directors and/or officers of the Company and that the signature at the right of said name, respectively, is the genuine signature of said person and that the persons listed below are each an authorized signatory for the Company.

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the __ day of

_____, 200__.

_____

Name: *Print Name of Signatory #1*
Title: *Print Title of Signatory #1*

THE UNDERSIGNED, _____, a duly authorized _____

*Insert Name of Signatory #2*                    *Insert Title*

of the Company, does hereby certify that _____ is a duly authorized

*Insert Name of Signatory #1*

officer of _____ and that the signature set forth above is [his][her] true and

*Insert Name of Company*

correct signature.    IN WITNESS WHEREOF, the undersigned has executed this certificate as of the __ day

of _____, 200__.

_____

Name: *Print Name of Signatory #2*
Title: *Print Title of Signatory #2*

A-1

<u>EXHIBIT B</u>

## AML CERTIFICATION FORM FOR FUND OF FUNDS OR ENTITIES THAT INVEST ON BEHALF OF THIRD PARTIES

The undersigned, being the _____ of _____,
*Insert Title*                    *Insert Name of Entity*

a _____ organized under the laws of _____
*Insert Type of Entity*                    *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that it is aware of the requirements of the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control, and other applicable U.S. federal, state or non-U.S. anti-money laundering laws and regulations (collectively, the "anti-money laundering/OFAC laws"). The Company has/have anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that the Partnership may rely on this Certification.

The Company hereby represents to the Partnership that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Partnership to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Covenants of the Investor" in the Partnership's Subscription Agreement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Partnership should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: _____          By: _____
                                Name:
                                Title:

B-1

<u>EXHIBIT C</u>

FORM LETTER OF REFERENCE

[LETTERHEAD OF LOCAL OFFICE OF FATF MEMBER BANKING INSTITUTION
OR BROKERAGE FIRM]

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.:  J. Ezra Merkin

To whom it may concern:

      I, _____, the _____ of _____, do hereby
              *Name*             *Title*         *Name of Institution*

certify that _____ has maintained an account at our institution for
              *Name of Investor*

_____ years and, during this period, nothing has occurred that would give our institution
*Insert Period*

cause to be concerned regarding the integrity of _____.
                        *Name of Investor*

      Do not hesitate to contact me at _____ if you have any further
                    *Insert Telephone No.*

questions.

                      Very truly yours,


                      _____

                      Name:
                      Title:

BENEFICIAL OWNERSHIP INFORMATION

To Be Completed By Entity Investors That Are Privately Held Entities

Instructions:  Please complete and return this Exhibit D and provide the name of every person who is directly, or indirectly through intermediaries, the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the Investor.   If the intermediary's shareholders or partners are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed.  If there are no 25% beneficial owners, please write None.

| Full Name | If Shareholder is an Individual, Insert Name and Address of Principal Employer and Position | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

<u>EXHIBIT E</u>

TRUST OWNERSHIP INFORMATION

To Be Completed By Entity Investors That Are Trusts

Instructions:  Please complete and return this <u>Exhibit E</u> and provide the name of: i) every current beneficiary that has, directly or indirectly, an interest of 25% or more in the trust; ii) every person who contributed assets to the trust (settlors or grantors); and iii) every trustee.   If there are intermediaries that are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed.

| <u>Full Name and Address</u> | Status (Beneficiary/Settlor/ Trustee) | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REQUEST FOR WITHDRAWAL OF LIMITED PARTNERSHIP INTEREST

Dated: _____, _____

To:    Ascot Partners, L.P.
       450 Park Avenue
       32nd Floor
       New York, New York 10022
       Attn.: J. Ezra Merkin


Dear Sir or Madam:

The undersigned limited partner of the Partnership (the "Limited Partner") hereby requests that the Partnership withdraw from the Limited Partner's capital account in the Partnership (the "Capital Account") and pay the following amount to the Limited Partner as directed below:

(check one)

_____        the entire balance of the Limited Partner's Capital Account

_____        $_____

on the next available withdrawal date (the "Withdrawal Date") following receipt of this letter.[*] In the event that after giving effect to such withdrawal, the balance of the Capital Account would be less than $[ ] please:

(check one)

_____        disregard this Request for Withdrawal

_____        withdraw all of the remaining balance of such
               Capital Account on such withdrawal date.

The cash proceeds of the Capital Account should be paid and forwarded to the Limited Partner as follows:

_____
Name

_____
Address

---

[*]    This Request for Withdrawal must be received at least 45 days prior to a Withdrawal Date. Requests for withdrawal must be unconditional. Notices of Withdrawals are irrevocable by the Investor.

RW-1

If desired, set forth instructions for the account to which the cash proceeds of the Capital Account may be sent by wire transfer:

Federal Reserve Bank of Boston
Name of Bank
135 Santelli Highway Everett, MA 02149-1950
Address of Bank
ABA#: 011-001-234 DDA Account #: 108111
ABA Number
Trustees of Tufts College Ascot Account / [redacted]5-002
Account Number
Trustees of Tufts College
Name Under Which Account Is Held

**Note:** Withdrawal proceeds shall be paid to the same account from which the Limited Partner's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

Very truly yours,

Signature(s) Guaranteed by:

_____
Signature of Limited Partner

_____

_____
(Print name)

Mailing Address

_____

RW-2

ASCOT PARTNERS, L.P.

ADDITIONAL SUBSCRIPTION FORM

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin

Dear _____:

       The undersigned hereby wishes to make an additional capital contribution to Ascot Partners, L.P. (the "Partnership").

