# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

(Please print or type)

Name of Customer: Arthur I. Segel
Mailing Address: 118 Dean Road
City: Brookline    State: Massachusetts    Zip: 02445
Account No.: see attachment
Taxpayer I.D. Number (Social Security No.): [redacted]-7011

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1. Claim for money balances as of **December 11, 2008**:

   a. The Broker owes me a Credit (Cr.) Balance of      $ 218,400 (estimate)

   b. I owe the Broker a Debit (Dr.) Balance of      $ 0

   c. If you wish to repay the Debit Balance,
      please insert the amount you wish to repay and
      attach a check payable to "Irving H. Picard, Esq.,
      Trustee for Bernard L. Madoff Investment Securities LLC."
      If you wish to make a payment, **it must be enclosed**
      with this claim form.                                $ 0

   d. If balance is zero, insert "None."                   $218,400 (estimate)

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | see attachment | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                           2

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

| | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  Marc J. Bloostein, Ropes & Gray LLP, One International Place, Boston, Massachusetts 02110-2624.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____5/12/09_____ Signature x_____

Date _____ Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

| | |
|---|---|
| **Name of Customer:** | Arthur I. Segel |
| **Mailing Address:** | 118 Dean Road |
| | Boston, MA 02445 |
| **Taxpayer ID Number:** | [redacted]-7011 |

On July 1, 2002, Arthur I. Segel, through his revocable trust, The Arthur I. Segel 1994 Trust (the "Customer"), contributed cash in the amount of $1,000,000 to be invested in MW Special Situations Fund, L.P. ("MW Fund"). MW Fund then deposited a portion of the Customer's investment in Rye Select Broad Market Fund, L.P. (formerly known as American Masters Broad Market Fund, L.P.) ("Rye"). MW Fund's cash was then deposited by Rye with Bernard L. Madoff Investment Securities LLC ("BLMIS") to purchase various securities.

The amount of cash that MW Fund invested in Rye varied from year to year. As of December 30, 2008, the Rye investment comprised 13.9% of the MW Fund's portfolio. Based on this percentage and the value of the Customer's interest in the MW Fund as of September 30, 2008, the Customer estimates to the best of his ability that the amount of his cash deposited with BLMIS was $218,400.

As of December 31, 2008, the Customer redeemed all of his interest in the MW Fund *other than* that portion attributable to Rye/BLMIS. The Customer has not redeemed or otherwise withdrawn any amount of his investment attributable to the cash deposited with Rye/BLMIS.

Attached hereto are documents evidencing the Customer's claim. A copy of the Customer's executed MW Fund Subscription Agreement is attached as Exhibit A; a copy of the Customer's capital account statement as of September 30, 2008 is attached as Exhibit B; and a letter from MW Fund to its investors detailing how the BLMIS portion of redemptions will be treated is attached as Exhibit C.

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

The Customer acknowledges that the Trustee has reported to have found no securities purchased on behalf of customers for at least the past thirteen years and does not expect to discover any such securities. Accordingly, the Trustee has reported that he does not foresee any valid claims for securities. To the extent that any valid securities claims exist due to any future recovery of securities by the Trustee, or otherwise, the Customer expressly claims any and all such securities purchased for his benefit.

11792810_1

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

Exhibit A

11792810_1

Exhibit B

# SUBSCRIPTION AGREEMENT

## To Become A Limited Partner In

## MW SPECIAL SITUATIONS, L.P.

AGREEMENT made the 1st day of July, 2002 by and among Milbank Winthrop & Co. (the "General Partner") and all the other parties who shall sign copies of this Agreement (such other parties being collectively referred to herein as the "Subscribers").

WHEREAS, the General Partner has formed a limited partnership to be known as MW Special Situations, L.P. (the "Partnership") and to become the General Partner therein, all upon the terms and conditions set forth in the Limited Partnership Agreement, a copy of which is annexed hereto; and

WHEREAS, each Subscriber desires to become a limited partner in the Partnership with a capital contribution in the amount and of the type set forth alongside such Subscriber's name at the end hereof;

NOW, THEREFORE, in consideration of the promises herein contained, it is hereby agreed:

**FIRST:** Each Subscriber hereby agrees to become a limited partner in the Partnership on the terms and conditions set forth in the attached Limited Partnership Agreement, which is being executed by each Subscriber simultaneously with the execution of this Agreement. The Limited Partnership Agreement shall take effect when signed by the General Partner.

**SECOND:** Each Subscriber agrees to contribute to the Partnership as such Subscriber's capital contribution cash in an amount equal to the amount set forth alongside such Subscriber's name; and the General Partner agrees to accept such cash as a capital contribution to the Partnership.

