# Exhibit B

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer:  Nader F. Darehshori_____

Mailing Address:  __44 Carisbrooke Road_____

City: Wellesley_____    State:  MA____    Zip:  02481____

Account No.: [redacted]0971  *see attachment_____

Taxpayer I.D. Number (Social Security No.): [redacted]-9607_____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.    Claim for money balances as of **December 11, 2008**:

   a.    The Broker owes me a Credit (Cr.) Balance of      $ 500,000 *see attachment

   b.    I owe the Broker a Debit (Dr.) Balance of      $ None_____

   c.    If you wish to repay the Debit Balance,

      please insert the amount you wish to repay and

      attach a check payable to "Irving H. Picard, Esq.,

      Trustee for Bernard L. Madoff Investment Securities LLC."

      If you wish to make a payment, **it must be enclosed**

      with this claim form.      $ None_____

   d.    If balance is zero, insert "None."      $500,000_____

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | Yes | |
| b. | I owe the Broker securities | | No |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | *see attachment | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:**  **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

<u>YES</u>                <u>NO</u>

3.    Has there been any change in your account since December 11, 2008?  If so, please explain.  _____    X

4.    Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker?  _____    X

5.    Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker?  _____    X

6.    Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s)  _____    X

7.    Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming.  _____    X

8.    Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers.  _____    X

9.    Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker.  _____    X

Please list the full name and address of anyone assisting you in the preparation of this claim form:  <u>Christopher G. Green, Ropes & Gray LLP,</u>
<u>One International Place, Boston, MA 02110-2624</u>.

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____    Signature _____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

| | |
|---|---|
| **Name of Customer:** | **Nader F. Darehshori** |
| **Mailing Address:** | **44 Carisbrooke Road** |
| | **Wellesley, MA 02481** |
| **Taxpayer ID Number:** | [redacted]9607 |

On September 11, 2008, Nader F. Darehshori deposited cash in the amount of $500,000 to be invested in the Rye Select Broad Market Prime Fund, L.P.  Mr. Darehshori's $500,000 cash was then deposited by Rye Select Broad Market Prime Fund, L.P. with Bernard L. Madoff Investment Securities LLC ("BLMIS") to purchase various securities.  Mr. Darehshori did not redeem or otherwise withdraw any amount of his cash deposited with BLMIS.  Therefore, Mr. Darehshori asserts a customer claim in the amount of $500,000

Attached hereto are documents evidencing Mr. Darehshori's customer claim.  Copies of the confirmation of cash receipt, confirmation of intent and trade confirmation evidencing the $500,000 investment in the Rye Select Broad Market Prime Fund, L.P. are attached as Exhibit A.  As reflected in Exhibit A, Mr. Darehshori's account number with the Rye Select Broad Market Prime Fund, L.P. is [redacted]0971.  Attached as Exhibit B is the Rye Select Broad Market Prime Fund, L.P. Subscription Agreement.

Mr. Darehshori acknowledges that the Trustee has reported to have found no securities purchased on behalf of customers for at least the past thirteen years and does not expect to discover any such securities.  Accordingly, the Trustee has reported that he does not foresee any valid claims for securities.  To the extent that any valid securities claims exist due to any future recovery of securities by the Trustee, or otherwise, Mr. Darehshori expressly claims any and all such securities purchased for its benefit.

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

# EXHIBIT A



A Division of Tremont Group Holdings, Inc.

BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street, 20th Floor West
New York, New York 10286
USA

Fax:     --
E-mail: mparks@jefferies.com

16-Oct-2008

Michael Parks
One Post Office Square, Ste. 3400
Boston, MA 02109
USA

## CONFIRMATION OF CASH RECEIPT

Dear Investor,

We are pleased to confirm the receipt of your proceeds on behalf of Rye Select Broad Market Prime Fund, L.P.  The details below confirm the specifics of the transaction. Your proceeds will not be invested until all requisite documentation has been received in good order and your eligibility as an investor in Rye Select Broad Market Prime Fund, L.P. has been confirmed.

Please take a moment to review this confirmation to ensure that all details pertaining to this transaction and your account are correct.  If any discrepancies are identified please contact our Investor Services Group as described below.

## ACTIVITY CONFIRMED

Details

| | |
|---|---|
| Action | Cash Received |
| Date Received | 11-Sep-2008 |
| Amount Local | 500,000.00    USD |
| Amount Base | 500,000.00    USD |

To Be Applied

| | |
|---|---|
| Dealing Date | 01-Oct-2008 |
| Security | Rye Select Broad Market Prime Fund, L.P. |

| ACCOUNT INFORMATION | | INVESTOR INQUIRIES | |
|---|---|---|---|
| Acct. Name | NFS/FMTC FBO: Nader F.  Darehshori IRA | Telephone | 212.815.4090 |
| | | Facsimile | 212.644.6669 |
| Acct. Number | [redacted]0971 | | |
| Telephone | 781-235-5554 | Email | AISOnline_NY@bankofny.com |
| Facsimile | -- | | |
| Email | ndarehshori@aptius.com | Web | www.fundadmin.com |



BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street, 20th Floor West
New York, New York 10286
USA

Fax:      --
E-mail:  mparks@jefferies.com

21-Oct-2008

Michael Parks
One Post Office Square, Ste. 3400
Boston, MA 02109
USA

## CONFIRMATION OF INTENT

Dear Investor,

Please be advised that we are in receipt of your notice of intent to buy interests in Rye Select Broad Market Prime Fund, L.P. The details below are reflective of the transaction related direction that we have received as of the date of this notice. Please note that the execution of your transaction as detailed below is contingent upon actual receipt of all necessary documentation and acceptance and approval by the Fund or its authorized agent. If you have already provided such documentation, no further action on your part is required.

Please review this Notice carefully to ensure all details pertaining to this transaction and your account are accurate. If any discrepancies are identified please immediately contact our Investor Services Group as described below.

## ACTIVITY CONFIRMED

Details

| | | |
|---|---|---|
| Action Confirmed: | Notice Received | |
| Action Pending: | Buy | |
| Amount: | 500,000.00 | USD |
| Dealing Date: | 1-Oct-2008 | |
| Security: | Rye Select Broad Market Prime Fund, L.P. | |

| ACCOUNT INFORMATION | | INVESTOR INQUIRIES | |
|---|---|---|---|
| Acct. Name | NFS/FMTC FBO: Nader F. Darehshori IRA | Telephone | 212.815.4090 |
| Acct. Number | [redacted] 0971 | Facsimile | 212.644.6669 |
| Telephone | 781-235-5554 | Email | AISOnline_NY@bankofny.com |
| Facsimile | -- | Web | www.fundadmin.com |
| Email | ndarehshori@aptius.com | | |



BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street, 20th Floor West
New York, New York 10286
USA

Fax:    --

E-mail: mparks@jefferies.com

23-Oct-2008

Michael  Parks
One Post Office Square, Ste. 3400
Boston, MA 02109
USA

| TRADE CONFIRMATION |
|---|

Dear Investor,

We are pleased to confirm your investment into Rye Select Broad Market Prime Fund, L.P. The details below confirm the specifics of the transaction executed on your behalf.

Please take a moment to review this confirmation to ensure that all details pertaining to this transaction and your account are correct.  If any discrepancies are identified please contact our Investor Services Group as described below.

| ACTIVITY CONFIRMED | |
|---|---|

Security                    Rye Select Broad Market Prime Fund, L.P.

| Details | | Contributions | |
|---|---|---|---|
| Action | Buy | Gross Contribution | 500,000.00 |
| Dealing Date | 1-Oct-2008 | Sales Charge/Interest Payment | 0.00 |
| Base Currency | USD | Net Contribution | 500,000.00 |
| Lot Ref. Number | | | |

| ACCOUNT INFORMATION | | INVESTOR INQUIRIES | |
|---|---|---|---|
| Acct. Name | NFS/FMTC FBO: Nader F.  Darehshori IRA | Telephone | 212.815.4090 |
| | | Facsimile | 212.644.6669 |
| Acct. Number | [redacted] 0971 | Email | AISOnline_NY@bankofny.com |
| Telephone | 781-235-5554 | | |
| Facsimile | -- | Web | www.fundadmin.com |
| Email | ndarehshori@aptius.com | | |

**Attachment to Customer Claim Form, Bernard L. Madoff Investment Securities LLC**

# EXHIBIT B



# Rye Select Broad Market Prime Fund, L.P.

### Subscription Agreement

[825071-2]

RYE SELECT BROAD MARKET PRIME FUND, L.P.

INVESTMENT PROCEDURES

Prospective investors (each an "Investor") should complete the following steps prior to the intended date of subscription:

(1)    Complete the attached Subscription Agreement and send the completed original Subscription Agreement to The Bank of New York Mellon's Alternative Investment Services division ("BNY") at the address below, to arrive as soon as possible and in any event at least three (3) days prior to the anticipated date of admission, so that BNY and Tremont Partners, Inc. (the "General Partner") may determine whether the prospective Investor is eligible to subscribe for limited partnership interests ("Interests"). Please retain a copy for your records.

