# UNITED STATES BANKRUPCTY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | SIPA LIQUIDATION<br><br>Adv. Pro. No. 08-01789 (BRL)<br><br>JAN – 7 2010 |

## KAREN AND RICHARD PESHKIN'S OPPOSITION TO TRUSTEE'S DETERMINATION OF CLAIM FOR CLAIM NO. 000673

Claimants, Karen and Richard Peshkin, by and through their undersigned counsel, hereby submit this opposition to the Trustee's Determination of Claim to the extent that it denies recovery for their losses in connection with the above referenced SIPA liquidation proceeding for Claim No. 000673, purportedly because they failed to satisfy the definition of "customer" as defined by 15 U.S.C. § 78lll(2). Although there is no apparent dispute that Claimants deposited funds with Bernard L. Madoff Investment Securities LLC ("BLMIS") through another firm, the Trustee has denied recovery to Claimants because they "did not have an account with BLMIS." Under the plain language of the SIPA and the manner in which that statute has been applied by the courts, Claimants are entitled to relief. The Trustee has substantially departed from the governing interpretations of the statute (displacing the plain language of the statute with a wholly unsupported "account" theory), and incorrectly denied their claims under the law. Accordingly, his determinations should be reversed.

## BACKGROUND

Claimants Karen and Richard Peshkin (the "Peshkins" or "Claimants") invested $450,000 through Spectrum Select L.P. ("Spectrum") with Bernard L. Madoff ("Madoff") and his investment firm, Bernard L. Madoff Investment Securities LLC ("BLMIS"). (Ex. 3, at ¶ 3 (Peshkin Affidavit).) The Peshkins specifically selected Spectrum because they wanted their funds invested with BLMIS for the purpose of purchasing securities. (*Id.* at ¶ 2.) Based on the investments they were promised in certain securities, as reflected in their October 31, 2008 account statements, the Peshkins are still owed $473,742.74. (Ex. 2 (October 31, 2008 account statement); Ex. 3, at ¶ 3.) In accordance with the procedures established by the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), they properly filed a claim for a credit balance for this amount. The Peshkins were unsuspecting victims of what has been publicly disclosed as a massive fraudulent Ponzi scheme conducted by Madoff and BLMIS. They had no knowledge of or any part in the scheme. Rather, they were innocent investors who placed trust in their designated broker-dealer (in this case, clearly BLMIS). As innocent investors, the Peshkins are entitled to recovery of part of their remaining net equity under the SIPA.

On December 8, 2009, however, Irving H. Picard, Trustee for the Liquidation of the Business of Bernard L. Madoff Investment Securities LLC ("Trustee"), issued a Notice of Trustee's Determination of Claim to the Peshkins. (Ex. 1, at 1.) In this notice, the Trustee denied the Peshkins' claim for any recovery in its entirety. As the basis for his denial, the Trustee stated that "you did not have an account with BLMIS" and as a consequence, "you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll(2)." (*Id.*) The

Trustee did not cite the definition of "customer" within the statute, any case that had applied the statute in the manner he determined, or any other basis for his novel "account" theory.

More important, the Trustee disregarded the facts, as stated in their claim, that the Peshkins' had deposited cash with BLMIS through another firm. (Ex. 3, at ¶ 2.) While they did not have an "account" with BLMIS, they clearly had cash deposited with BLMIS for the purpose of purchasing securities, the very definition of "customer" under the SIPA, which the Trustee failed to follow.

## ARGUMENT

The Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), is remedial legislation and thus "should be construed liberally to effect its purpose." *See In re First State Secs. Corp.*, 34 Bankr. 492, 496 (Bankr. S.D. Fla. 1983). Congress' primary purpose in enacting the SIPA was "to protect investors against financial losses arising from the insolvency of their brokers." *SEC v. S. J. Salmon & Co., Inc.*, 375 F. Supp. 867, 871 (S.D.N.Y. 1974).

Under 15 U.S.C. § 78lll(2), a "customer" is defined, *inter alia*, as "any person who has deposited cash with the debtor for the purpose of purchasing securities." *See generally Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) (stating that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities"). In *In re Primeline Secs. Corp.*, 295 F.3d 1100 (10th Cir. 2002), the court made clear that "[w]hether a claimant deposited funds 'with the debtor' does not depend simply on to whom claimants made their checks payable." *Id.* at 1107. Instead, the court held, "[t]he relevant inquiry is whether the brokerage firm actually received, acquired or possessed Claimants' property." *Id.* Likewise, in *In re Old Naples Secs., Inc.*, 223 F.3d 1296 (11th Cir. 2000), the court concluded that:

3

>Whether a claimant "deposited cash with the debtor," however, does not (as Focht and the SIPC suggest) depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead, the question is whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *In re Stalvey*, 750 F.2d at 469 (quoting *SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697, 700 (S.D.N.Y.1974)). Thus, courts have held … that the statute covered claimants when one brokerage (which later became insolvent) misused their funds held in accounts with another firm, *see In re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D. Fla. 1983).

*Id.* at 1302-03.

No court has adopted the Trustee's position that a "customer" must "have an account with [the debtor]." To the contrary, in *In re First State Secs. Corp.*, 34 Bankr. 492 (Bankr. S.D. Fla. 1983), the court held exactly the opposite, that for purposes of the scope of SIPA protection, the term "customer," as enacted by Congress, reached not merely the recorded "accounts" of the debtor, as the Trustee suggests, but also to individuals whose funds were placed with the debtor for the purpose of purchasing securities, even though the accounts were held by another firm. *Id.* at 496 ("There is nothing in SIPA which suggests that coverage should be denied merely because the debtor used the facilities of another innocent broker in converting its customer's property."); *see also In re Old Naples Secs., Inc.*, 223 F.3d at 1303 (same).

That principle equally applies in this case. There is little dispute that Claimants' funds were "deposited" with debtor BLMIS for the purpose of purchasing securities, through another firm (Ex. 3, at ¶ 3), and therefore, necessarily there can be little dispute that the Trustee's determination is incorrect. As a consequence, Claimants easily fit with the definition of "customer" as that term is defined under 15 U.S.C. § 78lll(2), and that the Trustee's determination must be reversed.

A substantial purpose behind the SIPA is to protect the legitimate expectations of investors, undisturbed by the insolvency of their broker-dealer. *See, e.g., In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 87 (2d Cir. 2004) (stating that a "customer's 'legitimate expectations,' based on written confirmations of transactions, ought to be protected" and should inform interpretation of SIPA); *see also* S. Rep. No. 95-763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765 ("By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the [1978] Amendments not only would satisfy the customers' legitimate expectations, but also would restore the customer to his position prior to the broker-dealer's financial difficulties."). There is no question that BLMIS was Claimants' specifically designated broker-dealer, and therefore that they are precisely the individuals the SIPA was designed to protect.

## CONCLUSION

For all of the foregoing reasons, Claimants respectfully request that the Court reverse the determination of the Trustee, allowing their claim as a "customer" of BLMIS as that term is defined by 15 U.S.C. § 78lll(2), and grant such other relief as the Court deems just and appropriate under the circumstances.

                                      Respectfully submitted,

                                      KACHROO LEGAL SERVICES, P.C.

                                      By: /s/ Gaytri Kachroo
                                      Dr. Gaytri D. Kachroo (admitted *pro hac vice*)
                                      Kachroo Legal Services, P.C.
                                      Kendall Square Center
                                      245 First Street, Suite 1800
                                      Cambridge, MA 02142
                                      Tel: (617) 864-0775
                                      Fax: (617) 864-1125

                                      *Counsel for Claimants Karen and Richard Peshkin*

Dated: January 6, 2010