UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

JAN - 6 2010

SECURITIES INVESTOR PROTECTION
CORPORATION,

Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES, LLC,

Defendant.

Adv. Pro. No.: 08-01789 (BRL)

SIPA Liquidation

OBJECTION TO TRUSTEE'S
DETERMINATION OF CLAIM

Plumbers & Steamfitters Local 267 Pension Fund ("Claimants"), by their attorneys, Chamberlain D'Amanda, Oppenheimer & Greenfield, LLP, hereby objects to the denial of Claim No. 003106 by Notice of Trustee's Determination of Claim dated December 8, 2009, and states as follows:

Background Facts:

1.    Prior to December 11, 2008, Claimants invested in Bernard L. Madoff Investment Securities, LLC ("BLMIS") through Beacon Associates. (See Exhibit A)

2.    On or about December 11, 2008, BLMIS was named as defendant in the above captioned liquidation proceeding pursuant to the Securities Investor Protection Act ("SIPA").

3.    On or about December 15, 2008, the above captioned matter was transferred to the United States Bankruptcy Court for the Southern District of New York. Irving Picard was duly appointed as Trustee to oversee liquidation of BLMIS assets and to process claims against BLMIS pursuant to SIPA.

4.    Pursuant to prior order of this Court, the trustee disseminated notice and claim forms to all potential former BLMIS customers setting forth deadlines to file claims and notification by Trustee of the determination of each claim.

5.    Claimants duly filed a claim with the trustee prior to the deadline to file a claim in this case. Said claim was designated as Claim No. 003106. The Trustee denied Claimants' claim No. 003106 by Notice of Trustee's Determination of Claim dated 12/8/09 (See Exhibit B) based on the following:

Based on a review of the available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer under BLMIS under SIPA as that term is defined at 15 USC §78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

7.    Claimants object to this determination for the reasons set forth herein, for any other reasons as may be set forth by other objecting claimants, and for the preservation of any rights which may be recognized for persons who made indirect investments with BLMIS through "feeder funds".

Objection Grounds:

8.    The Claimants herein are "customers" of BLMIS as provided under SIPA, notwithstanding the Trustee's determination otherwise. SIPA §78*lll* (2) defines a customer as "any person who has deposited cash with the debtor for the purpose of purchasing securities." This Court has previously held that "the mere act of entrusting . . . cash to the debtor for the purpose of effecting securities transactions . . . triggers customer status . . . ." *SIPC v. Bernard L. Madoff Investment Securities, LLC,* 401 BR 629, 635 (Bankr. SDNY 2009)

9.    The trustee has improperly taken the position that one must have *directly* deposited the funds with BLMIS in order to qualify as a customer. Claimants who have *indirectly* deposited funds with BLMIS should be categorized as customers as well as those who invested directly. The trustee's imposition of a 'direct vs. indirect' standard is not based on law or fact and should be disallowed.

10.    BLMIS was the "broker/dealer" subject to SIPA for purposes of the funds invested by the Claimants through Income Plus and Beacon Associates. (See Exhibit A)

11.    SIPA is remedial in nature and should be construed liberally to effect its purposes. SIPA was designed to protect those who invested in securities through broker/dealers to be protected if the broker/dealer became insolvent or bankrupt. *SEC v. S.J. Salmon & Co., Inc.,* 375 F. Supp 867, 871 (SDNY 1974).

12.     The Court and the Trustee should take judicial notice of the attached

Complaint from the pending *Beacon Associates Management Corp. v. Beacon Associates*

*LLC I.*, 09 CIV 6910 (U.S.D.C. SDNY 2009) which relates to the issue of feeder funds

invested in BLMIS. (See Exhibit C)

12.     Claimants reserve the right to amend, alter, revise or supplement this

Objection; any failure to object on a particular procedural or substantive ground shall not

be deemed a waiver of any such rights, all of which are expressly reserved. Claimants

also reserve all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure.


**WHEREFORE**, Claimants respectfully request an Order overruling the Trustee's

Determination of claim, allowing in full the Claimant's Claim No. 003106, and directing

SIPC to immediately satisfy Claimant's Claim No. 003106, along with such other,

further, and different relief as to this Court may seem just and proper.


