IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

    Plaintiff-Applicant,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

    Defendant.

In re:

BERNARD L. MADOFF,

    Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

---

## NOTICE OF OBJECTION TO TRUSTEE'S DENIAL OF CLAIM NO. 004523.

Colson H. Hillier Jr. IRA, ("Investor" or "The Hilliers"), by and through the undersigned counsel hereby objects to Trustee's denial of Claim No. 004523 as set forth in Notice of Trustee's Determination of Claim dated December 8, 2009 and respectfully represents as follows:

### Background

1.     This Claim arises out of the $65 billion Ponzi scheme orchestrated by convicted swindler Bernard L. Madoff. Thousands of investors from throughout the world

fell victim to Madoff's scam that, according to federal authorities, was unprecedented in the size and scope until it imploded in December, 2008.

2. Each of these investors was ensnared in Madoff's scheme in one of two ways. Some victims invested directly with Madoff via Bernard L. Madoff Investment Securities LLC ("BLMIS"). The majority of victims, however, were bilked by investing indirectly with Madoff through an extensive network of "feeder funds", acting as exclusive agents of BLMIS, that provided Madoff with the massive and continuous infusions of assets necessary to sustain his scheme for years. The managers of those feeder funds, which acted as an alter ego to BLMIS, pocketed staggering fees from clients who relied on the managers' integrity and purported investing acumen, only to learn that those fiduciaries and purported experts were a mere instrumentality to blindly channel their assets into the hands of one of history's most reviled confidence men.

3. Colson H. Hillier Jr. IRA, is owned by Colson H. Hillier, age 74, retired, a resident of the State of Florida. Patricia M. Hillier, age 68, retired, a resident of the State of Florida, is the beneficiary of the Colson H. Hillier Jr. Rollover IRA. The IRA account is held by National Financial Services, LLC, a Fidelity Brokerage Services, LLC company. The Fidelity Investments Premiere Select IRA Application representing Fidelity Brokerage Services LLC as a Member NYSE, SIPC is attached as **Exhibit "A"**. Siller & Cohen, The Hilliers' estate and investment advisors represent themselves as member NASD and SIPC. The caption on Siller & Cohen letterhead states in part: "Associates of Siller & Cohen

are registered representatives offering securities through Lincoln Financial Advisors Corporation (member NASD, SIPC), a broker/dealer and registered investment advisor. Advisory services offered through Sagemark Consulting." The Hilliers, whose primary investment purpose was capital preservation with moderate risk, rely on the funds from their hard earned IRA account to provide for their health and welfare during their retirement years. The Hilliers reasonably relied on the expectation that all investments in The Colson H. Hillier Jr. IRA were protected by SIPC.

4. On May 1, 2007, Claimant made an initial investment of $564,000 into Rye Select Broad Market Fund, L.P. (The "Rye Fund") attached as **Exhibit "B"**. As of October 31, 2008, the statement from Rye Fund valued the investment at $643,568.89 attached as **Exhibit "C"**.

5. All of the funds which Claimant invested in the Rye Fund were invested in Bernard L. Madoff Investment Securities, LLC ("BLMIS").

6. The Colson H. Hillier Jr. IRA invested in the Rye Select Broad Market Prime Fund, LP ("Rye Fund"), a feeder fund to BLMIS, based upon representations that the Rye Fund allocates the funds investment portfolio to advisors with conservative investment styles, demonstrated over a prolonged period of time and under all economic and market conditions, who have the ability to achieve consistent returns, and who invest in a portfolio that generally consists of approximately 50 large-cap stocks that are hedged with equity index options. The Hilliers, relied on the fiduciary relationship with their financial investment team to

ensure the money that was entrusted to Fidelity, Siller & Cohen, the Rye Fund, and subsequently BLMIS would be utilized for the purpose of purchasing securities.

7. On or about December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*

8. On or about December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee.

9. Pursuant to the SIPA, Trustee Picard was directed to oversee the liquidation of the assets of BLMIS and to process all claims against Defendant BLMIS, and the Debtor Bernard L. Madoff. *See* 15 U.S.C. § 78fff-1(a).

10. By order of this Court dated December 23, 2008, the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines. *See* Order entered at Dkt. No. 12. The Order directed the Trustee to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . ."

11. In February 2009, prior to the claims filing deadline, Claimant duly filed a customer claim with the Trustee in the amount of $643,568.89. This claim has apparently been designated as Claim No. 004523 attached as **Exhibit "D"**.

12. By Notice of Trustee's Determination of Claim dated December 8, 2009, the Trustee notified Claimant that its claim had been denied on the following basis:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. §78lll(2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

13. By this Notice of Objection, Claimant does hereby formally object to the determination by the Trustee.

## ARGUMENT IN SUPPORT OF

## OBJECTION TO TRUSTEE'S DENIAL OF CLAIM NO. 004523.

Contrary to the determination of the Trustee, Claimant is a "customer" as provided for by the Securities Investor Protection Act. As such, it is entitled to receive SIPC insurance. Section 78lll(2) of the SIPA defines "customer" as "any person who has deposited cash with the debtor for the purpose of purchasing securities."[1] Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 401 B.R. 629, 635 (Bankr. S.D.N.Y. 2009)("the mere act of entrusting...cash to the debtor for the purpose of effecting securities transaction...triggers customer stats...")(alternations in original) (citations omitted). Apparently, the Trustee has taken the position that the fact that Claimant deposited funds with BLMIS indirectly is fatal to its claim as a "customer" under SIPA. This position is incorrect.

