Narvid, Glickman, Scott & Frangie
Profit Sharing Plan
c/o Roy Glickman, Trustee
14816 Jadestone Drive
Sherman Oaks, CA 91403
818-784-9114 (phone and fax)
Roysg@wgn.net

Claimant



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Securities Investor Protection Corporation,**  <br><br>**Plaintiff-Appellant**  <br><br>v  <br><br>**Bernard L. Madoff Investment Securities, LLC**  <br><br>**Defendant** | **Case Number 08-1789 (BRL)**  <br><br>**Opposition of Claimant Narvid, Glickman, Scott & Frangie Profit Sharing Plan to Trustee's Determination of Claim 005523** |
| **In Re Bernard L. Madoff,**  <br><br>**Debtor** | |

## NOTICE IS HEREBY GIVEN TO THE COURT AND TO IRVING H. PICARD,

## TRUSTEE AS FOLLOWS:

Claimant Narvid, Glickman, Scott & Frangie Profit Sharing Plan ("Plan")

disagrees with the determination of the Trustee denying Claimant's claim of $141,401.21

on the grounds set forth below.

1

1. The Plan filed a timely claim directly with the Trustee showing a net equity of the plan with BLMIS of $141,401.21. The filed claim is attached as Exhibit A. The trustee denied the claim solely on the grounds that the Plan did not have an account with BLMIS and so therefore was not a customer of BLMIS under SIPA. Neither the Trustee nor any other party disputes the Plan's net equity of $141,401.21 with BLMIS.

2. The Plan is an "indirect investor" in BLMIS. The Plan is a limited partner of Caroline Investments, and Caroline is a Limited Partner in Lambeth. Lambeth held Account 1L0002 with BLMIS. Lambeth had only one business activity, which was the sending and receiving of money (including the Plan's) directly to and from BLMIS. The Trustee acknowledges that Lambeth was an account holder with BLMIS as shown on the letter from the Trustee to the Plan dated May 22, 2009, a copy of which is attached as Exhibit B.

3. The Plan submitted its funds to Caroline which in turn forwarded that money to Lambeth. Lambeth, transferred that money to BLMIS which then credited the Lambeth account. As shown by the Plan's claim, the Plan put in $141,401.21 more than it took out. Neither the Trustee nor anyone else has disputed the fact that BLMIS received net funds of $141,401.21 from the Plan that have not been returned. Therefore, it is clear that the Plan is a victim and deserving of protection in any distribution of recovered assets.

4. The Trustee has denied the Plan's claim solely on the grounds that the Plan did not have an account directly with BLMIS and so the Plan is not a customer under SIPA. The nominal "customer" in this chain is The Lambeth Company, but the Lambeth Company has refused to file a claim. The Trustee's letter of May 22 (Exhibit B) even acknowledges that the Trustee sent a reminder to Lambeth to file a claim. Failure to file by Lambreth should not prohibit the Plan from sharing pro rata in any distribution of assets, since the Plan's net equity position has been established by the Plan's documentation submitted with its filed claim. It should be noted that the Trustee in its letter of May 22, 2009 stated

2

that it could not address the claims of those entities which invested through the Lambeth Company until

> "The Lambeth Co files a customer claim for the Account **so that we have adequate information about the account.**"

Since the Plan has filed its claim with backup documentation, the Trustee now has adequate information as to the Plan's net equity. Although Lambeth did not provide the information, the Plan did.

4. Even if a an indirect investor is unable to participate in SIPC insurance funds because it is not a direct customer of BLMIS, an indirect investor should be able to participate in recovered funds. The trustee is making relief to a victim solely contingent on the decisions made by the nominal "customer", in this case Lambeth, even though the victim can establish the victim's "net equity" and files its own claim. There is no possibility of overlapping claims, because Lambeth has not filed a claim.

5. In this case, the Trustee has also commenced litigation against Lambeth and its general partner. This litigation may have caused Lambeth to decide not to file a claim to protect rights of Lambeth and its principal. The Plan, which clearly put in more than it took out, should not be prejudiced by Lambeth's status and decisions since the Plan has undertaken to file a claim in its own behalf and to substantiate it with the relevant supporting documents.

6. Indirect investors such as the Plan have been recognized by the IRS as being eligible for certain deductions. The Trustee should take the same position.

At the meeting of creditors in New York City last March the Trustee was emphatic about being "fair" to all of the investors. It would not be fair to refuse to recognize the claims of indirect investors such as the Plan on the grounds that Lambeth, an intermediary, did not file a claim. The Plan has no control over the actions of Lambeth, and cannot force it to file a claim. Yet the Plan is the real "victim" here and has established its net equity position with documentary evidence.

The Plan respectfully requests that its claim be approved.

Narvid, Glickman, Scott and Frangie Profit Sharing Plan

By _____/s/ Roy Glickman_____

Roy Glickman, Trustee

Exhibits attached:

A - Original claim filed with Trustee

B - Trustee letter to claimant dated May 22, 2009

Copies sent January 6, 2010 by overnight delivery to

Clerk of the United States Bankruptcy Court for
The Southern District of New York
One Bowling Green
New York, New York 10004
And
Irving H. Picard, Trustee
c/o Baker and Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111