UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br><br> Defendant <br><br> In re: <br><br> BERNARD L. MADOFF <br><br> Debtor | SIPA Liquidation <br><br><br><br> No. 08-01789-BRL <br><br> JAN - 6 2010 <br><br><br><br> Substantively Consolidated |

## CLAIMANT'S OBJECTION TO DENIED CLAIM NUMBERS 014606 AND 014764

Claimant Meyer seeks an order to reverse Trustee Picard's Determination of Claim in bankruptcy case 08-1789 BRL   Bernard L. BLMIS Investment Securities LLC.  Determination was that this individual who filed a claim as (the "Claimant") is not a "customer" of a broker-dealer undergoing liquidation defined in accordance with the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. § 78lll(2).

The Trustee should not be penalized for being too aggressive in discovery or for efforts in recovering assets in "clawback" litigation because of the criminal intent of defendants.

Other litigators have failed the "customers" or both groups have joined the campaign of the BLMIS axis of misconduct and crimes.

In July 2009 Claimant Meyer submitted a claim to the trustee in Bankruptcy Case No. 08-1789 (BRL) with documents to support her claim.

The Trustees and Co-Executors ("Peter J. Meyer" of Great Neck NY, Frank D. Meyer, Marcia Meyer and court appointed Ad Litem Mark D. McWilliams for the Estate Edward J. Meyer Trust in Palm Beach County Florida were involved a business relationship with Cohmad and Bernard L. Madoff  Investment Securities LLC BLMIS involving accounting, avoidable transfers, preferences, fraudulent conveyances, damages linked directly to Bankruptcy Case No. 08-1789 (BRL), securities fraud, unjust enrichment, tax evasion and conversion. The use of trusts and special family holding entities to abrogate tax is a method used by the other defendants, MADOFF FAMILY LLC, MADOFF ENERGY HOLDINGS LLC, ATTN: SHANA MADOFF, MADOFF TECHNOLOGIES, L.L.C., C/O CRAIG KOGEL EDWARD HKOHLSCHREIBER SR REV MGT TRUST, S & J PARTNERSHIP, JANET JAFFIN REVOCABLE TRUST, THE SPRING FAMILY TRUST, JEANNE T. SPRING TRUST, THE ESTATE OF ELENA JALON MARILYN COHN

1

AND MAURICE COHN CHARITABLE REMAINDER UNITRUST, MAX B COHN FAMILY FDN INC II, NTC& CO,. In this Cohmad Securities adversary proceeding Trustee Picard seeks to set aside such transfers and preserve the property for the benefit *of all of BLMIS' defrauded customers.*

Venue in this district is proper under 28 U.S.C. § 1409.

## Cohmad and Its Registered Representatives

Richard Spring was the account representative for decedent Edward J. Meyer's BLMIS held by custodian Retirement Accounts Inc. and Cohmad IRA accounts with Bear Stearns acting as clearing agent.

No eyewitnesses have provided exculpatory or impeachment evidence in this Adversary proceeding against Cohmad Securities.

Other Defendants Peter J. Meyer, Frank D. Meyer, Marcia A. Meyer, Mark D. McWilliams Esquire and Michael Lavery Esquire, as they conspired with Cohmad and Richard George Spring, should be deposed or subpoenaed as eyewitnesses to testify in the BLMIS and Cohmad Securities proceedings in Bankruptcy Case No. 08-1789 (BRL)

Testifying on the subject matter of conversion and tax evasion engaged in by Richard Spring should be Elizabeth Reilly Moody, Mark D. McWilliams, his co-workers at Eric Joh LLP, Linda Hart handwriting analysis expert for the Cohmad and Madoff beneficiary documents hired by Mc Williams and Lavery, their business holding associates Keith Grumer, Esq., Randall Leshin Esq., Marcia Meyer, Wade Odem of Retirement Accounts Inc., Sharon Koehler of Retirement Accounts Inc., Ron and Tony - last names of representatives unknown - of Retirement Accounts Inc. and Frederick C. Heidgerd, Esq. who should be deposed or subpoenaed as eyewitnesses to testify in the BLMIS and Cohmad civil proceedings in Bankruptcy Case No. 08-1789 (BRL).

Richard Spring directed that IRA beneficiary documents be faxed on September 20, 1999 to Frank Meyer at (301) 824-3489 without a copy of the death certificate as required by law.

Discovery of business relationships between the debtors, Cohmad, the administrators of the Palm Beach Probate estate have not been fully disclosed. Tax returns, real property title, employment, (See FINRA broker -Elizabeth Reilly Moody employed by Cohmad until she was questioned about the Estate of Edward Meyer, Moody then suppressed her testimony against Cohmad and Spring and was hired by Bear Stearns as soon as Cohmad and Bear Stearns were released from liability in arbitration) checks cashed, and bank records will disclose these broker dealer relationships.

Distributions from that BLMIS account held by custodian Retirement Accounts Inc. No. 940461001 and Cohmad Account No. 126-9525 were made by fraudulent avoidable transfer and should have been deposited in 1999 into the Edward J. Meyer Trust. Directed by Richard Spring both IRA's were transferred outside the taxable estate after the death of the decedent to conspire with Peter, Frank and Marcia Meyer. *Diane Schroeder Meyer v. Bear Stearns, Marcia Meyer and Mark D. McWilliams (IY PB FL 2001) 4073 In re: The Estate of Edward J. Meyer 1999 4504.*

## Other Defendants Frank, Peter and Marcia Meyer

Diane: Do you have legal proof that she's the beneficiary?
Frank: Oh, yeah. I've got a copy of the beneficiary statement. It was faxed to me this morning.

2

Diane: OK Well, like I said I saw him at the funeral and, it was like, what was it because I never went back and got a job that he's upset or what.

Frank: Well, the guy is just a sleaze is what it is. A con man...

