## APPENDIX "A"

Marcia Quinn Financial Condition: July  _2_ , 1993.

### Total Assets

| | |
|---|---|
| 49 Shares of Capital Stock of Edward Meyer Enterprises, Inc. | $294,000.00 |
| IRA's | 10,000.00 |
| Assorted Jewelry | 50,000.00 |
| **Total** | $354,000.00 |

13

# Frank Meyer

November 2, 1999

Liz Riley
Conrad  c/o Bernard L. Madoff
885 Third Avenue
New York, NY 10022

Re:      Estate of Edward Meyer
         SS# 087052134

Dear Ms Riley:

I am writing as the court appointed Personal Representative of the above referenced estate. I have been advised that several of the heirs to the Estate of Edward Meyer feel that the documents naming Marcia Meyer as beneficiary to the aforementioned retirement account are not valid. They intend to dispute the distribution of any funds to Mrs. Meyer and have asked that I notify you of their intent and request that no funds be transferred until this dispute is resolved. Thank you for your cooperation.

Sincerely,

Frank Meyer

21535 MOUNT AETNA ROAD • HAGERSTOWN, MD • 21742
PHONE: 301 824 3488 • FAX: 301 824 3489

**AD LITEM 15**



FROM THE DESK OF
FRANK MEYER

9/26/99

Marcia,

If the enclosed letter is agreeable to you please return one signed copy to me. We can then have our attorney (who we choose on 10/5) draw up the formal agreement for all the children and you to sign. I think this is a fair settlement and will allow you to live in peace, without threats from the children and have a clear conscience. Please call with any comments or questions.

Yours truly,

Frank

AD LITEM 4

## APPENDIX "B"

Edward Meyer, Financial Condition:    July __2__, 1993.

### Total Assets

| | |
|---|---|
| IRA with SunBank/South Florida in trust for six children | $1,000,000.00 |
| Investments | 600,000.00 |
| 1st Mortgage holding | 230,000.00 |
| Securities—Dreyfuss Fund, AT&T, Ameritech, Pacific Telisis | 60,000.00 |
| 51 Shares of Capital stock of Edward Meyer Enterprises, Inc. | 306,000.00 |
| Total | $2,196,000.00 |

Plus furniture and personal effects



AD LITEM 11

3.   The Decedent also had two children (**CYNTHIA MEYER** and **DIANE SCHROEDER**) from his relationship with **DOROTHY SCHROEDER**.  The Decedent and **DOROTHY SCHROEDER** were never married.

4.   The Last Will and Testament of **EDWARD MEYER** was admitted to probate and there has been no action to challenge the validity of the Will.  (Exhibit 3)

5.   The Will devised everything to the Decedent's Revocable Trust.

6.   **EDWARD MEYER** created the **EDWARD MEYER REVOCABLE TRUST** on July 2, 1993, and the validity of this Trust has not been challenged.  (Exhibit 4)

7.   Under the provisions of the Trust, **MARCIA MEYER** is entitled to **EDWARD MEYER ENTERPRISES, INC.** outright, free and clear, and is entitled to all of the income from the Trust for her life.

8.   **MARCIA MEYER** and **FRANK MEYER** are the Co-Trustees of the Trust.

9.   In accordance with the Decedent's Last Will & Testament, **MARCIA MEYER** and **FRANK MEYER** were appointed as Personal Representatives of the Estate.

10.   **FRANK MEYER** resigned and **PETER MEYER** was appointed as Successor Co-Personal Representative.

11.   On February 9, 2001, the Court expanded the Administrator Ad Litem's authority and the Letters of Administration issued to **MARCIA MEYER** and **PETER MEYER** were suspended.   (Exhibit 1 & 2)

2

LAW OFFICES

# ERIK EDWARD JOH

PROFESSIONAL ASSOCIATION
4800 NORTH OCEAN BOULEVARD · SUITE 206
BOYNTON BEACH, FLORIDA 33435-7365

ERIK EDWARD JOH, ESQ.*
MARK D. McWILLIAMS, ESQ. CPA
*MEMBER OF FLORIDA AND NEW YORK BAR

TELEPHONE (561) 276-1006
PALM BEACH (561) 734-5099
TELECOPIER (561) 272-2793
LAWOFFICES@ERIKJOH.COM

CERTIFIED LEGAL ASSISTANTS
BETTEE M. COLLISTER
STEPHANIE L. BAUDO
DOROTHY SELL

December 3, 2003

Frank Meyer
11010 Sani Lane
Hagerstown, MD 21742

Peter Meyer
27 Arleigh Road
Great Neck, NY 11021

**Re:    Estate of Edward J. Meyer**

Dear Messrs. Frank & Peter Meyer:

Enclosed is the Order from the arbitration panel. The essential parts of the Order are:

1.  Marcia Meyer is the rightful owner of the IRA account;

2.  She receives the account balance, including interest at 4% from date of death;

3.  All claims by the Estate of Edward Meyer are denied;

4.  All claims by Bear Stearns are deemed moot;

5.  No costs or fees are assessed against the Estate, and the Estate will receive a refund of $1,200.00;

6.  The burden of the costs are placed upon Cohmad;

7.  Richard Spring walks away free and clear.

Considering the facts and the law, it is hard for me to believe that the Arbitration Panel ruled in favor of Marcia Meyer, but they did. This matter was referred to the Arbitration Panel by the Probate judge and has been fully litigated for the past three years. Accordingly, as Administrator Ad Litem I do not plan to take any further action.

Since the IRA was awarded to Marcia Meyer there are no other assets in the Estate to fund any other devises. Thus, the remaining beneficiaries are essentially disinherited and Edward Meyer's estate planning documents are rendered null and void.

