deed.pdf - Adobe Reader

File  Edit  View  Document  Tools  Window  Help

1 / 1          121%

# WC. 84
## TRI COUNTY

CFN 20060029523
OR BK 19804 PG 0460
RECORDED 01/17/2006 14:39:33
Palm Beach County, Florida
AMT 685,000.00
Doc Stamp 4,795.00
Sharon R. Bock, CLERK & COMPTR(
Pg 0460; (1pg)

Will Call for TRI COUNTY
C/O TITLE GUARANTY OF
S. FLA.

THIS INSTRUMENT PREPARED BY AND RETURN TO:
Title Guaranty of South Florida
100 South Pine Island Road Suite 115
Plantation, Florida 33324
Property Appraisers Parcel Identification (Folio) Numbers: 00-41-44-36-00-000-7260

_____ Space Above This Line For Recording Data _____

**THIS WARRANTY DEED**, made the 21st day of **December, 2005** by LISA C. KOTALIK, A SINGLE WOMAN, whose post office address is 10782 55TH STREET S., LAKE WORTH, FL. 33467 herein called the grantor, to MARK MCWILLIAMS, A SINGLE MAN, whose post office address is 10782 55TH STREET S., LAKE WORTH, FL 33467, hereinafter called the Grantee:
*(Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representative and assigns of individuals and the successors and assigns of corporations)*

**W I T N E S S E T H:** That the grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee all that certain land situate in PALM BEACH County, State of Florida, viz.:

The Northeast 1/4 of the Northwest 1/4 of the Southwest 1/4, Section 36, Township 44 South, Range 41 East, of Palm Beach County, Florida.

Subject to easements, restrictions and reservations of record and taxes for the year 2005 and thereafter.

**TOGETHER**, with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**TO HAVE AND TO HOLD**, the same in fee simple forever.

**AND**, the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land, and hereby warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.

start        My Documents      deed.pdf - Adobe Re...   Docket Report Searc...   Microsoft Excel - unju...

---

deed.pdf - Adobe Reader

File  Edit  View  Document  Tools  Window  Help

1 / 1          121%

# WC. 84
## TRI COUNTY

CFN 20060029523
OR BK 19804 PG 0460
RECORDED 01/17/2006 14:39:33
Palm Beach County, Florida
AMT 685,000.00
Doc Stamp 4,795.00
Sharon R. Bock, CLERK & COMPTR(
Pg 0460; (1pg)

TRI COUNTY
GUARANTY OF

THIS INSTRUMENT PREPARED BY AND RETURN TO:
Title Guaranty of South Florida
100 South Pine Island Road Suite 115
Plantation, Florida 33324
Property Appraisers Parcel Identification (Folio) Numbers: 00-41-44-36-00-000-7260

_____ Space Above This Line For Recording Data _____

CIRCUIT COURT IN AND FOR PALM BEACH COUNTY, FLORIDA

| | |
|---|---|
| In re:  Diane Meyer, Estate of Edward J. Meyer,<br>            Petitioner,<br>        and<br>Mark MCWILLIAMS, Individually and as<br>Administrator Ad Litem<br>            Respondent | Case No.: 50199PC004504<br><br>Motion to Compel Production of Accounting and<br>Substantiating Records |

Diane Meyer Aliases: Diane Schroeder

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY FLORIDA

Diane Meyer individually and
as beneficiary of Edward J. Meyer deceased

Petitioner

            -Vs.-

Mark MCWILLIAMS individually and as Administrator Ad Litem
of the Estate of Edward J. Meyer, deceased

Respondent

MOTION TO COMPEL ACCOUNTING AND
PRODUCTION OF SUBSTANTIATING RECORDS
FOR THE ESTATE OF EDWARD J. MEYER

In accordance with Florida Statutes 733.617 MARK MCWILLIAMS, and S 733.6171 and his PERSONAL
attorney MICHAEL LAVERY might be entitled to Personal Representatives and legal fees and costs if they can
prove their services benefited the estate and compensation was reasonable.

Petitioner, Diane Meyer, pursuant to Rules 5.080 and 5.355. of the Florida Probate Rules,  Rule 1.350 of the
Florida Rules of Civil Procedure, and Florida Statute 733.6175 files this Motion for a Court order authorizing an
accounting and the production of substantiating records in the possession or under the control of MCWILLIAMS,
for the purposes of proceedings for review of employment of agents and compensation of personal
representatives and employees of the estate, and which are otherwise to be disclosed in the Federal Tax
Return, Form 706, and in support thereof, states:

NO RESPONSE TO JANUARY 11, 2006 AGREED ORDER FOR ACCOUNTING

MCWILLIAMS was appointed by the Court and has failed to allege facts which, if proven, would establish
grounds for not producing an accounting and paying for this accounting out of his own pocket because the Court

<u>granted An Agreed Order for an Accounting on January 11, 2006. MCWILLIAMS vigorously avoided this</u>
<u>accounting.  See generally Florida Bar v Sill</u>

In October 2000, MCWILLIAMS was appointed Curator by Judge Wessel before receiving his letters of administration and surety bond because there was great danger that the decedent's property was likely to be wasted, destroyed, or removed beyond the jurisdiction of the Court. The reasons for appointment of MCWILLIAMS by the Court were caused by Marcia Meyer and Frank Meyer's conflicts of interest and non-compliance with filing inventory and accounting one year after the date of death.

S. 733.501 Curators may be authorized to perform any duty or function of a personal representative, (3) Curators shall be allowed reasonable compensation for their services, and the Court may consider the provisions of S. 733.617, and (4) Curators shall be subject to removal and surcharge.

1.  MCWILLIAMS violated accounting upon removal S. 733.508--A removed personal representative shall file a full, true, and correct account of his or her administration within 30 days after removal.

2.  MCWILLIAMS was not vigorously aligned with Marcia Meyer, Frank Meyer or Peter Meyer when first appointed as Curator and at the time the Court ordered filing of an Interim Accounting by Marcia Meyer and Frank Meyer.  Pursuant to the November 6, 2000 Court Order to appoint MCWILLIAMS as the neutral party MCWILLIAMS was charged with the responsibility of filing and an Objection to the Interim Accounting.

3.  On 9 February 2001, the Court granted an Order expanding MCWILLIAMS authority as Ad Litem.

4.  After 9 February 2001, MCWILLIAMS vigorously aligned himself with Marcia Meyer.

5.  Acting as Administrator Ad Litem, MCWILLIAMS neatly parallels the Express Consolidation Inc. Trusteeship which Judge Wessel also appointed him in 2003. MCWILLIAMS vigorously aligned himself with defendant Leshin who wrongfully prepared documents, permitted fraudulent tax exempt schemes and transfers, mishandled unapproved signatory on accounts, and did not provide full and complete accounting to the Court. MCWILLIAMS was instrumental in delivering general releases to extinguish malpractice claims and full waivers of accounting.

