THE JACOBS LAW GROUP P.C.
Neal A. Jacobs, Esquire
Gene M. Linkmeyer, Esquire
Matthew Cole, Esquire (N.Y. ID # 2670669)
Kimber P. Schladweiler, Esquire
2005 Market Street, Suite 1120
One Commerce Square
Philadelphia, PA 19103
Telephone: (215) 569-9701
Facsimile: (215) 569-9788

*Attorneys for Jordan Group, LLC*



JAN - 8 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Jordan Group, LLC (the "Customer"), by and through its attorneys, hereby submits this objection to the Notice of Trustee's Determination of Claim dated December 8, 2009 ("Determination Notice"), attached hereto as Exhibit A, denying the Customer's claim designated Claim No. 012792 (the "Claim"), attached hereto as Exhibit B, filed against Bernard L. Madoff Investment Securities, LLC ("BLMIS" or "Debtor"), and in support thereof respectfully represents as follows:

## BACKGROUND

1. On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by the FBI and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York, perpetrated through the Debtor.

2. On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against defendants Madoff and BLMIS in the United States District Court for the Southern District of New York, alleging that the defendants engaged in fraud through the investment advisor activities of BLMIS.

3. On December 15, 2008, an application was filed by the Securities Investor Protection Corporation ("SIPC"), and a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa – 78*lll*, with respect to BLMIS, the Debtor. See Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving H. Picard was appointed as trustee (the "Trustee") to liquidate the Debtor's assets and process customer claims pursuant to SIPA. Pursuant to SIPA, the filing date for the SIPA liquidation proceeding was December 11, 2008. See 15 U.S.C. § 78*lll*(7)(B).

4. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice of the commencement of the SIPA proceedings and claims forms to the Debtor's customers and setting forth deadlines and procedures for filing, determining and adjudication of customer claims. See Order [DKT. No. 12]. Upon information and

belief, the Trustee disseminated notice and claim forms to BLMIS's customers in accordance with the Court's Order.

5. On or about June 22, 2009, the Customer submitted the timely Claim in the amount of $1,055,554 to the Trustee, asserting that the Claim is entitled to "customer" status under SIPA. *See* Claim, Exhibit B.

6. On or about December 8, 2009, the Trustee served the Determination Notice upon the Customer denying the Claim in its entirety, stating that because Trustee could not find an account for the Customer with BLMIS, the Customer "is not a customer of BLMIS as that term is defined at 15 U.S.C. § 78*lll*(2)." *See* Determination Notice, Exhibit A.

7. The Customer hereby objects to the Determination Notice and asserts that the Customer is entitled to "customer" status under SIPA.

### THE CLAIM

8. The Claim arises from the Customer's investment in BLMIS, the Debtor, through an investment in a fund, Beacon Associates LLC I (the "Fund").

9. On or about June 1, 2003, the Customer opened a capital account with the Fund with an initial deposit of cash in the amount of $250,000. The Customer made subsequent deposits in the amount of $400,000 on or about October 1, 2006, and in the amount of $700,000 on or about September 1, 2008.

10. Although the Fund was set up as a "Fund of Funds," in reality, the disclosed investment strategy of the Fund was to invest between 70% to 75% of the Customer's deposited funds directly with BLMIS, the Debtor, to take advantage of the split-strike conversion strategy utilized by Madoff, purportedly entailing the purchase of

3

35-50 large capitalization stocks from the S&P 500 Index and the simultaneous sale of out-of-the-money calls and the purchase of out-of-the-money puts on the S&P 100 Index using Madoff's proprietary system.

11. The Customer understood that funds deposited with the Fund would be deposited with BLMIS, the Debtor.

12. As of October 1, 2008, the value of the Customer's Capital Account with the Fund had a value of $1,468,981.65, with seventy-four percent (74%) of the account held as a direct investment in BLMIS, the Debtor. See Beacon Associates LLC I Statement of Capital Account (Unaudited), attached as Exhibit C.

13. The Fund was in fact an agent and instrumentality of BLMIS, the Debtor, representing to the Customer that 70% to 75% of its deposited funds would be directly deposited with the Debtor for investment in "securities" as defined by SIPA (15 U.S.C. § 78*lll* (14)).

14. The Fund was effectively a BLMIS fund managed solely by BLMIS, the Debtor.

15. At least 74% of the Customer's funds were in fact deposited directly with BLMIS, the Debtor, by its agent, the Fund, and were under the control of the BLMIS, the Debtor. *See* Exhibit C.

16. Accordingly, the Customer is a "customer" of BLMIS, the Debtor, as defined by SIPA, 15 U.S.C. § 78*lll* (2).

17. The Fund's customer account number with BLMIS was 1B0118.

4

## ARGUMENT

18. The Customer seeks a determination that it is a "customer" under SIPA and, therefore, the Claim constitutes a "customer" claim under SIPA. *See* 15 U.S.C. § 78*lll*(2). Under SIPA, "customer" claims are entitled to (i) recover against "customer property," *id.* § 78*lll*(4) on the basis of their "net equity," *id.* § 78*lll*(11), and (ii) receive advances from a fund maintained by the SIPC.

