UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiffs,

    -vs.-

BERNARD L. MADOFF INVESTMENT SECURITIES
LLC,

        Defendant.

Case No. 08-01789

SIPA

OBJECTION TO TRUSTEE'S
DETERMINATION OF CLAIM

    St. Stephen's School ("Claimant"), by its attorneys Bellin & Associates LLC, hereby

objects to the denial of claim in the Trustee's Determination of Claim dated December 8, 2009[1]

and states as follows:

**Background Facts**

    1.    On December 1, 2005, Claimant purchased a total of 6349.54 shares of Fairfield

Sentry Ltd. *See* Exhibits A and B.

    2.    All of the monies which Claimant invested in shares of Fairfield Sentry were

invested in Bernard L. Madoff Investment Securities LLC ("BLMIS"). At no time did Claimant

sell any shares of Fairfield Sentry.

    3.    On or about December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*

---

[1] A copy of Claimant's claim is attached hereto as Exhibit A and a copy of the Trustee's Determination of Claim is attached hereto as Exhibit B.

5. On or about December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee.

6. Pursuant to SIPA, Trustee Picard was directed to oversee the liquidation of the assets of BLMIS and to process all claims against BLMIS. 15 U.S.C. § 78fff-1(a).

7. By order of this Court dated December 23, 2008, the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines. The order, among other things, directed the Trustee to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore ..."

8. On February 26, 2009, prior to the claims filing deadline, Claimant duly filed customer claims with the Trustee. *See* Exhibits A and B.

9. By notice of Trustee's determination of claim dated December 8, 2009 (Exhibit C hereto), the Trustee notified the Claimant that its claims had been denied on the following basis:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not ·have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78111(2). Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

10. Claimant objects to the Trustee's determination for the reasons set forth herein and for such additional reasons as may be set forth by other objectants in similar circumstances to Claimant and for the purpose of preserving any rights which may be recognized for persons who made indirect investments in BLMIS through feeder funds.

**Grounds for Objection**

11. **Objection First:** Contrary to the "determination" of the Trustee, the Claimant is a "customer" as provided for by the Securities Investor Protection Act. As such, Claimant is

entitled to receive SIPC insurance. Section 78lll(2) of the SIPA defines "customer" as "any

person who has deposited cash with the debtor for the purpose of purchasing securities."

*Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (S.D.N.Y. 2009) ("the mere act of

entrusting ... cash to the debtor for the purpose of effecting securities transactions . .. triggers

customer status . . ."). Apparently, the Trustee has taken the position that the fact that the

Claimant deposited funds with BLMIS indirectly is fatal to Claimant's claim as a "customer"

under SIPA. This position is both legally and factually incorrect.

12.    "SIPA is remedial legislation. As such it should be liberally construed to effect its

purposes" of protecting the investments of customers of broker-dealers and investment advisors.

*In re First State Securities Corp.*, 34 B.R. 492, 496 (S.D. Fla. 1980), citing *Tcherepnin*

*v. Knight*, 389 U.S. 332 (1967). The fundamental purpose of the SIPA was to protect the public

in the event that the entities with whom they dealt went bankrupt, or were otherwise unable to

satisfy their customer agreements. *SEC v. SJ. Salmon & Co., Inc.*, 375 F. Supp. 867, 871

(S.D.N.Y. 1974) ("The principal purpose of the [Securities Investor Protection] Act was to

protect investors against financial losses arising from the insolvency of their brokers."); SEC v.

Schreiber Bosse & Co., Inc., 368 F. Supp. 24 (N.D. Ohio 1973).

13.    Under SIPA, the term "customer" is a term of art, and does not have its ordinary

and customary meaning. *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *affd sub nom. In*

*re Stratton Oakmont*, 210 F.3d 420 (2d Cir. 2000). It is to be construed within the context of the

definitional section of the SIPA and as interpreted by the courts.

14.    Congress intended for "customer" to be broadly interpreted. In the first draft of

the bill, there was no entitlement to insurance under SIPA for any customer whose name or

interest was not disclosed on the records of the broker/dealer "if such recognition would increase

the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug. 4, 1969). Significantly, such exclusion was eliminated and the final bill did not include such exclusion.

15.    There is no statutory mandate that the funds or securities received by the "debtor" be received "directly" from the customer. Had this been a requirement, Congress would have clearly seen fit to so require it. Indeed, Section 9 of the SIPA (15 U.S.C. § 78fff-3(a)(5)), covering advances by the SIPC to the bankruptcy trustee, states that:

> no advance shall be made by SIPC to the trustee to payor otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, *other than to the extent that it shall be established to the satisfaction of the trustee*, from the books and records of the debtor or from the books and records of a broker of dealer or bank, or otherwise, *that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker of dealer or bank ..., in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.*

(emphasis added).

16.    Hence, Claimant is entitled to have its claims under SIPA allowed by this Court and the determination notice of the Trustee overruled and rejected.

17.    **Objection Second:** The notice of Trustee's determination of claim fails to comply with the December 23, 2008 Order of the Court which had directed the Trustee "to satisfy customers' claims in accordance with the Debtors [*i.e.*, BLMIS] books and records or are otherwise established to the satisfaction of the Trustee" (Dec. 23, 2008 Order at p. 5). The Claimant's Claims included statements which showed a total balance of $1,221,518.15.  This statement is the best evidence of the amount owed to the Claimant. Accordingly, the claim should be allowed in full.

4

**Reservation of Rights**

18.    Claimant reserves the right to amend, alter, revise or supplement this Objection; any failure to object on a particular procedural or substantive ground shall not be deemed a waiver of any such rights, all of which are hereby reserved.

19.    Claimant reserves all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, all rights of discovery.

**Relief Requested**

20.    For the reasons set forth herein, Claimant's claims should be allowed in full by this Court to the extent covered under SIPA and the Trustee's objection should be overruled.

21.    For the reasons stated herein, the Court should direct the Security Investors Protection Corporation to issue immediate payment to the Claimant in the amount of $1,221,518.15, plus interest from the date of the claim.

22.    In making the claim against BLMIS, Claimant does not waive any claim against Fairfield Sentry, its officers, principals, accountants, attorneys, or any other persons, parties or entities.

23.    To the extent applicable, Claimant joins in the claims of any other Claimants similarly situated and demands such further relief as this Court shall deem fair and equitable.

Dated: White Plains, New York
        January 5, 2010


BELLIN & ASSOCIATES LLC

By: _____

Aytan Y. Bellin
Attorneys for St. Stephens School
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
Email: aytan.bellin@bellinlaw.com

6

# EXHIBIT A

# BELLIN & ASSOCIATES LLC

ATTORNEYS-AT-LAW
85 MILES AVENUE
WHITE PLAINS, NEW YORK 10606
TEL (914) 358-5345
FAX (212) 571-0284

OF COUNSEL
JULIET P. KALIB

AYTAN Y. BELLIN*
ANNE E. HARNES†

*ALSO ADMITTED IN NJ
†ALSO ADMITTED IN CT

February 25, 2009

OVERNIGHT BY FEDERAL EXPRESS
Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Re: SIPIC Claims of St. Stephen's School - Faculty Fund 2

Dear Mr. Picard:

I am the attorney for the St. Stephen's School ("St. Stephens"), whose mailing address is 15 Gramercy Park South, New York, New York 10003. St. Stephens invested monies in Fairfield Sigma Limited which in turn invested those monies in Bernard L. Madoff Investment Securities LLC. St. Stephens therefore contends that it is a "customer" under SIPA and entitled to make the enclosed customer claim. St. Stephens is sending a separate claim for another account under separate cover.

Enclosed, please find a claim for the St. Stephen's School Faculty Fund 2, account # 08730466 at Fairfield Sigma Limited. Also enclosed please find the latest account statement that St. Stephens has in its possession for this account and documents evidencing the initial investments in this account.

If you need anything else regarding these claims, please do not hesitate to contact me.

Sincerely,

Aytan Y. Bellin

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: _St. Stephen's School_

Mailing Address: _15 Gramercy Park South_

City: _New York_    State: _NY_    Zip: _10003_

Account No.: _St. Stephen's School Faculty Fund # 08730466_

Taxpayer I.D. Number (Social Security No.): _98001 3401_

**NOTE:**    **BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008:**

a.    The Broker owes me a Credit (Cr.) Balance of          $_____

b.    I owe the Broker a Debit (Dr.) Balance of             $_____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                      $_____

d.    If balance is zero, insert "None."                    _NONE_

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| 12/1/05 | Fairfield Sigma Limited | 3,105.8600 | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|     |     | <u>YES</u> | <u>NO</u> |
|-----|-----|-----|-----|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:_____

_____.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _February 18, 2009_   Signature _Duncan Pollock_
_Chair, Investment Committee_

Date _____   Signature_____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CITCO**

*Citco Fund Services*
*(Europe) B.V.*

**Duplicate Copy to: Account Contact**
**DUNCAN POLLACK**

| | |
|---|---|
| **Date** | : Aug-13-2008 |
| **Valuation date** | : Jul-31-2008 |
| **Fund Id** | : 04702 |
| **Holder Id** | : 00400802 |
| **Account Id** | : 08730466 |
| **Currency** | : EURO |
| **Email** | : MDPOL@AOL.COM |
| **FAX Number** | : 001 212 874 5781 |

**Account: ST STEPHENS SCHOOL FACULTY FUND 2**

## FAIRFIELD SIGMA LIMITED

### FUND NET ASSET VALUES

**Net Asset Value**

| | | Net Asset Value |
|---|---|---|
| **Opening Price** Jun-30-2008 | | 190.7574 |
| **Closing Price** Jul-31-2008 | | 192.3790 |

### ACCOUNT VALUE

| | | voting-shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| **Opening Market Value of Account** | Jun-30-2008 | 3,105.8600 | 190.7574 | 592,465.78 |
| **Add: Additions** | | 0.0000 | | 0.00 |
| **Less: Subtractions** | No transactions in period | 0.0000 | | 0.00 |
| **Closing Market Value of Account** | Jul-31-2008 | 3,105.8600 | 192.3790 | 597,502.24 |
| Increase or decrease in market value due to change in the price in the period | | | | 5,036.46 |

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amsterdamweb@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax:   (31-20) 5722610*
*Chamber of Commerce 33253773*

525

Name of Subscriber: *St. Stephen's Long Term Investment Acct.*

Amount of Subscription: *Total Holdings* EUR *( Switch total Holdings from FIF )*

**SUBSCRIPTION AGREEMENT**

**FAIRFIELD SIGMA LIMITED**

*SSS Long Term Inv. Acct.*
*+*
*SSS Faculty Fund 2*

Fairfield Sigma Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2100
Facsimile: (31-20) 572-2610

Dear Sirs:

1.   **Subscription.** The undersigned ("Subscriber") hereby subscribes for redeemable, voting, participating shares, each with a par value 0.01EUR per share (the "Shares"), of Fairfield Sigma Limited (the "Fund"), an international business company organized under the laws of the British Virgin Islands (the "BVI"). The Shares will be offered at a subscription price per Share equal to the Fund's Net Asset Value per Share as of the opening of business on the effective date of purchase. The Shares have identical rights and privileges in all respects (including the right to one vote per Share). All capitalized terms used in this Agreement that are not defined herein have the meanings set forth in the Fund's Confidential Private Placement Memorandum, as amended from time to time (the "Memorandum"). Subscriber subscribes for that number of Shares that can be purchased for the subscription amount above. Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the "Fund Documents").

