UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiffs,

-vs.-

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

Defendant.

Case No. 08-01789

SIPA

OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Diandra Douglas IRA a/k/a Diandra Douglas ("Claimant"), by its attorneys Bellin & Associates LLC, hereby objects to the denial of claim in the Trustee's Determination of Claim dated December 8, 2009[1] and states as follows:

**Background Facts**

1. On July 1, 2007, Claimant purchased a total of 799.0967 shares of Fairfield Sentry Ltd. *See* Exhibit A.

2. All of the monies which Claimant invested in shares of Fairfield Sentry were invested in Bernard L. Madoff Investment Securities LLC ("BLMIS"). At no time did Claimant sell any shares of Fairfield Sentry.

3. On or about December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*

[1] A copy of Claimant's claim is attached hereto as Exhibit A and a copy of the Trustee's Determination of Claim is attached hereto as Exhibit B.

5.      On or about December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee.

6.      Pursuant to SIPA, Trustee Picard was directed to oversee the liquidation of the assets of BLMIS and to process all claims against BLMIS. 15 U.S.C. § 78fff-1(a).

7.      By order of this Court dated December 23, 2008, the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines. The order, among other things, directed the Trustee to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore ..."

8.      On July 2, 2009, prior to the claims filing deadline, Claimant duly filed a customer claim with the Trustee. *See* Exhibit A.

9.      By notice of Trustee's determination of claim dated December 8, 2009 (Exhibit B hereto), the Trustee notified the Claimant that its claim had been denied on the following basis:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not ·have an account, you are not a customer of BLMIS under SIPA, as that term is defined at 15 U.S.C. § 78111(2). Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

10.     Claimant objects to the Trustee's determination for the reasons set forth herein and for such additional reasons as may be set forth by other objectants in similar circumstances to Claimant and for the purpose of preserving any rights which may be recognized for persons who made indirect investments in BLMIS through feeder funds.

**Grounds for Objection**

11.     **Objection First:** Contrary to the "determination" of the Trustee, the Claimant is a "customer" as provided for by the Securities Investor Protection Act. As such, Claimant is

entitled to receive SIPC insurance. Section 78lll(2) of the SIPA defines "customer" as "any person who has deposited cash with the debtor for the purpose of purchasing securities." *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (S.D.N.Y. 2009) ("the mere act of entrusting ... cash to the debtor for the purpose of effecting securities transactions . .. triggers customer status . . ."). Apparently, the Trustee has taken the position that the fact that the Claimant deposited funds with BLMIS indirectly is fatal to Claimant's claim as a "customer" under SIPA. This position is both legally and factually incorrect.

12. "SIPA is remedial legislation. As such it should be liberally construed to effect its purposes" of protecting the investments of customers of broker-dealers and investment advisors. *In re First State Securities Corp.*, 34 B.R. 492, 496 (S.D. Fla. 1980), citing *Tcherepnin v. Knight*, 389 U.S. 332 (1967). The fundamental purpose of the SIPA was to protect the public in the event that the entities with whom they dealt went bankrupt, or were otherwise unable to satisfy their customer agreements. *SEC v. SJ. Salmon & Co., Inc.*, 375 F. Supp. 867, 871 (S.D.N.Y. 1974) ("The principal purpose of the [Securities Investor Protection] Act was to protect investors against financial losses arising from the insolvency of their brokers."); SEC v. Schreiber Bosse & Co., Inc., 368 F. Supp. 24 (N.D. Ohio 1973).

13. Under SIPA, the term "customer" is a term of art, and does not have its ordinary and customary meaning. *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *affd sub nom. In re Stratton Oakmont*, 210 F.3d 420 (2d Cir. 2000). It is to be construed within the context of the definitional section of the SIPA and as interpreted by the courts.

14. Congress intended for "customer" to be broadly interpreted. In the first draft of the bill, there was no entitlement to insurance under SIPA for any customer whose name or interest was not disclosed on the records of the broker/dealer "if such recognition would increase

the aggregate amount of the insured customer accounts or insured liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug. 4, 1969). Significantly, such exclusion was eliminated and the final bill did not include such exclusion.

15. There is no statutory mandate that the funds or securities received by the "debtor" be received "directly" from the customer. Had this been a requirement, Congress would have clearly seen fit to so require it. Indeed, Section 9 of the SIPA (15 U.S.C. § 78fff-3(a)(5)), covering advances by the SIPC to the bankruptcy trustee, states that:

> no advance shall be made by SIPC to the trustee to payor otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, *other than to the extent that it shall be established to the satisfaction of the trustee,* from the books and records of the debtor or from the books and records of a broker of dealer or bank, or otherwise, *that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker of dealer or bank ..., in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.*

(emphasis added).

16. Hence, Claimant is entitled to have its claim under SIPA allowed by this Court and the determination notice of the Trustee overruled and rejected.

17. **Objection Second:** The notice of Trustee's determination of claim fails to comply with the December 23, 2008 Order of the Court which had directed the Trustee "to satisfy customers' claims in accordance with the Debtors [*i.e.*, BLMIS] books and records or are otherwise established to the satisfaction of the Trustee" (Dec. 23, 2008 Order at p. 5). The Claimant's Claim included a statement that showed a total balance of $1,079,263.20. This statement is the best evidence of the amount owed to the Claimant. Accordingly, the claim should be allowed in full.

**Reservation of Rights**

18.     Claimant reserves the right to amend, alter, revise or supplement this Objection; any failure to object on a particular procedural or substantive ground shall not be deemed a waiver of any such rights, all of which are hereby reserved.

