# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: <u>GUSTAVO, EGEA</u>

Mailing Address: <u>CO DORSEY & WHITNEY'S 250 PARK AVENUE</u>

City: <u>NEW YORK</u>          State: <u>NY</u>          Zip: <u>10177-1500</u>

Account No.: <u>20373 (SAL OPENNHEIM BANK ZURICH, SWITZERLAND)</u>

<u>FAIRFIELD SENTRY FD LTD *HOLD SHARE* IN ACCOUNTS BMIS 1-FN012-</u>

<u>3-0, 1-FN045-3-0, 1-FN-069-4-0, AND 1-FN-070-4-0)</u> *(\*A)*

Taxpayer I.D. Number (Social Security No.): <u>NO RESIDENT - FOREIGNER</u>

**NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Claim for money balances as of **December 11, 2008**:

    a. The Broker owes me a Credit (Cr.) Balance of **$     463.559,87** *(\*B)*

    b. I owe the Broker a Debit (Dr.) Balance of $-----

    c. If you wish to repay the Debit Balance,

     please insert the amount you wish to repay and

    attach a check payable to "Irving H. Picard, Esq.,

    Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form. $

d. If balance is zero, insert "None." _

502180406

2. Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a. The Broker owes me securities | *YES* | |
| b. I owe the Broker securities | | *NO* |

c. If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | US T BILLS (FAIRFIELD SENTRY FD) | 343.51 units | |

*(\*B) I fill in item 1 a.- and 2.a according note of explanation attach*

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406

**NOTE: IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  | YES | NO |
|---|---|---|
| 3. Has there been any change in your account since December 11, 2008? If so, please explain. |  | *NO* |
| 4. Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | *NO* |
| 5. Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | *NO* |
| 6. Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s). |  | *NO* |
| 7. Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | *NO* |
| 8. Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | *NO* |
| 9. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | *NO* |

Please list the full name and address of anyone assisting you in the preparation of this claim form:

- **MICHAEL BELLINGER (ATTORNEY) DORSEY & WHITNEY LLP**
  250   Park   Avenue   New   York,   New   York   10177
  Telephone: 212-415-9357
- **MARIO DIAZ CRUZ, III (ATTORNEY) DORSEY & WHITNEY LLP**
  250   Park   Avenue   New   York,   New   York   10177
  Telephone: 212-415-9250
- **MANUEL AGUSTIN DE ALLENDE, ABOGADO**
  Santa Rosa 859 CORDOBA- CORDOBA  CP 5000 REPUBLICA ARGENTINA TEL 54-351-4239306

502180406

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH. THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _February 26th, 2009_ Signature _____

Date _____ Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)
**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**
Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## EXPLANATORY NOTES FROM THE INVESTOR

Córdoba, Argentina
February, 2009

**Mr. IRVING H. PICARD, ESQ,**
**TRUSTEE FOR BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

I explain below the references *A) and *B) indicated on the claim form:

**\* A) GUSTAVO EGEA** invested in B.M.I.S. through the investment fund, FAIRFIELD SENTRY LIMITED, and through the swiss bank, SAL. OPPENHEIM BANK.

Both entities provided the information which is attached, indicating the account numbers that FAIRFIELD SENTRY had with BERNARD MADOFF INVESTMENT SECURITIES.

THE ACCOUNT
OF THE CUSTOMER
WITH THE BANK
SAL. OPPENHEIM ... ... ... ... ... ... ... ... ... **20373 NAMED "DESPEGUE"**

THE ACCOUNTS
OF FAIRFIELD SENTRY LIMITED
WITH BERNARD MADOFF I.S. ... ... ...    **1-FN012-3-0,**
                                         **1-FN045-3-0,**
                                         **1-FN-069-4-0,**
                                         **1-FN-070-4-0**

(**\* B) GUSTAVO EGEA** completed item 1a and 2a of the claim form for the following legitimate reasons:

-   Mr. ANDREAS MARON of the Swiss bank SAL. OPPENHEIM, explained to me in several e-mails which I attach, that the **fund had 100% US TREASURY BILLS.**
-   I believe that in that case, it is my legal right that they deliver me those securities or the cash resulting there from.
-   Since I do not know if these should be considered cash or securities, I proceeded to complete the 2 items with total good faith and intention, simply in order to protect my rights as the creditor I believe myself to be.

In anticipation of a favorable response to my claim,

Yours sincerely,

GUSTAVO EGEA

## RE: Estrategia de inversiones

De:        andreas.maron@oppenheim.ch
Enviado: viernes, 03 de octubre de 2008 03:52:33 a.m.
Para:      gusegea@hotmail.com

sin modificacion - todo normal - el fondo esta 100% liquido en papeles del tesoro de los Estados Unidos.

Andreas Maron, CFA
Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG
Uraniastrasse 28
8022 Zürich
Telefon: +41 44 214 22 53
Telefax: +41 44 214 23 49
www.oppenheim.ch
mailto: andreas.maron@oppenheim.ch

**From:** Gustavo Egea [mailto:gusegea@hotmail.com]
**Sent:** Donnerstag, 2. Oktober 2008 19:39
**To:** Maron Andreas
**Subject:** RE: Estrategia de inversiones

andreas: todo dentro de lo normal para estas epocas?

gustavo

Subject: RE: Estrategia de inversiones
Date: Tue, 30 Sep 2008 14:06:00 +0200
From: andreas.maron@oppenheim.ch
To: gusegea@hotmail.com

Hola Gustavo

USD 493 - todo tranquilo - el Fairfield Sentry esta 100% en T-Bills - .

Adjunto un comentario del Fondo:
September 16, 2008

**Re: Lehman and Merrill Lynch exposure of Fairfield Sentry Limited and SSC**

Dear Investor:

Given the series of unprecedented market events that have occurred over the past few days, we are writing to you to help keep you informed about the impact these events may have on Fairfield Sentry Limited's split-strike conversion strategy ("SSC").

On September 15, 2008, Lehman Brothers Holding Inc., one of the nation's oldest and largest investment banks, filed for Chapter 11 bankruptcy. It was also announced that day that Bank of America Corporation (BoA) agreed to acquire Merrill Lynch & Co, Inc. in a $50 billion all-stock transaction. At the time these announcements were made the SSC did not have any equity or counterparty exposure to these entities. Currently the SSC portfolio of Fairfield Sentry Limited is fully invested in short dated U.S. Treasury bills.

We continue to monitor the global ramifications of these events, and will continue to provide you with information to help keep you apprised of the evolving situation and the impact on our products. Please do not hesitate to contact us if you have any questions or if you would like any additional information.

Best regards,

Un fuerte abrazo Andreas

Andreas Maron, CFA
Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG
Uraniastrasse 28
8022 Zürich
Telefon: +41 44 214 22 53
Telefax: +41 44 214 23 49
www.oppenheim.ch
mailto andreas.maron@oppenheim.ch

**From:** Gustavo Egea [mailto:gusegea@hotmail.com]
**Sent:** Dienstag, 30. September 2008 13:28
**To:** Maron Andreas
**Subject:** RE: Estrategia de inversiones

andreas: como estan mis cosas despues de estos desplomes y crisis en ee uu?

gracias
gustavo

Subject: RE: Estrategia de inversiones
Date: Thu, 21 Aug 2008 13:50:47 +0200
From: andreas.maron@oppenheim.ch
To: gusegea@hotmail.com


Hola Gustavo
Todo muy bien acaba de volver de unas vacaciones hermosas en Dinamarca. Números importantes 492 -
Estaré en Buenos a partir del 8 de Septiembre. Posiblemente estaré viajando para Córdoba el 14 de Septiembre y me voy a quedar hasta el 15. Prefieres de vernos en Córdoba o tienes planes de viajar para Buenos Aires?

Saludos Andreas


Andreas Maron, CFA
Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG
Uraniastrasse 28
8022 Zürich
Telefon +41 44 214 22 53
Telefax: +41 44 214 23 49
www.oppenheim.ch
mailto: andreas.maron@oppenheim.ch


---

From: Gustavo Egea [mailto:gusegea@hotmail.com]
Sent: Donnerstag, 21. August 2008 13:46
To: Maron Andreas
Subject: RE: Estrategia de inversiones

COMO ESTAS? ESPERO QUE BIEN.

COMO ESTAN MIS COSAS ,CONTAME UN POCO ? TIRAME LAS 3 1ras CIFRAS ,CUANDO ANDAS  X  BS AS.?


ABRAZOZ


GUSTAVO

---

Subject: RE: Estrategia de inversiones
Date: Tue, 27 May 2008 14:40:07 +0200
From: andreas.maron@oppenheim.ch
To: gusegea@hotmail.com


Hola Gustavo
Si quieres te llamo hoy o viernes. Mañana y Jueves estaré en Barcelona y Madrid.  Las cosas marchan muy bien - seguimos para arriba.
Saludos Andreas

Andreas Maron, CFA
Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG
Uraniastrasse 28
8022 Zürich
Telefon +41 44 214 22 53
Telefax +41 44 214 23 49
www.oppenheim.ch
mailto: andreas.maron@oppenheim.ch

---

**From:** Gustavo Egea [mailto:gusegea@hotmail.com]
**Sent:** Dienstag, 27. Mai 2008 13:03
**To:** Maron Andreas
**Subject:** RE: Estrategia de inversiones

ANDREAS: COMO ANDAS? LUI? ESPERO QUE BIEN? NOSOTROS CON EL FRIO ENTRANDO DE NUEVO,
BUENO COMO ESTAN LAS COSAS NUESTRAS, LLAMAME MAÑANA,MIERCOLES O CONTESTAME X MAIL.

ABRAZOS

GUSTAVO

> **Subject:** FW: Estrategia de inversiones
> **Date:** Fri, 9 May 2008 13:24:54 +0200
> **From:** andreas.maron@oppenheim.ch

> Tengo el placer de incluirle en el archivo nuestra ultima publicacion de la Estrategia de
> Inversión Mayo/Junio.
> Cordialmente, Andreas Maron
> PS nuestros oficinas estarán cerrados el lunes 12 de Mayo (feriado nacional)

> Andreas Maron, CFA
> Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG
> Uraniastrasse 28
> 8022 Zürich
> Telefon +41 44 214 22 53
> Telefax +41 44 214 23 49
> www.oppenheim.ch
> mailto andreas.maron@oppenheim.ch

> <<Estrategia_Mayo 08_sp.pdf>>
> **Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG**

> Uraniastrasse 28, 8022 Zürich

> www.oppenheim.ch

> **Sal. Oppenheim**

This e-mail message together with its attachments, if any, is confidential and may contain information subject to legal privilege, e.g. banking secrecy. The information contained in this e-mail or its attachments is intended solely for the persons named as addressees. If you are not the intended recipient or have received this e-mail in error, please advise us immediately by e-mail, telephone or fax and delete this message including any attachments. Any unauthorised use, copying of this message or unauthorised distribution of the information contained herein is prohibited.

The confidentiality of e-mail messages cannot be guaranteed. Therefore, you should not include your account numbers, credit card numbers, passwords, home address or other private or confidential information in your e-mail messages. Further, we do not accept e-mail messages containing buy or sell orders or cancellations, address changes, fund transfer requests or other instructions usually requiring your signature.

This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments. E-mails do not constitute a commitment by Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd. except where provided in a written agreement between you and Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd.

Thank you for your co-operation.

Ingresá ya a MSN Deportes y enterate de las últimas novedades del mundo deportivo. MSN Deportes
Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG

Uraniastrasse 28, 8022 Zürich

www.oppenheim.ch

**Sal. Oppenheim**

This e-mail message together with its attachments, if any, is confidential and may contain information subject to legal privilege, e.g. banking secrecy. The information contained in this e-mail or its attachments is intended solely for the persons named as addressees. If you are not the intended recipient or have received this e-mail in error, please advise us immediately by e-mail, telephone or fax and delete this message including any attachments. Any unauthorised use, copying of this message or unauthorised distribution of the information contained herein is prohibited.

The confidentiality of e-mail messages cannot be guaranteed. Therefore, you should not include your account numbers, credit card numbers, passwords, home address or other private or confidential information in your e-mail messages. Further, we do not accept e-mail messages containing buy or sell orders or cancellations, address changes, fund transfer requests or other instructions usually requiring your signature.

This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments. E-mails do not constitute a commitment by Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd. except where provided in a written agreement between you and Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd.

Thank you for your co-operation

---

¿Aburrido? Ingresá ya y divertite como nunca en MSN Juegos. MSN Juegos
**Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG**

Uraniastrasse 28, 8022 Zürich

www oppenheim ch


**Sal. Oppenheim**


This e-mail message together with its attachments, if any, is confidential and may contain information subject to legal privilege, e.g banking secrecy. The information contained in this e-mail or its attachments is intended solely for the persons named as addressees. If you are not the intended recipient or have received this e-mail in error, please advise us immediately by e-mail, telephone or fax and delete this message including any attachments. Any unau-thorised use, copying of this message or unauthorised distribution of the information contained herein is prohibited.


The confidentiality of e-mail messages cannot be guaranteed. Therefore, you should not include your account numbers, credit card numbers, passwords home address or other private or confidential information in your e-mail messages. Further, we do not accept e-mail messages containing buy or sell orders or cancellations, address changes, fund transfer requests or other instructions usually requiring your signature


This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments. E-mails do not constitute a commitment by Bank Sal. Oppenheim jr & Cie. (Switzerland) Ltd. except where provided in a written agreement between you and Bank Sal. Oppenheim jr & Cie. (Switzerland) Ltd


Thank you for your co-operation

---

Lo que hay dentro de ti es lo que cuenta - ¿Qué tipo de atleta eres?
**Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG**

Uraniastrasse 28, 8022 Zurich

www oppenheim ch


**Sal. Oppenheim**


This e-mail message together with its attachments, if any, is confidential and may contain information subject to legal privilege, e.g. banking secrecy. The information contained in this e-mail or its attachments is intended solely for the persons named as addressees. If you are not the intended recipient or have received this e-mail in error, please advise us immediately by e-mail, telephone or fax and delete this message including any attachments. Any unau-thorised use, copying of this message or unauthorised distribution of the

information contained herein is prohibited.

