**Schulte Roth & Zabel LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
Marcy Ressler Harris
Email: marcy.harris@srz.com
Frank J. LaSalle
Email: frank.lasalle@srz.com

*Attorneys for Noel Levine*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Noel Levine ("Claimant"), by and through his attorneys, Schulte Roth & Zabel LLP, hereby objects to the Notice of Trustee's Determination of Claim dated December 16, 2009 for Account No. 1-L0124 ("Determination Letter"), attached hereto as Exhibit A.

## BACKGROUND

1. On December 15, 2008, the above-captioned liquidation proceeding was commenced against Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to the Securities Investor Protection Act ("SIPA"). (*See* Order, *SEC v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008).) Irving Picard was appointed Trustee ("the BLMIS Trustee") charged with overseeing the liquidation of BLMIS and processing customer claims pursuant to SIPA. (*Id.*; *see also* 15 U.S.C. § 78fff-1.)

2. On December 23, 2008, the Court entered an Order directing the BLMIS Trustee to give notice of the liquidation proceeding and claims procedure to BLMIS customers and setting forth claim filing deadlines. (*See* Order, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008) ("Dec. 23, 2008 Order").)

3. The December 23, 2008 Order further provided that, to the extent the BLMIS Trustee disagrees with the amount set forth on a customer claim form, the BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor." (*See* Dec. 23, 2008 Order at 6.)

4. Claimant is a "customer" of BLMIS, as defined by SIPA.

5. Claimant's BLMIS Account No. 1-L0124 was held for his Individual Retirement Account ("IRA").

6. Claimant's final BLMIS statement for Account No. 1-L0124, dated November 30, 2008 ("Final BLMIS Statement"), reflects that the account held securities valued at $20,988,484.07.

7. On or about February 19, 2009, Claimant submitted a customer claim form to SIPC for Account No. 1-L0124, setting forth his claim in the amount of $20,988,484.07.[1] (*See* Customer Claim filed by Noel Levine for Account No. 1-L0124 (Exhibit B) (collectively with attachments thereto, the "Customer Claim").) Claimant submitted the Final BLMIS Statement and other requested documentation with the Customer Claim. (*Id*.)

8. All of the securities reflected in the Final BLMIS Statement are real, publicly verifiable securities, such as United States Treasury Bills, the S&P 100 Index and the common stock of well-known companies such as Apple Inc., General Electric Company and Coca-Cola Company (the "Securities Positions").[2] (*See id*.)

9. The BLMIS Trustee sent Claimant the Determination Letter, dated December 16, 2009, denying Claimant's claim in its entirety. (*See* Determination Letter (Exhibit A).)

---

[1] Claimant's SIPA claim reflects the value of the securities as listed on the Final BLMIS Statement. Claimant does not dispute that the proper date on which to value those securities may be the filing date, *i.e.*, December 11, 2008, for which date market values of the securities reflected on the Final BLMIS Statement are readily available.

[2] The sole exception was a purported investment in Fidelity Spartan U.S. Treasury Money Market Fund ("Fidelity Spartan"), which existed prior to 2005 and either closed or was renamed thereafter. *See* Trustee Mem. at 41; Beth Healy, *Madoff Might Not Have Made Any Trades*, Boston Globe, Jan. 15, 2009, *available at* http://www.boston.com/business/articles/2009/01/15/madoff_might_not_have_made_any_trades/. The purported investment in Fidelity Spartan accounted for less than 0.03% of Claimant's total account value. Thus, while Claimant believes the BLMIS Trustee can value the Fidelity Spartan investment, its inclusion among the remaining indisputably "real" securities reflected on the Final BLMIS Statement should not impact how Claimant's net equity claim is valued. At worst, the Fidelity Spartan investment can be ignored in valuing Claimant's account.

10. The Determination Letter provides that: "[T]he amount of money you withdrew from your account at BLMIS (total of $9,274,614.00) . . . is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $1,292,534.44)." (Determination Letter (Exhibit A).)

