Ernest Edward Badway
Fred Stevens
FOX ROTHSCHILD LLP
100 Park Avenue, Suite 1500
New York, New York 10017
(212) 878-7900
(212) 692-0940 (fax)

*Attorneys for Iris Schaum*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | No. 08-1789 (BRL)<br><br>SIPA Liquidation |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Iris Schaum ("Schaum"), by and through her attorneys, Fox Rothschild LLP, hereby objects to the Notice of Trustee's Determination of Claim, dated December 17, 2009 ("Determination of Claim"), annexed hereto as Exhibit 1

1.  On December 11, 2008, the above-captioned liquidation proceeding was commenced against Bernard L. Madoff Investment Securities, LLC ("BMIS"), pursuant to the Securities Investor Protection Act of 1970 ("SIPA"). *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York).

2. Irving Picard was appointed Trustee in Bankruptcy of BMIS ("BMIS Trustee"), charged with overseeing the liquidation of BMIS, and processing customer claims for money pursuant to the SIPA. *Id.*; *see also* 15 U.S.C. 78fff-1(a).

3. Schaum was a "customer," as defined by SIPA, of BMIS. Accordingly, Shaum has an interest in the instant BMIS liquidation proceeding.

4. On December 23, 2008, this Court issued an Order ("December 23, 2008 Order") directing the BMIS Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim filing deadlines, amongst other information. *See* December 23, 2008 Order.

5. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's December 23, 2008 Order.

6. The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor* . . . ." *See* December 23, 2008 Order at 6 (emphasis added)

7. On or about January 23, 2009, Schaum submitted a customer claim form ("Schaum Customer Claim") to the Securities Investor Protection Corporation ("SIPC"). The claim was designated as claim number 2419 by the BMIS Trustee. A true and accurate copy of the Schaum Customer Claim, with the exhibits annexed thereto as originally filed, is annexed hereto as Exhibit 2.

8. On or about December 17, 2009, the BMIS Trustee sent Schaum the Determination of Claim disallowing her claim in its entirety on the basis that "because you have

RL1 799226v1 01/14/10

withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding." *See* Determination of Claim at p. 2 (Exhibit 1).

## **OBJECTION**

9. Initially, Schaum **never** invested in the Madoff Ponzi scheme. Her sole contact was with BMIS where she maintained a securities account. Her last securities account statement details and supports this position since it demonstrates Schaum was invested in a number of blue chip stocks. As such, there is simply no basis for the actions taken by the BMIS Trustee.

10. This complete and utter failure to recognize the above fact has lead the BMIS Trustee to arbitrarily "adjust" downward Schaum's "net equity" in her account based upon an improper application of the concept of "net equity," as defined pursuant to the SIPA and its implementing regulations.

11. Specifically, the BMIS Trustee has chosen to ignore and replace the SIPA's definition of "net equity" with an improper "cash-in/cash-out" approach that is inconsistent with established law. *See* Determination of Claim at p. 2 ("Under the money in/ money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.") (Exhibit 1).

12. Although this may be appropriate for those who invested in the Madoff Ponzi scheme (Schaum takes no position on the adequacy of that argument), it is improper with respect to Schaum, given that she never invested in Madoff's fictitious fund.

13. Pursuant to the SIPA, investors whose account statements show positions in real securities at real market values are entitled to a "net equity" credit for purposes of determining

their ability to recoup fraudulently converted investment funds based upon the positions reflected in their last account statement. *See* 15 U.S.C.S. § 78lll(11) ("The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by. . . calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . . [.]").

14.    Accordingly, pursuant to the SIPA and its implementing regulations, aside from a correction for the indebtedness of the customer to the debtor on the filing date, the "net equity" of a claimant customer's securities account has nothing to do with "cash-in/cash-out[,]" as the BMIS Trustee contends. *See* 15 U.S.C.S. § 78lll(11).

15.    The case, *In re New Times Securities Services*, 371 F.3d 68 (2d Cir. 2004), is controlling precedent in this case. In *New Times*, an analogous case involving a Ponzi scheme, at least with respect to one group of investors that had been deceived into thinking that their account statements reflected actual, marked to market securities, the Second Circuit Court of Appeals adopted the following analysis of the United States Securities and Exchange Commission ("SEC"):

> When a customer has been sent confirmations and account statements reflecting his securities purchases and showing that he holds the securities in his account, his claim, in the Commission's view, involves the debtor's function as securities custodian and is one for securities entitled to SIPC protection up to $ 500,000. Conversely, if the customer is using his brokerage account as a cash depository, as reflected in his account statements, he has a claim for cash entitled to protection up to $ 100,000 -- no more protection than that provided to bank depositors.

*New Times*, 371 F.3d at 87 (*Citing* SEC Amicus Curiae Brief at 12-13).

16.    Like the investors in *New Times*, Schaum's BMIS account statements showed that she held actual securities, and that the account was not merely a cash depository.

4

17.     Consequently, Schaum's "net equity" for purposes of the BMIS Trustee's evaluation of the Schaum Customer Claim should have been $841,187.18 – the value of Schaum's BMIS account, as reflected on her final BMIS account statement, dated November 30, 2008.

## CONCLUSION

18.     For the reasons stated herein, Shaum's claim should be allowed, and the BMIS Trustee's Determination of Claim should be reversed.

19.     Further, Schaum's "net equity" in her BMIS account should be fixed at $841,187.18.

20.     Schaum also requests such other relief as the Court may deem just and equitable.

## RESERVATION OF RIGHTS

21.     Schaum reserves the right to revise, supplement, or amend this objection, and any failure to object on a particular group or grounds shall not be construed as a waiver of Schaum's right to object on any additional grounds.

22.     Schaum reserves all rights set forth in the Federal Rules of Bankruptcy Procedure ("FRBP"), including, but not limited to the right to seek discovery. *See* FRBP 9014.

23.     Schaum reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24. Schaum incorporates by reference all reservations of rights set forth in the Schaum Customer Claim.

Dated: New York, New York
January 14, 2010

Respectfully submitted,

By: _____
Ernest Edward Badway
Fred Stevens
100 Park Avenue, Suite 1500
New York, New York 10017
(212) 878-7900
(212) 692-0940 (fax)