PRYOR CASHMAN LLP
Richard Levy, Jr.
7 Times Square
New York, New York 10036
Telephone:    (212) 421-4100
Facsimile:    (212) 326-0806
rlevy@pryorcashman.com

*Attorneys for Alan Wallenstein*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

SECURITIES INVESTOR PROTECTION         :
CORPORATION,                           :
                                       :
                  Plaintiff,           :          Adv. Pro. No. 08-01789 (BRL)
                                       :
            v.                         :          SIPA Liquidation
                                       :
BERNARD L. MADOFF INVESTMENT           :
SECURITEIS LLC,                        :
                                       :
                  Defendant.           :
------------------------------------------------------x
In re:                                 :
                                       :
BERNARD L. MADOFF,                     :
                                       :
                  Debtor.              :
------------------------------------------------------x

<u>**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**</u>

Alan Wallenstein ("Wallenstein"), objects to the Notice of Trustee's Determination of

Claim dated October 6, 2009 (Exhibit A) ("Trustee's Determination"), as modified by the

Trustee's letter dated October 23, 2009 (Exhibit B) ("Modification Letter") (together, the

"Trustee's Determination").   As explained below, the Trustee's Determination allowed only a

part of the amount sought by Wallenstein's customer net equity claim.  Wallenstein objects to the

Trustee's partial disallowance of his claim.

987992.5

## FACTUAL AND PROCEDURAL BACKGROUND

1.      Prior to April 2002, Wallenstein's mother maintained an account (No. 1ZA51530) ("Original Account") with Bernard L. Madoff Investment Securities LLC ("Madoff").

2.      Following the death of Wallenstein's mother in early 2002, the Original Account was divided and transferred into two new accounts at Madoff on or about April 11, 2002, which were established for the benefit of Wallenstein and his sister, as survivors of their mother.  One of the new accounts was opened in the name of Wallenstein (No. 1ZB426) ("Claimant's Account"), and received a transfer of a total of $545,869.34 of the stated value of the Original Account as of that date.[1]

3.      After the establishment of Claimant's account, additional value was added to the account in the form of (a) deposits of an aggregate of $150,000 in cash by Claimant in 2002 and 2007, and (b) a further inter-account transfer, within Madoff, of a portion of the remaining stated value of the Original Account as of September 12, 2002.

4.      From the time of the establishment of Claimant's Account, in addition to the communications from Madoff regarding the account, Wallenstein received monthly statements and securities transaction confirmations from Madoff.

5.      On December 11, 2008, the United States Securities and Exchange Commission commenced an action against Madoff in the United States District Court for the Southern District of New York pursuant to the Securities Investment Protection Act ("SIPA").  On December 15, 2008, the District Court granted relief under SIPA and transferred the liquidation proceedings for Madoff to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").  See Order, *Securities and Exchange Commission v. Bernard L. Madoff*

---

[1]      The second account was opened in the name of Wallenstein's sister, and is not a subject of this Objection.

*Investment Securities, LLC*, No. 08-cv-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the Bankruptcy Court) [Dkt. No. 4]. Irving H. Picard was appointed as Trustee ("Trustee") and was charged, among other things, to overseeing the liquidation of Madoff and the processing and disposition of customer claims pursuant to SIPA. Id.; see also 15 U.S.C. § 78fff-l(a) (2009).

6.    By Order dated December 23, 2008 (the "Notice & Procedures Order"), the Bankruptcy Court directed the Trustee to disseminate notice of the liquidation proceeding to Madoff customers along with customer claim forms, and set claim deadlines for the filing of claims. See Notice & Procedures Order [Dkt. No. 12].

7.    The Notice Order further provided that, to the extent the Trustee disagrees with the amount claimed by a customer on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, **and the reason therefor** ...." Notice & Procedures Order, at 6 (emphasis added).

8.    On or about February 9, 2009, Wallenstein timely filed a claim for the value of Claimant's Account (the "Claim"), based on the November 30, 2008 statement from Madoff which reflected an aggregate account value of $1,036,478.38 (the "Final Madoff Statement"). Copies of Wallenstein's claim form and his Final Madoff Statement are attached as Exhibits C and D.

9.    On October 6, 2009, the Trustee issued the Trustee's Determination.  Among other things, the Trustee determined that (a) Wallenstein was not entitled to a claims for securities "because no securities were purchased for [Claimant's Account]," but (b) the Claim was allowed, in part, but only to the extent of $196,758.00, which represented "the balance in

[Claimant's Account' on the filing Date based on the amount of money you deposited with Madoff for the purchase of securities, <u>less</u> subsequent withdrawals ...."

