UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                              :
                                                                       :   Case No. 08-1789 (BRL)
BERNARD L. MADOFF INVESTMENT          :
SECURITIES LLC                                           :   Hon. Burton R. Lifland
                                                                       :
Debtor.                                                          :
-----------------------------------------------------------x

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

The Pearson Family Partnership (the "Partnership") hereby objects to the determination (the "Determination") of Irving H. Picard, Trustee ("Trustee") denying Claim Number 000015 (the "Claim") filed against Bernard L. Madoff Investment Securities LLC ("BLMIS"), as set forth in the Notice of Trustee's Determination of Claim dated October 19, 2009.

### PRELIMINARY STATEMENT

1.  The Partnership objects to the Trustee's basis for denying its Claim, and thus also objects to the Trustee's Determination. Purportedly, the Partnership did not have the requisite positive "net equity" in its BLMIS account for an allowed claim. In fact, the Partnership opened its account with a principal amount of $1,018,541.78 in 2002, and had only withdrawn $628,206.49 by December 11, 2008. As such, the Partnership did suffer a loss and is entitled to appropriate compensation in conjunction with the BLMIS liquidation proceeding.

## BACKGROUND

2. In 2002, Ann Pearson Kanner and Lynn Pearson Weiner (the "Pearson Sisters") formed the Partnership. The Partnership opened an account directly with BLMIS on November 25, 2002. It deposited a principal amount of $1,018,541.78 into the account and received purchase confirmations accordingly.

3. From 2002 through 2008, the Partnership received regularly monthly account statements apprising the Partnership of its holdings. These statements expressly indicated that BLMIS was a member of the Securities Investor Protection Corporation ("SIPC").[1] (True and correct copies of account statements are attached hereto at Tab A.)

4. As of December 11, 2008, the Partnership had received just $628,206.49 in dividends and short-term capital gains. As previously noted, the Partnership had initially deposited $1,018,541.78 into its account.

5. As a separate matter, it bears noting that the Pearson Sisters' mother, Gertrude Pearson ("Mrs. Pearson"), had also held an account with BLMIS. Mrs. Pearson opened her account in 1993 with $200,000. From 1993 to 2002, Mrs. Pearson deposited into her account additional amounts totaling approximately $800,000. During this same time, Mrs. Pearson received $705,368 in dividends and short-term capital gains, upon which she paid federal and Florida state taxes.

6. Mrs. Pearson died on October 6, 2002. Shortly after her passing, Mrs. Pearson's funds were withdrawn from BLMIS and her account was permanently closed. The

---

[1] SIPC and its corresponding SIPC Fund were created by the Securities Investor Protection Act to provide for the orderly liquidation of failed securities brokerage firms and for the financial protection of their customers. SIPC insures accounts up to $500,000 in cases of securities fraud.

Partnership paid $38,688 in inheritance taxes to the State of Florida, and $84,013 to the U.S. government in estate taxes, in association with this withdrawal.

## ARGUMENT

7. The Notice sets forth the reason for the Trustee's denial of the Claim: the Partnership did not have a positive "net equity" and therefore its Claim is not permitted in the BLMIS liquidation.

8. This Determination demonstrates a patent misunderstanding of the factual background of this Claim. The Partnership opened its account in 2002 with $1,018,541.78, and had only withdrawn $628,206.49 as of December 11, 2008. The Partnership deposited more than it withdrew and, as such, had a positive net equity. This calculus is simple and cannot be muddled by the transactions associated with Mrs. Pearson's long-closed account. Indeed, the relevant statute requires that the Partnership's account and Mrs. Pearson's account be treated separately for purposes of computing net equity because the Partnership and Mrs. Pearson are separate customers.

9. This claim is brought under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA").[2] The statute includes a definition of "net equity," which states:

> The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by--
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
> (B) any indebtedness of such customer to the debtor on the filing date; plus

---

[2] The U.S. Supreme Court explained that "Congress enacted SIPA to arrest [the] process [of business contraction], restore investor confidence in the capital markets, and to upgrade the financial responsibility requirements for registered brokers and dealers." SIPC v. Barbour, 421 U.S. 412, 415 (1975). SIPA, through SIPC, achieved its intended effect in this case. The Partnership was assured by BLMIS's status as a SIPC member and upon SIPC protections in making its investment.

3

(C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 8(a) U.S.C. § 78fff-2(a).
In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.

15 U.S.C. § 78lll(11). Essentially then, the statutory definition holds that "net equity" is the difference between what the debtor owes the customer, and what the customer owes the debtor.

10. The term "customer" is also defined under SIPA. A "customer of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer." 15 U.S.C. § 78lll(2). In accordance with common sense, the statutory definition of "customer" generally conceives of each individual person or entity as a separate customer.

11. Mrs. Pearson and the Partnership are separate entities. See SIPC Series 100 Rules. Mrs. Pearson had no participation in the Partnership, which was formed after her death.

12. Mrs. Pearson and the Partnership held separate accounts and are separate customers for purposes of SIPA. As such, the Partnership's net equity is determined without regard to any transactions Mrs. Pearson may have made.

13. This claim finds additional support in the definition of "net equity," which states that, "[i]n determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers." 15 U.S.C. § 78lll(11). The statute so firmly respects the independence of accounts, that <u>even the same individual</u> can be considered as separate customers with regard to separate accounts. In light of this language, it is inconceivable that the statute intended for Mrs. Pearson and the Partnership—<u>two completely</u>

4

<u>independent entities</u>—to be treated as the same customer for purposes of determining net equity. Indeed, partnerships exist for precisely this reason: to enable the formation of independent legal entities.

14. Any attempt to argue that it was impossible to withdraw fictitious funds from Mrs. Pearson's account for deposit into the Partnership's account must fail. As of November 2002, interested parties could readily withdraw cash from their BLMIS accounts. Although the Pearson Sisters could easily have received over $1,000,000 from Mrs. Pearson's account in November 2002, they instead formed the Partnership and invested this money in a new BLMIS account.[3]

---

[3] Additionally, in recognition of the inheritance from Mrs. Pearson, the Partnership paid almost $123,000 in non-recoverable federal and state estate taxes. Had the BLMIS funds been understood to be fictitious, these taxes would have been avoided, as the value of Mrs. Pearson's estate was otherwise not sizeable.

## RELIEF REQUESTED AND RESERVATION OF RIGHTS

15. The Partnership respectfully requests recognition that it had positive net equity in its BLMIS account and is entitled to an allowed claim in the liquidation proceeding.

16. Pursuant to the Notice, the Partnership requests a hearing on this matter.

17. The Partnership reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Partnership's right to object on any additional grounds.

18. The Partnership reserves all rights set forth in Federal Rule of Bankruptcy Procedure 9014.

Dated: New York, NY
       November 18, 2009

By: *Ellen Kanner*

Ellen H. Kanner, Esq.
175 W. 12th Street, Apt. 11C
New York, NY 10011
Telephone: 773-573-2452
Facsimile: 561-627-9243