

**Kohrman Jackson & Krantz** PLL

ATTORNEYS AT LAW

November 30, 2009



Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
Courtroom 623
New York, NY 10004

Re:   *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, United States Bankruptcy Court, Southern District of New York, Adv. No, 08-01789

Lynn Ott:   BLMIS Account Number: 1EM302
Claim Numbers: 3490, 3491, 3492 and 3493
Date of Determination: November 19, 2009
Amount: $1,374,131.66

Dear Judge Lifland:

This office represents Madoff victim Lynn Ott. Ms. Ott is the daughter of Robert Rosenberg who opened an IRA with Bernard L. Madoff Investment Securities LLC in 1994. Ms. Ott is a retired school teacher who inherited the account from her father when he died in 2005.

The purpose of this correspondence is to appeal the November 19, 2009 determination of Trustee Irving Picard denying Ms. Ott's claim.

We apologize for the late timing of this correspondence. However, despite the fact that Ms. Ott filed her claims on February 3, 2009 the Trustee did not make any determination until November 19, 2009, well after the Court's deadline for briefing the SIPC issues.

Trustee's argument that investors are not entitled to rely upon the stated values of their fraudulent accounts and that "cash in/cash out" is the only relevant calculation is inexplicably contrary to the argument successfully raised by Trustee's own law firm Baker Hostetler in settling *Bonutti v. Lehman Brothers, Inc.*, United States District Court, Northern District of Ohio, Case No. 1:02-CV-1018, a case arising out of $280 million in false account statements sent out over a 15 year period by former Cowen, SG Cowen and Lehman broker Frank Gruttadauria.

In *Bonutti*, Baker Hostetler attorneys Daniel Warren, Daniel Mascaro, Geoffrey Mearns and Melissa Eckhouse argued that an investor in a Ponzi scheme perpetrated by a stock broker was entitled to rely upon the false statements of purchases and sales that had been made over a period of many years in his account. Baker Hostetler specifically rejected the broker-dealer's calculation that there were no damages based upon "cash in/cash out."

V  216·736·7209
F  216·621·6536
E  ahj@kjk.com

One Cleveland Center
20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793
216·696·8700
www.kjk.com

**Cleveland and Columbus**

Member of
MACKRELL
INTERNATIONAL
An association of independent law firms

{K0215042.1}



Kohrman Jackson & Krantz PLL
ATTORNEYS AT LAW

Instead, Baker Hostetler argued that the client was entitled to base his claim upon fake statements and millions of dollars in false profits.

As set forth in the *Bonutti* Complaint, the damage claims against the broker-dealer were predicated upon the fact that the broker-dealer "refused to provide [client] with the benefit of the many purchases and sales of stock that, for years, [broker] represented had been made for [client's] accounts." *Bonutti* Complaint, ¶4. Further, Baker Hostetler argued that its client was entitled to recover $16 million as set forth on his false statements in 2001, though the client had deposited only $4 million in 1991. *Bonutti* Complaint, ¶30. As Baker Hostetler concluded, "[i]n short, [client] has lived his life based upon the representations that the [broker and broker/dealer] made to him over a period of years about his investment account – representations that they now seek to disavow." *Bonutti* Complaint, ¶42.

This argument for damages based upon false statements and rejecting the "cash in/cash out" formula was followed up by Baker Hostetler in the related Gruttadauria case of *Visconsi v. Lehman Brothers*, 2007 U.S. App. LEXIS 19088 (6th Cir.). In *Visconsi* the Plaintiffs were jointly represented by the law firms of Baker Hostetler, Porter, Wright Morris & Arthur and Kellogg, Huber, Hansen, Todd, Evans & Figel. In *Visconsi* the investors deposited $21 million, withdrew $25.8 million and had false account statements showing a balance of $37.9 million. Nevertheless, the Sixth Circuit affirmed an arbitration award of $10.2 million holding that Lehman's out-of-pocket theory of damages "misapprehends" the harm suffered by the recipients of the false statements finding this to be a "wholly inadequate" measure of damages.

Though not binding upon this Bankruptcy Court, one should also take notice that there have been several FINRA, NASD and NYSE arbitration cases (where most customer-broker fraud disputes are adjudicated) that have awarded damages to a customer based upon their reliance on fraudulent statements – even where withdrawals exceeded deposits. In fact, at times, the SEC and the NYSE have gone so far as to create special arbitration processes for such matters. See: http://www.sec.gov/news/press/2003-96.htm.

Though admittedly SIPC carries an independent regulatory construct, Trustee's argument only "cash in/cash out" matters for the purpose of calculating damages is irreconcilably opposite to the argument that Baker Hostetler successfully made in litigation and settlement of the *Bonutti* and *Visconsi* cases. It is illogical that damages in the case of a surviving firm would be based upon false statements and damages in the case of a failed firm would only be based upon "cash in/cash out." There is simply no support for such a disparate treatment in the SIPA legislation or the



**Kohrman Jackson & Krantz**PLL
ATTORNEYS AT LAW

Memorandum of Law filed by the Securities Investor Protection Corporation in this matter.

In addition to the issues previously raised by other claimants, we note the following:

1) Though the Trustee's determination includes a purported chart of deposits and withdrawals, the Trustee has provided no copies of records and no account documentation to support his determination. Critically, we believe that the figure of $495,566.17 does not accurately reflect the total of deposits made by Mr. Rosenberg from 1994 until his death.

2) The account at issue was established by Robert Rosenberg and passed to his daughter upon Mr. Rosenberg's death. We question the fundamental assumption of the Trustee that it is entitled to offset deposits and withdrawals made by the prior account owner. If the Trustee is allowed to pursue this plan the result could be for the Trustee to initiate so-called clawback claims against a current account holder even if all withdrawals were made by a prior account owner.

3) Unlike the case of an investor in an ordinary account who controls the amount and timing of his withdrawals, here we are addressing a substantial IRA account that was subject to mandatory withdrawals that should not have the effect of penalizing the owner.

4) As Mr. Rosenberg is deceased, not only have taxes been paid on all withdrawals, but substantial estate taxes were also paid at the time of Mr. Rosenberg's death.

5) It is a fallacy of the Trustee's analysis to perform calculations based upon when the fraud was discovered and not when it occurred. In the Trustee's scheme a fraud perpetrated in 1994 that resulted in an immediate theft of investor assets would be subject to a SIPC recovery only after it was discovered and adjudicated – in this case 15 years later. By contrast, if the fraud were discovered at the time it had occurred, the victim could have been compensated in 1994 and had the benefit of their funds without waiting years for the perpetrator to confess or the Trustee to process the paperwork. The time-value calculation effectuated by such delayed justice serves only to enrich SIPC and penalize the investor.

In conclusion, based upon the foregoing, we request that the Trustee's determination of November 19, 2009 be reversed and that Lynn Ott's claim be allowed in its entirety.

{K0215042.1}



**Kohrman Jackson & Krantz** PLL
ATTORNEYS AT LAW

At this time, due to the numerosity of claimants and attorneys already involved, counsel is not entering an appearance in this case nor seeking admission to the Court Pro Hac Vice. However, we would welcome the opportunity to brief these matters further or present these arguments on February 2, 2010 or at any other hearing should this Court desire.

Respectfully,

Ari H. Jaffe

Encl.

cc: Lynn Ott
Peggy Beistel
Irving Picard, Trustee
Kevin H. Bell
Clerk of the United States Bankruptcy Court

/kas

Page 4

{K0215042.1}