Gustine Ganes
PO Box 740256
Boynton Beach, Fl 33474
(561) 733-1858
Claim # 2983



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiffs,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

--------------------------------------------------

    Gustine Ganes hereby objects to the Trustee's interpretation of Net Equity under SIPA as equal to "cash in/cash out." The proper definition of net equity under SIPA is the value of the securities positions and credit balance reflected in the November 30, 2008 statement.

    Law in the United States is based upon two sources :

        a) written law, enacted by a legislative body and

        b) case law, or precedent, as determined by the courts in prior cases.

    Mr. Picard's definition of "net equity" is in conflict with the definition provided by SIPA.
        The term "net equity" means the dollar amount of the account ... of a customer to be determined by_

        (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer;...minus

(B) any indebtedness of such customer to the debtor on the filing date.
(SIPA of 1970, as amended through December 4, 1987 - 78fff (11) page 49.

Mr. Picard's definition of "net equity" is inconsistent with the Court order dated December 23, 2008 which directed him to satisfy customer claims in accordance with "the Debtor's books and records," absent proof that the customer did not have a "legitimate expectation" that the statement reflected his property.

The Second Circuit has recognized that :

> Each customers "net equity" is "the dollar amount of the account... to be determined by calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer to the debtor on the filing date.
> In re New Times Securities Services, Inc, 371 F. 3d 68, 72(2d Cir.2004); See also, In re Adler Coleman Clearing Corp., 247 B.R. 51, 62N. 2 (B.S.D.N.Y. 1999

In 1978 SIPA was amended to reflect the Congress' intent to protect a customer's "legitimate expectations." Congressman Robert Eckhardt commented,

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen, this is not always possible. Accordingly, [when this is not possible, customers] will receive cash based on the market value as of the filing date

SIPC, in a brief it submitted to the Second Circuit in 2006, assured the appeals court that its policy was to honor the legitimate expectations of investors. Mr. Picard position is in contradiction to statements made by Stephen Harbeck, President of SIPC, as well as SIPC's general counsel, Josephine Wang, both of whom supported the original intent of SIPA to protect the honest investor.

The Court must uphold the SIPA definition of "net equity." The Court must follow the precedent of the New Times case. The Court must deny Mr. Picard's efforts to re-write the law.

Dated: November 8, 2009
       Boynton Beach, Fl 33437

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS**, that Gustine Ganes (IRA), located at P.O. Box 740256, Boynton Beach, FL 33474 (hereinafter referred to as the "Assignor") in consideration of the payment of $188,882.33 to satisfy her claim for customer protection (the "Customer Claim", having been designated Claim Number 2983) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1ZR267, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor

against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $188,882.33 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 30, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for Assignor's executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, its officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may

have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having her customer claim re-determined in accordance with any such Court order.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
Gustine Ganes

Sworn and subscribed before me this
____ day of _____, 2009.

_____
Notary Public

