SIDLEY AUSTIN LLP
Alex R. Rovira
Sophia P. Mullen
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for Altai Capital Growth Fund PCC Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 08-01789 (BRL) |
| | : | |
| v. | : | SIPA Liquidation |
| | : | |
| | : | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------- X

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

--------------------------------------------------------X

## <u>OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM</u>

Altai Capital Growth Fund PCC Limited ("<u>Altai</u>" or the "<u>Claimant</u>") by its undersigned

counsel, hereby submits this objection (the "<u>Objection</u>") with respect to that certain Notice of

Determination dated December 8, 2009 (the "<u>Determination Notice</u>") by Irving Picard as trustee

(the "<u>Trustee</u>"), denying Altai's customer claim number 014964 filed with the Trustee on July 2,

2009 (the "<u>Customer Claim</u>"), and respectfully represents as follows:

## BACKGROUND

1.       On or about February 28, 2008, Altai, acting through intermediaries, invested EUR 1,000,000 in Defender (the "Initial Investment").  To effectuate the Initial Investment, Altai's custodian, Turicum Private Bank Ltd. ("Turicum"), instructed its correspondent bank, Lombard Odier Darier Hetsch ("Lombard Bank"), to purchase EUR 1,000,000 of Defender Series B1 Euro shares on its behalf.  A copy of the Investment Receipt is attached hereto as Exhibit A.  Lombard Bank, in turn, instructed its custodian, Citco Global Custody N.V. ("Citco"), to send an application form for the purchase of such Defender Series B1 Euro shares to Defender's custodian, HSBC.  A copy of the Application Form is attached hereto as Exhibit B.

2.       On or about November 27, 2008, Altai, acting through intermediaries, invested a further EUR 1,000,000 in Defender (the "Second Investment" and, together with the Initial Investment, the "Altai Investment").  To effectuate the Second Investment, Altai's custodian, Turicum, requested that its correspondent bank, Lombard Bank, purchase EUR 1,000,000 in Defender Series B1 Euro shares on its behalf.  A copy of this second Investment Receipt is attached hereto as Exhibit C.  Lombard Bank, in turn, instructed its custodian, Citco, to send an application form for the purchase of such additional Defender Series B1 Euro shares to Defender's custodian, HSBC.  A copy of this second Application Form is attached hereto as Exhibit D.

3.       The Altai Investment, which equals 1842.04326 shares in Defender, is held by Lombard Bank in Turicum's name for the benefit of Altai.  A copy of the Turicum Letter setting forth this relationship is attached hereto as Exhibit E.  Upon information and belief, Defender transferred the Altai Investment to Bernard L. Madoff Investment Securities, LLC ("BLMIS"), the debtor in the above-captioned Securities Investor Protection Act ("SIPA") proceeding.

4.      Following the transfer of the Altai Investment, BLMIS maintained an account on behalf of Defender (the "Account") for the benefit of, and on behalf of, Altai, pursuant to a customer relationship between Defender and BLMIS.  In the ordinary course of business, BLMIS received, acquired and/or held cash and/or securities for the purpose of entering into securities transactions from, and/or for the benefit of, Defender in the Account which was for the benefit of, and on behalf of, Altai.  BLMIS acted as investment manager with respect to the Account and was solely responsible for investment decisions in connection therewith.

5.      On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS pursuant to SIPA, 15 U.S.C. § 78aaa et seq.

6.      On December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee under SIPA.  See Docket No. 4.  Pursuant to SIPA, the Trustee was directed to oversee the liquidation of the assets of BLMIS and to process all claims against BLMIS.  15 U.S.C. § 78fff-1(a).

7.      By order of this Court dated December 23, 2008 (the "Procedures Order"), the Trustee was directed to disseminate notice and claim forms to all former BLMIS customers setting forth claim-filing deadlines.  See Docket No. 12.  The Procedures Order, among other things, also directed the Trustee to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore …."

8.      Prior to the claims bar date, and pursuant to the direction of the Court's Procedures Order, Altai timely filed its Customer Claim with the Trustee in the amount of

approximately $2,809,680.[1]  As set forth in the Determination Notice, the Trustee designated the

Customer Claim as Claim No. 014964.

9.        In the Determination Notice, the Trustee formally notified Altai that the Customer

Claim had been disallowed, setting forth the basis for such denial as follows:

> Based on a review of available books and records of BLMIS by the Trustee's
> staff, you did not have an account with BLMIS.  Because you did not have an
> account, you are not a customer of BLMIS under SIPA as that term is defined at
> 15 U.S.C. § 78*lll* (2).  Accordingly, your Claim for securities and/or a credit
> balance is **DENIED**.

