**Hearing Date to be obtained from the Trustee**
**Objection Deadline extended to January 21, 2010 by Counsel for the Trustee**

ALSTON & BIRD LLP
Martin G. Bunin
Karl Geercken
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Aozora Bank Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

        v.

Bernard L. Madoff Investment Securities, LLC,

                Defendant.

------------------------------------------------------------------X
In re:

BERNARD L. MADOFF,

                Debtor.
------------------------------------------------------------------X

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

    Aozora Bank Ltd., ("Aozora," or the "Claimant"), by and through its undersigned attorneys, hereby submits its objection (the "Objection") to the Notices of Trustee's Determination of Claim Numbers 012847, 012848, 012849, 012850, and 012851 dated December 8, 2009 (collectively, the "Claim Denials"). In support of the Objection, Aozora respectfully submits as follows:

1.      On December 11, 2008 (the "Administration Date") a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA"), with respect to Bernard L. Madoff Investment Securities ("BLMIS" or the "Debtor"). Irving H. Picard was appointed as trustee (the "Trustee") under SIPA to liquidate the Debtor's assets.

2.      Prior to the claims bar date Aozora timely filed customer claims, copies of which are attached hereto as Exhibits 1-5, which the Trustee later designated as claim numbers 012847, 012848, 012849, 012850, and 012851 (each a "Claim" and collectively, the "Claims").

3.      As detailed therein, each of the Claims pertain to cash deposited by Aozora with so-called "feeder funds," which in turn was invested with BLMIS. Each of the claims was submitted for losses suffered solely by Aozora, and Aozora made no claims on behalf of any customer.

4.      As set forth in Exhibit 1, Aozora had an investment in the amount of $107,745,804.89 with Ascot Fund Limited ("Ascot"). It is Aozora's understanding that Ascot invested materially all of its capital with BLMIS, and Aozora therefore claimed $107,745,804.89 in losses.

5.      As set forth in Exhibit 2, Aozora had an investment in the amount of $67,341,885.77 with Ariel Fund Limited ("Ariel"). It is Aozora's understanding that Ariel was approximately 29.83% invested in BLMIS, and Aozora therefore claimed $20,088,084.53 in losses.

6.      As set forth in Exhibit 3, Aozora had an investment in the amount of $80,279,087 with Silver Creek Low Volume Strategies, Ltd. ("SC Low") and Silver Creek

Low Volume Strategies, Ltd. II ("SC Low II," together with SC Low, the "SC Low Funds"). It is Aozora's understanding that the SC Low Funds were approximately 1.2% invested in BLMIS, and Aozora therefore claimed $963,349 in losses.

7.    As set forth in Exhibit 4, Aozora had an investment in the amount of $22,093,936.69 with Centigrade Fund Unit Trust ("Centigrade"). It is Aozora's understanding that Centigrade was approximately 7.87% invested in the Ascot Fund, which in turn invested materially all of its capital with BLMIS, and Aozora therefore claimed $1,738,792.82 in losses.

8.    As set forth in Exhibit 5, Aozora had an investment in the amount of $21,063,385.90 with SS Security Yen Unit Trust (the "SS Security Fund"). It is Aozora's understanding that the SS Security Fund was approximately 2.41% invested in Ariel, which in turn was approximately 29.83% invested in BLMIS, and Aozora therefore claimed $151,425.31 in losses.

9.    On December 8, 2009, the Trustee sent substantially identical form Notices of the Trustee's Determination of Claim with respect to Aozora's Claims. The Claim Denials, none of which described the particular Aozora claim being denied, each stated:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is DENIED.

A copy of one of the form Claim Denials is attached hereto as Exhibit 6.

10.    Aozora objects to the Trustee's determinations and submits that it is a "customer" of BLMIS for purposes of, and is entitled to recover in, this SIPC proceeding on account of each of its claims.

## OBJECTION

11.    The Trustee's contention that Aozora is not a "customer" is contrary to the

plain language of SIPA.  There is no statutory basis for the artificial distinction drawn by

the Trustee between investors who had named accounts with BLMIS and investors, such as

Aozora, who invested by means of intermediaries.  Section 78lll(2) of SIPA defines the

term "customer."  This section states that:

> The term "customer" of a debtor means any person
> (including any person with whom the debtor deals as
> principal or agent) who has a claim on account of securities
> received, acquired, or held by the debtor in the ordinary
> course of its business as a broker or dealer from or for the
> securities accounts of such person for safekeeping, with a
> view to sale, to cover consummated sales, pursuant to
> purchases, as collateral security, or for purposes of effecting
> transfer.  The term "customer" includes any person who has
> a claim against the debtor arising out of sales or conversions
> of such securities, and any person who has deposited cash
> with the debtor for the purpose of purchasing securities ....

