# EXHIBIT A

## FORM OF AGREEMENT BETWEEN TRUSTEE AND THE LEVYS

EXECUTION VERSION

## AGREEMENT

This AGREEMENT, dated as of January 27, 2010, is made by and among IRVING H. PICARD, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA") of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and JEANNE LEVY-CHURCH and FRANCIS N. LEVY (collectively, the "Levys"), on the other hand (each of the Trustee and the Levys, a "Party").

## BACKGROUND

A. Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS)).

C. On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D. On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS.

E. Norman F. Levy ("Mr. Levy"), a New York City commercial real estate broker, began investing with BLMIS in the mid-1970's. Over the years, Mr. Levy invested a significant portion of his assets with BLMIS.

F. Prior to his death in September of 2005, Mr. Levy designated Madoff as an executor of his estate. As executor, Madoff was vested with power to make unilateral investment decisions regarding the estate's non-real estate assets.

G. After Mr. Levy's death, acting as the executor, Madoff transferred to BLMIS from the estate more than $250,000,000.

H. A number of Mr. Levy's family members, family trusts, and charitable trusts established by the family were also BLMIS customers. Their BLMIS client numbers and account names are listed in Attachment A ("Levy BLMIS Accounts"), which is intended to be part of this Agreement. If any accounts were inadvertently omitted from Attachment A, the Levys and the Trustee agree to act in good faith to revise Attachment A to include such accounts. For the avoidance of doubt, the term Levy BLMIS Accounts does not include any accounts held by Jeff Hinte ("Mr. Hinte").

I. During the six years prior to the Filing Date, approximately $305,000,000 was withdrawn from the Levy BLMIS Accounts in excess of the amounts that were deposited into them. Of this amount, the Betty & Norman F. Levy Foundation, a charitable organization, withdrew approximately $84,000,000 in excess of the amount that it had deposited into its account, and all of those funds were donated to charitable causes.

J. Jeanne Levy-Church and Francis N. Levy (together, the "Levys") are Mr. Levy's children. The Levys were customers of BLMIS, and they maintained the customer accounts listed in their names on Attachment A. Before the Madoff fraud was discovered, both were heavily involved in philanthropic work.

K. Zeno F. Levy ("Zeno") and Titus R. Levy ("Titus") are the children of Francis N. Levy and his wife, Hallie D. Cohen. BLMIS accounts were established for Titus and Zeno under the New York Uniform Gifts to Minors Act ("UGMA Accounts"). Zeno is now 25 years old, and Titus is 21 years old.

L. In the spring of 2009, the Levys initiated discussions with the Trustee. The Levys were among the first group of former BLMIS customers to approach and seek resolution with the Trustee. After their initial meeting, the Parties entered into good faith discussions. At all times, the Levys shared information and documents about themselves and about the Levy BLMIS Accounts with the Trustee and his counsel. The Levys have been cooperative and, from an early point in the discussions, indicated a desire to resolve their situation fairly. Their cooperation has sped resolution and minimized Trustee expenses.

M. The Trustee has asserted that the Levys are liable to the BLMIS estate under 11 U.S.C. §§ 544(b), 547, 548 and 550 (collectively, the "Avoiding Powers Claims"), and may also be liable under the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), for the Levys' net withdrawals of fictitious profits within the statutory period.

N. The Levys dispute the legal and factual bases of liability for some of the withdrawals. In particular, the Levys contend: that they do not bear any liability for their good-faith withdrawals made prior to two years before the effective date of this Agreement; that withdrawals from their Levy BLMIS Accounts were comprised of invested principal and investment earnings to which they are legally entitled as opposed to fictitious profits; and that the account balances for the Levy BLMIS Accounts were real as of December 31, 1991.

Nevertheless, the Levys wish to settle all disputes with the Trustee, and they do so without admitting any liability.

O.  Zeno and Titus have asserted that they are both entitled to allowance of a customer claim in the BLMIS liquidation proceeding in an amount equal to the capital invested in their UGMA Accounts under the provisions of SIPA or to the benefit of SIPC advances under section 9 of SIPA in the SIPA Proceeding upon compliance with the applicable provisions of SIPA and the Bankruptcy Code. Both Zeno and Titus filed customer claims under SIPA prior to the July 2, 2009 bar date (the "Zeno and Titus Claims").

P.  The Trustee, on the one hand, and the Levys, on the other hand, wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and the Levys agree:

## AGREEMENT

1.  <u>The Levys' Agreement to Bankruptcy Court Jurisdiction</u>. The Levys agree that the agreements with BLMIS that they each had in connection with the Levy BLMIS Accounts and their respective communications and trading activities with respect to the Levy BLMIS Accounts, submit them to the jurisdiction of the Bankruptcy Court for the purpose of the SIPA Proceeding and any Avoiding Power Claims that the Trustee may bring against them under section 544, 547, 548 and/or 550 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that prior to Bankruptcy Court approval of this Agreement, the Levys shall not be deemed, by their having executed this Agreement, to have (a) consented to the jurisdiction of the Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Levys, or (b) waived or released their right to trial by jury.

