# Exhibit A

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

December 23, 2009

Marc D. Powers
direct dial: 212.589.4216
mpowers@bakerlaw.com

**VIA FEDERAL EXPRESS**

CITCO Global Custody N.V.
c/o Lewis N. Brown, Esq.
Gilbride Heller & Brown
One Biscayne Tower, 15th Floor
2 South Biscayne Boulevard
Miami, Florida 33131

Re: Liquidation of Bernard L. Madoff Investment Securities LLC Account
No.: 1M0232

Dear Mr. Brown:

Baker & Hostetler LLP represents Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78lll ("SIPA") and Bernard L. Madoff ("Madoff") pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). The Proceeding was commenced on December 11, 2008 ("Filing Date").

Based on the Trustee's review of records, we understand that CITCO Global Custody N.V. received funds from the Maxam Absolute Return Fund Ltd., a portion or all of which were funds that originated with BLMIS, were transferred to the Maxam Absolute Return Fund L.P., and in turn transferred to the Maxam Absolute Return Fund Ltd. (the "Funds"). The enclosed subpoena, submitted under Rule 2004 of the Federal Rules of Bankruptcy Procedure, requests documents regarding such Funds. Please contact me at your earliest convenience to discuss timing and priority for the production of documents.

Furthermore, please be aware that it is the Trustee's position that any payments or transfers from BLMIS or its affiliates, whether direct or indirect, represent "customer property" under SIPA and therefore property of BLMIS by virtue of Section 78fff-2(c)(3) of SIPA. The term "customer property" means "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of [BLMIS] or for the securities accounts of a customer, and the proceeds of any such property transferred by [BLMIS], including property unlawfully converted." 15 U.S.C. § 78lll(4). Accordingly, we request that CITCO Global Custody

December 23, 2009
Page 2

N.V. refrain from engaging in or permitting any transfers or dispositions of the Funds and other monies received from BLMIS without an order from the Bankruptcy Court.

Please note that the Trustee's investigation is continuing and the Trustee reserves all rights to amend or supplement the positions taken hereunder.

Sincerely yours,

Marc D. Powers

Enclosure

cc: Maryanne Stanganelli, Esq.

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u> District of <u>FLORIDA</u>

Securities Investor Protection Corporation,

    Plaintiff,

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* <u>Adv. Pro. No. 08-01789 BRL</u>

v.

Bernard L. Madoff Investment Securities LLC,

    Defendant.

To:
CITCO Global Custody N.V.
c/o Lewis N. Brown
Gilbride Heller & Brown
One Biscayne Tower, 15th Floor
2 South Biscayne Boulevard
Miami, Florida 33131

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.: 212-589-4200<br>Attn: Brian Esser, Esq. | January 13, 2010 at 1:00 pm |

| ISSUING OFFICER SIGNATURE AND TITLE<br><br>Attorney | DATE<br><br>December 23, 2009 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Marc D. Powers, Esq. Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A
## TO SUBPOENA TO CITCO GLOBAL CUSTODY N.V.

### A.  DEFINITIONS AND INSTRUCTIONS

1. The terms "CITCO Global Custody," "you" and "your" mean and include CITCO Global Custody N.V. and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2. The term "Maxam Absolute Return Fund LP" means and includes Maxam Absolute Return Fund LP and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

3. The term "Maxam Absolute Return Fund Limited" means and includes Maxam Absolute Return Fund Limited and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

4. The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC and Cohmad Securities Corporation; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff.

5. The term "account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value.

6. The term "Fund Account" means any account into which you or any of your customers received funds, whether by wire transfer or check, from Madoff and/or Maxam Absolute Return Fund LP and/or Maxam Absolute Return Fund Limited.

7. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets and drafts of electronic spreadsheets. A draft or non-identical copy is a separate document within the meaning of this term.

8. As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations,

meetings and discussions by telephone or through telephonic messages; and (c) e-mail, text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

9. As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

10. The following rules of construction apply to this Subpoena:

   (a)   "Any" and "all" shall be deemed to include the other;

   (b)   the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

   (c)   the terms "all" and "each" shall be construed as "all and each"; and

   (d)   the use of the singular form of any word includes the plural and vice versa.

11. Except as otherwise noted, this Subpoena requires the production of documents created in or referencing the time period beginning at the inception of CITCO Global Custody's relationship with Madoff and continuing until the present (the "Relevant Period"). For purposes of this definition, the term "relationship" means either a direct relationship with Madoff, or an indirect relationship with Madoff through a third party.

12. Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

13. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

14. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

15. Documents attached to each other should not be separated; separate documents should not be attached to each other.

16. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

17. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor

Protection Corporation Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

18. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

### B. DOCUMENTS TO BE PRODUCED

1. All documents concerning any Fund Account, including:

    (a) monthly statements, including account numbers;

    (b) present and historical account balance information;

    (c) incoming and outgoing wire transfer records;

    (d) copies of checks, both deposited and drawn;

    (e) records reflecting cash activity;

    (f) account opening documents;

    (g) administrative or custodial agreements relating to any Fund Account; and

    (h) account closing documents.

2. To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between the Fund Accounts.

3. To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between Maxam Absolute Return Fund Limited and the Fund Accounts.

4. All documents that reflect or relate to any communications and/or correspondence pertaining to any Fund Account.

5. All documents, agreements and/or contracts including, but not limited to, line of credit agreements, letters of credit, promissory notes and security agreements related to any lines of credit/letters of credit maintained by or for the benefit of any of the Fund Accounts or holders of the Fund Accounts.

6. All documents reflecting or relating to any review or investigation performed by CITCO Global Custody pertaining to any Fund Account, including but not limited to documents relating to Madoff, Maxam Absolute Return Fund LP, and/or Maxam Absolute Return Fund Limited.

3

7. All documents reflecting or relating to due diligence reports, reviews, investigations, analyses, or studies on Madoff conducted by third parties relating to Madoff or any Madoff-related funds.

8. To the extent not provided pursuant to the foregoing requests, documents sufficient to identify the beneficial owners and/or account holders of any Fund Account, including the identity, location, and contact name of any beneficial owners and/or account holders.

9. To the extent not provided pursuant to the foregoing requests, documents reflecting or relating to the investment products offered by the Fund Account to its beneficial owners, including but not limited to prospectuses and private placement memoranda.

### C. HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4. Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5. Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.    Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content.  In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

### ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3. The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4. The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5. The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6. Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7. Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8. If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9. Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
January 12, 2009

/s/ BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE