UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>   - against -<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

## OBJECTION OF HERALD FUND SPC TO TRUSTEE'S DETERMINATION OF CLAIM (CLAIM NO. 011307)

Herald Fund SPC (the "Fund") hereby objects to the Notice of Trustee's Determination of Claim issued by Irving H. Picard, Trustee for the Liquidation of the Business of Bernard L. Madoff Investment Securities LLC (the "Trustee") on December 8, 2009, which denied the Fund's Customer Claim, designated as Claim Number 011307 (the "Claim"), in its entirety, and which is attached hereto as Exhibit 1.

## BACKGROUND

1.     The Fund is an exempted segregated portfolio company incorporated with limited liability under the laws of the Cayman Islands on March 24, 2004. The Fund's registered office is located at P.O. Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. The Fund has established a segregated portfolio, Herald USA Segregated Portfolio One (the "Segregated Portfolio"). The Segregated Portfolio has two classes of shares, a U.S. Dollar class and a Euro class. For the avoidance of doubt, any reference to the Fund herein should be understood as the Fund acting for and on behalf of the Segregated Portfolio.

2.     This Objection incorporates the Customer Claim Form, Addendum, and Exhibits A through H thereto, which is attached hereto as Exhibit 2.

3.     On March 29, 2004, the Fund entered into a Custodian Agreement with Bank of Bermuda (Luxembourg) S.A. (which has since changed its name to HSBC Securities Services (Luxembourg) S.A. and is referred to herein as the "Custodian" or "HSBC") (the "Custodian Agreement") whereby the Custodian contracted to act as the Fund's custodian to hold its assets

and, among other things, to maintain all records and documents pertaining to the Fund's investments. Pursuant to the Custodian Agreement, the Custodian is empowered to act without instruction from the Fund in appointing sub-custodians and, accordingly, possessed discretionary authority to choose and contract with its own sub-custodians. It is the Fund's understanding that the Custodian appointed Bernard L. Madoff Investment Securities LLC ("BLMIS") as Sub-Custodian. A copy of the Custodian Agreement is attached as Exhibit 2(B).

4. On March 25, 2004, account number 1FR109 was opened by the Custodian at BLMIS for the benefit of the Fund entitled "Bank of Bermuda (Luxembourg) S.A. Special Custody Account for Herald Fund SPC - Herald USA." It is the Fund's understanding that the Custodian established this as a custody account with BLMIS serving as Sub-Custodian (i.e., custodian for HSBC) to hold assets matching those that the Custodian held for the Fund. Thereafter, and pursuant to a Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Trading Authorization"), an authorization was given to Bernard L. Madoff to execute securities transactions on behalf of the Fund on the account opened by HSBC with BLMIS. A copy of the Trading Authorization is attached as Exhibit 2(C).

5. Accordingly, it is the Fund's position that HSBC is a proper party (1) to have filed the Claim; and (2) to make any Objection to the Trustee's determination. Notwithstanding the Fund's position, which it stated to HSBC, HSBC informed the Fund that it would not make a claim for the benefit of the Fund and had no intention of doing so. (See May 22, 2009 letter from HSBC, attached as Exhibit 2(D).) HSBC restated this shortly before the Fund filed its Claim. (See June 5, 2009 letter from HSBC, attached to this Addendum as Exhibit 2(E).) Thus, the Fund was forced to file the Claim with respect to account number 1FR109 to protect itself and its shareholders, and it is forced now to object to the Trustee's determination for the same reason. The fact that the Fund made this Claim and is now objecting to the Trustee's determination of the Claim shall not compromise any positions or defenses that the Fund has or may have, and the Fund explicitly reserves those positions or defenses and all rights as against HSBC (and any other person or entity).

6. The final BLMIS statement for the month of November 2008 indicates that, as of November 30, 2008, the market value of the securities in account 1FR109 was

$1,951,174,724.18.  Such amounts are reflected in the valuation reports provided by HSBC as Custodian to the Fund.  The statement further indicates that, as of November 30, 2008, account 1FR109 held $69,321,000.00 in long option positions, and negative $126,429,590.00 in short option positions, for a net loss of $57,108,590.00.  A copy of the November 30, 2008, BLMIS statement is attached to this Addendum as Exhibit 2(G).  Thus, the Fund originally made the Claim for $1,894,066,134.18.[1]

7.      The Claim was timely filed with the Trustee on June 22, 2009, and the Trustee has not alleged otherwise.

8.      On December 8, 2009, the Trustee denied the Fund's Claim, stating only:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS.  Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll*(2).  Accordingly, your Claim for securities and/or a credit balance is DENIED.  (Exhibit 1.)

9.      The Trustee did not sufficiently explain why the Fund was determined not to be a "customer" pursuant to the Securities Investor Protection Act ("SIPA").  The Trustee also provided no other ground for the denial of the Fund's Claim and accordingly is barred from presenting any ground for denial beyond his assertion that the Fund is not a customer of BLMIS.[2]  (*See* Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, Dec. 23, 2008, attached hereto as Exhibit 3, at 6 (setting forth procedures for resolution of controverted claims in which the Trustee's only opportunity to provide the reason for disallowance of a claim is in the initial mailed notification

---

[1]    The Fund made a claim in the alternative for $1,205,203,590.19 plus 308,242,771.42€ in the event that the Fund's claim in these proceedings is limited to net cash deposits in BLMIS over time.  A spreadsheet detailing these figures (the "Net Cash Deposit Spreadsheet") is attached hereto as Exhibit 2(H).  The Fund also included as part of its claim the amounts that it is due from the Securities Investor Protection Corporation pursuant to SIPA and any amounts that it may pay into the BLMIS estate.

[2]    In particular, the Trustee did not object to the Claim under 11 U.S.C. § 502(d).  Accordingly, the Fund requests that Count Five (Objection to Herald Fund's SIPA Claim) of the Trustee's Second Amended Complaint in Picard v. Herald Fund SPC, et al., Adv. Pro. No. 09-1359(BRL), be dismissed as waived.

of determination); Trustee's Ex-parte Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, Dec. 21, 2008, attached hereto as Exhibit 4   (without exhibits), at 8 (requesting same procedures for resolution of controverted claims).)  *See also* Fed. R. Bankr. P. 3007(a) (describing objection to allowance of claim).

10.   The Fund objects to and disagrees with the Trustee's determination of its Claim and hereby requests a hearing on the Claim before Bankruptcy Judge Burton R. Lifland as provided on page 2 of the Notice of Trustee's Determination of Claim.  (Exhibit 1.)  The Fund timely filed this Objection and its supporting materials in further support of its Claim.[3]

### GROUNDS FOR OBJECTION

11.   ***First***, the Court should overrule the denial of the Claim because it completely contradicts the Trustee's own statements regarding the Fund in the adversary proceeding before this Court and thus is not supportable.  Specifically, despite the Trustee's current assertion that the Fund did not have an account with BLMIS, he alleges in Picard v. Herald Fund SPC, et al. that the Fund did "***maintain an account with BLMIS***" and was a "*client* of the IA business." (*See* Second Am. Compl., Picard v. Herald Fund SPC, et al., Adv. Pro. No. 09-1359(BRL), at ¶ 29 (emphasis added), attached hereto as Exhibit 5.)  Similarly, he alleges  that the Fund was a "creditor" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code pursuant to 15 U.S.C. § 78fff-2(c)(3).  (Id. at ¶ 47.)  Under that section, "creditor" means an ***entity that has a claim*** against the debtor or the estate.  11 U.S.C. § 101(10).  Yet this is precisely what the Trustee contends the Fund does not have now.

12. The Court should not permit the Trustee to take such contradictory positions merely to serve his own litigation strategy.  *See In re Rebeor*, 89 B.R. 314, 320 (Bankr. N.D.N.Y. 1988) ("While the Court encourages cautious lawyering in furtherance of a client's interests, it cannot

---

[3]    The Trustee and the Fund agreed to an extension of time beyond the thirty days specified in the notice for the Fund to submit its objection or other response to the Trustee's denial of claim.  (*See* Exhibit 6.)

advocate the simultaneous assertion of contradictory positions which results in an unfair litigation advantage."); *cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *id.* at 749-50 (purpose of judicial estoppel doctrine is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment" and to prevent "improper use of judicial machinery" (quotations and citations omitted)).  Either the Trustee has knowingly taken these opposing positions, which should not be countenanced, or his various agents are unaware of each other's actions, which throws his entire operation into question.  Neither reason is sufficient to allow both positions to stand concurrently.

13. In particular, the Trustee should not be permitted to deny the Fund's Claim on the basis that the Fund is not a customer of BLMIS and had no BLMIS account, when he alleges just the opposite in his attempt to recover assets from the Fund.  Either the Fund had an account at BLMIS and was a customer, in which case its Claim must be allowed, or it was not, in which case the Trustee's clawback claims against it — and, at the very least, his contradictory allegations — should be dismissed.

14. **Second**, the Trustee's bald assertion that there was no account on behalf of the Fund and the Fund was not a "customer," without any facts, evidence, or explanation supporting that determination, fails to provide an adequate legal basis for denial of the Fund's Claim.  In particular, the Trustee failed to comply with the general rule that any determination of a claim set forth, at a minimum, relevant facts and legal theories upon which the objection and determination are based.  "[A]n objection to a claim should meet the [pleading] standards of an answer.  It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."  COLLIER ON BANKRUPTCY at ¶ 3007.01(3).  The Trustee's denial did none of those things. *See also In re Forte*, 234 B.R. 607, 617 (Bankr. E.D.N.Y. 1999) ("The general rule in a bankruptcy case is that a filed proof of claim is statutorily entitled to *prima facie* validity, and the objecting party

bears the initial burden of producing sufficient evidence to rebut the claimant's *prima facie* case."); *In re G. Marine Diesel Corp.*, 155 B.R. 851, 853 (E.D.N.Y. 1993) ("Because a properly executed and filed claim is deemed allowed, the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case."); *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) (noting that the objecting party must "go forward and produce sufficient evidence to rebut the claimant's *prima facie* case."). This Court's December 23, 2008 order similarly required the Trustee to notify the Fund of his determination with "a reason therefor," which he did not do with any specificity. (*See* <u>Exhibit 3</u> at 6.) In addition, the Trustee did not rebut the Fund's Claim as provided for by Section 502(a) of the Bankruptcy Code,[4] and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.[5] To the extent that the Trustee contends that facts exist to support his denial, the Fund respectfully requests that the Court order the Trustee to provide those details.

15.   ***Third***, because the Trustee gave no sufficient basis for his assertion that the Fund is not a customer, the Fund must guess as to the reasons therefore. Without further guidance, the Fund presumes that the basis for this assertion was that HSBC as Custodian opened and held the account and is the "customer."[6]   HSBC, however, refused to take any action to recover as a customer of BLMIS, despite being the Fund's Custodian, and it was due to HSBC's refusal that the Fund took steps to protect its own interests and those of its shareholders by filing the Claim. It is now inequitable to deny the Fund's Claim in its entirety when the circumstances that forced an improper party (under the Trustee's determination) to file the Claim were outside the Fund's control.

---

[4]   11 U.S.C. § 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest…objects."   SIPA incorporates Section 502(a) of the Bankruptcy Code. *See* 15 U.S.C. § 78fff(b).

[5]   Rule 3001(f) states that "[a] proof of claim filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

[6]   The Fund reserves the right to address any other reason for the Trustee's assertion that it did not have an account and was not a customer of BLMIS, if it becomes apparent that Trustee's determination was based on such other reason.

16.    *Fourth*, The Notice of the Trustee's Determination of Claim fails to comply with the December 23, 2008 Order of the Court directing the Trustee "to satisfy customer's claims in accordance with the Debtor's books and records."  (*See* <u>Exhibit 3</u> at 5).  The final BLMIS statement issued with regard to account 1FR109 showed a total account balance of $1,894,066,134.18.  (<u>Exhibit 2(G)</u>.)  This statement is the best evidence of the value of the assets owed to the Fund.  Accordingly, the Fund's Claim should be allowed in full.

## RESERVATION OF RIGHTS

17.    The Fund reserves and does not waive any and all rights of its investors, including but not limited to their right to make their own claims in this liquidation in the event that such investors are deemed "customers" of BLMIS.  Additionally, the Fund reserves and does not waive any and all rights at law and equity and all rights and defenses with regard to <u>Picard v. Herald Fund SPC, et al.</u>, Adv. Pro. No. 09-1359(BRL), or any other action that the Trustee may bring against it pursuant to SIPA, the U.S. Bankruptcy Code, and/or the New York Debtor & Creditor Law.

18.    The Fund included as part of its Claim the amounts, if any, that it may pay into the estate of BLMIS and/or Bernard L. Madoff based on a theory of preference, fraudulent conveyance, and/or any other avoidance or similar action, and the Fund expressly reserves the right to amend its Claim should the Trustee recover from the Fund through any such action by settlement, judgment, or otherwise.

19.    The Fund reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

20.    Finally, the Fund reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground shall not be construed as a waiver of the Fund's right to object on any additional grounds.

## RELIEF REQUESTED

21. For the reasons stated herein, the Fund's Claim should be allowed in its entirety.


Dated: February 4, 2010                          Respectfully submitted,

                                                 /s/ Laura B. Kadetsky
                                                 Jay P. Lefkowitz, P.C.
                                                 Joseph Serino, Jr.
                                                 Laura B. Kadetsky
                                                 KIRKLAND & ELLIS LLP
                                                 601 Lexington Avenue
                                                 New York, New York  10022
                                                 (212) 446-4800
                                                 jay.lefkowitz@kirkland.com
                                                 joseph.serino@kirkland.com
                                                 laura.kadetsky@kirkland.com

                                                 *Attorneys for Herald Fund SPC*

# EXHIBIT 1

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation
**DECEMBER 11, 2008[1]**

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
LUXEMBOURG  L-2014
CAYMAN ISLANDS

Dear FOR HERALD FUND SPC-HERALD USA:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 011307:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_Irving Picard_

---

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  KIRKLAND & ELLIS LLP
601 LEXINGTON AVENUE
NEW YORK, NY  10022

# EXHIBIT 2

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____ +1 345 949 8066 _____

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number:  1FR109
HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG,
CAYMAN ISLANDS

(If incorrect, please change)

NOTE:  BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.  Claim for money balances as of **December 11, 2008** :
    a.    The Broker owes me a Credit (Cr.) Balance of      $ N/A*
    b.    I owe the Broker a Debit (Dr.) Balance of      $ N/A

502180406

1

*Please see the attached Addendum to Customer Claim form for further explanation.

c.    If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."
If you wish to make a payment, **it must be enclosed**
**with this claim form.**    $ N/A

d.    If balance is zero, insert "None."    NONE

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X* | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | Number of Shares or Face Amount of Bonds | |
| See attached November 30, 2008 Statement from BMIS, attached to the Addendum to this Customer Claim Form as Exhibit G. | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406

2

* Please see the attached Addendum to Customer Claim Form for further explanation.

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x* | |

502180406

3

*Please see paragraph 4 of the attached Addendum to this Customer Claim form for further information.

9.   Have you or any member of your family
     ever filed a claim under the Securities
     Investor Protection Act of 1970? if
     so, give name of that broker.                                              x _____

     Please list the full name and address of anyone assisting you in the
     preparation of this claim form:  Kirkland & Ellis LLP, 601 Lexington
     Avenue, New York NY 10022

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.


IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.


THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.

Date _17th June 2009_      Signature _____ ( F. MUGNAI - Director )
                                                   ( HERALD FUND SPC )
Date _____       Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)


This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201


502180406                          4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| - against - | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ADDENDUM TO THE BERNARD L. MADOFF INVESTMENT SECURITIES LLC CUSTOMER CLAIM FORM OF HERALD FUND SPC (ACCOUNT # 1-FR109)

Herald Fund SPC hereby attaches this addendum in further support of its claim in the liquidation of Bernard L. Madoff Investment Securities LLC ("BMIS") pursuant to the Securities Investor Protection Act, 15 U.S.C. § 78aaa-111, et seq., ("SIPA") and the December 23, 2008, Order Approving the Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims, and Providing Other Relief:

1.      Herald Fund SPC (the "Fund") is an exempted segregated portfolio company incorporated with limited liability under the laws of the Cayman Islands on March 24, 2004. The Fund's registered office is located at PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. The Fund has established a segregated portfolio, Herald USA Segregated Portfolio One (the "Segregated Portfolio"). The Segregated Portfolio has two classes of shares, a U.S. Dollar class and a Euro class. For the avoidance of doubt, any reference to the Fund in the claim form and addendum should be understood as the Fund acting for and on behalf of the Segregated Portfolio.

2.      This customer claim form is submitted and signed by Dr. Franco Mugnai, Director of the Fund. Communications with the Fund may be directed to Dr. Mugnai's attention at PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. Additionally, communications may be directed to Jay P. Lefkowitz of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, (212) 446-4800, whom the Fund has retained for the limited purpose of assisting the Fund with the filing of its claim in these liquidation proceedings.

3.     The following documents on which this Addendum is based are attached hereto as Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G, and Exhibit H, respectively, and are incorporated herein by reference: (a) proof of Dr. Mugnai's authority to execute this claim form and Addendum; (b) the Custodian Agreement, as defined herein; (c) the Trading Authorization Limited to Purchases and Sales of Securities and Options with Bernard L. Madoff; (d) a May 22, 2009 letter from HSBC, as defined herein, to the Fund; (e) a June 5, 2009 letter from HSBC to the Fund; (f) a March 10, 2009 email from the Fund's legal counsel to HSBC; (g) the November 2008 statement from BMIS for Account 1-FR109; and (h) a Net Cash Deposit Spreadsheet, as defined herein.

4.     On March 29, 2004, the Fund entered into a Custodian Agreement with Bank of Bermuda (Luxembourg) S.A. (which has since changed its name to HSBC Securities Services (Luxembourg) S.A. and is referred to herein as the "Custodian" or "HSBC") (the "Custodian Agreement") whereby the Custodian contracted to act as the Fund's custodian to hold its assets and, among other things, to maintain all records and documents pertaining to the Fund's investments. Pursuant to the Custodian Agreement, the Custodian is empowered to act without instruction from the Fund in appointing sub-custodians and, accordingly, possessed discretionary authority to choose and contract with its own sub-custodians. It is the Fund's understanding that the Custodian appointed BMIS as Sub-Custodian. A copy of the Custodian Agreement is attached to this Addendum as Exhibit B. The Fund's contact at HSBC is Mr. Saverio Fiorino. Communications with Mr Fiorino can be directed to HSBC Securities Services (Luxembourg) S.A., 16, boulevard d'Avranches, L-1160, Luxembourg, +352 404646 233.

5.     On March 25, 2004, account number 1FR109 was opened by the Custodian at BMIS for the benefit of the Fund entitled "Bank of Bermuda (Luxembourg) S.A. Special Custody Account for Herald Fund SPC - Herald USA." It is the Fund's understanding that the Custodian established this as a custody account with BMIS serving as Sub-Custodian to hold assets that the Custodian holds for the Fund, and, in this capacity, BMIS corresponded with the Custodian in its capacity as the Sub-Custodian. After opening the account at BMIS, the Custodian entrusted substantially all of the Fund's assets to BMIS. Thereafter, and pursuant to a Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Trading

-2-

Authorization"), an authorization was given to Bernard L. Madoff to execute securities transactions on behalf of the Fund on the account opened by HSBC with BMIS. A copy of the Trading Authorization is attached to this Addendum as Exhibit C.

6.    Accordingly, it is the Fund's position that HSBC is the proper party to file this claim on behalf of the Fund. Indeed, the SIPC customer claim form was addressed and delivered to HSBC and not to the Fund, thus supporting the Fund's position in this regard. (*See* May 22, 2009 letter from HSBC, attached to this Addendum as Exhibit D.) Notwithstanding the Fund's position, which it stated to HSBC, HSBC informed the Fund that it would not make the filing for the benefit of the Fund and had no intention of doing so. (*See id.*) HSBC recently restated this position. (*See* June 5, 2009 letter from HSBC, attached to this Addendum as Exhibit E.) Thus, the Fund is forced to make this filing on its own behalf in respect of the Segregated Portfolio to protect itself and its shareholders. The fact that the Fund is making this claim on its own behalf in respect of the Segregated Portfolio shall not compromise any positions or defenses that the Fund has or may have, and the Fund explicitly reserves those positions or defenses and all rights as against HSBC (and any other person or entity) with respect to this claim. (*See* March 10, 2009 email from the Fund's legal counsel to HSBC, attached to this Addendum as Exhibit F.)

7.    At the start of each month, BMIS sent a statement to the Custodian detailing the investment activity for the previous month, which securities were bought and sold, the value of the individual securities, the value of any options purchased, and the total value of the Fund's portfolio. BMIS did not send any such statement to the Fund.

8.    Although the Segregated Portfolio has both a U.S. Dollar Class and Euro Class, the BMIS statements received by the Fund's Custodian reflected account holdings and balances in U.S. Dollars only. The BMIS statement for the month of November 2008 indicates that, as of November 30, 2008, the market value of the Fund's securities was $1,951,174,724.18. The statement further indicates that as of November 30, 2008, the Fund held $69,321,000.00 in long option positions, and negative $126,429,590.00 in short option positions, for a net loss of $57,108,590.00. A copy of the November 30, 2008, BMIS statement is attached to this Addendum as Exhibit G. Thus, the Fund makes a claim for $1,894,066,134.18.

9.    The Segregated Portfolio's U.S. Dollar Class, through its Custodian, deposited $1,851,380,807.72 with and redeemed $646,177,217.53 from BMIS over the history of the Fund, with a net remaining principal investment of $1,205,203,590.19. Likewise, the Segregated Portfolio's Euro class, through its Custodian, deposited 602,445,210.24€ with and redeemed 294,202,438.77€ from BMIS, with a net remaining principal investment of 308,242,771.42€. A spreadsheet detailing these figures (the "Net Cash Deposit Spreadsheet") is attached hereto as Exhibit H. Thus, in the event of any final determination that the Fund's claim in these proceedings is limited to its net cash deposits in BMIS over time, the Fund hereby makes this alternative claim for $1,205,203,590.19 plus 308,242,771.42€.

10.    The Fund also includes as part of its claim here the amounts, if any, that it may pay into the Estate of BMIS and/or Bernard L. Madoff based on a theory of preference, fraudulent conveyance, and/or any other avoidance or similar action, and the Fund expressly reserves the right to amend this customer claim form should the Trustee recover from the Fund through any such action by settlement, judgment, or otherwise.

11.    Finally, the Fund includes as part of its claim here the amounts that it is due from the Securities Investor Protection Corporation pursuant to SIPA.

