Gerard S. Catalanello, Esq.
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.692.1020
gcatalanello@duanemorris.com
Attorneys for Brian Ross, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION.
CORPORATION,

        Plaintiffs

vs.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

---

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

**OBJECTION TO TRUSTEE'S
DETERMINATION OF CLAIM**

Brian Ross hereby objects to the Trustee's Determination of Claim dated January 25, 2010 (the "Determination Letter") and states as follows:

## BACKGROUND FACTS

1.      On or October 29, 2002, Brian Ross delivered a check in the amount of $730,000 to his father, Allen Ross, for deposit into Allen Ross's account previously established with Bernard L. Madoff Investment Securities LLC ("Madoff"), No. RO125-3-0 (the "A. Ross Account"). At that time, Brian Ross had not yet established an account with Madoff in his own name.

2. On or about November 7, 2002, Allen Ross delivered a check in the amount of $730,000 to Madoff and same was deposited into the A. Ross Account for and on behalf of Brian Ross. In addition, on or about March 30, 2004, Brian Ross delivered another check to Allen Ross in the amount of $575,000, which Allen Ross also deposited into the A. Ross Account for and on behalf of Brian Ross. Madoff was aware that the funds in the A. Ross Account would be shared by Allen Ross and Brian Ross as each would jointly track their individual deposits and withdrawals.

3. On or about May 26, 2004, Brian Ross opened his own account at Madoff, No. 1-RO217-3 (the "B. Ross Account") and the sum of $1,000,000 was transferred from the A. Ross Account to the B. Ross Account.

4. Bank statements, cancelled checks and other information provided by Brian Ross to the Trustee make clear that, during the period November 2002 through December 11, 2008, Brian Ross deposited into the A. Ross Account and the B. Ross Account a total of $1,745,000, and withdrew from said accounts a total of $1,271,000.

5. According to the Madoff statement for the period ending November 30, 2008, the B. Ross Account had a balance of $1,068,677.63.

6. On or about January 25, 2010, the Trustee delivered the Determination Letter to Brian Ross, a copy of which is annexed hereto as Exhibit "A". The Determination Letter denies the claim filed by Brian Ross on the basis that Brian Ross does not have "net equity" in the B. Ross Account. Based upon the Trustee's determination, Brian Ross has an allowed claim of only $22,237.18.

## GROUNDS FOR OBJECTION

**A.    The Trustee's "Net Equity" Position Has No Merit**

7.    As set forth in numerous other objections filed by investors similarly situated to Brian Ross, the Determination Letter fails to comply with the Court order dated December 23, 2008 which directs the Trustee to satisfy customer claims and deliver securities in accordance with "the Debtor's books and records." December 23, 2008 Order at 5 (Docket No. 12). The November 30, 2008 B. Ross Account statement generated by Madoff is reflective of "the Debtor's books and records" by which the Trustee is bound, absent proof that Brian Ross did not have a "legitimate expectation" that the balance on the B. Ross Account statement represented his property interest.

8.    The Trustee's position that Brian Ross' claim should be denied because Brian Ross does not have "net equity" in his B. Ross Account is baseless.    Brian Ross adopts and incorporates all of the objections previously filed by investors similarly situated regarding the Trustee's "net equity" position as if fully stated herein.

**B.    The Trustee Has No Right To Deny Brian Ross' "Net Equity" In The B. Ross Account**

9.    Assuming, *arguendo*, that the Court were inclined to permit the Trustee to impose his "net equity" position upon Brian Ross and others similarly situated to him, the Trustee has nevertheless failed to recognize the correct amount of "net equity" that Brian Ross has in the B. Ross Account.

10.    In this regard, it is clear that during the period November 2002 through December 11, 2008, Brian Ross deposited into the A. Ross Account and the B. Ross Account a total of total

3

of $1,745,000, but only withdrew from said accounts a total of $1,271,000, thereby leaving a "net equity" of $474,000. For reasons only known to the Trustee, in his Determination Letter, the Trustee adjusted the May 26, 2004 transfer of $1,000,000 from the A. Ross Account to the B. Ross Account so that the beginning balance of the B. Ross Account on that date was only $484,237.18.

