MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

*Attorneys for Aspen Fine Arts Co. Defined Contribution Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Aspen Fine Arts Co. Defined Contribution Plan, by and through its attorneys, hereby files this amended objection to the Notice of Trustee's Determination of Claim dated February 19, 2010 ("Second Determination Letter"), attached as Exhibit B, as described herein.

## BACKGROUND

1.  Aspen Fine Arts Co. Defined Contribution Plan is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.  Aspen Fine Arts Co. Defined Contribution Plan's Final BMIS statement for Account Number 1EM320, dated November 30, 2008, states that it owns securities valued at $659,199.56. Aspen Fine Arts Co. Defined Contribution Plan's Final BMIS statement for Account Number 1EM414, dated November 30, 2008, states that it owns securities valued at $16,489,328.20. Aspen Fine Arts Co. Defined Contribution Plan's final BMIS statements for Account Numbers 1EM320 and 1EM414 are collectively referred to as the "Final BMIS Statements." In total, the Final BMIS Statements state that Aspen Fine Arts Co. Defined Contribution Plan owns securities valued at $17,148,527.76.

3.  On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

4.  On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.  The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.  On or about May 20, 2009, the Aspen Fine Arts Co. Defined Contribution Plan submitted a customer claim form to SIPC for Account Numbers 1EM320 and 1EM414. On or about June 23, 2009, in response to a request from representatives for the Trustee, the Aspen Fine Arts Co. Defined Contribution Plan submitted an amended customer claim form solely for Account Number 1EM320 (Exhibit C) ("Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim"), and submitted an amended customer claim form solely for Account Number 1EM414 (Exhibit D) ("Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim"). The Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim and the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim are collectively referred to as "Aspen Fine Arts Co. Defined Contribution Plan Customer Claims."[1] Aspen Fine Arts Co. Defined Contribution Plan's Final BMIS Statements were submitted with the Aspen Fine Arts Co. Defined Contribution Plan Customer Claims. *See* Aspen Fine Arts Co. Customer Claims (Exhibits C and D).

---

[1] In accordance with the Court's Order dated October 20, 2009 [Dkt. No. 533], Claimant's personal identification data has been redacted from Exhibits C and D.

3

7. On October 19, 2009, the BMIS Trustee sent Aspen Fine Arts Co. Defined Contribution Plan a "Notice of Trustee's Determination of Claim" dated October 19, 2009 ("First Determination Letter") disallowing the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim claim in its entirety, rather than allowing the claim in the amount of $659,199.56, the total amount that Aspen Fine Arts Co. Defined Contribution Plan claimed. *See* First Determination Letter (Exhibit A). The Trustee's First Determination Letter (Exhibit A) was unclear whether it applied to the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim.

8. Aspen Fine Arts Co. Defined Contribution Plan filed an objection to the First Determination Letter on or about November 11, 2009, and filed an amended objection to the First Determination Letter on or around November 17, 2009 which made it clear that to the extent that the First Determination Letter applies to the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim, that amended objection also applies to the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim.

9. On February 19, 2010, the BMIS Trustee sent Aspen Fine Arts Co. Defined Contribution Plan the Second Determination Letter (Exhibit B), which treats the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim and the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim as a single, combined claim (the "Aspen Fine Arts Co. Defined Contribution Plan Combined Claim"). In the Second Determination Letter, the Trustee allowed the Aspen Fine Arts Co. Defined Contribution Plan Combined Claim for $182,643.78, rather than allowing the Aspen Fine Arts Co. Defined Contribution Plan Combined Claim in the amount of $17,148,527.76, the total amount that Aspen Fine Arts Co. Defined Contribution Plan claimed.

4

**GROUNDS FOR OBJECTION**

10.   <u>First Objection</u>.  The Second Determination Letter improperly combines the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim and the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim as a single, combined claim.  The Aspen Fine Arts Co. Defined Contribution Plan's two BMIS accounts were established separately, and operated as separate accounts at all times that those accounts were held at BMIS.  Further, representatives of the Trustee asked Aspen Fine Arts Co. Defined Contribution Plan to submit separate claims for each of its two customer accounts.  Accordingly, the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim should be treated as a separate claim, and should be determined separately and apart from the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim.

11.   <u>Second Objection</u>.  The Second Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  Included with the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim was its final BMIS statement for 1EM320 showing a final balance of $659,199.56, and included with the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim was its final BMIS statement for 1EM414 showing a final balance of $16,489,328.20.  *See* Aspen Fine Arts Co. Defined Contribution Plan Customer Claims (Exhibit C and D).  The Final BMIS statements are the best evidence of the amounts owed based on the Debtor's books and records.  Accordingly, the individual claims should be allowed in the full amounts of $659,199.56 and $16,489,328.20; or, if the claims are treated as a combined claim,

5

Aspen Fine Arts Co. Defined Contribution Plan Combined Claim should be allowed for $17,148,527.76.

12.     Third Objection.  The Trustee has set forth no legal basis for disallowing the Aspen Fine Arts Co. Defined Contribution Plan Customer Claims in full as filed.  The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased by BLMIS for your account," (2) "[t]he amount of your Allowed Claim reflects a set off of funds between your BLMIS accounts," (3) "Account No. 1EM414 has a positive 'net equity' of $1,282,643.78 ... based on the amount of money you deposited with BLMIS in this account for the purchase of securities, less subsequent withdrawals, as outlined in Table 1 annexed hereto," and (4) "Account No. 1EM320 ... does not have a positive 'net equity'. . . [because] the amount of money you withdrew from Account No. 1EM320 (total of $5,010,259.78) is greater than the amount that was deposited into the same account for the purchase of securities (total of $3,910,259.78)."  None of these purported grounds for disallowance have any statutory or other legal basis.  Moreover, the Second Determination Letter:

(a)     does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, see Order [Dkt. No. 12];

(b)     is inadequate to rebut the prima facie validity of the Aspen Fine Arts Co. Defined Contribution Plan Customer Claims as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)     violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based.  See, e.g., Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a

6

claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

13. <u>Fourth Objection</u>. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Aspen Fine Arts Co. Defined Contribution Plan Customer Claims on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Second Determination Letter Tables 1 and 2. *See also* Memorandum Of Law In Support Of Trustee's Motion For An Order Upholding Trustee's Determination Denying "Customer" Claims For Amounts Listed On Last Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating To Net Equity, October 16, 2009 [Dkt. No. 525].

