COPY

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

February 9, 2010

Aspen Fine Arts Co. Defined Contribution Plan
P. O. Box 3068
Aspen, CO 81628

Dear Aspen Fine Arts Co. Defined Contribution Plan:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1EM414 designated as Claim Number 011426 and your claims on BLMIS Account No. 1EM 320 designated as Claim Number 009020 and Claim Number 011427. Claim Number 001426, Claim Number 009020 and Claim Number 011427 shall sometimes be referred to collectively in this determination letter as the "Combined Claim." This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim for securities is **DENIED**. No securities were ever purchased for your account.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.



Your Combined Claim is **ALLOWED** for $182,643.78 (the "Allowed Claim"). The amount of your Allowed Claim reflects a set off of funds between your BLMIS accounts.

Account No. 1EM414 has a positive "net equity" of $1,282,643.78, which is the balance in this account on the Filing Date based on the amount of money you deposited with BLMIS in this account for the purchase of securities, <u>less</u> subsequent withdrawals, as outlined in Table 1 annexed hereto and made a part hereof.

Account No. 1EM320, however, does not have a positive "net equity." *See* Table 2 annexed hereto and made a part hereof. In other words, based on the Trustee's analysis, the amount of money you withdrew from Account No. 1EM320 (total of $5,010,259.78) is greater than the amount that was deposited into this same account for the purchase of securities (total of $3,910,259.78). As noted, no securities were ever purchased by BLMIS for your accounts and any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into that account, the amount of money you received in excess of the deposits in that account ($1,100,000.00, the "Fraudulent Transfer Amount") was taken from other customers and given to you.

The Trustee has proposed to set off the Fraudulent Transfer Amount from the amount of your positive "net equity" in Account No. 1EM414.[2] The manner of this set off shall be in final settlement of any fraudulent transfer action that the Trustee may otherwise have brought against you.

Your **ALLOWED CLAIM** of $182,643.78 will be satisfied in the following manner:

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $182,643.78, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. In addition, you will be entitled to receive an additional distribution based upon your **ALLOWED CLAIM** from the fund of customer property, if any.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, <u>Rosenman Family, LLC v. Picard</u>, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. <u>In re Adler Coleman Clearing Corp. (Adler Coleman II)</u>, 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer

---

[2] $100,000.00 of the Fraudulent Transfer Amount is beyond the time permitted for recovery. Therefore, the amount set off is $1,000,000.00.

300068092.1                                      2

property' exclusively among the debtor's customers...."); <u>see also</u> 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. <u>See New Times Securities</u>, 463 F.3d at 127; <u>Adler Coleman</u>, 195 B.R. at 269."

<u>Id</u>. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after February 9, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:   Matthew A. Kupillas, Esq.
      Milberg LLP
      One Pennsylvania Plaza
      New York, New York 10119

300068092.1                                    4



| Table 1 | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 12/19/2000 | TRANS FROM 1EM32030 | $4,265,928.00 | $3,372,643.78 |
| 9/20/2002 | TRANS FROM 1EM32030 | $4,616,267.00 | $0.00 |
| **Total Deposits:** | | $8,882,195.00 | $3,372,643.78 |
| **WITHDRAWALS** | | | |
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 5/4/2005 | CHECK | ($600,000.00) | ($600,000.00) |
| 12/19/2005 | CHECK | ($520,000.00) | ($520,000.00) |
| 5/8/2006 | CHECK | ($400,000.00) | ($400,000.00) |
| 12/14/2006 | CHECK WIRE | ($570,000.00) | ($570,000.00) |
| **Total Withdrawals:** | | ($2,090,000.00) | ($2,090,000.00) |
| **Total deposits less withdrawals:** | | $6,792,195.00 | $1,282,643.78 |

| Table 2 ||||
|---|---|---|---|
| DEPOSITS ||||
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 1/5/1995 | CHECK WIRE | $484,392.00 | $484,392.00 |
| 1/11/1995 | CHECK WIRE | $382,000.00 | $382,000.00 |
| 1/13/1995 | CHECK WIRE | $389,915.78 | $389,915.78 |
| 1/20/1995 | CHECK WIRE | $33,952.00 | $33,952.00 |
| 1/9/1996 | CHECK WIRE | $1,300,000.00 | $1,300,000.00 |
| 4/2/1996 | CHECK WIRE | $150,000.00 | $150,000.00 |
| 11/5/1996 | CHECK WIRE | $600,000.00 | $600,000.00 |
| 1/3/1997 | CHECK WIRE | $540,000.00 | $540,000.00 |
| 2/20/1997 | CHECK WIRE | $30,000.00 | $30,000.00 |
| **Total Deposits:** | | $3,910,259.78 | $3,910,259.78 |
| WITHDRAWALS ||||
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 2/19/1998 | CHECK | ($318,808.00) | ($318,808.00) |
| 12/3/1999 | CHECK | ($100,000.00) | ($100,000.00) |
| 7/21/2000 | CHECK | ($118,808.00) | ($118,808.00) |
| 12/19/2000 | TRANS TO 1EM41430 | ($4,265,928.00) | ($3,372,643.78) |
| 2/8/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 9/20/2002 | TRANS TO 1EM41430 | ($4,616,267.00) | $0.00 |
| 12/21/2007 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| **Total Withdrawals:** | | ($10,519,811.00) | ($5,010,259.78) |
| **Total deposits less withdrawals:** | | ($6,609,551.22) | ($1,100,000.00) |



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

## ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Aspen Fine Arts Co. Defined Contribution Plan, located at P. O. Box 3068, Aspen, Colorado 81628 (hereinafter referred to as the "Assignor") in consideration of the payment of $182,643.78 to satisfy its claim for customer protection (the "Customer Claim", having been designated Claim # 011426, Claim # 009020 and Claim # 011427) filed in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does for itself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that Assignor now may have against BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1EM414 and Account No. 1EM320, the "BLMIS Account"), which gave

300068107.1

rise to the allowed Customer Claim for securities filed by Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $182,643.78 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated February 9, 2010, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Assignment and Release, the Assignor does for itself, and for its executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, their officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and

COPY

all circumstances giving rise to said Customer Claim which the Assignor now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable Court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order. The payment of the undisputed amount of the Assignor's Customer Claim (up to the limits of SIPA protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Assignment and Release.

The undersigned acknowledges that he is authorized to execute this Assignment and Release on behalf of Aspen Fine Arts Co. Defined Contribution Plan.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By:_____
MELVIN W. KNYPER, TRUSTEE

Sworn and subscribed before me this
____ day of _____, 2010.

_____
Notary Public