BERGER LEGAL LLC  521 Fifth Avenue  Suite 3300  New York, New York 10175-3399
266 Harristown Road  Suite 207  Glen Rock, New Jersey 07452
646.435.4855 T  646.924.0599 F  www.bergerlegal.com

March 10, 2010

Mr. Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

      Re: February 12, 2010 Notice of Trustee's Determination of Claim No. 002614 in *SIPC v. Bernard L. Madoff Investment Securities LLC*

Dear Mr. Picard,

    We submit this letter brief on behalf of Karen Davis in support of her limited objection to the above-referenced Determination of Claim No. 002614 (the "Determination"). We object to the Determination on the basis, and to the extent, that it combines two accounts – BLMIS Account Nos. 0083 and 0075 – into one account on the purported grounds that both accounts were held in the same capacity by Karen Davis. As explained in more detail below, these two accounts were not in fact held in the same capacity and are subject to separate determinations according to the Securities Investment Protection Act ("SIPA"), the Series 100 Rules promulgated thereunder, and applicable law.[1]

    While Karen Davis's name was associated with both accounts, Ms. Davis was the beneficial owner of Account No. 0083 alone. At the time of the collapse of BLMIS, and at the time Claim No. 002614 was filed, Ms. Davis had no personal financial interest in Account No. 0075, but instead was a nominal owner for four other parties, each of whom have filed separate claims with the Trustee.[2] Accordingly, Account No. 0075 is subject to a separate

---

[1] Ms. Davis submits this limited objection on behalf of herself only, and not on behalf of the beneficial owners of Account No. 0075. Ms. Davis does not object to the Determination as it pertains to Account No. 0083.

determination or determinations based upon the claims made by its four beneficial owners, and it should not have been combined with Karen Davis's personal account or considered to be her "individual account."

## BACKGROUND

Account No. ⎯⎯ )075

On March 11, 2004, Karen Davis opened Account No. ⎯⎯ 0075 with BLMIS in her own name with a deposit of $2,250,000. (Ex. A, Determination of Claim No. 002614, Table 1.) That amount represented both the individual interest of Karen Davis (in the amount of $500,000) and the interest of four other parties -- Theodore Wm. Tashlik, Richard Tuchman, Arthur Asch, and the 2004 Elissa Weiner Trust – in the combined amount of $1,750,000. Additional sums were subsequently deposited in the amounts of $450,000, $250,000, $600,000, $300,000, and $761,017. *See id.* Two of these deposits ($250,000 and $300,000) were made directly by Mr. Tuchman by wire transfer on March 31, 2005, and on December 30, 2005 to BLMIS. The deposit in the amount of $761,017 was made by direct wire transfer from the beneficiary of the Elissa Weiner Trust to BLMIS on April 3, 2008. (*See* Ex. B.)

From the inception of Account No. ⎯⎯ 0075, Ms. Davis was the nominal owner for Messrs. Tashlik, Tuchman, Asch and the 2004 Elissa Weiner Trust (collectively, the "Investors.") Indeed, the parties executed a Nominee Agreement on March 3, 2004, prior to opening the account with BLMIS, which provided in part that "Davis shall hold legal title to the investment as nominee for herself and the Investors in accordance with their respective interests .

---

[2] To date, it is our understanding that no determinations have been issued by the Trustee with respect to any of these claims.

2

..." (Ex. C.) The Nominee Agreement further provides that "[t]he Investors shall file their individual tax returns consistent with the nominee return and she shall act as directed by each of the Investors with respect to their respective investments. Davis shall have no discretionary authority over the investment except with respect to her share thereof." (*Id.*)

At the time Account No. 0075 was established, Daniel Davis (Ms. Davis's husband) explained to Frank DiPascali, the Chief Financial Officer of BLMIS at the time, that the purpose of this account was to aggregate the interests of various parties so that they could invest in BLMIS. Mr. DiPascali knew that the purpose of the 0075 account was to allow the beneficial owners to combine their assets so as to qualify for the minimum deposit requirement of two million dollars. (Affidavit of Daniel Davis "Davis Aff." ¶ 3.) The fact that a portion of the investments in Account No. 0075 at BLMIS were for the benefit of the Investors, and not Ms. Davis personally, is further reflected in the IRS Form 56, Notice Concerning Fiduciary Relationship, filed by Karen Davis (Ex. D), and in accounting statements reflecting Ms. Davis and the Investors' respective dividend and interest income, and their respective short term and long term capital gains arising from Account No. 0075. (Ex. E.)

Account No. 0083

On September 29, 2006, Ms. Davis opened a second account with BLMIS, Account No. 0083, in order to wholly segregate her own funds from those of the Investors. Ms. Davis therefore transferred $1,866.207, from Account No. 0075 into the new Account No. 0083, and deposited an additional $400,000 into the account to meet the account minimum of two million dollars. At the time, Mr. Davis again explained to Mr. DiPascali during a telephone call that the purpose of setting up the second account was to allow Karen Davis to separate her funds

from the funds of the Investors held in Account No. . .^075, and that Ms. Davis would continue to be the nominal owner of the funds in ,0075. (Davis Aff. ¶ 9.) After Account No. 0083 was established, Ms. Davis no longer had any personal financial interest in Account No. 0075. (*Id.*) Indeed, in light of the new account, there would be no reason for Ms. Davis to keep any of her personal funds in Account 0075.

