MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Joseph Sloves as Tstee Under
Rev Tst Agreement Dtd 9/19/00 for the
Benefit of Joseph Sloves*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

1

Joseph Sloves as Tstee Under Rev Tst Agreement Dtd 9/19/00 for the Benefit of Joseph Sloves ("Joseph Sloves Trust"), by and through its attorneys, hereby objects to the Notice of Trustee's Determination of Claim dated February 19, 2010 ("Determination Letter"), attached as Exhibit A, as described herein.

## BACKGROUND

1.  Joseph Sloves Trust is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.  Joseph Sloves Trust's Final BMIS statement for Account Number 1SO108, dated November 30, 2008, states that it owns securities valued at $2,901,857.98 ("Final BMIS Statement").

3.  On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

4.  On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.  The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall

2

notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.  On or about May 27, 2009, Joseph Sloves Trust submitted a customer claim form to SIPC for Account Number 1SO108 (Exhibit B) ("Joseph Sloves Trust Customer Claim").[1] Joseph Sloves Trust's final BMIS Statement was submitted with the Joseph Sloves Trust Customer Claim. *See* Joseph Sloves Trust Customer Claim (Exhibit B).

7.  On January 25, 2010, the BMIS Trustee sent Joseph Sloves Trust the Determination Letter denying the Joseph Sloves Trust Customer Claim in its entirety, rather than allowing the claim for $2,901,857.98, the total amount that Joseph Sloves Trust claimed. *See* Determination Letter (Exhibit A).

8.  Joseph Sloves Trust hereby objects to the Determination Letter for the reasons described below.

**GROUNDS FOR OBJECTION**

9.  <u>First Objection</u>. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with the Joseph Sloves Trust Customer Claim was its final BMIS statement showing a final balance of $2,901,857.98. *See* Joseph Sloves Trust Customer Claim (Exhibit B). The Final BMIS statement is the best evidence of the amount owed based on the Debtor's books and records. Accordingly, the claim should be allowed in the full amount of $2,901,857.98.

---

[1] In accordance with the Court's Order dated October 20, 2009 [Dkt. No. 533], Claimant's personal identification data has been redacted from Exhibit B.

3

10. <u>Second Objection</u>.  The Trustee has set forth no legal basis for disallowing the Joseph Sloves Trust Customer Claim in full as filed.  The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased by BLMIS for your account," and (2) "because you have withdrawn more than you deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding."  Determination Letter at 1-2 (Exhibit A).  Neither of these purported grounds for disallowance have any statutory or other legal basis.  Moreover, the Determination Letter:

(a) does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, s*ee* Order  [Dkt. No. 12];

(b) is inadequate to rebut the prima facie validity of the Joseph Sloves Trust Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c) violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based.  *See*, *e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer.  It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11. <u>Third Objection</u>.  15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  Upon information and belief, the Trustee objects to the Joseph Sloves Trust Customer Claim on the

4

ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1. *See also* Memorandum Of Law In Support Of Trustee's Motion For An Order Upholding Trustee's Determination Denying "Customer" Claims For Amounts Listed On Last Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating To Net Equity, dated October 16, 2009 [Dkt. No. 525]. This is incorrect for the following reasons:

(a)     The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.[2]

(b)     SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on

---

[2] Joseph Sloves Trust is, of course, aware of the Court's Memorandum Decision dated March 1, 2010 [Dkt. No. 1999] regarding the Trustee's determination of "net equity." However, for the reasons set forth herein, Joseph Sloves Trust respectfully believes that the Court's March 1, 2010 ruling is incorrect and will be overturned on appeal.

5

their account statements. The BMIS statements received by Joseph Sloves Trust stated that it owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Joseph Sloves Trust's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

(c)  Joseph Sloves Trust deposited funds in BMIS in the expectation the amount would grow, its account statements showed such growth, and the balance on the Final BMIS Statement reflects the benefit of this bargain. The Trustee's formula is an improper and wholly inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to have applied an expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the "money in/money out" formula as not reflecting the expectations of the parties. The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria [the dishonest broker], not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow. <u>Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs</u>

6

> only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would like grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added). This applies precisely to the Joseph Sloves Trust Customer Claim.

(d)     The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted --
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.

7

> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-38, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even where the purchase never actually incurred and the debtor instead converted the cash deposited by the claimant to fund that purchase").[3] Joseph Sloves Trust is

---

[3] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost … misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

8

situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, its claim should be recognized in full.

12. In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Joseph Sloves Trust is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*. Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Joseph Sloves Trust.

(b) Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Joseph Sloves Trust's deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest.")*; Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

9

13. <u>Fourth Objection</u>. The BMIS Trustee's action in reducing the amount shown on the Joseph Sloves Trust Customer Claim by any prior gains reflected on its final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

14. <u>Fifth Objection.</u> The Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The Trustee is required to state and prove when the Ponzi scheme began.

15. <u>Sixth Objection.</u> Joseph Sloves Trust was required to pay significant income taxes on distributions which the Trustee has alleged are fictitious. The Trustee has justified his proposed method of calculating claims is fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the Trustee's method is correct, Joseph Sloves Trust's customer claims should be adjusted by adding all amounts it actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. See *SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in

10

equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

16. <u>Sevenh Objection.</u> The Determination Letter purports to calculate the "net equity" for the Joseph Sloves Trust account on the basis of certain withdrawal and deposit transactions for which Joseph Sloves Trust has no records. Many of the transactions in question allegedly occurred more than fifteen years ago. It is unreasonable to anticipate the customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS as acknowledged by the United States Securities and Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove that the alleged withdrawal transactions occurred by furnishing the appropriate records to Joseph Sloves Trust and, absent such records, such transactions should be deleted from the calculation of Joseph Sloves Trust's "net equity." Likewise, the Trustee should be required to prove that all deposit transactions are completely listed by furnishing the appropriate records to Joseph Sloves Trust.

