SONNENSCHEIN NATH & ROSENTHAL LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
cneville@sonnenschein.com

*Attorneys for Norma Shapiro, IRA*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Norma Shapiro, IRA hereby objects to the Notice of Trustee's Determination of Claim

dated March 9, 2010 ("Determination Letter"), attached hereto as **Exhibit A**, as described

herein.

### BACKGROUND

1.    On or about October 8, 2002, Norma Shapiro opened an account (Account No. 1-
S0467-3 and 1-S0467-4) with Bernard L. Madoff Investment Securities LLC ("Madoff") with a

distribution from her husband's pension account.  Ms. Shapiro established the account as self

directed Individual Retirement Account (the "Shapiro IRA Account").[1]

2.    On December 11, 2008, an action was commenced against Madoff by the Securities

& Exchange Commission in the United States District Court for the Southern District of New

---

[1]   All personal information relating to the Shapiro IRA Account has been redacted for security reasons.

York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the

Securities Investment Protection Act ("SIPA").  *See* Order, Securities and Exchange

Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA

and transferring proceeding to the United States Bankruptcy Court for the Southern District of

New York) [Dkt. No. 4].  Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*,

with overseeing the liquidation of Madoff and processing customer claims for money pursuant

to SIPA.  *Id.*; 15 U.S.C. § 78fff-1(a) (2009).

3.    On December 23, 2008, the Court issued an Order directing the Trustee to

disseminate notice and claim forms to Madoff customers and setting forth claim-filing

deadlines.  *See* Order [Dkt. No. 12].

4.    The December 23, 2008 Order further provided that, to the extent the Trustee

disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such

claimant by mail of his determination that the claim is disallowed, in whole or in part, **and the

reason therefor** . . . "  *See* Order at 6 (emphasis added) [Dkt. No. 12].

5.    On or about June 17, 2009, Ms. Shapiro filed a claim for the Shapiro IRA Account

in the amount of $1,637,295.15 (the "Shapiro IRA Customer Claim"), based on the November

30, 2008 statement from Madoff (the "Final Madoff Statement").  A copy of the Shapiro IRA

Customer Claim with the Final Madoff Statement is attached hereto as **Exhibit B**.

6.    On March 1, 2010, the Court issued a decision affirming the Trustee's net

investment method for determining customer claims.  That decision has been appealed, and a

final resolution on the issue is pending.

7.    On March 9, 2010, the Trustee sent Ms. Shapiro the Determination Letter rejecting

her claim, stating that (a) no securities were purchased for the Shapiro IRA Account and (b) the

account does not have a positive net equity because she had withdrawn more funds than she had

deposited into the account.[2]

## GROUNDS FOR OBJECTION

8. **First Objection.** The Determination Letter fails to comply with this Court's

December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance

"with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. The Shapiro

IRA Customer Claim was evidenced by the Final Madoff Statement showing a final balance of

$1,637,295.15 and listing the securities purportedly purchased for the account, which reflects the

"Debtor's books and records" and by which the Trustee is bound absent proof that the owner of

the Shapiro IRA Account did not have a "legitimate expectation" that the balance on the Final

Madoff Statement represented her property.

9. **Second Objection.** The Trustee failed to set forth a legal basis for the position he

has taken for the calculation of the claim  *See* Determination Letter.  The Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by

the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)    is insufficient to rebut the prima facie validity of the Shapiro IRA

Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P.

3001(f);

(c)    violates general principles of applicable law requiring that an objection to

a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the

objection is based, *see, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a

claim should . . . meet the [pleading] standards of an answer); *In re Enron Corp.*, No. 01-16034,

2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

---

[2]   There is no dispute that the Shapiro IRA Account is a customer account within the meaning of SIPA.

(d)    includes an exhibit which purportedly calculates the money deposited less subsequent withdrawals without any supporting documentation and is completely unsubstantiated; and to the extent the Trustee's "reconciliation" differs from the Shapiro IRA Customer Claim, the Trustee should produce evidence supporting his "reconciliation."

