

**Kohrman Jackson & Krantz** PLL

ATTORNEYS AT LAW

March 9, 2010

<u>VIA OVERNIGHT MAIL</u>

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
Courtroom 623
New York, NY 10004



MAR 2 6 2010

Re:   NOTICE OF APPEAL

    *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, United States Bankruptcy Court, Southern District of New York, Adv. No. 08-01789

    The Reaven Group
        BLMIS Account Number: 1ZA354
        Claim Numbers: 004498, 100070 and 100424
        Date of Determination: February 18, 2010
        Amount: $277,808.95

    The Albert Reaven Living Trust
        BLMIS Account Number: 1R0139 (formerly Albert Raven, Account No. 1R0011)
        Claim Numbers: Unknown
        Date of Determination: None
        Balance: $ 427,357.36

    The Richard, Lawrence, Linda and Ruth Reaven Trust
        BLMIS Account Number: 1R0140 (formerly Richard, Lawrence, Linda and Ruth Reaven Trust, Account No. 1R0012)
        Claim Numbers: Unknown
        Date of Determination: None
        Balance: $ 302,269.49

V 216-736-7209
F 216-621-6536
E ahj@kjk.com

One Cleveland Center
20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793
216-696-8700
www.kjk.com

*Cleveland and Columbus*

Member of
MACKRELL
INTERNATIONAL
An association of independent law firms

Dear Judge Lifland:

This office represents Madoff victims The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust.

The purpose of this correspondence is to appeal the February 18, 2010 determination of Trustee Irving Picard denying the claim of The Reaven Group.

We further request an immediate favorable adjudication of the still unresolved claims of The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust.

{K0221324.2}



Kohrman Jackson & Krantz PLL
ATTORNEYS AT LAW

We apologize for the late timing of this correspondence and note that it comes even after the Court's ruling of March 1, 2010. However, despite the fact that The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust all filed their claims timely on February 27, 2009 the Trustee did not make any determination until February 18, 2010 – well after the Court's deadline for briefing the SIPC issues and even after the Court's February 2, 2010 hearing on net equity calculations.[1]

The first problem with the Trustee's determination is a factual one. The Trustee has apparently mixed the unrelated accounts of The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust together with a long closed account of William Rubenstein, the Reavens' father and grandfather. Though the records attached to the Trustee's determination reflect deposits in 1992 and 1998 and withdrawals in 1993, 1994, 1995, 1996, 1997 and 2005, these could not have been all the same account.

In 1992 William Rubenstein opened an account with BLMIS.[2] From 1993 through 1997 Mr. Rubenstein made occasional withdrawals from his account. After his death, most of the balance was distributed to his children and grandchildren as reflected in the December 1997 withdrawal ($195,704). The remainder amount in this account is presently unknown.

The 1998 deposits ($100,000) and the 2005 withdrawal ($27,451) were after Mr. Rubenstein's death and were done in a separate account that should have been labeled The Reaven Group.

Based upon the foregoing, it is not appropriate to factor the 1998 deposits and the 2005 withdrawal into The Reaven Group account as that account did not open until after Mr. Rubenstein's death in 1997. Of even greater concern is that the Trustee seemingly set a negative value on Mr. Rubenstein's account at the time of his death in 1997 and then used that amount to offset subsequent deposits by his grandchildren into The Reaven Group account.

---

[1] It is noted that the Court's Order of March 1, 2010 finds significant that *"not all* Madoff claimants objected to the Trustee's determination of Net Equity." Order, p. 8. Surely, however, the Court realizes that *"not all"* claimants had standing to raise an objection because the Trustee dallied for more than a year in adjudicating some claims. Moreover, an unknown number of claims – including most of the claims of the Reaven family – are still left unadjudicated though they were timely filed.

[2] It is not clear from this Court's Order of March 1, 2010 when it believes the fraud commenced. That is a glaring deficiency significant to the calculation of Net Equity and the application of SIPC. Notably, the Order states that BLMIS started to offer investment advisory services "as early as the 1960's, yet it never acted as a legitimate investment advisor to its customers." Order, p. 9 [emphasis added].

Page 2

{K0221324.2}



Kohrman Jackson & Krantz PLL
ATTORNEYS AT LAW

Further, the Trustee's analysis does not even reflect the deposits and withdrawals in the accounts of The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust.

Aside from the factual dispute, we note that the Trustee's bi-partite legal argument that: 1) investors are not entitled to rely upon the stated values of their fraudulent accounts, and 2) "cash in/cash out" is the only relevant calculation, is contrary to law. It is also inexplicably contrary to the argument successfully raised by Trustee's own law firm Baker & Hostetler in settling *Bonutti v. Lehman Brothers, Inc.*, United States District Court, Northern District of Ohio, Case No. 1:02-CV-1018, a case arising out of $280 million in false account statements sent out over a 15 year period by former Cowen, SG Cowen and Lehman broker Frank Gruttadauria.

