BECKER, GLYNN, MELAMED & MUFFLY LLP
*Attorneys for Weithorn/Casper Associates*
*For Selected Holdings LLC*
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Chester B. Salomon (CS-2319)
csalomon@beckerglynn.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SECURITIES INVESTOR PROTECTION  :
CORPORATION,                    :
                                :
        Plaintiff,          :    Adv. Pro. No. 08-01789 (BRL)
                                :
   v.                           :
                                :
BERNARD L. MADOFF INVESTMENT    :    SIPA Liquidation
SECURITIES LLC,                 :
        Defendant.          :
                                :
                                :
                                :
-------------------------------------------------------X

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

TO:   THE HONORABLE BURTON R. LIFLAND,
       UNITED STATES BANKRUPTCY JUDGE:

      Weithorn/Casper Associates for Selected Holdings LLC (the "Customer"), by and through its undersigned attorneys, hereby objects to the Notice of Trustee's Determination of Claim, dated February 26, 2010 ("Determination"), attached as Exhibit B, as described herein.

## BACKGROUND

1. Customer is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("Madoff").

2. Customer's final Madoff statement for Account Number 1-CM310, dated November 30, 2008, states that it owns securities valued at $1,675,288 ("Final Madoff Statement").

3. On December 11, 2008, the above –captioned liquidation proceeding was commenced against Madoff, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("Madoff Trustee"), charged with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

4. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the Madoff Trustee disseminated notice and claim forms to Madoff's customers in accordance with the Court's Order.

5. The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the Madoff Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor* . . . ." *See* Order at 6 (emphasis added) [Dkt. No. 12].

-2-

6. On or about February 25, 2009, the Customer submitted a customer claim form to SIPC for Account Number 1-CM310 (Exhibit A) ("Customer Claim").[1] The Final Madoff Statement was submitted with the Customer Claim. *See* Exhibit A to the Customer Claim (Exhibit B).

7. On February 26, 2010, the Trustee sent the Customer the Determination Letter disallowing the Customer's claim in its entirety, rather than allowing the claim. *See* Determination Letter (Exhibit B).

8. The Customer hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

9. <u>First Objection</u>. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Madoff Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12}. Included with the Customer Claim was its final Madoff statement showing a final balance of $1,675,288. *See* Customer Claim (Exhibit A). The Final Madoff statement is the best evidence of the amount owed based on the Debtor's books and records. Accordingly, the claim should be allowed in full and a SIPC advance should be paid.

10. <u>Second Objection</u>. The Trustee has set forth no legal basis for disallowing the Customer Claim in full as filed. The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) that "because you have withdrawn more than was deposited into your account, you do not

---

[1] The Customer's personal identification data has been redacted from Exhibit A.

-3-

have a positive 'net equity' in your account and you are not entitled to an allowed claim in the [Madoff] liquidation proceeding." Determination Letter at 1-2 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a) does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, see Order [Dkt. No. 12];

(b) is inadequate to rebut the prima facie validity of the Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c) violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. See, e.g., Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); In re Enron Corp., No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11. Third Objection. 15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final [Madoff] Statement or prior [Madoff] statements. See Determination Letter Table 1. See also "Another View:

Unwinding Madoff Fraud Fairly," dealbook.blogs.nytimes.com/2009/05/06/another-view-unwinding-madoffs-fraud-fairly/ (May 6, 2009). This is incorrect for the following reasons:

  (a) The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> The dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor has liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and, in fact, adds words and concepts to the statute which do not exist.

  (b) SIPA's legislative history emphasizes Congress's intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The Madoff statements received by the Customer stated that they owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage

> account. . . .  By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments. . . . would satisfy customers' legitimate expectations. . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on the Customer's Final [Madoff] Statement and prior statements were those of actual companies listed on the stock exchange.

        (c)      The Customer deposited funds in Madoff with the expectation that the amount would grow, its account statements showed such growth, and the balance on its Final Madoff Statement reflects the benefit of this bargain.  The Trustee's formula is an improper and wholly inadequate measure of loss.  In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to have applied an expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the "money in/money out" formula as not reflecting the expectations of the parties.  The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case.  Plaintiffs gave $21 million to Gruttadauria [the dishonest broker], not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope – indeed a reasonable expectation -- that it would grow.  <u>Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages</u>.  Had Gruttadauria invested Plaintiff's money as requested, their funds would like grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an hones broker . . ., would have placed their money in the stock market during one of the strongest markets in recent memory.  In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been property invested, indicate that Plaintiffs' accounts would

-6-

>have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. At 713-14 (emphasis added). This applies precisely to the Customer's claim.

(d) The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Tmes* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities. . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted –
>
> Harbeck: And the securities were never purchased.
>
> Court: Okay.
>
> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, In *re New Times Securities Services, Inc.,* No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought

-7-

they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions --the information that these claimants received on their account Statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

In re New Times Secs. Servs., 371 F.3d 68, 74 (2d Cir. 2004); see also Brief of Appellant SIPC at 23-24, In re New Times Sec. Servs., Inc., No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable and legitimate claimant expectations on the filing date are controlled even where inconsistent with transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even where the purchase never actually incurred and the debtor instead converted the cash deposited by the claimant to fund that purchase").[2] The Customer is situated no differently from the "securities claimants" discussed by the Second Circuit. Accordingly, its claim should be recognized in full.

