# EXHIBIT A

## Surge Reorganization Term Sheet

| Term | Description |
|---|---|
| Third Amended and Restated Asset Purchase Agreement | • Surge Trading Inc. ("Purchaser") and the Trustee for the Substantively Consolidated Liquidation Proceedings of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff ("Trustee") will enter into an amendment and restatement of the Second Amended and Restated Asset Purchase Agreement (the "Prior APA") by and between Purchaser and Trustee (such Third Amended and Restated Asset Purchase Agreement, the "APA") which shall include and be consistent with the terms set forth herein. Any terms capitalized but not defined herein shall have the meaning ascribed to such term in the Prior APA.<br><br>• Pursuant to the APA, Trustee will consent to the reorganization of the Surge Trading business as described below (the "Reorganization") solely for the creation of a new wholly-owned subsidiary of Purchaser, Surge Trading BD Inc. (or a similarly named entity) ("Sub") that will become the broker-dealer for the Surge Trading business in consideration for the agreements, covenants and obligations described more fully below. |
| Amendments to Payment Provisions | • The APA will include amended payment provisions (Section 4.1 of the Prior APA) which reflect the following: (i) extending the Earn-Out Period by one year (to the conclusion of the calendar quarter ending 12/31/14), (ii) providing that Net Trading Revenue on which Earn-Out Payments are calculated shall be determined on a consolidated basis with respect to Purchaser and Sub and shall exclude only transaction, regulatory and clearing fees incurred by Sub (and not Purchaser), (iii) expanding the earn-out protections set forth in Section 4.1(c)(ii) to include Sub, (iv) confirming that the Reorganization will not be a "Sale of the Purchaser", (v) providing that a "Sale of the Purchaser" shall include a sale of all or substantially all of the assets or equity interests of Purchaser and/or Sub, and (vi) allowing Purchaser to make earn-out "prepayments" of any amount and at any time during the Earn-Out Period (and once the |

| | |
|---|---|
| | Trustee receives a total of $24.5 million in Earn-Out Payments from Purchaser, exclusive of any Monitoring Fees paid, all rights and obligations of Purchaser (other than in respect of the Monitoring Fee as set forth below) or Trustee under the APA shall terminate).<br><br>• Purchaser will pay a fee of $50,000 per calendar quarter to Trustee no later than ten (10) Business Days after the end of every quarter during the Earn-Out Period (each, a "Monitoring Fee"). The obligation to pay the Monitoring Fee shall terminate on the Earn-Out Termination Date (as defined below) provided that if the Monitoring Fee has not yet been paid for the calendar quarter during which the Earn-Out Termination Date occurs, such Monitoring Fee for such calendar quarter shall immediately come due and be paid to Purchaser. |
| Default Event/ Collateral Security for Payment of Earn-Out Payments and Monitoring Fees | • As collateral security for payment of the Earn-Out Payments and the Monitoring Fees, Trustee shall have a security interest in all Net Trading Revenue which shall be deposited into a lockbox pursuant to the Deposit Account Control Agreement (as defined and set forth in more detail below). Purchaser shall, and shall cause Sub to, take all actions and execute all documents necessary to perfect Trustee's security interest therein.<br><br>• If a Default Event arising due to the failure of Purchaser or Sub to pay when due any Earn-Out Payment, Monitoring Fee or License Fee, as applicable, has occurred and the applicable Cure Period (as defined below) has lapsed without payment of the Cure Amount (as defined below) by Purchaser to Trustee as described herein, Trustee shall have the right to immediately obtain a security interest in all issued and outstanding shares of Sub. As promptly as practicable following the exercise of such right by Trustee, Purchaser shall, and shall cause Sub to, take all actions and execute all documents necessary to perfect Trustee's security interest therein, including, without limitation, a pledge agreement in form and substance satisfactory to Trustee (the "Perfection Assistance"). In the event that Purchaser fails to provide Perfection Assistance and Trustee has notified Purchaser in |

