SONNENSCHEIN NATH & ROSENTHAL LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
cneville@sonnenschein.com

*Attorneys for Robert C. Lapin, IRA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

**LIMITED OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Robert C. Lapin, IRA hereby objects to the Notice of Trustee's Determination of Claim

dated March 9, 2010 ("Determination Letter"), attached hereto as **Exhibit A**, as described herein

except to the extent that the Determination Letter allowed a claim for $312,769.34.

**BACKGROUND**

1. On or about January 11, 1999, Robert C. Lapin opened an account (Account No. 1-CM559) with Bernard L. Madoff Investment Securities LLC ("Madoff") with a distribution

from his pension account. Mr. Lapin established the account as self directed Individual

Retirement Account (the "Lapin IRA Account").[1]

2. On December 11, 2008, an action was commenced against Madoff by the Securities

& Exchange Commission in the United States District Court for the Southern District of New

---

[1] All personal information relating to the Lapin IRA Account has been redacted for security reasons.

York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the

Securities Investment Protection Act ("SIPA").  *See* Order, Securities and Exchange

Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA

and transferring proceeding to the United States Bankruptcy Court for the Southern District of

New York) [Dkt. No. 4].  Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*,

with overseeing the liquidation of Madoff and processing customer claims for money pursuant

to SIPA.  *Id.*; 15 U.S.C. § 78fff-1(a) (2009).

3.    On December 23, 2008, the Court issued an Order directing the Trustee to

disseminate notice and claim forms to Madoff customers and setting forth claim-filing

deadlines.  *See* Order [Dkt. No. 12].

4.    The December 23, 2008 Order further provided that, to the extent the Trustee

disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such

claimant by mail of his determination that the claim is disallowed, in whole or in part, **and the

reason therefor** . . . "  *See* Order at 6 (emphasis added) [Dkt. No. 12].

5.    On or about March 13, 2009, Mr. Lapin filed a claim for the Lapin IRA Account in

the amount of $2,583,523 (the "Lapin IRA Customer Claim"), based on the November 30, 2008

statement from Madoff (the "Final Madoff Statement").  A copy of the Lapin IRA Customer

Claim with the Final Madoff Statement is attached hereto as **Exhibit B**.

6.    On March 1, 2010, the Court issued a decision affirming the Trustee's net

investment method for determining customer claims.  That decision has been appealed, and a

final resolution on the issue is pending.

7.    On March 9, 2010, the Trustee sent Mr. Lapin the Determination Letter rejecting his

claim in part, stating that (a) no securities were purchased for the Lapin IRA Account and (b) the

account had a positive net equity of only $312,769 because, among other reasons, his original deposits included fictitious gains.

## GROUNDS FOR OBJECTION

8.    **First Objection.**  The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  The Lapin IRA Customer Claim was evidenced by the Final Madoff Statement showing a final balance of $2,583,523 and listing the securities purportedly purchased for the account, which reflects the "Debtor's books and records" and by which the Trustee is bound absent proof that the owner of the Lapin IRA Account did not have a "legitimate expectation" that the balance on the Final Madoff Statement represented his property.

9.    **Second Objection.**  The Trustee failed to set forth a legal basis for the position he has taken for the calculation of the claim.  *See* Determination Letter.  The Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)    is insufficient to rebut the prima facie validity of the Lapin IRA Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based, *see, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

(d)    includes an exhibit which purportedly calculates the money deposited less subsequent withdrawals without any supporting documentation and is completely

unsubstantiated; and to the extent the Trustee's "reconciliation" differs from the Lapin IRA

Customer Claim, the Trustee should produce evidence supporting his "reconciliation."

10.    **Third Objection.**  The Trustee has failed to fulfill the requirement that he honor the

legitimate expectations of a customer.

11.    The legislative history of SIPA makes clear that Congress' intent in enacting the

legislation was to protect the legitimate expectations of customers.  Congressman Robert

Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance

available to customers and expedite the process, commented on the purpose of the legislation as

follows:

> Under present law, because securities belonging to customers
> may have been lost, improperly hypothecated, misappropriated,
> *never purchased* or even stolen, it is not always possible to
> provide to customers that which they expect to receive, that is,
> securities which they maintained in their brokerage account. . . .
> By seeking to make customer accounts whole and returning them
> to customers in the form they existed on the filing date, the
> amendments  .  .  .  would satisfy the customers' legitimate
> expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

> A customer generally expects to receive *what he believes* is in his
> account at the time the stockbroker ceases business. But because
> securities may have been lost, improperly hypothecated,
> misappropriated, *never purchased*, or even stolen, it is not always
> possible to provide to customers that which they expect to
> receive, that is, securities which they maintained in their
> brokerage account . . . By seeking to make customer accounts
> whole and returning them to customers in the form they existed
> on the filing date, the amendments . . . would satisfy customers'
> legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

12.    The Securities Investor Protection Corporation ("SIPC") acknowledged that it was

bound by the statute and the rules to satisfy the reasonable expectations of customers even when

the securities had never been purchased, in the brief it submitted to the Court of Appeals for the

Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are
> controlling even where inconsistent with transaction reality. Thus,
> for example, where a claimant orders a securities purchase and
> receives a written confirmation statement reflecting that purchase,
> the claimant generally has a reasonable expectation that he or he
> holds the securities identified in the confirmation and therefore
> generally is entitled to recover those securities (within the limits of
> SIPA) even where the purchase never actually occurred and the
> debtor instead converted the cash deposited by the claimant to
> fund that purchase . . . [T]his emphasis on the reasonable and
> legitimate customer expectations frequently yields much greater
> customer protection than would be the case if the transaction
> reality, not the claimants expectations, were controlling, as this
> court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

13.   Based on regular statements and other communications received from Madoff, Mr.

Lapin at all times reasonably believed and expected that Madoff executed such transactions and

that the Lapin IRA Account actually held such securities.

14.   The Trustee's position in the Madoff case is completely inconsistent with the

purpose and goals of SIPA and the position that SIPC, the corporation charged with

administering the Act, has taken unequivocally with respect to the treatment of customers in

accordance with their reasonable expectations reflected in the communications from the broker-

dealer.

15.   **Fourth Objection.**  The Trustee failed to set forth a legal basis for the position he

has taken that he can reduce the amount of the claim by appreciation in the Lapin IRA Account

or calculate the claim by counting only investment principal less withdrawals.  The Court's

decision affirming the Trustee's net investment method has been appealed and a final resolution

on the issue is pending, and thus, no legal basis for the method exists.  The Trustee's calculation

violates SIPA.

16.   15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the

amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee calculates "net

equity" by reducing the principal contributed to the account less any withdrawals or

appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior

statement delivered by Madoff to the customer.   This is incorrect for the following reasons:

(a)      Notwithstanding the Court's determination, the Trustee's method of

calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a

customer's net equity claim as the value of the customer's "securities positions" in the

customer's account, less any amount the customer owes the debtor, as of the date of the filing of

the SIPA liquidation:

> The term 'net equity' means the dollar amount of the account or
> accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the
> debtor to such customer if the debtor had liquidated, by sale or
> purchase on the filing date, all securities positions of such
> customer . . . ; minus
>
> (B) any indebtedness of such customer to the debtor on the filing
> date . . .[2]

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the

statute or interpreting case law and in fact, adds words and concepts to the statute which do not

exist.

---

[2]   The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most
often in the context of a customer having borrowed from the debtor on margin.  *See, e.g.*, H.R. Rep. No. 95-746 at
21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*,
522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in
available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of
holders of margin accounts, amounts owed" to the broker); *In re First St. Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D.
Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock
purchase was funded in part by borrowing on margin).

