DUANE MORRIS LLP
COUNSEL TO THE CHERNIS FAMILY LIVING TRUST
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1022
William C. Heuer, Esq.
Patricia H. Heer, Esq.

         - and -

470 Atlantic Avenue, Suite 500
Boston, MA 02210-2600
Telephone: 857.488.4200
Martin B. Shulkin, Esq.
Kara M. Zaleskas, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-1789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**JOINDER TO ARGUMENTS PRESENTED IN CONNECTION WITH TRUSTEE'S**
**OTHER OBJECTIONS TO CUSTOMERS' CLAIMS AND OBJECTION TO NOTICE**
**OF TRUSTEE'S DETERMINATION OF CLAIM**

Scott R. Chernis and Gabrielle S. Chernis, Trustees of The Chernis Family Living Trust

(the "Claimant"), hereby objects to the *Notice of Trustee's Determination of Claim* pursuant to

which Irving H. Picard (the "Trustee"), the trustee appointed pursuant to the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq*. ("SIPA"), denied in its entirety the claim asserted on

account of BLMIS Account No. 1-EM467-3-0 (the "Account"), designated as Claim Number

5828 (the "Claim").

In support of this joinder and objection (the "Objection"), the Claimant respectfully states

as follows:

## PRELIMINARY STATEMENT

The Trustee's determination letter to Claimant dated March 9, 2010 (the "Determination

Letter")[1] is objectionable on numerous grounds.  First, through the claims determination process,

the Trustee inequitably discriminates against certain customers, including the Claimant, whose

deposits were funded by transfers from another account maintained with Bernard L. Madoff

Investment Securities LLC ("Madoff").  Specifically, without any support or explanation, the

Trustee makes an "adjustment" to the Account and the "predecessor account" from which the

deposit was made (hereinafter referred to as the "Funding Account") which effectively avoids

and recovers a substantial transfer (or that portion thereof as reflected on the November 30, 2002

statement of the Funding Account) which otherwise could not be avoided because it occurred

more than six years prior to the date of the statute of limitations for avoiding so-called fraudulent

transfers under the laws of the State of New York.  As the Trustee otherwise would be powerless

to avoid and recover any amounts that could have been transferred from the Funding Account on

or prior to December 10, 2002 were he to initiate an adversary proceeding – as he is required to

do pursuant to the Federal Rules of Bankruptcy Procedures – he cannot recover them by

unilaterally "adjusting" the balance of the Account to ignore the balance on the November 30,

---

[1]     A copy of the Determination Letter is attached hereto as **Exhibit A**.

2002 statement of the Funding Account. To hold otherwise would impermissibly expand the Trustee's avoidance powers beyond the limitations set by title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "<u>Bankruptcy Code</u>") and applicable state law, and would work an unfair hardship against customers who reinvested their earnings in Madoff.

As this Court already has concluded that the Trustee's power to determine customer claims should be exercised in concert with his other powers, including his avoidance powers, the proper application of the "Net Investment Method" must take into account that transfers to/from a Madoff account arising prior to December 10, 2002 are not avoidable by the Trustee. Although, in this case, the Account was established after December 10, 2002, the same analysis must apply to the Funding Account, as the propriety of any "adjustment" to the Account rests exclusively on the proper calculation of the "net equity" in the Funding Account as of the date of the deposit to the Account (in this case, July 29, 2004). Thus, the Trustee's "adjustment" is proper only if the Funding Account did not have any "net equity" as of July 29, 2004. To determine the net equity of the Funding Account as of July 29, 2004, this Court must consider only the following: (a) the balance in the Funding Account according to the statement issued on November 30, 2002; less (b) withdrawals made from the Funding Account from December 11, 2002 through July 29, 2004 plus (c) deposits made to the Funding Account December 11, 2002 through July 29, 2004. If the "net equity" of the Funding Account as of July 29, 2004 is greater than the amount transferred from the Funding Account to the Account, then the opening deposit of the Account should be credited in full, and no adjustment is warranted. If the "net equity" of the Funding Account, based on the foregoing analysis, is less than the amount deposited, then adjustment is warranted to reflect a transfer of the "net equity" balance of the Funding Account to the Account. By treating the statement balance in existence on November 30, 2002 in the

Funding Account as the beginning amount of "cash in" for purposes of applying the Net

Investment Method, this methodology: (i) works in concert with the avoidance provisions of the

