Eric F. Saltzman

November 5, 2009

Honorable Burton R. Lifland,
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: Bankruptcy Case No. 08-1789 (BRL)

Dear Judge Lifland:

I am the General Partner of Black River Associates LP, in receipt of Trustee Irving Picard's "Notice of Trustee's Determination of Claim" of October 26, 2009 along with the form for "Partial Assignment and Release".

That notice requires that if I disagree with the Notice's determination I must file my written opposition with your Court, including reasons therefore. I do not disagree with the determination allowing the claim of $8,966,598.45. However, if the Notice limits payment from SIPC to a total of $500,000 for this claim, then I do object to that part of the determination, and reserve the right to a hearing. Grounds for my disagreement and supporting documents are set forth below and attached to this letter.

Black River Associates is a limited partnership all of whose members are immediate family (or trusts for their benefit). As we have previously notified the Trustee, at all times Black River's only purpose and function was to deliver to BLMIS each of the Saltzman family member's individual investment as was required by the Madoff organization. The Madoff organization would not accept the (relatively) small amounts each of the partners sought to invest and, therefore, required us to consolidate them into one account. Black River was formed exclusively for that purpose. Neither I nor anyone else associated with Black River Associates received any sort of remuneration for placing the investments with BLMIS. BLMIS took the investment funds with knowledge that they were, in fact, owned by family individuals and entities. I submit that these documented beneficial owners of the assets stolen by the Madoff organization should, therefore, be accorded protection under SIPC.

Numerous press accounts of the Madoff Ponzi scheme have noted Madoff's modus operandi was to make his victims believe that not just anyone could invest with him -- that they would be fortunate to be among the chosen. These reports describe Madoff telling his marks that they needed to "know" someone to get into the deal, or that their deposits were too small. It was with this latter technique that we were snared into consolidating family member's individual funds into one named account in the Madoff operation.

17 Humboldt Street, Cambridge, MA 02140  esaltzman@pobox.com

Page 2 of 2
November 5, 2009

SIPA's intent is to protect innocent investors from devastating loss, including from outright criminal swindles. It would be a cruel irony if the nefarious means employed by Madoff to make the monumental scam work so well also operated to preclude victims from applying for the limited relief from such crimes that the legislation provides.

I attach with this letter our correspondence to Trustee Picard of November 4, 2009; October 28th, 2009 (sent before receipt of his October 26 letter); June 29, 2009; and July 27, 2009. This correspondence includes a list of the beneficial owners of the funds deposited with the Madoff organization. Please note: these family individuals and entities invested their own money and filed their own tax returns.

To date, I have had no answer to this correspondence and our claim that these family individuals and entities are each entitled to protection under SIPA. The "Notice of Trustee's Determination of Claim" allowed our claim for $8,966,598.45 but only offered a payment of $500,000 from SIPC. It is my position that SIPA requires that the owners of the funds invested with the Madoff organization are each entitled to a payment from SIPC to a maximum of $500,000.

Very truly yours,

Eric F. Saltzman, General Partner

Encls.
Copy to: Irving H. Picard, Esq., Trustee

Eric F. Saltzman

November 4, 2009

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities, LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Trustee Picard:

I am the General Partner of Black River Associates LP and have received your notice of
October 26, 2009 along with the form for "Partial Assignment and Release".

Black River Associates is a limited partnership all of whose members are immediate family
(or trusts for their benefit). As we have previously notified your office, at all times Black
River's only purpose and function was to deliver to BLMIS each of the Saltzman family
member's individual investment as required by the Madoff organization. Black River was
formed exclusively for that purpose and it was on their behalf that BLMIS received and held
funds and
securities.

The Madoff organization would not accept the (relatively) small amounts each of the partners
sought to invest and, therefore, they required us to consolidate them into one account. Black
River was formed exclusively for that purpose. Neither I nor anyone else associated with
Black River Associates received any sort of remuneration for managing or placing the
investments with BLMIS. BLMIS took the investment funds with knowledge that they were,
in fact, owned by family individuals and trusts. I submit that these documented beneficial
owners of the assets stolen by the Madoff organization should, therefore, be accorded
protection under SIPC.

