Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

Hearing Date: May 5, 2010
Hearing Time: 10:00 am
Objection Deadline: April 28, 2010

*Attorneys for Irving H. Picard, Esq. Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (BRL) |
| Plaintiff-Applicant, | |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## THIRD APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard as trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff" and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits its third application (the "Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act, 15 U.S.C. 78eee(b)(5),[1] sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (the "Compensation Order") [Docket No. 126], allowing and awarding interim compensation for services performed by B&H for the period commencing October 1, 2009 through and including January 31, 2010 (the "Compensation Period") in the amount of $23,884,085.25 (of which $20,301,472.46 is to be paid currently and 15%, or $3,582,612.79, is to be deferred through the conclusion of the liquidation proceeding or further order of the Court),[2] and reimbursement of B&H's actual and necessary expenses incurred during the Compensation Period in the amount of $390,204.89; and in support thereof, respectfully represents as follows:

---

[1] The Securities Investor Protection Act ("SIPA") is found at 15 U.S.C. § 78aaa et seq. For convenience, subsequent references to SIPA will omit "15 U.S.C.."

## I. PRELIMINARY STATEMENT

1.      No single document could comprehensively set forth all of the tasks

engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Literally

thousands of hours have been expended by B&H in support of the Trustee's efforts to liquidate

the estate, advance the cause of all of the customer claimants and initiate litigation and

negotiations for the return of customer property for distribution by the Trustee to customer

claimants.  Accordingly, what is set forth below is a broad overview of the work performed by

B&H in assisting the Trustee.  Additional information is provided in the Trustee's Third Interim

Report (the "Third Interim Report", which is being filed concurrently herewith) which sets forth

in greater detail the activities engaged in by the Trustee and his counsel during the course of

these proceedings.  That Report is incorporated herein.  These activities include:

2.      The Trustee, with the assistance of his counsel (including, but not limited

to, B&H, various international special counsel retained the Trustee as described in ¶ 110 of the

Third Interim Report ("International Counsel"), Windels Marx Lane & Mittendorf, LLP

("Windels Marx"), special counsel to the Trustee, and together with International Counsel and

B&H, collectively referred to herein as "Counsel"), has undertaken a comprehensive

investigation of all of the affairs of BLMIS, Bernard L. Madoff ("Madoff") and dozens of related

individuals.  This investigation remains ongoing in that the Ponzi scheme engaged in by Mr.

Madoff was not only vast in scope but long in duration and broad in its geography.   The many

layers of complex financial transactions engaged in by Mr. Madoff and his minions require

intensive investigation involving literally hundreds of subpoenas to a variety of individuals and

third parties, the analysis of the documentation received and follow up activities by the Trustee

to further investigate and then enforce the Trustee's rights to the return of customer property.  To

this end, the Trustee has engaged not only the services of Counsel but those of several

investigative outside agencies, as well as forensic accountants and legal experts (as the Trustee

may retain from time to time, including, but not limited to, AlixPartners LLP ("AlixPartners"),

the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the Trustee's forensic

consultant and Renaissance Associates, Ltd. ("Renaissance"), an investigative consultant, and

together, collectively referred to herein as "Consultants").  The investigation is ongoing and will

be engaged in for a number of years in order to fully understand the scope and depth of the fraud

perpetrated by Mr. Madoff.  This undertaking will not be at the expense of recoveries of

customer property available for distribution to customers with allowed claims.

        3.      The Trustee has received 16,312 claims from customers covering a wide

spectrum of the individuals and entities who lost money by virtue of their involvement with

BLMIS.  These customer claims include those individuals who had active accounts with BLMIS

at the time of its demise, as well as those customers who suffered over the course of the years at

the hands of Mr. Madoff.  In addition, there are the thousands of individuals who indirectly

invested in BLMIS through various feeder funds and other entities who have filed claims against

the BLMIS estate as a result of those investments.  From the very beginning of this proceeding,

the Trustee and B&H, together with the Trustee's Consultants, have been processing each of the

customer claims for the purpose of evaluating those claims, allowing those that have a positive

net equity balance, disallowing those not entitled to the coverage SIPA and investigating the

balance.  Given the duration and complexity of the fraud engaged in here, each of these accounts

has a history of its own going back many years and involving multiple transfers in many

instances, thereby requiring the Trustee to engage in extensive forensic analysis in order to reach

an ultimate determination.  The Trustee is required by statute to look at all the books and records

of the debtor in order to determine and evaluate each customer claim.  As of January 31, 2010,

2010, the Trustee had determined 11,861 customer claims and committed to pay approximately $629 million in SIPC advances. The allowed claims totaled over $4.55 billion. The Trustee's efforts in determining and satisfying claims are ongoing.

4.     In addition, the Trustee and B&H implemented a Hardship Program, which allows customers suffering from the worst financial circumstances to apply to a streamlined program aimed at getting out advances provided by SIPC in a timely manner to those customers who qualify. As of January 31, 2010, the Trustee had received 317 Hardship Program applications and approved 207. Most of the remaining Hardship applications were ineligible for the program, either because the account had a negative net equity (meaning the investor had withdrawn more than they had deposited) or the application was from a third-party investor. As of January 31, 2010, 212 of the claims relating to the Hardship Applications have been determined, 2 have been partially determined and 103 claims have not been determined. The accounts that have not yet been determined are under various stages of review.

