UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. <br><br> In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | Adv. Pro. No. 08-1789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |

### APPLICATION OF ATTIAS & LEVY AS SPECIAL COUNSEL FOR THE TRUSTEE FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

Keith Azopardi, together with other members and associates at the law firm of Attias & Levy, special counsel for Irving H. Picard (the "Trustee"), Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. ("SIPA") and Bernard L. Madoff, submits this Application for Interim Allowance of Fees and Reimbursement of Expenses (the "Application") for compensation of legal fees in the amount of $195,375.60 (of which 20% is to be deferred through the conclusion of the liquidation period) and reimbursement of expenses in the amount of $7,218.52 for the period from October 1, 2009 through January 31, 2010 (the "Compensation Period"). In support of the Application, Attias & Levy respectfully submits as

1

follows:

## I. BACKGROUND

1. On December 15, 2008, Judge Stanton of the United States District Court for the Southern District of New York, upon application filed on the same date by the Securities Investor Protection Corporation ("SIPC"), entered an order (the "Decree Order") calling for the liquidation of the business of the Debtor in accordance with SIPA and by Paragraph II of the Decree Order, the Trustee was appointed as the trustee for the liquidation of the Debtor's business.

2. The Debtor's liquidation proceeding was removed to this Court pursuant to SIPA § 78eee(b)(4), and, to the extent consistent with the provisions of SIPA, is being conducted as though it were a case under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to SIPA § 78fff(b).

3. Beginning on March 13, 2009, Attias & Levy has served as special counsel for the Trustee.

4. On April 7, 2009, this Court entered an order approving the Trustee's motion for authority to retain Attias & Levy as special counsel to the Trustee in matters pertaining to Gibraltar.

5. The Trustee's motion to retain Attias & Levy established a fee arrangement pursuant to which Attias & Levy agreed to a fee reduction in the amount of 10% as well as an additional holdback of fees in the amount of 20%.

## II. SERVICES RENDERED BY ATTIAS & LEVY

6. The legal services performed on behalf of the Trustee during the time period covered by this Application are as follows:

7. There are five related Gibraltar actions in which Attias & Levy has been involved, namely:

2

(a) judicial review brought by Vizcaya Partners Limited ("Vizcaya") against the decision by the Gibraltar Financial Intelligence Unit[1] to issue "no consent" orders, freezing monies held at Bank J Safra (Gibraltar) Limited ("Safra") in the names of Vizcaya, Zeus Partners Limited ("Zeus"), Asphalia Fund Limited ("Asphalia") and Siam Investment Management Limited ("Siam") (the "Vizcaya Judicial Review");

(b) An action brought by Siam against the Attorney General and the Bank seeking the release of the sums held in its account (the "Siam Action");

(c) An action brought by Bank Safra to pay into Court approximately $63 million held by it in the accounts of Zeus and Asphalia pending determination of the claims (the "Safra Claim");

(d) An action brought by the Trustee against Vizcaya, Zeus, Asphalia, Siam and Bank Safra for assistance from the Gibraltar Court relating to the transfer of $150 million and seeking orders for disclosure of information, freezing orders, payment into Court and turnover of the monies to the Trustee and/or the US Bankruptcy Court;

(e) A claim brought by Vizcaya, Zeus and Asphalia on October 26, 2009 (described below) (the "New Claim").

8. The work done in relation to these related matters over the specific invoice period is as set out below.

9. The hearing of the interlocutory applications by the Trustee for disclosure and/or payment in and/or injunctive relief and turnover of the transfer to the Trustee or the U.S. Bankruptcy Court were set down for hearing from October 26-29, 2009. This hearing was also consolidated by an application by Bank Safra to pay monies into Court. The applications were set to be contested by Vizcaya, Zeus, Asphalia and Siam.

---

[1] A unit of the Royal Gibraltar Police and represented in the proceedings by the Attorney General.

10.     Substantial work was conducted in preparation for the October 26-29th hearing. Skeleton Arguments (memoranda of law) had to be prepared of a substantial nature. These were replied to by the Funds and again those skeleton arguments in reply had to be considered in detail.

11.     There were also discussions between Gibraltar counsel and the expert engaged by the Trustee in London on a number of issues on which supportive advice was being given to Gibraltar counsel for the purposes of preparation of the hearing.

12.     The hearing commenced on October 26, 2009. A preliminary point on the admissibility of evidence was dealt with on the afternoon of that day.

13.     There were extensive negotiations between the parties on October 27-28 as a result of discussions that had commenced during the hearing. With the leave of the Court the hearings were successively adjourned to allow the parties time to discuss. Aided by the presence of U.S. Counsel for the Trustee those direct discussions between the parties were facilitated.

