# Baker Hostetler

Baker&Hostetler LLP

3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485

T 216.621.0200
F 216.696.0740
www.bakerlaw.com

Thomas M. Wearsch
direct dial: 216.861.7303
TWearsch@bakerlaw.com

September 15, 2009

**BY FAX**

Charles Gevirz
18550 Jamestown Circle
Northfield, Michigan 48168

Re:    Account No. 1ZB405; Claim No. 00054

Dear Mr. Gevirtz:

Your request for an extension to respond to the August 18, 2009 Trustee's Determination letter regarding the above-captioned account has been granted. You have until and including Oct. 17, 2009 by which to return your Assignment and Release or file your written opposition as set forth in the August 18, 2009 Trustee's Determination letter.

Sincerely,

Ruth Hartman

cc:    Thomas Wearsch, Esq.

300029794.1

Cincinnati    Cleveland    Columbus    Costa Mesa    Denver    Houston    Los Angeles    New York    Orlando    Washington, DC

18550 Jamestown Circle
Northville, MI 48168

Clerk of the Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York 10004

Attn: Judge Burton R. Lifland

     And

Irving H. Picard Esq., Trustee
c/o Baker and Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Case no.  08-1789 (BRL)

Dear Judge Lifland and Mr. Picard Esq.:

I (Charles Gevirtz) am writing this letter, to contest the Trustee's Determination of the Definition of "Net Equity" for my Account Number 1ZB405, Claim Number 000054.

I am uncertain exactly how I should contest the Trustee's claim since the due date for filing the contestation is on 9/17/09, which was extended to 10/17/09 per my request. This is one day after the Trustee will file his brief (10/16/09), so there will not be enough time for me to obtain, review, understand, and respond to the Trustee's position. As a result, I will try to respond to what I believe is the Trustee's interpretation based on my ability to anticipate his legal reasoning inferred from my review of the relevant legal statutes.  I am not a lawyer, so I apologize if the format is not the same as that used in a legal brief.  I respectfully request that my analysis and legal citations should be considered based on their merit, even if lacking proper protocol.

I will present my research involving the definition of "Net Equity" as it relates to Investor Protection Legislation.  The following summary sets forth several reasons and is followed by a more in-depth discussion.  The key points of this are as follows:

1. The definition of "Net Equity" is clearly defined in the definition section of the Security Investor Protection Act of 1970 **15 USC §78lll – (11)** as the value of the securities at the time of bankruptcy filing.  There is no mention of the initial purchase price.  The Securities Act of 1933 **15 U.S.C. §77l(a)(2)** refers to the equity as initial purchase price less withdrawals, "*with interest thereon*" but does not make mention of the word "Net Equity".  Compensation in the form of interest was included in this statement reflecting that the investor has a right for additional compensation for being a victim of the broker's scheme and having foregone earnings had he invested his money elsewhere (in New York State that interest is 9% per year).  This act was written before the creation of the Securities Investor Protection Corporation (SIPC).  Additionally, SEC regulation **17 C.F.R. §300.502** was issued and clarified any possible misconceptions about these laws.   It essentially specifies that if a broker is authorized to make a security purchase, the broker is liable for the value of the security even if the security was not actually traded as long as the broker sent written confirmation to the investor. This position was reinforced by SIPC in a 2005 legal brief to the 2nd Circuit Court of Appeals when they stated "*legitimate claimant expectations on the filing date are controlling even where inconsistent with transaction reality*" (Br. of Appellant New Times Securities vs. SIPC, (05-5227-bk; at **2005 WL 5338148** - Dec. 27, 2005).

2. In the event that a broker makes untruthful statements to an investor, the liability claims are based on the books and records of that broker, regardless of his ability to pay per **15 U.S.C. §77fff-2(b)(1) & (2).**   The issue remains if the fraudulent broker has two sets of books: the one that reflects the fact that the trade was never made, or the other that is based on the publicly shared receipts or those records that were:

1. Acknowledged as a valid contract between the two parties: therefore, the broker (BLMIS) had a liability to the investor (Charles Gevirtz), based on trade receipts and account statements issued by Bernard L. Madoff Investment Securities LLC (BLMIS).  If an investor withdrew more money than he deposited, the broker still reported a liability to the investor based on the remaining value of the alleged securities in that investor's account.   Thus, a debt exists based on the reported security transactions and the earnings reported are in addition to the initial equity investment less withdrawals. The liability remains with the investor regardless of what the broker actually did with the money.

