Helen Davis Chaitman (4266)  
Becker & Poliakoff LLP  
45 Broadway  
New York, NY 10006  
hchaitman@becker-poliakoff.com  
*Attorneys for Diane and Roger Peskin,*  
*Maureen Ebel, and a large group of other*  
*customers*

Hearing Date: May 5, 2010  
Hearing Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |

**OBJECTION TO THIRD APPLICATIONS OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM OCTOBER 1, 2009 THROUGH JANUARY 31, 2010**

  Diane and Roger Peskin, Maureen Ebel, and a large group of other customers of Bernard L. Madoff Investment Securities, LLC ("Madoff") [1] ("Objectors"), by their attorneys, Becker & Poliakoff LLP, object to the third applications for interim compensation of Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") and incorporate herein the objections

---

[1] Becker & Poliakoff LLP files this objection on behalf of the hundreds of customers it represents in these proceedings.

they filed (through Phillips Nizer LLP) to the first and second applications for interim compensation of the Trustee and B&H.  This objection constitutes the objectors' offer of proof and objectors' request that the Court schedule an evidentiary hearing at which they can submit evidence substantiating the facts set forth herein.

1.The Trustee was appointed by this Court at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court for the Southern District of New York on December 15, 2008 for the liquidation of Madoff under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

2.In their third interim fee applications, the Trustee seeks allowance of fees of $671,591 for the 123-day period from October 1, 2009 through January 31, 2010 and B&H seeks allowance of fees of $23,884,085.  This works out to $5,460 in daily compensation (including weekends and holidays) for the Trustee and $194,179 in daily compensation for B&H, again including weekends and holidays.  Thus, together, the Trustee and B&H are seeking allowance of compensation of $199,639 in daily compensation, including weekends and holidays or $1,397,473 per week.

3.The Trustee's most important statutory obligation under SIPA is to "promptly" replace securities in Customers' accounts up to $500,000 in value.  15 U.S.C. § 78fff-3(a) and 4(c).

4.As set forth in the Trustee's Amended Third Interim Report for the period ending March 31, 2010 (the "Report"), 16,314 customer SIPC claims had been filed in this case of which the Trustee had determined 12,249 as of March 31, 2010.  Report ¶ 78; ¶ 2.

5.Through September 30, 2009, according to the Trustee's website, he had determined only 3,062 claims and allowed only 1,641 of such claims.

2

http://www.madofftrustee.com/Status.aspx. The Trustee claimed that, as of September 30, 2009, of the 4,903 active accounts that Madoff had as of December 11, 2008, only 2,335 customers, whose claims total approximately $20 billion, actually lost money under the Trustee's net investment calculation, even though the November 30, 2008 balances on all the accounts totaled $64.8 billion. Thus, as of September 30, 2009, the Trustee had determined only approximately 70% of the claims *he acknowledged were valid* and he had denied SIPC insurance to the 2,569 account holders (and others) who had a negative net investment over the life of their accounts, going back for decades.

6. As of March 31, 2010, the Trustee had not yet determined 4,065 claims. Many of the undetermined claims are of customers who are clearly entitled to SIPC insurance under the Trustee's methodology as approved by this Court. Yet the Trustee has not determined these claims. Moreover, in numerous instances, the Trustee has unjustifiably delayed paying SIPC insurance to customers whose claims he acknowledges are valid. This has caused, and continues to cause, unjustifiable devastation to customers to whom, as a matter of law, the Trustee has a fiduciary duty. This failure to pay customers whose claims the Trustee acknowledges are valid is justification for denial of any further compensation to the Trustee and his law firm until all of the customer claims are paid in full.

7. The Trustee has allowed 2,011 claims for $5.3 billion and committed to pay $668 million, leaving $4.6 billion in over-the-limit claims (of the $20 billion that the Trustee has claimed was lost in Madoff). Report ¶ 2.

