

**Kohrman Jackson & Krantz** PLL
ATTORNEYS AT LAW

May 5, 2010

**VIA OVERNIGHT MAIL**

MAY 10 2010

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
Courtroom 623
New York, NY 10004

Re:   **NOTICE OF APPEAL**

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, United States Bankruptcy Court, Southern District of New York, Adv. No. 08-01789

The Reaven Group
BLMIS Account Number: 1ZA354

The Albert Reaven Living Trust
BLMIS Account Number: 1R0139 (formerly No. 1R0011)

The Richard, Lawrence, Linda and Ruth Reaven Trust
BLMIS Account Number: 1R0140 (formerly No. 1R0012)

Dear Judge Lifland:

This office represents Madoff victims The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust. The purpose of this correspondence is to appeal the following Trustee Determinations, copies of which are attached:

Albert Reaven - Account No. 1R0011
Claim No. 004500
Determination: April 7, 2010

Albert Reaven Living Trust Dated 5/8/01 - Account No. 1R0139
Claim Nos. 004501 and 100071
Determination: April 8, 2010

Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust - Account No. 1R0012
Claim No. 004497
Determination: April 8, 2010

Further, by this correspondence we amend and supplement the Notice of Appeal dated March 9, 2010 appealing the following prior determination:

V  216·736·7209
F  216·621·6536
E  ahj@kjk.com

One Cleveland Center
20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793
216·696·8700
www.kjk.com

*Cleveland and Columbus*

Member of
MACKRELL
INTERNATIONAL
An association of independent law firms

{K0226388.2}



Kohrman
Jackson &
Krantz PLL
ATTORNEYS AT LAW

The Reaven Group - Account No. 1ZA354
Claim Nos. 004498, 100070 and 100424
Determination: February 18, 2010

We apologize for the late timing of this correspondence and note that it comes even after the Court's ruling of March 1, 2010. However, despite the fact that The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust all filed timely claims on February 27, 2009, the Trustee did not make the subject determinations until February 18, 2010, April 7, 2010 and April 8, 2010 – well after the Court's deadline for briefing the SIPC issues and even after the Court's February 2, 2010 hearing on net equity calculations.

With regard to the issue of timing it is also noted that the Court's Order of March 1, 2010 found significant that *"not all* Madoff claimants objected to the Trustee's determination of Net Equity." Order, p. 8. Surely, however, the Court realizes that *"not all"* claimants had standing to raise an objection at the time because the Trustee had dallied for more than a year and had not even adjudicated many investor claims.

### FACTUAL DISPUTES

The subject investments began with William Rubenstein in 1986. Mr. Rubenstein had two children, seven grandchildren and two step grandchildren. In accordance with his will, when William Rubenstein passed away in 1997, the proceeds of his BLMIS account passed to his two children and his seven grandchildren. In round numbers, the grandchildren each received approximately $25,000, with the remainder going to his children. Nominal bequests also passed to his step grandchildren.

There are multiple problems with the Trustee's determinations including consolidation of unrelated accounts, the failure to properly track deposits and withdrawals, determinations based upon incomplete records, the failure to recognize actual equity positions, and erroneous withdrawal records.

First, in the determination of February 12, 2010 the Trustee has apparently mixed the unrelated accounts of The Reaven Group, The Albert Reaven Living Trust and The Richard, Lawrence, Linda and Ruth Reaven Trust together with the long closed account of William Rubenstein.

Though the records attached to the Trustee's determination reflect deposits in 1992 and 1998 and withdrawals in 1993, 1994, 1995, 1996, 1997 and 2005, these could not have been all the same account. In 1992 William Rubenstein opened an account with BLMIS. From 1993 through 1997 Mr. Rubenstein

{K0226388.2}



Kohrman
Jackson &
Krantz PLL
ATTORNEYS AT LAW

made occasional withdrawals from his account. After his death, most of the balance was distributed to his children and grandchildren as reflected in the December 1997 withdrawal ($195,704). The 1998 deposits ($100,000) and the 2005 withdrawal ($27,451) were after Mr. Rubenstein's death and were done in a separate account.

Based upon the foregoing, it is not appropriate to factor the 1998 deposits and the 2005 withdrawal into an account that did not open until after Mr. Rubenstein's death in 1997. One result of the Trustee's confusion is that he creates an artificial negative balance in Mr. Rubenstein's account as of his death in 1997 and then improperly uses that balance to offset subsequent deposits by the family in an unrelated account created subsequently as The Reaven Group.

