MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van de Kieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Jonathan Michaeli*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (BRL) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA Liquidation |
| Defendant. | (Substantively Consolidated) |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Jonathan Michaeli ("Mr. Michaeli"), by and through his attorneys, hereby object to the Notice of Trustee's Redetermination of Claim dated April 14, 2010 ("Determination Letter"), attached as Exhibit A, as described herein.

## BACKGROUND

1.      Mr. Michaeli is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.      Mr. Michaeli's final BMIS statement for Account Number 1ZR304, dated November 30, 2008, states that he owns securities valued at $1,244,648.54 ("Final BMIS Statement").

3.      On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA.  *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4].  Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims pursuant to SIPA.  *Id*.; 15 U.S.C. § 78fff-1(a).

4.      On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12].

5.      The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*"  *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.     Prior to the claims filing deadline, Mr. Michaeli submitted a customer claim form to SIPC for Account Number 1ZR304 (Exhibit B) ("Michaeli Customer Claim").  Mr. Michaeli's Final BMIS Statement was submitted with the Michaeli Customer Claim.  *See id.*

7.     On April 14, 2010, the BMIS Trustee sent Mr. Michaeli the Determination Letter allowing his claim only in the amount of $141,806.29, rather than $1,244,648.54, the total amount claimed.  *See* Determination Letter (Exhibit A).

8.     Mr. Michaeli hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

9.     <u>First Objection</u>.  The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  Included with the Michaeli Customer Claim was Mr. Michaeli's final BMIS statement showing a balance of $1,244,648.54.  *See* Michaeli Customer Claim (Exhibit B).  The Final BMIS Statement is the best evidence of the amount owed based on the Debtor's books and records.  Accordingly, the claim should be allowed in the full amount of 1,244,648.54.

10.     <u>Second Objection</u>.  The Trustee has set forth no legal basis for partially disallowing the Michaeli Customer Claim.  The only explanations set forth in the Determination Letter is that "[n]o securities were ever purchased for your account."  Determination Letter at 1 (Exhibit A).  This purported ground for disallowance has no statutory or other legal basis.  Moreover, the Determination Letter:

(a)     does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, s*ee* Order  [Dkt. No. 12];

3

(b)    is inadequate to rebut the prima facie validity of the Michaeli Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See*, *e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11.    <u>Third Objection</u>. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). The Trustee objects to the Michaeli Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter (Exhibit A); *see also* "Another View: Unwinding Madoff Fraud Fairly," Deal Blog. NY times.com (May 6, 2009). This is incorrect for the following reasons:

(a)    The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

the dollar amount of the account or accounts of a customer, to be determined by --

(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B) any indebtedness of such customer to the debtor on the filing date;

4

\*\*\*\*\*\*\*\*\*

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)    SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements.  The BMIS statements received by Mr. Michaeli stated that he owned a list of blue chip securities.  It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business.  But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . .  By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).  While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on Mr. Michaeli's Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange.

(c)    Mr. Michaeli deposited funds in BMIS with the expectation that the amount would grow, his account statements showed such growth, and the balance on his Final BMIS Statement reflects the benefit of this bargain.  The Trustee's formula is an improper and wholly inadequate measure of loss.  In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the court declined to set aside an arbitration award that appeared to have applied an expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the

"money in/money out" formula as not reflecting the expectations of the parties.    The court
explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case.  Plaintiffs gave $21 million
> to Gruttadauria [the dishonest broker], not to hide under a rock or
> lock in a safe, but for the express purpose of investment, with a
> hope -- indeed a reasonable expectation -- that it would grow.
> Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs
> only the $21 million they originally invested less their subsequent
> withdrawals, is a wholly inadequate measure of damages.    Had
> Gruttadauria invested Plaintiffs' money as requested, their funds
> would like grown immensely, especially considering that Plaintiffs
> invested  primarily  throughout  the  mid-1990s,  which,  had  they
> hired an honest broker . . . , would have placed their money in the
> stock  market  during  one  of  the  strongest  markets  in  recent
> memory.    In  fact,  the  fictitious  statements  issued  by  Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly  invested,  indicate  that  Plaintiffs'  accounts  would  have
> grown  to  more  than  $37.9  million  (even  accounting  for  the
> withdrawal of more than $31.3 million).  Plaintiffs thus could have
> reasonably believed that they were entitled to the full $37.9 million
> balance  shown,  regardless  of  the  amounts  of  their  previous
> deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added).  This applies precisely to Mr. Michaeli's

claim.

