Harvey E. Rothenberg
300 SE 5th Avenue, Suite 6130
Boca Raton, FL 33432

*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

The Harvey E. Rothenberg Rev Trust UAD 7/24/02 (the "Rothenberg Trust"), hereby

objects to the Notice of Trustee's Determination of Claim dated April 15, 2010 ("Determination

Letter"), attached hereto as Exhibit A, as described herein.

### BACKGROUND

1.      In February 1994, Harvey Rothenberg and CHO Enterprises opened an account

(1-CM279-3) with Bernard L. Madoff Investment Securities LLC ("Madoff") in the name of

CHORO Associates.  Each partner held a 50% share in the CHORO Associates customer

account.

2.      In 1996, upon Betty Klein's request, Mr. Rothenberg formed a partnership with

Ms. Klein entitled BKHR Partners ("BKHR") to enable Ms. Klein to participate in the CHORO

Associates customer account investments.  BKHR became the 50% share holder of the CHORO

Associates customer account, with CHO Enterprises holding the other 50% share of the account.

Each of the BKHR partners was a customer within the meaning of the Securities Investor Protection Act ("SIPA"). Each customer made his or her own deposits with BMIS.

3.        In January 1999, the CHORO Associates customer account was terminated, and a new account under the name of BKHR (Account No. 1-CM558-3; the "BKHR Customer Account") was opened with Madoff. BKHR's 50% share of the CHORO Associates customer account was transferred to the BKHR Customer Account.

4.        In 2006, approximately $2,000,000 was withdrawn from the BKHR Customer Account, of which $1,873,000 was withdrawn by Ms. Klein, representing the total share of her investment together with its accumulated profits. Thereafter, BKHR was removed from the BKHR Customer Account and the account's name was changed from BKHR to Harvey E. Rothenberg Rev Trust UAD 7/24/02 (the "Rothenberg Trust Customer Account").

5.        From the creation of the predecessor accounts, the partners received regular communications from Madoff, including monthly statements, trade confirmations, and quarterly portfolio management reports.

6.        The final Madoff statement dated November 30, 2008 (the "Final Madoff Statement") for the Rothenberg Trust Customer Account shows that the Rothenberg Trust owned securities with a market value of $2,792,834.36 in the Rothenberg Trust Customer Account. A copy of the Final Madoff Statement is attached hereto as Exhibit B.

7.        On December 11, 2008, an action was commenced against Madoff by the Securities & Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA. *See* Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was

2

appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff

and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. § 78fff-1(a).

8.      On December 23, 2008, the Court issued an Order directing the Trustee to

disseminate notice and claim forms to Madoff customers and setting forth claim-filing

deadlines. *See* Order [Dkt. No. 12].

9.      The December 23, 2008 Order further provided that, to the extent the Madoff

Trustee disagrees with the amount set forth on a customer claim form, the Madoff Trustee "shall

notify such claimant by mail of their determination that the claim is disallowed, in whole or in

part, **and the reason therefor** . . . " *See* Order at 6 (emphasis added) [Dkt. No. 12].

10.     On June 17, 2009, the Rothenberg Trust filed a claim for the Rothenberg Trust

Customer Account for securities (the "Rothenberg Trust Customer Claim"). A copy of the

Rothenberg Trust Customer Claim without the exhibits is attached hereto as Exhibit C. The

Rothenberg Trust Customer Claim indicated that Ms. Klein withdrew substantial monies from

the BKHR Customer Account in excess of her investment, which withdrawal has adversely

affected Mr. Rothenberg in these proceedings.

11.     On March 1, 2010, the Court issued a decision affirming the Trustee's net

investment method for determining customer claims. That decision has been appealed, and a

final resolution on the issue is pending.

12.     On April 15, 2010, the Trustee sent the Rothenberg Trust the Determination

Letter rejecting the Rothenberg Trust Customer Claim and stating that the Rothenberg Trust is

not entitled to a payment because (a) no securities were purchased for the Rothenberg Trust

Customer Account and (b) the Rothenberg Trust Customer Account does not have a positive net

equity because more funds had been withdrawn than deposited into the account.

17653668                                3

## GROUNDS FOR OBJECTION

### I. The Determination Letter Fails To Comply With The Court's Order.

13.     The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. The Rothenberg Trust Customer Claim is evidenced by the Final Madoff Statement showing a value of $2,792,834.36 and listing the securities purportedly purchased for the account, which reflects the "Debtor's books and records" and by which the Trustee is bound absent proof that the owner of the Rothenberg Trust Customer Account did not have a "legitimate expectation" that the balance on the Final Madoff Statement, confirmations, credit advices and portfolio management report represented its property.

### II. The Trustee Does Not Set Forth the Legal Basis for Disallowing the Claim in Full.

14.     The Trustee failed to set forth a legal basis for the position he has taken for the calculation of the claim. *See* Determination Letter. The Determination Letter:

(a)     does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)     is insufficient to rebut the prima facie validity of the Rothenberg Trust Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

(c)     violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based, *see, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("an objection to a claim should . . . meet the [pleading] standards of an answer"); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

(d)      includes an exhibit, which purportedly calculates the money deposited less subsequent withdrawals without any supporting documentation, that is completely unsubstantiated and incorrect; and to the extent that the Trustee's "reconciliation" differs from the Rothenberg Trust Customer Claim, the Trustee should produce evidence supporting his "reconciliation."

**III.    The Trustee Has Failed to Honor Customer Expectation.**

15.      The Trustee has failed to fulfill the requirement that he honor the legitimate expectations of a customer.

16.      The legislative history of SIPA makes clear that Congress' intent in enacting the legislation was to protect the legitimate expectations of customers.  Congressman Robert Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance available to customers and expedite the process, commented on the purpose of the legislation as follows:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (*emphasis added*).

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account . . . By seeking to make customer accounts whole and returning them to customers in the form they existed

> on the filing date, the amendments . . . would satisfy customers'
> legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

17.    The Securities Investor Protection Corporation ("SIPC"), charged with administering SIPA, acknowledged that it was bound by the statute and the rules to satisfy the reasonable expectations of customers even when the securities had never been purchased, in the brief it submitted to the Court of Appeals for the Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits of SIPA) even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on the reasonable and legitimate customer expectations frequently yields much greater customer protection than would be the case if the transaction reality, not the claimants expectations, were controlling, as this court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

18.    Based on regular statements, confirmation reports and other communications received from Madoff, the partners of the accounts, at all times reasonably believed and expected that Madoff executed such transactions and that the Rothenberg Trust Customer Account  and the predecessor accounts actually held such securities.

