Helen Davis Chaitman (4266)
Becker & Poliakoff LLP
45 Broadway
New York, New York 10006
HCHAITMAN@BECKER-POLIAKOFF.COM
*Attorneys for Diane and Roger Peskin,*
*Maureen Ebel, and a large group of other customers*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                                        Defendant. | Case No.: _____<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>                                        Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

        Diane and Roger Peskin and Maureen Ebel, and a large group of other customers of

Bernard L. Madoff Investment Securities LLC ("Madoff") ("Objectants"),[1] submit this

memorandum of law in support of their motion for leave to appeal, pursuant to 28 U.S.C.

§ 158(a) and Federal Rule of Bankruptcy Procedure 8003, the May 5, 2010 order (entered on

May 6, 2010 – Doc # 2251) of the United States Bankruptcy Court for the Southern District of

New York Approving Applications for Allowance of Interim Compensation for Services

Rendered and Reimbursement of Expenses (the "Order") to the extent that the Order granted the

---

[1] Becker & Poliakoff LLP files this motion on behalf of all of the customers listed on Exhibit A to the accompanying 5/19/10 Declaration of Helen Davis Chaitman ("Chaitman Decl.").

third applications for interim compensation of Irving H. Picard, Trustee (the "Trustee"), and his

counsel, Baker & Hostetler LLP ("B&H").  A copy of the Order is attached as Exhibit B to the

Chaitman Decl.

## PRELIMINARY STATEMENT

In the largest financial fraud in the history of this country, in a case which is being

watched by people around the world, the bankruptcy court has approved the payment of

compensation to the Trustee and B&H at the rate of approximately $1.4 million per week despite

the fact that they have an egregious conflict of interest which disables them from serving.  The

Trustee and his law firm, B&H, have proven themselves to be the Goldman Sachs of the legal

profession, engaging in proprietary lawyering while disregarding their fiduciary duties.

This is a proceeding under the Securities Investor Protection Act ("SIPA") for the

liquidation of Madoff which caused $64.8 billion of losses to investors in the United States and

throughout the world.  The Objectants have continuously raised the issue in the bankruptcy court

of the conflict of interest of the Trustee and B&H.  The bankruptcy court has over-ruled these

objections.  By their conduct during the period covered by the Order, the Trustee and B&H have

demonstrated their complete and utter loyalty to not only the Securities Investor Protection

Corporation ("SIPC") – the adversary of the Madoff investors – but also to SIPC's directors who

are defendants in a consumer fraud action pending in federal court in New Jersey.

It is axiomatic that the Trustee and his law firm have a fiduciary duty to Madoff's

investors (the "Customers").  Indeed, SIPA was enacted by Congress specifically to protect

customers of SEC-regulated broker/dealers and the statute expressly requires the Trustee to

"promptly" pay Customers up to $500,000 in SIPC insurance based upon their last account

statements (their "Statutory Balances") so as to reduce any losses Customers may have suffered as a result of the dishonesty of their broker.

Yet, rather than fulfill this clear statutory mandate, the Trustee has acted to enrich SIPC at the expense of Customers, by asserting for the first time in SIPC's history that a Customer is only insured by SIPC for the amount of his net investment and by delaying for more than 18 months in paying thousands of customer claims. The Trustee's strategy is clear: he is seeking to delay payment of SIPC insurance to the vast majority of Customers for a period of five or more years, during which he and B&H will be compensated at the rate of $52 - $73 million per year. This comes out of the very funds that Congress mandated be used to pay SIPC insurance to defrauded Customers.

The most egregious evidence of the conflict of interest to date is the Trustee's recent adversary proceeding against three New Jersey investors (the "New Jersey Plaintiffs") who had filed suit in federal court in New Jersey against Stephen Harbeck, the President of SIPC, and against the directors of SIPC, alleging that they had perpetrated a massive investment insurance fraud because they had knowingly induced the New Jersey Plaintiffs, and the class of investors that they seek to represent, into believing that SIPC insured their accounts for up to $500,000 based upon the customers' last statement (the "New Jersey Action").[2] The Trustee and B&H seek to enjoin the New Jersey Plaintiffs from pursuing the New Jersey Action despite the fact that the New Jersey Action does not involve estate property, does not name SIPC or the Trustee as defendants and will have no impact whatsoever on the Madoff liquidation. In seeking the

---

[2] A copy of the Complaint in the New Jersey Action is attached as Exhibit A to the Objectants' objection to the Trustee's Third Interim Fee Application (the "Objection"). A copy of the Objection is attached as Exhibit B to the Chaitman Decl.

