08-01789-cgm    Doc 2308    Filed 05/20/10    Entered 05/20/10 10:10:04    Main Document
Pg 1 of 10

**SILLS CUMMIS & GROSS P.C.**
One Rockefeller Plaza
New York, NY 10020
Tel: 212-643-7000
Andrew H. Sherman
Email: asherman@sillscummis.com
Philip R. White
Email: pwhite@sillscummis.com

*Attorneys for Mark Hugh Chais Issue Trust #2*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                     Plaintiff<br><br>                     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC.<br><br>                     Defendant. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |

**OBJECTION TO TRUSTEE'S DETERMINATION**
**OF CLAIM AND REQUEST FOR A HEARING**

The Mark Hugh Chais Issue Trust #2 (the "Trust"), by and through its undersigned counsel, submits this opposition and request for a hearing in response to the Notice of Trustee's Determination of Claim (the "Trustee's Determination") and represents as follows.

**BACKGROUND**

1. On December 11, 2008, the instant SIPA liquidation proceeding was commenced against Bernard L. Madoff Investment Securities ("BLMIS" or the "Debtor").

2. On December 23, 2008, this Court entered an Order specifying procedures for the filing, determination and adjudication of claims.

1760123 v5

3. On March 1, 2010, this Court entered a Memorandum Decision Granting Trustee's Motion for an Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to Determinations Relating to Net Equity (the "Net Equity Decision").

4. The Net Equity Decision is under appeal, and has been certified to the Second Circuit Court of Appeals.

5. The Trustee's Determination alleges that the Trust maintains an account with BLMIS, designated as BLMIS Account No. 1-C1032-3-0 (the "Account"). Irving H. Picard as trustee (the "Trustee") for BLMIS has alleged that the Debtor's books and records reflect that the Account was funded initially with transfers from "comstock" in the amount of $1,996.13, plus a check in the amount of $1,624.00. A copy of the Trustee's Notice of Determination of Claim is attached as Ex. A.

6. The Trust filed a customer claim in the amount of $32,554,444.80 (the "Claim"), reflective of the November 30, 2008 Monthly Account Statement (the "Statement") provided by BLMIS. A copy of the Statement is attached as Ex. B.

7. On or about April 22, 2010, the Trustee sent the Trustee's Determination, which alleged that no securities were purchased for the Account and on that basis, denied the Trust's claim for $32,554,444.80 and for securities. The Trustee's Determination should be rejected as it was filed in violation of the Federal Rules of Bankruptcy Procedure, made applicable by SIPA § 78fff(b), due to the failure to provide any evidence or supporting documentation to support the Trustee's position. Therefore, the Trustee's Determination should be overruled and the Claim

should be allowed in full.

## RELIEF REQUESTED

I. **THE TRUSTEE'S DETERMINATION SHOULD BE OVERRULED BECAUSE THE TRUSTEE HAS FAILED TO SATISFY HIS BURDEN IN OBJECTING TO THE CLAIM**

8. As this Court has noted "[a] SIPA liquidation is essentially a bankruptcy liquidation tailored to achieve SIPA's objectives." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2010 Bankr. LEXIS 495, at *29 (Bankr. S.D.N.Y. Mar. 1, 2010). SIPA § 78fff(b) provides that "a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 and subchapters I and II of chapter 7 of Title 11."

9. "There is nothing in SIPA inconsistent with bankruptcy claims procedure . . . therefore, the claims in this case are prima facie evidence of the validity and amount of the claims." *In re First State Sec. Corp.*, 34 B.R. 492, 494 (Bankr. S.D. Fla. 1983).

10. Under Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with these rules . . . constitute[s] prima facie evidence of the validity and amount of that claim." "Unless the Trustee, as objector, introduces evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." *Collier on Bankruptcy*, ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

11. The burden is on the objecting party to rebut the prima facie allowability of the claim. *In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323-324 (Bankr. S.D.N.Y. 1997). Objection to the proof of claim should be in writing, and the allegations should be sufficiently

explicit to indicate to the claimant the nature and character of the objections. *In re Weidenfeld*, 277 F. 59, 61 (2d Cir. 1921).

12. "The Objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992). The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence. *In re Hemingway Transp.*, 993 F.2d 915, 925 (1st Cir. 1993) (citations omitted). An objection should "at a minimum, allege those facts necessary to support the objection (ordinarily this must include allegations sufficient to overcome the prima facie validity of the filed proof of claim) and provide a description of the theories on which it is based." *Collier on Bankruptcy*, ¶ 3007.01[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008).

