**SKOLOFF & WOLFE, P.C.**
Jonathan W. Wolfe (7070)
Barbara A. Schweiger (6448)
140 Broadway Center
New York, New York 10005
Telephone: (212) 858-7522
Fax: (212) 858-7750

*Attorneys for Albert & Carole Angel*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pr. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIMS REGARDING CLAIM NOS. 12706, 12707, 12708, 12709 & 013088

Albert Angel and Carole Angel (the "Angels"), by their undersigned attorneys, object to the five Notices of Trustee's Determination of Claim, dated April 22, 2010 (Claim No. 12709, Account No. 1A0032); April 27, 2010 (Claim No. 12708, Account No. 1A0096); April 28, 2010 (Claim No. 013088, Account No. 1A0100); April 28, 2010 (Claim No. 12707, Account No. 1A0033); and May 11, 2010 (Claim No.12706, Account No. 1A0099) (the "Determination Letters"), denying their timely-filed customer claims

against Bernard L. Madoff Investment Securities LLC ("BLMIS"), and respectfully represent as follows:

## BACKGROUND

1. The Angels are "customers" of BLMIS, as defined by the Securities Investor Protection Act of 1970 ("SIPA"). 15 U.S.C. § 78*lll*(2).

2. On December 11, 2008, this liquidation proceeding was commenced against BLMIS, pursuant to SIPA. (*Securities & Exchange Comm'n v. Madoff*, Docket No. 08-10791, S.D.N.Y.)

3. On December 15, 2008, jurisdiction over this matter was transferred to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") and the Trustee, Irving Picard ("SIPA Trustee"), was appointed to oversee the liquidation of BLMIS's assets and to process all claims against BLMIS. (*See* Docket No. 4, Order.)

4. The Bankruptcy Court entered an order on December 23, 2008, directing the SIPC Trustee to issue notice and claim forms to BLMIS customers and setting forth claims filing deadlines. (*See* Docket Doc. No. 12, "Claim Procedures Order".)

5. In or around 1970, Albert Angel opened an account with BLMIS for around $50,000, to which he periodically added funds over the years. In 1988, Carole Angel also opened an account with a transfer from Mr. Angel's account. The Angels also opened a joint account in 1990. At no time did the Angels close these accounts and open new accounts to replace them, but it appears from the documentation attached to the Determination Letters that BLMIS unilaterally transferred the balances from Account No. 1A0032 to Account No. 1A0096 (Albert Angel); from Account No. 1A0034 to Account

No. 1A0100 (Carole Angel); and from Account No. 1A0033 to Account No. 1A0099 (Albert & Carole Angel, jointly).

6. At all times, the Angels had only these three personal accounts, and Mr. Angel had one other personal Madoff IRA account, for which a claim was timely filed but for which no determination has been made to date. They filed claims for three personal accounts, but have received five different Determination Letters and five different claim numbers. No determination for Account No. 1A0034 has been received to date, which is probably the 1988 – 1997 account for Mrs. Angel, prior to BLMIS's unilateral transfer of her balance to Account No. 1A0100, for which a determination was received.

7. Although the SIPA Trustee did not provide information from prior to March 1981, the SIPA Trustee nevertheless determined that

  a. On March 31, 1981, Albert Angel had $151,690.57 in his 1A0032 account;

  b. On June 3, 1997, Carole Angel opened Account 1A0100, although Table 1 indicates the account was opened by a transfer of funds from Account No. 1A0034 in the amount of $2,060,936, but which has been "adjusted" to zero; and

  c. The joint account, 1A00033, was opened on April 10, 1990 with $150,000, reflecting an adjustment by the Trustee to the actual $250,000 transfer from Mrs. Angel's account on that date.

8. According to the SIPA Trustee, during the period from March 31, 1981 through May 29, 1997, Albert Angel deposited a total of $601,690.57 into Account No.

3

1A0032 and withdrew a total of $1,280,549.07. Table 1 of the April 22, 2010 Determination Letter indicates that on May 29, 1997, the account balance of $1,877,129.81 was transferred to Account 1A009630, although this amount was "adjusted" by the Trustee to zero. A true and correct copy of the SIPA Trustee's April 22, 2010 Determination Letter for Claim No. 012709, Account No. 1A0032, is attached hereto as Exhibit A.

9. According to the SIPA Trustee, during the period from May 29, 1997 through December 11, 2008, Albert Angel deposited a total of $500,000 into Account No. 1A0096 and withdrew a total of $3,500,000. These numbers are reached by "adjusting" the May 29, 1997 $1,877,129.81 "transfer" from Account No. 1A0032 to zero, as well as adjusting a "transfer" from Account No. 1A009930 for $500,000 on August 5, 2008 to zero. A true and correct copy of the SIPA Trustee's April 27, 2010 Determination Letter for Claim No. 012708, Account No. 1A0096, is attached hereto as Exhibit B.

