# ⚵ DowLohnes

Richard L. Braunstein
D 202.776.2520  E rbraunstein@dowlohnes.com

May 19, 2010



MAY 20 2010

**VIA OVERNIGHT COURIER**

Clerk of the United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

    Re:    Bankruptcy Case No. 08-1789 (BRL)
              Daniel H. Leeds 1997 Grantor Retained Annuity Trust
              Claim No: 006028
              <u>BLMIS Account No: IL0182</u>

Gentlemen:

    We acknowledge receipt of the notice of Trustee's Determination of Claim dated May 13, 2010, in which The Daniel H. Leeds 1997 Grantor Retained Annuity Trusts SIPC claim for $500,000 was denied. The Daniel H. Leeds 1997 Grantor Retained Annuity Trust (hereinafter referred to as the "Leeds 1997 Annuity Trust") objects to and disagrees with said determination and requests a hearing before Judge Burton R. Lifland.

    As indicated in the Leeds 1997 Annuity Trust's customer claim, it transferred $3 million in cash, on November 22, 1999 to its account with Bernard L. Madoff Investment Securities LLC ("BLMIS") and made no cash withdrawal, with the result that the Leeds 1997 Annuity Trust deposited $3 million more then it withdrew from its account. Accordingly, the determination that the Leeds 1997 Annuity Trust withdrew funds from its account is incorrect.

    The determination that "the amount of money" that the Leeds 1997 Annuity Trust withdrew from its account was greater than the cash it deposited is clearly erroneous and resulted from the Trustee giving effect to certain fictitious Book Entries made by BLMIS which indicated that the Leeds 1997 Annuity Trust was deemed to have transferred $3 million from its account on 6/30/2005. As reflected in the deposit and withdrawal schedule prepared by the Trustee, a copy of which is enclosed, the purported transfer reflected a Book Entry made by BLMIS. Clearly the determination of the Trustee that this fictitious Book Entry represented a cash withdrawal is incorrect. The position taken by the Trustee in denying the SIPC claim of the Leeds 1997 Annuity Trust is contrary to and inconsistent with the Trustee's own view of this

**Dow Lohnes PLLC**
Attorneys at Law
www.dowlohnes.com

WASHINGTON, DC | ATLANTA, GA

1200 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036-6802
T 202.776.2000  F 202.776.2222

Clerk of the United States Bankruptcy Court
May 19, 2010
Page 2

matter in which the "Trustee has assessed accounts based on money in/money out analysis (i.e. has the investor deposited more or less than he or she withdrew from BLMIS)." Further, in its filings with the Bankruptcy Court, the Trustee has argued that SIPC claims should be calculated on an investors "net equity" which he defined as money deposited less money withdrawn.

In its Notice of Denial, the Trustee stated that "no securities were ever purchased by BLMIS for your account [and that] any and all profits reported to you by BLMIS on account statements were fictitious". Thus once an investor made a cash deposit to its customer account with BLMIS, its cash was not maintained in its customer account. Rather, the cash deposited by an investor was utilized by BLMIS in whatever manner it chose; in reality, an investor had no account with BLMIS. Thus any cash withdrawn by an investor could have been a return of funds which it deposited or from funds deposited by other investors. Accordingly, the only asset that an investor had after a deposit of cash with BLMIS was the cash that BLMIS actually distributed to the investor.

The statement by the trustee that "whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of transfer" is inconsistent with the fact that the financial statements furnished by BLMIS to its investors were fictitious since, as the Trustee acknowledged, "securities were never purchased by BLMIS for your account". The financial statements issued by BLMIS were fictitious and any purported transfers, other than cash actually received by the Leeds 1997 Annuity Trust were fictitious transfers since there were no securities or cash in the Leeds 1997 Annuity Trust account to be transferred. Thus there is no factual basis for the Trustee to treat as a "cash" withdrawal by the Leeds 1997 Annuity Trust fictitious Book Entries purportedly effecting transfers of non-existent cash and/or securities to another account.

