# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Securities Investor Protection Corporation, | Case No. |
| Plaintiff, | Adv. Pro. No. 08-01789 BRL |
| VS. | |
| Bernard L. Madoff Investment Securities LLC, | REQUEST FOR JUDICIAL ASSISTANCE (LETTERS ROGATORY) |
| Defendant. | |

**REQUEST FOR JUDICIAL ASSISTANCE**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, PRESENTS ITS COMPLIMENTS TO THE APPROPRIATE HONORABLE JUDICIAL AUTHORITY OF IRELAND, AND REQUESTS INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT IN THE ABOVE CAPTIONED MATTER.

THIS COURT REQUESTS THE JUDICIAL ASSISTANCE DESCRIBED HEREIN AS NECESSARY IN THE INTERESTS OF JUSTICE AND A TIMELY RESOLUTION OF THIS MATTER. THE ASSISTANCE REQUESTED IS THAT THE APPROPRIATE HONORABLE JUDICIAL AUTHORITY OF IRELAND EFFECT SERVICE OF PROCESS UPON THE FOLLOWING NAMED BUSINESS ENTITY:

**LANDMARK INVESTMENT FUND IRELAND**

LOCATED AT:    1) **C/O William Fry Solicitors**
**Fitzwilton House, Wilton Place**
**Dublin 2, Ireland**

2) **1 Grand Canal Square**
**Grand Canal Harbour**
**Dublin 2, Ireland**

1

**FACTS**

THIS CASE RELATES TO A BANKRUPTCY PROCEEDING IN THE COURT OF JURISDICTION THAT RESULTED IN FINANCIAL DAMAGES. TO THE EXTENT CLAIMS ARE ASSERTED, THE COURT OF JURISDICTION WILL DETERMINE THE FACTS AND RENDER A VERDICT AFTER TRIAL OR HEARING.

**REQUEST**

THAT THE HONORABLE JUDICIAL AUTHORITY OF IRELAND ASSIST WITH INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS UPON **LANDMARK INVESTMENT FUND IRELAND** TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT.

**RECIPROCITY**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, EXPRESSES A WILLINGNESS TO PROVIDE SIMILAR ASSISTANCE TO THE HONORABLE JUDICIAL AUTHORITIES OF IRELAND.

**REIMBURSEMENT FOR COSTS**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, THROUGH THE LAW FIRM OF BAKER & HOSTETLER LLP, EXPRESSES A WILLINGNESS TO REIMBURSE THE HONORABLE JUDICIAL AUTHORITIES OF IRELAND FOR COSTS INCURRED IN EXECUTING THE REQUESTING COURT'S LETTERS ROGATORY.

## EXEMPLIFICATION CERTIFICATES

I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and keeper of the records and seal of the Court certify that the documents attached are true copies of:

1. Subpoena for Rule 2004 Examination

Now remaining among the records of the Court.  In testimony of this statement, I sign my name, and affix the seal of this Court at New York, New York, USA this _____ day of May, 2010.


_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK




Seal of the Court


I, _____, Judge of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, certify that _____ (Clerk's Name) is, and was at the date of the above certificate, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, duly appointed and sworn, and keeper of the records and seal of the Court, and that the above certificate of the Clerk and the Clerk's attestation is in due form of law.


_____
Judge, of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

3

## EXEMPLIFICATION CERTIFICATES
(CONTINUED)

I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and the keeper of the records and seal of the Court certify that the Honorable Judge _____ is and was on the date of the above certificate a judge of the Court, duly appointed and sworn, and that I am well acquainted with his or her handwriting and official signature and know and certify the signature written above to be that of the judge.

In testimony of this statement, I sign my name, and affix the seal of the Court at New York, New York, USA, this _____ day of May, 2010.

_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

Seal of the Court

/ / / END / / /

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u> District of <u>NEW YORK</u>

Securities Investor Protection Corporation,

        Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* <u>Adv. Pro. No. 08-01789 BRL</u>

To:
    Landmark Investment Fund Ireland
    c/o William Fry Solicitors
    Fitzwilton House, Wilton Place
    Dublin 2, Ireland

    Landmark Investment Fund Ireland
    1 Grand Canal Square
    Grand Canal Harbour
    Dublin 2, Ireland

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the pl; date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, ; time specified below (list documents or objects):

Please See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Attn: Brian K. Esser, Esq., Baker & Hostetler LLP<br>45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200 | Date of Receipt of Service + 10 Days |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *[signature]* Brian K. Esser    Attorney | April 30, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Pr of Service is true and correct.

