# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Securities Investor Protection Corporation,** ] | Case No. |
| Plaintiff, ] | Adv. Pro. No. 08-01789 BRL |
| VS. ] | |
| ] | **REQUEST FOR JUDICIAL** |
| **Bernard L. Madoff Investment** ] | **ASSISTANCE** |
| **Securities LLC,** ] | **(LETTERS ROGATORY)** |
| Defendant. ] | |

**REQUEST FOR JUDICIAL ASSISTANCE**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, PRESENTS ITS COMPLIMENTS TO THE APPROPRIATE JUDICIAL AUTHORITY OF SPAIN, AND REQUESTS INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT IN THE ABOVE CAPTIONED MATTER.

THIS COURT REQUESTS THE ASSISTANCE DESCRIBED HEREIN AS NECESSARY IN THE INTERESTS OF JUSTICE. THE ASSISTANCE REQUESTED IS THAT THE APPROPRIATE JUDICIAL AUTHORITY OF SPAIN EFFECT SERVICE OF PROCESS UPON THE BELOW NAMED BUSINESS ENTITY:

**M&B CAPITAL ADVISERS, SOCIEDAD DE VALORES, S.A.**

LOCATED AT:   **Plaza Manuel Gomez Moreno n°2**
              **28020 Madrid, Spain**

**FACTS**

THIS CASE RELATES TO A BANKRUPTCY PROCEEDING IN THE COURT OF JURISDICTION THAT RESULTED IN FINANCIAL DAMAGES.  TO THE

1

EXTENT CLAIMS ARE ASSERTED, THE COURT OF JURISDICTION WILL DETERMINE THE FACTS AND RENDER A VERDICT AFTER TRIAL OR HEARING.

**REQUEST**

THAT THE APPROPRIATE JUDICIAL AUTHORITY OF SPAIN ASSIST WITH INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS UPON **M&B CAPITAL ADVISERS, SOCIEDAD DE VALORES, S.A.** TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT.

**RECIPROCITY**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, EXPRESSES A WILLINGNESS TO PROVIDE SIMILAR ASSISTANCE TO JUDICIAL AUTHORITIES OF SPAIN.

**REIMBURSEMENT FOR COSTS**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, THROUGH THE LAW FIRM OF BAKER & HOSTETLER LLP, EXPRESSES A WILLINGNESS TO REIMBURSE THE JUDICIAL AUTHORITIES OF SPAIN FOR COSTS INCURRED IN EXECUTING THE REQUESTING COURT'S LETTERS ROGATORY.

## EXEMPLIFICATION CERTIFICATE

I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and keeper of the records and seal of the Court certify that the documents attached are true copies of:

1. Subpoena for Rule 2004 Examination

Now remaining among the records of the Court. In testimony of this statement, I sign my name, and affix the seal of this Court at New York, New York, USA this _____ day of May, 2010.

_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

Seal of the Court

I, _____, Judge of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, certify that _____ (Clerk's Name) is, and was at the date of the above certificate, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, duly appointed and sworn, and keeper of the records and seal of the Court, and that the above certificate of the Clerk and the Clerk's attestation is in due form of law.

_____
Judge, of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and the keeper of the records and seal of the Court certify that the Honorable Judge _____ is and was on the date of the above certificate a judge of the Court, duly appointed and sworn, and that I am well acquainted with his or her handwriting and official signature and know and certify the signature written above to be that of the judge.

In testimony of this statement, I sign my name, and affix the seal of the Court at New York, New York, USA, this _____ day of May, 2010.

