# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Securities Investor Protection Corporation,** ] | Case No. |
| Plaintiff, ] | Adv. Pro. No. 08-01789 BRL |
| VS. ] | |
| ] | REQUEST FOR JUDICIAL |
| **Bernard L. Madoff Investment** ] | ASSISTANCE |
| **Securities LLC,** ] | (LETTERS ROGATORY) |
| Defendant. ] | |

**REQUEST FOR JUDICIAL ASSISTANCE**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, PRESENTS ITS COMPLIMENTS TO THE APPROPRIATE HONORABLE JUDICIAL AUTHORITY OF IRELAND, AND REQUESTS INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT IN THE ABOVE CAPTIONED MATTER.

THIS COURT REQUESTS THE JUDICIAL ASSISTANCE DESCRIBED HEREIN AS NECESSARY IN THE INTERESTS OF JUSTICE AND A TIMELY RESOLUTION OF THIS MATTER. THE ASSISTANCE REQUESTED IS THAT THE APPROPRIATE HONORABLE JUDICIAL AUTHORITY OF IRELAND EFFECT SERVICE OF PROCESS UPON THE FOLLOWING NAMED BUSINESS ENTITY:

    **BANK OF IRELAND GROUP**

    LOCATED AT:    **Head Office**
                              **Lower Baggot Street**
                              **Dublin 2, Ireland**

**FACTS**

THIS CASE RELATES TO A BANKRUPTCY PROCEEDING IN THE COURT OF JURISDICTION THAT RESULTED IN FINANCIAL DAMAGES. TO THE EXTENT CLAIMS ARE ASSERTED, THE COURT OF JURISDICTION WILL DETERMINE THE FACTS AND RENDER A VERDICT AFTER TRIAL OR HEARING.

**REQUEST**

THAT THE HONORABLE JUDICIAL AUTHORITY OF IRELAND ASSIST WITH INTERNATIONAL JUDICIAL ASSISTANCE TO EFFECT SERVICE OF PROCESS UPON **BANK OF IRELAND GROUP** TO BE USED IN A CIVIL PROCEEDING BEFORE THIS COURT.

**RECIPROCITY**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, EXPRESSES A WILLINGNESS TO PROVIDE SIMILAR ASSISTANCE TO THE HONORABLE JUDICIAL AUTHORITIES OF IRELAND.

**REIMBURSEMENT FOR COSTS**

THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, THROUGH THE LAW FIRM OF BAKER & HOSTETLER LLP, EXPRESSES A WILLINGNESS TO REIMBURSE THE HONORABLE JUDICIAL AUTHORITIES OF IRELAND FOR COSTS INCURRED IN EXECUTING THE REQUESTING COURT'S LETTERS ROGATORY.

# EXEMPLIFICATION CERTIFICATES

I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and keeper of the records and seal of the Court certify that the documents attached are true copies of:

1. Subpoena for Rule 2004 Examination

Now remaining among the records of the Court. In testimony of this statement, I sign my name, and affix the seal of this Court at New York, New York, USA this _____ day of May, 2010.

_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

Seal of the Court

I, _____, Judge of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, certify that _____ (Clerk's Name) is, and was at the date of the above certificate, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, duly appointed and sworn, and keeper of the records and seal of the Court, and that the above certificate of the Clerk and the Clerk's attestation is in due form of law.

_____
Judge, of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

## EXEMPLIFICATION CERTIFICATES
(CONTINUED)

    I, _____, Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, and the keeper of the records and seal of the Court certify that the Honorable Judge _____ is and was on the date of the above certificate a judge of the Court, duly appointed and sworn, and that I am well acquainted with his or her handwriting and official signature and know and certify the signature written above to be that of the judge.

    In testimony of this statement, I sign my name, and affix the seal of the Court at New York, New York, USA, this _____ day of May, 2010.

_____
Clerk of THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

Seal of the Court

/ / / END / / /

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u>  District of  <u>NEW YORK</u>

Securities Investor Protection Corporation,

        Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* <u>Adv. Pro. No. 08-01789 BRL</u>

To:

Bank of Ireland Group
Head Office
Lower Baggot Street,
Dublin 2
Ireland

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.:   212-589-4200<br>Attn:   Brian Esser, Esq. | September 8, 2010 at 1:00 pm E.S.T. |

| ISSUING OFFICER SIGNATURE AND TITLE<br>*[signature]* Attorney | DATE<br>May 3, 2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Marc D. Powers, Esq. Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111   (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                                                                       SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A
## TO SUBPOENA TO BANK OF IRELAND GROUP

### A.      DEFINITIONS AND INSTRUCTIONS

1.      The terms "Bank of Ireland," "you" and "your" mean and include Bank of Ireland Nominees Limited and any subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2.      The term "Maxam Funds" means and includes the Maxam Absolute Return Fund, L.P., the Maxam Absolute Return Fund Limited, and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative of either entity, including but not limited to Maxam Capital Management LLC.

