**LOWENSTEIN SANDLER PC**
Bruce Buechler, Esq. (BB 0324)
Nicole Stefanelli, Esq. (NS 4100)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400


   -and-
1251 Avenue of the Americas, 18th Floor
New York, NY  10020
Tel: (212) 262-6700
Fax: (212) 262-7402

*Attorneys for the Irrevocable Charitable*
*Remainder Trust of Yale Fishman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

24349/2
05/25/2010 **14380360.3**

The Irrevocable Charitable Remainder Trust of Yale Fishman (the "Trust"), by and through its undersigned attorneys, hereby objects (the "Objection") to the Notice of Trustee's Determination of Claim (the "Determination Letter") dated April 27, 2010, attached hereto as **Exhibit A**, sent by Irving H. Picard (the "Trustee"), the trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff") under the Securities Investor Protection Corporation Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").  In support of its Objection, the Trust states as follows:

## BACKGROUND

1.     The Trust was formed pursuant to a written agreement.

2.     On August 24, 1998, the Trust opened an account with BLMIS, Account No. 1CM543 (the "Account").

3.     On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested and charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. 240.10b-5.  That same day, the Securities and Exchange Commission filed a civil action alleging that Madoff and BLMIS were operating a Ponzi scheme through BLMIS's investment advisor activities.  On December 15, 2008, the above-captioned liquidation was commenced pursuant to SIPA.

4.     On December 23, 2008, the Court issued an order (the "Claims Procedure Order") [Dkt. No. 12] directing the Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines.

5.     The Claims Procedure Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, ***and the reason therefor*** . . . ."  Claims Procedure Order at 6 (emphasis added).

6.      On or about February 12, 2009, the Trust timely filed a claim, Claim No. 004568 (the "Claim"), in the amount of $1,502,029.40.   A copy of the Claim is attached hereto as **Exhibit B**.

7.      On April 27, 2010, the Trustee sent the Determination Letter stating that the Claim is denied.  *See* Exh. A at 1.

8.      Pursuant to the Trustee's analysis, as set forth in Table 1 annexed to the Determination Letter, between August 24, 1998 and December 11, 2000, $2,000,000.00 was deposited into the Account.  *See* Exh. A at 4.

9.      Pursuant to the Trustee's analysis, as set forth in Table 1 annexed to the Determination Letter, between April 14, 1999 and July 21, 2004, the Trust withdrew a total of $515,778.87.[1]  *See* Exh. A at 4.

10.     No other cash withdrawals were made from the Account.

11.     Assuming the Trustee's records are correct, the "net equity" in the Account based on the "cash in/cash out approach" embraced by the Trustee calculates to $1,484,221.13 ($2,000,000.00- $515,778.87), ignoring all alleged fictitious gains.

12.     Between September 29, 2004 and January 31, 2005, the Trust attempted to transfer the then balance in the Account of $3,352,581.72 to a public charity called the Judaic Heritage Foundation, Inc. which owned BLMIS Account No. CM56830 (the "Transferee Account").  However, no funds or securities were actually transferred from the Account to the Transferee Account.

13.     As set forth in Table 1 annexed to the Determination Letter, the Trustee claims that, during the period from August 24, 1998 through January 31, 2005, a total of $2,000,000.00

---

[1] The Trustee's analysis includes a withdrawal of $17,808.22 which allegedly occurred on April 14, 1999 (the "April 14, 1999 Withdrawal").  The Trust does not have any records from 1999 evidencing that the April 14, 1999 Withdrawal was made.  As such, the Trust has not included the April 14, 1999 Withdrawal in its calculations and maintains that the Trust withdrew a total of $497,970.65 from the Account.  The Trust has requested records from the Trustee and has not yet received same.  To the extent the Trustee is able to produce records substantiating the April 14, 1999 Withdrawal, the Trust will concede that a total of $515,778.87 was withdrawn from the Account.

in cash was deposited into the Account and a total of $3,868,360.59 was withdrawn from the Account. However, the Trustee has "adjusted" the amount of the withdrawals to $2,000,000.00. *See* Exh. A at 4.

14.     As is now known to the Court, and conceded by the Trustee, the $2,000,000.00 in cash that was deposited into the Account between 1998 and 2000 was actually stolen by Madoff and no transfer of funds or securities to the Transferee Account actually occurred. The only withdrawals that were made from the Account are cash withdrawals totaling $515,778.87 (based on the Trustee's records). Accordingly, the Account has "net equity" of $1,484,221.13 and the Trust is therefore entitled to a claim in the amount of at least $1,484,221.13.

