AMENDED    **CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

**Name of Customer:** Viola Brown Trustee U/T/D 12/29/88
**Mailing Address:** 19 Ocean Drive
**City:** Jupiter                      **State:** FL           **Zip:** 33469
**Account No.:** 1B0078
**Taxpayer I.D. Number (Social Security No.):** _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

************************************************************************

1.    Claim for money balances as of **December 11, 2008:**

    a.    The Broker owes me a Credit (Cr.) Balance of          $_____0_____

    b.    I owe the Broker a Debit (Dr.) Balance of             $_____0_____

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.                                 $_____

    d.    If balance is zero, insert "None."                        None

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | **Number of Shares or Face Amount of Bonds** | |
| See Nov. 30, 2008 B0078 statements, attached hereto as Exhibit A. | | | |
| $25,243,375.80 (market value of securities long, per B0078-3 statement) | | | |
| (17,576,947.80) (market value of securities short, per B0078-7 statement) | | | |
| (6,296,500.00) (market value of securities short, per B0078-8 statement) | | | |
| $1,369,928 | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.** See Exhibits A and B, and documents submitted herewith.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: <u>Christopher Van De Kieft, Esq., Seeger Weiss LLP, One William Street, New York, NY 10004</u>.

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _6/26/09_____    Signature _____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## CUSTOMER CLAIM

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

December 11, 2008

### Explanation of Trustee Capacity for
### Bernard L. Madoff Investment Securities Account No. B0078

**Trust:**              Viola Brown Trust D/T/D 12/29/88

**Trustee:**            Viola Brown

**Address:**            19 Ocean Drive, Jupiter, FL 33469

Pursuant to the Agreement for the Viola Brown Trust, submitted herewith in Exhibit B, Viola
Brown, is authorized to file a Securities Investor Protection Corporation Customer
Claim for Account B0078 with Bernard L. Madoff Securities, LLC.

_6/26/09_
Date

_Viola Brown_
Viola Brown, as Trustee for the
Viola Brown Trust

# *EXHIBIT A*

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT  VIOLA BROWN TRUSTEE
MR SETH LIPSON CPA
1920 PALM BEACH LAKES BLVD
SUITE 204
WEST PALM BEACH   FL  33409

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-B0078-3-0 | 11/30/08 | *******2676 | 1 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 23,045,809.58 | |
| 11/03 | | | | DC MARGIN INTEREST | INT | 48,935.97 | |
| 11/20 | | | | CATERPILLAR INC | DIV | | 7,392.00 |
| | | | | DIV 10/20/08 11/20/08 | | | |
| 11/20 | 25,000 | | | DIV ADJ 10/20/08 11/20/08 CAT | JRNL | 522,250.00 | |
| 11/21 | 13,000 | | 78340 | BARRICK GOLD CORP | 20.890 | 235,560.00 | |
| 11/25 | | 13,000 | 78350 | NATIONAL OILWELL INC | 18.120 | | |
| | | | | NEW BALANCE | | 23,852,555.55 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 35,000 | | | AMAZON COM INC | 42.700 | | |
| | 55,000 | | | ANALOG DEVICES | 17.100 | | |
| | 25,000 | | | BARRICK GOLD CORP | 29.460 | | |
| | 17,600 | | | CATERPILLAR INC | 40.990 | | |
| | 22,800 | | | CHUBB CORP | 51.360 | | |
| | 40,000 | | | DEVON ENERGY CORP NEW | 72.340 | | |
| | 40,000 | | | EXPRESS SCRIPTS INC | 57.510 | | |
| | 22,000 | | | MEDCO HEALTH SOLUTIONS INC | 42 | | |
| | 13,000 | | | NATIONAL OILWELL INC | 28.290 | | |
| | 147,820 | | | ORACLE CORPORATION | 16.090 | | |
| | 150,000 | | | REYNOLDS AMERICAN INC | 41.080 | | |
| | 75,000 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | 75,000 | | | WYNN RESORTS LTD | 39.020 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | 25,243,375.80 | | | LONG | | | |
| | | | | MARKET VALUE OF SECURITIES SHORT | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   VIOLA BROWN TRUSTEE
MR SETH LIPSON CPA
1920 PALM BEACH LAKES BLVD
SUITE 204
WEST PALM BEACH   FL  33409

YOUR ACCOUNT NUMBER   1-B0078-3-0

PERIOD ENDING   11/30/08

PAGE   2

YOUR TAX PAYER IDENTIFICATION NUMBER   ******2676-

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|-----------------|----------------|-----|-------------|-----------------|-------------------------------|--------------------------------|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 653,090.0 |
| | | | | MARGIN INTEREST | | 531,065.08 | |
| | | | | GROSS PROCEEDS FROM SALES | | | 11,848,750.0 |



**BERNARD L. MADOFF**
MADF INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT VIOLA BROWN TRUSTEE
MR SETH LIPSON CPA
1920 PALM BEACH LAKES BLVD
SUITE 204
WEST PALM BEACH    FL 33409

YOUR ACCOUNT NUMBER: 1-B0078-7-0
PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: *******2676
PAGE: 1  Q

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | |
| 11/20 | | | | DIV 10/20/08 11/20/08 | DIV | | 7,392.00 |
| 11/20 | | | | DIV ADJ 10/20/08 11/20/08 CAT | JRNL | 7,392.00 | |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | 351,000 | | AMAZON COM INC | 42.700 | | |
| | | 55,000 | | ANALOG DEVICES | 17.100 | | |
| | | 17,600 | | CATERPILLAR INC | 40.900 | | |
| | | 40,000 | | DEVON ENERGY CORP | 72.340 | | |
| | | 147,820 | | ORACLE CORPORATION NEW | 16.090 | | |
| | | 150,000 | | REYNOLDS AMERICAN INC | 41.080 | | |
| | | 75,000 | | WYNN RESORTS LTD | 39.820 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG    17,576,947.80- | | | 28,144,856.0 |
| | | | | SHORT | | | |

CATERPILLAR INC    28,144,856.0

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT VIOLA BROWN TRUSTEE
MR SETH LIPSON CPA
1920 PALM BEACH LAKES BLVD
SUITE 204
WEST PALM BEACH     FL  33409

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 28,144,856. |
| | | | | GROSS PROCEEDS FROM SALES | | 262,392.00 | |

