JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
  for Dispute Resolution
CHRISTOPHER H. LAROSA
Associate General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
E-Mail: jwang@sipc.org
kbell@sipc.org
clarosa@sipc.org

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor | SIPA LIQUIDATION<br><br>Case No. 08-01789 (BRL)<br><br>(Substantively Consolidated)<br><br>Appeal No. _____ |

## RESPONSE OF THE
## SECURITIES INVESTOR PROTECTION CORPORATION IN OPPOSITION TO
## MOTION BY DIANE AND ROGER PESKIN AND MAUREEN EBEL
## <u>FOR LEAVE TO APPEAL</u>

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................1

COUNTERSTATEMENT OF THE ISSUE...........................................................1

STATEMENT OF FACTS ......................................................................................2

    The Peskins and Ms. Ebel...............................................................................2

    The Functions of Trustee and Counsel ..........................................................3

    The Applications for Compensation ...............................................................4

    The Objections of the Peskins and Ms. Ebel .................................................5

ARGUMENT ..........................................................................................................8

    THE MOVANTS HAVE SHOWN NO GROUNDS
    FOR AN IMMEDIATE APPEAL...................................................................9

        1.  Applicable Law........................................................................9

        2.  The Prerequisites for an Immediate Appeal Are Not Met .........12

            A.  Movants Have Failed to Identify a "Controlling Question
              of Law"  As to Which There Is A "Substantial Ground
              For Difference of Opinion"................................................13

            B. Granting Movants Leave To Appeal Would Not Materially
             Advance The Termination Of Any Litigation Connected With
             the BMLIS Liquidation........................................................18

CONCLUSION   ................................................................................................19

i

## TABLE OF AUTHORITIES

**CASES:**                                                                                                           **PAGE**

In re Adorn Glass & Venetian Blind Corp.,
    2005 WL 3481325 (S.D.N.Y. 2005)............................................................................12

In re Arochem Corp., 176 F.3d 610 (2d Cir. 1999) ...............................................................10-11

In re Bernard L. Madoff Investment Securities LLC,
    413 B. R. 137 (Bankr. S.D.N.Y. 2009)..........................................................................6, 7

In re Calpine Corp., 356 B.R. 585 (S.D.N.Y. 2007)............................................................. 10, 11

In re Cross Media Marketing Corp., 2007
    WL 2743577 (S.D.N.Y. 2007).................................................................................. 11, 14

In re Enron Corp., 2006 WL 2548592 (S.D.N.Y. 2006)......................................................... 11, 12

In re Executive Securities Corp., 702 F.2d 406 (2d Cir.),
 cert. den., 464 U. S. 818 (1983) .........................................................................................16

In re Flor, 79 F.3d 281 (2d Cir. 1996) .................................................................................. 11, 12

Freeman v. NBC, Inc., 1993 WL 524858 (S.D.N.Y. 1993) .....................................................12

In re Gault, 387 U.S. 1 (1967) ..............................................................................................17

In re Kassover, 343 F.3d 91 (2d Cir. 2003) ...........................................................................10

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave,
    921 F.2d  21 (2d Cir. 1990).............................................................................................11

Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863 (2d Cir. 1996) ...........................................12

In re Perry H. Koplik & Sons, Inc., 377 B.R. 69 (S.D.N.Y.  2007)...................................... 11, 12

In re Marketxt Holdings Corp., 2009 WL 1286130 (S.D.N.Y. 2009)  ....................................11

SEC v. Albert & Maguire Sec. Co., Inc.,
    378 F.Supp. 906 (E.D. Pa. 1974) .....................................................................................18

SEC v. Oxford Sec., Ltd., 486 F.2d 1396 (2d Cir. 1973) .......................................................17

Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.,
    358 F.Supp.2d 347 (S.D.N.Y. 2005)...............................................................................12

## TABLE OF AUTHORITIES

**CASES (cont.):**                                                                 **PAGE**

In re Worldcom, Inc., 2009 WL 2215296 (S.D.N.Y. 2009) .................................................. 10, 11

In re Worldcom, Inc., 2006 WL 3592954 (S.D.N.Y. 2006) ....................................................11

## STATUTES AND RULES:

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(b)(2)(B)(i) .........................................................................................................6
78eee(b)(4) ..................................................................................................................3
78eee(b)(5)(C) ...................................................................................................... 1, 17
78eee(d) .......................................................................................................................1
78fff-3(a) .....................................................................................................................2
78lll(4) .........................................................................................................................2

Rules of the Securities Investor Protection Corporation, 17 C.F.R. §300.

