**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com


IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION | SIPA LIQUIDATION |
| Plaintiff, | Case No.  08-01789 (BRL) |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Appeal No.: _____ |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF LAW OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP IN OPPOSITION TO MOTION OF DIANE AND ROGER PESKIN, MAUREEN EBEL AND CERTAIN OTHER CUSTOMERS FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

I.      Commencement of the Action .............................................................. 4

II.     Orders Regarding Disinterestedness and Interim Compensation of Trustee and Counsel................................................................................................... 5

III.    Movants' Filings Relating to the Trustee and SIPA Liquidation of BLMIS ......... 6

        A.      The Adversary Proceeding.......................................................... 7

        B.      Objection to the First Interim Fee Applications and the First Interim Fee Hearing ............................................................... 8

        C.      Objection to the Second Interim Fee Applications and the Second Interim Fee Hearing ............................................................... 10

        D.      Objection to the Third Interim Fee Applications and the Third Interim Fee Hearing ............................................................... 12

        E.      The Instant Motion................................................................. 13

ARGUMENT ................................................................................................................ 14

I.      Movants Lack Standing to Appeal.................................................... 14

II.     Movants Have Not Met the Standard For Leave to Appeal an Interlocutory Order ................................................................................................... 16

        A.      Standards for Leave to Appeal from an Interlocutory Order .................. 16

        B.      The Net Equity Dispute Raised by Movants in Support of Leave to Appeal Was Not Before, Or Determined By, the Bankruptcy Court in Connection with the Third Interim Fee Hearing.................................. 18

        C.      The Remaining "Controlling Issues of Law" Asserted by Movants Fail to Meet the Standard for Leave to Appeal ....................................... 21

CONCLUSION ............................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554 (D. Del. 1996) ........................................... 21

*Evans v. Ottimo*, 469 F.3d 278 (2d Cir. 2006) ................................................ 14

*German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp 1385 (S.D.N.Y. 1995).................... 17

*In re A.R. Baron Co., Inc.*, 226 B.R. 790 (S.D.N.Y. 1998) ........................................ 30

*In re Adelphia Communications Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) .................. 17, 18, 26, 27

*In re Adler Coleman Clearing Corp.*, 211 B.R. 486 (S.D.N.Y. 1997) ........................................ 30

*In re Adler*, 1998 Bankr. LEXIS 1076  (S.D.N.Y. Aug. 25, 1998), *aff'd*, 2000 U.S.
App. LEXIS 14008 (2d Cir. Mar. 13, 2000)................................................................ 24

*In re Drouin*, 1999 Bankr. LEXIS 1878 (Bankr. D.N.H. Nov. 19, 1999) .................................... 22

*In re Flor*, 79 F.3d 281 (2d Cir. 1996)................................................................ 17, 18

*In re IBI Sec. Serv., Inc.*, 174 B.R. 664 (E.D.N.Y. 1994)..................................... 18, 27

*In re Ionosphere Clubs,* Inc., 179 B.R. 24 (S.D.N.Y. 1995)........................................... passim

*In re Johns Manville Corp.*, 340 B.R. 49 (S.D.N.Y. 2006) ........................................ 14

*In re Lehman Bros. Holdings, Inc.*, Case No. M47 (VM), 2009 U.S. Dist. LEXIS
96946 (S.D.N.Y. Oct. 8, 2009) ................................................................ 26

*In re Miguel,* 30 B.R. 893 (Bankr. E.D. Ca 1983) ........................................ 22

*In re O'Brien*, 184 F.3d 140 (2d Cir. 1999)................................................ 14

*In re Pan Am* Corp., 159 B.R. 396 (S.D.N.Y. 1993) ................................ 17

*In re Rea Holding Corp.*, 2. B.R. 733 (S.D.N.Y. 1980) ................................ 25

*In re Victory Markets, Inc.*, 195 B.R. 9 (N.D.N.Y. 1996) .................................... 14, 15

*In re War Eagle Constr. Co., Inc.*, 249 B.R. 686 (S.D. W.Va. 2000) ........................ 21

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 n.2 (2d Cir. 1988) ........................ 14, 15

*Matter of W.T. Grant Co.*, 4 B.R. 53 (Bankr. S.D.N.Y. 1980) .................................... 26

*Morley v. Ciba-Geigy Corp.*, 66 F.3d 21 (2d Cir. 1995) ................................ 14

*North Fork Bank v. Abelson*, 207 B.R. 382 (E.D.N.Y. 1997) .................................... 18

*P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*, 161 F. Supp.2d 355 (D.N.J.
2001) ................................................................ 18

Peskin, et al. v. Picard, No. 09-08730.................................................................. 8

*SEC v. Oxford Secs., Ltd.*, 486 F.2d 1396 (2d Cir. 1973)..................................... 20, 26

*Securities Investor Protection Corp. v. Saxon Secs. Corp.*, No. 75 Civ. 377
(RJW), 1975 U.S. Dist. LEXIS 14757 (S.D.N.Y. 1975) ........................................ 30

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273
(S.D.N.Y. 1999)................................................................ 30

*United States v. Madoff*, No. 08 CV 2735 .................................................................. 4

## STATUTES

15 U.S.C. § 78aaa *et seq.* ................................................................................ 4

15 U.S.C. § 78ff ............................................................................................. 4

15 U.S.C. § 78j(b) ......................................................................................... 4

15 U.S.C. § 78eee(6) ..................................................................................... 23

15 U.S.C. § 78eee(6)(A)-(B) ........................................................................ 23

15 U.S.C. § 78eee(a)(4)(A) .......................................................................... 4

15 U.S.C. § 78eee(b)(3) ................................................................................ 26

15 U.S.C. § 78eee(b)(5) ................................................................................ 5

15 U.S.C. § 78eee(b)(5)(B) ........................................................................... 27

15 U.S.C. § 78eee(b)(5)(C) ..................................................................... 27, 28

15 U.S.C. § 78eee(b)(6) ........................................................................... 5, 23

15 U.S.C. § 78fff-2(b) ................................................................................... 29

15 U.S.C. § 78fff-3 ........................................................................................ 29

15 U.S.C. § 78fff-3(a) ................................................................................... 15

17 C.F.R. 240.10b-5 ...................................................................................... 4

28 U.S.C. § 158(a) ........................................................................................ 16

28 U.S.C.§ 1292(b) ....................................................................................... 17

## RULES

§ 327(a) of the Bankruptcy Code .............................................................. 5, 23

§ 330 of the Bankruptcy Code ...................................................................... 5

§ 331 of the Bankruptcy Code ...................................................................... 5

Federal Rule of Bankruptcy Procedure 2016(a) ............................................ 5

Federal Rule of Bankruptcy Procedure 2014(a) ........................................ 5, 23

Local Bankruptcy Rule 2016-1 ..................................................................... 5

Local Bankruptcy Rule 9014-2 ..................................................................... 22

N.Y. Rule of Prof. Conduct 3.1, 22 N.Y.C.R.R. § 1200 ............................. 14

N.Y. Rule of Prof. Conduct 3.3, 22 N.Y.C.R.R. § 1200 ............................. 14

## LEGISLATIVE HISTORY

*Hearings on H.R. 8331* ............................................................................. 23

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS" under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff (collectively, "Debtors"), and Baker & Hostetler LLP ("B&H"), counsel to the Trustee, respectfully submit this memorandum of law in opposition to the motion and accompanying pleadings (collectively, the "Motion") of Diane Peskin, Roger Peskin, Maureen Ebel and certain other customers[2] (collectively, "Movants") for leave to appeal the *Order Approving Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses*, dated May 5, 2010 ("Third Interim Fee Order") of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), to the extent the Third Interim Fee Order granted the third applications for interim compensation of the Trustee and B&H.[3]

## PRELIMINARY STATEMENT

The Motion is functionally duplicative of the Movants' previous two motions for leave to appeal the Bankruptcy Court's orders approving the first and second interim fee applications of the Trustee and B&H. In their current Motion, Movants once again have improperly interjected an ongoing legal dispute they have concerning the Trustee's use of a "cash-in, cash-out" methodology of calculating a customer's net equity to determine claims filed in this case (the "Net Equity Dispute") as the basis for objecting to interim fees. However, since Movants' last motion to this Court, two significant developments have occurred which should have deterred Movants from filing the instant Motion.

