# EXHIBIT D

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In re:


BERNARD L. MADOFF INVESTMENT

SECURITIES LLC,                           Index No.

                                          08-01789(BRL)

            Debtor.

------------------------------------x

IRVING H. PICARD, as Trustee for the

Liquidation of BERNARD L. MADOFF

INVESTMENT SECURITIES LLC,


              Plaintiff,          Adv. Pro No.

                                  09-1172(BRL)

        V.


STANLEY CHAIS, et al,


              Defendants.


------------------------------------x


                          May 5, 2010

                          United States Custom House

                          One Bowling Green

                          New York, New York 10004


              In Re:  Hearing


B E F O R E:

                HON. BURTON R. LIFLAND,

                          U.S. Bankruptcy Judge

2

1

A P P E A R A N C E S:

2

3

4          BAKER HOSTETLER, LLP

5          Attorneys for Irving H. Picard, SIPA Trustee

6          and Counsel for the Trustee

7                  45 Rockefeller Plaza

8                  New York, New York 10017

9          BY:    MARC E. HIRSCHFIELD, ESQ.

10                      -and-

11                 DAVID J. SHEEHAN, ESQ.

12                      -and-

13                 PAUL EYRE, ESQ.

14                      -and-

15                 IRVING PICARD, ESQ.

16

17         LOEB & LOEB LLP

18         Attorneys for Picard v. Chais

19         Counsel for Stanley and Paula Chais

20                 345 Park Avenue

21                 New York, New York  10154

22         BY:    EUGENE R. LICKER

23                     -and-

24                 WALTER H. CURCHACK, ESQ.

25

3

1

2       APPEARANCES:  (Continued)

3

4

5              WINDELS MARK LANE & MITTENDORF, LLP

6              Attorneys for Alan Nisselson Chapter 7 Trustee

7                   156 West 56th Street

8                   New York, New York  10019

9              BY:   ALAN NISSELSON, ESQ.

10                      -and-

11                  REGINA GRIFFIN, ESQ.

12

13

14

15              SILLS CUMMIS & GROSS P.C.

16              Attorneys for Chais Related Parties

17                   One Riverfront Plaza

18                   Newark, New Jersey  07102

19              BY:   PHILLIP WHITE, ESQ.

20                      -and-

21                  ANDREW H. SHERMAN, ESQ.

22

23

24

25

4

1

2    APPEARANCES:  (Continued)

3

4

5        BECKER & POLIAKOFF, LLP

6             Attorneys for Peskin, et al

7             45 Broadway

8             New York, New York 10006

9        BY:   PETER W. SMITH, ESQ.

10

11

12        SECURITIES INVESTOR PROTECTION CORPORATION

13             805 15th Street, Suite 800

14             Washington,  D.C.  20005

15        BY:   KEVIN H. BELL, ESQ.

16

17

18        KLESTADT & WINTERS, LLP

19        Attorneys for Michael Chasalow

20             International, Inc.

21             292 Madison Avenue

22             New York, New York 10017

23        BY:   TRACY L. KLESTADT, ESQ.

24

25

76

1              And that may be a very important factor in

2    my consideration of whether or not these counterclaims

3    stand,

4                          MR. SHEEHAN:  Thank you, Your Honor.

5                          MR. WHITE:   Thank you, Your Honor.

6                          MR. SHEEHAN:   Your Honor, there is one

7    last item here.  Well, there are quite few of them, it's

8    the fee applications and we have the Trustee and his

9    counsel as well as a number of other applications.

10                         (Brief recess.)

11                         MR. SHEEHAN:   Good morning, Your Honor.

12                         THE COURT:  Good morning.

13                         MR. SHEEHAN:  This is a return date of a

14   number of applications for interim allowance of fees on

15   behalf of a number of parties.

16                         There is only one objection that has been

17   filed that I am aware of.  That is in connection with the

18   application of Mr. Picard and by his counsel, Baker

19   Hostetler.

20                         THE COURT:  Well, there is a little

21   reaction which doesn't really appear to be an objection to

22   the fees but more to the substance to your rejection of a

23   claim on the part of one Dr. Rudolfo Dawlt (phonetic) in

24   Zurich, Switzerland, which if you would look at the way it

25   is titled, it refers to today's hearing but it seems to

77

1    really regard this particular claim and Trustee's rejection

2    of it.

