Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Steven R. Schlesinger, Esq.

*Attorneys for Samuels Family Limited Partnership*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

         Plaintiff-Applicant,         Adv. Pro. No. 08-01789 (BRL)

   v.         SIPA Liquidation

BERNARD L. MADOFF INVESTMENT         (Substantively Consolidated)
SECURITIES LLC,

         Defendant.
------------------------------------------------------------X
IN RE:

BERNARD L. MADOFF,

         Debtor.
------------------------------------------------------------X

# SAMUELS FAMILY LIMITED PARTNERSHIP'S OBJECTION TO
# NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

Samuels Family Limited Partnership ("SFLP"), by and through its counsel, Jaspan Schlesinger LLP, hereby raises and files this Objection to the Notice of Trustee's Determination of Claim, dated May 10, 2010, and respectfully shows and alleges as follows:

1.       SFLP is a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the meaning of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").

2. BLMIS Account Number 1S0493 was opened in the name of SFLP in or about 2003 by Bernard L. Madoff ("Madoff") following the liquidation and closing of BLMIS Account Number 1S0019, which was opened and solely managed by Martin Joel, Jr. through the legitimate side of BLMIS.

3. SFLP's final account statement from BLMIS dated November 30, 2008 reflects that it owns securities valued at approximately $598,726.73.

4. On or about December 11, 2008, Madoff was arrested by the FBI and charged with securities fraud. Madoff allegedly confessed that BLMIS was a "Ponzi scheme" as he had been paying returns to certain investors out of the principal he received from other investors.

5. On or about December 11, 2008, the SEC filed a civil complaint with the United States District Court for the Southern District of New York charging Madoff with securities fraud on the basis that Madoff had been conducting a Ponzi scheme for years through the investment adviser services of BLMIS. Thereafter, on or about December 15, 2008, the United States District Court for the Southern District of New York (Stanton, J.) entered an order granting the application of the Securities Investor Protection Corporation ("SIPC") seeking a declaration that the customers of BLMIS are in need of protection under SIPA, and appointed Irving H. Picard, Esq. as Trustee (the "Trustee").

6. On December 23, 2008, this Court entered an order which governs, in part, the determination of "customer claims" of victims of Madoff and BLMIS (the "Claims Procedure Order") [Docket # 12].

7. Prior to the July 2, 2009 bar date, on or about February 23, 2009, SFLP mailed certified mail – return receipt a Customer Claim form (the "Customer Claim Form") with respect to Account Number 1S0493 of BLMIS. A copy of the Customer Claim Form is

annexed hereto as Exhibit "A". The Customer Claim Form reflects a final account balance of $598,726.73.

8. The Trustee has since issued the Notice of Trustee's Determination of Claim, dated May 10, 2010 (the "Determination of Claim"), denying the SFLP's Customer Claim in its entirety. A copy of the Determination of Claim is annexed hereto as Exhibit "B". Specifically, the Trustee denied SFLP's claim for a credit balance of $598,726.73 on the ground that "[n]o securities were ever purchased for [its] account." See Exhibit B. The Trustee also stated that based upon his analysis, the amount of money withdrawn from the account was greater than the amount deposited with BLMIS. See Exhibit B.

9. As set forth below, SFLP objects to the Determination of Claim in its entirety. SFLP should be allowed a claim for the maximum amount under SIPA with the balance as a claim against the estate and any remaining proceedings, totaling $598,726.73 as stated on its Customer Claim Form.

## I. FACTUAL BACKGROUND ON SFLP'S INVESTMENT WITH BLMIS AND MARTIN JOEL

10. In the 1990s, Martin Joel, Jr. opened account number 1S0019 originally in the name of Howard and Patricia Samuels (which was later changed to the SFLP). This account was exclusively traded and managed by Mr. Joel, who, upon information and belief, rented office space from Madoff, through the legitimate side of BLMIS since the opening of this account until his passing in 2003.

