# EXHIBIT B

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

**(Please print or type)**

**Name of Customer:**  Logue Family Revocable Trust
**Mailing Address:**  86 Bridle Path
**City:**  Ellerslie          **State:**    GA          **Zip:**    31807
**Account No.:**   1L0329
**Taxpayer I.D. Number (Social Security No.):**        -2616

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of        $_____0_____

    b.    I owe the Broker a Debit (Dr.) Balance of        $_____0_____

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.        $_____

    d.    If balance is zero, insert "None."        _____None_____

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| See Oct. 28, 2008 letter from Robin P. Logue to "Erin" at BMIS, and Oct. 29, 2008 BMIS | | | |
| Existing Account Record Notification, attached hereto as Exhibit A. | | | |
| $450,000    cash deposit to L0329 for the purchase of securities | | | |
| TOTAL: $450,000 | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**  See Exhibits A and B, and documents submitted herewith.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Christopher Van De Kieft, Esq., Seeger Weiss LLP, One William Street, New York, NY 10004 .

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____5-1-09_____    Signature _____

Date _____5-1-09_____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

## CUSTOMER CLAIM

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

December 11, 2008

**Explanation of Trustee Capacity for
Bernard L. Madoff Investment Securities Account No. 1L0329**

| | |
|---|---|
| **Trust:** | Logue Family Revocable Trust |
| **Co-Trustees:** | Peter G. Logue |
| | Robin I. Logue |
| **Co-Trustees' Address:** | 86 Bridle Path<br>Ellerslie, GA 31807 |
| **Co-Trustees' Tel. No.:** | 954-815-2884 |

Pursuant to the Agreement for the Logue Family Revocable Trust ("Trust"), submitted herewith in Exhibit B, Peter G. Logue and Robin I. Logue, are Co-Trustees of the Trust. As Co-Trustees, we are authorized to file a Securities Investor Protection Corporation Customer Claim for Account 1L0329 with Bernard L. Madoff Securities, LLC.

_5-1-09_
Date

Pete G. Logue, as Co-Trustee of the
Logue Family Revocable Living Trust

_5-1-09_
Date

Robin I. Logue, as Co-Trustee of the
Logue Family Revocable Living Trust

# *EXHIBIT A*

12610 N. W. 12th Court
Sunrise, FL 33323
October 28, 2008

BERNARD L. MADOFF INVESTMENT SECURITIES LLC
ATTN: Erin
885 Third Avenue
New York, NY 10022

**Re:    Joseph S. Popkin Revocable Trust– A/C# 1-ZA121-30/40**

Dear Erin;

Per our conversation today, please open another account in the name of
"Logue Family Revocable Trust" and transfer $450,000 into that account. I have
enclosed copy of the trust agreement. The federal ID number for this trust is my
husband's social security number        ·2616.

Thank you so much for everything.

Sincerely,

Robin P. Logue

Sent via FedEx Priority.



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 838-4061

LOGUE FAMILY REVOCABLE TRUST
12610 N.W. 12TH. COURT
SUNRISE, FL 33323

**October 29, 2008**

**Existing Account Record Notification**

Account:      1L0329

Dear Client:
In accordance with SEC regulation 17a-3: Books and Records, we are required to verify that the following information is complete and accurate.

**There is no need to return this form if the information is correct.**

| Account Name and Address | Account Information | |
|---|---|---|
| LOGUE FAMILY REVOCABLE TRUST | Account Type: | Trust |
| 12610 N.W. 12TH. COURT | Investment Objective: | * Trading Income |
| SUNRISE, FL 33323 | Annual Income: | |
| | Net Worth: | |

| Customer Information | | Alternate Address |
|---|---|---|
| Name: | LOGUE FAMILY REVOCABLE TRUST | NONE |
| Street: | 12610 N.W. 12TH. COURT | |
| Apt/Suite: | | |
| City: | SUNRISE | |
| State: | FL - FLORIDA | |
| Country: | UNITED STATES | |
| Province: | | |
| Zip Code: | 33323 | |
| Home: | | |
| Business: | | |
| Tax ID: | *ON FILE* | |
| DOB: | | |
| Occupation: | | |
| Company/Firm: | | |
| Is Person Employed | | |
| By A Member Firm: | | |

**Mailing Address**
Address:      *same as Primary Account*

If any of your account or customer information is found to be inaccurate, please mark the corrections on this form and return to the address below.

