**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, ) ) ) Plaintiff ) ) v. ) ) BERNARD L. MADOFF INVESTMENT SECURITIES, LLC ) ) ) Defendant ) ) | SIPA LIQUIDATION<br><br>Case No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |

**DECLARATION OF CHRISTOPHER H. LAROSA IN SUPPORT**
**OF MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN SUPPORT OF TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S**
**DETERMINATIONS DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS**
**ACCOUNTS IN THEIR NAMES, NAMELY, INVESTORS IN FEEDER FUNDS**

Pursuant to 28 U.S.C. § 1746, I, Christopher H. LaRosa, hereby declare:

1. I am Associate General Counsel with the Securities Investor Protection Corporation ("SIPC"), located at 805 Fifteenth Street, N. W., Suite 800, Washington, D. C. 20005.

2. SIPC maintains a file containing true and correct copies of orders and judgments that have been entered in liquidations conducted under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq. ("SIPA").

3. In my capacity as SIPC's Associate General Counsel, and in connection with this matter, I searched SIPC's file for the orders and judgments entered in the SIPA liquidation of First Ohio Securities Company ("First Ohio"), which involved proceedings before the United States Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court"), the United

States District Court for the Northern District of Ohio ("District Court"), and the United States

Court of Appeals for the Sixth Circuit.

4. SIPC files regarding the First Ohio liquidation contain orders entered by the

Bankruptcy Court and District Court on December 23, 1991 and February 18, 1993, respectively.

True and correct copies of those orders are attached hereto as Exhibits 1 and 2, respectively.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

June 11, 2010.

CHRISTOPHER H. LAROSA

# Exhibit 1

\#799

FILED

91 DEC 23 AM 10: 50   IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
AKRON

CASE NO. 590-0072
(SIPA)

FIRST OHIO SECURITIES CO.

     Debtor

<u>ORDER RE:
OBJECTIONS TO THE
TRUSTEE'S
DETERMINATION OF
CLAIMS</u>

In accordance with the Finding entered by this court on

the _23rd_ day of _Dec._ , 1991

IT IS ORDERED that:

(1)  David and Violet Stansberry are entitled to one cash
claim against the SIPC fund in an amount not to exceed
$100,000;

(2)  The Plumbers and Steamfitters Local No. 490
Severance and Retirement Fund is entitled to one cash claim
against the SIPC fund in an amount not to exceed $100,000;

(3)  The International Brotherhood of Electrical Workers
Local No. 540 Pension Fund is entitled to one cash claim
against the SIPC fund in an amount not to exceed $100,000;

(4)  The Bricklayers Local No. 55 Health and Welfare Fund
is entitled to one cash claim against the SIPC fund in an
amount not to exceed $100,000;

(5)  The claim of the Individual Participants in the
International Brotherhood of Electrical Workers Local No. 540



<u>EXHIBIT</u>

tabbies

AO 72A
(Rev. 8/82)

Pension Fund and the Plumbers and Steamfitters Local No. 490

Severance and Retirement Fund is denied.

H. F. White
Bankruptcy Judge

'2A
8/82)

2

FILED

91 DEC 23 AM 10: 50

CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

IN RE:

FIRST OHIO SECURITIES CO.

    Debtor

CASE NO. 590-0072
(SIPA)

FINDINGS RE:
OBJECTIONS TO THE
TRUSTEE'S
DETERMINATION OF
CLAIMS

    This matter is before the court on the objections filed
by the International Brotherhood of Electrical Workers Local
No. 540 Pension Fund ("IBEW"); the Plumbers and Steamfitters
Local No. 490 Severance and Retirement Fund ("Steamfitters");
the Bricklayers Local No. 55 Health and Welfare Fund
("Bricklayers"); the individual participants of the 540 and
490 Funds; and David and Violet Stansberry ("the Stansberrys")
(collectively "claimants").[1]  These claimants question the
correctness of the claims determination made by the Trustee
pursuant to the debtor's liquidation under the Securities
Investor Protection Act ("SIPA").

FINDINGS OF FACT

    1.  Debtor, First Ohio Securities Company ("FOSC") was a
"fully disclosed" securities broker-dealer formed for the
purpose of buying and selling securities to the public.  Mr.

------

[1]  The objection of John and Helen Kuemerle which was filed
on March 18, 1991 was withdrawn by Order of December 23, 1991.
The objection of Harry and Mary Hardy has been continued.

