Steven J. Andelman
Susan R. Andelman
10 White Birch Lane
P.O. Box 1044
Glen, NH 03838
606-383-9506
club_a@msn.com

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

Ref: Bankruptcy Case No. 08-1789 (BRL)
    Objection and Opposition to Trustee's Determination of Claims No. 13045 (Steven J. Andelman) and
    13046 (Susan R. Andelman)

June 10, 2010

Dear Judge Lifland

Our records do not match your lists and we respectfully disagree with the determinations. We have included our findings and their sources. In contrast, we take notice that your letters of 5/12/2010 did not contain the source of the transactions. Steven has returned to work which demands more than 50 hours/week. It will be unduly burdensome for us to attend a hearing in New York and respectfully request that we be allowed to appear by phone for any hearing regarding these claims.

As part of filing our claims on 6/27/09, the following documents were included for each of the accounts enclosed in parenthesis.
1. CUSTOMER CLAIM (1-A0030, 1-A0102, 1-ZA111, and 1-ZA112). Note: separate sheets have been inserted to list all securities. Also, as 1-A0030 was closed in 1997, there is no claim against securities and none have been listed.
2. Last STATEMENT for both regular securities (account number ends on "-3-0") and options (account number ends in "-4-0") dated 11/30/08 (1-A0102, 1-ZA111, and 1-ZA112).
3. CONFIRMATION slips (1-A0102, 1-ZA111, and 1-ZA112) for all securities that are listed in the SECURITY POSITIONS part of the statement listed above except for FIDELITY SPARTAN US TREASURY MONEY MARKET, for which no CONFIRMATION slip was received.
4. PORTFOLIO MANAGEMENT REPORT (1-A0102, 1-ZA111, and 1-ZA112) for the first three quarters of 2008.
5. CREDIT slips (1-A0102, 1-ZA111, and 1-ZA112) from BLMIS for deposits made in 2008, if any.
6. CHECK stubs (1-A0102, 1-ZA111, and 1-ZA112) for BLMIS checks for withdrawals made in 2008.

To present our cash-in/cash-out records, please find the following documents for each of the accounts enclosed in parenthesis.

7. PORTFOLIO MANAGEMENT REPORT (1-A0102, 1-ZA111, and 1-ZA112) saved for the last quarter of 1997 through 2007 to prove the total amount of deposits and withdrawals. Note, these reports would have been challenged by clients if the amount of deposits and/or withdrawals were inaccurate. I believe I heard Mr. Picard confirm as much on 2/20/09. Note: reports for 1998 were copied from copies made on photosensitive paper which has faded and was overwritten by hand several years ago.
8. CREDIT slip (1-A0102) transferring funds from 1-A0030 when it was closed and 1-A0102 was opened.
9. Ledgers (1-A0030 (2 ea), 1-A0102, 1-ZA111, and 1-ZA112). These were hand written by Susan to track deposits and withdrawals. These ledgers are informal and sometimes difficult to interpret. They are, in part, augmented and somewhat clarified by the spreadsheets and check register pages listed below. Together, they are the only remaining evidence for years before 1997 when the PORTFOLIO MANAGEMENT REPORTs were available and saved.
10. Spreadsheets (1-A0030) for 1993(2 ea) and 1994.
11. Check register pages from Fidelity Cash Reserves account #2078228 and Shawmut/Fleet Bank (1-A0030, 1-A0102, 1-ZA111, and 1-ZA112). Note: only the pages dealing with BLMIS are included and have been noted which account was involved. Madoff account number is noted by register entries. Also, The Shawmut Bank register for 7/14/93 – 3/18/94 cannot be found.
12. Monthly STATEMENT pages that show checks issued by BMIS in 1997 (1-A0030, 1-A0102)
13. Letters of 7/27/98 and 7/28/98 transferring funds between 1-A0102 and 1-ZA111 and 1-ZA112
14. JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP 1/6/03 recording the change of name for 1-A0102
15. Letter to Bernard L. Madoff 12.2.1992 with copies of accompanying checks opening up 1-ZA111 and 1-ZA112. Note: letter was copied from one dated 10/18/1991 and the body was edited but not the date. The date on the check confirms the 12/2/1992 date.
16. Quicken Transaction Report of deposits to TD Banknorth from BLMIS (1-ZA111, 1-AZ112) shows withdrawals after 9/30/08 PORTFOLIO MANAGEMENT REPORT.
17. Spreadsheets (1-A0030, 1-A0102, 1-ZA111, and 1-ZA112). CASH-IN/CASH-OUT tabulation based on the best documents available (listed above) to follow the Trustee's guidelines for claim amounts.

