# EXHIBIT A

**(Customer Claim)**

# STROOCK

June 25, 2009

Danielle Alfonzo Walsman
Direct Dial  212-806-5607
Direct Fax  212-806-2607
dwalsman@stroock.com

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment
   Securities LLC
Claims Processing Center
2100 McKinney Avenue, Suite 800
Dallas, TX  75201

Re:    The Benjamin W. Roth Irrevocable Trust  Acct No. 1-R0091

Dear Mr. Picard:

We are counsel to The Benjamin W. Roth Irrevocable Trust.  Please see the attached
Customer Claim form with attachments for Account No. 1-R0091.

If you have any questions, please feel free to call me.

Very truly yours,

Danielle Alfonzo Walsman

Enclosures

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

(Please print or type)

Name of Customer: _The Benjamin W Roth Irrevocable Trust_
Mailing Address: _22181 Trillium Way_
City: _Boca Raton_    State: _FL_    Zip: _33433_
Account No.: _1-R0091_
Taxpayer I.D. Number (Social Security No.): _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_

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of December 11, 2008:

   a.    The Broker owes me a Credit (Cr.) Balance of    $____0____

   b.    I owe the Broker a Debit (Dr.) Balance of    $____0____

   c.    If you wish to repay the Debit Balance,
        please insert the amount you wish to repay and
        attach a check payable to "Irving H. Picard, Esq.,
        Trustee for Bernard L. Madoff Investment Securities LLC."
        If you wish to make a payment, it must be enclosed
        with this claim form.    $_____

   d.    If balance is zero, insert "None."    _None_

2.    Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

| | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | **Number of Shares or Face Amount of Bonds** | |
| Please see attached statement dated 11/30/08 $4,633,500 | | | |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) · | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 Attn: Danielle Alfonzo Walsman

502180406                                      3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _06-25-2009_        Signature _Richard G. Roth_

Date _____        Signature _Richard G. Roth, Trustee_

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

TRUST AGREEMENT

ESTABLISHING

THE BENJAMIN W. ROTH IRREVOCABLE TRUST

BENJAMIN W. ROTH, SETTLOR

MARION B. ROTH and AMY ROTH, TRUSTEES

THIS TRUST AGREEMENT made this 12th day of May, 1993, by and between BENJAMIN W. ROTH of Las Vegas, Nevada (hereinafter referred to as the "Settlor") and MARION B. ROTH of Las Vegas, Nevada and AMY ROTH of New York, New York (hereinafter referred to as the "Trustee" or "Trustees").

W I T N E S S E T H:

WHEREAS, it is the intention of the Settlor hereby to create a trust, which shall be known as "The Benjamin W. Roth Irrevocable Trust"; and

WHEREAS, the Settlor hereby transfers to the Trustees the sum of Ten Dollars ($10);

NOW, THEREFORE, in consideration of the premises, it is hereby agreed that the trust estate shall be held by the Trustees, IN TRUST, for the uses and purposes and on the terms and conditions herein set forth:

## ARTICLE I
### Construction Provisions

(A) The following terms shall have the meanings specified below unless the context otherwise requires:

(1) "Settlor's wife" or "his wife" shall mean MARION B. ROTH.

(2) "Settlor's child" or "Settlor's children" shall mean JONATHAN, RICHARD and AMY.

(3) "Code" shall mean the Internal Revenue Code of 1986, as amended, or such other statutory provisions as shall correspond thereto.

(4) "Minor" shall mean a person who shall not have attained the age of twenty-one (21) years.

(5) "Disinterested Trustees" shall mean the Trustee or Trustees acting under a trust other than the Settlor and the Settlor's wife; and, after the death of the Settlor's wife, such term shall mean the Trustee or Trustees acting thereunder other

than the Settlor's husband and the Settlor's children, except that a Settlor's child shall be considered a Disinterested Trustee when such child shall no longer be an income beneficiary of any trust created hereunder.

(B)  Wherever necessary or appropriate, the use herein of any gender shall be deemed to include the other genders and the use herein of either the singular or the plural shall be deemed to include the other.

