UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff, v. BERNARD L. MADOFF INVESTMENT SECURITIES LLC, Defendant.<br><br>In re BERNARD L. MADOFF, Debtor. | Adv. Pro. No. 08-01789 (BRL)     SIPA Liquidation     (Substantively Consolidated) |



## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

I, **SALLY K. SIMONDS**, hereby object to the Notice of Trustee's Determination of Claim dated May 24, 2010 ("Determination Letter"), attached hereto as Exhibit A, as described herein.

### Background

1.    I am a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.    My final BMIS statement for Account Number **1S0351** designated as claim number **2753**, dated November 30, 2008, states that I own securities valued at **$215,495.91** (my "Final BMIS Statement"). I opened the account with **$209,000.00** which is the amount I claimed.

3.    On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money

*1*

pursuant to SIPA. *Id.*; 15 U.S.C. § 78fff-1(a).

4.      On December 23, 2008, the Court issued an Order directing the BMIS Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.      The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.      On or about **February 6, 2009**, I submitted a customer claim form to the BMIS Trustee for Account Number **1S0351** (Exhibit B hereto), which claim was designated by the BMIS Trustee as Claim Number **2753** (my "Customer Claim"). My Final BMIS Statement was submitted with my Customer Claim. *See* Customer Claim (Exhibit B hereto).

7.      On or about **June 3, 2010**, the BMIS Trustee sent the Determination Letter to me, disallowing my Customer Claim in its entirety, rather than allowing the claim in the amount of **$215,495.91**. I claimed **$209,000** as that the amount I opened the account with. *See* Determination Letter (Exhibit A).[1]

8.      I hereby object to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

9.      <u>First Objection</u>. The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12]. Included with my Customer Claim was my final BMIS statement showing a final balance of **$215,495.91**. I claimed **$209,000** as that the amount I

---

[1]



opened the account with. *See* Customer Claim (Exhibit B hereto). The Final BMIS statement is the best evidence of the amount owed based on the Debtor's books and records. Accordingly, the claim should be allowed in the full amount of **$209,000**.

10.    Second Objection. The BMIS Trustee has set forth no legal basis for disallowing the Customer Claim. The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) that "because you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding." Determination Letter at 1-2 (Exhibit A hereto). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order  [Dkt. No. 12];

(b)    is inadequate to rebut the prima facie validity of my Customer Claim, as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11.    Third Objection. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the BMIS Trustee objects to my Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter. *See also* "Another View: Unwinding Madoff Fraud Fairly," Deal Blog. NY times.com (May 6, 2009). This is incorrect for the following reasons: The BMIS Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as the dollar amount of the account or accounts of a customer, to



be determined by --

(a)     calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(b)     any indebtedness of such customer to the debtor on the filing date;

15 U.S.C. § 78lll(11).

12.     (a)     The BMIS Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b).     SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements that I received stated that I owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . . .

S. Rep. No. 95-763, at *2 (1978) (emphasis added). While there may be a basis to disallow customer claims for wholly fictitious securities of nonexisting entities, here the securities set forth on my Final BMIS Statement and prior statements were those of actual companies listed on the stock exchange. SIPC (Securities INVESTOR PROTECTION Corporation) was established by Congress, as the name indicates, to protect investors. The BMIS Trustee is defying Congressional intent.

(c)     I deposited actual funds with BMIS with the expectation that I would receive distributions of profits earned from actual securities purchase and sale transactions conducted with such funds. The balance on my Final BMIS Statement reflects the

4

aggregate amount of deposits that I made into my account. I have suffered a loss as a result of BMIS's failure to return such amount to me. The BMIS Trustee's formula is an improper and wholly inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to have applied an expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the "money in/money out" formula as not reflecting the expectations of the parties. The Court explained:

Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria [the dishonest broker], not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope -- indeed a reasonable expectation -- that it would grow. <u>Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages.</u> Had Gruttadauria invested Plaintiffs' money as requested, their funds would like grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track        Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added). This applies precisely to my Customer Claim.

The BMIS Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings. For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether --



if they triple in value, you'll get the securities. . . . Even if they're not there.

Court: Even if they're not there.

Harbeck: Correct.

Court: In other words, if the money was diverted, converted --

Harbeck: And the securities were never purchased.

Court: Okay.

Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C hereto) (excerpt). The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds -- because Goren never executed the transactions -- the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA "reasonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality" such as when the customer receives a confirmation reflecting a purchase, "even where the purchase never actually incurred and the debtor instead converted the cash deposited by the claimant to fund that



purchase").[2] I am situated no differently from the "securities claimants" in *New Times* who thought they purchased bona fide securities. Accordingly, my Customer Claim should be recognized in full.

In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, I am entitled to recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq.* Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as me.

Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the debtors on my deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

13.   Fourth Objection. The BMIS Trustee's action in reducing the amount shown on my Customer Claim by any prior gains reflected on my final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the

---

2 There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers whole even if securities of customers are "lost . . . misappropriated, never purchased or even stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in his account even if securities were "never purchased").

7

Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

14.   Fifth Objection. The BMIS Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the BMIS Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The BMIS Trustee is required to state and prove when the Ponzi scheme began.

15.   The BMIS Trustee also states in the Determination Letter that "no securities were ever purchased by BLMIS" for my Customer Account. The BMIS Trustee, however, has not submitted evidence proving that this assertion is true.[3]

16.   Sixth Objection. I was required to pay income taxes on earnings the BMIS Trustee alleges are fictitious. The BMIS Trustee has justified his proposed method of calculating claims as fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method purportedly equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the BMIS Trustee's method is correct, my customer claim should be adjusted by adding all amounts I actually paid as income taxes on allegedly fictitious gains to equalize my treatment with that of other customers. *See SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

17.   Seventh Objection. The Determination Letter purports to calculate the "net equity" for my BMIS account on the basis of certain withdrawal transactions for which I have no or incomplete records. It is unreasonable to anticipate that customers would maintain records of accounts for long periods of time given: (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS; and (c) the fact that historical records such as



those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the BMIS Trustee should be required to prove that the alleged withdrawal transactions occurred by furnishing the appropriate records to me and, absent such records, such transactions should be deleted from the calculation of my "net equity." Likewise the BMIS Trustee should be required to prove that the deposit transactions are completely listed by furnishing the appropriate records to me.

18.   <u>Eighth Objection</u>. The BMIS Trustee has breached his statutory obligation to "promptly" replace a customer's securities. 15 U.S.C. § 78fff-2(b). The BMIS Trustee is obligated to replace my securities up to a value of $500,000 as valued on my November 30, 2008 customer statement.

Relief Requested

19.   For the reasons stated herein, my Customer Claim should be allowed in its entirety. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to me in the amount of **$209,000** plus interest from the date of the Determination Letter without imposing conditions to payment which are not authorized or warranted.

The BMIS Trustee's determination amounts to an improper disallowance of a claim that has prima facie validity. *See* Bankruptcy Code § 502(a) Bankr. R. 3001(f). The BMIS Trustee has offered no factual or legal basis for his Determination. The BMIS Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and I will file a response.

I request such other relief as may be just and equitable.

CONCLUSION

I reserve the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of my right to object on any additional grounds.

I reserve all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

9

I reserve all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

I incorporate by reference all reservations of rights set forth in the my Customer Claim.  Nothing in this Objection is intended, or shall be construed, as a waiver of any rights that I possess.

Dated:        June 16, 2010

*Sally K Simonds*

SALLY K. SIMONDS

10

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

### BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____

HOME:_____

Taxpayer I.D. Number (Social Security No.)
_____

Account Number:   1S0351
SALLY K SIMONDS
LIVING TRUST DTD JULY 27, 2000
399 OMAOPIO ROAD
KULA MAUI, HI 96790

(If incorrect, please change)

**NOTE:**   **BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

*********************************************************************

1.      Claim for money balances as of **December 11, 2008** :
        a.      The Broker owes me a Credit (Cr.) Balance of         $ 209,000
        b.      I owe the Broker a Debit (Dr.) Balance of           $_____

502180406                                    1

c.   If you wish to repay the Debit Balance,
     please insert the amount you wish to repay and
     attach a check payable to "Irving H. Picard, Esq.,
     Trustee for Bernard L. Madoff Investment Securities LLC."
     If you wish to make a payment, **it must be enclosed**
     with this claim form.                                    $_____

d.   If balance is zero, insert "None."                        _____

2.   Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | _____ | _____ |
| b. | I owe the Broker securities | _____ | _____ |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | Number of Shares or Face Amount of Bonds | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | ✓ |

9.  Have you or any member of your family
    ever filed a claim under the Securities
    Investor Protection Act of 1970?  if
    so, give name of that broker.                     _____ _ _  ____ ✓____

    Please list the full name and address of anyone assisting you in the
    preparation of this claim form:_____
    _____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _2 - 6 - 09_   Signature _Sally K Simonds_

Date _____   Signature_____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

May 24, 2010

Sally K Simonds Living Trust Dtd July 27, 2000
399 Omaopio Road
Kula Maui, Hawaii 96790

Dear Sally K Simonds Living Trust Dtd July 27, 2000:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1S0351 designated as Claim Number 2753:

Your claim for a credit balance of $209,000.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $282,694.86), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

securities (total of $0.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($282,694.86) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after May 24, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3

| | Table 3 | | |
|---|---|---|---|
| | DEPOSITS | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 7/8/1997 | TRANS FROM 1S009910 | $208,476.61 | $0.00 |
| **Total Deposits:** | | $208,476.61 | $0.00 |
| | | | |
| | WITHDRAWALS | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 10/16/1997 | CHECK | ($8,976.94) | ($8,976.94) |
| 1/13/1998 | CHECK | ($7,097.25) | ($7,097.25) |
| 4/8/1998 | CHECK | ($10,101.38) | ($10,101.38) |
| 7/9/1998 | CHECK | ($8,981.22) | ($8,981.22) |
| 10/9/1998 | CHECK | ($5,397.73) | ($5,397.73) |
| 1/13/1999 | CHECK | ($10,207.95) | ($10,207.95) |
| 4/13/1999 | CHECK | ($8,915.67) | ($8,915.67) |
| 7/8/1999 | CHECK | ($14,437.07) | ($14,437.07) |
| 10/8/1999 | CHECK | ($6,896.22) | ($6,896.22) |
| 1/6/2000 | CHECK | ($7,299.87) | ($7,299.87) |
| 4/7/2000 | CHECK | ($9,136.01) | ($9,136.01) |
| 7/7/2000 | CHECK | ($6,012.73) | ($6,012.73) |
| 10/11/2000 | CHECK | ($4,267.94) | ($4,267.94) |
| 1/10/2001 | CHECK | ($3,788.59) | ($3,788.59) |
| 4/6/2001 | CHECK | ($9,686.31) | ($9,686.31) |
| 7/9/2001 | CHECK | ($6,172.09) | ($6,172.09) |
| 10/9/2001 | CHECK | ($4,264.82) | ($4,264.82) |
| 1/11/2002 | CHECK | ($6,421.63) | ($6,421.63) |
| 4/10/2002 | CHECK | ($2,268.64) | ($2,268.64) |
| 7/8/2002 | CHECK | ($8,881.16) | ($8,881.16) |
| 10/7/2002 | CHECK | ($11,149.18) | ($11,149.18) |
| 1/10/2003 | CHECK | ($3,700.94) | ($3,700.94) |
| 4/9/2003 | CHECK | ($4,585.34) | ($4,585.34) |
| 7/8/2003 | CHECK | ($5,441.14) | ($5,441.14) |
| 10/9/2003 | CHECK | ($7,185.57) | ($7,185.57) |
| 1/8/2004 | CHECK | ($3,037.06) | ($3,037.06) |
| 4/8/2004 | CHECK | ($3,596.19) | ($3,596.19) |
| 7/7/2004 | CHECK | ($5,587.75) | ($5,587.75) |
| 10/7/2004 | CHECK | ($5,694.36) | ($5,694.36) |
| 1/7/2005 | CHECK | ($3,664.38) | ($3,664.38) |
| 4/7/2005 | CHECK | ($3,744.63) | ($3,744.63) |
| 7/7/2005 | CHECK | ($4,042.23) | ($4,042.23) |
| 10/7/2005 | CHECK | ($3,758.62) | ($3,758.62) |
| 1/9/2006 | CHECK | ($5,818.75) | ($5,818.75) |
| 4/7/2006 | CHECK | ($4,811.12) | ($4,811.12) |

| | | | |
|---|---|---|---|
| 7/10/2006 | CHECK | ($5,331.02) | ($5,331.02) |
| 10/6/2006 | CHECK | ($9,028.04) | ($9,028.04) |
| 1/8/2007 | CHECK | ($5,398.76) | ($5,398.76) |
| 4/4/2007 | CHECK | ($4,698.07) | ($4,698.07) |
| 7/6/2007 | CHECK | ($6,242.27) | ($6,242.27) |
| 10/4/2007 | CHECK | ($6,545.13) | ($6,545.13) |
| 1/8/2008 | CHECK | ($5,465.05) | ($5,465.05) |
| 4/7/2008 | CHECK | ($1,724.63) | ($1,724.63) |
| 7/7/2008 | CHECK | ($10,427.21) | ($10,427.21) |
| 10/6/2008 | CHECK | ($2,806.20) | ($2,806.20) |
| **Total Withdrawals:** | | ($282,694.86) | ($282,694.86) |
| | | | |
| **Total deposits less withdrawals:** | | ($74,218.25) | ($282,694.86) |

# Exhibit C
# (New Times Excerpt)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In the Matter of:                         )
                                          )
NEW TIMES SECURITIES                      )
SERVICES, INC.                            )
                                          )
                Debtor                    )
                                          )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1) Application filed by proposed class claimants to
authorize and approve the filing of a class proof of claim
and for a certification of the putative class and to
shorten time for the hearing

Memorandum by proposed class claimants

Memorandum by Plaintiff Securities Investor Protection
Corporation

Memorandum of law by Trustee James W. Giddens

Affidavit of Derek J. T. Adler in opposition

                          United States Bankruptcy
                          Court
                          Westbury, New York

                          July 28, 2000
                          10:00 a.m.

B E F O R E:

        HONORABLE STAN BERNSTEIN
        United States Bankruptcy Judge

A P P E A R A N C E S:

        HUGHES HUBBARD & REED LLP
          Attorney for James W. Giddens, Trustee
        One Battery Park Plaza
        New York, New York  10004
          BY:  JAMES W. KOBAK, JR., ESQ.
               DANIEL S. LUBELL, ESQ.

        (516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

1      THE COURT: Okay, so, you're telling me that

2  this is very different from the open transaction.

3      MR. HARBECK: Correct.

4      THE COURT: Okay, so, now we're dealing with a

5  closed transaction, where the money is there, you have

6  interest in a --

7      MR. HARBECK: The securities are there.

8      THE COURT: -- real --

9      MR. HARBECK: Not the money is there. The

10  securities are supposed to be there.

11      THE COURT: No, no -- yeah, you have -- you

12  have an ownership interest in the securities; namely,

13  shares of the mutual fund, of a mutual fund that is real,

14  existing as of the petition date.

15      MR. HARBECK: Dreyfus, Janus, you name it.

16      THE COURT: Okay.

17      MR. HARBECK: Now, what Congress did is it said

18  it wants to give the Trustee and SIPC a very good idea of

19  what securities have to -- that the Trustee is going to

20  have to go out into the marketplace and buy. So, if you

21  file within sixty days, you'll get the securities, without

22  question. Whether -- if they triple in value, you'll get

23  the securities.

24      But, if --

25      THE COURT: Even -- even if --

(516) 741-5342    Tankoos Reporting Co.    (212) 349-9692

23

MR. HARBECK:   Even if they're not there.

THE COURT:   Even if they're not there.

MR. HARBECK:   Correct.

THE COURT:   In other words, if the money was diverted, converted --

MR. HARBECK:   And the securities were never purchased.

THE COURT:   Okay.

MR. HARBECK:   And, if those positions triple, we will gladly give the people their securities positions.

THE COURT:   But, you've got to jump.

MR. HARBECK:   But, you've got to act fast, yeah.  And, Congress did that --

THE COURT:   Because -- because --

MR. HARBECK:   -- because of the fluctuations.

THE COURT:   -- because there's a concern -- because there's a concern that the value of this mutual fund might skyrocket and it's going to cost SIPC a lot more money.

MR. HARBECK:   Six months down the line, that's right.

THE COURT:   Okay, all right.  And, you don't want people playing games with you.

MR. HARBECK:   That's correct.

THE COURT:   Deciding when they're going to --

(515) 741-5342   Tankoos Reporting Co.   (212) 349-9692

UNITED STATES PO

## Flat Rate
## Mailing Envelope

**For Domestic and International Use**

Visit us at usps.com

**PRIORITY**®
**MAIL**
UNITED STATES POSTAL SERVICE
For Domestic and International Use

:'S FIRMLY

**PLEASE PRESS FIRMLY**

INTERNATIONAL RESTRICTIONS APPLY:

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

4-POUND
INTERNA

Customs f
Internation
or ask a re

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7009 2250 0002 0150 9659

From/

From: SIMONDS
PO BOX 1069
Kula, HAKAWAO MAUI  HI 96790

RECEIVED
JUN 21 2010
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

399 Omaopio Rd
Kula HAKAWAO MAUI HI 96790

CLERK OF THE UNITED STATES
BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF N.Y.
ONE BOWLING GREEN
N.Y.C., N.Y. 10004

Label 228C, January 2008

F05
T
90/200

Please recycle.

USPS packaging products have been awarded Cradle to Cradle Certification™ for their ecologically-intelligent design. For more information go to mbdc.com/usps
Cradle to Cradle Certified™ is a certification mark of MBDC.


Recycled Paper

