# EXHIBIT C

# FRIER LEVITT
ATTORNEYS AT LAW

Michelle Greenberg, Esq.
84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Facsimile:  (973) 618-0650
jlevitt@frierlevitt.com

Attorneys for Heirs of RJ

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED JUN 11 2010 U.S. BANKRUPTCY COURT, SDNY

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

### OBJECTION TO TRUSTEE'S DETERMINATION OF THE CUSTOMER CLAIM OF HEIRS OF RJ

Heirs of RJ ("Claimant"), by and through its undersigned counsel, hereby object to the determination by Irving H. Picard, as trustee (the "Trustee") of Bernard L. Madoff Investment Securities, LLC ("BLMIS"), denying their timely filed customer claim against BLMIS, and respectfully represent as follows:

1

## BACKGROUND

1. As set forth more fully in the customer claim, designated as claim no. 014697 (the "Customer Claim"), attached hereto as <u>Exhibit A</u>, without exhibits, Claimants invested with Kingate Global Fund, which in turn, invested in the securities markets through BLMIS.

2. On December 11, 208, the above-captioned liquidation proceeding was commenced against BLMIS pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

3. On December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") and the Trustee was appointed under SIPA to oversee the liquidation of the assets of BLMIS and to process all claim against BLMIS in accordance with SIPA.

4. On December 23, 2008, the Bankruptcy Court entered an order (the "Procedures Order") [Dkt. No. 12] establishing various procedures for the filing and determination of customer claims. To the extent the Trustee disagrees with the amount asserted in a customer claim, the Procedures Order provides that the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore..." Procedures Order at 6.

5. On or about July 1, 2009, Claimants timely filed their Customer Claim with the Trustee pursuant to the Procedures Order.

6. By notice dated December 8, 2009 (the "Determination Notice"), a copy of which is attached hereto as <u>Exhibit B</u>, the Trustee notified Claimant of his determination denying the Customer Claim. In the Determination Notice, the Trustee summarily stated that the Customer Claim had been denied because:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll(2). Accordingly, you Claim for securities and/or a credit balance is **DENIED**.

7. Approximately 2000 other claimants received similar determination notice and filed objections to such notices.

8. By Order dated April 13, 2010 (the "Scheduling Order") [Dkt. No. 2205], the Bankruptcy Court established orderly procedures to determine whether the indirect investors, like Claimants, qualify as "customers" under SIPA and are entitled to protection thereunder. Those claims who object to the Trustee's determination of their customer claim may participate in the proceedings that will ultimately determine whether the indirect investors of BLMIS qualify as "customers" under SIPA. Scheduling Order at 2-3.

9. Claimant's initial deadline to respond to the Determination Notice was January 7, 2010, which by agreement with counsel to the Trustee was extended up through and including July 7, 2010.

## JOINDER TO PLEADINGS OF OTHER SIMILARLY SITUATED CUSTOMERS AND RESERVATION OF RIGHTS

10. Claimant hereby joins, and fully incorporates by reference as if fully restated herein, the arguments and authority cited in the objections and briefs filed on behalf of similarly situated claimants. In addition, Claimant submits this Objection so that it may participate in the forthcoming proceedings, pursuant to which this Bankruptcy Court will decide whether indirect investors are "customers" under SIPA. Any failure to object on any particular ground shall not be construed as a waiver of and is without prejudice to Claimant's right to object on such ground at a later date. Claimant reserves its right to revise, supplement or amend this Objection.

## ARGUMENT

I.  **SIPA CONTAINS NO REQUIREMENT THAT CLAIMANTS HAVE A DIRECT ACCOUNT WITH BLMIS TO BE A "CUSTOMER' ENTITLED TO ROTECTION.**

11. Contrary to the Trustee's determination, Claimant is a "customer" of BLMIS under the plain meaning of SIPA. The Trustee's determination that Claimants must have had a specifically titled account recorded among BLMIS's "available books and records" has no statutory basis and is inconsistent with the purpose of SIPA.

12. To be protected under SIPA, an investor must come within the statutory definition of "customer". Section 78lll(2) of SIPA defines "customer" as:

> *any person* (including any person with whom the debtor deals as a principal or agent) who has a claim on account of securities received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The terms "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for purposes of purchasing such securities...

15 U.S.C. § 78lll(2) (emphasis added).

13. The broad statutory definition of customer in no way mandates that a claimant directly deal with, or deposit case directly with, the debtor. Indeed, there is no requirement that an investor have an account directly with the debtor. See, e.g., In re First State Sec. Corp., 34, B.R. 492, 495-96 (Bankr. S.D. Fla. 1980) (finding claimants were "customers" of debtor where claimants' accounts were with a third-party broker and not the debtor itself).

14. SIPA is remedial legislation intended to protect investors of insolvent brokers and, as such, should be liberally construed to effect its purpose. Id. (citing, Tcherepnin v. Knight, 389 U.S. 332 (1967)). The Trustee's unduly narrow and strict construction of the term "customer" to exclude indirect investors is inconsistent with that purpose and reads into SIPA a requirement that does not

4

exist. Each investor who invested in BLMIS, whether directly or indirectly, qualifies as a "customer" under SIPA.

## II.   SIPA EXPRESSLY AFFORDS PROTECTION TO INDIRECT INVESTORS

15.   By its terms, SIPA expressly intends to protect indirect investors, providing:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established...that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank (which customers are not themselves a broker or dealer or bank or a person described in paragraph (4), *in which event such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.*

15 U.S.C. § 78fff-3(a)(5) (emphasis added).

16.   Under that provision, Congress made clear that SIPA affords protection to certain indirect investors, i.e., investors participating in the securities markets through financial intermediaries. Participation through such financial intermediaries obviates any need for a direct account relationship between the investor and a debtor. See, First State Sec. Corp., 34 B.R. at 495-96 ("There is nothing in SIPA which suggests that coverage should be denied merely because the debtor used the facilities of another innocent broker in converting its customer's property."). Indeed, there is no substantive difference between direct and indirect investors; both ultimately tried to participate in the securities markets through the same broker-dealer – BLMIS.

17.   In addition, under SIPA, only two categories of persons are excluded from customer status: (i) any person with a claim arising out of transactions with a foreign subsidiary of a member of SIPC; and (ii) any person with a claim for cash or securities which can be considered part of the capital of the debtor, or which is subordinated to the claims of any or all creditors of the debtor. 15 U.S.C. § 78lll(2). Indirect investors, like Claimant, are not included in either of those two exceptions. Had Congress intended to exclude indirect claimants from the definition of "customer",

5

it would have done so explicitly – either by specifying them within a third enumerated exception, and/or by making the existence of a specifically titled account within the debtor's "available books and records" an express condition for obtaining "customer" status. But Congress did not do so.

### RELIEF REQUESTED

18. For the reasons stated herein, and those arguments and authority cited in the objections and briefs filed on behalf of similarly situated claimants, Claimant respectfully requests that the Bankruptcy Court overrule the Determination Notice and find that Claimants are "customers" within the meaning of 15 U.S.C. § 78lll(2), direct that Claimants be treated by the Trustee in the same manner and grant them relief in BLMIS liquidation proceedings to the same extent as direct investors in the BLMIS, and grant such other and further relief as may be just, proper, and equitable.

Dated: June 10, 2010
      Pine Brook, New Jersey

FRIER & LEVITT, LLC

By: _____
    Michelle Greenberg, Esq (MG-3047)

84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Facsimile:   (973) 618-0650
jlevitt@frierlevitt.com

Attorneys for Heirs of RJ