UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>              v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**ORDER REQUESTING ASSISTANCE OF THE QUEEN'S BENCH DIVISION OF THE HIGH COURT TO ORDER DISCLOSURE BY NON-PARTY WITNESSES**

This Court, upon the showing of good cause and evidence submitted in the application of Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"), and as trustee for the estate of Bernard L. Madoff ("Madoff"), finds as follows and requests the assistance of the Queen's Bench Division of the High Court to enter Orders of the High Court for the delivery of specific documents, subject to the following terms and conditions:

1.    The Court finds that the specific documents listed in Schedule I are likely to be in the possession, custody or control of HSBC Holdings plc and/or HSBC Bank plc and that such documents are likely to include or lead to the discovery of material evidence relevant to the Trustee's investigation of the fraud perpetrated by BLMIS, consistent with the Trustee's statutory investigatory authority as set forth in SIPA.

1

2

2.      The Court requests an order compelling the production of these documents to the Queen's Bench Division of the High Court for transmittal to this Court.

Dated: New York, New York
       July ___, 2010

                                      HONORABLE BURTON R. LIFLAND
                                      UNITED STATES BANKRUPTCY JUDGE

**SCHEDULE I**
**LETTER OF REQUEST TO HSBC HOLDINGS PLC AND HSBC BANK PLC**

A.  **DEFINITIONS AND INSTRUCTIONS**

1.  The term "HSBC" refers to HSBC Holdings plc, HSBC Bank plc and any parent, subsidiary, affiliate, predecessor, successor, principal, member, manager, employee, agent or representative thereof.

2.  The term "Madoff" refers to Bernard L. Madoff Investment Securities, LLC; Madoff Securities International Limited; and any subsidiaries, affiliates, directors, agents or representatives thereof.

3.  The term "document" specifically includes responsive content regardless of the media upon which it is expressed including but not limited to paper, physical evidence and electronically stored information. "Document" includes but is not limited to all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted. "Document" includes but is not limited to voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations. The term "document" includes "metadata" which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business. The term "document" includes all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc. The term "document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term. Identical copies of "documents" stored in distinct locations are separate documents within the meaning of this term

4.  The term "KPMG Reports" refers to the KPMG reports dated 16 February 2006 and 8 September 2008 entitled "HSBC Bank plc Review of fraud and related operational risks at Bernard L. Madoff Investment Securities LLC."

5.  The term "communication" specifically includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document" and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written communications, including communications by email.

3

6.      The term "concern" or "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

7.      The following rules of construction apply to this Letter of Request:

    a.    "Any" and "all" shall be deemed to include the other;

    b.    the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Letter of Request all responses that might otherwise be construed to be outside of its scope;

    c.    the terms "all" and "each" shall be construed as "all and each";

    d.    the use of the singular form of any word includes the plural and vice versa.

8.      Except as otherwise noted, this Letter of Request requires the production of documents created in or referencing the time period from the beginning of HSBC's relationship with any of the funds invested in BLMIS until 31 December 2008, inclusive (the "Relevant Period").

9.      Produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof and the original shall be made available for inspection.

10.      If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the SIPA Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

11.      If any document sought by this Letter of Request once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

4

## B. DOCUMENTS TO BE PRODUCED

1. All documents sufficient to ascertain HSBC's policies and procedures with regard to the preservation of documents.

2. All HSBC due diligence documents or reports relating to Madoff prepared from February 2000 through December 2008.

3. All documents concerning the KPMG Reports, including without limitation drafts of the KPMG Reports.

4. All documents concerning the engagement of KPMG in connection with the KPMG Reports including without limitation the 8 September 2005 and 19 March 2008 engagement letters between KPMG LLP and HSBC Bank plc.

5. All documents concerning HSBC Bank plc's decision to and reason for requesting the commissioning of the KPMG Reports.

6. All documents provided to KPMG by HSBC or developed in association with HSBC for the purposes of informing, or in connection with, the preparation of the KPMG Reports.

7. All notes recording meetings between KPMG personnel and HSBC or BLMIS personnel in connection with the preparation of the KPMG Reports.

8. Any other analyses of fraud or operational risks related to BLMIS either performed internally or by an outside party hired by HSBC.

9. All documents created by, or communications concerning BLMIS sent from or received by, the following individuals: Aubrey Abiven, Fosia Abou-Elhassane, Michelle Amesse, Lucia Andrich, Antonio Arcidiacone, Luis Astorquia, Nathalie Baelen, Alberto Benbassat, Mario Benbassat, Stephane Benbassat, William Benjamin, Eileen Bernstein, Dubravka Bijon, Germain Birgen, Sabrina Blake, Gerald J.P. Brady, Annie Brunschwig, Scott Buitekant, John Cargill, Clark Cheng, Nicolas Claquin, Erner Clark, Jonathan Clark, Christine Coe, Ian Cohen, John Collis, Caroline Conaty, Aidan Conlon, Natalie Courtney, Erika Cook, George Covo, Bernett Cox, Nadia Cravatte, Denis Desbiez, Louis Dogress, Daniel Doscas, Robert Dummett, Julien Durr, Roland Eberhard, Paul Ellis, Henrik Elonen, Sonja Fabjan, Fatina Fahdi, Frederick Feve, Nigel Fielding, Saverio Fiorino, Peter Fischer, Emma Flynn, Helmuth Frey, Robert Furrevig, Alan Ganly, Allan Ganly, Marcia Gilbert, Richard Goddard, Richard Godfrey, Ronnie Griffin, William Scott Grob, Niaz Haider, Roger Hanson, Marlene Harrison, Michael Hartwig, Christian Hausmaninger, Paul Hickey, David Higgins, Claudia Hocke, Timothy Howell, Victor Jara, Isabelle Jeunet, Joel Johnson, Vaibhav Kalia, Roger Kearey, Matthew Kerfoot, James Keyes, Steve Kinne, Sonya Kohn, Fracois Kremer, Celine Labarsougue, Jean-Claude Lang, Rosemary Leahy, Christiane H. Lidenshmidt, Philip Liu, Filip Majcen, Christopher Mampoy, Kaye-Ann Marsh, Laurent Mathysen-Gerst, Micahel Peter May, Kyle McCarthy, Pauline McGouran, Anne Meehan, Joel Meshel, Oana Modoran, Sonya Mooney, Franco Mugnai, David Mullane, Ian Mullen, Desi Narasimhan, Brian Nash, Roberto Nespolo, Aisling O'Connor, David O'Donnell, Chris O'Neill, Jane O'Reilly, Aileen Organ, Riley Outerbridge, Kurt Overley, Mark Overley, Lydia Passos, Sarah Payne, Christelle Perin, Brian Pettit, Friedrich Pfeffer, Stephen Phan, Andreas Pirkner, Lia Porcella, Christina Qian, Michael Quellmelz, Claude Quintus, Ursula Radel-Fano, Ursula Radel-Leszczynski, Marie Renard, Roberto Ricci, Peter Rigg, Mark Rodgers, John Rockings, Lisa Roitman, Elin Ruzika, Peter Schmid, Russell Schreiber, Lauren Schulman, BL Shailer, George Sittas, Kieran Slevin, Jennifer Skokan, David Smith, Michael Smith, Paul Smith, Vladimir Stepcyzski, Claudia Stetter, Jean-Claude Stoffel, Nancy Sun, Kim Tang, Joanne Taylor, Paisley Taylor, Mor awa Thiam, Tanaya Vaidya, Cedric Vuignier, Victoria Vysotina, Cathy Wang, JC Wilcockson, Lenneke Willems, Bernard Ysebaert, Albert Yu, Adam Zielinski, and Eliahu Zilka.

10. All due diligence related to any fund invested in BLMIS.

11. All service level agreements or other agreements explaining contractual duties between HSBC and any fund invested in BLMIS including without limitation pricing policies, administrator agreements and custodian agreements.

12. Details of all the custodian, administrator or other service fees paid to HSBC by any fund invested in BLMIS.

13. All sub-custodian agreements between HSBC and BLMIS.

14. All documents passing between HSBC and BLMIS regarding the negotiation of sub—custodian agreements.

6

15. All documents concerning the selection of BLMIS as an asset manager for any fund invested in BLMIS.

16. All documents concerning HSBC's decision to form a service provider, leverage provider or other relationship with any fund invested in BLMIS.

17. All documents concerning any efforts made to verify BLMIS' securities holding positions and pricing information for funds invested in BLMIS.

18. All bank statements, financial statements and general and auxiliary ledgers (or other comparable records) of funds invested in BLMIS.

19. All documents reflecting HSBC's transmittal of money or property to, or redemptions from, BLMIS or funds invested in BLMIS including without limitation redemptions made in connection with HSBC's structured products program.

20. All documents concerning the reasons for the redemptions described in the previous request.

## C.   HOW DOCUMENTS ARE TO BE PRODUCED

1.   All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the requesting party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2.   All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.   Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.   Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s),

7

table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.      Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.      Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content.  In addition, the text of the documents generated at the time the document was created or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable.  In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.