CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Thomas J. Moloney
Evan A. Davis

*Attorneys for HSBC Holdings plc and HSBC Bank plc*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

Securities Investor Protection Corporation,　　　　　　:

　　　　　　　　　　Plaintiff,　　　　　　　　　　　　　 :

　　　　　　　　　v.　　　　　　　　　　　　　　　　　:

Bernard L. Madoff Investment Securities LLC,　　　　　　:

　　　　　　　　　　Defendant.　　　　　　　　　　　　:

------------------------------------------------------------------ X

Adv. Pro. No. 08-01789
(BRL)

**HSBC HOLDINGS PLC AND HSBC BANK PLC'S OPPOSITION TO TRUSTEE'S
MOTION PURSUANT TO 28 U.S.C. § 1781(b)(2) AND RULE 2004 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE FOR AN ORDER ISSUING REQUESTS
FOR JUDICIAL ASSISTANCE (LETTER OF REQUEST) FOR SERVICE OF
<u>SUBPOENAS UPON HSBC HOLDINGS PLC AND HSBC BANK PLC</u>**

HSBC Holdings plc and HSBC Bank plc (together "HSBC"),[1] by and through its undersigned counsel, respectfully submit this opposition to the Trustee's Motion Pursuant To 28 U.S.C. § 1781(b)(2) And Rule 2004 Of The Federal Rules Of Bankruptcy Procedure For An

---

[1] HSBC Bank plc and HSBC Holdings plc make this appearance solely for the purpose of opposing the Trustee's motion, which should not be construed as a submission to the jurisdiction of the U.S. Bankruptcy Court.

Order Issuing Requests For Judicial Assistance (Letter Of Request) For Service Of Subpoenas Upon HSBC Holdings plc And HSBC Bank plc (the "Motion").[2]

PRELIMINARY STATEMENT

1. Before the Court is a motion to issue a Letter of Request to a U.K. court.[3] HSBC objects to the Motion because the Trustee has asked the Court to sanction a subpoena that exceeds the Trustee's authority and is otherwise objectionable under U.S. law.

2. The subpoena is purportedly an exercise of the Trustee's authority under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). This assertion, however, does not withstand scrutiny. First, the Trustee cannot serve a 2004 subpoena on either HSBC Holdings plc or HSBC Bank plc because HSBC Bank plc is a defendant in adversary proceedings brought by him. Any discovery must instead comply with the procedural safeguards set forth in the Federal Rules of Civil Procedure, which govern those proceedings. Second, the Trustee appears to be seeking in serving his subpoena on HSBC not only documents related to the claims in his adversary proceedings, but also documents which could be relevant to other litigations brought by Bernard L. Madoff Investment Securities LLC ("BLMIS") investors (direct and indirect) against HSBC Holdings plc, HSBC Bank plc and/or its subsidiaries and/or affiliates (collectively the "HSBC Group"). The Trustee's tenuous interest in such litigations, based in part upon his claims against the plaintiffs in those actions, does not justify the discovery he seeks or the proposed interference with the discovery plans in place in those litigations. Third, the Trustee's requests in any event exceed the permissible scope of Rule 2004 discovery, because they do not relate to the acts, conduct, or property or to the liabilities and financial

---

[2] Along with this Opposition, HSBC is filing an Objection to the specific requests, which is annexed hereto as Ex. A.
[3] The Trustee waived his right to a memorandum of law. In the event that he submits a response to this Opposition, HSBC respectfully requests that it be given an opportunity to reply.

2

condition of the debtor. <u>Finally</u>, the subpoena is overbroad, ambiguous and vague, and unlimited by a reasonable time frame or clearly defined scope. As drafted, it would impose an enormously costly and time-consuming search, while producing only a small subset, if any, of material actually relevant to the Trustee.

3. No entity within the HSBC Group has made claims against the BLMIS estate on its own behalf. Certain non-U.S. HSBC Group members (but not HSBC Holdings plc or HSBC Bank plc) did provide custodial, administration and similar services to a number of funds incorporated outside the U.S. whose assets were invested with BLMIS, but made no investment recommendations for those funds. To the extent entities within the HSBC Group have been sued around the world for providing those services, it is because certain entities and individuals whose investments were misappropriated by Madoff want to blame a deep pocket for their own investment decisions. The Trustee has no legitimate interest in furthering the agenda of such litigation.

4. Notwithstanding these objections, HSBC does not wish to obstruct the Trustee's investigation, and HSBC is willing to meet and confer in good faith with the Trustee to draft a more tailored document request that would comport with the limitations on the Trustee's authority under U.S. law and impose a more reasonable burden on HSBC.

5. This objection is based on grounds of U.S. law, which the Court is best suited to adjudicate. HSBC reserves the right to further object to the execution of any Letter of Request before the Queen's Bench Division of the High Court ("High Court") on grounds of English law (including English law interpretations of the Hague Convention on the Taking of Evidence Abroad) and/or on grounds of bank secrecy and/or other privacy laws of jurisdictions that may be applicable.

3

BACKGROUND

6.   On June 23, 2010, the Trustee filed the subject motion pursuant to 28 U.S.C. § 1781(b)(2) and Rule 2004 of the Federal Rules of Bankruptcy Procedure, seeking an order issuing requests for judicial assistance from the High Court, for the service of subpoenas upon HSBC Holdings plc and HSBC Bank plc. The Motion attaches a proposed order (the "Proposed Order") that includes the subpoena that the Trustee requests the High Court serve on HSBC ("Proposed Subpoena"). The Proposed Subpoena contains a list of twenty broad document requests (the "Document Requests").

7.   The Motion omits the fact that since March 2009, HSBC Bank USA N.A. ("HBUS") has responded to over a dozen Rule 2004 subpoenas from the Trustee. During this process, HSBC's counsel has met and conferred with the Trustee numerous times, as part of its efforts to cooperate with the Trustee's investigation. HBUS, as part of its good faith efforts to assist the Trustee, has produced over 60,000 pages of documents, and engaged in an extensive rolling document production that has required it to expend significant resources.

8.   Also omitted from the Motion is the fact that HSBC Bank plc[4] is a named defendant in three adversary proceedings the Trustee has initiated against certain investment funds ("Adversary Proceedings").[5] In one of those actions, the defendant fund has filed a motion to dismiss and the hearing on that motion as well as the pre-trial conference has been adjourned

---

[4] HSBC Securities Services (Luxembourg) S.A. is also a defendant in those actions. HSBC Securities Services (Luxembourg) S.A. is a subsidiary of HSBC Bank plc, which is a subsidiary of HSBC Holdings plc.

[5] Complaint, Irving H. Picard v. Alpha Prime Fund Limited et al., Adv. Pro. No. 09-1364 (Bankr. S.D.N.Y. filed July 15, 2009) ("Alpha Prime Complaint"); Second Amended Complaint, Irving H. Picard v. Herald Fund SPC et al., Adv. Pro. No. 09-1359 (Bankr. S.D.N.Y. filed Oct. 13, 2009) ("Herald Fund Spc Complaint"); Complaint, Irving H. Picard v. Primeo Fund et al., Adv. Pro. No. 09-1366 (Bankr. S.D.N.Y. filed July 15, 2009) ("Primeo Fund Complaint").

until September 2, 2010. In the remaining two, the defendant funds are in default, and the pre-trial conferences have been adjourned until July 22, 2010.

9. In addition to the actions brought by the Trustee, entities within the HSBC Group are defendants in numerous proceedings around the world. Investors of BLMIS feeder funds have brought class action litigation in both Florida and New York against, inter alia, entities within the HSBC Group. Discovery in those actions is currently stayed pursuant to the Private Securities Litigation Reform Act of 1995. Entities within the HSBC Group are also defendants in actions by feeder funds (some of whom have filed claims in the BLMIS liquidation proceeding) in Bermuda, the United Kingdom, Luxembourg, and Ireland. The Trustee has been made aware of these proceedings, and in certain cases, has been invited to join to secure any rights he may have. To date, the Trustee has declined to intervene in any of these proceedings.

## ARGUMENT

I. **The Trustee Is Not Entitled To Rule 2004 Discovery Where An Adversary Proceeding Has Been Brought Against The Proposed Rule 2004 Examinee**

10. The Trustee's Motion asks the Court to find that the Trustee is entitled to the material sought from HSBC under his statutory authority as provided by the Securities Investor Protection Act, which entitles the Trustee to take discovery under the Federal Rules of Bankruptcy Procedure. Proposed Order ¶ 1; Motion ¶¶ 2, 8. The Court cannot make this finding and should deny the Motion because the Proposed Subpoena exceeds the Trustee's authority under Rule 2004.

11. The Trustee has brought three adversary proceedings against HSBC Bank plc.[6] It is hornbook law that "[I]f an adversary proceeding or contested matter is pending . . . , it

---

[6] While HSBC Holdings plc is not a party to the Adversary Proceedings, the Trustee is prohibited from taking Rule 2004 discovery even from non-parties to adversary proceedings if such discovery would implicate the issues or parties to that proceeding. In re Enron, 281 B.R. 836, 844 (Bankr. S.D.N.Y. 2002) (denying 2004 discovery of

5

is improper for one of the parties to use a Rule 2004 examination as a substitute for, or in addition to, discovery pursuant to [the Federal Rules]." 10 Collier on Bankruptcy 7026.01 (15th ed. rev. 2005); In re Enron, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (noting "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules . . . and not by Rule 2004."). To allow otherwise would create an "unavoidable and unintentional back door through which the trustee could avoid using the [more restrictive] Federal Rules of Civil Procedure by using Rule 2004." Id. at 842 (citing In re Bennett Funding Group, Inc., 203 B.R. 24, 30 (Bankr. N.D.N.Y. 1996)).

12. The Trustee purports to require discovery from HSBC regarding "the HSBC Group's roles and responsibilities in relation to feeder funds; the HSBC Group's structured products program as it relates to BLMIS investments; and HSBC Group's due diligence efforts with respect to BLMIS." Motion ¶ 10. The Adversary Proceedings also concern roles and responsibilities of certain HSBC Group members (including HSBC Bank plc) with respect to the feeder funds. Thus each adversary complaint pleads the HSBC Group defendant's role with respect to the defendant feeder fund[7] and its responsibilities as a stakeholder. Given the overlapping subject of roles and responsibilities to feeder funds in both the Adversary Proceedings and the Proposed Subpoena,[8] the "information demanded in the subpoena [will necessarily] relate to matters in the [Adversary Proceedings]." Bennett Funding, 203 B.R. at 29-30 (holding Rule 2004 discovery impermissible where the subject matter of the

---

material produced by a non-party to pending securities litigation where the information sought was necessarily related to that litigation). To the extent HSBC Holdings plc has any responsive documents – which is unlikely, see infra ¶ 20 – they would pertain to the same subject matter of the Adversary Proceedings.

[7] Alpha Prime Complaint ¶¶ 31, 32; Herald Fund Spc Complaint ¶¶ 26, 27; Primeo Fund Complaint ¶¶ 26, 27.

[8] While the Trustee also seeks information related to "HSBC Group's structured products program," Motion ¶ 10, as detailed in ¶ 7, supra, HBUS has produced scores of documents, including a substantial amount of information that would fall under this category.

6

subpoena and adversary proceeding were not "easily separable").[9] As such, the back-door discovery sought in the motion is an impermissible circumvention of the procedural safeguards of the Federal Rules and the Motion should be denied.

II.     **The Court Should Not Issue A Broad Subpoena When Doing So Will Substantially Interfere With Proceedings In Other Courts**

13.     The fraud perpetrated by Bernard Madoff has had consequences around the globe, and as a result, there is litigation around the globe, including multiple suits naming HSBC Group members as defendants. Courts where these actions are pending are carefully managing the discovery process and its timing in those actions. For example, in Ireland, the High Court is supervising complex discovery in litigations brought by feeder funds and shareholders of those funds. In Italy, the pleadings are closed in litigation related to one of those same funds. In federal court in Miami, Florida, argument on motions to dismiss a shareholder class action involving another feeder fund is scheduled for July 8. In Bermuda, defenses to litigation brought by still other feeder funds are scheduled to be filed shortly. In Luxembourg, three feeder funds have instituted suit against entities in the HSBC Group. In federal court in New York, discovery in class actions brought by shareholders in four feeder funds is stayed pending the scheduling of briefing on motions to dismiss.

14.     This Court should not impair the efficient conduct of those proceedings or allow the Trustee to, in effect, participate in cases where he is not a party. Under Rule 2004 the Trustee does not have universal power to conduct an inquisitional investigation to suggest the right outcome in all these cases. The Trustee has not participated in any of these cases for the

---

[9] To date, there has not been any discovery in the Adversary Proceedings. At a minimum, until the scope of discovery in the Adversary Proceedings is defined, the Trustee should be precluded from taking Rule 2004 discovery from HSBC. See, e.g., In re Cont'l Capital Inv. Servs., Inc., No. 03-3370, 2009 WL 1604703, at *2 (Bankr. N.D. Ohio Mar. 6, 2009) (referring to an earlier ruling denying motion for Rule 2004 subpoena where the court "found no meaningful way to differentiate whether and to what extent documents requested in the three [2004] subpoenas would not relate to the allegations in the . . . adversary complaint").

7

simple reason that they do not concern administration of the Madoff estate or the recovery of assets for that estate. With respect to one of these cases, the Trustee has asked this Court to bar claims being made against Madoff's family because they duplicate claims being made by the Trustee. That narrow exception, however, proves the point that in general the merits of these cases are not matters requiring the Trustee's investigation. In consequence, this Court should not allow him to intrude on the judicial proceedings that are the legitimate fora for resolving these disputes at significant attendant additional burden. In all events, the pursuit of these proceedings in accordance with the applicable law is clearly the superior means of determining whether HSBC Group members properly discharged their responsibilities with respect to particular feeder funds, rather than the "free-and-easy practice" of Rule 2004 exams. Enron, 281 B.R. at 841 (internal quotation marks and citation omitted).

15. It is well established that "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal." In re Coffee Cupboard, Inc., 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991). The Trustee's Proposed Order provides no safeguard that any information discovered from HSBC will not reach litigants in other proceedings by public disclosure or otherwise. Indeed from all that appears the Trustee intends to make full disclosure of what he discovers in a report. If this happens, it will undermine the procedure and limitations on discovery put in place by the courts adjudicating those disputes and create an impermissible back door around discovery limits. See, e.g., Enron, 281 B.R. at 844 (denying Rule 2004 request to estate creditor who was also lead plaintiff in a securities class action against the debtor out of concern that information obtained would be used in that proceeding); cf. In re Recoton Corp., 307 B.R. 751, 760 (Bankr. S.D.N.Y. 2004) (Rule 2004 discovery granted where a protective order prohibited any disclosure to

plaintiffs in an action pending against the subjects of the 2004 exam). This is another reason why the Court should respect the discovery processes being administered by other courts and exercise its discretion by denying the Trustee's motion. In re Cont'l Capital Inv. Servs., Inc., No. 03-3370, 2009 WL 1604703, at *4 (Bankr. N.D. Ohio Mar. 6, 2009) (decision to grant 2004 relief is discretionary).

### III. The Trustee's Proposed Subpoena Exceeds The Scope Of Discovery Authorized By Rule 2004

16.     Even if the Trustee were entitled to discovery under Rule 2004, which he is not, his request should be denied because the Proposed Subpoena far exceeds the scope of permissible Rule 2004 discovery.

17.     The Trustee does not have an unrestricted license to issue Rule 2004 subpoenas, but must abide by important limits to the scope of an examination under Rule 2004, including the rule that the requesting party must establish "good cause" for the requested discovery. See In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004); In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). The requesting party must show that the discovery sought is necessary to establish a legitimate claim, or that the denial of such discovery would cause hardship or injustice. See Metiom, 318 B.R. at 268. In determining whether a party has shown good cause, courts must weigh "'the relevance of and necessity of the information sought by examination. . . . The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents.'" Coffee Cupboard, 128 B.R. at 514 (quoting In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)).

18.     The Trustee contends that he needs the vast amount of information he seeks "[i]n order to adequately investigate the facts and circumstances of the BLMIS fraud,"

9

Motion ¶ 10, but makes no effort to explain why or how his requests further that goal, other than a perfunctory assertion that the documents requested "are relevant and necessary in order to allow the Trustee to carry out his duties of marshaling the assets and properly administering the BLMIS estate." Id. ¶ 13. But the tenor of Trustee's requests is to fix the liability of HSBC Group members not to the Madoff Estate but to feeder funds and their investors. The requests in the aggregate would require the collection of vast volumes of documents with no nexus to the Trustee's "duties of marshaling the assets and properly administering the BLMIS estate." Id. The Trustee has failed to show that the Document Requests are both relevant and necessary. See, e.g., Document Requests Nos. 11, 12 (requesting service level agreements and details of service fees between HSBC and "any fund invested in BLMIS"); Coffee Cupboard, 128 B.R. at 514 (relevance alone is insufficient to demonstrate good cause; the movant must also demonstrate the necessity of the information he seeks).

19.  Moreover, to the extent the Trustee seeks documents from HSBC Holdings plc, all of his requests are irrelevant: HSBC Holdings plc had no relationship with or connection to either BLMIS or the various feeder funds, and, accordingly, the Trustee cannot show good cause for directing his Proposed Subpoena towards that entity. Simply put, "[t]he examination of a witness about matters having no relationship [to] or no effect on the administration of an estate is improper." Id.

20.  It must be underscored that, as shown above, the vast quantity of information called for by the Proposed Subpoena would be entirely irrelevant and/or unnecessary to the investigation or administration of the BLMIS estate, and cannot even begin to justify the burden and expense it would impose on HSBC. See In re Texaco Inc., 79 B.R. 551, 553 (Bankr.

S.D.N.Y. 1987); see also infra Part IV. Under these circumstances, this Court should exercise its discretion and deny the Trustee's request for judicial assistance.

### IV. The Trustee's Proposed Subpoena Is Also Improper For Because It Seeks To Impose An Undue Burden On HSBC

21. Finally, as detailed more fully in the Objections attached as Exhibit A, HSBC objects to the Trustee's subpoena on the basis that it is manifestly overbroad and unduly burdensome. See Fed. R. Civ. P. 26(c), 45(c)(3)(A)(iii)-(iv); see also Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Sanofi-Synthelabo v. Apotex Inc., No. 02 Civ. 2255 (SHS), 2009 WL 5247497, at *3 (S.D.N.Y. Dec. 30, 2009) (internal quotation marks and citations omitted). "In addition, the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" Concord Boat, 169 F.R.D. at 49 (citing Fed. R. Civ. P. 45(c)(2)(B)) (alteration in original).

22. This subpoena would be more disruptive and costly than beneficial, as its breadth and ambiguity would lead to months of very expensive effort to satisfy, likely requiring the collection and review of at least hundreds of thousands, if not millions of pages of documents.[10] This problem arises initially because the Trustee defines "document" in this subpoena to include, among other things:

> all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted . . . voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail

---

[10] HSBC reserves the right to submit evidence to substantiate this claim as necessary. At this stage, it remains difficult to fully determine the cost involved, because certain of the Trustee's document requests are so vague and ambiguous, a plan for searching and reviewing documents is unascertainable. See Objections, annexed hereto as Ex. A.

11

> messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations . . . 'metadata' which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business. . . . all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc. . . . multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term.

Proposed Subpoena ¶ A.3. Similar definitions have been found to be "obviously too broad and border[ing] on the ridiculous." Texaco, 79 B.R. at 553.

23. Further exemplifying the extreme breadth and burdensome nature of the Proposed Subpoena, the Trustee seeks "all documents created by, or communications concerning BLMIS sent from our received by" over 150 individuals, many of whom are not employees of any member of the HSBC Group, at least one of whom is outside counsel to HSBC, and some whose identities are simply unknown.

24. Moreover, only one of the twenty Document Requests references a specific (eight year) time period; the rest call for the production of all "documents created in or referencing the time period from the beginning of HSBC's relationship with any of the funds invested in BLMIS until 31 December 2008." Proposed Subpoena ¶ A.8. Beyond the patent vagueness and ambiguity of this request, it could require the collection and production of documents ranging back 15 years or more. The Court must impose reasonable limits on the Trustee's discovery. See Cont'l Capital, 2009 WL 1604703, at *4 (rejecting SIPA trustee's "argument that he needs all of the documents requested, regardless of time, in order to assess the Ponzi scheme . . . that resulted in Debtors' financial demise, to fulfill his statutory duties under SIPA . . . .").

## CONCLUSION

For the reasons set forth herein, HSBC respectfully requests that the Court enter an order denying in its entirety or, in the alternative, limiting the scope of the subpoenas requested to be served on HSBC in an appropriate manner and entering a protective order limiting the use of any discovery obtained by the Trustee through the Letter of Request, and granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 1, 2010

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

By: /s/ Thomas J. Moloney (TJM)
Thomas J. Moloney
A Member of the Firm

Evan A. Davis

*Attorneys for HSBC Holdings plc and HSBC Bank plc*