> real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants,"…could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements."

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004).

17. Two years later, a different Second Circuit panel considered related issues in the *New Times* liquidation and expressed the very same views regarding the importance under SIPA of meeting a customer's legitimate expectations: "It is a customer's legitimate expectations on the filing date…that determines the availability, nature, and extent of customer relief under SIPA." *In re New Times Sec. Sevs., Inc.*, 463 F.3d 125, 128 (2d Cir. 2006) ("*New Times II*"). Of particular relevance is SIPC's repeated statement that customers' legitimate expectations control, even when no securities were ever purchased:

> "[R]easonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and there fore generally is entitled to recover those securities (within the limits imposed by SIPA), <u>even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase</u>…[T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates."

Br. Of Appellant SIPC at 23-24 (citing *New Times I*) (*emphasis added*), *New Times II*, (No. 05-5527).

18.     As the Court in *New Times II* explained, it is only in the context of "fictitious" securities claims that the "cash in, cash out" valuations methodology makes sense:

> "<u>Because there were no such securities</u>, and it was therefore impossible to reimburse customers with the actual securities or their market value on the filing date (the usual remedies when customers hold specific securities), the [*New Times I* Court] determined that the securities should be valued according to the amount of the initial investment. The Court declined to base the recovery on the rosy account statements telling customers how well the <u>imaginary</u> securities were doing, because treating the fictitious paper profits as within the ambit of the customers' 'legitimate expectations' would lead to the absurdity of 'duped' investors reaping windfalls as a result of fraudulent promises made on <u>fake</u> securities…The Court looked to the initial investment as the measure for reimbursement because the initial investment amount was the best proxy for the customers' legitimate expectations."

*New Times II*, 463 F.3d at 129-30 (citations omitted) (*emphasis added*).

19.     The "cash in , cash out" valuation methodology employed in *New Times I* with respect to "fictitious" securities claimants has no place here, where Trust Number 6 U/A 12/23/88's confirmations and account statements reflected "real", well-known and publicly verifiable securities.  Because the prices and values ascribed to the "securities positions" on those records "mirrored what would have happened had the given transaction been executed," Br. For *New Times* Trustee and SIPC at 7 n.6, the liquidation filing date value of those "securities positions" is the "best proxy for the customers' legitimate expectations." *New Times II*, 463 F.3d at 130.

20.     Fourth, the Trustee's methodology for calculating "net equity" is an improper measure of loss.  Ms. Giamo invested money in her Trust Number 6 U/A 12/23/88 account with the reasonable expectation that it would grow, and the balance on

9

her November 30, 2008 account statement reflects the benefit of that bargain. Indeed, the Trust Number 6 U/A 12/23/88 Madoff account statements indicate such growth. In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court in opining on a Ponzi scheme case rejected the very same "money in/money out" methodology being utilized by the Trustee. The Court stated, "…the out-of-pocket theory, which seeks to restore to Plaintiff's only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages." *Visconsi*, 244 Fed. Appx. At 713. Like the investors in *Visconsi*, Ms. Giamo is entitled to the full amount reflected in her November 30, 2008 account statement, regardless of her previous deposits and withdrawals.

21.  Fifth, the Trustee's position conflicts with federal statutes, including but not limited to the Internal Revenue Code. For example:

(a)  Rev. Proc. 2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognized the income earned by customers, on which they paid taxes annually. Yet, the Trustee ha taken the position that the income earned by customers is not their money.

(b)  Rev. Proc. 2009-20 provides for a five-year carry-back of the theft loss. Yet, the Trustee has indicated that he intends to "claw back" income withdrawn by customers over the last six (6) years.

(c)  Customers were required by law to take mandatory withdrawals from IRA accounts. Yet the Trustee is deducting from SIPC insurance the mandatory withdrawals that customers took and paid taxes on.

10

22. Because of his refusal to comply with SIPA's mandate that he "promptly satisfy customer claims based on their last statements (their "Statutory Balances"), 15 U.S.C. Section 78fff-3(a) and 4(c), the Trustee has decided that he needs a vast team of forensic accountants to pour through decades of records to determine each customer's net investment before SIPC pays any amount to a customer. Clearly, this is inconsistent with the statutory scheme and the legislative intent.

23. Ms. Giamo's "securities positions" in the Trust Number 6 U/A 12/23/88 account are readily ascertainable from the November 30, 2008 statement. (Exhibit B) Moreover, Ms. Giamo did not have any "indebtedness" to Madoff. She did not owe Madoff any cash or securities since she did not borrow from Madoff on margin. *See* H.R. Rep. No. 95-746, at 4754 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *see also Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (under the 1970 statutory regime, when there were shortages of securities to satisfy "net" equity claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker); *see also In re First Street Sec. Corp.*, 34 B.R. 492, 497 (B.S.D. Fla. 1983) (offsetting indebtedness of customer to broker from claim amount where unauthorized stock purchased was partially funded by borrowing on margin). Because Ms. Giamo has no indebtedness to Madoff, there is no need to perform any calculations whatsoever to determine the amount of his net equity. Ms. Giamo's net equity for the Trust Number 6 U/A 12/23/88 account is simply the "securities positions" set forth on her last statement.

24. In the event that the Court should determine that claimed gains on deposited funds should not be allowed, then in the alternative, Ms. Giamo is entitled to

11

recover interest on such deposited amounts. Such interest is required as a matter of state law, and the United States Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to interest, are determined by state law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-1 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

(a) Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See e.g.* N.Y.C.P.L.R. Section 5004 (2009); *see e.g.* N.Y. Gen. Oblig. Section 5-501, et seq. (2009). Accordingly, Customer Claims should be recalculated by adding interest to all funds deposited by customers such as Ms. Giamo.

(b) Under New York law, which is applicable here, customers are entitled to any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer Claims should be recalculated by adding the amounts earned by the Debtors on Ms. Giamo's deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as…conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *see also Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

12

### IV. Trustee's Determination Amounts to an Improper Disallowance under the Bankruptcy Code

25. The Trustee's action in reducing the amount shown on Ms. Giamo's Customer Claim for the Trust Number 6 U/A 12/23/88 account by any prior gains reflected on her November 30, 2008 statement on prior Madoff statements is an attempt to avoid such gains without alleging any ground for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008 (2009).

### RELIEF REQUESTED

26. For the reasons stated herein, the Trust Number 6 U/A 12/23/88's Customer Claim should be allowed in its entirety in the amount of $549,912.69.

27. For the reasons stated herein, the Court should direct SIPC to issue immediate payment to the Trust Number 6 U/A 12/23/88 in the amount of $549,912.69, plus interest from the date of the Determination Letter, and such equitable relief as the Court deems appropriate.

28. The Trustee's determination amounts to an improper disallowance of a claim that has *prima facie* validity. *See* Bankruptcy Code Section 502(a) (2009). The Trustee has offered no factual or legal basis for his Determination. The Trustee's Determination Letter, and the objections contained therein, should be stricken, or alternatively, the Trustee should describe his position in detail including all relevant facts, legal theories, and authorities. Upon the filing of such a statement, this matter will be a contested proceeding under Rule 9014, and Ms. Giamo will file a response for Trust Number 6 U/A 12/23/88.

29.     Trust Number 6 U/A 12/23/88 requests such other relief as may be just and equitable.

## CONCLUSION

30.     Trust Number 6 U/A 12/23/88 reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed s a waiver of Ms. Giamo's right to object on any additional grounds.

31.     Trust Number 6 U/A 12/23/88 reserves all rights set forth under Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014 (2009).

32.     Trust Number 6 U/A 12/23/88 reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

33.     Trust Number 6 U/A 12/23/88 incorporates by reference all reservations of rights set forth in the Giamo Customer Claim.

Dated: June 29, 2010

>**/s/ Lee J. Mondshein**
>LEE J. MONDSHEIN, ESQ.
>Lee J. Mondshein (LM 2241)
>7600 Jericho Turnpike, Suite 200
>Woodbury, New York 11797
>Tel: (516) 364-8100
>Fax: (516) 364-8518
>*Attorney for Kathleen Giamo, Trustee of*
>*Trust Number 6 U/A 12/23/88*