**GORDON LAW GROUP, LLP**
Philip J. Gordon
585 Boylston Street
Boston, MA 02116
Phone: (617) 536-1800
Fax:    (617) 536-1802

*Attorneys for Naomi Gordon and Roger Gordon*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC.,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Naomi Gordon and Roger Gordon, as TIC (the "Gordons"), by and through their undersigned attorneys, hereby object to the Notice of Trustee's Determination of Claim, dated June 3, 2010 (the "Determination Letter"), as described herein.

Background

1.      The Gordons were "customers" of Bernard L. Madoff Investment Securities, LLC ("Madoff") as that term is defined under the Securities Investor Protection Act ("SIPA").

2. On December 11, 2008, the above-captioned liquidation proceeding was commenced against Madoff, pursuant to SIPA.

3. Irving Picard was appointed Trustee (the "Trustee"), charged with overseeing the liquidation of Madoff and processing customer claims. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. The December 23, 2008 Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor … ."

4. On or about February 13, 2009, the Gordons submitted a customer claim form to SIPC.

5. On June 3, 2010, the Trustee sent the Gordons the Determination Letter disallowing the claim in its entirety.

6. The Gordons hereby object to the Determination letter for the reasons described below.

## Objections

7. FIRST: No "Transfer". In the Determination Letter, the Trustee erroneously states that in 1997, the Gordon's "transferred" funds, but the Trustee provides no basis for that incorrect assumption. The Trustee then uses his fictitious assumption to disregard any and all amounts in the Gordons' account as of that date – treating the balance as zero. In fact, the Gordons made no such transfer. The Gordons only had one account under one taxpayer identification number. Reversing this

2

unconscionably fabricated "adjustment" entitles the Gordons to a positive net equity, even by the Trustee's own "cash-in/cash-out" calculations.

   8.  SECOND: <u>No legal basis for final "Zero" determination.</u>  The Trustee has set forth no legal or factual basis for disallowing the Gordons' claim in full.  The only explanations set forth in the Determination Letter are that (1) "no securities were ever purchased for your account," and (2) "the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer."  Neither of these purported grounds for disallowance have any statutory or other legal basis.  The Determination Letter is inadequate to rebut the prima facie validity of the Gordons' claim as provided in Section 502(a) of the Bankruptcy Code and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.  It appears that the Trustee has nevertheless adjusted amounts from the Gordons' final account balance to zero by relying on some sort of "cash-in/cash-out" formula, which has no basis in law.  More disturbing is that, in making these adjustments the Trustee then violates his own fictitious formula by denying the Gordons' the benefit of their earlier deposits by fabricating some sort of "transfer" which never occurred.

  The Trustee can not have it both ways:  on the one hand, inventing his own "cash-in/cash-out" rules to deny the Gordons' recovery on the $500,000, and then violating those very same "rules" in the next sentence to disregard the Gordons' original deposits.  This sort of disingenuous flip-flopping game to deny the Gordons' recovery must not be countenanced by this Court.

3

9. THIRD: <u>The Gordons are entitled to Prejudgment Interest</u>. Because Madoff converted the Gordons' funds, the Gordons are entitled to prejudgment interest at the rate of nine percent per annum from the date of each of their deposits. *See* N.Y. C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded … because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property …."); N.Y. C.P.L.R. § 5001(b) ("Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."); N.Y.C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").

10. FOURTH: <u>Failure to Comply with Court Order</u>. The Court's December 23, 2008 Order directs the Trustee to satisfy claims in accordance "with the Debtor's books and records." The final Madoff statement is the best evidence of the Debtor's books and records. Furthermore, the Determination Letter violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based.

11. FIFTH: <u>Failing to honor a customer's "legitimate expectations."</u> The Securities Investor Protection Corporation ("SIPC") rules enacted pursuant to SIPA, provide for the classification of claims in accordance with the legitimate expectations of a customer based upon the written transaction confirmations sent by the broker-dealer to the customer. Thus, SIPC is statutorily bound to honor those expectations.

4

12. SIXTH: <u>Violating SIPA by delaying SIPC insurance payments</u>. The Trustee has breached his statutory obligation to "promptly" replace a customer's securities. 15 U.S.C. § 78fff-2(b).

13. SEVENTH: <u>Failing to credit appreciation from transactions prior to formation of Madoff</u>. According to information published on the NYS Department of State website for the Division of Corporations, Madoff was formed as a domestic Limited Liability Company on December 4, 2000. In this proceeding, the Trustee has been appointed by the Court to conduct a liquidation of Madoff under and in accordance with the SIPA statute. The Trustee's Determination Letter purports to justify his denial of the Gordons' net equity and SIPC advance claim based upon alleged transactions and events which preceded the formation of Madoff. In doing so, the Trustee is acting beyond his lawful mandate which is limited to the liquidation of Madoff under SIPA.

14. EIGHTH: <u>Failing to credit any prior gains</u>. The Trustee's action in disregarding any prior gains reflected on the Gordons' account statements is an unlawful attempt to avoid such gains without alleging any grounds that such gains are avoidable under the Bankruptcy Code's avoidance provisions. *See* Fed. R. Bankr. P. 7001(1); 7008.

15. NINTH: <u>Failing to credit tax payments</u>. The Gordons have reported and paid taxes on the income reported to have been earned in the Gordons' Madoff accounts. According to the Trustee, however, there were no actual profits or income and no taxes should have required to be paid by the Gordons. Madoff caused and induced the Gordons to report said income and profits on the Gordons' tax returns and to pay taxes thereon based on the written information provided to the Gordons' and to the Taxing authorities by Madoff. Even under the Trustee's "cash-in/cash-out" methodology, if there were

5

actual profits and income generated for the Gordons' account, that income and those profits should be allowed as actual principal deposits to the account. If, arguendo, all such reported income and profits were fictitious, the Gordons are entitled to have the principal of their account credited with the taxes they were wrongfully induced to pay based on the reported Madoff income and profits as damages proximately caused by the fraud of Madoff.

16.     TENTH:  <u>Failing to give preference to Madoff customers over general non-customer creditors</u>.  SIPA specifically provides that the customers of a failed broker-dealer are entitled to a statutory preference over general non-customer creditors of the debtor and their allowed net equity must be paid in full before any payments are made to general non-customer creditors. By artificially reducing the aggregate net equity of the Madoff customers, the Trustee is violating that statutory preference thereby benefitting the general creditor class at the expense of the customers which SIPA was enacted to protect. The Determination Letter disallowing the Gordons' claim contributes to this improper failure to honor the statutory preference that the customers are to receive.

17.     ELEVENTH:  <u>Violating the Trustee's fiduciary duty to the Gordons and other Madoff customers</u>.  Under SIPA, the person designated and appointed by the Court to act as Trustee in a SIPA liquidation owes the customers of the debtor firm a fiduciary duty to act in their best interest and to advocate for them to the maximum extent permitted by law. The Trustee owes no such comparable duty to SIPC. The Determination Letter sent by the Trustee to the Gordons demonstrates facially that the Trustee is acting in a manner inconsistent with the duties he owes to customers of Madoff, including the Gordons. The only party that benefits from the Trustee's SIPC

"definition" of net equity is SIPC itself, which, as a result, will be relieved of its statutory obligations to thousands of Madoff customers.

### Relief

18.     For the reasons stated herein, at a minimum and without waiving the Gordons' rights to recover any additional sums, the Court should direct the Trustee to pay immediately to the Gordons at least the positive net equity amount, which would be arrived at after crediting back the improperly deducted "transferred" funds. This amount represents the minimum possible payment to the Gordons even according to the Trustee's own "cash-in/cash-out" calculations.

19.     The remaining amount of the Gordons' claim should be allowed in its entirety, and the Court should grant the Gordons an unsecured claim against the estate for any unpaid amounts after that.

20.     The Court should direct SIPC to issue immediate payment to the Gordons of the $500,000 SIPC advance (minus the positive net equity amount under paragraph 18 above, if paid), plus interest, without any delay.

21.     The Trustee's Determination Letter and its objections should be stricken, or alternatively, the Trustee should be ordered to describe his position in appropriate detail. Upon the filing of such a statement, this matter will be a contested proceeding under Fed. R. Bankr. P. 9014, and the Gordons will file their response. The Gordons further reserve all rights set forth under Rule 9014, including without limitation, their right to discovery.

22.     The Gordons request such other relief as may be just and equitable.

23. The Gordons reserve their right to revise, supplement or amend this Objection, and any failure to object on a particular ground shall not be construed as a waiver of the Gordons' right to object on any additional grounds.

Dated: June 30, 2010

      /s/ Philip J. Gordon
Philip J. Gordon (NY 4181871 & MA 630989)
GORDON LAW GROUP LLP
585 Boylston Street
Boston, Massachusetts 02116
Phone: (617) 536-1800
Fax: (617) 536-1802

*Attorneys for Naomi Gordon and Roger Gordon*