Adorno & Yoss LLP
350 E. Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 763-1200
Facsimile: (954) 766-7800
Jan Douglas Atlas
Email: jda@adorno.com

*Attorneys for Claimant Family Partners, LLP (Prime Fund)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____ /

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.
_____ /

In re:

BERNARD L. MADOFF,

        Debtor.
_____ /

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

**CLAIMANT'S OBJECTION TO TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S**
**DETERMINATIONS DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS**
**ACCOUNTS IN THEIR NAMES, NAMELY, INVESTORS IN FEEDER FUNDS**
**AND INCORPORATED MEMORANDUM OF LAW**

      Pursuant to this Court's April 13, 2010 order (the "Scheduling Order") (Dkt. No. 2205),

Claimant Family Partners, LLP (Prime Fund) ("Claimant"), through its undersigned counsel,

respectfully submits this Objection to the Trustee's Motion to Affirm Trustee's Determinations

Denying Claims of Claimants Without BLMIS Accounts in their Names, Namely, Investors in

Feeder Funds, and Incorporated Memorandum of Law, and in support thereof, states as follows:

## I.    INTRODUCTION

Claimant filed a claim with the Trustee pursuant to the Securities Investor Protection Act,

15 U.S.C. 78aaa, *et seq.* ("SIPA") on or about February 25, 2009. On December 8, 2009, the

Trustee issued a Notice of Trustee's Determination of Claim (the "Notice"), denying its claim

pursuant to SIPA. Claimant filed an Objection to that Notice on or about January 5, 2010. On

June 11, 2010, the Trustee filed a Motion to Affirm Trustee's Determinations Denying Claims of

Claimants Without BLMIS Accounts in their Names, Namely, Investors in Feeder Funds (the

"Motion"). The Trustee maintains that Claimant, as an investor in a "Feeder Fund," is not a

"customer" as defined under SIPA, and therefore, is not entitled to protection under SIPA. The

Motion is limited to claimants "whose claims emanate from their direct or indirect investments in

so-called 'feeder funds' that, in turn, had accounts with and invested directly with BLMIS."

(Trustee Memo. at p. 2.)

The Trustee claims that Claimant 1) is not a "customer" as defined by SIPA; and 2) has

no cognizable net equity claims. However, based on the acknowledged massive fraud

perpetuated by Bernard L. Madoff ("Madoff") and the magnitude of the losses suffered by the

investing public as a result, we submit that the instant situation is clearly and equitably

distinguishable from stereotypical SIPC cases, which generally concern bankrupt broker-dealers

without the overt existence of fraud. Accordingly, we submit that Claimant should be considered

a "customer" based on the legislative intent of SIPA, which is clearly to protect customers such

as Claimant, who have suffered from the shortcomings and malfeasance of the securities

industry; and, the general inherent equity powers of this Court.

## II.   BACKGROUND

Claimant placed the amount of $1,500,000.00 (the "Investment") with Emerald Asset Advisors, LLC ("Emerald") which purchased with the Investment a limited partnership interest in the Rye Select Broad Market Fund, LP ("Rye Fund") under the authority of the Rye Fund's General Partner, Tremont Partners, Inc. ("Tremont Partners"), a subsidiary of Tremont Group Holdings, Inc., copies of said documents evidencing the Investment are attached hereto. Emerald represented to Claimant that Tremont Partners placed all of the assets of the Rye Fund with Madoff and Bernard L. Madoff Investment Securities LLC ("BLMIS"). Claimant made the foregoing investments because it knew the funds would be invested with Madoff in a directed account at BLMIS. Moreover, Claimant was provided with certain documents, such as the Client Statement (a copy of which is attached hereto), which emphasized Madoff's connection with the Rye Fund. Accordingly, there is no question but that Claimant believed that its Investment would be received, acquired, and held by Madoff and BLMIS in the ordinary course of its business as a broker-dealer in an account for its benefit and safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. In other words, Claimant deposited cash with Emerald for the purpose of having Madoff and BLMIS purchase securities for its benefit.

Claimant's final Client Statement from the Rye Fund, attached hereto, reflects securities owed to Claimant in the amount of $1,545,655.45. Because it has been determined by the Trustee that the trades reported on said statement (as well as Claimant's preceding statements) were fabricated, Claimant only seeks to recover its initial investment of $1,500,000.00.

### III.    ANALYSIS

It is beyond dispute that the SIPA "is remedial legislation. As such it should be construed liberally to effect its purpose." *In re First State Securities Corp.*, 34 B.R. 492, 496 (Fla. 1983) (quoting *Tcherepnin v. Knight,* 389 U.S. 332 (1967)). "The purpose is the protection of the insolvent brokers' customers." *Id.* at 496.   In *Securities and Exchange Commission v. F. O. Baroff Co., Inc.*, 497 F.2d 280 (2d Cir. 1974) [hereinafter, "*F. O. Barroff Co.*"], the Second Circuit gave a detailed analysis of SIPA's legislative history and intent. *Id.* at 281.   Specifically, the court stated that:

> [t]he object of that statute, and the function of the Securities
> Investor Protection Corporation (SIPC) it created, ***is to protect the***
> ***public customers of securities dealers from suffering the***
> ***consequences of financial instability in the brokerage***
> ***industry***...Once a broker or dealer is found to be on the brink of
> collapse or in danger of failing to meet its obligations to its
> customers, a trustee is appointed for liquidation of the business.
> The firmS [sic] clients are cushioned (within limits) from personal
> loss through a special fund collected by SIPC from all securities
> dealers registered under the 1934 Securities Exchange Act...But
> the Securities Investor Protection Act allows only those who meet
> its definition of a 'customer' to share in this assurance.

*F. O. Baroff Co.*, 497 F.2d at 281 (emphasis added).   Citing the House of Representatives, the court went on to state that "[t]he primary purpose of [SIPA] is to provide protection for investors if the broker-dealer with whom they are doing business encounters financial troubles." *Id.* at 283.   In furtherance of SIPA, SIPC, "an independent corporation established by Congress," was created, "to reinstill[] confidence in the securities markets" by "protect[ing] investors from the effects of chronic instability in the securities industry." *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 411 F. Supp. 411, 412-13 (D.C. Mass. 1976).   SIPC's "prime responsibility [is] to establish...a substantial reserve fund which...provide[s] protection to investors in the event a brokerage firm collapse[s]." *Id.* at 413.

SIPA defines the term "customer" of a debtor as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities...

15 U.S.C.A. § 78lll(2).

When SIPA was enacted in 1970, it was "Congress's...intent to provide a 'safety net' for all investors who placed their money with US brokerage firms that later turned out to be engaged in fraudulent activities or otherwise failed." Peter J. Leveton, Co-Chairman, Agile Funds Investor Committee Before the House Financial Services Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises: Additional Reforms to the Securities Investor Protection Act (Dec. 9, 2009) [hereinafter *"Leveton Testimony"*]. SIPA aims to "protect all investors from losing 100% of their investment in fraudulent investment schemes run by brokerages supervised by the Securities and Exchange Commission ("SEC")." *Id.* "In 1970, Senator Edmund S. Muskie proclaimed, in urging the prompt enactment of SIPA: '...after this bill is enacted, no American will lose his savings through a brokerage firm bankruptcy.'" *Leveton Testimony* (citing Federal Broker Dealer Ins. Corporation: Hearing on S2388, 3988 and 3989 before the Subcommittee on Securities of the Senate Com. on Banking and Currency, 95th Congress Cog. 10 (1970) at 147)). "He did not say that only those investors who invested directly" with a bankrupt broker-dealer would be protected under SIPA, "but, instead, that **all Americans** would received such relief." *Id.*

The United States District Court for the Southern District of New York has further discussed the definition of the term "customer" in *Securities and Exchange Commission v. Kenneth Bove & Co., Inc.*, 378 F. Supp. 697 (S.D.N.Y. 1974) [hereinafter *"Kenneth Bove & Co."*]. The Court found that in order to be considered a "customer" under SIPA, "the claimant must have entrusted his securities to the debtor in liquidation," and have been "on account of securities received, acquired, or held by the debtor." *Id.* at 699. Claims pursuant to SIPA are "grounded on possession of identifiable securities by the broker." *Id.* Under SIPA, "**the preferential protection is accorded to a person who can trace and identify the...funds in the hands of the stockbroker.**" *Id.* (emphasis added).

Claimant's funds are clearly traceable and can be identified as being in the direct control of Madoff and BLMIS. As previously stated, Claimant, believing this to be a Madoff and BLMIS directed investment, permitted Emerald to purchase with the Investment a limited partnership interest in the Rye Fund, with the funds thereafter placed with Madoff and BLMIS.

Nevertheless, the Trustee, in an obvious effort to limit the allowable claims, takes the position that Claimant is not a "customer" under SIPA because it did not have a securities account with BLMIS, presumably because it did not "hand the money" to Madoff, even though Madoff had created the scenario where the subject money would be handed to his self-created agents; and furthermore, because it has no cognizable claim for net equity. According to the Trustee's narrow and inequitable interpretation of the term "customer," investors who invested directly with BLMIS will be entitled to recover up to $500,000.00 per BLMIS account from SIPC, while investors such as Claimant, who invested in BLMIS through a Madoff-created feeder fund, will receive **nothing** despite having suffered in the same manner. *Leveton Testimony.* Trustee's position is not only inequitable, but is in direct contravention of Congress'

intent to protect all investors who invested with an inherently fraudulent registered broker-dealer such as BLMIS.

When SIPA was enacted in 1970, there were no such entities like "feeder funds." Now, forty years later, the creation of hedge funds and feeder funds, implemented to magnify the amount of invested money, has extended investment opportunities and, of course, consequent exposure to a larger number of investors. Accordingly, whether Claimant is entitled to relief under SIPA should be based on SIPA's original benevolent legislative intent, rather than the non-persuasive authorities set forth by the Trustee in his supporting memorandum. Clearly, it was not, and could not have been, Congress' intent to discriminate between direct and indirect investors. All actual investors in BLMIS, regardless of whether they invested directly or indirectly, have "lost their money to the same fraud and suffered the same devastating effects," at the hands of Madoff. *Leveton Testimony*. Claimant, like the direct investors, invested its funds with the express intent and expectation that securities would be purchased by Madoff and BLMIS for its benefit. Accordingly, it is fundamentally unfair to deny Claimant's claim merely because its invested funds traveled to Madoff and BLMIS indirectly through a "feeder fund," a self-serving implementation by Madoff and BLMIS to access greater numbers of the unsuspecting public.

## IV.    CONCLUSION

Claimant is clearly a "customer" under SIPA and should be afforded its protection. The fact that Claimant's funds were not given directly from Claimant to BLMIS is of no consequence. As an investor, Claimant should be protected from the effects of the instable securities industry and, more specifically, the collapse of BLMIS, in which Claimant's assets were invested through presumably unsuspecting agents of Madoff and BLMIS, Emerald, the Rye

Adv. Pro. No. 08-01789 (BRL)

Fund, and Tremont Partners. To deny Claimant's claim would directly contravene the legislative

intent of SIPA. Accordingly, Claimant respectfully requests that the Trustee's Motion be denied;

that its claim be granted; and that it be afforded the protection to which it is entitled pursuant to

SIPA.

Dated: July 12, 2010

Respectfully submitted,

/s/ Jan Douglas Atlas
Jan Douglas Atlas
E-mail: jda@adorno.com
**Adorno & Yoss LLP**
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
Phone: (954) 763-1200
Fax: (954) 766-7800

*Attorneys for Claimant Family Partners, LLP*
*(Prime Fund)*

Pursuant to the Amended and Restated Limited Liability Partnership Agreement of Family Partners, LLP ("Family Partners") dated May 8, 2008 (attached hereto), the undersigned has the authority to sign on behalf of Family Partners in his capacity as Managing Partner.

Barry Ross, Managing Partner

## AMENDED & RESTATED
## LIMITED LIABILITY PARTNERSHIP AGREEMENT
## OF
## FAMILY PARTNERS, LLP

THIS AMENDED & RESTATED LIMITED LIABILITY PARTNERSHIP AGREEMENT (the "Agreement") is made and entered into and effective as of the 8th day of May, 2008, by and among **Albert D. Ross Revocable Trust, Stuart Ross and Ina Sue Ross as TBE, Levine Family Trust, Richard Tilkin, Jeff Needel and Andrea Needel as TBE, Barry Ross and Diane Ross as TBE, B&D Ross Grandchildren, LLLP, Ceil Parness, Bonnie Alexander and Ramsey Alexander**, each of whom is sometimes referred to individually as a **"Partner"** and all of whom are sometimes referred to collectively as the **"Partners"**. Barry Ross shall be the Managing Partner who shall have the authority to act in accordance with this Agreement and who has executed this Agreement in such capacity. The Partnership has filed a Registration Statement on September 29 2006 bearing document number GP0600001834 and a Statement of Qualification on October 4 2006 electing to treat the Partnership as a Limited Liability Partnership. The taxpayer identification number for the Partnership is 20-5644999. This Agreement shall supersede the Partnership Agreement dated the 29th day of September 2006 in its entirety.

The Partners have contributed an aggregate amount of $6,315,521 as of the date of this Agreement, such amounts as reflected in Exhibit A of this Agreement. The Partners respective Interests in the Partnership (the "Interests") and each name and address are reflected on Exhibit A hereto.

The Partnership is organized to invest and manage the Capital Contributions of the Partners in stocks, CDs, money markets and real estate directly or through professional money managers each as approved by a Majority in Interest of the Partners (the "Business"). Notwithstanding any provision herein to the contrary, the Partnership shall be limited to engaging in the Business or in any lawful activity reasonably related to the Business.

### AGREEMENT

In consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Partners, intending to be legally bound, agree as follows:

### SECTION 1.
### DEFINITIONS

**"Act"** means the Florida Revised Uniform Partnership Act of 1995, as amended and in effect from time to time.

**"Agreement"** means this Agreement, as amended from time to time.

**"Code"** means the Internal Revenue Code of 1986, as amended, from time to time, or any succeeding Internal Revenue laws.

A/R LLP Agreement – Family Partners

"**Distributable Cash**", for any fiscal period, means the cash on hand and in banks at the end of the period, less a reasonable allowance of cash needed for contingencies and anticipated obligations with respect to the activities of the Partnership, all as determined by the Managing Partner (but not including any cash reserved in a prior period of computation).

"**Interest**" means the entire ownership interest of a Partner in the Partnership.

"**Liquidation Proceeds**" means all of the cash and other property held by the Partnership at the time of the happening of an event causing dissolution of the Partnership, and all cash and property received by the Partnership thereafter, irrespective of whether such cash was or otherwise would have been considered Distributable Cash under the terms of this Agreement.

"**Majority in Interest of the Partners**" shall mean in excess of seventy-five (75%) percent of the Interests in the Partnership.

"**Partnership**" means **FAMILY PARTNERS, LLP**, a Florida limited liability partnership. The Partnership will be taxed as a partnership for federal income tax purposes; and, therefore, federal income tax law shall be applied to the Partnership, including, without limitation, Subchapter K of the Code, and the regulations promulgated thereunder.

"**Transfer**" means, as a noun, any voluntary or involuntary transfer, sale, pledge, hypothecation, or other disposition that conveys any portion of the Interest of a Partner to any person other than the present owner, including, without limitation, a disposition by will or intestacy, a distribution from a trust, the filing of a petition, whether voluntary or involuntary, in bankruptcy or any other proceeding for relief from debt, and the imposition of a charging order on the Interest; and means, as a verb, to make a Transfer, either voluntarily or involuntarily. "**Transferor**" means a person who makes a Transfer; and "**Transferee**" means a person who obtains an economic interest in the Interest Transferred, or who obtains the rights and powers of a Partner, from a Transferor, including, without limitation, the estate of a deceased Partner, the successor-in-interest to a Partner that has dissolved, liquidated or terminated, the estate of a bankrupt Partner and a distributee from a trust.

## SECTION 2.
## NAME

The Business of the Partnership will be conducted under the name **FAMILY PARTNERS, LLP** or such other name as the Partners may hereafter designate in writing.

## SECTION 3.
## TERM

The term of the Partnership will continue until the Partnership is dissolved as provided in this Agreement or the Act.

A/R LLP Agreement – Family Partners

2

## SECTION 4.
### BUSINESS OFFICES

The principal place of Business of the Partnership will be 3325 S. University Drive, Suite 210, Davie, FL 33328. The Partners may, from time to time, change the principal place of Business of the Partnership.

## SECTION 5.
### CAPITAL CONTRIBUTIONS

**5.1    Capital Contributions.** The capital contributions of each Partner with such Interests are listed on Exhibit A hereto.

**5.2    Additional Capital Contributions.**    No Partner shall be required to contribute additional capital to the Partnership, but shall be permitted the opportunity to contribute additional capital to its Capital Account upon written notice to the Managing Partner.

**5.3    No Interest on Capital Contributions.** No Partner will be paid interest on any Capital Contribution.

**5.4    Withdrawal and Return of Capital Contributions.** Each Partner, upon written notice to the Managing Partner, shall be entitled to withdraw all or any part of its Capital Contribution or its Capital Account upon which such Interest shall be reduced accordingly.

**5.5    Evidence of Ownership.** Except for a counterpart of this Agreement executed by each Partner, no certificates or other evidence of ownership will be issued with respect to Interests.

**5.6    No Partition.** The Interest of each Partner in the Partnership is personal property for all purposes. All property and interests in property, real or personal, owned by the Partnership are owned by the Partnership as an entity; and, except as a Partner in the Partnership, no Partner, individually, has any ownership of such property or interest owned by the Partnership. During the term of the Partnership and during any period of its liquidation following any dissolution, each Partner irrevocably waives any right that the Partner may have to maintain any action for partition with respect to any of the assets of the Partnership.

## SECTION 6.
### ALLOCATION OF
### PROFITS AND LOSSES

All items of income, gain, deduction, loss or credit will be allocated among the Partners in proportion to their Interests.

A/R LLP Agreement – Family Partners

3

## SECTION 7.
## DISTRIBUTIONS OF DISTRIBUTABLE CASH

To the extent available, Distributions of Distributable Cash will be made to the Partners on a monthly basis from time to time and in accordance with each Partner's request.

## SECTION 8.
## BOOKS OF ACCOUNT, RECORDS, AND REPORTS

**8.1    Responsibility for Books and Records.**  Proper and complete records and books of account will be kept by the Partners in which will be entered fully and accurately all transactions and other matters relative to the Partnership's Business as are usually entered into records and books of account maintained by persons engaged in businesses of a like character, including a Capital Account for each Partner.  The Partners designate Barry Ross to serve as their agent, for purposes of maintaining the books and records, and Ross Realty Investments, Inc. as their registered agent under the Act.  The Partnership books and records will be prepared in accordance with generally accepted accounting practices, consistently applied, and will be kept on a cash or accrual basis as the accountants engaged by the Managing Partner determine will be in the best interests of the Partnership.  The books and records will at all times be maintained at the principal place of Business of the Partnership and will be open to inspection and copying by the Partners or their duly authorized representatives during reasonable business hours.  Notwithstanding anything to the contrary contained herein, the Managing Partner shall be reimbursed for out of pocket expenses only and shall not be entitled to any fee or compensation.

**8.2    Reports to Partners.**  The Partnership will deliver to the Partners:

**(a)**    On a monthly basis, progress reports showing current distributions;

**(b)**    On a quarterly basis, progress reports;

**(c)**    On an annual basis, such information concerning the Partnership after the end of each fiscal year as may be necessary for the preparation by such a Partner of its income or other tax returns;

**(d)**    On an annual basis, an unaudited statement prepared by the Partnership's accountant setting forth, as of the end of and for each fiscal year, a profit and loss statement and a balance sheet of the Partnership and a statement showing the amounts allocated to or against each Interest during that year; and

**(c)**    From time to time, other information as in the judgment of the Partnership's accountant may be reasonably necessary for the Partners to be advised of the results of operations of the Partnership.

## SECTION 9.
## FISCAL YEAR

The fiscal year of the Partnership will end on the 31st day of December in each year.

A/R LLP Agreement – Family Partners

4

## SECTION 10.
## PARTNERSHIP FUNDS

The funds of the Partnership will be deposited in such bank account or accounts as may be designated by the Managing Partner from time to time. All withdrawals from any such bank accounts may be made by the Managing Partner or a duly authorized agent of the Partnership. Partnership funds will be held in the name of the Partnership and will not be commingled with those of any other person.

## SECTION 11.
## RESTRICTIONS ON TRANSFERS OF INTERESTS

**11.1    Restrictions on Transfer.** Without the written consent of the Managing Partner, no Partner may:

(a)    Transfer any portion of its Interest in the Partnership (directly or indirectly unless due to a disposition by will or intestacy or a disposition from a trust); or

(b)    Enter into any agreement (in its capacity as a Partner) which would make it impossible to carry on the Business of the Partnership.

Any Transfer in violation of this Agreement is void *ab initio*.

**11.2    Admission of New Partners.** New partners may be admitted to the Partnership only upon the written consent of each of the Partners.

**11.3    Effect of Void Transfers.** Any Transfer of any portion of an Interest which is made in violation of this Agreement, but which, as a matter of law, is not treated as void, will not cause a dissolution or termination of the Partnership. Upon a Transfer of any portion of an Interest which is made in violation of the terms of this Agreement, but which, as a matter of law, is not treated as void:

(a)    The Transferee in any such transaction will not be admitted as a Partner without the written consent of the Managing Partner then active; but will have only those rights afforded by the Act to holders of a "partner's transferable interest", subject to the other provisions of this Agreement.

(b)    Except to the extent that the provisions of Section 620.8601 of the Act cannot be varied by this Agreement, the Partners intend that, except as expressly provided for in this Section, no Partner, by virtue of the occurrence of any of the events described in Section 620.8601 of the Act, will dissociate or be dissociated from the Partnership.

**11.4    Agreement Prevails Over the Act.** The foregoing provisions of this Section supersede any similar, conflicting or additional rights, terms and conditions set forth in the Act which would otherwise be applicable to the Partnership and/or the Transferor or Transferee of an Interest, including, without limitation, any right that a withdrawn or dissociated Partner may have to sell its Interest to the Partnership or the other Partner, or otherwise be paid for its Interest prior to the dissolution and liquidation of the Partnership.

## SECTION 12.
## MANAGEMENT AND ADMINISTRATION OF BUSINESS

**12.1   Number and Appointment of Managing Partner.** It is the intention of the Partners that there will be one (1) Managing Partner and that Barry Ross shall serve for as long as the Partnership remains in existence, his disability, his death or his removal. There shall at all times during the Term of the Partnership be at least one (1) Managing Partner. In the event that the Managing Partner is unable to perform his duties hereunder, the Partners may elect a new Managing Partner with a majority in Interest of the Partners or dissolve the Partnership pursuant to the Act and this Agreement.

The Partners may remove the Managing Partner at any time, with or without cause, with the consent of a majority in Interest of the Partners either by written consent or at a special meeting called for that purpose.

A Managing Partner shall be treated as having incurred disability upon the date that such is declared legally incompetent under the laws of the State of Florida, or on the date that the Partnership receives a written opinion from a physician designated by the Partnership to the effect that such individual has incurred a mental or physical condition that can reasonably be expected to prevent such individual from carrying out the duties required for the Managing Partner under this Agreement for a period of three (3) months or longer from the date of such opinion. Each Managing Partner hereby covenants and agrees to cooperate with any physician so designated by the Partnership to determine whether such individual is disabled, provided that any physician so designated shall consult with any physician designated by or on behalf of such individual.

**12.2   Authority.** Except for situations in which the approval or consent of the Partners is required by this Agreement, the Managing Partner shall have the full and exclusive authority as well as a fiduciary duty of care and loyalty as well as an obligation to the Partners to manage and operate the Business of the Partnership in the best interests of the Partnership and its Partners. Each Managing Partner shall have the ability and full power to execute and deliver any and all documents which may be necessary to carry on the Business of the Partnership. The Managing Partner shall have all the rights and powers which are otherwise conferred by law or are necessary or advisable for the discharge of his duties and the management of the affairs of the Business of the Partnership, subject to the terms of this Agreement. No other Partner, in its capacity as such, may transact any Business for the Partnership or take any part in the management of the Partnership and will have no power to bind or commit the Partnership. Any Managing Partner who takes any action or binds the Partnership in violation of this Section shall be solely responsible for any loss or expense incurred as a result of the unauthorized action, shall indemnify and hold the Partnership harmless with respect to the loss or expense.

The Partnership will be managed by the Managing Partner, who shall have the authority to act on behalf of the Partnership as provided in Section the Act. Notwithstanding the foregoing grant of authority, the Managing Partner may not, without the consent of a Majority in Interest of the Partners:

(a)   Prior to the dissolution of the Partnership, sell substantially all of the Partnership property in liquidation or cessation of the Business;

(b)   Confess a judgment against the Partnership;

A/R LLP Agreement – Family Partners

6

(c)    Possess Partnership property or assign the right of the Partnership or its Partners in specific Partnership property for other than a Partnership purpose;

(d)    Make, execute, or deliver any assignments for the benefit of creditors;

(e)    Except as otherwise provided in this Agreement or the Act, dissolve and wind up the Partnership;

(f)    Except as otherwise provided in this Agreement, admit additional or substitute partners;

(g)    Do any act that would make it impossible to carry out the Partnership purposes and Business of the Partnership; or

(h)    Amend this Agreement.

**12.3    Liability.**  No Partner will be liable, responsible, or accountable in damages or otherwise to the Partnership or any Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on any Partner by this Agreement or by law unless the act or omission was performed or omitted fraudulently or in bad faith or constituted gross negligence.

**12.4    Indemnification.**  The Partnership will indemnify and hold harmless the Managing Partner from and against any loss, expense, damage, or injury suffered or sustained by them by reason of any acts, omissions, or alleged acts or omissions arising out of their activities on behalf of the Partnership or in furtherance of the interests of the Partnership, including but not limited to any judgment, award, settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, if the acts, omissions, or alleged acts or omissions upon which the actual or threatened action, proceeding, or claims are based were for a purpose reasonably believed to be in the best interests of the Partnership and were not performed or omitted fraudulently or in bad faith or as a result of gross negligence by a Partner.  Any such indemnification must be made first from the assets of the Partnership, and then from all the Partners and borne among them in accordance with their Interests.

## SECTION 13.
## DISSOLUTION OF THE PARTNERSHIP

The Partnership will be dissolved and its affairs wound-up on the first to occur of the following events:

(a)    The sale or other disposition of the Partnership's assets.

(b)    The consent of all of the Partners.

(c)    The happening of an event that makes it unlawful for substantially all of the Business of the Partnership to be continued, which is not cured within 90 days after notice to the Partnership of such event; or

(d)    Entry of a decree of judicial determination of dissolution under the Act.

A/R LLP Agreement – Family Partners

## SECTION 14.
## WINDING UP, TERMINATION, AND LIQUIDATING DISTRIBUTIONS

14.1    **Liquidation of Assets and Application of Proceeds.** If the Partnership is dissolved for any reason, no further Business may be conducted by the Partnership except for the taking of such action as may be necessary for the winding-up of its affairs and the distribution of its assets. Upon dissolution, the Partners must either act as liquidator, or appoint in writing one or more liquidators, who will have full authority to wind-up the affairs of the Partnership and make final distributions as provided in this Agreement. Upon the dissolution of the Partnership, the liquidator must reduce the assets of the Partnership to cash as promptly as is consistent with obtaining their fair value and apply and distribute the Liquidation Proceeds as provided below.

14.2    **Distributions of Liquidation Proceeds.** Upon the dissolution of the Partnership, the Liquidation Proceeds must be applied as follows:

(a)    First, to the payment of the expenses of the sale or other disposition of the Partnership's assets;

(b)    Second, to the discharge of all of the Partnership's debts and liabilities to creditors other than Partners;

(c)    Third, to the creation of such reserves as the liquidator may reasonably determine to be necessary for any contingent liabilities or obligations of the Partnership and the unused balance of those reserves, if any, will be distributed as provided below when the liquidator reasonably determines that the reserves are no longer necessary;

(d)    Fourth, to the payment and discharge, in order of priority, and thereafter prorated, of all of the Partnership's debts and liabilities owing to Partners; and

(e)    Thereafter, to those Partners with positive capital account balances,   in liquidation of their Interests.

14.3    **Final Reports.** Within a reasonable time following the completion of the liquidation of the Partnership's assets, the Partners will request that the accountant for the Partnership supply to each Partner a statement of the assets and liabilities of the Partnership as of the date of complete liquidation and each of the payments or distributions made under this Agreement.

14.4    **Termination.** Upon the completion of the liquidation of the Partnership and the distribution of all Partnership funds, the Partnership will terminate.

A/R LLP Agreement – Family Partners

8

## SECTION 15.
## NOTICES

All notices and demands required or permitted under this Agreement must be in writing and may be delivered personally or sent by certified mail or nationally recognized overnight courier service, postage prepaid, return receipt or other evidence of delivery requested, to the Partners at their addresses as shown from time to time on the records of the Partnership, and, if mailed, will be deemed given 3 days after it is mailed, or of if sent by overnight courier service, will be deemed given one day after it is delivered to the overnight courier service. Any Partner may specify a different address by notifying the other Partner in writing of the different address.

## SECTION 16.
## MISCELLANEOUS

**16.1    Governing Law.** This Agreement and the rights of the parties will be governed by and interpreted in accordance with the laws of the State of Florida.

**16.2    Effect.** Except as herein otherwise specifically provided, this Agreement is binding upon and will inure to the benefit of the parties and their legal representatives, heirs, administrators, personal representatives, successors, and permitted assigns.

**16.3    Pronouns And Numbers.** Wherever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and plural, and pronouns stated in either the masculine, the feminine, or the neuter gender includes the masculine, feminine, and neuter.

**16.4    Captions.** Captions or section headings contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, or extend the scope or intent of this Agreement or any provision hereof.

**16.5    Partial Enforceability.** If any provision of this Agreement, or the application of the provision to any person or circumstance is held to be invalid, then the remainder of this Agreement, or the application of that provision to persons or circumstances other than those with respect to which it is held invalid, will not be affected thereby.

**16.6    Counterparts.** This Agreement may be executed in several counterparts, each of which is an original but all of which will constitute one and the same instrument. This Agreement may contain more than one counterpart of the signature page and may be executed by the affixing of the signatures of each of the Partners to one of these counterpart signature pages. All the counterpart signature pages will be read as though one, and they will have the same force and effect as though all of the signers had signed a single signature page.

A/R LLP Agreement – Family Partners

THE MANAGING PARTNER ACKNOWLEDGES THAT IT HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTAND THE AGREEMENT, AND AGREE TO ABIDE BY ITS TERMS AND CONDITIONS.

MANAGING PARTNER:

_____
Barry Ross

A/R LLP Agreement – Family Partners

10

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK
THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE
OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE
TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO
ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                        WITNESSES (2):

Albert D. Ross Revocable Trust

_____            _____
[ADR Signature]                                 [Signature]

                                                _____
                                                [Print or type name]

Classic Residence by Hyatt
8500 W. Sunrise Blvd. #129                  _____
Sunrise, FL 33322                               [Signature]
_____
[Address]                                       _____
                                                [Print or type name]

May 8 2008
_____
[Date]

A/R LLP Agreement -- Family Partners

11

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                          WITNESSES (2):

Stuart Ross and Ina Sue Ross, TBE

_____                  _____
[SR Signature]                                   [Signature]

_____
[ISR Signature]                                  _____
                                                 [Print or type name]


_____                 _____
[Address]                                        [Signature]

May 8 2008                                       _____
_____                 [Print or type name]
[Date]

A/R LLP Agreement – Family Partners

12

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                          WITNESSES (2):

LEVINE FAMILY TRUST

_Paul Levine_                                    _MMR Almoner:_
Paul Levine, Trustee                            [Signature]

_Helen Levine_                                   MARTINE C. ALMONOR
Helen Levine, Trustee                           [Print or type name]

                                                 _Mary Ann Muller_
                                                 [Signature]

_1371 S Ocean Blvd_                              _MARY Axle/ miller_
[Address] Pompano Bch. Fl.                       [Print or type name]
            33062
May 8 2008    _May 21-08_
[Date]

A/R LLP Agreement – Family Partners

13

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:

WITNESSES (2):

_____
Richard Tilkin

_____
[Signature]

DON RUBIN
[Print or type name]

_____
[Signature]

SAMARA Z. TILKIN
[Print or type name]

77 Milton St. Milton, MA 02186
[Address]

May 8 2008
_____
[Date]

A/R LLP Agreement – Family Partners

14

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                          WITNESSES (2):

Jeff Needel & Andrea Needel TBE

_____                          _____
[JN Signature]                                   [Signature]

_____                          *Anne Slojkowski*
[AN Signature]                                    [Print or type name]

                                                 _____
                                                 [Signature]

21 Springhill Rd                                 *Angela M. Regentz*
[Address] RANDOLPH, NJ 07869                     [Print or type name]

May 8 2008

_____
[Date]

A/R LLP Agreement – Family Partners

15

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK
THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE
OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE
TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO
ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:

Barry Ross and Diane Ross, TBE

_____
[BR Signature]

_____
[DR Signature]

WITNESSES (2):

_____
[Signature]

A.D. Pappas
_____
[Print or type name]

_____
[Signature]

Barry Cohen
_____
[Print or type name]

3325 So. University Dr
_____
[Address]    #210, Davie, FL 33328

May 8 2008
_____
[Date]

A/R LLP Agreement – Family Partners

16

**THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.**

**PARTNER:**

**B&D ROSS GRANDCHILDREN, LLLP**

**WITNESSES (2):**

[Signature]

[Print or type name] A. D. Papp er

[Signature]

[Print or type name] Barry Cohen

3325 So. University #210
[Address]  DAVIE  FL 33328

May 8 2008

[Date]

A/R LLP Agreement – Family Partners

17

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                                    WITNESSES (2):

CELIA PARNESS

                                                            _____
                                                            [Signature]

_Celia Parness_                                             BARBARA P DUBROW
                                                            [Print or type name]

                                                            _____
                                                            [Signature]

464 MINDEN WAY                                              ALLEN DUBROW
WYNNEWOOD, PA. 19096                                        [Print or type name]
[Address]

May 8 2008        5/22/08
[Date]

A/R LLP Agreement – Family Partners

18

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:

BONNIE ALEXANDER

_____

24737 Calle Altamira
Calabasas CA 91302
[Address]

May 8 2008

_____
[Date]

WITNESSES (2):

_____
[Signature]

Ramsey Alexander
[Print or type name]

_____
[Signature]

Edward Harrison
[Print or type name]

A/R LLP Agreement – Family Partners

19

THE PARTNER ACKNOWLEDGES THAT THE PARTNER HAS BEEN ADVISED TO SEEK
THE ADVICE OF INDEPENDENT COUNSEL AND THE PARTNER HAS HAD THE
OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL, READ ALL THE
TERMS OF THIS AGREEMENT, UNDERSTANDS THE AGREEMENT, AND AGREES TO
ABIDE BY ITS TERMS AND CONDITIONS.

PARTNER:                                         WITNESSES (2):

RAMSEY ALEXANDER

_____                 _____
                                                [Signature]

                                                _Bonnie J Alexander_____
                                                [Print or type name]

                                                _____
                                                [Signature]

24737 Calle Altamira                            _Edward Harrison_____
Calabasas CA 91302                              [Print or type name]
_____
[Address]

May 8 2008
_____
[Date]

A/R LLP Agreement – Family Partners

20

### EXHIBIT A – INTERESTS/ AS OF 5/8/08

| PARTNER | CAPITAL CONTRIBUTION | INTEREST |
|---|---|---|
| ALBERT D ROSS Rev Trust<br>Classic Residence by Hyatt<br>8500 West Sunrise Blvd #129<br>Plantation FL 33322 | $1,618,927 | 25.6341% |
| STUART & INA SUE ROSS<br>1400 Kyneton Road<br>Villanova, PA 19085 | $1,215,736 | 19.250% |
| LEVINE FAMILY TRUST<br>1371 S Ocean Blvd #412<br>Pompano Beach, FL 33062 | $75,329 | 1.1928% |
| RICHARD TILKIN<br>77 Milton Street<br>Milton MA 02186 | $444,178 | 7.0331% |
| JEFF & ANDREA NEEDEL<br>21 Springhill Rd<br>Randolph, NJ 07869 | $216,514 | 3.4283% |
| BARRY & DIANE ROSS<br>3325 S. University Drive, Suite 210<br>Davie, FL 33328 | $2,374,462 | 37.5972% |
| B&D ROSS GRANDCHILDREN LLLP<br>3325 S. University Drive, Suite 210<br>Davie, FL 33328 | $208,697 | 3.3045% |
| CEIL PARNESS<br>404 Minden Way<br>Wynnewood, PA 19096 | $90,600 | 1.4346% |
| BONNIE ALEXANDER<br>24737 Calle Altamira<br>Calabasas, CA 91302 | $35,539 | .5627% |
| RAMSEY ALEXANDER<br>24737 Calle Altamira<br>Calabasas, CA 91302 | $35,539 | .5627% |
| | $6,315,521 | 100% |

A/R LLP Agreement – Family Partners

21



BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street
20th Floor West
New York, New York 10286
USA

Family Partners, LLP
Barry Ross
3325 S. University Dr.
Suite 210
Davie, FL 33328
USA

## CLIENT STATEMENT

**A/C Number:** 00-1200-800007009
**Period Beginning:** 01-Oct-2008
**Period Ending:** 31-Oct-2008
**Fax Number:** 1-954-452-4700
**E-Mail:** bross@ross-realty.com

### PERFORMANCE SUMMARY

| Security | % Change | |
|---|---|---|
| | Period to Date | Year to Date |
| Rye Select Broad Market Prime Fund, L.P. | -0.19% | 3.04% |

### PERIOD ACTIVITY

| Security | Net Opening Capital | Contribution | Net Income / (Loss) | Withdrawals / Trans / ReReg | Net Closing Capital |
|---|---|---|---|---|---|
| Rye Select Broad Market Prime Fund, L.P. | 1,548,670.64 | 0.00 | (3,015.19) | 0.00 | 1,545,655.45 |
| **Totals** | 1,548,670.64 | 0.00 | (3,015.19) | 0.00 | 1,545,655.45 |

### DISCLOSURE NOTES

- % Change results are Net of all fees.
- Year To Date change is based on Calendar Year which ends on December 31st.
- All values are in USD.
- This information is not intended to be used for tax reporting or planning.
- This information is unaudited. Audited statements are issued upon conclusion of the fiscal year end audit.
- The Fund's net asset value has been calculated on the basis of market value information with respect to the Fund's portfolio obtained from third parties, including independent pricing vendors, the Fund's manager and administrators of funds in which the Fund may have invested. BNY-AIS does not give any assurances with respect to the accuracy of such market value information.
- Past performance as described herein is not necessarily indicative of future results.
- The Bank of New York acts as custodian with respect to cash. With respect to the portfolio's investments, such investments have been and will continue to be custodied for the benefit of the portfolio at Bernard L. Madoff Investment Securities LLC, 885 Third Avenue, New York, NY, 10022.
- Additional information is available at www.ryeselectfunds.com.

### INVESTOR INQUIRIES

**Telephone:** 212.815.4090    **Facsimile:** 212.644.6669    **Email:** AISOnline_NY@bankofny.com    **Web:** www.fundadmin.com

As you requested copies of this statement have been sent to:

Allan Budelman
Denise Karp
Ms. Pamela Palmer



Investment Management

A Division of Tremont Group Holdings, Inc.

BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street, 20th Floor West
New York, New York 10286
USA

09-Jul-2008

**Family Partners, LLP**
**Barry Ross**
**3325 S. University Dr.**
**Suite 210**
**Davie, FL 33328**
**USA**

## TRADE CONFIRMATION

Dear Investor,

We are pleased to confirm your investment into Rye Select Broad Market Prime Fund, L.P. The details below confirm the specifics of the transaction executed on your behalf.

Please take a moment to review this confirmation to ensure that all details pertaining to this transaction and your account are correct. If any discrepancies are identified please contact our Investor Services Group as described below.

Per your instructions a copy of this confirmation has been sent to Allan Budelman.

## ACTIVITY CONFIRMED

| Security | Rye Select Broad Market Prime Fund, L.P. | | |
|---|---|---|---|
| **Details** | | **Contributions** | |
| Action | Buy | Gross Contribution | 1,500,000.00 |
| Dealing Date | 1-Jun-2008 | Sales Charge/Interest Payment | 0.00 |
| Base Currency | USD | Net Contribution | 1,500,000.00 |
| Lot Ref. Number | 000917 | | |

| ACCOUNT INFORMATION | | INVESTOR INQUIRIES | |
|---|---|---|---|
| **Acct. Name** | Family Partners, LLP | Telephone | 212.815.4090 |
| | | Facsimile | 212.644.6669 |
| **Acct. Number** | 01-2008-00007009 | | |
| **Telephone** | 954-452-5000 | Email | AISOnline_NY@bankofny.com |
| **Facsimile** | 954-452-4700 | | |
| **Email** | bross@ross-realty.com | Web | www.fundadmin.com |



BNY ALTERNATIVE INVESTMENT
SERVICES, INC.
101 Barclay Street, 20th Floor West
New York, New York 10286
USA

03-Jun-2008

**Family Partners, LLP**
**Barry Ross**
**3325 S. University Dr.**
**Suite 210**
**Davie, FL 33328**
**USA**

## CONFIRMATION OF CASH RECEIPT

Dear Investor,

We are pleased to confirm the receipt of your proceeds on behalf of Rye Select Broad Market Prime Fund, L.P.  The details below confirm the specifics of the transaction. Your proceeds will not be invested until all requisite documentation has been received in good order and your eligibility as an investor in Rye Select Broad Market Prime Fund, L.P. has been confirmed.

Please take a moment to review this confirmation to ensure that all details pertaining to this transaction and your account are correct.  If any discrepancies are identified please contact our Investor Services Group as described below.

Per your instructions a copy of this confirmation has been sent to Allan  Budelman.

## ACTIVITY CONFIRMED

**Details**

| | |
|---|---|
| Action | Cash Received |
| Date Received | 28-May-2008 |
| Amount Local | 1,500,000.00    USD |
| Amount Base | 1,500,000.00    USD |

**To Be Applied**

| | |
|---|---|
| Dealing Date | 01-Jun-2008 |
| Security | Rye Select Broad Market Prime Fund, L.P. |

| ACCOUNT INFORMATION | | INVESTOR INQUIRIES | |
|---|---|---|---|
| Acct. Name | Family Partners, LLP | Telephone | 212.815.4090 |
| | | Facsimile | 212.644.6669 |
| Acct. Number | 01-2008-00007009 | | |
| Telephone | 954-452-5000 | Email | AISOnline_NY@bankofny.com |
| Facsimile | 954-452-4700 | | |
| Email | bross@ross-realty.com | Web | www.fundadmin.com |

# 1st United Bank

| | |
|---|---|
| Account Number | 0000001107003392 |

| Notice Date | 05/28/08 |
|---|---|

| **Wire Transfer Amount** | **1,500,000.00** |
|---|---|

FAMILY PARTNERS LLP
3325 S UNIVERSITY DR STE 210
DAVIE FL 33328-2007

| Reference Number: | 00013 |
|---|---|

| Any questions please call: | 561-616-3100 |
|---|---|

## Outgoing Wire Transfer Notice

Transfer Type
Sender Routing Number
Sending Bank Short Name
Sender Reference Number
Receiving Institution

Funds Transfer
067014987
FST UNITED BANK
0000000000000013
021000018
BANK OF NEW YORK
NEW YORK          NY

Party to be Paid or Credited
DDA Account Number
Name and Address

*************
RYE SELECT BROAD MARKET
PRIME FUND LP
101 BARCLAY ST 20TH FL W
NEW YORK          NY 10286

Payment Originator Information
DDA Account Number
Name and Address

*************
FAMILY PARTNERS LLP
3325 S UNIVERSITY DR STE 210
DAVIE FL 33328-2007

Beneficiary Additional Information

NAME OF INVESTOR
BARRY ROSS FAMILY
PARTNERS LLP

An Outgoing wire has been sent from your account.

Our new Wire Dept phone number is 561 616-3100.
Our new direct Wire Fax Number is 561 616-3112.
or email us at wires@1stunitedbankfl.com.

# 1st United Bank

FAMILY PARTNERS LLP
3325 S UNIVERSITY DR STE 210
DAVIE FL 33328-2007

ACCOUNT NUMBER: 1107003392
STATEMENT PERIOD: 5/07/08
TO: 6/01/08

PAGE: 1

## 1ST PREMIER BUSINESS MM

| | | | |
|---|---|---|---|
| Beginning Balance | 5/07/08 | .00 | |
| Deposits / Misc Credits | 5 | 9,819,733.35 | |
| Withdrawals / Misc Debits | 7 | 9,500,000.00 | |
| ** Ending Balance | 5/31/08 | 319,733.35 | ** |
| Service Charge | | .00 | |
| Interest Paid Thru 5/31/08 | | 2,964.62 | |
| Interest Paid Year To Date | | 2,964.62 | |
| Annual Percentage Yield Earned | | 2.21 | |
| Number of Days for A.P.Y.E. | | 25 | |
| Average Balance for A.P.Y.E. | | 1,975,683.35 | |
| Minimum Balance | | 315,412 | |
| Enclosures | | 5 | |

### MISCELLANEOUS DEPOSITS

| Date | Deposits | Withdrawals | Activity Description |
|---|---|---|---|
| 5/07 | 6,315,412.00 | | ADVICE OF CREDIT |
| 5/27 | 500,000.00 | | ADVICE OF CREDIT |
| 5/27 | 1,501,356.73 | | ADVICE OF CREDIT |
| 5/30 | 2,964.62 | | INTEREST EARNED |

### OTHER WITHDRAWALS

| Date | Deposits | Withdrawals | Activity Description |
|---|---|---|---|
| 5/12 | | 2,500,000.00 | OUTGOING WIRE CHARLES SCHWAB & CO INC |
| 5/12 | | 1,500,000.00 | ADVICE OF DEBIT |
| 5/12 | | 1,000,000.00 | ADVICE OF DEBIT |
| 5/22 | | 1,000,000.00 | OUTGOING WIRE / AMERITRADE INC |
| | | | OUTGOING WIRE / RYE SELECT |
| | | | OUTGOING WIRE / RYE SELECT |

# Ⅲst United Bank

FAMILY PARTNERS LLP

ACCOUNT NUMBER: 1107003392
STATEMENT PERIOD: 5/07/08
TO:  6/01/08

PAGE:   2

---

### OTHER WITHDRAWALS

| Date | Deposits | Wit | |
|------|----------|-----|--|
| ▬▬ | | ▬▬▬▬▬ | OUTGOING WIRE RYE SELECT BOARD |

---

### DAILY BALANCE SUMMARY

| ate | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 5/07 | 6,315,412.00 | 5/22 | 315,412.00 | 5/28 | 316,768.73 |
| 5/12 | 1,315,412.00 | 5/27 | 1,816,768.73 | 5/30 | 319,733.35 |



1st United Telephone Banking is free; get complete account information
and transfer funds at any time, 24 hours a day, 7 days a week³
Simply dial 800-840-9129

# RYE

Investment Management

A Division of Tremont Group Holdings, Inc.

# Redemption Notice

**To: The Bank of New York Mellon**
Alternative Investment Services
101 Barclay Street, 20th Floor West
New York, NY 10286
Tel: (212) 815-4090
Fax: (212) 644-6669
**Attention: Investor Services – Rye Select Funds**

**From** (Name of the Registered Investor): Family Partners, LLP
(Please fill in exactly as listed on your statement)

**1. Rye Select Funds** (check one fund per notice):
_____ Rye Select Activist Fund
_____ Rye Select Activist Segregated Portfolio
_____ Rye Select Broad Market Fund, L.P.
__X__ Rye Select Broad Market Prime Fund, L.P.
_____ Rye Select Broad Market XL Fund, LP
_____ Rye Select Broad Market Portfolio Limited
_____ Rye Select Broad Market XL Portfolio Limited
_____ Rye Select Broad Market Insurance Portfolio, LDC
_____ Rye Select Equities Fund
_____ Rye Select Equities Segregated Portfolio
_____ Rye Select Futures Fund
_____ Rye Select Futures Segregated Portfolio

**2. Type of Redemption** (check one):
_____ Partial ($ Amount): _____
__X__ Full

**3. Redemption Date:** 1/1/09

**4. Wiring Instructions:**
Name of Financial Institution: Citibank NA
Address: New York, NY
ABA#: 021000089
Account Number: 40553953
Account Name: Charles Schwab and Co., Inc.
(The account name and the name of the registered investor must be the same)
Further Credit: Family Partners, LLP A/C # 14203637

**5. Signature** (client or entity representative)
Name: Barry Ross
Position/Title: Partner
Date: 12-12-08