JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
911 Chestnut Street
Clearwater, FL 33757-1368
Telephone: (727) 461-1818;
Fax: (727) 443-6548
Angelina E. Lim, Esq. (8845)
E-mail: angelinal@jpfirm.com
Michael C. Cronin, Esq.
E-mail: mikec@jpfirm.com

*Counsel for Anchor Holdings, LLC and its customers*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

Defendant.

---------------------------------------------------------------X

In re:

BERNARD L. MADOFF,

Debtor.

---------------------------------------------------------------X

Adversary Proceeding
No. 08-01789-BRL

SIPA Liquidation
(Substantively Consolidated)

**MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S DETERMINATIONS DENYING CLAIMS OF INDIRECT CUSTOMERS BY ANCHOR HOLDINGS, LLC ON ITS OWN BEHALF AND ON BEHALF OF ITS CLIENTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. INDIRECT CUSTOMERS QUALIFY AS "CUSTOMERS" UNDER THE PLAIN READING OF SIPA .......... 1

  A. Definitions of Customer .......... 1

  B. Other Provisions of SIPA Contemplate Indirect Claimants .......... 3

II. CLAIMANTS ARE CUSTOMERS THROUGH CONVERSION IN THIS PONZI SCHEME. .......... 3

III. SECTION 745 OF THE BANKRUPTCY CODE CONTROLS .......... 4

IV. INCORPORATION BY REFERENCE .......... 6

V. PRESERVATION OF RIGHTS .......... 6

VI. CONCLUSION .......... 6

# TABLE OF AUTHORITIES

## Cases

*In re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D. Fla. 1983) ........................ 4

*In re Old Naples Securities, Inc.*, 223 F.3d 1296, 1302-1303 (11th Cir. 2000) ............. 3, 4

*Madoff*, 401 B.R. at 634; *In re A.R. Baron & Co.*, 226B.R. 790, 795 (Bankr. S.D.N.Y. 1998) ........................................................................................................ 2

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC ("Madoff")*, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) ......................................... 2

*Securities Investor Protection Corp. v. Bourbor*, 421 U.S. 412, 415 (1975) .................... 2

## Statutes

§78fff(b) ........................................................................................................ 5

11 U.S.C. § 745 ........................................................................................................4

15 U.S.C. § 78fff-3(a)(5) ........................................................................................ 4

15 U.S.C. §745(b)&(c) ............................................................................................ 5

15 U.S.C. § 78aaa, *et seq.* ........................................................................................ 1

*15 U.S.C. § 78lll(2)* ........................................................................ 1, 2, 3, 4, 6

*15 U.S.C. §78ccc* .................................................................................................. 2

## PRELIMINARY STATEMENT

Pursuant to this Court's Order dated April 13, 2010 ("Scheduling Order") (Doc. No. 2205), Anchor Holdings, LLC ("Anchor"), on its own behalf and on behalf of its clients, a list is attached as Exhibit "A" (collectively, with Anchor, hereinafter "Claimants") respectfully submits this Memorandum of Law in support of its objection to the motion of Irving H. Picard, Trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), for an order approving Trustee's motion (the "Customer Motion") to affirm the Trustee's denial of claims of indirect investors of BLMIS.

The Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, *et seq.* ("SIPA") is designed to protect the public from broker-dealers who become insolvent. As explained by the Supreme Court, Congress enacted the law to protect and restore investor confidence in the capital markets. Each of the Claimants fall within the express definition of "customer" under 15 U.S.C. § 78lll(2). Contrary to the interpretation offered by the Trustee, the definition of "customer" is broad and flexible.

## ARGUMENT

### I. Indirect Customers Qualify as "Customers' Under the Plain Reading of SIPA

#### A. **Definition of "Customer"**

SIPA protects the assets of investors held by broker-dealers who become insolvent. As explained by the Supreme Court, Congress enacted the law to protect and restore investor confidence in the capital markets. *Securities Investor Protection Corp. v. Bourbor,* 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v. Bernard L.*

*Madoff Investment Securities, LLC ("Madoff"),* 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009). SIPA created SIPC to administer SIPA. *15 U.S.C. §78ccc.* In a liquidation proceeding, the SIPC fund is available to "customers" if the debtor's general estate is insufficient to pay "customer claims." According to SIPA, only "customers," a term of art, defined in 15 *U.S.C. § 78lll(2)* will be protected. A denial of "customer" status would relegate an investor to a general unsecured creditor who can only seek recovery from the general estate. *Madoff,* 401 B.R. at 634; *In re A.R. Baron & Co.,* 226B.R. 790, 795 (Bankr. S.D.N.Y. 1998).

SIPA defines "customers" as:

> Any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities…[1]
>
> *15 U.S.C. §78lll(2).*

The Customers fall within section 78lll under the plain reading of the statute. While the Trustee attempts to read into the statute a requirement of a direct, specifically titled account with BLMIS, no such direct relationship exits.

Case law supports a more expansive reading of the definition of "customer." Whether a claimant is a "customer" does not depend upon whom he or she or it handed her cash or made her check payable, or even where the funds were initially deposited. *In re Old Naples Securities, Inc.,* 223 F.3d 1296, 1302-1303 (11th Cir. 2000). Instead, the issue depends upon whether there was "actual receipt, acquisition or possession of the

[1] The term excludes two exceptions not relevant here.

property of a claimant by the brokerage firm under liquidation." *Id.* (Internal quotations omitted but see cites to supporting cases). Here, as admitted by the Trustee in the Declaration of David J. Sheehan dated June 11, 2010 (Doc. No. 2413), while there are no direct accounts, there is some evidence of the Claimants' money flowing through one of the 16 feeder funds to BLMIS. *See* Exhibit 2. Thus, while it may be true that the Trustee's task to trace indirect claimants' funds to BLMIS is a complicated and difficult one, that fact alone does not justify the denial of "customer status" for thousands of innocent victims of this horrific *ponzi* scheme.

**B. Other Provisions of SIPA Contemplate Indirect Claimants**

The securities market has changed and many securities transactions are held in "street names" or via mere book-entries. The fact that there is no direct statement from the Debtor to the Customers is of no significance. *See e.g.* 151 U.S.C. § 78fff-3(a)(5) (section 78fff-3(a)(5) states in relevant part "no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . that the net equity claim of such broker or dealer or bank arose out of transactions for customers of such broker or dealer or bank . . . in which event each customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.").

II. Claimants are Customers through Conversion in this Ponzi Scheme

Section 78lll of SIPA includes within the definition of "customer" a person who has a claim against the debtor for conversion. Undeniably, the Claimants' property was converted in this unprecedented *ponzi* scheme. *See* Old Naples, 223 F.3d at 1296; I*n re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D. Fla. 1983).

III. Section 745 of the Bankruptcy Code Controls

Section 745 of the Bankruptcy Code, which provides for the treatment of accounts in a stockbroker liquidation, states in relevant part that:

> (b) If a stockbroker or a bank holds a customer net equity claim against the debtor that arose out of a transaction for a customer of such stockbroker or bank, each such customer of such stockbroker or bank shall be treated as a separate customer of the debtor. (c) Each trustee's account specified as such on the debtor's books, and supported by a trust deed filed with, and qualified as such by, the Internal Revenue Code of 1986, shall be treated as a separate customer account for each beneficiary under such trustee account. 15 U.S.C. §745(b)&(c).

The Securities Investor Protection Corporation ("SIPC") in support of the Trustee's Customer Motion takes the position that this broad reading of the definition of customer is inapplicable under a SIPA case, citing to §78fff(b) of SIPA.

However, SIPC and the Trustee ignore the complicated procedural background of this case. The individual Madoff case was substantively consolidated with this SIPA proceeding and that there is a Madoff Securities International Ltd. was also recognized as a Chapter 15 proceeding. Given the intertwined nature of these bankruptcy-related proceedings in this SIPA case, this Court should give effect to Section 745 of the Bankruptcy Code and interpret "customer" broadly.

It is all a matter of equity and this Court is one of equity. Two bankruptcy proceedings have been consolidated in this one case. The Customers are individuals who trusted the market and BLMIS. They all have suffered financial losses that have devastating impacts upon their personal lives. Their losses are no less real merely because they did not directly send BLMIS their property. The fact remains is that their money still ended with BLMIS in its *ponzi* scheme.

IV. Incorporation by Reference

The Claimants also join, and fully incorporate by reference the arguments and authorities cited in the briefs, responses and memoranda filed on behalf of similarly situated customers.

V. Preservation of Rights

In the event that the Court rules in favor of the Trustee on the Customer Motion, the Claimants preserve their rights to any recoveries that may come into the estate from the relevant feeder funds and to the claims filed by the funds.

VI. Conclusion

For the reasons stated herein, the Court should deny the Trustee's Customer motion and find that each Claimant is a "customer" under 15 U.S.C. §78lll(2).

Dated: July 12, 2010
Clearwater, Florida

/s/ Angelina E. Lim

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
Michael C. Cronin, Esq.
Angelina E. Lim, Esq. (8845)
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
911 Chestnut Street
Clearwater, FL 33757-1368
Telephone: (727) 461-1818;
Fax: (727) 443-6548
E-mail: mikec@jpfirm.com
E-mail: angelinal@jpfirm.com

(532479\1)