RUSKIN MOSCOU FALTISCHEK P.C.
Mark S. Mulholland
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone: (516) 663-6600
Facsimile: (516) 663-6648

*Attorney for the DeMatteis Claimants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

              Plaintiff,

   v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

          Defendant.

---

Adv. Pro. No. 08-01789(BRL)

SIPA Liquidation

(Substantively Consolidated)

In re:

BERNARD L. MADOFF,

          Debtor.

---

**MEMORANDUM OF LAW BY THE DEMATTEIS CLAIMANTS IN
OPPOSITION TO THE TRUSTEE'S MOTION DENYING CLAIMS OF
CLAIMANTS WITHOUT BLMIS ACCOUNTS IN THEIR NAMES, NAMELY,
INVESTORS IN FEEDER FUNDS**

Ruskin Moscou Faltischek, P.C. represents two claimants DeMatteis FLP Assets, LLC and The 2001 Frederick DeMatteis Revocable Trust (collectively, the "DeMatteis Claimants"). The DeMatteis Claimants timely filed Securities Investor Protection Corporation ("SIPC") customer claims for securities. In submitting their claims, the DeMatteis Claimants notified the Trustee that they deposited funds with Bernard L. Madoff Investment Securities, LLC ("Madoff") by investing in the Foredestine Series Fund, LLC- Broad Market Prime Series (the "Foredestine Fund"), which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in the Rye Select Broad Market Prime Fund, L.P. (the "Rye Fund") (collectively, the Funds).

The Trustee sent Determination Letters, dated December 8, 2009, denying the claims in their entirety, on the grounds that the DeMatteis Claimants were not customers of Madoff under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78lll (2), because they did not have an account with Madoff. The DeMatteis Claimants filed timely objections to the Trustee's Determination Letters on January 6, 2010.[1]

Pursuant to the Court's Order scheduling adjudication of the "Customer" issue, dated April 13, 2010, the DeMatteis Claimants respectfully submit this memorandum of law as Objecting Claimants in opposition to the submissions made by SIPC and Irving H. Picard, Esq., the Trustee (collectively, the "Trustee"), on June 11, 2010. Moreover, the DeMatteis Claimants hereby join and fully incorporate by reference as if fully restated herein, the arguments advanced in the opposition papers and briefs filed on behalf of other Objecting Claimants or Interested Parties to the Trustee's motion, which expands

---

[1] A copy of both objections filed by the DeMatteis Claimants along with the exhibits (including the timely filed claims) are annexed hereto as Appendix 1.

the class of customers under SIPA to include investors in feeder funds like the DeMatteis

Claimants.

## PRELIMINARY STATEMENT

A key flaw in the Trustee's brief is the failure to recognize the unique

relationships that existed between feeder funds and Madoff and how those relationships

effectively place indirect investors like the DeMatteis Claimants in the same position as

an investor who directly opens an account with Madoff (referred to as a "Direct

Investor"). The feeder funds that the DeMatteis Claimants invested in, the Rye Fund and

the Foredestine Fund, were nothing more than affiliates or agents of Madoff. These

Funds held themselves out as conduits to Madoff and their historical investment strategy

demonstrated a practice of directing substantially all their investors' assets into Madoff

accounts. What is important here is that the DeMatteis Claimants possessed customer

attributes under SIPA because they knew their funds would be deposited with Madoff

through representations made by the Funds, they invested with the Funds for the purpose

of investing with Madoff and they had the ability to request a withdrawal of their

investments if the Funds altered their historic practice of investing with Madoff. Thus,

the DeMatteis Claimants are "customers" under SIPA and by investing in the Funds, they

entrusted cash to Madoff for the purpose of effecting securities transactions similar to

that of a Direct Investor.

Given the above, the Trustee has attempted to shield itself from protecting Madoff

investors by incorrectly focusing on the manner in which deposits reached Madoff's

control and completely ignored the fact that those same deposits were entrusted with

Madoff for the purpose of purchasing securities. The Trustee's position is merely one of

form over substance, fails to effectuate the purpose of SIPA and is inequitable under the unique circumstances of this Ponzi scheme.

## STATEMENT OF FACTS

As more fully described in the two objections filed by the DeMatteis Claimants, the facts regarding the DeMatteis Claimants' investments with Madoff are set forth as follows.

In 2006, the DeMatteis Claimants had numerous conversations with Harry Hodges ("Mr. Hodges"), Vice President of investor services at Rye Investment Management Group, and Robert I. Schulman ("Mr. Schulman"), former Chairman, CEO, President and COO of Tremont Group Holdings, Inc. and former President of Rye Investment Management Group, regarding a plan to invest in the Rye Fund. During these conversations, Mr. Hodges and Mr. Schulman made unambiguous representations that the Rye Fund was a feeder fund that invested substantially all of its assets with Madoff. The DeMatteis Claimants were knowledgeable of Madoff and ultimately decided to invest in the Rye Fund with the intent that those funds be deposited with Madoff for the purpose of purchasing securities.

During the first half of 2008, Mr. Schulman advised the DeMatteis Claimants about a different feeder fund to Madoff called the Foredestine Fund. The Foredestine Fund was offered by Foredestine Series Fund, LLC, a new company that Mr. Schulman started in 2008, and was marketed to the DeMatteis Claimants as a fund designed to be a conduit into Madoff by investing substantially all of its assets in the Rye Fund, which, in turn, invested substantially all of its assets with Madoff.

With the continued expectation that their funds would be deposited with Madoff for the purpose of purchasing securities, in July 2008, the DeMatteis Claimants re-registered all funds held with the Rye Fund to the Foredestine Fund and continued to have substantially all of its funds deposited with and controlled by Madoff through Madoff Account No.: 1-C1260-3-0.

On December 11, 2008, the above-captioned liquidation proceeding was commenced against Madoff, pursuant to SIPA.  On December 15, 2008, Irving H. Picard, Esq. was appointed trustee and charged with overseeing and administering the liquidation of Madoff and processing customer claims under SIPA.

By letter dated December 22, 2008, Foredestine Series Fund, LLC informed the DeMatteis Claimants that "all or substantially all" of the Foredestine Fund had exposure to Madoff through its "investment in Rye Select Broad Market Prime Fund, LP, the Initial Underlying Fund, which had all or substantially all of its assets" invested with Madoff.[2]

Like the Direct Investors involved in the Ponzi scheme, the DeMatteis Claimants' investments were wiped out.

## LEGAL ARGUMENTS

**A.    The DeMatteis Claimants Are "Customers" Under The Clear Language Contained In SIPA's Customer Definition Pursuant To 15 U.S.C. § 78lll(2).**

The Trustee's basis for finding that the DeMatteis Claimants are not customers of the debtor, Madoff, pursuant to 15 U.S.C. § 78lll(2), is misplaced.  According to the Trustee, because the Trustee's staff was unable to find accounts, presumably in the names

---

[2] A copy of this letter is provided in Appendix 1 as Exhibit B to the DeMatteis Claimants' objections.

of the DeMatteis Claimants, within the available books and records of Madoff, the

DeMatteis Claimants are not customers of Madoff under SIPA as that term is defined at

15 U.S.C. § 78lll(2).

> 15 U.S.C. § 78lll(2) of SIPA defines customer as follows:
>
> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities . . .

As is clear from the definition, there is no requirement for an investor to have an account

in its name on the debtor's books and records to be considered a customer of the debtor.

In fact, the last sentence specifically states that a customer "includes . . . any person who

has deposited cash with the debtor for the purpose of purchasing securities . . ." 15

U.S.C. § 78lll(2). Moreover, if Congress intended the narrow interpretation that the

Trustee is asserting, then SIPA's customer definition would simply be defined as

including only those investors that have an account in their name on the books and

records of the debtor. Significantly, this is not the case.

Additionally, in setting forth the procedures for SIPC advances, SIPA makes clear

that customers of a broker, dealer or bank that transacts with the failed debtor can be

customers under SIPA without directly holding an account on the books and records of

the debtor. See 15 U.S.C. § 78fff-3(a)(5) ("no advance shall be made by SIPC to the

Trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker

or dealer or bank, other than to the extent that it shall be established . . . from the books

and records of the debtor *or from the books and records of a broker or dealer or bank, or otherwise,* that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , *in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor"*) (*emphasis added*).

Given the above, the Trustee must follow the language of the customer definition to find that the DeMatteis Claimants are customers under SIPA because substantially all of the DeMatteis Claimants' funds were deposited into Madoff Account No.: 1-C1260-3-0 for the purpose of purchasing securities. Denying customer status to the DeMatteis Claimants on the ground that each claimant must be an account holder on the books and records of Madoff is not only disingenuous, it is based on a technical requirement that is absent from 15 U.S.C. § 78lll(2).

**B.      The DeMatteis Claimants Are "Customers" According To Case Law Interpretation Of SIPA's Customer Definition.**

In determining whether an investor is a customer under SIPA, this Court in this liquidation, concluded that customer status is triggered by "the mere 'act of *entrusting* . . . cash to the debtor for the purpose of effecting securities transactions . . . .'" *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (Bankr.S.D.N.Y. 2009) (*citations omitted*). Here, the DeMatteis Claimants transacted with feeder funds, which exclusively entrusted their assets to Madoff, for the sole purpose of having Madoff effectuate securities transactions.

Other courts have held that investors "deposited cash with the debtor" within the meaning of the customer definition pursuant to 15 U.S.C. § 78lll(2), when their involvement in a Ponzi scheme originated by depositing funds with the debtor's agent or

affiliate who is not a member of SIPC. *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) (applying the rule that "[i]f a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds.")(*citations omitted*); *In re Old Naples Sec., Inc.*, 223 F.3d 1296, 1302 (11th Cir. 2000)(applying the rule that it is not "simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead, the question is whether there was 'actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.'")(*citations omitted*).

In 2000, SIPC and the trustee appointed in the case of *In re New Times Sec. Services, Inc.*, 371 F.3d 68 (2d Cir. 2004) continued the courts' trend in extending customer status to Ponzi scheme victims who had accounts with non-SIPC member affiliates by consolidating the estates of a SIPC member- New Times Securities Services, Inc. ("New Times"), with its non-SIPC member affiliate- New Age Financial Services, Inc. ("New Age"). *See* U.S. General Accounting Office, Pub. No. GAO-01-653, Sec. Investor Prot.: Steps Needed To Better Disclose SIPC Policies To Investors at 48 (2001).[3] According to the report, "[a]mong the many reasons the trustee discussed in support of the request [to consolidate], he pointed out that although New Times and New Age in many respects operated separately, generally did not commingle their assets, and distributed account statements under their respective names, their owner had promoted them to investors as being indistinguishable." *Id.*

---

[3] A copy of this report is annexed hereto as Appendix 2.

Here, the DeMatteis Claimants' investments with Madoff through the Foredestine
Fund and Rye Fund is analogous to investing with a non-SIPC member affiliate or agent
of Madoff because the Funds were not only represented as a conduit to Madoff, their
historic investment strategy proved that they funneled substantially all of their assets to
Madoff. As detailed in the DeMatteis Claimants' objections, the following facts evidence
the close affiliation between Madoff and the Funds.

Mr. Schulman of Rye Investment Management had a close professional
relationship with Madoff and upon joining the executive ranks in 1994, began marketing
Madoff dedicated Rye funds. When dealing with potential investors such as the
DeMatteis Claimants, Mr. Hodges and Mr. Schulman openly represented the Rye Fund as
a conduit to Madoff. The Rye Fund funneled substantially all of its assets to Madoff
since the DeMatteis Claimants' initial deposit in 2006. Additionally, four other Madoff
feeder funds (Rye Select Broad Market Portfolio Limited, Rye Select Broad Market
Fund, L.P., Rye Select Broad Market XL Fund, L.P. and Rye Select Broad Market XL
Portfolio Limited) deposited substantially all of their assets with Madoff. As a result of
Madoff's Ponzi scheme, the Rye funds have lost in excess of 3 billion dollars.

As concerns the Foredestine Fund, again it was Mr. Schulman who spearheaded
this hedge fund affiliate to Madoff. In 2008, Mr. Schulman resigned as president and
chief executive officer of Rye Investment Management and started the Foredestine Fund.
Mr. Schulman continued his close professional relationship with Madoff, openly
marketed the Foredestine Fund to prospective investors as a conduit to Madoff and even
used a naming convention that mirrored that of the Rye funds. For example, the
Foredestine Series Fund, LLC- *Broad Market Prime* Series invested substantially all its

assets in the Rye Select *Broad Market Prime* Fund, L.P.  Thus, by investing in the

Foredestine Fund, investors deposited substantially all of their assets with Madoff

through the Rye Fund.

Accordingly, the DeMatteis Claimants are customers under SIPA even though

they invested with Madoff through feeder funds, because said Funds were affiliates or

agents of Madoff who invested substantially all their assets with Madoff.  The Rye Fund

and Foredestine Fund had longstanding ties to Madoff and were an integral part of

Madoff's Ponzi scheme.  Investors such as the DeMatteis Claimants, invested with these

feeder funds based on representations that their investments would be deposited with

Madoff for the purpose of purchasing securities.  The only difference between the Rye

Fund and Foredestine Fund is that deposits accepted by the Foredestine Fund passed

through the Rye Fund before ultimately being deposited with Madoff.

As with the cases discussed above, it is irrelevant whether the DeMatteis

Claimants had an account on the books and records of Madoff or that the DeMatteis

Claimants originally deposited funds in an entity other than Madoff.  Rather, the key to

obtaining customer status under SIPA is the fact that the DeMatteis Claimants deposited

funds with the intent for Madoff to purchase securities on its behalf and the fact that

Madoff actually did acquire, possess and eventually convert the DeMatteis Claimants'

funds as part of Madoff's Ponzi scheme.

**C.    SIPA Is Remedial Legislation And Any Ambiguity In SIPA's Customer
Definition Should Be Construed Liberally To Affect Its Purpose.**

"SIPA is remedial legislation. . . [and] should be construed liberally to affect its

purpose." *In re First State Sec. Corp.*, 34 B.R. 492, 496 (Bankr.S.D.Fla. 1983) (*citing*

*Tcherepin v. Knight*, 389 U.S. 332, 336 (1967)).  SIPA's purpose is the "protection of the

insolvent broker's customers." *Id.* (*citing SEC v. Ambassador Church Finance/Development Group, Inc.*, 679 F.2d 608, 612 (6th Cir. 1982)); *See also Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 415 (1975). Any interpretation of the definition and scope of the term customer should be construed in favor of the DeMatteis Claimants given the fact that the DeMatteis Claimants lost substantially all of their funds through Madoff's Ponzi scheme as a result of those funds being deposited with Madoff for the purpose of purchasing securities.

**D.    Morgan Kennedy Is Distinguishable Given The Unique Facts of Madoff's Ponzi Scheme**

Simply put the Trustee's reliance on *Securities Investor Protection Corp. v. Morgan, Kennedy & Co.* ("Morgan Kennedy"), 533 F.2d 1314 (2d Cir. 1976) is misplaced because the trust fund that held the account with the debtor did not market and hold itself out as a conduit to the debtor. Moreover, there is no evidence that the employee-beneficiaries seeking customer status either (i) placed their money in the trust fund upon representations of an investment strategy with the debtor or (ii) were free to withdraw their portion of the trust assets if they disapproved of how the trustees of the trust fund invested the assets. Rather, the employee-beneficiaries possessed none of the attributes of a customer because the trust fund represented profit-sharing plan money that was contributed by the employer, controlled by the trustees of the trust fund and payable upon the employee's termination of employment. *Morgan Kennedy*, 533 F.2d at 1318.

These facts are highly relevant and distinguishable from this case because the employee-beneficiaries had no connection to the debtor other than the fact that their profit-sharing plan money was invested with the debtor. On the other hand, the DeMatteis Claimants voluntarily invested in the Rye Fund and Foredestine Fund upon

representations that these Funds funneled substantially all of their assets to the debtor, Madoff. Moreover, unlike the claimants in Morgan Kennedy, the DeMatteis Claimants could control their investments by requesting a withdrawal[4] from the Foredestine Fund if the investment strategy with Madoff was altered by the Funds. These facts create an undeniable connection between the DeMatteis Claimants and Madoff that was completely absent in Morgan Kennedy. Accordingly, Morgan Kennedy, and similar cases cited by the Trustee, should not control the outcome of this proceeding.

## CONCLUSION

For all the reasons set forth herein and in all the briefs submitted in opposition to the Trustee's motion, the DeMatteis Claimants respectfully request that the Court deny the Trustee's motion, find that the DeMatteis Claimants are customers under SIPA 15 U.S.C. § 78lll(2) and direct that the Trustee extend the preferred status and special protections afforded to SIPA customers to the DeMatteis Claimants.

Dated:      Uniondale, New York
            July 12, 2010

                              RUSKIN MOSCOU FALTISCHEK, P.C.

                              By: _____
                                  Mark S. Mulholland
                                  1425 RXR Plaza
                                  East Tower, 15th Floor
                                  Uniondale, New York 11556
                                  Telephone: (516) 663-6600
                                  Facsimile: (516) 663-6648
                                  *Attorney for the DeMatteis Claimants*

---

[4] Attached as Appendix 3 is a copy of the letter agreement with Foredestine LLC outlining the procedures for a withdrawal request by the DeMatteis Claimants.

490768.1                              12