RUSKIN MOSCOU FALTISCHEK P.C.                    **ORIGINAL**
Mark S. Mulholland
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone: (516) 663-6600
Facsimile: (516) 663-6648

*Attorneys for DeMatteis FLP Assets, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------

SECURITIES INVESTOR PROTECTION
CORPORATION,                                     Adv. Pro. No. 08-01789(BRL)

        Plaintiffs,                            SIPA Liquidation

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.
---------------------------------------------------------

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM LETTERS**

The DeMatteis FLP Assets, LLC ("DeMatteis LLC"), by and through its

attorneys, hereby objects to the Notice of Trustee's Determination of Claim letters dated

December 8, 2009 (the "Determination Letters"), attached as Exhibit A, as described

herein.

**BACKGROUND**

1.     Based on communications with and representations by Harry Hodges

("Mr. Hodges"), Vice President of investor services at Rye Investment Management

Group, and Robert I. Schulman ("Mr. Schulman"), former Chairman, CEO, President and

COO of Tremont Group Holdings, Inc. and former President of Rye Investment

474671.1                            1

Management Group, DeMatteis LLC was advised that the Rye Select Broad Market

Prime Fund, L.P. (the "Rye Fund") was a feeder fund which invested substantially all of

its assets with Bernard L. Madoff Investment Securities, LLC ("Madoff").

2.      In December 2006, DeMatteis LLC became a limited partner in the Rye

Fund by executing the required subscription documents and depositing the sum of

$1,000,000.00 Dollars with the intent that those funds be deposited with Madoff for the

purpose of purchasing securities.

3.      During the first half of 2008, Mr. Schulman advised DeMatteis LLC to

continue to invest with Madoff, but through a different feeder fund called the Foredestine

Series Fund, LLC- Broad Market Prime Series (the "Foredestine Fund").  The

Foredestine Fund was offered by Foredestine Series Fund, LLC, a new company that Mr.

Schulman started in 2008, and was marketed to DeMatteis LLC as a fund designed to be

a conduit into Madoff by investing substantially all of its assets in the Rye Fund, which,

in turn, invested substantially all of its assets with Madoff.

4.      With the continued expectation that its funds would be deposited with

Madoff for the purpose of purchasing securities, in July 2008, DeMatteis LLC re-

registered all funds held with the Rye Fund to the Foredestine Fund and continued to

have substantially all of its funds deposited with and controlled by Madoff through

Madoff Account No.: 1-C1260-3-0.

5.      On December 11, 2008, the above-captioned liquidation proceeding was

commenced against Madoff, pursuant to the Securities Investor Protection Act of 1970

("SIPA").  On December 15, 2008, Irving H. Picard, Esq. was appointed trustee (the

"Trustee"), charged with overseeing and administering the liquidation of Madoff and

processing customer claims pursuant to SIPA.  15 U.S.C. § 78fff-1(a).

6.      By letter dated December 22, 2008, Foredestine Series Fund, LLC

informed DeMatteis LLC that "all or substantially all" of the Foredestine Fund had

exposure to Madoff through its "investment in Rye Select Broad Market Prime Fund, LP,

the initial Underlying Fund, which had all or substantially all of its assets" invested with

Madoff, attached as Exhibit B.

7.      DeMatteis LLC filed a Securities Investor Protection Corporation

("SIPC") customer claim for securities, dated February 27, 2009, in the amount of

$1,185,541.82 (the "SIPC Customer Claim"), attached as Exhibit C.  In submitting the

SIPC Customer Claim, DeMatteis LLC notified the Trustee that DeMatteis LLC

deposited funds with Madoff by investing in the Foredestine Fund, which invested in

Madoff, Account No.: 1-C1260-3-0, through its investment in the Rye Fund.  *See* SIPC

Customer Claim (Exhibit C).

8.      On June 11, 2009, DeMatteis LLC submitted a supplement to its SIPC

Customer Claim providing the Trustee with deposit documentation, attached as

Exhibit D.

9.      The Trustee sent DeMatteis LLC two Determination Letters (in response

to Claim No. 008806 and 004562), both dated December 8, 2009, denying DeMatteis

LLC's claim in its entirety, on the grounds that DeMatteis LLC was not a customer of

Madoff under SIPA pursuant to 15 U.S.C. § 78lll (2) because it did not have an account

with Madoff.  *See* Determination Letters (Exhibit A).

**GROUNDS FOR OBJECTION**

10.    Without limitation on, or waiver of, any of the foregoing, DeMatteis LLC

hereby objects to the Determination Letters for the following reasons:

**The Trustee failed to recognize DeMatteis LLC as a "customer" under SIPA.**

11.    SIPA's customer definition and the cases that interpret same have made it

clear that the Trustee has incorrectly denied DeMatteis LLC customer status on the

ground that DeMatteis LLC did not have an account in its name on the books and records

of Madoff.  Through its Determination Letters, the Trustee has attempted to shield itself

from protecting Madoff investors by incorrectly focusing on the manner in which

deposits reached Madoff's control and completely ignored the fact that those same

deposits were entrusted with Madoff for the purpose of purchasing securities.  The fact

that Madoff's Ponzi scheme was so large that it acquired substantial deposits from

investors through feeder funds like the Rye Fund and Foredestine Fund, as opposed to

investors who deposited directly with Madoff, should not be material in determining

customer status under SIPA.  Such a position, as taken by the Trustee, is merely one of

form over substance and fails to effectuate the purpose of SIPA.

    A.    **DeMatteis LLC is a "customer" under the clear language contained in
SIPA's customer definition pursuant to 15 U.S.C. § 78lll(2).**

12.    The Trustee's basis for finding that DeMatteis LLC is not a customer of

the debtor, Madoff, pursuant to 15 U.S.C. § 78lll(2), is misplaced.  According to the

Trustee, because the Trustee's staff was unable to find an account, presumably in the

name of DeMatteis LLC, within the available books and records of Madoff, DeMatteis

LLC is "not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. §

78lll(2)."  *See* Determination Letters (Exhibit A).

13.    15 U.S.C. § 78lll(2) of SIPA defines customer as follows:

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities . . .

As is clear from the definition, there is no requirement for an investor to have an account in its name on the debtor's books and records to be considered a customer of the debtor. In fact, the last sentence specifically states that a customer "includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities . . ." 15 U.S.C. § 78lll(2). Moreover, if Congress intended the narrow interpretation that the Trustee is asserting, then SIPA's customer definition would simply be defined as including only those investors that have an account in their name on the books and records of the debtor. Significantly, this is not the case.

14.    Additionally, in setting forth the procedures for SIPC advances, SIPA makes clear that customers of a broker, dealer or bank that transacts with the failed debtor can be customers under SIPA without directly holding an account on the books and records of the debtor. *See* 15 U.S.C. § 78fff-3(a)(5) ("no advance shall be made by SIPC to the Trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . from the books and records of the debtor *or from the books and records of a broker or dealer or bank, or otherwise,* that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , *in*

*which event each such customer of such broker or dealer or bank shall be deemed a*

*separate customer of the debtor")* (*emphasis added*).

15.    Given the above, the Trustee must follow the language of the customer

definition to find that DeMatteis LLC is a customer under SIPA because substantially all

of DeMatteis LLC's funds were deposited into Madoff Account No.: 1-C1260-3-0 for the

purpose of purchasing securities.  Denying customer status to DeMatteis LLC on the

ground that DeMatteis LLC must be an account holder on the books and records of

Madoff is not only disingenuous it is based on a technical requirement that is absent from

15 U.S.C. § 78lll(2).

   **B.    DeMatteis LLC is a "customer" according to case law interpretation
        of SIPA's customer definition.**

16.    In determining whether an investor is a customer under SIPA, this Court

in this liquidation, concluded that customer status is triggered by "the mere 'act of

*entrusting* . . . cash to the debtor for the purpose of effecting securities transactions . . . .'"

*Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (Bankr.S.D.N.Y. 2009) (*citations

omitted*).  Here, DeMatteis LLC transacted with feeder funds, which exclusively

entrusted their assets to Madoff, for the sole purpose of having Madoff effectuate

securities transactions.

17.    Other courts have held that investors "deposited cash with the debtor"

within the meaning of the customer definition pursuant to 15 U.S.C. § 78lll(2), when their

involvement in a Ponzi scheme originated by depositing funds with the debtor's agent or

affiliate who is not a member of SIPC.  *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107

(10th Cir. 2002)(applying the rule that "[i]f a claimant intended to have the brokerage

purchase securities on the claimant's behalf and reasonably followed the broker's

instructions regarding payment, the claimant is a 'customer' under SIPA even if the

brokerage or its agents misappropriate the funds.")(*citations omitted*); *In re Old Naples*

*Sec., Inc.*, 223 F.3d 1296, 1302 (11th Cir. 2000)(applying the rule that it is not "simply on

to whom the claimant handed her cash or made her check payable, or even where the

funds were initially deposited. Instead, the question is whether there was 'actual receipt,

acquisition or possession of the property of a claimant by the brokerage firm under

liquidation.'")(*citations omitted*).

18.     In 2000, SIPC and the trustee appointed in the case of *In re New Times*

*Sec. Services, Inc.*, 371 F.3d 68 (2d Cir. 2004) continued the courts' trend in extending

customer status to Ponzi scheme victims who had accounts with non-SIPC member

affiliates by consolidating the estates of a SIPC member- New Times Securities Services,

Inc. ("New Times") with its non-SIPC member affiliate- New Age Financial Services,

Inc. ("New Age").   *See* U.S. General Accounting Office, Pub. No. GAO-01-653, Sec.

Investor Prot.: Steps Needed To Better Disclose SIPC Policies To Investors at 48 (2001).

According to the report, "[a]mong the many reasons the trustee discussed in support of

the request [to consolidate], he pointed out that although New Times and New Age in

many respects operated separately, generally did not commingle their assets, and

distributed account statements under their respective names, their owner had promoted

them to investors as being indistinguishable."   *Id.*

19.     Here, DeMatteis LLC's investment with Madoff through the Foredestine

Fund and Rye Fund is analogous to investing with a non-SIPC member affiliate of

Madoff.  Upon information and belief, including publicly filed pleadings in pending

federal cases, the following evidences the close affiliation between Madoff and the Rye
Fund:

- o   Mr. Schulman had a close professional relationship with Madoff.

- o   Upon joining the executive ranks in 1994, Mr. Schulman began marketing
      Madoff dedicated Rye funds.

- o   Mr. Hodges and Mr. Schulman openly marketed the Rye Fund to
      prospective investors as a fund designed for the purpose of investing with
      Madoff.

- o   The Rye Fund, along with four other Madoff feeder funds (Rye Select
      Broad Market Portfolio Limited, Rye Select Broad Market Fund, L.P.,
      Rye Select Broad Market XL Fund, L.P. and Rye Select Broad Market XL
      Portfolio Limited), deposited all or substantially all of their assets with
      Madoff and have lost in excess of 3 billion dollars as a result of Madoff's
      Ponzi scheme.

- o   The Rye Fund funneled substantially all of its assets to Madoff since
      DeMatteis LLC's initial deposit in 2006.

20.    Upon information and belief, including publicly filed pleadings in pending
federal cases, the following evidences the close affiliation between Madoff and the
Foredestine Fund:

- o   In 2008, Mr. Schulman resigned as president and chief executive officer of
      Rye Investment Management and started the Foredestine Fund, a new
      feeder fund to Madoff.

o   Mr. Schulman continued his close professional relationship with Madoff
    in 2008.

o   The Foredestine Fund was merely an extension of the Rye Fund as
    evidenced by Foredestine's naming convention (*i.e.* the Foredestine Series
    Fund, LLC- *Broad Market Prime* Series invested substantially all assets in
    the Rye Select *Broad Market Prime* Fund, L.P.).

o   Mr. Schulman openly marketed the Foredestine Fund to prospective
    investors as a fund designed for the purpose of investing with Madoff
    through the Rye Fund.

o   The Foredestine Fund deposited all or substantially all of its assets with
    Madoff through the Rye Fund. *See* Exhibit B.

21.    Accordingly, DeMatteis LLC is a customer under SIPA even though it
invested with Madoff through feeder funds, because said funds were affiliates of Madoff
designed with the purpose of investing substantially all assets with Madoff. The Rye
Fund and Foredestine Fund had longstanding ties to Madoff and were an integral part of
Madoff's Ponzi scheme. Investors like DeMatteis LLC, invested with these feeder funds
with the intent that their funds be deposited with Madoff for the purpose of purchasing
securities. In tracing DeMatteis LLC's investments, the Rye Fund and Foredestine Fund
were nothing more than vehicles that funneled initial investor deposits into Madoff's
Ponzi scheme. Moreover, the only difference between the Rye Fund and Foredestine
Fund is that deposits accepted by the Foredestine Fund passed through the Rye Fund
before ultimately being deposited with Madoff.

22.    As with the cases discussed above, it is not relevant whether DeMatteis

LLC had an account on the books and records of Madoff or that DeMatteis LLC

originally deposited its funds in an entity other than Madoff.  Rather, the key to obtaining

customer status under SIPA is the fact that DeMatteis LLC deposited funds with the

intent for Madoff to purchase securities on its behalf and the fact that Madoff actually did

acquired, possess and eventually convert DeMatteis LLC's funds.

**C.    SIPA is remedial legislation and any ambiguity in SIPA's customer
definition should be construed liberally to affect its purpose.**

23.    "SIPA is remedial legislation. . . [and] should be construed liberally to

affect its purpose." *In re First State Sec. Corp.*, 34 B.R. 492, 496 (Bankr.S.D.Fla 1983)

(*citing Tcherepin v. Knight*, 389 U.S. 332, 336 (1967)).  SIPA's purpose is the

"protection of the insolvent broker's customers." *Id.* (*citing SEC v. Ambassador Church

Finance/Development Group, Inc.*, 679 F.2d 608, 612 (6th Cir. 1982)); *See also

Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 415 (1975).  Any

interpretation of the definition and scope of the term customer should be construed in

favor of DeMatteis LLC given the fact that DeMatteis LLC lost substantially all of its

funds through Madoff's Ponzi scheme as a result of those funds being deposited with

Madoff for the purpose of purchasing securities.

## RELIEF REQUESTED

24.    For the reasons stated herein, the Court should find that DeMatteis LLC is

a customer under SIPA 15 U.S.C. § 78lll(2) and is entitled to the preferred status and

special protections afforded to SIPA customers.

25.    For the reasons stated herein, the Court should direct the Trustee to

immediately process DeMatteis LLC's SIPC Customer Claim.

26.     For the reasons stated herein, the Determination Letters should be stricken.

27.     DeMatteis LLC requests such other relief as may be just and equitable.

## CONCLUSION

28.     DeMatteis LLC reserves the right to amend, revise or supplement this Objection.

29.     Any failure by DeMatteis LLC to object on a ground or grounds shall not be construed as a waiver of DeMatteis LLC's right to object on that ground or grounds in the future.

30.     DeMatteis LLC reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

31.     DeMatteis LLC reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

Dated:      Uniondale, New York
            January 6, 2010

                        RUSKIN MOSCOU FALTISCHEK, P.C.

                        By: _____
                            Mark S. Mulholland
                            1425 RXR Plaza
                            East Tower, 15th Floor
                            Uniondale, New York 11556
                            Telephone: (516) 663-6600
                            Facsimile: (516) 663-6648
                            *Attorneys for Attorneys for DeMatteis FLP Assets, LLC*

## CERTIFICATE OF SERVICE

I, Mark S. Mulholland, hereby certify that on the 6th day of January, 2010, I electronically transmitted a true and correct copy of the foregoing OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM LETTER, dated January 6, 2010, to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing (NEF) to all attorneys of record who are ECF registrants. I also certify that on said date, I served a true and correct copy of the aforementioned document by United States Express Mail on Irving H. Picard, Trustee, c/o Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, New York 10111, and by regular mail on the following attorneys who are not ECF registrants:

Philip Bentley
Douglas Rimsky
Jonathan Koevary
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, New York 10036

Seth Davis
David E. Ross
Victor Barnet
Kasowitz, Benson Torres & Friedman LLP
1633 Broadway
New York, New York 10019

David C. McGrail
Law Offices of David C. McGrail
676A Ninth Avenue
New York, New York 10036

Joseph E. Shickich
Riddell Williams P.S.
1001 4th Avenue, Suite 4500
Seattle, Washington 98154-1065

Howard Kleinhendler
Wachtel & Masyr, LLP
110 East 59th Street
New York, New York 10022

Alan Nisselson
Windels Marx Mittendorf & Lane, LLP
156 West 56th Street
New York, New York 10019

Paul Traub
Epstein Becker & Green, P.C.
250 Park Avenue, 11th Floor
New York, New York 10177-1211

Tina M. Talarchyk
Squire, Sanders & Dempsey LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198

John J. Lavin
Coppel Laughlin Blount & Lavin, LLP
P.O. Box 455
Chester, New Jersey 07930

Thomas M. Wearsch
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Janis Weiss
415 East 54th Street, Apt. 10C
New York, New York 10022

Irwin Kellner
40 Angler Lane
Port Washington, New York 11050

_____
Mark S. Mulholland

# EXHIBIT A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation
### DECEMBER 11, 2008[1]


### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

DEMATTEIS FLP ASSETS, LLC
C/O THE DEMATTEIS TRUSTS, ATTN: DONALD M. SCHAEFFER
1230 RXR PLAZA, 12TH FLOOR, WEST TOWER
UNIONDALE, NY 11556-1230


Dear DEMATTEIS FLP ASSETS, LLC:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 004562:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and


Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  MARK S. MULHOLLAND, ESQ.; RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR PLAZA, EAST TOWER, 15TH FLOOR
UNIONDALE, NY 11556-1425

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

DEMATTEIS FLP ASSETS LLC
c/o THE DEMATTEIS TRUSTS; ATTN: DONALD M. SCHAEFFER
1230 RXR PLAZA, 12th FLOOR, WEST TOWER
UNIONDALE, NY 11556-1230

Dear DEMATTEIS FLP ASSETS LLC:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 008806:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004


and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  MARK S. MULHOLLAND, ESQ., RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR PLAZA, EAST TOWER, 15th FLOOR
UNIONDALE, NY  11556-1425

# EXHIBIT B

**Foredestine Series Fund, LLC on behalf of Broad Market Prime Series**
c/o Foredestine, LLC
415 Madison Avenue
Suite 1512
New York, NY 10017

[December 22, 2008]

Re:  Foredestine Series Fund, LLC  (the "Fund") on behalf of Broad Market Prime Series (this
     "Series")

Dear Member:

We are writing to inform you of the measures that Foredestine, LLC (the "Manager") is
taking as a result of the apparent fraud by Bernard L. Madoff and his investment firm Bernard L.
Madoff Investment Securities, LLC ("BLMIS") and its effect on this Series of the Fund.  The
severity and scope of the fraud grows daily.  On Tuesday, December 16, 2008, the SEC issued
Release 2008-297, by Commissioner Cox, that restated the emergency actions being taken by the
SEC and indicated that it had learned in reviewing records of Mr. Madoff that "those records are
increasingly exposing the complicated steps that Mr. Madoff took to deceive investors, the public
and regulators," and that he maintained "Several sets of books and records and false documents,
and provided false information involving his advisory activities to investors and regulators." The
full text of the release appears at www.sec.gov.  The fraud is massive.

As you know, all or substantially all of this Series' portfolio had exposure to BLMIS
and/or one or more of its affiliates or agents (collectively, "BLMIS Products") through this Series'
investment in Rye Select Broad Market Prime Fund, LP, the Initial Underlying Fund, which had all
or substantially all of its assets allocated to one or more BLMIS Products.  Terms used but not
otherwise defined herein have the respective meanings as set forth in the Fund's Operating
Agreement dated as of July 1, 2008 (the "Operating Agreement") and the Authorizing Resolution
dated as of July 1, 2008 corresponding to this Series (the "Authorizing Resolution").

The Manager has determined, pursuant to the Operating Agreement and the Authorizing
Resolution, that it would be in the best interests of the Members of this Series as a whole to
declare a temporary suspension of (i) the determination of the Net Asset Value of this Series, (ii)
withdrawals from this Series and (iii) payment of withdrawal proceeds (if any) which are or will
become due and owing to Members of this Series.

Each of the above suspensions will be effective immediately and will remain in effect
until such time as the Manager determines it is in the best interests of the Members of this Series
to lift such suspension.

Our counsel, Tannenbaum Helpern Syracuse & Hirschtritt LLP, is very much on top of
these matters, is monitoring the situation carefully and will take appropriate action.

We will update you of any new developments in connection with the above matters.  We
appreciate your patience during this time and wish to assure you that we are consulting with the
Fund's and this Series' counsel and reviewing all available options.

[847678-3]

Sincerely,

Foredestine, LLC,
Manager

By: _____
    Name: Robert I. Schulman
    Title:  Managing Member

[847678-3]

# EXHIBIT C

# R&F

## RUSKINMOSCOUFALTISCHEK P.C.

*Counselors at Law*

Writer's Direct Dial: (516) 663-6528
Writer's Direct Fax: (516) 663-6728
Writer's E-Mail: mmulholland@rmfpc.com

February 27, 2009

**USPS EXPRESS MAIL OVERNIGHT**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

>   Re:    Bernard L. Madoff Investment Securities, LLC ("Madoff")
>          Account No.: 1-C1260-3-0 Customer Claim Form Package

Dear Mr. Picard:

On behalf of Madoff customer DeMatteis FLP Assets, LLC, investor in Foredestine Series Fund LLC- Broad Market Prime Series which invested in Madoff, Account No.: 1-C1260-3-0, through its investment in Rye Select Broad Market Prime Fund, LP, enclosed please find the Customer Claim Form Package in connection with the liquidation of Bernard L. Madoff Investment Securities, LLC.

The following documents are included in this package:

- Customer Claim Form signed in counterparts by Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin, Independent Trustees of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.
- Exhibit A: Containing the 10/31/08 Foredestine Statement.
- Exhibit B: Containing the Operating Agreement for DeMatteis FLP Assets, LLC and The 2001 Frederick DeMatteis Revocable Trust Agreement.



RUSKIN MOSCOU FALTISCHEK P.C.
*Counselors at Law*

*February 27, 2009*
*Page 2 of 2*

      Please contact me to discuss any questions or additional information needed with respect to the enclosed Customer Claim Form Package.

Very truly yours,

MARK S. MULHOLLAND
For the Firm

MSM:ds
Enclosures
cc:    Customer DeMatteis FLP Assets, LLC (with enclosures)

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

**(Please print or type)**

Name of Customer: <u>DeMatteis FLP Assets, LLC</u>
Mailing Address: <u>c/o The DeMatteis Trusts, 1230 RXR Plaza, 12th Floor, West Tower</u>
City: <u>Uniondale</u>            State: <u>New York</u>       Zip: <u>11556-1230*</u>
Account No.: <u>1-C1260-3-0</u>
Taxpayer I.D. Number (Social Security No.): <u>510471632</u>
*Attn: Donald M. Schaeffer

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.    Claim for money balances as of **December 11, 2008**:

   a.    The Broker owes me a Credit (Cr.) Balance of        $_____

   b.    I owe the Broker a Debit (Dr.) Balance of        $_____

   c.    If you wish to repay the Debit Balance,

         please insert the amount you wish to repay and

         attach a check payable to "Irving H. Picard, Esq.,

         Trustee for Bernard L. Madoff Investment Securities LLC."

         If you wish to make a payment, **it must be enclosed**

         with this claim form.        $_____

   d.    If balance is zero, insert "None."        _____

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
|  | | YES | |
| a. | The Broker owes me securities | $1,185,541.82* | |
| b. | I owe the Broker securities | | X |

c.    If yes to either, please list below:

*This amount represents the value of the securities held on 10/31/08 by the customer's investment in the Foredestine Series Fund LLC- Broad Market Prime Series which is invested in Bernard L. Madoff Investment Securities LLC, Account No.: 1-C1260-3-0, through its exclusive investment in Rye Select Broad Market Prime Fund, LP.
(Exhibit A)

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| Please see attached Exhibit A. | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please see attached Exhibit A.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|  | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | _____ | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | _____ | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | _____ | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | _____ | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Mark S. Mulholland, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556-1425

502180406                                                3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  2/26/09 _____    Signature _____
                                                Donald M. Schaeffer*

Date _____    Signature _____
                                                Stanley Sirote*

Date _____    Signature _____
                                                Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

4

502180406

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____  Signature _____ Donald M. Schaeffer*

Date _2/20/09_  Signature _____ Stanley Sirote*

Date _____  Signature _____ Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

502180406

4

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date_____    Signature_____
                                                      Donald M. Schaeffer*

Date _____    Signature_____
                                                      Stanley Sirote*

Date   25 FEB 2009    Signature_____
                                                      Ronald L. Gallatin*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

Please see attached Exhibit B.

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

*Independent Trustee of The 2001 Frederick DeMatteis Revocable Trust, Manager of DeMatteis FLP Assets, LLC.

4

502180406

# EXHIBIT A

Broad Market Prime Series

Statement of Changes in Member's Capital (Net Asset Value)

October 1, 2008 through October 31, 2008

(Prepared from Books without Audit)



### Investor Account Statement

DeMatteis FLP Assets LLC
The DeMatteis Trusts
1230 Reckson Plaza
12th Floor, West Tower
Uniondale, NY 11556

| Member | | Current Period | | Year to Date 2008 |
|---|---|---|---|---|
| Beginning Net Asset Value | $ | 1,186,736.07 | $ | 0.00 |
| Additions | $ | 0.00 | $ | 1,160,079.77 |
| Net Income (Loss) | $ | (1,194.25) | $ | 25,462.05 |
| Withdrawals | $ | 0.00 | $ | 0.00 |
| Ending Net Asset Value | $ | 1,185,541.82 | $ | 1,185,541.82 |

| | |
|---|---|
| Period Time Weighted Return | (0.10%) |
| Year to Date Time Weighted Return | 2.19% |

2/24/2009 7:36:32 AM

# EXHIBIT B

LIMITED LIABILITY COMPANY OPERATING AGREEMENT

OF

DEMATTEIS FLP ASSETS, LLC
(A New York limited liability company)


THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT is dated June 6, 2003, between DEMATTEIS FLP ASSETS, LLC, a New York limited liability company (the "Company"), and THE FREDERICK DEMATTEIS FAMILY LIMITED PARTNERSHIP, a New York limited partnership (the "Member").

The parties desire to organize the Company and to provide herein for its management and the conduct of its business and affairs and the rights and obligations of the Member (as defined herein) with respect thereto.

It is therefore agreed as follows:

ARTICLE I
FORMATION

Section 1.1    Formation.    The Member hereby organizes the Company under the New York Limited Liability Company Law (the "Act") and upon the execution and delivery hereof by each of the parties hereto, all upon the terms and subject to the conditions set forth in this agreement.

Section 1.2    Name of the Company.    The name of the Company is DeMatteis FLP Assets, LLC (or such other name as the Manager (as defined in section 4.2) may provide in an amendment to the Company's Articles of Organization), and the Company shall conduct its business under such name, or under any assumed, fictitious or other name as directed by the Manager, but only to the extent permitted by law.

Section 1.3    Places of Business.    The principal place of business of the Company shall be located at c/o The DeMatteis Organizations, West Tower, EAB Plaza, Uniondale, New York 11556-0102, or at such other place which the Manager may direct.

Section 1.4    Purposes.    The purposes of the Company are:

(a)    investing in, trading, and purchasing (on margin or otherwise), or otherwise acquiring, holding, pledging, selling (including short sales) and disposing of all types of stocks, shares, bonds, debentures, obligations, notes, evidences of indebtedness, certificates of interest, partnership interests, limited liability company membership interests, units of trust, evidences of ownership, warrants, options, puts or calls, or other interests (collectively "Securities") issued or created by any and all corporations, partnerships, limited liability companies, limited liability partnerships, trusts, funds,

associations, banks, federal, state or local governmental units or other entities and to exercise any and all rights, powers and privileges of ownership or interest relating thereto, including, without limitation, the right to vote thereon and consent and otherwise act with respect thereto;

(b)    managing or operating (or participating with others in the management or operation of) any entities in which the Company has invested;

(c)    accomplishing any lawful business whatsoever or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets;

(d)    engaging in any lawful act or activity for which limited liability companies may be formed under the Act; and

(e)    engaging in all activities necessary, customary, convenient or incident to any of the foregoing.

ARTICLE II
CAPITALIZATION; DISTRIBUTIONS

Section 2.1    Capital Contributions.    The Member shall make an initial contribution in the amount set forth on Schedule A attached hereto.  Such contribution is being made simultaneously with the execution of this agreement and the Company hereby acknowledges receipt thereof.  In addition to the initial contribution, the Member may make additional contributions, as determined in the Member's sole discretion.

Section 2.2    Distributions.    The Company shall make such distributions (including interim distributions) as the Manager, in the Manager's sole discretion, shall determine, except that the Company may not make distributions prohibited by the Act.

ARTICLE III
FISCAL MATTERS

Section 3.1    Tax Elections.    The Manager may make any tax elections for the Company allowed under the Internal Revenue Code (the "Code") or the tax laws of any state or other jurisdiction having taxing jurisdiction over the Company.

Section 3.2    Method of Accounting.    The records of the Company shall be maintained on the same method of accounting as that of the Member or on such other basis as the Manager, in the Manager's sole discretion, shall determine.

Section 3.3    Books and Records.    The Manager shall maintain or cause to be maintained at the Company's principal place of business (or at such other place as the

Manager may deem appropriate) complete and accurate books and records of the assets, business and affairs of the Company including, without limitation:

(a)    true and full information regarding the status of the business and financial condition of the Company;

(b)    a copy of this agreement and the Articles of Organization of the Company and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which this agreement and any certificate and all amendments thereto have been executed;

(c)    any financial statements of the Company for the three most recent fiscal years;

(d)    copies of the Company's federal, foreign, state and local income tax returns and reports (or the portions of the returns of others showing the taxable income deductions, gain, loss and credits of the Company), if any, for the three most recent years; and

(e)    other information regarding the affairs of the Company as in the judgment of the Manager is just and reasonable.

## ARTICLE IV
## ADMINISTRATION

Section 4.1    Management of the Company.

(a)    The Manager shall have the exclusive right, power and authority to manage the assets, properties, business and affairs of the Company, with all rights and powers and the full authority necessary, desirable or convenient to administer and operate the same for Company purposes, to incur, perform, satisfy and compromise all manner of obligations on behalf of the Company, and to make all decisions and do all things necessary or desirable in connection therewith.

(b)    Without limiting the generality of section 4.1(a) above, or any other term or provision of this agreement and except as otherwise prohibited or limited by the provisions of this agreement or applicable law, the Manager shall have the exclusive right, power and authority to, directly or indirectly, take or omit to take whatever action for Company purposes that the Manager may, in the Manager's sole discretion, deem necessary or desirable to carry out the Company's purposes, including but not limited to the right, power and authority:

(i)    to purchase or otherwise acquire any Securities;

(ii)    to purchase, lease or otherwise acquire any real or personal property;

(iii)    to sell, convey, mortgage, grant a security interest in, pledge, lease, exchange or otherwise dispose or encumber any Securities or any real or personal property;

(iv)    to vote, give consents, proxies or otherwise take action with respect to Securities;

(v)    to open one or more depository accounts and make deposits into, and sign checks and make withdrawals against, such accounts;

(vi)    to borrow money, incur liabilities and other obligations either on a secured or unsecured basis;

(vii)    to commence, prosecute or defend any proceeding in the Company's name;

(viii)    to participate with others in partnerships, joint ventures and other associations and strategic alliances;

(ix)    to deposit, withdraw, invest, pay, retain and distribute the Company's funds in any manner not inconsistent with the provisions of this Agreement;

(x)    to bring, defend and settlement actions at law or at equity;

(xi)    to enter into and carry out contracts and agreements and any or all documents and instruments and do and perform all such other things as may be necessary in furtherance of the Company's purposes or furtherance of the Company's purposes or appropriate to the conduct of the Company's activities;

(xii)    to employ on behalf of the Company such persons, firms or corporations as the Manager, in the Manager's sole and absolute discretion, deems advisable for the operation and management of the business of the Company on such terms and for such compensation, as the Manager shall determine;

(xiii)    to cause the lease, mortgage or pledge of the assets or business of the Company;

(xiv)    to cause the Company to convert, by sale, merger, reorganization, consolidation or otherwise, to any other type of business entity;

(xv)    to execute and file the Articles of Organization and any other certificate or other instrument which may be required to be filed by the Company to transact business under the laws of the State of New

York, or any other foreign, federal or state government where the Company may transact business or any amendments thereto; and

(xvi)    to execute, acknowledge and deliver any and all instruments, and take any and all actions, which may be deemed necessary or desirable to effect any of the foregoing or any of the other provisions of this Agreement.

(c)    The Manager shall (1) perform its services in such capacity diligently and faithfully for the benefit of the Company, (2) perform such services in accordance with all applicable policies and practices of the Company, and (3) devote such portion of his business time and attention to the business and affairs of the Company as he deems necessary to carry out its duties hereunder.

Section 4.2    The Manager.    The Manager shall serve until such time as the Manager resigns, is incapacitated or dies, or is removed. In the event of any temporary incapacity or other unavailability of the Manager, the Manager may appoint a substitute Manager for the duration of such incapacity or unavailability. The Manager may resign at any time by giving at least 30 days prior written notice of such resignation to the Member. Any such resignation shall take effect on the date specified in such notice. The initial Manager shall be The 2001 Frederick DeMatteis Revocable Trust under Agreement dated July 18, 2001 (the "Trust"), and, by executing this agreement where indicated below, the Trust agrees and consents to be the initial Manager of the Company hereunder. For purposes of this agreement, it is noted, acknowledged and agreed to by each of the Company and the Member that: (i) the currently acting Trustees of the Trust are Nancy DeMatteis, Donald M. Schaeffer, Stanley Sirote and Ronald L. Gallatin (Mr. Schaeffer, Mr. Sirote and Mr. Gallatin being referred to in this agreement and in the Trust collectively as the "Independent Trustees"), and (ii) pursuant to applicable law and the relevant provisions of the said Trust Agreement all decisions and actions by the Trust are authorized to be made by a majority of the four (4) Trustees or, in default thereof, by a majority of the three (3) Independent Trustees. Accordingly, any decision or action by the Trust in its capacity as Manager of the Company for all purposes under this agreement, including, without limitation, such decisions and actions by the Trust in its capacity as Manager of the Company with respect to investment transactions and the delivery or receipt of funds by wire transfer, check or otherwise, are authorized to be made by either a majority of the four (4) Trustees or a majority of the three (3) Independent Trustees, as the case may be.

Section 4.3    Interested Member.

(a)    The Member shall be entitled to enter into transactions that may be considered to be competitive with, or a business opportunity that may be beneficial to, the Company, it being expressly understood that the Member may enter into transactions that are similar to the transactions into which the Company may enter.

(b)    The Member does not violate a duty or obligation to the Company merely because its conduct furthers its own interest.  The Member may lend money to and transact other business with the Company.  The rights and obligations of the Member when it lends money to or transacts business with the Company are the same as those of anyone who is not a Member, subject to other applicable law.  No transaction with the Company shall be voidable solely because the Member has a direct or indirect interest in the transaction.

Section 4.4    <u>Limitation of Liability</u>.  Neither the Member nor the Manager shall be liable to the Company, or the other, for any loss, damage, liability or expense ("Liability") suffered or incurred by any person on account of, or by reason of any claim based on or arising from, any action taken or omitted to be taken in the course of representing or performing services for the Company or otherwise in its capacity as the Member or Manager, as the case may be, including, without limitation, its appointment or retention of, or reliance upon, any employee or agent of the Company, notwithstanding any negligence, fraud or willful misconduct by such employee or agent, except to the extent that a judgment or other final adjudication adverse to it establishes that its acts or omissions (a) were in violation of any provision of this agreement or the Act, (b) were in bad faith, (c) involved intentional misconduct or a knowing violation of law, or (d) resulted in personal gain or financial profit or other advantage to which it was not legally entitled.

Section 4.5    <u>Indemnification</u>.

(a)    The Company shall indemnify the Member and the Manager, and their respective legal representatives, successors and assigns, and hold each of them harmless from and against any Liability suffered or incurred by the Company or the Manager (or the Member, as the case may be) while acting for or on behalf of the Company to the fullest extent permitted by applicable law.  The Company may procure insurance in such amounts and covering such risks as the Manager deems appropriate to fund  any indemnification required or permitted to be made hereunder.    The indemnification required or permitted to be made hereunder shall include, without limitation, indemnification for attorneys' fees and other costs and expenses to the fullest extent permitted by applicable law.

(b)    Notwithstanding any provision hereof or of any other document governing the formation, management or operation of the Company to the contrary, the following shall govern:

ARTICLE V
<u>TRANSFERS</u>

Section 5.1    <u>Disposition</u>.  The Member's interest in the Company is transferable by the Member, in whole or in part.

Section 5.2    Admission of Additional Members.    The Member may cause the
Company to admit additional members.

ARTICLE VI
DISSOLUTION AND LIQUIDATION

Section 6.1    Dissolution.    Subject to the provisions of applicable law, the
Company shall be dissolved upon the consent of the Manager.

Section 6.2    Disability of a Manager or Member.

(a)    The death, retirement, insanity, withdrawal, bankruptcy,
dissolution, insolvency or termination and liquidation of a Manager (a "Disabled
Manager"), shall not cause a dissolution of the Company.    The successor Manager upon
the Manager becoming a Disabled Manager such be such person as the Member shall
appoint.

(b)    In the event of the death, retirement, insanity, withdrawal,
bankruptcy, dissolution, insolvency or termination or liquidation of a Member or the
making by a Member of an assignment for the benefit of creditors (such Member
thereafter being referred to as the "Disabled Member"), the Company shall not be
dissolved but shall continue in existence.    If a Member shall become a Disabled Member,
the executor, administrator, guardian or other legal representative or successor in interest
of such Member shall succeed in such representative capacity to all of the rights and
liabilities of such Member under this Agreement.

Section 6.3    Liquidation.

(a)    Upon a dissolution of the Company, the Manager shall distribute
the Company's assets, or the proceeds from the liquidation thereof, in cash or in kind, in
the following order:

(i)    to the payment of all liabilities and obligations of the
Company, including expenses of the liquidation and obligations and
liabilities to the Member (other than on liabilities for distributions under
applicable law); and

(ii)    to the Member, in cash, in-kind or both, as determined by
the Manager.

(b)    The Manager shall be allowed a reasonable time for the orderly
liquidation of the Company's assets and properties and the discharge of indebtedness and
other liabilities to creditors, so as to preserve and, upon disposition, maximize the value
of the Company's assets and properties.

Section 6.4  <u>Winding Up and Certificate of Cancellation</u>.  The winding up of the Company shall be completed when all debts, liabilities, and obligations of the Company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining property and assets of the Company have been distributed to the Member.  Upon the completion of winding up of the Company, a Certificate of Cancellation shall be delivered to the Secretary of State of New York for filing.  The Certificate of Cancellation shall set forth the information required by the Act.

ARTICLE VII<br>MISCELLANEOUS

Section 7.1  <u>Limitation of Authority</u>.  No provision hereof shall be deemed to create any partnership, joint venture or joint enterprise or association between the parties hereto, or to authorize or to empower either party hereto to act on behalf of, obligate or bind the other party hereto.

Section 7.2  <u>Notices</u>.  Any notice, demand, request or other communication which is required, called for or contemplated to be given or made hereunder to or upon any party hereto shall be deemed to have been duly given or made for all purposes if (a) in writing and sent by (i) messenger or an overnight courier service for next day delivery with receipt therefor, or (ii) certified or registered mail, postage paid, return receipt requested, or (b) sent by telegram, facsimile transmission, telex or similar electronic means, with a written copy thereof sent on the same day by postage paid first-class mail, to such party at the following address:

To the Member at:

c/o The DeMatteis Organizations
West Tower
EAB Plaza
Uniondale, New York 11556-0102

To the Company or Manager at:

c/o The DeMatteis Organizations
West Tower
EAB Plaza
Uniondale, New York 11556-0102

or such other address as either party hereto may at any time, or from time to time, direct by notice given to the other party in accordance with this section.  The date of giving or making of any such notice or demand shall be, in the case of clause (a)(i), the date of the receipt; in the case of clause (a)(ii), five business days after such notice or demand is

sent; and, in the case of clause (b), the business day next following the date such notice or demand is sent.

Section 7.3    Amendment.  Except as otherwise provided herein, no amendment of this Agreement shall be valid or effective unless in writing and signed by or on behalf of the Manager and each Member.

Section 7.4    Governing Law.   This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in New York.

Section 7.5    Severability.   The provisions hereof are severable and if any provision of this agreement shall be determined to be legally invalid, inoperative or unenforceable in any respect by a court of competent jurisdiction, then the remaining provisions hereof shall not be affected, but shall, subject to the discretion of such court, remain in full force and effect, and any such invalid, inoperative or unenforceable provision shall be deemed, without any further action on the part of the parties hereto, amended and limited to the extent necessary to render such provision valid, operative and enforceable.

Section 7.6    Assignment.  Except as otherwise provided elsewhere herein, this Agreement, and each right, interest and obligation hereunder, may not be assigned by any party hereto without the prior written consent of the other party hereto.  Any purported assignment without such consent shall be void and without effect.

Section 7.7    Binding Effect.  This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors and permitted assigns.

Section 7.8    No Third Party Beneficiaries.  Nothing contained in this agreement, whether express or implied, is intended, or shall be deemed, to create or confer any right, interest or remedy for the benefit of any Person other than the parties hereto and their successors in interest and their actual permitted assignees.

Section 7.9    Entire Agreement.  This agreement (including any schedules and exhibits hereto), together with the certificates specifically referred to herein or required to be delivered pursuant to the terms hereof, contains, and is intended as, a complete statement of all of the terms of the agreements between the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, commitments, understandings, discussions, negotiations or arrangements of any nature relating thereto.

Section 7.10    Headings.  The headings contained in this agreement are included for convenience and reference purposes only and shall be given no effect in the construction or interpretation of this Agreement.

Section 7.11 <u>Counterparts; Facsimile Signatures</u>.    This agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This agreement may be executed by facsimile signature of a party, which shall have the same binding force and effect on such party as an original signature.

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:    THE 2001 FREDERICK DEMATTEIS
      REVOCABLE TRUST UNDER AGREEMENT
      DATED JULY 18, 2001, Manager

By: *Nancy DeMatteis*
    Name:   Nancy DeMatteis
    Title:    Co-Trustee

By:_____
    Name:   Donald M. Schaeffer
    Title:    Co-Trustee

By:_____
    Name:   Stanley Sirote
    Title:    Co-Trustee

By:_____
    Name:   Ronald L. Gallatin
    Title:    Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By:  FDF ASSOCIATES LLC, general partner

By:_____
    Name: Robert Vaccarello
    Title:  Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:  THE 2001 FREDERICK DEMATTEIS
     REVOCABLE TRUST UNDER AGREEMENT
     DATED JULY 18, 2001, Manager

By:_____
    Name:    Nancy DeMatteis
    Title:     Co-Trustee

By:_____
    Name:    Donald M. Schaeffer
    Title:     Co-Trustee

By:_____
    Name:    Stanley Sirote
    Title:     Co-Trustee

By:_____
    Name:    Ronald L. Gallatin
    Title:     Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By:  FDF ASSOCIATES LLC, general partner

By:_____
    Name: Robert Vaccarello
    Title:  Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:    THE 2001 FREDERICK DEMATTEIS
       REVOCABLE TRUST UNDER AGREEMENT
       DATED JULY 18, 2001, Manager

By:_____
    Name:    Nancy DeMatteis
    Title:    Co-Trustee

By:_____
    Name:    Donald M. Schaeffer
    Title:    Co-Trustee

By:_____
    Name:    Stanley Sirote
    Title:    Co-Trustee

By:_____
    Name:    Ronald L. Gallatin
    Title:    Co-Trustee


SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership


By:  FDF ASSOCIATES LLC, general partner


By:_____
    Name: Robert Vaccarello
    Title:   Manager

IN WITNESS WHEREOF, the undersigned have set their hands and seals of the date first above written.

DEMATTEIS FLP ASSETS, LLC

By:  THE 2001 FREDERICK DEMATTEIS
     REVOCABLE TRUST UNDER AGREEMENT
     DATED JULY 18, 2001, Manager

By:_____
     Name:    Nancy DeMatteis
     Title:    Co-Trustee

By:_____
     Name:    Donald M. Schaeffer
     Title:    Co-Trustee

By:_____
     Name:    Stanley Sirote
     Title:    Co-Trustee

By:_____
     Name:    Ronald L. Gallatin
     Title:    Co-Trustee

SOLE MEMBER:

THE FREDERICK DEMATTEIS FAMILY LIMITED
PARTNERSHIP, a New York limited partnership

By:  FDF ASSOCIATES LLC, general partner

By:_____
     Name: Robert Vaccarello
     Title:  Manager

## THE 2001 FREDERICK DeMATTEIS REVOCABLE TRUST

AMENDED AND RESTATED AGREEMENT OF TRUST (the "Agreement") dated the /3 ᵀᴴ day of July, 2001, between FREDERICK DeMATTEIS, as Settlor (the "Settlor"), and FREDERICK DeMATTEIS, NANCY DeMATTEIS, DONALD M. SCHAEFFER, STANLEY SIROTE and RONALD L. GALLATIN, as Trustees (the "Trustees").

### W I T N E S S E T H:

A.    The Settlor and the Trustees heretofore entered into an Agreement of Trust dated July 12, 2001, (the "Prior Agreement") establishing a revocable trust (the "Trust") for the benefit of the Settlor during his life and thereafter for the benefit of his wife, NANCY DeMATTEIS, the Settlor's lawful issue and other beneficiaries as therein specified.

B.    Pursuant to the preamble to the Prior Agreement, the Prior Agreement was effective upon the date that FREDERICK DeMATTEIS signed the Prior Agreement as Settlor and as a Trustee, such date being the 12th day of July, 2001.

C.    Pursuant to the provisions of Paragraph "A.2" of Article "EIGHTEENTH" of the Prior Agreement, the Settlor reserved the right to amend or modify the Trust, in whole or in part.

D.   The Settlor desires to amend and restate the
provisions of the Prior Agreement in its entirety as hereinafter
provided.

E.   The Trustees are willing to continue to act as
Trustees upon the terms and conditions hereinafter set forth.

<u>FIRST</u>

The Trustees shall retain the property in their hands,
together with any additional property added to the Trust, IN
TRUST, during the life of the Settlor or until the earlier
termination of the Trust, for the following purposes:

A.   To pay the income to the Settlor at least
quarter-annually.

B.   To pay such sums from or any part or all of the
principal of the Trust as the Trustees, in their discretion, from
time to time determine to, for, or on behalf of the Settlor for
any reason whatsoever.

C.   To pay to the Settlor or others such sums from,
or any part, or all of the principal of the Trust as the Settlor
may from time to time direct in writing.

D.   1.   Any provision hereof to the contrary
notwithstanding, in the event that the Settlor is determined to be
incompetent or otherwise unable to act rationally or prudently
his own best interests, as determined pursuant to Article
"FIFTEENTH" hereof, the Settlor shall cease to act as a Trustee
during such period of incompetency and the provisions of

Paragraphs "A", "B" and "C" of this Article "FIRST" shall be inoperative during any period of the Settlor's incompetency as so determined and the remaining Trustees then acting (a) may, at any time and/or from time to time, pay over or apply so much of the net income and/or principal of the Trust to or for the use and benefit of the Settlor, as the Trustees, in their sole and absolute discretion, without regard to any and all other property, funds or resources (income or principal) which may be available to or for the use and benefit of the Settlor, may deem necessary or proper, and (b) may, at any time and/or from time to time, pay over or apply so much of the net income and/or principal of the Trust to or for the use and benefit of the ~~Settlor's wife, NANCY DeMATTEIS,~~ as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds or resources (income and principal) which may be available to or for the use and benefit of the Settlor's wife, may deem advisable.

2.   At all times during the term of this Trust when the Settlor shall be acting as a Trustee, all decisions and actions of any kind regarding or on behalf of the Trust hereunder (including, without limitation, any ministerial, discretionary or substantive actions and/or decisions), shall be accomplished solely by the Settlor as such Trustee, and, without limitation to the provisions of Paragraph "D.2" of Article "TWELFTH" hereof, it is hereby provided that the Settlor's co-Trustees shall have no

authority or obligation to take any action hereunder or to review
the actions of the Settlor as Trustee, nor shall the Settlor's co-
Trustees incur any liability hereunder for any actions taken by
the Settlor as such Trustee.  Thus, for example, all bank account,
securities account and all other transactions, including the
collection of income, making of investments and the selling or
exchanging of any of the property, or interests therein,
comprising the Trust, shall be accomplished at all such times
solely upon the signature or other action of the Settlor as such
Trustee.

## SECOND

Upon the death of the Settlor, the following provisions
shall apply:

      A.  The Settlor directs that the following amounts be
paid from the Trust to the following organizations, provided that
(i) in each case such organization is a "qualified charitable
organization" at the date of the Settlor's death, which term for
purposes of this Agreement means any organization contributions to
which are deductible for Federal Estate Tax purposes, and (ii)
each such disposition shall be subject to any further conditions
stated below with regard thereto.  If any such organization is not
a qualified charitable organization at the date of the Settlor's
death, the disposition to such organization shall lapse.

      1.  (a)  Subject to Paragraph "A.1(b)" of this
Article, Thirty-Five Million ($35,000,000) Dollars to THE

FREDERICK DeMATTEIS FAMILY FOUNDATION (or any successor thereto),
for its general purposes.

(b)   Notwithstanding the provisions of
Paragraph "A.1" of this Article, if there shall be in existence at
the date of the Settlor's death an exclusively charitable inter
vivos trust (expressly excluding any charitable remainder trust)
that is then a qualified charitable organization and that shall
have been created by the Settlor after July 4, 2001 (such
charitable trust, if any, as amended through the operative date of
such reference, being hereafter in this Agreement referred to as
"THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST";
provided, however, that if there shall be more than one of such
trusts in existence at the date of the Settlor's death, THE
FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST for purposes
of this Agreement shall be deemed to be such one of such trusts as
shall be governed by an instrument dated later than the other(s)
that does not contain any express direction that it shall not be
considered THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE
TRUST for purposes hereof) then the disposition of Thirty-Five
Million ($35,000,000) Dollars in Paragraph "A.1(a)" of this
Article to THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any
successor thereto) shall lapse and, in lieu thereof, the Settlor
directs that Thirty-Five Million ($35,000,000) Dollars be paid to
THE FREDERICK AND NANCY DeMATTEIS FAMILY CHARITABLE TRUST.

2. Two Million Five Hundred Thousand

($2,500,000) Dollars to ST. VINCENT'S SERVICES, INC., Brooklyn,

New York, reduced by the amount of any contribution(s) (including,

without limitation, any portion thereof actuarially attributable

to non-charitable interests) made by the Settlor after July 4,

2001, to any charitable remainder trust(s) as defined in § 664(d)

of the Internal Revenue Code of 1986, as amended from time to time

(hereinafter the "Code"), that the Settlor has created and in

which he has specifically named ST. VINCENT'S SERVICES, INC. as

either a mandatory or potential charitable beneficiary; provided,

however, that as a condition to such disposition, ST. VINCENT'S

SERVICES, INC. shall be required (a) to memorialize such

disposition in the Settlor's name in such manner and (b) to commit

to use such disposition and its proceeds in such manner

(consistent with the status of ST. VINCENT'S SERVICES, INC. as a

qualified charitable organization) as the Trustees and ST.

VINCENT'S SERVICES, INC. shall agree and if ST. VINCENT'S

SERVICES, INC. and the Trustees are unable to reach an agreement

in such regard within one year following the date of the Settlor's

death, such amount shall instead be paid over and distributed by

the Trustees to such organization as the Trustees shall select and

which shall be a qualified charitable organization at the date of

the Settlor's death and at the date of such distribution.

3. Two Million ($2,000,000) Dollars to

WHEELCHAIR CLASSICS CHARITIES INC., Jackson Heights, New York,

reduced by the amount of any contribution(s) (including, without
limitation, any portion thereof actuarially attributable to non-
charitable interests) made by the Settlor after July 4, 2001, to
any charitable remainder trust(s) as defined in § 664(d) of the
Code, that the Settlor has created and in which he has
specifically named WHEELCHAIR CLASSICS CHARITIES INC. as either a
mandatory or potential charitable beneficiary, such disposition to
be used for its general purposes; provided, however, that as a
condition to such disposition, WHEELCHAIR CLASSICS CHARITIES INC.
shall be required to commit to use such disposition and its
proceeds in such manner (consistent with the status of WHEELCHAIR
CLASSICS CHARITIES INC. as a qualified charitable organization) as
the Trustees and WHEELCHAIR CLASSICS CHARITIES INC. shall agree
and if WHEELCHAIR CLASSICS CHARITIES INC. and the Trustees are
unable to reach an agreement in either such regard within one year
following the date of the Settlor's death, such amount shall
instead be paid over and distributed by the Trustees to such
organization as the Trustees shall select and which shall be a
qualified charitable organization at the date of the Settlor's
death and at the date of such distribution.

     B.    The Settlor directs that the following amounts be
paid from the Trust to the individuals listed in this Paragraph
"B" of this Article who shall survive the Settlor:

     1.    The sum of Five Hundred Thousand ($500,000)
Dollars in equal shares to the Settlor's sister and her husband,

DOLLY MARCONI and SAL MARCONI, if they survive the Settlor, or all

to the survivor of them if only one of them shall survive the

Settlor.

2.   The sum of Five Hundred Thousand ($500,000)

Dollars in equal shares to the Settlor's brother and his wife,

ALFONSO DeMATTEIS and MARGARET DeMATTEIS, if they survive the

Settlor, or all to the survivor of them if only one of them shall

survive the Settlor.

C.   If (i) the Settlor's wife, NANCY DEMATTEIS, shall

not survive the Settlor, and (ii) any of the Settlor's lawful

issue shall survive the Settlor, all right, title and interest in

and to the real property located in Quogue, New York, including,

without limitation, the real property in Quogue located at 34 Dune

Road (but also including, without limitation, any related,

adjacent or nearby real property in Quogue), and including the

building(s) and fixtures thereon and improvements thereto and all

other rights and easements appurtenant thereto (all such property

hereafter in this Agreement being referred to collectively as the

"Quogue Residence"), held in the Trust, together with all casualty

insurance policies insuring all such property against any loss or

liability, but subject to any and all mortgages, realty taxes,

liens and other similar encumbrances existing at the Settlor's

death upon or with respect to all such property, together with the

sum of One Million ($1,000,000) Dollars, shall be retained by the

Trustees, in further trust, nevertheless, to hold, manage, invest

Doc #30316536.WPD

and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to administer such trust as follows:

1. The Trustees shall keep the Quogue Residence in good condition and repair, shall make improvements, shall pay any and all carrying expenses in connection with the same, including, but not limited to, mortgage payments, real property taxes, school taxes, water and sewer charges, homeowners insurance premiums, utilities, heating expenses, water bills, repairs, gardening expenses and all other maintenance charges, and improvement costs from the net income of this Trust, and to the extent that the income shall be insufficient, from the principal of this Trust, and shall keep the Quogue Residence insured against loss, theft or damage, all of the foregoing in this Paragraph "C.1" to be accomplished to the extent and in such manner as the Trustees determine in their sole and absolute discretion.

2. The Trustees may, in their sole and absolute discretion, permit any one or more of the Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other lawful issue from time to time living, as they shall select in their sole and absolute discretion, to use and occupy the Quogue Residence (including allowing guests of such issue to use the Quogue Residence), upon such terms and conditions

as the Trustees shall direct in their sole and absolute discretion.

3.    This Trust shall terminate on the first to occur of (i) the determination by the Trustees to terminate this Trust, which determination may be made by the Trustees, in their sole and absolute discretion for any reason (including, but not limited to, their determination that the income and principal of the Trust is no longer sufficient to pay for the expenses of the Quogue Residence) and if the Trustees so determine to terminate this Trust, the Trustees shall be authorized (but not directed) to sell all or a portion of the Quogue Residence, upon such terms as they shall determine in their sole and absolute discretion, in which case any net proceeds of any such sale shall be disposed of as principal of this Trust as hereinafter provided, (ii) the expiration of twenty-one (21) years after the death of the last surviving of the Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his other lawful issue in being at the date of the Settlor's death, or (iii) such time when the Settlor has no lawful issue then living.  Upon such termination pursuant to (i) or (ii), the principal of this Trust, together with any accrued, accumulated or undistributed income thereof, shall be paid over and distributed to such of the Settlor's lawful issue who shall then be surviving, in shares and sub-shares, _per stirpes_.  Upon such termination pursuant to (iii),

such property shall be disposed of in accordance with the provisions of Article "EIGHTH" of this Agreement.

   D.   If the Settlor's wife, NANCY DEMATTEIS, shall not survive the Settlor, the following provisions shall apply:

   1.   The Settlor gives to such of his daughters, LINDA LANGER and TRACEY SERKO, who shall survive him, such amount, if any, of the Trust's interest in Coliseum Towers Associates, a limited partnership (or any successor or successors thereto) (hereinafter "Coliseum Towers"), which when added to the partnership interest already owned by each of the Settlor's said daughters at the date of the Settlor's death, if any, shall equal two and one half (2-1/2%) percent of the total partnership interests in Coliseum Towers, it being the Settlor's intention that each of his said daughters shall own two and one half (2-1/2%) percent of all of such partnership interests.  If either of the Settlor's said daughters shall not survive the Settlor, the Settlor gives to her lawful issue who shall survive the Settlor, in shares and sub-shares, _per_ _stirpes_, such interest in Coliseum Towers as his said predeceased daughter would have received hereunder had she survived him, taking into account, however, for purposes of the calculation of such interest, the percentage of partnership interest in Coliseum Towers owned by the Settlor's said predeceased daughter at the time of her death.

   2.   If at the date of the Settlor's death the Trust shall not own any interest in Coliseum Towers, the Settlor

gives to such of his daughters, LINDA LANGER and TRACEY SERKO, who shall survive him, the sum of One Million Five Hundred Thousand ($1,500,000) Dollars each.   If either of the Settlor's said daughters shall not survive him, said sum shall be given to her lawful issue who shall survive the Settlor, in shares and sub-shares, per stirpes.

E.   The Settlor (whether or not his said wife shall survive him) gives all of the shares of stock which are owned by the Trust at the time of the Settlor's death in Leon D. DeMatteis Construction Corporation (or any successor thereto) in equal parts to his sons, RICHARD F. DeMATTEIS and SCOTT L. DeMATTEIS, if they shall survive the Settlor, or all to the survivor of them if only one of them shall survive the Settlor.

## THIRD

Upon the death of the Settlor, all the rest of the property comprising the Trust, including any property payable to the Trust on account of the Settlor's death pursuant to his Last Will and Testament or otherwise to the extent not hereinbefore disposed of (hereinafter referred to as the "Trust Balance"), shall be disposed of as follows:

A.   If the Settlor's wife, NANCY DeMATTEIS, survives the Settlor, the Trust Balance shall be divided into two (2) parts and distributed as follows:

1.   One of such parts (hereinafter referred to as the "Non-Marital Part") shall consist of the fractional part of

the Trust Balance, the numerator of which shall be a sum equal to the largest amount, if any, that can pass free of Federal Estate Tax under this Paragraph by reason of the application of the Federal Estate Tax applicable exclusion amount (formerly and sometimes referred to as the "unified credit"), available to the Settlor's estate as provided under the Code in effect at the time of the Settlor's death, but no other Federal Estate Tax credits. The numerator shall be reduced by the value of dispositions under the Settlor's Will and property passing outside of the Settlor's Will and outside of this Agreement included in the Settlor's estate for Federal Estate Tax purposes, but which do not qualify for the Federal Estate Tax marital deduction or charitable deduction. The numerator shall further be reduced by the amount of any adjusted taxable gifts as defined by the Code added to the Settlor's taxable estate for the purpose of computing the Federal Estate Tax in the Settlor's estate. The numerator shall further be reduced by charges to principal if such items are not deducted or not allowed as deductions in computing said Federal Estate Tax, but only to the extent such charges reduce the amount of property disposed of by the Settlor's Last Will and Testament and/or this Agreement that may qualify for the Federal Estate Tax marital deduction or charitable deduction. The denominator of the fraction shall be the value of the Trust Balance. The Settlor recognizes that the numerator of such fraction may be zero, in which case no property shall pass under this Paragraph, and that

13

said numerator may be affected by the actions of the Settlor's

fiduciaries in exercising certain tax elections.  It is hereby

directed that for the purpose of establishing such fraction, the

values used shall be those finally determined for Federal Estate

Tax purposes.

2.   The other such part (hereinafter referred to

as the "Spouse's Part") shall consist of the remainder of the

Trust Balance, if any, or the entire Trust if the Non-Marital Part

shall be equal to zero.

3.   The property allocated to the Spouse's Part

pursuant to this Article shall consist exclusively of assets which

qualify for the Federal Estate Tax marital deduction.

B.   If the Settlor's wife, NANCY DeMATTEIS, shall not

survive the Settlor, the Settlor directs that the Trust Balance

shall be divided into so many equal shares that there shall be one

(1) equal share for each of his children, LINDA LANGER, RICHARD F.

DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, who shall survive

him and one (1) equal share (to be divided into sub-shares, per

stirpes) for the lawful issue (collectively) of each of his said

children who shall have not so survived, but who shall have died

leaving lawful issue so surviving and the Settlor directs that

such shares and sub-shares be given to such persons.

## FOURTH

The Trustees shall retain the Spouse's Part, as computed pursuant to Article "THIRD" hereof, if any, in a further separate trust, to hold, manage, invest and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to pay or apply the entire net income thereof to or for the use and benefit of the Settlor's wife, NANCY DeMATTEIS, during her lifetime, in quarterly installments or such more frequent installments as the Trustees, in their sole and absolute discretion, may determine.

A.   The Trustees may, at any time and/or from time to time during the lifetime of the Settlor's wife, NANCY DeMATTEIS, pay over to the Settlor's wife, or apply for her use and benefit, so much of the principal of the Trust of the Spouse's Part as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds and resources (income or principal) which may be available to or for the Settlor's wife's use and benefit, may deem advisable.

B.   Upon the subsequent death of the Settlor's wife, NANCY DeMATTEIS, the Trustees shall pay over and distribute any accrued or undistributed income of the Trust of the Spouse's Part to the Executors of the Settlor's wife's estate, and the balance, if any, of the then principal of the Trust of the Spouse's Part

15

Doc #30316536.WPD

shall be disposed of in accordance with the provisions of Article "SIXTH" of this Agreement.

## FIFTH

The Trustees shall retain the Non-Marital Part, as computed pursuant to Article "THIRD" hereof, if any, in a further separate trust, to hold, manage, invest and reinvest the principal thereof, to collect the rents, income, interest and dividends therefrom and after deducting any and all lawful and proper charges, commissions and expenses, to pay or apply the entire net income thereof to or for the use and benefit of the Settlor's wife, NANCY DeMATTEIS, during her lifetime, in quarterly ~~installments or such more frequent installments as the Trustees,~~ in their sole and absolute discretion, may determine.

A.   The Trustees may, at any time and/or from time to time during the lifetime of the Settlor's wife, NANCY DeMATTEIS, pay over to the Settlor's wife, or apply for her use and benefit, so much of the principal of the Trust of the Non-Marital Part as the Trustees (other than the Settlor's wife), in such Trustees' sole and absolute discretion, without regard to any and all other property, funds and resources (income or principal) which may be available to or for the Settlor's wife's use and benefit, may deem advisable.

B.   Upon the death of the Settlor's wife, NANCY DeMATTEIS, the Trustees shall pay over and distribute any accrued

Doc #30316536.WPD

or undistributed income of the Trust of the Non-Marital Part to
the Executors of the Settlor's wife's estate, and the balance, if
any, of the then principal of the Trust of the Non-Marital Part
shall be disposed of in accordance with the provisions of Article
"SIXTH" of this Agreement.

SIXTH

A.    Upon the subsequent death of the Settlor's wife,
NANCY DeMATTEIS, the balance of the principal of the Trust of the
Spouse's Part, if any, and the balance of the principal of the
Trust the Non-Marital Part, if any, (hereinafter sometimes
referred to collectively as "Nancy's Trusts"), shall be disposed
of as follows:

1.    The Trustees shall pay and distribute to
such of the Settlor's daughters, LINDA LANGER and TRACEY SERKO,
who shall then be surviving, such amount, if any, of the interest
of Nancy's Trusts in Coliseum Towers, which when added to the
partnership interest already owned by each of the Settlor's said
daughters at the date of the Settlor's wife's death, if any, shall
equal two and one-half (2-1/2%) percent of the total partnership
interests in Coliseum Towers, it being the Settlor's intention
that each of his said daughters shall own two and one half
(2-1/2%) percent of all of such partnership interests.  If either
of the Settlor's said daughters shall not then be surviving, the
Trustees shall distribute to her lawful issue who shall then be
surviving, in shares and sub-shares, per stirpes, such interest in

17

Coliseum Towers as his said predeceased daughter would have
received hereunder had she then been surviving, taking into
account, however, for purposes of the calculation of such
interest, the percentage of partnership interest in Coliseum
Towers owned by his said predeceased daughter at the time of her
death.

2.   If at the time of the Settlor's wife's
death, Nancy's Trusts shall not own any interest in Coliseum
Towers, the Trustees shall pay over and distribute to such of the
Settlor's daughters, LINDA LANGER and TRACEY SERKO, who shall then
be surviving, the sum of One Million Five Hundred Thousand
($1,500,000) Dollars each. If either of the Settlor's said
daughters is not then surviving, the Trustees shall pay and
distribute said sum to her lawful issue who shall then be
surviving, in shares and sub-shares, per stirpes.

3.   If either or both of Nancy's Trusts shall
own any interest in the Quogue Residence (as defined in Paragraph
"C" of Article "SECOND" hereof), and any of the Settlor's lawful
issue shall then be surviving, the Trustees shall retain in a
separate further trust, nevertheless, (1) the sum of One Million
($1,000,000) Dollars (to be paid from the principal of such one or
both of Nancy's Trusts, and if from both, then in such
proportions, as the Trustees, in their sole and absolute
discretion, shall determine) and (2) any interest of either or
both of Nancy's Trusts in and to the Quogue Residence, together

with all of the interest of either or both of Nancy's Trusts in
all casualty insurance policies insuring all such property against
any loss or liability, but subject to any and all mortgages,
realty taxes, liens and other similar encumbrances existing at the
date of the Settlor's wife's death upon or with respect to such
property, and the Trustees shall hold, manage, invest and reinvest
the principal of such separate trust, and collect the rents,
income, interest and dividends therefrom and after deducting any
and all lawful and proper charges, commissions and expenses,
administer such trust as follows:

(a)   The Trustees shall keep the Quogue
Residence in good condition and repair, shall make improvements,
shall pay any and all carrying expenses in connection with the
same, including, but not limited to, mortgage payments, real
property taxes, school taxes, water and sewer charges, homeowners
insurance premiums, utilities, heating expenses, water bills,
repairs, gardening expenses and all other maintenance charges, and
improvement costs from the net income of this Trust, and to the
extent that the income shall be insufficient, from the principal
of this Trust, and shall keep the Quogue Residence insured against
loss, theft or damage, all of the foregoing in this Paragraph
"A.3(a)" to be accomplished to the extent and in such manner as
the Trustees determine in their sole and absolute discretion.

(b)   The Trustees may, in their sole and
absolute discretion, permit any one or more of the Settlor's

children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS

and TRACEY SERKO, and his other lawful issue from time to time

living, as they shall select in their sole and absolute

discretion, to use and occupy the Quogue Residence (including

allowing guests of such issue to use the Quogue Residence), upon

such terms and conditions as the Trustees shall direct in their

sole and absolute discretion.

(c)   This Trust shall terminate on the first

to occur of (i) the determination by the Trustees to terminate

this Trust, which determination may be made by the Trustees, in

their sole and absolute discretion for any reason (including, but

not limited to, their determination that the income and principal

of the Trust is no longer sufficient to pay for the expenses of

the Quogue Residence) and if the Trustees so determine to

terminate this Trust, the Trustees shall be authorized (but not

directed) to sell all or a portion of the Quogue Residence, upon

such terms as they shall determine in their sole and absolute

discretion, in which case any net proceeds of any such sale shall

be disposed of as principal of this Trust as hereinafter provided,

(ii) the expiration of twenty-one (21) years after the death of

the last surviving of the Settlor's children, LINDA LANGER,

RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY SERKO, and his

other lawful issue in being at the date of the Settlor's death, or

(iii) such time when the Settlor has no lawful issue then living.

Upon such termination pursuant to (i) or (ii), the principal of

this Trust, together with any accrued, accumulated or
undistributed income thereof, shall be paid over and distributed
to such of the Settlor's lawful issue who shall then be surviving,
in shares and sub-shares, _per_ _stirpes_.  Upon such termination
pursuant to (iii), such property shall be disposed of in
accordance with the provisions of Article "EIGHTH" of this
Agreement.

    4.   The then remaining balance, if any, of
Nancy's Trusts (subject to Paragraph "L" of Article "SIXTEENTH"
hereof) shall be divided into so many equal shares that there
shall be one (1) equal share for each of the Settlor's children,
LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L. DeMATTEIS and TRACEY
SERKO, who shall then be surviving, and one (1) equal share (to be
divided into sub-shares, _per_ _stirpes_) for the lawful issue
(collectively) of each of the Settlor's said children who shall
have not so survived, but who shall have died leaving lawful issue
so surviving, and the Trustees shall pay over and distribute such
shares and sub-shares to such persons.

    B.   Subject to the provisions of Article "SEVENTH" of
this Agreement but notwithstanding any other provision hereof to
the contrary, if any beneficiary under Paragraph "C.3" (subclause
(i) thereof) of Article "SECOND", Paragraph "D" of Article
"SECOND", Paragraph "B" of Article "THIRD", Paragraph "A.1",
"A.2", "A.3(c)(subclause (i) thereof)", "A.4" or Paragraph "B.4"
of this Article "SIXTH", other than a child of the Settlor, shall

be under the age of thirty-five (35) years at the time when any interest herein should otherwise be distributable to such beneficiary (hereinafter sometimes referred to as the "beneficiary"), the Trustees shall retain the share or sub-share otherwise so distributable to such beneficiary in a further separate trust for the benefit of such beneficiary and shall dispose of the net income and principal thereof as follows:

1.    The Trustees may, at any time and/or from time to time, pay over or apply so much of the net income thereof as the Trustees, in their sole and absolute discretion, without regard to any and all other property, funds and resources (income or principal) which may be available to or for the use and benefit of such beneficiary, may deem necessary or proper for the health, maintenance, support and education of such beneficiary, and to enable or assist such beneficiary in the purchase of a residence or to participate or engage in any professional or business venture or relationship, and the Trustees shall accumulate any balance of said net income and add such accumulations of income to the principal of the trust at the end of each trust year.

2.    The Trustees, in addition to income, may, at any time and/or from time to time, pay over or apply so much of the principal thereof as the Trustees, in their sole and absolute discretion, after due regard to any and all other property, funds or resources (both income and principal) which may be available to or for the use and benefit of such beneficiary, may deem necessary

22

or proper for the health, maintenance, support and education of such beneficiary, and to enable or assist such beneficiary in the purchase of a residence or to participate or engage in any professional or business venture or relationship.

3.   The Trustees shall pay over and distribute to such beneficiary when he or she shall have attained the age of thirty (30) years, an amount equal to one-half (1/2) of the value of the principal of the trust held for his or her benefit as then constituted; and to shall over and distribute to such beneficiary when he or she shall have attained the age of thirty-five (35) years, the then remaining principal of such trust as then constituted, together with any accrued, accumulated or undistributed income thereof; provided, however, that if any such beneficiary shall have attained the age of thirty (30) years prior to his or her trust being set apart, then as soon as practicable upon said trust being set apart, the Trustees shall pay over and distribute to such beneficiary one-half (1/2) of such trust as then constituted.

4.   Upon the death of any beneficiary prior to the termination of the trust set apart for his or her benefit, the Trustees shall pay over and distribute any principal of the trust then held for him or her, together with any accrued, accumulated or undistributed income thereof, to his or her lawful issue then surviving, in shares and sub-shares, _per stirpes_, or in default of such issue, the Trustees shall pay over and distribute the same to

23

the lawful issue then surviving of the direct lineal ancestor of

the beneficiary in the nearest degree of consanguinity who was a

lawful issue of the Settlor and who has lawful issue then

surviving, in shares and sub-shares, _per stirpes_, or in default of

such issue, the Trustees shall pay over and distribute the same to

the Settlor's lawful issue then surviving, in shares and

sub-shares, _per stirpes_; provided, however, that if a portion of

any principal and income shall be payable under this Paragraph

"B.4" to one or more of the Settlor's lawful issue for whom any

property is then held in trust under the provisions of this

Article "SIXTH" of this Agreement, such portion shall, instead of

being paid outright to such issue, be added to the principal of

such trust hereunder for the benefit of such issue and be held and

disposed of as part thereof.

### SEVENTH

Any provisions hereof to the contrary notwithstanding,

the trusts established under Article "SIXTH" hereof shall

terminate not later than twenty-one (21) years after the death of

the last surviving of the Settlor's wife, NANCY DeMATTEIS, the

Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L.

DeMATTEIS and TRACEY SERKO, and the Settlor's other lawful issue

in being on the date of the Settlor's death, and upon such

termination, the income and principal thereof shall be paid over

and distributed to the then income beneficiary of each such trust.

## EIGHTH

If none of the Settlor's wife, NANCY DeMATTEIS, the

Settlor's children, LINDA LANGER, RICHARD F. DeMATTEIS, SCOTT L.

DeMATTEIS and TRACEY SERKO, and the Settlor's other lawful issue

shall survive the Settlor, or if, at the termination of any trust

provided to be established pursuant to this Agreement, none of the

Settlor's said children or other lawful issue shall then be

surviving, the Trust Balance, or the then remaining principal of

such trust as then constituted, together with any accrued,

accumulated or undistributed income thereof not otherwise disposed

of, as the case may be, shall be divided into two (2) equal shares

to be disposed of as follows:

A.    One (1) such share shall be paid over and

distributed to such persons and in such proportions as the same

would be distributable under the laws of the State of New York

then in effect as if the Settlor had died the owner of said

property, intestate and a resident of said State.

B.    One (1) such share shall be paid over and

distributed to THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any

successor thereto), if it shall then be in existence and shall

then be a qualified charitable organization; provided, however,

that if THE FREDERICK AND NANCY DEMATTEIS FAMILY CHARITABLE TRUST

(as defined in Paragraph "A.1(b)" of Article "SECOND" hereof)

shall then be in existence and shall then be a qualified

charitable organization, such share shall not be paid over and

distributed to THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any successor to it) but shall instead be paid over and distributed to THE FREDERICK AND NANCY DEMATTEIS FAMILY CHARITABLE TRUST; provided, further, that, if none of THE FREDERICK DeMATTEIS FAMILY FOUNDATION (or any successor thereto) and THE FREDERICK AND NANCY DEMATTEIS FAMILY CHARITABLE TRUST shall then be in existence or if none of such entities shall be a qualified charitable organization at the time property is distributable to it, such property shall be distributed to such one or more qualified charitable organizations, and in such proportions, as the Trustees shall select in their absolute discretion.

## NINTH

A.    In the event that any beneficiary hereunder and the Settlor shall die simultaneously or under such circumstances that it is difficult or impracticable to determine who survived the other, then it is hereby directed, for the purposes of this Agreement, that such beneficiary shall be deemed to have predeceased the Settlor, except that if both the Settlor's wife, NANCY DeMATTEIS, and the Settlor shall die under those circumstances, then it is hereby directed that the Settlor's wife, NANCY DeMATTEIS, shall conclusively be presumed to have survived the Settlor with respect to one-half (1/2) of the Spouse's Part of the Trust Balance and not with respect to the remaining one-half (1/2) of the Spouse's Part of the Trust Balance, and that the provisions of this Agreement shall be construed accordingly.

26

B. In the event that the special rule for persons with a deceased parent set forth in Code § 2651(e) and in Treasury Regulations § 26.2612-1(a)(2) would have been applicable if a descendant of the Settlor or of another beneficiary had predeceased the Settlor or had predeceased the other beneficiary, as the case may be, such descendant shall be deemed to have predeceased the Settlor or the other beneficiary if he or she dies within ninety (90) days after the Settlor's death or within ninety (90) days after the death of the other beneficiary, as the case may be.

## TENTH

Anything herein contained to the contrary notwithstanding, whenever pursuant to this Agreement any part of the Trust Estate or of any separate trust created hereunder shall vest in absolute ownership in a person under the age of twenty-one (21) years (hereinafter called the "Minor"), the following provisions shall apply:

A. The Trustees are authorized and empowered, in their sole and absolute discretion, to hold the property so vested in the Minor in a separate fund for the benefit of the Minor and to invest and reinvest the same, collect the income therefrom, and during the period until the Minor attains the age of twenty-one (21) years to apply so much of the net income and principal to the health, education, maintenance or support of the Minor as the Trustees shall deem necessary, and to accumulate the balance of

said income, if any, until the Minor shall attain the age of twenty-one (21) years, at which time all accumulated income and unexpended principal shall be paid over to him or her.

B.   The Trustees, in their sole and absolute discretion, may designate any of themselves or any adult person as Custodian for the Minor under the provisions of the Uniform Transfers (or Gifts) to Minors Act then in effect in an appropriate state (hereinafter called the "Act"), and may distribute so much of such property which consists of "custodial property" as that term is described in said Act, to such Custodian.   The Custodianship shall continue until the Minor attains the age of twenty-one (21) years, unless sooner terminated under the Act.

## ELEVENTH

A.   The Trustees shall pay over to the executors or other legal representative(s) of the Settlor's estate out of the Trust such amounts as the said legal representative(s) shall from time to time after the Settlor's death, certify to the Trustees as the amount required to pay:  (1) the funeral and administration expenses of the Settlor's estate; and (2) any insufficiency resulting because the value of the cash and marketable securities comprising the Settlor's probate estate is less than the total of: (a) all cash bequests and other general bequests made in the Settlor's Last Will and Testament and (b) all other debts, liens and other claims enforceable against the Settlor's estate, which

28

his legal representative(s) are required to discharge and any interest thereon, provided that there shall be no specific contrary direction in the Will of the Settlor referring specifically to this Agreement. The Trustees may, but shall not be required to, rely upon the written certification of amounts required by the Settlor's said legal representative(s); provided, however, that any payments made pursuant to this Paragraph shall not be made from any funds or property, or the proceeds thereof, that are not otherwise includible in the Settlor's estate for purposes of Federal or state transfer, estate, inheritance, legacy, succession or like taxes, including any interest and penalties thereon, by reason of the Settlor's death. The Trustees shall further deliver to the legal representative(s) of the Settlor's estate any property passing under this Agreement, which would otherwise be effectively specifically bequeathed or devised by the Settlor's Last Will and Testament.

B.   If the Settlor's wife, NANCY DeMATTEIS, shall survive the Settlor, the Trustees shall pay all transfer, estate, inheritance, legacy, succession and like taxes, including any interest and penalties thereon, levied upon or assessed against the Settlor's estate with respect to property passing under this Agreement, under the Settlor's Will or outside of the Settlor's Will and which is required to be included in the Settlor's taxable estate (hereinafter referred to as the "estate taxes") out of the Non-Marital Part of the Trust Balance, as an expense of

Doc #30316536.WPD

administration without apportionment. If the Non-Marital Part shall be insufficient to pay the estate taxes, the balance of the estate taxes, or all of the estate taxes, as the case may be, shall be paid out of the Spouse's Part of the Trust Balance.

C. If the Settlor's wife, NANCY DeMATTEIS, shall not survive the Settlor, the Trustees shall pay the estate taxes out of the Trust Balance passing under Paragraph "B" of Article "THIRD" or Article "EIGHTH" hereof, as the case may be, as an expense of administration without apportionment.

D. No devisee, legatee or other recipient of property constituting part of the Settlor's taxable estate shall be required to pay or contribute to the payment of such taxes.

E. Notwithstanding the above, if any Generation-Skipping Transfer Tax ("GST") shall be payable at, after or with respect to the Settlor's death, under Chapter 13 of the Code or any similar state estate or inheritance tax provision, or any additional estate tax shall be imposed by § 2032A(c) of the Code or any similar state estate or inheritance tax provision, any such taxes, including any interest and penalties thereon, shall be apportioned against and paid by or on account of the person(s) in possession of the property giving rise to such tax(es) or benefitted thereby, or the trustee(s) or distributee(s) of the property with respect to which the tax(es) shall be imposed, as the case may be. It is hereby directed that the amount of such tax(es) under this Paragraph "E", together with any interest and penalties thereon, which shall be apportioned and/or recovered

with respect to this Paragraph "E" shall be the difference between
the amount of tax(es), including interest and penalties thereon,
actually payable and the amount thereof which would have been
payable had such property not been included in the computation of
such tax(es).

F.   If any tax is imposed on property includible in
the Settlor's estate by reason of § 2044 of the Code or any
similar state estate or inheritance tax provision, the Settlor
directs the Trustees to recover such tax, including any interest
and penalties thereon, as provided under § 2207A of the Code, or
as provided under any similar state estate or inheritance tax
provision as to such state tax.

## TWELFTH

A.   If any of DONALD M. SCHAEFFER, STANLEY SIROTE or
RONALD L. GALLATIN shall die or shall become unwilling or unable
to continue to act as Trustee, the Settlor hereby nominates,
constitutes and appoints DOUGLAS COOPER to be Trustee in his place
and stead.

B.   1.   Notwithstanding anything to the contrary
elsewhere contained in this Agreement, the Settlor directs that
after his death and during his life while he is not acting as a
Trustee, there shall always be three (3) Trustees acting in
respect of any trust hereunder, other than or in addition to any
person who is the income beneficiary of such trust or any person
legally obligated to support any such income beneficiary

31

(hereinafter referred to collectively as the "Independent Trustees" and individually as an "Independent Trustee"), and the Settlor directs that in order to ensure that there are always three (3) acting Independent Trustees of each trust created hereunder, the three (3) Independent Trustees, acting jointly and by majority vote, shall appoint any person (other than any person who is the income beneficiary of such trust or any person legally obligated to support any such income beneficiary), or a bank or trust company to act (subject, however, to the above appointment of DOUGLAS COOPER as the first successor Independent Trustee) as successor Independent Trustee upon the death or resignation of the first of the appointing Independent Trustees to die or resign, by a written instrument duly acknowledged by the appointing Independent Trustees and delivered to such person, persons or bank or trust company.

2.    If at any time after the Settlor's death or during his life while the Settlor is not acting as a Trustee despite the direction set forth in Paragraph "B.1" of this Article, there are fewer than three (3) Independent Trustees of any trust created hereunder acting or willing and available to qualify, the Settlor directs that all the then acting Trustees (including, without limitation, the Settlor's wife, NANCY DeMATTEIS, if she is then a Trustee), acting jointly and by majority vote, shall appoint a sufficient number of person(s) (other than any person who is the income beneficiary of such trust or any person legally obligated to support any such income

beneficiary) and/or a bank or trust company to fill such
vacancy(ies) in the office(s) of Independent Trustee(s), and to
act as successor Independent Trustee(s), by a written instrument
duly acknowledged by the acting Trustees, and delivered to such
person(s) or bank or trust company.

C.   The appointment of any Trustee hereunder shall be
effective upon the date when the person, bank or trust company
appointed as Trustee hereunder shall qualify as such by executing
and acknowledging his, her or its, as the case may be, consent to
act as such Trustee and to be bound by the terms and provisions
hereof.   The consent shall be delivered to the Settlor, if he
shall then be living, and if he is not then living, to the then
adult beneficiary or beneficiaries hereunder, if any, and to the
then surviving Trustee(s), if any.

D.   1.   No person or bank or trust company named
herein or otherwise appointed pursuant hereto, either as an
original Trustee or as successor Trustee, shall be required to
furnish any bond for the performance of his, her or its duties as
Trustee, but if any bond is required by any law or statute, no
sureties shall be required thereon.   The successor Trustee(s)
shall have all the powers and authority of the original Trustees
named herein.

2.   Notwithstanding any otherwise applicable
contrary rule of law:  No Trustee shall be liable or responsible
for any claim, loss or damages of any kind relating to any trust
hereunder unless the same shall have been the result of such

33

Trustee's gross negligence or fraud.  Without limitation to the foregoing sentence, each Trustee at any time acting hereunder shall be deemed to have acted within the scope of such Trustee's authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested unless the contrary be proved by affirmative evidence of such Trustee's gross negligence or fraud in that regard, and in the absence of such proof shall not be liable for loss arising from depreciation or shrinkage in value of any property authorized to be held or acquired.  The provisions of this Paragraph "D.2" shall also apply, without limitation, to any donee of a power during minority.  No Trustee shall be liable for the acts or defaults of a Co-Trustee.  Each Trustee shall be entitled to reimbursement from the Trust Estate for any reasonable expenses incurred by such Trustee, including, without limitation, reasonable legal and/or accounting fees, in connection with any claim asserted against such Trustee, individually and/or as Trustee, relating to any trust hereunder unless and except to the extent that a court of competent jurisdiction shall finally determine that such claim arose from such Trustee's gross negligence and/or fraud.

E.    No Trustee hereunder (other than the Settlor), shall participate in the exercise of any discretion to determine the propriety or amount of payments of income or principal to himself, herself or any person he or she is legally obligated to

support and the remaining Trustee(s) alone shall exercise that discretion.

F.    The Settlor directs that whenever a majority of the Trustees cannot agree upon a course of action after his death or during his life while the Settlor is not acting as a Trustee, the decision of a majority of the Independent Trustees shall control.

G.    Following the Settlor's death, the Trustees shall be expressly authorized, acting jointly with the Executors under the Settlor's Will, to make the election described in Section 645(a) of the Code.

H.    The Settlor directs that his wife, NANCY DeMATTEIS, shall not be entitled to receive any Trustee's commissions or other compensation for acting as a Trustee.

## THIRTEENTH

A.    Any Trustee shall have the right to resign at any time with or without cause on appropriate notice. Neither the death nor resignation of any Trustee nor the appointment of any successor Trustee shall require an accounting at the time, but such accounting may be included with and as part of the next account rendered by the Trustee(s).

B.    Resignation of a Trustee shall be effected by delivering a written notice of resignation signed and acknowledged by the resigning Trustee to the remaining Trustee(s) and to the Settlor, if he is then living, and if he is not then living, to

35

the then adult beneficiary or beneficiaries hereunder, and to the
next appointed successor Trustee, if any.  Such resignation shall
thereafter be annexed hereto and shall be effective on the date
stated in such notice, which shall not be less than fifteen (15)
days after delivery of the notice.

## FOURTEENTH

The words "Trustee" and "Trustees" or either of them,
wherever used in this Agreement, shall be deemed to mean the
original Trustees appointed hereunder and/or as herein provided,
the successor Trustee(s) and/or co-Trustee(s).

## FIFTEENTH

For the purposes of this Agreement, the Settlor shall
be "incompetent" during any period of time in which the Trustee(s)
other than the Settlor then acting hereunder shall be in
possession of any of the following:  (1) a currently applicable
order from a court of competent jurisdiction holding the Settlor
to be legally incompetent to act in his own behalf or appointing a
guardian, committee or conservator, as the case may be, of his
person and/or property to act for him; (2) duly executed,
witnessed and acknowledged written certificates both of which are
unrevoked, of two licensed physicians (each of whom represents
that he or she is certified by a recognized medical board), each
certifying that such physician has examined the Settlor and has
concluded that, by reason of accident, physical or mental illness,

progressive or intermittent physical or mental deterioration, or other similar cause, the Settlor had, at the date of the written certificate, become incompetent and/or unable to act rationally and prudently in his own best interests; or (3) evidence, which such Trustee(s) shall deem to be credible and still currently applicable, that the Settlor has disappeared, is unaccountably absent, or is being detained under duress where he is unable, effectively and prudently, to look after his own financial best interests.

## SIXTEENTH

With respect to the management and administration of the Trust and any separate trust created hereunder, the Trustees and the Donee(s) of a power during minority shall have all of the powers conferred by the laws of the State of New York, and in addition thereto, the following discretionary powers without limitation by reason of specification:

A.   To hold and, either permanently or temporarily, retain any of the original property transferred into the Trust or any separate trust created hereunder, for any length of time without regard to the proportion such property may bear to the entire amount of the Trust or any separate trust created hereunder, or to the fact that the property may not be of a character permissible for investment by fiduciaries under the present or future laws applicable thereto.

B.   To sell at public or private sale for cash or upon credit (including the extension of credit for periods in excess of one year) with or without security, upon such terms as they may consider advisable, or otherwise dispose of any property, real or personal, or in which from time to time there may be an investment or reinvestment, including the giving

37

or granting of options for periods in excess of six
(6) months in connection therewith.

C.    To hold securities in their names as
Trustees or in the name of a nominee or in such form
as to pass by delivery.

D.    To retain, to exchange for any other
property, to divide, subdivide, partition, mortgage,
improve, alter, remodel, repair and develop in any
manner any real property and to lease any such
property for such term or terms, and upon such
conditions and rentals, and in such manner, as in
their sole and absolute discretion, they shall deem
advisable, irrespective of whether the term of any
such lease shall exceed the period permitted by law or
the term of the Trust or any separate trust hereunder.

E.    To abandon any real or personal property
which the Trustees may determine to be worthless, any
such determination by the Trustees to be binding and
conclusive on all parties interested hereunder.

F.    To invest and from time to time reinvest the
Trust or any separate trust created hereunder, in such
common or preferred stocks, investment trust stocks,
and in such bonds, securities, mortgages and other
property, real or personal and foreign or domestic, as
in their sole and absolute discretion, they may deem
advisable, whether or not productive of income or a
wasting asset and whether or not the said investments
are authorized as an investment for trust funds by the
laws of the State of New York, or of any other
jurisdiction, in force at the time of the investment.

G.    To borrow money in the name of the Trust or
any separate trust created hereunder for such periods
and upon such terms as shall be necessary or
convenient and as security to mortgage or pledge any
real or personal property forming a part of the Trust
or any separate trust created hereunder.

H.    To lend any part of the property of the
Trust or any separate trust created hereunder to any
person including any beneficiary of the Trust or any
such separate trust, the estate of any deceased
beneficiary, or any estate or other trust in which any
beneficiary has an interest, upon any reasonable terms
and conditions, for any period, with or without
security, for any purpose which will benefit the Trust

38

or such separate trust or any beneficiary of the Trust
or such separate trust.

I.   To vote in person or by general or limited
proxy upon all stock held by them; to approve or
oppose, directly or through a committee or other
agent, the reorganization, consolidation, merger,
dissolution or liquidation of any corporation, or the
sale, lease, pledge or mortgage of any property by or
to any corporation, any of the stocks, bonds, notes or
other securities which are held in the Trust or any
separate trust created hereunder, and to do any acts
with reference to such stocks, bonds, notes and other
securities which they may deem necessary or proper to
enable them to obtain the benefit of any such
transaction; to exercise any conversion privilege,
subscription right or any option available in
connection with any of the stocks, bonds, notes or
other securities in the Trust or any separate trust
created hereunder, and to make any such payments in
connection therewith as they shall deem necessary or
advisable.

J.   Any provisions hereof to the contrary
notwithstanding, as to any trust created hereunder for
the benefit of the Settlor's wife which would
otherwise qualify for the Federal Estate Tax marital
deduction, if the Trustees shall acquire or retain any
non-income producing property, underproductive
property and/or wasting assets, the Settlor's wife may
require the Trustees to either make the property
productive or convert it to productive property within
a reasonable time.

K.   Anything herein contained to the contrary
notwithstanding, the Trustees shall exercise the
powers and discretions conferred upon them only in
such manner as shall be consistent with the allowance
of an estate tax marital deduction as to the Spouse's
Part under Article "FOURTH".

L.   The Trustees of any trust under this
Agreement qualifying under § 2056(b)(7) of the Code,
or any successor provision of the Code, for which an
election is made under that Section, shall be
specifically authorized to pay to the Executors of the
estate of the Settlor's wife such amounts as may be
necessary to pay the share of any and all Federal or
state transfer, estate, inheritance, legacy,
succession and like taxes, including any interest and
penalties thereon, attributable to said trust and due

Doc #303!6536.WPD

as the result of the death of the Settlor's wife,
which the Settlor's wife's Will, or the applicable
Federal or state apportionment statutes, may authorize
said Executors to collect, and the Trustees may rely
on the request of said Executors and shall make such
payments to such Executors of the Settlor's wife's
estate without further inquiry or requiring any
reimbursement; provided, however, that to the extent
possible none of such taxes, interest or penalties
shall be paid from an apportioned against any property
passing under any of Paragraphs "A.1", "A.2" or "A.3"
of Article "SIXTH" hereof and the same shall instead
be paid only from the balance of any relevant trust
passing under Paragraph "A.4" of Article "SIXTH"
hereof.

M.   To make, without the consent of any
beneficiary hereunder, any payment, distribution or
division required by this Agreement, either in cash or
in kind, or partly in cash and partly in kind, in
proportions like to or different from that paid or
transferred to anyone else.   Such distribution may be
effected without regard to the income tax basis of the
property distributed to any beneficiary of this
Agreement, and without liability for any increase in
the income taxes of any such beneficiary.

N.   To continue any individual business and/or
interest in any partnership, limited liability company
and/or corporation which is part of the Trust or any
separate trust created hereunder, at the risk of the
Trust or such separate trust, to sell, settle and/or
discontinue any such business or such interest
therein, whether corporate or otherwise, or any of
them, in whole or in part, at any time, when and upon
such terms and conditions as, in their judgment, is
for the best interest of the Trust or any such
separate trust created hereunder, or to exchange any
such interest therein or assets thereof in whole or in
part for bonds or shares of stock in any corporation
which may take over or continue such business and/or
partnership and/or limited liability company.   The
Trustees are specifically and fully authorized and
directed to, in all and every necessary and useful
manner and respect, cooperate with the survivor or
survivors of any partnership, limited liability
company and/or corporation, of which the Trust or any
separate trust created hereunder, may be a member or
shareholder, as the case may be, in continuing and
carrying on the business and the Trustees are
specifically authorized and empowered to sell to the

40

Doc #30316536 WPD

surviving partner or partners, the surviving member or members and/or the surviving stockholder or stockholders of any partnership, limited liability company and/or corporation in which the Trust or any separate trust created hereunder, may be interested, regardless of who such person or persons may be, at any time, when and upon such terms and conditions as they, in their judgment, deem to be in the best interest of the Trust or any separate trust created hereunder, all or any part of any interest in such partnership, limited liability company and/or corporation and in the assets, business, property and profits therein.   The Trustees are authorized and empowered to become, or continue to be, an officer, director or employee of such partnership, limited liability company or corporation and to be paid reasonable compensation from such partnership, limited liability company or corporation for serving as such officer, director and/or employee, in addition to any compensation otherwise allowed by law.

O.   To act as or to select other persons (including any beneficiary hereunder) to act as directors, officers or employees of any such business, the same to be compensated without regard to their being a fiduciary or beneficiary hereunder.

P.   1.   To remove all or any part of the property of the Trust or any separate trust created hereunder, from the jurisdiction which is the situs of the Trust or any such separate trust hereunder, and to take and keep such property outside such jurisdiction and in any other place or places during the term of the Trust or any separate trust hereunder or for any lesser period.

2.   In the event that all of the Trustees of the Trust or any separate trust created hereunder cease to be or never were Trustees residing in New York [with respect to individual Trustee(s)], or having an office in New York [with respect to corporate Trustee(s)] and the income beneficiary of the Trust or any such separate trust ceases to be or never was a New York resident, the Trustees are authorized, with the written and acknowledged consent of the adult income beneficiary, if any, to transfer the situs of the Trust or any such separate trust outside of the original or then current jurisdiction thereof, without bond and without court approval, unless such court approval is required by law, in which case, it is requested that the court of original

41

or then current jurisdiction shall consent to the change of situs; and thereafter the administration of the Trust or any such separate trust shall be governed by the laws of the new situs. During the term of the Trust or of any such separate trust created hereunder, this authorization shall continue in effect with respect to each new situs as if each such situs was the original New York situs.

Q. To employ investment counsel, accountants, depositaries, custodians, brokers, attorneys, law clerks, paralegals and other agents, irrespective of whether any person so employed shall be a Trustee hereunder who is individually so employed or who shall be a partner, a shareholder, a member or an employee, or shall have an interest, in any firm so employed or shall have any interest in the Trust or any separate trust created hereunder or otherwise, or any asset hereof, and to compensate him, her or them out of the principal of the property held under the Trust or any separate trust created hereunder without charging the same against the commissions or compensation of such Trustee.

R. Subject to the provisions of Paragraphs "J," "K" and "L" of this Article, to exercise the following powers with respect to any property, partnership interest(s), limited liability company interest(s) and/or stock which the Settlor may own at the time of his death, which powers shall be in addition to all the other powers herein conferred upon the Trustees or conferred upon the Trustees by law with respect to such property, partnership interest(s), limited liability company interest(s) and/or stock:

1. To take advantage of § 303 and/or § 6166 of the Code, and any other provisions therein which provide relief for the estates of owners of property, partnership interest(s), limited liability company interest(s) and/or stock in closely-held corporations, and to post any bond or other security and pay any interest required by § 6166 at the expense of the Trust or any separate trust created hereunder and to elect under § 6324A of the Code to create a special lien for the deferred estate tax (including tax attributable to property not passing under this Agreement) and to subject property belonging to the Trust or such separate trust to such lien.

2. To retain any such property, partnership interest(s), limited liability company

42

interest(s) and/or stock even though such property, partnership interest(s), limited liability company interest(s) and/or stock may form a substantially disproportionate part, or all, of the Trust or any separate trust created hereunder without risk of surcharge to the Trustees for so doing, as long as the Trustees act in good faith.

3.   To purchase any additional such property, partnership interest(s), limited liability company interest(s) and/or stock for the Trust or any separate trust created hereunder from any sources at such price or prices and at such times as the Trustees shall determine to be fair and reasonable.

4.   To sell any such property, partnership interest(s), limited liability company interest(s) and/or stock from the Trust or any separate trust created hereunder to any person, firm, trust or other entity at such price or prices and at such times as the Trustees shall determine to be fair and reasonable.

S.   To execute and deliver in writing any and all instruments which the Trustees may deem advisable to carry out any of the foregoing powers.  No party to any such instruments signed by the Trustees shall be obligated to inquire into the validity of such instrument.

T.   To delegate to any one of the Trustees any nondiscretionary power, including but not limited to the power, singly or with others, to sign checks, withdrawal slips, instructions for the receipt or delivery of securities or other property, and instructions for the payment or receipt of money.

U.   To divide the Trust or any trust(s) created under this Agreement, at any time, into two (2) or more separate trusts with the same dispositive provisions, in order to adjust between or among them the inclusion ratio, as defined in Chapter 13 of the Code, of each said trust for the purposes of the Generation-Skipping Transfer Tax.

V.   To do any and all things in relation to this Agreement deemed to be necessary for carrying out any of the above powers or incident to the purpose thereof.

Doc #30316536.WPD

## SEVENTEENTH

The Settlor reserves the right for himself and for any other person(s) at any time to add to the principal of the Trust, and any property so added shall be held, administered and distributed as part of this Trust.

## EIGHTEENTH

A.   The Settlor reserves the right at any time and from time to time during his life, by a notice in writing signed and acknowledged by him in the manner required by the laws of the State of New York for the recording of a deed of real property:

1.   To withdraw all or any part of the principal of the Trust free of and discharged from the terms and conditions of this Agreement and of the Trust hereby created;

2.   To terminate, alter, amend or modify the Trust, in whole or in part, as the Settlor, in his sole and absolute judgment, desires; and/or

3.   To revoke this Agreement in its entirety.

Such notice shall be delivered to the Trustee(s) then acting at least ten (10) days prior to the effective date of such withdrawal, termination, alteration, amendment, modification or revocation, as the case may be.

B.   Upon the death of the Settlor, this Trust shall be and become irrevocable.

## NINETEENTH

A.   If the Generation-Skipping Transfer Tax exemption shall be allocated pursuant to § 2631 and § 2632 of the Code to any trust(s) created under this Agreement, the Trustees shall divide each such trust to which such exemption is allocated into two (2) separate trusts with the same dispositive provisions, so that one (1) of such separate trusts shall have an inclusion ratio of zero as such term is defined in Chapter 13 of the Code.

B.   Any provision to the contrary notwithstanding, whenever any Trustee of any trust created pursuant to this Agreement has the discretionary power to pay principal to any beneficiary of such trust and such trust has been divided into two (2) separate trusts pursuant to the provisions of Paragraph "A" and/or Paragraph "C" of this Article, such Trustee shall not exercise such discretionary power for the benefit of such beneficiary out of the principal of the separate trust with a zero inclusion ratio over which such Trustee has such discretionary power until the principal of the remaining separate trust over which such Trustee has such discretionary power shall have been exhausted; provided, however, that the restriction stated in this Paragraph "B" shall not apply when the beneficiary to whom a discretionary distribution of principal may be made is a "skip person" as such term is defined in Chapter 13 of the Code.

C.   The Trustees are hereby authorized, but are not directed, to elect pursuant to the provisions of § 2652(a)(3) of the Code, for the purposes of Chapter 13 of the Code, to treat any

Doc #30316536.WPD

property as to which an election was made under § 2056(b)(7) of

the Code, to qualify such property for the Federal Estate Tax

marital deduction, or under § 2523(f) of the Code, to qualify such

property for the Federal Gift Tax marital deduction, as if the

election to be treated as qualified terminable interest property

had not been made.   Anything to the contrary notwithstanding, in

the event such election is made, the Trustees, in their sole and

absolute discretion, may at any time set apart property

constituting such portion of such trust in a separate trust with

the same provisions so that the inclusion ratio of such separate

trust shall be zero.

<u>TWENTIETH</u>

Notwithstanding any provision of this Agreement to the

contrary, in the event any trust receives stock in an S

corporation (as defined in § 1361(a) of the Code), the Trustees

shall, if they determine it to be advisable, comply with the

provisions of either Paragraph "A" or Paragraph "B":

A.   If such trust would be eligible for treatment as

a Qualified Subchapter S Trust as defined in § 1361(d) of the

Code, the Trustees shall segregate said stock into a separate

trust.   Such separate trust shall be held, administered and

distributed upon the same terms and conditions as the original

trust from which it is segregated except that all the trust's

income (within the meaning of § 643(b) of the Code) shall be

distributed currently (within the meaning of § 1361(d)(3)(B) of

the Code) to the beneficiary who is then receiving the net income from such separate trust or who is then entitled to receive distributions of net income from such separate trust. It is the Settlor's intention that any such separate trust shall meet the qualifications of a Qualified Subchapter S Trust, and all provisions of this Agreement shall be interpreted in accordance with this intention.

B.    If such trust would be eligible for treatment as an Electing Small Business Trust as defined in § 1361(e) of the Code, the Trustees shall make an appropriate election with respect to such trust, and all provisions of this Agreement shall be interpreted in accordance with this intention.

## TWENTY-FIRST

After the death of the Settlor, the shares of income and the principal of the Trust or any separate trust(s) set up and established under this Agreement shall not in any way or manner be subject to or liable for any of the debts, contracts, engagements or liabilities of the respective beneficiaries hereof, and shall not be liable to anticipation, sale or pledge, nor subject to attachment, execution or sequestration under any legal, equitable or other process of law.

## TWENTY-SECOND

All references in this Agreement to the Code are to the Internal Revenue Code of 1986, as heretofore and hereafter

47