1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

      In the Matter

          of

    SIPC V. MADOFF, and     Case Nos.

    IRVING H. PICARD,      1-08-01789

                      1-09-01305

                      1-09-01273


          Debtors.


--------------------------------x


               September 9, 2009

               United States Custom House

               One Bowling Green

               New York, New York 10004


     Pre-trial conference, et al.



B E F O R E:

               HON. BURTON R. LIFLAND,

                      U.S. Bankruptcy Judge

17

1    We would like to hear what those are under the applicable

2    code.

3              However, in the context of the joint

4    account, Your Honor, there is something to be said.  The

5    joint account is fact sensitive, Your Honor.  Even the

6    Morgan Kennedy case, the case on this topic talks about the

7    fact that if customers had a relationship with BLMIS they

8    could call up Bernie Madoff or they could do things with

9    others who are within that organization.  That may take

10   them out of the role of just being an indirect investor and

11   not being known to us but someone who does become known.

12             In that context, with everything, Your

13   Honor, we would then have to decide --

14             THE COURT:  Isn't that a discrete issue in

15   your affirmance or denial of that particular claim?

16             MR. SHEEHAN:  I don't think that it will

17   come out that way.  The way we are going to do this is

18   that our customer claim form, as Your Honor has seen, as

19   part of your December 23rd order, does ask them to identify

20   a good deal of information and tells us how you got

21   involved with the account or with BLMIS.

22             What it doesn't ask and it couldn't because

23   it is too voluminous, whether or not you had phone calls,

24   e-mails, and unless the customer discloses that, then there

25   is no way for us to know that.  The best way for us to do

18

1    that, I believe, is once we have done a further analysis of

2    the customer claim itself in each of the indirect investors

3    claim, then in these cases, the feeder funds are net

4    losers.   We will in all of those cases allow them that

5    claim.   The feeder fund will get a $500,000 allowance, and

6    there is Optima, the fund where they paid us $235 million

7    in preference claims.  We allowed that and advanced

8    $500,000.   Their claim is in excess of half a billion

9    dollars.   At the time of the distribution when we

10   distribute the customer fund property, we will distribute

11   the dollars based on their allowed claim.

12                What we don't know, Your Honor, and our

13   thought is -- I'm sorry I lost my train of thought there,

14   when we allow the claim like we did in Optima, those

15   indirect investors will be denied.   The reason being

16   unless there is something in that file, as Your Honor

17   pointed out, Your Honor could be right, there could be

18   something in the file that shows there is heavy

19   correspondence going on between that customer and BLMIS.

20                But more likely than that, there won't be.

21   Because if there isn't any, and we may be proved wrong but

22   we don't believe it is true.   We believe we could

23   essentially put before Your Honor literally thousands of

24   these joint account claims in the context of a scheduling

25   order that gives all of the participants the opportunity to