LEWIS TEIN, P.L.  
3059 Grand Avenue, Suite 340  
Coconut Grove, FL 33133  
Tel.: (305) 442-1101  
Fax: (305) 442-6744  
Susan Capote, Esq. (Fla. Bar No.: 27563)  
scapote@lewistein.com  
*Counsel for Ermitage Finance Corporation*

Hearing Date: October 19, 2010  
Hearing Time: 10:00 A.M. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
TRUSTEE'S MOTION TO DENY CLAIMS OF CLAIMAINTS
WITHOUT BLMIS ACCOUNTS IN THEIR NAMES**

Ermitage Finance Corporation ("Ermitage") hereby files its response to Trustee Irving H.

Picard's Motion for an Order to Affirm Trustee's Determinations Denying Claims of Claimants

Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds dated June 11,

2010 ("Trustee's Motion") [DE 2416], and states as follows:

## BACKGROUND

1. Between November 1998 and August 2008, Ermitage invested over $6,000,000 with Fairfield Sentry Limited Fund ("Sentry"). Sentry subsequently invested these assets in Bernard L. Madoff Investment Securities, LLC ("BLMIS"). Sentry is recognized as a "feeder fund" and a direct customer of BLMIS. Declaration of David J. Sheehan, Ex. 1 [DE 2413]. Ermitage understood that Sentry was routing assets to BLMIS and that BLMIS was managing the investment of these assets.

2. On June 30, 2009, after the Trustee began liquidation proceedings of BLMIS, Ermitage timely submitted BLMIS customer claim forms with supporting documentation reflecting its investments in Sentry, a BLMIS feeder fund. Copies of Ermitage's Claims Forms are attached hereto as Exhibit "A."

3. On December 8, 2009, the Trustee issued Determination Letters denying Ermitage's claims, designated as Claim No. 013806 and Claim No. 014748, on the grounds that Ermitage was "not a Customer of BLMIS under SIPA," as Ermitage did not have an account with BLMIS. Copies of the Determination Letters are attached hereto as Exhibit "B."[1]

4. On January, 6 2010, Ermitage timely filed its objections to the Trustee's denial of Claim No. 013806 and Claim No. 014748. Copies of Ermitage's Objections are attached hereto as Exhibit "C."

5. On June 11, 2010, the Trustee filed his motion and corresponding memorandum of law, supporting its decision to deny the claims and arguing that indirect investors such as Ermitage do not qualify as customers of BLMIS. [DE 2411].

---

[1] This response applies to the denial of both Claim No. 013806 and Claim No. 014748.

2

## DISCUSSION

The Trustee correctly argues that relief under the Securities Investor Protection Act of 1970 ("SIPA") is afforded only to those who qualify as "customers." The Trustee's literal interpretation of "customer" under SIPA and his decision to limit relief only to direct customers of BLMIS, however, are contrary to the statute's intended purpose. The aim of SIPA has always been, and continues to be, the restoration of investor confidence. *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1105-06 (10th Cir. 2002). As the Supreme Court has explained concerning SIPA's enactment:

> Customers of failed firms found their cash and securities . . . either dissipated or tied up in lengthy bankruptcy proceedings. In addition to its disastrous effects on customer assets and investor confidence, this situation also threatened a "domino effect" involving otherwise solvent brokers that had substantial open transactions with the firm that had failed. ***Congress enacted SIPA to arrest this process, restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers***.

*Sec. Investor Prot. Corp. v. Barbour*, 421 U.S. 412, 415 (1975) (emphasis added). Thus, the very goals of SIPA compel equitable treatment of BLMIS indirect investors.

**I.**     **SIPA does not require "customers" to have direct accounts with the debtor.**

A plain reading of SIPA does not require direct investment with the debtor. SIPA defines "customer" as:

> ***any person*** (including any person with whom the debtor deals as principal or agent) ***who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business*** as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. ***The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and***

3

> *any person who has deposited cash with the debtor for the purpose of purchasing securities. . . .*

15 U.S.C. § 78*lll*(2) (emphasis added). This provision does not contain a requirement that an investor have a direct account with the debtor. *See In re First State Sec. Corp.*, 34 B.R. 492, 495-96 (Bankr. S.D. Fla. 1983) (concluding that claimants, whose accounts were held by third party brokers and not by the debtor, were customers of debtor nonetheless). Rather, a customer is any person who has a claim on account of securities held by the debtor.

## II.     Ermitage is a customer of BLMIS because its assets were invested in BLMIS.

The Ninth Circuit has interpreted the definition of customer to include "[a]n *investor* [who] . . . has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore is not entitled to recover from the SIPC trust fund." *In re Brentwood Sec., Inc.,* 925 F.2d 325, 327 (9th Cir. 1991) (emphasis added). Thus, "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Stafford v. Giddens*, 463 F.3d 125, 128 (2d Cir. 2006) (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)). Accordingly, "[t]he emphasis throughout [SIPA is] on the customer as investor and trader." *Sec. Exch. Comm'n v. F. O. Baroff Co., Inc.*, 497 F.2d 280, 282-83 (2d Cir. 1974). Indeed, the term "investors" is generally used synonymously with "customers." *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314, 1317 (2d Cir. 1976) ("Throughout the report 'investors' is used synonymously with 'customers,' indicating that, in the eyes of Congress, the Act would protect capital markets by instilling confidence in securities traders.").

Here, Ermitage entrusted cash to Sentry for investment purposes and, in turn, Sentry invested Ermitage's assets with BLMIS on Ermitage's behalf for the purpose of trading and investing in securities. Therefore, the "critical aspect" of the customer definition has been satisfied because Ermitage's assets were invested in BLMIS. Therefore, Ermitage should be considered a customer of BLMIS under SIPA.

In concluding that Ermitage and similarly situated investors are not customers under SIPA, the Trustee relies on several cases that are easily distinguishable. Indeed, in those cases, the purported "customers" were not investors. *See Morgan,* 533 F.2d at 1318 (holding that ***employee-beneficiaries*** in a profit-sharing plan were not customers of the debtor because the employee-beneficiaries had not entrusted individually any assets to the debtor); *Sec. Investor Prot. Corp. v Executive Sec. Corp.*, 423 F. Supp. 94, 98 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 98, 99 (2d Cir. 1977) (holding that ***claimant who lent securities*** to the debtor was not a customer under SIPA because he did not entrust those securities or any funds to the debtor for the purpose of trading or investing in securities); *In re First Interregional Equity Corp.*, 290 B.R. 265, 279-80 (Bankr. D.N.J. 2003) (holding that claimant was not a customer under SIPA where claimant was a ***lender of securities*** to the broker); *In re Hanover Square Sec.*, 55 B.R. 235, 238-39 (Bankr. S.D.N.Y. 1985) (holding that ***claimants, who pledged securities*** in connection with a subordinated loan agreement, were not customers, where securities were neither traded for benefit of claimants nor maintained for purpose of future trading on claimants' behalf); *F. O. Baroff Co., Inc.*, 497 F.2d at 284 (holding that a ***lender of securities*** to a failing brokerage house was not a customer within the meaning of SIPA).

The courts concluded that these claimants were not customers because they did not ***invest*** any assets in a broker-dealer, not because they were ***indirect*** investors. These situations are

Lewis Tein PL
ATTORNEYS AT LAW
3059 GRAND AVENUE, SUITE 340, COCONUT GROVE, FLORIDA 33133

clearly different from the instant case where it is undisputed that Ermitage, although indirectly, is an investor with BLMIS.

### III. The Trustee's narrow interpretation of "customer" contradicts SIPA's intended purpose.

To deny relief to investors who invested in BLMIS through feeder funds, like Sentry, while at the same time providing relief to those investors who directly invested in BLMIS, flies in the face of SIPA's intended purpose and defies principles of fundamental fairness. As President Nixon stated when he signed SIPA into law, establishing the Securities Investor Protection Corporation ("SIPC"), the SIPC was intended to "insure the securities and cash left with brokerage firms by investors against loss from financial difficulties or failure of such firms . . . [and to] protect the user of investment services." *See* http://www.presidency.ucsb.edu. Courts, including this Court, have noted that "SIPA should be interpreted broadly in furtherance of its remedial purpose." *In re Park South Sec., LLC*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005); *see also In re New Times Sec. Servs.,* 371 F.3d 68, 84 (2d Cir. 2004) ("statutory goals-promoting investor confidence and providing protection to investors-are better served by the SEC's broader reading of section 9(a)(1)" of SIPA); *In re First State*, 34 B.R. at 496 ("[SIPA] should be construed liberally to effect its purpose.").

Accordingly, the term "customer" should be construed liberally to include persons or entities who invested in BLMIS through feeder funds. Indeed, these indirect investors have incurred financial loss equal to or greater than many of the direct BLMIS customers and should be included within the customer definition. Therefore, Ermitage requests that the Court deny the Trustee's Motion in support of its decision to deny the claims of indirect investors such as Ermitage.

**IV.     Ermitage joins the opposition briefs filed by all other Objecting Claimants.**

Ermitage hereby joins, and fully incorporates by reference as if fully restated herein, the arguments and authorities cited in opposition papers and briefs filed by, or on behalf of, other Objecting Claimants or Interested Parties to the Trustee's Motion.  Any failure to object or oppose the Trustee's Motion on any particular ground shall not be construed as a waiver and is without prejudice to Ermitage's right to object or oppose the Trustee's Motion on such ground at a later date.  Ermitage reserves its right to revise, supplement or amend this motion.

In addition, Ermitage incorporates by reference as if fully restated herein, the arguments and authorities cited in its Objections filed on January 6, 2010.

**WHEREFORE,** Ermitage respectfully requests that the Court issue an order denying the Trustee's Motion, requiring the Trustee to broaden his definition of "customer" to include those investors who invested with BLMIS through separate feeder funds, and ordering the Trustee to grant Ermitage customer status for purposes of SIPA recovery.

> Respectfully submitted,
>
> LEWIS TEIN, P.L.
> 3059 Grand Avenue, Suite 340
> Coconut Grove, Florida 33133
> Telephone:  (305) 442-1101
> Facsimile:   (305) 442-6744
>
>
> By: /s/  Susan Capote_____
>      SUSAN CAPOTE
>      Florida Bar No.: 27563
>      scapote@lewistein.com
>      *Counsel for Ermitage Finance Corporation*
>      *Pro Hac Vice Status Approved*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I certify that the foregoing document is being served this day on all counsel of record identified on the following service list via transmission of Notices of Electronic Filing generated by CM/ECF. I also certify that the foregoing document is being served today via Federal Express on the parties listed below:

Irving H. Picard, Trustee
c/o Baker & Hostetler, LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

Clerk of the United States Bankruptcy Court
of the Southern District of New York
One Bowling Green
New York, New York 10004

　　　　　　　　　　　　　　　　　　　　　_/s/ Susan Capote_
　　　　　　　　　　　　　　　　　　　　　SUSAN CAPOTE