UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,

       Plaintiff-Applicant,

 -against-

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

       Defendant.
------------------------------------------------------------x

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## AMENDED AFFIDAVIT OF KENNETH E. CITRON OBJECTING TO SIPA TRUSTEE'S DETERMINATION OF CLAIM NUMBER 13658

**KENNETH E. CITRON**, being duly sworn, deposes and says:

1. I am a co-owner with my wife, Leslie Shapiro Citron, as joint tenants with right of survivorship, of Bernard L. Madoff Investment Securities LLC ("BLMIS") account number 1C1251 (the "Account").

2. I make this affidavit in support of the objection and opposition of my wife and me to the Notice of Trustee's Determination of Claim dated May 25, 2010 on Claim Number 13658, pertaining to the above-referenced Account (hereinafter, the "Determination") issued by Irving H. Picard, Trustee under the Securities Investor Protection Act (hereinafter referred to as the "Trustee"). The statements contained herein are true based on my personal knowledge.

3. The Account originated in June 1994 as BLMIS account number 1C1214, held in my name alone. The initial deposit I made into account number 1C1214 was on June 1, 1994 in the amount of $100,000. The only withdrawal from this account was in the amount of $4,500 on October 11, 1994.

4. My wife and I were married on November 5, 1994.

5. Prior to our marriage, my wife was the separate owner of BLMIS account number 1SH029 in the name Leslie Shapiro.

6. After our marriage, my wife and I decided to create a joint account in the approximate value of $300,000, with each of us contributing equally.

7. In furtherance of this decision, the funds in my individual BLMIS account, number 1C1214, were transferred into my wife's individual BLMIS account, number 1SH029, as follows: January 6, 1995 –$103,679.95; January 11, 1995 – $4.62; February 28, 1995 – $68.44.[1]

8. As of February 28, 1995, account number 1C1214 ceased to exist.

9. According to the BLMIS account statements, as of February 28, 1995, the value of account number 1SH029 was $255,484.59, representing my contribution of $103,753.01, plus the prior account balance.

10. On March 22, 1995, I deposited an additional $43,000 into 1SH029, bringing my total contribution to $146,753.00.

11. Between April 1995 and May 1997, withdrawals were made from account number 1SH029 in the total amount of $27,000.

12. In or around May 1997, my wife and I decided that rather than have our combined assets held in her name alone, we would open a joint account with rights of survivorship. In accordance with this decision, the Account was created.

13. On May 29, 1997, the entire balance of account number 1SH029 ($425,746.44) was transferred into the Account.

14. As of May 29, 1997, account number 1SH029 ceased to exist.

---

[1] This total sum, $103,753.01, represented the total value of account number 1C1214 as reflected by the BLMIS account statements.

2

15. Between the creation of the Account on May 29, 2007 and December 11, 2008, additional deposits were made in the total amount of $100,000.

16. On or about June 24, 2009, my wife and I submitted a SIPC claim for Account, in which we documented that the value of the Account per the BLMIS statement dated November 30, 2008 was $1,651,707.15.

17. Our claim was denied by the Determination, in connection with which the Trustee employed a "cash in/cash out" methodology to assert that our withdrawals from the Account exceeded our principal deposits. We object to this methodology and expressly reserve our claim for full SIPC coverage of $500,000 should this Court's March 1, 2010 decision affirming the Trustee's Net Investment Method for determining customer claims be reversed or modified on appeal.

18. We also object to the Trustee's Determination to the extent that it is principally predicated his contention that "no securities were ever purchased for [the Account] . . . Any and all profits reported to you by BLMIS on account statements were fictitious." As a result, the Trustee asserts that my wife and I therefore are not entitled to receive credit for any value in the Account in excess of our principal deposits. However, the Trustee's contention is stated in purely conclusory terms and is completely unsupported by any information or documents in our possession. It is requested that the Trustee be compelled to produce all documents and information upon which he relies in support of his conclusion that BLMIS <u>never</u> engaged in legitimate trading activity in any of our accounts, and we reserve our right to raise additional objections to the Determination if it is discovered that some or all of the profits in the Account were not "fictitious" as the Trustee contends.

19. In conjunction with his premise that no securities were ever purchased by BLMIS, the Trustee, in Table 1 of the Determination, presents a so-called "adjusted amount" of the value of account number 1SH029 as of May 29, 1997, the date that the funds in 1SH029 were transferred into the Account. According to the Trustee, the "adjusted amount" is $27,000. This cannot be possible, since, as demonstrated above, I contributed $143,000 of principal into the already-existing account (1SH029) or a predecessor account (1C1214) between June 1994 and March 1995. Even if the total withdrawals from 1C1214 ($4,500) and all of the withdrawals from 1SH029 between March 1995 and May 1997 ($27,000) are deemed to have been from my principal alone (and none from my wife's principal in 1SH029) the *minimum* "adjusted amount" of 1SH029 as of May 29, 1997 should be $111,500.[2] Thus, in this regard, the Trustee's calculation is simply wrong.

20. Presumably, the "adjusted amount" is intended to reflect the difference between principal deposited into an account and the withdrawals from that account. However, the Trustee has failed to document how he arrived at the "adjusted amount" for 1SH029 contained in Table 1. We request an opportunity to examine the records on which the Trustee relied in devising the "adjusted amount" in order to determine and fully address what, if any, further mathematical errors were made by the Trustee. We reserve our right to raise additional objections to the Determination if such errors are discovered.

_____
Kenneth E. Citron

Sworn to before me this
9th day of July, 2010

_____
Notary Public

DEAN BAKER
Notary Public, State of New York
No. 01BA6025874
Qualified in NEW YORK County
Commission Expires JUNE 01, 2011

---

[2] This figure assumes that my wife's principal in 1SH029 had no value as of May 29, 1997, a fact which we do not concede.

4