Barger & Wolen, LLP  
10 East 40th Street, 40th Floor  
New York, NY 10016-0301  
Tel:    (212) 557-2800  
Fax:    (212) 557-2884  
Michael J. Levin (ML2029)  
mlevin@bargerwolen.com  
Dennis C. Quinn (DQ1401)  
dquinn@bargerwolen.com  
Attorneys for Interested Party Jewish Community  
Foundation of the Jewish Federation Council of Greater Los Angeles  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------X

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | District Court Case No. 08-10791 |
|  | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |

---------------------------------------------------------------X

**BRIEF OF INTERESTED PARTY JEWISH COMMUNITY FOUNDATION OF THE JEWISH FEDERATION COUNCIL OF GREATER LOS ANGELES IN CONNECTION WITH THE TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S DETERMINATION DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS ACCOUNTS IN THEIR NAMES, NAMELY INVESTORS IN FEEDER FUNDS**

Pursuant to the Court's April 13, 2010 order (the "Scheduling Order") (Dkt. No. 2205), Interested Party Jewish Community Foundation of the Jewish Federation Council of Greater Los Angeles (the "Foundation"), submits this brief in connection with the Trustee's Motion to Affirm Trustee's Determination Denying Claims of Claimants Without BLMIS Accounts in their Names, Namely Investors in Feeder Funds (hereinafter referred to as the "Customer Motion"). Accompanying this brief is a letter to this Court requesting leave to submit this brief, in compliance with page 3 of the Scheduling Order.

## I.  INTRODUCTION

The Foundation is a charity exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code. The Foundation maintains an investment pool (the "pool") on behalf of itself and 26 independent Jewish charities. $18 million of investment pool assets were invested with BLMIS and the Trustee has affirmed the Foundation's net claim as approximately $17,761,517.72. Such pool assets were invested in a BLMIS account documented in the name of the Foundation (the "Account").

The pool is not an entity, but a service under which the Foundation, as an agent or nominee, invests funds of other charities as the principals ("the "Principals"). Each Principal has a direct several and not joint undivided interest in the pool investments. The Foundation believes that each Principal meets the definition of "customer" in Securities Investors Protection Act of 1970, as amended ("SIPA"), because each Principal is a separate charity with a direct interest in the Account.

The Foundation and each Principal have submitted claims. Other than the Foundation's claim, which has been accepted, the Trustee has not yet determined the Principals' claims. The Foundation does not seek a ruling from this Court on those claims at this time. Rather, the

2

Foundation files this Brief to dispute certain arguments made in the Customer Motion that are unnecessary to the ruling the Trustee seeks but which may affect the Principals' claims.

The Foundation concurs with the Trustee that the Objecting Claimants who are parties to the Customer Motion cannot meet the definition of "customer" because they have no direct interest in a BLMIS account. However, in the Customer Motion the Trustee adds unnecessary and erroneous glosses to the statutory definition of "customer" which might, if applied to the Principals deny "customer" status. Specifically, the Trustee effectively asserts that a claimant must be listed in the debtor's records as the holder of an account in order to be a "customer." That assertion is not correct and should be rejected. The Foundation requests that this Court instead rely upon the Trustee's other arguments that (1) because the Objecting Claimants invested in one of 16 "feeder funds" and not with the debtor, the Objecting Claimants were not persons who held an account with the debtor and, hence, were not "customers" of the debtor; and/or (2) because investors in the feeder funds are merely shareholders of those funds and do not own a direct interest in the funds invested in BLMIS, they lack standing to sue the debtor.

**II. THE 16 FEEDER FUNDS ARE THE "CUSTOMERS" OF BLMIS; THE OBJECTING CLAIMANTS ARE MERELY SHAREHOLDERS OF THE FEEDER FUNDS, LACK ANY DIRECT INTEREST IN THE INVESTMENTS, AND ARE NOT "CUSTOMERS" WITHIN SIPA**

As the Trustee noted:

> "The term 'customer' of a debtor means any person who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. …
>
> While "person" is not defined in SIPA, it is defined under the Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.,* of which SIPA is deemed an amendment. *See* SIPA § 78bbb ("Except as otherwise provided in this

3

>   chapter, the provisions of the Securities Exchange Act of 1934 . . . apply as if this chapter constituted an amendment to, and was included as a section of, such Act.")  Under the 1934 Act, "person" is defined in Section 3(a)(9) as follows"  "The term "person" means a natural person, company, government, or political subdivision, agency, or instrumentality of a government."  The 1934 Act also states at Section 3(a)(19) that the term 'company' is governed by the definition in the Investment Company Act of 1940, which in turn broadly provides in relevant part at Section 2(a)(8): "(8) "Company" means a corporation, a partnership, an association, a joint-stock company, a trust, a fund or any organized group of persons whether incorporated or not; . . ."  15 U.S.C. § 80a-2(a)(8).

*See* Customer Motion, p. 15, fn. 8.  The 16 Feeder Funds easily fit within the definitions of "person" and "customer."

While the 16 Feeder Funds may be "customers," the Objecting Claimants are not.  As noted by the Trustee, an individual with an interest in an entity typically has no direct claim when, as here, the individual's injury is merely incidental to the entity's injury.  Customer Motion at p. 26.  The basis for this is that the Objecting Claimants did *not* have a separate and distinct several (and not joint) undivided interest in the assets of the Feeder Funds.  Rather, as described on pages 7-8 of the Customer Motion, investors invest in such funds by purchasing a limited ownership interest in them and take money out of them by redeeming a portion of their ownership interest corresponding to the amount of money they seek to withdraw.  Based on the Objecting Claimants' relationship with the Feeder Funds, the Trustee denied their claims as individual customers because they have no separate rights to the funds invested with the Debtor.

### III. THE POOL IS NOT A "CUSTOMER" OF BLMIS THROUGH WHICH THE PRINCIPALS HAVE DERIVATIVE CLAIMS; THE PRINCIPALS HAVE DIRECT SEVERAL AND NOT JOINT UNDIVIDED INTERESTS IN THE ASSETS OF THE POOL AND THE ACCOUNTS THROUGH WHICH THEIR ASSETS WERE INVESTED WITH BLMIS

Unlike the 16 Feeder Funds, the pool is not a "person" as defined above.  The pool is not an organization, but a service provided by the Foundation to the other charities.  As such, the

4

pool is not a "company" as defined above and, hence, is not itself a "person" capable of being a "customer." Indeed, the Investment Company Act of 1940 (15 U.S.C. §§ 80a, *et seq.*) ("Investment Company Act") recognizes that the pool is not a company but merely a "fund maintained by a charitable organization exclusively for the collective investment of" the "assets of the general endowment fund or other funds of one or more charitable organizations." *See* Investment Company Act § 3(c)(10). 15 U.S.C. § 80a-3(c)(10). As such, the pool itself cannot be a "customer." Accordingly, the Trustee's argument that the Objecting Claimants' rights are merely "derivative" of the Feeding Funds' rights is inapplicable to the Principals.[1]

## IV. UNDER SIPA, EACH PRINCIPAL INVESTING THROUGH THE POOL IS A "CUSTOMER" OF DEBTOR

Each of the Principals satisfies all of the elements of the definition of "customer" under SIPA Section 78*lll*(2). Each Principal is a "person" (*See* 1934 Act § 3(a)(9) and The Investment Company Act § 2(a)(8)) and "has a claim on account of securities … acquired, or held by [BLMIS] in the ordinary course of its business as a broker or dealer from or for the securities accounts of such [Principal]…." None of the Principals falls within an exception to the definition of "customer." *See* SIPA 78lll(2) (A) and (B).

### A. There is No Requirement That a "Person" Have His, Her or Its Name Listed in the Debtor's Records as an Account Holder in Order to be a "Customer"

Each Principal investing through the pool is a separate "customer" as defined under SIPA.

---

[1] Note that, unlike the Objecting Claimants' ownership of their respective Feeder Funds, the Principals do not own interests or shares in the Foundation and the Foundation is not a Feeder Fund. Rather, each Principal, including the Foundation, has its own separate interest in the assets of the pool.

5

In relevant part, as noted above, a "customer" of the debtor is "any person who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person…." SIPA § 78*lll*(2). There is no requirement in this definition that a person have his, her or its name on an account in the debtor's records in order to be a "customer."

Indeed, SIPA expressly provides for situations where a customer's name does not appear in the debtor's records by providing that the obligations to customers may be either "ascertainable from the books and records of the debtor" or "otherwise established to the satisfaction of the trustee." SIPA §78fff-2(b).

The absence of a requirement that a "customer" have his, her or its name on an account in the debtor's records is further demonstrated by 17 CFR § 300.101. That Rule provides, in relevant part:

> "(b) ***An account held with a member by an agent or nominee for another person as a principal or beneficial owner shall, except as otherwise provided in these rules, be deemed to be an individual account of such principal or beneficial owner.***" 17 C.F.R. § 300.101 (emphasis added).[2]

The Foundation constitutes an agent or nominee of each Principal, each of which is a principal or beneficial owner of the Account. Therefore, the Account with BLMIS constitutes an individual account of each Principal as a separate customer under SIPA under the above Rule.

Rule 300.101 states that where an account is held by a nominee or agent for another person, that person is "a" principal or beneficial owner. Had the Rule used the term "the"

---

[2] There is one district court case which discusses the Section 300.101 nominee provision. *See In re Adler, Coleman Clearing Corp.*, 277 B.R. 520 (2002). However, this case is factually distinguishable from the Foundation's circumstance in that the *Adler* claimant was found to have been an ally to the introducing broker to perpetrate various fraudulent activities by the broker (e.g., market manipulation), and thus his customer status was irrelevant.

6

principal or beneficial owner, then arguably the Rule would contemplate one principal or beneficial owner per account. However, as the Rule is phrased, each Principal is separately "a" principal or beneficial owner of the Account and, therefore, each is a "customer."[3],[4]

### B. Each Principal is a Separate "Customer" with Respect to the Account"

Each Principal has a separate and distinct several (and not joint) interest in the assets of the pool. In other words, each Principal maintains direct beneficial ownership of each asset of the pool, including but not limited to the fictional holdings in the BMLIS Accounts. The relationship of the Foundation as an agent or nominee and the other Principals in this situation is analogous to that of a bank or dealer or broker which files a claim on behalf of its public customers referenced in Item 7 of the Customer Claim form.

---

[3] At page 19 of the Customer Motion, the Trustee quotes passages from *Securities Investors Protection Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), which suggest that to be a "customer" a claimant must have been listed as the account holder in the debtor's records. However, the case involved a profit sharing trust, which, of course, was a "company" under Section 2(a)(8) of the Investment Company Act, a "person" under Section 3(a)(19) of the 1934 Act, and, thus, was the "customer" under SIPA section 78*lll*(2). Therefore, the employee beneficiaries of the trust had merely derivative claims. As the passages from *Morgan, Kennedy* quoted on page 20 of the Customer Motion demonstrate, the Court's conclusion that the employees were not "customers" was based on the absence of any role on their part as investors, purchasers or traders, not on the absence of their individual names from the debtor's records.

[4] Many of the cases cited by The Trustee regarding the "narrow" construction of "customer" relate to circumstances irrelevant here. In *In Re Adler*, *Coleman Clearing Corp.* 277 B.R. 520, 558 (S.D.N.Y. 2002)(persons engaged in fraudulent transactions were denied customer status.
   Several cases address the nature of the claim, not the standing of the claimant with respect to the account. *Adler Coleman Clearing Corp.* 204 B.R. 111(S.D.N.Y 1997)(collateral accounts); *In Re First Interregional Equity Corp.* 290 B.R. 265 (D.N.J. 2003) (securities lending by Trustee); *In Re Hannover square Sec.* 55 B.R. 235 (S.D.N.Y 1985) (securities lending, as noted by Trustee); *SEC v. F.O. Baroff Company, Inc.* 497 F2d 280 (securities lending); *SIPC v. Wise* 750 F.2d464 (5th Cir., 1985) (claim with respect to collateral was not "customer" claimed) *SIPC v. Executive Securities Corporation* 423 F. Supp 94 (S.D.N.Y. 1976)(securities lending); In Re First Interregional Equity Corp. 290 B.R. 265 (securities lending).

7

SIPA Section 78fff-3(a)(5) provides that, where a broker, dealer or bank carried out transactions with the debtor for customers of the broker, dealer or bank, each such customer is deemed a separate customer of the debtor.  In this regard, the pool is analogous to a bank omnibus account in which each customer of the omnibus account is held by a custodian or sub-custodian "nominee" for the beneficial owner(s) of the assets in the account.  Omnibus accounts are commonly used in cross-border futures transactions as described in the following:

> "In the futures world, an omnibus account is defined as an account between two brokerage firms whereby a number of individual customer accounts of one firm are grouped into a single account at a second firm. The latter firm, i.e., the one carrying the omnibus account and executing the trades, usually does not have information about the individual client accounts underlying the omnibus account and usually does not provide individual accounting for each of the client accounts. . . . The omnibus account structure is an efficient way to bunch customer trading activity into a single account, saving money through economies of scale, and allowing for trades executed at many brokers to be consolidated at a single global broker." [5]

SIPA nowhere provides that there can be only one "customer" per account.  Indeed, under SIPA Section 78fff-3(a)(5), it is clear that there is no such limitation.  Here, each Principal, literally, functionally, and separately meets the definition of "customer" with respect to the Account.

Under the circumstances, the BMLIS Account held by the Foundation for the beneficial interest of each Principal , constitutes an individual account of each such Principal.  Accordingly, each Principal is an individual "customer" under SIPA.

---

[5] *See Omnibus Accounts: The Portal to Cross-Border Trading*, Futures Industry Magazine (January/February 2006) at http://www.futuresindustry.org/fi-magazine-home.asp?a=1091.

## V. CONCLUSION

Based on the foregoing, the Foundation requests that, in ruling on the Customer Motion, this Court reject the Trustee's argument that a person's name must appear in the debtor's records as the account holder in order to qualify as a "customer" under SIPA, and base its ruling on the Trustee's other arguments that (1) because the Objecting Claimants invested in one of 16 "feeder funds" and not with the debtor, the Objecting Claimants were not persons who held an account with the debtor and, hence, were not "customers" of the debtor; and/or (2) because investors in the feeder funds are merely shareholders of those funds and do not own a direct interest in the funds invested in BLMIS, they lack standing to sue the debtor.

Dated: New York, N.Y.

      July 12, 2010

**BARGER & WOLEN, LLP**

By: s/Dennis C. Quinn
Dennis C. Quinn (DQ-1401)
10 E. 40th Street
40th Floor
New York, N.Y. 10016-0301
Tel:   (212) 557-2800
Fax:   (212) 557-2884
E-mail:dquinn@bargerwolen.com
Attorneys for Jewish Community Foundation of the Jewish Federation Council of Greater Los Angeles

9

To:    Parties on the Annexed Service List

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
SECURITIES INVESTOR PROTECTION              :    District Court Case No. 08-10791
CORPORATION,                                              :
                                                             :    Adv. Pro. No. 08-01789 (BRL)
                    Plaintiff,                          :
          v.                                             :
                                                             :
BERNARD L. MADOFF INVESTMENT      :
SECURITIES, LLC,                                     :
                                                             :
                    Defendant.                       :
                                                             :
-------------------------------------------------------------X

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, DENNIS C. QUINN, one of the attorneys for the Jewish Community Foundation of the Jewish Federation Council of Greater Los Angeles, hereby certifies that a copy of the foregoing Brief of Interested Party Jewish Community Foundation of the Jewish Federation Council Of Greater Los Angeles in Connection with the Trustee's Motion to Affirm Trustee's Determination Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely Investors in Feeder Funds was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to the parties listed below and serve via First Class Mail.

      Irving H. Picard, Trustee
      45 Rockefeller Plaza
      New York, New York 10111

July 12, 2010

                                            s/ Dennis C. Quinn
                                            Dennis C. Quinn