MORRISON & FOERSTER LLP
Karen Ostad, Esq.
Michael B. Miller, Esq.
Erica Richards, Esq.
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  KOstad@mofo.com
        MBMiller@mofo.com
        ERichards@mofo.com

*Attorneys for Inversiones Lutimo S.I.C.A.V., S.A.*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                :
SECURITIES INVESTOR PROTECTION                                  :
CORPORATION,                                                    :
                                                                :
                    Plaintiff,                                  :
                                                                :   Adversary Proceeding
             — *versus* —                                       :
                                                                :   No. 08-01789 (BRL)
BERNARD L. MADOFF INVESTMENT                                    :
SECURITIES, LLC,                                                :   SIPA Liquidation
                                                                :
                    Defendant                                   :
---------------------------------------------------------------- x
In re BERNARD L. MADOFF,                                        :
                                                                :
                    Debtor

**OBJECTION TO TRUSTEE'S MOTION FOR AN ORDER TO AFFIRM
TRUSTEE'S DETERMINATIONS DENYING CLAIMS OF CLAIMANTS
WITHOUT BLMIS ACCOUNTS IN THEIR NAMES,
<u>NAMELY, INVESTORS IN FEEDER FUNDS</u>**

Inversiones Lutimo S.I.C.A.V., S.A. ("Claimant"), by and through its counsel,

hereby files this Objection to the Trustee's Motion For An Order To Affirm Trustee's

ny-931925

Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds (the "Motion") and respectfully represents as follows:

1. Claimant invested in Euro-denominated shares of Fairfield Sigma Limited, which invested Claimant's funds in Fairfield Sentry, Ltd. ("Fairfield"), and which, in turn, invested Claimant's funds in Bernard L. Madoff Investment Securities LLC ("BLMIS" or the "Defendant"). Upon information and belief, Claimant understands that Fairfield held various brokerage accounts under its name with BLMIS.

2. On or about December 11, 2008 (the "Commencement Date"), the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq*.

3. On or about December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee.

4. Pursuant to SIPA, the Trustee was directed to oversee the liquidation of the assets of BLMIS and to process all claims against the Defendant, BLMIS, and the Debtor Bernard L. Madoff.

5. By order of this Court dated December 23, 2008 [Dkt. No. 12], the Trustee was directed to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . . ."

6. Claimant filed a timely proof of claim, designated as Claim No. 013333 (the "Claim"), asserting that its Claim, which arose from pre-Commencement Date transactions, is entitled to "customer" status under SIPA.

7. Upon information and belief, Fairfield and Fairfield Sigma Limited each submitted Customer Claim Forms under their names only, and not individual claims on behalf of their Shareholders.

8. On or about December 8, 2009, Claimant received a "Notice of Trustee's Determination of Claim," (the "Determination Notice") notifying Claimant that, "because [Claimant] did not have an account with BLMIS," its claim is denied as a "customer claim" under 15 U.S.C. § 78lll(2).

9. On January 7, 2010, Claimant filed an Objection to the Determination Notice (the "Determination Objection") [Dkt. No. 1447], attached hereto as Exhibit A, asserting that the Claim is entitled to "customer" status under SIPA.

10. On June 11, 2010, the Trustee filed the Motion [Dkt. No. 2416], requesting that this Court enter an order affirming the Determination Notice.

11. Claimant incorporates by reference as if fully restated herein, the arguments and authority cited in its Determination Objection.

12. In addition, Claimant joins, and fully incorporates by reference as if fully restated herein, the arguments and authority cited in the opposition papers and briefs filed on behalf of other objecting claimants or interested parties to the Trustee's Motion. Any failure to object to or oppose the Motion on any particular ground shall not be deemed a waiver of and is without prejudice to Claimant's right to object to or oppose the Motion on such ground at a later date. Claimant reserves its right to revise, supplement or amend this Motion.

## **Relief Requested**

13.    For the reasons stated, the Court should (i) deny the Motion, (ii) find that Claimant is a customer of the Defendant within the definition of 15 U.S.C. § 78lll(2), and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  July 12, 2010

Respectfully submitted,


 /s/   Karen Ostad
MORRISON & FOERSTER LLP
Karen Ostad, Esq.
Michael B. Miller, Esq.
Erica Richards, Esq.
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: KOstad@mofo.com
          MBMiller@mofo.com
          ERichards@mofo.com

*Attorneys for*
   *Inversiones Lutimo S.I.C.A.V., S.A.*

ny-931925                                5

## EXHIBIT A

ny-931925

MORRISON & FOERSTER LLP
Karen Ostad, Esq.
Michael Miller, Esq.
Erica Richards, Esq.
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  KOstad@mofo.com
        MBMiller@mofo.com
        ERichards@mofo.com

*Attorneys for Inversiones Lutimo S.I.C.A.V., S.A.*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff,

— *versus* —

BERNARD L. MADOFF INVESTMENT
SECURITIES, LLC,

          Defendant
----------------------------------------------------------------- x
In re BERNARD L. MADOFF,

          Debtor

Adversary Proceeding

No. 08-01789 (BRL)

SIPA Liquidation

**OBJECTION TO DETERMINATION OF**
**CLAIM OF INVERSIONES LUTIMO S.I.C.A.V., S.A.**

Inversiones Lutimo S.I.C.A.V., S.A. ("Claimant"), by and through its counsel, hereby files this Objection to the Trustee's Determination of Claim issued with respect to Claim No. 013333 (the "Claim"), and respectfully represents as follows:

ny-906196

**Background**

1. Claimant purchased Euro-denominated shares of Fairfield Sigma Limited ("Sigma"). Sigma invested Claimant's funds in Fairfield Sentry, Ltd. ("Sentry" and, together with Sigma, the "Fairfield Entities"), which, in turn, invested Claimant's funds in Bernard L. Madoff Investment Securities LLC ("BLMIS" or the "Defendant"). Upon information and belief, Claimant understands that Sentry held various brokerage accounts under its name with BLMIS.

2. On or about December 11, 2008 (the "Commencement Date"), the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq*.

3. On or about December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York, and Irving Picard was appointed as Trustee.

4. Pursuant to SIPA, the Trustee was directed to oversee the liquidation of the assets of BLMIS and to process all claims against the Defendant, BLMIS, and the Debtor Bernard L. Madoff.

5. By order of this Court dated December 23, 2008 [Dkt. No. 12] (the "Order"), the Trustee was directed to "notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . . ."

6. Claimant filed a timely proof of claim, attached hereto as <u>Exhibit A</u>, asserting that its Claim, which arose from pre-Commencement Date transactions, is entitled to "customer" status under SIPA.

7. Upon information and belief, Sentry submitted Customer Claim Forms under its name only, and not individual claims on behalf of its Shareholders. Upon information and belief, Claimant understands that Sigma has not submitted Customer Claim Forms.

8. On or about December 8, 2009, Claimant received a "Notice of Trustee's Determination of Claim," (the "Determination Notice") notifying Claimant that, "because [Claimant] did not have an account with BLMIS," its claim is denied as a "customer claim" under 15 U.S.C. § 78lll(2).

9. Claimant objects to the Determination Notice and asserts that the Claim is entitled to "customer" status under SIPA.

## Legal Arguments

10. As an initial matter, the Trustee has failed to provide the necessary legal basis for his determination, relying upon a perfunctory assertion of the absence of a direct customer/investment advisor relationship. Thus, the Determination Notice is inadequate and violates the Order for the following reasons:

   a. the Determination Notice fails to clearly provide a reason for the disallowance as required by the Order;

   b. the Determination Notice is inadequate to rebut the claims of Claimant, as provided for by Section 502(a) of the Bankruptcy Code,[1] and R. 3001(f)[2]

---

[1] 11 U.S.C. § 502(a) provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." A liquidation under SIPA is essentially a bankruptcy proceeding, and incorporates Section 502(a) of the Bankruptcy Code. 15 U.S.C. § 78fff(b). *See In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 74 (Bankr. S.D.N.Y. 1996), and cases cited therein.

[2] Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

ny-906196                                3

of the Fed. R. Bankr. Proc.,[3] by merely asserting a bald disallowance notice;[4] and

c. the Trustee's determination violates the general rule that any determination of a claim set forth, minimally, relevant facts and legal theories upon which the objection and determination are based. "[A]n objection to a claim should meet the [pleading] standards of an answer. It should . . . make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and[,] it should describe the theoretical bases of those defenses." 9-3007 COLLIER ON BANKRUPTCY P 3007.01(3) (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev). *See also generally In re Chain*, 255 B.R. 278 (Bankr. D. Conn. 2000).

11. Notwithstanding the "determination" of the Trustee, Claimant seeks a determination that it is a "customer" under SIPA and, therefore, the Claim constitutes a "customer" claim under SIPA, 15 U.S.C. § 78lll(2). Under SIPA, "customer" claims are entitled to (a) recover against "customer property" on the basis of their "net equity" and (b) receive advances from a fund maintained by the Securities Investor Protection Corp. (the "SIPC"). Apparently, the Trustee has taken the position that the fact that Claimant did not directly deposit funds with BLMIS is fatal to its claim as "customer" under SIPA. For the reasons set forth below, we believe this position is both legally and factually flawed.

---

[3] *See generally Gardner v. New Jersey*, 329 U.S. 565, 571, *reh'g denied,* 330 U.S. 853 (1947).

[4] "Because a properly executed and filed claim is deemed allowed, the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case." *In re G. Marine Diesel Corp.*, 155 B.R. 851, 853 (Bankr. E.D.N.Y. 1993), and cases cited therein.

12.     The fact that Claimant invested with BLMIS indirectly, rather than directly, is irrelevant.  For SIPA purposes, there is no substantive difference between those who gave the Defendant, BLMIS, their funds directly or indirectly through feeder funds.  Therefore the Claim arising from such trades should be granted "customer" status.  We believe that denying the Claims "customer" status is inconsistent with SIPA, the legislative intent embodied by SIPA, prior case law, and prior positions of the SIPC.

13.     In a liquidation proceeding, the SIPC fund is available to "customers" if the debtor's general estate is insufficient to pay "customer claims."  Under SIPA, only "customers," as defined in 15 U.S.C. § 78lll(2), will be protected.

14.     SIPA defines "customer" as:

> [A]ny person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities . . . .[5]

15 U.S.C. §78lll(2).  Although the statute does provide exclusions from this definition, none of these are applicable to Claimant.[6]

---

[5] The term excludes two exceptions not relevant here.

[6] The two enumerated exceptions are:

(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or
(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

ny-906196                                    5

15. The term "customer" is a term of art, and does not have its ordinary and customary meaning. *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *aff'd sub nom. Arford v. Miller (In re Stratton Oakmont)*, 210 F.3d 420 (2d Cir. 2000). It is to be construed within the context of the definitional section of SIPA, and as interpreted by the courts. A denial of "customer" status relegates an investor to a general unsecured creditor who can only seek recovery from the general estate. *SIPC v. Bernard L. Madoff Inv. Secs., LLC*, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009) (citing *SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999)).

16. SIPA protects the assets of investors held by broker-dealers who become insolvent. As explained by the Supreme Court, Congress enacted the law to protect and restore investor confidence in the capital markets. *SIPC v. Barbour*, 421 U.S. 412, 415 (1975); *SIPC v. Bernard L. Madoff Inv. Secs., LLC*, 401 B.R. at 633-34. SIPA created SIPC to administer SIPA. 15 U.S.C. §78ccc. SIPA was enacted by Congress as remedial legislation to be liberally construed to effect the purpose of protecting the investments of customers of broker-dealers and investment advisors. *In re First State Secs. Corp.*, 34 B.R. 492 (Bankr. S.D. Fla. 1983). The fundamental purpose of SIPA was to protect the public in the event that the licensees with whom they dealt went bankrupt, or were otherwise unable to satisfy their customer agreements. *SEC v. S.J. Salmon & Co.*, 375 F. Supp. 867, 871 (S.D.N.Y. 1974) ("The principal purpose of the [Securities Investor Protection] Act was to protect investors against financial losses arising from the

---

Courts have also limited the definition when the claimant had a lending relationship with the debtor, a limitation that is inapplicable to Claimant. *See, e.g., Stafford v. Giddens (In re New Times Secss Svcs., Inc.)*, 463 F.3d 125 (2d Cir. 2006).

insolvency of their brokers."); *SEC v. Schreiber Bosse & Co.*, 368 F. Supp. 24 (N.D. Ohio 1973).

17.     SIPA's definition of "customer" is strikingly similar to the definition of "customer" in the stockbroker liquidation provisions of the Bankruptcy Code.  Compare 15 U.S.C. § 78lll(2) with 11 U.S.C. § 741(2).  As such, it is significant, as noted by a bankruptcy court in this District, that the "sole legislative statement addressed" to the definition of "customer" in the Bankruptcy Code "reveals that such descriptive term comprehends 'anybody that interacts with the debtor in a capacity that concerns securities transactions.'"  *In re SSIW Corp.*, 7 B.R. 735, 738 (Bankr. S.D.N.Y. 1980).

18.     The statute itself makes clear that one need not have a direct relationship with the subject trader or advisor to be considered a "customer" under SIPA.  First, the statute states that a "customer" "<u>includes</u> any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities."  (Emphasis added.)  The use of the word "includes" indicates that the definition that follows is not exclusive, but merely indicative of the type of person meant to be included within SIPA's protection. The only requirements for customer status under the statute are (a) that the claim against the debtor arose out of sales or conversion of securities, and (b) that the customer made deposits with the fiduciary of cash or securities.[7]

---

[7] *Cf., In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 73 (Bankr. S.D.N.Y. 1996), where the Court found dispositive the fact that the clearing firm for the claimants' accounts had no fiduciary relationship with the customers, and was the "agent" of the introducing broker.  Compare this to the case at bar, where it has been alleged by the Trustee that the relationship between the Fairfield Entities and BLMIS was one where Fairfield Entities may have colluded with BLMIS to perpetrate fraud on Claimant and others.  *See* Complaint against Fairfield Sentry Limited, Greenwich Sentry, L.P., Greenwich Sentry Partners, L.P. filed by Trustee Irving Picard in *Picard v. Fairfield Sentry Limited*, Adv. Proc. No. 09-01239 (Bankr. S.D.N.Y May 18, 2009) (stating that over the course of a relationship with Madoff and/or BLMIS lasting nearly 20 years, the defendants were on notice of various indicia of irregularity and fraud but failed to make

19. The investments made through the Fairfield Entities giving rise to the Claim are clearly and undisputedly purchases of "securities" under SIPA.[8] Moreover, BLMIS's receipt of Claimant's assets was clearly within the "ordinary course of its business" as a "broker or dealer" and from or for BLMIS's "securities accounts."

20. There is no mandate that the funds or securities received by the Debtor were received "directly" from the customer. Had this been a requirement, Congress would have clearly seen fit to so require it. Indeed, Section 9 of the SIPA (15 U.S.C. § 78fff-3(a)(5)), covering advances by the SIPC to the bankruptcy trustee, states that:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, <u>other than to the extent that it shall be established to the satisfaction of the trustee</u>, from the books and records of the debtor <u>or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . ., in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor</u>.

(Emphasis added.)

21. A number of courts have construed a claimant's status as a "customer" or a creditor as dependent on whether the claimant "entrusted" cash or securities to the broker-dealer debtor. *See, e.g., SIPC v. Executive Secs. Corp.*, 556 F.2d 98, 99 (2d Cir. 1977). Claimant executed securities investments with the Defendant, as a dealer, albeit indirectly. Claimant is a creditor of the Defendant, a fact which apparently is not

---

sufficient inquiry because "with the [d]efendants' continued investment in BLMIS, the investment manager of the [d]efendant funds reaped massive fees, in excess of hundreds of millions of dollars, purportedly for investment performance which has proven to be nothing but fiction").

[8] SIPA's definition of "security" includes "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate . . . any . . . certificate of interest or participation in[,] . . . temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase or sell any of the foregoing, and any other instrument commonly known as a security." 15 U.S.C. § 78lll(14).

disputed by the Trustee. The fact that Claimant entrusted its cash or securities to the Defendant by way of an agent is irrelevant to Claimant's status as a customer.

22.     Whether a claimant is a "customer" does not depend upon whom he or she or it handed her cash or made her check payable, or even where the funds were initially deposited. *Focht v. Heebner (In re Old Naples Secs., Inc.)*, 223 F.3d 1296, 1302-1303 (11th Cir. 2000). Instead, the issue depends upon whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *Id.* (internal quotations omitted but see cites to supporting cases). Here, Claimant can show that there was "actual receipt, acquisition or possession" of its property by the Debtor. Thus, Claimant falls within 15 U.S.C. § 78lll under the plain reading of the statute, and the Claim should be allowed as a customer claim for purposes of SIPA.

23.     Equitable considerations also support granting Claimant "customer" status. As noted above, it has been widely reported that BLMIS commonly used feeder funds like the Fairfield Entities to attract new investors to continue his fraud. *See, e.g.*, Alistair Barr, *Madoff's Rise Fueled by Leverage, Controversial Fees*, MARKETWATCH, Dec. 18, 2008, *available at* http://www.marketwatch.com/story/madoffs-rise-fueled-by-leverage-controversial-fees. Because Claimant bears the ultimate loss in this SIPC Liquidation of the Ponzi scheme perpetrated by the Defendant, there is no substantive difference between those investors who gave the Defendant their funds directly or investors like Claimant who were defrauded via an agent, particularly if there is evidence that agent knew or should have known about the fraud.

24. In fact, the Trustee has initiated an adversary proceeding against the Fairfield Entities alleging that the Fairfield Entities may have colluded with BLMIS to perpetrate fraud on Claimant and others. *See* Complaint against Fairfield Sentry Limited, Greenwich Sentry, L.P., Greenwich Sentry Partners, L.P., filed by Trustee Irving Picard in *Picard v. Fairfield Sentry Limited*, Adv. Proc. No. 09-01239 (Bankr. S.D.N.Y May 18, 2009). To the extent it is established that the Fairfield Entities knew or should have known of the Ponzi scheme, and were acting as instrumentalities of the Defendant's fraud, it becomes even more clear that Claimant should be treated exactly the same as those that invested directly with the Defendant.

25. That mere labels should not determine the "customer" status is further supported by the realities of the securities market, in which many securities transactions are held in "street names" or via mere book-entries. The fact that there is no direct statement from the Defendant to Claimant is, thus, of no significance. More complicated financial transactions like repos and reverse repos have been given "customer" status. *See, e.g., Cohen v. Army Moral Support Fund (In re Bevill, Bresler & Schulman Asset Mgmt Corp.)*, 67 B.R. 557 (D.N.J. 1986).

26. Here, Claimant trusted the market and the Defendant and, as a result, Claimant has suffered direct financial losses. Those losses are no less real merely because Claimant did not directly send the Defendant its property. The fact remains that Claimant's money still ended with the Debtor in its Ponzi scheme. Equity demands that Claimant receive protection that is equal to that given to the Defendant's other investors. Notably, this position was espoused by numerous experts testifying at a recent hearing of the House Financial Service Committee's Subcommittee on Capital Markets, Insurance,

and Government Sponsored Enterprises that was held for the purpose of reviewing the application of SIPA in the aftermath of the Madoff Ponzi scheme and to consider certain potential reforms to SIPA contemplated by the "Wall Street Reform and Consumer Protection Act" bill that is currently in front of the House of Representatives.[9]

### Reservation of Rights

27.   Claimant joins in the objections of other claimants in the same position and reserves all rights with respect to the Claim, including the right to amend, alter, revise or supplement this Objection, and any failure to object on a particular procedural or substantive ground shall not be deemed a waiver of any such rights.  Claimant further reserves its right to respond to the Trustee and, to the extent it deems necessary, to file a supplemental memorandum of law.

28.   Claimant reserves all rights under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, all rights of discovery.

### Relief Requested

29.   For the reasons stated, the Court should find that Claimant is a customer of the Defendant within the definition of 15 U.S.C. § 78lll(2).

---

[9] *See* prepared testimony and printed version of hearing, "Additional Reforms to the Securities Investor Protection Act," held December 9, 2009, *available at* http://www.house.gov/apps/list/hearing/financialsvcs_dem/CMHR_120909.shtml.

Dated:  January 7, 2010

                    Respectfully submitted,

                     /s/ Karen Ostad
                    MORRISON & FOERSTER LLP
                    Karen Ostad, Esq.
                    Michael Miller, Esq.
                    Erica Richards, Esq.
                    1290 Avenue of the Americas
                    New York, New York 10104
                    Telephone: (212) 468-8000
                    Facsimile: (212) 468-7900
                    Email:  KOstad@mofo.com
                              MBMiller@mofo.com
                              ERichards@mofo.com

                    *Attorneys for*
                        *Inversiones Lutimo S.I.C.A.V., S.A.*