THE JACOBS LAW GROUP P.C.
Neal A. Jacobs, Esquire
Gene M. Linkmeyer, Esquire
Matthew Cole, Esquire (N.Y. ID # 2670669)
Kimber P. Schladweiler, Esquire
2005 Market Street, Suite 1120
One Commerce Square
Philadelphia, PA 19103
Telephone: (215) 569-9701
Facsimile: (215) 569-9788

*Attorneys for Claimant Jordan Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                  Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>                  Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Consolidated Proceeding) |

**REPLY IN OPPOSITION TO TRUSTEE'S MOTION TO AFFIRM**
**TRUSTEE'S DETERMINATIONS DENYING CLAIMS OF CLAIMANTS**
**WITHOUT BLMIS ACCOUNTS IN THEIR NAMES**

Jordan Group, LLC ("Jordan"), by and through its attorneys, submits this reply memorandum of law in opposition to the Trustee's Motion to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds.

## FACTS AND PROCEDURAL BACKGROUND

### A. Procedural Background

On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by the FBI and was criminally charged with a multi-billion dollar securities fraud scheme, perpetrated through Bernard L. Madoff Investment Securities, LLC ("BLMIS" or the "Debtor").

On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against Madoff and BLMIS in the U.S.D.C. for the S.D.N.Y. alleging the defendants engaged in fraud through the investment advisor activities of BLMIS.

On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application, and a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa – 78*lll*, with respect to BLMIS, the Debtor. *See* Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving H. Picard, Trustee of the Bankruptcy Estates of Madoff and BLMIS was also appointed as SIPA trustee (the "Trustee/Debtor") to liquidate the Debtor's assets and process customer claims pursuant to SIPA.

On or about June 22, 2009, Jordan submitted a timely Claim in the amount of $1,055,554 to the Trustee/Debtor, asserting that the Claim is entitled to "customer" status under SIPA. Exhibit A (Claim).

On December, 8, 2009, the Trustee/Debtor served a Determination Notice upon Jordan denying the Claim, stating that "[Jordan] did not have an account with BLMIS. Because [Jordan] did not have an account, you are not a customer of BLMIS as that term is defined at 15 U.S.C. § 78*lll*(2)." Exhibit B (Determination Notice).

B.   **Customer's Investment in BLMIS Through Beacon Associates I, LLC**

Jordan's Claim arises from its investment in BLMIS through its deposit of funds with Beacon Associates, LLC I ("Beacon").

On or about June 1, 2003, Jordan opened a capital account with the Beacon with an initial cash deposit in the amount of $250,000. Jordan made subsequent deposits of $400,000 on or about October 1, 2006, and $700,000 on or about September 1, 2008. Exhibit C (Beacon Confirmation Letters). As of October 1, 2008, the value of the Jordan's Capital Account with the Fund had a value of $1,468,981.65, with seventy-four percent (74%) of the account held as a direct investment in BLMIS, the Debtor. Exhibit D (Beacon Associates LLC I Statement of Capital Account (Unaudited)).

The disclosed investment strategy of Beacon was to invest between 70% to 75% of the Jordan's deposited funds directly with BLMIS, the Debtor, to take advantage of the split-strike conversion strategy utilized by Madoff, purportedly entailing the purchase of 35-50 large capitalization stocks from the S&P 500 Index and the simultaneous sale of out-of-the-money calls and the purchase of out-of-the-money puts on the S&P 100 Index using Madoff's proprietary system. Exhibit E, pp. 4, 14 (Beacon Offering Memorandum). Thus, Jordan's intention and expectation was that cash deposited with the Fund would be deposited with BLMIS, the Debtor, for the purchase of securities. *See* Ex. 12 to Declaration of David J. Sheehan in Support of Trustees Motion, p. 62-64.

Beacon acted as an agent for BLMIS, the Debtor, advertising to potential investors the track record of BLMIS returns, and seeking money for placement with BLMIS. Id. Beacon "sold" BLMIS as an investment, and represented to Jordan that 70% to 75% of its deposited funds would be directly deposited with the Debtor, for investment in "securities" as defined by

3

SIPA (15 U.S.C. § 78*lll* (14)). At least 74% of Jordan's investment was in fact deposited directly with BLMIS, the Debtor, by Beacon. *See* Exhibit C, p. 2. When Jordan requested a withdrawal of funds from Beacon, Beacon requested the withdrawal of funds from BLMIS.

Accordingly, Jordan is a "customer" of BLMIS, the Debtor, as defined by SIPA, 15 U.S.C. § 78*lll* (2).

## ARGUMENT

### A.   The "Customers" protected by SIPA are Defined by the Statute, Not the Debtor.

The definition of "customer" status advanced by the Trustee/Debtor and SIPC are not found in SIPA. Further, the Trustee and SIPC further make assertions that are entirely unsupported by actual facts.

In arguing that individuals and entities who invested in BLMIS through feeder funds are not considered "customers" under SIPA, the movant does his best to make a square peg fit into a round hole. In their briefs, the Trustee/Debtor and SIPC twist prior decisions by the courts and actions of Congress, attempting to apply them to present facts that were not and could not have been, either anticipated or intended in their time. The argument that Jordan is not a "customer" of BLMIS under SIPA because it invested through a feeder fund is simply not found in the SIPA statute, nor mandated by prior judicial decisions applying SIPA's definition of "customer" to the facts before them.

In reality, claimants like Jordan who invested in BLMIS through feeder funds clearly meet SIPA's definition of "customer" under 15 U.S.C. § 78*lll*(2), and must be granted customer status with respect to BLMIS under the present facts if SIPA's legislative intent of protecting small investors and ensuring investor confidence in securities markets is to be effectuated.

Under SIPA, a "customer" of a debtor is:

4

> [A]ny person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

Id. Further, the definition includes "any person who has deposited cash with the debtor for the purpose of purchasing securities ..." Id. A claimant is a "customer" protected by SIPA to the extent the claimant deposited cash or securities "with the debtor." Id.

The broad language of the statute's definition of "customer" does not mandate that a customer must *directly* deal with or *directly* deposit cash with the debtor. Nor does the statute require that an investor have an account directly with the debtor to be a "customer." In re First State Securities Corp., 34 B.R. 492, 495-496 (Bankr. Ct. S.D. Fla 1980) (holding that claimants were "customers" of debtor where claimants' accounts were held not with debtor but with third-party broker). Thus the entire basis for the Trustee's denial of Jordan's claim is not found in SIPA.

In fact, SIPA explicitly protects by its terms indirect investors. Section 78fff-3(a)(5) allows a SIPC Trustee to advance funds to brokers, dealers, and banks customers of the debtor where their claims arose out of transactions for their own customers who were not brokers, dealers or banks and were not customers of the debtor. 15 U.S.C. § 78fff-3(a)(5). In such cases, each "customer of such broker or dealer or bank *shall be deemed a separate customer of the debtor*." Id. (emphasis added).

Nothing in the statute's definition of "customer" excludes investors who deposited funds with the debtor through a feeder fund. The definition of "customer" on which the Trustee relies that excludes investors in feeder funds comes not from the SIPA statute, but from a decision and

5

its progeny interpreting different facts and different market realities — SIPC v. Morgan Kennedy & Co., Inc., 533 F.2d 1314, 1316 (2d Cir. 1976).

Morgan Kennedy involved a *trust account* created pursuant to an employer's profit sharing plan. Id. Employees who were eligible for profit sharing were given credits (*i.e.* a percentage interest in the fund's assets), in proportion to the employee's annual compensation and years of service. Id. Contributions to the fund were made by the employer, not the individual employees (a/k/a the investor, or purported "customer"), and the employees had no intention or expectation that the funds would be deposited with the debtor. Id. at 1318. The employees did not even know who the debtor was at the time of the deposits.

None of these facts, or even relevant parallel facts, are present here. There is no blind trust here; Jordan made its own deposits of its own funds; Jordan knew its deposits were going to the Debtor; and Jordan knew who the Debtor was at the time of the deposits. *See* Exhibit C, p. 2.

On other facts, however, Morgan Kennedy court acknowledged that the "status of *trust* beneficiaries is not dealt with specifically in either [15 U.S.C. § 78*lll*(2)] or elsewhere in the statute[,]" id. at 1317 (emphasis added), and so the Second Circuit found that that the employees were *beneficiaries* of a trust, *not investors* (i.e., not the "customers"). The funds in the account came from the employer and the decision to invest those funds with the debtor was made by the fund's trustees, not the purported customers. Id. None of these facts are present today, and accordingly, Morgan Kennedy is simply inapposite.

Moreover, at the time of the Morgan Kennedy decision, 34 years ago, there were no "feeder funds" in existence like those in which Jordan invested. Moreover, the employees in Morgan Kennedy were *beneficiaries* of a trust account which is fundamentally different from deposits with feeder funds to BLMIS, like Jordan, whose deposits were made with the intent that

6

they be placed with the Debtor (and, in fact, which were placed with the debtor). Unlike Jordan, the beneficiaries in Morgan Kennedy were not investors in that they did not deposit any cash or securities with the debtor through the trust, and lacked any specific intention to do so, and did not even know where the funds were going. Id. at 533 F.2d 1315. The status of the beneficiaries in Morgan Kennedy stands in stark contrast to that of Jordan, who deposited cash into a feeder fund with both the intention and expectation that it would subsequently be deposited directly with BLMIS for investment in the securities markets.

The other decision on which the Trustee and SIPC base their constrained definition of "customer," is the unreported decision in In re First Ohio Secs. Co., 1994 WL 599433 *1 (6th Cir. 1994).[1] Here, the court extended Morgan Kennedy to an employee benefit fund where the employees *had* contributed to the investment fund. Id. While the Trustee and SIPC argue that First Ohio is further precedent for a definition of "customer" under SIPA which excludes investors in feeder funds, in fact, that case is also inapposite.

The employee contributors to the fund in First Ohio did *not* contribute to the fund for the express purpose of making an investment with the debtor. Id. Jordan did deposit cash with Beacon with the express purpose of delivering cash to BLMIS for investment in the securities markets. *See* Ex. 12 to Declaration of David J. Sheehan in Support of Trustees Motion, p. 62-64. Beacon was in fact sold as BLMIS investment vehicle. Id. Thus, contrary to the assertions of the Trustee and SIPC, in electing to deposit cash with Beacon, Jordan made an intentional investment decision to entrust cash with BLMIS for the purposes of investing or trading in securities. Id.

---

[1] SEC counsel for In re First Ohio Secs. Co., is now SEC General Counsel for the current matter. Decl. Christopher Larose, Ex. 1, p. 18 ("Josephine Wang"). It is likely that but for this personal remembrance, the case would have lacked any citation here.

7

The position of the Trustee and SIPC is particularly egregious given that it was the Debtor himself who precluded smaller investors from opening individual accounts at BLMIS. In order to maintain the required influx of large amounts of cash, BLMIS refused direct investment by smaller investors, demanding the pooling of money through an intermediate source, thereby ensuring that the majority of investors were *only* able to deposit cash for investment with BLMIS through feeder funds. *See* Memorandum of Law in Support of Trustee's Motion ("Trustee's Br.") at p. 5. The Debtor consciously created the feeder funds in order to pool his customers' deposits, while accepting their individual assets.

Further, the facts make clear that Beacon, as a "direct" customer of BLMIS, was merely an agent of BLMIS, soliciting and directing funds to BLMIS, but exercising no more control over the invested assets than Jordan. Once cash was deposited with BLMIS, all control was ceded to the Debtor.

**B.    Congress Intended with SIPA to Protect Smaller Individual Investors Like Jordan.**

Denying Jordan's Claim "customer" status is inconsistent with SIPA and the legislative intent embodied by SIPA.

The primary purpose of SIPA is "to provide protection for investors if the broker-dealer with whom they are doing business encounters financial troubles." H.R. Rep. No. 91-1613, at 1 (1970), as reprinted in 197- U.S.C.C.A.N. 5254, 5255. Congress enacted SIPA to "protect individual investors from financial hardship, insulate the economy from the disruption which can follow the failure of major financial institutions, and to maintain public confidence in capital markets." *See* Bevill, Bresler & Schulman Asset Mgnt. Corp., 67 B.R. 557, 602 (D.N.J. 1986). The Second Circuit has observed that SIPA's legislative history uses the term "'investors' ... synonymously with 'customers,' indicating that, in the eyes of Congress, [SIPA] would protect

8

capital markets by instilling confidence" in investors. SIPC v. Morgan, Kennedy & Co., 533 F.2d 1314, 1317 (2d Cir. 1976).

Under SIPA, the protection afforded to customers of the debtor is limited. Congress deliberately selected the maximum recovery amounts under § 78fff-3(a) with the intent of fully protecting the small investor only. *See*, Hearings on S.2348, S.2988, S.2989 before the Subcommittee on Securities of the Senate Committee on Banking and Currency, 91st Cong., 2d Sess., 1 (1970). It is clear that SIPA was designed to give maximum coverage to the small investor like Jordan rather than to large institutional accounts.

Further, it is clear that Congress intended for the term "customer" be interpreted broadly to protect investors like Jordan. A prior draft of the bill provided no entitlement to SIPC insurance for any customer whose name of interest was not disclosed on the records of the broker dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured liability in such closed broker dealer." S. 2348, 91st Cong. Section 7(d) (June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug. 4, 1969). This provision was rejected and dropped from the final bill. Given the realities of the today's securities markets which led to the scenario before the court, a definition of "customer" which excludes investors through a feeder fund does violence to the very purposes of SIPA.

Jordan's status as "customer" of the debtor under SIPA through investment in a feeder fund is also entirely consistent with prior case law holding that the question of whether a claimant deposited funds "with the debtor" does not depend simply on to whom a claimant handed the cash or made their checks payable, or even where the funds were initially deposited.

In In re Old Naples Sec., Inc., 223 F.3d 1296 (11th Cir. 2000), the debtor, Old Naples Securities, Inc., had instructed investors to wire money to Old Naples Financial Services, Inc.

9

("ONFS"). Id. at 1301. Although owned by the same individual, ONFS was an entirely different entity from the debtor, and was not a registered securities broker or member of SIPC. Id. at 1299-1300. When the owner of the two companies stole investors' money in a Ponzi scheme, the 11th Circuit Court of Appeals, held that the investors were customers of the debtor, even though they had deposited funds with a third party. Id. at 1303. Like Jordan, the investors in In re Old Naples Sec. were aware that they were directing funds to a third party, but understood that those funds were to be deposited with the debtor for investment. Id. at 1301.

As the court in In Re Old Naples agreed, whether a claimant deposited funds "with the debtor" is a question of whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." In re Stalvey, 750 F.2d at 469 (*quoting* SEC v. Kenneth Bove & Co., 378 F. Supp. 697, 700 (S.D.N.Y.1974)). As in In re Old Naples Sec., although Jordan initially deposited cash with Beacon, the facts are undisputed that Beacon then deposited the bulk of Jordan's funds with BLMIS, and that BLMIS had actual receipt, possession and control of the Customer's funds.

A number of courts have construed a claimant's status as a customer as dependent upon whether the claimant entrusted cash or securities to the broker-dealer debtor. *See, e.g.,* SIPC v. Executive Sec. Corp., 556 F.2d 98, 99 (2d Cir. 1996). Here, Jordan deposited cash with Beacon, which represented that it intended to deposit at least 75% of Jordan's funds with BLMIS, the Jordan clearly had the reasonable expectation that it was entrusting its cash to the Debtor through Beacon as the Debtor's agent. In fact, Jordans' cash was entrusted to the Debtor who had actual receipt, possession and control of Jordan's funds.

Beacon promoted and sold BLMIS, representing that an investment in its fund was an investment with BLMIS. Jordan believed it was investing in BLMIS, the Debtor, by entrusting

its cash to Beacon, an agent for BLMIS, the Debtor. Jordan entrusted cash to BLMIS, the Debtor, by transacting with Beacon as an agent for the Debtor, and therefore is a customer of BLMIS, the Debtor, as the term is defined by SIPA. 15 U.S.C. § 78*lll*(2).

Additionally, Jordan adopts and incorporates herein, to the extent applicable, the arguments and facts of similarly situated claimants in the above captioned proceeding as if fully set forth herein.

WHEREFORE, for all of the reasons stated herein, the Claim should be allowed in its entirety as a customer claim for the purposes of SIPA and the Court should direct SIPA to issue immediate payment to Jordan Group, LLC in the amount of $500,000, plus interest from the date of the Determination Notice, and such equitable relief as the Court deems appropriate.

Dated: New York, New York
July 12, 2010

Respectfully submitted,

JACOBS LAW GROUP, P.C.

By: _/s/ Kimber P. Schladweiler_
Neal A. Jacobs, Esquire
Gene M. Linkmeyer, Esquire
Matthew Cole, Esquire (N.Y. ID # 2670669)
Kimber P. Schladweiler, Esquire
2005 Market Street, Suite 1120
One Commerce Square
Philadelphia, PA 19103
(215) 569-9701
(215) 569-9788 (Fax)

*Attorneys for Claimant Jordan Group, LLC*