# EXHIBIT E

# BEACON ASSOCIATES LLC I

## CONFIDENTIAL OFFERING MEMORANDUM

| | |
|---|---|
| **Company:** | Beacon Associates LLC I |
| **Securities Offered:** | Limited Liability Company Interests |
| **Minimum Initial Purchase:** | $500,000 |
| **Investment Objective:** | To provide above average rates of return while attempting to minimize risk by utilizing trading and investment strategies, both directly and indirectly, including through other investment pools. |

\* \* \*

THIS OFFERING IS NOT A PUBLIC OFFERING. THESE SECURITIES HAVE NOT BEEN REGISTERED OR QUALIFIED WITH, NOR APPROVED OR DISAPPROVED BY, THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE COMMODITY FUTURES TRADING COMMISSION ("CFTC") OR ANY STATE REGULATORY AUTHORITY, NOR HAS THE SEC, THE CFTC OR ANY REGULATORY AUTHORITY DETERMINED IF THIS CONFIDENTIAL OFFERING MEMORANDUM IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

\* \* \*

THIS CONFIDENTIAL OFFERING MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT LAWFUL, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO

\* \* \*

August 9, 2004

Book No.                      Name of Offeree

Interests in Beacon Associates LLC I (the "Company") will be issued only on the basis of the information and representations contained in this Confidential Offering Memorandum and its exhibits (collectively, "Memorandum"), and no other information or representation has been authorized.

Any purchase made by any person on the basis of statements or representations not contained in, or inconsistent with, information herein shall be solely at the risk of the purchaser. Neither delivery of this Memorandum nor anything stated herein should be taken to imply that any information herein is correct as of any time subsequent to the date hereof.

This Memorandum constitutes an offer only if the name of an offeree appears in the appropriate space provided on the prior page of this Memorandum and only if delivery of this Memorandum is properly authorized by the Company. This Memorandum has been prepared by the Company solely for the benefit of qualified persons, and any reproduction of this Memorandum, in whole or in part, or the divulgence of any of its contents, without the prior written consent of the Company is prohibited.

FOR GEORGIA RESIDENTS ONLY: THESE SECURITIES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE "GEORGIA SECURITIES ACT OF 1973" AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

FOR FLORIDA RESIDENTS ONLY: PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN FLORIDA, ANY FLORIDA INVESTOR MAY, AT HIS OPTION, WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE HEREUNDER WITHIN A PERIOD OF THREE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE COMPANY, AN AGENT OF THE COMPANY OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS HIS EXECUTED SUBSCRIPTION AGREEMENT OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

The Interests have not been registered under the United States Securities Act of 1933 and are being offered as a private placement under Rule 506 thereunder. The Company is not a registered investment company under the Investment Company Act of 1940 in reliance on Rule 3(c)(7) thereunder.

DO NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL OR TAX ADVICE.

IF YOU ARE IN ANY DOUBT ABOUT THE CONTENTS OF THIS MEMORANDUM, YOU SHOULD CONSULT YOUR FINANCIAL OR LEGAL ADVISOR(S).

THE INTERESTS ARE SPECULATIVE SECURITIES. THE VALUE OF THE INTERESTS MAY GO DOWN AS WELL AS UP.

| Contents | Page |
| --- | --- |
| CFTC Exemption | ii |
| Summary | 1 |
| Investment Objectives and Strategies | 10 |
| Risk Factors | 14 |
| The Company and its Management | 25 |
| Conflicts of Interest | 28 |
| Fees and Expenses | 29 |
| Offering of Interests | 30 |
| Suitability Requirements and Offering Limitations | 32 |
| Terms of the LLC Agreement | 34 |
| Employee Benefit Plan Considerations | 38 |
| Income Tax Considerations | 42 |
| Reports and Other Information | 46 |

**Exhibits**

| | |
| --- | --- |
| Form of Limited Liability Company Agreement | Exhibit A |
| Privacy Notice | Exhibit P |
| Form of Subscription Documents | Exhibit S |

## CFTC EXEMPTION

PURSUANT TO AN EXEMPTION UNDER COMMODITY FUTURES TRADING COMMISSION ("CFTC") REGULATIONS, NEITHER THE MANAGING MEMBER NOR ANY OTHER PERSON IS REQUIRED TO REGISTER WITH THE CFTC AS A COMMODITY POOL OPERATOR ("CPO") IN CONNECTION WITH THE OPERATION OF THE COMPANY. AS A RESULT, UNLIKE A POOL WHICH IS REQUIRED TO HAVE A REGISTERED CPO, THE MANAGING MEMBER WILL NOT BE REQUIRED TO DELIVER A DISCLOSURE DOCUMENT (CONTAINING CERTAIN CFTC PRESCRIBED DISCLOSURE) AND A CERTIFIED ANNUAL REPORT TO THE COMPANY'S INVESTORS. A CLAIM OF EXEMPTION HAS BEEN FILED EFFECTUATING THIS EXEMPTION.

THE MANAGING MEMBER'S ELIGIBILITY FOR SUCH REGISTRATION EXEMPTION IS SET FORTH IN SECTION 4.13(a)(4) OF THE CFTC'S REGULATIONS AND IS BASED ON THE FACT THAT (I) THE OFFER AND SALE OF THE COMPANY'S INTERESTS ARE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND (II) PARTICIPANTS IN THE COMPANY ARE LIMITED TO "QUALIFIED PURCHASERS" AND "KNOWLEDGEABLE EMPLOYEES".

\* \* \*

# SUMMARY

This Summary is qualified in its entirety by the more detailed information appearing elsewhere in this Memorandum, including in the Limited Liability Company Agreement (the "**LLC Agreement**") and the Subscription Agreement appearing as Exhibits A and S, respectively.

**The Company**   Beacon Associates LLC I (the "**Company**") is a New York limited liability company.

**Managing Member**   Beacon Associates Management Corp. (the "**Managing Member**"), a New York corporation, is the managing member of the Company. The Managing Member makes all investment allocation and reallocation decisions on behalf of the Company. The Managing Member also administers the business and affairs of the Company. The Managing Member is wholly owned by Joel Danziger, Esq., Harris Markhoff, Esq., and their immediate families.

**Investment Objective and Strategies**

<u>Objective</u>. The Company employs trading and investment strategies, both directly and indirectly, including through other investment pools, with the objective of providing above-average rates of return, while attempting to minimize risk.

<u>Strategies</u>. The Company has flexibility to make a broad range of investments, to act opportunistically, and to employ several investment strategies, including, but not limited to, securities strategies involving stocks, (common and preferred), bonds, (corporate and government), stock and index options, and other financial (including derivative) instruments and forward contracts, as well as strategies involving futures contracts and options thereon, and rights and interests pertaining thereto.

<u>Asset Allocation</u>. A significant portion of the Company's assets are allocated to a strategy adopted by the Managing Member involving a portfolio of Large Cap Stocks hedged with options ("**Large Cap Strategy**"). The balance of the Company's assets are allocated among independent investment managers ("**Managers**") indirectly through investment in other investment funds ("**Investment Pools**") which the Managers manage. The Company has not invested, and has no current intention of investing, in any foreign Investment Pools. The Company's assets are allocated and reallocated among strategies and to and

1

08-01789-cgm    Doc 2631-5    Filed 07/12/10    Entered 07/12/10 17:36:55    Exhibit E
                                    Pg 6 of 17

|  | from Managers by the Managing Member, following consultation by the Managing Member with Ivy Asset Management Corp. (the "**Investment Consultant**") and the Managing Member's Advisory Board. |
|---|---|
|  | **Current Manager Allocation.**  As of the date of this Memorandum, in addition to the Large Cap Strategy, the Company utilizes four Managers which manage the balance of the Company's assets through four separate Investment Pools. |
|  | **There is no assurance that the Company's trading objectives and strategies will be implemented successfully.  An investment in the Company involves a high degree of risk.** |
| **Use of Margin** | The Large Cap Strategy does not utilize leverage. However, margin may be used by the Managers to attempt to increase returns in accordance with applicable regulatory guidelines. |
| **Manager Selection** | Both quantitative and qualitative criteria are factored into the evaluation of Managers, including analyses of: type of trading program; risk control; duration and speed of recovery from drawdowns; experience; organizational infrastructure; and degree of correlation with traditional investments indices. |
|  | Analysis of the performance records of existing and prospective Managers is combined with evaluation of a number of less tangible qualitative factors in an effort to identify Managers who have a low degree of cross-correlation with each other and whose collective trading results have historically demonstrated substantial returns while making use of various hedging techniques in an attempt to limit risk. |
| **Investment Powers and Restrictions** | Except with respect to the trading of futures contracts, the Managing Member is not bound by any fixed guidelines in allocating the Company's assets.  Specific positions and the identity of the Managers will not be disclosed except as required by law or by financial reporting rules. Each Manager determines the extent to which the assets allocated to it are invested. The Company will not allocate more than 50% of its net assets to Investment Pools which trade futures contracts.  The Company does not allocate any assets to Managers engaged in market timing of mutual fund shares, and has no intention to do so. All funds received by the Company will be maintained in the Company's name. |
| **Investment Consultant** | Pursuant to an agreement between the Managing Member and Ivy Asset Management Corp., a Delaware corporation, ("**Investment Consultant**"), the Investment Consultant provides advice to the Managing Member with respect to Manager selection and allocation of the Company's assets among |

2

|  |  |
|---|---|
|  | Managers and Investment Pools, and also provides certain administrative and accounting services to the Managing Member. The Investment Consultant does not have any discretion to invest or allocate the Company's assets. All investment and allocation decisions are made in the sole discretion of the Managing Member. The Investment Consultant is registered as an Investment Adviser under the Investment Advisers Act of 1940 (the "**Advisers Act**") and as a commodity trading adviser ("**CTA**") under the Commodity Exchange Act, as amended (the "**CE Act**"). |
| **Conflicts of Interest** | Various conflicts of interest exist. Subscribers are directed to the section entitled "Conflicts of Interest" for this discussion. |
| **Risk Factors** | Subscribers are directed to the section entitled "Risk Factors" for a more detailed discussion of the various risks of this investment. Some of the more important risks are as follows:<br><br>• The Company is dependent on the judgment and abilities of the Managing Member and of the Managers for its success.<br><br>• Investments in the securities and futures markets are speculative, volatile, and carry a high degree of risk.<br><br>• The Company's ability to leverage its investments is likely to amplify its net profits and losses.<br><br>• Hedging strategies that do not correlate well with Company investments may increase losses.<br><br>• The Company is not diversified in its investments and currently allocates a substantial portion of its assets to a single strategy adopted by the Managing Member.<br><br>• You will not be able to participate in the management or control of the Company and will have limited voting rights.<br><br>• Your Interest in the Company will be illiquid because it is not readily saleable, transfers and assignments must be approved by the Managing Member, and withdrawals are permitted only at the end of each quarter upon 60 days' notice.<br><br>• You will be taxed on your share of the Company's taxable income whether or not any cash is distributed to you. |
| **Securities Offered** | Limited Liability Company Interests in the Company (inclusive of Membership Economic Interests) (collectively referred to as the "**Interests**" unless the context otherwise requires) are being continually offered on a monthly basis. Only subscribers or their |

3

representatives who are well known to the Managing Member, the Investment Consultant, or their principals will be admitted as Members. All proceeds received in connection with subscriptions will be held by the Company in an interest-bearing account until invested. All interest earned on subscription funds will belong to the Company.

**Membership Status**

If you are accepted as a subscriber, you will be admitted to the Company as a Member on the first day of a month, or at such other time as the Managing Member, in its discretion, may determine. Interests will be valued at their Net Worth at the close of business on the last business day preceding your admission date.

**Minimum Investment**

Your minimum initial investment must be at least $500,000, unless the Managing Member, in its discretion, determines that a lower amount is acceptable. No selling commissions are being charged. Contributions must be in cash.

**Additional Capital Contributions**

If you are an existing Member, you may make additional investments in $25,000 increments on the first day of any month, or in such other amounts or at such other times as the Managing Member, in its discretion, may determine. Additional contributions must be in cash.

**Suitability**

This offering is being made pursuant to:

- Rule 506 of Regulation D under the Securities Act of 1933 (the "**1933 Act**"), which exempts non-public offerings of securities from registration with the SEC;

- Section 3(c)(7) of the Investment Company Act of 1940 (the "**1940 Act**"), which requires that Company investors qualify as "Qualified Purchasers" (see below); and

- Rule 4.13(a)(4) of the CFTC's Regulations.

This offering is exclusively for investors who qualify as "Accredited Investors" under Regulation D and "Qualified Purchasers" under Section 2(a)(51)(A) of the 1940 Act. The categories of "Accredited Investor" and "Qualified Purchaser" are set forth in the Subscription Documents appearing as Exhibit S to this Memorandum.

You should view an investment in the Company within the context of your overall investment strategy. It is recommended that you invest funds in the Company which are earmarked for intermediate to longer-term investment.

An investment in the Company is suitable for you only if you

4

have adequate means of providing for your current needs and personal contingencies and have no need for liquidity in this investment. An investment in the Company should not be made by you if (i) you cannot afford a loss of principal, or (ii) you have not carefully read, or do not understand, the terms of this offering.

This offering is not suitable for you if you are a charitable remainder trust. If you are a retirement plan you should pay careful attention to the sections of this Memorandum entitled "Employment Benefit Plan Considerations" and "Income Tax Considerations."

**The Managing Member, in its discretion, may decline to admit you as a Member for any reason.**

**Use of Proceeds**

The net proceeds of this offering will be used as investment capital in the ordinary course of the Company's investment activities.

**Liability**

You will not generally be liable for obligations of the Company in excess of your capital contribution(s).

**Allocation of Profits and Losses**

Net profits and net losses generally will be allocated for financial and tax purposes to your Capital Account in the proportion that your Capital Account bears to all other Capital Accounts on the last day of each applicable accounting period. Your Capital Account balance will be equal to your proportionate share of the Net Worth of the Company, and is referred to as your "Interest" in the Company. Pursuant to the LLC Agreement, 1% of each year's net profits are allocated to the Managing Member without regard to net profits or net losses for any other year. Each Member also will have a tax capital account for income tax purposes.

**Expenses**

<u>Ongoing Costs and Expenses</u>. The Company bears all (i) transaction costs and investment related expenses incurred in connection with its trading activities, including brokerage, broker-dealer markups, clearing, margin interest, and custodial expenses (both direct and indirect), (ii) routine legal, accounting, auditing, tax preparation, and related fees and expenses, (iii) expenses associated with the continued offering of Interests, (iv) extraordinary expenses (e.g., litigation costs and indemnification obligations), if any, (v) the Company's proportionate share of the expenses of any Investment Pool in which it invests which are not otherwise enumerated, including advisory fees to Managers, and (vi) the Managing Member fees described below.

<u>Overhead Expenses</u>. The Company also pays for all customary direct and indirect overhead and operating expenses incurred in

5

| | |
|---|---|
| | the Managing Member's operation of the Company in an amount not to exceed one percent (1%) per annum of the Company's Net Worth (the "**1% Limit**"), as adjusted for withdrawals, new admissions or additional contributions of Members. The Company will reimburse the Managing Member for all such costs up to the 1% Limit to the extent the Managing Member advances them. The Managing Member will be responsible for all of its overhead and operating costs in excess of the 1% Limit. |
| **Managing Member Fees** | On or before the end of each month, a management fee on account of such month is paid to the Managing Member as compensation for services rendered in an amount equal to 1/8 of 1% of the value of each Member's Capital Account at the end of the prior month (a 1½% annual rate). The Managing Member pays a portion of its fee to the Investment Consultant pursuant to an agreement between the parties for services rendered by the Investment Consultant to the Managing Member. |
| **Withdrawals** | Capital Account withdrawals may be made at the end of each calendar quarter (each, a "**Withdrawal Date**"). You must give the Managing Member at least 60 days' prior written notice before each withdrawal. The Managing Member may modify the foregoing withdrawal restrictions for hardship reasons or other good cause shown. Facsimile notice is acceptable to initiate your notice of withdrawal, but remittance of withdrawal payments to you will not be made until the Managing Member has received a manually executed withdrawal notification form from you in good order. |
| **Mandatory Withdrawals** | The Managing Member may, in its discretion, require your mandatory withdrawal from the Company, in whole or in part, upon prior written notice to you. |
| **Withdrawal Payments** | The Managing Member will attempt to distribute 90% of any amount withdrawn from your Capital Account within 90 days after a Withdrawal Date. The balance will be paid to you (without interest) within 30 days after receipt by the Company of the audited financial statements with respect to the year to which the withdrawal relates. Under extraordinary circumstances, the Managing Member may delay withdrawal payments to you until such time as the extraordinary circumstance no longer exists. Reserves also may be taken in appropriate circumstances until the Company's Net Worth can be confirmed. The Managing Member intends that payments to you with respect to withdrawals generally will be in cash. At the discretion of the Managing Member these payments also may be in kind, in whole or in part. However, except possibly in connection with the liquidation of the Company, the Managing Member does not intend to distribute any securities to any Member. |

6

| | |
|---|---|
| Distributions | Profits will be automatically reinvested, and distributions to you, if any, will be made only on a limited basis at the discretion of the Managing Member. No distributions are planned. To the extent that distributions are made, they will be allocated pursuant to the same formula as profits and losses. |
| Member Reports | Within 30 days after the end of each fiscal quarter, the Managing Member will mail to all Members an unaudited report relating to each Member's investment for the prior quarter. |
| | Within 120 days after the end of each year, the Managing Member will send each person who was a Member at any time during the year an audited annual financial statement of the Company. The Company also will send to each Member annual tax information for the preparation of such Member's income tax returns and any additional financial or other report that is required by any governmental or regulatory authority having jurisdiction over the affairs of the Company. |
| Assignability and Transferability of Interests | The assignability and transferability of the Interests is restricted. There will be no public or secondary market for the sale of the Interests. |
| Term | The Company will be terminated upon the happening of any of the following events (i) the withdrawal, removal, dissolution or bankruptcy of the Managing Member, unless a new managing member is substituted pursuant to the Company's LLC Agreement or another managing member exists at the time of the event, or (ii) the determination of the Managing Member. |
| Counsel | Katten Muchin Zavis Rosenman, New York, New York. |
| Auditors | Friedberg, Smith & Co., P.C., Bridgeport, Connecticut. |
| Federal Income Taxation | The Company expects to continue to be taxed as a partnership for federal income tax purposes. Each prospective investor should satisfy himself as to the income tax consequences of an investment in the Company with specific reference to his own tax situation by obtaining advice from his own tax counsel before purchasing an Interest in the Company. See "Income Tax Considerations." |
| Additional Information | You are invited to meet with the Managing Member for a further explanation of the terms and conditions of this offering of Interests. The Managing Member will provide you with any additional non-proprietary information that you may request to the extent the Managing Member possesses such information or can acquire it without unreasonable effort or expense. Requests for all non-proprietary information should be directed to Joel Danziger or Harris Markhoff at the office of the Managing |

7

|   |   |
|---|---|
|   | Member at 123 Main Street, Suite 900, White Plains, New York 10601; telephone (914) 948-1556; facsimile (914) 948-0051. |
| **Definition of Terms** | Various terms used in this Memorandum are defined in the LLC Agreement (Exhibit A hereto). Terms which are not defined have the same meanings given to them in the LLC Agreement. |
| **Use of this Memorandum** | This Memorandum is important, and should be read in its entirety, along with all the exhibits, before you decide whether to subscribe for an Interest in the Company. You should consult with your financial or legal advisors, as needed, before you make an investment decision. |
| **How to Subscribe** | ✓ If you are investing in the Company for the first time, you must review, complete and return all subscription documents to the Managing Member pursuant to the instructions set forth in Exhibit S. |
|   | ✓ If you are an existing Member of the Company seeking to add to your investment, you only need to complete, sign and return the one-page short-form subscription form appearing at the end of Exhibit S. |
|   | ✓ Subscription documents should be faxed to the Managing Member at (914) 948-0051 to begin the subscription process. An original of these documents should then be sent to the Managing Member at 123 Main Street, Suite 900, White Plains, New York 10601, Attention: Joel Danziger, together with your subscription payment to the extent it is not separately sent by wire transfer. |
|   | ✓ Subscription documents must be received and accepted by the Managing Member, and cleared subscription funds in the full amount of the subscription must be credited to the Company's account, before you will be admitted as a Member or, if you are an existing Member, before your additional investment becomes effective. |
|   | ✓ Neither the Company nor the Managing Member accepts any responsibility for errors in facsimile or other transmission of subscription documents or subscription funds. |
| **Anti-Money Laundering** | <u>Verification of Subscribers' Identities and Subscription Sources</u>. In order to comply with applicable U.S. anti-money laundering laws and regulations, as well as to implement the Company's anti-money laundering program, the Company will require a detailed verification of each subscriber's identity and the source of the funds for each subscriber's payment prior to the acceptance of a subscription and may require additional documentation at any time, including, but not limited to, upon a withdrawal and/or distribution. The amount of detail required |

8

| | |
|---|---|
| **Anti-Money Laundering (continued)** | will depend on the circumstances of each investor.

By way of example, an individual may be required to produce a copy of a passport, together with evidence of his/her address, date of birth and a letter of reference from a bank or attorney. If a subscriber is a corporate subscriber, the Company may require production of a certified copy of its certificate of incorporation (and any change of name), memorandum and articles of association (or equivalent), incumbency certificate, and the names, dates of birth, addresses, and passport information for its directors and/or officers. In addition, the Company may require similar detailed information for some or all beneficial owners and may require certain entity subscribers to certify as to their compliance with applicable anti-money laundering laws and regulations.

The details given above are by way of example only, and the Company reserves the right to request such information as it deems necessary to verify a subscriber's identity and the source of a subscriber's subscription payment, and/or to comply with applicable anti-money laundering laws and regulations. In the event of delay or failure by a subscriber to produce any information required for verification purposes, the Company may refuse to accept a subscriber's Subscription Documents and all subscription monies relating thereto, or may refuse to honor a withdrawal request until proper information has been provided by such subscriber.

**Suspicious Activities.** If the Company or the Managing Member has a suspicion that a payment to the Company (by way of subscription or otherwise) or a payment from the Company (by way of withdrawal or otherwise) contains the proceeds of criminal conduct, the Company or the Managing Member may report such suspicion to the appropriate authorities. Neither the Company, nor the Managing Member, nor any agent of the Company will incur any liability for adhering to the Company's responsibilities under its anti-money laundering program, and will be indemnified by the subscriber for any losses which the Company or the Managing Member and their principals or agents may incur for doing so.

**Prohibited Investors.** If the Company determines that any investor is a prohibited investor, the Company may, among other things, freeze that investor's assets in the Company and notify appropriate legal authorities. |

# INVESTMENT OBJECTIVES AND STRATEGIES

**Investment Process and Selection Methodology**

The Managing Member (after consultation with the Investment Consultant and the Managing Member's Advisory Board) allocates and reallocates the Company's assets. The Managing Member also reviews the Company's portfolio of investments on a regular basis.

The Managing Member is responsible for selecting the Company's strategies and for selecting the Managers and the Investment Pools they manage, and for monitoring the Company's performance and for monitoring the Managers' adherence to their stated investment strategies and objectives. Managers chosen by the Managing Member may employ investment strategies that include, without limitation, investing in, trading, buying (on margin or otherwise), selling (including short sales), and otherwise acquiring, holding, disposing of, and dealing in listed and unlisted, publicly- and privately-offered, securities.

Both quantitative and qualitative criteria are factored into the evaluation of Managers, including analyses of: type of trading program; risk control; duration and speed of recovery from drawdowns; experience; organizational infrastructure; and degree of correlation with traditional investments such as stocks and bonds.

Analysis of the performance records of existing and prospective Managers is combined with evaluation of a number of less tangible qualitative factors in an effort to identify Managers whose (i) collective trading results have historically demonstrated substantial returns, while making use of various hedging techniques in an attempt to limit risk and, (ii) strategies and/or investments which have a low degree of cross-correlation with each other and with the Managing Member's Large Cap Strategy.

The Managing Member cannot assure the Company's success or profitability. The success of the Company will depend upon a variety of factors, many of which are beyond the control of the Managing Member. The level of risk associated with the Company's investments will vary depending on a number of factors, including without limitation, the success of the strategy adopted by the Managing Member, the specific mix of Managers, their strategies at any particular time, and market conditions.

The Managing Member (after consulting with the Investment Consultant and the Managing Member's Advisory Board), selects strategies and Managers that are not generally available to the investing public (the access to which and whom might otherwise be limited or unavailable), and in the case of Managers, which satisfy one or more criteria including, but not limited to, extensive management experience; consistent and/or superior historical performance for the investment style and strategies employed by the Manager; the use of hedging strategies as part of the Manager's investment approach; diversification benefits relative to other Managers; a quality and stable organization; a market independent (market neutral) investment approach; and an ability to consistently and effectively apply its investment approach. Certain criteria may be emphasized above others in the selection and retention of particular Managers and strategies.

10

The Managing Member's approach focuses to a large extent on qualitative considerations regarding the trading strategy adopted by the Managing Member for investment and the selection of Managers. The evaluation and due diligence process may vary among Managers and will be dependent on each Manager's individual disclosure practice. The Managing Member will utilize its subjective evaluation to determine the most effective asset allocation to maximize returns.

The Managing Member may allocate and reallocate assets to and from strategies and Managers at any time and from time to time. The Managing Member intends to restrict the number of Managers to which assets are allocated, thereby creating a greater concentration of investments and, perhaps, greater volatility.

While the Managing Member intends to invest the portion of the Company's assets not committed to the Managing Member's Large Cap Strategy with Managers, the proceeds of the offering may be invested at different intervals and in different proportions at times because each of the Managers may have (i) different subscription intervals in which investments may be made in their Investment Pools, and (ii) different requirements with respect to the stipulated size of investments. Furthermore, the individual Managers may impose limits on the maximum allowable investment, which may limit the Company's ability to invest in the manner or at the times deemed optimal by the Managing Member.

PROSPECTIVE INVESTORS IN THE COMPANY SHOULD BE AWARE THAT THE SUCCESS OF THE COMPANY'S INVESTMENT PORTFOLIO WILL DEPEND TO A GREAT EXTENT ON THE SUCCESS OF THE MANAGING MEMBER'S LARGE CAP STRATEGY AND THE ABILITY OF THE MANAGING MEMBER TO SELECT MANAGERS, NOT NECESSARILY ON THE SPECIFIC IDENTITIES OF THE MANAGERS THEMSELVES OR THE PERFORMANCE OF ANY PARTICULAR MANAGER(S). THE IDENTITIES OF MANAGERS ARE PROPRIETARY INFORMATION OF THE COMPANY. MANAGERS SELECTED FOR THE COMPANY MAY CHANGE FROM TIME TO TIME. IT IS INTENDED THAT A SIGNIFICANT PORTION OF THE COMPANY'S INVESTMENT PORTFOLIO WILL CONTINUE TO BE INVESTED IN THE MANAGING MEMBER'S LARGE CAP STRATEGY, THEREBY ELIMINATING THE PROTECTION THAT DIVERSIFICATION MAY OTHERWISE PROVIDE.

The methods and strategies described above are intended as generalities, are not comprehensive and are intended to allow the Managing Member broad discretion in identifying investment opportunities. The Managing Member has the right to alter its investment strategies and priorities without prior notice to the Company and the Members if it believes that such changes are appropriate in view of then current or expected market, business or economic conditions.

**Current Allocation**

As of the date of this Memorandum, a significant portion of the Company's assets are allocated to a strategy adopted by the Managing Member involving investment in a portfolio of Large Cap stocks hedged with options. Except as described below under "Uninvested Cash Balances", the balance of the Company's assets are allocated among four Managers, each of which invests through four separate Investment Pools. The Company has no current allocation with any Manager engaged in market timing of mutual fund shares and has no intention to do so.

**Strategies of the Managing Member and Current Managers**

1. The Managing Member's current investment strategy involves a significant portion of the Company's assets and includes investments in a portfolio of Large Cap Stocks and the utilization of various hedging techniques involving options, with the primary objective being preservation of capital while achieving the maximum possible investment return.

2. The strategies currently employed by the Manager trading one Investment Pool in which a minority of the Company's assets currently is invested include:

   - Hedge/arbitrage activities, consisting of related securities arbitrage, closed-end fund arbitrage, convertible arbitrage, merger arbitrage, Reg D custom convertibles, and fixed income arbitrage. This group of activities is designed to be unaffected by stock and bond market fluctuations and to provide an extra measure of profitability in times of market adversity;

   - Long-term equity-oriented situations, including private equity, venture capital, energy, and special situations;

   - Distressed securities, emphasizing process-driven and activist situations which are expected to be uncorrelated with the stock and bond markets; and

   - Short stocks and other portfolio protection trades, such as index put options or volatility swaps.

3. The strategies currently employed by the Manager trading another Investment Pool with a minority of the Company's assets involves the use of a long/short strategy of investing in securities of publicly traded companies believed to be under valued (long positions) or overvalued (short positions), with an emphasis on the small-cap sector (defined as companies with a capitalization of at least $400,000,000) with the rest of the portfolio invested in larger cap stocks. The median capitalization of stocks in this Manager's portfolio is $2.5 billion. This Investment Pool seeks to manage risk and to enhance portfolio returns through the flexible use of hedging, including selling stocks short. The Investment Pool's portfolio is concentrated in a relatively small number of equity positions and therefore this Investment Pool is not diversified. Moreover, this Manager has historically utilized a greater percentage of long positions than short positions.

4. The strategies currently employed by the Manager trading another Investment Pool with a minority of the Company's assets involve investment in a portfolio of securities of distressed and out-of-favor companies, including corporate bonds, convertible bonds, high-yield bonds, bank debt, trade claims, and equities. To minimize risk, the Investment Pool diversifies its portfolio across a broad spectrum of securities, companies, and industries. Distressed securities are found among companies that are currently in a reorganization under applicable bankruptcy laws, companies that are restructuring debt obligations outside of court, companies that are liquidating assets to pay creditors, and companies that have recently been restructured. Securities of out-of-favor companies are found among companies in out-of-favor industries, and situations where the market has overreacted to an event or series of events, such as the potential for (or initiation of) significant litigation. An important part of the strategy involves shorting the securities of companies that the Manager believes may become distressed in the future.

12

5. The strategies currently employed by the Manager trading another Investment Pool with a minority of the Company's assets include "event driven investing." Event driven investing involves the purchase or sale of securities of companies which are undergoing substantial changes. Among other opportunities, the Company invests in securities of companies that are selling assets, leaving or entering new businesses, changing their capital structures or that are the subject of a publicly announced acquisition, merger, tender offer, exchange offer, liquidation or other corporate reorganization.

The Manager seeks to achieve absolute returns from event driven investing which are not dependent on overall stock market advances or declines or fluctuations in interest rates or currencies. Generally, the Manager will seek to reduce or eliminate such market or other risks inherent in its portfolio by employing a variety of hedging techniques including the purchase or sale of, among other things, options on market or sector indices, futures contracts, or structured derivative products.

**Futures Investment Restrictions**

The Managing Member will not permit the Company to engage in futures related investments (i) other than through Investment Pools, or (ii) with more than 50% of the fair market value of the Company's assets.

**Uninvested Cash Balances**

Uninvested assets are from time to time maintained in interest bearing instruments or accounts.

\* \* \*

The Company may in the future employ additional Managers to manage a portion of the Company's assets whether through investments in Investment Pools and/or directly or indirectly in managed accounts. It is anticipated that such Managers will utilize investment strategies consistent with the Company's investment objective.

13