WOLFF & SAMSON PC
*Attorneys for Braymar Holdings Limited*
140 Broadway, 46th Floor
New York, New York 10005

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

**BRAYMAR HOLDINGS LIMITED'S BRIEF IN OPPOSITION TO TRUSTEE'S MOTION TO AFFIRM TRUSTEE'S DETERMINATIONS DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS ACCOUNTS IN THEIR NAMES, NAMELY, INVESTORS IN FEEDER FUNDS**

WOLFF & SAMSON PC
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
Attorneys for Braymar Holdings Limited

On the Brief:
  Ronald L. Israel
  Cristina Martinez

1244355.2

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL ARGUMENT ................................................................................................................ 4

    THE TRUSTEE ERRONEOUSLY DETERMINED THAT BRAYMAR IS
    NOT A "CUSTOMER" UNDER SIPA .................................................................................. 4

        A.    Braymar is a "Customer" According to the Plain Language
            of SIPA ........................................................................................................ 4

        B.    The Obligation of BLMIS to Braymar is Ascertainable
            Notwithstanding Braymar's Not Maintaining a Direct
            Account With BLMIS ................................................................................. 7

            1.    SIPA Does Not Require a Claimant to Maintain an
                Account with the Debtor in Order to be a
                "Customer" ................................................................................. 8

            2.    Braymar's "Net Equity" is Not Dependent Upon
                Being an Account Holder ........................................................... 9

        C.    Braymar, Not the Feeder Funds Through Which It Initially
            Invested, is a "Customer" Under SIPA .................................................... 10

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

CASES

ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.,
  957 F.Supp. 1308 (S.D.N.Y. 1997) ..........................................................................................11

In re A.R. Baron Co., Inc.,
  226 B.R. 790 (Bankr. S.D.N.Y. 1998) ........................................................................................7

In re Adler, Coleman Clearing Corp.,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ........................................................................................7

In re Adler, Coleman Clearing Corp.,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) .................................................................................... 6-7

Anglo Am. Sec. Fund L.P. v. S.R. Int'l Fund, L.P.,
  829 A.2d 143 (Del. Ch. 2003) ..................................................................................................11

Brentwood Secs. Inc. v. Pepperdine Univ.,
  925 F.2d 325 (9th Cir. 1991) ......................................................................................................5

In re First Interregional Equity Corp.,
  290 B.R. 265 (Bankr. D.N.J. 2003) ........................................................................................6, 8

In re Hanover Square Sec.,
  55 B.R. 235 (Bankr. S.D.N.Y. 1985) ......................................................................................7, 8

In re Old Naples Sec., Inc.,
  223 F.3d 1296 (11th Cir. 2000) .........................................................................................4, 5, 6

Plumbers and Steamfitters Local 490 Severance and Retirement Fund v. Appleton (In re
  First Ohio Securities Co.),
  No. 93-133, 1994 WL 599433 (6th Cir. Nov. 1, 1994) ..............................................................6

SEC v. F.O. Baroff Co.,
  497 F.2d 280 (2d Cir. 1974) ................................................................................................... 8-9

SIPC v. Executive Secs. Corp.,
  423 F.Supp. 94 (S.D.N.Y. 1976), aff'd 556 F.2d 98 (2d Cir. 1977) ......................................8, 9

SIPC v. Morgan Kennedy & Co.,
  533 F.2d 1314 (2d Cir. 1976) ....................................................................................................6

SIPC v. Wise (In re Stalvey & Assocs., Inc.),
  750 F.2d 464 (5th Cir. 1985) .....................................................................................................9

# TABLE OF AUTHORITIES

**Page**

Stafford v. Giddens (In re New Times Servs. Inc.),
  463 F.3d 125 (2d Cir. 2000) ........................................................................................... 6

Stephenson v. CITCO Group Ltd.
  2010 WL 12440007, *1, *9 (S.D.N.Y. Apr. 1, 2010) .................................................. 11

In re Waddell Jenmar Sec., Inc.,
  126 B.R. 935 (Bankr. E.D.N.C. 1991) ........................................................................... 5

**STATUTES**

15 U.S.C. § 78fff-3(a) ........................................................................................................ 5

15 U.S.C.A. § 78fff-2 ................................................................................................... 7, 10

15 U.S.C.A. § 78lll ............................................................................................... 4, 5, 7, 9

**PRELIMINARY STATEMENT**

Braymar Holdings Limited ("Braymar"), an innocent investor robbed of over $9 million in history's largest Ponzi scheme, not only qualifies as a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") according to the plain meaning of the term under the Securities Investor Protection Act ("SIPA"), but is the precise embodiment of the type of investor SIPA was enacted to protect from failed brokerages - - innocent. Principles of law, equity and justice demand that the trustee for the above-captioned liquidation, Mr. Irving H. Picard (the "Trustee"), and this Court treat Braymar, whose investments were undeniably acquired, received and possessed by BLMIS, as they would treat any investor who maintained an account with BLMIS.

The public policy behind SIPA is to protect investor's assets where the brokerage houses holding those assets fail. Such policy is not met when a multi-billion dollar feeder fund, such as those in which Braymar initially invested, is given $500,000 to collectively distribute among all the investors injured when a brokerage house in which the feeder fund invested fails. Rather, allowing each investor who suffered the undeserved harm, like Braymar whose dollar losses total in the millions, to recover under SIPA better effectuates the statute's purpose.

Braymar is a "customer" because it deposited cash with BLMIS for the purpose of purchasing securities; a conclusion unchanged by Braymar's initial investment being in the Ascot Fund Limited (the "Ascot Fund") and the Ariel Fund Limited (the "Ariel Fund"), entities that subsequently turned Braymar's investment over to BLMIS. Whether a claimant "deposited cash with the debtor" does not solely depend on the recipient of the initial deposit, but rather on whether the debtor actually received, acquired or possessed the invested funds. Here, notwithstanding the fact that Braymar did not deposit funds directly with BLMIS, it is indisputable that 100 percent of the funds Braymar invested in the Ascot Fund and a significant portion of the funds it invested in

1244355.2

the Ariel Fund were received by BLMIS. Hence, there was "actual receipt, acquisition or possession" of Braymar's funds by BLMIS.

Despite the fact that BLMIS received millions of dollars of Braymar's, and returned none of those funds to Braymar, the Trustee baselessly denied Braymar's customer claims "because [Braymar] did not have an account with BLMIS." This contravenes the Congressional intent embodied in SIPA, which does not define "customer" of a debtor as limited to investors who maintained an account with the debtor. Moreover, Braymar's losses, or net equity, are no less authentic or ascertainable because it did not deposit funds into a BLMIS account-- thus, Braymar, and not the feeder funds through which it initially made its investment, is a proper entity to assert customer claims for the losses it incurred.

The Trustee's denial of Braymar's customer claims, based solely on his determination that Braymar did not maintain an account with BLMIS, arbitrarily and unjustly elevates form over substance and contravenes both the fundamental purpose of SIPA – to protect investors, like Braymar, from failed brokerages – as well as principles of equity and justice.

## STATEMENT OF FACTS

On or around January 1, 2004, Braymar, through its nominee Citco Global Holdings NV, invested in the Ascot Fund (the "Ascot Account"), which in turn deposited 100 percent of the assets it received from Braymar with BLMIS. (See January 6, 2010 Objection to Trustee's Determination of Claims 011628 and 011629 ("Braymar Objection"), Exh. A). Similarly, on the same date, Braymar, through its nominee Citco Global Holdings NV, invested in the Ariel Fund (the "Ariel Account"), which in turn deposited approximately 30 percent of the assets it received from Braymar with BLMIS. (See Braymar Objection, Exh. B). On November 30, 2008, Braymar's balance in the Ascot Account was $7,607,561.58, and it's investment in the Ariel Account was $5,953,099.61.

2

1244355.2

(See Braymar Objection, Exhs. A and B). Of the initial investment in the Ariel Account, 29.83 percent was invested in BLMIS, which amounts to $1,775,809.62. (Id.)

On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS. Accordingly, Braymar submitted claims numbered 011628 and 011629 (the "Braymar Claims") to the Trustee in the amounts of $7,607,561.58 and $1,775,809.62, based upon the balances in the Ascot Account and Ariel Account and the percentage of the Ascot and Ariel Funds' investment in BLMIS, respectively. (Id.).

On December 8, 2009, Braymar received two "Notices of Trustee's Determination of Claims" (the "Determination Notices"), in which the Trustee determined that Braymar did not maintain an account with BLMIS. (See Braymar Objection, Exhs. C and D). Based solely on the determination that Braymar did not maintain an account with BLMIS, the Trustee erroneously concluded that Braymar is not a "customer" of BLMIS, under 15 U.S.C. § 78lll (2), and denied the Braymar Claims. (Id.). In response, on January 6, 2010, Braymar filed an objection to the Trustee's Determinations of Claims, arguing that indirect investors such as Braymar are indeed "customers" under SIPA. (See Braymar Objection). The Trustee thereafter requested a hearing regarding the definition of the word "customer," and submitted his Memorandum of Law in Support of Trustee's Motion to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds ("Objecting Claimants"), dated June 11, 2010 (the "Trustee's Memorandum"), pursuant to the scheduling order entered by this Court on April 13, 2010.

3

1244355.2

## **LEGAL ARGUMENT**

### **THE TRUSTEE ERRONEOUSLY DETERMINED THAT BRAYMAR IS NOT A "CUSTOMER" UNDER SIPA**

Congress enacted SIPA in order to protect investors' assets where the brokerages holding those assets fail. In re Old Naples Sec., Inc., 223 F.3d 1296, 1300 (11th Cir. 2000). In that vein, SIPA established the Securities Investor Protection Corporation ("SIPC") "to maintain a fund for investor protection, oversee the liquidation of brokerages in a manner similar to bankruptcy proceedings, and, under certain circumstances, reimburse customers of a failed brokerage." Id. SIPA permits only "customers," as defined in 15 U.S.C. § 78*lll* (2), to file claims with the Trustee for any outstanding obligations by the brokerage. Id. SIPA defines "customer" as follows:

> Any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities **received, acquired, or held by the debtor** in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for the purposes of effecting transfer. The term "customer" includes any person . . . who has deposited cash with the debtor **for the purpose of purchasing securities** . . . .

15 U.S.C. § 78*lll* (2) (emphasis added).

The Trustee's arbitrary and unfounded denial of the Braymar Claims notwithstanding, Braymar is a "customer" under SIPA, and therefore entitled to the statute's protections, because it deposited cash with BLMIS, which received, acquired and/or held such deposit, for the purpose of purchasing securities.

**A.    Braymar is a "Customer" According to the Plain Language of SIPA**

Braymar is a "customer" of BLMIS according to the plain meaning of the term under SIPA. 15 U.S.C. § 78*lll* (2) ("The term "customer" includes. . . any person who has deposited cash with the debtor for the purposes of purchasing securities."); see also 15 U.S.C. § 78fff-3(a) (individual customers of a broker or dealer or bank, which conducted transactions with a SIPC

4

1244355.2

debtor on behalf of those customers, are deemed separate customers of the debtor for purposes of determining whether customer is entitled to SIPC advance).

Whether a claimant "deposited cash with the debtor," under 15 U.S.C. § 78*lll* (2), does not depend on the entity to whom the claimant "handed her cash or made her check payable, or **even where the funds were initially deposited**," but on whether there was "**actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation**." In re Old Naples Sec., Inc., supra, 223 F.3d at 1302 (emphasis added); see also Brentwood Secs. Inc. v. Pepperdine Univ., 925 F.2d 325, 329-330 (9th Cir. 1991) (in analyzing when an investor is or is not a "customer" under SIPA, the court held that the primary issue is simply whether the money invested ended up with the debtor; the court held that a claimant had a valid customer claim even where he invested in one firm but his account was later transferred to the debtor); In re Waddell Jenmar Sec., Inc., 126 B.R. 935, 939-45 (Bankr. E.D.N.C. 1991) (allowing SIPA claims by investors who made checks payable to third-party because funds were made available to the broker-dealer).

Here, it is indisputable that the funds Braymar deposited into the Ascot Account and Ariel Account were so deposited for the purpose of purchasing securities as defined by 15 U.S.C. § 78*lll*(14). Furthermore, *100 percent* of the funds Braymar invested in the Ascot Account, and a significant portion of the funds it invested in the Ariel Account, were received and held by BLMIS. NONE of these funds, which totaled in the millions, was returned to Braymar.[1]

---

[1] Notwithstanding Braymar's reliance on Old Naples, supra, and its associated cases in the Braymar Objection, nowhere in the Trustee's Memorandum does the Trustee address the case or the principle espoused therein, namely that the 'deposit of cash" analysis is dependent upon "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." 223 F.3d at 1302. Avoidance of this argument, which is specifically relevant to the definition of "customer" under SIPA, is likely motivated by the Trustee's inability to deny that 100% of Braymar's funds invested in the Ascot Fund and a significant portion of the funds it invested in the Ariel Fund were turned over to, and received by, BLMIS.

5

1244355.2

In an effort to substantiate its denial of the Braymar Claims, the Trustee points to a string of inapposite cases to support its assertion that Braymar is not a customer because it did not "entrust BLMIS with cash or securities to trade or invest." (See Trustee's Memorandum, pp. 19). However, the Trustee conveniently ignores the principle that the entrustment of cash or securities to trade or invest does not depend solely "**where the funds were initially deposited,**" but rather on whether there was "**actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.**" In re Old Naples Sec., Inc., supra, 223 F.3d at 1302. Quite simply, Braymar invested money that was ultimately received by BLMIS. By definition, a lender is not an investor. See Stafford v. Giddens (In re New Times Servs. Inc.), 463 F.3d 125, 130 (2d Cir. 2000) (denying customer status to plaintiffs who, unlike Braymar, were lenders, as opposed to investors, in a failed brokerage). And in the pension plan cases cited by the Trusetee, the parties seeking to be deemed "customers" never contributed the funds—their employers did; as such, these cases are inapposite to Braymar's factual circumstances. See Plumbers and Steamfitters Local 490 Severance and Retirement Fund v. Appleton (In re First Ohio Securities Co.), No. 93-133, 1994 WL 599433 (6th Cir. Nov. 1, 1994) (finding that pension fund participants, unlike Braymar, which is an investor, are not individual "customers" under SIPA); Securities Investors Protection Corp. v. Morgan Kennedy & Co., 533 F.2d 1314 (2d Cir. 1976) (finding that employee-beneficiaries in a pension plan, who, unlike Braymar, were not investors and where, unlike BLMIS, the broker-dealer held no property belonging the individual, were not "customers under SIPA); In re First Interregional Equity Corp., 290 B.R. 265, 280 (Bankr. D.N.J. 2003) (denying customer status because, unlike Braymar, claimant was a lender of securities to the broker, as opposed to an investor); In re Adler, Coleman Clearing Corp., 277 B.R. 520, 559-60 (Bankr. S.D.N.Y. 2002) (denying customer status to claimant who, unlike Braymar, was the beneficiary of unlawful conduct

in which he acquiesced); In re Adler, Coleman Clearing Corp., 216 B.R. 719, 725 (Bankr. S.D.N.Y. 1998) (denying customer status to claimant which, unlike Braymar, did not "entrust" assets to the debtor for the purpose of buying or selling securities because a clearing agreement created a debtor-creditor, as opposed to investor, relationship); In re Hanover Square Sec., 55 B.R. 235, 238 (Bankr. S.D.N.Y. 1985) (denying customer status because, unlike Braymar, claimant was a lender of securities to the broker, as opposed to an investor).

Thus, because Braymar deposited cash with BLMIS, which received, acquired and/or held such deposit, for the purpose of purchasing securities, it is a "customer" under SIPA.

### B. The Obligation of BLMIS to Braymar is Ascertainable Notwithstanding Braymar's Not Maintaining a Direct Account With BLMIS

According to SIPA, a claimant bears the burden of demonstrating that the obligation of the debtor to the claimant is either (1) ascertainable from the books and records of the debtor; or (ii) *"otherwise established to the satisfaction of the trustee."* See 15 U.S.C.A. § 78fff-2 [2]; see also In re A.R. Baron Co., Inc., 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998). Given the dual methods available to Braymar to demonstrate the extent of BLMIS' obligation to it, the Trustee's focus on the former option, to the complete exclusion of the latter, is an overemphasized, if not disingenuous, recitation of the SIPA statute.

---

[2] 15 U.S.C.A. § 78fff-2 provides: "After receipt of a written statement of claim pursuant to subsection (a)(2) of this section, the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer (subject to the provisions of subsection (d) of this section and section 78fff-3(a) of this title) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."

7

1244355.2

1.  SIPA Does Not Require a Claimant to Maintain an Account with the Debtor in Order to be a "Customer"

Congress did not intend, and SIPA does not define, "customers" of a debtor to be limited to investors who maintained an account with the debtor. Had Congress so intended, 15 U.S.C. § 78*lll* (2) would have been drafted to define a "customer" as "an account-holder of the debtor."

Indeed, this Court, in In re Hanover Square Secs., supra, expressly noted that the lack of an account with the debtor is not alone dispositive of the validity of a customer claim. 55 B.R. at 240 (citing SEC v. Ambassador Church Finance/Dev. Group, Inc., 679 F.2d 608, 614 (6th Cir. 1982)). There, this Court favorably acknowledged the principle that construction of a statute which is at variance with its purpose should be avoided, and stated that "[w]ere the lack of a customer account which should have been established the only flaw otherwise prohibiting the Claimants from attaining customer status, **the court might well find customer status by following**" the rationale that the primary purpose of SIPA is to assure investor protection in securities transactions. Id. (citing SEC v. Ambassador Church Finance/Development Group, Inc., supra, 679 F.2d at 611).

Again, the Trustee overstresses the import of a claimant being an account-holder in order to be deemed a "customer" by citing case law in the incomparable lender context, where courts denied customer status not because a claimant was not an account holder, but rather because the securities were loans that were not lent in connection with trading or investment. See SIPC v. Executive Secs. Corp., 423 F.Supp. 94, 98 (S.D.N.Y. 1976), aff'd 556 F.2d 98 (2d Cir. 1977) (stating that customer claims failed because the loans made were not in connection with trading or investing through the debtor); In re First Interregional Equity Corp., supra, 290 B.R. at 280 (denying customer status to lender of bearer bonds because such loans were not delivered for investment, trading or participation in securities markets); SEC v. F.O. Baroff Co., 497 F.2d 280,

8

1244355.2

284 (2d Cir. 1974) (denying customer status where a loan to the debtor had no connections with claimant's trading activity in the securities market); SIPC v. Wise (In re Stalvey & Assocs., Inc.), 750 F.2d 464, 471 (5th Cir. 1985) (claimant was not a "customer" because debtor did not receive, acquire or hold the claimant's securities with a "view to sale").

Likewise, the Trustee mischaracterizes the holding of Executive. Secs. Corp., supra. 423 F.Supp. at 98. There, this Court expressly identified the reason the customer claims at issued failed as that "[the] securities were not lent in connection with trading or investment through [the debtor]," not because the claimants were not account holders. Id. Indeed, the Court's decision was entirely based on SEC v. F.O. Baroff Co., supra, where the Second Circuit denied customer status to a claimant who lent shares to a debtor that had no connection to claimant's trading activity in the securities market. 497 F.2d at 284. While both decisions mention, in dicta, that the claimants in each matter did not have an active account with the debtor, such fact was not dispositive of the customer issue. See Executive. Secs. Corp., supra. 423 F.Supp. at 98 (rejecting a literal reading of SIPA, which would limit "customers" to those who maintain accounts with broker-dealers).

Thus, the Braymar Claims are valid customer claims, notwithstanding that Braymar did not hold a direct account with BLMIS, because it can establish the extent of BLMIS' obligation to it in a manner that should be found satisfactory to the Trustee.

    2.    <u>Braymar's "Net Equity" is Not Dependent Upon Being an Account Holder</u>

Claimants with valid customer claims are entitled preferential treatment in the distribution of assets from the debtor's estate, and share in this "customer property" to the extent of their "net equity"—a term which, by definition, is not dependent upon or calculated based on a customer's account balance.

Rather, "net equity" equals the difference between the amount the debtor would owe the customer were all the securities and cash balances valued as of the filing date, and the amount of any indebtedness of the customer to the debtor as of the filing date. 15 U.S.C.A. § 78lll. Furthermore, the Trustee may condition any payment made to a customer under SIPA upon a claimant's provision of appropriate receipts, supporting affidavits, releases, and assignments in order to establish the extent of the debtor's obligation to the particular customer to the Trustee's satisfaction. 15 U.S.C.A. § 78fff-2. As such, Braymar would easily be capable of establishing the extent of its net equity, if not from the books and records of BLMIS, then from the books and records of either the Ariel and Ascot Funds, or the account statements Braymar received regarding its Ariel and Ascot Accounts, which would include the percentage of those Accounts that were allocated to BLMIS.

Neither the definition of "customer" or "net equity," nor the mechanism for establishing an "obligation[] of the debtor to a customer," require that a claimant be an account holder in order to maintain a customer claim under SIPA. As such, because Braymar plainly fits the definition of "customer," and is able to establish both net equity and an obligation of BLMIS to Braymar in a manner that is "satisfact[ory] to the [T]rustee," it is entitled to pursue the Braymar Claims, notwithstanding that it did not hold a direct account with BLMIS.

### C. Braymar, Not the Feeder Funds Through Which It Initially Invested, is a "Customer" Under SIPA

The Trustee misses the point in his supposition that the Braymar Claims are derivative of the claims of the feeder funds in which Braymar initially invested, namely the Ariel Fund and the Ascot Fund, and therefore not entitled to customer status. Braymar is not seeking to file an independent lawsuit, but rather to collect the SIPA insurance proceeds to which it is statutorily entitled based on the direct losses Braymar incurred as an investor. As such, whether Braymar's

10

1244355.2

claim is direct or derivative is irrelevant.

That Braymar is seeking insurance proceeds, not pursuing damages for injuries to a corporation, is a fundamental distinction that highlights the inapplicability of the cases referenced by the Trustee to the current circumstance. For example, although the Trustee cites to Stephenson v. CITCO Group Ltd., for the proposition that the claims asserted by investors in a hedge fund were derivative of those to the fund itself, the case did not concern a customer claim under SIPA, as is brought by Braymar in the instant action. 2010 WL 12440007, *1, *9 (S.D.N.Y. Apr. 1, 2010). Rather, the Stephenson decision involved claims against the hedge fund's administrators and auditors, causes of action not implicated here. Id. at *1.[3] Additionally, the remaining cases cited by the Trustee on pages 25-27 of the Trustee's Memorandum are not instructive as none contained a customer claim under SIPA, but asserted damages claims by shareholders against banks, mutual funds and trusts in dissimilar corporate contexts.

Again, the Braymar Claims are for insurance proceeds, not damages; proceeds that, even if granted in the full statutory amount of $500,000, would not come close to making Braymar whole from the nearly $9 million in losses it incurred as a result of massive fraud perpetrated upon its investments. Yet, the Trustee argues it is proper to further reduce the amount of insurance available to Braymar by forcing it to split that $500,000 with the hundreds of other investors in the feeder funds through which it initially invested; a result that, based on the degree

---

[3] Notably, many of the very cases relied on by the Trustee found certain damage claims to be direct, rather than derivative, where the injury was experienced by the shareholder, independent of any injury to the entity. Stephenson, supra, 2010 WL 12440007 at *10 (finding that claims of gross negligence, negligence, and fraud were direct claims because they allege a harm suffered by the plaintiff independent of the partnership); see also Anglo Am. Sec. Fund L.P. v. S.R. Int'l Fund, L.P., 829 A.2d 143, 154 (Del. Ch. 2003) (categorizing breach of fiduciary duty and negligent misrepresentation claims made against an investment fund as direct, not derivative); ABF Capital Mgmt. v. Askin Capital Mgmt. L.P., 957 F.Supp. 1308, 1329 (S.D.N.Y. 1997) (holding that fraud claims by investors in hedge fund were direct, not derivative).

11

1244355.2

of loss, is nearly the equivalent of providing no relief at all. Such should not be the result, as allowing each investor who suffered the undeserved harm to recover under SIPA better effectuates the statute's purpose.

## CONCLUSION

For the reasons set forth herein,[4] the Trustee's motion to affirm the Trustee's determinations denying claims of claimants without BLMIS accounts in their names, namely, investors in feeder funds, should be denied.

> Respectfully submitted,
>
> WOLFF & SAMSON PC
>
> By:  /s/ Ronald L. Israel
>      RONALD L. ISRAEL

Dated: July 12, 2010

---

[4] Furthermore, Braymar also hereby joins and incorporates by reference as if fully restated herein the arguments and authorities cited in the objections and oppositions filed on behalf of all similarly situated Objecting Claimants as to why the Trustee's determinations on the "customer" issue should not be affirmed.

WOLFF & SAMSON PC
*Attorneys for Braymar Holdings Limited*
140 Broadway, 46th Floor
New York, NY 10005

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiffs,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

Adv. Pro. No. 08-01789

SIPA Liquidation

---

## CERTIFICATE OF SERVICE

I, RONALD L. ISRAEL, hereby certify that on July 12, 2010, I caused a true and correct copy of **Braymar Holdings Limited's Brief in Opposition to Trustee's Motion to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in their Names, Namely, Investors in Feeder Funds** to be electronically filed with the Court and served upon the parties in this action who receive electronic service through CM/ECF. In addition, service was effectuated to the following via Federal Express:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

-and-

Clerk for the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

                                              /s/ Ronald L. Israel
                                              RONALD L. ISRAEL

1244355.2