
Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Steven R. Schlesinger, Esq.

*Attorneys for Robert Luria Partners*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,
                 Plaintiff-Applicant,         Adv. Pro. No. 08-01789 (BRL)

v.                                              SIPA Liquidation

BERNARD L. MADOFF INVESTMENT        (Substantively Consolidated)
SECURITIES LLC,

                 Defendant.
-------------------------------------------------------------X
IN RE:

BERNARD L. MADOFF,

                 Debtor.
-------------------------------------------------------------X

## ROBERT LURIA PARTNERS' OBJECTION TO
## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

Robert Luria Partners ("RL Partners"), by and through its counsel, Jaspan Schlesinger LLP, hereby raises and files this Objection to the Notice of Trustee's Determination of Claim, dated June 21, 2010, and respectfully shows and alleges as follows:

    1.    RL Partners is a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the meaning of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").

2. BLMIS Account Number 1-L0323 was opened in the name of RL Partners in or about 2008 by Bernard L. Madoff ("Madoff") and Peter Madoff (together with Madoff, the "Madoffs") as trustees of the Trust Under Article IX of the Will of Gladys C. Luria f/b/o Robert Luria (the "Robert Luria Trust"). Robert Luria is the sole beneficiary of the Robert Luria Trust.

3. RL Partners' final account statement from BLMIS dated November 30, 2008 reflects that it owns securities valued at approximately $1,118,204.50.

4. On or about December 11, 2008, Madoff was arrested by the FBI and charged with securities fraud. Madoff allegedly confessed that BLMIS was a "Ponzi scheme" as he had been paying returns to certain investors out of the principal he received from other investors.

5. On or about December 11, 2008, the SEC filed a civil complaint with the United States District Court for the Southern District of New York charging Madoff with securities fraud on the basis that Madoff had been conducting a Ponzi scheme for years through the investment adviser services of BLMIS. Thereafter, on or about December 15, 2008, the United States District Court for the Southern District of New York (Stanton, J.) entered an order granting the application of the Securities Investor Protection Corporation ("SIPC") seeking a declaration that the customers of BLMIS are in need of protection under SIPA, and appointed Irving H. Picard, Esq. as Trustee (the "Trustee").

6. On December 23, 2008, this Court entered an order which governs, in part, the determination of "customer claims" of victims of Madoff and BLMIS (the "Claims Procedure Order") [Docket # 12].

7. Prior to the July 2, 2009 bar date, RL Partners mailed certified mail – return receipt a Customer Claim form (the "Customer Claim Form") with respect to BLMIS Account

Number 1-L0323. A copy of the Customer Claim Form is annexed hereto as Exhibit "A". The Customer Claim Form reflects a balance due to RL Partners in the amount of $1,135,500.00.

8. The Trustee has since issued the Notice of Trustee's Determination of Claim, dated June 21, 2010 (the "Determination of Claim"), denying RL Partners' Customer Claim in its entirety. A copy of the Determination of Claim is annexed hereto as Exhibit "B". Specifically, the Trustee denied RL Partners' claim for a credit balance of $1,135,500.00 on the ground that "[n]o securities were ever purchased for [its] account." See Exhibit B. The Trustee also stated that based upon his analysis, the amount of money withdrawn from the account was greater than the amount deposited with BLMIS. See Exhibit B.

9. RL Partners hereby objects to the Determination of Claim for the reasons set forth below. RL Partners is entitled to recover from the estate of BLMIS as it was one of the thousands of customers defrauded by Madoff. RL Partners should be allowed a claim for the maximum amount under SIPC ($500,000.00) with the balance as a claim against the estate and any remaining proceeds for a total of $1,135,500.00.

## I. FACTUAL BACKGROUND OF RL PARTNERS' ACCOUNT WITH BLMIS AND THE ROBERT LURIA TRUST

10. Under the Last Will and Testament of Gladys C. Luria, dated April 4, 2005 (the "G. Luria Will"), Madoff and Peter Madoff were both executors of the estate of Gladys C. Luria (the "G. Luria Estate") and trustees of the Robert Luria Trust created under the G. Luria Will. A copy of the G. Luria Will is annexed hereto as Exhibit "C".

11. Pursuant to the G. Luria Will and in their capacities as trustees of the Robert Luria Trust, the Madoffs formed Robert Luria Partners and opened an account in its name with BLMIS (Account # 1-L0323). A copy of the business certificate of partners of Robert Luria Partners is annexed hereto as Exhibit "D".

12. The Robert Luria Trust, as indicated in the schedules annexed to the Determination of Claim, was funded by transfers from BLMIS Account # 1-L0121 totaling $1,487,500.00. See Exhibit B.

13. BLMIS Account # 1-L0121 was the account opened by the Madoffs as executors of the G. Luria Estate under the G. Luria Will. A copy of the Customer Claim form for Account # 1-L0121, dated March 4, 2009, signed by Peter Madoff is annexed hereto as Exhibit "E" (the "G. Luria Customer Claim"). This claim was subsequently denied by the Trustee by Notice of Trustee's Determination of Claim, dated April 26, 2010. A copy of this notice is annexed hereto as Exhibit "F" (the "G. Luria Determination of Claim").

14. As indicated in the Determination of Claim, the Trustee refuses to give RL Partners credit for the $1,487,500.00 transfer to the RL Partners' BLMIS Account (# 1-L0323). The Trustee erroneously "adjusts" this amount to $0.00. See Exhibit B.

15. The Trustee's adjustment of the funding of the Robert Luria Trust is disingenuous to the facts relevant to the Customer Claim. The accounting provided for in the G. Luria Customer Claim and the G. Luria Determination of Claim reflect the following transactions relevant to the RL Partners' Account at BLMIS and the Robert Luria Trust:

(a) Transfer of $17,262,413.00 from BLMIS Account # 1-L0057 opened by G. Luria during her lifetime (the "G. Luria BLMIS Account") to BLMIS Account # 1-L0121 (the "G. Luria Estate BLMIS Account");

(b) Payment of $17,825,000.00 to the government for "estate taxes" by the Madoffs as executors of the G. Luria Estate;

(c) Deposits from non-Madoff accounts of Gladys Luria and other sources totaling almost $6,000,000.00;

   (d)  Distribution to the RL Partners BLMIS Account (#1-L0323) pursuant to the Robert Luria Trust in the total amount of $1,487,500.00.

See Exhibits E and F.

16. In both the Determination of Claim and the G. Luria Determination of Claim, the Trustee has taken the position that the $17,825,000.00 withdrawal for the payment of estate taxes in 2006 should be charged against the beneficiaries of the G. Luria Estate, including Robert Luria, thereby changing the account from a "net loser" to a "net winner". See Exhibits B and F. This adjustment is disingenuous to the situation surrounding these related accounts.

17. What the Trustee refuses to acknowledge is that Madoff was required as executor to pay estate taxes on the G. Luria Estate. In order to determine how much estate tax was due and owing, Madoff had to value G. Luria's BLMIS Account (# 1-L0057) as if securities had been purchased for the account and as if the stated value of the account was true and correct or risk betraying his fraud in 2006. As a result of the claimed over $17,000,000.00 value of the G. Luria BLMIS Account (# 1-L0057), $17,825,000.00 was paid in estate taxes. If Madoff properly assigned a $0.00 value to the G. Luria BLMIS Account, as the Trustee has determined is appropriate, and which would have reflected what we know today as its apparent value, Madoff's Ponzi scheme would have been discovered and his failure to purchase securities for this account and indeed the other accounts of BLMIS victims would have been uncovered. However, in an attempt to cover-up his own fraud, Madoff valued the G. Luria BLMIS Account at its fake stated value, which in turn resulted in the $17,825,000.00 estate tax liability and he made a payment therefore, not as an obligation of the G. Luria Estate, but as payment disguised to provide a cover-up of his own defalcations.

18. The Trustee now impermissibly charges the beneficiaries of the G. Luria Estate for this "withdrawal". At best, the value of the G. Luria BLMIS Account transferred into the G. Luria Estate BLMIS Account and the payment of estate taxes should cancel one another out. Then, the remaining deposits and withdrawals should be used to calculate and determine whether the beneficiaries of the G. Luria Estate were "net losers" or "net losers". Based upon the nearly $6,000,000.00 in non-Madoff assets that were deposited into the G. Luria Estate BLMIS Account from which the RL Partners' BLMIS Account (# 1-L0323) was funded, the RL Partners' BLMIS Account was a "net loser" and is therefore entitled to recovery from SIPC for the maximum amount with the remainder as a balance against the estate of BLMIS and Madoff.

## II. RL PARTNERS' OBJECTIONS TO THE DETERMINATION OF CLAIM

19. Based upon the foregoing, the Trustee has failed to render a determination and to satisfy RL Partners' Customer Claim for Account Number 1-L0323 in accordance with the books and records of BLMIS and has further failed to give any weight to the documents in his possession regarding this account as mandated by the Claims Procedure Order.

20. A proof of claim filed by a creditor is *prima facie* evidence of the amount and validity of the claim. See Fed. R. Bankr. P. 3001. The Trustee bears the burden of proof in challenging the amount and validity of RL Partners' Customer Claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re 37-02 Plaza LLC, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008) ("The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's prima facie validity."). In order to meet his burden in overcoming the *prima facie* validity of the Customer Claim Form, the Trustee had to present evidence refuting the amount and validity of RL Partners' claim set forth on the Customer Claim Form. The Trustee has failed to meet this burden.

21.  Additionally, and in direct contravention of the Claims Procedure Order, the Determination of Claim does not sufficiently set forth the reason and legal basis for the denial of RL Partners' claim. In fact, the only "explanation" for the denial of RL Partners' claim is that "[n]o securities were ever purchased for [its] account." See Exhibit B. The Determination of Claim therefore states no basis in law or in fact for the denial of the RL Partners' claim. The Determination of Claim is inadequate to rebut the *prima facie* validity of RL Partners' Customer Claim, and further relies upon an exhibit purportedly evidencing the money deposited and the money withdrawn from RL Partners' BLMIS Account (#1-L0323) and the G. Luria Estate BLMIS Account (# 1-L0121). As set forth *supra*, the Trustee's "accounting" is completely unsubstantiated and reflects a number of "adjustments" that are unexplained and supported.

22.  The Determination of Claim further fails to give RL Partners credit for the $1,487,500.00 transferred from the G. Luria Estate BLMIS Account. As set forth *supra*, the G. Luria Estate BLMIS Account should be considered a "net loser" given the $17,825,000.00 that Madoff had to pay in estate taxes to cover his own fraud. The Trustee should not use this tool of Madoff's fraud against the innocent victims of BLMIS.

23.  Based upon the foregoing, the denial of RL Partners' Customer Claim on the grounds that it has "withdrawn more than was deposited into [its] account, [and it does] not have a positive 'net equity' in [its] account and [it is] not entitled to an allowed claim in the BLMIS liquidated proceeding," see Exhibit B, should be reversed.

24.  SIPA provides that a customer's claim shall be allowed in the amount of the customer's "net equity." See 15 U.S.C. § 78*fff*-2(b). The term "net equity" is defined in SIPA as,

> [T]he dollar amount of the account or accounts of a customer, to be determined by –

> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date; . . . .

15 U.S.C. § 78*lll*(11). The Trustee's money in/money out analysis with respect to the RL Partners' BLMIS Account and the G. Luria Estate BLMIS Account is erroneous and should be overturned in light of the payment of estate taxes by Madoff.

25. Furthermore, RL Partners maintains that the Trustee's overall money in/money out analysis should be overturned as it is inconsistent with the case law. See e.g., Visconsi v. Lehman Brothers, Inc., 244 Fed. App'x 708 (6th Cir. 2007); Stafford v. Giddens (In re New Times Securities Services, Inc.), 463 F.3d 125 (2d Cir. 2006); In re New Times Securities Services, Inc., 371 F.3d 68 (2d Cir. 2004).

26. The Trustee's definition of "net equity" only serves to punish victims of Madoff and BLMIS and does not protect them or their reasonable expectations. The legislative intent behind enacting SIPA was to "restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers." Sec. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 415 (1975). "Congress' primary purpose in enacting the SIPA and creating the SIPC was . . . the protection of investors." Id. at 421; see In re First State Sec. Corp., 34 B.R. 492, 496 (Bankr. S.D. Fla. 1983) ("SIPA is remedial legislation. As such it should be construed liberally to effect its purpose. The purpose is the protection of the insolvent brokers' customers."); see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) (noting that Congress' primary purpose behind

enacting SIPA was to protect investors from financial losses arising from insolvency of brokers and to reestablish investor confidence). The Trustee's interpretation of "net equity" and its application to the Customer Claim of RL Partners should be overturned.

27. Lastly, at a minimum, the funds of the Robert Luria Trust held by Madoff and Peter Madoff as trustees at BLMIS in the RL Partners BLMIS Account (# 1-L0323) should be entitled to interest. See e.g., N.Y. C.P.L.R. § 5004; Gen. Oblig. Law § 5-501 *et seq.*

## CONCLUSION

28. For the foregoing reasons, RL Partners requests that its Customer Claim be allowed in its entirety in the amount of $1,135,500.00, together with such other and further relief as this Court deems just and proper.

29. On or about April 13, 2010, RL Partners filed a claim (Claim Number 38) against Madoff personally in the amount of $1,135,500.00 for the breach of his fiduciary duty to Robert Luria for, *inter alia*, failing to act reasonably and in good faith in administering both the G. Luria Estate and the Robert Luria Trust; engaging in self-dealing and disregarding his duty of undivided loyalty; failing to exercise reasonable care, diligence and prudence in administering both the G. Luria Estate and the Robert Luria Trust; and failing in his duty to invest and manage both the G. Luria Estate and the Robert Luria Trust in accordance with the Prudent Investor Standard as codified in Section 11-2.3 of the New York Estates Powers and Trusts Law. Nothing contained herein shall be construed as a waiver of any right Robert Luria has with respect to Claim Number 38.

30. Robert Luria and RL Partners are also defendants in the adversary proceeding captioned, *Picard v. Robert Luria and Robert Luria Partners*, Adv. Pro. No. 10-3223. Nothing

contained herein shall be construed as waiver of rights or defenses Robert Luria or RL Partners has or may have in that adversary proceeding against the Trustee or any other third party.

31. RL Partners reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of its right to object.

**WHEREFORE**, Robert Luria Partners requests that its Customer Claim be allowed in its entirety in the amount of $1,135,500.00, together with such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
July 20, 2010

JASPAN SCHLESINGER LLP
Attorneys for Robert Luria Partners

By: _____
STEVEN R. SCHLESINGER
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

TO: Clerk of the United States Bankruptcy Court (via ECF)
for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Andrew W. Reich, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111