ARENT FOX LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Hunter T. Carter, Esq.
James M. Sullivan, Esq.
Shawanna L. Johnson, Esq.

*Attorneys for Dr. Ronald P. Guritzky*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                             Plaintiff,<br><br>                  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES,<br><br>                             Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA Liquidation |

### DR. RONALD P. GURITZKY'S
### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Dr. Ronald P. Guritzky ("Ronald Guritzky" or "Dr. Guritzky") hereby objects to the Trustee's Determination of Claim concerning the Ronald P. Guritzky BLMIS Acct No. 1G0235 (hereafter the "Ronald Guritzky Account"), as stated in the Trustee's letter dated June 24, 2010.

### BACKGROUND

1.     On December 11, 2008, this SIPA liquidation proceeding was commenced against Bernard L. Madoff Investment Securities ("BLMIS") in the United States Bankruptcy Court for the Southern District of New York.   Irving Picard was appointed as Trustee to oversee the BLMIS SIPA liquidation. [Dkt. No. 12].

2.      On December 23, 2008, the Court issued a Claims Procedure Order directing the Trustee to organize and disseminate claim forms to BLMIS customers who were defrauded by Bernard Madoff's massive Ponzi scheme. *Id.* at 2.  The Order also directed the Trustee to establish a claims filing protocol and deadline for customers to file such claims. *Id.* at 5-7.  The Trustee began mailing these claim forms and notices containing the protocol and deadlines to BLMIS customers in January 2009.

3.      Dr. Guritzky filed a claim on or about January 20, 2009, for securities that he was owed from BLMIS based on the last statement balance for his account as of December 11, 2008. A copy of the Dr. Guritzky's account claim form is attached hereto as Exhibit A.[1]

4.      Dr. Guritzky's claim was based on investments and securities that had accumulated in his account since the account was opened in 1983.  Upon opening the account in 1983, Dr. Guritkzy's parents, Sanford and Brenda Guritzky, executed a contract with BLMIS, whereby Dr. Guritzky (or someone on his behalf) would make deposits into the account, and BLMIS would then invest these deposits by purchasing and trading securities in order to achieve the best rate of return for Dr. Guritzky as the account owner.

5.      Pursuant to the contract, BLMIS also sent Dr. Guritzky distributions from the account based on the appreciation of the securities balances that BLMIS reported on the account. Dr. Guritzky received these distributions quarterly, or in some instances, when he requested, more or less frequently.

6.      As Dr. Guritzky (and his parents) made deposits and received distributions throughout the life of the account, BLMIS sent Dr. Guritzky monthly statements indicating that the deposits were being invested and used to purchase and trade securities according to the

---

[1]      In accordance with the Court's orders, sensitive information regarding Dr. Guritzky's account, including social security and taxpayer identification numbers, addresses, and account balances, have been redacted for purposes of the public filing.

contract between the parties. The statements also indicated the overall securities balances and the overall cash balance of the account, in addition to any distributions made to Dr. Guritzky.

7.    BLMIS also sent to Dr. Guritzky periodic/quarterly statements that reflected the amount that the account securities appreciated in value.   BLMIS reported and reflected these appreciated amounts as "capital gains" or "capital additions."

8.    In sum, BLMIS reported to Dr. Guritzky on a monthly basis the securities that were being purchased and traded on his behalf, and reported to Dr. Guritzky on a quarterly basis the capital gains that reflected the appreciation in value of all the securities in the account.

9.    Based on the account statements, and particularly the capital gains/appreciation on the account, BLMIS prepared and distributed at the end of each calendar year, a United States Internal Revenue Code Form-1099 statement of earnings (hereafter "Form 1099") that detailed and summarized all the capital gains that accumulated on all the securities contained in the Ronald Guritzky Account throughout the year.

10.    Dr. Guritzky paid taxes to the Internal Revenue Service each year based on the amount of gains reported by BLMIS. These tax payments totaled several thousands of dollars.

11.    As of December 11, 2008, the BLMIS SIPA liquidation date, the Ronald Guritzky Account maintained a positive net equity and cash balance. A copy of the last statement that Dr. Guritzky received, dated November 30, 2008, is attached hereto as Exhibit B.

12.    On June 24, 2010, the Trustee issued a Determination of Claim denying Dr. Guritzky's claim under SIPA, and alleging that the Trustee is entitled to a substantial payment from Dr. Guritzky with respect to his account.   A copy of the Notice of the Trustee's Determination of Claim is attached hereto as Exhibit C.

3

13.    The Trustee does not assert that Dr. Guritzky was in any way a participant in the fraud perpetrated by Bernard Madoff; and he was not. Rather, he is a victim of it. Accordingly, Dr. Guritzky objects the Trustee's Determination of Claim in its entirety. Dr. Guritzky is entitled to recover from the BLMIS estate, as he was one of the thousands of defrauded customers who were swindled out of millions of dollars by BLMIS.

## OBJECTIONS

**First Objection.** <u>The Trustee has Failed to Comply with the Court's December 23, 2008 Order</u>

14.    In the December 23, 2008 Order, the Court directed the Trustee to mail "Notice, explanatory letters, claims forms and instructions" to "all former customers, broker-dealers, and other creditors of the Debtor . . . ." [Dkt. No. 12, p. 2]. The Court also authorized the Trustee to "satisfy, within the limits provided by SIPA, those portions of any and all customer claims and accounts which agree with the Debtor's books and records . . . ." *Id.* at p. 5.

15.    The Court authorized the Trustee to either deliver to customers the securities which are "ascertainable from the books and records of the Debtor," or to satisfy customers' claims with cash from customer property, or with advances to be paid from SIPC. *Id.* at 5-6.

16.    In the alternative, to the extent a customer's claim disagrees with the "books and records of the Debtor," the Trustee is to notify the claimant of his determination that the claim is disallowed, the reason therefore, and provide the claimant with instructions on how to object to the Trustee's determination. *Id.* at 6-7.

17.    The Trustee has failed to abide by the Court's Order with respect to Dr. Guritzky because the Trustee has failed to satisfy Dr. Guritzky's claim concerning his BLMIS account based on the books and records of the Debtor. The books and records of the Debtor BLMIS show that Dr. Guritzky maintained a significant equity and cash balance as of the December 11,

2008 bankruptcy date, consisting of real, not false, securities. To date, the Trustee has neither

delivered the securities to Dr. Guritzky, nor has the Trustee satisfied Dr. Guritzky's claim from

the customer property of the Debtor or from SIPC.

18.     Because the Trustee has failed in his duties under SIPA and has failed to abide by

the Court's Order, Dr. Guritzky objects to the Trustee's Determination of Claim.

**Second Objection.   The Trustee Misconstrues the Meaning of "Net Equity" in SIPA**

19.     Pursuant to 15 U.S.C. § 78fff-2(b), the Trustee should allow a customer's claim to

the extent of that customer's net equity. Net equity is defined in § 78lll (11) as the amount that is

owed by the debtor to the customer based on the securities holdings on the customer's statement

as of the filing date, less any amounts the customer owes to the debtor as of the filing date. In

other words, the net equity is simply the net difference between the customer's equity balance

and cash position less any amounts that the customer owes to the debtor broker. *See In re New*

*Times Securities Services, Inc.*, 371 F.3d 68, 72 (2d Cir. 2004).

20.     Based on this plain meaning of net equity in the statute and case law, a customer

who maintains a positive securities balance compared to any amounts the customer owes as of

the petition date, is owed the net value of his securities less the amount owed. The Trustee has

taken a different approach to net equity, choosing instead to qualify a customer's claim based on

a concept of "net-in/net-out" – the net of the money deposited into an account against the money

withdrawn from an account.

21.     The Trustee's misinterpretation of net equity not only violates the plain meaning

of net equity in the statute and case law, but it is also antithetical to Congress' plain intention that

SIPA should protect a customer's legitimate expectations with respect to the customer's

brokerage account statements. S. Rep. No. 95-763 at 2 (Apr. 25, 1978). Congress intended that

SIPA fall in line with what customers legitimately expect to receive from their brokerage account, and that any payments under SIPA would "restore the customer to his position prior to the broker-dealer's financial difficulties." *Id.*

22.    The Trustee's failure to adhere to the SIPA definition of net-equity denies the customer its legitimate expectations – the benefit of its investments and the reported appreciation over time. Indeed, in *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court rejected a "money-in/money-out" approach to settling customer's claims, noting that such a formulation would not incorporate the customers' legitimate expectations of appreciation over the life of their accounts. The court explained that:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttaduria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope-indeed a reasonable expectation-that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttaduria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker or a watchful company that reasonably supervised its employees, would have placed their money in the stock market during one of the strongest bull markets in recent memory.

*Id.* at *5

23.    In much the same way, the Trustee's determination ignores Dr. Guritzky's legitimate expectations concerning his BLMIS account. Nowhere in SIPA is the Trustee given power to reshape SIPA's statutory definitions, as interpreted in such cases as *New Times* and *Visconsi*. To honor the Trustee's net investment approach would be to ignore Dr. Guritzky's earnings and account balance appreciation over the life of his investments. It renders useless the

last statement balance as of the date of the filing that SIPA states is the pertinent benchmark by which to judge the customer's net equity position.

24.    The Trustee's definition is inconsistent with the clear language of SIPA, and cases interpreting the definition of net-equity.  Dr. Guritzky therefore objects to the Trustee's net equity definition and the Trustee's claim, which relies upon this incorrect definition.

**Third Objection.  <u>The Trustee Has Violated SIPA by Failing to Promptly Pay a SIPA Advance of $500,000</u>**

25.    The Trustee has breached his duty under SIPA to "promptly" pay SIPC advances of up to $500,000 to customers who qualify for relief as victims of the Madoff fraud.

26.    SIPA, 15 U.S.C. § 78fff-3 provides:

> In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property.

Thus, the statute calls for the prompt payment and satisfaction of customer claims.

27.    The Trustee's actions with respect to Dr. Guritzky have been anything but prompt.  Dr. Guritzky filed a SIPA claim in January 2009.  Yet, Dr. Guritzky is still awaiting payment to which he is entitled.  The Trustee has not advanced the $500,000 payment to him, despite the fact that the books and records of the Debtor clearly establish that Dr. Guritzky maintained an account with BLMIS, had a positive equity balance as of December 11, 2008, and was not indebted to BLMIS for any amounts.

28.    Because the Trustee has failed to discharge his duties to pay to Dr. Guritzky the $500,000 advance owing to his under SIPA, the Trustee is in breach of his duties.  Dr. Guritzky

7

objects to the Trustee's continued refusal to comply with his obligation to pay it the SIPA advance.

**Fourth Objection.  <u>The Trustee Has No Power to Avoid a Settled Transaction Between a Customer and a Stockbroker Pursuant to Bankruptcy Code Section 546(e)</u>**

29.    Pursuant to Section 546(e) of the Bankruptcy Code, a Trustee may not avoid a settled transaction made pursuant to a securities contract between a customer and a stockbroker or securities clearing agency, except in the case of an intentionally fraudulent transfer.  *See* 11 U.S.C. § 546(e).   Section 546(e) is a "safe harbor" for settled transactions, and was enacted to "protect the nation's financial markets from the instability caused by the reversal of settled securities transactions." *In re Enron Corp.*, 328 B.R. 58, 66 (Bankr. S.D.N.Y. 2005).

30.    Section 546(e) was also enacted to "ensure that the avoiding powers of a trustee are not construed to permit margin or settlement payments to be set aside except in cases of fraud [by the purchaser]." *QSI Holdings Inc. v. Alford*, 382 B.R. 731, 738 (W.D. Mich. 2007) (brackets in original) (quoting *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 878 F.2d 742, 751 (3d Cir. 1989) (quoting H.R. REP. NO. 97-420 (1982) ("1982 House Report"), reprinted in 1982 U.S. Code Cong. & Admin. News 583, 583)).

31.    In fact, the 1982 House Report quoted above, which accompanied the bill when he was considered and passed by both the House and the Senate, provides as follows:

> The thrust of several of the amendments contained in H.R. 4935 is to clarify and, in some instances, broaden the commodities market protections and expressly extend similar protections to the securities market.  The amendments will ensure that the avoiding powers of a trustee are not construed to permit margin or settlement payments to be set aside except in the cases of fraud . . . .

In addition, the 1982 House Report further elaborates on the type of fraud that is to be excepted from the protections of Section 546(e):

> Section 4 creates a new Section 546(d) [now designated as 546(e)]. This amendment is made simultaneously with the repeal of Section 764(c) of Title 11 [the predecessor version of 546(e)]. Section 546[e], together with provisions of section 548, prohibits a trustee from avoiding a transfer that is a margin payment . . . or is a settlement payment . . . , except where the transfer was made with intent to hinder, delay, or defraud other creditors and was not taken in good faith.

32.    Further, Senator Dole's remarks on the passage of the bill's Section 4, creating Section 546(d) [now 546(e)], emphasize the same limitation:

> Simultaneously with the repeal of section 764(c) of title 11, section 4 of H.R. 4935 would create a new section 546(d). Section 764(c), together with the provisions of section 548, generally prohibits a trustee from avoiding a transfer that is a margin payment or settlement payment, except where the transfer, first, was made with an actual intent to hinder, delay, or defraud other creditors and second, was not taken in good faith by the recipient. These provisions apply to margin or settlement payments made by a debtor, whether or not such debtor is a commodity broker. The new section 546(d) reiterates and clarifies the provisions of current section 764(c).

33.    Accordingly, Congress clearly intended that the actual fraud exception to Section 546(e) be interpreted narrowly to encompass only those situations where the settlement or margin payment was not taken in good faith.

34.    Based upon the clear legislative history, Section 546(e) protects settled transactions in which customers like Dr. Guritzky acted in good faith. Dr. Guritzky finalized dozens of settlement payments with BLMIS over the life of his accounts, and BLMIS acted as his stockbroker/securities clearing agent pursuant to a valid securities contract. Dr. Guritzky did not act with bad faith with respect to his transactions with BLMIS, and of course had no knowledge of, much less participation in, Bernard Madoff's criminal wizardry. Accordingly, the safe harbor protection of Section 546(e) disallows any attempt by the Trustee to avoid settled transactions completed on Dr. Guritzky's behalf.

**Fifth Objection.    The Trustee Has No Avoidance Powers Outside the Statute of Limitations.**

35.    Dr. Guritzky objects to the Trustee's improper attempt to "claw back" any amounts distributed to him over the entire life of his account with BLMIS, and outside the relevant statutory limitations periods.

36.    As described in the Fourth Objection above, Section 546(e) of the Bankruptcy Code limits the Trustee's "claw back" claims to claims of intentional fraud by the transferor under Section 548(a)(1)(A).   Pursuant to §548(a)(1)(A), the Trustee may not avoid any transfer or distribution as fraudulent beyond a two-year statute of limitations.    The Trustee has the burden of establishing that the transfer or distribution was made with actual intent to defraud, hinder, or delay creditors.

37.    The Trustee certainly has not met such a burden in the case of Dr. Guritzky, nor can the Trustee meet this burden. Dr. Guritzky is an innocent victim of the BLMIS fraud. He is not alone in that he was a Madoff customer who had no knowledge of or participation in the Madoff fraud. The Trustee has not even attempted to present facts or arguments to the contrary. Therefore the Trustee cannot recover <u>any</u> transfer or distribution as fraudulent, let alone a transfer outside of the 2-year statute of limitations.

38.    The Trustee has no power to ignore the plain language of Sections 546(e) and 548(a)(1) of the Bankruptcy Code.   The Trustee would have the Court believe that there is an unwritten  Ponzi scheme exception which creates enormous powers for the Trustee to reach back to the beginning of time to avoid legitimate transactions and distributions to which Dr. Guritzky (and other BLMIS customers) was entitled.

39.    There is no Ponzi scheme exception within the Bankruptcy Code's avoidance provisions.   The Bankruptcy Code provisions have language that is clear, specific, and

controlling. The treatment of a SIPC claim under SIPA is distinct from the Trustee's avoidance powers under the Bankruptcy Code. A Trustee's avoidance powers under SIPC, if any, are limited to those set forth in Chapter 5 of the Bankruptcy Code. Thus, a Trustee may avoid fraudulent conveyances only within the limitations established by the Bankruptcy Code. In this case, those limitations dictate that only intentionally fraudulent conveyances can be avoided, and only within a two-year period from the date of the bankruptcy filing.

40.    Dr. Guritzky (and his parents) established what he (and they) always understood to be a legitimate investment account with BLMIS nearly three decades ago, and committed no fraud in the process. For the Trustee to stretch his two-year avoidance powers to somehow envelop a lifetime of legitimate account investments shows an abject disregard for the law of the land.

41.    Accordingly, Dr. Guritzky objects to the Trustee's attempt to avoid any transactions prior to December 11, 2006, which represents a two-year period culminating with the SIPA liquidation filing against BLMIS.

**Sixth Objection. The Trustee Must Recognize an Off-Set of Any Taxes Dr. Guritzky Paid Related to Income He Purportedly Earned From BLMIS.**

42.    The Trustee has no basis to recover any amounts from Dr. Guritzky related to his BLMIS account. Dr. Guritzky and his parents made valid deposits of real money to BLMIS to invest in his account. BLMIS reported to Dr. Guritzky and his parents that these investments were being made, and that the securities that were purchased appreciated in value over time. Based on these statements, which Dr. Guritzky had no reason to disregard or doubt, he paid taxes to the IRS.

43.    These taxes reflected significant outlays of money from Dr. Guritzky, and Dr. Guritzky has been damaged as such.

44.     However, the Trustee did not make any reference to, or make any accommodation for, taxes Dr. Guritzky paid on the "income" and distributions he received from BLMIS. The Trustee issued a Determination of Claim which did not in any way reflect the taxes paid by Dr. Guritzky on the purported fictitious investment income.

45.     To the extent the Trustee attempts to recover any amounts from Dr. Guritzky, the Trustee must recognize and off-set all amounts that Dr. Guritzky paid in taxes to the IRS based on the appreciated values reflected on the BLMIS statements and Forms 1099.

## JOINDER

46.     Dr. Guritzky hereby joins in all other objections to the Trustee's Determination of Claims filed by other SIPA claimants, and incorporates those objections by reference herein, including but not limited to, the SEC's argument that the Trustee must make its determinations of claims incorporating the time value of money (i.e. interest on payments to investors). Dr. Guritzky reserves the right to address any and all of the arguments raised in such other objections at any hearing or proceeding to take place in connection with this Objection.

## RESERVATION OF RIGHTS

47.     Dr. Guritzky expressly reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground shall not be deemed a waiver of his rights to object on any additional grounds.

## RELIEF REQUESTED

48.     For the reasons stated herein, the Dr. Guritzky Account claim should be allowed in its entirety.

49.     The Trustee should immediately pay to Dr. Guritzky a SIPA advance of $500,000 towards its claims against BLMIS, as he maintained a net equity balance well over $500,000 as of the BLMIS bankruptcy date.

50.     Dr. Guritzky seeks a determination by the Court that the Trustee may not avoid any settled transactions on his BLMIS account, which are protected by the safe harbor provisions of Section 546(e) of the Bankruptcy Code.

51.  ·   The Trustee's determination of Dr. Guritzky's indebtedness to the BLMIS estate should be denied in its entirety.  Dr. Guritzky seeks a determination by the Court that the Trustee may not avoid any transfers which occurred outside the statute of limitations period, namely outside the period from December 11, 2006-December 11, 2008.

52.     Dr. Guritzky seeks a determination by the Court that to the extent the Trustee seeks to recover any amounts from his, such amounts must be off-set and/or netted against the amounts that he paid in taxes related to income he reportedly earned on his BLMIS investments.

53.     Dr. Guritzky requests interest at the statutory rate on his account balances as of December 11, 2008, in addition to pre-judgment interest.

54.     Dr. Guritzky requests interest at the statutory rate on the taxes he paid related to the income he earned on the BLMIS account.

55.     Dr. Guritzky requests such other relief as may be just and proper.

Dated: July 21, 2010

ARENT FOX LLP

/s/ Hunter T. Carter
Hunter T. Carter
James M. Sullivan
Shawanna L. Johnson
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Attorneys for Dr. Ronald P. Guritzky*

# EXHIBIT A

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Provide your office and home telephone no.

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

OFFICE:_____

HOME: ██████████████████████

Taxpayer I.D. Number (Social Security No.)

██████████████████████

Account Number:   1G0235

RONALD P. GUBITZKY

██████████████████████

(If incorrect, please change)

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

*************************************************************************

1.   Claim for money balances as of December 11, 2008:
     a.    The Broker owes me a Credit (Cr.) Balance of           $  - 0 -
     b.    I owe the Broker a Debit (Dr.) Balance of              $  - 0 -

1

502180406

c.   If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, it must be enclosed

with this claim form.                                              $ _____

d.   If balance is zero, insert "None."                        NONE

2.   Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|-----|-----|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.   If yes to either, please list below:

See attached Portfolio Management Report dated 9/30/08
See attached statement dated 11/30/08

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | | Number of Shares or Face Amount of Bonds |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | unknown (See attached) | |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | X |

502180406

3

9.      Have you or any member of your family
        ever filed a claim under the Securities
        Investor Protection Act of 1970?  if
        so, give name of that broker.                      _____    X

        Please list the full name and address of anyone assisting you in the
        preparation of this claim form:_____ N/A _____
_____

If you cannot compute the amount of your claim, you may file an estimated claim.  In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____    Signature _1/20/09_____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet.  If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Ronald P. Guritzky

Customer/claimant does not know if Ruth Madoff is one of the persons listed on Question 4 of the Claim form. If she is, however, then claimant discloses in answer to Question 6, that his mother, Brenda H. Guritzky, is a cousin to Ruth Madoff.

January 20, 2009

Ronald P. Guritzky

# EXHIBIT B



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

RONALD P GURITZKY

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

PAGE **1**

PERIOD ENDING **11/30/08**

YOUR ACCOUNT NUMBER **1-60235-3-0**

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | |
| 11/12 | 598 | | | WAL-MART STORES INC | 55.830 | 33,409.34 | |
| 11/12 | 391 | | 4068 | INTERNATIONAL BUSINESS MACHS | 87.270 | 34,137.57 | |
| 11/12 | 1,449 | 7892 | | EXXON MOBIL CORP | 72.080 | 105,660.12 | |
| 11/12 | 1,587 | 4894 | | INTEL CORP | 14.510 | 23,090.37 | |
| 11/12 | 759 | | | JOHNSON & JOHNSON | | | |
| 11/12 | 1,935 | | | J P MORGAN CHASE & CO | | | |
| 11/12 | 552 | 21371 | | COCA COLA CO | 44.660 | 24,674.32 | |
| 11/12 | 322 | | | MCDONALDS CORP | 55.370 | 17,841.14 | |
| 11/12 | 598 | | | MICROSOFT CORP | | | |
| 11/12 | 2,185 | | | ORACLE CORPORATION | 21.620 | 47,741.85 | |
| 11/12 | 1,104 | 38675 | | PEPSICO INC | 17.300 | 19,143.20 | |
| 11/12 | 437 | 51653 | | APPLE INC | 56.410 | 24,668.17 | |
| 11/12 | 253 | | | ABBOTT LABORATORIES | 54.610 | 23,091.24 | |
| 11/12 | 1,663 | | | PROCTER & GAMBLE CO | | | |
| 11/12 | 828 | | | PHILIP MORRIS INTERNATIONAL | | | |
| 11/12 | 299 | | | | | | |
| 11/12 | 575 | | | | | | |
| 11/12 | 1,380 | 65133 | | BANK OF AMERICA | 21.590 | 29,849.20 | |
| 11/12 | 460 | 68957 | | QUALCOMM INC | 33.770 | 15,552.20 | |
| 11/12 | 1,495 | | | CITIGROUP INC | | 19,761.45 | |
| 11/12 | 345 | | | VANGUARD GROUP ETD | | 17,033.60 | |
| 11/12 | 828 | 73785 | | COMCAST CORP CL A | 16.510 | 13,703.28 | |

CONTINUED ON PAGE **2**

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

RONALD P GURITZKY

PAGE **2**

PERIOD ENDING **11/30/08**

YOUR ACCOUNT NUMBER **1-G0235-3-0**

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TPM | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 1,633 | | 77609 | AT&T INC | 27 | 44,156.00 | |
| 11/12 | 414 | | 78111 | CONOCOPHILLIPS | 52.510 | 21,755.14 | |
| 11/12 | 276 | | 43435 | UNITED PARCEL SVC INC CLASS B | 52.040 | 14,374.04 | |
| 11/12 | 1,679 | | 82437 | CISCO SYSTEMS INC | 16.730 | 28,156.67 | |
| 11/12 | 483 | | 86261 | U S BANCORP | 29.530 | 14,281.99 | |
| 11/12 | 575 | | 88763 | CHEVRON CORP | 73.730 | 42,245.25 | |
| 11/12 | 276 | | 90887 | UNITED TECHNOLOGIES CORP | 53.160 | 14,681.16 | |
| 11/12 | 2,921 | | 91089 | GENERAL ELECTRIC CO | 19.630 | 57,455.23 | |
| 11/12 | 782 | | 94913 | VERIZON COMMUNICATIONS | 30.410 | 23,811.62 | |
| 11/12 | 69 | | | WELLS FARGO & CO NEW | | 28,282.60 | |
| 11/12 | 966 | | | | | 28,924.80 | |
| 11/12 | 690 | | 99741 | HEWLETT PACKARD CO | 34.900 | 24,108.00 | |
| 11/12 | | 1,000,000 | 21851 | U S TREASURY BILL DUE 2/12/2009 | 99.936 | | 999,360.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | DIV | | 29.21 |
| 11/12 | | 50,547 | 16950 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 50,547.00 |
| 11/12 | 3,667 | | 26319 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 3,667.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | .45 |

CONTINUED ON PAGE 3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

RONALD P GURITZKY

PERIOD ENDING 11/30/08

YOUR ACCOUNT NUMBER 1-G0235-3-0

PAGE 3

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 3,667 | 51691 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 3,667.00 |
| 12/19 | 50,000 | | 56292 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 49,963.00 | |
| 11/19 | 22,613 | | 60730 | 3/26/2009 FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 22,613.00 | |
| | | | | NEW BALANCE | | | |
| | 1,633 | | | TRANSFER OPERATIONS AT&T INC | 28.560 | | |
| | 437 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 299 | | | AMGEN INC | 55.540 | | |
| | 253 | | | APPLE INC | 92.670 | | |
| | 1,390 | | | BANK OF AMERICA | 16.250 | | |
| | 575 | | | CHEVRON CORP | 79.010 | | |
| | 1,679 | | | CISCO SYSTEMS INC | 16.560 | | |
| | 1,495 | | | CITIGROUP INC | 8.290 | | |
| | 552 | | | COCA COLA CO | 46.670 | | |
| | 828 | | | COMCAST CORP CL A | 17.340 | | |
| | 414 | | | CONOCOPHILLIPS | 52.520 | | |
| | 1,449 | | | EXXON MOBIL CORP | 80.190 | | |
| | 2,921 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



MADF  BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

RONALD P GURITZKY

PAGE 4

PERIOD ENDING 11/30/08

YOUR TAX PAYER IDENTIFICATION NUMBER

YOUR ACCOUNT NUMBER 1-60235-3-0

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 69 | | | GOOGLE | 292.960 | | |
| | 690 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 1,587 | | | INTEL CORP | 13.900 | | |
| | 391 | | | INTERNATIONAL BUSINESS MACHS | 81.690 | | |
| | 1,035 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 759 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 322 | | | MCDONALDS CORP | | | |
| | 598 | | | MERCK & CO | | | |
| | 2,185 | | | MICROSOFT CORP | 20.220 | | |
| | 1,104 | | | ORACLE CORPORATION | 16.090 | | |
| | 437 | | | | | | |
| | 1,863 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 575 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 828 | | | PFIZER INC | 33.570 | | |
| | 460 | | | | | | |
| | 345 | | | FIDELITY SPARTAN | 1 | | |
| | 22,613 | | | U S TREASURY MONEY MARKET | | | |
| | 483 | | | UNITED PARCEL SVC INC | | | |
| | 276 | | | CLASS B | | | |
| | 50,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 02/12/2009 | | | |
| | 276 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE 5 | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

RONALD P SHRITZKY

PAGE **5**

PERIOD ENDING **11/30/08**

YOUR ACCOUNT NUMBER **1-G0235-3-0**

YOUR TAX PAYER IDENTIFICATION NUMBER

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|------|------|------|------|------|
| | 782 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 598 | | | WAL-MART STORES INC | 55.880 | | |
| | 966 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG              SHORT | | | |



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

RONALD P GURITZKY

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

YOUR ACCOUNT NUMBER
1-G0235-3-0

PERIOD ENDING
11/30/08

PAGE
6

YEAR-TO-DATE SUMMARY

DIVIDENDS
GROSS PROCEEDS FROM SALES

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

RONALD P GURITZKY

YOUR ACCOUNT NUMBER 1-G0235-4-0

PERIOD ENDING 11/30/08

PAGE 1

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 36,317.00 |
| 11/12 | | 23 | 43001 | S & P 100 INDEX | 15.800 | | |
| 11/12 | 23 | | 47327 | NOVEMBER 460 CALL | 17.800 | | 59,777.00 |
| 11/19 | | 23 | 33431 | S & P 100 INDEX | 26 | 40,963.00 | |
| 11/19 | 23 | | 37756 | NOVEMBER 450 PUT | 30 | | |
| 11/19 | 23 | | 48001 | S & P 100 INDEX | 8 | 69,023.00 | |
| 11/19 | | 23 | 46406 | DECEMBER 430 CALL | 37 | 6,922.00 | |
| | | | | S & P 100 INDEX | | | |
| | | | | DECEMBER 420 PUT | | | |
| | | | | S & P 100 INDEX | | | |
| | | | | NOVEMBER 440 CALL | | | |
| | | | | S & P 100 INDEX | | | |
| | | | | NOVEMBER 450 PUT | | | |
| | | | | NEW BALANCE | | | 85,077.00 |

SECURITY POSITIONS

| | MKT PRICE |
|---|---|
| S & P 100 INDEX | 23.300 |
| DECEMBER 430 CALL | |
| S & P 100 INDEX | 16.500 |
| DECEMBER 420 PUT | |

MARKET VALUE OF SECURITIES
LONG
SHORT

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# EXHIBIT C

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

June 24, 2010

Ronald P. Guritzky
███████████████████

Dear Ronald P. Guritzky:

PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1G0235 designated as Claim Number 1049:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of ███████████, as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of ███████). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received *in excess of the deposits in your account (            ) was taken from other customers and given to you.* Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after June 24, 2010, the date on which the Trustee mailed this notice.

2