ARENT FOX LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Hunter T. Carter, Esq.
James M. Sullivan, Esq.
Shawanna L. Johnson, Esq.

*Attorneys for Guritzky Family Partnership LP*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

                     Plaintiff,

       v.

BERNARD L. MADOFF INVESTMENT
SECURITIES,

                   Defendant.

Adv. Pro. No. 08-01789 (BRL)
SIPA Liquidation

## GURITZKY FAMILY PARTNERSHIP LP's
## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

The Guritzky Family Partnership LP ("Guritzky Partnership") hereby objects to the

Trustee's Determination of Claim concerning the Guritzky Family Partnership LP Acct No.

1G0238 (hereafter the "Family Partnership "B" Account"), as stated in the Trustee's letter dated

June 24, 2010.[1]

---

[1]      The Guritzky Family Partnership LP has three claims relating to three accounts with BLMIS labeled
Family Partnership "S", Family Partnership "B" and Family Partnership "JT." The Trustee has issued a
Determination of Claim with respect to all three Partnership LP accounts. The Guritzky Partnership is concurrently
filing Objections for each Partnership LP account, as well as on behalf of certain Guritzky Family individuals.

## BACKGROUND

1.     On December 11, 2008, this SIPA liquidation proceeding was commenced against Bernard L. Madoff Investment Securities ("BLMIS") in the United States Bankruptcy Court for the Southern District of New York.   Irving Picard was appointed as Trustee to oversee the BLMIS SIPA liquidation.  [Dkt. No. 12].

2.     On December 23, 2008, the Court issued a Claims Procedure Order directing the Trustee to organize and disseminate claim forms to BLMIS customers who were defrauded by Bernard Madoff's massive Ponzi scheme.  *Id.* at 2.   The Order also directed the Trustee to establish a claims filing protocol and deadline for customers to file such claims.  *Id.* at 5-7.   The Trustee began mailing these claim forms and notices containing the protocol and deadlines to BLMIS customers in January 2009.

3.     The Guritzky Partnership filed a claim on or about January 20, 2009, for securities that it was owed from BLMIS based on the last statement balance for each of its accounts as of December 11, 2008.  A copy of the Family Partnership "B" Account claim forms is attached hereto as Exhibit A.[2]

4.     The Guritzky Partnership's claim was based on investments and securities that had accumulated in its account since the account was opened in 1997.   Upon opening the account in 1997, the Guritzky Partnership executed a contract with BLMIS on behalf of Family Partnership "B", whereby the General Partners (hereafter the "Guritzkys") would make deposits

---

[2]     In accordance with the Court's orders, sensitive information regarding the Guritzky Partnership, including social security and taxpayer identification numbers, addresses, and account balances, have been redacted for purposes of the public filing.

into the account, and BLMIS would then invest these deposits by purchasing and trading securities in order to achieve the best rate of return for the Partnership.[3]

5.    Pursuant to the contract, BLMIS also sent the Guritzkys distributions from the account based on the appreciation of the securities balances that BLMIS reported on the Partnership "B" Account.   The Guritzkys received these distributions quarterly, or in some instances, when the Guritzkys requested, more or less frequently.

6.    As the Guritzkys made deposits and received distributions throughout the life of the Family Partnership "B" Account, BLMIS sent the Guritzkys monthly statements indicating that the deposits were being invested and used to purchase and trade securities according to the contract between the parties. The statements also indicated the overall securities balances and the overall cash balance of the account, in addition to any distributions made to the Guritzkys.

7.    BLMIS also sent to the Guritzkys periodic/quarterly statements that reflected the amount that the account securities appreciated in value.   BLMIS reported and reflected these appreciated amounts as "capital gains" or "capital additions."

8.    In sum, BLMIS reported to the Guritzkys on a monthly basis the securities that were being purchased and traded on behalf of Family Partnership "B", and reported to the Guritzkys on a quarterly basis the capital gains that reflected the appreciation in value of all the securities in the Family Partnership "B" account.

9.    Based on the account statements, and particularly the capital gains/appreciation on the account, BLMIS prepared and distributed at the end of each calendar year, a United States Internal Revenue Code Form-1099 statement of earnings (hereafter "Form 1099") that detailed

---

[3] Sanford and Brenda Guritzky are the General Partners of the Family Partnership "B" account.  They had authority to make all transactions on behalf of the "B" account, and they received the distributions and/or withdrawals from BLMIS related to the "B" account.

and summarized all the capital gains that accumulated on all the securities contained in the Family Partnership "B" account throughout the year.

10.    The Family Partnership paid taxes to the Internal Revenue Service each year based on the amount of gains reported by BLMIS. These tax payments totaled several thousands of dollars.

11.    As of December 11, 2008, the BLMIS SIPA liquidation date, the Family Partnership "B" Account maintained a positive net equity and cash balance. A copy of the last statement that Family Partnership "B" Account received, dated November 30, 2008, is attached hereto as Exhibit B.

12.    On June 24, 2010, the Trustee issued a Determination of Claim denying the Guritzky Partnership's claim under SIPA, and alleging that the Trustee is entitled to a substantial payment from the Guritzky Partnership with respect to the Family Partnership "B" Account. A copy of the Notice of the Trustee's Determination of Claim is attached hereto as Exhibit C.

13.    The Trustee does not assert that the Guritzky Partnership was in any way a participant in the fraud perpetrated by Bernard Madoff; and it was not. Rather, it is a victim of it. Accordingly, the Guritzky Partnership objects the Trustee's Determination of Claim in its entirety. The Guritzky Partnership is entitled to recover from the BLMIS estate, as it was one of the thousands of defrauded customers who were swindled out of millions of dollars by BLMIS.

## OBJECTIONS

**First Objection.  The Trustee has Failed to Comply with the Court's December 23, 2008 Order**

14.    In the December 23, 2008 Order, the Court directed the Trustee to mail "Notice, explanatory letters, claims forms and instructions" to "all former customers, broker-dealers, and other creditors of the Debtor . . . ." [Dkt. No. 12, p. 2]. The Court also authorized the Trustee to

"satisfy, within the limits provided by SIPA, those portions of any and all customer claims and accounts which agree with the Debtor's books and records . . . ." *Id.* at p. 5.

15.     The Court authorized the Trustee to either deliver to customers the securities which are "ascertainable from the books and records of the Debtor," or to satisfy customers' claims with cash from customer property, or with advances to be paid from SIPC. *Id.* at 5-6.

16.     In the alternative, to the extent a customer's claim disagrees with the "books and records of the Debtor," the Trustee is to notify the claimant of his determination that the claim is disallowed, the reason therefor, and provide the claimant with instructions on how to object to the Trustee's determination. *Id.* at 6-7.

17.     The Trustee has failed to abide by the Court's Order with respect to the Guritzky Partnership because the Trustee has failed to satisfy the Guritzky Partnership's claim concerning the Family Partnership "B" Account based on the books and records of the Debtor.  The books and records of the Debtor BLMIS show that the Guritzky Partnership maintained a significant equity and cash balance as of the December 11, 2008 bankruptcy date, consisting of real, not false, securities.  To date, the Trustee has neither delivered the securities to the Guritzky Partnership, nor has the Trustee satisfied Family Partnership "B's" claim from the customer property of the Debtor or from SIPC.

18.     Because the Trustee has failed in his duties under SIPA and has failed to abide by the Court's Order; the Guritzky Partnership objects to the Trustee's Determination of Claim.

**Second Objection.  <u>The Trustee Misconstrues the Meaning of "Net Equity" in SIPA</u>**

19.     Pursuant to 15 U.S.C. § 78fff-2(b), the Trustee should allow a customer's claim to the extent of that customer's net equity. Net equity is defined in § 78lll (11) as the amount that is owed by the debtor to the customer based on the securities holdings on the customer's statement

as of the filing date, less any amounts the customer owes to the debtor as of the filing date. In other words, the net equity is simply the net difference between the customer's equity balance and cash position less any amounts that the customer owes to the debtor broker. *See In re New Times Securities Services, Inc.*, 371 F.3d 68, 72 (2d Cir. 2004).

20.    Based on this plain meaning of net equity in the statute and case law, a customer who maintains a positive securities balance compared to any amounts the customer owes as of the petition date, is owed the net value of his securities less the amount owed. The Trustee has taken a different approach to net equity, choosing instead to qualify a customer's claim based on a concept of "net-in/net-out" – the net of the money deposited into an account against the money withdrawn from an account.

21.    The Trustee's misinterpretation of net equity not only violates the plain meaning of net equity in the statute and case law, but it is also antithetical to Congress' plain intention that SIPA should protect a customer's legitimate expectations with respect to the customer's brokerage account statements. S. Rep. No. 95-763 at 2 (Apr. 25, 1978). Congress intended that SIPA fall in line with what customers legitimately expect to receive from their brokerage account, and that any payments under SIPA would "restore the customer to his position prior to the broker-dealer's financial difficulties." *Id.*

22.    The Trustee's failure to adhere to the SIPA definition of net-equity denies the customer its legitimate expectations – the benefit of its investments and the reported appreciation over time. Indeed, in *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007), the Court rejected a "money-in/money-out" approach to settling customer's claims, noting that such a formulation would not incorporate the customers' legitimate expectations of appreciation over the life of their accounts. The court explained that:

6

Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttaduria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope-indeed a reasonable expectation-that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttaduria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker or a watchful company that reasonably supervised its employees, would have placed their money in the stock market during one of the strongest bull markets in recent memory.

*Id.* at *5

23.    In much the same way, the Trustee's determination ignores the Guritzky Partnership's legitimate expectations concerning its BLMIS account. Nowhere in SIPA is the Trustee given power to reshape SIPA's statutory definitions, as interpreted in such cases as *New Times* and *Visconsi*. To honor the Trustee's net investment approach would be to ignore the Guritzky Partnership's earnings and account balance appreciation over the life of its investments. It renders useless the last statement balance as of the date of the filing that SIPA states is the pertinent benchmark by which to judge the customer's net equity position.

24.    The Trustee's definition is inconsistent with the clear language of SIPA, and cases interpreting the definition of net-equity. The Guritzky Partnership therefore objects to the Trustee's net equity definition and the Trustee's claim, which relies upon this incorrect definition.

**Third Objection. <u>The Trustee Has Violated SIPA by Failing to Promptly Pay a SIPA Advance of $500,000</u>**

25.    The Trustee has breached his duty under SIPA to "promptly" pay SIPC advances of up to $500,000 to customers who qualify for relief as victims of the Madoff fraud.

26.    SIPA, 15 U.S.C. § 78fff-3 provides:

> In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property.

Thus, the statute calls for the prompt payment and satisfaction of customer claims.

27.    The Trustee's actions with respect to the Guritzky Partnership have been anything but prompt. The Guritzky Partnership filed a SIPA claim in January 2009. Yet, the beneficiaries of the Guritzky Partnership are still awaiting payment to which they are entitled. The Trustee has not advanced the $500,000 payment to them, despite the fact that the books and records of the Debtor clearly establish that the Guritzky Partnership maintained an account with BLMIS, had a positive equity balance as of December 11, 2008, and was not indebted to BLMIS for any amounts.

28.    Because the Trustee has failed to discharge his duties to pay to the Guritzky Partnership the $500,000 advance owing to it under SIPA, the Trustee is in breach of his duties. The Guritzky Partnership objects to the Trustee's continued refusal to comply with his obligation to pay it the SIPA advance.

**Fourth Objection. <u>The Trustee Has No Power to Avoid a Settled Transaction Between a Customer and a Stockbroker Pursuant to Bankruptcy Code Section 546(e)</u>**

29.    Pursuant to Section 546(e) of the Bankruptcy Code, a Trustee may not avoid a settled transaction made pursuant to a securities contract between a customer and a stockbroker or securities clearing agency, except in the case of an intentionally fraudulent transfer. *See* 11 U.S.C. § 546(e). Section 546(e) is a "safe harbor" for settled transactions, and was enacted to

"protect the nation's financial markets from the instability caused by the reversal of settled securities transactions." *In re Enron Corp.*, 328 B.R. 58, 66 (Bankr. S.D.N.Y. 2005).

30.    Section 546(e) was also enacted to "ensure that the avoiding powers of a trustee are not construed to permit margin or settlement payments to be set aside except in cases of fraud [by the purchaser]." *QSI Holdings Inc. v. Alford*, 382 B.R. 731, 738 (W.D. Mich. 2007) (brackets in original) (quoting *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 878 F.2d 742, 751 (3d Cir. 1989) (quoting H.R. REP. NO. 97-420 (1982) ("1982 House Report"), reprinted in 1982 U.S. Code Cong. & Admin. News 583, 583)).

31.    In fact, the 1982 House Report quoted above, which accompanied the bill when it was considered and passed by both the House and the Senate, provides as follows:

> The thrust of several of the amendments contained in H.R. 4935 is to clarify and, in some instances, broaden the commodities market protections and expressly extend similar protections to the securities market. The amendments will ensure that the avoiding powers of a trustee are not construed to permit margin or settlement payments to be set aside except in the cases of fraud . . . .

In addition, the 1982 House Report further elaborates on the type of fraud that is to be excepted from the protections of Section 546(e):

> Section 4 creates a new Section 546(d) [now designated as 546(e)]. This amendment is made simultaneously with the repeal of Section 764(c) of Title 11 [the predecessor version of 546(e)]. Section 546[e], together with provisions of section 548, prohibits a trustee from avoiding a transfer that is a margin payment . . . or is a settlement payment . . . , except where the transfer was made with intent to hinder, delay, or defraud other creditors and was not taken in good faith.

32.    Further, Senator Dole's remarks on the passage of the bill's Section 4, creating Section 546(d) [now 546(e)], emphasize the same limitation:

> Simultaneously with the repeal of section 764(c) of title 11, section 4 of H.R. 4935 would create a new section 546(d). Section 764(c), together

with the provisions of section 548, generally prohibits a trustee from avoiding a transfer that is a margin payment or settlement payment, except where the transfer, first, was made with an actual intent to hinder, delay, or defraud other creditors and second, was not taken in good faith by the recipient.   These provisions apply to margin or settlement payments made by a debtor, whether or not such debtor is a commodity broker.   The new section 546(d) reiterates and clarifies the provisions of current section 764(c).

33.     Accordingly, Congress clearly intended that the actual fraud exception to Section 546(e) be interpreted narrowly to encompass only those situations where the settlement or margin payment was not taken in good faith.

34.     Based upon the clear legislative history, Section 546(e) protects settled transactions in which customers like the Guritzky Partnership acted in good faith.   The Guritzky Partnership finalized dozens of settlement payments with BLMIS over the life of its accounts, and BLMIS acted as its stockbroker/securities clearing agent pursuant to a valid securities contract.   The Guritzky Partnership did not act with bad faith with respect to its transactions with BLMIS, and of course had no knowledge of, much less participation in, Bernard Madoff's criminal wizardry.   Accordingly, the safe harbor protection of Section 546(e) disallows any attempt by the Trustee to avoid settled transactions completed on behalf of the Family Partnership "B" Account.

**Fifth Objection.   <u>The Trustee Has No Avoidance Powers Outside the Statute of Limitations.</u>**

35.     The Guritzky Partnership objects to the Trustee's improper attempt to "claw back" any amounts distributed to it over the entire life of the Family Partnership "B" Account with BLMIS, and outside the relevant statutory limitations periods.

36.     As described in the Fourth Objection above, Section 546(e) of the Bankruptcy

Code limits the Trustee's "claw back" claims to claims of intentional fraud by the transferor

under Section 548(a)(1)(A).  Pursuant to §548(a)(1)(A), the Trustee may not avoid any transfer

or distribution as fraudulent beyond a two-year statute of limitations.    The Trustee has the

burden of establishing that the transfer or distribution was made with actual intent to defraud,

hinder, or delay creditors.

37.     The Trustee certainly has not met such a burden in the case of the Guritzky

Partnership, nor can the Trustee meet this burden.  The Guritzky Partnership is an innocent

victim of the BLMIS fraud. The Guritzky Partnership is not alone in that it was a Madoff

customer that had no knowledge of or participation in the Madoff fraud. The Trustee has not

even attempted to present facts or arguments to the contrary. Therefore the Trustee cannot

recover <u>any</u> transfer or distribution as fraudulent, let alone a transfer outside of the 2-year statute

of limitations.

38.     The Trustee has no power to ignore the plain language of Sections 546(e) and

548(a)(1) of the Bankruptcy Code.  The Trustee would have the Court believe that there is an

unwritten Ponzi scheme exception which creates enormous powers for the Trustee to reach back

to the beginning of time to avoid legitimate transactions and distributions to which the Guritzky

Partnership (and other BLMIS customers) was entitled.

39.     There is no Ponzi scheme exception within the Bankruptcy Code's avoidance

provisions.   The Bankruptcy Code provisions have language that is clear, specific, and

controlling.  The treatment of a SIPC claim under SIPA is distinct from the Trustee's avoidance

powers under the Bankruptcy Code.  A Trustee's avoidance powers under SIPC, if any, are

limited to those set forth in Chapter 5 of the Bankruptcy Code.  Thus, a Trustee may avoid

11

fraudulent conveyances only within the limitations established by the Bankruptcy Code. In this case, those limitations dictate that only intentionally fraudulent conveyances can be avoided, and only within a two-year period from the date of the bankruptcy filing.

40.     The Guritzky Partnership established what it always understood to be a legitimate investment account with BLMIS over a decade ago, and committed no fraud in the process. For the Trustee to stretch his two-year avoidance powers to somehow envelop a lifetime of legitimate account investments shows an abject disregard for the law of the land.

41.     Accordingly, the Guritzky Partnership objects to the Trustee's attempt to avoid any transactions prior to December 11, 2006, which represents a two-year period culminating with the SIPA liquidation filing against BLMIS.

**Sixth Objection.  The Trustee Must Recognize an Off-Set of Any Taxes Family Partnership "B" Paid Related to "Income" it Purportedly Earned From BLMIS.**

42.     The Trustee has no basis to recover any amounts from the Guritzky Parties related to Family Partnership "B" account. The Guritzkys made valid deposits of real money to BLMIS to invest in the Family Partnership "B" Account. BLMIS reported to the Guritzkys that these investments were being made, and that the securities that were purchased appreciated in value over time. Based on these statements, which the Guritzkys had no reason to disregard or doubt, the Guritzkys paid taxes to the IRS.

43.     These taxes reflected significant outlays of money from the Guritzkys and Family Partnership "B", and both the Guritzkys and Family Partnership "B" have been damaged as such.

44.     However, the Trustee did not make any reference to, or make any accommodation for, taxes Family Partnership "B" paid on the "income" and distributions they received from BLMIS. The Trustee issued a Determination of Claim which did not in any way reflect the taxes paid by Family Partnership "B" on the purported fictitious investment income.

12

45.    To the extent the Trustee attempts to recover any amounts from Family Partnership "B," the Trustee must recognize and off-set all amounts that the Family Partnership "B" paid in taxes to the IRS based on the appreciated values reflected on the BLMIS statements and Forms 1099.

## JOINDER

46.    The Guritzky Partnership hereby joins in all other objections to the Trustee's Determination of Claims filed by other SIPA claimants, and incorporates those objections by reference herein, including but not limited to, the SEC's argument that the Trustee must make its determinations of claims incorporating the time value of money (i.e. interest on payments to investors). The Guritzky Partnership reserves the right to address any and all of the arguments raised in such other objections at any hearing or proceeding to take place in connection with this Objection.

## RESERVATION OF RIGHTS

47.    The Guritzky Partnership expressly reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground shall not be deemed a waiver of its rights to object on any additional grounds.

## RELIEF REQUESTED

48.    For the reasons stated herein, the Guritzky Family Partnership "B" Account claim should be allowed in its entirety.

49.    The Trustee should immediately pay to the Guritzky Partnership a SIPA advance of $500,000 towards its claims against BLMIS, as it maintained a net equity balance well over $500,000 as of the BLMIS bankruptcy date.

50.   The Guritzky Partnership seeks a determination by the Court that the Trustee may not avoid any settled transactions on its BLMIS account, which are protected by the safe harbor provisions of Section 546(e) of the Bankruptcy Code.

51.   The Trustee's determination of the Guritzky Partnership's indebtedness to the BLMIS estate should be denied in its entirety. The Guritzky Partnership seeks a determination by the Court that the Trustee may not avoid any transfers which occurred outside the statute of limitations period, namely outside the period from December 11, 2006-December 11, 2008.

52.   The Guritzky Partnership seeks a determination by the Court that to the extent the Trustee seeks to recover any amounts from the Guritzky Partnership, such amounts must be off-set and/or netted against the amounts that the Family Partnership "B" account paid in taxes related to income it reportedly earned on its BLMIS investments.

53.   The Guritzky Partnership requests interest at the statutory rate on its account balances as of December 11, 2008, in addition to pre-judgment interest.

54.   The Guritzky Partnership requests interest at the statutory rate on the taxes it paid related to the income it earned on the BLMIS account.

55.   The Guritzky Partnership requests such other relief as may be just and proper.

Dated: July 21, 2010

ARENT FOX LLP

/s/ Hunter T. Carter
Hunter T. Carter
James M. Sullivan
Shawanna L. Johnson
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Attorneys for Guritzky Family Partnership LP*

14

# EXHIBIT A

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number:   1G0238
GURITZKY FAMILY PARTNERSHIP LP
"B"

(If incorrect, please change)

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of December 11, 2008:
   a.   The Broker owes me a Credit (Cr.) Balance of       $____ –0– ____
   b.   I owe the Broker a Debit (Dr.) Balance of       $____ –0– ____

502180406                              1

c.    If you wish to repay the Debit Balance,
      please insert the amount you wish to repay and
      enclose a check payable to "Irving H. Picard, Esq.,
      Trustee for Bernard L. Madoff Investment Securities LLC."
      If you wish to make a payment, it must be enclosed
      with this claim form.

d.    If balance is zero, insert "None."                          NONE

2.    Claim for securities as of December 11, 2008:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |
| c. | If yes to either, please list below: | | |

See attached   11/30/08 - statements from Madoff
               6/13/05 Portfolio Management Report

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim a copy of the complaint. Send all related correspondence, as well as copies of any replies that you received.

PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 8.

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | unknown (see attach |  |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |

9.    Have you or any member of your family
      ever filed a claim under the Securities
      Investor Protection Act of 1970? If
      so, give name of that broker.

      Please list the full name and address of anyone who assisted you in the
      preparation of this claim form.    N/A

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.

Date _____1/20/09_____    Signature _____ Partner

Date _____1/20/09_____    Signature _____ Partner

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4

## GURITZKY FAMILY PARTNERSHIP, LP

Customer/claimant does not know if Ruth Madoff is one of the persons listed on Question 4 of the Claim form. If she is, however, then claimant discloses in answer to Question 6, that one of the general partners, Brenda H. Guritzky, is a cousin to Ruth Madoff.

January 20, 2009

_____
Brenda H. Guritzky, partner

# EXHIBIT B



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

GURITZKY FAMILY PARTNERSHIP LP

**PAGE** 1
**PERIOD ENDING** 11/30/08
**YOUR ACCOUNT NUMBER** 1-G0238-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TYPE | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | |
| 11/12 | 2,262 | | 38569 | WAL-MART STORES INC | 55.830 | 126,377.46 | |
| 11/12 | 1,479 | | 4071 | INTERNATIONAL BUSINESS MACHS | 87.270 | 129,131.33 | |
| 11/12 | 5,481 | | 7895 | EXXON MOBIL CORP | 72.880 | 399,674.28 | |
| 11/12 | 6,003 | | 8397 | INTEL CORP | 14.510 | 87,343.53 | |
| 11/12 | 2,871 | | 12123 | JOHNSON & JOHNSON | 59.580 | 171,168.18 | |
| 11/12 | 3,915 | | 17048 | J.P. MORGAN CHASE & CO | 36.530 | 191,000.95 | |
| 11/12 | 2,088 | | 21374 | COCA COLA CO | 44.660 | 93,333.08 | |
| 11/12 | 1,218 | | 25700 | MCDONALDS CORP | 55.370 | 67,488.66 | |
| 11/12 | 2,862 | | | VERIZON COMMUNICATION | 22.950 | 66,079.10 | |
| 11/12 | 8,265 | | 34952 | MICROSOFT CORP | 21.810 | 181,938.65 | |
| 11/12 | 4,176 | | 38678 | ORACLE CORPORATION | 17.300 | 72,411.80 | |
| 11/12 | 1,653 | | 51656 | PEPSICO INC | 56.410 | 93,251.73 | |
| 11/12 | 957 | | 53105 | APPLE INC | 100.780 | 96,546.46 | |
| 11/12 | 7,047 | | 54062 | CISCO SYSTEMS INC | 20.270 | 143,070.18 | |
| 11/12 | 1,653 | | 56484 | ABBOTT LABORATORIES | 54.610 | 90,336.33 | |
| 11/12 | 3,132 | | 60301 | PROCTER & GAMBLE CO | 64.580 | 202,642.56 | |
| 11/12 | 1,331 | | 62089 | CHEVRON CORP | 74.060 | 98,673.86 | |
| 11/12 | 2,175 | | 64434 | PHILIP MORRIS INTERNATIONAL | 43.660 | 94,917.50 | |
| 11/12 | 5,220 | | 65236 | BANK OF AMERICA | 21.590 | 112,907.80 | |
| 11/12 | 1,740 | | 68452 | QUALCOMM INC | 33.770 | 58,828.80 | |
| 11/12 | 5,655 | | 68462 | CITI GROUP INC | 12.510 | 70,770.05 | |
| 11/12 | 1,305 | | 72386 | SCHLUMBERGER LTD | 49.480 | 64,623.40 | |
| 11/12 | 3,132 | | 73786 | COMCAST CORP CL A | 16.510 | 51,834.32 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ◻ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (20) 7493 6222

GURITZKY FAMILY PARTNERSHIP LP
"B"

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 6,177 | | 77612 | AT&T INC | 27 | 167,026.00 | |
| 11/12 | 1,566 | | 78114 | CONOCOPHILLIPS | 52.510 | 82,292.66 | |
| 11/12 | 1,044 | | 83938 | UNITED PARCEL SVC INC CLASS B | 52.040 | 54,370.76 | |
| 11/12 | 6,351 | | 82440 | CISCO SYSTEMS INC | 16.730 | 106,506.23 | |
| 11/12 | 1,827 | | 86264 | U S BANCORP | 29.530 | 54,024.31 | |
| 11/12 | 2,175 | | 88766 | CHEVRON CORP | 73.430 | 159,797.25 | |
| 11/12 | 1,044 | | 90590 | UNITED TECHNOLOGIES CORP | 51.160 | 53,548.04 | |
| 11/12 | 11,049 | | 91592 | GENERAL ELECTRIC CO | 19.630 | 217,332.87 | |
| 11/12 | 2,958 | | 96520 | VERIZON COMMUNICATIONS | 30.410 | 90,070.78 | |
| 11/12 | 261 | | 95418 | AVON | 337.400 | 88,071.40 | |
| 11/12 | 3,654 | | 99242 | WELLS FARGO & CO NEW | 29.800 | 109,035.20 | |
| 11/12 | 2,610 | | 99744 | HEWLETT PACKARD CO | 34.900 | 91,193.00 | |
| 11/12 | | 3,950,000 | 21854 | U S TREASURY BILL DUE 2/12/2009 | 99.936 | | 3,947,472.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 10/31/08 | DIV | | 15.63 |
| 11/12 | | 28,503 | 16953 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 28,503.00 |
| 11/12 | 18,318 | | 26324 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 18,318.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 2.25 |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

GURITZKY FAMILY PARTNERSHIP LP
*g*

YOUR ACCOUNT NUMBER: 1-50238-3-0
PERIOD ENDING: 11/30/08
PAGE: 3

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 18,318 | 51694 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 18,318.00 |
| 11/19 | 275,000 | | 56295 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 274,796.50 | |
| 11/19 | 4,176 | | 60733 | FIDELITY SPARTAN 3/26/2009 U S TREASURY MONEY MARKET | 1 | 4,176.00 | |
| | | | | NEW BALANCE | | 492,035.85 | |
| | | | | SECURITY POSITIONS | NET PRICE | | |
| | 6,177 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 1,653 | | | AMGEN INC | 55.540 | | |
| | 1,111 | | | APPLE INC | 92.670 | | |
| | 937 | | | BANK OF AMERICA | 14.550 | | |
| | 5,220 | | | CHEVRON CORP | 79.010 | | |
| | 2,175 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 6,351 | | | CITI GROUP INC | 8.290 | | |
| | 5,695 | | | COCA COLA CO | 44.870 | | |
| | 2,088 | | | COMCAST CORP | 17.340 | | |
| | 3,132 | | | CL A | | | |
| | 1,566 | | | CONOCOPHILLIPS | 52.520 | | |
| | 5,481 | | | EXXON MOBIL CORP | 80.150 | | |
| | 11,049 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

GURITZKY FAMILY PARTNERSHIP LP
"B"

YOUR ACCOUNT NUMBER: 1-G0238-3-0
PERIOD ENDING: 11/30/08
PAGE: 4

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 261 | | | GOOGLE | 292.960 | | |
| | 2,610 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 6,003 | | | INTEL CORP | 13.800 | | |
| | 1,479 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 3,915 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 2,871 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 1,218 | | | MCDONALDS CORP | 58.750 | | |
| | 2,262 | | | MERCK & CO | 26.720 | | |
| | 8,265 | | | MICROSOFT CORP | 20.220 | | |
| | 4,176 | | | ORACLE CORPORATION | 16.090 | | |
| | 1,653 | | | PEPSICO INC | 56.700 | | |
| | 7,047 | | | PFIZER INC | 16.430 | | |
| | 2,175 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 3,132 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 1,740 | | | QUALCOMM INC | 33.570 | | |
| | 1,305 | | | SCHLUMBERGER LTD | 56.740 | | |
| | 4,176 | | | FIDELITY SPARTAN | 1 | | |
| | 1,827 | | | U S TREASURY MONEY MARKET | 26.980 | | |
| | 1,044 | | | U S BANCORP | 57.600 | | |
| | | | | UNITED PARCEL SVC INC | | | |
| | 275,000 | | | CLASS B | 99.971 | | |
| | | | | U S TREASURY BILL | | | |
| | | | | DUE 03/26/2009 | | | |
| | 1,044 | | | 3/26/2009 | 48.530 | | |
| | | | | UNITED TECHNOLOGIES CORP | | | |
| | | | | CONTINUED ON PAGE 5 | | | |

CONTINUED ON PAGE 5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

GURITZKY FAMILY PARTNERSHIP LP
"B"

YOUR ACCOUNT NUMBER: 1-G0238-3-0

PERIOD ENDING: 11/30/08

PAGE: 5

| DATE | BOUGHT<br>RECEIVED OR LONG | SOLD<br>DELIVERED OR SHORT | TYPE | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED<br>TO YOUR ACCOUNT | AMOUNT CREDITED<br>TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 2,958 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 2,262 | | | WAL-MART STORES INC | 55.880 | | |
| | 3,654 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG | | | |
| | | | | SHORT | | | |

THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

GURITZKY FAMILY PARTNERSHIP LP

PAGE 6

PERIOD ENDING 11/30/08

YOUR ACCOUNT NUMBER 1-60238-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | |
| | | | | GROSS PROCEEDS FROM SALES | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



# EXHIBIT C

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

June 24, 2010

Guritzky Family Partnership LP "B"

████████████████████████

Dear Guritzky Family Partnership LP "B":

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1G0238 designated as Claim Number 1027:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of ████████████ ), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of ████████████ ). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account (            was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is DENIED in its entirety.

On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

PLEASE TAKE NOTICE: If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you MUST file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within THIRTY DAYS after June 24, 2010, the date on which the Trustee mailed this notice.

2

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_Irving H. Picard_
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3