UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**ORDER REQUESTING ASSISTANCE OF THE QUEEN'S BENCH DIVISION OF THE
HIGH COURT TO ORDER DISCLOSURE BY DEUTSCHE BANK AG LONDON**

This Court, upon the showing of good cause and evidence submitted in the application of

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15

U.S.C. §§ 78aaa, *et seq*. ("SIPA"), and as trustee for the estate of Bernard L. Madoff ("Madoff"),

finds as follows and requests the assistance of the Queen's Bench Division of the High Court to

enter an Order of the High Court for the delivery of specific documents, subject to the following

terms and conditions:

1.      The Court finds that the specific documents listed in Schedule I are likely to be in

the possession, custody or control of Deutsche Bank AG - London and that such documents are

likely to include or lead to the discovery of material evidence relevant to the Trustee's

investigation of the fraud perpetrated by BLMIS, consistent with the Trustee's statutory

investigatory authority as set forth in SIPA.

2.      The Court requests an order compelling the production of these documents to the

Queen's Bench Division of the High Court for transmittal to this Court.


Dated:  New York, New York
          August ___, 2010
                                                        _____
                                                        HONORABLE BURTON R. LIFLAND
                                                        UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE I
## LETTER OF REQUEST TO DEUTSCHE BANK AG LONDON

### A.   DEFINITIONS AND INSTRUCTIONS

1.     The terms "Deutsche Bank," "you" and "your" mean and include Deutsche Bank AG London and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2.     The term "Maxam Funds" means and includes the Maxam Absolute Return Fund, L.P., the Maxam Absolute Return Fund Limited, and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative of either entity, including but not limited to Maxam Capital Management LLC.

3.     The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities LLC, its parents, affiliates, representatives, employees, and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; and Abel Holdings, LLC; (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff; (c) employees of Bernard L. Madoff Investment Securities LLC and all relatives, including, but not limited to, Frank DiPascali, Jr., Joanne DiPascali, Annette Bongiorno, Daniel Bonventre, Rudy DiPascali, Eric Lipkin, Irwin Lipkin, Erin Reardon, Enrica Contellessa-Pitz, and Thomas Pitz; and (d) Carl Shapiro, Stanley Chais, Jeffry Picower, J. Ezra Merkin.

4.     The term "Feeder Fund" means and includes the Maxam Funds or any other hedge fund, fund of fund, or other investment vehicle invested through Madoff, and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative of any of the foregoing entities in this definition.

5.     The term "account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value.

6.     The term "Fund Account" means any account into which you or any of your customers received funds, whether by wire transfer or check, from any or all of: Madoff, the Maxam Funds, or any Feeder Fund including without limitation any Deutsche Bank products, funds or other financial vehicles with Citco Global Custody account numbers REF190184 Dublin (Class B) or MO1 0032074529.

7.      The term "document" specifically includes responsive content regardless of the media upon which it is expressed including but not limited to paper, physical evidence and electronically stored information. "Document" includes but is not limited to all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted.  "Document" includes but is not limited to voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations.  The term "document" includes "metadata" which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business.   The term "document" includes all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc.  The term "document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term.  Identical copies of "documents" stored in distinct locations are separate documents within the meaning of this term.

8.      As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, and specifically includes:  (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) e-mail, text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

9.      As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

10.     The following rules of construction apply to this Subpoena:

   (a)     "Any" and "all" shall be deemed to include the other;

   (b)     the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

   (c)     the terms "all" and "each" shall be construed as "all and each"; and

   (d)     the use of the singular form of any word includes the plural and vice versa.

11.     Except as otherwise noted, this Subpoena requires the production of documents created on or after July 2006 (the "Relevant Period").

12.     Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

13.     Produce the original of each document requested together with all non-identical copies

and drafts of that document.  If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

14.     Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

15.     Documents attached to each other should not be separated; separate documents should not be attached to each other.

16.     Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

17.     If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Corporation Trustee to evaluate the claimed privilege or protection.  At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

18.     If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state:  (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

## B.     DOCUMENTS TO BE PRODUCED

1.     All documents concerning any Fund Account, including:

    (a)     monthly statements, including account numbers;

    (b)     present and historical account balance information;

    (c)     incoming and outgoing wire transfer records;

    (d)     copies of checks, both deposited and drawn;

    (e)     records reflecting cash activity;

    (f)     account opening documents;

    (g)     administrative or custodial agreements relating to any Fund Account; and

    (h)     account closing documents.

2.      To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between the Fund Accounts.

3.      To the extent not provided pursuant to the foregoing requests, all documents reflecting or relating to transfers and/or transactions between Maxam Absolute Return Fund Limited and the Fund Accounts.

4.      All documents that reflect or relate to communications relating to the Fund Accounts and either Madoff, the Maxam Funds, or any Feeder Fund.

5.      All documents, agreements and/or contracts including, but not limited to, line of credit agreements, letters of credit, promissory notes and security agreements related to any lines of credit/letters of credit maintained by or for the benefit of any of the Fund Accounts or holders of the Fund Accounts.

6.      All documents reflecting or relating to due diligence reports, reviews, investigations, analyses, or studies performed by Deutsche Bank relating to any Fund Account, Madoff, the Maxam Funds or any Feeder Fund.

7.      All documents reflecting or relating to due diligence reports, reviews, investigations, analyses, or studies conducted by third parties relating to any Fund Account, Madoff, the Maxam Funds or any Feeder Fund.

8.      To the extent not provided pursuant to the foregoing requests, documents sufficient to identify the beneficial owners and/or account holders of any Fund Account, including the identity, location, and contact name of any beneficial owners and/or account holders.

9.      To the extent not provided pursuant to the foregoing requests, documents reflecting or relating to the investment products offered by the Fund Account to its beneficial owners, including but not limited to prospectuses and private placement memoranda.

10.     To the extent not provided pursuant to the foregoing requests, documents reflecting redemptions by any Fund Accounts.

11.     To the extent not provided pursuant to the foregoing requests, documents reflecting the reasons for each redemption by any Fund Accounts.

12.     Documents sufficient to identify any Madoff-related litigation hold in place at Deutsche Bank including the date the hold was initiated and the scope of the hold, including, but not limited to, identifications of all persons, employees, etc. subject to such hold.

13.     Documents sufficient to show the document production/preservation policies in place at Deutsche Bank.

## C.     HOW DOCUMENTS ARE TO BE PRODUCED

1.      All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of

business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the requesting party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2.      All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database.  Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.      Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.      Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database.  The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams.  Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.      Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.      Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content.  In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable.  In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.