

**Kohrman Jackson & Krantz**<sup>PLL</sup>

ATTORNEYS AT LAW



RECEIVED
JUL 30 2010
U.S. BANKRUPTCY COURT, SDNY

July 27, 2010

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
Courtroom 623
New York, NY 10004

Re:   Written Objection to Determination and Request for Hearing

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, United States Bankruptcy Court, Southern District of New York, Adv. No. 08-01789

Lynn Ott:   Robert Rosenberg (IRA)
BLMIS Account Number: 1EM302
Claim Numbers: 3490, 3491, 3492 and 3493
Date of Determination: July 22, 2010
Amount: $1,374,131.66

Dear Judge Lifland:

This office represents Madoff victim Lynn Ott. Ms. Ott is the daughter of Robert Rosenberg (deceased) who opened an IRA with Bernard L. Madoff Investment Securities LLC in 1994. Ms. Ott is a retired school teacher who inherited the account from her father when he died in 2005.

The purpose of this correspondence is to appeal the July 22, 2010 final determination of Trustee Irving Picard denying Ms. Ott's claim. In so doing, we note that the Trustee's final determination fails to reference or take into consideration any of the legal or factual issues previously raised in Ms. Ott's prior appeal letter dated November 30, 2009.

We apologize for the late timing of this correspondence. However, despite the fact that Ms. Ott filed her claims on February 3, 2009 the Trustee's final determination was issued July 22, 2010, well after the Court's deadline for briefing the SIPC issues and even after the Court's February 2, 2010 hearing on net equity calculations.

With regard to the issue of timing it is also noted that the Court's Order of March 1, 2010 found significant that *"not all* Madoff claimants objected to the Trustee's determination of Net Equity." Order, p. 8. Surely, however, the Court realizes that *"not all"* claimants had standing to raise an objection at the time because the Trustee had dallied for more than a year and had not even adjudicated many investor claims.
V 216-736-7209
F 216-621-6536
E ahj@kjk.com

One Cleveland Center
20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793
216-696-8700
www.kjk.com

**Cleveland and Columbus**

*Member of:*

MERITAS LAW FIRMS WORLDWIDE

{K0215042.2}


**Kohrman Jackson & Krantz**ᴾᴸᴸ
ATTORNEYS AT LAW

Though the Trustee's determination includes a purported chart of deposits and withdrawals, the Trustee has provided no copies of records and no account documentation to support his determination. Critically, we believe that the figure of $495,566.17 does not accurately reflect the total of deposits made by Mr. Rosenberg from 1994 until his death.

The account at issue was established by Robert Rosenberg and passed to his daughter upon Mr. Rosenberg's death. We question the fundamental assumption of the Trustee that it is entitled to offset deposits and withdrawals made by the prior account owner. If the Trustee is allowed to pursue this plan the result could be for the Trustee to initiate so-called clawback claims against a current account holder even if all withdrawals were made by a prior account owner.

Unlike the case of an investor in an ordinary account who controls the amount and timing of his withdrawals, here we are addressing a substantial IRA account that was subject to mandatory withdrawals that should not have the effect of penalizing the owner.

As Mr. Rosenberg is deceased, not only have taxes been paid on all withdrawals, but substantial estate taxes were also paid at the time of Mr. Rosenberg's death.

It is a fallacy of the Trustee's analysis to perform calculations based upon when the fraud was discovered and not when it occurred. In the Trustee's scheme a fraud perpetrated in 1994 that resulted in an immediate theft of investor assets would be subject to a SIPC recovery only after it was discovered and adjudicated – in this case 15 years later. By contrast, if the fraud were discovered at the time it had occurred, the victim could have been compensated in 1994 and had the benefit of their funds without waiting years for the perpetrator to confess or the Trustee to process the paperwork. The time-value calculation effectuated by such delayed justice serves only to enrich SIPC and penalize the investor.

The Trustee's bi-partite legal argument that: 1) investors are not entitled to rely upon the stated values of their fraudulent accounts, and 2) "cash in/cash out" is the only relevant calculation, remains contrary to law. It is also inexplicably contrary to the argument successfully raised by Trustee's own law firm of Baker & Hostetler in settling *Bonutti v. Lehman Brothers, Inc.*, United States District Court, Northern District of Ohio, Case No. 1:02-CV-1018, a case arising out of $280 million in false account statements sent out over a 15 year period by former Cowen, SG Cowen and Lehman broker Frank Gruttadauria.

In *Bonutti*, Baker & Hostetler attorneys Daniel Warren, Daniel Mascaro, Geoffrey Mearns and Melissa Eckhouse argued that an investor in a Ponzi scheme perpetrated by a stock broker was entitled to rely upon the false

{K0215042.2}


Kohrman
Jackson &
Krantz PLL
ATTORNEYS AT LAW

statements of purchases and sales that had been made over a period of many years in his account. Baker & Hostetler specifically rejected calculation of the broker-dealer that there were no damages based upon "cash in/cash out." Instead, Baker & Hostetler argued that the client was entitled to base his claim upon fake statements and millions of dollars in false profits.

As set forth in the *Bonutti* Complaint, the damage claims against the broker-dealer were predicated upon the fact that the broker-dealer "refused to provide [client] with the benefit of the many purchases and sales of stock that, for years, [broker] represented had been made for [client's] accounts." *Bonutti* Complaint, ¶4. Further, Baker & Hostetler argued that its client was entitled to recover $16 million as set forth on his false statements in 2001, though the client had deposited only $4 million in 1991. *Bonutti* Complaint, ¶30. As Baker & Hostetler concluded, "[i]n short, [client] has lived his life based upon the representations that the [broker and broker/dealer] made to him over a period of years about his investment account – representations that they now seek to disavow." *Bonutti* Complaint, ¶42.

This argument for damages based upon false statements and rejecting the "cash in/cash out" formula was followed up by Baker & Hostetler in the related Gruttadauria case of *Visconsi v. Lehman Brothers*, 2007 U.S. App. LEXIS 19088 (6th Cir.).

In *Visconsi* the Plaintiffs were jointly represented by the law firms of Baker & Hostetler; Porter, Wright, Morris & Arthur and Kellogg, Huber, Hansen, Todd, Evans & Figel.

In *Visconsi* the investors deposited $21 million, withdrew $25.8 million and had false account statements showing a balance of $37.9 million. Nevertheless, the Sixth Circuit affirmed an arbitration award of $10.2 million holding that Lehman's out-of-pocket theory of damages "misapprehends" the harm suffered by the recipients of the false statements finding this to be a "wholly inadequate" measure of damages.

Though not binding upon this Bankruptcy Court, one should also take notice that there have been several FINRA, NASD and NYSE arbitration cases (where most customer-broker fraud disputes are adjudicated – not in court) that have awarded damages to a customer based upon their reliance on fraudulent statements – even where withdrawals exceeded deposits. In fact, at times, the SEC and the NYSE have gone so far as to create special arbitration processes to benefit victims of such matters. See: http://www.sec.gov/news/press/2003-96.htm.

Though admittedly SIPC carries an independent regulatory construct, Trustee's argument that only "cash in/cash out" matters for the purpose of calculating damages is irreconcilably opposite to the argument that Baker

{K0215042.2}



**Kohrman Jackson & Krantz**<sup>PLL</sup>
ATTORNEYS AT LAW

&Hostetler successfully made in litigation and settlement of both the *Bonutti* and *Visconsi* cases.

In addition to the issues previously raised by other claimants, we note that the Trustee has provided no copies of records and no account documentation to support his determination.

Moreover, it is a fallacy of the Trustee's analysis to perform calculations based upon when the fraud was discovered and not when it occurred. In the Trustee's scheme a fraud that resulted in an immediate theft of investor assets would be subject to a SIPC recovery only after it was discovered and adjudicated – in this case decades later.

By contrast, if the fraud were discovered at the time it had occurred, the victim could have been compensated promptly and had the benefit of their funds without waiting years for the perpetrator to confess or the Trustee to process the paperwork. The time-value calculation effectuated by such delayed justice serves only to enrich SIPC and penalize the investor.

In conclusion, based upon the foregoing, we request that the Trustee's determination of November 19, 2009 be reversed and that Lynn Ott's claim be allowed in its entirety. At this time, due to the numerosity of claimants and attorneys already involved, counsel is not entering an appearance in this case nor seeking admission to the Court Pro Hac Vice. However, we would welcome the opportunity to brief these matters further or present these arguments at any hearing should this Court desire.

Respectfully,

*/s/ Ari H. Jaffe*
Ari H. Jaffe

Encl.

cc: Lynn Ott
    Peggy Beistel
    Irving Picard, Trustee
    Kevin H. Bell
    Clerk of the United States Bankruptcy Court

/kas

{K0215042.2}

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S FINAL DETERMINATION OF CLAIM

July 22, 2010

Robert Rosenberg (IRA)
c/o Ari Jaffe, Esq.
Kohrman, Jackson & Krantz
1375 East 9th Street, 20th Floor
Cleveland, OH 44114
Attention: Lynn Ott, Executor of the Estate of Robert Rosenberg

Dear Robert Rosenberg (IRA):

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

Pursuant to a Notice of Trustee's Determination of Claim dated November 19, 2009 (the "Initial Notice"), the Trustee made a determination regarding your claims on BLMIS Account No. 1EM302, then designated as Claims Numbered 3490, 3491, 3492 and 3493.

This Notice of Trustee's Final Determination of Claim serves as the Trustee's final determination with respect to the BLMIS Account referenced above.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300095803.1

The Trustee has made the following final determination regarding your claims on BLMIS Account No. 1EM302 designated as Claims Numbered 3490, 3491, 3492 and 3493, as well as claims 100051, 100052, 100053 and 100054 (Claims Numbered 3491, 3492, 3493 and Claims Numbered 100051, 100052, 100053 and 100054 are duplicative of Claim No.3490 and are combined ("Combined Claim") for purposes of this final determination. This letter shall serve as the Trustee's final determination with respect to the Combined Claim.

Your Combined Claim for a credit balance of $1,374,131.66 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $856,891.75), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $495,566.17). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($361,325.58) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after July 22, 2010, the date on which the Trustee mailed this notice.

300095803.1

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

>Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

>and

>Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: Millennium Trust Co.
FBO Robert Rosenberg (36885)
820 Jorie Blvd., Suite 420
Oak Brook, IL 60523

300095803.1

### Table 1

#### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 5/2/1994 | CHECK | $85,420.90 |
| 5/9/1994 | CHECK | $34,700.00 |
| 5/18/1994 | CHECK | $25.00 |
| 4/17/1995 | CHECK | $95,674.17 |
| 5/1/1995 | CHECK | $180,090.09 |
| 11/16/1995 | CHECK | $44,149.01 |
| 9/28/2001 | CHECK | $55,507.00 |
| **Total Deposits:** | | $495,566.17 |

#### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 11/26/1996 | CHECK | ($24,200.00) |
| 12/17/1997 | CHECK | ($28,332.00) |
| 12/21/1998 | CHECK | ($34,175.00) |
| 12/16/1999 | CHECK | ($40,872.00) |
| 12/6/2000 | CHECK | ($50,000.00) |
| 9/12/2001 | CHECK | ($55,507.00) |
| 12/5/2001 | CHECK | ($55,507.00) |
| 11/25/2002 | CHECK | ($62,981.31) |
| 11/26/2003 | CHECK | ($66,517.88) |
| 12/3/2004 | CHECK | ($72,853.30) |
| 12/20/2005 | CHECK | ($79,395.00) |
| 4/27/2006 | CHECK | ($38,650.78) |
| 5/5/2006 | CHECK | ($47,410.32) |
| 5/4/2007 | CHECK | ($95,842.48) |
| 2/21/2008 | CHECK | ($104,647.68) |
| **Total Withdrawals:** | | ($856,891.75) |
| **Total deposits less withdrawals:** | | ($361,325.58) |