UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |

**STIPULATED ORDER REQUESTING ASSISTANCE OF THE QUEEN'S BENCH DIVISION OF THE HIGH COURT TO ORDER DISCLOSURE BY HSBC HOLDINGS PLC AND HSBC BANK PLC**

WHEREAS on June 23, 2010 the trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and as trustee for the estate of Bernard L. Madoff ("Madoff"), Irving H. Picard, Esq. (the "Trustee") submitted an application for the entry of an Order requesting the assistance of the Queen's Bench Division of the High Court to enter Orders of the High Court for the delivery of specific documents from HSBC Holdings plc and HSBC Bank plc; and

WHEREAS on July 1, 2010 counsel to HSBC Holdings plc and HSBC Bank plc, Cleary Gottlieb Steen & Hamilton LLP filed an objection to the Trustee's application;

IT IS HEREBY STIPULATED AND AGREED, by the undersigned counsel herein, that:

1. Subject to the reservations in paragraph 3 HSBC Holdings plc and HSBC Bank plc do not object to this Court's issuance of a request for the assistance of the Queen's Bench Division of the High Court to enter Orders of the High Court for the delivery of the documents specified in Schedule I.

2. Subject to the reservations in paragraph 3, HSBC Holdings plc and HSBC Bank plc do not object to the Queen's Bench Division of the High Court entering Orders of the High Court for the delivery of the documents specified in Schedule I.

3. Any obligation of HSBC Holdings plc or HSBC Bank plc to produce the documents specified in Schedule I shall be subject to (1) the presence of the documents in the United Kingdom, and (2) limitations of English law, including but not limited to the law governing attorney-client privilege, attorney work-product, bank secrecy, and data privacy, as well as any other applicable law in other jurisdictions prohibiting or limiting disclosure of such documents, including but not limited to Luxembourg and Ireland. HSBC Holdings plc and HSBC Bank plc shall identify any categories of documents that it withholds on the basis of such law(s), and identify the relevant law(s).

4. The parties' agreement with respect to the documents requested in Schedule I is without waiver of the Trustee's right to seek further documents from HSBC Holdings plc and/or HSBC Bank plc and is without waiver of HSBC Holdings plc and/or HSBC Bank plc's objection to producing further documents.

5. The parties' agreement with respect to the documents requested in Schedule I is conditioned upon the execution of a satisfactory confidentiality agreement between HSBC Bank plc and HSBC Holdings plc and the Trustee.

Dated: New York, New York
August 9, 2010

| | |
|---|---|
| s/David E. Brodsky_____ | s/Oren J. Warshavsky_____ |
| Cleary Gottlieb Steen & Hamilton LLP | Baker & Hostetler LLP |
| One Liberty Plaza | 45 Rockefeller Plaza |
| New York NY 10006 | New York, New York 10111 |
| Telephone: 212-225-2000 | Telephone: (212) 589-4200 |
| Facsimile: 212-225-3999 | Facsimile: (212) 589-4201 |
| David E. Brodsky | David J. Sheehan |
| Email dbrodsky@cgsh.com | Email: dsheehan@bakerlaw.com |
| Thomas J. Moloney | Marc E. Hirschfield |
| Email: tmoloney@cgsh.com | Email: mhirschfield@bakerlaw.com |
| | Oren J. Warshavsky |
| | Email: owarshavsky@bakerlaw.com |
| *Attorneys for HSBC Holdings plc and HSBC Bank plc.* | Anjula Garg |
| | Email: agarg@bakerlaw.com |
| | Maryanne Stanganelli |
| | Email: mstanganelli@bakerlaw.com |
| | |
| | *Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff* |

Dated: New York, New York
August 17, 2010

 /s/Burton R. Lifland_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

3

# SCHEDULE I
# LETTER OF REQUEST TO HSBC HOLDINGS PLC AND HSBC BANK PLC

## A.     DEFINITIONS AND INSTRUCTIONS

1. The term "HSBC" refers to HSBC Holdings plc and HSBC Bank plc.

2. The term "Madoff" refers to Bernard L. Madoff Investment Securities, LLC; Madoff Securities International Limited; and any subsidiaries, affiliates, directors, agents or representatives thereof.

3. The term "document" specifically includes responsive content regardless of the media upon which it is expressed including but not limited to paper, physical evidence and electronically stored information. "Document" includes but is not limited to all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted. "Document" includes but is not limited to voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations. The term "document" includes attachments to documents, linked documents and appended documents. The term "document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term.

4. The term "KPMG Reports" refers to the KPMG reports dated 16 February 2006 and 8 September 2008 entitled "HSBC Bank plc Review of fraud and related operational risks at Bernard L. Madoff Investment Securities LLC."

5. The term "communication" specifically includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document", and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written communications, including communications by email.

6. The term "concern" or "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

7. The following rules of construction apply to this Letter of Request:

   a. "Any" and "all" shall be deemed to include the other;

   b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Letter of Request all responses that might otherwise be construed to be outside of its scope;

   c. the terms "all" and "each" shall be construed as "all and each";

4

      d.    the use of the singular form of any word includes the plural and vice versa.

8.    Except as otherwise noted, this Letter of Request requires the production of documents created in or referencing the time period from the beginning of HSBC's relationship with any of the funds invested in BLMIS until 31 December 2008, inclusive (the "Relevant Period").

9.    If any document is withheld from production due to an assertion of the attorney client privilege, the work product doctrine, bank secrecy, data privacy, or any other privilege or protection against production, HSBC shall identify any categories of documents that it withholds on the basis of such privilege(s) or protection(s), and identify the relevant privilege(s) or protection(s).

### B.    DOCUMENTS TO BE PRODUCED

1.    All HSBC due diligence reports resulting from visits to Madoff prepared from February 2000 through December 2008.

2.    The KPMG Reports, and any drafts of the KPMG Reports.

3.    The 8 September 2005 and 19 March 2008 engagement letters between KPMG LLP and HSBC Bank plc, and any drafts of the engagement letters.

4.    Any correspondence between KPMG and HSBC regarding the KPMG Reports.

5.    The audio recording of the 17 July 2008 presentation given by KPMG in connection with the KPMG reports.

6.    Any finalized contract between HSBC (or an HSBC affiliate) and any of the following funds: AA (Alternative Advantage) plc and/or Landmark Investment Fund Ireland, Alpha Prime Fund Ltd., Defender Ltd., Herald Fund SPC, Herald (LUX), Hermes International Fund Ltd., Kingate Euro Fund Ltd., Kingate Global Fund Ltd., Lagoon Investment Trust, Lagoon Investments Ltd., Optimal Multiadvisors Ltd., Optimal Multiadvisors Ireland plc, Optimal Strategic US Equity, Primeo Fund, Senator Fund SPC, Square One Fund Limited, Thema Fund, Thema International Fund plc, and Thema Wise Investments Ltd.

7.    Any sub-custodian agreement between HSBC (or an HSBC affiliate) and BLMIS.

8.    Any agreements between the funds identified in Request number 6 and BLMIS.

9.    Documents sufficient to show the transmittal of money into and out of HSBC Bank plc (or an HSBC affiliate) with respect to the funds identified in Request number 6, on or after 12 December 2006.

10.    Documents sufficient to show receipt of money on or after 12 September 2008, by HSBC (or an HSBC affiliate) from funds directly invested in BLMIS, in connection with HSBC's structured products program.

### C.      HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents shall be produced in the form or forms in which the documents are stored in the ordinary course of business, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the requesting party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4. Documents portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5. Documents portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6. Documents portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document was created or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.