Baker & Hostetler LLP                      Hearing Date: September 14, 2010
45 Rockefeller Plaza                       Hearing Time: 10:00 am
New York, NY  10111                        Objection Deadline:  September 7, 2010
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**FOURTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

095879, 300097759

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard as trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively,

"Debtor"), respectfully submits this fourth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Pursuant to Section 78eee(b)(5)

of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and

Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly

Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 [Dkt. No. 126],

as amended on December 17, 2009 [Dkt. No. 1078] (collectively, the "Compensation Order"),

allowing and awarding interim compensation for services performed by the Trustee and B&H for

the period commencing February 1, 2010 through and including May 31, 2010 (the

"Compensation Period") and reimbursement of the Trustee's and B&H's actual and necessary

expenses incurred during the Compensation Period; and in support thereof, respectfully

represents as follows:

## I.     PRELIMINARY STATEMENT

1.     During the Compensation Period, the Trustee and his counsel continued to

work diligently on behalf of customers and the estate of BLMIS, in accordance with SIPA and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C.."

under the supervision of this Court.  Above all, the Trustee and his counsel have endeavored to determine customer claims and promptly address questions and concerns of customers and creditors.

2.    Contrary to what has mistakenly been reported by various media, no administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* section 78fff(b) of SIPA, no applications filed by the Trustee have or will ever include a fee request equal to three (3%) percent (or any other percentage) of the total amount of recoveries made by the Trustee for the benefit of customers of BLMIS.  Rather, the fees and expenses of the Trustee and of all counsel to the Trustee (including, but not limited to, B&H, various international special counsel ("International Counsel") retained by the Trustee as described in ¶ 110 of the Amended Third Interim Report for the Period Ending March 31, 2010 ("Amended Third Interim Report") [Dkt. No. 2207], Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), special counsel to the Trustee, collectively referred to herein as "Counsel")), are paid from administrative advances from the Securities Investor Protection Corporation ("SIPC"), as are all administrative costs incurred by the Trustee.

3.    Thus, SIPC plays a specific role regarding compensation in a liquidation proceeding such as this one, where the general estate is insufficient to pay trustee compensation and SIPC is required to advance funds to pay the costs of administration.  *See* SIPA §§ 78fff(5) and 78fff-3(b)(2).  The requested fees and expenses in this Application only include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has

3

been applied, as described at ¶ 125-126, *infra*, and (ii) actual, necessary and reasonable expenses incurred within the Compensation Period.

4.    Since the Trustee and his Counsel's fees and expenses are chargeable to the general estate and not to customer property, as that term is defined under section 78*lll*(4) of SIPA, the payment of fees and expenses to the Trustee and/or to any of his Counsel has absolutely no impact on recoveries that the Trustee has obtained and will obtain and that will be allocated to the fund of customer property for *pro rata* distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.    No single document could capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Thousands of hours have been expended by the Trustee and B&H in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all of customer claimants by initiating litigations and negotiations for the return of customer property to be distributed by the Trustee. Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of returning customer property to the estate.  The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

## II.    BACKGROUND

6.    On December 11, 2008, Madoff was arrested by federal agents and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of

New York ("District Court"), captioned *United States v. Madoff*, No. 08 MAG 2735 (the "Criminal Case").[2]

7.      Also on December 11, 2008 (the "Filing Date" under SIPA), the SEC filed a complaint in the District Court against defendants Madoff and BLMIS, captioned *Securities & Exchange Commission v. Madoff, et al.*, No. 08 CV 10791  (the "Civil Case").  The complaint alleged that the defendants engaged in fraud through the investment advisor ("IA") activities of BLMIS.

8.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

9.      On that date, the District Court entered the Protective Decree [Civil Case Dkt. No. 4], to which BLMIS consented, which, in pertinent part:

    a.      appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; and

    b.      appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    c.      removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court" or "Court") pursuant to section 78eee(b)(4) of SIPA.

10.      By order dated December 23, 2008, this Court approved the Trustee's bond.  [Dkt. No. 11].

---

[2] On March 10, 2009, the Criminal Case was transferred to Judge Denny Chin and assigned a new docket number, No. 09 CR 213 (DC).

095879, 300097759

11.     On February 4, 2009, after a noticed hearing, this Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee [Dkt. No. 69], finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).  Thus, the Trustee and B&H are qualified to serve in this proceeding.

12.     On August 6, 2009, the Court entered an order approving both the Trustee and B&H's First Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from December 15, 2009 through April 30, 2009.  [Dkt. No. 363].  The Court awarded the Trustee an interim allowance of $607,383.00 for professional services rendered and $45.00 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $151,845.75 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $11,729,855.86 for professional services rendered and $274,203.03 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $2,932,463.97 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.  At this time, the holdback amount was twenty percent (20%) of fees incurred by the Trustee and B&H.

13.     On December 17, 2009, the Court entered an order approving both the Trustee and B&H's Second Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009.  [Dkt. No. 1078].  The Court awarded the Trustee an interim

095879, 300097759

allowance of $668,484.00 for professional services rendered and $921.25 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.    An additional $167,121.00 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $17,023,281.48 for professional services rendered and $280,681.62 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $4,255,820.37 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

14.    In that same order, the Court approved a reduction in the holdback from twenty percent (20%) to fifteen percent (15%) of fees incurred.  As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $79,741.69 for the Trustee and $1,797,074.52 for B&H.

15.    On May 6, 2010, the Court entered an order approving both the Trustee and B&H's Third Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2009 through January 31, 2010.  [Dkt. No. 2251].  The Court awarded the Trustee an interim allowance of $570,852.56 for professional services rendered and $77.66 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.    An additional $100,739.69 in fees incurred by the Trustee during that period have been held back and remain subject to approval by the Court.    The Court awarded B&H an interim allowance of $20,301,472.46 for professional services rendered and $390,204.89 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $3,582,612.79 in fees incurred by B&H during that period have been held back and remain subject to approval by the Court.

7

### III.   SUMMARY OF SERVICES

16.     A SIPA proceeding contemplates the processing of customer claims and the orderly liquidation of the business of a broker-dealer, with the return of customer property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are highlighted here and summarized in greater detail below, are comprised of the specific, critical tasks in aim of that objective.

17.     The Trustee is a member of B&H.[3]   He practices principally in the areas of corporate reorganizations, bankruptcy and insolvency.   He also has been a contributing author to Collier on Bankruptcy, 15th Edition Revised.

18.     The Trustee was admitted to practice before this Court in 1982.   He served as the first United States Trustee for the Southern District of New York in a pilot program from October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.   Prior to his tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in Washington, D.C., for three and a half years during which time his responsibilities included, among other things, disclosure and enforcement matters and bankruptcy reorganizations.   Before becoming Assistant General Counsel, he spent approximately four years in various legal positions in the SEC's then Division of Corporate Regulation, where his responsibilities primarily involved bankruptcy reorganizations.   Prior thereto, Mr. Picard spent more than six (6) years working in the securities industry.

19.     Mr. Picard has previously served as trustee in the following ten (10) SIPA liquidations: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No TP 84-70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors Center Inc. (Bankr.

---

[3] As such, the Trustee will pay over to B&H the full amount of any interim compensation and disbursements awarded to him.

8

E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr. S.D.N.Y. No. 96/8396A (REG)); Klein Maus & Shire, Inc.. (Bankr. S.D.N.Y., No. 00/8193A (AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park South Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)).  He also has served as counsel to SIPC as trustee in two (2) liquidation proceedings.

20.    In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law and litigation, permitting the Trustee to conduct the liquidation efficiently.  B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to avoid duplication of effort, which is beneficial to the customers, creditors, and other interested parties of BLMIS.

21.    The Ponzi scheme perpetrated by Madoff was vast in scope, long in duration, and broad in its geographical reach.   The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of all of the affairs of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel but those of several outside investigative agencies, as well as forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the Trustee's forensic consultant, Renaissance Associates, Ltd. ("Renaissance"), and several investigative and industry consultants (collectively referred to herein as "Consultants").

095879, 300097759

22.     From the very beginning of this proceeding, the Trustee and B&H, together with AlixPartners and FTI, have been processing the customer claims submitted to him. By statute, the Trustee must look at all the books and records of BLMIS in order to determine and evaluate each customer claim. Given the duration and complexity of the fraud engaged in by Madoff, each account has a unique and often extended history, frequently involving multiple transfers between accounts. Each claim, therefore, requires the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination of each customer claim.

23.     The Trustee received 16,374 claims, filed by a wide variety of individuals and entities who were victims of Madoff's fraud. These claimants include customers who had active accounts with BLMIS at the time of its demise, in addition to thousands of individuals or entities who invested indirectly in BLMIS through various feeder funds and other entities.

24.     As of August 13, 2010, the Trustee had determined 13,286 customer claims, of which 2,188 were allowed, and committed to pay approximately $715 million in funds advanced to him by SIPC. The allowed claims total over $5.5 billion. The Trustee's efforts in determining and satisfying claims are ongoing.

25.     In an effort to accelerate SIPA protection for individual victims of BLMIS who were suffering hardship, the Trustee and B&H implemented a Hardship Program. As of August 13, 2010, the Trustee received 317 Hardship Program applications and approved 196. The remaining Hardship applicants were ineligible for the program, generally because the account had a negative net equity (meaning the investor had withdrawn more than they had deposited), or the application was from a third party investor. As of August 13, 2010, 271 hardship applicants have had their claims determined or partially determined, two (2) hardship applicants have both determined and non-determined claims, and nine (9) hardship applications

10

could not be tied to customer accounts.  The remaining  thirty-five (35) hardship applicants have not had their claims determined and are under various stages of review.

26.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS to be distributed to customers in accordance with the statute.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow up activities to enforce the Trustee's rights to the return of customer property.

27.    As a result of the investigative efforts of the Trustee, he has initiated litigations against feeder funds and certain individuals, most of which are well known to the public through the press and other media.

28.    To date, the Trustee, through Counsel, has filed nineteen (19) avoidance actions seeking to recover over $14.5 billion in funds from various feeders funds, Madoff friends family members and friends.  The Trustee anticipates that he will file extensive additional litigation based on investigations being conducted by the Trustee's Counsel and Consultants.

29.    The Trustee has succeeded in the obtaining the return of hundreds of millions of dollars to the estate by virtue of settlements with a number of parties.  Because of these efforts being made by the Trustee and his Counsel, as of August 13, 2010, approximately $500 million has been recovered for the benefit of the customers.

30.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties, including customers against whom the Trustee has preference claims, which could result in large recoveries for the benefit of customers without the delay and expense of litigation.

11

31.     The Trustee has also filed, through Counsel, three complaints and corresponding applications seeking, among other things, to preliminarily enjoin multiple plaintiffs from continuing to litigate actions, or commencing new actions, against various people and entities related to this liquidation proceeding, including certain Madoff family members, the estate of Jeffry Picower and related entities, and the Board of Directors and the President and CEO of SIPC.  The Trustee brought the applications on the grounds that, among other reasons, the plaintiffs' actions violate the automatic stay and other stays in place in the liquidation proceeding.  Generally, these actions threaten to impede the orderly administration of the BLMIS liquidation and usurp the jurisdiction of this Court by, among other things, undermining the claims administration process and circumventing the Court's determination regarding the proper formulation of a customer's net equity under SIPA.  Furthermore, in a number of the actions, the claims brought by the plaintiffs are duplicative and derivative of the Trustee's own and improperly seek to recover fraudulently transferred funds and customer property in violation of the stays.  One application has already been adjudicated by this Court, *Picard v. Fox*.  The Court held that the plaintiffs had usurped causes of action belonging to the estate in violation of the automatic stay and that the circumstances of the case also warranted the issuance of a preliminary injunction pursuant to section 105(a) of the Bankruptcy Code.

32.     Madoff's fraud has many international implications, involving foreign individuals, feeder funds, and international banking institutions.  The complex transactions engaged in by those parties are being untangled by the Trustee with the assistance of his Counsel here in the United States and in each of the foreign jurisdictions.  As is set forth in the Amended Third Interim Report, the Trustee is engaged in litigations in Europe, Gibraltar, Canada and throughout the Caribbean including Bermuda, the Cayman Islands and the British Virgin Islands.

He has retained counsel in these jurisdictions for the purpose of preserving and recovering customer funds being held in those countries.  Millions of dollars are at stake in these international matters, each of which require extensive legal and investigative analysis on the part of the Trustee and his Counsel and Consultants.

33.    The Trustee's investigation is ongoing.  Not a single penny of the costs incurred in connection with the investigation, however, come at the expense of the customers, nor will they ever at any time in this proceeding.  Rather, these expenses are advanced by SIPC, so that any customer monies recovered can be distributed to the same in accordance with the statute.

34.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, the discovery is wide-ranging, and the litigation itself is hotly contested.  All of this results in enormous effort by the Trustee and his Counsel for the benefit of the victims.  During the Compensation Period, the Trustee, his Counsel and Consultants have met extraordinary challenges in their continuing efforts to pursue customer property, protect estate assets, and otherwise benefit the customers of BLMIS.  The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought by B&H.

### IV.    DETAILED DESCRIPTION OF SERVICES

35.    The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to the internal B&H matter numbers and task codes.

36.    Matters 01 and 02 are the general matter numbers used by B&H and the Trustee, respectively.  Each of those matter numbers utilizes individual task codes for specific

13

categories of work to permit a more detailed analysis of the fees incurred. For specific litigations or other discrete matters to which a large number of hours are or will be billed, new matter numbers are opened and used, each of which are described in more detail herein.

37.    Matter Numbers 03-25 (with the exception of Matter 05, which is related to customer claims) relate to litigation filed against various individuals, entities, and feeder funds. In each of those litigations, B&H attorneys perform the following tasks related to the individual actions: conducting legal research; discussions with the counsel for defendant(s); drafting and filing of pleadings, motions, and other related documents; drafting of internal memoranda; and internal meetings with B&H attorneys and the Trustee's Consultants regarding investigation and litigation strategy. Rather than repeat those tasks in each of the descriptions for those matters, the description will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A.    MATTER 01 – COUNSEL TO THE TRUSTEE

### i.    Trustee Investigation – Task Code 01

38.    This category relates to time spent with respect to the investigation into BLMIS, Madoff and various assets. Included in this category of services by B&H were the following:

- Investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and all other Madoff-related parties.
- The initiation of, participation in, and/or monitoring of over 271 pending and 87 potential international third-party proceedings and hundreds of domestic third-party proceedings involving Madoff and/or BLMIS.
- Coordinating efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Financial Industry Regulatory Authority ("FINRA"), SEC, and many other local, federal and international officials involved in the investigation of Madoff and BLMIS.

14

- Reviewing copies of records obtained by the FBI, SEC and other information from USAO and securities regulators and review of same.

- Communications with the Trustee, SIPC, Windels Marx, AlixPartners and FTI regarding the IA accounts and records of the transactions, business investments and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Review of account information and statements of BLMIS IA customers.

- Drafting and issuing of hundreds of inquiry letters and subpoenas to potentially related third parties concerning BLMIS litigation.

- Organizing and reviewing documents received in response to third party inquiries and subpoenas.

- Discussions and conferences regarding investigation and litigation strategy, both internally and with SIPC, Windels Marx, International Counsel, and various government entities.

- Prepare for and take depositions and interviews of various witnesses in connection with the Trustee's investigation and ongoing litigations.

- Prepare requests for discovery and negotiate other discovery-related issues with adversaries.

- Research various trust and estates issues relating to BLMIS claimants.

- Conduct settlement negotiations and meet and confers with counsel for various targets.

### ii.    Bankruptcy Court Litigation – Task Code 02

39.    This category relates to time spent with respect to legal research, drafting and filing various motions and pleadings in the main bankruptcy proceeding and certain adversary proceedings filed against the Trustee. Included in this category of services by B&H are the following:

- Preparation and revision of pleadings relating to the "net equity" definition, both at the bankruptcy and appellate levels; review of briefs filed by all parties and interested parties regarding net equity; designation of contents on appeal and other tasks relating to appellate process; attendance at Court and internal discussions regarding the briefs filed.

- Preparation and revision of pleadings relating to the "customer" definition; review of briefs filed by all parties and interested parties regarding the "customer" definition; attendance at Court and internal discussions regarding the briefs filed.

- Entry of applications to retain International Counsel to monitor assets abroad and, where necessary, represent the Trustee in foreign proceedings.

15

- Drafting and filing of various motions, pleadings, proposed orders, and other documents to be submitted to the Bankruptcy Court in connection with all ongoing motion practice in the main bankruptcy proceeding, in addition to avoidance actions, and related activity, including amended complaints, motions to dismiss, scheduling orders, and various other motions, pleadings and stipulations.

- Preparation and filing of Trustee reports and fee applications for Trustee, B&H, and various International Counsel.

- Review and respond to appeals of orders granting compensation of Trustee and B&H.

- Legal research concerning causes of action under the Bankruptcy Code and other bankruptcy-related and legal issues presented by litigation that has been or will be brought by Trustee.

### iii.    Feeder Funds – Task Code 03

40.     The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds, in the U.S. and abroad, and to bring actions against such funds for the recovery of estate assets where possible.  During this Compensation Period, in addition to the general investigation described above, depositions and interviews of relevant witnesses have been undertaken.  B&H attorneys have also conducted an ongoing review of documents received in response to third party subpoenas relevant to the feeder funds and have drafted pleadings relating to the feeder funds. Many of the feeder funds are still under investigation and require extensive analysis as a result of their often complicated and opaque corporate structures.  Those against whom litigation has been brought have been assigned separate matter numbers, discussed more fully at ¶¶ 73-77, 80-81, 87-93, and 96-108, *infra*.

### iv.    Asset Research and Sale – Task Code 04

41.     This category relates to time spent with respect to discovery of, recovery of, and liquidation of various assets for the benefit of the estate.  Included in this category of services by B&H were the following:

- Discussions with Windels Marx and USAO regarding Madoff personal assets and status of efforts to sell the same.

16

- Liquidation of certain loan participations owned by BLMIS.
- Confer and work with Windels Marx regarding BLM Air Charter and other issues relating to airplane.
- Follow up activity with regard to Surge, Inc. transaction, including entering into an amended asset purchase agreement.

**v.**      **Internal Meetings with Staff – Task Code 05**

42.     This category relates to internal B&H meetings related to the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Through numerous internal meetings and discussions, B&H seeks to ensure the effective use of the time of all timekeepers working on the matter, and to avoid duplicative efforts.

**vi.**      **Customer Claims – Task Code 06**

43.     This task code is no longer in use.  A separate matter number was opened for work related to customer claims on June 3, 2009, and B&H attorneys and paraprofessionals began to bill to such matter number.  *See* ¶¶ 78-79, *infra*, for a discussion of this time.

**vii.**      **Billing – Task Code 07**

44.     This section relates to the time spent by B&H attorneys and paraprofessionals in reviewing the monthly B&H billing statements prior to submission to SIPC to ensure that time was properly billed by B&H, to correct any errors in time entries, and to write off certain time and expenses as agreed to by B&H for the benefit of SIPC, and to respond to certain adjustments requested by SIPC after its review of each monthly invoice.

**viii.**      **Case Administration – Task Code 08**

45.     This category is for time expended by B&H in assisting the Trustee in the efficient administration of the case, including:

- Confer with and assist Trustee regarding negotiation and resolution of BLMIS leases.

17

- Conduct conflict checks.
- Implement and manage case-wide tracking tools for pleadings, subpoenas, demand letters, responses and all other case-related documents.
- Implement and manage work flows between B&H and Consultants.
- Monitoring and tracking of dockets of related proceedings.
- Maintenance of case files.
- Create protocols relating to discovery, filings and external communications.
- Administrative aspects of the retention of experts, other professionals, and vendors and monitoring of their ongoing retentions.
- Manage and monitor staffing needs.
- Calendaring and docketing of all hearings, return dates, and deadlines across main liquidation proceeding and all litigations.

### ix.    Banks – Task Code 09

46.    Primarily as a result of international and domestic feeder fund investigations, the Trustee has commenced investigations of numerous banks and other financial institutions involved with BLMIS and the various feeder funds that invested in BLMIS. The Trustee's investigation of these banks is continuing. The time in this category relates to the ongoing identification of certain banks as targets, investigating the various capacities of such banks and the role they may have played in Madoff's Ponzi scheme, preparing letters of inquiry and subpoenas, and reviewing responses to such letters and subpoenas received from such banks and from other third parties.

### x.    Court Appearances – Task Code 10[4]

47.    This category relates to time spent by B&H attorneys making court appearances before the Bankruptcy Court, in addition to court appearances in the District Court for various appeals of litigation initiated in the Bankruptcy Court.

---

[4] Many attorneys bill their time for court appearances to Task Code 02 – Bankruptcy Court litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

095879, 300097759

### xi.   Press Inquiries and Responses – Task Code 11

48.    This section relates to time spent by B&H attorneys assisting the Trustee in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of funds.

### xii.   Document Review – Task Code 12

49.    The time in this task code relates to time spent by B&H and other contract attorneys conducting the ongoing review of emails captured from BLMIS's computer server and more than 1,500 other sources of electronically stored information, in addition to approximately seven thousand boxes of BLMIS's paper documents recovered from the BLMIS office and warehouse locations.

50.    In addition, B&H attorneys are reviewing documents received from parties and third parties in response to the many hundreds of letters and subpoenas issued by the Trustee.

### xiii.   Discovery - Depositions and Document Productions by the Trustee – Task Code 13

51.    This task code relates to time spent by B&H attorneys conducting depositions, and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties, including:

- Prepare, review, finalize and serve subpoenas.
- Monitor subpoenas issued and follow up with regard to deficient document productions received by Trustee.
- Make and manage outgoing document productions in response to discovery requests served in litigation.
- Process and upload incoming document productions received in response to Trustee's discovery requests.

19

- Legal research regarding discovery in foreign jurisdictions.

### xiv.    International – Task Code 14

52.    The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain.    These investigations, which are comprised of a combination of voluntary requests for information and the use of the Trustee's subpoena power, have focused primarily on international feeder funds, banks, related financial services entities and certain individuals.    Time in this category relates to these ongoing investigations, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel to utilize local laws to obtain necessary discovery.    The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery by U.S. parties.    Moreover, time in this category relates to the monitoring of and participation in various Madoff-related third party litigation brought in Europe and the Caribbean.

### xv.    Charities – Task Code 15

53.    Time in this task code relates to time spent by B&H attorneys and the Trustee's Consultants reviewing financial documents and conducting due diligence concerning charitable accounts held at BLMIS, and corresponding with and meeting with representatives from those charities to obtain further information concerning payments made to those charities from their BLMIS accounts.    These discussions are ongoing.

### xvi.    Pre-Litigation – Task Code 16

54.      Time in this task code relates to time spent by B&H attorneys conducting strategic planning with regard to certain litigations brought against BLMIS targets by third parties.  In response, B&H attorneys prepared pleadings, affidavits, and analyzed extensive case law in support of the Trustee's pleadings brought against the third parties.  These matters were subsequently assigned individual matter numbers and are discussed more extensively at ¶¶ 113-122 herein.

### xvii.    Access – Luxembourg – Task Code 17

55.      Time in this task code relates to time spent by B&H attorneys monitoring an action brought in Luxembourg against Access Group, UBS and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg and conferring with SIPC staff regarding same.

## B.    MATTER 02 – TRUSTEE TIME

56.      This matter number is reserved for billing of time spent by the Trustee and has the below enumerated task codes.

### i.    Case Administration – Task Code 01

57.      This category is for time expended by the Trustee relating to the wind-down of the Debtor's business and other administrative matters, including:

- Consulting with B&H and AlixPartners regarding preparation of income tax return for the estate.

- Review of mail received by Trustee, received at the BLMIS office, or at the Claims Processing Center, and prepare appropriate response or assign for follow-up.

- Maintaining brokerage accounts, money management account and purchase of Treasury bills.

- Retention of additional consultants, expert witnesses, international counsel and other advisors.

- Obtaining SIPC administrative cash advances, communications with AlixPartners concerning payment of bills rendered to Trustee, reviewing and signing monthly SIPC-17 cash receipts and disbursements reports, reviewing monthly projected administrative budgets, and communications with SIPC staff regarding same.

21

- Reviewing monthly invoices of consultants and communicating with SIPC staff regarding same.

- Other general communications with SIPC financial and operations staff.

- Preparing and revising responses to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the U.S. Department of Labor, Internal Revenue Service, SEC, and New York State Department of Tax & Finance.

- Attending to various employee and benefits related issues, including preparation of income tax information for former BLMIS employees, correspondence with administrators of payroll, 401(k), healthcare and other benefit plans, and wind-down and termination of BLMIS sponsored employee benefit plans (including healthcare and 401(k) plans).

- Communications with B&H attorneys and AlixPartners regarding outstanding issues with vendors and the negotiating and resolution of outstanding estate obligations.

### ii.   Claims Review and Related Matters – Task Code 02

58.     This category is for time expended by the Trustee with respect to customer claims.  Included in this category of services by the Trustee were the following:

- Ongoing review of submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS account documentation.

- Communications with B&H attorneys, SIPC staff, AlixPartners, and FTI regarding claims review and issuance of determinations.

- Review and revise determinations; advise customers and their representatives of conclusions reached regarding allowance or denial of their respective claims and review proposed customer assignments and releases to the extent of claims to be satisfied.

- Regular communications with AlixPartners, SIPC staff and B&H attorneys regarding the customer claims review process, the customer claims database, the reconciliation of IA accounts and other matters of interest in determining claims.

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, status of claims review and other matters of concern to customers and when necessary, communicate with B&H claims team and/or refer for follow-up and response.

- Time in this category also relates to settlement negotiations between the Trustee and customers against whom the Trustee has preference claims, i.e. those customers that withdrew money from a BLMIS account in the ninety (90) days prior to the Filing Date.

### iii.   Trustee Investigation – Task Code 03

59.    This category relates to time spent with respect to the Trustee's investigation into BLMIS, Madoff and various assets.  Included in this category of services by the Trustee were the following:

- Communications with B&H attorneys, International Counsel, SIPC staff, Windels Marx, AlixPartners and FTI regarding the IA accounts and records of the transactions, business investments and ventures between the potential insiders and BLMIS, Madoff and Madoff family members.

- Review of account information and statements of BLMIS IA customers in connection with various investigatory matters.

- Review of certain discovery received from responses to issued subpoenas and from other third parties.

- Discussions and conferences regarding investigation and litigation strategy, both internally and with SIPC staff, Windels Marx, International Counsel and various governmental entities.

### iv.    Banks and Feeder Funds – Task Code 04

60.    The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor banks and feeder funds, and bring actions against such banks and feeder funds for the recovery of estate assets where possible.

### v.    Asset Search, Recovery and Sale – Task Code 06

61.    This category relates to time spent with respect to discovery of, recovery of and liquidation of various assets for the benefit of the estate.  Included in this category of services are the following:

- Discussions with Windels Marx and United States Attorney's Office for the Southern District of New York ("USAO") regarding Madoff personal assets and status of efforts to sell the same.

- Review claims and affidavits for filing in connection with the settlement of various class actions involving securities owned by BLMIS in its market making and trading capacities, and conferences with AlixPartners regarding same.

- Discussions with B&H concerning sale of certain loan participations owned by BLMIS and follow up on other loan participation matters.

- Discussions with broker concerning status of securities remaining in Trustee's account

23

and sale possibilities.

### vi.    Avoidance Actions – Task Code 07

62.    To date, the Trustee has filed nineteen (19) avoidance actions against feeder funds, Madoff friends and family members and other Madoff-insiders for the return of customer property.  For further discussion of these avoidance actions, please see ¶¶ 73-77, 80-110, and 113-122, *infra*.[5]

63.    The time spent in this category relates to various communications, investigation and litigation strategy sessions which the Trustee engaged in with B&H, International Counsel, SIPC, AlixPartners and FTI; communications with Counsel for the defendants to the various avoidance actions; negotiation of potential settlement agreements; and review of documents related to the various avoidance actions.

### vii.    Bankruptcy Court Litigation and Related Matters – Task Code 08

64.    This category relates to time spent with respect to reviewing and the filing of various motions and pleadings and the initiation of as well as defense against certain adversary proceedings in the Bankruptcy Court.  Included in this category of services were the following:

- Appeals relating to adversary proceedings brought against the Trustee.
- Involvement with preparation and revision of the Trustee's briefing regarding the net equity issue; review of briefs filed by all parties and interested parties regarding net equity; attendance at Court and discussions with Counsel regarding the briefs filed.
- Involvement with preparation and revision of the Trustee's briefing regarding the "customer" issue; review of briefs filed by all parties and interested parties regarding the "customer" issue; attendance at Court and discussions with Counsel regarding the briefs filed.

---

[5] Windells Marx Lane & Mittendorf, LLP filed three of the nineteen avoidance actions on behalf of the Trustee; *Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-3483; *Picard v. Madoff Energy Holdings LLC, et al.*, Adv. Pro. No. 10-3484; *Picard v. Madoff Family LLC*, Adv. Pro. No. 10-3485.

24

- Regular communications with the SIPC staff, B&H attorneys and Counsel for various customers who have filed actions regarding customer claims, the "net equity" definition and other issues.

- Review of and regular communications with the SIPC staff, B&H attorneys and Counsel for various customers who have filed objections to the Trustee's determination of their claim.

- Review of all amended complaints, motions, pleadings, proposed orders and other documents to be submitted to the Bankruptcy Court in connection with all avoidance actions as discussed above in ¶ 37.

- Participation in chapter 11 filing of BLM Air Charter and involvement in ongoing case.

### viii.    Non-Bankruptcy Court Litigation – Task Code 09

65.    The Trustee has formed teams of B&H attorneys to monitor all third-party actions, domestic and international, that may be related to BLMIS or Madoff.  This category relates to time the Trustee spent engaging in strategy with the teams, reviewing information related to such matters, and correspondence with the teams regarding their ongoing investigations and findings and the status of such third party litigations.

66.    The Trustee's time in this category also includes the review and execution of affidavits for foreign litigations, including those in Gibraltar, British Virgin Islands, and in the Caymans.

### ix.    Court Appearance – Task Code 10

67.    This category relates to time spent by the Trustee making court appearances as necessary.

### x.    Internal Office Meetings with Staff and Out of Office Meetings – Task Codes 11 and 12

68.    This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties such as the SEC, USAO, FINRA, FBI and other regulators and government officials.

### xi.  USAO and SEC/FINRA - Task Codes 13 and 14

69.    This category relates to time spent with respect to the Trustee's communications with the various government agencies involved in the investigation of BLMIS, Madoff and various assets.    This includes correspondence and cooperative efforts with the USAO, the SEC and FINRA.    Included in this category of services by the Trustee were the following:

- Coordinating efforts with the SEC, USAO, FINRA, FBI and other local, federal and international officials involved in this investigation.
- Obtaining copies of records seized by the FBI and SEC, and other information from USAO, FINRA and other securities regulators.
- Discussions and conferences regarding litigation strategy with FINRA, USAO and SEC.
- Telephone conferences and correspondence with representatives of USAO.

### xii.  Trustee Report/Fee Application and Related Matters – Task Codes 05 and 16

70.    In addition to preparation of this Application, this section relates to the time spent by the Trustee in reviewing his and B&H's monthly statements prior to submission to SIPC to correct any errors in time entries and to write off certain time and expenses as agreed to by the Trustee for the benefit of SIPC, respond to certain adjustments requested by SIPC after its review of each monthly fee statement.    Time spent by the Trustee in preparing his interim reports, which are required every six (6) months and summarize all activities conducted by the Trustee and all his Counsel within that reporting period, are also billed to this task code.

### xiii.  Press Inquiries and Responses – Task Code 17

71.    This section relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims and the recovery of funds.

### xiv.  Luxembourg Litigation – Task Code 18

26

72.    Time in this task code relates to time spent by the Trustee monitoring an action brought in Luxembourg against Access Group, UBS and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg.

## C.    MATTER 03 – CHAIS[6]

73.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Stanley Chais, Pamela Chais and a number of related entities (collectively, the "Chais Defendants") seeking return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.

74.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys spent time reviewing and analyzing the briefing submitted on the Chais Defendants' motions to dismiss the first amended complaint, drafting responsive briefing, and preparing for the hearing before the Court. The motions to dismiss where heard by the Court on May 5, 2010.  The Court reserved decision.

## D.    MATTER 04 – MERKIN

75.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (the "Merkin Funds") and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking return of more then $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain

---

[6] As with Matter 01, the remainder of the B&H matter numbers described herein are used by B&H professionals. Only the Trustee utilizes Matter 02.

27

transfers of property by BLMIS to or for the benefit of the Merkin Defendants. With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009, adding counts to Merkin's personal liability for obligations of the partnerships.

76.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys spent time reviewing and analyzing the briefing submitted on the Merkin Defendants' motions to dismiss the second amended complaint, drafting responsive briefing, and preparing for the hearing before the Court on April 13, 2010. At the time of the hearing, the Court reserved decision.

77.    Subsequently, the Court requested further briefing on the interplay between SIPA and the Bankruptcy Code as to how they relate to "customer property" in the hands of third parties. Specifically, the Court was interested in an analysis of SIPA section 78fff-2(c)(3), which deems "customer property" the property of the debtor's estate, and Bankruptcy Code sections 541 and 542, which require the successful avoidance of property before it becomes property of the estate subject to turnover. B&H attorneys conducted legal research and analysis and prepared the Trustee's brief on the issue, which was submitted on May 7, 2010.

## E.    MATTER 05 – CUSTOMER CLAIMS

78.    This category is for time expended by B&H with respect to customer claims. B&H expended a considerable amount of time in this category, as significant progress was made during the Compensation Period with respect to Customer Claims.

79.    Included in this category of services by B&H were the following:

- Continuing of the Trustee's Hardship Program; review of Hardship Applications; regular communications with the Trustee, SIPC and AlixPartners regarding the review and determination of Hardship applicants.

- Ongoing review of submitted customer claim forms and supplements thereto; reviewing any additional related BLMIS IA account documentation.

- Assisting the Trustee in making determinations regarding customer claims; advising customers and/or their representatives of conclusions reached regarding allowance or denial of their respective claims; preparation of the Trustee's determination letters and assignment and release forms for execution by customers.

- Ongoing training B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

- Review of accounts of customers who had both "Net Winner" and "Net Loser" accounts and communications actions such customers or their representatives regarding possible settlements related to those accounts.

- Regular communications with the Trustee, SIPC and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts and other matters of interest in determining claims.

- Review of and regular communications with the Trustee, SIPC, and counsel for various customers regarding customer claims, the "net equity" definition and other issues, and discussion with the SEC and various members of Congress regarding the same.

- Review of and regular communications with the Trustee, SIPC, and counsel for various customers who have filed objections to the Trustee's determination of their claim. As of August 13, 2010, approximately 1,697 objections have been filed with the Bankruptcy Court.

- Regular communications by phone, letters and email with customers or their representatives regarding claims procedure and process, status of claims review and other matters of concern to customers.

- Review schedules of information prepared by AlixPartners; preparation of additional reports for the Trustee and SIPC.

- Maintaining and updating the Trustee website to provide public access to case filings and important case information.

## F.   MATTER 06 – VIZCAYA

80.     Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra," and together with Vizcaya, the "Vizcaya Defendants"), seeking return of $150,000,000 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent

29

conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

81.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys drafted and responded to discovery, including initial disclosures, document requests and interrogatories with Bank Safra, who has appeared and answered the Trustee's complaint.  B&H attorneys participated in a meet and confer with counsel for Bank Safra regarding e-discovery issues, and discovery is ongoing.  Vizcaya, Zeus, and Asphalia did not appear or answer the Trustee's complaint, and accordingly, B&H began drafting and preparing a motion for a default judgment against them during the Compensation Period.  The motion for default was granted by the Court on August 3, 2010.

## G.    MATTER 07 – MADOFF FAMILY

82.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (the "Family Defendants") seeking the return of nearly $200 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.

83.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys spent time reviewing and analyzing the briefing submitted on the Family Defendants' motions to dismiss the complaint and drafting responsive briefing. The motions are scheduled for hearing on September 14, 2010.

84.    Time in this category also relates to the ongoing investigation of other Madoff family members and Madoff family entities, including analysis of their IA accounts,

30

review of documents produced in response to subpoenas served upon them, and review of BLMIS files and documents related to same. B&H attorneys monitored and analyzed third party lawsuits brought against various Madoff family members, and prepared an Application for Enforcement of the Automatic Stay and a Preliminary Injunction relating to certain of those third party actions, as more fully described below in ¶¶ 113-118.

### H.    MATTER 08 – NORMAN LEVY

85.    In January 2010, the Trustee reached an agreement (the "Levy Settlement Agreement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle the Trustee's claims against them regarding certain accounts held by the Levys and their family members in connection with the liquidation of BLMIS. Pursuant to the Levy Settlement Agreement, the Levys agreed to pay $220 million to settle potential litigation claims by the Trustee. This Court approved the Levy Settlement Agreement by order dated February 18, 2010.

86.    During this Compensation Period, B&H attorneys prepared for the hearing before the Court regarding the Levy Settlement Agreement held on February 18, 2010.

### I.    MATTER 09 – FAIRFIELD GREENWICH

87.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P., (collectively, "the Fairfield Defendants") seeking return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Defendants.

31

88.     In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys continued extensive review of documents produced pursuant to subpoena relating to the Fairfield Defendants.  B&H drafted an amended complaint against the same, and prepared for filing and service of the amended complaint.  B&H attorneys continued to monitor third party litigation against the Fairfield Defendants and confer with the liquidators appointed by the High Court of Justice in the British Virgin Island to liquidate Fairfield Greenwich Group.

## J.    MATTER 10 – HARLEY

89.     Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Harley International (Cayman) Limited ("Harley"), seeking return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley.  Harley is in liquidation in Cayman.

90.     In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys successfully petitioned for recognition of the Trustee in Cayman and leave to sue Harley in Cayman.  B&H attorneys are in the process of preparing and filing a complaint against Harley in Cayman.

## K.    MATTER 11 – COHMAD SECURITIES CORPORATION

91.     Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals and certain employees of Cohmad and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking return of over $132 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

32

law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.

92.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys spent time reviewing and analyzing the briefing submitted on the Cohmad Defendants' motions to dismiss the complaint and drafting responsive briefing. The hearing on such motions has been adjourned numerous times and is scheduled to be held on September 21, 2010.

93.    B&H attorneys continued their review of IA accounts associated with the Cohmad Defendants and other related parties, as well as their ongoing review of documents concerning Cohmad and the Cohmad Defendants.

## L.    MATTER 12 – PICOWER

94.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as trustee for various foundations, and other various Picower entities (collectively, "the Picower Defendants") seeking return of approximately $7.2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.

95.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys and counsel for defendants are engaged in settlement discussions. The hearing on the motion to dismiss the complaint has been adjourned while B&H attorneys and counsel for the Picower Defendants continue discussions.

33

**M.    MATTER 13 – KINGATE**

96.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (the "Kingate Defendants"), seeking return of $395 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.   A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

97.    The Kingate Defendants are currently in liquidation in the British Virgin Islands ("BVI").  B&H attorneys have conferred with the liquidators.

98.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys continue to monitor third party actions filed against the Kingate Defendants.   In addition, B&H attorneys prepared an application for a disclosure order in the United Kingdom, which application was granted by the United Kingdom court.   This order permits the Trustee to seek discovery in the United Kingdom and Europe relating to the Kingate Defendants and will be greatly beneficial to the Trustee's investigation of the same.

99.    Defendants' time to answer or otherwise respond to the Complaint has been adjourned several times and is scheduled to be held on September 10, 2010.  The pretrial conference will be held on September 21, 2010.

**N.    MATTER 14 – RESERVED**

**O.    MATTER 15 – HERALD**

100.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Herald Fund SPC ("Herald") and HSBC Bank PLC and

HSBC Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $578 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Herald.

101.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against Herald in Europe, including in Luxembourg and Austria.  With regard to the Trustee's complaint against Herald, defendants Herald Fund SPC's motion to dismiss the second amended complaint is fully briefed and is currently scheduled for hearing on September 2, 1010.

## P.    MATTER 16 – ALPHA PRIME

102.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Alpha Prime Fund Limited, HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (the "Alpha Prime Defendants") seeking return of $86 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Alpha Prime Defendants.

103.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys continued their review and analysis of documents related to Alpha Prime in support of the complaint.  The pretrial conference will be held on September 21, 2010.

## Q.    MATTER 17 – PRIMEO FUND

104.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Primeo Fund ("Primeo"), HSBC Bank PLC and HSBC

Securities Services (Luxembourg) S.A. (collectively "HSBC") seeking return of $145 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Primeo and HSBC.  Defendant Primeo Fund has defaulted.

105.    Primeo is in liquidation in the Cayman Islands.

106.    In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys continued monitoring litigation pending against Primeo in the United Kingdom.   The pretrial conference is currently scheduled to be held on September 21, 2010.

## R.    MATTER 18 – THYBO

107.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Thybo Asset Management Limited; Thybo Global Fund Limited; Thybo Return Fund Limited; and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants"), seeking return of approximately $63 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.

108.    As with each of the matters in litigation, B&H attorneys conducted the tasks outlined above in ¶ 37 during this Compensation Period.   The pretrial conference is scheduled to be held on September 2, 2010.

## S.    MATTER 19 – RUTH MADOFF

109.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Ruth Madoff seeking return of approximately $44

million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.

110.   In addition to the tasks outlined above in ¶ 37, during this Compensation Period, B&H attorneys engaged in settlement discussions with counsel for Ruth Madoff.  B&H attorneys also agreed to extend defendants time to answer or otherwise respond to the Complaint. The pretrial conference is scheduled to be held on September 21, 2010.

**T.   MATTER 20 –CONFIDENTIAL**

111.   This matter is currently under investigation.  Time relating to this matter is confidential as attorney work-product.

**U.   MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION**

112.   Time in this matter relates to the investigation of fictitious profits withdrawn from BLMIS customer accounts, drafting avoidance action complaints, and conducting legal research on various issues relating to such avoidance actions.

**V.   MATTER 22 – FOX & MARSHALL**

113.   Time in this matter relates to all time spent by B&H attorneys on work relating to the adversary proceeding commenced by the Trustee against Adele Fox ("Fox") and Susanne Marshall ("Marshall"), individually and to the extent they purport to represent a class of those similarly situated (together, the "Florida Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "Fox Application").

37

114.    In February 2010, Fox and Marshall, BLMIS customers, commenced separate putative class actions (the "Florida Actions") against Estate of Jeffry M. Picower and related entities (the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court").   The Florida Plaintiffs alleged damages based on conspiracy, conversion, unjust enrichment and violations of the Florida RICO statute and their complaints, substantially identical, relied heavily on the allegations in the complaint filed by the Trustee in this Court against the Picower Defendants in May, 2009.

115.    On March 31, 2010, the Trustee filed the Fox Application in this Court, which the Florida Plaintiffs opposed, and on April 27, 2010 a hearing was held on the same. This Court granted the Trustee's Fox Application, finding that the Florida Actions violate the automatic stay provisions of section 362 of the Bankruptcy Code and hence, are void *ab initio*, and preliminarily enjoining the Florida Plaintiffs and related parties from proceeding with the Florida Actions or commencing any other action against the Picower Defendants.  A notice of appeal to the District Court was filed by the Florida Plaintiffs on May 12, 2010.   Florida Plaintiffs subsequently filed separate but substantially similar designations of contents to be included in the record and issues on appeal (the "Designations") and the Trustee has moved to strike certain items and one issue from these Designations (the "Motion to Strike").   Subsequent to the Compensation Period, the Court held a hearing on the Trustee's Motion to Strike and granted the Trustee's requested relief.   The Florida Plaintiffs have each filed an appellate brief with the District Court in support of their appeal of the Decision.

## W.    MATTER 23 – CANAVAN

116.    Time in this matter relates to all time spent by B&H attorneys on work relating to the adversary proceeding commenced by the Trustee against three BLMIS customers,

38

individually and on behalf of a similarly situated prospective class of customers (the "New Jersey Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "New Jersey Application").

117.    On February 24, 2010, the New Jersey Plaintiffs filed a putative class action (the "New Jersey Action") in the United States District Court for the District of New Jersey ("New Jersey District Court") against SIPC's Board of Directors and CEO/President (the "SIPC Defendants").  The New Jersey Plaintiffs alleged damages based on bad faith failure to pay insurance claims, fraud, violation of the New Jersey Consumer Fraud Act, and promissory estoppel.

118.    On April 9, 2010, the Trustee filed the New Jersey Application in this Court, which the New Jersey Plaintiffs opposed.  On April 23, 2010, the SIPC Defendants moved to transfer the New Jersey Action from the New Jersey District Court to the District Court, for referral to this Court (the "Transfer Motion").  In an order dated July 6, 2010, the Transfer Motion was granted by the New Jersey District Court.  The District Court subsequently removed the action to this Court, pursuant to 28 U.S.C. § 157(a).  A hearing on the New Jersey Application is currently scheduled before this Court on September 15, 2010.

## X.    __MATTER 24 – ROBERT LURIA__

119.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Robert Luria and Robert Luria Partners ("Robert Luria Defendants") seeking return of approximately eighty thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of their claims against

the estate, imposition of a constructive trust and damages in connection with certain transfers of property by BLMIS to or for the benefit of Robert Luria and Robert Luria Partners.

120.    During this Compensation Period, B&H attorneys prepared and commenced the above-referenced adversary proceeding on behalf of the Trustee.  B&H attorneys agreed to extend the Robert Luria Defendants' time to answer or otherwise respond to the Complaint.  The pretrial conference is scheduled to be held on September 2, 2010.

## Y.    MATTER 25 – AMY LURIA

121.    Time in this matter relates to all time spent by B&H attorneys on work relating to the avoidance action against Amy Luria and Amy Luria Partners LLC ("Amy Luria Defendants") seeking return of approximately ninety-five thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust and damages in connection with certain transfers of property by BLMIS to or for the benefit of Amy Luria and Amy Luria Partners LLC.

122.    During this Compensation Period, B&H attorneys prepared and commenced the above-referenced adversary proceeding on behalf of the Trustee.  B&H attorneys agreed to extend the Amy Luria Defendants' time to answer or otherwise respond to the Complaint.  The pretrial conference is scheduled to be held on September 2, 2010.

## V.    COMPENSATION REQUESTED

123.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the

40

Compensation Order. Pursuant to the Local Guidelines, the certification of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

124.   The Trustee expended 809.70 hours in the rendition of professional services and B&H expended 91,899.70 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in an average hourly rate of $825.00 for Trustee and $431.30 for B&H for fees incurred.

125.   Prior to filing this Application, in accordance with the Compensation Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period beginning February 1, 2010 through May 31, 2010; and (ii) a draft of this Application. In connection with four monthly statements each submitted by the Trustee and B&H and this Application, the Trustee voluntarily adjusted his fees by writing off $102,093.75 (in addition to the 10% public interest discount, as discussed below). B&H voluntarily adjusted its fees by writing off $417,131.50 (in addition to the 10% public interest discount, as discussed below) and wrote off expenses in the amount of $202,358.10 customarily charged to other clients.

126.   In addition, at SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $66,800.25 for the Trustee and $3,775,726.05 for B&H. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

127.   Pursuant to the Compensation Order, on March 16, 2010, the Trustee and B&H provided to SIPC their statements of fees and expenses incurred in connection with this

case regarding the period February 1, 2010 through February 28, 2010 (the "February Fee Statements"). The Trustee's February Fee Statement reflected fees of $89,694.00 and no expenses. SIPC's staff made certain adjustments and suggestions to the B&H February Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H February Fee Statement reflected fees of $7,367,673.15 and expenses of $108,694.84. Accordingly, SIPC advanced funds to the Trustee in the amount of $76,239.90 for services rendered by the Trustee, and in the amount of $6,262,522.18 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $108,694.84 for expenses incurred by B&H.

128. Pursuant to the Compensation Order, on April 19, 2010, the Trustee and B&H provided to SIPC their statements of fees and expenses incurred in connection with this case regarding the period March 1, 2010 through March 31, 2010 (the "March Fee Statements"). The Trustee's March Fee Statement reflected fees of $191,119.50 and expenses of $23.88. SIPC's staff made certain adjustments and suggestions to the B&H March Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H March Fee Statement reflected fees of $8,734,786.20 and expenses of $158,759.28. Accordingly, SIPC advanced funds to the Trustee in the amount of $162,451.58 for services rendered by the Trustee, and in the amount of $7,424,568.27 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $23.88 and $158,759.28 for expenses incurred by the Trustee and B&H, respectively.

129. Pursuant to the Compensation Order, on May 19, 2010, the Trustee and B&H provided to SIPC their statements of fees and expenses incurred in connection with this case regarding the period April 1, 2010 through April 30, 2010 (the "April Fee Statements"). The Trustee's April Fee Statement reflected fees of $161,642.25 and expenses of $15.75.

42

SIPC's staff made certain adjustments and suggestions to the B&H April Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H April Fee Statement reflected fees of $8,866,878.30 and expenses of $269,928.53. Accordingly, SIPC advanced funds to the Trustee in the amount of $137,395.91 for services rendered by the Trustee, and in the amount of $7,536,846.56 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $15.75 and $269,928.53 for expenses incurred by the Trustee and B&H, respectively.

130.    Pursuant to the Compensation Order, on June 18, 2010, the Trustee and B&H provided to SIPC their statements of fees and expenses incurred in connection with this case regarding the period May 1, 2010 through May 31, 2010 (the "May Fee Statements"). SIPC's staff made certain adjustments and suggestions to the Trustee's May Fee Statement, which were adopted by the Trustee. After such adjustments, the Trustee's May Fee Statement reflected fees of $158,746.50 and no expenses. SIPC's staff made certain adjustments and suggestions to the B&H May Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H May Fee Statement reflected fees of $9,012,196.80 and expenses of $193,988.54. Accordingly, SIPC advanced funds to the Trustee in the amount of $134,934.53 for services rendered by the Trustee, and in the amount of $7,660,367.28 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $193,988.54 for expenses incurred by B&H.

131.    Exhibit B annexed hereto is a summary by task code of total hours expended and total fees for services rendered by the Trustee during the Compensation Period.

132.    Exhibit C annexed hereto provides a schedule of the Trustee's total expenses incurred during the Compensation Period for which reimbursement is requested. The

095879, 300097759

requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.

133.    Exhibit D annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, and the aggregate number of hours billed by each individual and the total compensation requested for each individual, prior to the 10% discount.   The 10% discount ($3,775,726.05, as described above) is taken off the total cumulative amount billed, as reflected on Exhibit D.

134.    Exhibit E annexed hereto is a summary of services, performed by B&H from during the Compensation Period organized by B&H task code and matter number.

135.    Exhibit F annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.   The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.   B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients including certain inter-office travel and related expenses (lodging, meals, airfare and other transportation).   These expenses amount to a voluntary reduction of $202,358.10.

136.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.   No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

44

137.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

138.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . ." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

139.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

140.    As previously reported by the Trustee in the Amended Third Interim Report, based on the allocation process set forth in SIPA, the Trustee has determined that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses.  That is, the Trustee believes that any

45

assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs in this belief of the Trustee. Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

141.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). The Trustee and B&H expect that SIPC will file its recommendation to the Court with respect to this Application prior to the hearing, currently scheduled for September 14, 2010.

142.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $601,202.25 (of which $511,021.92 is to be paid currently and 15%, or $90,180.33, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee during the Compensation Period, and $39.63 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee in connection with the rendition of such services; (ii) allowing and awarding $33,981,534.45 (of which $28,884,304.29 is to be paid currently and

46

15%, or $5,097,230.16, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the Compensation Period, and $731,371.19 as reimbursement of the actual and necessary costs and expenses incurred by B&H in connection with the rendition of such services; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 20, 2010

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, NY  10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      Irving H. Picard
      Email: ipicard@bakerlaw.com
      David J. Sheehan
      Email: dsheehan@bakerlaw.com
      Seanna R. Brown
      Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*

47