UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>    Plaintiff-Claimant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**SUPPLEMENTAL MEMORANDUM OF LAW OPPOSING TRUSTEE'S MOTION TO AFFIRM DETERMINATIONS DENYING CLAIMS OF CLAIMANTS WITHOUT BLMIS ACCOUNTS IN THEIR NAMES, NAMELY, INVESTORS IN FEEDER FUNDS**

In accordance with the Scheduling Order, claimants National Bank of Kuwait S.A.K, NBK Banque Privée (Suisse) SA, and Lemania SICAV-SIF (the "NBK Investors")[1] supplement their July 12, 2010 memorandum ("July 12 Mem.") (Dkt. No. 2641) opposing the Trustee's Motion to Affirm the Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names (Dkt. No. 2416). This memorandum addresses two filings since July 12: (1) the Trustee's July 20, 2010 Amended Complaint against persons and entities affiliated with Fairfield Greenwich and its Fairfield Sentry feeder fund (Dkt. No. 23 in related Adversary

---

[1] The NBK Investors filed timely claims in this proceeding; National Bank of Kuwait S.A.K.'s claim is for $60,199,561 (nos. 013751/013899); NBK Banque Privée (Suisse) SA's claim is for $8,714,790 (nos. 015259/015262); and Lemania SICAV-SIF's claim is for $5,591,329 (nos. 015260/015263).

Proceeding No. 09-1239); and (2) the Securities and Exchange Commission's August 10, 2010 Memorandum (Dkt. No. 2849).

## RELEVANT FACTS

The Trustee's Amended Complaint asserts claims against Fairfield Sentry, an entity the Trustee correctly characterizes as a "Feeder Fund" that was a "conduit" for money that investors intended to be managed by the debtor, Bernard L. Madoff Investment Securities ("BLMIS") under his "split strike conversion investment strategy," and companies and individuals affiliated with Fairfield Sentry (the "Fairfield Defendants"). The Amended Complaint seeks to recover for the benefit of BLMIS "customers" property the Trustee properly characterizes as "Customer Property." The Amended Complaint points out that the Fairfield Sentry investors like the NBK Investors were the source of the "Customer Property" the Trustee is suing to recover from BLMIS' "partners," "conspirators" and "aiders and abettors" in his fraud. Therefore, it is inescapable that the Fairfield Sentry investors who provided the "Customer Property" were "customers" of BLMIS.

Yet, the Trustee seeks to disallow the claims of the Fairfield Sentry investors by arguing that, although they provided the "Customer Property," they were not "customers" and should not be allowed to participate in this SIPC liquidation proceeding to recover their share of "Customer Property" they provided. The Amended Complaint underscores the error of the Trustee's position and reinforces the conclusion that the Fairfield Sentry investors are "customers" with claims under the statutory definition of "customer" in the Securities Investor Protection Act ("SIPA"), the case law precedents, and logical analysis.

## ARGUMENT

I.   **THE TRUSTEE'S AMENDED COMPLAINT DEMONSTRATES THAT THE TRUSTEE'S MOTION SHOULD BE DENIED**

The NBK Investors' funds at issue in their claims were, as the Trustee concedes, "fed" through the Fairfield Sentry "Feeder Fund" "conduit" to BLMIS and then, according to the Trustee's Amended Complaint, "fed back" to the Fairfield Defendants. The Trustee correctly explains that the investors in Fairfield Sentry intended and directed their money to be handled by BLMIS, and that the Fairfield Defendants had no choice or incentive to do anything but to act as the intended conduit for these funds to BLMIS. The Trustee correctly characterizes Fairfield Sentry investors' money as "Customer Property" and "stolen money." *Id.* ¶ 2 and *passim*. Thus, the "Customer Property" is the Fairfield Sentry investors' money that, according to the Amended Complaint, was "stolen" by the Fairfield Defendants (*id.* ¶¶ *2, 6, 491, 534)*, whom the Amended Complaint says were BLMIS and Madoff's "partners" (*id.* ¶¶ 4, 222, 234, 340, 356, 489, 503), "conspirators" (*id.* ¶¶ 350, et seq., 751), and "aiders and abettors" in fraud (*id.* ¶¶749, et seq.) in the admitted theft.

Yet, the Trustee seeks by his disallowance determinations and motion to prevent the "customers" who supplied the "Customer Property" any right to participate in the recovery of any "Customer Property." The Trustee proposes to recoup the "Customer Property" supplied by the Fairfield Sentry investors and to distribute it entirely to claimants excluding the Fairfield Sentry investors who supplied it.

The facts amply set out (and judicially admitted) in the Trustee's comprehensive Amended Complaint starkly illustrate the Trustee's error in arguing that the Fairfield Sentry investors were not "customers" of BLMIS. By the Trustee's admission, the "Customer Property" is property provided by the Fairfield Sentry investors; therefore, those investors are "customers." The money was solicited from them by BLMIS and Madoff's "partners," "conspirators," and "aiders and abettors" for deposit with BLMIS, was intended for and actually

deposited with BLMIS through the Fairfield Sentry "feeder" "conduit," and was "stolen" by BLMIS and his "partners," "conspirators," and "aiders and abettors." The Trustee's concession that the money supplied by the Fairfield Sentry investors was "Customer Property" within the meaning of SIPA requires him to abandon, and the Court to reject, the Trustee's incorrect and inconsistent argument for a construction of the statutory definition of "customer" that would exclude the Fairfield Sentry feeder fund investors, including the NBK Investors, from participating in this proceeding. The Trustee may not recover Customer Property and prevent them from sharing in its distribution.

Indeed, since the particular "Customer Property" at issue in the Amended Complaint was, as the Trustee admits, "stolen" from the Fairfield Sentry investors, they are the ones with a primary right to recover their property and to receive priority to the funds recovered from the Fairfield Defendants. A thief acquires no rights to stolen property. At the very least, as victims of the Fairfield Defendants' partnership, conspiracy, and aiding and abetting in the larcenous scheme described in the Amended Complaint, they should be allowed to maintain their claims as "customer" in this SIPC proceeding.[2]

The plain language of the statute and relevant precedents, and logic, require the Trustee and Court to accept that the persons and entities who supplied the "Customer Property" to BLMIS are "customers" with claims to recover in this proceeding. *See* July 12 Mem. Any other

---

[2] If the Trustee argues that the Fairfield Sentry investors' claims should be pursued against Fairfield Sentry and its managers, the argument suffers from at least three fatal flaws: (1) the Trustee is seeking the same funds the investors would seek, leaving the investors without a remedy; (2) the Fairfield Sentry investors' "Customer Property" did not lose its character by passing through the hands of BLMIS' "partners" and "conspirators" when deposited through the "feeder" "conduit" with BLMIS; and (3) the Trustee is blocking not only the investors' clams but also Fairfield Sentry's claims, depriving the investors of any recourse at all. Whether the Fairfield Sentry investors are entitled to all or some of their "Customer Property," it is clear they are entitled to something more in this proceeding than the "nothing" the Trustee proposes.

4

result would be extralegal, inequitable, and unfair.

## II. THE SEC'S MEMORANDUM DEMONSTRATES THAT THE TRUSTEE'S MOTION SHOULD BE DENIED

The SEC's arguments are wrong for at least five reasons.

First, the SEC states correctly that "the factual circumstances of [investors'] claims and how SIPA applies under [the] circumstances" determines the analysis of "whether . . . claimants are 'customers.'" SEC Mem. at 1 (emphasis added). This applies no less to the investors in Fairfield Sentry to "other claimants" "involving other feeder funds . . . ." *Id.* The SEC argues that "although many of the claimants' briefs argue that the [feeder] funds should be viewed as agents of BLMIS, there was no agency relationship because the funds were not controlled by BLMIS." *Id.* at 11. However, the Trustee has alleged in his Amended Complaint that Fairfield Sentry and its officers and directors were "conspirators" and "partners" of BLMIS and Madoff in the fraud. As a matter of law, a "partner" and a "conspirator" is an "agent" of its other "partners" and "conspirators."[3]

Furthermore, the existence of an agency relationship is the apotheosis of a factual question, and there are no facts before the Court to permit a fact finding that Fairfield Sentry and the other Fairfield Defendants were not agents of BLMIS. The only record before the Court consists of the factual allegations in the Trustee's Amended Complaint, which states that they

---

[3] *Bourjaily v. U.S.*, 483 U.S. 171, 188 (1987) ("a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all."); *United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005); *Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135, 140 (2d Cir. 1989) ("[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, binds the partnership.") (quoting N.Y. Partnership Law ss. 4, 20 (McKinney 1948); *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917, 2003 WL 22400213, at *8 (S.D.N.Y. Oct. 21, 2003) ("Under New York law, partners act as agents for all the general partners in the partnership"); *Friedson v. Lesnick*, No. 91 Civ. 2133, 1992 WL 51543, *2 (S.D.N.Y. Mar. 9, 1992) (Martin, J.) ("Under New York law, each general partner acts as the agent of every other general partner and of the partnership.").

5

were agents. Therefore, the Trustee has not shown entitlement to the relief of striking the claims of the feeder fund investors, at least on the present record.

Second, like the Trustee, the SEC concedes that the Fairfield Sentry investors' money was solicited specifically for deposit with BLMIS to be managed by Bernard Madoff in accordance with his "split strike conversion strategy." SEC Mem. at 2. In fact, as the Trustee out, Fairfield Sentry and its officers and directors had no alternative or incentive to depositing the investors' funds with BLMIS to be managed by BLMIS. Therefore, an investment in Fairfield Sentry was, *pro tanto*, a deposit of funds with BLMIS for BLMIS to use to purchase securities (equities, options, and Treasuries) for the benefit of the investors following his "strategy." This squares exactly with the statutory definition of "customer" in SIPA. 15 U.S.C. § 78*lll*(2); July 12 Mem. at 4-7. As intended and required, the Fairfield Sentry investors' cash was deposited with BLMIS, and BLMIS held the cash and securities for the persons who invested it.

Third, the SEC's attempt to engraft a "direct account" requirement into the statute is neither logical nor necessary. *See* SEC Mem. at 4-5. The language of the statute is clear and unambiguous, and it must be given its natural meaning under the many Supreme Court rulings on statutory interpretation and construction. *See* July 12 Mem. at 6-7. While the SEC deflects attention to "other provisions" of SIPA in an effort to argue that Congress imposed a requirement that a "customer" have a direct account with the debtor, none of those sections either changes the words of the governing definition nor persuasively changes the focus of the definition from "any person . . . who has a claim on account of securities received, acquired or held by the debtor . . . or . . . who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78*lll*(2), quoted in SEC Mem. at 3. The statute "focuses" on a "person who has a

6

claim," not a "person who has an account." The SEC's contrary assertion (*see id.* at 4-5) has no basis in the statute.

Fourth, the SEC's reference to "legislative history" does not prove that Congress intended to exclude "indirect" customers from the definition. The SEC's recites a proposed amendment and a securities industry task force proposal and suggests that Congress' adoption of the language of 15 U.S.C. § 78*lll*(2) was a rejection of the Muskie amendment and task force proposals to include "third parties." SEC Mem. at 5-7. That is unsupported speculation. It is more likely, or at least equally likely, that Congress did not adopt those proposals because it considered the clear and unambiguous language of the definition of "customer" already to cover third parties to the extent necessary. The Supreme Court has rejected recourse to the ambiguities and conjectural analysis of snippets of Congressional history as a basis for interpreting and construing statutes because, as shown in this case, they do not demonstrate the views of Congress as a legislative body and they can be made to mean whatever the advocate chooses them to mean. *See* July 12 Mem. at 6-7. Here, the legislative history provides no guidance beyond the words of the statute.

Fifth, the two cases the SEC cites actually support the Fairfield Sentry investors' position that they are customers (as does the *Morgan Kennedy* decision referenced in the SEC Mem. at 9, 12, and discussed in the July 12 Mem. at 8-9). The decision in *Focht v. Heebner (In re Old Naples Sec., Inc.)*, 223 F.3d 1296, 1302 (11th Cir. 2000), states that

> Whether a claimant "deposited cash with the debtor," however, does not . . . depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead the question is whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation.

So, too, here. "Customer" status "does not depend" on whether the Fairfield Sentry investors'

7

money was deposited directly with BLMIS, only that the investors intended the money to be and that it was deposited with BLMIS for management under Madoff's "split strike conversion strategy" and that BLMIS was in "actual receipt, acquisition or possession" of the claimants' money. *Id.* Neither the Trustee nor the SEC contests that this was the case, and the Trustee concedes the money was solicited by and given to BLMIS' and Madoff's "partners" and "conspirators" for deposit with BLMIS.

The other case cited by the SEC, *Ahammed v. SIPC (In re Primeline Sec. Corp.)*, 295 F.3d 1100, 1108 (10th Cir. 2002), holds that there was no error in finding an investor to be a "customer" of the debtor even though the investors "made out their checks to one of [the] companies" operated by another person intending that person to deposit the money with the debtor broker/dealer. In that case, the court noted that the "'[c]laimants <u>reasonably thought</u> [the person] was acting as an agent of the" debtor -- not even that they had <u>proved</u> that he was an agent. *Id.* at 1107 (emphasis added). Here, the Fairfield Defendants were bound to redeposit the investors funds with BLMIS and, in doing so, were acting as BLMIS' "partners" and "conspirators" -- i.e., as its agents as a matter of law -- in soliciting the investors' funds to "feed" them for deposit with BLMIS through the Fairfield Sentry "conduit," as the allegations of the Trustee's Complaint admit.

Therefore, both *Old Naples* and *Primeline* fully support the conclusion that the Fairfield Sentry investors, like the investors in *Old Naples* and *Primeline*, are "customers" under SIPA. At the very least, it is clear that these investors' contention that they are "customers" of BLMIS for purposes of this SIPC proceeding has not been rebutted with facts on a developed record. The Trustee may not simply disallow claims, and this Court may not approve his disallowance, based only on the Trustee's view of what the facts may show. Factual evidence on a sufficiently

8

developed record is necessary to deprive the Fairfield Sentry investors of their right to participate in this SIPC proceeding, particularly when the Trustee has conceded that it was their money that was deposited with BLMIS, stolen by BLMIS, lost by the BLMIS fraud.

## CONCLUSION

The Court should overrule the Trustee's objection to the NBK Investors' claims, deny the Trustee's motion, allow the NBK Investors' claims, and grant such other relief as is just, equitable, and proper.

Dated: New York, NY
       August 20, 2010

KING & SPALDING LLP

by _____
    Richard A. Cirillo
    Lauren W. Mitchell
    1185 Avenue of the Americas
    New York, NY 10036-4003
    Telephone: 212-556-2100
    Telecopier: 212-556-2222

*Attorneys for the NBK Investors*