UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

### APPLICATION OF ATTIAS & LEVY AS SPECIAL COUNSEL FOR THE TRUSTEE FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM <u>FEBRUARY 1, 2010 THROUGH MAY 31, 2010</u>

Keith Azopardi, together with other members and associates at the law firm of Attias & Levy, special counsel for Irving H. Picard (the "Trustee"), Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. ("SIPA") and Bernard L. Madoff, submits this Application for Interim Allowance of Fees and Reimbursement of Expenses (the "Application") for compensation of legal fees in the amount of $97,137.60 (of which 20% is to be deferred through the conclusion of the liquidation period) and reimbursement of expenses in the amount of $10,823.89 for the period from February 1, 2010 through May 31, 2010 (the "Compensation Period"). In support of the Application, Attias & Levy respectfully submits as

1

follows:

## I. BACKGROUND

1. On December 15, 2008, Judge Stanton of the United States District Court for the Southern District of New York, upon application filed on the same date by the Securities Investor Protection Corporation ("SIPC"), entered an order (the "Decree Order") calling for the liquidation of the business of the Debtor in accordance with SIPA and by Paragraph II of the Decree Order, the Trustee was appointed as the trustee for the liquidation of the Debtor's business.

2. The Debtor's liquidation proceeding was removed to this Court pursuant to SIPA § 78eee(b)(4), and, to the extent consistent with the provisions of SIPA, is being conducted as though it were a case under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to SIPA § 78fff(b).

3. Beginning on March 13, 2009, Attias & Levy has served as special counsel for the Trustee.

4. On April 7, 2009, this Court entered an order approving the Trustee's motion for authority to retain Attias & Levy as special counsel to the Trustee in matters pertaining to Gibraltar.

5. The Trustee's motion to retain Attias & Levy established a fee arrangement pursuant to which Attias & Levy agreed to a fee reduction in the amount of 10% as well as an additional holdback of fees in the amount of 20%.

## II. SERVICES RENDERED BY ATTIAS & LEVY

6. The legal services performed on behalf of the Trustee during the time period covered by this Application are as follows:

7. There are five related Gibraltar actions in which Attias & Levy has been involved, namely:

2

(a) judicial review brought by Vizcaya Partners Limited ("Vizcaya") against the decision by the Gibraltar Financial Intelligence Unit[1] to issue "no consent" orders, freezing monies held at Bank J. Safra (Gibraltar) Limited ("Safra") in the names of Vizcaya, Zeus Partners Limited ("Zeus"), Asphalia Fund Limited ("Asphalia") and Siam Investment Management Limited ("Siam") (the "Vizcaya Judicial Review");

(b) An action brought by Siam against the Attorney General and the Bank seeking the release of the sums held in its account (the "Siam Action");

(c) An action brought by Bank Safra to pay into Court approximately $63 million held by it in the accounts of Zeus and Asphalia pending determination of the claims (the "Safra Claim");

(d) An action brought by the Trustee against Vizcaya, Zeus, Asphalia, Siam and Bank Safra for assistance from the Gibraltar Court relating to the transfer of $150 million and seeking orders for disclosure of information, freezing orders, payment into Court and turnover of the monies to the Trustee and/or the US Bankruptcy Court (the "Trustee's Claim");

(e) A claim brought by Vizcaya, Zeus and Asphalia on October 26, 2009 (described below) (the "New Claim").

8.  The work done in relation to these related matters over the specific invoice period is as set out below.

9.  The bulk of the work undertaken in February was in relation to an appeal by Vizcaya, Asphalia, and Zeus (the "Funds") in the Court of Appeal for Gibraltar against the disclosure ruling granted in the Supreme Court on the 28th of October 2009 in the Trustee's Claim. Substantial work was undertaken in preparation for the hearing, skeleton arguments and bundles of authorities resisting the appeal were prepared.

---

[1] A unit of the Royal Gibraltar Police and represented in the proceedings by the Attorney General.

10. The hearing of the appeal took place on the 11th and 12th of February. Judgment was handed down on the 18th of February and the Funds' appeal was dismissed thereby enabling disclosure of the Funds' accounts held by Bank Safra to the Trustee.

11. During February there was also a case management conference in the Supreme Court in the Safra Claim whereby it was ordered that the action be discontinued subject to the payment in of money by the Funds as described in the order of October 28, 2009 in the Trustee's Claim.

12. An application was filed by Vizcaya and Zeus in both the Vizcaya judicial review and the Trustee's claim seeking the release of funds in order to pay past and ongoing legal fees and related expenses.

13. Preparation for the hearing included the drafting of skeleton arguments and preparation of court bundles as well as review of the applicants' arguments and authorities. The matter was heard on the 12th of March 2010 and was adjourned part heard.

14. A significant amount of time was spent on the application for the Trustee's legal fees following the dismissal of the Funds' appeal. The sum of $30,000 was held by the court as security for costs and arrangements were made for the transfer of those funds to the Trustee. An application was filed in court for the remainder of the fees claimed by the Trustee.

15. In May, Attias was engaged in a review of the position going forward and, in particular, reviewing potential new claims brought by the Trustee in this jurisdiction.

16. There was emphasis on preparation for the hearing of the part heard application on the 12th of March as the matter was listed for the 1st of June.

### III. COMPENSATION REQUESTED

17. The Application demonstrates how Attias & Levy has both added value to the Debtor's estate and has advanced the Debtor's SIPC liquidation proceeding.

4

18. Attias & Levy has been mindful of the need to avoid undue legal fees in this case and has taken all reasonable steps to provide cost-effective representation while rendering services with the highest degree of skill and professionalism. To that end, Attias & Levy has staffed this matter leanly and endeavored to eliminate duplication of effort by giving primary responsibility of the case to one partner, Mr. Keith Azopardi.

19. From February 1, 2010 through May 31, 2010, Attias & Levy provided a total of 332.3 hours of legal services to the Trustee in this case. Prior to the 10% discount, the total amount of fees incurred in this time period was $107,930.67 and the total blended rate for professional services was $324.80/hour. After the 10% discount, the total amount of fees incurred is $97,137.60 and the total blended rate is $292.32/hour. Attias & Levy has agreed to a further holdback of 20% of its fees in the amount of $19,427.52, resulting in the present request for compensation in the amount of $77,710.08.

20. A breakdown of the total number of hours performed by each Attias & Levy timekeeper is provided on **Exhibit A** annexed hereto.

21. Attias & Levy seeks reimbursement for out-of-pocket expenses incurred in connection with its representation of the Trustee during the Compensation Period of $10,823.89. An itemized list of these expenses is detailed on **Exhibit B** attached hereto. Attias & Levy typically charges its clients $0.17 per page for photocopying and printing. Attias & Levy does not charge for incoming faxes. Charges for electronic research, overnight delivery, postage, long distance telephone calls, and other out-of-pocket disbursements are based on the actual amounts paid by Attias & Levy for those services.

## IV. GENERAL MATTERS

22. All of the professional services for which compensation is requested herein were performed by Attias & Levy for and on behalf of the Trustee and not on behalf of any other

5

person or entity.

23.    No agreement or understanding exists between Attias & Levy and any other person for sharing compensation received in connection with this case nor has any other person or entity agreed to provide Attias & Levy with compensation for the legal services described herein.

24.    This Court is authorized by SIPA to award to the attorneys for a SIPA Trustee "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred." SIPA § 78eee(b)(5)(A). SIPA also permits interim allowances to the attorneys for a SIPA Trustee. Id.

25.    Pursuant to § 78eee(b)(5)(E) of SIPA, allowances granted by this Court are to be charged against the general estate as a cost of administration. If the general estate is insufficient to pay such allowances in whole, or in part, SIPC shall advance any necessary funds for such payment. SIPA § 78eee(b)(5)(E). Section 78eee(b)(5)(C) of SIPA provides that SIPC shall file a recommendation with regard to the allowance of fees and reimbursement of expenses requested by this Application, and that this Court shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C). Attias & Levy expects that SIPC's recommendation shall be filed with this Court separately.

6

**WHEREFORE**, Attias & Levy respectfully requests that this Court enter an Order:

a. Granting this Application;

b. Allowing payment to Attias & Levy for interim compensation of legal fees, after (a) a reduction of 10% (in the amount of $10,793.07); (b) a holdback of 20% (in the amount of $19,427.52) pending final approval of Attias & Levy's fees in this case, in the aggregate amount of $77,710.08 for professional services rendered to the Trustee from February 1, 2010 through May 31, 2010;

c. Allowing payment to Attias & Levy in the amount of $10,823.89 for reimbursement of expenses incurred by Attias & Levy from February 1, 2010 through May 31, 2010; and

d. Granting Attias & Levy such other and further relief as this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 20, 2010 | ATTIAS & LEVY |
|  |  |
|  | By:    *s/Keith Azopardi* |
|  | Keith Azopardi<br>First Floor Suites<br>39 Irish Town<br>P.O. Box 466<br>Gibraltar<br>London EC1A 2FG<br>Telephone: +350 200 72150<br>Fax: +350 200 74986 |

7

# **EXHIBIT A**

### **SUMMARY OF FOURTH INTERIM FEE APPLICATION OF ATTIAS & LEVY FOR SERVICES RENDERED FOR THE PERIOD FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

|  | **YEAR ADMITTED** | **HOURLY RATE** | **TOTAL HOURS BILLED** | **TOTAL COMPENSATION** |
|---|---|---|---|---|
| Keith Azopardi | 1990 (UK & Gib) | 373.33 | 147.9 | $55,216.00 |
| Samantha Sacramento | 2000(UK) 2004(Gib) | 298.67 | 80.5 | $24,042.67 |
| Graceanne Parody | 2004 (UK) 2005 (Gib) | 280.00 | 99.4 | $27,832.00 |
| Tom Hillman | 2007 (UK) 2009 (Gib) | 186.67 | 4.5 | $840.00 |
| Total: |  | $324.80 | 332.3 | $107,930.67 |
| Total minus 10% Discount |  | $292.32 |  | $97,137.60 |
| **Total Net of 20% Holdback:** |  |  |  | **$77,710.08** |

8

# EXHIBIT B

### EXPENSE SUMMARY OF ATTIAS & LEVY
### FOR THE FOURTH INTERIM PERIOD
### OF FEBRUARY 1, 2010 THROUGH MAY 31, 2010

| **EXPENSES** | **AMOUNTS** |
|---|---:|
| Communication | $1,327.20 |
| Court Fees | $4,704.00 |
| Stationary/Copies | $257.04 |
| Advisor fees (Professor Fletcher) | $2,352.00 |
| Travel | $2,183.65 |
| **Total Expenses Requested:** | **$10,823.89** |