**SKOLOFF & WOLFE, P.C.**
Jonathan W. Wolfe (7070)
Barbara A. Schweiger (6448)
140 Broadway Center
New York, New York 10005
Telephone: (212) 858-7522
Fax: (212) 858-7750

*Attorneys for Carole Angel*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pr. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIMS REGARDING CLAIM NO. 011748**

Carole Angel, by her undersigned attorneys, objects to the Notice of Trustee's Determination of Claim, dated July 30, 2010 (Claim No. 11748, Account No. 1A0034) (the "Determination Letter"), denying her timely-filed customer claim against Bernard L. Madoff Investment Securities LLC ("BLMIS"), and respectfully represents as follows:

**BACKGROUND**

1. Carole Angel is a "customer" of BLMIS, as defined by the Securities Investor Protection Act of 1970 ("SIPA"). 15 U.S.C. § 78*lll*(2).

2. At all times, Carole Angel had only one individual account at BLMIS, and on or about April 28, 2010, Carole Angel received a determination with regard to Account No. 1A0100 (Claim No. 013088), which, upon information and belief, is the same account as Account No. 1A0034, although it appears that Madoff arbitrarily assigned it a new number on or about June 3, 1997.

3. On December 11, 2008, this liquidation proceeding was commenced against BLMIS, pursuant to SIPA.  (*Securities & Exchange Comm'n v. Madoff*, Docket No. 08-10791, S.D.N.Y.)

4. On December 15, 2008, jurisdiction over this matter was transferred to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") and the Trustee, Irving Picard ("SIPA Trustee"), was appointed to oversee the liquidation of BLMIS's assets and to process all claims against BLMIS.  (*See* Docket No. 4, Order.)

5. The Bankruptcy Court entered an order on December 23, 2008, directing the SIPC Trustee to issue notice and claim forms to BLMIS customers and setting forth claims filing deadlines.  (*See* Docket Doc. No. 12, "Claim Procedures Order".)

6. In or around 1970, Carole Angel's husband, Albert Angel, opened an account with BLMIS for around $50,000, to which he periodically added funds over the years.  In 1988, Carole Angel also opened an account with a transfer from Mr. Angel's account.  The Angels also opened a joint account in 1990.  At no time did the Angels close these accounts and open new accounts to replace them, but it appears from the documentation attached to the Determination Letter that BLMIS unilaterally transferred the balance from Account No. 1A0034 to Account No. 1A0100.  An objection to the

2

prior determination regarding Account No. 1A0100 was filed with this Court on May 20, 2010, Docket Doc. No. 2311, and we incorporate that Objection by reference.

    7.    Carole Angel filed only one claim for her personal account, but has now received two different Determination Letters and two different claim numbers. The subject determination for Account No. 1A0034 dated July 30, 2010, is the 1988 – 1997 account for Mrs. Angel, prior to BLMIS's unilateral transfer of her balance to Account No. 1A0100, for which a determination was received.

    8.    The SIPA Trustee nevertheless determined that

    a.  On January 29, 1988, a transfer from Albert Angel in the amount of $442,587.53 to open this account has been "adjusted" to zero;

    b.  On February 16, 1988, a $150,000.00 check was deposited into the account;

    c.  The total deposits of $592,587.53 were "adjusted" to $150,000.00;

    d.  An April 10, 1990 transfer of $250,000.00 to the Angels' joint account was "adjusted" to $150,000.00;

    e.  Three check disbursements from the account were made in 1993 and 1996, totaling $225,000.00; and

    f.  The total alleged "withdrawals" from this account were $2,535,936.43, which was adjusted to $375,000.00

    9.    According to the SIPA Trustee, during the period from January 29, 1988 through June 3, 1997, Carole Angel deposited a total of $150,000.00 into Account No. 1A0034 and withdrew a total of $375,000.00. Table 1 of the July 30, 2010 Determination Letter indicates that on June 3, 1997, the account balance of

3

$2,060,936.43 was transferred to Account 1A010030, although this amount was "adjusted" by the Trustee to zero. A true and correct copy of the SIPA Trustee's July 30, 2010 Determination Letter for Claim No. 011748, Account No. 1A0034, is attached hereto as Exhibit A.

10.  The November 30, 2008 market value of the securities in Carole Angel's Account No. 1A0100 was $9,843,549.23, netting the put offsets against the direct long holdings. Mrs. Angel timely filed one claim for her account. A true and correct copy of Mrs. Angel's Customer Claim for Account No. 1A0034/1A0100, including the November 30, 2008 BLMIS Statement for Account No. 1A0100, is attached hereto as Exhibit B.

11.  Throughout the period of the existence of the account(s), Carole Angel paid taxes annually and reported capital gains, dividends, and interest income from the accounts, based on statements she received from BLMIS.

12.  In the July 30, 2010 Determination Letter for Account No. 1A0034, the SIPA Trustee rejected Carole Angel's claim for securities and claimed that Mrs. Angel had withdrawn $375,000 more from the Account than she had deposited, ignoring all appreciation in the account over a period of more than nine years.

13.  In addition to rejecting Carole Angels' Customer Claim, the Determination Letter states that she is not entitled to payments because no securities were purchased by BLMIS for her account and thus profits reported to her were fictitious, she does not "not have a positive 'net equity' in [her] account", and she is therefore "not entitled to an allowed claim in the BLMIS liquidation proceeding."

4

**GROUNDS FOR OBJECTION**

14. The Determination Letter fails to comply with the Bankruptcy Court's Claim Procedures Order, which directs the Trustee to satisfy customer claims in accordance with "the Debtor's books and records." (Docket No. 12, 12/23/08 Order.) The BLMIS November 30, 2008 statements showing a values of $9,843,549.23 for Carole Angel, as well as a listing of all the securities purportedly purchased on her behalf, reflects "the Debtor's books and records." The SIPA Trustee is bound by this amount unless he can show that the Angels did not have a "legitimate expectation" that the balance on the November 30, 2008 statement – along with myriad statements, credit advices, portfolio management reports, and confirmations over the years – represented their property.

15. Based on periodic statements, credit advices, portfolio management reports, confirmations, and other documents received from BLMIS over the years, Carole Angel reasonably believed and had legitimate expectations that BLMIS executed the transactions reflected therein and that her account in fact held such securities.

16. The Determination Letters fails to set forth a proper basis for the SIPA Trustee's position, *i.e.*, the relevant facts and legal theories upon which the determination was made.

17. The Determination Letter also fails to supply all supporting documentation for reaching the conclusions about the activity in the account.

18. Moreover, the Trustee's Determination Letter arbitrarily determines that "[n]o securities were ever purchased for" the account as far back as 1988, without providing any factual or evidentiary basis for this conclusion or that the BLMIS

5

fraudulent scheme extends any further back in time than 1993. Although papers filed with the Bankruptcy Court last fall by the Trustee indicate evidence of fraud going back to 1993, (*see, e.g.,* Declaration of Joseph Looby filed with the Bankruptcy Court on October 16, 2009 in support of the Trustee's Motion For an Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed on Last Statement, Affirming Trustee's Determination of Net Equity, and Expunging Those Objections With Respect to The Determinations Relating To Net Equity (Docket No. 524, Attachment #1)), the Trustee has provided no evidence that the BLMIS fraud predates 1993, or that no securities were purchased for Carole Angel prior to that date.

6

## LEGAL ARGUMENT

19. In enacting and amending SIPA, Congress intended to protect investors' "legitimate expectations":

> A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, never purchased, or even stolen, this is not always possible. Accordingly, [customers] will receive cash based on the market value as of the filing date.

*H.R. Rep. No.* 95-746, at 21.

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, never purchased or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account. . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations. . . .

*S. Rep. No.* 95-763, at 2 (1978)

20. In addition, the Securities Investors Protection Corporation ("SIPC") rules provide for classification of customer claims in accordance with the customer's "legitimate expectations," based on the written securities purchase confirmations supplied by the broker-dealer to the customer. *See* 17 C.F.R. 300.500.

21. "'The principal purpose' of SIPA is 'to protect investors against financial losses arising from the insolvency of their brokers." *In re New Times Sec. Servs., Inc.,* 463 F.3d 125, 129 (2d Cir. 2006) (quoting *SEC v. S.J. Salmon & Co.,* 375 F. Supp. 867, 871 (S.D.N.Y.1974)).

22. Indeed, SIPC acknowledged in its court papers in the *New Times* case that in situations like this one – a customer orders a securities purchase and receives written

7

confirmation reflecting the purchase, but no securities were ever purchased – its policy was to honor the customer's legitimate expectations:

> ***[R]easonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality.*** Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (2d Cir., Dec. 30, 2005) (emphasis supplied).

23. Therefore, the SIPA Trustee's position in the Determination Letter is completely at odds with SIPC's position regarding claimants' legitimate expectations, and, in particular, the Angels' reasonable and legitimate expectations, based on written statements from BLMIS over a period of nearly four decades.

24. SIPA defines "net equity" as the value of "all securities positions of [a] customer" that "would have been owed by the debtor to such customer" as of the date of the SIPA filing, minus any amounts the customer might owe to the debtor. 15 U.S.C. §78*lll*(11).

25. The SIPC Trustee, however, has not made his determination based on "what would have been owed by the debtor to such customer." Rather, with regard to the Angels' accounts, the SIPC Trustee has only recognized the amount of their net investment, without any regard to any appreciation in their accounts over the period of

8

nearly 40 years – a legitimate expectation. Accordingly, the SIPC Trustee is avoiding paying SIPC insurance to long-term investors like Carole Angel, who has nearly all of her financial resources in her account, and has depended upon her BLMIS investment for her daily living expenses.

26. At the very least, under applicable New York law, the funds Carole Angel deposited with BLMIS are entitled to interest, which is not insubstantial given the number of years she maintained her account with BLMIS. *See, e.g.*, N.Y. Gen. Oblig. § 5-501, *et seq.*; N.Y.C.P.L.R. § 5004. That interest amount should be factored into the amount of equity Carole Angel had in her account before the alleged withdrawals are "netted" out.

27. Beyond that, upon information and belief, BLMIS deposited customer funds in bank accounts rather than purchase the securities it confirmed it had purchased, and any interest earned thereon should be returned to investors like the Angels under an unjust enrichment theory. That amount should also be factored into the amount of equity Carole Angel had in her account before the alleged withdrawals are "netted" out.

28. Moreover, none of the alleged transfers or withdrawals from Account No. 1A0034 was more recent than over ten years prior to the filing of this suit. Even though SIPA has nothing to do with clawing back funds under the fraudulent conveyance statute, the SIPA Trustee is effectively clawing back money transfers between accounts to offset the amounts listed in the November 2008 Statements and to deprive Carole Angel of the SIPC insurance to which she is entitled based on her legitimate expectations, irrespective of any further action under the New York fraudulent conveyance statute.

9

29. In addition, as set forth above, the Trustee must produce evidence that supports the conclusions reached in the Determination Letter, and particularly evidence that Carole Angel received all purported disbursements listed in the Table attached to the Determination Letter.

30. Finally, Carole Angel is entitled to an adjustment from the initial deposit in the account to reflect current values.

## RESERVATION OF RIGHTS

31. Carole Angel reserves the right to supplement, amend, or otherwise revise this Objection, and any failure to object on particular grounds shall not be construed as a waiver of her right to object on any additional grounds.

32. Mrs. Angel reserves all objections to the relevance, materiality, competence, admissibility of evidence, and any applicable privileges, in any subsequent proceedings or at trial of this or any other action for any purpose whatsoever.

33. Mrs. Angel reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

34. Mrs. Angel incorporate by reference all reservations of rights set forth in her Customer Claim, as well as those set forth in the Objection filed on May 20, 2010, with regard to Account No. 1A0100.

## **RELIEF REQUESTED**

For the foregoing reasons, Carole Angel's Customer Claim should be allowed in their entirety in the amount of $9,843,549.23 (1A0034/1A0100), which is the amount indicated on the November 30, 2008 BLMIS (final) Statement for Account No. 1A0100, plus interest from the date of the Determination Letter.

For the foregoing reasons, this Court should direct SIPC to advance the Carole Angel $500,000 in insurance from the SIPC fund for her account.

For the foregoing reasons, the Determination Letter should be stricken.

Carole Angel also requests such other relief as may be just and equitable.

Dated: August 25, 2010

        SKOLOFF & WOLFE, P.C.

        __/s/ Barbara A. Schweiger____
        Jonathan W. Wolfe
        Barbara A. Schweiger
        140 Broadway Center
        New York, New York 10005
        Telephone: (212) 858-7522
        Fax: (212) 858-7750

        *Attorneys for Carole Angel*