**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Hearing Date: October 7, 2010 at 10:00 a.m.
Objection Deadline: September 30, 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING AN AGREEMENT BY AND BETWEEN THE
TRUSTEE AND HSBC BANK PLC TO EFFECTUATE AGREEMENT
<u>WITH THE PRIMEO LIQUIDATORS</u>**

TO:  THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. ("SIPA") and Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving an agreement (the "Agreement")[1] by and among the Trustee and HSBC Bank plc and its subsidiaries and affiliates ("HSBC") to effectuate an agreement with the liquidators of Primeo Fund, and in support thereof, the Trustee respectfully represents as follows:

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

[2] Section 78*lll*(7)(B) of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq. ("SIPA") states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

3

## THE CLAIMS AGAINST PRIMEO AND HSBC

6.  On February 26, 2009, a standstill letter was sent to HSBC by the Trustee's counsel (the "Standstill Letter") placing HSBC on notice that (i) it received funds from BLMIS which constitute "customer property" under SIPA section 78*lll*(4) and which, therefore, are property of BLMIS under SIPA section 78fff-2(c)(3); (ii) any disposition of such funds will be deemed a willful violation of the automatic stay; and (iii) instructing HSBC to refrain from engaging in or permitting any transfers or dispositions of such funds without an order from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

7.  Among the HSBC accountholders to which the standstill letter applied was Primeo Fund ("Primeo"), an investment fund and alleged feeder fund of BLMIS, which maintained two accounts at BLMIS bearing the numbers 1FN060 and 1FN092.

8.  Primeo maintained several accounts at HSBC, numbered 58775277, 58775159, 58775140, 58775132 and 67171631 (the "Primeo HSBC Accounts"), the aggregate balance of which as of the date of the Standstill Letter was approximately $5 million (the "Primeo Monies").[3] Subsequently, the Primeo HSBC Accounts were frozen by HSBC.

9.  On January 23, 2009, Primeo was placed in voluntary liquidation in the Cayman Islands. On April 8, 2009, the Grand Court of the Cayman Islands appointed Richard Fogerty and G. James Cleaver as joint official liquidators (the "Primeo Liquidators"). On June 19, 2009, the Primeo Liquidators brought an action against HSBC in

---

[3] A portion of the funds in the Primeo HSBC Accounts are denominated in Euros. Therefore, the exact dollar amount in those accounts varies based on currency fluctuations.

4

England (the "England Action") seeking the turnover of the Primeo Monies to the Primeo Liquidators. The English court recognized the Trustee's interest in such funds.

10. On July 15, 2009, the Trustee brought an action in this Court against Primeo and HSBC (Adv. Pro. No. 09-1366, Dkt. No. 1) for the avoidance and recovery of approximately $145 million in fraudulent transfers under Sections 544, 548(a), 550(a)(1) and 551 of the Bankruptcy Code, 544, applicable provisions of SIPA, N.Y. CPRL § 203(g) (McKinney 2001) and N.Y. Debt. & Cred. Law §§ 273–276 (McKinney 2001). Primeo did not move or otherwise respond to the Trustee's complaint, and on September 1, 2009, a default was entered against Primeo pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure (Adv. Pro. No. 09-1366, Dkt. No. 10). HSBC answered the complaint on August 28, 2009 (*Id.*, Dkt. No. 7). That action remains pending in the Bankruptcy Court.

## SETTLEMENT WITH PRIMEO AND HSBC

11. In September 2009, the Primeo Liquidators approached the Trustee seeking the Trustee's agreement to the release to the Primeo Liquidators of the approximately $5 million being held by HSBC in the Primeo HSBC Accounts. In January 2010 the Trustee and the Primeo Liquidators reached an understanding to compromise their competing claims to the monies in the Primeo HSBC Accounts by splitting those monies evenly after reserving €385,000 in subscription money that the Primeo Liquidators had a legal obligation to return to the subscribers having priority over other subscribers. The Trustee viewed this understanding as reasonable, given that (i) this agreement does *not* resolve any of the Trustee's claims against Primeo pursuant to the various provisions of the Bankruptcy Code, SIPA and state law; and (ii) the settlement allows the Trustee to avoid

5

having to appear in the England Action and subject his claims against Primeo to the jurisdiction of English courts before this Court had an opportunity to decide the merits of those claims.

12. The Trustee and the Primeo Liquidators then approached HSBC to obtain its agreement to effectuate the terms of the Trustee's compromise with the Primeo Liquidators by releasing the monies in the Primeo HSBC Accounts in accordance with the proposed compromise. HSBC agreed in principle, to enter into an agreement with the Trustee for the release of the Primeo Monies, subject to the dismissal with prejudice of the England Action and the release of HSBC by the Trustee and the Primeo Liquidators of any and all liability with respect to the payments, and only with respect to those payments, made by HSBC under the proposed settlement with the Trustee. However, HSBC also wished to reserve certain portions of the monies to cover the possibility that it might be ordered to turnover part of the money in the Primeo HSBC Accounts to third parties as a result of pending and potential litigation in Luxembourg. The current agreement being submitted for the Court's approval reflects the original understanding reached with the Primeo Liquidators as modified, with the agreement of the Trustee and the Primeo Liquidators, to resolve those additional concerns of HSBC.

13. There are four conditions precedent that must be satisfied before the Agreement will come into effect. The Primeo Liquidators satisfied the first condition precedent on July 29, 2010 by executing the Release attached to the Agreement. The Trustee and the Primeo Liquidators are in the process of satisfying two of the remaining conditions precedent by submitting the Agreement to this Court for approval and the Liquidators' Release to the Grand Court of the Cayman Islands for approval. The Primeo

6

Liquidators will satisfy the last condition precedent by dismissing the England Action with prejudice as soon as possible after the necessary approvals of this Court and the Grand Court of the Cayman Islands have been obtained. In the meantime, the England Action has been stayed to allow time for the Agreement to come into effect.

## THE AGREEMENT

14.     The principal terms and conditions of the Agreement are generally as follows (as stated, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[4]

- Upon the effective date of the Agreement, HSBC shall promptly (and no later than 14 days after receiving appropriate instructions from the Primeo Liquidators and the Trustee) transfer (i) €385,000[5] from the HSBC Accounts to the Primeo Liquidators;[6] (ii) half of any remaining funds in the HSBC Accounts (excluding the Pending Redemption Cases Monies) to the Primeo Liquidators; and (iii) any remaining funds in the HSBC Accounts (excluding the Pending Redemption Cases Monies and Potential Redemption Cases Monies[7]) to the Trustee.

- If HSBC is directed by a court order to make any payment to any party making a claim in any Pending or Potential Redemption Case, HSBC shall be entitled to satisfy such claim by making a payment from the Pending Redemption Cases Monies or the Potential Redemption Cases Monies, provided that the Trustee and the Primeo Liquidators have each

---

[4] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

[5] This amount equals $488,372.50 based on the Euro/Dollar exchange rate as of the date of this Motion of 1.2685.

[6] The Trustee has been advised that such funds represent two subscriptions received by Primeo for which shares were never issued. As such, the €385,000 is being transferred to the Primeo Liquidators who will return this sum to the investors who made such subscriptions.

[7] Various legal actions have been brought in Luxembourg against HSBC by investors that made redemption requests to HSBC for the return of their investment in Primeo. The aggregate of such investors' claims total approximately €1,345,088.69. This sum is being held back by HSBC pending the outcome of such litigation. In addition, approximately €1,084,759.86 is being set aside by HSBC for potential claims of similarly situated investors.

7

given consent to any payment made from the Pending Redemption Cases Monies, the Trustee has given consent to any payment made from the Potential Redemption Cases Monies, HSBC has made a good faith effort to defend or settle the case on reasonable terms, and HSBC has cooperated with any reasonable requests the Trustee or the Primeo Liquidators may have to be informed of the proceedings.

- In the event of a Final Determination defeating any Pending Redemption Case, HSBC shall promptly (and no later than 14 days after receiving appropriate instructions from the Primeo Liquidators and the Trustee) distribute half of the portion of the Pending Redemption Cases Monies represented by such case to each of the Trustee and the Primeo Liquidators.

- In the event of a Final Determination defeating any Potential Redemption Case, HSBC shall promptly (and no later than 14 days after receiving appropriate instructions from the Trustee) distribute the Potential Redemption Cases Monies represented by such case to the Trustee.

- Two years and six months following the Final Determination of the Pending Redemption Cases, HSBC shall transfer any remaining Potential Redemption Cases Monies to the Trustee, provided, however, that HSBC shall be entitled to continue to hold as Potential Redemption Cases Monies sufficient money to satisfy any Potential Redemption Case that has been commenced at such time until the Final Determination of such case.

- The Trustee, the BLMIS estate, the Bernard L. Madoff estate, and their respective successors, employees, counsel, agents, and assigns (collectively the "Releasors") release and forever discharge (the "Release") HSBC and its successors, assigns, directors, officers, employees, counsel and agents (collectively, with HSBC, the "Releasees") from any claim or liability arising solely from any payments made by HSBC pursuant to the Agreement (the "Payments") under 11 U.S.C. §§ 542, 544, 547, 548 or 550, 15 U.S.C. § 78fff-2(c)(3); the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270 - 281), as well as from any and all other liabilities, obligations, claims and causes of action arising in law, equity or otherwise solely from the Payments that the Releasors now have or may have against the Releasees. The Release shall be without prejudice to any and all claims which do not arise specifically from the Payments.

- The parties submit to the Bankruptcy Court's jurisdiction solely for the purpose of enforcing the Agreement.

- The Agreement will be effective upon the later of (i) the Agreement being executed, (ii) the execution of a release by the Primeo Liquidators, the

8

form of which is attached to the Agreement, releasing HSBC from any claim or liability arising solely from the Payments made under the Agreement, (iii) the dismissal with prejudice of all proceedings brought in England by the Primeo Liquidators against HSBC in relation to the funds in the HSBC Accounts, (iv) an order of the Grand Court of the Cayman Islands approving the Primeo Liquidators' execution of the Release the form of which is attached to the Agreement, or (v) an order by the United States Bankruptcy Court for the Southern District of New York approving the Agreement.

## RELIEF REQUESTED

15. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

16. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. In re Ionosphere Clubs, Inc., 156 BR 414, 426 (S.D.N.Y. 1993), accord, 17 F.3d 600 (2d Cir. 1994) (citing Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

17. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" Liu v. Silverman (In re Liu), 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)); see also Masonic Hall & Asylum Fund v.

9

Official Comm. of Unsecured Creditors (In re Refco, Inc.), 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006) Nellie v. Shugrue, 165 B.R. 115, 121-22 (S.D.N.Y. 1994); In re Ionosphere Clubs, 156 B.R. at 426; In re Purified Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

18. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i) the probability of success in the litigation;
(ii) the difficulties associated with collection;
(iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
(iv) the paramount interests of the creditors.

In re Refco, Inc., 2006 U.S. Dist. LEXIS 85691, at *22 (S.D.N.Y. Nov. 16, 2006); Nellis v. Shugrue, 165 B.R. at 122 (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993)).

19. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. See In re Purified Down Prods., 150 B.R. at 522; In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. Nellis v. Shugrue, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505 (quoting In re Blair, 538 F.2d 849, 851 (9th Cir. 1976)).

20. The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness and, accordingly, the Agreement should be

approved by this Court. The Primeo HSBC Accounts contain limited funds—approximately $5 million. While the Trustee believes that he is entitled to the entirety of such funds, proceeding with litigation is highly uneconomic in light of this limited amount, especially in light of the risk attendant to seeking a litigated outcome of the dispute. The Agreement allows the Trustee to recover approximately one-half of such funds[8] without the need for the Trustee to appear in potentially protracted litigation in England, the results of which are less than certain. Furthermore, the Agreement allows the Trustee to recover a sum of money for the benefit of the fund of customer property without surrendering his claims against Primeo for approximately $145 million. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶ 2. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.")

21. Given the complexities involved in proceeding with litigation, the Trustee has determined that the proposed settlement represents a fair compromise. The Agreement also furthers the interests of the customers of BLMIS by adding money to the fund of customer property now. Id. ¶ 3.

22. In sum, the Trustee submits that the Agreement should be approved for two reasons: (a) to avoid burdensome litigation; and (b) because it represents a reasonable compromise that benefits the estate and the customers of BLMIS. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

---

[8] As described in more detail, *supra*, €385,000 is subtracted for the return to investors whose subscriptions were never invested by Primeo, and another sum of money is reserved by HSBC for pending and potential litigation with third parties.

11

## Notice

23. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) all known creditors of BLMIS. The Trustee shall also serve, by way of the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case. The Trustee submits that no other or further notice need be given and respectfully requests that the Court find that such notice is proper and sufficient.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: New York, New York  
August 30, 2010

Respectfully submitted,

*s/Marc E. Hirschfield*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*