| | |
|---|---|
| Helen Davis Chaitman (4266)<br>Becker & Poliakoff LLP<br>45 Broadway<br>New York, NY 10006<br>hchaitman@becker-poliakoff.com<br>*Attorneys for Diane and Roger Peskin,*<br>*Maureen Ebel, and several hundred other*<br>*customers* | Hearing Date: September 14, 2010<br>Hearing Time: 10:00 a.m. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                          Plaintiff,<br><br>           v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                          Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                          Debtor. | |

**OBJECTION TO FOURTH APPLICATIONS OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM FEBRUARY 1, 2010 THROUGH MAY 31, 2010**

      Diane and Roger Peskin, Maureen Ebel, and several hundred other customers of Bernard

L. Madoff Investment Securities, LLC ("Madoff") [1] ("Objectors"), by their attorneys, Becker &

Poliakoff LLP, object to the fourth applications for interim compensation of Irving H. Picard,

Trustee, and his counsel, Baker & Hostetler LLP ("B&H") and incorporate herein the objections

---

[1] Becker & Poliakoff LLP files this objection on behalf of the hundreds of customers it represents in these proceedings and for whom it has filed objections to the Trustee's determinations.

they filed (through Phillips Nizer LLP and Becker & Poliakoff LLP) to the first, second and third applications for interim compensation of the Trustee and B&H. This objection constitutes the Objectors' offer of proof and request that the Court schedule an evidentiary hearing at which they can submit evidence substantiating the facts set forth herein.

1. The Trustee was appointed by this Court at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court for the Southern District of New York on December 15, 2008 for the liquidation of Madoff under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

2. In their fourth interim fee applications, the Trustee seeks allowance of fees of $601,202.25 for the 120-day period from February 1, 2010 through May 31, 2010, and B&H seeks allowance of fees of $33,981,534.45. This works out to $5,010 in daily compensation (including weekends and holidays) for the Trustee and $283,179.45 in daily compensation for B&H, again including weekends and holidays. Thus, together, the Trustee and B&H are seeking $288,189.45 in daily compensation, including weekends and holidays or $2,017,326.10 per week. On an annualized basis, this would be $104,900,950. To summarize:

|          | **Trustee's Compensation** | **B&H's Compensation** | **Total Trustee and B&H Compensation** |
|----------|---------------------------|------------------------|----------------------------------------|
| Per Day  | $5,010.00                 | $283,179.45            | $288,189.45                            |
| Per Week | $35,070.00                | $1,982,256.10          | $2,017,326.10                          |
| Per Year | $1,823,640.00             | $103,077,310.00        | $104,900,950.00                        |

3. This Court has ruled that the Trustee and B&H do not have to file their detailed billing reports. As a result, investors have no ability to evaluate the efficiency or professionalism

of the work covered by these applications except by the results to date (which have been minimal). The funds to pay the Trustee and B&H come directly from SIPC – from the very money that is necessary to pay investors the $500,000 in SIPC insurance to which they are entitled under SIPA. Given the fact that hundreds of investors who are entitled to SIPC insurance have still not been paid, the money being paid to the Trustee and B&H is money that should, by statute, be paid to investors.

4. What we do know, from the application filed by B&H, is that for the four month period from February 1, 2010 through May 31, 2010, the Trustee's law firm has incurred the following sums in legal fees on the following specified activities:

| | |
|---|---:|
| Trustee's investigation | $6,794,207.00 |
| Preparation of avoidance action complaints/investigation | $615,699.50 |
| Customer claims | $3,202,922.00 |
| Feeder funds | $4,405,691.50 |
| Canavan, Goldsmith and Kalman [2] | $104,241.00 |
| Madoff family | $1,621,429.50 |

See Ex. E to the B&H application. There is nothing in the supporting applications which provides a way for the Court, or any investor, to evaluate the reasonableness of these charges.

**THE TRUSTEE HAS FAILED TO "PROMPTLY" PAY SIPC INSURANCE**

---

[2] This is a litigation brought against the directors of SIPC and Stephen Harbeck, SIPC's president, for perpetrating a massive investment insurance fraud against Madoff's customers. The Trustee is not a party to this litigation and yet B&H incurred $104,241 in fees during this four-month period.

5. The Trustee's most important statutory obligation under SIPA is to "promptly" replace securities in Customers' accounts up to $500,000 in value. *See* 15 U.S.C. § 78fff-3(a) and 4(c). Yet, as of August 27, 2010, the Trustee has still not determined 2,995 claims.

6. As set forth in the Trustee's Amended Third Interim Report for the period ending March 31, 2010 (the "Report"), 16,314 customer SIPC claims had been filed in this case of which the Trustee had determined 12,249 as of March 31, 2010. (Report ¶ 78; ¶ 2). The Trustee has not filed a subsequent report.

7. Through September 30, 2009, the Trustee had determined only 3,062 claims and allowed only 1,641 of such claims. *See* http://www.madofftrustee.com/Status.aspx. The Trustee claimed that of the 4,903 active accounts that Madoff had as of December 11, 2008, only 2,335 customers, whose claims total approximately $20 billion, actually lost money under the Trustee's net investment calculation, even though the November 30, 2008 balances on all the accounts totaled $64.8 billion. Thus, as of September 30, 2009, the Trustee had determined only approximately 70% of the claims *he acknowledged were valid*.

8. As of March 31, 2010, the Trustee had not yet determined 4,065 claims. As of August 27, 2010, again according to the Trustee's website, after 21 months of the Trustee's tenure the Trustee has determined 13,319 claims, leaving 2,995 claims still undetermined,. During the five-month period from March 31, 2010, through August 27, 2010, the Trustee had only determined 1,070 claims and had only allowed 193 of those claims.

9. The Trustee has always maintained that there are $20 billion of claims under his net investment methodology. As of August 27, 2010, he has allowed just 2,204 claims totaling only $5,603,114.289.29. Thus, after 21 months of his tenure, the Trustee still has not determined

4

2,995 claims with an allowed amount (based on his net investment methodology) of approximately $14 billion. To summarize:

|  | **Claims Determined** | **Claims allowed** |
| --- | ---: | ---: |
| As of 9/30/09 | 3,062 | 1,641 |
| As of 3/31/10 | 12,249 | 2,011 |
| As of 8/27/10 | 13,319 | 2,204 |
| Undetermined Claims | 2,995 | |

10. If the Trustee has correctly stated that the total net investment claims are approximately $20 billion and, to date, he has allowed less than $6 billion of claims, many of the undetermined claims are of customers who are clearly entitled to SIPC insurance under the Trustee's methodology as approved by this Court. Yet the Trustee has not determined these claims. The Trustee has unjustifiably delayed paying SIPC insurance to customers whose claims he acknowledges are valid. This has caused, and continues to cause, devastation to customers to whom, as a matter of law, the Trustee has a fiduciary duty. This failure to pay customers whose claims the Trustee acknowledges are valid justifies this Court's denial of any further compensation to the Trustee and his law firm until all of the customer claims are paid in full.

11. As of February 28, 2010, SIPC had advanced $141,819,540.89 for administrative expenses and $602,440,855 for customer claims. (Report ¶ 68).

12. In March 2010, SIPC advanced $16,638,534 for administrative expenses and $48,421,096 for customer claims. (Report ¶ 68).

13. Thus, through March 31, 2010, SIPC had advanced a total of $158,458,074 for administrative expenses or $2,365,045 per week. And despite the expenditure of more than $2.3

million per week in professional fees and expenses, the Trustee has still not determined 2,295 customer claims constituting $14 billion of the $20 billion of claims the Trustee has said he will recognize under his net investment methodology.

14. During that same period of time, the Trustee and B&H claim to have "recovered" approximately $1.5 billion for distribution to customers. (Report ¶ 1). Of this amount, $946 million was simply sitting in bank accounts in Madoff's name when the Trustee was appointed, including $301,407,190 at Mellon Bank, $233,500,000 at JP Morgan Chase, $300 million in securities, and $29 million at Bank of New York. *See* Bloomberg.com 1/29/09.

15. The Trustee and B&H are acting in direct contravention of their fiduciary and statutory duty to customers and to the public and, in the process, are increasing exponentially and unnecessarily the administrative costs of the estate, depleting SIPC funds that should be used to pay customer claims at a time when SIPC is insolvent. Indeed, SEC Commissioner Mary Schapiro testified before the House Subcommittee on Capital Markets, Insurance and Government-Sponsored Enterprises on July 14, 2009:

> The tragic truth is there is not enough money available to pay off all the customer claims.

(7/14/09 Webcast of Hearing before the Subcommittee on Capital Markets, Insurance, and Government-Sponsored Entities, House of Representatives, at 52:51.)

16. In the circumstances of this case which has bankrupted SIPC, the Trustee and B&H have a conflict of interest which disables them from serving. For this reason, and for the other reasons set forth below as well as the reasons set forth in Objectors' first three objections, Objectors file this objection and offer to prove the facts set forth herein at an evidentiary hearing at a time set by the Court. This objection constitutes their offer of proof.

**THE TRUSTEE HAS FAILED TO DISCLOSE MATERIAL INFORMATION**

17. Despite the fact that the Trustee is presiding over the biggest financial fraud in history, he himself has concealed from investors material information which is of vital importance to customers. For example:

   a. The Trustee has not permitted any investors to take discovery of Madoff's records in order to establish when the fraud began. Instead, he has attempted to impose upon the world his own self-serving conclusions that Madoff operated fraudulently from the inception of his operations in the 1960's.

   b. The Trustee has not disclosed what the total claims of the estate will be, according to his net investment method. After 21 months of his tenure, he must know this figure.

   c. The Trustee has not disclosed what he anticipates the total fund of customer property will be. Nor has he given customers an estimate of the range of the fund and the dates when the fund will be distributed.

   d. The Trustee has not disclosed how much money SIPC saves by using his net investment method.

18. This information is vital for customers to know and yet it has all been concealed from customers and the public.

**THE TRUSTEE AND B&H HAVE A CONFLICT OF INTEREST**

19. This Court has a fundamental obligation to monitor the integrity of proceedings before it. *See In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (B. E.D. Cal. 1990).

20. The Trustee owes a fiduciary duty to Customers. *See In re Adler, Coleman Clearing Corp.*, 1998 Bankr. LEXIS 1076 (B. S.D.N.Y. Aug. 25, 1998) ("The parties agree that a SIPA trustee owes a fiduciary duty to the customers and creditors of a liquidating broker dealer

akin to the fiduciary duty a bankruptcy trustee owes a debtor's estate and creditors"); *Germain v. The Connecticut National Bank,* 988 F. 2d 1323, 1330 n. 8 (2d Cir. 1993). A fiduciary duty is the highest duty imposed by law. *See Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1423 (N.D. Tex. 1996); *see also Enzo Biochem, Inc. v. Johnson & Johnson,* 1992 U.S. Dist. LEXIS 15723, at *29 (S.D.N.Y. Oct. 15, 1992).

21. The disinterestedness of a trustee's counsel is "so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned." *In re Vebeliunas,* 231 B.R. 181 (B. S.D.N.Y. 1999), *citing In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978). A "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of a trustee. *In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006) (affirming bankruptcy court's removal of Chapter 7 trustee).

22. The attorney for a trustee must be "disinterested," meaning that the attorney does not have an interest materially adverse to a party in interest in the bankruptcy. *See In re Marvel Entertainment Group, Inc.,* 140 F. 3d 463, 476 (3d Cir. 1998); Collier Bankruptcy Manual § 101.13 ("professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration."); *In re Crivello,* 134 F. 3d 831, 835 (7th Cir. 1998)*; In re Cook,* 223 B.R. 782, 798 (10th Cir. BAP 1998); *In re BH & P, Inc.,* 119 B.R. 35, 42 (D.N.J. 1990); *In re Leslie Fay Cos.,* 175 B.R. 525, 532 (B. S.D.N.Y. 1994) (counsel removed from all new matters in case where counsel was investigating financial irregularities of debtor and did not disclose relationships with directors who were targets of investigation).

23. Aside from the disinterestedness standard in bankruptcy, under the Rules of Professional Conduct, an attorney cannot represent adverse interests. *See* Rule 1.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.7(a). An attorney must avoid even the "appearance of a conflict" pursuant to § 327(a) of the Bankruptcy Code. *See In re Hot Tin Roof,* 205 B.R. 1000, 1003 (1st Cir BAP 1997). Here, B&H represents the Trustee who has a fiduciary duty to Customers. Yet, B&H is deliberately acting to delay and frustrate the payment of Customer claims, even to the point of misrepresenting the law to destitute Customers who cannot afford to retain their own counsel. Such misrepresentation is grounds for denial of fees. *See In re Mercury*, 122 Fed. Appx. 528 (2d Cir. 2004) (affirming denial of compensation to firm that acted as counsel for debtors and counsel for trustee, where the attorneys acted in the interest of the trustee instead of debtors and incorrectly advised debtors regarding their rights to convert Chapter 7 filing to Chapter 11 filing). It also violates B&H's ethical obligations. *See* Rule 4.1 of the New York Rules of Professional Conduct, 22 N.Y.C. R.R. § 1200.32 ("In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.")

24. The Trustee and B&H are far from "disinterested." As they have demonstrated repeatedly in this proceeding, they have a conflict of interest as a result of which they are barred from receiving any compensation under established precedents and principles of professional conduct. *See In re Angelika Films 57th, Inc.*, 246 B.R. 176 (S.D.N.Y. 2000) (affirming bankruptcy court's denial **in its entirety** of fee application of debtor's counsel where counsel represented debtor's principal in other matters and took actions in the bankruptcy that "placed the interests of the Debtor's principal. . . over those of the Debtor."). They thus should not receive any compensation.

25. It is well-recognized that a trustee and his counsel are not entitled to the award of any fees where they are not disinterested and where they act to favor the debtor's directors over the debtor's creditors. *See In re Angelika Films 57th Inc.,* 227 B.R. 29 (B. S.D.N.Y 1998) (fees must be denied where professionals have interest or relationship that could "even faintly color" the independence and impartiality required by the Bankruptcy Code); *In re Balco Equities Ltd.,* 345 B.R. 87 (B. S.D.N.Y. 2006) (debtor's law firm required to disgorge all fees for lack of disinterestedness).

## CONCLUSION

For the foregoing reasons, Objectors ask the Court to set a date for an evidentiary hearing at which they can prove the objections set forth herein. The Trustee and B&H are disabled from serving because, as they have demonstrated repeatedly in the first 21 months of their service, they have a fundamental conflict of interest and are working solely to enrich SIPC at the expense of the customers to whom they owe a fiduciary duty.

September 2, 2010

                BECKER & POLIAKOFF LLP

                By: /s/ Helen Davis Chaitman

                45 Broadway
                New York, NY 10006
                (212) 599-3322
                *Attorneys for Diane and Roger Peskin,*
                *Maureen Ebel, and several hundred other*
                *customers*