SONNENSCHEIN NATH & ROSENTHAL LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
cneville@sonnenschein.com

*Attorneys for Maurice S. Sage Foundation Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff,<br><br>         v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Maurice S. Sage Foundation Inc. hereby objects to the Notice of Trustee's Determination of Claim dated August 4, 2010 ("Determination Letter"), attached hereto as Exhibit A, as described herein.

**BACKGROUND**

1.  Maurice S. Sage Foundation Inc. opened up an account with Bernard L. Madoff Investment Securities LLC (Account No. 1SO549) (the "Maurice S. Sage Foundation Inc. Customer Account").[1] Each of the members of Maurice S. Sage Foundation Inc. is a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") as defined by the Securities Investor Protection Act ("SIPA").

---

[1] All personal information relating to the Maurice S. Sage Foundation Inc. Customer Account has been redacted for security reasons.

2. The Maurice S. Sage Foundation was set up in memory of Maurice Sage as a not for profit corporation for the sole purpose of making charitable donations. Copies of the corporate documentation and the documentation registering the foundation with the Charities Bureau of the NYS Department of Law are annexed hereto as Exhibit B.

3. From the creation of the Maurice S. Sage Foundation Inc. Customer Account, Maurice S. Sage Foundation Inc. received regular communications from Madoff, including monthly statements, trade confirmations, and quarterly portfolio management reports.

4. The final Madoff statement dated November 30, 2008 (the "Final Madoff Statement") for the Maurice S. Sage Foundation Inc. Customer Account shows that Maurice S. Sage Foundation Inc. owned securities with a market value of $792,674.43 in the Maurice S. Sage Foundation Inc. Customer Account. A copy of the Final Madoff Statement is annexed to the Maurice S. Sage Foundation Inc. Customer Claim (defined below).

5. On December 11, 2008, an action was commenced against Madoff by the Securities & Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA. *See* Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. § 78fff-1(a).

6. On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12].

7.     The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the Madoff Trustee "shall notify such claimant by mail of their determination that the claim is disallowed, in whole or in part, **and the reason therefor** . . . " *See* Order at 6 (emphasis added) [Dkt. No. 12].

8.     On or about June 18, 2009, Maurice S. Sage Foundation Inc. timely filed a claim for the Maurice S. Sage Foundation Inc. Customer Account for securities (the "Maurice S. Sage Foundation Inc. Customer Claim") based on the November 30, 2008 Final Madoff Statement in the amount of $792,674.43.  A copy of the Maurice S. Sage Foundation Inc. Customer Claim with the Final Madoff Statement is attached hereto as Exhibit C.

9.     On March 1, 2010, the Court issued a decision affirming the Trustee's net investment method for determining customer claims.  That decision has been appealed, and a final resolution on the issue is pending.

10.     On August 4, 2010, the Trustee sent Maurice S. Sage Foundation Inc. the Determination Letter rejecting the Maurice S. Sage Foundation Inc. Customer Claim and stating that Maurice S. Sage Foundation Inc. is not entitled to a payment because (a) no securities were purchased for the Maurice S. Sage Foundation Inc. Customer Account and (b) the Maurice S. Sage Foundation Inc. Customer Account does not have a positive net equity because no funds were deposited into the account based upon a transfer from another BLMIS account.

**GROUNDS FOR OBJECTION**

**I.     The Determination Letter Fails To Comply With The Court's Order.**

11.     The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  The Maurice S. Sage Foundation Inc. Customer Claim was evidenced by the Final Madoff Statement showing a value of

$792,674.43 and listing the securities purportedly purchased for the account, which reflects the "Debtor's books and records" and by which the Trustee is bound absent proof that the owner of the Maurice S. Sage Foundation Inc. Customer Account did not have a "legitimate expectation" that the balance on the Final Madoff Statement, confirmations, credit advices and portfolio management report represented its property. Moreover, the Sage family through various entities invested in BLMIS for decades and its accounts were held and managed in all respects as if the accounts held real securities, including the securities that the Sage family turned over to Bernard Madoff to manage.

## II. The Trustee Does Not Set Forth the Legal Basis for Disallowing the Claim in Full.

12. The Trustee failed to set forth a legal basis for the position he has taken for the calculation of the claim. *See* Determination Letter. The Determination Letter:

(a) does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b) is insufficient to rebut the prima facie validity of the Maurice S. Sage Foundation Inc. Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f);

(c) violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based, *see, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("an objection to a claim should . . . meet the [pleading] standards of an answer"); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

(d) includes an exhibit, which purportedly calculates the money deposited less subsequent withdrawals without any supporting documentation, that is completely unsubstantiated and incorrect; and to the extent that the Trustee's "reconciliation" differs from

the Maurice S. Sage Foundation Inc. Customer Claim, the Trustee should produce evidence

supporting his "reconciliation." The Trustee has not been able to produce complete

documentation of transactions in prior accounts or to establish a fraud in the BMIS operations

throughout the period when the Maurice S. Sage Foundation Inc. Account and the accounts from

which it received transfers were maintained. Accordingly, the trustee has not met his burden

with respect to this objection.

## III.    The Trustee Has Failed to Honor Customer Expectation.

13.    The Trustee has failed to fulfill the requirement that he honor the legitimate

expectations of a customer.

14.    The legislative history of SIPA makes clear that Congress' intent in enacting the

legislation was to protect the legitimate expectations of customers. Congressman Robert

Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance

available to customers and expedite the process, commented on the purpose of the legislation as

follows:

> Under present law, because securities belonging to customers
> may have been lost, improperly hypothecated, misappropriated,
> *never purchased* or even stolen, it is not always possible to
> provide to customers that which they expect to receive, that is,
> securities which they maintained in their brokerage account . . .
> By seeking to make customer accounts whole and returning them
> to customers in the form they existed on the filing date, the
> amendments . . . would satisfy the customers' legitimate
> expectations . . .

S. Rep. No. 95-763, at 2 (1978) (*emphasis added*).

> A customer generally expects to receive *what he believes* is in his
> account at the time the stockbroker ceases business. But because
> securities may have been lost, improperly hypothecated,
> misappropriated, *never purchased*, or even stolen, it is not always
> possible to provide to customers that which they expect to
> receive, that is, securities which they maintained in their
> brokerage account . . . By seeking to make customer accounts

> whole and returning them to customers in the form they existed
> on the filing date, the amendments . . . would satisfy customers'
> legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

15. The Securities Investor Protection Corporation ("SIPC"), charged with administering SIPA, acknowledged that it was bound by the statute and the rules to satisfy the reasonable expectations of customers even when the securities had never been purchased, in the brief it submitted to the Court of Appeals for the Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits of SIPA) even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on the reasonable and legitimate customer expectations frequently yields much greater customer protection than would be the case if the transaction reality, not the claimants expectations, were controlling, as this court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

16. Based on regular statements, confirmation reports and other communications received from Madoff, the Maurice S. Sage Foundation Inc., at all times reasonably believed and expected that Madoff executed such transactions and that the Maurice S. Sage Foundation Inc. Customer Account actually held such securities. Moreover, Maurice S. Sage Foundation Inc. had every reason to believe in the validity of the accounts based on, among other things, Bernard Madoff's position in the in the markets, and the SEC's failure to discover any fraud in the management of his business.

17.     The Trustee's position in the Madoff case is completely inconsistent with the purpose and goals of SIPA and the position that SIPC has taken unequivocally with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

## IV.    The Trustee's Definition of "Net Equity" is Inconsistent With SIPA and SIPA Rules, Practice and Pronouncement and Case Law Interpreting the Statute and Rules.

18.     The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the amount of the claim by appreciation in the Maurice S. Sage Foundation Inc. Customer Account or calculate the claim by counting only investment principal less withdrawals without regard to the securities reflected in the Final Madoff Statement. The Court's decision affirming the Trustee's net investment method has been appealed and a final resolution on the issue is pending, and thus, no legal basis for the method exists. The Trustee's calculation violates SIPA.

19.     15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). The Trustee calculates "net equity" by reducing the principal contributed to the account less any withdrawals or appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior statement delivered by Madoff to the customer. This is incorrect for the following reasons:

(a)     Notwithstanding the Court's determination, the Trustee's method of calculating the customer claim is inconsistent with the language of the statute. SIPA defines a customer's net equity claim as the value of the customer's "securities positions" in the customer's account, less any amount the customer owes the debtor, as of the date of the filing of the SIPA liquidation:

The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by –

(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . . ; minus

(B) any indebtedness of such customer to the debtor on the filing date . . .[2]

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)     Notwithstanding the Court's determination, the Trustee's method is inconsistent with the Rules promulgated under SIPA. The Series 500 Rules promulgated under SIPA by SIPC provide for the classification of claims for cash or securities in accordance with the written transaction confirmations sent by the broker-dealer to the customer. 17 C.F.R. § 300.500. Pursuant to the Rule, a customer has a claim for securities if the customer has received written confirmation that the securities have been purchased or sold for the account.

(c)     Notwithstanding the Court's determination, the Trustee's method is inconsistent with the legislative history of the statute. SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The Madoff statements and confirmations sent to Maurice S. Sage Foundation Inc. indicated that the account a list of blue chip securities. It makes no difference whether the securities were ever actually purchased.

---

[2] The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most often in the context of a customer having borrowed from the debtor on margin. *See, e.g.*, H.R. Rep. No. 95-746 at 21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker); *In re First St. Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D. Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock purchase was funded in part by borrowing on margin).

(d) The Trustee's formula is an improper and wholly inadequate measure of loss. The Maurice S. Sage Foundation Inc. partners deposited funds with Madoff with the expectation the amount would grow—the Maurice S. Sage Foundation Inc. Customer Account statements showed such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain. In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007), the Court declined to set aside an arbitration award that appeared to apply an expectancy measure of damages against a successor in a Ponzi scheme case and rejected the money in / money out formula as not reflecting the expectations of the parties. *Id.* The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered by Plaintiffs and the facts of this case. Plaintiffs gave $21 million to Gruttadauria, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a hope – indeed a reasonable expectation – that it would grow. Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs only the $21 million they originally invested less their subsequent withdrawals, is a wholly inadequate measure of damages. Had Gruttadauria invested Plaintiffs' money as requested, their funds would have likely grown immensely, especially considering that Plaintiffs invested primarily throughout the mid-1990s, which, had they hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id.* This applies precisely to the Maurice S. Sage Foundation Inc. Customer Claim.

(e) Notwithstanding the Court's determination, the Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation

proceedings. For example, in the New Times Securities Services, Inc. ("New Times") SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if broker-dealer customers have been led to believe that "real existing" securities had been purchased for their accounts, then those customers are entitled to the full value of their securities positions as of the filing date, even if that value represents a substantial increase from the purported purchase price of the securities and even if the securities had never been purchased. Harbeck testified as follows:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities . . . Even if they're not there.

> Court: Even if they're not there.

> Harbeck: Correct.

> Court: In other words, if the money was diverted, converted –

> Harbeck: And the securities were never purchased.

> Court. Okay.

> Harbeck: And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-39, *In re New Times Sec. Servs., Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000).

Moreover, SIPC faced very similar circumstances in the New Times liquidation and took a very different position than it is taking in the Madoff case in support of the Trustee. There, the New Times Trustee's position on "net equity" was in full accord with SIPA, and thus directly contrary to the Trustee's position in this case. Specifically, with respect to any claims that were based on confirmations and account statements reflecting securities positions in "real" securities that could have been purchased (i.e., securities that actually existed on the public market and whose valuations were objectively and publicly verifiable by the customers), the New Times

Trustee allowed all such net equity claims to the full extent of the filing date valuations of those securities, even though none of the securities identified in those records had ever, in fact, been purchased by the broker-dealer.[3]

(f)     The Trustee's determination and the Court's determination are inconsistent with the case law.  The Second Circuit's discussion of SIPC's claims processing in *New Times,* the only case in this jurisdiction dealing with the issue in the Madoff case, further indicates that, with respect to customers who thought they were invested in listed securities, SIPC properly paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they were investing in mutual funds that in reality existed were treated much more favorably. Although they were not actually invested in those real funds – because Goren never executed the transactions – the information that these claimants received on their account statements mirrored what would have happened had the given transaction been executed. As a result, the Trustee deemed those customers' claims to be "securities claims" eligible to receive up to $500,000 in SIPC advances. The Trustee indicates that this disparate treatment was justified because he could purchase real, existing securities to satisfy such securities claims. Furthermore, the Trustee notes that, if they were checking on their mutual funds, the "securities claimants," . . . could have confirmed the existence of those funds and tracked the funds' performance against Goren's account statements.

---

[3] As with Madoff Securities and Bernard Madoff, New Times and its principal, William Goren, defrauded scores of investors by providing them with confirmations and account statements reflecting purported securities investments made on their behalf when, in fact, no such investments had been made and their money had, instead, been misappropriated for other purposes.  Two of the investment opportunities Goren purported to offer were: (1) money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real Securities").  *See In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*").  Goren's was "a classic Ponzi scheme," *id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased.  Consistent with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities positions as of the date of the liquidation filing.  When challenged by "Fictitious New Age Funds" customers who had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent concurrence of the SEC) vigorously defended their approach in court.

*In re New Times Sec. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at 23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> [R]easonable and legitimate claimant expectations on the filing date are controlling even where inconsistent with transactional reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits imposed by SIPA), even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on reasonable and legitimate claimant expectations frequently yields much greater 'customer' protection than would be the case if transactional reality, not claimant expectations, were controlling, as this Court's earlier opinion in this liquidation well illustrates.

Maurice S. Sage Foundation Inc. is in the same position as those investors in the *New Times* case who received confirmations and statements reflecting real securities. The statements received reflected positions in various securities just as the statement in *New Times* reflected positions in securities that were never purchased.

(g)     The Trustee's position in the Madoff case is contradicted, not only by SIPC's prior treatment of customers in the *New Times* case, but also by a statement that SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang acknowledged that a Madoff customer is entitled to the securities in their account:

> Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each. So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html. This is a statement that Ms. Wang has not disavowed.

(h)     The Trustee's methodology also conflicts with other federal laws. For example, Rev. Proc.2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually. Yet the Trustee's position is that the income earned by customers on their investments is not their money. In addition, some customers were required to take distribution from their retirement accounts. Yet the Trustee is deducting from their customer claim the mandatory withdrawals that the customers were required by law to take.

20.     In sum, the Trustee has created his own definition of "net equity" that is not based on statutes, prior practice or case law. The procedure is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying SIPC insurance to the thousands of Madoff investors who, like individual partners of Maurice S. Sage Foundation Inc., have depended upon their Madoff investments for their current and future living expenses.

21.     Because of his refusal to comply with SIPA's mandate that he "promptly" satisfy customer claims based on their last statements, 15 U.S.C. § 78fff- 3(a) and 4(c), the Trustee employs a vast team of forensic accountants to pore through decades of records to determine each customer's net investment before SIPC pays any amount to a customer. Clearly, this is inconsistent with the statutory scheme and the legislative intent. Maurice S. Sage Foundation Inc.'s "securities position" is readily ascertainable from the Final Madoff Statement.

**V.     The Trustee Has No Legal Basis For Reducing The Claim.**

22.     The Trustee's action in reducing the amount shown on the Maurice S. Sage Foundation Inc. Customer Claim by any prior gains or withdrawals reflected on the Final Madoff Statement or prior statements is an attempt to avoid such gains without alleging any

grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. Any such disallowance is improper and unjustified, and the Determination Letter should be stricken on that ground alone. *See* Fed. R. Bankr. P. 7001(1) & 7008. Moreover, the disallowance or reduction of transfer investments from another BMIS account has no legal basis. Maurice S. Sage Foundation Inc. took such transfers for value and without notice of impropriety or fraud.

**VI.    The Trustee's Reductions Are Barred By The Statue Of Limitations.**

23.     The Trustee's action in reducing the amount shown on the Maurice S. Sage Foundation Inc. Customer Claim by gains or withdrawals from the account and any prior BMIS account from which funds were transferred is an attempt to avoid such gains and withdrawals without alleging any grounds for avoidance or proving that such gains are avoidable under the state law avoidance provisions or other theories of law. The avoidance of those gains and withdrawals have been taken well beyond any limitations period for avoidance of a claim under either state or federal law.

**VII.    The Trustee's Denial Is Inconsistent With SIPA.**

24.     SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim, and (b) customers have an unsecured claim against customer property for the balance of their claims which is paid pro rata with other customers. *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities"). As evidenced by the Final Madoff Statement, Maurice S. Sage Foundation Inc. has a valid claim in

the amount of $792,674.43. Each Maurice S. Sage Foundation Inc. partner is entitled to an advance of $500,000 and claims against customer property for the remainder.

**VIII.  The Trustee Has Not Met His Burden of Proving the Net Equity Calculation.**

25.     The Determination Letter purports to calculate Maurice S. Sage Foundation Inc.'s "net equity" on the basis of withdrawal transactions for which Maurice S. Sage Foundation Inc. has incomplete records.  It is unreasonable to anticipate that customers would have access to and/or maintain all account records given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS; and (c) the fact that historical records such as those in question are usually available from financial institutions, including broker-dealers, upon request. Under these circumstances, the Trustee should be required to prove the alleged withdrawal transactions by furnishing the appropriate records to Maurice S. Sage Foundation Inc. and, absent such records, such transactions should be deleted from the calculation of Maurice S. Sage Foundation Inc.'s "net equity."  Likewise, the Trustee should be required to prove that the deposit transactions are completely listed by furnishing the appropriate records to Maurice S. Sage Foundation Inc..

26.     The Trustee has not proven that the fraud of BLMIS began before the early 1990's or that all accounts were fraudulently managed from the early 1990's until the broader fraud was revealed.  In 1992, Bernard Madoff provided information to t6he SEC indicating that he was executing actual trades at that time and the SEC verified that the trades were real at that time. Without evidence of a fraud before the early 1990's there is no justification for Trustee to reduce the balance in an account that was established earlier or to reduce a transfer from an account that was established earlier.

27.     Finally, the Trustee's method automatically avoids all transactions in excess of the customer's deposited principal without permitting the customer the opportunity to raise defenses as to each transaaction.

## IX.    Maurice S. Sage Foundation Inc. Is Entitled To Interest On Its Investments.

28.     In the event that the Court should determine that customer claims should not be allowed in the amount of the Final Madoff Statement, then in the alternative, Maurice S. Sage Foundation Inc. is entitled to recover interest or appreciation on its investments based upon the following.

(i)     Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest.  *See, e.g.,* N.Y. C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*.  Accordingly, the Maurice S. Sage Foundation Inc. Customer Claim should be recalculated by adding interest to all funds deposited.

(ii)     Under New York law, which is applicable here, customers are entitled to any returns Madoff earned on the deposited funds under principles of unjust enrichment. Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff on the customer's deposits.  *See, e.g.*, *Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

(iii)     Maurice S. Sage Foundation Inc. is entitled to interest on its investment under federal securities laws.  In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the different measures of recovery of "actual damages" for fraud, primarily including rescission and restitution.  The *Randall* Court concluded that Congress intended to

deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted. *See id*. at 664 (citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). The *Randall* Court continued by holding that:

> This deterrent purpose is ill-served by a too rigid insistence on limiting plaintiffs to recovery of their "net economic loss."

*Id.* at 664 (citing *Salcer v. Envicon Equities Corp*., 744 F.2d 935, 940 (2d Cir. 1984)).

(iv)     Maurice S. Sage Foundation Inc. is entitled to an adjustment from the initial deposit in the account to reflect present day values.

## RESERVATION OF RIGHTS

29.     Maurice S. Sage Foundation Inc. reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Maurice S. Sage Foundation Inc.'s right to object on any additional grounds.

30.     Maurice S. Sage Foundation Inc. reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

31.     Maurice S. Sage Foundation Inc. reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

32.     Maurice S. Sage Foundation Inc. incorporates by reference all reservations of rights set forth in the Maurice S. Sage Foundation Inc. Customer Claim.

## RELIEF REQUESTED

For the reasons stated herein, the Maurice S. Sage Foundation Inc. Customer Claim should be allowed in its entirety in the amount of $792,674.43, which is the amount stated on the Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, this Court should direct SIPC to immediately replace $500,000 of the securities in the Maurice S. Sage Foundation Inc. Customer Account based upon the values reflected on the Final Madoff Statement and/or advance Maurice S. Sage Foundation Inc. partners $500,000 from the SIPC fund.

For the reasons stated herein, the Determination Letter should be stricken.

Maurice S. Sage Foundation Inc. requests such other relief as may be just and equitable.

Dated September 2, 2010                          SONNENSCHEIN NATH & ROSENTHAL LLP

                                                 By:   /s/ Carole Neville
                                                       Carole Neville
                                                       1221 Avenue of the Americas
                                                       New York, New York 10020
                                                       Telephone:  (212) 768-6700
                                                       Facsimile:  (212) 768-6800

                                                 *Attorneys for Maurice S. Sage Foundation Inc.*

## CERTIFICATE OF SERVICE

I, Carole Neville, hereby certify that on September 2, 2010, I caused a true and correct copy of the foregoing **Objection to Trustee's Determination of Claim** on behalf of Maurice S. Sage Foundation Inc. to be filed electronically with the Court and served upon the parties in this action who receive electronic service through CM/ECF, and served by hand upon:

> David J. Sheehan, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY 10111

Dated: September 2, 2010

  /s/ Carole Neville
Carole Neville

**EXHIBIT A**



BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

**DECEMBER 11, 2008[1]**

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

August 4, 2010

MAURICE S. SAGE FOUNDATION INC.
C/O MALCOLM SAGE


Dear MAURICE S. SAGE FOUNDATION INC.:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1S0549 designated as Claim Number 10205:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $0.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is the same as the amount that was deposited with BLMIS for the purchase of securities (total of $0.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.



As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since the amount of money you withdrew from your account at BLMIS is the same as the amount that was deposited with BLMIS, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after August 4, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

2



**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

CC: CAROLE NEVILLE, ESQ.
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 AVENUE OF THE AMERICAS, 25TH FLOOR
NEW YORK, NY 10020



| Table 1 | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 4/1/2008 | TRANS FROM 1S019730 | $760,855.51 | $0.00 |
| **Total Deposits:** | | $760,855.51 | $0.00 |
| | | | |
| **WITHDRAWALS** | | | |
| **Total Withdrawals:** | | $0.00 | $0.00 |
| | | | |
| **Total deposits less withdrawals:** | | $760,855.51 | $0.00 |

4

# EXHIBIT B

# CSC 45 *f*941130000 566

# CERTIFICATE OF INCORPORATION

## OF

## MAURICE S. SAGE FOUNDATION, INC.

## UNDER SECTION 402 OF THE

## NOT-FOR-PROFIT CORPORATION LAW

The undersigned, a natural person over the age of eighteen, desiring to form a corporation (the "Corporation") pursuant to the provisions of the Not-for-Profit Corporation Law of the State of New York, does hereby certify:

1.  The name of the Corporation is the Maurice S. Sage Foundation, Inc.

2.  The Corporation is a corporation as defined in subparagraph (a)(5) of Section 102 of the Not-for-Profit Corporation Law and shall be a Type B corporation under Section 201 of the Not-for-Profit Corporation Law.

3.  The Corporation is formed for the following purposes:

    (a)  To perpetuate the memory and spirit of Maurice S. Sage by the encouragement and promotion of education through voluntary grants, by scholarships or otherwise, to individuals, institutions and organizations, and by the encouragement and promotion of scientific research through grants to individuals, institutions and organizations.. The Corporation shall have the power to acquire real and personal property by purchase, gift, grant, devise or bequest, and to

*1*

P.02

NOV-30-1994 09:56 FROM  G H B W S & W  NEW YORK  TO
[ RECEIVED 11/30/94 14:25 1994 AT SI8I321318         PAGE 2 (PRINTED PAGE  2/ )

hold, own, accept and dispose of the property for the particular objects of the Corporation; and

(b)  To do any other act or thing incidental to or connected with the above purposes or in their advancement, but not for the pecuniary profit or financial gain of its members, directors or officers except as permitted under Article 5 of the Not-for-Profit Corporation Law.

4.  In addition to the foregoing purposes, the Corporation shall have all the general powers enumerated in Section 202 of the Not-for-Profit Corporation Law together with the power to solicit grants and contributions for any corporate purpose and the power to maintain a fund or funds of real or personal property for any corporate purposes.  The Corporation shall have the right to exercise all other powers that are, or hereafter may be, conferred by law upon a corporation organized for the above purposes or incidental to the conferred powers.

5.  The Corporation shall not, directly or indirectly, engage in or include among its purposes any of the activities mentioned in subparagraphs (b)-(v) of Section 404 of the Not-for-Profit Corporation Law.

6.  Notwithstanding any other provision of this Certificate of Incorporation, the Corporation is organized exclusively for charitable purposes, and intends at all times to qualify and remain qualified as exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as it may be amended (the "Code") and, in connection therewith:

(a)  No part of the income of the Corporation shall inure to the benefit of any member, trustee, director, officer of the Corporation, or any private individual (except that reasonable compensation may be paid for services rendered to or for the Corporation affecting one or more of its purposes), and no member trustee, officer of the Corporation or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the Corporation.

11/28/94; 9:10am
99998/1/57597.1

2

(b)   No part of the activities of the Corporation shall be devoted to the carrying on of propaganda or otherwise attempting to influence legislation, except to the extent permitted by the Code whether pursuant to an election under Section 501(h) or otherwise, and no part of the activities of the Corporation shall be devoted to participating or intervening in (including the publication or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office.

(c)   In the event of dissolution, all of the remaining assets and property of the Corporation shall, after necessary expenses thereof, be distributed to such organizations as shall qualify under Section 501(c)(3) of the Code subject to an order of a Justice of the Supreme Court of the State of New York.

(d)   The Corporation shall not engage in or include among its purposes any activities not permitted to be carried on by a corporation exempt from federal income taxation under Section 501(c)(3) of the Code, as it may be amended.

7.   In every taxable year in which the Corporation is a private foundation as defined in Section 509 of the Code:

(a) The Corporation shall distribute such amounts for each taxable year at such time and in such manner as not to subject the Corporation to tax on undistributed income under Section 4942 of the Code.

(b) The Corporation shall not engage in any act of self-dealing which is subject to tax under Section 4941 of the Code.

(c) The Corporation shall not retain any excess business holdings which are subject to tax under Section 4943 of the Code.

(d) The Corporation shall not make any investments in such manner as to subject the Corporation to tax under Section 4944 of the Code.

(e)  The Corporation shall not make any taxable expenditures which are subject to tax under Section 4945 of the Code.

8.  The principal office of the Corporation shall be located in the County of New York, State of New York.

9.  The names and addresses of the initial directors until the first annual meeting, each of whom is of full age, are as follows:

| Name | Address |
| --- | --- |
| Malcolm Sage | REDACTED |
| Martin Sage | REDACTED |
| Ann Sage Passer | REDACTED |
| Lillian Sage | REDACTED |

10.  The Secretary of State of the State of New York is hereby designated as agent of the Corporation upon whom process against it may be served.  The post office address to which the Secretary of State shall mail a copy of any process against the Corporation served upon him is as follows:

Maurice S. Sage Foundation,
Inc. c/o Gordon Altman
Butowsky Weitzen Shalov & Wein
114 West 47th Street
New York, New York  10036

11.  Nothing contained in this certificate shall authorize or empower the Corporation to perform or engage in any act or practice prohibited by Section 340 of the General Business Law or other anti-monopoly statute of the State of New York.

11/28/94; 9:10am
99998/1/57597.1

4

12.   This Certificate of Incorporation may be amended
or changed in the manner provided by Article 8 of the
Not-for-Profit Corporation Law.

IN WITNESS WHEREOF this certificate has been signed and
the statements made herein affirmed as true under the
penalties of perjury this 29th day of November, 1994.

Malcolm Sage,
Incorporator

# REDACTED

11/23/94; 9:29am
99998/1/87397.1

5

# CSC 45

941130000 SW

CERTIFICATE OF INCORPORATION

OF

MAURICE S. SAGE FOUNDATION, INC.

Section 402 of the Not for Profit Corporation Law

I C L

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED NOV 3 0 1994
TAX $
BY: TSC

Filer: Tracey Ann Carter
Corporation Service Company
4 Central Avenue
Albany, NY 12210

NY

**BILLED**

941130000 603

# State of New York
# Department of State } ss.:

*I hereby certify that I have compared the annexed copy with the original document filed by the Department of State and that the same is a correct transcript of said original.*

*Witness my hand and seal of the Department of State on* NOV 3 0 1994

*Secretary of State*

DOS-200 (12/87)



STATE OF NEW YORK
DEPARTMENT OF LAW

DENNIS C. VACCO
Attorney General

JOHN H. CARLEY
Deputy Attorney General

416-8430
416-8431

SAGE MAURICE S FDN INC



FILE NO: 055776
YEAR ENDING: DECEMBER
TYPE: PRIVATE CORPORATION

**REDACTED**   11/01/95

Dear Sir/Madam:

Your organization is now registered with the Charities
Bureau of the NYS Department of Law as required under section
8-1.4 of the Estates Powers and Trusts Law.

YOUR ORGANIZATION HAS BEEN ASSIGNED THE FILE NUMBER LISTED
ABOVE. PLEASE WRITE THIS FILE NUMBER ON ALL FUTURE
CORRESPONDENCE, ANNUAL REPORTS AND CHECKS SUBMITTED TO THIS
OFFICE.

YOUR REGISTRATION FILE HAS BEEN OPENED IN THE NAME AND
ADDRESS LISTED ABOVE. If any of the information listed
above is incorrect in any way, please send us a copy of this
letter and note the corrections.

An annual report and filing fee are due from your
organization within six months after the end of its fiscal
year. The enclosed materials contain an explanation of the
reporting requirements to which you are subject. The materials
include the filing fee schedule; all checks should be made
payable to the NYS Department of Law.

PLEASE NOTE THAT THIS LETTER IS SENT TO YOU FOR
INFORMATIONAL PURPOSES ONLY. IF ALL INFORMATION LISTED IN
THE HEADING IS CORRECT, NO RESPONSE TO THIS LETTER IS
REQUIRED.

Very truly yours,

REGISTRATION SECTION
CHARITIES BUREAU

Division of Public Advocacy - Charities Bureau
120 Broadway, New York, N.Y. 10271-0332 - Phone (212) 416-8400 - Fax (212) 416-8393 - NOT FOR SERVICE OF PAPERS

**EXHIBIT C**



**CUSTOMER CLAIM**

Claim Number_____

~~Date Received~~**RECEIVED**_____

JUN 18 2009

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: (212) 768-6889 _____

HOME: _____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number: 1-S0549-3 & 1-S0549-4

Maurice S. Sage Foundation Inc.
c/o Malcolm Sage
███████████████
███████████████

(If incorrect, please change)

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1. Claim for money balances as of **December 11, 2008_:**
   a. The Broker owes me a Credit (Cr.) Balance of      $_____
   b. I owe the Broker a Debit (Dr.) Balance of           $_____

c.     If you wish to repay the Debit Balance,

         please insert the amount you wish to repay and

         attach a check payable to "Irving H. Picard, Esq.,

         Trustee for Bernard L. Madoff Investment Securities LLC."

         If you wish to make a payment, **it must be enclosed**

         with this claim form.                          $_____

d.     If balance is zero, insert "None."       _____NONE_____

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.     If yes to either, please list below:

Number **of** Shares or
Face Amount of Bonds

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| SEE STATEMENT DATED NOVEMBER 30, 2008 | | ✓ | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|-----|-----|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.    Have you or any member of your family
      ever filed a claim under the Securities
      Investor Protection Act of 1970? if
      so, give name of that broker.                              _____ ✓ _____

      Please list the full name and address of anyone assisting you in the
      preparation of this claim form:  Carole Neville, Sonnenschein Nath &
      Rosenthal LLP, 1221 Avenue of the Americas, 25th Floor, New York, NY 10020 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.


**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**


**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.** *

Date _____ 6/17/09 _____   Signature _____
                                            Martin Sage, President

Date _____   Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

_____

* This form includes and incorporates in full the attached Addendum. Customer
reserves the right to amend the claim for any purpose, including without
limitation, to add interest, costs and other losses associated with this account.

10290457

# ADDENDUM

**Customer:**   Maurice S. Sage Foundation Inc.
          c/o Malcolm Sage

**Address:**    **REDACTED**

**Account #:**   1-S0549-3
          1-S0549-4

November 30, 2008 Statement – Closing balance net equity $792,674.43

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

MAURICE S SAGE FOUNDATION INC
C/O LILLIAN SAGE

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 1 |

YOUR TAX PAYER IDENTIFICATION NUMBER ******

YOUR ACCOUNT NUMBER 1-S0549-3-0

REDACTED



| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 36,386.34 |
| 11/12 | 714 | | 572 | WELLS FARGO & CO NEW | 29.800 | 21,305.20 | |
| 11/12 | 510 | | 1074 | HEWLETT PACKARD CO | 34.900 | 17,819.00 | |
| 11/12 | 442 | | 4898 | WAL-MART STORES INC | 55.830 | 24,693.86 | |
| 11/12 | 289 | | 5400 | INTERNATIONAL BUSINESS MACHS | 87.270 | 25,232.03 | |
| 11/12 | 1,071 | | 9224 | EXXON MOBIL CORP | 72.880 | 78,096.48 | |
| 11/12 | 1,173 | | 9726 | INTEL CORP | 14.510 | 17,066.23 | |
| 11/12 | 561 | | 14052 | JOHNSON & JOHNSON | 59.580 | 33,446.38 | |
| 11/12 | 765 | | 18377 | J.P. MORGAN CHASE & CO | 38.530 | 29,505.45 | |
| 11/12 | 408 | | 22703 | COCA COLA CO | 44.660 | 18,237.28 | |
| 11/12 | 238 | | 27029 | MCDONALDS CORP | 55.370 | 13,187.06 | |
| 11/12 | 442 | | 31355 | MERCK & CO | 28.550 | 12,636.10 | |
| 11/12 | 1,615 | | 35681 | MICROSOFT CORP | 21.810 | 35,287.15 | |
| 11/12 | 816 | | 40007 | ORACLE CORPORATION | 17.300 | 14,168.80 | |
| 11/12 | 323 | | 52985 | PEPSICO INC | 56.410 | 18,220.43 | |
| 11/12 | 187 | | 53487 | APPLE INC | 100.780 | 18,852.86 | |
| 11/12 | 1,377 | | 57311 | PFIZER INC | 16.940 | 23,381.38 | |
| 11/12 | 323 | | 57813 | ABBOTT LABORATORIES | 54.610 | 17,651.03 | |
| 11/12 | 612 | | 61537 | PROCTER & GAMBLE CO | 64.080 | 39,240.96 | |
| 11/12 | 221 | | 62139 | AMGEN INC | 59.160 | 13,082.36 | |
| 11/12 | 425 | | 65963 | PHILLIP MORRIS INTERNATIONAL | 43.640 | 18,547.00 | |
| 11/12 | 1,020 | | 66465 | BANK OF AMERICA | 21.590 | 22,061.80 | |
| 11/12 | 340 | | 70289 | QUALCOMM INC | 33.770 | 11,494.80 | |
| 11/12 | 1,105 | | 70791 | CITI GROUP INC | 12.510 | 13,867.55 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**MADF BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair. London W1J 8DT
Tel 020 7493 6222

REDACTED

MAURICE S LILLIAN SAGE FOUNDATION INC

C/C LILLIAN SAGE

YOUR ACCOUNT NUMBER 1-S0549-3-0

| DATE | BOUGHT RECEIVED ON LONG | SOLD DELIVERED ON SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 255 | | 74615 | SCHLUMBERGER LTD | 49.480 | 12,627.40 | |
| 11/12 | 612 | | 75117 | COMCAST CORP | 16.510 | 10,123.12 | |
| | | | | CL A | | | |
| 11/12 | 1,207 | | 78941 | AT&T INC | 27 | 32,637.00 | |
| 11/12 | 306 | | 79443 | CONOCOPHILLIPS | 52.510 | 16,080.06 | |
| 11/12 | 204 | | 83267 | UNITED PARCEL SVC INC | 52.040 | 10,624.16 | |
| | | | | CLASS B | | | |
| 11/12 | 1,241 | | 83769 | CISCO SYSTEMS INC | 16.730 | 20,810.93 | |
| 11/12 | 357 | | 87593 | U S BANCORP | 29.530 | 10,556.21 | |
| 11/12 | 425 | | 88095 | CHEVRON CORP | 73.430 | 31,224.75 | |
| 11/12 | 204 | | 91919 | UNITED TECHNOLOGIES CORP | 53.160 | 10,852.64 | |
| 11/12 | 2,159 | | 92421 | GENERAL ELECTRIC CO | 19.630 | 42,467.17 | |
| 11/12 | 578 | | 96245 | VERIZON COMMUNICATIONS | 30.410 | 17,599.98 | |
| 11/12 | 51 | | 96747 | GOOGLE | 337.400 | 17,209.40 | |
| 11/12 | | 750,000 | 23181 | U S TREASURY BILL | 99.936 | | 749,520.00 |
| | | | | DUE 2/12/2009 2/12/2009 | | | |
| 11/12 | | | | FIDELITY SPARTAN | DIV | | 29.95 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/12/08 | | | |
| 11/12 | | 28,063 | 18282 | FIDELITY SPARTAN | 1 | | 28,063.00 |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/12 | 4,288 | | 27650 | FIDELITY SPARTAN | 1 | 4,288.00 | |
| | | | | U S TREASURY MONEY MARKET | | | |
| 11/15 | | | | FIDELITY SPARTAN | DIV | | .53 |
| | | | | U S TREASURY MONEY MARKET | | | |
| | | | | DIV 11/19/08 | | | |
| | | | | CONTINUED ON PAGE 3 | | | |

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair. London W1J 8DT
Tel 020 7493 6222

Q

MAURICE S SAGE FOUNDATION INC

c/o LILLIAN SAGE

REDACTED

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 11/30/08 | ****** | 3 |

| YOUR ACCOUNT NUMBER |
|---|
| 1-50549-3-0 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/15 | | 4,288 | 53142 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 4,288.00 |
| 11/19 | 50,000 | | 57663 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 49,963.00 | |
| 11/19 | 5,258 | | 62179 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 5,258.00 | |
| | | | | NEW BALANCE | | 83,884.87 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 1,207 | | | AT&T INC | 28.560 | | |
| | 323 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 221 | | | AMGEN INC | 55.540 | | |
| | 187 | | | APPLE INC | 92.670 | | |
| | 1,020 | | | BANK OF AMERICA | 16.250 | | |
| | 425 | | | CHEVRON CORP | 79.010 | | |
| | 1,241 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 1,105 | | | CITI GROUP INC | 8.290 | | |
| | 408 | | | COCA COLA CO | 46.870 | | |
| | 612 | | | COMCAST CORP | 17.340 | | |
| | | | | CL A | | | |
| | 306 | | | CONOCOPHILIPS | 52.520 | | |
| | 1,071 | | | EXXON MOBIL CORP | 80.150 | | |
| | 2,159 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
MADF INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

MAURICE S SAGE FOUNDATION INC

C/O LILLIAN SAGE



REDACTED

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER |
|---|---|
| 11/30/08 | ****** |

| YOUR ACCOUNT NUMBER |
|---|
| 1-S0549-3-0 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 51 | | | GOOGLE | 292.960 | | |
| | 510 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 1,173 | | | INTEL CORP | 13.800 | | |
| | 289 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 765 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 561 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 238 | | | MCDONALDS CORP | 58.750 | | |
| | 442 | | | MERCK & CO | 26.720 | | |
| | 1,615 | | | MICROSOFT CORP | 20.220 | | |
| | 816 | | | ORACLE CORPORATION | 16.090 | | |
| | 323 | | | PEPSICO INC | 56.700 | | |
| | 1,377 | | | PFIZER INC | 16.430 | | |
| | 425 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 612 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 340 | | | QUALCOMM INC | 33.570 | | |
| | 255 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 5,258 | | | FIDELITY SPARTAN | 1 | | |
| | | | | U S TREASURY MONEY MARKET | | | |
| | 357 | | | U S BANCORP | 26.980 | | |
| | 204 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | | | | CLASS B | | | |
| | 50,000 | | | U S TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009    3/26/2009 | | | |
| | 204 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE  5 | | | |

CONTINUED ON PAGE 5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

MAURICE S SAGE FOUNDATION INC

C/O LILLIAN SAGE

REDACTED

| PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|
| 11/30/08 | ****** | 5 |

YOUR ACCOUNT NUMBER  1-50549-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
|  | 578 |  |  | VERIZON COMMUNICATIONS | 32.650 |  |  |
|  | 442 |  |  | WAL-MART STORES INC | 55.880 |  |  |
|  | 714 |  |  | WELLS FARGO & CO NEW | 28.890 |  |  |
|  |  |  |  | MARKET VALUE OF SECURITIES | | | |
|  |  |  |  | LONG   804,234.43 | | | |
|  |  |  |  | SHORT | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

MADF

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

REDACTED

MAURICE S SAGE FOUNDATION INC

C/O LILLIAN SAGE

| PAGE | 6 |
| PERIOD ENDING | 11/30/08 |
| YOUR TAX PAYER IDENTIFICATION NUMBER | ****** |
| YOUR ACCOUNT NUMBER | 1-S0549-3-0 |

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 2,211.58 |
| | | | | GROSS PROCEEDS FROM SALES | | | 2,985,536.40 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

# BERNARD L. MADOFF
### INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

REDACTED

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

PAGE 1

MAURICE S SAGE FOUNDATION INC
C/O LILLIAN SAGE

| PERIOD ENDING | YOUR ACCOUNT NUMBER |
|---|---|
| 11/30/08 | 1-S0549-4-0 |

YOUR TAX PAYER IDENTIFICATION NUMBER ******

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 36,387.00 |
| 11/12 | 17 | | 44333 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 26,843.00 |
| 11/12 | | 17 | 48659 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 30,277.00 | |
| 11/19 | 17 | | 34763 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 44,183.00 |
| 11/19 | | 17 | 39088 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 51,017.00 | |
| 11/19 | 17 | | 43413 | S & P 100 INDEX NOVEMBER 460 CALL | 3 | 5,117.00 | |
| 11/19 | | 17 | 47738 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | | 62,883.00 |
| | | | | NEW BALANCE | | | 83,885.00 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | | | S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | |
| | | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG 28,050.00 | SHORT 39,610.00- | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES