Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Steven R. Schlesinger, Esq.

*Attorneys for Andrew Ross Samuels*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,          Adv. Pro. No. 08-01789 (BRL)

    v.                                           SIPA Liquidation

BERNARD L. MADOFF INVESTMENT         (Substantively Consolidated)
SECURITIES LLC,

                Defendant.
----------------------------------------------------------------X

IN RE:

BERNARD L. MADOFF,

                Debtor.
----------------------------------------------------------------X

### ANDREW ROSS SAMUELS' OBJECTION TO
### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

        Andrew Ross Samuels ("Samuels") by and through his counsel, Jaspan Schlesinger LLP, hereby raises and files this Objection to the Notice of Trustee's Determination of Claim, dated August 5, 2010, and respectfully shows and alleges as follows:

        1.      Samuels is a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the meaning of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").

2. BLMIS Account Number 1S0495 was opened in the name of Samuels in 1997 pursuant to a trust agreement where Peter Madoff was the sole trustee from 2003 to 2008.

3. Samuels' final account statement from BLMIS dated November 30, 2008 reflects that he owns securities valued at approximately $478,009.95.

4. On or about December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by the FBI and charged with securities fraud. Madoff allegedly confessed that BLMIS was a "Ponzi scheme" as he had been paying returns to certain investors out of the principal he received from other investors.

5. On or about December 11, 2008, the SEC filed a civil complaint with the United States District Court for the Southern District of New York charging Madoff with securities fraud on the basis that Madoff had been conducting a Ponzi scheme for years through the investment adviser services of BLMIS. Thereafter, on or about December 15, 2008, the United States District Court for the Southern District of New York (Stanton, J.) entered an order granting the application of the Securities Investor Protection Corporation ("SIPC") seeking a declaration that the customers of BLMIS are in need of protection under SIPA, and appointed Irving H. Picard, Esq. as Trustee (the "Trustee").

6. On December 23, 2008, this Court entered an order which governs, in part, the determination of "customer claims" of victims of Madoff and BLMIS (the "Claims Procedure Order") [Docket # 12].

7. Prior to the July 2, 2009 bar date, on or about February 23, 2009, Samuels mailed certified mail – return receipt a Customer Claim form (the "Customer Claim Form") with respect to Account Number 1S0495 of BLMIS. The Customer Claim Form reflects a final account balance of $478,009.95. This claim was amended on or about July 30, 2009 via letter to the

Trustee and reduced to $158,009.95 pursuant to Samuels' recovery from collateral sources (and together with the Customer Claim Form, the "Amended Claim"). A copy of the Amended Claim is annexed hereto as Exhibit "A".

8. The Trustee has since issued the Notice of Trustee's Determination of Claim, dated August 5, 2010 (the "Determination of Claim"), denying Samuels' Customer Claim in its entirety. A copy of the Determination of Claim is annexed hereto as Exhibit "B". Specifically, the Trustee denied Samuels' claim for a credit balance of $478,009.95 on the ground that "[n]o securities were ever purchased for [his] account." See Exhibit B. The Trustee also stated that based upon his analysis, the amount of money withdrawn from the account was greater than the amount deposited with BLMIS. See Exhibit B.

9. As set forth below, Samuels objects to the Determination of Claim in its entirety. Samuels should be allowed a claim under SIPA in the amount of $158,009.95 as stated on his Amended Claim.

I.   **THE ANDREW SAMUELS TRUST**

10. On or about June 15, 1997, a trust agreement was entered into for the benefit of Samuels (the "Andrew Samuels Trust"). A copy of the trust agreement, dated June 15, 1997, establishing the Andrew Samuels Trust is annexed hereto as Exhibit "C".

11. The trustees of the Trust were Martin J. Joel, Jr. ("Joel") and Peter Madoff. Joel passed away in or about May 2003, and thereafter, Peter Madoff was the sole trustee of the Andrew Samuels Trust.

12. Upon information and belief, when the Andrew Samuels Trust was funded in 1997, Account Number 1S0314 was opened for the Andrew Samuels Trust and was exclusively

traded and managed by Mr. Joel who, upon information and belief, rented office space from Madoff, through the legitimate side of BLMIS.

13. Following Mr. Joel's death in 2003, Peter Madoff as the sole trustee of the Andrew Samuels Trust invested the entire corpus of the Andrew Samuels Trust with BLMIS. Upon information and belief, Account Number 1S0314 was then purportedly liquidated and closed by Peter Madoff and/or Madoff as the executor of Mr. Joel's estate and the funds of the Andrew Samuels Trust (totally approximately $362,478.66) were unilaterally transferred to a new account opened by Madoff and Peter Madoff – Account Number 1S0495.

14. Until Peter Madoff and/or Madoff liquidated and closed the original Andrew Samuels Trust Account at BLMIS (Account Number 1S0314) and opened a new account for the Andrew Samuels Trust for which Peter Madoff was the sole trustee (Account Number 1S0495), Samuels' funds held in trust at BLMIS not part of Madoff's ultimate Ponzi scheme.[1]

## II. SAMUELS' OBJECTIONS TO THE DETERMINATION OF CLAIM

15. Samuels hereby objects to the Determination of Claim for the reasons set forth below. Samuels is entitled to recover from the estate of BLMIS as he was one of the thousands of customers defrauded by Madoff. Samuels should be allowed a claim under SIPA in the amount of $158,009.95 as stated on his Amended Claim.

16. The Trustee has failed to render a determination and to satisfy Samuels' Customer Claim for Account Number 1S0495 in accordance with the books and records of BLMIS and has

---

[1] Madoff, as executor of Mr. Joel's estate liquidated and closed the accounts of the Samuels family in or about November 2003 and transferred all of their remaining funds from their accounts into his custody and control. Aside from Samuels, the Samuels Family Limited Partnership, Sylvia Samuels, Amy Joel and Patricia Samuels have all filed filed objections to the Notice of Trustee's Determination of Claim issued with respect to their accounts. See Docket # 907, 2372, 2947, and 2964.

HY/D721940v1/M055631/C0047690                           4

further failed to give any weight to the documents in his possession regarding this account as mandated by the Claims Procedure Order.

17.  A proof of claim filed by a creditor is *prima facie* evidence of the amount and validity of the claim.  See Fed. R. Bankr. P. 3001.  The Trustee bears the burden of proof in challenging the amount and validity of the Amended Claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re 37-02 Plaza LLC, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008) ("The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's prima facie validity.").  In order to meet his burden in overcoming the *prima facie* validity of the Amended Claim, the Trustee had to present evidence refuting the amount and validity of Samuels' claim set forth in the Amended Claim.  The Trustee has failed to meet this burden.

18.  Additionally, and in direct contravention of the Claims Procedure Order, the Determination of Claim does not sufficiently set forth the reason and legal basis for the denial of Samuels' claim.  In fact, the only "explanation" for the denial of Samuels' claim is that "[n]o securities were ever purchased for [his] account."  See Exhibit B.  The Determination of Claim therefore states no basis in law or in fact for the denial of Samuels' Amended Claim.  The Determination of Claim is inadequate to rebut the prima facie validity of Samuels' Amended Claim, and further relies upon an exhibit purportedly evidencing the money deposited and the money withdrawn from BLMIS Account Number 1S0495.  The exhibit, however, is completely unsubstantiated and reflects a number of "adjustments" that are unexplained and unsupported.

19.  The Determination of Claim further fails to give Samuels credit for the funds transferred in 2003.  Instead, the Trustee somehow, without stating his reasons as required by the Claims Procedure Order and without providing any documents to support his position, "adjusts"

the amount of the deposits into BLMIS Account Number 1S0495 to "$0.00". See Exhibit B. Without any explanation or documentary evidence, the Trustee fails to give Samuels any credit for Account Number 1S0018 that was managed solely by Mr. Joel through the legitimate side of BLMIS until 2003 when Peter Madoff and/or Madoff liquidated and closed this account and transferred Samuels' funds to Account Number 1S0495 and into Madoff's sole custody and control – his Ponzi scheme. The Trustee acknowledges the funding of Account Number 1S0495, which was opened by Peter Madoff and/or Madoff after the liquidation and closing of Account Number 1S0314, yet nowhere in the Determination of Claim or in the annexed exhibits does the Trustee explain where and how these adjustments were made.

20. The Trustee fails to address the issue concerning the liquidating and closing of Account Number 1S0314 by Peter Madoff and/or Madoff, and instead relies solely upon his schedule of "adjusted" deposits and withdrawals without stating his reasons for his determination as required by the Claims Procedure Order.

21. Moreover, the Determination of Claim and the denial on the grounds that "because [Samuels has] withdrawn more than was deposited into [his] account, [he does] not have a positive 'net equity' in [his] account and [he is] not entitled to an allowed claim in the BLMIS liquidated proceeding," see Exhibit B, should be overturned.

22. SIPA provides that a customer's claim shall be allowed in the amount of the customer's "net equity." See 15 U.S.C. § 78fff-2(b). The term "net equity" is defined in SIPA as,

> [T]he dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such

>   customer (other than customer name securities reclaimed by such customer); minus
>
>   (B) any indebtedness of such customer to the debtor on the filing date; . . . .

15 U.S.C. § 78*lll*(11). The Trustee's money in/money out analysis fails to give customers of BLMIS credit for basic interest that could have been earned on the funds deposited with Madoff and BLMIS during the years in which they were investors, and also fails to reflect the time value of money. Additionally, the Trustee's approach is inconsistent with the case law. See e.g., Visconsi v. Lehman Brothers, Inc., 244 Fed. App'x 708 (6th Cir. 2007); Stafford v. Giddens (In re New Times Securities Services, Inc.), 463 F.3d 125 (2d Cir. 2006); In re New Times Securities Services, Inc., 371 F.3d 68 (2d Cir. 2004).

23. The Trustee's definition of "net equity" only serves to punish victims of Madoff and BLMIS and does not protect them or their reasonable expectations. The legislative intent behind enacting SIPA was to "restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers." Sec. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 415 (1975). "Congress' primary purpose in enacting the SIPA and creating the SIPC was . . . the protection of investors." Id. at 421; see In re First State Sec. Corp., 34 B.R. 492, 496 (Bankr. S.D. Fla. 1983) ("SIPA is remedial legislation. As such it should be construed liberally to effect its purpose. The purpose is the protection of the insolvent brokers' customers."); see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) (noting that Congress' primary purpose behind enacting SIPA was to protect investors from financial losses arising from insolvency of brokers and to reestablish investor confidence). The Trustee's interpretation of "net equity" and its application to Samuels' Amended Claim should be overturned.

24. Lastly, at a minimum, Samuels' funds that were subsequently transferred by Madoff from the account opened by Mr. Joel to BLMIS Account Number 1S0495 should be entitled to interest. See e.g., N.Y. C.P.L.R. § 5004; Gen. Oblig. Law § 5-501 *et seq.*

## CONCLUSION

25. For the foregoing reasons, Samuels requests that his Amended Claim be allowed in its entirety in the amount of $158,009.95, together with such other and further relief as this Court deems just and proper.

26. Samuels reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of his right to object.

**WHEREFORE**, Andrew Ross Samuels requests that his Customer Claim be allowed in its entirety in the amount of $158,009.95, together with such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       September 3, 2010

                            JASPAN SCHLESINGER LLP
                            *Attorneys for Andrew Ross Samuels*

                    By:   s/Steven R. Schlesinger
                          STEVEN R. SCHLESINGER
                          300 Garden City Plaza
                          Garden City, New York  11530
                          (516) 746-8000

TO:    Clerk of the United States Bankruptcy Court (via ECF)
for the Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Ona T. Wang, Esq.
Naima Garvin, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111