Exhibit A

**CUSTOMER CLAIM**

# COPY

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number:    1S0495
ANDREW ROSS SAMUELS
14 PINE HILL DRIVE
DIX HILLS, NY  11746

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE
ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD
BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION
AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE
TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT
DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED
PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE
CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN
RECEIPT REQUESTED.

*************************************************************************

1.    Claim for money balances as of **December 11, 2008** :
    a.    The Broker owes me a Credit (Cr.) Balance of        $ 478,009.95 __
    b.    I owe the Broker a Debit (Dr.) Balance of        $   0 _____

c.  If you wish to repay the Debit Balance,
    please insert the amount you wish to repay and
    attach a check payable to "Irving H. Picard, Esq.,
    Trustee for Bernard L. Madoff Investment Securities LLC."
    If you wish to make a payment, **it must be enclosed**
    with this claim form.                                          $_____

d.  If balance is zero, insert "None."                            _____

2.  Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|     |                                  | YES      | NO      |
|-----|----------------------------------|----------|---------|
| a.  | The Broker owes me securities    | X        |         |
| b.  | I owe the Broker securities      |          | X       |

c.  If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|----------------------------------|------------------|---------------------------|--------------------------|
|                                  |                  |                           |                          |
| See attached account statement   |                  |                           |                          |
| as of April 30, 2008             |                  |                           |                          |
|                                  |                  |                           |                          |
|                                  |                  |                           |                          |

Column header above the two rightmost columns: Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | AMY JOEL<br>X |  |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | PETER B. MADOFF<br>X |  |

9.      Have you or any member of your family
        ever filed a claim under the Securities          MULTIPLE CLAIMS
        Investor Protection Act of 1970? if              IN THIS CASE
        so, give name of that broker.                    ___X___      _____

        Please list the full name and address of anyone assisting you in the
        preparation of this claim form: Steven R. Schlesinger, Esq.
        Jaspan Schlesinger LLP, 300 Garden City Plaza,
        Garden City, New York  11530

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.

        This claim is estimated.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _____    Signature_____

Date _____    Signature_____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
☐ New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   1ST F/B/O ANDREW ROSS SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS        NY    11746

YOUR ACCOUNT NUMBER: 1-S0495-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: ******1940
PERIOD ENDING: 4/30/08
PAGE: 2

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 4/04 | 378 | | 75298 | BANK OF AMERICA | 39.460 | 14,930.88 | |
| 4/04 | 273 | | 78378 | PROCTER & GAMBLE CO | 69.900 | 19,092.70 | |
| 4/04 | 441 | | 79593 | CITI GROUP INC | 22.630 | 10,005.65 | |
| 4/04 | 189 | | 82673 | PHILLIP MORRIS INTERNATIONAL | 50.530 | 9,557.17 | |
| 4/04 | 266 | | 83088 | COMCAST CORP CL A | 19.660 | 5,239.56 | |
| 4/04 | 105 | | 86968 | SCHLUMBERGER LTD | 86.410 | 9,077.05 | |
| 4/04 | 140 | | 88183 | CONOCPHILIPS | 75.930 | 10,635.20 | |
| 4/04 | 532 | | 91263 | AT&T INC | 38.910 | 20,721.12 | |
| 4/04 | 525 | | 92478 | CISCO SYSTEMS INC | 24.470 | 12,867.75 | |
| 4/04 | 91 | | 95558 | UNITED PARCEL SVC INC CLASS B | 73.400 | 6,682.40 | |
| 4/04 | 189 | | 96773 | CHEVRON CORP | 85.230 | 16,111.69 | |
| 4/04 | 84 | | 99853 | UNITED TECHNOLOGIES CORP | 69.570 | 5,846.88 | |
| | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 04/04/08 | DIV | | 13.20 |
| | | 16,500 | 21255 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 16,500.00 |
| 4/04 | | 450,000 | 25211 | U S TREASURY BILL DUE 7/31/2008 | 99.548 | | 447,966.00 |
| 4/04 | 25,000 | | 27656 | U S TREASURY BILL DUE 9/18/2008 | 99.304 | 24,826.00 | |

CONTINUED ON PAGE 3

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

**MADF**

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT    TST F/B/O ANDREW FRIEDMAN SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS    NY  11746

| YOUR ACCOUNT NUMBER | PERIOD ENDING | TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-S049F-3-0 | 4/30/08 | *****1940 | 3 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 4/04 | 1,874 | | 28853 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 1,874.00 | |
| 4/07 | 12,173 | | 36650 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 12,173.00 | |
| 4/23 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 04/23/08 | DIV | | 10.13 |
| 4/23 | | 14,047 | 59560 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 14,047.00 |
| 4/23 | 14,029 | | 63812 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 14,029.00 | |
| 4/30 | | | | J.P. MORGAN CHASE & CO DIV 4/04/08 | DIV | | 109.06 |
| 4/30 | 109 | | 74176 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 109.00 | |
| 4/30 | | | | U S TREASURY MONEY MARKET NEW BALANCE | | 5,977.01 | |

SECURITY POSITIONS

| | | | DESCRIPTION | MKT PRICE |
|---|---|---|---|---|
| | 532 | | AT&T INC | 38.710 |
| | 140 | | ABBOTT LABORATORIES | 52.750 |
| | 217 | | AMERICAN INTL GROUP INC | 46.200 |
| | 77 | | APPLE INC | 173.950 |
| | 378 | | BANK OF AMERICA | 37.540 |
| | 189 | | CHEVRON CORP | 96.150 |

CONTINUED ON PAGE    4

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT 1ST F/B/O ANDREW ROSS SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS          NY  11746

YOUR ACCOUNT NUMBER: 1-S0495-3-0
DATE: 4/30/08
AMOUNT: ******1940
PAGE: 4

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 525 | | | CISCO SYSTEMS INC | 25.640 | | |
| 441 | | | CITI GROUP INC | 25.270 | | |
| 175 | | | COCA COLA CO | 58.870 | | |
| 266 | | | COMCAST CORP | 20.550 | | |
| | | | C L A | | | |
| 140 | | | CONOCPHILLIPS | 86.150 | | |
| 168 | | | THE WALT DISNEY CO | 32.630 | | |
| 476 | | | EXXON MOBIL CORP | 92.070 | | |
| 882 | | | GENERAL ELECTRIC CO | 32.570 | | |
| 35 | | | GOLDMAN SACHS GROUP INC | 191.370 | | |
| 21 | | | GOOGLE | 574.290 | | |
| 217 | | | HEWLETT PACKARD CO | 46.350 | | |
| 511 | | | INTEL CORP | 22.260 | | |
| 126 | | | INTERNATIONAL BUSINESS MACHS | 120.700 | | |
| 287 | | | J.P. MORGAN CHASE & CO | 47.650 | | |
| 252 | | | JOHNSON & JOHNSON | 67.090 | | |
| 105 | | | MCDONALDS CORP | 59.500 | | |
| 189 | | | MERCK & CO | 38.040 | | |
| 707 | | | MICROSOFT CORP | 28.520 | | |
| 350 | | | ORACLE CORPORATION | 20.850 | | |
| 147 | | | PEPSICO INC | 68.530 | | |
| 602 | | | PFIZER INC | 20.110 | | |
| 189 | | | PHILLIP MORRIS INTERNATIONAL | 51.030 | | |
| 273 | | | PROCTER & GAMBLE CO | 67.050 | | |
| 105 | | | SCHLUMBERGER LTD | 100.550 | | |

CONTINUED ON PAGE 5

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   TST F/B/O ANDREW ROSS SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS            NY  11746

YOUR ACCOUNT NUMBER: 1-S0495-3-0
PERIOD ENDING: 4/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******1940
PAGE: 5

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 14,138 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| | 91 | | | UNITED PARCEL SVC INC CLASS B | 72-610 | | |
| | 25,000 | | | U S TREASURY BILL DUE 9/18/2008 9/18/2008 | 99-444 | | |
| | 84 | | | UNITED TECHNOLOGIES CORP | 72-470 | | |
| | 252 | | | VERIZON COMMUNICATIONS | 36-480 | | |
| | 210 | | | WAL-MART STORES INC | 57-980 | | |
| | 280 | | | WELLS FARGO & CO NEW | 29-750 | | |
| | | | | MARKET VALUE OF SECURITIES LONG 484,239.95 SHORT | | | |

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT TST F/B/O ANDREW ROSS SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS          NY  11746

YOUR ACCOUNT NUMBER: 1-S0495-3-0
PERIOD ENDING: 4/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******1940
PAGE: 6

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 438.23 |
| | | | | GROSS PROCEEDS FROM SALES | | | 897,759.00 |

**BERNARD L. MADOFF**
MADF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT 1ST F/B/O ANDREW ROSS SAMUELS

HOWARD SAMUELS
14 PINEHILL DRIVE
DIX HILLS     NY     11746

| YOUR ACCOUNT NUMBER | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | PAGE |
|---|---|---|---|
| 1-S0495-4-0 | 4/30/08 | ******1940 | 1 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | NO BALANCE FORWARD | | | |
| 4/04 | 7 | | 61198 | S & P 100 INDEX APRIL 635 PUT | 8.800 | 6,167.00 | |
| 4/07 | 7 | | 56903 | S & P 100 INDEX APRIL 625 CALL | 17.400 | | 12,173.00 |
| 4/22 | 7 | | 41557 | S & P 100 INDEX APRIL 625 CALL | 4.600 | 3,227.00 | |
| 4/22 | | 7 | 50567 | S & P 100 INDEX APRIL 635 PUT | 1 | | 693.00 |
| 4/22 | | 7 | 55072 | S & P 100 INDEX MAY 625 PUT | 12.200 | | 8,547.00 |
| 4/23 | 7 | | 46062 | S & P 100 INDEX MAY 635 CALL | 15.800 | | 11,053.00 |
| | | | | NEW BALANCE | | | |
| | | | | SECURITY POSITIONS | | | |
| | | | | S & P 100 INDEX MAY 635 CALL | MKT PRICE 13.700 | | |
| | | | | S & P 100 INDEX MAY 625 PUT | 4.800 | | 5,978.00 |
| | | | | MARKET VALUE OF SECURITIES LONG | | 3,360.00 | |
| | | | | SHORT | | 9,590.00- | |

## TRUST FOR THE BENEFIT OF

## DARA JOEL SAMUELS and ANDREW ROSS SAMUELS

TRUST AGREEMENT entered into as of this 15th day of June, 1997 between MARTIN J. JOEL, JR. and SYLVIA ANN JOEL, husband and wife, residing at 21 Cayuga Road, Scarsdale, New York 10583, with MARTIN J. JOEL, JR., residing at 21 Cayuga Road, Scarsdale, New York 10583 and PETER B. MADOFF residing at 34 Pheasant Road, Old Westbury, New York 11568 (herein referred to as the "Trustees").

FIRST:    The Grantors have transferred and delivered to the Trustees the property described in Schedule A, hereto annexed, the receipt of which is acknowledged by the Trustees, upon the express terms and conditions and with the powers, discretions and limitations hereinafter set forth. Additional property may, from time to time, be transferred by the Grantors or by any other person or persons to the Trustees with their consent, and such property shall thereupon become a part of this Trust and shall be held, managed, invested and reinvested, and disposed of on the same terms and conditions as the property originally transferred.

SECOND:    The Trustees shall hold the property listed in Schedule A together with all additions thereto in two (2) separate Trust Funds established herein for the individual benefit of the Grantors' grandchildren, DARA JOEL SAMUELS and ANDREW ROSS SAMUELS, respectively, in the manner and upon the terms and conditions set forth in this Trust Agreement, as follows:

### TRUST FUND FOR THE BENEFIT OF

### DARA JOEL SAMUELS

The Trustees shall hold, manage, invest and reinvest the assets of this Trust Fund, and shall collect and receive the income therefrom for the benefit of DARA JOEL SAMUELS ("DARA"), the granddaughter of the Grantors, during the term hereof, and shall hold, administer and pay the principal and income thereof, in the following manner:

(a)    Subject to the remaining provisions of this paragraph (a), the term of this Trust Fund shall end upon the earlier to happen of (i) DARA'S demise, or (ii) upon DARA'S election, as described herein, to terminate this Trust Fund at any time during the sixty (60) day period immediately preceding her attaining the age of twenty-one (21) years. Within such sixty (60) day period, the election by DARA of her right to terminate this Trust Fund shall be evidenced by an instrument in writing signed by DARA, or by her duly authorized agent or legal representative and delivered to the Trustees then acting hereunder, in person or by registered mail. At any time within the sixty (60) day period prior to DARA'S attaining the age of twenty (20) years and ten (10) months, the Trustees then acting hereunder shall deliver to DARA, or to

her duly authorized agent or legal representative, as the case may be, a letter advising DARA of her aforesaid election to terminate this Trust Fund. Such letter shall, in addition, advise DARA of her continuing financial entitlements (as described in paragaphs (b), (c) and (d) below) from this Trust Fund in the event DARA does not exercise her election to terminate. In the event that DARA shall not have exercised her rights to terminate this Trust Fund, as aforesaid, the termination of this Trust Fund shall, subject to the provisions set forth herein, occur upon DARA'S attaining the age of thirty-five (35) years. Each of the following events, (x) DARA'S death; (y) the exercise by her, as aforesaid, of the election to terminate this Trust Fund prior to her attaining age twenty-one (21) years; or (z) her attaining the age of thirty-five (35) years, respectively, as the case may be, are sometimes referred to herein as the "Trust Termination Date."

(b)    Subject to the provisions of the following paragraph (c), the Trustees shall pay to or apply for the education, support and maintenance of DARA, so much of the net income and principal of this Trust Fund as the Trustees shall, in their sole and absolute discretion, determine from time to time to be advisable for her benefit. The Trustees shall accumulate any net income not so paid or applied and shall add the same to the principal of this Trust Fund whenever convenient.

(c)    In the event that DARA shall not have exercised her power to terminate this Trust Fund, as set forth in paragraph (a) above, then upon DARA'S attaining the age of twenty-one (21) years, the Trustees shall pay to or apply for the benefit of DARA, all of the net income earned by this Trust Fund in quarter-annual or, more frequent, installments.

(d)    In the event that the term of this Trust Fund shall not have been terminated by DARA within the sixty (60) day period next preceding her attainment of age twenty-one (21) years, as provided for in paragraph (a) above, DARA, upon attaining the age of twenty-one (21) years, shall have the discretionary power in her and her alone, to direct the Trustees to pay to or apply to or for her individual use and benefit out of the principal of this Trust Fund in each calendar year all additions to this Trust Fund made by the Grantors or others during each such calendar year in an amount not to exceed Ten Thousand ($10,000) Dollars per annum per donor. At any time during the month of November of each such calendar year, the Trustees shall, by written notice, furnish DARA with the amount of principal added to this Trust Fund during such calendar year which is subject to the limited power of withdrawal provided to DARA herein. DARA may thereupon exercise this power of withdrawal by delivery to the Trustees of an instrument in writing subscribed by her or by her duly authorized agent prior to December 24th of each such calendar year. The power to direct payment or application of principal conferred upon DARA herein (i) shall expire on the last day of each such calendar year; (ii) shall not be cumulative; and (iii) shall, in all events, terminate on the 1st day of the calendar year next following the calendar year of the date of death of the survivor of the Grantors.

-2-

(e)    Upon the Trust Termination Date, the Trustees shall pay over and distribute the balance of the principal and undistributed income of this Trust Fund, if any, to DARA or if she shall not then be living, then to her then living children, in equal shares, or if there shall be no such children then living, then pursuant to DARA'S Last Will and Testament by the exercise of a power of appointment which shall specifically refer to the within Trust Fund, or if none, then to ANDREW ROSS SAMUELS, the grandson of the Grantors, provided, however, that in the event that a separate Trust Fund is then established under this Trust Agreement for ANDREW'S benefit, such share shall not be paid over to him, but in lieu thereof, shall be added to the Trust Fund created for ANDREW'S benefit hereunder, and shall be held and administered pursuant to the terms thereof, in all respects as to both principal and income.

(f)    The Trustees may make payments of income and principal directly to DARA (or during her minority to her parent, guardian or the custodian of her property), or to any other person deemed suitable by the Trustees, or by direct payment of expenses incurred for DARA'S benefit.

(g)    Any decision of the Trustees with respect to the exercise of the discretionary powers granted to them under this Trust Agreement, made in good faith, shall fully protect the Trustees and shall be conclusive and binding upon all persons interested in this Trust. The Grantors direct that the Trustees be liberal in the exercise of the discretionary powers conferred upon them hereunder and that preference be given primarily to the educational and financial needs of DARA rather than to the conservation of principal for the benefit of any other succeeding beneficiaries.

## TRUST FUND FOR THE BENEFIT OF

### ANDREW ROSS SAMUELS

The Trustees shall hold, manage, invest and reinvest the assets of this Trust Fund, and shall collect and receive the income therefrom for the benefit of ANDREW ROSS SAMUELS ("ANDREW"), the grandson of the Grantors, during the term hereof, and shall hold, administer and pay the principal and income thereof, in the following manner:

(a)    Subject to the remaining provisions of this paragraph (a), the term of this Trust Fund shall end upon the earlier to happen of (i) ANDREW'S demise, or (ii) upon ANDREW'S election, as described herein, to terminate this Trust Fund at any time during the sixty (60) day period immediately preceding his attaining the age of twenty-one (21) years. Within such sixty (60) day period, the election by ANDREW of his right to terminate this Trust Fund shall be evidenced by an instrument in writing signed by ANDREW or by his duly authorized agent or legal representative and delivered to the Trustees then acting hereunder, in person or by registered mail. At

any time within the sixty (60) day period prior to ANDREW'S attaining the age of twenty (20) years and ten (10) months, the Trustees then acting hereunder shall deliver to ANDREW, or to his duly authorized agent or legal representative, as the case may be, a letter advising ANDREW of his aforesaid election to terminate this Trust Fund. Such letter shall, in addition, advise ANDREW of his continuing financial entitlements (as described in paragraphs (b), (c) and (d) below) from this Trust Fund in the event ANDREW does not exercise his election to terminate. In the event that ANDREW shall not have exercised his rights to terminate this Trust Fund, as aforesaid, the termination of this Trust Fund shall, subject to the provisions set forth herein, occur upon ANDREW'S attaining the age of thirty-five (35) years. Each of the following events, (x) ANDREW'S death; (y) the exercise by him, as aforesaid, of the election to terminate this Trust Fund prior to his attaining age twenty-one (21) years; or (z) his attaining the age of thirty-five (35) years, respectively, as the case may be, are sometimes referred to herein as the "Trust Termination Date."

(b)     Subject to the provisions of the following paragraph (c), the Trustees shall pay to or apply for the education, support and maintenance of ANDREW, so much of the net income and principal of this Trust Fund as the Trustees shall, in their sole and absolute discretion, determine from time to time to be advisable for his benefit. The Trustees shall accumulate any net income not so paid or applied and shall add the same to the principal of this Trust Fund whenever convenient.

(c)     In the event that ANDREW shall not have exercised his power to terminate this Trust Fund, as set forth in paragraph (a) above, then upon ANDREW'S attaining the age of twenty-one (21) years, the Trustees shall pay to or apply for the benefit of ANDREW, all of the net income earned by this Trust Fund, in quarter-annual or more frequent, installments.

(d)     In the event that the term of this Trust Fund shall not have been terminated by ANDREW within the sixty (60) day period next preceding his attainment of age twenty-one (21) years, as provided for in paragraph (a) above, ANDREW, upon attaining the age of twenty-one (21) years, shall have the discretionary power in him and him alone, to direct the Trustees to pay to or apply to or for his individual use and benefit out of the principal of this Trust Fund in each calendar year all additions to this Trust Fund made by the Grantors or others during each such calendar year in an amount not to exceed Ten Thousand ($10,000) Dollars per annum per donor. At any time during the month of November of each such calendar year, the Trustees shall, by written notice, furnish ANDREW with the amount of principal added to this Trust Fund during such calendar year which is subject to the limited power of withdrawal provided to ANDREW herein. ANDREW may thereupon exercise this power of withdrawal by delivery to the Trustees of an instrument in writing subscribed by him or by his duly authorized agent prior to December 24th of each such calendar year. The power to direct payment or application of principal conferred upon ANDREW herein (i) shall expire on the last day of each such calendar year; (ii) shall not be cumulative; and (iii)

-4-

shall, in all events, terminate on the 1st day of the calendar year next following the calendar year of the date of death of the survivor of the Grantors.

(e)    Upon the Trust Termination Date, the Trustees shall pay over and distribute the balance of the principal and undistributed income of this Trust Fund, if any, to ANDREW or if he shall not then be living, then to his then living children, in equal shares, or if there shall be no such children then living, then pursuant to ANDREW'S Last Will and Testament by the exercise of a power of appointment which shall specifically refer to the within Trust Fund, or if none, then to DARA JOEL SAMUELS, the granddaughter of the Grantors, then living, in equal shares, per stirpes, provided, however, that in the event that a separate Trust Fund is established under this Trust Agreement, for DARA'S benefit, such share shall not be paid over to her, but in lieu thereof, shall be added to the Trust Funds created for DARA's benefit hereunder, and shall be held and administered pursuant to the terms thereof, in all respects as to both principal and income.

(f)    The Trustees may make payments of income and principal directly to ANDREW (or during his minority to his parent, guardian or the custodian of his property), or to any other person deemed suitable by the Trustees, or by direct payment of expenses incurred for ANDREW'S benefit.

(g)    Any decision of the Trustees with respect to the exercise of the discretionary powers granted to them under this Trust Agreement, made in good faith, shall fully protect the Trustees and shall be conclusive and binding upon all persons interested in this Trust. The Grantors direct that the Trustees be liberal in the exercise of the discretionary powers conferred upon them hereunder and that preference be given primarily to the educational and financial needs of ANDREW rather than to the conservation of principal for the benefit of any other succeeding beneficiaries.

THIRD:    If any person shall be under the age of twenty-one (21) years (herein referred to as a "minor") when he or she shall become entitled to a share of any Trust Fund created hereunder, such share shall vest absolutely in such minor notwithstanding minority. During minority, the Trustees may, in their discretion, retain custody of such share until such minor attains legal majority. The Trustees shall apply so much of the income or principal for the benefit of such minor as they deem necessary or desirable, regardless of any other source or sources of income or support which the minor may have, adding any income not so paid or applied to principal annually. When such minor shall attain legal majority, the then principal of such share, together with any accumulated income thereon, if any, shall be paid over to such minor. If such minor shall die before attaining legal majority, then, upon the death of such minor, the then principal of such share, together with any accumulated income thereon, shall be paid over to the estate of such minor. In making payments to or on behalf of a minor under any provisions of this Trust Agreement, the Trustees are empowered to apply the principal and income directly to the use of the minor or to make any payment of principal or income to a parent of the minor, to a legal guardian

-5-

of the minor or to any adult person with whom the minor resides or who has the care or custody of the minor temporarily or permanently. Evidence of any such payment or application or the receipt therefor executed by such parent, guardian or adult person shall discharge the Trustees with respect to such payment or application and the Trustees shall not be responsible for the application of such income or principal by such parent, guardian or adult person. When acting under the provisions of this Article THIRD, the Trustees shall have all the powers conferred upon them under the provisions of this Trust Agreement, or by law, and shall not be required to give any bond or security of any kind.

FOURTH:   In addition to any powers given by law or otherwise, the Trustees are authorized and empowered with respect to any property at any time held under any provision of this Agreement, and any property held pursuant to any power in trust, and until the actual distribution thereof:

(a)   To sell upon such terms and conditions as they, in their sole discretion, may determine.

(b)   To invest and reinvest in and to acquire by exchange or otherwise property of any character including stocks of any classification, obligations or other property, real or personal, whether or not the same kind, without regard to diversification and without being limited to the investments authorized by law for the investment of trust funds, including but not limited to the purchase and sale of put and call options and short trading activities.

(c)   To retain property of any kind received by their without regard to diversification and without being limited to the investments authorized by law for the investment of trust funds.

(d)   To join in, consent to, or become a party to any reorganization, merger, consolidation, dissolution, readjustment, exchange, or other transaction and any plan or action thereunder or in connection therewith; to deposit any such property with any protective, reorganization or similar committee, to delegate discretionary powers thereto and to share in payment of their expenses and compensation and to pay any assessments levied with respect to such property and to receive property under any reorganization, merger, consolidation, dissolution readjustment, exchange or other transaction whether or not the same be authorized by law for the investment of trust funds.

(e)   To exercise all conversion, subscription, voting and other rights of whatsoever nature pertaining to any such property and to grant proxies, discretionary or otherwise, with respect thereto.

(f)   To make and retain joint investments and investments of undivided interests in any property, real or personal, whether or not all the property be held

-6-

hereunder and whether or not the provisions of this Trust Agreement under which such other property is held are similar.

(g)     With respect to any real property (including real property acquired on foreclosure or by deed in lieu thereof) at any time held hereunder, to sell, exchange, partition, lease, sublease, mortgage, improve, or otherwise alter upon such terms as they may deem proper, and to execute and deliver deeds, leases, mortgages or other instruments relating thereto. Any lease may be made for such period of time, including a lease beyond a five (5) year period, as the Trustees may deem proper and without the approval of any court.

(h)     To borrow money from any person or corporation (including any fiduciary hereunder) for any purpose without resorting to the sale of any assets; and for the purpose of securing the payment thereof, to pledge, mortgage, or otherwise encumber any and all such property upon such terms, covenants, and conditions as the Trustees may deem proper and also to extend the time of payment of any loans or encumbrances which at any time may be encumbrances on any such property irrespective of by whom the same were made or where the obligations may or should ultimately be borne on such terms, covenants, and conditions as they may deem proper.

(i)     To distribute in cash or in kind or partly in cash and partly in kind.

(j)     To abandon, settle, compromise, extend, renew, modify, release, adjust, or submit to arbitration in whole or in part and without the order or decree of any court any and all claims whether such claims shall increase or decrease the assets held hereunder.

(k)     To determine whether or not to amortize the premium on any investment, or to allocate to income all or any part of any discount on any investment, and the decisions with respect thereto shall be conclusive upon all persons interested hereunder.

(l)     To allocate to income all cash dividends or other cash distributions whether ordinary or extraordinary received from any source, including without limitation by the specification thereof, cash dividends received from investment companies, and all cash dividends or other cash distributions received from any mining stocks or other wasting investments whether or not of the same kind at any time held hereunder (notwithstanding such cash dividends or distributions from any mining stocks or other wasting investments may have been extraordinary or designated or described by the disburser thereof to be in whole or in part a return of capital or a distribution from depletion reserves) without setting apart any portion of such cash dividends or distributions to maintain principal intact; **provided, however**, that all capital gains and any cash dividends or distributions in connection with the winding

-7-

up of the business or the liquidation of substantially all of the assets or the dissolution of any corporation shall be allocated to principal.

(m)    To allocate to principal all dividends and distributions payable in the stocks, bonds, or other securities whether or not of the same kind of the disburser or of another company.

(n)    To administer the two (2) separate Trust Funds herein created or any parts thereof together or as a single fund by holding the principal of such Trust Funds in a single consolidated fund in which each of the separate Trust Funds created herein shall have undivided interests.

(o)    The Trustees may freely act under all or any of the powers by this Agreement given to them in all matters concerning this Trust Agreement, after forming their judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of this Trust Agreement and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested therein, or the consent or approval of any court, and notwithstanding that they may also be acting individually, or as a trustee of other trusts, or as an agent for other persons or corporations interested in the same matters, or may be interested in connection with the same matters as shareholder, director, or otherwise, provided, however, that they shall exercise such powers at all times in a fiduciary capacity primarily in the interests of all of the beneficiaries hereunder.

FIFTH:    Notwithstanding anything herein contained to the contrary:

(a)    No powers enumerated herein or accorded to trustees generally pursuant to law shall be construed to enable the Grantors, or the Trustees, or any other person to purchase, exchange, or otherwise deal with or dispose of the principal or income of the separate Trust Funds created hereunder, for less than an adequate or full consideration in money or money's worth, or to enable the Grantors or the Trustees to borrow the principal or income of any of the separate Trust Funds created hereunder, directly or indirectly, without adequate interest or security. No person, other than the Trustees, shall have, or exercise, the power to vote or direct the voting of any stock or other securities held pursuant to this Trust Agreement, or to control the investments thereof either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, or to reacquire or exchange any property of the separate Trust Funds created hereunder by substituting other property of any equivalent value.

(b)    In the event either of the named Trustees, or any Successor Trustee under this Trust Agreement, is a person or a member of a class in whose favor a discretionary power over income or principal may be exercised, or is a parent, descendant or spouse of any such person or class member, then such discretionary

power shall or may, as the case may be, be exercised as if such Trustee was not in office.

(c)    All Trustees, including Successor Trustees, acting hereunder from time to time shall be deemed to have acted within the scope of their authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested in this Trust Agreement, unless the contrary shall be proved by affirmative evidence. The within provisions shall apply to all Trustees when acting as a donee of a power in trust hereunder.

(d)    No Trustee acting hereunder shall be liable for any loss or depreciation occasioned by the purchase or retention of any securities or property purchased or retained by them, provided, however, that they shall have acted in good faith in such purchase or retention; and in no event shall any Trustees hereunder be liable for any error of judgment or for anything done or omitted to be done pursuant to the powers herein given, except for their own willful misconduct. The Grantors have given the Trustees, and all Successor Trustees hereunder, the discretionary power to purchase and retain corporate shares and other securities or properties without liability for anything other than their own willful misconduct because the Grantors believe that the unrestricted exercise of such discretion, free from the threat of having the account of any Trustee surcharged for security losses or depreciation will, upon the whole, operate for the best interests of the beneficiaries of the separate Trust Funds created hereunder.

(e)    No portion of the principal or income of the separate Trust Funds created hereunder shall be used or applied for the payment of any debt, tax liability or other legal obligation of the Grantors.

SIXTH:    If, upon the occurrence of any contingency, any share of any Trust Fund established under this Trust Agreement shall not be completely disposed of by the foregoing provisions hereof, then, upon the occurrence of such contingency, the Grantors direct the Trustees then acting, upon the applicable Trust Termination Date, to assign, transfer and pay over such undisposed share, in equal parts, to those persons who, had both of the Grantors died immediately after the occurrence of such contingency, would have been their respective intestate distributees under the laws of the State of New York, then in effect, in the shares and proportions set forth in such laws.

SEVENTH:    In the event that either of the named Trustees herein, shall, for any reason, fail to qualify or cease to act as a Trustee hereunder, each of them or the survivor, as the case may be, shall have the right and power by written instrument duly executed and acknowledged to designate a Successor Trustee or Co-Trustee, as the case may be. Each such Successor Trustee shall succeed to all the duties and all the powers, including the discretionary powers, in the manner herein granted to the named Trustees hereunder.

-9-

EIGHTH:    No bond or other security shall be required of the named Trustees or any Successor Trustee serving hereunder.

NINTH:    This Trust Agreement shall be irrevocable and the Grantors hereby expressly acknowledge that they shall have no right or power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke, or terminate this Trust Agreement, or any of the terms hereof, in whole or in part, or to designate the persons who shall possess or enjoy the Trust property, or the income therefrom.  By this instrument, the Grantors intend to and do hereby relinquish absolutely and forever all possession or enjoyment of, or right to the income from and the principal of the separate Trust Funds created hereunder, whether directly, indirectly, or constructively, and every interest of any nature, present or future therein.

TENTH:    (A)    Any Trustee acting hereunder may, upon giving notice to each beneficiary hereof, surrender, disclaim, release, relinquish or amend, either in whole or in part or reduce in scope any administrative provision of either of the separate Trust Funds created hereunder which cause unanticipated tax liability, or conform the administrative provisions of this Trust Agreement to the requirements of the taxing authorities. The Trustees are, therefore, expressly authorized to enter into any and all agreements with the Internal Revenue Service or any other governmental body or official or to execute, from time to time, any declarations of policy or disclaimers restricting the discretion given them, as will, in the discretion of the Trustees, tend to minimize the taxes engendered by this Trust. In this regard, it is the express intention of the Grantors that the terms and conditions of this Trust Agreement and the two (2) separate Trust Funds created hereunder, shall conform to the provisions of Section 2503(c) of the Internal Revenue Code, as presently in effect, and as may be amended from time to time.

(B)    Each of the separate Trust Funds created hereunder shall apply for separate tax identification numbers and shall file separate annual fiduciary income tax returns.

(C)    Schedule B attached hereto sets forth the respective birthdates and social security numbers of each of the grandchildren of the Grantors for whom separate Trust Funds are created hereunder.

ELEVENTH:    This Agreement and the separate Trust Funds created hereunder shall be governed and construed by, and in accordance with, the laws of the State of New York.

TWELFTH:    The Grantors reserve the right for themselves at any time and from time to time, by way of inter-vivos transfer, bequest, devise, or beneficiary designation under any policy of life insurance, retirement plan, or IRA Rollover account, to add property acceptable to the Trustees for additions to the principal of the separate Trust Funds created hereunder and any property so added shall be subject to all the

-10-

terms and conditions of this Trust Agreement. All such additional property transferred by the Grantors to the Trust Funds created hereunder shall be described in Schedule A hereto annexed. The Trustees shall also have the power to accept from any other third parties, including themselves individually, inter-vivos transfers and bequests of property acceptable for additions to the principal of the separate Trust Funds created hereunder. All such property transferred by third parties other than the Grantors to the Trust Funds created hereunder shall be described in Schedule A-1 hereto annexed.

THIRTEENTH: The terms "issue" and "descendants" as used herein shall be deemed to mean lawful, lineal descendants, and shall include persons who are adopted.

FOURTEENTH: This Trust Agreement may be executed in counterparts and each counterpart shall constitute an original.

IN WITNESS WHEREOF, the Grantors and the Trustees have executed this Trust Agreement as of the date first above written.

_____
MARTIN J. JOEL, JR., Grantor

_____
SYLVIA ANN JOEL, Grantor

_____
MARTIN J. JOEL, JR., Trustee

_____
PETER B. MADOFF, Trustee

-11-

# EXHIBIT A

## PROPERTY DELIVERED TO TRUSTEES BY THE GRANTORS

| <u>Date</u> | <u>Description of Property</u> | <u>Name of Trust Fund</u> |
|---|---|---|
| 6/15/97 | $1.00 cash | Dara Joel Samuels |
| 6/15/97 | $1.00 cash | Andrew Ross Samuels |

**EXHIBIT A-1**

**PROPERTY DELIVERED TO TRUSTEES BY THIRD PARTIES**

| Date | Name of Donor | Description of Property | Name of Trust Fund |
|------|---------------|------------------------|--------------------|
| June, 1997 | Bernard L. Madoff | Cash in the amount of $10,000 | Dara Joel Samuels |
| June, 1997 | Bernard L. Madoff | Cash in the amount of $10,000 | Andrew Ross Samuels |
| June, 1997 | Ruth Madoff | Cash in the amount of $10,000 | Dara Joel Samuels |
| June, 1997 | Ruth Madoff | Cash in the amount of $10,000 | Andrew Ross Samuels |

SCHEDULE A-1

## SCHEDULE B

| Name of Grandchild | Birthdate | Social Security # |
| --- | --- | --- |
| DARA JOEL SAMUELS | | |
| ANDREW ROSS SAMUELS | | |

SCHEDULE B



# JASPAN SCHLESINGER
— Attorneys at Law ————————————LLP

**FILE COPY**

Since 1946

**Steven R. Schlesinger**
Partner
516-393-8220
sschlesinger@jaspanllp.com

300 GARDEN CITY PLAZA • GARDEN CITY, NEW YORK 11530
TELEPHONE 516.746.8000 • FAX 516.393.8282
www.jaspanllp.com

**DELAWARE OFFICE**
913 North Market Street
Wilmington, DE 19801
Telephone 302.351.8000
Fax 302.351.8010

July 30, 2009

**Via Certified Mail – Return Receipt Requested**
Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

> Re:    **Bernard L. Madoff Investment Securities LLC**
> **Customer Claim Forms**
> **Andrew Ross Samuels, Account No. 1S0495**

Dear Mr. Picard:

As you are aware, this firm is counsel to Andrew Ross Samuels. On or about February 23, 2009, the original of the enclosed customer claim form was mailed certified mail – return receipt to your Claims Proceeding Center.

Please be advised that the customer claim form of Andrew Ross Samuels is to be amended and reduced by $320,000.00 on account of funds received by a collateral source. The total outstanding balance on Mr. Samuels' account should therefore be amended from $478,009.95 to $158,009.95.

Please contact our office if you should have any questions.

Very truly yours,

Steven R. Schlesinger

Enclosure

cc:    Marc Hirschfield, Esq. (via regular mail)
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, New York 10111

Howard Samuels
Andrew Ross Samuels

D#660720v1