SNR Denton US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
carole.neville@snrdenton.com

*Attorneys for Rosenthal Family LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Rosenthal Family LLC hereby objects to the Notice of Trustee's Determination of Claim

dated September 8, 2010 ("Determination Letter"), attached hereto as Exhibit A, as described

herein.

**BACKGROUND**

1.    Robert and Marion Rosenthal opened two accounts (account nos. 1-R0110-3 and

1-R0108-3) in BMIS in the 1990's in their own names, in the names of their revocable trusts,

and in the name of a family partnership.  The name of account 1-R0108-3 was changed in 2003

from Robert M. Rosenthal and Marion Rosenthal to the Rosenthal Family LLC with no change

in the account number  (the "Rosenthal Family LLC Customer Account").[1]   The name of

---

[1]   All personal information relating to Rosenthal Family LLC Customer Account has been redacted for security reasons.

account 1-R0110-3 changed from Marion Rosenthal to Marion Rosenthal Revocable Trust and

Robert Rosenthal Revocable Trust (tenants in common) with no change in account numbers.

2.      Each of the members of Rosenthal Family LLC is a "customer" of Bernard L.

Madoff Investment Securities LLC ("BLMIS") as defined by the Securities Investor Protection

Act ("SIPA").

3.      From the creation of the accounts and the transformation to the Rosenthal Family

LLC Customer Account, Rosenthal Family LLC received regular communications from Madoff,

including monthly statements, trade confirmations, and quarterly portfolio management reports.

4.      The final Madoff statement dated November 30, 2008 (the "Final Madoff

Statement") for the Rosenthal Family LLC Customer Account shows that Rosenthal Family

LLC owned securities with a market value of $2,760,519 in the Rosenthal Family LLC

Customer Account.  A copy of the Final Madoff Statement is annexed to the Rosenthal Family

LLC Customer Claim (defined below).

5.      The Rosenthals deposited a total of $14,845,000.00 into the accounts and

withdrew a total $11,000,000 from both accounts.  Other than two withdrawals--$1,000,000

from account 1-R0108-3 in April 1998 and $10,000,000 in April 2006 for taxes, all transfers

from the accounts were transfers between the accounts and not withdrawals from BMIS by the

customers.  At the time $1,000,000 was withdrawn from account 1- R0108 in 1998, there was

$2,9450,000 of principal invested in that account.  At the time $10,000,000 was withdrawn from

account 1-R0110 in 2006, $13,824,000 of principal investment from direct deposits and

transfers into the account and $27,091,085 of reported value had been transferred to that

account. Based upon the interaction between the accounts, these accounts should be treated as a

single account.

6.      On December 11, 2008, an action was commenced against Madoff by the Securities & Exchange Commission in the United States District Court for the Southern District of New York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA.  *See* Order, Securities and Exchange Commission v. Madoff, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4].  Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA.  *Id.*; 15 U.S.C. § 78fff-1(a).

7.      On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines.  *See* Order [Dkt. No. 12].

8.      The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the Madoff Trustee "shall notify such claimant by mail of their determination that the claim is disallowed, in whole or in part, **and the reason therefor** . . . "  *See* Order at 6 (emphasis added) [Dkt. No. 12].

9.      On or about June 10, 2009, Rosenthal Family LLC timely filed a claim for the Rosenthal Family LLC Customer Account for securities (the "Rosenthal Family LLC Customer Claim") based on the November 30, 2008 Final Madoff Statement in the amount of $.  A copy of the Rosenthal Family LLC Customer Claim with the Final Madoff Statement is attached hereto as Exhibit B.

10.     On March 1, 2010, the Court issued a decision affirming the Trustee's net investment method for determining customer claims.  That decision has been appealed, and a final resolution on the issue is pending.

3

11.     On September 8, 2010, the Trustee sent Rosenthal Family LLC the

Determination Letter rejecting the Rosenthal Family LLC Customer Claim and stating that

Rosenthal Family LLC is not entitled to a payment because (a) no securities were purchased for

the Rosenthal Family LLC Customer Account and (b) the Rosenthal Family LLC Customer

Account does not have a positive net equity because no funds were deposited into the account

based upon a transfer from another BLMIS account.

## GROUNDS FOR OBJECTION

### I.     The Determination Letter Fails To Comply With The Court's Order.

12.     The Determination Letter fails to comply with this Court's December 23, 2008

Order, which directs the Trustee to satisfy customer claims in accordance "with the Debtor's

books and records."  Dec. 23, 2008 Order at 5 [Dkt. No. 12].  The Rosenthal Family LLC

Customer Claim was evidenced by the Final Madoff Statement showing a value of  over $2

million and listing the securities purportedly purchased for the account, which reflects the

"Debtor's books and records" and by which the Trustee is bound absent proof that the owner of

the Rosenthal Family LLC Customer Account did not have a "legitimate expectation" that the

balance on the Final Madoff Statement, confirmations, credit advices and portfolio management

report represented its property.  Moreover, the Rosenthal family through various entities

invested in BLMIS for decades and its accounts were held and managed in all respects as if the

accounts held real securities.

### II.     The Trustee Does Not Set Forth the Legal Basis for Disallowing the Claim in Full.

13.     The Trustee failed to set forth a legal basis for the position he has taken for the

calculation of the claim.  *See* Determination Letter.  The Determination Letter:

(a)          does not clearly provide "the reason" for the disallowance, as required

by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)       is insufficient to rebut the prima facie validity of the Rosenthal Family

LLC Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr.

P. 3001(f);

(c)       violates general principles of applicable law requiring that an objection

to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the

objection is based, *see, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("an objection to a

claim should . . . meet the [pleading] standards of an answer"); *In re Enron Corp.*, No. 01-

16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same); and

(d)       includes an exhibit, which purportedly calculates the money deposited

less subsequent withdrawals without any supporting documentation, that is completely

unsubstantiated and incorrect; and to the extent that the Trustee's "reconciliation" differs from

the Rosenthal Family LLC Customer Claim, the Trustee should produce evidence supporting his

"reconciliation."  The Trustee has not been able to produce complete documentation of

transactions in prior accounts or to establish a fraud in the BMIS operations throughout the

period when the Rosenthal Family LLC Account and the accounts from which it received

transfers were maintained.

(e)       the amounts set forth in the accompanying schedule are inconsistent with

the documents of the Rosenthal Family LLC.

## III.    The Trustee Has Failed to Honor Customer Expectation.

14.    The Trustee has failed to fulfill the requirement that he honor the legitimate

expectations of a customer.

15.    The legislative history of SIPA makes clear that Congress' intent in enacting the

legislation was to protect the legitimate expectations of customers.  Congressman Robert

Eckhardt, (D) Texas, sponsor of amendments to SIPA to increase the amount of advance

5

available to customers and expedite the process, commented on the purpose of the legislation as

follows:

> Under present law, because securities belonging to customers may have been lost, improperly hypothecated, misappropriated, *never purchased* or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy the customers' legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (*emphasis added*).

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive, that is, securities which they maintained in their brokerage account . . . By seeking to make customer accounts whole and returning them to customers in the form they existed on the filing date, the amendments . . . would satisfy customers' legitimate expectations . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added).

16.    The Securities Investor Protection Corporation ("SIPC"), charged with

administering SIPA, acknowledged that it was bound by the statute and the rules to satisfy the

reasonable expectations of customers even when the securities had never been purchased, in the

brief it submitted to the Court of Appeals for the Second Circuit as follows:

> Reasonable and legitimate expectations on the filing date are controlling even where inconsistent with transaction reality. Thus, for example, where a claimant orders a securities purchase and receives a written confirmation statement reflecting that purchase, the claimant generally has a reasonable expectation that he or she holds the securities identified in the confirmation and therefore generally is entitled to recover those securities (within the limits of SIPA) even where the purchase never actually occurred and the debtor instead converted the cash deposited by the claimant to fund that purchase . . . [T]his emphasis on the reasonable and

6

> legitimate customer expectations frequently yields much greater customer protection than would be the case if the transaction reality, not the claimants expectations, were controlling, as this court's earlier opinion in this liquidation well illustrates.

Brief of the Appellant SIPC at 23-24.

17.     Based on regular statements, confirmation reports and other communications received from Madoff, the Rosenthal Family LLC, at all times reasonably believed and expected that Madoff executed such transactions and that the Rosenthal Family LLC Customer Account actually held such securities.

18.     The Trustee's position in the Madoff case is completely inconsistent with the purpose and goals of SIPA and the position that SIPC has taken unequivocally with respect to the treatment of customers in accordance with their reasonable expectations reflected in the communications from the broker-dealer.

**IV.     The Trustee's Definition of "Net Equity" is Inconsistent With SIPA and SIPA Rules, Practice and Pronouncement and Case Law Interpreting the Statute and Rules.**

19.     The Trustee failed to set forth a legal basis for the position he has taken that he can reduce the amount of the claim by appreciation in the Rosenthal Family LLC Customer Account or calculate the claim by counting only investment principal less withdrawals without regard to the securities reflected in the Final Madoff Statement.  The Court's decision affirming the Trustee's net investment method has been appealed and a final resolution on the issue is pending, and thus, no legal basis for the method exists.  The Trustee's calculation violates SIPA.

7

20.     15 U.S.C. § 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee calculates "net equity" by reducing the principal contributed to the account less any withdrawals or appreciation, without regard to any gains reflected in the Final Madoff Statement and any prior statement delivered by Madoff to the customer.  This is incorrect for the following reasons:

(a)     Notwithstanding the Court's determination, the Trustee's method of calculating the customer claim is inconsistent with the language of the statute.  SIPA defines a customer's net equity claim as the value of the customer's "securities positions" in the customer's account, less any amount the customer owes the debtor, as of the date of the filing of the SIPA liquidation:

> The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . . ; minus
>
> (B) any indebtedness of such customer to the debtor on the filing date . . .[2]

15 U.S.C. § 78lll(11).  The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.

(b)     Notwithstanding the Court's determination, the Trustee's method is inconsistent with the Rules promulgated under SIPA.  The Series 500 Rules promulgated under

---

[2]  The "indebtedness" of the customer to the debtor refers to cash or securities owed to the debtor, which is most often in the context of a customer having borrowed from the debtor on margin.  *See, e.g.*, H.R. Rep. No. 95-746 at 21 (1977) (describing customers owing cash or securities to the stockbroker as "margin customers"); *Rich v. NYSE*, 522 F.2d 153, 156 (2d Cir. 1975) (noting that, under the 1970 statutory regime, when there were shortages in available securities to satisfy "net equity" claims, customers received cash for their securities "less, in the case of holders of margin accounts, amounts owed" to the broker); *In re First St. Sec. Corp.*, 34 B.R. 492, 497 (Bankr. S.D. Fla. 1983) (offsetting against claim amount of indebtedness customer owed to the debtor where unauthorized stock purchase was funded in part by borrowing on margin).

SIPA by SIPC provide for the classification of claims for cash or securities in accordance with

the written transaction confirmations sent by the broker-dealer to the customer.  17 C.F.R. §

300.500.  Pursuant to the Rule, a customer has a claim for securities if the customer has received

written confirmation that the securities have been purchased or sold for the account.

(c)        Notwithstanding the Court's determination, the Trustee's method is

inconsistent with the legislative history of the statute.  SIPA's legislative history emphasizes

Congress' intention that the statute protect customer expectations by ensuring that customers of

retail brokerage firms can rely on their account statements.  The Madoff statements and

confirmations sent to Rosenthal Family LLC indicated that the account a list of blue chip

securities.  It makes no difference whether the securities were ever actually purchased.

(d)        The Trustee's formula is an improper and wholly inadequate measure

of loss.  The Rosenthal Family LLC investors deposited funds with Madoff with the expectation

the amount would grow—the Rosenthal Family LLC Customer Account statements showed

such growth, and the balance on the Final Madoff Statement reflects the benefit of this bargain.

In *Visconsi v. Lehman Brothers, Inc.*, No. 06-3304, 244 Fed. Appx. 708, 713-14 (6th Cir. 2007),

the Court declined to set aside an arbitration award that appeared to apply an expectancy

measure of damages against a successor in a Ponzi scheme case and rejected the money in /

money out formula as not reflecting the expectations of the parties.  *Id*.  The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria, not to hide under a rock or lock in a safe, but for
> the express purpose of investment, with a hope – indeed a
> reasonable expectation – that it would grow. Thus, the out-of-
> pocket theory, which seeks to restore to Plaintiffs only the $21
> million they originally invested less their subsequent withdrawals,
> is a wholly inadequate measure of damages. Had Gruttadauria
> invested Plaintiffs' money as requested, their funds would have
> likely grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they

hired an honest broker . . . , would have placed their money in the stock market during one of the strongest bull markets in recent memory. In fact, the fictitious statements issued by Lehman, which were designed to track Plaintiffs' funds as if they had been properly invested, indicate that Plaintiffs' accounts would have grown to more than $37.9 million (even accounting for the withdrawal of more than $31.3 million). Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Id*. This applies precisely to the Rosenthal Family LLC Customer Claim.

(e)     Notwithstanding the Court's determination, the Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings.  For example, in the New Times Securities Services, Inc. ("New Times") SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that if broker-dealer customers have been led to believe that "real existing" securities had been purchased for their accounts, then those customers are entitled to the full value of their securities positions as of the filing date, even if that value represents a substantial increase from the purported purchase price of the securities and even if the securities had never been purchased.

Harbeck testified as follows:

> Harbeck: [I]f you file within sixty days, you'll get the securities, without question. Whether – if they triple in value, you'll get the securities . . . Even if they're not there.

> Court: Even if they're not there.

> Harbeck: Correct.

> Court: In other words, if the money was diverted, converted –

> Harbeck: And the securities were never purchased.

> Court. Okay.

10

> Harbeck: And if those positions triple, we will gladly give the
> people their securities positions.

Transcript at 37-39, *In re New Times Sec. Servs., Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000).

Moreover, SIPC faced very similar circumstances in the New Times liquidation and took a very different position than it is taking in the Madoff case in support of the Trustee. There, the New Times Trustee's position on "net equity" was in full accord with SIPA, and thus directly contrary to the Trustee's position in this case. Specifically, with respect to any claims that were based on confirmations and account statements reflecting securities positions in "real" securities that could have been purchased (i.e., securities that actually existed on the public market and whose valuations were objectively and publicly verifiable by the customers), the New Times Trustee allowed all such net equity claims to the full extent of the filing date valuations of those securities, even though none of the securities identified in those records had ever, in fact, been purchased by the broker-dealer.[3]

(f)    The Trustee's determination and the Court's determination are inconsistent with the case law. The Second Circuit's discussion of SIPC's claims processing in *New Times,* the only case in this jurisdiction dealing with the issue in the Madoff case, further

---

[3] As with Madoff Securities and Bernard Madoff, New Times and its principal, William Goren, defrauded scores of investors by providing them with confirmations and account statements reflecting purported securities investments made on their behalf when, in fact, no such investments had been made and their money had, instead, been misappropriated for other purposes. Two of the investment opportunities Goren purported to offer were: (1) money-market funds that were entirely fictitious (the "Fictitious New Age Funds"); and (2) mutual funds that were entirely real, such as those offered by The Vanguard Group and Putnam Investments (the "Real Securities"). *See In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 71-72 (2d Cir. 2004) ("*New Times I*"). Goren's was "a classic Ponzi scheme," *id.* at 72 n.2, wherein new investors' money was used to pay earlier investors.

Approximately 900 customers filed claims in the New Times liquidation: 726 for whom the "Real Securities" were purportedly purchased; 174 for whom the "Fictitious New Age Funds" were purportedly purchased. Consistent with SIPA and its legislative history, the New Times Trustee appropriately applied SIPA's net equity definition to the "Real Securities" customers' claims – meaning he paid them according to the full value of those securities positions as of the date of the liquidation filing. When challenged by "Fictitious New Age Funds" customers who had objected that they had not received the same treatment, SIPC and the New Times Trustee (with the apparent concurrence of the SEC) vigorously defended their approach in court.

indicates that, with respect to customers who thought they were invested in listed securities,

SIPC properly paid customer claims based on the customers' final account statements, even

where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably. Although they were not actually invested in
> those real funds – because Goren never executed the transactions –
> the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed. As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up
> to $500,000 in SIPC advances. The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims. Furthermore,
> the Trustee notes that, if they were checking on their mutual
> funds, the "securities claimants," . . . could have confirmed the
> existence of those funds and tracked the funds' performance
> against Goren's account statements.

*In re New Times Sec. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at

23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005):

> [R]easonable and legitimate claimant expectations on the filing
> date are controlling even where inconsistent with transactional
> reality. Thus, for example, where a claimant orders a securities
> purchase and receives a written confirmation statement reflecting
> that purchase, the claimant generally has a reasonable expectation
> that he or she holds the securities identified in the confirmation
> and therefore generally is entitled to recover those securities
> (within the limits imposed by SIPA), even where the purchase
> never actually occurred and the debtor instead converted the cash
> deposited by the claimant to fund that purchase . . . [T]his
> emphasis on reasonable and legitimate claimant expectations
> frequently yields much greater 'customer' protection than would
> be the case if transactional reality, not claimant expectations, were
> controlling, as this Court's earlier opinion in this liquidation well
> illustrates.

Rosenthal Family LLC is in the same position as those investors in the *New Times* case who

received confirmations and statements reflecting real securities. The statements received

reflected positions in various securities just as the statement in *New Times* reflected positions in securities that were never purchased.

(g)     The Trustee's position in the Madoff case is contradicted, not only by SIPC's prior treatment of customers in the *New Times* case, but also by a statement that SIPC's general counsel, Josephine Wang, gave to the press on December 16, 2008 wherein Ms. Wang acknowledged that a Madoff customer is entitled to the securities in their account:

> Based on a conversation with the SIPC general counsel, Josephine Wang, if clients were presented statements and had reason to believe that the securities were in fact owned, the SIPC will be required to buy these securities in the open market to make the customer whole up to $500K each.  So if Madoff client number 1234 was given a statement showing they owned 1000 GOOG shares, even if a transaction never took place, the SIPC has to buy and replace the 1000 GOOG shares.

December 16, 2008 Insiders' Blog, www.occ.treas.gov/ftp/alert/2008-37.html.  This is a statement that Ms. Wang has not disavowed.

(h)     The Trustee's methodology also conflicts with other federal laws.  For example, Rev. Proc. 2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually.  Yet the Trustee's position is that the income earned by customers on their investments is not their money.  In addition, some customers were required to take distribution from their retirement accounts.  Yet the Trustee is deducting from their customer claim the mandatory withdrawals that the customers were required by law to take.

21.     In sum, the Trustee has created his own definition of "net equity" that is not based on statutes, prior practice or case law.  The procedure is designed not for the benefit of Madoff victims but rather so that the Trustee can avoid paying SIPC insurance to the thousands

of Madoff investors who, like individual partners of Rosenthal Family LLC, have depended

upon their Madoff investments for their current and future living expenses.

22.     Because of his refusal to comply with SIPA's mandate that he "promptly" satisfy

customer claims based on their last statements, 15 U.S.C. § 78fff- 3(a) and 4(c), the Trustee

employs a vast team of forensic accountants to pore through decades of records to determine

each customer's net investment before SIPC pays any amount to a customer.  Clearly, this is

inconsistent with the statutory scheme and the legislative intent.  The Rosenthal Family LLC's

"securities position" is readily ascertainable from the Final Madoff Statement.

**V.     The Trustee Has No Legal Basis For Reducing The Claim.**

23.     The Trustee's action in reducing the amount shown on the Rosenthal Family LLC

Customer Claim by any prior gains or withdrawals reflected on the Final Madoff Statement or

prior statements is an attempt to avoid such gains without alleging any grounds for avoidance or

proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions.  Any

such disallowance is improper and unjustified, and the Determination Letter should be stricken

on that ground alone.  *See* Fed. R. Bankr. P. 7001(1) & 7008.  Moreover, the disallowance or

reduction of transfer investments from another BMIS account has no legal basis.  Rosenthal

Family LLC took such transfers for value and without notice of impropriety or fraud.

24.     The accounts held by the Rosenthal Family must be seen together because of the

transfers from one account into the other.

**VI.    The Trustee's Reductions Are Barred By The Statue Of Limitations.**

25.     The Trustee's action in reducing the amount shown on the Rosenthal Family LLC

Customer Claim by gains or withdrawals from the account and any prior BMIS account from

which funds were transferred is an attempt to avoid such gains and withdrawals without alleging

any grounds for avoidance or proving that such gains are avoidable under the state law

14

avoidance provisions or other theories of law.  The avoidance of those gains and withdrawals

have been taken well beyond any limitations period for avoidance of a claim under either state

or federal law.

**VII.    The Trustee's Denial Is Inconsistent With SIPA.**

26.      SIPA provides that (a) SIPC shall pay the first $500,000 of each customer claim,

and (b) customers have an unsecured claim against customer property for the balance of their

claims which is paid pro rata with other customers.  *See* 15 U.S.C. § 78fff-3(a) ("In order to

provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC

shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . .

claims."); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share

ratably in . . . customer property on the basis and to the extent of their net equities").  As

evidenced by the Final Madoff Statement, Rosenthal Family LLC has a valid claim in the

amount of $1,096,060.92.  Each Rosenthal Family LLC investor is entitled to an advance of

$500,000 and claims against customer property for the remainder.

**VIII.    The Trustee Has Not Met His Burden of Proving the Net Equity Calculation.**

27.      The Determination Letter purports to calculate Rosenthal Family LLC's "net

equity" on the basis of withdrawal transactions for which Rosenthal Family LLC has incomplete

records.  It is unreasonable to anticipate that customers would have access to and/or maintain all

account records given (a) general limitations on record retention requirements under tax law and

other applicable rules governing record retention; (b) the apparent safety and solvency of BMIS;

and (c) the fact that historical records such as those in question are usually available from

financial institutions, including broker-dealers, upon request.  Under these circumstances, the

Trustee should be required to prove the alleged withdrawal transactions by furnishing the

appropriate records to Rosenthal Family LLC and, absent such records, such transactions should

be deleted from the calculation of Rosenthal Family LLC's "net equity." Likewise, the Trustee

should be required to prove that the deposit transactions are completely listed by furnishing the

appropriate records to Rosenthal Family LLC.

28.    The Trustee has not proven that the fraud of BLMIS began before the early

1990's or that all accounts were fraudulently managed from the early 1990's until the broader

fraud was revealed.  In 1992, Bernard Madoff provided information to t6he SEC indicating that

he was executing actual trades at that time and the SEC verified that the trades were real at that

time. Without evidence of a fraud before the early 1990's there is no justification for Trustee to

reduce the balance in an account that was established earlier or to reduce a transfer from an

account that was established earlier.

29.    Finally, the Trustee's method automatically avoids all transactions in excess of

the customer's deposited principal without permitting the customer the opportunity to raise

defenses as to each transaction.

**IX.    Rosenthal Family LLC Is Entitled To Interest On Its Investments.**

30.    In the event that the Court should determine that customer claims should not be

allowed in the amount of the Final Madoff Statement, then in the alternative, Rosenthal Family

LLC is entitled to recover interest or appreciation on its investments based upon the following.

(i)    Under New York law, which is applicable here, funds deposited with the

Debtors under these circumstances are entitled to interest.  *See, e.g.,* N.Y. C.P.L.R. § 5004; N.Y.

Gen. Oblig. § 5-501, *et seq*.  Accordingly, the Rosenthal Family LLC Customer Claim should be

recalculated by adding interest to all funds deposited.

(ii)    Under New York law, which is applicable here, customers are entitled to

any returns Madoff earned on the deposited funds under principles of unjust enrichment.

Accordingly, customer claims should be recalculated by adding the amounts earned by Madoff

16

on the customer's deposits. *See, e.g., Steinberg v. Sherman*, No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin*, 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

> (iii)   Rosenthal Family LLC is entitled to interest on its investment under federal securities laws.  In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court analyzed the different measures of recovery of "actual damages" for fraud, primarily including rescission and restitution.  The *Randall* Court concluded that Congress intended to deter wrongdoers, and hence, that wide latitude in choosing the measure of damages was warranted. *See id.* At 664 (citing *Affiliated Ute Citizens of Utah v. United State*s, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)).  The *Randall* Court continued by holding that:

> > This deterrent purpose is ill-served by a too rigid insistence on
> > limiting plaintiffs to recovery of their "net economic loss."

> *Id.* At 664 (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 940 (2d Cir. 1984)).

> (iv)   Rosenthal Family LLC is entitled to an adjustment from the initial deposit in the account to reflect present day values.

## RESERVATION OF RIGHTS

31.   Rosenthal Family LLC reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Rosenthal Family LLC's right to object on any additional grounds.

32.   Rosenthal Family LLC reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery.  *See* Fed. R. Bankr. P. 9014.

33.    Rosenthal Family LLC reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

34.    Rosenthal Family LLC incorporates by reference all reservations of rights set forth in the Rosenthal Family LLC Customer Claim.

## RELIEF REQUESTED

For the reasons stated herein, the Rosenthal Family LLC Customer Claim should be allowed in its entirety in the amount of $2,760,519.11, which is the amount stated on the Final Madoff Statement, plus interest from the date of the Determination Letter.

For the reasons stated herein, this Court should direct SIPC to immediately replace $500,000 of the securities in the Rosenthal Family LLC Customer Account based upon the values reflected on the Final Madoff Statement and/or advance Rosenthal Family LLC partners $500,000 from the SIPC fund.

For the reasons stated herein, the Determination Letter should be stricken.

Rosenthal Family LLC requests such other relief as may be just and equitable.

Dated:   October 4, 2010                    SNR Denton US LLP


By:    /s/ Carole Neville
          Carole Neville
          1221 Avenue of the Americas
          New York, New York 10020
          Telephone:  (212) 768-6700
          Facsimile:  (212) 768-6800

          *Attorneys for Rosenthal Family LLC*

18

## CERTIFICATE OF SERVICE

I, Carole Neville, hereby certify that on October 4, 2010, I caused a true and correct copy

of the foregoing **Objection to Trustee's Determination of Claim** on behalf of Rosenthal

Family LLC to be filed electronically with the Court and served upon the parties in this action

who receive electronic service through CM/ECF, and served by hand upon:

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

Dated:  October 4, 2010

 /s/ Carole Neville
Carole Neville

## EXHIBIT A

**(Determination Letter)**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

September 8, 2010

Robert M. Rosenthal and
Marion Rosenthal a/k/a
Rosenthal Family LLC
c/o Rosenthal Automotive



Dear Robert M. Rosenthal and Marion Rosenthal a/k/a/ Rosenthal Family LLC:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1R0108 designated as Claim Number 009487:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $14,297,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is the same as the amount that was deposited with BLMIS for the purchase of

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

securities (total of $14,297,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since you have withdrawn all of the funds deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after September 8, 2010, the date on which the Trustee mailed this notice.

2

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

| - Table 1 - | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 12/27/1995 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 1/8/1996 | CHECK WIRE | $945,000.00 | $945,000.00 |
| 2/14/1997 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 3/30/1998 | CHECK WIRE | $4,000,000.00 | $4,000,000.00 |
| 9/16/1998 | CHECK | $1,400,000.00 | $1,400,000.00 |
| 4/8/1999 | CHECK | $450,000.00 | $450,000.00 |
| 1/11/2000 | TRANS FROM 1R012030 | $52,000.00 | $52,000.00 |
| 1/23/2001 | CHECK | $450,000.00 | $450,000.00 |
| 11/1/2001 | CHECK WIRE | $4,000,000.00 | $4,000,000.00 |
| 1/14/2003 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| **Total Deposits:** | | $14,297,000.00 | $14,297,000.00 |
| | | | |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 4/17/1998 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 3/26/2003 | TRANS TO 1R011030 | ($1,000,000.00) | ($1,000,000.00) |
| 6/11/2003 | TRANS TO 1R011030 | ($4,447,546.00) | ($4,447,546.00) |
| 5/3/2004 | TRANS TO 1R011030 A/O 4/29/04 | ($5,200,000.00) | ($5,200,000.00) |
| 4/29/2005 | TRANS TO 1R011030 | ($6,476,170.00) | ($2,649,454.00) |
| 5/1/2006 | TRANS TO 1R011030 A/O 4/29 | ($9,073,348.00) | $0.00 |
| 6/20/2006 | TRANS TO 1R011030 | ($894,567.92) | $0.00 |
| **Total Withdrawals:** | | ($28,091,631.92) | ($14,297,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($13,794,631.92) | $0.00 |

# **EXHIBIT B**

**(Customer Claim)**



# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

**RECEIVED**

JUN 1 0 2009

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_ (212) 768-6889 _____

HOME: _____

Taxpayer I.D. Number (Social Security No.)

_____

Account Number:    1-R0108-3-0, 1-R0108-4-0
                   1-R0110-3-0, 1-R0110-4-0

Robert M. Rosenthal, Marion Rosenthal a/k/a
Rosenthal Family LLC
c/o Rosenthal Automotive



Marion Rosenthal a/k/a Marion Rosenthal
Revocable Trust, Robert Rosenthal Revocable
Trust (Tenants in Common)



**REDACTED**

(If incorrect, please change)

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1.    Claim for money balances as of **December 11, 2008_:**
      a.    The Broker owes me a Credit (Cr.) Balance of        $_____
      b.    I owe the Broker a Debit (Dr.) Balance of            $ _____

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                      $_____

d.    If balance is zero, insert "None."                   _____NONE_____

2.    Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number **of** Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| **SEE STATEMENT DATED NOVEMBER 30, 2008** | | ✓ | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

10276456

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. **PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | ✓ |

9.      Have you or any member of your family
        ever filed a claim under the Securities
        Investor Protection Act of 1970? if
        so, give name of that broker.                    _____   ✓ _____

Please list the full name and address of anyone assisting you in the
preparation of this claim form:  Carole Neville, Sonnenschein Nath &
Rosenthal LLP, 1221 Avenue of the Americas, 25th Floor, New York, NY 10020 .

If you cannot compute the amount of your claim, you may file an estimated claim. In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.** *

Date _____6/9/09_____   Signature _____

Date _____6/9/09_____   Signature ___Marion Rosenthal_____

(If ownership of the account is shared, all must sign above. Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet. If other
than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity
and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

---

\* This form includes and incorporates in full the attached Addendum.  Customer
reserves the right to amend this form for any purpose, including, without
limitation, to add interest, costs and other losses associated with this account.

10276456

As shown by the documentation attached hereto, Robert and Marion Rosenthal opened two accounts (account nos. 1-R0110-3 and 1-R0108-3) in BMIS in the 1990's in their own names, in the names of their revocable trusts, and in the name of a family partnership. The name of account 1-R0108-3 was changed in 2003 from Robert M. Rosenthal and Marion Rosenthal to the Rosenthal Family LLC with no change in the account number. The name of account 1-R0110-3 changed from Marion Rosenthal to Marion Rosenthal Revocable Trust and Robert Rosenthal Revocable Trust (tenants in common) with no change in account numbers.

The Rosenthals deposited a total of $14,845,000.00 into the accounts and withdrew a total $11,000,000 from both accounts. Other than two withdrawals--$1,000,000 from account 1-R0108-3 in April 1998 and $10,000,000 in April 2006 for taxes, all transfers from the accounts were transfers between the accounts and not withdrawals from BMIS by the customers. At the time $1,000,000 was withdrawn from account 1- R0108 in 1998, there was $2,9450,000 of principal invested in that account. At the time $10,000,000 was withdrawn from account 1- R0110 in 2006, $13,824,000 of principal investment from direct deposits and transfers into the account and $27,091,085 of reported value had been transferred to that account.

Based upon the interaction between the accounts, these accounts should be treated as a single account.

# CLAIM ADDENDUM

**Customer:**   **Robert M. Rosenthal, Marion Rosenthal a/k/a Rosenthal Family LLC**

**Marion Rosenthal a/k/a Marion Rosenthal Revocable Trust, Robert Rosenthal Revocable Trust (Tenants in Common)**

**Address:**   **c/o Rosenthal Automotive**    **REDACTED**

**Account ##:**   **1-R0108-3-0, 1-R0108-4-0
1-R0110-3-0, 1-R0110-4-0**

Document index:

1.  Statement dated November 30, 2008 – Net Equity = $2,760,519.11

2.  Investment Documents

    a.   Statement dated December 31, 1995                              $1,000,000.00

    b.   Statement dated January 31, 1996                                 $945,000.00

    c.   Statement dated February 28, 1997                              $1,000,000.00

    d.   Trust Account Summary showing transfer dated March 27,1998   $4,000,000.00

    e.   Bank Statement showing transfer dated September 17,1998      $1,400,000.00

    f.   Bank Statement showing transfer dated April 12, 1999           $450,000.00

    g.   Statement dated January 31, 2001                                $450,000.00
         Check confirmation dated January 23, 2001

    h.   Statement dated November 30, 2001                             $4,000,000.00
         Check confirmation dated November 1, 2001
         Portfolio Management Report dated 12/31/01
         confirming two prior deposits

    i.   Statement dated January 31, 2003                              $1,000,000.00

3.  Transfer Documents

    a.   Bank statement dated April 30, 1998                           ($1,000,000.00)

    b.   Statement dated March 31, 2003 transfer to #1R0110-3          ($1,000,000.00)

c.    Statement dated June 30, 2003 transfer to #1R0110-3    ($4,447,546.00)
Portfolio Management Report dated as of 12/31/03
confirming two prior transactions

d.    Statement dated May 31, 2004 transfer to #1R0110-3    ($5,200,000.00)

e.    Statement dated April 30, 2005 transfer to #1-R0110-3    ($6,476,170.00)
Transfer debit dated April 29, 2005
Portfolio Management Report as of 6/30/05

f.    Statement dated May 31, 2006 transfer to #1-R0110-3    ($9,073,348.00)
Transfer debit confirmation dated May 1, 2006

g.    Statement dated June 30, 2006 transfer to #1-R0110-3    ($894,567.92)
Transfer debit confirmation dated June 20, 2006
Portfolio Management Report as of 12/31/06
confirming two prior transfers

| | |
|---|---|
| Total Investments: | $14,245,000.00 |
| Total transfers to #1-R0110-3: | $28,091,631.92 |
| Total Transfer out of #1-R0110-3  Madoff account: | $1,000,000.00 |
| Total Transfer out of #1R0108-3 Madoff account: | $10,000,000.00 |

## CLAIM ADDENDUM continued

**Customer:**   **Marion Rosenthal a/k/a Marion Rosenthal Revocable Trust, Robert Rosenthal Revocable Trust (Tenants in Common)**

**Address:**    **REDACTED**

**Account #:**   **1-R0110-3-0, 1-R0110-4-0**
**1-R0108-3-0, 1-R0110-4-0**

Document index:

1.   Statement dated November 30, 2008 – Net Equity = $35,025,193.26

2.   Investment Documents

|   |   |   |
|---|---|---|
| a. | Statement dated December 31, 1995 | $320,000.00 |
| b. | Missing deposit document | $280,000.00 |
| c. | Statement dated March 31, 2003 transfer from #1-R0108-3 | $1,000,000.00 |
| d. | Statement dated June 30, 2003 transfer from #1-R0108-3<br>Portfolio Management Report dated as of 12/31/03<br>confirming two prior transfers | $4,447,546.00 |
| e. | Statement dated May 31, 2004 transfer from #1-R0108-3 | $5,200,000.00 |
| f. | Statement dated April 30, 2005 transfer from #1-R0108-3<br>Portfolio Management Report as of 9/30/05<br>Transfer credit confirmation dated April 29, 2005 | $6,476,170.00 |
| g. | Statement dated May 31, 2006 transfer from #1-R0108-3<br>Transfer credit confirmation dated May 1, 2006<br>from #1-R0108-3 | $9,073,348.00 |
| h. | Statement dated June 30, 2006 transfer to #1-R0110-3<br>Transfer credit confirmation dated June 20, 2006 from #1-R0108-3<br>Portfolio Management Report as of 12/31/06<br>confirming two prior transfers | $894,567.92 |

3.   Transfer Documents

|   |   |   |
|---|---|---|
| a. | Statement dated April 30, 2008<br>Debit confirmation dated April 9, 2008 | ($10,000,000.00) |

Total transfers from #1-R0108-3:      $27,691,631.90

Total Transfers out of Madoff Accounts:  $10,000,000.00

10130306

**STATEMENT DATED NOVEMBER 30, 2008**

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

REDACTED

ROSENTHAL FAMILY LLC
ROSENTHAL AUTOMOTIVE

*Latest statement*

| PERIOD ENDING | YOUR ACCOUNT NUMBER | PAGE |
| --- | --- | --- |
| 11/30/08 | 1-R0108-3-0 | 1 |

| QNT OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
| --- | --- | --- | --- | --- | --- | --- |
| | | | BALANCE FORWARD | | | 164,699.30 |
| 2,478 | | 199 | WELLS FARGO & CO NEW | 29.800 | | 73,943.40 |
| 1,770 | | 701 | HEWLETT PACKARD CO | 34.900 | | 61,843.00 |
| 1,534 | | 4525 | WAL-MART STORES INC | 55.830 | | 85,704.22 |
| 1,003 | | 5027 | INTERNATIONAL BUSINESS MACHS | 87.270 | | 87,571.81 |
| 3,717 | | 8851 | EXXON MOBIL CORP | 72.880 | | 271,042.96 |
| 4,071 | | 9353 | INTEL CORP | 14.510 | | 59,232.21 |
| 1,947 | | 13679 | JOHNSON & JOHNSON | 59.580 | | 116,079.26 |
| 2,655 | | 18004 | J.P. MORGAN CHASE & CO | 38.530 | | 102,403.15 |
| 1,416 | | 22330 | COCA COLA CO | 44.660 | | 63,294.56 |
| 826 | | 26656 | MCDONALDS CORP | 55.370 | | 45,758.62 |
| 1,534 | | 30982 | MERCK & CO | 28.550 | | 43,856.70 |
| 5,605 | | 35308 | MICROSOFT CORP | 21.810 | | 122,469.05 |
| 2,832 | | 39634 | ORACLE CORPORATION | 17.300 | | 49,005.60 |
| 1,121 | | 52612 | PEPSICO INC | 56.400 | | 63,279.63 |
| 649 | | 53114 | APPLE INC | 100.780 | | 65,431.22 |
| 4,779 | | 56938 | PFIZER INC | 16.960 | | 81,047.26 |
| 1,121 | | 57440 | ABBOTT LABORATORIES | 54.610 | | 61,251.81 |
| 2,124 | | 61264 | PROCTER & GAMBLE CO | 64.080 | | 136,189.92 |
| 767 | | 61766 | AMGEN INC | 59.160 | | 45,405.72 |
| 1,475 | | 65590 | PHILLIP MORRIS INTERNATIONAL | 43.600 | | 64,369.00 |
| 3,540 | | 66092 | BANK OF AMERICA | 21.590 | | 76,569.60 |
| 1,180 | | 69916 | QUALCOMM INC | 33.770 | | 39,885.60 |
| 3,835 | | 70418 | CITI GROUP INC | 12.510 | | 48,126.85 |
| | | | CONTINUED ON PAGE 2 | | | |

STATEMENT FOR INCOME TAX PURPOSES





**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel (020) 7493 6222

ROSENTHAL FAMILY LLC
C/O ROSENTHAL AUTOMOTIVE

REDACTED

**PAGE** 2

**PERIOD ENDING** 11/30/08

**YOUR TAX PAYER IDENTIFICATION NUMBER** *****

**YOUR ACCOUNT NUMBER** 1-R0108-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 885 | | 74242 | SCHLUMBERGER LTD | 49.480 | 43,824.80 | |
| 11/12 | 2,124 | | 74744 | COMCAST CORP | 16.510 | 35,151.24 | |
| 11/12 | 4,189 | | 78568 | AT&T INC | 27. | 113,270.00 | |
| 11/12 | 1,062 | | 79070 | CONOCOPHILIPS | 52.510 | 55,807.62 | |
| 11/12 | 708 | | 82894 | UNITED PARCEL SVC INC CLASS B | 52.040 | 36,872.32 | |
| 11/12 | 4,307 | | 83396 | CISCO SYSTEMS INC | 16.730 | 72,236.11 | |
| 11/12 | 1,239 | | 87220 | U S BANCORP | 29.530 | 36,635.67 | |
| 11/12 | 1,475 | | 87722 | CHEVRON CORP | 73.430 | 108,368.25 | |
| 11/12 | 7,018 | | 91545 | UNITED TECHNOLOGIES CORP | 53.360 | 374,680.28 | |
| 11/12 | 7,593 | | 92048 | GENERAL ELECTRIC CO | 19.400 | 147,386.59 | |
| 11/12 | 2,006 | | 95872 | VERIZON COMMUNICATIONS | 30.410 | 61,082.46 | |
| 11/12 | 177 | | 96374 | GOOGLE | 337.400 | 59,726.80 | |
| 11/12 | | 2,650,000 | 22809 | U S TREASURY BILL DUE 2/12/2009 | 99.936 | | 2,648,304.00 |
| | | | | DUE 2/12/2009 2/12/2009 | | | |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 69.35 |
| 11/12 | | 59,902 | 17909 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 59,902.00 |
| 11/12 | 24,343 | | 27278 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 24,343.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 2.97 |
| | | | | CONTINUED ON PAGE 3 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**ERNARD L. MADOFF**
VESTMENT SECURITIES LLC
ew York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

REDACTED

ENTHAL FAMILY LLC
ROSENTHAL AUTOMOTIVE

PAGE: 3
PERIOD ENDING: 11/30/08
YOUR ACCOUNT NUMBER: 1-R0108-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: *****-

| IGHT I OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | 24,343 | 52745 | FIDELITY SPARTAN U.S.TREASURY MONEY MARKET | 1 | | 24,343.00 |
| 200,000 | | 57286 | U.S.TREASURY BILL DUE 03/26/2009  3/26/2009 | 99.926 | 199,852.00 | |
| 1,258 | | 61783 | FIDELITY SPARTAN U.S.TREASURY MONEY MARKET | 1 | 1,258.00 | |
| | | | NEW BALANCE | | | 329,545.22 |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 4,189 | | | AT&T INC | 28.560 | | |
| 1,121 | | | ABBOTT LABORATORIES | 52.390 | | |
| 767 | | | AMGEN INC | 55.540 | | |
| 649 | | | APPLE INC | 92.670 | | |
| 3,540 | | | BANK OF AMERICA | 16.250 | | |
| 1,475 | | | CHEVRON CORP | 79.010 | | |
| 4,307 | | | CISCO SYSTEMS INC | 16.540 | | |
| 3,835 | | | CITI GROUP INC | 8.290 | | |
| 1,416 | | | COCA COLA CO | 46.870 | | |
| 2,124 | | | COMCAST CORP CL A | 17.340 | | |
| 1,062 | | | CONOCOPHILLIPS | 52.520 | | |
| 3,717 | | | EXXON MOBIL CORP | 80.150 | | |
| 7,493 | | | GENERAL ELECTRIC CO | 17.170 | | |

CONTINUED ON PAGE 4

STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

ROSENTHAL FAMILY LLC
C/O ROSENTHAL AUTOMOTIVE

REDACTED

PERIOD ENDING 11/30/08

YOUR ACCOUNT NUMBER 1-R0108-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 177 | | | GOOGLE | 292.960 | | |
| | 1,770 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 4,071 | | | INTEL CORP | 13.800 | | |
| | 1,003 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 2,655 | | | J.P. MORGAN CHASE & CO | 31.650 | | |
| | 1,947 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 826 | | | MCDONALDS CORP | 58.750 | | |
| | 1,934 | | | MERCK & CO | 26.720 | | |
| | 5,505 | | | MICROSOFT CORP | 20.220 | | |
| | 2,832 | | | ORACLE CORPORATION | 16.090 | | |
| | 1,221 | | | PEPSICO INC | 55.970 | | |
| | 4,779 | | | PFIZER INC | 16.430 | | |
| | 1,475 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 2,124 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 1,100 | | | QUALCOMM INC | 33.570 | | |
| | 885 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 1,258 | | | FIDELITY SPARTAN | | | |
| | | | | U.S. TREASURY MONEY MARKET | 1 | | |
| | 1,239 | | | U.S. BANCORP | 26.980 | | |
| | 708 | | | UNITED PARCEL SVC INC | 57.600 | | |
| | 200,000 | | | CLASS B | | | |
| | | | | U.S. TREASURY BILL | 99.971 | | |
| | | | | DUE 03/26/2009 3/26/2009 | | | |
| | 708 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | | | | CONTINUED ON PAGE 5 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**Affiliated with**
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

ROSENTHAL FAMILY LLC
C/O ROSENTHAL AUTOMOTIVE

**REDACTED**

PERIOD ENDING: 11/30/08
YOUR TAX PAYER IDENTIFICATION NUMBER: ******
YOUR ACCOUNT NUMBER: 1-R0108-3-0
PAGE: 5

| DATE | BOUGHT Received or Long | SOLD Delivered or Short | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------|------|-----|-------------|-----------------|-------------------|--------------------|
| | 2,006 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,534 | | | WAL-MART STORES INC | 55.880 | | |
| | 2,478 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG            SHORT | | | |
| | | | | 2,800,639,111.31 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**REDACTED**

| MADF | BERNARD L. MADOFF |
| --- | --- |
| | INVESTMENT SECURITIES LLC |
| | New York ☐ London |

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

ROSENTHAL FAMILY LLC
C/O ROSENTHAL AUTOMOTIVE

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

PERIOD ENDING: 11/30/08
PAGE: 6
YOUR ACCOUNT NUMBER: 1-R0108-3-0
YOUR TAX PAYER IDENTIFICATION NUMBER: *****

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 18,621.70 |
| | | | | GROSS PROCEEDS FROM SALES | | | 15,483,062.39 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

...ENTHAL FAMILY LLC
...ROSENTHAL AUTOMOTIVE

REDACTED

| PAGE | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | YOUR ACCOUNT NUMBER |
|---|---|---|---|
| 1 | 11/30/08 | ***** | 1-R0108-4-0 |

| BOUGHT or LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 164,700.00 |
| | 59 | 43960 | S & P 100 INDEX NOVEMBER 450 CALL | 15.800 | | 93,161.00 |
| | | 48286 | S & P 100 INDEX NOVEMBER 450 PUT | 17.800 | 105,079.00 | |
| | 59 | 34390 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 153,361.00 |
| | 59 | 38715 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 177,059.00 | |
| | 59 | 43040 | S & P 100 INDEX NOVEMBER 450 CALL | 3 | 17,759.00 | |
| | 59 | 47365 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | | 218,241.00 |
| | | | NEW BALANCE | | | 329,545.00 |
| | | | SECURITY POSITIONS | | | |
| 59 | | | S & P 100 INDEX DECEMBER 430 CALL | MKT.PRICE 23.300 | | |
| 59 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | MARKET VALUE OF SECURITIES | | | |
| | | | LONG 97,350.00 | SHORT 137,470.00- | | |

STATEMENT FOR INCOME TAX PURPOSES

# INVESTMENT DOCUMENTS

10130306



BERNARD L. MADOFF
Investment Securities
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2400
(800) 334-1343
TELEX 235 130
FAX (212) 486-8178

IN ACCOUNT WITH

PERIOD ENDING: 12/31/95

YOUR TAX PAYER IDENTIFICATION NUMBER: [REDACTED]

YOUR ACCOUNT NUMBER: 1-R0108-3-0

PAGE: 1

BERT M ROSENTHAL
RION ROSENTHAL

REDACTED

| BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | NO BALANCE FORWARD | | | |
| 1,000,000 | | 89473 | CHECK WIRE | JRNL | | 1,000,000.00 |
| | | | U S TREASURY BILL | 98.940 | 989,400.00 | |
| | | | DUE 3/14/1996 | | | |
| | 1,000,000 | 90601 | U S TREASURY BILL | 98.980 | | 989,800.00 |
| | | | DUE 3/14/1996 | | | |
| 1,010,000 | | 93406 | U S TREASURY BILL | 98.770 | 997,577.00 | |
| | | | DUE 3/28/1996 | | | |
| 2,823 | | 96273 | FIDELITY CASH RESERVES SBI | 1 | 2,823.00 | |
| | | | NEW BALANCE | | | |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 2,823 | | | FIDELITY CASH RESERVES SBI | 1 | | |
| 1,010,000 | | | U S TREASURY BILL | 98.770 | | |
| | | | DUE 3/28/1996 | | | |
| | | | MARKET VALUE OF SECURITIES | | | |
| | | | LONG           SHORT | | | |
| | | | 1,000,400.00 | | | |

2,823.00
= 997,577.00
1,000,400

S STATEMENT FOR INCOME TAX PURPOSES

**BERNARD L. MADOFF**
Investment Securities
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2400
(800) 334-1343
TELEX 235 130
FAX (212) 486-8178

IN ACCOUNT WITH

ROBERT M ROSENTHAL
MARION ROSENTHAL J/T WROS

REDACTED

YOUR ACCOUNT NUMBER: 1-R0108-3-0
TAX I.D. NUMBER: REDACTED

PERIOD ENDING 1/31/96 — PAGE 1



| DATE | BOUGHT / RECEIVED OR LONG | SOLD / DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 1/08 1/08 | | | | NO BALANCE FORWARD | | | |
| 1/22 | 900,000 | | 98581 | CHECK WIRE | | | 945,000.00 |
| | | | | U S TREASURY BILL | | | |
| | | | | DUE 3/28/1996 | | 890,100.00 | |
| 1/22 | | 1,910,000 | 5866 | U S TREASURY BILL | 98.906 | | 4,892,619.00 |
| | | | | DUE 3/28/1996 | | | |
| 1/23 | | 2,823 | 8379 | FIDELITY CASH RESERVES SBI | 1 | | 29,823.00 |
| | | | | FIDELITY CASH RESERVES SBI | | | |
| | | | | DIV 1/22/96 | DIV | | 9.68 |
| 1/24 | 627 | | 10997 | AMERICAN INT'L GROUP INC | 93 7/8 | 58,859.63 | |
| 1/24 | 726 | | 13399 | AMERITECH CORP | 58 1/8 | 42,198.75 | |
| 1/24 | 627 | | 15801 | AMOCO CORP | 69 5/8 | 43,654.88 | |
| 1/24 | 198 | | 18203 | ATLANTIC RICHFIELD CO | 112 1/4 | 22,225.50 | |
| 1/24 | 660 | | 20605 | AMERICAN EXPRESS COMPANY | 41 1/2 | 27,390.00 | |
| 1/24 | 662 | | 23007 | BOEING CO | 77 1/4 | 35,689.50 | |
| 1/24 | 495 | | 25409 | BANKAMERICA CORP | 60 3/8 | 29,885.63 | |
| 1/24 | 561 | | 27811 | BELL ATLANTIC CORP | 69 | 38,709.00 | |
| 1/24 | 660 | | 30213 | BRISTOL MYERS SQUIBB COMPANY | 83 5/8 | 55,192.50 | |
| 1/24 | 495 | | 32615 | CHRYSLER CORP | 54 1/4 | 26,853.75 | |
| 1/24 | 561 | | 35017 | CITICORP | 68 5/8 | 38,498.63 | |
| 1/24 | 561 | | 37419 | COLUMBIA/HCA HEALTHCARE CP WT | 54 | 30,294.00 | |
| 1/24 | 726 | | 39821 | DU PONT E I DE NEMOURS & CO | 70 7/8 | 51,455.25 | |
| 1/24 | 693 | | 42223 | THE WALT DISNEY CO | 59 3/4 | 41,406.75 | |
| 1/24 | 330 | | 44625 | DOW CHEMICAL CO | 68 7/8 | 22,728.75 | |
| | | | | CONTINUED ON PAGE    2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



BERNARD L. MADOFF
Investment Securities
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2400
(800) 334-1343
TELEX 235 130
FAX (212) 486-8178

IN ACCOUNT WITH

ROBERT M ROSENTHAL
MARION ROSENTHAL J/T WROS

REDACTED

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | TRN | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| 2/14 | | | | BALANCE FORWARD | | | 54,839.96 |
| 2/14 | 1,000,000 | | 7789 | CHECK WIRE | | 1,000,000.00 | |
| | | | | U S TREASURY BILL | EAA | | |
| 2/18 | | | | DUE 4/24/1997 | 997.050 | 996,500.00 | |
| | | | | FIDELITY SPARTAN | | | 100.88 |
| | | | | U S TREASURY MONEY MARKET | | | |
| 2/18 | 42,416 | | 95587 | DIV 2/18/97 | | | 42,416.00 |
| | | | | FIDELITY SPARTAN | | 42,416.00 | |
| | | | | U S TREASURY MONEY MARKET | 1 | | |
| 2/20 | | | | DIV 2/20/97 | | | 30.53 |
| | | | | AMERICAN INTL GROUP INC | DIV | | |
| 2/26 | | 589 | 5775 | | 125 | | 73,625.00 |
| 2/26 | | 651 | 8397 | AMERITECH CORP | 64 1/4 | | 41,826.75 |
| 2/26 | | 608 | 13026 | ARCO CHEM CORP | 89 1/4 | | 54,095.00 |
| 2/26 | | 589 | 23640 | AMERICAN EXPRESS COMPANY | 67 1/4 | | 39,620.25 |
| 2/26 | | 434 | 16260 | BOEING CO | 108 1/4 | | 46,980.50 |
| 2/26 | | 434 | 18883 | BANKAMERICA CORP | 119 | | 51,646.00 |
| 2/26 | | 527 | 21505 | BRISTOL MYERS SQUIBB COMPANY | 118 1/4 | | 36,080.00 |
| 2/26 | | 609 | 24329 | BRISTOL MYERS SQUIBB COMPANY | 118 1/4 | | 82,537.50 |
| 2/26 | | 589 | 26752 | CITICORP | 122 1/4 | | 72,005.25 |
| 2/26 | | 806 | 29374 | COLUMBIA/HCA HEALTHCARE CP | 43 3/4 | | 35,262.50 |
| 2/26 | | 775 | 31396 | CISCO SYSTEM INC | 55 3/8 | | 42,437.50 |
| 2/26 | | 682 | 34919 | DUPONT E I DE NEMOURS & CO | 108 1/8 | | 73,656.00 |
| 2/26 | | 837 | 37242 | THE WALT DISNEY CO | 75 3/4 | | 63,402.75 |
| | | | | CONTINUED ON PAGE   2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

TAX ID R0108-3-0

2/26/97

1