Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Steven R. Schlesinger, Esq.

*Attorneys for Estate of Richard A. Luria,*
*David Richman and Jay Rosen Executors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

|  |  |
|---|---|
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

-------------------------------------------------------------X

IN RE:

BERNARD L. MADOFF,

Debtor.

-------------------------------------------------------------X

## AMENDED ESTATE OF RICHARD A. LURIA'S OBJECTION TO
## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

The Estate of Richard A. Luria, David Richman and Jay Rosen, Executors (the "Estate"),

by and through its counsel, Jaspan Schlesinger LLP, hereby raises and files this Objection to the

Notice of Trustee's Determination of Claim, dated September 14, 2010, and respectfully shows

and alleges as follows:

1.      The Estate is a "customer" of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the meaning of the Securities Investor Protection Act, 15 U.S.C. § 78*aaa et seq.* ("SIPA").

2.      BLMIS Account Number 1-L0108 was opened, upon information and belief, in the name of Richard A. Luria ("Luria") and later changed to the name of the Estate following his death in February 2005. Susan G. Luria ("S. Luria") is the beneficiary of BLMIS Account Number 1-L0108.

3.      The Estate's final account statement from BLMIS dated November 30, 2008 reflects that it owns securities valued at approximately $952,475.05.  A copy of the November 30, 2008 BLMIS Account Statement for account number 1-L0108 is annexed hereto as Exhibit "A".

4.      On or about December 11, 2008, Bernard L. Madoff ("Madoff") was arrested by the FBI and charged with securities fraud.  Madoff allegedly confessed that BLMIS was a "Ponzi scheme" as he had been paying returns to certain investors out of the principal he received from other investors.

5.      On or about December 11, 2008, the SEC filed a civil complaint with the United States District Court for the Southern District of New York charging Madoff with securities fraud on the basis that Madoff had been conducting a Ponzi scheme for years through the investment adviser services of BLMIS.  Thereafter, on or about December 15, 2008, the United States District Court for the Southern District of New York (Stanton, J.) entered an order granting the application of the Securities Investor Protection Corporation ("SIPC") seeking a declaration that the customers of BLMIS are in need of protection under SIPA, and appointed Irving H. Picard, Esq. as Trustee (the "Trustee").

6.      On December 23, 2008, this Court entered an order which governs, in part, the determination of "customer claims" of victims of Madoff and BLMIS (the "Claims Procedure Order") [Docket # 12].

7.      Prior to the July 2, 2009 bar date, on or about February 19, 2009, the Estate mailed certified mail – return receipt a Customer Claim form (the "Customer Claim Form") with respect to BLMIS Account Number 1-L0108, which was assigned Claim Number 002859 by the Trustee. A copy of the Customer Claim Form is annexed hereto as Exhibit "B".

8.      The Trustee has since issued the Notice of Trustee's Determination of Claim, dated September 14, 2010 (the "Determination of Claim"), denying the Estate's Customer Claim in its entirety. A copy of the Determination of Claim is annexed hereto as Exhibit "C". Specifically, the Trustee denied the Estate's claim for securities on the ground that "[n]o securities were ever purchased for [its] account." See Exhibit C. The Trustee also stated that based upon his analysis, the amount of money withdrawn from the account was greater than the amount deposited with BLMIS. See Exhibit C.

9.      The Estate hereby objects to the Determination of Claim for the reasons set forth below. The Estate is entitled to recover from the estate of BLMIS as it was one of the thousands of customers defrauded by Madoff. The Estate's Customer Claim should be allowed a claim for the maximum amount under SIPC ($500,000.00) with the balance as a claim against the estate and any remaining proceeds for the total value of securities as reflected on its November 30, 2008 BLMIS Account Statement.

## I.      RELEVANT FACTUAL BACKGROUND

10.     BLMIS Account Number 1-L0108 was originally opened, upon information and belief, in or about the 1980s in the name of Luria. Over the course of time, deposits were made

into this account by, upon information and belief, Luria and/or his mother, Gladys C. Luria, through accounts opened during her lifetime from BLMIS Account Number 1-L0057.[1]

11.    Following Luria's death in February 2005, the account was, upon information and belief, changed into the name of the Estate and the account was valued at approximately $475,116.00 for estate tax purposes.

12.    Additionally, following Luria's death, in or about April 2007, the beneficiary of the account, S. Luria, deposited $300,000.00 into the account.[2]    Copies of the documents evidencing this deposit are annexed hereto as Exhibit "D".    In the time since this deposit was made, only $100,000.00 was withdrawn from the account, leaving a positive net equity of $200,000.00.

## II.    THE ESTATE'S OBJECTIONS TO THE DETERMINATION OF CLAIM

13.    The Trustee has failed to render a determination and to satisfy the Estate's Customer Claim for Account Number 1-L0108 in accordance with the books and records of BLMIS and has further failed to give any weight to the documents in his possession regarding this account as mandated by the Claims Procedure Order.

14.    A proof of claim filed by a creditor is *prima facie* evidence of the amount and validity of the claim.    See Fed. R. Bankr. P. 3001.    The Trustee bears the burden of proof in

---

[1]    BLMIS Account Number 1-L0057 in the name of Gladys C. Luria, following her death, was subsumed in the account opened by Madoff and Peter Madoff ("P. Madoff") as executors of her estate (BLMIS Account Number 1-L0121).    A customer claim was filed for this account by P. Madoff as executor.    The accounting of Ms. Luria's estate remains the subject of litigation both in this Court and in the New York State Surrogate's Court in New York County under Index No. 1945/2005.    The Trustee is aware of the issues relating to Ms. Luria's estate, the accountings and the involvement of Madoff and P. Madoff as executors.    Given the unsettled nature of the accounting and issues concerning Ms. Luria's accounts, the Trustee prematurely has concluded that the account (and all of the accounts which received transfers from this account) has no "positive" net equity.

[2]    The deposit was made at the insistence of Madoff and P. Madoff who informed S. Luria and her children that in order to keep their accounts at BLMIS they had to either establish partner trust accounts with the Madoffs and keep the funds at BLMIS, or instruct S. Luria to bring her account up to $1,000,000.00 or face account closure. P. Madoff also indicated that because both of S. Luria's children had accounts at Madoff, they could aggregate the amounts in their accounts to reach the $1,000,000.00 threshold and satisfy their requirements.

challenging the amount and validity of the Estate's Customer Claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re 37-02 Plaza LLC, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008) ("The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's *prima facie* validity."). In order to meet his burden in overcoming the *prima facie* validity of the Customer Claim Form, the Trustee had to present evidence refuting the amount and validity of the Estate's claim set forth on the Customer Claim Form. The Trustee has failed to meet this burden.

15.     Additionally, and in direct contravention of the Claims Procedure Order, the Determination of Claim does not sufficiently set forth the reason and legal basis for the denial of the Estate's claim. In fact, the only "explanation" for the denial of the Estate's claim is that "[n]o securities were ever purchased for [its] account." See Exhibit C. The Determination of Claim therefore states no basis in law or in fact for the denial and is inadequate to rebut the *prima facie* validity of the Estate's Customer Claim. Further, it relies upon certain "adjustments" claimed to have been made by the Trustee that are unsupported, unsubstantiated and unexplained. See Exhibit C.

16.     SIPA provides that a customer's claim shall be allowed in the amount of the customer's "net equity." See 15 U.S.C. § 78*fff*-2(b). The term "net equity" is defined in SIPA as,

> [T]he dollar amount of the account or accounts of a customer, to be determined by –
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus

(B) any indebtedness of such customer to the debtor on the filing
date; . . . .

15 U.S.C. § 78*lll*(11). The Trustee's money in/money out analysis with respect to the Estate's

BLMIS Account is erroneous and should be overturned.

17.    The Determination of Claim fails to give the Estate credit for the $300,000.00

deposited by the beneficiary in April 2007.  The Trustee should not charge an innocent

beneficiary with knowledge of the claimed "negative" net equity of the account when that

beneficiary deposited more money with BLMIS than she received.  The Trustee should have

concluded, based upon a reasonable examination of the Customer Claim and the documents in

this possession, that the account had "positive" net equity and accepted the Estate's Customer

Claim. Based upon the foregoing, the denial of the Estate's Customer Claim on the grounds that

it has "withdrawn more than was deposited into [its] account, [and it does] not have a positive

'net equity' in [its] account and [it is] not entitled to an allowed claim in the BLMIS liquidated

proceeding," see Exhibit C, should be reversed.

18.    Furthermore, the Estate maintains that the Trustee's overall money in/money out

analysis should be overturned as it is inconsistent with the case law.  See e.g., Visconsi v.

Lehman Brothers, Inc., 244 Fed. App'x 708 (6th Cir. 2007); Stafford v. Giddens (In re New

Times Securities Services, Inc.), 463 F.3d 125 (2d Cir. 2006); In re New Times Securities

Services, Inc., 371 F.3d 68 (2d Cir. 2004).

19.    The Trustee's definition of "net equity" only serves to punish victims of Madoff

and BLMIS and does not protect them or their reasonable expectations.  The legislative intent

behind enacting SIPA was to "restore investor confidence in the capital markets, and upgrade the

financial responsibility requirements for registered brokers and dealers."  Sec. Investor Prot.

Corp. v. Barbour, 421 U.S. 412, 415 (1975).  "Congress' primary purpose in enacting the SIPA

and creating the SIPC was . . . the protection of investors." Id. at 421; see In re First State Sec.
Corp., 34 B.R. 492, 496 (Bankr. S.D. Fla. 1983) ("SIPA is remedial legislation. As such it should
be construed liberally to effect its purpose.  The purpose is the protection of the insolvent
brokers' customers."); see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) (noting that Congress' primary purpose behind
enacting SIPA was to protect investors from financial losses arising from insolvency of brokers
and to reestablish investor confidence).  The Trustee's interpretation of "net equity" and its
application to the Customer Claim of the Estate should be overturned.

20.    Lastly, at a minimum, the funds in the Estate's account (#1-L0108), including the
funds deposited in 2007 by the beneficiary, S. Luria, should be entitled to interest.  See e.g., N.Y.
C.P.L.R. § 5004; Gen. Oblig. Law § 5-501 *et seq.*

## CONCLUSION

21.    For the foregoing reasons, the Estate requests that its Customer Claim be allowed
in its entirety, together with such other and further relief as this Court deems just and proper.

22.    The Estate reserves the right to revise, supplement, or amend this Objection, and
any failure to object on a particular ground or grounds shall not be construed as a waiver of its
right to object.

**WHEREFORE**, the Estate of Richard A. Luria, David Richman and Jay Rosen,

Executors requests that its Customer Claim be allowed in its entirety, together with such other

and further relief as this Court deems just and proper.

Dated: Garden City, New York
       October 14, 2010

JASPAN SCHLESINGER LLP
*Attorneys for the Estate of Richard A. Luria,*
*David Richman and Jay Rosen, Executors*


By:    /s/Steven R. Schlesinger
       STEVEN R. SCHLESINGER
       300 Garden City Plaza
       Garden City, New York 11530
       (516) 746-8000


TO:    Clerk of the United States Bankruptcy Court (via ECF)
       for the Southern District of New York
       One Bowling Green
       New York, New York 10004


       Irving H. Picard, Trustee
       c/o Baker & Hostetler LLP
       45 Rockefeller Plaza
       New York, New York 10111