



David Gross
7248 Ballantrae Ct.
Boca Raton, FL 33496-1422

Monday, March 15, 2010

CLERK OF THE UNITED STATES BRANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
ONE BOWLING GREEN
NEW YORK, NEW YORK 10004

IRVING H. PICARD TRUSTEE
C/O BAKER & HOSTETLER LLP\
45 ROCKEFELLER PLAZA
NEW YORK, NEW YORK 10111

MILLENNIUM TRUST COMPANY LLC
FBO DAVID GROSS ( IRA )
820 JORIE BLVD   SUITE  420
OAK BROOK  IL. 60523



REFERENCED TO LETTER OF MARCH 11, 2010 AND ALL
CONCERNED PARTIES

UNFORTUNATELY , I AM IN NO POSITION TO CHALLENGE THE RECORDS YOU
ENCLOSED AS TO THE ACCURACY OF MONIES CONTRIBUTED, AS MUCH
AS THE ACCURACY OF THE STATEMENTS I RECIEVED FROM BLMIS
AS TO THE ACTUAL HOLDINGS REPRESENTING MY EQUITY IN MY
IRA ACCOUNT 1-CM302-3-0 IDENTIFIATION NUMBER TAX PAYER ******4088.
AS INDICATED ON THE STATEMENTS PROVIDED.

ESPECIALLY ON THE BERNARD L. MADOFF INVESTMENT SECURITIES LLC
ON ALL TRADES INDICATING
   MEMBER    FINRA  NSX SIPC NSCC DTC

**BEING ASSURED AND ADVISED THAT WHO BETTER CAN
LOOK OUT FOR THE INVESTERS INTEREST**

IF I HAD JUST PUT THIS MONIES IN GOVERMENT BONDS FOR THE
PERIOD FROM  1994 AS INDICATED  IN YOUR SUPPOSINGLY
RECORDS, I THINK MY MONIES MAY HAVE DOUBLED FROM THE
ACCUMILATED INTEREST.

AT THE PRESENT TIME , THE PURCHASING POWER , OR THE
VALUATION OF THE DOLLAR WAS WORTH MORE AT THE TIME
OF CONTRIBUTION THAN PRESENT . INFLATION HAS  A LOT TO
DUE WITH WETHER I TOOK OUT THE SAME VALUE AS I PUT IN.

**FOR THE ABOVE REASONS DAVID GROSS IS PUTTING
IN AN OPPOSITION TO THE TRUSTEE REFERENCING**

**BANKRUPTCY CASE NO. 08-1789 (BRL)**

I AM NOT FAMILIAR WITH THE REFERENCE OF 1CMO5130 ACCOUNTABLE FOR CONTRIBUTIONS. I BELIEVE THAT MAYBE DISCREPANCIES AS TO MY CONTRIBUTIONS AND ESPECIALLY OF THE AMOUNTS WITHDRAWN.

SINCERELY, 

DAVID GROSS --- 561 483 4543 ==== CELL 516 263 3642
7248 BALLANTRAE CT.
BOCA RATON, FL. 33496

David Gross
7248 Ballantrae Ct.
Boca Raton, FL 33496-1422

## THE INTELLIGENT INVESTOR

# What Conflict of Interest? How Power Blinds Us to Our Flaws

By Jason Zweig

Why do powerful people on Capitol Hill with so much to lose push so hard to squeeze out a little more gain for themselves?

That question lingers after reading articles about securities trading by members of Congress and their aides. As the Wall Street Journal has shown, dozens of public servants on Capitol Hill (and sometimes their spouses) actively traded during the financial crisis—buying funds that profit in a falling stock market, using options to bet against shares of home-builders and companies even trading in or out of stocks that stood to benefit from government interventions they helped oversee.

Such trades are legal since prohibitions on insider trading generally don't apply to Congress. All the members of Congress and staffers involved in the trades have told the Journal that they adhered to the relevant codes of ethics and complied with all requirements for public disclosure.

It is likely that the traders on Capitol Hill genuinely believe that their actions are beyond reproach, says Daylian Cain, a psychologist at Yale University's School of Management. "This isn't about corrupt people bending rules to line their own pockets," he explains. "People are just not good at being objective about their own potential conflicts of interest. Whatever side of an issue we're on, we can easily convince ourselves that we're on the right side."

Still, based on letters and online comments from the Journal's readers, it seems that many Americans think members of Congress and their staffers are being disingenuous when they maintain they didn't do anything wrong.

That is because, in the financial markets, information is power. Whoever gets better information sooner has an advantage over those who receive the news later. In the public's eyes, members of Congress and even those who work in their offices, gain just such an informational edge by writing legislation and running investigative hearings. That is what separates investors on Capitol Hill from those on Main Street.

That edge may change the behavior of those in Congress who trade. "Power makes people feel both psychologically invincible and psychologically invisible," adds Adam Galinsky, a professor of organizational behavior at Northwestern University's business school. Power, explains Prof. Galinsky, focuses people on their own internal goals—blinding them, in the process, to how others may view them. In Plato's "Republic," Socrates invokes the myth of the ring of Gyges, which conferred upon its wearer the power of being invisible to others. If we wear such a ring at will, Socrates says, "no man would keep his hands off what was not his own when he could safely take what he liked."

"Being in a position of power also may make people feel that they can do no wrong. In recent experiments, Dana Carney, a psychologist at Columbia University's business school, has found that acquiring power makes people more comfortable committing acts they might otherwise be reluctant to commit, like lying or cheating. As people rise to a position of power, she has shown, their bodies generate more testosterone, a hormone associated with aggression and risk-taking, and less cortisol, a chemical that the body generates in response to stress.

"Having power changes you physiologically, reducing your body's internal feedback that tells you which actions are good or bad," says Prof. Carney. "Power temporarily intoxicates you."

Naturally, the lessons of how power alters behavior apply to us all. When your investments have been on a roll lately, that may fill you with a sense of power over the market.

Contrary to what you might think, your own ideas are brilliant and that any evidence to the contrary is unconvincing.

One solution, says Don A. Moore of the University of California, Berkeley, would be to compel traders on Capitol Hill to disclose their trades more frequently, rather than once a year, as they do now. Others would be to ban trading outright, subject all trades to independent review before they can be executed or require members of Congress to put their assets in blind trusts.

"If you passed a law saying that [members of Congress and their staffs] can only invest in index funds, on the whole you would do them a great favor, for two reasons," says Meir Statman, a finance professor at Santa Clara University. "First, they won't be reading news coverage about themselves that they and their constituents don't like. And two, they're more likely to make more money on index funds than by trying to outsmart the market."

intelligentinvestor@wsj.com
twitter.com/jasonzweigwsj

Christophe Vorlet