Kirk L. Brett, Esq.  
Duval & Stachenfeld LLP  
101 Park Avenue  
New York, New York 10178  
Telephone:   (212) 883-1700  
Facsimile:    (212) 883-8883  
Email:          (kbrett@dsllp.com)  

*Attorneys for ASM Capital, L.P., ASM Capital III, L.P., and ASM Offshore Limited*

**Hearing Date and Time:**  
**November 4, 2010 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff-Applicant,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**LIMITED OBJECTION OF ASM CAPITAL TO TRUSTEE'S  
MOTION FOR AN ORDER ESTABLISHING PROCEDURES  
FOR THE ASSIGNMENT OF ALLOWED CLAIMS**

　　　　ASM Capital, L.P., ASM Capital III, L.P., and ASM Offshore Limited (collectively,

"ASM Capital"), by their undersigned counsel, as and for their limited objection to the motion of

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, for an order approving proposed procedures for the assignment of allowed claims (docket no. 3057)(the "Motion"), respectfully states as follows:

## INTRODUCTION

1. ASM regularly invests in unsecured claims held by creditors in domestic bankruptcy cases. In this case, ASM has purchased allowed claims against BLMIS approaching $50 million from approximately 20 creditors. ASM anticipates that it will acquire additional former customers' claims as this case progresses.

2. The Trustee correctly notes that there are BLMIS creditors who are interested in selling their claims and realizing recoveries in the near term, rather than bearing the delay and risks of recovery associated with holding their claims. Due to a number of factors associated with this case (including that this is a liquidation under SIPA rather than a traditional bankruptcy, and the fact that only the Trustee and his professionals have access to the register of customers/creditors), there has been a degree of uncertainty regarding the procedure to be followed in connection with claims transfers. The Court's establishment of clear procedures should remove this uncertainty, thereby serving the interests of creditors desiring to sell their claims, while also protecting the Trustee's interest in ensuring that claims transfers are appropriately tracked and recorded. Accordingly, ASM is generally supportive of the Trustee's efforts to develop a proposed set of procedures governing the transfer of claims.[1]

---

[1] ASM previously requested that the Trustee clarify the procedures governing the transfer of claims. Because ASM anticipated that the Trustee would make a proposal concerning appropriate procedures, and in an effort to ensure compliance with procedures as and when they are approved by the Court, ASM has thus far refrained from filing any notices relating to its acquisition of claims (although ASM has advised the Trustee of such acquisitions). Consequently, ASM had nothing to do with the improper or confusing filings referenced in paragraph 14 of the Trustee's Motion.

3.	Having reviewed the proposed procedures described in the Trustee's Motion, ASM is concerned that there are several provisions that would adversely affect the rights and interests of parties desiring to engage in claims transfers. In addition, ASM submits that there are aspects of the procedures which should be further clarified or otherwise modified to improve the efficiency of the process. ASM has communicated the particulars of these issues to the Trustee (through counsel) but, in light of time constraints and other matters in the case, the Trustee has not yet provided a substantive response. Accordingly, ASM is filing this limited objection in order to preserve its rights as well as to ensure that its comments and concerns are appropriately considered by all interested parties and the Court.

## DISCUSSION OF ASM'S COMMENTS AND SUGGESTIONS

General Principles

4.	From a "big picture" perspective, ASM submits that the following general principles should be reflected in any modified procedures to be adopted by the Court:

- *Preserve the Confidentiality of Claimants*. Through its interaction with multiple BLMIS customers, ASM has learned that many do not wish to publicly disclose that they have sold their claims. There are multiple reasons for this, which include the perspective of some that the sale of claims may reveal a measure of personal financial information (such as the need to sell in order to meet liquidity needs). Regardless of their reasons, ASM submits that customers' desire for confidentiality should be respected to the fullest extent possible. Accordingly, the procedures to be established should be designed to preserve the confidentiality of the identities of those customers who sell their claims – at least in the absence of a dispute requiring the intervention the Court.

- *Contractual Terms Governing Sales Should Not Be Dictated*. The operative documents concerning the purchase and sale of claims often include a variety of representations, warranties and covenants of the parties. Although it is

appropriate to have Court-approved uniform documents to facilitate the tracking of claims transfers, the procedures should not include forms of operative documents that would mandate the terms of sale, or otherwise impede the ability of buyer or seller to freely negotiate contractual provisions, unless it is absolutely necessary to do so.

- *Allow Transfers to Be Structured as Sales*. Most investors in unsecured claims, including ASM, structure their acquisitions as purchases and sales, rather than assignments. In light of the decision in *Enron v. Springfield Associates*, the distinction between these types of transfers may be significant. *See Enron Corp. v. Springfield Assoc., L.L.C. (In re Enron Corp.)*, 379 B.R. 425 (S.D.N.Y. 2007) (holding that impairments associated with a claim, such as equitable subordination, travel with the claim when it is transferred by assignment, but not when the claim is transferred by sale). ASM is unaware of any reason why claim transfers in this case should be structured only as assignments rather than sale/purchase transactions.

- *Provide Clear Communication as to Whether a Transfer is Effective*. The procedures should ensure that if an attempted claim transfer will not be given effect, the transferee is clearly advised accordingly.

5. In light of these and other matters, the specific comments and suggestions of ASM are set forth below.

Specific Comments Regarding Notice Procedures.

6. In the event that a transferee does not provide sufficient information to AlixPartners concerning a claim transfer, it appears that the proposed procedures provide only that AlixPartners *may* request additional information. *See* Motion ¶ 15(a)(ii), p.9. There appears to be no requirement, however, that AlixPartners notify the transferee of the deficiency. This should be amended so as to provide that the transferee will be clearly advised of a circumstance in which AlixPartners does not acknowledge the sufficiency of information concerning a

transfer, and will be afforded an opportunity to cure any such deficiency relating to the extent of information provided.

7. When AlixPartners sends a notice of a transfer to the transferor, it should also send the notice to the transferee. *See* Motion ¶ 15(b)(i), p.9. This way, the transferee will be aware that AlixPartners has accepted the sufficiency of information provided and that the transfer procedures are being followed, and the transferee can further track the timing of the objection period.

8. After sending notice of the transfer of a claim, AlixPartners should <u>not</u> file a certificate of service with the Court. *See* Motion ¶ 15(b)(ii), p. 10. As previously described, many claimants who wish to transfer their claims in this case do not wish to disclose their transfer to the public – but the filing of a certificate of service will undoubtedly disclose, at a minimum, the name and address of the relevant seller. Accordingly, AlixPartners should only retain the certificate of service for its own records and send a copy to the transferee. Alternatively, if a certificate of service is to be publicly filed, the identifying information of transferors should be redacted from the filed version upon the prior request of the transferee.

<u>Specific Comments Regarding Assignment Form</u>.

9. ASM has several concerns regarding the proposed form of assignment document. First, it is labeled as an "assignment" and refers solely to the assignment of a claim – and it thus does not appear to contemplate the transfer of a claim by means of a sale/purchase transaction. *See* Exhibit "A" to Motion [form of Assignment].

10. Second, although the assignment form is presented as an operative document, the terms set forth on the form are not complete. ASM's purchase agreement and operative transfer document includes a variety of other terms and conditions associated with the transaction, and

the procedures to be approved by the Court should not give any party cause to question the applicability of such other terms and conditions.

11. While there may be a variety of ways to address these concerns, ASM suggests that the Trustee receive a standard form document *evidencing* or *demonstrating* that a claim transfer has occurred, rather than insisting upon a standard form of an operative transfer document. Specifically, the assignment form should be revised as follows: (a) the title of the document should be "Confirmation of Claim Transfer" or something similar; (b) references to "assignor" and "assignee" should instead be "transferor" and "transferee"; (c) instead of stating that assignor "does hereby transfer and assign", the form should state that assignor "does hereby confirm that it has transferred, conveyed, sold and/or assigned" the claim; and (d) the certification in sub-paragraph (iii) regarding the lack of any prior assignment should also refer to the lack of any prior transfer, conveyance, sale or assignment.

Specific Comments Regarding Dispute Procedures.

12. When a transferee provides notice of a hearing on a disputed transfer, the notice should be sent to the relevant *transferor*. As written, the proposed procedures provide that the transferee only needs to notify itself. *See* Motion ¶ 15(d), p.11.

13. There should be somewhat greater clarity as to how the Trustee will handle distributions in respect of claims that are in the midst of being transferred or that are subject to a dispute concerning the transfer. *See* Motion ¶ 15(e), p. 12. In particular, although it seems reasonable for the Trustee to refrain from making a distribution in respect of a claim under these circumstances, the Trustee should nevertheless set aside a reserve representing the distribution that would otherwise be made – and, of course, the reserved funds should be distributed upon the completion of the claim transfer (or resolution of the dispute concerning the transfer).

Miscellaneous Additional Comments.

14. In the event of an error by AlixPartners in abiding by the notification procedures, there should be no adverse impact on the validity of the transfer or the transferee's right to be considered the holder of the transferred claim. Similarly, the transferor should not be permitted to unwind a transfer if the Trustee or AlixPartners fail to strictly observe the transfer procedures.

15. If the claim transfer procedures are revised, the related approval order should make it clear that only the procedures (as revised) reflected in the order are controlling, and there should be no reference to an approval of the initial procedures described in the Motion. *See* Exhibit "C" to Motion [proposed form of Order], paragraphs 1 and 2.

Clarifications Concerning ASM's Prior Acquisitions.

16. ASM has previously advised the Trustee of its acquisitions of BLMIS customers' claims. In reviewing the proposed procedures, ASM understands that the Trustee is not proposing to require ASM to cause any other or further documents to be executed by the transferors of such claims and, in particular, the proposed assignment form is not considered a requirement for the transfers which have already occurred. *See* Motion ¶ 16(a), p.14. ASM has asked the Trustee for confirmation of this understanding, and confirmation that ASM has provided appropriate information regarding ASM's prior acquisitions, so that AlixPartners will proceed to notify the transferors of these claims (and ASM) pursuant to the procedures to be approved by this Court. ASM requests that these matters be addressed either in the order approving claim transfer procedures or on the record of the hearing to consider the Motion.

CONCLUSION

17. ASM respectfully requests that the Trustee and the Court incorporate the foregoing comments and suggestions into a set of revised procedures. ASM also recognizes that

several of the comments may be given effect by means other than the specific suggestions outlined above.  Accordingly, ASM remains available to consult with the Trustee and interested parties concerning a revised set of claims transfer procedures (and reserves the right to assert additional comments or objections to any revised set of procedures proposed by the Trustee).

WHEREFORE, ASM respectfully requests that the Court enter an order approving a revised set of procedures governing the transfer of claims which gives effect to the comments and suggestions set forth herein, and granting such other and further relief as is just and proper.

Dated: New York, New York
       October 28, 2010

DUVAL & STACHENFELD LLP

By:    /s/ Kirk L. Brett
       Kirk L. Brett
101 Park Avenue
New York, New York 10178
Telephone:  (212) 883-1700
Facsimile:  (212) 883-8883

*Attorneys for ASM Capital, L.P., ASM Capital III, L.P., and ASM Offshore Limited*