Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York  10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800

**Hearing Date:  November 10, 2010**
**Hearing Time:  10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                :

SECURITIES INVESTOR
PROTECTION CORPORATION,        :

                :

      Plaintiff,     :  SIPA LIQUIDATION

                :  Adv. Pro. No. 08-01789 (BRL)

     v.          :

                :  (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT  :
SECURITIES LLC,           :

                :

      Defendant.   :

                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                :

In re:              :

                :

BERNARD L. MADOFF,    :

                :

      Debtor.     :

                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF AN**
**ORDER (I) APPROVING LITIGATION CASE MANAGEMENT**
**PROCEDURES FOR AVOIDANCE ACTIONS AND**
**(II) AMENDING GLOBAL PROTECTIVE ORDER**

Sterling Equities Associates and certain affiliates (the "Sterling Customers")

hereby object to the Trustee's Motion for Entry of An Order (I) Approving Litigation

Case Management Procedures for Avoidance Actions and (II) Amending Global

Protective Order (hereinafter the "Motion") filed October 21, 2010 by the Trustee for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

The Motion is premature in that it seeks unfairly to restrict the procedural rights

of putative defendants—before they know they are defendants—by modifying the

applicable procedural rules in litigations in which the Trustee claims he will seek to

recover "billions" of dollars.  The Motion lacks precedent or foundation.

## BACKGROUND

1.    The Trustee contends that certain BLMIS accountholders "received

avoidable transfers of fictitious profits totaling billions of dollars."  (Motion ¶ 5.)  As a

result, the Trustee "expects to commence numerous additional adversary proceedings to

avoid and recover such fictitious profits (the 'Avoidance Actions')."  (Id. ¶ 7.)

2.    On October 21, 2010, the Trustee filed the Motion, seeking authority to

modify the Federal Rules of Civil Procedure and the Bankruptcy Rules that would

normally govern such adversary proceedings.

3.    None of the Avoidance Actions to be governed by the proposed procedures

has yet been brought.  Putative defendants do not know whether they need to be

concerned about the conduct of these incipient cases.  But if any customer fails to object,

that customer risks being bound by these procedures, which suffer from several

infirmities.

## THE AFFECTED PARTIES ARE NOT ON NOTICE

4.    First, specific Federal Rules of Civil Procedure and Bankruptcy Rules

govern adversary proceedings, including avoidance litigation.  See generally, Fed. R.

Bankr. P. 7000 et seq.; Fed. R. Civ. P. 1 et seq.

5.    The purpose of these rules is to ensure due process.  "The Federal Rules of

Civil Procedure are designed to further the due process of law that the Constitution

guarantees." Nelson v. Adams, 529 U.S. 460, 466 (2000).  It is fundamental to due

process that a party have notice and an opportunity to be heard.  See Greene v. Lindsey,

456 U.S. 444, 449 (1982) ("The fundamental requisite of due process of law is the

opportunity to be heard.").

6.    Parties that have not been served with complaints do not have sufficient

notice of how the proposed modifications of the usual rules might affect them.  Indeed,

the Trustee has cited no case in which a court has substantially limited the application of

these rules to cases not yet brought.

7.    Consequently, the Motion is premature and violates the due process rights

of putative defendants.

### A LEGAL GATING ISSUE SHOULD BE ADDRESSED

8.    Second, the process envisioned by the Trustee imposes unjustified delay

and cost upon Madoff victims.

9.    Although the Trustee is aware of serious legal challenges to his right to

bring any avoidance actions against non-complicit customers, the procedures devised by

the Trustee do not allow for resolution of these issues before the expenditure of

considerable time and expense on the part of all parties.

10.    The pre-trial process envisioned by the Trustee is as follows:  the Trustee

would file an adversary complaint; a defendant can either answer or otherwise respond,

but if a defendant files a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the "issues" raised in the motion and in the complaint are "immediately"

referred to mediation; if mediation is not successful (or if the parties mutually agree not

to mediate), discovery would ensue (with grave restrictions imposed upon defendants, as

3

discussed below); after discovery is complete, mediation is mandatory (with no opt out

provision); and although it appears that parties can make substantive motions, such as

motions for summary judgment, it is unclear whether such motions are permissible before

mandatory mediation, and, if they are made, how they are relevant under the proposed

procedures.

11.    Many customers have asserted in connection with the "Net Equity"

litigation now before the Court of Appeals for the Second Circuit that the Trustee's

power to assert avoidance claims against customers is extremely limited by various

provisions of the Bankruptcy Code, including, but not limited to, Section 546(e).  If this

argument is sustained, then the procedures sought by the Trustee would likely be

unnecessary.  As a result, the Avoidance Actions should be stayed, and none of the

proposed procedures applied, pending resolution of the issues before the Second Circuit

in the "Net Equity" litigation.

12.    Further, in its September 16, 2009 Net Equity Scheduling Order setting a

procedure for dealing with one set of legal issues, this Court provided that "the Trustee

shall confer with counsel regarding the other issues that should be the subject of separate

scheduling orders, and shall propose a conference or hearing to set schedules for such

issues[.]"  (Id. at 6.)  The Net Equity Scheduling order contemplates that legal issues such

as those relating to the scope of the Trustee's avoidance powers should be addressed like

the "net equity" legal issues before any discovery or mediation is undertaken in any of

the cases to be brought by the Trustee.

13.    Therefore, prudence and respect for judicial economy dictate that, before a

thousand motions to dismiss are filed raising many of the same gating legal issues, and

before a thousand adversary cases proceed through full discovery and mediation—all

requiring the expenditure of significant time and money by the parties—the question of

whether the Trustee can even assert the proposed avoidance claims should be decided.

See, e.g., Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot., 91 F.3d 1445, 1449 (11th

Cir. 1996) (finding that the district court abused its discretion by relying on its inherent

powers to manage litigation to order the parties to mediate before deciding the threshold

issue of whether the defendant was entitled to immunity under the Eleventh

Amendment).

## THE PROCEDURAL MODIFICATIONS ARE UNSUPPORTABLE

14.     Third, there is no legal foundation for the Motion.

15.     Among other things, the Motion provides for:

 a.     Immediate referral to mediation if a defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), unless the parties mutually agree that mediation will not resolve the issues raised by the defendant's motion or the complaint (Motion ¶ 10.2.D.);

 b.     Substantive limitations on the scope of discovery as determined unilaterally by the Trustee and specified in the Motion (see id. ¶ 10.4.F.);

 c.     Time limits to complete discovery that contravene the Federal Rules of Civil Procedure and the Bankruptcy Rules (id. ¶ 10.4.E.);

 d.     The Trustee himself to be immune from discovery, while making his "financial professionals" available for deposition (id. ¶ 10.4.G. & n.8.);

 e.     Mandatory mediation at the close of discovery with no ability to opt out of the mediation process (id. ¶ 10.5.C.);

 f.     No substantive motion practice, other than motions to dismiss, prior to the close of discovery without the Court's prior approval (id. ¶ 10.6.A.); and

 g.     Non-compliance with the proposed Avoidance Procedures to constitute sanctionable conduct (id. ¶ 10.8.C.).

16.     The Trustee asserts that Bankruptcy Rules 7016 and 7026, Bankruptcy

Code section 105(a), and "established precedent of this Court" provide a legal foundation

for the modifications of the rules requested by the Motion.  (Id. ¶ 11; see also id. ¶¶ 12-

19.)

17.     But Bankruptcy Rules 7016 and 7026 apply only after an adversary

proceeding is commenced.  See Fed. R. Bankr. P. 7016 (applying Fed. R. Civ. P. 16 to

adversary proceedings); Fed. R. Bankr. P. 7026 (applying Fed. R. Civ. P. 26 to adversary

proceedings).

18.     Bankruptcy Code section 105(a) does not provide a basis for the Trustee to

change these rules before commencing such adversary proceedings and does not permit

the Trustee to proscribe potential litigants' rights and remedies in contravention of

otherwise applicable Bankruptcy and Federal Rules.  See, e.g., New England Dairies, Inc.

v. Dairy Mart Convenience Stores, Inc., 351 F. 3d 86, 92 (2d Cir. 2003) (holding that

Section 105(a) can only be exercised within the confines of the Bankruptcy Code); Marc

Stuart Goldberg, P.C. v. City of New York (In re Navis Realty), 193 B.R. 998, 1008

(Bankr. S.D.N.Y. 1996) (Section 105(a) is to be used "to supplement other provisions of

the Bankruptcy Code").  As the Second Circuit has stated:

> "Section 105(a) of the Bankruptcy Code provides that: "The court may
> issue any order, process or judgment that is necessary or appropriate to
> carry out the provisions of this title."  This power "must and can only be
> exercised within the confines of the Bankruptcy Code." Norwest Bank
> Worthington v. Ahlers, 485 U.S. 197, 206 (1988); see also In re Johns-
> Manville Corp., 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) . . . does
> not broaden the bankruptcy court's jurisdiction.").  The bankruptcy
> court's equitable powers cannot be exercised in derogation of other
> sections of the Bankruptcy Code. In re Morristown & Erie R.R. Co., 885

F.2d 98, 100 (3d Cir. 1989); In re NWFX, Inc., 864 F.2d 593, 595 (8th
Cir. 1989)."

In re Ionosphere Clubs, Inc., 922 F. 2d 984, 995 (2d Cir. 1999).

19.    "Established precedent" also fails to support the Motion.  In no case cited

by the Trustee were rules of procedure substantially modified before affected cases were

commenced, except, in one instance, to set a discovery schedule.  Modifications that were

proposed after the cases were filed were very limited.  In no case cited by the Trustee did

the court restrict the substantive scope of discovery in any way or mandate mediation at

the motion to dismiss stage.  Moreover, the Bankruptcy Court's General Order Amending

and Restating M-143 and M-211 does not provide for assignment of a matter to

mediation before that matter has been commenced.

20.    Nor in any case cited by the Trustee has a court given a SIPC or bankruptcy

trustee a blanket shield from discovery.  The Trustee's proffered reason for immunity—

that any information he has is the result of "privileged communications with his

attorneys"—cannot be correct.  The Trustee is taking the position that billions of dollars

in so-called "fictitious profits" are avoidable in this case (see Motion ¶ 5), and defendants

are entitled to discover how the Trustee came to that view and how he intends to prove it

through facts that are discoverable and not privileged.

## THE PROTECTIVE ORDER SHOULD NOT
## BE AMENDED IN THE MANNER PROPOSED

21.    Finally, the Motion also seeks to amend the global protective order ("Global

Protective Order") entered in the above-referenced proceeding on February 16, 2010 with

respect to the treatment of "Confidential Account Information."  (See Motion ¶¶ 20-23.)

In particular, the Trustee seeks leave from the requirements of the Global Protective

Order so he can publicly file complaints and related exhibits in the Avoidance Actions

that contain Confidential Account Information.  (Id. ¶ 21.)

22.    The Trustee also seeks authorization to make certain Confidential Account

Information available to attorneys of record and their retained professionals in the

Avoidance Actions during discovery, so long as the attorneys of record and their retained

professionals maintain the confidentiality of the information (including not sharing it

with their clients), use the information only in the context of the Avoidance Action in

which they were retained, and file under seal any pleading or document that includes

such confidential information.  (Id. ¶ 23.)

23.    But the Global Protective Order was put in place to induce customers to

provide otherwise confidential information by providing them with protection against

public disclosure of that information.  Thus, it is the customer and not the Trustee who

has the right to determine if, when, and how the customer's confidential information may

be disclosed.  If the Trustee believes it is necessary to file certain types of Confidential

Account Information (or any other protected information) with any Avoidance Action

complaints, the Confidential Account Information (or any other protected information)

may be filed under seal, as he proposes that Avoidance Action defendants must do.

(Compare Motion ¶ 21 with id. ¶ 23.)

## CONCLUSION

24.    For the reasons stated herein, the Motion should be denied.

8

Dated:    New York, New York
         November 4, 2010

DAVIS POLK & WARDWELL LLP

By:    Karen E. Wagner
        Karen E. Wagner
        (karen.wagner@davispolk.com)
        Dana M. Seshens
        (dana.seshens@davispolk.com)

        450 Lexington Avenue
        New York, New York 10017
        Phone:  (212) 450-4000
        Fax:  (212) 701-5800

        *Attorneys for the Sterling Customers*