**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman
45 Broadway
New York, New York 10006
Telephone  (212) 599-3322
Facsimile  (212) 557-0295
HCHAITMAN@BECKERNY.COM

*Attorneys for Becker & Poliakoff LLP Clients*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                                    Plaintiff, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                                    Defendant. | Adv. Pro. No. 08-1789 (BRL) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>                                    Debtor. | |

**OBJECTION TO TRUSTEE'S MOTION
FOR ORDER (I) APPROVING LITIGATION CASE MANAGEMENT
PROCEDURES FOR AVOIDANCE ACTIONS
AND (II) AMENDING GLOBAL PROTECTIVE ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

    THE MOTION SHOULD BE DENIED IN FULL, PENDING THE SERVICE BY THE
TRUSTEE OF COMPLAINTS AND THIS MOTION ON THE UNIDENTIFIED
DEFENDANTS ................................................................................................................. 1

    ALL AVOIDANCE ACTIONS SHOULD BE STAYED PENDING A FINAL NON-
APPEALABLE DECISION ON NET EQUITY ....................................................................... 3

    THE UNIDENTIFIED DEFENDANTS CANNOT BE DEPRIVED OF THEIR RIGHT TO A
HEARING ON 12(B)(6) MOTIONS .................................................................................... 4

    THE TRUSTEE SHOULD NOT BE PERMITTED TO SELECT THE POOL OF MEDIATORS ......... 6

    THE TRUSTEE IS NOT ENTITLED TO A LIMITATION ON DISCOVERY ............................... 7

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AMW Material Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67 (E.D.N.Y. 2003) ........................ 8

*In re Bayou Group* (Adv. Pro. No. 06-8318) (S.D.N.Y.) (ASH) ..................................................... 9

*Becker v. Silverman*, 638 F. Supp. 193 (S.D.N.Y. 1986) ............................................................... 4

*Breen v. McMillian*, 2008 WL 2224864 (E.D.La. May 27, 2008) ................................................. 6

*In re Bryan*, 357 B.R. 12 (Bankr. N.D.N.Y. 2006) ......................................................................... 2

*DaPuzzo v. Globalvest Management Co., L.P.*, 263 F. Supp.2d 714 (S.D.N.Y. 2003) .................. 4

*Doe v. White*, 2010 WL 323510 (C.D.Ill. Jan. 20, 2010) ............................................................... 6

*In re Enron Corp.* (Case No. 01-16034) (S.D.N.Y.) (AJG) ............................................................ 9

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d. Cir. 1998) ............................ 3

*Grannis v. Ordean*, 234 U.S. 385 (1914) ........................................................................................ 1

*Hickman v. Taylor,* 329 U.S. 495 (1947) ........................................................................................ 7

*In re Honeywell Intern., Inc. Securities Litigation,* 230 F.R.D. 293 (S.D.N.Y. 2003) .................... 8

*Jones v. Clinton*, 520 U.S. 681 (1997) ............................................................................................ 3

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) ............................................................................... 4

*In re Lehman Brothers* (Case No. 08-1420) (SIPA) (S.D.N.Y.) (JMP) ......................................... 9

*Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979) ................................ 4

*Loomskill Inc. v. Slifka*, 223 F. Supp. 845 (S.D.N.Y. 1963) .......................................................... 2

*Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438 (1946) ............................................................ 1

*Morrissey v. Curran*, 650 F.2d 1267 (2d Cir. 1981) ...................................................................... 2

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950) ................................................. 1

*National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1 (D.D.C.
 2002) ......................................................................................................................................... 4

*Omega Eng'g, Inc. v. Omega, S.A.*, 2001 WL 173765 (D.Conn. Feb. 6, 2001) ..............................8

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97 (1987)........................................1

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).................................................................7

*Prokopiou v. Long Island R. Co.*, 2007 WL 1098696 (S.D.N.Y. April 9, 2007) ...........................1

*In re Quebecor* (Case No. 08-10152) (S.D.N.Y.) (JMP)................................................................5, 9

*Ross v. UKI Ltd.,* 2004 WL 67221 (S.D.N.Y. 2004) .........................................................................8

*Ruffolo v. Oppenheimer & Co., Inc.*, 1992 WL 232084 (S.D.N.Y. Sept. 1, 1992) .........................6

*Sahu v. Union Carbide Corp.*, 262 F.R.D. 308 (S.D.N.Y. 2009) ......................................................8

*Sartor v. Toussaint*, 70 Fed.Appx. 11 (2d Cir. 2002) .......................................................................2

*Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.*, 269 F. Supp.2d 356 (S.D.N.Y.
    2003) .................................................................................................................................3

*Sharp International Corp. v. State Street Bank and Trust Company*, 403 F.3d 43 (2d Cir.
    2005) .................................................................................................................................3

*In re TALT* (Case Nos. 05-10578 through 05-10601) (S.D.N.Y.) (ALG) .......................................5

*Triad Energy Corp. v. McNell*, 110 F.R.D. 382 (S.D.N.Y. 1986) ....................................................2

*United States v. Folabit*, 2001 WL 1776156 (E.D.N.Y. Nov. 30, 2001).........................................3

**STATUTES & RULES**

11 U.S.C. § 546(e) ...............................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..............................................................................................................4, 5, 6

Fed. R. Civ. P. 26...............................................................................................................................10

Fed. R. Civ. P. 26(b)(1).......................................................................................................................7

General Order M-390..........................................................................................................................6

**OTHER AUTHORITIES**

5 Wright & Miller, *Fed. Prac. & Pro.* § 1217 (3d ed. 2010)..........................................................5

## INTRODUCTION

Becker & Poliakoff LLP submits this objection to the Trustee's motion for an order (i) approving litigation case management procedures for avoidance actions and (ii) amending global protective order (Docket No. 3057) (the "Motion"). Becker & Poliakoff LLP represents a large number of investors in Bernard L. Madoff Investment Securities LLC ("Madoff"), some of whom are presumably intended defendants of the Trustee's announced clawback actions (the "Unidentified Defendants"). Our clients are, typically, people in their '70's, '80's and '90's who lost their life savings in Madoff and have been forced to restructure their lives in the aftermath of the world's largest financial crime.

### THE MOTION SHOULD BE DENIED IN FULL, PENDING THE SERVICE BY THE TRUSTEE OF COMPLAINTS AND THIS MOTION ON THE UNIDENTIFIED DEFENDANTS

1.      It is a cornerstone of the American legal system that parties to a judicial proceeding are entitled to notice and an opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))("'The fundamental requisite of due process of law is the opportunity to be heard.'"). This principle of our judicial system is so integrated into our traditions that it is embodied in every rule of federal and state courts. *See*, *e.g., Prokopiou v. Long Island R. Co.*, 2007 WL 1098696, at *5 (S.D.N.Y. April 9, 2007) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987)) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) (holding that "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served"). Unless the requirement of service is satisfied,

1

a court's decision cannot be binding on the unserved party. *See Morrissey v. Curran*, 650 F.2d 1267, 1276-77 (2d Cir. 1981) (defendants "whom plaintiff failed to serve and who did not enter appearances were not bound by judgment").

2. The Trustee seeks to circumvent this fundamental principle of due process of law by seeking an order of this Court establishing procedures which divest the Unidentified Defendants of significant rights granted to them under the Federal Rules of Civil Procedure and the Bankruptcy Rules, without giving the Unidentified Defendants notice of this motion or an opportunity to be heard. And he has done so in the context of clawback actions where he undoubtedly has already identified the Unidentified Defendants and drafted the complaints he intends to serve on them. Granting the Trustee's motion in this context will taint every action he intends to file.

3. Due process mandates that a party seeking an order affecting a claim of another give proper notice to that party. *See Loomskill Inc. v. Slifka*, 223 F. Supp. 845, 847 (S.D.N.Y. 1963) (holding that findings of facts and conclusions of law are not binding on defendant who was not served with notice of motion and did not appear at argument thereof); *Sartor v. Toussaint*, 70 Fed.Appx. 11, 13 (2d Cir. 2002)("'[W]hen a judgment entered against the defaulting party is void [for failure to effect service process], the Court has no discretion and is compelled to grant the motion [vacating judgment] for the reason that a void judgment cannot be enforced.'"(inner citation omitted); *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 386 (S.D.N.Y. 1986) (holding that "[s]ince service was not properly made on any of the movants, the judgment rendered against them is void. Any notice, constructive or actual, which the defendants had of this suit does not render the void judgment valid."); *In re Bryan*, 357 B.R. 12, 20-21 (Bankr. N.D.N.Y. 2006) (recognizing that confirmed plan constitutes *res judicata* only if

2

"there has been adequate notice given to those whose interests are being affected."); *United States v. Folabit*, 2001 WL 1776156, at *3 (E.D.N.Y. Nov. 30, 2001) (granting defendant's motion to vacate default judgment where service was improper).

## ALL AVOIDANCE ACTIONS SHOULD BE STAYED
## PENDING A FINAL NON-APPEALABLE DECISION ON NET EQUITY

4. Looking at the merits of the Motion, the Trustee has put the cart before the horse. One of the issues before the Second Circuit in the net equity appeal is whether the Trustee has the power to void transfers that predate December 11, 2006, or the power to void preferential payments, under 11 U.S.C. § 546(e). Similarly, some of the appellants have argued that the Trustee cannot recover fraudulent transfers where the payment from the debtor/broker to the customer satisfies a debt owed by the broker to the customer. Consistent with its decision in *Sharp International Corp. v. State Street Bank and Trust Company*, 403 F.3d 43 (2d Cir. 2005), the Second Circuit may hold that innocent withdrawals from a customer account with an SEC-regulated broker/dealer cannot be a fraudulent transfer. Any such holding would require the dismissal of the vast majority of the Trustee's clawback actions. Thus, it makes no sense to force Unidentified Defendants to incur the expense of defending themselves in clawback actions until there is a final, non-appealable decision on the Trustee's interpretation of "net equity." Clearly, the Trustee has to file any such actions by December 11, 2008, but the actions should then be stayed pending such a final, non-appealable decision.

5. This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d. Cir. 1998) (quoting *Jones v. Clinton*, 520 U.S. 681, 706 (1997)); *see e.g.*, *Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.*, 269 F. Supp.2d 356, 364 (S.D.N.Y. 2003) (court staying

3

current litigation "pursuant to its inherent authority to effectively manage its docket."); *DaPuzzo v. Globalvest Management Co., L.P.,* 263 F. Supp.2d 714 (S.D.N.Y. 2003) (court invoking its inherent power to stay litigation in anticipation of arbitration); *Becker v. Silverman*, 638 F. Supp. 193, 198 (S.D.N.Y. 1986) (granting a stay pending conclusion of the arbitration). The purpose of this power is to promote "economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1, 3 (D.D.C. 2002)(quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979))("'[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'").

6.  The Court should exercise its discretion and stay all of the Trustee's clawback claims pending a final non-appealable order on the Trustee's interpretation of net equity. It is a waste of everyone's time, and an undue burden on the Unidentified Defendants, to force them to answer the clawback complaints, engage in motion practice, discovery and mediation, before such a final order is entered.

### THE UNIDENTIFIED DEFENDANTS CANNOT BE DEPRIVED OF THEIR RIGHT TO A HEARING ON 12(B)(6) MOTIONS

7.  The Trustee seeks a procedure that would alter the Unidentified Defendants' rights under the Federal Rules of Civil Procedure to have this Court quickly determine whether the clawback complaints state a claim. (Motion at 7-8.) The Court should reject the Trustee's request for an order requiring defendants who file a Rule 12(b)(6) motion to immediately submit to mandatory mediation.

4

8.      Although the Trustee alleges that the procedures requested in the Motion are similar to those frequently granted by this Court for purposes of judicial efficiency (Motion at 16), he fails to cite a single case where Rule 12(b)(6) dismissal motions have been referred to mediation in lieu of immediate disposition by the court. The Trustee's reliance on the procedure orders entered in *In re Quebecor* (Case No. 08-10152) (S.D.N.Y.) (JMP) (Docket No. 3935) ("*Quebecor*") and *In re TALT* (Case Nos. 05-10578 through 05-10601) (S.D.N.Y.) (ALG) (Docket No. 3307)[1] is misplaced. Neither provides authority for the mediation procedures requested by the Trustee and neither of the orders approved referral of 12(b)(6) motions to mediation. Rather, in both, *In re Quebecor* and *In re TALT*, the courts merely granted orders referring unsettled cases to mediation. Adjudication of dismissal motions under Rule 12(b)(6) motion was still left to the court, as it must be.

9.      If an Unidentified Defendant believes that that the Trustee's clawback complaint is legally deficient as a matter of law for failure to state a claim, then nothing could be gained – particularly in terms of judicial efficiency – by imposing immediate mandatory, non-binding mediation. Judicial economy is best served by having motions to dismiss decided promptly before the court or the parties waste time and money in mediation. Non-binding mediation would have the exact opposite effect, serving only to prolong a case which, ultimately, will be dismissed.

10.     Rule 12(b)(6) fosters judicial economy by providing for the immediate disposition of legally deficient claims. *See* 5 Wright & Miller, *Fed. Prac. & Pro.* § 1217 (3d ed. 2010) ("In the exercise of their discretion and in order to promote judicial economy, courts often will use a motion directed at the form of a pleading (or a motion to dismiss under Rule 12(b)(6)) as a

---

[1] The Trustee cites to Docket No. 3309, but 3307 is the correct docket number for the Order authorizing mediation procedures in the *Tower Automotive* case.

5

vehicle for considering whether any possible claim for relief exists"); *Doe v. White*, 2010 WL 323510, at *2 (C.D.Ill. Jan. 20, 2010) (recognizing courts' willingness to consider successive motions to dismiss in interest of judicial economy); *Breen v. McMillian*, 2008 WL 2224864, at *4 (E.D.La. May 27, 2008) (dismissing claim "[i]n the interest of judicial efficiency and management of the court's docket . . . ."); *Ruffolo v. Oppenheimer & Co., Inc.*, 1992 WL 232084, *3, n. 4 (S.D.N.Y. Sept. 1, 1992) (reaching substantive grounds for motion to dismiss in the interest of judicial economy because dismissal based on improper service would merely result in inevitable re-service of complaint). Thus, it is inefficient and improper to deprive the Unidentified Defendants of the right to a prompt determination of any Rule 12(b)(6) motions.

## THE TRUSTEE SHOULD NOT BE PERMITTED TO SELECT THE POOL OF MEDIATORS

11.     Mediation is a process which can only be successful if the Unidentified Defendants believe that the deck is not stacked against them. Here, the Trustee proposes to taint the entire process by dictating who the mediators will be. He has proposed limiting the potential mediators from the 270 available on the Court's official register to ten that he has selected. (Motion at 12.)

12.     General Order M-390 provides the procedures governing this Court's mediation program. It provides that the Clerk of this Court shall establish and maintain a register of qualified mediators. (Gen. Order M-390 at 3.) The current Mediation Register on the Court's website lists approximately 270 attorneys approved to serve as mediators. Ordinarily, parties chose a mediator from the Register or the court will appoint one if the parties cannot agree. (Gen. Order M-390 at 4.)

13. Instead of permitting the parties to select mediators from the approximate 270 on the Register, the Trustee wants to limit the Unidentified Defendants to the ten people he has pre-selected. There is no rational basis for limiting the defendants' selection to the tiny fraction of available mediators unilaterally selected by the Trustee.

### THE TRUSTEE IS NOT ENTITLED TO A LIMITATION ON DISCOVERY

14. The Trustee seeks to <u>unilaterally</u> narrow the scope of discovery in the clawback lawsuits to the following six (6) issues:

> (a) the calculation of net equity for the defendant's BLMIS account; (b) the insolvency of BLMIS; (c) the fraud attributable to Madoff and BLMIS, including the Ponzi scheme; (d) the defendant's account documents and customer correspondence and interactions with BLMIS, its employees, agents and other investors or customers; (e) the defendant's good faith or lack thereof, including issues related to the defendant's actual or constructive notice of fraudulent activity by BLMIS or anyone acting on its behalf; and (f) the identity of other persons or entities that may be liable for the transfers at issue, whether as subsequent transferees or for some other reason.

(Motion at 10-11.)

15. Again, the Trustee is putting the cart before the horse. The Unidentified Defendants have not yet been served; they have not answered the complaints; they have not yet put any facts in issue. To deprive the Unidentified Defendants of discovery at this stage is a fundamental deprivation of due process of law.

16. Under the Federal Rules of Civil Procedure and the Bankruptcy Rules, litigants are entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Courts have consistently construed the requirement of "relevance" broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)) (holding that relevancy "has been construed

7

broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *Ross v. UKI Ltd.,* 2004 WL 67221, at *7 (S.D.N.Y. 2004)(holding that discovery "is certainly not limited, . . . to information directly supporting or contradicting the ultimate question in a case, narrowly formulated"; thereby permitting plaintiffs to take discovery because, generally, information sought is relevant, even though acknowledging that "plaintiffs' requests are in several instances overbroad . . . ."). Doubts about relevancy should be resolved in favor of permitting the discovery. *See In re Honeywell Intern., Inc. Securities Litigation,* 230 F.R.D. 293, 301 (S.D.N.Y. 2003) ("Where relevance is in doubt, the district court is to be permissive."); *AMW Material Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) (quoting *Omega Eng'g, Inc. v. Omega, S.A.*, 2001 WL 173765, at *2 (D.Conn. Feb. 6, 2001)) ("The term "reasonably calculated" means 'any possibility that the information sought may be relevant to the subject matter of the action.'").

17. "Relevance" remains the underlying requirement under the Federal Rules. The Trustee has no legal basis for requesting that this Court limit the scope even further without giving the Unidentified Defendants an opportunity to be heard. *See Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009). Relevance must be determined by this Court at the appropriate time, not unilaterally and *ex parte* by the Trustee.

18. Moreover, the Rules provide a methodology for providing relief to a litigant where discovery demands are unreasonable. The Trustee is not entitled to circumvent those Rules. Thus, after the Trustee serves his clawback complaints and the defendants answer and serve discovery demands, the Trustee can make whatever motions he deems appropriate for protective orders. It is premature and improper to grant the Trustee the blanket relief he seeks at

8

this time. Although the Trustee contends that courts in this Circuit "have frequently entered orders establishing procedures similar to the ones sought herein to manage large volume of avoidance cases," (Motion at 16, ¶ 15), he fails to cite any orders where this Court or any other court in New York approved a limitation on the scope of discovery. The Trustee cites *In re Quebecor* (Docket No. 3935), *In re Enron Corp.* (Case No. 01-16034) (S.D.N.Y.) (AJG) (Docket No. 22012), *In re Bayou Group* (Adv. Pro. No. 06-8318) (S.D.N.Y.) (ASH) (Docket No. 37), and *In re Lehman Brothers* (Case No. 08-1420) (SIPA) (S.D.N.Y.) (JMP) (Docket No. 2894), in support of the proposition that the discovery procedures sought here are similar to the ones "frequently entered." While the cited orders, all entered after the defendants had been served, address establishment of uniform <u>procedures</u> for discovery, none of the orders cited by the Trustee limits the <u>scope</u> of discovery. In fact, the only order cited by the Trustee that addresses the scope of discovery is *In re Enron Corp.* which merely states that "[t]he parties shall confer regarding . . . what discovery is warranted in the particular case." (*In re Enron*, (Docket No. 22012 at 7, 10, 12, and 14.)

19.     For all the foregoing reasons, particularly the Trustee's improper attempt to constrain the scope of discovery in advance of filing and service of pleadings, the Court should deny the request for an order prohibiting the Trustee's deposition absent a showing of good cause. (Motion at 11, subpar. "G".) In a footnote, the Trustee explains that "he does not personally possess any discoverable information and accordingly, a deposition of him would serve no purpose." (Motion at 11 n. 8.)[2]

---

[2] The Trustee's unsworn suggestion in a footnote that he cannot be deposed because possesses no relevant information that is not privileged is absurd. Even assuming that he knows <u>nothing</u> about this case that was not communicated to him by his attorneys, facts do not become privileged and protected from disclosure simply because they were communicated to a witness by his attorney. It is impossible to determine in advance of knowing what questions will be asked at his deposition whether the Trustee possesses discoverable, non-privileged information.

9

20. Whether the Trustee possesses discoverable information depends on the issues that emerge from the claims that have not yet been filed and the defenses that have yet to be asserted. It simply cannot be determined at this time in a vacuum whether the Trustee is entitled to a protective order barring his deposition. The Trustee should be required to follow the procedures binding on all litigants by making an appropriate motion pursuant to Rule 26 at the appropriate time. It would be inappropriate at this time to grant the Trustee a protective order when the Unidentified Defendants have not been given an opportunity to be heard on this issue.

## CONCLUSION

Based on the foregoing, the Unidentified Defendants respectfully request that the Court deny the Motion and enter an order staying all of the Trustee's avoidance actions pending a final, non-appealable order on net equity.

November 4, 2010

**BECKER & POLIAKOFF LLP**

By: /s/ Helen Davis Chaitman

45 Broadway
New York, New York 10006
(212) 599-3322
*Attorneys for Becker & Poliakoff LLP Clients*

10