MILBERG LLP  
Jonathan M. Landers  
Matthew Gluck  
Brad N. Friedman  
Jennifer L. Young  
One Pennsylvania Plaza  
48th Floor  
New York, NY 10119  
Telephone: (212) 594-5300  
Facsimile: (212) 868-1229  

SEEGER WEISS LLP  
Stephen A. Weiss  
Christopher M. Van de Kieft  
Parvin Aminolroaya  
One William Street  
New York, NY 10004  
Telephone: (212) 584-0700  
Facsimile:  (212) 584-0799  

Hearing Date: November 4, 2010  
Hearing Time: 10:00 a.m.  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |

**OPPOSITION TO TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (1) APPROVING LITIGATION CASE MANAGEMENT PROCEDURES FOR AVOIDANCE ACTIONS, AND (2) AMENDING GLOBAL PROTECTIVE ORDER**

On behalf of numerous customers ("Customers"),[1] Milberg LLP and Seeger Weiss LLP oppose in part the Trustee's Motion for Entry of an Order (1) Approving Litigation Case Management Procedures for Avoidance Actions, and (2) Amending Global Protective Order (the "Motion") [Dkt. No. 3058]. For the reasons discussed herein, the avoidance procedures proposed by the Trustee ("Trustee's Proposed Avoidance Procedures") should be modified in accordance with the revised avoidance procedures attached hereto as Exhibit 1 ("Revised Avoidance Procedures").[2]

## I.     INTRODUCTION

Although the Customers agree that the Court should adopt procedures to ensure the coordinated and efficient litigation of the large number of avoidance actions expected to be filed, any such procedures should: (1) take into account the procedural posture of the case; and (2) be fair to all parties. Ordinarily, proposed case management procedures are the product of negotiation, such that each side can ensure that its interest is adequately protected in determining how the litigation should proceed. Here, upon information and belief, the Trustee did not confer with any counsel for customers prior to filing the Motion, and the Trustee's Proposed Avoidance Procedures reflect a one-sided approach in favor of the Trustee.[3]

---

[1] As the Trustee has not disclosed against whom he will be filing avoidance actions, it is not possible to identify herein the specific customers represented by Milberg LLP ("Milberg") and Seeger Weiss LLP ("Seeger Weiss") who would be affected by the Trustee's Proposed Avoidance Procedures. Although this opposition is filed on behalf of *all such unknown customers represented by Milberg and Seeger Weiss*, those specific customers who appealed the "net equity" issue are the customers identified as the "filing parties" for electronic filing purposes only.

[2] The Revised Avoidance Procedures set forth in redline the Customers' edits to the Trustee's Avoidance Procedures.

[3] After the Trustee filed the Motion, counsel for the Customers provided counsel for the Trustee the Revised Avoidance Procedures for consideration, after which the parties met and conferred.

To rectify this unfairness, the Customers submit the Revised Avoidance Procedures (Exhibit 1), which are discussed in part below. Among other things, the Revised Avoidance Procedures provide that after the Trustee files the avoidance actions, they shall be stayed until the Second Circuit rules on the proper interpretation of "net equity," as this ruling will affect the viability, scope, and contours of any avoidance litigation. The Revised Avoidance Procedures additionally provide certain fundamental procedural safeguards for customers so that once the avoidance actions are commenced, no party receives an unfair tactical advantage through adoption of what should be purely procedural case management provisions.

## II.   DISCUSSION

### A.   Once Filed, the Avoidance Actions Should Be Stayed Until the Second Circuit Rules on the Proper Interpretation of "Net Equity" and Related Issues

The Revised Avoidance Procedures provide for a stay of all avoidance actions until the Second Circuit rules on the proper interpretation of "net equity" and related legal issues. *See* Revised Avoidance Procedures § 2(A) (Exhibit 1). A stay is necessary because the Second Circuit's ruling on "net equity" may eliminate some of the Trustee's claims, may provide necessary guidance on available defenses, and will otherwise impact many of the arguments that will be raised in any avoidance actions to be filed by the Trustee. Indeed, the Trustee's "Net Investment Method," currently before the Second Circuit, forms the basis of the anticipated avoidance actions by creating two classes of customers -- so-called Net Winners, who are subject to avoidance, and Net Losers, who are not. If the Second Circuit determines that the Net

---

However, counsel for the Trustee was unwilling to agree to any of the Revised Avoidance Procedures prior to the Customers' deadline to oppose the Motion, nor would the counsel for the Trustee adjourn the hearing date to provide the parties more time to negotiate.

3

Investment Method is incorrect, even in part, the Trustee will need to redetermine all customer claims, dramatically changing the contours of any avoidance litigation.

As the Court is aware, the Customers urged that "net equity" should be based on final account statements in accordance with SIPA and SIPC's prior liquidations, while the Trustee argued that "net equity" is limited to customers' principal deposits with BLMIS, less any withdrawals and purportedly "phony" earnings. Recognizing that this threshold issue could impact, and even eliminate, other arguments, the Court deferred to a later date determination of whether "net equity" might include interest; how "net equity" should be calculated when accounts have been transferred, assigned, or divided; the scope of the Trustee's avoidance powers; the validity of various defenses thereto; and other issues. *See* Order Scheduling Adjudication of "Net Equity" Issue (Sept. 16, 2009) [Dkt. No. 437]. After the submission of briefing and a hearing, the Court ruled in favor of the Trustee, holding that "net equity" is limited to a customer's remaining principal (i.e. the "Net Investment Method"). *See* Net Equity Order (Mar. 8, 2010) [Dkt. No. 2020].

On March 8, 2010, the Customers, the Trustee, and other parties jointly requested that the Court certify the Net Equity Order for direct appeal to the Second Circuit because "the result of the Net Equity Dispute impacts the determination and calculation of every customer claim filed in this proceeding." Request for Certification of Appeal (Mar. 8, 2010) [Dkt. No. 2021]. The Court certified the Net Equity Order for direct appeal to the Second Circuit, noting that "an immediate appeal may materially advance the progress of this proceeding." *See* Certification of Net Equity Order (Mar. 8, 2010) [Dkt. No. 2022]. The Second Circuit thereafter decided to hear the appeal, and the parties have since fully briefed the "net equity" issue in the Second Circuit

and now await an oral argument date. *See generally In re Bernard L. Madoff Inv. Secs. LLC*, No. 10-2378 (2d Cir.).

This Court and the parties have observed that the "net equity" issue affects, and indeed may moot, numerous legal issues in this case. For example, if the Second Circuit rules that the Last Statement Method is the proper interpretation of "net equity," the Trustee will have to recalculate all customer claims, which would vastly alter the litigation (and settlement) landscape. Such a ruling would likewise moot the Customers' alternative argument that interest should be included in calculating customer claims. Similarly, the Customers argued before the Second Circuit that the Trustee's "Net Investment Method" is an unauthorized avoidance power that is limited by the six-year and two-year statutory avoidance "look back" periods and to which numerous defenses may apply. *See* Customers' Appellate Br. at 46-57, *In re Bernard L. Madoff Inv. Secs. LLC*, No. 10-2378 (2d Cir.) [App. Dkt. No. 192] (discussing elements of and defenses to avoidance in the context of "net equity"). If the Second Circuit agrees with these arguments, many of the Trustee's anticipated avoidance claims will likely be subject to dismissal or otherwise limited. Likewise, settlement discussions are likely to be more productive if they are informed by the Second Circuit's "net equity" ruling, though parties who wish to mediate could certainly do so notwithstanding a stay.

As provided in the Revised Avoidance Procedures (Exhibit 1), the Court should stay the avoidance actions until the Second Circuit rules on "net equity" because: (1) under the doctrine of divestiture, the Court may not rule on any issues currently before the Second Circuit; and (2) the Customers meet the criteria for a stay.

5

### 1. The Bankruptcy Court is Divested of Those Issues Currently Before the Second Circuit

"The filing of a bankruptcy appeal 'confers jurisdiction on the [appellate court] and divests the [bankruptcy] court of control over those aspects of the case involved in the appeal.'" *Bank of Nova Scotia v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, No. 02-41729, 2007 U.S. Dist. LEXIS 95139, at *5 (S.D.N.Y. Dec. 20, 2007); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Abrahams v. Inc. Vill. of Hempstead,* No. 09-2551, 2010 U.S. App. LEXIS 16136, at *1 (2d Cir. Aug. 4, 2010) ("The dismissal of the complaint while the appeal was pending was error. A notice of appeal divests a district court of jurisdiction."); *Hom Sui Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002) ("The district court could not rule on any motion affecting an aspect of the case that was before [the Second Circuit] while that appeal was pending.") (Sotomayor, J.). Otherwise, "confusion and inefficiency . . . would . . . result were two courts considering the same issue or issues simultaneously." *Liscinski v. Cambridge Mgmt. Group (In re Trimble),* No. 06-22616, 2008 Bankr. LEXIS 835, at *6 (Bankr. D.N.J. Mar. 18, 2008) ("The divestiture rule applies to appeals of bankruptcy proceedings."); *see also Cibro Petroleum Prods., Inc. v. Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 108 (S.D.N.Y. 2001) ("[S]taying the Bankruptcy Court's proceedings pending appeal will prevent inconsistent rulings and ensure that judicial resources are not wasted on useless litigation.").

These considerations are pertinent here, where the issues before the Second Circuit overlap with the issues that will be raised in the avoidance actions. *See Cibro Petroleum Prods.*, 270 B.R. at 108 ("Application of the divestiture rule is appropriate in this case because trial of

6

the PILOT Adversary Proceeding will involve a key issue identical to one of the issues involved in the order being appealed."). For example, in briefing the "net equity" issue, the Customers and other parties raised before the Second Circuit the following legal issues, the Second Circuit's ruling on which may eliminate or significantly impact the Trustee's anticipated avoidance claims:

1) Whether "net equity" is based on customers' final account statements;

2) Whether Madoff's fraud can be attributed to innocent customers;

3) Whether the Trustee's "Net Investment Method" is supported by his avoidance powers, and more generally, the relationship between "net equity" and the Trustee's avoidance powers;

4) Whether the Trustee must prove all elements of avoidance as to any transactions he seeks to avoid through application of the "Net Investment Method";

5) Whether payments to customers of broker-dealers are for "reasonably equivalent value" if the broker-dealer was conducting a Ponzi scheme; and

6) Whether the Trustee's avoidance powers are limited by the statutory avoidance "look back" periods (such as the two-year "look back" period set forth in 11 U.S.C. 548(a)(1)) and whether other defenses, such as 11 U.S.C. Section 546(e), apply.

*See generally* Customers' Appellate Br., *In re Bernard L. Madoff Inv. Secs. LLC*, No. 10-2378 (2d Cir.) [App. Dkt. No. 192].

To litigate these issues before this Court in hundreds if not thousands of individual avoidance actions when these very issues are currently before the Second Circuit would violate the doctrine of divestiture. Accordingly, the avoidance actions should be stayed until the Second Circuit rules on "net equity" and related sub-issues.

## 2. The Customers Meet the Criteria for a Stay

The avoidance actions should also be stayed because the Customers satisfy this Circuit's criteria for a stay. *See* Fed. R. Bankr. P. 8005. In determining whether to issue a stay, courts consider:

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal, and (4) the public interests that may be affected.

*LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994); *see also Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.)*, 330 B.R. 93, 94 (S.D.N.Y. 2005) (applying these factors in assessing a request for a stay under Fed. R. Bankr. P. 8005).[4] "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 361 B.R. 337, 347 (S.D.N.Y. 2007).

Here, each of these considerations weighs in favor of a stay. The Customers will suffer irreparable harm if they are forced to defend avoidance actions which may be mooted (at least in part) or significantly altered in scope by the Second Circuit's ruling. Unlike the Trustee, whose legal fees and expenses are paid by SIPC, Madoff's customers are responsible for their own legal

---

[4] *See also Nken v. Holder,* 129 S. Ct. 1749, 1756 (2009) ("An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'"); *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942) ("[I]t is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.").

fees and expenses. They should not be required to defend avoidance actions at this juncture, when the Second Circuit's ruling may render litigation of certain issues unnecessary while providing important guidance on others. In contrast, the Trustee will suffer no injury if the actions are temporarily stayed.

In addition, the Customers have a substantial possibility of prevailing on appeal. The result urged by the Customers on appeal is founded in numerous sound legal arguments, and even the SEC has filed an *amicus* brief urging that the Trustee should adjust Customers' deposits with Madoff to account for inflation -- a result that would make some so-called "Net Winners" in fact "Net Losers." *See* SEC's *Amicus* Br. at 4, 17, *In re Bernard L. Madoff Inv. Secs. LLC*, No. 10-2378 (2d Cir.) [App. Dkt. No. 296]. "Even [if] the court considers it unlikely that the Movant will prevail on appeal, given the novel situation presented in this case the court cannot say that the Appeal is entirely frivolous." *In re George K. Boyer*, No. 01-32712, 2006 Bankr. LEXIS 3127, at *4 (Bankr. Conn. Nov. 9, 2006) (granting creditor's request for stay of settlement proceedings pending resolution of appeal); *see also Cibro Petroleum Prods., Inc. v. Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 108 (S.D.N.Y. 2001) (staying adversary proceeding involving issue on appeal that, "regardless of its likelihood of success, does not appear to be frivolous [or] intended to stall litigation").

Finally, public policy considerations weigh in favor of staying the adversary proceedings. "[S]taying the Bankruptcy Court's proceedings pending appeal will prevent inconsistent rulings and ensure that judicial resources are not wasted on useless litigation." *Cibro Petroleum Prods.*, 270 B.R. at 108. Likewise, Madoff's many victims should not be forced to spend expend tine, effort, and money defending avoidance actions when the Second Circuit's ruling may eliminate or inform many of the issues that would otherwise be litigated.

B.  **The Court Should Adopt the Revised Avoidance Procedures to Ensure that the Avoidance Actions Proceed Fairly**

The Trustee's Proposed Avoidance Procedures should also be modified to provide a level playing field for all parties. In their current form, the Trustee's Proposed Avoidance Procedures provide unfair strategic advantages to the Trustee. The Revised Avoidance Procedures attached as Exhibit 1 seek to rectify this unfairness.

For example, the Revised Avoidance Procedures:

- require the Trustee to serve complaints asserting avoidance claims not just on the customer being sued, but also on the customer's counsel if known to the Trustee (Revised Avoidance Procedures at § 3(B));

- ensure that the Global Protective Order does not prevent customers from sharing confidential information with one another in connection with the coordination of joint defenses (Revised Avoidance Procedures at §§ 4(D); (P));

- require that initial disclosures be produced earlier, so that the parties have adequate time to take depositions. Under the Trustee's proposal, the parties have 210 days to complete discovery, but initial disclosures need not be produced until 180 days after the complaint is filed. Such a lengthy time period for producing initial disclosures is problematic, because under the Trustee's proposal, parties cannot take depositions until after the production of initial disclosures. Under this scenario, if a party waits until day 180 to produce initial disclosures, the parties will have very little time in which to take depositions. (Revised Avoidance Procedures at 4(B); 4(F); 4(H));

- preserve customers' rights to object to the sufficiency of any "summary" expert or other reports that the Trustee seeks leave to produce (Revised Avoidance Procedures at § 4(C));

- ensure that discovery is not prematurely or unduly limited, particularly given that the customers have yet to see the allegations against them or assert their defenses (Revised Avoidance Procedures at § 4(G));

- require that *both* the customers *and* the Trustee send representatives with full settlement authority to any mediations -- not just the customers, as the Trustee proposes (Revised Avoidance Procedures at § 5(G)); and

- permit out-of-town customers to attend mediations by phone.

10

These and the other modifications to the Trustee's Proposed Avoidance Procedures will more fairly govern the anticipated avoidance actions while reducing potential disputes (and associated motion practice) between the parties.

### III.  CONCLUSION

Based on the foregoing, the Customers respectfully request that the Court approve the Revised Avoidance Procedures attached as Exhibit 1.

Dated:  November 4, 20010

                                                      s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Counsel for Customers*