**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Marc E. Hirschfield
mhirschfield@bakerlaw.com
Richard J. Bernard
rbernard@bakerlaw.com
Marc Skapof
mskapof@bakerlaw.com
Elyssa S. Kates
ekates@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Hearing Date: November 10, 2010
Hearing Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**TRUSTEE'S OMNIBUS REPLY TO OBJECTIONS TO (A) MOTION FOR ENTRY OF AN ORDER (I) APPROVING LITIGATION CASE MANAGEMENT PROCEDURES FOR AVOIDANCE ACTIONS AND (II) AMENDING GLOBAL PROTECTIVE ORDER; AND (B) TRUSTEE'S MOTION FOR AN ORDER PURSUANT SECTION 105(a) OF THE UNITED STATES BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ESTABLISHING PROCEDURES FOR THE APPROVAL OF SETTLEMENTS**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, hereby replies (the "Reply") to the objections[1] (each an "Objection" and collectively, the "Objections") to either of (A) the Trustee's Motion For Entry Of An Order (I) Approving Litigation Case Management Procedures For Avoidance Actions And (II) Amending Global Protective Order (the "Case Management Motion"); and (B) the Trustee's Motion For An Order Pursuant Section 105(A) Of The United States Bankruptcy Code And Rules 2002 And 9019 Of The Federal Rules Of Bankruptcy Procedure Establishing Procedures For The Approval Of Settlements (the "Settlement Procedures Motion" together with the Case Management Motion, the "Motions").[2] In support of

---

[1] Objections with respect to the Case Management Motion were received from the following parties: (a) Lawrence R. Velvel, (b) Kleinberg, Kaplan, Wolff & Cohen, P.C., counsel for Lawrence Ellins and Malibu Trading and Investing, L.P., (c) Phillips Nizer LLP, counsel for Herbert Barbanel, Alice Barbanel and Lauri Ann Schwartz-Barbanel, (c) Davis Polk & Wardwell LLP, counsel for Sterling Equities Associates and certain affiliates (the "Davis Polk Objection"), (d) Loeb & Loeb LLP, counsel for Alan L. Aufziel and certain other family members, (e) Becker & Poliakoff LLP, counsel for "a large number of investors" in BLMIS (the "Becker Poliakoff Objection"), (f) SNR Denton US LLP, counsel for Marsha Peshkin, Michael Mann and Barry Weisfeld, (g) Milberg LLP and Seeger Weiss LLP, counsel for "numerous customers" (the "Milberg Objection") and (h) Lax & Neville, LLP, counsel for "numerous customers" (the "Lax Neville Objection"). Objections with respect to the Settlement Procedures Motion were received from the following parties: (i) Kleinberg, Kaplan, Wolff & Cohen, P.C., counsel for Lawrence Ellins and Malibu Trading and Investing, L.P. and (ii) Becker & Poliakoff LLP, counsel for "a large number of investors" in BLMIS (the "Becker Poliakoff Settlement Objection"). In addition, the Trustee received a copy of a letter to the Court from the Network for Investor Action and Protection setting forth objections to certain aspects of the Motions. Each of the parties objecting to the Motions is referred to as an "Objector" and collectively, they are the "Objectors".

[2] Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Motions, as applicable.

the Reply, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     Although the BLMIS liquidation presents extraordinary issues and challenges due to its size and complexity, the relief sought in the Motions is decidedly ordinary, routine and an established part of bankruptcy practice in this and other districts.  In connection with the Case Management Motion and contrary to the arguments raised by the Objectors, the motion does not prejudice any party-in-interest or defendant, infringe on any substantive rights, run afoul of the judicial principle of divestiture, or tilt the playing field in favor of the Trustee in connection with the numerous avoidance actions the Trustee will be filing in advance of the expiration of the statute of limitations to bring such actions.  Rather, the relief sought in the Case Management Motion is procedural, will streamline and expedite what will likely be a voluminous amount of litigation, is consistent with similar orders entered in cases in this and other districts, and benefits the Court, the Trustee and defendants alike.

2.     Similarly, despite protestations to the contrary, the Settlement Procedures Motion is not part of some plot put in place by the Trustee to confuse unsophisticated defendants and evade judicial scrutiny.  As a matter of logic, there is simply no way for the Trustee to manipulate the settlement process to the detriment of a defendant because if any defendant believes the Trustee's settlement offer is too high, that defendant can walk away from the table and argue the case on its merits before this Court.  In truth, the Settlement Procedures are designed to protect settling defendants' legitimate privacy concerns about publication of their financial condition and the Trustee is frankly puzzled as to why counsel for some of the

Objectors would be willing to sacrifice their very clients'[3] privacy for the sake of peeking at someone else's settlement terms, which are wholly irrelevant to their particular clients. Finally, although $10 million[4] may seem far from a "de minimis" sum, in the context of these cases it is a relatively modest amount and thus consistent with other cases where courts have granted similar relief.

3. Taken together, approval of the Motions will promote judicial efficiency and advance the interests of both the Trustee and defendants by providing a mechanism for the timely resolution of the Avoidance Actions. Accordingly, for the reasons set forth below, the Objections have no merit and should be overruled in their entirety.

## BACKGROUND

4. On October 21, 2010, the Trustee filed the Motions seeking, among other things, to streamline and facilitate the prosecution, resolution or settlement of lawsuits which he will commence seeking the avoidance of certain transfers of fictitious profits made by BLMIS prior to the collapse of the Ponzi scheme. As stated in the Case Management Motion, the Trustee is willing to resolve as many of the Avoidance Actions as possible without resort to a full trial or extensive litigation. Thus, the procedures set forth in the Case Management Motion are specifically designed to facilitate resolution of the Avoidance Actions while simultaneously protecting the rights of both the Trustee and named defendants. In conjunction, the Settlement Procedures Motion seeks to simplify the process for settling Avoidance Actions seeking $20

---

[3] With respect to the Becker Poliakoff Settlement Objection, it is not clear from that Objection whether it is being filed on behalf of that firm's net winner clients or its net loser clients.

[4] The proposed Settlement Procedures contemplate the Trustee having authority to settle any claim of $10 million or less without further approval of this Court. For claims between $10 and $20 million, parties in interest would have a right to object.

- 4 -

million or less without resort to further or additional orders of this Court.

## ARGUMENT

**I.    The Case Management Motion is Consistent with Procedures Employed in this and Other Districts and is Designed to Safeguard the Defendants' Substantive Rights**

5.     The Objectors primarily argue that the consideration of the Case Management Motion is premature and should be held in abeyance until the Trustee actually commences the Avoidance Actions. Similarly, the Objectors also contend that implementation of the Avoidance Procedures and the prosecution of the Avoidance Actions should be delayed until the Second Circuit Court of Appeals (the "Second Circuit") considers and rules on their appeal of this Court's decision interpreting "net equity" under the SIPA statute. Moreover, some of the Objectors go so far as to suggest the there should be a stay of the Avoidance Actions until there are final rulings on all ancillary issues related to "net equity" calculation. Finally, the Objectors contend that consideration of the Avoidance Procedures now somehow prejudices claimants because they do not know if in fact they will be subject to an Avoidance Action.

6.     Finally, the Objectors collectively express various concerns about such things as who can file Notices of Applicability, service of process, discovery and the sharing of confidential information. With respect to these issues, and in an attempt to narrow the issues before the Court, the Trustee has met and conferred with counsel for some of the Objectors and has amended the proposed case management order (the "Case Management Order") to address these concerns. A redlined copy of the revised proposed Case Management Order is attached hereto as Exhibit A.

7.     For the reasons set forth below, none of these arguments hold water and the facts and equities of the instant case tilt decidedly in favor of adopting the Avoidance Procedures set

forth in the Case Management Motion.

  A. <u>Implementation of the Avoidance Procedures is Timely</u>

  8. As stated above, the Objectors primarily believe that implementation of the Avoidance Procedures in advance of filing the Avoidance Actions and an appellate ruling on the definition of "net equity" is premature. The Objectors are wrong.

  9. Contrary to the Objectors' concerns, there is no substantive reason why the implementation of the Avoidance Procedures needs to follow commencement of the Avoidance Actions. The relief sought in the Case Management Motion is purely procedural, routine in this and other districts for large and complex cases, and approval in advance of filing the Avoidance Actions does not and cannot prejudice the rights of potential defendants in any way. Indeed, the Avoidance Procedures are replete with instances and examples of where and how a party to an Avoidance Action can seek relief from the Court from the Avoidance Procedures if appropriate. The Avoidance Procedures do nothing to trample any party's right to judicial review.[5]

  10. Moreover, the mere fact that the Trustee received numerous formal and informal objections to the Avoidance Procedures Motion undercuts any argument that claimants are being prejudiced, lack notice of the proposed Avoidance Procedures or that the Trustee somehow failed to provide adequate notice of the Case Management Motion. The fact that objections were filed by one *pro se* person and eight law firms – some of which claim to represent a "large number of investors" and "numerous customers" – demonstrates that the rights of those who may be sued are more than adequately protected. Conversely, from the Trustee's point of view, compelling

---

[5] To make this point even more clear, the Case Management Order has been revised to include a provision specifically preserving a party's right to seek relief from the Avoidance Procedures upon appropriate application to the Court in accordance with the Avoidance Procedures.

- 6 -

reasons exist to implement the Avoidance Procedures as promptly as possible.

11. First, the statute of limitations to commence the Avoidance Actions expires on the two-year anniversary of the commencement of the BLMIS liquidation proceeding, and having the Avoidance Procedures in place before that date allows both the Trustee and the defendants to know what the "rules of the game" are once the Avoidance Actions are filed and served. Accordingly, rather than prejudicing defendants, as the Objectors allege, implementation of the Avoidance Procedures now *benefits* them by setting and establishing consistent procedures and timelines to avoid piecemeal litigation and confusion. Second, some of the Avoidance Procedures take effect immediately. For example, the Avoidance Procedures establish consistent rules for things such as service of process, the timing of complaint responses (which are automatically extended to 60 days after service and can be further extended for up to 90 additional days) and consideration of Dismissal Motions. Thus, all of these Avoidance Procedures are designed to ensure a level playing field and consistency across adversary proceedings. Further, given the sheer volume of anticipated Avoidance Actions, adopting the Avoidance Procedures now fosters judicial economy and lessens the strain on this Court of trying so many actions simultaneously.

12. The Objectors also contend that entry of the Case Management Order and the prosecution of the Avoidance Actions should wait for the Second Circuit's decision on what constitutes "net equity." Some Objectors even go farther by suggesting that implementation of the Avoidance Procedures and the prosecution of the Avoidance Actions should await the entry of final orders on all ancillary issues related to "net equity." One Objector even states that the Bankruptcy Court is divested of jurisdiction over Avoidance Actions while the "net equity"

dispute is pending before the Second Circuit. The Objectors are wrong.

13. As a threshold matter, neither this Court, the Trustee or the potential Avoidance Action defendants have any control over when the Second Circuit will render a decision. In fact, the Second Circuit has not yet set a date for oral argument on the appeal. A decision by the Second Circuit, therefore, could be at least months off. Moreover, a ruling by the Second Circuit will not necessarily be the last review of the issue as the losing party could well seek en banc consideration by the Second Circuit or review by the United States Supreme Court, a process that could last a year or substantially longer. If one adds in obtaining final rulings on all issues ancillary to the "net equity" ruling, the time period may be exponentially expanded. It is wholly inequitable for the Trustee to have to wait years before he can even *start* prosecuting actions seeking the recovery of fictitious profits. While the Trustee can surmise why those customers who received back all of their principal plus fictitious profits stolen by Madoff from other customers would want to delay the prosecution of the litigations against them as long as possible, such a result is improper and would substantially prejudice the rights of those customers from whom the fictitious profits were stolen and for whose benefit the Trustee asserts his avoidance powers.

14. The mere happenstance of having issues on appeal simultaneously with the prosecution of related issues is part and parcel of the bankruptcy process, and in no way compels putting the Avoidance Actions on hold. In fact, because this Court has already issued a decision on the matter of "net equity", that decision is law of the case and thus binding on all of the parties until the Second Circuit issues its decision on the matter. Certain of the Objectors contend, however, that the Court is divested of jurisdiction over the Avoidance Actions because

of the pending "net equity" or that the Trustee's Case Procedures Motion violates the All Writs Act. These arguments are frivolous. It is well established that "[a]fter a notice of appeal has been filed, bankruptcy courts do retain jurisdiction to decide issues different from those on appeal." *Bank of Nova Scotia v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.),* 2007 U.S. Dist. LEXIS 95139 (S.D.N.Y. Dec. 20, 2007) (citations omitted); *see also Griggs v Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (noting the district court was divested of control over "those aspects of the case involved in the appeal"). In any Chapter 11 bankruptcy case, a court may issue "innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." *Prudential Lines, Inc. v. Am. S.S. Owners Mutual Protection and Indem. Assoc., Inc. (In re Prudential Lines),* 170 B.R. 222, 244 (S.D.N.Y. 1994). It is only by allowing the bankruptcy court to enforce orders that are on appeal that "the least disruption of the court's administration" can be insured. *Id.* Accordingly, the fact that the Court's "net equity" decision is on appeal does nothing to restrict the Court's ability to adjudicate the Avoidance Actions.

15.   Additionally, as a matter of substance, the Trustee also contends that there is no intrinsic nexus between the definition of "net equity" and the avoidability of the fictitious profits or preferences he will seek to recover. No matter how the Second Circuit (or whichever court has the final say on the matter) rules on how to interpret the term "net equity" under the SIPA statue, that ruling is unlikely to change decades of hornbook bankruptcy law on whether a debtor received reasonably equivalent value in exchange for a transfer by the debtor. In the context of a Ponzi scheme, the law is clear that, at most, value is given only up to an investor's principal investment. *In re Bayou Group, LLC*, 2010 WL 3839277 (S.D.N.Y. 2010) (*citing In re Bayou

- 9 -

*Group, LLC*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008) (Bayou III), *aff'd in part, reversed in part on other grounds*) (holding that the Bankruptcy Court properly noted that "virtually every court to address the question has held unflinchingly 'that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers." *In re Bayou Group, LLC*, 362 B.R. 636 (Bankr. S.D.N.Y.2007) (Bayou I)). Even if the Objectors wish to litigate this established substantive legal point, it is not proper for them to attempt to do so in the context of a motion to implement procedures for the litigation of avoidance actions.

16.    Finally, there is no stay in place of this Court's "net equity" decision to warrant a delay in implementing the Avoidance Procedures and the Objectors here *never requested such a stay from this Court or the Second Circuit*.[6] The mere implementation of Avoidance Procedures can hardly be said to impede or circumvent the Second Circuit because the relief sought is purely procedural and does not and cannot affect any party's substantive rights.

17.    The Objectors also complain that the Trustee "seeks to <u>unilaterally</u> narrow the scope of discovery." Becker Poliakoff Objection at 7 (emphasis in original). They also contend that the Trustee seeks to impose "[t]ime limits to complete discovery that contravene the Federal Rules of Civil Procedure and the Bankruptcy Rules." Davis Polk Objection at 5. Further, they object to the limitations on taking the Trustee's deposition. These objections demonstrate a utter misreading or misunderstanding of the proposed Avoidance Procedures as the Avoidance Procedures do none of these things. With respect to each of these issues, the Avoidance

---

[6] In the Milberg Objection, Milberg states that the Objectors meet the criteria for a stay. The Trustee disagrees as a matter of law and fact. Among other things, the Objectors have failed to show any irreparable harm or any of the other factors that a court must consider when determining whether a stay is appropriate. In any event, the Trustee respectfully submits that an objection to a procedures motion is an improper method for a party to seek a stay.

- 10 -

Procedures specifically provide (a) that the parties may agree to alter time and discovery constraints and (b) absent such agreement, either the Trustee or the defendant may seek entry of an order from the Court granting relief from such provisions. There is absolutely nothing wrong, or even uncommon, for a court to establish frameworks for discovery while allowing a party to seek judicial relief where appropriate. Despite the rhetoric contained in the Objections, none of the defendants to the Avoidance Actions will be prejudiced by the provisions of the Avoidance Procedures relating to discovery.

18. Likewise, the Objectors protest the provisions of the Avoidance Procedures that require that all Avoidance Actions be subject to mandatory mediation. At least one Objector suggests that mandatory referral to mediation, at least in certain contexts, deprives the defendants of their "right to a hearing" and another objects to the failure of the Trustee to include an "opt-out" mechanism if the defendant does not consent to mediation. These objections are also frivolous. It is now routine in large cases for avoidance actions and other disputes to be referred to mandatory mediation.[7] Under the Southern District of New York's mediation order, General Order M-390, it is clear that the Court may order mediation without the consent of the parties. Accordingly, the Court's referral of the Avoidance Actions to mandatory mediation is entirely consistent with General Order M-390 and hardly constitutes a Constitutional or any other violation of a defendant's rights since if the mediation is not successful, the defendant retains the right to have the Court adjudicate the matter.

---

[7] In fact, in the District of Delaware, *all* avoidance actions in that district are automatically referred to mandatory mediation within "ninety (90) days after an answer or other responsive pleading is filed." *See* General Order Re: Procedures In Adversary Proceedings dated April 7, 2004, revised on July 14, 2004 (Bankr. D. Del).

B. <u>The Revised Case Management Order Adequately Addresses the Objectors' Concerns</u>

19.     In addition to the objections noted above, the Objectors also quibble with certain aspects of the Avoidance Procedures related to, among other things, Notices of Applicability, discovery, service of process and mediation. The Trustee and counsel for some of the Objectors have met and conferred on these issues and the Trustee has agreed to make certain revisions to the Avoidance Procedures aimed at resolving many if not most of these issues. For the benefit of the Court and parties in interest, the revisions to the Case Management Order include, among other things, the following:

- <u>Notice of Applicability</u>: Both the Trustee and any defendant will be permitted to file a Notice of Applicability, except for those Avoidance Actions seeking greater than $20 million, which must require the parties' mutual consent.

- <u>Service of Process</u>: For all parties known to the Trustee to be represented by counsel, the Trustee will provide a courtesy copy of the notice, summons and complaint on such counsel.

- <u>Discovery</u>: Certain of the discovery provisions have been modified as requested by the Milberg Objectors to, among other things, permit defendants to produce discovery electronically and make clear that neither the Avoidance Procedures nor the Global Protective Order restricts the ability of any defendant from sharing Confidential Information concerning that defendant with any other defendant.[8]

- <u>Mediation</u>: If the parties cannot agree on one of the mediators set forth on the Register of Mediators, the parties can request that the Court appoint a mediator, including one from the Register of Mediators.[9] Additionally, to the extent that a defendant wishes to attend the mediation by phone, the Trustee has no objection. Likewise, if a defendant is too sick or otherwise unable to attend the mediation even by phone, the Trustee, of course, has no objection to that defendant being excused from the mediation. Finally, the Trustee will participate in the mediation with the same settlement authority as the defendants.

---

[8] Certain of the Objectors have also requested that notwithstanding the Protective Order, they be permitted to share Confidential Material with codefendants. As this is an issue which does not affect the Trustee, the Trustee takes no position on this request. Nevertheless, the Trustee has incorporated this request into the revised proposed Case Management Order in the event the Court grant the Objectors the relief they seek on this issue.

[9] The Trustee respectfully submits that having a limited number of mediators is beneficial to the prospect of a successful resolution of the Avoidance Actions since those mediators will necessarily become familiar with the issues inherent in the Avoidance Actions. Such familiarity will promote efficiency and streamline the mediations.

- 12 -

- <u>No Preclusion to Seek Judicial Relief from Avoidance Procedures</u>: A section has been added to make clear that the entry of an Order approving the Avoidance Procedures is without prejudice to the right of the Trustee or any defendant to seek relief from the Court from the Avoidance Procedures upon a showing of good cause.

20. The Objectors request that a specific procedure be put in place to permit common issues of law to be adjudicated simultaneously in order to promote efficiency. The Trustee respectfully submits that there is nothing in the Avoidance Procedures which restricts or precludes any defendant in an Avoidance Action from joining with other defendants to file joint motions to dismiss, joint motions for summary judgment or otherwise seek common relief. Similarly, there is no restriction on the Trustee seeking relief from the Court on common issues across Avoidance Actions. Accordingly, no changes to the Avoidance Procedures are needed to address this complaint.

C. <u>The Revisions to the Protective Order are Appropriate.</u>

21. One Objector objects to the proposed amendments to the Protective Order because, it contends, customers relied on the provisions of the Protective Order in sharing information with the Trustee. The Protective Order specifically contemplates that the Trustee or other parties-in-interest could seek relief from that order and accordingly, such customers were on notice of the potential for the order to change as may be appropriate. <u>See</u> Paragraph 22 of Protective Order. As the Trustee set forth in the Case Management Motion, it would be inappropriate and administratively burdensome for the Trustee to seek and for the Court to consider numerous motions seeking to seal each and every avoidance complaint he will file. Further, the filing under seal of each of those complaints is not consistent with section 107 of the Bankruptcy Code. Accordingly, there is absolutely no basis to require that such complaints be filed under seal.

- 13 -

22.    With respect to Confidential Account Material, the Trustee has sought to balance the privacy of BLMIS customers with the requirement that he produce discovery of his experts. By restricting access to such material to only professionals who have executed a restrictive non-disclosure agreement, the Trustee respectfully submits that he has appropriately balanced such issues.

23.    To the extent outstanding issues remain between the parties, the Trustee respectfully submits that the Avoidance Procedures are consistent with existing practice in this District and that the rights of potential defendants are properly protected. Accordingly, for the reasons set forth in the Case Management Motion, this Court should enter the Case Management Order as modified.

**II.    The Settlement Procedures Motion is not a Device for the Trustee to Manipulate or Dupe Settling Defendants or Evade Judicial Scrutiny**

24.    As noted above, the Trustee is at a loss to understand the vehement response of some of the Objectors to the Settlement Procedures. Rather than articulate a rational reason for opposition, the Objectors to the Settlement Procedures Motion substitute invective and *ad hominem* attacks on the Trustee in place of legal argument. As stated in the Settlement Procedures Motion, the relief sought is designed to expeditiously promote and process settlements of relatively small claims in the context of these cases while simultaneously safeguarding (and thus incentivizing settlement) settling defendants' sensitive financial information. The Objectors, on the other hand, propose a procedure which would have the inevitable effect of chilling settlement discussions because it would expose that same sensitive information to public scrutiny. Finally, the Objectors fail to comprehend that the "low end of reasonableness standard" embodied in Bankruptcy Rule 9019 refers only to the "reasonableness"

of the settlement to the Trustee and does not look at whether the settlement is reasonable to the non-debtor party.

25.     As a preliminary matter, concerns about the Trustee manipulating unsophisticated defendants into settling for more than they should are groundless. If a particular defendant has particular facts and circumstances that make his or her ability to pay a real burden, the Trustee's Hardship Program has been continued and the Trustee invites and encourages customers to come forward with information documenting their alleged inability to pay. If accepted into the Hardship Program, the Trustee will dismiss a case if commenced or reduce the amount sought in a settlement to account for that defendant's particular circumstances. This program demonstrates the Trustee's good faith in seeking to resolve the Avoidance Actions without resort to litigation and commitment to treating each case based on its particular facts and circumstances.

26.     At bottom, what the Objectors want is to be able to peek at the settlements of settling defendants to know at what discount they settled. Aside from pure prurient interest, the substance of any particular settlement is wholly immaterial to any other settlement. In other words, when calculating an appropriate basis for settling a particular claim, the Trustee will look to the facts and circumstances of a particular defendant's ability to pay in making an offer. And because the Trustee is highly confident he will succeed on the merits of all of the Avoidance Actions, he will not be handicapping settlements for uncertainty of outcome but rather, he will only do so based on ability to pay.

27.     As mentioned above, $10 million is not a small amount of money. In the context of a multi-billion dollar case with numerous potential Avoidance Action defendants, however, that sum is relatively modest. Thus, approval of the Settlement Procedures will streamline the

settlement process for the more modest claims and free up time and resources to pursue the larger Avoidance Actions for the benefit of Madoff's victims. For all of the reasons stated above, the Objections to the Settlement Procedures Motion are groundless and should be denied in their entirety.

28. Finally, in informal communications with the Trustee, counsel for one of the objecting parties queried whether the Settlement Procedures Motion seeks authority to settle only those Avoidance Actions aggregating to $20 million or less or whether the Trustee sought authority to settle the Avoidance Actions without further Court approval on an account by account basis. To clarify for the benefit of the Objectors and this Court, the Trustee seeks authority to implement the Settlement Procedures on an account by account basis.

WHEREFORE, for the reasons set forth above, the Trustee respectfully requests that this Court overrule the Objections in their entirety and enter the orders approving the Case Management Motion, as modified, and the Settlement Procedures Motion.

Dated: New York, New York
November 8, 2010

BAKER & HOSTETLER LLP

By: /s/ *Marc E. Hirschfield*
    David J. Sheehan
    Marc E. Hirschfield
    Richard J. Bernard
    Marc Skapof
    Elyssa S. Kates
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Esq., Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Bernard L. Madoff*

300110191.6

- 16 -