BAKER & HOSTETLER LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
Irving H. Picard  
Email: ipicard@bakerlaw.com  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Marc E. Hirschfield  
Email: mhirschfield@bakerlaw.com  
Geraldine E. Ponto  
Email: gponto@bakerlaw.com  

Hearing Date: November 10, 2010  
Hearing Time: 10:00 a.m.  
Objection Deadline: November 3, 2010  

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**TRUSTEE'S REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER ESTABLISHING PROCEDURES FOR THE ASSIGNMENT OF ALLOWED CLAIMS**

TO THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard, Esq. ("Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully states:

**I.    Relevant Background**

1.    ASM Capital, L.P., ASM Capital III, L.P. and ASM Offshore Limited (collectively, "ASM Capital"), filed a limited objection ("Objection")[Dkt. No. 3078] to the Trustee's motion for an order establishing procedures, to be effective on the date the motion was filed, that is, October 21, 2010, for the assignment of allowed customer claims (the "Motion")[2] [Dkt. No. 3057].

2.    As set forth in the Motion, it has come to the Trustee's attention that claims traders are actively seeking to purchase allowed customer claims for profit. The procedures governing the transfer of claims set forth in Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3001(e)[3] are unavailing in the circumstances of this SIPA proceeding for various reasons, including that claims are filed with the Trustee's agent,[4] and not the Clerk of the Court; the

---

[1] For convenience, future references to SIPA will not include "15 U.S.C."

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[3] Bankruptcy Rule 3001(e) governs the process for transferring a claim, and requires that, after a proof of claim has been filed, a transferee must file evidence of the transfer with the Clerk of the Bankruptcy Court, who then notifies the transferor by mail of the transfer, affording the transferor twenty-one (21) days to object. If no objection is timely filed, the transferee of the claim is substituted for the transferor. If a transferor timely files an objection, after notice and a hearing, the Bankruptcy Court determines whether the claim has been properly transferred and any other issue raised by the objection.

[4] By Order dated December 23, 2008 [Dkt. No. 12], the Court ordered, among other relief, that all claims against BLMIS were to be filed at the Trustee's Claims Processing Center in Dallas, Texas. Pursuant to section 78fff-1(a) of SIPA, the Trustee retained AlixPartners to maintain the register of BLMIS customers and other information with respect to customer claims and update that information as often as needed to accurately reflect

Pg 3 of 11

Trustee's agent maintains the docket of claims submitted to the Trustee; customers have requested, and the Trustee has agreed, that customer claim information be maintained as confidential and not disclosed unnecessarily, unless the customer discloses that information; and processing the transfer of claims through the Clerk of the Court would impose a significant administrative burden upon the Court that would necessarily require the services of the Trustee's agent resulting in costly and time-consuming duplication of effort.

3. The uniform claims trading procedures ("Procedures") and forms proposed by the Trustee in the Motion are essential in the circumstances of this SIPA proceeding to provide guidance and ensure (a) clarity in the claims trading process; (b) proper notice to those claimants who may wish to transfer their allowed claims;[5] and (c) accuracy in identifying the record holder of allowed claims and recording other information about customer claims.

4. At the same time, however, the Procedures and forms should not be tailored to benefit a for-profit claims trader to the detriment of the rights and powers afforded to the Trustee under SIPA and the Bankruptcy Code, which benefit all customers and the estate as a whole. Likewise, the Trustee had taken care in drafting the initial Procedures in order that the allocation of customer property and the distributions to allowed customer claims that the Trustee anticipates bringing before the Court by way of a separate motion at the appropriate time not be complicated, hampered or adversely affected in any way by the claims trading process. To achieve the Trustee's purposes, the Motion should be granted, and the Procedures, as modified below, should be approved.

---

information set forth in the claims.

[5] As set forth in the Motion, whether a claimant elects to transfer an allowed claim is the claimant's decision, and the Trustee takes no position as to whether any claim transfer would be beneficial to the claimant.

3

**II.     Agreed Changes to Procedures**

5.     ASM Capital's Objection was the only objection filed with the Court. The Trustee has received comments from three other claims traders, however, and one claimant and another interested party, all of which were conveyed informally. The Trustee believes that the Procedures, as initially proposed, are not inconsistent with certain of the informal comments and certain points made in ASM Capital's Objection, but for clarification, the Trustee agrees to modify the Procedures, to the extent necessary, as follows:

(a)     <u>Request by AlixPartners for Additional Information from Transferee.</u> The Procedures give AlixPartners the right to request and obtain additional information from a transferee in a claim transfer before the claim transfer becomes valid. *See* Motion, ¶15(a)(ii) at 9. For clarification, if AlixPartners wants additional information, it must notify the transferee of the specific information requested in order to get that information. The Trustee agrees to modify the Procedures and require that AlixPartners must notify the transferee, with a copy to the transferor, and give the transferee ten (10) business days to furnish the information before the claim transfer will be deemed invalid and unenforceable].

(b)     <u>Certificate of Service of Notice of Transfer</u>. The Trustee is aware that many claimants wish to maintain as confidential the fact that they deposited money with BLMIS and have now decided to transfer their allowed claims to a claims trader. The Procedures call for AlixPartners to file with the Clerk of the Court a certificate of service of the "Notice of Transfer" given to the transferor when a claim is transferred. *See* Motion, ¶15(b)(ii) at 10. The Procedures do not specify the information that must be included in the certificate of service, which could be limited in various ways, including to contain merely a zip code, and thus not disclose confidential information. In any event, the Trustee's objectives are equally achieved if

4

AlixPartners redacts from the certificate of service filed with the Court any information that might identify the transferor and the transferor's claim and retains the unredacted certificate of service in the Trustee's records maintained by AlixPartners, rather than filing it with the Court, and finally sends a copy to the transferee.

(c)     Notice of Hearing.  The transferee shall serve a copy of the Notice of Hearing with respect to a Contested Transfer upon the transferor.

6.      The Trustee requests that the Court approve the Procedures as set forth in the Motion and as modified in paragraph 5(a)-(c) above.

**III.    Uniformity in the Transfer Forms Preserves the Trustee's Rights and Powers Under SIPA, the Bankruptcy Code and Common Law**

7.      The form of "assignment" established by the Procedures for use by transferors and transferees to transfer an allowed claim to a transferee, *see* Motion, Exh. A, is consistent with applicable law and preserves the Trustee's rights and powers under SIPA, the Bankruptcy Code and common law.  The assignment form states, in relevant part:

> …[Assignor], for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby transfer and assign. . .all rights, title, interests in and to Assignor's Allowed Claim. . . .

Motion, Exh. A.

8.      The assignment language in the Trustee's proposed form does not provide for any limitations except that inherent in applicable, non-bankruptcy assignment law, which requires that the "assignee can receive no greater rights than the assignor possessed." *ACLI Intern. Commodity Services, Inc. v. Banque Populaire Suisse*, 609 F. Supp. 434, 441-42 (S.D.N.Y. 1984)(citing N.Y. Gen. Oblig. Law §§ 13-105 (McKinney 1978).  An assignee stands in the shoes of its assignor and takes subject to the liabilities of its assignor that were in existence prior to the assignment.  *See Selbert v. Dunn*, 216 N.Y. 237, 245-46 (1915).

5

9. The Trustee also has proposed related forms, including a "Transfer of Allowed Claim" (Motion, Exh. A) and "Notice of Transfer of Allowed Claim." Motion, Exh. B. ASM Capital objects to uniformity in these documents, particularly in the document that effects the assignment and makes no secret of the fact that it wants to structure its transactions as sales rather than assignments obviously in order to obtain any right to payment on the claim while at the same time cutting off any liability associated with the claim. *See* ASM Capital Objection, ¶4 (citing *Enron Corp. v. Springfield Assoc., L.L.C. (In re Enron Corp.)*, 379 B.R. 425 (S.D.N.Y. 2007)("impairments associated with a claim. . .travel with the claim when it is transferred by assignment, but not when the claim is transferred by sale"). As the *Enron* decision recognizes, an "assignee of a claim takes with it whatever limitations it had in the hands of the assignor." *Enron Corp.*, 379 B.R. at 436. ASM Capital cannot by contract with one or more transferors of claims strip the claims of any associated liabilities and diminish the Trustee's prospects for recovery on any affirmative claims that would benefit the fund of customer property.

10. ASM Capital claims to be "unaware of any reason why claim transfers in this case should be structured only as assignments rather than sale/purchase transactions." ASM Capital Objection, ¶4. The Trustee can offer a couple of critical reasons why the form of assignment proposed by the Trustee should be approved *as is*. For one, even with respect to a claim that the Trustee has determined to be an allowed claim, the Trustee retains the right to reconsider the claim. *See* Bankruptcy Rule 3008. *See also Securities and Exchange Commission v. E.P. Seggos & Co., Inc.*, 416 F. Supp. 280, 281-82 (S.D.N.Y. 1976)(upon motion of the trustee for a liquidating broker dealer three years after a certain claim was allowed, the court reconsidered, found that there was no prejudice to the claimant and determined that the claim should be disallowed). While the Trustee believes that reconsideration of any allowed claim in this SIPA

6

proceeding would be rare, the Trustee should not be forced to waive such rights to enhance the rights of any particular claims trader.

11. Another reason why the Trustee's form of assignment should be accepted as is was acknowledged by ASM Capital, and that is, this SIPA proceeding is *not* a traditional bankruptcy. ASM Capital Objection, ¶2. Apart from the Trustee's power to reconsider a previously allowed claim, SIPC has rights as subrogee for customer claims to the extent of any SIPC advance used to pay such claims. *See* SIPA §78fff-2(c)(1). In this proceeding, SIPC has assigned its subrogation rights to the Trustee, who now is subrogated to the rights of any claimant who had received a payment with a SIPC advance to the extent of that payment. Customers also assign their rights to the Trustee in consideration for any payments made by the Trustee to the extent of the payment amount. Finally, the SIPA Trustee maintains standing to bring suit as bailee of customer property. *See Redington v. Touche Ross & Co.*, 592 F.2d 617, 625 (2d Cir. 1978), *rev'd on other grounds*, 442 U.S. 560 (1979); *Picard v. Taylor (In re Park S. Secs., LLC*), 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005).

12. If ASM Capital had it its way, the Trustee's rights as subrogee, assignee and bailee of customers' rights relating to their claims, as described above, would be erased, and by characterizing the claim transfer as a sale, the claim would be transferred free of any impairments. The form of assignment proposed by the Trustee preserves his statutory and common law rights and entitles him to assert any liabilities associated with the claim against the holder. Accordingly, not only is it necessary that the claim transfer be an assignment, the nomenclature in the form of assignment, referring to assignor and assignee, for example, to which ASM Capital took exception (ASM Capital Objection, ¶11), need not change.

7

13. The form of assignment and related documents attached as Exhibits A and B to the Motion do not prohibit ASM Capital and any holder of an allowed claim from negotiating separate, ancillary terms, provided they are not inconsistent with the assignment form and related documents and any order approving this Motion. ASM Capital objected on the ground that a party may call in question whether such other terms and conditions apply. ASM Capital Objection, ¶10. Such ancillary terms can be made part of the parties' agreement in an integration clause. Contrary to ASM Capital's Objection, the assignment form does not mandate all of the terms of a claim transfer.

### IV. Any Issue Respecting a Reserve for Contested Claims Can Be Addressed in a Subsequent Motion for an Allocation of Customer Property and an Interim Distribution

14. It is premature for the Trustee to commit now, in the context of the Motion for approval of the Procedures, to set aside a reserve from the fund of customer property for any Contested Claims, as suggested by ASM Capital. ASM Capital Objection, ¶13. The Trustee will be filing a separate motion with the Court to address issues respecting the amount of cash in the fund of customer property, the allocation of that property in accordance with SIPA, and the first interim distribution of customer property that the Trustee intends to make. That would be the appropriate place and time, after the Trustee has completed a financial analysis, to address the issue of any reserve from the cash in the customer fund to be set aside for Contested Claims that happen to be pending on the date of the distribution.

### V. Claims Trading Prior to Effective Date of Procedures

15. ASM Capital has entered into agreements with transferors of claims with respect to the transfer of their claims and wants assurance that such transactions will now be noticed by AlixPartners and completed, resulting in ASM Capital having all rights, title and interest in and to such claims. ASM Capital Objection, ¶16. As set forth in the Motion, n.13 at 15-16, the

Trustee is unaware of any instance in which notice of a claims transfer and opportunity to object has been given to a transferor of a purportedly transferred claim in this SIPA proceeding. The Trustee concluded, therefore, that every claim transfer will be subject to the Procedures, if approved by the Court. There is no reason to exclude ASM Capital from strict compliance with the Procedures.

### V. Errors in Implementation of Procedures

16. ASM Capital wants assurance that a claim transfer will not be unwound because AlixPartners failed to strictly observe the Procedures. A determination that AlixPartners has erred in implementing some aspect of the Procedures for which AlixPartners is responsible, primarily notice procedures, cannot be made unilaterally by the transferor or transferee of the transferred claim. If the transferor or transferee has knowledge of an error made by AlixPartners, they should notify AlixPartners at the address provided in the Motion. If AlixPartners agrees that an error has been made, AlixPartners must rectify the error by providing the requisite notice. The claims transfer will not be complete and final until the notice procedures, including twenty-one (21) days' advance notice to the transferor of the right to object and have a hearing on the objection, have been fully implemented.

### VI. Partial and Multiple Claims Transfers

17. The Trustee has received informal objections to that part of the Procedures that prohibits the partial transfer of a claim. Motion, §15(f) at 13. A claims trader suggested to the Trustee, for example, that claimants that are funds with investors wish to sell their allowed claims as soon as possible, but they wish to only sell the allowed claim in pieces. Splintering customer claims would impair the Trustee's ability to accurately, efficiently and cost-effectively allocate the fund of customer property and calculate the ratable distributions to be made to the

9

holders of allowed claims when such claims could be tripled, quadrupled—the possibilities are endless. The Trustee is not a statistician and should not be forced to bear the financial and manpower burdens that would result from the transfer of partial claims.

18. It is easy to see that the more a single claim can be leveraged by selling it in pieces and/or selling it multiple times, that would increase liquidity for the professional claims trader. It is not at all apparent how there would be upside to a claimant that had been victimized by Madoff and sold his allowed claim, perhaps in pieces, for a deep discount, only to see it trade over and over, presumably at ever higher prices with each trade. To the professional claims trader, the cost of doing multiple transactions is likely factored into the pricing for taking an assignment of the claimant's claim. The demands made of the Trustee by claims buyers in such circumstances would make the services of the Trustee's agent, which are paid for by SIPC, free services that contribute to the claims buyer's bottom line. This is an inappropriate use of the Trustee's and SIPC's resources.

19. The Procedures do not prohibit multiple transfers of allowed claims in full.

20. Notice of this Reply has been given to SIPC, United States Department of Justice, United States Securities and Exchange Commission, all parties that have filed a notice of appearance, and any transferors or transferees of claims identified from papers docketed with the Bankruptcy Court or otherwise brought to the Trustee's attention. The Trustee submits that such notice is good and sufficient and no other or further notice is necessary or required.

WHEREFORE, the Trustee respectfully requests that the Court enter an order substantially in the form of Exhibit A annexed to this Reply, which has been modified from the proposed form of order submitted as Exhibit C to the Motion to reflect the changes proposed above; (a) granting the Motion; (b) approving the Claims Trading Procedures effective

10

retroactive to October 21, 2010, the date of the filing of the Motion, as modified above; and (c) granting the Trustee such other and further relief as is just and proper.

Dated: New York, New York  
      November 8, 2010

Respectfully submitted,

/s/ *Geraldine E. Ponto*  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
Irving H. Picard  
David J. Sheehan  
Marc E. Hirschfield  
Geraldine E. Ponto

*Attorneys for Irving H. Picard, Esq. Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*