**LOWENSTEIN SANDLER PC**
Bruce Buechler, Esq. (BB 0324)
Nicole Stefanelli, Esq. (NS 4100)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

   -and-

1251 Avenue of the Americas, 18th Floor
New York, NY  10020
Tel: (212) 262-6700
Fax: (212) 262-7402

*Attorneys for Judaic Heritage Foundation, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**OBJECTION TO TRUSTEE'S DETERMINATION OF**
**CLAIM OF JUDAIC HERITAGE FOUNDATION, INC.**

Judaic Heritage Foundation, Inc. ("JHF"), by and through its undersigned attorneys, hereby objects (the "Objection") to the Notice of Trustee's Determination of Claim (the "Determination Letter") dated October 12, 2010, attached hereto as **Exhibit A**, sent by Irving H. Picard (the "Trustee"), the trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff") under the Securities Investor Protection Corporation Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). In support of its Objection, JHF states as follows:

## BACKGROUND

1.      JHF is nonprofit corporation organized under the laws of the State of New Jersey that is owned and controlled by Rabbi Eli Fishman, an 86 year-old Holocaust survivor who founded JHF to promote and teach Judaic values and provide an understanding of the Jewish faith.

2.      On or about February 16, 1999, JHF opened an account with BLMIS, Account No. 1CM568 (the "Account").

3.      On December 11, 2008, Bernard L. Madoff ("Madoff") was arrested and charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. 240.10b-5. That same day, the Securities and Exchange Commission filed a civil action alleging that Madoff and BLMIS were operating a Ponzi scheme through BLMIS's investment advisor activities. On December 15, 2008, the above-captioned liquidation was commenced pursuant to SIPA.

4.      On December 23, 2008, the Court issued an order (the "Claims Procedure Order") [Dkt. No. 12] directing the Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines.

5.      The Claims Procedure Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such

claimant by mail of his determination that the claim is disallowed, in whole or in part, ***and the reason therefor*** . . . ." Claims Procedure Order at 6 (emphasis added).

6.     JHF timely filed a claim, Claim No. 004569 (the "Claim"), evidencing $7,302,694.71 in deposits and $4,751,000.00 in withdrawals. A copy of the Claim is attached hereto as **Exhibit B**.

7.     On October 12, 2010, the Trustee sent the Determination Letter stating that the Claim is denied. *See* Exh. A at 1.

8.     Pursuant to the Trustee's analysis, as set forth in Table 1 annexed to the Determination Letter, between February 16, 1999 and January 31, 2005, $7,553,328.13 was deposited into the Account. *See* Exh. A at 4.

9.     Other than the initial $1,000,000.00 deposit made on February 16, 1999, all of the deposits into the JHF Account were made via transfers from two other BLMIS accounts: (i) the Glenn Akiva Fishman Charitable Remainder Unitrust (the "Glenn Fishman Trust"), which owned BLMIS Account No. CM55230, transferred a total of $3,200,746.41 to the JHF Account between September 29, 2004 and January 31, 2005; and (ii) the Irrevocable Charitable Remainder Trust of Yale Fishman (the "Yale Fishman Trust" and together with the Glenn Fishman Trust, the "Fishman Trusts"), which owned BLMIS Account No. CM54330, transferred a total of $3,352,581.72 to the JHF Account between September 29, 2004 and January 31, 2005.

10.     Pursuant to the Trustee's analysis, as set forth in Table 1 annexed to the Determination Letter, between November 24, 1999 and October 3, 2008, JHF withdrew a total of $5,321,000.01. *See* Exh. A at 4.

11.     Assuming the Trustee's records are correct, the "net equity" in the Account based on the "cash in/cash out approach" embraced by the Trustee calculates to $2,232,328.12 ($7,553,328.13- $5,321,000.01). However, the Trustee has "adjusted" the amount of certain deposits to account for alleged "fictitious" gains. *See* Exh. A at 4. The Trustee has "adjusted" all of the deposits made via transfers from the Fishman Trusts, except what the Trustee has

asserted was principal in the Fishman Trusts at that time.    Specifically, the Trustee has "adjusted" the amounts of four deposits made via transfer from the Fishman Trusts totaling $6,053,328.14 down to $2,470,811.13 to account for alleged fictitious gains by the Fishman Trusts.

## OBJECTION[1]

### A.    The Trustee Has Failed To Set Forth Any Legal or Factual Basis for Disallowing JHF's Claim in Full

12.    The Trustee has set forth no legal or factual basis for disallowing JHF's Claim in full.  The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2) "the amount of money you withdrew from your account at BLMIS . . . is the same as the amount that was deposited with BLMIS for the purchase of securities."    Exh. A at 1-2.  Neither of these purported grounds for disallowance have any statutory or other legal basis.

13.    Likewise, the Trustee's denial is not supported by the uncontroverted facts in this case that $7,553,328.13 was deposited into the Account and only $5,321,000.01 was withdrawn (based on the Trustee's records).    The transfers made from the Fishman Trusts to the JHF Account constitute "cash in."    The Trustee's attempt to reduce the amount of the transfers from the Fishman Trusts to the JHF Account is contrary to what occurred in actuality.    The Fishman Trusts made six separate transfers to the JHF Account, all of which constitute "cash in."    Had the Fishman Trusts taken cash out of their accounts and then deposited that cash into the JHF Account rather than transferring the funds between accounts then, without a doubt, there would be no issue as to JHF's Claim.    Thus, the Trustee should not be permitted to back out the fictitious profits to the detriment of JHF, which is unfair and inequitable especially in the light of the fact that JHF is a non-profit organization created solely to do charitable works.    As a public

---

[1] JHF reserves the right to make any additional arguments in opposing the Determination Letter in the event that the Court's Memorandum Decision (as defined herein) is reversed, modified, overturned or vacated on appeal.

charity, JHF relies on donations to pay its expenses and obligations. JHF relied on its receipt of the donations made by the Fishman Trusts and should not be penalized for accepting those donations from the Fishman Trusts. As a result of Madoff's actions, JHF has been unable to meet its obligations and has not paid Rabbi Eli Fishman a salary in over two years. JHF will be unable to survive if its Claim is denied and it certainly does not have the financial wherewithal to return any funds to the Trustee under a claw back proceeding.

14.     Furthermore, the Trustee has already denied the claims made by the Fishman Trusts alleging that the Fishman Trusts did not have positive "net equity" because they withdrew all of the funds deposited in their accounts. However, the Fishman Trusts did not withdraw all of the funds deposited in their accounts. Rather, the Fishman Trusts transferred the full balances of their accounts to JHF. The Trustee has admitted this in the determination letters sent to the Fishman Trusts denying their claims. By denying the claims of the Fishman Trusts as well as the claim of JHF, the Trustee is attempting to effectuate a set off between separate accounts which has no legal basis. JHF and the Fishman Trusts are separate and unrelated, each with a different owner and separate taxpayer identification number. If not for the transfers by the Fishman Trusts to the JHF Account, the Trustee would have no idea that any relationship exists between the entities and the Trustee would have no basis to deny JHF's Claim.

15.     The Trustee could have argued that because the Madoff customer account statements were part of his Ponzi scheme, there is no difference between the fictional growth Madoff reported to BLMIS customers, and the fictional transfers reported to them. Just as no securities were actually purchased in the accounts and no growth actually occurred, no transfers between different accounts at BLMIS were actually made. It turns out that the transfers between accounts reflected on customer statements were entirely fictitious. Such a position, if taken by the Trustee, would mean that there were no real transfers to JHF. However, the Trustee has not argued the foregoing and instead has taken the opposite position in the determination letters sent to the Fishman Trusts denying their claims. In the determination letters sent to the Fishman

Trusts denying their claims, the Trustee has stated that all the funds deposited by the Fishman Trusts had been transferred from their accounts to the JHF Account (other than amounts that were actually withdrawn by the Fishman Trusts), leaving no funds in the accounts of the Fishman Trusts and no net equity upon which they could make a claim.  The Trustee has effectively taken the position that all of the transfers from the Fishman Trusts to the JHF Account actually occurred and were not fictitious.  Accordingly, since the Trustee states that there were transfers from the Fishman Trusts to the JHF Account, there is no legal basis for the Trustee to conclude that  those transfers were for anything less than the full amount, namely $6,553,328.13.  Thus, JHF is a net loser using the Trustee's parlance.

16.    The Trustee should not be permitted to take such inconsistent positions.  The Trustee cannot deny the claims of the Fishman Trusts on the grounds that the Fishman Trusts transferred all of their funds to the JHF Account, and at the same time argue that the transfers to the JHF Account did not occur at their full value in order to deny JHF's Claim.  Either the transfers between accounts reflected on customer statements should be recognized as real, or the transfers should not be recognized because they are fictitious.  The Trustee cannot have it both ways.  The Trustee's inconsistent approach is arbitrary and works a gross injustice when applied to a charitable foundation (JHF) relying on the donations for its survival and the performance of its good works.

17.    Moreover, in discussing the definition of "net equity" under SIPA in its Memorandum Decision Granting Trustee's Motion for an Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Objections to Determinations Relating to Net Equity issued on March 1, 2010 (the "<u>Memorandum</u> <u>Decision</u>") [Dkt. No. 1999], the Court noted that "the BLMIS books and records expose a Ponzi scheme were no securities were ever ordered, paid for or acquired."  Memorandum Decision at 22.  Thus, the Court held that "the Trustee cannot discharge claims upon the false premise that customers'

-6-

securities positions are what the account statements purport them to be. Rather, the only verifiable amounts that are manifest from the books and records are the cash deposits and withdrawals." *Id.* The Court further held that "[e]quality is achieved in this case by employing the Trustee's method, which looks solely to deposits and withdrawals that in reality occurred." *Id.* at 33.

18.     Most importantly, no cash was transferred from the Fishman Trusts to the JHF Account. The Trustee knows this. As this Court has held, only cash deposits or withdrawals that can be verified can be used. *Id.* at 22. Yet, the Trustee is seeking to effectuate a set off by use of a non-cash transfer from the Fishman Trusts to the JHF Account. The Trustee has reduced the amounts in the Fishman Trusts downward by a non-cash transfer for alleged fictitious profits and only provided JHF with a limited transfer. This is inequitable and does not comport with the Court's Memorandum Decision which is the law of this case.

19.     Finally, the Determination Letter is inadequate to rebut the prima facie validity of the JHF Claim as provided in Section 502(a) of the Bankruptcy Code and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.

20.     The Determination Letter violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. As this Court has stated,

> [t]he best practice is to denominate an objection to a claim as just that. The body of the objection should identify the claim. It should also, at a minimum, allege those facts necessary to support the objection . . . and provide a description of the theories on which it is based. In short, proofs of claim have been held analogous to complaints initiating civil actions; an objection to a claim should therefore meet the standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses.

*In re Enron Corp.*, 2003 Bankr. LEXIS 2261, *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (quoting 9 *Collier on Bankruptcy* ¶ 3007.01[3] (footnotes omitted)). The Trustee has not complied with this standard.

21.     Accordingly, the Court must overrule the Trustee's Determination Letter and determine that JHF is entitled to a claim of at least $2,232,328.12.

## B.     JHF is Entitled to Prejudgment Interest

22.     Because Madoff converted JHF's funds, JHF is entitled to prejudgment interest. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 *U*.S. Dist. LEXIS 35786, at \*14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S. 2d 427, 428 (1st Dept. 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).    Under New York state law, which is applicable here, JHF is entitled to prejudgment interest at a rate of nine percent per annum computed from January 31, 2005 (the date of the last deposit into the Account).   *See* N.Y.C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."); N.Y.C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."). *See Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984) (holding that under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of the state whose law governs the main claim); *Patch v. Stanley Works (Stanley Chem. Co. Div.)*, 448 F.2d 483, 494 n.18 (2d Cir. 1971) (noting a "consistent line" of cases holding that under New York choice of law principles, "the allowance of prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability"). Accordingly, JHF is entitled to prejudgment interest of nine percent per annum on $2,232,328.12, which represents the amount of money in JHF's Account as of January 31, 2005.

23.    Although it is not legally relevant, the Trustee cannot prove that Madoff earned no money on JHF's investment.  To the extent the funds were deposited into a bank, they presumably earned interest while on deposit.  Madoff disbursed customer funds to favored customers, to family members, and for other purposes.  Those funds may have yielded substantial profits to which JHF and other customers are entitled once the ultimate recipients of Madoff's thievery are known.

24.    In a Ponzi scheme, out of pocket damages are an improper and inadequate remedy.  *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008).   Where a Ponzi scheme is operated by an SEC-regulated broker-dealer, investors are not limited to "out-of-pocket damages."  *See Visconsi v. Lehman Bros., Inc.*, No. 06-3304, 2007 WL 2258827, at *5 (6th Cir. Aug. 8, 2007).

25.    In *Visconsi*, Lehman Brothers made the same argument that the Trustee makes here, that the plaintiffs were not entitled to any recovery because they already had withdrawn more than they had invested.  The Sixth Circuit rejected that argument because, as the court explained, the plaintiffs gave $21 million to Lehman, not to hide under a rock or lock in a safe, but for the express purpose of investment, with a reasonable expectation that it would grow. Instead, the Sixth Circuit upheld an arbitration award to the plaintiffs of "an expectancy measure of damages, which seeks to put Plaintiffs in the position they would have held had [the brokers] not breached their 'bargain' to invest Plaintiffs' money."  *Id. Cf., S.E.C. v. Byers,* 2009 W.L. 2185491 (S.D.N.Y.) (district court sitting in equity in non-SIPA liquidation approved distribution to investors in Ponzi scheme whereby investors' claims were allowed in the amount of their net investment plus their re-invested earnings).

26.    Accordingly, JHF is entitled to a claim in the amount of at least $2,232,328.12 plus prejudgment interest of nine percent per annum pursuant to New York state law.

C.    **The Trustee Has Violated SIPA by Delaying the Payment of SIPC Insurance**

27.    The Trustee has breached his statutory obligation to "promptly" replace JHF's securities.  Pursuant to section 78fff-2(b) of SIPA, "[a]fter receipt of a written statement of claim pursuant to subsection (a)(2), of this section, the trustee shall ***promptly*** discharge, in accordance with the provisions of this section, all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer (subject to the provisions of subsection (d) of this section and section 78fff-3(a) of this title) insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." 15 U.S.C. § 78fff-2(b) (emphasis added).  SIPA further provides that (a) SIPC shall pay the first $500,000 of each customer claim and (b) customers have an unsecured claim against customer property for the balance of their claims which is pad pro rata with other customers.  *See* 15 U.S.C. § 78fff-3(a) ("In order to provide for ***prompt*** payment and satisfaction of net equity claims of customers of a debtor, SIPC shall advance to the trustee [up to] $500,000 for each customer, as may be required to pay . . . claims.") (emphasis added); 15 U.S.C. § 78fff-2(c)(1)(B) (providing that customers of the debtor "shall share ratably in . . . customer property on the basis and to the extent of their net equities").

28.    As evidenced by the Claim and as demonstrated herein, JHF has a claim for securities in an amount of at least $2,232,328.12 plus prejudgment interest.  Accordingly, JHF is entitled to an advance of $500,000 from SIPC and an unsecured claim against the estate for the remainder of its "net equity" plus prejudgment interest.

**WHEREFORE**, JHF respectfully requests that the Court (i) strike the Determination Letter, (ii) grant JHF an allowed claim in the amount of at least $2,232,328.12 plus prejudgment interest of nine percent per annum pursuant to New York state law, (iii) direct SIPC to promptly provide JHF with a $500,000 advance pursuant to 15 U.S.C. § 78fff-3(a), (iv) grant JHF an unsecured claim against the estate in the amount of at least $1,732,328.12 plus

prejudgment interest  pursuant to 15 U.S.C. § 78fff-2(c)(1)(B), and (v) grant JHF such other and

further relief as this Court deems just and equitable.


Dated: November 11, 2010                **LOWENSTEIN SANDLER PC**


By:      _____/s/ Bruce Buechler_____
         Bruce Buechler, Esq. (BB 0324)
         Nicole Stefanelli, Esq. (NS 4100)
         65 Livingston Avenue
         Roseland, New Jersey 07068
         Tel: (973) 597-2500
         Fax: (973) 597-2400

            -and-

         1251 Avenue of the Americas, 18th Floor
         New York, NY  10020
         Tel: (212) 262-6700
         Fax: (212) 262-7402

         *Attorneys for Judaic Heritage Foundation, Inc.*

# Exhibit "A"

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 12, 2010

JUDAIC HERITAGE FOUNDATION INC.
C/O GLENN FISHMAN
930 BROADWAY
WOODMERE, NY 11598

Dear JUDAIC HERITAGE FOUNDATION INC.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1CM568 designated as Claim Number 004569:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $5,321,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

securities (total of $3,970,811.13). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($1,350,188.87) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

PLEASE TAKE NOTICE: If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 12, 2010, the date on which the Trustee mailed this notice.

2

**DEPOSITS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 2/16/1999 | CHECK WIRE A/O 2/12/99 | $1,000,000.00 | $1,000,000.00 |
| 9/29/2004 | TRANS FROM 1CM55230 | $250,000.00 | $250,000.00 |
| 9/29/2004 | TRANS FROM 1CM54330 | $250,000.00 | $250,000.00 |
| 12/31/2004 | TRANS FROM 1CM55230 | $2,950,112.99 | $1,236,590.00 |
| 12/31/2004 | TRANS FROM 1CM54330 | $3,101,924.84 | $1,234,221.13 |
| 1/31/2005 | TRANS FROM 1CM55230 | $633.42 | $0.00 |
| 1/31/2005 | TRANS FROM 1CM54330 | $656.88 | $0.00 |
| **Total Deposits:** | | $7,553,328.13 | $3,970,811.13 |

**WITHDRAWALS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/24/1999 | CHECK | ($100,000.00) | ($100,000.00) |
| 10/31/2000 | CHECK | ($10,000.00) | ($10,000.00) |
| 11/22/2000 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/3/2001 | CHECK | ($10,000.00) | ($10,000.00) |
| 7/26/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/11/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/15/2002 | CHECK | ($200,000.00) | ($200,000.00) |
| 7/23/2002 | CHECK | ($50,000.00) | ($50,000.00) |
| 9/26/2002 | CHECK | ($250,000.00) | ($250,000.00) |
| 11/26/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/10/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 9/29/2003 | CHECK | ($250,000.00) | ($250,000.00) |
| 12/5/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 9/9/2004 | CHECK | ($150,000.00) | ($150,000.00) |
| 9/29/2004 | CHECK | ($250,000.00) | ($250,000.00) |
| 12/31/2004 | TRANS TO 1CM54330 | ($0.01) | $0.00 |
| 2/11/2005 | CHECK | ($151,000.00) | ($151,000.00) |
| 4/19/2005 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/21/2005 | CHECK | ($500,000.00) | ($500,000.00) |
| 3/21/2007 | CHECK | ($100,000.00) | ($100,000.00) |
| 8/29/2007 | CHECK | ($600,000.00) | ($600,000.00) |
| 10/29/2007 | CHECK | ($400,000.00) | ($400,000.00) |
| 1/16/2008 | CHECK | ($400,000.00) | ($400,000.00) |
| 5/23/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 7/8/2008 | CHECK | ($200,000.00) | ($200,000.00) |
| 7/23/2008 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 10/3/2008 | CHECK | ($400,000.00) | ($400,000.00) |
| **Total Withdrawals:** | | ($5,321,000.01) | ($5,321,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | $2,232,328.12 | ($1,350,188.87) |

# Exhibit "B"

Rabbi Eli Fishman

930 Broadway

Woodmere, NY 11598

Elieli@comcast.net

Re: Madoff Account # 1-CM568-3

To Whom It May Concern:

Please find enclosed Judaic Heritage's claim for SIPIC relief against the Madoff estate as well as documentary evidence of contributions and losses. The documentary evidence shows $7,302,694.71 of contributions into the account and $4,751,000 in disbursements was taken out of the Madoff Account. The last closing statement value received as of 11/30/08 is $5,870,405.96 (Ex. C5). I am attaching in Exhibit D the incorporation documents of Judaic Heritage showing my authority to represent Judaic Heritage as president. Judaic Heritage is a public charity helping various organizations and people in need of funds.

Additionally, as Rabbi of Judaic Heritage I receive a $60,000 salary. With this catastrophic loss of all of Judaic Heritages' money in this Madoff scheme I am left with no means of support at this difficult time in my life. I am 83 years old and suffer from many heart complications and atrial fibrillation. The cost of medication and basic sustenance is now totally beyond my ability. I never would have dreamed after surviving the Nazi Holocaust and Auschwitz that in this great country I would be reduced to this helpless situation. I therefore request that you do everything you can to help the charity recover its monies.

Judaic Heritage Foundation Inc.

_Rabbi Eli Fishman Pres._

Rabbi Eli Fishman, President

Glenn Fishman
930 Broadway
Woodmere, NY 11598
Work: 516.374.0350 Fax: 516.374.0309
Glenn@Fishmanassociates.com

## Judaic Heritage Foundation Inc.
## Madoff Acount # 1-CM568-3

| Date | Contribution In | Support Enclosed |
|---|---|---|
| 1999* | $1,000,000.00 | See Ex. A1 |
| 9/30/2004* | $250,000.00 | |
| 12/31/04 | $3,101,924.84 | |
| 12/3/04 | $2,950,112.99 | See Ex. B4 |
| 1/31/2006* | $656.88 | See Ex. B4 |
| Totals : | $7,302,694.71 | |

\* We are unable to locate the statement documenting this contribution

\*Ending value as of 11.30.08 is $5,87Q926.96 (See Ex. C5)

| Date | Distribution Out | Support Enclosed |
|---|---|---|
| 7/26/2001 | $100,000.00 | |
| 1/15/2002 | $200,000.00 | |
| 7/23/2002 | $50,000.00 | |
| 8/26/2002 | $250,000.00 | |
| 11/26/2002 | $100,000.00 | |
| 11/10/2003 | $100,000.00 | |
| 8/29/2003 | $250,000.00 | |
| 12/5/2003 | $100,000.00 | |
| 09/09/04 | $150,000.00 | |
| 02/11/05 | $151,000.00 | |
| 04/19/05 | $100,000.00 | |
| 12/21/05 | $500,000.00 | |
| 03/27/07 | $100,000.00 | |
| 08/29/07 | $600,000.00 | |
| 10/29/07 | $400,000.00 | |
| 01/16/08 | $400,000.00 | |
| 05/23/08 | $100,000.00 | |
| 07/08/08 | $200,000.00 | |
| 07/23/08 | $500,000.00 | |
| 10/03/08 | $400,000.00 | |
| Totals: | $4,751,000.00 | |

Glenn Fishman
930 Broadway
Woodmere, NY 11598
Work: 516.374.0350 Fax: 516.374.0309
Glenn@Fishmanassociates.com

## Judaic Heritage Foundation Inc.
## Madoff Accout # 1-CM568-3

| Date | Contribution In | Support Enclosed |
|---|---|---|
| 1999* | $1,000,000.00 | See Ex. A1 |
| 9/30/2004* | $250,000.00 | |
| 12/31/04 | $3,101,924.84 | See Ex. B4 |
| 12/31/04 | $2,950,112.99 | See Ex. B4 |
| 1/31/2005* | $656.88 | |
| Totals : | $7,302,694.71 | |

* We are unable to locate the statement documenting this contribution

*Ending value as of 11.30.08 is $5,870405.96 (See Ex. C5)

| Date | Distribution Out | Support Enclosed |
|---|---|---|
| 7/26/2001 | $100,000.00 | |
| 1/15/2002 | $200,000.00 | |
| 7/23/2002 | $50,000.00 | |
| 9/26/2002 | $250,000.00 | |
| 11/26/2002 | $100,000.00 | |
| 1/10/2003 | $100,000.00 | |
| 9/29/2003 | $250,000.00 | |
| 12/5/2003 | $100,000.00 | |
| 09/09/04 | $150,000.00 | |
| 02/11/05 | $151,000.00 | |
| 04/19/05 | $100,000.00 | |
| 12/21/05 | $500,000.00 | |
| 03/27/07 | $100,000.00 | |
| 08/29/07 | $600,000.00 | |
| 10/29/07 | $400,000.00 | |
| 01/16/08 | $400,000.00 | |
| 05/23/08 | $100,000.00 | |
| 07/08/08 | $200,000.00 | |
| 07/23/08 | $500,000.00 | |
| 10/03/08 | $400,000.00 | |
| Totals: | $4,751,000.00 | |

RNARD L. MADOFF
ESTMENT SECURITIES LLC
w York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair London W1J 8DT
Tel 020 7493 6222

\IC HERITAGE FOUNDATION INC

GLENN FISHMAN
CENTRAL AVE SUITE 201
\RHURST        NY  11516

| PERIOD ENDING | PAGE |
|---|---|
| 12/31/04 | 4 |

YOUR ACCOUNT NUMBER: 1-CM568-3-0

YOUR TAX HAVEN IDENTIFICATION NUMBER: 22-3495037

| HT OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | FIDELITY SPARTAN | | | |
| | | | U.S.TREASURY MONEY MARKET | DIV | | 57.89 |
| | | | DIV 12/31/04 | | | |
| | | | TRANS FROM 1CM54330 1.NS. CRDT | CA | | 2,103,924.84 |
| | | | TRANS FROM 1CM55230 Glews CRDT | CA | | 2,950,112.99 |
| | | | TRANS TO 40 ACCT | JRNL | 2,444.00 | |
| | 46,801 | 71363 | FIDELITY SPARTAN | CW | .01 | 46,801.00 |
| | | | U S TREASURY MONEY MARKET | 1 | | |
| 75,000 | | BB041 | U S TREASURY BILL | 99.396 | 3,155,823.00 | |
| | | | DUE 4/07/2005 | | | |
| 75,000 | | 92472 | U S TREASURY BILL | 99.336 | 3,153,918.00 | |
| | | | DUE 4/14/2005 | | | |
| | | | 4/14/2005 | | | |
| 41,248 | | 96914 | FIDELITY SPARTAN | 1 | 41,248.00 | |
| | | | U S TREASURY MONEY MARKET | | | |
| | | | NEW BALANCE | | | .94 |
| | | | SECURITY POSITIONS | MKT PRICE | | |
| 41,248 | | | FIDELITY SPARTAN | 1 | | |
| | | | U S TREASURY MONEY MARKET | | | |
| 75,000 | | | U S TREASURY BILL | 99.396 | | |
| | | | DUE 04/07/2005 | | | |
| | | | 4/07/2005 | 5. | | |
| | | | CONTINUED ON PAGE | | | |

\TEMENT FOR INCOME TAX PURPOSES

Dec. 26. 1996   4:18PM   GENMARK                    No. 6713   P. 2/4

**New Jersey Department of State**
**Division of Commercial Recording**
**Certificate of Incorporation, Nonprofit**
(Title 15A:2-8 New Jersey Domestic Nonprofit Corporation Act)

This is to Certify that, there is hereby organized a corporation under and by virtue of the above noted statute of the New Jersey Statutes.

1. Name of Corporation:  Judaic Heritage Foundation, Inc.

2. The purpose for which this corporation is organized is:  Promote and teach Judaic values and provide an understanding of the Hebrew faith.

3. Registered Agent's Name:  Rabbi Eli Fishman

4. Registered Office/Address:  117 Broad Street  Freehold,  NJ  07728
   Street Address  City  State  Zip

5. The corporation _____ shall have members. ☒ Yes  ☐ No
   If Yes, qualification will be ☒ as set forth in the by-laws. ☐ or as set forth herein (attach).

6. The rights and limitations of the different classes of members will be: ☒ as set forth in the by-laws, or ☐ as set forth herein (attach).

7. The method of electing trustees will be: ☒ as set forth in the by-laws, or ☐ as set forth herein (attach).

8. The first board of trustees shall consist of  6  trustees (Minimum of three, Addresses cannot be that of the corporation).

   See Attached List of Trustees
   Street Address  City  State  Zip

9. The duration of the corporation is:  Indefinite

10. Set forth Name and Address of Incorporator(s) (Address cannot be that of the corporation. Need one or more.):

    Yale M. Fishman  587 Willow Avenue  Cedarhurst,  NY  11516
    Name  Street Address  City  State  Zip

11. Method of distribution of assets shall be: ☒ as set forth in the by-laws, or ☐ as set forth herein (attach).

12. Other provisions:  N/A

In Testimony whereof, each undersigned incorporators have caused this certificate to be signed this  26  day of December, 1996.

Signature _____    Signature _____

Signature _____    Signature _____

**New Jersey Department of State**
**Division of Commercial Recording**
**Certificate of Incorporation, Nonprofit**
(Title 15A:2-8 New Jersey Domestic Nonprofit Corporation Act)

Judaic Heritage Foundation, Inc.
117 Broad Street
Freehold, NJ  07228

### Board of Trustees

Mrs. Annette Basri
1595 North Lake Drive
Lakewood, NJ  08701

Mr. Barry Ritman
914 Hoyt Street
Silver Spring, MD  10902

Mrs. Tina Weisz
3 Hackney Court
Marlboro, NJ  07746

Mrs. Eileen Fishman
117 Broad Street
Freehold, NJ  07728

Mr. Shawn Bayer
21 Muriel Avenue
Lawrence, NY  11519

Rabbi Eli Fishman
117 Broad Street
Freehold, NJ  07728