MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone:    212-309-6000
Bernard J. Garbutt III
Menachem O. Zelmanovitz
Andrew D. Gottfried
Michael S. Kraut

*Attorneys for The Kostin Company*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SECURITIES INVESTOR PROTECTION       :
CORPORATION,                                          :
                                   Plaintiff,      :      Adv. Pro. No. 08-01789 (BRL)
                    v.                                    :
                                                              :      SIPA Liquidation
BERNARD L. MADOFF INVESTMENT    :
SECURITIES LLC,                                    :
                                   Defendant.    :
---------------------------------------------------------X

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

The Kostin Company (the "Kostin Co."), by and through its attorneys, Morgan, Lewis &

Bockius LLP, hereby objects to the "Notice of Trustee's Determination of Claim," dated October

12, 2010 (the "Determination Notice"),[1] with respect to the customer claim of the Kostin Co.  In

support of its objection, the Kostin Co. respectfully states as follows:

## FACTUAL BACKGROUND

1.       The Kostin Co. was and is a "customer" of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), as defined by the Securities Investor Protection Act of 1970

("SIPA").  See 15 U.S.C. § 78lll(2).

2.       Upon information and belief, in the 1970s, Edward Kostin opened an account at

---
[1]    A true and correct copy of the Determination Notice is attached hereto as Exhibit "A."

BLMIS on behalf of the Kostin Co., the purpose of which was to have BLMIS invest in securities for the Kostin Co.

3.      In 1991, Edward Kostin married Susan Kostin.  Mr. Kostin passed away in September of 2006.  Until his passing in September of 2006, Mr. Kostin was the sole person who oversaw the affairs of the Kostin Co. and its investments with BLMIS.

4.      As of December 11, 2008, the account number for the Kostin Co. account at BLMIS was account number 1-K0060 (which also had subaccounts).  The Kostin Co. had prior accounts at BLMIS that were predecessors to account number 1-K0060, namely account number 1-01117-1-4 and account number 1-01125-3.  Collectively, all of these accounts are sometimes referred to hereinafter as the "Account."

5.      Upon information and belief, from the opening of the Account until September 2006, the Kostin Co. regularly received updates on the status of the Account from BLMIS, including monthly account statements, trade confirmations, and other reports that were sent by BLMIS to the Kostin Co.  After September 2006, the Kostin Co. regularly received updates on the status of the Account from BLMIS, including monthly account statements, trade confirmations, and other reports that were sent by BLMIS to the Kostin Co.

6.      The Trustee concedes that, at the very least, as of March 15, 1982, the Kostin Co. had deposited $590,871.38 with BLMIS.  See Exhibit "A" hereto, Determination Notice, at Table 1.

7.      The Trustee also concedes that, over the years, there were deposits, in the form of transfers, into the Kostin Co.'s Account, including:  (a) a transfer into the account on June 12, 1981 of $100,000; (b) a transfer into the account on March 15, 1982 of $616,436.43; and (c) a transfer into the account on January 31, 2006 (from account "1D000130") of $37,325,280.00.

2

See Exhibit "A" hereto, Determination Notice, at Table 1.

8.      Attached hereto as Exhibit "B" is a true and correct copy of a report from BLMIS that was sent to the Kostin Co. that pertains to one of the predecessor accounts of the Kostin Co. (account number 1-01125-3).  The report states that it is a "Report For The Period From 1/01/89 To 12/31/89" (the "BLMIS 12/31/89 Report").  The BLMIS 12/31/89 Report states that the "INITIAL INVESTMENT" in the Account was $5,192,347.90.  The BLMIS 12/31/89 Report also states that the "TOTAL EQUITY" in the Account as of December 31, 1989 was $12,784,825.26.

9.      The Kostin Co.'s final account statement for the Account, which is dated November 30, 2008, reflects that the Kostin Co. owns, and the Account contains, securities, and also that the Account had a net market value of $120,908,112.39 (the "Final Customer Statement").  A true and correct copy of the Final Customer Statement is attached hereto as Exhibit "C."

10.     The Kostin Co.'s records of its accounts at, and dealings with, BLMIS are not complete, and discovery may reveal additional records, account statements, and proof of other deposits and/or transfers.

11.     On or about March 3, 2009, the Kostin Co. timely submitted to the Trustee a customer claim for the Account, which the Trustee designated as Claim Number 6093 (the "Customer Claim").  A true and correct copy of the Customer Claim is attached hereto as Exhibit "D."  The Customer Claim is hereby incorporated herein by reference.

12.     On or about October 12, 2010, the Trustee sent to the Kostin Co. the Determination Notice denying the Kostin Co.'s Customer Claim in its entirety.  The only explanations for the denial of the Customer Claim set forth in the Determination Notice are:  (1)

"As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious;"[2] and (2) "because you have withdrawn more than was deposited into your account, you do not have a positive 'net equity' in your account and you are not entitled to an allowed claim in the BLMIS Liquidation proceeding." See Exhibit "A" hereto, at 2.

## PROCEDURAL HISTORY

13.     On December 11, 2008, this liquidation proceeding was commenced against BLMIS after the United States District Court for the Southern District of New York (the "S.D.N.Y.") issued an order declaring that the customers of BLMIS were in need of the protection afforded by SIPA. See Order, SEC v. Madoff, Civ. No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (Docket Entry ("D.E.") No. 4).

14.     On December 23, 2008, this Court issued an order appointing Irving H. Picard as the trustee (the "Trustee") to oversee the Securities Investor Protection Corporation ("SIPC") liquidation of BLMIS, and specifying the procedures for the Trustee's notification of BLMIS customers and for the filing of customer claims. See "Order On Application For An Entry Of An Order Approving Form And Manner Of Publication And Mailing Of Notices, Specifying Procedures For Filing, Determination, And Adjudication Of Claims; And Providing Other Relief," SIPC v. Bernard L. Madoff Investment Securities LLC, No. 08-01789-BRL (Bankr. S.D.N.Y. Dec. 23, 2008) (the "Madoff Liquidation") (D.E. No. 12) (the "12/23/08 Order").

15.     This Court's 12/23/08 Order also directed the Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." 12/23/08 Order at 5

---

[2]     Even though this sentence began with "as noted," there is no support for, let alone evidence of, the accuracy of this statement in the Determination Notice or anything attached thereto. Moreover, this statement is directly contrary to the BLMIS monthly account statements, trade confirmations, and other BLMIS reports that were sent by BLMIS to the Kostin Co.

(D.E. No. 12).

16.     The 12/23/08 Order also stated that, for any customer claim to which the Trustee

objected, "[t]he Trustee shall notify such claimant by mail of his determination that the claim is

disallowed, in whole or in part, and the reason therefor … ."  See 12/23/08 Order at 6 (D.E.

No.12).

17.     On March 1, 2010, in the Madoff Liquidation, this Court issued a decision

granting the Trustee's motion for an order affirming the Trustee's decision to calculate a

customer's net equity by looking at "the amount of cash deposited by the customer into his

BLMIS customer account less any amounts already withdrawn by him" (the "Net Investment

Method").  See March 1, 2010 memorandum decision (the "3/1/10 Decision") at 5 (D.E. No.

1999).  In approving the Net Investment Method, this Court rejected claimants' argument that net

equity should be defined as "the amounts reflected on customers' November 30th Statements."

Id. at 5-6.

18.     On March 8, 2010, in the Madoff Liquidation, this Court issued an order

certifying its 3/1/10 Decision for appeal to the United States Court of Appeals for the Second

Circuit.  See March 8, 2010 certification (D.E. No. 2022).  On June 16, 2010, the Court of

Appeals accepted jurisdiction of the direct appeal.   The Court of Appeals has yet to set a date for

oral argument.

## GROUNDS FOR OBJECTION

19.     The Kostin Co. hereby objects to the Determination Notice on the following

grounds: (a) the Determination Notice is inadequate under the 12/23/08 Order and the legal

standard for an objection to a claim; (b) the Determination Notice is contrary to both the

12/23/08 Order and 15 U.S.C. §78fff-4(c); (c) the Trustee's Net Investment Method is contrary

to the language and intent of SIPA, and conflicts with the Kostin Co.'s reasonable and legitimate

customer expectations; (d) the Kostin Co. is entitled to interest on its Customer Claim or, at the very least, on amounts deposited; and (e) income taxes and estate taxes that were paid should be taken into account in determining the Kostin Co.'s Customer Claim.

I.   **THE DETERMINATION NOTICE IS INADEQUATE UNDER THE 12/23/08 ORDER AND THE LEGAL STANDARD FOR AN OBJECTION TO A CLAIM**

20.   Because the Kostin Co.'s Customer Claim was timely filed and executed, it is prima facie valid under Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 3001(f); see also 11 U.S.C. § 502(a).

21.   As an initial matter, the only reasons set forth in the Determination Notice for the denial of the Kostin Co.'s Customer Claim are that:  (1) "no securities were ever purchased by BLMIS for" the Account; and (2) because the Kostin Co. allegedly withdrew more than was deposited into the Account, it allegedly did not have a positive net equity in the Account, and thus it was not entitled to an allowed claim in the BLMIS Liquidation proceeding.  See Exhibit "A" hereto, at 2.  Neither of these purported grounds for denial has any statutory basis. Moreover, absent actual evidence to the contrary (which has not been provided), the Determination Notice is inadequate to rebut the prima facie validity of the Kostin Co.'s Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f).

22.   Although the Determination Notice attaches a "Table 1" that purports to calculate the money deposited into the Account less the money withdrawn from the Account, this exhibit is entirely unsubstantiated; no supporting documentation or explanation is provided.

23.   Thus, the Determination Notice fails to explain with sufficient clarity "the reason" why the Trustee disallowed the Kostin Co. Customer Claim.  See 12/23/08 Order at 6 (D.E. No. 12).

6

24.      Moreover, under general principles of applicable law, an objection to a proof of

claim must set forth, at a minimum, the relevant facts and legal theories upon which the

objection is based.  See, e.g., 9 Collier on Bankruptcy ¶ 3007.01[3] (Alan N. Resnick & Henry J.

Sommer eds., 15th ed. rev. 2010) ("[A]n objection to a claim should . . . meet the [pleading]

standards of an answer.  It should make clear which facts are disputed; it should allege facts

necessary to affirmative defenses; and it should describe the theoretical bases of those

defenses."); In re Best Payphones, No. 01-15472 (SMB), 2007 WL 203980, at *6 (Bankr.

S.D.N.Y. Jan. 24, 2007) ("The proof of claim is analogous to a complaint, and the objection is

analogous to and must meet the standards of an answer in a civil action.") (citations omitted); In

re Enron Corp., No. 01-16034 (AJG), 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan.

13, 2003) (same); see also Fed. R. Civ. P. 8(b)(2) ("A denial must fairly respond to the substance

of the allegation.").

25.      For these reasons, the Determination Notice should be rejected by this Court.

## II.  THE DETERMINATION NOTICE IS CONTRARY TO BOTH THE 12/23/08 ORDER AND 15 U.S.C. §78fff-4(c)

26.      The "books and records" of BLMIS include the monthly account statements, trade

confirmations, and other reports that were regularly sent by BLMIS to the Kostin Co.

27.      The Kostin Co.'s Customer Claim was and is valid because the Customer Claim

was based upon the obligations of BLMIS reflected in its "books and records," including the

Final Customer Statement.  See Exhibit "C" hereto.

28.      The Determination Notice fails to comply with this Court's 12/23/08 Order,

which directs the Trustee to satisfy customer claims and deliver securities in accordance "with

the Debtor's books and records."  12/23/08 Order at 5 (D.E. No. 12).  Included with the Kostin

Co.'s Customer Claim was the Kostin Co.'s Final Customer Statement showing a balance of

7

$120,908,112.39.  See Exhibit "D" hereto.  The Final Customer Statement is the best evidence of

the amount owed to the Kostin Co. based upon BLMIS's books and records.  Accordingly, the

claim should be allowed in the full amount of $120,908,112.39.

29.    Furthermore, pursuant to 15 U.S.C. § 78fff-4(c), the Trustee is obligated to:

> promptly satisfy all obligations of the member to each of it [its]
> customers relating to, or net equity claims based upon, securities or
> cash by the delivery of securities or the effecting of payments to
> such customer … insofar as such obligations are ascertainable
> from the books and records of the member or are otherwise
> established to the satisfaction of SIPC.

The "books and records" of BLMIS include the Final Customer Statement and all other monthly

statements, trade confirmations, and other reports regularly sent by BLMIS to the Kostin Co.

The "books and records" of BLMIS, as reflected in the Final Customer Statement, show that

Kostin Co. has a valid claim for $120,908,112.39.  See Exhibit "C" hereto.  The Kostin Co.'s

Customer Claim is valid because the Customer Claim was based upon the "obligations" of

BLMIS as reflected in its "books and records," including the Final Customer Statement.  See

Exhibit "C" hereto.  By not acting "promptly" to "satisfy" the valid Customer Claim, the Trustee

violated 15 U.S.C. § 78fff-4(c).

30.    The Final Customer Statement, upon which the Kostin Co. reasonably and

legitimately relied, entitles the Kostin Co. to the entirety of the Customer Claim, i.e.,

$120,908,112.39.  See Exhibit "D" hereto.  The Trustee, on behalf of SIPC, is obligated to

advance to each customer with a valid and outstanding claim for securities the first $500,000 of

his, her or its claim.  See 15 U.S.C. § 78fff-3(a).  Any such customer who has a claim for more

than $500,000 is entitled to "share ratably in [any available] customer property on the basis and

to the extent of their respective net equities[,]" minus the amount advanced.  See 15 U.S.C. §

78fff -2(c)(1)(B).  Thus, the Kostin Co. is entitled to an advance of $500,000 from SIPC and to a

claim against customer property for the remainder of the Customer Claim, i.e., $120,408,112.39.

31.     Additionally, the Trustee's Determination Notice ignores other information in

BLMIS's books and records, including that the BLMIS 12/31/89 Report states that, as of January

1, 1989, the "INITIAL INVESTMENT" in the Account was $5,192,347.90, and that, as of

December 31, 1989, the "TOTAL EQUITY" in the Account was $12,784,825.26. See Exhibit

"B" hereto.

32.     It is the Trustee's burden to prove the assumptions underlying the Determination

Notice that BLMIS never earned profits and that all profits reported to customers were

"fictitious." The Trustee has provided no evidence to satisfy that burden. Moreover, the Trustee

has the burden to prove exactly when the alleged fraud began. The Trustee has produced no

evidence as to when the fraud began, and certainly has produced no evidence that the fraud

began prior to 1990. Thus, the BLMIS 12/31/89 Report (part of the BLMIS books and records)

is the best evidence of the "TOTAL EQUITY" in the Account as of December 31, 1989, i.e.,

$12,784,825.26. See Exhibit "B" hereto.

33.     Moreover, the Kostin Co.'s Account is a successor to, and transferee from, one or

more prior or other accounts (the "Transferor Accounts"). In calculating the "net equity" for the

Kostin Co.'s Account, the Trustee improperly ignores the actual amounts transferred from the

Transferor Accounts to the Kostin Co.'s account(s) as reflected on the books and records of

BLMIS. The Trustee provided no basis for reducing either the balance in the Transferor

Accounts, or the amount of the transfer, at the time of the transfer.

## III. THE TRUSTEE'S NET INVESTMENT METHOD IS CONTRARY TO THE LANGUAGE AND INTENT OF SIPA, AND CONFLICTS WITH THE KOSTIN CO.'S REASONABLE AND LEGITIMATE CUSTOMER EXPECTATIONS

34.     Pursuant to 15 U.S.C. Section 78fff-2(b), a customer's claim shall be allowed in

the amount of the customer's "net equity."  15 U.S.C. § 78fff-2(b).  The Trustee's Determination

Notice objecting to the Kostin Co.'s Customer Claim is based upon the premise that "net equity"

should be determined by monies deposited to the Account less any withdrawals, without regard

to any gains reflected in the Final Customer Statement or prior BLMIS statements.  See Exhibit

"A" hereto, Determination Notice, at Table 1.  The Trustee's "net equity" determination

incorrectly ignores SIPA's express language, SIPA's legislative history, SIPC's own prior

statements and established polices and practices, and case law.  The following citations are just a

few examples.

      35.     "Net Equity" is defined in SIPA as:

> the dollar amount of the account or accounts of a customer, to be
> determined by –
>
> (A) calculating the sum which would have been owed by the
> debtor to such customer if the debtor had liquidated, by sale or
> purchase on the filing date, … all securities positions of such
> customer (other than customer name securities reclaimed by such
> customer); … minus (B) any indebtedness of such customer to the
> debtor on the filing date; …

15 U.S.C. § 78lll(11).  The Trustee's Net Investment Method has no support in the language of

the statute or in the case law interpreting the statute.

      36.     SIPA's legislative history emphasizes Congress's intention that the statute protect

customers' reasonable and legitimate expectations by ensuring that customers of brokerage firms

may rely upon their account statements.  In 1978, amendments to SIPA were passed in order to

"make SIPA more responsive to the reasonable expectations of public investors and [to] provide

investors with greater protection against the financial failure of stock-brokers, thereby enhancing

investor confidence in the securities markets."  H.R. Rep. No. 95-746, at 21 (1977).  The 1978

amendments were intentionally designed to ensure that each "customer" would receive

compensation based on what that customer legitimately believed was in his, her or its account,

even if the securities at issue were never purchased:

> A customer generally expects to receive what he believes is in his
> account at the time the stockbroker ceases business. But because
> securities may have been lost, improperly hypothecated,
> misappropriated, never purchased or even stolen, this is not always
> possible. Accordingly, when the customer claims for a particular
> stock exceed the supply available to the trustee in the debtor's
> estate, then customers generally receive pro rata portions of the
> securities claims, and as to any remainder, they will receive cash
> based on the market value as of the filing date (normally the day
> the liquidation proceeding is initiated). . . . By seeking to make
> customer accounts whole and returning them to customers in the
> form they existed on the filing date, the amendments not only
> would satisfy the customers' legitimate expectations, but also
> would allow him to continue to exercise investment prerogatives
> and to avoid oftentimes adverse tax consequences.

H.R. Rep. No. 95-746, at 21 (emphasis added); see also S. Rep. No. 95-763, at 2 (1978)

("[B]ecause securities belonging to customers may have been … never purchased, … it is not

always possible to provide to customers that which they expect to receive, that is, securities

which they maintained in their brokerage account. . . . [T]he amendments . . . would satisfy

customers' legitimate expectations . . .").  The BLMIS books and records that BLMIS sent to the

Kostin Co. (monthly account statements and trade confirmations) reflected that there were

certain securities in the Account.  Based upon the purpose of SIPA, it makes no difference

whether the securities reflected in the BLMIS books and records for the Account were actually

purchased.

37.    The Kostin Co. deposited funds with BLMIS with the reasonable and legitimate

expectation that the amounts deposited would grow.  The Kostin Co.'s BLMIS monthly account

statements and other reports showed such growth, and the balance on the Final Customer

Statement reflected the benefit of the bargain.  That is precisely the reasonable and legitimate

expectation of the Kostin Co. that SIPA was designed to protect.

38.    Albeit not in the SIPA/SIPC context, under analogous circumstances, in Visconsi

11

v. Lehman Brothers, Inc., No. 06-3304, 244 Fed. App. 708, 713-14 (6th Cir. 2007), the court, in

a Ponzi scheme case, rejected the money in/money out formula as a proper measure of damages

because it did not reflect the expectations of the parties.  Id.  The Court explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case.  Plaintiffs gave $21 million
> to Gruttadauria, not to hide under a rock or lock in a safe, but for
> the express purpose of investment, with a hope -- indeed a
> reasonable expectation -- that it would grow.  Thus, the out-of-
> pocket theory, which seeks to restore to Plaintiffs only the $21
> million they originally invested less their subsequent withdrawals,
> is a wholly inadequate measure of damages.  Had Gruttadauria
> invested Plaintiffs' money as requested, their funds would have
> likely grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they
> hired an honest broker . . . , would have placed their money in the
> stock market during one of the strongest bull markets in recent
> memory.  In fact, the fictitious statements issued by Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly invested, indicate that Plaintiffs' accounts would have
> grown to more than $37.9 million (even accounting for the
> withdrawal of more than $31.3 million).  Plaintiffs thus could have
> reasonably believed that they were entitled to the full $37.9 million
> balance shown, regardless of the amounts of their previous
> deposits and withdrawals.

Id.

39.    The Trustee's Net Investment Method is also contrary to SIPC's own policies and

practices, as reflected, for example, in the testimony of Stephen Harbeck, then SIPC's president

and CEO, and its actions in similar liquidation proceedings.  In the In re New Times Securities

Services, Inc. SIPA liquidation, in the context of discussing claims-filing deadlines, Mr. Harbeck

acknowledged that SIPC would replace securities listed on customer account statements, even if

the securities had never been purchased:

> **Mr. Harbeck**: [I]f you file within sixty days, you'll get the
> securities, without question.  Whether -- if they triple in value,
> you'll get the securities.  But, if . . .
>
> **The Court:**  Even - - even if - -

12

> **Mr. Harbeck:**  Even if they're not there.
>
> **The Court**:  Even if they're not there.
>
> **Mr. Harbeck**:  Correct.
>
> **The Court**:  In other words, if the money was diverted, converted --
>
> **Mr. Harbeck**: And the securities were never purchased.
>
> **The Court:**  Okay.
>
> **Mr. Harbeck**:  And if those positions triple, we will gladly give
> the people their securities positions.

See In re New Times Securities Services, Inc., No. 00-8178 (Bankr. E.D.N.Y.) ("New Times"),

Transcript of Hearing Held on 7/28/00 (D.E. No. 37), at 37-39.

40.     The Second Circuit's discussion of SIPC's claims processing in New Times

further indicates that SIPC paid customer claims based on the customers' final account

statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled by Goren to believe that
> they were investing in mutual funds that in reality existed were
> treated much more favorably.  Although they were not actually
> invested in those real funds -- because Goren never executed the
> transactions  -- the information that these claimants received on
> their account statements "mirrored what would have happened had
> the given transaction been executed."  As a result, the Trustee
> deemed those customers' claims to be "securities claims" eligible
> to receive up to $500,000 in SIPC advances.  The Trustee indicates
> that this disparate treatment was justified because he could
> purchase real, existing securities to satisfy such securities claims.
> Furthermore, the Trustee notes that, if they were checking on their
> mutual funds, the "securities claimants," . . . could have confirmed
> the existence of those funds and tracked the funds' performance
> against Goren's account statements.

In re New Times Secs. Servs., Inc., 371 F.3d 68, 74 (2d Cir. 2004) (citations omitted); see also

Brief of Appellant Securities Investor Protection Corporation at 23-24, In re New Times Sec.

Servs., Inc., No. 05-5227, 2005 WL 5338148 (2d Cir. Dec. 27, 2005) (arguing that, under SIPA,

"reasonable and legitimate claimant expectations on the filing date are controlling even where

inconsistent with transactional reality," and that, when a customer receives a confirmation

reflecting a purchase of securities, the customer is entitled to recover "even where the purchase

never actually occurred and the debtor instead converted the cash deposited by the claimant to

fund that purchase").

41.    Consistent with these statements, the language of the Series 500 Rules governing

SIPC shows that a customer is allowed to pursue a claim for securities if the customer receives

written notice of the purchase of the securities, whether or not the securities were actually

purchased:

> Where the Debtor held cash in an account for a customer, the
> customer has a "claim for securities" with respect to any
> authorized securities purchase:
>
> (1) If the Debtor has sent written confirmation to the customer that
> the securities in question have been purchased for or sold to the
> customer's account; or
>
> (2) Whether or not such a written confirmation has been sent, if the
> securities in question have become the subject of a completed or
> executory contract for sale for or purchase from the account.

17 C.F.R. § 300.52(a); see also In re New Times Secs. Servs., Inc., 371 F.3d at 86 ("Under the

Series 500 Rules, whether a claim is treated as one for securities or cash depends not on what is

actually in the customer's account but on what the customer has been told by the debtor in

written confirmations.").

42.    The Kostin Co. is situated no differently than the "securities claimants" in the

New Times case.  Due to the monthly account statements, trade confirmations, and other reports

that BLMIS regularly sent to the Kostin Co. (see, e.g., Exhibit "D" hereto (including trade

confirmations)), the Kostin Co. reasonably believed and legitimately expected, throughout the

existence of the Account, that BLMIS had executed the transactions reflected in the monthly

account statements, trade confirmations and other reports, and that the Account contained all

14

securities and all profits and proceeds therefrom reflected in such account statements, trade

confirmations and other reports.  Accordingly, the Kostin Co.'s Customer Claim should be

recognized in full.

43.     Moreover, certain actions were taken in reliance upon the BLMIS books and

records that BLMIS sent to the Kostin Co., including the monthly account statements, trade

confirmations and other reports.  For example, income and estate taxes were paid.  See Section V

below.  Additionally, in 1999, in reliance upon the Kostin Co.'s investments at BLMIS, and the

monthly account statements, trade confirmations, and other reports that BLMIS regularly sent to

the Kostin Co., Edward and Susan Kostin made a decision to surrender their right to have

Edward Kostin's pension paid over the life of either Edward Kostin or Susan Kostin, whoever

should survive longer (then estimated to be worth approximately $350,000 per year), in

exchange for the right to have Edward Kostin's pension paid over the life of only Edward Kostin

(then estimated to be worth approximately $400,000 per year).

## IV.   THE KOSTIN CO. IS ENTITLED TO INTEREST ON ITS CUSTOMER CLAIM OR, AT THE VERY LEAST, ON AMOUNTS DEPOSITED

44.     If it is ultimately determined that reported profits on funds deposited with BLMIS

will not be allowed, then, at the very least, the Kostin Co. is entitled to recover interest on

deposited funds.  Such interest is required as a matter of state law, and the Supreme Court has

determined that, in bankruptcy cases, creditor claims, including the right to prepetition interest,

are determined by state law.  See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549

U.S. 443, 450-51 (2007) ("[W]e have long recognized that the basic federal rule in bankruptcy is

that state law governs the substance of claims, Congress having generally left the determination

of property rights in the assets of a bankrupt's estate to state law.") (quotations omitted).

45.     BLMIS is a New York limited liability company, with a principal place of

business at 885 Third Avenue, New York, New York.  See 3/1/10 Decision, at 8 (D.E. No.

1999).  Thus, New York law applies here.

46.      "The proof of a claim is analogous to a complaint."  Best Payphones, 2007 WL

203980, at *6.  Under New York Law, under these circumstances, the Kostin Co.'s Customer

Claim includes interest.  See N.Y. C.P.L.R. § 5004 (providing for a nine percent per annum fixed

interest rate for judgments).

47.      The Kostin Co. is also entitled to interest on its Customer Claim because the

money the Kostin Co. invested with BLMIS was converted.  See Eighteen Holding Corp. v.

Drizin, 268 A.2d 371 (1st Dep't 2000) (awarding prejudgment interest on judgment for money

had and received, unjust enrichment, and conversion because "defendants wrongly withheld

plaintiff's money"); see also Steinberg v. Sherman, No. 07 Civ. 1001 (WHP), 2008 WL

1968297, at *33 (S.D.N.Y. May 2, 2008) (citing cases for the proposition that prejudgment

interest is generally available for judgments of conversion and unjust enrichment, with interest

calculated at the nine percent statutory rate for post-judgment interest).

48.      Furthermore, victims of a Ponzi scheme are entitled to "an expectancy measure of

damages, which seeks to put Plaintiffs in the position they would have held had [the broker-

dealer] not breached [its] 'bargain' to invest Plaintiffs' money."  See Visconsi, 244 Fed. App. at

713 (noting that defrauded investors are entitled to be compensated based on the fact that they

gave their money "not to hide under a rock or lock in a safe, but for the express purpose of

investment, with a hope-indeed a reasonable expectation – that it would grow[].").  Accordingly,

under applicable New York law, Kostin Co. is entitled to interest on funds deposited with

BLMIS.  See, e.g., N.Y. C.P.L.R. § 5004; N.Y. Gen. Obli. § 5-501, et seq.

49.      The Trustee concedes that, at the very least, as of March 15, 1982, Kostin Co. had

16

deposited $590,871.38 with BLMIS.  See Exhibit "A" hereto, Determination Notice, at Table 1.

Thus, even if the Court's 3/1/10 Decision is upheld, and the Net Investment Method applies to

the Kostin Co.'s Customer Claim, the Kostin Co.'s net equity should be calculated after applying

interest to $590,871.38, at the statutory rate of 9 percent per year, for at least the time period

from March 15, 1982 to December 11, 2008.

50.     However, the Trustee's determination of the amount deposited with BLMIS by

the Kostin Co. (i.e., $590,871.38) appears to conflict with the face of BLMIS's books and

records.  The BLMIS 12/31/89 Report states that the "INITIAL INVESTMENT" in the Account

was $5,192,347.90.  Thus, even if the Court's 3/1/10 Decision is upheld, and the Net Investment

Method applies to the Kostin Co.'s Customer Claim, the Kostin Co.'s net equity must be

calculated by adding interest to $5,192,347.90, at the statutory rate of 9 percent per year, for at

least the time period from January 1, 1989 to December 11, 2008.

51.     Moreover, as stated above, the Trustee has produced no evidence as to exactly

when the alleged fraud began at BLMIS, and certainly has produced no evidence that the fraud

began at BLMIS prior to 1990.  The BLMIS 12/31/89 Report indicates that the "TOTAL

EQUITY" in the account as of December 31, 1989 is $12,784,825.26.  Thus, at the very least, the

Kostin Co.'s net equity should be calculated by adding to that amount interest, at the statutory

rate of 9 percent per year, for at least the time period from December 31, 1989 to December 11,

2008.

## V.  INCOME TAXES AND ESTATE TAXES THAT WERE PAID SHOULD BE TAKEN INTO ACCOUNT IN DETERMINING THE KOSTIN CO.'S CUSTOMER CLAIM

52.     Income taxes were paid on amounts withdrawn from the Kostin Co. Account,

which amounts, the Trustee asserts, included fictitious profits.  Estate tax payments were also

made, which related to the value of the Account, which the Trustee also asserts included

fictitious profits.  The Trustee has justified his proposed method of calculating claims as fair and

equitable because allegedly fictitious profits should not compete dollar for dollar with claims for

funds actually deposited by customers.  However, the Trustee's methodology is not equitable

insofar as there were significant payments of required income and estate taxes made based upon

what the Trustee now asserts were fictitious profits.  Even assuming *arguendo* that the Trustee's

method is otherwise correct, the Kostin Co.'s Customer Claim should be adjusted by adding all

amounts paid as income or estate taxes based upon allegedly fictitious profits in order to equalize

the Kostin Co.'s treatment with that of other customers.  See SEC v. Byers, 637 F. Supp. 2d 166,

182-83 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment

of fictitious profits to equitably treat reinvesting customers as compared with customers

receiving distributions).

## CONCLUSION AND RESERVATIONS

53.     For the reasons stated herein, the Kostin Co.'s Customer Claim should be allowed

in its entirety.  The Court should direct SIPC to issue immediate payment to the Kostin Co. in the

amount of $500,000.00 plus interest from the date of the Determination Notice without imposing

conditions to payment that are not authorized or warranted.  The Court should also find that the

remainder of the Kostin Co.'s Customer Claim should be allowed, and that the Kostin Co. is

entitled to monies from customer property for the remainder of its Customer Claim, i.e.,

$120,408,112.39.

54.     The Kostin Co. also requests such other and further relief as may be just and

equitable.

55.     The Kostin Co. reserves the right to revise, supplement, and/or amend this

Objection, and any failure to object on a particular ground or grounds shall not be construed as a

waiver of the Kostin Co.'s right to object on any additional grounds.

56.     The Kostin Co. is in possession of numerous, and sometimes voluminous,

additional documents and records that support its objections herein.  The Kostin Co. will make

such documents and records available upon request.  These documents and records include, but

are not limited to, documents and records concerning the payment of income and estate taxes (as

referenced in Section V above), which the Kostin Co. will make available pursuant to an

appropriate confidentiality agreement and protective order.

57.     The Kostin Co. reserves all rights set forth in Rule 9014, including, without

limitation, rights of discovery.  See Fed. R. Bankr. P. 9014.

58.     The Kostin Co. reserves all objections as to the competence, relevance,

materiality, privilege or admissibility of evidence in any subsequent proceeding or trial of this or

any other action for any purpose whatsoever.

59.     The Kostin Co. incorporates by reference all reservations of rights set forth in the

Kostin Co.'s Customer Claim.

Dated:   New York, New York
         November 11, 2010

                                        MORGAN, LEWIS & BOCKIUS LLP


                                        By: /S/Bernard J. Garbutt III
                                            Bernard J. Garbutt III
                                            Menachem O. Zelmanovitz
                                            Andrew D. Gottfried
                                            Michael S. Kraut
                                        101 Park Avenue
                                        New York, New York 10178
                                        (212) 309-6000

                                        *Attorneys for The Kostin Company*

19

## CERTIFICATE OF SERVICE

I hereby certify that, on November 11, 2010, I served a copy of the foregoing Objection to Trustee's Determination of Claim, by first class mail, to the following persons/entities at the addresses designated by them for this purpose, as listed below, by placing the documents in a sealed envelope with postage thereon fully prepaid and then personally depositing the envelope in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, NY  10004

> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY  10111

Dated:    New York, New York
          November 11, 2010

                                        /S/Alice McCarthy
                                            Alice McCarthy