

Bankruptcy Case No. 08-1789 (BRL)

BERNARD L. MADOFF INVESTMENT SECURITIES LLC
In Liquidation    December 11, 2008

OPPOSITION TO TRUSTEE'S DETERMINATION OF CLAIM, JEREMY L. RADOSH,
Claimant Claim # 014899

I RESPECTFULLY REQUEST THAT NO ACTION BE TAKEN ON THIS OPPOSITION UNTIL THE FINAL DECISION ON APPEAL OF THE CICO vs. LSM ISSUE NOW BEFORE THE US SECOND CIRCUIT COURT OF APPEALS. Also, Claimant does not wish to burden either the Bankruptcy Court or the Trustee with copies of all possibly pertinent documents at this time, as they number well into the thousands and nearly fill a standard 4-drawer filing cabinet.

RADOSH PARTNERS (RP) was formed in 1993 for six named persons : the children and grandchildren of Louis + Esther Radosh, both then deceased, as the six descendants were to receive the proceeds of a BLMIS trust account started by Louis + Esther. All six were named "RADOSH": Burnett + Edward (sons and only children of Louis + Esther), Alaric and Jeremy (sons of Burnett and his wife Katherine), Lee and Laura (son and daughter of Edward and his wife Fran). The sole purpose of RP was to allow each of the six the option of keeping the inherited proceeds invested with BLMIS. Moreover, when RP was formed, it was done in actual coordination with BLMIS. (Copy of letter to letter to BLMIS, 3 JUN 93, is attached as Incl. 1 in the Opposition of my father, Burnett Radosh, Claim 014898).

RP is a registered Fictitious Name, not a registered Partnership, in the State of Florida. The original registration named the six partners all as 'owners'. Subsequently children of Lee + his wife Jodi, and Laura and her husband, Tausig, were added as owners, as was Katherine's mother, Catherine Koenig. Edward dropped out as a partner, but later returned for a while as Edward A Radosh Profit Sharing Plan. Catherine Koenig passed away, her share going equally to her grandsons, Alaric and me. Several amendments to the Fictitious Name registration reflected the changes in the composition of RP.

Fictitious Name registrations in Florida are public records, easily accessed on-line. On request we can provide hardcopy of all of our filings with the Florida Secretary of State, and if this matter comes to hearing we may present them in evidence.

Each member of RP, each owner, made his/ her own RP/Madoff account investment decisions. I withdrew the least of my generation and, provided I get credit for the original investment and the funds from Grandma Koenig I am a substantial "net looser". The main function of the so-called "General Partner", entirely clerical, was to consolidate the individual member's withdrawals and new investments, and send the net sum to BLMIS or ask for a BLMIS withdrawal check. Copies of two letters of the "GP" to BLMIS requesting withdrawal are attached as exemplars in my father's Opposition (Incl. 2 + 3), but all are now available on request and all may be offered into evidence when this comes to a hearing. BLMIS proceeds were distributed by the "GP" to the member/owners who had requested them. The GP also kept a record of all transactions, internal and external, and filed yearly 1065 Forms with the IRS as a pass-though entity " investment club" code 523900, and sent 1065 K-1s to all of the members. All of these records are now available to the Court or the Trustee upon request and may be entered into evidence at the hearing.

The "GP" made no investment decisions except for his own personal share as one of the owners.

RP owners never met to make organizational investment decisions regarding its sole investment, the BLMIS account, and no such decisions were ever made. RP was merely a pass-through for the decisions of the individual owners.

RP has never had formal documentation between the owners, notwithstanding the "GP" originally planned to come up with such. There is a series of letters from the "GP" to all the owners that reflect the informal framework, 138 in all, but sent to each owner with different investment data computed for each owner, so the total of filed letters is well over 1,000. This includes a copy of the blank format for that letter as well as the

copy of the letter sent to each owner. A complete set for one letter, and two formats for other letters are attached to my father's Opposition as exemplars (Incl. 4, 5 + 6), but, of course, all are now available to the Court and to the Trustee on request, and when and if this comes to a hearing, all may be offered into evidence.

I, of course, filed annual 1040s and paid tax on all my BLMIS profits reported per my K-1. After the December 2008 revelation, I used the Safe Harbor method for some IRS relief. All of the Claimant's IRS documentation is on file, and may be presented at the hearing. It is available now on reasonable request of the Trustee.

It is understood, of course, that if the customer status of the individual owners is recognized for payment of their LSM claims vs. SIPC, no SIPC payment will be made to RP. We do not seek dual coverage, just full coverage.

Accordingly, it is respectfully requested that in the event LSM prevails on final appeal, a hearing be set on this OPPOSITION to Trustee's DETERMINATION OF CLAIM, and that after hearing this matter the Court sustain the Opposition and declare Claimant to be a customer of BLMIS per SIPA entitled to full coverage. On the other hand, if CICO prevails on final appeal, it is requested that no action be taken on this OPPOSITION for one additional month so that Claimant can negotiate with the Trustee on the matter of crediting him with the funds received from his paternal grandparents and his maternal grandmother and, of course, the "customer" issue.

Respectfully submitted this 15th day of November, 2010

JEREMY L. RADOSH
Claimant
Claim# 014899

