MOSES & SINGER LLP
Alan E. Gamza, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
agamza@mosessinger.com

Attorneys for Hermione Tsoi

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
SECURITIES INVESTOR PROTECTION                             :
CORPORATION,                                               :
                                                           :    SIPA LIQUIDATION
                                       Plaintiff,          :    (Substantively Consolidated)
                                                           :    Adv. Pro. No. 08-01789 (BRL)
              v.                                           :
                                                           :
BERNARD L. MADOFF INVESTMENT                               :
SECURITES LLC,                                             :
                                                           :
                                       Defendant.          :
                                                           :
-----------------------------------------------------------X
                                                           :
In re:                                                     :
                                                           :
BERNARD L. MADOFF,                                         :
                                                           :
                                       Debtor.             :
                                                           :
-----------------------------------------------------------X

## OBJECTION TO TRUSTEE'S DETERMINATION OF
## THE CUSTOMER CLAIM OF HERMIONE TSOI

Hermione Tsoi ("Claimant"), by and through undersigned counsel, hereby objects to the

determination by Irving H. Picard, as trustee (the "Trustee") of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), denying its timely filed customer claim against BLMIS, and

respectfully represent as follows:

## BACKGROUND

1.      As set forth more fully in the customer claim, designated as claim no. 010920 (the "Customer Claim"), Claimant invested in the securities markets through BLMIS by entrusting cash with it through Sienna Partnership, L.P. ("Sienna").

2.      On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS pursuant to the Securities Investor Protection Act of 1970 ("SIPA").

3.      On December 15, 2008, jurisdiction of this matter was transferred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the Trustee was appointed under SIPA to oversee the liquidation of the assets of BLMIS and to process all claims against BLMIS in accordance with SIPA.

4.      On December 23, 2008, the Bankruptcy Court entered an order (the "Procedures Order") [Dkt. No. 12] establishing various procedures for the filing and determination of customer claims. To the extent the Trustee disagrees with the amount asserted in a customer claim, the Procedures Order provides that the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefore . . . ." Procedures Order at 6.

5.      On or about June 10, 2009, Claimant timely filed its Customer Claim with the Trustee pursuant to the Procedures Order.

6.      By notice dated October 22, 2010 (the "Determination Notice"), a copy of which is attached hereto as Exhibit A, the Trustee notified Claimant of his determination denying the Customer Claim. In the Determination Notice, the Trustee summarily stated that the Customer Claim had been denied because:

849367                                    2

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll(2). Accordingly, your Claim for securities and/or a credit balance is DENIED.

Determination Notice at 1.

## GROUNDS FOR OBJECTION

### I. SIPA CONTAINS NO REQUIREMENT THAT CLAIMANT HAVE A DIRECT ACCOUNT WITH BLMIS TO BE A "CUSTOMER" ENTITLED TO PROTECTION.

7.    Contrary to the Trustee's determination, Claimant is a "customer" of BLMIS under the plain meaning of SIPA. The Trustee's determination that Claimant must have had a specifically titled account recorded among BLMIS's "available books and records" has no statutory basis and is inconsistent with the purpose of SIPA.

8.    To be protected under SIPA, an investor must come within the statutory definition of "customer". Section 78lll(2) of SIPA defines "customer" as:

> **any person** (including any person with whom the debtor deals as a principal or agent) **who has a claim on account of securities** received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for purposes of purchasing such securities . . . .

15 U.S.C. § 78lll(2) (emphasis added).

9.    The broad statutory definition of customer in no way mandates that a claimant directly deal with, or deposit cash directly with, the debtor. *See In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) ("[w]hether a claimant deposited funds 'with the debtor' does not depend simply on to whom claimants made their checks payable . . . ." (citing *In re Old*

*Naples*, 223 F.3d 1296, 1302 (11th Cir. 2000). Indeed, there is no requirement that an investor

have an account directly with the debtor. *See, e.g., In re First State Sec. Corp.*, 34 B.R. 492,

495-96 (Bankr. S.D. Fla. 1980) (finding claimants were "customers" of debtor where claimants'

accounts were with a third-party broker and not the debtor itself). Through Sienna, Claimant

entrusted cash with BLMIS for purpose of trading securities.

10.    SIPA is remedial legislation intended to protect investors of insolvent brokers

and, as such, should be construed liberally to effect its purpose. *First State Sec.*, 34 B.R. at 495-

96 (*citing Tcherepnin v. Knight*, 389 U.S. 332 (1967)). The Trustee's overtly strict construction

of the term "customer" to exclude indirect investors is inconsistent with that purpose and reads

into SIPA a requirement that does not exist. Each investor who invested in BLMIS, whether

directly or indirectly, qualifies as a "customer" under SIPA.

## II.    SIPA EXPRESSLY AFFORDS PROTECTION TO INDIRECT INVESTORS.

11.    By its terms, SIPA expressly intends to protect indirect investors:

> no advance shall be made by SIPC to the trustee to pay or
> otherwise satisfy any net equity claim of any customer who is a
> broker or dealer or bank, other than to the extent that it shall be
> established . . . that the net equity claim of such broker or dealer or
> bank against the debtor arose out of transactions for customers of
> such broker or dealer or bank (which customers are not themselves
> a broker or dealer or bank or a person described in paragraph (4)),
> *in which event each such customer of such broker or dealer or*
> *bank shall be deemed a separate customer of the debtor.*

15 U.S.C § 78fff-3(a)(5) (emphasis added).

12.    Under that provision, Congress made clear that SIPA affords protection to certain

indirect investors, i.e. investors participating in the securities markets through financial

intermediaries. Participation through such financial intermediaries obviates any need for a direct

account relationship between the investor and a debtor. *First State Sec.*, 34 B.R. at 495-96

("There is nothing in SIPA which suggests that coverage should be denied merely because the

debtor used the facilities of another innocent broker in converting its customer's property.").

Indeed, there is no substantive difference between direct and indirect investors, both ultimately

tried to participate in the securities markets through the same broker-dealer – BLMIS.

13.    Further, under SIPA, only two categories of persons are excluded from customer

status: (i) any person with a claim arising out of transactions with a foreign subsidiary of a

member of SIPC; and (ii) any person with a claim for cash or securities which can be considered

part of the capital of the debtor, or which is subordinated to the claims of any or all creditors of

the debtor.  15 U.S.C. § 78lll(2).  Indirect investors, like Claimant, are not included in either of

those two exceptions.  Had Congress intended to exclude indirect claimants from the definition

of "customer", it would have done so explicitly – either by specifying them within a third

enumerated exception, and/or by making the existence of a specifically titled account within the

debtor's "available books and records" an express condition for obtaining "customer" status.  But

Congress did not do so.

## III.    CLAIMANT IS A CUSTOMER UNDER SECOND CIRCUIT PRECEDENT.

14.    The Trustee will no doubt rely heaving on the decision in *SIPC v. Morgan,

Kennedy & Co.*, 533 F.2d 1314 (2d cir. 1976), but the facts presented by Claimant support the

finding that Claimant is a "customer" under SIPA.  The distinctions between Claimant's facts

and those of *Morgan Kennedy* underline why the Trustee's view of the definition of "customer"

is wrong.

15.    In *Morgan Kennedy*, a company created an employee profit sharing plan in the

form of a trust with three trustees, allowing all company employees a contingent right to share in

the trust corpus at the time of their retirement.  *Id.* at 1315.  Only the trustees, acting collectively,

could decide how to invest the trust corpus, and the identities of the trust beneficiaries and their respective shares were inherently speculative because each employee's interest in the trust was unvested and payable only when the employee retired. *Id.* The trustees sent money to Morgan Kennedy to invest in securities, and Morgan Kennedy became insolvent. *Id.* at 1315-16. The Second Circuit held that the trust, not the individual beneficiaries, was a "customer" under SIPA because

> [t]he trust account itself was in the name of the Trustees who had the ***exclusive power to entrust the assets to the debtor***, to ***invest and reinvest***, and to ***purchase and trade securities in the account as they saw fit***. In short, the single trust account, represented by the Trustees collectively, possessed the required attributes for customer status under SIPA; the Reading employees possessed none of those attributes.

*Id.* at 1319 (emphasis added).

16.    Sienna, unlike the trustees in *Morgan Kennedy*, was a mere conduit of funds to BLMIS. It was Claimant who had the power "to invest and reinvest" by redeeming or adding to their investments committed to BLMIS' management. The sole purpose of Sienna was to facilitate investing in the securities markets through BLMIS. In addition, Claimant identified itself to BLMIS by filing claim forms and supporting documents. Consequently, the factors that led the Second Circuit to the result in *Morgan Kennedy* support the conclusion that Claimant is a "customer" under SIPA.

## IV.    CLAIMANT IS A "CUSTOMER" VIA CONVERSION.

17.    The SIPA definition of "customer" also includes investors who can show that the claim against arises out of sales or conversions of securities held on the investor's behalf: "[t]he term 'customer' includes ***any person*** who has a claim against the debtor ***arising out of*** sales or conversions of such securities . . . ." 15 U.S.C. § 78lll(2) (emphasis added). That language does

not limit granting "customer" status arising from conversion to only direct claimants having

titled accounts appearing among the debtor's available books and records. Indeed, the statutory

language includes a broad range of claimants as "any person" who has a claim against the debtor

"arising out of" conversion is entitled to "customer" status. Through a multi-billion dollar Ponzi

scheme, BLMIS converted Claimant's property which was entrusted to BLMIS through Sienna.

Claimant has a claim for conversion against BLMIS and therefore entitled to "customer" status

under SIPA. *In re Stratton Oakmont, Inc.*, 2003 WL 22698876, at *3 (S.D.N.Y. Nov. 14, 2003)

(holding that the debtor-broker's conversion of the claimant's property brings the customers

within the meaning of SIPA).

## RESEVATION OF RIGHTS

18.    Claimant hereby joins, and fully incorporates by reference as if fully restated

herein, the arguments and authority cited in the objections and briefs filed on behalf of similarly

situated claimants in connection with the Trustee's Motion For An Order to Affirm Trustee's

Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names,

Namely, Investors in Feeder Funds [Dkt. Id. 2416]. Any failure to object on any particular

ground shall not be construed as a waiver of and is without prejudice to Claimant's right to

object on such ground at a later date. Claimant reserves its right to revise, supplement or amend

this Objection.

## RELIEF REQUESTED

19.    For the reasons stated herein, Claimant respectfully requests that the Bankruptcy

Court overrule the Determination Notice and find that Claimant is a "customer" within the

meaning of 15 U.S.C. § 78lll(2), direct that Claimant be treated by the Trustee in the same

manner and grant them relief in BLMIS liquidation proceeding to the same extent as direct

investors in the BLMIS, and grant such other and further relief as may be just, proper, and

equitable.

Dated: November 19, 2010
       New York, New York

                                        MOSES & SINGER LLP


                                        By:  /s/  Alan E. Gamza
                                              Alan E. Gamza, Esq.
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, New York 10174-1299
                                        Telephone: (212) 554-7800
                                        Facsimile: (212) 554-7700
                                        agamza@mosessinger.com

                                        Attorneys for Hermione Tsoi

# **EXHIBIT A**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 22, 2010

HERMIONE TSOI
INDIRECT INVESTOR THRU SIENNA PARTNERSHIP LP
1-H SKYLINE MANSION, 51 CONDUIT RD.
HONG KONG,
CHINA

Dear HERMIONE TSOI:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 010920:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
October 22, 2010, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_____

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC
