Baker & Hostetler LLP                          Hearing Date: December 14, 2010
45 Rockefeller Plaza                           Hearing Time: 10:00 A.M. EST
New York, NY  10111
Telephone: (212) 589-4200                      Objection Deadline:  December 7, 2010
Facsimile: (212) 589-4201                      Time: 4:00 P.M. EST
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Jacqlyn R. Rovine
Email: jrovine@bakerlaw.com

*Attorneys for Irving H. Picard, Esq. Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*And Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　Debtor. | |

**FIFTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., as trustee

(the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively,

"Debtor"), respectfully submits this fifth application (the "Application") on behalf of the Trustee

and itself for an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of title 11

of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to Section 78eee(b)(5)

of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and

Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly

Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 [ECF No. 126],

as amended on December 17, 2009 [ECF No. 1078] (collectively, the "Compensation Order"),

allowing and awarding interim compensation for services performed by the Trustee and B&H for

the period commencing June 1, 2010 through and including September 30, 2010 (the

"Compensation Period") and reimbursement of the Trustee's and B&H's actual and necessary

expenses incurred during the Compensation Period; and in support thereof, respectfully

represents as follows:

## I.     PRELIMINARY STATEMENT

1.      During the Compensation Period, the Trustee and his counsel continued to

work diligently on behalf of customers and the estate of BLMIS, in accordance with SIPA and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

under the supervision of this Court.  Above all, the Trustee and his counsel have endeavored to determine all customer claims and promptly address questions and concerns of customers and creditors.

2.    Indeed, by the time the Court hears this Application on December 14, 2010, the Trustee will have determined virtually every one of the over 16,000 customer claims submitted to him.  Moreover, the fruits of two years of labor by the Trustee and B&H will be revealed in the form of hundreds of actions filed, significant settlements entered into, and the recovery of millions of dollars to the fund of Customer Property, as that term is defined under section 78*lll*(4) of SIPA.[2]  The extent of the fraud engaged in by BLMIS and others will be more fully exposed, as will be the Trustee's enormous efforts to try to recover Customer Property for the benefit of BLMIS customers and investors as a result of that fraud.

3.    Contrary to what has mistakenly been reported by various media and others, no administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in section 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* section 78fff(b) of SIPA, no applications filed by the Trustee have or will ever include a fee request equal to three (3%) percent (or any other percentage) of the total amount of recoveries made by the Trustee for the benefit of customers of BLMIS.  Rather, the fees and expenses of the Trustee and of all counsel to the Trustee (including, but not limited to, B&H, various international special counsel ("International Counsel") retained by the Trustee as described in ¶ 70 of the Fourth Interim

---

[2] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

3

Report for the Period Ending September 30, 2010 ("Fourth Interim Report") [ECF No. 3038],

Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), special counsel to the Trustee,

collectively referred to herein as "Counsel"), and consultants) are paid from administrative

advances from the Securities Investor Protection Corporation ("SIPC"), as are all administrative

costs incurred by the Trustee. The Court affirmed during the recent hearing regarding the fourth

application that these costs "do[] not come out of the estate." Fourth App. Hr'g Tr. 31, Sept. 14,

2010.

       4.     Thus, SIPC plays a specific role regarding compensation in a liquidation

proceeding such as this one, where the general estate is insufficient to pay trustee compensation

and SIPC is required to advance funds to pay the costs of administration. *See* SIPA §§ 78fff(5)

and 78fff-3(b)(2). The requested fees and expenses in this Application include (i) fees at the

Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been

applied, as described at ¶¶ 132-133, *infra*, and (ii) actual, necessary and reasonable expenses

incurred within the Compensation Period.

       5.     As the Trustee and his Counsel's fees and expenses are chargeable to the

general estate and not to Customer Property, the payment of fees and expenses to the Trustee and

any of his Counsel has absolutely no impact on recoveries that the Trustee has obtained and will

obtain and that will be allocated to the fund of customer property for *pro rata* distribution to

BLMIS customers whose claims have been allowed by the Trustee.

       6.     No single document can capture all of the tasks engaged in by the Trustee

and B&H since their appointment on December 15, 2008. Thousands of hours have been

expended by the Trustee and B&H in support of the Trustee's efforts to liquidate the estate,

determine customer claims, and advance the interests of all of customer claimants by initiating

4

litigations and negotiations for the return of Customer Property to be distributed by the Trustee. Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his pursuit of returning customer property to the estate. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

7.    As this Court has recognized, "[T]his is a very, very large and complex and broad international and national set piece of litigation. The . . . litigation sandbox is worldwide. The issue and negotiation sandbox, likewise, is worldwide with the Trustee required to appear and respond to litigation, both before this Court and other courts . . . [M]uch of the expenses and cost of litigation is incurred because there is an obligation, wherever the administration of the Madoff estate is implicated, for the Trustee to appear and deal with that. If litigation is brought on, it is obvious that the Trustee has to go and react to it." Fourth App. Hr'g Tr. 29-30.

## II.    **BACKGROUND**

8.    On December 11, 2008, Madoff was arrested by federal agents and was criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735 (the "Criminal Case").[3]

9.    Also on December 11, 2008 (the "Filing Date" under SIPA), the SEC filed a complaint in the District Court against defendants Madoff and BLMIS, captioned *Securities & Exchange Commission v. Madoff, et al.*, No. 08-CV-10791 (the "Civil Case"). The complaint

---

[3] On March 10, 2009, the Criminal Case was transferred to Judge Denny Chin and assigned a new docket number, No. 09-CR-213 (DC).

alleged that the defendants engaged in fraud through the investment advisor ("IA") activities of BLMIS.

10.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that the Debtor was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

11.     On that date, the District Court entered the Protective Decree [ECF No. 4], to which BLMIS consented, which, in pertinent part:

    a.     appointed the Trustee to liquidate the business of the Debtor pursuant to section 78eee(b)(3) of SIPA;

    b.     appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    c.     removed the case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court" or "Court") pursuant to section 78eee(b)(4) of SIPA.

12.     By order dated December 23, 2008, this Court approved the Trustee's bond.  [ECF No. 11].

13.     On February 4, 2009, after a noticed hearing, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee [ECF No. 69], finding that the Trustee and B&H are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).  Thus, the Trustee and B&H are qualified to serve in this proceeding.

095879, 300108362

14.     On August 6, 2009, the Court entered an order approving both the Trustee and B&H's First Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from December 15, 2009 through April 30, 2009.  [ECF No. 363].  The Court awarded the Trustee an interim allowance of $607,383.00 for professional services rendered and $45.00 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $151,845.75 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $11,729,855.86 for professional services rendered and $274,203.03 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $2,932,463.97 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.  At this time, the holdback amount was twenty percent (20%) of fees incurred by the Trustee and B&H.

15.     On December 17, 2009, the Court entered an order approving both the Trustee and B&H's Second Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from May 1, 2009 through September 30, 2009.  [ECF No. 1078].  The Court awarded the Trustee an interim allowance of $668,484.00 for professional services rendered and $921.25 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $167,121.00 in fees incurred by the Trustee during that period were held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $17,023,281.48 for professional services rendered and $280,681.62 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $4,255,820.37 in fees incurred by B&H during that period were held back and remain subject to approval by the Court.

7

16.     In that same order, the Court approved a reduction in the holdback from twenty percent (20%) to fifteen percent (15%) of fees incurred.  As such, the Court authorized the Trustee to disburse previously deferred funds equal to 5% of total fees requested to date, which amounted to $79,741.69 for the Trustee and $1,797,074.52 for B&H.

17.     On May 6, 2010, the Court entered an order approving both the Trustee and B&H's Third Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2009 through January 31, 2010.  [ECF No. 2251].  The Court awarded the Trustee an interim allowance of $570,852.56 for professional services rendered and $77.66 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $100,739.69 in fees incurred by the Trustee during that period have been held back and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of $20,301,472.46 for professional services rendered and $390,204.89 as reimbursement for actual and necessary expenses B&H incurred during that period.  An additional $3,582,612.79 in fees incurred by B&H during that period have been held back and remain subject to approval by the Court.

18.     On September 14, 2010, the Court entered an order approving both the Trustee and B&H's Fourth Interim Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2010 through May 31, 2010.  [ECF No. 2981].  The Court awarded the Trustee an interim allowance of $511,021.92 for professional services rendered and $39.63 as reimbursement for actual and necessary expenses that the Trustee incurred during that period.  An additional $90,180.33 in fees incurred by the Trustee during that period have been held back

8

and remain subject to approval by the Court.  The Court awarded B&H an interim allowance of

$28,884,304.29 for professional services rendered and $731,371.19 as reimbursement for actual

and necessary expenses B&H incurred during that period.  An additional $5,097,230.16 in fees

incurred by B&H during that period have been held back and remain subject to approval by the

Court.

### III.    SUMMARY OF SERVICES

19.    A SIPA proceeding contemplates the processing of customer claims and

the orderly liquidation of the business of a broker-dealer, with the return of customer property to

the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are

highlighted here and summarized in greater detail below, are comprised of the specific, critical

tasks in aim of that objective.

20.    The Trustee is a member of B&H.[4]  He practices principally in the areas of

corporate reorganizations, bankruptcy, and insolvency.  He is also a contributing author to

Collier on Bankruptcy, 15th Edition Revised.

21.    The Trustee was admitted to practice before this Court in 1982.  He served

as the first United States Trustee for the Southern District of New York in a pilot program from

October 1, 1979, the effective date of the Bankruptcy Code, through May 15, 1982.  Prior to his

tenure as United States Trustee, Mr. Picard was Assistant General Counsel with the SEC in

Washington, D.C., for three and a half years during which time his responsibilities included,

among other things, disclosure and enforcement matters and bankruptcy reorganizations.  Before

becoming Assistant General Counsel, he spent approximately four years in various legal

positions in the SEC's then-Division of Corporate Regulation, where his responsibilities

---

[4] As such, the Trustee will pay over to B&H the full amount of any interim compensation and disbursements awarded to him.  *See also* Third App. Hr'g Tr. 85.

primarily involved bankruptcy reorganizations.  Prior thereto, Mr. Picard spent more than six years working in the securities industry.

22.     Mr. Picard has previously served as trustee in the following ten SIPA liquidations: Jay W. Kaufmann & Company (Bankr. S.D.N.Y., No TP 84-70064A (BRL)); Norbay Securities, Inc. (Bankr. E.D.N.Y., No. 186-0174-353); Investors Center Inc. (Bankr. E.D.N.Y., No 089-0017-21); Faitos & Co., Inc. (Bankr. E.D.N.Y., No 191-1085-260); U.S. Equity Management Corp. (Bankr. S.D.N.Y., No. 95/1284 (CB)); Euro-Atlantic Securities, Inc., (Bankr. S.D.N.Y. No. 98/9304A (BRL)); Hanover, Sterling & Co., Ltd. (Bankr. S.D.N.Y. No. 96/8396A (REG)); Klein Maus & Shire, Inc.. (Bankr. S.D.N.Y., No. 00/8193A (AJG)); Montrose Capital Management Ltd. (Bankr. S.D.N.Y., No. 01/8170A (CB)); and Park South Securities, LLC (Bankr. S.D.N.Y. No. 03-8024A (RDD)).  He also has served as counsel to SIPC as trustee in two liquidation proceedings.

23.     In rendering professional services to the Trustee in this SIPA proceeding, B&H's legal team has been composed of professionals with extensive experience in, among other fields, bankruptcy, securities, tax, corporate law, and litigation, permitting the Trustee to conduct this liquidation efficiently.  B&H professionals have worked closely with the Trustee and his other professionals to coordinate assignments in order to avoid duplication of effort, which is beneficial to the customers, creditors, and other interested parties of BLMIS.

24.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.   The Trustee, with the assistance of his Counsel, has undertaken a comprehensive investigation of all of the affairs of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of Counsel but also the services of forensic accountants and legal experts,

095879, 300108362

including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent, FTI Consulting ("FTI"), the Trustee's forensic consultant, Renaissance Associates, Ltd. ("Renaissance"), and several investigative and industry consultants (collectively referred to herein as "Consultants").

25.    From the very beginning of this proceeding, the Trustee and B&H, together with AlixPartners and FTI, have been processing the customer claims submitted to him. By statute, the Trustee must look at all the books and records of BLMIS in order to determine and evaluate each customer claim. Given the duration and complexity of the fraud engaged in by Madoff, each account has a unique and often extended history, frequently involving multiple transfers between accounts. Each claim, therefore, requires the Trustee to engage in extensive forensic analysis in order to reach an ultimate determination of each customer claim.

26.    The Trustee received 16,394 claims filed by a wide variety of individuals and entities who were victims of Madoff's fraud. These claimants include customers who had active accounts with BLMIS at the time of its demise, in addition to thousands of individuals or entities who invested indirectly in BLMIS through various feeder funds and other entities.

27.    As of September 30, 2010, the Trustee has determined 13,403 customer claims, of which 2,232 were allowed, and committed to pay approximately $728 million in funds advanced to him by SIPC. The allowed claims total over $5.6 billion. The Trustee's efforts in determining and satisfying claims are ongoing.[5]

28.    In an effort to accelerate SIPA protection for individual victims of BLMIS who were suffering hardship, the Trustee and B&H implemented a Hardship Program. As of

---

[5] As of November 12, 2010, the Trustee has determined over 90% of the claims submitted to him. In all, he has determined 14,769 customer claims, of which 2,291 were allowed, and committed to pay approximately $744 million in funds advanced to him by SIPC. The allowed claims total over $5.7 billion.

11

September 30, 2010, the Trustee received 317 Hardship Program applications and approved 196. The remaining Hardship applicants were ineligible for the program because either the account had a negative net equity (meaning the investor withdrew more than deposited) or the application was from a third party investor. As of September 30, 2010, 280 hardship applicants have had their claims determined or partially determined, one hardship applicant has both determined and non-determined claims, and nine hardship applications could not be tied to customer accounts. The remaining twenty-seven hardship applicants have not had their claims determined and are under various stages of review.

29.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS to be distributed to customers in accordance with SIPA. In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow up activities to enforce the Trustee's rights to the return of customer property.

30.     As a result of the investigative efforts of the Trustee, he has initiated litigations against feeder funds and certain individuals, most of whom are well known to the public through the press and other media.

31.     As of September 30, 2010, the Trustee, through Counsel, filed nineteen avoidance actions seeking to recover over $15.5 billion in funds from various feeders funds, Madoff family members, and friends. The Trustee anticipates that he will file extensive additional litigation in the coming weeks based on investigations being conducted by the Trustee's Counsel and Consultants.

095879, 300108362

32.    The Trustee has succeeded in obtaining the return of hundreds of millions of dollars to the estate by virtue of settlements with a number of parties.  Because of the efforts being made by the Trustee and his Counsel, as of September 30, 2010, approximately $500 million has been recovered through settlements for the benefit of the customers.

33.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties, including customers against whom the Trustee has preference claims, which could result in large recoveries for the benefit of customers without the delay and expense of litigation.

34.    The Trustee has also filed, through Counsel, three complaints and corresponding applications seeking to, among other things, preliminarily enjoin multiple plaintiffs from continuing to litigate actions or commencing new actions against various people and entities related to this liquidation proceeding, including certain Madoff family members, the estate of Jeffry Picower and related entities, and the Board of Directors, President, and CEO of SIPC.  The Trustee brought the applications on several grounds.  First, the plaintiffs' actions violate the automatic stay and other stays in place in the liquidation proceeding.  Second, these actions threaten to impede the orderly administration of the BLMIS liquidation and usurp the jurisdiction of this Court by, among other things, undermining the claims administration process and circumventing the Court's determination regarding the proper formulation of a customer's net equity under SIPA.  Finally, in a number of the actions, the claims brought by the plaintiffs are duplicative and derivative of the Trustee's own claims and improperly seek to recover fraudulently transferred funds and customer property in violation of the stays.  Thus far, the Court has adjudicated one application, *Picard v. Fox*, *et al.*, 10-3114 (BRL).  The Court held that the plaintiffs had usurped causes of action belonging to the estate in violation of the automatic

095879, 300108362

stay and that the circumstances of the case also warranted the issuance of a preliminary injunction pursuant to section 105(a) of the Bankruptcy Code. This matter is currently on appeal before the Southern District, *Picard v. Fox, et al.*, 10-CV-4652 (JGK) and 10-CV-7101 (JGK).

35.    The fraud Madoff perpetrated through BLMIS has many international implications, involving foreign individuals, feeder funds, and international banking institutions. The complex transactions engaged in by those parties are being untangled by the Trustee with the assistance of his Counsel here in the United States and in each of the foreign jurisdictions concerned. As is set forth in ¶¶ 68-82 of the Fourth Interim Report, the Trustee is engaged in litigation in Europe, Gibraltar, Canada, and throughout the Caribbean, including Bermuda, the Cayman Islands, and the British Virgin Islands. He has retained counsel in these jurisdictions for the purpose of preserving and recovering customer funds being held in those countries. Recently, the Trustee retained Werder Vigano as international special counsel in Switzerland pursuant to this Court's Order dated September 13, 2010. [ECF No. 2980]. Hundreds of millions of dollars are at stake in these international matters, each of which requires extensive legal and investigative analysis on the part of the Trustee, his Counsel, and Consultants.

36.    The Trustee's investigation is ongoing. Not a single penny of the costs incurred in connection with the investigation, however, comes at the expense of the customers, nor will they ever at any time in this proceeding. Rather, these expenses are advanced by SIPC, so that any customer monies recovered can be distributed to the same in accordance with SIPA.

37.    Given the unprecedented fraud perpetrated by Madoff, the issues involved are complex, the discovery is wide-ranging, and the litigation through BLMIS is hotly contested. All of this results in enormous effort by the Trustee and his Counsel for the benefit of the victims. During the Compensation Period, the Trustee, his Counsel, and Consultants have met

14

extraordinary challenges in their continuing efforts to pursue customer property, protect estate assets, and otherwise benefit the customers of BLMIS. The following discussion and the materials attached to this Application cover the major categories of services performed for which allowance of compensation is sought by B&H.

## IV. DETAILED DESCRIPTION OF SERVICES

38. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to the internal B&H matter numbers and task codes.

39. Matters 01 and 02 are the general matter numbers used by B&H and the Trustee, respectively. These matter numbers utilize individual task codes for specific categories of work to permit a more detailed analysis of the fees incurred. For specific litigations or other discrete matters to which a large number of hours are or will be billed, new matter numbers are opened and used, each of which are described in more detail herein.

40. Matter Numbers 03-26 (with the exception of Matter 05, which relates to customer claims) relate to litigation filed against various individuals, entities, and feeder funds. In each of those litigations, B&H attorneys perform the following tasks related to the individual actions: conduct legal research; draft internal memoranda; engage in internal meetings with B&H attorneys and the Trustee's Consultants regarding investigation and litigation strategy; draft and file pleadings, motions, and other related litigation documents; and engage in discussions with the counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during this Compensation Period.

## A. MATTER 01 – COUNSEL TO THE TRUSTEE

095879, 300108362

41.    This matter categorizes the time spent by B&H and encompasses the

below enumerated tasks.

### i.    **Trustee Investigation – Task Code 01**

42.    This category relates to time spent with respect to the investigation into

BLMIS, Madoff, and various assets.  During this Compensation Period, B&H attorneys:

- Initiated, participated in, and monitored over 271 pending and 87 potential international third-party proceedings and 195 domestic third-party proceedings involving Madoff and/or BLMIS.

- Continued the investigation of banks, feeder funds, auditors, insiders, Madoff friends and family members, former BLMIS employees, and all other Madoff-related parties.

- Continued the investigation of Madoff Securities International Limited ("MSIL").

- Coordinated efforts with the United States Attorney's Office for the Southern District of New York ("USAO"), Federal Bureau of Investigation ("FBI"), Financial Industry Regulatory Authority ("FINRA"), SEC, and many other local, federal, and international officials involved in the investigation of Madoff and BLMIS.

- Reviewed copies of records obtained by the FBI and SEC and other information from the USAO and securities regulators.

- Communicated with the Trustee, SIPC, Windels Marx, AlixPartners, FTI, and various other consultants regarding the IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Discussed and conferred with SIPC, Windels Marx, International Counsel, and various government entities regarding investigation and litigation strategy.

- Prepared avoidance actions against various targets seeking the return of customer property.

- Drafted and issued hundreds of inquiry letters and subpoenas to potentially related third parties concerning BLMIS litigation.

- Prepared requests for discovery and negotiated other discovery-related issues with adversaries.

16

- Organized and reviewed documents received in response to third party inquiries and subpoenas.

- Prepared for and conducted Rule 2004 examinations of various individuals and entities.

- Reviewed account information and statements of BLMIS IA customers.

- Researched various trust and estates issues relating to BLMIS claimants.

- Researched and evaluated consultants for potential engagement as experts for various aspects of litigation.

### ii.    Bankruptcy Court Litigation – Task Code 02

43.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding and the adversary proceedings filed against the Trustee.  During this Compensation Period, B&H attorneys:

- Prepared and revised appellate briefs submitted to the Second Circuit regarding the "net equity" definition, held internal discussions regarding the same, and analyzed opposition briefs.

- Prepared and revised pleadings relating to the "customer" definition, including the motion and supporting briefs filed on June 11, 2010 and the reply brief filed on September 20, 2010; analyzed over 180 oppositions received; and prepared for the hearing on the motion held on October 19, 2010.

- Drafted and filed various motions, pleadings, amended complaints, motions to dismiss, scheduling orders, pleadings, stipulations, and other documents submitted to the Bankruptcy Court in connection with all ongoing motion practice in the main bankruptcy proceeding and the avoidance actions.

- Prepared and filed Trustee reports and fee applications for the Trustee, B&H, and various International Counsel.

- Researched causes of action under the Bankruptcy Code and other bankruptcy-related legal issues that have been or will be brought by the Trustee.

- Developed case management procedures for avoidance actions.

- Prepared for filing foreign/special counsel retention applications.

### iii.    Feeder Funds – Task Code 03

44.     The Trustee has delegated teams of B&H attorneys to identify, investigate and monitor potential feeder funds in the U.S. and abroad and bring actions against such funds for the recovery of estate assets.  During this Compensation Period, in addition to the general investigation described above, relevant witnesses were deposed or interviewed.  B&H attorneys continued to issue Rule 2004 subpoenas relevant to the feeder funds, conducted an ongoing review of documents received in response to such third party subpoenas, and drafted pleadings relating to the feeder funds.  Many feeder funds are still under investigation and require extensive analysis as a result of their often complicated and opaque corporate structures.  Indeed, the Trustee described to the Court the "uniform front of silence" presented by the feeder funds that requires "digging in[to], finding out all of those things that went on for years and years." Fourth App. Hr'g Tr. 23.  Those against whom litigation has been brought have been assigned separate matter numbers, discussed more fully at ¶¶ 75-78, 81-83, 89-95, 98-110, *infra*.

### iv.     Asset Research and Sale – Task Code 04

45.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.  During this Compensation Period, B&H:

- Liquidated certain loan participations owned by BLMIS.

- Conferred with and assisted the Trustee in negotiating and resolving the BLMIS leases.

- Conferred and worked with Windels Marx regarding BLM Air Charter and other issues relating to airplane.

- Followed up activity with regard to the Surge, Inc. transaction, including the monitoring of market-making platform and trading activities.

### v.     Internal Meetings with Staff – Task Code 05

18

46.     This category relates to time spent by B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided the duplication of efforts.

### vi.     **Billing – Task Code 07**

47.     This category relates to time spent by B&H attorneys and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correct any errors in time entries, and write off certain time and expenses as agreed to by B&H.

### vii.     **Case Administration – Task Code 08**

48.     This category relates to time spent assisting the Trustee administer the case efficiently.  During this Compensation Period, B&H:

- Conducted conflict checks.

- Implemented and managed case-wide tracking tools for pleadings, subpoenas, demand letters, responses, and all other case-related documents.

- Created protocols relating to discovery, filings, and external communications.

- Implemented and managed work flows between B&H and Consultants.

- Oversaw administrative aspects of the retention of experts, other professionals, and vendors, and monitored their ongoing activities.

- Maintained case files.

- Calendared and docketed all hearings, return dates, and deadlines in main liquidation proceeding and all other litigations.

- Monitored and tracked dockets of related proceedings.

- Managed and monitored staffing needs.

### viii.     **Banks – Task Code 09**

19

49.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS and the various feeder funds that invested in BLMIS.  Time categorized by this task code relates to the investigations of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.

### ix.    Court Appearances – Task Code 10[6]

50.    This category relates to time spent by B&H attorneys appearing before the Bankruptcy Court and other courts, in addition to appearing before the District Court in support of the Bankruptcy Court's decisions on appeal.

### x.    Press Inquiries and Responses – Task Code 11

51.    This category relates to time spent by B&H attorneys assisting the Trustee respond to press inquiries, prepare and issue press releases, and prepare for and hold press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Document Review – Task Code 12

52.    This category relates to time spent by B&H reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Discovery - Depositions and Document Productions by the Trustee – Task Code 13

---

[6] Many attorneys bill their time for court appearances to Task Code 02 – Bankruptcy Court litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

53.    This category relates to time spent by B&H attorneys conducting depositions and preparing and responding to discovery requests issued in the ongoing litigations and by various third parties.  During this Compensation Period, B&H:

- Prepared, reviewed, finalized, and served subpoenas.

- Monitored subpoenas issued and documents produced in response, and followed up regarding deficient document productions.

- Processed and uploaded incoming document productions.

- Researched foreign jurisdiction discovery laws.

### xiii.    International – Task Code 14

54.    The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including England, Gibraltar, Austria, Canada, Bermuda, the British Virgin Islands, the Cayman Islands, the Bahamas, Ireland, France, Luxembourg, Switzerland, and Spain.  These investigations, which are comprised of a combination of voluntary requests for information and the use of the Trustee's subpoena power, have focused primarily on international feeder funds, banks, related financial services entities, and certain individuals.  This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery.  The investigation is made challenging by the broad array of anti-discovery laws, bank secrecy statutes, and other foreign legislation designed to limit discovery.  In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third party actions brought in Europe and the Caribbean.

### xiv.    Charities – Task Code 15

21

095879, 300108362

55.     This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, and corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts.

### xv.     Access – Luxembourg – Task Code 17

56.     This category relates to the monitorship of an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg, and conferences with SIPC staff regarding the same.

### xvi.     Task Codes No Longer In Use

57.     Customer Claims – Task Code 6 is no longer in use.  A separate matter number was opened for work related to customer claims on June 3, 2009, and B&H attorneys and paraprofessionals began to bill to matter number 05.  *See* ¶¶ 79-80, *infra*, for a discussion of this time.

58.     Pre-Litigation – Task Code 16 is no longer in use.  This category related to the strategic planning involved in responding to litigation brought by third parties against BLMIS targets.  B&H attorneys prepared pleadings, affidavits, and analyzed extensive case law in support of the Trustee's pleadings brought against the third parties.  These matters were subsequently assigned individual matter numbers and are discussed more extensively at ¶¶ 115-122, 127-129 herein.

## B.     MATTER 02 – TRUSTEE TIME

59.     This matter categorizes time spent by the Trustee and encompasses the below enumerated tasks.

### i.     Case Administration – Task Code 01

60.     This category relates to the wind-down of the Debtor's business and other administrative matters.  During this Compensation Period, the Trustee:

- Reviewed communications received by the Trustee, the BLMIS office, or the Claims Processing Center, and prepared the appropriate response or ensured follow-up.

- Maintained brokerage accounts and money management account, and purchased of Treasury bills.

- Retained additional consultants, expert witnesses, international counsel, and other advisors.

- Obtained SIPC administrative cash advances, communicated with AlixPartners concerning payment of bills submitted to the Trustee, reviewed and signed monthly SIPC-17 cash receipts and disbursement reports, reviewed monthly projected administrative budgets, and communicated with SIPC staff regarding the same.

- Reviewed monthly invoices of consultants and communicated with SIPC staff regarding the same.

- Communicated with SIPC financial and operations staff to ensure efficient administration of finances.

- Prepared and revised responses to inquiries of various government agencies regarding BLMIS and the wind-down of the estate, including the U.S. Department of Labor ("DOL"), Internal Revenue Service, SEC, and New York State Department of Tax & Finance.

- Communicated with B&H attorneys and AlixPartners regarding outstanding issues with vendors and negotiated and resolved outstanding estate obligations

- Filed a final annual report with the DOL after terminating the BLMIS sponsored 401(k) plan and entering into an agreement with Millennium Trust Company to serve as the individual retirement account ("IRA") custodian for any remaining account balances.

- Consulted with B&H and AlixPartners regarding the preparation of income tax returns for the estate.

    ii.     **Claims Review and Related Matters – Task Code 02**

23

61.    This category relates to customer claims.    During this Compensation Period, the Trustee:

- Reviewed in an ongoing manner the submitted customer claim forms and supplements thereto, and reviewed any additional related BLMIS account documentation.

- Communicated with SIPC staff, B&H attorneys, and AlixPartners regarding the customer claims review process, the customer claims database, the reconciliation of IA accounts, and other matters of interest in determining claims and issuing determination letters.

- Reviewed and revised determinations; communicated by phone, letter, and email with customers and their representatives regarding review, allowance, or denial of particular claims (e.g., including the *pro rata* distribution of funds recovered to date); reviewed proposed customer assignments and releases to the extent of claims to be satisfied; and, when necessary, communicated with the B&H claims team and referred certain claims for follow-up and response.

- Engaged in settlement negotiations with customers against whom the Trustee has preference claims, i.e. those customers who withdrew money from a BLMIS account ninety (90) days prior to the Filing Date.

### iii.    **Trustee Investigation – Task Code 03**

62.    This category relates to the Trustee's investigation into BLMIS, Madoff, and various assets.    During this Compensation Period, the Trustee:

- Discussed and conferenced both internally with B&H attorneys and with SIPC staff, Windels Marx, International Counsel, and various governmental entities regarding investigation and litigation strategy.

- Communicated with B&H attorneys, International Counsel, SIPC staff, Windels Marx, AlixPartners, and FTI regarding the IA accounts and records of the transactions, business investments, and ventures between the potential insiders and BLMIS, Madoff, and Madoff family members.

- Reviewed discovery received in response to issued subpoenas and from other third parties.

### iv.    **Banks and Feeder Funds – Task Code 04**

The Trustee has delegated teams of B&H attorneys to identify, investigate, and

monitor banks and feeder funds, and bring actions against such banks and feeder funds for the recovery of estate assets where possible. For further discussion of the feeder fund litigations, please see ¶¶ 75-78, 81-83, 89-95, 98-110, *infra*.

### v. Asset Search, Recovery and Sale – Task Code 06

63. This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate. During this Compensation Period, the Trustee:

- Reviewed claims and affidavits filed in connection with the settlement of various class actions involving securities owned by BLMIS in its market making and trading capacities, and conferenced with AlixPartners regarding the same.

- Discussed with B&H attorneys the sale or restructuring of certain loan participations owned by BLMIS and followed up on other loan participation and restructuring matters.

- Discussed with a broker the status of the securities remaining in the Trustee's account and sale possibilities.

### vi. Avoidance Actions – Task Code 07

64. As of September 30, 2010, the Trustee filed nineteen avoidance actions against feeder funds, Madoff friends and family members, and other Madoff-insiders for the return of customer property. For further discussion of these avoidance actions, please see ¶¶ 75-78, 81-83, 89-95, 98-110, *infra*.[7]

65. This category relates to the investigation and litigation strategy sessions engaged in by the Trustee with B&H attorneys, International Counsel, SIPC, AlixPartners, and FTI, communications with counsel for the defendants to the various avoidance actions,

---

[7] Windels Marx filed three of the nineteen avoidance actions on behalf of the Trustee: *Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-3483; *Picard v. Madoff Energy Holdings LLC, et al.*, Adv. Pro. No. 10-3484; *Picard v. Madoff Family LLC*, Adv. Pro. No. 10-3485.

25

negotiations of potential settlement agreement, and the review of documents related to the various avoidance actions and potential settlements.

### vii.    Bankruptcy Court Litigation and Related Matters – Task Code 08

66.    This category relates the review and filing of various motions and pleadings, and the initiation and prosecution of adversary proceedings in the Bankruptcy Court. During this Compensation Period, the Trustee:

- Reviewed amended complaints, motions, pleadings, proposed orders, and other documents to be submitted to the Bankruptcy Court in connection with all avoidance actions.

- Reviewed the objections filed in response to the Trustee's determination of claims.

- Prepared and revised the Trustee's briefing regarding the "customer" issue, reviewed briefs filed by all parties and interested parties, and discussed with Counsel the briefs filed.

- Reviewed appellate briefs filed by the Trustee and all parties regarding net equity and discussed with Counsel the briefs filed.

- Communicated regularly with the SIPC staff, B&H attorneys, and counsel for various customers who filed actions regarding customer claims, the "net equity" definition, and other issues.

- Monitored the Chapter 11 case of BLM Air Charter and communicated regularly with counsel for BLM Air Charter.

### viii.    Non-Bankruptcy Court Litigation – Task Code 09

67.    B&H attorneys monitor all third-party actions, domestic and international, that may be related to BLMIS or Madoff.  This category relates to the Trustee's review of information related to such matters, and correspondence with the teams regarding their ongoing investigations and findings and the status of such third party litigations.

095879, 300108362

68.     The Trustee's time in this category also includes the review and execution of affidavits for foreign litigation, including those in Gibraltar, the British Virgin Islands, and the Cayman Islands.

### ix.     Court Appearance – Task Code 10

69.     This category relates to time spent by the Trustee making court appearances as necessary.

### x.     Internal Office Meetings with Staff and Out of Office Meetings – Task Codes 11 and 12

70.     This category relates to internal strategy meetings and training sessions between the Trustee and his professionals, as well as additional out-of-office meetings between the Trustee and other parties.

### xi.     USAO and SEC/FINRA - Task Codes 13 and 14

71.     This category relates to communications with the various government agencies, such as the USAO, SEC, FINRA and FBI, involved in the investigation of BLMIS, Madoff, and various assets.  During this Compensation Period, the Trustee:

- Coordinated efforts with the USAO, SEC, FINRA, FBI, and other local, federal, and international officials involved in this investigation.

- Obtained copies of records seized by the FBI and SEC, and other information from the USAO, FINRA, and other securities regulators.

- Engaged in telephone conferences, correspondence, and meetings with representatives of the USAO.

### xii.     Trustee Report/Fee Application and Related Matters – Task Codes 05 and 16

72.     In addition to the time spent preparing this Application, this category relates to time spent by the Trustee reviewing his and B&H's monthly statements to correct any errors in time entries, write off certain time and expenses as agreed to by the Trustee for the

27

benefit of SIPC, and respond to certain adjustments requested by SIPC after its review of each monthly fee statement. Time spent by the Trustee in preparing his interim reports, which are required every six (6) months and summarize all activities conducted by the Trustee and all his Counsel within that reporting period, are also billed to this task code.

### xiii.    **Press Inquiries and Responses – Task Code 17**

73.      This category relates to time spent by the Trustee responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences regarding BLMIS, Madoff, customer claims, and the recovery of funds.

### xiv.    **Luxembourg Litigation – Task Code 18**

74.      This category relates to time spent by the Trustee in monitoring an action brought in Luxembourg against Access Group, UBS, and the directors of LuxAlpha, a BLMIS feeder fund based in Luxembourg.

## C.    **MATTER 03 – CHAIS[8]**

75.      This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Stanley Chais, Pamela Chais, and a number of related entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.

76.      In addition to the tasks outlined above in ¶ 40, during this Compensation period, B&H attorneys reviewed and analyzed documents produced by Chais in discovery and

---

[8] As with Matter 01, the remainder of the B&H matter numbers described herein are used by B&H professionals. The Trustee only utilizes Matter 02.

095879, 300108362

took depositions of related third parties.  The Court heard the Chais Defendants' motions to dismiss on May 5, 2010 and reserved decision.

**D.      MATTER 04 – MERKIN**

77.      This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Gabriel Capital, L.P., Ariel Fund, Ltd., Ascot Partners, L.P., Gabriel Capital Corporation (the "Merkin Funds"), and J. Ezra Merkin (collectively, the "Merkin Defendants") seeking the return of more then $557 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants.  With leave of the Court, the Trustee filed a second amended complaint on December 23, 2009 asserting Merkin's personal liability for obligations of the partnerships.

78.      In addition to the tasks outlined in ¶ 40, during this Compensation period, B&H attorneys conducted depositions and interviews of relevant witnesses and monitored arbitrations and other actions pending against the Merkin Defendants.  B&H attorneys stipulated to an extension of the Merkin Defendants' time to move, answer, or otherwise respond to the second amended complaint up to and including December 17, 2010.  A decision was recently issued on the Merkin Defendants' motion to dismiss.

**E.      MATTER 05 – CUSTOMER CLAIMS**

79.      This matter categorizes time spent by B&H regarding customer claims. B&H attorneys expended a considerable amount of time in this category, as significant progress was made during the Compensation Period with respect to Customer Claims.

80.      During this Compensation Period, B&H attorneys:

- Reviewed customer claim forms and supplements thereto and reviewed any additional related BLMIS IA account documentation.

- Assisted the Trustee in making determinations regarding customer claims, prepared the Trustee's determination letters and the assignment and release forms for execution by customers.

- Communicated regularly by phone, letter, and email with customers or their representatives regarding claims procedure and process, status of claims review, and other matters of concern to customers.

- Reviewed objections to the Trustee's determination of claims and communicated regularly with the Trustee, SIPC, and counsel for the parties who filed the objections. As of September 30, 2010, approximately 1,776 objections have been filed with the Bankruptcy Court.

- Continued the Trustee's Hardship Program; reviewed Hardship Applications; and communicated regularly with the Trustee, SIPC, and AlixPartners regarding the review and determination of Hardship applicants.

- Reviewed accounts of customers who had both "Net Winner" and "Net Loser" accounts and communicated with such customers or their representatives regarding possible settlements related to those accounts.

- Communicated regularly with the Trustee, SIPC, and AlixPartners regarding the customer claims review process, the customer claims database, reconciliation of IA accounts, and other matters of interest in determining claims.

- Reviewed schedules of information prepared by AlixPartners and prepared additional reports for the Trustee and SIPC.

- Maintained and updated the Trustee website to provide public access to case filings and important case information.

- Continued the training of B&H attorneys and paraprofessionals to assist the Trustee in reviewing and determining customer claims.

**F.    MATTER 06 – VIZCAYA**

81.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Vizcaya Partners Limited ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150,000,000 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act,

30

and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of $30 million as a fraudulent transfer. The Trustee filed an action against these additional defendants in Gibraltar Supreme Court for an injunction or freezing order, disclosure, and other relief.

82.     In addition to the tasks outlined in ¶ 40, during this Compensation Period, the Trustee and Bank Safra engaged in discovery. On June 1, 2010, Chief Justice Dudley of the Court of Appeal of Gibraltar granted an order by which $1 million would be released from the monies paid into the court so that Vizcaya and Zeus could pay legal fees, expenses, and administrative costs, and have a balance in favor of future costs. Chief Justice Dudley granted leave to appeal his order but refused to stay the release of the funds. On June 2, 2010, the Trustee's Gibraltar counsel, Attias & Levy, filed a notice of appeal of the order. On June 28, 2009, Judge Lifland requested by letter that the Gibraltar court turn over to the Bankruptcy Court all funds under the Gibraltar court's control—some $75 million frozen in various accounts at Bank Safra or in the Gibraltar court—that were derived from the transfer from BLMIS to Bank Safra for the benefit of Vizcaya. After a hearing on September 7, 2010, Justice Dudley's order releasing the funds was vacated on September 17, 2010.

83.     In this Court, Vizcaya, Siam, Asphalia, and Zeus failed to appear or answer the Trustee's amended complaint and, accordingly, B&H drafted and prepared a motion for default judgment against those defendants. The motion for default was granted by this Court on August 3, 2010. Following the entry of default, Judge Lifland sent a second letter dated

31

August 23, 2010 requesting the Gibraltar court's assistance in enforcing the default judgment and/or turning over the relevant funds held in Gibraltar. These requests remain pending. Zeus approached the Trustee to vacate the default as to Zeus and proceed with the litigation in New York. The parties will submit a stipulation for the Court's approval.

## G.    MATTER 07 – MADOFF FAMILY

84.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, and Shana D. Madoff (collectively, the "Family Defendants") seeking the return of nearly $200 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.

85.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys reviewed and analyzed the briefing submitted on the Family Defendants' motions to dismiss the complaint and drafted responsive briefing. A hearing on the motions was held on October 6, 2010 and the Court reserved decision.

86.    This matter also relates to the ongoing investigation of other Madoff family members and Madoff family entities. As a result of this investigation, Windels Marx has commenced three adversary proceedings – all relating to Madoff family members and Madoff family entities – against Madoff Technologies, Madoff Energy Holdings, and Madoff Family LLC. A pre-trial conference in these proceedings is scheduled to be held on November 30, 2010.

## H.    MATTER 08 – NORMAN LEVY

87.    In January 2010, the Trustee reached an agreement (the "Levy Settlement Agreement") with Jeanne Levy-Church and Francis N. Levy (collectively, the "Levys") to settle

095879, 300108362

the Trustee's claims against them regarding certain accounts held by the Levys and their family members in connection with the liquidation of BLMIS.  Pursuant to the Levy Settlement Agreement, the Levys agreed to pay $220 million to settle potential litigation claims by the Trustee.  This Court approved the Levy Settlement Agreement by order dated February 18, 2010.

88.    During this Compensation Period, B&H attorneys began investigating account holders associated with the Levys for potential avoidance liability.

## I.    MATTER 09 – FAIRFIELD GREENWICH

89.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Fairfield Sentry Limited, Greenwich Sentry Limited, L.P., and Greenwich Sentry Partners, L.P. (collectively, the "Fairfield Defendants") seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Defendants.

90.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys prepared and filed an amended complaint which added as defendants numerous business entities and individuals active in the management of Fairfield Greenwich, as well as various hedge funds under the Fairfield Greenwich Group's control.  The amended complaint also seeks damages under New York law.  The return date for the amended complaint is January 25, 2011 and a pre-trial conference is scheduled to be held on February 8, 2011.  B&H attorneys also continued to monitor the Chapter 15 proceeding that was filed by Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda.

## J.    MATTER 10 – HARLEY

33

91.     This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley.  Harley is in liquidation in the Cayman Islands.

92.     In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys prepared pleadings against Harley and continued the investigation of the same.

**K.     MATTER 11 – COHMAD SECURITIES CORPORATION**

93.     This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), the principals, certain employees of Cohmad, and their family members who held BLMIS IA accounts (collectively, the "Cohmad Defendants") seeking the return of over $132 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.

94.     In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys filed responsive briefing to the Cohmad Defendants' motions to dismiss the complaint.  A hearing on such motions has been adjourned numerous times and is now scheduled to be held in January 13, 2011.

34

95.    B&H attorneys continued their review of IA accounts associated with the Cohmad Defendants and other related parties, as well as their ongoing review of documents concerning Cohmad and the Cohmad Defendants.

## L.    MATTER 12 – PICOWER

96.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Jeffry M. Picower and Barbara Picower, both individually and as trustees for various foundations, and other various Picower entities (collectively, the "Picower Defendants") seeking the return of approximately $7.2 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.

97.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys and counsel for defendants engaged in settlement discussions.  A hearing on the motion to dismiss the complaint was adjourned until February 1, 2011 while B&H attorneys and counsel for the Picower Defendants continue these discussions.

## M.    MATTER 13 – KINGATE

98.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (collectively, the "Kingate Defendants") seeking the return of $395 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kingate Defendants.  A second amended complaint was filed on July 21, 2009, which increased the demand to $874 million.

35

99.    The Kingate Defendants are currently in liquidation in the British Virgin Islands.

100.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against the Kingate Defendants.  In addition, on the basis of a disclosure order granted by the United Kingdom Court, the Trustee and B&H attorneys sought discovery in the United Kingdom and Europe relating to the Kingate Defendants.  B&H attorneys continued their review of documents received in response to third party inquiries and subpoenas.

101.    The Kingate Defendants' time to answer or otherwise respond to the second amended complaint has been adjourned several times.  The deadline by which the Kingate Defendants must respond is December 6, 2010.  A pretrial conference is scheduled to be held on December 21, 2010.

**N.    MATTER 14 – RESERVED**

**O.    MATTER 15 – HERALD**

102.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Herald Fund SPC ("Herald") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively, "HSBC") seeking the return of $578 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Herald.

103.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys continued to monitor third party actions filed against Herald in Europe, particularly in Luxembourg and Austria.  With regard to the Trustee's complaint against Herald,

Herald's motion to dismiss the second amended complaint is fully briefed and scheduled to be heard on February 4, 2011.

## P.    MATTER 16 – ALPHA PRIME

104.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Alpha Prime Fund Limited ("Alpha Prime") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively, the "Alpha Prime Defendants") seeking the return of $86 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Alpha Prime Defendants.

105.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys finalized their review and analysis of documents that provide further support for the complaint filed against Alpha Prime.  B&H attorneys also engaged in discussions with Alpha Prime regarding the motion to vacate the entry of default, which had been entered by the Court on September 1, 2009.  The Court granted the motion to vacate on September 27, 2010.  The second amended complaint will be filed on or before December 6, 2010 and a pretrial conference is scheduled to be held on December 21, 2010.

## Q.    MATTER 17 – PRIMEO FUND

106.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Primeo Fund ("Primeo") and HSBC Bank PLC and HSBC Securities Services (Luxembourg) S.A. (collectively, "HSBC") seeking the return of $145 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Primeo and HSBC.

107.    Primeo defaulted and is in liquidation in the Cayman Islands.

108.    In addition to the tasks outlined in ¶ 40, during this Compensation period, B&H attorneys drafted affidavits in support of a motion for leave to file an avoidance action against Primeo in the Cayman Islands, and continued monitoring litigation pending against Primeo in the United Kingdom.  A pretrial conference is scheduled to be held on January 12, 2011.

## R.    MATTER 18 – THYBO

109.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Thybo Asset Management Limited, Thybo Global Fund Limited, Thybo Return Fund Limited, and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $63 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  The Trustee filed an amended complaint objecting to Thybo Stable Fund's customer claim that seeks $217,163,851.

110.    As with each of the matters in litigation, B&H attorneys conducted the tasks outlined in ¶ 40 during this Compensation Period.  B&H attorneys continued the investigation of Thybo and reviewed documents relating to the same.  The time by which the Thybo Defendants may move, answer, or otherwise respond to the amended complaint was extended up to and including December 3, 2010.  A pretrial conference is scheduled to be held on December 14, 2010.

095879, 300108362

S.      **MATTER 19 – RUTH MADOFF**

111.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of Mrs. Madoff's claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Mrs. Madoff.

112.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys engaged in settlement discussions with counsel for Mrs. Madoff. B&H attorneys also agreed to extend Mrs. Madoff's time to answer or otherwise respond to the Trustee's complaint to December 17, 2010. A pretrial conference is scheduled to be held on December 21, 2010.

T.      **MATTER 20 –CONFIDENTIAL**

113.    This matter is currently under investigation. Time relating to this matter is confidential as attorney work-product.

U.      **MATTER 21 – AVOIDANCE ACTION INVESTIGATION/LITIGATION**

114.    This matter categorizes time spent investigating the fictitious profits withdrawn from BLMIS customer accounts, drafting of avoidance action complaints, and researching various issues relating to such avoidance actions.

V.      **MATTER 22 – FOX & MARSHALL**

115.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against Adele Fox ("Fox") and Susanne Marshall ("Marshall"), individually, and to the extent they purport to represent a class of those similarly

situated (collectively, the "Florida Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "Fox Application").

116.    In February 2010, BLMIS customers Fox and Marshall commenced separate putative class actions (the "Florida Actions") against the Estate of Jeffry M. Picower and related entities (the "Picower Defendants") in the United States District Court for the Southern District of Florida (the "Florida District Court").    The Florida Plaintiffs alleged damages based on conspiracy, conversion, unjust enrichment, and violations of the Florida RICO statute and their complaints, substantially identical, relied heavily on the allegations in the complaint filed by the Trustee in this Court against the Picower Defendants in May 2009.

117.    On March 31, 2010, the Trustee filed the Fox Application in this Court, which the Florida Plaintiffs opposed, and on April 27, 2010, a hearing was held on the same. This Court granted the Trustee's Fox Application, finding that the Florida Actions violate the automatic stay provisions of section 362 of the Bankruptcy Code and hence, are void *ab initio*, and preliminarily enjoined the Florida Plaintiffs and related parties from proceeding with the Florida Actions or commencing any other action against the Picower Defendants.    A Notice of Appeal to the District Court was filed by the Florida Plaintiffs on May 12, 2010.    The Florida Plaintiffs subsequently filed separate but substantially similar Designations of Contents to be included in the record and issues on appeal (the "Designations") and the Trustee moved to strike certain items and one issue from these Designations (the "Motion to Strike").    On August 3, 2010, the Court held a hearing on the Trustee's Motion to Strike and granted the Trustee's requested relief.    The Florida Plaintiffs have each filed an appellate brief with the District Court.

The District Court consolidated the Florida Plaintiffs' appeals of the Fox Application and the Motion to Strike.

118.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys prepared and filed numerous pleadings and related briefings in connection with this matter, including the Trustee's reply to the opposition of the Trustee's Motion to Strike, which was filed on July 23, 2010, and prepared for the hearings discussed above.  A pre-trial conference is scheduled to be held on December 29, 2010.

## W.    MATTER 23 – CANAVAN

119.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against three BLMIS customers, individually and on behalf of a similarly situated prospective class of customers (the "New Jersey Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "New Jersey Application").

120.    On February 24, 2010, the New Jersey Plaintiffs filed a putative class action (the "New Jersey Action") in the United States District Court for the District of New Jersey ("New Jersey District Court") against SIPC's Board of Directors and CEO/President (the "SIPC Defendants").  The New Jersey Plaintiffs alleged damages based on bad faith failure to pay insurance claims, fraud, violation of the New Jersey Consumer Fraud Act, and promissory estoppel.

121.    On April 9, 2010, the Trustee filed the New Jersey Application in this Court, which the New Jersey Plaintiffs opposed.  On April 23, 2010, the SIPC Defendants moved to transfer the New Jersey Action from the New Jersey District Court to the District Court, for referral to this Court (the "Transfer Motion").  In an order dated July 6, 2010, the

41

Transfer Motion was granted by the New Jersey District Court. The District Court subsequently removed the New Jersey Action to this Court pursuant to 28 U.S.C. § 157(a).

122.    In addition to the tasks outlined in ¶ 40, during this Compensation Period, B&H attorneys prepared and filed the Reply Memorandum in Further Support of the New Jersey Application and In Opposition to Defendants' Cross-Motion to Dismiss on June 16, 2010, and continued to prepare for the hearing on the New Jersey Application in this Court, which is scheduled to be held on December 29, 2010.

## X.    MATTER 24 – ROBERT LURIA

123.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Robert Luria and Robert Luria Partners ("Robert Luria Defendants") seeking the return of approximately eighty thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Robert Luria and Robert Luria Partners.

124.    During this Compensation Period, B&H attorneys reviewed and analyzed the answer and counterclaims asserted by the Robert Luria Defendants. The Trustee has moved to dismiss the counterclaims. A pretrial conference is scheduled to be held on March 3, 2011.

## Y.    MATTER 25 – AMY LURIA

125.    This matter categorizes time spent by B&H attorneys pursuing the avoidance action against Amy Luria and Amy Luria Partners LLC ("Amy Luria Defendants") seeking the return of approximately ninety-five thousand dollars under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for turnover,

42

accounting, preferences, fraudulent conveyances, disallowance of their claims against the estate, imposition of a constructive trust, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Amy Luria and Amy Luria Partners LLC.

126.    During this Compensation Period, B&H attorneys reviewed and analyzed the answer and counterclaims asserted by the Amy Luria Defendants. The Trustee has moved to dismiss the counterclaims. A pretrial conference is scheduled to be held on March 3, 2011.

## Z.    MATTER 26 – RICHARD STAHL

127.    This matter categorizes time spent by B&H attorneys on the adversary proceeding commenced by the Trustee against Richard Stahl ("Stahl"), Mark Abend ("Abend"), and ten other plaintiffs that purport to be similarly situated (collectively, the "Stahl Plaintiffs"), and the Trustee's related Application for a Temporary Restraining Order, Enforcement of the Automatic Stay and a Preliminary Injunction (the "Stahl Application").

128.    In June 2009, Richard Stahl and Reed Abend, former traders for BLMIS' market-making business, commenced separate lawsuits (the "Madoff Actions") against Mark and Andrew Madoff in the New York City Supreme Court. Stahl and Abend alleged they were owed nearly $2 million combined in deferred compensation from Mark and Andrew Madoff. Similarly, the Stahl Plaintiffs alleged they were owed damages by Peter Madoff, Mark Madoff, Andrew Madoff, and Shana Madoff (the "Madoff Defendants"). As is true of the Trustee's claims against the Madoff Defendants, all of the claims made in the Madoff Actions are based on the Madoff Defendants' conduct in their roles at BLMIS. The Stahl Plaintiffs do not allege any other, independent conduct by the Madoff Defendants.

129.    In addition to the tasks outlined in ¶ 40, during this Compensation period, B&H attorneys prepared responsive briefing in support of the Stahl Application, including a

43

reply memorandum of law filed on August 17, 2010.  A pre-trial conference and hearing on the

Stahl Application are scheduled to be held on January 27, 2011.

## V.    COMPENSATION REQUESTED

130.    This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements of Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the

Compensation Order.  Pursuant to the Local Guidelines, the certification of David J. Sheehan,

Esq., regarding compliance with the same is attached hereto as Exhibit A.

131.    The Trustee expended 922.10 hours in the rendition of professional

services and B&H expended 104,849.80 hours in the rendition of professional and

paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in

an average hourly rate of $825 for Trustee and $438.37 for B&H for fees incurred.

132.    Prior to filing this Application, in accordance with the Compensation

Order, the Trustee and B&H provided to SIPC: (i) monthly fee statements setting forth the

Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation

Period beginning June 1, 2010 through September 30, 2010; and (ii) a draft of this Application.

In connection with four monthly statements each submitted by the Trustee and B&H and this

Application, the Trustee voluntarily adjusted his fees by writing off $132,742.50 (in addition to

the 10% public interest discount, as discussed below).  B&H voluntarily adjusted its fees by

writing off $422,223.75 (in addition to the 10% public interest discount, as discussed below) and

wrote off expenses customarily charged to other clients in the amount of $308,328.27.

133.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10%

public interest discount from their standard rates.  This discount has resulted in an additional

voluntary reduction during the Compensation Period of $76,073.25 for the Trustee and $4,280,275.15 for B&H. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in Chapter 11 cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

134.    Pursuant to the Compensation Order, on July 20, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2010 through June 30, 2010 (the "June Fee Statements"). The Trustee's June Fee Statement reflected fees of $190,005.75 and expenses of $893.41. SIPC's staff made certain adjustments and suggestions to the B&H June Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H June Fee Statement reflected fees of $9,483,369.30 and expenses of $183,498.80. Accordingly, SIPC advanced $161,504.88 for services rendered by the Trustee, $8,060,863.91 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $893.41 and $183,498.80 for expenses incurred by the Trustee and B&H, respectively.

135.    Pursuant to the Compensation Order, on August 20, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2010 through July 31, 2010 (the "July Fee Statements"). The Trustee's July Fee Statement reflected fees of $167,359.50 and expenses of $61.00. SIPC's staff made certain adjustments and suggestions to the B&H July Fee Statement, which were adopted by the Trustee and B&H. After such adjustments, the B&H July Fee Statement reflected fees of $9,059,448.15 and expenses of $284,362.20. Accordingly, SIPC advanced $142,255.57 for services rendered by the Trustee and $7,700,530.93 for services rendered by B&H, after

45

subtracting the Court-ordered 15% holdback, and $61.00 and $284,362.20 for expenses incurred by the Trustee and B&H, respectively.

136.    Pursuant to the Compensation Order, on September 20, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2010 through August 31, 2010 (the "August Fee Statements").  The Trustee's August Fee Statement reflected fees of $154,885.50 and no expenses.  SIPC's staff made certain adjustments and suggestions to the B&H August Fee Statement, which were adopted by the Trustee and B&H.  After such adjustments, the B&H August Fee Statement reflected fees of $10,164,079.80 and expenses of $200,865.36. Accordingly, SIPC advanced $131,652.67 for services rendered by the Trustee, $8,639,467.83 for services rendered by B&H, after subtracting the Court-ordered 15% holdback, and $200,865.36 for expenses incurred by B&H.

137.    Pursuant to the Compensation Order, on October 15, 2010, the Trustee and B&H provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2010 through September 30, 2010 (the "September Fee Statements").  SIPC's staff made certain adjustments and suggestions to the Trustee's September Fee Statement, which were adopted by the Trustee.  After such adjustments, the Trustee's September Fee Statement reflected fees of $172,408.50 and no expenses.  SIPC's staff made certain adjustments and suggestions to the B&H September Fee Statement, which were adopted by the Trustee and B&H.  After such adjustments, the B&H September Fee Statement reflected fees of $9,815,579.00 and expenses of $182,605.98.  Accordingly, SIPC advanced $146,547.22 for services rendered by the Trustee, and $8,343,242.24 for services rendered by

095879, 300108362

B&H, after subtracting the Court-ordered 15% holdback, and $182,605.98 for expenses incurred by B&H.

138.    Exhibit B annexed hereto is a summary by task code of total hours expended and total fees for services rendered by the Trustee during the Compensation Period.

139.    Exhibit C annexed hereto provides a schedule of the Trustee's total expenses incurred during the Compensation Period for which reimbursement is requested. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients.

140.    Exhibit D annexed hereto provides a schedule of B&H professionals and paraprofessionals who have provided services for the Debtor during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount. The 10% discount ($4,280,275.15, as described above) is taken off the total cumulative amount billed, as reflected on Exhibit D.

141.    Exhibit E annexed hereto is a summary of services performed by B&H during the Compensation Period organized by B&H task code and matter number.

142.    Exhibit F annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H. The requested expenses are customarily charged to and paid by B&H's bankruptcy and non-bankruptcy clients. B&H has not charged for a number of categories of expenses regularly charged to and paid by B&H's clients, including certain inter-office travel and related expenses (lodging, meals, airfare and other transportation). These expenses amount to a voluntary reduction of $257,471.00.

47

143.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

144.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    <u>RELEASE OF THE HOLDBACK</u>

145.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and B&H [ECF Nos. 126, 1078].  Pursuant to the Compensation Order, payment of a percentage of the approved compensation—initially twenty percent (20%) and subsequently reduced to fifteen percent (15%)—is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

146.    To date, the amount of the Holdback for the Trustee's and B&H's fees are $532,843.00 and $19,849,437.95, respectively.  As the Trustee will have determined by December 14, 2010 virtually every customer claim submitted to him, SIPC has consented to the release of $100,000 to the Trustee and $3,400,000 to B&H from the Holdback, reducing the Holdback to $432,843.00 and $16,449,437.95, respectively, after this Application.

147.    SIPC's recommendation that will be filed in support of the Application will indicate its consent to the release of these amounts from the Holdback.

48

## VII.   THE REQUEST FOR INTERIM
## COMPENSATION SHOULD BE GRANTED

148.   Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

149.   To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H (*see* SIPA § 78fff-3(b)(2)).

150.   As previously reported by the Trustee in the Fourth Interim Report, based on the allocation process set forth in SIPA, the Trustee has determined that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses.  That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully.  The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.  Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

095879, 300108362

151.    Therefore, with respect to this Application, the Trustee and B&H request that consistent with section 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 14, 2010.

152.    The Trustee and B&H submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VIII.    CONCLUSION

153.    The Trustee and B&H respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $684,659.25 (of which $581,960.34 is to be paid currently and 15%, or $102,698.91, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee during the Compensation Period, and $954.41 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee in connection with the rendition of such services; (ii) allowing and awarding $38,522,476.35 (of which $32,744,104.91 is to be paid currently and 15%, or $5,778,371.44, is to be deferred through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by B&H during the Compensation Period, and $851,332.34 as reimbursement of the actual and necessary costs and expenses incurred by B&H in connection with the rendition of such services; (iii)

50

releasing $100,000.00 to the Trustee and $3,400,000.00 to B&H from the Holdback; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 19, 2010

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/ *David J. Sheehan*
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, NY  10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      Irving H. Picard
      Email: ipicard@bakerlaw.com
      David J. Sheehan
      Email: dsheehan@bakerlaw.com
      Seanna R. Brown
      Email: sbrown@bakerlaw.com
      Jacqlyn R. Rovine
      Email: jrovine@bakerlaw.com

      *Attorneys for Irving H. Picard, Esq. Trustee*
      *for the Substantively Consolidated SIPA*
      *Liquidation of Bernard L. Madoff*
      *Investment Securities LLC And Bernard L.*
      *Madoff*

095879, 300108362