# EXHIBIT A
## (Litigation Agreement)

300130502

Dated _____ 2010


### (1)  MADOFF SECURITIES INTERNATIONAL LIMITED (IN LIQUIDATION)

### AND

### (2)  BERNARD L. MADOFF INVESTMENT SECURITIES LLC (IN SIPA LIQUIDATION)


## AGREEMENT IN RELATION TO CLAIMS AGAINST THE DEFENDANTS SET OUT IN SCHEDULE 2 OF THIS AGREEMENT

## Table of Contents

Page

| | | |
|---|---|---|
| 1. | DEFINITIONS | 2 |
| 2. | MSIL UK CREDITORS | 4 |
| 3. | BLMIS AND MSIL CREDITOR CLAIMS | 5 |
| 4. | CONDUCT OF CLAIMS | 5 |
| 5. | COSTS AND ADVERSE COSTS | 6 |
| 6. | PROCEEDS | 7 |
| 7. | DISPUTES | 7 |
| 9. | CONDUCT OF MSIL LIQUIDATION | 8 |
| 9. | TERMINATION | 8 |
| 10. | ASSIGNMENT | 9 |
| 11. | NOTICES | 10 |
| 12. | ENTIRE AGREEMENT | 11 |
| 13. | GENERAL | 11 |
| 14. | GOVERNING LAW | 12 |

SCHEDULE 1 - MSIL UK CREDITORS .................................................................. 13

SCHEDULE 2 - THE DEFENDANTS ...................................................................... 18

300132307

**THIS AGREEMENT** is dated as of [ X] November 2010

**WHEREAS**, on 15 December, 2008, Mr. Irving H. Picard was appointed the Trustee for the liquidation of the estate of Bernard L. Madoff Investment Securities, LLC. ("**BLMIS**"), a New York limited liability company, following an application to the United States District Court for the Southern District of New York by the Securities Investor Protection Corporation ("**SIPC**");

**WHEREAS**, on 19 December 2008, Mark Richard Byers, Andrew Lawrence Hosking and Stephen John Akers were appointed joint provisional liquidators of Madoff Securities International Limited, a company incorporated in England and Wales ("**MSIL**") by the High Court of Justice, Chancery Division Companies Court (the "**Companies Court**") and by  following the making of a winding up order on 9 December 2009 were appointed as Liquidators of MSIL by the Secretary of State (the "**Liquidators**");

**WHEREAS**, on 21 May 2009, the Trustee and the Liquidators (collectively, the "**Parties**"),  entered into a Cross-Border Insolvency Protocol for the purpose of establishing a framework for cooperation between, and coordination of, the liquidation proceedings of BLMIS and MSIL respectively (the "**Protocol**");

**WHEREAS**, on 21 May 2009 the Parties entered into an Information Protocol ("**Information Protocol**") for the exchange of information between the Parties in relation to BLMIS and MSIL;

**WHEREAS**, ON 21 May 2009 the Parties and their respective Counsel entered into a Common Interest Privilege Agreement (the "**Common Interest Privilege Agreement**") to regulate the control of legally privileged information and to protect such rights of privilege in the United States and in the United Kingdom;

**WHEREAS,** on or about June 9, 2009, the Cross-Border Insolvency Protocol and the Information Protocol and the Common Interest Privilege Agreement (collectively the "**Protocols**") were approved by Judge Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York and remain in force as of the date of this Agreement;

**WHEREAS**, on or around November [ ], 2010, the Parties entered into agreements (the "Retainer") under which they each agreed to instruct the Firm in respect of the Claims, each of which are defined below;

**WHEREAS,** the Parties now propose to enter into this Agreement for the purpose of jointly pursuing certain Claims against certain Defendants, as defined below, for the purpose of recovering assets and value for the MSIL and BLMIS estates and to regulate the conduct of the litigation and not for any wider purpose;

**WHEREAS**, the Parties each have fiduciary duties in their respective roles.

**THE PARTIES HEREBY AGREE AS FOLLOWS:**

1.    **DEFINITIONS**

1.1    In this Agreement (unless the context otherwise requires) the following words and expressions shall have the following meanings:

"**Act**" means the Insolvency Act 1986;

"**All Claims**" means all of the Claims of the Parties which are being conducted by the Firm on behalf of either or both of the Parties;

"**BLMIS Claims**" means the claims of the Trustee of BLMIS as a creditor in the liquidation of MSIL;

"**Claim**" means a claim against any of the Defendants in respect of which a Party has instructed the Firm to make a claim and "Claims" shall be construed accordingly;

"**Conclusion of a Case**" means that a Claim has been settled or decided upon at trial and all costs assessments have been completed and any appeals appropriately disposed of by judgment or compromise;

"**Conclusion of all Cases**" means that all of the Claims have been settled, abandoned or decided upon at trial and all costs assessments have been completed and any appeals appropriately disposed of by judgment or compromise;

"**Costs**" means the total legal costs and disbursements (including but not limited to Counsels' fees and all Interim Costs) of the Firm, which the Firm has billed or intends to bill in relation to advising the Parties in relation to all and any of the Claims, to be assessed if not agreed;

"**Defendants**" means any of the persons listed in Schedule 2 together with any other person whom the Parties agree should be Defendants on the advice of the Firm;

"**Firm**" means a firm of English solicitors to be instructed jointly by the Liquidators and the Trustee of BLMIS to prosecute the claims ;

"**Interim Costs**" means costs, disbursements (including Counsels' Fees) and expenses, which the Firm have billed or intends to bill in relation to its conduct of a Claim as it proceeds;

"**MSIL Legal Advisers**" means Dundas & Wilson LLP or such other firm as the Liquidators select;

"**MSIL UK Creditors**" means the bona fide creditors of MSIL who are based in the United Kingdom and who are listed in Schedule 1 of this Agreement;

"**Rules**" means the Insolvency Rules 1986;

"**Sanction**" means the sanction of the Companies Court pursuant to the provisions of Section 167 and Schedule 4 of the Act to the commencement of proceedings in respect of the Claims, the payment of the UK Creditor Amounts in full (after acceptance and rejection of proofs of debt), the compromise of the employee claims and the subordination of the BLMIS Claim or, where the context requires, sanction of the relevant New York bankruptcy court in respect of BLMIS

"**UK Creditor Amounts**" means the amounts (other than the BLMIS Claim) that are listed against the name of each MSIL UK Creditor in Schedule 1 and which are owed by MSIL to each of the MSIL UK Creditors subject in each case to such amounts being proved to the satisfaction of the Liquidators after proper deductions for set-off or counterclaims in accordance with Part 4 of the Rules;

1.2   In this Agreement:

    1.2.1   references to clauses and schedules are to the clauses in (and schedules to) this Agreement;

    1.2.2   references to the singular include the plural (and vice versa);

    1.2.3   references to the one gender include the others (and for these purposes the "genders" are "he", "she" and "it");

    1.2.4   references to legislation shall be to such legislation as from time to time in force; and

    1.2.5   wherever the word "including" appears it shall be treated as being followed by the words "without limitation".

## 2.   MSIL UK CREDITORS

2.1   In consideration of the obligations and covenants of MSIL under this Agreement the Trustee of BLMIS hereby consents to MSIL paying the proved MSIL UK Creditors claims and to the extent of such consent agrees to subordinate any claim it has in the liquidation of MSIL to the MSIL UK Creditor claims subject to Sanction.

2.2   Following the payments in clause 2.1 above all other assets of MSIL will remain with MSIL until the liquidation of MSIL has been completed and all assets are then paid to BLMIS as the sole remaining creditor of MSIL.

2.3   MSIL hereby confirms that it is not presently aware of any other creditors other than the BLMIS Claims and the MSIL UK Creditors.

3.    **BLMIS CREDITOR CLAIMS**

3.1    The Trustee of BLMIS shall as soon as is reasonably possible submit its proof of debt to MSIL.

3.2    Following the submission of claims in accordance with clause 3.1 the Trustee of BLMIS agrees not to take any further steps to pursue the BLMIS Trustee's Claim for dividend purposes until either the Conclusion of all Cases has been achieved or the Parties otherwise agree.

4.    **CONDUCT OF CLAIMS**

4.1    Each Party hereby confirms that it will instruct the Firm (subject to the Firm's ongoing advice) to issue proceedings and conduct litigation against the Defendants consistent with the fiduciary obligations owed in respect of both Parties' estates.

4.2    On and from the signing of this Agreement the Trustee of BLMIS shall procure that the Firm shall become a party to each of the Protocols.

4.3    MSIL's Liquidators and the Trustee of BLMIS each hereby confirm that they have not instructed and agree that they will not instruct any other firm of solicitors (other than the Firm) in relation to any of the Claims without the prior written consent of the other. Notwithstanding the foregoing, MSIL's Liquidators confirms and the Trustee of BLMIS acknowledges that MSIL Legal Advisers act as general legal counsel to MSIL but that they are not instructed in relation to any of the Claims.

4.4    Each Party agrees that it will make sufficient and appropriate members of their respective teams and other resources   at their own cost available to the Firm and to provide such assistance and cooperation as is reasonably required by the Firm, at the Firm's request, in the investigation and conduct of each and every Claim including the enforcement of any judgment in a Claim.

4.5    Each Party agrees (subject to any necessary Sanction)  that it will neither enter into negotiations or discussions with any Defendant concerning a Claim nor agree to (nor seek to) settle any Claim in respect of which he has instructed the Firm without first informing the other Party and the Firm and without (where possible) first

agreeing with the other Party the scope and strategy of such negotiations or discussions.

4.6    Each party shall subject to the Protocols promptly provide, and shall procure that their respective professional advisers shall provide all reasonable access to personnel and to all relevant assets, documents, records and information within their power, possession or control for the purpose of investigating any matter and/or enabling evaluation of the merits of any discussion envisaged in this Clause 4 and each party shall be entitled to copies of any of the documents, records and information referred to which shall be held at all times in accordance with the Protocols.

4.7    Each Party agrees that it will use all reasonable endeavours to ensure that all instructions to the Firm are provided clearly and promptly following discussions and agreement between the Parties.

4.8    Each Party hereby confirms to the other that subject to each obtaining all necessary internal approvals and subject to Sanction the persons listed below (together with anyone else who is confirmed to the other Party in writing) are each authorised to make decisions in relation to All Claims on behalf of the respective Party (including but not limited to authority as to whether that Party believes a Claim should be settled and/or compromised):

4.8.1    on behalf of the Trustee of BLMIS:    Mr. Gonzalo Zeballos or Mr. John Moscow

4.8.2    on behalf of MSIL's Liquidators:    Mr. John Verrill, Mr Stephen Akers or Mr Tim Slater

## 5.    COSTS AND ADVERSE COSTS

5.1    The Trustee of BLMIS agrees with the Liquidators of MSIL that the BLMIS estate will be responsible for and shall pay all of the Costs incurred by the Firm as well as any Court fees associated with legal proceedings relating to the Claims.

5.2    In the event that an adverse costs order is awarded by any Court against the Parties in relation to any Claim the Trustee of BLMIS hereby agrees to indemnify and keep

indemnified MSIL respect of any liability which attaches to MSIL to the extent that MSIL is not able to discharge such liability in whole or in part from its own assets following the payment of the MSIL UK Creditors in accordance with clause 2.1.

6.    **PROCEEDS**

6.1    To the extent that the Parties recover any damages or other monies or assets from a Defendant in respect of a Claim (whether on the Conclusion of a Case or otherwise) such monies shall be distributed (whether received in whole or part) in the following order:

6.1.1    first, to pay any Interim Costs which remain outstanding;

6.1.2    second, to reimburse any adverse costs order paid by the Parties pro-rata to the amounts in which they were paid by the Parties; and

6.1.3    finally, to pay to the Parties a share of the remaining funds in proportion to the value of the Parties' Claim against that Defendant.

7.    **DISPUTES**

7.1    In the event that the Parties are not unanimously agreed upon any course of action in respect of a Claim they will arrange a meeting either face to face or by telephone conference between the principals of each Party within 7 days of a disagreement arising and remaining unresolved.  At that meeting the Parties will act in good faith and use all reasonable endeavours to agree on a course of action going forward. Any such decision shall be evidenced by a memorandum in writing signed by the persons making such decision.

7.2    If the Parties are unable to agree on any course of action pursuant to clause 7.1 they will select Counsel of not less than 10 years standing as is agreed by the Parties, or in default of agreement such Counsel as is appointed by the Chairman for the time being of the Bar Council, and will act in accordance with such Counsel's advice, but subject always to the provisions of this Agreement.

8.    **CONDUCT OF MSIL LIQUIDATION**

8.1    Save as provided in this Agreement and subject always to the supervision of the Companies Court the Liquidators shall continue to administer the Estate of MSIL in accordance with their duties as officers of the court and shall continue to get in assets of MSIL for satisfaction of the claims of its creditors in accordance with the Act and the Rules.

8.2    The Trustee of BLMIS shall on and from the date of this Agreement assume responsibility for the recovery of the Aston Martin motor car registered in the name of Peter Madoff but which was paid for by MSIL and which is currently located in Florida, subject always to the Liquidators providing all reasonable assistance to BLMIS.  Any realisations and expenses incurred after the date of this agreement shall be for the account of the BLMIS estate.

8.3    MSIL and the MSIL Legal Advisers shall continue their efforts to release the vessel "Yacht Bull" from arrest or freezing injunction obtained by Financiere Meeschaert in the courts of England France and the Cayman Islands so that the same may be sold and the proceeds of any sale and any associated costs shall be for the account of MSIL, unless otherwise agreed by the parties.  BLMIS shall provide all reasonable assistance to MSIL in enabling any sale to proceed including any necessary liaison with the US Department of  Justice which has the benefit of a temporary restraining order of 26 June 2009 in respect of  the vessel which is an asset of Mrs Ruth Madoff held via the Cayman Company "Yacht Bull Corporation".

9.    **TERMINATION**

9.1    This Agreement shall come into effect on the date it has been signed by the Parties

9.2    If for any reason:

9.2.1    the Parties' retainer with the Firm is terminated without an alternative Firm acceptable to both Parties in place to take over;

9.2.2      or either Party gives notice to the other that it cannot proceed with All
Claims in circumstances where relevant Sanction has been denied and/or
to do so would contravene their duties;

then this Agreement shall be terminated with immediate effect on either Party
stating that to be the case in writing.

9.3    If the Liquidators of MSIL shall terminate this Agreement and/or withdraw from
any Claims the Trustee of BLMIS may by notice in writing require the Liquidators
of MSIL to assign to BLMIS or as BLMIS directs (to the extent that MSIL is able
and subject to Sanction) all of MSIL's rights of action and/or claims against all or
any of the Defendants to enable the Trustee of BLMIS (or its nominee) to
commence or to continue any Claim against a Defendant or Defendants.

9.4    On termination, save for those obligations contained in clauses 9.3, 9.4, 9.5 and
13.8,the Parties shall each cease to have any further rights and obligations under
this Agreement, save that such termination shall be without prejudice to any
obligations or rights of any of the Parties hereto which have accrued prior to such
termination, and shall not affect any provision of this Agreement which are
expressly or by implication provided to come into effect on or to continue in effect
after such termination.

9.5    Termination of this Agreement for any reason shall not affect the provisions of the
Protocols, each of which shall continue in full force and effect notwithstanding such
termination.

## 10.    ASSIGNMENT

10.1   This Agreement shall benefit (and bind) each Party's liquidators, administrators and
successors with immediate affect upon any change in the current liquidators or
relevant office-holder of a Party.  The definition of "Party" and "Parties" shall be
treated as having been amended accordingly with immediate effect.

10.2   This Agreement is personal to the Parties and may not be assigned and nor may any
of the rights or obligations arising hereunder be dealt with otherwise.

11.    **NOTICES**

11.1    All notices which are required to be given hereunder shall be in writing and shall be sent to the address of the recipient set out below or such other address as the recipient may designate by notice given in accordance with the provisions of this sub-clause.

Irving Picard, Esq.
Baker & Hostetler
45 Rockefeller Plaza
New York New York 10111
Attention: John W. Moscow
            Gonzalo Zeballos

Stephen J. Akers
Grant Thornton
30 Finsbury Sq
London EC2P 2YU
England
Attention: Tim Slater

John Verrill
Dundas & Wilson
Northwest Wing
Bush House
Aldwych. London
WC2 B4EZ
England

11.2    A notice is deemed to have been received:

11.2.1    if delivered personally, at the time of delivery; or

11.2.2    in the case of fax, at the time of transmission; or

11.2.3    in the case of pre-paid first class post, recorded delivery or registered post to an address in the same country, 48 hours from the date of posting; or

11.2.4    in the case of registered airmail or pre-paid first class post, recorded delivery or registered post to an address in another country, five days from the date of posting; or

11.2.5   if deemed receipt under the previous paragraphs of this sub-clause is not within business hours (meaning 9 am to 5.30 pm Monday to Friday on a day that is not a public holiday in the place of receipt), when business next starts in the place of receipt.

11.3   To prove service it is sufficient to prove that the notice was transmitted by fax to the fax number of the recipient or, in the case of post, that the envelope containing the notice was properly addressed and posted.

11.4   The provisions of this clause do not apply to the service of any proceedings or other documents in any legal action.

12.   **ENTIRE AGREEMENT**

12.1   This Agreement constitutes the entire Agreement between all the Parties in respect of the subject matter with which it deals.   The Parties have not relied on any representations or matters not set out in this Agreement.   To the extent any provisions of this Agreement conflict with the provisions of any other prior agreement entered into among the Parties the terms of this Agreement shall control, unless otherwise required by operation of law.

12.2   This Agreement is subject to the approval of the U.S. Bankruptcy Court and the approval of the English Court

13.   **GENERAL**

13.1   No person who is not a party to this Agreement (other than the Firm) shall have any rights under or in connection with it by virtue of the Contracts (Rights of Third Parties) Act 1999.

13.2   Without limitation the Firm is not a party to (and does not have any liabilities or obligations under) this Agreement and nothing in this Agreement alters or amends any instructions or arrangements which each Party has with the Firm.

13.3   No variation of any provision of this Agreement shall be valid unless it is agreed by both Parties.

13.4   This Agreement may be entered into by means of one or more counterparts such counterpart shall be treated as forming one agreement.

13.5   Failure or neglect by any Party to enforce at any time any of the provisions of this Agreement shall not be construed as, nor shall it be deemed to be a waiver of, that Party's rights under this Agreement, nor will it in any way affect the validity of the whole or any part of this Agreement, nor will it prejudice any Party's rights to take subsequent action.

13.6   The headings in this Agreement are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or the interpretation of any of the terms and conditions of this Agreement.

13.7   Nothing in this Agreement constitutes a partnership or joint venture between the Parties.

13.8   Termination of this Agreement shall not bring to an end any provision of this Agreement which expressly or impliedly survives termination nor shall it affect any right or remedy of any Party which has accrued prior to termination.

14.   **GOVERNING LAW**

This Agreement and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with English law and the Parties irrevocably submit to the non-exclusive jurisdiction of the English Courts to resolve any disputes which may arise.

**IN WITNESS** whereof this Agreement has been duly executed by each of the Parties

## SCHEDULE 1

## MSIL UK CREDITORS

Madoff Securities International Ltd
Creditor Claims Summary Report as at 16 November 2010

| Key | Name [Redacted] | S of A where no claim received £ | Claim not agreed £ | Agreed Claim £ |
|---|---|---|---|---|
| CA01 | | | | Agreed Nil |
| CB02 | | | | 200.94 |
| CB03 | | | | Agreed Nil |
| CB00 | | | | Agreed Nil |
| CB01 | | - | | Agreed Nil |
| CB06 | | - | | Agreed Nil |
| CC00 | | - | | 697.45 |
| CC02 | | 173.49 | | - |
| CC0A | | | | Agreed N11 |
| CC09 | | | | Agreed Nil |
| CC03 | | | | 491.45 |
| CC08 | | | | Agreed Nil |
| CC05 | | | — | 5,845.69 |
| CC06 | | | . | 69,000.00 |
| CD03 | | | - | Agreed Nil |
| CD02 | | — | - | Agreed Nil |
| CF03 | | - | | Agreed Nil |
| CF01 | | - | | Agreed Nil |
| CF02 | | - | | 215.02 |
| CF00 | | - | | 94.18 |
| CF00 | | - | | Agreed Nil |

| | | | |
|---|---|---|---|
| CH00 | | 151.58 | |
| CK01 | | | 29,192.75 |
| CL01 | | | |
| CL02 | | | 153.98 |
| CM04 | | | Agreed Nil |
| CN04 | | | 59.50 |
| CN02 | | 7,256.12 | - |
| CO00 | | | 1,011.37 |
| CV03 | | | 395.63 |
| CO01 | | | Agreed Nil |
| CP04 | | - | Agreed Nil |
| CP09 | | - | 4,978.41 |
| CP00 | | - | 16,239.76 |
| CP01 | | - | 28,980.00 |
| CP03 | | | Agreed Nil |
| CR01 | | . | 52.28 |
| CR03 | | 7,500 | |
| CS00 | | - | Agreed Nil |
| CS02 | | | 1,392.53 |
| CSI/I I | | | Agreed Nil |
| CS01 | | | Agreed Nil |
| CS0E | | | Agreed Nil |
| CS0C | | | 22,168.00 |
| CS0B | | | 70,082.15 |
| 0306 | | | 353.21 |
| CS04 | | . | Agreed Nil |
| CS0D | | | 572.82 |
| CT05 | | 12,925.00 | |
| CA00 | | - | Agreed Nil |
| CT04 | | - | Agreed Nil |

| | | | | |
|---|---|---|---|---|
| CT00 | | | - | Agreed Nil |
| CT01 | | | - | 488.55 |
| CU00 | | | — | Agreed Nil |
| CV01 | | | . | Agreed Nil |
| CW00 | | | - | Agreed Nil |
| CW02 | | | - | Agreed Nil |
| CW01 | | | | 364.11 |
| CP05 | | | 76.38 | - |
| CT03 | | | 02.00 | . |
| CV02 | | | 96.93 | |
| CC07 | | | 116.90 | |
| CC0C | | | 216.94 | |
| CJ00 | | | 262.44 | |
| CSO5 | | | 560.00 | |
| CM02 | | | 1,174.011 | |
| CM01 | | | 1,304.65 | |
| CE00 | | | 1,44635 | |
| CC01 | | - | 2,228.98 | |

| Key | Name [Redacted] | S of A where no claim received £ | Claim not agreed £ | Agreed Claim £ |
|---|---|---|---|---|
| | | | | |
| CL00 | | | 3,018.60 | |
| CP06 | | | 3,863.20 | |
| CD01 | | | 3,910.87 | |
| CB05 | | - | 4,292.50 | |
| CN03 | | | 4,891.08 | |
| CM00 | | | 7,378.41) | |
| CD04 | | - | 9,860.10 | 247.63 |

| | | | | |
|---|---|---|---|---|
| CI02 | | | 10,991.16 | - |
| CB04 | | | 11,672.50 | 35,843.84 |
| CR02 | | | 15,100.00 | |
| CN01 | | | 115,231.74 | |
| **Claims likely to be compromised or proofs substantially altered.** | | | | |
| C100 | | | 145,822.36 | - |
| CB07 | | . | 156,370.74 | |
| CT02 | | - | 223,058.55 | |
| CH01 | | - | 401,569.00 | |
| CC04 | | | 1,985,602.00 | |
| **Total** | | **28,006.19** | **3,110,208.57** | **289,121.65** |
| Employees | | | | |
| | | .. | 4,769.60 | - |
| | | - | 5,813.79 | |
| | | - | 89,943.55 | - |
| | | - | 21,670.37 | |
| | | | 118,645.75 | - |
| | | | - | 24,194.99 |
| | | | 28,614.87 | |
| | | | 4,787.33 | |
| | | | 271,289.44 | - |
| | | | 5,734.44 | - |
| | | | 4,761.15 | - |
| | | | 13,601.70 | - |
| | | - | 133,083.64 | - |
| | | - | 134,657.86 | - |
| | | - | 8,784.58 | - |
| | | - | 86,344.49 | - |
| | | - | 5,040.06 | - |
| | | - | 169,317.20 | - |

| | | | | | |
|---|---|---|---|---|---|
| | | | - | 3,125.38 | - |
| | | | - | 6,593.71 | - |
| | | | - | 94,847.30 | |
| | | | - | 137,505.78 | |
| | | | - | 1,947.62 | |
| | | | - | 47,267.95 | |
| | | | - | 5,834.90 | |
| | | | - | 227,317.29 | - |
| | | | - | 5,849.82 | - |
| | | | - | 6,555.16 | - |
| | | | _ | 8,993.67 | - |
| **Total** | | | - | **1,652,698.39** | **24,194.99** |

| Totals | £ |
|---|---|
| 'Agreed claims' (see note) | 289,121.65 |
| 'Claims not agreed' (see note) | 3,110,208.57 |
| No claim received but Sofa\ figure | 28,006.19 |
| Employees unsecured claims provisionally agreed | 1,652,698.39 |
| Compromised claim - agreed and paid | 24,194.99 |
| **Total** (subject to continuing adjudication) | 5,104,229.79 |

**Notes**

Agreed claim' represents all agreed claims that have been communicated as agreed

'Claim not agreed' represents:
- Claims received and rejected (subject to 21 day Court appeal).
- Claims received and not yet adjudicated on
- Potential Claims where there is no SofA figure
  (derived from various correspondence received during the
  provisional liquidation)

Therefore, they all
still represent a
potential liability

## SCHEDULE 2

## THE DEFENDANTS

[Redacted]

**EXECUTED** as a **DEED** for and on behalf of
**MADOFF SECURITIES
INTERNATIONAL LIMITED (in
Liquidation)** by one of **THE
LIQUIDATORS** in his capacity as its agent
and without personal liability

……………………………………
(Liquidator)

in the presence of:-

…………………………………
Signature of witness

Name of witness:

Address of witness:

Occupation of witness:

**EXECUTED** as a **DEED** by Irving Picard,
**TRUSTEE** in his capacity as its agent and
without personal liability for and on behalf of
**BERNARD L. MADOFF INVESTMENT
SECURITIES LLC (in Liquidation)**

……………………………………
(Trustee)

in the presence of:-

…………………………………
Signature of witness

Name of witness:

Address of witness:

Occupation of witness: