Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: velvel@mslaw.edu

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**MOTION FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL IN THE DISTRICT COURT FROM CERTAIN DISPOSITIVE PROVISIONS OF THIS COURT'S ORDER OF NOVEMBER 10, 2010 ESTABLISHING PROCEDURES FOR AVOIDANCE ACTIONS**

Lawrence R. Velvel hereby moves under 28 U.S.C. § 158 for leave to file an interlocutory appeal in the District Court with regard to two aspects of this Court's Order of November 10, 2010 establishing procedures for avoidance actions. The two aspects

1

are highly material, of public interest and importance, and are nearly certain to be dispositive of results in the case.

One of the matters on which an interlocutory appeal is sought is the Order's limitations on discovery contained in Section 4G[1] and the Order's prohibition in 4H on deposing the Trustee unless the Court orders the deposition.[2]

The other matter is the Order's mandatory requirement of mediation (Section 5A), on the basis that "The parties shall participate in the mediation in good faith with a view toward reaching a consensual resolution." Section 5G. These ordinarily unexceptionable clauses have been vitiated in advance here by the declaration of the Trustee's counsel in open court that the Trustee will *not* take account of litigation risk when dealing with victims -- which necessarily means that the Trustee has no intention of mediating in good faith with a view toward a consensual resolution, but will mediate only on the basis of the other side's surrender of its legal position in the mediation.

---

[1] Section 4G states (emphasis added):

> Unless the parties agree to a broader scope, absent further order of the Court upon a showing of good cause, discovery *will be limited solely and specifically to* non privileged matters to the extent discoverable under Federal Rule 26(b)(1) which relate to: (a) the calculation of net equity for the defendant's BLMIS account; (b) the financial condition of BLMIS; (c) the activities of BLMIS, including both fraudulent conduct, including the Ponzi scheme, and legitimate operations; (d) the defendant's account documents and customer correspondence and interactions with BLMIS, its employees, agents and other investors or customers; (e) the internal records of BLMIS; (f) transfers of money by and among BLMIS; (g) the defendant's good faith or lack thereof, including issues related to the defendant's actual or constructive notice of fraudulent activity by BLMIS or anyone acting on its behalf; (h) disclosures made by BLMIS under federal and/or state laws, such as disclosures to the SEC; and (i) the identity of other persons or entities that may be liable for the transfers at issue, whether as subsequent transferees or for some other reason.

[2] Section 4H says "Depositions of the Trustee are prohibited absent an order issued by this Court upon a showing of good cause."

2

A.    There are numerous crucial issues, any one or combination of which could be dispositive, on which discovery is foreclosed by the order of November 10th. Those issues include, *among others*, the extent to which Madoff obtained revenue from short term investments -- into which investors' funds were swept *every night* -- such as Treasury Bills and money market funds.[3] The earnings on these instruments should have been but were not credited to investors by the Trustee. The earnings would have altered the calculation of net equity even under the cash-in/cash-out method ("CICO") and might have put so-called net winners into the category of net losers, i.e., the real earnings from the short term instruments, which should have been credited to investors by the Trustee and SIPC, could have resulted in investors *not* having taken out more than they put in, thus giving investors a positive net equity even under CICO. The earnings also would have lessened or even sometimes eliminated clawbacks. There should be discovery on how much the relevant earnings were and on why the Trustee did not credit these earnings to investors when using CICO, as he should have. But all such discovery is foreclosed under the November 10th order.

Especially in view of the Congressional intent expressed *extensively* in the legislative debates on SIPA but not given attention until the net equity decision was on appeal in the Second Circuit, as well as the Congressional reports on SIPA, there also should be discovery on why SIPC and the Trustee chose to use CICO here. But such discovery is foreclosed by the November 10th order.

---

[3] That investors' funds were swept into short term instruments has now been explicitly stated by both the Trustee and the U.S. Attorney. It has also been explicitly stated that this was done *every night*.

3

There should also be an "omnibus" deposition of the Trustee to obtain his knowledge and opinions about the foregoing and other matters of great consequence here. But there can be no such deposition without a Court order.

There also are numerous other matters on which discovery is needed but cannot be obtained under the Order of November 10th, even though the needed discovery will be outcome determinative, as is true in so many cases. The proscriptions of needed, outcome determinative discovery are rules illegally depriving investors of important rights. 28 U.S.C. § 2075 provides that rules of "process, writs, pleadings and motions, and practice and procedure in cases under Title 11 . . . shall not *abridge*, enlarge, or *modify* any substantive rights." (Emphasis added.) The limitations in the November 10th Order on ordinary rules relating to discovery and depositions, the limitations that are objected to here, do not merely "abridge" or "modify" the substantive rights of Madoff victims. They *vitiate* those rights by insuring that their assertion cannot be based on discovery of needed information and *therefore cannot be effectively or victoriously put forth.*[4] It would seem *obvious* that they violate 28 U.S.C. § 2075. At minimum the limitations against essential discovery should be tested on appeal before investors are forced to litigate with one hand tied behind their backs.

Movant is not oblivious to the fact that persons who object to the limitations on discovery and depositions can request the Court to allow desired discovery or depositions. But the Court has made plain on a number of occasions that it believes the case should be moved along as quickly as possible, and, in *accordance with the position of the Trustee and SIPC, it has already denied discovery of the type Movant believes*

---

[4] One may perhaps be permitted to doubt that the restrictions on discovery and depositions were put into the proffered Order *written by the Trustee* because they harm *his* chances of victory.

4

*crucial.* That the Court will change its mind on these various matters cannot reasonably be expected, especially after it signed the Trustee's proffered Order containing the limitations objected to here. Yet those limitations can, *and are likely to*, make all the difference in results in this case, and they should be tested on appeal before they do.

      B.    With the hope that cases will be settled via mediation at a great savings in time and expense, this Court has ordered mediation in every case. This might ordinarily be laudable. But here the Trustee's counsel has announced in open court that in dealing with victims the Trustee will take little or no account of litigation risks -- and intends to act in this fashion though the Trustee himself asked for an immediate direct appeal on the all-important net equity question which will control SIPC advances and may control clawbacks too. Counsel for the Trustee said in open court (Transcript of Hearing of November 10, 2010, p. 35):

> And we don't intend, absent being presented with evidence of the contrary, that our complaints should be reduced or should be compromised in terms of litigation risks. We feel very bullish that ultimately we'll prevail in these lawsuits. So we're not going to be discounting, to any meaningful extent, for litigation and risk.

For the Trustee to say he will take little or no account of litigation risk (after seeking a direct appeal on a crucial issue he might lose) is not an expression of future good faith in mediation. It is rather, an expression of the position that investors must surrender their own legal position in the mediation or there can be no resolution there. To demand even before the fact, and prior to the Second Circuit's decision on net equity, that investors surrender their own legal position in mandatory mediation is not good faith. The requirement of *mandatory* mediation should, in these circumstances, be immediately tested on appeal.

5

## CONCLUSION

For the foregoing reasons this Court should grant Movant leave to appeal to the District Court with regard to the pertinent limitations on discovery, and the requirement of mandatory mediation, in the Order of November 10, 2010.

Respectfully submitted,

_____
Lawrence R. Velvel, Esq.
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: Velvel@mslaw.edu

Dated: December 1, 2010

R:\My Files\Madoff\MtCertifInterlocutoryAppeal.doc