# EXHIBIT B

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

**Name of Customer:** Richard Coppolino
**Mailing Address:** 5 Paddock Court
**City:** Holmdel          **State:** NJ          **Zip:** 07733
**Account No.:** _____
**Taxpayer I.D. Number (Social Security No.):** _     2409

**NOTE:**    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

**********************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of          $____0_____

    b.    I owe the Broker a Debit (Dr.) Balance of          $____0_____

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.          $_____

    d.    If balance is zero, insert "None."          _____None_____

502180406                              1

2.     Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |

c.     If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |

Please see Exhibits A and B. The entity described in Exhibit A is believed to be a customer

of BMIS and the party filing this claim thus has an interest in the assets of such entity.

Claim Amount: $2,086,353.93*

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406

*Peerstate Equity Fund, L.P. had virtually all of its assets invested with BMIS. The above claim amount reflects the claimant's proportionate share of this investment, as demonstrated in Exhibit A.

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Christopher Van De Kieft, Esq., Seeger Weiss LLP, One William Street, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date  3/30/09          Signature _____

Date _____     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

# Exhibit A

# PEERSTATE EQUITY FUND, L.P.

NEW WORLD PLAZA
6 ARISTA COURT
DIX HILLS, NY 11746
631 424-0078

**January 27, 2009**

Dear Limited Partner,

This letter is to provide you with an update since our last letter. Peerstate Equity Fund, L.P. ("Peerstate") and Robert N. Getz, LLC are being judicious and prudent with expenses, while trying to preserve Peerstate's funds as much as possible. We are in the process of completing a SIPC claim on behalf of Peerstate and anticipate filing the same shortly. Although, it is hoped that the Securities Investors Protection Corporation or SIPC, will ultimately provide coverage to each individual Limited Partner (the indirect investor as to Bernard L. Madoff Investment Securities LLC "Madoff"), presently, SIPC's coverage is a maximum of $500,000, but is currently limited to only the specific account holder — in this case – Peerstate.

As mentioned in our last letter, it is alleged that Madoff investors lost approximately $50 billion. Peerstate is a relatively small fund which had, at the collapse of Madoff, approximately $19 million in positions held with Madoff, less than half of which was actually contributed by the Limited Partners of Peerstate.[1] SIPC has mailed over 8,000 claim forms to apparent clients of Madoff, including Peerstate. However, newspaper articles, information posted on the Internet and other sources of information, have indicated that SIPC has only $1.5 billion in assets. Even if SIPC recovered any substantial assets from Madoff, which is optimistic, it would only cover a miniscule portion of all investor losses. Any money or other assets that SIPC does recover would first be used by SIPC to pay the trustee, his own counsel, accountants and other professionals who may be retained, and then up to $500,000, to the direct account holders.

However, there is "talk" that SIPC may increase its coverage to include indirect investors, such as the Limited Partners. In order for SIPC to increase its extent of coverage, the U.S. Congress and our new President, would need to work together to pass a law authorizing SIPC to provide additional coverage and to fund the same. We think it would be helpful if each of you writes to your Congressman or Congresswoman and/or Senator requesting that such a law be passed to cover the indirect investor.

---

[1] After taking into account all withdrawals, redemptions and distributions made to our current Limited Partners.

Attached is a sample letter that you can use for that purpose. If you need assistance in identifying your specific U.S. Senator or Congressman, you should review the following Internet addresses for such information regarding each member of the U.S. Senate and U.S Congress, respectively:

http://www.senate.gov/general/contact_information/senators_cfm.cfm
http://www.house.gov/house/MemberWWW.shtml

In addition, if you should wish to contact the President, please follow the directions contained on the following Internet address:

http://www.whitehouse.gov/contact/

Peerstate has looked at various avenues to pursue its claims against Madoff and related parties, including joining class action lawsuits and filing its own independent claims. However, as you are probably aware, as a result of the issuance of the Protective Decree, certain acts and proceedings, including civil lawsuits against Madoff, have been stayed by operation of law and by a specific order issued by the U.S. District Court judge in charge of the Madoff proceedings. Therefore, at this time, existing class action lawsuits are stayed, as would our own independent claim if we were attempt to file an action against Madoff. Even if the stay is lifted, the chances of Peerstate recovering any meaningful dollars by joining a class action lawsuit or filing our own independent claim is unlikely.

Since the likelihood of Peerstate recovering any assets either by joining a class action lawsuit or incurring expenses to file its own independent claim is virtually nil, we believe, at this time, that the best chance to recover additional assets above the current SIPC amount would be to contact your specific U.S. Senator or Congressman or the President, as discussed above, to petition them for coverage of indirect investors.

In addition, Peerstate is consulting with tax professionals to determine how any losses may be used as an offset against phantom income that may have been allocated to you. You will need to speak with your personal tax advisor to determine if and how you may be able to recover your individual loss, or a proportionate share of Peerstate's losses.

The court appointed trustee, the SEC and the U.S. Attorney are still investigating the matter, but no further details have been publicly disclosed.

Peerstate is looking into the above issues, but we want to be careful and act with prudence since we are a relatively small fund. This process will take time. In the interim, Peerstate and Robert N. Getz, LLC request your continued patience and understanding as we look into what occurred.

Very truly yours,

Robert N. Getz, LLC
General Partner

By:   Robert N. Getz
Managing Member

# PEERSTATE EQUITY FUND, L.P.
Robert N. Getz, LLC, General Partner

## FINAL INVESTMENT VALUE STATEMENT

PERSONAL AND CONFIDENTIAL

**FOR RECORDING PERIOD ENDED**: December 11, 2008*

**PARTNER NAME:**     Richard Coppolino

**ADDRESS:**     5 Paddock Court
Holmdel, NJ  07733

**ACCOUNT NUMBER:**     3332

## I. THE VALUE OF YOUR INVESTMENT AT:

| | |
|---|---|
| December 11, 2008*: | $ 2,094,872.18 |
| September 30, 2008: | $1,953,998.89 |

## II. YOUR INVESTMENT:

Contributions and (Withdrawals):

| Date: | Amount Contributed: |
|---|---|
| August 26, 2004 | $  500,000.00 |
| December 22, 2004 | 150,000.00 |
| July 22, 2005 | 250,000.00 |
| May 19, 2006 | 150,000.00 |
| February 20, 2008 | 450,000.00 |
| Total Net Contributions to Date: | $ 1,500,000.00 |

**Your amount of potential loss in
Bernard L. Madoff Investment Securities LLC: $2,086,353.93****

**Your percentage of total potential loss in
Bernard L. Madoff Investment Securities LLC: 10.3441%****

*The December 11, 2008 valuation is based upon the final statement received from
Bernard L. Madoff Investment Securities LLC dated November 30, 2008.

**For purposes of submitting your SIPC claim form with the SIPC Trustee, but not for tax filing purposes

New World Plaza   6 Arista Ct., Dix Hills, New York 11746-4908   (631) 424-0078

# Exhibit  B

## EXHIBIT B

1.  The Claimant is not a direct customer of Bernard L. Madoff Investment Securities LLC ("BMIS"), but instead is an investor in the Peerstate Equity Fund, L.P., which is believed to be a BMIS customer with claims to securities and other assets of BMIS. The Claimant believes it has or may have in the future a claim in this liquidation proceeding and/or rights to all or a portion of the claims of Peerstate Equity Fund, L.P.

2.  This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

3.  The information provided in the Claim Form is based on information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

4.  The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law or equity.

5.  The Claimant hereby requests that the Claim Form be considered as a proof of claim in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

6.  This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by applicable law, the Claimant does not, by submitting the Claim Form, consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

7.  The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, BMIS and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

Richard Coppolino
Investor in Peerstate Equity Fund L.P., a Customer of BMIS.

| Document Number | Date of Document | Issuing Party | Prepared for | Description of Document |
|---|---|---|---|---|
| 1 | 2/20/2008 | Bank of America | Richard Coppolino | Confirmation of a wire transfer in the amount of $450,000.00 to Peerstate Equity Fund, L.P. |
| 2 | 5/19/2006 | NYCB Accounting | Richard Coppolino | Confirmation of a wire transfer in the amount of $150,000.00 to Peerstate Equity Fund, L.P. |
| 3 | 7/22/2005 | Long Island Commercial Bank | Richard Coppolino | Confirmation that a wire transfer in the amount of $250,000.00 was received by LI Commercial Bank (Peerstate Equity Fund L.P.) from JPMorgan Chase (Richard Coppolino). |
| 4 | 12/22/2004 | Long Island Commercial Bank | Richard Coppolino | Confirmation that a wire transfer in the amount of $150,000.00 was received by LI Commercial Bank (Peerstate Equity Fund L.P.) from JPMorgan Chase (Richard Coppolino). |
| 5 | 8/26/2004 | Long Island Commercial Bank | Richard Coppolino | $500,000.00 was received by LI Commercial Bank (Peerstate Equity Fund L.P.) from DBTCO Americas (Richard Coppolino). |
| 6 | 8/26/2004 | Peerstate Equity Fund, L.P. | Richard Coppolino | Richard Coppolino's Subscription Agreement to become a limited partner in the Peerstate Equity Fund, L.P. |

# Exhibit 1



PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

PEERSTATE EQUITY FUND LP
6 ARISTA CT
DIX HILLS NY  11746-4908

DATE: 02/20/08
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT:          9550

THE FOLLOWING WIRE WAS CREDITED TODAY:          USD AMOUNT $450,000.00

TRANSACTION REF:    2008022000171862
SENDER'S REF:       01080220002492NN
ORIGINATOR:         RICHARD COPPOLINO          ID: 004250041582

PAYMENT DETAIL:     RE: RICHARD COPPOLINO

# Exhibit 2



05-19-06   01:45pm   From-NYCB Accounting

516 683 9345   T-952   P 00'/001   F-523

:r: FLIP      15:15:36       05/19/2006      FLIP PROCESSING ITEMS.
ocessing session 2

Outgoing message URC: FT0009, Queued on HOST 05/19/06 15:15:21

##HNORMAL MSG/ACCTG ENTRY####
## 02 #### FT PROD ####          FT INCOMING      {2000} Amount:        $150,000.00
100} Sender: 02600959J BK AMER NYC             {3600} Bus Function Code: CTR
400} Receiver: 021412114 LI COMM BK
510} Type Code:         1000
700} Charges:           $
000} Originator:        D004250041582
                        RICHARD COPPOLINO
                        5 PADDOCK CT
                        HOLMDEL NJ 07733-1231
000} ORG to BNF Info:   RICHARD COPPOLINO
100} Originator's FI:   D004250041582
                        RICHARD COPPOLINO
                        JOANN COPPOLINO
                        5 PADDOCK CT

4200} Beneficiary:      HOLMDEL NJ  07733-1231
                        D013001135 4
4320} Ref for BNF:      PBERSTATE EQUITY FUND LP
1520} IMAD:             01060519004775NN
3320} Sender Ref:       20060519B6B7HU5R003486
1110} Timestamp:        2006051900202507
1120} OMAD:             0519151 2FT01
                        20060519B1Q10C1D00002005191512FT01

**DO NOT POST**
**INFO ONLY**

# Exhibit 3



LONG ISLAND COMMERCIAL BANK
ONE SUFFOLK SQUARE
ISLANDIA, N. Y. 11749
631-348-0888

INCOMING WIRE TRANSFER ADVICE
DATE: 7/22/05

DEAR CUSTOMER:
THE FOLLOWING WIRE TRANSFER HAS BEEN RECEIVED FOR CREDIT TO YOUR ACCOUNT.
PLEASE RECORD THE TRANSFER IN YOUR RECORDS.

PEERSTATE EQUITY FUND LP
6 ARISTA COURT
DIX HILLS NY 11746

ACCOUNT:                          1354
AMOUNT:            250,000.00
SERVICE CHARGE: WAIVED
LICB REF. #:
ORIGINATOR: RICHARD COPPOLINO         17
SENDING BANK: JPMORGAN CHASE    RI
MESSAGE:

# Exhibit 4



LONG ISLAND COMMERCIAL BANK
ONE SUFFOLK SQUARE
ISLANDIA, N. Y.    11749
631-348-0888

DEAR CUSTOMER:
THE FOLLOWING WIRE TRANSFER HAS BEEN RECEIVED FOR CREDIT TO YOUR ACCOUNT.
PLEASE RECORD THE TRANSFER IN YOUR RECORDS.

FEERSTATE EQUITY FUND LP
6 ARISTA COURT
DIX HILLS NY    11746

INCOMING WIRE TRANSFER NOTICE
DATE: 12/22/04

ACCOUNT:                      1354
AMOUNT:              150,000.00
SERVICE CHARGE: WAIVED
LICB REF. #:         24
ORIGINATOR: RICHARD COPPOLINO
SENDING BANK: JPMORGAN CHASE
MESSAGE: FBO RICHARD COPPOLINO    RI

# Exhibit 5

LONG ISLAND COMMERCIAL BANK
NE SUFFOLK SQUARE
SLANDIA, N. Y.    11749
    631-348-0688

INCO... ...ER A...VICL
DATE:    8/26/04

DEAR CUSTOMER:
    THE FOLLOWING WIRE TRANSFER HAS BEEN RECEIVED FOR CREDIT TO YOUR ACCOUNT.
    PLEASE RECORD THE TRANSFER IN YOUR RECORDS.

PEERSTATE EQUITY FUND LP
6 ARISTA COURT
DIX HILLS NY    11746

ACCOUNT:                1354
AMOUNT:        500,000.00
SERVICE CHARGE:    WAIVED
LICB REF. #:                    4
ORIGINATOR:RICHARD COPPOLINO
SENDING BANK: DBTCO AMERICAS NY
MESSAGE:

# Exhibit 6

## SUBSCRIPTION AGREEMENT

To Become a Limited Partner in

### Peerstate Equity Fund, L.P.

**AGREEMENT** made the *26* day of *Aug* *200 7* by and between Peerstate Equity Fund, L.P. (the "Partnership") and the party who shall sign this Agreement as subscriber (the "Subscriber").

**WHEREAS,** the Subscriber desires to become a limited partner in the Partnership by subscribing for the number of units of limited partnership interest ("Units") equal to the dollar amount set forth below the Subscriber's name at the end hereof;

**NOW, THEREFORE**, in consideration of the premises, it is hereby agreed:

**FIRST:** The Subscriber hereby agrees to become a limited partner in the Partnership on the terms and conditions set forth in the accompanying Limited Partnership Agreement, which is being executed by the Subscriber simultaneously with the execution of this Agreement. The Limited Partnership Agreement shall take effect when signed by the General Partner.

**SECOND:** The Subscriber agrees to subscribe for as many Units (or fractions thereof) as may be purchased on the "Effective Date" as described below for the subscription amount set forth below his name at the end hereof and agrees to contribute to the Partnership such amount in cash on or before the Effective Date; and the Partnership agrees to accept such cash as a capital contribution to the Partnership.

**THIRD:** The subscription amount of the Subscriber shall be payable to the Partnership in full or before the "Effective Date" which shall be such date as the General Partner shall specify as the Effective Date in a notice given to the Subscriber. The General Partner may, after having notified the Subscriber of the Effective Date, defer the Effective Date from time to time for a period of up to ten business days without notice thereof to the Subscriber. The Subscriber agrees that, on or before the Effective Date, he shall cause his subscription amount to be delivered to the Partnership in cash at a place to be designated by the General Partner.

1

**FOURTH:** EACH SUBSCRIBER MUST COMPLETE THE APPROPRIATE REPRESENTATIONS SET FORTH BELOW

REPRESENTATIONS FOR INDIVIDUALS

The Subscriber is an individual and

his individual net worth, or joint net worth with that of his spouse, exceeds $1,000,000.

 his individual income was in excess of $200,000 in each of the two most recent years or his joint income with his spouse was in excess of $300,000 in each of the two most recent years, and has a reasonable expectation of reaching the same income level in the current year.

☐ neither of the above applies (further information may be required to determine eligibility to invest in the Partnership).

REPRESENTATIONS FOR PENSION PLANS AND IRAS

The Subscriber has consulted counsel to the extent it deems necessary concerning the propriety of making an investment in the Partnership and the appropriateness of such an investment under the Employee Retirement Income Security Act of 1974, as amended (the "Code"), and the Internal Revenue Code of 1986, as amended including with respect to an IRA the possible risk of loss of the IRA's tax-exempt status.

The Subscriber is

☐ an IRA and the individual who established the IRA has a net worth, or joint net worth with his spouse, in excess of $1,000,000.

☐ an IRA and the individual who established the IRA had individual income in excess of $200,000 in each of two most recent years or had joint income with his spouse in excess of $300,000 in each of the two most recent years, and has a reasonable expectation of reaching the same income level in the current year.

☐ a self-directed pension plan and the participant who directed that assets of his account be invested in the Partnership has a net worth, or joint net worth with his spouse, in excess of $1,000,000 and such participant is the only participant whose account is being invested in the Partnership.

☐ a self-directed pension plan and the participant who directed that assets of his account be invested in the Partnership had individual income in excess of $200,000 in each of the two most recent years or had joint income with his spouse in excess of $300,000 in each of the two most recent years, and has a reasonable expectation of reaching the same income level in

2

the current year and such participant is the only participant whose account is being invested in the Partnership.

☐  a pension plan which is not a self-directed plan which has total assets in excess of $5,000,000.

☐  none of the above apply (further information may be requested to determine eligibility to invest in the Partnership).

## REPRESENTATIONS FOR TRUSTS OTHER THAN PENSION PLANS

The Subscriber is

☐  a revocable trust with a single grantor and the grantor is an individual with a net worth, or joint net worth with his spouse, in excess of $1,000,000.

☐  a revocable trust with a single grantor and the grantor is an individual who had individual income in excess of $200,000 in each of the two most recent years or had joint income with his spouse in excess of $300,000 in each of the two most recent years, and has a reasonable expectation of reaching the same income level in the current year.

☐  an irrevocable trust which consists of a single trust (i) with total assets in excess of $5,000,000, (ii) which was not formed for the specific purpose of acquiring an interest in the Partnership, and (iii) whose purchase of an interest in the Partnership is directed by a person who has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Partnership.

☐  none of the above apply (further information may be required to determine eligibility to invest in the Partnership).

## REPRESENTATIONS FOR CORPORATIONS AND PARTNERSHIPS

The equity owners of the Subscriber share in the profits and losses of all investments of the Subscriber in the same way on the basis of their proportional ownership, and do not have non-pro rata interests in specified investments of the Subscriber.

Based on most recent valuations available, (i) the Subscriber's investment in the Partnership constitutes less than 40% of its net assets and the Subscriber agrees to notify the Partnership at the end of any quarter that its investment in the Partnership exceeds 50% of its net assets, and (ii) less than 25% of the Subscriber's assets are owned by "benefit plan investors" as defined in regulations on the United States Department of Labor, and the Subscriber agrees to notify the Partnership promptly if the percentage of its assets which is owned by benefit plan investors should equal of exceed 25%.

3

The Subscriber is

☐ a corporation or partnership, it was not formed for the specific purpose of acquiring an interest in the Partnership, and it has total assets in excess of $5,000,000.

☐ a corporation or partnership of which each of the equity owners therein is an individual (i) whose net worth exceeds $1,000,000, or (ii) who had individual income in excess of $200,000. in each of the two most recent years or had joint income with his spouse was is excess of $300,000 in each of the two most recent years, and has a reasonable expectation of reaching the same income level in the current year.

☐ the above does not apply (further information may be required to determine eligibility to invest in the Partnership).

**FIFTH:** The Subscriber further represents, warrants, acknowledges and agrees that:

(a) He (or his Purchaser Representative, if any, who has been designated by him) is entering into this Agreement relying solely on the facts and terms set forth in this Agreement, the Confidential Private Offering Memorandum of the Partnership and the Limited Partnership Agreement and he has received copies of all such documents and the General Partner has not made any representations of any kind or nature to induce the Subscriber to enter into this Agreement except as specifically set forth in such documents;

(b) He (or such Purchaser Representative) has made an investigation of the pertinent facts relating to the operation of the Partnership and has reviewed the terms of the Limited Partnership Agreement to the extent that he deems necessary in order to be fully informed with respect thereto;

(c) He (or such Purchaser Representative) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Partnership; and the Subscriber is able to bear the economic risk of a complete loss of his investment in the Partnership;

(d)(1) He will be acquiring the limited partnership interest for investment, for his own account and not for the interest of any other person and not for distribution or resale to others, and he will not permit any other person to acquire a beneficial interest in the limited partnership interest without the consent of the General Partner. He understands that the limited partnership interests have not been registered under the Securities Act of 1933, as amended (the "Act"), and he agrees that his interest in the Partnership may not be sold, transferred or otherwise disposed of except pursuant to an exemption from registration under the Act. He will not assign his interest in the Partnership or any beneficial interest therein, in whole or in part, to any other person, nor will he be entitled to substitute for himself as a limited partner any other person, except with the written consent of the General Partner in his sole discretion.

4

(2)  He understands the effect of the limitations on disposition and of his representation that his interest in the Partnership will not be sold, transferred or otherwise disposed of except pursuant to an exemption from registration under the Act.  He understands that transfers can be made only with the consent of the General Partner, in his sole discretion.

(e)  No person is acting or authorized to act as his Purchaser Representative in connection with his capital contribution to the Partnership, except the person set forth on the last page of this Agreement as his Purchaser Representative.

**SIXTH:**  If the Subscriber is a corporation, partnership, trust or other entity, the person executing this Agreement and the Limited Partnership Agreement for the Subscriber has the full power and authority under the Subscriber's governing instruments to do so and the Subscriber has the full power and authority under is governing instruments to become a limited partner in the Partnership.

**SEVENTH:**  If the Subscriber is a corporation, partnership, trust or other entity, it recognizes that the Partnership is restricted by law as to the number of beneficial interests held in the Partnership, and, that in determining the number of beneficial interests, it may be necessary to count the beneficial owners of the Subscriber if it owns 10% or more of the limited partners' interests in the Partnership.  Accordingly, the Subscriber agrees to take whatever action is requested by the Partnership to have its interest in the Partnership be less than 10% of the total interests of the limited partners and expressly agrees that the General Partner of the Partnership may require the Subscriber to withdraw at any time so much of its interest as is necessary to keep such interest below 10%.

**EIGHTH:**  If the Subscriber is a pension plan of an IRA, the Subscriber recognizes that the Partnership will be operated such that less than 25% of the Limited Partnership interests in the Partnership will be owned by "benefit plan investors" within the meaning of the regulations promulgated under ERISA.  Accordingly, such Subscriber expressly agrees that the General Partner of the Partnership may require the Subscriber to withdraw at any time so much of its interest as is necessary to keep the interests of "benefit investors" below such 25% limit.

**NINTH:**  If the Subscriber is a pension plan, IRA or other tax-exempt entity, it is aware that it may be subject to Federal income tax on any unrelated business taxable income from its investment in the Partnership.

**TENTH:**  The Subscriber hereby agrees that any representation made hereunder will be deemed to be reaffirmed by the Subscriber at any time the Subscriber makes an additional capital contribution to the Partnership and the act of making such additional contribution will be evidence of such reaffirmation.

**ELEVENTH:**  This Agreement shall inure to the benefit of and be binding upon each of the parties hereto, his or its heirs and legal representatives.

**TWELFTH:**  This Agreement may be executed in counterparts, all of which when taken together shall be deemed one original.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement this _~~26~~_ day of _Aug_, _2004_.

PEERSTATE EQUITY FUND, L.P.

By: _____

Robert N. Getz, LLC
General Partner

Subscriber:

_Richard    Coppolino_
Type in Name of Subscriber

_____
Signature of Subscriber
or Authorized Signatory

_____
Name and Title of Authorized Signatory

_2409_
Taxpayer Identification or
Social Security Number of Subscriber

Purchaser Representative
(if any):

Name: _____

Address: _____

_____

_____

6

Dollar Amount of Units of Limited Partnership
Interest Subscribed For:

$ _500,000__

Residence Address of Subscriber:

_5 Paddock Ct_
_Holmdel, NJ   07733_

    If  the Subscriber is an IRA or self-directed pension plan, the individual who
established the IRA of the individual who directed the pension plan's investment in the
Partnership, as the case may be, (i) has signed below to indicate that he hereby represents and
warrants for himself those representations set forth in Sections Fourth, Fifth, Eighth, Ninth and
Tenth above and (ii) has caused the custodian or trustee of the Subscriber to execute the Limited
Partnership Agreement of the Partnership and to execute this Agreement on the line set forth
above for Authorized Signatory.

_____
Type in name

_____
Signature

Dollar Amount of Units of Limited Partnership
Interest Subscribed For: oo

$ _500,000_

Residence Address of Subscriber:

_5 Paddock Ct_
_Holmdel, NJ  07733_

If  the Subscriber is an IRA or self-directed pension plan, the individual who
established the IRA of the individual who directed the pension plan's investment in the
Partnership, as the case may be, (i) has signed below to indicate that he hereby represents and
warrants for himself those representations set forth in Sections Fourth, Fifth, Eighth, Ninth and
Tenth above and (ii) has caused the custodian or trustee of the Subscriber to execute the Limited
Partnership Agreement of the Partnership and to execute this Agreement on the line set forth
above for Authorized Signatory.

_____
Type in name

_____
Signature