       The additional amount to be contributed ("Additional Capital Contribution") is:

       $_____.

       The undersigned acknowledges and agrees:  (i) that the undersigned is making the Additional Capital Contribution on the terms and conditions contained in the subscription agreement, dated _____ ___, 20__, previously executed by the undersigned and accepted by the General Partner (the "Subscription Agreement"); (ii) that the representations and covenants of the undersigned contained in the Subscription Agreement are true and correct in all material respects as of the date set forth below; (iii) the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) the background information provided to the General Partner is true and correct in all material respects as of the date set forth below.

**THE UNDERSIGNED AGREES TO NOTIFY THE GENERAL PARTNER PROMPTLY SHOULD THERE BE ANY CHANGE IN ANY OF THE FOREGOING INFORMATION.**

Dated: _____ ___, 20__

INDIVIDUALS

_____
Signature

_____
Print Name

_____
Additional Investor Signature

ENTITIES

_____
Print Name of Entity

By: _____
       Authorized Signature

_____
Print Name and Title

AS-1

FOR INTERNAL USE ONLY
To be completed by J. Ezra Merkin

_____

ADDITIONAL CAPITAL CONTRIBUTION ACCEPTED
AS TO $_____

ASCOT PARTNERS, L.P.
By: **J. Ezra Merkin**
By: _____

Date: _____, _____

AS-2

## ASCOT PARTNERS, L.P.

### CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth our policies with respect to nonpublic personal information of investors, prospective investors and former investors. These policies apply to individuals and Individual Retirement Accounts only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, social security number, assets and/or income information, (i) in the Subscription Agreement and related documents, (ii) in correspondence and conversations with the Partnership's representatives and (iii) through transactions in the Partnership.

We do not disclose any of this personal information about our investors, prospective investors or former investors to anyone, other than to our affiliates, and except as permitted by law, such as to our attorneys, auditors, brokers and regulators and certain service providers, in such case, only as necessary to facilitate the acceptance and management of your investment. Thus, it may be necessary, under anti-money laundering and similar laws, to disclose information about investors in order to accept subscriptions from them. We will also release information about you if you direct us to do so, if compelled to do so by law or in connection with any government or self-regulatory organization request or investigation.

We seek to carefully safeguard your private information and, to that end, restrict access to nonpublic personal information about you to those employees and other persons who need to know the information to enable the Partnership to provide services to you. We maintain physical, electronic and procedural safeguards to protect your nonpublic personal information.

Form **W-9**
(Rev. October 2004)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

Name (as reported on your income tax return)
**Trustees of Tufts College**

Business name, if different from above
**Tufts University**

Check appropriate box:
☐ Individual/ Sole proprietor  ☑ Corporation  ☐ Partnership  ☐ Other ▶ .................    ☑ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
**169 Holland Street**

Requester's name and address (optional)

City, state, and ZIP code
**Somerville, MA 02144**

List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

Social security number

or

Employer identification number
[redacted] | 3 | 6 | 3 | 4

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here    Signature of U.S. person ▶ *Sally M. Dempsey*    Date ▶ 5/6/2005

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note.** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

For federal tax purposes you are considered a person if you are:

● an individual who is a citizen or resident of the United States,

● a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● any estate (other than a foreign estate) or trust. See Regulation section 301.7701-6(a) for additional information.

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Cat. No. 10231X    Form **W-9** (Rev. 10-2004)

TOTAL P.02



# TUFTS UNIVERSITY

Trustees of Tufts College

## CERTIFICATE OF VOTE

To Whom It May Concern,

I, Linda J. Dixon, hereby certify that I, by vote of the Trustees of Tufts University, the governing body, have been duly elected to and now hold the office of Secretary of the Corporation, Trustees of Tufts University.

I further certify that at a duly authorized meeting of the Executive Committee of the Board of Trustees of Tufts University, held on January 14, 2003, at which a quorum of the Trustees were present and acting, it was

> VOTED:    That the Chief Investment Officer be and hereby is authorized and empowered in the name and on behalf of the Trustees of Tufts College to purchase, sell, transfer, exchange, and exercise any rights, options or privileges in connection with stocks, bonds or debentures, notes, securities, and other personal property and, in furtherance of the foregoing action to sign, execute, and deliver any and all instruments, endorsements, agreements, guaranties, and documents of transfer, which she may deem advisable including opening brokerage accounts in order to carry out the above responsibilities.

I further certify that Sally M. Dungan is the duly elected Chief Investment Officer of Tufts University, and that the above vote has not been amended or rescinded and remains in full force and effect as of the date of this statement.

*Linda J. Dixon*

Linda J. Dixon
Secretary of the Corporation
TRUSTEES OF TUFTS UNIVERSITY
June 7, 2004

Medford, Massachusetts 02155
617 627-3320
617 627-3867 Fax

# T U F T S   U N I V E R S I T Y

Trustees of Tufts College

## TUFTS UNIVERSITY

## Charter Certificate

The undersigned hereby certifies that:

1.      I am the duly elected Secretary of Tufts University, a Massachusetts charitable corporation formed for educational purposes (the "Corporation").

2.      Attached hereto as Exhibit 1 are the Restated Articles of Organization (Charter), dated July 21, 1975, and the Articles of Amendment dated November 20, 1986 and November 15, 1988. These true copies are in full force and effect as of this date.

WITNESS my hand and the seal of the Corporation.

*Linda J. Dixon*

Linda J. Dixon
Secretary of the Corporation
Trustees of Tufts University

March 20, 2003

1010886.1

Medford, Massachusetts 02155
617 627-3320
617 627-3867 Fax



*The Commonwealth of Massachusetts*
*Office of the Secretary*
*State House, Boston 02133*

*Paul Guzzi*
*Secretary of the Commonwealth*

AUG 19 1975

A true Copy Witnessed under the Great
Seal of the Commonwealth of Massachusetts.

*Paul Guzzi*
Secretary of the Commonwealth.

*James Hoyt*
Deputy Secretary.



Form CD - 30M - 12/74

The Commonwealth

STATE HOUSE. BOSTON, MASS. 02133

# RESTATED ARTICLES OF ORGANIZATION

### General Laws, Chapter 180, Section 7

This certificate must be submitted to the Secretary of the Commonwealth within sixty days after the date of the vote of members or stockholders adopting the restated articles of organization. The fee for filing this certificate is $25.00. Make check payable to the Commonwealth of Massachusetts.

We, Burton C. Hallowell , President/~~Vice President~~, and
John A. Dunn, Jr., Secretary , ~~Clerk/Assistant Clerk~~ of

## TRUSTEES OF TUFTS COLLEGE

(Name of Corporation)

located at ......Medford..................................................................................................

do hereby certify that the following restatement of the articles of organization of the corporation was duly adopted at
a meeting held on May 24 , 19 75 , by vote of 25 .... members ............ ~~shareholders~~
being at least two thirds of its members legally qualified to vote in meetings of the corporation (~~or, in the case of a corporation having capital stock, by the holders of at least two-thirds of the capital stock having the right to vote therein~~):

1  The name by which the corporation shall be known is:
TRUSTEES OF TUFTS COLLEGE.  The corporation may also be known
as and use the name TUFTS UNIVERSITY.
2. The purposes for which the corporation is formed ~~are as follows~~ include any one or more
of the following:

(1)  To conduct a university not for profit, including col-
leges and schools and centers (graduate, undergraduate and profes-
sional) associated or affiliated therewith, in various branches
within or without the Commonwealth of Massachusetts.

(2)  To maintain for the education of women exclusively a
college to be known as the "Jackson College for Women"; to appro-
priate and set apart for the maintenance thereof any sums desig-
nated by the donors to be for the education of women, and all
property, real, personal or mixed, tangible or intangible, re-
ceived by gift, grant, devise, bequest or otherwise for that pur-
pose; and to confer upon women, in the name of Jackson College for
Women, any of the degrees which it by law is authorized to confer.
All the provisions contained in these Restated Articles of Organi-
zation shall relate to the Jackson College for Women, so far as
applicable thereto, except as otherwise expressly provided herein.

[See page 2A attached]

NOTE: If provisions for which the space provided under Articles 2, 3 and 4 is not sufficient additions should b
set out on continuation sheets to be numbered 2A, 2B, etc. Indicate under each Article where the provision i
set out. Continuation sheets shall be on 8½" x 11" paper and must have a left-hand margin 1 inch wide fc
binding. Only one side should be used.

The corporation shall have thirty-one members, all of whom shall be known as trustees and have the powers of directors. Twenty members shall be known as Charter Trustees and shall be elected by the members of the corporation then serving in office. Ten members shall be known as Alumni Trustees and shall be elected from among the alumni of the corporation's colleges and schools either by the alumni acting directly or by such representatives of the alumni as may be chosen members of a representative group. The president of the corporation shall be a member of the corporation, ex officio, during the term of his office as president. Members of the corporation in office on August 5, 1970, other than alumni members, shall continue in office without limit of time, and Alumni Trustees then in office shall continue in office until the expiration of the terms to which they were elected. Except as herein specified, the qualifications, terms of office and manner of election of the members of the corporation shall be as specified from time to time in the by-laws of the corporation.

4. Other lawful provisions, if any, for the conduct and regulation of the business and affairs of the corporation, for its voluntary dissolution, or for limiting, defining, or regulating the powers of the corporation, or of its directors or members, or of any class of members, are as follows:—

(A)  The corporation shall have and may exercise in furtherance of its corporate purposes the following powers:

(1)  To have perpetual succession in its corporate name.

(2)  To sue and be sued.

(3)  To have a corporate seal which it may alter at pleasure, and to use upon diplomas and other written instruments issued in the name of Jackson College for Women a seal of a design different from the common seal of the corporation.

(4)  To award certificates, diplomas and degrees.

(5)  To elect or appoint trustees (as provided by Article 3 of these Restated Articles), officers, faculty, staff, employees and other agents; to fix their compensation, if any, and to define their duties and obligations.

(6)  To purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use and otherwise deal in and with, real or personal property, or any interest therein, wherever situated.

[See pages 4A-4D attached]

If there are no provisions state "None".

(3) To promote, advance, evaluate and disseminate learning by instruction, study, clinical practice and research in the humanities, religion, social sciences, international law and diplomacy, natural sciences, medical, dental and health sciences, engineering and applied sciences, and any other branch of learning.

(4) To engage in and participate in projects of education, clinical practice, research and social service for the benefit of international agencies and of national, state and local governments of the United States and other countries, and for the general welfare.

(5) To establish and maintain a hospital for the reception and care of persons who may need medical or surgical treatment during sickness or while suffering from an injury; to acquire by gift, devise or purchase, any hospital now or hereafter established under the laws of the Commonwealth for the purposes aforesaid and thereafter maintain any hospital so acquired.

The foregoing enumeration shall not be deemed in any manner to limit or affect the right of the corporation to pursue, exercise and enjoy any more general purposes or objects than those enumerated herein or any other purposes or objects of the same nature as, or a different nature from, those herein specified which the laws of this Commonwealth would, but for such enumeration, allow it to pursue, exercise and enjoy.

(7)   To solicit and receive contributions from any and all sources and to receive and hold, in trust or otherwise, funds received by gift or bequest.

(8)   To sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage, pledge, encumber or create a security interest in, all or any of its property, or any interest therein, wherever situated.

(9)   To purchase, take, receive, subscribe for, or otherwise acquire, own, hold. vote, employ, sell, lend, lease, exchange, transfer, or otherwise dispose of, mortgage, pledge, use and otherwise deal in and with, bonds and other obligations, shares, or other securities or interests issued by others engaged in business, governmental, or other activities.

(10)   To make contracts, give guarantees and incur liabilities, borrow money at such rates of interest as the corporation may determine, issue its notes, bonds and other obligations, and secure any of its obligations by mortgage, pledge or encumbrance of, or security interest in, all or any of its property or any interest therein, wherever situated.

(11)   To lend money, invest and reinvest its funds, and take and hold real and personal property as security for the payment of funds so loaned or invested.

(12)   To carry on its operations and have offices and exercise the powers granted by Massachusetts General Laws, Chapter 180, in any jurisdiction within or without the United States.

(13)   To make donations to religious, charitable, scientific, literary or educational institutions of the type described in Section 501(c)(3) of the Internal Revenue Code of the United States, in such amounts as the trustees shall determine.

(14)   To participate as a subscriber in the exchanging of insurance contracts specified in Massachusetts General Laws, Chapter 175, Section 94B.

(15)   To pay pensions, establish and carry out pension, savings, thrift and other retirement, incentive and benefit plans, trusts and provisions for any or all of its officers and employees.

(16)   To commingle any property or funds acquired by it with any other such property or funds except as may be contrary to any restrictions or conditions applicable to particular property or funds; to maintain and establish such pooled funds or other accounts as may be deemed advisable from time to time, and to hold and to invest and reinvest any property in which it may have any interest of any kind in such pooled funds or other accounts or separately in its discretion, subject, however, to any applicable trusts, terms, conditions or restrictions thereon.

(17)   To act as executor, administrator, administrator with the will annexed, trustee under the will, deed or otherwise, of or in any other fiduciary capacity with respect to any estate or trust in which it may have any beneficial interest of any kind whatsoever, if so permitted by the law of any state of the United States or country or other authority having jurisdiction of the administration of such estate or trust.

(18)   To make, amend, or repeal by-laws, rules and orders, in whole or in part, not inconsistent with the laws of the Commonwealth of Massachusetts, with reasonable penalties, for the good government of the university and otherwise for the management of its property and the regulation of its affairs.

(19)   To provide for the selection of its students and for the government and well-being of its students, faculty and staff while in pursuit of the corporation's purposes either at the university, or at any institution affiliated, allied or otherwise associated therewith, or elsewhere.

(20)   To determine and regulate the courses of instruction offered in any of the colleges or schools comprising the university.

(21)   To do any or all of the things hereinabove set forth in any part of the world as principal, agent, contractor or otherwise, and either directly or indirectly, alone or in cooperation or in association with others, and to do every other act or thing which is necessary or desirable in order to carry out the foregoing purposes or any part or parts thereof.

(22)   To delegate to other agencies or organizations such of the corporation's powers, for such periods of time, and subject to such terms and conditions, as the corporation shall from time to time determine.

(B)   The Board of Trustees, consisting of the members of the corporation, shall manage and conduct the property and affairs of the corporation and may exercise any and all of its powers.

(C)   The corporation shall indemnify, to the extent legally permissible but not to the extent that the status of the corporation as an organization exempt under Section 501(c)(3) of the Internal Revenue Code will be affected thereby, each trustee against all liabilities and expenses, including amounts paid in satisfaction of judgments, in compromise or as fines and penalties, and counsel fees, reasonably incurred by such trustee in connection with the defense or disposition of any action, suit or other proceeding, whether civil or criminal, in which such trustee may be involved or with which such trustee may be threatened, while in office or thereafter, by reason of being or having been a trustee of the corporation or by reason of any alleged acts or omissions by him or her as a trustee; provided, however, that as to any matter disposed of by a compromise payment by a trustee of the corporation pursuant to a consent decree or otherwise, no indemnification either for said payment or for any other expenses shall be provided unless such compromise shall be approved as in the best interests of the corporation, after notice that such approval will result in such indemnification, by (a) a majority of the disinterested trustees of the corporation then in office if there has been obtained an opinion in writing of independent legal counsel to the effect that such trustee appears to have acted in good faith in the reasonable belief that his or her action was in the best interests of the corporation, or (b) a majority of the trustees of the corporation then in office if such majority consists of disinterested trustees. Expenses, including counsel fees, reasonably incurred by any such trustee in connection with the defense or disposition of any such action, suit or other proceeding may be paid from time to time by the corporation in advance of the final disposition thereof upon receipt of an undertaking by such trustee to repay the amount so paid to the corporation in the event that he or she shall be adjudicated to be not entitled to indemnification or in the event that such proceeding shall have been disposed of by a compromise payment which has not been approved in the manner aforesaid. Notwithstanding anything to the contrary contained herein, the corporation shall not indemnify any trustee with respect to any matter as to which such trustee shall have been adjudicated in any proceeding not to have acted in good faith in the reasonable belief that his or her action was in the best interests of the

corporation.  The indemnification of trustees provided for herein
shall not be exclusive or affect any other rights to which any
such trustee may be entitled by contract or otherwise under law.
As used in this paragraph, the term "trustee" shall include any
member or former member of the Board of Trustees and the heirs,
executors and administrators of any such member or former member,
and a "disinterested" trustee shall mean one against whom in such
capacity neither the proceedings in question nor another pro-
ceeding on the same or similar grounds is then threatened,
pending or completed.

    (D)  No part of the assets or net earnings of the corpo-
ration shall be divided among or inure to the benefit of any
officer or trustee of the corporation or any private individual
or be appropriated for any purpose other than the purposes of
the corporation as herein set forth; and no substantial part of
the activities of the corporation shall be the carrying on of
propaganda, or otherwise attempting, to influence legislation,
and the corporation shall not participate in or intervene in
(including the publishing or distributing of statements) any
political campaign on behalf of any candidate for public office.
No officer, member or employee of the corporation shall receive
or be entitled to receive any pecuniary profit from the opera-
tions of the corporation except reasonable compensation for
services rendered to it.  It is intended that the corporation
shall be entitled to exemption from federal income tax under
Section 501(c)(3) of the Internal Revenue Code of the United
States and that it shall not be a private foundation under Sec-
tion 509(a) of said Internal Revenue Code.  Upon the liquidation
or dissolution of the corporation, after payment of all of the
liabilities of the corporation or due provision therefor, all
of the assets of the corporation shall be distributed to one or
more organizations exempt from federal income tax under Section
501(c)(3) of the Internal Revenue Code of the United States as
determined by the Board of Trustees in its sole discretion.

    (E)  All references herein to a statute shall be deemed
to refer to such statute as now in force and as the same may
from time to time hereafter be amended, or any successor pro-
visions thereto.

("If there are no such amendments, state "None".)

     The charter of the corporation is presently composed
of a number of special acts of the General Court and a
Change of Purpose concerning use of the alternative name
Tufts University.  The foregoing Restated Articles of
Organization effect comprehensive revisions in each of
the acts comprising the charter for the purpose of clari-
fying and modernizing the charter to reflect the require-
ments and benefits of the latest law and practice applicable
to non-profit corporations.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, we have hereto signed our names this

     10th    day of    June    in the year 19 75

................................................................... President/~~Vice-President~~

................................................................... Secretary   ~~Clerk/Assistant Clerk~~

THE COMMONWEALTH OF MASSACHUSETTS

## RESTATED ARTICLES OF ORGANIZATION

(General Laws, Chapter 180, Section 7)

RECEIVED

JUN 12 1975

CORPORATION DIVISION
SECRETARY'S OFFICE

I hereby approve the within restated articles of organization and, the filing fee in the amount of $25.00 having been paid, said articles are deemed to have been filed with me this _____ day of _____ 19__

PAUL GUZZI

Secretary of the Commonwealth

State House, Boston, Mass.

## TO BE FILLED IN BY CORPORATION

PHOTO COPY OF RESTATED ARTICLES OF ORGANIZATION TO BE SENT TO:

Nutter, McClennen & Fish

75 Federal Street

Boston, Mass. 02110

Copy Mailed    JUL 2 8 1975

## The Commonwealth of Massachusetts

### MICHAEL J. CONNOLLY

*Secretary of State*

ONE ASHBURTON PLACE, BOSTON, MASS. 02108

FEDERAL IDENTIFICATION

NO. 04 210 1616

### ARTICLES OF AMENDMENT

General Laws, Chapter 180, Section 7

This certificate must be submitted to the Secretary of the Commonwealth within sixty days after the date of the vote of members or stockholders adopting the amendment. The fee for filing this certificate is $10.00 as prescribed by General Laws, Chapter 180, Section 11C(b). Make check payable to the Commonwealth of Massachusetts

We,                    Steven S. Manos                    *President,* Vice President, and

                    Joseph J. Lambert                    *Clerk,* Assistant Clerk of Secretary

TRUSTEES OF TUFTS COLLEGE

(Name of Corporation)

located at    Medford, Massachusetts

do hereby certify that the following amendment to the articles of organization of the corporation was duly adopted at a meeting held on    November 5        19 88    , by vote of    29    members/

XXXXX stockholders, being at least two thirds of its members legally qualified to vote in meetings of the corporation (or, in the case of a corporation having capital stock, by the holders of at least two thirds of the capital stock having the right to vote thereon)

Note. If the space provided under any article or item on this form is insufficient, additions shall be set forth on separate 8½ x 11 sheets of paper leaving a left hand margin of at least 1 inch for binding. Additions to more than one article may be continued on a single sheet so long as each article requiring each such addition is clearly indicated.

04-21-18,52

VOTED:   To amend the Restated Articles of Organization of the
Corporation by deleting Section (4)(C) thereof in its entirety
and substituting therefor the following:

"(C)(1) The Corporation shall indemnify to
the maximum extent legally permissible but not to
the extent that the status of the Corporation as
an organization exempt under Section 501(c)(3) of
the Internal Revenue Code will be affected
thereby, any person who was or is a party or is
threatened to be made a party to any threatened,
pending or completed action, suit or proceeding,
whether civil, criminal, administrative or
investigative and whether external or internal to
the Corporation, by reason of the fact that he or
she is or was a trustee of the Corporation or is
or was serving at the request of the Corporation
as a trustee, director, officer, employee or
other agent of another organization or in a
capacity with respect to any employee benefit
plan against expenses (including attorneys'
fees), judgments, fines and amounts paid in
settlement actually and reasonably incurred by
him or her in connection with such suit, action
or proceeding if he or she acted in good faith in
the reasonable belief that his or her action was
in the best interests of the Corporation or, to
the extent that such matter relates to service
with respect to an employee benefit plan, in the
best interests of the participants or
beneficiaries of such employee benefit plan.   The
termination of any action, suit or proceeding by
judgment, order, settlement, conviction, or upon
a plea of nolo contendere or its equivalent,
shall not, of itself, create a presumption that
the person did not act in the reasonable belief
that his or her action was in the best interests
of the Corporation or, to the extent that such
matter relates to service with respect to an
employee benefit plan, in the best interests of
the participants or beneficiaries of such
employee benefit plan.

(2) Any indemnification under this
Section (C) (unless required by law or ordered by
a court) shall be made by the Corporation only as
authorized in the specific case upon a
determination that indemnification of the trustee
is proper in the circumstances because he or she
has met the applicable standard of conduct set
forth in subsection (1) of this Section (C).
Such determination shall be made (i) by the Board

-2A-

of Trustees by a majority vote of a quorum
consisting of Trustees who were not parties to
such action, suit or proceeding, or (ii) if such
a quorum is not obtainable, or, even if
obtainable if a quorum of disinterested Trustees
so directs, by independent legal counsel in a
written opinion.

(3) Notwithstanding anything in this
Section (C) to the contrary, no indemnification
shall be provided for any person with respect to
any matter as to which he or she shall have been
adjudicated in any proceeding not to have acted
in good faith in the reasonable belief that his
or her action was in the best interests of the
Corporation or, to the extent that such matter
relates to service with respect to an employee
benefit plan, in the best interests of the
participants or beneficiaries of such employee
benefit plan.

(4) Expenses incurred by a trustee in
defending a civil or criminal action, suit or
proceeding shall be paid by the Corporation in
advance of the final disposition of such action,
suit or proceeding upon receipt of an undertaking
by or on behalf of the trustee to repay such
amount if it shall ultimately be determined that
he or she is not entitled to be indemnified by
the Corporation as authorized in this
Section (c). Such undertaking shall be accepted
by the Corporation without reference to the
financial ability of the person giving the
undertaking to make repayment. Any advance under
this subsection (4) shall be made promptly, and
in any event within ninety days, upon the written
request of the person seeking the advance.

(5) The indemnification and advancement of
expenses provided by, or granted pursuant to, the
other subsections of this Section (C) shall not
be deemed exclusive or affect any other rights to
which any person may be entitled by contract or
otherwise under law. Each person who is or
becomes a trustee shall be deemed to have served
or have continued to serve in such capacity and
in any other capacity at the request of the
Corporation as described in subsection (1) in
reliance upon the indemnity provided for in this
Section (1). All rights to indemnification under
this Section (C) shall be deemed to be provided

-3A-

by a contract between the Corporation and the
person who serves as trustee of the Corporation.
Any repeal or modification of this Section (C)
shall not affect any rights or obligations then
existing.

(6) To the extent that a trustee of the
Corporation has been successful on the merits or
otherwise in defense of any action, suit or
proceeding referred to in subsection (1), or in
defense of any claim, issue or matter therein, he
or she shall be indemnified against expenses
(including attorneys' fees) actually and
reasonably incurred by him or her in connection
therewith.

(7) The indemnification and advancement of
expenses provided by, or granted pursuant to,
this Section (C) shall continue as to a person
who has ceased to be a trustee and shall inure to
the benefit of the heirs, executors and
administrators of such a person.

(8) If any term or provision of this
Section (C) or the application thereof to any
person, property or circumstance shall to any
extent be invalid or unenforceable, the remainder
of this Section (C) or the application of such
term or provision to the persons, property or
circumstances other than those as to which it is
invalid or unenforceable shall not be affected
thereby, and each term and provision of this
Section (C) shall be valid and enforced to the
fullest extent permitted by law."

VOTED:   To amend Section 4 of the Restated Articles of
Organization of the Corporation to add thereto the
following provisions:

"(F) No Trustee shall be personally liable
to the Corporation or its members for monetary
damages for any breach of fiduciary duty as a
Trustee notwithstanding any provision of law
imposing such liability, except (to the extent
provided by applicable law) for liability (i) for
breach of the Trustee's duty of loyalty to the
Corporation or its members, (ii) for acts or
omissions not in good faith or which involve
intentional misconduct or a knowing violation of
law, or (iii) for any transaction from which the
Trustee derived an improper personal benefit."

-4A-

The foregoing amendment will become effective when these articles of amendment are filed in accordance with Chapter 180, Section 7 of the General Laws unless these articles specify, in accordance with the vote adopting the amendment, a later effective date not more than thirty days after such filing, in which event the amendment will become effective on such later date.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, we have hereto signed our names this

10th          day of          November          , in the year 19 88

.................................................................................... xPxoxxdxxt/Vice President

.................................................................................... Secretary
                                                                                      Cxxxxxxxxxxx xDxxxx

THE COMMONWEALTH OF MASSACHUSETTS

ARTICLES OF AMENDMENT

(General Laws, Chapter 180, Section 7)

I hereby approve the within articles of amendment and, the filing fee in the amount of $ /0. ~d having been paid, said articles are deemed to have been filed with me thh     / 5 th
day of     November     .1º  99 .


MICHAEL J. CONNOLLY
Secretary of State


TO BE FILLED IN BY CORPORATION
PHOTO COPY OF AMENOMENT TO BE SENT

TO:
Nutter, McClennen & Fish
One International Place
Boston, MA  02110-2699

Attn:  Constantine Alexander, Esquire

Telephone   (617) 439-2000

Copy Mailed

FEDERAL IDENTIFICATION

MICHAEL JOSEPH CONNOLLY

*Secretary of State*

NO. 04-210-3634

ONE ASHBURTON PLACE, BOSTON, MASS. 02108

### ARTICLES OF AMENDMENT

General Laws, Chapter 180, Section 7

This certificate must be submitted to the Secretary of the Commonwealth within sixty days after the date of the vote of members or stockholders adopting the amendment. The fee for filing this certificate is $10.00 as prescribed by General Laws, Chapter 180, Section 11C(b). Make check payable to the Commonwealth of Massachusetts.

We,      Steven S. Manos          XXXXX Vice President, and Secretary

Joseph J. Lambert        XXXXXXXXXX of

TRUSTEES OF TUFTS COLLEGE

(Name of Corporation)

located at    Medford, Massachusetts

do hereby certify that the following amendment to the articles of organization of the corporation was duly adopted at a meeting held on   November 15    , 19 86 , by vote of   23   members

.............. shareholders, being at least two thirds of its members legally qualified to vote in meetings of the corporation

(or, in the case of a corporation having capital stock, by the holders of at least two thirds of the capital stock having the right to vote thereon):

VOTED:   That the deletion of Section 3 of the Restated Articles of Organization of the corporation and the substitution thereof of the following Section 3 is hereby ratified, confirmed and approved.

> "The corporation shall have thirty-six members, all of whom shall be known as trustees and have the powers of directors. The members, all of whom shall have the same duties, rights and powers, shall consist of (a) the President of the corporation, during such President's term of office, who shall be a Trustee ex officio, (b) Alumni Trustees, who shall be elected from among the alumni of the corporation's colleges and schools either by the alumni acting directly or by such representatives of the alumni as may be chosen members of a representative group, (c) Charter Trustees, who shall be elected by the members of the corporation

Note: If the space provided under any article or item on this form is insufficient, additions shall be set forth on separate 8½ x 11 sheets of paper leaving a left hand margin of at least 1 inch for binding. Additions to more than one article may be continued on a single sheet so long as each article requiring each such addition is clearly indicated.

then in office, of Life Trustees, who shall be
Trustees in office as of August 5, 1970 (other than
Alumni Trustees).  The thirty-six members shall be
comprised of ten Alumni Trustees and such number of
Charter Trustees equal to twenty-five less the number
of Life Trustees then in office.  Except as herein
specified, the qualifications, terms of office and
manner of election of the members of the corporation
shall be as specified from time to time in the by-laws
of the corporation."

The foregoing amendment will become effective when these articles of amendment are filed in accordance with

Chapter 180, Section 7 of the General Laws unless these articles specify, in accordance with the vote adopting the

amendment, a later effective date not more than thirty days after such filing, in which event the amendment will be—

come effective on such later date.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, we have hereto signed our names this

15th                          day of   November                   , in the year 1986

Executive
President/Vice President

Steven S. Manos

Assistant Clerk
Secretary

Joseph J. Lambert

RECEIVED

NOV 20 1986

SECRETARY OF STATE
CORPORATION DIVISION

THE COMMONWEALTH OF MASSACHUSETTS

## ARTICLES OF AMENDMENT

(General Laws, Chapter 180, Section 7)

I hereby approve the within articles of amendment and, the filing fee in the amount of $ *10.00* having been paid, said articles are deemed to have been filed with me this *20th* day of *November*, 19*86*.

*Michael J Connolly*

MICHAEL JOSEPH CONNOLLY
*Secretary of State*


TO BE FILLED IN BY CORPORATION

PHOTO COPY OF AMENDMENT TO BE SENT

TO:

........ Nutter, McClennen & Fish ....
Federal Reserve Plaza
........ 600 Atlantic Avenue ............
Boston, MA  02210
........ Attn:...Constantine Alexander, Esquire

Telephone ...(617) 973-9700 ...............

Copy Mailed



# TUFTS UNIVERSITY

Trustees of Tufts College

## TUFTS UNIVERSITY

## Certificate of Tax-Exempt Status

I, Linda J. Dixon, hereby certify that I, by vote of the Trustees of Tufts University, the governing body, have been duly elected to and now hold the office of Secretary of the Corporation, Trustees of Tufts University.

I further certify that, as set forth in letters issued by the United States Department of the Treasury on September 16, 1932 and the Internal Revenue Service on October 20, 1970, true copies of which are attached hereto, the Corporation is exempt from Federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code and its predecessor Code sections.  The Corporation's exempt status has not been terminated, revoked or modified.

Linda J. Dixon
Secretary of the Corporation
TRUSTEES OF TUFTS UNIVERSITY
July 25, 2003

IRS Tax Exempt Number:
E042 103 634

Medford, Massachusetts 02155
617 627-3320
617 627-3867 Fax



# TREASURY DEPARTMENT

### WASHINGTON

OFFICE OF
COMMISSIONER OF INTERNAL REVENUE
———
ADDRESS REPLY TO
COMMISSIONER OF INTERNAL REVENUE
AND REFER TO

September 16, 1932.

IT:E:RR
CP

Tufts College,
    c/o Harvey E. Averill, Secretary,
        Ballou Hall,
            Boston, Massachusetts.

Sirs:

    Reference is made to the evidence submitted by you in support of your claim to exemption from Federal income taxation.

    The evidence presented discloses that you were incorporated without capital stock in April, 1852, under the laws of the State of Massachusetts as a charitable corporation for educational purposes. The management and execution of the affairs of your organization are vested in an executive committee composed of nine trustees and a financial committee composed of five trustees, all of whom are elected by ballot at your annual meetings and serve for one year, or until their successors are duly elected. Professorships in all departments of your college are held without limitation of time unless otherwise ordered by the trustees in each individual instance. Your organization operates the following schools: The School of Liberal Arts, The Engineering School, The Crane Theological School, The Graduate School, which together constitute the Department of Arts and Sciences; the Medical School, the Dental School; and such other schools as the trustees of your organization may from time to time create or establish. In the affidavit submitted by you and sworn to by your secretary, and in other evidence submitted therewith, it is shown that your organization is a charitable organization chartered for educational purposes; that your income is derived from donations, legacies and bequests, and receipts by your institution; and that your income is used in the operation of your college. From this evidence it would appear that none of your income is credited to surplus or may inure to the benefit of any private shareholder or individual.

    Based on the foregoing, it is held that you are entitled to exemption under the provisions of section 103(6) of the Revenue Act of 1928 and the corresponding section of prior revenue acts. You are not, therefore, required to file returns for 1931 and prior years.

Tufts College.                          -2-

Since it is held that you are entitled to exemption under paragraph (6) of section 103 of the Revenue Act of 1928, and corresponding sections of prior revenue acts, it follows that contributions to you by individual donors are deductible by such individuals in arriving at their taxable net income, in the manner and to the extent provided by section 23(n) of the Revenue Act of 1928 and the corresponding sections of prior revenue acts.

Inasmuch as section 103(6) and section 23(n) of the Revenue Act of 1932 are identical with section 103(6) and section 23(n) of the Revenue Act of 1928, this ruling is also applicable to 1932 and subsequent years so long as there is no change in your organization, your purposes or method of doing business.

Any change in the form of your organization or method of operation, as shown by the evidence submitted, must be immediately reported by you to the collector of internal revenue for your district in order that the effect of such changes upon your present exempt status may be determined.

The exemption granted in this letter does not apply to taxes levied under other titles or provisions of the respective revenue acts, except in so far as the exemption is granted expressly under those provisions to organizations enumerated in section 103 of the Revenue Act of 1928 and the corresponding provisions of prior revenue acts.

A copy of this letter is being transmitted to the collector of internal revenue for your district.

By direction of the Commissioner.

Respectfully,

Deputy Commissioner.

Internal Revenue Service
Washington, DC 20224

Date:                              | In reply refer to:
10-20-70 _____|_____

▷

TRUSTEES OF TUFTS COLLEGE
MEDFORD, MASS                                                02155

Gentlemen:

Based on the information you recently submitted, we have classified you as an organization
that is not a private foundation as defined in section 509(a) of the Internal Revenue Code.

Your classification is based on the assumption that your operations will be as stated in
your notification. Any changes in your purposes, character, or method of operation must be
reported to your District Director so he may consider the effect on your status.

Sincerely yours,

*[signature]*

Chief, Rulings Section
Exempt Organizations Branch

FORM M-0714 (3-70) (CONTINUOUS)

ADDITIONAL SUBSCRIPTION FORM

Ascot Partners, L.P.
450 Park Avenue, 32nd Floor
New York, New York 10022

Attn.: Mike Autera

Dear Sir/Madam:

The undersigned hereby wishes to make an additional capital contribution to Ascot Partners, L.P. (the "Partnership"). The amount to be contributed ("Additional Capital Contribution") is: $ 5,000,000____.

The undersigned acknowledges and agrees: (i) that the undersigned is making the Additional Capital Contribution on the terms and conditions contained in the subscription agreement, dated April 1, 20 08, previously executed by the undersigned and accepted by the General Partner (the "Subscription Agreement"); (ii) that the representations and covenants of the undersigned contained in the Subscription Agreement and the anti-money laundering supplement thereto are true and correct in all material respects as of the date set forth below; (iii) that the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) that the background information provided to the General Partner is true and correct in all material respects as of the date set forth below.

*[The rest of the page is intentionally left blank.]*

10108442.5

A-1

THE UNDERSIGNED AGREES TO NOTIFY THE GENERAL PARTNER
PROMPTLY IN WRITING SHOULD THERE BE ANY CHANGE
IN ANY OF THE FOREGOING INFORMATION.

Dated: 3-20            , 20 08

INDIVIDUALS                          ENTITIES

                                     Trustees of Tufts College
_____            _____
Signature                            Print Name of Entity

                                     By: Sally M Dungan
_____            _____
Print Name                           Authorized Signatory

_____            Sally Dungan Chief Investment Officer
Additional Investor Signature        _____
                                     Print Name and Title

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INTERNAL USE ONLY
To be completed by J. EZRA MERKIN

ADDITIONAL CAPITAL CONTRIBUTION ACCEPTED
AS TO $ 5,000,000

ASCOT PARTNERS, L.P.

By: J EZRA MERKIN

By: J Ezra Merkin

Date: April 1, 2008

*[Signature page to Additional Subscription Form.]*