**THIRD:** The capital contribution of the Subscriber shall be payable to the Partnership in full on or before a date (the "Effective Date") which shall be a day designated by the General Partner. Each party hereto agrees that, on or before the Effective Date, he or she shall cause his or her capital contribution to be delivered to the Partnership, at a place to be designated by the General Partner, in the form of cash or checks, subject to collection, payable to the Partnership.

**FOURTH:** EACH SUBSCRIBER MUST COMPLETE THE APPROPRIATE REPRESENTATIONS SET FORTH BELOW:

**REPRESENTATIONS FOR INDIVIDUALS**

The Subscriber is an individual and at the time of his or her capital contribution

☐ his or her individual net worth, or joint net worth with that of his or her spouse, exceeds $1,500,000.

☐ the above does not apply (further information may be required to determine eligibility to invest in the Partnership).

**REPRESENTATIONS FOR PENSION PLANS AND IRAS**

The Subscriber has consulted counsel to the extent it deems necessary concerning the propriety of making an investment in the Partnership and the appropriateness of such an investment under the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code of

1986, as amended, including with respect to an IRA the possible risk of loss of the IRA's tax-exempt status if an investment in the Partnership is found to violate the requirements of Code section 408(a)(5).

The Subscriber is

- ☐ an IRA and the individual who established the IRA has a net worth, or joint net worth with that of his or her spouse, at the time of its capital contribution in excess of $1,500,000.

- ☐ a self-directed pension plan and the participant who directed that assets of his or her account be invested in the Partnership has a net worth, or joint net worth with that of his or her spouse, at the time of its capital contribution in excess of $1,500,000 and such participant is the only participant whose account is being invested in the Partnership.

- ☐ a pension plan which is not a self-directed plan and which at the time of its capital contribution has a net worth in excess of $1,500,000 and total assets in excess of $5,000,000.

- ☐ none of the above apply (further information may be required to determine eligibility to invest in the Partnership).

**REPRESENTATIONS FOR TRUSTS OTHER THAN PENSION PLANS**

The Subscriber is

- ☒ a revocable trust with a single grantor and the grantor is an individual with a net worth, or joint net worth with that of his or her spouse, at the time of its capital contribution in excess of $1,500,000.

- ☐ an irrevocable trust which consists of a single trust (i) with total assets at the time of its capital contribution in excess of $5,000,000, (ii) which has a net worth at the time of its capital contribution in excess of $1,500,000, (iii) which was not formed for the specific purpose of acquiring an interest in the Partnership, and (iv) whose purchase of an interest in the Partnership is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the Partnership.

- ☐ none of the above apply (further information may be required to determine eligibility to invest in the Partnership).

**REPRESENTATIONS FOR CORPORATIONS AND PARTNERSHIPS**

The equity owners of the Subscriber share in the profits and losses of all investments of the Subscriber in the same way on the basis of their proportional ownership, and do not have non-pro rata interests in specified investments of the Subscriber.

Based on most recent valuations available, (i) the Subscriber's investment in the Partnership constitutes less than 40% of its net assets and the Subscriber agrees to notify the Partnership at the end of any quarter that its investment in the Partnership exceeds 50% of its net assets, and (ii) less than 25% of the Subscriber's assets are owned by "benefit plan investors" as defined in regulations of the United States Department of Labor concerning those categories of assets that constitute assets of an employee benefit plan, and the Subscriber agrees to notify the Partnership promptly if the percentage of its assets which is owned by benefit plan investors should equal or exceed 25%.

2

The Subscriber is

☐ an investment company as defined in Section 3(a) of the Investment Company Act of 1940 which is exempt from registration pursuant to Section 3(c)(1) of such Act, and each of the equity owners therein is an individual whose net worth at the time of its capital contribution exceeds $1,500,000.

☐ a partnership, corporation, or a Massachusetts or similar business trust (i) which has a net worth at the time of its capital contribution in excess of $1,500,000, (ii) which is neither an investment company as defined in Section 3(a) of the Investment Company Act of 1940 which is required to be registered under such Act nor an investment company as so defined which is exempt from registration pursuant to Section 3(c)(1) of such Act and (check one or more of the following):

☐ it was not formed for the specific purpose of acquiring an interest in the Partnership and has total assets at the time of its capital contribution in excess of $5,000,000.

☐ each of the equity owners therein is an individual whose net worth, or joint net worth with that of his or her spouse, at the time of its capital contribution exceeds $1,000,000.

☐ none of the above apply (further information may be required to determine eligibility to invest in the Partnership).

**FIFTH:** Each Subscriber further represents, warrants, acknowledges and agrees that:

(a) The Subscriber is entering into this Agreement relying solely on the facts and terms set forth in this Agreement, the Confidential Private Offering Memorandum of the Partnership and the attached Limited Partnership Agreement, the Subscriber has received copies of all such documents and the General Partner has not made any representations of any kind or nature to induce the Subscriber to enter into this Agreement except as specifically set forth in such documents.

(b) The Subscriber has made an investigation of the pertinent facts relating to the proposed operation of the Partnership and has reviewed the terms of the Limited Partnership Agreement to the extent the Subscriber deems necessary in order to be fully informed with respect thereto.

(c) The Subscriber (or the Subscriber's financial adviser, if any, who has been designated by the undersigned) has such knowledge and experience in financial and business matters that the Subscriber is capable of evaluating the merits and risks of an investment in the Partnership; and the Subscriber is able to bear a complete loss of his or her investment in the Partnership.

(d) (1) The Subscriber will be acquiring the limited partnership interest for investment, for his or her own account and not for the interest of any other person and not for distribution or resale to others, and he will not permit any other person to acquire a beneficial interest in the limited partnership interest without the consent of the General Partner. The Subscriber understands that the limited partnership interests have not been registered under the Securities Act of 1933, as amended (the "Act"), and the Subscriber agrees that his or her interest in the Partnership may not be sold, transferred, or otherwise disposed of except pursuant to an exemption from registration under the Act. The Subscriber will not assign his or her interest in the Partnership or any beneficial interest therein, in whole or in part, to any other person, nor will he or she be entitled to substitute for himself or herself as a limited partner any other person, except with the written consent of the General Partner in its sole discretion;

3

(2) The Subscriber understands the effect of the limitations on disposition and of his or her representation that his or her interest in the Partnership will not be resold without an exemption from registration under the Act being available. The Subscriber understands that transfers can be made only with the consent of the General Partner in its sole and absolute discretion.

(e) No person is acting or authorized to act as the Subscriber's financial adviser in connection with his or her capital contribution, except as set forth below.

**SIXTH:** If the Subscriber is a corporation, partnership, trust or other entity, the person executing this Agreement and the Limited Partnership Agreement for the Subscriber has the full power and authority under the Subscriber's governing instruments to do so and the Subscriber has the full power and authority under its governing instruments to become a limited partner in the Partnership.

**SEVENTH:** If the Subscriber is an investment company as defined in the Investment Company Act of 1940 or otherwise would be an investment company but for the exceptions contained in Section 3(c)(1) and Section 3(c)(7) of that Act, it recognizes that the Partnership is restricted by law as to the number of beneficial interests held in the Partnership, and, that in determining the number of beneficial interests, it may be necessary to count the beneficial owners of the Subscriber if it owns 10% or more of the limited partner's interests in the Partnership. Accordingly, the Subscriber agrees to take whatever action is requested by the Partnership to have its interest in the Partnership be less than 10% of the total interests of the limited partner and expressly agrees that the General Partner of the Partnership may require the Subscriber to withdraw at any time so much of its interest as is necessary to keep such interest below 10%.

**EIGHTH:** If the Subscriber is a pension plan, IRA or other tax-exempt entity, it is aware that it may be subject to Federal income tax on any unrelated business taxable income from its investment in the Partnership.

**NINTH:** Concurrently with the execution of this Agreement, the Subscriber has executed and delivered to the Partnership a counterpart of the Limited Partnership Agreement of the Partnership, to be effective upon the Subscriber's admission as a partner in the Partnership.

**TENTH:** The Subscriber hereby agrees that any representation made hereunder will be deemed to be reaffirmed by him or her at any time the Subscriber makes an additional capital contribution to the Partnership and the act of making such additional contribution will be evidence of such reaffirmation.

**ELEVENTH:** This Agreement shall inure to the benefit of and be binding upon each of the parties hereto, and their respective heirs and legal representatives.

**TWELFTH:** This Agreement may be executed in counterparts, all of which when taken together shall be deemed one original.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this 1st day of July, 2002.

**General Partner**

MILBANK WINTHROP & CO.

By: [signature]

**Subscriber**

The Arthur I. Segel 1994 Trust
Type in Name of Subscriber

[signatures]
Signature of Subscriber
or Authorized Signatory

Trustees
Title of Authorized Signatory

[redacted]-7011
Taxpayer Identification or
Social Security Number of Subscriber

Purchaser Representative
(if any):

Name:_____

Address:_____

_____

_____

Capital Contribution:

$1,000,000

Residence Address of
Subscriber:
c/o Marc J. Bloostein
Ropes & Gray
One International Place
Boston, MA 02110-2624

00146.005 #69583

5

       If the Subscriber is an IRA or self-directed pension plan, the individual who established the IRA or the individual who directed the pension plan's investment in the Partnership, as the case may be, (i) has signed below to indicate that he hereby represents and warrants for himself those representations set forth in Sections Fourth, Fifth, Eighth and Tenth above and (ii) has caused the custodian or trustee of the Subscriber to execute the Limited Partnership Agreement of the Partnership and to execute this Agreement on the line set forth above for Authorized Signatory.

---------------------------------
Type in name

---------------------------------
Signature

00146.003 #268968

6

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

Exhibit B

11792810_1

MILBANK WINTHROP & CO.

# MW SPECIAL SITUATIONS, LP

Estimated Capital Account Value
September 30, 2008

### The Arthur I. Segal 1994 Trust

| | |
|---|---:|
| 2007 Ending Balance per K-1 | $ 1,699,229 |
| Contributions | - |
| Management Fees | -16,920 |
| Change in Capital from Investments & Operations | -110,883 |
| Estimated Ending Balance September 30, 2008 | $ 1,571,426 |

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

Exhibit C

# MILBANK WINTHROP & CO.

654 MADISON AVENUE  
NEW YORK, NY 10065

TEL: 212 · 980 · 2500  
FAX: 212 · 980 · 2510

December 30, 2008

To The Investors of MW Special Situations, LP:

As reported in our December 15, 2008 memorandum, MW Special Situations, L.P. was affected by the massive fraud allegedly carried out by Bernard Madoff. Madoff's firm was the sole manager of Rye Select Broad Market Fund, L.P. ("Rye") which comprised 13.9% of the MW Special Situations portfolio. As you are undoubtedly aware, all investments in Rye have become illiquid; redemptions have been frozen and calculation of a net asset value (NAV) has been suspended.

MW Special Situations, LP and MW Special Situations Offshore Fund, Ltd. (together, the "Fund") have received withdrawal requests effective December 31, 2008 totalling approximately $33 million. Given the illiquidity of the Rye position, Milbank Winthrop & Co. (the "General Partner") has been confronted with the need to balance the interests of continuing investors and those investors making withdrawals.

The Limited Partnership Agreement of the Partnership and the By-laws of the Offshore Fund provide that distributions to investors withdrawing from the Fund may be made in cash or, in the discretion of the General Partner, in securities selected by the General Partner, or partly in cash and partly in securities.

The General Partner has decided that the fairest option to both continuing and withdrawing investors is to satisfy December 31, 2008 withdrawal requests by paying withdrawing investors their proceeds partly in cash and partly in participating interests in one of two new special purpose vehicles ("SPVs"). Limited partners in MW Special Situations will receive SPV interests in a Delaware entity, and shareholders of MW Special Situations Offshore Fund will receive SPV interests in a Bermuda entity. Together the two SPVs will hold the entire investment in Rye Select Broad Market Fund.

The General Partner will transfer to each withdrawing investor a portion of the interests in the respective SPV in an amount equal to the *pro rata* portion of the investor's interest in the Rye position. While withdrawing investors will receive SPV interests directly, the SPV interests of continuing investors will be allocated to their capital accounts. If and when the Fund's position in Rye is liquidated, proceeds will be distributed to both the Fund and investors who have withdrawn, in exchange for the applicable portion of the SPV interests that each investor holds. Investors will not have the right to withdraw the SPV interests, and the SPV interests can be transferred only with the prior approval of the General Partner.

In addition to the Rye investment, a cash reserve will be allocated to the SPVs, to meet contingencies related to the Rye investment, such as possible legal action against Rye and others. The General Partner will determine the amount of the cash reserve in the next few days.

In closing, we would like to express our appreciation for the support of the many clients we have spoken with since this sorry affair came to light. We share the anger all of you feel to have been victimized by a man who seems to have lost his moral bearings, if indeed he ever had any. As investors ourselves in MW Special Situations, the principals of Milbank Winthrop & Co. and our families stand to lose significant sums. But what hurts even more is that our fellow investors and clients have incurred losses resulting from the Madoff fraud.

Please feel free to contact us if you have any questions about the foregoing. We will continue to keep you informed of all important developments in this matter.

Sincerely,


Milbank Winthrop & Co.

SK 00146 0003 949987 v2