U.S. tax-exempt investors must complete Exhibit A if the Investor is an Employee Benefit Plan or a Keogh Plan or Exhibit B if the Investor is an Individual Retirement Plan.

Please send the completed Subscription Agreement, Limited Partner Signature Pages, applicable Exhibits, and the appropriate Tax Certification and direct all questions to:

        Rye Select Broad Market Prime Fund, L.P.
        c/o The Bank of New York Mellon
        Alternative Investment Services
        101 Barclay Street, 20th Floor West
        New York, NY 10286
        Telephone: (212) 815-4090
        Facsimile: (212) 644-6669
        Attention: Investor Services – Rye Select Funds

(2)    Please send the intended subscription amount (the "Subscription Amount") to BNY, at least one (1) Business Day prior to the applicable subscription date, using the attached Payment Information sheet. If the subscription is not accepted for any reason the Subscription Amount will be returned to the prospective Investor.

(3)    CHECKS SHOULD NOT BE POST-DATED AS THEY WILL BE DEPOSITED IMMEDIATELY TO ENSURE SUFFICIENT TIME FOR THEIR CLEARANCE PRIOR TO THE DATE OF ADMISSION.

(4)    The Investor acknowledges that BNY and the General Partner reserve the right to request such information as is necessary to verify the Investor's identity. In the event of delay or failure by the Investor to produce any information requested in this Subscription Document or required for verification purposes, the General Partner may refuse to accept the Subscription.

(5)    BNY will notify the prospective Investor as to whether it is eligible to subscribe for Interests and will provide notification as to the net available subscription date (the "Offering Date"). Upon acceptance of the subscription, a copy of the executed Subscription Agreement, signed as accepted on behalf of the Partnership, will be returned to the Investor.

(6)    By subscribing, each prospective Investor which is an entity represents that its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) permits it to make investments in securities such as the Interests, that all appropriate action has been taken by the prospective Investor to authorize the investment, and that the person(s) executing the Subscription Agreement has the authority to do so. Copies of such documents must be provided, upon request, to BNY.

(7)    If the prospective Investor is not a qualified Investor or if the prospective Investor does not wish to subscribe for an Interest, please return all of the enclosed documents to the above address. Except as authorized by the General Partner, the enclosed documents may not be reproduced, duplicated or delivered to any other person.

(8)    The following materials must be provided to BNY:

(a) For Individuals and Participants in Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans

A government issued form of picture identification (e.g., passport or driver's licence). Identification must be current (i.e., non-expired) and legible.

A letter of reference from the Investor's financial institution (a sample reference letter is attached hereto as Exhibit E).

(b) For Fund of Funds or Other Entity that Invests on Behalf of Third Parties

A copy of the entity's organization or charter documents filed with the jurisdiction of organization.

An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit C).

A completed copy of Exhibit D certifying that the entity has adequate anti-money laundering policies and procedures in place that are consistent with all applicable anti-money laundering laws and regulations, including the USA PATRIOT Act and OFAC (as defined below).

A completed copy of Exhibit F listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 10% or more of any voting or non-voting class of equity interests of the prospective investor, and the names of the entity's directors, general partners, or members, as applicable. (You must complete Exhibit F regardless of whether there are any 10% beneficial owners.)

A letter of reference from the Investor's financial institution (a sample reference letter is attached hereto as Exhibit E).

(c) For Trusts

An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit C).

A copy of the trust or evidence of its formation.

A completed copy of Exhibit G.

A letter of reference from the Investor's financial institution (a sample reference letter is attached hereto as Exhibit E).

(d) For Privately Held Entities (other than a Fund of Funds, Entity that Invests on Behalf of Third Parties, or Trust)

A copy of the entity's organization or charter documents filed with the jurisdiction of organization.

An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit C).

A completed copy of Exhibit F listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 10% or more of any voting or non-voting class of equity interests of the prospective investor, and the names of the entity's directors, general partners, or members, as applicable. (You must complete Exhibit F regardless of whether there are any 10% beneficial owners.)

A letter of reference from the Investor's financial institution (a sample reference letter is attached hereto as Exhibit E).

(e) For Publicly Held Companies

A copy of the entity's organization or charter documents filed with the jurisdiction of organization or the most recent annual report.

An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit B).

The name of the exchange on which the entity's shares are listed and the ticker symbol.

RYE SELECT BROAD MARKET PRIME FUND, L.P.

PAYMENT INFORMATION

PAYMENT BY WIRE

*(If wiring funds, please give a copy of this page to your bank)*

Payments in full for the amount subscribed are to be made in U.S. dollars by bank telegraphic transfer as follows:

Your bank should wire transfer only U.S. dollars via Fedwire to:

|  |  |
|---|---|
| To: | The Bank of New York Mellon |
|  | One Wall Street |
|  | New York, NY 10286 |
| ABA No.: | 021-000-018 |
| Account No: | 890-0664-223 |
| Account Name: | Rye Select Broad Market Prime Fund, L.P. |

Please also have your bank fax the following message (Facsimile: 212-644-6660) to BNY, Attention: Investor Services - Rye Select Funds:

"Rye Select Broad Market Prime Fund, L.P. – We have credited your account for $500,000 _____ *(insert amount)* by order of Harri E. Dale Hide *(insert name of investor)* on _____ *(insert date)."*

IMPORTANT:

1)  Please have your bank identify on the wire transfer the name of the intended investor.

2)  We recommend that your bank charge its wiring fees separately so that an even amount may be invested.

3)  Subscription payments must come from an account in the Subscriber's name. Redemption proceeds will be returned to that same account.

PAYMENT BY CHECK

If payment is in check form, it must be in U.S. dollars made payable to "Rye Select Broad Market Prime Fund, L.P." and mailed to the following address:

Rye Select Broad Market Prime Fund, L.P.
c/o The Bank of New York Mellon
Alternative Investment Services
101 Barclay Street, 20th Floor West
New York, NY 10286
Attention: Investor Services – Rye Select Funds

## RYE SELECT BROAD MARKET PRIME FUND, L.P.
### SUBSCRIPTION AGREEMENT

The Bank of New York Mellon
Alternative Investment Services
101 Barclay Street, 20th Floor West
New York, NY 10286
Telephone: (212) 815-4090
Facsimile: (212) 644-6669
Attention: Investor Services – Rye Select Funds

Re:    Rye Select Broad Market Prime Fund, L.P. (the "Partnership")
       Issuance of Limited Partnership Interests ("Interests")

**Investor Information** (*please print or type*):

Name of Investor:

NFS/FMTC FBO Nader F. Darehshori IRA

Nationality of Investor (if natural person)/
Jurisdiction of organization (if entity):

US

Social Security or taxpayer identification number:

[redacted] 9607

Occupation of Investor (if natural person)/Type of Business (if entity):

CHAIRMAN + CEO

Date of birth (if natural person):

12/15/1936

Name of person exercising investment discretion for investor (trustee or fiduciary, etc.):

_____

**Investor Type** (*please check one*):

__ Individual
__ Joint Tenants
__ Tenants in Common
__ Partnership

__ Corporation
__ Limited Liability Company
__ Trust
__ Foundation
__ Endowment
__ Employee Benefit Plan
(complete Exhibit A attached hereto)
__ Keogh Plan
(complete Exhibit A attached hereto)
✓ Individual Retirement Plan
(complete Exhibit B attached hereto)
Other: (specify):
_____

**Subscription Information** (*please print or type*):

Amount of Subscription: U.S.$  500,000

[825071-2]                    S-6

FOR NATURAL PERSONS:

Education

| College or University | Degree and Year | Major Concentration |
|---|---|---|
| U. of Wisconsin | 1966 | Business |

Employment

Name of Current Employer: *Aptus Education*

Address of Current Employer: *35 Walnut Street, Ste 100*

*Wellesley Hills, MA 02481-2101*

Employer's Telephone Number: *781.489.2200*

Employer's Facsimile Number: *781.235.2661*

Name of Spouse's Current Employer: *Gibson Consulting*

Marital Status: *Married*

Number of Dependents: *3*

Describe briefly all positions (including directorships) held during the past five years which were related to financial, business, accounting, economics, taxation or investment matters and which you feel demonstrate your investment sophistication. Where appropriate, briefly describe the business of the company or other entity in which the position was held (attach separate sheet as necessary):

*Chairman + CEO - Houghton Mifflin*
*Chairman + CEO - Cambium Learning*
*Chairman + CEO - Aptus Education*
*Board Member - State Street Bank (STT)*
*Board Member - Aviva Life*

FOR U.S. TAX-EXEMPT INVESTORS ONLY:

If applicable, please indicate the basis on which the Investor is exempt from U.S. federal income taxation and please attach to this Subscription Agreement, when submitted to BNY, applicable written evidence of the tax exempt status for purposes of U.S. federal income taxation of the intended investor:

_____

_____

_____

_____

FOR INVESTMENT COMPANIES ONLY:

Is the Investor an investment company, or a company that is excluded from the definition of investment company solely by reason of the provisions of either Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act of 1940, as amended (the "Company Act")?

Yes___  No____

If the answer to the question above is yes, please indicate which: _____

If the answer to the question above is yes, please state the number of the Investor's beneficial owners:

_____

COMMUNICATIONS:

Residence or Principal Place of Business Address:

_Nader F. Darehshori_
Name

_ndarehshor.@aptus.com_
E-Mail Address:

_44 Carisbrooke Road_
Street

_Wellesley, MA 02481_
City, State, Zip Code

Attn: _____

_(781) 235-5654_
Telephone No.

(___)_____
Facsimile No.

Mailing Address (*if different from above*):

_____

_____

_____

Please send confirmation of a subscription for an interest, a copy of this Subscription Agreement and any other communications (including distribution, if any, and withdrawal proceeds checks) to (*initial one*):

_____ residence or principal business address above;
*(Initial)*

_____ mailing address above.
*(Initial)*

Special instructions regarding communication:

_____

_____

_____

## AUTHORIZATION OF AGENT(S):

Set forth below are the names of persons authorized by the Investor to give and receive instructions between the Partnership and the Investor, together with their respective signatures. Such persons are the only persons so authorized until further notice to the Partnership signed by one or more of such persons.

*(Please attach additional pages if needed)*

| Name | Signature |
|------|-----------|
| _____ | _____ |
| _____ | _____ |

## WIRING INSTRUCTIONS:

Until further written notice to the Partnership signed by one or more of the persons listed above, funds may be wired to the Investor using the following instructions:

Bank name: JP Morgan Chase Bank, NY

Bank address: One Chase Manhattan Plaza, New York City NY 10005

ABA Number or SWIFT Address: 021000021

Account name: National Financial Services LLC

Account number: [redacted]6 221

For further credit: Nader F. Darehshori IRA

[redacted]3131

[825071-2]                    S-9

Ladies and Gentlemen:

The offer and sale of limited partnership interests (the "Interests") in Rye Select Broad Market Prime Fund, L.P., a Delaware limited partnership (the "Partnership"), to each Investor has not been registered under the Securities Act of 1933, as amended (the "Securities Act") or the securities laws of any jurisdiction, but rather is being made privately by the Partnership pursuant to the private placement exemption from registration provided in Section 4(2) of the Securities Act and Rule 506 of Regulation D ("Regulation D") promulgated thereunder by the United States Securities and Exchange Commission (the "SEC") on the basis of the Amended and Restated Confidential Private Placement Memorandum of the Partnership, as the same may be updated, amended or modified from time to time (the "Memorandum").

The information requested in this Subscription Agreement is needed in order to ensure compliance with the applicable regulations and to determine whether (1) an investment in the Partnership by the Investor is suitable in light of the Investor's financial position, (2) the Investor meets certain minimum net worth tests to be deemed an "accredited investor" as defined in Regulation D and a "qualified purchaser" as defined in the Investment Company Act of 1940, as amended (the "Company Act"), and (3) has such knowledge and experience in financial and business matters that is capable of evaluating the merits and risks of the investment.

The Investor also understands and agrees that, although the Partnership will use its best efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties as it deems advisable if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership, Tremont Partners, Inc. (the "General Partner") and their affiliates, if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Partnership, the General Partner or any of their affiliates is a party or by which it is or may be bound or if such information is otherwise required by the agents or employees of the General Partner or any of their affiliates in rendering services to the Partnership.

The Investor hereby agrees as follows:

I.      SUBSCRIPTION FOR AN INTEREST

The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and in connection therewith subscribes for and agrees to purchase an Interest in and to make a capital contribution ("Capital Contribution") to the Partnership on the terms provided for herein and in the Memorandum and in the amended and restated limited partnership agreement of the Partnership, as the same may be updated, amended or modified from time to time (the "Partnership Agreement"). The minimum initial investment is U.S.$500,000, subject to the General Partner's discretion to reduce such amount. The Investor agrees to, and understands, the terms and conditions upon which the Interests are being offered, including, without limitation, the risk factors referred to in the Memorandum.

The Investor understands and agrees that the Partnership reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part and at any time prior to acceptance thereof. In the event of rejection of this subscription, this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Partnership, the Investor shall be a Limited Partner. The Investor hereby agrees that by its execution of this Subscription Agreement and upon acceptance hereof by the Partnership, it shall become a party to the Partnership Agreement. The Investor shall sign and date the Limited Partner Signature Pages attached to the Partnership Agreement and promptly return them to BNY.

II.    ELIGIBILITY REPRESENTATIONS OF THE INVESTOR

(A)    General:

*Initial one and complete blanks*

The Investor hereby warrants and represents that:

_____
*(Initial)*

(1)    If the Investor is an employee benefit plan, an endowment, a foundation, a corporation, partnership, trust or other legal entity, it is:

- organized under the laws of: _____

- has its principal place of business in: _____

OR

_____
*(Initial)*

(2)    If the Investor is an individual or if beneficial ownership of the Investor is held by an individual (for example, an Individual Retirement Account or Keogh Plan), such individual is of legal age and is a:

- citizen of:        USA
- resident of:      MA
- approximate net worth of the Investor:   11,500,000
- source of wealth:    Sale of assets

(B)    Accredited Investor Status:

*Initial all appropriate spaces on the following pages indicating the basis upon which the Investor qualifies as an accredited investor under Regulation D.*

*For Individual Investors Only*

_____
*(Initial)*

(1)    The Investor hereby certifies that he/she is an accredited investor because he/she has an individual net worth, or with his/her spouse has a joint net worth, in excess of $1,000,000. *For purposes of this questionnaire, "net worth" means the excess of total assets at fair market value, including home, home furnishings and automobiles, over total liabilities.*

_____
*(Initial)*

(2)    The Investor hereby certifies that he/she is an accredited investor because he/she has individual income (exclusive of any income attributable to his/her spouse) of more than $200,000 in each of the past two years, or joint income with his/her spouse in excess of $300,000 in each of those years, and such investor reasonably expects to reach the same income level in the current year.

_____
*(Initial)*

(3)    The Investor hereby certifies that he/she is an accredited investor because he/she is a director, executive officer or general partner of the Partnership, or any director, executive officer or general partner of a general partner of the Partnership.

*For Corporations, Foundations, Endowments, Partnerships, Limited Liability Companies, Limited Partnerships or Limited Liability Partnerships*

| | | |
|---|---|---|
| _____<br>*(Initial)* | (4) | The Investor hereby certifies that it is an accredited investor because it has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the securities offered. |
| _____<br>*(Initial)* | (5) | The Investor hereby certifies that it is an accredited investor because all of its equity owners are accredited investors. *The General Partner or BNY may request information regarding the basis on which such equity owners are accredited.* |

*For Employee Benefit Plans (Please complete Exhibit A attached hereto)*

| | | |
|---|---|---|
| _____<br>*(Initial)* | (6) | The Investor hereby certifies that it is an accredited investor because it is an employee benefit plan within the meaning of the United States Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the decision to invest in the Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is: |

_____

| | | |
|---|---|---|
| _____<br>*(Initial)* | (7) | The Investor hereby certifies that it is an accredited investor because it is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000. |
| _____<br>*(Initial)* | (8) | The Investor hereby certifies that it is an accredited investor because it is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000. |

*For Individual Retirement Accounts (Please complete Exhibit B attached hereto), Self-Directed Benefit Plans and Keogh Plans (Please complete Exhibit A attached hereto)*

| | | |
|---|---|---|
| *(Initial)* | (9) | The Investor hereby certifies that it is an accredited investor because it is a self-directed plan (i.e., a tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) in which all persons directing the investment in the Partnership are accredited investors because each participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years. *The General Partner or BNY may request information regarding the basis on which such participants are accredited.* |

Total number of participants of the plan directing an investment in the Partnership: _____

*For Not-for-Profit Entities (Including Endowments, Private Foundations and Charities)*

| | | |
|---|---|---|
| _____<br>*(Initial)* | (10) | The Investor hereby certifies that it is an accredited investor because it is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, was not formed for the specific purpose of acquiring the securities offered, and has total assets in excess of $5,000,000. |

[825071-2]                                                        S-12

*For Trusts*

_(Initial)_    (11)    The Investor hereby certifies that it is an accredited investor because it has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered, and its purchase is directed by a sophisticated person. *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment.*

_(Initial)_    (12)    The Investor hereby certifies that it is an accredited investor because it is (i) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act, (ii) acting in a fiduciary capacity and (iii) subscribing for the purchase of the securities being offered on behalf of a trust account or accounts.

_(Initial)_    (13)    The Investor hereby certifies that it is an accredited investor because it is a revocable trust which may be amended or revoked at any time by the grantors thereof, the tax benefits of investments made by the trust pass through to the grantors and all of the grantors are accredited investors. *The General Partner or BNY may request information regarding the basis on which such equity owners are accredited.*

*For Banks, Savings and Loans and Similar Institutions*

_(Initial)_    (14)    The Investor hereby certifies that it is an accredited investor because it is a bank as defined in Section 3(a)(2) of the Securities Act acting in its individual capacity.

_(Initial)_    (15)    The Investor hereby certifies that it is an accredited investor because it is an investment company registered under the Company Act or a business development company as defined in Section 2(a)(48) of that Act.

_(Initial)_    (16)    The Investor hereby certifies that it is an accredited investor because it is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

_(Initial)_    (17)    The Investor hereby certifies that it is an accredited investor because it is an insurance company as defined in Section 2(13) of the Securities Act.

(C)    Qualified Purchaser Status:

*Initial all appropriate spaces on the following pages indicating the basis upon which the Investor qualifies as a qualified purchaser under the Company Act.*

### For Individual Investors Only

_____ (1)    The Investor hereby certifies that he/she is a qualified purchaser because he/she owns
(Initial)    not less than $5,000,000 in investments[1], including any investments held jointly, in community property or other similarly shared ownership interest with his/her spouse, including the amount of his/her investment held in an individual retirement account or similar account and the investments of which are directed by and held for his/her benefit[2].

### For IRA or Self-Directed Pension Plan

_____ (2)    The Investor hereby certifies that it is a qualified purchaser because it is an IRA or a self-
(Initial)    directed pension plan and the individual who established the IRA or the individual who established the IRA or the individual responsible for directing the investment of assets in the Partnership is an individual who owns not less than $5,000,000 in investments.

### For "Family" Corporations, "Family" Trusts, "Family" Partnerships, "Family" Limited Liability Companies, "Family" Foundations or "Family" Endowments

_____ (3)    The Investor hereby certifies that it is a qualified purchaser because it was not formed for
(Initial)    the specific purpose of investing in the Partnership, owns not less than $5,000,000 in investments and is (i) owned directly or indirectly by or for two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, spouses or such persons, and the estates of such persons, or (ii) a foundation, charitable organization or trust established by or for the benefit of such persons in (i) above.

OR

The Investor hereby certifies that it is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser.

---

[1]    The term "investments" shall mean any or all (1) securities (as defined in Securities Act), except for securities of issuers controlled by the Investor ("Control Securities") unless (A) the issuer of the Control Securities is itself a registered or private investment company or is excepted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the United States Securities Exchange Act of 1934, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of the Investor's purchase of Interests); (2) futures contracts or options thereon held for investment purposes, (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

[2]    In determining whether spouses who are making a joint investment are qualified purchasers, there may be included in the amount of each spouse's investments any investments owned by the other spouse (whether or not such investments are held jointly).

[825071-2]    S-14

**For Trusts**

_____
(Initial)

(4)    The Investor hereby certifies that it is a qualified purchaser because it was not formed for the specific purpose of acquiring Interests, and the trustee or other authorized person making decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a person described in Items (1), (3) or (8) of this Section.

**For Employee Benefit Plans**

_____
(Initial)

(5)    The Investor hereby certifies that it is a qualified purchaser because it is an employee benefit plan that (i) owns not less than $25,000,000 in investments and (ii) does not permit its participants to decide whether and how much to invest in particular investment alternatives.

**For Qualified Institutional Buyers**

_____
(Initial)

(6)    The Investor hereby certifies that it is a qualified purchaser because it is a "qualified institutional buyer" as defined in Rule 144A under the Securities Act, acting for its own account, the account of another qualified institutional buyer, or the account of a qualified purchaser, provided that (i) a dealer described in paragraph (a)(1)(ii) of Rule 144A shall own and invest on a discretionary basis at least $25,000,000 in securities of issuers that are not affiliated persons of the dealer; and (ii) a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(F) of Rule 144A that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

**For Knowledgeable Employees**

_____
(Initial)

(7)    The Investor hereby certifies that he/she is a qualified purchaser because he/she is an individual who is a "knowledgeable employee" as defined in Rule 3c-5 under the Company Act including, but not limited to, a director, executive officer, trustee, general partner, advisory board member, or an employee of the Partnership, the General Partner (other than an employee performing solely clerical, secretarial or administrative functions) who has participated in investment activities of the Company or a similar entity for at least twelve (12) months.

**For Other Entities**

_____
(Initial)

(8)    The Investor hereby certifies that it is a qualified purchaser because it was not formed for the specific purpose of investing in the Company and is acting for its own account or for the accounts of other qualified purchasers for which it owns and invests on a discretionary basis not less than $25,000,000 in investments.

OR

The Investor hereby certifies that is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser.

**Plus, For all Investors Other Than Individuals**

_____   (9)   The Investor is not an entity that is excepted from the definition of an "investment
(Initial)                company" under the Company Act pursuant to Section 3(c)(1) or Section 3(c)(7); or

_____   (10)   The Investor is a 3(c)(1) or 3(c)(7) Company and does not have any direct "beneficial
(Initial)                owners" that have held an interest in the Investor from on or before April 30, 1996 (a
                           "Pre-April 30 Holder"); or

_____   (11)   The Investor is a 3(c)(1) or 3 (c)(7) Company and has obtained consent to its treatment as
(Initial)                a qualified purchaser from all of its Pre-April 30 Holders.

                           If the Investor is described in Item (3) or (4), the Investor may initial Item (12) instead of
                           Item (11)

_____   (12)   The Investor is a 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as
(Initial)                a qualified purchaser from all of its directors, general partners or trustees.

                           If the Investor has initialed Item (10) or Item (11), the Investor must also respond to Item
                           (13)

_____   (13)   No direct or indirect beneficial owner of the Investor is itself a 3(c)(1) or 3(c)(7) company
(Initial)                which controls, is controlled by, or is under common control with the Investor.

                           If the Investor cannot initial Item (13) because it has a control relationship with a
                           beneficial owner and is itself a 3(c)(1)/3(c)(7) Company, the Investor may be required to
                           obtain consent from the security holders of such owners.

                           Note: In determining whether the $5 million or $25 million thresholds are met,
                           investments can be valued at cost or market value as of a recent date provided that in the
                           case of Commodity Interests, the amount of Investments shall be the value of the initial
                           margin or option premium deposited in connection with such Commodity Interests and
                           in each case, if investments have been acquired with indebtedness, the amount of
                           indebtedness must be deducted in determining whether the threshold has been met.

(D)     Foreign/Non-Foreign Status:

   *For U.S. Individuals*

_____   (1)    The Investor hereby certifies that it is not a non-resident alien for purposes of income
(Initial)                taxation (as such term is defined in the Internal Revenue Code of 1986, as amended, and
                           Income Tax Regulations).

   *For U.S. Entities*

_____   (2)    The Investor hereby certifies that is not a foreign corporation, foreign partnership, foreign
(Initial)                trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986,
                           as amended, and Income Tax Regulations).

   *For Foreign Individuals or Entities*

[825971-2]                                              S-16

_____
*(Initial)*
(3)    The Investor certifies that it is a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, and Income Tax Regulations).

(E)    Benefit Plans Investor Status:

*Please initial the following certifications as appropriate:*

_____
*(Initial)*
(1)    The Investor, an affiliate of the Investor, or the person or entity for which the Investor is acting is <u>not</u> a, and is not using to acquire the Interests the assets of any, "benefit plan investor" as defined in 29 C.F.R. 2510.3-101(f)(2) (as modified by Section 3(42) of ERISA) (the "Plan Asset Regulation"). For purposes of illustration, "benefit plan investors" include pension plans, profit-sharing plans, or other "employee benefit plans" subject to part 4 of subtitle B of Title 1 of ERISA and plans subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"). "Benefit plan investors" also include simplified employee pension plans, KEOGH plans and individual retirement accounts. "Benefit plan investors" also include entities deemed under Department of Labor regulations to hold "plan assets" due to investments made in the entity by such employee benefit plans and other plans.

If the Investor is an entity, the Investor certifies that less than 25% of the value of each class of equity interests in the Investor (excluding any equity interests held by an individual or entity with discretionary authority or control over the equity interests of the Investor) is held by "benefit plan investors."

*Or*

_____
*(Initial)*
(2)    The Investor, an affiliate of the Investor, or the person or entity for which the Investor is acting is a "benefit plan investor" as defined in the Plan Asset Regulation.

If the Investor is a "benefit plan investor," please indicate whether the Investor is a plan defined in Section 4975 of the Internal Revenue Code of 1986 (e.g., an individual retirement account, Coverdell account, etc.):

_____          _____
Yes              No

_____
*(Initial)*

(3) The Investor is a life insurance company acquiring the Interest with the assets of the Investor's general account:

If so, the portion of such general account which represents "plan assets" within the meaning of the Plan Asset Regulation will not exceed the following percentage during the period the Investor holds the Interests:

_____
*(Initial)*

(4) The Investor is a person who has discretionary authority or control[1] with respect to the assets of the Partnership or provides investment advice to the Partnership for a fee, direct or indirect, with respect to such assets or any affiliate of any such person[2] (a "Controlling Person").

_____
*(Initial)*

(5) The Investor is an entity whose underlying assets are deemed to include "plan assets" by reason of an employee benefit plan or other plan's investment in the Investor. If so, the percentage of equity interests of the Investor held by the employee benefit plans subject to part 4 of subtitle B of Title I of ERISA or plans subject to Section 4975 of the Code will not exceed the following percentage during the period the Investor holds the Interests:

_____%

The Investor understands and agrees that the information supplied above will be utilized to determine whether benefit plan investors own less than 25% of the value of the Interests, as determined under the Plan Asset Regulation, both upon the original issuance of Interests and upon subsequent transfer of Interests.

(G)    General - For All Investors:

_____
*(Initial)*

The Investor hereby agrees that if any of the information in this Item 11 changes, the Investor will notify the General Partner within 10 days thereof. The Investor understands that the information contained in this Item 11 may be disclosed to the Internal Revenue Service by the Partnership and that any false statement contained in this Item 11 could be punished by fine, imprisonment or both.

---

[1] For purposes of this question, "control" means, with respect to a person other than an individual, the power to exercise a controlling influence over the management or policies of such person.

[2] For purposes of this question, "affiliate of a person" includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the person.

III.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

(A)    The Investor agrees that it will not sell or otherwise transfer the Interest without registration under the Securities Act or an exemption therefrom, and fully understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is subsequently registered under the Securities Act and under applicable securities laws of such states or an exemption from such registration is available. The Investor acknowledges that it is aware and understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from such registration under the Securities Act. The Investor also acknowledges that it is aware and understands that sales or transfers of the Interest are further restricted by the provisions of the Partnership Agreement and state securities laws. The Investor further acknowledges that it is aware and understands that the Partnership is not registered as an investment company under the Company Act, in reliance upon an exemption from such registration.

(B)    The Investor represents that it has received and read a copy of the Memorandum and the Partnership Agreement outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership and the Investor hereby adopts all provisions therein. The Investor represents that in making a decision to subscribe for an Interest, that it has relied solely upon the Memorandum, the Partnership Agreement and its own independent investigations. The Investor represents that it understands the investment objectives and policies of, and the investment strategies that may be pursued by, the Partnership. The Investor represents that its investment in the Interest is consistent with its investment purposes and objectives and cash flow requirements and that its investment will not adversely affect its overall need for diversification and liquidity. The Investor represents that it is not subscribing pursuant hereto for any Interest as a result of or subsequent to (a) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media or broadcast over television or radio, or (b) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, subsequent to or pursuant to any of the foregoing.

(C)    The Investor represents that it has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except its own professional advisors or as instructed by the General Partner.

(D)    The Investor represents that it has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of its investment in the Interest and that it is able to bear such risks, and has obtained, in its judgment, sufficient information from the Partnership or the Partnership's authorized representatives to evaluate the merits and risks of such investment. The Investor represents that it has evaluated the risks of investing in the Interest and has determined that the Interest is a suitable investment for it.

(E)    The Investor represents that it can afford a partial or complete loss of its investment in the Interest, can afford to hold the investment in the Interest for an indefinite period of time and acknowledges that it is aware and understands that distributions may be paid in cash or in kind.

(F)    The Investor represents that it is acquiring the Interest subscribed for herein for its own account, for investment purposes only and not with a view to distribute or resell such Interest, either as a whole or in part.

(G)    The Investor acknowledges that it is aware of and understands the method of compensation of the General Partner by the Partnership as set forth in the Partnership Agreement. The Investor acknowledges and agrees that the Partnership Agreement constitutes an arm's length arrangement with respect to the receipt of net cash proceeds which may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case if this allocation were not made.

(H)    The Investor acknowledges that it understands and is aware that the General Partner has the authority to allocate transaction costs to obtain research, investment management related services and equipment as set forth in the Memorandum. The Investor acknowledges that it understands that by signing this Subscription Agreement that it expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(I)    The Investor acknowledges that it understands that the General Partner may open "average price" accounts with brokers, in which purchase and sale orders placed during a trading day on behalf of the Partnership and other clients or affiliates of the General Partner and its affiliates are combined, and securities bought and sold pursuant to such orders are allocated among such accounts on an average price basis.

(J)    If the Investor is an employee benefit plan (a "Plan"), the fiduciary executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

(1)    the Plan is not a participant-directed defined contribution plan unless each participant directing an investment in the Company is an accredited investor and a qualified purchaser;

(2)    the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interest and has determined that, in view of such considerations, the purchase of the Interests is consistent with any applicable responsibilities under of the Fiduciary ERISA. The Fiduciaries of such Plan represent and warrant that they have been informed of and understand the Partnership's investment objectives, policies and strategies and that the decision to invest such Plan's assets in the Interests was made with appropriate consideration of relevant investment factors with regard to such Plan and is consistent with any applicable duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA. Such factors include, but are not limited to:

(a)    the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)    whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom;

(c)    the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

(d)    the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)    the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan;

(f)    an investment in the Partnership is permissible under the documents governing the Plan and the Fiduciary; and

(g)    the risks associated with an investment in the Partnership.

(3)    the Fiduciary (a) is responsible for the decision to invest in the Partnership; (b) is independent of the Partnership, the General Partner or any of their affiliates; and (c) is qualified to make such investment decision and

(4)    it will promptly dispose of its Interests in a manner consistent with the Partnership's restrictions on transfer if it has been notified by the General Partner that its ownership of the Interests would result in 25% or more, as determined under the Plan Asset Regulation, of the value of the Interests being held by benefit plan investors.

(K)    If the Investor is, or is acting on behalf of, a benefit plan investor (as defined in the Plan Asset Regulation), the Investor represents and warrants that, its purchase, ownership and disposition of the Interests will not result in or constitute a "prohibited transaction" under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church plan, any similar federal, state or local law) for which an exemption is not available.

(L)    The Investor represents that it has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (countries) and U.S. tax considerations applicable to Investor's purchase of the Interests.

(M)    The Investor acknowledges that it is aware and understands that:

(1)    no federal or state agency has passed upon the Interests or made any findings or determination as to the fairness or merits of this investment;

(2)    there are risks of loss of investment incidental to the purchase of the Interest, including those summarized in the Memorandum; and

(3)    the General Partner and each of its affiliates may provide similar services to investment funds and managed accounts in which the Investor will have no interest and there are other potential conflicts as described in the Memorandum.

(N)    The Investor represents that the execution, delivery and performance by the Investor of this Subscription Agreement are within the powers of the Investor, have been duly authorized and will not constitute or result in a breach or default under, or conflict with, any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which the Investor is a party or by which the Investor is bound, and, if the Investor is not an individual, will not violate any provisions of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Investor. The Investor represents that the signature on this agreement is genuine, and the signatory, if the Investor is an individual, has legal competence and capacity to execute the same, or, if the Investor is not an individual, the signatory has been duly authorized to execute the same, and this Subscription Agreement constitutes a legal, valid and binding obligation of the Investor, enforceable in accordance with its terms.

(O)    The Investor acknowledges that it is aware and understands that Tannenbaum Helpern Syracuse & Hirschtritt LLP acts as counsel to the Partnership and as counsel to the General Partner and their respective affiliates. The Investor also acknowledges that it is aware and understands that, in connection with this offering of Interests and subsequent advice to the Partnership, Tannenbaum Helpern Syracuse & Hirschtritt LLP will not be representing Investors in the Partnership, including the Investor, and no independent counsel has been retained by the Partnership to represent Investors in the Partnership.

(P)    The Investor understands that the Partnership intends to comply with Section 3(c)(7) of the Company Act, which will permit private investment companies (such as the Partnership) to sell their interests, on a private placement basis, to an unlimited number of "qualified purchasers" as defined in Section 2(a)(51) of the Company Act. The Investor understands that, for this reason, the General Partner, in its discretion, may offer Interests only to Investors that it believes will meet the definition of qualified purchaser.

[825071-2]                                    S-21

(Q)    The Investor covenants to advise the General Partner in writing if any warranty or any information contained herein becomes untrue.

(R)    The Investor has received a copy of the General Partner's Form ADV Part II a minimum of 48 hours prior to entering into this Agreement.

## IV.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Partnership, the General Partner and their respective officers, directors, employees, agents and shareholders, and each other person, if any, who controls or is controlled by any thereof, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage, cost and expense whatsoever (including, but not limited to, legal fees and disbursements and any and all other expenses whatsoever incurred in investigating, preparing for or defending against any litigation, arbitration proceeding, or other action or proceeding, commenced or threatened, or any claim whatsoever) arising out of or in connection with, or based upon or resulting from, (a) any false representation or warranty or breach or failure by the Investor to comply with any covenant or agreement made by the Investor in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (b) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor. Notwithstanding anything to the contrary, the foregoing shall not be construed so as to relieve (or attempt to relieve) the General Partner of any liability to the extent (but only to the extent) such liability may not be waived, modified or limited under applicable law (including liability under U.S. securities laws which, under certain circumstances, impose liability even on persons acting in good faith), but shall be construed so as to effectuate the foregoing provisions to the fullest extent permitted by law.

(B)    The Investor, as principal, hereby appoints the General Partner as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

(1)    any partnership certificate, business certificate, fictitious name certificate, amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state, or local or foreign law;

(2)    the Partnership Agreement of the Partnership and any amendment duly approved as provided therein; and

(3)    any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including, but not limited to, a notice of dissolution of the Partnership).

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetence, termination, bankruptcy, insolvency or dissolution of the Investor, *provided, however,* that this power of attorney will terminate upon the substitution of another Limited Partner for all of the Investor's investment in the Partnership, upon the withdrawal of the Investor from the Partnership or upon the redemption of all of the Interest owned by the Investor.

(C)    This Subscription Agreement (i) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Partnership and its successors and assigns, (ii) shall be governed, construed and enforced in accordance with the laws of Delaware, regardless of the conflicts of law provisions thereof, (iii) shall survive the acceptance of the Investor as a limited partner of the Partnership and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each of such persons.

[825071-2]                                        S-22

(D)    The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement and any or all transactions relating hereto and thereto may be brought in U.S. federal and state courts in the State of New York. The Investor hereby irrevocably submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by U.S. federal and New York law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum. The Investor hereby further irrevocably consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Investor at the address of the Investor then appearing on the records of the Partnership. Nothing contained herein shall affect the right of the Partnership to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(E)    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law or in any particular instance shall not affect the validity or enforceability of any other provisions hereof or of such provision in any other instance, and to this extent the provisions hereof shall be severable.

## V.    TRUSTEE, AGENT, REPRESENTATIVE, NOMINEE OR OTHER THIRD PARTIES

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor with respect to the Investor *and* with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Partnership, the General Partner and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum, the Limited Partnership Agreement and the Subscription Agreement; (c) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (d) the Third Party is a "qualified eligible participant" under the Commodity Exchange Act, as amended, an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act. The Investor also agrees to indemnify the Partnership, the General Partner and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

## VI.  ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The General Partner may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's compliance with applicable regulatory requirements or tax status, and the Investor shall provide such information as may reasonably be requested.

Each person acquiring an Interest must satisfy the foregoing investor eligibility criteria both at the time of subscription and at all times thereafter until such person ceases to be a Limited Partner of the Partnership. Accordingly, the Investor agrees to notify the General Partner promptly if there is any change with respect to any of the foregoing information or representations and to provide the General Partner with such further information as the General Partner may reasonably require. In addition, the Investor agrees that at any time in the future at which the Investor may acquire additional Interests, the Investor shall be deemed to have reaffirmed, as of the date of such acquisition of additional Interests, each and every representation made by the Investor in this Subscription Agreement, except to the extent modified in writing by the Investor and consented to by the Partnership.

The Subscription Agreement and the Partnership Agreement constitute the entire arrangement and understanding between the parties hereto regarding its subject matter, and supersede any prior or contemporaneous agreements, arrangements and understandings, written or oral, between the parties regarding the same.

## VII.  ANTI-MONEY LAUNDERING REPRESENTATIONS

(A)    The Investor represents that all evidence of identity provided in connection with the Subscription Agreement is true and correct and all related information furnished is genuine and accurate.

(B)    The Investor agrees to provide any information deemed by the Partnership or the General Partner, from time to time and in its sole and absolute discretion, necessary to comply with any anti-money laundering program that the Partnership and/or the General Partner may, either presently or in the future, adopt and any related responsibilities. The Investor agrees and acknowledges that in the event of delay or failure by the Investor to produce any information requested in this Subscription Agreement or required for verification purposes, the Partnership may refuse to accept the subscription.

(C)    The Investor represents and covenants that neither it, nor any person controlling, controlled by, or under common control with it, nor any person having a beneficial interest in it, is an individual, organization, or entity listed on the List of Specially Designated Nationals and Blocked Persons (the "OFAC Control List") maintained by the U.S. Office of Foreign Assets Control ("OFAC")[5], and that it is not investing and will not invest in the Partnership on behalf of or for the benefit of any individual, organization, or entity listed on the OFAC Control List.

(D)    The Investor represents that (i) the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that contravene U.S. federal or state laws or regulations and international laws and regulations, including anti-money laundering laws and regulations, and (ii) the proceeds from the Investor's investment in the Partnership will not be used to finance any illegal activities.

---

[5] Available at http://www.ustreas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf

(E)     The Investor agrees and acknowledges (i) that additional subscriptions by the Investor may be refused and/or (ii) that requests for withdrawals may be delayed or declined if the General Partner reasonably believes it does not have satisfactory evidence of the Investor's identity.

(F)     The Investor agrees and acknowledges that, if, following its subscription in the Partnership and/or, the General Partner reasonably believes that the Investor is listed on the OFAC Control List or has otherwise breached its representations and covenants as to its identity, the General Partner may be obligated to block the Investor's investment in accordance with applicable law, and the Investor shall have no claim against the General Partner for any form of damages as a result of blocking the investment.

(G)     If the Investor is a "fund of funds" or an entity that invests on behalf of others, the Investor, in addition to and not by way of limiting the foregoing, represents and certifies that it is aware of the requirements of the USA PATRIOT Act of 2001, and rules and regulations promulgated thereunder and other applicable anti-money laundering measures in any jurisdiction (collectively, the "AML Rules") and that it has adopted anti-money laundering policies and procedures in place reasonably designed to verify the identity of its beneficial owners or underlying investors, as the case may be, and their respective sources of funds. Such policies and procedures are properly enforced and are consistent with such AML Rules. The Investor represents and certifies that to the best of its knowledge, the beneficial owners or investors, as the case may be, are not individuals, entities, or countries that may subject the Partnership or any of its affiliates to criminal or civil violations of any AML Rules.   The Investor agrees and acknowledges that it is to furnish a copy of its anti-money laundering policies and procedures to the Partnership when requested.  Among its other obligations hereunder, the Investor agrees to promptly notify the Partnership if the foregoing representation and certification becomes inaccurate.

(H)     Investor represents that:

(1)     it is not a Senior Foreign Political Figure[6], a member of a Senior Foreign Political Figure's Immediate Family[7], and/or any Close Associate[8] of a Senior Foreign Political Figure residing in a non-cooperative country or territory or a jurisdiction that has been designated by the U.S. Treasury as warranting special measures due to primary money laundering concerns;

(2)     it is not a former Senior Foreign Political Figure residing in a non-cooperative country or territory or a jurisdiction that has been designated as warranting special measures due to primary money laundering concerns;

(3)     it is not resident in, or organized or chartered under the laws of a jurisdiction that has been designated by the U.S. Secretary of Treasury under Sections 311 and 312 of the USA PATRIOT Act as warranting special measures due to primary money laundering concerns;

(4)     it is not a Foreign Shell Bank as the term is defined in the USA PATRIOT Act; and

---

[6] The term "senior foreign political figure" is defined to mean a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation.

[7] The term "immediate family" is defined to mean the parents, siblings, spouse, children and in-laws of a senior foreign political figure.

[8] The term "close associate" is defined to mean a person who is widely and publicly known to maintain an unusually close relationship with a senior foreign political figure.

(5)      its subscription funds do not originate from, nor will they be routed through, an account maintained at a Foreign Shell Bank, an "offshore bank,"[9] or a bank organized or charted under the laws of a jurisdiction deemed to be a non-cooperative country or territory ("NCCT")[10].

---

[9] The term "offshore bank" refers to a foreign bank that is barred, pursuant to its banking license, from conducting banking activities with the citizens of, or with the local currency of, the country that issued the license.

[10] The Financial Action Task Force on Money Laundering ("FATF") has designated certain countries or territories as NCCTs. The list of countries or territories deemed to be NCCTS is available at: http://www1.oecd.org/fatf.

SET 1 OF 2

IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement as of the date set forth below under penalties of perjury.

Date: _August 21 , 2008___

*For Individual Investors:*

_Nader F. Darehshori (signature)_
Signature

_Nader F. Darehshori_
(Please Type Name)

*For Investors other than Individuals:*

_____
(Please Type or Print Name of Investor)

By: _____
Signature

_____
(Please Type or Print Name of Signatory)

Title: _____

*Name of Trustees or Other Fiduciaries Exercising Investment
Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By: _____
Signature of Authorized Signatory

_____
Name of Custodian (Print)

_____
Name of Authorized Signatory (Print)

SET 2 OF 2

IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement as of the date set forth below under penalties of perjury.

Date: _August_ _ _, _ _ _

*For Individual Investors:*

_____
Signature

Nader F Darehshori
(Please Type Name)

*For Investors other than Individuals:*

_____
(Please Type or Print Name of Investor)

By: _____
Signature

_____
(Please Type or Print Name of Signatory)

Title: _____

*Name of Trustees or Other Fiduciaries Exercising Investment*
*Discretion with Respect to Benefit Plan or Trust*

| Signature | Printed Name | Title |
|-----------|--------------|-------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By: _____        _____
    Signature of Authorized Signatory        Name of Custodian (Print)

_____
Name of Authorized Signatory (Print)

SET 1 OF 2

RYE SELECT BROAD MARKET PRIME FUND, L.P.

LIMITED PARTNERSHIP AGREEMENT

LIMITED PARTNER SIGNATURE PAGE

By its signature below, the undersigned hereby agrees that effective as of the date of its admission to Rye Select Broad Market Prime Fund, L.P. as a Limited Partner it shall (i) be bound by each and every term and provision of the Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P., as the same may be duly amended from time to time in accordance with the provisions thereof, and (ii) become and be a party to said Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P..

Nader F. Darehshori
(Type or Print Name)

_____
(Signature)

_____
(Representative capacity, if any)

N/28/08
Date

*(Page 1 of 2)*

SET 2 OF 2

RYE SELECT BROAD MARKET PRIME FUND, L.P.

LIMITED PARTNERSHIP AGREEMENT

LIMITED PARTNER SIGNATURE PAGE

By its signature below, the undersigned hereby agrees that effective as of the date of its admission to Rye Select Broad Market Prime Fund, L.P. as a Limited Partner it shall (i) be bound by each and every term and provision of the Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P., as the same may be duly amended from time to time in accordance with the provisions thereof, and (ii) become and be a party to said Limited Partnership Agreement of Rye Select Broad Market Prime Fund, L.P..

Nader F. Darehshori
(Type or Print Name)

(Signature)

_____
(Representative capacity, if any)

8/28/08
Date

*(Page 2 of 2)*

EXHIBIT B

to be Executed by IRA Beneficiary

To:     Tremont Partners, Inc. (the "General Partner")

Re:     Letter of Independent Investment Powers
        Rye Select Broad Market Prime Fund, L.P.

I certify that the individual named below is the sole beneficiary of the IRA custodied at
_National Financial Services_____ (the "IRA"), which is making an investment in
the Partnership. The undersigned has sole and absolute discretion to make investment decisions on behalf of the
IRA and assumes full responsibility for such investment decisions.

The IRA Beneficiary has not given discretionary authority or control respecting the management of the IRA to
the General Partner or any of its agents. None of the General Partner or any of its agents are fiduciaries as to the
IRA, nor do they exercise any authority or control respecting management or disposition of the IRA assets.

The responsibility and authority for investment decisions, including the decision to enter into the Subscription
Agreement for Interests of the Partnership is solely that of the undersigned. I represent that I have made the
decision only after receiving and reviewing the Memorandum, that the decision to enter into such investment is
freely and independently made by me and that I accept full fiduciary responsibility with respect thereto.

Name of IRA Beneficiary: _Nader F Darehshori_

Address: _44 Carisbrooke Road Wellesley MA 02481_

Phone Number: _781-235-5554_

Signature: _____    Date: _8/28/08_

Account Number [redacted] 3 1 3 1

# Request for Alternative Investment Transaction

Account Owner Name(s)  Nader F Darehshori

This letter authorizes National Financial Services LLC (NFS), agent for Fidelity Management Trust Company, as Custodian for my account to

[✓] Purchase    [ ] Redeem

Quantity in Shares/Units

at

Price $

for

Amount $  500,000

of

Product Description  Rye Select Broad Market Prime Fund, L.P.

I hereby direct National Financial Services LLC, agent for Fidelity Management Trust Company, to execute the transaction agreement for the said alternative investment/private offering and to take such other actions as are necessary to complete such transaction, including making delivery/receipt of payment for the transaction amount out of my IRA/brokerage account to the Transfer Agent or issuer that is so designated.

I agree to indemnify and hold harmless Fidelity Management Trust Company and its agent, National Financial Services LLC, from any claims or losses that may occur as a result of this transaction.

Account Owner's Signature                                    Date  8/28/08

Account Owner's Signature                                    Date

National Financial Services LLC, Member NYSE, SIPC                              419008 (01/06)

**Form W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give form to the requester. Do not send to the IRS.

Name (as shown on your income tax return)
Nader F Darehshori

Business name, if different from above

Check appropriate box: ☑ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ___  ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
44 Carisbrooke Road

City, state, and ZIP code
Wellesley, MA 02481

Requester's name and address (optional)

List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
[redacted] 9 6 0 7

or

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here   Signature of U.S. person ▶   Date ▶

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

• An individual who is a citizen or resident of the United States,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

• Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity.

Cat. No. 10231X

Form W-9 (Rev. 11-2005)

Account Number   B Q Y   0 0 3 1 3 1

# National Financial Services Alternative Investments Addendum and Custody Agreement

## ① Account Information

Primary Account Holder Name   Nader F. Darehshori

Entity/Business/Trust Name

Social Security Number or Taxpayer ID Number   [redacted] 9 6 0 7

Joint Account Holder/Trustee/Authorized Individual (if any)

## ② Addendum to Agreement

This is an addendum to the Customer Agreement ("Addendum") between you and National Financial Services LLC ("NFS") and, if applicable, Fidelity Management Trust Company (collectively, "Fidelity"), governing the Account referenced above ("Account"). By signing below, you hereby direct Fidelity to custody certain publicly or non-publicly traded alternative investment assets ("Alternative Investments"), which you, or your broker/dealer, may from time to time direct Fidelity to hold, purchase, or redeem, in your Account. If you wish to hold, purchase, or redeem the Alternative Investments in more than one account, you must complete a separate Alternative Investments Addendum and Custody Agreement for each account.

Fidelity agrees to hold Alternative Investments in your Account solely in accordance with the terms and conditions of this Addendum, the Customer Agreement and if applicable, the Premiere Select® IRA Custodial Agreement and Disclosure Statement, Premiere Select SIMPLE IRA Custodial Agreement and Disclosure Statement, and/or Premiere Select Roth IRA Custodial Agreement and Disclosure Statement (hereafter, "Premiere Select IRA Custodial Agreement and Disclosure Statement") governing your Account. Fidelity reserves the right to accept or reject the custody of any Alternative Investment at any time for any reason in its sole discretion, including those Alternative Investments it has previously accepted.

## ③ Scope and Allocation of Responsibilities

### a.   Your Responsibilities

You acknowledge that you and your broker/dealer will have the sole responsibility for the investment, review, and management of the Alternative Investments. You and your broker/dealer take full responsibility for determining the appropriateness and suitability of the Alternative Investments and for reviewing the terms of all offering and disclosure documents and agreements affecting or pertaining to the Alternative Investments, and for monitoring the Alternative Investments for any conversion or exercise options or other corporate actions. You and your broker/dealer are also responsible for monitoring your Account statements to confirm the accuracy of any information relating to the Alternative Investments, and the required payment due to you or from you relating to the Alternative Investments.

If the Account is an IRA, other than a Premiere Select IRA, you and your broker/dealer assume full responsibility for ensuring that all securities and/or property held in such IRA(s) is held in accordance with the terms and conditions of the governing IRA Custodial Agreement.

If the Account is an IRA, you acknowledge that you assume full responsibility for reviewing the terms of the investment to ensure that maintaining the Alternative Investment(s) in an IRA does not and will not constitute a prohibited transaction as defined under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code ("IRC") and related regulations, interpretations and guidance and is otherwise in compliance with all applicable laws, rules and regulations. With respect to your IRA, you represent (and with each instruction to hold or purchase Alternative Investments will be deemed to have repeated such representation) that holding the Alternative Investment(s) in an IRA is in compliance with all applicable laws, rules and regulations, including the IRC and ERISA.

### b.   Fidelity's Responsibilities

You acknowledge that Fidelity shall implement instructions it receives from you and/or your broker/dealer to hold, purchase, or redeem the Alternative Investments. Fidelity is not responsible for determining the appropriateness or suitability of the Alternative Investments or any other investments in your Account. Any documentation regarding the Alternative Investments

required by Fidelity will be used solely for internal/operational purposes. Fidelity shall not undertake to review or assume responsibility for the terms and conditions or contents set forth in such documentation, including, but not limited to, appropriateness or suitability, restrictions of ownership, rights of transfer, financial statements, or the adequacy of disclosure or compliance with applicable laws, rules and regulations.

You acknowledge that Fidelity shall have no responsibilities with respect to the Alternative Investments other than:

(a)   to hold the Alternative Investments in nominee's name or, if applicable, in your name;

(b)   to purchase or redeem the Alternative Investments in accordance with your and/or your broker/dealer's instructions, subject to satisfaction of Fidelity's custody requirements;

(c)   to reflect the Alternative Investments on Account statements in such form as Fidelity may deem appropriate;

(d)   to credit the Account with any earnings or principal payments received with regard to the Alternative Investments;

(e)   when required by law, to forward to you any issuer communications received by Fidelity with respect to the Alternative Investments; and

(f)   to perform the duties of the IRA Custodian in accordance with the terms of the Premiere Select IRA Custodial Agreement and Disclosure Statement governing your Account, as applicable.

You further acknowledge that Fidelity shall have no responsibility for monitoring the Alternative Investments to assure compliance with their respective terms, for taking any actions to collect on any amount owed to you or for otherwise enforcing your rights with respect to the Alternative Investments. If your Account is a Premiere Select IRA and the Alternative Investments generate unrelated business taxable income, you understand and acknowledge that Fidelity is not a fiduciary with respect to the Account and will not prepare any returns or perform any tax reporting required as a result of liability incurred for tax on unrelated business taxable income.



## ④ Valuation and Reporting of Alternative Investments

**a.    General Terms**

You acknowledge and agree (1) that Alternative Investments that are not publicly traded generally lack a liquid market and that the value of such Alternative Investments may be difficult to ascertain; and (2) that any estimated value reflected on your Account statement is for informational purposes only, may not be current, and may be significantly different than the actual market value or the liquidation value of such Alternative Investments. If the Account is a Premiere Select IRA, you further acknowledge and understand that Fidelity, as Custodian of your Premiere Select IRA, is required to provide a report of certain transactions, as well as the fair market value of your Account in accordance with IRS requirements.

**b.    Source of Valuation and Reporting**

Alternative Investments shall be valued and displayed as follows:

- If Alternative Investments are publicly traded, Fidelity will display the market price on your Account statement per its normal practices.

- If a valuation is not readily ascertainable through its normal pricing practices, Fidelity will request valuation from a third-party pricing vendor that Fidelity deems appropriate in its sole discretion.

- If a valuation is not ascertainable through a third party pricing vendor, Fidelity will, either directly, or through your broker/dealer, request a valuation from the general partner, manager or issuer in a form and manner acceptable to Fidelity.

Fidelity shall have no responsibility for, nor does Fidelity review or guarantee the accuracy of, any valuation, even if the valuation was obtained from a third-party pricing vendor selected by Fidelity. Fidelity will not confirm, review or otherwise evaluate any Alternative Investments valuation. You further understand if your Account is a Premiere Select IRA that Fidelity may be required to value the Alternative Investments prior to a distribution from such Account and that such valuation may delay any requested distributions from your Account.

## ⑤ Fees

You acknowledge that Fidelity is accepting custody of the Alternative Investments as an accommodation to your express instructions to hold the Alternative Investments in your Account as indicated above. To compensate Fidelity for processing and other costs associated with Alternative Investments, you agree to pay Fidelity certain fees as set forth below. These fees are in addition to the standard commissions and account fees applicable to your Account as described in the Account Application, Account Agreement or related documentation.

All Customer Fees associated with the Alternative Investments, as defined below, will be debited from your Account. If you wish to have the Customer Fees debited from a secondary non-retirement Brokerage Account, please provide the Account number here:

Account Number _____

**a.    Customer Fees Applicable to Alternative Investments**

| | |
|---|---|
| Transfers /Re-registrations | $50.00 per transaction |
| Annual Alternative Investment Custody and Valuation Fee | $35.00 per position (Maximum charge of $105.00 per account / 3 positions) |

Please note: Customer Fees outlined above will not apply to products that contract to pay an ongoing fee to Fidelity for shareholder services it provides on behalf of the product. Fidelity reserves the right to modify the list of products it makes available without such Customer Fees.

If a secondary non-retirement Brokerage Account is not provided, such fees will be debited from your Account. By signing this form, you hereby instruct NFS (and in the case of an Account that is a Premiere Select IRA—NFS as agent for Fidelity Management Trust Company) to deduct the above referenced Customer Fees from your Account. You may terminate this fee deduction authorization any time upon written notice to Fidelity. Such termination shall not affect any obligation or liability arising prior to termination. Upon termination of the fee deduction authorization, any applicable fees will be deducted from the account(s) holding the position(s).

## ⑥ Acknowledgement of Risk

To induce Fidelity to custody the Alternative Investments, you hereby acknowledge and agree that Fidelity will use its best efforts in connection with performing the functions requested herein and that Fidelity assumes no responsibility whatsoever for validity, accuracy, or enforceability of the documents evidencing ownership of the Alternative Investments. You acknowledge that investing in publicly or non-publicly traded securities, including the Alternative Investments in your Account, can be very risky. You

acknowledge that you and your broker/dealer are responsible for determining the nature, potential value, and suitability of the Alternative Investments. Fidelity has not provided any advice or guidance on the suitability of the Alternative Investments for you, your Account, or value of the Alternative Investments. You acknowledge that certain Alternative Investments may not be covered by SIPC or by any additional insurance coverage in excess of SIPC otherwise made available by NFS.

## ⑦ Indemnification and Hold Harmless

By signing below, you hereby agree to indemnify and hold Fidelity, its affiliates, and their respective officers, directors, employees and agents, and their respective successors and assigns, harmless from and against any and all losses, liabilities, demands, claims and expenses, attorneys' fees, and taxes arising out of any actions by Fidelity, you, or your agents in connection herewith, which are not caused by Fidelity's gross negligence or willful misconduct. You further agree to indemnify and hold Fidelity harmless from any consequences of your investment in the Alternative Investments, including, but not limited to, financial failure of any kind, information errors provided to Fidelity by the issuer, its officers or employees, or any valuation

services, or any misfeasance, fraud or misappropriation of funds by the publicly or non-publicly traded entity, its officers, employees or agents. You also agree to indemnify and hold Fidelity harmless from any and all consequences relating to the valuation of the Alternative Investments, including, but not limited to, claims arising out of valuations provided to Fidelity by a third-party pricing vendor, general partner, manager, issuer or any other pricing entity. This provision shall survive the termination of this Addendum and shall be binding upon, and inure to the benefit of, each party's respective successors, assigns, heirs, and personal representatives.

## ⑧ Termination

You acknowledge that this Addendum and Custody Agreement may be terminated by either party at any time upon written notice to the other parties on the Addendum. In the event of termination, all parties will cooperate in the prompt transition of such Alternative Investments to another custodian of your choice and the terms of Section 5 (Fees), Section

6 (Acknowledgement of Risk) and Section 7 (Indemnification and Hold Harmless) shall survive with respect to any Alternative Investments held by Fidelity at the time of termination.

## Acknowledgement and Signature

By signing below, you hereby acknowledge that you have read, understood, and agree to be bound by the terms and conditions in this Addendum. You acknowledge that you have been advised by Fidelity to consult a tax advisor before completing any transaction involving the Alternative Investments. You have not received any tax advice from Fidelity and understand that the transaction is neither allowed nor disallowed by the IRC. By signing below, you hereby instruct Fidelity to debit the applicable fees from your Account. You may terminate the fee deduction authorization at any time upon written notice to Fidelity. Such termination shall not affect any obligation of liability arising prior to termination. You also agree to pay all fees as described in Section 5.

Should any adverse consequences result from any transaction involving the Alternative Investments, you will not hold Fidelity responsible in any way. This agreement is binding on successors and assigns.

Primary Account Holder Signature                                    Date  08 28 2008

Joint Account Holder Signature                                      Date

Joint Account Holder Signature                                      Date

National Financial Services LLC, Member NYSE, SIPC                    1.811898.101 – 406114 (06/05)

INVESTMENT PLACEMENT & MONITORING AGREEMENT

This *Investment Placement & Monitoring Agreement* between Rye Select Broad Market Prime Fund, LP (RSBMPFLP) and Nader F. Darehshori (the "client") is for the purpose of providing investment supervisory and investment monitoring services.

For a fee of 1.00 percent (%) of the client's assets to be invested in "RSBMPFLP", Jefferies & Company, Inc. ("Distributor") agrees to originate the investment.

For an annual fee of 1.00 percent (%) of clients' portfolio (calculated and payable quarterly) invested in "RSBMPFLP", Jefferies & Company, Inc. ("Distributor") will monitor, maintain and service the client's assets invested in "RSBMPFLP".

Any additional amounts that are contributed to this account after the initial deposit will be subject to the same fee, and payable quarterly as outlined above.

All fees will be paid by "RSBMPFLP" to Jefferies & Company, Inc. ("Distributor") by means of a liquidation of assets in the client's account to cover the dollar amount of the fee.

This agreement may not be assigned without the consent of both parties.


Nader F. Darehshori
CLIENT NAME


_____
CLIENT NAME (IF JOINT ACCOUNT)


_____
CLIENT SIGNATURE                         ACCEPTED BY:


_____          Jefferies & Company, Inc.
CLIENT SIGNATURE (IF JOINT ACCOUNT)      (DISTRIBUTOR)


_____          ___8/28/08_____
AUTHORIZED SIGNER                        DATE