DATED:     1/5/10
           Rochester, New York

Respectfully submitted,
**CHAMBERLAIN D'AMANDA
OPPENHEIMER & GREENFIELD**

By: _____
Mikal Krueger, Esq., Of Counsel
Attorneys for BAC Local 3 NY Union
2 State Street
Suite 1600
Rochester, New York 14614
(585) 232-3730



# BEACON ASSOCIATES LLC I
## STATEMENT OF CAPITAL ACCOUNT
## (UNAUDITED)

10/21/2008

**TO: Plumbers and Steamfitters Local 267 Pension**

The following is a summary of your capital account
in Beacon Associates for the period ended
October 1, 2008

| | |
|---|---:|
| Value of Your Capital Account on July 1, 2008 | **$6,777,147.92** |
| Capital Contributions (Withdrawals) During the three month period ended September 30, 2008 | $0.00 |
| Net Income (loss) for the three month period ended September 30, 2008 | $41,630.55 |
| Value of your Capital Account as of September 30, 2008 | $6,818,778.47 |
| Capital Contributions (Withdrawals) as of October 1, 2008 | $0.00 |
| Value of your Capital Account as of October 1, 2008 | $6,818,778.47 |

Note: The above figures are net of management fees to date

BEACON ASSOCIATES LLC I

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation
## DECEMBER 11, 2008[1]


## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

PLUMBERS & STEAMFITTERS LOCAL 267 PENSION FUND
150 MIDLER PARK DRIVE
SYRACUSE, NY 13206


Dear PLUMBERS & STEAMFITTERS LOCAL 267 PENSION FUND:

## PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 003106:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

08-01789-cgm    Doc 1506    Filed 01/06/10    Entered 01/07/10 16:35:56    Main Document
Pg 9 of 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

BEACON ASSOCIATES MANAGEMENT CORP.,

           Plaintiff,

      - v-

BEACON ASSOCIATES LLC I,

           Defendant.

-------------------------------------------------------------------x

'09 N~CIV~ 6910

COMPLAINT

**COMPLAINT FOR DECLARATORY JUDGMENT**

       Plaintiff Beacon Associates Management Corp. ("Management"), by its attorneys,

Rosenfeld & Kaplan, LLP, for its Complaint alleges as follows:

       1.     This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

Plaintiff is the managing member of the defendant Beacon Associates LLC I ("Beacon" or the

"Fund"), an investment fund victimized and defrauded by the Ponzi scheme of Bernard L.

Madoff ("Madoff"). Beacon is subject to the ERISA Plan Asset Rule, 29 U.S.C. § 1002(42), as

more than 25 percent of its membership interests are held by benefit plan investors (including

ERISA Plans, Individual Retirement Accounts and non-ERISA Plans).

       2.     Following disclosure of the Madoff fraud, Management determined that Beacon

should be liquidated and a substantial majority of the remaining assets distributed to the Fund's

investors. However, in its effort to effectuate that plan, Management was confronted with

material issues as to the proper methodology to follow in valuing the capital balances

attributable to Beacon investors and with objections as to what it believes to be the proper

procedure for distribution. As explained below, while Management has concluded, with the

support of independent experts, that a certain valuation methodology consistent with generally accepted accounting principles ("GAAP") is the preferred and, indeed, applicable methodology, Management has been advised by the same experts that several different but viable methodologies exist. Management has been further advised that application of these different methodologies results in material and, in some instances, dramatic differences in the valuations of members' capital accounts. In light of the differing methodologies, counsel for Beacon ("Fund Counsel") has put Management on notice that it questions Management's ability to make distributions which would result in preferential treatment of one class of investors versus another, and that, in the absence of a full consensus of Beacon investors (which Fund Counsel acknowledges is not feasible) or a Court Order, Management will be held accountable for any injury suffered by investors as a result of any improper distribution.

3.      Accordingly, in light of the dispute over the proper valuation methodology, Management is constrained from making any asset distribution to investors who have been decimated by the Madoff fraud, despite its desire to make a substantial distribution as expeditiously as possible.

4.      Declaratory relief is thus required in order to resolve the justiciable controversy that exists as to the proper valuation methodology, and to insure that each of Beacon's members receives a fair and allocable distribution.

## PARTIES

5.      Plaintiff Management is a New York corporation with offices at 123 Main Street, Suite 900, White Plains, New York 10601. Management is the managing member of Beacon, and is wholly owned by Joel Danziger, Esq., Harris Markhoff, Esq. and their immediate families.

6.      Defendant Beacon is a New York limited liability company with offices at 123

2

Main Street, Suite 900, White Plains, New York 10601. Beacon is made up of numerous entities

and individuals who hold membership interests in it. Beacon has been named as a defendant

because the determination sought by this action will impact the rights of its members. Beacon is

in a position to notify each of its members of the pendency of this action and to solicit the

participation of its members so that all of the competing interests described below can be fully

and fairly presented.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §

1132(e)(1), insofar as this action arises under the Employee Retirement Income Security Act of

1974, as amended ("ERISA"), 29 U.S.C. §§ 1101, *et seq.* The relief sought in this action will

materially impact the value of the assets of multiple plans subject to ERISA, and will impact the

rights of those ERISA plans.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because both

plaintiff and defendant maintain their offices for the conduct of business within the Southern

District of New York, and a substantial number of the events giving rise to the issue before this

Court occurred in this District.

## FACTS

9.    The affairs of Beacon, including management thereof, are governed by the terms

of an Amended and Restated Operating Agreement dated as of April 1, 2004 (the "Agreement"),

as amended as of November 28, 2005. (Copies of the Agreement and amendment are annexed

hereto as Exhibit A.)

10.    The management of Beacon was entrusted under the Agreement to Management,

as managing member. Article VII, paragraph 3 affords Management with the "power, on behalf

of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company."

11.    Since its inception, Beacon has received investments from employee benefit plans which are subject to Title I of ERISA (the "ERISA Plans"). These ERISA Plans, along with other individuals, non-ERISA retirement funds and others, thereafter became members of Beacon.

12.    Pursuant to Article VIII, paragraph 2 of the Agreement, Beacon has at all times maintained a capital account for each of its members.

13.    Article VIII, paragraph 2 further provides that:

> Each Member's Capital Account shall be increased by (1) the amount of any Money and the fair market value (as determined by the Managing Member at the time of contribution, net of any liabilities assumed or taken subject to by the Company) of any non-cash Property actually contributed by the Member to the capital of the Company, and (2) the Member's share of Net Profits and of any separately allocated items of income or gain (except any gain and income and any loss and deduction allocated to the Member for federal income tax purposes on account of amounts credited to or debited from the Member's Capital Account). Each Member's Capital Account shall be decreased by (1) the amount of any Money actually distributed by the Company to the Member, (2) the fair market value of any non-cash Property distributed to the Member, as determined by the Managing Member at the time of distribution (net of liabilities of the Company assumed by the Member or subject to which the Member takes such Property within the meaning of Section 752 of the Code), and (3) the Member's share of Net Losses and of any separately allocated items of deduction or loss (excluding any loss or deduction allocated to the Member for federal income tax purposes on account of amounts debited from the Member's Capital Account).

14.    Since the inception of the Fund, Management has prepared and delivered financial statements to Beacon's members on a regular basis which included calculations of the members' capital accounts.

4

15.    From its inception, a minimum of approximately 70% of Beacon's assets were invested with Bernard L. Madoff Investment Securities LLC ("BMIS"). During this period of investment, both deposits and withdrawals of capital were made by Beacon into and out of its BMIS account.

16.    Beacon received regular monthly statements from BMIS. Management utilized these statements, and the amounts reflected thereon, in calculating the investment values and capital accounts of each of Beacon's members.

17.    At all times since the inception of the Fund, Management instructed and/or expected Beacon's auditors to follow GAAP in calculating each member's capital account balance. Management believes that such instructions and expectations were met.

18.    As of December 11, 2008, the books and records of Beacon reflected that all of its current members had positive balances in their capital accounts.

19.    On December 11, 2008, it was learned that Madoff and BMIS had been operating a massive "Ponzi" scheme and that most, if not all, of the funds invested with BMIS, including those invested by Beacon, were lost. As of December 11, 2008, approximately 70% of Beacon's assets were invested with BMIS.

20.    Following the discovery of Madoff's fraud, BMIS became the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York, Adv. Pro. No. 08-01789 (BRL). In the course of that proceeding, following an investigation, the court-appointed Trustee announced that he believes that BMIS did not purchase or sell any securities at any time after 1996, and that all of the funds invested with BMIS were used in furtherance of Madoff's and BMIS's fraudulent scheme.

21.    On or about December 18, 2008, as a result of the losses suffered from Madoff's

5

activities, Management wrote to Beacon's members, including the ERISA Plans, and advised them that Beacon was commencing with the process of liquidation.

22.     Management thereafter began a process of determining how the liquidation of Beacon should take place, and, in particular, how each member's capital account should be valued so that each member could receive his or her allocable share of Beacon's remaining assets.

23.     In its examination of how the distribution of the remaining assets should be conducted, Management, after consultation with Beacon's accountants, came to the conclusion that the method most consistent with Beacon's past practices and the terms of the Agreement would employ the positive balances in the members' respective Capital Accounts as actually reflected on the books of Beacon as of December 11, 2008, and would adjust these balances based on an allocation to each member of their respective distributive share of Beacon's theft loss (the "GAAP Methodology"). Management concluded that applying the GAAP Methodology would allow for a distribution to each member of their proportionate share of the remaining assets of Beacon based on the member's proportionate interest as of December 11, 2008.

24.     Management has been advised, however, that alternative valuation methodologies may be applicable due to the unprecedented nature and manner of the Madoff fraud.

25.     In furtherance of its fiduciary duties, Management retained the firm of Roberts & Holland to review the methodologies for capital account valuations. Following a review of the relevant documents, including the Agreement, and a thorough examination of all applicable accounting and taxation rules and regulations, Roberts & Holland issued a written opinion (the "Opinion Letter") dated May 27, 2009. (A copy of the Opinion Letter is annexed hereto as

6

Exhibit B). In the Opinion Letter, Roberts & Holland agreed with Management and concluded

that "we believe that the most reasonable reading of the Agreement is that distributions in

liquidation of Beacon" should be made in conformity with the GAAP Methodology.

26.    Roberts & Holland, further concluded, however, that the proper valuation

methodology was far from certain. The Opinion Letter stated:

> Notwithstanding our conclusion, however, we believe, based on
> our understanding of the advice of your accountants, our reading
> of the Agreement, and our understanding of New York law, that
> there is a risk that a court might conclude that distributions made
> in the manner set forth above did not comport with the members'
> respective rights. For example, it might be contended that your
> accountants were incorrect in certain of their conclusions, that
> GAAP does, in fact, require the restatement of capital accounts for
> prior periods to eliminate income reported from BMIS or to make
> other adjustments relating to Beacon's loss in the Ponzi scheme,
> and that the members' Capital Accounts, as *properly* maintained in
> accordance with GAAP are, as a result, substantially
> disproportionate to the amounts reflected on Beacon's books.
> Similarly, it might be contended that amounts previously
> distributed to a member, at a time that Beacon had in fact incurred,
> but was not aware of, all or a portion of its loss on the Ponzi
> scheme constituted some form of "unjust enrichment," "wrongful
> distribution," "fraudulent conveyance," or similar concept that
> should be offset against distributions to that member, thereby
> increasing amounts distributable to other members.

27.    For example, an alternative valuation methodology which involves the

restatement of each member's capital account through prior periods (the "Restatement

Methodology"), results in far different capital account valuations for each of Beacon's members.

28.    As a result of the Opinion Letter, Management directed Beacon's accountants to

calculate each member's capital account utilizing the Restatement Methodology. The result of

these calculations provided dramatically different results.

7

29.    While the capital account of one Beacon member was calculated at $4,750,886

utilizing the GAAP methodology, the same account was calculated using the Restatement

Methodology at $2,735,636, a difference of over $2 million. Another member's capital account

was calculated at $1,928,214 using the GAAP Methodology, yet it had a zero balance when the

Recalculation Methodology was applied. Similarly, the capital account of a third member was

calculated at $1,815,576 utilizing the GAAP Methodology, but was calculated as having a

capital account balance in excess of $3 million when the Recalculation Methodology was

applied. Every member's capital account was affected by the choice of valuation methodology,

and most members' capital account values were materially affected. As with all other members,

the valuations of the capital accounts of the ERISA Plans also reflected these material

differences.

30.    Since December 11, 2008, Management has received numerous requests from

Beacon members, including from the ERISA Plans, for distributions of their capital account

balances.

31.    Since December 11, 2008, various Beacon members have expressed their belief

that distribution of the balance of their capital accounts should be based on the most favorable

methodology for them.

32.    On information and belief, other funds similarly situated to Beacon have been

unable to make distributions of capital account balances due to uncertainty as to the valuation of

those capital accounts.

33.    In light of the dramatically different capital account balances depending on the

valuation methodology employed, and in light of the unprecedented nature of the Madoff fraud

and the mass of litigation and regulatory reviews that have been generated as a result of

8

Madoff's activities, Management has determined that judicial intervention is required in order to

establish the proper valuation methodology and manner of distribution to Beacon's members.

34.    By letter dated June 2, 2009 (a copy of which is annexed hereto as Exhibit C),

Management wrote to each of Beacon's members and advised them of the following:

> We have retained independent counsel to advise us as to the
> possible methods of valuing members' capital accounts in light of
> the Madoff losses. Counsel has concluded that there are several
> ways to calculate the effect of the Madoff loss, but that the method
> which we have been using (as reflected in the opening balance on
> the capital account statement that you have recently received) is
> the most reasonable. Given the possible application of different
> methodologies, we asked the Funds' auditors to calculate the value
> of your capital accounts using both the method we have been using
> as well as the principal alternative method.
>
> The Funds' auditors have advised us that the principal alternative
> method produces materially different results for most members
> and in many cases we are advised that the results when fully
> calculated will be dramatic.

35.    Management advised Beacon's members in the June 2, 2009 letter that, as a result

of the dramatically different results produced by the alternative methodologies, an "independent

determination as to the appropriate method of distribution" may be required.

36.    The results of the accountants' calculations of each members' capital account and

the opinion letter were provided to Fund Counsel. In light of the differing methodologies and

the dramatic differences in the resulting valuations, Fund Counsel has placed Management on

notice that it questions Management's ability to make distributions which would result in

preferential treatment of one class of investors versus another, and that, in the absence of a full

consensus of Beacon investors (which Fund Counsel acknowledges is not feasible) or a Court

Order, Management will be held accountable for any injury suffered by investors as a result of

any improper distribution.

9

## FIRST COUNT

37.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38.     Management is seeking to make an immediate distribution of a significant portion of the remaining assets of Beacon.

39.     Management is unable to make a distribution because of the uncertainty as to the proper valuation methodology and the dramatically different interests of the members of Beacon with respect to the methodologies.

40.     If Management were to select one valuation methodology over another without judicial review, extensive, resource-depleting and time-consuming litigation would ensue.

41.     Were it ultimately determined that Management had followed an incorrect valuation methodology, Fund members who received a distribution in excess of their allocable share would be required to return funds distributed to them. This would result in additional, protracted litigation in order to seek such recoveries, and it is likely that a significant portion of any overpayments would not be recoverable.

42.     There exists an actual and justiciable controversy among the parties pertaining to their respective rights and legal relations with respect to the valuation methodology to be followed.

43.     As a result of the above, the Court should, after a full and fair review of the facts and the competing interests of Beacon's members, render a declaration that Management may proceed with a distribution of Beacon's remaining assets based on the GAAP Methodology.

10

**WHEREFORE,** plaintiff Beacon Associates Management Corp. demands that

judgment be entered: 1) declaring that it may make a distribution of a significant portion of

Beacon's remaining assets; 2) declaring that, in making such distribution, the current value of

the capital accounts of each of Beacon's members should be calculated based on the positive

balances reflected on Beacon's books as of December 11, 2008, as adjusted by the allocation to

each member of their respective distributive share of Beacon's theft loss; and 3) awarding such

other and further relief as this Court deems just and proper.


Dated:   New York, New York
         August 5, 2009


                                              **ROSENFELD & KAPLAN LLP**


                                  By:         _____
                                              Tab K. Rosenfeld (TR-9212)
                                              Steven M. Kaplan (SK-4228)
                                              535 Fifth Avenue, Suite 1006
                                              New York, New York 10017
                                              Telephone: (212) 682-1400
                                              Facsimile:  (212) 682-1100
                                              Attorneys for Plaintiff Beacon
                                              Associates Management Corp.