Under SIPA, the term "customer" is a term of art, and does not have its ordinary and

---

[1] The statute provides that:
The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, . . . 15 U.S.C. §78lll(2).

customary meaning. Arford v. Miller, 239 B.R. 698, 701 (S.D.N.Y. 1999), *aff'd sub nom.* In re Stratton Oakmont, 210 F.3d 420 (2d Cir. 2000) (citations omitted). It is to be construed within the context of the definitional section of SIPA, and as interpreted by the courts.

The statute does not require that one have a direct relationship with the subject broker to be considered a "customer" under SIPA. All the plain language of the statute requires is that (a) the claim against the debtor arose out of sales of conversion of securities, and (b) that the customer made deposits with the fiduciary of cash or securities. *See* 15 U.S.C. §78lll(2). The legislative history of SIPA supports this interpretation.

SIPA was enacted by Congress as remedial legislation to be liberally construed to effect the purpose of protecting the investments of customers of broker-dealers and investment advisers. *See* In re First State Securities Corp., 34 B.R. 492, 496 (Bankr. S.D. Fla. 1983)(citing Tcherepnin v. Knight, 389 U.S. 332 (1967)). The fundamental purpose of SIPA was to protect the public in the event that the entities with whom they dealt with went bankrupt, or were otherwise unable to satisfy their customer agreements. *See* SEC v. S.J. Salmon & Co., Inc., 375 F.Supp. 867, 871 (S.D.N.Y. 1974)("The principal purpose of the [Securities Investor Protection] Act was to protect investors against financial losses arising from the insolvency of their brokers.")(citing H.Rep. No. 91-1613, at 1970 U.S. Code Cong. and Adm. News p. 5254 et seq.).

The statute does not mandate that the funds or securities received by the debtor were received "directly" by the customer. Had this been a requirement, Congress would have so required it. Indeed, Section 9 of SIPA covering advances by SIPC to the bankruptcy trustee states that:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, <u>other than to the extent that it shall be established to the satisfaction of the trustee,</u>

>from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, <u>that the net equity claim</u> of such broker or dealer or bank against the debtor <u>arose out of transactions for customers of such broker or dealer or bank . . ., in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor</u>. 15 U.S.C. §78fff-3(a)(5) (emphasis added).

"In order to have a "customer claim" under the Securities Investor Protection Act of 1970, 15 U.S.C.S. §78111(2), claimants must establish that they entrust money to a debtor for the purpose of purchasing securities." In <u>Re: Old Naples Securities, Inc. v. Heebner</u> 230 B.R. 441 (M.D. Fla. 1999). The Court in Old Naples affirmed the holding of the bankruptcy court, which rejected the trustee's determination that appellee's claim was not a customer claim, holding that the bankruptcy court properly found that appellee claimants were entitled to customer status under the SIPA because the securities transaction contained the indicia of the ususal fiduciary relationship. Old Naples Securities, Inc. was the firm that received the funds for the purpose of purchasing securities, but was not a registered broker-dealer nor an SIPC member. The Court looked to the factual finding that dealings with the broker, who was an agent for a SIPC registered dealer, should be viewed as dealings with the Debtor for purpose of SIPC claims. <u>Id</u>. at page 7. Whether a claimant is a "customer" does not depend upon to whom he or she or it "handed her cash or made her check payable, or even where the funds were initially deposited." In re <u>Old Naples Sec., Inc.</u>, 223 F.3d 1296, 1302 (11th Cir. 2000). "Instead, the question is whether there was 'actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.'" *Id*. (Citing In re <u>Stalvey & Assoc., Inc.</u>, 750 F.2d 464, 469 (5th Cir. 1985) (quoting <u>SEC v. Kenneth Bove & Co.</u>, 378 F.Supp. 796, 700 (S.D.N.Y. 1974)). Here, Claimant can show that there was "actual receipt, acquisition or possession" of its property by the Debtor. In the case at bar, the Hilliers relied upon

three levels of SIPC registered financial firms; Fidelity Brokerage Services LLC, Siller & Cohen, and Lincoln Financial Advisors Corporation when investing in the Colson H. Hillier, IRA. It was reasonable for the Hilliers to believe that the transactions which led to their IRA money being invested with BLMIS was protected by SIPC. The determination of customer status under SIPA is a factual inquiry. "The findings of fact, whether based on oral or documentary evidence, should not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. In re Government Securities Corp., 107 B.R. 1012, 1013 (S.D. Fla. 1989). The Hillier's would be denied due process should they not be afforded the opportunity to present evidence supporting their status as a customer under the SIPA. To the extent applicable, Claimant joins in the objections of those other claimants similarly situated, and request such further relief as this Court shall deem fair and equitable.

WHEREFORE, Colson H. Hillier Jr., IRA, Colson H. Hillier, and Patricia M. Hillier respectively request entry of an order vacating Trustee's denial of Claim No. 004523 and an order that authorizes the Trustee to process The Hilliers' Claim as a "customer claim" within the meaning of Securities Investor Protection Act of 1970, or in the alternative, The Hilliers respectfully demand an evidentiary hearing to establish the factual basis for determining their rights as a customer under SIPA.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to the following, by U.S. Mail this 4th day of January, 2010:

Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

David Sheehan
Alissa M. Nann
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

DATED this 4th day of January, 2009

JACOBS SCHOLZ & ASSOCIATES, LLC.

_____
ARTHUR I. JACOBS, ESQ.
Fla. Bar No. 108249
**RICHARD J. SCHOLZ, ESQ.**
Fla. Bar No. 0021261
961687 Gateway Blvd., Ste. 201I
Fernandina Beach, FL 32034
(904) 261-3693 Telephone
(904) 261-7879 Facsimile
Attorneys for Claimant, Colson H. Hillier Jr., IRA