Frank: They don't say much and they don't say anything good. I can tell you that much. I have the beneficiary statement from the IRA and I can send you the list of stocks that he had in '98 and the statement from the money market account. That's basically all I have.

Diane: Well, the Ultimate stock that's missing. There's no way to trace that at all yet?

Frank: Nope.

Diane: All right.

Frank: I mean it's possible that she's got it stashed somewhere and at some point she'll sign it over to herself or maybe she's got it in an account somewhere. Maybe sold already. She might have sold it.

Diane: Using Richard Spring?

Frank: Yep. She might have sold it to Richard Spring at a discount.

Diane: Well, how did you come up with Richard Spring anyway?

Frank: Because the guy keeps turning up and I know that she and him have connected through Glenn Oaks. And he's the one who set up all these IRA accounts.

Diane: Oh, he did?

Frank: Oh, yeah! He played a hands on role in putting those accounts in her name.

Diane: Oh, I didn't know he had IRA connections also.

### Privy to conspiring Frank Meyer linking Cohmad to wrongdoing in 1999

Frank: Oh, here it is. No that's under COHMAD and that's part of MADOFF. That's Richard Spring's department of MADOFF. That number is 800 334-1343.

Claimant: 334-1343. And how about COHMAD?

Frank: Same number.

Claimant: Well, I don't understand what Richard Spring gets out of this.

Frank: Money!

Claimant: You think?

Frank: Yeah. I know. He gets fees from MADOFF for bringing customers to him. That's the least that he gets. The best case scenario, if he's totally honest.

If he's a crook then he's getting a share of everything that Marcia got from Eddie. Personally, I believe he's a crook. I have nothing to prove that. It's just the way I feel about the way things went.

Claimant: Well, I don't know what else to say tonight.

Frank: I don't either and I think I have told you everything I know. Sorry to have to be the one to tell it to you. And hopefully, I'm totally wrong and the rest of this money will turn up and there will be a trust account or either way I'm still gonna ask Marcia to make a fair division of the money but, you know, there's no way I can force her to do it.

Claimant: Well, I do think she should at least be approached.

Frank: Oh, Yeah. I'm gonna do that. That's what I'm going to do when I get down there in October but I wouldn't hold my breath expecting something to happen. The most likely thing that is going to happen is that she is going to laugh in my face. But, yeah, I have to ask.

Claimant: Well, right now I guess I'll just have my lawyer a look at all this.

Frank: That's fine.

F: About the will. I don't understand why you feel it's a secret.

D: Well, I wanna make sure that's the will that was probated and I'd like to find out what the inventory is from the estate.

4

S: That's supposed to only go to the beneficiary, and then it's supposed to be filled out by the beneficiary and come back with a certified copy of the death certificate.

D: Oh, well that wasn't even what I saw. I didn't even see anything that looked like a request for anything. It was just some kind of unreadable statement. That's why I'm calling. I'm just really unclear, and I'm just hoping to get some clarification.

S: Well, if the client is deceased, then we cannot give anything out to anyone except the beneficiary.

D: So you think that what was mailed out was a…

S: It was faxed.

D: I'm sorry faxed. Yes, so you're saying that the only thing that might have been faxed was a request for the uh… What are you saying was faxed?

S: Okay, my note says, "Faxed many information." So…

D: Would that be the beneficiary statement, naming the person who is the beneficiary?

S: Let me find out exactly what went on. Hold on please.


(on hold- music)


S: You know, I can't find the person who put the note in here who did the fax thing, so I don't know whether it was the beneficiary distribution request form.

D: So there are two actual things it could have been, either the beneficiary request for distribution or…

S: Or the actual information on who the beneficiary was… is…

D: … (made?) me, the payee, uh… But you are sure that you haven't received any death certificate?

S: No, as far as we're concerned, this client is not deceased.

D: Therefore, neither document should really have gone out except to the beneficiary for… until you have received a…

S: Right, the beneficiary can notify us and say, "Send me a beneficiary distribution request form." We say, "Okay." We send them that. They send it back to us with the certified copy of the death certificate and then we take it from there.

D: I understand, but neither of those have… it's possible that it's taken place according to your records. Anyway, what I want to follow up on getting a copy of I'm not the beneficiary, could I have a letter sent to you by the representative of the estate?

S: To get information that you're not the beneficiary?

D: Yeah, to confirm…

S: I'm supposed to confirm that you're not the beneficiary, if you're not?

D: Or find out who is the beneficiary according to your original contract.

S: They do not usually give out that information.

D: You can't release that with the authority of the representative or the beneficiary?

Unless deposed or subpoenaed today by the Trustee in Bankruptcy Case No. 08-1789 (BRL there never will be a baseline for McWilliams performance levels to refer to later. As a trustee appointed by the court in Palm Beach County he never filed any accounting in violation of the law.

From November 2000 until March 2006 six years of litigation and arbitration against Bear Stearns, Cohmad, and Marcia Meyer and Richard Spring were conducted by this same Administrator Ad Litem. As events occurred things went wrong. A baseline collection of performance levels are taken when the events are functioning normally. The estate never functioned normally.

The trust of Edward J. Meyer was destroyed by fraud. Please see attached documents about the public corruption INVESTIGATION OF PALM BEACH COUNTY GOVERNANCE AND PUBLIC CORRUPTION ISSUES. [2]

Damages are incalculable and irreconcilable. Claimant Meyer's Motions for Accounting contained objections that there were fraud damages being concealed because of lack of a bookkeeping log which would prove damages from 2000-2006.

The fact is that Claimant Meyer's father's estate was administered by Mark D McWilliams.

McWilliams vigorously aligned himself with Richard Spring who engaged in tax shelter fraud . Upon information and belief, defendant The Spring Family Trust (the "Spring Trust") is a trust established for benefit of, among others, Spring, and for which Spring is thetrustee, and maintains an address at 20572 Links Circle, Boca Raton, Florida 33434. The SpringTrust maintained at least one account with BLMIS, including the account bearing the number
1S0193.

McWilliams was appointed by Judge John D Wessel in both  Edward J Meyer's Estate DOD  9/06/1999 and the Express Consolidation case in which McWilliams vigorously aligned himself with Randall Leshin the defendant in FTC's $40 million judgment against Leshin in Express fraud.

Leshin settled for merely $2 million. The other $38 million was not accounted.

McWilliams helped dismiss malpractice claims against Leshin.

McWilliams refused to investigate the other IRA at BLMIS where Spring was the registered representative on the account at Retirement Accounts Inc.

Judge Wessel died May 2009.

McWilliams is now Personal Representative for same Judge John D Wessel estate.

Claimant does not know how McWilliams was appointed Ad Litem or receiver.

That is the same Palm Beach County judge Judge Wessel who appointed McWilliams in November 2000 as the Trustee Ad Litem in Edward J Meyer's estate because of corruption connected to BLMIS, Cohmad, Spring and Bear Stearns.

Judge Wessel appointed McWilliams in Express Consolidation.

No records indicate where McWilliams placed and disposed Ultimate Software Group stock that rose from $7 per share to $45. There were 198,000 shares. There were other assets that should have gone into the trust including a BLMIS account, real estate and business holdings.

False and fraudulent transfers constitute property of the estate to be recovered and administered by Trustee Picard pursuant to section 541 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

Pursuant to section 542 of the Bankruptcy Code, Trustee Picard is entitled to the immediate payment and turnover from the Defendants of any and all Transfers made by BLMIS, directly or indirectly, to any Defendant
False and fraudulent transfers are avoidable and recoverable under sections 544, 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and N.Y. Debt. & Cred. §§ 273 – 276 (McKinney 2001). Such Transfers made during the six years prior to the Filing Date and are avoidable and recoverable under sections 544, 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. Debt. & Cred. §§ 273 - 276.

The Six Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Six Year Transfers to or for the benefit of the Defendants in furtherance of a fraudulent investment scheme.

Pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside; (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Defendants.


Steven R. Paradise of Vinson & Elkins, representing Cohmad and the Cohn family, *denied any link* between his clients and Mr. BLMIS's fraud.[3]

"Our clients continue to be as shocked as anyone at the revelations" about Mr. BLMIS, Mr. Paradise said. "We look forward to the opportunity to challenge both the SEC's and Mr. Picard's allegations in court."

All other defendants knew that the activities that they undertook on behalf of Cohmad were for the benefit of BLMIS.


The record is not barren of positive proof.

There was no estate tax return filed by McWilliams or the Co-Trustees or accounting. Pursuant to section 542 of the Bankruptcy Code, Trustee Picard is also entitled to an accounting of all such Transfers received by any Defendant from BLMIS, directly or indirectly.

Claimant files this pleading to amend her status as customer to standing as a beneficiary of the Trust of Edward J. Meyer.

11

*See* 15 U.S.C. § 78fff(b). A claim to which an objection has been filed is allowed to the extent the claim is enforceable against the debtor under applicable law. *See* 11 U.S.C. § 502(b)(1); *Adler, Coleman*, 198 B.R. at 74.

*Under 26 U.S.C. § 7201 Attempt to evade or defeat tax*

It is a crime for a person to

- willfully attempt in any manner to
  - o evade or
  - o defeat
- Any tax imposed by this title or the payment thereof.

Tax evasion requires some overt, affirmative act that would constitute an evasion or attempted evasion of tax. See Sansone v. United States, 380 U.S. 343, 351 (1965); Spies v. United States, 317 U.S. 492, 498-99 (1943) (also holding that mere omission is insufficient to sustain a conviction under section 7201. Stated a different way, the felonious conduct proscribed by section 7201 has two elements: 1) a particular subjective state of mind, and 2) certain affirmative activity carried on pursuant to that mental state. Violating section 7201 will constitute a felony

*Under 26 U.S.C. § 7203  Willful failure to file return, supply information, or pay tax*

To willfully fail to

- pay such estimated tax or tax,
- make such return,
- keep such records, or
- supply such information,
- at the time or times required by law or regulations

In the case of a willful violation of a provision of 26 U.S.C. § 6050I, the aforementioned violation will be considered a felony.

*Under 26 USC  § 7206 Fraud and false statements*

- Willfully make and subscribe any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; 26 U.S.C. § 7206(1);
- Willfully aid or assist in, or procure, counsel, or advise the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; id. § 7206(2);
- Simulate or falsely or fraudulently execute or sign any bond, permit, entry, or other document required by the provisions of the internal revenue laws, or by any regulation made in pursuance thereof, or procure the same to be falsely or fraudulently executed, or advise, aid in, or connive at such execution thereof; id. § 7206(3);

12

- Remove, deposit, or conceal, or be concerned in removing, depositing, or concealing, any goods or commodities for or in respect whereof any tax is or shall be imposed, or any property upon which levy is authorized by 26 U.S.C. § 6331, with intent to evade or defeat the assessment or collection of any tax imposed by this title; id. § 7206(4);
- In connection with any compromise under 26 U.S.C. § 7122, or offer of such compromise, or in connection with any closing agreement under 26 U.S.C. § 7121, or offer to enter into any such agreement, willfully-
  - Conceal from any officer or employee of the United States any property belonging to the estate of a taxpayer or other person liable in respect of the tax, id. § 7206(5)(A); or
  - Receive, withhold, destroy, mutilate, or falsify any book, document, or record, or make any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax. Id. § 7206(5)(B).

"Notwithstanding special protection afforded customers a SIPA proceeding is essentially a bankruptcy liquidation. *See Adler, Coleman*, 198 B.R. at 74; *Adler, Coleman*, 195 B.R. at 269 .

The SIPA proceeding looks not only to the disposition of claims of customers, but also to the claims of general creditors. Estate property is distributed in the order provided in section 726 of the Bankruptcy Code.

"Affording customer status ... [allows] the claimant's debt to be satisfied from monies advanced to the trustee by SIPC," *Hanover*, 55 B.R. at 238 (*citing* 15 U.S.C. § 78fff-3(a)), whereas denying "customer" status relegates an investor to the status of a general unsecured creditor of the debtor's estate. *See Adler, Coleman*, 195 B.R. at 270 ("SIPA liquidations generally involve customer claims and claims of general unsecured creditors which are satisfied out of a customer estate and general estate, respectively.").

When SIPC files a complaint, it does so as a protective measure in the interest of all investors who may fit within the SIPA rubric, *see Hanover*, 55 B.R. at 237 ("its main function is to liquidate a broker or dealer when customers' assets are in danger").

The term "customer" 15 U.S.C. § 78*lll*(2) cash and securities (except customer name securities delivered to the customer) at any time received, acquired or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any property transferred by the debtor, including property unlawfully converted....and customer property § 78*lll*(4) flowing from the definitions The Trustee and SIPC, on the one hand, and the Claimants, on the other, hotly dispute whether this Claimant entrusted cash or securities to BLMIS and Cohmad for the purpose of trading and investing in the securities market. Tax evasion is the affirmative act required to establish conversion compensable under SIPA. *See Adler, Coleman;* 95 B.R. at 275 *JNT Investors*, 1978 WL 1137; *Barton v. SIPC*, 182 B.R. 981, 985 (Bankr.D.N.J.1995); *In re First State Securities Corp.*, 34 B.R. 492, 496-97 (Bankr.S.D.Fla.1983); *Howard Lawrence*, 1 B.C.D. at 579.

The principles developed in these decisions were codified by SIPC in the "Rules Relating to Satisfaction of a `Claim for Cash' or a `Claim for Securities'", 17 C.F.R. Part 300.500 to Part 300.503, Voidable Securities Transactions.

The SIPA trustee has `the same powers and title with respect to the debtor' and its property as a trustee in bankruptcy, as well as powers that enable him to perform the special functions of a SIPA liquidation." *Id. SIPC v. Christian-Paine & Co.*, 755 F.2d 359, 361 (3d Cir.1985); SIPA §§ 78fff(e), 78fff-1(a). See also § 78fff(b) of SIPA, which provides "to the extent consistent with the provisions of " SIPA, a SIPA liquidation

proceeding is "conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 of and subchapters I and II of chapter 7 of Title 11."

Claimants are "customers" based upon the unauthorized transactions which occurred in their accounts with Retirement Accounts Inc. and Cohmad.  *See Schultz v. Omni Mutual Inc., 1993 WL 546671* (S.D.N.Y.) ("Courts within and without this Circuit have held... that SIPA coverage extends to instances of misappropriation."); *In re C.J. Wright & Co., Inc.,* 162 B.R. 597, 607 (Bankr. M.D.Fla.1993) ("SIPA provides customer status for claims based on misappropriation."); *see also SEC v. S.J. Salmon & Co., 375 F.Supp. 867, 871 (S.D.N.Y.1974); In re First State Securities Corp., 34 B.R. 492, 495 (Bankr.S.D.Fla.1983); SEC v. Howard Lawrence & Co., 1 B.C.D. 577, 580-81 (Bankr.S.D.N.Y.1975).*

The SIPC rules mandate that these Claimants do not possess preferential "customer" claims against BLMIS, a result of which should be the disallowance of their claims such as the fraudulent transfers to Marcia Meyer, Cohmad defendants, McWilliams and Lavery [4].

These rules have been approved by the SEC and, by statute, are accorded the same force and effect as if promulgated by the SEC. *See* 15 U.S.C. § 78ccc; *see also* H.R.Rep. No. 95-746, 95th Cong., 1st Sess. 25 (1977).

SIPC rules are to be considered legislative rather than interpretive and will have the force and effect of law.

Rule 104—Trust Accounts
(a) A trust account held with a member shall be deemed a "qualifying trust account" if it is held on behalf of a valid and subsisting express trust created by a written instrument. No account held on behalf of a trust that on the filing date existed primarily to obtain or increase protection under the Act shall be deemed to be a qualifying trust account.
(b) A qualifying trust account held with a member shall be deemed held by a separate customer of the member, distinct from the trustee, the testator or his estate, the settlor, or any beneficiary of the trust. (c) Any account held with a member on behalf of a trust which does not meet the requirements of paragraph (a) of this rule shall be deemed to be an individual account of the settlor of the trust on behalf of which the account is held.

Claimant's trust has been subject matter of three failed brokerages due to fraud by Bear Stearns, Cohmad and BLMIS.  With the purpose of tax evasion for which there is no business purpose significantly clear' evidence of a legitimate supervening purpose such as secretly releasing documents and IRA distributions without a death certificate. because the Trustee and Co-Executor at the time were Frank and Marcia Meyer.

Trustees Marcia Meyer, Peter Meyer, and Frank Meyer had established a likelihood of success of the fraudulent transfer action and that Claimant Meyer would suffer irreparable harm and losses in the form of a never receiving Claimant's inheritance from Claimant Meyer's trust.

Those losses were occasioned by the insolvency of this debtor. *See SEC v. Howard Lawrence & Co., Inc., 1 B.C.D. 577, 579 (Bankr.S.D.N.Y.1975).*

Broker dealer liability has been particularly mentioned and established as attributable to misconduct and criminal intent of BLMIS, Cohmad, Marcia Cohn, Elizabeth Reilly, Richard Spring, McWilliams and Lavery.

14

SIPA protection extends to Claimant Meyer as a customer and Trustee Picard is subrogee and assignee for the Trust of Edward J. Meyer.

Relief requested is:

1. Affirmation of Claimant Meyer's claim in Bankruptcy Case No. 08-1789 (BRL) as beneficiary of the Trust of Edward J. Meyer.

2. Avoiding and preserving the false and fraudulent transfers, Trustee Picard directing that these transfers be set aside, and recovering these transfers, or the value thereof, from any of the Defendants established for the benefit of the estate of BLMIS.

3. Awarding the Trustee all applicable interest, costs, and disbursements

4. Granting Claimant Meyer such other, further, and different relief as the Court deems just, proper, and equitable.

---

[1] **The Court** may also consider documents attached to the Complaint or incorporated in it by reference, matters of judicial notice, and documents in the Defendants' possession or knowledge. *Dangler v. N.Y. City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

The Defendants nevertheless filed claims for "customer protection" under SIPA. These claims were based, however, not on the difference between the Defendants'"net equity" under SIPA and the liquidation value of their brokerage accounts on the filing date but, rather, on the decline in the value of their accounts while they entrusted Park South with the management of their investments. For that reason, the Court upheld the Trustee's denial of customer protection for these claims, *see, e.g., In re Hanover Square Securities,* 55 B.R. 235, 238 (Bankr.S.D.N.Y.1985), which is a different thing, of course, from denying that the Taylors may have some other form of claim attributable to misconduct of Park South and Eberhard.

15 U.S.C. § 78fff-1(a) provides that a "[SIPA] trustee shall be vested with the same powers and title with respect to the debtor and property of the debtor, including the same right to avoid preferences, as a trustee in a case under Title 11." *See also Mishkin v. Ensminger (In re Adler Coleman Clearing Corp.),* 218 B.R. 689, 702 (Bankr.S.D.N.Y.1998) (SIPA trustee may bring fraudulent transfer claims under sections 544 and 548 of the Bankruptcy Code, among other remedies).

Bankruptcy Code section 105(a) gives the bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc),* 351 F.3d 86, 91-92 (2d Cir.2003). Thus section 105(a) gives the Court power to act in furtherance of its jurisdiction, *id.; Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 760 (5th Cir.1995), but not to expand that jurisdiction. *Id.* That is, section 105(a) does not allow a bankruptcy court to create substantive rights otherwise unavailable under applicable law, or constitute a roving commission to do equity. .

Although there is very little case law discussing whether section 105(a) can serve as a basis for a claim of unjust enrichment (*see, e.g., Bessette v. Avco Fin. Sers.,* 230 F.3d 439, 447 (1st Cir.2000); *Home Sav. of America, F.A. v. Inland Group, Inc.,* 1991 WL 270423, *4 (N.D.Ill.1991)) (unjust enrichment claim not recognized where trustee had available remedy under a specific provision of the Bankruptcy Code, 11 U.S.C. § 544(b)(1)), it appears best, therefore, not to view section 105(a) as an independent ground for the Trustee's unjust enrichment claim, but, rather, to ask whether the Debtor, and thus the Trustee, has an unjust enrichment claim under applicable nonbankruptcy law that is property of the estate under section 541 of the Bankruptcy Code or whether the Trustee has some other basis to pursue such a claim.

"Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute ... appropriate receipts, supporting affidavits, releases, and assignments...." 15 U.S.C. § 78fff-2(b).

Section 78fff-3(a) of SIPA states,

To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in [SIPA], except that SIPC as subrogee may assert no claim against customer property until after the allocation thereof to customers as provided in section 78fff-2(c) of this title. SIPA trustee has standing through subrogation because the trustee distributes the SIPA fund to make creditors whole. 62 F.3d at 800. However, while a SIPA trustee has the duty to distribute the fund, the money and, thus, the subrogation claim are still SIPC's. SIPC, and not the trustee, therefore, should have the ability to decide how SIPC's subrogation rights are to be used.

[2] In fact, during the pendency of this Grand Jury, the Office of the Clerk and Comptroller ("Office of the Clerk") issued a *Debt Issuance Process Review* (executive summary attached as Exhibit 4). The Grand Jury finds merit in numerous aspects of the Office of the Clerk's report. The Grand Jury is astonished that the current bond financing system was allowed to continue for sixteen years. The practice of all bond sales being handled as negotiated sales seems inappropriate given Florida Statute Section 218.385(1) and GFOA recommended practices for AAA rated counties. The view advanced by some that Palm Beach County has an AAA bond rating largely because of the use of negotiated sales is inconsistent with every authoritative source reviewed by this Grand Jury.

The long standing practice within Palm Beach County of bond underwriting rotation also seems antiquated and insular. Each commissioner chooses one bond underwriter who is then placed in a rotation of seven. The underwriters are employed in the order of rotation. The Grand Jury recognizes that initially these bond underwriting companies were selected through a request for proposal (RFP) process. However, the Grand Jury believes no subsequent RFP process has occurred for bond sales since the advent of the seven company rotation in 2003. When a new commissioner joins the BCC, that commissioner can retain the designated underwriter or can select another to replace an existing bond underwriter. The Office of the Clerk's *The Debt Issuance Process Review* analyzed 24 negotiated bonds issued between 2003 and 2008. Of the bonds analyzed, the Office of the Clerk's Report determined that 19 were appropriate for competitive sale. A review of debt issuance practices of 45 other AAA rated counties nationwide (between the years of 2000 and 2008) revealed that Palm Beach County is one of only four counties that did not issue bonds using a competitive sales method. The Office of the Clerk's Report further concludes that the county's exclusive use of negotiated sales has cost the county $880,000 in excess underwriting fees and between $440,000 and $1.3 million in unnecessary annual interest expense. The Grand Jury finds that *The Debt Issuance Process Review* fails to show sufficient support for its assertion of such specific alleged losses to the county. Notwithstanding, the Grand Jury concludes that based on sound bond issuance principles and GFOA recommended practices, Palm Beach County lost money by limiting itself to the use of negotiated sales.

The Grand Jury finds an inexplicable historical reluctance on the part of the county administration to change its bond underwriting procedures. Based on the totality of evidence (both documentary and testimonial), the Grand Jury finds the issue is not whether, but how the bond underwriting system should be changed.

Testimony from numerous witnesses referred to the Policy and Procedure Memorandum (PPM) regarding the Debt Management Policy and Competitive Selection of Bond Underwriters Policy For Negotiated Sales. Palm Beach County drafted this PPM for issuance in April 2009. (Judge Wessel died in May 2009)

[4] Given this infirmity, it is not necessary to reach the second level of inquiry under the *Wagoner* Rule: whether, even if the cause of action belongs to the debtor's estate, the debtor was fatally complicit in the wrongdoing allegedly perpetrated by the third-party defendant, or whether the Rule's exceptions to the *in pari delicto* doctrine apply "in equal fault (better is the condition of the possessor)" that two persons or entities are equally at fault, whether the malfeasance in question is a crime or tort.. *See generally In re A.R. Baron & Co.*, 280 B.R. at 800-802.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the _4th_ day of _Janaury_, 2010_, a true and correct copy of the within and foregoing instrument was mailed by Priority first class mail to the following persons:

Clerk of the United States Bankruptcy Court for
The Southern District of New York
One Bowling Green
New York, New York 10004

     and

Irving R. Picard Trustee
c/o Baker & Hostetler LLP
Attn Claims Department
45 Rockefeller Plaza
New York, New York 10011

Diane Meyer
10116 Harwood Lane
Charlotte, NC 28214
704-905-3383

17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA Liquidation |
| Plaintiff, | |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | No. 08-01789-BRL |
| Defendant | |
| In re: | |
| BERNARD L. MADOFF | Substantively Consolidated |
| Debtor | |

**ORDER REVERSING TRUSTEE DETERMINATION OF CLAIM AND GRANTING CLAIM for
Diane Meyer and Diane Meyer the Daughter of Edward J. Meyer in Bankruptcy Case No. 08-1789
(BRL)**

NOW, on this_____ day of_____, 20__ upon consideration of the Written Objection by
Claimant Diane Meyer to pursuant to **15 U.S.C. §§ 78aaa** *et seq.*and **11 U.S.C. § 101(5) 11 U.S.C. § 1111**, and
for good cause shown, the court finds the said relief should be granted as set forth by the court herein.

**IT IS THEREFORE ORDERED BY THIS COURT AS FOLLOWS:**

**The Motion is Granted;**

**Diane Meyer's Claim** in Bankruptcy Case No. 08-1789 (BRL) **as beneficiary of the Trust of Edward
J. Meyer is allowed.**

Honorable _____
          Judge Burton R. Lifland

Address
US Bankruptcy Court for the
Southern District of New York
One Bowling Green

New York, New York 10004

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the___day of_____, 20__, a true and correct copy of the within and foregoing instrument was mailed by Priority first class mail to the following persons:

Irving R. Picard Trustee
c/o Baker & Hostetler LLP
Attn Claims Department
45 Rockefeller Plaza
New York, New York 10011

Diane Meyer
10116 Harwood Lane
Charlotte NC 28214

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008[1]**

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009

Diane Meyer, Estate Beneficiary of Edward J. Meyer
P.O. Box 680781
Charlotte, NC 28216

Dear Diane Meyer, Estate Beneficiary of Edward J. Meyer:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 014764:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the

---

1 Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

Diane Meyer
P.O. Box 680781
Charlotte, NC 28216

Dear Diane Meyer:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 014606:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.



# Wednesday, October 01, 2003

Bernard Madoff's complete client list, Part I
http://directorblue.blogspot.com/2003/10/bernard-madoffs-complete-client-list.html

EDWARD H KOHLSCHREIBER 108 WILLEVER WAY STEWARTSVILLE, NJ 08886

EDWARD H KOHLSCHREIBER 3545 SO OCEAN BLVD APT 102 PALM BEACH, FL 33480

EDWARD I SPEER C/O NOBLE & SPEER 60 EAST 42ND STREET NEW YORK, NY 10165

EDWARD I SPEER C/O NOBLE & SPEER & FULVIO 60 EAST 42ND STREET NEW YORK, NY 10165

EDWARD I SPEER & MARION SPEER JT/WROS 4400 N FEDERAL HGHWY STE #210 BOCA RATON, FL 33431

EDWARD I SPEER PROFIT SHARING PLAN C/O NOBLE SPEER & FULVIO 60 EAST 42ND STREET NEW YORK, NY 10165

EDWARD I SPEER CPA RETIREMENT PLAN TRUST 4400 N FEDERAL HGHWY STE 210 BOCA RATON, FL 33431

EDWARD I SPEER CPA 4400 N FEDERAL HGHWY STE 210 BOCA RATON, FL 33431

EDWARD I SPEER, CPA 4400 N FEDERAL HGHWY STE 210 BOCA RATON, FL 33431

EDWARD J HARRIS 1130 N LAKE SHORE DRIVE CHICAGO, IL 60611

EDWARD J HARRIS 1130 N LAKE SHORE DRIVE CHICAGO, IL 60611

EDWARD J HARROLD LIVING TRUST DTD 5/14/98 MARYLAND MASONIC HOMES 300 INTL CIRCLE RM 402 COCKEYSVILLE, MD 2

EDWARD J HARROLD JR & EVELYN HARROLD 100 STUYVESANT DRIVE PT JEFFERSON STATION, NY 11776

EDWARD J MINSKOFF 1325 AVENUE OF THE AMERICAS NEW YORK, NY 10019

EDWARD L SAMEK 509 ST DAVID'S AVENUE ST DAVIDS, PA 19087

EDWARD L SAMEK 1717 WOODLAND AVENUE EDISON, NJ 08820

EDWARD L SIMONDS TRUSTEE EDWARD L SIMONDS LIVING TRUST 7/27/2000 P O BOX 1600 MAKAWAO, HI 96768

EDWARD L SIMONDS TRUSTEE F/B/O BROOKE SIMONDS U/W ROBERT SIMONDS 689B OMAOPIO ROAD KULA MAUI, HI 96790

EDWARD L SIMONDS TTEE EDWARD L SIMONDS LIVING TST 7/27/2000 689B OMAOPIO ROAD KULA MAUI, HI 96790

EDWARD MEYER 2909 SOUTH OCEAN BLVD HIGHLAND BEACH, FL 33487

Customers

Get Started    TimesPeople lets you share and discover the best of NYT.    Recommend

Get Home Delivery    Log In    Register Now

- Home Page
- Today's Paper
- Video
- Most Popular
- Times Topics

**The New York Times**

## Business

Monday, January 4, 2010

- WORLD
- U.S.
- N.Y. / Region
- Business
- Technology
- Science
- Health
- Sports
- Opinion
- Arts
- Style
- Travel
- Jobs
- Real Estate
- Autos

- MEDIA & ADVERTISING
- WORLD BUSINESS
- SMALL BUSINESS
- YOUR MONEY
- DEALBOOK

- E-Mail
- Share
  - Linkedin
  - Digg
  - Facebook
  - Mixx
  - Buzz up!

# Searching the Madoff List

The list of customer account names found by the court-appointed trustee in the records of Bernard L. Madoff's wealth management firm, as well as names of people who contacted the trustee to say they believed they had been Madoff customers and wanted to file a claim. Some of the names on the list are those of lawyers, accountants, foundation trustees and agents who set up the accounts on behalf of the actual investors in the Madoff fund, which investigators are calling the biggest Ponzi scheme ever. Some people on the list have said publicly that they were included in error.

| Name | City | State | ZIP Code |
|---|---|---|---|
| Edward H Kohlschreiber | Stewartsville | NJ | 08886 |

| Name | City | State | ZIP Code |
|---|---|---|---|
| Edward H Kohlschreiber | Palm Beach | FL | 33480 |
| Edward I Speer | Boca Raton | FL | 33431 |
| Edward I Speer | New York | NY | 10165 |
| Edward I Speer C/O Noble & Speer | New York | NY | 10165 |
| Edward I Speer C/O Noble & Speer & Fulvio | New York | NY | 10165 |
| Edward I Speer Cpa | Boca Raton | FL | 33431 |
| Edward I Speer Cpa | Boca Raton | FL | 33431 |
| Edward I Speer, Cpa | Boca Raton | FL | 33431 |
| Edward J Harris | Chicago | IL | 60611 |
| Edward J Harris | Chicago | IL | 60611 |
| Edward J Harrold | Cockeysville | MD | 21030 |
| Edward J Harrold Jr | Pt Jefferson Station | NY | 11776 |
| Edward J Minskoff | New York | NY | 10019 |
| Edward L Samek | St Davids | PA | 19087 |
| Edward L Samek | Edison | NJ | 08820 |
| Edward L Simonds Trustee | Makawao | HI | 96768 |
| Edward L Simonds Trustee F/B/O | Kula Maui | HI | 96790 |
| Edward L Simonds Ttee | Kula Maui | HI | 96790 |
| Edward Meyer | Highland Beach | FL | 33487 |

« Previous 1 2 3 4 5 Next »

Search edward meyer    Search

Source: United States Bankruptcy Court

Home

- World
- U.S.
- N.Y. / Region
- Business
- Technology
- Science
- Health
- Sports
- Opinion
- Arts
- Style
- Travel
- Jobs
- Real Estate
- Autos
- Back to Top

Copyright 2010 The New York Times Company

- Privacy Policy
- Search
- Corrections
- RSS
- First Look
- Help
- Contact Us
- Work for Us
- Media Kit
- Site Map



# INDIVIDUAL RETIREMENT CUSTODIAL ACCOUNT

Under Section 408(a) of the Internal Revenue Code Form 5305-A (Rev. October 1992)  Department of the Treasury Internal Revenue Service - DO NOT FILE with the Internal Revenue Service. RAI version 1994.1

☐ AMENDMENT

## Depositor's Information

Name BDWARD MEYER

Address 7648 Parking Rd

City Boca Raton

County Broward     State FL    Zip 33496

Date of Birth 8/4/44    Soc.Sec.# 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

Home Phone 703 593    Business Phone /

## Custodian's Information

Retirement Accounts Incorporated
Post Office Box 3017, 663 Hereid Avenue
Winter Park, Florida 32790-3017

## Beneficiary Designation - Primary

Name MARCIA A. MEYER

Address 7648 Rexford Rd

City Boca Raton     State FL   Zip 33434

Date of Birth 5 6 33    Soc.Sec.# 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

Relationship Wife

## Beneficiary Designation - Secondary

Name

Date of Birth     Soc.Sec.#

## Spousal Consent

To be executed if Primary Beneficiary is other than spouse and Depositor is residing in a community property state. I consent to the above Beneficiary Designation.

Spousal Signature Marcia A. Meyer on 42 1-3, 94

## Representative Designation (Please see Article VIII)

Representative's Name
Firm Name
Firm Address
City     State   Zip
Broker/Dealer
Broker/Dealer Address
City     State   Zip
Representative's Phone #

## Initial Investment Instructions

The Depositor hereby instructs the Custodian to make the following investment(s). (Include description, dollar amount, and all special instructions.)

Pending deposit on

---

## Initial Investment Instructions (continued)

## Standing Investment Instructions

Optional - The Depositor hereby directs the Custodian to send all incoming cash to the following Institution/Firm.

Institution Name
Account Type
Address
City     State   Zip
Special Instructions

## Uninvested Cash

The Custodian may automatically sweep the Depositor's idle cash (i.e. any cash held without specific investment instructions) into an interest bearing account with the Custodian's parent institution in which deposits are insured by and up to the levels set by the Federal Deposit Insurance Corporation.

## IRA Program Selection

| Limited IRA _____ | Limited SEP-IRA _____ |
| Simple IRA _____ | Simple SEP-IRA _____ |
| Flexible IRA ✓ | Flexible SEP-IRA _____ |

## Check Enclosure Summary

| | |
|---|---|
| IRA Contribution for 19____ | $ |
| IRA Contribution for 19____ | $ |
| SEP Contribution for 19____ | $ |
| SEP Contribution for 19____ | $ |
| Cash Rollover Contribution | $ |
| Annual Account Fee* ($15 Limited, $25 Simple, $50 Flexible) | $ |
| Annual Administrative Fee* ($12.50 Limited, $25 Simple) | $ |
| Total Amount Payable to "Retirement Accounts, Inc." *These fees must be paid at time of application | $ 85 |

## Acknowledgement and Signature

- The Depositor whose name appears above is establishing an Individual Retirement Account under Section 408(a) to provide for his or her retirement and for the support of his or her beneficiaries after death.
- The Custodian named above has given the Depositor the Disclosure document required under the Regulations under Section 1.408-6 of the Code.
- The Depositor has assigned the custodial account (her)(none of) in cash.
- The Depositor and the Custodian agree to the Articles set forth on the reverse side of this form.

Depositor's Signature X _Edward Meyer_

Custodian's Signature

Date Established ____/____/____

Witness (if required)

**BEAR STEARNS**

126-95257-11
Bear Stearns IRA Account No.
06

## BEAR, STEARNS SECURITIES CORP.
## INDIVIDUAL RETIREMENT ACCOUNT APPLICATION

1. (Please Print)    IRA

EDWARD MEYER    8-9-17    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
Name    Date of Birth    Social Security No.

7648 REXPORD RD.
Mailing Address

BOCA RATON    FLA.    33434
City    State    Zip Code

(561) 488-3007    MARCIA MEYER
Telephone No.    Name of Working Spouse (If IRA for Nonworking Spouse)

---

2. (a) Initial Contribution:    (b) Check one:    (c) Check if applicable:

debit per account    ☐ Rollover  or  ☐ Transfer    ☐ SEP-IRA
(year)    $ _____    (If a Transfer, also complete a Bear Stearns
(amount)    -OR-    Transfer Form, which may be obtained from    -OR-
your Account Executive.)

---

3. Designation of Beneficiary: If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

MARCIA Meyer    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 (sst)    100%
(Primary)    ESTATE OF EDWARD MEYER    _____    _____
Name    Relationship    Social Security No.    Percentage

above    5/6/33
City    State    Zip Code    Date of Birth

4. (Additional)    ☐ Contingent Beneficiary: (Check one only)
Name    Relationship    Social Security No.    Percentage

_____    _____
Mailing Address    Date of Birth

_____    _____
City    State    Zip Code

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if not, my estate.

5. ☐ Date of Change of Beneficiary Designation:    ___/___/___
Month    Day    Year

6. Annual maintenance fee per account: $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 12 of the Custodial Agreement.) Fees are not prorated.

7. I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305-A (REV. JANUARY 1998), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (SECTION 25) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

# SCHIZER & SCHIZER

*Counselors at Law*

THREE NEW YORK PLAZA, NEW YORK, N.Y. 10004-2442

PHONE (212) 943-3340 ▪ FAX (212) 422-0158

ZEVIE B. SCHIZER
HAZEL G. SCHIZER

October 21, 1999

Ms. Diane Schroeder
10116 Harwood Lane
Charlotte, NC 28214

Re:  Cohmad Securities Corporation
Account No. 126-95257

Dear Ms. Schroeder:

Our client, Cohmad Securities Corporation ("Cohmad"), has requested that we reply to your letter dated October 8, 1999 with reference to the Estate of Edward Meyer. Your letter contained an authorization from Mr. Frank Meyer as Executor of the Estate of Edward Meyer. I would like to send copies of this letter and the enclosure to him. Please call me with his address or forward a copy of this letter and the enclosure to him.

Edward Meyer maintained Account No. 126-95257 with Cohmad Securities Corporation. This was an IRA account. The securities in the account, 103,009 shares of Ultimate Software Group Inc., were transferred as restricted stock from another broker. Cohmad understands that Mr. Meyer had a substantial position in Ultimate Software Group Inc. Cohmad had nothing to do with his acquisition of that stock.

Enclosed is a copy of the Bear, Stearns Securities Corp. Individual Retirement Account Application for the subject account. Cohmad clears through Bear Stearns Securities Corp. The beneficiary named in the enclosed Application, Marcia Meyer, has requested distribution of the account to her. Unless the Executor of the Estate of Edward Meyer, or his attorney, notifies me in writing next week of a legally sufficient objection to distribution of the account to Mrs. Meyer, the clearing broker will make distribution of the account to her.

Sincerely,

Zevie B. Schizer

ZBS:byg
Encl.
Priority Mail

COHMAD SECURITIES CORPORATION

ELIZABETH M. REILLY

10/8/99

Dear
 Mrs. Mayer,

      Enclosed are the papers
required to transfer the
Cohmad account into your
name. I have indicated
where you need to sign the
forms.

      Please call me if you
need any help.

                            Regards,

885 THIRD AVENUE   NEW YORK, NY 10022   (212) 230-2480

**AD LITEM 8**