Messrs. Frank & Peter Meyer
December 3, 2003
Page 2 of 2

If you believe you, as beneficiaries of the Estate, have individual causes of action against Marcia Meyer, Richard Spring, Bear Stearns and/or Cohmad you should consult with an attorney.    I cannot represent any of you individually.    This does not mean that you do not have a case it only means that my firm is unable to represent you.

If you believe you have a case it is subject to one or more statutes of limitations and notice provisions pursuant to Florida Statutes. Your failure to appropriately file your case within the applicable time limitations would forever bar your claim.

It is my recommendation that if you wish to pursue this matter, then you should immediately contact another law firm. When discussing your case with another law firm, you should have them advise you relative to the applicable time limitations of your potential case.

Very truly yours,

Mark D. McWilliams, Esq.

File No.: MEY06
Cc: Frederick C. Heidgerd, Esq.
Patricia Meyer Campbell
Rachel Meyer
Cynthia Meyer

IN THE CIRCUIT COURT
OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
PROBATE DIVISION
CASE NO. CP-01-4073-1Y
DIANE SCHROEDER, individually
and as beneficiary of Edward Meyer,
deceased,
        Plaintiff,

-vs-

MARK McWILLIAMS, as administrator
ad litem of the Estate of Edward Meyer,
deceased, MARCIA MEYER, individually,
and as appointed co-personal representative
of the Estate of Edward Meyer, deceased, and
BEAR STEARNS SECURITIES CORPORATION,
a foreign corporation,
        Defendants.

---

HEARING
BEFORE THE HONORABLE GARY L. VONHOF

Friday, December 12, 2003
8:50 - 9:05 a.m.

South County Courthouse
200 W. Atlantic Avenue
Delray Beach, Florida 33444

Reported by:
Barbara Bolton, RPR
Notary Public, State of Florida
Esquire Deposition Services
Boca Raton Office
Phone - 800.357.6952
561.338.0955

---

APPEARANCES:

On behalf of Marcia Meyer:

CHARLES J. BENNARDINI, ESQUIRE
KATZMAN, WASSERMAN & BENNARDINI, P.A.
7900 Glades Road
First Floor
Boca Raton, Florida 33434

On behalf of Mark McWilliams:

MICHAEL J. LAVERY, ESQUIRE
4600 North Ocean Boulevard
Boynton Beach, Florida 33435
        and
MARK D. MC WILLIAMS, ESQUIRE
4600 North Ocean Boulevard
Boynton Beach, Florida 33435

On behalf of Cohmad:

COREN HARRIS STERN, ESQUIRE
MORGAN, LEWIS & BOCKIUS, LLP
200 S. Biscayne Boulevard
Miami, Florida 33131

---

Page 3

1      PROCEEDINGS
2         - - -
3      MR. BENNARDINI: Good morning, Your
4   Honor. I'm Charlie Bennardini. I'm here on
5   behalf of Arbitration Claimant Marcia Meyer.
6   May it please the Court, four score and seven
7   years ago, or at least it seems, on
8   April 24th, 2002 you stayed this matter based
9   upon a motion to compel arbitration by
10  Respondents Bear Stearns and Cohmad. The case
11  before you then was Diane Schroeder, who's
12  represented by Fritz Heidgerd. Fritz is not
13  coming today, has various claims against my
14  client for fraudulently causing an application
15  for an IRA to be changed, and the beneficiary
16  block was changed by a gentleman named Richard
17  Spring who the Estate of Edward Meyer has sued
18  for changing that application. It was an
19  application filled out on February 2nd, 1999
20  where Ed Meyer was opening a new IRA with
21  Cohmad Securities Corporation, a New York
22  company. To make a long story really short,
23  Richard Spring, Cohmad's agent, was a friend
24  of Ed Meyer. Together they discussed on the
25  phone this IRA application which had initially

Page 4

1   listed as the beneficiary the Estate of Edward
2   Meyer. Richard Spring told his friend if you
3   do that it's going to have grave adverse
4   consequences, you should list your wife as the
5   beneficiary. And this is the evidence that
6   came out before the Arbitration Panel.
7      Edward Meyer says, oh, I didn't know
8   that, or words to that effect, change it.
9   Now, the application is actually in front of
10  Richard Spring at Richard Spring's home; Ed
11  Meyer's on the phone at Ed Meyer's home.
12  Richard Spring lines out Edward Meyer, writes
13  in Marcia Meyer, the wife, and puts in the
14  initials EM for Edward Meyer. That's the long
15  story made short.
16     You stayed that action as well as all of
17  the -- there was a dec action before you as to
18  who is the rightful beneficiary. You stayed
19  all actions against Bear Stearns and Cohmad,
20  including that dec action. There were some
21  breach of fiduciary duty and negligence
22  actions as well. Sent it to arbitration on
23  April 24th, 2002. Finally went before an
24  arbitration panel October 27th through October
25  30, 2003. We now have a confirmed award which

*Exhibit*

Page 5

1 is attached to the proposed final judgment
2 before Your Honor.
3     Our position is this has gone on long
4 enough. The Arbitrators were unanimous. The
5 evidence was unrebutted that the intent of
6 Edward Meyer was that the IRA would go to his
7 wife Marcia Meyer. Ed Meyer's now deceased.
8 She's waiting to get the funds. The
9 Arbitrators ordered that that he transferred
10 by December 29th, 2003. The NASD, which is
11 the arbitration facility before this occurred,
12 where this occurred, requires that Cohmad
13 satisfy the award by December 29th, 2003.
14 That satisfaction includes transferring the
15 IRA assets to Marcia Meyer, and there's also
16 approximately 150 some thousand dollars, the
17 exact number is set forth in the final
18 judgment, the proposed final judgment, which
19 is continuing to accrue interest now at about
20 $145 per day.
21     We ask that you confirm the award.
22 Mr. Lavery is going to get up here and tell
23 you he's got ninety days, based upon the
24 Florida Arbitration Code, to challenge the
25 award. Our position is that this has gone on

Page 7

1 going to have to convince the Court that there
2 was corruption, fraud or undue means,
3 partiality by an arbitrator or that the
4 arbitrators exceeded their power.
5     Then 682.14 says to modify or correct an
6 award there has to be an evident
7 miscalculation of figures, that the
8 arbitrators awarded upon a matter not
9 submitted to them. Well, Your Honor submitted
10 it to them on April 24, 2002. And that the
11 award is imperfect as a matter of form.
12     Now, although the Code does allow them
13 ninety days to challenge the award based upon
14 those grounds, this has just gone on long
15 enough and they have no grounds to challenge
16 it. So based upon the Carpet Concepts case
17 versus Architectural Concepts case, we believe
18 that the Court should confirm the award and
19 enter a final judgment in Ms. Meyer's favor.
20     Now, Mr. Lavery is going to be here today
21 asking you for time, asking you for the ninety
22 days. He's got no active motion before you
23 today, Your Honor. There is no motion to stay
24 this confirmation. There's no motion for an
25 enlargement of time. So we would ask that

Page 6

1 long enough. There's been too much money
2 expended in litigation. But the most
3 important part of that is I had sent Your
4 Honor a read-ahead package, I don't know if
5 you got it, but -- and I have it for you now
6 if I may bring it to you if you would like to
7 follow along real quickly, the statutes which
8 govern what we're here for today. 683.12 --
9 683.12 says that upon application to the
10 arbitration the Court shall confirm an award,
11 and then it lists certain exceptions in 682.13
12 and .14. Those exceptions are extremely
13 limited. 682.13 says the award has to be
14 procured by corruption, fraud or other undue
15 means, that there was evident partiality by an
16 arbitrator, that the arbitrators exceeded
17 their powers, that the arbitrators refused to
18 postpone the hearing, and as to that one there
19 was no request to postpone the hearing, and
20 that there was no agreement for arbitration.
21 Well, as to D and E they go out the window
22 right away. There was no request to postpone
23 the hearing, and Your Honor, in your order of
24 April 24th, 2002, ordered this arbitration
25 based upon the agreement. So Mr. Lavery is

Page 8

1 because there's no pending motion by the
2 Estate, and respectfully any challenge they
3 would make to this, based upon the very narrow
4 issues that I just set forth to Your Honor, in
5 our opinion respectfully will be subject to
6 57.105 motion, we ask the Court to confirm the
7 award and enter the final judgment that I've
8 submitted to the Court. Thank you, Your
9 Honor.
10     THE COURT: Okay. Michael?
11     MR. MC WILLIAMS: Actually --
12     THE COURT: Okay. Mark.
13     MR. MC WILLIAMS: I'm going first.
14     MR. LAVERY: My surrogate, Your Honor.
15     THE COURT: Okay.
16     MR. LAVERY: Actually my client.
17     MR. MC WILLIAMS: Well, Your Honor, my
18 argument is real easy. I'm not here
19 necessarily to challenge the award one way or
20 the other. We just got the award two weeks
21 ago. There's six beneficiaries. I'm in the
22 middle. I'm a court-appointed administrator
23 ad litem. There's Marcia Meyer over here, six
24 beneficiaries. We got the award. I then
25 forward it to the six beneficiaries. I've

Page 9

1  heard from one of them, and that's all I've
2  heard from. Under the law that he sites
3  there's ninety days that we have to act, and
4  he just wants you to look through this
5  ninety-day period of time. The statute he
6  quotes 682.112 says upon application of a
7  party to arbitration, the Court shall confirm
8  an award unless within the time limits
9  hereafter imposed. We have ninety days under
10  the law to do something. I know Charlie
11  thinks that there's no grounds to appeal, no
12  grounds to do anything. We haven't even had a
13  chance to digest this. I haven't heard from
14  any of the beneficiaries. I heard from Fritz
15  Heidgerd who represents one. He just sent out
16  a letter this week to his beneficiary in North
17  Carolina. All six of them live out of state.
18  They live in Buffalo; they live in New Jersey;
19  Philadelphia.
20  All I asked for was an extra twenty days.
21  We're here because they wouldn't grant me at
22  least till after the first of the year so I
23  could give the beneficiaries a chance to
24  respond to me. They're being disinherited.
25  The law says ninety days. All I'm asking for

Page 11

1  Honor?
2  THE COURT: Are you in this as well,
3  Michael?
4  MR. LAVERY: Your Honor, I just -- I have
5  three cases that I've given to opposing
6  counsel. I do represent Mark. These are
7  three cases. Basically those cases stand for
8  the proposition, Your Honor, that until that
9  ninety-day period has run the confirmation of
10  the award is not ripe, and I just highlighted
11  it very, you know, very simply and shortly,
12  and that's basically all I really have to say.
13  In regards to all of the other
14  representations there was some representations
15  that were made in regard to what the evidence
16  was. There was some issue in regard to what
17  the evidence was, Your Honor. The matter was
18  contested. And we frankly -- we received the
19  order -- I received the order in my office the
20  Monday after Thanksgiving. That means that
21  they're asking for essentially confirmation
22  within -- or I mean an award of final judgment
23  within ten days of the date that I received
24  it. I think we ought to have the right to at
25  least look to see if we have issues in regard

Page 10

1  is what's statutorily required. I'm not
2  asking you to make a determination one way or
3  the other. Just give me the time period,
4  their due process rights. I didn't think it
5  was that big a deal. It's right in the
6  statute. It says within ninety days we have
7  that right. That's all that I was asking for
8  is to stay the execution until the ninety days
9  have run so I can at least hear back from the
10  beneficiaries so I keep myself out of the
11  middle. I don't know if there's consulting
12  attorneys. I don't even know if they've
13  received it. With the mail, the holidays, who
14  knows if they've received it. But I know
15  they're going to be mad, they're disinherited.
16  I don't have an opinion who gets the money or
17  not. I just want to make sure I stay out of
18  the middle and we follow the law. We've
19  followed the law so far. We went to
20  arbitration. We went through the whole
21  process. Now there's ninety days that we've
22  been provided under the law. That's all I'm
23  asking.
24  THE COURT: Okay.
25  MR. BENNARDINI: A short rebuttal, Your

Page 12

1  to vacating that, and frankly I think that the
2  administrator ad litem has to be protected
3  because these beneficiaries, as he stated, are
4  being disinherited.
5  THE COURT: Go ahead.
6  MR. STERN: Your Honor, if I may, my name
7  is Corrie Stern. I represent Cohmad. I'd
8  just like to say that we are in full support
9  of the confirmation of this award. We would
10  like to pay the award as soon as possible,
11  today, and as an initial matter, just so you
12  know, I'm filling in for Alex Sabo who could
13  not make it today, and it seems to me that --
14  I appreciate counsel's position in that he
15  wants to have a chance for the beneficiaries
16  to respond, but if we look at the basis for
17  which they could overturn the award, whether
18  or not the beneficiaries concede the award
19  will not really bear upon whether or not the
20  award can be overturned under the applicable
21  law. Counsel knows whether or not there was
22  bad faith or whether or not arbitrators'
23  misconduct would allow this award to be
24  overturned. And I just don't see it.
25  That being said, we are concerned because

3 (Pages 9 to 12)

Page 13

1  interest is accruing on the award. We want to
2  pay it. We're looking for a way to cut it
3  off. If the Court has an idea, we'd love to
4  hear it, but as it stands we're fully -- fully
5  ready to comply.
6      THE COURT: Got you. Okay. Go ahead.
7      MR. BENNARDINI: Here's the problem,
8  Judge, and I empathize with --
9      MR. MC WILLIAMS: Mark.
10     MR. BENNARDINI: Mark, I know your name.
11 I emphasize with Mark, but we've got an IRA
12 that's been hanging out there since September
13 9th, 1999 with who's the owner. Well, now we
14 know who the owner is. We've had an
15 arbitration panel unanimously tell us.
16 Administratively we're going to cause Cohmad
17 and Bear Stearns to continue to hold this
18 account for three more months when they've
19 been ordered by an arbitration panel to turn
20 it over by December the 29th, 2003. We have
21 interest running at $145 per day pursuant to
22 the award. And we've got Mr. McWilliams is
23 here talking about the beneficiaries. The
24 beneficiaries have no standing here. The
25 Estate has lost in the arbitration proceeding.

Page 15

1  back to you as soon as I can.
2      MR. BENNARDINI: Thank you, Your Honor.
3      MR. LAVERY: Thank you, Your Honor.
4      MR. BENNARDINI: Your Honor, I also sent
5  a package to your office yesterday which is a
6  little more thorough. It should be in your
7  mail.
8      THE COURT: Okay.
9      MR. LAVERY: Your Honor, there are some
10 issues -- if you should get to that point of
11 entering a confirmation award, there are some
12 issues -- at final judgment there are some
13 issues in regard to the form of the document
14 if it has been submitted. Did you --
15     MR. BENNARDINI: It's in his package.
16     MR. LAVERY: There are some issues that
17 need to be addressed that haven't been
18 addressed so far if you go there.
19     MR. BENNARDINI: Well, what are they so
20 I --
21     MR. LAVERY: Well, one, the arbitration
22 award --
23     THE COURT: Not in front of me here.
24     MR. LAVERY: Yes, sir. Thank you.
25

Page 14

1  The grounds to overturn it are very narrow.
2  At the least we would ask Your Honor if you
3  are thinking at all about giving them more
4  time, my client for tax reasons would like to
5  resolve this in this calendar year. Now,
6  unfortunately the holidays are getting in the
7  way. December 29th is the cutoff date by the
8  arbitration panel. I don't know if the
9  court's in session the week after the
10 Christmas holiday or not. We would ask to
11 have it resolved by December 29th. If they
12 have grounds to set aside the award, let's do
13 it by December 29th. Worst case scenario for
14 us, we would ask that we do it soon after the
15 first of the year. But I don't think we
16 should -- Cohmad's already been ordered to pay
17 a bunch of money. They've already been
18 ordered to transfer it. Now we're going to
19 ask them to continue to hold the account?
20 We're ready to receive it. We've got an
21 account opened up to receive it. It's time
22 for justice to move on, Your Honor.
23     THE COURT: Let me take a look at
24 everything you've given me. I just saw this
25 for the first time this morning. And I'll be

Page 16

1      (Thereupon, the hearing was concluded at
2  9:05 a.m.)
3
4
5
6
7      C E R T I F I C A T E
8         . . .
9  THE STATE OF FLORIDA, )
10 COUNTY OF PALM BEACH. )
11
12     I, Barbara Bolton, Registered
13 Professional Reporter, certify that I was
14 authorized to and did stenographically report the
15 foregoing proceedings and that the transcript is a
16 true record.
17     Dated this 16th day of December, 2003.
18
19
20
21     BARBARA BOLTON, RPR
22
23
24
25

LAW OFFICES

# FREDERICK C. HEIDGERD, P.A.

600 WEST HILLSBORO BOULEVARD
SUITE 520
DEERFIELD BEACH, FL 33441-1611

FREDERICK C. HEIDGERD

TELEPHONE (954) 429-3115
FACSIMILE (954) 429-3120

December 16, 2003

**VIA E-MAIL and U.S. MAIL**
Ms. Diane Schroeder
10116 Harwood Lane
Charlotte, NC 28214

> Re:   Estate of Edward J. Meyer
>        Case No. CD 99-4504

Dear Diane:

By now, you should have received and reviewed the arbitration award which, in standard practice, is to be confirmed by the court. I enclose a copy of the Order of the court delaying the confirmation. In essence, in the award the estate did not receive any of the IRA monies and the award was given to Marcia of the complete amount in the account. The estate was totally unsuccessful in pursuing its claims. The estate did not receive any fee or interest awards against it. The brokerage house received that judgment and will have to pay interest and some fees to Marcia.

The ad litem has taken the position that since there is minimal money remaining in the estate, there are no further matters to administer and the estate should be closed forthwith, subject to the matters outlined herein. As we have discussed, the adversary is still pending. However, the ad litem is only a nominal party in that proceeding.

At this juncture, there may not be any appeal taken by the ad litem. We have no right to make an argument one way or another in any event as you were not a party to the arbitration. Under those circumstances, the difficulty that we have at this juncture is that we have not reached the statute of limitations on the mutual claims against us that runs in February.

That leaves us with the same exact situation that we were in before the arbitration proceedings when we had to shut down from actively proceeding on any matters until the running of that statute of limitations. I do not know when Mr. McWilliams will be proceeding with discharge proceedings. We will object to those to the extent that there is an adversary pending. However, we cannot proceed on your behalf in the adversary until the statute runs based upon my directions from the Florida Bar and the malpractice claims attorney appointed to represent me in this matter.

Again, I do not believe that I have done anything wrong nor does the malpractice carrier, but ethically there is a conflict arising from the fact that I might be brought into proceedings for "using" the transcripts, an asserted violation of the Florida law arising from your conduct of

taping the telephone conversations. There were threats of suits under the statutory claims against both of us.

In the event that I am required to proceed with any matters arising from a filing by another party, I will be similarly forced to withdraw. Again, this is the same situation we were in before when we had our meetings on the conflict situation.

The estate possibly could be appealing and making other determinations based on the possibility of the improper conduct on the part of the arbitration panel. I have been advised by the ad litem that the arbitrators spoke to Marcia Meyer outside the presence of the other parties. This could be a violation of arbitration rules. I do not know how innocent that conduct was, but again, you have no standing to contest that. The arbitrator will be making a decision on whether to appeal within the next approximately thirty-five (35) days.

Obviously, where no money goes into the estate, everyone is extremely disappointed. The award totally threw out your father's estate planning for his children. However, there is also no question that your father failed to properly tie things up to confirm his estate plan and the estate, though ad litem appointed as a result of our actions, was the appropriate party to proceed on these claims.

I will be evaluating the matter across the board in short order, but at this juncture I wanted to make sure that you had some awareness of my thoughts on this matter.

Yours very truly,

Frederick C. Heidgerd, Esq.

FCH/tc

EDWARD & M. IA MEYER                                        OMB No. 1545-0074    Page 2

| | | | |
|---|---|---|---|
| 33 | Amount from line 32 (adjusted gross income) | 33 | 151,375. |

34a Check if: [X] You were 65 or older. [ ] Blind; [ ] Spouse was 65 or older. [ ] Blind
   Add the number of boxes checked above and enter the total here ▶ 34a  | 1 |

b If you are married filing separately and your spouse itemizes deductions,
   or you were a dual-status alien, see page 18 and check here ▶ 34b [ ]

35 Enter the larger of your:
   Itemized deductions from Schedule A, line 28, OR
   Standard deduction shown below for your filing status. But see page 18
   if you checked any box on line 34a or 34b or someone can claim you as a
   dependent.
   • Single - $4,150   • Married filing jointly or Qualifying widow(er) - $6,900
   • Head of household - $6,050   • Married filing separately - $3,450       | 35 | 44,620. |

| 36 | Subtract line 35 from line 33 | 36 | 106,755. |
| 37 | If line 33 is $90,900 or less, multiply $2,650 by the total number of exemptions claimed on line 6d. If line 33 is over $90,900, see the worksheet on page 19 for the amount to enter | 37 | 5,300. |
| 38 | Taxable income. Subtract line 37 from line 36. If line 37 is more than line 36, enter -0- | 38 | 101,455. |
| 39 | Tax. See page 19. Check if any tax is from a [ ] Form(s) 8814 b [ ] Form 4972 ▶ | 39 | 23,107. |

**Credits**

| 40 | Credit for child and dependent care expenses. Attach Form 2441 | 40 | | | |
| 41 | Credit for the elderly or the disabled. Attach Schedule R | 41 | | | |
| 42 | Adoption credit. Attach Form 8839 | 42 | | | |
| 43 | Foreign tax credit. Attach Form 1116 | 43 | | | |
| 44 | Other. Check if from a [ ] Form 3800 b [ ] Form 8396 c [ ] Form 8801 d [ ] Form (specify) | 44 | | | |
| 45 | Add lines 40 through 44 | | 45 | 23,107. |
| 46 | Subtract line 45 from line 39. If line 45 is more than line 39, enter -0- | | 46 | 10,276. |

**Other Taxes**

| 47 | Self-employment tax. Attach Schedule SE | 47 | 382. |
| 48 | Alternative minimum tax. Attach Form 6251 | 48 | |
| 49 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 49 | |
| 50 | Tax on qualified retirement plans (including IRAs) and MSAs. Attach Form 5329 if required | 50 | |
| 51 | Advance earned income credit payments from Form(s) W-2 | 51 | |
| 52 | Household employment taxes. Attach Schedule H | 52 | |
| 53 | Add lines 46 through 52. This is your total tax | 53 | 33,765. |

**Payments**

Attach Forms W-2, W-2G, and 1099-R on page 1.

| 54 | Federal income tax withheld from Forms W-2 and 1099 | 54 | 15,000. | | |
| 55 | 1997 estimated tax payments and amount applied from 1996 return | 55 | | | |
| 56a | Earned income credit. Attach Schedule EIC if you have a qualifying child | 56a | | | |
| b | Nontaxable earned income: amount ▶ and type ▶ | | | | |
| 57 | Amount paid with Form 4868 (request for extension) | 57 | 5,000. | | |
| 58 | Excess social security and RRTA tax withheld (see page 27) | 58 | | | |
| 59 | Other payments. Check if from a [ ] Form 2439 b [ ] Form 4136 | 59 | | | |
| 60 | Add lines 54, 55, 56a, 57, 58 and 59. These are your total payments | | 60 | 20,000. |

**Refund**

Have it directly deposited! See page 27 and fill in 62b, 62c, and 62d.

| 61 | If line 60 is more than line 53, subtract line 53 from line 60. This is the amount you OVERPAID | 61 | |
| 62a | Amount of line 61 you want REFUNDED TO YOU ▶ | 62a | |
| b | Routing number ___ c Type: [ ] Checking [ ] Savings |
| d | Account number ___ |
| 63 | Amount of line 61 you want APPLIED TO YOUR 1998 ESTIMATED TAX ▶ | 63 | |

**Amount You Owe**

| 64 | If line 53 is more than line 60, subtract line 60 from line 53. This is the AMOUNT YOU OWE. For details on how to pay, see page 27 | 64 | 13,765. |
| 65 | Estimated tax penalty. Also include on line 64 | 65 | |

**Sign Here**

Keep a copy of this return for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature     Date     Your occupation    EXECUTIVE

Spouse's signature. If a joint return, BOTH must sign.   Date   Spouse's occupation   BOOKKEEPER

**Paid Preparer's Use Only**

Preparer's signature     Date     Check if self-employed [ ]   Preparer's social security no. 062 36 1343

Firm's name (or yours if self-employed) and address   KUSTAL & FERBER, PC   EIN 13 3419695
347 FIFTH AVENUE, SUITE 709
NEW YORK, NY     ZIP code 10016

** INTEREST NOT INCLUDED                                    563.
** PENALTY NOT INCLUDED                                     413.

                          6     **** TOTAL DUE         14,741.

COPY

REVOCABLE   INTER VIVOS   TRUST   AGREEMENT

Between

EDWARD MEYER as Settlor

and

# EDWARD MEYER as Trustee

Establishing
A Revocable   Living Trust
Known As

## THE EDWARD   MEYER   REVOCABLE   LIVING   TRUST

dated   July 2, 1993

Prepared   by:
DONALD   E. HAHAMOVITCH
Attorney   at Law
7770   West   Oakland   Park   Boulevard
Suite   470 - NationsBank   Building
Sunrise,   Florida   33351-6746

EXHIBIT "B"



# REVOCABLE INTER VIVOS TRUST AGREEMENT

## THE EDWARD MEYER REVOCABLE TRUST

This Trust Agreement made this 2nd day of July, 1993, between EDWARD MEYER, hereinafter referred to as the Settlor, and EDWARD MEYER, hereinafter referred to as Trustee, creating a revocable inter vivos, grantor trust known as THE EDWARD MEYER REVOCABLE TRUST, was executed this date, in Sunrise, in the County of Broward, and in the State of Florida, revokes any and all prior living trust agreements made by the Settlor, and in consideration of mutual covenants, the Settlor and the Trustee agree:

### ARTICLE I

The Settlor has paid over, assigned, granted, conveyed, transferred and delivered, and by this Agreement does hereby authorize the payment, assigning, granting, conveying, transferring and delivering to the Trustee the property described in Schedule A annexed hereto, and reserves the right for any person to increase this trust property, and has caused or will cause the Trustee to be designated as beneficiary of all life insurance policies, if any, as described in Schedule B, annexed and made a part hereof. These insurance policies, and any other insurance policies that may be delivered to the Trustee hereunder or under which the Trustee may

THE EDWARD MEYER REVOCABLE TRUST

Initials: _Edward Meyer_

be designated as beneficiary, the proceeds of all such policies being payable to the Trustee. and any other property that may be received or which has been received by the Trustee, as invested and reinvested (hereafter refer. ' to as the "Trust Estate"), shall be held, administered and distributed by the Trustee as set forth below.

## ARTICLE II

During the Settlor's life, the Settlor shall have all the rights under any life insurance policies payable to the Trustee; including the right to change the beneficiary, to receive any dividends or other earnings of such policies without accountability therefor to the Trustee or any beneficiary hereunder, and may assign any policies.

## ARTICLE III

The Trustee shall hold, manage, invest and reinvest the Trust Estate (if any requires such management and investment) and shall collect the income, if any, therefrom and shall dispose of the net income and principal as follows:

3.01    During the lifetime of EDWARD MEYER, "The Settlor", the Trustee shall pay to or apply for the benefit of EDWARD MEYER, "The Settlor", all the net income from this Trust.

3.02    During the lifetime of the settlor, the Trustee may pay to or apply for the benefit of the Settlor such sums from the principal of this Trust as in his sole discretion shall be

THE EDWARD MEYER REVOCABLE TRUST

Initials:    _____
Edward Meyer

deemed necessary or advisable from time to time for the medical care, comfortable maintenance and welfare of the Settlor, and Settlor's intended wife, MARCIA QUINN, taking into consideration to the extent the Trustee deems advisable, any other income or resources of the Settlor known to the Trustee.

3.03    Subject to the terms of the Pre-Nuptial Agreement entered into this day, between the Settlor and his intended wife, MARCIA, the Settlor may at any time during his lifetime, and from time to time withdraw all or any part of the principal of this Trust, free of trust, by delivering an instrument in writing; duly signed, to the Trustee, describing the property or portion thereof desired to be withdrawn.    Upon receipt of such instrument, the Trustee shall thereupon convey and deliver to the Settlor, free of trust, the property described in such instrument.

### ARTICLE IV

Subject to the terms of the Pre-Nuptial Agreement entered into this day between Settlor and his intended wife, MARCIA, the Settlor may, by signed instruments delivered to the Trustee during the life of the Settlor: (1) withdraw property from this Trust in any amount and at any time upon giving reasonable notice in writing to the Trustee; (2) add other property to the Trust; (3) change the beneficiaries, their respective shares and the plan of distribution; (4) amend this Trust Agreement in any other respect; (5) revoke this Trust in its entirety or any provision therein;

THE EDWARD MEYER REVOCABLE TRUST

Initials:  _____
Edward Meyer

Page 3 of 20 Pages



provided, however, the duties or responsibilities of the Trustee
shall not be enlarged without the Trustee's consent.

### ARTICLE V

After the death of the Settlor, the Trustees, if in their
discretion they deem it advisable, may pay all or any part of the
Settlor's funeral expenses, legally enforceable expenses of
administration of Settlor's estate, any allowances by Court order
to those dependent upon the settlor, if any, any estate,
inheritance, succession, death or similar taxes payable by reason
of the Settlor's death, together with any interest thereon or other
additions thereto, without reimbursement from the Settlor's
personal representative or administrator, from any beneficiary of
insurance upon the Settlor's life, or from any other person. All
such payments, except of interest, shall be charged generally
against the principal of the Trust Estate includable in the
Settlor's estate for Federal estate tax purposes and any interest
so paid shall be charged generally against the income thereof,
provided, however, any such payments of estate, inheritance,
succession, death or similar taxes shall be charged against the
principal, and any interest so paid shall be charged against the
income thereof. The Trustee may make such payments directly or may
pay over the amounts thereof to the personal representatives or
administrators of the Settlor's estate. Written statements by the
personal representatives or administrators of such sums due and

THE EDWARD MEYER REVOCABLE TRUST

Initials: _Edward Meyer_

Page 4 of 20 Pages

payable by the estate shall be sufficient evidence of their amount and propriety for the protection of the Trustees and the Trustees shall be under no duty to see to the application of such payments.

### ARTICLE VI

6.01 Upon the death of the Settlor, the Trust hereby created shall become irrevocable and shall not thereafter be altered or amended, and thereafter, the Trustee shall hold, manage, invest and reinvest the Trust Estate (if any requires such management and investment) and shall collect the income, if any, therefrom and shall dispose of the principal as follows:

A) The Settlor's shares in Edward Meyer Enterprises, Inc., not already owned by MARCIA QUINN, the intended wife of the Settlor, shall be distributed to the said MARCIA QUINN.

B) To DOROTHY SCHROEDER, the sum of Eighty Thousand Dollars ($80,000.00). In the event Dorothy Schroeder predeceases the Settlor, this provision shall lapse.

C) The remainder of the principal, and all income therefrom, shall remain in trust, until the death of MARCIA QUINN, the intended wife of the Settlor.

6.02 During the lifetime of MARCIA QUINN, the intended wife of the Settlor, the Trustees shall pay to or apply for the benefit of the said MARCIA QUINN, all the net income of the remainder of this Trust.

6.03 Upon the death of MARCIA QUINN, the Trustee shall

THE EDWARD MEYER REVOCABLE TRUST

Initials: _EM_
Edward Meyer

Page 5 of 20 Pages

first pay the following:

A)   To FRANK MEYER, the son of the Settlor, the sum of Fifty Thousand Dollars ($50,000.00), per stirpes.

B)   To PATRICIA MEYER CAMPBELL, daughter of the Settlor, the sum of Fifty Thousand Dollars ($50,000.00), per stirpes.

C)   To RACHEL MEYER, daughter of the Settlor, the sum of Fifty Thousand Dollars ($50,000.00), per stirpes.

D)   To DIANA MEYER, daughter of the Settlor, the sum of Fifty Thousand Dollars ($50,000.00), per stirpes.

E)   To CYNTHIA MEYER, daughter of the Settlor, the sum of Fifty Thousand Dollars ($50,000.00), per stirpes.

F)   All the remainder of the trust property, whether real, personal or mixed, tangible or intangible, wheresoever situate, or in which the Settlor may have any interest, or over which the Settlor may have any power of appointment, to FRANK MEYER, PATRICIA MEYER CAMPBELL, PETER MEYER, RACHEL MEYER, DIANA MEYER and CYNTHIA MEYER, the children of the Settlor, in equal shares, per stirpes, after paying from the Trust property all the estate taxes owing as a consequence of these provisions.  Settlor declares that the affect of this clause 6.03 is to give all his children equal shares in his estate except that his son, PETER MEYER, shall receive Fifty Thousand Dollars ($50,000.00) less than his other children, having amply provided for PETER otherwise during the Settlor's life.

THE EDWARD MEYER REVOCABLE TRUST

Initials: _____
Edward Meyer

Page 6 of 20 Pages

6.04   The Trust shall then be terminated.

## ARTICLE VII

### POWER OF TRUSTEE

7.01   Settlor waives compliance by the Trustee with the provisions of the Trust Account Law, which is Chapter 737 of the Florida Statutes, as that chapter may now exist or may be amended hereafter, and waives compliance with any other law requiring qualification of Trustees or administration or accounting by Trustees under the supervision of any Court. Should the Trustee elect to be required to establish his or her qualifications with any Court as to every trust which may be created herein, Settlor waives notice to all beneficiaries of the proceedings to establish the qualifications of the Trustee.

7.02   It is Settlor's intention to grant to Trustees and their successors the power to deal with all of the trust property as freely as Settlor could individually in the handling of his own affairs. It is further the intention of the Settlor that the Trustees or their successors not be hampered in their duties by fear of violating any laws of the State of Florida or any other state; therefore, it is Settlor's declared intent that Trustee or any Successor Trustee not be bound by such laws, and that the only requirement which Settlor puts upon them or their successors is that they act in good faith as fiduciaries.

7.03   The Trustee, any successor Trustees and parties

THE EDWARD MEYER REVOCABLE TRUST

Initials: _____
Edward Meyer

Page 7 of 20 Pages

serving in their stead shall have all the powers and protection granted to Trustees by statute at the time of application, including but not limited to the Prudent Trustee Rule, Uniform Principal and Income Law and Uniform Trust Administration Law, and, in addition, and not in limitation of any common law or statutory authority, and without application to any Court, Trustee, his successors and parties serving in his stead, will have the powers and responsibilities described below, to be exercised in their sole discretion. Settlor specifically waives the provisions of Florida Statutes, Section 738.12, relating to underproductive property, and Section 738.03, relating to income, principal and charges.

7.04    Settlor hereby grants to the Trustee of the trust established hereunder (including any substitute or Successor Trustee) the continuing absolute discretionary power to deal with any property, real or personal, held in the Trust Estate as freely as Settlor might in the handling of his own affairs. Such power may be exercised independently and without prior or subsequent approval of any Court or judicial authority and no person dealing with the Trustee or any Successor Trustee shall be required to inquire into the propriety of any of their actions nor see to the application of the proceeds of any sale or loan. Without in any way limiting the generality of the foregoing, Settlor hereby grants to the Trustee hereunder, the following specific powers and authority which are in addition to and not in substitution of any

THE EDWARD MEYER REVOCABLE TRUST

Initials: _____
Edward Meyer

Page 8 of 20 Pages

powers conferred by law on Trustees:

A.    To compromise, settle or adjust any claim or demand (including taxes) in favor of or against the Trust Estate.

B.    To retain, in their absolute discretion and for such period as to them shall seem advisable, any security or other property (real or personal) held in this Trust by the Trustees at the time of Settlor's death and to exchange any such security or property for other securities or properties and to retain such items received in exchange without liability for any loss incurred by reason of the retention of such investments or properties. Trustee may presume that Settlor has confidence in the securities and other properties held by the Trust at the time of Settlor's death and therefore no sale thereof shall be made solely in order to diversify investments.

C.    To invest and reinvest in such securities (including, but not limited to, bonds, mutual funds, certificates of deposit and preferred and common stocks), investments or other properties as they may deem advisable and proper, all without diversification as to kind or amount and without being restricted in any way by any statute or rule of law concerning the investments of funds held by fiduciaries.

D.    To invest and reinvest, exchange, sell, lease, or otherwise purchase or dispose of any interest in real property held in the Trust Estate to anyone, at such times and upon such terms,

THE EDWARD MEYER REVOCABLE TRUST

Initials: _Edward Meyer_

Page 9 of 20 Pages

whether for cash or upon credit and whether with or without security, in such manner and at such prices, either at public or private sale, and without notice to any beneficiary and without Court approval, as to the Trustees shall seem advisable and proper for such purpose, to employ brokers and agents and pay them reasonable compensation; and to execute and deliver deeds and other proper instruments of conveyances thereof to the purchaser or purchasers. Any lease so made by the Trustee shall be valid and binding for the full term thereof even though the same shall extend beyond the duration of the administration of the Trust.

E.    To borrow money, whether to pay taxes or otherwise accomplish any other purpose incident to the administration of the Trust Estate and as security therefore to mortgage and pledge any property comprising an asset of the Trust Estate.

F.    To make any division or distribution required under the terms of this Trust or by virtue of any agreement entered into by Settlor or otherwise by operation of law, in kind or in money, or partly in each, and to that end to allot any asset of the Trust Estate, or fractional interest therein to the share of any beneficiary or distributee as shall seem proper in the absolute discretion of the Trustee and his or her judgment as to the valuation of said property so allotted shall be final and conclusive on all parties.    The share transferred to any beneficiary or distributee may be composed of property like or

THE EDWARD MEYER REVOCABLE TRUST

Initials: _____
Edward Meyer

Page 10 of 20 Pages

different from that transferred to any other beneficiary or distributee. Nothing in this clause shall give the right to a Successor Trustee to alter or change the status of any of the items mentioned in ARTICLE VI of this agreement, if those items or any of them still form part of the Trust Estate when that person is named as Successor Trustee.

G.    To cause any securities or other property, real or personal, belonging to the Trust Estate, to be held or registered in the name of the Trustee or in the name of a nominee or in such other form as he deems best without disclosing the Trust Estate relationship.

H.    To vote, either in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose; to exercise or sell any subscription or conversion rights; to consent to or join in any voting trust, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities with or under the direction of any protective committee and to accept and hold any securities or other property received through the exercise of any of the foregoing powers.

I.    To employ accountants, attorneys, custodians and such agent as the Trustee may deem advisable; to pay reasonable compensation for their services; to act or refrain from acting upon the advice or recommendation so obtained without being liable for

THE EDWARD MEYER REVOCABLE TRUST

Initials: _____
Edward Meyer

Page 11 of 20 Pages