6.  Being appointed in competitive selection as public administrator or trustee of hundreds of millions of dollars of the public's money and every time vigorously avoiding filing any accounting of his special appointment permits MCWILLIAMS to falsely conceal distributions and disbursements of other fees which have not been approved by the Court.

7.  In the Estate of Edward Meyer, MCWILLIAMS avoidance of accounting also conceals direct payments, between $36,469.00-$400,000.00 which MCWILLIAMS should have obtained from BCB Inc. and/or Marcia Meyer for the legitimate interest of the estate.  Without a full accounting from MCWILLIAMS, the Petitioner

cannot determine the amount of damages because of MCWILLIAMS diversion of legal fees to himself and other from an estate bank account(s) which had unknown signatories.

8.  As of 31 December 2003, MCWILLIAMS CPA license #AC0024375 was Null & Void – the licensee has failed to renew several times. To operate under the terms of this license again, the licensee would have to reapply for licensure. MCWILLIAMS Ohio CPA license CPA.23325-OS reissued in January 1, 2003 lapsed as of December 31, 2005 the cut off date for the Court ordered estate accounting. Without annual accounting and disclosure, the Court and the interested parties were not informed of any state licensure changes as of December 31, 2005.

9.  MCWILLIAMS motioned for 1000 distibutions. None of these distributions were a matter of public record. The Petitioners one payment from the estate by MCWILLIAMS, $22, 500.00 was a matter of public record and was included in the online docket. All estate beneficiaries are entitled to an accounting.

10. On 30 May 2003, Plaintiffs Robert Fulmerhouse and Rachel Sandell Sherman file a lawsuit against Defendants Express Consolidation, Inc. Randall Leshin individually; and MCWILLIAMS, individually and as Court Appointed Trustee, 2003CA004445AE and said:

11. MCWILLIAMS was a person who was by Order of the Court appointed as, and presently was the Trustee of Express. MCWILLIAMS purportedly conducted Express' business at Express' principal place of business and /or at MCWILLIAMS own business office, both which are located in Palm Beach County. This was a civil action seeking in excess of $15,000.00, declaratory relief, and the discharge of Defendant MCWILLIAMS as the Trustee of Defendant Express.

12. At the 6 December 2002 hearing the Court appointed MCWILLIAMS as Trustee to run Express, even though no one had requested the appointment of a trustee. See Exhibit

13. Before 5 December 2002, Leshin made several requests for substantial additional sums of money from Express. Among other things Leshin requested that his compensation be almost tripled to $300,000 per year, plus bonuses and other substantial perks.

14. Leshin advised Fulmerhouse, Sherman, Eichas, and Kleeman that he needed such substantial increases in compensation because he was deeply in debt. Leshin was advised that his compensation would not be increased and that, due to his personal financial problems and the new reporting requiremnets for officers of debt consolidation companies in some states, he would have to be removed as Executive Director in the coming year.

15. Leshin's disagreement with Express over his compensation escalated in the latter portion of the year 2002.

16. On or about 4 December 2002 Leshin filed an Action CA 02-14395 AE (the "Leshin Action") purportedly on his own behalf and the of Express against Southtrust Bank, and Express officers Eichas and Kleeman. The

Leshin Action Complaint requested Injunctive Relief, Accounting, and Other relief. Before 5 December 2002, Leshin although he then held the title of Executive Director, was never actively involved in the day to day operations of Express nor worked full time for the benefit of Express.

17. The filing of the Leshin Action was not authorized by the majority of the Express' duly authorized Board of Directors (Fulmerhouse and Sherman) nor was notice of it given Fulmerhouse and Sherman.

18. The Court relied upon Leshin's misstated Board authority in accepting the Complaint and appointing MCWILLIAMS as the Trustee in the Leshin Action CA 02-14395 AE. Plaintiffs comprising the majority of the board of Directors did not want Express to continue to be controlled by MCWILLIAMS.

19. However, unitil such time as the Court enters Declaratory Judgment requested in Count I and Fulmerhouse and Sherman regain control of Express, some neutral third party must temporaly have control of Express as a receiver, to protect it from the continued wrongful conduct of Leshin,

20. Although he was appointed to act a neutral third party for the benefit of Express, unaffiliatied with any of the person as disputing control of Express, MCWILLIAMS has instead vigorously aligned himself with Leshin to the detriment of Express , and to the prejudice of Fulmerhouse and Sherman.  MCWILLIAMS was served a summons on June 30, 2003.  Michael Lavery was also attorney for Trustee MCWILLIAMS in the Express cases.

21. MCWILLIAMS alignment with Leshin is evidenced among other things by:
22. McWillians retention of Keith T. Grumer, Esquire Leshin's PERSONAL counsel, to represent Express in the matter captioned Delray Funding Corp et al v Express and Leshin, Case No. CA 03-003562 AE and
23. MCWILLIAMS retention of Mr. Grumer to represent Express in the instant matter.  If MCWILLIAMS is permitted to pay Mr. Grumer attorneys fees from Express' funds in either of the above cited actions, Leshin would get free defense at Express' expense before the Court even determines the identities of Express' duly authorized Directors.

24. MCWILLIAMS did not seek approval to retain Mr. Grumer in either of the above cited actions
MCWILLIAMS retained Mr. Grumer on behalf of Express or failed to take appropriate action as Trustee to stop Mr. Grumer from representing Express, in yet another action captioned Express v. Robert Bowsman, in the Circuit Court for the 17th Judicial Circuit, in and for the Broward County, Florida, Case No. CA 03-007545 CE.  In this action Express sued fourteen former employees of Express, including Sherman.

25. MCWILLIAMS did not seek Court approval to retain Mr. Grumer to bring the Express v. Bowsman action. Had the decision to file the Express v. Bowsman action been put to a vote of Express' duly authorized Board of Directors, Fulmerhouse and Sherman would have voted against such action.

26. The suit, purportedly brought by Express in the <u>Express v. Bowsman</u> action does not serve the legitimate interest of Express but instead furthers the interests of Leshin in his attempts to control Express and harm Fulmerhouse and Sherman.

27. Despite the requirement that MCWILLIAMS act as a neutral third party to protect Express, and despite the Court's Order that Leshin have no involvement with the assets of Express, MCWILLIAMS has explicitily authorized Leshin to be a signatory of Express' new bank accounts.

28. Wherefore Plaintiffs Robert Fulmerhouse and Rachel Sandell Sherman request that this Court enter an immediate order discharging Mark D. MCWILLIAMS as Trustee and replacing him with a reciver to manage and control Express until such time as the Court enters the Declaratory Judgment requested and awarding Plaintiffs their attorney's fees and costs of suit along with such other relief the Court deems just.

29. The third count of the Amended Complaint was for Legal Malpractice against Leshin, the tortfeasor, who was in control of Express and wrongfully prepared documents as Express' counsel that purport him in control of Express. MCWILLIAMS was actively affiliated with Leshin.

30. At all material times, Leshin was employed as Express' attorney. Leshin's actions as legal counsel for Express in preparing and or filing or failing to and or to file , various Express corporate documents were willful, inteneiton and or negligent miscarriages of Express directions requests, order and purposes, whihch improper action s have damaged Express. The Court in the Leshin Action accepted the relevant allegation of the Complinat , entered and order appointing the Trustee, and granted other relief in reliance on the aforestated corporate documents improperly prepared and filed by Leshin. Express incurred significant costs and attorneys fees, Trustee fees and other expenses in the Leshin Action because of improper documents prepared and/or filed by Leshin.

31. Leshin had not provided a full and complete accounting to Express for the various direct payments he obtained from Express customers. Without a full accounting from Leshin, Express cannot determine the amount of its damages because of Leshins's diversion of funds. At certain times during his employment as legal counsel to Express, Leshin's license to practice law in the State of Florida was suspended.

32. Plaintiffs requested that this Court enter judgment ordering Leshin to account to Express for all of Express' clients funds received by him, compensatory damages, interest, attorneys fee and such other relief the Court deems just.

33. On 8 May 2008, the Federal Trade Commission announced that Florida attorney Randall L. Leshin, his debt management services company, Express Consolidation, Inc., and telemarketer Consumer Credit Consolidation, Inc. have agreed to settle charges that they used abusive telemarketing and deception to sell debt management services to consumers nationwide.

34. Although the defendants advertised Express Consolidation as a nonprofit company, the FTC alleged that its nonprofit status was a sham, and the contracts and fees secured under its name actually benefited Leshin. The complaint alleged that the defendants made many other false representations about the costs and benefits of debt management services.

35. The settlements include a monetary judgment against Leshin, Randall L. Leshin, P.A., and Express Consolidation for $40 million based on the total money they received through the scheme.

36. The Federal Trade Commission found that Defendant Express Consolidation is not, in fact, operated in accordance with the representations in its articles of incorporation and the representations to the Internal Revenue Service.

37. On December 13, 2005, Marcia Meyer's attorneys filed a Motion for an Accounting in the best interest of the estate asking that this Court order MCWILLIAMS to prepare an accounting of the assets which were once in the estate including without limitation $900,000 in stocks once held in the SunTrust/Fidelity account. Further an accounting is necessary to ascertain the amount of attorneys' fee and costs taken by MCWILLIAMS and his counsel during the entire administration.

38. On January 11, 2006, having reviewed Marcia Meyer's Motion For An Accounting and been advised of agreement of counsel, Judge Vonhof granted the Motion for an Accounting and it was to be conducted by Mark MCWILLIAMS pursuant to Probate Rules 5.150(b) and 5.3345.

39. One objective of the accounting was for the Court to determine the reasonableness of the Administrator Ad Litem's fees without the need for a hearing or expert witnesses. The closing date of the accounting was to be December 31, 2005. MCWILLIAMS was required by this order to file the accounting with this Court no later than March 30, 2006. MCWILLIAMS never complied with this agreed order in violation of 5.150 of the Florida Rules of Probate.    The Florida Bar v. Erlenbach (Case No. SC06-2179).   The Florida Bar v Watson (Case No. SC07-1359)

40. In April 2006, Petitioner did not waive rights to an accounting or consent to the discharge of MCWILLIAMS.

41. MCWILLIAMS had litigation underway for a $2 million cross-petition claim to benefit the estate and was taking distributions from the estate at said time. After an abrupt ending when MCWILLIAMS was served a summons for malpractice, Petitioner received $22,509 which MCWILLIAMS withheld, and strongly suggested to the Petitioner that she waive her rights in an accounting and the estate, MCWILLIAMS would wire the $22,509 to her bank account. McWilliams response to her not waiving an accounting was to deposit this amount into the Court registry falsely alleging charging liens without a shred of evidence, while he knew or it was obvious that such action would serve merely to harass or maliciously injure the Petitioner.

42. In 2006, the five other half siblings did file full estate accounting waivers and consents to discharge for reasons unknown to the Petitioner. There is great disparity between the Petitioner and other half siblings.

MOTION FOR FEDERAL TAX RETURN ORDER GRANTED JANUARY 25, 2002

In March 2006, MCWILLIAMS dissipated undisclosed estate assets by litigating the cross-petition for the Surcharge action which stood all four corners of the Petition against Marcia Meyer for 18 months, MCWILLIAMS petitioned to have himself discharged rather than respond to the Marcia Meyer's counter claim against MCWILLIAMS for maladministration and her motion for an accounting due no later than March 30, 2006 without taking steps to protect his clients' interests or conclude their legal matters.   See The Florida Bar v. Johnson (Case No. SC07-1199)

1. The Notice of Tax Return Due was filed in November 1999, and amended Notice filed September 7, 2000. On January 15, 2002, Petitioner filed through her attorney, Motion to Produce Copy of Federal Estate Tax Return. The Court granted an order on this Motion on January 25, 2002 to produce the Tax Return when prepared and filed.

2. Petition for Surcharge filed January 25, 2002 by the Petitioner and the Cross-Petition filed by MCWILLIAMS in March 2005 asserted that Marcia Meyer enriched herself by paying a $465,931.00 Suntrust Mortgage with BCB Inc. funds, and by taking up to $400,000.00 or more from BCB Inc for construction of the Ultimate Software headquarters in Weston FL,

3. A $37,500.00 receivable owed from the decedent's 75% interest in BCB Inc. was inventoried as an estate asset by Andrew Fein, counsel for Frank Meyer and Marcia Meyer. Without an accounting the Petitioner does not have knowledge of its collection or distribution by MCWILLIAMS.

4. $37,469.00 on the Schedule of Funds Received and Disbursed by Edward Meyer Enterprises, Inc. September 6, 1999 – August 1, 2000 were accounted for on the Interim Accounting using a loosely defined term "Excess Funds Received". Defendant Marcia Meyer's personal CPA, Glenn Kustal was also CPA for BCB Inc. et al. According to MCWILLIAMS Objection to Interim Accounting paragraph (F), $37,469.00 due from Edward Meyer Enterprises, Marcia Meyer accounted for as "Excess Funds Received" should have been collected by MCWILLIAMS for the estate. MCWILLIAMS let the receivables fall into the hands of Marcia Meyer aligning himself against the estate.

5. BCB Inc. was the general contractor for the Ultimate Software headquarters (ULTI) located in Weston FL. The Petitioner does not have knowledge of MCWILLIAMS investigating construction contracts, obtaining tax form 1099 or affidavits to ascertain if an additional $400,000.00 from BCB Inc. was owed to the decedent's estate. MCWILLIAMS Ad Litem's report paragraph (B) 23. states: Joseph Conti is in dispute with respect to additional amounts he believes he is owed from Ultimate Software. Furthermore, an August 23, 2000 settlement proposed by Marcia Meyer's counsel stated an additional $400,000.00 could be collected by BCB Inc. from Ultimate. Only two capital accounts existed for stockholders of BCB

Inc. Edward Meyer and Joseph Conti. No statement of claim was filed in the proceedings by Edward Meyer Enterprises. See Exhibit

6. In 2008, the Petitioner tried to investigate the sale and distribution of the 103,900 shares of stock of Ultimate Software in the Bear Stearns IRA. The stock transfer agent, Computershare showed a zero balance in the account once holding the decedent's Ultimate Software stock (ULTI) as of February 15, 2000.

7. The argument is no longer whether this was analogous to Marcia Meyer selling real property on February 14, 2000, to stay a step ahead of the **IRS tax lien** filed September 29, 2000 for 1998 Federal Income Tax.

8. The Interim Accounting filed by Co-personal representatives Frank Meyer and Marcia Meyer on September 7, 2000, pursuant to Judge Wessel's order is the only accounting ever made of the decedent's assets. The IRS allows post-mortem QTIP elections and estate A-B trust tax compliance planning; however, the decedent received a K-1 that passed through cancellation of debt. The decedent's 1998 Federal Tax Due was $244,043.00 plus $15,757 interest.

9. The IRS filed a tax lien on September 29, 2000. The tax lien was paid by the estate to the IRS on December 28, 2000. 1998 Individual Income Tax Due to NY Commission of Taxation was $43,543.00 plus Interest $2,557.00 was also paid by the estate.

10. Surcharge action claimed the February 14, 2000 sale of real property for $672,000.00 was encumbered by a Suntrust mortgage $465,931.00 which Marcia Meyer satisfied, enriching herself by pressuring and plying the decedent's partner on September 21, 1999 to write checks $490,000.00 to Marcia Meyer and $4,875.00 to Edward Meyer Enterprises instead of the Estate of Edward Meyer.

11. Current FMV of 103,900 shares of Ultimate Software stock in the Bear Stearns IRA account at its recent high of $41 is $4,259,900.00.

12. The Bear Stearns IRA account which was designated as an estate trust asset in case 502001CP004073XXTRIY. All claims of the estate were denied. MCWILLIAMS hired his PERSONAL counsel, Lavery to represent the estate in claims that named McWILLIAMS as co-defendant. MCWILLIAMS had the fiduciary duty to provide truthful testimony and perform due diligence during the arbitration. The estate's case for the Bear Stearns IRA account claim was strong. The estate was deprived its full rights to the IRA account because MCWILLIAMS and Lavery had conflicts of interest, did not perform due diligence and did not provide truthful testimony to the arbitration panel. See Exhibit First National Bank of Miami v. United States, 235 F.Supp. 331 (S.D. Fla., 1964), Capps Agency, Inc. v. MCI Telecommunications Corp., 863 F.Supp. 1555

13. In the Bear Stearns IRA matter, MCWILLIAMS vigorously furthers the interests of Marcia Meyer the same way MCWILLIAMS furthered the interests of Leshin in the Express Consolidation case aiding, assisting, and promoting a sham non-profit business. In 2008 Leshin settled $40 million judgment, the total money received through the scheme. McWilliams who was appointed to act as a neutral party assisted Leshin to obtain authority of Express Consolidation in the same style MCWILLIAMS assisted Marcia Meyer in obtaining all assets of the estate. See Exhibit

14. On January 10, 2005 the Petitioner hired counsel who reached agreement with MCWILLIAMS to intervene in the Surcharge matter because it was in the legitimate interest of the estate. MCWILLIAMS had previously aligned himself with Marcia Meyer et al regarding these transactions in his Ad Litem Report vigorously aligning himself against the Petitioner and the estate.

15. MCWILLIAMS began intervening March 11, 2005, when he filed Cross-Petition For Surcharge or in the Alternative to Void Transaction Involving Conflict of Interest against Marcia Meyer and Breach of Fiduciary Duty and Unjust Enrichment and Conversion. MCWILLIAMS hired his PERSONAL counsel to represent the estate again.

16. Next, due to these conflicts of interests the estate lost the Cross–Petition for Surcharge action when on February 21, 2006 Marcia Meyer's counsel filed their motion to counter-petition individually naming Defendant MCWILLIAMS asserting various matters of mal-administration of the estate and obtaining the January 11, 2006 Court order for an Accounting due no later than March 30, 2006.

17. March 1, 2006 Marcia Meyer's counsel served MCWILLIAMS with a summons and on March 8, 2005 served a summons regarding MCWILLIAMS to Western Surety Bond.

18. On March 20, 2006 MCWILLIAMS Petitioned to Discharge Personal Representative and Close the Estate.

19. The requirement to produce a Federal Estate Tax Return cannot be ascertained without an accounting. The Petitioner requests that Court order MCWILLIAMS to produce the petition which was filed stating the status of the estate and the reasons for the extension for filing the Federal Tax Return. See Exhibit

UNDER FLA PROB. R. 5.355. and § 733.6175, FLA. STAT. COURT PROCEEDINGS TO DETERMINE REASONABLE COMPENSATION OF PERSONAL REPRESENTATIVES AND EMPLOYEES OF THE ESTATE

MCWILLIAMS and LAVERY petitioned for compensation for aiding, promoting and assisting in tax-free schemes and conversion by Co-defendants, MARCIA MEYER ET AL. MCWILLIAMS and LAVERY owe the highest duty to the estate to safeguard those specific interests they were commissioned to protect.

1. Express Consolidation had an extensive customer base. MCWILLIAMS actions furthered the interests of Leshin, an attorney who wrongly prepared documents and committed common law fraud.

MCWILLIAMS assisted Leshin in gaining control even though Plaintiffs had and could have had malpractice claims against Leshin. MCWILLIAMS fully extinguished the malpractice claims by delivering general releases in a 2003 settlement.   When in fact, a monetary judgment against Leshin, Randall L. Leshin, P.A., and Express Consolidation for $40 million based on the total money they received through the scheme effected an extensive customer base.

2.  MCWILLIAMS aided, assisted, and promoted the $40 million received through Leshin's scheme. MCWILLIAMS aided, assisted, and promoted Bear Stearns, Richard Spring, Cohmad stock broker who walked away free and clear, and others who MCWILLIAMS furthered the interests of by placing $4,259,900.00 current FMV tax free into Marcia Meyer's hands. Furthermore, MCWILLIAMS hired his own PERSONAL counsel to represent the estate in Bear Stearns and Surcharge matters naming MCWILLIAMS as Co-Defendant. MCWILLIAMS violated his duty to act a neutral party to the detriment of the estate. See Exhibit

3.  MCWILLIAMS made distributions of over of $900,000.00 without ever filing an accounting. On several occasions, the Petitioner asked the Ad Litem if Federal tax return 1041 for the trust or the Federal tax return 706 were filed. August 25, 2008, MCWILLIAMS response by telephone to the last letter sent by Petitioner under Fla Prob R 5.345 (f), on reasonable request offering to review the records where they were kept and located, MCWILLIAMS stated he did not know of a trust. The Florida Bar v. Callaway (Case No. SC07-1514) Florida Bar v. Spann, 682 So. 2d 1070 (Fla. 1996)

4.  The trust ambiguity contradicts MCWILLIAMS reference to the Trust of Edward J. Meyer in his letter dated on July 20, 2004 referencing $150,000.00 as a proposed settlement to the six Meyer siblings. See Exhibit

5.  However; there was no accounting for any settlement amounts and it was not accounted for or disclosed how MCWILLIAMS arrived at $150,000.00 or any other amount including the same $150,000.00 in the March 2008 settlement plan he used four years later to escape reporting. The Florida Bar v. Stevens (SC60-83569)  The Florida Bar v LaFray (SC07-635)

6.  In 20 (twenty) days, MCWILLIAMS closed the estate after being served summons. Western Surety was served summons. Once again back into alignment with the Defendants these attorneys jeopardized the claim $2 million and now the estate was the loser in both cases litigated by Co-defendant MCWILLIAMS and his PERSONAL counsel Lavery. However, MCWILLIAMS timely satisfied his distributions for fees dissipating the estate assets. MCWILLIAMS lack of concern about losses when there was adequate evidence to support enforceable claims for the estate and unfinished responsibilities to collect receivables were not actions taken in the best interest of the estate. The Florida Bar v. Sill (SC60-82437)

7.  February 8, 2006 the Court ordered and adjudged that the counter petition by Marcia Meyer against Mark MCWILLIAMS individually was granted asserting various matters of maladministration of the

estate. MCWILLIAMS did not complete the administration. Completion in a timely manner was not unavoidable; however, the maladministration claim, a malpractice claim like Leshins was a bona fide litigation risk.

8.  Privately at this same time, MCWILLIAMS mediated a settlement plan. MCWILLIAMS turned in his resignation. The settlement plan did not include any accounting.

9.  MCWILLIAMS violated S. 733.5036, S. 733.901 Accounting and discharge of a resigning personal representative shall file and serve a final accounting of the personal representative's administration.    (2) upon receipt of evidence that undistributed estate assets have been delivered to the successor fiduciary, the personal representative shall be discharged, the bond released, and the surety discharged.

10. Under Fla Prob R 5.430 MCWILLIAMS violated (b) Petition for Resignation shall state (2) the status of the estate administration and that the interests of the estate will not be jeopardized if the resignation is accepted; and violated

(3) whether a proceeding for accounting, surcharge, or indemnification or other proceeding against the resigning personal representative is pending; and violated

(g) Petition for Discharge; Accounting. The resigning personal representative shall file an accounting and a petition for discharge within 30 days after the date that the letters of the resigning personal representative are revoked by the Court. (3) the amount of compensation paid or to be paid the resigning personal representative and the attorney and other persons employed by the resigning personal representative; and violated

(j) Failure to File Accounting or Deliver Records or Property. The resigning personal representative shall be subject to contempt proceedings if the resigning personal representative fails to file an accounting or fails to deliver all property of the estate and all estate records under the control of the resigning personal representative to the remaining personal representative or the successor fiduciary within the time prescribed by this rule or by Court order.

11. A January 25, 2002, Surcharge proceeding is pending against the Ad Litem, Marcia Meyer, Frank Meyer and Peter Meyer. PETER MEYER was not discharged as personal representative of the estate.

12. Without an accounting there is no way to be sure MCWILLIAMS protected legitimate interests of the estate or to be sure if MCWILLIAMS delivered any property or records to PETER MEYER.

13. Mark MCWILLIAMS filed 1000 Motions for Distribution.

S. 733.901 Distribution; final discharge when a personal representative has completed administration except for distribution, he or she shall file a final accounting and a petition for discharge that shall contain:

(a) A complete report of all receipts and disbursements since the date of the last annual accounting or, if none, from the commencement of administration.
(b) A statement that he or she has fully administered the estate by making payment, settlement, or other disposition of all claims and debts that were presented and the expenses of administration.
(c) The proposed distribution of the assets of the estate.
(d) Any prior distributions that have been made.
(e) A statement that objections to this report or proposed distribution of assets be filed within 30 days.

Final accounting and petition for discharge shall be filed and served on all interested persons within 12 months after issuance of letters for estates not required to file a federal estate tax return, otherwise 12 months from the

date the return is due, unless the time is extended by the Court for cause shown after notice to interested persons. The petition shall state the status of the estate and the reasons for the extension.

14. Under Fla Prob R 5.430  9J) there is not one shred of evidence of a complete report of all receipts and disbursements, and expenses since the last accounting to ascertain information required to file a federal estate tax return which was extended by the Court for cause. The Court should find MCWILLIAMS subject to contempt proceedings for failure to provide an accounting listing reportable transactions, income received, collection of Interim Accounting Estate Receivables from BCB Inc. and Edward Meyer Enterprises, capital gain on stock sales, or estate tax or trust accounting to support what took place during this administration.

15. MCWILLIAMS is aligned with co-defendants who sought not to apply the tax law to the taxpayers facts and provide pertinent information to determine the correct tax treatment. MCWILLIAMS did not file a Petition stating the status of the estate and the reasons for not reporting tax. See Exhibit Marcia affidavit

16. MCWILLIAMS intentionally disregarded the rules violating Florida S 733.901, S. 733.508, and S. 733.5036.

17. The assets were highly appreciable shares of stock. The current FMV of 103,900 shares of ULTI in the Bear Stearns IRA account is $4,259,900.00.

18. The fraudulent transfer of shares of stock gained a tax-free step-up in basis of $3,316,750.00 from market value of $943,150.00 in August 2000.

19. Florida Bar v. Rood, 622 So. 2d 974 (Fla. 1993)

20. The Petitioner is seeking better information about the sale or distribution of shares of Ultimate Software stock (ULTI) and other stock to MCWILLIAMS, Lavery, and others. At the time of decedent's death, the shares of ULTI were $7. In 2008 prices of ULTI have been as high as $41 per share.

21. The FMV of 49,403 shares of stock would currently be $2,025,523.00 were held in Fidelity estate account on the date MCWILLIAMS was appointed. As the IRS should be aware, this tax-free step up in basis of shares administrated by MCWILLIAMS is $1,679.702.00.

22. MCWILLIAMS may have IRS reportable transactions for distribution of 49,403 shares of the ULTI stock to himself and others. The Florida Bar v. Callaway  (Case No. SC07-1514)

23. On August 25, 2008 Petitioner continued to request an accounting without a hearing and telephoned MCWILLIAMS to discuss the Petitioner's letter sent to him August 16, 2008, again requesting a review of accounting records. MCWILLIAMS stated during the telephone conversation that he did not

remember the letter, if Petitioner wanted an accounting she had to pay MCWILLIAMS, there were no required accountings, there was no trust, there was only a probate estate, there was no income, he did not remember if tax returns were filed, the estate was closed and he was discharged, if Petitioner wanted an accounting she could come down there to review the records in the Court.

In accordance with Florida Statutes 733.508, S. 733.5036, S 733.6175, S. 733.901, and S. 733.903, Petitioner requests that this Court order Mark MCWILLIAMS to comply with the Janaury 11, 2006 Court order to prepare an accounting from the beginning of his administration until the end. Petitioner requests that the Court order MCWILLIAMS to produce all confirmations for sale of stocks held in any trust, or estate bank accounts, and review substantiating accounting records including bank statements, brokerage statements, inventory records, vouchers, checks/checkbooks, deposit slips, cash receipts and disbursement journals, financial statements, tax reporting information and tax returns that were prepared for all the entities while he was Administrator Ad Litem for the Estate of Edward J. Meyer. This includes all records to determine the dates, prices, and distribution of proceeds from the sale of Ultimate Software stock ULTI. The Petitioner requests that the Court order MCWILLIAMS to produce copies of his and his PERSONAL counsel, Michael Lavery's bills and tax forms 1099 from the estate of Edward J. Meyer and order proceedings for review of employment of agents and compensation of personal representatives and employees of estate. Florida 3.1 Rule Kneale v. Williams, 30 So. 2d 284 (Fla. 1947); Dodd v. Florida Bar, 118 So. 2d 17 (Fla. 1960); Florida Bar v. Agar, 394 So. 2d 405 (Fla. 1981); and Florida Bar v. Simons, 391 So. 2d 684 (Fla. 1980), as prohibiting lawyers from presenting false testimony or evidence.

In the alternative, the Petitioner requests that the Clerk of Court, Magistrate, or The Florida Bar perform an audit of MCWILLIAMS accounting similar to the audits performed in guardianship Chapter 744, of the Florida Statutes which sought to strengthen the supervisory powers of the Court.

The Petitioner requests that this Court find MCWILLIAMS in contempt for not complying with the January 11, 2006 and the Court order MCWILLIAMS to prepare full, true, and correct account of his or her administration at MCWILLIAMS expense. MCWILLIAMS violated S 733.617 (2) commission computed on the compensable value of the estate is presumed to be reasonable compensation for a personal representative in formal administration

(a)  At the rate of 3 percent for the first $1 million.
(b)  At the rate of 2.5 percent for all above $1 million and not exceeding $5 million and

(6)  If the personal representative is a member of The Florida Bar and has rendered legal services in connection with the administration of the estate, then in addition to a fee as personal representative, there also shall be allowed a fee for the legal services rendered.

(7)  Upon petition of any interested person, the Court may increase or decrease the compensation for ordinary services of the personal representative or award compensation for extraordinary services if the facts and circumstances of the particular administration warrant. In determining reasonable compensation, the Court shall consider all of the following factors, giving weight to each as it determines to be appropriate:

Promptness, efficiency, and skill with which the administration was handled by the personal representative; responsibilities assumed by and the potential liabilities of the personal representative; the nature and value of the assets that are affected by the decedent's death; benefits or detriments resulting to the estate or interested persons from the personal representative's services; complexity or simplicity of the administration and the novelty of the issues presented;  personal representative's participation in tax planning for the estate and the

estate's beneficiaries and in tax return preparation, review, or approval; nature of the probate, nonprobate, and exempt assets, the expenses of administration, the liabilities of the decedent, and the compensation paid to other professionals and fiduciaries; any delay in payment of the compensation after the services were furnished; and any other relevant factors.

S. 733.903 Subsequent administration.--The final settlement of an estate and the discharge of the personal representative shall not prevent a revocation of the order of discharge or the subsequent issuance of letters if other property of the estate is discovered or if it becomes necessary that further administration of the estate be had for any cause.

The Petitioner is seeking better information and records would establish the burden of proof of propriety of the reasonableness of their fees.    The Petitioner  requests that the Court instruct MCWILLIAMS to (1) produce records from the Cross-Petition of Administrator Ad Litem For Surcharge or in the Alternative to Void Transaction Involving Conflict of Interest against Marcia Meyer and Breach of Fiduciary Duty and Unjust Enrichment and Conversion which MCWILLIAMS did not complete and this includes but is not limited to bank statements for BCB Inc. and Edward Meyer Enterprises (2) produce records discovered in preparation for the Bear Stearns IRA arbitration which MCWILLIAMS and his PERSONAL counsel Lavery failed to protect the interests of the estate because of MCWILLIAMS alignment against the estate, the Petitioner, and conflicts of interest.

MCWILLIAMS hired his own PERSONAL counsel to represent the estate in litigation cases naming him Co-defendant.  Not including other assets of the decedent which he intended to be put into the trust, the  failed litigation cases would have brought potentially over $6,259,900.00 at current FMV of assets into the taxable probate estate in accordance with the decedents testamentary documents see Appendix B of Prenuptial Exhibit

Florida Bar v. Eberle (Case No. SC07-41)

WHEREFORE, Petitioner prays that this Court enter an order directing MARK D. MCWILLIAMS to produce accounting records and assets in his possession or under his control under penalties of perjury.  Upon Production of an Accounting, and a review of factors, if the Court determines that any person has received excessive compensation from the estate of Edward J. Meyer may the Court order that person to make appropriate restitution to the Petitioner as the Court deems just.

An accounting and substantiating records are necessary to prove MCWILLIAMS did not take any action to collect receivables or directly deposit funds into the estate bank account(s), including but not limited to the $37,500.00 receivable due from BCB Inc. and up to $400,000.00 from Joseph Conti and BCB Inc., and the $37,469.00 "Excess Funds Received" receivable due from Marcia Meyer. The accounting is necessary to prove that MCWILLIAMS did not distribute shares of stock of Ultimate Software to himself or others without Court approval. The Petitioner prays that this Court award such relief against  MCWILLIAMS  as the Court finds necessary to redress injury to the beneficiary resulting from violations of law described above including, but not limited to restitution and disgorgement of ill-gotten gains and other such relief the Court determines just and proper, and

Award the Petitioner the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true to the best of my knowledge and belief.

Dated:

Respectfully submitted,

_____

Diane Meyer
Petitioner

SERVICE LIST

INTERESTED PERSONS
ESTATE OF EDWARD J. MEYER
COURT FILE NO. 99-4504

Mark MCWILLIAMS
4600 Ocean

By certified U.S. mail

Dated this 26th day of August, 2008

_____

Diane Meyer
PO BOX 680781
CHARLOTTE NC 28216

CFN # 106170420, OR B.  .231  Page 603 Page 1 of 2, Recorded  /16/2006 at
09:19 AM, Broward County Commission, Doc. D  $7700.00 Deputy Clerk 3075

## WARRANTY DEED

THIS INDENTURE, made this 6ᵗʰ day of June, 2006, between MARK D. McWILLIAMS, a single man, hereinafter the GRANTOR, and VILLAS FLORENCE, INC., a Florida corporation, whose post office address is 1 580 Sawgrass Corporate Pky #120 , hereinafter the GRANTEE.

Sunrise, FL 33325 WITNESSETH, that the said GRANTOR, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATION, paid to GRANTOR by GRANTEE, the receipt whereof is hereby acknowledged, granted, bargained, and sold to the GRANTEE, and the GRANTEE'S heirs and assigns forever, the following described land, situate, and being in the County of Broward, State of Florida, to wit:

Lots 17 and 18, in Block 105, of WAVERLY PLACE, according to the Plat thereof, as recorded in Plat Book 2 at Page 19 of the Public Records of Broward County, Florida.

SUBJECT TO:

1. Taxes for the year 2006 and all subsequent years;
2. Zoning restrictions, prohibitions and other requirements imposed by governmental authority;
3. Restrictions and matters appearing on the plat or otherwise common to the subdivision;
4. Public utility easements of record, if any.

Property Tax Folio No. 10209-09-04310 & 10209-09-04320.

And the GRANTOR hereby fully warrants the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

IN WITNESS WHEREOF, the GRANTOR has hereunto executed these presents the day and year first above written.

WITNESSES AS TO ALL
GRANTORS:

GRANTOR:

Name: LINDA ROTH-CORTINA
Please Print

MARK D. McWILLIAMS
Address: 2000 S OCEAN DR #60S
FT. LAUDERDALE FL. 33316

Name: _____
Please Print

THIS INSTRUMENT PREPARED BY:
LINDA ROTH-CORTINA, ESQ.
LINDA ROTH-CORTINA, P.A.
55 Miracle Mile, Suite #310
Coral Gables, Florida 33134

STATE OF FLORIDA     }
COUNTY OF MIAMI-DADE     }

    I HEREBY CERTIFY that, on this day, before me, an officer duly authorized in the State and County aforesaid to administer oaths and take acknowledgments, personally appeared  MARK D. McWILLIAMS, who, after being duly sworn, acknowledged before me the execution of the foregoing instrument for the purposes therein expressed, and who produced _____ as identification.

    WITNESS my hand and official seal in the County and State last aforesaid this 6 day of June, 2006.



NOTARY PUBLIC, STATE OF FLORIDA
Name:_____
Please Print
My commission expires:

**Linda Roth-Cortina**
Commission # DD515185
Expires March 11, 2010
Bonded Troy Fain - Insurance Inc. 800-385-7019



Return to Search | Settings | Support | Login

**CFN**

**09:1**

**Result Row:** ◁Prev **13 of 46** Nex

**Instrument #** ◁Prev 106170420 Ne>

**Document Navigation by Pages:**
◁Previous Document – Next Document▷

**Booktype:** Official Records

**Book:** 42231 **Page:** 603 | Jump To |

| | |
|---|---|
| **Document Type:** | (D) Deed Transfers of Property |
| **Record Date :** | 6/16/2006 9:19:49 A |
| **Grantor:** | MCWILLIAMS,MARK D |
| **Grantee:** | VILLAS FLORENCE TH |
| **Book Type:** | O |
| **Book / Page:** | 42231 / 603 |
| **# of Pages:** | 2 |
| **Consideration:** | 1,100,000.00 |
| **Legal:** | SEE IMAGE |
| **Parcel Id:** | Property Appraiser - 102090904310 Revenue Collection - 102090904310 |
| **Ref#** | 0 |

**Note: Empty fields are not shown**
**Direct External Link to this Document**



Broward County-Taxes.com » Home » Find An Agency » A to Z Guide

| | | | |
|---|---|---|---|
| **Account History** | | | |

Payment Home

Real Estate

  Accounts

  Bills

  Certificates

  Reports

Tangible Personal Property

Local Business Tax

Shopping Cart

Records, Taxes & Treasury Home

### Account History

| Roll | Tax | Status | Due | |
|---|---|---|---|---|
| 2009 | 2009 | Acct: Unpaid | $4,862.87 | View |
| 2008 | 2008 | Acct: Unpaid | $6,058.49 | View |
| | | Cert: Issued | | |
| 2007 | 2007 | Acct: Unpaid | $6,265.49 | View |
| | | Cert: Issued | | |
| 2006 | 2006 | Acct: Paid-in-full | | View |
| 2005 | 2005 | Acct: Paid-in-full | | View |
| 2004 | 2004 | Acct: Paid-in-full | | View |
| | | Total Due: | $17,186.85 | |

» Add this bill to your shopping cart

### Account Summary

| | |
|---|---|
| Roll/Tax: | 2009 / 2009 |
| Account: | 504213-AB-0450 |
| Alt. Key: | 597793 |
| Certified Roll Owner(s): | MCWILLIAMS,MARK D 1223 CORDOVA ROAD FORT LAUDERDALE, FL 33316 |
| Situs: | 2000 S OCEAN DR, CITY OF FT. LAUDERDALE |

### Bill

| | |
|---|---|
| **Due Date:** | **03-31-2010** |
| Type: | Annual |
| Mailed: | 10-31-2009 |
| Status: | Unpaid |

**Amount due if paid in:**

| | |
|---|---|
| November: | $4,763.63 |
| December: | $4,813.25 |
| January: | $4,862.87 |
| February: | $4,912.49 |
| **March:** | **$4,962.11** |

» Print this bill

### Bill Ledger    Show details

| Date | Type | Amount |
|---|---|---|
| 11/01/2009 | Tax Due | $4,962.11 |
| | Discount | $-99.24 |
| 01/04/2010 | Balance Due | $4,862.87 |

» View a different due date
» Print Ledger

1  First « Prev :: Next

### Account Search

| 2009 | @ | | mcwilliams mark d | | | -- Any -- | | Search |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Clear |

| Tax Yr | Account Number | Owner Name (e.g. Smith John) | Property Address (e.g. 123 Main St) | Account Status | |
|---|---|---|---|---|---|
| 2009 | 504213-AB-0450 | MCWILLIAMS,MARK D | 2000 S OCEAN DR CITY OF FT. LAUDERDALE | Unpaid | View |

Search results as of 2 minutes ago

1  First « Prev :: Next

Home • Terms of Use • Contact Us

Copyright © 1997-2010, Grant Street Group. All rights reserved.

*Powered by*
GRANT STREET GROUP
*Software That Works*

08-01789-cgm   Doc 1619-4   Filed 01/06/10   Entered 01/08/10 16:03:20   Part 5 of 6
CFN # 108607515, OR BK    8  Page 1303, Page 1 of 2, Recorded     13/2009 at
07:09 AM, Broward County    mmission, Deputy Clerk 2090

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA
CASE NO.

WACHOVIA BANK, NATIONAL ASSOCIATION,

         Plaintiff,

vs.

RUTH S. MILLAN; HENRY MILLAN; PETER T. SHAW; _,
AS THE UNKNOWN SPOUSE OF PETER T. SHAW, IF
ANY; _, AS THE UNKNOWN SPOUSE OF RUTH S.
MILLAN, IF ANY; _, AS THE UNKNOWN SPOUSE OF
HENRY MILLAN, IF ANY; MARK D. MCWILLIAMS; _, AS
THE UNKNOWN SPOUSE OF MARK D. MCWILLIAMS, IF
ANY; JOHN DOE OR ANY OTHER PERSON IN
POSSESSION; EQUIFAX MARKETING SOLUTIONS,
INC., F/K/A NAVIANT, INC. D/B/A EDIRECT.COM; All
Unknown Parties Claiming By, Through, Under Or Against
The Named Defendants, Whether Living Or Not, And
Whether Said Unknown Parties Claims As Heirs, Devisees,
Grantees, Assignees, Lienors, Creditors, Trustees, Or In
Any Other Capacity, Claiming By, Through Under Or
Against The Named Defendants,

         Defendants.

_____/

09 025365

12

### NOTICE OF LIS PENDENS

TO:    ALL DEFENDANTS, RUTH S. MILLAN; HENRY MILLAN; PETER T. SHAW; _, AS THE UNKNOWN
       SPOUSE OF PETER T. SHAW, IF ANY; _, AS THE UNKNOWN SPOUSE OF RUTH S. MILLAN, IF
       ANY; _, AS THE UNKNOWN SPOUSE OF HENRY MILLAN, IF ANY; MARK D. MCWILLIAMS; _, AS
       THE UNKNOWN SPOUSE OF MARK D. MCWILLIAMS, IF ANY; JOHN DOE OR ANY OTHER
       PERSON IN POSSESSION; EQUIFAX MARKETING SOLUTIONS, INC., F/K/A NAVIANT, INC. D/B/A
       EDIRECT.COM; all unknown parties claiming by, through, under or against the named defendants,
       whether living or not, and whether said unknown parties claims as heirs, devisees, grantees,
       assignees, lienors, creditors, trustees, or in any other capacity, claiming by, through under or against
       the named Defendants

       YOU ARE HEREBY NOTIFIED of the institution of this action against you by the Plaintiff, WACHOVIA
       BANK, NATIONAL ASSOCIATION, seeking to reform and foreclose a mortgage and reform a deed and
       quiet title on the following described property in BROWARD County, Florida:

       **SEE EXHIBIT "A" ATTACHED HERETO**
       Street Address:   1418 Southwest 10 Street, Fort Lauderdale, Florida 33312

DATE: April 27, 2009

                                          MOSKOWITZ, MANDELL, SALIM &
                                          SIMOWITZ, P.A.
                                          Attorneys for Plaintiff
                                          800 Corporate Drive, Suite 500
                                          Fort Lauderdale, Florida 33334
                                          (954) 491-2000
                                          (954) 491-2051 (TELEFAX)

                                          By: _____
                                               Scott B. Simowitz, Esq.
                                               FBN 306297

2893.39
WBNA

The East 65 feet of the West 485 feet of Lot 40 less the North 105 feet thereof, according to the Plat of W.C. Valentine Survey of Section 9, Township 50 South, Range 42 East, according to the plat thereof, as recorded in Plat Book "B", Page 29, of the Public Records of Broward County, Florida, also known as Lot 18 of said W.C. Valentine Survey, together with a ten foot easement which was previously reserved across the northerly boundary of the above described property.





08-01789-cgm   Doc 1619-4   Filed 01/06/10   Entered 01/08/10 16:03:20   Part 5 of 6
CFN # 103965028, OR BK 3    Page 665, Page 21 of 2 Recorded 0   /2004 at
08:32 AM, Broward County   .mission, Doc. 1D $4596.60 Deputy Cler. 2165

4

Prepared By and Return to:

Name:
    Anna M. McRae, Esq.
Address:
    Mitchell T. McRae, P.A.
    6274 Linton Boulevard, Suite 100
    Delray Beach, FL 33484

Property Appraisers Parcel I.D. (Folio) Numbers(s):
19234-07-35700

SPACE ABOVE THIS LINE FOR PROCESSING DATA      SPACE ABOVE THIS LINE FOR RECORDING DATA

## *This Warranty Deed*

Made the 28th day of April, 2004, by Robert F. Horn and Jean C. Horn, his wife, Individually (undivided 60% interest) and as Trustees of the Irrevocable Deed of Trust for the Benefit of Catharine Lynne Horn, dated April 18, 2000 (40% interest), whose post office address is P.O. Box 191, Haddonfield, NJ 08033 hereinafter called (the "grantor"), to Mark D. McWilliams, a single man, whose post office address *is* 625 NE 13th Avenue, Ft. Lauderdale, FL 33304, hereinafter called (the "grantee"):

    (Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

    *Witnesseth:* That the grantor, for and in consideration of the sum of TEN Dollars ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in Broward County, Florida, viz:

**Lots 11, 12, and 13 in Block 306 of PROGRESSO, according to the Plat thereof, recorded in Plat Book 2, at Page 18, of the Public Records of Dade County, Florida; said lands situate lying and being in Broward County, Florida.**

    *Subject to restrictions, reservations, easements of record, if any, and taxes for the year 2004 and all subsequent years; which are not yet due and payable.*

    *Together* with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

    *To Have and to Hold,* the same in fee simple forever.

    *And* the grantor hereby covenants with said grantee that it is lawfully seised of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004, and as set forth above.

    *In Witness Whereof,* the said grantor has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of:

WITNESSES:               SELLER(S):

Printed Name: Anna M. McRae

Printed Name: Kelly M. Earl

Robert F. Horn, Individually and as Trustee

Jean C. Horn, Individually and as Trustee

FTL:1172588:2

STATE OF FLORIDA      )
                       ) SS:
COUNTY OF BROWARD    )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by Robert F. Horn and Jean C. Horn, husband and wife, Individually and as Trustees, who are personally known to me or who have produced *Camden County ID & NJ Driver License.* as identification.

WITNESS my hand and official seal in the County and State last aforesaid this **25th** day of April, 2004.



Notary Public

Anna M. McRae

Typed, printed or stamped name of Notary Public

My Commission Expires:

ANNA M. MCRAE
COMMISSION # DD111948
EXPIRES JUN 05 2006
BONDED THROUGH
ADVANTAGE NOTARY