19. With respect to a SIPA debtor, a "customer" is:

[A]ny person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

*id.* § 78*lll*(2). Further, this definition includes "any person who has deposited cash with the debtor for the purpose of purchasing securities ...." *Id.*

20. A claimant is a "customer" protected by SIPA only to the extent the claimant deposited cash or securities "with the debtor." 15 U.S.C. § 78*lll*(2).

21. Whether a claimant deposited funds "with the debtor" does not depend simply on to whom a claimant handed the cash or made their checks payable, or even where the funds were initially deposited. *See* In re Old Naples Sec., Inc., 223 F.3d 1296, 1302 (11th Cir. 2000).

22. Whether a claimant deposited funds "with the debtor" is a question instead of whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." In re Stalvey, 750 F.2d at 469 (*quoting* SEC v. Kenneth Bove & Co., 378 F. Supp. 697, 700 (S.D.N.Y.1974)).

5

23. Here, the Customer delivered cash to the Fund, who as an agent of BLMIS, deposited the bulk of the Customer's funds with BLMIS, the Debtor, who had actual receipt, possession and control of the Customer's funds.

24. Denying the Claim "customer" status is inconsistent with SIPA and the legislative intent embodied by SIPA. The primary purpose of SIPA is "to provide protection for investors if the broker-dealer with whom they are doing business encounters financial troubles." H.R. Rep. No. 91-1613, at 1 (1970), as reprinted in 197-U.S.C.C.A.N. 5254, 5255. The Second Circuit has observed that SIPA's legislative history uses the term "'investors'…synonymously with 'customers,' indicating that, in the eyes of Congress, [SIPA] would protect capital markets by instilling confidence" in investors. SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1317 (2d Cir. 1976).

25. Congress enacted SIPA to "protect individual investors from financial hardship, insulate the economy from the disruption which can follow the failure of major financial institutions, and to maintain public confidence in capital markets." *See* Bevill, Bresler & Schulman Asset Mgnt. Corp., 67 B.R. 557, 602 (D.N.J. 1986).

26. A number of courts have construed a claimant's status as a customer as dependent upon whether the claimant entrusted cash or securities to the broker-dealer debtor. *See, e.g.,* SIPC v. Executive Sec. Corp., 556 F.2d 98, 99 (2d Cir. 1996).

27. Here, where the Customer deposited cash with the Fund, which represented that it intended to deposit at least 75% of the Customer's funds with BLMIS, the Customer clearly had the reasonable expectation that it was entrusting its cash to the Debtor through the Fund as the Debtor's agent, and in fact the Customer's cash was

entrusted to the Debtor who had actual receipt, possession and control of the Customer's funds.

28. The Customer believed it was investing in BLMIS, the Debtor, by entrusting its cash to the Fund as an agent for BLMIS, the Debtor.

29. The Customer entrusted cash to BLMIS, the Debtor, by transacting with the Fund as an agent for the Debtor, and therefore is a customer of BLMIS, the Debtor, as the term is defined by SIPA. 15 U.S.C. § 78lll(2).

30. In the alternative, the Trustee has encouraged all investors who lost money due to the Madoff Ponzi scheme to file customer claim forms, including investors who invested indirectly with BLMIS, the Debtor. The Trustee has clearly envisioned a potential outcome whereby "indirect" investors, such as those who invested through a fund, would be entitled to have their claims allowed and paid in this proceeding. The Customer asserts that it is a "customer" under SIPA by virtue of the Fund's status as an agent of BLMIS, the Debtor. To the extent the Customer is deemed an "indirect" investor, and to the extent any such "indirect" claims are allowed and/or "indirect" claimants are deemed "customer(s)" under SIPA by virtue of the present statute, any amended statute, any decision or ruling by any administrative agency, any decision or ruling by SIPC or the Trustee, or any decision or order of any court, the customer also objects to the Determination Notice and reserves the right to challenge the determination of its Claim by the Trustee.

WHEREFORE, for all of the reasons stated herein, the Claim should be allowed in its entirety as a customer claim for the purposes of SIPA and the Court should direct SIPA to issue immediate payment to Jordan Group, LLC in the amount of $500,000, plus

7

interest from the date of the Determination Notice, and such equitable relief as the Court deems appropriate.

Dated: January 7, 2010

Respectfully submitted,
JACOBS LAW GROUP, PC

*Kimber P. Schladweiler*

Neal A. Jacobs, Esquire
Gene M. Linkmeyer, Esquire
Matthew Cole, Esquire (N.Y. ID # 2670669)
Kimber P. Schladweiler, Esquire
2005 Market Street, Suite 1120
One Commerce Square
Philadelphia, PA 19103
(215) 569-9701
(215) 569-9788 (Fax)

*Attorneys for Jordan Group, LLC*

8