2.   **Acceptance or Rejection.** If the Fund accepts this Subscription, Subscriber shall become a shareholder of the Fund and bound by the Fund Documents. The minimum initial subscription is 200,000 EUR. The Board of Directors, in it sole discretion, may accept subscriptions of a lesser amount or establish different minimums in the future. The Board of Directors, in consultation with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), may reject this subscription, in whole or in part, for any reason. Subscriptions shall become irrevocable to the subscriber on the fifth to the last business day of the month in which such subscription is received by the Fund. If rejected, the Fund will promptly return the subscription funds, with any interest actually earned thereon, and this Agreement will be void.

3.   **Payment of Subscription Funds.** Subscription funds should be wired to the Fund at the following account, concurrently with the delivery of this Agreement to the Fund. In order to comply with anti-money laundering regulations applicable to the Fund and Citco Fund Services (Europe) B.V. (the "Administrator"), the sample letter attached hereto as Schedule A MUST be completed by the financial institution which will be remitting the subscription moneys on behalf of the subscriber.

1

*Intermediary Bank – SWIFT Field 56*
KBC Bank N.V., Brussels
BIC: KREDBEBB

*Account with Institution – SWIFT Field 57*
Account Name: Citco Bank Nederland N.V. Dublin Branch
International Bank Account Number: BE96 4809 5884 4705
BIC: CITCIE2D

*Beneficiary Customer –SWIFT Field 59*
Beneficiary Account Name: Fairfield Sigma Limited
Beneficiary International Bank Account Number (IBAN): IE98 CITC 0000 0035 8108 01

*Reference – SWIFT Field 70*: Name and Full Address Subscriber:


4.      Delivery of Subscription Agreement.  Subscriber should fax and mail an executed, completed copy of this Agreement to the Fund at the above facsimile number and address, with a copy to the Manager at the following address: Fairfield Greenwich(Bermuda) Ltd., 12 Church street, Suite 606, Hamilton, Bermuda, fax no. 441-292-5413.

5.      Status Representations.

a.      SEC Regulation S.  Subscriber is not a "U.S. Person" under Regulation S promulgated under the Securities Act of 1933, as amended (the "1933 Act"), because (a) if an individual, Subscriber is not a resident of the United States of America or its territories or possessions (the "U.S.") or a "resident alien" as defined under the U.S. income tax laws, and (b) if an entity, Subscriber is not any of the following: (i) a partnership or corporation organized or incorporated under U.S. law; (ii) an estate of which an executor or administrator is a U.S. Person; (iii) a trust of which a trustee is a U.S. Person; (iv) any agency or branch of a foreign entity located in the U.S.; (v) a partnership or corporation organized under non-U.S. law but formed by a U.S. Person principally for the purpose of investing in securities not registered under the 1933 Act (unless organized and incorporated, and owned, by accredited investors, as defined in Rule 501 promulgated under the 1933 Act who are not natural persons, estates or trusts); (vi) a non-discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary for a U.S. Person; or (vii) a discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the U.S.

b.      Subscriber acknowledges that, except with the consent of the Fund, the Shares may not be owned by a U.S. Person, that the Shares will not at any time be held for the account or benefit, directly or indirectly, of any U.S. Person, and that, except with the consent of the Fund, the Subscriber will not resell, reoffer or transfer any Shares or any interest therein to any person, including a U.S. Person or any non-U.S. Person subject to the above restrictions. Subscriber acknowledges that reoffers, resales or any transfers of the Shares is subject to the limitations imposed by the Fund's Articles of Association and may be made only in compliance with applicable securities laws and only with the prior written consent of the Board of Directors, which may, in its sole discretion, decline to issue any shares to, or register shares in the name of any person, and the Subscriber will not transfer any of its shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible to

2

purchase shares in the Fund as described above and in the Memorandum. Subscriber understands that the Fund may compulsorily repurchase such Shares in accordance with the Fund Documents.

   c. CFTC Regulation. Subscriber is not a "U.S. Person" under Regulation Sec. 4.7 promulgated under the U.S. Commodity Exchange Act of 1974, as amended, ("Rule 4.7") because (a) if an individual, Subscriber is not a resident of the U.S., and (b) if an entity, Subscriber is not (i) a partnership, corporation or other entity (other than an entity organized principally for passive investment) organized under U.S. law or with its principal place of business in the U.S.; (ii) an entity (whether organized under U.S. or non-U.S. law) that is organized principally for passive investment and that is beneficially owned 10% or more by U.S. Persons or persons who are not otherwise "qualified eligible persons" as defined in Rule 4.7; (iii) an estate or trust, the income of which is subject to U.S. income taxation regardless of source; or (iv) a pension plan for the employees, officers or principals of an entity organized or with its principal place of business in the U.S.

   d. Professional Investor Status. Subscriber is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI, because (i) Subscriber declares that his ordinary business involves, whether for his own account or the account of others, the acquisition or disposal of property of the same kind as the property, or a substantial part of the property of the Fund, or (ii) Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000, or its equivalent in the Subscriber's local currency, and Subscriber consents to being treated as a Professional Investor for the purpose of investing in the Fund.

   e. Employee Benefit Plans. Investment in the Fund by "Employee Benefit Plans", as defined under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), may be limited to less than 25% of the total capital of the Fund (excluding investments by the Investor. To help determine whether investment by Subscriber is included in the 25% limitation, Subscriber has intialed here (_____) if it is an Employee Benefit Plan (such as a retirement account, corporate pension or profit sharing plan, or governmental retirement plan). If the Subscriber at any time becomes an Employee Benefit Plan, the Subscriber shall forthwith inform this to the Fund.

If the Subscriber is an insurance company investing the assets of its general account in the Fund, less than 25% of the Subscriber's general account constitute assets of an Employee Benefit Plan (as determined under Section 401(c) of ERISA). If the Subscriber is such an entity and at any time 25% or more of its general account constitute assets of an Employee Benefit Plan, the Subscriber shall forthwith disclose to the Fund the amount of Employee Benefit Plan assets held in its general account. By signing this Subscription Agreement, the Subscriber expressly acknowledges that the Fund may require that the Subscriber redeem its Shares and withdraw from the Fund if 25% or more of the Subscriber's general account constitutes assets of an Employee Benefit Plan.

6.  Related Professionals.
    (Subscriptions cannot be accepted if this section is not completed.)

    (i)  Please indicate, if applicable, the name of the person at Fairfield Greenwich
         Group with whom this subscription is associated.

    Name:_____

    Not Applicable: _____

    (ii)  Please indicate, if applicable, the name of the person and/or entity who acts as
          an advisor with respect to this subscription.

    Name:_____

    Not Applicable: _____

7.  Receipt of Fund Documents and Other Documents. Subscriber has received and read
a copy of the Memorandum. Subscriber acknowledges that in making a decision to subscribe for
Shares, Subscriber has relied solely on the Fund Documents and any independent investigation of the
Subscriber, and has not relied upon any representation inconsistent with the information in the Fund
Documents. Subscriber is not relying on the Fund, the Fund's Board of Directors, administrator,
Investment Manager, or any other person or entity with respect to the legal, tax, and other economic
considerations involved in this investment other than the Subscriber's own advisers.   The
Subscriber's investment in the Shares is consistent with the investment purposes, objectives and cash
flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for
diversification and liquidity.

8.  Subscriber Sophistication and Financial Condition. Subscriber has such knowledge
and experience in financial and business matters that it is capable of evaluating the risks of this
investment.   Subscriber has obtained sufficient information from the Fund or its authorized
representatives to evaluate such risks and has consulted with the Subscriber's own advisors and is
fully informed as to the legal and tax requirements of the Subscriber's own country regarding the
purchase of the Shares. Subscriber is not relying on the Board of Directors, or any other person or
entity with respect to the legal, tax and other economic considerations involved in this investment
other than the Subscriber's own advisers. Subscriber has not relied on any person as a purchaser
representative in connection with that evaluation. Subscriber has evaluated the risks of investing in
the Fund, understands there are substantial risks of loss incidental to the purchase of the Shares and
has determined that the Shares are a suitable investment for it. Subscriber's investment is consistent
with its investment purposes and objectives and cash flow requirements, and will not adversely affect
Subscriber's overall need for diversification and liquidity. Subscriber can afford a complete loss of
this investment, and can afford to hold the Shares for an indefinite time.

Subscriber understands that (a) no governmental agency has passed upon the Shares or made any
findings or determination as to the fairness of this investment; and (b) the representations, warranties,
agreements, undertakings and acknowledgments made by the Subscriber in this Subscription
Agreement will be relied upon by the Fund, the Board of Directors, the Investment Manager and the
Administrator in determining the Subscriber's suitability as a purchaser of Shares and the Fund's

compliance with various securities laws, and shall survive the Subscriber's becoming a shareholder of the Fund.

All information which the Subscriber has provided to the Fund or the Administrator concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

The Subscriber irrevocably authorizes the Fund and/or the Administrator to disclose, at any time, any information held by the Fund or the Administrator in relation to the Subscriber or his investment in the Fund to the Investment Manager or any affiliate of the Investment Manager or the Administrator.

9.    Redemptions.  Subscriber is aware of the limited provisions for redemptions and has read the sections in the Memorandum entitled "Transfers, Redemptions and Termination." Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the Shares for an indefinite period of time.  Subscriber understands that the Fund will generally redeem Shares as of the last day of each month (the "Redemption Date"); provided that the redemption request is received by the Administrator in proper form no later than 5:00 p.m. Amsterdam time on a date that is at least 15 calendar days prior to the Redemption Date.

10.    Valuations.  Subscriber understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value.

11.    Beneficial Owner.  Subscriber acknowledges, or if the Subscriber is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Subscriber has advised the Beneficial Owner that (a) the Investment Manager, on behalf of the Fund, may enter into agreements with placement agents or other sales relationships to market the Fund providing for a payment from the Investment Manager to the particular placement agent for the introduction, out of the fees the Investment Manager receives from the Fund.

12.    Investment Intent.  Subscriber is buying the Shares solely for investment purposes and not with a view to distribute, subdivide or resell the Shares.

13.    Subsequent Subscriptions.  If Subscriber subscribes for additional Shares at a later date, Subscriber shall be deemed to have re-executed this Agreement in subscribing for those Shares.

14.    Registration of Shares; Certificates.    The Shares issued to Subscriber will be registered on the Fund's books in the name of Subscriber and not any nominee.  Share certificates will not be issued to Subscriber unless it so requests in writing.

15.    Pledge of Underlying Fund Assist.  The Subscriber hereby agrees that the assets underlying his/its Shares (the "Pledged Assets") shall be pledged as collateral to the entity extending credit to the Fund in connection with the line of credit and the currency trading account described in the Memorandum (the "Pledgee"). The undersigned further agrees that such Pledgee may take any

5

and all action with respect to the Pledged Assets, in the event the Fund fails to pay any amounts owed to such Pledgee on account of the Shares, without notice, including, but not limited to ordering the sale of any of the Pledged Assets at any time that there is a default in the Fund's obligations and applying the proceeds of such sale in payment of any debt owed by the Fund, to such Pledgee on account of the Shares, and that any action taken by the Pledgee with respect to such Pledged Assets shall not be deemed a waiver as to any other action available to the Pledgee with respect to such obligations.

16.     Binding Nature of Agreement. This Agreement shall be binding upon Subscriber and its heirs, representatives, successors and permitted assigns, and shall inure to the benefit of the Fund's successors and assigns. The Agreement shall survive the acceptance of the subscription. If Subscriber consists of more than one person, the Agreement shall be the joint and several obligation of each person.

17.     Governing Law. This Agreement shall be governed and enforced in accordance with New York law, without giving effect to its conflict of laws provisions.

18.     Legal Representation. Subscriber understands that the Law Offices of Andrew E. Goldstein acts as U.S. counsel to the Fund, and as counsel to the Investment Manager and its affiliates. Subscriber also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Law Offices of Andrew E. Goldstein will not be representing the shareholder, and no independent counsel has been engaged by the Fund to represent the shareholders.

19.     Authority. Subscriber's execution, delivery and performance of this Agreement are within its powers, have been duly authorized and will not constitute or result in a breach or default under or conflict with any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which Subscriber is a party or by which it is bound, and, if Subscriber is not an individual, will not violate any provision of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Subscriber. The signature on this Agreement is genuine, and the signatory, if Subscriber is an individual, has legal competence and capacity to execute the Agreement, or, if Subscriber is not an individual, the signatory has been duly authorized to execute the Agreement, and the Agreement constitutes a legal, valid and binding obligation of Subscriber, enforceable in accordance with its terms.

20.     New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

21.     Office of Foreign Assets Control. (A) Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or

6

indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(B)     Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and (ii) to the extent Subscriber has any beneficial owners[4] or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such beneficial owners, (b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

(C)     If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

---

[1]      The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]      Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

[3]      Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]      Beneficial owners will include, but shall not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund of funds; (v) the grantor of a revocable or grantor trust (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners..

7

(D)     Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

(E)     If any of the foregoing representations cease to be true, Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

22.     Anti Money-Laundering.  Subscriber represents that the subscription funds are not the direct or indirect proceeds of drug trafficking or other such criminal activity, including actions that contravene the anti-money laundering laws and regulations of any country.  Subscriber understands that, as part of the responsibility of the Fund and Administrator for protection against money-laundering, the Administrator may require a detailed verification of Subscriber's identity. Depending on the circumstances of each application, a detailed verification might not be required where Subscriber makes the payment from an account held in Subscriber's name at a recognized financial institution; or the application is made through a recognized intermediary. These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti money-laundering regulations. For example, an individual may be required to produce a copy of a passport or identification card duly certified by a notary public, together with evidence of his/her address such as a utility bill or bank statement and date of birth. In the case of entity subscribers, this may require production of a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors. The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of Subscriber. In the event of delay or failure by Subscriber to produce any information required for verification purposes, the Administrator may refuse to accept the subscription and the subscription monies relating thereto or in the case where the Shares have already been issued, the Subscriber acknowledges and agrees that it will not be able to redeem any Shares so issued until proper identification information has been provided. Subscriber further agrees that the Fund and any other service provider shall be held harmless and indemnified against any loss arising as a result of a failure to process the subscription or redemption if such information as has been required by the parties referred to has not been provided by Subscriber.

23.     Confidentiality.  The Fund may disclose the information about Subscriber that is contained herein as the Fund deems necessary to comply with applicable law or as required in any suit, action, or proceeding.

24.     Indemnification.  Subscriber agrees to indemnify and hold harmless the Fund and any other service provider to it, and any partner, manager, officer, director, shareholder, agent, employee or affiliate thereof, against any loss, liability or expense relating to any misrepresentation or breach of covenant by Subscriber herein or in any other document furnished by Subscriber in connection with its subscription.

25.     Enforceability.  If any provision hereof is invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent (and modified to the extent necessary to comply with that law) and its invalidity or unenforceability shall not affect any other provision hereof.

26.     Currencies.  Subscriber acknowledges that it is subscribing in a currency other than U.S. Dollars, Subscriber agrees that the Fund may sell such subscription funds at the market rate for

8

that currency and that the Shares will be issued to the value of the proceeds, minus the reasonable costs relating to the sale.

27.    Appointment of Revocable Proxy.    Subscriber hereby designates and appoints the Administrator with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by Shareholders present in person at that meeting. This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Administrator at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a Shareholder) received before the meeting.

28.    If Subscriber is acting as a Representative.    If Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder.    Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder. Subscriber also agrees to indemnify the Fund, the Administrator and their directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Subscription Agreement or perform the obligations hereof.

    If the Subscriber enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Subscriber represents and warrants that with respect to a Third Party entering into a Swap:  (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Memorandum and the Subscription Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Subscriber is not an agent of the Fund; and (d) the Third Party is an "eligible swap participant" and a "qualified eligible person" under Commodity Futures Trading Commission rules, and an "accredited investor" under Regulation D. Subscriber also agrees to indemnify the Fund, the Investment Manager and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines, and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

29.    Country-Specific Disclosures.        Subscriber has reviewed the country-specific disclosures contained in the Memorandum.

30.    Additional Information.   The Fund may request from the Subscriber such additional information as it may deem necessary to evaluate the eligibility of the Subscriber to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Subscriber to hold shares or to enable the Fund to determine its compliance with

applicable regulatory requirements or its tax status, and the Subscriber agrees to provide such information as may reasonably be requested.

Subscriber agrees to notify the Fund promptly if there is any change with respect to any of its information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement, binding on all parties, notwithstanding that all parties do not execute the same counterpart.

31.   Subscriber Information and Execution.

a.   Amount of Subscription.  *Total holdings EUR from FIF*

b.   Registration of Shares. The Shares issued to Subscriber are to be registered in the Fund's books in the name of (insert name and address):

*St. Stephen's School Long Term Invest Acct. 2*
*St. Stephen's School Faculty Fund 2*

c.   Written Communications. All written communications from the Fund to Subscriber should be sent to Subscriber at the following address (insert address):

*St. Stephen's School*
*15 Gramercy Park, So.*
*New York, NY*

d.   Telephone, Fax and Email: Telephone:

Fax *(212) 525-5638* Email: *S3NYC@aol.com*

e.   Domicile, Etc. Subscriber, if an individual, is a citizen of

*USA* and a resident of *USA* . Subscriber, if an entity, is organized under the laws of *USA* and has its principal place of business in *New York USA* .

f.   Authorized Persons (for Subscribers that are not corporate entities). The names of the persons authorized by Subscriber to give and receive instructions between the Fund and Subscriber, together with their signatures, are set forth below. Such persons are the only persons so authorized by Subscriber until further notice to the Fund by any one of such persons:

10

| Print Name | Signature |
|---|---|
| 1. *Duncan Pollock* | *Duncan Pollock* |
| 2. *Chair, Investment Committee* | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

The Administrator and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by Subscriber in written form or by facsimile. If instructions are given by Subscriber by facsimile, Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund, and Subscriber agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

For corporate entities, please provide an authorized signatory list which must include the name(s) and specimen signature(s) of the person(s) who are authorized by Subscriber to give and receive instructions between the Fund and Subscriber.

g.   Redemption Payments. Until further notice from Subscriber to the Fund, signed by any authorized person listed above, redemption or other payments by the Fund to Subscriber should be wired only to Subscriber and only as follows (please print or type):

11

Bank name: _HSBC bank USA_

Bank address: _452 Fifth Ave NY, NY 10018_

ABA/ CHIPS/ BIC Codes: _____

Account name: _St. Stephen's Cash Acct._

Account number: _134 707 508_

For further credit: _____

    h.   Financial Institution Wiring/Paying Subscription Monies.

Name: _____

Address: _____

Name of account at financial institution being debited for subscription

payment:

_____

Number of such account: _____

    i.   Execution. In witness whereof, Subscriber has executed this Agreement on
the date set forth below:

Date: _9/16/_ , 20_05_

For individuals

Print name: _____

Signature: _____

For entities

Print name: _St. Stephen's School_

Print name of authorized signatory: _Duncan Porlock_

Print title of authorized signatory: _Chairman, Investment Comm._

Signature: _Duncan Porlock_

[To be completed by the Fund]

THIS SUBNSCRIPTION AGREEMENT IS HEREBY ACCEPTED BY FAIRFIELD
SIGMA LIMITED

Date: _____,20__

Name of authorized signatory: _____

Title of authorized signatory: _____

Signature: _____

Subscriber's name: _____

13

## SCHEDULE A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE WIRED.

### SAMPLE LETTER

[to be placed on letterhead of the financial institution remitting payment]

Date

**Via mail and facsimile: (31-20) 572-2610**
Fairfield Sigma Limited
Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

Dear Sirs

<u>**RE:**</u>    <u>**FAIRFIELD SIGMA LIMITED (the "Fund")**</u>

1.    Name of Remitting Financial Institution:
2.    Address of Remitting Financial Institution:
3.    Name of Customer:
4.    Address of Customer:
5.    We have credited your account at [Bank], Account Number [number] for [amount] by order of [subscriber] on [date].

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

**Yours faithfully,**

Signed:    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Full Name:    ⎯⎯⎯⎯⎯

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Position:    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**For additional information, please contact the Administrator at Citico Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands, Telephone:  (31-20) 572-2100, Facsimile:  (31-20) 572-2610.**

# FAIRFIELD SIGMA LIMITED

## REDEMPTION REQUEST FORM

INSTRUCTIONS

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Fund.
Redeeming shareholders should complete and return this form, including page RR-3.

FAIRFIELD SIGMA LIMITED
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165 1043BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam
The Netherlands

Telephone no.: (31-20 )572-2114
Fax no.: (31-20) 572-2610

_____, 20__

Dear Sirs:

I hereby request redemption, as defined in and subject to all of the terms and conditions of the Confidential Private Placement Memorandum, as it may be amended from time to time (the "Memorandum"), of Fairfield Sigma Limited (the "Fund"), of _____ shares, representing [part/all] of my shares in the Fund. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least fifteen (15) calendar days prior written notice. Except as otherwise provided in the Memorandum, payment of the redemption proceeds will be made within thirty (30) days after the effective date of redemption.

I hereby represent and warrant that (i) I am the owner of the shares of the Fund to which this request relates, with full power and authority to request redemption of such shares; and (ii) I am not a "U.S. person" (as that term is defined in the Memorandum). These shares are not subject to any pledge or otherwise encumbered in any fashion. I acknowledge that my redemption will not be effective unless and until the release of any pledge of the assets underlying the shares in effect in connection with the Fund's currency hedging account described in the Memorandum. My signature has been guaranteed by a commercial bank acceptable to the Fund.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

_____

Bank Name

_____

Bank Address

_____

ABA/ CHIPS/ BIC Code

_____

Account Name

_____

Account Number:

**SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED**

**ENTITY SHAREHOLDER** (OR ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
PARTNERSHIP, CORPORATION
(OR ASSIGNEE) OR TRUST

*St. Stephen's School*

Name of Registered Owner of Shares

*15 Gramercy Park, So*

*New York, NY 10003*

Address

_____

Name of Subscriber

_____

Address

*Duncan Porter.*

Signature (of individual or assignee)

_____

Signature    (of    partner    authorized corporate officer or trustee)

*Chairman, Investment Committee*

Name and Title

_____

Please Print Name and Title

*9/16/05*

Date

_____

Date

_____

Signature (of individual or assignee)

_____

Signature    (of    partner    authorized corporate officer or trustee)

_____

Name and Title

_____

Please Print Name and Title

_____

Date

_____

Date

_____

Signatures guaranteed by:

RR-2

## REDEMPTION INFORMATION

**SHARE REGISTRATION**

St. Stephen's School
_Name_

15 Gramercy Park So.
_Address_ New York, NY 10003

USA
_Country of Residence_

(212) 505-7409
_Telephone_

_____
Telephone (Evenings)

(212) 505-7423
_Fax_

**MAILING (POST) INFORMATION**
(if other than address of registration)

_____
Name

_____
Address

_____
Country of Residence

_____
Telephone

_____
Telephone (Evenings)

_____
Fax

**BANK FOR TRANSFER OF REDEMPTION**

HSBC Bank USA
_Name_

452 Fifth Ave New York NY 10018
_Address_

USA
_Country of Residence_

(20) 525-5638
_Telephone_

_____
Telephone (Evenings)

_____
Fax

RR-3

[To be completed by the Fund]

THIS REDEMPTION REQUEST IS HEREBY ACCEPTED BY FAIRFIELD
SIGMA LIMITED

Date: _____, 200_

Name of authorized signatory: _____

Title of authorized signatory: _____

Signature: _____

Subscriber's name: _____

RR-4

**EXHIBIT B**

### REDEMPTION REQUEST FORM

**525**

**INSTRUCTIONS**

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Company. Redeeming shareholders should complete and return this form, including the information on page B-3.

FAIRFIELD INVESTORS (EURO) LIMITED
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam                    Telephone:    (31)20 572-2114
The Netherlands                        Fax:          (31)20 572-2610
Dated (month, day, year): _Sept. 16, 2005_

Dear Sirs

    I hereby request redemption, as defined in and subject to all of the terms and conditions of the Information Memorandum dated April 1, 2002, as amended, of Fairfield Investors (Euro) Limited, Ltd. (the "Company"), of ___all (100%)___ Shares, representing [part/all] of my Shares in the Company. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least forty-five (45) days prior written notice. Except as otherwise provided in the Information Memorandum, payment of the redemption proceeds will be made within thirty (30) business days after the effective date of redemption.

    I hereby represent and warrant that (i) I am the true, lawful and beneficial owner of the Shares of the Company to which this Request relates, with full power and authority to request redemption of such Shares; and (ii) I am not a "U.S. Person" (as that term is defined in the Offering Memorandum). These Shares are not subject to any pledge or otherwise encumbered in any fashion. My signature has been guaranteed by a commercial bank acceptable to the Company.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

Bank Name _____

Bank Address _____

ABA Number _____

Account Name _____

Account Number: _____

_Will not receive the payment - proceeds should be switched directly to the Fairfield Sigma (Euros) fund for Oct. 1, 2005 date._

# SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED

**ENTITY SHAREHOLDER** (OR ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
[PARTNERSHIP, CORPORATION (OR ASSIGNEE) OR TRUST]

*St. Stephens School Faculty Fund 2*

Name of Registered Owner of Shares

Name of Subscriber

*15 Gramercy Park, So.*
*New York, N Y 10003*

Address

Address

*Duncan Pirtg.*

Signature (of individual or assignee)

Signature (of partner authorized corporate officer or trustee)

*Duncan Porlock Chairman*
*Investment Committee*

Name and Title

Please Print Name and Title

*9/16/05*

Date

Date

Signature (of individual or assignee)

Signature (of partner authorized corporate officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signatures guaranteed by:

2

## REDEMPTION INFORMATION

**SHARE REGISTRATION**

**MAILING (POST) INFORMATION (if other than address of registration)**

St. Stephen's School Faculty Fund 2
_____
Name

_____
Name

15 Gramercy Park, 80
_____
Address   New York, NY 10003

_____
Address

USA
_____
Country of Residence

_____
Country of Residence

(212) 505 - 7409
_____
Telephone

_____
Telephone

_____
Telephone (Evenings)

_____
Telephone (Evenings)

(212) 505 - 7423
_____
Fax

_____
Fax

**BANK FOR TRANSFER OF REDEMPTION**

HSBC Bank USA
_____
Name

452 Fifth Ave New York, NY 10018
_____
Address

USA
_____
Country of Residence

(212) 525 - 5638
_____
Telephone

_____
Telephone (Evenings)

_____
Fax

3

**EXHIBIT B**

525      **REDEMPTION REQUEST FORM**
                **INSTRUCTIONS**

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Company. Redeeming shareholders should complete and return this form, including the information on page B-3.

FAIRFIELD INVESTMENT FUND LTD.
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam           Telephone:    (31)20 572-2100
The Netherlands             Fax:          (31)20 572-2610
Dated (month, day, year): _9_, _16_, _2005_

Dear Sirs

    I hereby request redemption, as defined in and subject to all of the terms and conditions of the Information Memorandum dated August 15, 2000, as amended, of Fairfield Investments, Ltd. (the "Company"), of _all (100%)_ representing [part/all] of my Shares in the Company. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least forty-five (45) business days prior written notice. Except as otherwise provided in the Information Memorandum, payment of the redemption proceeds will be made within thirty (30) business days after the effective date of redemption.

I hereby represent and warrant that (i) I am the true, lawful and beneficial owner of the Shares of the Company to which this Request relates, with full power and authority to request redemption of such Shares; and (ii) I am not a "U.S. Person" (as that term is defined in the Offering Memorandum). These Shares are not subject to any pledge or otherwise encumbered in any fashion. My signature has been guaranteed by a commercial bank acceptable to the Company.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

Bank Name

Bank Address

ABA Number

Account Name

Account Number:

*Will not receive the payment - proceeds should be switched directly to the Fairfield Sigma (Euros) fund for Oct. 1 2005 date.*

*DP.*

# SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED

**ENTITY SHAREHOLDER** (OR
ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
[PARTNERSHIP, CORPORATION (OR
ASSIGNEE) OR TRUST]

St. Stephen's School Long Term Inv. Acct. 2
Name of Registered Owner of Shares                    Name of Subscriber

15 Gramercy Park So.
Address
New York, NY 10003

Address

Duncan Pority.
Signature (of individual or assignee)

Signature (of partner authorized corporate
officer or trustee)

Duncan Pollock, Chair
Name and Title Investment Comm.

Please Print Name and Title

9/16/05
Date

Date

Signature (of individual or assignee)

Signature (of partner authorized corporate
officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signatures guaranteed by:

## REDEMPTION INFORMATION

**SHARE REGISTRATION** ✓

**MAILING (POST) INFORMATION** (if other than address of registration)

St. Stephen's School Long Term Inv. Acct. 2

Name _____ Name _____

15 Gramercy Park So.
New York, NY 10003
USA

Address _____ Address _____

Country of Residence _____ Country of Residence _____

(212) 505-7409

Telephone _____ Telephone _____

_____

Telephone (Evenings) _____ Telephone (Evenings) _____

(212) 505-7423

Fax _____ Fax _____

**BANK FOR TRANSFER OF REDEMPTION**

HSBC Bank USA

Name _____

452 Fifth Ave New York, NY 10018

Address _____

USA

Country of Residence _____

(212) 525-5638

Telephone _____

_____

Telephone (Evenings) _____

_____

Fax _____

CH02/22152945.1

# EXHIBIT B

# BELLIN & ASSOCIATES LLC

ATTORNEYS–AT–LAW
85 MILES AVENUE
WHITE PLAINS, NEW YORK 10606
TEL (914) 358-5345
FAX (212) 571-0284

OF COUNSEL
JULIET P. KALIB

AYTAN Y. BELLIN*
ANNE E. HARNES†

*ALSO ADMITTED IN NJ
†ALSO ADMITTED IN CT

February 25, 2009

OVERNIGHT BY FEDERAL EXPRESS
Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Re: First SIPIC Claim of St. Stephen's School - Long Term Inv. Acct. 2

Dear Mr. Picard:

I am the attorney for the St. Stephen's School ("St. Stephens"), whose mailing address is 15 Gramercy Park South, New York, New York 10003. St. Stephens invested monies in Fairfield Sigma Limited which in turn invested those monies in Bernard L. Madoff Investment Securities LLC. St. Stephens therefore contends that it is a "customer" under SIPA and entitled to make the enclosed customer claim. St. Stephens is sending a separate claim for another account under separate cover.

The enclosed claim is for the St. Stephen's School Long Term Inv. Acct. 2, account # 08730467 at Fairfield Sigma Limited. Enclosed please find the latest account statement that St. Stephens has in its possession for this account, documents evidencing the initial investment in this accounts and documents evidencing a September, 2006 additional investment by St. Stephens in the St. Stephen's School Long Term Inv. Acct. 2, account # 08730467 at Fairfield Sigma Limited.

If you need anything else regarding these claims, please do not hesitate to contact me.

Sincerely,

Aytan Y. Bellin

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: *St. Stephen's School*
Mailing Address: *15 Gramercy Place South*
City: *New York*    State: *NY*    Zip: *10003*
Account No.: *St. Stephen's School Long Term Inv. Acct 2 #08730467*
Taxpayer I.D. Number (Social Security No.): *98001340l*

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008**:

a.    The Broker owes me a Credit (Cr.) Balance of        $_____

b.    I owe the Broker a Debit (Dr.) Balance of        $_____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.        $_____

d.    If balance is zero, insert "None."        *NONE*

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|-----|-----|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| 12/1/05 | Fairfield Sigma Limited | 3,243.6800 | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:  IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. |  | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) |  | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. |  | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. |  | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:_____
_____.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _2/18/09_              Signature _Duncan Pollock_
Date _____       Signature _Chair, Investment Committee_

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CITCO**

*Citco Fund Services
(Europe) B.V.*

**Duplicate Copy to: Account Contact**
**DUNCAN POLLACK**

| | |
|---|---|
| **Date** | : Aug-13-2008 |
| **Valuation date** | : Jul-31-2008 |
| **Fund Id** | : 04702 |
| **Holder Id** | : 00400802 |
| **Account Id** | : 08730467 |
| **Currency** | : EURO |
| **Email** | : MDPOL@AOL.COM |
| **FAX Number** | : 001 212 874 5781 |

**Account: ST STEPHENS SCHOOL LONG TERM INV ACCT2**

## FAIRFIELD SIGMA LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| **Opening Price** Jun-30-2008 | | 190.7574 |
| **Closing Price** Jul-31-2008 | | 192.3790 |

### ACCOUNT VALUE

| | | voting-shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| **Opening Market Value of Account** | Jun-30-2008 | 3,243.6800 | 190.7574 | 618,755.96 |
| **Add: Additions** | | 0.0000 | | 0.00 |
| **Less: Subtractions** | No transactions in period | 0.0000 | | 0.00 |
| **Closing Market Value of Account** | Jul-31-2008 | 3,243.6800 | 192.3790 | 624,015.91 |
| **Increase or decrease in market value due to change in the price in the period** | | | | 5,259.95 |

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amsterdamweb@citco.com

*Citco Building
Telestone - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100
Fax:    (31-20) 5722610
Chamber of Commerce 33253773*

# Fax Transmittal

| | | | |
|---|---|---|---|
| **To:** | Citco | **Fax:** | 011 31 20 572 2610 |
| **From:** | Duncan Pollock | **Date:** | 9/28/2006 |
| **Re:** | St. Stephen's Account - Sigma | **Pages:** | 4 |

☐ **Urgent**      ☐ **For Review**      ☐ **Please Comment**      ☐ **Please Reply**      ☐ **Please Recycle**

Referring to the wire made for value date 9/26/06 in the name of St Stephen's School HSBC NY3 By order of St. Stephen's School for the beneficiary of Irongate Global Strategy Fund Limited in the amount of 99,985 Euros, I authorize you to transfer the proceeds directly to Fairfield Sigma in the name of St Stephens School Long Term Inv Acct 2 (an existing account), as per my conversation with Jeremy Norton at Fairfield Greenwich Group.

Duncan Pollock

Chairman, St. Stephen's Investment Committee

# Short Form Subscription Agreement
## For Existing Shareholders

**FAIRFIELD SIGMA LIMITED**
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2100
Facsimile: (31-20) 572-2610

## SHORT FORM SUBSCRIPTION AGREEMENT

**THIS APPLICATION IS TO BE USED ONLY BY EXISTING REGISTERED SHAREHOLDERS OF FAIRFIELD SIGMA LIMITED PURCHASING ADDITIONAL SHARES IN THE SAME REGISTERED NAME. IT MAY NOT BE USED BY NEW SUBSCRIBERS.**

The undersigned Subscriber (1) is an existing shareholder in Fairfield Sigma Limited ("Fund"), (2) has previously delivered a fully executed Subscription Agreement to the Fund, and (3) desires to subscribe for additional shares in the Fund. By executing in the space below, the undersigned shareholder hereby (1) requests that the Fund accept this short form subscription in lieu of completing an entirely new Subscription Agreement for the additional shares, (2) reaffirms each and every representation and covenant made by the undersigned in the original Subscription Agreement as of the date hereof, subject only to the changed information set forth below, and (3) represents that if the Subscriber is an entity, the person executing this Agreement has the full power and authority under the Subscriber's governing instruments and has been authorized to do so and the Subscriber has the full power and authority under its governing instruments to acquire shares of the Fund.

Please contact the Administrator prior to sending documents or funds to ascertain

whether the Fund is accepting additional capital.    New Subscription Information:

Subscriber:                              *St. Stephen's School Long Term Inv. Acct.*
Contribution Date:                       *25 Sept.*                    , 200*6*
Additional Contribution Amount:          *99,985*                      EUR

Changes to Subscription Agreement:         [✓] None
                                           [ ] Yes, as follows:

_____

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement on this *28* day of *Sept*, 200*6*

**Corporate, Partnership, Trust or Account Subscribers    Individual Subscribers**

*St. Stephens School*                         *Duncan Pollock*
Name of Entity (Print)                        Name (Print)

By: *Duncan Pollock*                          *Duncan Pollock*
Signature                                     Signature

*Duncan Pollock*
Name (Print)                                  Name of Joint Purchaser, If Any (Print)

RR-5

*Chair, Invest. Comm.*
Title

Telephone: *212 874-5780*

Fax: *212 874-5781*

E-mail: *mdpol@aol.com*

SUBSCRIPTION ACCEPTED AS OF _____, 200_.

FAIRFIELD SIGMA LIMITED

By:    _____

       Name: _____

       Title: _____

Signature _____

Telephone: _____

Fax: _____

RR-6

525

Name of Subscriber: *St. Stephen's Long Term Investment Acct.*

Amount of Subscription: *Total Holdings* EUR *(Switch total Holdings from FIF)*

**SUBSCRIPTION AGREEMENT**

*SSS Long Term Inv. Acct.*
*+*
**FAIRFIELD SIGMA LIMITED**

*SSS Faculty Fund*

Fairfield Sigma Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2100
Facsimile: (31-20) 572-2610
*OH*

Dear Sirs:

1.      Subscription.  The undersigned ("Subscriber") hereby subscribes for redeemable, voting, participating shares, each with a par value 0.01EUR per share (the "Shares"), of Fairfield Sigma Limited (the "Fund"), an international business company organized under the laws of the British Virgin Islands (the "BVI").  The Shares will be offered at a subscription price per Share equal to the Fund's Net Asset Value per Share as of the opening of business on the effective date of purchase.  The Shares have identical rights and privileges in all respects (including the right to one vote per Share).  All capitalized terms used in this Agreement that are not defined herein have the meanings set forth in the Fund's Confidential Private Placement Memorandum, as amended from time to time (the "Memorandum").  Subscriber subscribes for that number of Shares that can be purchased for the subscription amount above.  Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the "Fund Documents").

2.      Acceptance or Rejection.  If the Fund accepts this Subscription, Subscriber shall become a shareholder of the Fund and bound by the Fund Documents.  The minimum initial subscription is 200,000 EUR.  The Board of Directors, in it sole discretion, may accept subscriptions of a lesser amount or establish different minimums in the future.  The Board of Directors, in consultation with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), may reject this subscription, in whole or in part, for any reason.  Subscriptions shall become irrevocable to the subscriber on the fifth to the last business day of the month in which such subscription is received by the Fund.  If rejected, the Fund will promptly return the subscription funds, with any interest actually earned thereon, and this Agreement will be void.

3.      Payment of Subscription Funds.  Subscription funds should be wired to the Fund at the following account, concurrently with the delivery of this Agreement to the Fund.  In order to comply with anti-money laundering regulations applicable to the Fund and Citco Fund Services (Europe) B.V. (the "Administrator"), the sample letter attached hereto as Schedule A MUST be completed by the financial institution which will be remitting the subscription moneys on behalf of the subscriber.

1

**Intermediary Bank – SWIFT Field 56**
KBC Bank N.V., Brussels
BIC: KREDBEBB

**Account with Institution – SWIFT Field 57**
Account Name: Citco Bank Nederland N.V. Dublin Branch
International Bank Account Number: BE96 4809 5884 4705
BIC: CITCIE2D

**Beneficiary Customer –SWIFT Field 59**
Beneficiary Account Name: Fairfield Sigma Limited
Beneficiary International Bank Account Number (IBAN): IE98 CITC 0000 0035 8108 01

**Reference – SWIFT Field 70**: Name and Full Address Subscriber:

4.      Delivery of Subscription Agreement. Subscriber should fax and mail an executed, completed copy of this Agreement to the Fund at the above facsimile number and address, with a copy to the Manager at the following address: Fairfield Greenwich(Bermuda) Ltd., 12 Church street, Suite 606, Hamilton, Bermuda, fax no. 441-292-5413.

5.      Status Representations.

a.      SEC Regulation S. Subscriber is not a "U.S. Person" under Regulation S promulgated under the Securities Act of 1933, as amended (the "1933 Act"), because (a) if an individual, Subscriber is not a resident of the United States of America or its territories or possessions (the "U.S.") or a "resident alien" as defined under the U.S. income tax laws, and (b) if an entity, Subscriber is not any of the following: (i) a partnership or corporation organized or incorporated under U.S. law; (ii) an estate of which an executor or administrator is a U.S. Person; (iii) a trust of which a trustee is a U.S. Person; (iv) any agency or branch of a foreign entity located in the U.S.; (v) a partnership or corporation organized under non-U.S. law but formed by a U.S. Person principally for the purpose of investing in securities not registered under the 1933 Act (unless organized and incorporated, and owned, by accredited investors, as defined in Rule 501 promulgated under the 1933 Act who are not natural persons, estates or trusts); (vi) a non-discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary for a U.S. Person; or (vii) a discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the U.S.

b.      Subscriber acknowledges that, except with the consent of the Fund, the Shares may not be owned by a U.S. Person, that the Shares will not at any time be held for the account or benefit, directly or indirectly, of any U.S. Person, and that, except with the consent of the Fund, the Subscriber will not resell, reoffer or transfer any Shares or any interest therein to any person, including a U.S. Person or any non-U.S. Person subject to the above restrictions. Subscriber acknowledges that reoffers, resales or any transfers of the Shares is subject to the limitations imposed by the Fund's Articles of Association and may be made only in compliance with applicable securities laws and only with the prior written consent of the Board of Directors, which may, in its sole discretion, decline to issue any shares to, or register shares in the name of any person, and the Subscriber will not transfer any of its shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible to

2

purchase shares in the Fund as described above and in the Memorandum. Subscriber understands that the Fund may compulsorily repurchase such Shares in accordance with the Fund Documents.

        c.    CFTC Regulation. Subscriber is not a "U.S. Person" under Regulation Sec. 4.7 promulgated under the U.S. Commodity Exchange Act of 1974, as amended, ("Rule 4.7") because (a) if an individual, Subscriber is not a resident of the U.S., and (b) if an entity, Subscriber is not (i) a partnership, corporation or other entity (other than an entity organized principally for passive investment) organized under U.S. law or with its principal place of business in the U.S.; (ii) an entity (whether organized under U.S. or non-U.S. law) that is organized principally for passive investment and that is beneficially owned 10% or more by U.S. Persons or persons who are not otherwise "qualified eligible persons" as defined in Rule 4.7; (iii) an estate or trust, the income of which is subject to U.S. income taxation regardless of source; or (iv) a pension plan for the employees, officers or principals of an entity organized or with its principal place of business in the U.S.

        d.    Professional Investor Status. Subscriber is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI, because (i) Subscriber declares that his ordinary business involves, whether for his own account or the account of others, the acquisition or disposal of property of the same kind as the property, or a substantial part of the property of the Fund, or (ii) Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000, or its equivalent in the Subscriber's local currency, and Subscriber consents to being treated as a Professional Investor for the purpose of investing in the Fund.

        e.    Employee Benefit Plans. Investment in the Fund by "Employee Benefit Plans", as defined under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), may be limited to less than 25% of the total capital of the Fund (excluding investments by the Investor. To help determine whether investment by Subscriber is included in the 25% limitation, Subscriber has intialed here (_____) if it is an Employee Benefit Plan (such as a retirement account, corporate pension or profit sharing plan, or governmental retirement plan). If the Subscriber at any time becomes an Employee Benefit Plan, the Subscriber shall forthwith inform this to the Fund.

If the Subscriber is an insurance company investing the assets of its general account in the Fund, less than 25% of the Subscriber's general account constitute assets of an Employee Benefit Plan (as determined under Section 401(c) of ERISA). If the Subscriber is such an entity and at any time 25% or more of its general account constitute assets of an Employee Benefit Plan, the Subscriber shall forthwith disclose to the Fund the amount of Employee Benefit Plan assets held in its general account. By signing this Subscription Agreement, the Subscriber expressly acknowledges that the Fund may require that the Subscriber redeem its Shares and withdraw from the Fund if 25% or more of the Subscriber's general account constitutes assets of an Employee Benefit Plan.

6.   Related Professionals.
(Subscriptions cannot be accepted if this section is not completed.)

(i)    Please indicate, if applicable, the name of the person at Fairfield Greenwich
Group with whom this subscription is associated.

Name:_____

Not Applicable: _____

(ii)   Please indicate, if applicable, the name of the person and/or entity who acts as
an advisor with respect to this subscription.

Name:_____

Not Applicable: _____

7.    Receipt of Fund Documents and Other Documents. Subscriber has received and read
a copy of the Memorandum. Subscriber acknowledges that in making a decision to subscribe for
Shares, Subscriber has relied solely on the Fund Documents and any independent investigation of the
Subscriber, and has not relied upon any representation inconsistent with the information in the Fund
Documents. Subscriber is not relying on the Fund, the Fund's Board of Directors, administrator,
Investment Manager, or any other person or entity with respect to the legal, tax, and other economic
considerations involved in this investment other than the Subscriber's own advisers.   The
Subscriber's investment in the Shares is consistent with the investment purposes, objectives and cash
flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for
diversification and liquidity.

8.    Subscriber Sophistication and Financial Condition. Subscriber has such knowledge
and experience in financial and business matters that it is capable of evaluating the risks of this
investment.   Subscriber has obtained sufficient information from the Fund or its authorized
representatives to evaluate such risks and has consulted with the Subscriber's own advisors and is
fully informed as to the legal and tax requirements of the Subscriber's own country regarding the
purchase of the Shares. Subscriber is not relying on the Board of Directors, or any other person or
entity with respect to the legal, tax and other economic considerations involved in this investment
other than the Subscriber's own advisers. Subscriber has not relied on any person as a purchaser
representative in connection with that evaluation. Subscriber has evaluated the risks of investing in
the Fund, understands there are substantial risks of loss incidental to the purchase of the Shares and
has determined that the Shares are a suitable investment for it. Subscriber's investment is consistent
with its investment purposes and objectives and cash flow requirements, and will not adversely affect
Subscriber's overall need for diversification and liquidity. Subscriber can afford a complete loss of
this investment, and can afford to hold the Shares for an indefinite time.

Subscriber understands that (a) no governmental agency has passed upon the Shares or made any
findings or determination as to the fairness of this investment; and (b) the representations, warranties,
agreements, undertakings and acknowledgments made by the Subscriber in this Subscription
Agreement will be relied upon by the Fund, the Board of Directors, the Investment Manager and the
Administrator in determining the Subscriber's suitability as a purchaser of Shares and the Fund's

compliance with various securities laws, and shall survive the Subscriber's becoming a shareholder of the Fund.

All information which the Subscriber has provided to the Fund or the Administrator concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

The Subscriber irrevocably authorizes the Fund and/or the Administrator to disclose, at any time, any information held by the Fund or the Administrator in relation to the Subscriber or his investment in the Fund to the Investment Manager or any affiliate of the Investment Manager or the Administrator.

9.      Redemptions. Subscriber is aware of the limited provisions for redemptions and has read the sections in the Memorandum entitled "Transfers, Redemptions and Termination." Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the Shares for an indefinite period of time.    Subscriber understands that the Fund will generally redeem Shares as of the last day of each month (the "Redemption Date"); provided that the redemption request is received by the Administrator in proper form no later than 5:00 p.m. Amsterdam time on a date that is at least 15 calendar days prior to the Redemption Date.

10.     Valuations. Subscriber understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value.

11.     Beneficial Owner. Subscriber acknowledges, or if the Subscriber is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Subscriber has advised the Beneficial Owner that (a) the Investment Manager, on behalf of the Fund, may enter into agreements with placement agents or other sales relationships to market the Fund providing for a payment from the Investment Manager to the particular placement agent for the introduction, out of the fees the Investment Manager receives from the Fund.

12.     Investment Intent. Subscriber is buying the Shares solely for investment purposes and not with a view to distribute, subdivide or resell the Shares.

13.     Subsequent Subscriptions. If Subscriber subscribes for additional Shares at a later date, Subscriber shall be deemed to have re-executed this Agreement in subscribing for those Shares.

14.     Registration of Shares; Certificates.     The Shares issued to Subscriber will be registered on the Fund's books in the name of Subscriber and not any nominee.   Share certificates will not be issued to Subscriber unless it so requests in writing.

15.     Pledge of Underlying Fund Assist. The Subscriber hereby agrees that the assets underlying his/its Shares (the "Pledged Assets") shall be pledged as collateral to the entity extending credit to the Fund in connection with the line of credit and the currency trading account described in the Memorandum (the "Pledgee"). The undersigned further agrees that such Pledgee may take any

5

and all action with respect to the Pledged Assets, in the event the Fund fails to pay any amounts owed to such Pledgee on account of the Shares, without notice, including, but not limited to ordering the sale of any of the Pledged Assets at any time that there is a default in the Fund's obligations and applying the proceeds of such sale in payment of any debt owed by the Fund, to such Pledgee on account of the Shares, and that any action taken by the Pledgee with respect to such Pledged Assets shall not be deemed a waiver as to any other action available to the Pledgee with respect to such obligations.

16.     Binding Nature of Agreement. This Agreement shall be binding upon Subscriber and its heirs, representatives, successors and permitted assigns, and shall inure to the benefit of the Fund's successors and assigns. The Agreement shall survive the acceptance of the subscription. If Subscriber consists of more than one person, the Agreement shall be the joint and several obligation of each person.

17.     Governing Law. This Agreement shall be governed and enforced in accordance with New York law, without giving effect to its conflict of laws provisions.

18.     Legal Representation. Subscriber understands that the Law Offices of Andrew E. Goldstein acts as U.S. counsel to the Fund, and as counsel to the Investment Manager and its affiliates. Subscriber also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Law Offices of Andrew E. Goldstein will not be representing the shareholder, and no independent counsel has been engaged by the Fund to represent the shareholders.

19.     Authority. Subscriber's execution, delivery and performance of this Agreement are within its powers, have been duly authorized and will not constitute or result in a breach or default under or conflict with any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which Subscriber is a party or by which it is bound, and, if Subscriber is not an individual, will not violate any provision of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Subscriber. The signature on this Agreement is genuine, and the signatory, if Subscriber is an individual, has legal competence and capacity to execute the Agreement, or, if Subscriber is not an individual, the signatory has been duly authorized to execute the Agreement, and the Agreement constitutes a legal, valid and binding obligation of Subscriber, enforceable in accordance with its terms.

20.     New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

21.     Office of Foreign Assets Control. (A) Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or

6

indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(B)     Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and (ii) to the extent Subscriber has any beneficial owners[4] or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such beneficial owners, (b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

(C)     If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

---

[1]     The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]     Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

[3]     Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]     Beneficial owners will include, but shall not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund of funds; (v) the grantor of a revocable or grantor trust (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners..

7

(D)     Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

(E)     If any of the foregoing representations cease to be true, Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

22.     Anti Money-Laundering.  Subscriber represents that the subscription funds are not the direct or indirect proceeds of drug trafficking or other such criminal activity, including actions that contravene the anti-money laundering laws and regulations of any country.  Subscriber understands that, as part of the responsibility of the Fund and Administrator for protection against money-laundering, the Administrator may require a detailed verification of Subscriber's identity. Depending on the circumstances of each application, a detailed verification might not be required where Subscriber makes the payment from an account held in Subscriber's name at a recognized financial institution; or the application is made through a recognized intermediary. These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti money-laundering regulations. For example, an individual may be required to produce a copy of a passport or identification card duly certified by a notary public, together with evidence of his/her address such as a utility bill or bank statement and date of birth. In the case of entity subscribers, this may require production of a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors. The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of Subscriber. In the event of delay or failure by Subscriber to produce any information required for verification purposes, the Administrator may refuse to accept the subscription and the subscription monies relating thereto or in the case where the Shares have already been issued, the Subscriber acknowledges and agrees that it will not be able to redeem any Shares so issued until proper identification information has been provided. Subscriber further agrees that the Fund and any other service provider shall be held harmless and indemnified against any loss arising as a result of a failure to process the subscription or redemption if such information as has been required by the parties referred to has not been provided by Subscriber.

23.     Confidentiality.  The Fund may disclose the information about Subscriber that is contained herein as the Fund deems necessary to comply with applicable law or as required in any suit, action, or proceeding.

24.     Indemnification.  Subscriber agrees to indemnify and hold harmless the Fund and any other service provider to it, and any partner, manager, officer, director, shareholder, agent, employee or affiliate thereof, against any loss, liability or expense relating to any misrepresentation or breach of covenant by Subscriber herein or in any other document furnished by Subscriber in connection with its subscription.

25.     Enforceability.  If any provision hereof is invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent (and modified to the extent necessary to comply with that law) and its invalidity or unenforceability shall not affect any other provision hereof.

26.     Currencies.  Subscriber acknowledges that it is subscribing in a currency other than U.S. Dollars, Subscriber agrees that the Fund may sell such subscription funds at the market rate for

8

that currency and that the Shares will be issued to the value of the proceeds, minus the reasonable costs relating to the sale.

27.    <u>Appointment of Revocable Proxy</u>.   Subscriber hereby designates and appoints the Administrator with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by Shareholders present in person at that meeting. This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Administrator at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a Shareholder) received before the meeting.

28.    <u>If Subscriber is acting as a Representative</u>.   If Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder.   Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder. Subscriber also agrees to indemnify the Fund, the Administrator and their directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Subscription Agreement or perform the obligations hereof.

    If the Subscriber enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Subscriber represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.,* certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Memorandum and the Subscription Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Subscriber is not an agent of the Fund; and (d) the Third Party is an "eligible swap participant" and a "qualified eligible person" under Commodity Futures Trading Commission rules, and an "accredited investor" under Regulation D. Subscriber also agrees to indemnify the Fund, the Investment Manager and their officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines, and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

29.    <u>Country-Specific Disclosures</u>.        Subscriber has reviewed the country-specific disclosures contained in the Memorandum.

30.    <u>Additional Information.</u> The Fund may request from the Subscriber such additional information as it may deem necessary to evaluate the eligibility of the Subscriber to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Subscriber to hold shares or to enable the Fund to determine its compliance with

applicable regulatory requirements or its tax status, and the Subscriber agrees to provide such information as may reasonably be requested.

Subscriber agrees to notify the Fund promptly if there is any change with respect to any of its information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement, binding on all parties, notwithstanding that all parties do not execute the same counterpart.

31.  Subscriber Information and Execution.

   a.  Amount of Subscription. _Total holdings EUR from FIF_

   b.  Registration of Shares. The Shares issued to Subscriber are to be registered in the Fund's books in the name of (insert name and address):

_St. Stephen's School Long Term Invest Acct. 2_

_St. Stephen's School Faculty Fund 2_

   c.  Written Communications. All written communications from the Fund to Subscriber should be sent to Subscriber at the following address (insert address):

_St. Stephen's School_
_15 Gramercy Park, So._
_New York, NY_

   d.  Telephone, Fax and Email: Telephone:

Fax _(212) 525-5638_ Email: _S3NYC@aol.com_

   e.  Domicile, Etc. Subscriber, if an individual, is a citizen of

_USA_ and a resident of _USA_. Subscriber,

if an entity, is organized under the laws of _USA_ and has its principal

place of business in _New York USA_.

   f.  Authorized Persons (for Subscribers that are not corporate entities). The names of the persons authorized by Subscriber to give and receive instructions between the Fund and Subscriber, together with their signatures, are set forth below. Such persons are the only persons so authorized by Subscriber until further notice to the Fund by any one of such persons:

| Print Name | Signature |
|---|---|
| 1. Duncan Pollock | Duncan Pollock |
| 2. Chair, Investment Committee | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

The Administrator and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by Subscriber in written form or by facsimile. If instructions are given by Subscriber by facsimile, Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund, and Subscriber agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

For corporate entities, please provide an authorized signatory list which must include the name(s) and specimen signature(s) of the person(s) who are authorized by Subscriber to give and receive instructions between the Fund and Subscriber.

       g.    Redemption Payments. Until further notice from Subscriber to the Fund, signed by any authorized person listed above, redemption or other payments by the Fund to Subscriber should be wired only to Subscriber and only as follows (please print or type):

Bank name: _HSBC Bank USA_

Bank address: _452 Fifth Ave NY, NY 10018_

ABA/ CHIPS/ BIC Codes: _____

Account name: _St. Stephen's Cash Acct._

Account number: _134707508_

For further credit: _____

    h.   Financial Institution Wiring/Paying Subscription Monies.

Name: _____

Address: _____

Name of account at financial institution being debited for subscription

payment: _____

Number of such account: _____

    i.   Execution. In witness whereof, Subscriber has executed this Agreement on the date set forth below:

Date: _9/16/_ , 20_05_

<u>For individuals</u>

Print name: _____

Signature: _____

<u>For entities</u>

Print name: _St. Stephen's School_

Print name of authorized signatory: _Duncan Porlock_

Print title of authorized signatory: _Chairman, Investment Comm._

Signature: _Duncan Porlock_

12

[To be completed by the Fund]

THIS SUBNSCRIPTION AGREEMENT IS HEREBY ACCEPTED BY FAIRFIELD SIGMA LIMITED

Date: _____ ,20___

Name of authorized signatory: _____

Title of authorized signatory: _____

Signature: _____

Subscriber's name: _____

## SCHEDULE A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE WIRED.

### SAMPLE LETTER

[to be placed on letterhead of the financial institution remitting payment]

Date

**Via mail and facsimile:** (31-20) 572-2610
Fairfield Sigma Limited
Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

Dear Sirs

### RE:    FAIRFIELD SIGMA LIMITED (the "Fund")

1.    Name of Remitting Financial Institution:
2.    Address of Remitting Financial Institution:
3.    Name of Customer:
4.    Address of Customer:
5.    We have credited your account at [Bank], Account Number [number] for [amount] by order of [subscriber] on [date].

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

**Yours faithfully,**

Signed:      _____

Full Name:      _____

_____

Position:      _____

**For additional information, please contact the Administrator at Citico Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands, Telephone: (31-20) 572-2100, Facsimile: (31-20) 572-2610.**

## FAIRFIELD SIGMA LIMITED

### REDEMPTION REQUEST FORM

INSTRUCTIONS

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Fund.
Redeeming shareholders should complete and return this form, including page RR-3.

FAIRFIELD SIGMA LIMITED
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165 1043BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam
The Netherlands

Telephone no.: (31-20 )572-2114
Fax no.: (31-20) 572-2610

_____, 20__

Dear Sirs:

I hereby request redemption, as defined in and subject to all of the terms and conditions of the
Confidential Private Placement Memorandum, as it may be amended from time to time (the
"Memorandum"), of Fairfield Sigma Limited (the "Fund"), of _____ shares, representing [part/all] of
my shares in the Fund. I understand that redemption will only be effective as of the close of business on
the last day of any calendar month, upon at least fifteen (15) calendar days prior written notice. Except as
otherwise provided in the Memorandum, payment of the redemption proceeds will be made within thirty
(30) days after the effective date of redemption.

I hereby represent and warrant that (i) I am the owner of the shares of the Fund to which this
request relates, with full power and authority to request redemption of such shares; and (ii) I am not a
"U.S. person" (as that term is defined in the Memorandum). These shares are not subject to any pledge or
otherwise encumbered in any fashion. I acknowledge that my redemption will not be effective unless and
until the release of any pledge of the assets underlying the shares in effect in connection with the Fund's
currency hedging account described in the Memorandum. My signature has been guaranteed by a
commercial bank acceptable to the Fund.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

_____
  Bank Name

_____
  Bank Address

_____
  ABA/ CHIPS/ BIC Code

_____
  Account Name

_____
  Account Number:

**SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED**

**ENTITY SHAREHOLDER** (OR ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
PARTNERSHIP, CORPORATION
(OR ASSIGNEE) OR TRUST

*St. Stephen's School*

Name of Registered Owner of Shares

Name of Subscriber

*15 Gramercy Park, So*
*New York, NY 10003*

Address

Address

*Duncan Posey.*

Signature (of individual or assignee)

Signature   (of   partner   authorized corporate officer or trustee)

*Chairman, Investment Committee*

Name and Title

Please Print Name and Title

*9/16/05*

Date

Date

Signature (of individual or assignee)

Signature   (of   partner   authorized corporate officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signatures guaranteed by:

RR-2

# REDEMPTION INFORMATION

**SHARE REGISTRATION**

St. Stephen's School
Name

15 Gramercy Park So.
Address   New York, NY 10003

USA
Country of Residence

(212) 505-7409
Telephone

_____
Telephone (Evenings)

(212) 505-7423
Fax

**MAILING (POST) INFORMATION**
(if other than address of registration)

_____
Name

_____
Address

_____
Country of Residence

_____
Telephone

_____
Telephone (Evenings)

_____
Fax

**BANK FOR TRANSFER OF REDEMPTION**

HSBC Bank USA
Name

452 Fifth Ave New York NY 10018
Address

USA
Country of Residence

(20) 525-5638
Telephone

_____
Telephone (Evenings)

_____
Fax

[To be completed by the Fund]

THIS REDEMPTION REQUEST IS HEREBY ACCEPTED BY FAIRFIELD
SIGMA LIMITED

Date: _____, 200_

Name of authorized signatory: _____

Title of authorized signatory: _____

Signature: _____

Subscriber's name: _____

RR-4

**EXHIBIT B**

### REDEMPTION REQUEST FORM

525

**INSTRUCTIONS**

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Company. Redeeming shareholders should complete and return this form, including the information on page B-3.

FAIRFIELD INVESTORS (EURO) LIMITED
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam       Telephone:   (31)20 572-2114
The Netherlands         Fax:      (31)20 572-2610
Dated (month, day, year): _Sept. 16, 2005_

Dear Sirs

I hereby request redemption, as defined in and subject to all of the terms and conditions of the Information Memorandum dated April 1, 2002, as amended, of Fairfield Investors (Euro) Limited, Ltd. (the "Company"), of _all (100%)_ Shares, representing [part/all] of my Shares in the Company. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least forty-five (45) days prior written notice. Except as otherwise provided in the Information Memorandum, payment of the redemption proceeds will be made within thirty (30) business days after the effective date of redemption.

I hereby represent and warrant that (i) I am the true, lawful and beneficial owner of the Shares of the Company to which this Request relates, with full power and authority to request redemption of such Shares; and (ii) I am not a "U.S. Person" (as that term is defined in the Offering Memorandum). These Shares are not subject to any pledge or otherwise encumbered in any fashion. My signature has been guaranteed by a commercial bank acceptable to the Company.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

Bank Name _____

Bank Address _____

ABA Number _____

Account Name _____

Account Number: _____

_Will not receive the payment - proceeds should be switched directly to the Fairfield Sigma (Euros) fund for Oct. 1, 2005 date._

# SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED

**ENTITY SHAREHOLDER** (OR
ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
[PARTNERSHIP, CORPORATION (OR
ASSIGNEE) OR TRUST]

*St. Stephens School Faculty Fund 2*

Name of Registered Owner of Shares

Name of Subscriber

*15 Gramercy Park, So.*
*New York, NY 10003*

Address

Address

*Duncan Priti.*

Signature (of individual or assignee)

Signature (of partner authorized corporate
officer or trustee)

*Duncan Porlock Chairman*
*Investment Com*

Name and Title

Please Print Name and Title

*9/16/05*

Date

Date

Signature (of individual or assignee)

Signature (of partner authorized corporate
officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signatures guaranteed by:

2

09/22/2005 14:21 FAX 203 326 3747     SPENCER STUART     ☒021
08-01789-cgm    Doc 1675    Filed 01/07/10    Entered 01/11/10 15:51:55    Main Document
Pg 69 of 76

## REDEMPTION INFORMATION

**SHARE REGISTRATION**

**MAILING (POST) INFORMATION (if other than address of registration)**

St. Stephens School Faculty Fund 2
_____
Name                        Name

15 Gramercy Park, So
_____
Address New York, NY 10003    Address

USA
_____
Country of Residence        Country of Residence

(212) 505 - 7409
_____
Telephone               Telephone

_____
Telephone (Evenings)       Telephone (Evenings)

(212) 505 - 7423
_____
Fax                   Fax

**BANK FOR TRANSFER OF REDEMPTION**

HSBC Bank USA
_____
Name

452 Fifth Ave New York, NY 10018
_____
Address

USA
_____
Country of Residence

(212) 525 - 5638
_____
Telephone

_____
Telephone (Evenings)

_____
Fax

3

**EXHIBIT B**

525        **REDEMPTION REQUEST FORM**
                **INSTRUCTIONS**

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Company. Redeeming shareholders should complete and return this form, including the information on page B-3.

FAIRFIELD INVESTMENT FUND LTD.
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam          Telephone:   (31)20 572-2100
The Netherlands            Fax:         (31)20 572-2610
Dated (month, day, year): _9_ , _16_ _2005_

Dear Sirs

        I hereby request redemption, as defined in and subject to all of the terms and conditions of the Information Memorandum dated August 15, 2000, as amended, of Fairfield Investments, Ltd. (the "Company"), of _all (100%)_ representing [part/all] of my Shares in the Company. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least forty-five (45) business days prior written notice. Except as otherwise provided in the Information Memorandum, payment of the redemption proceeds will be made within thirty (30) business days after the effective date of redemption.

I hereby represent and warrant that (i) I am the true, lawful and beneficial owner of the Shares of the Company to which this Request relates, with full power and authority to request redemption of such Shares; and (ii) I am not a "U.S. Person" (as that term is defined in the Offering Memorandum). These Shares are not subject to any pledge or otherwise encumbered in any fashion. My signature has been guaranteed by a commercial bank acceptable to the Company.

**Wire Transfer Instructions (to be completed by redeeming shareholder):**

Bank Name _____

Bank Address _____

ABA Number _____

Account Name _____

Account Number: _____

*Will not receive the payment – proceeds should be switched directly to the Fairfield Sigma (Euros) fund for Oct. 1 2005 date.*

*DP.*

# SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED

**ENTITY SHAREHOLDER** (OR
ASSIGNEE)

**INDIVIDUAL SHAREHOLDER(S)**
[PARTNERSHIP, CORPORATION (OR
ASSIGNEE) OR TRUST]

*St. Stephen's School Long Term Inv. Acct. 2*

Name of Registered Owner of Shares          Name of Subscriber

*15 Gramercy Park So.*

Address          Address
*New York, NY 10003*

Signature (of individual or assignee)          Signature (of partner authorized corporate
                                                officer or trustee)

*Duncan Pollock, Chair*

Name and Title *Investment Comm.*          Please Print Name and Title

*9/16/05*

Date          Date


Signature (of individual or assignee)          Signature (of partner authorized corporate
                                                officer or trustee)


Name and Title          Please Print Name and Title


Date          Date



                                               Signatures guaranteed by:

## REDEMPTION INFORMATION

**SHARE REGISTRATION** ✓

**MAILING (POST) INFORMATION** (if other than address of registration)

St. Stephen's School Long Term Inv. Acct. 2
_____
Name

15 Gramercy Park So.
New York, NY 10003
_____
Address

USA
_____
Country of Residence

(212) 505-7409
_____
Telephone

_____
Telephone (Evenings)

(212) 505-7423
_____
Fax

_____
Name

_____
Address

_____
Country of Residence

_____
Telephone

_____
Telephone (Evenings)

_____
Fax

### BANK FOR TRANSFER OF REDEMPTION

HSBC Bank USA
_____
Name

452 Fifth Ave New York, NY 10018
_____
Address

USA
_____
Country of Residence

(212) 525-5638
_____
Telephone

_____
Telephone (Evenings)

_____
Fax

CH02/22152945.1

# EXHIBIT C

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation
### DECEMBER 11, 2008[1]


### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

ST. STEPHEN'S SCHOOL
15 GRAMERCY PARK SOUTH
NEW YORK, NY  10003


Dear ST. STEPHEN'S SCHOOL:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 003559:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_____

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: Aytan Y. Bellin
   Bellin & Associates LLC, 85 Miles Avenue
   White Plains, NY 10606

## CERTIFICATE OF SERVICE

I, Aytan Y. Bellin, certify that a copy of the annexed objection to trustee's determination of claim was filed and served Overnight, by Express Mail on the below persons at the addresses set forth below by depositing said copies in an official depository of the United States Postal Service with postage prepaid on January 6, 2010.

Clerk of the United States Bankruptcy Court for
    the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

Dated: White Plains, New York
    January 6, 2010

Aytan Y. Bellin