19.     Claimant reserves all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, all rights of discovery.

**Relief Requested**

20.     For the reasons set forth herein, Claimant's claim should be allowed in full by this Court to the extent covered under SIPA and the Trustee's objection should be overruled.

21.     For the reasons stated herein, the Court should direct the Security Investors Protection Corporation to issue immediate payment to the Claimant in the amount of $1,079,263.20, plus interest from the date of the claim.

22.     In making the claim against BLMIS, Claimant does not waive any claim against Fairfield Sentry, its officers, principals, accountants, attorneys, or any other persons, parties or entities.

23.     To the extent applicable, Claimant joins in the claims of any other Claimants similarly situated and demands such further relief as this Court shall deem fair and equitable.

Dated: White Plains, New York
        January 6, 2010

BELLIN & ASSOCIATES LLC


By: [signature]
Aytan Y. Bellin
Attorneys for Diana De Morrell
Douglas Foundation
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
Email: aytan.bellin@bellinlaw.com

# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_______

Date Received______

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

**DECEMBER 11, 2008**

(Please print or type)

Name of Customer: Diandra Douglas IRA
Mailing Address: c/o Starr & Company 850 Third Ave
City: New York State: NY Zip: 10022
Account No.: 05172409 (Fairfield Sentry Limited)
Taxpayer I.D. Number (Social Security No.): 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

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1. Claim for money balances as of **December 11, 2008**:

   a. The Broker owes me a Credit (Cr.) Balance of $1,079,263

   b. I owe the Broker a Debit (Dr.) Balance of $0

   c. If you wish to repay the Debit Balance, please insert the amount you wish to repay and attach a check payable to "Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC." If you wish to make a payment, **it must be enclosed** with this claim form. $0

   d. If balance is zero, insert "None." 1,079,263

502180406

2. Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

| | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | | ✓ |
| b. | I owe the Broker securities | | ✓ |
| c. | If yes to either, please list below: | | |

| | | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE: **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

| | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:______________________________
______________________________.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date 6/23/09 Signature [signature]

Date ____________ Signature ____________

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201





CITCO
*Citco Fund Services (Europe) B.V.*

# Confirmation of Order Received

DIANDRA DOUGLAS
STAR & CO
350 PARK AVENUE
NEW YORK NY 10022
USA

| | |
|---|---|
| Date | : Jun-27-2007 |
| Fund ID | : 03302 |
| Holder ID | : 05172409 |
| Account ID | : 00000001 |
| Order No. | : 25763602 |
| FAX Number | : 001 212 371 5806 |

Account: DIANDRA DOUGLAS

## FAIRFIELD SENTRY LIMITED

We confirm receipt of your instruction to SUBSCRIBE to FAIRFIELD SENTRY LIMITED at the next dealing date

| | | |
|---|---|---|
| Trade Date | | Jul-01-2007 |
| Settlement Date | | As Soon As Possible |
| Valuation/NAV Date | | Jun-30-2007 |
| Type of transaction | | Subscription |
| Amount | USD | 1,000,000.00 |

| | |
|---|---|
| Bank Name: | HSBC BANK USA |
| Bank Address 1: | NEW YORK |
| Bank Address 2: | USA |
| ABA Ref.: | 021001088 |
| SWIFT Ref.: | MRMDUS33 |
| Further Cr. Num: | 000306487 |
| Further Cr. Name: | CITCO BANK NEDERLAND NV DUBLIN BRANCH |
| Further Cr. SWIFT Ref.: | CITCIE2D |
| Beneficiary Acct No: | IE23CITC00000035810501 |
| Beneficiary Name: | FAIRFIELD SENTRY LIMITED |

**Note 1: PLEASE PAY TODAY**
For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amsterdamweb@citco.com



Citco Fund Services
(Europe) B.V.

DIANDRA DOUGLAS
STARR & COMPANY, LLC
850 THIRD AVENUE, 15TH FLOOR
NEW YORK NY 10022
USA

Date : Oct-13-2008
Valuation date : Sep-30-2008
Fund Id : 03302
Holder Id : 05172409
Account Id : 00000001
Currency : US DOLLAR

FAX Number : 001 212 371 5806

Account: DIANDRA DOUGLAS

## FAIRFIELD SENTRY LIMITED

| FUND NET ASSET VALUES | | Net Asset Value |
|---|---|---|
| Opening Price | Aug-31-2008 | 1,343.9164 |
| Closing Price | Sep-30-2008 | 1,350.6040 |

| ACCOUNT VALUE | | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Aug-31-2008 | 799.0967 | 1,343.9164 | 1,073,919.16 |
| Add: Additions | | 0.0000 | | 0.00 |
| Less: Subtractions | No transactions in period | 0.0000 | | 0.00 |
| Closing Market Value of Account | Sep-30-2008 | 799.0967 | 1,350.6040 | 1,079,263.20 |
| Increase or decrease in market value due to change in the price in the period | | | | 5,344.04 |

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amsterdamweb@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax: (31-20) 5722610*
*Chamber of Commerce 33205112*

DD IRA

# FAIRFIELD SENTRY LIMITED

## Subscription Documents

(FOR U.S. TAX-EXEMPT INVESTORS)

Administrator:

Citco Fund Services (Europe) B.V.
Attn.: Investor Relations Group
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

**IMPORTANT**

1. Please have your bank identify your name on the wire transfer.

2. We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

**CLEARED FUNDS MUST BE IN THE FUND'S ACCOUNT THREE (3) BUSINESS DAYS PRIOR TO THE LAST DAYOF THE MONTH IN WHICH SUCH SUBSCRIPTION IS RECEIVED BY THE FUND**

929

# SUBSCRIPTION AGREEMENT

Fairfield Sentry Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Attn.: Investor Relations Group

**Re: Fairfield Sentry Limited—Issuance of Shares**

The undersigned (the "Investor") wishes to become a shareholder of Fairfield Sentry Limited (the "Fund"), a British Virgin Islands international business company, and to purchase shares ("Shares") in the Fund upon the terms and conditions set forth herein, in the Confidential Private Placement Memorandum of the Fund, as the same may be updated or modified from time to time (the "Memorandum"), and in the Memorandum of Association and the Articles of Association of the Fund, as each may be amended from time to time (collectively, the "Articles of Association"; together with the Memorandum, the "Fund Documents"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Memorandum. All references herein to "dollars" or "$" are to U.S. dollars.

Accordingly, the Investor agrees as follows:

## I. SUBSCRIPTION FOR SHARES

(A) The Investor agrees to become a shareholder of the Fund and, in connection therewith, subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) which can be purchased with this subscription at the purchase price per Share set forth in the Memorandum. Payment in cleared funds for Shares must be received prior to the subscription date established by the Fund. The Investor's payment (the "Payment") will be held by the Fund in an interest bearing account. The minimum initial subscription is $100,000.

(B) The Investor understands and agrees that the Fund reserves the right to reject this subscription for Shares for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor, together with any interest actually earned on such funds, and this subscription agreement (the "Subscription Agreement") shall have no force or effect. Upon acceptance of this subscription by the Fund, the Investor shall become a shareholder of the Fund and shall be subject to the terms of the Fund Documents.

## II. REPRESENTATIONS AND COVENANTS OF THE INVESTOR

(A) The Investor: (i) covenants that it will not resell, reoffer or transfer any Shares or any interest therein, except with the consent of the Fund, to a U.S. Person; (ii) acknowledges that reoffers, resales or any transfer of the Shares may be made only in compliance with applicable securities laws and only with the prior authorization of the Fund; and (iii) understands that a transfer of Shares may only be effected on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible investors as described in the Memorandum. The Investor understands and acknowledges that the Fund may compulsorily redeem all or any portion of the Investor's Shares in accordance with the Fund Documents.

(B) The Investor acknowledges that the Shares subscribed for hereunder have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), in reliance on Section 4(2)

thereof and Rule 506 of Regulation D promulgated thereunder ("Regulation D"), or any other law of the U.S. or any other jurisdiction thereof.

(C)     The Investor has received, carefully read and understands the Memorandum, including the sections of the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Fund. The Investor understands that the Articles of Association will be provided upon request. The Investor acknowledges that it has made an independent decision to invest in the Fund and that, in making its decision to subscribe for Shares, the Investor has relied solely upon the Memorandum and independent investigations made by the Investor. The Investor is not relying on the Fund, the board of directors of the Fund (the "Board of Directors"), Citco Fund Services (Europe) B.V. (the "Administrator"), or Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), Fairfield Greenwich Limited (the "Placement Agent") or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Fund, and is able to bear such risks.

The Investor acknowledges that it is not subscribing pursuant hereto for Shares as a result of, or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Fund is not password protected) or broadcast over television or radio; or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Fund and all other information to the extent the Fund or its authorized representatives possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the Fund or its authorized representatives concerning the terms and conditions of the offering and other matters pertaining to this investment.

(D)     The Investor acknowledges that it will receive or have access to confidential proprietary information concerning the Fund, including, without limitation, valuations, financial information, trade secrets and the like (collectively, "Confidential Information"), which is proprietary in nature and non-public. The Investor agrees that it shall not disclose or cause to be disclosed any Confidential Information to any person or use any Confidential Information for its own purposes or its own account, except in connection with its investment in the Fund and except as otherwise required by any regulatory authority, law or regulation, or by legal process. Furthermore, the Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the Fund. Notwithstanding the foregoing, the Investor (and each employee, representative or other agent of the Investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of: (i) the Fund; and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Investor relating to such tax treatment and tax structure.

(E)     The Investor is aware of the limited provisions for transferability and redemptions from the Fund and has read the section of the Memorandum entitled "Transfers, Redemptions and Termination." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the investment for an indefinite period of time.

(F)     The Investor is acquiring the Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.

(G)    The Investor understands that:  (i) no governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and (ii) the representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Fund, the Board of Directors, the Administrator, the Placement Agent and the Investment Manager in determining the Investor's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Investor's becoming a shareholder of the Fund.

(H)    The Investor has all requisite power, authority and capacity to acquire and hold the Shares and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Shares, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, or violate any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound.  If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Fund or the Administrator, will furnish to the Fund a true and correct copy of any instruments governing the Investor, including all amendments thereto.

(I)    All information which the Investor has provided to the Fund or the Administrator concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(J)    The Investor understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(K)    The Investor understands that the Fund will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the U.S.  The Investor understands that, pursuant to Section 3(c)(7), the Fund may sell its Shares in the U.S., on a private placement basis, to investors that are "qualified purchasers" under the Company Act.  The Investor also acknowledges that pursuant to no-action relief granted by the Commodity Futures Trading Commission (the "CFTC"), the Investment Manager will not register as a commodity pool operator with the CFTC.  If the Investor is an entity, the Investor represents that:  (i) it was not formed for the purpose of investing in the Fund; (ii) it does not invest more than 40% of its total assets in the Fund; (iii) each of its beneficial owners participates in investments made by the Investor *pro rata* in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt-in or opt-out of investments made by the Investor; and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Shares.

(L) If the Investor is a plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), or an entity whose underlying assets constitute "plan assets" under the U.S. Department of Labor's plan asset regulation at 29 CFR 2510.3-101 (a "Plan"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Fund that:

1. such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, and/or Section 4975(e)(3) of the Code and such person is authorized to execute the Subscription Agreement;

2. unless otherwise indicated in writing to the Fund, the Plan is not a participant-directed defined contribution plan;

3. the Fiduciary has considered a number of factors with respect to the Plan's investment in the Shares and has determined that, in view of such considerations, the purchase of a Share is consistent with the Fiduciary's responsibilities under ERISA. Such factors include, but are not limited to:

   (a) the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

   (b) whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom;

   (c) the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

   (d) the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

   (e) the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and

   (f) the risks associated with an investment in the Fund and the fact that the Investor has only limited redemption rights.

4. the investment in the Fund has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

5. the Fiduciary is: (a) responsible for the decision to invest in the Fund; (b) independent of the Fund; and (c) qualified to make such investment decision;

6. (a) neither the Investment Manager nor any of its employees or affiliates: (i) manages any part of the Investor's investment portfolio on a discretionary basis; (ii) regularly gives investment advice with respect to the assets of the Investor; (iii) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the Investor's investment decisions; or (iv) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives individualized investment advice concerning the Investor's assets;

   OR

(b) (i) the Fiduciary, who is independent of the Investment Manager and the Placement Agent, has studied the Memorandum and has made an independent decision to purchase Shares solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Investor; and (ii) the Investor represents and warrants that neither the Investment Manager nor any of its employees or affiliates: (A) has exercised any investment discretion or control with respect to the Investor's purchase of the Shares; (B) has authority, responsibility to give, or has given individualized investment advice with respect to the Investor's purchase of the Shares; or (C) is the employer maintaining or contributing to such Plan.

(M)    If applicable, the Investor has identified its status as a Benefit Plan Investor (as defined below) to the Fund in items (E) and (F) of the Investor Information section of the General Eligibility Representations below. If the Investor has identified to the Fund in item (F) of the Investor Information section of the General Eligibility Representations that it is not currently a Benefit Plan Investor, but becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the Investment Manager promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. For these purposes, a "Benefit Plan Investor," as defined under the Department of Labor Regulation Section 2510.3-101(f), includes, but is not limited to, retirement and other employee benefit plans subject to ERISA and employee benefit plans and arrangements not subject to ERISA, such as U.S. and non-U.S. governmental plans, church plans, non-U.S. retirement, health and welfare plans and individual retirement accounts, as well as entities whose underlying assets include plan assets by reason of investment by plans in such entities.

(N)    If the Investor is an insurance company and is investing the assets of its general account in the Fund, it has identified in item G of the Investor Information section of the General Eligibility Representations whether the assets underlying the general account constitute plan assets within the meaning of ERISA. The Investor agrees to promptly notify the Fund if there is a change in the percentage of the general account's assets that constitute plan assets within the meaning of ERISA and shall disclose such new percentage ownership.

(O)    The Investor is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI and the Irish Stock Exchange, because Investor's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000 or, (in the case of an institution) $5,000,000, and Investor consents to being treated as a Professional Investor for the purpose of investing in the Fund, and Investor warrants that he has such knowledge and expertise in financial matters sufficient to evaluate the risks involved in an investment in the Fund, that he is aware of the risks and can bear the loss of the entire investment in the Fund.

(P)    The Investor acknowledges, or, if the Investor is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor has advised the Beneficial Owner, that the Fund may enter into agreements with placement agents providing for either: (i) a payment from the Investor to the particular placement agent; or (ii) a payment from the Fund, the Placement Agent or the Investment Manager of a one-time or ongoing fee based upon the amount of the subscription of an investor introduced to the Fund by the agent.

(Q)    The Investor understands that the Law Offices of Andrew E. Goldstein acts as U.S. counsel to the Fund, the Investment Manager, the Placement Agent and their affiliates, and Conyers Dill & Pearman acts as British Virgin Islands counsel to the Fund. The Investor also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Manager, the Placement Agent and their affiliates, neither the Law Offices of Andrew E. Goldstein nor Conyers Dill & Pearman will be representing investors in the Fund, including the Investor, and no independent counsel has been retained to represent investors in the Fund.

(R) The Investor understands and agrees that, although the Fund, the Investment Manager, the Placement Agent and the Administrator will use their reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Fund, the Investment Manager, the Placement Agent and the Administrator may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.*, affiliates, attorneys, auditors, administrators, brokers and regulators) as they deem necessary or advisable to facilitate the acceptance and management of the Investor's subscription for Shares including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Shares, the compliance with applicable law and any relevant exemptions thereto by the Fund, the Investment Manager, the Placement Agent, the Administrator or any of their affiliates, or if the contents thereof are relevant to any issue in any action, suit or proceeding to which the Fund, the Investment Manager, the Placement Agent, the Administrator or their affiliates are a party or by which they are or may be bound. The Fund may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

## III. GENERAL

(A) The Investor agrees to indemnify and hold harmless the Fund, the Investment Manager, the Placement Agent, each director and officer of the Fund, the Investment Manager, the Placement Agent, the Administrator, each of their affiliates and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon: (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction; or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor. The Investor also agrees to indemnify the Fund, the Investment Manager, the Placement Agent, the Administrator and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's assertion of lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

(B) The Investor hereby acknowledges that the Investment Manager, the Placement Agent, the Administrator and each director and officer of the Fund are entitled to be indemnified out of the assets of the Fund as provided in the Fund Documents.

(C) This Subscription Agreement: (i) shall be binding upon the Investor and the heirs, legal representatives, successors and permitted assigns of the Investor and shall inure to the benefit of the Fund and its successors and assigns; (ii) shall be governed, construed and enforced in accordance with the laws of the State of New York; (iii) shall survive the acceptance of the Investor as a shareholder of the Fund; and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each such person.

(D) The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement or the Fund and any or all transactions relating hereto and thereto may be brought in the courts of the State of New York. The Investor hereby irrevocably: (i) submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by New York law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum; and (ii) consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Investor at the address of the Investor then

appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

(E) If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(F) If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the Fund may compulsorily redeem the Shares held by such Investor in accordance with the Fund Documents.

## IV. RELATED PROFESSIONALS.

(Subscriptions cannot be accepted if this section is not completed)

Please indicate the name of the person at the Fairfield Greenwich Group with whom this subscription is associated.

Name: Matt Brown

Please indicate the name, if applicable, of the person and/or entity who acts as an advisor with respect to this subscription.

Name of Advisor:

______________________________

Name of Advisor's firm or organization:

______________________________

Not Applicable: __________

(A)

## V. TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

(A) If the Investor is acting as trustee, agent, representative or nominee for a Beneficial Owner, the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor: (i) with respect to the Investor; *and* (ii) with respect to the Beneficial Owner. The Investor represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement.

(B) If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap"), with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (i) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, bylaws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Fund; (ii) the Third Party has received and reviewed a copy of the Memorandum, this Subscription Agreement and, if requested, the Articles of Association; (iii) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Fund; and (iv) the Third Party is: (x) an "eligible contract

participant" as defined under the Commodity Exchange Act, as amended; and (y) either a Permitted U.S. Person who is an "accredited investor" under Regulation D promulgated under the Securities Act and a "qualified purchaser" under the Company Act or a non-U.S. Person. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

## VI. ANTI-MONEY LAUNDERING REPRESENTATIONS

(A) The Investor understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any U.S. or international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by the Investor in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(B) The Investor represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with the Investor, a Prohibited Person, and (ii) to the extent the Investor has any beneficial owners[4], (A) it has carried out thorough due diligence to establish the identities of such beneficial owners, (B) based on such due diligence, the Investor reasonably believes that no such beneficial owners are Prohibited Persons, (C) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of the Investor's complete withdrawal from the Fund, and (D) it will make available such information and any additional information that the Fund may require upon request in accordance with applicable regulations.

(C) If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, be obligated to freeze the Investor's investment, either by prohibiting additional investments, declining or suspending any withdrawal requests and/or segregating the assets constituting the investment, or the Investor's investment may immediately be involuntarily withdrawn by the Fund, and the Fund may also be required to report such action and to disclose the Investor's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, the Investor understands and agrees that it shall have no

---

1 The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

2 Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

3 Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

4 Beneficial owners will include, but not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund-of-funds; (v) the grantor of a revocable or grantor trust; (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Investor in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If the Investor is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

claim against the Fund, the Investment Manager, the Placement Agent, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(D) The Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Investor's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

## VII. ADDITIONAL INFORMATION AND SUBSEQUEN T CHANGES IN THE FOREGOING REPRESENTATIONS; LEGENDS

(A) The Fund may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Shares or to enable the Fund to determine the Fund's, the Investment Manager's, the Placement Agent's or the Administrator's compliance with applicable regulatory requirements or the Fund's tax status, and the Investor agrees to provide such information as may reasonably be requested.

(B) The Investor agrees to notify the Fund promptly in writing if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

(C) This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. The counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

(D) **GEORGIA SUBSCRIBERS.** The Shares have been issued or sold in reliance on Paragraph (13) of Code Section 10-5-9 of the Georgia Securities Act of 1973, and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

# INVESTOR PROFILE FORM

ALL INVESTORS MUST COMPLETE THIS PAGE.

Diandra Douglas IRA
Name of Investor (*Please Print or Type*)

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
Social Security Number/Tax I.D. Number

$ 1,000,000—
Amount of Subscription

Type of Investor—*Please check one*:

- [x] Individual Retirement Plan
- [ ] Partnership
- [ ] Corporation
- [ ] Trust
- [ ] Foundation
- [ ] Endowment
- [ ] Employee Benefit Plan
- [ ] Keogh Plan
- [ ] Limited Liability Company
- [ ] Other Tax Exempt Entity:

Specify:________________

Full Mailing Address (*Exactly as it should appear on labels*):

- [ ] Mr.
- [ ] Mrs.
- [x] Ms.
- [ ] Miss
- [ ] Dr.
- [ ] Other _______

Diandra Douglas
c/o Starr & Co
850 Third Ave
New York NY 10022

212-759-6556
Telephone number

212-371-5806
Fax number

Residence (if an individual) or Principal Place of Business (if an entity) Address (*No P.O. Boxes Please*):

114 East 65th St
New York NY 10021

Telephone number

Fax number

Address of Authorized Representative/Agent (*No P.O. Boxes Please*):

Sanford Miller
c/o Starr + Co
850 Third Ave
New York NY 10022

212-759-6556
Telephone number

212-371-5806
Fax number

Attention: S. Miller

E-Mail Address: s_miller@starrllc.com

# INVESTOR PROFILE FORM

## COMMUNICATIONS TO INVESTOR

Please send all communications to *(Please initial one)*:

______ Mailing Address
*Initial*

______ Residence or Principal Place of Business Address
*Initial*

______ Authorized Representative/Agent
*Initial*

## GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

**I. <u>INVESTOR INFORMATION</u>**

(A) Formation date of entity, if applicable: ______________________

(B) Please indicate below the basis on which the Investor is exempt from U.S. federal income taxation: IRA

(C) Was the Investor referred to the Fund by a placement agent? Yes ☐ No ☑

If yes, please provide name of placement agent: ______________________

(D) The Investor hereby warrants and represents that:

*(Please initial one and complete blanks)*

______ *Initial* 1. If the Investor is an employee benefit plan, an endowment, a foundation, a corporation, a partnership, a limited liability company, a trust or other legal entity, it is:

organized under the laws of: ______________________

and has its principal place of business in: ______________________

[initials] *Initial* 2. If beneficial ownership of the Investor is held by an individual (for example, an Individual Retirement Account, Keogh Plan, or other self-directed defined contribution plan), such individual is of legal age and is a :

resident of: New York, USA

(E) The Investor ______ (is) [initials] (is not) *(please initial one)* a "Benefit Plan Investor" (*e.g.*, any employee pension benefit plan or employee welfare plan).

If the Investor is a Benefit Plan Investor, please respond to the following:

(i) The Investor ___ (is) ___ (is not) *(please initial one)* subject to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code; and

(ii) The Investor ___ (is) ___ (is not) *(please initial one)* subject to any rules or regulations similar to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I. **INVESTOR INFORMATION**

(A) Formation date of entity, If applicable: ______

(B) Please indicate below the basis on which the Investor is exempt from U.S. federal income taxation: IRA

(C) Was the Investor referred to the Fund by a placement agent? Yes ☐ No ☑

If yes, please provide name of placement agent: ______

(D) The Investor hereby warrants and represents that:

*(Please initial one and complete blanks)*

______ *Initial* 1. If the Investor is an employee benefit plan, an endowment, a foundation, a corporation, a partnership, a limited liability company, a trust or other legal entity, it is:

organized under the laws of: ______

and has its principal place of business in: ______

[initials] *Initial* 2. If beneficial ownership of the Investor is held by an individual (for example, an Individual Retirement Account, Keogh Plan, or other self-directed defined contribution plan), such individual is of legal age and is a :

resident of: New York, USA

(E) The Investor ~~(is)~~ [initials] (is not) *(please initial one)* a "Benefit Plan Investor" (*e.g.*, any employee pension benefit plan or employee welfare plan).

If the Investor is a Benefit Plan Investor, please respond to the following:

(i) The Investor ___ (is) ___ (is not) *(please initial one)* subject to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code; and

(ii) The Investor ___ (is) ___ (is not) *(please initial one)* subject to any rules or regulations similar to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS

(F) If the Investor is an entity, the Investor hereby certifies to either 1or 2 below:

*(Please initial one)*

______ *Initial* 1. If the Investor is a corporation, partnership, limited liability company, trust or other entity, less than 25% of the value of each class of equity interests in the Investor (excluding from the computation interests held by any individual or entity (other than a Benefit Plan Investor) with discretionary authority or control over the assets of the Investor and of any individual or entity who provides investment advice for a fee (direct or indirect) with respect to the assets of the Investor or any affiliate of such person or entity) is held by Benefit Plan Investors as defined in Section II (M) above.

______ *Initial* 2. Twenty-five percent or more of the value of any class of equity interests in the Investor (excluding from the computation interests held by any individual or entity (other than a Benefit Plan Investor) with discretionary authority or control over the assets of the Investor and of any individual or entity who provides investment advice for a fee (direct or indirect) with respect to the assets of the Investor or any affiliate of such person or entity) is held by Benefit Plan Investors;

and

the Investor, ___ (is) ___ (is not) subject to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

(G) If the Investor is an insurance company, the Investor hereby certifies to either 1 or 2 below:

*(Please initial one)*

______ *Initial* 1. The Investor is an insurance company investing the assets of its general account in the Fund but none of the underlying assets of the Investor's general account constitutes plan assets within the meaning of ERISA.

______ *Initial* 2. The Investor is an insurance company investing in the Fund with general account assets and a portion of the underlying assets of the Investor's general account constitutes plan assets within the meaning of ERISA; and

____% of its general account constitute plan assets within the meaning of ERISA.

## GENERAL ELIGIBILITY REPRESENTATIONS

**II. SUBSTITUTE FORM W-9**

*For All Investors*

The Investor certifies under penalties of perjury that it is a U.S. person within the meaning of the Internal Revenue Code of 1986, as amended, including income tax regulations and that its U.S. taxpayer identification number, as it appears on the Investment Profile of this Subscription Agreement, is true and correct. The Investor further certifies under penalties of perjury that it is NOT subject to backup withholding because either: (i) it is exempt from backup withholding; (ii) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (iii) the IRS has notified it that it is no longer subject to backup withholding.

Signature Date

The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

## GENERAL ELIGIBILITY REPRESENTATIONS

**II. SUBSTITUTE FORM W-9**

*For All Investors*

The Investor certifies under penalties of perjury that it is a U.S. person within the meaning of the Internal Revenue Code of 1986, as amended, including income tax regulations and that its U.S. taxpayer identification number, as it appears on the Investment Profile of this Subscription Agreement, is true and correct. The Investor further certifies under penalties of perjury that it is **NOT** subject to backup withholding because either: (i) it is exempt from backup withholding; (ii) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends; or (iii) the IRS has notified it that it is no longer subject to backup withholding.*

Signature                                        Date

* The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

## GENERAL ELIGIBILITY REPRESENTATIONS

### III. ACCREDITED INVESTOR STATUS

The Investor certifies that the Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act because:

*(Please initial as appropriate)*

**(A) Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies**

_______ *Initial* 1. The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the securities offered; or

_______ *Initial* 2. Each of the Investor's equity owners is an accredited investor for either of the following reasons:

(a) the equity owner of the Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000. As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities, or

(b) the equity owner of the Investor has individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.** *The Fund, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

**(B) Employee Benefit Plans**

_______ *Initial* 1. The Investor is an employee benefit plan within the meaning of ERISA, and the decision to invest in the Fund was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is: ______________________.

---

* Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at: (i) cost, including the cost of improvements, net of current encumbrances upon the property; or (ii) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property. "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

** For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the Code, received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS

______ *Initial* 2. The Investor is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000; or

______ *Initial* 3. The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

**(C) Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

______ *Initial* The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years and reasonably expects to reach the same income level in the current year. *The Fund, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

**(D) Section 501(c)(3) Organizations**

______ *Initial* The Investor is an organization described in Section 501(c)(3) of the Code of 1986, was not formed for the specific purpose of acquiring the securities offered and has total assets in excess of $5,000,000.

**(E) Trusts**

______ *Initial* 1. The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered and its purchase is directed by a sophisticated person. *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment*; or

______ *Initial* 2. The Investor is: (a) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act; (b) acting in a fiduciary capacity; and (c) subscribing for the purchase of the securities being offered on behalf of a trust account or accounts; or

______ *Initial* 3. The Investor is a revocable trust which may be amended or revoked at any time by the grantors thereof and all of the grantors are accredited investors as described herein. *The Fund, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

## GENERAL ELIGIBILITY REPRESENTATIONS

_______ Initial — 2. The Investor is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000; or

_______ Initial — 3. The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

**(C) Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

_______ Initial — The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least [illegible] years and reasonably expects to reach the same income level in the current year. *The Fund* [illegible] *are accredited.*

**(D) Section 501(c)(3) Organizations**

_______ Initial — [illegible] formed for the specific purpose of acquiring the securities offered and has total assets in excess of $5,000,000.

**(E) Trusts**

_______ Initial — 1. The Investor [illegible] total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered and its purchase is directed by a sophisticated person. *As* [illegible] *experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment; or*

_______ Initial — 2. [illegible] loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act [illegible] offered on behalf of a trust account or accounts; or

_______ Initial — 3. [illegible] grantors thereof and all of the grantors are accredited investors as described herein. *The* [illegible] *equity owners are accredited.*

## GENERAL ELIGIBILITY REPRESENTATIONS

### IV. QUALIFIED PURCHASER STATUS

The Investor hereby certifies that the Investor is a "qualified purchaser" under the Company Act because:

**(A) Individual Retirement Accounts, Keogh Plans and other Self-Directed Defined Contribution Plans**

The Investor is an Individual Retirement Account, Keogh Plan or other Self-Directed Defined Contribution Plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant:

_[initialed]_ *Initial* Is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less than $5,000,000 in investments.*

**(B) "Family" Foundations, Endowments, Section 501(c)(3) Organizations, Trusts or Other "Family" Entities**

_______ *Initial* The Investor: (i) was not formed for the specific purpose of investing in the Fund; (ii) owns not less than $5,000,000 in investments; and (iii) is owned directly or indirectly by or for: (a) two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption; (b) spouses of such persons; (c) the estates of such persons; or (d) foundations, Section 501(c)(3) organizations or trusts established by or for the benefit of such persons.

**(C) Trusts (Other Than Trusts That Qualify under Sections (B) or (D) hereof)**

_______ *Initial* The Investor was not formed for the specific purpose of investing in the Fund; and each trustee (or other authorized person) that is authorized and required to make decisions with respect to this investment is a person described in (A), (B) or (D), at the time the decision to purchase Shares is made, and each settlor or other person who has contributed assets to the trust is a person described in (A), (B) or (D) at any time such person contributed assets to the trust.

---

* For these purposes, the term "investments" means any or all: (i) securities (as defined in the Securities Act), except for securities of issuers controlled by the Investor ("Control Securities"), unless (A) the issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act, or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of Investor's purchase of Shares); (ii) futures contracts or options thereon held for investment purposes; (iii) physical commodities held for investment purposes; (iv) swaps and other similar financial contracts entered into for investment purposes; (v) real estate held for investment purposes; and (vi) cash and cash equivalents held for investment purposes.

*Note: In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.*

## GENERAL ELIGIBILITY REPRESENTATIONS

### IV. QUALIFIED PURCHASER STATUS

The Investor hereby certifies that the Investor is a "qualified purchaser" under the Company Act because:

**(A) Individual Retirement Accounts, Keogh Plans and other Self-Directed Defined Contribution Plans**

The Investor is an Individual Retirement Account, Keogh Plan or other Self-Directed Defined Contribution Plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant:

*Initial* — Is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less than $5,000,000 in investments.*

(B) "Family" [illegible] Entities

*Initial* — [illegible] not less than $5,000,000 in investments; and (ii) is owned directly or indirectly by or for: [illegible] spouses), or direct lineal descendants by birth or adoption, (b) spouses of such persons [illegible]

(C) Trusts (Other Than [illegible])

*Initial* — [illegible] trustee [illegible] authorized and required to make decisions with [illegible] purchases Shares is made, and each settlor or other person who has contributed assets to the [illegible] trust

* For [illegible] securities of issuers controlled by the investor ("Control Securities"), unless (A) the issuer of the Control Securities is [illegible] 5 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports [illegible] Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act, or (C) [illegible] $50 [illegible] determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements [illegible] for investment purposes; (iii) physical commodities [illegible] held for investment purposes [illegible] market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness [illegible]

## GENERAL ELIGIBILITY REPRESENTATIONS

**(D) Other Entities**

______
*Initial*

The Investor: (i) was not formed for the specific purpose of investing in the Fund; and (ii) is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

**(E) Entities That Do Not Qualify under (B)-(D)**

______
*Initial*

The Investor is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser as described in this Section IV. *Note: This certification does not apply to beneficiaries of an irrevocable trust.*

**(F) All Investors That Are Entities**

______
*Initial*

1. The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "Section 3(c)(1) or 3(c)(7) Company"); or

______
*Initial*

2. The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a "Pre-April 30 Holder"); or

______
*Initial*

3. The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.

4. ***If the Investor initialed (F)(2) or(F)(3), the Investor must also respond "Yes" or "No" to the following:***

☐ Yes

☐ No

Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7) Company that controls, is controlled by, or is under common control with, the Investor?

*Note: If the Investor cannot answer NO to (F)(4) because it has a control relationship with a beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be required to obtain consent from the security-holders of such owner.*

**(G) Investors That Initialed (B) or (C) May Initial (G) Instead of (F)**

______
*Initial*

The Investor has obtained consent to its treatment as a qualified purchaser from all of its trustees, directors or general partners.

## SIGNATURE PAGES

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

1. the undersigned has carefully read and is familiar with this Subscription Agreement and the Memorandum;
2. the information contained herein is complete and accurate and may be relied upon; and
3. the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this ____ day of ____________, 20___.

INDIVIDUALS

[signature]
Signature

Diandra Douglas
Print Name

______________________
Additional Investor Signature

______________________
Print Name

ENTITIES

______________________
Print Name of Entity

By: ______________________
Authorized Signature

______________________
Print Name and Title

***Name of Trustees or Other Fiduciaries Exercising Investment Discretion with Respect to Benefit Plan or Trust***

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| | | |
| | | |
| | | |

## SIGNATURE PAGES

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

1. the undersigned has carefully read and is familiar with this Subscription Agreement and the Memorandum;
2. the information contained herein is complete and accurate and may be relied upon; and
3. the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this ____ day of ____________, 20___.

INDIVIDUALS

Signature

Diandra Douglas

Print Name

Additional Investor Signature

Print Name

ENTITIES

Print Name of Entity

By: ______________________

Authorized Signature

Print Name and Title

Name of Person(s) with Investment Discretion with Respect to Benefit Plan or Trust

| Signature | Printed Name | Title |
|---|---|---|
| | | |
| | | |

## SIGNATURE PAGES

**Agreement of Custodian of Individual Retirement Account**

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By:______________________________________
Signature of Authorized Signatory

______________________________________
Name of Custodian (*Please Type or Print*)

______________________________________
Name of Authorized Signatory (*Please Type or Print*)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by Fairfield Sentry Limited**

______________________________
SUBSCRIPTION ACCEPTED
AS TO $__________________________

**FAIRFIELD SENTRY LIMITED**

By: Citco Fund Services (Europe) B.V.

By:______________________________

Date: ____________________, 20____

## SIGNATURE PAGES

### NOTARIZATION ACKNOWLEDGMENT

ACKNOWLEDGMENT

STATE OF CA )
) ss:
COUNTY OF MARIN )

On this 28 day of June, 2007, before me personally appeared DiANDREA de MORRELL DOUGLAS, to me known and known to me to be the individual who executed the foregoing Subscription Agreement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

Notary Public

My Commission Expires:
8/10/9

DALE STILSON
Commission # 1596200
Notary Public - California
Marin County
My Comm. Expires Aug 10, 2009

# FAIRFIELD SENTRY LIMITED

## CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth the policies of Fairfield Sentry Limited (the "Fund") with respect to non-public personal information of its investors, prospective investors and former investors. These policies apply to Individual Retirement Accounts only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, social security number, assets and/or income information: (i) in the Subscription Agreement and related documents; (ii) in correspondence and conversations with the Fund's representatives; and (iii) through transactions in the Fund.

We do not disclose any of this personal information about our investors, prospective investors or former investors to anyone, other than to our affiliates, such as the Fund's manager, and except as permitted by law, such as to our attorneys, auditors, brokers and regulators and certain service providers, in such case, only as necessary to facilitate the acceptance and management of your investment. Thus, it may be necessary, under anti-money laundering and similar laws, to disclose information about the Fund's investors in order to accept subscriptions from them. We will also release information about you if you direct us to do so, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

We may also disclose information you provide to us to companies that perform marketing services on our behalf, such as the Fund's placement agent(s). If such a disclosure is made, the Fund will require such third parties to treat your private information with confidentiality.

We seek to carefully safeguard your private information and, to that end, restrict access to non-public personal information about you to those employees and other persons who need to know the information to enable the Fund to provide services to you. We maintain physical, electronic and procedural safeguards to protect your non-public personal information.

# EXHIBIT B

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009

DIANDRA DOUGLAS IRA
C/O STARR AND CO., 850 THIRD AVE., 15TH FLOOR
NEW YORK, NY 10022

Dear DIANDRA DOUGLAS IRA:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 014709:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

CERTIFICATE OF SERVICE

I, Aytan Y. Bellin, certify that a copy of the annexed objection to trustee's determination of claim was filed and served Overnight, by Express Mail on the below persons at the addresses set forth below by depositing said copies in an official depository of the United States Postal Service with postage prepaid on January 6, 2010.

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

Dated: White Plains, New York
January 6, 2010

Aytan Y. Bellin