The confidentiality of e-mail messages cannot be guaranteed. Therefore, you should not include your account numbers, credit card numbers, passwords, home address or other private or confidential information in your e-mail messages. Further, we do not accept e-mail messages containing buy or sell orders or cancellations, address changes, fund transfer requests or other instructions usually requiring your signature

This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments. E-mails do not constitute a commitment by Bank Sal. Oppenheim jr & Cie. (Switzerland) Ltd. except where provided in a written agreement between you and Bank Sal. Oppenheim jr & Cie. (Switzerland) Ltd.

Thank you for your co-operation

Descargá ya gratis y viví la experiencia Windows Live. Descubre Windows Live

**SAL. OPPENHEIM**

desde 1789

Resumen de activos al 03.09.2008 en USD

```
┌─────────────────────────────────┐
│    EXTRACTO DE CUENTA            │
│ USD—cuenta corriente 203735000  │
│ .Nº IBAN CH5708263000203735000  │
│    01.01.08−03.09.08            │
└─────────────────────────────────┘
```

SAL. OPPENHEIM
desde 1789

Cliente 20373  Despegue                                      Pagina 1                          Zurich, September 4, 2008

| Fecha | Fecha de valor | Referencia | Texto | Tipos de cambio Titulo | Divisa | Deber | Haber | Saldo en USD |
|-------|----------------|-----------|-------|------------------------|--------|-------|-------|--------------|
| | | | Saldo anterior | | | | | 709.65 |
| 14.03.08 | 31.03.08 | 11773736 | Comisión de administración 01.01.08 − 31.03.08 | | | 422.53 | | 287.12 |
| 14.03.08 | 31.03.08 | 11773738 | Comisión de custodia extranjera 01.01.06 − 31.03.08 | | | 119.34 | | 167.78 |
| 13.06.08 | 30.06.08 | 12471296 | Comisión de administración 01.04.08 − 30.06.08 | | | 434.45 | | 266.65 d |
| 13.06.08 | 30.06.08 | 12471297 | Comisión de custodia extranjera 01.04.08 − 30.06.08 | | | 120.39 | | 387.04 |
| 17.07.08 | 15.07.08 | 12488714 | Venta  5 Fund units Fairfield Sentry Fd Ltd (994280) | USD 1275.906 | | | 6'379.53 | 5'992.49 |

Conforme a los art. 6 de las Condiciones Generales de nuestro Banco, extractos de cuenta y/o
depositos son considerados correctos y aceptados si en hay objeción en el plazo de un mes
Cualquier reclamación se dirigirá a la Dirección del Banco

Banco Sal. Oppenheim jr. & Cie. (Suiza) S.A.  Uraniastrasse 28  8022 Zurich
Teléfono +41 44 214 12 14  Telefax +41 44 211 10 83  bank@oppenheim.ch  www.oppenheim.ch

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

| Información de cuenta | | Contenidos | |
|---|---|---|---|
| Cuenta: | 20373 | Rendimiento | 3 |
| Cliente: | Despegue | Estructura de las inversiones | 4 |
| Moneda de referencia: | USD | Alocación | 5 |
| | | Listado de activos | 6 |
| | | Observaciones | 7 |

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

Despegue                                                                                    Número de cuenta 20373

| Rendimiento | |
|---|---|
| Evaluación de los activos al 01.01.2008 | 476'313.34 |
| Evaluación de los activos al 03.09.2008 | 492'531.03 |
| Cambio en el valor de los activos | 16'217.69 |
| Depositos / retiros de fondos | 0.00 |
| Ganancia / Pérdida | 16'217.69 |
| Rendimiento total 01.01.2003 – 03.09.2008 | 44.48% |

**Rendimiento sobre base anual**



*Cálculo de rendimiento con ponderación de tiempo*
*El banco no descarta diferencias que puedan surgir entre performance y valuación del depósito en virtud de diferencias horarias en las liquidaciones*

página  3

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

Despegue                                                                    Número de cuenta 20373

| Análisis de activos (en 1'000) | | Análisis de monedas (en 1'000) |



Liquidez 1.22% (6)

Inv. alternativas 98.78% (487)

USD 100.00% (493)

página 4

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

Despegue                                                                                    Número de cuenta 20373

| Distribución del patrimonio por grupos de activos y monedas | | | | |
|---|---|---|---|---|
| **Moneda** | **USD** | **%** | **Total** | **%** |
| Liquidez | 5'991.40 | 1.22% | 5'991.40 | 1.22% |
| Inv. alternativas | 486'539.63 | 98.78% | 486'539.63 | 98.78% |
| **Total** | **492'531.03** | **100.00%** | **492'531.03** | **100.00%** |

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

Despegue                                                                                               Número de cuenta 20373

| Listado de activos | | | | | | | |
|---|---|---|---|---|---|---|---|

| Moneda | Cantidad | Descripción (el número de valor / ISIN / IBAN) | Rend. al venc. en % Duración | Fecha de cierre Cambio inicial | Cotización título divisas | Precio actual en USD Int. devengados | Proporción del activo |
|---|---|---|---|---|---|---|---|
| **Liquidez – cuentas corrientes** | | | | | | | |
| USD | 5'992.49 | USD Cuenta corriente 203735000 CH5708263000203735000 | | | | 5'992.49 −1.09 | 1.22% |
| **Total liquidez – cuentas corrientes** | | | | | | 5'991.40 | 1.22% |
| **Inversiones alternativas** | | | | | | | |
| USD | 171.53 | Fairfield Inv. Fd Ltd (1149279 / VGG3299H1091) ~A~ Subs.A1 | | 01.10.2006 * 107.431 | 03.09.2008 142.120 | 24'377.84 | 4.95% |
| USD | 343.51 | Fairfield Sentry Fd Ltd (994280 / VGG3299L1004) | | 01.07.2008 * 797.484 | 03.09.2008 1'345.410 | 462'161.79 | 93.83% |
| **Total inversiones alternativas** | | | | | | 486'539.63 | 98.78% |
| **Total valor de mercado** | | | | | | 492'532.12 | |
| **Total intereses devengados** | | | | | | −1.09 | |
| **Total activos netos** | | | | | | 492'531.03 | 100.00% |

página 6

* Fecha de la última transacción

SAL. OPPENHEIM
desde 1789

Resumen de activos al 03.09.2008 en USD

Despegue                                                                                           Número de cuenta 20373

| Observaciones al resumen de activos |
| --- |

| Nota |
| --- |

El Resumen Patrimonial detalla únicamente valores y operaciones relacionados con las cuentas contempladas en la parte "Información sobre cuentas". La valoración de los diferentes ítems patrimoniales se basa en cotizaciones y valores publicados por las fuentes bancarias habituales. Constituyen un valor de referencia y no obligan jurídicamente al banco. Rogamos verificar este resumen y hacernos saber cualquier eventual diferencia en el término de 30 días

| Tipo de cambio |
| --- |

| Contacto |
| --- |

Banco Sal. Oppenheim jr. & Cie. (Suiza) S.A.
Uraniastrasse 28
CH-8022 Zurich

Tel.:      +41 44 214 22 14
Fax.      +41 44 211 10 85
Email:    bank@oppenheim.ch
www.oppenheim.ch

```
STATEMENT
USD–Current account 203735000
IBAN No. CH5708263000203735000
01.08.01–24.02.09
```

SAL. OPPENHEIM
since 1789

Client: 20373 Despegue                                        Page 1                                            Zurich, February 25, 2009

| Booking-date | Value | Ref.-No. | Text | Title | Prices Currency | Debit | Credit | Balance in USD |
|---|---|---|---|---|---|---|---|---|
| | | | Balance carried forw. | | | | | 0.00 |
| 07.08.01 | 08.08.01 | 4120098 | Payment | UBS AG Zürich | | | 600,000.00 | 600,000.00 |
| 07.08.01 | 08.08.01 | 4120225 | | Place: FIDCALL USD, 3.5625%, DB.LUX (61425) | | 600,000.00 | | 0.00 |
| 22.08.01 | 22.08.01 | 4140258 | Interest | 08.08.01–22.08.01: FIDCALL USD, 3.375%, DB.LUX (61425) | | | 772.92 | 772.92 |
| 19.09.01 | 11.09.01 | 4173900 | | Decrease: FIDCALL USD, 3.375%, DB.LUX (61425) | | 199,881.61 | | 200,654.53 |
| 19.09.01 | 11.09.01 | 4174129 | Interest | 22.08.01–11.09.01: FIDCALL USD, 3.375%, DB.LUX (61425) | | | 647.92 | 201,302.45 |
| 10.09.01 | 11.09.01 | 4174467 | Payment | | | 200,000.00 | | 1,302.45 |
| 11.09.01 | 11.09.01 | 4174129 | Cancellation | 22.08.01–11.09.01: FIDCALL USD, 3.375%, DB.LUX (61425) | | 647.92 | | 654.53 |
| 11.09.01 | 11.09.01 | 4173603 | Interest | 22.08.01–11.09.01: FIDCALL USD, 3.375%, DB.LUX (61425) | | | 1,041.67 | 1,696.20 |
| 19.09.01 | 20.09.01 | 4193034 | Interest | 11.09.01–20.09.01: FIDCALL USD, 2.8125%, DB.LUX (61425) | | | 287.30 | 1,983.70 |
| 19.09.01 | 21.09.01 | 4199636 | Interest | 20.09.01–21.09.01: FIDCALL USD, 2.125%, DB.LUX (61425) | | | 25.69 | 2,009.39 |
| 25.09.01 | 31.08.01 | 4123075 | Purchase | 941.53 Fund units Fairfield Investment Fund Ltd –A– (1149279) | USD 106.2100 | 101,149.90 | | 99,140.51 d |
| 25.09.01 | 27.09.01 | 4215399 | Interest | 21.09.01–27.09.01: FIDCALL USD, 2.8125%, DB.LUX (61425) | | | 108.34 | 99,032.17 d |
| 25.09.01 | 27.09.01 | 4215457 | | Decrease: FIDCALL USD, 2.8125%, DB.LUX (61425) | | 97,873.69 | | 1,158.48 d |
| 30.09.01 | 30.09.01 | 4235274 | Interest | 28.06.01–30.09.01 | | | 505.63 | 1,664.11 d |
| 03.10.01 | 04.10.01 | 4247507 | | Close: FIDCALL USD, 2.375%, DB.LUX (61425) | | | 302,135.80 | 300,471.69 |
| 11.10.01 | 28.09.01 | 4123960 | Purchase | 348.51 Fund units Fairfield Sentry Fund Ltd (994280) | USD 788.4169 | 277,931.04 | | 22,540.65 |
| 27.12.01 | 31.12.01 | 4407099 | | Administration Fee 01.10.01 – 31.12.01 | | 384.23 | | 22,256.42 |
| 27.12.01 | 31.12.01 | 4407109 | | Foreign Safekeeping Charges 01.10.01 – 31.12.01 | | 94.75 | | 22,161.67 |
| 31.12.01 | 30.09.01 | 4394188 | Interest correction | 30.09.01–30.09.01 | | 104.23 | | 22,057.44 |
| 31.12.01 | 31.12.01 | 4417661 | Interest | 30.09.01–31.12.01 | | 198.12 | | 21,859.32 |
| 26.03.02 | 28.03.02 | 4603404 | Purchase | 6 Fund units CS Money Market Fund (Lux) FCP/USD (318485) | USD 2,598.7000 | 15,646.77 | | 6,212.55 |
| 27.03.02 | 27.03.02 | 4603218 | | Administration Fee 01.01.02 – 31.03.02 | | 288.69 | | 5,923.86 |
| 27.03.02 | 27.03.02 | 4603319 | | Foreign Safekeeping Charges 01.01.02 – 31.03.02 | | 96.23 | | 5,827.63 |
| 27.06.02 | 30.06.02 | 4806467 | | Administration Fee 01.04.02 – 30.06.02 | | 305.90 | | 5,521.73 |
| 27.06.02 | 30.06.02 | 4806469 | | Foreign Safekeeping Charges 01.04.02 – 30.06.02 | | 98.06 | | 5,423.67 |
| 27.09.02 | 30.09.02 | 5023370 | | Administration Fee 01.07.02 – 30.09.02 | | 314.43 | | 5,109.24 |
| 27.09.02 | 30.09.02 | 5023371 | | Foreign Safekeeping Charges 01.07.02 – 30.09.02 | | 100.89 | | 5,008.35 |
| 27.12.02 | 31.12.02 | 5264146 | | Administration Fee 01.10.02 – 31.12.02 | | 318.40 | | 4,689.95 |
| 27.12.02 | 31.12.02 | 5264147 | | Foreign Safekeeping Charges 01.10.02 – 31.12.02 | | 102.21 | | 4,587.74 |
| 28.03.03 | 31.03.03 | 5520812 | | Comisión de administración 01.01.03 – 31.03.03 | | 319.74 | | 4,268.00 |
| 28.03.03 | 31.03.03 | 5520813 | | Comisión de custodia extranjera 01.01.03 – 31.03.03 | | 102.64 | | 4,165.36 |
| 27.06.03 | 30.06.03 | 5805783 | | Comisión de administración 01.04.03 – 30.06.03 | | 325.55 | | 3,839.81 |

In accordance with article 6 of our Bank's General Conditions statements of account and/or
accounts are considered to be correct and agreed to if no objection is received within four weeks.
Any objection is to be notified to the management.

```
                STATEMENT                                                S A L . O P P E N H E I M
       USD–Current account 203735000                                          S I N C E  1 7 8 9
     IBAN No. CH5708263000203735000
            01.03.01~24.02.09
```

Client. 20373 Despeguc                                        Page 2                                      Zurich, February 25, 2009

| Booking-date | Value | Ref-No. | Text | Title | Prices Currency | Debit | Credit | Balance in USD |
|---|---|---|---|---|---|---|---|---|
| | | | Balance carried forw. | | | | | |
| 27.06.03 | 30.06.03 | 5805785 | Comisión de custodia extranjera 01.04.03 – 30.06.03 | | | 104.57 | | 3,839.81 |
| 29.09.03 | 30.09.03 | 6046105 | Comisión de administración 01.07.03 – 30.09.03 | | | 335.74 | | 3,735.24 |
| 29.09.03 | 30.09.03 | 6046107 | Comisión de custodia extranjera 01.07.03 – 30.09.03 | | | 107.96 | | 3,399.50 |
| 29.09.03 | 30.09.03 | 6052695 | Payment | | | 10,000.00 | | 3,291.54 |
| 03.10.03 | 06.10.03 | 6068245 | Sale  3 Fund units CS Money Market Fund (Lux) FCP A/USD (218485) | USD 2,636.2800 | | | 7,908.86 | 6,708.46 d |
| 29.12.03 | 31.12.03 | 6275476 | Comisión de administración 01.10.03 – 31.12.03 | | | 338.41 | | 1,200.38 |
| 29.12.03 | 31.12.03 | 6275477 | Comisión de custodia extranjera 01.10.03 – 31.12.03 | | | 110.83 | | 861.97 |
| 31.12.03 | 31.12.03 | 6288093 | Interest  30.09.03–31.12.03 | | | 6.99 | | 751.14 |
| 26.03.04 | 31.03.04 | 6513539 | Comisión de administración 01.01.04 – 31.03.04 | | | 344.33 | | 744.15 |
| 26.03.04 | 31.03.04 | 6513540 | Comisión de custodia extranjera 01.01.04 – 31.03.04 | | | 112.30 | | 399.82 |
| 25.06.04 | 30.06.04 | 6714973 | Comisión de administración 01.04.04 – 30.06.04 | | | 343.60 | | 287.02 |
| 25.06.04 | 30.06.04 | 6714973 | Comisión de custodia extranjera 01.04.04 – 30.06.04 | | | 114.21 | | 61.58 d |
| 29.06.04 | 30.06.04 | 6724126 | Sale  3 Fund units CS MM (Lux) FCP / –B – USD Cap. (218485) | USD 2,606.4130 | | | 7,819.24 | 175.79 d |
| 28.09.04 | 30.09.04 | 6900128 | Comisión de administración 01.07.04 – 30.09.04 | | | 349.45 | | 7,643.45 |
| 28.09.04 | 30.09.04 | 6900129 | Comisión de custodia extranjera 01.07.04 – 30.09.04 | | | 116.48 | | 7,294.00 |
| 29.12.04 | 31.12.04 | 7112443 | Comisión de administración 01.10.04 – 31.12.04 | | | 356.06 | | 7,177.52 |
| 29.12.04 | 31.12.04 | 7112445 | Comisión de custodia extranjera 01.10.04 – 31.12.04 | | | 118.69 | | 6,821.46 |
| 30.03.05 | 31.03.05 | 7334268 | Comisión de administración 01.01.05 – 31.03.05 | | | 448.62 | | 6,702.77 |
| 30.03.05 | 31.03.05 | 7334269 | Comisión de custodia extranjera 01.01.05 – 31.03.05 | | | 119.60 | | 6,284.15 |
| 28.06.05 | 30.06.05 | 7542589 | Comisión de administración 01.04.05 – 30.06.05 | | | 422.10 | | 6,164.55 |
| 28.06.05 | 30.06.05 | 7542590 | Comisión de custodia extranjera 01.04.05 – 30.06.05 | | | 120.60 | | 5,742.45 |
| 28.09.05 | 30.09.05 | 7758244 | Comisión de administración 01.07.05 – 30.09.05 | | | 426.85 | | 5,621.85 |
| 28.09.05 | 30.09.05 | 7758245 | Comisión de custodia extranjera 01.07.05 – 30.09.05 | | | 121.96 | | 5,195.00 |
| 28.12.05 | 31.12.05 | 7995139 | Comisión de administración 01.10.05 – 31.12.05 | | | 435.34 | | 5,073.04 |
| 28.12.05 | 31.12.05 | 7995140 | Comisión de custodia extranjera 01.10.05 – 31.12.05 | | | 124.38 | | 4,637.70 |
| 17.03.06 | 31.03.06 | 8242298 | Comisión de administración 01.01.06 – 31.03.06 | | | 442.42 | | 4,513.32 |
| 17.03.06 | 31.03.06 | 8242299 | Comisión de custodia extranjera 01.01.06 – 31.03.06 | | | 126.89 | | 4,069.20 |
| 16.06.06 | 30.06.06 | 8557332 | Comisión de administración 01.04.06 – 30.06.06 | | | 456.74 | | 3,942.31 |
| 16.06.06 | 30.06.06 | 8557333 | Comisión de custodia extranjera 01.04.06 – 30.06.06 | | | 130.49 | | 3,485.57 |
| 23.08.06 | 24.08.06 | 8748399 | Payment | | | 100,000.00 | | 3,355.08 |
| 15.09.06 | 30.09.06 | 8812413 | Comisión de administración 01.07.06 – 30.09.06 | | | 463.72 | | 96,644.92 d |
| 15.09.06 | 30.09.06 | 8812414 | Comisión de custodia extranjera 01.07.06 – 30.09.06 | | | 133.49 | | 97,108.64 d |
| | | | | | | | | 97,241.13 d |

In accordance with article 6a1 our Bank's General Conditions statements of account and/or
securities are considered to be correct and agreed to if no objection is received within one month.
Any objection is to be notified to the management.

```
STATEMENT
USD—Current account 203735000
IBAN No. CH5708263000203735000
01.08.01—24.02.09
```

SAL. OPPENHEIM
since 1789

Client: 20373 Despegue

Page 3

Zurich, February 25, 2009

| Booklog– date | Value | Ref–No. | Text | | Title | Prices Currency | Debit | Credit | Balance in USD |
|---|---|---|---|---|---|---|---|---|---|
| | | | Balance carried forw. | | | | | | 92,241.13 d |
| 30.09.06 | 30.09.06 | 8871851 | Interest | 30.06.06–30.09.06 | | | 797.32 | | 98,038.45 d |
| 26.10.06 | 25.10.06 | 8716499 | Sale | 770 Fund units Fairfield Inv. Fd Ltd –A– (1149279) | USD 132.3392 | | | 101,901.18 | 3,862.73 |
| 15.12.06 | 31.12.06 | 9131040 | | Comisión de administración 01.10.06 – 31.12.06 | | | 411.98 | | 3,450.75 |
| 15.12.06 | 31.12.06 | 9131041 | | Comisión de custodia extranjera 01.10.06 – 31.12.06 | | | 117.71 | | 3,333.04 |
| 31.12.06 | 31.12.06 | 9187555 | Interest | 30.09.06–31.12.06 | | | 561.68 | | 2,771.36 |
| 16.03.07 | 31.03.07 | 9520230 | | Comisión de administración 01.01.07 – 31.03.07 | | | 388.83 | | 2,382.53 |
| 16.03.07 | 31.03.07 | 9520231 | | Comisión de custodia extranjera 01.01.07 – 31.03.07 | | | 111.09 | | 2,271.44 |
| 15.06.07 | 30.06.07 | 9990041 | | Comisión de administración 01.04.07 – 30.06.07 | | | 398.37 | | 1,873.07 |
| 15.06.07 | 30.06.07 | 9990042 | | Comisión de custodia extranjera 01.04.07 – 30.06.07 | | | 113.82 | | 1,759.25 |
| 14.09.07 | 30.09.07 | 10638008 | | Comisión de administración 01.07.07 – 30.09.07 | | | 404.58 | | 1,354.67 |
| 14.09.07 | 30.09.07 | 10638009 | | Comisión de custodia extranjera 01.07.07 – 30.09.07 | | | 115.59 | | 1,239.08 |
| 14.12.07 | 31.12.07 | 11188211 | | Comisión de administración 01.10.07 – 31.12.07 | | | 411.78 | | 827.30 |
| 14.12.07 | 31.12.07 | 11188212 | | Comisión de custodia extranjera 01.10.07 – 31.12.07 | | | 117.65 | | 709.65 |
| 14.03.08 | 31.03.08 | 11773736 | | Comisión de administración 01.01.08 – 31.03.08 | | | 422.53 | | 287.12 |
| 14.03.08 | 31.03.08 | 11773738 | | Comisión de custodia extranjera 01.01.08 – 31.03.08 | | | 119.34 | | 167.78 |
| 13.06.08 | 30.06.08 | 12471296 | | Comisión de administración 01.04.08 – 30.06.08 | | | 434.43 | | 266.65 d |
| 13.06.08 | 30.06.08 | 12471297 | | Comisión de custodia extranjera 01.04.08 – 30.06.08 | | | 120.39 | | 387.04 d |
| 17.07.08 | 15.07.08 | 12458714 | Sale | 5 Fund units Fairfield Sentry Fd Ltd (994280) | USD 1,275.9060 | | | 6,379.53 | 5,992.49 |
| 22.09.08 | 30.09.08 | 13132342 | | Comisión de administración 01.07.08 – 30.09.08 | | | 430.87 | | 5,561.62 |
| 22.09.08 | 30.09.08 | 13132343 | | Comisión de custodia extranjera 01.07.08 – 30.09.08 | | | 121.47 | | 5,440.15 |
| 30.09.08 | 30.09.08 | 13207225 | Interest | 30.06.08–30.09.08 | | | 1.09 | | 5,439.06 |
| 19.12.08 | 31.12.08 | 13849331 | | Comisión de administración 01.10.08 – 31.12.08 | | | 427.24 | | 5,011.82 |
| 19.12.08 | 31.12.08 | 13849332 | | Comisión de custodia extranjera 01.10.08 – 31.12.08 | | | 122.07 | | 4,889.75 |

In accordance with article 6 of our Bank's General Conditions, statements of account and/or
securities are considered to be correct and agreed to if no objection is received within one month.
Any objection is to be notified in writing at once.

# SAL. OPPENHEIM

since 1789

Mr
Gustavo Egea
Perez de Herrera 1986
5009 Cordoba
Argentina

Zurich, February 2009

SIPA Customer Claim; Bernard L. Madoff Investment Securities LLC

Dear Mr. Egea,

We hereby acknowledge for filing purposes with Irving H. Picard, Esq., Trustee for Bernard L. Madoff
Investment Securities LLC, Claims Processing Center, 2100 McKinney Ave., Suite 800, Dallas, TX 75201, that
your account with Bank Sal. Oppenheim Jr. & Cie. (Switzerland) Ltd. holds as per 20.02.2009 343.51 units in
Fairfield Sentry Fund Ltd. with a value as of end of November 2008 of S 463'559,87.

Yours sincerely,

Bank Sal Oppenheim jr. & Cie (Switzerland) Ltd.

## Letter of confirmation

De:        Tanja.Bernath@oppenheim.ch
Enviado: martes, 24 de febrero de 2009 01:06:20 p.m.
Para:      gusegea@hotmail.com
CC:        andreas.maron@oppenheim.ch
·          Datos adjuntos:
           20373.pdf (107,6 KB)

Dear Mr. Egea

Mr. Maron asked me to send you the following confirmation.

Please receive herewith the confirmation of your positions in Fairfield Sentry for filing purposes  The original will follow by mail.

In the name of the document you may see the respective number of account  In the letter you will not find this number.

The account numbers of Fairfield Sentry for the claim form to fill in are the following:
1-FN012-3-0
1-FN045-3-0
1-FN-069-4-0
1-FN-070-4-0

Please note that you have to hand in a separate claim form for each of the above mentioned account number

Please do not hesitate to contact us if you do need any further information.

Yours sincerely,


**Tanja Bernath**
Legal & Compliance Private Banking

**Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG**
Uraniastrasse 28
8022 Zürich
Telefon +41 44 214 22 09
Telefax   +41 44 214 28 83
E-Mail tanja.bernath@oppenheim.ch


<<20373.pdf>>

**Bank Sal. Oppenheim jr. & Cie. (Schweiz) AG**
Uraniastrasse 28, 8022 Zürich
www.oppenheim.ch

## Sal. Oppenheim

This e-mail message together with its attachments, if any, is confidential and may contain information subject to legal privilege, e.g banking secrecy. The information contained in this e-mail or its attachments is intended solely for the persons named as addressees. If you are not the intended recipient or have received this e-mail in error  please advise us immediately by e-mail  telephone or fax and delete this message including any attachments  Any unauthorised use, copying of this message or unauthorised distribution of the information contained herein is prohibited.

Imprimir mensaje - Windows Live Hotmail                                                    Página 2 de 2

The confidentiality of e-mail messages cannot be guaranteed. Therefore, you should not include your account numbers, credit card numbers, passwords, home address or other private or confidential information in your e-mail messages. Further, we do not accept e-mail messages containing buy or sell orders or cancellations, address changes, fund transfer requests or other instructions usually requiring your signature

This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments. E-mails do not constitute a commitment by Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd. except where provided in a written agreement between you and Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd

Thank you for your co-operation.

# SAL. OPPENHEIM

since 1789

Client:                                                                    Zurich, February 2009

Dear Sir, Madam

The arrest of Bernard L. Madoff on December 11, 2008 and the revelation that his brokerage firm, Bernard L. Madoff Investment Securities LLC ("Madoff"), was "a giant Ponzi scheme" led to a court-ordered liquidation of Madoff. On December 15, 2008, Judge Louis L. Stanton authorized the Securities Investor Protection Corporation ("SIPC") to commence a liquidation proceeding against Madoff under the Securities Investor Protection Act ("SIPA") and appointed Irving Picard as the trustee to oversee the proceeding (the "SIPC Trustee"). SIPC, a nonprofit corporation funded by assessments on brokerage firms, protects investors against financial losses arising from the insolvency of their brokers. SIPC reimburses customers of brokers for up to USD 100'000 for cash and up to USD 500'000 for securities in their accounts when their brokerage firms become insolvent.

Many questions are yet to be answered in connection with Madoff's alleged fraud, including whether any assets remain in the Madoff funds to repay investors. In this letter and by sending the attached letter of Fairfield Sentry Limited dated February 4, 2009, however, we seek to answer some of the questions that have been raised relating to the liquidation proceedings.

Bank Sal. Oppenheim jr. & Cie. (Switzerland ) Ltd. (hereinafter "Bank Sal. Oppenheim" or the "Bank") acting for and on behalf of its clients invested in Fairfield Sentry Limited. Fairfield Sentry Limited was a so-called feeder fund that invested substantially all of its assets in Madoff.

*As you may know the SIPC Trustee sent out claim forms on January 2, 2009 to approximately 8'000 Madoff customers. Those forms must be returned to the trustee by March 4, 2009.*

# SAL. OPPENHEIM

since 1789

We are informed that under the Security Investor Protection Act ("SIPA") only customers of broker-dealers such as Madoff are covered by SIPC. We understand that the courts tend to define customer narrowly. Generally speaking, Madoff's customers for SIPA purposes were feeder funds such as Fairfield Sentry Limited and individuals who invested directly with Madoff and not the customers of those customers. As things stand now, Bank Sal. Oppenheim acting for and on behalf of some of its customers is not a customer of Madoff and would not benefit from filing a SIPC claim.

Should you wish to file a claim directly with the SIPC Trustee we recommend that you seek independent legal advice and undertake the necessary legal steps in due course.

Although Bank Sal. Oppenheim has no obligation, the Bank has also been asked whether it will commence any legal action in the matter of Fairfield Sentry Limited. As matters stand today, Bank Sal. Oppenheim holds shares in Fairfield Sentry Limited in the Bank's name but for the benefit of certain customers. It is our understanding that several civil class action lawsuits have been filed in the United States against various entities and persons related to Fairfield Sentry Limited. Those lawsuits are proceeding at the moment on behalf of all of the investors in Fairfield Sentry Limited as of December 11, 2008. At this point at least, Bank Sal. Oppenheim does not intend to initiate any other legal action against the management, advisors, custodians or any other persons involved in Fairfield Sentry Limited. Any investor who wants to undertake such legal action should seek independent legal advice.

Yours sincerely


Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd.


Enclosure: Information Fairfield February 2009

**FAIRFIELD SENTRY LIMITED**
Romasco Place, Wickhams Cay 1
Road Town, Tortola
British Virgin Islands, VG 1110

February 4, 2009

Dear Shareholder,

You will have received several letters from us as the directors of Fairfield Sentry Limited (the "**Company**"). These letters were sent as events unfolded regarding Bernard L. Madoff Investments Securities LLC ("**BMIS**"). The purpose of this letter is to now provide a significant level of additional information so that shareholders are aware of the actions being taken by the Company and its directors. As this letter contains detailed information concerning the Company, it should be considered confidential.

<u>Management</u>

As a preliminary matter, we believe that it would be beneficial for you to understand how the Company is being managed at this time. As you are likely aware, the Company has three directors, Walter Noel, Peter Schmid and Jan Naess. Walter Noel is a principal of the Fairfield Greenwich Group. Peter Schmid and Jan Naess are the independent (non-executive) directors and have no financial interest in Fairfield Greenwich (Bermuda) Limited (the "**Manager**") or Fairfield Greenwich Group.

The board of directors has assumed responsibility for the management of the Company. We are meeting on a regular basis to discuss the affairs of the Company. Walter Noel has not attended these meetings and has recused himself from such meetings since the events of December 11, 2008. We have also amended the signing authority on the bank account with Citco Bank Nederland N.V. Dublin Branch to ensure that no funds are wired out of this account without the approval of either of the independent directors, Peter Schmid or Jan Naess. We continue to work closely with the Manager, in particular to liquidate the remaining assets of the Company (discussed further below). We are also working closely with the administrator, Citco Fund Services (Europe) B.V., in this regard. We value these relationships. However, we are also acting independently recognising that we owe our duties to the Company.

<u>Background</u>

On October 31, 2008 the published net asset value of the Company was US$7,283,393,967 resulting in a net asset value per share of US$1,349.7782. On December 11, 2008, Bernard L. Madoff was arrested. On December 12, 2008 the

February 4, 2009
Page 2 of 5

<u>Current Assets</u>

The Company currently has cash at a bank account with Citco Bank Nederland N.V. Dublin Branch in the amount of US$67,179,754 (which includes the proceeds of subscription of the December 1, 2008 and January 2, 2009 subscribers which are not assets of the Company -- see below). The Company has investments, other than with BMIS, with a value as at November 30, 2008 of US$81,723,813. Of these investments, US$55,947,567 represents investments in the Non-SSC Investments as defined on page 10 of the private placement memorandum of the Company. The Company has liabilities as at November 30, 2008 in the amount of US$62,211,252, which includes a liability to the Manager in the amount of US$61,403,895 being management and performance fees payable to the Manager the payment of which was deferred by the Manager.

<u>Potential Claims</u>

In addition to the foregoing assets held directly by the Company, the Company recognises it may be able to realise assets from each of the following:

(a)    The Company is currently analysing its position with respect to Securities Investor Protection Corporation ("SIPC"). In particular, it is making a determination as to whether it is likely to receive cash from SIPC or whether it is likely that there will be a clawback from SIPC. The filing deadline is March 4, 2009. Prior to this time, the Company will make a decision as to whether it is in the Company's best interest to make a filing with SIPC and proceed accordingly. Please see below for a discussion as to whether shareholders of or investors in the Company should individually file with SIPC.

(b)    We also recognise that there may be claims available to the Company which may be pursued in order to recover the losses of the Company. We have retained legal counsel in several jurisdictions to examine potential causes of action and will pursue all lawsuits where there is a likelihood of success on a cost effective basis. However, we are proceeding cautiously and carefully with respect to both when and how to bring such actions. Unfortunately, we cannot provide further information at this time so as not to prejudice any such actions or the Company, but as soon as we are able to do so, we will communicate further in this regard.

(c)    In addition, the Company is exploring whether it is able to make any claims with the Internal Revenue Services for overpayment of taxes (ie United States withholding tax paid on dividend income purportedly by the Company through BMIS). All such claims will be pursued to the extent that it is appropriate for the Company to do so.

February 4, 2009
Page 3 of 5

Otherwise, we confirm that we will take any and all actions which are appropriate to recover the losses of the Company.

SIPC and You

By Order dated December 15, 2008, the United States District Court, Southern District of New York, authorised SIPC to commence a liquidation proceeding against BMIS under the United States Securities Investor Protection Act ("SIPA") and appointed Irving Picard, Esq. as the trustee to oversee the liquidation proceeding (the "SIPC Trustee"). SIPC, a nonprofit United States corporation funded by assessments on brokerage firms, protects investors against financial losses arising from insolvency of their brokers. SIPC reimburses customers of brokers for up to US$100,000 for cash and up to US$500,000 for securities in their accounts when their brokerage firms become insolvent.

SIPA provides protection to those who meet the statutory definition of a "customer". The Company had brokerage accounts with BMIS. Therefore it qualifies as a "customer" under SIPA. We have received several inquiries from shareholders about whether they should be filing claims with SIPC individually.

The Company does not know whether the SIPC Trustee is going to consider indirect investors such as the shareholders of the Company as meeting the statutory definition of "customer". Accordingly, the Company has reached out to the SIPC Trustee to inquire as to his position on this issue. As yet, we have not received any advice on this issue from the SIPC Trustee. We understand from published reports that the SIPC Board met Friday, January 30, 2009 to discuss how claims will be treated, and possibly, whether indirect investors will be treated as "customers".

Given the uncertainty in how claims will be handled, you may wish to consider filing a claim with SIPC. For your convenience, we have attached a claim form to this letter, along with instructions on how to complete it. The Company's BMIS account numbers are 1-FN012-3-0; 1-FN045-3-0; 1-FN-069-4-0; and 1-FN-070-4-0.

Please be advised that neither the Company nor its counsel represent you individually and will not give legal advice in connection with the filing of a claim with SIPC. You should seek advice from your own lawyer or advisor before you decide whether to file a claim with SIPC as the filing may have implications for you concerning, among other things, the jurisdiction of the Bankruptcy Court over possible attempts by the SIPC Trustee to recover withdrawals you have made from the Company.

November 30 Redeemers, December 31 Redeemers and Shareholders

As indicated above, the Company suspended the calculation of net asset value of the Company on December 18, 2008. As a result, the December 31, 2008 redeeming shareholders as well as all other shareholders continue to be shareholders of the Company. With respect to the November 30, 2008 redeemers, the payment of their proceeds of

February 4, 2009
Page 4 of 5

redemption has been suspended pursuant to the suspension of the calculation of net asset value and article 10(1)(c) of the articles of association of the Company.

Once the Company is in a position to effect redemptions, which may take several years, it is anticipated that all shares will be redeemed at the same time. The result of this is that all shareholders, including the November 30, 2008 redeeming shareholders, the December 31, 2008 redeeming shareholders and the continuing shareholders, should all receive cash at the same time and share pro rata in the assets of the Company.

<u>December 1 and January 2 Subscribers</u>

The Company received proceeds of subscription for both the December 1, 2008 and the January 2, 2009 dealing day. The directors have sought advice from both British Virgin Islands counsel, Conyers Dill & Pearman, as well as from Queen's Counsel in London, Richard Millet QC, concerning the nature of such assets. We have carefully considered the facts surrounding such proceeds of subscription. We have been advised by both Conyers Dill & Pearman and Richard Millet QC and we have concluded that such proceeds of subscription are not in fact assets of the Company. Rather, they are assets held in trust by the Company and should be returned to such subscribers. It is our intention to return such proceeds of subscription as soon as is practicable.

<u>Dutch Court Order</u>

In the desire to provide full information to shareholders, we have to advise you of a court order freezing the bank account of the Company maintained with Citco Bank Nederland N.V. Dublin Branch obtained by a shareholder of the Company. This court order has frozen the cash in this account. This court order is having a serious detrimental effect on the Company, as it is causing amongst other matters, delays in the Company's ability to retain counsel and pursue potential lawsuits. The effect of this court order is that the Company does not have any cash to pay expenses nor the ability to return the proceeds of subscription to the December 1, 2008 and January 2, 2009 subscribers. The directors of the Company are currently in negotiations with this one investor and hope to resolve this issue soon for the benefit of all shareholders who will all be treated equitably.

<u>Timeframe</u>

As indicated above, the Company suspended the calculation of net asset value on December 18, 2008. This had the effect of stopping all cash flows from and to the shareholders of the Company. We are unable to advise as to when the Company will start to realise cash from its assets as described above, including from SIPC as well as any claims the Company may bring. This is likely to take several years. The directors will endeavour to distribute cash when possible, taking into account its cash requirements in order to fund continued operations, including lawsuits, as well contingent liabilities, such as potential clawbacks from SIPC. With this in mind, the directors do not envisage returning cash in the immediate future, but will do so once the directors have determined that it is appropriate to do so.

February 4, 2009
Page 5 of 5


**Conclusion**

We wish to assure you that we are acting faithfully and working hard in your best interests. It is our intention to recover the losses of the Company to the greatest extent possible for your benefit.

Yours faithfully,

The Board of Directors

# Condiciones Generales

A menos que se acuerde otra cosa en esta documentación, la relación comercial entre el cliente y el banco Sal. Oppenheim jr. & Cie. (Suiza) AG (en adelante el «Banco») se regirá en general por las condiciones siguientes.

**Art. 1    Poder dispositivo**
Al notificar usted por escrito al Banco un poder de firma, éste será válido en exclusiva y hasta que envíe al Banco una revocación escrita, no obstante inscripciones en el Registro Mercantil o publicaciones en otros términos.

**Art. 2    Incapacidad de obrar**
El cliente asume la plena responsabilidad por los perjuicios derivados de una incapacidad de obrar por su parte o por parte de un tercero, a menos que tal circunstancia se haya publicado en un boletín oficial suizo, si se refiere a su persona, o se haya comunicado por escrito al Banco, si se refiere a un tercero.

**Art. 3    Comunicaciones del Banco**
Se considerará que las comunicaciones del Banco han sido realizadas cuando se hayan enviado a la última dirección notificada por el cliente. Como fecha de envío se tomará la de las copias o listas de envíos que obren en poder del Banco. La correspondencia que deba permanecer retenida en el Banco se considerará notificada en la fecha que figure en cada caso en la misma.

**Art. 4    Errores de transmisión**
A menos que medie culpa grave del Banco, el cliente soportará los posibles perjuicios derivados del uso del correo, fax, teléfono, correo electrónico y otras formas de comunicación, y de entidades de transporte, en especial en caso de pérdida, retraso, malentendido, alteraciones o duplicaciones, confiscación, apertura u otros perjuicios debidos a un acceso no autorizado.

**Art. 5    Ejecución imperfecta de órdenes**
Si se produce algún perjuicio a consecuencia de un error, retraso o no ejecución de alguna orden (salvo las bursátiles), el Banco sólo responderá por la pérdida de intereses, a menos que se le haya advertido expresamente del riesgo inminente de producirse un perjuicio mayor.

**Art. 6    Reclamaciones**
Las reclamaciones del cliente relativas a la ejecución o no ejecución de las órdenes, así como las referidas a otras comunicaciones, deberán formularse nada más recibirse la correspondiente comunicación, y como muy tarde dentro del plazo fijado por el Banco. De lo contrario, se considerará que la ejecución o no ejecución, así como los correspondientes extractos y comunicaciones, han sido autorizados. Si cabe esperar una notificación del Banco y ésta no se produce, el cliente deberá formular la reclamación pertinente en cuanto llegue la fecha en que tendría que haber recibido la notificación en circunstancias normales. El cliente soporta los perjuicios derivados de un retraso en su reclamación.

Las reclamaciones relativas a extractos de cuentas o depósitos deben formularse en el plazo de un mes. Transcurrido dicho plazo, los extractos se considerarán autorizados. La aprobación expresa o tácita de los extractos de cuentas y depósitos conlleva la autorización de todos los asientos que contengan y de las posibles salvedades del Banco.

El Banco, sin necesidad de consultar previamente al cliente, está facultado para anular los abonos o cargos en cuenta improcedentes que pueda descubrir. Este derecho de anulación tampoco se verá afectado por la aprobación de un extracto de depósito o de cuenta.

**Art. 7    Comprobación de la legitimación**
El Cliente deberá guardar cuidadosamente sus documentos bancarios, a fin de evitar que personas no autorizadas puedan acceder a la información contenida en los mismos. Si imparte órdenes de pago, el cliente deberá adoptar todas las precauciones que reduzcan el riesgo de sufrir fraudes. Deberá mantener en secreto sus códigos al objeto de impedir su uso indebido. Los daños y perjuicios derivados del incumplimiento de estas obligaciones de diligencia serán de cuenta del cliente. El Banco aplicará las medidas idóneas para detectar y evitar fraudes. Si el Banco dejase de emplear a tal efecto la diligencia habitual en las operaciones comerciales, asumirá los daños y perjuicios producidos. Los daños y perjuicios que se produzcan sin que ni el Banco ni el cliente hayan incumplido sus obligaciones de diligencia serán de cuenta de la parte a cuya área de influencia proceda adscribirlos.

**Art. 8    Derecho prendario y de compensación**
El Banco posee un derecho prendario sobre todos los valores patrimoniales custodiados por él por cuenta del cliente en el propio Banco o en otro lugar, y además un derecho de compensación para todas las deudas activas del cliente, con independencia de su vencimiento y de la moneda. No obstante, el derecho prendario no nace hasta existir una deuda activa. Esto se aplica también a los créditos y préstamos con garantías especiales o sin garantía. En el momento en que el cliente se demore en un pago, el Banco, a su entera discreción y sin necesidad de informar previamente al cliente, está facultado para valorizar las garantías del cliente por licitación privada o con arreglo a la ley federal sobre cobro de deudas y quiebras. El Banco también puede optar por entrar él mismo en la valorización.

**Art. 9    Servicio de cuentas**
El Banco se reserva el derecho de modificar en cualquier momento los intereses y comisiones que aplique, máxime si cambia la situación del mercado monetario, y de informar de ello al cliente por escrito o por cualquier otro procedimiento adecuado. Los intereses y comisiones se entenderán netos para el Banco. Los impuestos, tasas y gastos correrán a cargo del cliente. El Banco podrá retener las bonificaciones que le puedan corresponder, calculadas tomando como base la magnitud de las órdenes del cliente.
Si el cliente da varias órdenes por un importe global superior a su saldo activo en el Banco o al crédito que se le haya concedido, el Banco, a su entera discreción y con independencia de la fecha y del número de la orden, determinará qué disposiciones habrá de ejecutar total o parcialmente.

**Art. 10    Cuentas en moneda extranjera**
Los activos del Banco correspondientes al saldo del cliente en moneda extranjera se colocarán en esa misma moneda, dentro o fuera del país de la misma. El cliente asumirá proporcionalmente todas las consecuencias económicas y jurídicas que puedan afectar al saldo total del Banco en el país de la moneda o de la inversión como consecuencia de medidas adoptadas por las autoridades competentes.

En el caso de las cuentas en moneda extranjera, el Banco cumplirá sus obligaciones exclusivamente en el domicilio de la sucursal que administra la cuenta y sólo mediante una nota de abono en la moneda extranjera en dicha sucursal, en un banco corresponsal o en un banco designado por el cliente en el país de la moneda extranjera.

### Art. 11    Letras de cambio, cheques y otros efectos

El Banco está facultado para volver a cargar las letras de cambio, cheques y otros efectos impagados que se hayan descontado o abonado en cuenta. Hasta que se liquide el saldo deudor, el Banco conservará los derechos cambiarios, de cheques o de otro tipo sobre el pago de la totalidad del importe de la letra de cambio, cheque o efecto, con reclamaciones de orden secundario contra cada una de las personas obligadas por el efecto.

### Art. 12    Duración y rescisión de la relación comercial

La relación comercial entre el cliente y el Banco se establece generalmente por tiempo indefinido y no se extingue en caso de fallecimiento, declaración de ausencia, incapacidad de obrar o quiebra del cliente, sino que se transfiere a sus sucesores jurídicos o representantes legales.

El Banco se reserva el derecho de rescindir con efectos inmediatos las relaciones comerciales existentes, en especial los créditos y límites de crédito prometidos o concedidos, en cuyo caso todas las obligaciones habrán de liquidarse de inmediato. Asimismo, el cliente también tiene el derecho de rescindir la relación comercial en cualquier momento a su entera discreción. Ambos supuestos están condicionados a pactos escritos que dispongan otra cosa.

### Art. 13    Equiparación de los sábados a los festivos

En la actividad comercial del Banco, los sábados se equipararán a los días festivos reconocidos oficialmente.

### Art. 14    Externalización de áreas de negocio

El Banco se reserva el derecho de externalizar las siguientes áreas de negocio y contratar a un proveedor de servicios externo: servicios informáticos, servicio de pagos, gestión de cartera y otras tareas especiales relacionadas con la detección, limitación y supervisión de riesgos. En este sentido, el Banco está facultado para proporcionar datos del cliente al proveedor de servicios si ello es necesario para dicha externalización. No obstante, el Banco precisará la previa autorización del cliente si sus datos van a enviarse al extranjero de manera no anónima.

### Art. 15    Esclarecimiento del riesgo, asesoramiento en materia de inversiones y administración patrimonial

Con la firma del contrato de establecimiento de una relación comercial con el Banco, el cliente confirma que ha leído y comprendido el folleto «Riesgos especiales en la negociación de valores», el cual proporciona orientación sobre los factores de riesgo intervinientes en las operaciones que están sujetas a un riesgo elevado o poseen un perfil de riesgo complejo.

A fin de aceptar los mandatos de administración patrimonial para uno o varios depósitos o cuentas del cliente, el Banco deberá recibir una orden de administración por escrito. En particular, el Banco no está obligado a supervisar las inversiones patrimoniales del cliente ni a informarle sobre cambios en las recomendaciones de inversión. La supervisión de las inversiones patrimoniales es responsabilidad exclusiva del cliente. Si el Banco da algún consejo sobre posibles inversiones o sobre la ejecución de transacciones, lo hará sobre la base de fuentes e informaciones de dominio público.

En particular, el Banco no está obligado a verificar la aptitud personal o financiera de una posible inversión o ejecución de una transacción.

### Art. 16    Obligación de secreto por parte del Banco

Por imperativo legal, el Banco está obligado a tratar de manera confidencial todos los datos sobre sus clientes. No obstante, se apercibe al cliente de que esta obligación legal de secreto por parte del Banco está sujeta a ciertas limitaciones jurídicas. En los casos que prevea la ley, el Banco tendrá la obligación de testificar y proporcionar información a las autoridades suizas. Cuando sea necesario para salvaguardar intereses legítimos del Banco, éste quedará exonerado por el cliente de su obligación de secreto bancario y del cumplimiento de la ley de protección de datos, en especial para asegurar reclamaciones del tipo que sea contra el cliente. El cliente sabe que para las órdenes de pago al extranjero es en principio preciso indicar el nombre del cliente y otros datos del cliente (p. ej. número de cuenta, número de identificación, dirección del ordenante) y que el comercio con valores y otros instrumentos financieros en determinados mercados puede exigir la revelación de la identidad del cliente o de la persona que éste haya autorizado. En órdenes de pago en el país, el banco se limita a la indicación de un número de identificación. Sin embargo, el banco se compromete, a petición del banco del beneficiario, a comunicar los mismos datos respecto del solicitante como en el caso de los pagos al extranjero

### Art. 17    Valores patrimoniales inactivos

El cliente se apercibe de que el Banco cumple las Directrices de la Asociación Bancaria Suiza sobre el tratamiento de cuentas, depósitos y cajas de seguridad inactivas en bancos suizos. En particular, el Banco puede verse obligado a informar a un órgano central sobre la existencia de una cuenta inactiva.

### Art. 18    Modificaciones de las condiciones generales

El Banco se reserva el derecho de modificar en cualquier momento las presentes condiciones generales. Tales modificaciones se comunicarán al cliente por escrito o de otra forma adecuada y se considerarán aprobadas si el cliente no se opone a ellas por escrito en el plazo de 30 días.

### Art. 19    Derecho aplicable, lugar de cumplimiento y fuero competente

Todas las relaciones jurídicas del cliente con el Banco se rigen por el Derecho suizo. El lugar de cumplimiento y de ejecución para los clientes residentes en el extranjero y el único fuero competente para todos los procesos es Zúrich o el lugar donde se encuentre la oficina matriz con la que existe la relación comercial. El Banco también está facultado para demandar judicialmente al cliente ante cualquier otro tribunal competente o en cualquier otro lugar de ejecución admisible, ya sea en Suiza o en el extranjero. En tal caso también será de aplicación el Derecho suizo.

### Revers für Telefax-Aufträge

Hiermit teilen wir Ihnen mit, dass wir es in gewissen Fällen als notwendig erachten können, Ihnen Weisungen zur Ausführung von Zahlungsaufträgen und Lieferungen von Wertgegenständen per Telefax (d.h. durch Übermittlung unserer rechtmässig unterschriebenen Aufträge über Telefonleitungen) zu erteilen. Wir ermächtigen Sie in diesem Zusammenhang ausdrücklich die von uns oder unseren/n Bevollmächtigten oder unseren/n Verwaltungsbevollmächtigten erteilten Telefax-Anweisungen unter unserer vollen Verantwortung auszuführen und entlassen Sie hiermit von jeglicher Haftung für allfällige Fehler, die durch die Telefax-Übermittlung entstehen könnten, vor allem bezüglich der Echtheit der Aufträge und der darin aufgeführten Unterschriften, die Ihnen nur als Kopie zugehen.

### Waiver for Telefax Orders

We hereby duly inform you that we may have reason to send you instructions to carry out payments and deliveries of valuables by telefax (that is to say, transmit copies of validly signed orders to you by telefacsimile machine). We therefore expressly request you, under our own full responsibility, to accept such instructions as we or our attorney(s) may from time to time send you by telefax, and we henceforth relieve you of all responsability which may arise therefrom, particularly as regards the authenticity of the orders themselves and for our signatures – which can only be verified in copy – and we otherwise assume full liability for all consequences of your acceptance of such telefax instructions.

### Lettre de décharge pour ordres transmis par téléfax

Nous vous informons que nous serons amenés à vous donner des instructions par téléfax (c'est à dire transmission par voie téléphonique d'une copie de nos ordres dûment signés) pour l'exécution de paiements et de livraisons des valeurs. Par conséquent, vous êtes expressément autorisés à donner suite, sous notre entière responsabilité, à de telles instructions par téléfax que vous recevrez de notre part et/ou de la part de nos fondés de procuration; étant entendu que nous vous déchargeons d'ores et déjà et prenons à notre compte la responsabilité de toute erreur ou irrégularité, en particulier en ce qui concerne l'authenticité des ordres eux-mêmes et la/les signature(s) qui ne peut/peuvent être contrôlée(s) qu'en copie, ou toute autre conséquence pouvant survenir à la suite des ordres en question.

### Lettera di manleva per ordini tramite telefax

Con la presente vi informiamo che potremo trovarci nella necessità di impartirvi istruzioni per pagamenti o consegne di valori anche per telefax (vale a dire attraverso trasmissione per via telefonica di copia di nostri ordini regolarmente firmati). In relazione a quanto precede siete richiesti espressamente di accettare, sotto la nostra totale responsabilità, tali istruzioni per telefax aventi la/e firma/e nostra/e e/o nostro(i) procuratore(i) e/o procuratore(i) amministrativo(i) ed al riguardo vi scarichiamo sin d'ora, assumendole in proprio, da ogni responsabilità anzitutto in ordine all'autenticità degli ordini stessi e della(e) nostra(e) firma(e) apposta(e) sui medesimi, firma(e) da voi controllabile(i) solo in copia e comunque per qualsiasi conseguenza possa derivare dal fatto di aver voi accettato dette istruzioni per telefax.

### Declaración de renuncia para órdenes transmitidas por telefax

Por la presente les informamos que en algunos casos podríamos considerar necesarias las instrucciones para la ejecución de órdenes de pago y entregas de objetos de valor por telefax (es decir, mediante la comunicación de las órdenes firmadas conforme a derecho por vía telefónica). A este respecto les autorizamos expresamente a ejecutar las órdenes transmitidas por telefax por nuestra parte, por parte de nuestro(s) apoderado(s) o de nuestro(s) apoderado(s) para la gestión bajo nuestra responsabilidad exclusiva, y les eximimos de cualquier tipo de responsabilidad como consecuencia de los posibles errores derivados de la transmisión por telefax, sobre todo respecto de la autenticidad de las órdenes y de las firmas en ellas colocadas, de las que sólo recibirá una copia.

| | |
|---|---|
| Ort/Datum | Unterschrift/Signature/Firma/Firma |
| Place/Date | |
| Lieu/Date | |
| Luogo/Data | _Cordoba, 22.6.2001_ |
| Lugar y fecha | der Kunde / Customer / le client / Il cliente / Cliente |

Andreas Maron
SDI, int. 253
PB 6 - Argentinien
Paraguay / Uruguay

Unterschrift
kontrolliert:

**Reglas de aplicación al uso d operaciones comerciales por correo
electrónico con Banco Sal. Oppenheim jr. & Cie. (Suiza) SA**

Relación comercial: _____*Zegpepeee*    20373_____

El abajo firmante certifica por la presente que en ciertos casos enviará instrucciones al Banco por correo
electrónico desde la siguiente dirección de correo electrónico

_____*Gusegea @ Hotmail.com.*_____

A tal efecto autoriza al Banco a ejecutar bajo la total responsabilidad del abajo firmante las
instrucciones dadas y exime en este contexto expresamente al Banco de cualquier responsabilidad
producto de errores que pudieran surgir como resultado de la transmissión por correo electrónico, en
particular en cuanto a la autenticidad y la llegada correcta y en tiempo de las instrucciones. Del mismo
modo, el Banco no aceptará responsabilidad alguna con relación a las consecuencias que pudieran
surgir a partir de la falta de protección del secreto (secreto bancario del cliente) y del mal uso de
informaciones enviadas al o por el Banco mediante correo electrónico. En caso de que el cliente deseara
que el Banco le envíe comunicaciones por correo electrónico, el cliente asumirá, asimismo, todos los
peligros y riesgos relacionados con tal operación. El Banco no aceptará responsabilidad de ningún tipo.

*Cordobs 18/3/06. -*
_____
Lugar y fecha

_____
Firma del Cliente



Unterschrift
kontrolliert:
.............

# CONDICIONES PARA LA NEGOCIACIÓN
# DE INSTRUMENTOS FINANCIEROS DERIVATIVOS

Cliente:                    20373  Despegue

Las presentes condiciones tienen por objeto la regulación de los derechos y deberes derivados de las transacciones realizadas por Bank Sal. Oppenheim jr. & Cie (Suiza) AG (de aquí en adelante llamada el "Banco") en los mercados suizos e internacionales en nombre propio, pero por orden y cuenta del/de los abajo firmante(s) (de aquí en adelante llamado el "Cliente"), ya sea la compra y/o venta y/o suscripción de instrumentos financieros derivativos cotizados (opciones estandarizadas y Financial Futures). Estas condiciones también se aplicarán a los instrumentos derivativos negociados de modo extra bursátil (contratos a plazo en divisas y metales preciosos, opciones OTC (Over the counter), Forward Rate Agreements y Swaps de interés) pactados directamente por el banco.

## A.  DISPOSICIONES GENERALES

Siempre que de las condiciones mencionadas a continuación no se desprenda lo contrario, regirán las Condiciones Generales de contrato del Banco que son parte integrante de este contrato.

1    **Relaciones entre el Cliente y el Banco**
     El Banco está dispuesto, basándose en las instrucciones dadas por el cliente, a actuar en los diversos mercados bursátiles, así como en los mercados no bursátiles (OTC), por orden del Cliente, es decir, a nombre propio pero por cuenta y riesgo del Cliente, bajo observación de las normativas y otras directrices vigentes en esos mercados.

2.   **Características y riesgos**
     El Cliente conoce las características de los instrumentos financieros anteriormente citados, los reglamentos y directrices de las bolsas en las que se negocian, y los riesgos respectivos referente al mercado. El Banco no está obligado a proporcionar al Cliente los conocimientos requeridos para la aplicación de instrumentos financieros derivativos y las transacciones correspondientes; el Banco declina toda responsabilidad en este sentido. El Cliente declara por el presente contrato disponer de los medios adecuados y estar en disposición financiera para asumir todos los riesgos relacionados con el comercio de los instrumentos financieros derivativos anteriormente citados, responder por las pérdidas que pudieran ocasionarse, y que recompensará al Banco por todas las obligaciones contraídas por su orden. El Cliente también está informado sobre el hecho de que el Banco no está obligado a conocer su situación financiera.

3.   **Otorgamiento de órdenes**
     El Cliente se compromete a dar al Banco sólo aquellas órdenes que sean compatibles con su situación financiera. En consecuencia, sólo él será responsable de los resultados de estas transacciones, sin que el Banco, el corredor de bolsa o incluso los mercados quedan asumir cualquier tipo de garantía de éxito.

4.   **Pago de primas**
     El Cliente está obligado, en el caso de los instrumentos financieros derivativos para los cuales se haya previsto el pago de una prima (por ejemplo, la compra de una opción), a pagar esta prima al Banco o la fecha de cambio fijada por los mercados bursátiles y/o Cámara de compensación y/o Banco

5.   **Márgenes y obligaciones subsidiarias por los descubiertos**
     El Cliente deberá pagar al Banco los márgenes establecidos por los mercados bursátiles y/o Cámara de compensación y/o Banco para la seguridad de su posición. El Cliente manifiesta estar dispuesto a depositar en el Banco el citado margen y a mantenerlo en la cantidad que el Banco considere necesario, según su arbitrio, para asegurar la posición respectiva y que puede modificar en cualquier momento. El Cliente también se compromete a satisfacer de inmediato cualquier requerimiento de pago suplementario del Banco.

6.   **Gastos y comisiones**
     El Cliente manifiesta estar de acuerdo a pagar comisiones y gastos al Banco por las transacciones realizadas en opciones estandarizadas, financial futures y otros instrumentos financieros derivativos según las tarifas vigentes, y autoriza al Banco por el presente contrato a realizar los cargos correspondientes.

## B.  DISPOSICIONES PARA NEGOCIOS A PLAZO EN DIVISAS Y METALES PRECIOSOS

1.   Cuando el margen depositado corriera algún tipo de riesgo o fuera insuficiente, y el Cliente no hubiera satisfecho el pago suplementario hasta las 16.00 horas (hora suiza) del siguiente día hábil, el Banco estará autorizado a adoptar las medidas siguientes:
     Podrá realizar transacciones según su criterio destinadas a la cobertura total o parcial de los contratos en curso por cuenta del Cliente.
     a)   En el caso de posiciones de divisas, la cobertura se llevará a cabo con contratos de la siguiente manera: el Banco compra a la cotización del día del plazo, por cuenta del Cliente, la moneda que debe al cambio del vencimiento.
     b)   En el caso de los contratos en metales preciosos, el Banco compra por cuenta del Cliente al cambio del vencimiento los metales preciosos que debe, a la cotización del día del plazo, o el Banco vende, siempre por cuenta del Cliente, al cambio del vencimiento los metales preciosos por los que es acreedor, a la cotización del día del plazo.

2.   El Banco podrá utilizar los márgenes prestados.

3.   El Banco podrá bloquear los activos de la cuenta del Cliente y saldarlos; bloquear valores o venderlos o liquidar otros activos.

## C.  DISPOSICIONES PARA LA NEGOCIACIÓN DE OPCIONES

1.   Como suscriptor de una opción (call o put) el Cliente está obligado a pagar al Banco el margen fijado. En caso de que el Cliente no lo satisfaga hasta las 16.00 horas (hora suiza) del día hábil siguiente al día del cierre, el Banco está autorizado, según su propio arbitrio y sin notificación suplementaria al Cliente, a liquidar la posición en cuestión. Este derecho, no sometido a ningún tipo de restricción, también incluye la

compra y/o venta, siempre por cuenta o riesgo del cliente, de una parte o de la totalidad de la posición. El Banco sólo realizará órdenes de venta de call-options cubiertas cuando el Cliente disponga del número necesario de valores base en su depósito. Con ello el Cliente encomienda al Banco la entrega y transferencia a la otra parte de estos valores base con el ejercicio de la opción. Como seguridad, el Cliente cede al Banco en la orden todos los derechos (especialmente el de propiedad) de los valores de base correspondientes.

Como seguridad, el Cliente cede con la orden al Banco la propiedad de los valores de base correspondientes; en el caso en que los derechos de los valores de base fueran sobre valores transferibles, el Cliente los cede al Banco. Como seguridad, el Cliente autoriza expresamente al Banco, como seguridad, a transferir y ceder, o a pignorar, los valores de base transferidos o cedidos al Banco también a las otras partes y a las cámaras de compensación de las bolsas de opciones correspondientes.

En caso de no ejecutar la opción dentro del plazo fijado o después de haber liquidado la posición, el Cliente recuperará automáticamente los derechos sobre los valores de base.

2.    Ejecución y liquidación de opciones
2.1  Opciones estandarizadas
El Cliente tiene conocimiento de que los mercados de opciones y las cámaras de compensación fijan plazos de vencimiento definidos dentro de los cuales el Banco debe dar todas las instrucciones pertinentes para la ejecución, y que las opciones dejan de tener valor después de la fecha de vencimiento. En caso que el Banco no hubiera recibido instrucciones específicas hasta las 17.00 horas (hora suiza) dos días hábiles antes de la fecha de vencimiento, liquidará (en el caso de opciones de entrega física), o ejecutará (en el caso de opciones con liquidación en efectivo), según su arbitrio, aquellas posiciones "long" cuyo valor de mercado se encuentre "in-the-money".

2.2  Opciones OTC
Las opciones europeas OTC sólo pueden ejecutarse al vencimiento; por lo contrario, las americanas pueden hacerlo en cualquier momento hasta su vencimiento. En el caso de que al vencimiento el Cliente no diera instrucciones hasta la hora fijada en la confirmación, el Banco ejecutará automáticamente a la hora acordada todas las opciones OTC "in-the-money" y cargará la operación al contado en la correspondiente cuenta del Cliente. En caso de no disponer de instrucciones específicas por parte del Cliente, el Banco cerrará la posición a su vencimiento en la cuenta del Cliente al valor al contado y de entrega inmediata.

2.3  Adjudicación de opciones estandarizadas
Los contratos ejecutados se adjudicarán al suscriptor de opciones por sorteo. Las asignaciones son irrevocables. En el caso de que el Cliente no entregara al Banco los títulos necesarios inmediatamente después de que éste los haya solicitado, el Banco está autorizado a cubrirse por cuenta del Cliente.

2.4  Límites de las posiciones
El Cliente está informado de que los mercados han fijado límites de posiciones para las opciones combinadas adquiridas sobre valores base del mismo tenor. Por el presente contrato el Cliente manifiesta estar de acuerdo a respetar estos límites con respecto a su partida total.

D.  DISPOSICIONES PARA LA NEGOCIACIÓN DE FINANCIAL FUTURES

1.    Antes de que el Banco proceda a una orden, el Cliente deberá disponer de fondos suficientes con respecto al margen inicial (initial margin). Para cubrir el margen estimado por el Banco, el Cliente deberá satisfacer las fianzas en efectivo o en alguna de las modalidades autorizadas por el Banco. Las demás fianzas solicitadas durante la vigencia del contrato, deberán pagarse siempre en efectivo. En caso de que un margen demostrara ser insuficiente con motivo de un nuevo cálculo, según criterio del Banco, el Cliente estará obligada a satisfacer las fianzas suplementarias. El importe del pago suplementario suele fijarse, por norma general, la noche de la jornada comercial. En caso de que el pago suplementario no se hubiera satisfecho la mañana del siguiente día hábil, éste estará autorizado, aunque no obligado, a utilizar otros activos del Cliente como fianza y/o a liquidar la posición. Cuando el Cliente no disponga de fondos suficientes para el cumplimiento del contrato a inicios del último día comercial, el Banco está autorizado, aunque no obligado, a liquidar la posición sin solicitar más fianzas. En casos excepcionales (fuertes oscilaciones del cambio, etc.), el Banco podrá también hacer valer este derecho durante toda la vigencia del contrato. También se le otorgará el mismo derecho en el caso de transacciones en bolsas extranjeras cuando, debido a las diferencias horarias, no pueda solicitar nuevas fianzas con tiempo suficiente. Queda reservada la utilización de otros valores patrimoniales del Cliente que pudieran servir de fianza al Banco.

2.    Límites de las posiciones
El Cliente toma nota de que los mercados han fijado límites de las posiciones de las opciones combinadas adquiridas sobre valores base del mismo tenor. Por el presente contrato el Cliente manifiesta estar de acuerdo a respetar estos límites en lo que toca a su posición total.

E.  DERECHO VIGENTE Y FUERO COMPETENTE

Todas las relaciones jurídicas del Cliente con el Banco están sometidas exclusivamente al derecho suizo. El lugar de ejecución para los clientes con domicilio en el extranjero y fuero competente exclusivo para todos los procedimientos es el lugar de la oficina bancaria (Zurich). Sin embargo, el Banco también tiene derecho a demandar judicialmente al Cliente en el juzgado competente de su domicilio o en cualquier otro juzgado. El Cliente confirma haber obtenido antes o con la firma del contrato una copia de la publicación Posibilidades y riesgos en las operaciones con valores y de las "Condiciones Generales de contrato", así como de haberlas leído y entendido.

Lugar y fecha:  _Córdoba, 22.6. 2001_          Firma del Cliente: _____

Los poderes de administración otorgados al Banco o a terceros seguirán en vigor de no haber instrucciones escritas en otro sentido, e implican, en concreto, el derecho de los apoderados para llevar a cabo negocios en el sentido expresado en este acuerdo.

Lugar y fecha: _____          Firma del Cliente: _____

Unterschrift
kontrolliert:

Andreas Maron
SDI, int. 25?
PK 3 – Argentinien
Paraguay, Uruguay



**A**

No. de cta./dpto.:

20373 Despegue

Parte contratante:

Egea Gustavo

Perez de Herrera 1986

5009 Cordoba, Argentina

### Declaración del beneficiario
(Formulario A conforme a los arts. 3 y 4 CDB)

El/la suscrito(a) declara:
(Márquese con una cruz lo que corresponda)

☒  que la parte contratante es beneficiaria de los valores considerados

☐  que de los valores considerados es beneficiario:

Apellido, nombre (o firma)                          Domicilio/sede, país

_____                    _____

_____                    _____

_____                    _____

La parte contratante se obliga a comunicar espontáneamente al banco cualquier cambio.

Cordoba, 21.6. 2001

Lugar y fecha                                       Firma del Cliente

Andreas Maron
ADL int. 253
253 - Argentinien

Unterschrift
kontrolliert:

*Sal. Oppenheim*

## Statement US withholding tax for natural persons

Name of account holder: __Egea Gustavo__

Account no.: __20373 Despegue__
(Joint accounts: please fill in a form for each account holder)

Citizenship: __Argentina__

Address: __Perez de Herrera 1986, 5009 Cordoba, Argentina__

For the purposes of determining the status and qualification of the account holder (regarding US withholding tax) as „Non-US Person" or „US Person", the undersigned account holder hereby declares that, according to U.S. tax principles, it is the beneficial owner of the assets and income to which this form relates.

With regard to your account(s) in Switzerland with us, we request you to tick the appropriate box below:

| | | |
|---|---|---|
| Are you a US citizen (also dual citizenship)? | Yes ☐ | No ☒ |
| Are you a US resident alien (lawful permanent resident, e.g. „green card holder", or substantial physical presence in the United States in the current and the previous two years) ? | Yes ☐ | No ☒ |
| Are you a US taxpayer for any other reason (e.g. dual resident, spouse filing jointly, rescinding US citizenship or long-term residency, others) ? | Yes ☐ | No ☒ |

If you have answered „Yes" to one of the above questions, we will be contacting you again. If you have answered all three questions with „No", please submit a statement as to whether you would like to make use of a double taxation treaty with the US applicable to you.

*With regard to US securities deposited in my above-mentioned account(s), I herewith confirm that I meet all the provisions necessary to claim the benefit of reducing United States Withholding Tax on all the assets to which this declaration relates under the applicable double taxation treaty between the United States and (please fill in the appropriate country).*

*I furthermore expressly state that I am willing to claim this benefit under the double taxation treaty.*

Yes ☐ No ☐

(In order to benefit from the reduced withholding tax rates of the applicable treaty, the box „Yes " must be ticked )

The undersigned account holder undertakes to notify the bank if any change of circumstances in terms of tax should arise in relation to the declarations made in the above.

Signature: _____    Place and date: __Cordoba__ __22. 6. 2001__

Unterschrift
kontrolliert:

Andreas Maron
SDi. int 255
PB.S Argentinien

# Authorization to buy non-traditional funds

Client/Account___DESPEGUE____20373_____

Authorization to buy__34851 part of FAIRFIELD SENTRY__

This authorization is valid for the purchase and holding of shares (or participations) by Bank Sal. Oppenheim jr. & Cie. (Switzerland) Ltd. in the name of the bank, but at the risk and cost to the undersigned bank client.

The term non-traditional funds covers foreign investment companies/funds which are often not publicly advertised in Switzerland and which carry specific risks.

The undersigned confirms that he/she has been expressly made aware of the risks involved in these investments and in particular has been given and has had brought to his/her attention the brochure "Specific Risks involved in market transactions", especially the second part "Investments in non-traditional funds".

Furthermore, the undersigned was enabled to take note of the principal investment strategy guidelines and relative regulations (Memorandum/Subscription Form) of the investment fund/company.

The undersigned has taken note that the regulations for such shares may stipulate that the purchase/sale of shares can only take place with a notice period of a week or several months. Regulations for such funds may allow for prepayments to be requested prior to the communication of a definite price. Regulations for such funds may also stipulate that payments be delayed until the exact value is calculated, without any obligation for paying any interest to the investor. The shares may be held with custodians whose creditworthiness is not high.

Buenos Aires, 08.10.03
_____
Place / date

Andreas-Maron
SDI., int. 253
PB-8 - Argentinien
Paraguay, Uruguay

_____
Signature

Unterschrift
kontrolliert:
..............

# CONTRATO

entre,

Nombre:         Egea Gustavo

Dirección:      Perez de Herrera 1986, 5009 Cordoba, Argentina

de aquí en adelante llamado el "Cliente",

y

BANK SAL. OPPENHEIM JR. & CIE. (Suiza) AG,
de aquí en adelante llamado el "Banco".

Ambas partes convienen:

1. **Apertura de una cuenta y depósito:**

   El Cliente hace entrega al Banco de dinero o valores, u otros valores patrimoniales. El Banco custodiará estos valores y gestionará una cuenta y un depósito (de aquí en adelante ambos llamados la "Cuenta"), los cuales adquirirán la denominación siguiente:

   —————————    20373 Despegue    —————————

   Además de las condiciones acordadas por separado con el Cliente, la Cuenta se regirá de acuerdo con las estipulaciones relacionadas a continuación:

2. **Moneda:**

   La cuenta se gestionará, hasta nuevo acuerdo, en las monedas siguientes:

   1) Francos suizos*
   2) Dólares estadounidense*
   3)
   4)

3. **Correspondencia:**

   3.1   El Cliente encomienda al Banco que todo tipo de notificación, incluyendo la correspondencia, los comprobantes y los extractos de cuenta se envíen de forma
         * continua xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

         * se retenga y entregue, o envíe, sólo por requerimiento especial (correspondencia en depósito bancario)

         * se xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
           xxxxxxxxxxxxxxxxxxxxxxxxxxxx:

   3.2   La correspondencia, y en particular también la correspondencia en depósito bancario, se considerará realizada a la fecha indicada en el documento o en la copia del Banco.

                                                            * (Tachar lo que no corresponda)

3.3 El Cliente se hace responsable de cualquier riesgo y asume la responsabilidad exclusiva de las instrucciones por él dadas, o por uno de sus apoderados, y los perjuicios derivados de ellas. Esto afecta en concreto a:

– En el caso de envío de la correspondencia, el Cliente asume todos los riesgos derivados de la modalidad de envío escogida, como errores de envío, en particular la pérdida, y los perjuicios derivados de los retrasos, malentendidos, mutilaciones, duplicidad, incautación o apertura, siempre y cuando no sean debidos a culpa grave del Banco.

– En el caso de la correspondencia en depósito bancario, el Cliente asume todos los perjuicios derivados del incumplimiento de plazos o de la imposibilidad de tomar medidas para la salvaguarda de sus intereses. A falta de poderes especiales, el Banco queda autorizado, aunque no obligado, a llevar a cabo gestiones administrativas; no obstante, no se hará responsable de ello salvo en caso de culpa grave.

– A pesar de la existencia de instrucciones por parte del Cliente sobre el envío de la correspondencia, con inclusión de los comprobantes y de los extractos de cuenta, de forma regular o en intervalos determinados, el Banco queda autorizado, aunque no obligado, a retener la correspondencia para el país respectivo en caso de guerra, revolución, o introducción de medidas del gobierno, como censura, etc. En estos casos regirán las disposiciones en este apartado referentes a la correspondencia en depósito bancario.

3.4 En el caso de correspondencia en depósito bancario, el Cliente autoriza al Banco a destruir la correspondencia no retirada, pasados 10 años desde la fecha de emisión.

### 4. Contabilidad

4.1 Salvo instrucciones distintas del Cliente, el Banco abonará en la cuenta del cliente los réditos obtenidos de cada uno de los valores depositados, así como el dinero, los valores u otros valores patrimoniales, llegados al Banco a favor del Cliente. Se efectuarán también todos los asientos propios a cargo del Cliente en la cuenta.

4.2 En el caso de ingresos en monedas distintas a las acordadas, el banco queda autorizado, salvo que se estipule lo contrario, a proceder al abono en cuenta según su arbitrio en una de las monedas acordadas o en la moneda del importe ingresado, sin hacerse responsable de ello. Los abonos en cuenta se llevarán a cabo a reserva de la libre convertibilidad de la moneda en cuestión y de la admisibilidad de acuerdo con las disposiciones legales normativas.

4.3 El banco se reserva el derecho a ajustar los tipos de interés y las comisiones a los comportamientos del mercado de acuerdo con el apartado 12.

### 5. Cuentas numeradas o con nombre ficticio

En aquéllos casos en los que, de acuerdo con el apartado 1 del presente contrato, se acuerde la gestión de la cuenta bajo una denominación numerada o con nombre ficticio, el Cliente declara reconocer como suya la correspondencia en la que figure únicamente la denominación acordada (número o nombre ficticio) en lugar de su nombre. El Cliente asumirá todos los riesgos y la responsabilidad exclusiva de todas las consecuencias derivadas de la gestión de la cuenta por parte del Banco bajo la denominación mencionada (número o nombre ficticio). El Banco se compromete a comprobar escrupulosamente las firmas del Cliente y de sus apoderados, no estando obligado a una comprobación de legitimación más amplia. El Banco no se hace responsable en particular de los perjuicios derivados de las falsificaciones no detectadas a pesar del cuidado habitual prestado.

No se permitirá efectuar transacciones comerciales a través de la cuenta numerada o de nombre ficticio. El dinero, los valores u otros valores patrimoniales llegados a poder del Banco a favor del Cliente se abonarán directamente, salvo que exista otra instrucción al respecto, en la cuenta numerada o de nombre ficticio.

### 6. Cuentas conjuntas

6.1 En el caso de las cuentas conjuntas, cada Cliente tendrá, salvo acuerdo expreso distinto, los derechos de acreedor solidario sobre la cuenta de acuerdo con el artículo 150 del Código de Obligaciones Suizo – OR.

Si en el marco del tráfico comercial surgiera algún tipo de deuda activa hacia el Banco, ambos Clientes manifiestan en este contrato responder como deudores solidarios por cada uno de los importes de la deuda, tal como se expresa en el artículo 143 y siguientes del Código de Obligaciones Suizo – OR, independientemente de cuál de los Clientes haya originado la deuda.

6.2 Cada uno de los Clientes tiene derecho a disponer, individual e independientemente, de la cuenta sin limitación alguna, a aumentarla, a disminuirla, a cargarla, a cancelarla o a otorgar poderes a terceros. Esto es válido especialmente también en caso de muerte o incapacidad de uno de los Clientes. El cumplimiento por parte del Banco de sus obligaciones hacia uno de los Clientes, le exime frente a los demás clientes.

6.3   El dinero, los valores u otros valores patrimoniales llegados al poder del Banco a favor de uno de los Clientes se abonarán, salvo instrucción distinta, en la cuenta conjunta. En caso de que uno de los Clientes participe en más cuentas conjuntas, el Banco tendrá derecho a abonar los ingresos en beneficio propio en una cuenta transitoria hasta recibir instrucciones exactas al respecto.

No obstante la estipulación anterior, el dinero, los valores u los valores patrimoniales que lleguen al poder del Banco a favor de uno de los clientes se abonarán, salvo instrucción distinta, en la cuenta personal del Cliente, si éste dispusiera de una.

6.4   Las notificaciones emitidas por el Banco referentes a la cuenta conjunta se considerarán realizadas siempre que se hayan efectuado de acuerdo con las últimas instrucciones dictadas por uno de los Clientes.

6.5   Los apartados 6.1 hasta 6.4 de este contrato también regirán en aquellos casos en los que los Clientes sean cónyuges, e incluyen en particular todos los consentimientos necesarios según el régimen de bienes en el matrimonio en caso dado.

## 7. Disposiciones especiales para depósitos

7.1   Información general

7.1.1   Los valores y otros valores patrimoniales se custodiarán en depósitos abiertos con el mismo cuidado que los propios valores patrimoniales del Banco. El Banco tendrá derecho a dejar custodiar en una oficina de depósitos externa de su elección los valores de depósito por cuenta y riesgo del Cliente.

En el caso de depositarlos en una oficina de depósitos externa, especialmente en el extranjero, los valores de depósito estarán sometidos a las leyes y hábitos mercantiles del lugar en el que se depositen. En el caso en que la legislación extranjera imposibilite o dificulte al Banco la restitución de los valores de depósito custodiados en el extranjero, el Banco sólo estará obligado a otorgar al cliente una acción proporcional de reembolso en el lugar del depósito o de un corresponsal bancario de su elección.

En aquellos casos en los que resulte poco habitual o imposible registrar en el lugar del depósito los derechos de valor o los valores en depósito a nombre del Cliente, el Banco podrá hacer registrar los citados valores a su nombre o a nombre de un tercero, siempre por cuenta y riesgo del Cliente.

En el caso de que el Cliente no exija la custodia separada o no asuma los correspondientes gastos, el Banco tendrá derecho a custodiar los efectos de forma genérica o a autorizar la custodia externa, teniendo el Cliente derecho, en calidad de copropietario, a un número de títulos correspondientes a la relación de títulos contabilizados en su depósito con las existencias totales del depósito colectivo. Quedan reservados los títulos a nombre del Cliente y valores que por motivos diversos tengan que custodiarse separadamente.

En el caso de valores de depósito cuya literalización un documento esté o pueda ser aplazada en, el Banco tendrá derecho expreso a:

a) hacer efectuar la anulación de los documentos existentes,

b) llevar a cabo las acciones administrativas pertinentes durante la duración del aplazamiento impresión del título, dar las instrucciones necesarias al emisor y a solicitarle la información necesaria,

c) reclamar al emisor en todo momento la impresión y la entrega de los documentos.

7.1.2   El Banco se hará cargo de las gestiones administrativas habituales, como el cobro de talones y títulos reembolsables, la obtención de nuevos talonarios, el canje de títulos etc., y requerirá del cliente, por lo general, las disposiciones que le correspondan según el apartado 7.1.3; para ello se servirá de las publicaciones disponibles y de las listas, sin por ello tener que asumir alguna responsabilidad. En caso de sorteo de valores custodiados de forma genérica, el Banco distribuirá los títulos sorteados entre los Clientes, sirviéndose en el segundo sorteo de un método que garantice a todos los clientes la misma consideración que en el primer sorteo.

7.1.3   En caso de falta de otro acuerdo, el Cliente estará obligado a todos los demás trámites para salvaguardar los derechos en relación a los valores depositados, como en particular dar instrucciones para el ejercicio o la venta de derechos de suscripción, el ejercicio de derechos convertibles, el abono de acciones no abonadas íntegramente y conversiones. En caso de no recibir instrucciones por parte del Cliente, el Banco estará legitimado para obrar según sus criterios salvaguardando de la mejor manera posible los intereses del Cliente, sin por ello asumir ningún tipo de responsabilidad al respecto.

7.1.4   Los sobres cerrados, paquetes, etc., solo deberán contener objetos de valor o documentos, y en ningún caso objetos frágiles, combustibles, de otro modo peligrosos o no apropiados para ser depositados en bancos. El Cliente asume todos los riesgos y la responsabilidad exclusiva y es responsable de los daños originados en el depósito. El Banco está autorizado a rechazar total o parcialmente la aceptación de valores en depósito sin indicar la causa.

El Cliente deberá a informar al Banco sobre los valores en depósito, si éste así lo requiere.

Por norma general, el depósito debe incluir una declaración del valor firmada por el Cliente. El Banco sólo se hará responsable a la suma por el valor indicado, debiendo el Cliente demostrar el daño ocasionado. Una vez retirado del depósito, el Banco quedará libre de toda responsabilidad.

7.2  Metales preciosos y depósitos de monedas

Para el depósito de metales preciosos y monedas regirá además:

7.2.1  A menos que el Cliente no haya dado otras instrucciones expresas, el Banco estará autorizado a custodiar los metales preciosos entregados por el cliente para su custodia, o comprados por el banco para el cliente, en las formas y calidades usuales en el comercio (p.e. lingotes, láminas o pepitas), y las monedas de oro usuales en el comercio (piezas de serie) en depósitos colectivos genéricos en el banco o en una oficina de depósito externa, sin separarlos de las existencias de otros clientes y de las propias existencias del mismo género del Banco. El Cliente será copropietario de las existencias del depósito colectivo en proporción a su parte. Los gastos, tasas e impuestos casuales correrán a cargo del Cliente.

7.2.2  El Cliente podrá disponer de las existencias en el lugar mismo del depósito. El retiro de las existencias se deberá notificar al Banco con dos días hábiles de antelación a fin de que éste pueda prepararlo. Los gastos, las tasas y los impuestos casuales relacionados con la entrega correrán a cargo del cliente.
Las diferencias de peso o quilates con respecto a las existencias contabilizadas se compensarán en efectivo de acuerdo con la cotización del mercado de metales preciosos de Zurich (a falta de una cotización, al precio libre internacional del metal precioso) en el momento de efectuar la liquidación.

7.2.3  En caso de que el Cliente solicite la entrega de las existencias en un lugar distinto al del depósito habitual, el Banco podrá, sin estar obligado, aceptar la petición siempre y cuando lo permitan las disposiciones legales a aplicar y el Cliente asuma todos los gastos derivados, las tasas y los impuestos. El Cliente será responsable de los riesgos que implican este tipo de entrega.

8.  Disposiciones especiales para las cuentas en metales preciosos

Si el Banco gestiona una cuenta en metales preciosos, rige lo siguiente:

8.1  El Cliente tiene contractual a la entrega de la cantidad correspondiente de metal precioso por el valor del saldo acreedor de su cuenta en metales preciosos (oro, plata, platino, paladio, etc.).

El Banco puede determinar unidades mínimas de peso o unidades para abonos, cargos a cuenta o entregas.

8.2  El Cliente tiene derecho a solicitar la entrega de la cantidad de metal precioso correspondiente a su saldo acreedor de acuerdo con las disposiciones legales vigentes en la oficina del Banco que gestione la cuenta (lugar del cumplimiento), siempre y cuando no se haya acordado algo distinto. Con la entrega entra en posesión del metal precioso correspondiente.

El Banco entregará, si así se solicita, el metal precioso en otro lugar, presumiendo que pueda llevarse a la práctica y que lo permitan las leyes vigentes. La entrega en otro lugar sólo se llevará a cabo por cuenta y a riesgo del Cliente.

En el caso de restricciones sobre las transferencias, acontecimientos bélicos, acontecimientos elementales u otras situaciones el Banco se reserva el derecho de entregar el metal precioso en el lugar y la forma que le resulte posible *y le parezca más conveniente, por cuenta y riesgo del Cliente.*

8.3  Cuando el saldo acreedor no esté expresado en un número de unidades fungibles (p. ej. lingotes de 1 kilo), el Banco tendrá derecho a entregar lingotes de tamaños indistintos de quilates mínimos habituales en el comercio y de cargar en cuenta los recargos de fabricación vigentes en el momento de la entrega.

Las cantidades superiores deberán notificarse al Banco con cinco días hábiles de antelación a fin de hacer posible la preparación a tiempo.

Los quilates de los lingotes entregados se cargarán en la cuenta de metales preciosos. En caso de resultar un importe residual a favor o a cargo del Cliente, la compensación generalmente se efectuará en efectivo en el momento de la confección de la liquidación de acuerdo con la cotización del mercado de metales preciosos de Zurich (a falta de una cotización, al precio libre internacional del metal precioso).

8.4  Para las cuentas en monedas regirá además:
El propietario de una cuenta en monedas tendrá derecho contractual a la entrega de la cantidad correspondiente de monedas del género reflejado en la cuenta. Estas se entregarán en la calidad conforme al mercado. El Cliente no tendrá derecho a la entrega de monedas de un año determinado o de una acuñación determinada.

8.5  Los saldos acreedores de las cuentas en metales no devengarán intereses.

8.6  En el caso de entrega de metales preciosos dentro del territorio aduanero interior suizo, el Cliente deberá satisfacer el impuesto sobre el valor añadido. Los demás impuestos vigentes y futuros, contribuciones, etc., también correrán por cuenta del Cliente.

9  Inversiones fiduciarias renovables

9.1  El Cliente encarga al Banco, en su propio nombre, pero por cuenta y riesgo del Cliente, efectuar inversiones de capital en forma de depósitos a plazo en bancos extranjeros o sociedades. Para ello el Banco actuará, salvo indicación escrita del Cliente, según su arbitrio y como mandatario de acuerdo con el artículo 394 y siguientes del Código de Obligaciones Suizo – OR, en especial con respecto a la moneda, el importe, el deudor y las condiciones de cada una de las inversiones.

9.2. Las instrucciones por escrito referentes a las reinversiones de depósitos a plazo fijo próximos a vencer, deberán recibirse en el Banco como mínimo una semana antes del vencimiento. De no ser así, el banco decidirá según su arbitrio sobre la ejecución y condiciones de una eventual reinversión.

9.3 Las inversiones de depósitos a plazo fijo se llevarán a cabo según el saldo activo existente del Cliente. Se acuerda que en el caso de inversiones efectuadas por el Banco según su arbitrio, no se hará uso de los créditos concedidos al Cliente.

9.4 El Banco sólo está obligado a reembolsar aquellos importes abonados en cuenta como reintegro del capital y como intereses para libre disposición en su domicilio social.

9.5 En caso de que un banco extranjero o una sociedad no cumpliera con sus obligaciones, o sólo lo hiciera parcialmente, o no pudiera satisfacerlas como consecuencia de las reglamentaciones de transferencias o de cambios en el propio país o en el de la moneda de la inversión, el Banco sólo está obligado a ceder al cliente la deuda activa contraída por él. El Banco no tiene más obligación.

9.6 El Cliente se compromete a pagar al Banco una comisión calculada en base a los importes invertidos en bancos extranjeros o sociedades, de acuerdo con el cálculo de tasas correspondiente del banco.

## 10. Pignoración general y compensación

Las disposiciones siguientes sólo se aplicarán en aquellos casos en los que exista una deuda del Cliente con respecto al Banco, particularmente en lo referente a una cuenta. El Cliente constituye al Banco con el presente contrato una prenda sobre todos los valores patrimoniales en cada caso custodiados por cuenta del Cliente en el propio banco o en cualquier otro lugar, y un derecho de compensación relativo a todas las pretensiones por todas las deudas activas en cada caso sin atención al vencimiento o tipo de moneda y sin atención a otras garantías eventuales. En caso de que los valores no estén a nombre del propietario, el presente contrato estipula la cesión de éstos al Banco. El Banco tendrá derecho a escoger entre la explotación por apremio judicial o la subasta privada de las prendas cuando el cliente se demore en el pago o las garantías solicitadas expresamente no ofrezcan cobertura suficiente por depreciación del valor.

## 11. *Pago de compensaciones al Banco*

El pago de compensaciones de cualquier índole al Banco (tasas, comisiones, gastos, etc.) se regirán de acuerdo con las tarifas respectivas y los intereses de acuerdo con los tipos de interés fijados por el Banco.

## 12. Modificaciones del contrato

El Banco se reserva el derecho de modificar en cualquier momento las disposiciones de este contrato, en especial aquellas que hagan referencia a los tipos de interés y a las comisiones, así como las tarifas. Dará a conocer estas modificaciones al Cliente de acuerdo según lo regulado en el apartado 3. Las modificaciones se darán por autorizadas si el Cliente no ha formalizado una reclamación contradictoria dentro del plazo de un mes desde su notificación

## 13. Condiciones generales del contrato

Salvo disposiciones contrarias en lo que precede, los derechos y obligaciones del Cliente y del Banco derivados de esta relación contractual se regirán de acuerdo con las Condiciones Comerciales Generales de contrato del Banco, incluidas como anexo y que forman parte del contrato.

## 14. Derecho vigente y fuero competente

Todas las relaciones jurídicas entre el Cliente y el Banco quedan sometidas al derecho suizo. El lugar del cumplimiento, lugar de la ejecución para clientes con domicilio extranjero y fuero competente todos los procedimientos es Zurich. Sin embargo, el Banco queda libre para defender sus derechos en cualquier juzgado competente o ante cualquier organismo oficial Suizo o extranjero. En estos casos también se aplicará el derecho suizo.

Lugar y fecha:   *Córdoba , 22.6. 2001*

BANK SAL. OPPENHEIM JR. & CIE. (Schweiz) AG                      El Cliente

Urs Auer
Mitglied der Geschäftsleitung
PB 3H Lateinamerika PB 3H Argentinien
Spanien und Portugal Paraguay, Uruguay
nt. 253                     Andreas Maron
                            int. 253

# Condiciones Generales del Contrato

### Art. 1  Poder dispositivo
El poder de firma notificado por escrito al Banco será válido en exclusiva y hasta revocación escrita dirigida al Banco, independientemente de otras inscripciones en el registro mercantil y publicaciones

### Art. 2  Reclamaciones del Cliente
Las reclamaciones del Cliente referidas a la ejecución o no ejecución de órdenes de cualquier índole o las reclamaciones referidas a extractos de cuentas o de depósitos, así como otras notificaciones, deberán presentarse inmediatamente después de la recepción del aviso respectivo o, a más tardar, dentro del plazo señalado por el banco; caso de no realizarse el aviso la reclamación deberá presentarse en el mismo plazo que requeriría el aviso para llegar al poder del Cliente por correo ordinario. En el caso de reclamaciones con retraso, el Cliente asumirá los perjuicios que se deriven.

### Art. 3  Notificaciones por parte del banco
Las notificaciones por parte del banco, en particular las notificaciones en depósito bancario, se considerarán realizadas en la fecha indicada en ellas, o en la copia, del Banco. Para su entrega regirán las últimas instrucciones dadas por el Cliente al Banco.

### Art. 4  Comprobación de firmas o legitimación
El Cliente asume los perjuicios derivados del no reconocimiento de falta de legitimación o falsificación, siempre y cuando no sea culpa grave del Banco.

### Art. 5  Falta de capacidad de actuar
El Cliente asume cualquier perjuicio derivado de la falta de capacidad de actuar propia o de terceros, salvo en aquellos casos en los que se publique haciendo referencia a su persona en un boletín oficial suizo o se informe por escrito al Banco en relación con un tercero.

### Art. 6  Errores de comunicación
El cliente asume los perjuicios derivados de la utilización del correo, telégrafo, teléfono, télex, telefax, y otros medios de comunicación o de empresas de transporte, sobre todo referidos a la pérdida, retraso, malentendidos, mutilaciones o envíos dobles, embargo o apertura, siempre y cuando no sea culpa grave del Banco.

### Art. 7  Ejecución deficiente de órdenes
En caso de perjuicio derivado de la no ejecución, o de la ejecución deficiente, de órdenes (con exclusión de las órdenes en bolsa), el Banco sólo se responsabilizará por la pérdida de los intereses, a no ser que previamente se le hubiera informado del peligro inminente de un mayor.

### Art. 8  Derecho de prenda y de compensación
Por el presente contrato el Cliente otorga al Banco un derecho pignoraticio de todos los valores patrimoniales custodiados por cuenta del Cliente en el propio banco o una entidad externa, y un derecho de compensación para la reclamación de todas las deudas activas, sin contemplación del vencimiento o del tipo de moneda y sin contemplación de otras garantías eventuales. Si los valores no están a nombre del propietario, éstos se cederán al Banco por el presente contrato. El Banco tendrá derecho a escoger entre la explotación del apremio judicial o libre comercio de las garantías en el mismo momento en el que el Cliente se demore en el pago o que las garantías especiales no ofrezcan cobertura suficiente debido a la pérdida de valor.

### Art. 9  Servicio de cuentas corrientes
a) El abono y el cargo de los intereses habituales o acordados, de las comisiones, gastos e impuestos se efectuarán, por elección del Banco, trimestralmente, semestralmente o anualmente. El Banco

se reserva el derecho a cambiar en cualquier momento los tipos de interés y las comisiones, especialmente en caso de cambios en el comportamiento del mercado del dinero, y de informar al cliente por escrito o por cualquier otro procedimiento adecuado.
En el caso de no reclamar los extractos de cuenta del Banco en el plazo máximo de un mes, éstos se considerarán aprobados. El reconocimiento expreso o tácito del extracto de cuenta presume la autorización de todas las posiciones en él incluidas, así como las eventuales reservas del Banco.

b) Las contra inversiones correspondientes al saldo activo en moneda extranjera del Cliente se realizarán proporcionalmente en la misma moneda en nombre del Banco pero por cuenta y riesgo del cliente dentro o fuera del país de la moneda respectiva. El Cliente asumirá la parte proporcional, en especial todas las consecuencias económicas y legales, que afecten al total de los haberes del Banco en el país de la moneda en cuestión o de la inversión derivadas de medidas oficiales.
En el caso de cuentas en moneda extranjera, el Banco sólo cumplirá con sus obligaciones mediante la obtención de un abono en el país de la moneda en una sucursal eventual, en un corresponsal bancario o en el banco indicado por el Cliente, siempre y cuando el Cliente no pueda disponer del activo en moneda extranjera mediante la venta, el giro de cheques, el cambio de cheques y transferencias

### Art. 10  Letras, cheques y otros efectos
El Banco tendrá derecho de retener las letras, cheques u otros efectos descontados o abonados, cuando éstos no se hayan pagado. No obstante, conservará el derecho cambiario, de cheques u otros sobre el pago de la totalidad del importe de la letra y del cheque con pretensiones de orden secundario contra cada deudor por el efecto hasta pago del saldo deudor existente.

### Art. 11  Rescisión de las relaciones comerciales
El Banco se reserva el derecho de rescindir en cualquier momento las relaciones comerciales existentes, en especial los créditos prometidos o concedidos, con efecto inmediato, venciendo de inmediato pretensiones existentes para el reembolso.

### Art. 12  Equiparación del sábado a los días festivos
En las actividades comerciales del Banco los sábados se equipararán a los días festivos reconocidos oficialmente.

### Art. 13  Compensaciones al Banco
Las compensaciones debidas al Banco, sea cual fuere su índole (tasas, comisiones, gastos, etc.) se regirán de acuerdo con las tarifas respectivas, y los intereses de acuerdo con los tipos de interés fijados en cada caso por el Banco.

### Art. 14  Reserva de disposiciones especiales
Por lo demás, regirán las usanzas locales para los negocios bursátiles, las directrices unitarias y usos de la Cámara de comercio internacional sobre créditos documentarios, y las disposiciones generales de la Federación de bancos suizos para las operaciones de cobro y de descuento.

### Art. 15  Modificaciones de las condiciones generales del contrato
El Banco se reserva el derecho de modificar en cualquier momento las condiciones generales del contrato. Estas modificaciones se notificarán al Cliente por escrito o por cualquier otro procedimiento adecuado y se considerarán aceptadas sin protesta en el plazo de un mes.

### Art. 16  Derecho vigente y fuero competente
Todas las relaciones jurídicas entre el Cliente y el Banco quedan sometidas al derecho suizo. El lugar del cumplimiento, el lugar de la ejecución para clientes con residencia extranjera y fuero competente de todos los procesos es Zurich. En consecuencia, el Banco queda libre para defender sus derechos en el Juzgado competente o en cualquier organismo oficial en Suiza o en el extranjero. En estos casos también se aplicará el derecho suizo.