11. The BLMIS Trustee has taken the position that "net equity" should be determined by netting all deposits and withdrawals by the customer over the life of the customer's BLMIS account (*i.e.*, the "cash in/cash out method"), without regard to any gains reflected in the Final BLMIS Statement or prior BLMIS statements. (*See* Memorandum of Law in Support of Trustee's Motion for an Order Upholding Trustee's Determination Denying "Customer" Claims for Amounts Listed on Last Customer Statement, Affirming Trustee's Determination of Net Equity, and Expunging Those Objections With Respect to the Determinations Relating to Net Equity, *SIPC v. Bernard L. Madoff Securities, LLC*, No. 08-01789 (Bankr. S.D.N.Y. Oct. 16, 2009) ("Trustee Mem.").)

12. For the reasons set forth below, Claimant objects to the Determination Letter.

## GROUNDS FOR OBJECTION

**I.    The BLMIS Trustee's View Of "Net Equity" Is Contrary To SIPA, Second Circuit Precedent, And SIPC's Own Practices.[3]**

13. Under SIPA, the BLMIS Trustee is obligated to "satisfy net equity claims of customers." 15 U.S.C. § 78fff(a)(1)(B).

14. The BLMIS Trustee's cash in/cash out method of calculating "net equity" is erroneous.

---

[3] Claimant incorporates by reference the arguments set forth in the Memorandum of Law Submitted by the SRZ Claimants in Opposition to the Trustee's Interpretation of "Net Equity," filed on November 13, 2009 (the "SRZ Claimants 'Net Equity' Memorandum"), as well as the Memorandum of Law Submitted by the SRZ Claimants in Response to the SEC's "Constant Dollar" Approach to "Net Equity," filed on December 21, 2009.

15. SIPA defines "net equity" as the value of the securities positions in a customer's account as of the SIPA filing date, in this case, December 11, 2008, minus any amount the customer owes the debtor. Specifically:

> The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by–
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the filing date*, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor *on the filing date* . . . .

15 U.S.C. § 78*lll*(11) (emphasis added); *see also In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 72 (2d Cir. 2004) ("*New Times I*") ("Each customer's 'net equity' is 'the dollar amount of the account or accounts of a customer, to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer' corrected for 'any indebtedness of such customer to the debtor on the filing date.'").

16. The fact that securities were never purchased by BLMIS does not affect the calculation of "net equity" as defined by SIPA. The Second Circuit specifically addressed the situation where no securities were purchased by a broker in *New Times I*, holding that net equity claims for "fictitious" securities (which never existed and the market value for which could not be independently obtained or verified) were properly valued based on the amount of money that the claimants initially provided to the debtor. *Id*. at 88. In contrast, where the securities at issue were "real" and had publicly verifiable values, there was no dispute that "net equity" was calculated as the value of the "real" securities reflected in a customer's account statements on the filing date. *Id*. at 74; *see also Stafford v. Giddens (In re New Times Secs.*

5

*Servs., Inc.)*, 463 F.3d 125, 129 (2d Cir. 2006) ("*New Times II*") ("[T]he usual remedies when customers hold specific securities" is "to reimburse customers with the actual securities or their market value on the filing date."); Brief for Appellant James W. Giddens as Trustee for the Liquidation of the Businesses of the Substantively Consolidated Estates of New Times Securities Services, Inc. and New Age Financial Services, Inc., and Securities Investor Protection Corporation at 3, *New Times I* (No. 02-6166), 2003 WL 24132249, at *3 ("[I]f the claims are for securities, the only proper measure permitted by the statute is the liquidation value of the security.").

17. Likewise, SIPA's legislative history reflects that Congress was well aware of the possibility of fictitious trading, and explicitly elected to protect the legitimate expectations of customers, even where no securities actually were purchased. As the Senate Report stated:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 765 (emphasis added).

Likewise, the House Report explained:

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, that is not always possible. Accordingly, [when this is not possible, customers] will receive cash based on the market value as of the filing date.

H.R. Rep. No. 95-746, at 21 (1977) (emphasis added).

6

18. Indeed, SIPC itself has acknowledged that a customer's legitimate expectations control the determination of "net equity." In a brief submitted to the Second Circuit in 2005, SIPC wrote:

> [R]easonable and legitimate claimant expectations of the filing date *are controlling even where inconsistent with transactional reality*. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase.

Brief of Appellant SIPC at 23-24, *New Times II* (No. 05-5527-bk), 2005 WL 5338148, at *12 (emphasis added).

19. Claimant's legitimate expectations arise from the written confirmations and account statements he received from BLMIS, which reflect that his IRA owned securities valued, as of November 30, 2008, at $20,988,484.07. (*See* Customer Claim (Exhibit B).) Claimant certainly had no expectation that BLMIS only owed him the net of what he deposited and withdrew over the life of his IRA.

II. **Even If The BLMIS Trustee's Interpretation Of "Net Equity" Is Correct, Claimant's Customer Claim Should Not Be Denied Until Claimant Is Afforded An Opportunity To Review The Account Records Upon Which The BLMIS Trustee Bases His Denial Of The Claim.**

20. In the event the Court rules that the BLMIS Trustee's cash in/cash out method of determining "net equity" is correct, Claimant should be provided an opportunity to review and copy account records for Account No. 1-L0124 that currently are in the possession, custody or control of the BLMIS Trustee.

21. Because the BLMIS Trustee's cash in/cash out interpretation of "net equity" requires an analysis of a customer's entire account history, it is not possible to determine

7

the appropriate net equity figure without access to account records spanning the life of the account at issue. In this case, Claimant only has account records covering the past three years, even though the account at issue was opened nearly twenty years ago.

22. The BLMIS Trustee, on the other hand, appears to have more comprehensive account records for Account No. 1-L0124, and purports to have relied upon those records in denying Claimant's Customer Claim. Claimant should be permitted to review those records in order to determine whether the BLMIS Trustee has accurately calculated Claimant's "net equity" under the cash in/cash out method.

23. In fact, Claimant does not believe the BLMIS Trustee has accurately calculated Claimant's "net equity" under the cash in/cash out method. Among other things, the BLMIS Trustee has omitted a deposit of approximately $2.2 million in 1991 Claimant believes should be reflected in his BLMIS account statements.

24. Therefore, in order to assure a fair determination of Claimant's Customer Claim, in the event that the Court rules that the BLMIS Trustee's cash in/cash out method of determining net equity is correct, Claimant respectfully requests an opportunity to review and copy his account records that currently are in the possession of the BLMIS Trustee. Claimant hereby reserves the right to supplement his Objection to the BLMIS Trustee's Determination of Claim upon receipt of those records.

**III.    Claimant Is Entitled to Interest.**

25. SIPA's definition of "net equity" is clear, *see* 15 U.S.C. § 78*lll*(11), and SIPA customers are entitled to the prompt satisfaction of their net equity claims. *See* 15 U.S.C. §§ 78fff(a)(1), 78fff-2(b), 78fff-3(a). As a result of SIPC's and the BLMIS Trustee's incorrect interpretation of "net equity," Claimant has been denied the use of funds belonging to him. As a matter of public policy, the only way to ensure that SIPC and the BLMIS Trustee promptly fulfill

8

their duties under SIPA is to require SIPC to compensate claimants for failing to promptly satisfy net equity claims. For that reason, Claimant seeks to recover interest on his claim, accruing from December 16, 2009, the date of the BLMIS Trustee's erroneous Determination Letter.

## CONCLUSION

26. For the reasons stated above,

a) the Customer Claim should be allowed in its entirety;

b) the Court should direct SIPC to issue immediate payment to Claimant in the amount of $20,988,484.07, which is the November 30, 2008 value, or in the amount of the filing date value, plus interest;

c) alternatively, in the event that the Court rules that the BLMIS Trustee's cash in/cash out method of determining net equity is correct, the Court should enter an order requiring the BLMIS Trustee to provide to Claimant his BLMIS account records that are in the possession, custody or control of the BLMIS Trustee, and permitting Claimant to supplement his Objection to the Determination of Claim upon receipt of such records; and

d) the Court should order such other and further equitable relief as the Court deems appropriate.

Dated: New York, New York
January 13, 2010

SCHULTE ROTH & ZABEL LLP

By: /s/ Marcy Ressler Harris
Marcy Ressler Harris
Frank J. LaSalle
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Noel Levine*

9