10.    In reaching the position stated in the Trustee's Determination, the Trustee discounted by value of the amounts transferred to Claimant's Account from the Original Account, "based on a money in/money out analysis" which, in turn, adjusted the aggregated value of the inter-account transfers received in Claimant's Account from $546,312.93 to $296,758.00.

11.    On October 27, 2009, after discussions between Wallenstein and counsel for the Trustee, the Trustee issued the Modification Letter, which acknowledged that payment by the Trustee of the undisputed amount of the Claim (up to the limits of SIPA protection) would be without prejudice to the parties' rights, claims and defenses concerning the disputed portion of the Claim.

12.    In subsequent discussions between Wallenstein or his counsel and counsel for the Trustee, Wallenstein's time to object to the Trustee's Determination was extended to, and including, January 20, 2010.

13.    Wallenstein agrees to the Trustee's partial allowance of the Claim pursuant of the Trustee's Determination, but objects to the portion of the Trustee's Determination that disallowed the remainder of the Claim, on the grounds stated below.[2]

## GROUNDS OF OBJECTION

### First Objection

14.    The Trustee's Determination fails to comply with the Notice & Procedures Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's books and

---

[2]    In accordance with the Modification Letter, Wallenstein has separately submitted to the Trustee a signed release and assignment, to the extent of the undisputed portion of the Claim.

records." Notice & Procedures Order, at 5 [Dkt. No. 12]. The Claim was evidenced by the Final

Madoff Statement which reflected a final balance of 1,036,478.63 and listed the securities

purportedly purchased for and held in Claimant's Account, which in turn reflects the "Debtor's

books and records" by which the Trustee is bound absent proof that Wallenstein, as the owner of

Claimant's Account, did not have a "legitimate expectation" that the balance on the Final Madoff

Statement represented his property.[*]

## Second Objection

15.    The Trustee's Determination fails to set forth a proper and sufficient legal basis

for the positions he has taken regarding the calculation of the Claim.    The Trustee's

Determination:

    (a)    does not clearly provide "the reason" for the disallowance, and thereby

fails to satisfy the requirements of the Notice & Procedures Order;

    (b)    is insufficient to rebut the *prima facie* validity of the Claim provided by

Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

    (c)    violates general principles of applicable law requiring that an objection to

a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the

objection is based, *see, e.g.*, 9 Collier on Bankruptcy ¶ 3007.01[3] (15th ed.) (the objection

"should, at a minimum, allege those facts necessary to support the objection (ordinarily this must

include allegations sufficient to overcome the prima facie validity of the filed proof of claim) and

provide a description of the theories on which it is based.... [A]n objection to a claim should ...

---

[*]    Wallenstein's claim reflected a debit balance of $0.25 and to Madoff, which reduces his net claim, as filed, to $1,036,478.38.

meet the standards of an answer."); <u>In re Enron Corp.</u>, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

        (d)     refers to an exhibit listing inter-account transfers into Wallenstein's account but fails to grant full credit for the amount of those transfers to provide any supporting document to support the treatment.

**<u>Third Objection</u>**

    16.    The Trustee Determination violates Wallenstein's rights under SIPA by failing to set forth valid or legal factual grounds for the reduction of the amount of the Claim by appreciation in Claimant's Account or for the calculation of the Claim based on counting only the cash amount of a customer's investment less cash withdrawals.

    17.    The Trustee's Determination fails to fulfill the requirement of SIPA that the legitimate expectations of a customer must be honored in determining the allowance of a customer claim.

    18.    Under SIPA, customer net equity is specifically defined as:

> the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date ....

15 U.S.C. § 78*lll*(11).

    19.    Based on regular statements and other communications received from Madoff, Wallenstein at all times reasonably believed that Claimant's Account actually held such

securities and that Madoff has executed the transactions reports in the documents received by Wallenstein.

20.    The requirement to compensate customers based on their legitimate expectations is confirmed by the legislative history of SIPA.

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account.... By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments ... would satisfy customers' legitimate expectations ....

S. Rep. No. 95-763, 95th Cong., 2d Sess. 2 (1978). Accord, H.R. Rep. No. 95-746, at 21 (95th Cong., 1st Sess. 1978) (same). *See* In re New Times Secs. Servs., Inc., 371 F.2d 68, 74 (2d Cir. 2004). *See also* In re Primeline Secs. Corp., 295 F.3d 1100, 1107 (10th Cir. 2002) ("If a claimant intended to have the brokerage purchase securities on the claimant' behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds."); In re Oberweis Secs., Inc., 135 B.R. 842, 847 n.1 (Bankr. N.D. Ill. 1991) ("The court agrees with the trustee's argument that Congress did not intend to treat customers without confirmations the same as those with confirmations; that customers with confirmations have a legitimate expectation of receiving securities, but customers without confirmations do not have the same expectation.").

21.    Jurisprudence under SIPA confirms the paramount significance of customers' legitimate expectations, and validates the controlling significance of account valuation based on the stated contents of Claimant's Account as of the commencement of the SIPA liquidation case.

*E.g.,* SIPC v. Vigman, 803 F.2d 1513, 1516 (9th Cir. 1986) (net equity is the amount that the broker would have owed the claimant if it had liquidated the account on the date of commencement of the case, less amounts owed by the claimant to the broker); SEC v. Aberdeen Secs. Co., 480 F.2d 1121, 1123-24 (3d Cir. 1973); In re Adler Coleman Clearing Corp., 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996) ("A customer's account is valued as of the date the SIPA liquidation is commenced); In re Bevill, Bresler & Schulman, Inc., 83 B.R. 880, 892 (D.N.J. 1988). *See also* In re Investors Center, Inc., 129 B.R. 339, 351 (Bankr. E.D.N.Y. 1991) (case involving customer net equity claims for cash, in which the Madoff trustee also was the SIPA liquidation trustee; "in this case, the customers received written confirmation. Therefore, they have a claim for cash regardless of the fact that the contract was never executed because of ) the broker's] breach. It makes no difference why [the broker] breached the contract."). [3]

22.    Moreover, the Securities Investor Protection Corporation ("SIPC"), the corporation charged with administering SIPA, has publicly acknowledged that it is bound by the statute and the rules to satisfy the reasonable expectations of customers holding claims for securities even when the securities had never been purchased by the broker.[4] Brief of Appellant SIPC, In re New Times Secs. Servs., 371 F.3d 68 (2d Cir. 2004) (No. 05-5527), at 23 ("Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality."). *See also* Transcript or Proceedings, In re New Times Secs. Servs., Inc., No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000), at 37-39; December 16, 2008

---

[3]    A cash in/cash out methodology for the computation of net equity has been accepted by the courts only in cases involving SIPA "claims for cash", not claims for securities. *In re Old Naples Secs., Inc.,* 311 B.R. 607 (M.D. Fla. 2002); *In re C.J. Wright & Co.,* 162 B.R. 597 (Bankr. M.D. Fla. 1993). No reported case law in this District or Circuit supports the Trustee's approach in the Madoff case.

[4]    Moreover, although SIPA authorizes SIPC to adopt rules that define terms used in the statute, this rulemaking power explicitly excludes the promulgation of such rules for terms that are specifically provided by section 78*lll* of the statute (which contains the definition of "net equity"). *See* 15 U.S.C. § 78ccc(b)(4)(A).

Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html (reporting statement by SIPC general counsel Josephine Wang to the press on December 16, 2008, acknowledging that a Madoff customer is entitled to the securities in the customer's account).

23.    The Trustee's methodology is inconsistent with the Series 500 Rules promulgated by SIPC under SIPA, which provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer. *See* 17 C.F.R. § 300.500.  Pursuant to these Rules, a customer has a claim for securities if the customer received written confirmation that securities were purchased or sold for the account. See id. § 300.501; *see also* In re New Times Secs. Servs., Inc., 371 F.2d at 86, 87 (premise of Series 500 Rules is that a customer's legitimate expectations, based on written confirmations of transactions, should be protected; "whether a claim is treated [under those Rules] as one for securities or cash depends not on what is actually in the customer's account but on what the customer has been told by the debtor in written confirmations").

24.    In this case, the Trustee and SIPC have publicly acknowledged or agreed that aggrieved customers of Madoff, such as Wallenstein, hold claims for securities.  But, the Trustee's Determination is inconsistent with, and impermissibly deviates from, the purpose and goals of SIPA, the position that SIPC, has unequivocally and publicly taken with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

**Fourth Objection**

25.    The reduction of the amount of the filed Claim to exclude any prior gains reflected on the Final Madoff Statement or prior account statements is an improper attempt by the Trustee to avoid such gains without alleging any legal grounds for avoidance and without

proving that such gains are avoidable under avoidance under any statute. Such avoidance may only be accomplished in this proceeding by means of an adjudication in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(1), 7008; SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230 (3d Cir. 2008). Accordingly, such purported disallowance is improper and unjustified.

**Fifth Objection**

26. Claimant's Account was established with amounts transferred from a prior account at Madoff (the "Transferor Account"). In calculating net equity for Claimant's Account, the Trustee's Determination does not reflect the full amount transferred from the Original Account to Claimant's Account as reflected by the records of Madoff recording and confirming the transfer. Instead, the Trustee recalculated and revalued the amount transferred into Claimant's Account under the money in/money out methodology, with the result that the amount attributed to the Original Account is substantially lower than the amount reflected in the records and in the statements rendered to Wallenstein for Claimant's Account.

27. The Trustee fails to alleged any factual or legal basis for the reduction in this fashion, or to prevent Wallenstein from enjoying the status of a bona fide transferee and purchaser acting in good faith of the amounts received from the Prior Account. There is no basis in fact or law for such recalculation. The Trustee has no legal support for reducing the balance in the Original Account at the time of the transfer under state law or federal bankruptcy law. Moreover, the reduction is an improper attempt to invoke the avoidance remedies under the Bankruptcy Code without a proper proceeding or adjudication (see Paragraph 25). The trustee should be required to re-determine the Claim by recognizing the full amount of the Original Account that was transferred to Claimant's Account.

## Sixth Objection

28.    The Trustee's methodology for calculating customer claims is an improper and inadequate measure of loss. Wallenstein established his account with proceeds received from a relative's predecessor account at Madoff, and deposited another $150,000 into the account with the reasonable and legitimate expectation that the value of Claimant's Account would grow; the statements for Claimant's Account showed growth; and the balance on the Final Madoff Statement reflects the benefit of this bargain. *See* Visconsi v. Lehman Brothers, Inc., No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007); *see also* SEC v. Byers, 637 F. Supp. 2d 166 (S.D.N.Y. 2009) (in equitable distribution proceeding arising from Ponzi scheme, Court authorized calculation of claims based on inclusion of reinvested earnings reported in customers' accounts, so as to treat reinvesting customers equitably as compared with customers who made net withdrawals from their accounts).

29.    The Trustee's methodology also conflicts with other federal law. *See, e.g.*, I.R.S. Rev. Proc. 2009-20 (issued March 17, 2009) (recognizing a valid tax loss claim for income earned by Madoff customers according to their account statements, on which they paid taxes annually).

## Seventh Objection

30.    Wallenstein was required to pay income taxes on distributions which the Trustee asserts to have been fictitious. The Trustee justifies his methodology for calculating claims as fair and reasonable because, in his view, fictitious gains on accounts should not be treated the same as claims for funds actually deposited by customers, in order to equalize the treatment of all Madoff customers. This assertion is not correct, in so far as customers did not have the use of

reported but allegedly fictitious gains in their accounts, but nonetheless paid required income taxes on reported amounts shown as being in their Madoff accounts.

31.    Even if the Trustee's methodology is correct, Wallenstein's claim should be adjusted by adding back all amounts he actually paid as income taxes on allegedly fictitious gains to equalize his treatment with other customers. *See* <u>SEC v. Byers</u>, supra.

**<u>Additional and Alternate Considerations</u>**

32.    In the event that the Court determines that customer claims should not be allowed in the amounts reflected on the final account statements of the Final Madoff Statement, then in the alternative, the customer is entitled to recover interest or appreciation the investments based upon the following.

33.    Under New York law, which is applicable here, funds deposited with Madoff under these circumstances are entitled to interest. *See, e.g.*, N.Y. C.P.L.R. § 5004; N.Y. Gen. Oblig. L. § 5-501, *et seq.* Accordingly, the Claim should be recalculated by adding interest to all funds deposited.

34.    Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff on the customer's deposits. *See, e.g.*, <u>Steinberg v. Sherman</u>, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at * 14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as ... conversion and unjust enrichment qualify for the recovery of prejudgment interest."); <u>Eighteen Holding Corp. v. Drizin</u>, 701 N.Y.S.2d 427, 428 (N.Y. Sup. Ct. App. Div. 1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

35.    Claimant is entitled to interest on his investment under federal securities laws. *See* Randall v. Loftsgaarden, 478 U.S. 647, 664 (1986) (after analyzing different measures of recovery of "actual damages" for fraud, including rescission and restitution, the Supreme Court concluded that Congress intended to deter wrongdoers, and hence, wide latitude in choosing the measure of damages was warranted; "This deterrent purpose is ill-served by a too rigid insistence on limiting plaintiffs to recovery of their "net economic loss.").

## RESERVATION OF RIGHTS

36.    Wallenstein reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Wallenstein's right to object on any additional grounds.

37.    Wallenstein reserves all rights set forth in Rule 9014 of the Federal Rules of Bankruptcy Procedure and under applicable provisions of law including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

38.    Wallenstein reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action or adversary proceeding for any purpose whatsoever.

## RELIEF REQUESTED

For the foregoing reasons, the Bankruptcy Court should: (1) allow Wallenstein's Claim in its entirety in the amount of $1,036,478.38; (2) direct the Trustee and SIPC immediately to cause the further advance of cash to Wallenstein from the SIPC fund in an amount sufficient to provide

Wallenstein with the full $500,000 amount of SIPC coverage to which his Claim is entitled; and

(3) grant Wallenstein such other and further relief as may be just and proper.

Dated:  January 19, 2010

PRYOR CASHMAN LLP

By: _/s/ Richard Levy, Jr._
        Richard Levy, Jr.
7 Times Square
New York, New York 10036
Telephone:      (212) 421-4100
Facsimile:       (212) 326-0806

*Attorneys for Alan Wallenstein*

# EXHIBIT A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 6, 2009

Alan Wallenstein
37 Huff Terrace
Montvale, NJ 07645

Dear Alan Wallenstein:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB426 designated as Claim Number 002087:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $196,758.00, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300030482.1

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/11/2002 | TRANS FROM 1ZA51630 | $545,869.34 | $296,758.00 |
| 6/24/2002 | CHECK | $100,000.00 | $100,000.00 |
| 9/12/2002 | TRANS FROM 1ZA51630 | $443.59 | $0.00 |
| 3/1/2007 | CHECK | $50,000.00 | $50,000.00 |
| Total Deposits: | | $696,312.93 | $446,758.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/20/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 10/1/2007 | CHECK | ($30,000.00) | ($30,000.00) |
| 1/2/2008 | CHECK | ($30,000.00) | ($30,000.00) |
| 4/1/2008 | CHECK | ($30,000.00) | ($30,000.00) |
| 7/1/2008 | CHECK | ($30,000.00) | ($30,000.00) |
| 10/1/2008 | CHECK | ($30,000.00) | ($30,000.00) |
| Total Withdrawals: | | ($250,000.00) | ($250,000.00) |
| Total deposits less withdrawals: | | $446,312.93 | $196,758.00 |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

Your **ALLOWED CLAIM** of $196,758.00 will be satisfied in the following manner:

The enclosed **ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **ASSIGNMENT AND RELEASE**, the Trustee will fully satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $196,758.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 6, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff-Applicant,

          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

          Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## ASSIGNMENT AND RELEASE

    **KNOW ALL MEN BY THESE PRESENTS,** that ALAN WALLENSTEIN, located at

37 Huff Terrace, Montvale, NJ 07645 (hereinafter referred to as the "Assignor") in consideration

of the payment of $196,758.00 to satisfy his claim for customer protection (the "Customer

Claim", having been designated Claim #002087) filed in the liquidation proceeding of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act,

15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA),

does for himself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the

"SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities

Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the

SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of

SIPA), any and all rights, including causes of action or claims, that Assignor now may have

against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal

activity with respect to Assignor's BLMIS account (Account No. 1ZB426, the "BLMIS

Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

300030542.1

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $196,758.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated October 6, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may

have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having his customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
ALAN WALLENSTEIN

Sworn and subscribed before me this
_____ day of _____, 2009.

_____
    Notary Public

# EXHIBIT B

**Irving H. Picard**
**Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC**
**Baker & Hostetler LLP**
**45 Rockefeller Plaza**
**11th Floor**
**New York, New York 10111**
**Tel No.: 212-589-4200**

October 27, 2009

Alan Wallenstein
37 Huff Terrace
Montvale, NJ 07645

Re:    Bernard L. Madoff Investment Securities LLC
       Bankr.S.D.N.Y., No. 08-1789 (BRL)
       Account No. 1ZB426

Dear Mr. Wallenstein:

    This letter responds to your request for the addition of certain language to the Assignment and Release (the "Assignment and Release") you received with the Notice of Trustee's Determination of Claim dated October 6, 2009.

    The following language hereby is incorporated by reference into the Assignment and Release:

    The payment of the undisputed amount of the Assignor's Customer Claim (up to the limits of SIPA protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

    Additionally, as we discussed, you have until December 7, 2009 to file your objection and return the executed release.

                                    Very truly yours,

                                    Irving H. Picard, Trustee
                                    Bernard L. Madoff Investment
                                    Securities LLC

# EXHIBIT C

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:____|_____

HOME:____|_____

Taxpayer I.D  Number (Social Security No.)

_____

Account Number:   1ZB426
ALAN WALLENSTEIN
37 HUFF TERRACE
MONTVALE, NJ  07645

(If incorrect, please change)

**NOTE:**   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************

1.       Claim for money balances as of **December 11, 2008**:
         a.       The Broker owes me a Credit (Cr.) Balance of          $   0
         b.       I owe the Broker a Debit (Dr.) Balance of             $  .25

502180406                              1

c.   If you wish to repay the Debit Balance,
      please insert the amount you wish to repay and
      attach a check payable to "Irving H. Picard, Esq.,
      Trustee for Bernard L. Madoff Investment Securities LLC."
      If you wish to make a payment, **it must be enclosed**
      with this claim form.                                        $ _N/A_____

d.   If balance is zero, insert "None."                              NONE

2.   Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|                                   | YES | NO |
|-----------------------------------|-----|----|
| a.  The Broker owes me securities |  X  |    |
| b.  I owe the Broker securities   |     | X  |

c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | SEE Attached Acct statement | $1,036,478.38 | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

S02180406                                     2

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |

9.   Have you or any member of your family
     ever filed a claim under the Securities
     Investor Protection Act of 1970?  if
     so, give name of that broker.                                        $\times$

     Please list the full name and address of anyone assisting you in the
     preparation of this claim form: ___N/A_____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.


**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**


**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date ___2|8|09___          Signature ___Alan Wallenstein___

Date _____      Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)


**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

PORTFOLIO MANAGEMENT REPORT AS OF 12/31/02

THIS REPORT IS PROVIDED TO ASSIST YOU IN EVALUATING THE PERFORMANCE OF YOUR
ACCOUNT AND SHOULD NOT BE USED FOR INCOME TAX PURPOSES.

ALAN WALLENSTEIN

37 HUFF TERRACE
MONTVALE          NJ 07645

| | | |
|---|---|---|
| STARTING EQUITY | 4/31/02 | 545,869.34CR |
| CAPITAL ADDITIONS | | 100,443.59CR |
| CAPITAL WITHDRAWALS | | 100,000.00- |
| REALIZED P/L FOR CURRENT YEAR | | 64,942.06CR |
| UNREALIZED P/L ON OPEN SECURITY POSITIONS | | |
| CURRENT CASH BALANCE | | .99CR |
| NET MARKET VALUE OF OPEN SECURITIES POSITIONS | | 611,254.00  NET LONG |
| TOTAL EQUITY | | 611,254.99CR |

ANNUALIZED RETURN FOR CURRENT YEAR     14.85 %

**ALAN J. WALLENSTEIN**
**JOANNA WALLENSTEIN**
37 HUFF TERRACE
MONTVALE, NJ 07645-1009

55-2/212

2960

2/27/07     COMMAND ASSET PROGRAM

Date

Pay to the Order of  Bernard Madoff Investment Sec      $ 50,000 –

Fifty Thousand                                  Dollars

WACHOVIA SECURITIES      CODE

Wachovia Bank, N.A.

For  1-28426-3-0                          A Wallenstein

⑆021200025⑆  8881358915⑈  2960          ⑈000500000⑈

JPMORGAN CHASE BANK. N.A.
021000021  < POSITION
03/01/2007
04        00080

PAY TO THE ORDER OF
CHASE MANHATTAN BANK
FOR DEPOSIT ONLY
BERNARD L. MADOFF
140 081 703

Bernard Madoff
Investment Sec.

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000000008881358915 | 3/5/2007 | $50,000.00 | 000000000002960 | 0000000005529629886 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

Page 1

# EXHIBIT D



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ALAN WALLENSTEIN
37 HUFF TERRACE
MONTVALE          NJ  07645

Date: 11/30/08
Account No.: 1-ZB426-3-0
******9138
Page 1

| Date | Bought | Sold | Description | Price | Amount Debited | Amount Credited |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 62,702.92 |
| 11/12 | 924 | | HEWLETT PACKARD CO NEW | 29.900 | 27,571.20 | |
| 11/12 | 560 | | WAL-MART STORES INC | 54.900 | 31,069.00 | |
| 11/12 | 572 | | INTERNATIONAL BUSINESS MACHS | 55.830 | 31,956.76 | |
| 11/12 | 374 | | EXXON MOBIL CORP | 87.270 | 32,652.98 | |
| 11/12 | 1,386 | | INTEL CORP | 13.800 | 19,168.60 | |
| 11/12 | 1,518 | | JOHNSON & JOHNSON | 14.510 | 22,006.18 | |
| 11/12 | 726 | | J.P. MORGAN CHASE & CO | 59.580 | 43,284.08 | |
| 11/12 | 990 | | COCA COLA CO | 38.530 | 38,183.70 | |
| 11/12 | 528 | | | 41.660 | 22,003.96 | |
| 11/12 | 308 | | MERCK & CO | 55.690 | 17,165.96 | |
| 11/12 | 572 | | MICROSOFT CORP | 28.550 | 16,352.60 | |
| 11/12 | 2,090 | | ORACLE CORPORATION | 21.810 | 45,605.50 | |
| 11/12 | 1,056 | | PEPSICO INC | 17.310 | 18,310.80 | |
| 11/12 | 418 | | APPLE INC | 56.410 | 23,595.38 | |
| 11/12 | 242 | | PFIZER INC | 100.780 | 24,397.76 | |
| 11/12 | 1,782 | | ABBOTT LABORATORIES | 16.940 | 30,258.08 | |
| 11/12 | 418 | | | 69.210 | 28,942.98 | |
| 11/12 | 792 | | AMGEN INC | 64.600 | 50,782.36 | |
| 11/12 | 286 | | PHILLIP MORRIS INTERNATIONAL | 59.160 | 16,930.76 | |
| 11/12 | 550 | | SCHLUMBERGER | 43.600 | 24,002.00 | |
| 11/12 | 1,520 | | QUALCOMM INC | 18.590 | 28,250.00 | |
| 11/12 | 440 | | | 33.810 | 14,875.80 | |
| 11/12 | 1,430 | | CITI GROUP INC | 12.510 | 17,946.30 | |
| | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ALAN WALLENSTEIN
37 HUFF TERRACE
MONTVALE            NJ 07645

TAX 2
11/30/08
TAX ID ******9138
ACCOUNT 1-ZB426-3-0

| DATE | BOUGHT Received on Loan | SOLD Delivered or Sold | TIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 330 | | 75554 | SCHLUMBERGER LTD | 49.480 | 16,341.40 | |
| 11/12 | 792 | | 76056 | COMCAST CORP | 16.510 | 13,106.92 | |
| 11/12 | 1,562 | | 79880 | CL A ... AT&T INC | 27 | 42,235.00 | |
| 11/12 | 396 | | 80382 | CONOCOPHILIPS | 52.510 | 20,808.96 | |
| 11/12 | 264 | | 84206 | UNITED PARCEL SVC INC CLASS B | 52.040 | 13,748.56 | |
| 11/12 | 1,606 | | 84708 | CISCO SYSTEMS INC | 16.730 | 26,932.38 | |
| 11/12 | 462 | | 88532 | U S BANCORP | 29.530 | 13,660.86 | |
| 11/12 | 550 | | 89034 | CHEVRON CORP | 73.530 | 40,400.50 | |
| 11/12 | 264 | | 92858 | UNITED TECHNOLOGIES CORP | 53.160 | 14,034.24 | |
| 11/12 | 2,794 | | 93360 | GENERAL ELECTRIC CO | 19.450 | 54,351.22 | |
| 11/12 | 748 | | 97184 | VERIZON COMMUNICATIONS | 30.410 | 22,775.68 | |
| 11/12 | 66 | | 97686 | GOOGLE | 337.400 | 22,270.40 | |
| 11/12 | | 1,000,000 | 24117 | U S TREASURY BILL DUE 2/12/2009 2/12/2009 | 99.936 | | 999,360.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 11.34 |
| 11/12 | | 17,613 | 19221 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 17,613.00 |
| 11/12 | 16,208 | | 28589 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,208.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 1.99 |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

ALAN WALLENSTEIN

37 HUFF TERRACE
MONTVALE            NJ    07645

**PERIOD ENDING:** 11/30/08

**YOUR TAXPAYER IDENTIFICATION NUMBER:** *******9138

**YOUR ACCOUNT NUMBER:** 1-Z8426-3-0

**PAGE:** 3

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | 16,208 | | 54,128 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | | 16,208.00 |
| 11/19 | | 75,000 | 58,553 | U.S TREASURY BILL DUE 03/26/2009 | 99.9926 | | 74,994.50 |
| 11/19 | 7,178 | | 63,164 | FIDELITY SPARTAN U.S TREASURY MONEY MARKET | 1 | | 7,178.00 |
| | | | | NEW BALANCE | | | 124,170.75 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 1,562 | | | AT&T INC | 28.560 | | |
| | 418 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 286 | | | AMGEN INC | 55.540 | | |
| | 242 | | | APPLE INC | 92.670 | | |
| | 1,320 | | | BANK OF AMERICA | 16.250 | | |
| | 550 | | | CHEVRON CORP | 79.010 | | |
| | 1,606 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 1,430 | | | CITI GROUP INC | 8.290 | | |
| | 528 | | | COCA-COLA CO | 46.870 | | |
| | 792 | | | COMCAST CORP CL A | 17.340 | | |
| | 396 | | | CONOCOPHILLIPS | 52.520 | | |
| | 1,386 | | | EXXON MOBIL CORP | 80.150 | | |
| | 2,794 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE    4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

ALAN WALLENSTEIN
37 HUFF TERRACE
MONTVALE                NJ    07645

**PAGE:** 4
**DATE:** 11/30/08
**YOUR ACCOUNT NUMBER:** 1-ZB426-3-0
**YOUR TAX PAYER IDENTIFICATION NUMBER:** *******9138

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | FMN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 66 | | | GOOGLE | 292.960 | | |
| | 660 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 1,518 | | | INTEL CORP | 13.800 | | |
| | 374 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 990 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 726 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 308 | | | MCDONALDS CORP | 58.750 | | |
| | 572 | | | MERCK & CO | 26.720 | | |
| | 2,090 | | | MICROSOFT CORP | 20.220 | | |
| | 1,056 | | | ORACLE CORPORATION | 16.090 | | |
| | 418 | | | PEPSICO INC | 55.700 | | |
| | 1,782 | | | PFIZER INC | 16.430 | | |
| | 550 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 792 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 440 | | | QUALCOMM INC | 33.570 | | |
| | 330 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 7,178 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 462 | | | U S BANCORP | 26.900 | | |
| | 264 | | | UNITED PARCEL SVC INC | 57.800 | | |
| | | | | CLASS B | | | |
| | 75,000 | | | U.S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 264 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE 5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ALAN WALLENSTEIN

37 HUFF TERRACE
MONTVALE          NJ    07645

| PROCESS DATE | YOUR TAX ABBREVIATION IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 11/30/08 | *******9138 | 5 |

YOUR ACCOUNT NUMBER: 1-ZB426-3-0

| DATE | BOUGHT RECEIVED LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 748 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 572 | | | WAL-MART STORES INC. | 55.890 | | |
| | 924 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG        SHORT | | | |
| | | | | 1,091,438.63 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



SENDING INSTITUTION

12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

ALAN WALLENSTEIN

37 HUFF TERRACE
MONTVALE          NJ  07645

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 7,260.34 |
| | | | | GROSS PROCEEDS FROM SALES | | | 8,142,347.99 |

YOUR ACCOUNT NUMBER  1-ZB426-3-0

PERIOD ENDING  11/30/08

YOUR TAX IDENTIFICATION NUMBER  **********9138

PAGE  6

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ALAN WALLENSTEIN

37 HUFF TERRACE
MONTVALE          NJ  07645

**PAGE** 1

**PERIOD ENDING** 11/30/08

**YOUR ACCOUNT NUMBER** 1-ZB426-4-0

**TAX PAYER ID NUMBER/CERTIFICATION NUMBER** *******9138

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | BALANCE FORWARD | | | 62,703.00 |
| 11/12 | | 22 | 45272 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 34,735.00 |
| 11/12 | 22 | | 49598 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 39,182.00 | |
| 11/19 | | 22 | 35702 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 57,178.00 |
| 11/19 | 22 | | 40027 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 66,022.00 | |
| 11/19 | 22 | | 44352 | S & P 100 INDEX NOVEMBER 460 CALL | 3 | | 8,622.00 |
| 11/19 | | 22 | 48677 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | 81,378.00 | |
| | | | | NEW BALANCE | | | 124,171.00 |
| | | | | SECURITY POSITIONS S & P 100 INDEX DECEMBER 430 CALL | MKT PRICE 22.300 | | |
| | 22 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | | MARKET VALUE OF SECURITIES LONG          SHORT 36,300.00        51,260.00 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

## CERTIFICATE OF SERVICE

I certify that on January 19, 2010, I caused a true and correct copy of the foregoing

**Objection to Trustee's Determination of Claim** on behalf of Alan Wallenstein to be filed

electronically with the United States Bankruptcy Court for the Southern District of New York

and to be served upon all parties in this adversary proceeding who receive electronic service

through the Court's CM/ECF system, and to be served by mail upon:

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

Dated: January 19, 2010
        New York, New York

_/s/ Richard Levy, Jr._
RICHARD LEVY, JR.

987992.5