A copy of the Trustee's Determination Notice is attached hereto as Exhibit F.

10.        Altai objects to the Trustee's above determination for the reasons set forth herein

and for such additional reasons as may be set forth by other respondents in similar circumstances

to Altai, and for the purposes of preserving any rights which may be recognized for persons who

made indirect investments in BLMIS through feeder funds.

## OBJECTION

11.        The Determination Notice fails to provide a sufficient legal or factual basis for the

"determination" set forth therein, notwithstanding the express requirement of the Procedures

Order to supply a reason for disallowance.  Rather, the Trustee simply states that Altai is not a

"customer" of BLMIS under SIPA, because it did not have a specifically identifiable account

recorded among BLMIS's "available books and records."  The Determination Notice, however,

relies on a flawed and nonexistent distinction between investors who had accounts directly with

BLMIS and investors who invested by means of intermediaries through feeder funds.  Indeed, a

plain reading of SIPA, the courts' interpretation of the statute, as well as Congressional intent

---

[1]        The value of all cash and/or securities received, acquired and/or held for or on behalf of Altai by BLMIS in
the Account is approximately $2,809,680.  This U.S. Dollar amount is the result of the conversion of EUR 2,000,000
at the prevailing exchange rate on June 30, 2009 of 1.4027 USD/EUR.

4

behind the statute, all clearly indicate that the absence of a direct investment relationship is not

fatal to a claim as a "customer."

12.    The statutory definition of "customer" is set forth in SIPA as:

> The term "customer" of a debtor means <u>any person</u> (including any person with whom the debtor deals as a principal or agent) <u>who has a claim on account of securities</u> received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term "customer" includes <u>any person who has a claim against the debtor arising out of sales or conversions of such securities</u>, and any person who has deposited cash with the debtor for purposes of purchasing such securities ....[2]

15 U.S.C. § 78lll(2) (emphasis added).

13.    Contrary to the Trustee's assertion, the foregoing language does not mandate that

the funds or securities be received by the debtor or deposited by the claimant directly.  Instead,

SIPA only requires that the claimant's claim be "on account of securities," "arise out of" sales or

conversions of securities, or result from depositing cash with the debtor for the purpose of

purchasing securities.  <u>See</u> <u>In re Primeline Sec. Corp.</u>, 295 F.3d 1100, 1107 (10th Cir. 2002)

("Whether a claimant deposited funds 'with the debtor' does not depend simply on to whom

claimants made their checks payable.  The relevant inquiry is whether the brokerage firm

actually received, acquired or possessed Claimants' property.") (citing <u>In re Old Naples</u>, 223

F.3d 1296 (11th Cir. 2000)); <u>S.E.C. v. Ambassador Church Fin. Dev. Group, Inc.</u>, 679 F.2d 608,

614 (6th Cir. 1982) ("[T]he mere act of entrusting … cash to the debtor for the purpose of

effecting securities transactions … triggers customer status ...."). <u>See also</u> <u>Rosenman Family,</u>

<u>LLC v. Picard</u>, 401 B.R. 629, 635 (S.D.N.Y. 2009) (recognizing that the plain language of

section 78lll(2) of SIPA defines "customer" as "any person who has deposited cash with the

debtor for the purpose of purchasing securities," and that accordingly, "the mere act of entrusting

---

[2]    The statute provides two enumerated exclusions from the definition, neither of which apply to Altai.

… cash to the debtor for the purpose of effecting securities transactions … triggers customer

status …") (citations omitted).

14.    The statute further provides that "any person who has a claim against the debtor

arising out of sales or conversions" of securities is entitled to "customer" status.  This broad

language extends statutory protection beyond those claimants who dealt directly with the debtor,

to any claimant with a claim generally "arising out of sales or conversions."  See, e.g., In re

Stratton Oakmont, Inc., 2003 WL 22698876, at *3 (S.D.N.Y. Nov. 14, 2003) (holding that the

debtor's conversion of the claimant's property brings the claimant within the SIPA definition of

"customer").

15.    As evidenced by the foregoing, the term "customer" under SIPA is a term of art,

and does not have its ordinary and customary meaning.  Arford v. Miller, 239 B.R. 698, 701

(S.D.N.Y. 1999), aff'd sub nom. In re Stratton Oakmont, 210 F.3d 420 (2d Cir. 2000).  It is to be

construed within the context of the definitional section of SIPA, and as interpreted by the courts,

both of which indicate that each investor – whether direct or indirect – constitutes a "customer"

under SIPA.

16.    Moreover, SIPA was enacted by Congress as remedial legislation.  "As such it

should be liberally construed to effect its purposes" of protecting the investments of customers of

broker-dealers and investment advisors.  In re First State Securities Corp., 34 B.R. 492, 496

(S.D. Fla. 1980).  The fundamental purpose of SIPA was to protect the public in the event that

the entities with whom they dealt went bankrupt, or were otherwise unable to satisfy their

customer agreements.  SEC v. S.J. Salmon & Co., Inc., 375 F. Supp. 867, 871 (S.D.N.Y. 1974)

("The principal purpose of the [Securities Investor Protection] Act was to protect investors

against financial losses arising from the insolvency of their brokers."); <u>SEC v. Schreiber Bosse &</u>
<u>Co., Inc.</u>, 368 F. Supp. 24 (N.D. Ohio 1973).

17.    Congressional intent is further clarified by the language of SIPA, which expressly
contemplates indirect investors as "customers" protected by the statute.  Specifically, section
78fff-3(a)(5) provides that:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net
> equity claim of any customer who is a broker or dealer or bank, <u>other than to the extent</u>
> <u>that it shall be established to the satisfaction of the trustee</u>, from the books and records of
> the debtor or from the books and records of a broker of dealer or bank, or otherwise, <u>that</u>
> <u>the net equity claim of such broker or dealer or bank against the debtor arose out of</u>
> <u>transactions for customers of such broker of dealer or bank</u> …, <u>in which event each such</u>
> <u>customer of such broker or dealer or bank shall be deemed a separate customer of the</u>
> <u>debtor</u>.

15 U.S.C. § 78fff-3(a)(5) (emphasis added).

18.    Under this provision, Congress provided that brokers, dealers and banks are not
themselves entitled to SIPC advances under SIPA with respect to claims relating to their
proprietary dealings with an insolvent debtor-broker.  However, recognizing the necessity to
protect the customers of such other brokers, dealers and banks, Congress sought to protect these
indirect customers by expressly including the customer protection of SIPC advances for
customers of brokers, dealers or banks who dealt with the debtor-broker not for their own
proprietary accounts, but instead, for the accounts of their customers.  Had Congress intended for
only a customer with a direct relationship with the debtor-broker to be protected under SIPA,
Congress would not have made an express provision for indirect customers of other brokers,
dealers and banks.  Thus, Congress clearly intended for indirect investors to fall within the scope
of "customers" under SIPA.  Altai is no different than this type of customer contemplated by
Congress – it is a customer of a feeder fund (just like a customer of another broker, dealer or

bank) which invested in BLMIS not for its own proprietary account, but for its customer's

account – and is entitled to protection accordingly.

19.     In addition, the primary purpose of SIPA has been and continues to be the

restoration of investor confidence.  Enacted in 1970 as an amendment to the Securities and

Exchange Act of 1934, SIPA was passed in order to provide a safety net for all investors who

placed their money with U.S. brokerage firms that later turned out to be engaged in fraudulent

activities or otherwise failed.  This intent is violated by denying relief to those investors who

indirectly invested with BLMIS.  Such indirect investors trusted the market and the Defendant,

just as direct investors did, and their losses are no less real merely because they invested in

BLMIS through feeder funds – the operative fact remains that their property was held and

controlled by BLMIS just the same.

## JOINDER

20.     Numerous responses have been filed on the same issue set forth herein.  To the

extent applicable, Altai adopts by reference the arguments of other claimants as if set forth in full

herein.

## CONCLUSION

21.     As demonstrated above, the Trustee's determination denying the Customer Claim

because Altai is "not a customer of BLMIS under SIPA" is both legally and factually flawed.  In

the present case, Altai can show that there was "actual receipt, acquisition or possession" of its

funds by BLMIS, and the fact that Altai indirectly deposited these funds with BLMIS does not

affect its treatment as a "customer" of BLMIS.  As such, Altai is entitled to receive the entirety

of its claim through SIPC advances under SIPA.

### RESERVATION OF RIGHTS

22.      Altai reserves the right to amend, alter, revise or supplement this Objection.  Any

failure to object on a particular procedural or substantive ground shall not be deemed a waiver of

any such rights, all of which are hereby reserved.


WHEREFORE, Altai respectfully requests that this Court deem the Customer Claim filed

by Altai allowed in full as a "customer" claim and thereby entitled to the rights and remedies as

such under SIPA, and grant such other and further relief as is just and proper.

Respectfully submitted,

Dated:  January 21, 2010                SIDLEY AUSTIN LLP
      New York, New York

/s/ Alex R. Rovira
Alex R. Rovira
Sophia P. Mullen
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5959

*Counsel for Altai Capital Growth Fund PCC
Limited*