15 U.S.C. § 78lll(2).

12.    Clearly, there is no statutory requirement that a "customer" must have an

account directly with the debtor.  In fact, a claimant's status as a "customer" under SIPA

does not depend on the person or entity to whom he handed his cash or made his check

payable, or even where the funds were initially deposited. *In re Old Naples Secs., Inc.*, 223

F.3d 1296, 1302-03 (11th Cir. 2000).  Rather, customer status under the statute depends on

whether there was "actual receipt, acquisition or possession of the property of a claimant

by the brokerage firm under liquidation," such that the brokerage firm "acquired control

over all of the claimants' funds." *Id.* at 1302-04.  Indeed, "the mere act of entrusting . . .

cash to the debtor for the purpose of effecting securities transactions . . . triggers customer

-4-

status." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 401 B.R. 629, 635

(Bankr. S.D.N.Y. 2009) (internal quotations omitted).

13.    The Trustee's Claim Denials do not dispute the fact that BLMIS actually

received and acquired control over Aozora's property.  Thus, irrespective of the fact that

Aozora did not have a direct account with BLMIS, Aozora is a "customer" under the plain

definition of the term under SIPA. *See In re Primeline Sec. Corp.*, 295 F. 3d 1100, 1107

(10th Cir. 2002) ("SIPA does . . . protect claimants who try to attempt to invest through

their brokerage firm but are defrauded by dishonest brokers . . . If a claimant intended to

have the brokerage purchase securities on the claimant's behalf and reasonably followed

the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even

if the brokerage or its agents misappropriate the funds"); *Miller v. DeQuine (In re Stratton

Oakmont, Inc.)*, 2003 WL 22698876 at *3 (Bankr. S.D.N.Y. Nov. 14, 2003) ("Stratton

Oakmont's conversion of Claimants' property makes them customers within the meaning

of SIPA.").

14.    Furthermore, as explained by the Supreme Court, Congress enacted SIPA to

protect and restore investor confidence in the capital markets.  *See Securities Investor

Protection Corp. v. Bourbor*, 421 U.S. 412, 415 (1975).   Because SIPA is remedial

legislation, any ambiguity in the definition of "customer" "should be construed broadly to

effectuate its purposes." *Tcherepin v. Knight*, 389 U.S. 332, 336 (1967).   The broad

language of 15 U.S.C. § 78lll(2) does not limit the protected claimants to those who

directly dealt with the debtor, but affords protection to the broadest extent possible by

using the phrase "arising out of sales or conversions." *See, e.g., In re Stratton Oakmont,

Inc.*, 2003 WL 22698876, at *3 (holding that the debtor's conversion of the claimant's

property brings the claimant within the SIPA definition of "customer"). It cannot be disputed that BLMIS acquired control of Aozora's property through the "feeder funds" and subsequently converted Aozora's property. Accordingly, Aozora is entitled to protection as a customer under SIPA and the Claim Denials should be overruled.

## RESERVATION OF RIGHTS AND JOINDER

15.     Aozora reserves its rights to supplement or amend this Objection for any reason, including in the event that the Trustee modifies his reasons for denying the Claims.

16.     Numerous objections have been filed on the issues described above, and to the extent applicable, Aozora joins in and incorporates by reference the arguments of other similarly situated claimants.

17.     The execution and filing of this Opposition is not and shall not be deemed: (a) a waiver or release of the Claimant's rights against any entity or person liable for all or any part of the Claims asserted herein; (b) a consent by the Claimant to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving the Claimant; (c) a waiver of the right to withdraw the reference with respect to the subject matter of the Claims, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving the Claimant; (d) a waiver or release by the Claimant of any right to trial by jury, or a consent by the Claimant to a trial by jury, in this Court or any other court; (e) a waiver of any right to the subordination or recharacterization, in favor of the Claimant, of indebtedness or liens held by any creditors of the Debtor or any of its affiliates; (f) an election of remedies which waives or otherwise affects any other remedy; or (g) a waiver of the Claimant's rights to amend or supplement their Claims or this Objection.

-6-

WHEREFORE, Aozora respectfully requests that this Court (a) find that Aozora is a Customer as set forth in 15 U.S.C. § 78lll(2), and (b) direct that Aozora be granted relief in the liquidation proceeding to the same extent as direct investors in BLMIS.

Dated: January 21, 2010

ALSTON & BIRD LLP

Martin G. Bunin
Karl Geercken
90 Park Avenue
New York, New York 10016
212-210-9400
212-210-9444 (fax)
marty.bunin@alston.com
karl.geercken@alston.com

*Attorneys for Aozora Bank Ltd.*

-7-