2.  <u>Payment to Trustee</u>. The Levys shall pay, by wire transfer by the Closing (as defined in paragraph 7), to the Trustee the sum of $220,000,000 in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS estate against the Levys.

3.  <u>Withdrawal of Zeno and Titus Claims</u>. As part of the consideration to the Trustee hereunder, the Zeno and Titus Claims shall be deemed withdrawn with prejudice upon the occurrence of the Closing.

4.  <u>Release by Trustee; Covenant Not to Sue</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, upon the payment of all amounts set forth in paragraph 2 hereof and his receipt of a Release Subscription (in the form annexed hereto) for each of the Levy Releasees (as defined below), the Trustee will be deemed to have (a) released, remised and forever discharged each of the people and entities listed on Attachment B (collectively, "Levy Releasees") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages

3

(including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee against any of the Levy Releasees and that are based on, arise out of or relate in any way to the affairs of BLMIS or the Levy BLMIS Accounts and not in any other context or capacity and (b) granted a covenant not to sue to (i) any person related by blood or marriage as of the Closing to any of the Levy Releasees (other than Mr. Hinte) and (ii) any entity in which any of the Levy Releasees held or hold, as of or prior to the Closing, a financial interest, in the case of (i) and (ii) for Avoiding Powers Claims but only to the extent that such person or entity is an immediate or mediate transferee of any of the Levy Releasees under section 550(b) of the Bankruptcy Code; provided, however, that the foregoing covenant not to sue shall not apply to any Avoiding Powers Claims based on a transfer of funds that does not constitute an immediate or mediate transfer of funds from a Levy Releasee to the entity. For the avoidance of doubt, the term Levy Releasees does not include Mr. Hinte and nothing herein shall release or be deemed to be a release by the Trustee of Mr. Hinte and, further, nothing herein shall be or be deemed to be a covenant not to sue by the Trustee of Mr. Hinte for any liability he may have to the Trustee.

5. Release by Levys. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Levy Releasees, by having an authorized representative sign a Release Subscription for each Levy Releasee, hereby releases, acquits and absolutely discharges the Trustee and all his agents, BLMIS and its estate, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS.

6. Cooperation. Upon reasonable request of the Trustee, the Levys agree, on behalf of themselves and to the extent they may bind each of the other holders of the Levy BLMIS Accounts, to reasonably cooperate with the Trustee, in connection with any efforts to recover funds invested in BLMIS.

7. Closing. There shall be a closing ("Closing") within 30 days after the date on which this Agreement becomes effective and binding on the Parties under paragraph 8, on a date agreed by the Parties, at the offices of Trustee's counsel in New York, N.Y. At the Closing, (a) the Levys shall make, or shall have made, the payment required under paragraph 2 above; (b) the releases contained in paragraphs 4 and 5 shall become effective without any further action by any of the Parties; and (c) the Zeno and Titus Claims shall be deemed withdrawn as provided in paragraph 3.

8. Bankruptcy Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing. The form of the approval order shall be subject to

4

the Levys' reasonable approval. The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement. The Trustee shall provide the Levys with a draft of any motion to the Bankruptcy Court for approval of this Agreement, which shall be subject to the Levys' reasonable approval. If this Agreement does not become effective, (a) this Agreement (other than this paragraph and paragraphs 18 and 19) shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 18 and 19) shall be null and void, and (c) neither the Trustee nor the Levys may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the SIPA Proceedings, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff and (d) the Levys shall not be deemed, on account of their having executed this Agreement, to have consented to the jurisdiction of the Bankruptcy Court or released their right to trial by jury.

9. Authority. The Levys, as well as the authorized representatives of each Levy Releasee, represent and warrant to the Trustee as of the date hereof that each of them has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under, this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

10. Further Assurances. The Trustee and the Levys shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

11. Entire Agreement. This Agreement and any confidentiality agreement between the Trustee and the Levys constitute the entire agreement and understanding between and among the Parties and supersede all prior agreements, representations and understandings concerning the subject matter hereof.

12. Amendments, Waiver. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

13. Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

14. Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

15. No Third Party Beneficiary. Except as expressly provided in paragraphs 6 and 7, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

16. No Admission of Liability or Wrongdoing. By entering into this Agreement, the Levys do not admit and they expressly deny that they owe any liability to the Trustee other than provided for herein, or to any other person or that they engaged in any wrongdoing.

5

17. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

18. <u>Exclusive Jurisdiction</u>. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

19. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

20. <u>Counterparts; Electronic Copy of Signatures</u>. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature. The Levy Releasees may evidence their execution of the Release Subscription by delivery to the Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

21. <u>Termination of BLMIS Account Agreements with BLMIS</u>. All agreements between holders of the Levy BLMIS Accounts and BLMIS are terminated as of the Closing.

22. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

| If to the Trustee, c/o: | If to the Levys, c/o: |
|---|---|
| Marc Hirschfield | Ronald L. Olson and Cary B. Lerman |
| Baker & Hostetler LLP | Munger, Tolles & Olson LLP |
| 45 Rockefeller Center, Suite 1100 | 355 S. Grand Ave., 35th Floor |
| New York, NY 10111 | Los Angeles, CA 90071 |
| F: (212) 589-4201 | F: (213) 683-9100 |
| E: mhirschfield@bakerlaw.com | E: ron.olson@mto.com, cary.lerman@mto.com |

[*Signature page follows*]

6

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

FRANCIS N. LEVY

_____

JEANNE LEVY-CHURCH

_____

## RELEASE SUBSCRIPTION

The undersigned is a "Levy Releasee" as defined in the Agreement dated as of January 27, 2010, by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Jeanne Levy-Church and Francis N. Levy (the "Levys"), on the other hand. For and in consideration of the Trustee's release of the undersigned under paragraph 4 of the Agreement, the undersigned subscribes to the release set forth in paragraph 5 of the Agreement (and only to such release) with the same force and effect as if the undersigned were a party to the Agreement. By signing this Subscription, the undersigned does not become a Party to the Agreement and is not undertaking any rights or obligations under any other provisions of the Agreement, except that paragraphs 18, 19, 20, 21, and 22 of the Agreement apply to this Subscription as though such paragraphs were a part of this Subscription.

Dated _____, 201_.

_____

By: _____
    Name:
    Title:

ATTACHMENT A: LEVY BLMIS ACCOUNTS

| Account Number | Account Name |
| --- | --- |
| 1L0027 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO ATTN: PAUL KONIGSBERG |
| 1L0028 | NORMAN F LEVY SPECIAL KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0086 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0088 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0099 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0101 | NORMAN LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0171 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0175 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0236 | ESTATE OF NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0300 | ESTATE OF NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0308 | ESTATE OF NORMAN LEVY-RE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0024 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0078 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0084 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0090 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0102 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0169 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0179 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0026 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1L0075 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1L0085 | JEANNE LEVY-HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0089 | JEANNE LEVY-HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0103 | JEANNE LEVY CHURCH C/O PAUL KONIGSBERG |

| | |
|---|---|
| 1L0170 | JEANNE LEVY HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0178 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1C1061 | HALLIE D COHEN |
| 1F0074 | FRANJEAN 39TH STREET REALTY CO  C/O KONIGSBERG WOLF & CO ATTN: PAUL KONIGSBERG |
| 1L0025 | TRUST M-B FRANCIS N LEVY  U/I/D 07/24/91 JEFFREY LEVY-HINTE TRUSTEE |
| 1L0029 | TITUS RAY LEVY UGMA FRANCIS LEVY CUSTODIAN C/O PAUL KONIGSBERG |
| 1L0030 | ZENO FRANCIS LEVY UGMA FRANCIS LEVY CUSTODIAN C/O PAUL KONIGSBERG |
| 1L0302 | GST EXEMPT TRUST U/W/O NORMAN F LEVY, FRANCIS N LEVY, JEANNE LEVY-CHURCH, BERNARD L MADOFF TRUSTEES |
| 1L0305 | CHARITABLE LEAD ANNUITY TRUST U/W/O NORMAN F LEVY  FRANCES N LEVY, JEANNE LEVY-CHURCH, BERNARD L MADOFF TRUSTEES |
| 1L0313 | THE ZENO F LEVY TRUST JEFFREY LEVY-HINTE TRUSTEE |
| 1L0314 | THE TITUS R LEVY TRUST JEFFREY LEVY-HINTE TRUSTEE |
| 1P0131 | THE PHILOCTETES CENTER INC |
| 1L0023 | THE BETTY AND NORMAN F LEVY  FOUNDATION INC C/O PAUL KONIGSBERG |
| 1L0073 | NORMAN F LEVY  REVOCABLE TRUST U/I/D 4/1/93 C/O ALBERT MALTZ,TRUSTEE |
| 1L0083 | LEVY FASHION CENTER ASSOCIATES LLC C/O PAUL KONIGSBERG |
| 1L0168 | TRUST M-B FRANCIS N LEVY U/I/D 7/24/91 C/O PAUL KONIGSBERG |

## ATTACHMENT B: LEVY RELEASEES

1. The Estate of Norman F. Levy
2. Francis N. Levy
3. Jeanne Levy-Church
4. Ken Levy-Church
5. Hallie D. Cohen
6. Zeno F. Levy
7. Titus R. Levy
8. The Zeno F. Levy Trust
9. The Titus R. Levy Trust
10. Zeno Francis Levy UGMA
11. Titus Ray Levy UGMA
12. The Betty & Norman F. Levy Foundation Inc.
13. The Philoctetes Center, Inc.
14. The Charitable Lead Annuity Trust u/w/o Norman F. Levy, et al.
15. GST Exempt Trust u/w/o Norman F. Levy, et al.
16. The Francis N. Levy Mutual Benefit Trust
17. FranJean 39th Street Realty Co.
18. Francis N. Levy & Jean D. Levy, JV
19. Levy Fashion Center Associates LLC