12.    As a direct result of the fraud perpetrated by Bernard L. Madoff and BMIS, the conduct of HSBC as Custodian (against whom the Fund expressly reserves its rights for the return of the Fund's assets as is currently being litigated in the courts of Luxembourg), and the actions taken by other parties to be identified, the Fund may have lost the entirety of its investment portfolio and, by extension, each of the Fund's investors may have lost substantially their entire investment in the Fund. The Fund submits this customer claim form and supporting materials in an effort to recoup its ratable share of BMIS customer property and any additional monies to which it is entitled pursuant to SIPA. The Fund reserves and does not waive any and all rights of its investors, including but not limited to the right to make their own claims in this liquidation in the event that such investors are deemed "customers" of BMIS at a later date. Additionally, the Fund reserves and does not waive any and all rights at law and equity and all rights and defenses with regard to any action that the Trustee may bring against it pursuant to SIPA, the U.S. Bankruptcy Code, and/or the New York Debtor & Creditor Law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 17ᵗʰ day of June 2009.          By: _____

                                            Dr. Franco Mugnai
                                            Director, Herald Fund SPC
                                            P.O. Box 309
                                            Ugland House
                                            Grand Cayman, KY1 - 1104
                                            Cayman Islands

EXHIBIT A

**HERALD FUND SPC**

(the "**Company**")

WRITTEN RESOLUTIONS OF THE BOARD OF DIRECTORS OF THE COMPANY

**1      SIPC filing**

1.1     It is noted that, in relation to Herald USA Segregated Portfolio One (the "**Fund**"), a segregated portfolio of the Company, the directors of the Company (the "**Directors**") have been considering whether to file a claim with the Securities Investor Protection Corporation ("**SIPC**") liquidation of Bernard L. Madoff Investment Securities LLC (the "**Claim**"). These resolutions apply only with respect to the Fund.

1.2     Pursuant to the resolution dated 09 June 2009, the Directors have now considered the draft SIPC Customer Claim Form, Addendum and accompany exhibits (as detailed therein).

1.3     Accordingly, it is resolved:

(a)     THAT the Claim Form, Addendum and accompany exhibits (as detailed therein) in the form reviewed by the Directors be approved and that Dr Franco Mugnai, a Director of the Company, be and is hereby authorised to sign and approve the final terms thereof for and on behalf of the Company.

(b)     THAT the Company hereby approves, ratifies and confirms in all respects all actions taken by the Directors, officers, employees and agents (including legal counsel) of the Company in connection with the subject matter of this resolution.

_____                    _____
Franco Mugnai                                      Friedrich Pfeffer
Date: 17 June 2009                                 Date: 17 June 2009

**HERALD FUND SPC**

(the "Company")

WRITTEN RESOLUTIONS OF THE BOARD OF DIRECTORS OF THE COMPANY

**1    SIPC filing**

1.1    It is noted that, in relation to Herald USA Segregated Portfolio One (the **"Fund"**), a segregated portfolio of the Company, the directors of the Company (the **"Directors"**) have been considering whether to file a claim with the Securities Investor Protection Corporation (**"SIPC"**) liquidation of Bernard L. Madoff Investment Securities LLC (the **"Claim"**). These resolutions apply only with respect to the Fund.

1.2    Pursuant to the resolution dated 09 June 2009, the Directors have now considered the draft SIPC Customer Claim Form, Addendum and accompany exhibits (as detailed therein).

1.3    Accordingly, it is resolved:

   (a)    **THAT** the Claim Form, Addendum and accompany exhibits (as detailed therein) in the form reviewed by the Directors be approved and that Dr Franco Mugnai, a Director of the Company, be and is hereby authorised to sign and approve the final terms thereof for and on behalf of the Company.

   (b)    **THAT** the Company hereby approves, ratifies and confirms in all respects all actions taken by the Directors, officers, employees and agents (including legal counsel) of the Company in connection with the subject matter of this resolution.

_____          _____
Franco Mugnai                                          Friedrich Pfeffer
Date: 17 June 2009                                    Date: 17 June 2009

EXHIBIT B

DATED          29ᵗʰ March ,          2004

BETWEEN:

**HERALD FUND SPC in respect of HERALD USA
SEGREGATED PORTFOLIO ONE**
(a segregated portfolio of Herald Fund SPC)

- and -

**BANK OF BERMUDA (LUXEMBOURG) S.A.**

CUSTODIAN AGREEMENT

Bank of Bermuda (Luxembourg) S.A.
13 rue Goethe
L-1637 Luxembourg

**LUX 403**

## CUSTODIAN AGREEMENT

**THIS AGREEMENT** is made this 29th day of March Two Thousand and Four
B E T W E E N
**HERALD FUND SPC in respect of Herald USA Segregated Portfolio One** (a segregated portfolio of Herald Fund SPC) an exempted segregated portfolio company incorporated in and under the laws of the Cayman Islands whose registered office is at M & C Corporate Services Limited, PO Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands, British West Indies (hereinafter called the "Company") of the first part and
**BANK OF BERMUDA (LUXEMBOURG) S.A.** whose registered office is at 13, rue Goethe, Luxembourg (hereinafter called the "Custodian") of the second part.

W H E R E A S:-

(A)    The Company has as its principal object to carry on business as a segregated portfolio company and is desirous of being provided with custodian services exclusively for the Fund being the first segregated portfolio of the Company.

(B)    The Manager has been or is about to be appointed by the Fund to administer its affairs.

(C)    The Board of Directors of the Herald Fund SPC on behalf of the Fund has selected the Custodian to serve as its custodian and the Custodian is willing to provide the Fund with such custodial services on the terms and conditions hereinafter contained.

NOW IT IS HEREBY AGREED as follows:-

1.    **INTERPRETATION**

1.1    In this Agreement and in all amendments hereto the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Articles" shall mean the Memorandum and Articles of Association of the Herald Fund SPC for the time being in force.

"Fund" shall mean Herald USA Segregated Portfolio One (a segregated portfolio of Herald Fund SPC).

"Manager" shall mean   Herald Asset Management Limited or such other person as may from time to time be appointed Manager by the Fund.

"Proper Instructions" shall mean signed written instructions or cabled, telexed, facsimile or electronically transmitted instructions in respect of any of the matters referred to in this Agreement signed or purported to be signed (except in the case of electronically transmitted instructions) by one or more directors of the Company or the Manager on behalf of the Fund or any other person or persons duly authorised to sign by the board of directors of the Company on behalf of the Fund and in the case of electronically transmitted instructions in

accordance with such authentication procedures as may be agreed by the Custodian, the Company and the Manager from time to time. A certified copy of the resolution of the board of directors of the Company or the Manager shall be conclusive evidence of the authority of any such person to act on behalf of the Fund until the Custodian is in receipt of written notice to the contrary.

"Prospectus" shall mean the prospectus, explanatory memorandum, offering circular or such other document issued from time to time with respect to the offer of shares of the Fund.

"Securities" shall mean listed and unlisted equity and equity related securities including convertible bonds and warrants; shares or units in collective investment schemes; debt securities including government and corporate issues and warrants or options thereon; or rights to acquire any of the foregoing.

1.2    Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Articles PROVIDED THAT any alteration or amendment of the Articles shall not be effective for the purposes of this Agreement unless the Custodian shall have assented thereto.

1.3    Unless the context otherwise requires words importing the singular number shall include the plural and vice versa, words importing masculine gender shall include the feminine and words importing persons shall include firms and companies and vice versa.

1.4    The division of this Agreement into sections, clauses and sub-clauses and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation hereof.

## 2.    APPOINTMENT OF CUSTODIAN

The Company HEREBY APPOINTS the Custodian to be and the Custodian HEREBY AGREES to act as custodian of the Fund in accordance with the Articles and the terms and conditions hereinafter contained from the date hereof. The Company on behalf of the Fund agrees to deliver to the Custodian all Securities and cash owned by it, and all payments of income, payments of principal or capital distributions received by it with respect to the Securities.

## 3.    NAMES, TITLES AND SIGNATURES

3.1    Forthwith after execution of this Agreement the Company on behalf of the Fund will designate and certify to the Custodian the names and signatures of the persons authorised to give Proper Instructions hereunder to the Custodian and shall deliver or procure the delivery to the Custodian of a certified copy of a resolution of the board of directors of the Company containing any such authority and a certified copy of the Articles.

3.2    The Company shall promptly certify to the Custodian any changes that may be made from time to time in the persons so authorised.



## 4.    DUTIES OF THE COMPANY

4.1    The Company shall provide the Custodian with any amendments to the Articles and Prospectus.

4.2    The Company shall promptly deliver at the Custodian's request a schedule of cash and Securities comprised in the investment portfolio of the Fund as at the date of the latest valuation of net assets of the Fund, showing the type and amount of each investment and its value determined in accordance with the provisions of the Articles and the Prospectus and detailing all purchases and sales performed since the date of the last such schedule and such schedule shall be certified as complete and correct by a responsible officer of the Company.

4.3    The Company shall procure that all sums representing subscription monies for shares are paid to the Custodian for the account of the Fund upon issue.

4.4    The Company shall promptly deliver to the Custodian any management letter prepared by the auditor of the Fund.

## 5.    RECEIPT AND DISBURSEMENT OF CASH

5.1    The Custodian shall open and maintain a separate bank account or bank accounts in its books in the name of the Fund and, if requested by the Company and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of the Fund with such bank or banks and in such place or places as may from time to time be agreed between it and the Fund. The Custodian shall hold in such bank account or bank accounts, subject to the provisions hereof, all cash received by it from or for the account of the Fund. The Custodian shall make or procure the making of payments of cash out of such account or accounts on behalf of the Fund only:-

(a)    upon the purchase of Securities for the account of the Fund and, where market practices permit, the delivery of such Securities to or to the order of the Custodian or anyone nominated by the Custodian in accordance with Clause 9 or in proper form for transfer;

(b)    for the redemption of shares of the Fund pursuant to the Articles;

(c)    for the payment of interest and dividends by the Fund or the payment by the Fund of taxes, management, investment advisory, custodian, secretarial and registrar and subscription and redemption agents fees or other operating expenses (including, without limitation thereto, fees for legal, accounting and auditing services, directors' remuneration, brokerage and commissions);

(d)    for payments in connection with the conversion, exchange or surrender of securities owned or subscribed for on behalf of the Fund held by or to be delivered to the Custodian;

(e)   for the transfer of cash from one bank account as aforesaid to another bank account as aforesaid or for deposit;

(f)   for payments in connection with insuring Securities or in providing for the safekeeping thereof otherwise than in the vault of the Custodian; and

(g)   for payment of interest and payment of principal on all borrowings as permitted by the Articles and Prospectus;

(h)   for payments in respect of initial or variation margin requirements relative to the operation of any accounts with brokers or other intermediaries;

(i)   for payments in connection with any stock lending activities; and

(j)   for other proper corporate purposes.

Before making any such payment the Custodian shall receive (and may rely upon), in the case of a payment permitted under the terms of items (a) to (i) of this sub-clause Proper Instructions directing such payment, stating that it is for a purpose permitted under the terms of one of such items, naming the person or persons to whom such payment is to be made and specifying the amount of, and the time by which, such payment is to be made and such other information as may be appropriate to allow the Custodian to effect the relevant payment in proper form, or, in the case of payment for a purpose permitted under the terms of item (j) of this sub-clause a copy of a resolution of the board of directors or of a committee of the board of directors duly authorised certified by two directors of the Company setting forth the purpose for which such payment is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom such payment is to be made stating the amount of, and the time by which, such payment is to be made and stating all relevant information as aforesaid.

5.2   The Custodian is hereby authorised to endorse and collect all cheques, drafts or other orders for the payment of money received by the Custodian for the account of the Fund.

5.3   In connection with any transaction involving Securities held by or to be acquired for the Fund, the Custodian may in its discretion (by automatic process or otherwise):-

(a)   credit the Fund on the contractual settlement date with the proceeds of any sale or exchange of Securities and may on or before the contractual settlement date transfer the relevant Securities to a separate custody account awaiting delivery; and

(b)   debit the Fund on the contractual settlement date with the purchase price of Securities purchased or acquired for the Fund and may credit the Fund on or before the contractual settlement date with the relevant Securities pending receipt of such Securities.

The Company hereby acknowledges that these procedures are of a strictly administrative nature and do not amount to an agreement by the Custodian to make loans and/or Securities available to the Fund. The Custodian is authorised to reverse any such credit or debit referred to in this sub-clause.

5.4    In respect of any transaction for which the Custodian determines not to credit the Fund on the contractual settlement date, the proceeds from the sale or exchange of Securities will be credited to the Fund as soon as practical after such proceeds are received and Securities acquired will be credited on the date of receipt of such Securities by the Custodian.

6.    RECEIPT OF SECURITIES

6.1    Except as provided in sub-clause 6.2 hereof, the Custodian shall record and hold in a separate account in its books all Securities received by it from time to time and shall arrange for all Securities to be deposited in the Custodian's vault or otherwise held by or to the order of the Custodian as it may think proper for the purpose of providing for the safekeeping thereof. Any expenses of whatever nature incurred by the Custodian in providing safe custody (other than in the vault of the Custodian) or in the settlement of securities transactions or the collection of dividends, interest or any other rights attaching to the Securities shall be payable by the Fund.

6.2    Upon receipt of Proper Instructions, the Custodian shall open accounts with brokers, money managers or other intermediaries either in its own name on behalf of the Fund or in the name of the Company or the Fund  and shall make such arrangements regarding trading authorisations and other forms of authority in respect of such accounts as it deems advisable.  The Custodian shall not be responsible for the safekeeping of Securities or cash deposited with or remaining in any such accounts and shall not be liable for any loss resulting from the liquidation, bankruptcy or insolvency of such broker or intermediary.

7.    TRANSFER OF SECURITIES AND OTHER FUNCTIONS

7.1    The Custodian shall transfer, exchange or deliver in the required form and manner Securities held by it hereunder only:-

  (a) upon sales of such Securities for the account of the Fund and, where market practices permit, receipt by the Custodian of payment therefor;

  (b) when such Securities are called, redeemed or retired or otherwise become payable;

  (c) for delivery to any broker selling any such Securities in accordance with "street delivery" custom;

  (d) in exchange for or upon conversion into other Securities alone or other Securities and cash pursuant to any plan or merger, consolidation, reorganisation, recapitalisation or readjustment or otherwise;

-5-



(e)    upon conversion of such Securities pursuant to their terms into other Securities;

(f)    upon exercise of subscription, purchase or other similar rights represented by such Securities;

(g)    for the purpose of exchanging interim receipts or temporary securities for definitive securities;

(h)    for the purpose of redeeming in kind shares of the Fund;

(i)    for collecting all income and other payments with respect to Securities;

(j)    in connection with stock lending transactions entered into for the account of the Fund; and

(k)    for other proper corporate purposes.

Except as provided in Clause 8, before making any such transfer, exchange or delivery the Custodian shall receive (and may rely upon) in the case of a matter permitted under the terms of items (a) to (j) of this sub-clause Proper Instructions directing such transfer, exchange or delivery, indicating the Securities in question, stating all relevant information to allow the Custodian to effect in the proper form and manner, as the case may be, such transfer, exchange or delivery and stating that it is for a purpose permitted under the terms of one of such items or, in the case of a transfer, exchange or delivery permitted under the terms of item (k) of this sub-clause a copy of a resolution of the board of directors or a committee of the board of directors duly authorised certified by two directors of the Fund specifying the Securities in question, setting forth the purpose for which such transfer, exchange or delivery is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom transfer, exchange or delivery of such Securities shall be made and stating all relevant information as aforesaid.

7.2    Upon receipt of Proper Instructions, the Custodian shall:

(a)    receive and retain confirmations or other documents evidencing the purchase or writing of an option by the Fund; and

(b)    deposit and maintain, either physically or by book entries, adequate Securities, cash or other assets in separate accounts in connection with such option; and

(c)    pay, release and/or transfer such Securities in accordance with a notice or other written communication evidencing the expiration, termination or exercise of such option furnished by the securities or option exchange on which such option is traded or such other organisation, party, broker or dealer as may be responsible for handling such options transactions.

7.3    Upon receipt of Proper Instructions, the Custodian shall:

(a)    receive and retain confirmations or other documents evidencing the purchase or sale of a futures contract or an option on a futures contract by the Fund; and



(b)    deposit and maintain in a segregated account for the benefit of any futures commission merchant, or pay to such futures commission merchant, Securities, cash or other assets designated by the Fund as initial, maintenance or variation "margin" deposits intended to secure the Fund's performance of its obligations under any futures contracts purchased or sold or any options on futures contracts written or purchased by the Fund, in accordance with the provisions of any agreement or agreements among the Fund, the Custodian and such futures commission merchant, designed to comply with the rules of any relevant regulatory body and/or any contract market, or any similar organisation or organisations, regarding such margin deposits; and

(c)    pay, release and/or transfer such Securities into or out of margin accounts in accordance with applicable agreements or rules.

7.4    Upon receipt of Proper Instructions, the Custodian shall deliver Securities to lenders or their agents or otherwise establish segregated accounts as collateral for borrowings effected by the Company on behalf of the Fund, but only against receipt of the borrowed amounts.

7.5    Upon receipt of Proper Instructions, the Custodian shall enter into foreign exchange contracts or options to purchase and sell foreign currencies for spot and future delivery on behalf of the Fund. The Custodian shall be responsible for documenting the transaction with and instructing the broker or financial counterparty, for cash transfers and for the maintenance of proper records with respect thereto.

7.6    Upon receipt of Proper Instructions, the Custodian shall establish and maintain on its books a segregated account or accounts for and on behalf of the Fund, into which account or accounts may be transferred cash and/or Securities or other assets of the Fund, including Securities maintained by the Custodian in a book-entry system or foreign depository, said account to be maintained for such purposes as set forth in such Proper Instructions.

## 8.    THE CUSTODIAN'S ACTS WITHOUT INSTRUCTIONS

Unless and until the Custodian receives Proper Instructions to the contrary, the Custodian shall:-

(a)    present for payment all Securities which are called, redeemed or retired or otherwise become payable and all coupons and other income items held by it for the account of the Fund which call for payment upon presentation;

(b)    hold for the account of the Fund hereunder all stock dividends, rights and similar securities issued with respect to any Securities held by it hereunder; and

(c)    exchange interim receipts or temporary securities for definitive securities.

## 9.    REGISTRATION OF SECURITIES

9.1    The Custodian shall register all Securities in respect of which registration shall be necessary in order to perfect the transfer thereof or title thereto as soon as practicable after receipt of the



necessary documents by the Custodian, in the name of the Custodian or its nominee or in such other name as the Custodian deems proper as provided in this clause. The Custodian shall hold the Securities either

    (a)    by physical possession of the certificates or other instruments representing the Securities in registered or bearer form, including inter alia broker's receipts or confirmation for futures contracts, options or similar investments, or

    (b)    in book entry form in a depository or clearing system (including Euroclear, Clearstream and Depository Trust Company) (each a "Securities System").

The Custodian shall identify Securities held by it hereunder as being held for the account of the Fund and shall require each agent, sub-custodian or delegate (referred to in Clause 15.2) to identify Securities or other investments held by such agent, sub-custodian or delegate as being held by it, as custodian or fiduciary, for the account of the Fund or the Custodian. Any expenses of whatever nature incurred by the Custodian in effecting such registration shall be payable by the Fund.

9.2    The Company shall from time to time furnish to the Custodian appropriate instruments to enable the Custodian to hold or deliver in proper form for transfer or to register as provided in sub-clause 9.1 of this Clause any Securities belonging to the Fund.

9.3    The Custodian shall keep or cause to be kept such books, records and statements as may be necessary to give a complete record of all cash and Securities held and transactions carried out by it on behalf of the Fund and shall permit the Fund and its duly authorised agent(s) or delegate(s) to inspect such books, records and statements at any time during normal business hours on giving reasonable notice to the Custodian.

## 10.    VOTING AND OTHER ACTION

10.1    The Custodian shall deliver, or cause to be delivered, to the Company copies of all notices, proxies and proxy-soliciting materials received by it or its nominee or agent appointed hereunder in relation to any of the Securities held by any of them for the account of the Fund. The Custodian shall not, and shall procure that no nominee of the Custodian shall, vote in respect of any of the Securities held by any of them for the account of the Fund, except in accordance with Proper Instructions. The Custodian shall promptly deliver, or cause to be delivered, to the Company all other documents and payments received by it or its nominee or agent affecting or relating to the Securities held by it or its nominee or agent.

10.2    The Company shall not and shall procure that the Manager shall not exercise its powers to borrow without prior notification to the Custodian.



10.3    The Company shall not and shall procure that the Manager shall not enter into underwriting or sub-underwriting contracts in relation to the subscription or purchase of Securities without prior notification to the Custodian and all commissions and fees payable under such contracts and all Securities acquired thereby shall form part of the assets of the Fund.

10.4    The Custodian shall take no action with regard to any subscription and other rights issued with respect to Securities held by the Custodian Provided that the Custodian will notify the Company of such subscription or other rights and will undertake to act upon Proper Instructions received within a reasonable time prior to the expiration of such rights.

## 11.    TAXES

11.1    The Company out of the assets of the Fund shall pay or reimburse the Custodian from time to time on demand for any transfer taxes payable upon transfers, exchanges or deliveries of Securities made hereunder.

11.2    The Custodian shall execute such ownership and other certificates and affidavits as may be requested by Proper Instructions from time to time for fiscal, tax and other purposes in connection with Securities held by it under this Agreement and shall make such applications and reports as may be requested by Proper Instructions from time to time to any competent authorities in order to apply for or secure any tax or other privileges and benefits to which the Fund is or may be entitled in connection with such Securities. The Custodian shall be entitled to refuse to execute such ownership and other certificates and affidavits referred to above if, in the opinion of the Custodian, personal liability may be incurred by the Custodian pursuant to such execution.

## 12.    BANKING FACILITIES

12.1    During the continuance of its appointment, the Custodian or any affiliated company of the Custodian shall provide banking facilities for the Fund and, where any cash is placed on deposit with the Custodian or any affiliated company of the Custodian in their capacity as a banker, interest shall be allowed thereon in accordance with normal banking practice and as previously agreed with the Company in respect of the Fund, but subject thereto their shall be no further liability to pay interest on any cash.

12.2    In the event that the Company in respect of the Fund shall make any arrangements for borrowing or overdraft facilities with the Custodian or any affiliated company of the Custodian, such company shall be entitled to retain for its own use and benefit all profits and advantages which may be derived therefrom.



12.3    In the event that the Company in respect of the Fund incurs an unauthorised overdraft with the Custodian or any affiliated company of the Custodian or if, as a result of settlement delays, electronic payment failures or other similar circumstances, a credit facility is made available to the Fund without completion of the customary credit documents, the Custodian shall have a lien over all assets of the Fund held in any account whatsoever by or to the order of the Custodian and the Custodian shall be entitled to set-off any and all claims which it or any affiliate of the Custodian has on the Fund against any counterclaim of the Fund on the Custodian, in accordance with the provisions of Clause 20 hereof.

## 13.    DEALING BY CUSTODIAN

13.1    Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from becoming the owner of shares in the Fund and holding, disposing or otherwise dealing with the same rights which it would have had if the Custodian were not a party to this Agreement; and the Custodian or any affiliated company of the Custodian may buy, hold and deal in any Securities upon its individual account or for the accounts of its own customers notwithstanding that such Securities or similar Securities may be held by or for the account of the Fund.

13.2    Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from contracting or entering into any financial, banking or other transactions with the Company or any shareholder of the Company and the Custodian or any affiliated company of the Custodian may be interested in any such contract or transaction and shall not be accountable for any profit arising therefrom.

## 14.    REMUNERATION OF THE CUSTODIAN

14.1    The Custodian shall be paid by way of remuneration for its services pursuant to this Agreement fees at such rates and at such times as may be agreed from time to time between the Company in respect of the Fund and the Custodian.

14.2    The Fund will reimburse the Custodian in addition to the fees referred to in sub-Clause 14.1 of this Clause for all out-of-pocket expenses properly incurred by the Custodian in carrying out its duties hereunder.

## 15.    CONCERNING THE CUSTODIAN

15.1    The Custodian shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for costs and liabilities by the Fund and if the Fund requires the Custodian as custodian to take any action which in the opinion of the Custodian might make the Custodian liable for the payment of money or liable in any other way the Custodian shall be kept indemnified by the Fund in any reasonable form as a pre-requisite to taking such action.

15.2    In performing its duties hereunder the Custodian may at the expense of the Fund appoint such agents, sub-custodians and delegates ("Correspondent") as may be necessary to perform in whole or in part any of the duties and discretions of the Custodian (including in such appointment powers of sub-delegation).   Subject to the provisions of this sub-clause, the Custodian will remain responsible to the Fund for any acts or omissions of any Correspondent howsoever appointed as if such acts or omissions were those of the Custodian.  The Custodian shall not, however, be liable for any acts or omissions of any Correspondent appointed pursuant to this sub-clause in relation to markets considered by the Custodian to be emerging markets or where in the Custodian's opinion the risks associated with any particular market are unacceptable (hereinafter referred to as "Emerging Markets") and in each such case the Custodian shall have notified the Fund in writing of such market or markets provided that the Custodian has complied with clause 15.3.  The current list of Emerging Markets is attached as Annex 1 to this Agreement and the Custodian may from time to time amend such list by written notice to the Fund.  Notwithstanding any such appointment, and provided that the Custodian has complied with clause 15.3, the Custodian will not be responsible for any losses suffered by the Fund by reason only of the liquidation, bankruptcy or insolvency of any Correspondent howsoever appointed but shall use reasonable endeavours to recover any Securities or other property held pursuant to this Agreement and to recover any losses or damages suffered by the Fund as a direct consequence of such liquidation, bankruptcy or insolvency.  Any broker or other intermediary appointed pursuant to Clause 6.2 and any Securities System utilised pursuant to Clause 9.1 hereof shall not be a Correspondent for the purposes hereof and the Custodian shall not be liable for the acts or omissions or any loss directly or indirectly caused by any such person.  The fees and other remuneration of any Correspondent appointed by the Custodian pursuant hereto (including any fees or other remuneration as referred to in Clause 6 hereof) shall be paid by the Fund.

15.3    In the selection, appointment and monitoring of Correspondents pursuant to Clause 15.2, the Custodian will exercise reasonable skill and care but will only be liable to the Fund for losses resulting from the liquidation, bankruptcy or insolvency of such Correspondents if it has been negligent in the selection and monitoring thereof.  However, in assessing whether the Custodian has been negligent there shall be taken into account the choice of Correspondents in a market, the lack of experience or expertise of such Correspondents and the insufficiency and unreliability of information (financial or otherwise) regarding such Correspondents.

15.4    The Custodian shall deliver to the Company from time to time at such reasonable intervals as the Company may require a full account of all receipts and payments made and other action taken by the Custodian pursuant to this Agreement since the date of the last preceding such account together with a list as at the date of such account of all Securities and cash or other indebtedness or obligations held by the Custodian or its agent for or on behalf of the Fund or otherwise pursuant to the terms hereof.

15.5    The Fund as sole beneficial owner of all Securities delivered or to be delivered to the Custodian or its nominee hereunder hereby indemnifies and holds harmless the Custodian from and against all proper costs and expenses and liabilities resulting from the fact that such Securities are registered in the name of the Custodian or its nominee.

15.6    The Custodian shall not, in the absence of negligence or wilful default be liable to the Fund or to any shareholder of the Fund for any act or omission in the course or in connection with the services rendered by it hereunder or for any loss or damage which the Fund may sustain or suffer as a result or in the course of the proper discharge by the Custodian of its duties hereunder or pursuant hereto. In particular, but without limiting the generality of the foregoing the Custodian shall be under no liability in respect of:

    (a)   any loss or damage caused by unauthorised use or forging of any authorised signature provided that in any such case the Custodian shall have properly investigated such signature in accordance with approved banking practice and by reference to any certified specimen signatures previously delivered to the Custodian by or on behalf of the Fund pursuant to Clause 3 or shall have made such investigations as may have been agreed from time to time in writing between the Fund and the Custodian; and

    (b)   any loss suffered by the Fund or any Shareholder, whether caused by delays or otherwise, resulting from illegible or unclear communications from the Fund or any authorised signatories thereof; and

    (c)   any loss which a shareholder of the Fund may suffer by reason of any depletion in the value of the net assets of the Fund which may result from any borrowing or overdraft facilities made hereunder; and

    (d)   any loss or damage which the Fund or any shareholder of the Fund may suffer as a result of Securities or other property of the Fund being delivered to or held by a lender pursuant to any borrowing facility arranged by or on behalf of the Fund.

The Company out of the assets of the Fund agrees to indemnify the Custodian from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgements, suits, costs, expenses or disbursements of any kind or nature whatsoever (other than those resulting from the negligence or wilful default on the part of the Custodian or any Correspondent appointed by it and for which it would be liable as provided in sub-clause 15.2) which may be imposed on, incurred by or asserted against the Custodian in performing its obligations or duties hereunder.

15.7    In any case where the Custodian may be held to be liable hereunder, its liability shall be limited to the loss suffered as a direct and reasonably foreseeable consequence of the Custodian's or its directors', officer's or employee's negligence or wilful default.

15.8    If the Custodian shall at any time be in doubt as to any action to be or not to be taken by it, it may, with the prior consent of the Fund or of such person or persons, as shall from time to time be



designated by the board of directors of the Fund, obtain professional advice at the expense of the Fund and may, but shall not be required to, act thereon. The Custodian shall not be liable for any action taken or thing done in good faith in the reliance upon such advice.

15.9    Where Proper Instructions, notices or other documents are sent by way of facsimile transmission the fact that the transmission report produced by the originator of such transmission discloses that the transmission was sent shall not (without confirmation of receipt from the Custodian) be sufficient proof of receipt by the Custodian. The Fund agrees to indemnify the Custodian from and against any and all actions, losses, costs, charges, expenses and demands of any and every kind (other than those resulting from negligence or wilful default on the part of the Custodian) which may at any time hereafter be incurred by the Custodian in consequence of accepting and action upon Proper Instructions, notices or other documents sent by facsimile transmission whether or not such instructions were sent by the Fund or any other person duly authorised to give such instructions.

15.10   The Custodian shall be under no duty to supervise compliance with the restrictions on the investment powers of the Fund or to take any action other than as specified in this Agreement with respect to any Securities or cash of the Fund held by the Custodian hereunder.

15.11   The Custodian need not act upon Proper Instructions which it reasonably believes to be contrary to law, regulation or market practice but it is under no duty to investigate whether any such Proper Instructions comply with any applicable law, regulation or market practice.

15.12   The Custodian shall not be responsible for the loss or damage to any documents or other property of the Fund or for any failure to fulfil its duties hereunder if such loss, damage or failure shall be caused by or directly or indirectly due to war, enemy action, the act of government or other competent authority, riots, civil disturbance, rebellion, storm, tempest, accident, fire, strike, explosion or lock-out or any occurrence or event beyond the control of the Custodian.

16.     REFUSAL TO ACT

The Custodian shall be entitled (subject to notice having been given to the Fund) to refuse to effect any investment, realisation or other transaction required to be carried out by it on behalf of the Fund pursuant to this Agreement if in the opinion of the Custodian, 1) there are reasonable grounds for estimating that liabilities to be incurred in the case of such investment, realisation or other transaction may not be adequately covered by the assets of the Fund held immediately prior to the time that such investment, realisation or other transaction is required to be effected or 2) personal liability may be incurred by the Custodian pursuant to such investment, realisation or other

transaction PROVIDED ALWAYS that the foregoing (save as aforesaid) shall not absolve the Custodian from performing the obligations expressly assumed by it under this Agreement.

## 17.   APPROVAL OF PUBLICATIONS

The Company shall deliver to the Custodian for approval prior to issue thereof a copy of all prospectuses, statements, notices, circulars and advertisements to be issued on behalf of or relating to the Fund to shareholders of the Fund or to the public or the press or other communications media and any such publication not approved by the Custodian in writing shall not be published by or on behalf of the Fund and the Fund hereby undertakes that no such statement, notice, circular or advertisement will be published and that no moneys will be raised nor any shares of the Fund issued unless and until all necessary consents and permissions of whatever authority have been obtained in connection therewith.

## 18.   CONFIDENTIALITY AND REPUTATION

18.1    Neither party hereto shall unless compelled so to do by any statute, person empowered by statute, court of competent jurisdiction or other regulatory authority either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

18.2    Neither party hereto shall do or commit any act or matter or thing which would or might prejudice or bring into disrepute in any manner the business or reputation of either of the parties or any director of such party.

## 19.   TERMINATION

19.1    This Agreement and the appointment of the Custodian hereunder shall continue in force until terminated by either the Company or the Custodian giving to the other not less than ninety days' notice in writing (or such shorter notice as such other party may agree to accept) expiring at any time provided that either the Company or the Custodian may forthwith terminate this Agreement by notice taking immediate or subsequent effect if:-

(a)     the Custodian or the Company respectively has broken or is in material breach of any of the terms of this Agreement and shall not have remedied such breach within thirty days after service of notice by the non-defaulting party requiring the same to be remedied; or

(b)     the Custodian, the Company or the Fund respectively shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation on terms previously approved in writing by the other party).



19.2    The Custodian shall, in the event of termination of this Agreement, deliver or cause to be delivered to any succeeding Custodian all Securities then held hereunder and all monies or other assets of the Fund with all certified copies and other documents relating thereto in its possession which are valid and in force at the date of termination, provided, however, that the Custodian shall not be required to make any such delivery or payment until full payment shall have been made by the Fund of all liabilities constituting a charge on or against the properties held by the Custodian or on or against the Custodian, and until full payment shall have been made to the Custodian of all its fees, compensation, costs and expenses due to it under the provisions of this Agreement.

19.3    Termination of this Agreement shall be without prejudice to any claims or rights which either of the parties hereto may have by reason of any breach of the other party's obligations and, without prejudice to the generality of the foregoing, any indemnity provisions and provisions limiting the liabilities of either party shall survive termination of this Agreement.

## 20.    GENERAL LIEN

20.1    With a view to supply collateral to and guarantee all present and/or future payment obligations of the Fund towards the Custodian, the Company in respect of the assets of the Fund hereby pledges to the Custodian, which accepts, any claim (the "Pledged Assets") which the Fund presently has or may have in the future against the Custodian. The Pledged Assets shall include, without limitation, cash deposits in any currencies, stocks or bonds, domestic or foreign, existing or to be issued, nominative or to the bearer, contracts, options, claims and rights whatsoever, existing or to be issued.

20.2    Additional assets or securities deposited on the Pledged Account shall increase the Pledged Assets, which shall also encompass any and all renewal and/or rollover of deposits placed, as well as any amount expressed in another currency as a result of a conversion, arbitrage or any substitution whatsoever of the initial deposit; interest, dividends and generally any and all rights derived from the Pledged Assets also increase the Pledged Assets.

20.3    Should the Company in respect of the Fund fail to repay any debt when due, subject to eight calendar days prior written notice to the Company by registered mail, the Custodian would be entitled to realise part or all of the Pledged Assets, if applicable and as may be considered adequate in compliance with Luxembourg law, and to apply the net proceeds to the settlement of its claims against the Fund, including any and all due and payable principal, interest, penalty interest, commissions, charges, costs, expenses, etc. The foregoing applies even when default by the Fund is caused by events that are not under its control, such as and without limitation, currency restrictions, exchange restrictions, interest rate restrictions, taxes or other events of a political, economic, military, or monetary nature.

- 15 -

## 21.    CONCERNING THE COMPANY AND THE FUND

21.1    The rights, duties, obligations, liabilities, agreements, representations, undertakings, warranties and all other matters in this Agreement relating to the Company shall relate to Herald USA Segregated Portfolio One a segregated portfolio of Herald Fund SPC

21.2    Any authority, power, discretion, consent, action or approval under this Agreement shall relate to Herald USA Segregated Portfolio One a segregated portfolio of Herald Fund SPC.

21.3    It is hereby noted that, save in respect of a segregated portfolio of Herald Fund SPC that is expressly specified, no letter, certificate, acknowledgment, release, waiver, proxy, appointment of agents, instruction, request, transaction, confirmation, ticket, receipt, notice, document, or any other matter, thing or item in relation to Herald Fund SPC, may be executed, signed, given, delivered, made or done.

21.4    The rights, duties, obligations, liabilities, agreements, representations, undertakings, warranties and all other matters herein relating to the Herald Fund SPC hereunder (whether in contract, tort, under statute or otherwise) relate separately to Herald USA Segregated Portfolio One of Herald Fund SPC and shall not be merged, joined, or set-off against any other segregated portfolio.

21.5    Any charge, lien or other security interest created hereunder (i) may attach only to assets comprised in Herald USA Segregated Portfolio One of Herald USA SPC to which the obligation the subject of such charge, lien or other security interest relates; and (ii) shall not attach to assets comprised in any other segregated portfolio.

21.6    In the event of any claim whatsoever or howsoever made by any party against the Herald Fund SPC in connection with this Agreement (whether without prejudice to the foregoing generality, for breach of agreement, an indemnity claim, or a claim for fees and expenses or otherwise) or otherwise the recourse of the party shall be limited solely to the assets Herald USA Segregated Portfolio One of Herald Fund SPC and upon exhaustion of the assets of Herald USA Segregated Portfolio One of Herald Fund SPC the claim of the party shall be fully satisfied by the payment of such amounts as are available to be paid to the party from such assets and thereupon such claim shall be extinguished and the party shall in respect of such claim have no further recourse against any of the other assets of Herald Fund SPC.

21.    **NOTICES**

Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by telex or facsimile to the parties at the following addresses or such other address as may be notified by either party from time to time.

TO THE COMPANY:    **HERALD USA SEGREGATED PORTFOLIO ONE**
M & C Corporate Services Limited,
PO Box 309GT, Ugland House,
South Church Street, George Town,
Grand Cayman, Cayman Islands

Facsimile: (345) 949 8080
Tel.: (345) 949 8066

TO THE CUSTODIAN:    **BANK OF BERMUDA (LUXEMBOURG) S.A.**
13 rue Goethe
L-1637 Luxembourg

Attention: General Manager, Fund Services

Telex: 60864 BOBULU
Facsimile: (352) 40.46.74
Tel.: (352) 40.46.46.1

Such notice, instruction or other instrument shall be deemed to have been served in the case of a registered letter at the expiration of five business days after posting, in the case of facsimile and telex, immediately on dispatch. If delivered outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence. Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

22.    **RIGHT TO USE DATA PROCESSING RECORDS**

The Custodian is authorised to maintain all accounts, corporate books and other documents relating to the Fund or its affairs on computer records and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof thereof.

23.    **TELEPHONE RECORDING**

The Custodian may record all telephone conversations between the Fund and the Custodian or between any Shareholder or other person and the Custodian in relation to the affairs of the Fund

and any such tape recordings may be submitted in evidence in any proceedings relating to this Agreement.

### 24.    ASSIGNMENT

Neither the benefit nor the burden of this Agreement shall be assigned by either party without the written consent of the other party hereto.

### 25.    AMENDMENT

No provision of this Agreement may be amended otherwise than by a written agreement signed by both parties

### 26.    COUNTERPART

This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which when executed and delivered shall constitute an original and all such counterparts together constitute one and the same instrument.

### 27.    SEVERANCE

If any provision herein shall be determined to be void or unenforceable in whole or in part for any reason whatsoever such invalidity or unenforceability shall not affect the remaining provisions or any part thereof contained within this Agreement and such void or unenforceable provisions shall be deemed to be severable from any other provision or part thereof herein contained.



28.    **PROPER LAW & JURISDICTION**

This Agreement shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg and both parties submit to the exclusive jurisdiction of the courts of Luxembourg.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed in two originals as of the day and year first above written each of the parties having received one original.

SIGNED BY                              )
and                                    )
for and on behalf of **HERALD FUND**   )
SPC in respect of **HERALD USA**       )
**SEGREGATED PORTFOLIO ONE**           )
in the presence of:                    )

_____ F. HOGAN_____

_____


SIGNED BY                              )
and                                    )
for and on behalf of **BANK OF**       )
**BERMUDA (LUXEMBOURG) S.A.**          )
in the presence of:                    )

_____

_____

- 19 -

## ANNEX 1

As of the date of this Agreement, the following represents a list of Emerging Markets (as defined in the sub-clause 15.2 of the Custodian Agreement):-

Bahrain
Bangladesh
Bolivia
Botswana
Colombia
Costa Rica
Cyprus
Ecuador
Egypt
Ghana
Ivory Coast
Jamaica
Jordan
Kazakhstan
Kenya
Kuwait
Lebanon
Namibia
Nigeria
Oman
Pakistan
Palestine
Panama
Peru
Qatar
Russia
Saudi Arabia
Swaziland
Uganda
Ukraine
United Arab Emirates
Uruguay
Venezuela
Vietnam
Zambia
Zimbabwe

EXHIBIT C


**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades. All purchases, sales or trades shall be executed strictly in accordance with the established trading authorization directive.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, _____

X _please sign here_  _____    _____
                              (City)                          (State)

Very truly yours, _____
                                      (Client Signature)

Signature of Authorized Agent: _____

**Affiliated with:**
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222

EXHIBIT D

HSBC Private Bank ◆X▶

Geneva, May 22, 2009

**RE: Your investment in one of the following "Madoff" 100% exposed funds**

FAIRFIELD SENTRY LTD / FAIRFIELD SIGMA LTD / HERALD FUND USA / HERMES INTERNATIONAL FUND LTD / KRONOS AGRICULTURAL FUND LP / LUXALPHA SICAV/ OPTIMAL STRATEGIC US EQUITY LTD / OXFORD FUND LTD / PLAZA INVESTMENTS INTL LTD / PLATINUM ALL WEATHER FUND LTD / PRIMEO FUND SELECT / RYE SELECT BROAD MARKET / SANTA BARBARA MARKET NEUTRAL FD (BAHAMAS) / SANTA CLARA FUND / THEMA INTL FUNDS PLC / THEMA FUND LTD THEMA CORAL / MOUNT CAPITAL FUND / MOUNT FAIRWEATHER US / RYTZ INTERNATIONAL LTD SA / RAFALE PARTNERS INC

Dear customer,

We write with respect to your investment in one or several of the above funds (the "Fund") that invested with Bernard L. Madoff Investment Securities LLC ("BLMIS").

We previously transmitted you a customer claim form which you may have used in order to send your claim to the Securities Investor Protection Corporation ("SIPC").

First, we wish to remind you that, according to the BLMIS trustee, the strict deadline for filing claims in the BLMIS liquidation is July 2, 2009. Claims must be received by the BLMIS trustee by July 2, 2009. Information regarding the claims process may be found at the trustee's website at:

http://www.madofftrustee.com/index.html.

Second, the BLMIS trustee has recently released new statements regarding the BLMIS liquidation and the claims process, which you should consider. He revealed in particular that Madoff had not purchased any securities for its clients for at least the last 13 years. Accordingly he indicated that the most important information he would consider when evaluating entitlement to reimbursement from SIPC was the extent of cash invested and whether the customer's total cash investment exceeded the customer's withdrawals. Those statements can be found at the trustee website mentioned above, and another statement dated May 6, 2009 from the trustee is enclosed, which was released on the New York Times web site:

http://dealbook.blogs.nytimes.com/2009/05/06/another-view-unwinding-madoffs-fraud-fairly/?scp=1&sq=irving%20h.%20picard&st=Search

Third, as a reminder, the Bank does not plan to file a claim on your behalf. The Fund through which you invested has generally indicated if it will (or, in some cases, will not) file a claim on behalf of the Fund. As indicated previously, you may submit a claim on your own behalf. Please note that there is no guarantee that the BLMIS trustee will recognize claims of individual customers who did not invest directly with BLMIS.

Further, submitting an individual claim may subject you to the jurisdiction of the United States court where the liquidation proceeding is pending, and make it easier for the trustee overseeing the proceeding to bring claims against you, for example, for recovery of withdrawals you may have made from a fund or funds investing with BLMIS. Also, submitting a claim will require you to identify yourself and disclose to the trustee facts about your investment.

The Bank cannot advise you whether or not to file an individual claim, and you may wish to consult counsel before deciding how to proceed.

Sincerely,

HSBC PRIVATE BANK (SUISSE) SA

Letter without signature

Enclosures

2

EXHIBIT E



Attn: To the board of directors or its legal representative

5 June 2009

Our Ref.: JCW-GB-ct

Dear Sir,

**Ref: Securities Investor Protection Corporation claim**

We refer to our letter dated February 3, 2009 by which we recommended to your company to seek for legal advice in relation to the submission of a claim with the Securities Investor Protection Corporation ("SIPC") in the context of the Madoff affair.

We would like to kindly remind you that July 2, 2009 is the bar date for submitting such claim. In that respect, we would be grateful if you could inform us on whether your company has made such a claim or has the intention to file it before the deadline.

Yours sincerely

*HSBC Securities Services (Luxembourg) S.A.*

J.C. Wilcockson
Managing Director

G. Birgen
Managing Director

**HSBC Securities Services (Luxembourg) S.A.**
16, Boulevard d'Avranches, L-1160 Luxembourg
Tel: +352 40 46 461  Fax: +352 27025 774

Société Anonyme - R.C. Luxembourg B 28.531

EXHIBIT F

**Nicholas Howard**

| | |
|---|---|
| **From:** | Joel Scarr [Joel.Scarr@MAPLESANDCALDER.com] |
| **Sent:** | 10 March 2009 01:33 |
| **To:** | saveriofiorino@lu.hsbc.com; robertoricci@lu.hsbc.com; luciaandrich@lu.hsbc.com |
| **Cc:** | Nicholas Howard; Fabian Picardo; #herald fund spc [605550.000003]; Sandie Corbett; Rupert Bell; Andreas Haug |
| **Subject:** | Herald Fund SPC - Investor update for immediate distribution |

Dear HSBC

Attached is an investor update which I have been instructed to request you to provide to Herald Fund SPC shareholders immediately. Also attached are resolutions of the directors authorising its distribution. I would be grateful if you can please confirm to me when this has occurred.

I have been instructed that Herald Fund SPC understands that HSBC has taken the position that HSBC will not file any claim in relation with Herald Fund SPC's assets in the liquidation of Bernard L. Madoff Investment Securities LLC. I have also been instructed that Herald Fund SPC understands that HSBC is of the view that any such claim should be filed by Herald Fund SPC itself. Herald Fund SPC reserves all of its rights against HSBC.

Kind regards
Joel

**Joel Scarr**
Maples and Calder
Cayman Islands
joel.scarr@maplesandcalder.com
Direct: +1 345 814 5680
Cell:  +1 345 526 5680
Fax:   +1 345 949 8080
www.maplesandcalder.com
www.maplesfinance.com

<<20090306-HUSA-BoD Resolution.pdf>>  <<Scansione0006.jpg>>  <<20090306-HUSA-shareholder.pdf>>

This e-mail (including any attachments) is confidential and may also be privileged. No confidentiality or privilege is waived or lost by any error in transmission. It is intended solely for the use of the recipient(s) to whom it is addressed. It should not be read, copied, distributed or otherwise used by any other person. If you have received this e-mail in error, please delete it from your system and notify the sender immediately. All communications sent by us to our clients are subject to our Terms of Engagement which are available from your usual Maples and Calder contact. For further information about Maples and Calder (including a list of our partners) please visit "http://www.maplesandcalder.com". For further information about Maples Finance please visit "http://www.maplesfinance.com".

EXHIBIT G



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ◦ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 010 749 0 6122

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

| | FORWARD NUMBER 11/30/08 | PAGE 1 | A |

| YOUR ACCOUNT NUMBER 1-FR109-3-0 | YOUR TAXPAYER IDENTIFICATION NUMBER |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | 199 | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | BALANCE FORWARD | | 87,706,205.42 | |
| 11/04 | | | | CHECK WIRE | CW | 423,000,000.00 | |
| 11/04 | | | | FIDELITY SPARTAN | DIV | | 1.94 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/04/08 | | | |
| 11/04 | | | | FIDELITY SPARTAN | CW | | .58 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | W/H TAX DIV FDLXX | | | |
| 11/04 DIV | | 21,909 | 23375 | FIDELITY SPARTAN | 1 | | 21,909.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/04 | | 149,650,000 | 35630 | U S TREASURY BILL | 99.869 | | 149,453,958.50 |
| | | | | DUE 2/12/2009 | | | |
| | | | | 2/12/2009 | | | |
| 11/04 | | 180,350,000 | 35645 | U S TREASURY BILL | 99.929 | | 180,221,951.50 |
| | | | | DUE 12/18/2008 | | | |
| | | | | 12/18/2008 | | | |
| 11/04 | | 93,375,000 | 35646 | U S TREASURY BILL | 99.931 | | 93,310,571.25 |
| | | | | DUE 01/08/2009 | | | |
| | | | | 1/08/2009 | | | |
| 11/04 | 8,392 | | 35669 | FIDELITY SPARTAN | | 8,392.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/06 | 143,046 | | 10974 | APPLE INC | 105.380 | 15,079,908.48 | |
| 11/06 | 254,304 | | 11209 | ABBOTT LABORATORIES | 55.080 | 14,019,779.36 | |
| 11/06 | 174,834 | | 11444 | AMGEN INC | 60.350 | 10,558,224.90 | |
| | | | | CONTINUED ON PAGE  2 | | | |

CONTINUED ON PAGE  2

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING 11/30/06    PAGE 2    A

YOUR ACCOUNT NUMBER  1-FR109-3-0

| DATE | AMOUNT RECEIVED OR LONG | SOLD DRAWING OR SHORT | TIME | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-------------------------|------------------------|------|-------------|-----------------|-------------------------------|--------------------------------|
| 11/06 | 127,152 | | 11679 | BOEING CO | 51.120 | 6,505,096.24 | |
| 11/06 | 826,488 | | 11914 | BANK OF AMERICA | 23.840 | 19,736,532.92 | |
| 11/06 | 95,364 | | 12149 | BAXTER INTERNATIONAL INC | 60.600 | 5,782,872.40 | |
| 11/06 | 190,728 | | 12384 | BANK OF NEW YORK MELLON CORP | 32.290 | 6,166,234.12 | |
| 11/06 | 317,880 | | 12619 | BRISTOL MYERS SQUIBB COMPANY | 20.610 | 6,564,221.80 | |
| 11/06 | 111,258 | | 12854 | ANHEUSER BUSCH COS INC | 62.430 | 6,950,286.94 | |
| 11/06 | 890,064 | | 13089 | CITI GROUP INC | 13.530 | 12,078,167.92 | |
| 11/06 | 476,820 | | 13324 | COMCAST CORP CL A | 15.790 | 7,548,059.80 | |
| 11/06 | 254,304 | | 13559 | CONOCOPHILIPS | 51.120 | 13,010,192.48 | |
| 11/06 | 969,534 | | 13794 | CISCO SYSTEMS INC | 17.520 | 17,025,016.68 | |
| 11/06 | 238,410 | | 14029 | CVS CAREMARK CORP | 30.510 | 7,283,425.10 | |
| 11/06 | 333,774 | | 14264 | CHEVRON CORP | 73.740 | 24,625,844.76 | |
| 11/06 | 317,860 | | 14499 | THE WALT DISNEY CO | 24.760 | 7,865,423.80 | |
| 11/06 | 1,700,658 | | 14734 | GENERAL ELECTRIC CO | 19.600 | 33,408,992.80 | |
| 11/06 | 31,788 | | 14969 | GOOGLE | 356.520 | 11,334,328.76 | |
| 11/06 | 63,576 | | 15204 | GOLDMAN SACHS GROUP INC | 91.870 | 5,843,270.12 | |
| 11/06 | 286,092 | | 15439 | HOME DEPOT INC | 23.300 | 6,677,386.60 | |
| 11/06 | 397,350 | | 15674 | HEWLETT PACKARD CO | 38.310 | 15,238,372.50 | |
| 11/06 | 222,516 | | 15909 | INTERNATIONAL BUSINESS MACHS | 92.800 | 20,658,584.80 | |
| 11/06 | 905,958 | | 16144 | INTEL CORP | 16.070 | 14,594,983.06 | |
| 11/06 | 460,926 | | 16379 | JOHNSON & JOHNSON | 61.310 | 28,277,810.06 | |
| 11/06 | 603,972 | | 16614 | J.P. MORGAN CHASE & CO. | 40.910 | 24,732,652.52 | |
| 11/06 | 254,304 | | 16849 | KRAFT FOOD INC | 29.110 | 7,412,961.44 | |
| 11/06 | 317,880 | | 17084 | COCA COLA CO | 44.490 | 14,155,196.20 | |

CONTINUED ON PAGE    3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 53/143 * RCVD AT 1/22/2008 7:30:00 PM [Eastern Standard Time] * SVR:LUHMONITOR/3/3 * DNIS:210 * CSID:* DURATION (mm-ss):40-51

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ◆ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: 11/30/08   PAGE 3   A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | AMOUNT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|---|---|---|---|---|---|---|
| 11/06 | 190,728 | | 17319 | MCDONALDS CORP | 57.980 | 11,050,786.20 | |
| 11/06 | 190,728 | | 17556 | MEDTRONIC INC | 40.310 | 7,695,874.68 | |
| 11/06 | 111,258 | | 17789 | 3M COMPANY | 63.590 | 7,079,346.22 | |
| 11/06 | 333,774 | | 18024 | ALTRIA GROUP INC | 19.160 | 6,408,659.84 | |
| 11/06 | 349,668 | | 18259 | MERCK & CO | 30.780 | 10,776,767.04 | |
| 11/06 | 1,287,414 | | 18494 | MICROSOFT CORP | 22.310 | 28,773,702.34 | |
| 11/06 | 651,654 | | 18729 | ORACLE CORPORATION | 18.110 | 11,827,519.94 | |
| 11/06 | 143,046 | | 19434 | OCCIDENTAL PETROLEUM CORP | 54.290 | 7,771,688.34 | |
| 11/06 | 254,304 | | 19669 | PEPSICO INC | 57 | 14,505,500.00 | |
| 11/06 | 1,096,686 | | 19904 | PFIZER INC | 17.690 | 19,444,242.34 | |
| 11/06 | 492,714 | | 20139 | PROCTER & GAMBLE CO | 64.570 | 31,834,250.98 | |
| 11/06 | 349,668 | | 20374 | PHILLIP MORRIS INTERNATIONAL | 42.730 | 14,955,299.64 | |
| 11/06 | 270,198 | | 20609 | QUALCOMM INC | 37.810 | 10,216,993.38 | |
| 11/06 | 190,728 | | 20844 | SCHLUMBERGER LTD | 51.760 | 9,879,710.28 | |
| 11/06 | 953,640 | | 21079 | AT&T INC | 26.980 | 25,767,352.20 | |
| 11/06 | 588,078 | | 21314 | TIME WARNER INC | 10.060 | 5,939,587.68 | |
| 11/06 | 158,940 | | 21549 | UNITED PARCEL SVC INC CLASS B | 52.790 | 8,396,799.60 | |
| 11/06 | 286,092 | | 21784 | U S BANCORP | 29.550 | 8,465,461.60 | |
| 11/06 | 158,940 | | 22019 | UNITED TECHNOLOGIES CORP | 54.920 | 8,735,341.80 | |
| 11/06 | 460,926 | | 22254 | VERIZON COMMUNICATIONS | 29.980 | 13,836,998.48 | |
| 11/06 | 540,396 | | 22489 | WELLS FARGO & CO NEW | 33.660 | 18,211,344.36 | |
| 11/06 | 365,562 | | 22724 | WAL-MART STORES INC | 56.560 | 20,690,808.72 | |
| 11/06 | 858,276 | | 22959 | EXXON MOBIL CORP | 73.680 | 63,272,106.68 | |
| 11/06 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/06/08 | DIV | | .30 |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES.



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING 11/30/08   PAGE 4   A

YOUR ACCOUNT NUMBER 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/06 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CM | .09 | |
| 11/06 | 8,311 | | 10739 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 8,311.00 | |
| 11/06 | | 8,592 | 48256 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 8,392.00 |
| 11/06 | | 44,575,000 | 48472 | U S TREASURY BILL DUE 12/11/2008 12/11/2008 | 99.989 | | 44,570,096.75 |
| 11/06 | | 157,000,000 | 48904 | U S TREASURY BILL DUE 01/08/2009 1/08/2009 | 99.960 | | 156,937,200.00 |
| 11/06 | | 250,375,000 | 49114 | U S TREASURY BILL DUE 01/15/2009 1/15/2009 | 99.946 | | 250,239,797.50 |
| 11/06 | | 250,375,000 | 49328 | U S TREASURY BILL DUE 01/22/2009 1/22/2009 | 99.934 | | 250,209,752.50 |
| 11/06 | | 250,375,000 | 49543 | U S TREASURY BILL DUE 01/29/2009 1/29/2009 | 99.928 | | 250,194,730.00 |
| 11/06 | 74,550,000 | | 49985 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.802 | 74,402,391.00 | |
| | | | | CONTINUED ON PAGE  5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 65/V43 RCVD AT 12/22/2008 7:30:00 PM [Romance Standard Time] * SVR:LIA/WMONT001/2 * DNIS:210 * CSID: * DURATION (mm-ss):140-51

```
       BERNARD L. MADOFF                      885 Third Avenue              Affiliated with
   MLM  INVESTMENT SECURITIES LLC            New York, NY 10022      Madoff Securities International Limited
       New York ♦ London                       (212) 230-2424              12 Berkeley Street
                                               800 334-1343               Mayfair, London W1J 8DT
                                             Fax (212) 838-4061            Tel 020 7493 6222
```

```
   HSBC SECURITIES SERVICES
   (LUXEMBOURG) SA SPEC CUST ACCT
   FOR HERALD FUND SPC-HERALD USA          PERIOD ENDING   PAGE
   40 AVENUE MONTEREY  B.P. 413             11/30/08        5      A
   L-2014  LUXEMBOURG
                                    YOUR ACCOUNT NUMBER
                                      1-FR109-3-0
```

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/06 | 74,550,000 | | 50214 | U S TREASURY BILL DUE 4/02/2009 | 99.751 | 74,364,370.50 | |
| | | | | 4/02/2009 | | | |
| 11/06 | 74,550,000 | | 50443 | U S TREASURY BILL DUE 04/09/2009 | 99.726 | 74,345,733.00 | |
| | | | | 4/09/2009 | | | |
| 11/07 | 99,027 | | 23495 | APPLE INC | 108.800 | 10,778,098.60 | |
| 11/07 | 176,048 | | 23730 | ABBOTT LABORATORIES | 56.590 | 9,969,597.32 | |
| 11/07 | 121,033 | | 23965 | AMGEN INC | 62.070 | 7,517,359.31 | |
| 11/07 | 88,024 | | 24200 | BOEING CO | 53.640 | 4,725,127.36 | |
| 11/07 | 561,453 | | 24435 | BANK OF AMERICA | 23.720 | 13,332,995.16 | |
| 11/07 | 66,018 | | 24670 | BAXTER INTERNATIONAL INC | 61.740 | 4,078,591.32 | |
| 11/07 | 121,033 | | 24905 | BANK OF NEW YORK MELLON CORP | 34.210 | 4,165,379.93 | |
| 11/07 | 220,060 | | 25140 | BRISTOL MYERS SQUIBB COMPANY | 21.020 | 4,634,463.20 | |
| 11/07 | 77,021 | | 25375 | ANHEUSER BUSCH COS INC | 64.190 | 4,947,057.99 | |
| 11/07 | 594,162 | | 25610 | CITI GROUP INC | 14.410 | 8,585,640.42 | |
| 11/07 | 319,087 | | 25845 | COMCAST CORP CL A | 17.390 | 5,561,685.93 | |
| 11/07 | 165,045 | | 26080 | CONOCOPHILIPS | 53.060 | 8,763,888.70 | |
| 11/07 | 649,177 | | 26315 | CISCO SYSTEMS INC | 17.580 | 11,438,498.66 | |
| 11/07 | 154,042 | | 26550 | CVS CAREMARK CORP | 31.720 | 4,892,373.24 | |
| 11/07 | 231,063 | | 26785 | CHEVRON CORP | 75.650 | 17,442,945.35 | |
| 11/07 | 209,057 | | 27020 | THE WALT DISNEY CO | 25.620 | 5,364,402.34 | |
| 11/07 | 1,155,315 | | 27255 | GENERAL ELECTRIC CO | 19.810 | 22,885,002.15 | |
| 11/07 | 22,006 | | 27490 | GOOGLE | 349.160 | 7,684,494.96 | |
| | | | | CONTINUED ON PAGE   6 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 60/143  RCVD AT 1/20/2008 7:06:00 PM [Romance Standard Time]  SVR:LU4MNIGHT101/20 * DNIS:214 * CSID: * DURATION (mm-ss):04-31

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6122

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

| YOUR NUMBER | 11/30/08 | PAGE 6 | A |

| YOUR ACCOUNT NUMBER | 1-FR109-3-0 |

| DATE | AMOUNT RECEIVED OR LONG | SOLD (YD/YPSD) OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/07 | 44,012 | | 27725 | GOLDMAN SACHS GROUP INC | 89.070 | 3,921,908.84 | |
| 11/07 | 187,051 | | 27960 | HOME DEPOT INC | 22.480 | 4,212,388.48 | |
| 11/07 | 275,075 | | 28195 | HEWLETT PACKARD CO | 38.820 | 10,689,414.50 | |
| 11/07 | 154,042 | | 28630 | INTERNATIONAL BUSINESS MACHS | 92.430 | 14,244,263.06 | |
| 11/07 | 616,168 | | 28665 | INTEL CORP | 16 | 9,883,334.00 | |
| 11/07 | 308,084 | | 28900 | JOHNSON & JOHNSON | 61.820 | 19,058,075.88 | |
| 11/07 | 418,114 | | 29135 | J.P. MORGAN CHASE & CO | 40.960 | 17,142,673.44 | |
| 11/07 | 165,045 | | 29370 | KRAFT FOOD INC | 29.710 | 4,910,087.95 | |
| 11/07 | 220,060 | | 29605 | COCA COLA CO | 46.580 | 10,259,196.80 | |
| 11/07 | 121,035 | | 29840 | MCDONALDS CORP | 57.510 | 6,965,448.83 | |
| 11/07 | 121,033 | | 30075 | MEDTRONIC INC | 41.140 | 4,984,138.62 | |
| 11/07 | 77,021 | | 30310 | 3M COMPANY | 64.880 | 5,000,202.48 | |
| 11/07 | 231,063 | | 30545 | ALTRIA GROUP INC | 19.370 | 4,484,932.31 | |
| 11/07 | 242,066 | | 30780 | MERCK & CO | 30.480 | 7,387,853.68 | |
| 11/07 | 880,240 | | 31015 | MICROSOFT CORP | 22.960 | 20,227,914.60 | |
| 11/07 | 440,120 | | 31250 | ORACLE CORPORATION | 18.470 | 8,146,620.40 | |
| 11/07 | 88,024 | | 31955 | OCCIDENTAL PETROLEUM CORP | 54.350 | 4,790,265.12 | |
| 11/07 | 176,048 | | 32190 | PEPSICO INC | 58.630 | 10,328,755.24 | |
| 11/07 | 748,204 | | 32425 | PFIZER INC | 18 | 13,497,600.00 | |
| 11/07 | 341,093 | | 32660 | PROCTER & GAMBLE CO | 65.180 | 22,246,084.74 | |
| 11/07 | 231,063 | | 32895 | PHILLIP MORRIS INTERNATIONAL | 43.640 | 10,092,831.32 | |
| 11/07 | 187,051 | | 33130 | QUALCOMM INC | 37.690 | 7,057,434.19 | |
| 11/07 | 132,036 | | 33365 | SCHLUMBERGER LTD | 51.770 | 6,840,784.72 | |
| 11/07 | 638,174 | | 33600 | AT&T INC | 28.910 | 18,475,136.34 | |
| 11/07 | 396,108 | | 33835 | TIME WARNER INC | 10.110 | 4,020,495.88 | |

CONTINUED ON PAGE    7

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 67/143 * RCV'D AT 1/22/2008 7:00:00 PM [Romance Standard Time] * SVR:CLAIMMONT09/1/23 * DNIS:2101 * CSID: * DURATION (mm-ss):40-51

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 010 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

**PERIOD ENDING** 11/30/08    **PAGE** 7    A

**YOUR ACCOUNT NUMBER** 1-FR109-3-0

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/07 | 110,030 | | 34070 | UNITED PARCEL SVC INC CLASS B | 53.680 | 5,910,811.40 | |
| 11/07 | 198,054 | | 34305 | U S BANCORP | 30.790 | 6,106,004.66 | |
| 11/07 | 110,030 | | 34540 | UNITED TECHNOLOGIES CORP | 56 | 6,166,081.00 | |
| 11/07 | 308,084 | | 34775 | VERIZON COMMUNICATIONS | 31.810 | 9,812,475.04 | |
| 11/07 | 374,102 | | 35010 | WELLS FARGO & CO NEW | 34.080 | 12,764,360.16 | |
| 11/07 | 255,069 | | 35245 | WAL-MART STORES INC | 56.730 | 14,366,726.37 | |
| 11/07 | 583,159 | | 35480 | EXXON MOBIL CORP | 75.280 | 43,923,535.52 | |
| 11/07 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/07/08 | DIV | | .15 |
| 11/07 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CR | | .05 |
| 11/07 | | 8,311 | 10982 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 8,311.00 |
| 11/07 | | 149,250,000 | 11252 | U S TREASURY BILL DUE 02/05/09 2/05/2009 | 99.923 | | 149,135,077.50 |
| 11/07 | | 155,975,000 | 11464 | U S TREASURY BILL DUE 02/19/2009 2/19/2009 | 99.887 | | 155,798,748.25 |
| 11/07 | | 155,975,000 | 11680 | U S TREASURY BILL DUE 02/26/2009 2/26/2009 | 99.889 | | 155,801,867.75 |

CONTINUED ON PAGE    8

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING **11/30/08**    PAGE **8**

YOUR ACCOUNT NUMBER **1-FR109-3-0**

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/07 | | 149,250,000 | 11893 | U S TREASURY BILL DUE 03/05/09 3/05/2009 | 99.866 | | 149,050,805.00 |
| 11/07 | 57,200,000 | | 12227 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.720 | 57,039,840.00 | |
| 11/07 | 57,200,000 | | 12447 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.671 | 57,011,812.00 | |
| 11/07 | 29,394 | | 12672 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 29,394.00 |
| 11/10 | 121,284 | | 35955 | APPLE INC | 108.720 | 13,190,847.48 | |
| 11/10 | 215,616 | | 36190 | ABBOTT LABORATORIES | 55.910 | 12,063,714.56 | |
| 11/10 | 148,236 | | 36425 | AMGEN INC | 59.620 | 8,843,759.32 | |
| 11/10 | 107,808 | | 36660 | BOEING CO | 52.190 | 5,630,811.52 | |
| 11/10 | 700,752 | | 36895 | BANK OF AMERICA | 24.050 | 16,885,115.60 | |
| 11/10 | 94,332 | | 37130 | BAXTER INTERNATIONAL INC | 60.770 | 5,736,328.64 | |
| 11/10 | 141,712 | | 37365 | BANK OF NEW YORK MELLON CORP | 33.480 | 5,420,585.76 | |
| 11/10 | 282,996 | | 37600 | BRISTOL MYERS SQUIBB COMPANY | 21.310 | 6,041,963.76 | |
| 11/10 | 94,332 | | 37835 | ANHEUSER BUSCH COS INC | 64.090 | 6,049,510.88 | |
| 11/10 | 768,132 | | 38070 | CITI GROUP INC | 14.270 | 10,991,968.64 | |
| 11/10 | 406,280 | | 38305 | COMCAST CORP CL A | 17.410 | 7,054,685.80 | |
| 11/10 | 215,616 | | 38540 | CONOCOPHILLIPS | 54.130 | 11,679,918.08 | |
| 11/10 | 822,036 | | 38775 | CISCO SYSTEMS INC | 18.080 | 14,895,291.88 | |
| | | | | CONTINUED ON PAGE 9 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 59/143 * RCVD AT 2/2/2008 7:00:08 PM [Romance Standard Time] * SVR:LJ4MNOTW01/2/3 * DNIS:210 * CSID: * DURATION (mm·ss):40-51

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY   B.P. 413
L-2014   LUXEMBOURG

| PERIOD ENDED | PAGE |
|---|---|
| 11/30/08 | 9 | A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | AMOUNT RECEIVED OR LOANED | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | 202,140 | | 39010 | CVS CAREMARK CORP | 31.300 | 6,335,067.00 | |
| 11/10 | 296,472 | | 39245 | CHEVRON CORP | 76.410 | 22,665,283.52 | |
| 11/10 | 256,044 | | 39480 | THE WALT DISNEY CO | 25.660 | 6,580,330.04 | |
| 11/10 | 1,468,884 | | 39715 | GENERAL ELECTRIC CO | 20.530 | 30,216,943.52 | |
| 11/10 | 26,952 | | 39950 | GOOGLE | 363.580 | 9,800,286.16 | |
| 11/10 | 67,380 | | 40185 | GOLDMAN SACHS GROUP INC | 92.680 | 6,247,473.40 | |
| 11/10 | 242,568 | | 40420 | HOME DEPOT INC | 23.030 | 5,596,043.04 | |
| 11/10 | 350,376 | | 40655 | HEWLETT PACKARD CO | 37.290 | 13,079,536.04 | |
| 11/10 | 188,664 | | 40890 | INTERNATIONAL BUSINESS MACHS | 92.660 | 17,489,152.24 | |
| 11/10 | 795,084 | | 41125 | INTEL CORP | 15.880 | 12,657,736.92 | |
| 11/10 | 390,804 | | 41360 | JOHNSON & JOHNSON | 61.320 | 23,979,733.28 | |
| 11/10 | 512,088 | | 41595 | J.P. MORGAN CHASE & CO | 41.730 | 21,389,915.24 | |
| 11/10 | 215,616 | | 41830 | KRAFT FOOD INC | 30.100 | 6,498,665.60 | |
| 11/10 | 282,996 | | 42065 | COCA COLA CO | 45.500 | 12,882,637.00 | |
| 11/10 | 161,712 | | 42300 | MCDONALDS CORP | 57.230 | 9,261,245.76 | |
| 11/10 | 161,712 | | 42535 | MEDTRONIC INC | 40.300 | 6,523,461.60 | |
| 11/10 | 94,332 | | 42770 | 3M COMPANY | 64.690 | 6,106,110.08 | |
| 11/10 | 282,996 | | 43005 | ALTRIA GROUP INC | 18.890 | 5,357,113.44 | |
| 11/10 | 296,472 | | 43240 | MERCK & CO | 30.510 | 9,057,218.72 | |
| 11/10 | 1,091,556 | | 43475 | MICROSOFT CORP | 23.200 | 25,367,761.20 | |
| 11/10 | 552,516 | | 43710 | ORACLE CORPORATION | 18.600 | 10,298,897.60 | |
| 11/10 | 121,284 | | 44415 | OCCIDENTAL PETROLEUM CORP | 56.010 | 6,797,967.84 | |
| 11/10 | 215,616 | | 44650 | PEPSICO INC | 57.550 | 12,417,324.80 | |
| 11/10 | 956,796 | | 44885 | PFIZER INC | 17.960 | 17,222,327.16 | |
| 11/10 | 417,756 | | 45120 | PROCTER & GAMBLE CO | 65.230 | 27,256,93X.88 | |
| | | | | CONTINUED ON PAGE  10 | | | |

CONTINUED ON PAGE  10

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: 11/30/08
PAGE: 10

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|-------------|------|------|------|
| 11/10 | 282,996 | | 45355 | PHILLIP MORRIS INTERNATIONAL | 44.030 | 12,471,632.88 | |
| 11/10 | 229,092 | | 45590 | QUALCOMM INC | 37.310 | 8,556,585.52 | |
| 11/10 | 175,188 | | 45825 | SCHLUMBERGER LTD | 50.500 | 8,854,001.00 | |
| 11/10 | 835,512 | | 46060 | AT&T INC | 28.580 | 23,912,352.96 | |
| 11/10 | 485,136 | | 46295 | TIME WARNER INC | 11.010 | 5,340,752.36 | |
| 11/10 | 134,760 | | 46530 | UNITED PARCEL SVC INC CLASS B | 54.420 | 7,339,029.20 | |
| 11/10 | 242,568 | | 46765 | U S BANCORP | 31.510 | 7,653,019.68 | |
| 11/10 | 134,760 | | 47000 | UNITED TECHNOLOGIES CORP | 56.430 | 7,609,896.80 | |
| 11/10 | 404,280 | | 47235 | VERIZON COMMUNICATIONS | 32 | 12,953,131.00 | |
| 11/10 | 458,184 | | 47470 | WELLS FARGO & CO NEW | 34.600 | 15,871,493.40 | |
| 11/10 | 309,948 | | 47705 | WAL-MART STORES INC | 55.710 | 17,279,600.08 | |
| 11/10 | 727,704 | | 47940 | EXXON MOBIL CORP | 75.800 | 55,189,071.20 | |
| 11/10 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/10/08 | DIV | | 1.59 |
| 11/10 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV-FDMXX | CW | .48 | |
| 11/10 | | 29,394 | 12908 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 29,394.00 |
| 11/10 | | 149,350,000 | 13109 | U S TREASURY BILL DUE 3/12/2009     3/12/2009 | 99.875 | | 149,163,312.50 |
| 11/10 | | 159,125,000 | 13287 | U S TREASURY BILL DUE 03/19/2009     3/19/2009 | 99.867 | | 158,913,363.75 |
| | | | | CONTINUED ON PAGE  11 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPEC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING: 11/30/08    PAGE: 11    A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT, RECEIVED OR LONG | SOLD, DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | | 74,550,000 | 13498 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.834 | | 74,426,247.00 |
| 11/10 | | 74,550,000 | 13700 | U S TREASURY BILL DUE 4/02/2009 4/02/2009 | 99.770 | | 74,378,535.00 |
| 11/10 | | 131,750,000 | 13919 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.742 | | 131,410,085.00 |
| 11/10 | | 57,200,000 | 14147 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | | 57,020,592.00 |
| 11/10 | 750,000 | | 14370 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | 747,645.00 | |
| 11/10 | 8,061 | | 14597 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 8,061.00 | |
| 11/18 | | 282,611 | 49343 | ANHEUSER BUSCH COS INC | 70 | | 19,782,770.00 |
| 11/18 | 19,800,000 | | 49578 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.830 | 19,766,340.00 | |
| 11/18 | 16,430 | | 49816 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,430.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 1.56 |
| | | | | CONTINUED ON PAGE 12 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

CONTINUED ON PAGE 12

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ◦ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 010 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

| PERIOD ENDING | PAGE | |
|---|---|---|
| 11/30/08 | 12 | A |

YOUR ACCOUNT NUMBER
1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FOLXX | CV | .47 | |
| 11/19 | | 24,491 | 51510 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 24,491.00 |
| 11/19 | 179,125,000 | | 56115 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 178,992,447.50 | |
| 11/19 | 18,862 | | 60549 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 18,862.00 |
| 11/20 | | 179,125,000 | 63792 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.962 | | 179,056,932.50 |
| 11/20 | 179,150,000 | | 64030 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.947 | 179,055,050.50 | |
| 11/20 | 1,882 | | 64269 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 1,882.00 |
| 11/25 | 47,745 | | 64510 | APPLE INC | 85.070 | -4,063,576.15 | ... |
| 11/25 | 84,880 | | 64748 | ABBOTT LABORATORIES | 54.140 | 4,598,798.20 | |
| 11/25 | 58,355 | | 64986 | AMGEN INC | 53.630 | 3,131,912.65 | |
| 11/25 | 270,955 | | 65224 | BANK OF AMERICA | 12.980 | 3,522,625.90 | |
| 11/25 | 31,830 | | 65462 | BAXTER INTERNATIONAL INC | 52.570 | 1,674,576.10 | |
| 11/25 | 63,660 | | 65700 | BANK OF NEW YORK MELLON CORP | 24.690 | 1,574,311.40 | |
| 11/25 | 106,100 | | 65938 | BRISTOL MYERS SQUIBB COMPANY | 20.140 | 2,141,098.00 | |
| | | | | CONTINUED ON PAGE   13 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 72/143 * RCVD AT 1/23/2003 7:40:00 PM [Romance Standard Time] * SVR:LUI4/MONT/N01/23 * DNIS:210 * CSID: * DURATION (mm-ss):AG-51

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ◇ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING: 11/30/08    PAGE 13

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT<br>RECEIVED OR LONG | SOLD<br>DELIVERED OR SHORT | TKN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED<br>TO YOUR ACCOUNT | AMOUNT CREDITED<br>TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | 307,690 | | 66176 | CITI GROUP INC | 6.100 | 1,889,216.00 | |
| 11/25 | 26,525 | | 66414 | COLGATE PALMOLIVE CO | 62.660 | 1,663,117.50 | |
| 11/25 | 153,845 | | 66652 | COMCAST CORP CL A | 13.970 | 2,155,367.65 | |
| 11/25 | 84,880 | | 66890 | CONOCOPHILLIPS | 45.100 | 3,831,483.00 | |
| 11/25 | 318,500 | | 67128 | CISCO SYSTEMS INC | 14.970 | 4,777,683.00 | |
| 11/25 | 79,575 | | 67366 | CVS CAREMARK CORP | 27.040 | 2,154,891.00 | |
| 11/25 | 111,405 | | 67604 | CHEVRON CORP | 68.710 | 7,659,093.55 | |
| 11/25 | 100,795 | | 67842 | THE WALT DISNEY CO | 19.760 | 1,995,740.20 | |
| 11/25 | 37,135 | | 68080 | EXELON CORP | 48.740 | 1,811,444.90 | |
| 11/25 | 583,550 | | 68318 | GENERAL ELECTRIC CO | 14.010 | 8,198,877.50 | |
| 11/25 | 10,610 | | 68556 | GOOGLE | 275 | 2,918,174.00 | |
| 11/25 | 90,185 | | 68794 | HOME DEPOT INC | 19.530 | 1,764,920.05 | |
| 11/25 | 132,625 | | 69032 | HEWLETT PACKARD CO | 32.990 | 4,380,603.75 | |
| 11/25 | 74,270 | | 69270 | INTERNATIONAL BUSINESS MACHS | 75.080 | 5,579,161.60 | |
| 11/25 | 307,690 | | 69508 | INTEL CORP | 12.270 | 3,787,663.30 | |
| 11/25 | 153,845 | | 69746 | JOHNSON & JOHNSON | 57.650 | 8,875,317.25 | |
| 11/25 | 201,590 | | 69984 | J.P. MORGAN CHASE & CO | 27.760 | 5,604,201.40 | |
| 11/25 | 795,575 | | 70222 | KRAFT FOOD INC | 25.900 | 2,064,175.50 | |
| 11/25 | 106,100 | | 70460 | COCA-COLA CO | 42.040 | 4,466,688.00 | |
| 11/25 | 58,355 | | 70698 | MCDONALDS CORP | 55 | 3,211,859.00 | |
| 11/25 | 63,660 | | 70936 | MEDTRONIC INC | 30.800 | 1,963,274.00 | |
| 11/25 | 37,135 | | 71174 | 3M COMPANY | 58.280 | 2,165,712.80 | |
| 11/25 | 111,405 | | 71412 | ALTRIA GROUP INC | 16.250 | 1,814,787.25 | |
| 11/25 | 116,710 | | 71650 | MERCK & CO | 25 | 2,922,418.00 | |

CONTINUED ON PAGE 14

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

1-FR109-3-0

11/30/08    14    A

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | 424,400 | | 71888 | MICROSOFT CORP | 18.100 | 7,698,616.00 | |
| 11/25 | 212,200 | | 72802 | ORACLE CORPORATION | 16.050 | 3,414,298.00 | |
| 11/25 | 47,745 | | 72840 | OCCIDENTAL PETROLEUM CORP | 44.570 | 2,129,903.65 | |
| 11/25 | 84,880 | | 73078 | PEPSICO INC | 51.800 | 4,400,179.00 | |
| 11/25 | 366,045 | | 73316 | PFIZER INC | 15.320 | 5,622,450.40 | |
| 11/25 | 159,150 | | 73554 | PROCTER & GAMBLE CO | 61.940 | 9,864,117.00 | |
| 11/25 | 111,405 | | 73792 | PHILLIP MORRIS INTERNATIONAL | 36.380 | 4,057,369.90 | |
| 11/25 | 90,185 | | 74030 | QUALCOMM INC | 29.850 | 2,695,629.25 | |
| 11/25 | 63,660 | | 74268 | SCHLUMBERGER LTD | 46.270 | 2,948,094.20 | |
| 11/25 | 318,300 | | 74506 | AT&T INC | 25 | 7,970,232.00 | |
| 11/25 | 196,285 | | 74744 | TIME WARNER INC | 8.010 | 1,580,093.85 | |
| 11/25 | 53,050 | | 74982 | UNITED PARCEL SVC INC CLASS B | 50.760 | 2,694,940.00 | |
| 11/25 | 95,490 | | 75220 | U S BANCORP | 23.400 | 2,238,285.00 | |
| 11/25 | 53,050 | | 75458 | UNITED TECHNOLOGIES CORP | 44.890 | 2,383,536.50 | |
| 11/25 | 153,845 | | 75696 | VERIZON COMMUNICATIONS | 26.570 | 4,093,814.65 | |
| 11/25 | 206,895 | | 75934 | WELLS FARGO & CO NEW | 23.820 | 4,936,513.90 | |
| 11/25 | 122,015 | | 76172 | WAL-MART STORES INC | 514.450 | 69,282,551.75 | |
| 11/25 | 74,270 | | 76410 | WYETH | 33 | 2,453,880.00 | |
| 11/25 | 286,470 | | 76648 | EXXON MOBIL CORP | 72 | 20,657,298.00 | |
| 11/25 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/25/08. | DIV | | 2.05 |
| 11/25 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CV | | .62 |
| | | | | CONTINUED ON PAGE. 15 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING: 11/30/08    PAGE: 15    A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TKT | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|-----|-------------|-----------------|-----------|-----------|
| 11/25 | | 20,744 | 77221 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 20,744.00 |
| 11/25 | | 199,700,000 | 77479 | U S TREASURY BILL DUE 4/16/2009 | 99.878 | | 199,456,366.00 |
| 11/26 | | 1,589 | 78020 | COLGATE PALMOLIVE CO | 62.730 | | 99,614.97 |
| 11/26 | 45 | | 78125 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 45.00 | |
| | | | | NEW BALANCE | | 276,273,307.54 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 2,745,626 | | | AT&T INC | 28.560 | | |
| | 730,848 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 959,238 | | | ALTRIA GROUP INC | 16.080 | | |
| | 502,458 | | | AMGEN INC | 55.540 | | |
| | 411,102 | | | APPLE INC | 92.670 | | |
| | -2,358,948 | | | BANK OF AMERICA | 16.250 | | |
| | 537,133 | | | BANK OF NEW YORK MELLON CORP | 30.210 | | |
| | 287,544 | | | BAXTER INTERNATIONAL INC | 52.900 | | |
| | 322,984 | | | BOEING CO | 42.630 | | |
| | 927,036 | | | BRISTOL MYERS SQUIBB COMPANY | 20.700 | | |
| | 674,167 | | | CVS CAREMARK CORP | 28.930 | | |
| | 972,714 | | | CHEVRON CORP | 79.010 | | |
| | 2,759,047 | | | CISCO SYSTEMS INC | 16.540 | | |
| | | | | CONTINUED ON PAGE 16 | | | |

CONTINUED ON PAGE 16

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York◦London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
13 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING **11/30/08**   PAGE **16**   A

YOUR ACCOUNT NUMBER **1-FR109-3-0**

| DATE | ACCOUNT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|--------------------------|--------------------------|-----|-------------|-----------------|--------------------------------|----------------------------------|
| | 2,560,048 | | | CITI GROUP INC | 8.290 | | |
| | 927,036 | | | COCA COLA CO | 46.870 | | |
| | 24,936 | | | COLGATE PALMOLIVE CO | 65.070 | | |
| | 1,354,032 | | | COMCAST CORP | 17.340 | | |
| | | | | CL A | | | |
| | 719,845 | | | COMCOPHILIPS | 52.520 | | |
| | 883,776 | | | THE WALT DISNEY CO | 22.520 | | |
| | 37,135 | | | EXELON CORP | 56.210 | | |
| | 2,455,609 | | | EXXON MOBIL CORP | 80.150 | | |
| | 4,908,407 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | 174,968 | | | GOLDMAN SACHS GROUP INC | 78.990 | | |
| | 91,356 | | | GOOGLE | 292.960 | | |
| | 1,155,426 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 805,896 | | | HOME DEPOT INC | 23.110 | | |
| | 2,624,900 | | | INTEL CORP | 13.800 | | |
| | 639,492 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 1,735,764 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,313,659 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 714,540 | | | KRAFT FOOD INC | 27.210 | | |
| | 531,828 | | | MCDONALDS CORP | 58.750 | | |
| | 537,133 | | | MEDTRONIC INC | 30.520 | | |
| | 1,006,916 | | | MERCK & CO | 26.720 | | |
| | 3,683,610 | | | MICROSOFT CORP | 20.220 | | |
| | 400,099 | | | OCCIDENTAL PETROLEUM CORP | 54.140 | | |
| | 1,856,490 | | | ORACLE CORPORATION | 16.090 | | |
| | | | | | | | |
| | | | | CONTINUED ON PAGE 17 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 116/147 * RCVD AT 1/02/2008 7:00:00 PM [Romance Standard Time] * SVR:LJ4/MONT00/23 * DNIS:201 * CSID: * DURATION (mm-ss):40-51



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING 11/30/08    PAGE 17    A

YOUR ACCOUNT NUMBER 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 730,848 | | | PEPSICO INC | 56.700 | | |
| | 3,167,731 | | | PFIZER INC | 16.430 | | |
| | 975,132 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 1,410,713 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 776,526 | | | QUALCOMM INC | 33.570 | | |
| | 561,612 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 45 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 319,746 | | | 3M COMPANY | 66.930 | | |
| | 1,665,607 | | | TIME WARNER INC | 9.050 | | |
| | 822,204 | | | U S BANCORP | 26.980 | | |
| | 456,780 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 456,780 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | 1,327,135 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,050,594 | | | WAL-MART STORES INC | 55.880 | | |
| | 1,579,577 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | 74,270 | | | WYETH | 36.010 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG                        SHORT | | | |
| | 1,951,174,724.18 | | | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ∎ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8ST
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY   B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING 11/30/08
PAGE 18   A

YOUR ACCOUNT NUMBER  1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 13,234,601.82 |
| | | | | GROSS PROCEEDS FROM SALES | | | 13,014,379,367.95 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 18 PAGE 18 RCVD AT 12/22/2008 7:30:09 PM [Romance Standard Time] * SVR:LU04/MONT/0120 * DNIS:210 * CSID:* DURATION (mm:ss):40-51

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800.334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 010 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

| YOUR ACCOUNT NUMBER | | PAGE | |
| --- | --- | --- | --- |
| 11/30/08 | | 1 | A |

YOUR ACCOUNT NUMBER: 1-FR109-4-0

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | BALANCE FORWARD | | | 87,706,206.00 |
| 11/06 | | 15,894 | 18964 | S & P 100 INDEX NOVEMBER 470 CALL | 20.300 | | 32,248,926.00 |
| 11/06 | 15,894 | | 19199 | S & P 100 INDEX NOVEMBER 460 PUT | 20.500 | 32,598,594.00 | |
| 11/07 | | 11,003 | 31485 | S & P 100 INDEX NOVEMBER 470 CALL | 22 | | 24,195,597.00 |
| 11/07 | 11,003 | | 31720 | S & P 100 INDEX NOVEMBER 460 PUT | 13.800 | 15,195,143.00 | |
| 11/10 | | 13,476 | 43945 | S & P 100 INDEX NOVEMBER 485 CALL | 12.400 | | 16,696,764.00 |
| 11/10 | 13,476 | | 44180 | S & P 100 INDEX NOVEMBER 475 PUT | 16.800 | 22,653,156.00 | |
| 11/19 | | 40,373 | 30158 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 104,929,427.00 |
| 11/19 | 40,373 | | 30396 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 121,159,373.00 | |
| 11/19 | 26,897 | | 30634 | S & P 100 INDEX NOVEMBER 470 CALL | 1.500 | 4,061,447.00 | |
| 11/19 | 13,476 | | 30872 | S & P 100 INDEX NOVEMBER 485 CALL | .900 | 1,226,316.00 | |
| 11/19 | | 26,897 | 31110 | S & P 100 INDEX NOVEMBER 460 PUT | 45 | | 121,009,603.00 |
| 11/19 | | 13,476 | 31348 | S & P 100 INDEX NOVEMBER 475 PUT | 59 | | 79,494,924.00 |
| | | | | CONTINUED ON PAGE   2. | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 12U43* RCVD AT 12/22/0408 7:00:09 PM [Romance Standard Time] * SVR:LUARMC01R01/02* DNIS:210* CSID:* DURATION (mm-ss):40-51



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-4343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

YOUR ACCOUNT NUMBER
1-FR109-4-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| 11/25 | | 5,305 | 72126 | S & P 100 INDEX DECEMBER 380 CALL | 34 | | 18,031,695.00 |
| 11/25 | 5,305 | | 72364 | S & P 100 INDEX DECEMBER 370 PUT | 21 | 11,145,805.00 | |
| | | | | NEW BALANCE | | | 276,273,308.00 |
| | | 40,573 | | SECURITY POSITIONS S & P 100 INDEX DECEMBER 430 CALL | MKT PRICE 23.300 | | |
| | | 5,305 | | S & P 100 INDEX DECEMBER 380 CALL | 61 | | |
| | 40,573 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | 5,305 | | | S & P 100 INDEX DECEMBER 370 PUT | 5.100 | | |
| | | | | MARKET VALUE OF SECURITIES LONG          SHORT 69,321,000.00   126,429,590.00- | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES.

EXHIBIT H

**USD Class**

| Date | Subscriptions | Redemptions |
|---|---|---|
| 29-Apr-04 | $20,017,657.10 | |
| 16-May-04 | | |
| 31-May-04 | $250,000.01 | |
| 14-Jun-04 | | |
| 29-Jun-04 | $102,489.94 | |
| 14-Jul-04 | | |
| 29-Jul-04 | $2,460,339.04 | |
| 15-Aug-04 | | |
| 30-Aug-04 | $842,749.95 | $17,234,367.76 |
| 14-Sep-04 | | |
| 29-Sep-04 | $6,439,987.31 | |
| 14-Oct-04 | | |
| 29-Oct-04 | $1,669,997.46 | |
| 14-Nov-04 | | |
| 29-Nov-04 | $24,649,921.52 | |
| 14-Dec-04 | | |
| 30-Dec-04 | $22,470,069.22 | $413,019.51 |
| 16-Jan-05 | | |
| 30-Jan-05 | $47,079,911.00 | |
| 14-Feb-05 | | |
| 27-Feb-05 | $41,125,945.83 | |
| 14-Mar-05 | | |
| 30-Mar-05 | $21,765,206.13 | |
| 14-Apr-05 | | $102,000.42 |
| 29-Apr-05 | $19,500,999.81 | $67,389,999.57 |
| 16-May-05 | | |
| 30-May-05 | $29,789,999.71 | $13,728,906.56 |
| 14-Jun-05 | | |
| 29-Jun-05 | $14,448,999.76 | |
| 14-Jul-05 | | |
| 30-Jul-05 | $4,609,979.44 | $149,999.95 |
| 15-Aug-05 | | |
| 30-Aug-05 | $2,822,499.69 | $3,633,490.97 |
| 14-Sep-05 | | $428,496.00 |
| 29-Sep-05 | $649,968.77 | $16,175,892.60 |
| 16-Oct-05 | | |
| 30-Oct-05 | $179,999.82 | $359,639.63 |
| 14-Nov-05 | | |
| 29-Nov-05 | $19,134,999.48 | $4,104,840.42 |
| 14-Dec-05 | | $53,685.83 |
| 30-Dec-05 | $459,999.87 | $6,880,214.81 |
| 14-Jan-06 | | $262,070.08 |
| 30-Jan-06 | $5,294,999.75 | $99,999.93 |
| 14-Feb-06 | | |
| 27-Feb-06 | $15,999,999.99 | $122,564.27 |
| 14-Mar-06 | | $25,949.25 |
| 30-Mar-06 | $1,699,999.80 | $1,599,999.92 |
| 17-Apr-06 | | $2,199,662.68 |
| 29-Apr-06 | $2,900,025.22 | $82,555.67 |
| 14-May-06 | | |
| 30-May-06 | $6,389,999.14 | $18,812,381.44 |
| 14-Jun-06 | | $405,905.21 |
| 29-Jun-06 | $2,758,510.59 | $5,717,625.20 |
| 16-Jul-06 | | |
| 30-Jul-06 | $3,207,999.69 | |
| 15-Aug-06 | | $2,300,437.69 |
| 30-Aug-06 | $5,932,528.26 | $330,559.14 |
| 14-Sep-06 | | $34,955.29 |
| 29-Sep-06 | $6,168,999.65 | |
| 15-Oct-06 | | $134,575.09 |

| Date | | |
|---|---|---|
| 30-Oct-06 | $6,367,899.49 | |
| 14-Nov-06 | | |
| 29-Nov-06 | $11,200,225.83 | |
| 14-Dec-06 | | |
| 30-Dec-06 | $8,400,998.98 | $1,134,584.34 |
| 14-Jan-07 | | |
| 30-Jan-07 | $1,772,999.43 | $2,417,087.99 |
| 14-Feb-07 | | $117,866.83 |
| 27-Feb-07 | $4,361,307.11 | $867,508.42 |
| 14-Mar-07 | | $728,785.38 |
| 30-Mar-07 | $17,395,974.43 | $804,379.16 |
| 15-Apr-07 | | $119,712.23 |
| 29-Apr-07 | $465,421,348.04 | $5,312,094.00 |
| 14-May-07 | $2,001,652.02 | $834,941.92 |
| 30-May-07 | $53,177,730.32 | $1,484,596.76 |
| 14-Jun-07 | | $2,988,422.07 |
| 29-Jun-07 | $118,376,999.05 | $25,286,324.44 |
| 15-Jul-07 | | $238,235.92 |
| 30-Jul-07 | $8,048,499.47 | |
| 15-Aug-07 | | $297,164.95 |
| 30-Aug-07 | $55,978,999.43 | $11,797,018.16 |
| 16-Sep-07 | | $7,120,126.38 |
| 29-Sep-07 | $65,041,998.99 | $3,693,553.93 |
| 14-Oct-07 | | $75,468.03 |
| 30-Oct-07 | $145,038,699.60 | $123,602.28 |
| 14-Nov-07 | | $2,614,999.83 |
| 29-Nov-07 | $80,632,620.20 | $3,298,762.10 |
| 16-Dec-07 | | $616,845.57 |
| 30-Dec-07 | $36,764,994.63 | $14,664,888.03 |
| 14-Jan-08 | | |
| 30-Jan-08 | $34,474,099.24 | $9,005,967.86 |
| 14-Feb-08 | | $118,379.95 |
| 28-Feb-08 | $40,555,946.50 | $196,425.16 |
| 16-Mar-08 | | $456,141.95 |
| 30-Mar-08 | $42,009,998.79 | $242,931.96 |
| 14-Apr-08 | | $197,708.14 |
| 29-Apr-08 | $29,119,973.81 | $1,134,144.75 |
| 14-May-08 | | $377,712.29 |
| 30-May-08 | $21,634,498.38 | $665,412.20 |
| 15-Jun-08 | | |
| 29-Jun-08 | $179,146,998.84 | $1,622,728.00 |
| 14-Jul-08 | | $1,943,413.77 |
| 30-Jul-08 | $56,593,999.35 | $1,207,941.31 |
| 17-Aug-08 | | $31,309.21 |
| 30-Aug-08 | $32,532,799.15 | $4,490,414.23 |
| 14-Sep-08 | | $550,680.82 |
| 29-Sep-08 | $2,537,599.36 | $46,067,468.53 |
| 14-Oct-08 | $27,365.12 | $26,849,550.11 |
| 30-Oct-08 | $1,939,799.21 | $298,454,670.33 |
| 16-Nov-08 | | $3,143,453.33 |
| 29-Nov-08 | | |
| TOTAL: | $1,851,380,807.72 | $646,177,217.53 |

**EUR Class**

| Date | Subscriptions | Redemptions |
|---|---|---|
| 29-Apr-04 | | |
| 16-May-04 | | |
| 31-May-04 | 681,480.00 € | |
| 14-Jun-04 | | |
| 29-Jun-04 | 227,587.12 € | |
| 14-Jul-04 | | |
| 29-Jul-04 | 14,083,156.92 € | |
| 15-Aug-04 | | |
| 30-Aug-04 | 3,674,864.15 € | |
| 14-Sep-04 | | |
| 29-Sep-04 | 5,798,069.34 € | |
| 14-Oct-04 | | |
| 29-Oct-04 | 8,055,997.00 € | |
| 14-Nov-04 | | |
| 29-Nov-04 | 13,088,591.23 € | |
| 14-Dec-04 | | 17,580.04 € |
| 30-Dec-04 | 8,121,624.10 € | |
| 16-Jan-05 | | 600,234.11 € |
| 30-Jan-05 | 14,734,289.24 € | 20,884.73 € |
| 14-Feb-05 | | |
| 27-Feb-05 | 7,003,543.24 € | 54,442.29 € |
| 14-Mar-05 | | |
| 30-Mar-05 | 10,410,571.19 € | 389,557.47 € |
| 14-Apr-05 | | |
| 29-Apr-05 | 8,513,320.68 € | 110,232.41 € |
| 16-May-05 | | |
| 30-May-05 | 5,883,197.02 € | 9,999,999.94 € |
| 14-Jun-05 | | 45,137.20 € |
| 29-Jun-05 | 38,019,085.75 € | 9,889,398.58 € |
| 14-Jul-05 | | |
| 30-Jul-05 | 22,631,271.03 € | 353,187.09 € |
| 15-Aug-05 | | 50,714.56 € |
| 30-Aug-05 | 1,687,695.54 € | 70,436.46 € |
| 14-Sep-05 | | 25,121.64 € |
| 29-Sep-05 | 3,337,407.02 € | 284,300.57 € |
| 16-Oct-05 | | 404,394.97 € |
| 30-Oct-05 | 323,851.98 € | 2,832,320.38 € |
| 14-Nov-05 | | 10,904.28 € |
| 29-Nov-05 | 8,343,399.40 € | 2,806,839.42 € |
| 14-Dec-05 | | |
| 30-Dec-05 | 2,976,758.50 € | 2,828,276.69 € |
| 14-Jan-06 | | 373,311.89 € |
| 30-Jan-06 | 12,187,686.79 € | 543,881.44 € |
| 14-Feb-06 | | 538,572.83 € |
| 27-Feb-06 | 86,293,934.27 € | 850,865.54 € |
| 14-Mar-06 | | 460,638.15 € |
| 30-Mar-06 | 13,634,558.15 € | 554,633.54 € |
| 17-Apr-06 | | |
| 29-Apr-06 | 9,701,069.47 € | 1,435,877.56 € |
| 14-May-06 | | |
| 30-May-06 | 35,022,647.80 € | 387,366.52 € |
| 14-Jun-06 | | 161,397.53 € |
| 29-Jun-06 | 13,684,976.80 € | 966,865.95 € |
| 16-Jul-06 | | |
| 30-Jul-06 | 17,312,961.74 € | 2,518,569.98 € |
| 15-Aug-06 | | |
| 30-Aug-06 | 13,179,999.24 € | 1,110,940.53 € |
| 14-Sep-06 | | 28,603.30 € |
| 29-Sep-06 | 5,418,814.89 € | 519,780.18 € |
| 15-Oct-06 | | 1,071,406.20 € |

| | | |
|---|---|---|
| 30-Oct-06 | 11,615,481.94 € | 15,837,697.55 € |
| 14-Nov-06 | | 409,899.04 € |
| 29-Nov-06 | 14,268,256.09 € | 393,706.60 € |
| 14-Dec-06 | | 10,589.62 € |
| 30-Dec-06 | 5,830,816.67 € | 11,527,156.00 € |
| 14-Jan-07 | | 66,630.23 € |
| 30-Jan-07 | 11,855,915.16 € | 4,233,791.04 € |
| 14-Feb-07 | | 197,220.72 € |
| 27-Feb-07 | 17,759,509.76 € | 5,987,867.65 € |
| 14-Mar-07 | | 761,016.97 € |
| 30-Mar-07 | 15,513,369.50 € | 265,365.43 € |
| 15-Apr-07 | | 4,010,394.29 € |
| 29-Apr-07 | 12,526,894.33 € | 2,788,706.21 € |
| 14-May-07 | | 227,046.74 € |
| 30-May-07 | 8,889,727.09 € | 14,441,575.60 € |
| 14-Jun-07 | | 262,512.36 € |
| 29-Jun-07 | 5,765,109.23 € | 15,790,900.06 € |
| 15-Jul-07 | | 8,900.38 € |
| 30-Jul-07 | 5,775,385.53 € | 1,144,470.68 € |
| 15-Aug-07 | | 1,836,240.87 € |
| 30-Aug-07 | 4,881,481.08 € | 275,042.49 € |
| 16-Sep-07 | | 819,617.31 € |
| 29-Sep-07 | 3,611,897.66 € | 1,385,991.24 € |
| 14-Oct-07 | | 2,701,204.97 € |
| 30-Oct-07 | 14,332,607.98 € | 12,459,348.03 € |
| 14-Nov-07 | | 1,003,451.54 € |
| 29-Nov-07 | 17,126,615.37 € | 15,224,365.55 € |
| 16-Dec-07 | | 1,018,977.08 € |
| 30-Dec-07 | 5,566,970.91 € | 6,178,883.09 € |
| 14-Jan-08 | | 1,300,279.76 € |
| 30-Jan-08 | 6,748,665.61 € | 9,839,800.34 € |
| 14-Feb-08 | | 1,742,476.09 € |
| 28-Feb-08 | 5,920,288.07 € | 2,095,616.05 € |
| 16-Mar-08 | | 16,360,950.61 € |
| 30-Mar-08 | 13,320,298.10 € | 3,524,308.76 € |
| 14-Apr-08 | | 397,362.27 € |
| 29-Apr-08 | 8,282,382.15 € | 10,413,528.94 € |
| 14-May-08 | | 2,971,786.50 € |
| 30-May-08 | 10,929,254.72 € | 1,419,324.35 € |
| 15-Jun-08 | | 289,917.92 € |
| 29-Jun-08 | 7,372,795.48 € | 7,088,561.85 € |
| 14-Jul-08 | | 1,036,256.63 € |
| 30-Jul-08 | 2,880,214.13 € | 1,950,649.46 € |
| 17-Aug-08 | | 2,642,033.67 € |
| 30-Aug-08 | 7,638,864.06 € | 1,656,406.18 € |
| 14-Sep-08 | | 2,263,523.13 € |
| 29-Sep-08 | | 16,418,687.13 € |
| 14-Oct-08 | | 6,688,635.09 € |
| 30-Oct-08 | | 29,444,529.13 € |
| 16-Nov-08 | | 11,072,504.63 € |
| 29-Nov-08 | | |
| TOTAL | 602,445,210.24 € | 294,202,438.77 € |

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adversary Proceeding |
| Plaintiff-Applicant, | No. 08-01789-BRL |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ORDER ON APPLICATION FOR AN ENTRY OF AN ORDER APPROVING FORM AND MANNER OF PUBLICATION AND MAILING OF NOTICES, SPECIFYING PROCEDURES FOR FILING, DETERMINATION, AND ADJUDICATION OF CLAIMS; AND PROVIDING OTHER RELIEF

An order having been entered on consent by the Honorable Louis L. Stanton, United States District Judge, on December 15, 2008 (the "Protective Order") (1) finding that the customers of Bernard L. Madoff Investment Securities LLC (the "Debtor") are in need of the protection afforded by the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA"), (2) appointing Irving H. Picard as Trustee (the "Trustee") and Baker & Hostetler LLP as counsel for the Trustee, and (3) removing the liquidation proceeding to this Court; and it appearing, as set forth in the Trustee's Application dated December 21, 2008 (the "Application"), that this Court is required by SIPA and the Bankruptcy Code to direct the giving of notice regarding, among other things, the commencement of this liquidation proceeding, the appointment of the Trustee and his counsel; the hearing on disinterestedness of the Trustee and his counsel; the meeting of creditors; and the Trustee having recommended procedures for

resolution of customer claims and distributions; and it appearing that notice of the Application

has been given to the Securities Investor Protection Corporation ("SIPC") and that no other

notice need be given; no adverse interest having been represented, and sufficient cause appearing

therefor, it is:

ORDERED, that the Application is granted; and it is further

ORDERED, that the Notice, explanatory letters, claim forms, and instructions

appearing as Exhibits A, B, C, D, E, F, G and H to the Application, or substantially in that form,

be, and they hereby are, authorized and approved, and shall be mailed by the Trustee to all

former customers, broker-dealers, and other creditors of the Debtor, in conformance with this

Order and in substantially the form appearing in those Exhibits, on or before January 9, 2008;

and it is further

ORDERED, that the Trustee shall have the authority, on the advice and consent of

SIPC, to amend these forms without further order of this Court; and it is further

ORDERED, that under 15 U.S.C. §78fff-2(a)(1), the Trustee be, and he hereby is,

authorized and directed to cause the notice annexed as Exhibit A to the Application (the

"Notice") to be published once in *The New York Times*, all editions; *The Wall Street

Journal*, all editions; *The Financial Times*, all editions; *USA Today*, all editions;

*Jerusalem Post*, all editions; *Ye'diot Achronot*, all editions, on or before January 9, 2008;

and it is further

ORDERED, that under 15 U.S.C. §78fff-2(a)(1), the Trustee be, and he hereby is,

authorized and directed to mail (a) a copy of the Notice, explanatory information, and claim

form to each person who, from the books and records of the Debtor, appears to have been a

2

customer of the Debtor with an open account during the twelve (12) month period prior to December 11, 2008, (b) a copy of the Notice, explanatory letter, and claim form to creditors other than customers, and (c) a copy of the Notice, explanatory letter and Series 300 Rules to broker-dealers, at the addresses of such customers, broker-dealers, and creditors as they appear on available books and records of the Debtor, and finding that  such mailing complies with the Notice Provision; and it is further

ORDERED, that under 15 U.S.C. §78fff-2(a)(3), any claim of a customer for a net equity which is received by the Trustee after the expiration of sixty (60) days from the date of publication of the Notice need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from monies advanced by SIPC, it shall be satisfied in cash or securities (or both) as the Trustee may determine to be most economical to the estate; and it is further

ORDERED, that, pursuant to 15 U.S.C. §78fff-2(a)(2), all claims against the Debtor shall be filed with the Trustee; and it is further

ORDERED, that all claims against the Debtor shall be deemed properly filed only when received by the Trustee at Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC, Claims Processing Center, 2100 McKinney Ave., Suite 800, Dallas, TX 75201; and it is further

ORDERED, that February 4, 2009, at 10:00 a.m., at Courtroom 601 of the United States Bankruptcy Court, One Bowling Green, New York, New York, is fixed as the time and place for a hearing on the disinterestedness of the Trustee and his counsel, as required by 15 U.S.C. §78eee(b)(6)(B); and it is further

3

ORDERED, that objections, if any, to the appointment and retention of the Trustee or his counsel shall be in the form prescribed by the Federal Rules of Civil Procedure and shall be filed with the Court, preferably electronically (with a courtesy hard copy for Chambers) and a hard copy personally served upon Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111, Attention: David J. Sheehan, Esq. and Douglas E. Spelfogel, Esq., and the Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, D.C. 20005-2215, Attention: Kevin Bell, on or before 12:00 noon on January 30, 2009; and it is further

ORDERED, that (a) the meeting of creditors required by Section 341(a) of the Bankruptcy Code, 11 U.S.C. §341(a), shall be held on February 20, 2009, at 10:00 a.m., at the Auditorium at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004 and (b) the Trustee shall preside at such meeting of creditors for the purpose of examining the Debtor and any of its officers, directors or stockholders and conducting such other business as may properly come before such meeting; and it is further

ORDERED, that the Debtor, by any of its officers, directors, employees, agents or attorneys, shall comply with SIPA and the pertinent sections of the Bankruptcy Code, including, without limiting the generality of the foregoing, (a) by designating a person to appear and submit to examination under oath at the meeting of creditors under Section 341(a) of the Bankruptcy Code, and (b) by complying with the Debtor's duties under Section 521 of the Bankruptcy Code, 11 U.S.C. §521, i.e., (i) by timely filing the schedules of assets and liabilities, of executory contacts, of pending litigations and information about any other pertinent matters; (ii) timely filing a list of creditors, a schedule of assets and liabilities and a statement of financial

4

affairs, (iii) cooperating with the Trustee as necessary to enable the Trustee to perform his duties; and (iv) surrendering forthwith to the Trustee all property of the Debtor's estate and any and all recorded information, including, but not limited to, books, documents, records, papers and computer; and it is further

ORDERED, that the Trustee be, and he hereby is, authorized to satisfy, within the limits provided by SIPA, those portions of any and all customer claims and accounts which agree with the Debtor's books and records, or are otherwise established to the satisfaction of the Trustee pursuant to 15 U.S.C. §78fff-2(b), provided that the Trustee believes that no reason exists for not satisfying such claims and accounts; and it is further

ORDERED, that the Trustee be, and he hereby is, authorized to satisfy such customer claims and accounts (i) by delivering to a customer entitled thereto "customer name securities," as defined in 15 U.S.C. §78*lll*(3); (ii) by satisfying a customer's "net equity" claim, as defined in 15 U.S.C. §78*lll*(11), by distributing on a ratable basis securities of the same class or series of an issue on hand *as* "customer property," as defined in 15 U.S.C. §78*lll*(4), and, if necessary, by distributing cash from such customer property or cash advanced by SIPC, or purchasing securities for customers as set forth in 15 U.S.C. §78fff-2(d) within the limits set forth in 15 U.S.C. §78fff-3(a); and/or (iii) by completing contractual commitments where required pursuant to 15 U.S.C. §78fff-2(e) and SIPC's Series 300 Rules, 17 C.F.R. §300.300 et seq., promulgated pursuant thereto; and it is further

ORDERED, that with respect to claims for "net equity," as defined in 15 U.S.C. § 78*lll*(11), the Trustee be, and he hereby is, authorized to satisfy claims out of funds made available to the Trustee by SIPC notwithstanding the fact that there has not been any showing or

determination that there are sufficient funds of the Debtor available to satisfy such claims; and it is further

ORDERED, that with respect to claims relating to, or net equities based upon, securities of a class and series of an issuer which are ascertainable from the books and records of the Debtor or are otherwise established to the satisfaction of the Trustee, the Trustee be, and he hereby is, authorized to deliver securities of such class and series if and to the extent available to satisfy such claims in whole or in part, with partial deliveries to be made pro rata to the greatest extent considered practicable by the Trustee; and it is further

ORDERED, that with respect to any customer claim in which there is disagreement between such claimant and the Trustee with regard to satisfaction of a claim, the Trustee be, and he hereby is, authorized to enter into a settlement with such claimant with the approval of SIPC, and without further order of the Court, provided that any obligations incurred by the Debtor estate under the settlement are ascertainable from the books and records of the Debtor or are otherwise established to the satisfaction of the Trustee; and it is further

ORDERED, that with respect to customer claims which disagree with the Debtor's books and records and which are not resolved by settlement, the following procedures shall apply to resolve such controverted claims:

A.    The Trustee shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor, in a written form substantially conforming to Exhibit G to the Application.

B.    If the claimant desires to oppose the determination, the claimant shall be required to file with this Court, preferably electronically, and a hard copy with

the Trustee a written statement setting forth in detail the basis for the opposition, together with copies of any documents in support of such opposition, within thirty (30) days of the date on which the Trustee mails his determination to the claimant. If the claimant fails to file an opposition as hereinabove required, the Trustee's determination shall be deemed approved by the Court and binding on the claimant.

C.    Following receipt by the Trustee of an opposition by a claimant, the Trustee shall obtain a date and time for a hearing before this Court on the controverted claim and shall notify the claimant in writing of the date, time, and place of such hearing.

D.    If a claimant or his counsel fails to appear at the hearing on the controverted claim, then the Trustee's determination may be deemed confirmed by this Court and binding on the claimant.

ORDERED, that the bar date for all claims is six (6) months from the date of publication of Notice and mailing that complies with the Notice Provisions ("Publication Date"), and the bar date for receiving the maximum possible protection for customer claims under SIPA is sixty (60) days from the Publication Date; and it is further

ORDERED, that under 15 U.S.C. §78fff-1(c) the Trustee shall file a progress report with this Court within six (6) months after publication of the Notice of Commencement, and shall file interim reports every six (6) months thereafter; and it is further

ORDERED, that the requirement of Local Bankruptcy Rule 9013-1(b) regarding the filing of a separate memorandum of law is waived.

Dated: December 23, 2008
     New York, New York

                    /s/Burton R. Lifland___
                    BURTON R. LIFLAND
                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 4

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David Sheehan (DS 4818)
Email: dsheehan@bakerlaw.com
Douglas E. Spelfogel (DS 7097)
Email: dspelfogel@bakerlaw.com
Richard J. Bernard (RB 6371)
Email: rbernard@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adversary Proceeding |
| Plaintiff-Applicant | No. 08-01789-JMP |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC | |
| Defendant. | |

**TRUSTEE'S EX-PARTE APPLICATION FOR ENTRY OF AN ORDER
APPROVING FORM AND MANNER OF PUBLICATION AND MAILING
OF NOTICES, SPECIFYING PROCEDURES FOR FILING, DETERMINATION,
AND ADJUDICATION OF CLAIMS; AND PROVIDING OTHER RELIEF**

Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("Debtor"), by and through his undersigned

counsel, respectfully requests, on an ex-parte basis, entry of an order approving the form and

manner of the publication and mailing of required notices, specifying the procedures for the

filing, determination, and adjudication of claims, and providing other relief based on the

following:

1.      On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission

("SEC") filed a Complaint in the United States District Court for the Southern District of New

York against defendants Bernard L. Madoff and the Debtor (together, the "Defendants") (No. 08

CV 10791). The Complaint alleged that the Defendants engaged in fraud through investment

advisor activities of the Debtor. On December 12, 2008, the Honorable Louis A. Stanton of the

United States District Court for the Southern District of New York, entered an order which, inter

alia, appointed Lee S. Richards, Esq., as receiver for the Debtor. On December 15, 2008, Judge

Stanton entered an order pursuant to the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa

et seq. ("SIPA")[1], which, in pertinent part:

    (a)     Appointed Irving H. Picard, Esq. as Trustee for the liquidation of the business of
            the Debtor, pursuant to §78eee(b)(3) of SIPA;

    (b)     Appointed Baker & Hostetler, LLP ("B&H") as counsel to the Trustee pursuant
            to §78eee(b)(3) of SIPA; and

    (c)     Removed the case to this Bankruptcy Court pursuant to §78eee(b)(4) of SIPA.

2.      Section 78fff-2(a)(1) of SIPA provides that promptly after appointment, a trustee shall

cause notice of the commencement of the proceeding to be mailed to each person who, from the

books and records of the debtor, appears to have been a customer of the debtor with an open

account within the twelve (12) months prior to the Filing Date, to the address of such person as it

appears from the debtor's books and records. The Trustee requests that this Court enter an order

directing the Trustee to effect such mailing of the notice in the form attached as Exhibit A on or

before January 9, 2009.

---

[1] For convenience, reference to SIPA will not include "15 U.S.C."

3.      Section 78fff-2(a)(1) of SIPA further provides that promptly after appointment, a trustee
shall cause notice of the commencement of the proceeding to be published in one or more
newspapers of general circulation in the form and manner determined by the Court.  During the
twelve months prior to the Filing Date, the Debtor, which maintained its primary office in New
York, New York and had additional offices in London, U.K., had customers across the United
States and in various foreign nations.  Accordingly, the Trustee requests that this Court enter an
order directing the Trustee to publish notice substantially in the form attached as Exhibit A on or
before January 9, 2009 in the following newspapers:

     (a)      *The New York Times*, all editions;

     (b)      *The Wall Street Journal*, all editions;

     (c)      *The Financial Times*, all editions;

     (d)      *USA Today*, all editions;

     (e)      *Jerusalem Post*, all editions; and

     (f)      *Ye'diot Achronot*, all editions.

4.      Section 78fff-2(a)(l) of SIPA states that notice to creditors other than customers shall be
given by a trustee in the manner prescribed by the Bankruptcy Code.  Section 342 of the Title 11
of the United States Code (the "Bankruptcy Code") states that there shall be given such notice as
is appropriate of an order for relief.  The Trustee requests that this Court enter an order directing
him to mail notice to creditors other than customers in the form attached as Exhibit A on or
before January 9, 2009.

5.      The Trustee requests that this Court enter an order approving the form of the following
documents, and directing the Trustee to mail such documents, substantially in the forms attached
hereto, to customers and other creditors:

     (a)      Exhibit A      -      Notice of Commencement of Proceeding

-3-

| (b) | Exhibit B | - | Explanatory Letter to Customers |
|---|---|---|---|
| (c) | Exhibit C | - | Customer Claim Form (and instructions) |
| (d) | Exhibit D | - | Explanatory Letter to Broker-Dealers (with Series 300 Rules) |
| (e) | Exhibit E | - | Explanatory Letter to Other Creditors |
| (f) | Exhibit F | - | General Creditor Claim Form |
| (g) | Exhibit G | - | Notice of Trustee's Determination of Claim Form |
| (h) | Exhibit H | - | Proposed Order |

6.     Section 78fff-2(a)(3) of SIPA provides that no claim of a customer or other creditor of the debtor which is received by a trustee after the expiration of the six (6) month period beginning on the date of publication of notice of the commencement of proceedings under SIPA shall be allowed, except that the Court may, upon application within such period and for cause shown, grant a reasonable fixed extension of time for the filing of a claim by the United States, by a state or political subdivision thereof, or by an infant or incompetent person without a guardian. Any claim of a customer for net equity which is received by a trustee after the expiration of such period of time as may be fixed by the Court need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from monies advanced by the Securities Investor Protection Corporation ("SIPC"), it shall be satisfied in cash or securities (or both) as a trustee determines is most economical to the estate. The Trustee requests that the Court enter an order fixing a six-month period from the date of publication and mailing of notice for filing of such customer claims for net equity.

7.     Section 78fff-2(a)(2) of SIPA provides that claims against the debtor shall be filed with a trustee. The Trustee requests that this Court enter an order directing that claims against the Debtor in this proceeding be filed with **Irving H. Picard, Esq., Trustee for Bernard L. Madoff**

-4-

Investment Securities LLC, Claims Processing Center, 2100 McKinney Ave., Suite 800,

Dallas, TX 75201.

8.       Section 78eee(b)(3) of SIPA specifies that no person shall be appointed as trustee or as

attorney for the trustee in a liquidation under SIPA if such person is not "disinterested" within

the meaning of Section 78eee(b)(6) of SIPA.  As for the trustee and counsel to the trustee,

Section 78eee(b)(6)(B) of SIPA requires that the Court fix a time for hearing on disinterestedness

(and that at least ten (10) days notice of such hearing be given by mail to the parties specified in

said section) for the purpose of considering objections to the retention of trustee and counsel to

the trustee based upon lack of disinterestedness in the proceedings.  Accordingly, the Trustee

requests that this Court enter an order setting February 4, 2009, at 10:00 a.m., as the date and

time for the hearing of disinterestedness objections to the retention in office of Irving H. Picard,

Esq. as Trustee and Baker & Hostetler LLP as counsel to the Trustee.  The Trustee requests that

any objections to the retention of counsel be filed with this Court, with a copy served on the

Trustee's attorney at: Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York

10111, Attention: Douglas E. Spelfogel, Esq.; and SIPC, 805 Fifteenth Street, N.W., Suite 800,

Washington, D.C. 20005-2215, Attention: Kevin H. Bell, Esq., so as to be filed and received not

less than five (5) days prior to such hearing.

9.       Section 341(a) of the Bankruptcy Code requires that a meeting of creditors be held within

a reasonable time after the order for relief in a case under the Bankruptcy Code.  Section 343 of

the Bankruptcy Code requires that the debtor appear and submit to examination under oath at

such meeting. The Trustee requests that this Court enter an order designating the Trustee to

preside at a meeting of creditors to permit the examination of the Debtor and its officers by the

Trustee, creditors or other parties in interest, and further to conduct such business as may

properly come before such meeting.  The Trustee further requests that this Court enter an order

setting February 18, 2009, at 1:30 p.m., at the United States Bankruptcy Court, Southern District

of New York, One Bowling Green, New York, New York 10004, as the time and place for such

meeting of creditors.

10.      Pursuant to Bankruptcy Rule 9007, which authorizes the combination of notices

whenever feasible, the Trustee requests that this Court enter an order directing that notice of the

meeting of creditors and notice of the "disinterestedness" hearing be combined with notice of the

commencement of proceedings, and that such notice, in the form and content as set forth in

attached Exhibit A, be published and customers and creditors be notified by mail in the manner

provided in paragraphs 2, 3, and 4 above.

11.      The Trustee requests that this Court enter an order directing the Debtor to comply with

SIPA and the pertinent sections of the Bankruptcy Code, including the requirements of the

Debtor to (a) designate an officer to appear and submit to examination under oath at the meeting

of creditors under section 343 of the Bankruptcy Code, and (b) comply with the Debtor's duties

enumerated in section 521 of the Bankruptcy Code, i.e., by (i) by timely filing the schedules of

assets and liabilities, of executory contracts, of pending litigations and information about any

other pertinent matters; (ii) timely filing a list of creditors, a schedule of assets and liabilities and

a statement of financial affairs, (iii) cooperating with the Trustee as necessary to enable the

Trustee to perform his duties; and (iv) surrendering forthwith to the Trustee all property of the

Debtor's estate and any and all recorded information, including, but not limited to, books,

documents, records, papers and computer disks or tapes constituting or relating to the Debtor or

property of the Debtor's estate.

12.      To the extent consistent with the provisions of SIPA, a liquidation proceeding is to be

conducted in accordance with, and as though it were being conducted under Chapters 1, 3, and 5,

and subchapters I and II of Chapter 7 of the Bankruptcy Code. *See* Section 78fff(b) of SIPA.

Section 704(5) of the Bankruptcy Code, which appears in Subchapter I of Chapter 7 of the

Bankruptcy Code, requires a Trustee to examine proofs of claims and object to the allowance of

any claim that is improper.

13.    The Trustee, by his staff and counsel, will analyze the customer claims and accounts.

They will compare the claims against the books and records of the Debtor and other sources.

The Trustee requests that this Court authorize him, as provided in Section 78fff-2(b) of SIPA, to

satisfy customer claims as far as the claims agree with the Debtor's books and records or are

otherwise established to the Trustee's satisfaction.

14.    The Trustee will satisfy customer claims by (i) delivering "customer name securities," as

defined in Section 78*lll*(3) of SIPA; and (ii) satisfying a customer's "net equity" claim, as

defined in Section 78*lll*(11) of SIPA, by distributing on a ratable basis securities of the same

class or series of an issuer on hand as "customer property," as defined in Section 78*lll*(4) of

SIPA, and, if necessary, by distributing cash from such customer property or cash advanced by

SIPC, or purchasing securities for customers as provided in Section 78fff-2(d) of SIPA.

15.    In order to expedite the protection of customers of the Debtor under SIPA, the Trustee

requests the approval of the Court of the procedures prescribed in Section 78fff-2(b) of SIPA

which provides that:

> [T]he court shall, among other things –
>
> (1)    with respect to net equity claims, authorize the trustee to satisfy claims out of
> moneys made available to the trustee by SIPC notwithstanding the fact that there
> has not been any showing or determination that there are sufficient funds of the
> debtor available to satisfy such claims; and
>
> (2)    with respect to claims relating to, or net equities based upon, securities of a class
> and series of an issuer which are ascertainable from the books and records of the
> debtor or are otherwise established to the satisfaction of the trustee, authorize the
> trustee to deliver securities of such class and series if and to the extent available to
> satisfy such claims in whole or in part, with partial deliveries to be made pro rata
> to the greatest extent considered practicable by the trustee.

16.    The Trustee anticipates that individuals may file claims seeking "customer" protection

that the Trustee may disallow completely, disallow as a protected customer claim, or disallow in

part.  The Trustee proposes this Court order a procedure for the expeditious resolution of

disputes that may arise between the Trustee and claimants for protection as customers.  The

Trustee suggests the following procedures for those claims for protection as a customer of the

Debtor, as defined in SIPA, which it does not allow as filed:

> (1)    The Trustee will notify the claimant by certified mail that the Trustee has
> determined that the claimant's claim has been disallowed in whole or in part or
> has otherwise not been approved for satisfaction as filed. Notification shall be in a
> form similar to Exhibit G attached hereto. If a claimant is aggrieved by the
> determination of the Trustee, the claimant shall be afforded the opportunity to
> have the matter heard by the Court as a contested matter under Rule 9014 of the
> Bankruptcy Rules.
>
> (2)    The claimant shall request a hearing before this Court by filing a request in
> accordance with the instructions included with the Trustee's determination,
> Exhibit G hereto. The claimant shall file the request for a hearing within thirty
> days of the date on which the Trustee mailed his determination. The request shall
> include a detailed statement of the reasons for the claimant's objection to the
> Trustee's determination and the claimant shall attach copies of any documents or
> other writing upon which the claimant relies.
>
> (3)    The Trustee shall ask the Court to set a time and date for a hearing and shall
> notify the claimant in writing of the time, date and place of the hearing.
>
> (4)    If a claimant fails to request a hearing within thirty days of the mailing of the
> Trustee's determination in accordance with the procedures established by this
> Court's order, or if the claimant fails to appear at the hearing, then the Trustee's
> determination shall be final.
>
> (5)    The Trustee requests authority to compromise and settle any disputed customer
> claim at any time, without further order of this Court.

17.    Section 78fff-1(c) of SIPA requires that a trustee report progress to this Court.  The

Trustee requests the Court enter an order directing the Trustee to file his first report within six

(6) months after publication of the Notice of Commencement, and shall file interim reports every

six (6) months thereafter.

18.    No previous application for the relief requested herein has been made to this or any other

court.

19.    The relief requested in this application is not novel, and the Trustee has incorporated his

legal authority under SIPA and the Bankruptcy Code.  Accordingly, the Trustee requests that the

Court waive the requirements of Local Bankruptcy Rule 9013-1(B) to the extent applicable.


WHEREFORE, the Trustee requests that the Court grant this application and approve and

enter the procedural order in substantially the form requested.

Dated:  New York, New York                              Respectfully submitted,
         December 21, 2008


OF COUNSEL:

SECURITIES INVESTOR                      /s/ David J. Sheehan
PROTECTION CORPORATION                   Baker & Hostetler LLP
805 Fifteenth Street, N.W., Suite 800    45 Rockefeller Plaza
Washington, DC  20005                    New York, New York 10111
Telephone: (202) 371-8300                Telephone: (212) 589-4200
                                         Facsimile: (212) 589-4201
Josephine Wang (JW 0674)                 David Sheehan (DS 4818)
General Counsel                          Email: dsheehan@bakerlaw.com
jwang@SIPC.org                           Douglas E. Spelfogel (DS 7097)
                                         Email: dspelfogel@bakerlaw.com
Kevin H. Bell (KB 2260)                  Richard J. Bernard (RB 6371)
Senior Associate General Counsel         Email: rbernard@bakerlaw.com
kbell@SIPC.org

                                         *Attorneys for Irving H. Picard, Esq.,*
                                         *Trustee for the Liquidation of the Business of*
                                         *Bernard L. Madoff Investment Securities LLC*

# EXHIBIT 5

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>HERALD FUND SPC<br><br>       and<br><br>HSBC BANK PLC,<br><br>       and<br><br>HSBC SECURITIES SERVICES (LUXEMBOURG) S.A.,<br><br>       Defendants. | Adv. Pro. No. 09-1359 (BRL) |

## SECOND AMENDED COMPLAINT

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of
Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor
Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel, for
his Second Amended Complaint, states as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff"). In early December 2008, BLMIS generated client account
statements for its nearly 7,000 client accounts at BLMIS. When added together, these statements
purportedly show that clients of BLMIS had approximately $64.8 billion invested with BLMIS.
In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009,
Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and on June 29,
2009, he was sentenced to 150 years imprisonment as a result of his conviction for the fraud.
Defendant Herald Fund SPC ("Herald Fund") has received avoidable transfers from BLMIS, and
the purpose of this proceeding is to recover the avoidable transfers received by Herald Fund.

2.      This adversary proceeding is brought pursuant to 15 U.S.C. §§ 78fff(b) and 78fff-
2(c)(3), sections 105(a), 502(d), 542, 547, 548(a), 550(a) and 551 of 11 U.S.C. §§ 101 *et seq.*
(the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (N.Y. Debt. & Cred. §§
270 *et seq.* (McKinney 2001)) and other applicable law, for turnover, accounting, preferences,
fraudulent conveyances and damages in connection with certain transfers of property by BLMIS
to or for the benefit of Herald Fund. The Trustee seeks to set aside such transfers and preserve
the property for the benefit of BLMIS' defrauded customers.

- 2 -

## JURISDICTION AND VENUE

3.      This is an adversary proceeding brought in this Court, the Court in which the

main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending.

The SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment*

*Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has

jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§

78eee(b)(2)(A) and (b)(4). This Court has personal jurisdiction under N.Y. C.P.R.L. § 302(a)(1)

and Bankruptcy Rule 7004.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H) and

(O).

5.      Venue in this district is proper under 28 U.S.C. § 1409.

## BACKGROUND, THE TRUSTEE AND STANDING

6.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents

for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment

adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange

Commission ("SEC") filed a complaint in the District Court that commenced the District Court

Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the

District Court. The SEC complaint alleged that the Madoff and BLMIS engaged in fraud

through the investment advisor activities of BLMIS.

7.      On December 12, 2008, The Honorable Louis L. Stanton of the District Court

entered an order, which appointed Lee S. Richards, Esq., as receiver (the "Receiver") for the

assets of BLMIS.

- 3 -

8.     On December 15, 2008, pursuant to 15 U.S.C. § 78eee(a)(4)(A), the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").   Thereafter, pursuant to 15 U.S.C. § 78eee(a)(4)(B), SIPC filed

an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protections afforded by SIPA.

9.     Also on December 15, 2008, Judge Stanton granted the SIPC application and

entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

(a)     appointed the Trustee for the liquidation of the business of BLMIS
pursuant to 15 U.S.C.§ 78eee(b)(3);

(b)     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15
U.S.C. § 78eee(b)(3); and

(c)     removed the case to this Bankruptcy Court pursuant to 15 U.S.C. §
78eee(b)(4).

10.     By orders dated December 23, 2008 and February 4, 2009, respectively, the

Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested

person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of

BLMIS.

11.     At a plea hearing (the "Plea Hearing") on March 12, 2009 in the case captioned

*United States v. Madoff,* Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal

information filed against him by the United States Attorneys' Office for the Southern District of

New York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the

investment advisory side of [BLMIS]."  (Plea Hr'g Tr. at 23: 14-17).  Additionally, Madoff

asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal."

- 4 -

(*Id.* at 23: 20-21). At a hearing on June 29, 2009, Madoff was sentenced to 150 years imprisonment as a result of his conviction for fraud.

12.     As the Trustee appointed under SIPA, the Trustee has the job of recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of 15 U.S.C. § 78fff-2(c)(1).

13.     Pursuant to 15 U.S.C. § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA pursuant to 15 U.S.C. § 78fff(b). Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case.

14.     Pursuant to 15 U.S.C. § 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meanings of sections 547 and 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

15.    The Trustee has standing to bring these claims pursuant to 15 U.S.C. § 78fff-1

and the Bankruptcy Code, including 11 U.S.C. §§ 101 *et seq.* and sections 323(b) and 704(a)(1),

because, among other reasons:

   a.   BLMIS incurred losses as a result of the claims set forth herein;

   b.   The Trustee is a bailee of customer funds entrusted to BLMIS for investment

        purposes; and

   c.   The Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS

        who have filed claims in the liquidation proceeding (such claim-filing customers,

        collectively, "Accountholders").  As of this date, the Trustee has received

        multiple express unconditional assignments of the applicable Accountholders'

        causes of action, which actions could have been asserted against Herald Fund.  As

        assignee, the Trustee stands in the shoes of persons who have suffered injury, in

        fact, and a distinct and palpable loss for which the Trustee is entitled to

        reimbursement in the form of monetary damages.

### THE FRAUDULENT PONZI SCHEME

16.    BLMIS is a New York limited liability company that is wholly owned by Madoff.

Founded in 1959, BLMIS operated from its principal place of business at 885 Third Avenue,

New York, New York.  Madoff, as founder, chairman, and chief executive officer, ran BLMIS

with family members and a number of additional employees.  BLMIS was registered with the

SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15

U.S.C. § 78*o*(b).  By that registration, BLMIS is a member of SIPC.  BLMIS had three business

units:  investment advisory (the "IA Business"), market making and proprietary trading.

17.    Outwardly, Madoff ascribed the IA Business' consistent investment success to his investment strategy called the "split-strike conversion" strategy, which involved the purchase of securities, options and government securities.

18.    Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities, options and government securities that were held in—or had been traded through—their accounts, as well as the growth of and profit from those accounts over time, the trades reported in these statements were a complete fabrication. The security purchases and trades depicted in the account statements never occurred and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Herald Fund, there is no record of Madoff and/or BLMIS having cleared any purchase or sale of securities at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or at any other trading platform on which BLMIS could have reasonably traded securities.

19.    Madoff and/or BLMIS, over the years, falsely assured clients and regulators that BLMIS conducted all trades on the over-the-counter market, after hours. To bolster that false representation, BLMIS periodically wired hundreds of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London-based entity controlled by Madoff. MSIL did not use the wired funds to purchase securities for the accounts of the IA Business clients.

- 7 -

20.     Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased.

21.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff concealed the ongoing fraud in an effort to hinder and delay other current and prospective customers of BLMIS from discovering the fraud.  The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make distributions to, or payments on behalf of, other investors.  The money sent to BLMIS for investment, in short, was simply used to keep the operation going and to enrich Madoff, his associates and others, including Herald Fund, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

22.     During the scheme, certain investors requested and received distributions of the "profits" listed for their accounts which were nothing more than fictitious profits.  Other investors, from time to time, redeemed or closed their accounts, transferred portions to other accounts or removed portions of the purportedly available funds, and were paid consistently with the statements they had been receiving.  Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

23.     When payments were made to or on behalf of these investors, including Herald Fund, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains.  In reality, BLMIS had not invested the investors' principal as reflected in customer statements.  In an attempt to conceal the ongoing fraud and thereby hinder, delay, and defraud other current and prospective investors, BLMIS paid to or on behalf of certain

- 8 -

investors, such as Herald Fund, the inflated amounts reflected in the falsified customer statements, including non-existent principal and fictitious profits, not such investors' true depleted account balances.

24.    BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of newly-invested funds to pay requests for payments or redemptions from older investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

## THE DEFENDANTS AND THE TRANSFERS

25.    Defendant Herald Fund is an exempted segregated portfolio company (or investment fund) organized under the laws of the Cayman Islands, with a principal place of business at M&C Corporate Services Limited, P.O. Box 309 GT, Ugland House, South Church Street, Georgetown, Grand Cayman, Cayman Islands.

26.    Defendant HSBC Bank plc ("HSBC") is a banking institution with an address at 8 Canada Square, London E14 5HQ. Upon information and belief, HSBC served as the beneficiary bank for Herald Fund.

27.    Defendant HSBC Securities Services (Luxembourg) S.A. ("HSBC (Luxembourg)"), formerly known as Bank of Bermuda (Luxembourg) S.A., is a banking institution with an address at 40, Avenue Monterey, L-2163 Luxembourg. HSBC (Luxembourg) served as the custodian of the assets of Herald Fund.

28.    On September 8, 2004, HSBC (Luxembourg), then known as the Bank of Bermuda (Luxembourg) S.A., entered into a Sub-Custody Agreement with BLMIS whereby BLMIS would act as the sub-custodian for certain funds for which HSBC (Luxembourg), as the

Bank of Bermuda (Luxembourg) S.A., was the custodian. On or about September 30, 2004,

BLMIS received a notice that the Bank of Bermuda (Luxembourg) S.A. was changing its name

to HSBC Securities Services (Luxembourg) S.A effective October 1, 2004. In January 2008,

HSBC (Luxembourg), as HSBC Securities Services (Luxembourg) S.A., entered into a Sub-

Custody Agreement with BLMIS. BLMIS held these funds in New York, New York for the

benefit of HSBC (Luxembourg).

29.     Upon information and belief, at all times relevant hereto, Herald Fund was a

client of the IA Business. According to BLMIS' records, Herald Fund maintained an account

with BLMIS through its custodian, HSBC (Luxembourg), that was designated account 1FR109

(the "Herald Fund Account"). The Herald Fund Account was opened on or about April 1, 2004

when a Customer Agreement, an Option Agreement, and a Trading Authorization Limited to

Purchases and Sales of Securities and Options (the "Account Agreements") were executed and

delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

30.     The Customer Agreement signed by BLMIS and Herald Fund states that all

transactions are subject to the Securities Exchange Act of 1934, the Commodities Exchange Act,

the rules and regulations of the SEC, the Board of Governors of the Federal Reserve System and

the Commodities Futures Trading Commission, and all laws of the United States. Herald Fund

voluntarily made transactions with BLMIS subject to these laws.

31.     Between April 1, 2004 and the Filing Date, HSBC and HSBC (Luxembourg), for

the benefit of Herald Fund, invested $1,533,741,975 with BLMIS through 42 separate wire

transfers directly into BLMIS' account at JPMorgan Chase & Co. in New York, New York,

Account #000000140081703 (the "BLMIS Bank Account").

- 10 -

32.    The Account Agreements were to be performed in New York, New York through

securities trading activities that would take place in New York, New York. The Herald Fund

Account was held in New York, New York, through BLMIS. HSBC and HSBC (Luxembourg)

consistently wired funds to the BLMIS Bank Account in New York, New York for application to

the Herald Fund Account and the conducting of trading activities. All Defendants have

intentionally taken advantage of the benefits of conducting transactions in the State of New York

and, therefore, have submitted themselves to the jurisdiction of this Court for the purposes of this

proceeding.

33.    On or about October 2, 2008, BLMIS wired $113,000,000 from the BLMIS Bank

Account to HSBC. On or about November 4, 2008, BLMIS wired another $423,000,000 from

the BLMIS Bank Account to HSBC. Additionally, prior to the Filing Date, during the months of

September, October and November 2008, BLMIS withdrew funds from the Herald Fund

Account on 40 occasions and made tax payments to the appropriate tax authorities on behalf of

Herald Fund totaling $1,487,933. Together, these 42 transfers, all of which were apparently

done for the benefit of Herald Fund, totaled $537,487,933 and took place within 90 days of the

Filing Date (collectively, the "90-Day Transfers"). The 90-Day Transfers are avoidable and

recoverable under sections 547, 550(a)(1) and 551 of the Bankruptcy Code and applicable

provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3).

34.    On or about January 9, 2008, BLMIS wired $20,000,000 from the BLMIS Bank

Account to HSBC. Additionally, between December 2006 and August 2008, BLMIS withdrew

funds from the Herald Fund Account on 214 occasions to make tax payments to the appropriate

tax authorities on behalf of Herald Fund totaling $5,823,339. These transfers, combined with the

90-Day Transfers, all of which were apparently done for the benefit of Herald Fund, totaled

$563,311,273 and took place within two years of the Filing Date (collectively, the "Two-Year Transfers"). The Two-Year Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3).

35.    On or about September 9, 2004, BLMIS wired $11,800,000 from the BLMIS Bank Account to HSBC. Additionally, between June 2004 and December 2006, BLMIS withdrew funds from the Herald Fund Account on 278 occasions to make tax payments to the appropriate tax authorities on behalf of Herald Fund totaling $2,922,574. These transfers, combined with the 90-Day and Two-Year Transfers, all of which were apparently done for the benefit of Herald Fund, totaled $578,033,847 and were made during the six years prior to the Filing Date (collectively, the "Six-Year Transfers"). The Six-Year Transfers are avoidable and recoverable under sections 544, 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. Debt. & Cred. §§ 270 *et seq.* (McKinney 2001).

36.    Upon information and belief, Herald Fund knew or should have known that Madoff's IA Business was predicated on fraud. Hedge funds and funds of funds like Herald Fund were sophisticated investors that accepted fees from their customers based on purported assets under management and/or stock performance in consideration for the diligence they were expected to exercise in selecting and monitoring investment managers like Madoff. Herald Fund failed to exercise reasonable due diligence of BLMIS and its auditors in connection with the Ponzi scheme. Among other things, Herald Fund was on notice of the following indicia of irregularity and fraud but failed to make sufficient inquiry:

- 12 -

a.      Financial industry press reports, including a May 27, 2001 article in

Barron's entitled "Don't Ask, Don't Tell: Bernie Madoff is so secretive, he even asks

investors to keep mum," and a May, 2001 article in MAR/Hedge, a widely-read industry

newsletter, entitled "Madoff Tops Charts; Skeptics Ask How," raised serious questions

about the legitimacy of BLMIS and Madoff and their ability to achieve the IA Business

returns they purportedly had achieved using the split-strike conversion strategy Madoff

claimed to employ.

b.      Madoff avoided questions about his IA Business operations, was

consistently vague in responding to any such questions, and operated with no

transparency.

c.      BLMIS did not provide its customers with electronic real-time online

access to their accounts, which was and is customary in the industry for hedge fund and

fund of funds investors.  BLMIS also utilized outmoded technology, including paper

trading confirmations, despite Madoff's history of being in the forefront of computer-

based trading.  The use of paper confirmations created after the fact was critical to

Madoff's ability to perpetuate his Ponzi scheme.

d.      BLMIS functioned as both investment manager and custodian of

securities.  This arrangement eliminated another frequently utilized check and balance in

investment management by excluding an independent custodian of securities from the

process, and thereby furthering the lack of transparency of BLMIS to other investors,

regulators, and outside parties.

e.      BLMIS produced returns that were too good to be true, reflecting a pattern

of abnormal profitability, both in terms of consistency and amount, that was simply not

credible. Herald Fund received annual rates of return on its investments with BLMIS

ranging, on average, from approximately 10% to 13% for the years 2005 through 2007.

The Herald Fund Account incurred a negative return in only one month of purported

trading during the period from January 2005 through and including December 2007,

equal to 2.8% of the 36 months during that period. In contrast, for the same period, the

S&P 500 had a total of 11 months which generated negative returns, equal to 30.6% of

the 36 months during that period. BLMIS' returns could not be reproduced by other

skilled hedge fund managers, and those managers who attempted to employ the split-

strike conversion strategy purportedly used by BLMIS consistently failed to even

approximate its results.

      f.     Herald Fund received higher purported annual rates of return on its

investments with BLMIS as compared to the interest rates BLMIS could have paid to

commercial lenders during the relevant time period. Upon information and belief, Herald

Fund never questioned why Madoff accepted its investment capital in lieu of other

available alternatives that would have been more lucrative for BLMIS.

      g.     At times, Herald Fund's monthly account statements reflected trades

purportedly purchased or sold on behalf of the Herald Fund Account in certain securities

that were allegedly executed at prices outside the daily range of prices for such securities

traded in the market on the days in question. For example, Herald Fund's monthly

account statement for December 2006 reported a sale of 69,394 shares of Merck & Co.,

Inc. (MRK) with a settlement date of December 28, 2006. BLMIS records reflect a trade

date of December 22, 2006 at a price of $44.61 for this transaction. However, the daily

range for Merck & Co., Inc. shares on December 22, 2006 was a low of $42.78 to a high of $43.42.

h.      The BLMIS stated "split-strike conversion strategy" required purchases of options on the S&P 100 Index ("OEX") in combination with purchases of select underlying stocks that are components of the S&P 100 Index.  These options are traded on the Chicago Board Options Exchange ("CBOE") through a licensing agreement between CBOE and Standard & Poor's ("S&P").  As reported on the monthly account statement for January 2008 received by Defendant Herald Fund, on January 23, 2008, BLMIS purportedly bought a total of 12,644 OEX put options (with February expiration and a strike price of 600) with a settlement date of January 28, 2008, when the total volume traded on the CBOE on that date for such contracts was 8,645.  Similarly, on the same trade and settlement dates, BLMIS purportedly sold a total of 12,644 OEX call options (with February expiration and a strike price of 610) when the total volume traded on the CBOE on that date for such contracts was 631.  In each transaction, Herald Fund should have understood that the option volume being reported was highly unlikely in the instance of the purchase of the put options and impossible in the instance of the sale of the call options as there were not that many option contracts available on the CBOE.

i.      BLMIS had purportedly told its investors that it purchased these options in the over-the-counter ("OTC") market.  Trading options in the OTC market likely would have been more expensive than trading over the CBOE, yet those costs did not appear to be passed on to BLMIS' investors.  The absence of such costs, together with BLMIS' representation that it was trading in the OTC market, should have prompted sophisticated

- 15 -

hedge funds like Herald Fund to request verification of the trades and demand more transparency into the operations of BLMIS.

      j.      BLMIS' statements to investors reflected a consistent ability to trade stocks near their monthly highs and lows to generate consistent and unusual profits. No experienced investment professional could have reasonably believed that this could have been accomplished legitimately.

      k.      BLMIS, which reputedly ran the world's largest hedge fund, was purportedly audited by Friehling & Horowitz, an accounting firm that had three employees, one of whom was semi-retired, with offices located in a strip mall. No experienced investment professional could have reasonably believed it possible for any such firm to have competently audited an entity the size of BLMIS.

      l.      The compensation system utilized by BLMIS was atypical in that BLMIS, the entity purportedly employing the hugely-successful and secret proprietary trading system, was compensated only for the trades that it executed, while Herald Fund, whose only role was to funnel money to BLMIS, received administrative fees and a share of the profits that would normally go to the entity in the position of BLMIS. This compensation arrangement, together with the lack of transparency and other factors listed herein, should have caused an experienced investment professional to question Madoff's operation.

      m.      Despite its immense size, BLMIS was substantially a family-run operation, employing many of Madoff's relatives, and virtually no outside professionals.

      n.      Upon information and belief, at no time did Herald Fund conduct a performance audit of BLMIS or match any trade confirmations provided by BLMIS with actual trades executed through any domestic or foreign public exchange despite the fact

that Herald Fund had hundreds of millions of dollars in assets and easily could have afforded to do this.

o.    Based on all of the foregoing factors, many banks, industry advisors and insiders who made an effort to conduct reasonable due diligence flatly refused to deal with BLMIS and Madoff because they had serious concerns that their IA Business operations were not legitimate.

p.    BLMIS purported to convert all of its holdings to cash immediately before each quarterly report, a strategy that had no practical benefit but which had the effect of shielding BLMIS' purported trading activities from scrutiny.

37.    This Complaint seeks the return of all of the above-listed transfers made to or for the benefit of Herald Fund, respectively, by BLMIS or the value of such transfers.

38.    All of the transfers were and continue to be customer property within the meaning of 15 U.S.C. § 78lll(4), and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

39.    All of the 90-Day, Two-Year and Six-Year Transfers are avoidable and recoverable under sections 544, 548(a), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. Debt. & Cred. §§ 270 *et seq.* (McKinney 2001).

40.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

41.    The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information with respect to the 90-Day, Two-Year and Six-Year Transfers and

any additional or subsequent transfers, and (ii) seek recovery of such additional or subsequent

transfers.

**COUNT ONE**
**TURNOVER AND ACCOUNTING – 11 U.S.C. § 542**

42.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

43.     The 90-Day, Two-Year and Six-Year Transfers constitute property of the estate to

be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code

and pursuant to 15 U.S.C. § 78fff-2(c)(3).

44.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the

Trustee is entitled to the immediate payment and turnover of the 90-Day, Two-Year and Six-

Year Transfers from Defendants to the Trustee.

45.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the

Trustee also is entitled to an accounting of all such transfers received, directly or indirectly, by

Defendants from BLMIS.

**COUNT TWO**
**PREFERENTIAL TRANSFER - 11 U.S.C. §§ 547(b), 550, AND 551**

46.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

47.     At the time of each of the 90-Day Transfers (hereinafter, the "Preference Period

Transfers"), Herald Fund was a "creditor" of BLMIS within the meaning of section 101(10) of

the Bankruptcy Code and pursuant to 15 U.S.C. § 78fff-2(c)(3).

48.     Each of the Preference Period Transfers constitutes a transfer of interest of

BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant

to 15 U.S.C. § 78fff-2(c)(3).

- 18 -

49.    Each of the Preference Period Transfers was to or for the benefit of Herald Fund.

50.    Each of the Preference Period Transfers was made on account of antecedent debts owed by BLMIS before such transfer was made.

51.    Each of the Preference Period Transfers was made while BLMIS was insolvent.

52.    Each of the Preference Period Transfers was made during the preference period under section 547(b)(4) of the Bankruptcy Code.

53.    Each of the Preference Period Transfers enabled Herald Fund to receive more than it would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) Herald Fund received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

54.    Each of the Preference Period Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code and is recoverable from Herald Fund pursuant to section 550(a) of the Bankruptcy Code.

55.    As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 547(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Preference Period Transfers, (b) directing that the Preference Period Transfers be set aside, and (c) recovering the Preference Period Transfers, or the value thereof, from Herald Fund for the benefit of the estate of BLMIS.

## COUNT THREE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

56.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

57.    The Two-Year Transfers were made on or within two years before the filing date of the BLMIS case.

- 19 -

58.    The Two-Year Transfers were made by BLMIS with the actual intent to hinder, delay, and defraud some or all of BLMIS' then existing or future creditors.

59.    The Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable from Herald Fund pursuant to section 550(a) of the Bankruptcy Code.

60.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-Year Transfers, (b) directing that the Two-Year Transfers be set aside, and (c) recovering the Two-Year Transfers, or the value thereof, from Herald Fund for the benefit of the estate of BLMIS.

**COUNT FOUR**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

61.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

62.    At all relevant times, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code, or that were and are not allowable only under section 502(e).

63.    The Six-Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Six-Year Transfers to or for the benefit of Herald Fund in furtherance of a fraudulent investment scheme.

64.    As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and

preserving the Six-Year Transfers, (b) directing that the Six-Year Transfers be set aside, (c)

recovering the Six-Year Transfers, or the value thereof, from Herald Fund for the benefit of the

estate of BLMIS, and (d) recovering attorney's fees from Herald Fund.

### COUNT FIVE
### OBJECTION TO HERALD FUND'S SIPA CLAIM

65.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

66.    Herald Fund has filed a SIPA claim.

67.    Herald Fund's claim (the "Claim") is not supported by the books and records of

BLMIS nor the claim materials submitted by Herald Fund and, therefore, should be disallowed.

68.    The Claim also should not be allowed as a general unsecured claim. Herald Fund

is a recipient of transfers of BLMIS' property that are recoverable under sections 547, 548 and

550 of the Bankruptcy Code, and Herald Fund has not returned the transfers to the Trustee. As a

result, pursuant to section 502(d), the Claim must be disallowed unless and until Herald Fund

returns the transfers to the Trustee.

69.    As a result of the foregoing, the Trustee is entitled to an order disallowing the

Claim.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor

of the Trustee and against Defendants as follows:

i.    On the First Claim for Relief, pursuant to sections 542, 550(a), and 551 of the

Bankruptcy Code: (a) that the property that was the subject of the Preference Period, Two-Year

and Six-Year Transfers be immediately delivered and turned over to the Trustee by Defendants,

and (b) for an accounting by Defendants of the property that was the subject of the Preference

- 21 -

Period, Two-Year and Six-Year Transfers, or the value of such property, and all other transfers

of property by BLMIS to Herald Fund, whether direct or indirect;

ii.      On the Second Claim for Relief, pursuant to sections 547, 550(a), and 551 of the

Bankruptcy Code: (a) avoiding and preserving the Preference Period Transfers, (b) directing that

the Preference Period Transfers be set aside, and (c) recovering the Preference Period Transfers,

or the value thereof, from Herald Fund, as the case may be, for the benefit of the estate of

BLMIS;

iii.     On the Third Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a), and 551

of the Bankruptcy Code: (a) avoiding and preserving the Two-Year Transfers, (b) directing that

the Two-Year Transfers be set aside, and (c) recovering the Two-Year Transfers, or the value

thereof, from Herald Fund for the benefit of the estate of BLMIS;

iv.      On the Fourth Claim for Relief, pursuant to sections 276, 276-a, 278 and/or 279

of the New York Debtor & Creditor Law and sections 544(b), 550(a), and 551 of the Bankruptcy

Code: (a) avoiding and preserving the Six-Year Transfers, (b) directing that the Six-Year

Transfers be set aside, (c) recovering the Six-Year Transfers, or the value thereof, from Herald

Fund for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from Herald

Fund;

v.       On the Fifth Claim for Relief, that the claim of Herald Fund be disallowed;

vi.      On all Claims for Relief, pursuant to federal common law and sections 5001 and

5004 of the N.Y. C.P.L.R., awarding the Trustee prejudgment interest from the date on which the

Preference Period, Two-Year and Six-Year Transfers were received;

vii.     On all Claims for Relief, establishment of a constructive trust over the proceeds of

the transfers in favor of the Trustee for the benefit of the estate of BLMIS;

- 22 -

  viii.  On all Claims for Relief, assignment of Herald Fund's rights to seek refunds from the government for federal, state, and local taxes paid on fictitious profits during the course of the scheme;

  ix.  Reserving the Trustee's ability to supplement the information on the Preference Period, Two-Year and Six-Year Transfers and any additional transfers and seek recovery of such additional transfers;

  x.  Awarding the Trustee all applicable interest, costs, and disbursements of this action; and

  xi.  Granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Dated:    New York, New York
          October 13, 2009

/s/ Marc E. Hirschfield
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee
for the Substantively Consolidated Liquidation
of Bernard L. Madoff Investment Securities
LLC and Bernard L. Madoff*

Of Counsel:

Frederick W. Chockley III
Jennifer M. Walrath
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC  20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
fchockley@bakerlaw.com
jwalrath@bakerlaw.com

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>HERALD FUND SPC, HSBC BANK PLC, and HSBC SECURITIES SERVICES (LUXEMBOURG) S.A.,<br><br>Defendants. | Adv. Pro. No. 09-1359 (BRL) |

## CERTIFICATE OF SERVICE

I, NIKKI M. LANDRIO, hereby certify that on October 13, 2009, I served true copies of

the **Second Amended Compaint** upon the interested parties who receive electronic service

through ECF, by emailing the interested parties true and correct copies via electronic

transmission to the email addresses designated for delivery and/or by placing true and correct

300035073

copies thereof in sealed packages designated for regular U.S. Mail to those parties as set forth on

the attached Schedule A.

Dated: New York, New York
       October 13, 2009

                                          *s/Nikki M. Landrio*
                                          NIKKI M. LANDRIO

## SCHEDULE A

Internal Revenue Service
District Director
290 Broadway
New York, New York 10008

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 21126
Philadelphia, PA  19114

U.S. Department of Justice, Tax Division
Box 55
Ben Franklin Station
Washington, DC 20044

**Chapter 7 Trustee**
Alan Nisselson, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019

**Securities Investor Protection Corporation**
Kevin Bell – kbell@sipc.org
Josephine Wang – jwang@sipc.org

**Securities and Exchange Commission**
Alistaire Bambach – bambacha@sec.gov
Alexander Mircea Vasilescu – vasilescua@sec.gov
Terri Swanson – swansont@sec.gov
Israel E. Friedman – friedmani@sec.gov
Preethi Krishnamurthy – krishnamurthyp@sec.gov

**United States Attorney for SDNY**
Marc Litt – marc.litt@usdoj.gov
Lisa Baroni – lisa.baroni@usdoj.gov
Natalie Kuehler - natalie.kuehler@usdoj.gov

**Counsel to the JPL**
Eric L. Lewis – Eric.Lewis@baachrobinson.com

300035073                                        3

**Notices of Appearance**
Service via Electronic Notification through ECF Filing


**Counsel to defendants HSBC Bank PLC and
HSBC Securities Services (Luxembourg) S.A.**
Thomas J. Moloney – tjmoloney@cgsh.com
David E. Brodsky – debrodsky@cgsh.com
Marla Decker – mdecker@cgsh.com


**Counsel to defendant Herald Fund SPC**
Laura B. Kadetsky – lkadetsky@kirkland.com
Jay P. Lefkowitz – jlefkowitz@kirkland.com
Joseph Serino, Jr. – jserino@kirkland.com

# EXHIBIT 6



"Hirschfield, Marc E."
<mhirschfield@bakerlaw.com
>

01/05/2010 05:52 PM

To   Laura Kadetsky <LKadetsky@kirkland.com>
cc   "Bash, Brian" <BBash@bakerlaw.com>, "Chockley,
     Frederick W." <FChockley@bakerlaw.com>, "Burke, John"
     <JBurke@bakerlaw.com>, "Moscow, John W."
bcc
Subject   RE: Picard v. Herald


Laura -- thanks for the email.  On the date for the argument on the motion to dismiss, I spoke with
Chambers this afternoon.  Both March 11 and 18 are available.  The Judge's clerk is going to check with
the Judge to see which he prefers and will get back to me tomorrow and I will, in turn, let you know.

In terms of the extension of your time to respond to our determination letter, a stipulation is not necessary.
We grant extensions on a regular basis by email and have never done a stipulation in connection with
them.  Accordingly, we do not want to divert from that procedure here.  If you would like a signed
document from me confirming the extension, to the extent that you do not think the email is sufficient, feel
free to send me a letter which I can countersign to indicate our consent to same.

Best regards,

Marc