11.     The Trustee has not, because he cannot, point to any basis in law or fact in his Determination Letter to support his unilateral adjustment of a cash transfer made on May 26, 2004 in the undisputed amount of $1,000,000 to only $484,237.18. As such, in the event that the Court were to permit the Trustee to reduce Madoff accounts based upon "net equity", Brian Ross should have an allowed claim in the amount of $474,000, the difference between the total deposits and withdrawals made during the relevant period of time.

### C.     Brian Ross Is Entitled To Prejudgment Interest

12.     Brian Ross also adopts and incorporates herein all of the objections previously filed by others similarly situated regarding the Trustee's objection to pay interest on funds deposited in the Account.

13.     Under New York law, funds deposited with Madoff are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, et seq. Moreover, since Madoff converted Ross' funds, he is also entitled to prejudgment interest. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S. 2d 427, 428 (1st Dept. 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

4

### D. The Trustee Has No Power To Claw Back Withdrawals Beyond The Statute Of Limitations

14.     Finally, Brian Ross also adopts and incorporates herein all of the objections filed by those investors similarly situated regarding the Trustee's inappropriate use of his avoiding powers to attempt avoid transactions beyond the applicable statute of limitations. In this regard, Brian Ross submits that the Trustee has no power or authority to selectively eliminate all transactions in the Account as set forth in the Determination Letter beyond the applicable statute of limitations. [1]

---

[1] Brian Ross reserves all of his rights and defenses with respect to any fraudulent conveyance claim or any other avoidance claim brought by the Trustee.

5

## CONCLUSION

15. For the reasons set forth above and more fully in the objections filed by those similarly situated, Brian Ross is entitled to (i) have his claim recognized in the amount of $1,068,677.63, consistent with the November 30, 2008 B. Ross Account statement or, in the alternative, in the amount of $474,000, representing the amount of his "net equity"; and (ii) such other and further relief as is just and proper.

February 24, 2010

DUANE MORRIS LLP

By: _____
Gerard S. Catalanello

1540 Broadway
New York, NY 10036-4086
(212) 692-1022
Attorneys for Brian Ross

# EXHIBIT A

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

DECEMBER 11, 2008[1]

NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

January 25, 2010

Brian Ross
2911 7th Street
Boulder, Colorado 80304

Dear Mr. Ross:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1R0217 designated as Claim Number 005740:

Your claim for a credit balance of $1,068,677.63 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $22,237.18, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300062967.1

### - Table 1 -

#### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 5/26/2004 | TRANS FROM 1R012530 | $1,000,000.00 | $483,237.18 |
| 6/23/2004 | TRANS FROM 1R012530 | $9,030.71 | $0.00 |
| 11/3/2005 | CHECK | $200,000.00 | $200,000.00 |
| 10/24/2006 | CHECK | $240,000.00 | $240,000.00 |
| **Total Deposits:** | | $1,449,030.71 | $923,237.18 |

#### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 12/21/2004 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/4/2005 | CHECK | ($330,000.00) | ($330,000.00) |
| 9/12/2005 | CHECK | ($10,000.00) | ($10,000.00) |
| 4/18/2006 | CHECK | ($71,000.00) | ($71,000.00) |
| 12/5/2006 | CHECK | ($35,000.00) | ($35,000.00) |
| 4/4/2007 | CHECK | ($10,000.00) | ($10,000.00) |
| 4/10/2007 | CHECK | ($90,000.00) | ($90,000.00) |
| 6/27/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 9/13/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 1/3/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/15/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 9/2/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 10/28/2008 | CHECK | ($35,000.00) | ($35,000.00) |
| **Total Withdrawals:** | | ($901,000.00) | ($901,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | $548,030.71 | $22,237.18 |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason

300062967.1                                                         2

that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

Your **ALLOWED CLAIM** of $22,237.18 will be satisfied in the following manner:

The enclosed **ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **ASSIGNMENT AND RELEASE**, the Trustee will fully satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $22,237.18, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and the Trustee within THIRTY DAYS after January 25, 2010, the date on which the Trustee mailed this notice.**

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

I have also enclosed an IRS Form W-9 which must be completed and returned in the envelope provided herewith.

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that BRIAN ROSS, located at 2911 7th Street, Boulder, Colorado 80304 (hereinafter referred to as the "Assignor") in consideration of the payment of $22,237.18 to satisfy his claim for customer protection (the "Customer Claim", having been designated Claim #005740) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for himself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1R0217, the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by Assignor against BLMIS. Such

300062968.1

assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $22,237.18 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated January 25, 2010, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for himself, and for his executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, their officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter

300062968.1                                     2

may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable Court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having his customer claim re-determined in accordance with any such Court order. The payment of the undisputed amount of the Assignor's Customer Claim (up to the limits of SIPA protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

_____
BRIAN ROSS

Sworn and subscribed before me this
____ day of _____, 2010.

_____
Notary Public

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Allen Ross
10 City Place #29A
White Plains, New York 10601

Dear Mr. Ross:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1R0125 designated as Claim Number 10787:

Any claim for a credit balance or for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,448,237.18), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $2,263,237.18). As noted, no securities were ever purchased by BLMIS for your account. Any

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($185,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition,

the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004

> and

> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3

| DEPOSITS | | | |
|---|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 5/5/1997 | TRANS FROM 1R007910 | $687,484.75 | $332,237.18 |
| 6/6/2000 | CHECK | $75,000.00 | $75,000.00 |
| 10/18/2000 | TRANS FROM 1C120630 | $200,000.00 | $200,000.00 |
| 10/18/2000 | TRANS FROM 1C120630 | $1,000.00 | $1,000.00 |
| 11/8/2002 | CHECK | $730,000.00 | $730,000.00 |
| 4/5/2004 | CHECK | $575,000.00 | $575,000.00 |
| 8/2/2005 | CHECK | $100,000.00 | $100,000.00 |
| 10/20/2006 | CHECK | $250,000.00 | $250,000.00 |
| **Total Deposits:** | | $2,618,484.75 | $2,263,237.18 |

| WITHDRAWALS | | | |
|---|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 7/1/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/30/1997 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/1/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/1/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/9/1998 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/4/1998 | CHECK | ($50,000.00) | ($50,000.00) |
| 7/6/1998 | CHECK | ($20,000.00) | ($20,000.00) |
| 7/30/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 9/3/1998 | CHECK | ($20,000.00) | ($20,000.00) |
| 10/5/1998 | CHECK | ($20,000.00) | ($20,000.00) |
| 4/1/1999 | CHECK | ($125,000.00) | ($125,000.00) |
| 3/31/2000 | CHECK | ($125,000.00) | ($125,000.00) |
| 12/27/2000 | CHECK | ($100,000.00) | ($100,000.00) |
| 4/6/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/9/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 4/8/2003 | CHECK | ($175,000.00) | ($175,000.00) |
| 7/2/2003 | CHECK | ($250,000.00) | ($250,000.00) |
| 11/7/2003 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/15/2004 | CHECK | ($50,000.00) | ($50,000.00) |
| 5/11/2004 | CHECK | ($25,000.00) | ($25,000.00) |
| 5/26/2004 | TRANS TO 1R021730 | ($1,000,000.00) | ($483,237.18) |
| 6/21/2004 | CHECK | ($9,030.71) | ($9,030.71) |
| 6/23/2004 | STOP PAYMENT | $9,030.71 | $9,030.71 |
| 6/23/2004 | TRANS TO 1R021730 | ($9,030.71) | $0.00 |
| 2/28/2005 | CHECK | ($50,000.00) | ($50,000.00) |
| 7/21/2006 | CHECK | ($100,000.00) | ($100,000.00) |
| 4/17/2007 | CHECK | ($200,000.00) | ($200,000.00) |
| 6/26/2007 | CHECK | ($50,000.00) | ($50,000.00) |

| | | | | |
|---|---|---|---|---|
| 9/19/2007 | CHECK | | ($85,000.00) | ($85,000.00) |
| 11/4/2008 | CHECK | | ($50,000.00) | ($50,000.00) |
| **Total Withdrawals:** | | | ($2,974,030.71) | ($2,448,237.18) |
| | | | | |
| **Total deposits less withdrawals:** | | | ($355,545.96) | ($185,000.00) |