14. This is incorrect for the following reasons:

(a) The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> ********

7

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

    (b)  SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The BMIS statements received by Aspen Fine Arts Co. Defined Contribution Plan stated that it owned a list of blue chip securities.  It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business.  But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . .  By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Aspen Fine Arts Co. Defined Contribution Plan's Final BMIS Statements and prior statements were those of actual companies listed on the stock exchange.

    (c)  Aspen Fine Arts Co. Defined Contribution Plan deposited funds in BMIS in the expectation the amounts would grow, its account statements showed such growth, and the balances on its Final BMIS Statements reflects the benefit of this bargain.  The Trustee's formula is an improper and wholly inadequate measure of loss.  In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to have applied an expectancy measure of damages against a successor in a Ponzi scheme case,

8

and rejected the "money in/money out" formula as not reflecting the expectations of the parties.

The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria [the dishonest broker], not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow. <u>Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages.</u> Had Gruttadauria invested Plaintiffs' money as requested, their funds would like grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added). This applies precisely to Aspen Fine Arts Co. Defined Contribution Plan's claims.

        (d)     The Trustee's Second Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.

9

> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted --
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-38, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit E). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even where the purchase never actually incurred and the debtor instead

10

converted the cash deposited by the claimant to fund that purchase").[2] Aspen Fine Arts Co. Defined Contribution Plan is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, its claims should be recognized in full.

15.     In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Aspen Fine Arts Co. Defined Contribution Plan is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a)     Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*. Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Aspen Fine Arts Co. Defined Contribution Plan.

(b)     Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Aspen Fine Arts Co. Defined Contribution Plan's deposits.

---

[2] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost … misappropriated, never purchased or even

*See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

16. <u>Fifth Objection</u>. The BMIS Trustee's action in reducing the amount shown on Aspen Fine Arts Co. Defined Contribution Plan's Customer Claims by any prior gains reflected on its final BMIS statements or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Second Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

17. <u>Sixth Objection.</u> The Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The Trustee is required to state and prove when the Ponzi scheme began.

18. <u>Seventh Objection.</u> Aspen Fine Arts Co. Defined Contribution Plan was required to pay significant income taxes on distributions which the Trustee has alleged are fictitious. The Trustee has justified his proposed method of calculating claims is fair and reasonable because

---

stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in

fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the Trustee's method is correct, Aspen Fine Arts Co. Defined Contribution Plan's customer claims should be adjusted by adding all amounts it actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. See *SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

19.    Eighth Objection.  The Determination Letter purports to calculate the "net equity" for Aspen Fine Arts Co. Defined Contribution Plan's BMIS accounts on the basis of certain withdrawal and deposit transactions for which Aspen Fine Arts Co. Defined Contribution Plan has no records. Many of the transactions in question allegedly occurred more than seven years ago. It is unreasonable to anticipate the customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS as acknowledged by the United States Securities and Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove that the alleged withdrawal transactions occurred by furnishing the appropriate records to Aspen Fine

---

his account even if securities were "never purchased").

Arts Co. Defined Contribution Plan and, absent such records, such transactions should be deleted from the calculation of the Aspen Fine Arts Co. Defined Contribution Plan's "net equity." Likewise, the Trustee should be required to prove that all deposit transactions are completely listed by furnishing the appropriate records to Aspen Fine Arts Co. Defined Contribution Plan.

## RELIEF REQUESTED

20.    For the reasons stated herein, the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim and the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim should be allowed in their entirety.

21.    For the reasons stated herein, the Court should direct SIPC to issue (i) immediate payment to Aspen Fine Arts Co. Defined Contribution Plan in the amount of $500,000.00 plus interest from the date of the Determination Letter for the the Aspen Fine Arts Co. Defined Contribution Plan 1EM320 Customer Claim, and (ii) immediate payment to Aspen Fine Arts Co. Defined Contribution Plan in the amount of $500,000.00 plus interest from the date of the Determination Letter for the the Aspen Fine Arts Co. Defined Contribution Plan 1EM414 Customer Claim, without imposing conditions to payment which are not authorized or warranted.

22.    The BMIS Trustee's determination amounts to an improper disallowance of claims that have prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his determination. The BMIS Trustee's Second Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Aspen Fine Arts Co. Defined Contribution Plan will file a response.

23.     Aspen Fine Arts Co. Defined Contribution Plan requests such other relief as may be just and equitable.

## CONCLUSION

24.     Aspen Fine Arts Co. Defined Contribution Plan reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Aspen Fine Arts Co. Defined Contribution Plan's right to object on any additional grounds.

25.     Aspen Fine Arts Co. Defined Contribution Plan reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

26.     Aspen Fine Arts Co. Defined Contribution Plan reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

27.     Aspen Fine Arts Co. Defined Contribution Plan incorporates by reference all reservations of rights set forth in the Aspen Fine Arts Co. Defined Contribution Plan Customer Claims.

Dated: March 11, 2010

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Fl.
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Aspen Fine Arts Co. Defined Contribution Plan*

508041v1