Following the collapse of BLMIS in December 2008, Ms. Davis filed Claim No. 002614 with the Trustee regarding Account No. 0083 according to the procedures set forth in the December 28, 2008 Claims Procedure Order. (Ex. F.) Ms. Davis's Claim provided all of the pertinent information for Account No. 0083, and the accompanying Statement made clear that Ms. Davis had no personal financial interest in Account No. 0075. (*Id.*) Separate claims were filed by the beneficial owners of Account No. 0075, including one by Ms. Davis "as nominee" and Mr. Davis "as trustee" of the 2004 Elissa Weiner Trust. (Ex. G.)

Ms. Davis received the Determination for Claim Number 002614 dated February 12, 2010, which provided in part that:

> The Trustee has made the following determination regarding your claim on BLMIS Account No. 0083 designated as Claim Number 002614. BLMIS Account No. 0083 and BLMIS Account No. 0075. . . are held in the same capacity pursuant to SIPA Series 100 rules and are combined into one account for the purposes of this determination.

(Ex. A.) No additional explanation regarding the decision to combine the accounts was provided. Ms. Davis's claim was thus construed in the amount of $4,250,000, representing the sum of amounts deposited minus withdrawals in both Account No. 0075 and No. ,0083. Ms. Davis was offered a total of $500,000 in partial satisfaction of her "Allowed Claim."

4

## ARGUMENT

The Trustee's Determination appears to have been based on a reading of SIPA Rule 101(a), which provides that:

> Except as otherwise provided in these rules, all accounts held with a member by a person in his own name, and those which under these rules are deemed his individual accounts, shall be combined so as to constitute a single account of a separate customer.

The SIPA Rule that is applicable here, however, is Rule 101(b), which provides that:

> An account by a nominee for another person as a principal or beneficial owner shall, except as otherwise provided in these rules, be deemed to be an individual account of such principal or beneficial owner.

As explained above and in her original Claim, at all relevant times, Ms. Davis was the nominal owner only of the funds in Account No. ?0075 in the amount of $1,983,793, and those funds were in fact beneficially owned by the Investors. (Exs. C, D, E.) Thus, Account No. 0075 is not an "individual account" of Ms. Davis, but rather are "individual accounts" of the Investors. BLMIS was aware of this arrangement, as evidenced in part by Mr. Davis's conversations with Mr. DiPascali (Davis Aff. ¶¶ 3, 8, 9.), and the direct wire transfers into the account by at least two of the beneficial owners. (Ex. B.)[3]

---

[3] *See, e.g., Rosenman Family, LLC v. Picard*, 420 B.R. 108, 111 (S.D.N.Y. Nov. 30, 2009) (upholding determination that party was a "customer" under the SIPA where party had deposited cash with the debtor for the purpose of purchasing securities); *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities*, 401 B.R. 629 (Bkrtcy. S.D.N.Y. Feb. 24, 2009) (finding claimant was a customer entitled to SIPC protection where claimant wired funds to a BLMIS Chase Account for the purpose of investing in BLMIS's investment advisory fund); *In re Adler Coleman Clearing Corp.*, 216 B.R. 719 (Bkrtcy. S.D.N.Y. 1998) (recognizing that a key determination as to customer status was whether party had entrusted cash to debtor).

Following the plain letter of Rule 101(b), the funds in Account No. 0075 should have been "deemed to be an individual account of [its] beneficial owner[s]", and as such, should be subject to separate determinations by the Trustee, and should not have been combined with Account No. 0083 for purposes of the Determination at issue here. The failure to provide a separate and distinct determination for the beneficial owners of Account No. 0075 under these circumstances is not only contrary to Rule 101(b), but is particularly unfair and inequitable in that it dramatically limits the recovery that would, and should, be available to those Investors.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Determination concerning Claim No. 002614 be modified such that the two accounts are not combined and that reference to Account No. 0075 be deleted. Ms. Davis does not object to the Determination to the extent that it awards her, as beneficial owner of Account No. 0083, $500,000 pursuant to SIPA section 78fff-3(a)(1), and she has in fact signed a Partial Assignment and Release reflecting her agreement with that aspect of the Determination. (Ex. H.)[4] A check in the amount of $500,000 should therefore be advanced to Ms. Davis by the SIPC upon receipt of the enclosed

---

[4] The release signed by Ms. Davis, a copy of which has been submitted with this objection, is in substantially the same form as the proposed Partial Assignment and Release provided with the Determination, except that reference to Account No. 0075 has been deleted because we do not believe that Ms. Davis has exclusive authority to assign or release claims pertaining to the funds in that account. The release also contains an alternative, contingent release which provides that, in the event that this Determination is not modified as requested and becomes final and unappealable, or in the event that this objection is otherwise abandoned, Ms. Davis assigns and releases her claims with respect to both accounts ( 0075 and 0083.) The signed original release has been sent to the appropriate address in the envelope provided with the Determination.

release. Additional determinations should be made with regard to the other four claims filed by the Investors concerning Account No. ⁄0075.

Respectfully submitted,

BERGER LEGAL LLC

_____
Anna Aguilar
Scott D. Laton

cc: Clerk of the United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004