17. <u>Eighth Objection.</u> The Determination Letter purports to calculate the "net equity" for the Joseph Sloves Trust account on the basis of certain withdrawal and deposit transactions; however, the Determination Letter sets forth total amounts of deposits and withdrawals in the Joseph Sloves Trust account which conflict with the total amounts of deposits and withdrawals on Table 1 attached to the Determination Letter. For example, the Determination Letter states that Joseph Sloves Trust deposited a "total of $5,123,387.99" into the Joseph Sloves Trust

11

account (*see* Determination Letter at 2), while Table 1 states that Joseph Sloves Trust had "Total Deposits" of $5,747,012.30 (*see* Determination Letter at Table 1). Similarly, the Determination Letter states that Joseph Sloves Trust withdrew a "total of $7,535,000.00" from the Joseph Sloves Trust account (*see* Determination Letter at 1), while Table 1 states that Joseph Sloves Trust had "Total Withdrawals" of $8,050,000 (*see* Determination Letter at Table 1). In light of the fact that the Determination Letter sets forth conflicting calculations of deposits and withdrawals for the Joseph Sloves Trust account, the Trustee should be required to issue a revised determination letter which resolves these conflicts, and the Trustee should be further required to prove that the deposits and withdrawals listed on the Determination Letter occurred by furnishing the appropriate records concerning those deposit and withdrawal transactions to Joseph Sloves Trust.

18.     Ninth Objection.  Joseph Sloves Trust's present BMIS account (account number 1SO108) is a successor to, or assignee or transferee from, one or more prior accounts ("Transferor Accounts"). In calculating the "net equity" for the Joseph Sloves Trust BMIS account, the BMIS Trustee's accounting does not reflect the actual amounts transferred from the Transferor Accounts to the Joseph Sloves Trust account as reflected on the records of Joseph Sloves Trust, the contemporaneous documents furnished to Joseph Sloves Trust at the time of the transfer, and/or the records of BMIS which reflected the transfer. Instead, the BMIS Trustee has redetermined each transferred amount in accordance with his "money in/money out" formula (as described in the Third Objection) so that the transferred amount is limited by the amount of "money in/money out" (*i.e.*, deposits less withdrawals) in the Transferor Account at the time the transfer occurred.  *See* Determination Letter at 2 (Exhibit A). There is no basis in law or fact for such a result or redetermination. The Trustee has not alleged any factual basis for claiming that

12

Joseph Sloves Trust is not a bona fide transferee and purchaser, acting in good faith. The Trustee has not alleged any basis for reducing the balance in the Transferor Accounts at the time of the transfer under applicable state law, which is governing pursuant to the decision in *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (2007), and has not alleged any basis to avoid or reduce said balance pursuant to the avoidance powers of the Bankruptcy Code. Instead, the reduction (a) is an attempt to assert an avoidance power retroactively, to assert such a power as against the owner of the Transferor Accounts who is not a party to this Case; (b) has no basis in any statute or rule and no such statute of rule is stated by the BMIS Trustee; (c) makes no attempt to satisfy the requirements which are applicable to actions under such avoidance powers including applicable statutes of limitations and indeed fails to identify any provision of the avoidance powers which is applicable; (d) is subject to the various defenses set forth in the avoidance powers; and (e) is an improper attempt to impose liability on a transferee of the initial transferee without alleging or satisfying the conditions of section 550(b) of the Bankruptcy Code. The Trustee should be required to redetermine the Joseph Sloves Trust Customer Claim by recognizing the full amounts transferred from any Transferor Accounts.

19. <u>Tenth Objection.</u> The Determination Letter purports to calculate amounts transferred from one or more Transferor Accounts to the Joseph Sloves Trust account based on certain transactions in the Transferor Account(s) for which Joseph Sloves Trust has no records and for which the Trustee has not provided any records. Even assuming that Joseph Sloves Trust ever had access to records concerning the Transferor Account(s), it is unreasonable to anticipate the customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS as acknowledged by the United

13

States Securities and Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove that the alleged transactions in the Transferor Account(s) occurred by furnishing the appropriate records to Joseph Sloves Trust and, absent such records, the Trustee should be required to redetermine the Joseph Sloves Trust Customer Claim by recognizing the full amounts transferred from any Transferor Accounts.

## RELIEF REQUESTED

20. For the reasons stated herein, the Joseph Sloves Trust Customer Claim should be allowed in its entirety.

21. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Joseph Sloves Trust in the amount of $500,000.00 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

22. The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Joseph Sloves Trust will file a response.

23. Joseph Sloves Trust requests such other relief as may be just and equitable.

## CONCLUSION

24. Joseph Sloves Trust reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Joseph Sloves Trust' right to object on any additional grounds.

25. Joseph Sloves Trust reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

26. Joseph Sloves Trust reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

27. Joseph Sloves Trust incorporates by reference all reservations of rights set forth in the Joseph Sloves Trust Customer Claim.

Dated: March 19, 2010

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Fl.
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

                SEEGER WEISS LLP
                Stephen A. Weiss
                Christopher M. Van DeKieft
                Parvin Aminolroaya
                One William Street
                New York, NY 10004
                Telephone: (212) 584-0700
                Facsimile:  (212) 584-0799

*Attorneys for Joseph Sloves as Tstee
Under Rev Tst Agreement Dtd 9/19/00 for
the Benefit of Joseph Sloves*

509020v1

16