10.    **Third Objection.**  The Trustee has failed to fulfill the requirement that he honor the legitimate expectations of a customer.

11.    The legislative history of SIPA makes clear that Congress' intent in enacting the legislation was to protect the legitimate expectations of customers.  Congressman Robert Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance available to customers and expedite the process, commented on the purpose of the legislation as follows:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments  .  .  .  would satisfy the customers' legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

4

12.    The Securities Investor Protection Corporation ("SIPC") acknowledged that it was bound by the statute and the rules to satisfy the reasonable expectations of customers even when the securities had never been purchased, in the brief it submitted to the Court of Appeals for the Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality.  Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits of SIPA) even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on the reasonable and legitimate customer expectations frequently yields much greater customer protection than would be the case if the transaction reality, not the claimants expectations, were controlling, as this court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

13.    Based on regular statements and other communications received from Madoff, Ms. Shapiro at all times reasonably believed and expected that Madoff executed such transactions and that the Shapiro IRA Account actually held such securities.

14.    The Trustee's position in the Madoff case is completely inconsistent with the purpose and goals of SIPA and the position that SIPC, the corporation charged with administering the Act, has taken unequivocally with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

15.    **Fourth Objection.**  The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the amount of the claim by appreciation in the Shapiro IRA Account or calculate the claim by counting only investment principal less withdrawals.  The

Court's decision affirming the Trustee's net investment method has been appealed and a final

resolution on the issue is pending, and thus, no legal basis for the method exists.  The Trustee's

calculation violates SIPA.

16.    15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the

amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee calculates "net

equity" by reducing the principal contributed to the account less any withdrawals or

appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior

statement delivered by Madoff to the customer.   This is incorrect for the following reasons:

(a)    Notwithstanding the Court's determination, the Trustee's method of

calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a

customer's net equity claim as the value of the customer's "securities positions" in the

customer's account, less any amount the customer owes the debtor, as of the date of the filing of

the SIPA liquidation:

> The term 'net equity' means the dollar amount of the account or
> accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the
> debtor to such customer if the debtor had liquidated, by sale or
> purchase on the filing date, all securities positions of such
> customer . . . ; minus
>
> (B) any indebtedness of such customer to the debtor on the filing
> date . . .[3]

---

[3]   The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most
often in the context of a customer having borrowed from the debtor on margin.  *See, e.g.*, H.R. Rep. No. 95-746 at
21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*,
522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in
available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of
holders of margin accounts, amounts owed" to the broker); *In re First St. Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D.
Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock
purchase was funded in part by borrowing on margin).

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)        Notwithstanding the Court's determination, the Trustee's method is inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under SIPA by SIPC provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer. 17 C.F.R. § 300.500.  Pursuant to the Rule, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased or sold for the account.

(c)        Notwithstanding the Court's determination, the Trustee's method is inconsistent with the legislative history of the statute.  SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The Madoff statements and confirmations sent to Ms. Shapiro indicated that the Shapiro IRA Account owned a list of blue chip securities.  It makes no difference whether the securities were ever actually purchased.

(d)        The Trustee's formula is an improper and wholly inadequate measure of loss.  Ms. Shapiro deposited funds with Madoff in the expectation the amount would grow, the statements for the Shapiro IRA Account showed such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain.  In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties.  *Id*.  The Court explained:

7

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria, not to hide under a rock or lock in a safe, but for
> the express purpose of investment, with a hope – indeed a
> reasonable expectation – that it would grow. Thus, the out-of-
> pocket theory, which seeks to restore to Plaintiffs only the $21
> million they originally invested less their subsequent withdrawals,
> is a wholly inadequate measure of damages. Had Gruttadauria
> invested Plaintiffs' money as requested, their funds would have
> likely grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they
> hired an honest broker . . . , would have placed their money in the
> stock market during one of the strongest bull markets in recent
> memory. In fact, the fictitious statements issued by Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly invested, indicate that Plaintiffs' accounts would have
> grown to more than $37.9 million (even accounting for the
> withdrawal of more than $31.3 million). Plaintiffs thus could have
> reasonably believed that they were entitled to the full $37.9
> million balance shown, regardless of the amounts of their previous
> deposits and withdrawals.

*Id*. This applies precisely to Ms. Shapiro's claim.

(e)    Notwithstanding the Court's determination, the Trustee's Determination

Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of

Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings.

For example, in the New Times Securities Services Inc. ("New Times") SIPA liquidation, in the

context of discussing claims filing deadlines, Harbeck acknowledged that if broker-dealer

customers have been led to believe that "real existing" securities had been purchased for their

accounts, then those customers are entitled to the full value of their securities positions as of the

filing date, even if that value represents a substantial increase from the purported purchase price

of the securities and even if the securities had never been purchased.  Harbeck testified as

follows:

> Harbeck: [I]f you file within sixty days, you'll get the securities,
> without question. Whether – if they triple in value, you'll get the
> securities. . . . Even if they're not there.

> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted –
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the
> people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y.

July 28, 2000).

Moreover,  SIPC faced very similar circumstances in the New Times liquidation and

took a very different position than it is taking in the Madoff case in support of the Trustee.

There, the New Times Trustee's position on "net equity" was in full accord with SIPA, and thus

directly contrary to the Trustee's position in this case.  Specifically, with respect to any claims

that were based on confirmations and account statements reflecting securities positions in "real"

securities that could have been purchased (i.e., securities that actually existed on the public

market and whose valuations were objectively and publicly verifiable by the customers), the

New Times Trustee allowed all such net equity claims to the full extent of the filing date

valuations of those securities, even though none of the securities identified in those records had

ever, in fact, been purchased by the broker-dealer.[4]

---

[4]    As with Madoff Securities and Bernard Madoff, New Times and its principal, William Goren, defrauded scores
of investors by providing them with confirmations and account statements reflecting purported securities
investments made on their behalf when, in fact, no such investments had been made and their money had, instead,
been misappropriated for other purposes.  Two of the investment opportunities Goren purported to offer were: (1)
money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were
entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real Securities").  *See In
re New Times Sec. Servs., Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*").  Goren's was "a classic Ponzi
scheme," *id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were
purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased.  Consistent
with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to

9

(f)    The Trustee's determination and the Court's determination are

inconsistent with the case law.  The Second Circuit's discussion of SIPC's claims processing in

*New Times,* the only case in this jurisdiction dealing with the issue in the Madoff case, further

indicates that, with respect to customers who thought they were invested in listed securities,

SIPC properly paid customer claims based on the customers' final account statements, even

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably. Although they were not actually invested in
> those real funds – because Goren never executed the transactions –
> the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed. As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up
> to $500,000 in SIPC advances. The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore,
> the Trustee notes that, if they were checking on their mutual
> funds, the "securities claimants," . . . could have confirmed the
> existence of those funds and tracked the funds' performance
> against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC

at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> [R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality.  Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or she holds the securities identified in the confirmation
> and therefore generally is entitled to recover those securities
> (within the limits imposed by SIPA), even where the purchase
> never actually occurred and the debtor instead converted the cash
> deposited by the claimant to fund that purchase. . . .  [T]his
> emphasis on reasonable and legitimate claimant expectations

---

the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities
positions as of the date of the liquidation filing.  When challenged by "Fictitious New Age Funds" customers who
had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent
concurrence of the SEC) vigorously defended their approach in court.

10

frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

(g)    The Trustee's position in the Madoff case is contradicted, not only by SIPC's prior treatment of customers in the New Times case, but also by a statement that SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang acknowledged that a Madoff customer is entitled to the securities in his account:

> Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each. So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

(h)    The Trustee's methodology also conflicts with other federal laws. For example, Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually. Yet the Trustee's position is that the income earned by customers on their investments is not their money. In addition, some customers were required to take distribution from their retirement accounts. Yet the Trustee is deducting from their customer claim the mandatory withdrawals that the customers were required by law to take. Moreover, pension distributions are protected under federal and state law, yet the Trustee reduces or disallows such distributions.

17.    In sum, the Trustee has created his own definition of "net equity." The procedure is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying SIPC insurance to the thousands of Madoff investors who, like Ms. Shapiro, have depended upon their Madoff investments for their current and future living expenses.

18.   **Fifth Objection.**  The Trustee's action in reducing the amount shown on the

Shapiro IRA Customer Claim by any prior gains reflected on the Final Madoff Statement or

prior statements is an attempt to avoid such gains without alleging any grounds for avoidance or

proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any

such disallowance is improper and unjustified, and the Determination Letter should be stricken

on that ground alone.  *See* Fed. R. Bankr. P. 7001(1) & 7008.

19.   **Sixth Objection.**  SIPA provides that (a) SIPC shall pay the first $500,000 of each

customer claim, and (b) customers have an unsecured claim against customer property for the

balance of their claims which is paid pro rata with other customers.  *See* 15 U.S.C. § 78fff-3(a)

("In order to provide for prompt payment and satisfaction of net equity claims of customers of

debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required

to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall

share ratably in . . . customer property on the basis and to the extent of their net equities").  As

evidenced by the Shapiro IRA Customer Claim, Ms. Shapiro has a valid claim in the amount of

$1,637,295.15.  Therefore, Ms. Shapiro is entitled to an advance of $500,000 and a claim against

customer property for the remainder.

20.   **Seventh Objection.**  The Shapiro IRA Account was established pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* whose

provisions preempt state fraudulent conveyance law, upon which the Trustee presumably relies

pursuant to 11 U.S.C. § 544 to reduce the account balance.  *See* 29 U.S.C. § 1144(a) (the

provisions of ERISA "shall supersede any and all state laws insofar as they may now or

hereafter relate to any employee benefit plan described in section [1003(a)] . . .").

As evidence of Congressional intent to protect ERISA-qualified plans, the Bankruptcy

Code was amended in 2005 to protect such plans from the claims of creditors.  11 U.S.C. §

12

541(b)(7)(a)(i)(I) (exempting from property of the estate "any amount withheld by an employer

from the wages of employees for payment as contributions to an employee benefit plan that is

subject to Title I of the Employee Retirement Income Security Act of 1974 . . .").  *See also,*

*Patterson v. Shumate*, 504 U.S. 753 (1992) (holding that debtor's interest in an ERISA-qualified

pension plan may be excluded from the property of the bankruptcy estate pursuant to 11 U.S.C.

§ 541(c)(2)).

Moreover, any withdrawals from the account are required by other non bankruptcy law.

Accordingly, to reduce the Shapiro IRA Account balance by mandatory withdrawals is both

improper and inequitable.  The Trustee's reduction or disallowance of the amount deposited

from Mrs. Shapiro's husband's pension account is also prohibited by applicable federal law.

21.  **Eighth Objection.**  The Shapiro IRA Account was established as an individual

retirement, which under the laws of the State of Florida where the account was established and

administered, are exempt from judgment and the Trustee's efforts to reduce the amounts due in

the account under any theory.  *See, e.g.,* Colo. Rev. Stat. § 13-54-102 (2008); N.Y. C.P.L.R. §

5205(c).  These state laws protect the funds in the Shapiro IRA Account from recovery by a

trustee, and the Trustee's reduction of the funds is in violation of state law.  The Trustee's

reduction or disallowance of the amount deposited from Mrs. Shapiro's husband's pension

account is also prohibited by applicable state law.

22.  **Ninth Objection**.  The disallowance of the transfer from Mr. Shapiro's pension

account to Ms. Shapiro's IRA is barred by the statute of limitation since it occurred more than

six years prior to the filing of the petition.

23.  **Tenth Objection**.  The disallowance of the transfer from Mr. Shapiro's pension

account to Mrs. Shapiro's IRA Account is improper because Mrs. Shapiro took the transfer from

her husband's pension account for value and without any knowledge of Madoff's fraud.

24.  **Alternate Considerations.**  In the event that the Court should determine that customer claims should not be allowed in the amount of the Final Madoff Statement, then in the alternative, the customer is entitled to recover interest or appreciation on the investments based upon the following.

(a)        Under New York law, which is applicable here, funds deposited with Madoff under these circumstances are entitled to interest.  *See, e.g.,* N.Y. C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*.  Accordingly, the Shapiro IRA Customer Claim should be recalculated by adding interest to all funds deposited.

(b)        Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff on the customer's deposits.  *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

(c)        Ms. Shapiro is entitled to interest on her investment under federal securities laws.  In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the different measures of recovery of "actual damages" for fraud, primarily including rescission and restitution.  The *Randall* Court concluded that Congress intended to deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted.  *See id*. at 664 (citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)).  The *Randall* Court continued by holding that:

14

> This deterrent purpose is ill-served by a too rigid insistence on limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 940 (2d Cir. 1984)).

## RESERVATION OF RIGHTS

25.    The Shapiro IRA Account reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of its right to object on any additional grounds.

26.    The Shapiro IRA Account reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

27.    The Shapiro IRA Account reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

## RELIEF REQUESTED

For the reasons stated herein, the Shapiro IRA Customer Claim should be allowed in its entirety in the amount of $1,637,295.15, which is the amount reflected on the Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, the Court should direct SIPC to immediately replace $500,000 of the securities in the Shapiro IRA Account based upon the values reflected on the Final Madoff Statement and/or immediately forward the Shapiro IRA Account a $500,000 advance from the SIPC Fund.

For the reasons stated herein, the Determination Letter should be stricken.

The Shapiro IRA Account requests such other relief as may be just and equitable.

Dated: March 24, 2010                     SONNENSCHEIN NATH & ROSENTHAL LLP


By:   ___/s/ *Carole Neville*_____
      Carole Neville
      1221 Avenue of the Americas
      New York, New York 10020
      Telephone:  (212) 768-6700
      Facsimile:  (212) 768-6800

*Attorneys for Norma Shapiro, IRA*

## <u>CERTIFICATE OF SERVICE</u>

I, Carole Neville, hereby certify that on March 24, 2010 I caused a true and correct copy

of the foregoing **Objection to Trustee's Determination of Claim** on behalf of Norma Shapiro,

IRA to be filed electronically with the Court and served upon the parties in this action who

receive electronic service through CM/ECF, and served by hand upon:

> David J. Sheehan, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY 10111

Dated: March 24, 2010

> */s/ Carole Neville*
> Carole Neville

**<u>Exhibit A</u>**

**(Determination Letter)**

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008[1]**



**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

March 9, 2010

Norma Shapiro (IRA)



Dear Norma Shapiro (IRA):

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1S0467 designated as Claim Number 009819:

Your claim securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $468,769.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $11,033.85). As noted, no securities were ever purchased by BLMIS for your

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($457,735.15) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

2

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after March 9, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

3

**PLEASE TAKE FURTHER NOTICE:**  You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

_Irving H. Picard_

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  Carole Neville, Esq.
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas, 25th Floor
New York, New York 10020

Millennium Trust Company, LLC
FBO Norma Shapiro
820 Jorie Blvd., Suite 420
Oak Brook, IL  60523

4

| - Table 1 - | | | |
| :---: | :---: | :---: | :---: |
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 10/8/2002 | TRANS FROM 1S032730 | $1,187,672.88 | $0.00 |
| 8/29/2005 | ROLLOVER CHECK | $11,033.85 | $11,033.85 |
| **Total Deposits:** | | $1,198,706.73 | $11,033.85 |
| | | | |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 9/3/2003 | CHECK | ($78,133.00) | ($78,133.00) |
| 12/27/2004 | CHECK | ($84,859.00) | ($84,859.00) |
| 12/23/2005 | CHECK | ($92,386.00) | ($92,386.00) |
| 10/13/2006 | CHECK | ($100,815.00) | ($100,815.00) |
| 12/27/2007 | CHECK | ($112,576.00) | ($112,576.00) |
| **Total Withdrawals:** | | ($468,769.00) | ($468,769.00) |
| | | | |
| **Total deposits less withdrawals:** | | $729,937.73 | ($457,735.15) |

5

**Exhibit B**

**(Shapiro IRA Customer Claim)**



## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

RECEIVED

In Liquidation

JUN 17 2009

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: (212) 768-6889_____

HOME: _____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number: 1-S0467-3 & 1-S0467-4

Norma Shapiro, IRA

**REDACTED**

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1.    Claim for money balances as of **December 11, 2008_**:
    a.    The Broker owes me a Credit (Cr.) Balance of          $_____
    b.    I owe the Broker a Debit (Dr.) Balance of            $_____

    c.    If you wish to repay the Debit Balance,

           please insert the amount you wish to repay and

           attach a check payable to "Irving H. Picard, Esq.,

           Trustee for Bernard L. Madoff Investment Securities LLC."

           If you wish to make a payment, **it must be enclosed**

           with this claim form.           $_____

    d.    If balance is zero, insert "None."    ____NONE____

2.        Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

    c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number **of** Shares or Face Amount of Bonds — The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| **SEE STATEMENT DATED NOVEMBER 30, 2008** | | ✓ | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

10289449

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

10289449

9.      Have you or any member of your family
        ever filed a claim under the Securities
        Investor Protection Act of 1970? if
        so, give name of that broker.                                    _____   ✓_____

        Please list the full name and address of anyone assisting you in the
        preparation of this claim form:  Carole Neville, Sonnenschein Nath &
        Rosenthal LLP, 1221 Avenue of the Americas, 25th Floor, New York, NY 10020 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.


**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**


**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.** *

Date____6/12/09_____    Signature _Lorna J Laperie_____

Date_____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)


**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

---

\* This form includes and incorporates in full the attached Addendum.  Customer
reserves the right to amend the claim for any purpose, including without
limitation, to add interest, costs and other losses associated with this account.

10289449

**ADDENDUM**

Customer:      **Norma Shapiro, IRA**

Address:       REDACTED

Account #:     **1-S0467-3**
               **1-S0467-4**

November 30, 2008 Statement – Closing balance net equity $1,637,295.15

REDACTED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT NYC & CO.
DORIS SHAW
SHAW & DUGAN

YOUR ACCOUNT NUMBER: 1-S0467-1-0
DATE: 11/30/09
YOUR TAX PAYER IDENTIFICATION NUMBER: ******
PAGE: 1

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|------|-------------|-----------------|--------------------------------|---------------------------------|
| | | | | BALANCE FORWARD | | 95,453.63 | |
| 11/12 | 1,470 | | 506 | WELLS FARGO & CO NEW | 29.800 | 43,864.00 | |
| 11/12 | 1,050 | | 1008 | HEWLETT PACKARD CO | 34.900 | 36,687.00 | |
| 11/12 | 910 | | 4832 | WAL-MART STORES INC | 55.830 | 50,841.30 | |
| 11/12 | 595 | | 5334 | INTERNATIONAL BUSINESS MACHS | 87.270 | 51,948.65 | |
| 11/12 | 2,205 | | 9158 | EXXON MOBIL CORP | 72.880 | 160,788.40 | |
| 11/12 | 2,415 | | 9660 | INTEL CORP | 14.510 | 35,137.65 | |
| 11/12 | 1,155 | | 13986 | JOHNSON & JOHNSON | 59.580 | 68,860.90 | |
| 11/12 | 1,575 | | 18311 | J.P. MORGAN CHASE & CO | 38.530 | 60,747.75 | |
| 11/12 | 840 | | 22637 | COCA COLA CO | 44.660 | 37,547.40 | |
| 11/12 | 4,900 | | 26963 | MCDONALDS CORP | 55.370 | 27,150.30 | |
| 11/12 | 910 | | 31289 | MERCK & CO | 28.550 | 25,016.50 | |
| 11/12 | 3,325 | | 35515 | ORACLE CORPORATION | 23.810 | 72,651.25 | |
| 11/12 | 1,680 | | 39941 | MICROSOFT CORP | 57.430 | 38,131.00 | |
| 11/12 | 665 | | 52919 | PEPSICO INC | 56.430 | 37,539.65 | |
| 11/12 | 385 | | 53621 | APPLE INC | 100.780 | 38,815.30 | |
| 11/12 | 2,835 | | 57245 | PFIZER INC | 16.940 | 48,137.90 | |
| 11/12 | 665 | | 57747 | ABBOTT LABORATORIES | 54.610 | 36,341.65 | |
| 11/12 | 1,260 | | 61571 | PROCTER & GAMBLE CO | 64.080 | 80,790.80 | |
| 11/12 | 455 | | 62073 | AMGEN INC | 59.160 | 26,935.90 | |
| 11/12 | 875 | | 65897 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 38,185.00 | |
| 11/12 | 2,100 | | 66399 | BANK OF AMERICA | 21.590 | 43,423.00 | |
| 11/12 | 700 | | 70223 | QUALCOMM INC | 33.770 | 23,667.00 | |
| 11/12 | 2,275 | | 70725 | CITI GROUP INC | 12.510 | 28,551.25 | |

CONTINUED ON PAGE 2



REDACTED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

**DUPLICATE** FOR ACCOUNT NTC & CO.
DORIS SHAW
SHAW & DUGAN

| | Account Number | Date | Page |
|---|---|---|---|
| | 1-S0467-3-0 | 11/30/08 | 2 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TIN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 525 | | 74549 | SCHLUMBERGER LTD | 49.480 | 25,999.00 | |
| 11/12 | 1,260 | | 75051 | COMCAST CORP CL A | 16.510 | 20,952.60 | |
| 11/12 | 2,485 | | 78875 | AT&T INC | 27 | 67,194.00 | |
| 11/12 | 630 | | 79377 | CONOCOPHILIPS | 52.510 | 33,106.30 | |
| 11/12 | 420 | | 83201 | UNITED PARCEL SVC INC CLASS B | 52.040 | 21,872.80 | |
| 11/12 | 2,555 | | 83703 | CISCO SYSTEMS INC | 16.730 | 42,847.15 | |
| 11/12 | 735 | | 87527 | U S BANCORP | 29.530 | 21,733.55 | |
| 11/12 | 875 | | 88029 | CHEVRON CORP | 73.470 | 64,286.25 | |
| 11/12 | 420 | | 91053 | UNITED TECHNOLOGIES CORP | 53.160 | 22,343.20 | |
| 11/12 | 4,445 | | 92355 | GENERAL ELECTRIC CO | 19.650 | 87,432.35 | |
| 11/12 | 1,190 | | 96179 | VERIZON COMMUNICATIONS | 30.610 | 36,426.90 | |
| 11/12 | 105 | | 96681 | GOOGLE INC | 337.410 | 35,431.00 | |
| 11/12 | | 1,575,000 | 23115 | U S TREASURY BILL DUE 2/12/2009 | 99.936 | | 1,573,992.00 |
| 11/12 | | | | U S TREASURY BILL DIV 2/12/2009 | DIV | | 35.37 |
| 11/12 | | 32,282 | 18216 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 32,282.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | | | |
| 11/12 | 14,149 | | 27504 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 14,149.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 1.74 |

CONTINUED ON PAGE 3

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   NTC & CO.

DORIS SHAW
SHAW & DUGAN

REDACTED

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222
Affiliated with

YOUR ACCOUNT NUMBER: 1-50467-3-0
PERIOD ENDING: 11/30/08
YOUR TAX ID NUMBER: ******
Page: 3

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TKN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | 19,084 | | 62114 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 19,084.00 | |
| 11/19 | 100,000 | | 57599 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99,926 | 99,926.00 | |
| 11/19 | | 14,149 | 53076 | U S TREASURY MONEY MARKET FIDELITY SPARTAN | 1 | | 14,149.00 |
| | | | | NEW BALANCE | | 193,243.07 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 2,485 | | | AT&T INC | 28.560 | | |
| | 665 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 455 | | | AMGEN INC | 55.540 | | |
| | 385 | | | APPLE INC | 92.670 | | |
| | 2,100 | | | BANK OF AMERICA | 16.250 | | |
| | 875 | | | CHEVRON CORP | 79.010 | | |
| | 2,555 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 2,275 | | | CITI GROUP INC | 8.290 | | |
| | 840 | | | COCA COLA CO | 46.870 | | |
| | 1,260 | | | COMCAST CORP CL A | 17.340 | | |
| | 630 | | | CONOCOPHILLPS | 52.520 | | |
| | 2,205 | | | EXXON MOBIL CORP | 80.150 | | |
| | 4,445 | | | GENERAL ELECTRIC CO | 17.170 | | |

CONTINUED ON PAGE 4

REDUCED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   NTC & CO.
DORIS SHAM
SHAM & DUGAN

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

1-50467-3-0    11/30/08



| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 105 | | | GOOGLE | 292.960 | | |
| | 1,050 | | | HEWLETT PACKARD CO | 35.230 | | |
| | 2,415 | | | INTEL CORP | 13.800 | | |
| | 595 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 1,575 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,155 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 490 | | | MCDONALDS CORP | 58.750 | | |
| | 910 | | | MERCK & CO | 26.720 | | |
| | 3,325 | | | MICROSOFT CORP | 20.220 | | |
| | 1,680 | | | ORACLE CORPORATION | 16.090 | | |
| | 645 | | | PEPSICO INC | 56.700 | | |
| | 875 | | | PFIZER INC | 16.430 | | |
| | 2,835 | | | PHILIP MORRIS INTERNATIONAL | 42.350 | | |
| | 1,260 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 525 | | | QUALCOMM INC | 33.570 | | |
| | 700 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 19,084 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 735 | | | U S BANCORP | 26.980 | | |
| | 420 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 100,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 420 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |

CONTINUED ON PAGE   5



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT NTC & CO.
DORIS SHAW
SHAW & DUGAN

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 1,190 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| 910 | | | WAL-MART STORES INC | 55.880 | | |
| 1,470 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | MARKET VALUE OF SECURITIES LONG | | | |
| 1,661,095.15 | | | SHORT | | | |

1-50467-3-0
11/30/09
5



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE**  FOR ACCOUNT  NTC & CO.
DORIS SHAW
SHAW & DUGAN

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|--------------------------------|
| | | | | YEAR-TO-DATE SUMMARY | 1-50467-3-0 | 11/30/08 | 6 |
| | | | | DIVIDENDS | | | 10,943.32 |
| | | | | GROSS PROCEEDS FROM SALES | | | 9,199,538.76 |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT NYC & CO.
DORIS SHAW
SHAW & DUGAN

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

YOUR ACCOUNT NUMBER 1-50467-4-0
11/10/08
Page 1

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | |
| 11/12 | | 35 | 44267 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 95,454.00 |
| 11/12 | 35 | | 48593 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 62,335.00 | 55,265.00 |
| 11/19 | 35 | | 34697 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 90,965.00 |
| 11/19 | 35 | | 39022 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 105,035.00 | |
| 11/19 | 35 | | 43347 | S & P 100 INDEX NOVEMBER 460 CALL | 3 | 10,535.00 | |
| 11/19 | | 35 | 47672 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | | 129,465.00 |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | | | S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | 193,244.00 |
| | | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG 57,750.00 | | | |
| | | | | SHORT 81,550.00- | | | |