In *Bonutti*, Baker & Hostetler attorneys Daniel Warren, Daniel Mascaro, Geoffrey Mearns and Melissa Eckhouse argued that an investor in a Ponzi scheme perpetrated by a stock broker was entitled to rely upon the false statements of purchases and sales that had been made over a period of many years in his account. Baker & Hostetler specifically rejected calculation of the broker-dealer that there were no damages based upon "cash in/cash out." Instead, Baker & Hostetler argued that the client was entitled to base his claim upon fake statements and millions of dollars in false profits.

As set forth in the *Bonutti* Complaint, the damage claims against the broker-dealer were predicated upon the fact that the broker-dealer "refused to provide [client] with the benefit of the many purchases and sales of stock that, for years, [broker] represented had been made for [client's] accounts." *Bonutti* Complaint, ¶4. Further, Baker & Hostetler argued that its client was entitled to recover $16 million as set forth on his false statements in 2001, though the client had deposited only $4 million in 1991. *Bonutti* Complaint, ¶30. As Baker & Hostetler concluded, "[i]n short, [client] has lived his life based upon the representations that the [broker and broker/dealer] made to him over a period of years about his investment account – representations that they now seek to disavow." *Bonutti* Complaint, ¶42.

This argument for damages based upon false statements and rejecting the "cash in/cash out" formula was followed up by Baker & Hostetler in the related Gruttadauria case of *Visconsi v. Lehman Brothers*, 2007 U.S. App. LEXIS 19088 (6th Cir.).

In *Visconsi* the Plaintiffs were jointly represented by the law firms of Baker & Hostetler; Porter, Wright, Morris & Arthur and Kellogg, Huber, Hansen, Todd, Evans & Figel.

In *Visconsi* the investors deposited $21 million, withdrew $25.8 million and had false account statements showing a balance of $37.9 million. Nevertheless, the Sixth Circuit affirmed an arbitration award of $10.2 million

{K0221324.2}



**Kohrman Jackson & Krantz** PLL
ATTORNEYS AT LAW

holding that Lehman's out-of-pocket theory of damages "misapprehends" the harm suffered by the recipients of the false statements finding this to be a "wholly inadequate" measure of damages.

Though not binding upon this Bankruptcy Court, one should also take notice that there have been several FINRA, NASD and NYSE arbitration cases (where most customer-broker fraud disputes are adjudicated – not in court) that have awarded damages to a customer based upon their reliance upon fraudulent statements – even where withdrawals exceeded deposits. In fact, at times, the SEC and the NYSE have gone so far as to create special arbitration processes to benefit victims of such matters.  See: http://www.sec.gov/news/press/2003-96.htm.

Though admittedly SIPC carries an independent regulatory construct, Trustee's argument that only "cash in/cash out" matters for the purpose of calculating damages is irreconcilably opposite to the argument that Baker &Hostetler successfully made in litigation and settlement of both the *Bonutti* and *Visconsi* cases.

In addition to the issues previously raised by other claimants, we note that the Trustee has provided no copies of records and no account documentation to support his determination. Critically, we believe that the figure of $304,624 for The Reaven Group does not accurately reflect the total of deposits made by the Reaven family, and we question why the record only goes back to 1992.

Moreover, it is a fallacy of the Trustee's analysis to perform calculations based upon when the fraud was discovered and not when it occurred. In the Trustee's scheme a fraud that resulted in an immediate theft of investor assets would be subject to a SIPC recovery only after it was discovered and adjudicated – in this case many years later.

By contrast, if the fraud were discovered at the time it had occurred, the victim could have been compensated promptly and had the benefit of their funds without waiting years for the perpetrator to confess or the Trustee to process the paperwork. The time-value calculation effectuated by such delayed justice serves only to enrich SIPC and penalize the investor.

In conclusion, based upon the foregoing, we request that the Trustee's determination of February 18, 2010 for The Reaven Group be reversed and associated family claims of The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust, that have still not been adjudicated, be allowed in their entirety.

Page 4

{K0221324.2}



**Kohrman Jackson & Krantz** PLL
ATTORNEYS AT LAW

We would welcome the opportunity to brief these matters further or present oral arguments at any hearing in this Court or any other Court adjudicating this matter should this Court desire.

Respectfully,

Ari H. Jaffe

Encl.

cc:   Albert Reaven
      Irving Picard, Trustee
      Kevin H. Bell
      Clerk of the United States Bankruptcy Court

/kas