(e)   While Customer is aware that on March 1, 2010 the Bankruptcy Court ruled in favor of the Trustee on "net equity," that ruling is under appeal and the Court itself acknowledged that its holding is not free of doubt.

---

[2] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost ... misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

-8-

(f) Customer submits that in accordance with the Customer Claim and Exhibit C annexed hereto and incorporated herein, it is a "net loser" under the Trustee's definition of more than $500,000. The Customer disputes the Trustee's summaries of deposits and withdrawals in the Determination Letter.

12. In the event the Court should determine that claimed gains on deposited funds should not be allowed, then, in the alternative, the Customer is entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that, in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. V. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtor under these circumstances are entitled to interest. *See, e.g.*, N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et, seq.* Accordingly, Customer's claims should be recalculated by adding interest to all funds deposited by customers such as the Silversteins.

(b) Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer's claims should be recalculated by adding the amounts earned by the Debtors on its deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y.

-9-

May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13. <u>Fourth Objection</u>. The Madoff Trustee's action in reducing the amount shown on the Customer's Claim by an prior gains reflected on their final Madoff statement or prior Madoff statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination Letter should be struck. *See* Fed. R. Bankr. P. 7001(1); 7008.

14. <u>Fifth Objection</u>. The Trustee's determination assumes that Madoff never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, Madoff was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the Trustee to show that Madoff never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The Trustee is required to state and prove when the Ponzi scheme began. Customer initially invested with Madoff in 1990.

15. <u>Sixth Objection</u>. The Customer was required to pay significant income taxes on distributions which the Trustee has alleged are fictitious. The Trustee has justified his proposed method of calculating claims as fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually

deposited by customers, and his proposed method equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming, *arguendo*, the Trustee's method is correct, the Customer's claim should be adjusted by adding all amounts they actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. *See SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with costumes receiving distributions).

16. <u>Seventh Objection</u>. In derogation of his fiduciary duty, the Trustee is in effect imposing upon Customer a fraudulent conveyance judgment for sums that were withdrawn from Madoff Account No. 1-CM-310 beyond the statute of limitations period applicable to fraudulent conveyances. Thus, even if the Trustee were entitled to utilize the fraudulent conveyance provisions of the Bankruptcy Code against customers, he could not possibly do so beyond the applicable statute of limitations. Yet, he has done so here and deprived Customer of SIPC insurance and the claim to which it is entitled.

17. Moreover, the Trustee has employed the avoidance powers of the Bankruptcy Code solely for the SIPC's benefit. There is no authority in SIPA or the Bankruptcy Code for the Trustee to utilize the avoidance powers to enrich SIPC at a customer's expense. The legislative history of Section 547 of the Bankruptcy Code makes clear that the purpose of a trustee's avoidance powers is to assure an equal distribution of a debtor's assets among its creditors. *In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000) (preferential transfer rule "is intended to discourage creditors from

racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy"); *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 656 (B.S.D.N.Y. 1996) (The purpose of Section 547 is to discourage creditors from racing to the courthouse to dismember the debtor and, "[s]econd, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally") (quotations omitted). On the other hand, the fraudulent transfer rules are designed to recover wrongful payments and transfers.

18.    Eighth Objection. The Determination Letter refers to another account of Customer, but incorrectly accounts for and calculates transfers between the accounts. As the Customer deposited more money with Madoff than it received, even under the Trustee's net equity hypothesis the Customer is a "net loser" and is entitled to a SIPC advance.

19.    For the reasons stated herein, Customer's Claim should be allowed in its entirety.

20.    For the reasons stated herein, the Court should direct SIPC to issue immediate payment to the Customer in the amount of $500,000.00 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

21.    The Madoff Trustee's Determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a). The Madoff Trustee has offered no factual or legal basis for his Determination. The

Determination Letter, and the objections contained therein, should be struck or, alternatively, the Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and the Customer will file a response.

22. Customer reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Customer's right to object on any additional grounds.

23. The Customer reserve all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

24. The Customer reserves all objections as to the competence, relevance, materiality, privilege or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

WHEREFORE, the Trustee's Determination Letter should be set aside, the Customer's Claim should be allowed in full and a SIPC advance therefor should be ordered, and Customer should be granted such other and further relief as is just.

Dated: New York, New York
March 26, 2010

                          BECKER, GLYNN, MELAMED & MUFFLY LLP
                          Attorneys for *Weithorn/Casper Associates*
                          *for Selected Holdings LLC*

By:  /s/ Chester B. Salomon
      Chester B. Salomon, of counsel (CS-2319)
299 Park Avenue
New York, NY 10171
Tel: (212) 888 - 3033
Fax: (212) 888- 0255
csalomon@beckerglynn.com

*140150v1*

-13-