2

| | |
|---|---|
| | • writing of his belief that Purchaser has so failed, such failure shall be deemed a Default Event and a Block (as defined below) shall immediately take effect.<br><br>• Purchaser shall reimburse Trustee for all costs incurred by Trustee in connection with enforcement of its rights to the Earn-Out Payments and/or Monitoring Fees.<br><br>• A "Default Event" shall mean (i) failure of Purchaser to pay to Trustee any Earn-Out Payment and/or Monitoring Fee as and when due in accordance with the APA, (ii) failure of Sub to pay to Purchaser any License Fee (as defined below) as and when due in accordance with the License, or (iii) failure of Purchaser to provide Perfection Assistance, which failure in respect of this clause (iii) shall be deemed to have occurred upon receipt of written notice by Purchaser from Trustee of Trustee's belief that Purchaser has failed to provide such Perfection Assistance. |
| Purchaser-Sub License | • Purchaser and Sub will enter into a license agreement in form and substance satisfactory to Trustee (the "License") whereby Purchaser will license certain of its assets to Sub that are necessary for Sub to operate its business, in exchange for a license fee (the "License Fee") paid by Sub to Purchaser equal to 15% of Net Trading Revenue. This License Fee, when paid, will be used by Purchaser to pay the Earn-Out Payment.<br><br>• Trustee shall be an express third-party beneficiary to the License, and the License will not be terminated, amended or otherwise modified without Trustee's consent (not to be unreasonably withheld) until the date on which Purchaser has paid all Earn-Out Payments due to Trustee on or prior to such date and there exists under the APA no further obligation of Purchaser to make Earn-Out Payments (the "Earn-Out Termination Date"). |
| Deposit Account Control | • At all times prior to the Earn-Out Termination Date, with respect to any Business Day, 100% of Net Trading Revenue for such Business Day will be deposited on a daily basis (as set forth below) into a |

3

lockbox maintained at JPMorgan Chase (the "Deposit Account") pursuant to a deposit account control agreement in form and substance satisfactory to Trustee (the "Deposit Account Control Agreement").

- So long as no Default Event has occurred, Sub may withdraw from the Deposit Accounts all funds other than the Retained Amounts (as defined below), which shall only be used in accordance with the terms hereof. "Retained Amounts" on any given Business Day shall be equal to 20% of Net Trading Revenue for the portion of the then-current calendar quarter that has elapsed as of the Business Day prior to such Business Day. For the sake of clarity, for each applicable Business Day on which Net Trading Revenue is earned, the daily deposit in respect of Net Trading Revenue for such Business Day shall be made by Sub on the next succeeding Business Day. Such Retained Amounts may only be released and used by Sub to pay to Purchaser the License Fee and an amount sufficient to reimburse Purchaser for payment of the Monitoring Fee. On the date which is two (2) Business Days after delivery to the Trustee by Purchaser of the Earn-Out Payment and Monitoring Fee in respect of any applicable calendar quarter during the Earn-Out Period, Sub may withdraw all remaining amounts constituting Retained Amounts for such calendar quarter in excess of 5% (calculated prior to giving effect to payment of the License Fee and the amount sufficient to reimburse Purchaser for payment of the Monitoring Fee).

- No later than two (2) Business Days following the conclusion of each week or partial week prior to the Earn-Out Termination Date, Purchaser shall deliver, or cause to be delivered, to Trustee a certificate from either of the Chief Executive Officer or Chief Financial Officer of Sub certifying Sub's compliance with the terms of the Deposit Account Control Agreement during the previous week or partial week.

- At any time prior to the Earn-Out Termination Date, no later than five (5) Business Days following Trustee's request for same, Purchaser shall deliver,

4

|  | or cause to be delivered, to Trustee a report setting forth in reasonable detail the Net Trading Revenue and the Retained Amounts calculations for every Business Day having occurred since, and not included in, the prior Net Trading Revenue Report, if any, was delivered to Trustee (the "<u>Net Trading Revenue Report</u>"). Purchaser shall provide, or cause to be provided, any additional supporting information not set forth in the Net Trading Revenue Report that Trustee reasonably requests in order to verify the accuracy of the determination of any Net Trading Revenue or Retained Amount calculation set forth in such Net Trading Revenue Report.<br><br>• If a Default Event occurs, then Sub will be blocked (starting on the next Business Day follow the date on which the Default Event occurred) (a "<u>Block</u>") from accessing any funds in the Deposit Account other than a withdrawal to pay any unpaid portion of the Cure Amount (as defined below). If a Block is in effect (i) as a result of (x) Purchaser's failure to pay, when due, the Earn-Out Payment and Monitoring Fee for the applicable calendar quarter or (y) Sub's failure to pay to Purchaser, when due, the License Fee (such Payment or Fee referenced in (x) or (y), the "<u>Cure Amount</u>") and Purchaser pays such Cure Amount no later than thirty (30) Business Days following the date on which the Default Event occurred (with respect to such Default Events referenced in this clause (i), the "<u>Cure Period</u>"), or (ii) as a result of Purchaser's failure to provide Perfection Assistance and Purchaser provides such Perfection Assistance no later than ten (10) Business Days following the date on which the Default Event occurred (with respect to such Default Event referenced in this clause (ii), the "<u>Cure Period</u>"), then such Block shall be automatically removed. If a Block is in effect and the Cure Amount is not paid or the Perfection Assistance is not provided, as applicable, by the end of the applicable Cure Period, Trustee shall have the right (beginning on the first Business Day after the end of the applicable Cure Period) to withdraw any and all funds in the Deposit Account, provided that any withdrawals will be deemed to be Earn-out Payments from Purchaser to Trustee. |
|---|---|

5

| | |
|---|---|
| | • Purchaser shall pay any fees, expenses and other amounts due to JP Morgan Chase under and accordance with the terms of the Deposit Account Control Agreement. |
| Bankruptcy Court Approval/ Effectiveness | • Trustee will submit this term sheet or APA to the Bankruptcy Court for approval in accordance with Bankruptcy Rules as soon as reasonably practicable following finalization of this term sheet or execution of the APA on such date as may be provided by the Bankruptcy Court.<br><br>• The APA shall not become effective until the first date (the "Effective Date") on which the following has occurred: (i) the Bankruptcy Court has approved Trustee's entry into the APA, (ii) the other required Reorganization Documents (including, without limitation, the License Agreement and Deposit Account Agreement) have been delivered to Trustee in form and substance satisfactory to Trustee and Purchaser, and (iii) Trustee shall have received evidence, in form and substance reasonably satisfactory to Trustee, that equity contributions in the amount of at least $10,000,000 in the aggregate have been or will be made to Purchaser or Sub prior to or substantially simultaneously with consummation of the Reorganization contemplated by this Term Sheet and the APA (such funds, the "Effective Date Funds"). |
| Representations and Warranties of Purchaser | • The APA shall include customary representations and warranties of Purchaser on behalf of itself and/or Sub. Representations will include, without limitation, statements that, as of the Effective Date, (i) both Purchaser and Sub have authority to execute documents being executed in connection with the APA, (ii) the Reorganization is being effected solely for regulatory purposes, (iii) within seven (7) days of the Effective Date, Sub will become a registered broker-dealer, (iv) the Reorganization is being effected in accordance with applicable law, and (v) the Designated Funds are being, and will be, made available solely for use as working capital of Purchaser and Sub in relation to the Business or in connection with Sub's or Purchaser's obligations in respect of the Earn Out Payments, Monitoring Fees |

6

| | |
|---|---|
| | or License Fees. |
| Covenants of Purchaser | • The APA will include covenants of Purchaser setting forth that (i) all Net Trading Revenue constituting Earn-Out Payments will (in the form of the License Fee) be promptly distributed to Purchaser without offset of any kind and paid promptly to Trustee, (ii) within seven (7) days following the Reorganization, all Acquired Assets will be assigned to Purchaser from Sub, (iii) the Acquired Assets shall remain at all times prior to the Earn-Out Termination Date subject to the requirements of the APA and Purchaser will ensure that Sub does not take any action which would result in a breach of Purchaser's rights under the APA, (iv) Purchaser shall, or shall cause Sub, to file the application with FINRA seeking approval of the change of control of the Business as promptly as practicable following the Effective Date, and (v) within ten (10) Business Days following receipt by Purchaser or Sub, as applicable, of approval from FINRA of the change of control of the Business, Purchaser shall cause additional funds of at least $5 million to be contributed to Purchaser or Sub (such funds, collectively with the Effective Date Funds, the "<u>Designated Funds</u>"). |
| Further Assurances | • If at any time prior to the Earn-Out Termination Date, a Default Event occurs and is not cured within the applicable Cure Period, Trustee may, at his sole discretion, require that Purchaser, as promptly as practicable, take those steps reasonably requested by Trustee to ensure that Trustee's interests in and/or rights regarding the Earn-Out Payments under the terms of the APA are protected; <u>provided</u>, that such steps will not be reasonably requested if they require Purchaser or Sub to violate Applicable Laws (as defined below). |
| | • If, after the Effective Date, changes in applicable law or regulations (including, without limitation, FINRA and SEC regulations, and changes in applicable accounting treatment) ("Applicable Laws") would cause the Purchaser or Sub violate the Applicable Laws or cause an interruption of Sub's business if they complied with the terms and provisions of the APA or the other Reorganization |

7

| | |
|---|---|
| | Documents, then the parties agree to negotiate in good faith to amend the APA or the other Reorganization Documents on terms to be mutually agreed by the Parties. |
| Legal Expenses | • Purchaser shall reimburse Trustee for all expenses, including attorney's fees, incurred by Trustee in connection with the negotiation and execution of the APA and the other Reorganization Documents and the consummation of the transactions contemplated hereby and thereby. |

8