(b)      Notwithstanding the Court's determination, the Trustee's method is inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under SIPA by SIPC provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer.  17 C.F.R. § 300.500.  Pursuant to the Rule, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased or sold for the account.

(c)      Notwithstanding the Court's determination, the Trustee's method is inconsistent with the legislative history of the statute.  SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The Madoff statements and confirmations sent to Mr. Lapin indicated that the Lapin IRA Account owned a list of blue chip securities.  It makes no difference whether the securities were ever actually purchased.

(d)      The Trustee's formula is an improper and wholly inadequate measure of loss.  Mr. Lapin deposited funds with Madoff in the expectation the amount would grow, the statements for the Lapin IRA Account showed such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain.  In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties.  *Id*.  The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria, not to hide under a rock or lock in a safe, but for
> the express purpose of investment, with a hope – indeed a
> reasonable expectation – that it would grow. Thus, the out-of-
> pocket theory, which seeks to restore to Plaintiffs only the $21
> million they originally invested less their subsequent withdrawals,

7

is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id*. This applies precisely to Mr. Lapin's claim.

(e)     Notwithstanding the Court's determination, the Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the New Times Securities Services Inc. ("New Times") SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if broker-dealer customers have been led to believe that "real existing" securities had been purchased for their accounts, then those customers are entitled to the full value of their securities positions as of the filing date, even if that value represents a substantial increase from the purported purchase price of the securities and even if the securities had never been purchased. Harbeck testified as follows:

Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities. . . . Even if they're not there.

Court: Even if they're not there.

Harbeck: Correct.

Court: In other words, if the money was diverted, converted –

Harbeck: And the securities were never purchased.

8

Court. Okay.

Harbeck: And if those positions triple, we will gladly give the
people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y.

July 28, 2000).

Moreover,  SIPC faced very similar circumstances in the New Times liquidation and

took a very different position than it is taking in the Madoff case in support of the Trustee.

There, the New Times Trustee's position on "net equity" was in full accord with SIPA, and thus

directly contrary to the Trustee's position in this case.  Specifically, with respect to any claims

that were based on confirmations and account statements reflecting securities positions in "real"

securities that could have been purchased (i.e., securities that actually existed on the public

market and whose valuations were objectively and publicly verifiable by the customers), the

New Times Trustee allowed all such net equity claims to the full extent of the filing date

valuations of those securities, even though none of the securities identified in those records had

ever, in fact, been purchased by the broker-dealer.[3]

(f)    The Trustee's determination and the Court's determination are

inconsistent with the case law.  The Second Circuit's discussion of SIPC's claims processing in

---

[3]    As with Madoff Securities and Bernard Madoff, New Times and its principal, William Goren, defrauded scores
of investors by providing them with confirmations and account statements reflecting purported securities
investments made on their behalf when, in fact, no such investments had been made and their money had, instead,
been misappropriated for other purposes.  Two of the investment opportunities Goren purported to offer were: (1)
money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were
entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real Securities").  *See In
re New Times Sec. Servs., Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*").  Goren's was "a classic Ponzi
scheme," *id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were
purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased.  Consistent
with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to
the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities
positions as of the date of the liquidation filing.  When challenged by "Fictitious New Age Funds" customers who
had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent
concurrence of the SEC) vigorously defended their approach in court.

*New Times,* the only case in this jurisdiction dealing with the issue in the Madoff case, further

indicates that, with respect to customers who thought they were invested in listed securities,

SIPC properly paid customer claims based on the customers' final account statements, even

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably. Although they were not actually invested in
> those real funds – because Goren never executed the transactions –
> the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed. As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up
> to $500,000 in SIPC advances. The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore,
> the Trustee notes that, if they were checking on their mutual
> funds, the "securities claimants," . . . could have confirmed the
> existence of those funds and tracked the funds' performance
> against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC

at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> [R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality. Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or he holds the securities identified in the confirmation and
> therefore generally is entitled to recover those securities (within
> the limits imposed by SIPA), even where the purchase never
> actually occurred and the debtor instead converted the cash
> deposited by the claimant to fund that purchase. . . . [T]his
> emphasis on reasonable and legitimate claimant expectations
> frequently yields much greater 'customer' protection than would
> be the case if transactional reality, not claimant expectations, were
> controlling, as this Court's earlier opinion in this liquidation well
> illustrates.

    (g)    The Trustee's position in the Madoff case is contradicted, not only by

SIPC's prior treatment of customers in the New Times case, but also by a statement that SIPC's

general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang

acknowledged that a Madoff customer is entitled to the securities in his account:

> Based on a conversation with the SIPC general counsel, Josephine
> Wang, if clients were presented statements and had reason to
> believe that the securities were in fact owned, the SIPC will be
> required to buy these securities in the open market to make the
> customer whole up to $500K each.  So if Madoff client number
> 1234 was given a statement showing they owned 1000 GOOG
> shares, even if a transaction never took place, the SIPC has to buy
> and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.

(h)    The Trustee's methodology also conflicts with other federal laws.  For

example, Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009, expressly

recognizes the income earned by customers, on which they paid taxes annually.  Yet the

Trustee's position is that the income earned by customers on their investments is not their

money.  In addition, some customers were required to take distribution from their retirement

accounts.  Yet the Trustee is deducting from their customer claim the mandatory withdrawals

that the customers were required by law to take.  Moreover, pension distributions are protected

under federal and state law, yet the Trustee reduces or disallows such distributions.

17.   In sum, the Trustee  has created his own definition of "net equity."  The  procedure

is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying

SIPC insurance to the thousands of Madoff investors who, like Mr. Lapin, have depended upon

their Madoff investments for their current and future living expenses.

18.   **Fifth Objection.**  The Trustee's action in reducing the amount shown on the Lapin

IRA Customer Claim by any prior gains reflected on the Final Madoff Statement or on any prior

statements is an attempt to avoid such gains without alleging any grounds for avoidance or

proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any

such disallowance is improper and unjustified, and the Determination Letter should be stricken on that ground alone. *See* Fed. R. Bankr. P. 7001(1) & 7008.

19. **Sixth Objection.** SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). As evidenced by the Lapin IRA Customer Claim, Mr. Lapin has a valid claim in the amount of $2,583,523. Therefore, Mr. Lapin is entitled to an advance of $500,000 and a claim against customer property for the remainder.

20. **Seventh Objection.** The Lapin IRA Account was established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* whose provisions preempt state fraudulent conveyance law, upon which the Trustee presumably relies pursuant to 11 U.S.C. § 544 to reduce the account balance. *See* 29 U.S.C. § 1144(a) (the provisions of ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section [1003(a)] . . ."). 

As evidence of Congressional intent to protect ERISA-qualified plans, the Bankruptcy Code was amended in 2005 to protect such plans from the claims of creditors. 11 U.S.C. § 541(b)(7)(a)(i)(I) (exempting from property of the estate "any amount withheld by an employer from the wages of employees for payment as contributions to an employee benefit plan that is subject to Title I of the Employee Retirement Income Security Act of 1974 . . ."). *See also, Patterson v. Shumate*, 504 U.S. 753 (1992) (holding that debtor's interest in an ERISA-qualified

pension plan may be excluded from the property of the bankruptcy estate pursuant to 11 U.S.C.

§ 541(c)(2)).

Moreover, any withdrawals from the account are required by other non bankruptcy law.

Accordingly, to reduce the Lapin IRA Account balance by mandatory withdrawals is both

improper and inequitable.  The Trustee's reduction or disallowance of the amount deposited

from Mr. Lapin's pension account is also prohibited by applicable federal law.

21.  **Eighth Objection.**  The Lapin IRA Account was established as an individual

retirement, which under the state laws where the account was established and administered, are

exempt from judgment and the Trustee's efforts to reduce the amounts due in the account under

any theory.  These state laws protect the funds in the Lapin IRA Account from recovery by a

trustee, and the Trustee's reduction of the funds is in violation of state law.  The Trustee's

reduction or disallowance of the amount deposited from Mr. Lapin's prior pension account is

also prohibited by applicable state law.

22.  **Ninth Objection**.  The disallowance of the transfer from Mr. Lapin's pension

account to Mr. Lapin's IRA is also barred by the statute of limitation since it occurred more than

six years prior to the filing of the petition.

23.  **Tenth Objection**.  The disallowance of the transfer from Mr. Lapin's pension

account to Mr. Lapin's IRA Account is improper because Mr. Lapin took the transfer from his

pension account for value and without any knowledge of Madoff's fraud.

24.  **Alternate Considerations.**  In the event that the Court should determine that

customer claims should not be allowed in the amount of the Final Madoff Statement, then in the

alternative, the customer is entitled to recover interest or appreciation on the investments based

upon the following:

13

(a)      Under New York law, which is applicable here, funds deposited with Madoff under these circumstances are entitled to interest. *See, e.g.,* N.Y. C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq.* Accordingly, the Lapin IRA Customer Claim should be recalculated by adding interest to all funds deposited.

(b)      Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff on the customer's deposits. *See, e.g., Steinberg v. Herman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

(c)      Mr. Lapin is entitled to interest on his investment under federal securities laws. In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the different measures of recovery of "actual damages" for fraud, primarily including rescission and restitution. The *Randall* Court concluded that Congress intended to deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted. *See id.* at 664 (citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). The *Randall* Court continued by holding that:

> This deterrent purpose is ill-served by a too rigid insistence on limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 940 (2d Cir. 1984)).

14

## RESERVATION OF RIGHTS

25.   The Lapin IRA Account reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of its right to object on any additional grounds.

26.   The Lapin IRA Account reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

27.   The Lapin IRA Account reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

## RELIEF REQUESTED

For the reasons stated herein, the Lapin IRA Customer Claim should be allowed in its entirety in the amount of $2,583,523, which is the amount reflected on the Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, the Court should direct SIPC to immediately replace $500,000 of the securities in the Lapin IRA Account based upon the values reflected on the Final Madoff Statement and/or immediately forward the Lapin IRA Account a $500,000 advance from the SIPC Fund.

For the reasons stated herein, the Determination Letter should be stricken.

The Lapin IRA Account requests such other relief as may be just and equitable.

Dated: April 6, 2010                                 SONNENSCHEIN NATH & ROSENTHAL LLP


By:    /s/ *Carole Neville*
          Carole Neville
          1221 Avenue of the Americas
          New York, New York 10020
          Telephone:  (212) 768-6700
          Facsimile:  (212) 768-6800

          *Attorneys for Robert C. Lapin, IRA*

## <u>CERTIFICATE OF SERVICE</u>

I, Carole Neville, hereby certify that on April 6, 2010 I caused a true and correct copy of

the foregoing **Objection to Trustee's Determination of Claim** on behalf of Robert C. Lapin,

IRA to be filed electronically with the Court and served upon the parties in this action who

receive electronic service through CM/ECF, and served by hand upon:

> David J. Heehan, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY 10111

Dated:  April 6, 2010

> _/s/ Carole Neville_
> Carole Neville

**<u>Exhibit A</u>**

**(Determination Letter)**

BERNARD L. MADOFF INVESTMENT SECURITIES LLC COPY

In Liquidation

DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

March 9, 2010

Robert C. Lapin (IRA)

**REDACTED**

Dear Robert C. Lapin (IRA):

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM559 designated as Claim Number 007051:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $312,769.34, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

---

1 Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.



Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

Your **ALLOWED CLAIM** of $312,769.34 will be satisfied in the following manner:

The enclosed **ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. You also should provide the name of the custodian for your IRA. Upon receipt of the executed and notarized **ASSIGNMENT AND RELEASE**, and designation of your IRA custodian the Trustee will fully satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $312,769.34, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after March 9, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard
Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:   TD Ameritrade FBO Robert C. Lapin (IRA)
4 Sutton Place
Boynton Beach FL 33436

Carole Neville
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas, 25th Floor
New York NY 10020



| - Table 1 - | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 1/11/1999 | TRANS FROM 1CM10730 | $611,258.66 | $293,114.68 |
| 11/7/2000 | CHECK WIRE | $159,558.56 | $159,558.56 |
| 5/11/2001 | CHECK | $66.10 | $66.10 |
| 6/11/2001 | CHECK | $132,896.35 | $132,896.35 |
| 8/13/2001 | CHECK | $37.08 | $37.08 |
| 8/5/2003 | CHECK | $4,441.18 | $4,441.18 |
| 2/1/2005 | CHECK WIRE | $112,377.58 | $112,377.58 |
| 5/5/2005 | CHECK WIRE | $4,273.73 | $4,273.73 |
| 5/5/2005 | CHECK WIRE | $4,273.47 | $4,273.47 |
| 5/5/2005 | CXL C&S | ($4,273.73) | ($4,273.73) |
| **Total Deposits:** | | $1,024,908.98 | $706,765.00 |
| | | | |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 12/8/2005 | CHECK | ($84,119.75) | ($84,119.75) |
| 11/14/2006 | CHECK | ($91,395.90) | ($91,395.90) |
| 7/20/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/18/2007 | CHECK | ($53,333.12) | ($53,333.12) |
| 12/3/2008 | CHECK | ($115,146.89) | ($115,146.89) |
| **Total Withdrawals:** | | ($393,995.66) | ($393,995.66) |
| | | | |
| **Total deposits less withdrawals:** | | $630,913.32 | $312,769.34 |

**Exhibit B**

**(Lapin IRA Customer Claim)**

COPY

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**

RECEIVED

MAR 1 3 2009

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: *(212) 768-6889*

HOME:_____

Taxpayer I.D. Number (Social Security No.)
_____

Account Number:   1CM559

**ROBERT C. LAPIN IRA**
**ROBERT LAPIN**

**REDACTED**

(If incorrect, please change)

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.   Claim for money balances as of **December 11, 2008** :
     a.   The Broker owes me a Credit (Cr.) Balance of          $_____
     b.   I owe the Broker a Debit (Dr.) Balance of             $_____

502180406

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                          $_____

d.    If balance is zero, insert "None."                      ____NONE_____

2.      Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a.   The Broker owes me securities | ✓ | |
| b.   I owe the Broker securities | | ✓ |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number **of** Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| **SEE STATEMENT DATED NOVEMBER 30, 2008** | | ✓ | |
| _____ | Net Balance: $2,583,523 | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | ✓ |

10202191 V-1

9.    Have you or any member of your family
ever filed a claim under the Securities
Investor Protection Act of 1970? if
so, give name of that broker.                                                          ✓

Please list the full name and address of anyone assisting you in the
preparation of this claim form: Carole Neville, Sonnenschein Nath &
Rosenthal LLP, 1221 Avenue of the Americas, 25th Floor, New York, NY 10020 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.** *

Date _____    Signature _____

Date ___3/10/04_____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

---

* This customer form includes and incorporates in full the attached Addendum.
Customer reserves the right to amend the form for any purpose, including, without
limitation, to include interest, taxes and other costs related to this account. Social
security number withheld based upon concern about identity theft. Information
available on request.

10202191\V-1

## CLAIM ADDENDUM

**Customer:**    **Robert C. Lapin IRA**
                 **Robert Lapin**

**Address:**                                    REDACTED

**Account #:**    1-CM559-3
                  1-CM559-4

Document index:[1]

1. Statement dated November 30, 2008

2. Investment Documents

    a.  IRA Statement dated March 31, 1999                    $611,258.66
        (initial investment)

    b.  IRA Statement dated December 31, 2000                 $159,558.56

    c.  Check confirmation dated June 11, 2001                $132,896.35

    d.  Check confirmation dated August 13, 2001                   $37.08

    e.  Check confirmation dated August 5, 2003                 $4,441.18

    f.  Wire Instructions requesting transfer to Madoff       $112,377.58
        dated January 20, 2005
        Check confirmation dated February 1, 2005
        Madoff Account Statement dated February 28, 2005

    g.  Wire confirmation dated May 5, 2005                     $4,273.47
        Madoff Account Statement dated May 31, 2005

3. Transfer Documents

    a.  IRA Statement dated December 31, 2005                ($84,119.75)
        Madoff Account Statement dated December 31, 2005

    b.  Madoff Account Statement dated November 30, 2006      ($91,395.90)
        IRA Account Statement dated December 31, 2006

    c.  Madoff Account Statement dated July 31, 2007          ($50,000.00)

---

[1] Note that certain documents containing personal information of the claimant or related parties have been redacted for the protection and privacy of the claimant and/or such related parties.

    d.   Madoff Account Statement dated December 31, 2007             ($53,333.12)

    e.   IRA Statement dated December 31, 2008                     ($115,146.89)

Total Investments:  $1,024,842.88

Total Transfers:    ($   393,995.66)

# STATEMENT DATED NOVEMBER 30, 2008

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222
Affiliated with

**DUPLICATE** = FOR ACCOUNT ...
ROBERT C LAPIN



| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 1-1,467.65 | |
| 11/12 | 1,430 | | 2523 | WAL-MART STORES INC | 55.430 | 79,873.90 | |
| 11/12 | 935 | | 3025 | INTERNATIONAL BUSINESS MACHS | 87.370 | 81,651.45 | |
| 11/12 | 3,465 | | 6840 | EXXON MOBIL CORP | 72.430 | 252,462.20 | |
| 11/12 | 3,775 | | 7251 | INTEL CORP | 14.510 | 54,815.45 | |
| 11/12 | 1,815 | | 11577 | JOHNSON & JOHNSON | 59.630 | 108,207.90 | |
| 11/12 | 2,475 | | 16003 | JP MORGAN CHASE & CO | 38.630 | 95,467.75 | |
| 11/12 | 1,320 | | 20323 | COCA COLA CO | 44.560 | 59,003.20 | |
| 11/12 | 770 | | 24654 | MCDONALDS CORP | 55.370 | 42,664.90 | |
| 11/12 | 1,430 | | 28980 | MERCK & CO | 28.550 | 40,846.50 | |
| 11/12 | 5,225 | | 33386 | MICROSOFT CORP | 21.910 | 114,454.75 | |
| 11/12 | 2,640 | | 37675 | DISCLOSURECORPORATION | 17.300 | 45,777.20 | |
| 11/12 | 1,045 | | 50610 | PEPSICO INC | 56.430 | 58,993.65 | |
| 11/12 | 605 | | 51112 | APPLE INC | 100.790 | 60,987.60 | |
| 11/12 | 4,455 | | 54436 | PFIZER INC | 16.940 | 74,545.20 | |
| 11/12 | 1,045 | | 55438 | ABBOTT LABORATORIES | 54.610 | 57,103.45 | |
| 11/12 | 1,930 | | 53252 | PROCTER GAMBLE CO | 54.030 | 104,277.40 | |
| 11/12 | 715 | | 59754 | AMGEN INC | 59.160 | 42,327.40 | |
| 11/12 | 1,375 | | 43588 | PHILIP MORRIS INTERNATIONAL | 63.500 | 50,005.00 | |
| 11/13 | 3,320 | | 56020 | BANK OF AMERICA | 21.560 | 71,677.20 | |
| 11/12 | 1,120 | | 57714 | CITIGROUP INC | 33.270 | 37,337.00 | |
| 11/12 | 3,575 | | 58416 | CITI GROUP INC | 12.510 | 44,856.25 | |
| 11/12 | 825 | | 72240 | SCHLUMBERGER LTD | 49.430 | 40,779.00 | |
| 11/13 | 1,930 | | 72742 | COMCAST CORP | 16.450 | 31,754.90 | |
| | | | | CL A | | | |

CONTINUED ON PAGE 2

11/12, 11/12, 11/12, 11/12 ...

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
☐ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

REDACTED

**DUPLICATE** FOR ACCOUNT  NTC & CO.
ROBERT C LAPIN

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 3,295 | | 76565 | AT&T INC | 27 | 125,591.00 | |
| 11/12 | 990 | | 77068 | CONOCOPHILLIPS | 52,510 | 52,023.20 | |
| 11/12 | 660 | | 90892 | UNITED PARCEL SVC INC | 52,040 | 34,372.40 | |
| | | | | CLASS B | | | |
| 11/12 | 4,015 | | 91334 | CISCO SYSTEMS INC | 16,730 | 67,332.05 | |
| 11/12 | 1,255 | | 35219 | U S BANCORP | 29,530 | 34,153.15 | |
| 11/12 | 1,375 | | 95720 | CHEVRON CORP | 73,430 | 101,021.25 | |
| 11/12 | 660 | | 39564 | UNITED TECHNOLOGIES CORP | 53,160 | 35,111.60 | |
| 11/12 | 6,985 | | 90044 | GENERAL ELECTRIC CO | 19,630 | 137,104.55 | |
| 11/12 | 1,870 | | 73870 | VERIZON COMMUNICATIONS | 30,410 | 55,940.70 | |
| 11/12 | 165 | | 94372 | GOOGLE | 337,400 | 55,677.00 | |
| 11/12 | 2,310 | | 98196 | WELLS FARGO & CO NEW | 29,800 | 68,830.00 | |
| 11/12 | 1,550 | | 39691 | HEWLETT PACKARD CO | 34,900 | 54,651.00 | |
| 11/12 | | 2,475,030 | 20909 | U S TREASURY BILL | 99,035 | | 2,473,416.00 |
| | | | | DUE 2/12/2009 | | | |
| | | | | 2/12/2009 | | | |
| 11/12 | | | | FIDELITY SPARTAN | | | 72,075 |
| | | | | U S TREASURY MONEY MARKET | DIV | | |
| 11/12 | | 61,333 | 15907 | DIV 11/12/08 | | | 61,333.00 |
| | | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/12 | 35,856 | | 35275 | FIDELITY SPARTAN | 1 | 35,856.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/12 | | | | FIDELITY SPARTAN | DIV | | 4.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/12/08 | | | |
| | | | | CONTINUED ON PAGE    3 | | | |

PERIOD ENDING: 11/30/08
YOUR ACCOUNT NUMBER: 1-C4552-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: ******
PAGE: 2

REDACTED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493-2222

**DUPLICATE** FOR ACCOUNT NTC S CO.
ROBERT C LAPIN

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 33,954 | 50539 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 33,954.00 |
| 11/19 | 176,000 | | 55172 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 174,870.59 | |
| 11/19 | 22,750 | | 59577 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 22,751.00 | |
| | | | | NEW BALANCE | | 337,137.37 | |
| | 3,905 | | | SECURITY POSITIONS | MKT PRICE | | |
| | 1,945 | | | AT&T INC | 28.560 | | |
| | 715 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 605 | | | AMGEN INC | 55.540 | | |
| | 3,300 | | | APPLE INC | 92.670 | | |
| | 1,375 | | | BANK OF AMERICA | 16.250 | | |
| | 4,015 | | | CHEVRON CORP | 70.010 | | |
| | 3,575 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 1,320 | | | CITI GROUP INC | 8.290 | | |
| | | | | COCA COLA CO | 46.970 | | |
| | | | | COMCAST CORP | 17.360 | | |
| | | | | CL A | | | |
| | 990 | | | CONOCOPHILLIPS | 52.520 | | |
| | 3,465 | | | EXXON MOBIL CORP | 80.150 | | |
| | 6,205 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

YOUR ACCOUNT NUMBER 1-04550-3-0   PERIOD ENDING 11/19/09   YOUR TAX PAYER IDENTIFICATION NUMBER ******   PAGE 1



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 331-1313
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 2222

**DUPLICATE** FOR ACCOUNT NTC & CO.
ROBERT C LAPIN

YOUR ACCOUNT NUMBER 1-CM370-3-0
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER ******
PAGE 4

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 165 | | | GOOGLE | 392.950 | | |
| | 1,650 | | | HEWLETT PACKARD CO | 35.230 | | |
| | 3,795 | | | INTEL CORP | 13.900 | | |
| | 935 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 2,475 | | | J.P. MORGAN CHASE & CO | 37.660 | | |
| | 1,815 | | | JOHNSON & JOHNSON | 59.530 | | |
| | 770 | | | MCDONALDS CORP | 59.750 | | |
| | 1,430 | | | MERCK & CO | 26.720 | | |
| | 5,225 | | | MICROSOFT CORP | 20.230 | | |
| | 2,640 | | | ORACLE CORPORATION | 16.090 | | |
| | 1,045 | | | PEPSICO INC | 56.700 | | |
| | 4,455 | | | PFIZER INC | 16.440 | | |
| | 1,375 | | | PHILLIP MORRIS INTERNATIONAL | 42.150 | | |
| | 1,980 | | | PROCTER & GAMBLE CO | 54.350 | | |
| | 1,100 | | | QUALCOMM INC | 33.570 | | |
| | 925 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 22,750 | | | FIDELITY SPARTAN | 1 | | |
| | 1,155 | | | U S TREASURY MONEY MARKET | 26.930 | | |
| | 660 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | 175,000 | | | U S TREASURY BILL CLASS 2 DUE 03/26/2009 DUE 03/26/2009 | 99.971 | | |
| | 660 | | | UNITED TECHNOLOGIES CORP | 46.510 | | |

CONTINUED ON PAGE 5

REDACTED

## BERNARD L. MADOFF

INVESTMENT SECURITIES LLC

**New York** □ **London**

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**REDACTED**

\*\*DUPLICATE\*\* FOR ACCOUNT  YTC & CO.
ROBERT C LAPIN

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | 1,870 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,430 | | | WAL-MART STORES INC | 55.910 | | |
| | 2,310 | | | WELLS FARGO & CO NEW | 28.820 | | |
| | | | | MARKET VALUE OF SECURITIES SHORT | | | |
| | | | | LONG | | | |
| | | | | 2,629,723.39 | | | |

YOUR ACCOUNT NUMBER  1-04570-3-0

PERIOD ENDING  11/30/01

YOUR TAX PAYER IDENTIFICATION NUMBER  \*\*\*\*\*\*

PAGE  1

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

**REDACTED**

**DUPLICATE** FOR ACCOUNT NTC & CO.
ROBERT C LAPIN

YOUR ACCOUNT NUMBER
1-ZL550-3-0

PERIOD ENDING
11/30/01

PAGE
6

YOUR TAX PAYER IDENTIFICATION NUMBER
******

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|--------------------------------|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 17,323.70 |
| | | | | GROSS PROCEEDS FROM SALES | | | 14,472,160.16 |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**REDACTED**

**DUPLICATE** FOR ACCOUNT WTC & CO.
ROBERT C LAPIN

PERIOD ENDING: 11/30/93

YOUR ACCOUNT NUMBER: 1-CM570-4-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 153,463.20 |
| 11/12 | | 55 | 41958 | S & P 100 INDEX | 15.100 | | 36,945.00 |
| 11/12 | 55 | | 46594 | NOVEMBER 450 CALL | | 97,955.00 | |
| 11/12 | | 55 | 32330 | S & P 100 INDEX | 17.100 | | |
| 11/19 | | | 36714 | NOVEMBER 450 PUT | | | 147,945.03 |
| 11/19 | 55 | | 41039 | S & P 100 INDEX | 26 | 155,055.00 | |
| | | | | DECEMBER 410 CALL | | | |
| 11/19 | | 55 | 45364 | S & P 100 INDEX | 3 | 16,555.00 | |
| | | | | DECEMBER 420 PUT | | | |
| | | | | S & P 100 INDEX | 37 | | 203,445.00 |
| | | | | NOVEMBER 450 CALL | | | |
| 11/19 | 55 | | | NOVEMBER 450 PUT | | | 307,133.00 |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | | | S & P 100 INDEX | 23.330 | | |
| | | | | DECEMBER 410 CALL | | | |
| | | | | S & P 100 INDEX | 16.500 | | |
| | | | | DECEMBER 420 PUT | | | |
| | | | | MARKET VALUE OF SECURITIES  LONG   20,750.00 | SHORT  133,150.00- | | |

# INVESTMENT DOCUMENTS

10234212

## Individual Retirement Account Statement
### January 1, 1999 - March 31, 1999

ROBERT C. LAPIN

BERNARD L. MADOFF INVT. SEC.
BERNARD L. MADOFF
885 THIRD AVENUE
NEW YORK NY  10022-4834

# REDACTED

**Retirement Account Number:** [REDACTED]          **Trustee Tax ID#** [REDACTED]          **SSN#** [REDACTED]

## ACCOUNT SUMMARY

**ACCOUNT VALUE**

*1/11/99 INITIAL INVESTMENT*

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

Current Period

| | | |
|---|---|---|
| Additional Investments | $611,258.66 | |
| **Total Account Value** | **$611,258.66** | |

Rollovers

| | |
|---|---|
| Current Tax Year | $0.00 |

Distributions

| | |
|---|---|
| Current Tax Year | $0.00 |

Contributions

| | |
|---|---|
| Current Tax Year  (1999) | $0.00 |
| Prior Tax Year  (1998) | $0.00 |

Employer Contributions

| | |
|---|---|
| Received Current Year | $0.00 |

Prior Period

| | |
|---|---|
| **Total Account Value** | $0.00 |

## ACCOUNT INVESTMENTS

**ADDITIONAL INVESTMENTS**

| Description | Account Number | Shares | Price Per Share | Total Value |
|---|---|---|---|---|
| BERNARD L MADOFF BRKG ACCT VALUE | | 611,258.6600 | 1.0000 | 611,258.66 |

| | |
|---|---|
| **Total Value of Additional Investments** | **$611,258.66** |
| **TOTAL ACCOUNT VALUE** | **$611,258.66** |

*See Page 2 of this statement for contribution of $159,594*

*Page 1 of 2*

**Individual Retirement Account Statement**
October 1, 2000 - December 31, 2000

*on 11/6/2000*

ROBERT C. LAPIN

CLIENT DESIGNATED REPRESENTATIVE:
BERNARD L MADOFF
BERNARD L MADOFF INV SECS
885 THIRD AVE
NEW YORK NY 10022-0000

# REDACTED

Participant Name: ROBERT C. LAPIN                    Trustee Tax ID#:                    SSN:
Retirement Account Number: [REDACTED]

## ACCOUNT SUMMARY

**REPORTED ACCOUNT VALUE**

| | |
|---|---|
| Current Period | |
| Brokerage Accounts | $999,123.44 |
| *Cash | 18.10 |
| Account Value Subtotal | $999,141.54 |
| Total Account Value | $999,141.54 |
| | |
| Prior Period | |
| Total Account Value | $821,272.80 |

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

| | |
|---|---|
| Rollovers | |
| Current Tax Year | $0.00 |
| | |
| Contributions | |
| Current Tax Year (2000) | $0.00 |
| Prior Tax Year (1999) | $0.00 |
| | |
| Employer Contributions | |
| Received Current Year | $0.00 |
| | |
| Roth Conversion | |
| Current Tax Year | $0.00 |
| | |
| Distributions | |
| Current Tax Year | $0.00 |

* Only cash on deposit with the Trustee is FDIC insured  No other investments are FDIC insured through the Trustee

## IMPORTANT ACCOUNT INFORMATION

Please be sure to review the reverse side of this statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498.

REDACTED

Page 2 of 2

## ACCOUNT INVESTMENTS

BROKERAGE ACCOUNTS ──────────────────────────────

| Description/Account    Number | Previous  Reported  Value | Current  Reported  Value |
|---|---|---|
| BERNARD  L MADOFF  BRKG  ACCT  VALUE CM559 | 821,272.80 | 999,123.44 |
| | Total  Value  of Brokerage   Accounts | **$999,123.44** |

CASH ──────────────────────────────

| Description | Interest  Rate | Annual Percentage Yield | Previous Reported Value | Current Reported Value |
|---|---|---|---|---|
| PEAK  MONEY  MARKET | 1 8800 | 1 90 | N/A | 18.10 |
| | | | Total  Value  of Cash | **$18.10** |
| | | | TOTAL  ACCOUNT  VALUE | **$999,141.54** |

## ACCOUNT TRANSACTIONS

| Transaction Date | Transaction | Transaction  Description | Transaction Shares | Transaction Amount |
|---|---|---|---|---|
| 10/30/2000 | TRANSFER  OF CASH  IN | AMERICAN  ENTERPRISE INVSTMNT  SERVICES /AMERICAN  EXPRESS | | 159,593.56 |
| 11/06/2000 | PURCHASE | BERNARD  L MADOFF  BRKG ACCT  VALUE | | -159,558.56 |
| 12/01/2000 | INTEREST | As  of  11/30/2000 | | 41.10 |
| 12/20/2000 | FEE  COLLECTION | | | -58.00 |

**BERNARD L. MADOFF**
Investment Securities LLC
New York □ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY CREDITED YOUR
ACCOUNT WITH THE FOLLOWING

6/11/01

CHECK

132,896.35

CLIENT'S ACCOUNT NUMBER

RETIREMENT ACCTS INC CUST IRA
FBO ROBERT C LAPIN

1-CM559-3

# REDACTED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY **CREDITED YOUR**
ACCOUNT WITH THE FOLLOWING

8/13/01

| CHECK | 37.08 |

CLIENT'S ACCOUNT NUMBER

RETIREMENT ACCTS INC CUST IRA
FBO ROBERT C LAPIN

1-CM559-3

# REDACTED

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY CREDITED YOUR
ACCOUNT WITH THE FOLLOWING

8/05/03

| CHECK | 4,441.18 |
|-------|----------|

CLIENT'S ACCOUNT NUMBER

RETIREMENT ACCTS INC CUST IRA
FBO ROBERT C LAPIN

1-CM559-3

# REDACTED

01/20/2005  06:42   5613693990                HUNTERS RUN POA                    PAGE  01

## facsimile transmittal                    Robert C. Lapin

                                             Tel:           • Fax:

To:        Retirement Accounts Inc.
           Customer Service Dept.

Date:      January 20, 2005

Fax No.    303-294-5899

Pages:     1                                 **REDACTED**

Subject:   IRA of Robert C. Lapin

Ladies and Gentlemen:

       RE: Account # ▮▮▮▮▮▮▮▮ IRA of Robert C. Lapin

   I have instructed ▮▮▮▮▮▮▮▮▮▮ to wire into my account at Retirement Accounts Inc., the funds
from the liquidation of the Radix Sterling Fund.

Upon receipt, kindly wire the funds to:

           The Chase Manhattan Bank                    $112,300⁵⁸ ✓
           40 Wall Street
           New York NY 10015
           ABA# 021 000 021
           For further credit to:
           Bernard L. Madoff Investment Securities   ←
           Account # 140 081 703
           For the benefit of Robert C. Lapin, IRA
           Account # 1-CM559-3-0

Thank you,

*Robert C. Lapin* (signature)

Robert C. Lapin


                    ENTRY DATE  01/24/05
                    NAME  LAPIN, Robert C
                    ACCOUNT # ▮▮▮▮▮▮▮▮▮▮
                    CUSIP # CASH
                    AMOUNT $ 100
                    ENTERED BY Chris Gains

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
212 230-2424
I&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY CREDITED YOUR
ACCOUNT WITH THE FOLLOWING

CHECK WIRE

ROBERT C LAPIN

REDACTED

2/01/05

CLIENT'S ACCOUNT NUMBER
112,377-58

1-CM559-3

**DUPLICATE** ACCT OF
RETIREMENT ACCTS INC CUST IRA



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020-7493-6222

REDACTED

**DUPLICATE** FOR ACCOUNT     RETIREMENT ACCOUNT
ROBERT C LAPIN

| YOUR ACCOUNT NUMBER | PERIOD ENDING | PAGE |
|---|---|---|
| 1-CM569-3-0 | 2/28/05 | 1 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 2/11 | | | | BALANCE FORWARD | | | 1,215.54 |
| 2/11 | 100,000 | | 22758 | CHECK WIRE | | | |
| | | | | U S TREASURY BILL | CA | | 112,377.50 |
| | | | | DUE 4/21/2005 | 99.473 | 99,473.00 | |
| 2/08 | 12,905 | | 22789 | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | 12,905.00 | |
| | | | | DUE 4/21/2005 | | | |
| 2/18 | | 352 | 42324 | MERRILL LYNCH & CO INC | 60.530 | | 21,306.60 |
| 2/18 | | 736 | 46600 | U S BANCORP | 30.290 | | 22,293.44 |
| 2/18 | 25,000 | | 54865 | U S TREASURY BILL | 99.580 | 24,895.00 | |
| | | | | DUE 4/21/2005 | | | |
| 1/18 | | | | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | DIV | | 30.13 |
| | | | | DIV 02/18/05 | | | |
| 2/19 | | 34,736 | 50977 | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | | 34,736.00 |
| 2/19 | 9,428 | | 57485 | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | 9,428.00 | |
| 2/25 | | | | CITI GROUP INC | DIV | | 887.00 |
| | | | | DIV 2/25/05 2/25/05 | | | |
| 2/28 | | | | MERRILL LYNCH & CO INC | DIV | | 56.32 |
| | | | | DIV 2/04/05 2/25/05 | | | |
| 2/28 | 943 | | 67139 | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | 943.00 | |
| | | | | CONTINUED ON PAGE 2 | | | |

5/9/05

F051

505

885 Third Avenue
New York, NY 10022
212 230-2424
P&S Dept. 212 230-2436
800 334-1343
Fax 212 838-4061

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

WE HAVE THIS DAY          CREDITED YOUR
ACCOUNT WITH THE FOLLOWING   CHECK WIRE                    5/05/05

4,273.47

CLIENT'S ACCOUNT NUMBER

RETIREMENT ACCTS INC CUST IRA              1-CM559-3
FBO ROBERT C LAPIN

REDACTED

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 1950

**DUPLICATE** FOR ACCOUNT
ROBERT C LAPIN

REDACTED

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 19,688.15 |
| 5/05 | | | | CHECK WIRE | CA | 4,273.73 | 4,273.73 |
| 5/05 | | | | CXL CES | CA | | |
| 5/05 | | | | CHECK WIRE | CA | | 4,273.47 |
| 5/05 | 4,273 | | 22089 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 4,273.00 | |
| 5/23 | 2,652 | | 2097 | EXXON MOBIL CORP | 53,490 | 141,855.48 | |
| 5/23 | 1,496 | | 3338 | J.P. MORGAN CHASE & CO | 35,530 | 53,172.88 | |
| 5/23 | 952 | | 7632 | COCA COLA CO | 44,470 | 42,335.44 | |
| 5/23 | 510 | | 11026 | MEDTRONIC INC | 52,230 | 26,637.30 | |
| 5/23 | 340 | | 16220 | 3M COMPANY | 77,060 | 26,200.40 | |
| 5/23 | 804 | | 20514 | ALTRIA GROUP INC | 66,270 | 53,582.68 | |
| 5/23 | 919 | | 24808 | MERCK & CO | 32,930 | 30,229.74 | |
| 5/23 | 4,250 | | 29102 | MICROSOFT CORP | 25,490 | 108,332.50 | |
| 5/23 | 476 | | 33396 | MORGAN STANLEY | 48,600 | 23,133.60 | |
| 5/23 | 1,040 | | 39027 | AMERICAN INTL GROUP INC | 55,320 | 57,903.36 | |
| 5/23 | 510 | | 43221 | AMGEN INC | 62,330 | 31,789.30 | |
| 5/23 | 1,904 | | 46278 | ORACLE CORPORATION | 12,200 | 23,228.80 | |
| 5/23 | 510 | | 47515 | AMERICAN EXPRESS COMPANY | 52,880 | 26,968.80 | |
| 5/23 | 714 | | 50572 | PEPSICO INC | 56,330 | 40,235.32 | |
| 5/23 | 1,700 | | 51890 | BANK OF AMERICA | 46,270 | 78,659.00 | |
| 5/23 | 3,128 | | 54866 | PFIZER INC | 28,210 | 88,240.88 | |
| 5/23 | 2,210 | | 56103 | CITI GROUP INC | 47,370 | 104,687.70 | |
| 5/23 | 1,054 | | 59160 | PROCTER & GAMBLE CO | 55,700 | 58,707.80 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PERIOD ENDING 5/31/05

PAGE 1

# TRANSFER DOCUMENTS

10234212

 **Fiserv** | Investment Support Services

View Your Account Online!
www.fiserviss-iaservices.com

**Corrected Statement**

**Traditional IRA**
**October 1, 2005 - December 31, 2005**

Page 1 of 3

>00079 4388661 001 008145
ROBERT C. LAPIN

**FINANCIAL REPRESENTATIVE**
BERNARD L MADOFF
BERNARD L MADOFF INV SECS
885 THIRD AVE
NEW YORK NY 10022-0000
212-230-2426

# REDACTED

**Account Name:** ROBERT C. LAPIN
**Account Number:** ▓▓▓▓▓

Contact: IA SERVICES TEAM H

## ACCOUNT SUMMARY

**REPORTED ACCOUNT VALUE**

| | |
|---|---|
| Current Period | |
| Brokerage Accounts | $2,010,709.87 |
| *Cash | $0.00 |
| Non-Standard Assets | $0.00 |
| **Total Account Value** | **$2,010,709.87** |
| | |
| Prior Period | |
| Total Account Value | $2,052,281.21 |

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

| | |
|---|---|
| Rollovers | |
| Current Tax Year | $0.00 |
| | |
| Contributions | |
| Current Tax Year (2005) | $0.00 |
| Prior Tax Year (2004) | $0.00 |
| | |
| Employer Contributions | |
| Received Current Year | $0.00 |
| | |
| Distributions | |
| **Current Tax Year (2005) | $84,119.75 |
| Current Tax Year Withholding (2005) | $0.00 |
| **Prior Tax Year (2004) | $76,679.00 |
| Prior Tax Year Withholding (2004) | $0.00 |

*Only cash on deposit with the Trustee is FDIC insured. No other investments are FDIC insured through the Trustee.

** May include distributions that do not apply toward your required minimum distribution.

## IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

Our records indicate that you are age 70½ or older or that you will attain age 70½ in 2006. According to IRS regulations, you are subject to required minimum distributions unless special exceptions apply. Please refer to the article in the January edition of 'Spotlight' for more information.

717 17th Street, Ste. 1700, Denver, CO 80202-3331   PO Box 173859, Denver, CO 80217-3859   800-962-4238

*Fiserv Trust Company. Member FDIC.*





BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    RETIREMENT ACCT  #1Z-0128-3-0
ROBERT C LAPIN

REDACTED

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | YOUR ACCOUNT NUMBER | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | | 104,831.74 |
| 12/01 | | | | INTEL CORP | | DIV | | 227.74 |
| 12/01 | | | | DIV 11/07/05 12/01/05 | | DIV | | 464.00 |
| 12/06 | | | | WELLS FARGO & CO NEW | | DIV | | 553.84 |
| 12/06 | | | | DIV 11/25/05 12/01/05 | | DIV | | |
| | | | | PFIZER INC | | | | 243.00 |
| 12/08 | | | | DIV 11/11/05 12/05/05 | | | | |
| 12/08 | | | | CHECK | | C4 | | |
| 12/01 | | | | WILCHARR CORP | | DIV | | 752.75 |
| 12/09 | | | | DIV 11/17/05 12/09/05 | | DIV | | |
| | | | | EXXON MOBIL CORP | | | | 492.80 |
| 12/09 | | | | DIV 11/10/05 12/09/05 | | DIV | | |
| 12/12 | | | | CHEVRON CORP | | DIV | | 243.00 |
| 12/12 | | | | DIV 11/18/05 12/12/05 | | DIV | | |
| | | | | INTERNATIONAL BUSINESS MACHS | | | | 463.60 |
| 12/13 | | | | DIV 11/23/05 12/10/05 | | DIV | | |
| | | | | JOHNSON & JOHNSON | | | | |
| 12/13 | 1,629 | 1,629 | 34151 | DIV 11/23/05 12/13/05 | | | 64,305.00 | |
| 12/13 | | | 34151 | J.P. MORGAN CHASE & CO | | 39,500 | | |
| 12/13 | | | | J.P. MORGAN CHASE & CO | | 39,500 | | |
| 12/15 | | | | COCA COLA CO | | DIV | | 64,305.00 |
| | | | | DIV 12/01/05 12/15/05 | | | | |
| | | | | HOME DEPOT INC | | DIV | | 99.00 |
| 12/15 | | | | DIV 11/23/05 12/15/05 | | DIV | | |
| | | | | CONTINUED ON PAGE 2 | | | | |



**View Your Account Online!**
www.fiservtss-iaservices.com

**Traditional IRA**
**October 1, 2006 - December 31, 2006**

Page 1 of 4

>07476 4762914 001 008145
ROBERT C LAPIN

FINANCIAL REPRESENTATIVE
BERNARD L MADOFF
BERNARD L MADOFF INV SECS
885 THIRD AVE
NEW YORK NY 10022-0000
212-230-2424

# REDACTED

**Account Name:** ROBERT C. LAPIN
**Account Number:** ███████████

Contact: IA SERVICES TEAM A

## ACCOUNT SUMMARY

**REPORTED ACCOUNT VALUE**

Current Period
  Brokerage Accounts          $2,189,997.08
  *Cash                               $8.41
**Total Account Value**        **$2,190,005.49**

Prior Period
Total Account Value            $2,223,462.57

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

Rollovers
  Current Tax Year                        $0.00

Contributions
  Current Tax Year (2006)                 $0.00
  Prior Tax Year (2005)                   $0.00

Employer Contributions
  Received Current Year                   $0.00

Distributions
  **Current Tax Year (2006)            $91,385.90
  Current Tax Year Withholding (2006)     $0.00
  **Prior Tax Year (2005)             $84,119.75
  Prior Tax Year Withholding (2005)       $0.00

* Fiserv Trust's FDIC insurance coverage applies only to deposits held in the Fiserv Trust Money Market, and to certificates of deposit issued by Fiserv Trust. No other investments are FDIC insured through Fiserv Trust.

** May include distributions that do not apply toward your required minimum distribution.

## IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

Our records indicate that you are age 70½ or older or that you will attain age 70½ in 2007. According to IRS regulations, you are subject to required minimum distributions unless special exceptions apply. Please refer to the article in the January edition of 'Spotlight' for more information.

717 17th Street, Ste. 1700, Denver, CO 80202-3331   PO Box 173859, Denver, CO 80217-3859   800-962-4238

*Fiserv Trust Company. Member FDIC.*





**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

**REDACTED**

**DUPLICATE** FOR ACCOUNT   RETIREMENT ACCT
ROBERT C LAPIN

YOUR ACCOUNT NUMBER   1-F4659-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/14 | | | | BALANCE FORWARD | | 70,626.72 | |
| 11/29 | | | | CHECK | | 91,395.70 | 17.61 |
| | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | CH | | |
| | | | | DIV 11/29/06 | DIV | | |
| 12/29 | | 50,000 | 867 | U S TREASURY BILL DUE 02/01/2007 | 99.006 | | 49,503.00 |
| 12/29 | | 6,302 | 36502 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 6,302.00 |
| 11/21 | 6,544 | 1,224 | 11193 | VERIZON COMMUNICATIONS | 35.950 | 6,544.00 | 43,966.00 |
| 11/21 | | | 18070 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| 11/22 | | | | CITI GROUP INC DIV 11/06/06 11/22/06 | DIV | | 1,925.25 |
| 11/22 | | | | MERRILL LYNCH & CO INC DIV 11/22/06 11/22/06 | DIV | | 72.50 |
| 11/27 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/27/06 | DIV | | 5.61 |
| 11/27 | 6,544 | 6,544 | 22552 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 6,544.00 |
| 11/27 | 6,549 | | 34756 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 6,549.00 | |

CONTINUED ON PAGE    2



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE**  FOR ACCOUNT   RETIREMENT ACCTS FUNCTG U/A
ROBERT C LAPIN

REDACTED

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 24,452.54 | |
| 7/02 | | | | COCA COLA CO | DIV | | 790.50 |
| 7/02 | | | | DIV 6/15/07  7/01/07 | DIV | | 338.59 |
| 7/05 | | | | MERCK & CO | DIV | | 89.78 |
| | | | | DIV 6/08/07  7/02/07 | | | |
| | | | | HEWLETT PACKARD CO | DIV | | 86.68 |
| 7/06 | | | | DIV 6/13/07  7/05/07 | DIV | | 592.00 |
| | | | | SCHLUMBERGER LTD | | | |
| 7/10 | | | | DIV 6/26/07  7/06/07 | DIV | | 133.75 |
| | | | | ALTRIA GROUP INC | | | |
| | | | | DIV 6/15/07  7/10/07 | CH | 50,000.00 | |
| 7/20 | | | | CHECK | DIV | | |
| 7/23 | | | | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 07/23/07 | | | 44,010.00 |
| 7/23 | | 44,910 | 18831 | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 7/23 | | 25,000 | 18892 | U S TREASURY BILL | 99.779 | | 24,944.75 |
| | | | | DUE 8/9/2007 | | | |
| | 24,887 | | 19034 | 8/05/2007 | | 19,887.03 | |
| 7/23 | | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 7/25 | | | | GENERAL ELECTRIC CO | DIV | | 1,201.20 |
| | | | | DIV 6/25/07  7/25/07 | | | |
| | | | | CONTINUED ON PAGE  2 | | | |

YOUR ACCOUNT NUMBER  1-CM509-3-0

PERIOD ENDING  7/31/07

YOUR TAX PAYER IDENTIFICATION NUMBER  ******

PAGE  1



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   NTC & CO.
ROBERT C LAPIN

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | |
| 12/10 | | | | CHEVRON CORP | | | |
| 12/10 | | | | DIV 11/16/07 12/10/07 | DIV | | |
| 12/10 | | | | UNITED TECHNOLOGIES CORP | DIV | | |
| 12/11 | | | | DIV 11/15/07 12/10/07 | DIV | | |
| 12/13 | | | | JOHNSON & JOHNSON | DIV | | |
| | | | | DIV 11/27/07 12/11/07 | DIV | | |
| 12/17 | | | | MICROSOFT CORP | DIV | | |
| | | | | DIV 11/15/07 12/13/07 | DIV | | |
| 12/17 | | | | COCA COLA CO | DIV | | |
| | | | | DIV 12/01/07 12/15/07 | DIV | | |
| 12/17 | | | | WACHOVIA CORP NEW | DIV | | |
| | | | | DIV 11/30/07 12/17/07 | | | |
| 12/18 | | 1,122 | 1144 | CHECK | | $3,333.15 | |
| 12/21 | | 1,360 | 4092 | AMERICAN INTL GROUP INC | 55.900 | | |
| 12/21 | | 340 | 5422 | PROCTER & GAMBLE CO | 72.300 | | |
| 12/21 | | 544 | 9385 | BOEING CO | 87.330 | | |
| 12/21 | | 1,938 | 9669 | SCHLUMBERGER LTD | 91.270 | | |
| 12/21 | | 2,653 | 17679 | BANK OF AMERICA | 40 | | |
| 12/21 | | 2,108 | 13962 | AT&T INC | 40.923 | | |
| 12/21 | | 442 | 16969 | CITI GROUP INC | 31.350 | | |
| | | | | UNITED PARCEL SVC INC | 72.850 | | |
| | | | | CLASS B | | | |
| 12/21 | | 714 | 18255 | CONOCOPHILLIPS | 83.629 | | |
| | | | | CONTINUED ON PAGE 2 | | | |

YOUR ACCOUNT NUMBER  1-CM530-3-0

PERIOD ENDING  12/31/07

 **Investment Support Services**

**View Your Account Online!**
www.fiserviss-iaservices.com

## Traditional IRA
### October 1, 2008 - December 31, 2008

Page 1 of 3



>03708 5666970 001 008145
ROBERT C LAPIN

# REDACTED

**Account Name:** ROBERT C LAPIN
**Account Number:** ▉▉▉▉▉▉▉

**Contact:** CLIENT CONNECTION

## ACCOUNT SUMMARY

**REPORTED ACCOUNT VALUE**

Current Period
| | |
|---|---|
| Brokerage Accounts | $2,409,883.90 |
| *Cash | $0.00 |
| **Total Account Value** | **$2,409,883.90** |

Prior Period
| | |
|---|---|
| Total Account Value | $2,525,030.79 |

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

Rollovers
| | |
|---|---|
| Current Tax Year | $0.00 |

Contributions
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

Employer Contributions
| | |
|---|---|
| Current Tax Year (2008) | $0.00 |
| Prior Tax Year (2007) | $0.00 |

Distributions
| | |
|---|---|
| **Current Tax Year (2008) | $115,146.89 |
| Current Tax Year Withholding (2008) | $0.00 |
| **Prior Tax Year (2007) | $103,302.15 |
| Prior Tax Year Withholding (2007) | $0.00 |

\* FDIC insurance coverage applies only to deposits held in cash and to certificates of deposit issued by your trustee/custodian. No other investments are FDIC insured through this institution.

\*\* May include distributions that do not apply toward your required minimum distribution.

### IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records. Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

717 17th Street, Ste. 1700, Denver, CO 80202-3331 • PO Box 173859, Denver, CO 80217-3859 • 800-962-4238

*Trust and custodial services provided by Trust Industrial Bank, member FDIC.*

CLINS (01-09) RMD (01-09)