Bankruptcy Code; (ii) insures that customers holding "older accounts" do not bear an inordinate

burden of alleged fraudulent transfer liability; and (iii) comports with the "equality is equity"

maxim on which the Bankruptcy Code is premised.[2]

   Moreover, the Trustee, by arbitrarily "adjusting" the amounts in Madoff accounts

(including predecessor funding accounts) existing on or before December 10, 2002, an act which

exceeds the scope of the Trustee's powers, applies a different standard of review to the

preexisting Madoff account-holders than he applies to "new" customers investing after

December 10, 2002.  Although not expressly defined in the Trustee's Determination Letter, one

surmises that the so-called adjustments made to the pre-December 2002 accounts are based on

tracking of "cash in, cash out" for periods commencing with the inception of the investments.

Yet, no such "tracking" of the source of funds is applied to any other class of Madoff customers.

If hypothetically a "new" Madoff customer cashed out of a similar "ponzi" scheme prior to the

State Look Back Period and invested those funds with Madoff, such investor receives full credit

of "cash in" for the purposes of the Trustee's application of the Net Investment Method.  In

contrast, preexisting Madoff accountholders are held to a totally different standard, as their

deposits are being discounted, or even stricken altogether, simply because the deposits originated

from another Madoff account.  It is inequitable for the Trustee, on the one hand, to discriminate

against these customers solely on the basis that the Trustee has access to records that would

otherwise be unavailable for use in an avoidance action, but, on the other hand, to give unfettered

---

[2]    *See infra*, note 5, for examples of how the timing of deposits and withdrawals in relation to the Avoidance
Period cultivates inequitable treatment among customers.

credit to a "new" customer without any ability to trace, or otherwise contest, the source of such funds.

Finally, notwithstanding the foregoing, the Trustee's determination process fails to properly account for any legitimate profits or earnings generated prior to the implementation of the Ponzi scheme, and interest required to be credited pursuant to, among other provisions N.Y. C.P.L.R. § 5001, 5004; N.Y. Gen. Oblig. § 5-501, *et seq*., N.Y. C.P.L.R. § 5205(c). As set forth in greater detail below, New York law, and cases interpreting the calculation of "value" in presenting a defense of a fraudulent conveyance claim, command the Trustee to adjust customers' claims to take into account the interest that they would have earned in connection with a tort claim – for fraud, unjust enrichment, breach of fiduciary duty, or other similar claims – against Madoff. The Trustee cannot ignore the mandates of state law to facilitate the claims determination process.

## JOINDER TO PLEADINGS OF OTHER SIMILARLY SITUATED CUSTOMERS

1.      As an initial matter, Claimant hereby joins, and fully incorporates by reference as if fully restated herein, the arguments and authority cited in the objections and briefs filed on behalf of similarly situated customers including, without limitation, the arguments that the Trustee is bound by the November 30, 2008 statement to determine a customer's claim. To the extent that customers raise new arguments in connection with subsequent determinations rendered by the Trustee, Claimant reserves the right to join in such other arguments, as appropriate.

## BACKGROUND

2.      In or about July, 2004, the Claimant opened the Account with Madoff. On information and belief, the Account was funded by a transfer in the amount of $2,339,971.15

from Madoff Account No. 1-EM042-3-0 (as referenced elsewhere herein, the "Funding

Account").

3.      On December 11, 2008 (the "Commencement Date"), an action was commenced

against Madoff by the Securities & Exchange Commission in the United States District Court for

the Southern District of New York.  On December 15, 2008, this liquidation proceeding was

commenced pursuant to SIPA.  *See Order, Securities and Exchange Commission v. Madoff*, No.

08-10791 (S.D.N.Y. Dec. 15, 2008) [Dkt. No. 4].  The Trustee was appointed and charged with,

*inter alia*, overseeing the liquidation of Madoff and processing customer claims for money

pursuant to SIPA. *Id.*; 15 U.S.C. § 78fff-1(a) (2009).

4.      On December 23, 2008, the Court issued an Order (the "Claims Procedure

Order") directing the Trustee to disseminate notice and claim forms to Madoff customers and

setting forth claim-filing deadlines. *See* Claims Procedure Order [Dkt. No. 12].  The Claims

Procedure Order further provides that, to the extent the Trustee disagrees with the amount set

forth on a customer claim form, the Trustee "shall notify such claimant by mail of his

determination that the claim is disallowed, in whole or in part, **and the reason therefor** . . . " *Id.*

at 6 (emphasis added).

5.      In February, 2009, Claimant filed a claim for the Account for all of the securities

positions reflected on the November 30, 2008 statement from Madoff (the "Final Madoff

Statement").  According to the Final Madoff Statement, the value of those positions was

approximately $5,770,833.63.

6.      On March 1, 2010, this Court rendered a decision relating to the Trustee's so-

called "Net Investment Method" for determining customers' claims.  In endorsing the "Net

Investment Method" for determining "net equity" under SIPA, this Court held that the "Net

Investment Method allows the definition of Net Equity and the Trustee's powers to avoid and recover property, contained in the same statutory framework, to be interpreted with preferred consonance." *See, e.g., Memorandum Decision Granting Trustee's Motion for an Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to Determinations Relating to Net Equity*, [Dkt. No. 1999] (the "Net Equity Decision"), at 24.

7.       On March 9, 2010, the Trustee sent the Claimant the Determination Letter pursuant to which he denied the entire Claim, stating, in relevant part, that (a) no securities were purchased for the Account and (b) the Account does not have a positive net equity because the amount of funds withdrawn from the Account exceeded deposits.

## GROUNDS FOR OBJECTION

**I.       The Application Of The Net Investment Approach Should Be Limited To The State Look-Back Period, And The "Adjustment" To The Account, If Any, Should Be Determined Based On The Statement Balance Of The Funding Account As Of Six Years Prior To The Commencement Date.**

8.       The Trustee's application of the "Net Investment Method" unfairly penalizes and discriminates between those customers (or related customers) who maintained accounts with Madoff on or before December 10, 2002 and continued to maintain such investments thereafter and customers who withdrew all, or substantially all, of their earnings and principal prior to December 10, 2002.  To insure equal treatment to all customers of Madoff, the Trustee should be limited in his application of the Net Investment Method, and determining whether any "adjustments" are appropriate, by considering only the following: (a) the statement balance in the

Funding Account, as of November 30, 2002;[3] less (b) withdrawals made during the Avoidance

Period plus (c) deposits made during the Avoidance Period. This is the only methodology which

insures equal treatment to all of Madoff's customers.

9.       By way of illustration, consider a case in which a Madoff customer, who opened

an account in 1990, withdraws the entire balance of his account on December 10, 2002, and buys

Treasury Bills . One week later, that customer decides to reinvest with Madoff. He sells the

Treasury Bills, incorporates as a new entity, and opens up a new account with Madoff,

depositing the same amount that he withdrew the previous week. If the "original customer" had

not withdrawn his funds,  the Trustee would be free to adjust the amounts deemed to remain in

his original account and deny his claim. The "new customer", however, will have a claim

against Madoff for the entire amount of the deposit – which will have been treated as a deposit of

principal – less any subsequent withdrawals. Only if the aggregate value of the withdrawals

during the Avoidance Period exceeds the initial deposit (as of December 10, 2002) will the "new

customer" be stripped of any claim against Madoff.

10.       In order to insure equitable treatment to all customers, therefore, all customers of

Madoff should be afforded the same treatment as the "hypothetical new customer" discussed

above, and accordingly, the statement balance of November 30, 2002 should control as the

"initial balance" in determining net equity. This methodology for determining net equity

operates to treat all customers equally, and is consistent with the statute of limitations in the State

of New York that amounts existing in a Madoff account as of November 30, 2002 would not be

subject to avoidance or recovery. A customer, had he chosen to invest such funds in a non-

---

[3]       This would have been the last statement balance received prior to the commencement of the six year statute of limitations, assuming that the Trustee had commenced adversary proceedings against all customers on the Commencement Date.

Madoff vehicle as of that date, would have had free and unrestricted use of such funds.  The mere act of withdrawing such funds for a week, or even a day, and then reinvesting them in a "new" Madoff account should not be a basis for treating the funds differently than those of a customer who maintained accounts continuously.  This methodology will insure that all customers are treated in a manner consistent with the Trustee's avoidance powers, and will operate to insure that Madoff's "older accounts" are credited, in part, for the time value of money.[4]

11.      For the same reasons that this Court must adopt the November 30, 2002 balance as the starting point in determining a customer's "net equity" claim, so too must it consider whether the Funding Account had sufficient "net equity," as of the date of the transfer from the Funding Account to the Account, to determine whether the Trustee's "adjustment" is warranted. In this case, the adjustment is only warranted if all funds in the Funding Account reflected on the November 30, 2002 statement, and any deposits made between November 30, 2002 and July 29, 2004, had been withdrawn from the Funding Account prior to July 29, 2009.  As the Trustee has failed to substantiate his downward "adjustment" of approximately $2.34 million, Claimant submits that no such adjustment is warranted, and that the Account should be credited the full amount of the initial deposit.

12.      If the Trustee is prohibited from adjusting this initial deposit, the Claimant will be deemed to be holding a positive "net equity" claim of $1,584,971.15.  *See* Determination Letter, at 4.  Although Claimant submits that it is the Trustee's burden to show that the adjustment is

---

[4]      The "Net Investment Method" unfairly discriminates against the customers holding older accounts or accounts which were funded by older accounts, as those customers are: (i) generally older, and thus more likely to have required withdrawals during the Avoidance Period to supplement retirement needs; and (ii) have not been awarded any value for the time value of money and inflation.  Indeed, $100,000 invested in Madoff back in January 1970 is equivalent to almost $500,000 investment in December, 2002 (assuming 5% interest rate, compounded annually, and not accounting for inflation).

proper, the Claimant expressly reserves the right to seek additional discovery from the Trustee

with respect to the Funding Account in order to substantiate the sufficiency of the deposit in

question.

II.     **The Claims Determination Process Is Procedurally Improper And Violates
        Claimant's Due Process Rights, As It Seeks To Avoid And Recover A Transfer
        Outside Of An Adversary Proceeding And Otherwise Does Not Comply With
        The Claims Procedure Order, As It Fails To Rebut The Prima Facie Validity Of
        The Claim.**

        13.     By the claims determination process, and, in particular, the "adjustment" process,

the Trustee seeks to avoid and recover transfers which, pursuant to the Federal Rules of

Bankruptcy Procedure, can only be accomplished through an adversary proceeding.  The Trustee

cannot circumvent Claimant's due process entitlements and defenses simply by "adjusting" the

claim and reducing it by unsubstantiated amounts.  For this reason alone the Determination

Letter must be denied.

        14.     Additionally, the Determination Letter: (a) does not clearly provide "the reason"

for the disallowance, as required by the Claims Procedure Order; (b) is insufficient to rebut the

*prima facie* validity of the Claim as provided in § 502(a) of the Bankruptcy Code and Fed. R.

Bankr. P. 3001(f), made applicable herein pursuant to 15 U.S.C. § 78fff(b); (c) violates general

principles of applicable law requiring that an objection to a proof of claim set forth, at a

minimum, the relevant facts and legal theories upon which the objection is based, *see, e.g.*, 9-

3007 COLLIER ON BANKRUPTCY § 3007.01[3] (Alan N. Resnick & Henry J. Sommer eds., 15th

ed. rev. 2008) ("The body of the objection should identify the claim.  It should also, at a

minimum, allege those facts necessary to support the objection (ordinarily this must include

allegations sufficient to overcome the *prima facie* validity of the filed proof of claim) and

provide a description of the theories on which it is based.  In short, proofs of claim have been

held analogous to complaints initiating civil actions; an objection to a claim should therefore

meet the standards of an answer."); and (d) includes an exhibit which purportedly calculates the

money deposited less subsequent withdrawals without any supporting documentation.  These

deficiencies similarly warrant this Court's denial of the Determination Letter.

**III.    Even If The Trustee's "Net Investment Method" Is Upheld On Appeal, Such Methodology Cannot Be Applied To Wipe Out Actual Earnings And Profits Earned By Any Account That Accrued Prior To The Commencement Of Madoff's Ponzi Scheme, Nor Should It Ignore Claimant's Entitlement To Interest.**

15.    Claimant submits that even if the Trustee's "Net Investment Method" is applied,

the Trustee must not be permitted to ignore actual profits and earnings accruing prior to the

inception of Madoff's Ponzi scheme, and the Trustee must credit each account with the earnings

attributable to actual investments as if they constitute deposits of "principal."  To the extent, the

Funding Account was established prior to the time period that Madoff was believed to have

operated his Ponzi scheme, earnings prior to such time must be deemed to constitute "cash"

deposits.  *See*, *e.g.*, Hearing Tr. at 25:12 – 25:24, *United States v. Madoff*, Case No. 09 CR 213

(DC) (S.D.N.Y. 3/12/2009) (Madoff recalling that his fraudulent activities at BLMIS began in

the early 1990s).[5]  If Madoff initiated his Ponzi scheme in 1990, any investment earnings which

were achieved and reinvested in the Funding Account prior to the institution of the Ponzi scheme

constitute *bona fide* earnings which, for all intents and purposes, should be treated as deposits in

determining the "net equity" of the account.  Such an interpretation is consistent with the "cash

in/cash out" methodology, as Madoff used genuine earnings and profits of pre-scheme customers

to fund his Ponzi scheme in the identical manner as he used deposits – to pay other customers.

---

[5]    Although neither the Trustee nor any other investigative authority has pinpointed the time period during which Madoff operated his Ponzi scheme, Madoff's use of the AS/400 server to manipulate account statements, which occurred in the early 1990s, corroborates Madoff's statements during his plea hearing.

16.     In determining the amount of the Claim, the Trustee cannot ignore that Claimant

(or the customer holding the Funding Account) would be entitled to interest on account of funds

held by Madoff.  As set forth in greater detail below, New York law, and cases interpreting the

calculation of "value" in presenting a defense of a fraudulent conveyance claim, command the

Trustee to adjust customers' claims to take into account the interest that they would have earned

in connection with a tort against Madoff.

17.     As impliedly endorsed by the Securities and Exchange Commission through its

support of the "constant dollar approach," customers are entitled to recover interest on such

deposited amounts.  Such interest is required as a matter of state law, and the United States

Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to

interest, are determined by state law.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S.

443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is

that state law governs the substance of claims, Congress having generally left the determination

of property rights in the assets of a bankrupt's estate to state law.")[6]  There are at least two

independent bases for awarding interest to the Claimant to compensate it for Madoff's improper

use and misappropriation of the funds held in the Account.

---

[6]     New York law governs the Claimant's entitlement to interest in this case.   In cases involving torts, New
York courts apply an "'interest analysis' to identify the jurisdiction that has the greatest interest in the litigation
based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that 'related to the
purpose of the particular law in conflict.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am.
Sec., LLC*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006) (citation omitted).  When the law in conflict regulates conduct,
"the law of the jurisdiction where the tort occurred will generally apply . . . ." *Id.*  A tort generally "occurs" in "'the
place where the injury was inflicted,' which is generally where the plaintiffs are located." *Id.*  However, when the
"injury has occurred in locations with only limited connection to the conduct at issue . . . the plaintiffs' location is
not a dispositive factor . . . ." *Id.*  In such a case, the applicable law will be that of "jurisdiction where the fraud
originated and where substantial activities in furtherance of the fraud were committed." *Cromer Fin. Ltd. v. Berger*,
137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001).  Therefore, New York law is applicable to the calculation of the
Claimant's Claim.

18.     Pursuant to New York law, funds deposited with Madoff are entitled to interest. N.Y. Gen. Oblig. § 5-501(1).  Accordingly, even applying the Trustee's "net equity" methodology to calculating the Claimant's claim, the Claim must be adjusted to include interest.

19.     Additionally, pursuant to New York law, the Claimant is entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment.[7]  *See, e.g., Steinberg v. Sherman,* Case No. 1:2007cv01001, 2008 WL 1968297 * 5-6 (S.D.N.Y. May 2, 2008); *Breeden v. Thomas (In re Bennett Funding Group, Inc.)*, Case No. 98-61376, 1999 Bankr. LEXIS 1843, at *25-34 (Bankr. N.D.N.Y. Apr. 29, 1999) (noting that N.Y. C.P.L.R. §§ 5001 and 5004 would have entitled the customer to recover the principal balance of its claim, plus prejudgment interest calculated at rate of 9% dating back to the moment when the debtors were entrusted with customer's money, such that withdrawals in excess of "principal" were not avoidable).  "'Causes of action such as . . .  conversion and unjust enrichment qualify for the recovery of prejudgment interest . . . .'" *Steinberg, supra* at *5 (citation omitted). Furthermore,"'[t]he rate of interest is nine percent per year, unless another rate is agreed to by the parties.'" *Id.*  "'Interest shall be computed from the earliest ascertainable date the cause of action existed.'"  *Id.  See also Eighteen Holding Corp. v. Drizin,* 268 A.D. 2d 371, 701 N.Y.S. 2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion); N.Y. C.P.L.R. §§ 5001, 5004.

---

[7]      Although it is not legally relevant, the Trustee cannot prove that Madoff did not earn any "legitimate profit" or interest on the Claimant's investment.  To the extent the funds were deposited into a bank, they earned interest while on deposit.  Madoff disbursed customer funds to favored customers, to family members, and for other purposes.  Those funds may have yielded substantial profits to either Madoff, or the recipients of fraudulent transfers, which the Claimant and all other customers are entitled, once the ultimate recipients of Madoff's thievery are known.

20.     Accordingly, even under the Trustee's "Net Investment Method," adjustments to the Funding Account and to the Account should be made to account for interest that should have accrued from and after their inceptions through and including December 11, 2008.[8]

## RESERVATION OF RIGHTS

21.     The Claimant expressly reserves the right to revise, supplement, or amend this Objection, or to join in any other objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Claimant's right to object on any additional grounds.

22.     The Claimant reserves all rights set forth in Fed. R. Bankr. P. 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

23.     The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

---

[8]     Claimant reserves the right to seek interest accruing on or after December 11, 2008.

Respectfully submitted this 8th day of April, 2010.

SCOTT R. CHERNIS AND GABRIELLE
S. CHERNIS, TRUSTEES OF THE
CHERNIS FAMILY LIVING TRUST

By its attorneys,

DUANE MORRIS LLP


   _/s/    Patricia H. Heer_____
William C. Heuer
Patricia H. Heer
1540 Broadway
New York, NY 10036-4086
Telephone: 212-471-1803
Facsimile:  212-214-0808

      - and -

Martin B. Shulkin (BBO#460280)
Kara M. Zaleskas (BBO#651981)
470 Atlantic Avenue, Suite 500
Boston, MA 02210-2600
Telephone: 857-488-4239
Facsimile:  857-401-3052

DUANE MORRIS LLP
COUNSEL TO THE CHERNIS FAMILY LIVING TRUST
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1022
William C. Heuer, Esq.
Patricia H. Heer, Esq.

　　　- and -

470 Atlantic Avenue, Suite 500
Boston, MA 02210-2600
Telephone: 857.488.4200
Martin B. Shulkin, Esq.
Kara M. Zaleskas, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-1789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**<u>Certificate of Service</u>**

　　　I, Patricia H. Heer, certify that I am not less than 18 years of age, and that on April 8, 2010, I caused a true and correct copy of the *Joinder to Arguments to be Presented in Connection with Trustee's Other Objections to Customers' Claims and Objection to Notice of Trustee's Determination of Claim* to be hand delivered to:

Clerk of the United States Bankruptcy            Court Irving H. Picard, Trustee

for the Southern District of New York                 c/o Baker & Hostetler LLP
One Bowling Green                                     45 Rockefeller Plaza
New York, New York 10004                              New York, New York 10111


Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: New York , New York                   DUANE MORRIS LLP
      April 8, 2010

      By: */s/ Patricia H. Heer*
          Patricia H. Heer (PP7068)
          1540 Broadway
          New York, NY 10036-4086
          Telephone: 212-471-1803
          Facsimile: 212-214-0808

# EXHIBIT A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

March 9, 2010

The Chernis Family Living Trust
c/o Scott R. Chernis and Gabrielle S. Chernis, Trustees
2750 36th Avenue
San Francisco, CA  94116

Dear The Chernis Family Living Trust:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1EM467 designated as Claim Number 5828:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $755,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $0.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($755,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

2

copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after March 9, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

| - Table 1 - | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 7/29/2004 | TRANS FROM 1EM04230 | $2,339,971.15 | $0.00 |
| **Total Deposits:** | | $2,339,971.15 | $0.00 |
| | | | |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 8/27/2004 | CHECK | ($50,000.00) | ($50,000.00) |
| 8/3/2005 | CHECK | ($30,000.00) | ($30,000.00) |
| 10/21/2005 | CHECK | ($30,000.00) | ($30,000.00) |
| 1/6/2006 | CHECK | ($15,000.00) | ($15,000.00) |
| 9/5/2006 | CHECK | ($30,000.00) | ($30,000.00) |
| 10/20/2006 | CHECK | ($30,000.00) | ($30,000.00) |
| 1/10/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 4/10/2007 | CHECK | ($130,000.00) | ($130,000.00) |
| 6/13/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 8/28/2007 | CHECK | ($75,000.00) | ($75,000.00) |
| 11/7/2007 | CHECK | ($40,000.00) | ($40,000.00) |
| 1/4/2008 | CHECK | ($75,000.00) | ($75,000.00) |
| 5/30/2008 | CHECK | ($75,000.00) | ($75,000.00) |
| 9/12/2008 | CHECK | ($75,000.00) | ($75,000.00) |
| **Total Withdrawals:** | | ($755,000.00) | ($755,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | $1,584,971.15 | ($755,000.00) |

4