Numerous press accounts of the Madoff Ponzi scheme have noted Madoff's modus operandi
was to make his victims believe that not just anyone could invest with him -- that they would
be fortunate to be among the chosen. These reports describe Madoff telling his marks that
they needed to "know" someone to get into the deal, or that their deposits were too small. It
was with this latter technique that we were snared into consolidating family member's
individual funds into one named account in the Madoff operation.

SIPA's intent is to protect innocent investors from devastating loss, including from outright
criminal swindles. It would be a cruel irony if the nefarious means employed by Madoff to
make the monumental scam work so well also operated to preclude victims from applying for
the limited relief from such crimes that the legislation provides.

I attach with this letter copies of our previous correspondence to you of October 28th, 2009
(sent before receipt of your October 26 letter); June 29, 2009; and July 27, 2009 and of my
letter dated November 5, 2009 to Honorable Burton R. Lifland.

I will accept the $500,000 pursuant to SIPA on behalf of our Black River limited partnership provided that my execution of the "PARTIAL ASSIGNMENT AND RELEASE" and any receipt of funds is without prejudice to any claims that the beneficial owners of the funds invested with BLMIS under Black River Associates' name may elect to make for consumer protection and payments pursuant to SIPA, bankruptcy protection or other avenues.

Please note that I have conditioned my execution of the "PARTIAL ASSIGNMENT AND RELEASE" accordingly.

Very truly yours,

Eric Saltzman, General Partner

Encls.
Copy to: Honorable Burton R. Lifland, United States Bankruptcy Judge

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118

Tel: 212-594-1870
Fax: 212-967-5746

October 28, 2009

<u>Via FedEx</u>

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff
    Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Trustee:

It is some time since we made a claim for SIPC reimbursement. The Michael Munroe Trust invested $130,000, $50,000 in 2003 and $80,000 in 2004. It also was credited $62,482 with interest and dividends over the course of its Madoff ownership <u>all</u> – of which was lost. The interest and dividends reported, but never taken was $62,482.

I would appreciate a reply as to when we will receive reimbursement. The trust needs the money and I heard that some payments have been made.

As we told you previously, Madoff directed that all the Saltzman family investments all come in under one name, Black River, but the various entities all invested their own funds and, filed their own tax returns. They were the beneficial owner of their respective investments.

Signed,

*Arnold Saltzman*
Arnold Saltzman
Trustee
Trust FBO Michael Munroe Saltzman

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118

Tel: 212-594-1870
Fax: 212-967-5746

June 29, 2009

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff
    Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Trustee:

We have written to you about our special situation. Since you have not responded with special advice, we are formalizing our claims so you can handle them appropriately.

I spoke to the Madoff people and was told they would accept our money if it was at least $5,000,000. I told them to do that we had to invest for myself, my children, my grandchildren and their trusts. They said we should put it all in one name and each party would have their own beneficial ownership, use their own money and file their own tax return on the anticipated income.

We did exactly that and formed a partnership called Black River for only that purpose. I collected the money from each entity and sent the combined sum to Madoff.

Each person for the succeeding few years filed their individual tax returns showing any gains in individual transactions and dividends as they were reported to us regularly.

I understand that the interest and dividends being false are lost that were never taken out from Madoff. However, every dollar of capital is also still left in Madoff. It is that capital that we are requesting be made good in each case up to a maximum of $500,000.

We are not a "feeder" fund or a hedge fund gathering people's money. This is one investment, by one family of each individual's participation. Madoff elected this form in our case and we called it "Black River". However to call this one account would be unfair both in fact and equity and be too narrow an interpretation. The SEC, in similar circumstances has looked at the beneficial ownership. The law requires we look at equity and not just a narrow definition. If left to SIPIC to tackle, they would use the narrowest definition they could find to pay out as little as possible, since they hate the name Madoff.

Page 2
June 29, 2009

We are filing individual claims for my children and grandchildren. I have the largest piece, so I know I am limited but my kids are in a different situation. I ask that you please look at an equitable solution.

Sincerely,

Arnold A. Saltzman

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118

Tel: 212-594-1870
Fax: 212-967-5746

July 27, 2009

Trustee:

As you have seen from our filings, there are a number of individuals or trusts that are entitled to SIPC reimbursement. Black River Associates was the conduit for all the partners who were the underlined beneficial owners of their respective share as reported to you. Each of the entities on the list reported the earnings as represented by Madoff and each paid full taxes on so called profits, dividends and interest.

When Madoff imploded every single dollar remained with him from our cash investment and all the profits, dividends and interest that Madoff had reported to us from beginning to the end.

We were told by the Madoff organization they requested the various owners to group their investments into one entity. The Black River Associates was formed only for that purpose.

I would appreciate your seeing that each of the individuals on the list you have under Black River Associates receives from SIPC the reimbursement up to a maximum of $500,000 each one is entitled to. Please confirm that these have been turned in for reimbursement by SIPC.

**Beneficial Owners Losses**

| Name | SS/EIN | Accumulated Madoff Investment | Accumulated Madoff Income Reported | Total Loss |
|---|---|---|---|---|
| Arnold Saltzman | 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 | 2,580,000 | 1,427,169 | 4,007,169 |
| Eric Saltzman | 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 | 1,400,000 | 754,521 | 2,154,521 |
| EMS Trust | 13-7388518 | 100,000 | 40,118 | 140,118 |
| Sajo Partners | 13-3792402 | 640,000 | 334,712 | 974,712 |
| Sein Partners | 13-3794681 | 100,000 | 40,118 | 140,118 |
| Joan Saltzman | 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 | 150,000 | 51,582 | 201,582 |
| Blue River | 11-3596084 | 900,000 | 229,189 | 1,129,189 |
| Saltzman Group | 11-3274151 | 130,000 | 50,486 | 180,486 |
| Marian Saltzman | 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 | 100,000 | 60,496 | 160,496 |
| MBS Trust | 13-6965391 | 100,000 | 60,496 | 160,496 |
| MBS Unitrust | 13-6965390 | 30,000 | 10,370 | 40,370 |
| Marian Saltzman 76 Tr | 13-6731929 | 130,000 | 51,999 | 181,999 |
| Robert Saltzman | 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 | 300,000 | 161,664 | 461,664 |
| Robert Saltzman 76 Tr | 13-6731930 | 60,000 | 24,042 | 84,042 |
| Xylon Saltzman 76 | 13-6731926 | 370,000 | 187,660 | 557,660 |
| Gabriel Saltzman | 13-6929984 | 110,000 | 54,514 | 164,514 |
| Ian Saltzman 90 | 13-6968017 | 140,000 | 66,590 | 206,590 |
| Michael Saltzman 92 Tr | 13-7005810 | 130,000 | 62,482 | 192,482 |
| Salty Partners | 11-3393155 | 350,000 | 171,539 | 521,539 |
| Saltzman Foundation | 13-6142471 | 950,000 | 289,869 | 1,239,869 |
| Chloe Saltzman 80 Tr | 13-6784918 | 120,000 | 48,531 | 168,531 |
| Chloe Saltzman 81 Tr | 13-6792574 | 60,000 | 24,373 | 84,373 |
| | | 8,950,000 | 4,202,720 | 13,152,720 |

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118
——————————
Tel: 212-594-1870
Fax: 212-967-5746

October 28, 2009

<u>Via FedEx</u>

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff
   Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Trustee:

It is some time since we made a claim for SIPC reimbursement. The Michael Munroe Trust invested $130,000, $50,000 in 2003 and $80,000 in 2004. It also was credited $62,482 with interest and dividends over the course of its Madoff ownership <u>all</u> – of which was lost. The interest and dividends reported, but never taken was $62,482.

I would appreciate a reply as to when we will receive reimbursement. The trust needs the money and I heard that some payments have been made.

As we told you previously, Madoff directed that all the Saltzman family investments all come in under one name, Black River, but the various entities all invested their own funds and, filed their own tax returns. They were the beneficial owner of their respective investments.

Signed,

*Arnold Salt{man*

Arnold Saltzman
Trustee
Trust FBO Michael Munroe Saltzman



FedEx Express                    U.S. Mail: PO Box 727          Telephone 901-369-3600
Customer Support                 Memphis, TN 38194-4643
Domestic Trace                                    .
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

*Proof of Delivery for Lifland*

March 11,2010

FedEx Customer
(212) 967-5746

Dear FedEx Customer:

Our records reflect the following delivery information for the shipment with the tracking number
858005407943.

Delivery Information:

Signed For By:   M.PORTER

Delivery Date:   November 17, 2009

Delivery Time:   08:58 AM

Shipping Information:

Tracking No:   858005407943              Ship Date:   November 16, 2009

Shipper:   NEW YORK, NY                  Recipient:   NEW YORK CITY, NY
           US                                         US

Thank you for choosing FedEx Express. We look forward to working with you in the future.

FedEx Worldwide Customer Service
1-800-Go-FedEx (1-800-463-3339)
Reference No: R20100311009477484411

This Information is provided subject to the FedEx Service Guide.

Eric F. Saltzman

November 4, 2009

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities, LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Trustee Picard:

I am the General Partner of Black River Associates LP and have received your notice of
October 26, 2009 along with the form for "Partial Assignment and Release".

Black River Associates is a limited partnership all of whose members are immediate family
(or trusts for their benefit). As we have previously notified your office, at all times Black
River's only purpose and function was to deliver to BLMIS each of the Saltzman family
member's individual investment as required by the Madoff organization. Black River was
formed exclusively for that purpose and it was on their behalf that BLMIS received and held
funds and
securities.

The Madoff organization would not accept the (relatively) small amounts each of the partners
sought to invest and, therefore, they required us to consolidate them into one account. Black
River was formed exclusively for that purpose. Neither I nor anyone else associated with
Black River Associates received any sort of remuneration for managing or placing the
investments with BLMIS. BLMIS took the investment funds with knowledge that they were,
in fact, owned by family individuals and trusts. I submit that these documented beneficial
owners of the assets stolen by the Madoff organization should, therefore, be accorded
protection under SIPC.

Numerous press accounts of the Madoff Ponzi scheme have noted Madoff's modus operandi
was to make his victims believe that not just anyone could invest with him -- that they would
be fortunate to be among the chosen. These reports describe Madoff telling his marks that
they needed to "know" someone to get into the deal, or that their deposits were too small. It
was with this latter technique that we were snared into consolidating family member's
individual funds into one named account in the Madoff operation.

SIPA's intent is to protect innocent investors from devastating loss, including from outright
criminal swindles. It would be a cruel irony if the nefarious means employed by Madoff to
make the monumental scam work so well also operated to preclude victims from applying for
the limited relief from such crimes that the legislation provides.

I attach with this letter copies of our previous correspondence to you of October 28th, 2009
(sent before receipt of your October 26 letter); June 29, 2009; and July 27, 2009 and of my
letter dated November 5, 2009 to Honorable Burton R. Lifland.

17 Humboldt Street, Cambridge, MA 02140   esaltzman@pobox.com

I will accept the $500,000 pursuant to SIPA on behalf of our Black River limited partnership provided that my execution of the "PARTIAL ASSIGNMENT AND RELEASE" and any receipt of funds is without prejudice to any claims that the beneficial owners of the funds invested with BLMIS under Black River Associates' name may elect to make for consumer protection and payments pursuant to SIPA, bankruptcy protection or other avenues.

Please note that I have conditioned my execution of the "PARTIAL ASSIGNMENT AND RELEASE"accordingly.

Very truly yours,

Eric Saltzman, General Partner

Encls.
Copy to: Honorable Burton R. Lifland, United States Bankruptcy Judge

Eric F. Saltzman

November 5, 2009

Honorable Burton R. Lifland,
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: Bankruptcy Case No. 08-1789 (BRL)

Dear Judge Lifland:

I am the General Partner of Black River Associates LP, in receipt of Trustee Irving Picard's
"Notice of Trustee's Determination of Claim" of October 26, 2009 along with the form for
"Partial Assignment and Release".

That notice requires that if I disagree with the Notice's determination I must file my written
opposition with your Court, including reasons therefore. I do not disagree with the
determination allowing the claim of $8,966,598.45. However, if the Notice limits payment
from SIPC to a total of $500,000 for this claim, then I do object to that part of the
determination, and reserve the right to a hearing. Grounds for my disagreement and
supporting documents are set forth below and attached to this letter.

Black River Associates is a limited partnership all of whose members are immediate family
(or trusts for their benefit). As we have previously notified the Trustee, at all times Black
River's only purpose and function was to deliver to BLMIS each of the Saltzman family
member's individual investment as was required by the Madoff organization. The Madoff
organization would not accept the (relatively) small amounts each of the partners sought to
invest and, therefore, required us to consolidate them into one account. Black River was
formed exclusively for that purpose. Neither I nor anyone else associated with Black River
Associates received any sort of remuneration for placing the investments with BLMIS.
BLMIS took the investment funds with knowledge that they were, in fact, owned by family
individuals and entities. I submit that these documented beneficial owners of the assets
stolen by the Madoff organization should, therefore, be accorded protection under SIPC.

Numerous press accounts of the Madoff Ponzi scheme have noted Madoff's modus operandi
was to make his victims believe that not just anyone could invest with him -- that they would
be fortunate to be among the chosen. These reports describe Madoff telling his marks that
they needed to "know" someone to get into the deal, or that their deposits were too small. It
was with this latter technique that we were snared into consolidating family member's
individual funds into one named account in the Madoff operation.

17 Humboldt Street, Cambridge, MA 02140    esaltzman@pobox.com

Page 2 of 2
November 5, 2009

SIPA's intent is to protect innocent investors from devastating loss, including from outright criminal swindles. It would be a cruel irony if the nefarious means employed by Madoff to make the monumental scam work so well also operated to preclude victims from applying for the limited relief from such crimes that the legislation provides.

I attach with this letter our correspondence to Trustee Picard of November 4, 2009; October 28th, 2009 (sent before receipt of his October 26 letter); June 29, 2009; and July 27, 2009. This correspondence includes a list of the beneficial owners of the funds deposited with the Madoff organization. Please note: these family individuals and entities invested their own money and filed their own tax returns.

To date, I have had no answer to this correspondence and our claim that these family individuals and entities are each entitled to protection under SIPA. The "Notice of Trustee's Determination of Claim" allowed our claim for $8,966,598.45 but only offered a payment of $500,000 from SIPC. It is my position that SIPA requires that the owners of the funds invested with the Madoff organization are each entitled to a payment from SIPC to a maximum of $500,000.

Very truly yours,

Eric Saltzman, General Partner

Encls.
Copy to: Irving H. Picard, Esq., Trustee

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118
_____
Tel: 212-594-1870
Fax: 212-967-5746

October 28, 2009

**Via FedEx**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff
   Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Trustee:

It is some time since we made a claim for SIPC reimbursement. The Michael Munroe Trust invested $130,000, $50,000 in 2003 and $80,000 in 2004. It also was credited $62,482 with interest and dividends over the course of its Madoff ownership all – of which was lost. The interest and dividends reported, but never taken was $62,482.

I would appreciate a reply as to when we will receive reimbursement. The trust needs the money and I heard that some payments have been made.

As we told you previously, Madoff directed that all the Saltzman family investments all come in under one name, Black River, but the various entities all invested their own funds and, filed their own tax returns. They were the beneficial owner of their respective investments.

Signed,

Arnold Saltzman
Trustee
Trust FBO Michael Munroe Saltzman

ARNOLD A. SALTZMAN
350 Fifth Avenue, Suite #7404
New York, NY 10118

Tel: 212-594-1870
Fax: 212-967-5746

June 29, 2009

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff
    Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Trustee:

We have written to you about our special situation. Since you have not responded with special advice, we are formalizing our claims so you can handle them appropriately.

I spoke to the Madoff people and was told they would accept our money if it was at least $5,000,000. I told them to do that we had to invest for myself, my children, my grandchildren and their trusts. They said we should put it all in one name and each party would have their own beneficial ownership, use their own money and file their own tax return on the anticipated income.

We did exactly that and formed a partnership called Black River for only that purpose. I collected the money from each entity and sent the combined sum to Madoff.

Each person for the succeeding few years filed their individual tax returns showing any gains in individual transactions and dividends as they were reported to us regularly.

I understand that the interest and dividends being false are lost that were never taken out from Madoff. However, every dollar of capital is also still left in Madoff. It is that capital that we are requesting be made good in each case up to a maximum of $500,000.

We are not a "feeder" fund or a hedge fund gathering people's money. This is one investment, by one family of each individual's participation. Madoff elected this form in our case and we called it "Black River". However to call this one account would be unfair both in fact and equity and be too narrow an interpretation. The SEC, in similar circumstances has looked at the beneficial ownership. The law requires we look at equity and not just a narrow definition. If left to SIPIC to tackle, they would use the narrowest definition they could find to pay out as little as possible, since they hate the name Madoff.

Page 2
June 29, 2009

We are filing individual claims for my children and grandchildren. I have the largest piece, so I know I am limited but my kids are in a different situation. I ask that you please look at an equitable solution.

Sincerely,

Arnold A. Saltzman

**ARNOLD A. SALTZMAN**
350 Fifth Avenue, Suite #7404
New York, NY 10118
_____
Tel: 212-594-1870
Fax: 212-967-5746

July 27, 2009

Trustee:

As you have seen from our filings, there are a number of individuals or trusts that are entitled to SIPC reimbursement. Black River Associates was the conduit for all the partners who were the <u>beneficial</u> owners of their respective share as reported to you. Each of the entities on the list reported the earnings as represented by Madoff and each paid full taxes on so called profits, dividends and interest.

When Madoff imploded every single dollar remained with him from our cash investment <u>and</u> <u>all</u> the profits, dividends and interest that Madoff had reported to us from beginning to the end.

We were told by the Madoff organization they requested the various owners to group their investments into one entity. The Black River Associates was formed only for that purpose.

I would appreciate your seeing that each of the individuals on the list you have under Black River Associates receives from SIPC the reimbursement up to a maximum of $500,000 each one is entitled to. Please confirm that these have been turned in for reimbursement by SIPC.

## Beneficial Owners Losses

| Name | SS/EIN | Accumulated Madoff Investment | Accumulated Madoff Income Reported | Total Loss |
|---|---|---|---|---|
| Arnold Saltzman | 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 | 2,580,000 | 1,427,189 | 4,007,169 |
| Eric Saltzman | 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 | 1,400,000 | 754,521 | 2,154,521 |
| EMS Trust | 13-7388518 | 100,000 | 40,118 | 140,118 |
| Sajo Partners | 13-3792402 | 640,000 | 334,712 | 974,712 |
| Sain Partners | 13-3794681 | 100,000 | 40,118 | 140,118 |
| Joan Saltzman | 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 | 150,000 | 51,582 | 201,582 |
| Blue River | 11-3596084 | 900,000 | 229,189 | 1,129,189 |
| Saltzman Group | 11-3274151 | 130,000 | 50,486 | 180,486 |
| Marian Saltzman | 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 | 100,000 | 60,496 | 160,496 |
| MBS Trust | 13-6985391 | 100,000 | 60,496 | 160,496 |
| MBS Unitrust | 13-6985390 | 30,000 | 10,370 | 40,370 |
| Marian Saltzman 76 Tr | 13-6731929 | 130,000 | 51,999 | 181,999 |
| Robert Saltzman | 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 | 300,000 | 161,664 | 461,664 |
| Robert Saltzman 76 Tr | 13-6731930 | 60,000 | 24,042 | 84,042 |
| Xylon Saltzman 76 | 13-6731926 | 370,000 | 187,860 | 557,860 |
| Gabriel Saltzman | 13-6929984 | 110,000 | 54,514 | 164,514 |
| Ian Saltzman 90 | 13-6968017 | 140,000 | 66,590 | 206,590 |
| Michael Saltzman 92 Tr | 13-7005810 | 130,000 | 62,482 | 192,482 |
| Salty Partners | 11-3393155 | 350,000 | 171,539 | 521,539 |
| Saltzman Foundation | 13-6142471 | 950,000 | 289,869 | 1,239,869 |
| Chloe Saltzman 80 Tr | 13-6784918 | 120,000 | 48,531 | 168,531 |
| Chloe Saltzman 81 Tr | 13-6792574 | 60,000 | 24,373 | 84,373 |
| | | 8,950,000 | 4,202,720 | 13,152,720 |

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 26, 2009

Black River Associates LP
350 Fifth Avenue
Suite 7404
New York, NY 10118

Dear Black River Associates LP:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM795designated as Claim Number 006048:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $8,966,598.45, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Your **ALLOWED CLAIM** of $8,966,598.45 will be satisfied in the following manner:

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $500,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. In addition, you will be entitled to receive an additional distribution based upon your **ALLOWED CLAIM** from the fund of customer property, if any.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, <u>Rosenman Family. LLC v. Picard</u>, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. <u>In re Adler Coleman Clearing Corp. (Adler Coleman II)</u>, 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); <u>see also</u> 15 U.S.C. § 78*lll*(4). Accordingly, Customers, as defined by SIPA § 78*lll*(2), enjoy a preferred status and are afforded special protections under SIPA. <u>See New Times Securities</u>, 463 F.3d at 127; <u>Adler Coleman</u>, 195 B.R. at 269."

<u>Id</u>. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you <u>MUST</u> file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 26, 2009, the date on which the Trustee mailed this notice.

2

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:    David Belkin
       420 Lexington Ave, Suite 501
       New York, NY 10170

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff-Applicant,

          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

          Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

---

## PARTIAL ASSIGNMENT AND RELEASE

    **KNOW ALL MEN BY THESE PRESENTS,** that Black River Associates LP, located

at 350 Fifth Avenue, Suite 7404, New York, NY 10118 (hereinafter referred to as the

"Assignor") in consideration of the payment of $500,000.00 to satisfy in part its claim for

customer protection (the "Customer Claim", having been designated Claim #006048) filed in the

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the

Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-

2(d), and §78fff-3(a)(1) of SIPA), does for itself hereby assign, transfer and set over to Irving H.

Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of

SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of

its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim

(see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that

Assignor now may have against BLMIS and/or any third party arising out of or relating to any

fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1CM795,

the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by

Assignor against BLMIS. Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated October 26, 2009, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for itself, and for its executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, their officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor

2

now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Should a final and unappealable Court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order. The payment of the undisputed amount of the Assignor's Customer Claim (up to the limits of SIPA protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

The undersigned acknowledges that he is authorized to execute this Partial Assignment and Release on behalf of Black River Associates LP.

**IN WITNESS WHEREOF**, the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

*EES    Without prejudice to any claims that the beneficial owners of the funds invested with BLMIS under Black River Associates' name may elect to make for consumer protection and payments pursuant to SIPA, bankruptcy protection or other avenues.*

**BLACK RIVER ASSOCIATES LP**

By: _Eric S. (signature)_

Name: Eric Salzman

Title: General Partner

Sworn and subscribed before me this
13th day of November , 2009.

_(signature)_
Notary Public

Maria Montgomery
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires Sept. 23, 2016

4



| Invoice Number | Invoice Date | Account Number | Page |
|---|---|---|---|
| 9-420-57132 | Dec 03, 2009 | None | 4 of 4 |

## FedEx Express Shipment Detail By Payor Type (Rebill)

**Dropped off: Nov 16, 2009**
**Payer: Shipper**

**Cust. Ref:** NO REFERENCE INFORMATION    **Ref #2:**
**Ref #3:**

* This charge was initially billed to a different payer who has requested this charge be billed to your account.
* Fuel Surcharge - FedEx has applied a fuel surcharge of 6.00% to this shipment.
* Distance Based Pricing, Zone 7
* Package sent from: 02155 zip code

| | | | |
|---|---|---|---|
| Automation | USAB | **Sender** | **Recipient** |
| Tracking ID | 858005407965 | ERIC SALTZMAN | IRVING H PICARD ESQ |
| Service Type | FedEx Priority Overnight | BLACK RIVER ASSOCIATES | CLAIMS PROCESSING CENTER |
| Package Type | FedEx Envelope | 350 5TH AVE STE 7404 | 2100 MCKINNEY AVE STE 800 |
| Zone | 07 | NEW YORK NY 10118-6710 US | DALLAS TX 75201 US |
| Packages | 1. | | |
| Rated Weight | N/A | | |
| Delivered | Nov 17, 2009 10:07 | Transportation Charge | 25.55 |
| Svc Area | A1 | Fuel Surcharge | 1.53 |
| Signed by | H.FORRESTER | Rebill Fee | 10.00 |
| FedEx Use | 000000000/0000241/_ | **Total Charge**        USD | **$37.08** |

| | | |
|---|---|---|
| **Shipper Subtotal** | **USD** | **$37.08** |
| **Total FedEx Express** | **USD** | **$37.08** |

*Proof of Delivery for Picard*