5.     As a result of the investigative efforts of the Trustee, he has initiated litigation against individuals and feeder funds, most of which are well known to the public through the press and other media. The Trustee is also engaged in settlement negotiations with a number of parties, including customers against whom the Trustee has preference actions, which could result in large recoveries for the benefit of customers without the time and expense of litigation. The Trustee is seeking the return of billions of dollars to the estate of BLMIS for the ultimate distribution of those funds to customers with allowed claims who were victims of the fraud perpetrated by Mr. Madoff and others. As with all complex litigation involving sums of this nature, the issues involved are complex, the discovery is wide ranging and deep and the litigation itself is hotly contested. All of this leads to enormous effort by the Trustee and his

Counsel in prosecuting these litigations to a successful conclusion for the benefit of the victims. As a result of these efforts, the Trustee has already had a degree of success in returning hundreds of millions of dollars to the estate by virtue of settlements that he is engaged in with a number of parties. Those efforts are ongoing and will continue throughout the course of the liquidation proceeding. It is the Trustee's purpose to recover all of the dollars that are available to him for the benefit of customers with allowed claims by way of settlement or litigation.

6.     To date, the Trustee has filed fourteen (14) avoidance actions seeking to recover over $14.8 billion in funds from various feeders funds, Madoff friends and family members and other Madoff-related parties. The Trustee anticipates that he will file extensive additional litigation based on investigations being conducted by the Trustee's Counsel and Consultants. Because of these efforts being made by the Trustee and his Counsel, as of January 31, 2010, $1,206,605,906.67 has been recovered for the benefit of the customers.[3]

7.     The international arena is one in which BLMIS and its investors played a significant role. As is set forth in the Third Interim Report, the Trustee is engaged in a litigation in Europe, Gibraltar, Canada and throughout the Caribbean including Bermuda, the Cayman Islands and the British Virgin Islands. He has retained counsel in all of these jurisdictions for the purpose of preserving and protecting customer funds that are being held in those countries, and for the ultimate purpose of having those funds returned to him for distribution to the victims of BLMIS and Mr. Madoff. These international relationships involve both feeder funds, as well as international banking institutions through a variety of complex transactions which are being untangled by the Trustee and his staff with the assistance of his Counsel here in the United States and in each of the foreign jurisdictions. Each of these international matters represents millions of

---

[3] This number for recoveries is as of the end of the Compensation Period. As of March 31, 2010, the Trustee has recoovered approximately $1.5 billion for the benefit of customers.

dollars in funds that were diverted wrongfully from the estate of BLMIS, and which the Trustee

is seeking to return.  This requires an extensive legal effort on the part of the Trustee and he has

committed the resources of his Counsel and Consultants for the purpose of achieving the best

outcome for victims.

8.     In support of all of the foregoing efforts, there are daily tasks that must be

engaged in to further the investigation, the customer claims process and the litigation.  For all of

these efforts the Trustee requires the support of Counsel and Consultants.  Indeed, the general

categories described above do not comprehensively describe all of the other work engaged in by

the Trustee, his Counsel and Consultants in support of the liquidation proceeding.  As noted

above, the details associated with these endeavors are set forth in greater detail in the Trustee's

Third Interim Report to which the reader is referred.

9.     During the Compensation Period, the Trustee, his Counsel and

Consultants have met extraordinary challenges in their continuing efforts to pursue assets and

benefit the customers of BLMIS.  The following discussion and the materials attached to this

Application cover the major categories of services for which allowance of compensation is

sought by B&H.

## II. <u>BACKGROUND</u>

10.     BLMIS was founded by Madoff in 1960 and engaged in three primary

types of business: market making, proprietary trading and investment advisory services.  BLMIS

was registered with the SEC as a broker-dealer and beginning in 2006 as an investment adviser.

Pursuant to such registration as a broker-dealer, BLMIS was a member of SIPC.

11.     On December 11, 2008, Madoff was arrested by the FBI in his Manhattan

home and was criminally charged with a multi-billion dollar securities fraud scheme in violation

of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the

Southern District of New York ("District Court"), captioned <u>USA v. Madoff</u> (No. 08-2735).

That case number was terminated on March 10, 2009, and a new case <u>USA v. Madoff</u> (No. 09

CR 213) was opened and assigned to District Court Judge Denny Chin (the "Criminal Case").

12.     Also on December 11, 2008 (the "Filing Date" for the SIPA liquidation

proceeding),[4] the SEC filed a complaint in the District Court against defendants Madoff and

BLMIS, captioned <u>Securities and Exchange Commision v. Madoff, et al.</u> (No. 08 CV 10791) (the

"Civil Case").  The complaint alleged that the defendants engaged in fraud through the

investment advisor (or "IA") activities of BLMIS.

13.     On December 12, 2008, based on allegations brought by the SEC against

Madoff and BLMIS in the Civil Case, the Honorable Louis L. Stanton of the District Court

entered an order which appointed Lee S. Richards, Esq., as receiver (the "Receiver") for BLMIS.

14.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the

SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter,

pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging,

<u>inter</u> <u>alia</u>, that the Debtor was not able to meet its obligations to securities customers as they

came due and, accordingly, its customers needed the protection afforded by SIPA.

15.     On that date, the District Court entered the order (the "Protective Decree")

[District Court Docket No. 4], to which BLMIS consented, which, in pertinent part:

a.      appointed the Trustee for the liquidation of the business of the Debtor pursuant to
        section 78eee(b)(3) of SIPA, therefore, effectively replacing the Receiver as to
        BLMIS;

---

[4] Section 78*lll*(7) of SIPA states that the filing date for a SIPA liquidation is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except, under subparagraph (B), where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced."  Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

b.      appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.      removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") pursuant to section 78eee(b)(4) of SIPA.[5]

16.     On February 4, 2009, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee [Docket No. 69], finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

### III. COUNSEL'S EXPERIENCE

17.     B&H has been engaged in the general practice of law since 1916, and has substantial expertise in such areas as white collar investigation and defense, corporate finance and securities, examinerships, insolvency and creditors rights and commercial and securities litigation.

18.     The Trustee, a member of B&H, and an attorney admitted to practice before this Court, has supervised a significant portion of the legal services for which compensation is sought herein.  He has an extensive background in the fields of bankruptcy and securities, including SIPA liquidations, all as set forth more fully in the Trustee's Third Interim Fee Application ("Trustee Fee Application"), which is being filed contemporaneously herewith.

### IV. SUMMARY OF SERVICES

19.     The services rendered by B&H during the four (4) month Compensation Period are described below.  In rendering professional services to the Trustee in this SIPA

---

[5] Pursuant to section 78fff(b) of SIPA, "[t]o the extent consistent with [SIPA], [this] liquidation proceeding [is] be[ing] conducted in accordance with, and as though it [is] being conducted under chapter 1, 3, 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."

proceeding, B&H's legal team has been composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law and litigation. B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to maximize efficiency and avoid any duplication of effort.

20.    B&H does not wish to burden the Court with an overly detailed recitation of each and every matter with respect to which it has rendered services during the Compensation Period. Accordingly, this Application is intended to serve as a summary description of the significant services rendered by B&H, and to highlight the benefits which have been conferred upon SIPC, customers and creditors of the Debtor's estate as a result of B&H's efforts. The following section provides an overview of the services rendered by B&H during the Compensation Period by the matter numbers and task codes in use during the Compensation Period.[6]

21.    The Court is also respectfully referred to the Trustee's Third Interim Report being filed concurrently herewith for further detail regarding the administration of the estate, the investigation into the Debtor, Madoff and related parties, and other progress made by the Trustee and B&H during and subsequent to the Compensation Period (but as a result of investigative efforts during the Compensation Period).

---

[6] Beginning on January 1, 2009, B&H implemented five (5) task codes for specific categories of work to permit a more detailed analysis of the fees incurred. As the case has evolved, B&H has added additional task codes and opened separate matter numbers to ensure that work on a specific issue or matter is billed to the same task code or matter.

**MATTER 01 – COUNSEL TO THE TRUSTEE** (39,085.7 hours)

A.    **Trustee Investigation – Task Code 01** (15,704.5 hours)[7]

22.    This category relates to time spent with respect to the investigation into BLMIS, Madoff and various assets, including meetings, correspondence and cooperative efforts with the SIPC, AlixPartners, FTI, Windels Marx, the Joint Liquidators ("JLs") investigating the Madoff U.K. entity, Madoff Securities International Ltd. ("MSIL"), and the various government agencies involved with the on-going investigation.  B&H expended a substantial amount of time in this task code during the Compensation Period.  As further described in ¶ 24 *infra*, as a result of these efforts, to date the Trustee has filed a total of fourteen (14) avoidance actions against feeder funds, Madoff family members, Madoff friends and other Madoff-related insiders for the return of customer property.

23.    Included in this category of services by B&H were the following:

- Investigation of banks, feeder funds, insiders, Madoff friends and family members, former BLMIS employees and other Madoff-related parties.

- The initiation of, participation in, and/or monitoring of over 260 pending and 81 potential international third-party proceedings and over 175 domestic third-party proceedings involving Madoff and/or BLMIS.

- Coordinating efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), and many other local, federal and international officials involved in this investigation.

---

[7] B&H opens additional task codes and/or matter numbers for separate task or matters on a rolling basis as needed. One new task code (Charities – 15) and one new matter number (21 – Avoidance Action Investigation/Litigation) were not opened until well into the Compensation Period.  Consequently, hundreds of hours that were spent by B&H attorneys and other professionals on these matters were billed to Task Code 01.

- Communications with the Trustee, SIPC, Windels Marx, JPLs, AlixPartners and FTI regarding: the IA accounts and records of the transactions, business investments and ventures between the potential insiders and BLMIS, Madoff and Madoff family members and discovery from third parties.

- Obtaining copies of records seized by the FBI, SEC and other information from USAO and securities regulators and review of same.

- Review of account information and statements of BLMIS IA customers.

- Review BLMIS employee interviews.

- Drafting and issuing of hundreds of inquiry letters and subpoenas to potentially related third-parties concerning BLMIS litigation; organizing and reviewing documents sent in response to such inquiries and subpoenas.

- Discussions and conferences regarding investigation and litigation strategy, both internally and with SIPC, Windels Marx, JPLs, International Counsel and various government entities.

B.    **Bankruptcy Court Litigation – Task Code 02** (3,400.3 hours)

24.    This category relates to time spent with respect to legal research, drafting and filing various motions and pleadings, relating to the 14 pending avoidance actions against feeder funds, and Madoff friends and family members, for the return of more than $14.6 billion to the estate for the benefit of customers, as well as defense against certain adversary proceedings in the Bankruptcy Court.  Included in this category of services by B&H were the following:

- Appeals relating to adversary proceedings brought against the Trustee, including a class action complaint and a separate complaint brought on behalf of certain customers against

the Trustee relating to "customer" status and definition of "net equity" under SIPA, motions to intervene, and objections to prior fee applications.

- Preparation and revision of the Trustee's brief and reply brief regarding the net equity issue; review of briefs filed by all parties and interested parties regarding net equity; attendance at Court and internal discussions regarding the briefs filed.

- Entry of application to retain International Counsel in Canada to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

- Hearing on second fee applications of B&H, Trustee and International Counsel and defense of such applications.

- As further described below, draft and file various draft complaints, motions, pleadings, proposed orders and other documents to be submitted to the Bankruptcy Court in connection with all on-going avoidance actions, including amended complaints, responses to defendants' answers to such complaints, motions to dismiss, scheduling orders, and various other motions, pleadings and stipulations relating to such avoidance actions.

- Discussions with Windels Marx regarding the preparation of chapter 11 filing of BLM Air Charter and involvement in on-going case.

- Discussions with Trustee and AlixPartners regarding chapter 11 filing of data management vendor retained by the Trustee to maintain data collected at BLMIS.

- Approval of termination and liquidation of BLMIS 401k plan.

C.    **Feeder Funds – Task Code 03**  (5,240.1 hours)

25.    The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds, in the U.S. and abroad, and bring actions against such funds

for the recovery of estate assets where possible.  This category relates to their efforts during the Compensation Period.  Many of the funds are still under investigation.  For further discussion, please see ¶¶ 40-77 *infra*.

D.      **Asset Research and Sale – Task Code 04** (367.5 hours)

26.      This category relates to time spent with respect to discovery of, recovery of and liquidation of various assets for the benefit of the estate.  Included in this category of services by B&H were the following:

- Discussions with JLs, Windels Marx and USAO regarding Madoff personal assets and status of efforts to sell.

- Review claims and affidavits for filing in connection with the settlement of various class actions involving securities owned by BLMIS in its market making and trading capacities; and conferences with AlixPartners related to same.

- Liquidation of certain loan participations owned by BLMIS.

E.      **Internal Meetings with Staff – Task Code 05** (1,570.7 hours)

27.      This category relates to internal B&H meetings related to the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.

F.      **Customer Claims – Task Code 06**

28.      This task code is no longer in use.  A separate matter number was opened for work related to customer claims on June 3, 2009, and B&H attorneys and paraprofessionals began to bill to such matter number.  *See* ¶¶ 45-47 *infra* for a discussion of this time.

G.      **Billing – Task Code 07** (412.0 hours)

29.      In addition to preparation of this Application, this section relates to the time spent by attorneys and paraprofessionals in reviewing the monthly B&H billing statements

prior to submission to SIPC to ensure that time was properly billed by B&H, to correct any errors in time entries and to write off certain time and expenses as agreed to by B&H for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly invoice.  This section also relates to time spent preparing and reviewing the fee applications of the Trustee and various International Counsel.

H.    **Case Administration – Task Code 08** (1,771.7 hours)

30.    This category is for time expended by B&H in assisting the Trustee in the wind-down of the Debtor's business and other administrative matters, including:

- Review of mail forwarded by AlixPartners that was received at the BLMIS offices; discuss with Trustee and prepare appropriate responses.

- Assisting the Trustee in responding to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the U.S. Department of Labor, Internal Revenue Service, U.S. Securities and Exchange Commission ("SEC") and New York State Department of Tax & Finance.

- Consult with AlixPartners regarding various employee and benefits related issues, including preparation of income tax information for former BLMIS employees, correspondence with administrators of payroll, 401(k), healthcare and other benefit plans, and wind-down and termination of BLMIS 401(k) plan.

- Retention of additional consultants, expert witnesses, international counsel and other advisors.

- Preparation of income tax return for estate and discuss with Trustee and AlixPartners.

- Discussions with AlixPartners and the Trustee regarding outstanding issues with vendors of the BLMIS estate, the return of leased equipment located at BLMIS

offices and the negotiating and resolution of outstanding estate obligations.

I.      **Banks – Task Code 09** (2,901.1 hours)

31.      During the Compensation Period, and primarily as a result of international

and domestic feeder fund investigations, the Trustee has identified and commenced

investigations of numerous banks and other financial institutions involved with various feeder

funds and BLMIS.  The Trustee's investigation of these banks is continuing.  The time in this

category relates to time spent developing investigation teams, identifying certain banks as

targets, investigation into the various capacities of such banks and the roll they may have played

in Madoff's Ponzi scheme, preparing letters of inquiry and subpoenas, and reviewing responses

to such letters and subpoenas received from such banks and from other third parties.

J.      **Court Appearances – Task Code 10** (9.1 hours)[8]

32.      This category relates to time spent by B&H attorneys making court

appearances for the events described in section B above, as well as court appearances in the

District Court for various appeals of litigation initiated in the Bankruptcy Court.

K.      **Press Inquiries and Responses – Task Code 11** (24.2 hours)

33.      This section relates to time spent by B&H attorneys assisting the Trustee

in responding to press inquiries, preparing and issuing press releases, and preparing for and

holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of

funds.

L.      **Document Review – Task Code 12** (5,150.4 hours)

34.      The time in this task code relates to time spent by B&H and other contract

attorneys conducting the ongoing review of 1.4 million emails captured from the Debtor's

---

[8] Many attorneys bill their time for court appearances to Task Code 02 – Bankruptcy Court litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

computer server and more than 1,500 other sources of electronically stored information, and of approximately seven thousand boxes of BLMIS's paper documents recovered from the Debtor's office and warehouse locations.

35.    In addition, B&H attorneys have accumulated, prepared for review, and begun review of documents received from more than 150 parties in response to letters and subpoenas and received from other third parties.

M.    **Discovery - Depositions and Document Productions by the Trustee – Task Code 13** (381.5 hours)

36.    This task code relates to time spent by B&H attorneys conducting depositions and responding to discovery requests issued by various opposing and third parties involved in the ongoing litigations.

N.    **International – Task Code 14** (1,838.8 hours)

37.    The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in no fewer than eleven different jurisdictions including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain.  These investigations, which are comprised of a combination of voluntary requests for information and the use of subpoena power, both in the U.S. and abroad, have focused primarily on international feeder funds, banks, related financial services entities and certain individuals.  Time in this category relates to this ongoing investigation, the preparation and service of no fewer than seventy (70) subpoenas against more than sixty (60) entities in twenty (20) jurisdictions, and the communication with International Counsel to utilize local laws to obtain necessary discovery.  The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery by U.S. entities.

17

O.    **Charities – Task Code 15** (313.8 hours)

38.    Time in this task code relates to time spend by B&H attorneys and the

Trustee's Consultants reviewing financial documents and conducting due diligence concerning

charitable accounts held at BLMIS, and corresponding with and meeting with representatives

from charities that held accounts at BLMIS to obtain information concerning payments to those

charities made from their BLMIS accounts.  These discussions are on-going.

### MATTER 02 – TRUSTEE TIME

39.    This matter number is reserved for billing of time spent by the Trustee.

See the Trustee Fee Application for a summary of this time.

### MATTER 03 – CHAIS (1,553.2 hours)

40.    Time in this matter relates to all time spent by B&H attorneys on work

relating to the avoidance action against Stanley Chais, Pamela Chais and a number of related

entities (collectively, the "Chais Defendants") seeking return of more then $1.1 billion based on

causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act,

and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and

damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Chais Defendants.  The action was filed on May 1, 2009.  In October of 2009, the Trustee and

his counsel negotiated an asset freeze with the Chais Defendants.  Certain of the Chais

Defendants have moved to dismiss the complaint.

41.    Such time includes: negotiation of the asset freeze with counsel for the

Chais Defendants and court appearances approving same; conducting legal research; review of

documents related to the Chais Defendants; drafting of pleadings, motions and other related

documents to be filed with the Bankruptcy Court, including a motion to dismiss counterclaims

filed by the Chais Defendants and responses to the various motions to dismiss the complaint;

drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for the Chais Defendants; and all other time related to the Chais litigation.

### **MATTER 04 – MERKIN** (1,528.8 hours)

42.     Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (the "Merkin Funds") and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking return of more then $557 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants.  The action was filed on May 7, 2009.  An amended complaint was filed on August 6, 2009.

43.     In the summer of 2009, pursuant to an action commenced by the New York State Attorney General ("NYAG") in the Supreme Court of New York, receivers were appointed over each of the Merkin Funds.  The receivers for the Merkin Defendants filed motions to dismiss the amended complaint on September 4, 2009.  On November 2, 2009 the Trustee filed his opposition to the motions to dismiss.  With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009, adding counts to Merkin's personal liability for obligations of the partnerships.

44.     Such time includes: conducting legal research; discussions with the NYAG related to the Merkin Defendants; drafting and filing of the second amended complaint; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court, including responses to the motions to dismiss; drafting of internal memoranda; internal

19

meetings with B&H attorneys and  FTI regarding investigation and litigation strategy;

communications with counsel for the Merkin Defendants and the receivers appointed for the

Merkin Funds; and all other time related to the Merkin litigation.

### **MATTER 05 – CUSTOMER CLAIMS** (12,412.4 hours)

45.     This category is for time expended by B&H with respect to customer

claims.  B&H expended a considerable amount of time in this category, as significant progress

was made during the Compensation Period with respect to Customer Claims.  The mandatory

six-month statutory bar date expired on July 2, 2009.  As of January 31, 2010, the Trustee had

received 16,312 customer claims, including those filed both timely and untimely, and duplicate

and supplemental claims.  As of January 31, 2010, the Trustee had determined 11,861 claims.

Out of those determined, the Trustee allowed 1,871 claims and committed to pay approximately

$629 million in cash advances made by SIPC; the amount by which the allowed claims exceeded

the statutory limits of SIPC protection (or "over-the-limit claims") was approximately $4.55

billion.[9]  The receipt (of late-filed claims) and review of customer claims is on a continuing

basis.

46.     Time in this category also relates to settlement negotiations between the

Trustee and customers against whom the Trustee has a preference action – the customer

withdrew money from a BLMIS account in the ninety (90) days prior to the Filing Date.  As of

January 31, 2010, the Trustee has successfully recovered $25,425,716.65 from the settlement of

preferences for the benefit of customers.[10]

---

[9] As noted above, additional progress has been made in the determination of customer claims since the conclusion of
the Compensation Period.  As of March 31, 2010, the Trustee had determined 12,249  customer claims, and allowed
2,011 of those claims, for a total of $5,310,849,986.29, which have been or will be paid with approximately $668
million in SIPC advances and will result in $4,642,747,785.97 of over-the-limits claims.

[10] As of March 31, 2010, the Trustee has recovered a combined total $31,367,888.29 from the settlement of
customer preferences.

47.    Included in this category of services by B&H were the following:

- Continuing of the Trustee's Hardship Program; review of Hardship Applications; regular communications with the Trustee, SIPC and AlixPartners regarding the review and determination of Hardship applicants.

- Ongoing review of submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Assisting the Trustee in making determinations regarding customer claims; advising customers and/or their representatives of conclusions reached regarding allowance or denial of their respective claims; preparation of the Trustee's determination letters and assignment and release forms for execution by customers.

- Ongoing training B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

- Review of accounts of customers who had both "Net Winner" and "Net Loser" accounts and communications actions such customers or their representatives regarding possible settlement no such accounts.

- Regular communications with the Trustee, SIPC and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts and other matters of interest in determining claims.

- Review of and regular communications with the Trustee, SIPC, and counsel for various customers who have filed actions regarding customer claims, the "net equity" definition and other issues, and discussion with the SEC and various members of Congress regarding the same.

- Review of and regular communications with the Trustee, SIPC and counsel for various customers who have filed objections to the Trustee's determination of their claim. As of January 31, 2010, approximately 2,300 objection have been filed with the Bankruptcy Court.[11]

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, status of claims review and other matters of concern to customers.

- Review schedules of information prepared by AlixPartners; preparation of additional reports for the Trustee and SIPC.

**MATTER 06 – VIZCAYA** (410.5 hours)

48. Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra", and together with Vizcaya, the "Vizcaya Defendants"), seeking return of $150,000,000 based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

49. Time in this matter includes: conducting legal research; review of documents related to the Vizcaya Defendants; drafting of discovery requests; drafting and review of pleadings, motions and other related documents to be filed with the Bankruptcy Court and in the Gibraltar Supreme Court; drafting of internal memoranda; internal meetings with B&H attorneys, the Trustee's counsel in Gibraltar and FTI regarding investigation and litigation

---

[11] As of March 31, 2010, a total of 2,619 objections to the Trustee's determination of claims have been filed in the Bankruptcy Court by customers of BLMIS.

strategy; correspondence with counsel in Gibraltar regarding the Judicial Review Action; communications with counsel for the Vizcaya Defendants; and all other time related to the Vizcaya litigation.

### MATTER 07 – MADOFF FAMILY (1,447.4 hours)

50.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (the "Family Defendants") seeking the return of nearly $200 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

51.    On February 5, 2010 (subsequent to the Compensation Period), the Bankruptcy Court signed consent orders restricting each of each of Peter, Mark, Andrew, and Shana's ability to transfer or dispose of any of their assets, and requiring each of them to provided the Trustee with financial disclosures listing all of their significant assets.

52.    Such time includes: conducting legal research; review of documents related to the Family Defendants; drafting of discovery requests; issuance of Rule 2004 subpoenas to the Family Defendants and third parties; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court; negotiation of the consent to restriction on use of assets and the financial disclosures with counsel for the Family Defendants; drafting of internal memoranda; internal meetings with B&H attorneys and FTI regarding investigation and litigation strategy; communications with counsel for the Family Defendants; and all other time related to the Family Defendants litigation.

### MATTER 08 – NORMAN LEVY (157.9 hours)

53.    Time in this matter relates to all time spent by B&H attorneys relating to
the negotiation of, filing of and Court approval of the settlement agreement that was ultimately
reached with the family of Norman L. Levy for the return of $220 million to the estate for the
benefit of customers.

### MATTER 09 – FAIRFIELD GREENWICH (2,627.1 hours)

54.    Time in this matter relates to all time spent by B&H attorneys on work
relating to the avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited,
L.P., and Greenwich Sentry Partners, L.P., (collectively, "the Fairfield Defendants") seeking
return of approximately $3.5 billion based on causes of action under SIPA, the Bankruptcy Code,
the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting,
preferences, fraudulent conveyances and damages in connection with certain transfers of
property by BLMIS to or for the benefit of the Fairfield Defendants.  The action was filed on
May 18, 2009.  No answers or motions have been filed in the adversary proceeding to date.

55.    Such time includes: conducting legal research; review of documents
related to the Fairfield Defendants; drafting of pleadings and other related documents to be filed
with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H
attorneys and FTI regarding investigation and litigation strategy; communications with counsel
for the principals of the Fairfield Defendants and the liquidators who have been appointed to
liquidate the Fairfield Defendants; and all other time related to the Fairfield litigation.

### MATTER 10 – HARLEY (106.4 hours)

56.    Time in this matter relates to all time spent by B&H attorneys on work relating to
the avoidance action against Harley International (Cayman) Limited ("Harley"), seeking return

of approximately $1.1 billion based on causes of action under SIPA, the Bankruptcy Code, the
New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting,
preferences, fraudulent conveyances and damages in connection with certain transfers of
property by BLMIS to or for the benefit of Harley.  The action was filed on May 12, 2009.  As
Harley failed to answer the complaint, a default was entered against Harley on July 8, 2009 by
the Bankruptcy Court.   On January 21, 2010, leave was granted by the Grand Court of the
Cayman Islands, Financial Services Division to the Trustee to proceed with an action against
Harley in the Cayman Islands.

      57.     Such time includes: conducting legal research; review of documents
related to Harley; drafting of internal memoranda; internal meetings with B&H attorneys, FTI
and International Counsel regarding investigation and litigation strategy in the U.S. and in the
Cayman Islands; communications with counsel for Harley; and all other time related to the
Harley litigation.

**MATTER 11 – COHMAD SECURITIES CORPORATION** (1,058.9 hours)

      58.     Time in this matter relates to all time spent by B&H attorneys on work
relating to the avoidance action against Cohmad Securities Corporation ("Cohmad"), the
principals and certain employees of Cohmad and their family members who held BLMIS IA
accounts (collectively, the "Cohmad Defendants") seeking return of over $132 million based on
causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act,
and other applicable law, for turnover, accounting, preferences, fraudulent conveyances,
disallowance of any claims filed against the estate by the Cohmad Defendants and damages in
connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad
Defendants.  The action was filed on June 22, 2009.  An amended complaint was filed on

October 8, 2009 and various defendants filed motions to dismiss.  The Trustee filed an omnibus

opposition to the motions to dismiss on March 1, 2010 (subsequent to the Compensation Period).

59.     Such time includes: conducting legal research; review of documents

related to the Cohmad Defendants; negotiation of a briefing schedule with counsel for all

Cohmad Defendants; preparation of omnibus opposition to motions to dismiss; negotiation of a

stipulation to withdraw the counter-claim of defendant Gloria Kurzrok; drafting of internal

memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners

regarding investigation and litigation strategy; communications with counsel for the Cohmad

Defendants; and all other time related to the Cohmad litigation.

### **MATTER 12 – PICOWER** (458.7 hours)

60.     Time in this matter relates to all time spent by B&H attorneys on work

relating to the avoidance action against Jeffry M. Picower and Barbara Picower, both

individually and as trustee for various foundations, and other various Picower entities

(collectively, "the Picower Defendants") seeking return of approximately $7.2 billion based on

causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act,

and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and

damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Picower Defendants.  The action was filed on May 12, 2009.  On October 25, 2009, Mr. Picower

was found dead in the swimming pool of his home in Florida.

61.     Such time includes: conducting legal research; review of documents

related to the Picower Defendants; drafting of discovery requests; drafting of pleadings, motions

and other related documents to be filed with the Bankruptcy Court; drafting of internal

memoranda; internal meetings with B&H attorneys and FTI regarding investigation and

litigation strategy; communications with counsel for the Picower Defendants; and all other time related to the Picower litigation.

## MATTER 13 – KINGATE (650.9 hours)

62.     Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (the "Kingate Defendants"), seeking return of $395 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.  An amended complaint was filed on May 8, 2008, also naming Bank of Bermuda Limited as a defendant.  A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

63.     The Kingate Defendants are currently in liquidation in the British Virgin Islands ("BVI") and the BVI court has appointed liquidators to manage the Kingate Defendants.

64.     Time in this matter includes: conducting legal research; review of documents related to the Kingate Defendants; drafting and review of pleadings, motions and other related documents to be filed with the Bankruptcy Court; drafting of internal memoranda; internal meetings with B&H attorneys, the Trustee's counsel in BVI and FTI regarding investigation and litigation strategy; correspondence with counsel in BVI regarding the liquidation proceedings and related litigation in BVI and Bermuda; communications with counsel for the Bank of Bermuda and the BVI court-appointed liquidators, including settlement communications; and all other time related to the Kingate litigation.

## MATTER 14 – RESERVED

## MATTER 15 – HERALD (640.1 hours)

65.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Herald Fund SPC ("Herald") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $578 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Herald.  The action was filed on July 14, 2009.  An amended complaint was filed on August 14, 2009, which added an objection to Herald's SIPA claim.  A second amended complaint was filed on October 13, 2009, which dismissed certain causes of action against Herald.  Herald filed motions to dismiss the second amended complaint and the Trustee filed his opposition on November 13, 2009.

66.    Such time includes: conducting legal research; review of documents related to Herald and HSBC; drafting of pleadings, motions and other related documents to be filed with the Bankruptcy Court, including opposition to the motion to dismiss; drafting of internal memoranda; internal meetings with B&H attorneys and FTI regarding investigation and litigation strategy; communications with counsel for Herald and HSBC; and all other time related to the litigation against Herald and HSBC.

## MATTER 16 – ALPHA PRIME (179.4 hours)

67.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Alpha Prime Fund Limited, HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (the "Alpha Prime Defendants") seeking return of $86 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of Alpha Prime Defendants.  The action was filed on July 15, 2009.  Alpha Prime

failed to answer or move to dismiss before its deadline and the Clerk of the Court entered a

default against Alpha Prime on September 1, 2009.

68.    Such time includes: conducting legal research; review of documents

related to the Alpha Prime Defendants; drafting of internal memoranda; internal meetings with

B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation

strategy; communications with counsel for the Alpha Prime Defendants; and all other time

related to the litigation against the Alpha Prime Defendants.

### MATTER 17 – PRIMEO FUND (142.3 hours)

69.    Time in this matter relates to all time spent by B&H attorneys on work

relating to the avoidance action against Primeo Fund ("Primeo"), HSBC Bank PLC and HSBC

Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $145 million

based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent

conveyances and damages in connection with certain transfers of property by BLMIS to or for

the benefit of Primeo and HSBC.  The action was filed on July 15, 2009.  Primeo failed to

respond to the suit papers before its deadline and the Clerk of the Court entered a default against

Primeo on September 1, 2009.

70.    Primeo is in liquidation in the Cayman Islands.  The Trustee and the

Cayman Islands court-appointed liquidators (the "Liquidators") are in negotiations regarding a

partial settlement.

71.    Such time includes: conducting legal research; review of documents related to Primeo and HSBC; drafting of internal memoranda; internal meetings with B&H attorneys, Trustee's counsel in the Cayman Islands and FTI regarding investigation and litigation strategy; communications with counsel for the Liquidators and HSBC, including settlement negotiations; and all other time related to the litigation against the Primeo and HSBC.

## **MATTER 18 – THYBO** (60.8 hours)

72.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Thybo Asset Management Limited; Thybo Global Fund Limited; Thybo Return Fund Limited; and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants"), seeking return of approximately $63 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  The action was filed on July 15, 2009.  An amended complaint was filed on August 25, 2008, adding an objection to Thybo Stable Fund Ltd.'s SIPA claim.  Since then, the parties have been engaged in settlement discussions, which are ongoing, and have agreed to an extension of time for the Thybo Funds to respond to the amended complaint.

73.    Such time includes: conducting legal research; review of documents related to the Thybo Defendants; drafting of internal memoranda; internal meetings with B&H attorneys, and FTI regarding investigation and litigation strategy; negotiation communications with counsel for the Thybo Defendants; and all other time related to the litigation against the Thybo Defendants.

### MATTER 19 – RUTH MADOFF (107.1 hours)

74.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Ruth Madoff seeking return of approximately $44 million based on causes of action under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.  The action was filed on July 29, 2009.

75.    On July 31, 2009, the Bankruptcy Court entered an order restricting Mrs. Madoff's ability to transfer or dispose of any of her assets, and requiring her to provide monthly reports to the Trustee describing all income and expenditures.

76.    Such time includes: conducting legal research; review of documents related to Mrs. Madoff; drafting of internal memoranda; internal meetings with B&H attorneys, and consultants from FTI and AlixPartners regarding investigation and litigation strategy; communications with counsel for Mrs. Madoff, including negotiation of restriction on her use of assets; and all other time related to the litigation against Mrs. Madoff.

### MATTER 20 –CONFIDENTIAL (1,549.0 hours)

77.    This matter is currently under investigation.  Time relating to this matter is confidential as attorney work-product.

### MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION (562.7 hours)

78.    Time in this matter relates to the investigation of fictitious profits withdrawn from BLMIS customer accounts.  This investigation is on-going.

## V. <u>COMPENSATION REQUESTED</u>

79.     B&H expended 64,739.3 hours in the rendition of professional and

paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in

an average hourly rate of $409.91 for fees incurred.

80.     Prior to filing this Application, B&H provided to SIPC, in accordance

with the Compensation Order, (i) monthly fee statements setting forth B&H's fees for services

rendered and expenses incurred during the Compensation Period beginning October 1, 2009

through January 31, 2010 and (ii) a draft of this Application.  In connection with preparing each

of the four monthly statements and this Application, B&H voluntarily adjusted its fees by writing

off $164,846.50 (in addition to the 10% discount, as discussed below) and wrote off expenses in

the amount of $212,997.16 customarily charged to other clients.

81.     In addition, at SIPC's request, B&H's fees in this case reflect a 10%

public interest discount from B&H's standard rates.  This discount has resulted in an additional

voluntary reduction during the Compensation Period of $2,653,787.25.  Such fees are reasonable

based on the customary compensation charged by comparably skilled practitioners in the Chapter

11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal

market.

82.     Pursuant to the Compensation Order, on November 20, 2009, B&H

provided to SIPC its statement of fees and expenses incurred in connection with this case in

October 2009 (the "October Fee Statement").  SIPC made certain adjustments and suggestions to

the October 2009 Fee Statement, which were adopted by B&H.  After such adjustments, the

October 2009 Fee Statement reflected fees of $5,886,215.55 and expenses of $112,044.87.

Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the

amount of $5,003,283.22 for services rendered after subtracting the Court-ordered 15% holdback and $112,044.87 for expenses incurred during October 2009.

83.    Pursuant to the Compensation Order, on December 20, 2010, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in November 2009 (the "November 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the November 2009 Fee Statement, which were adopted by B&H. After such adjustments, the November 2009 Fee Statement reflected fees of $5,772,586.05 and expenses of $65,805.31. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $4,906,698.14 for services rendered after subtracting the Court-ordered 15% holdback and $65,805,31 for expenses incurred during November 2009.

84.    Pursuant to the Compensation Order, on January 19, 2010, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in December 2009 (the "December 2009 Fee Statement"). SIPC made certain adjustments and suggestions to the December 2009 Fee Statement, which were adopted by B&H. After such adjustments, the December 2009 Fee Statement reflected fees of $5,359,408.65 and expenses of $143,142.04. Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $4,555,497.35 for services rendered after subtracting the Court-ordered 15% holdback and $143,142.04 for expenses incurred during December 2009.

85.    Pursuant to the Compensation Order, on February 19, 2010, B&H provided to SIPC its statement of fees and expenses incurred in connection with this case in January 2010 (the "January 2010 Fee Statement"). SIPC made certain adjustments and suggestions to the January 2010 Fee Statement, which were adopted by B&H. After such adjustments, the January 2010 Fee Statement reflected fees of $6,865,875.00 and expenses of

$69,212.67.  Accordingly, B&H received a payment from the Trustee from funds advanced by SIPC in the amount of $5,835,993.75 for services rendered after subtracting the Court-ordered 15% holdback and $69,212.67 for expenses incurred during January 2009.

86.    There is no agreement or understanding among the Trustee, B&H and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.

87.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Compensation Order.  Pursuant to the Local Guidelines, the certification of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

88.    Exhibit B annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtors during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual and the aggregate number of hours billed by each individual and the total compensation, prior to the 10% discount, requested for each individual.  The 10% discount ($2,653,787.50, as described above) is taken off the total cumulative amount billed, as reflected on Exhibit B.

89.    Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested.  The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.  B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients including certain inter-

office travel and related expenses (lodging, meals, airfare and other transportation).  As

mentioned above, these amounts combine to a voluntary reduction of $212,997.16.

90.    Exhibit D annexed hereto is a summary of services performed by B&H

from during the Compensation Period by B&H task code and matter number.

91.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period, but were not classified or processed

prior to the preparation of this Application, the Trustee and B&H reserve the right to request

additional compensation for such services and reimbursement of such expenses in a future

application.

## VI.  B&H'S REQUEST FOR INTERIM
## COMPENSATION SHOULD BE GRANTED

92.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon

appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for

services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..."

Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with

applications for compensation and the consideration the Court should give to SIPC's

recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by
> SIPC, the court shall award the amounts recommended by SIPC.  In determining
> the amount of allowances in all other cases, the court shall give due consideration
> to the nature, extent, and value of the services rendered, and shall place
> considerable reliance on the recommendation of SIPC.

93.    To the extent the general estate is insufficient to pay such allowances as an

expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds

necessary to pay the compensation of B&H (*see* SIPA § 78fff-3(b)(2)).

35

94.     Based on the allocation process set forth in SIPA, the Trustee has determined at this time that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs in this belief of the Trustee. Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

95.     Therefore, with respect to this Application, B&H requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). B&H expects that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for December 17, 2009.

96.     B&H submits that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VII. <u>CONCLUSION</u>

B&H respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $23,884,085.25 (of which $20,301,472.46 is to be paid currently and 15%, or $3,582,612.79, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the

Compensation Period, and $390,204.89 as reimbursement of the actual and necessary costs and

expenses incurred by B&H in connection with the rendition of such services and; (ii) granting

such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        April 9, 2010

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*
        Baker & Hostetler LLP
        45 Rockefeller Plaza
        New York, NY  10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201
        David J. Sheehan
        Email: dsheehan@bakerlaw.com

        *Attorneys for Irving H. Picard, Esq. Trustee*
        *for the Substantively Consolidated SIPA*
        *Liquidation of Bernard L. Madoff*
        *Investment Securities LLC And Bernard L.*
        *Madoff*