14.     The ensuing discussions were between Counsel for all parties and also involved the CEO of Safra Bank. Each party consulted their respective clients throughout the discussions on matters.

15.     The upshot of that is that the Gibraltar Court on October 28, 2009 made an order that Safra Bank should pay into Court the sum of $63,244,490.06 USD held in the accounts of Zeus and Asphalia with the Bank. Equally Siam gave an undertaking embodied into the court order by which it had to give significant notice prior to any request to transfer funds in its account. This secured the funds in Gibraltar by their deposit at the Gibraltar Court or by undertaking provided to the Court.

16.     The Court also ordered disclosure of diverse documentary information that would facilitate the tracing of the funds that had left Gibraltar.

17.     Additionally all other applications (namely the application to turnover/transfer the

4

funds to the Trustee) were adjourned pending further developments in the U.S. insolvency and adversary proceedings.

19. On November 3, 2009 Vizcaya, Zeus and Asphalia made an application for a stay of execution against the disclosure order pending appeal to the Court of Appeal. This was granted by the Court on condition that security for costs in a sum to be agreed or if in default set by the Court were paid by Vizcaya, Zeus and Asphalia. The Trustee was also awarded his costs of the stay of execution application.

18. On October 29, 2009 Vizcaya, Zeus and Asphalia filed a notice of appeal in respect of the disclosure order.

20. On November 18, 2009 there was a further hearing given that it had been impossible to agree the sum of security for costs of the appeal. As a result of that hearing the Court ordered that Vizcaya, Zeus and Asphalia deposit the sum of £30,000 ($50,400.00 USD) as security for the Trustee's costs of the appeal.

21. The rest of that month involved preparatory steps being taken in relation to the appeal on disclosure apart from general correspondence on other matters in connection with the preparation of the main case that would return to the Court in Gibraltar in due course.

22. Significant work was done in respect of the stay application and on the security for costs issues and research was conducted on the possible grounds being taken by the funds as part of their disclosure appeal.

23. There was a meeting in London between U.S. Counsel, Gibraltar Counsel, English Solicitors and English Counsel in relation to various matters of cross-relevance to the various jurisdictions which could impact on the Gibraltar action.

24. These discussions also allowed a general review of points outstanding in respect of the Gibraltar action. It also allowed a strategic discussion as to how the action should be focused

5

in forthcoming months and the steps to be taken both in New York and in Gibraltar.

25. The grounds of appeal of Vizcaya, Zeus and Asphalia were served just before the London meeting took place. This engaged Gibraltar Counsel in further research to try to meet and reply to those grounds of appeal.

26. As a result of discussions and on advice of Gibraltar Counsel a notice of cross-appeal was drafted and filed.

27. Initial skeleton arguments were drafted for the purpose of the disclosure appeal that could not be finalized until receipt of the skeleton of the funds themselves.

28. An action plan was agreed as to the matters that needed to be tackled to progress the US actions sufficiently to enable the Gibraltar court to be asked to deal with the main applications that were part of the Trustee's action.

29. After agreement with U.S. Counsel for the Trustee it was agreed to accept service of the New Claim issued by VZA and this was formally served on Attias & Levy as special counsel for the Trustee on January 7, 2010.

30. An acknowledgement of service was filed on January 20, 2010.

31. The agreed response to the New Claim form was to contest jurisdiction on the grounds that the Court either had no jurisdiction or should not exercise any jurisdiction it had in relation to the case. Principally the contention of the US Trustee is that the matters raised in the New Claim are matters that are already being determined by the US Court and will be determined by it in due course.

32. For that purpose an application to contest jurisdiction was prepared and discussions followed on a supporting Affidavit of John Moscow as the deadline for filing of the application and affidavit (on February 3, 2010) approached.

33. Also during that period work on the skeleton argument to contest the appeal on

disclosure being brought by Vizcaya, Zeus and Asphalia progressed. In late January 2010 there was an initial hearing at the Court of Appeal for the scheduling of the appeal. Time-limits were set for the filing of bundles of authorities, skeleton arguments and the record of appeal. The actual hearing of the Appeal was scheduled for February 9-10, 2010.

### III. COMPENSATION REQUESTED

34. The Application demonstrates how Attias & Levy has both added value to the Debtor's estate and has advanced the Debtor's SIPC liquidation proceeding.

35. Attias & Levy has been mindful of the need to avoid undue legal fees in this case and has taken all reasonable steps to provide cost-effective representation while rendering services with the highest degree of skill and professionalism. To that end, Attias & Levy has staffed this matter leanly and endeavored to eliminate duplication of effort by giving primary responsibility of the case to one partner, Mr. Keith Azopardi.

36. From October 1, 2009 through January 31, 2010, Attias & Levy provided a total of 664.9 hours of legal services to the Trustee in this case. Prior to the 10% discount, the total amount of fees incurred in this time period was $217,084.01 and the total blended rate for professional services was $326.49/hour. After the 10% discount, the total amount of fees incurred is $195,375.61 and the total blended rate is $293.84/hour. Attias & Levy has agreed to a further holdback of 20% of its fees in the amount of $39,075.12, resulting in the present request for compensation in the amount of $156,300.48.

37. A breakdown of the total number of hours performed by each Attias & Levy timekeeper is provided on **Exhibit A** annexed hereto.

38. Attias & Levy seeks reimbursement for out-of-pocket expenses incurred in connection with its representation of the Trustee during the Compensation Period of $7,218.52. An itemized list of these expenses is detailed on **Exhibit B** attached hereto. Attias & Levy

typically charges its clients $0.17 per page for photocopying and printing. Attias & Levy does not charge for incoming faxes. Charges for electronic research, overnight delivery, postage, long distance telephone calls, and other out-of-pocket disbursements are based on the actual amounts paid by Attias & Levy for those services.

## IV. GENERAL MATTERS

39. All of the professional services for which compensation is requested herein were performed by Attias & Levy for and on behalf of the Trustee and not on behalf of any other person or entity.

40. No agreement or understanding exists between Attias & Levy and any other person for sharing compensation received in connection with this case nor has any other person or entity agreed to provide Attias & Levy with compensation for the legal services described herein.

41. This Court is authorized by SIPA to award to the attorneys for a SIPA Trustee "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred." SIPA § 78eee(b)(5)(A). SIPA also permits interim allowances to the attorneys for a SIPA Trustee. Id.

42. Pursuant to § 78eee(b)(5)(E) of SIPA, allowances granted by this Court are to be charged against the general estate as a cost of administration. If the general estate is insufficient to pay such allowances in whole, or in part, SIPC shall advance any necessary funds for such payment. SIPA § 78eee(b)(5)(E). Section 78eee(b)(5)(C) of SIPA provides that SIPC shall file a recommendation with regard to the allowance of fees and reimbursement of expenses requested by this Application, and that this Court shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C). Attias & Levy expects that SIPC's recommendation shall be filed with this Court separately.

**WHEREFORE**, Attias & Levy respectfully requests that this Court enter an Order:

    a.    Granting this Application;

    b.    Allowing payment to Attias & Levy for interim compensation of legal fees, after (a) a reduction of 10% (in the amount of $21,708.40); (b) a holdback of 20% (in the amount of $39,075.12) pending final approval of Attias & Levy' fees in this case, in the aggregate amount of $156,300.48 for professional services rendered to the Trustee from October 1, 2009 through January 31, 2010;

    c.    Allowing payment to Attias & Levy in the amount of $7,218.52 for reimbursement of expenses incurred by Attias & Levy from October 1, 2009 through January 31, 2010; and

    d.    Granting Attias & Levy such other and further relief as this Court deems just and proper.

Dated: April 9, 2010

Respectfully submitted,

ATTIAS & LEVY

By:    *s/Keith Azopardi*

Keith Azopardi
First Floor Suites
39 Irish Town
P.O. Box 466
Gibraltar
London EC1A 2FG
Telephone: +350 200 72150
Fax: +350 200 74986

# EXHIBIT A

## SUMMARY OF THIRD INTERIM FEE APPLICATION
## OF ATTIAS & LEVY FOR SERVICES RENDERED
## FOR THE PERIOD OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

|  | **YEAR ADMITTED** | **HOURLY RATE** | **TOTAL HOURS BILLED** | **TOTAL COMPENSATION** |
|---|---|---|---|---|
| Keith Azopardi | 1990 (UK & Gib) | 373.33 | 338.3 | $126,298.67 |
| Samantha Sacramento | 2000(UK) 2004(Gib) | 298.67 | 169.0 | $50,474.67 |
| Graceanne Parody | 2004 (UK) 2005 (Gib) | 280.00 | 116.7 | $32,676.00 |
| Tom Hillman | 2007 (UK) 2009 (Gib) | 186.67 | 40.9 | $7,634.67 |
| Total: | | $326.49 | 664.9 | $217,084.01 |
| Total minus 10% Discount | | $293.84 | | $195,375.61 |
| **Total Net of 20% Holdback:** | | | | **$156,300.48** |

10

# EXHIBIT B

## EXPENSE SUMMARY OF ATTIAS & LEVY FOR THE THIRD INTERIM PERIOD OF OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

| EXPENSES | AMOUNTS |
|---|---:|
| Communication | $1,722.00 |
| Court Fees | $644.62 |
| Stationary | $2,449.37 |
| Courier | $159.60 |
| Travel | $2,242.93 |
| **Total Expenses Requested:** | **$7,218.52** |