2. Approved without issue by a Certified Public Accountant.

3. Approved without issue by the Securities and Exchange Commission (SEC).

4. Banks cashed the checks from the fraudulent broker without having a negative impact on credit statements of the investor even if the broker paid out more cash than the investor initially deposited.

The laws as written did not specify which set of books are the valid set to use.  The publicly shared records should be used the set used in based on SIPA's definition of net equity and the fact that the broker's (BLMIS's) liability to the investor (Charles Gevirtz) was acknowledged by the two parties and agreed to by three other institutions listed above.  This is supported by the SEC regulation **17 C.F.R. §300.502.**  For a federal agency such as the SEC, a clearly written regulation is a higher authority than applicable case law per **5 U.S.C. §706(A)**.

### Detailed Discussion of the Issues with Legal Quotations:

The Trustee's key argument appears to be based on the definition of "Net Equity" and the fact that BLMIS never actually traded the money. The Security and Investor Protection Act of 1970 (SIPA) **15 USC §78lll – (11),** defines Net Equity as the value of the security on the date of filing. It does not refer to the original purchase price of the securities. SIPA specifically states: "*The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date.*" There is no reference to initial purchase price in this statute as called out in the Trustee's interpretation.

As far as I can determine, the Trustee is referring to the definition of "equity" called out in the Securities Act of 1933, **15 U.S.C. §77l(a)(2).** That statute refers to the initial purchase price less withdrawals. It states: "*In general Any person who - (2) offers or sells a security ... by the use of any means of...a prospectus or oral communication, which includes an untrue statement of a material fact ... (the purchaser not knowing of such untruth or omission),... shall be liable,... subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, ... for damages... *".

These two divergent interpretations are specifically clarified when the SEC issued regulation **17C.F.R. §300.502(a) Claim for Securities**. It specifies "*(a) Where the Debtor held cash in an account for a customer, the customer has a "claim for securities*"

with respect to any authorized securities purchase:   (1) If the Debtor has sent written confirmation to the customer that the securities in question have been purchased for or sold to the customer's account".  It essentially says that the Securities Broker (debtor) is liable to repay the investor the face value of the security, if he had issued receipts to the investor for those transactions.

TSEC regulations are designed to clarify any possible questions as to the intent of the law and the SEC is bound to enforce this statute.  In this instance the regulation reinforces the SIPA act of 1970 which created SIPC, 37 years after the 1933 Securities Act was passed by Congress.

Bernard L. Madoff Investment Securities LLC (BLMIS) clearly issued receipts for all securities trades and additionally provided monthly statement summaries to its clients including me.  This Federal Regulation clarifies which definition must be used to define "Net Equity" based on the value of the Securities, as applicable in the BLMIS liability to me.

The SEC oversees the Securities Investor Protection Corporation (SIPC), so that Regulation (17C.F.R. §300.502) must be utilized by the Trustee.  For a federal agency such as the SEC, a clearly written regulation is a higher authority than applicable case law per 5 U.S.C. §706(A), unless it is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law."  17 C.F.R. §300.502 does not fit into any of those categories as related to the SIPA of 1970 or The Security and Exchange Act of 1933.

In addition, SIPC has publicly shown a position that supports the SEC Regulation (17C.F.R. §300.502) and hence SIPA's definition of "Net Equity" as it applies to this case. This occurred when SIPC filed a Legal Brief, in 2005, to the 2nd Circuit Court of Appeals. SIPC stated it would cover fraudulent claims when Securities were not purchased  (In Br. of Appellant New Times Securities vs. SIPC, (05-5227-bk; at 2005 WL 5338148 - Dec. 27, 2005),  SIPC wrote:  *"reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transaction reality.  Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates"*.  New Times was unable to collect on its claim for the simple reason that the broker's firm was not an insured member of SIPC.  The Trustee should follow SIPC's legal opinion in this case in order to be consistent with previous policies and Federal Statutes.  Their position supports that the definition of Net Equity is based on the face value of the securities.  It applies to the victims of the BLMIS Bankruptcy disbursement, since BLMIS issued investment receipts for all trades.

An alternate discussion, which further supports this position is related to a clause in SIPA which essentially reports that Net Equities are securities that are determined from

the books and Records of the Debtor (BLMIS). **15 U.S.C. §77fff-2(b)(1) & (2)** states that

"*the Powers and duties of a Trustee (1) with respect to net equity claims, authorize the trustee to satisfy claims out of moneys made available to the trustee by SIPC notwithstanding the fact that there has not been any showing or determination that there are sufficient funds of the debtor available to satisfy such claims; and (2) with respect to claims relating to, or net equities based upon, securities of a class and series of an issuer which are ascertainable from the books and records of the debtor.*"

Another issue that has two interpretations arises because those two Investor Protection Acts do not completely spell out which books to use for claims determination – the set of which the public was notified, or the hidden set known about only by the fraudulent broker. The Trustee is basing his accounting of the equity valuation on the hidden set of books, only known about by Bernard Madoff and a limited number of his co-conspirators. It reflects the reality of the fact that no trades were made. I believe that the books and records that were acknowledged by multiple parties prior to the filing should be used for the reasons listed below. There were at least four major organizations that acknowledged this fact:

1) The Broker (BLMIS) and the Investor (Charles Gevirtz) - BLMIS was an SIPC insured broker who issued receipts to the investor (Charles Gevirtz) for all trades made (several thousand) and, in addition, issued monthly statement of account summaries. These receipts and statements were records that were acknowledged as being a valid contract between the two parties. This point is further reinforced as was illustrated in my sister's (Karen Rabin's) BLMIS account (number 1-ZA916-3) whose account, by the Trustee's definition of "Net Equity", showed a negative "Net Equity" of approximately $12,000. However, her BLMIS Investor account showed a positive "Net Equity" of approximately

$115,000. This validated the understanding that the debts between the two parties were based on the face value of the securities as issued; otherwise, BLMIS would have treated it as a loan for approximately $12,000 and provided documentation of that money as being a net debit in her account. This agreed upon interpretation of financial status between the two parties constitutes a liability of BLMIS to Karen Rabins for approximately $115,000.

2) The SEC - BLMIS was registered both as a licensed broker-dealer and as an investment advisor with the U.S. Securities and Exchange Commission (SEC). They were certified after three audits by the SEC on his books (see U.S. Securities and Exchange Commission Office of Investigations; Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi scheme - Report of Investigation Case No. OIG-509 - Public Version - 8-31-09).

3) Certified Public Account - BLMIS's books were also audited and publicly approved by a Certified Public Accountant (David Friehling).

4) Banking Industry - Banks cashed in customer checks, as was illustrated in my sister's (Karen Rabin's) account. Her accounts showed that she withdrew more than she deposited in the Madoff account by $12,000. However, when she made her last withdrawal from her Madoff Account, the Credit Union, the North Carolina State Employees Credit Union, counted it as a cash asset that could only strengthen her credit rating as opposed to considering it as a loan from BLMIS that would adversely influence her credit report.

These kinds of credentials, records, and transactions should require that the books and records that were publicly acknowledged be used to determine the liabilities of the

BLMIS estate.   This is consistent with both the spirit and the letter of the law, as documented in the Securities Investors Protection Act of 1970 and further clarified by the SEC regulation **(17C.F.R. §300.502)**.

By virtue of BLMIS being both an SEC licensed Broker-Dealer and an Investment Advisor, and also an SIPC insured member, I (Charles Gevirtz) should be allowed to recover the full amount in my BLMIS investment account for the amount of $212,350.45.

_Charles D. Gevirtz_ (signature)

Charles D. Gevirtz

Sworn and subscribed before me on this

3rd day of _October_____, 2009

_Norma Caruana_ (signature)

Notary Public

NORMA J. CARUANA
Notary Public, State of Michigan
My Commission Expires Jan. 23, 2012

AMENDED
## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: _Charles Gevirtz_
Mailing Address: _18550 Jamestown Circle_
City: _Northville_     State: _MI_     Zip: _48168_
Account No.: _1ZB405_
Taxpayer I.D. Number (Social Security No.): _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_

**NOTE:**   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

**************************************************************************

1.   Claim for money balances as of **December 11, 2008**:

  a.   The Broker owes me a Credit (Cr.) Balance of          $_____

  b.   I owe the Broker a Debit (Dr.) Balance of             $_____

  c.   If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC."

       If you wish to make a payment, **it must be enclosed**

       with this claim form.                                 $_____

  d.   If balance is zero, insert "None."                    ____/_____

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a.  The Broker owes me securities | X | |
| b.  I owe the Broker securities | | X |

c.      If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | See attached statement | 232,350.45 | |
| | | | |
| | | | |
| | | | |

Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.** 12/1/08: $20,000 withdrawal (see pg. 7)

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                2

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  | | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form: _Wasserman, Jurista, Stolz_
_225 Millburn Ave; Ste 207_
_Millburn, NJ 07041_

502180406                                    4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____2-5-09_____     Signature_____

Date _____     Signature_____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ
18550 JAMESTOWN CIRCLE
NORTHVILLE    MI    48168

PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******0976
YOUR ACCOUNT NUMBER: 1-ZB405-3-0
PAGE 1

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TKN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 11,231.34 | |
| 11/12 | 210 | | 1497 | WELLS FARGO & CO NEW | 29.800 | 6,266.00 | |
| 11/12 | 150 | | 1999 | HEWLETT PACKARD CO | 34.900 | 5,241.00 | |
| 11/12 | 130 | | 5823 | WAL-MART STORES INC | 55.830 | 7,262.90 | |
| 11/12 | 85 | | 6325 | INTERNATIONAL BUSINESS MACHS | 87.270 | 7,420.95 | |
| 11/12 | 315 | | 10149 | EXXON MOBIL CORP | 72.880 | 22,969.20 | |
| 11/12 | 345 | | 10651 | INTEL CORP | 14.510 | 5,018.95 | |
| 11/12 | 165 | | 14977 | JOHNSON & JOHNSON | 59.580 | 9,836.70 | |
| 11/12 | 225 | | 19302 | J.P. MORGAN CHASE & CO | 38.530 | 8,678.25 | |
| 11/12 | 120 | | 23428 | COCA COLA CO | 44.660 | 5,363.20 | |
| 11/12 | 70 | | 27954 | MCDONALDS CORP | 55.370 | 3,877.90 | |
| 11/12 | 130 | | 32280 | MERCK & CO | 28.550 | 3,716.50 | |
| 11/12 | 475 | | 36606 | MICROSOFT CORP | 21.810 | 10,378.75 | |
| 11/12 | 240 | | 40932 | ORACLE CORPORATION | 17.300 | 4,161.00 | |
| 11/12 | 95 | | 53910 | PEPSICO INC | 56.410 | 5,361.95 | |
| 11/12 | 55 | | 54412 | APPLE INC | 100.780 | 5,544.90 | |
| 11/12 | 405 | | 58236 | PFIZER INC | 16.940 | 6,876.70 | |
| 11/12 | 95 | | 58738 | ABBOTT LABORATORIES | 54.610 | 5,190.95 | |
| 11/12 | 180 | | 62562 | PROCTER & GAMBLE CO | 64.080 | 11,541.40 | |
| 11/12 | 65 | | 63064 | AMGEN INC | 59.160 | 3,847.40 | |
| 11/12 | 125 | | 66888 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 5,455.00 | |
| 11/12 | 300 | | 67390 | BANK OF AMERICA | 21.590 | 6,489.00 | |
| 11/12 | 100 | | 71214 | QUALCOMM INC | 33.770 | 3,381.00 | |
| 11/12 | 325 | | 71716 | CITI GROUP INC | 12.310 | 4,078.75 | |

CONTINUED ON PAGE 2

*Attachment P.1*

(1)

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ
18550 JAMESTOWN CIRCLE
NORTHVILLE        MI    48168

FIRM NUMBER: 11/30/08

YOUR ACCOUNT NUMBER: 1-ZB405-3-0

YOUR TAX PAYER IDENTIFICATION NUMBER: ******0976

PAGE 2

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 75 | | 75540 | SCHLUMBERGER LTD | 49.480 | 3,714.00 | |
| 11/12 | 180 | | 76042 | COMCAST CORP | 16.510 | 2,978.80 | |
| | | | | CL A | | | |
| 11/12 | 355 | | 79866 | AT&T INC | 27. | 9,599.00 | |
| 11/12 | 90 | | 90368 | CONOCOPHILIPS | 52.510 | 4,728.90 | |
| 11/12 | 60 | | 24192 | UNITED PARCEL SVC INC | 52.040 | 3,124.40 | |
| | | | | CLASS B | | | |
| 11/12 | 365 | | 84694 | CISCO SYSTEMS INC | 16.730 | 6,120.45 | |
| 11/12 | 105 | | 98518 | U S BANCORP | 29.530 | 3,104.65 | |
| 11/12 | 125 | | 89020 | CHEVRON CORP | 73.430 | 9,183.75 | |
| 11/12 | 60 | | 92844 | UNITED TECHNOLOGIES CORP | 53.160 | 3,191.60 | |
| 11/12 | 635 | | 93346 | GENERAL ELECTRIC CO | 19.630 | 12,490.05 | |
| 11/12 | 170 | | 97170 | VERIZON COMMUNICATIONS | 30.410 | 5,175.70 | |
| 11/12 | 15 | | 97672 | GOOGLE | 337.400 | 5,061.00 | |
| | | 175,000 | 24103 | U S TREASURY BILL | 99.936 | | 174,888.00 |
| | | | | DUE 2/12/2009 | | | |
| 11/12 | | | | FIDELITY SPARTAN | DIV | | 63.35 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/12/08 | | | |
| 11/12 | | 52,963 | 19207 | FIDELITY SPARTAN | 1 | | 52,963.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | FIDELITY SPARTAN | 1 | 479.00 | |
| 11/12 | 479 | | 28575 | U S TREASURY MONEY MARKET | | | |
| | | | | FIDELITY SPARTAN | DIV | | .06 |
| 11/19 | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/19/08 | | | |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

895 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ
18550 JAMESTOWN CIRCLE
NORTHVILLE          MI    48168

PAGE 3
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER *****0976
YOUR ACCOUNT NUMBER 1-ZB405-3-0

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | 479 | 54113 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 479.00 |
| 15,459 | | 63149 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 15,459.00 | |
| | | | | | 25,201.58 | |
| | | | NEW BALANCE | | | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 355 | | | AT&T INC | 28.560 | | |
| 95 | | | ABBOTT LABORATORIES | 52.390 | | |
| 55 | | | AMGEN INC | 55.540 | | |
| 55 | | | APPLE INC | 92.670 | | |
| 300 | | | BANK OF AMERICA | 16.250 | | |
| 125 | | | CHEVRON CORP | 79.010 | | |
| 365 | | | CISCO SYSTEMS INC | 16.540 | | |
| 325 | | | CITI GROUP INC | 8.290 | | |
| 120 | | | COCA COLA CO | 46.870 | | |
| 180 | | | COMCAST CORP CL A | 17.340 | | |
| 90 | | | CONOCOPHILIPS | 52.520 | | |
| 315 | | | EXXON MOBIL CORP | 30.150 | | |
| 635 | | | GENERAL ELECTRIC CO | 17.170 | | |
| 15 | | | GOOGLE | 292.960 | | |
| 150 | | | HEWLETT PACKARD CO | 35.280 | | |
| 345 | | | INTEL CORP | 13.800 | | |
| | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ

18550 JAMESTOWN CIRCLE
NORTHVILLE          MI    48168

YOUR ACCOUNT NUMBER 1-ZB405-3-0
PERIOD ENDING 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER ******0976

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 85 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 225 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 165 | | | JOHNSON & JOHNSON | 59.580 | | |
| | 70 | | | MCDONALDS CORP | 59.750 | | |
| | 130 | | | MERCK & CO | 26.720 | | |
| | 475 | | | MICROSOFT CORP | 20.220 | | |
| | 240 | | | ORACLE CORPORATION | 16.090 | | |
| | 95 | | | PEPSICO INC | 56.700 | | |
| | 405 | | | PFIZER INC | 16.430 | | |
| | 125 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 180 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 100 | | | QUALCOMM INC | 33.570 | | |
| | 75 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 15,459 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 105 | | | U S BANCORP | 26.980 | | |
| | 60 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | 60 | | | UNITED TECHNOLOGIES CORP CLASS B | 49.530 | | |
| | 170 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 130 | | | WAL-MART STORES INC | 55.880 | | |
| | 210 | | | WELLS FARGO & CO NEW | 28.390 | | |

MARKET VALUE OF SECURITIES
LONG    235,750.45
SHORT

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



MADF  **BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ
18550 JAMESTOWN CIRCLE
NORTHVILLE    MI    48168

PERIOD ENDING: 11/30/08
PAGE: 5
YOUR TAX PAYER IDENTIFICATION NUMBER: *******0976
YOUR ACCOUNT NUMBER: 1-ZB405-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 1,659.78 |
| | | | | GROSS PROCEEDS FROM SALES | | | 1,160,490.52 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES.

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-1061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

CHARLES GEVIRTZ
18550 JAMESTOWN CIRCLE
NORTHVILLE          MI   48168

PERIOD ENDING 11/30/08   PAGE 1
YOUR ACCOUNT NUMBER 1-ZB405-4-0
YOUR TAX PAYER IDENTIFICATION NUMBER ******0976



| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 11,232.00 |
| 11/12 | | 5 | 45258 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 7,895.00 |
| 11/12 | 5 | | 49534 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 8,905.00 | |
| 11/19 | | 5 | 35688 | S & P 100 INDEX DECEMBER 430 CALL | 26. | | 12,995.00 |
| 11/19 | 5 | | 40013 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 15,005.00 | |
| 11/19 | 5 | | 44338 | S & P 100 INDEX NOVEMBER 460 CALL | 3. | 1,505.00 | |
| 11/19 | | 5 | 48663 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | | 18,495.00 |
| | | | | NEW BALANCE | | | 25,202.00 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 5 | | | S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | |
| | | 5 | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | | MARKET VALUE OF SECURITIES LONG   8,250.00          SHORT   11,650.00- | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

*12/8/08   Deposit Slip from*

## Chase Online

CHASE FREE CHECKING (...1528)

Deposit Number:  487451            Post Date: 12/03/2008            Amount of Deposit:  $20,000.00



Need help printing or saving this deposit slip?

*12/11/08 Check Receipt From Madoff See.*

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

212 230-2424
800 334-1343
Fax 212 838-4061

WE HAVE THIS DAY DEBITED YOUR
ACCOUNT WITH THE FOLLOWING:                    12/01/08

CW   CHECK                                      20,000.00

CLIENT'S ACCOUNT NUMBER

CHARLES GEVIRTZ                                 1-ZB405-3

18550 JAMESTOWN CIRCLE
NORTHVILLE          MI 48168

MEMO

*Attachment
P. 7*

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail®.
Misuse may be a violation of federal law. This packaging is not for resale.

Print postage online – Go to usps.com/postageonl

PLEASE PRESS F

PLEASE PRESS FIRMLY

U.S. POSTAGE
PAID
NORTHVILLE, MI
48167
OCT 03 '09
AMOUNT
**$19.80**
00031091-06

1007

When used internationally
affix customs declarations

Flat Rate
Mailing Envelope
For Domestic and International Use
Visit us at usps.com

**Addressee Copy**
Label 11-B, March 2004

Post Office To Addressee

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

DELIVERY (POSTAL USE ONLY)
Delivery Attempt   Mo.   Day   Time   ☐ AM ☐ PM   Employee Signature
Delivery Attempt   Mo.   Day   Time   ☐ AM ☐ PM   Employee Signature
Delivery Date   Mo.   Day   Time   ☐ AM ☐ PM   Employee Signature

WAIVER OF SIGNATURE (Domestic Mail Only)

CUSTOMER USE ONLY

NO DELIVERY ☐ Weekend ☐ Holiday

TO: (PLEASE PRINT)   PHONE (   )

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

ORIGIN (POSTAL SERVICE USE ONLY)
PO ZIP Code
Date Accepted   Mo.   Day   Year
Time Accepted   ☐ AM ☐ PM
Flat Rate ☐ or Weight   lbs.   ozs.

Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del. Day
Scheduled Date of Delivery   Month   Day
Scheduled Time of Delivery ☐ 12 Noon ☐ 3 PM
Military ☐ 2nd Day ☐ 3rd Day
Int'l Alpha Country Code

Postage $
Return Receipt Fee $
COD Fee
Insurance Fee $
Total Postage & Fees $
Acceptance Emp. Initials

FROM: (PLEASE PRINT)   PHONE (   )

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

PRESS HARD. YOU ARE MAKING 3 COPIES.

2. Payment I
Affix posta
upper right
corner of e
For EMCA
Agency, p
account nu
label.

TURN RECEIPT
REQUESTED

S POSTAL SERVICE

g Label Here:

complete Label
type or print
quired information
customer block.

RETURN RECEIPT