8. As of February 28, 2010, SIPC had advanced $141,819,540.89 for administrative expenses and $602,440,855 for customer claims. Report ¶ 68.

3

9. In March 2010, SIPC advanced $16,638,534 for administrative expenses and $48,421,096 for customer claims. Report ¶ 68.

10. Thus, through March 31, 2010, SIPC had advanced a total of $158,458,074 for administrative expenses or $2,365,045 per week. And despite the expenditure of more than $2.3 million per week in professional fees and expenses, the Trustee has still not determined 4,065 customer claims after 16 months.

11. During that same period of time, the Trustee and B&H claim to have "recovered" approximately $1.5 billion for distribution to customers. Report ¶ 1. Of this amount, $946 million was simply sitting in bank accounts in Madoff's name at the time the Trustee was appointed, including $301,407,190 at Mellon Bank, $233,500,000 at JP Morgan Chase, $300 million in securities, and $29 million at Bank of New York. Bloomberg.com 1/29/09.

12. The Trustee and B&H are acting in direct contravention of their fiduciary and statutory duty to Customers and to the public and, in the process, are increasing exponentially and unnecessarily the administrative costs of the estate, depleting SIPC funds that should be used to pay Customer claims at a time when SIPC is insolvent. Indeed, SEC Commissioner Mary Schapiro testified before the House Subcommittee on Capital Markets, Insurance and Government-Sponsored Enterprises on July 14, 2009:

> The tragic truth is there is not enough money available to pay off all the customer claims.

(7/14/09 Webcast at 52:51.)

13. In the circumstances of this case which has bankrupted SIPC, the Trustee and B&H have a conflict of interest which disables them from serving. For this reason, and for the other reasons set forth below as well as the reasons set forth in Objectors' first two objections,

4

Objectors file this objection and offer to prove the facts set forth herein at an evidentiary hearing at a time set by the Court. This objection constitutes their offer of proof.

**THE TRUSTEE AND B&H HAVE A CONFLICT OF INTEREST**

14. This Court has a fundamental obligation to monitor the integrity of proceedings before it. *In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (B.E.D. Cal. 1990).

15. The Trustee owes a fiduciary duty to Customers. *See In re Adler, Coleman Clearing Corp.*, 1998 Bankr. LEXIS 1076 (B. S.D.N.Y. Aug. 25, 1998) ("The parties agree that a SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors"); *Germain v. The Connecticut National Bank,* 988 F. 2d 1323, 1330 n. 8 (2d Cir. 1993). A fiduciary duty is the highest duty imposed by law. *See Roberts v. Dayton Hudson Corp*., 914 F. Supp. 1421, 1423 (N.D. Tex. 1996); *see also Enzo Biochem, Inc. v. Johnson & Johnson,* 1992 U.S. Dist. LEXIS 15723, at *29 (S.D.N.Y. Oct. 15, 1992).

16. The disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned." *In re Vebeliunas,* 231 B.R. 181 (B.S.D.N.Y. 1999), *citing In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978). A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee. *In re AFI Holding, Inc*., 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee).

17. The attorney for a trustee must be "disinterested," meaning that the attorney does not have an interest materially adverse to a party in interest in the bankruptcy. *In re Marvel Entertainment Group, Inc.,* 140 F. 3d 463, 476 (3d Cir. 1998). *See* Collier Bankruptcy Manual §

5

101.13 ("professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration."). *See also, In re Crivello,* 134 F. 3d 831, 835 (7th Cir. 1998)*; In re Cook,* 223 B.R. 782, 798 (10th Cir. BAP 1998); *In re BH & P, Inc.,* 119 B.R. 35, 42 (D.N.J. 1990); *In re Leslie Fay Cos.,* 175 B.R. 525, 532 (B.S.D.N.Y. 1994)(counsel removed from all new matters in case where counsel was investigating financial irregularities of debtor and did not disclose relationships with directors who were targets of investigation).

18.    Aside from the disinterestedness standard in bankruptcy, under the Rules of Professional Conduct, an attorney cannot represent adverse interests. Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a). An attorney must avoid even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code. *In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997). Here, B&H represents the Trustee who has a fiduciary duty to Customers. Yet, B&H is deliberately acting to delay and frustrate the payment of Customer claims, even to the point of misrepresenting the law to destitute Customers who cannot afford to retain their own counsel. Such misrepresentation is grounds for denial of fees. *See In re Mercury*, 122 Fed. Appx. 528 (2d Cir. 2004) (affirming denial of compensation to firm that acted as counsel for debtors and counsel for trustee, where the attorneys acted in the interest of the trustee instead of debtors and incorrectly advised debtors regarding their rights to convert Chapter 7 filing to Chapter 11 filing). It also violates B&H's ethical obligations. *See* Rule 4.1 of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.32 ("In the course of

representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.")

19.     Under SIPA, SIPC is deemed to be "disinterested." 15 U.S.C. §§ 78eee(b)(6)(A). However, SIPA does not, and could not, provide that a trustee, who is not an employee of SIPC, is "disinterested" or that an attorney retained by the Trustee is deemed, as a matter of law, to be "disinterested," particularly in a case like this where the Trustee and his counsel have flatly rejected the fundamental mandates of SIPA that were intended to protect customers. In *In re First State Securities Corp.,* 39 B.R. 26 (B.S.D. Fla. 1984), the bankruptcy court assumed, without analysis or authority, that a trustee who, the court found, was a mere "puppet" of SIPC, was entitled to the imputation of disinterestedness provided by 15 U.S.C. § 78eee(b)(6)(A). The court simply cited the statute which states:

> SIPC shall in all cases be deemed disinterested, and an employee of SIPC shall be deemed disinterested if such employee would, except for his association with SIPC, meet the standards set forth in this subparagraph.

Since neither the Trustee nor B&H is an employee of SIPC, this provision cannot insulate them from the requirement that the Trustee and his counsel be free of any conflict of interest.

20.     The Trustee and B&H are far from "disinterested." As they have demonstrated repeatedly in this proceeding, they have a conflict of interest as a result of which they are barred from receiving any compensation under established precedents and principles of professional conduct. *See In re Angelika Films 57th, Inc.*, 246 B.R. 176 (S.D.N.Y. 2000) (affirming bankruptcy court's denial **in its entirety** of fee application of debtor's counsel where counsel represented debtor's principal in other matters and took actions in the bankruptcy that "placed the interests of the Debtor's principal. . . over those of the Debtor."). They thus should not receive any compensation.

7

21.     Perhaps the most egregious evidence of the conflict of interest of the Trustee and B&H is the Trustee's recent adversary proceeding against three New Jersey investors who had filed suit in federal court in New Jersey against Stephen Harbeck, the President of SIPC, and against the directors of SIPC, alleging that they had perpetrated a massive investment insurance fraud because they had knowingly induced the plaintiffs, and the class of investors that the plaintiffs seek to represent, into believing that SIPC insured their accounts for up to $500,000 based upon the customers' last statement (the "New Jersey Action").  A copy of the complaint in the New Jersey Action is annexed hereto as **Exhibit A**.

22.     The New Jersey Action is not against the Trustee.  It is not even against SIPC.  It is against Harbeck and the SIPC directors and alleges that the defendants breached their obligations to customers by deliberately defrauding them as to the nature and extent of SIPC insurance.  It seeks to hold the defendants personally liable for the damages the plaintiff/class suffered and alleges that, under SIPC's by-laws, the defendants are not entitled to indemnification for their bad faith conduct.  Thus, the New Jersey Action in no way affects the Trustee or the liquidation of Madoff in this Court.

23.     Nevertheless, the Trustee and B&H took it upon themselves to file, in this Court, an order to show cause for a temporary restraining order against the plaintiffs' proceeding with the New Jersey Action, which this Court denied.  The Court set May 18, 2010 as the return date of the Trustee's motion for a preliminary injunction.

24.     In his papers seeking a temporary restraining order, the Trustee inappropriately argued the SIPC directors' case for them. (A copy of the Trustee' April 9, 2010 Brief in support of his request for injunctive relief is attached hereto as **Exhibit B**.)  For example, the Trustee took it upon himself to argue to this Court that there is no basis for the New Jersey plaintiffs'

8

claims under the New Jersey Consumer Fraud statute. (Ex. B. at 4-5.) Thus, in a situation where the New Jersey plaintiffs have alleged that the SIPC directors are not entitled to indemnification for their fraudulent conduct, the Trustee and B&H have incurred administrative expenses that are being paid by SIPC (out of SIPC's insurance fund which is insufficient to pay customer claims) to defend the SIPC directors in the New Jersey action.

25. Ignoring the New Jersey plaintiffs' specific allegations of fraud based upon published assurances on SIPC's website that customers can prove their claims by simply producing their last statements, the Trustee falsely alleged in his brief in this Court in support of an injunction that:

> Not only are the New Jersey Plaintiffs' allegations false, they could not be true under any circumstances. SIPA has bifurcated the duties and obligations of the Trustee and those of SIPC. Significantly, the Trustee is charged with the day-to-day administration of the estate, which includes determining and satisfying customer claims, while it is SIPC's obligation to advance the Trustee enough money for each customer claim which he, in his sole discretion, has allowed, up to $500,000 if the claim is for securities. . . . SIPC could not have exhibited bad faith with respect to actions that it did not undertake—determining the appropriate method for the net equity calculation.

*Id.* at 38.

26. The Trustee went so far as to state that he would reserve the right to challenge the New Jersey federal court's certification of the plaintiffs' alleged class!

> In any event, class treatment under Federal Rule of Civil Procedure 23 could never be appropriate for the fraud suit alleged by the New Jersey Plaintiffs, among other reasons, because of issues of individualized reliance. The Trustee reserves the right to challenge the propriety of class certification if that becomes necessary.

*Id.* at 44-45 n.24:

27. This conduct of the Trustee and B&H so severely compromises the Trustee and B&H that their immediate disqualification is necessary to preserve the integrity of this

9

proceeding. This is a case which receives worldwide attention because foreign investors constitute the vast majority of the $64.8 billion of losses. As pointed out in the objections to the first two fee applications, both the Trustee and B&H have a disqualifying conflict of interest because they have chosen to represent the interests of SIPC, the insurer, against the investors, the insured. Now they have gone even further, expending SIPC's limited funds to defend SIPC's directors who are charged with perpetrating a massive investment insurance fraud in violation of the New Jersey Consumer Fraud statute.

28.     It is well-recognized that a trustee and his counsel are not entitled to the award of any fees where they are not disinterested and where they act to favor the debtor's directors over the debtor's creditors. *E.g., In re Angelika Films 57th Inc.,* 227 B.R. 29 (B.S.D.N.Y 1998)(fees must be denied where professionals have interest or relationship that could "even faintly color" the independence and impartiality required by the Bankruptcy Code); *In re Balco Equities Ltd.,* 345 B.R. 87 (B.S.D.N.Y. 2006)(debtor's law firm required to disgorge all fees for lack of disinterestedness).

## CONCLUSION

For the foregoing reasons, Objectors ask the Court to set a date for an evidentiary hearing at which they can prove the objections set forth herein. The Trustee and B&H are disabled from serving because, as they have demonstrated repeatedly in the first 16 months of their service, they have a fundamental conflict of interest and are working solely to enrich SIPC at the expense of the Customers to whom they owe a fiduciary duty.

April 28, 2010

BECKER & POLIAKOFF LLP

By: /s/ Helen Davis Chaitman
45 Broadway
New York, NY 10006
(212) 599-3322
*Attorneys for Diane and Roger Peskin, Maureen Ebel, and a large group of other customers*

11