Second, the Trustee fails to recognize that equities were actually purchased in the subject accounts.

Claims Nos. 004497 and 004500 reference numerous equity purchases from 4/17/86 to 7/3/97. Though these transactions are labeled "check" by the Trustee, it is clear that each of these represents a separate purchase of equities.

For example, in Albert Reaven Account No. 1R0011 there are purchases totaling $522,227 from 4/17/86 to 7/3/97. Though the Trustee now claims that "no securities were ever purchased for your account," in fact the records indicate that substantial equities were purchased.

Similarly, in Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust Account No. 1R0012 there are purchases totaling $218,397 from 8/26/87 to 7/3/97. Not surprisingly, many of the investments in Account No. 1R0011 are in the same investments as Account No. 1R0012 as Mr. Rubenstein generally purchased the same equities, albeit in different amounts, in both accounts. Again, the Trustee's claim that "no securities were ever purchased" is belied by the Trustee's own records.

The Claimants demand reconsideration and SIPC coverage for these equities.

Third, the Trustee's analysis treats the equity purchases as withdrawals and also treats as withdrawals the disposition of the subject account proceeds after Mr. Rubenstein's death in 1997.

Fourth, there is a problem with the Trustee's determination in the Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust Account No. 1R0012 Claim No. 004497. The Trustee applies a withdrawal of $192,713.15 on 7/25/97 as a transfer to Account No. 1R014030.

{K0226388.2}



Kohrman
Jackson &
Krantz PLL
ATTORNEYS AT LAW

The problem is that Account No. 1R014030 is also named Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust. Thus, the Trustee shows a withdrawal but no corresponding deposit into the same account or any other account, the money simply disappears.

Fifth, The Trustee's analysis of a withdrawal of $195,704 from Reaven Group on 12/31/97 appears to be duplication of a withdrawal of $192,713 from Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust on 7/25/97. Though there is some disparity in the numbers, a withdrawal of approximately $195,000 would match the $25,000 per grandchild (7) plus $10,000 per step child (2) that was disbursed in 1997 pursuant to William Rubenstein's will. However, the Trustee's records incorrectly show this withdrawal being made twice; an improper duplication of the records.

Sixth, the Trustee has improperly included incorrect records in Reaven Group Account No. 1ZA354 Claim Nos. 004498, 100070 and 100424. In this account the first four checks in 1993 ($10,685.41, $7,117.28, $4,832.43 and $5,064.00) all represent unusual numbers that are not consistent with the pattern established by William Rubenstein of making large round numbered withdrawals ($5,000 to $10,000). These transactions may actually be securities that were purchased. Accordingly, Claimant denies that these four withdrawals listed as "checks" are accurate.

Seventh, there is a problem with the Trustee's determination related to Albert Reaven Living Trust Dated 5/8/01 Account No. 1R0139 combining Claim Nos. 004501 and 100071. In this account the Trustee reflects withdrawals beginning 10/1/97 for a trust that was not created by Albert Reaven (husband of Lois Reaven) until 5/8/01. Inexplicably, the transactions predate the trust instrument.

Eighth, there is a general issue concerning the Trustee's determination of which transactions are at issue. It is not clear when this Court believes the fraud commenced. That deficiency is significant to the calculation of Net Equity and the application of SIPC. Notably, the Court's March 1, 2010 Order states that BLMIS started to offer investment advisory services "as early as the 1960's, yet it never acted as a legitimate investment advisor to its customers." Order, p. 9. Accordingly, it is not clear what transactions, deposits and withdrawals, should be factored into the Trustee's calculations.

In sum, with regard to the factual determinations, Claimants appreciate the complexity and difficulty of unraveling the BLMIS fraud. However, the determinations that were made in this case are simply not accurate.

<div style="text-align:center">LEGAL DISPUTES</div>

The Trustee's bi-partite legal argument that: 1) investors are not entitled to rely upon the stated values of their fraudulent accounts, and 2) "cash in/cash

{K0226388.2}



out" is the only relevant calculation, remains contrary to law. It is also inexplicably contrary to the argument successfully raised by Trustee's own law firm of Baker & Hostetler in settling *Bonutti v. Lehman Brothers, Inc.*, United States District Court, Northern District of Ohio, Case No. 1:02-CV-1018, a case arising out of $280 million in false account statements sent out over a 15 year period by former Cowen, SG Cowen and Lehman broker Frank Gruttadauria.

In *Bonutti*, Baker & Hostetler attorneys Daniel Warren, Daniel Mascaro, Geoffrey Mearns and Melissa Eckhouse argued that an investor in a Ponzi scheme perpetrated by a stock broker was entitled to rely upon the false statements of purchases and sales that had been made over a period of many years in his account. Baker & Hostetler specifically rejected calculation of the broker-dealer that there were no damages based upon "cash in/cash out." Instead, Baker & Hostetler argued that the client was entitled to base his claim upon fake statements and millions of dollars in false profits.

As set forth in the *Bonutti* Complaint, the damage claims against the broker-dealer were predicated upon the fact that the broker-dealer "refused to provide [client] with the benefit of the many purchases and sales of stock that, for years, [broker] represented had been made for [client's] accounts." *Bonutti* Complaint, ¶4. Further, Baker & Hostetler argued that its client was entitled to recover $16 million as set forth on his false statements in 2001, though the client had deposited only $4 million in 1991. *Bonutti* Complaint, ¶30. As Baker & Hostetler concluded, "[i]n short, [client] has lived his life based upon the representations that the [broker and broker/dealer] made to him over a period of years about his investment account – representations that they now seek to disavow." *Bonutti* Complaint, ¶42.

This argument for damages based upon false statements and rejecting the "cash in/cash out" formula was followed up by Baker & Hostetler in the related Gruttadauria case of *Visconsi v. Lehman Brothers*, 2007 U.S. App. LEXIS 19088 (6th Cir.).

In *Visconsi* the Plaintiffs were jointly represented by the law firms of Baker & Hostetler; Porter, Wright, Morris & Arthur and Kellogg, Huber, Hansen, Todd, Evans & Figel.

In *Visconsi* the investors deposited $21 million, withdrew $25.8 million and had false account statements showing a balance of $37.9 million. Nevertheless, the Sixth Circuit affirmed an arbitration award of $10.2 million holding that Lehman's out-of-pocket theory of damages "misapprehends" the harm suffered by the recipients of the false statements finding this to be a "wholly inadequate" measure of damages.

Though not binding upon this Bankruptcy Court, one should also take notice that there have been several FINRA, NASD and NYSE arbitration cases

Page 5

{K0226388.2}



Kohrman Jackson & Krantz PLL
ATTORNEYS AT LAW

(where most customer-broker fraud disputes are adjudicated – not in court) that have awarded damages to a customer based upon their reliance on fraudulent statements – even where withdrawals exceeded deposits. In fact, at times, the SEC and the NYSE have gone so far as to create special arbitration processes to benefit victims of such matters. See: http://www.sec.gov/news/press/2003-96.htm.

Though admittedly SIPC carries an independent regulatory construct, Trustee's argument that only "cash in/cash out" matters for the purpose of calculating damages is irreconcilably opposite to the argument that Baker &Hostetler successfully made in litigation and settlement of both the *Bonutti* and *Visconsi* cases.

In addition to the issues previously raised by other claimants, we note that the Trustee has provided no copies of records and no account documentation to support his determination.

Moreover, it is a fallacy of the Trustee's analysis to perform calculations based upon when the fraud was discovered and not when it occurred. In the Trustee's scheme a fraud that resulted in an immediate theft of investor assets would be subject to a SIPC recovery only after it was discovered and adjudicated – in this case decades later.

By contrast, if the fraud were discovered at the time it had occurred, the victim could have been compensated promptly and had the benefit of their funds without waiting years for the perpetrator to confess or the Trustee to process the paperwork. The time-value calculation effectuated by such delayed justice serves only to enrich SIPC and penalize the investor.

## CONCLUSION

Based upon the foregoing, we request that the Trustee's determinations for Reaven Group (February 18, 2010), Albert Reaven (April 7, 2010), Albert Reaven Living Trust Dated 5/8/01 (April 8, 2010), and Richard W. Reaven, Lawrence Reaven, Linda Reaven and Ruth Reaven Trust (April 8, 2010) be reversed and allowed in their entirety as follows:

- The Reaven Group - $277,808
- The Albert Reaven Living Trust - $427,357
- The Richard, Lawrence, Linda and Ruth Reaven Trust - $302,269

{K0226388.2}



We would welcome the opportunity to brief these matters further or present oral arguments at any hearing in this Court or any other Court adjudicating this matter should this Court desire.

Respectfully,

Ari H. Jaffe

Encl.

cc:   Albert Reaven
      Irving Picard, Trustee
      Kevin H. Bell
      Clerk of the United States Bankruptcy Court

/kas