> (d)    The Trustee's Determination Letter is contrary to SIPC's own policies and

practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO,

and its actions in similar liquidation proceedings.    For example, in the *New Times* SIPA

liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that

SIPC would replace securities listed on customer account statements, even if the securities had

never been purchased:

> Harbeck:  [I]f you file within sixty days, you'll get the securities,
> without question.  Whether -- if they triple in value, you'll get the
> securities. . . .  Even if they're not there.
>
> Court:  Even if they're not there.

> Harbeck:  Correct.
>
> Court:  In other words, if the money was diverted, converted --
>
> Harbeck:  And the securities were never purchased.
>
> Court.  Okay.
>
> Harbeck:  And if those positions triple, we will gladly give the
> people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y.

July 28, 2000) (Exhibit C).  The Second Circuit's discussion of SIPC's claims processing in *New*

*Times* further indicates that, with respect to customers who thought they were invested in listed

securities, SIPC paid customer claims based on the customers' final account statements, even

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably.  Although they were not actually invested in
> those real funds -- because Goren never executed the transactions -
> - the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed.  As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up to
> $500,000 in SIPC advances.  The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims.  Furthermore,
> the Trustee notes that, if they were checking on their mutual funds,
> the "securities claimants," . . . could have confirmed the existence
> of those funds and tracked the funds' performance against Goren's
> account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at

23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA

"reasonable and legitimate claimant expectations on the filing date are controlling even where

inconsistent with transactional reality" such as when the customer receives a confirmation

reflecting a purchase, "even where the purchase never actually incurred and the debtor instead

converted the cash deposited by the claimant to fund that purchase").[1]  Mr. Michaeli is situated

no differently from the "securities claimants" discussed by the Second Circuit.  Accordingly, his

claim should be recognized in full.

12.    In the event that the Court should determine that claimed gains on deposited funds

should not be allowed, then in the alternative, Mr. Michaeli is entitled to recover interest on such

deposited amounts.  Such interest is required as a matter of state law, and the United States

Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to

interest, are determined by state law.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S.

443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is

that state law governs the substance of claims, Congress having generally left the determination

of property rights in the assets of a bankrupt's estate  to state law.").

(a)    Under New York law, which is applicable here, funds deposited with the

Debtors under these circumstances are entitled to interest.  *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y.

Gen. Oblig. § 5-501, *et seq.*  Accordingly, Mr. Michaeli's claim should be recalculated by adding

interest to all the funds deposited with BMIS.

(b)    Under New York law, which is applicable here, customers are entitled to

prejudgment interest and any returns the Debtors earned on the deposited funds under principles

of unjust enrichment.  Accordingly, Mr. Michaeli's customer claim should be recalculated by

adding the amounts earned by the Debtors on deposits.  *See, e.g., Steinberg v. Sherman,* No. 07-

1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such

as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest.")*;*

---

[1] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost . . . misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

*Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13.     <u>Fourth Objection</u>.  The BMIS Trustee's action in reducing the amount shown on the Michaeli Customer Claim by any prior gains reflected on their final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

14.     <u>Fifth Objection.</u>  The Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious."  This assumption is contrary to fact.  There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious.  The burden is on the Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so.  The Trustee is required to state and prove when the Ponzi scheme began.

15.     <u>Sixth Objection.</u>  Income taxes were paid on earnings the Trustee has alleged are fictitious.  The Trustee has justified his proposed method of calculating claims as fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method purportedly equalizes the treatment of all customers.  This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments.  Even assuming *arguendo* the Trustee's method is correct, Mr. Michaeli's customer claim should be adjusted by adding all amounts actually paid as income taxes on allegedly fictitious gains to equalize their treatment with that of other customers.  *See SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at

*11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

16.    Seventh Objection.    The Determination Letter purports to calculate Mr. Michaeli's "net equity" on the basis of withdrawal transactions for which Mr. Michaeli has incomplete records.  It is unreasonable to anticipate that customers would have access to and/or maintain all account records given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request.   Under these circumstances, the Trustee should be required to prove the alleged withdrawal transactions by furnishing the appropriate records to Mr. Michaeli and, absent such records, such transactions should be deleted from the calculation of Mr. Michaeli's "net equity."   Likewise, the Trustee should be required to prove that the deposit transactions are completely listed by furnishing the appropriate records to Mr. Michaeli.

17.    Eighth Objection.  Mr. Michaeli's BMIS account (account number 1ZR304) is a successor to, or assignee or transferee from, a prior BMIS account ("Transferor Account").  In calculating Mr. Michaeli's "net equity," the BMIS Trustee's accounting does not reflect the actual amount transferred from the Transferor Account to Mr. Michaeli's account as reflected in the contemporaneous documents furnished to Mr. Michaeli at the time of the transfer, and/or the records of BMIS which reflected the transfer.  Instead, the BMIS Trustee has redetermined the transferred amount in accordance with his "money in/money out" formula so that the transferred amount is limited by the amount of "money in/money out" (*i.e.*, deposits less withdrawals) in the Transferor Account at the time the transfer occurred.  There is no basis in law or fact for such a

result or redetermination. The Trustee has not alleged any factual basis for claiming that Mr.

Michaeli is not a bona fide transferes and purchaser, acting in good faith. The Trustee has not

alleged any basis for reducing the balance in the Transferor Account at the time of the transfer

under applicable state law, which governs pursuant to *Travelers Cas. & Sur. Co. of Am. v.

PG&E*, 549 U.S. 443 (2007), and has not alleged any basis to avoid or reduce said balance

pursuant to the avoidance powers of the Bankruptcy Code. Instead, the reduction (a) is an

attempt to assert an avoidance power retroactively, to assert such a power as against the owner of

the Transferor Account who is not a party to this case; (b) has no basis in any statute or rule and

no such statute or rule is stated by the BMIS Trustee; (c) makes no attempt to satisfy the

requirements which are applicable to actions under such avoidance powers including applicable

statutes of limitations and indeed fails to identify any provision of the avoidance powers which is

applicable; (d) is subject to the various defenses set forth in the avoidance powers; and (e) is an

improper attempt to impose liability on a transferee of the initial transferee without alleging or

satisfying the conditions of section 550(b) of the Bankruptcy Code. The Trustee should be

required to redetermine Mr. Michaeli's claim by recognizing the full amount transferred from the

Transferor Account.

18.    <u>Ninth Objection</u>. The Determination Letter purports to calculate the amount

transferred from a Transferor Account to Mr. Michaeli's account based on withdrawal

transactions in the Transferor Account for which Mr. Michaeli has no records and for which the

Trustee has not provided any records. Even assuming that Mr. Michaeli had access to records

concerning the Transferor Account, it is unreasonable to anticipate that customers would

maintain records of accounts for long periods of time given (a) general limitations on record

retention requirements under tax law and other applicable rules governing record retention; (b)

the apparent safety and solvency of BMIS as acknowledged by the United States Securities and

Exchange Commission and other securities agencies which had investigated the affairs of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request.   Under these circumstances, the Trustee should be required to prove that the alleged withdrawal transactions in the Transferor Account occurred by furnishing the appropriate records to Mr. Michaeli and, absent such records, the Trustee should be required to redetermine Mr. Michaeli's claim by recognizing the full amount transferred from the Transferor Account.

### RELIEF REQUESTED

19.     For the reasons stated herein, the Michaeli Customer Claim should be allowed in its entirety.

20.     For the reasons stated herein, the Court should direct SIPC to issue immediate payment to Mr. Michaeli in the amount of $1,244,648.54 plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

21.     The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity.   *See* Bankruptcy Code § 502(a).   The BMIS Trustee has offered no factual or legal basis for his determination.   The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities.   Upon the filing of such a statement, this matter will be a contested  proceeding under Rule 9014, and Mr. Michaeli will file a response.

22.     Mr. Michaeli requests copies of any and all documents relating to their account or the Transferor Account referenced in the Determination Letter.

23.     Mr. Michaeli requests such other relief as may be just and equitable.

## CONCLUSION

24.     Mr. Michaeli reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Mr. Michaeli's right to object on any additional grounds.

25.     Mr. Michaeli reserves all rights set forth Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

26.     Mr. Michaeli reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

27.     Mr. Michaeli incorporates by reference all reservations of rights set forth in the Michaeli Customer Claim and any supplements thereto.

Dated: May 12, 2010

<div style="margin-left:40%">

s/Jonathan  M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van de Kieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Jonathan Michaeli*

</div>