19.    The Trustee's position in the Madoff case is completely inconsistent with the purpose and goals of SIPA and the position that SIPC has taken unequivocally with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

**IV.    The Trustee's Definition of "Net Equity" is Inconsistent
With SIPA and SIPA Rules, Practice and Pronouncement
and Case Law Interpreting the Statute and Rules.**

20.    The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the amount of the claim by appreciation in the Rothenberg Trust Customer Account, or in any prior account, or calculate the claim by counting only investment principal less withdrawals without regard to the securities reflected in the Final Madoff Statement.  The Court's decision affirming the Trustee's net investment method has been appealed and a final resolution on the issue is pending, and thus, no legal basis for the method exists.  The Trustee's calculation violates SIPA.

21.    15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee calculates "net equity" by reducing the principal contributed to the account less any withdrawals or appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior statement delivered by Madoff to the customer.   This is incorrect for the following reasons:

(a)    Notwithstanding the Court's determination, the Trustee's method of calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a customer's net equity claim as the value of the customer's "securities positions" in the customer's account, less any amount the customer owes the debtor, as of the date of the filing of the SIPA liquidation:

> The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . . ; minus

(B) any indebtedness of such customer to the debtor on the filing
date . . .[1]

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the

statute or interpreting case law and in fact, adds words and concepts to the statute which do not

exist.

(b)        Notwithstanding the Court's determination, the Trustee's method is

inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under

SIPA by SIPC provide for the classification of claims for cash or securities in accordance with

the written transaction confirmations sent by the broker-dealer to the customer.  17 C.F.R. §

300.500.  Pursuant to the Rule, a customer has a claim for securities if the customer has received

written confirmation that the securities have been purchased or sold for the account.

(c)        Notwithstanding the Court's determination, the Trustee's method is

inconsistent with the legislative history of the statute.  SIPA's legislative history emphasizes

Congress' intention that the statute protect customer expectations by ensuring that customers of

retail brokerage firms can rely on their account statements.  The Madoff statements and

confirmations sent to the Rothenberg Trust and the predecessor accounts indicated that it owned

a list of blue chip securities.  It makes no difference whether the securities were ever actually

purchased.

(d)        The Trustee's formula is an improper and wholly inadequate measure

of loss.  The trustee of the Rothenberg Trust deposited funds with Madoff with the expectation

---

[1]  The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most often in the context of a customer having borrowed from the debtor on margin.  *See, e.g.*, H.R. Rep. No. 95-746 at 21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker; *In re First St. Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D. Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock purchase was funded in part by borrowing on margin).

8

the amount would grow—the Rothenberg Trust Customer Account statements showed such

growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain.  In

*Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007),

the Court declined to set aside an arbitration award that appeared to apply an expectancy

measure of damages against a successor in a Ponzi scheme case and rejected the money in /

money out formula as not reflecting the expectations of the parties.  *Id.*  The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria, not to hide under a rock or lock in a safe, but for
> the express purpose of investment, with a hope – indeed a
> reasonable expectation – that it would grow. Thus, the out-of-
> pocket theory, which seeks to restore to Plaintiffs only the $21
> million they originally invested less their subsequent withdrawals,
> is a wholly inadequate measure of damages. Had Gruttadauria
> invested Plaintiffs' money as requested, their funds would have
> likely grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they
> hired an honest broker . . . , would have placed their money in the
> stock market during one of the strongest bull markets in recent
> memory. In fact, the fictitious statements issued by Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly invested, indicate that Plaintiffs' accounts would have
> grown to more than $37.9 million (even accounting for the
> withdrawal of more than $31.3 million). Plaintiffs thus could have
> reasonably believed that they were entitled to the full $37.9
> million balance shown, regardless of the amounts of their previous
> deposits and withdrawals.

*Id.*  This applies precisely to the Rothenberg Trust Customer Claim.

(e)    Notwithstanding the Court's determination, the Trustee's

Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn

testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation

proceedings.  For example, in the New Times Securities Services, Inc. ("New Times") SIPA

liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if

broker-dealer customers have been led to believe that "real existing" securities had been

purchased for their accounts, then those customers are entitled to the full value of their securities

positions as of the filing date, even if that value represents a substantial increase from the

purported purchase price of the securities and even if the securities had never been purchased.

Harbeck testified as follows:

> Harbeck: [I]f you file within sixty days, you'll get the securities,
> without question. Whether – if they triple in value, you'll get the
> securities . . . Even if they're not there.
>
> Court: Even if they're not there.
>
> Harbeck: Correct.
>
> Court: In other words, if the money was diverted, converted –
>
> Harbeck: And the securities were never purchased.
>
> Court. Okay.
>
> Harbeck: And if those positions triple, we will gladly give the
> people their securities positions.

Transcript at 37-39, *In re New Times Sec. Servs., Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28,

2000).

Moreover, SIPC faced very similar circumstances in the New Times liquidation and took

a very different position than it is taking in the Madoff case in support of the Trustee.  There, the

New Times Trustee's position on "net equity" was in full accord with SIPA, and thus directly

contrary to the Trustee's position in this case.  Specifically, with respect to any claims that were

based on confirmations and account statements reflecting securities positions in "real" securities

that could have been purchased (i.e., securities that actually existed on the public market and

whose valuations were objectively and publicly verifiable by the customers), the New Times

Trustee allowed all such net equity claims to the full extent of the filing date valuations of those

securities, even though none of the securities identified in those records had ever, in fact, been purchased by the broker-dealer.[2]

(f)    The Trustee's determination and the Court's determination are inconsistent with the case law.  The Second Circuit's discussion of SIPC's claims processing in *New Times,* the only case in this jurisdiction dealing with the issue in the Madoff case, further indicates that, with respect to customers who thought they were invested in listed securities, SIPC properly paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds – because Goren never executed the transactions – the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

---

[2] As with Madoff Securities and Bernard Madoff, New Times and its principal, William Goren, defrauded scores of investors by providing them with confirmations and account statements reflecting purported securities investments made on their behalf when, in fact, no such investments had been made and their money had, instead, been misappropriated for other purposes.  Two of the investment opportunities Goren purported to offer were: (1) money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real Securities").  *See In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*").  Goren's was "a classic Ponzi scheme," *id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased.  Consistent with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities positions as of the date of the liquidation filing.  When challenged by "Fictitious New Age Funds" customers who had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent concurrence of the SEC) vigorously defended their approach in court.

*In re New Times Sec. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at

23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> [R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality. Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or she holds the securities identified in the confirmation
> and therefore generally is entitled to recover those securities
> (within the limits imposed by SIPA), even where the purchase
> never actually occurred and the debtor instead converted the cash
> deposited by the claimant to fund that purchase . . . [T]his
> emphasis on reasonable and legitimate claimant expectations
> frequently yields much greater 'customer' protection than would
> be the case if transactional reality, not claimant expectations, were
> controlling, as this Court's earlier opinion in this liquidation well
> illustrates.

The trustee of the Rothenberg Trust is in the same position as those investors in the *New Times*

case who received confirmations and statements reflecting real securities. The statements

received reflected positions in various securities just as the statement in *New Times* reflected

positions in securities that were never purchased.

      (g)      The Trustee's position in the Madoff case is contradicted, not only by

SIPC's prior treatment of customers in the *New Times* case, but also by a statement that SIPC's

general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang

acknowledged that a Madoff customer is entitled to the securities in their account:

> Based on a conversation with the SIPC general counsel, Josephine
> Wang, if clients were presented statements and had reason to
> believe that the securities were in fact owned, the SIPC will be
> required to buy these securities in the open market to make the
> customer whole up to $500K each. So if Madoff client number
> 1234 was given a statement showing they owned 1000 GOOG
> shares, even if a transaction never took place, the SIPC has to buy
> and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.  This is a statement that Ms. Wang has not disavowed.

(h)    The Trustee's methodology also conflicts with other federal laws.  For example, Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually.  Yet the Trustee's position is that the income earned by customers on their investments is not their money.  In addition, some customers were required to take distribution from their retirement accounts.  Yet the Trustee is deducting from their customer claim the mandatory withdrawals that the customers were required by law to take.

22.    In sum, the Trustee has created his own definition of "net equity" that is not based on statutes, prior practice or case law.  The procedure is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying SIPC insurance to the thousands of Madoff investors who, like the trustee of the Rothenberg Trust Customer Account, have depended upon their Madoff investments for their current and future living expenses.

23.    Because of his refusal to comply with SIPA's mandate that he "promptly" satisfy customer claims based on their last statements, 15 U.S.C. § 78fff- 3(a) and 4(c), the Trustee employs a vast team of forensic accountants to pore through decades of records to determine each customer's net investment before SIPC pays any amount to a customer.  Clearly, this is inconsistent with the statutory scheme and the legislative intent.  The Rothenberg Trust's "securities position" is readily ascertainable from the Final Madoff Statement.

**V.    The Trustee Has No Legal Basis For Reducing The Claim.**

24.    The Trustee's action in reducing the amount shown on the Rothenberg Trust Customer Claim by any prior gains or withdrawals reflected on the Final Madoff Statement or prior statements is an attempt to avoid such gains without alleging any grounds for avoidance or

17653668

13

proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any

such disallowance is improper and unjustified, and the Determination Letter should be stricken

on that ground alone.  *See* Fed. R. Bankr. P. 7001(1) & 7008.  The disallowance or reduction of

transfer investments from another Madoff account has no legal basis, as the Rothenberg Trust

took such transfer for value and without notice of impropriety or fraud.  Moreover, transfers

were made into other Madoff accounts which have been lost as a result of the Madoff

bankruptcy.  As a result, the deductions penalize the Rothenberg Trust Customer Account twice

for the same transaction.

**VI.    The Trustee's Reductions Are Barred By The Statue Of Limitations.**

25.    The Trustee's action in reducing the amount shown on the Rothenberg Trust

Customer Claim by gains or withdrawals from the account and any prior Madoff account from

which funds were transferred is an attempt to avoid such gains and withdrawals without alleging

any grounds for avoidance or proving that such gains are avoidable under the state law

avoidance provisions or other theories of law.  The avoidance of those gains and withdrawals

have been taken well beyond any limitations period for avoidance of a claim under either state

or federal law.

26.    In addition, the Trustee must take into account deposits and transfers for each

customer.

**VII.    The Trustee's Denial Is Inconsistent With SIPA.**

27.    SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim,

and (b) customers have an unsecured claim against customer property for the balance of their

claims which is paid pro rata with other customers.  *See* 15 U.S.C. § 78fff-3(a) ("In order to

provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC

shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . .

17653668                                                    14

claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). As evidenced by the Final Madoff Statement, the Rothenberg Trust has a valid claim in the amount of $2,792,834.36. Therefore, the Rothenberg Trust is entitled to an advance of $500,000 and claims against customer property for the remainder.

**VIII.  The Trustee Has Not Met His Burden of Proving the Net Equity Calculation.**

28.     The Determination Letter purports to calculate the Rothenberg Trust's "net equity" on the basis of withdrawal transactions. To the extent the Rothenberg Trust has incomplete records to substantiate the Trustee's net equity calculation, the Trustee should be required to prove the alleged withdrawal transactions by furnishing the appropriate records to the Rothenberg Trust and, absent such records, such transactions should be deleted from the calculation of the Rothenberg Trust's "net equity." It is unreasonable to anticipate that customers would have access to and/or maintain all account records given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of Madoff; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Likewise, the Trustee should be required to prove that the deposit transactions are completely listed by furnishing the appropriate records to the Rothenberg Trust.

29.     In addition, the March 26, 2006 $1,000,000 transfer from the Rothenberg Trust Customer Account to Account No. 1-CM963-3 referenced in the Determination Letter should not be a "money out" withdrawal in calculating the Rothenberg Trust's net equity. The $1,000,000 was transferred to another Madoff customer account, which Mr. Rothenberg has since lost as result of the Madoff ponzi scheme.

30.     Furthermore, the transfer in December 2006 referenced in the Determination

Letter was withdrawn by the then-existing owner of the account, BKHR, not the Rothenberg

Trust, and paid to Ms. Klein, a partner of BKHR at the time of transfer.  Accordingly, the

Trustee should not characterize the $1,873,000 transfer as a "money out" withdrawal against Mr.

Rothenberg in calculating the Rothenberg Trust's net equity.

## IX.    The Rothenberg Trust Is Entitled To Interest On Its Investments.

31.     In the event that the Court should determine that customer claims should not be

allowed in the amount of the Final Madoff Statement, then in the alternative, the Rothenberg

Trust is entitled to recover interest or appreciation on its investments based upon the following.

(i)     Under New York law, which is applicable here, funds deposited with the

Debtors under these circumstances are entitled to interest.  *See, e.g.,* N.Y. C.P.L.R. § 5004; N.Y.

Gen. Oblig. § 5-501, *et seq*.  Accordingly, the Rothenberg Trust Customer Claim should be

recalculated by adding interest to all funds deposited.

(ii)    Under New York law, which is applicable here, customers are entitled to

any returns Madoff earned on the deposited funds under principles of unjust enrichment.

Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff

on the customer's deposits.  *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist.

LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and

unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v.

Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for

unjust enrichment and conversion).

(iii)   The Rothenberg Trust is entitled to interest on its investment under

federal securities laws.  In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court

analyzed the different measures of recovery of "actual damages" for fraud, primarily including

rescission and restitution. The *Randall* Court concluded that Congress intended to deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted. *See id*. at 664 (citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). The *Randall* Court continued by holding that:

> This deterrent purpose is ill-served by a too rigid insistence on limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 940 (2d Cir. 1984)).

(iv)    The Rothenberg Trust is entitled to an adjustment from the initial deposit in the account to reflect present day values.

## RESERVATION OF RIGHTS

32.    The Rothenberg Trust reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of the Rothenberg Trust's right to object on any additional grounds.

33.    The Rothenberg Trust reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

34.    The Rothenberg Trust reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

## RELIEF REQUESTED

For the reasons stated herein, the Rothenberg Trust Customer Claim should be allowed in its entirety in the amount of $2,792,834.36, which is the amount stated on the Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, this Court should direct SIPC to immediately replace $500,000 of the securities in the Rothenberg Trust Customer Account based upon the values

reflected on the Final Madoff Statement and/or advance the Rothenberg Trust $500,000 from the SIPC fund. At a minimum, SIPC should replace Mr. Rothenberg's losses and Mr. Rothenberg should be relieved from any liability relating to the excess profits received by Ms. Klein.

For the reasons stated herein, the Determination Letter should be stricken.

The Rothenberg Trust requests such other relief as may be just and equitable.

Dated: May 12, 2010                    By:

Harvey E. Rothenberg

17653668

18

# EXHIBIT A

**(Determination Letter)**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]


### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM


April 15, 2010

Harvey E. Rothenberg Rev Trust UAD 7/24/02
300 SE 5th Avenue, Suite #6130
Boca Raton, FL 33432


Dear Harvey E. Rothenberg Rev Trust UAD 7/24/02:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No. 1CM558 designated as Claim Number 011395 and Claim Number 011394 (the latter of which is duplicative of and superceded by Claim Number 011395) and combined ("Combined Claim") for purposes of this determination. This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim for securities is **DENIED**. No securities were ever purchased for your account.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300029464

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $4,250,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $2,255,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($1,995,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after April 15, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_Irving H. Picard_

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities

300029464

3

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT | |
|---|---|---|---|---|
| 1/4/1999 | TRANS FROM 1CM27930 | $1,235,985.11 | $635,000.00 | ≠ *246 A* |
| 1/19/1999 | CHECK | $245,000.00 | $245,000.00 | ✓ |
| 5/3/1999 | CHECK | $125,000.00 | $125,000.00 | ✓ |
| 7/28/1999 | CHECK | $100,000.00 | $100,000.00 | ✓ |
| 7/28/1999 | CHECK | $100,000.00 | $100,000.00 | ✓ |
| 7/28/1999 | CHECK | $50,000.00 | $50,000.00 | ✓ |
| 8/25/1999 | TRANS FROM 1CM27930 | $3,966.80 | $0.00 | |
| 2/12/2002 | CHECK | $700,000.00 | $700,000.00 | ✓ |
| 2/12/2002 | CHECK | $300,000.00 | $300,000.00 | ✓ |
| **Total Deposits:** | | $2,859,951.91 | $2,255,000.00 | |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT | |
|---|---|---|---|---|
| 1/14/2004 | CHECK | ($50,000.00) | ($50,000.00) | |
| 1/15/2004 | RETURNED CHECK | $50,000.00 | $50,000.00 | |
| 4/29/2004 | CHECK | ($150,000.00) | ($150,000.00) | ✓ |
| 6/4/2004 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 7/1/2004 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 10/1/2004 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 1/3/2005 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 4/1/2005 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 7/1/2005 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 10/3/2005 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 1/3/2006 | CHECK | ($75,000.00) | ($75,000.00) | ✓ |
| 3/27/2006 | TRANS TO 1CM96330 | ($1,000,000.00) | ($1,000,000.00) | → *10!* |
| 4/3/2006 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 7/3/2006 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 10/2/2006 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 12/21/2006 | CHECK | ($2,000,000.00) | ($2,000,000.00) | ✓ |
| 4/2/2007 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 7/2/2007 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 10/1/2007 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 1/2/2008 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 4/1/2008 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 7/1/2008 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| 10/1/2008 | CHECK | ($50,000.00) | ($50,000.00) | ✓ |
| **Total Withdrawals:** | | ($4,250,000.00) | ($4,250,000.00) *3,250,000* | |
| **Total deposits less withdrawals:** | | ($1,390,048.09) | ($1,995,000.00) | |

300029464

# **EXHIBIT B**

## **(Final Madoff Statement)**

PAGE 2/6 * RCVD AT 5/11/2010 8:40:00 AM [Central Daylight Time] * SVR:CHIZKRAF01/22 * DNIS:4777 * CSID:561 391 3438 * DURATION (mm-ss):01-42

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-1061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02

300 SE 5TH AVENUE SUITE #6130
BOCA RATON          FL    33432

| PERIOD ENDING | YOUR ACCOUNT NUMBER | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 11/30/08 | 1-CM550-3-0 | ******2962 | 1 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD RECEIVED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 168,443.50 | |
| 11/12 | 1,534 | | 2522 | WAL-MART STORES INC | 55.830 | 85,704.22 | |
| 11/12 | 1,003 | | 3024 | INTERNATIONAL BUSINESS MACHS | 87.270 | 87,571.81 | |
| 11/12 | 3,717 | | 6848 | EXXON MOBIL CORP | 72.880 | 271,042.96 | |
| 11/12 | 4,071 | | 7350 | INTEL CORP | 14.510 | 59,232.21 | |
| 11/12 | 1,947 | | 11676 | JOHNSON & JOHNSON | 59.580 | 116,079.26 | |
| 11/12 | 2,655 | | 16002 | J.P. MORGAN CHASE & CO | 38.530 | 102,403.15 | |
| 11/12 | 1,416 | | 20327 | COCA COLA CO | 44.660 | 63,294.56 | |
| 11/12 | 826 | | 24653 | MCDONALDS CORP | 55.370 | 45,760.62 | |
| 11/12 | 1,534 | | 28979 | MERCK & CO | 28.550 | 43,856.70 | |
| 11/12 | 5,605 | | 33305 | MICROSOFT CORP | 21.810 | 122,469.05 | |
| 11/12 | 2,832 | | 37631 | ORACLE CORPORATION | 17.300 | 49,106.60 | |
| 11/12 | 1,121 | | 50609 | PEPSICO INC | 56.410 | 63,279.61 | |
| 11/12 | 649 | | 51111 | APPLE INC | 100.780 | 65,431.22 | |
| 11/12 | 4,779 | | 54935 | PFIZER INC | 16.940 | 81,147.26 | |
| 11/12 | 1,121 | | 55437 | ABBOTT LABORATORIES | 54.610 | 61,261.81 | |
| 11/12 | 2,124 | | 59261 | PROCTER & GAMBLE CO | 64.080 | 136,189.92 | |
| 11/12 | 767 | | 59763 | AMGEN INC | 59.160 | 45,405.72 | |
| 11/12 | 1,475 | | 63587 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 64,369.00 | |
| 11/12 | 3,540 | | 64089 | BANK OF AMERICA | 21.590 | 76,569.60 | |
| 11/12 | 1,180 | | 67913 | QUALCOMM INC | 33.770 | 39,895.60 | |
| 11/12 | 3,035 | | 68415 | CITI GROUP INC | 12.510 | 40,128.85 | |
| 11/12 | 885 | | 72239 | SCHLUMBERGER LTD | 49.480 | 43,824.80 | |
| 11/12 | 2,124 | | 72741 | COMCAST CORP | 16.510 | 35,151.24 | |
| | | | | CL A | | | |
| | | | | CONTINUED ON PAGE  2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 3/6 • RCVD AT 5/11/2010 8:40:00 AM [Central Daylight Time] • SVR:CHI2XRF01/22 • DNIS:4777 • CSID:561 391 3438 • DURATION (mm-ss):01-42

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02

300 SE 5TH AVENUE SUITE #6130
BOCA RATON          FL  33432

PERIOD ENDING 11/30/08
YOUR ACCOUNT NUMBER 1-CM558-3-0
YOUR TAXPAYER IDENTIFICATION NUMBER ******2962
PAGE 2

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 4,189 | | 76565 | AT&T INC | 27 | 113,270.00 | |
| 11/12 | 1,062 | | 77067 | CONOCOPHILIPS | 52.510 | 55,807.62 | |
| 11/12 | 708 | | 80891 | UNITED PARCEL SVC INC CLASS B | 52.040 | 36,872.32 | |
| 11/12 | 4,307 | | 81393 | CISCO SYSTEMS INC | 16.730 | 72,228.11 | |
| 11/12 | 1,239 | | 85217 | U S BANCORP | 29.530 | 36,636.67 | |
| 11/12 | 1,475 | | 85719 | CHEVRON CORP | 73.430 | 108,368.25 | |
| 11/12 | 708 | | 89543 | UNITED TECHNOLOGIES CORP | 53.160 | 37,655.28 | |
| 11/12 | 7,493 | | 90045 | GENERAL ELECTRIC CO | 19.630 | 147,386.59 | |
| 11/12 | 2,006 | | 93869 | VERIZON COMMUNICATIONS | 30.410 | 61,082.46 | |
| 11/12 | 177 | | 94371 | GOOGLE | 337.400 | 59,726.80 | |
| 11/12 | 2,478 | | 98195 | WELLS FARGO & CO NEW | 29.800 | 73,943.40 | |
| 11/12 | 1,770 | | 98697 | HEWLETT PACKARD CO | 34.900 | 61,843.00 | |
| 11/12 | | 2,700,000 | 20808 | U S TREASURY BILL DUE 2/12/2009  2/12/2009 | 99.936 | | 2,698,272.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | .65 |
| 11/12 | 2,210 | | 15906 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 2,210.00 |
| 11/12 | 16,550 | | 25275 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,550.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 2.03 |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 4/6 * RCVD AT 5/11/2010 8:40:00 AM [Central Daylight Time] * SVR:CHI2XRFAX01/22 * DNIS:4777 * CSID:561 391 3438 * DURATION (mm-ss):01-42

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222
Affiliated with

HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02

300 SE 5TH AVENUE SUITE #6130
BOCA RATON         FL   33432

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 11/30/08 | ******2962 | 3 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YOUR ACCOUNT NUMBER 1-CM550-3-0 | | | |
| 11/19 | | 16,550 | 50537 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 16,550.00 |
| 11/19 | 175,000 | | 55171 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 174,870.50 | |
| 11/19 | 18,446 | | 59576 | 3/26/2009 FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 18,446.00 | |
| | | | | NEW BALANCE | | 333,289.59 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 4,189 | | | AT&T INC | 28.560 | | |
| | 1,221 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 767 | | | AMGEN INC | 55.540 | | |
| | 649 | | | APPLE INC | 92.670 | | |
| | 3,540 | | | BANK OF AMERICA | 16.250 | | |
| | 1,475 | | | CHEVRON CORP | 79.010 | | |
| | 4,307 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 3,835 | | | CITI GROUP INC | 8.290 | | |
| | 1,416 | | | COCA COLA CO | 46.870 | | |
| | 2,124 | | | COMCAST CORP | 17.340 | | |
| | | | | CL A | | | |
| | 1,062 | | | CONOCOPHILLIPS | 52.520 | | |
| | 3,717 | | | EXXON MOBIL CORP | 80.150 | | |
| | 7,493 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE      4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 5/6 * RCVD AT 5/11/2010 8:40:00 AM [Central Daylight Time] * SVR:CHI2XRRF01/22 * DNIS:4777 * CSID:561 391 3438 * DURATION (mm-ss):01-42

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02

300 SE 5TH AVENUE SUITE #6130
BOCA RATON          FL      33432

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-CM558-3-0 | 11/30/08 | *******2962 | 4 |

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 177 | | | GOOGLE | 292.960 | | |
| | 1,770 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 4,071 | | | INTEL CORP | 13.800 | | |
| | 1,003 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 2,655 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,947 | | | JOHNSON & JOHNSON | 58.500 | | |
| | 826 | | | MCDONALDS CORP | 58.750 | | |
| | 1,534 | | | MERCK & CO | 26.720 | | |
| | 5,605 | | | MICROSOFT CORP | 20.220 | | |
| | 2,832 | | | ORACLE CORPORATION | 16.090 | | |
| | 1,121 | | | PEPSICO INC | 56.700 | | |
| | 4,779 | | | PFIZER INC | 16.430 | | |
| | 1,475 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 2,124 | | | PROCTER & GAMBLE CO | 44.350 | | |
| | 2,180 | | | QUALCOMM INC | 33.570 | | |
| | 885 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 10,446 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 1,239 | | | U S BANCORP | 26.980 | | |
| | 708 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 175,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 | | | |
| | | | | 3/26/2009 | | | |
| | 708 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE 5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
☐ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 331-1343
Fax (212) 838-4061

Madoff Securities International Limited
Affiliated with
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (20) 7493 6222

HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02
300 SE 5TH AVENUE SUITE #6130
BOCA RATON           FL      33432

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | YOUR ACCOUNT NUMBER | PAGE |
|---|---|---|---|
| 11/30/08 | ******2962 | 1-CM558-3-0 | 5 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 2,006 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,534 | | | WAL-MART STORES INC | 55.680 | | |
| | 2,478 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES      SHORT | | | |
| | | | | LONG | | | |
| | | | | 2,792,834.36 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 6/6 * RCVD AT 5/11/2010 8:40:00 AM [Central Daylight Time] * SVR:CHI2XRF01/22 * DNIS:4777 * CSID:561 391 3438 * DURATION (mm-ss):01-42

## **EXHIBIT C**

**(Customer Claim)**

Harvey E. Rothenberg
300 SE 5th Avenue
Boca Raton, FL 33432

**Via Certified Return Receipt Mail**
June 17, 2009

Mr. Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities
Claims Processing Center
2100 McKinney Avenue, Ste 800
Dallas, TX 75201

Re: Bernard Madoff Investment Securities, LLC
    Account #: 1-CM558-3-0

Dear Mr. Picard,

This letter supplements the enclosed claim form applying for the SIPC insurance.

The reason for the delay in submitting this claim is the complexity of it and that I had to research back to 1994 for documents that were difficult to locate.

When I participated in your telephone conference call on Friday, February 20, 2008, I understood that you wanted one claim submitted for the entity filing the claim (Harvey E. Rothenberg Revocable Trust) and that is what I am attempting to accomplish. This Madoff account, which ended as Harvey E. Rothenberg Revocable Trust (acct #1-CM558-3) began in 1994 as CHORO Associates (acct #1-CM279-3). CHORO had two equal partners, Rothenberg and CHO Enterprises (David Oestreich).

In 1996, a family friend, Betty Klein pleaded with me to take her into Madoff. She did not have the minimum investment requirement so I put her into my share of CHORO on a pro rata basis with her investment by forming a new partnership entitled BKHR Partners with two partners (Rothenberg and Klein).

In 1998, CHORO was terminated and a new account for BKHR was started in Madoff. The BKHR share of CHORO (50%) was internally transferred to the new BKHR account. (acct #1-CM558-3-0)

Over the following years, 1999 thru 2006, additional monies were invested by both parties, but substantially more by Rothenberg. (See Exhibit I)

In 2006, we decided to end the partnership investment and Klein received her total share of her investment *with its accumulated profits*. Rothenberg changed the name on the

Account #: 1-CM558-3-0
Page 2

account to Harvey E. Rothenberg Revocable Trust and continued the account with the
same account number until the bankruptcy on December 11, 2008.

Although Rothenberg withdrew some monies (which reduced his equity in BKHR) over
the years 2004-2008 to pay the income taxes on the "phantom profits" his cash
investment less withdrawals resulted in a cash loss. (See Exhibit I)

Klein, who withdrew $1,873,737 less $446,000 earlier investment received a real cash
profit of $1,426,937. **I have explained the ponzi scheme to Klein and advised her that
this "profit" is not her money but some of mine and other investors who lost their
capital investments.** I requested that Klein return the $1,426,937 profit to BKHR, then
BKHR would reimburse Rothenberg for his loss of $429,490 and send a check to you
(victim's fund) for the remainder $997,447. Klein refused to follow this procedure.

I am advising you of the above facts so that when you "claw back" excesses on this
account, you should notify her directly and consider this account as two separate
situations; Rothenberg as a loss eligible to receive SIPC and Klein, with a substantial
profit, to be "clawed back". If the "clawback" amount is treated as a partnership, Klein's
"profit" will be reduced by my loss and Klein will retain an amount equal to my loss.
This is an unfair process since my loss will not be eligible for SIPC since BKHR had a
profit. The account only shows my name "BKHR c/o Harvey E. Rothenberg" Klein's
involvement is noted in the BKHR partnership Agreement. (See Exhibit IV). You can
contact Klein at the following:

    Ms. Betty Klein
    3101 Palisades Avenue
    Bronx, NY 10463
    Tel: 718-884-5636

Please be advised that at no time did I take or receive any fees or commissions from these
accounts.


Very Truly Yours,


Harvey E. Rothenberg

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_

HOME:__

Taxpayer I.D. Number (Social Security No.)

_____ REDACTED _____

Account Number:    1CM558
HARVEY E ROTHENBERG
REV TRUST UAD 7/24/02
300 SE 5TH AVENUE SUITE #6130
BOCA RATON, FL  33432

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

*****************************************************************

1.    Claim for money balances as of **December 11, 2008**:
    a.    The Broker owes me a Credit (Cr.) Balance of     $_____ 0
    b.    I owe the Broker a Debit (Dr.) Balance of       $_____ 0

502180406                                    1

c.   If you wish to repay the Debit Balance,
     please insert the amount you wish to repay and
     attach a check payable to "Irving H. Picard, Esq.,
     Trustee for Bernard L. Madoff Investment Securities LLC."
     If you wish to make a payment, **it must be enclosed**
     with this claim form.                                    $_____0_____

d.   If balance is zero, insert "None."                          _None_

2.   Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|-----|-----|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |

This account continued after BKHR Partner Betty Klein liquidated her position in the Madoff account. Please see enclosed letter and documentation

2007 through Dec 11, 2008 (bankruptcy)

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.    Have you or any member of your family
      ever filed a claim under the Securities
      Investor Protection Act of 1970?  if
      so, give name of that broker.    _____    __✓__

      Please list the full name and address of anyone assisting you in the
      preparation of this claim form:_____*None*_____
      _____.

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _June 22, 2009_    Signature _____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

rovide your office and home telephone no.

OFFICE:

HOME:_____ REDACTED

Taxpayer I.D. Number (Social Security No.)

_____

BKHR Partners

~~1CM533~~ 1CM 558

c/o HARVEY E ROTHENBERG
300 SE 5TH AVENUE  STE #6130
BOCA RATON, FL  33432

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

**************************************************************************

1.    Claim for money balances as of **December 11, 2008**:
    a.    The Broker owes me a Credit (Cr.) Balance of          $_____O_____
    b.    I owe the Broker a Debit (Dr.) Balance of            $_____O_____

502180406                                    1

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                                    $_____0_____

d.    If balance is zero, insert "None."                    __None.__

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a.  The Broker owes me securities | ✓ | |
| b.  I owe the Broker securities | | ✓ |

c.    If yes to either, please list below:

Number of Shares or
Face Amount of Bonds

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | This partnership consists of two | | |
| | unequal partners Betty Klein and | | |
| | Harvey E Rothenberg with varying % | | |
| | of equities. See enclosed letter and documentation | | |
| | Partnership invested from 1996 to 2006 | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:**   **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.    Have you or any member of your family
      ever filed a claim under the Securities
      Investor Protection Act of 1970?  if
      so, give name of that broker.                   _____   __✓___

      Please list the full name and address of anyone assisting you in the
      preparation of this claim form:_____ *None* _____

      _____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _June 22, 2009_  Signature _____

Date _____  Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

~~OFFICE:~~ REDACTED

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

1CM279

CHoRo Associates

HARVEY E ROTHENBERG (Partner)

~~300 EAST 72ND STREET APT #3301~~
~~NEW YORK, NY 10021-4758.~~

300 SE Fifth Ave Unit 6130
Boca Raton, FL 33432

(If incorrect, please change)

**NOTE:** BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE **March 4, 2009.** CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE **July 2, 2009,** WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of **December 11, 2008**:
    a.    The Broker owes me a Credit (Cr.) Balance of    $_____0_____
    b.    I owe the Broker a Debit (Dr.) Balance of     $_____0_____

c.  If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                      $_____ *O*

d.  If balance is zero, insert "None."                       *None*

2.     Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|  | YES | NO |
|---|---|---|
| a. The Broker owes me securities | ✓ |  |
| b. I owe the Broker securities |  | ✓ |

c.  If yes to either, please list below:

Number of Shares or
Face Amount of Bonds

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|

*This partnership consisted of two equal partners; Harvey E. Rothenberg and CHO Enterprises (David Oestreich) See enclosed letter and documentation Partnership existed from 1994 to 1998*

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                                        2

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.      Have you or any member of your family
        ever filed a claim under the Securities
        Investor Protection Act of 1970?  if
        so, give name of that broker.              _____   ____✓___

        Please list the full name and address of anyone assisting you in the
        preparation of this claim form:_____None_____
        _____.

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _June 22, 2009_    Signature_____

Date _____    Signature_____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                          4

Account #: 1-CM558-3-0

<u>Enclosures</u>

I.      Chart of Investments, withdrawals, transfers and final statement

II.     Proof of cash investments transfers and withdrawals

III.    Monthly statements showing investments, withdrawals and transfers

IV.     Partnership agreements, Termination agreement and transfers

Exhibit I    Analysis of Cash Investments, Withdrawals and Transfers

| Year | BKHR | HER | CHO | BK | Remarks |
|---|---|---|---|---|---|
| 1994 | CHORO 500,000 | 250,000 | 250,000 | — | |
| | 300,000 | 150,000 | 150,000 | — | |
| 1995 | −30,000 | −15,000 | −15,000 | — | |
| 1996 | 500,000 | 150,000 | 250,000 | 100,000 | BKHR Partners formed |
| 1997 | 0 | 0 | 0 | | |
| 1998 | 0 | 0 | 0 | | CHORO terminated 50% funds tranferred to BKHR |
| 1999 | BKHR 250,000 | 150,000 | | 100,000 | BKHR account opened |
| | 245,000 | 123,200 | | 121,800 | deposit in BKHR from BJ Assoc |
| | 125,000 | 0 | | 125,000 | |
| 2000 | 0 | 0 | | 0 | |
| 2001 | 0 | 0 | | 0 | |
| 2002 | 1,000,000 | 1,000,000 | | 0 | |
| 2003 | 0 | 0 | | 0 | |
| 2004 | −150,000 | −148,000 | | | |
| | −225,000 | −225,000 | | −2,000 | legal fee to TJM for Amendmt |
| 2005 | −300,000 | −300,000 | | 0 | |
| 2006 | 1,000,000 | — | | 0 | transfer to Patriot (Madoff) |
| | −225,000 | −225,000 | | −1,852,370 | BK withdraws funds |
| | −2,000,000 | | | −1,077 | BK withdraws funds |
| 2007 | HERROU | −100,000 | | 0 | transfer from BKHR |
| | −150,000 | −150,000 | | 0 | |
| | | −30,710 | | −20,290 | final distribution from BKHR |
| 2008 | −200,000 | −200,000 | | — | |

Total Deposits   $ 1,823,200          $ 446,800
Total Withdrawals  1,393,710          $ 1,873,737
    Loss      $ 429,490          Gain $ 1,426,937

**Exhibit II: Proof of Cash Investments, Transfers, Withdrawals**

1.  Letter from CHO Enterprises (CHORO Associates) dated February 1, 1994 to Madoff (Cohmad) opening an account and enclosing two checks for investment, each in the amount of $250,000.00

2.  Letter dated July 5, 1994 from CHO Enterprises (CHORO) enclosing for investment, two checks each in the amount of $150,000.00.

3.  Madoff confirmation of 9/20/95 for $30,000 withdrawal from CHORO. $15,000 to each partner

4.  Madoff confirmation slip crediting CHORO with $250,000 deposit; $150,000 from Rothenberg, $100,000 from Klein.

5. Letter of April 29,1999 to Madoff notifying of additional investment of Betty Klein in amount of $125,000

6.  Three Madoff confirmation slips:

> a) 1/04/99   crediting transfer at $1,235,985 from CHORO to BKHR
> b) 1/19/99   crediting check of $245,000 into BKHR from Rothenberg from BJ Associates
> c) 5/30/99   crediting check of $125,000 into BKHR from Klein

7.  Letter dated July 27, 1999 to Madoff enclosing three checks totaling $250,000.00 into BKHR and Madoff confirmation slips crediting account dated 7/28/99.

8.  Letter dated February 11, 2002 to Madoff enclosing two checks totaling $1,000,000.00 additional investment by Rothenberg, and Madoff confirmation slips dated 2/12/02

9.  Madoff confirmation slips dated 3/27/06 of transfer from BKHR to Patriot Equities, LLC (new account #1-CM963-3). Debit and credit slips

10. Letter to Madoff dated January 3, 2006 requesting withdrawal of $2,000,000.00, ending BKHR Account at Madoff and starting Harvey E Rothenberg Revocable Trust Account (same account number)

11. Madoff check to BKHR dated 12/21/06 for $2,000,000.00

12. Three checks issued to Betty Klein from BKHR and BKHR bank statement dated January 31, 2007 showing checks issued for:

|       |              |                        |
|-------|--------------|------------------------|
| a)    | $1,852,369.48 | dated December 25, 2006 |
| b)    | $20,290.04   | dated April 12, 2007   |
| c)    | $1,077.21    | dated December 25, 2006 |
|       | $1,873,736.73 | TOTAL                  |

13.    BKHR bank statement dated February 28,2007 showing Rothenberg transfer of $100,000 to his account at Citibank.

14. BKHR bank statement dated March 31, 2007 showing final distribution of $2,000,000. Madoff check; $30,102.00 to Rothenberg and $20,290.00 to Klein

**Exhibit III: Monthly Madoff Statements showing investments, transfers and withdrawals**

Madoff monthly statement as follows:

1.  2/28/94 Investments to open CHORO account. Two checks for $250,000 each.

2.  7/31/94 Investments in CHORO.  Two checks $150,000 each

3.  12/31/96 Investments in CHORO. Two checks $250,000 each

4.  12/13/98  Final statement of CHORO $2,471,970   market value

5.  1/31/99 Transfers of CHORO values to BKHR each $1,235,985 and other partner

6.  1/31/99 Investment in BKHR $245,000.00

7.  5/31/99 Investment in BKHR $125,000.00

8.  7/31/99 Investments in BKHR three checks $100,000.00 & $100,000.00 & $50,000.00

9.  2/28/02 Investments in BKHR two checks $300,000.00 & $700,000.00

10.  4/30/04 withdrawal BKHR $150,000 (($2,000.00 expense for legal fees)

11.  6/30/04 withdrawal from BKHR  $75,000.00

12.  7/31/04 withdrawal from BKHR  $75,000.00

13. 10/31/04 withdrawal from BKHR  $75,000.00

14.  1/31/05 withdrawal from BKHR  $75,000.00

15.  4/30/05 withdrawal from BKHR  $75,000.00

16.  7/31/05 withdrawal from BKHR  $75,000.00

17. 10/31/05 withdrawal from BKHR  $75,000.00

18. 1/31/06 withdrawal from BKHR  $75,000.00

19. 3/31/06 transfer from BKHR to Patriot Equities (acct #1-CM-963330) of $1,000,000

20. Patriot Equities Statement 3/31/06 showing receipt of funds.

Continued
**Exhibit III: Monthly Madoff Statements showing investments, transfers and withdrawals**

21.  4/30/06 withdrawal from BKHR  $50,000.00

22.  7/31/06 withdrawal from BKHR  $50,000.00

23. 10/31/06 withdrawal from BKHR  $50,000.00

24. 12/31/06 withdrawal from BKHR  $2,000,000.00 for distribution to Klein

25. Account name change to Harvey E Rothenberg Revocable Trust 4/30/07 and withdrawal from BKHR  $50,000.00

26.  7/31/07 withdrawal from Harvey E Rothenberg Revocable Trust  $50,000.00

27. 10/31/07 withdrawal from Harvey E. Rothenberg Revocable Trust  $50,000.00

28.  1/31/08 withdrawal from Harvey E Rothenberg  $50,000.00

29.  4/30/08 withdrawal from Harvey E Rothenberg  $50,000.00

30.  7/31/08  withdrawal from Harvey E Rothenberg  $50,000.00

31. 10/31/08 withdrawal from Harvey E Rothenberg  $50,000.00

32. 11/30/08  Final Statement from BLMIS for Harvey E. Rothenberg Revocable Trust

**Exhibit IV: Partnership Agreements, Transfers, Termination**

1.  Joint venture Agreement of CHORO Associates dated January 20, 1994 between Harvey E. Rothenberg and CHO Enterprises Inc. (David Oestreich)

2.  Partnership Agreement of BKHR Partners dated December 6, 1996 between Harvey E. Rothenberg and Betty Klein

3.  Amendment to BKHR Partners Agreement dated December 4, 1998

4.  Agreement to terminate Joint venture of CHORO Associates dated December 14, 1998

5.  Letter to Madoff dated December 14, 1998 notifying of termination of CHORO and to transfer 50% of proceeds to new account BKHR Partners

6.  Letter to Betty Klein dated January 8, 1999 notifying her of item 5 above

7. a)  March 1, 2004  Letter to Klein regarding Third Amendment dated February 2004 which is attached
   b) Letter attorney Thomas Malmud forwarded executed Third Amendment
   c) letter to Klein enclosed executed Third Amendment

8.  Letter to Madoff requesting transfer of $1,000,000 from BKHR account to new Madoff account Patriot Equities, LLC. (acct #1-CM963) (Customer Claim by patriot Equities, LLC.)

9.  Partnership agreement for Patriot Equities indicating Harvey E Rothenberg as partner

10. Letter to Liquidation Trustee dated January 5, 2009 from Patriot Equities confirming that $1,000,000 was transferred and lost in the Ponzi scheme

11.  Madoff confirmation dated March 27, 2006 of $1,000,000 transfer to Patriot Equities, LLC debiting BKHR

12. Madoff confirmation notice dated March 27, 2006 confirming money was received from 1-CM-558-3-0 (BKHR)