3

injunction, the Trustee and B&H have betrayed the investors by asserting defenses on behalf of the New Jersey Action defendants.

The Trustee's conflict of interest – representing the defaulting insurance company against the injured insureds – is patent. The Trustee made clear that his loyalty lies with SIPC – even seeking to charge the Customers with Madoff's fraud in a brief written in support of his "net investment" theory. [3] This conflict is particularly egregious here because the Trustee and his counsel are being compensated at the rate of approximately $1.4 million per week by SIPC at a time when SIPC is insolvent. Thus, every dollar paid to the Trustee and B&H is a dollar that is not available to pay SIPC insurance to Customers.

The bankruptcy court swept these issues aside, granting the third fee applications of the Trustee and B&H in full. Thus, the bankruptcy court ignored the overwhelming evidence of the conflict of interest of the Trustee and B&H which only became apparent after the disinterestedness hearing and ignored its obligation to continuously monitor for conflicts of interest throughout the proceeding.

It is urgent that an immediate appeal be permitted so as to mitigate the damages already inflicted upon the thousands of Customers who have been denied SIPC insurance. The continuation of this case under the management of a Trustee and his counsel who are disabled by an egregious conflict of interest must be remedied immediately in order to avoid further devastation to the Customers and destruction to the national policy of honoring the legitimate expectations of customers of a liquidated SEC-regulated broker/dealer. Moreover, the conflict of interest issue goes to the very integrity of this proceeding at a time when the world is focusing on the American economic and legal system.

---

[3] Judge Lifland has ruled in the Trustee's favor on his net investment theory and has certified the issue for direct appeal to the Second Circuit.

## STATEMENT OF FACTS & ARGUMENT BELOW

The facts and arguments set forth herein are taken from the Objection[4] in which the

Objectants requested an evidentiary hearing at which they could prove the facts set forth in the

Objection.  The Objection expressly states that it is an "offer of proof."  Neither the Trustee nor

B&H submitted any affidavits in opposition to the Objection.  Nonetheless, the bankruptcy court

refused to schedule an evidentiary hearing.  Thus, the Objection contains the undisputed facts in

the record on appeal.

The Trustee was appointed by this Court at the request of the Securities Investor

Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court

for the Southern District of New York on December 15, 2008 for the liquidation of Madoff under

the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

In their third interim fee applications, the Trustee seeks allowance of fees of $671,591 for

the 123-day period from October 1, 2009 through January 31, 2010 and B&H seeks allowance of

fees of $23,884,085.  This works out to $5,460 in daily compensation (including weekends and

holidays) for the Trustee and $194,179 in daily compensation for B&H, again including

weekends and holidays.  Thus, together, the Trustee and B&H are seeking allowance of

compensation of $199,639 in daily compensation, including weekends and holidays or

$1,397,473 per week.

The Trustee's most important statutory obligation under SIPA is to "promptly" replace

securities in Customers' accounts up to $500,000 in value.  15 U.S.C. § 78fff-3(a) and 4(c).  As

set forth in the Trustee's Amended Third Interim Report for the period ending  March 31, 2010,

(a copy of which is attached as Exhibit C to the Chaitman Decl. (the "Report")), 16,314 customer

---

[4] The Objection also incorporates the previous two objections filed by the Objectants in response to the first and
second interim fee applications.  (Objection at 1-2).

SIPC claims had been filed in this case of which the Trustee had determined 12,249 as of March 31, 2010. (Report ¶ 78; ¶ 2). Through September 30, 2009, according to the Trustee's website, he had determined only 3,062 claims and allowed only 1,641 of such claims. http://www.madofftrustee.com/Status.aspx. The Trustee claimed that, as of September 30, 2009, of the 4,903 active accounts that Madoff had as of December 11, 2008, only 2,335 customers, whose claims total approximately $20 billion, actually lost money under the Trustee's net investment calculation, even though the November 30, 2008 balances on all the accounts totaled $64.8 billion. Thus, as of September 30, 2009, the Trustee had determined only approximately 70% of the claims *he acknowledged were valid* and he had denied SIPC insurance to the 2,569 account holders (and others) who had a negative net investment over the life of their accounts, going back for decades.

As of March 31, 2010, the Trustee had not yet determined 4,065 claims. Many of the undetermined claims are of customers who are clearly entitled to SIPC insurance under the Trustee's methodology as approved by this Court. Yet the Trustee has not determined these claims. Moreover, in numerous instances, the Trustee has unjustifiably delayed paying SIPC insurance to customers whose claims he acknowledges are valid. This has caused, and continues to cause, unjustifiable devastation to customers to whom, as a matter of law, the Trustee has a fiduciary duty. This failure to pay customers whose claims the Trustee acknowledges are valid is justification for denial of any further compensation to the Trustee and his law firm until all of the customer claims are paid in full.

The Trustee has allowed 2,011 claims for $5.3 billion and committed to pay $668 million in SIPC insurance, leaving $4.6 billion in uncompensated claims (of the $20 billion that the Trustee has claimed was lost in Madoff). (Report ¶ 2). As of February 28, 2010, SIPC had

advanced $141,819,540.89 for administrative expenses and $602,440,855 for customer claims. (Report ¶ 68). In March 2010, SIPC advanced $16,638,534 for administrative expenses and $48,421,096 for customer claims. (Report ¶ 68). Thus, through March 31, 2010, SIPC had advanced a total of $158,458,074 for administrative expenses or $2,365,045 per week. And despite the expenditure of more than $2.3 million per week in professional fees and expenses, the Trustee has still not determined 4,065 customer claims after 16 months.

During that same period of time, the Trustee and B&H claim to have "recovered" approximately $1.5 billion for distribution to customers. (Report ¶ 1). Of this amount, $946 million was simply sitting in bank accounts in Madoff's name at the time the Trustee was appointed, including $301,407,190 at Mellon Bank, $233,500,000 at JP Morgan Chase, $300 million in securities, and $29 million at Bank of New York. (Bloomberg.com 1/29/09).

The Trustee and B&H are acting in direct contravention of their fiduciary and statutory duty to Customers and to the public and, in the process, are increasing exponentially and unnecessarily the administrative costs of the estate, depleting SIPC funds that should be used to pay Customer claims at a time when SIPC is insolvent. Indeed, SEC Commissioner Mary Schapiro testified before the House Subcommittee on Capital Markets, Insurance and Government-Sponsored Enterprises on July 14, 2009:

> The tragic truth is there is not enough money available to pay off all the customer claims.

(Chaitman Decl. Ex. D -- 7/14/09 Webcast at 52:51).

## THE TRUSTEE AND B&H HAVE A CONFLICT OF INTEREST

The Bankruptcy Court has a fundamental obligation to monitor the integrity of proceedings before it. *In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (B.E.D. Cal. 1990). The Trustee owes a fiduciary duty to Customers. *See In re Adler, Coleman Clearing Corp.*, 1998

Bankr. LEXIS 1076 (B. S.D.N.Y. Aug. 25, 1998) ("The parties agree that a SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors"); *Germain v. The Connecticut National Bank,* 988 F. 2d 1323, 1330 n. 8 (2d Cir. 1993). A fiduciary duty is the highest duty imposed by law. *See Roberts v. Dayton Hudson Corp*., 914 F. Supp. 1421, 1423 (N.D. Tex. 1996); *see also Enzo Biochem, Inc. v. Johnson & Johnson,* 1992 U.S. Dist. LEXIS 15723, at *29 (S.D.N.Y. Oct. 15, 1992).

The disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned." *In re Vebeliunas,* 231 B.R. 181 (B.S.D.N.Y. 1999), *citing In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978). A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee. *In re AFI Holding, Inc*., 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee). The attorney for a trustee must be "disinterested," meaning that the attorney does not have an interest materially adverse to a party in interest in the bankruptcy. *In re Marvel Entertainment Group, Inc.,* 140 F. 3d 463, 476 (3d Cir. 1998). *See* COLLIER BANKRUPTCY MANUAL § 101.13 ("professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration."). *See also, In re Crivello,* 134 F. 3d 831, 835 (7th Cir. 1998)*; In re Cook,* 223 B.R. 782, 798 (10th Cir. BAP 1998); *In re BH & P, Inc.,* 119 B.R. 35, 42 (D.N.J. 1990); *In re Leslie Fay Cos.,* 175 B.R. 525, 532 (B.S.D.N.Y. 1994)(counsel removed from all new matters in case where counsel was investigating financial

irregularities of debtor and did not disclose relationships with directors who were targets of investigation).

Aside from the disinterestedness standard in bankruptcy, under the Rules of Professional Conduct, an attorney cannot represent adverse interests. Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a). An attorney must avoid even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code. *In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997). Here, B&H represents the Trustee who has a fiduciary duty to Customers. Yet, B&H is deliberately acting to delay and frustrate the payment of Customer claims, even to the point of misrepresenting the law to destitute Customers who cannot afford to retain their own counsel. Such misrepresentation is grounds for denial of fees. *See In re Mercury*, 122 Fed. Appx. 528 (2d Cir. 2004) (affirming denial of compensation to firm that acted as counsel for debtors and counsel for trustee, where the attorneys acted in the interest of the trustee instead of debtors and incorrectly advised debtors regarding their rights to convert Chapter 7 filing to Chapter 11 filing). It also violates B&H's ethical obligations. *See* Rule 4.1 of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.32 ("In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.")

Under SIPA, SIPC is deemed to be "disinterested." 15 U.S.C. §§ 78eee(b)(6)(A). However, SIPA does not, and could not, provide that a trustee, who is not an employee of SIPC, is "disinterested" or that an attorney retained by the Trustee is deemed, as a matter of law, to be "disinterested," particularly in a case like this where the Trustee and his counsel have flatly rejected the fundamental mandates of SIPA that were intended to protect customers. In *In re First State Securities Corp.,* 39 B.R. 26 (B.S.D. Fla. 1984), the bankruptcy court assumed,

without analysis or authority, that a trustee who, the court found, was a mere "puppet" of SIPC, was entitled to the imputation of disinterestedness provided by 15 U.S.C. § 78eee(b)(6)(A).  The court simply cited the statute which states:

> SIPC shall in all cases be deemed disinterested, and an employee of SIPC shall be deemed disinterested if such employee would, except for his association with SIPC, meet the standards set forth in this subparagraph.

Since neither the Trustee nor B&H is an employee of SIPC, this provision cannot insulate them from the requirement that the Trustee and his counsel be free of any conflict of interest.

The Trustee and B&H are far from "disinterested."  As they have demonstrated repeatedly in this proceeding, they have a conflict of interest as a result of which they are barred from receiving any compensation under established precedents and principles of professional conduct.  *See In re Angelika Films 57th, Inc.*, 246 B.R. 176 (S.D.N.Y. 2000) (affirming bankruptcy court's denial **in its entirety** of fee application of debtor's counsel where counsel represented debtor's principal in other matters and took actions in the bankruptcy that "placed the interests of the Debtor's principal. . . over those of the Debtor.").  They thus should not receive any compensation.

The Trustee's recent adversary proceeding seeking to enjoin the New Jersey Plaintiffs clearly demonstrates that the Trustee and B&H are no longer disinterested and have effectively disqualified themselves from serving in the Madoff SIPA liquidation.  The New Jersey Action is not against the Trustee.  It is not even against SIPC.  It is against SIPC's president and the SIPC directors (all in their individual capacities) and it alleges that the defendants breached their obligations to customers by deliberately defrauding them as to the nature and extent of SIPC insurance.  It seeks to hold the defendants personally liable for the damages the plaintiff/class suffered and alleges that, under SIPC's by-laws, the defendants are not entitled to

10

indemnification for their bad faith conduct.  Thus, the New Jersey Action in no way affects the Trustee or the Madoff liquidation.

Nevertheless, the Trustee and B&H took it upon themselves to file an order to show cause for a temporary restraining order against the New Jersey Plaintiffs, which the bankruptcy court denied.  The Trustee's motion for a preliminary injunction, however, is returnable June 29, 2010.

In his papers seeking a temporary restraining order, the Trustee inappropriately argued the SIPC directors' case for them.  (A copy of the Trustee' April 9, 2010 Brief in support of his request for injunctive relief is attached to the Objection as Exhibit B.)  For example, the Trustee took it upon himself to argue to the bankruptcy court that there is no basis for the New Jersey Plaintiffs' claims under the New Jersey Consumer Fraud statute.  (Objection Ex. B. at 4-5.)  Thus, in a situation where the New Jersey Plaintiffs have alleged that the SIPC directors are not entitled to indemnification for their fraudulent conduct, the Trustee and B&H have incurred administrative expenses that are being paid by SIPC (out of SIPC's insurance fund which is insufficient to pay customer claims) to defend the SIPC directors in the New Jersey action.

Ignoring the New Jersey Plaintiffs' specific allegations in the New Jersey Action of fraud based upon published assurances on SIPC's website that customers can prove their claims by simply producing their last statements, the Trustee falsely alleged in his injunction brief that:

> Not only are the New Jersey Plaintiffs' allegations false, they could not be true under any circumstances. SIPA has bifurcated the duties and obligations of the Trustee and those of SIPC.  Significantly, the Trustee is charged with the day-to-day administration of the estate, which includes determining and satisfying customer claims, while it is SIPC's obligation to advance the Trustee enough money for each customer claim which he, in his sole discretion, has allowed, up to $500,000 if the claim is for securities. . . . SIPC could not have exhibited bad faith with respect to actions that it did not undertake—determining the appropriate method for the net equity calculation.

Objection Ex. B at  38.

11

The Trustee went so far as to state that he would reserve the right to challenge the New Jersey federal court's certification of the New Jersey Plaintiffs' alleged class!

> In any event, class treatment under Federal Rule of Civil Procedure 23 could never be appropriate for the fraud suit alleged by the New Jersey Plaintiffs, among other reasons, because of issues of individualized reliance. The Trustee reserves the right to challenge the propriety of class certification if that becomes necessary.

Objection Ex. B at 44-45 n.24:

This conduct so severely compromises the Trustee and B&H that their immediate disqualification was justified to preserve the integrity of the bankruptcy proceeding. The Madoff case receives worldwide attention because foreign investors constitute the vast majority of the $64.8 billion of losses. As pointed out in the objections to the first two fee applications, both the Trustee and B&H have a disqualifying conflict of interest because they have chosen to represent the interests of SIPC, the insurer, against the investors, the insured. Now they have gone even further, expending SIPC's limited funds to defend SIPC's directors who are charged with perpetrating a massive investment insurance fraud in violation of the New Jersey Consumer Fraud statute.

It is well-recognized that a trustee and his counsel are not entitled to the award of any fees where they are not disinterested and where they act to favor the debtor's directors over the debtor's creditors. *E.g., In re Angelika Films 57th Inc.,* 227 B.R. 29 (B.S.D.N.Y 1998)(fees must be denied where professionals have interest or relationship that could "even faintly color" the independence and impartiality required by the Bankruptcy Code); *In re Balco Equities Ltd.,* 345 B.R. 87 (B.S.D.N.Y. 2006)(debtor's law firm required to disgorge all fees for lack of disinterestedness).

### STATEMENT OF QUESTIONS PRESENTED AND RELIEF SOUGHT

QUESTION 1:  Should the Trustee and B&H be disqualified and should they be required to disgorge all funds they have received from SIPC because of the indisputable evidence of their defiance of their statutory obligations in order to enrich SIPC at the expense of the Customers?

**RELIEF SOUGHT 1**:  Reversal of the bankruptcy court finding that there was no conflict of interest, disqualification of the Trustee and B&H, and an order of disgorgement of all fees paid to the Trustee and B&H.

QUESTION 2:  May the Trustee and B&H rely on a provision of SIPA that provides for the payment of their fees when SIPC agrees to such payment, despite the fact that the Trustee and B&H have ignored other provisions of SIPA which mandate prompt payment of Customer claims based upon their Statutory Balances?   In other words, can the Trustee, B&H and SIPC treat SIPA like a Chinese menu from which they can choose to comply with one provision from Column A and two provisions from Column B and ignore their other statutory obligations?

**RELIEF SOUGHT 2**:  Reversal of the Order based upon a finding that the Trustee, B&H and SIPC have violated SIPA's fundamental mandate to promptly pay customer claims and, therefore, they are not entitled to any of the benefits of the statute.

QUESTION 3:  Were the Objectants denied due process of law by the bankruptcy court's refusal to schedule an evidentiary hearing at which Objectants' offer of proof could be established and their right to due process of law could be protected?

**RELIEF SOUGHT 3**:  Reversal of the Order, disqualification of the Trustee and B&H, and an order of disgorgement of all fees paid to the Trustee and B&H.

## ARGUMENT

## I.    OBJECTANTS HAVE STANDING TO APPEAL

Objectants have standing to appeal the Order.  An appellant has standing to appeal a bankruptcy court order when he or she is "directly and adversely affected pecuniarily by" the

challenged order.  *Int'l Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744,

747 (2d Cir. 1991) (citations omitted).  An appellant is directly and adversely affected

pecuniarily by an order if it disposes of assets from a limited fund, to which there are competing

claims.  *In re: CCB BES, Inc*., 147 B.R. 219, 220 (D.Ore. 1992).

Here, all fees awarded by the Order have been paid by SIPC.  Thus, the Order has

disposed of tens of millions of dollars from a limited fund, the SIPC Fund, which the SEC

Commissioner acknowledges to be inadequate to pay all customer claims.  (Chaitman Decl. Ex.

D).  In light of SIPC's insolvency, every dollar spent on fees to enrich the Trustee and B&H is a

dollar that is not available to pay Objectants and other Customers.  Because the Objectants have

been directly and adversely affected pecuniarily by the unavailability of money from the limited

SIPC Fund to pay their claims, they have standing to appeal.

## II.    THE COURT SHOULD GRANT LEAVE TO APPEAL

The Court should exercise its broad discretion to grant leave to appeal the Order pursuant

to 28 U.S.C. § 1292(b).  *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989) ("review of

interlocutory appeals from the bankruptcy court is in the district court's discretion").  A court

may exercise its discretion to grant leave to appeal where the order:  (1) "involves a controlling

question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3)

"an immediate appeal from the order may materially advance the ultimate termination of the

litigation."  *Young v. Paramount Comm'ns Inc*., 186 B.R. 803, 806 (S.D.N.Y. 1995).  Here, each

of those criteria are met.

### A.    This Appeal Involves A Controlling Question of Law

To show that there is a controlling question of law:

> the movant must demonstrate that there is a question of *law,* and it
> is *controlling. In re Pac. Forest Prods. Corp.,* 335 B.R. at 919

> (quoting *Ahrenholz v. Bd. of Tr. of the Univ. of Ill.,* 219 F.3d 674, 675 (7th Cir. 2000)) (emphasis in original). Indeed, an issue meets this exacting standard if it deals with a question of "pure" law, or matters that can be decided "quickly and cleanly without having to study the record." *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1258, 1260-62 (11th Cir. 2004) (finding that because the issues presented involved application of the facts to the law, the movant could not prove a "controlling question of law") (quoting *Ahrenholz,* 219 F.3d at 677 (7th Cir. 2000)) . . . [A] controlling question is one that rises from the details of the case to a place of relevance among similar cases.

*Aurelius Capital Master, Ltd. v. Tousa Inc*., 2009 U.S. Dist. LEXIS 12735, at *53  (S.D. Fla. Feb 6, 2009).  This appeal raises several controlling questions of law.  The first is whether a SIPC trustee and his counsel may continue to serve when they are conflicted by their loyalty to SIPC. This question is a question of "pure law."

It is axiomatic that the bankruptcy court has a fundamental obligation to monitor the integrity of proceedings before it.  *In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (B.E.D. Cal. 1990).  In addition, the disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned."  *In re Vebeliunas,* 231 B.R. 181 (B.S.D.N.Y. 1999), *citing In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978).  A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee.  *In re AFI Holding, Inc*., 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee).

In addition to the Trustee's conflict, B&H are conflicted because an attorney cannot represent adverse interests and must avoid even the even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code.  *See In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997); Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a).

The conflict between the Customers and the Trustee and B&H is patently obvious.  The bankruptcy court ignored its responsibility to monitor the proceedings and rested on its February 2009 finding that there was no conflict, even though the conflict did not arise until the Trustee and B&H began acting as SIPC's and the New Jersey defendants' counsel by inappropriately raising substantive defenses to the New Jersey Action in the proceeding below, which of course took place **after** the disinterestedness hearing.   Once the Trustee and his counsel openly put the interests of the New Jersey defendants ahead of the customers, they should have been disqualified and their fee application should have been denied.

The second controlling question of law is whether the bankruptcy court was required to approve the third interim fee applications because SIPC recommended that such applications be approved.  SIPC argued that 15 U.S.C. § 78eee(b)(5)(C) required the Court to approve the amounts requested because it provided that:

> Whenever an application for allowances is filed pursuant to subparagraph (B), SIPC shall file its recommendation with respect to such allowances with the court prior to the hearing on such application and shall, if it so requests, be allowed reasonable time after such hearing within which to file a further recommendation. In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. . . .

Because the Trustee had stated in his fee application that he had no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses, SIPC argued that the bankruptcy court was required to allow payment of all amounts sought in accordance with SIPC's recommendation.

However, SIPC and the bankruptcy court did not address whether SIPC and the Trustee were entitled to the benefit of that provision when they had ignored their fundamental obligation

16

under SIPA to promptly pay Customer claims based upon the Customers' Statutory Balances. In other words, can the Trustee, B&H and SIPC simply decide to reject certain of their statutory obligations and yet seek the protection of others. This issue is particularly important in this case in view of the fact that SIPC is insolvent and unable to pay its debts to the Customers.

Over 15,400 claims have been filed. If each of those claimants had an account holding at least $500,000, that would mean SIPC has a liability to the claimants of $7.7 billion. SIPC has stated publicly that it has approximately $1.4 billion and, under SIPA, it has a $1 billion line of credit with the SEC and a $1 billion line of credit with the US Treasury. Of course, those lines of credit constitute loans which would have to be repaid by SIPC's members, the SEC-regulated broker/dealers.

The fact that SIPC is insolvent and unable to pay its debts as they become due is indisputable. Thus, every dollar paid to the Trustee and B&H – and their fees alone are accruing at the rate of $1.4 million per week – is a dollar taken away from Customers.

Because of their patent conflict of interest, the Trustee and B&H have overseen the incurrence of those expenses which have been necessitated solely because they have defied SIPA's mandate to promptly pay Customer claims based upon the Statutory Balances.

The third controlling question of law is whether the Customers have been denied due process of law as guaranteed to them under the Due Process Clause of the Fifth Amendment to the United States Constitution. "The bankruptcy power, like other great substantive powers of Congress, is subject to the Fifth Amendment." *Louisville Bank v. Radford*, 295 U.S. 555, 589, 602 (1935); *see also In re Phillips*, 13 B.R. 82 (B. C.D. Ill. 1981). Accordingly, any statutory scheme resulting from Congress' exercise of its Constitutional bankruptcy powers must be constrained by the requirements of the Due Process Clause of the Fifth Amendment.

17

Evaluating a Fifth Amendment due process claim begins with a two-part analysis: 1) whether the interest asserted rises to the level of a "property interest"; and 2) if it does, the court must weigh the competing interests of the individual and the state to determine what process is constitutionally required. *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361 (9th Cir. 1976). Congress, through SIPA, has statutorily created a property interest for the Customers: the right to receive SIPC insurance of up to $500,000. *See* 15 U.S.C. § 78(fff-3). This is a protected "property interest" under the Fifth Amendment because it is an entitlement to a government benefit conferred by statute. *See S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 965 (2d. Cir. 1988); *Garcia v. U.S.*, 666 F.2d 690 (5th Cir. 1982).

While SIPC is not a governmental agency, it is a creation of Congress and performs public functions, one of which is the designation of trustees and counsel in bankruptcy proceedings who have the power, in the first instance, to determine claims. The conduct of a private entity amounts to state action when, like SIPC, it acts in a judicial or quasi-judicial capacity pursuant to a legislative delegation of authority. *See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617 (1993); *see also Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447 (1st Cir. 1983). Here, Congress has created SIPC which functions in a quasi-judicial capacity pursuant to a legislative delegation of authority.

It is axiomatic that "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Congress has impermissibly created a statutory scheme that is permeated by partiality, conflicts of interest, and bias by permitting SIPC to appoint and control the Trustee and the Trustee's counsel, regardless of the obvious conflict of interest between SIPC and the Customers. SIPC

has a financial incentive to deny Customer claims and has acted solely to protect its members,

the Financial Services Industry, from the obligation to fund the payments to Customers.

In *Schweiker*, the Supreme Court would have found a violation of due process if the

carriers, who appointed the hearing officers, had a financial interest in the outcome. *Schweiker*,

456 U.S. at 197 ("In the absence of proof of financial interest on the part of the carriers, there is

no basis for assuming a derivative bias among their hearing officers"). SIPA's grant of power to

SIPC to select the trustee who, in turns, chooses counsel in bankruptcy proceedings, and

designation of SIPC and its employees as statutorily disinterested, violates the Customers' due

process rights. *See Concrete Pipe,* 508 U.S. at 618-19 (where trustee functions in an

adjudicative capacity, appearance of bias alone violates Due Process).

All of these questions are questions of law, not of fact, because the Objection constituted

an offer of proof, and the Trustee and B&H did not dispute any fact in the offer of proof, thereby

rendering it indisputable. *See, e.g., In re Drouin*, 1999 Bankr. LEXIS 1878, at *7 (B.D.N.H.

Nov. 19, 1999)(court based finding of fact on unrefuted offer of proof)). *See also In re Miguel*,

30 B.R. 893, 894 (B.E.D.CA 1983) (judgment granted to plaintiffs upon their offer of proof

because of failure of defendants or their counsel to appear at trial). Moreover, as set forth above,

the questions are controlling because they concern other cases beyond this case – in fact, they are

directly applicable in all SIPC cases.

**B.      There Is Substantial Ground for Difference of Opinion**

There is also a "substantial ground for difference of opinion" here because the questions

involve "one or more difficult and pivotal questions of law not settled by controlling authority."

*Northeast Savings F.A. v. Geremia*, 191 B.R. 275,278 (D.R.I. 1996); s*ee Klinghoffer v. S.N.C.*

*Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 25 (2d Cir. 1990) (hearing interlocutory

appeal involving the difficult issue of first impression concerning the PLO's functional immunity as an observer of the United Nations); *In re Pappas*, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (hearing interlocutory appeal where there is a difference of opinion on whether court may extend the time of a creditor to commence an adversary proceeding based on another creditor's general motion without a particularized showing).  There is often a substantial ground for difference of opinion where, as here, "precedent bearing on the matter is relatively thin," *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 156 (D.N.J. 2005).

Plainly, there is substantial ground for a difference of opinion concerning the Trustee's conflict of interest as evidenced by his defiance of his statutory responsibilities.  There is virtually no case law on this issue of which we are aware.  Because it is an issue of first impression in this Circuit, this Court should hear the appeal and rule on the matter.  In addition, there is substantial ground for a difference of opinion with respect to the bankruptcy court's obligation to honor SIPC's request for payment of a SIPA trustee's fees when SIPC is insolvent and unable to honor its insurance obligations.  That too is an issue of first impression.

The due process issue is subject to a substantial difference of opinion because there are no cases directly on point in which a court found that a biased SIPA Trustee violated the due process rights of customers.  While the Second Circuit reversed without opinion a decision of this Court finding that the requirement of appointment of a trustee and his attorney specified by SIPC violated the equity powers of the Court and offended the separation of powers of the legislative, judicial and executive branches of government, there was no conflict of issue apparent in that case; nor was there any indication that customers' rights had been violated.  *See SEC v. Oxford Securities, Ltd.*, 354 F. Supp. 301 (S.D.N.Y.), *reversed without op.*, 486 F.2d 1396 (2d Cir. 1973).

Indeed, the broader issue here of the propriety of payment of interim fees has even been found to be an issue of law over which a substantial difference of opinion existed. *See In re Big Rivers Electric Corp.*, 266 B.R. 100, 105 (W.D.Ky. 2000) (issue of the propriety of the bankruptcy court's order for payment of interim fees to examiner's counsel was issue of law over which a substantial difference of opinion existed).

**C.     An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation**

This case will be materially advanced for the benefit of all Customers if the Order is immediately appealable.  Appointment of a new trustee who will fulfill his fiduciary duty to Customers is urgently needed.  If a new trustee were appointed who complied with his statutory obligations, Customers could receive SIPC insurance based upon their Statutory Balances within weeks, rather than within years, as will otherwise occur.

<u>**CONCLUSION**</u>

For the foregoing reasons, Objectants' motion for leave to appeal the Order should be granted.

May 19, 2010

**BECKER & POLIAKOFF LLP**

By:     /s/ Helen Davis Chaitman
        Helen Davis Chaitman
        45 Broadway
        New York, New York 10006
        (212) 599-3322

        *Attorneys for Diane and Roger Peskin,
        Maureen Ebel, and a large group of other
        customers*