13. "Although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity." *Diamant v. Kasparian* (*In re Southern Cal. Plastics, Inc.*), 165 F.3d 1243, 1248 (9th Cir. 1999) "Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant must meet the usual burden of proof to establish the claim's validity." *In re WorldCom, Inc.*, 382 B.R. 610, 620 (Bankr. S.D.N.Y. 2008).

14. Here, the Claim constitutes *prima facie* evidence of the Claim's validity and amount. *See Fed. R. Bankr. P*. 3001(f). The Trustee's Determination lacks any specific evidence or proof refuting the Claim. That is, the Trustee's Determination is not supported by any competent evidence (i.e. an affidavit of a qualified officer or director of the Debtor/Trustee regarding the Trust Claim), and the Trustee has failed to provide supporting documentation. The

Trustee's Determination merely makes a general statement that the amount of the Trust's Claim is purportedly not supported by the Debtor's books and records. Prior to the expungement or rejection of a claim in excess of $32 million, the Trustee is required to provide proof to substantiate any allegations and the Trust is entitled to test such alleged proofs through discovery and a hearing. The Trust requests that the Trustee be compelled to provide evidence, allow the Trust to engage in discovery to review such evidence and, after such discovery has been completed, schedule a hearing to determine the adequacy of any proofs.

II.     THE ACCOUNT SHOULD BE CREDITED FOR THE VALUE OF THE TRANSFERS LISTED IN TABLE 1 AND THE STATEMENT

15.     The Trust objects to the Trustee's contention that "there were no profits to use either to purchase securities or to pay you any money that was deposited into your BLMIS account."

16.     Table 1 to the Trustee's Determination indicates that the Account was funded initially with $3,624.13, including two transfers from "Comstock" in the total amount of $1996.13. The Trustee's Determination does not specify whether such transfers were of cash or securities. Under SIPA, the Trust is entitled to a claim for the value of those transfers and any proceeds or accruals thereof as reflected on the Statement.

17.     Additionally, the Trust has a restitution claim against BLMIS both for the value of actual securities it held on its behalf before Madoff rolled them into his Ponzi scheme and for any additional post-transformation investments with BLMIS.

18.     Where the Ponzi scheme operator is a broker-dealer, investors' restitution claims should not be limited to merely "out of pocket" damages, which are a "wholly inadequate"

measure of damages.  *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708, 713 (6th Cir. 2007).  In *Visconsi*, the plaintiffs initially invested $21.3 million with a broker running a Ponzi scheme, but withdrew approximately $31.3 million before the Ponzi scheme was discovered.  In litigation against Lehman Brothers – who failed to detect the Ponzi scheme – Lehman took the position that the investors weren't entitled to any damages because they had already recovered more than their initial investment.  Upholding an arbitration award in favor of the investors, the Sixth Circuit rejected Lehman's argument, holding that its out-of-pocket theory misapprehended the harm suffered by the investors, who had a reasonable expectation that their initial investment would grow.  *Id.*  As the Sixth Circuit recognized, if the broker running the Ponzi scheme had invested the plaintiffs' money as he was supposed to (and not used it for his own benefit) the initial investment would have grown immensely.  *Id.*  Like the case here, the investors' expectations were reflected in their final account statements, which established the damages to which the investors were entitled in their action against Lehman Brothers.

19. In the instant case, the Trust is entitled to recover the full value of the transfers used to fund the Account, as well as the value of the Account listed in the Statement.  Therefore, the Trustee's Determination should be overruled and the Claim should be allowed in full.

### III.  EVEN UNDER THE TRUSTEE'S "NET INVESTMENT METHOD," THE TRUST SHOULD BE ALLOWED TO KEEP ACTUAL EARNINGS AND PROFITS EARNED BY THE ACCOUNT

20. The Trust is entitled to retain actual profits and earnings which accrued unless and until the Trustee is able to prove that the account was part of Madoff's Ponzi scheme.  Here, the Account was opened in 1983 and Madoff has not admitted that BLMIS was engaged in a Ponzi scheme at any time before the early 1990's or that funds invested at BLMIS prior to that date were not actually invested in securities.

21. Madoff has admitted only that at some point in the early 1990's he transformed what had previously been a legitimate investment advisory business into a pure Ponzi scheme. At the plea hearing, Madoff read from an allocution where he admitted that he began running a Ponzi scheme sometime in the early 1990's in order to satisfy customer expectations:

> To the best of my recollection, my fraud began in the early 1990s. At the time, the country was in a recession and this posed a problem for investments in the securities markets. Nevertheless, I had received investment commitments from certain institutional clients and understood that those clients, like all professional investors, expected to see their investments out-perform the market. While I never promised a specific rate of return to any client, I felt compelled to satisfy my clients' expectations, at any cost.

(Ex. C, at 25:12-20).

22. The Trustee has not provided any information as to when Madoff's Ponzi scheme began or whether any income was earned on the Trust's account through legitimate business conducted by Madoff and whether the Account was part of the Ponzi scheme.

23. Therefore, the Trust is entitled to retain any investment earnings which accrued unless and until the Trustee proves that the account was part of Madoff's Ponzi scheme.

**IV. THE TRUSTEE'S DETERMINATION IS FLAWED AS IT FAILS TO AWARD THE TRUST INTEREST ON FUNDS IN THE ACCOUNT, AS REQUIRED BY NEW YORK LAW**

24. The Trust is entitled to receive interest on account of funds held by BLMIS pursuant to N.Y.C.P.L.R. § 5001.

25. The United States Supreme Court has stated that "the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers Cas.*

*& Sur. Co. of Am. v. PG&E,* 549 U.S. 443, 450-451 (2007).

26. New York law requires that the Trustee consider any interest that the Trust would have earned through a tort claim against BLMIS. A party whose funds have been wrongly used can recover under the theory of conversion. *See Steinberg v. Sherman*, 2008 U.S. Dist. Lexis 35786 (S.D.N.Y May 2, 2008). Additionally, pursuant to New York law, the Trust is entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. *Id*.; *Bingham v. Zolt*, 683 F. Supp. 965, 970 (S.D.N.Y. 1988) ("if the defendants . . . had placed the insurance payment in a bank account, any interest earned would certainly be unjust enrichment").

27. "Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest under [N.Y.C.P.LR. § 5001(a)].'" *Steinberg*, 2008 U.S. Dist. Lexis 35786, at *14 (citations omitted). "While the literal language of CPLR § 5001 does not appear to encompass fraud claims, New York and federal courts have consistently applied this section to causes of action similar to the hypothetical tort claim which Defendant might have asserted against the Debtors." *Breeden v. Thomas (In re Bennett Funding Group, Inc*.), 1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999). "Prejudgment interest may also be awarded for damages incurred as a result of breach of fiduciary duty." *Bank of Am. Corp. v. Lemgruber,* 2007 U.S. Dist. LEXIS 95267, at *55 (S.D.N.Y. July 10, 2007).

28. N.Y.C.P.L.R. § 5001(a) provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be

1760123 v5       - 8 -

computed shall be in the court's discretion."

29. "The rate of interest is nine percent per year, unless another rate is agreed to by the parties." *Steinberg*, 2008 U.S. Dist. Lexis 35786 at *15 (citations omitted). "Interest shall be computed from the ascertainable date the cause of action existed . . . [h]owever, in cases of unknowing misappropriation, the date of demand triggers the accrual of interest." *Id*. (citations omitted). This objective measure avoids this Court's concerns raised in the Net Equity Decision of having the Debtor "pick winners" through a Ponzi scheme.

30. Therefore, even if the Trustee's Determination is affirmed, the Trustee must credit the Account for interest which would have accrued from the period of August, 1983 through December 11, 2008, as the right to interest should relate back to the initial investment due to the fraudulent concealment of the Ponzi scheme in this case.

## JOINDER

31. The Trust hereby joins in the arguments presented in connection with other objections raised to the Trustee's Determination of Claim.

## RESERVATION OF RIGHTS

32. The Trust reserves the right to amend, supplement, or modify this Objection, and to join in any other objection.

33. The Trust reserves all rights of discovery, and all other rights, afforded under Fed. R. Bankr. P. 9014.

34. The Trust reserves the right to object to any evidence proffered in future hearings on this matter, on any and all grounds.

WHEREFORE, for all of the foregoing reasons, the Trustee's Determination should be overruled and the Claim should be allowed in full.

Dated: May 20, 2010

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.

By: /s/ Andrew H. Sherman
Andrew H. Sherman
Philip R. White
One Rockefeller Plaza
New York, NY 10020
Tel: 212-643-7000
asherman@sillscummis.com
pwhite@sillscummis.com

*Attorneys for Mark Hugh Chais Issue Trust #2*