10. The November 30, 2008 market value of the securities in Account No. 1A0096 was $2,483,277.62, netting the put offsets against the direct long holdings. Mr. Angel timely filed one claim for that account, although he has received two Determination Letters, as noted in Paragraphs 8 and 9. A true and correct copy of Mr. Angel's Customer Claim for Account No. 1A0032/1A0096, including the November 30, 2008 BLMIS Statement for Account No. 1A0096, is attached hereto as Exhibit C.

11. According to the SIPA Trustee, during the period from June 3, 1997 through December 11, 2008, Carole Angel deposited a total of $700,000 into Account No. A10100 and withdrew a total of $1,800,000. Table 1 of the April 28, 2010

4

Determination Letter disregards BLMIS's unilateral "transfer" of $2,060,936 from Mrs. Angel's Account No. A10034 opened in 1988 (and then adjusted to zero by the Trustee), and other deposits therein that the Trustee determined to be "fictitious profits" and therefore did not credit that amount. The Determination Letter for this Account does not address account activity from 1988 – 1997, and unlike Mr. Angel's account and the Angels' joint account, only one Determination Letter was received. A true and correct copy of the SIPA Trustee's April 28, 2010 Determination Letter for Claim No. 013088, Account No. 1A0100, is attached hereto as Exhibit D.

12. The November 30, 2008 market value of the securities in Carole Angel's Account No. 1A0100 was $9,843,549.23, netting the put offsets against the direct long holdings. Mrs. Angel timely filed one claim for her account. A true and correct copy of Mrs. Angel's Customer Claim for Account No. 1A0034/1A0100, including the November 30, 2008 BLMIS Statement for Account No. 1A0100, is attached hereto as Exhibit E.

13. According to the SIPA Trustee, during the period from April 10, 1990 through June 2, 1997, the Angels deposited a total of $1,608,596.86 in Account No. 1A0033 and withdrew a total of $1,608,596.86, adjusting transfers from Carole Angel's account and Albert Angel's account that the Trustee determined were based on "fictitious profits" and therefore did not credit. The "account withdrawals" in Table 1 indicate that on June 2, 1997, the account balance of $2,799,988.95 was transferred to Account No. 1A009930. A true and correct copy of the SIPA Trustee's April 28, 2010 Determination Letter for Claim No. 012707, Account No. 1A0033, is attached hereto as Exhibit F.

5

14. According to the SIPA Trustee, during the period from June 2, 1997 through December 11, 2008, the Angels deposited a total of $1,308,596.86 Account No. 1A0099 and withdrew a total of $6,305,000.00, adjusting BLMIS's unilateral transfer of $2,799,988.95 on June 2, 1997 from Account No. 1A003310 that the Trustee determined was based on "fictitious profits" to $908,596.86. A true and correct copy of the SIPA Trustee's May 11, 2010 Determination Letter for Claim No. 012706, Account No. 1A0099, is attached hereto as Exhibit G.

15. The November 30, 2008 market value of the securities in the Angels' Account No. 1A0099 was $1,944,161.39, netting the put offsets against the direct long holdings. The Angels timely filed one claim for that account, although they received two Determination Letters, as noted in Paragraphs 13 & 14. A true and correct copy of the Angels' Customer Claim for Account No. 1A0033/1A0099, including the November 30, 2008 BLMIS Statement for Account No. 1A0099, is attached hereto as Exhibit H.

16. Throughout the period of the existence of the accounts, the Angels paid taxes annually and reported capital gains, dividends, and interest income from the accounts, based on statements they received from BLMIS. The Angels paid millions of dollars in federal and state income taxes on the so-called fictitious profits over the nearly forty years there were accounts with BLMIS.

17. In the April 22, 2010 Determination Letter for Account No. 1A0032, the SIPA Trustee rejected Albert Angel's claim for securities and claimed that Mr. Angel had withdrawn $678,859.00 more from the Account than he had deposited, ignoring all appreciation in the account over a period of almost 30 years.

6

18. In the April 27, 2010 Determination Letter for Account No. 1A0096, which is apparently a continuation of Account No. 1A0032, the SIPA Trustee rejected Albert Angel's claim for securities and claimed that Mr. Angel had withdrawn $3,050,000.00 more from the Account than he had deposited, ignoring all appreciation in the account over a period of over 11 years.

19. In the April 28, 2010 Determination Letter for Account No. 1A0100, the SIPA Trustee rejected Carole Angel's claim for securities and claimed that Mrs. Angel had withdrawn $1,100,000 more from the Account than she had deposited, ignoring all appreciation in the account over a period of more than 20 years.

20. In the April 28, 2010 Determination Letter for Account No. 1A0033, the SIPA Trustee rejected the Angels' claim for securities and claimed that they had no money in the account, after adjustments, ignoring all appreciation in the account over a period of seven years.

21. In the May 11, 2010 Determination Letter for Account No. 1A0099, which is apparently a continuation of Account No. 1A0033, the SIPA Trustee rejected the Angels' claim for securities and claimed that the Angels had withdrawn $4,996,403.14 more from the account than they had deposited, ignoring all appreciation in the account over a period of nearly 11 years.

22. In addition to rejecting the Angels' Customer Claims, the Determination Letters state that the Angels are not entitled to payments because no securities were purchased by BLMIS for their accounts and thus profits reported to them were fictitious, they do not "not have a positive 'net equity' in [their] account[s]", and they are therefore "not entitled to an allowed claim in the BLMIS liquidation proceeding."

7

**GROUNDS FOR OBJECTION**

23. The Determination Letters fail to comply with the Bankruptcy Court's Claim Procedures Order, which directs the Trustee to satisfy customer claims in accordance with "the Debtor's books and records." (Docket No. 12, 12/23/08 Order.) The BLMIS November 30, 2008 statements showing values of $2,483,277.62 for Albert Angel, $9,843,549.23 for Carole Angel, and $1,944,161.39 for Albert & Carole Angel jointly, as well as a listing of all the securities purportedly purchased on the Angels' behalf, reflect "the Debtor's books and records." The SIPA Trustee is bound by this amount unless he can show that the Angels did not have a "legitimate expectation" that the balances on the November 30, 2008 statements – along with myriad statements, credit advices, portfolio management reports, and confirmations over the years – represented their property.

24. Based on periodic statements, credit advices, portfolio management reports, confirmations, and other documents received from BLMIS over the years, the Angels reasonably believed and had legitimate expectations that BLMIS executed the transactions reflected therein and that their accounts in fact held such securities.

25. The Determination Letters fails to set forth a proper basis for the SIPA Trustee's position, *i.e.*, the relevant facts and legal theories upon which the determination was made.

26. The Determination Letters also fail to supply all supporting documentation for reaching the conclusions about the activity in the accounts, some of which are disputed. For example, Table 1 attached to the Determination Letter for Account 1A0032, lists a large number of purported checks, which the Angels did not receive. The

8

Angels have no recollection of making any withdrawals from their accounts prior to Mr. Angel's retirement from Merck & Co., Inc. ("Merck") in 1993. Nor did they receive any purported "dividend checks." In particular, several "dividends checks" are identified as "Merck & Co." Indeed, any statement indicating a purchase or sale of Merck stock, let alone dividends, would have been a red flag to Mr. Angel, as he was a 16b officer at Merck during the relevant time period, of which he had notified BLMIS. Thus, while the Trustee has concluded that the Angels' statements reflect fictitious profits, he makes no account of what are likely fictitious disbursements. The integrity of the records upon which the Trustee relied in making his determinations is compromised.

27. Moreover, the Trustee's Determination Letters arbitrarily determine that "[n]o securities were ever purchased for" the accounts as far back as 1981, without providing any factual or evidentiary basis for this conclusion or that the BLMIS fraudulent scheme extends any further back in time than 1993. Although papers filed with the Bankruptcy Court last fall by the Trustee indicate evidence of fraud going back to 1993, (*see, e.g.,* Declaration of Joseph Looby filed with the Bankruptcy Court on October 16, 2009 in support of the Trustee's Motion For an Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed on Last Statement, Affirming Trustee's Determination of Net Equity, and Expunging Those Objections With Respect to The Determinations Relating To Net Equity (Docket No. 524, Attachment #1)), the Trustee has provided no evidence that the BLMIS fraud predates 1993, or that no securities were purchased for the Angels prior to that date.

9

## LEGAL ARGUMENT

28. In enacting and amending SIPA, Congress intended to protect investors' "legitimate expectations":

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen, this is not always possible. Accordingly, [customers] will receive cash based on the market value as of the filing date.

*H.R. Rep. No.* 95-746, at 21.

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, never purchased or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations. . . .

*S. Rep. No.* 95-763, at 2 (1978)

29. In addition, the Securities Investors Protection Corporation ("SIPC") rules provide for classification of customer claims in accordance with the customer's "legitimate expectations," based on the written securities purchase confirmations supplied by the broker-dealer to the customer. *See* 17 C.F.R. 300.500.

30. "'The principal purpose' of SIPA is 'to protect investors against financial losses arising from the insolvency of their brokers.'" *In re New Times Sec. Servs., Inc.,* 463 F.3d 125, 129 (2d Cir. 2006) (quoting *SEC v. S.J. Salmon & Co.,* 375 F. Supp. 867, 871 (S.D.N.Y.1974)).

31. Indeed, SIPC acknowledged in its court papers in the *New Times* case that in situations like this one – a customer orders a securities purchase and receives written

10

confirmation reflecting the purchase, but no securities were ever purchased – its policy was to honor the customer's legitimate expectations:

> ***[R]easonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality.*** Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (2d Cir., Dec. 30, 2005) (emphasis supplied).

      32.    Therefore, the SIPA Trustee's position in the Determination Letter is completely at odds with SIPC's position regarding claimants' legitimate expectations, and, in particular, the Angels' reasonable and legitimate expectations, based on written statements from BLMIS over a period of nearly four decades.

      33.    SIPA defines "net equity" as the value of "all securities positions of [a] customer" that "would have been owed by the debtor to such customer" as of the date of the SIPA filing, minus any amounts the customer might owe to the debtor. 15 U.S.C. §78*lll*(11).

      34.    The SIPC Trustee, however, has not made his determination based on "what would have been owed by the debtor to such customer." Rather, with regard to the Angels' accounts, the SIPC Trustee has only recognized the amount of their net investment, without any regard to any appreciation in their accounts over the period of

11

nearly 40 years – a legitimate expectation. Accordingly, the SIPC Trustee is avoiding paying SIPC insurance to long-term investors like Mrs. Angel and Mr. Angel, who retired in 1993, and have since then kept nearly all of their financial resources in the three personal accounts and in the Madoff IRA account, and have depended upon their BLMIS investments for their daily living expenses. Indeed, because of the BLMIS losses, the Angels are currently completing a short sale on their home.

35. At the very least, under applicable New York law, the funds the Angels deposited with BLMIS are entitled to interest, which is not insubstantial given the number of years the Angels maintained their accounts with BLMIS. *See, e.g.*, N.Y. Gen. Oblig. § 5-501, *et seq.*; N.Y.C.P.L.R. § 5004. That interest amount should be factored into the amount of equity the Angels had in their accounts before the alleged withdrawals are "netted" out.

36. Beyond that, upon information and belief, BLMIS deposited customer funds in bank accounts rather than purchase the securities it confirmed it had purchased, and any interest earned thereon should be returned to investors like the Angels under an unjust enrichment theory. That amount should also be factored into the amount of equity the Angels had in their accounts before the alleged withdrawals are "netted" out.

37. Moreover, none of the alleged transfers or withdrawals from Mr. Angel's Account No. 1A0032, Mrs. Angel's Account No. 1A0034, and the Angels' joint Account No. 1A0033 was more recent than over ten years prior to the filing of this suit. Even though SIPA has nothing to do with clawing back funds under the fraudulent conveyance statute, the SIPA Trustee is effectively clawing back money transfers between accounts to offset the amounts listed in the November 2008 Statements and to deprive the Angels

of the SIPC insurance to which they are entitled based on their legitimate expectations, irrespective of any further action under the New York fraudulent conveyance statute.

38.   In addition, as set forth above, the Trustee must produce evidence that supports the conclusions reached in the Determination Letters, and particularly evidence that the Angels received all purported disbursements listed in the Tables attached to the Determination Letters.

39.   Finally, the Angels are entitled to an adjustment from the initial deposits in the accounts to reflect current values.

## RESERVATION OF RIGHTS

40.   The Angels reserve the right to supplement, amend, or otherwise revise this Objection, and any failure to object on particular grounds shall not be construed as a waiver of the Angels' right to object on any additional grounds. In particular, the Angels reserve the right to amend this Objection if and when they receive a Determination Letter for Carole Angel's Account No. 1A0034.

41.   The Angels reserve all objections to the relevance, materiality, competence, admissibility of evidence, and any applicable privileges, in any subsequent proceedings or at trial of this or any other action for any purpose whatsoever.

42.   The Angels reserve all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

43.   The Angels incorporate by reference all reservations of rights set forth in their Customer Claims.

13

**RELIEF REQUESTED**

For the foregoing reasons, the Angels' Customer Claims should be allowed in their entirety in the amounts of $2,483,277.62 (1A0032/1A0096), $9,843,549.23 (1A0034/1A0100), and $1,944,161.39 (1A0033/1A00099), which are the amounts indicated on the November 30, 2008 BLMIS (final) Statements, plus interest from the date of the Determination Letters.

For the foregoing reasons, this Court should direct SIPC to advance the Angels $1,500,000 in insurance from the SIPC fund for the three accounts.

For the foregoing reasons, the Determination Letters should be stricken.

The Angels also request such other relief as may be just and equitable.


Dated:  May 20, 2010


SKOLOFF & WOLFE, P.C.

  /s/ Barbara A. Schweiger
Jonathan W. Wolfe
Barbara A. Schweiger
140 Broadway Center
New York, New York 10005
Telephone:  (212) 858-7522
Fax:  (212) 858-7750

*Attorneys for Albert & Carole Angel*

14