It is clear that the Trustee's rejection of the SIPC claim of the Leeds 1997 Annuity Trust is inconsistent with the Trustee's legal position reflected in its Memorandum of Law to the Bankruptcy Court as well as its representations to the Court wherein it was stated that:

> "The Trustee has calculated each customer's Net Equity by crediting the amount of cash deposited by the customer into his BLMIS customer account, less any amounts withdrawn by him from his BLMIS customer account (the 'cash in/cash out approach'). Memorandum p.1[1]

---

[1] Confirming that this was the Trustee's approach, BIK Cheema, in his declaration in support of Trustee's determination of Net Equity stated that "the Trustee has determined each customer's Net Equity by crediting the amount of cash deposited by the customer into her BLMIS account, less any amounts withdrawn from her BLMIS customer account, otherwise known as the 'cash in/cash out approach'." n1, p. 2.

Clerk of the United States Bankruptcy Court
May 19, 2010
Page 3

    The Trustee in rejecting the SIPC claim of the Leeds 1997 Annuity Trust gave effect to fictitious account transfers which the Trustee has represented to the Court were non-existent. Thus in describing the account statements that BLMIS furnished its investors, the Trustee acknowledged that:

> "At bottom, however, this fraudulent 'world' was created solely by Madoff, and existed only as a complete fantasy. Regardless of whether the stocks of actual, existing companies or government debt obligation were reflected on customer statements, no such transactions were ever executed. . . . As a result, the only source of funds that BLMIS had to pay each customer was those sent to BLMIS by the collective pool of BLMIS customers". Because . . . [BLMIS] . . . was no more than a Ponzi Scheme and the profits non-existent, the money [the Madoff] customers withdrew was simply taken from the money invested by other customers. In short, they received nothing more than other people's money." Memorandum p .2

Continuing, the Trustee stated that:

> "The statements and confirmations sent by BLMIS to its customers were phony, created to further its fraudulent scheme, the transactions depicted on the BLMIS customer statements and confirmations were fake, as the underlying trades had not been executed." p. 18. "The securities listed on BLMIS customer statements were neither bought nor sold, and no profits were ever realized on any securities transactions. The BLMIS customer statements were merely fictitious vehicles used to deceive customers into believing that they were making certain rates of return in order to perpetuate Madoff's Ponzi Scheme." Memorandum p. 40.

    Further, as the Trustee admitted, "[t]he only hard numbers available to the Trustee, viewing the books and records of BLMIS as a whole, are the amounts of cash invested and withdrawn. (Looby Dec. ¶ 24)." Memorandum p. 45.

    Accordingly, there is no basis for the Trustee to allege that purported book entry account transfers represented a cash withdrawal by a customer. It is not creditable to assume that $3 million deposited in 1999 remained in the Leeds 1997 Annuity Trust's customer account in 2005. Clearly the Leeds 1997 Annuity Trust need be characterized as "over-the-limits net losers" that is entitled to receive full SIPC protection.

> "Under the 'cash in/cash out' approach, the customers that fall within the category of 'over-the-limits net losers that have received full SIPC protection' are customers that withdrew less money from BLMIS than they deposited over time, and had investment amounts in excess of $500,000. They are entitled to an allowed claim for the amount that they invested, less the amount that they have withdrawn from BLMIS. The difference between the amount invested and the withdrawal amount over time is the customer's Net Equity." Memorandum p. 28.

Clerk of the United States Bankruptcy Court
May 19, 2010
Page 4

The aforementioned representation made by the Trustee to the Bankruptcy Court that over-the-limits net losers have received full SIPC protection" is incorrect as it relates to the claim of the Leeds 1997 Annuity Trust.

On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York issued an opinion which affirmed The Trustee's Net Investment Method for determining customer claims.

Concluding, the Trustee's determination that the Leeds 1997 Annuity Trust withdrew from its account with BLMIS a total of $3 million is clearly erroneous since the Leeds 1997 Annuity Trust withdrew no funds from its account to which was deposited a total of $3 million. Under these circumstances, the SIPC claim filed by the Leeds 1997 Annuity Trust is proper and need be granted.

Respectfully submitted,

*/s/ Richard L. Braunstein*
Richard L. Braunstein

Enclosure

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/22/1999 | CHECK WIRE | $3,000,000.00 | $3,000,000.00 |
| **Total Deposits:** | | $3,000,000.00 | $3,000,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 6/30/2005 | TRANS TO 1G036030 | ($5,758,819.30) | ($3,000,000.00) |
| 12/15/2005 | TRANS TO 1G036030 | ($10,727.67) | $0.00 |
| **Total Withdrawals:** | | ($5,769,546.97) | ($3,000,000.00) |
| **Total deposits less withdrawals:** | | ($2,769,546.97) | $0.00 |