Executed on _____             _____
                              DATE                                                SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 901( Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
　(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
　(2) Command to Produce Materials or Permit Inspection.
　　(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　　(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　　(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
　　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
　(3) Quashing or Modifying a Subpoena.
　　(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
　　　(i) fails to allow a reasonable time to comply;
　　　(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
　　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　　(iv) subjects a person to undue burden.
　　(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
　　　(i) disclosing a trade secret or other confidential research, development, or commercial information;
　　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
　　　(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
　　(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　　(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
　(1) Producing Documents or Electronically Stored Information. These procedures ap to producing documents or electronically stored information:
　　(A) Documents. A person responding to a subpoena to produce documents produce them as they are kept in the ordinary course of business or must organize and label to correspond to the categories in the demand.
　　(B) Form for Producing Electronically Stored Information Not Specified subpoena does not specify a form for producing electronically stored information, the perso responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　　(C) Electronically Stored Information Produced in Only One Form. The p responding need not produce the same electronically stored information in more than one fo
　　(D)Inaccessible Electronically Stored Information. The person respondir need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to comp discovery or for a protective order, the person responding must show that the information is reasonably accessible because of undue burden or cost. If that showing is made, the court m; nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
　(2) Claiming Privilege or Protection.
　　(A) Information Withheld. A person withholding subpoenaed informatic under a claim that it is privileged or subject to protection as trial-preparation material must:
　　　(i) expressly make the claim; and
　　　(ii) describe the nature of the withheld documents, communicati or tangible things in a manner that, without revealing information itself privileged or protected. enable the parties to assess the claim.
　　(B) Information Produced. If information produced in response to a subpo subject to a claim of privilege or of protection as trial-preparation material, the person makir claim may notify any party that received the information of the claim and the basis for it. Af being notified, a party must promptly return, sequester, or destroy the specified information any copies it has; must not use or disclose the information until the claim is resolved; must t reasonable steps to retrieve the information if the party disclosed it before being notified; and m promptly present the information to the court under seal for a determination of the claim. Th person who produced the information must preserve the information until the claim is resolv

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without ade excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A
# TO SUBPOENA TO LANDMARK INVESTMENT FUND

### A.  DEFINITIONS AND INSTRUCTIONS

1. The term "HSBC" includes HSBC and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent, or representative thereof.

2. The term "Landmark" refers to Landmark Investment Fund Ireland (a/k/a, Landmark Investment Fund Limited) and any and all entities that maintained account 1FR133 with BLMIS, as defined below.

3. The term "BLMIS" refers to: (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives, employees, and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; Abel Holdings, LLC; and Cohmad Securities Corporation and their representatives and employees; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff; and Stephanie Madoff.

4. The terms "Landmark Investor" and "Landmark Investors" refer to clients, customers, limited partners, limited liability company members, associates, or other entities or individuals who invested any funds in Madoff (either directly, indirectly, or through nominees) through HSBC, M&B, or Landmark, as defined above.

5. The term "M&B" refers to M&B Capital Advisers, Sociedad de Valores, S.A., M&B Capital Advisers Holding S.A., M&B Capital Advisers (Switzerland) S.A., M&B Capital Advisers Gestion SGIIC S.A., and any parent, subsidiary, affiliate, predecessor, successor, principal, member, manager, employee, agent, or representative thereof.

6. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets, and drafts of electronic spreadsheets. A draft or non-identical copy is a separate document within the meaning of this term.

7. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document," and specifically includes: (a) conversations, meetings, and discussions in person; and (b) conversations, meetings, and discussions by telephone or through telephonic messages.

8. The term "Fund" means any hedge fund, fund of funds, subfund, investment fund, trust, pool, or other vehicle for the joint investment of investor monies or assets, wherever and however organized.

9. The term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting, or referencing.

10. The term "person" means any natural person or any business, legal, or governmental entity or association.

11. The term "Relevant Period," except as otherwise noted, refers to the time period beginning at the inception of Landmark's relationship with BLMIS and continuing until the present. For purposes of this definition, the term "relationship" means either a direct relationship with BLMIS, or an indirect relationship with BLMIS through third parties.

12. The following rules of construction apply to this Subpoena:

   a. The terms "any" and "all" shall be deemed to include the other;

   b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all responses that might otherwise be construed to be outside of its scope;

   c. the terms "all" and "each" shall be construed as "all and each";

   d. the use of the singular form of any word includes the plural and vice versa.

13. Produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

14. If any document is withheld from production due to an assertion of the attorney-client privilege, the work-product doctrine, or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the SIPA Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

15. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to, or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

16. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last

known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft, or other disposal of the document.

### B.     **DOCUMENTS TO BE PRODUCED**

1.     All documents concerning the organization or establishment of Landmark. Such documents include, but are not limited to, articles of incorporation, limited partnership agreements, limited liability company or trust agreements, memoranda of association and articles of association or any document with an equivalent function (including both the original organizational documents and any amendment or modification of such documents through the date of your response).

2.     All organizational documents of: (i) any Fund that is affiliated with, or otherwise related to Landmark through common or affiliated management or otherwise, including, but not limited to, Alternative Advantage Public Limited and Global Investments PLC; and (ii) any management entity of Landmark, including, but not limited to, M&B.

3.     Documents sufficient to identify all Landmark Investors during the time period beginning at the inception of Landmark's relationship with BLMIS and continuing until the present, including information sufficient to identify which of Landmark's related entities each Landmark Investor maintained a relationship with or was an investor in, and when.

4.     All documents concerning any and all investments made by Landmark and/or Landmark Investors and/or on behalf of Landmark Investors with BLMIS, by account and name of Landmark or Landmark Investor.

5.     Document(s) providing a complete list of all other investment vehicles besides BLMIS (if any) used by Landmark and the dates during which those investment vehicles were used.

6.     All documents concerning any agreement for any services provided to Landmark or any Landmark Investor or prospective Landmark Investor relating to any investment with BLMIS, including but not limited to, drafts of such agreements.

7.     All records of all services provided to Landmark, directly or indirectly, by BLMIS, and records of all services provided to BLMIS, directly or indirectly, by Landmark.

8.     All subscription agreements provided to Landmark Investors or prospective Landmark Investors.

9.     All documents concerning the creation, development, or drafting of the provisions of the Landmark subscription form.

10. All documents concerning promotional or marketing materials furnished to Landmark Investors or prospective Landmark Investors related to Landmark or BLMIS, including, but not limited to, prospectuses, offering memoranda, private placement memoranda, term sheets, pamphlets, brochures, power-point presentations, pitch books, advertisements, website information on services or investments, performance records, and marketing or executive summaries.

11. All documents concerning the introduction of Bernard Madoff and/or BLMIS to Landmark, including, but not limited to, letters, faxes, e-mails (with attachments) or memoranda concerning any communication between Landmark and/or Landmark's custodians or management entities – including, but not limited to, HSBC and M&B – and BLMIS or any other person or entity who introduced BLMIS or any of its principals or employees to Landmark.

12. All documents concerning Landmark's policies, procedures, and guidelines for selecting investments or investment managers.

13. All documents concerning Landmark's selection of BLMIS as an asset manager for Landmark.

14. All documents concerning the selection of and performance by HSBC as Custodian and Beneficiary for Landmark.

15. All documents concerning the selection of and performance by M&B as Distributor, Manager, and Advisor for Landmark.

16. All documents concerning any administrator agreements relating to BLMIS-invested funds.

17. All investment advisory or management contracts or similar agreements provided to Landmark Investors or prospective Landmark Investors or which govern the provision of services by a custodian or management entity, including, but not limited to, HSBC and M&B, to Landmark or any affiliated or related fund.

18. All documents relating to any delegation of authority made by Landmark to HSBC.

19. All documents relating to any sub-custodial agreements with BLMIS, including, but not limited to, documents instructing a custodian to open a sub-custodial account with BLMIS.

20. All agreements, account opening documentation, offering documents or other legal documents executed between Landmark and BLMIS, including, but not limited to, sub-advisory and/or solicitation agreements, investment contracts, subscription, and limited partnership agreements.

21. All disclosures provided to Landmark Investors or prospective Landmark investors concerning Landmark's investment strategies or performance or that of

4

Landmark's management entities, including, but not limited to, M&B, not included in request number 10 above.

22.     All documents and communications concerning BLMIS' investment strategy and performance in either electronic format or hard copy or orally, including, but not limited to, any and all references to consistency of returns, guaranteed returns, market making business, front-running, Ponzi schemes, fraud, or fraudulent schemes.

23.     All documents concerning communications between Landmark and HSBC.

24.     All documents concerning communications between Landmark Investors or prospective Landmark Investors and HSBC.

25.     All documents concerning communications between Landmark and BLMIS.

26.     All documents concerning communications between HSBC and BLMIS relating to Landmark.

27.     All documents concerning communications between Landmark Investors or prospective Landmark Investors and Landmark.

28.     All documents concerning communications between Landmark and M&B relating to BLMIS.

29.     All documents concerning communications between HSBC and M&B relating to BLMIS or Landmark.

30.     All account opening documents provided to Landmark Investors or prospective Landmark Investors.

31.     All account statements for any Landmark Investor relating to BLMIS.

32.     All documents concerning any purchase, sale, subscription, or redemption of Landmark shares by any Landmark Investor.

33.     All documents concerning any and all purchases, investments, or subscriptions made by Landmark and/or Landmark Investors and/or on behalf of Landmark Investors with BLMIS, by account and name of Landmark or Landmark Investor.

34.     All documents concerning any and all withdrawals or redemptions made by Landmark and/or Landmark Investors and/or on behalf of Landmark Investors with BLMIS, by account and name of Landmark or Landmark Investor.

35.     With respect to request numbers 32 – 34 above, provide the method(s) used to make the investment(s), subscription(s), or redemption(s) (e.g., check or wire transfer). Include copies of checks (front and back), and documentation clearly denoting the BLMIS entity receiving, or in the case of redemptions, funding the check. For wire

5

transfers, provide all instructions or requests, including wire transfer instructions, with respect to Landmark Investors' investments, subscriptions, or redemptions.

36. All BLMIS account statements including custodian and executing broker statements and confirmations.

37. All documents concerning any transmittal of money (directly or indirectly) by or on behalf of Landmark or HSBC to BLMIS.

38. All documents concerning any transmittal of money (directly or indirectly) by or on behalf of BLMIS to Landmark or HSBC.

39. All documents concerning any transmittal of money (directly or indirectly) by or on behalf of any Landmark Investor with respect to an investment in BLMIS or Landmark.

40. All documents concerning any transmittal of money (directly or indirectly) to any Landmark Investor with respect to an investment in BLMIS or Landmark.

41. Documentation sufficient to estimate the loss incurred on the investments made with BLMIS, by account.

42. Documents sufficient to demonstrate all fees, commissions, rebates or other compensation arrangements and/or payments between Landmark and BLMIS, including, but not limited to, any and all arrangements and/or payments through third-parties.

43. All documents relating to Landmark's due diligence (whether by itself or through third-parties) of BLMIS, including the dates and results of on-site visits, the names/titles of individuals who made the on-site visits; audit reports and documents related to audit reports; verification of compliance procedures; review of custody arrangements, prime brokerage agreements between BLMIS and any entity, DVP/RVP agreements, side letters; determination of the identity of BLMIS legal counsel, identity of any third-party service provider; and documents describing BLMIS' management structure, including any description of how much time Bernard Madoff devoted to the investment advisory business.

44. All documents concerning any efforts Landmark made to verify BLMIS' securities holdings positions and the pricing information reported to Landmark, Landmark Investors, and/or prospective Landmark Investors.

45. All documents concerning BLMIS' performance for Landmark.

46. All documents furnished to Landmark Investors concerning Landmark's periodic performance, investment activity and status reports prepared by Landmark, any custodian or entity of Landmark - including, but not limited to, HSBC and M&B - or of any the other funds described in clauses (i) and (ii) of request number 2 above, or by BLMIS or any other investment vehicle.

47. All documents concerning Landmark's membership in the Managed Funds Association ("MFA"), and, if a member, the identity of the principals or employees who are or were on any MFA board, committee, or working group.

48. All Form ADVs Part I and Part II, or equivalent thereof, provided to Landmark Investors or prospective Landmark Investors and/or any disclosure document or finder or solicitation fee disclosure document used in conjunction with or in lieu of Form ADV Part II.

49. All Landmark financial statements, including, but not limited to, audited annual statements, unaudited quarterly and other interim statements, including all related footnotes, schedules, and exhibits.

50. All documents concerning Landmark's policies, procedures, and guidelines regarding the calculation of net asset value ("NAV") for Landmark as a whole or for any Landmark Investor.

51. All documents concerning HSBC's calculations of NAV for Landmark as a whole or for any Landmark Investor.

52. All documents concerning any complaints received by Landmark concerning any investments in BLMIS.

53. All documents concerning any inquiry, request for documents, subpoena, investigation or litigation by a U.S. or foreign regulatory authority or law enforcement concerning BLMIS or any investment in BLMIS to the extent that disclosure is not prohibited by law. If any such documents are withheld, state the relevant law that prohibits its disclosure.

54. All documents concerning litigation or arbitration by any private party for any reason concerning BLMIS or any investment with BLMIS.

55. All documents concerning any request for documents, subpoena, or litigation by a U.S. or foreign court, including, but not limited to, the High Court in Dublin, Ireland, concerning BLMIS, Landmark, M&B, or HSBC to the extent that disclosure is not prohibited by law. If any such documents are withheld, state the relevant law that prohibits its disclosure.

56. All documents that HSBC or Landmark has been required to produce in connection with Landmark's claims against HSBC in Ireland.

57. All documents concerning Landmark's registration with the Financial Regulator in Ireland.

58. All documents concerning Landmark's policies and procedures with regard to preservation of documents for the Relevant Period, including any document preservation notices sent relating to BLMIS and documents sufficient to show the recipients of any such notices.

7

59. All board of director minutes relating to BLMIS in any way.

60. Documents sufficient to disclose the dollar value of all assets under the management of or otherwise held by Landmark as of the date of receipt of these requests.

61. With respect to request number 60 above, provide documents sufficient to identify the location of all assets under the management of or otherwise held by Landmark.

62. With respect to request number 60 above, provide documents sufficient to identify the origin(s) of all assets otherwise held by Landmark.

63. Documents sufficient to disclose the percentage of all assets under management of Landmark invested with BLMIS on or about December 11, 2008.

64. All documents concerning Landmark's policies, procedures, and methodology regarding the determination and verification of assets under management by or for Landmark.

65. Documents sufficient to identify any assets held by Landmark in the United States.

66. Documents sufficient to identify any affiliated offices or agents of Landmark located in the United States.

67. Documents sufficient to show all investments made by Landmark in the United States.

68. Documents sufficient to show any business activity or commercial transactions undertaken by Landmark in the United States.

69. Documents relating to any promotional or marketing materials distributed by Landmark in the United States.

70. Documents sufficient to show any pending legal proceedings brought in the United States by or naming Landmark.

71. All documents concerning any decision or discussions to dissolve or unwind Landmark, whether or not related to any investment in BLMIS, and any discussions or communications with any Landmark Investor regarding potential dissolution or unwinding.

72. All books, records, and other documents including Form K-1s concerning admissions, capital contributions, withdrawals, redemptions, distributions on withdrawal or redemption and any other distributions, including, but not limited to, the amounts, dates, and payees, by any clients of Landmark.

73. With respect to request number 72 above, provide the method(s) used to make the investment(s) or redemption(s) (e.g., check or wire transfer). Include copies of checks (front and back), and documentation clearly denoting the entity receiving, or in the case of redemptions, funding the check. For wire transfers, provide all instructions or

8

requests, including wire transfer instructions, with respect to Landmark Investors' investments or redemptions.

74.     Any documents sufficient to show any accruals for litigation loss contingencies related to Madoff, including, but not limited to, any documents or reports summarizing Madoff-related litigation risk sent to outside auditors or accountants.

75.     All documents relating to any financial exposure Landmark had to Madoff during the Relevant Period, whether directly or indirectly, at any time.

76.     All documents relating to any write-offs or liabilities that were tied to losses sustained as a result of Madoff's liquidation.

### C.     HOW DOCUMENTS ARE TO BE PRODUCED

1.      All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately, and completely access, search, display, and comprehend the documents' contents.

2.      All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.      Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately, and completely represent such documents.

4.      Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear, and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and field level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s), and field level schemas.

9

5.    Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall be produced as those files were stored in the ordinary course of business.

6.    Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format).  In addition, the relationships among the images shall be described with respect to how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear, and focused documentation explaining the load files' content.  In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that is reasonably usable.  In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear, and focused documentation explaining such file's contents.