_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

Seal of the Court

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u> District of <u>NEW YORK</u>

Securities Investor Protection Corporation,

        Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* <u>Adv. Pro. No. 08-01789 BRL</u>

To:

    M&B Capital Advisers, Sociedad de Valores, S.A.
    Plaza Manuel Gomez Moreno n°2
    28020 Madrid
    Spain

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Attn: Brian K. Esser, Esq., Baker & Hostetler LLP<br>45 Rockefeller Plaza, New York, NY 10111   (212) 589-4200 | Date of Receipt of Service + 10 Days |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| [signature] Attorney | April 26, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111   (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

# PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Pr of Service is true and correct.

Executed on _____    _____
                    DATE                                              SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 901( Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures ap to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents produce them as they are kept in the ordinary course of business or must organize and label to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specifiec subpoena does not specify a form for producing electronically stored information, the perso responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The p responding need not produce the same electronically stored information in more than one fo
    (D) Inaccessible Electronically Stored Information. The person respondin need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to comp discovery or for a protective order, the person responding must show that the information is reasonably accessible because of undue burden or cost. If that showing is made, the court m; nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed informatic under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communicati or tangible things in a manner that, without revealing information itself privileged or protected enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpo subject to a claim of privilege or of protection as trial-preparation material, the person makir claim may notify any party that received the information of the claim and the basis for it. Af being notified, a party must promptly return, sequester, or destroy the specified information any copies it has; must not use or disclose the information until the claim is resolved; must t reasonable steps to retrieve the information if the party disclosed it before being notified; and m promptly present the information to the court under seal for a determination of the claim. Th person who produced the information must preserve the information until the claim is resolv

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without ade excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**ATTACHMENT A**
**TO SUBPOENA TO M&B CAPITAL ADVISERS**

A. **DEFINITIONS AND INSTRUCTIONS**

1. The term "Madoff" refers to: (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives, employees and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; Abel Holdings, LLC and Cohmad Securities Corporation and their representatives and employees; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff; and Stephanie Madoff.

2. The term "M&B" refers to M&B Capital Advisers, Sociedad de Valores, S.A., M&B Capital Advisers Holding S.A., M&B Capital Advisers (Switzerland) S.A., M&B Capital Advisers Gestion SGIIC S.A., and any parent, subsidiary, affiliate, predecessor, successor, principal, member, manager, employee, agent, or representative thereof.

3. The term "M&B's Clients" refers to clients, customers, limited partners, limited liability company members, associates, hedge funds, or other entities or individuals (including nominees of such persons or entities) with a relationship with M&B who, directly or indirectly, invested any funds in Madoff.

4. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets and drafts of electronic spreadsheets. A draft or non-identical copy is a separate document within the meaning of this term.

5. As used herein, the term "communication" includes any transmittal or receipt of information, whether formal or informal, oral or written, and specifically includes: (a) conversations, meetings and discussions in person; and (b) conversations, meetings and discussions by telephone or through telephonic or e-mail messages.

6. The term "Fund" means any hedge fund, fund of funds or similar investment fund, trust, pool or other vehicle for the joint investment of investor monies assets, wherever and however organized. The term "Fund" includes, but is not limited to, Luxembourg US Equity Plus a/k/a Luxembourg Investment Fund (Acct. No. 1FR123).

7.    The term "Relevant Period," except as otherwise noted, refers to the time period beginning at the inception of M&B's relationship with Madoff and continuing until the present. For purposes of this definition, the term "relationship" means either a direct relationship with Madoff, or an indirect relationship with Madoff through third parties.

8.    As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

9.    The following rules of construction apply to this Subpoena:

    a.    The terms "any" and "all" shall be deemed to include the other;

    b.    the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all responses that might otherwise be construed to be outside of its scope;

    c.    the terms "all" and "each" shall be construed as "all and each";

    d.    the use of the singular form of any word includes the plural and vice versa.

10.    Produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

11.    If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the SIPA Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

12.    Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to, or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

13.    If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

## B.     DOCUMENTS TO BE PRODUCED

1. All documents concerning the organization or establishment of M&B. Such documents include, but are not limited to, articles of incorporation, limited partnership agreements, limited liability company or trust agreements, memoranda of association and articles of association or any document with an equivalent function (including both the original organizational documents and any amendment or modification of such documents through the date of your response).

2. All documents concerning the organization or establishment of any Fund which (a) invested (either directly or indirectly) in Madoff, and (b) is either directly or indirectly affiliated with, advised by, or operated by M&B. Such documents include, but are not limited to, articles of incorporation, limited partnership agreements, limited liability company or trust agreements, memoranda of association and articles of association or any document with an equivalent function (including both the original organizational documents and any amendment or modification of such documents through the date of your response).

3. All documents provided to, and communications concerning, any of M&B's Clients or prospective Clients concerning an actual or potential investment (direct or indirect) in Madoff by any person or entity. Such documents include, but are not limited to, prospectuses, offering memoranda, private placement memoranda, presentation materials, term sheets, brochures, account opening documents, power point presentations, and marketing or executive summaries.

4. All documents provided to, and communications concerning, any prospective or existing M&B Clients concerning M&B's or Madoff's investment strategies or performance not included in items 2-3 above.

5. All subscription agreements provided to any of M&B's Clients or prospective Clients, including any executed copies of such agreements, and any documents showing transfers of funds in connection with any subscription.

6. All documents relating to any sub-custodial agreements with BLMIS, including, but not limited to, documents instructing a custodian to open a sub-custodial account with BLMIS.

7. All documents concerning any administrator agreements relating to BLMIS-invested funds.

8. All documents relating to the sending or transfer of assets to Madoff.

9. All documents and communications exchanged between M&B and any of M&B's Clients or prospective Clients concerning an actual or potential investment (direct or indirect) in Madoff. Such documents include, but are not limited to, any

communication, financial statement or report, or document containing data regarding the actual or potential investment in Madoff.

10. All documents constituting any part of any agreement between M&B and any of M&B's Clients or prospective Clients concerning services provided or to be provided by M&B.

11. All documents constituting any part of any agreement whereby services were provided, directly or indirectly, to M&B or any Fund with respect to any direct or indirect investment in Madoff.

12. All documents constituting any part of any other agreement between M&B or any Fund and any other person (other than M&B's Clients) concerning any payments or fees to be made to or from M&B with respect to Madoff.

13. All documents and communications concerning M&B's fee schedule(s) for the Relevant Period.

14. All documents and communications concerning any payment made or to be made with respect to any of the agreements described in requests 10-12.

15. All documents and communications concerning any transmittal of money (directly or indirectly) by any Fund, any affiliate of UBS AG (including subsidiaries), M&B, or M&B's Clients to Madoff. Include copies of checks (front and back), and documentation clearly denoting the Madoff entity receiving the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

16. All documents and communications concerning any transmittal of money (directly or indirectly) from Madoff to any Fund, any affiliate of UBS AG (including subsidiaries), M&B, or M&B's Clients. Include copies of checks (front and back), and documentation clearly denoting the Madoff entity funding the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

17. All documents and communications concerning any transmittal of money (directly or indirectly) by any nominal or beneficial owner of any Fund to the Fund, M&B, any affiliate of UBS AG (including subsidiaries), or any other person with respect to any investment with Madoff. Include copies of checks (front and back), and documentation clearly denoting the entity funding the check. Also include all instructions or requests, including wire transfer instructions for any wire transfers.

18. All documents and communications concerning any transmittal of money (directly or indirectly) to any nominal or beneficial owner of any Fund from any Fund, M&B, or any affiliate of UBS AG (including subsidiaries). Include copies of checks (front and back), and documentation clearly denoting the entity funding

4

the check. For wire transfers, provide all instructions or requests, including wire transfer instructions.

19. All documents recording any purported investment activity of any Fund including, but not limited to, Madoff account statements, custodian or executing broker statements, and trade confirmations.

20. Documents sufficient to estimate all gains or losses incurred on the investments made with Madoff, by account.

21. The Form ADVs prepared by M&B for the Relevant Period, including any comparable disclosure document submitted to any other governmental authority.

22. Documents sufficient to identify all of M&B's Clients (both nominees and beneficial owners) during the Relevant Period, including information sufficient to identify the entity within M&B with which the Client maintained a relationship.

23. All documents summarizing M&B's financial status and results for the Relevant Period, including, but not limited to, audited or unaudited annual financial statements, unaudited quarterly and other interim financial statements (including all related footnotes, schedules and exhibits).

24. All documents concerning M&B's bank accounts or brokerage accounts for the Relevant Period, regardless of the institution in which the account is maintained. Such documents include operating accounts, accounts holding M&B's Clients' assets, and accounts maintained by M&B for any other purpose, including monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, account closing documents, and account background.

25. All documents and communications concerning M&B's membership in the Managed Funds Association ("MFA"), and, if a member, the identity of the principals or employees who are or were on any MFA board, committee, or working group.

26. All documents and communications concerning all due diligence processes used by M&B to oversee investments of sub-advisers or unaffiliated managers used by M&B.

27. All documents and communications concerning M&B's selection of Madoff as an asset manager for M&B and M&B Clients.

28. All documents concerning communications between M&B and Madoff or any other person or entity who introduced Madoff to M&B.

5

29. All documents and communications relating to M&B's due diligence (whether by itself or through third-parties) of Madoff, including the dates and results of on-site visits, the names/titles of individuals who made the on-site visits, verification of compliance procedures, review of custody arrangements, prime brokerage agreements between Madoff and any entity, DVP/RVP agreements, side letters, determinations of the identity of auditor(s), reasons for any change in auditor, confirmation letters received from auditors, review of audited and/or unaudited financial statements, determination of the identity of Madoff legal counsel, identity of any third-party service provider, and documents describing Madoff's management structure including any description of how much time Bernard Madoff devotes or devoted to the investment advisory business.

30. All documents and communications concerning any audits of any investment with Madoff.

31. All documents and communications concerning any efforts M&B made to verify Madoff's securities positions and pricing information.

32. All minutes of all Board of Directors meetings concerning Madoff or any Fund during the Relevant Period.

33. All documents and communications furnished to M&B's Clients concerning M&B's periodic performance, investment activity and status reports prepared by M&B or by Madoff.

34. All documents and communications concerning any complaints received by M&B concerning any investments in Madoff.

35. All documents and communications concerning any inquiry, request for documents, subpoena, investigation or litigation by a U.S. or foreign regulatory authority or law enforcement body or agency concerning Madoff or any investment in Madoff to the extent that disclosure is not prohibited by law.

36. All documents and communications concerning litigation or arbitration by any private party for any reason concerning Madoff or any investment in Madoff.

37. All documents and communications concerning M&B's policies and procedures with regard to preservation of documents for the Relevant Period, including any document preservation notices relating to Madoff and documents sufficient to show the recipients of any such notice.

38. Documents sufficient to show any accrual for litigation loss contingencies related to Madoff, including but not limited to, any documents or reports summarizing Madoff-related litigation risk sent to outside auditors or accountants.

39. Documents sufficient to disclose the dollar value of all assets under management by M&B as of the most recent calendar month end.

40. Documents sufficient to disclose the percentage of all assets under management by M&B invested with Madoff on or about December 11, 2008.

41. All documents concerning M&B's policies, procedures, and methodology regarding the determination and verification of assets under management by or for M&B.

42. Documents sufficient to identify any assets held by M&B in the United States.

43. Documents sufficient to identify any affiliated offices or agents of M&B located in the United States.

44. Documents sufficient to show all investments made by M&B in the United States.

45. Documents sufficient to show any business activity or commercial transactions undertaken by M&B in the United States.

46. Documents relating to any promotional or marketing materials distributed by M&B in the United States.

47. Documents sufficient to show any pending legal proceedings brought in the United States by or naming M&B.

## C.  HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database, including, but not limited to, litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™, or IBM Groupwise™ shall be produced in their native format, or in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

7

4.  Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including, but not limited to, a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s), but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s), but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s), but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files, but only if provided with definitive file(s), tables(s) and field level schemas.

5.  Documents and their metadata portrayed in unstructured files generated by commercially available software system shall be produced as those files were stored in the ordinary course of business (excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, and text files).

6.  Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that is reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.