3.      The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities LLC, its parents, affiliates, representatives, employees, and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; and Abel Holdings, LLC; (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff; (c) employees of Bernard L. Madoff Investment Securities LLC and all relatives, including, but not limited to, Frank DiPascali, Jr., Joanne DiPascali, Annette Bongiorno, Daniel Bonventre, Rudy DiPascali, Eric Lipkin, Irwin Lipkin, Erin Reardon, Enrica Contellessa-Pitz, and Thomas Pitz; and (d) Carl Shapiro, Stanley Chais, Jeffry Picower, J. Ezra Merkin.

4.      The term "Rye Select Funds" means and includes the Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., the Rye Select Broad Market Portfolio Limited, the Rye Select Broad Market Insurance Fund, L.P., the Rye Select Broad Market Insurance Portfolio LDC, the Rye Select Broad Market XL Portfolio Limited, the Rye Select Broad Market XL Fund, L.P., and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative of any of the foregoing entities in this definition, including but not limited to Tremont Partners, Inc.

5.      The term "account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value.

6.      The term "Fund Account" means any account into which you or any of your customers received funds, whether by wire transfer or check, from any or all of: Madoff, the Rye Select Funds and/or the Maxam Funds.

7.      The term "document" is defined to be synonymous in meaning and equal in scope to the

usage of this term in Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets, drafts of electronic spreadsheets, calendars, date book entries, and diary entries. A draft or non-identical copy is a separate document within the meaning of this term.

8.   As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) e-mail, text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

9.   As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

10.  The following rules of construction apply to this Subpoena:

   (a)   "Any" and "all" shall be deemed to include the other;

   (b)   the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

   (c)   the terms "all" and "each" shall be construed as "all and each"; and

   (d)   the use of the singular form of any word includes the plural and vice versa.

11.  Except as otherwise noted, this Subpoena requires the production of documents created in or referencing the time period beginning at the inception of Bank of Ireland's relationship with Madoff and continuing until the present (the "Relevant Period"). For purposes of this definition, the term "relationship" means either a direct relationship with Madoff, or an indirect relationship with Madoff through a third party.

12.  Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

13.  Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

14.  Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

15. Documents attached to each other should not be separated; separate documents should not be attached to each other.

16. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

17. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Corporation Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

18. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

### B.    DOCUMENTS TO BE PRODUCED

1. All documents concerning any Fund Account, including:

    (a) monthly statements, including account numbers;

    (b) present and historical account balance information;

    (c) incoming and outgoing wire transfer records;

    (d) copies of checks, both deposited and drawn;

    (e) records reflecting cash activity;

    (f) account opening documents;

    (g) administrative or custodial agreements relating to any Fund Account; and

    (h) account closing documents.

2. To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between the Fund Accounts.

3. To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between Maxam Absolute Return Fund Limited and the Fund Accounts.

4. All documents that reflect or relate to any communications and/or correspondence pertaining to any Fund Account.

08-01789-cgm   Doc 2336-5   Filed 05/25/10   Entered 05/25/10 11:40:12   Exhibit 3
Pg 11 of 12

5. All documents, agreements and/or contracts including, but not limited to, line of credit agreements, letters of credit, promissory notes and security agreements related to any lines of credit/letters of credit maintained by or for the benefit of any of the Fund Accounts or holders of the Fund Accounts.

6. All documents reflecting or relating to any review or investigation, or analysis performed by Bank of Ireland pertaining to any Fund Account, including but not limited to documents relating to Madoff, the Maxam Funds and/or the Rye Select Funds.

7. All documents reflecting or relating to due diligence reports, reviews, investigations, analyses, or studies on Madoff conducted by third parties relating to Madoff or any Madoff-related funds.

8. To the extent not provided pursuant to the foregoing requests, documents sufficient to identify the beneficial owners and/or account holders of any Fund Account, including the identity, location, and contact name of any beneficial owners and/or account holders.

9. To the extent not provided pursuant to the foregoing requests, documents reflecting or relating to the investment products offered by the Fund Account to its beneficial owners, including but not limited to prospectuses and private placement memoranda.

10. Documents identifying the corporate structure of Bank of Ireland.

11. Documents sufficient to identify any assets held by Bank of Ireland in the United States.

12. Documents sufficient to show any marketing or sales materials distributed in the United States by Bank of Ireland.

13. Documents sufficient to identify any offices, branches, officers or agents of Bank of Ireland present in the United States.

14. Documents sufficient to identify any lawsuits either filed by or against Bank of Ireland in the United States.

15. Documents sufficient to identify any Madoff-related litigation hold in place at Bank of Ireland including the date the hold was initiated and the scope of the hold, including, but not limited to, identifications of all persons, employees, etc. subject to such hold.

16. Documents sufficient to show the document production/preservation policies in place at Bank of Ireland.

### C.  HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4. Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5. Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6. Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.