## OBJECTION[2]

### A.     Fictitious Transfers Do Not Constitute Withdrawals for Purposes of Calculating "Net Equity"

15.     In denying the Claim, the Trustee takes the position that during the period from August 24, 1998 through January 31, 2005, a total of $2,000,000.00 was deposited into the Account and a total of $3,868,360.59 was withdrawn from the Account. Thus, the Trustee alleges that the Trust does not have a positive "net equity" and therefore the Trust's Claim has been denied in its entirety. The Trustee's position is factually incorrect because in his calculations, the Trustee included fictitious transfers to the Transferee Account of $3,352,581.72 (adjusted downward to $2,000,000 by the Trustee), which he characterized as "withdrawals." These alleged transfers never actually occurred and clearly are not "withdrawals" for the purposes of calculating "net equity."

16.     Pursuant to the Trustee's Motion for an Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to

---

[2] The Trust reserves the right to make any additional arguments in opposing the Determination Letter in the event that the Court's Memorandum Decision (as defined herein) is reversed, modified, overturned or vacated on appeal.

Determinations Relating to Net Equity (the "Motion") [Dkt. No. 524], the Trustee has determined each customer's "net equity" by "crediting the amount of cash deposited by the customer into her BLMIS account, less any amounts withdrawn from her BLMIS customer account, otherwise known as the 'cash in/cash out approach.'" Motion at 5; *see also* Mem. of Law in Support of Trustee's Motion at 1 [Dkt. No. 525]. The Court has upheld the "cash in/cash out approach." *See* Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to Determinations Relating to Net Equity entered on March 8, 2010 [Dkt. No. 2020].

17.    In discussing the definition of "net equity" under SIPA in its Memorandum Decision Granting Trustee's Motion for an Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to Determinations Relating to Net Equity issued on March 1, 2010 (the "Memorandum Decision") [Dkt. No. 1999], the Court noted that "the BLMIS books and records expose a Ponzi scheme were no securities were ever ordered, paid for or acquired." Memorandum Decision at 22. Thus, the Court held that "the Trustee cannot discharge claims upon the false premise that customers' securities positions are what the account statements purport them to be. Rather, the only verifiable amounts that are manifest from the books and records are the cash deposits and withdrawals." *Id.* The Court further held that "[e]quality is achieved in this case by employing the Trustee's method, which looks solely to deposits and withdrawals that in reality occurred." *Id.* at 33.

18.    While the Court did not specifically address transfers between customer accounts, the Court made it clear that net equity is to be calculated by crediting the amount of cash deposited by the customer into his BLMIS account, minus any cash withdrawn. The purported transfers from the Account to the Transferee Account transfers do not constitute "withdrawals" for the purposes of calculating net equity because the transfers never occurred. The only withdrawals from the Account that occurred in reality are the cash withdrawals totaling

$515,778.87 (based on the Trustee's records).  Based on the "cash in/cash out method," the Account has "net equity" of $1,484,221.13.  Accordingly, the Court must overrule the Trustee's Determination Letter and determine that the Account has a balance of at least $1,484,221.13.

19.    Furthermore, the Trustee's determination of the Trust's Claim is inconsistent with the law and was specifically devised to enrich SIPC at the expense of the Trust.

20.    For the foregoing reasons, the Trust disputes the Trustee's calculations and objects to the Determination Letter.  The Trustee's denial of the Claim is not supported by the simple incontrovertible fact that the only cash withdrawals from the Account totaled $515,778.87 (based on the Trustee's records).  *See* Exh. A at 4.   Because no other withdrawals were made from the Account and the transfers to the Transferee Account never occurred, the Trust's "net equity" in the Account is at least $1,484,221.13.  Accordingly, the Trust is entitled to a claim in the amount of at least $1,484,221.13.

**B.    The Trustee is Barred from Denying the Claim Under the Doctrine of Judicial Estoppel**

21.    The fictitious journal entries purporting to transfer $3,352,581.72 to the Transferee Account are no different than the fictitious gains fabricated by Madoff that the Trustee has refused to recognize in determining customer claims as accepted by the Court in the Memorandum Decision.  The Trustee should be held to his own standard and criteria: if fictitious gains are not to be considered (as they never occurred), neither should fictitious transfers be considered (as they too never occurred).  It is inconsistent for the Trustee to argue that "fictitious gains that were fabricated" by Madoff should be ignored, yet, at the same, argue, in order to deny a customer claim, that fictitious transfers did occur.  As such, the Trustee is barred from denying the Claim under the doctrine of judicial estoppel.

22.    The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund*, L.P., 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002).  Judicial estoppel "generally prevents a party from

prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id. See also Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").

23.     In the Second Circuit, two factors must be satisfied for the doctrine of judicial estoppel to apply: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472. The doctrine does not depend upon prejudice to the party invoking it. *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd.)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986).

24.     In this case, both factors are satisfied. In the Motion, the Trustee took the position that because BLMIS created fictitious transactions in a fictitious market, customer claims should not include fictitious gains and should be calculated only on a "cash in/cash out" method. *See* Mem. of Law in Support of Trustee's Motion at 40-43. The Court granted the Trustee's Motion and held that the Trustee's method of determining "net equity" was the appropriate way to calculate customer claims in this proceeding. *See* Memorandum Decision at 6.

25.     In the Determination Letter, the Trustee is now attempting to reverse the legal and factual position he previously took in the Motion, and adopted by the Court, by claiming that fictitious transfers that were never completed should be considered in calculating "net equity" while fictitious gains should be ignored. Under the doctrine of judicial estoppel, such action is impermissible and the Trustee is barred from employing this inconsistent position in order to deny the Claim.

**C.**     **The Trustee is Barred from Denying the Claim Under the Law of the Case Doctrine**

26.     The Trustee is likewise barred from denying the Claim under the law of the case doctrine.

27.     The law of the case doctrine is a rule of law that dictates that "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent states of the same litigation." *Perreca v. Gluck*, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003) (quoting *In re Korean Air Lines Disaster*, 798 F. Supp. 755, 759 (E.D.N.Y. 1992) (citation omitted)). The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992) (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)); *see also NLRB v. Coca-Cola Bottling Co.*, 55 F.3d 74, 77-78 (2d Cir. 1995).

28.     The purpose of the law of the case doctrine is to avoid reopening what has already been decided. *Manley v. Mazzuca*, Case No. 01-civ-5178, 2007 WL 4233013 at *3 (S.D.N.Y. Nov. 30, 2007). Thus, "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Id. (quoting *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, LLP, 322 F.3d 147, 167 (2nd Cir. 2003)). Courts generally depart from the law of the case only where there is a change in controlling law, when new evidence becomes available, to correct a clear error, or prevent manifest injustice. *DiLaura v. Power Authority,* 982 F.2d at 76.

29.     Here, none of these "good reasons" to depart from the law of the case are present and the Court's prior ruling that the Trustee's method of determining "net equity" was the appropriate way to calculate customer claims in this proceeding constitutes the "law of the case." Thus, the Trustee should not be permitted to argue, in order to deny the Trust's Claim, that fictitious transfers occurred when the "law of the case" requires the Trustee to ignore "fictitious gains that were fabricated" by Madoff in determining "net equity." Accordingly, under the law of the case doctrine, the Trustee is barred from denying the Claim.

**D.      The Trustee Has Failed To Set Forth Any Legal or Factual Basis for Disallowing the Trust's Claim in Full**

30.      The Trustee has set forth no legal or factual basis for disallowing the Claim in full.  The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) "the amount of money you withdrew from your account at BLMIS . . . is the same as the amount that was deposited with BLMIS for the purchase of securities."   Exh. A at 1-2.  Neither of these purported grounds for disallowance have any statutory or other legal basis.  Likewise, the Trustee's denial is not supported by the uncontroverted facts in this case that $2,000,000.00 was deposited into the Account and only $515,778.87 was withdrawn (based on the Trustee's records).

31.      No other cash withdrawals were made from the Account.

32.      The Determination Letter is inadequate to rebut the prima facie validity of the Claim as provided in Section 502(a) of the Bankruptcy Code and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.

33.      Furthermore, the Determination Letter violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based.  As this Court has stated,

> [t]he best practice is to denominate an objection to a claim as just that. The body of the objection should identify the claim.  It should also, at a minimum, allege those facts necessary to support the objection . . . and provide a description of the theories on which it is based.  In short, proofs of claim have been held analogous to complaints initiating civil actions; an objection to a claim should therefore meet the standards of an answer.  It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses.

*In re Enron Corp.*, 2003 Bankr. LEXIS 2261, *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (quoting 9 *Collier on Bankruptcy* ¶ 3007.01[3] (footnotes omitted)).

34.      Finally, the table attached to the Determination Letter, which purportedly calculates "net equity" in the Account, based on the "cash in/cash out approach" embraced by the

Trustee, is unsubstantiated and does not reflect the fact that no transfer of funds or securities to the Transferee Account actually occurred. Accordingly, the Court must overrule the Trustee's Determination Letter and determine that the Trust is entitled to a claim of at least $1,484,221.13.

## E.      The Trust is Entitled to Prejudgment Interest

35.      Because Madoff converted the Trust's funds, the Trust is entitled to prejudgment interest. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 *U.*S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S. 2d 427, 428 (1st Dept. 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion). Under New York state law, which is applicable here, the Trust is entitled to prejudgment interest at a rate of nine percent per annum computed from December 11, 2000 (the date of the laws deposit into the Account). *See* N.Y.C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."); N.Y.C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."). *See Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984) (holding that under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of the state whose law governs the main claim); *Patch v. Stanley Works (Stanley Chem. Co. Div.)*, 448 F.2d 483, 494 n.18 (2d Cir. 1971) (noting a "consistent line" of cases holding that under New York choice of law principles, "the allowance of prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability"). Accordingly, the Trust is entitled to prejudgment interest of nine percent per annum on $1,484,221.13, which represents the amount of money in the Trust's Account as of December 11, 2000.

36.     Although it is not legally relevant, the Trustee cannot prove that Madoff earned no money on the Trust's investment.  To the extent the funds were deposited into a bank, they presumably earned interest while on deposit.  Madoff disbursed customer funds to favored customers, to family members, and for other purposes.  Those funds may have yielded substantial profits to which the Trust and other customers are entitled once the ultimate recipients of Madoff's thievery are known.

37.     In a Ponzi scheme, out of pocket damages are an improper and inadequate remedy.  *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008).   Where a Ponzi scheme is operated by an SEC-regulated broker-dealer, investors are not limited to "out-of-pocket damages."  *See Visconsi v. Lehman Bros., Inc.*, No. 06-3304, 2007 WL 2258827, at *5 (6th Cir. Aug. 8, 2007).

38.     In *Visconsi*, Lehman Brothers made the same argument that the Trustee makes here, that the plaintiffs were not entitled to any recovery because they already had withdrawn more than they had invested.  The Sixth Circuit rejected that argument because, as the court explained, the plaintiffs gave $21 million to Lehman, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a reasonable expectation that it would grow.  Instead, the Sixth Circuit upheld an arbitration award to the plaintiffs of "an expectancy measure of damages, which seeks to put Plaintiffs in the position they would have held had [the brokers] not breached their 'bargain' to invest Plaintiffs' money."  *Id.  Cf., S.E.C. v. Byers,* 2009 W.L. 2185491 (S.D.N.Y.) (district court sitting in equity in non-SIPA liquidation approved distribution to investors in Ponzi scheme whereby investors' claims were allowed in the amount of their net investment plus their re-invested earnings).

39.     Accordingly, the Trust is entitled to a claim in the amount of at least $1,484,221.13 plus prejudgment interest of nine percent per annum pursuant to New York state law.

**F.**    **The Trustee Has Violated SIPA by Delaying the Payment of SIPC Insurance**

40.    The Trustee has breached his statutory obligation to "promptly" replace the Trust's securities.  Pursuant to section 78fff-2(b) of SIPA, "[a]fter receipt of a written statement of claim pursuant to subsection (a)(2), of this section, the trustee shall *promptly* discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer (subject to the provisions of subsection (d) of this section and section 78fff-3(a) of this title) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." 15 U.S.C. § 78fff-2(b) (emphasis added).  SIPA further  provides that (a) SIPC shall pay the first $500,000 of each customer claim and (b) customers have an unsecured claim against customer property for the balance of their claims which is pad pro rata with other customers.  *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for *prompt* payment and satisfaction of net equity claims of customers of a debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims.") (emphasis added); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities").

41.    As evidenced by the Claim and as demonstrated herein, the Trust has a claim for securities in an amount of at least $1,484,221.13 plus prejudgment interest.  Accordingly, the Trust is entitled to an advance of $500,000 from SIPC and an unsecured claim against the estate for the remainder of its "net equity."

**WHEREFORE**, the Trust respectfully requests that the Court (i) strike the Determination Letter, (ii) grant the Trust an allowed claim in the amount of at least $1,484,221.13 plus prejudgment interest of nine percent per annum pursuant to New York state law, (iii) direct SIPC to provide the Trust with a $500,000 advance pursuant to 15 U.S.C. § 78fff-3(a), (iv) grant the Trust an unsecured claim against the estate in the amount of at least

$984,221.13 pursuant to 15 U.S.C. § 78fff-2(c)(1)(B), and (v) grant the Trust such other and further relief as this Court deems just and equitable.

Dated: May 25, 2010                    **LOWENSTEIN SANDLER PC**

By:      _/s/ Bruce Buechler_____
Bruce Buechler, Esq. (BB 0324)
Nicole Stefanelli, Esq. (NS 4100)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

-and-
1251 Avenue of the Americas, 18th Floor
New York, NY  10020
Tel: (212) 262-6700
Fax: (212) 262-7402

*Attorneys for the Irrevocable Charitable Remainder Trust of Yale Fishman*

# Exhibit "A"



## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

April 27, 2010

Irrevocable Charitable Remainder Trust of Yale Fishman
c/o Yale Fishman, Trustee
445 Central Avenue, Suite 201
Cedarhurst, New York 11516

Dear Irrevocable Charitable Remainder Trust of Yale Fishman:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM543 designated as Claim Number 004568:

Your claim for securities is **DENIED**.  No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,000,000.00), as more fully set forth in Table 1 annexed hereto and made a part

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B).  Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

hereof, is the same as the amount that was deposited with BLMIS for the purchase of securities (total of $2,000,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since you have withdrawn all of the funds deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

2

copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after April 27, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:   Yale M. Fishman
      930 Broadway
      Woodmere, New York 11598

**Table 1**

**DEPOSITS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 8/24/1998 | CHECK WIRE | $670,000.00 | $670,000.00 |
| 8/27/1998 | TRANS FROM 1CM43330 | $330,000.00 | $330,000.00 |
| 12/29/1999 | CHECK | $500,000.00 | $500,000.00 |
| 12/11/2000 | TRANS FROM 1CM43330 | $500,000.00 | $500,000.00 |
| 12/31/2004 | TRANS FROM 1CM56830 | $0.01 | $0.00 |
| **Total Deposits:** | | $2,000,000.01 | $2,000,000.00 |
| | | | |

**WITHDRAWALS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/14/1999 | CHECK | ($17,808.22) | ($17,808.22) |
| 1/3/2000 | CHECK | ($53,501.65) | ($53,501.65) |
| 1/30/2001 | CHECK | ($124,305.00) | ($124,305.00) |
| 12/31/2001 | CHECK | ($87,351.00) | ($87,351.00) |
| 12/11/2002 | CHECK | ($130,161.00) | ($130,161.00) |
| 1/23/2004 | CHECK | ($90,550.40) | ($90,550.40) |
| 7/21/2004 | CHECK | ($12,101.60) | ($12,101.60) |
| 9/29/2004 | TRANS TO 1CM56830 | ($250,000.00) | ($250,000.00) |
| 12/31/2004 | TRANS TO 1CM56830 | ($3,101,924.84) | ($1,234,221.13) |
| 1/31/2005 | TRANS TO 1CM56830 | ($656.88) | $0.00 |
| **Total Withdrawals:** | | ($3,868,360.59) | ($2,000,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($1,868,360.58) | $0.00 |

4

# Exhibit "B"

Yale M. Fishman
930 Broadway
Woodmere, NY 11598
Yale@FishmanAssociates.com
Work: 516.374.0350 Cell: 516.313.0350

Re: Madoff Account # 1-CM543-3-0

Irving H. Picard, Esq.
Trustee for Bernard Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Dear Mr. Picard,

Please find enclosed the Yale Fishman Charitable Trusts' claim for SIPIC relief against the Madoff estate as well as documentary evidence of contributions and losses. Please find the documentary evidence which shows $2,000,000 in contributions into the account. Only $497,970.65 in disbursements was taken out of the Madoff Account. The last closing statement value received as 11/30/04 was $3,018,415.52. Thus we have a principal loss of $1,502,029.40.

We do not have any statements past 2004 as we attempted to transfer the balance of $3,352,581.72 to a public charity (Madoff Account #1CM56830, see Ex. J1, K4, and L3). As I was advised by you the trustee Irving Picard at the February 20th meeting in New York the Trustee views the statements and earnings of Madoff as fictional as the monies were stolen on arrival at Madoff. Furthermore you stated that you will "only consider actual monies deposited in and monies taken out of accounts." Accordingly the purported transfer to the charity never occurred and was a fictional entry. Thus our principal loss remains $1,502,029.40.

I am attaching a copy of the Charitable Remainder Trust of Yale Fishman showing I have authority to act on behalf of the trust in Ex M1.

Accordingly, your effort in recovering the stolen monies and SIPIC relief is greatly appreciated.

Yale Fishman Charitable Trust

Yale Fishman, Trustee

Glenn Fishman, Trustee

Yale Fishman
930 Broadway
Woodmere, NY 11598
Work: 516.374.0350 Fax: 516.374.0309
Yale@FishmanAssociates.com

## Yale Fishman Charitable Trust
## Madoff Account 1-CM543-3-0

| Date | Amount | Contributions<br>Type of Contribution | Exhibit/Page<br>Description |
|---|---|---|---|
| 12/11/2000 | $ 500,000.00 | received by transfer from #1-CM433-3-0 | Ex. A1 - Madoff Statement<br>Ex. B1 - Madoff Ticket |
| 12/29/1999 | $ 500,000.00 | check | Ex. B2 - Madoff Statement<br>Ex. B6 - Madoff Ticket |
| 8/27/1998 | $ 330,000.00 | received by transfer from #1-CM433-3-0 | Ex. C1 - Madoff Statement |
| 8/24/1998 | $ 670,000.00 | check wire | Ex. C1 - Madoff Statement |
| | $ 2,000,000.00 | | |

| Date | Amount | Deductions<br>Type of Deduction | Exhibit/Page<br>Description |
|---|---|---|---|
| 7/21/2004 | $ 12,101.60 | check | Ex. D1 - Madoff Statement |
| 1/23/2004 | $ 90,550.40 | check | Ex. E3 - Madoff Statement<br>Ex. E8 - Madoff Statement |
| 12/11/2002 | $ 130,161.00 | check | Ex. F1 - Madoff Statement |
| 12/30/2001 | $ 87,351.00 | check | |
| 1/30/2001 | $ 124,305.00 | check | Ex. G1 - Madoff Ticket |
| 1/3/2000 | $ 53,501.65 | check | Ex. H1 - Madoff Ticket |
| | $ 497,970.65 | | |

| Date | Amount | Transfer<br>Type of Transfer | Exhibit/Page<br>Description |
|---|---|---|---|
| 1/3/2005 | $ 656.88 | Transfer to Account #1CM56830 | Ex. J1 - Madoff Statement |
| 12/31/2004 | $ 3,101,924.84 | Transfer to Account #1CM56830 | Ex. K4 - Madoff Statement |
| 9/30/2004 | $ 250,000.00 | Transfer to Account #1CM56830 | Ex. L3 - Madoff Statement |
| | $ 3,351,924.84 | | |

**Value of statement as of 11/30/04 was $3,018,415.52 (Exhibit I5)

CUSTOMER CLAIM

Claim Number_____

Date Received_____

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: _516 374 0350_

HOME: _516 313 -0350_

Taxpayer I.D. Number (Social Security No.)
_11-650 95 64_

Account Number:    1CM543
YALE FISHMAN CHARITABLE TRUST
C/O YALE FISHMAN
445 CENTRAL AVE SUITE 201
CEDARHURST, NY 11516

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

*********************************************************************

1.    Claim for money balances as of December 11, 2008 :
    a.    The Broker owes me a Credit (Cr.) Balance of          $_____
    b.    I owe the Broker a Debit (Dr.) Balance of              $_____

502180406                                    1

c.    If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."
If you wish to make a payment, **it must be enclosed
with this claim form.**    $ _____

d.    If balance is zero, insert "None."    _NoN_

2.    Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a.    The Broker owes me securities | ✓ |  |
| b.    I owe the Broker securities |  | ✓ |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
|  | See exhibits J-1, K-4 | $3752,581.72 |  |
|  | and L-3 attached |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Number of Shares or Face Amount of Bonds

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation.  You should also provide all documentation or

S02180406

2

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | ✓ money delet/ gs medill | |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | ✓ |

502180406                                                                 3

9.  Have you or any member of your family
    ever filed a claim under the Securities
    Investor Protection Act of 1970?  if
    so, give name of that broker.

    Please list the full name and address of anyone assisting you in the
    preparation of this claim form:_____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.


IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.


THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.

Date ___2/12/0Y___          Signature _____

Date _____       Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)


**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201


502180406                          4