YOUR ACCOUNT NUMBER  1-B0078-7-0

PERIOD ENDING  11/30/08

PAGE  2

YOUR TAX PAYER IDENTIFICATION NUMBER  *****-**2676

q

**BERNARD L. MADOFF**
[MADF] [✓] New York □ London
INVESTMENT SECURITIES LLC

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

VIOLA BROWN TRUSTEE
U/T/D 12/29/88
19 OCEAN DRIVE
JUPITER          FL  33469

YOUR ACCOUNT NUMBER: 1-B0078-8-0
PERIOD ENDING: 11/30/08
PAGE: 1  Q
YOUR TAX PAYER IDENTIFICATION NUMBER: ********2676

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 8,374,440.0 |
| 10/01 | 48,000 | | 6117 | SPDR TRUST SER 1 UNITS | 120.980 | | 5,807,040.00 |
| 10/01 | | 48,000 | 35824 | SPDR TRUST SER 1 UNITS | 120.980 | 5,807,040.00 | |
| 10/03 | 22,000 | | 6131 | SPDR TRUST SER 1 UNITS | 116.700 | | 2,567,400.00 |
| 10/03 | | 22,000 | 35825 | SPDR TRUST SER 1 UNITS | 116.700 | 2,567,400.00 | |
| | | | | NEW BALANCE | | | 8,374,440.0 |
| | | 70,000 | | SECURITY POSITIONS | | | |
| | | | | SPDR TRUST SER 1 UNITS SHORT | 89.950 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG        6,296,500.00- | | | |

MADF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

VIOLA BROWN TRUSTEE
U/T/D 12/29/88
19 OCEAN DRIVE
JUPITER                    FL   33469

YOUR ACCOUNT NUMBER
1-B0078-8-0

PERIOD ENDING
11/30/08

PAGE
2

YOUR TAX PAYER IDENTIFICATION NUMBER
*******2676

Q

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | GROSS PROCEEDS FROM SALES | | | 8,374,440.0 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT B

## EXHIBIT B

1. This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

2. The information provided in the Claim Form is based on information provided in the Claimant's latest Madoff account statement and any additional information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

3. The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law or equity.

4. The Claimant hereby requests that the Claim Form additionally be considered as a proof of claim, as a general creditor or otherwise, in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

5. This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by applicable law, the Claimant does not, by submitting the Claim Form, consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

6. The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, Bernard L. Madoff Investment Securities LLC and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

7. The Claimant further reserves all rights, claims, and/or defenses as to and/or against any persons and/or creditors asserting claims against Bernard L. Madoff Investment Securities LLC, its employees, owners, and/or affiliates, in bankruptcy or otherwise.

8. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever, notwithstanding the submission of any such information to the Trustee.

9. To the extent the Claimant has disclosed to the Trustee documents containing accounting and/or legal advice, the Claimant does not waive any potential privileges applicable thereto.

10. The Claimant reserves all rights with respect to submitting information to the Internal Revenue Service regarding gains, losses, and/or theft of assets.

11. The Claim Form and supporting documents contain confidential information. The Claimant submits this information to the Trustee subject to the condition that this information will not to be disclosed to any third parties, other than under seal to the Court, absent the Claimant's express consent or Court order.

12. To the extent the BMIS account for which this Claim Form is submitted contains or purports to contain funds from a "predecessor" or other BMIS account, the Claimant reserves all rights, claims, and defenses as to any such predecessor or other BMIS account. To the extent necessary or appropriate, this Claim Form is likewise submitted as a claim for and on behalf of any such predecessor or other BMIS account.

13. The Claimant submits herewith documents in support of the Claimant's claim, including documents containing information regarding account transactions, such as contributions and/or withdrawals. The Claimant reserves any arguments that such documents are not relevant to the Trustee's inquiry. The Claimant further reserves the right to supplement this submission, including the submission of additional documents, if deemed necessary. Attached is a list of the additional documents submitted herewith.

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| 1 | 12/29/1988 | | | Third Restated Declaration of Trust of Viola Brown |
| **2008 Bernard L. Madoff Investment Securities LLC monthly statements** | | | | |
| | 1/31/2008 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2008 account statement. |
| | 4/30/2008 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2008 account statement. |
| | 7/31/2008 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2008 account statement. |

Viola Brown Trustee U/T/D 12/29/88
Bernard L. Madoff Investment Securities Account No. B0078

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2008 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2008 account statement. |
| **2007 Bernard L. Madoff Investment Securities LLC monthly statements** | | | | |
| | 1/31/2007 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2007 account statement. |
| | 4/30/2007 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2007 account statement. |
| | 7/31/2007 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2007 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2007 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2007 account statement. |
| 2006 Bernard L. Madoff Investment Securities LLC monthly statements | | | | |
| | 1/31/2006 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2006 account statement. |
| | 4/30/2006 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2006 account statement. |
| | 7/31/2006 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2006 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2006 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2006 account statement. |
| **2005 Bernard L. Madoff Investment Securities LLC monthly statements** | | | | |
| | 1/31/2005 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2005 account statement. |
| | 4/30/2005 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2005 account statement. |
| | 7/31/2005 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2005 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2005 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2005 account statement. |
| 2004 Bernard L. Madoff Investment Securities LLC monthly statements | | | | |
| | 1/31/2004 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2004 account statement. |
| | 4/30/2004 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2004 account statement. |
| | 7/31/2004 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2004 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2004 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2004 account statement. |
| **2003 Bernard L. Madoff Investment Securities LLC monthly statements** | 1/31/2003 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2003 account statement. |
| | 4/30/2003 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2003 account statement. |
| | 7/31/2003 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2003 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2003 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2003 account statement. |
| 2002 Bernard L. Madoff Investment Securities LLC monthly statements | | | | |
| | 1/31/2002 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2002 account statement. |
| | 4/30/2002 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2002 account statement. |
| | 7/31/2002 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2002 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2002 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2002 account statement. |
| **2001 Bernard L. Madoff Investment Securities LLC monthly statements** | | | | |
| | 1/31/2001 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2001 account statement. |
| | 4/30/2001 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2001 account statement. |
| | 7/31/2001 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2001 account statement. |

Viola Brown Trustee U/T/D 12/29/88
Bernard L. Madoff Investment Securities Account No. B0078

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2001 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2000 account statement. |
| 2000 Bernard L. Madoff Investment Securities LLC monthly statements | | | | |
| | 1/31/2000 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 2000 account statement. |
| | 4/30/2000 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 2000 account statement. |
| | 7/31/2000 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 2000 account statement. |

Viola Brown Trustee U/T/D 12/29/88
Bernard L. Madoff Investment Securities Account No. B0078

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/2000 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities October 2000 account statement. |
| 1999 Bernard L. Madoff Investment Securities LLC monthly statements | | | | |
| | 1/31/1999 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities January 1999 account statement. |
| | 4/30/1999 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities April 1999 account statement. |
| | 7/31/1999 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities July 1999 account statement. |

**Viola Brown Trustee U/T/D 12/29/88**
**Bernard L. Madoff Investment Securities Account No. B0078**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| | 10/31/1999 | Bernard L. Madoff Investment Securities | Viola Brown Trustee U/T/D 12/29/88 | Bernard L. Madoff Investment Securities  October 1999 account statement. |

1

# THIRD RESTATED DECLARATION OF TRUST

## OF

## VIOLA BROWN

On December 29, 1988, I, **VIOLA BROWN**, executed a Declaration of Trust, and I restated same on August 28, 1996, and on December 20, 2006. I reserved the right in said Declaration of Trust, by instrument in writing, delivered to the Trustee, to amend or revoke the Declaration of Trust and all amendments thereto, in whole or in part. Pursuant to said reserved power, I restate the Declaration of Trust and all amendments as follows:

I, **VIOLA BROWN**, of Palm Beach County, Florida, have transferred to myself as trustee the property listed in the attached schedule, together with all investments and reinvestments thereof, herein collectively referred to as the "trust estate" to be held upon the following trusts:

**FIRST:** Income and Principal. During my lifetime the trustee shall pay so much or all of the income and principal of the trust estate to me or otherwise as I direct. If at any time or times I shall be unable to manage my affairs, the trustee may use such sums from the income and principal of the trust estate as the trustee deems necessary or advisable for the care, support and comfort of myself and any person dependent upon me, or for any other purpose the trustee considers to be for my best interests. Any excess income shall be added to principal.

Disability. For purposes of this Third Restated Declaration, I shall be considered to be unable to manage my affairs if I am under a legal disability or by reason of illness or mental or physical disability am unable to give prompt and intelligent consideration

1

to financial matters. The determination as to my inability at any time shall be made by my husband, ELBERT R. BROWN, and my physician, or the survivor of them, and the trustee may rely upon written notice of that determination.

SECOND: Taxes - Expenses. Upon my death, if I have no probate estate, or to the extent that the cash and readily marketable assets in the principal of the residue of my probate estate are insufficient, the trustee shall make the following payments from the principal of the trust estate. The trustee shall pay the expenses of my last illness and funeral, costs of administration including ancillary, costs of safeguarding and delivering devises, claims allowable against my estate (excluding debts secured by real property or life insurance), and pre-residuary devises under my will if my will contains a residuary devise to this trust. The trustee shall also pay the estate and inheritance taxes assessed by reason of my death, including such taxes on property passing outside this Third Restated Declaration, except that the amount, if any, by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have a power of appointment shall be paid by the person holding or receiving that property. Interest and penalties concerning any tax shall be paid and charged in the same manner as the tax. The trustee may make payment directly or to the personal representative of my estate, as the trustee deems advisable. I hereby waive all rights of apportionment or reimbursement for any payments made pursuant to this article.

Assets or funds otherwise excludable from my gross estate for federal estate tax purposes shall not be used to make the foregoing payments. The trustee's selection of assets to be sold for that purpose or to satisfy any pecuniary gifts, and the tax effects

2

thereof, shall not be subject to question by any beneficiary.

The trustee shall make such elections and allocations under the tax laws as the trustee deems advisable, without regard to the relative interests of the beneficiaries and without liability to any person. No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for the effect of elections or allocations under the tax laws made by the personal representative of my estate or by the trustee.

The balance of the trust estate which remains after the foregoing payments have been made or provided for shall be held and distributed as hereinafter provided.

THIRD: Family. My husband's name is ELBERT R. BROWN, and he is herein referred to as "my husband." I have two children now living, namely: my son, DOUGLAS GARY BROWN, and my daughter, STACEY ELLEN MATHIAS.

FOURTH: Marital Trust. If my husband survives me, the trustee as of my death shall set aside out of the trust estate as a separate trust for his benefit (undiminished to the extent possible by any estate or inheritance taxes or other charges) a fraction of the trust property of which (i) the numerator is the smallest amount which, if allowed as a federal estate tax marital deduction, would result in the least possible federal estate tax payable by reason of my death, and (ii) the denominator is the federal estate tax value of the assets included in my gross estate which became (or the proceeds, investments or reinvestment of which became) trust property. In determining the amount of the numerator the trustee shall consider the credit for state death taxes only to the extent those taxes are not thereby incurred or increased and shall assume that none of the Family Trust hereinafter established qualifies for a federal estate tax deduction.

3

For purposes of the preceding paragraph, the trust property is all property in the trust estate, including any property added thereto by my will, which was not paid pursuant to the preceding articles of this Third Restated Declaration and which would qualify for the federal estate tax marital deduction if it were distributed outright to my husband. For purposes of this Third Restated Declaration, I shall be deemed to have survived my husband if the order of our deaths cannot be proved.

My husband shall have the right by written notice to require the trustee to convert unproductive property in the trust to productive property within a reasonable time.

The trust shall be designated the "Marital Trust" and shall be held and distributed as follows:

SECTION 1:  Income.  Commencing with my death the trustee shall pay the income from the Marital Trust in convenient installments, at least quarterly, to my husband during his lifetime.

Principal Invasion.  The trustee may also pay to my husband such sums from principal as the trustee deems necessary or advisable from time to time for his health and maintenance in reasonable comfort, considering his income from all sources known to the trustee. Only the trustee(s) other than my husband may make this determination to invade principal.

The trustee shall pay over to my husband during his lifetime, such amount or amounts of the principal of this trust constituting the marital portion as defined below as he may from time to time in writing request.

In addition, my husband may withdraw at any time or times from the

4

principal of the Marital Trust not to exceed in the aggregate during any calendar year Five Thousand Dollars ($5,000.00) prior to the end of the third full calendar year following my death and thereafter the greater of $5,000.00 or five percent (5%) of the value of the principal of the Marital Trust.   If the Marital Trust is divided into marital and nonmarital portion trusts, the amount of my husband's withdrawal right under this paragraph shall be determined by aggregating the values of the trusts, but the trustee shall satisfy the withdrawal right first from the principal of the marital portion trust so long as any readily marketable assets remain in that trust.  The trustee shall make payments without question upon his written request.  The right of withdrawal shall be a privilege which may be exercised only voluntarily and shall not include an involuntary exercise.

<u>Individual/Other Retirement Accounts</u>:  The trustee shall pay to my husband annually from any IRA or other retirement account constituting part of the Marital trust the greater of the amount of income earned on the IRA/retirement plan assets during the year or the annual required minimum distribution.

**SECTION 2:**  <u>Election</u>.  The personal representative of my estate (or if no representative is acting, the trustee) may elect to have a specific portion or all of the Marital Trust, herein referred to as the "marital portion," treated as qualified terminable interest property for federal estate tax purposes.  If an election is made as to less than all of the Marital Trust, the specific portion shall be expressed as a fraction or percentage of the Marital Trust and may be defined by means of a formula.  I intend that the marital portion shall qualify for the federal estate tax marital deduction in my estate.

If the marital portion is less than all of the Marital Trust, at any time

5

during the lifetime of my husband the trustee in its discretion may divide the Marital Trust into two separate trusts representing the marital and non-marital portions of the Marital Trust. The two separate trusts shall be held and distributed on the same terms and conditions as the Marital Trust, except that the trustee shall make no invasion of the principal of the non-marital portion trust so long as any readily marketable assets remain in the marital portion trust.

SECTION 3: <u>Limited Testamentary Power of Appointment</u>. Upon the death of my husband the principal of the Marital Trust shall be held in trust hereunder or distributed to or in trust for such one or more of my descendants and their respective spouses and charitable, scientific or educational purposes, with such powers and in such manner and proportions as my husband may appoint by his will making specific reference to this power of appointment.

<u>Default</u>. Upon the death of my husband any part of the principal of the Marital Trust not effectively appointed shall be added to or used to fund the Family Trust, except that, unless my husband directs otherwise by his will or revocable trust, the trustee shall first pay from the principal of the marital portion, directly or to the personal representative of my husband's estate as the trustee deems advisable, the amount by which the estate and inheritance taxes assessed by reason of the death of my husband shall be increased as a result of the inclusion of the marital portion in his estate for such tax purposes. The trustee's selection of assets to be sold to pay that amount, and the tax effects thereof, shall not be subject to question by any beneficiary.

Notwithstanding any other provision of this Third Restated Declaration, all income of the Marital Trust accrued or undistributed at the death of my husband shall be paid to his estate.

6

**FIFTH:** Family Trust. The trustee as of my death shall set aside the balance of the trust estate as a separate trust. The trust shall be designated the "Family Trust" and shall be held and distributed as follows:

SECTION 1: Income. If my husband survives me, then commencing with my death the trustee shall pay the income from the Family Trust in convenient installments, at least quarterly, to him during his lifetime.

Individual/Other Retirement Accounts: The trustee shall pay to my husband annually from any IRA or other retirement account constituting part of the Family trust the greater of the amount of income earned on the IRA/retirement plan assets during the year or the annual required minimum distribution.

Principal Invasion. The trustee may also pay to my husband such sums from principal as the trustee deems necessary or advisable from time to time for his health and maintenance in reasonable comfort, and for the health, support in reasonable comfort, and education (including postgraduate and/or vocational) of any child of mine who may be dependent upon him, considering the income of each of them from all sources known to the trustee, but shall make no invasion of the Family Trust for my husband so long as any readily marketable assets remain in the Marital Trust. No payment made for a child of mine shall be charged against the share hereinafter provided for the child or his or her descendants. Only the trustee(s) other than my husband may make this determination to invade principal.

In addition, my husband may withdraw at any time or times from the principal of the Family Trust not to exceed in the aggregate during any calendar year Five Thousand Dollars ($5,000.00) prior to the end of the third full calendar year following my

death and thereafter the greater of $5,000.00 or five percent (5%) of the value of the principal of the Family Trust. The trustee shall make payments without question upon his written request. The right of withdrawal shall be a privilege which may be exercised only voluntarily and shall not include an involuntary exercise.

Disclaimed Property. A disclaimer by my husband of any part or all of the Marital Trust shall not preclude him from receiving benefits from the disclaimed property in the Family Trust.

SECTION 2: Division. Upon the death of my husband, or upon my death if my husband does not survive me, the trustee shall divide the Family Trust, including any amounts added thereto from the Marital Trust, into equal shares to create one share for each then living child of mine and one share for the then living descendants, collectively, of each deceased child of mine.

Each share created for the descendants of a deceased child shall be distributed per stirpes to those descendants, subject to postponement of possession as provided below. Each share created for a living child shall be distributed outright to said child, free of trust.

SECTION 3: Postponement of Possession. Each share of the Family Trust which is distributable to a beneficiary who has not reached the age of 21 years shall immediately vest in the beneficiary, but the trustee shall (a) establish with the share a custodianship for the beneficiary under a Uniform Transfers or Gifts to Minors Act, or (b) retain possession of the share as a separate trust, paying to or for the benefit of the beneficiary so much or all of the income and principal of the share as the trustee deems necessary or

8

advisable from time to time for his or her health, maintenance in reasonable comfort, education (including postgraduate and/or vocational) and best interests, adding to principal any income not so paid, and distributing the share to the beneficiary when he or she reaches the age of 21 years or to the estate of the beneficiary if he or she dies before receiving the share in full.

SECTION 4: Failure of Descendants. If upon the death of the survivor of my husband and me, or at any time thereafter but prior to complete distribution of the trust estate, there is no living descendant of mine, any trust property then held under this Third Restated Declaration and not vested or effectively appointed shall be distributed 1/2 to my heirs-at-law and 1/2 to my husband's heirs-at-law, the heirs-at-law and the proportions which they shall respectively take to be determined in each case according to the present laws of descent of the State of Florida as if my husband and I had both died at that time.

SIXTH: Administrative Provisions. The following provisions shall apply to the trust estate and to each trust under this Third Restated Declaration:

SECTION 1: Facility of Payment. If income or discretionary amounts of principal become payable to a minor or to a person under legal disability or to a person not adjudicated incapacitated but who, by reason of illness or mental or physical disability, or for any other reason is in the opinion of and in the sole discretion of the trustee unable properly to manage his or her affairs, then that income or principal shall be paid or expended only in such of the following ways as the trustee deems best: (a) directly to the beneficiary or his or her attorney in fact; (b) to the legally appointed guardian of the beneficiary; (c) to a custodian for the beneficiary under a Uniform Transfers or Gifts to Minors Act; (d) by the trustee directly for the benefit of the beneficiary; (e) to an adult relative or friend in reimbursement for

9

amounts properly advanced for the benefit of the beneficiary.

SECTION 2:  Spendthrift.  The interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered.  This provision shall not limit the exercise of any power of appointment.

The rights of beneficiaries to withdraw trust property are personal and may not be exercised by a guardian, attorney in fact or others.

SECTION 3:  Principal and Income.  The allocation of receipts and disbursements between income and principal shall be determined as provided by this agreement and applicable state statute or in cases not covered by statute by the trustee, except that

(a) if the trust is beneficiary or owner of an individual account in any employee benefit plan or individual retirement plan, income earned after death in the account shall be income of the trust, and if the trustee is required to pay all trust income to a beneficiary, the trustee shall collect and pay the income of the account to the beneficiary at least quarterly (and to the extend that all income cannot be collected from the account, the deficiency shall be paid from the principal of the trust),

(b) reserves for depreciation shall be established out of income only to the extent that the trustee determines that readily marketable assets in the principal of the trust will be insufficient for any renovation, major repair, improvement or replacement of trust property which the trustee deems advisable, and

(c) income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by the trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

SECTION 4:  Common Fund and Consolidation.  For convenience of administration or investment, the trustee may hold separate trusts as a common fund, dividing the income proportionately among them, assign undivided interests to the separate trusts, and make joint investments of the funds belonging to them.  The trustee may consolidate any

10

separate trust with any other trust with similar provisions for the same beneficiary or beneficiaries.

**SECTION 5:** <u>Residence.</u> If the trust estate includes any interest in real estate which my husband or I use as a residence, including seasonal and vacation homes, then notwithstanding any other provision of this agreement, the following shall apply to each residence or interest therein:

(a) My husband and I shall have the right to occupy and use each residence, rent free, as long as he or I desire to do so. After my death, my husband shall continue to have that right if he survives me and is a permissible income beneficiary of the trust which owns the residence.

(b) I shall have responsibility (and the trustee shall have no responsibility) for each residence, including maintenance, insurance, repairs, taxes, assessments, mortgage payments, and other expenses relating to the residence. After my death, my husband shall have responsibility for each residence described above, except that the trustee shall pay all taxes, real estate and condominium assessments, insurance premiums and mortgage payments on the residence. This subsection (b) applies only while I am not unable to manage my affairs and, after my death, only while my husband is under no disability.

While my husband or I have responsibility for a residence, the trustee need not review or inspect the residence, make any payments in connection with it except as provided above, or inquire whether my husband or I am fulfilling that responsibility.

After my death, while my husband has responsibility for a residence, he shall have the right to direct the trustee to sell the residence and also to reinvest part or all of

11

the net sale proceeds in a replacement residence selected by him. My husband shall have sole responsibility for the sale and reinvestment, including price and other terms and conditions. My husband and the trustee shall have the same rights and responsibilities with respect to the replacement residence. My husband may exercise these powers of direction only in a fiduciary capacity.

The statement of the trustee that it is acting according to this section shall fully protect all persons dealing with the trustee. The trustee shall have no responsibility for any loss that may result from acting in accordance with this section.

SECTION 6: Retained Powers. Notwithstanding the foregoing, while I am living and not unable to manage my affairs:

(a) No sale or investment shall be made without my written approval, unless I fail to indicate my approval or disapproval of any proposed sale or investment within 10 days after being requested to do so in writing.

(b) I shall have the power to direct the retention or sale of any trust assets and the purchase of property with any principal cash in the trust. If I direct the retention or purchase of an asset, the trustee shall have investment, voting, and management responsibility for that asset unless I direct otherwise.

I may at any time or times, with or without right of revocation, by a writing delivered to the trustee delegate to any other person or to the trustee or relinquish any or all of the powers reserved to me hereunder.

The statement of the trustee that it is acting according to this section shall fully protect all persons dealing with the trustee. The trustee shall have no responsibility for any loss that may result from acting in accordance with this section.

SECTION 7: Accounts and Compensation. A trustee (other than myself) shall

12

render an account of trust receipts and disbursements and a statement of assets at least annually to each adult beneficiary then entitled to receive or receiving the income from the trust and, in addition, to any other beneficiaries who are entitled to an accounting under applicable state law. An account is binding on each beneficiary who receives it and on all persons claiming by or through the beneficiary and the trustee is released as to all matters stated in the account or shown by it, unless the beneficiary commences a judicial proceeding to assert a claim within one year after the mailing or other delivery of the account. Before distributing property to a beneficiary upon termination of a trust in whole or in part, the trustee shall have the right to require an approval of the trustee's accounts, either by a written approval and release from the beneficiary or, if it cannot be obtained, by a judicial settlement of accounts. The expense of the judicial procedure (including attorneys fees) shall be paid from the beneficiary's share of the trust. The trustee shall also have the right to require an indemnification from the beneficiary for any environmental law liability or expense which the trustee has incurred or may incur in the future with respect to the property distributed.

The trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust, and any corporate trustee shall receive compensation for its services in accordance with its schedule of fees in effect from time to time. Individual trustee(s) shall receive compensation for their services. A trustee's regular compensation shall be charged against income during my lifetime and thereafter half against income and half against principal, except that the trustee shall have full discretion at any time or times to charge a larger portion or all against income.

SECTION 8: <u>Small Trust Termination and Perpetuities Savings</u>. A corporate

13

trustee in its discretion may terminate and distribute any trust hereunder if the corporate trustee determines that the costs of continuance thereof will substantially impair accomplishment of the purposes of the trust. The trustee shall terminate and forthwith distribute any trust created hereby, or by exercise of a power of appointment hereunder, and still held 21 years after the death of the last to die of myself and the beneficiaries in being at my death. Distribution under this section shall be made to the persons then entitled to receive or have the benefit of the income from the trust in the proportions in which they are entitled thereto, or if their interests are indefinite, then in equal shares.

SECTION 9: <u>Trustee Succession</u>. I may resign at any time by written notice to my husband, ELBERT R. BROWN; my son, DOUGLAS GARY BROWN; and my daughter, STACEY ELLEN MATHIAS. After my resignation, death or inability to manage my affairs, ELBERT R. BROWN, DOUGLAS GARY BROWN and STACEY ELLEN MATHIAS shall serve as successor co-trustees. If for any reason either shall be unable to serve as successor co-trustee, the remaining co-trustees shall serve. If for any reason more than one co-trustee shall be unable to serve as co-trustee, the remaining co-trustee shall serve as sole trustee.

Any trustee may resign at any time by written notice to me if living, otherwise to each beneficiary then entitled to receive or have the benefit of the income from the trust. In case of the resignation, refusal or inability to act of the last designated trustee, I, if living, otherwise the beneficiary or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust shall appoint a successor corporate trustee. If a beneficiary shall be unable, for any reason, to name a successor trustee, the last

14

serving named trustee may designate a successor trustee.

A majority in interest of the income beneficiaries shall have the power to remove a trustee acting hereunder. Thereafter, any successor trustees named herein shall serve in the order provided. If no named successor trustee shall be able to serve, a corporate trustee having trust powers exercisable in the State of Florida and assets under management of not less than ONE HUNDRED MILLION AND NO/100THS ($100,000,000.00) DOLLARS, must be appointed. In the event this right is exercised, a trustee so removed shall deliver the assets of the trust to the successor trustee within sixty (60) days from receipt of notice of the exercise of this right and notification from the successor trustee so appointed of its willingness to act.

Every successor trustee shall have all the powers given the originally named trustee. No successor trustee shall be personally liable for any act or omission of any predecessor. With my approval if I am living, otherwise with the approval of the beneficiary or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust, a successor trustee may accept the account rendered and the property received as a full and complete discharge to the predecessor trustee without incurring any liability for so doing. The parent or guardian of a beneficiary under disability shall receive notice and have authority to act for the beneficiary under this section.

No trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court. No statute with respect to underproductive property shall apply to any trust under this Third Restated Declaration.

If another corporation succeeds to part or all of the trust business of a

corporate trustee acting or appointed to act hereunder, that corporation shall be the successor corporate trustee, without necessity of appointment, assignment or other action.

SECTION 10: <u>Donee's Will</u>. In disposing of any trust property subject to a power to appoint by will, the trustee may rely upon an instrument admitted to probate in any jurisdiction as the will of the donee or may assume that the power was not exercised if, within 3 months after the death of the donee, the trustee has no actual notice of a will which exercises the power. The trustee may rely on any document or other evidence in making payment under this Third Restated Declaration and shall not be liable for any payment made in good faith before it receives actual notice of a changed situation.

SECTION 11: <u>Insurance</u>. With respect to any policy of life insurance under which the death benefits are made payable to the trustee:

(a) The owner or owners thereof reserve all available benefits, privileges, payments, dividends, surrender values, options and elections, including the right at any time or times to change the beneficiary, to pledge or assign the policy or its proceeds as collateral security for any loan which the owner or owners may obtain from any lender, including a trustee hereunder individually or a parent or affiliate company, and to withdraw the policy if deposited with the trustee, without any duty on the trustee to see to its return.

(b) The trustee need not pay or see to the payment of premiums or assessments on the policy.

(c) Upon the death of the insured thereunder the trustee shall take such action as the trustee deems best to collect the policy proceeds, paying the expense thereof from the trust estate, but the trustee need not enter into or maintain any litigation to enforce payment on the policy until indemnified to the trustee's satisfaction against all expenses and liabilities to which the trustee might thereby be subjected. The trustee may release the insurance company from its liability under the policy and make any compromise which the trustee deems proper.

(d) The insurance company shall not take notice of the provisions of this Third Restated Declaration or see to the application of the

16

policy proceeds, and the trustee's receipt to the insurance company shall be a complete release for any payment made and shall bind every beneficiary under this Third Restated Declaration.

(e) The trust shall be operative with respect to the proceeds of the policy at the death of the insured thereunder, after deducting all charges by way of advances, loans or otherwise in favor of the owner or owners or any other person, for which the trustee shall not seek reimbursement.

**SECTION 12:** Generation-Skipping Tax. To enable trusts to be either completely exempt or nonexempt from generation-skipping tax, or for any other reason, the trustee may divide a trust into two or more separate trusts and may hold an addition to a trust as a separate trust. A division shall be done on a fractional basis and may be defined by means of a formula. The rights of beneficiaries shall be determined as if the trusts were aggregated, but the trustee may pay principal to beneficiaries and taxing authorities disproportionately from the trusts. The trustee shall not be liable for deciding in its discretion to exercise or not exercise these powers.

Upon division or distribution of an exempt trust and a nonexempt trust held hereunder, the trustee in its discretion may allocate property from the exempt trust first to a share from which a generation-skipping transfer is more likely to occur.

If the trustee considers that any distribution from a trust hereunder other than pursuant to a power to withdraw or appoint is a taxable distribution subject to a generation-skipping tax payable by the distributee, the trustee shall augment the distribution by an amount which the trustee estimates to be sufficient to pay the tax and shall charge the same against the trust to which the tax relates.

If the trustee considers that any termination of an interest in trust

17

property hereunder is a taxable termination subject to a generation-skipping tax, the trustee shall pay the tax from the portion of the trust property to which the tax relates, without adjustment of the relative interests of the beneficiaries.

If a trust hereunder would incur generation-skipping tax by reason of the death of a beneficiary (assuming the non-exercise of all testamentary powers of appointment granted to the beneficiary hereunder), then the beneficiary shall have the power to appoint the trust property otherwise constituting a generating-skipping transfer to the creditors of his or her estate. This general testamentary power of appointment is granted to avoid generation-skipping tax. This power of appointment may be exercised only by a will making specific reference to this power, and it shall be in addition to any other testamentary power of appointment granted to the beneficiary under this agreement. Any such trust property not effectively appointed by the beneficiary shall be held and disposed of as provided in this agreement, except that unless the beneficiary directs otherwise by his or her will or revocable trust, the trustee shall first pay from the principal of such property, directly or to the personal representative of the beneficiary's estate as the trustee deems advisable, the amount by which the estate and inheritance taxes assessed by reason of the death of the beneficiary shall be increased as a result of the inclusion of such property in the beneficiary's estate for such tax purposes. The trustee's selection of assets to be sold to pay that amount, and the tax effects thereof, shall not be subject to question by any beneficiary.

SECTION 13:  Special Trustee.  If for any reason the trustee is unwilling or unable to act as to any property, such person or qualified corporation as the trustee shall from time to time designate in writing shall act as special trustee as to that property. Any person or

18

corporation acting as special trustee may resign at any time by written notice to the trustee.
Each special trustee shall have the powers granted to the trustee by this Third Restated
Declaration, to be exercised only with the approval of the trustee, to which the net income and
the proceeds from the sale of any part or all of the property shall be remitted to be
administered under this Third Restated Declaration.

SECTION 14:  Children and Descendants.  In determining whether any person
is a child or descendant for purposes of this agreement, children and descendants by both birth
and adoption shall be included, except that

(a) a person adopted when over the age of 18 years shall be excluded.

(b) a person born out of wedlock shall be treated as a child of the
mother, unless her parental rights are terminated by placement for adoption or otherwise, and

(c) a person born out of wedlock shall not be treated as a child of the
father unless the father marries the mother, acknowledges paternity of the child by a writing
delivered to the trustee during the father's lifetime, or paternity is established by adjudication
before or after the death of the father.

SECTION 15:  Per Stirpes.  Whenever trust property is to be distributed or
allocated *per stirpes* to the then living descendants of a person, the trust property shall be first
divided at the generational level of the person's children, whether or not any child of the
person is then living.

SECTION 16:  In making discretionary distributions of trust property to
beneficiaries, the trustee shall consider the following:

(a) Among current beneficiaries of the trust, the interests of an older-
generation beneficiary shall have priority over younger-generation beneficiaries, if the
younger-generation beneficiaries are descendants of the older-generation beneficiary.

(b) The interests of a current beneficiary shall have priority over the
remaindermen of the trust, if the remaindermen are descendants of the current beneficiary.

19

The trustee may also consider tax effects in making discretionary distributions of trust property to beneficiaries.

**SECTION 17:** A trustee may not use trust property to discharge the trustee's legal obligations, including any obligation to support a beneficiary

**SEVENTH:** Trustee Powers. The trustee of each trust under this Third Restated Declaration shall hold, manage, care for and protect the trust property and shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

(a) To retain any property (including stock of any corporate trustee hereunder or a parent or affiliate company) originally constituting the trust or subsequently added thereto, and to invest and reinvest the trust property in bonds, stocks, mortgages, notes, bank deposits, options, futures, limited partnership interests, shares of registered investment companies and real estate investment trusts, or other property of any kind, real or personal, domestic or foreign; the trustee may retain or make any investment without liability, even though it is not of a type, quality, marketability or diversification considered proper for trust investments;

(b) To cause any property, real or personal, belonging to the trust to be held or registered in the trustee's name or in the name of a nominee or in such other form as the trustee deems best without disclosing the trust relationship;

(c) To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which the trustee's possession of voting discretion would subject the issuing company or the trustee to any law, rule or regulation adversely affecting either the company or the trustee's ability to retain or vote company securities, shall be voted as directed by me if living, otherwise by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other property received therefore;

(d) To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

(e) To borrow money from any lender, extend or renew any existing indebtedness and mortgage or pledge any property in the trust;

(f) To sell at public or private sale, contract to sell, convey, exchange, transfer and otherwise deal with the trust property and any reinvestment thereof, and to sell covered call options, from time to time for such price and upon such terms as the trustee sees fit;

(g) To employ agents, attorneys and proxies and to delegate to them such powers as the trustee considers desirable; and to pay them reasonable compensation from the trust estate;

(h) To compromise, contest, prosecute or abandon claims in favor of or against the trust;

(i) To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes; to value the trust property and to sell any part or all thereof in order to make allocation or distribution; no action taken by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

(j) To deal with, purchase assets from, or make loans to, the fiduciary of my estate or any other estate or trust in which any beneficiary under this Third Restated Declaration has an interest, though a trustee hereunder is the fiduciary, and to retain any assets or loans so acquired, although not of a type, quality, marketability or diversification considered proper for trust investments; to deal with a corporate trustee hereunder individually or a parent or affiliate company;

(k) To determine in cases not covered by statute or this Third Restated Declaration the allocation of receipts and disbursements between income and principal, except that (i) if the trust is beneficiary or owner of an individual account in any employee benefit plan or individual retirement plan, income earned after death in the account shall be income of the trust, and if the trustee is required to pay all trust income to a beneficiary, the trustee shall collect and pay the income of the account to the beneficiary at least quarterly (and to the extent that all income cannot be collected from the account, the deficiency shall be paid from the principal of the trust), and (ii) reserves for depreciation shall be established out of income only to the extent that the trustee determines that readily marketable assets in the principal of the trust will be insufficient for any renovation, major repair, improvement or replacement of trust property which the trustee deems advisable;

(l) To elect, pursuant to the terms of any employee benefit plan, individual retirement plan or insurance contract, the mode of distribution of the proceeds thereof, and no adjustment shall be made in the interests of the beneficiaries to compensate for

the effect of the election;

(m) To inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, trust or other entity) for environmental conditions or possible violations of environmental laws; to remediate environmentally-damaged property or to take steps to prevent environmental damage in the future, even if no action by public or private parties is currently pending or threatened; to abandon or refuse to accept property which may have environmental damage; the trustee may expend trust property to do the foregoing, and no action or failure to act by the trustee pursuant to this paragraph shall be subject to question by any beneficiary; and

(n) During the settlor's lifetime, to make gifts from the trust estate to family and/or charities, and to make such distributions from the trust estate as are necessary to carry out on settlor's behalf, any plan or pattern of family and/or charitable gifts, outright, in trust or in custodianship, in the Trustee's sole judgment and without liability for the determination to make such distributions;

(o) To make distributions, if any, to charitable entities from income, if any, in respect of the decedent.

(p) To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

(q) To maintain or terminate any life insurance policy included in the trust property, to pay premiums thereon (but only from principal), and to exercise all incidents of ownership in connection therewith;

(r) To elect, pursuant to the terms of any employee benefit plan, individual retirement plan or insurance contract, the mode of distribution of the proceeds thereof, and no adjustment shall be made in the interests of the beneficiaries to compensate for the effect of the election;

(s) To retain or acquire any interests in oil, gas or other mineral resources received from any source without liability for any loss occasioned thereby; to execute any agreements, assignments, contracts, deeds, grants, leases for any term, and any other instruments or documents (even though their term may extend beyond the administration of any trust); to manage, control, operate, explore, mine, develop, or take any other action for the production, recovery, sale, treatment, storage, or transportation of any interest in oil, gas, or other mineral resources; to drill wells of any type; to conduct or participate in secondary recovery operations; to enter into agreements for pooling or unitization; to install, operate, or participate in the operation of any plant, mine, or other facility; and generally, with reference

22

by those engaged in the business of prospecting for, developing, producing, processing, transporting, or marketing oil, gas, or other minerals) as the trustee deems to be advisable.

(t) To designate a representative for a beneficiary in accordance with Florida Statute 736.0306.

(u) The trustee shall have the power, in its sole discretion, to divide property in any trust being held hereunder with an inclusion ratio, as defined in Section 2642(a)(1) of the Internal Revenue Code of 1986, as amended, of neither one nor zero into two separate trusts representing two fractional shares of the property being divided, one to have an inclusion ratio of one and the other to have an inclusion ratio of zero.

The trustee shall have the power, in its sole discretion, with respect to all or any part of the principal of the trust (including a pecuniary amount), by an instrument filed with the trust records: 1) to create in a child of the Grantor a general power of appointment within the meaning of Section 2041 of the Internal Revenue Code of 1986, as amended (including a power the exercise of which requires the consent of the trustee (other than the beneficiary) that may dispose of the property upon the death of the child; 2) to eliminate such power for all or any part of such principal as to which such power was previously created; 3) irrevocably to release the right or to create or eliminate such power; and, 4) to divide the trust principal into two fractional shares based upon the then portion of the trust that would be includable in the gross estate of the child holding such power if he or she died immediately before such division (in which case the power shall be over the entire principal of one share and over no part of the other share) and each such share shall be administered as a separate trust unless the trustee (other than any beneficiary) shall in his sole discretion thereafter combine such separate trusts into a single trust which it is hereby authorized to do. In authorizing such action, it is the Grantor's hope (but he/she does not direct) that a general power will be kept in effect when the trustee believes the inclusion of the property affected thereby and the child's gross estate may achieve a significant savings in transfer taxes by having an estate tax rather than a generation skipping tax imposed on the property subject to the general power, which may also permit a greater use of the generation skipping tax exemption under Section 2631(a) of the Internal Revenue Code of 1986 as amended, of the child, or his/her spouse.

The trustee determines that any distribution from a trust hereunder other than pursuant to a power to withdraw or appoint is a taxable distribution subject to a generation skipping tax payable by the beneficiary, the trustee shall augment the distribution by an amount which the trustee estimates to be sufficient to pay the tax and shall charge the same against the trust to which the tax relates.

If the trustee determines that any termination of any interest in trust property hereunder is a taxable termination subject to a generation skipping tax, the trustee shall pay the tax from the portion of the trust property to which the tax relates, without adjustment of the relative interests of the beneficiaries.

23

(v) The trustee may unilaterally apply to reform or modify this trust in accordance with the provisions of Chapter 736 of the Florida Statutes including but not limited to the provisions in 736.0412, 736.0415 and 736.0416.

**EIGHTH:** Liability for Service as a Trustee. The following rules govern liability for service as a Trustee:

1. I relieve each individual Trustee of any liability for his or her actions or failures to act done in good faith, whether or not negligent or otherwise in breach of fiduciary duty.

2. Each corporate Trustee will be liable for its actions or failures to act that are negligent or that breach its fiduciary duty, without contribution by any individual Trustee.

3. Except as provided above, I direct that each Trustee be held harmless and indemnified from the assets of the trust for any liability, damages, attorney's fees, expenses, and costs incurred as a result of its service as Trustee. A Trustee who ceases to serve for any reason will be entitled to receive reasonable security from the assets of the trust to protect it from liability, and may enforce these provisions for indemnification against the current Trustee or against any assets held in the Trust, or if the former Trustee is an individual, against any beneficiary to the extent of distributions received by that beneficiary. This indemnification right extends to the estate, personal representatives, legal successors and assigns of a Trustee.

4. I recognize that if a beneficiary sues the Trustee for breach of fiduciary duty, the Trustee may have a conflict of interest that ordinarily would prevent it from paying legal fees and costs from the trust estate to defend itself. I do not want to put a financial burden on anyone named to serve as a Trustee as provided in this clause. Just as important, I do not want a person who has been selected to serve as a Trustee to be reluctant to accept the position, or while serving to be intimidated in the performance of the Trustee's duties because of the threats of lawsuits that might force the Trustee to pay fees and costs from the Trustee's personal resources. For this reason, I deliberately and intentionally waive any such conflict of interest so that the Trustee can hire counsel to defend itself if it is sued for any reason (whether by a beneficiary or by someone else) and pay all fees and costs for its defense from the trust estate while the suit is pending. I understand and agree that the court may award, disallow or allocate fees and costs in whole or in part upon conclusion of the lawsuit, as provided by law. The Trustee will account for all such fees and costs paid by it as provided by law.

5. Exoneration of Trustee and Others. In addition to any and all other provisions contained in this agreement, the trustee, any person performing an administrative

24

function with respect to any trust created under this agreement and the trusts created under this agreement shall be subject to the following provisions:

    a.  No person dealing with the trustee shall be required to inquire into the validity, expediency or propriety of any transaction entered into by the trustee or to see to the use or application of any property delivered to the trustee, and the written receipt of the trustee shall constitute a full discharge and release of such person.

    b.  The written receipt of any person to whom income or principal is paid in accordance with the provisions of this agreement or the trustee's canceled check or other evidence of the payment or application of any amount by the trustee to or for the benefit of any beneficiary shall be a full discharge to the trustee for any amount so paid or applied and from further accountability therefor, and the trustee shall not be required to see to the use or application thereof by any recipient.

    c.  No person performing an administrative function with respect to any trust created under this agreement shall be deemed to be acting in a fiduciary capacity unless such person is also acting as a trustee or unless the instrument authorizing such person to act expressly states that such person is to act in a fiduciary capacity.

    d.  No person serving as trustee or performing an administrative function with respect to any trust created under this agreement, whether by reason of a delegation by the trustee or an express direction provided in this agreement, shall be liable for any loss to or depreciation of the assets of any trust created under this agreement provided such trustee or other person acted in good faith; and in no event shall any trustee be liable for any error in judgment, or any act or omission, except for his gross or willful negligence, willful misconduct or lack of good faith. The settler recognizes that, by reason of provisions of this agreement, the nature of the trust estate and the applicable tax and other laws, the trustee and such other persons may be charged with complex administrative responsibilities. The settler has conferred broad discretionary powers on the trustee and such persons with which to discharge those responsibilities because the settler believes that the unrestricted exercise of such discretion, free from the threat of having the account surcharged for losses or depreciation will, upon the whole, operate for the best interests of the trust estate and the trusts under this agreement.

    e.  No successor trustee shall be required to investigate or audit the accounts or acts of any prior trustee or to take any action with respect thereto before qualifying or acting.

    f.  Any determination, allocation or exercise or non-exercise of any tax election, by the settlor's personal representative or by the trustee shall be conclusive and binding on all persons having or claiming any interest in the settlor's estate or any trust under this agreement.

**NINTH:** <u>Governing Law</u>. The law of Florida shall govern the validity and interpretation of the provisions of this Third Restated Declaration.

<u>Headings.</u> The headings in this Third Restated Declaration are for convenience of reference only and shall not be considered in the interpretation of this Third Restated Declaration.

**TENTH:** <u>Additions.</u> I or any other person may transfer or devise property acceptable to the trustee, or make the proceeds under policies of life insurance payable, to the trustee to be held under this Third Restated Declaration and may designate the trust to which the property or proceeds shall be added. If the addition is made by will, the trustee shall accept the statement of the personal representative that the assets delivered to the trustee constitute all of the property to which the trustee is entitled, without inquiring into the representative's administration or accounting.

**ELEVENTH:** <u>Right to Revoke.</u> I may at any time or times amend or revoke this Third Restated Declaration in whole or in part by instrument in writing (other than a will) delivered to the trustee. The trust property to which any revocation relates shall be conveyed to me or otherwise as I direct. This power is personal to me and may not be exercised by my guardian, attorney in fact or others.

IN WITNESS WHEREOF I, **VIOLA BROWN**, have executed this Third Restated Declaration of Trust this ___3___ day of __FEBRUARY__ 2009.

_____
**VIOLA BROWN**

We certify that the above instrument was on the date thereof signed, sealed and declared by **VIOLA BROWN** as her Third Restated Declaration of Trust in our presence and

that we, in her presence and in the presence of each other, have signed our names as witnesses thereto, believing her to be of sound mind at the time of signing.

_Judeen L Cough_     Residing at _JUPITER_ , Florida

_John Blackwell_     Residing at _Jupiter_ , Florida

STATE OF FLORIDA
COUNTY OF PALM BEACH

    I HEREBY CERTIFY that on this day before me, an officer duly qualified to take acknowledgments and administer oaths, personally appeared **VIOLA BROWN** personally known to me to be the person described therein ~~or who has produced her~~

_____ ~~as identification~~ and executed the foregoing instrument and she acknowledged before me that she executed the same and ~~did/~~did not take an oath.

    WITNESS my hand and official seal in the County and State last aforesaid this 3 day of _Feb_ , 2009.

_Lee B Sayler_

LEE B. SAYLER
Notary Public
My Commission Expires:

Lee B. Sayler
Commission # DD477233
Expires November 7, 2009
Bonded Troy Fain Insurance, Inc. 800-585-7019

27

**SCHEDULE OF ASSETS**

**OF THE**

**THIRD RESTATED DECLARATION OF TRUST OF**

**VIOLA BROWN**

1. An undivided one-half interest as a tenant in common in the following described land, situate, lying and being in Palm Beach County, Florida, to-wit:

   Lot 19, JUPITER INLET BEACH COLONY, according to the Plat thereof recorded in Plat Book 24, Page 139, Public Records of Palm Beach County, Florida.

   PARCEL IDENTIFICATION NUMBER: 32 43 40 31 01 000 0190

2.

3.

4.

5.

6.

7.

8.

9.

10.