100   ..............................................................................................................................8

Federal Rules of Bankruptcy Procedure

8001(b) ......................................................................................................................10
8003 ...........................................................................................................................10

28 U.S.C. §

158(a) ........................................................................................................................10
158(a)(3) ....................................................................................................................10
158(d)(2) ......................................................................................................................6
1292(b) .......................................................................................................................10

## PUBLICATIONS AND TREATIES:

10 Collier on Bankruptcy (15th rev. ed. 2009)
      ¶ 8003.03...........................................................................................................10

iii

## PRELIMINARY STATEMENT

The Securities Investor Protection Corporation ("SIPC") submits this response in opposition to the motion of Diane and Roger Peskin ("Peskins") and Maureen Ebel ("Ms. Ebel") (together with the Peskins, "Movants") for leave to appeal from a Bankruptcy Court Order entered on May 6, 2010 ("Motion") awarding trustee and counsel compensation in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA").[1]

## COUNTERSTATEMENT OF THE ISSUE

Under SIPA §78eee(b)(5)(C), SIPC must file a recommendation with respect to any application for allowance of compensation in a SIPA liquidation proceeding.  SIPA §78eee(b)(5)(C) also provides that in any case in which the allowances are to be paid by SIPC without reasonable expectation of recoupment and the amounts sought and recommended for payment are the same, the "court shall award the amounts recommended by SIPC."  In the BLMIS liquidation proceeding, the trustee and counsel filed their third applications for interim compensation and reimbursement of expenses, and SIPC recommended that their applications be allowed.  The fees and costs would be paid out of funds provided by SIPC with no expectation of recoupment.  The Bankruptcy Court granted the applications and in doing so, overruled an objection filed by the Movants.  Movants filed a Notice of Appeal from the interlocutory Order and a request for leave to appeal, arguing that compensation should be denied because the Trustee allegedly had acted in bad faith in deciding claims that Movants had

---

[1]  For convenience, references hereinafter to provisions of SIPA shall omit "15 U.S.C."

Under SIPA §78eee(d), SIPC is "a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters...."

filed in the liquidation proceeding. Against this background, the issue presented is:

> Where
>
>> (1) the Order of the lower Court is firmly grounded in the law;
>> (2) the questions raised by Movants in seeking immediate review of the Order are of fact and not law;
>> (3) Movants have an alternate process previously established by the Bankruptcy Court in which to pursue their objections but they refuse to do so; and
>> (4) instead of materially advancing the termination of any litigation, granting Movants' motion will disrupt the administration of a liquidation proceeding and contravene the clear mandate of a statute,
>
> whether Movants have met their burden of showing exceptional circumstances warranting an immediate appeal of the lower Court's Order.
>
> SIPC respectfully submits that the answer is "no."

## STATEMENT OF FACTS

### The Peskins and Ms. Ebel

The Peskins and Ms. Ebel are former customers of BLMIS who filed claims in the liquidation proceeding of BLMIS. The Trustee for the liquidation of the firm, Irving H. Picard, Esquire, allowed the two claims of Ms. Ebel for an aggregate total of $3,639,264.61, and the claim of the Peskins for $2,310,191.25.[2] In partial satisfaction of their claims, with funds advanced by SIPC, the Trustee paid a total of $1 million to Ms. Ebel on her two claims, and $500,000 to the Peskins. The remainder of their claims will be satisfied out of any customer

---

[2] The claims of customers are satisfied with customer property which generally is cash and securities received, acquired or held by the broker or dealer for the accounts of customers. SIPA §78lll(4). To the extent customer property is insufficient, SIPC advances funds for the satisfaction of customer claims. SIPA §78fff-3(a). The limit of protection is $500,000 per customer. Id. Ms. Ebel had two accounts at BLMIS – an individual and a trust account – held in different capacities. The Peskins had one account although they claim, as discussed infra, that they are entitled to an extra $500,000 of SIPC protection.

2

property that the Trustee collects.

## The Functions of Trustee and Counsel

BLMIS was placed in SIPA liquidation, and Irving H. Picard, Esquire, the Trustee, and his counsel, the law firm of Baker & Hostetler LLP ("Counsel"), were appointed by Order of this District Court issued on December 15, 2008.[3]   By the Order and pursuant to SIPA section 78eee(b)(4), the Court removed the proceeding to the Bankruptcy Court for this District ("Bankruptcy Court").

Since the date of their appointment, the Trustee and Counsel have taken numerous actions in connection with the BLMIS liquidation, including, e.g., taking possession of the Debtor and its assets; auctioning off the Debtor's market making business; collecting over $1.5 billion of assets; filing multiple avoidance actions seeking to recover more than $14 billion from feeder funds and related parties; engaging several foreign law firms to aid and represent the Trustee in overseas asset recovery efforts and investigations.   In addition, since the commencement of the proceeding, the Trustee and Counsel, as required by SIPA, have engaged in an intensive investigation of the activities of the Debtor which, among other things, has required close coordination and cooperation with SIPC and a number of regulatory and law enforcement authorities, as well as with the joint liquidators for BLMIS's British operations.[4]

Finally, a significant part of the Trustee's and Counsel's activity has centered on claims.   In this regard, the Trustee obtained, though Counsel, an Order ("Claims Procedures Order")  from

---

[3]    See Securities and Exchange Commission and Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Dkt. No. 1:08-cv-10791-LLS (S.D.N.Y.), Dkt. No. 4 ("12/15/08 District Court Order").

[4]    More detailed information concerning the Trustee's activities are contained in his Interim Reports filed in the liquidation proceeding (Dkt. Nos. 314, 1011, and 2207).

3

the Bankruptcy Court which authorized the Trustee, consistent with SIPA, to notify customers and creditors, by publication and mailing, of the commencement of the liquidation proceeding and to mail them claim forms. (Dkt. No. 12). Through the Order, the Bankruptcy Court also established a procedure for the filing and determination of claims, and for judicial review of claim determinations. Under SIPA and the Claims Procedures Order, claims are filed with the Trustee, who reviews and determines them. If a claimant disagrees with the Trustee's decision, he may seek review by the Bankruptcy Court by filing an objection. Once an objection is filed, the Trustee requests a hearing and notifies the claimant of the date and time thereof.

In BLMIS, 16,312 "customer" claims were filed with the Trustee, and through January 31, 2010, the last day of the period covered by the fee applications, the Trustee had determined 11,861 of them and committed to paying roughly $629 million in SIPC advances. The value of the allowed claims exceeded $4.55 billion.[5]

**The Applications for Compensation**

On July 10, 2009, the Trustee and Counsel filed in the liquidation proceeding, their first applications for allowance of interim compensation and reimbursement of expenses for the period from December 15, 2008 through April 30, 2009. Movants objected to the applications on essentially the same grounds underlying their current motion. SIPC submitted its recommendation in support of the applications. Following a hearing on the applications on August 6, 2009, the Bankruptcy Court rejected Movants' objections and granted the applications, entering the interim awards sought by the Trustee and Counsel. Movants then sought leave to appeal those awards on an interlocutory basis. This District Court denied that

---

[5]    See Third Application of Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses

motion in an order entered on January 15, 2010 (Dkt. No. 1764).

On November 23, 2009, the Trustee and Counsel filed their second applications for compensation in the liquidation proceeding, seeking the allowance of interim compensation and the reimbursement of expenses for the period from May 1, 2009 through and including September 30, 2009.   Again, Movants objected to the applications on the same grounds underlying their current motion; SIPC supported the applications; and, again, following a hearing on December 17, 2009, the Bankruptcy Court rejected Movants' objections and granted the applications.  Movants again filed a motion for leave to appeal on an interlocutory basis the order entering those awards.  That motion remains pending before this Court.

On April 9, 2010, the Trustee and Counsel filed their third applications for compensation in the liquidation proceeding, seeking the allowance of interim compensation and reimbursement of expenses for the period from October 1, 2009 through and including January 31, 2010.  Predictably, Movants objected to the applications on the same grounds underlying their current motion.  SIPC filed a recommendation in support.  During a hearing on May 5, 2010, the Bankruptcy Court rejected Movants' objections, and, the following day, entered an order granting the applications.  Movants now seek leave to take an interlocutory appeal of that order.

**The Objections of the Peskins and Ms. Ebel**

The hearing on the fee applications was held on notice, prior to which Movants filed objections to the applications.  In the liquidation proceeding, before filing the current objection, Movants had 1) objected to the Trustee's determination of their claims for "customer" relief in the liquidation proceeding and sought review thereof by the Bankruptcy Court; 2) as previously

───────────────────

Incurred From October 1, 2009 Through January 31, 2010 (Dkt. No. 2189), at pp. 4-5

mentioned, had objected to, and sought leave to appeal the Bankruptcy Court's Orders granting

the first and second applications of the Trustee and Counsel for interim compensation; and 3)

had sued the Trustee in Bankruptcy Court.[6]    Through each of these procedural vehicles,

Movants challenge the correctness of the methodology used by the Trustee in deciding their

"customer" claims.   The Trustee is allowing such claims for the net amount deposited by the

customer with the brokerage (that is, the customer's "net equity" under SIPA).    Movants

contend that the Trustee should instead allow such claims on the basis of wholly fictitious cash

and securities positions reported to them on the final fictitious account statements provided to

them by BLMIS ("Fictitious Statement Approach").

The Trustee's claims determination methodology was upheld by the Bankruptcy Court in a

decision issued on March 1, 2010, and an Order issued on March 8, 2010 (Dkt. Nos. 1999 and

2020) ("Bankruptcy Court Net Equity Decision and Order").   The Bankruptcy Court has

certified its Order for an immediate appeal to the United States Court of Appeals for the Second

Circuit under 28 U.S.C. §158(d)(2) (Dkt. No. 2022).

One constant in all of the aforementioned litigation matters has been the presence of lead

counsel for the Movants, Attorney Helen Davis Chaitman.   At the start of the BLMIS

liquidation proceeding, Ms. Chaitman represented the Movants as an attorney with the law firm

---

[6]    See Diane and Roger Peskin and Maureen Ebel v. Irving H. Picard, Trustee, Adv. Pro.
No. 09-1272(BRL) (Bankr. SDNY) ("Declaratory Judgment Action").   The lawsuit was brought
in violation of the stay of such suits against the Trustee under SIPA and this Court's Order
placing BLMIS in liquidation.   See SIPA §78eee(b)(2)(B)(i) and the December 15, 2009, Order
of this District Court at 3, ¶V.   The suit was dismissed by the Bankruptcy Court.   In re Bernard
L. Madoff Investment Securities LLC, 413 B. R. 137, 140 (Bankr. S.D.N.Y. 2009).   Plaintiffs'
Counsel filed an appeal to the District Court for the Southern District of New York, and that
appeal remains pending.   Diane Peskin v. Irving H. Picard, Trustee, No. 09-CV-8730 (JGK)
(S.D.N.Y.).

of Phillips Nizer LLP.   Ms. Chaitman, now with the law firm of Becker & Poliakoff LLP

("Becker"), is counsel for the Movants with respect to the instant Motion.   Becker, with Ms.

Chaitman as lead counsel, also represents three named plaintiffs seeking to act on behalf of a

purported class in a suit filed in federal district court in New Jersey.   Canavan v. Harbeck, Civil

No. 2:10-cv-00954-FSH-PS (D.N.J.) ("New Jersey Action").   Although nominally against past

and present SIPC officials for alleged bad faith, the suit in fact challenges the correctness of the

Trustee's claims determination methodology in the BLMIS liquidation proceeding.   The suit is a

frivolous attempt at forum shopping in the hope of securing a decision by a Federal District

Court in New Jersey that is contrary to the Net Equity Decision and Order entered by the

Bankruptcy Court in New York.   Finally, it is noteworthy that in addition to pursuing a claim in

the BLMIS liquidation proceeding in which she herself has a personal stake, Ms. Chaitman

represents investors in that proceeding with wholly irreconcilable financial interests in the

position she espouses.   See In re Bernard L. Madoff Investment Securities LLC, 413 B.R. 137,

140, n.3 (Bankr. S.D.N.Y. 2009).   To a mathematical certainty, some of Ms. Chaitman's clients

will receive less money, while other of her clients will receive more money, if she prevails in

her  Fictitious Statement Approach in the BLMIS liquidation proceeding.[7]

---

[7]   Ms. Chaitman and her firm represent two kinds of BLMIS investors: 1) those who
have yet to recover the amounts they deposited with BLMIS (in terminology used in the BLMIS
case, "Net Losers"); and 2) investors who withdrew more than they deposited and received fake
profits that actually consisted of other investors' money ("Net Winners").   If the Fictitious
Statement Approach is followed, then Net Winners, who would otherwise be owed nothing
(having recovered all of their money from BLMIS while the firm was in business), would have
a claim for any fake profits shown on their last account statements.   In the liquidation
proceeding, they would share with Net Losers, pro rata, in customer property collected by the
Trustee.   Thus, even though the firm is in liquidation, Net Winners would continue to be paid
fake profits at the expense of Net Losers who have yet to be repaid the amounts they gave to
BLMIS.   If the Trustee's claims determination methodology is followed, then only Net Losers
would be repaid to the extent of any amounts they gave to BLMIS.

## ARGUMENT

The current motion by the Movants is troublesome for many reasons, not the least of which is the lack of clarity as to whose interests Ms. Chaitman represents. Although the Movants profess concern over whether there will be enough SIPC money to satisfy their claims, in fact, they already have received the maximum SIPC advances to which they are entitled. Ms. Ebel has received $1 million in the aggregate of SIPC funds for her two allowed claims ($500,000 for each account). The Peskins likewise have received the maximum protection of $500,000. Although the Peskins revised their claim to include a demand for an additional $500,000, it is plain that they are entitled to only one $500,000 of protection under the SIPC Series 100 Rules, 17 C.F.R. §300.100 et seq., because they had only one account at BLMIS.

Ms. Chaitman also purports to submit the motion at hand on behalf of a "large group" of other claimants that she represents, but has failed to demonstrate that such claimants are entitled to have their claims satisfied with monies advanced by SIPC or, even if they are, that SIPC will be unable to make those advances. In fact, Movants' baseless assertions notwithstanding, SIPC is solvent and able to meet its statutory obligations.

As the availability of SIPC funds for Movants is not problematic, perhaps their real concern is the amount of customer property that Movants will receive from the Trustee. That too is troublesome. The Trustee's allowance of claims, based upon the net amounts deposited, returns real dollars owed to customers and not fictitious profits invented by Bernard Madoff. The fact that the claims may be smaller because they are based on real dollars and not fictitious profits means a larger distribution per dollar per claimant from a limited pool of customer property. In contrast, allowing the claims of investors based upon the Fictitious Statement Approach grossly inflates the value of claims against the limited amount of customer property

8

and results in a smaller distribution per claimant. Thus, investors such as the Peskins and Ms. Ebel actually realize more under the Trustee's claims determination methodology than under the Fictitious Statement Approach.

In light of the foregoing, the fact that Movants' counsel seeks to advance the Fictitious Statement Approach by means of investors like the Peskins and Ms. Ebel who are benefitted by the Trustee's methodology and harmed by the Fictitious Statement Approach is perplexing. What remains unclear is precisely whose interest Ms. Chaitman represents.

At any rate, unwilling to await the outcome of the judicial claims review process, Movants instead again seek judicial review of the claims methodology issue through a different means – again at the District Court level. In seeking an immediate review, they contend that the Trustee is conflicted and should not be paid because he has not allowed net equity claims according to the methodology they favor. Thus, once again, instead of following the established procedures for obtaining judicial review of their claim determinations, Movants attempt to sidestep the claims process, skip ahead of other claimants in line, and seek court review of the Trustee's determination of claims under the pretext of objecting to the Trustee's and Counsel's compensation. Movants' accusations of nefarious activity by the Trustee, Counsel and SIPC to delay the satisfaction of claims and wrongfully to determine their claims in order to protect SIPC and avoid the "indisputable" fact that "SIPC is insolvent and unable to pay its debts as they become due" are unfounded, unsupported, irrelevant, and offensive. As importantly for purposes of the Motion, for the reasons detailed below, Movants fail to satisfy any of the criteria necessary for an immediate appeal.

## THE MOVANTS HAVE SHOWN
## NO GROUNDS FOR AN IMMEDIATE APPEAL

**1.    Applicable Law**

9

The immediate appealability of an interlocutory Bankruptcy Court Order is governed by 28 U.S.C. § 158(a)(3), which provides that an immediate appeal may be taken only with leave of the federal District Court for the district in which the Bankruptcy Court that issued the Order sits.[8]  Because neither Section 158(a) nor the Bankruptcy Code or Rules provide standards for evaluating a motion for leave to appeal, the decision whether to grant leave is committed to the discretion of the District Court.  See, e.g., In re Kassover, 343 F.3d 91 (2d Cir. 2003); In re Worldcom, Inc., 2009 WL 2215296 * 3 (S.D.N.Y. 2009).  In exercising this discretion, most District Courts, including this Court, apply the standards applicable under 28 U.S.C. §1292(b) governing appeals from interlocutory appeals from orders entered by the federal District Courts.[9]  See, e.g., Worldcom, 2009 WL 2215296 at * 3; In re Calpine Corp., 356 B.R. 585, 592-93 (S.D.N.Y. 2007).  See also 10 Collier on Bankruptcy ¶ 8003.03 (15th rev. ed. 2009).

Under these standards, the party seeking leave to take an interlocutory appeal has the burden to demonstrate exceptional circumstances sufficient to "overcome the general aversion to piecemeal appeals" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  In re AroChem Corp., 176 F.3d 610, 619 (2d

---

[8]    The procedure for seeking leave to appeal is set forth in Bankruptcy Rules 8001(b) and 8003.  See Fed. R. Bankr. P. 8001(b) and 8003.

[9]  Section 1292(b) states, in pertinent part, that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b).

Cir. 1999); In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); In re Perry H. Koplik & Sons, Inc., 377

B.R. 69, 73-74 (S.D.N.Y. 2007). Interlocutory appeal is limited to extraordinary cases where

appellate review might avoid protracted and expensive litigation and is not intended as a general

vehicle to provide early review. See, e.g., In re Enron Corp., 2006 WL 2548592 * 3 (S.D.N.Y.

2006). In this regard, the Second Circuit has stressed that the power to grant interlocutory

review should not be "liberally construed." Klinghoffer v. S.N.C. Achille Lauro Ed Altri-

Gestione Motonave, 921 F.2d 21, 24-25 (2d Cir. 1990); In re Worldcom, Inc., 2006 WL

3592954 * 2 (S.D.N.Y. 2006).

Consistent with these limitations, interlocutory appeal is permitted only where the order

appealed (1) involves a controlling question of law, (2) over which there is a substantial ground

for difference of opinion, and where (3) an immediate appeal would materially advance the

ultimate termination of the litigation. See, e.g., Worldcom, 2009 WL 2215296 at * 3; Koplik,

377 B.R. at 73; Calpine, 356 B.R. at 593. In regard to the first prong of this test, the

"controlling question of law" must first and foremost be just that - a question of law. See, e.g.,

Koplik, 377 B.R. at 73-74; Enron, 2006 WL 2548592 at * 4. It cannot involve a question of

fact, or even a question requiring the application of the appropriate law to the relevant facts.

See In re Marketxt Holdings Corp., 2009 WL 1286130 * 1 (S.D.N.Y. 2009) ("[W]here, as here,

the question presented entails application of a well-accepted legal standard to complex factual

predicates, no such controlling issue of law exists"); Koplik, 377 B.R. at 73-74; In re Cross

Media Marketing Corp., 2007 WL 2743577 * 2 (S.D.N.Y. 2007); Enron, 2006 WL 2548592 at

* 4. Rather, it must be a "pure question of law that the reviewing court could decide quickly

and cleanly without having to study the record," e.g., a question concerning the applicable legal

standard. Koplik, 377 B.R. at 74 (emphasis added, citation and quotation marks omitted);

11

Enron, 2006 WL 2548592 at * 4; Freeman v. NBC, Inc., 1993 WL 524858 * 2 (S.D.N.Y. 1993).

The second prong of the test is equally stringent.  A "substantial ground for a difference of opinion" concerning the propriety of the Bankruptcy Court's resolution of a question exists only if there is "substantial doubt" that the Court's Order was correct.  See, e.g., Enron, 2006 WL 2548592 at *4; In re Adorn Glass & Venetian Blind Corp., 2005 WL 3481325 * 5 (S.D.N.Y. 2005).  The fact that the issue is one of first impression in the Second Circuit, that there is conflicting case law outside the circuit, or that there is strong disagreement among the parties is not, in and of itself, sufficient to create "substantial doubt."  See, e.g., Enron, 2006 WL 2548592 at *4; Adorn Glass, 2005 WL 3481325  at * 5.  To ascertain whether such doubt exists, the reviewing court must examine the strength of the opposition to the challenged ruling and determine whether those arguments create truly substantial doubt as to the propriety of that ruling.  See, e.g., Flor, 79 F.3d at 284; Enron, 2006 WL 2548592 at *4.

As for the third prong of the test, an immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time required for trial or to shorten the time required for trial."  See, e.g., Koplik, 377 B.R. at 74; Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth., 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005).  See also, Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996) (interlocutory appeal is "reserved for those cases where an immediate appeal may avoid protracted litigation").

## 2.  The Prerequisites for An Immediate Appeal Are Not Met

For the reasons stated below,  Movants  have failed to satisfy any of the prerequisites for leave to take an interlocutory appeal of the Bankruptcy Court's order granting the fee applications of the Trustee and Counsel.  The purported "questions" that they identify are hardly

12

"controlling questions of law," and, in fact, are not questions of law at all. All of the alleged "questions" require acceptance of an assumed, but disputed, factual predicate - principally that the Trustee somehow grievously violated his duty to Movants by disagreeing with their position concerning the proper construction of the term "net equity" in SIPA[10] - and extensive study of the record, as Movants' abundance of record citations indicates. Moreover, not only is there no "substantial ground for difference of opinion" concerning whether the Bankruptcy Court resolved these "questions" correctly, there is no doubt that it did so. Finally, granting the Movants leave to appeal would not advance the ultimate termination of any litigation in the BLMIS liquidation. Instead, it would reward Movants and their counsel for attempting to use the wrong procedural vehicle - the Trustee's and Counsel's fee applications - to litigate the substance of their customer claims, and, by diverting the Trustee's attention and resources from those claims, would force the Trustee to incur additional unnecessary fees and costs and would delay the process Movants allegedly hope to expedite.

A. **Movants Have Failed To Identify A "Controlling Question of Law" As To Which There Is A "Substantial Ground For Difference Of Opinion"**

Movants state that, if granted leave to appeal, they would raise the following issues: (1) whether the Trustee and Counsel may continue to serve in those capacities even though "they are conflicted by their loyalty to SIPC," primarily because they did not resolve and pay customer claims according to the "net equity" calculus advocated by Movants' counsel; (2) whether the Bankruptcy Court was required to approve the fee applications of the Trustee and

---

[10]    As noted above, in the course of making these allegations, Movants' lead counsel neglects to mention that some of her clients would actually recover more under the Trustee's construction of "net equity" than they would under the construction she advocates. She also neglects to mention that she herself is also a member of an entity that is a claimant in the BLMIS liquidation, and that her interests as such may well conflict with those of her clients.

Counsel upon SIPC's recommendation when SIPC and the Trustee "ignored their fundamental obligation" to resolve and pay customer claims according to the same calculus; (3) whether "the Customers," presumably including the Movants, were denied Fifth Amendment due process because the Trustee has declined to apply the Objectors' counsel's proposed "net equity" calculus; and (4) whether the portion of the contested fee awards based upon the "subpoenaing Customers' financial records" should be denied. Movants' Mem. at 14-17.[11]

None of these "issues" is a question of law. On the contrary, each of them requires uncritical acceptance of the Movants' persistent, but wholly erroneous and unsupported, <u>factual</u> assertions that the Trustee and Counsel acted in bad faith and maliciously applied an incorrect "net equity" standard, to the detriment of Movants and others. Obviously, neither SIPC nor the Trustee and Counsel agree with Movants' assertions, and both vigorously disputed in the Bankruptcy Court the accuracy of the assertions and their relevance to the Trustee's and Counsel's fee applications. Thus, the "issues" identified by Movants - to the extent that they are cognizable issues at all - are *factual*, not legal. They clearly are not issues that this Court "could decide quickly and cleanly without having to study the record" and, as such, are not eligible for interlocutory review. <u>See</u>, <u>e.g.</u>, <u>Cross Media Marketing</u>, 2007 WL 2743577 at * 2.

Moreover, not only are there no "substantial grounds for difference of opinion" concerning the Bankruptcy Court's resolution of the "issues" raised by Movants, there is no doubt that the Bankruptcy Court was right and that Movants are not. Movants' assertion that the Trustee and Counsel are disqualified from serving in their roles because they are "conflicted by their loyalty to SIPC" is based largely on the fact that the Trustee and Counsel have decided not to apply the "net equity" calculus proposed by Movants, or at least their counsel - a decision that benefits

---

[11] Memorandum of Law In Support of Motion for Leave to Appeal ("Movants' Mem.")

rather than harms, Movants.

Movants' objection to the Trustee's efforts to enjoin the plaintiffs in the New Jersey Action ("New Jersey Plaintiffs"), whom Movants' counsel also represents, from pursuing that suit is yet another disguised objection to the propriety of the Trustee's claims methodology. Throughout their Complaint in the New Jersey Action, the New Jersey Plaintiffs challenge the Trustee's Claims Determination Methodology, and identify it as the basis for the alleged fraud and other claims they assert in the action.  (See, e.g., New Jersey Action, Complaint ¶¶ 15, 16, Dkt. No. 1.)  The following passage from the Complaint is illustrative:

> SIPC's Net Investment Policy was adopted by the Directors in bad faith and in direct contravention of their statutory duty, with the sole intention of saving SIPC billions of dollars by disqualifying thousands of Customers from receiving SIPC insurance.  The Policy is in direct contravention of SIPA, its legislative history, SIPC's regulations, and SIPC's representations to investors and to the courts over the 38 years of its existence prior to the formulation of the Net Investment Policy.

> By virtue of SIPC's Net Investment Policy, the defendants have perpetrated a fraud upon the Customers and are personally liable, jointly and severally, for the damages that SIPC's Net Investment Policy has caused to Customers in the full amount of their lost investments.

Id.

Because the New Jersey Plaintiffs seek a ruling in the New Jersey Action, to which the Trustee is not a party, in a forum other than the Bankruptcy Court, on an issue at the core of the BLMIS liquidation, whose ultimate resolution will affect the disposition of literally billions of dollars in customer and estate property, the Trustee sought an order in the Bankruptcy Court finding that the Plaintiffs are in violation of the automatic stay and enjoining the New Jersey Plaintiffs from proceeding with the New Jersey Action.  (See Picard v. Canavan, Adv. Proc. No. 10-3200 (BRL) (Bankr. S.D.N.Y.) ("Injunction Action), Dkt. Nos. 1, 2.)  Movants now contend that the Trustee's motivation in bringing the Injunction Action was not to halt an action with a

15

potentially enormous impact on the BLMIS estate from proceeding in the wrong forum and without his participation, but rather because he is serving the interests of the defendants in the New Jersey Action and is therefore conflicted.

Of course, Movants' argument is another of their conspiracy theories, and is completely without foundation. Most importantly, to the extent Movants' argument creates any issue at all, that issue - the nature of the Trustee's motivation and intent in bringing the Injunction Action - is intensely *factual*, and therefore utterly inappropriate for interlocutory appeal.

Further, while SIPC and the Trustee and Counsel share common interests[12] - a nexus common to all SIPA liquidations and the express product of statutory design - the Trustee is an independent fiduciary, whose disinterestedness was established conclusively at an uncontested hearing held, on widely published notice to all BLMIS accountholders and others, including Movants, on February 4, 2009, in the liquidation proceeding.[13] Movants are entitled to disagree with the Trustee's construction of "net equity" and to express their disagreement by objecting to his determinations of their claims. They are not entitled to have him removed from his position because they disagree with him, as the Bankruptcy Court implicitly recognized.

For the same reasons, it is equally clear that the Bankruptcy Court was obliged to accede to SIPC's recommendation concerning the fee applications of the Trustee and Counsel. SIPA provides expressly, and without qualification, that a bankruptcy court "shall award the [fee] amounts recommended by SIPC" when those amounts are to be paid by SIPC "without

---

[12]    SIPC and trustees appointed under SIPA "vindicate important public interests." In re Executive Securities Corp., 702 F.2d 406, 410 (2d Cir.), cert. den., 464 U. S. 818 (1983).

[13]    See Order of Disinterestedness of Trustee and Counsel to Trustee, issued in the liquidation proceeding on February 4, 2009 (Dkt. No. 69).

reasonable expectation of recoupment thereof." SIPA § 78eee(b)(5)(C) (emphasis added). That condition was met here, and the Bankruptcy Court properly awarded fees in the amounts recommended by SIPC.

Movants' contention that the Bankruptcy Court was not bound by SIPC's recommendation is again based upon their assertion that the Trustee and Counsel acted in bad faith by refusing to apply their counsel's proposed "net equity" calculus. There are simply no cognizable grounds for this position. The relevant statutory language is clear, unequivocal, and unqualified, as the Bankruptcy Court found in its March 2010 ruling. Moreover, as noted, Movants' assertions of bad faith and conflict are completely unsupported, and based solely on their belief that the Trustee and Counsel must be engaged in misconduct because they disagree with the Movants. Again, Movants can litigate that disagreement by objecting to the Trustee's determinations of their claims under the Claims Procedures Order. It is not relevant, however, to the propriety of the Trustee's and Counsel's fees, as the Bankruptcy Court impliedly found.

Movants' invocation of Fifth Amendment Due Process is an even more blatant attempt to litigate the substance of their customer claims by objecting to the fee applications.[14] The constitutionality of SIPA is well established, both in this Circuit and elsewhere, and the precise constitutional challenge posed by Movants was summarily rejected by the Second Circuit approximately 36 years ago. See, e.g., SEC v. Oxford Sec., Ltd., 486 F.2d 1396 (2d Cir. 1973), reversing, 354 F.Supp. 301 (S.D.N.Y. 1973) (reversing district court finding of

---

[14] Even assuming, arguendo, that Movants had identified a protected property right in connection with their claims, which they have not, there is no deprivation thereof without due process. Due process requires notice and an opportunity to be heard before an impartial tribunal having jurisdiction. See In re Gault, 387 U.S. 1, 19 n. 25 (1967). The Claims Procedures Order required the Trustee to notify Movants of the determination of their claims and of their right to judicial review, which he did.

unconstitutionality).  See also, SEC v. Albert & Maguire Sec. Co., Inc., 378 F.Supp. 906, 911

(E.D. Pa. 1974).  Moreover, Movants did not object to either the appointment of the Trustee and

Counsel, or the disinterestedness of the same, until the Trustee and Counsel disagreed with the

"net equity" calculus they propose.  Movants' Counsel likewise did not object, notwithstanding

that she was given notice of the hearing on disinterestedness.  Movants' constitutional argument

is thus an obvious, and meritless, attempt to have the Trustee and Counsel removed because

they do not like the formula that he is using to resolve claims.  There is no doubt that the

Bankruptcy Court's decision to reject that attempt was entirely proper.

**B.  Granting Movants Leave To Appeal Would Not Materially Advance The Termination Of Any Litigation Connected With the BMLIS Liquidation**

Finally, granting the Movants leave to appeal would not in any way advance the termination

of any litigation connected with the BLMIS liquidation.  On the contrary, it would force the

BLMIS estate to incur additional fees and costs to defend a frivolous action and would require

them to divert yet more time, attention, and resources from claims resolution and satisfaction,

the very things that the Movants claim they want to accelerate.  Worse, reversing the

Bankruptcy Court's Order on the grounds suggested by the Movants, and removing the Trustee

and Counsel, would contravene, with no foundation in law or fact, the express provisions of

SIPA and procedures thereunder, and would throw a highly complex liquidation into chaos,

causing serious delay in claims resolution and satisfaction.  In short, granting the Movants'

motion would impede, not materially advance, the termination of the BLMIS liquidation and

connected litigation, including the Trustee's pursuit of assets for the benefit of all BLMIS

customers, including the Movants.

**CONCLUSION**

For all of the aforementioned reasons, the Motion for Leave to Appeal should be denied.

Respectfully submitted,


  /s/ Josephine Wang
JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 for Dispute Resolution

CHRISTOPHER H. LAROSA
Associate General Counsel

SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile: (202)371-6728
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: clarosa@sipc.org

Date:  June 1, 2010
Washington, D.C.