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."
[2] A list identifying by name the Movants upon whose behalf the Motion is filed is annexed as <u>Exhibit A</u> to the Declaration of Helen Davis Chaitman in Support of Motion for Leave to Appeal (the "Chaitman Declaration"), dated May 19, 2010, filed with the Motion.
[3] A copy of the Third Interim Fee Order is annexed as <u>Exhibit C</u> to the Chaitman Declaration.

The first is that the Net Equity Dispute has been resolved by the Bankruptcy Court and the Trustee's methodology for calculating net equity has been upheld. Judge Lifland has further certified the issue for direct appeal to the Second Circuit. An appeal from an order granting fees is, therefore, clearly not the proper forum for addressing grievances with the Trustee's method for calculating net equity. Movants are a small group of customers, who should not be able to circumvent procedures established by the Bankruptcy Court to determine an issue that applies to all customer claims. Nonetheless, Movants are raising this issue at every turn, essentially "churning" their arguments multiple times in various pleadings, all of which must be addressed by the Trustee, B&H, the Bankruptcy Court, and this Court.

The second—and one that makes the instant Motion particularly egregious—is that on January 11, 2010, the Hon. Judge Daniels issued a decision (the "Daniels Decision")[4] *denying* Movants' Peskins and Ebel motion for leave to appeal the order of the Bankruptcy Court approving the Trustee and B&H's First Interim Fee Applications (the "First Motion for Leave").[5] All of the legal questions presented by Movants in the instant Motion are virtually identical to those raised in the First Motion for Leave, and the Daniels Decision specifically found that *none* involve a controlling question of law. Not only have Movants ignored Judge Daniel's mandates, they have failed to even acknowledge this decision in their moving papers. Such conduct shows a complete disregard for this Court's findings, and may even be sanctionable.

The Motion is devoid of novel legal arguments. Movants present but one new *fact* to support their allegation of the Trustee and B&H's conflict of intertest—the Trustee's initiation

---

[4] A copy of the Daniels Decision is annexed as <u>Exhibit A</u> to the Declaration of Keith R. Murphy dated June 2, 2010 ("Murphy Decl.") submitted simultaneously herewith.

[5] As the First Motion for Leave was decided by Judge Daniels, the instant Motion should be assigned to Judge Daniels on the grounds of judicial economy.

of an adversary proceeding on April 9, 2009, to enjoin Lissa Canavan, Leslie Goldsmith and

Judith Kalman (collectively, the "New Jersey Plaintiffs"), those acting on their behalf or in

concert or participation with them, and all defendants, from proceeding with their putative class

action pending in the United States District Court for the District of New Jersey, captioned

*Canavan, et al. v. Harbeck, et al.*, No. 2:10-cv-00954-FSH-PS (the "New Jersey Action").

Movants baselessly allege that the Trustee's proceeding to enjoin the New Jersey Plaintiffs

demonstrates his loyalty to SIPC and disregard for the needs of the BLMIS customers.  As

discussed herein, the Trustee's intervention was necessary to prevent Movants' erosion of the

Bankruptcy Court's jurisdiction with respect to its Net Equity Decision, and as indicated by the

Bankruptcy Court, the Trustee is, in fact, obligated to address all cases where the Madoff estate

is implicated.  (*See* Transcript of Hearing on May 5, 2010 (the "Third Interim Fee Hearing

Transcript") at 97.)  As such, the Bankruptcy Court found that no conflict of interest exists.  In

any event, whether the actions of the Trustee rise to the level of a conflict is, at best, a mixed

question of law and fact and is not proper for interlocutory appeal.  Movants' addition of a new

fact in their papers does not change the state of the law, and, in fact, underscores Judge Daniels'

finding that a factual inquiry is not appropriate for interlocutory appeal.

    The Motion should be denied for multiple reasons:  (i) Movants lack standing to appeal

because they have not shown that they will be directly and adversely affected pecuniarily by the

Third Interim Fee Order; (ii) the issues unilaterally raised by Movants were not the subject of

the Third Interim Fee Hearing (as defined below), and they are completely self-serving in that

they are attempts to sidetrack existing, pending litigation and to disqualify the Trustee and B&H

because of a legal dispute centered on the Net Equity issue; and (iii) Movants have failed to

meet the standards for leave to appeal from the interlocutory Order, as already held in the

Daniels Decision, even under the issues as framed by them.

## STATEMENT OF FACTS

Despite the prolixity of assertions set forth by Movants in their Motion, the factual

background relevant to this motion is discrete and narrow, as set forth below.[6]

## I.    Commencement of the Action

On December 11, 2008, Madoff was arrested by the FBI in his Manhattan home and was

criminally charged with a multi-million dollar securities fraud scheme in violation of 15 U.S.C.

§§ 78j(b) , 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern

District of New York (the "District Court"), captioned *United States v. Madoff*, No. 08 CV

2735.[7]  Also on December 11, 2008 (the "Filing Date"), the Securities and Exchange

Commission ("SEC") filed a complaint in the District Court against defendants Bernard L.

Madoff and BLMIS (together, the "Defendants") (Case No. 08-CV-10791).

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented

to a combination of the SEC Action with an application of the Securities Investor Protection

Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an

application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protection afforded by SIPA.

---

[6] The facts and many of the arguments of the Movants and responses by the Trustee are set forth in pleadings
already submitted to the District Court in connection with the first and second motions for leave.  Nonetheless, the
Trustee and B&H repeat them here in the event that this Motion is not assigned to Judge Daniels.
[7] On March 10, 2009, the criminal case was transferred to District Judge Denny Chin in the United States District
Court for the Southern District of New York and was assigned a new docket number, No. 09 CR 213 (DC).

On that date, the District Court entered the Protective Decree, to which BLMIS

consented, which, in pertinent part, appointed the Trustee and B&H as his counsel, and

removed the case to the Bankruptcy Court.

## II.   Orders Regarding Disinterestedness and Interim Compensation of Trustee and Counsel

On January 2, 2009, the Trustee and B&H filed with the Bankruptcy Court declarations

of disinterestedness (*BLMIS*, Dkt. No. 24).   On February 4, 2009, after notice and a hearing, the

Bankruptcy Court entered an Order Regarding Disinterestedness of the Trustee and Counsel to

the Trustee (*BLMIS*, Dkt. No. 69), finding that the Trustee and B&H were disinterested

pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the United States Bankruptcy Code

(the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 2014(a) (the "Bankruptcy

Rules"), and were therefore in compliance with the disinterestedness requirement in

§78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

On February 25, 2009, the Bankruptcy Court entered an order pursuant to section

78eee(b)(5) of SIPA, sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a),

and Local Bankruptcy Rule 2016-1, which established Procedures Governing Interim Monthly

Compensation of Trustee and Baker & Hostetler LLP (*BLMIS*, Dkt. No. 126) (the

"Compensation Order").   The Compensation Order allows the Trustee to seek interim

compensation for services performed by the Trustee and B&H and sets forth the governing

procedures regarding the same.

Pursuant to the Compensation Order, on July 10, 2009, the Trustee and his counsel filed

with the Bankruptcy Court their First Applications for Interim Professional Compensation For

Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred (*BLMIS*,

Dkt. Nos. 320 and 321, respectively) (the "First Interim Fee Applications"), which were approved by order dated August 6, 2009.

On November 24, 2009, the Trustee and his counsel filed the Second Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, Dkt. Nos. 998 and 1010, respectively) (the "Second Interim Fee Applications"), which were approved by order dated December 17, 2009 (the "Second Interim Fee Order").[8]

On April 9, 2009, the Trustee and his counsel filed the Third Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, Dkt. Nos. 2188 and 2189, respectively) (the "Third Interim Fee Applications"), which were approved by the Third Interim Fee Order.

## III.    Movants' Filings Relating to the Trustee and SIPA Liquidation of BLMIS

In a variety of different fora and pleadings,[9] Movants and their counsel have repeated many of the same allegations and "facts" they have presented in their Motion.  The thrust of their argument in the various pleadings is that the Trustee's interpretation of "net equity" is incorrect and contrary to SIPA (as defined earlier, the "Net Equity Dispute").  They argue that the Trustee must allow their customer claims in the amount shown on their last customer statements issued by BLMIS.

---

[8] The Second Interim Fee Order, among other things, amends certain provisions of the Compensation Order.

[9] Since the last Motion for Leave was filed with this Court, counsel for Movants has initiated at least three putative class actions in two different jurisdictions.  All of these actions implicate the Net Equity Dispute.  The Trustee is currently seeking to permanently enjoin all of these actions, and has been successful in preliminarily enjoining one action. *See Picard v. Fox*, Adv. No. 10-03114 (BRL), 2010 WL 1740885 (Bankr. S.D.N.Y. May 3, 2010).  Also, Counsel for Movants and at least one of the Movants have made written and oral public statements that will not be detailed here.

Because those customer statements issued by BLMIS were based on fictitious profits and were entirely fraudulent, however, the Trustee has disregarded the customer statements for purposes of claims determinations.  Instead, consistent with the treatment of claims in other Ponzi scheme liquidations, and as required under SIPA, the Trustee is allowing claims in the amounts that a customer actually deposited with BLMIS, less the amounts that the customer withdrew from the account, sometimes referred to as the "cash-in, cash-out" approach.  On March 1, 2010, the Bankruptcy Court issued its decision on the Net Equity Dispute, approving the Trustee's method of determining net equity (the "Net Equity Decision").  *SIPC v. BLMIS*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010).  In that decision and the March 8, 2010 Order adopting such decision (the "Net Equity Order"), the Court upheld the denial of claims of those customers whose withdrawals exceeded their initial investments and subsequent deposits, therefore rendering them ineligible to participate in a distribution from the estate.  The Net Equity Order was subsequently certified for direct appeal to the Second Circuit.  Petitions for leave to appeal have been filed with the Second Circuit by various parties, including Movants, and the application for direct appeal is currently pending.

The multiple pleadings in which Movants have raised this same issue are detailed below.

## A.    The Adversary Proceeding

Movants Diane and Roger Peskin and Maureen Ebel ("Plaintiffs") filed customer claims with the Trustee prior to the statutory bar date of July 2, 2009, and each of their claims has been determined by the Trustee.  On June 10, 2009, Plaintiffs filed a complaint (the "Complaint") commencing an adversary proceeding (the "Adversary Proceeding") against the Trustee in the Bankruptcy Court captioned *Peskin, et al. v. Picard*, *as Trustee*, No. 09-1272 (BRL), ("hereinafter "*Peskin*") (Dkt. No. 1).  Plaintiffs' Complaint sought a declaration that, *inter alia*,

the Trustee's net equity interpretation is incorrect and that he is bound by SIPA to fix a

customer's claim at the balance shown on the customer's last BLMIS statement.  (Compl. ¶ 97.)

The Trustee moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) on multiple grounds, and on September 10, 2009, the Bankruptcy Court granted the

Trustee's motion and dismissed the complaint in its entirety.  (*Peskin*, Dkt. No. 42, at 10-11.)

On that same date, the Bankruptcy Court granted the Trustee's motion for the

Scheduling Order on the Net Equity Dispute (the "Net Equity Scheduling Order"), which

permitted all customers to participate in the litigation of that issue, rather than having it

determined within the confines of a single adversary proceeding.  *Id*. at 14.  As to the claim as

relating to the Net Equity Dispute, the Bankruptcy Court held that because its resolution hinged

on the outcome of that dispute, the claim was not yet ripe.  *Id.* at 16.

On September 18, 2009, Plaintiffs filed a Notice of Appeal with respect to the dismissal

of the Complaint (*Peskin*, Dkt. No. 44), and on December 2, 2009, they filed their brief in

support of their appeal in this Court. (*Peskin, et al. v. Picard*, No. 09-08730 (S.D.N.Y.), Dkt.

No. 8).  On December 23, 2009, both SIPC and the Trustee filed opposition briefs.  (*Id.* at Dkt.

Nos. 13 and 15, respectively).  On January 8, 2010, Plaintiffs filed reply memoranda to SIPC

and the Trustee.  (*Id.* at Dkt. Nos. 16 and 18, respectively).  This appeal remains pending as of

the date hereof before the Hon. John G. Koeltl.

**B.    Objection to the First Interim Fee Applications and the First Interim Fee Hearing**

On August 3, 2009, Movants Peskins and Ebel filed a fifty-one page objection to the

First Interim Fee Applications in the Bankruptcy Court (the "First Objection").  (*BLMIS*, Dkt.

No. 351).  Raising issues ancillary to the services and compensation of the Trustee and B&H,

the Objection raised the very same arguments and allegations previously raised in the

Complaint regarding the Net Equity Dispute and certain factual allegations relating to their particular customer accounts.  The First Objection attempted to use Movants' prior arguments about the Net Equity Dispute as a basis for alleging that the Trustee and B&H have a conflict of interest and should be disqualified from serving.  SIPC and the Trustee each filed a reply to the First Objection on August 3, 2009 (*BLMIS*, Dkt. No. 357), and August 5, 2009, respectively. (*BLMIS*, Dkt. No. 358).  A hearing was held before the Bankruptcy Court on the First Interim Fee Applications on August 6, 2009 (the "First Interim Fee Hearing").

At the First Interim Fee Hearing, the Trustee, counsel for the Trustee, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Interim Fee Applications was reasonable.  Counsel for Movants was also heard, and essentially asserted the same arguments set forth in the First Objection—that the Trustee's interpretation of "net equity" was contrary to SIPA.

After consideration of each of the applications and responses, the Court stated that it found "no merit to the objections."  (Transcript of Hearing on August 6, 2009 ("First Interim Fee Hearing Transcript") at 34.)[10]  The Bankruptcy Court found that it had already held a disinterestedness hearing, at which there were no objections, and there were "no new facts that have come forward that would change the disinterestedness concept with respect to the fee applications" before the Court.  (First Interim Fee Hearing Transcript at 34-35.)  The Bankruptcy Court also rejected those claims raised in the objections filed that payment of fees to the Trustee and B&H resulted in less funds to be distributed to customers.  (First Interim Fee Hearing Transcript at 35-36.)

---

[10] A copy of the First Interim Fee Hearing Transcript is annexed as <u>Exhibit B</u> to the Murphy Decl.

Thus, despite "the disagreement of methodology being applied here in this unique and unusual case," the Bankruptcy Court held that the services rendered "have been reasonable, that they have been done responsibly, and to this point have been with a salutary effect." (First Interim Fee Hearing Transcript at 38.) In an order dated August 6, 2009 (the "First Interim Fee Order"), the Bankruptcy Court approved the First Interim Fee Applications.

On August 14, 2009, Movants Peskins and Ebel filed a Motion for Leave to Appeal (*BLMIS*, Dkt. No. 367), memorandum of law in support of the motion (*BLMIS*, Dkt. No. 368), and a notice of appeal (*BLMIS*, Dkt. No. 366), seeking interlocutory review of the First Interim Fee Order. On August 24, 2009, the Trustee filed an Opposition to the Motion for Leave to Appeal (*BLMIS*, Dkt. No. 378).

Critically, and of direct relevance to the Movants' current Motion before this Court, on January 11, 2010, Judge Daniels issued a Memorandum Decision and Order denying Movants Peskins and Ebel motion for leave to appeal the First Interim Fee Order. The District Court held that "none of the issues [raised by Movants] involve controlling questions of law. . . . they all revolve around the methodology the Trustee utilized to compute net equity." *Daniels Decision*, Misc. Matter M-47 (GBD) (S.D.N.Y. Jan. 11, 2010).

## C.    Objection to the Second Interim Fee Applications and the Second Interim Fee Hearing

On December 14, 2009, Movants filed an objection to the Second Interim Fee Applications in the Bankruptcy Court (the "Second Objection") (*BLMIS*, Dkt. No. 1055). Although styled as an objection to the Interim Fee Applications, the Objection also "offer[ed] to prove the facts set forth [therein] at an evidentiary hearing at a time set by the Court." (Second Objection at ¶ 10.)

In the Second Objection, the Movants raised virtually the identical issues as in the First

Objection, regurgitating once again the arguments made in the Complaint.  However, by the

time the Second Objection was filed, the Complaint had been dismissed in its entirety and the

Movants were instructed by the Court that the Net Equity Issue was not ripe in light of the Net

Equity Scheduling Order.  The only additional issue that was raised by the Movants in the

Second Objection related to the Trustee's use of Bankruptcy Rule 2004 to subpoena bank

records of BLMIS customers.  (*See* Second Objection at ¶¶ 61-68.)  The Trustee filed a

response to the Second Objection on December 16, 2009 (*BLMIS*, Dkt. No. 1075).

At the fee hearing held on December 17, 2009 (the "Second Interim Fee Hearing"), the

Trustee, his counsel and SIPC were heard and provided a description of the services rendered

and the reasons for which the compensation sought in the Second Interim Fee Applications was

reasonable.  Movants, again, requested an evidentiary hearing.  In response, Judge Lifland

stated that the Trustee's presentation "makes it clear that there is nothing in the objection to the

Trustee's fees or the fees of Baker Hostetler that creates issues even that I haven't addressed

previously, nor do they raise any sufficient concerns that this Court should order some kind of

an evidentiary hearing." (Transcript of Hearing on December 17, 2009 (the "Second Interim Fee

Hearing Transcript"), at 33.)[11]

Furthermore, the Bankruptcy Court dismissed the Movants' Rule 2004 argument as

"bordering on frivolous." (*Id.*)  The court stated that the use of broad 2004 subpoenas is "almost

basic" in a case such as this one, and refused to penalize the Trustee for being appropriately

aggressive in his hunt to recover assets of the estate.  (*Id.*)  The Movants' Second Objection was

thus overruled by Judge Lifland on "the same ground that [he] ha[d] done previously" as there

---

[11] A copy of the Second Interim Fee Hearing Transcript is annexed to the Murphy Decl. as Exhibit C.

was "nothing new in the current objection that overlaps the original rulings." (*Id.* at 33-34.)  On

December 17, 2009, the court entered the Second Interim Fee Order approving the Second

Interim Fee Applications.

On December 23, 2009, Movants filed a Motion for Leave to Appeal (*BLMIS*, Dkt. No.

1115), memorandum of law in support of the motion (*BLMIS*, Dkt. No. 1116), and a notice of

appeal (*BLMIS*, Dkt. No. 1117), seeking interlocutory review of the Second Interim Fee Order.

On January 5, 2010, the Trustee filed an Opposition to the Motion for Leave to Appeal (*BLMIS*,

Dkt. No. 1200).  These papers were filed and served prior to the issuance of the Daniels

Decision.  The Motion for Leave to Appeal the Second Interim Fee Order remains pending, and

no judge has been assigned as of the date hereof.

> **D.**    **Objection to the Third Interim Fee Applications and the Third Interim Fee Hearing**

On April 28, 2010, Movants filed an objection to the Third Interim Fee Applications in

the Bankruptcy Court (the "Third Objection") (*BLMIS*, Dkt. No. 2233).  The Third Objection

was substantially similar to the First Objection and the Second Objection; however, the Third

Objection was particularly egregious as it was filed in the face of the Net Equity Decision and

the Daniels Decision.  Although the Movants offered one additional reason to support the

Trustee's alleged conflict of interest—his motion to enjoin the New Jersey Action—there were

no new legal issues raised by the Movants in the Third Objection.  The Trustee filed a response

to the Third Objection on May 4, 2010 (*BLMIS*, Dkt. No. 2239).

At the fee hearing held on May 5, 2010 (the "Third Interim Fee Hearing"), the Trustee,

his counsel and SIPC were heard and provided a description of the services rendered and the

reasons for which the compensation sought in the Third Interim Fee Applications was

reasonable.  Counsel for the Movants was also heard in respect of the Third Objection,

specifically as to the Trustee's involvement in the New Jersey Action.  In overruling the Third

Objection, Judge Lifland stated that "if you bring on litigation, the Trustee has to go and react to

it if that litigation implicates the administration of the estate, and that apparently is the case [in

the New Jersey Action].  (Third Interim Fee Hearing Transcript at 98.)[12]  The Bankruptcy Court

subsequently entered the Third Interim Fee Order approving the Third Interim Fee Applications.

> ### E.    The Instant Motion

On May 19, 2010, Movants filed the instant Motion (*BLMIS*, Dkt. No. 2299) and a

memorandum of law in support of the Motion ("Movants Br.") (*BLMIS*, Dkt. No. 2300),

seeking interlocutory review of the Third Interim Fee Order.  Once again, Movants' Motion and

supporting papers contain the same allegations—alleged bad acts of the Trustee, his alleged

improper interpretation and implementation of SIPA with regard to "net equity," as well as *ad

hominem* attacks against the Trustee and SIPC.  No mention of the Daniels Decision is made.

In addition, the Motion reiterates the same argument raised in the Third Objection—the

Trustee's alleged conflict of interest due to his involvement in the New Jersey Action.

Although this claim joins the rest of Movants' arguments as meritless, the Trustee addresses it

below.

---

[12] A copy of the Third Interim Fee Hearing Transcript is annexed to the Murphy Decl. as <u>Exhibit D</u>.

# ARGUMENT[13]

## I.    Movants Lack Standing to Appeal

Movants cannot meet their threshold burden to establish standing to appeal the Order.

*See In re Johns Manville Corp.*, 340 B.R. 49, 56 (S.D.N.Y. 2006) (appellant bears the burden of showing standing to appeal). To meet the threshold to appeal a bankruptcy court's order, Movants must be "persons aggrieved," meaning that they are "directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re O'Brien*, 184 F.3d 140 (2d Cir. 1999). This test, which requires financial injury, is different from the "injury in fact" test from Article III of the Constitution, and it makes it more difficult to secure appellate standing in bankruptcy cases than in other kinds of civil actions. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636 n.2 (2d Cir. 1988); *In re Victory Markets, Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996). The "person aggrieved" standard reflects the concern that bankruptcy litigation would become mired in endless appeals by a litany of parties who are indirectly affected by every bankruptcy court order. *See Kane*, 843 F.2d at 642; *Victory Markets*, 195 B.R. at 15.

---

[13] As previously noted in the Preliminary Statement, *supra*, Movants fail to even mention the Daniels Decision in their Motion. Such blatant disregard for this Court's ruling should not be ignored, especially in view of the fact that such frivolous legal conduct is potentially sanctionable, and in direct contravention of the New York Rules of Professional Conduct. *See Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (sanctioning plaintiff and its counsel for filing claims in defiance of the court's earlier ruling); N.Y. Rule of Prof. Conduct 3.1, 22 N.Y.C.R.R. § 1200 ("A lawyer's conduct is 'frivolous' for purposes of this Rule if . . . the lawyer knowingly advances a claim or defense that is unwarranted under existing law . . . ."); N.Y. Rule of Prof. Conduct 3.3, 22 N.Y.C.R.R. § 1200 ("A lawyer shall not knowingly . . . fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client."). This Court has issued a decision which disposes of the same legal issues raised in the Motion, yet the Trustee and his counsel are forced to respond to these arguments for the third time, a process that is both expensive and time consuming. Had Movants' counsel not craftily added a so-called "large" group of other BLMIS customers to the Third Motion for Leave, Movants would be collaterally estopped from bringing the instant Motion by the Daniels Decision. *See, e.g., Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (Under New York law, the doctrine of collateral estoppel will apply when "(1) the identical issue necessarily was decided in the prior action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."). Due to the complexity of this case, many more interim fee applications will be filed by the Trustee and his counsel. Movants cannot continue to wreak havoc on the judicial system by bringing vexatious and frivolous litigation, while conveniently ignoring existing orders dispositive of such litigation. Based on the foregoing, the Motion must be denied and sanctions considered.

As observed by the court in *Kane*, generally "creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims." *Kane*, 843 F.2d at 642. This rule however is not applicable to orders which do not dispose of assets in the debtor's estate. *See Victory Markets*, 195 B.R. at 15.

Movants here have failed to meet their burden to establish standing because they have not shown the requisite direct and adverse pecuniary harm. They have not, and cannot, because they have not suffered *any* harm by the Order. The Trustee and B&H are paid from the funds advanced to the Trustee by SIPC because there is no general estate in the case. *See* SIPA §78fff-3(b)(2). Customer funds collected and recovered by the Trustee for the benefit of the fund of customer property are not used to pay administrative expenses. Furthermore, Movants have not shown that SIPC is unable to pay their claims for an advance of funds provided for under §78fff-3(a) of SIPA. [14] As a point of fact, Movants Ebel and the Peskins have each been paid their maximum SIPC advances: Movant Ebel has already received funds from the Trustee amounting to $1 million from funds advanced by SIPC in connection with her claims for two separate accounts, and Movants Peskins have received $500,000 from funds advanced by SIPC in connection with their claim for their joint account.

Movants' counsel's effort to "cure" the standing defect in their First Motion for Leave by again asserting their arguments on behalf of additional customers whose claims may not yet be fully determined is transparent. Movants' feeble attempt fails, because they have not shown

---

[14] Movants are under a misguided impression that SIPC is insolvent. *See* Movants' Br. at 4. However, in a little over one year since the inception of this case, the Trustee has determined more than 12,750 customer claims and SIPC has committed to advance over $691 million to BLMIS customers in full or partial satisfaction of those claims. That number is increasing every day, and there is no present indication that SIPC will not be able to fulfill its monetary obligations.

that such customers are entitled to be paid with any SIPC advance, and that even if so entitled, that SIPC is not able to satisfy such advances.

Thus, if the Motion is denied, Movants will not suffer direct and adverse pecuniary harm.  Based on the foregoing, Movants lack standing to pursue the appeal.

## II.    Movants Have Not Met the Standard For Leave to Appeal an Interlocutory Order

As set forth below, one of the elements that a movant seeking leave to appeal must demonstrate is that the disputed ruling involves a controlling issue of law.  The Daniels Decision held that none of the issues raised by Movants in their First Motion for Leave involve a controlling question of law.  *Daniels Decision* at 2 ("None of these issues meet the exacting threshold for interlocutory appeals since they fail to meet the first prong of 28 U.S.C. ¶ 1292(b), namely they do not involve controlling questions of law.").  The Daniels Decision is dispositive of the issues raised by Movants in the instant Motion, as they are virtually identical to those raised in the First Motion for Leave.  Movants' presentment of new facts is wholly irrelevant, as it necessitates the Court to review the underlying record, and involves more than just an analysis of a pure question of law.  As Judge Daniels found, such a request is wholly inappropriate on interlocutory appeal, and the addition of new facts only makes his ruling more applicable.  As such, the Motion must fail.  Nonetheless, the Trustee addresses each of Movants' asserted issues of law herein.

### A.    Standards for Leave to Appeal from an Interlocutory Order

Pursuant to 28 U.S.C. §158(a), the district court has jurisdiction to hear appeals of interlocutory orders of the bankruptcy court, provided that the district court grants leave to appeal.  However, it is well-established that leave to appeal is granted only in exceptional circumstances.  *See In re Ionosphere Clubs,* Inc., 179 B.R. 24, 28 (S.D.N.Y. 1995); *In re Pan*

*Am* Corp., 159 B.R. 396, 401 (S.D.N.Y. 1993).  This serves the established judicial policy of

discouraging interlocutory appeals and avoiding the resulting disruption and delay which is

caused by such piecemeal litigation.  *See Ionosphere*, 179 B.R. at 28.

District courts generally apply the standards set forth in 28 U.S.C. §1292(b) when

determining whether to grant leave to appeal from an interlocutory order.  *See, e.g.*, *Pan Am*

*Corp*., 159 B.R. at 401 ("28 U.S.C. § 1292(b), which governs interlocutory appeals from the

district courts to the courts of appeal, provides the standard for determining whether leave to

appeal from an interlocutory bankruptcy order should be granted"); *Ionosphere*, 179 B.R. at 28.

Under 28 U.S.C. §1292(b), the party seeking leave to appeal must establish that (1) the disputed

ruling involves a controlling question of law, (2) as to which there are substantial grounds for

difference of opinion, and (3) an immediate appeal from the order may materially advance the

ultimate termination of the litigation.  *See Pan Am*  Corp., 159 B.R. at 401.  As stated above,

exceptional circumstances are generally required to support leave to file an interlocutory appeal.

*See In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *In re Adelphia Communications Corp*., 333

B.R. 649, 658 (S.D.N.Y. 2005).  The granting of a permissive interlocutory appeal is limited to

"extraordinary cases where appellate review might avoid protracted and expensive litigation,"

and its purpose is not to provide early review of difficult rulings in hard cases.  *See German v.*

*Fed. Home Loan Mortgage Corp*., 896 F. Supp 1385, 1398 (S.D.N.Y. 1995).  Whether to grant

an interlocutory appeal from a bankruptcy court's order lies within the district court's

discretion.  *See Adelphia*, 333 B.R. at 658.

A "controlling question of law" is one in which reversal of the decision of the

bankruptcy court would terminate the action, or at minimum, determination of the issue

appealed would materially affect the outcome of the litigation.  *See North Fork Bank v.*

- 17 -

*Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997).  The " 'question of law' must refer to a 'pure'

question of law that the reviewing court could decide quickly and cleanly without having to

study the record." *Adelphia*, 333 B.R. at 658 (citations omitted).  Mere disagreement with the

lower court's ruling is insufficient to meet this standard.  *See P. Schoenfeld Asset Mgt. LLC v.

Cendant Corp*., 161 F. Supp. 2d 355, 359 (D.N.J. 2001).  Where a controlling question of law

was not decided by the bankruptcy court, leave to appeal should be denied by the district court.

*See Ionosphere*, 179 B.R. at 29.

There are substantial grounds for difference of opinion on a controlling issue of law

where the issue is difficult and of first impression.  *See In re IBI Sec. Serv., Inc*., 174 B.R. 664,

670 (E.D.N.Y. 1994).  Substantial grounds for difference of opinion must arise out of a genuine

doubt with respect to the correct applicable legal standard relied on in the order below.  *See

Adelphia*, 333 B.R. at 658.  It is not sufficient that there is merely a strong disagreement on an

issue between the adversary parties.  *See IBI Sec. Serv*, 174 B.R. at 670.  Furthermore, the mere

presence of a disputed issue that may be a question of first impression, standing alone, is not

sufficient to show a substantial ground for difference of opinion.  *See Flor*, 79 F.3d at 284.

> **B.**   **The Net Equity Dispute Raised by Movants in Support of
> Leave to Appeal Was Not Before, Or Determined By, the
> Bankruptcy Court in Connection with the Third Interim Fee
> Hearing**

A review of Movants' "Statement of Questions Presented and Relief Sought" in their

Brief tellingly reveals that their request for leave to appeal the interlocutory Order is almost

completely based on the Net Equity Dispute.  (Movants' Br. at 13.)  Although three separate

questions are presented, two of them would be rendered effectively moot if the Trustee

interpreted "net equity" in the manner proposed by Movants.  As discussed below, because the

Net Equity Dispute was (i) resolved by the Net Equity Decision, and (ii) not properly before the

- 18 -

Bankruptcy Court or ruled upon in connection with the Third Interim Fee Hearing on the Third

Interim Fee Applications, the Motion must be denied.

Movants' second question presented posits whether the Trustee and B&H can rely upon

provisions in SIPA relating to payment of their fees "despite the fact that the Trustee and B&H

have ignored other provisions of SIPA which mandate prompt payment of Customer claims

based upon their Statutory Balances." (*Id.* at 13.)  As argued by Movants, "SIPC and the

Bankruptcy Court did not address whether SIPC and the Trustee were entitled to the benefit of

[the SIPA provision relating to payment of fees] when they had ignored their fundamental

obligation under SIPA to promptly pay Customer claims based upon the Customers' Statutory

Balances." (*Id*. at 16-17).  The payment of statutory balances to which Movants are referring

are their entitlement to be paid their BLMIS account balance based on the last account

statements—a theory rejected by the Bankruptcy Court in its Net Equity Decision.  This

question, therefore, arises entirely out of Movants' argument that the Trustee's calculation of

"net equity" is not in accordance with their interpretation.

The third question presented by Movants is whether they were denied due process of

law by the Bankruptcy Court's refusal to schedule an evidentiary hearing with respect to the

Trustee's and B&H's disinterestedness.  (*Id*. at 13.)  Among other arguments in support of this

point, Movants state that Congress, through SIPA, statutorily created a protected property

interest for the customers in the form of a right to receive SIPC protection of up to $500,000.

(*Id*. at 18.)  Movants further argue that Congress impermissibly created a statutory scheme

permeated by partiality, conflicts of interest and bias, and that SIPC has a financial incentive to

deny customer claims and has acted solely to protect its members from the obligation to fund

the payments to customers.  (*Id*. at 18-19.)

- 19 -

Aside from challenging the fundamental statutory scheme of SIPA based on Movants' perception of inherent conflicts of interest[15]—which Movants believe is a pure question of law that the district court could decide quickly and cleanly without having to study the record—it is clear again that Movants' argument is founded upon the Trustee's application of "net equity" in a manner inconsistent with their interpretation.  (*See* Movants' Br. at 18 ("While SIPC is not a governmental agency, it is a creation of Congress and performs public functions, one of which is the designation of trustees and counsel in bankruptcy proceedings who have the power, in the first instance, to determine claims.").)

At the First Interim Fee Hearing, the Bankruptcy Court found that the Objection lodged by Movants to the First Interim Fee Applications of the Trustee and B&H essentially related to the dispute concerning the different interpretation of net equity.  (*See* First Interim Fee Hearing Transcript at 31-32.)  The Bankruptcy Court further found that it was not appropriate for Movants to use that as a fulcrum to object to fees.  (*See id.*)  At the Second Interim Fee Hearing, the Bankruptcy Court essentially reiterated the findings above.  (*See* Second Hearing Transcript, at 34.)  Furthermore, the Daniels Decision explicitly found that "although Objectants attempt to classify their objections as three distinct and separate issues, they all revolve around the methodology the Trustee utilized to compute net equity" and "[a]s such, they raise factual, not legal issues."  *Daniels Decision* at 2-3.

The Net Equity Dispute was the subject of a separate hearing held on February 2, 2010 in the main case,[16] where all of the Movants had an opportunity to be heard, and their counsel was, in fact, heard.  The Net Equity Decision issued by the Bankruptcy Court thereafter resolved the Net Equity Dispute in the Trustee's favor.  Judge Lifland subsequently certified

---

[15] Movants' constitutional argument should be rejected.  *See, e.g., SEC v. Oxford Secs., Ltd.*, 486 F.2d 1396 (2d Cir. 1973)(reversing district court's finding of unconstitutionality of SIPA).
[16] Adversary Proceeding No. 08-1789 (BRL).

that issue for direct appeal to the Second Circuit.  Accordingly, as the Net Equity issue has been

channeled to the Second Circuit, this Court should decline to grant Movants' leave to appeal.

*See, e.g., In re War Eagle Constr. Co., Inc.*, 249 B.R. 686, 689 (S.D. W.Va. 2000) (denying

permission to appeal interlocutory order where part of issue on appeal was the subject of

pending adversary proceeding, and finding the potential for duplicative proceedings); *Dal-Tile

Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554, 557 (D. Del. 1996) (denying appeal of interlocutory

order because issues presented on appeal may be mooted by later decision of bankruptcy court,

and movant failed to demonstrate existence of exceptional circumstances that warranted

granting interlocutory appeal); *Ionosphere*, 179 B.R. at 28 ("[L]eave to appeal from

interlocutory orders should be granted only in 'exceptional circumstances' because to do

otherwise would contravene the well-established judicial policy of discouraging interlocutory

appeals and avoiding the delay and disruption which results from such piecemeal litigation")

(internal quotation omitted).

### C.    The Remaining "Controlling Issues of Law" Asserted by Movants Fail to Meet the Standard for Leave to Appeal

As Judge Daniels found, the Movants' assertion that the issues are pure legal questions

belies the fact that they would involve mixed questions of law and fact, or otherwise fail to meet

the standards to appeal an interlocutory order, and therefore are not proper grounds to support a

motion for leave to appeal.  *See Daniels Decision* at 2.

As an initial procedural matter, Movants misleadingly claim in the Motion that the

questions presented are of law, not of fact, because their Objection to the Interim Fee

Applications constituted an offer of proof, to which the Trustee did not introduce any evidence

in opposition, thereby rendering their "facts" indisputable.[17]    (Movants Br. at 5, 19.)  However, in their Third Objection, and again at the Third Interim Fee Hearing, counsel for Movants proposed that the Third Objection is an offer of proof and requested that the Court set a hearing at which the facts set forth in the objection can be proven.  (*See* Third Objection, at p. 2; Third Interim Fee Hearing Transcript, at 95.)  The Bankruptcy Court found no basis for a hearing, as none was held. Furthermore, counsel's claim that the Objection constitutes the facts in this matter also is contrary to Local Bankruptcy Rule 9014-2, which states that, in a contested matter, the first scheduled hearing "will not be an evidentiary hearing . . . ." (*Id.*)

The alleged controlling issues of law as asserted by the Movants relate to: (i) whether the Trustee and B&H are inherently conflicted based on the relationship with SIPC; (ii) whether the Bankruptcy Court was required to approve the Fee Applications because SIPC recommended that they be paid; and (iii) whether the customers have been denied due process of law.  (*See* Movants' Br. at 15, 16, 17.)  The Trustee addresses each of these points in turn below to demonstrate that they fail to meet the standards for granting leave to appeal the interlocutory Order.

### 1.    The Bankruptcy Court Found That the Trustee and B&H Are Disinterested

Procedurally, when a district court determines that circumstances warrant the application of the protections of SIPA to customers of a brokerage firm, the court is to appoint as trustee for the liquidation of the business and as attorney for the trustee those persons that SIPC, in its sole

---

[17] Movants cite two cases in support of their assertion, *In re Drouin*, 1999 Bankr. LEXIS 1878 (Bankr. D.N.H. Nov. 19, 1999), and *In re Miguel*, 30 B.R. 893 (Bankr. E.D. Ca. 1983).  In *In re Miguel*, a post-trial judgment was granted to plaintiffs after making an offer of proof, when the defendants and their attorney failed to appear at the trial.  *In re Miguel*, 30 B.R. at 894.  Similarly, in *In re Drouin*, the court's findings were based on the Trustee's offer of proof, when the party against whom an order to show cause was issued failed to appear at the hearing concerning the Order.  *In re Drouin*, 1999 Bankr. LEXIS at *7-9.  Both cases reflect situations akin to default judgments, where the court was forced to accept the facts presented by the only party appearing as true.  These cases are plainly inapposite and do not support Movants' position.

discretion, specifies. *See* SIPA § 78eee(b)(3). After the proceeding is removed to the

bankruptcy court, that court is to hold a hearing on the issue of disinterestedness for the purpose

of determining whether the trustee and his counsel are disinterested within the meaning of

§78eee(6)(A). *See* SIPA § 78eee(6)(A)-(B). With respect to the issue of whether Congress

intended the power to choose trustees and their counsel to lie with SIPC, legislative history

makes the matter clear: "because of the numerous times courts have questioned the authority of

SIPC to designate the trustee and counsel, the existing provision that such designations are

within the discretion of SIPC is sharpened." *Hearings on H.R. 8331 Before the Subcommittee*

*on Consumer Protection and Finance of the H. Comm. On Interstate and Foreign Commerce*,

95th Cong. 173 (1977).

In accordance with the statutory provisions of SIPA, on February 4, 2009, after notice

and a hearing, and upon consideration of the declarations of disinterestedness filed by the

Trustee and B&H, the Bankruptcy Court entered an Order Regarding Disinterestedness of the

Trustee and Counsel to the Trustee (*BLMIS*, Dkt No. 69), finding that the Trustee and B&H

were disinterested pursuant to §78eee(b)(6), section 327(a) of the Bankruptcy Code, and

Federal Rule of Bankruptcy Procedure 2014(a), and were therefore in compliance with the

disinterestedness requirement in §78eee(b)(3), section 327(a) of the Bankruptcy Code, and

Bankruptcy Rule 2014(a).

In addition to being disinterested, the Trustee is acting on behalf of the estate. A SIPA

trustee's primary duty, like that of a chapter 7 trustee, "is not to any individual creditor or even

any particular class of creditors, but to the estate as a whole," and accordingly, "the trustee's

duty to the SIPA estate as a whole clearly prevails over the interests of any single customer."

*See In re Adler*, 1998 Bankr. LEXIS 1076, at *49-50 (S.D.N.Y. Aug. 25, 1998), *aff'd*, 2000

- 23 -

U.S. App. LEXIS 14008 (2d Cir. Mar. 13, 2000). The Trustee notes that Movants' demand that the customers be paid based on their last account balances is essentially a request that the Trustee act in a way that will be to the detriment of other customers who would benefit under the Trustee's interpretation of net equity.[18] The Trustee is well within his rights and duties in the exercise of discretion given to him by Congress to take his position.

Although Movants assert in the Motion that the Bankruptcy Court simply rested on its February 2009 finding that there was no conflict of interest (*see* Movants' Br. at 16) the Bankruptcy Court expressly determined at the First Interim Fee Hearing, the Second Interim Fee Hearing and the Third Interim Fee Hearing that no new facts were presented which would alter the court's prior findings. (*See* First Interim Fee Hearing Transcript at 34-35; Second Interim Fee Hearing Transcript at 34; Third Interim Fee Hearing Transcript at 97.)

Movants now claim that there are new grounds for finding that the Trustee and B&H have a conflict of interest, which stems from the Canavan Adversary Proceeding, brought by the Trustee to enjoin the New Jersey Action.[19] As stated in the Trustee's Complaint and other pleadings filed in the Canavan Adversary Proceeding, the Trustee seeks injunctive relief to prevent the New Jersey Plaintiffs from undermining the Bankruptcy Court's continuing jurisdiction over its Net Equity Decision and Net Equity Order adopting the Trustee's position on net equity. (*See, e.g.*, Trustee's Complaint at 2 (*Canavan Adv. Pro.*, Dkt. No. 1).) The Movants incorrectly assert that the Trustee is "arguing" the case for the defendants in the New Jersey Action (the "SIPC Defendants"). (*See* Movants' Br. at 11.) As discussed in detail

---

[18] As the distribution mechanism is a zero sum game, to the extent that net winners (*i.e.*, those who received more from BLMIS than they invested) receive recoveries from BLMIS in addition to the amounts they already received, it will adversely affect net losers (*i.e.*, those who received less from BLMIS than they invested) since there will be less available to repay their claims. Thus, determination of the Net Equity Dispute in the manner proposed by Movants would help some customers but harm others.

[19] Counsel for the Movants also represents the New Jersey Plaintiffs.

in the Trustee's memorandum of law filed in the Canavan Adversary Proceeding, the New

Jersey Action usurps the exclusive jurisdiction of the Bankruptcy Court and interferes with the

administration of the BLMIS estate.[20]  (*See* Trustee's Memorandum of Law at 1 (Canavan Adv.

Pro., Dkt. No. 2).)[21]  The Trustee seeks to enjoin the prosecution of the New Jersey Action

based on those violations and the prejudice that the continued prosecution of that action would

have on the Trustee, the BLMIS estate and its customers and creditors.  By protecting the

Bankruptcy Court's jurisdiction over the administration of the BLMIS estate, the Trustee seeks

to ensure that the Bankruptcy Court's rulings are respected, and that customer property is

distributed to the victims of Madoff's massive Ponzi scheme in a fair and efficient manner

consistent with SIPA and the Bankruptcy Code.  Thus, neither the Trustee nor B&H are acting

adversely toward the interests of customers of BLMIS.

At the Third Interim Fee Hearing, the Bankruptcy Court heard Movants' argument, and

determined that there is "no basis for finding that the Trustee should be found to have an

appearance of a conflict of interest.  (Third Interim Fee Hearing Transcript at 97.)  "As a matter

of fact . . . there is an obligation wherever the administration of the Madoff estate is a [sic]

implicated for the Trustee to appear and deal with that. . . . and that is apparently the case here."

(*Id.* at 97-98.)  The Court further noted that any counsel could be disabled under the theory put

forth by the Movants (*Id.* at 94) and in fact, "one might find very easily the appearance of

conflict of interest of [Movants'] counsel.  (*Id.* at 97).

Based on the foregoing, no grounds for removal of the Trustee or B&H exist.  *See, e.g.,*

*In re Rea Holding Corp.*, 2. B.R. 733, 735 (S.D.N.Y. 1980) (noting that grounds for removal of

---

[20]  The Trustee notes that the SIPC Defendants are represented by their own separate counsel in connection with the New Jersey Action.  The SIPC Defendants are also not a party to the Canavan Adversary Proceeding.
[21] A copy of the Trustee's Memorandum of Law filed in the Canavan Adversary Proceeding is annexed as Exhibit A to the Third Objection marked Exhibit B to the Chaitman Declaration.

- 25 -

a trustee are not found in a trustee's formal relationships, rather they are based on fraud and actual injury to the estate); *see also Matter of W.T. Grant Co.*, 4 B.R. 53, 82 (Bankr. S.D.N.Y. 1980) (recognizing that disqualification of attorney requires considerable reluctance because of its immediate adverse effect on the administration of the estate and because attempts to disqualify attorneys are often interposed for tactical purposes).

Movants' "controlling issue" of the Trustee and B&H's conflict cannot satisfy the standards for granting an interlocutory appeal. Determination of a conflict of interest necessarily involves a review of the facts in the case. In addition to SIPA's statutory right to select trustees and their counsel, *see* §78eee(b)(3); *Oxford Secs.*, 486 F.2d 1396 (reversing district court's finding of unconstitutionality of SIPA), a separate disinterestedness hearing is held by the Bankruptcy Court. In this case, the Bankruptcy Court specifically found that no basis was presented by Movants which would justify an alteration of the court's prior finding of disinterestedness. (*See* Third Interim Fee Hearing Transcript at 97.) Issues relating to the disinterestedness of the Trustee and B&H are not "pure" questions of law that the district court could decide quickly and cleanly without having to study the record. *See, e.g.*, *Daniels Decision* at 3 (quoting *In re Lehman Bros. Holdings, Inc.*, Case No. M47 (VM), 2009 U.S. Dist. LEXIS 96946, at *5 (S.D.N.Y. Oct. 8, 2009)). Therefore, Movants fail this prong of the standard, which warrants denial of their request for leave to appeal this issue. *See Adelphia*, 333 B.R. at 658; *Ionosphere*, 179 B.R. at 29 (where a controlling question of law was not decided by the bankruptcy court, leave to appeal should be denied).

Movants also fail to demonstrate that their challenge of the disinterestedness of the Trustee and B&H involve difficult questions of law. To demonstrate a substantial ground for a difference of opinion, an appellant must show that the issue is difficult and of first impression.

*See, e.g.*, *Adelphia*, 333 B.R. at 658-59.  Movants tie their argument of conflict of interest to the Trustee's alleged "defiance of his statutory responsibilities."  (Movants' Br. at 20.)  However, as the Bankruptcy Court has indicated, the Trustee is "obligated" to address cases where the administration of the Madoff estate is implicated.  (Third Interim Fee Hearing Transcript at 97.) While Movants may disagree, it is not sufficient that there is merely a strong disagreement on an issue between the adversary parties in order to satisfy this prong.  *See In re IBI Sec. Serv.*, 174 B.R. at 670.  Thus, Movants have failed to demonstrate this element.

Lastly, an immediate appeal of the issue of the Trustee and his counsel's disinterestedness will not materially advance the termination of the litigation.  Even if Movants were successful in removing the Trustee and B&H due to conflict, any prudent trustee appointed subsequently would be obligated to intervene in the New Jersey Action as it is inextricably tied to the Madoff estate and threatens the jurisdiction of the Bankruptcy Court with respect to its Net Equity Decision.  Furthermore, removal of the Trustee and his counsel would significantly delay and affect all Madoff-related proceedings and litigations, while a new trustee and new counsel attempt to learn the facts of this complex case.   Therefore, not only would immediate appeal of this issue not advance the termination of the litigation, it would instead have the opposite effect.

### 2.    Approval of the Interim Fee Applications

Under SIPA as promulgated by Congress, SIPC has the responsibility to review fee applications submitted in SIPA proceedings, and is required to file its recommendation prior to the hearing on such applications.  *See* SIPA § 78eee(b)(5)(B)-(C).  Furthermore, section 78eee(b)(5)(C) requires that the court award the amount recommended by SIPC when the following conditions are met: (i) SIPC will advance funds to pay the fee allowances "without

any reasonable expectation of recoupment thereof," and (ii) when there is no difference between the amounts requested and the amounts recommended by SIPC. Even with respect to those fee allowances that do not meet these parameters, SIPA requires that the court place considerable reliance on SIPC's recommendation and give "due consideration to the nature, extent, and value of the services rendered." *See* SIPA § 78eee(b)(5)(C).

As recognized by the Bankruptcy Court, the statutory provisions of SIPA provide that the court *shall* award the amount recommended by SIPC in cases where the amount requested and the amount recommended by SIPC are the same, and in which allowances are to be paid by SIPC without reasonable expectation of recoupment, as is the case here. (*See* Third Interim Fee Hearing Transcript at 97); SIPA § 78eee(b)(5)(C).

Movants have not set forth any controlling issue of law over which there is a substantial difference of opinion with respect to this argument. Payment of the fees in a SIPC case under the circumstances set forth above are mandated by statute. In light of the statutory provision, Movants' have not shown that there is any substantial difference of opinion as to whether such fees can be paid. Therefore, Movants have failed to satisfy this prong.

Movants' argument that an immediate appeal will advance the ultimate termination of the litigation also is fundamentally flawed with respect to this point. Movants seek the appointment of a new trustee, one who will share their view of the methodology for calculating net equity. (*See* Movants Br. at 21.) However, this would not resolve the alleged issue that they raise relating to SIPC's right to pay a trustee and his counsel. Removing the current Trustee and his counsel would merely necessitate replacements in this complex and convoluted case, who also would be entitled to payment from SIPC.

### 3.     The Order Involved No Violation of Due Process Rights

Among the points raised by Movants in support of their argument that they were denied due process is that Congress, through SIPA, created a statutory right to receive SIPC "insurance" of up to $500,000.[22] They assert that because SIPC functions in a quasi-judicial capacity, due process demands impartiality, however Congress created a statutory scheme "permeated by partiality, conflicts of interest and bias by permitting SIPC to appoint and control the Trustee and the Trustee's counsel, regardless of the obvious conflict of interest between SIPC and the Customers." (Movants' Br. at 18.)

Based simply on the above description, it is clear that these issues, even if they had been addressed by the Bankruptcy Court in the Order, involve mixed questions of law and fact, and clearly do not fall within the parameters of a "pure" question of law to be reviewed by the district court. Thus, they are improper grounds to support the Motion.[23]

Movants also ignore the Claims Procedure Order entered in this case on December 23, 2008. The Claims Procedure Order, *inter alia*, specified the procedures for the filing, determination, and adjudication of claims against the debtors in this proceeding.[24]

Under the Claims Procedure Order, all claims of customers must be filed with the Trustee. The Trustee satisfies customer claims by distributing customer property supplemented by SIPC advances. *See* Claims Procedure Order at 5; SIPA at §78fff-2(b). If a claim is not supported by the Debtor's books and records or otherwise established to the Trustee's

---

[22] Funds paid under §78fff-3 of SIPA are referred to as "advances," and are not insurance. *See SIPC v. Assoc. Underwriters, Inc.*, 423 F. Supp. 168, 171 (D. Utah 1975) (SIPC is not an insurer, nor does it guarantee that customers will recover their investments which may have diminished as a result of, among other things, market fluctuations or broker-dealer fraud."). As discussed earlier, *supra*, at p. 15, Movants Peskins and Ebel already have been paid the maximum amount of SIPA advances that they can receive.

[23] Furthermore, any fundamental challenge by Movants to the statutory scheme as enacted by Congress is an issue for Congress, not for this Court in the context of a proposed appeal from the Order approving the Third Interim Fee Applications.

[24] A copy of the Claims Procedure Order is annexed to the Murphy Decl. as <u>Exhibit E</u>.

satisfaction, he may deny it and must notify the claimant of the determination in writing.  If the claimant does not oppose the determination, that determination is deemed approved by the Bankruptcy Court and binding on the Claimant.  If any opposition is filed, the Trustee obtains a hearing date and notifies the claimant of the date, time, and place of the hearing.  (*See* Claims Procedure Order at 6-7.)  Where appropriate, the Trustee may settle the claim.  (*Id*. at 6.)[25] The procedures mandated by the Bankruptcy Court in the Claims Procedure Order comport with due process, SIPA, and the Bankruptcy Code.  The procedures employed in this liquidation proceeding are not novel.  Rather, they have been consistently approved and applied in SIPA proceedings at least since 1975.  *See SIPC v. Saxon Secs. Corp.*, No. 75 Civ. 377 (RJW), 1975 U.S. Dist. LEXIS 14757 (S.D.N.Y. 1975) (entering claims procedure order substantially similar to that entered herein); *see also SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 275 (S.D.N.Y. 1999) (detailing claims process and relevant order substantially similar to that herein); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 792-93 (S.D.N.Y. 1998) (same); *In re Adler Coleman Clearing Corp.*, 211 B.R. 486 (S.D.N.Y. 1997) (same).

In addition to the foregoing, Movants, and any other interested parties, have had ample opportunity to present their case with respect to the determination of the Net Equity Dispute and a decision has been rendered by the Bankruptcy Court.  They have been afforded notice and an opportunity to be heard on this issue, and thus due process has been satisfied. The Trustee and B&H submit that given the foregoing, Movants cannot demonstrate that immediate appeal will advance the ultimate termination of the litigation.

---

[25] Movants imply that the Trustee has been derelict in the claims administration process while collecting substantial fees for himself and B&H.  (*See* Movants' Br. at 5-7.)  They base this view on the number of claims processed.  Significantly, to date the Trustee has determined approximately 12,750 claims, representing 78% of the total claims filed.  *See* Trustee's Website at http://www.madofftrustee.com/Status.aspx.  Claims which are determined and allowed are then processed, and may be eligible for the SIPC advance.  The Trustee notes that more complex claims, or those that are the subject of dispute or potential litigation by the Trustee, require additional time and analysis to resolve.  Thus, any delays are not "unjustifiable" as asserted by Movants.  (Movants' Br. at 6.)

## <u>CONCLUSION</u>

Movants have failed to demonstrate the elements supporting a request for leave to appeal the interlocutory Order.  Movants lack standing to appeal, there are no controlling issues of law as to which there are substantial grounds for difference of opinion, and immediate appeal of the Order will not advance the ultimate termination of ongoing litigation. Movants further have failed to demonstrate any extraordinary circumstances which would justify leave to appeal of the Order.

Based on the foregoing, the Motion should be denied and the appeal dismissed.


Dated: New York, New York                    Respectfully submitted,
       June 2, 2010


                                            *s/Marc Hirschfield*
                                            Baker & Hostetler LLP
                                            45 Rockefeller Plaza
                                            New York, New York 10111
                                            Telephone: (212) 589-4200
                                            Facsimile: (212) 589-4201
                                            David J. Sheehan
                                            Email: dsheehan@bakerlaw.com
                                            Marc Hirschfield
                                            Email: mhirschfield@bakerlaw.com
                                            Keith R. Murphy
                                            Email: kmurphy@bakerlaw.com
                                            Tatiana Markel
                                            Email: tmarkel@bakerlaw.com

                                            *Attorneys for  Irving H. Picard,*
                                            *Trustee for the Substantively Consolidated*
                                            *SIPA Liquidation of Bernard L. Madoff*
                                            *Investment Securities LLC and Bernard L.*
                                            *Madoff*