3              So unless there is somebody who could

4    clarify it, I don't regard this specifically as an

5    objection to fees.

6              MR. SHEEHAN:   Your Honor, I have that

7    letter as well, I have it on my desk and I read it as you

8    did.  Even though it was captioned a claim, the letter was

9    characteristically an objection to the claim.  I turned it

10   over to our rejection people and they are handling it.

11             With regard to those applications, Your

12   Honor, not objected to.  I won't go into them.  I will go

13   into a brief detail and I would identify the firms

14   involved.  A number of them are firms retained by the

15   Trustee in connection with actions instituted in foreign

16   jurisdictions.

17             The first is Schiltz & Schiltz.  The next

18   is Higgs Johnson Truman Bodden & Company, Eugene F.

19   Collins, Willaim Barristers and Attorneys as Special

20   Counsel, Attias & Levy, Lovells LLP and Kugler Kandestin.

21             I will leave these sheets with the reporter

22   so she could have the spelling of these names, Your Honor.

23   All of these, these are all foreign counsel and there being

24   no objection, we would move those applications be approved.

25             I should note for the record that Mr. Bell

78

1    is here, ready to speak.

2                    MR. BELL:   Kevin Bell, for the Securities

3    Investment Protection Corporation.

4                    With respect to that cluster of special

5    counsel, SIPC has filed one recommendation and supports the

6    amounts requested by those various counsel and would

7    support the entry of an order approving those requests,

8    Your Honor.

9                    THE COURT:  Does anyone want to be heard?

10                    Well, definitially, for the purpose of this

11   proceeding, I am prepared and I do treat them as attorneys

12   for the Trustee --

13                    MR. SHEEHAN:   Yes.

14                    THE COURT: -- and they have the same

15   standing as the attorney for the Trustee for the purpose of

16   my granting allowance and in considering the position of

17   SIPC.

18                    MR. SHEEHAN:   Thank you, Your Honor.

19                    The other unopposed application has been

20   filed by Windels Marx, who is here in Court this morning.

21   Alan Nisselson and Regina Griffin are here today, Your

22   Honor.

23                    As you well know, Your Honor, they have

24   appeared already before you in a number of capacities on

25   behalf of the Trustee.

79

1      We have been working cooperatively with

2 that firm in connection with a number of matters, some of

3 which have involved corporations of which the Madoff family

4 and other third parties had an interest.

5      Shortly you will be seeing complaints filed

6 with regard to at least two of them.

7      In addition to them, there are a number of

8 insiders where we have had conflicts because of their

9 relationship to the corporate clients that we had.   We

10 felt it was remote but nevertheless appropriate not to be

11 involved with those particular situation.

12      We have asked Windels Marx to handle those

13 as well.   They are not insignificant preference and

14 fraudulent conveyance actions.

15      I know that myself and the Trustee had very

16 much enjoyed working with Windels Marx, but beyond that we

17 feel there has been work that has been superb and we

18 strongly move that it be approved.

19      MR. BELL:   On behalf of SIPC we filed

20 another recommendation in support of the fees requested by

21 Windels Marx and would support an order by this Court.

22      THE COURT: Does anyone want to be heard?

23      I will grant the request by Windels Marx.

24 It may very well be they come under the same statute,

25 78fff5c, based upon the consolidation order, and the

80

1    approval of this Court as well as the real fact that they

2    have been working as attorneys in sort of a hybrid fashion

3    and now in a more direct fashion for the Trustee.

4                    MR. SHEEHAN:   Your Honor, I would just

5    point out that I will be turning to our application and

6    that Mr. Picard, the Trustee, would like to address the

7    Court.

8                    MR. PICARD:   Good afternoon, Your Honor.

9                    THE COURT:  Good afternoon.

10                   MR. PICARD:  Irving Picard,  SIPA Trustee.

11   This is my third application for interim compensation.   It

12   covers the four-month period ending January 31, 2010.

13                   For the period I seek a total $671,591.25,

14   of which $570,852.56 would be paid, and $100,738.69 will be

15   deferred until the further order of the Court.

16                   I also seek reimbursement of actual and

17   necessary expenses totalling $77.66.

18                   In connection with my fees, I would note

19   that my fees start with a 10 percent discount for my hourly

20   rates.

21                   In addition, as noted in the applications

22   that I will address in a little while, there are other

23   hours that have not been billed for.

24                   SIPC has filed a recommendation in support

25   of the interim fee application.  As I noted in my

81

1    application, the general estate will not be sufficient to

2    pay administrative expenses, which included paying for the

3    professional fees which are such as those you have already

4    approved, mine and Baker Hostetler's.

5              Under the circumstances, SIPC is required

6    to advance the funds to the Trustee to pay the amounts

7    awarded.   There is no difference between their

8    recommendation and the amounts applied for.   As you noted,

9    this status provide that the Court should award the amounts

10   recommended.

11             There is one objection that was filed by

12   Diane and Roger Peskin, Maureen Ebel and a large group of

13   investors.   As set forth in the response papers that we

14   have filed, the objection includes a number of arguments

15   that have previously been rejected by Your Honor.

16             The motion for leave to appeal, the first

17   fee application order was denied by the district court and

18   the second one on the second application is still pending.

19             The crux of the objections are as I see it

20   they are talking about, I have a conflict of interest.

21   They both stood there and they attempted to bolster their

22   argument by seeming to say since we have a disagreement on

23   various legal issues, that both I and Baker Hostetler

24   should be disqualified.

25             I personally and I am sure Baker does not

82

1    believe that provides a basis for disqualification and that

2    is what was set forth in the response.

3                I won't belabor that point, Your Honor.

4    During the period of my application, a substantial amount

5    of time was spent in connection with moving customer claims

6    and dealing with objections to determinations Your Honor.

7    Your Honor had the briefing in that equity issue which you

8    decided in March.

9                We started working on the next major group,

10   by which you have entered a scheduling order in April, that

11   will be heard during the fall.

12               Before that time, Your Honor, you will be

13   seeing other objections coming before the Court on matters

14   that do not raise some of the nitty-gritty issues and some

15   of the more difficult issues and don't all fit together in

16   one package.

17               The task of recovering assets is ongoing

18   and, as you know, it is international in scope.   As you

19   have heard, we have six or so foreign counsel, many of whom

20   have been instrumental in helping us locate people to

21   depose and also helping us follow the trail.

22               My activities are generally set forth in my

23   application.   I also would refer Your Honor to the amended

24   third interim report that was filed in April.

25               Next, turning to the claims, we received

83

1    16,312 customer claims from persons claiming to have lost

2    money in the Ponzi scheme.   That, of course, includes a

3    substantial number of people who are relying on their

4    November 30th statements.

5              As I previously reported, Your Honor, in

6    December of 2008, there were approximately 4,900 accounts

7    that were opened.   Thus, if you look at the bare numbers,

8    we have received more than 11,400 claims from persons who

9    did not have accounts in their respective names.

10             Many of these latter people were entities

11   invested through various types of funds, including pension

12   or profit-sharing trusts, family partnerships, limited

13   liability companies and the like.

14             Each claim has a story and each one is

15   reviewed before a determination letter is sent out.

16             As of January 31, we had determined 11,861

17   customer claims, allowing claims for more than 4.55 million

18   and SIPIC, at that point, it committed approximately 629

19   million dollars for advances.

20             I am pleased to report that as of April 30,

21   those numbers have increased.

22             On January 31, we had determined

23   approximately 72.7 percent and as of April 30, the number

24   is above 76 percent.

25             SIPC's commitment now is up to over 682.8

84

1    million dollars.

2                    In addition, during that period we resolved

3    a number of avoidance matters without requiring litigation

4    for an amount totalling approximately 262.4 million

5    dollars.

6                    Since then, there have been other

7    recoveries, including 220 million dollars from the Levy

8    family, and other recoveries that have been made during the

9    claims processing period.

10                    We are very hopeful, Your Honor, in the

11    very near future we will be announcing some significant

12    settlements that will put us in a position to do an

13    allocation and an interim distribution to customers.  We

14    are hopeful that the application will be filed and we could

15    have a hearing as of, perhaps, as early as late summer or

16    early fall.

17                    As set forth in my application during the

18    four-month period, the major areas in which I devoted time

19    out of the 947.7 hours, approximately 30 percent was spent

20    in connection with claims review.

21                    Approximately 154 hours in attending to

22    various Bankruptcy Court matters.

23                    133 hours were in case administration.

24    About 10 percent of the time was concerned with the

25    Trustee's investigation.

85

1           Based on my normal hourly rates during the

2   period I would be seeking expenses of 746,000 plus dollars.

3   But as I have indicated previously, I agreed with SIPC to

4   reduce my hourly rate by 10 percent.   That is a reduction

5   of about $75,000.   So as a result, I'm requesting

6   $671,591.25 of which $100,738.69 would be deferred.

7           Additionally, in consideration of good

8   billing practice I have written off or not billed

9   approximately $117,000.  I seek the discounted amount at

10  this time.

11          I would also seek $77.66, which are related

12  to some long distance telephone calls and travel.  As in

13  lawful travel.   In the past, as I have indicated, in both

14  the application and to the Court, I will pay over to Baker

15  Hostetler the full amounts of any interim compensation

16  expense reimbursement that is awarded or paid.

17          As I noted at the outset, SIPC has filed

18  its recommendation in support of the Trustee's application.

19          I would be happy to answer any questions

20  that Your Honor may have.

21          THE COURT:  Does anyone want to be heard?

22  Thank you.  Thank you, Mr. Smith.

23          MR. SMITH:  We have an objection to both

24  Mr. Picard and Baker Hostetler.   So maybe it make sense

25  for Mr. Sheehan to go on now and speak on behalf of Baker

86

1    Hostetler.

2                    THE COURT:  Very well.

3                    MR. SHEEHAN:  The arguments are well stated

4    in the pleadings.  Fees of $23.884,085.25 is being sought

5    and expenses of $390,204.85 satisfied.  The same arithmetic

6    applies for counsel to the Trustee, as far as the discount

7    and 15 percent holdback, Your Honor.

8                    It is almost impossible for me here to

9    summarize exactly what we have done.  We have submitted to

10   your Honor unredacted time sheets which are voluminous as I

11   know Your Honor knows.

12                   Suffice it to say there are multiple facets

13   to this case requiring the attention of many attorneys.

14   The difficulty in summarizing that is the size of it.

15                   We have the customer claim process, for

16   example, and right now there are over 2,700 objections, and

17   that does not include the 1,900 that were filed with regard

18   to the customer status issue that is part of the scheduling

19   order.

20                   In addition to that, Your Honor, there are

21   4,000 outstanding claims all of which have been to be

22   determined at this time.  Many of which involve, Your

23   Honor, individual issues, as Mr. Picard has indicated, of

24   ownership.

25                   All of those require both a legal and

87

1    factual analysis in order to determine the status of who

2    the customers are as well as, obviously, the forensic

3    accounting in terms of establishing the amount that may be

4    due to the customer in the event of an allowed claim.

5              Needless to say, countless hours were spent

6    just on that and it is a top priority of the Trustee, and

7    we will move as aggressively as we can move those customer

8    claims going forward.

9              In addition to those, there are, of course,

10   other litigations that are filed before Your Honor and you

11   are familiar with that, including Chais, which was argued

12   before you this morning and many others, Picower, which is

13   in settlement discussions as has been well reported and a

14   number of others that are ongoing before Your Honor.

15             In addition to those, there are literally

16   dozens, if not hundreds of litigations that are being

17   reviewed and contemplated in connection with the over 20

18   billion dollars that was paid out in the short period of

19   time of about 24 months prior to the demise of the BLMIS.

20             Those constitute significant potential

21   recoveries by the Trustee of customer property.   We are

22   doing our very best to deal with those in an applicable

23   way.   It may very well be before the end of the year there

24   will be a significant number of claims that will be filed.

25             The approach of the Trustee throughout with

88

1    regard to both large and small, people who are net winners

2    and losers, who have received what we believe to be

3    preference and fraudulent conveyances consisting of false

4    profits, we have reached out to those folks.

5              And the feeder funds as well as the

6    individual funds, they require a great deal of time but we

7    believe it is the best approach.   This is a case in which

8    no one feels as though they win.   Everyone feels as though

9    they lost, the winner and the losers.   We recognize that.

10   We do our very, very best to work with them as best as we

11   can to work out an accommodation if we can.

12             Those that are significant, obviously, Your

13   Honor is going to see.   Those that are small, and there

14   are many that are very small, you don't as we are not

15   required under the rules.

16             But in each and every case we are in

17   contact with counsel especially with the feeder funds, but

18   in connection also with many of other individuals in

19   conducting our investigation and working out what we can in

20   negotiations and settlement.   If we can't do that, as I

21   have said, we will see a lot of complaints.   Those involve

22   the feeder fundss throughout Europe, Caribbean, British

23   Virgin Islands, the Caymans, and Bermuda.   That is why we

24   have all the counsel we retained, as each of those are

25   very, very complicated.

89

1          As is reflected in our time records, what

2     we have found is that Mr. Madoff became a securitized debt.

3     We found there are very sophisticated transactions

4     involving major financial institutions as well as the

5     feeder fundss, where multiple layers of debt were incurred

6     funded by the Madoff returns.   They were, as we all know,

7     available for years and years and there were steady

8     returns.   They were just the kind of returns that people

9     in the financial industry looked to securitize, to create

10    those instruments, swaps, and credit the swaps.

11          All of that is involved in the Madoff

12    enterprise involving not just Mr. Madoff but also involving

13    all the people with whom he dealt.   These are enormously

14    complicated an require a good deal of deconstruction and

15    each one of those represents hundreds and hundreds of

16    millions of dollars in potential recovery.

17          The efforts you can see from our records

18    reflect that as do things that don't appear necessarily in

19    the Court's record but are reflected in Your Honor's review

20    in the time records, but I can talk about them openly here,

21    they are reflected in our investigations and it's well

22    known to people on the other side.   We are not doing

23    things that counsel is not fully aware of because we are in

24    negotiation with most of them before proceeding with

25    litigation against them.

90

1          We are well aware of the statute and we are

2    well prepared to follow through with those if we have to.

3          In addition to all that work, there is an

4    ongoing array, a good deal of it before Your Honor, of what

5    I would call individual litigation that occurs just in the

6    administration of the estate.  Whether it be seeking

7    injunctive relief before Your Honor, whether it be dealing

8    with various motion practices that we have that is not

9    related to a specific litigation, and as Your Honor is

10   aware, there is a good deal of that occurs as well.

11          So we have multiple teams involved in each

12   of those endeavors, as again it's reflected in our time

13   records.

14          I believe that all of the work and I know

15   the SIPC Trustee agrees and supports it.  We are reviewed

16   very, very carefully.  I prepare that bill along with some

17   assistants working diligently every month.  I could tell

18   you for a fact there are many, many conversations with SIPC

19   where they review specifically who is at a meeting, how

20   many people are attending, how much time is spent, was it

21   productive, what were you specifically seeking to do.

22          This is by far not a rubber stamp.  This

23   is a very intensive review that takes place every month by

24   SIPC, with regard to this at two levels.  Both at the

25   assistant general counsel, Mr. Bell, who is here, as well

91

1    as by general counsel herself.

2         So, Your Honor, when this arises before you

3    it arises before you after having thoroughly been reviewed

4    and approved by SIPC.   I would respectfully ask Your Honor

5    to approve our application.

6         MR. BELL:   Your Honor, I thank Mr. Sheehan

7    for his talk about the exhaustive review that SIPC does

8    with regard to the Trustee and counsels monthly

9    applications pursuant to this Court's monthly compensation

10   order.

11        There are many discussions about the fees.

12   There are many pages in the applications.   I could advise

13   the Court that each and every page is reviewed. Discussions

14   are had and decisions are made, and SIPC after that review,

15   with the concurrence of the Trustee and counsel, will

16   follow the monthly procedures order and pay.

17        SIPC does that at two levels.   At my level,

18   I am the staff attorney on the case even though I have a

19   title.

20        Then it is done by general counsel and the

21   general counsel and I have engage in extensive discussions

22   after I have had my extensive discussions with the Trustee

23   and its counsel.

24        So the thoroughness of this review I could

25   assure the Court where we say, carefully evaluated, I think

92

1   you could use the words that we exhaustively evaluate the

2   applications.  We take this responsibility extremely

3   seriously.

4                So we have done the review and we have

5   followed our recommendation by SIPC's general counsel, and

6   we support the entry of an order for the approval of the

7   applications as filed.

8                MR. SMITH:   Good afternoon, Your Honor

9   Peter Smith of Becker & Poliakoff, on behalf of the

10  objection filed by the Peskins and other customers.

11               Your Honor, I will just address the issue

12  of the most recent grounds contained in this objection, not

13  the ones that reiterate or reiterate from the first two

14  objections that were filed, but I would mention are subject

15  to appeals.  Specifically that the Trustee an his

16  counsel's involvement in the Canavan adversary proceeding

17  filed last month, around April 5 or so, in which the

18  Trustee and counsel seek to enjoin an action filed in the

19  district court in New Jersey.   On April 13, Your Honor

20  denied the application for a TRO.

21               The hearing on the preliminary injunction

22  motion is rescheduled, pending some discovery disputes.

23               The Trustee and his counsel we believe had

24  disqualified themselves, we believe, based on the positions

25  they have taken in the adversary proceeding because they

93

1    have essentially argued the position of the defendants in

2    that New Jersey action.   Therefore, they are directly

3    adverse to every customer who would benefit from a positive

4    judgment in that proceeding.

5              The Trustee and his counsel have made

6    substantive and procedural defenses, asserted them on

7    behalf of the defendants who are in the New Jersey action

8    that even the defendants themselves in the action have not

9    made.

10             All the defendants in that action have done

11   is to seek to have the action transferred here.   When it

12   gets here Your Honor will have a preview I suppose of all

13   the defenses that they will raise.

14             There is no basis, Your Honor, for them to

15   have done that in their papers.

16             I just want to give you a few examples of

17   what was contained in the motion for preliminary

18   injunction.

19             THE COURT:  This is a request for fees.

20             MR. SMITH:   What we argue, Your Honor,

21   that is --

22             THE COURT:  I am hearing more of a defense

23   with respect to the litigation that is pending before me.

24             MR. SMITH:   No, Your Honor, we will hear

25   more of that I suppose in the weeks to come, but the issue

94

1    right here --

2                    THE COURT:  You say that they should not be

3    asking for fees for their involvement in the New Jersey

4    litigation.

5                    MR. SMITH:   I don't think I said that.

6                    THE COURT:  Isn't that what you are saying?

7                    MR. SMITH:  Their fees for whatever they do

8    or have done in the New Jersey application are probably not

9    part of the application because I think this one cut off in

10   January.

11                   THE COURT:  But, nevertheless, it is their

12   activities supports their argument that they have that it

13   has disabled them for asking for fees because they are

14   breaching some duties that they have.

15                   MR. SMITH:   I believe that the breach of

16   duty is their loyalty to the customers.  And I think it is

17   very clear that any customer who would see those papers,

18   and customers are aware of what is going on in those

19   proceedings, they are aware of this fee application --

20                   THE COURT:  One wonders when one peels it

21   away whether everyone under your theory could be disabled

22   under those same theories.

23                   MR. SMITH:  Who else could be?

24                   THE COURT: All counsel.

25                   MR. SMITH:   No, only the counsel who took

95

1    the position contrary --

2                    THE COURT:  That is an opinion that you

3    have.

4                    MR. SMITH:  They are arguing the position

5    of the defendants.

6                    THE COURT: Let me hear you out.

7                    MR. SMITH:   Okay.   So, Your Honor, the

8    customers to whom the Trustee is supposed to be loyal can

9    only view the complaint for the preliminary injunction in

10   one way, which is that the Trustee and his counsel have put

11   that aside in this regard with respect to the persons who

12   the customers are suing to recover damages.  For that

13   reason it is impossible for there not to be an appearance

14   of a conflict of interest between the Trustee and Baker

15   Hostetler to whom they are supposed to be loyal in this

16   proceeding.

17                   For that reason, they should not receive

18   their fee and there should at least be an evidentiary

19   hearing as to whether they should be disqualified.

20                   THE COURT:  Thank you.

21                   MR. SMITH:   Your Honor.

22                   MR. SHEEHAN:   Your Honor, I don't intend

23   to argue the motion here.   I will say one thing.   I would

24   suggest there are a great many customers that would think

25   what we are doing in terms of trying to preserve this

96

1    Court's jurisdiction in connection with the net equity

2    ruling which is a whole thrust of why we are seeking to

3    have that case enjoined and why the people in New Jersey

4    are seeking to have it transferred here, there are a whole

5    host of customers who have bought that argument.  I will

6    leave it out there.

7                    MR. SMITH:   Your Honor, I will say this

8    quickly, if the only goal was to protect the net equity

9    decision they would not have to raise defenses for the

10   defendants.   They could have stopped on the ground for the

11   preliminary injunction without saying all of the things

12   they said in their motion how the claims are without merit;

13   however there are procedural problems with that complaint.

14   They did not have to say anything further.   They have yet

15   to answer for why they did these things.

16                    If it is not they are advocating on behalf

17   of those defendants, why on earth did they do it?  There is

18   no basis for it.   Thank you.

19                    THE COURT:  Thank you.   I will overrule

20   your objection.   It is quite obvious that the objectors

21   here are on the other side of many litigations with the

22   Trustee.

23                    It is always interesting that it would be

24   part of the practice, and it shouldn't be to try to disable

25   your adversaries or take a legal position based on the fact

97

1    you seek to disable counsel.

2              But as I have pointed out in my statements

3    previously, I think if one peels away all the interests

4    that the various parties represent, one might find very

5    easily an appearance of conflict of interest of counsel,

6    and I could think of several areas which were involved in

7    all of the litigations before me.

8              What is clear to me, and one of the reasons

9    I am rejecting the argument here, is that these objectors

10   and their counsel have been very active in creating new

11   litigation made of sandboxes in multiple jurisdictions,

12   which in some form indicates a disagreement with the

13   Court's net equity decision.

14             It is understandable that the objectors

15   would seek to have the Trustee disabled, but that is not a

16   ground here for arguing against the consideration by this

17   Court of the request for fees under 78 -- and I won't go

18   through all of the Es -- when SIPC finds the fees

19   appropriate and the disinterestedness of the Trustee has

20   already been measured in the early part of the proceeding,

21   that the statute has the words, "award the amounts

22   recommended."

23             I find no basis for finding that the

24   Trustee should be found to have an appearance of a conflict

25   of interest.   As a matter of fact, I think there is an

98

1    obligation wherever the administration of the Madoff estate

2    is a implicated for the Trustee to appear and deal with

3    that.

4              That essentially is the main argument that

5    is being made today, the additional argument that is being

6    expressed.

7              If you bring on litigation, it is obvious

8    that the Trustee has to go and react to it if that

9    litigation implicates the administration of the estate, and

10   that is apparently is the case here.

11             Objection is overruled.  The decision is

12   reserved with respect to all motions thus heard.

13             MR. SHEEHAN:  Your Honor, I have an order

14   that I would like to submit, if I may approach.

15             THE COURT:  Yes.

16             MR. SHEEHAN:  Thank you, Your Honor.

17             THE COURT:  It is unfortunate but more

18   litigation, more fees.

19             I have approved the order.

20             MR. SHEEHAN:  Thank you very much, Your

21   Honor.  Thank you for all your time.

22             THE COURT:  Thank you.

23

24             *         *         *

25

99

```
 1                    C E R T I F I C A T E

 2

 3    STATE OF NEW YORK        }

                              }   ss.:

 4    COUNTY OF NEW YORK       }

 5                    I, MINDY CORCORAN, a Shorthand Reporter

 6    and Notary Public within and for the State of New York, do

 7    hereby certify:

 8                    That I reported the proceedings in the

 9    within entitled matter, and that the within transcript is a

10    true record of such proceedings.

11                    I further certify that I am not related, by

12    blood or marriage, to any of the parties in this matter and

13    that I am in no way interested in the outcome of this

14    matter.

15                    IN WITNESS WHEREOF, I have hereunto set my

16    hand this 5th day of May, 2010.
```

17  Mindy Rothman-     Digitally signed by Mindy Rothman-
    Corcoran           Corcoran
                       DN: cn=Mindy Rothman-Corcoran, c=US
18                     Reason: I am the author of this document
                       Date: 2010.05.10 15:05:41 -04'00'
    _____

    MINDY CORCORAN

```
19

20

21

22

23

24

25
```