11. Following Mr. Joel's death in 2003, Madoff, in his capacity as executor of Mr. Joel's estate, liquidated and closed Account Number 1S0019 and unilaterally transferred the funds that were legitimately traded by Mr. Joel to a new account opened by Madoff – Account Number 1S0493. A copy of the account statement for BLMIS Account Number 1S0019, dated

November 30, 2003, reflecting the liquidation and closing the account and the transfer of its funds totaling $866,665.46 to BLMIS Account Number 1S00493 is annexed hereto as Exhibit "C". A copy of the account statement for BLMIS Account Number 1S0493, dated November 30, 2003, reflecting the opening of Account Number 1S0493 with a starting balance of $866,665.46 is annexed hereto as Exhibit "D".

12. Due to the liquidation of Account Number 1S0019, SFLP incurred substantial tax liability for which payments were to be made. In order to pay the tax liabilities for the liquidation of this account by Madoff (as well as another account opened in the name of Patricia Samuels), a total of $760,000.00 was transferred from an account owned, managed and traded by Mr. Joel (1J0057) that was held in trust for his daughters Patricia Samuels and Amy Joel after his death. This tax liability was determined by Paul Koningsberg at the direction of Madoff. A copy of the agreement, made as of April 14, 2004, is annexed hereto as Exhibit "E". Of the $760,000.00 agreed by the parties to be transferred to Patricia Samuels, $310,000.00 was transferred directly into BLMIS Account Number 1S0493 for the tax liabilities incurred as a result of Madoff's actions in liquidating the predecessor account (Account Number 1S0019).

13. Until Madoff liquidated and closed the SFLP's legitimate trading account (Account Number 1S0019) and opened a new account for the SFLP that only Madoff had custody and control over (Account Number 1S0493), the SFLP's funds held at BLMIS were not part of Madoff's ultimate Ponzi scheme.[1] Similarly, Account Number 1J0057, an account owned, managed and traded only by Mr. Joel until his death in 2003, was only made part of Madoff's Ponzi scheme after Madoff, as executor of Mr. Joel's estate and co-trustee of the Trust

---

[1] Madoff also liquidated and closed the rest of the accounts of the Samuels family in or about November 2003 and transferred all of their remaining funds from their accounts into his custody and control. Aside from the SFLP, Sylvia Samuels is, as of the date hereof, the only Samuels family member to receive a Notice of Trustee's Determination of Claim and to subsequently file an objection [Docket # 907].

whose funds were held in Account Number 1J0057, took custody and control of the funds managed and traded by Mr. Joel.[2]

14.  The legitimacy of the accounts managed by Mr. Joel is established in the documents submitted to Baker & Hostetler, LLP, counsel for the Trustee and annexed hereto. Tax returns of the SFLP and year-end account statements of BLMIS Account Number 1S0019 for years 2001 and 2002 have every indicia of an account not under the control of Madoff or part of the Ponzi scheme:

(a)  A copy of the December 31, 2001 account statement for account number 1S0019 is annexed hereto as Exhibit "F";

(b)  A copy of the 2002 Tax Return for the SFLP and the December 31, 2002 account statement for account number 1S0019 are annexed hereto as Exhibit "G".

Copies of these documents were submitted to Baker & Hostetler prior to the mailing of the Determination of Claim by the Trustee. These documents demonstrate that the SFLP was not receiving or earning the typical returns of Madoff customers with accounts that were part of the Ponzi scheme. See Exhibits F and G.

15.  In comparison, a review of the tax returns and year-end statements for BLMIS Account Number 1S0493 for the years following Mr. Joel's death after Madoff liquidated and closed BLMIS Account Number 1S0019 shows that only after this account was opened was the SFLP receiving and earning the types of returns associated with Madoff's Ponzi scheme:

---

[2] The Article Fourth Trust U/W Martin J. Joel, Jr. Deceased (the "Article Fourth Trust") filed an objection to the Notice of Trustee's Determination of Claim, dated April 27, 2010 [Docket # 2335]. The documents annexed to that objection as well as the facts and arguments set forth therein establish the legitimacy of BLMIS Account Number 1J0057 as well as the trading and managing of certain accounts by Mr. Joel for his family members and relatives. SFLP hereby incorporates by reference the Article Fourth Trust's Objection [Docket # 2335] as if set forth herein at length.

HY/D705406v1/M053602/C0143600    5

    (a)    A copy of the 2003 Tax Return of the SFLP and the December 31, 2003 account statement for account number 1S0493 are annexed hereto as Exhibit "H";

    (b)    A copy of the 2004 Tax Return of the SFLP is annexed hereto as Exhibit "I";

    (c)    A copy of the 2005 Tax Return of the SFLP and the December 31, 2005 account statement for account number 1S0493 are annexed hereto as Exhibit "J";

    (d)    A copy of the 2006 Tax Return of the SFLP and the December 31, 2006 account statement for account number 1S0493 are annexed hereto as Exhibit "K";

    (e)    A copy of the 2007 Tax Return of the SFLP and the December 31, 2007 account statement for account number 1S0493 are annexed hereto as Exhibit "L".

Copies of these documents were submitted to Baker & Hostetler prior to the mailing of the Determination of Claim by the Trustee. It appears from the face of these documents that following Mr. Joel's death in 2003 at the earliest, the SFLP may no longer have had a legitimate account through BLMIS and only after BLMIS Account Number 1S0019 was liquidated and closed by Madoff and $866,665.46 was transferred into new BLMIS Account Number 1S0493 were the funds of the SFLP then made part of Madoff's Ponzi scheme.

## II.    SFLP'S OBJECTIONS TO THE DETERMINATION OF CLAIM

16.    SFLP hereby objects to the Determination of Claim for the reasons set forth below. SFLP is entitled to recover from the estate of BLMIS as it was one of the thousands of customers defrauded by Madoff. SFLP should be allowed a claim for the maximum amount under SIPC ($500,000.00) with the balance as a claim against the estate and any remaining proceeds for a total of $598,726.73.

17.    The Trustee has failed to render a determination and to satisfy SFLP's Customer Claim for Account Number 1S0493 in accordance with the books and records of BLMIS and has

further failed to give any weight to the documents in his possession regarding this account as mandated by the Claims Procedure Order.

19. A proof of claim filed by a creditor is prima facie evidence of the amount and validity of the claim. See Fed. R. Bankr. P. 3001. The Trustee bears the burden of proof in challenging the amount and validity of SFLP's Customer Claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re 37-02 Plaza LLC, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008) ("The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's prima facie validity."). In order to meet his burden in overcoming the prima facie validity of the Customer Claim Form, the Trustee had to present evidence refuting the amount and validity of SFLP's claim set forth on the Customer Claim Form. The Trustee has failed to meet this burden.

19. Additionally, and in direct contravention of the Claims Procedure Order, the Determination of Claim does not sufficiently set forth the reason and legal basis for the denial of SFLP's claim. In fact, the only "explanation" for the denial of SFLP's claim is that "[n]o securities were ever purchased for [its] account." See Exhibit B. The Determination of Claim therefore states no basis in law or in fact for the denial of the SFLP's claim. The Determination of Claim is inadequate to rebut the prima facie validity of SFLP's Customer Claim, and further relies upon an exhibit purportedly evidencing the money deposited and the money withdrawn from BLMIS Account Number 1S0493. The exhibit, however, is completely unsubstantiated and reflects a number of "adjustments" that are unexplained and unsupported.

20. The Determination of Claim further fails to give SFLP credit for the $866,665.46 transferred from the legitimate side of BLMIS to Madoff's Ponzi scheme. Instead, the Trustee somehow, without stating his reasons as required by the Claims Procedure Order and without

providing any documents to support his position, "adjusts" the amount of the deposits into BLMIS Account Number 1S4093 to "$0.00". See Exhibit B. Without any explanation or documentary evidence, the Trustee fails to give SFLP any credit for Account Number 1S0019 that was managed solely by Mr. Joel through the legitimate side of BLMIS until 2003 when Madoff liquidated and closed this account and transferred SFLP's funds to Account Number 1S0493 and into his sole custody and control – his Ponzi scheme. The Trustee acknowledges the transfer of $866,665.46 into Account Number 1S0493, which was opened by Madoff after he liquidated and closed Account Number 1S0019, yet nowhere in the Determination of Claim or in the annexed exhibits does the Trustee explain where and how these adjustments were made.

21.     The documents submitted herewith (and provided to the Trustee prior to the Determination of Claim) establish that for the period of 2001 to 2003 when Mr. Joel managed Account Number 1S0019 the account reflects a more traditional trading account with marginal returns and conservative investments that were not typical of Madoff Ponzi scheme customers. See Exhibits F and G. In contrast, a basic review of the tax returns and statements reveal a noticeable difference in trading strategies and types of trades for the years 2003-2008 following Madoff's liquidating of the original account and the opening of Account Number 1S0493 in November 2003. See Exhibits H-L. The documentary evidence therefore establishes that SFLP's funds were not part of the Madoff Ponzi scheme until November 2003 when Madoff closed Account Number 1S0019 and opened Account Number 1S0493. Only then was SFLP's funds made part of the Madoff Ponzi scheme and subsequently lost. The Trustee fails to address this issue, even though all of the relevant documents were provided to him, and instead relies solely upon his schedule of "adjusted" deposits and withdrawals without stating his reasons for his determination as required by the Claims Procedure Order.

22. Moreover, the Determination of Claim and the denial on the grounds that "because [SFLP has] withdrawn more than was deposited into [its] account, [it does] not have a positive 'net equity' in [its] account and [it is] not entitled to an allowed claim in the BLMIS liquidated proceeding." See Exhibit B.

23. SIPA provides that a customer's claim shall be allowed in the amount of the customer's "net equity." See 15 U.S.C. § 78*fff*-2(b). The term "net equity" is defined in SIPA as,

> [T]he dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date; . . . .

15 U.S.C. § 78*lll*(11). The Trustee's money in/money out analysis fails to give customers of BLMIS credit for basic interest that could have been earned on the funds deposited with Madoff and BLMIS during the years in which they were investors, and also fails to reflect the time value of money. Additionally, the Trustee's approach is inconsistent with the case law. See e.g., Visconsi v. Lehman Brothers, Inc., 244 Fed. App'x 708 (6th Cir. 2007); Stafford v. Giddens (In re New Times Securities Services, Inc.), 463 F.3d 125 (2d Cir. 2006); In re New Times Securities Services, Inc., 371 F.3d 68 (2d Cir. 2004).

24. The Trustee's definition of "net equity" only serves to punish victims of Madoff and BLMIS and does not protect them or their reasonable expectations. The legislative intent behind enacting SIPA was to "restore investor confidence in the capital markets, and upgrade the

financial responsibility requirements for registered brokers and dealers." Sec. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 415 (1975). "Congress' primary purpose in enacting the SIPA and creating the SIPC was . . . the protection of investors." Id. at 421; see In re First State Sec. Corp., 34 B.R. 492, 496 (Bankr. S.D. Fla. 1983) ("SIPA is remedial legislation. As such it should be construed liberally to effect its purpose. The purpose is the protection of the insolvent brokers' customers."); see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) (noting that Congress' primary purpose behind enacting SIPA was to protect investors from financial losses arising from insolvency of brokers and to reestablish investor confidence). The Trustee's interpretation of "net equity" and its application to the Customer Claim of SFLP should be overturned.

25.    Lastly, at a minimum, SFLP's funds that were subsequently transferred by Madoff from the accounts opened by Mr. Joel to BLMIS Account Number 1S4093 should be entitled to interest. See e.g., N.Y. C.P.L.R. § 5004; Gen. Oblig. Law § 5-501 *et seq.*

## CONCLUSION

26.    For the foregoing reasons, SFLP requests that its Customer Claim be allowed in its entirety in the amount of $598,726.73, together with such other and further relief as this Court deems just and proper.

27.    SFLP reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of its right to object.

**WHEREFORE**, Samuels Family Limited Partnership requests that its Customer Claim be allowed in its entirety in the amount of $598,726.73, together with such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
June 7, 2010

                                      JASPAN SCHLESINGER LLP
                                      *Attorneys for Samuels Family*
                                      *Limited Partnership*

                        By:    <u>s/ Steven R. Schlesinger</u>
                                STEVEN R. SCHLESINGER
                                300 Garden City Plaza
                                Garden City, New York  11530
                                (516) 746-8000

TO:    Clerk of the United States Bankruptcy Court (via ECF)
         for the Southern District of New York
         One Bowling Green
         New York, New York 10004

         Irving H. Picard, Trustee
         c/o Baker & Hostetler LLP
         45 Rockefeller Plaza
         New York, New York 10111

         Ona T. Wang, Esq.
         Naima Garvin, Esq.
         Baker & Hostetler LLP
         45 Rockefeller Plaza
         New York, New York 10111