It is very important to maintain accurate records of your account(s) at all times. If there are any future material changes to the information above, please send the updated information to the address below, as soon as possible:

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
885 3RD AVENUE
NEW YORK, NY 10022

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel. 020-7493 6222

# *EXHIBIT B*

## EXHIBIT B

1.  This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

2.  The information provided in the Claim Form is based on information provided in the Claimant's latest Madoff account statement and additional information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

3.  The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law or equity.

4.  The Claimant hereby requests that the Claim Form be considered as a proof of claim in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

5.  This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by applicable law, the Claimant does not, by submitting the Claim Form, consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

6.  The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, Bernard L. Madoff Investment Securities LLC and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

7.  The Claimant further reserves all rights, claims, and/or defenses as to and/or against any persons and/or creditors asserting claims against Bernard L. Madoff Investment Securities LLC, its employees, owners, and/or affiliates, in bankruptcy or otherwise.

8. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever, notwithstanding the submission of any such information to the Trustee.

9. To the extent the Claimant has disclosed to the Trustee documents containing accounting and/or legal advice, the Claimant does not waive any potential privileges applicable thereto.

10. The Claimant reserves all rights with respect to submitting information to the Internal Revenue Service regarding gains, losses, and/or theft of assets.

11. The Claim Form and supporting documents contain confidential information. The Claimant submits this information to the Trustee subject to the condition that this information will not to be disclosed to any third parties, other than under seal to the Court, absent the Claimant's express consent or Court order.

12. The Claimant submits herewith documents in support of the Claimant's claim, including documents containing information regarding account transactions, such as contributions and/or withdrawals. The Claimant reserves any arguments that such documents are not relevant to the Trustee's inquiry. The Claimant further reserves the right to supplement this submission, including the submission of additional documents, if deemed necessary. Attached is a list of documents submitted herewith.

**Logue Family Revocable Trust**
**Bernard L. Madoff Investment Securities Account No. 1L0329**

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| 1 | 11/1/2008 | Bernard L. Madoff Investment Securities LLC | Logue Family Revocable Trust | Bernard L. Madoff Investment Securities LLC Account Opening Documents |
| 2 | 8/25/2006 | | | Logue Family Revocable Trust Agreement |

1



**BERNARD L. MADOFF**   Customer Claim   Pg 15 of 43
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.   All purchases, sales or trades shall be executed strictly in accordance with the established trading authorization directive.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue New York, NY.  Such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation.  This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the  personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated,  _Nov 1, 2008_

_Sunrise_                    _Florida_
(City)                        (State)

Very truly yours, _____
(Client Signature)

Signature of Authorized Agent: _____

**Affiliated with:**
**Madoff Securities International Limited**
**12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222**

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

# OPTION AGREEMENT

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer and exercise) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1.    I understand, and am well aware, that option trading may be speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me.  I agree to hold the company, its other divisions, and its officers, directors and agents harmless for such loss.

2.    I understand that any option transaction made for any account of mine is subject to the rules, regulations, customs and usages of The Options Clearing Corporation and of the registered national securities exchange, national securities association, clearing organization or market where such transaction was executed. I agree to abide by such rules, regulations, custom and usages and I agree that, acting individually or in concert with others, I will not exceed any applicable position or exercise limits imposed by such exchange, association, clearing organization or other market with respect to option trading.

3.    If I do not satisfy my transaction obligations on a timely basis, you are authorized in your sole discretion and without notification, to take any and all steps you deem necessary to protect yourself (for any reason) in connection with option transactions for my account including the right to buy and/or sell for my account and risk any part or all of the shares represented by options handled, purchased, sold for my account, or to buy for my account and risk any option as you may deem necessary or appropriate.  Any and all expenses or losses incurred in this connection will be reimbursed by me.

4.    In addition to the terms and conditions hereof, my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the purchase and sale of securities except to the extent that such other agreements are contrary to or inconsistent herewith.

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222

5.    This agreement shall apply to all puts or calls which  you may have executed, purchased, sold or handled for any account of mine  and also  shall apply to all puts, or calls which  you may hereafter purchase, sell, handle or execute for any account of  mine.

6.    I have received from  the  company  the  most  recent  risk  disclosure   document entitled "Characteristics  and  Risks  of  Standardized  Options".    I  have  read  and  understand  the information contained in this document.

7.    I understand that you assign exercise notices on a random basis.  You may preferentially  assign exercises of block-size (i.e. covering $1,000,000 or more of  underlying securities) to block-size writing positions and you may  preferentially assign smaller exercises to smaller writing positions. I understand  that  upon  my  request  you  will  provide  me  with  further  information regarding the procedure used to assign exercise notices.

DATED _Nov. 1, 2008_          ACCOUNT NO. _1 L0329_

SIGNATURES

(If a Corporation)                                    (If Individuals)

_____                    _____
(Name of Corporation)

By_____                    _____
                                                          (Second Party if Joint Account)

Title_____                    (If a Partnership)

                                                          _____
                                                          (Name of Partnership)

        SEAL

                                                          By_____
                                                                  (A Partner)

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

MADF

212 230-2424
800 334-1343
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments of every kind and nature and related contracts and options. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of the Securities Exchange Act of 1934, as amended, and (b) to the rules and regulations of (1) the Securities and Exchange Commission and (2) the Board of Governors of the Federal Reserve System.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

**Affiliated with:**
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall ensure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _Florida_ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _Florida_.

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR AN ARBITRATION FACILITY PROVIDED BY ANY EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND IN ACCORDANCE WITH THE RULES PERTAINING TO THE SELECTED ORGANIZATION.  THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER  ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects.  Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

_✓_ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _____          (X) _____
(Customer Signature/date)                         (Customer Signature/date)

_12610 NW 12 CT_                              _1 L 0329_
(Customer Address)                                (Account Number)

_SUNRISE FL 33323_

**Form W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer Identification Number and Certification**

Give form to the requester. Do not send to the IRS.

*(Print or type — See Specific Instructions on page 2.)*

Name (as shown on your income tax return)
PETER G LOGUE TTEE

Business name, if different from above
LOGUE FAMILY REVOCABLE TRUST

Check appropriate box: [x] Individual/Sole proprietor [ ] Corporation [ ] Partnership
[ ] Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ .......
[ ] Other (see instructions) ▶

[ ] Exempt payee

Address (number, street, and apt. or suite no.)
12610 NW 12 CT

Requester's name and address (optional)

City, state, and ZIP code
SUNRISE FL 33323

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
2616

or

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

Sign Here    Signature of U.S. person ▶    Date ▶ 11-1-08

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Purpose of Form**

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,
● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
● An estate (other than a foreign estate), or
● A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 10-2007)

2

## LOGUE FAMILY REVOCABLE TRUST AGREEMENT

### DATED AUGUST 25, 2006

We, PETER G. LOGUE and ROBIN I. LOGUE, husband and wife of Sunrise, Broward County, Florida, as Settlors or Grantors, have conveyed and assigned to ourselves, as Trustees, the property described in Schedule "A" attached hereto, and we hereby declare that we and our successors, as Trustees, shall hold and administer all such property and all other property at any time or times hereafter transferred (including, among other things, any property transferred by reason of our deaths) to the Trustee, and the proceeds of all such property and all investments and reinvestments thereof (sometimes hereinafter called the "Trust Estate'), in trust, as hereinafter set forth.

### WITNESSETH

WHEREAS, Settlors have transferred certain property into the said Trust and desires that the same be held pursuant to the terms hereof.

### ARTICLE I

### NAME OF TRUST

This declaration and the Trust estate hereby created, and as at any time amended prior to our deaths, shall be known as the "LOGUE FAMILY REVOCABLE TRUST DATED AUGUST 25, 2006".

### ARTICLE II

### AMENDMENT, REVOCATION AND INCAPACITY

A.   At any time or times during the lifetime of either of the Settlors when competent, they shall have the right and power to

1

amend or revoke this Declaration of Trust, in whole or in part, by delivery of a written instrument to the then acting Trustee. If both or either of the Settlors shall revoke this Declaration of Trust in whole or in part, all assets of the Trust Estate made subject to the revocation shall be delivered to the Settlors. The foregoing powers are personal to the Settlors and may not be exercised by any legal representative.

B.    For the purpose of the Trust created herein, if our attending physician together with one trustee, unanimously agree that by reason of accident, physical or mental illness, mental deterioration or other similar cause, it is in the best interests that a Trustee be removed and that our Successor Trustee(s) named herein, become the Trustee of our Trust, then the above individuals shall sign a written statement of incapacity in a form substantially the same as that attached hereto as Schedule "B". In the event either initial trustee should predecease the other or be unwilling or unable to determine capacity of a Trustee to act then we appoint our niece, MELISSA KOSLOSKI to have the authority to consult with our attending physician and execute Schedule "B" with our physician should they jointly determine if a trustee is unable to continue to act.

C.    When in the process of determining Grantor's or Trustee's mental or physical condition, illness, injury, disability or incapacity, all individually identifiable health information and medical records may be released to the person who is nominated as Successor Trustee, to include any written opinion relating to my

2

incapacity that the person so nominated may have requested. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act of 1996 (a/k/a HIPPA), 42 U.S.C.1330d and 45 C.F.R 160-164, and applies even if that person has not yet been appointed or begun to act as Successor Trustee. My Successor Trustee's exercise of the powers under this Paragraph shall not be deemed event: (1) in which treating my Successor Trustee as personal representative could endanger me for purposes of 45 C.F.R.Section 164.502(g)(5)(i)(B) or (2) in which it is not in my best interest for my Successor Trustee to be treated as my personal representative for purposes of 45 C.F.R. Section 164.502(g)(5)(ii).

D.   This instrument shall become irrevocable upon the death of both Settlors.

E.   Grantors reserve the right to reside upon any real property placed into this trust as Grantor's permanent residence during Grantor's lifetime, it being the intent of this provision to preserve in Grantor the requisite beneficial interest and possessory right in and to such real property, to comply with Section 196.0321 of the Florida Statutes, such that Grantor's possessory right constitutes in all respects, "equitable title to real estate", as that term is used in Section 6, Article 7 of the Constitution of the State of Florida. Notwithstanding anything contained in this trust agreement to the contrary, the interest of Grantor in any real property on which the Grantors reside pursuant to the provisions of this trust shall be deemed to be an interest

3

of real property and not personalty.

## ARTICLE III

### PAYMENT OF NET INCOME AND PRINCIPAL DURING LIFETIME

A.    The Trustees shall pay all of the net income of the Trust Estate to the Settlors in convenient installments, or as directed from time to time in writing, and shall distribute such part or all of the principal of the Trust Estate as directed at any time or times request in writing.

B.    The provisions of paragraph A. of this Article to the contrary notwithstanding, if a Successor Trustee shall replace the initial Trustee as is provided in Article II, B. above, the Trustees shall pay the Settlor or apply for their benefit such part or all of the net income and principal (even to the point of completely exhausting the principal) of the Trust Estate as the Trustee shall deem desirable to provide for their comfort, support, welfare, medical care and best interest. Any net income not so paid or applied in any accounting year shall be added to the principal of the Trust Estate.

## ARTICLE IV

### TRUST ADDITIONS

The Settlors, or any other person may make Trust additions in the form of insurance policies or other property, by making such insurance payable or transferring the property to Trustee by gift, bequest or devise, and if so added the proceeds of such policies and such property shall be held in Trust and distributed in accordance with this instrument. Trustee is specifically empowered

4

to accept Trust additions of any of Settlor's assets from any person holding a valid power of attorney of Settlor.

## ARTICLE V

### SPENDTHRIFT PROVISION

When the Trust created herein become irrevocable, the interest of each beneficiary in income and principal shall be free from the control or interference of any creditor or such beneficiary or the spouse of a married beneficiary, or the parent of a child beneficiary, and shall not be subject to assignment either voluntarily or involuntarily.

## ARTICLE VI

### PAYMENT OF DEBTS AND ESTATE EXPENSES

Upon the death of either Settlor, the Trustee shall first pay, from those assets of the Trust Estate includable in the gross estate for Federal Estate tax purposes, either directly or to the Personal Representative of the Estate, all of the debts legally enforceable (other than debts secured by life insurance or real property), all expenses of the Settlors last illness, and administration of the Estate, and all estate, inheritance, transfer and succession taxes (including any interest and penalties thereon) which become due by reason of death, other than any tax on any generation skipping transfer as too which the Settlor is deemed transferor. The Trustee shall also pay all of the funeral expenses either directly or to the Personal Representative of the Estate to the extent that sufficient funds are not already available to the

5

Personal Representative.  The Trustee shall consult the Personal Representative of the Estate with respect to the amounts and payments of such debts, expenses and taxes, but shall not seek reimbursement from any person for any taxes, penalties, interest, debts or expenses paid pursuant to the provisions of this Trust.

ARTICLE VII

DISTRIBUTION OF TRUST ESTATE UPON DEATH OF SECOND SETTLOR

Upon the second Settlor's death, the Successor Trustee shall continue the administration of this Trust for the purposes herein expressed and specifically set forth herein.  The Successor Trustee shall marshall all of the trust assets and shall distribute the entire distributable trust estate, including any property received under the Settlor's Will or otherwise, as follows:

After payment of administration expenses, taxes, both estate and income, the rest, residue and remainder of the Trust corpus and any additions thereto, shall be distributed as follows:

A.   All of the trust assets to PETER'S DAUGHTER, ELIZABETH A. LOGUE,  who currently resides at 14873 Brookview Drive, #301, Riverview, MI 48192.  In the event that she should predecease leaving issue surviving, then her distribution shall pass to such issue, per stirpes.  In the event she should predecease leaving no issue surviving, then her distribution shall pass to our niece, MELISSA KOSLOSKI.  In the event she should predecease, then the distribution shall pass to her lineal descendants, per stirpes.

6

ARTICLE VIII

TRUSTEES

Effective upon the death of either Trustee, or in the event that either of the Trustees shall cease to serve as Trustee, we appoint our niece, MELISSA KOSLOSKI, to be the Successor Trustee and further direct that she may serve as sole trustee. I direct that no bond be required of the Trustees herein named.

ARTICLE IX

POWERS AND DUTIES OF TRUSTEES

As to the Trustees, including any successor Trustee, we provide as follows:

A.   Trustee has the duty of administering the Trust Estate in accordance with the terms of this instrument and all consistent trust law of general applicability and in a manner which in his opinion is in the best interests of the Trust Estate and of its beneficiaries.  The discretionary and ministerial powers of Trustee are exercisable only in a fiduciary capacity.  Subject to other provisions of this instrument, these powers are intended to be broadly construed to permit Trustee to act in a manner he deems to be in the best interest of the Trust Estate or of its beneficiaries.  No statute with respect to under productive property shall apply to this Trust.

B.   Trustees and their successors shall be permitted to qualify and serve in any jurisdiction without giving bond or other security and shall be excused from making accountings or other reports to any court.

7

C.   Upon request, Trustee shall render an annual statement of the receipts and disbursements of the income and principal of the Trust and the condition of the Trust Estate to each beneficiary.

D.   No person transacting business with Trustee in connection with the purchase or sale of securities or other property, the sale or lease of real property, the borrowing or lending of money, the making of any other contract or the voting of shares of stock shall be required to inquire into Trustee's capacity or authority to act or to see to the application or disposition of any money or other property paid, loaned or delivered to Trustee.

E.   Under this agreement, Trustee will be chargeable only for the monies, stocks, property, funds, shares and securities which said trustee actually receives, notwithstanding Trustee's having signed any receipt for the sake of conformity.   Trustee shall be answerable and accountable only for his or her own acts, receipts, negligence and defaults and not for those of any other person for whom or into whose hands any trust property monies or securities may be deposited, nor shall he or she be liable for the insufficiency or deficiency of any stocks, funds, property, shares or securities, nor for any other loss, unless it shall have occurred through his/her own willful default.

F.   Trustee may resign by giving proper notice to the beneficiaries of this Trust.   He/she shall give reasonable notice of his or her resignation in order to allow time for the designation of a successor (if one is not named) and he/she shall account to the Successor Trustee.

8

G.    In case there is at any time a vacancy in a position held by the named Trustee or Successor Trustee under this Agreement as hereinabove provided for because of the ineligibility of Trustee or for any other reason except where otherwise provided, then in such event a Successor shall be appointed by a majority vote of the income beneficiaries.  Any minor beneficiary entitled to vote under this paragraph shall be represented by his or her parent or, if both parents are dead, by that beneficiary's duly appointed guardian.

H.    Notwithstanding anything herein to the contrary, if any political, social or economic conditions or changes in the laws of taxation arise which in the opinion of Trustee make it advisable and in the best interest of the beneficiaries that this Trust or any share hereunder be entirely terminated or if at any time the principal of any trust or share created hereunder is too small to justify the continuation of the Trust, then Trustee(s) may terminate the Trust or share and distribute the principal thereof and any accumulated income thereon to the beneficiary or beneficiaries for whose benefit it is held.

I.    In addition to the powers, privileges and immunities conferred upon the Trustees by Chapter 518, 737 and 738 of the Florida Statutes, and the decisional law of the State of Florida, the Trustees have the power and authority with respect to the Trusts created herein and their assets:

1.    To retain in the form received any property or undivided interests in property donated to, or otherwise acquired

9

as a part of the Trust Estate, including residential property and shares of any corporate Trustee's own stock, regardless of any lack of diversification, risk or non-productivity, as long as he/she deems advisable, and to exchange any such security or property for other securities or properties and to retain such items received in exchange, although said property represents a large percentage of the total property of the Trust Estate or even the entirety thereof.

2.   To invest and reinvest all or any part of the Trust Estate in any property and undivided interest in property, wherever located, including bonds, debentures, notes (secured or unsecured), stocks of corporations regardless of class, shares of limited liability companies, interests in limited partnerships, real estate or any interest in real estate (whether or not productive at the time of investment), interest in trusts, investment trusts (whether of the open and/or closed fund types and participation in common), collective or pooled trust funds of the Trustee, insurance contracts on the life of any beneficiary or annuity contracts for any beneficiary, without being limited by any statute or rule of law concerning investments by fiduciaries.

3.   To sell or dispose of or grant options to purchase any property, real or personal, constituting a part of the Trust Estate, for cash or upon credit, to exchange any property of the Trust Estate for other property, at such times and upon such terms and conditions as he/she may deem best, and no person dealing with it shall be bound to see to the application of any monies paid.

10

4.    To hold any securities or other property in his/her own name as Trustee, in their own names, in the name of a nominee (with or without disclosure of any fiduciary relationship) or in bearer form.

5.    To keep, at any time and from time to time, all or any portion of the Trust Estate in cash and uninvested for such reasonable period or periods of time as she may deem advisable, without liability for any loss in income by reason thereof.

6.    To sell or exercise stock subscription or conversion rights.

7.    To refrain from voting or to vote shares of stock owned by the Trust Estate at shareholders' meetings in person or by special, limited or general proxy and in general to exercise all the rights, powers and privileges of an owner in respect to any securities constituting a part of the Trust.

8.    To participate in any plan of reorganization or consolidation or merger involving any company or companies whose stock or other securities shall be part of the Trust Estate, and to deposit such stock or other securities under any plan of reorganization or with any protective committee and to delegate to such committee discretionary power with relation thereto to pay a proportionate part of the expenses of such committee and any assessments levied under any such plan, to accept and retain new securities received by the Trustee pursuant to any such plan, to exercise all conversion, subscription, voting and other rights, of whatsoever nature pertaining to such property, and to pay any

11

amount or amounts of money as he/she may deem advisable in connection therewith.

9.   To borrow money and to encumber, mortgage or pledge any asset of the Estate for a term within or extending beyond the term of the Trust, in connection with the exercise of any power vested in the Trustees.

10.   To enter for any purpose into a lease as lessor or lessee with or without option to purchase or renew for a term within or extending beyond the term of the Trust.

11.   To subdivide, develop or dedicate real property to public use or to make or obtain the vacation of plats and adjust boundaries, to adjust differences in valuation on exchange or partition by giving or receiving consideration, and to dedicate easements to public use without consideration.

12.   To make ordinary or extraordinary repairs or alterations in buildings or other structures, to demolish any improvements, to raise existing or erect new party walls or building.

13.   To continue and operate any business owned by me at my death and to do any and all things deemed needful or appropriate by the Trustee, including the power to incorporate the business, for such time as they shall deem advisable, without liability for loss resulting from the continuance or operation of the business, except for their own negligence; and to close out, liquidate or sell the business at such time and upon such terms as he/she shall deem best.

12

14.    To collect, receive and receipt of rents, issues, profits and income of the Trust Estate.

15.    To insure the assets of the Trust Estate against damage or loss and the Trustees against liability with respect to third persons.

16.    In buying and selling assets, in lending and borrowing money, and in all other transactions, irrespective of the occupancy by the same person of dual positions, to deal with themselves in their separate, or any fiduciary, capacities.

17.    To compromise, adjust, arbitrate, sue on or defend, abandon or otherwise deal with and settle claims in favor of or against and Estate as the Trustee shall deem best.

18.    To employ and compensate agents, accountants, investment advisors, brokers, appraisers, attorneys-in-fact, attorneys-at-law, tax specialists, realtors and other assistants and advisors deemed by the Trustee needful for the proper administration of the Trust Estate, and to do so without liability for any neglect, omission, misconduct or default of any such agent or professional representative provided he or she was selected and retained with reasonable care.

19.    To determine, irrespective of statute or rule of law, what shall be fairly and equitably charges or credited to income and what to principal notwithstanding any determination by the court or by any custom or statute, and whether or not to establish depreciation reserves.

20.    To hold and retain the principal of the Trust Estate

13

undivided until actual division shall become necessary in order to make distributions; to hold, manage, invest, and account for the several shares or parts thereof by appropriate entries on the Trustee's books of account; and to allocate to each share or part of share its proportionate part of all receipts and expenses; provided, however, the carrying of several trusts as one shall not defer the vesting in title or in possession of any share or part of share thereof.

21. To make payment in cash or in kind, or partly in cash and partly in kind upon any division or distribution of the Trust Estate (including the satisfaction of any pecuniary distribution) without regard to the income tax basis of any specific property allocated to any beneficiary and to value and appraise any asset and to distribute such asset in kind at its appraised value.

22. In general, to exercise all powers in the management of the Trust Estate which any individual could exercise in his or her own rights, upon such terms and conditions as he or she may deem best, and to do all acts which he/she may deem necessary or proper to carry out the purposes of this Trust.

23. To purchase property, real or personal, from the Estate of the Settlors upon such terms and conditions as to price and terms of payment as my Personal Representatives and the Trustee shall agree, to hold the property so purchased in the Trust, although it may not qualify as an authorized trust investment, except for this provision, and to dispose of such property as and

14

when the Trustee shall deem advisable. The fact that the Personal Representative and the Trustee are the same shall in no way affect the validity of this provision.

24. To lend funds to Settlors Estate upon such terms and conditions as to interest rates, maturities and security as the Personal Representative and the Trustee shall agree. The fact that the Personal Representative and the Trustee are the same shall in no way affect the validity of this provision.

25. To receive property bequeathed, devised or donated to the Trustee by me or any other person; to receive the proceeds of any insurance policy which names any Trustee as beneficiary; to execute all necessary receipts and releases to personal representatives, donors, insurance companies and other parties adding property to the Trust Estate.

ARTICLE X

CERTIFIED COPIES OF TRUST

To the same effect as if it were the original, any person or institution may rely upon a copy certified by a notary public to be a true copy of this instrument and any schedules or exhibits attached hereto.   ARTICLE XI

LOCATION OF DOCUMENTS

This Declaration of Trust has been prepared in duplicate, each copy of which has been executed as an original. Either copy may be used as an original without the other and, if only one copy of this Declaration of Trust can be found, then it shall be considered as the original and the missing copy will be presumed inadvertently

15

lost.

## ARTICLE XII

### INEFFECTUAL PROVISION

If any provision of this Declaration of Trust is unenforceable, the remaining provisions, nevertheless, shall be carried into effect.

## ARTICLE XIII

### DEFINITIONS AND CONSTRUCTION

This Declaration of Trust shall be construed as follows and the following terms have the following meanings:

1.   "Distribute to" includes a payment directly to a beneficiary or a payment for the benefit of such beneficiary made to a third party;

2.   "Descendants" include all lineal descendants of a person, of whatever degree; and

3.   "Trustee" shall also be considered to be plural where necessitated by the appointment of Co-Trustees.

4.   "Net Income" means the trust income, determined in accordance with generally accepted trust accounting principles (as modified by other provisions of this instrument), after payment of taxes and all reasonable and necessary expenses, including compensation of Trustee, except, however, my Trustee's determination of allocation of an item to income or principal shall be final, as long as such allocation is done in good faith by my Trustees.

5.   This Trust has been established and shall be governed and

16

construed according to the laws of the State of Florida.

6.    References in this instrument to fiduciaries and beneficiaries shall apply to any fiduciary serving hereunder at any time and to any beneficiary hereunder, whether he, she or it is specifically names and regardless of whether the reference is singular or plural in number or whether it is in masculine, feminine or neuter gender.

7.    The Trustees hereby accept the Trust established herein.

IN WITNESS WHEREOF, We have hereunto set our hands and seals as Settlors and Trustees on the 25th day of August, 2006.

_____
PETER G. LOGUE, as Settlor/Grantor

_____
PETER G. LOGUE, as Trustee

_____
ROBIN I. LOGUE, as Settlor/Grantor

_____
ROBIN I. LOGUE, as Trustee

SIGNED, SEALED, PUBLISHED and DECLARED by PETER G. LOGUE and ROBIN I. LOGUE, the Settlors/Grantors and Trustees, as and for the LOGUE FAMILY REVOCABLE TRUST AGREEMENT DATED AUGUST 25, 2006 in the presence of us and each of us, who, at their request, in their presence and in the presence of each other, have hereunto subscribed our names as witnesses on the date first above written.

_____  of  Fort Lauderdale, Florida

_____  of  Fort Lauderdale, Florida

17

STATE OF FLORIDA

COUNTY OF BROWARD

We, the undersigned, being the Settlors/Grantors and Trustees and the witnesses, respectively, whose names are signed to the foregoing instrument, and having been sworn, do hereby declare to the undersigned officer that the Settlors and Trustees, in the presence of the witnesses, signed the instrument as their Family Revocable Trust, that they signed willingly; and that each of the witnesses, in the presence of the Settlors and Trustees and in the presence of each other, signed the LOGUE FAMILY REVOCABLE TRUST DATED AUGUST 25, 2006, as a witness.

_____
PETER G. LOGUE, Settlor and Trustee

_____
ROBIN I. LOGUE, Settlor and Trustee

_____
JOHN E. AURELIUS, Witness

_____
DORIS E. AURELIUS, Witness

Subscribed and sworn to before me by PETER G. LOGUE and ROBIN I. LOGUE, the Settlors\Grantors and Trustees, and by JOHN E. AURELIUS and DORIS E. AURELIUS, the witnesses, on the 25 day of August, 2006, all of whom personally appeared before me. PETER G. LOGUE AND ROBIN I. LOGUE have produced their Driver's License as identification. JOHN E. AURELIUS and DORIS E. AURELIUS are personally known to me.

_____
Notary Public
Name Printed: _GEORGETTE R. COSTAS_

My Commission Expires:

18

SCHEDULE "A"

(Attached to and creating a part of the LOGUE FAMILY REVOCABLE TRUST AGREEMENT DATED AUGUST 25, 2006.

The following described property has been conveyed and assigned to the Trustee:

Cash in the sum of $100.00

PETER G. LOGUE, Settlor\Grantor

ROBIN I. LOGUE, Settlor\Grantor

19

## SCHEDULE "B"

### STATEMENT OF INCAPACITY OF SETTLORS

The undersigned, after having given much thought to the circumstances, unanimously agree that PETER G. LOGUE or ROBIN I. LOGUE are incapacitated to such an extent that he or she is unable to properly manage their affairs and it is in their best interest and the undersigned therefore deem it necessary and advisable that PETER G. LOGUE or ROBIN I. LOGUE, or both be removed as Trustee of the LOGUE FAMILY REVOCABLE TRUST AGREEMENT DATED AUGUST 25, 2006 and that the Successor Trustee shall now be the Trustee of the LOGUE FAMILY REVOCABLE TRUST AGREEMENT DATED AUGUST 25, 2006.

The undersigned further agree that, unless circumstances change to such an extent that PETER G. LOGUE AND/OR ROBIN I. LOGUE shall no longer be considered by the undersigned to be incapacitated, the Successor Trustee shall remain Trustee for the remainder of their life.   In the event that the undersigned determine that PETER G. LOGUE AND/OR ROBIN I. LOGUE is no longer incapacitated, a Revocation of Statement of Incapacity shall be signed by the undersigned, or their then current attending physician, and they shall again become the Trustee of the Revocable Family Trust.

_____

MELISSA KOSLOSKI

_____

ATTENDING PHYSICIAN

20

STATE OF _____
COUNTY OF _____

    The foregoing instrument was acknowledged before me this ___ day of _____, 20_____ by MELISSA KOSLOSKI, who is personally known to me or who has produced _____ _____ as identification.

                                        _____
                                        Printed Name:_____
                                        Notary Public

My Commission Expires:


STATE OF _____
COUNTY OF _____

    The foregoing instrument was acknowledged before me this ___ day of _____, 20_____ by _____ , as attending physician, who is personally known to me or who has produced _____ as identification.

                                        _____
                                        Printed Name:_____
                                        Notary Public

My Commission Expires:

21