AO 72A
(Rev. 8/82)

Thomas P. Gilmartin, Jr., was FOSC's chairman and sole common stockholder.[2]

2.   On June 22, 1990, pursuant to an application by the Securities Investor Protection Corporation ("SIPC"), the United States District Court for the Northern District of Ohio entered an order placing FOSC in a liquidation proceeding under the Securities Investor Protection Act ("SIPA"), appointing Joseph Patchan, Esq., as Trustee ("Trustee") for the liquidation proceeding and removing the proceeding to the bankruptcy court.[3]

3.   As part of his duties under SIPA, the Trustee makes a determination of customer claims.  Therefore, on July 30, 1990, pursuant to the procedures mandated by SIPA, the Trustee notified FOSC's customers and creditors of the pending liquidation and informed them of the process by which they were to file any claims they may have against FOSC.

4.   The Stansberrys filed a claim for securities in the amount of $190,000 pursuant to the money they gave to FOSC for investment in the All American Fund ("AAF").  The AAF was purported to be a mutual fund investing in Northeastern Ohio manufacturing businesses.  The Trustee determined that the Stansberrys' claim should be paid as a claim for "cash" in the amount of $100,000 since the "security" in which the

---

2/   Mr. Gilmartin has filed an individual Chapter 7 bankruptcy proceeding in this court:  Case No. 590-1242.

3/   On April 19, 1991, William Appleton succeeded Joseph Patchan as Trustee.

Stansberrys had invested never existed. (See Exhibit No. 3 attached to Docket No. 60)

5.   The Steamfitters filed a claim for securities in the amount of $1,344,220.21, plus accrued interest and a claim for cash in the amount of $103,810.11. The Trustee determined that the Steamfitters' claims should be allowed as a claim for "cash" in the amount of $100,000 since the "security" in which the Steamfitters had invested never existed. (See Exhibit No. 17 attached to Docket No. 61)

6.   The IBEW filed a claim for securities in the amount of $1,440,732.14 plus accrued interest. The Trustee determined that the IBEW's claim should be allowed as a claim for "cash" in the amount of $100,000 since the "security" in which the IBEW had invested never existed. (See Exhibit No. 23 attached to Docket No. 62)

7.   The Bricklayers filed a claim for securities in the amount of $200,000 plus accrued interest. The Trustee determined that the Bricklayers' claim should be allowed as a claim for "cash" in the amount of $100,000 since the "security" in which the Bricklayers had invested never existed. (See Exhibit No. 3 attached to Docket No. 64)

8.   The Trustee determined that the claims filed on behalf of the individual participants in both the IBEW 540 Fund and the Steamfitters 490 Fund should be denied because the individual claimants were not "customers" of the debtor, the securities were not "customer name securities" and the

securities were not "customer property" within the meaning of
SIPA. (See Exhibit No. 1 attached to Docket No. 59)

9. With the exception of the claims filed by the
individual participants in the IBEW 540 Fund and the
Steamfitters 490 Fund, the Trustee has paid each of the
claimants $100,000 on their claims. The claims of the
individual participants were denied.

10. A hearing on the objections was held on May 9, 30,
and 31, 1991. Mr. Howard Klein, who is a forensic accountant,
testified as an expert witness for the Trustee. Mr. Klein has
been employed by the Trustee to investigate the books and
records of FOSC. This court is familiar with the expertise
and qualifications of Mr. Klein, since he has testified as an
expert witness in other cases before this court.

11. The Stansberrys gave Mr. Gilmartin two checks
payable to FOSC and totalling $190,000 for the purchase of
shares in the AAF. Mr. Gilmartin told them that this money
would be invested in companies located in Northeastern Ohio in
order to enable those companies to compete with foreign
imports. (Stansberry Exhibit No. 5 and May 9 Tr. pp. 36-40,
45) (The citations to "Tr." refer to the transcripts from the
May 9, 30, and 31, 1991 hearing, Docket Nos. 111-113.) The
"New Account Form" that Mr. Stansberry filled out when he
invested with FOSC shows that the Stansberrys were put on
notice that their account was a "JTWROS" account, i.e., an
account in joint tenancy with the right of survivorship. The
Stansberrys were listed on FOSC's books and records as a

"JTWROS" account. (Stansberry Exhibits Nos. 6 & 7 and May 9
Tr. p. 48)  The Stansberrys' checks were deposited at the
First National Bank of Ohio in account number 5068-7886.  (May
30 Tr. pp. 164-166, 172)  This bank account was in the name of
First Ohio Investment Company ("FOIC").  (May 30 Tr. pp. 165,
172)  FOIC was found to be merely a "dba" of Mr. Gilmartin.
(May 31 Tr. pp. 33-34)  Even though the Stansberrys received
several interest payments from their investment, the evidence
shows that no funds from the FOIC account were ever used to
purchase an investment in the AAF for the Stansberrys.  (May 9
Tr. p. 54 and May 30 Tr. p 174)  Although during his
investigation Mr. Klein had seen documents pertaining to the
AAF, there was nothing to show that such an entity actually
had been formed.  (May 30 Tr. pp. 182-183, May 31 Tr. pp. 15-
16)  Although there is an existing corporation called "All
America Fund, Inc.", there never was an AAF.  All of the cash
that was intended to go into the AAF went into the FOIC
account instead and was commingled with Mr. Gilmartin's
personal assets.  (May 31 Tr. pp. 15-16, 34, 56-57, 67-68 &
83-84)

12.  The Plumbers and Steamfitters Local No. 490
Severance and Retirement Fund is a union-negotiated defined
contribution pension and severance plan.  (May 30 Tr. p. 24)
The Fund is under the control of a Board of Trustees pursuant
to a Trust document and it is the Trustees who make the
investment decisions for the Fund.  (May 30 Tr. pp. 27 & 84)
Each individual participant in the Fund earns interest on his

own contribution, but has no direct voice in investment
decisions concerning the Fund. (May 30 Tr. pp. 82-83)  The
Steamfitters' account with FOSC was not in the name of the
individuals who contributed to the Fund, but was in the name
of the Steamfitters. (May 30 Tr. p. 82)  The Fund is
administered by a contract administrator which acts as an
advisor to the Trustees concerning the daily operations of the
Fund. (May 30 Tr. pp. 27-28, 69)  The Steamfitters' Trustees
believed that they were investing funds in FOSC for three
certificates of deposit. (May 30 Tr. p. 45)  Even though the
Steamfitters received confirmation statements from FOSC
documenting the purchase of the certificates of deposit, there
is no indication in FOSC's books and records that any
certificates of deposit were purchased on the Steamfitters'
behalf. (May 30 Tr. pp. 51-52, 54-57, 166-169, 173-174)
However, there is evidence that the confirmation statements
were fraudulent and that the funds that the Steamfitters gave
to FOSC were deposited in the FOIC account and used by Mr.
Gilmartin for his personal benefit. (May 30 Tr. pp. 166-170,
175-178 and May 31 Tr. pp. 16 & 83-84)

13. The International Brotherhood of Electrical Workers
Local No. 540 Pension Fund is a Multi-employer 401(k) defined
benefit pension plan. (May 9 Tr. p. 63)  The Fund is governed
by a Board of Trustees and administrated by a contract
administrator. (May 9 Tr. pp. 26 & 64, 69-70)  The individual
participants in the Fund could not participate in making
investment decisions concerning the Fund. Those decisions

6

\O 72A
Rev. 8/82)

were made by the Board of Trustees. (May 9 Tr. pp. 28-31, 69-70, 101) The Fund invested money with FOSC for certificates of deposit. (May 9 Tr. pp. 64-67, 69-70, 74-75, 80) Just as with the Steamfitters, the IBEW received fraudulent confirmation statements from FOSC purporting to document the purchase of the certificates. (May 9, Tr. pp. 70-72, 76, 79, 81, May 30, Tr. pp. 175-178) There is no evidence that the certificates ever existed; however, there is evidence that the IBEW's funds were deposited into the FOIC account and used by Mr. Gilmartin for his personal benefit. (May 9 Tr. p. 75; May 30 Tr. pp. 164-167, 171, 173 and May 31 Tr. pp. 80-83)

14. The Bricklayers Local No. 55 Health and Welfare Fund is a negotiated hospitalization, life insurance, and weekly disability benefit plan. (May 30 Tr. p. 114) It is governed by a Trust Agreement and a Board of Trustees. The Bricklayers also have investment advisors. (May 30 Tr. p. 115) Although the Fund comprises the participants' individual contributions, the individual participants in the Fund have no direct input in making investment decisions. (May 30 Tr. pp. 132-134) The only way that the individual participants have any input as to how the Fund is handled is through their election of the labor Trustees. (May 30 Tr. p. 134) The Bricklayers believed that they were purchasing certificates of deposit by investing in a Pension & Public Funds Trust Account ("PPFTA"). (May 30 Tr. p. 136) However, the PPFTA never existed. (May 31 Tr. pp. 2-3, 6-7) Instead, the Bricklayers' money went into the FOIC account and was used for Mr. Gilmartin's personal benefit.

(May 30 Tr. p. 171 and May 31 Tr. pp. 80-83)   The Bricklayers
received a "statement" from FOSC purporting to reflect the
purchase of the certificates of deposit.   (May 30 Tr. pp. 128-
129)   However, when they failed to receive an actual
confirmation of the purchase, they were alerted that there
might be a problem.   (May 30 Tr. p. 129)

<u>ISSUE</u>

Should this court ratify the Trustee's determination of
these claims?

<u>CONCLUSIONS OF LAW</u>

This court has jurisdiction to determine this question
pursuant to 28 U.S.C. § 157(b)(1) which provides:

> Bankruptcy judges may hear and
> determine all cases under title 11 and all
> core proceedings arising under title 11,
> or arising in a case under title 11,
> referred under subsection (a) of this
> section, and may enter appropriate orders
> and judgments, subject to review under
> section 158 of this title.

Title 28 U.S.C. § 157(b)(2)(B) provides that core
proceedings shall include allowance or disallowance of claims
against the estate.

The claimants in this proceeding object to the Trustee's
determination of their claims pursuant to the Securities
Investor Protection Act, 15 U.S.C. §§ 78aaa, <u>et seq</u>.   SIPA was
enacted by Congress in 1970 to protect individual investors
from financial hardship resulting from broker-dealer failures.
The Securities Investor Protection Corporation is a non-profit
corporation which comprises most registered brokers-dealers.

.O 72A
Rev. 8/82)

Members of SIPC are assessed in order to create a fund which is used to satisfy customer claims resulting from broker-dealer insolvencies.  See 15 U.S.C. §§ 78aaa et seq. and H.R. Rep. No. 1613, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S. Code Cong. & Admin. News 5254, 5257.  Pursuant to 15 U.S.C. § 78fff-3(a), SIPC funds are available for the satisfaction of customer claims to the extent that the customers' net equities exceed their ratable share of customer property.  Section 78fff-3 provides in part:

> (a) ADVANCES FOR CUSTOMERS' CLAIMS
>
> In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property, except that--
>
> (1) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is a claim for cash, as distinct from a claim for securities, the amount advanced to satisfy such claim for cash shall not exceed $100,000 for each such customer;

A SIPA liquidation is essentially a bankruptcy proceeding which has been remodelled to achieve the special purposes of SIPA.  See Matter of Bevill, Bresler & Schulman, Inc., 83 B. R. 880, 886 (D.N.J. 1988); Securities Investor Protection Corporation v. Ambassador Church Finance/Development Group, Inc., 788 F. 2d 1208, 1210 (6th Cir. 1986), cert. denied sub nom. Pine Street Baptist Church v. Securities Investor Protection Corp., 479 U. S. 850 (1986) and Title 15 U.S.C.

O 72A
iev. 8/82)

§ 78fff(b). In order to show that he is entitled to SIPC protection, the claimant must show that he was a "customer" of an insolvent broker-dealer. "An investor is entitled to compensation from the SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC trust fund." In re Brentwood Securities, Inc., 925 F. 2d 325, 327 (9th Cir. 1991) The burden of proof of a claim falls upon the claimant since § 78fff-2(b) provides that a Trustee shall promptly discharge the debtor's obligations to a customer insofar as such obligations are ascertainable from the debtor's books and records or are "otherwise established to the satisfaction of the trustee" (emphasis added). Claims are to be valued as of the "filing date"; that is, as of the date that SIPA files its application for a protective decree. A customer's claim is based on that customer's "net equity" as was shown on the debtor's books on the "filing date." In re Bell & Beckwith, 821 F. 2d 333, 335 (6th Cir. 1987); S.E.C. v. Aberdeen Securities Co., 480 F. 2d 1121, 1123-1124 (3rd Cir. 1973), cert. denied sub nom. Seligsohn v. S.E.C., 414 U.S. 1111 (1973) and 15 U.S.C. §§ 78fff and 78lll(2), (7) & (11). Although SIPA protects against customers' losses caused by the insolvency of a broker-dealer, SIPA was not designed to protect customers from fraud or breach of contract. In re Bell & Beckwith, 124 B. R. 35, 36 (Bankr. N. D. Ohio 1990) and

In re Government Securities Corp., 90 B. R. 539, 540 (Bankr.
S. D. Fla. 1988)

## THE STANSBERRYS' CLAIM

The Trustee determined that the Stansberrys' $190,000
claim should be allowed as a claim for cash in the amount of
$100,000 rather than as a claim for a security since the AAF
in which the Stansberrys believed they had invested actually
never existed. (Findings Nos. 4 & 11) This determination is
detrimental to the Stansberrys since pursuant to § 78fff-3(a)
and (a)(1), claims for securities are covered to an amount not
to exceed $500,000, while claims for cash are not to be
satisfied in an amount exceeding $100,000. The Stansberrys
argue that their claim is one for securities and that it is
not a condition precedent to payment that the securities
actually exist.

However, this court concludes that the Stansberrys have a
claim for cash, not securities, since there is no evidence
that the securities were ever purchased. (Finding No. 11) In
the Matter of Investors SEC. Corp., 6 B. R. 415 (1980), the
husband and wife claimants had given money to a representative
of an investment corporation with the understanding that the
money would be invested in certificates of deposit. There was
no evidence that the certificates had ever been purchased,
even though the claimants in that case had received timely
interest payments. When the investment corporation went into
a SIPA liquidation, the Trustee determined that the claim was

AO 72A

one for cash, while the claimants argued that the claim was one for securities. However, the court there found that the claim was one for cash and that SIPA "contemplates situations, such as this one, where money is deposited with the broker for the purpose of purchasing securities, but where the broker has failed to purchase the securities." Id. at 419. Furthermore, this court concludes that in order for the Stansberrys to have a claim for "securities", the securities must have been in existence. In Aberdeen Securities, the claimants advanced funds to a broker to purchase securities which were never issued. The Third Circuit Court of Appeals held that because the stock was not in existence, the purchase never could have been made and therefore the claim would be for cash, not for the stock itself. 480 F. 2d 1121 at 1127. See also In re Brentwood Securities, Inc., 925 F. 2d 325 at 328.

The Stansberrys further argue that they had two separate accounts with FOSC; however there is no evidence of this. The evidence shows that the Stansberrys had one "JTWROS" account, i.e., a joint account with the right of survivorship. (Finding No. 11) A joint account with the right of survivorship is entitled to one recovery. Pursuant to the Rules Relating to Satisfaction of a "Claim for Cash" or a "Claim for Securities", SIPC Rule 105 -- Joint Accounts, provides:

> (a) A joint account shall be deemed to be a "qualifying joint account" if it is owned jointly, whether by the owners thereof as joint tenants with the right of survivorship, as tenants by the entirety or as tenants in common, or by husband and

wife as community property, but only if each
co-owner possesses authority to act with respect to
the entire account.

(b) Subject to paragraph (c) of this rule, <u>each
qualifying joint account with a member shall be
deemed held by one separate customer of the member.</u>
(Emphasis added.)

In <u>SEC. Investor Protection v. Morgan, Kennedy & Co.</u>, 533
F. 2d 1314 (2d Cir. 1976), <u>cert. denied sub nom. Trustees of
Reading Body Works, Inc. v. Securities Investor Protection
Corp.</u>, 426 U. S. 936 (1976), three Trustees who jointly
managed the account for a trust which was the "true customer"
of SIPC argued that they each had a separate customer claim.
Disagreeing with this argument, the Second Circuit Court of
Appeals held that:

> If the available maximum of a SIPC advance depended
> upon the number of parties jointly holding an
> account, individuals could arbitrarily expand that
> figure at will.  Such a result is obviously
> repugnant to the plain meaning of the statute and to
> the intent of Congress in passing it.  Accordingly,
> we hold that the three trustees, by virtue of the
> trust account held by them collectively, may advance
> one customer claim only against the debtor.

<u>Id</u>. at 1321.

<u>See also</u> <u>Matter of Investors SEC. Corp.</u>, 6 B. R. 415 at
419.

Thus, this court concludes that the Stansberrys are the
holders of one "qualifying joint account" and as such are
entitled to one cash claim against the SIPC fund in an amount
not to exceed $100,000.

### THE STEAMFITTERS' CLAIM

The Trustee determined that the Steamfitters' claim
should be allowed as a claim for cash in the amount of

$100,000 rather than as a claim for a security since the certificates of deposit in which the Steamfitters believed they had invested never existed. (Findings Nos. 5 & 12) The Steamfitters argue that the "confirmations" that they received are sufficient evidence that the certificates of deposit actually existed, or in the alternative, that it is irrelevant that the certificates were nonexistent.

However, after reviewing the testimony, this court concludes that the certificates were never purchased; and as previously discussed, in order to have a claim for a "security" the security must in fact exist. See Matter of Investors SEC. Corp., 6 B. R. 415 at 419 and Aberdeen Securities, 480 F. 2d 1121 at 1127.

Therefore, this court concludes that the Steamfitters are entitled to one cash claim against the SIPC fund in an amount not to exceed $100,000.

## THE IBEW'S CLAIM

The Trustee determined that the IBEW's claim should be allowed as a claim for cash in the amount of $100,000 since the certificates of deposit in which it believed it had invested never existed. (Findings Nos. 7 & 13) The IBEW argues that the "confirmations" that it received, albeit fraudulent, are sufficient evidence of the certificates, or in the alternative, that the nonexistence of the certificates is irrelevant. However, as previously discussed, in order to have a claim for a "security", that security must in fact

14

exist.  See Matter of Investors SEC. Corp., 6 B. R. 415 at 419

and Aberdeen Securities, 480 F. 2d 1121 at 1127.

From the evidence, this court concludes that the

certificates of deposit never existed; therefore, the IBEW is

entitled to one cash claim against the SIPC fund in an amount

not to exceed $100,000.

### THE BRICKLAYERS' CLAIM

The Trustee determined that the Bricklayers' claim should

be allowed as a claim for cash in the amount of $100,00 since

neither the PPFTA nor the certificates of deposit in which the

Bricklayers believed they had invested actually ever existed.

(Findings Nos. 7 & 14)  The Bricklayers argue that the

nonexistence of the certificates is irrelevant and that the

"statement" which they had received from FOSC is sufficient

evidence to meet their burden of proof that the certificates

in fact existed.

However, after reviewing the testimony, this court

concludes that the certificates never existed.  Since in order

to have a claim for a "security" the security must in fact

exist, the Bricklayers are entitled to only one cash claim

against the SIPC fund in an amount not to exceed $100,000.

See Matter of Investors SEC. Corp., 6 B. R. 415 at 419.


### THE CLAIM OF THE INDIVIDUAL PARTICIPANTS IN THE IBEW 540 AND THE STEAMFITTERS 490 FUNDS

The Trustee determined that the claims filed on behalf of

the individual participants in the IBEW 540 Fund and the

Steamfitters 490 Fund should be denied because these
individual claimants were not "customers" of the debtor.
(Finding No. 8)  This court agrees with that determination.
The evidence shows that the actual customers were the "Funds",
not the individual participants in the Funds.  (Findings Nos.
12 and 13)

Pursuant to 15 U.S.C. § 78lll(2), a customer is defined
as follows:

> The term "customer" of a debtor means any
> person...who has a claim on account of securities
> received, acquired, or held by the debtor in the
> ordinary course of its business as a broker or
> dealer from or for the securities accounts of such
> person....The term "customer" includes...any person
> who has deposited cash with the debtor for the
> purpose of purchasing securities, ....

In SEC. Investor Protection v. Morgan, Kennedy & Co., 533
F. 2d 1314 at 1315, the Second Circuit Court of Appeals was
asked to determine whether or not the employee-beneficiaries
of a profit-sharing plan trust qualified as "customers" for
the purpose of participating in the SIPC fund.  In that case,
as in this one, the trust fund assets were managed by Trustees
who made the actual investment decisions.  Id. at 1315.  The
Bankruptcy Court had ruled in the employee-beneficiaries'
favor.  However, the Appeals Court reversed and held that:

> The employee-beneficiaries in the case before
> us made no purchases, transacted no business, and
> had no dealings whatsoever with the broker-dealer in
> question respecting the trust account.  Indeed, they
> could not have any such dealings since the broker-
> dealer held no property belonging to any individual
> employee, in which such employee could trade or
> invest.  Calculable amounts were payable to
> Reading's employees only in the event that, pursuant
> to the terms of the Plan, they became entitled

thereto.  The argument that, notwithstanding their complete anonymity and total incapacity to have dealings with the broker-debtor, the Reading employees were "customers" of Morgan-Kennedy stretches that term wholly beyond its limits.  Id. at 1318.

In this case, as in the Morgan, Kennedy & Co. case, the individual participants in the Funds had no dealings with the broker-dealer and had no direct input into the investment decisions.  (Findings Nos. 12 & 13)  Therefore, this court concludes that the individual participants in the 540 and 490 Funds are not "customers" as defined by SIPA, and therefore these claims should be denied.

A separate Order in accordance with these Findings shall be entered.

H. F. White
Bankruptcy Judge

I certify that on the 23rd day of Dec    , 1991, I sent a copy of this Finding and Order to:

Thomas R. Lucchesi
Baker & Hostetler
3200 National City Center
Cleveland, Ohio  44114

William B. Gore
Laybourne, Smith, Gore & Goldsmith
159 South Main Street
Suite 503
Akron, Ohio  44308

AO 72A
(Rev. 8/82)

17

Josephine Wang
Securities Investor
Protection Corporation
805 Fifteenth Street, N. W.
Suite 800
Washington, D. C.  20005-2207

# Exhibit 2

2-93 11:00AM   FROM BAKER & HOSTETLER   TO 12023716728      P003      #852

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | NO. 92CV0349 |
| | ) | |
| FIRST OHIO SECURITIES CO., | ) | |
| | ) | On Appeal from Case No. |
| PLUMBERS & STEAMFITTERS | ) | 590-0027 (SIPA) |
| LOCAL NO. 490 SEVERANCE AND | ) | |
| RETIREMENT FUND, et al., | ) | |
| | ) | |
| Appellants, | ) | O R D E R |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM APPLETON, TRUSTEE FOR | ) | |
| THE LIQUIDATION OF FIRST OHIO | ) | |
| SECURITIES CO., | ) | |
| | ) | |
| Appellee. | ) | |

93 FEB 18 P3: 27

FILED

THOMAS D. LAMBROS, CHIEF JUDGE

    This appeal arises out of the Bankruptcy Court's findings and order issued on the

23rd of December, 1991, regarding the Trustee's determination of claims in a proceeding

involving the liquidation of a securities broker-dealer pursuant to the Securities Investor

Protection Act of 1970 (SIPA).   This bankruptcy appeal is taken as a matter of right

pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

    Pursuant to Bankruptcy Rule 8013, the Bankruptcy Court's "findings of fact,

whether based on oral or documentary evidence, shall not be set aside unless clearly

erroneous. . . ." Accord, Stevens Industries, Inc. v. McClung, 789 F.2d 386, 389 (6th Cir.

1986); In re Dixon, 85 B.R. 745 (Bankr. N.D. Ohio 1988).   The Bankruptcy Court's



**EXHIBIT**

tabbies

2



conclusions of law, on the other hand, are subject to de novo review.  In re Caldwell, 851 F.2d 852, 857 (6th Cir. 1988).

First Ohio Securities Corporation (FOSC) was a securities broker-dealer that bought and sold securities for the public.  On June 22, 1990, Judge David D. Dowd, Jr., entered an order finding that the customers of FOSC were in need of protection, and the liquidation proceedings of FOSC commenced pursuant to SIPA.  Customers filed claims with the trustee, and the trustee determined the validity of the claims.  Subsequently, customers objected to the trustees determination and hearings were held before Judge Harold F. White.  In the instant action, the trustee determined that 540 fund claim, the 490 fund claim, the 55 fund claim, and the Stansberrys' claim should be allowed as claims for cash, and consequently, the trustee paid the claimants $100,000 each.  Further, the trustee determined that the claims of the individual participants in the 540 and 490 funds should be denied because they were not "customers" of FOSC as defined by the SIPA.  The trustee also denied one of the Stansberrys' claim due to the fact that their account was held as joint tenants with right of survivorship.  On December 23, 1991, Judge White issued his findings and order which upheld the trustee's determinations of appellants' claims.

Appellants' first eight statement of issues all contend that the Bankruptcy Court erred when it held that the 540 fund, the 490 fund, the 55 fund, and the Stansberrys each had one claim for cash.  Appellants maintain that their claims should have been valid claims for securities.  If claims are for cash, the protection under the SIPA is limited to $100,000, but if the claim is for securities, the protection increases to $500,000.

-2-

Appellants' assertion that the claims should have been allowed as claims for securities is not supported by the law. The Bankruptcy Court correctly determined that in order to have a claim for a "security" the security must in fact exist. SEC v. Aberdeen Securities Co., 480 F.2d 1121, 1126-27 (3d Cir. 1973); See also In re Brentwood Securities, Inc., 925 F.2d 325, 328-29 (9th Cir. 1991).

The Securities Investor Protection Corporation (SIPC), created under the SIPA, was formed to establish a fund which would act as a limited insurance policy for customers who lose money as a result of broker-dealer insolvencies. SIPC is a non-profit corporation whose members contribute assessments which form the basis for the protection fund. The SIPA was not designed to protect customers from fraud or breach of contract, but was specifically enacted for the purpose of providing limited restitution to customers whose loss is the result of insolvent broker-dealers. In re E.M.S. Government Securities Corp., 90 B.R. 539, 540-41 (Bankr. S.D. Fla. 1988); In re Bell & Beckwith, 124 B.R. 35, 36 (Bankr. N.D. Ohio 1990). Thereby, the appellants' claims for securities are not denied because of the fraud perpetrated, rather they are satisfied as claims for cash to the extent allowed under the SIPA. All of the rules and legislative history cited by appellants on the legitimate expectations and satisfaction of claims for securities is determinative of a security of such type being in existence. Not only were these "securities" never purchased, they never existed. Therefore, with no evidence presented that would enable this Court to find the non-existence of the securities clearly erroneous, the conclusion of law that 490 fund, the 540 fund, the 55 fund, and the Stansberrys were each entitled to one cash claim was correct as a matter of law.

-3-

In their ninth statement of issue, appellants maintain that the Bankruptcy Court erred when it denied the claims of the individual participants in the 540 and 490 funds. SIPA defines a "customer" as,

> [A]ny person . . . who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities account of such person. . . . The term "customers" included . . . any person who has deposited cash with the debtor for the purchase of securities. 15 U.S.C. § 78 lll(2).

In SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314 (2d Cir. 1976), the court directly addressed the issue of whether individual participants in a pension fund were "customers" of a failed broker. The individual participants did not qualify as customers because they had no direct dealings with the broker-dealers, nor did they entrust cash or securities directly to the broker-dealers. The court held that the actual customers of the broker-dealer were the funds themselves and not the individual participants in the funds. Morgan, Kennedy & Co., 533 F.2d at 1317-21. Therefore, the Bankruptcy Court was correct in denying the claims of the individual participants in the 490 and 540 funds.

In the tenth statement of issue, appellants contend that the Bankruptcy Court erred in finding and concluding that the Stansberrys held one joint account with right of survivorship and not two separate accounts, thus only entitling them to one claim for cash instead of two claims for securities. The Bankruptcy Court's finding that the Stansberry account was held as joint tenants was not clearly erroneous. Evidence indicated that the confirmation statements sent to the Stansberrys were directed to David E. Stansberry and Violet M. Stansberry JTWROS (joint tenants with right of survivorship), and further, the account application form completed by Mr. Stansberry reflected that a

-4-

single account was opened in the name of Mr. & Mrs. David E. Stansberry (Violet M.) JTWROS. Therefore, the Bankruptcy Court's finding that only one account existed was not clearly erroneous, nor was the conclusion that such an account entitled the holders to one cash claim against the SIPC fund in an amount not to exceed $100,000 contrary to the law. See Morgan, Kennedy & Co., 533 F.2d at 1319-20; In re Investors Security Corp., 6 B.R. 415, 419 (Bankr. W.D. Pa. 1980).

Therefore, after a complete review of the record, and upon full consideration of the parties' objections thereto, this Court finds that the Bankruptcy Court's findings of fact were not clearly erroneous. Additionally, after a de novo review of the Bankruptcy Court's conclusions of law, this Court finds that the Bankruptcy Court applied the relevant legal standards. Therefore, the Bankruptcy Court's Order Re: Objections to the Trustee's Determination of Claims and the Findings Re: Objections to the Trustee's Determination of Claims are fully adopted and incorporated herein and, thus, affirmed. Accordingly, this case is dismissed and terminated.

IT IS SO ORDERED.

Thomas D. Lambros
Chief Judge
United States District Court

AT CLEVELAND, OHIO

DATED: 2/18/93

-5-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

FILED
93 FEB 18   P 3: 27

| | | |
|---|---|---|
| In re: | ) | |
| | ) | NO. 92CV0349 |
| FIRST OHIO SECURITIES CO., | ) | |
| | ) | |
| PLUMBERS & STEAMFITTERS | ) | On Appeal from Case No. |
| LOCAL NO. 490 SEVERANCE AND | ) | 590-0027 (SIPA) |
| RETIREMENT FUND, et al., | ) | |
| | ) | |
| Appellants, | ) | JUDGMENT |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM APPLETON, TRUSTEE FOR | ) | |
| THE LIQUIDATION OF FIRST OHIO | ) | |
| SECURITIES CO., | ) | |
| | ) | |
| Appellee. | ) | |

THOMAS D. LAMBROS, CHIEF JUDGE

        In accordance with the Order of this date, the findings and orders of the

Bankruptcy Court are fully adopted and incorporated herein, and thus, affirmed.

Accordingly, this action is hereby terminated and dismissed.

        IT IS SO ORDERED.

                                        _____
                                        Thomas D. Lambros
                                        Chief Judge
                                        United States District Court

AT CLEVELAND, OHIO

DATED: ___2/18/93___