We originally invested with Avellino & Bienes. On 11/18/1992, the SEC issued a complaint against Avellino & Bienes (docket # 92 Civ. 8314). A&B returned all investors' principal and interest through and including 11/16/1992. As the SEC found no fraud and dismissed the claim after they received fines for clerical improprieties, we reinvested some of the funds that were returned to us directly with BLMIS by opening account 1-A0030. In June, 1997, 1-A0030 was closed and its funds transferred to 1-A0102. On 1/6/2003, the name on 1-A0102 was changed from <u>Steven J Andelman & Susan R Andelman J/T WROS</u> to <u>Stephanie Andelman & Steven Andelman J/T WROS</u>. Stephanie is my daughter.

We have kept our records for tax purposes for 1997 (discovered under a workbench) and 2000 – 2007. Normally we retain our records for seven or eight years before we throw them away. Except for the ledgers, spreadsheets, check registers, and 4th quarter PORTFOLIO MANAGEMENT REPORTs listed above, there are a few other documents. As far as I can determine, they have no forensic value. I will, of course, do my best to provide whatever additional information you want – if it is available. Never-the-less, enough documentation was retained to confidently reconstruct the deposits and withdrawals for each account.

We never complained or had any reason to complain about the handling of our accounts. There is no difference between the claimed securities and cash claimed and the cash balance and securities position on our last statements. Withdrawals were made solely to pay living expenses or, in a few cases, to transfer funds between accounts. We had no insider information and did not act as a feeder fund.

At ages 66 and 67 respectively, my wife and I were both retired when the fraud was exposed. We have minimal IRA accounts because we instead invested almost all of our earnings/savings in BLMIS to provide for us in retirement. Similarly, when we owned our own sub-chapter S businesses, we invested in BLMIS instead of Social Security by taking a draw instead of salary. As a result, our Social Security income is well below the poverty level. Miraculously, I found employment in our rural area. Our budget is about ¼ of what it was. This covers virtually no discretionary expenditures. Our current efforts are to keep up our mortgage and loan payments, minimize our expenses, and continue to live at a very frugal level.

We will, as we have done before, continue to do everything we can to increase our income through hard work and save whatever we can to provide security when we are no longer able to work. My goal is to work another 8 – 9 years. This may prove difficult – not only because my health, which is currently good, could worsen. A month ago, I was fired in the morning and then the decision was reversed that afternoon when it became clear that what I had accomplished was Herculean. I am old enough to be the father of everyone in the company. The only reason given for the firing was that I didn't remember some things.

We understand the logic of cash-in/cash-out but believe it misses the reason why SIPC was established. The financial industry wanted to go away from stock certificates but recognized the possibility of fraudulent statements. SIPC was established to protect investors against fraud. We hope that the courts will decide that this means protection against fraudulent statements and will change the definition of claim to last statement.

Like many others, this loss has created an overwhelming financial crisis for us. We were encouraged to hear the word "compassion" used to describe how each account would be adjudicated. Compassion is crucial because the threat of claw-back is horrific. It would force personal bankruptcy and all but eliminate any chance of regaining financial independence.

The money we invested with BMIS was earned honestly and through hard work. Taxes were paid on all phantom income. Unless all taxes paid on phantom income is returned, the only winners will be the state and federal governments. Furthermore, SIPC limits coverage to $500,000/account. The unreturned taxes and the SIPC limit are painful enough to innocent people. To add claw-back would leave many victims destitute. We fear we would be in that group. The unintended consequences would be newly-created wards of the state that could cost the government more than they would save from cash-in/cash-out.

Sincerely,

*[signature]*
Steven J. Andelman for claim number 13045 number 13046

*[signature]*
Susan R. Andelman for claim

---

Letter to Irving H. Picard, Esq. from Steven J. Andelman, 3/4/2009