(C)  All references in this Agreement to issue and the like shall be deemed to include any person heretofore or hereafter adopted during his or her minority and his or her issue by blood or adoption.

(D)  This Agreement shall become effective, as of the day and year first above written, upon the execution thereof by both the Settlor and a Trustee and shall be governed and construed in all respects according to the laws of the State of Nevada.

## ARTICLE II
### Nature of Agreement

The Settlor hereby acknowledges that he has been fully advised as to the legal effect of the execution of this Agreement and hereby declares that this Agreement shall be irrevocable and that the Settlor shall not have any power at any time to alter, amend, revise, modify, revoke or terminate any of the provisions of this Agreement.

## ARTICLE III
### Trust Additions

(A)  At any time during the existence of this Agreement, the Settlor, his wife and his issue may transfer to the Trustees by Will or inter vivos any property or assets in addition to those theretofore held by the Trustees hereunder.

(B)  If additional property or assets shall be transferred to, or received by, the Trustees during the Settlor's lifetime or upon or after the Settlor's death, such additions shall

2

become a part of the principal hereof and shall be held, administered and distributed by the Trustees in accordance with the provisions of Article IV of this Agreement as one consolidated trust fund, unless the instrument of transfer, Will or beneficiary designation form, as the case may be, shall designate the specific trust fund to which such additions shall be added.

(C)  If the Trustees, in their sole and absolute discretion, deem it necessary or advisable, then, immediately prior to each such transfer, the trust fund to which such transfer shall be added shall be valued by the Trustees at market value so that at all times the Trustees may determine the percentage of such trust fund that was derived from each source.

## ARTICLE IV
### Trust Provisions

This trust shall be held, administered and distributed by the Trustees as hereinafter provided.

(A)  The Trustees shall pay to or apply for the benefit of the Settlor's wife so much or all of the net income of this trust, at such time or times and in such amounts, as the Disinterested Trustees, in their sole and absolute discretion, may deem advisable; and the net income which shall not be paid to or applied for the benefit of the Settlor's wife in any year shall be added to the principal of this trust at the end of such year and shall be held, administered and disposed of as a part thereof.

(B)  The Trustees shall pay to or apply for the benefit of the Settlor's wife so much or all of the principal of this trust, at such time or times and in such amounts, as the Disinterested Trustees, in their sole and absolute discretion, may deem advisable.

(C)  The Settlor's wife may appoint the principal of this trust, in whole or in part, to any one or more of the Settlor's issue, from time to time living and whenever born, in such amounts, shares and proportions, even to the exclusion of any beneficiary, and on such terms and conditions and with such powers, absolutely

3

or in trust, as she shall designate by an instrument or instruments in writing delivered at any time or times to the Disinterested Trustees during her lifetime and/or by a Will, executed after the Settlor's death, which shall specifically refer to and exercise this power. The powers granted to the Settlor's wife under the preceding sentence shall not apply to any policies of insurance on her life held in this trust or to any proceeds thereof payable to this trust, and payments of part of the principal pursuant to the foregoing powers to appoint shall not be taken into account in any later division of the balance of the principal and undistributed income of this trust.

(D)  Upon the death of the Settlor's wife, the principal and undistributed income of this trust not effectively appointed by her Will shall be divided and set apart into so many equal shares that there shall be one such share for each child of the Settlor who shall then be living and one such share for the then living issue (if any), collectively, of each child of the Settlor who shall then be deceased, and such shares shall be administered and disposed of as follows:

(1)  A share set apart for the issue of a deceased child of the Settlor shall be distributed to such issue, per stirpes.

(2)  A share set apart for a then living child of the Settlor shall be held, IN TRUST, for the benefit of such child; and the Trustees shall pay to such child or apply for such child's benefit all of the net income of such share at least as often as annually.

(3)  The Trustees shall distribute to such child one-third (1/3) of the principal of such share upon the death of the survivor of the Settlor's wife and the Settlor; and, after the death of said survivor, the Trustees shall distribute to such child one-half (1/2) of the then principal of such share when such child shall have attained the age of thirty-five (35) years and the remaining principal thereof when such child shall have attained the age of forty (40) years.  If such child shall have attained either

4

of such respective ages prior to the death of the survivor of the Settlor's wife and the Settlor, then, upon the death of said survivor, the Trustees shall distribute to such child such part or all of the principal of such share, as the case may be, as such child would have received had such child attained either of such respective ages after the death of said survivor.

(4)    In addition to such payments of principal as shall be required to be made under the preceding provision, the Trustees shall pay to or apply for the benefit of such child so much or all of the principal of such share, at such time or times and in such amounts, as the Disinterested Trustees, in their sole and absolute discretion, may deem advisable.

(5)    Such child may appoint the principal of such share, in whole or in part, to any one or more of such child's issue, from time to time living and whenever born, in such amounts, shares and proportions, even to the exclusion of any beneficiary, and on such terms and conditions and with such powers, absolutely or in trust, as such child shall designate by a Will, executed after the death of the survivor of the Settlor's wife and the Settlor, which shall specifically refer to and exercise this power. The power granted to such child under the preceding sentence shall not apply to any policies of insurance on such child's life held as a part of such share or to any proceeds thereof payable to such share, and payment of part of the principal pursuant to this power to appoint shall not be taken into account in the division of the balance of the principal and undistributed income of such share.

(6)    Upon the death of such child prior to the termination of such share, the Trustees shall distribute the remaining principal and undistributed income of such share not effectively appointed by such child's Will to such child's then living issue, per stirpes, or, in default of such issue, to the Settlor's then living issue, per stirpes. If any portion of such share shall become payable to any issue of the Settlor for whom a share shall then be held in trust hereunder, then, anything herein to the contrary notwithstanding, such portion shall not be paid

5

over to such issue but in lieu thereof shall be added to such issue's share to follow the disposition thereof in all respects as to both income and principal.

(7) Each share held in trust under this Paragraph (D) shall be deemed to be a separate trust for all purposes of this Agreement.

(E) If, at any time, the Trustees are holding a trust fund hereunder for the primary benefit of any person for whose primary benefit the Trustees are holding any other trust fund created by the Settlor or the Settlor's wife, the Trustees may, in their sole and absolute discretion, consolidate and commingle such trust funds and hold and dispose of them as one consolidated trust fund. Notwithstanding any other provision of this Agreement to the contrary, the Trustees may consolidate only trusts having the same inclusion ratio for generation-skipping transfer tax purposes.

## ARTICLE V
## Trust Administration

(A) In exercising their discretion, if any, to pay or apply income and principal with respect to a trust created under this Agreement, the Settlor directs that:

(1) The Disinterested Trustees be extremely liberal in the exercise of such discretion, preference be given to the care, comfort, support, maintenance, medical attention and education of the person to whom or for whose benefit such payment may be made, and all doubts be resolved in such person's favor.

(2) The Disinterested Trustees may, but shall not be required to, inquire as to any other income or property of such person and see to the use of any such payments.

(3) Any decision of the Disinterested Trustees with respect to the exercise of such discretion, made in good faith, shall fully protect the Trustees and shall be binding and conclusive upon all persons interested in a trust created under this Agreement.

6

(B)  Any provision of this Agreement to the contrary
notwithstanding, the Disinterested Trustees may terminate a trust
or share created under this Agreement if in their judgment the
principal thereof is so small that it would be inadvisable to
continue to hold it in trust and distribute all of the principal
and undistributed income thereof free of trust to the person then
entitled to the income therefrom or to the person or persons
eligible to receive the income therefrom in such amounts or shares
as the Disinterested Trustees may, in their sole and absolute
discretion, determine.

(C)  Any provision of this Agreement to the contrary
notwithstanding, a trust or share created under this Agreement
shall, in any event, terminate one day prior to the expiration of
the permissible period under the relevant application of the Rule
Against Perpetuities, if any, determined using as measuring lives
in being the Settlor, his wife and his issue.  Upon such termina-
tion, the Trustees shall distribute the principal and undistributed
income thereof free of trust to the person then entitled to the
income therefrom or to the person or persons eligible to receive
the income therefrom in such amounts or shares as the Disinterested
Trustees may, in their sole and absolute discretion, determine.

## ARTICLE VI
### Power During Minority

(A)  If pursuant to this Agreement any property shall
vest in absolute ownership in a minor, the Settlor authorizes and
empowers the Trustees, in their sole and absolute discretion, to
hold such property, or any part thereof, in a separate fund for the
benefit of such minor during his or her minority, and to invest and
reinvest such property, collect the income therefrom and to pay or
apply so much or all of the income and principal to or for the
benefit of such minor as the Trustees, in their sole and absolute
discretion, may deem advisable, and to accumulate, invest and
reinvest the balance of said income until such minor shall attain
his or her majority, and thereupon to pay the then principal,

7

together with any accumulated income, to such minor or, if such
minor shall die before attaining his or her majority, to the estate
of such minor. The authority conferred upon the Trustees by this
provision shall be construed as a power only and shall not operate
to suspend the absolute ownership of such property by such minor
or to prevent the absolute vesting thereof in such minor.

(B)  With respect to any property held hereunder, the
Trustees shall have all the powers, privileges, discretions and
immunities conferred upon them elsewhere in this Agreement; and
they shall not be required to give any bond or other security for
the faithful performance of their duties hereunder in any juris-
diction whatsoever or, if any bond is required, they shall not be
required to give any surety thereon.

(C)  Payment of income or principal to or for the benefit
of a minor under any of the provisions of this Agreement may be
made by the Trustees directly to such minor, to the parent, a
guardian or any other person having the care and control of such
minor, to a custodian for such minor under the applicable Uniform
Gifts to Minors Act or any comparable act, or by otherwise applying
such income or principal for the benefit of such minor. A receipt
for any payment hereinabove authorized shall be a full discharge
to the Trustees with respect thereto.

<u>ARTICLE VII</u>
<u>Appointment of Trustees</u>

(A)  There shall be two (2) persons acting as Trustees
under each trust at all times. If the number of Trustees acting
under a trust shall be less than two (2) or if no Disinterested
Trustee shall be acting under a trust, then the following persons,
one at a time, in the order of priority indicated, shall be
appointed to act thereunder as a successor Trustee:  (i) such
Disinterested person, bank or trust company as the Settlor shall
appoint by an instrument or instruments in writing within ninety
(90) days after such vacancy shall occur; (ii) such Disinterested
person, bank or trust company as the Settlor's wife shall appoint

8

by an instrument or instruments in writing within ninety (90) days after such vacancy shall occur; (iii) the Settlor's son, RICHARD; (iv) the Settlor's son, JONATHAN; (v) such Disinterested person, bank or trust company as the then acting Trustee or Trustees shall appoint by an instrument or instruments in writing within ninety (90) days after such vacancy shall occur.

(B)  No Trustee herein designated shall be required to give any bond or other security in any jurisdiction whatsoever for the faithful performance of his duties or in connection with the prepayment of commissions or legal fees; however, if any bond is required, no sureties shall be required thereon.

(C)  Any Trustee of a trust created under this Agreement may resign from office without leave of court at any time and for any reason by delivering a written instrument of resignation to each other Trustee of such trust, if any, and to the next succeeding Trustee, if any, thereunder.  The resignation, refusal, failure or inability of a Trustee to act as Trustee of any such trust shall not prevent said Trustee from acting as Trustee of any other trust created hereunder.

(D)  Whenever the term "Trustees" is used in this Agreement, it shall be deemed to refer to the Trustees acting under a trust from time to time, unless the context expressly refers to less than all of the Trustees; and all powers and discretions vested in the Trustees shall be vested in, and exercisable by, any successor Trustee, except that the powers and discretions vested in the Disinterested Trustees shall be vested in, and exercisable by, only a successor Disinterested Trustee.

### ARTICLE VIII
### Simultaneous Death

If any person who would be a beneficiary under a trust created under this Agreement if he or she should survive the Settlor or the Settlor's wife, should die under such circumstances as render it impossible or difficult to determine whether or not such person survived the Settlor or the Settlor's wife, then for

9

the purposes of this Agreement such person shall be deemed to have predeceased the Settlor or the Settlor's wife, as the case may be.

## ARTICLE IX
### Taxes

With respect to any disposition of property under this Agreement which may become subject to a generation-skipping transfer tax, the Trustees shall have the following duties and powers:

(A)  With respect to any disposition of property under this Agreement which shall be a direct skip, any generation-skipping transfer tax shall be paid by the Trustees from the property which is the subject of the direct skip.

(B)  With respect to any taxable termination of a trust under this Agreement, any generation-skipping transfer tax shall be paid by the Trustees from the property of such trust. Such tax shall be apportioned against each person receiving the property which is the subject of the taxable termination in proportion to the value of the property received by him and the value of the property received by all such persons.

(C)  With respect to any taxable distribution from a trust under this Agreement, any generation-skipping transfer tax shall be paid by the Trustees and such tax shall not be charged to the property constituting such transfer.

## ARTICLE X
### Trustees' Powers

(A)  In the investment, administration and distribution of any trust created under this Agreement, the Settlor grants to the Trustees with respect to any and all property, whether real or personal, which shall at any time constitute part of any trust created hereunder, the following powers, in addition to those conferred by law:

(1)  To retain any such property as an investment without regard to the proportion which such property

10

or property of a similar character, so held, may bear to
the entire amount of the trust in which such property is
held, whether or not such property is of the class in
which fiduciaries are authorized by law or any rule of
court to invest trust funds.

(2)  To sell such property at either public or
private sale for cash or on credit, to exchange any such
property and to grant options for the purchase thereof.

(3)  To invest and reinvest in property of any
character, real or personal, including, without limita-
tion, partnerships, bonds, notes, debentures, mortgages,
certificates of deposit, common and preferred stocks,
shares or interests in investment trusts including any
common trust fund maintained by a corporate Trustee,
whether or not such property is of the class in which
fiduciaries are authorized by law or any rule of court
to invest trust funds and without regard to the propor-
tion which such property or property of a similar
character, so held, may bear to the entire amount of the
trust in which such property is held.

(4)  To consent to and participate in, or to
oppose, any foreclosure, liquidation or plan of reorgani-
zation, consolidation, merger, combination or other
similar plan, and to consent to any contract, lease,
mortgage, purchase, sale or other action by any corpora-
tion pursuant to such plan.

(5)  To deposit any such property with any
protective, reorganization or similar committee, to
delegate discretionary power thereto, and to pay the
trust's proportionate part of the expenses and compen-
sation and any assessments levied with respect to such
property.

(6)  To exercise all conversion, subscription,
voting and other rights of whatever nature pertaining to
any such property and to grant proxies, discretionary or
otherwise, in respect thereto.

(7)  To manage any real property in the same
manner as if the absolute owners thereof, including,
without limitation, the power from time to time to lease,
or grant options to lease, any such real property for any
period of time and although any such period may extend
beyond the duration of a trust in which property is held,
with any provisions for renewals thereof, without
application to any court; to enter into any covenants or
agreements relating to the property so leased or to any
improvements then or thereafter erected thereon; to
insure against loss by fire or other casualty; and to

11

make partition or enter into any agreements of partition of any real property which, or an interest in which, shall at any time constitute part of any trust hereunder, and to give or receive money or other property for equality of partition.

(8)  To allocate, in the sole and absolute discretion of the Disinterested Trustees, in whole or in part, to principal and income, all receipts and disbursements for which no express provision is made under the law of the State governing this Agreement.

(9)  To borrow money for the purposes and benefit of a trust created hereunder, including, without limitation, to maintain or establish a margin account, and to make loans, all in such amounts and upon such terms as they, in their sole and absolute discretion, may determine.

(10)  To extend the time of payment of any obligation held by them and to compromise, settle or submit to arbitration upon such terms as they may deem advisable, or to release any claim in favor of or against a trust created hereunder.

(11)  To allocate to two or more shares or trusts created under this Agreement an undivided interest in one or more properties or blocks of securities, including stocks.

(12)  To cause any securities or other property held by them to be registered and held in the name of a nominee, and the liability of the Trustees shall be neither increased nor decreased thereby.

(13)  In the division or distribution of a trust created hereunder, or any part thereof, to make partition, division or distribution of property in kind; and, for any such purpose, to determine to the extent permissible by law the value of any such property.

(14)  To exercise any stock options which may become a part of any trust created hereunder.

(15)  To receive, retain or acquire a policy or policies of life insurance on the life of any beneficiary hereunder or on the life of any person in whom any such beneficiary has an insurable interest, naming the Trustees as sole beneficiaries, and to pay any premium thereon from the principal or income of the trust.  The Trustees shall have full power and authority to hold and deal with any such policy of life insurance as owners thereof, including, without limitation, the power: to

12

execute an automatic premium loan agreement with respect
to any such policy; to borrow money for the purpose of
paying any premium thereon, either from the company
issuing such policy or from any other source, and to
assign such policy as security for such loan; to exercise
any option contained in such policy with respect to any
dividend or share of surplus apportioned thereto; to
elect any extended term insurance nonforfeiture option
contained in such policy; to surrender such policy for
its cash value; to sell such policy to the insured or to
any person having an insurable interest in the life of
the insured; and to exercise any other right, option or
benefit contained in the policy or permitted by the
insurance company issuing such policy.   If upon the
termination of a trust created hereunder the Trustees
hold any such policy as a part thereof, they may transfer
and assign such policy in distribution of such trust
allotting the policy in payment of any share thereof,
provided that, insofar as it is practicable to do so, any
such policy shall be distributed as part of the share in
the trust of the person insured thereunder and the
Trustees may determine the value of such policy. If a
Trustee is insured under any policy retained or acquired
hereunder, then such Trustee shall not be permitted to
exercise any rights or powers with respect to such policy
granted to the Trustees and such rights and powers shall
be vested exclusively in the remaining Trustees.

(16)   To employ and compensate agents, attor-
neys, accountants, investment counsel or custodians, and,
to the extent permitted by law, to delegate to them
discretionary power.

(17)   To purchase property of any character from
the estates of the Settlor and/or any beneficiary
hereunder, and to retain any such property so long as
they may deem advisable, whether or not such property is
of the class in which fiduciaries are authorized by law
or any rule of court to invest trust funds.

(18)   To do all such acts, take all such
proceedings and exercise all such rights and privileges,
although not herein specifically mentioned, with respect
to any such property as if the absolute owners thereof
and, in connection therewith, to make, execute and
deliver any instruments and to enter into any covenants
or agreements binding a trust created hereunder.

(B)  No persons dealing with the Trustees shall be
required to inquire into the application or disposition of any
money or other property paid or delivered or into the authority for

13

or propriety of any transaction.    All powers granted to the Trustees shall continue until actual distribution of the property.

(C)    To the extent that the same is permitted by law and is not in conflict with the express terms of this Agreement, an individual Trustee may delegate any duties or powers, discretionary or otherwise, to any other Trustee for such period and upon such terms and conditions as may be designated in a written instrument signed, acknowledged and delivered to such other Trustee.

(D)    No Trustee shall be responsible for the acts or omissions of any other Trustee or for allowing any other Trustee to have custody or control of trust assets.

(E)    Any decision of the Trustees with respect to the exercise or nonexercise by them of any discretionary power under this Agreement, or the time or manner of the exercise thereof, made in good faith, shall fully protect them and shall be binding and conclusive upon all persons interested in the trust estate.

## ARTICLE XI
### Accountings

(A)    Any Trustee acting under this Agreement (or the legal representatives of his estate) may, at any time and from time to time, render to such person or persons eligible to receive income from the trust or trusts created hereunder, as shall be of full age and competent at the time when such account is rendered, an account of the acts and transactions of such Trustee with respect to the income and principal of the trust from the date of the creation of the trust or from the date of the last previous account of such Trustee, as the case may be. Such beneficiary or beneficiaries shall have full power and authority on behalf of all persons interested in the trust finally to settle and adjust such account; and, upon such account being settled and adjusted to the satisfaction of such beneficiary or beneficiaries, it shall be final and conclusive upon each and every person (whether then living or then ascertainable or not) who shall then or thereafter be or become interested in either the income or the principal of

14

the trust, with like effect as a judgment of a court having jurisdiction, judicially settling such account in any action in which the Trustee and all persons having or claiming any interest in the trust were parties. The approval of such account by such beneficiary or beneficiaries shall constitute a full and complete discharge and release of such Trustee and the estate of a deceased Trustee for whom such account is rendered from all further liability, responsibility and accountability for or with respect to the acts and transactions of such Trustee as set forth in said account, both as to the income and as to the principal of the trust.

(B)   If at any time a trust shall be divided into shares, the provisions of this Article shall apply to each share with like effect as if such share constituted the entire trust.

(C)   Any law to the contrary notwithstanding, no Trustee shall be required to file periodic accounts in any court. The foregoing provisions, however, shall not preclude a Trustee from having his account judicially settled or from filing periodic accounts if he shall deem same advisable.

(D)   If, in any proceeding for an accounting by any Trustee at any time acting hereunder, any party to such proceeding shall be a person under a disability, service of process in such proceeding shall not be required upon such person under a disability if there shall be another person, not under a disability, who shall be a party to the proceeding and who shall have the same interest as the person under a disability.

## ARTICLE XII
### Disclaimers

(A)   A person having a beneficial interest under any trust created under this Agreement is authorized to disclaim all or any part of that interest at any time before accepting it or its benefits. A beneficial interest may be disclaimed with respect to amounts, fractions or percentages of that interest or with respect to particular assets, as the person having that interest determines.

15

(B)   In addition to any other method of disclaimer recognized by law, a beneficial interest may be disclaimed by an acknowledged instrument to that effect, executed by the person having that interest and delivered to any Trustee.  The legal representatives of a deceased person are authorized similarly to disclaim that deceased person's beneficial interest, without authorization or approval by any court.

(C)   Unless the person making the disclaimer specifically provides to the contrary in the instrument making the disclaimer, it shall not constitute a disclaimer of that person's right to receive any other interest under any other trust created under this Agreement upon a later disclaimer by another person, upon the death of another person or pursuant to the exercise of a power of appointment granted to another person in a nonfiduciary capacity. A disclaimed interest shall be administered and distributed as if the person who had that interest died immediately before it was created.

## ARTICLE XIII
### Miscellaneous

No beneficial interest under any trust created under this Agreement may be voluntarily or involuntarily anticipated, assigned, encumbered, pledged, sold or otherwise transferred, except pursuant to the valid exercise of a power of appointment granted under any trust created under this Agreement or the exercise of the powers granted in this Agreement to disclaim.  No beneficial interest under any trust created hereunder shall be capable of being taken or reached by any attachment, levy, writ or other legal or equitable process to satisfy any claim against, or obligation of, the person having that interest.  No such interest shall be subject to control or interference by any other person.  Any attempt to dispose of, or to take or reach, any interest in violation of this spendthrift provision shall be invalid and given no effect by any Trustee.

16

IN WITNESS WHEREOF, the Settlor has hereunto set his hand and affixed his seal, and the Trustees, to evidence their acceptance of this Agreement, have hereunto set their hands and affixed their seals, all on the day and year first above written.

_Benjamin W. Roth_
BENJAMIN W. ROTH, Settlor

_Marion B Roth_
MARION B. ROTH, Trustee

_Amy R Roth_
AMY ROTH, Trustee

STATE OF Nevada )
                ; ss.:
COUNTY OF Clark )

On this 12 day of May , 1993, before me personally appeared BENJAMIN W. ROTH, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_Nancy M. Stewart_
Notary Public

NANCY M. STEWART
NOTARY PUBLIC - NEVADA
COUNTY OF CLARK
My Appt. Expires Dec. 17, 1996

STATE OF Nevada )
                ; ss.:
COUNTY OF Clark )

On this 12 day of May , 1993, before me personally appeared MARION B. ROTH, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_Nancy M. Stewart_
Notary Public

NANCY M. STEWART
NOTARY PUBLIC - NEVADA
COUNTY OF CLARK
My Appt. Expires Dec. 17, 1996

17

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

On this _1st_ _June_ day of May, 1993, before me personally appeared AMY ROTH, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_____
            Notary Public

STEPHEN J. KRASS
NOTARY PUBLIC, State of New York
No. 2194685
Qualified in New York County
Commission Expires May 31, 1995

18

December 2, 1994

Amy Roth, Richard Roth
and Jonathan Roth as Beneficiaries
and Amy Roth as Co-Trustee of the
Benjamin Roth Irrevocable Trust
Dated May 12, 1993

Please be advised that I hereby resign, as co-trustee under the Benjamin Roth
Irrevocable Trust Dated May 12, 1993, effective immediately.

I appoint Richard Roth as my successor co-trustee under the trust.

Sincerely,

_Benjamin W. Roth_
BENJAMIN W. ROTH

_Marion B. Roth_
Marion Roth

I hereby accept the appointment as successor co-trustee under the Benjamin Roth
Irrevocable Trust dated May 2, 1993.

_____ December 2, 1994
Richard Roth

BERNARD L. MADOFF
MADF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International
123
Mayfair, London
Tel

11/30/08

*******5482

1-R0091-3-0

THE BENJAMIN W ROTH IRREV
TRUST 5/2/93 AMY ROTH AND
RICHARD G ROTH AS TRUSTEES
22181 TRILLIUM WAY
BOCA RATON          FL   33433

| | | | DESCRIPTION | | | | |
|---|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | 3,949,929.06- | | |
| | | | OCT "MARGIN INTEREST" | INT | 8,385.19 | | |
| | | | NEW BALANCE | | 3,958,306.87- | | |
| | 507,700 | | SECURITY POSITIONS HELD | | | | |
| | | | APPLE INC | | MKT PRICE 92.670 | | |
| | | | MARKET VALUE OF SECURITIES | | | | |
| | | | LONG SHORT | | | | |
| | | | 47,048,650.00 | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

THE BENJAMIN W ROTH IRREV
TRUST 5/12/93 AMY ROTH AND
RICHARD G ROTH AS TRUSTEES
22181 TRILLIUM WAY
BOCA RATON       FL  33433

| | PAGE | 1 |
| PERIOD ENDING | 11/30/08 |
| YOUR ACCOUNT NUMBER | 1-R0091-7-0 |
| YOUR TAX PAYER IDENTIFICATION NUMBER | *******5432 |

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 6,514,500 |
| | | | NEW BALANCE | | | 6,514,500 |
| | 50,000 | | SECURITY POSITIONS APPLE INC | MKT PRICE 92.570 | | |
| | | | MARKET VALUE OF SECURITIES | | | |
| | | | LONG | 4,635,500.00 | | |
| | | | SHORT | | | |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# BERNARD L. MADOFF
## INVESTMENT SECURITIES LLC
New York □ London

385 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**PAGE** 2

**PERIOD ENDING** 11/30/08

**YOUR TAX PAYER IDENTIFICATION NUMBER** *******5482

**YOUR ACCOUNT NUMBER** 1-R0091-7-0

THE BENJAMIN W ROTH IRREV
TRUST 5/12/93  AMY ROTH AND
RICHARD G ROTH AS TRUSTEES
22181 TRILLIUM WAY
BOCA RATON          FL  33433

| BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | YEAR-TO-DATE SUMMARY | | | |
| | | | GROSS PROCEEDS FROM SALES | | | 5,551,500 |

RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES