# EXHIBIT A

## FORM OF AGREEMENT BETWEEN
## TRUSTEE AND UNION BANCAIRE PRIVÉE AND M-INVEST LIMITED

## AGREEMENT

This AGREEMENT, dated as of December 6, 2010 is made by and among IRVING H. PICARD, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA") of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and UNION BANCAIRE PRIVÉE, UBP S.A., a Swiss private bank ("UBP"), and M-INVEST LIMITED, a Cayman Islands corporation ("M-Invest"), on the other hand (each of the Trustee, UBP, and M-Invest, a "Party" and, collectively, the "Parties").

## BACKGROUND

A.     Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B.     On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.     On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. At a plea hearing on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS. On June 29, 2009, Madoff was sentenced to 150 years in prison.

D.     On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789(BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

E.     UBP is a private bank organized under Swiss law and based in Geneva, Switzerland. Affiliates of UBP act as sponsors and managers to various funds of hedge funds, some of which held investments in investment funds that either held accounts with BLMIS or invested in other funds that had accounts at BLMIS. Additionally, clients of UBP or its affiliates, not disclosed to the Trustee, held investments in investment funds that either held

accounts with BLMIS or invested indirectly in BLMIS, in many cases through the nominee entity Fidulex Management Inc., a wholly owned subsidiary of UBP ("Fidulex").

F.     M-Invest is a Cayman Islands corporation. UBP created M-Invest for the sole purpose of investing assets into BLMIS. M-Invest's directors held management level positions at UBP. M-Invest maintains a bank account at the Nassau, Bahamas branch of UBP. Union Bancaire Privée Asset Management (Bermuda) Limited ("UBPAM Bermuda"), an affiliate of UBP, acts as manager for M-Invest. M-Invest was a customer of BLMIS and maintained a customer account (the "M-Invest BLMIS Account"), Account 1FR1094, with BLMIS, commencing in January 2003. The M-Invest BLMIS Account Holder is listed as Attachment A to this Agreement. Between January 2003 and the Filing Date, M-Invest deposited $884,790,000 into the M-Invest BLMIS Account and withdrew $344,000,000 from the M-Invest BLMIS Account. On an overall basis, M-Invest thus deposited $540,790,000 in excess of the amount of its withdrawals from the M-Invest BLMIS Account.

G.     M-Invest withdrew $225,000,000 from the M-Invest BLMIS Account within 90 days before the Filing Date (the "M-Invest 90-Day Withdrawals"). M-Invest withdrew an additional $119,000,000 from the M-Invest BLMIS Account between September 2005 and the commencement of the 90-day period before the Filing Date (the "M-Invest Pre-90 Day Withdrawals," collectively with the M-Invest 90-Day Withdrawals, the "M-Invest Withdrawals").

H.     During the period in which M-Invest had an account at BLMIS, M-Invest's account statements from BLMIS showed that BLMIS withheld $6,950,445.37 from dividends reportedly paid to M-Invest. BLMIS paid that amount to the United States Internal Revenue Service (the "Withholding Tax Payments"). The Trustee has taken the position that any claim against the Internal Revenue Service for a refund of the Withholding Tax Payments (the "Withholding Tax Claim") belongs to the BLMIS estate.

I.     M-Invest filed a timely customer claim with the Trustee for recovery from the BLMIS estate (the "M-Invest Customer Claim"). The M-Invest Customer Claim, including the relevant BLMIS Account Number (1FR094), is included as Attachment B to this Agreement. The M-Invest Customer Claim asserts that M-Invest is entitled to allowance of a customer claim in the SIPA Proceeding in an amount reflected on M-Invest's BLMIS account statement for the period ended November 30, 2008. In the alternative, the M-Invest Customer Claim asserts that M-Invest is entitled to a customer claim in an amount equal to $540,790,000 plus interest on each deposit with BLMIS at an annual rate of 9% since the date of such deposit. The M-Invest Customer Claim also asserts that M-Invest is entitled to allowance of a customer claim in the SIPA Proceeding for all amounts recovered by the Trustee by virtue of any avoidance action against M-Invest. The Trustee has disputed that M-Invest is entitled to allowance of a customer claim in the amount reflected on its November 30, 2008 BLMIS account statement. The Trustee also disputes that M-Invest is entitled to interest as a component of the claim. On March 1, 2010, Honorable Burton R. Lifland, of the Bankruptcy Court, issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between investments into BLMIS and amounts withdrawn. On March 8, 2010, Judge Lifland entered an order implementing the decision and certifying it for immediate appeal to the United States Court of Appeals for the Second Circuit.

2

J.    UBP and certain of its affiliates, including Fidulex, invested, as a nominee or custodian for clients, in certain funds (other than M-Invest), which are identified in Attachment C to this Agreement, that were customers of, or had direct or indirect exposure to, BLMIS (the "BLMIS Feeder Funds"). BLMIS Feeder Funds were investment vehicles that invested assets through BLMIS via customer accounts with BLMIS's investment advisory business. In addition, UBP, including UBP Asset Management LLC ("UBPAM") and Union Bancaire Privée (Luxembourg) SA, acts or acted as manager or investment advisor to certain funds, including funds in the "Selectinvest" and "Dinvest" fund families, that each invested a portion of their assets in M-Invest and BLMIS Feeder Funds. UBP, its affiliates, and certain funds identified on Attachment D to this Agreement for which UBP affiliates act or acted as primary investment manager or advisor made redemptions from BLMIS Feeder Funds in a total amount of approximately $715,561,046.51 (collectively, the "Redemptions From BLMIS Feeder Funds"), which amount includes redemptions from Fairfield Sentry Ltd. (the "Fairfield Sentry Redemptions") and redemptions from Fairfield Sigma Ltd. (the "Fairfield Sigma Redemptions").

K.    Chester Global Strategy Fund Ltd. ("Chester"), Chester Global Strategy Fund LP ("Chester LP"), Irongate Global Strategy Fund Ltd. ("Irongate"), and Irongate Absolute Ltd. ("Irongate Absolute") (collectively, the "Chester and Irongate Family of Funds") were funds of funds for which Fairfield Greenwich Advisors, LLC acted as investment manager. UBP acted as custodian bank, lender and/or sub-investment advisor for Chester, Chester LP, Irongate, and Irongate Absolute, and UBP or Fidulex acted as nominee shareholder for investments by each of Chester, Chester LP, Irongate and Irongate Absolute in M-Invest and BLMIS Feeder Funds.

L.    UBP and its affiliates earned certain fees for serving as custodian, manager or advisor to M-Invest and to funds and clients that invested in BLMIS Feeder Funds. In addition, UBP extended loans to certain funds and clients, including Chester and Irongate, that made investments in M-Invest and BLMIS Feeder Funds, and UBP earned interest on such loans.

M.    M-Invest, UBP and its affiliates, and the funds for which UBP affiliates act or acted as manager or investment advisor deny that they have liability to the Trustee.

N.    The Trustee would assert, among other things, that UBP created M-Invest, and that UBP and M-Invest are liable to the BLMIS estate under 11 U.S.C. §§ 547 and 550 for the M-Invest 90-Day Withdrawals. The Trustee would assert that UBP and M-Invest are liable to the BLMIS estate under 11 U.S.C. §§ 548 and 550 for the withdrawals M-Invest made from BLMIS during the two years prior to the Filing Date, including the M-Invest Pre-90 Day Withdrawals. The Trustee would also assert that UBP and M-Invest are liable to the BLMIS estate under 11 U.S.C. §§ 544(b) and 550 and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for withdrawals M-Invest made from BLMIS during the six years prior to the Filing Date, including the M-Invest Pre-90 Day Withdrawals.

O.    The Trustee would assert that UBP is liable to the Trustee for the Redemptions From BLMIS Feeder Funds as customer property that was transferred from BLMIS through transfers avoidable under 11 U.S.C. §§ 544, 547, 548, and/or the New York Debtor and Creditor Law §§ 273-281, and recoverable under 11 U.S.C. § 550.

3

P.    All claims of the Trustee under 11 U.S.C. §§ 544, 547, 548 or 550 and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

Q.    In connection with the Trustee's Avoiding Power Claims, the Trustee issued subpoenas to M-Invest, UBP and UBPAM Bermuda under Fed. R. Bankr. Proc. 2004 (collectively, the "Subpoenas"). M-Invest, UBP, and UBPAM Bermuda contested the Trustee's authority to enforce the Subpoenas outside the United States, but agreed to produce documents and information on a voluntary basis to the Trustee in connection with settlement discussions and then agreed to provide documents consistent with the Protective Order entered into on February 16, 2010 by the Bankruptcy Court. M-Invest, UBP and certain UBP affiliates have produced documents and other information to the Trustee. In addition, the Trustee has conducted interviews and depositions of former employees of UBP or affiliates and has conducted his own investigation from third-party sources with reference to UBP as they relate to BLMIS.

R.    Fairfield Sentry Ltd. and Fairfield Sigma Ltd., acting through their joint liquidators (the "Fairfield Liquidators"), have commenced lawsuits against Fidulex and unidentified beneficial shareholders of Sentry or Sigma that held their shares in Fidulex's name seeking to recover all or a portion of the Fairfield Sentry Redemptions and the Fairfield Sigma Redemptions. Three such lawsuits are currently pending in the United States Bankruptcy Court for the Southern District of New York under the captions *Fairfield Sentry Limited v. Fidulex Management Inc. et al.*, No. 10-03751-BRL; *Fairfield Sentry Limited v. ABN AMRO Schweiz AG et al.*, No. 10-03635-BRL; and *Fairfield Sentry Limited v. ABN AMRO Schweiz AG et al.*, No. 10-03636-BRL, and one such lawsuit is currently pending in the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands under the caption *Fairfield Sentry Ltd. v. Migani et al.*, Claim No. BVIHC (COM) 357/2009.

S.    Contemporaneous with the execution of this Agreement, the Parties have entered into an agreement with the Fairfield Liquidators, pursuant to which the Fairfield Liquidators have agreed: (a) to dismiss with prejudice all claims that they have asserted in any forum against Fidulex and all beneficial shareholders of Fairfield Sentry Ltd. and Fairfield Sigma Ltd. that invested in Fidulex's name, excluding the Chester and Irongate Family of Funds; and (b) to provide releases to UBP, its affiliates and clients that made redemptions through UBP or its affiliates.

T.    UBP and M-Invest have disputed any liability to the BLMIS estate. UBP and M-Invest have submitted that M-Invest, UBP or UBP affiliates, as applicable, took the M-Invest Withdrawals or the Redemptions From BLMIS Feeder Funds for value and in good faith. UBP has further disputed that Redemptions From BLMIS Feeder Funds are traceable to property transferred from BLMIS through avoidable transfers. UBP and M-Invest have also raised other defenses to liability, including as to the M-Invest 90-Day Withdrawals. Nevertheless, UBP and M-Invest recognize that there is litigation risk associated with the Avoiding Power Claims and have decided to settle with the Trustee prior to a lawsuit being filed against them.

U.    While the Trustee believes that he would prevail at trial in recovering the M-Invest Withdrawals and the Redemptions From BLMIS Feeder Funds from UBP and/or M-

Invest, he also recognizes that there is litigation risk associated with his Avoiding Power Claims as against these entities.

V.    Based on the foregoing, the Trustee, on the one hand, and UBP and M-Invest, on the other hand, wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation. UBP and M-Invest are entering into this Agreement to obtain complete peace with respect to these matters and without any concession of fault or liability on the part of UBP or M-Invest.

W.    As a condition to settling the disputes, which involves releasing claims against UBP and M-Invest and the allowance of a customer claim in favor of M-Invest in the SIPA Proceeding, the Trustee conducted a comprehensive investigation which included the review of UBP and M-Invest BLMIS-related transaction histories, interviews of witnesses, account statements, correspondence, other records, Bankruptcy Rule 2004 examinations and substantial review and analysis of third-party records and documents.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee, UBP, and M-Invest agree as follows:

## TERMS

1.    UBP and M-Invest Agreement to Bankruptcy Court Jurisdiction.  For purposes of this Agreement only, M-Invest and UBP agree that they are subject to the jurisdiction of the Bankruptcy Court for the purpose of the SIPA Proceeding and any Avoiding Power Claims that the Trustee may bring against them.  UBP's and M-Invest's agreement to Bankruptcy Court jurisdiction under this paragraph does not constitute consent by any other entity or individual to the Bankruptcy Court's jurisdiction or an agreement that UBP or M-Invest is subject to the Bankruptcy Court's jurisdiction for any other purpose.

2.    UBP's Payment to Trustee.  UBP and M-Invest shall pay the Trustee the sum of Four Hundred Seventy Million Dollars ($470,000,000) (the "Settlement Payment") by wire transfer at the Closing (as defined in paragraph 12), plus potentially, an additional amount to be determined according to the conditions specified in paragraph 3, in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS estate against UBP or M-Invest.

3.    UBP Guarantee to the Trustee.  UBP agrees to pay to the Trustee the UBP Guarantee Payment as defined below, by wire transfer within five (5) business days after the following condition is satisfied: a final judgment, or a final order approving a settlement, or a negotiated resolution is entered in all actions brought by the Trustee against the Chester and Irongate Family of Funds.  The "UBP Guarantee Payment" shall be the difference between (a) $30,000,000, and (b) the sum of all amounts received by or awarded to, by way of settlement, negotiated resolution, or judgment, the Trustee in such actions on account of redemptions by the Chester and Irongate Family of Funds from BLMIS Feeder Funds through UBP or a UBP affiliate.  In the event that the Trustee recovers or is awarded $30,000,000 or more from the

Chester and Irongate Family of Funds in such actions, UBP shall have no obligation to pay the Trustee any UBP Guarantee Payment.

4.  Allowance of M-Invest Customer Claim. Upon the occurrence of the Closing (as defined in paragraph 12), M-Invest shall have an allowed customer claim in the SIPA Proceeding in the amount of Seven Hundred Forty Million Seven Hundred Ninety Thousand Dollars ($740,790,000) ("Claim Amount") and shall be entitled to the full benefit of SIPC customer advances under section 9 of SIPA. The Claim Amount includes an original M-Invest claim in the amount of $540,790,000 (the "Original M-Invest Claim") and a "springing claim" in the amount of $200,000,000. The Trustee shall make a distribution to M-Invest on account of its allowed claim in the amount of $500,000 in respect of the customer advance to the Trustee under section 9 of SIPA, as provided in paragraph 12. Notwithstanding any other language in this Agreement, in the event that, as a result of a judicial determination of the issue or otherwise, customer claims against BLMIS are ultimately calculated based on the positions reported in account statements sent to customers by BLMIS, or to include other amounts beyond the difference between deposits into and withdrawals from BLMIS (including, for example, if customers are entitled to receive interest on their deposits with BLMIS), the Original M-Invest Claim shall be calculated in the same manner as other allowed customer claims are calculated. The Bankruptcy Court's order approving this Agreement shall provide for the allowance of M-Invest's customer claim as provided in this paragraph.

5.  Impact of UBP Guarantee Payment on M-Invest Customer Claim. In the event that UBP pays to the Trustee all or part of the UBP Guarantee Payment pursuant to paragraph 3 above, an additional "springing claim" in the amount of fifty percent (50%) of the sum UBP pays to the Trustee shall be added to the Claim Amount, described in paragraph 4 (e.g., if UBP pays the full UBP Guarantee Payment, M-Invest's allowed Customer Claim increases by Fifteen Million Dollars ($15,000,000) to Seven Hundred Fifty-Five Million Seven Hundred Ninety Thousand Dollars ($755,790,000); if UBP pays zero ($0) on the UBP Guarantee Payment, M-Invest's allowed claim remains at Seven Hundred Forty Million Seven Hundred Ninety Thousand Dollars ($740,790,000)).

6.  Assignment and Waiver of Withholding Tax Claim. Upon the occurrence of the Closing (as defined in paragraph 12), M-Invest shall assign to the Trustee any and all rights it may have with respect to the Withholding Tax Claim and waive any and all rights it may have to any recovery on such claim.

7.  Release by Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Closing (as defined in paragraph 12) the Trustee shall release, remise and forever discharge: (i) M-Invest, UBP, all affiliates of UBP, and funds identified on Attachment D to this Agreement (collectively, the "UBP Group") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing or arising thereafter, that are, have been, could have been or might in the future be asserted by the Trustee; (ii) all past or present directors, officers, employees, indirect or direct shareholders, limited partners, principals, successors,

6

assigns, agents, representatives, accountants, administrators, and attorneys of entities in the UBP Group (collectively with the UBP Group, the "UBP Releasees") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing or arising thereafter, that are, have been, could have been or might in the future be asserted by the Trustee and that arise out of actions, statements, conduct or omissions relating to any entity in the UBP Group; and (iii) all direct and indirect transferees of any entity within the UBP Group, including all entities or individuals for whom UBP or a UBP affiliate acted as nominee shareholder or custodian or sub-custodian, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing or arising thereafter, that are, have been, could have been or might in the future be asserted by the Trustee and that arise out of transfers made by BLMIS directly or indirectly to any entity in the UBP Group; provided, however, that: (a) notwithstanding any other provision hereof, the release set forth in this paragraph shall not release the Chester and Irongate Family of Funds (or their successors or assigns) from liability arising out of any Chester and Irongate Family of Funds redemptions from BLMIS Feeder Funds outside the 90-day period preceding the Filing Date; and (b) notwithstanding any other provision hereof, the release set forth in this paragraph shall not release the individuals or entities set forth on Attachment E to this Agreement except with respect to any claims arising out of the M-Invest 90-Day Withdrawals. The list of individuals and entities set forth on Attachment E should not be understood to suggest or imply that any such individuals or entities are clients of the UBP Group and/or made redemptions through any member of the UBP Group in respect to BLMIS. For the avoidance of doubt, the release set forth in this paragraph shall release the Chester and Irongate Family of Funds (and their successors and assigns) from any and all liability arising out of any Chester and Irongate Family of Funds' redemptions from M-Invest. Each of the individuals and entities released pursuant to clauses (i) to (iii) of this paragraph is referred to herein as a "Releasee."

The release contained herein shall become effective upon the Trustee's actual receipt of the Settlement Payment under paragraph 2 without any further action by any of the Parties.

8.    Release of Trustee by Releasees. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the claims set forth in paragraphs 4 and 5 and any rights arising under this Agreement, each of the Releasees to the extent they may be bound by UBP or M-Invest, hereby releases, acquits and absolutely discharges the Trustee and all his agents, BLMIS and its consolidated estate, from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements),

known or unknown, existing as of the date of the Closing or arising thereafter, arising out of or in any way related to BLMIS or the M-Invest BLMIS Account.

The release contained herein shall become effective upon the Trustee's actual receipt of the Settlement Payment under paragraph 2 without any further action by any of the Parties.

9. Withdrawal of Discovery. Upon the Closing (as defined in paragraph 12), the Trustee shall withdraw the Subpoenas and shall not seek any other discovery, by subpoena or otherwise, from any UBP Releasee or from any other Releasee in connection with matters covered by the releases in this Agreement.

10. Filing of Customer Claims. M-Invest and UBP agree that only M-Invest is entitled to file a customer claim in the SIPA Proceeding on account of the M-Invest BLMIS Account. UBP further agrees that none of the entities within the UBP Group (as defined in paragraph 7) is entitled to file a customer claim in the SIPA Proceeding in respect of any BLMIS customer account held by any BLMIS Feeder Fund. UBP further represents that, of the entities within the UBP Group (as defined in paragraph 7), only M-Invest has filed a customer or other claim in the SIPA Proceeding.

11. Claims by Third Parties. In the event that (i) any of the BLMIS Feeder Funds obtains a judgment against or settlement from a UBP Releasee or from any other Releasee in connection with matters covered by the releases in this Agreement, and (ii) the Trustee obtains a payment or any kind of distribution from such BLMIS Feeder Fund that is attributable to amounts paid by the UBP Releasee or Releasee to the BLMIS Feeder Fund on account of such judgment or settlement, then the Trustee shall remit and/or credit all such amounts received from the BLMIS Feeder Fund to the relevant UBP Releasee or Releasee.

12. Closing. There shall be a closing ("Closing") within five (5) business days after the date on which this Agreement becomes effective and binding on the Parties under paragraph 13, on a date agreed by the Parties, at the offices of Trustee's counsel in New York, N.Y. At the Closing: (a) UBP shall make the Settlement Payment required under paragraph 2; (b) the Trustee shall pay M-Invest $500,000 from SIPC advances under section 9 of SIPA, which amount may be paid by setoff against the payment required under paragraph 2; (c) M-Invest's assignment to the Trustee and waiver of any and all rights it may have with respect to the Withholding Tax Claim under paragraph 6 of this Agreement shall become effective without any further action by any of the Parties; and (d) the releases contained in paragraphs 7 and 8 shall become effective without any further action by any of the Parties.

13. Bankruptcy Court Approval, Effective Date, Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing. The form of the approval order shall be subject to M-Invest's and UBP's reasonable approval. The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement. The Trustee shall provide M-Invest and UBP a draft of any motion to the Bankruptcy Court for approval of this Agreement, which shall be subject to M-Invest's and UBP's reasonable approval. If this Agreement has not

become effective as provided in this paragraph within 45 days after the date of this Agreement or within such additional time as M-Invest and UBP in their sole discretion permit, then (a) this Agreement (other than this paragraph and paragraphs 23 and 24) shall terminate and be void, (b) all of the statements, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 23 and 24) shall be void and (c) none of the Trustee, M-Invest, UBP, or any other person may use or rely on any such statement, consent or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff. There shall be no other basis for termination of this Agreement by any Party.

14. <u>Confidential Information</u>. Neither the Trustee nor any of his agents or representatives shall disclose any non-public documents or other information produced by any entity in the UBP Group ("<u>Confidential Information</u>") to any person or entity. Notwithstanding the foregoing, the Trustee may disclose Confidential Information if and to the extent such disclosure is required by administrative or judicial order; <u>provided, however</u>, that the Trustee shall provide UBP and M-Invest with timely advance written notice of any subpoena or other request for production of Confidential Information.

15. <u>UBP and M-Invest Authority</u>. UBP and M-Invest represent and warrant to the Trustee as of the date hereof that each of them is duly organized, validly existing, and in good standing under the laws of its jurisdiction of formation and that each of them has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under, this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

16. <u>No admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability or wrongdoing whatsoever.

17. <u>Further Assurances</u>. The Trustee, UBP and M-Invest shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

18. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

19. <u>Amendments, Waiver</u>. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

20. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

21.    Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

22.    No Third Party Beneficiary. Except as expressly provided in paragraphs 7, 8, 9, and 11, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

23.    Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

24.    Exclusive Jurisdiction. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No party shall bring, institute, prosecute, or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

25.    Captions and Rules of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

26.    Counterparts, Electronic Copy of Signatures. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

27.    Termination of M-Invest Agreement with BLMIS. All agreements between M-Invest and BLMIS are terminated as of the Closing.

28.    Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee: | If to UBP and M-Invest, c/o: |
|---|---|
| Irving H. Picard | Herbert M. Wachtell |
| E: ipicard@bakerlaw.com | E: hmwachtell@wlrk.com |
| Baker & Hostetler LLP | Wachtell, Lipton, Rosen & Katz |
| 45 Rockefeller Center, Suite 1100 | 51 West 52nd Street |
| New York, NY 10111 | New York, NY 10019 |
| F: (212) 589-4201 | F: (212) 403-2216 |

with copies to:

David J. Sheehan                              Stephen R. DiPrima

E: dsheehan@bakerlaw.com
Marc Hirschfield
E: mhirschfield@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

E: srdiprima@wlrk.com
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
F: (212) 403-2382

[Signature page follows]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

UNION BANCAIRE PRIVÉE, UBP S.A.

By: _____

    Name:

    Title:

M-INVEST LIMITED

By: _____

    Name:

    Title:

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

UNION BANCAIRE PRIVÉE, UBP S.A.

By: _____

Name: Georges PITTET

Title: Managing Director

By: _____

Name: Frédéric HELBLING

Title: Executive Director

M-INVEST LIMITED

By: _____

Name: Anne-Claude HAENNI

Title: Director

12

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

UNION BANCAIRE PRIVÉE, UBP S.A.

By: _____

    Name:

    Title:

M-INVEST LIMITED

By: _____

    Name: Elaine MISKIEWICZ

    Title: Director

12

**ATTACHMENT A**

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| M-INVEST LIMITED   CRAIGMUIR CHAMBERS P O BOX 71 | 1FR094 |

**ATTACHMENT B**

Bernard L. Madoff Investment Securities LLC
Case No 08-01789 (BRL)
U.S. Bankruptcy Court for the Southern District of New York
Claim Number          011149

## CUSTOMER CLAIM

Claim Number_____

Date Received_____ **RECEIVED**

JUN 2 5 2009

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: __H-INVEST LIMITED__
Mailing Address: __CENTURY YARD, CRICKET SQUARE, HUTCHINS DRIVE, P.O. BOX 2681__
City: __GRAND CAYMAN,__ State: __CAYMAN ISLANDS__ Zip: __KY1-1111__
Account No.: __1-FR094-3-0/1-FR094-4-0__
Taxpayer I.D. Number (Social Security No.): _____

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

**************************************************************

1.   Claim for money balances as of December 11, 2008:   SEE CUSTOMER CLAIM OF
                                                          H-INVEST LIMITED AND
                                                          $ EXHIBIT 71 THERETO

   a.   The Broker owes me a Credit (Cr.) Balance of    $_____

   b.   I owe the Broker a Debit (Dr.) Balance of       $_____

   c.   If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, it must be enclosed

        with this claim form.                           $_____

   d.   If balance is zero, insert "None."              _____

2.　Claim for securities as of **December 11, 2008:** SEE CUSTOMER CLAIM OF X-INVEST LIMITED AND EXHIBIT 71 THERETO

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities |  |  |
| b. | I owe the Broker securities |  |  |
| c. | If yes to either, please list below: |  |  |

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |  | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Herbert M. Wachtell

Emil A. Kleinhaus

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, N.Y.  10019
(212) 403-1000

102130406

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date 24 June 2009     Signature

Date _____     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

3021 69406                                    4

RECEIVED

JUN 2 5 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                    :
                                          :   District Court Case No. Civ. 08-10791
BERNARD L. MADOFF                         :
INVESTMENT SECURITIES LLC,                :   Adv. Pro. No. 08-01789 (BRL)
                                          :
        Debtor.                           :
                                          :

## CUSTOMER CLAIM OF M-INVEST LIMITED

M-Invest Limited (the "Claimant") hereby submits this customer claim (the "Claim") against debtor Bernard L. Madoff Investment Securities LLC (the "Debtor") and Bernard L. Madoff.

1.      The Claimant is duly organized under the law of the Cayman Islands and registered under the Mutual Funds Law. Attached hereto as Exhibit 125 are the Articles of the Claimant.

2.      The Claimant held two accounts with the Debtor, a securities account (# 1-FR094-3-0) and an options account (# 1-FR094-4-0). The customer agreements associated with those accounts are submitted herewith as Exhibits 72 and 73. Monthly statements received from the Debtor for both accounts from January 2003 through November 2008 are submitted herewith as Exhibits 1 through 71.

3.      This document constitutes the Claimant's customer claim against the Debtor. The Claimant is also submitting the customer claim form distributed by the trustee for the Debtor's liquidation (the "Trustee"), which is attached hereto as Annex A and covers the Claimant's securities and options accounts with the Debtor. This document and the annexed customer claim form have been duly executed by Elaine Miskiewicz, who is a director of the Claimant and has the authority to bind the Claimant pursuant to the Articles of the Claimant and a resolution of the Board of Directors of the Claimant. See Exhibit 126 (Declaration of Elaine Miskiewicz).

4.      According to the last account statements received by the Claimant from the Debtor, as of November 30, 2008 the Claimant had a net securities position valued at $806,659,533.05 and a net cash balance of 77 cents, with a total net equity position of $806,659,533.82. See Exhibit 71. The Claimant has not located tickets evidencing trades in either of its accounts since November 30, 2008. Nor has the Claimant made any deposits or withdrawals from either account since November 30, 2008. Accordingly, the Claimant hereby

makes a claim for the securities and cash reflected in its account statements as of November 30, 2008.

     5.     The Trustee has taken the position that the net equity claim of a customer of the Debtor should in the instant circumstances be based upon the difference between deposits into and withdrawals from the customer's account(s) with the Debtor. All deposits into and withdrawals from the Claimant's accounts with the Debtor are reflected in the monthly statements received by the Claimant for its securities account (# 1-FR094-3-0); the Claimant did not make deposits into or withdrawals from its options account (# 1-FR094-4-0). *See* Exhibits 1 through 71. Attached hereto as Exhibits 74 through 124 are documents evidencing all of the Claimant's deposits and withdrawals — including, for each deposit and withdrawal, a duplicate of the relevant page from the Claimant's securities account statement and, to the extent available, a duplicate of the relevant transfer advice. *See* Exhibits 74 through 124. The Claimant's deposits into and withdrawals from its securities account with the Debtor are compiled in the chart below.

| Date | Deposit | Withdrawal | Exhibit |
|---|---|---|---|
| 31-Jan-2003 | $85,000,000 | | 74 |
| 28-Mar-2003 | $16,000,000 | | 75 |
| 30-May-2003 | $37,000,000 | | 76 |
| 30-Jun-2003 | $17,000,000 | | 77 |
| 31-Jul-2003 | $20,000,000 | | 78 |
| 5-Aug-2003 | $11,150,000 | | 79 |
| 29-Aug-2003 | $5,550,000 | | 80 |
| 30-Sept-2003 | $5,300,000 | | 81 |
| 1-Oct-2003 | $4,000,000 | | 82 |
| 31-Oct-2003 | $1,500,000 | | 83 |
| 28-Nov-2003 | $920,000 | | 84 |
| 28-Nov-2003 | $3,790,000 | | 85 |
| 28-Nov-2003 | $7,500,000 | | 86 |
| 2-Dec-2003 | $2,000,000 | | 87 |
| 30-Dec-2003 | $9,100,000 | | 88 |
| 30-Dec-2003 | $4,000,000 | | 88 |
| 30-Jan-2004 | $3,750,000 | | 89 |
| 1-Mar-2004 | $16,550,000 | | 90 |
| 1-Apr-2004 | $9,580,000 | | 91 |
| 3-May-2004 | $6,650,000 | | 92 |
| 1-Jun-2004 | $3,100,000 | | 93 |
| 1-Jul-2004 | $10,550,000 | | 94 |
| 2-Aug-2004 | $1,500,000 | | 95 |
| 1-Sept-2004 | $1,100,000 | | 96 |
| 1-Oct-2004 | $7,000,000 | | 97 |
| 1-Nov-2004 | $6,450,000 | | 98 |
| 1-Dec-2004 | $3,000,000 | | 99 |

| Date | Deposits | Withdrawals | |
|---|---|---|---|
| 3-Jan-2005 | $11,000,000 | | 100 |
| 1-Feb-2005 | $7,000,000 | | 101 |
| 1-Mar-2005 | $7,750,000 | | 102 |
| 2-Jun-2005 | $2,000,000 | | 103 |
| 9-Nov-2005 | | $20,000,000 | 104 |
| 6-Jan-2006 | | $34,000,000 | 105 |
| 1-Feb-2006 | $10,000,000 | | 106 |
| 5-Apr-2006 | | $40,000,000 | 107 |
| 12-Jul-2006 | $28,000,000 | | 108 |
| 10-Aug-2006 | $5,000,000 | | 109 |
| 14-Sept-2006 | $16,000,000 | | 110 |
| 10-Oct-2006 | $5,000,000 | | 111 |
| 10-Jan-2007 | $6,000,000 | | 112 |
| 7-Mar-2007 | $12,000,000 | | 113 |
| 8-Mar-2007 | $13,000,000 | | 114 |
| 1-May-2007 | $150,000,000 | | 115 |
| 29-Jun-2007 | $45,000,000 | | 116 |
| 31-Oct-2007 | $173,000 | | 117 |
| 2-Nov-2007 | $172,827,000 | | 118 |
| 14-Jan-2008 | | $25,000,000 | 119 |
| 4-Jun-2008 | $80,000,000 | | 120 |
| 3-Jul-2008 | $15,000,000 | | 121 |
| 19 Sept-2008 | | $12,000,000 | 122 |
| 10-Oct-2008 | | $13,000,000 | 123 |
| 13-Nov-2008 | | $200,000,000 | 124 |
| Total | $884,790,000 | $344,000,000 | |

6. To the extent that the Claimant's net equity position will be determined, as stated by the Trustee, based upon the difference between its deposits into and its withdrawals from its accounts with the Debtor, the Claimant hereby submits, in the alternative to its claim for the securities and cash reflected in its account statements, a claim for net equity of $540,790,000 — the difference between the Claimant's deposits of principal with the Debtor and its withdrawals of such principal deposits from the Debtor since the Claimant first made deposits with the Debtor in 2003. In addition, the Claimant hereby submits a claim for interest on the amounts of its principal deposits with the Debtor from the date of each such deposit. The Claimant believes that its investments with the Debtor were procured by fraud, misrepresentation and other torts, and submits that its claim against the Debtor should accrue interest at the prejudgment interest rate applicable to such tort claims under New York law. The Claimant thus claims interest through December 11, 2008 of at least $192,677,465.08, which does not include compound interest. The Claimant reserves the right to claim additional interest amounts.

7. Out of an abundance of caution and without acknowledging any liability, the Claimant also hereby submits a claim under 11 U.S.C. § 502(h) and any other applicable law for any and all amounts that may ultimately be recovered by virtue of any avoidance action brought under Title 11 or Title 15 of the United States Code or otherwise. The Claimant

-3-

maintains that it is not a transferee of any avoidable transfer for purposes of Title 11 or Title 15 of the United States Code or otherwise, and hereby reserves all rights and defenses in relation to any claim the Trustee may advance against the Claimant based on any theory.

8.     The Claimant hereby asserts a separate and independent claim against Bernard L. Madoff for all amounts claimed herein. The Claimant expressly reserves the right to assert additional claims against Bernard L. Madoff.

9.     The assertion of claims by the Claimant herein is not a concession or admission as to the correct characterization or treatment of any such claims, nor a waiver of any rights of the Claimant or any of its shareholders or other persons or entities — including without limitation the right of the Claimant's shareholders or other persons or entities to file claims against the Debtor. Except as mandated by law, the execution and filing of this Claim do not constitute, without limitation: (a) a waiver or release of the Claimant's rights against any other entity or person liable for all or any part of the Claim or other losses related to the Claimant's investments with the Debtor or the fraud conducted by Bernard L. Madoff; (b) a consent by the Claimant to the jurisdiction of this Court with respect to any proceeding commenced against or otherwise involving the Claimant; (c) a consent by the Claimant to the treatment of any non-core claim against it as a core claim; (d) a waiver of the right to move to withdraw the reference or to demand a trial by jury with respect to the subject matter of the Claim or otherwise; (e) a waiver of any right to the subordination, in favor of the Claimant, of indebtedness or liens held by other customers or creditors of the Debtor; (f) an election of remedies that waives or otherwise affects any other remedies; (g) a concession or admission that the Claimant has any obligation at law, in equity, or otherwise to turn over any property to the estate of the Debtor pursuant to 15 U.S.C. § 78fff-2(c)(3) or otherwise, or that it is liable to the Trustee or to any person; or (h) a waiver of any other rights or defenses. The Claimant expressly reserves its right to amend and supplement this claim to specify (and/or quantify) additional damages, costs, expenses and other charges or claims incurred by the Claimant, including without limitation claims for post-petition or other interest, legal fees and other expenses or claims based on new, additional or corrected information.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date: 24 June 2009          Signature:

Elaine Miskiewicz
Director, M-Invest Limited
For: M-Invest Limited

-4-

# ATTACHMENT C

## Attachment C

Ascot Fund Ltd.
Ascot Partners LP
Fairfield Sentry Ltd.
Kingate Global Fund (USD)
Greenwich Sentry, L.P.
Groupement Financier II
Hermes Intl - World USD
Luxalpha Sicav American Selection
Mount Capital Fund Ltd.
Primeo Fund Select
Santa Barbara Holdings Ltd. Class A
Santa Barbara Holdings Ltd. Class C
Santa Barbara Holdings Ltd. Class J
Santa Barbara Holdings Ltd. Class D
Santa Barbara II Fund -C/1- USD N.I.
Santa Clara I Fund A
Santa Clara I Fund C
Santa Clara I Fund D
Santa Clara II Fund C
Santa Clara II Fund D
Thema Fund Ltd. - Thema Coral USD
Thema International Fund USD
Thybo International Fund Ltd.
Fairfield Sigma Ltd. EUR
Kingate Euro Fund Ltd.
Hermes Intl - World Euro
Optimal Multiadvisors Srat. US EQ A EUR
Primeo Select Euro FD
Thema Fund Ltd - Thema Coral EUR
Thema International Fund EUR
Hermes Intl - World CHF

**ATTACHMENT D**

## Attachment D

DINVEST
DINVEST – Total Return
DINVEST – Select I
DINVEST – Select II
DINVEST – Select III
DINVEST – Long/Short Europe
DINVEST – Long/Short US
Dinvest Concentrated Opportunities Ltd.
Dinvest Concentrated Opportunities III Exquity Ltd.
TrendSquare Ltd.
TrendSquare II Ltd.
UBP Multi-Strategy Alpha Fund Ltd.
UBAM Alternatif MS
Selectinvest ARV Ltd.
Selectinvest ARV II Ltd.
Selectinvest Institutional ARV Ltd.
Selectinvest ARV LP
Selectinvest Alternative Balanced Fund Ltd.
Selectinvest Alternative Balanced Fund LP
Selectinvest ARV PLUS 1.25x Ltd.
Selectinvest ARV PLUS 1.25x LP
Selectinvest ARV PLUS 2.00x Ltd.
Selectinvest ARV PLUS 2.00x LP
Selectinvest Portable Alpha Fund SPC
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio One – Class II
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio Two – Class I
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio Four – Class I
Selectinvest ARV MC Ltd.
Selectinvest ARV II MC Ltd.
Selectinvest Arbitrage/Relative Value Ltd. (Euro)
Selectinvest Enhanced II Ltd.
Robusta Fund of Hedge Funds II

**ATTACHMENT E**

Schedule of Non-released Feeder Funds and Other Financial Entities under Paragraph 7 of the Agreement

| Column 1 | Column 2 | Column 3 |
|---|---|---|
| 2020 Medici AG | Fairfield Investors (Euro) Limited | Mariadelmar Raula |
| ABN AMRO | Fairfield Investors (Swiss Franc) Limited | Maxam |
| Absolute Portfolio Management | Fairfield Investors (Yen) Limited | Medici Cayman Islands |
| Access International Advisors Europe Ltd. | Fairfield Lambda Ltd. | Medici Finanz Securities, Inc. |
| Access International Advisors LLC | Fairfield Sentry Ltd. | Medici Finanz Services GMBH (Dr. Anton Schwarz GMBH) |
| Access Management Luxembourg SA | Fairfield Sigma Limited | Medici Fund Management Company, Inc. |
| Access Partners (Suisse) SA | Fil Advanced, Ltd. | Medici S.r.l. |
| Alpha Prime Asset Management Ltd. | Fortis Bank | Merrill Lynch |
| Alpha Prime Fund Ltd. (Alpha Prime Equity Hedged Fund) | Genevalor, Benbassat et Cie ("GBC") | Mount Capital Fund |
| Aurelia Asset Management Partners | Geo Currencies Ltd. | Natixis |
| Aurelia Asset Management Partners | Gorfia Beteiligungsverwalt GmbH | Nomura |
| Aurelia Fund Management Limited (Aurelia International (Bermuda)) | Greenwich Bermuda Limited, | Notz Stucki |
| Bank Austria | Greenwich Sentry Partners, L.P. | Palladium Capital Advisors LLC |
| Bank Austria Cayman Islands | Greenwich Sentry, L.P.. | Pioneer Alternative Investment Management Ltd. |
| Bank Austria Worldwide Fund Management Services Ltd. | Groupement Financier Fund | Plaza Investments |
| Bank Medici | GTM Management Services Corp. N.V. | Primeo Fund (Primer Select Fund, Primeo Executive Fund) |
| Bank Medici AG | Harley International Fund | Redcrest Investments, Inc. |
| Bank Medici AG (Gibraltar) | Herald (Lux) SICAV | Regulus Asset Management Limited |
| Bank of Bermuda Ltd. | Herald (Lux) US Absolute Return Fund | Reliance International Research |
| Bank of New York | Herald Asset Management Ltd. | Reliance Management (BVI) Limited |
| Bank Syz | Herald Consult Ltd. | Reliance Management (Gibraltar) Limited |
| BBVA | Herald Fund SPC (Herald USA Segregated One Portfolio) | Rovi Trust Services Establishment |
| Beacon Andover | Hermes Asset Management Limited | Scotia Bank |
| Bernard L. Madoff Investment Securities (BLMIS) (all employees) | Hermes International Fund Limited (Hermes World Fund, Hermes Neutral Fund and Hermes Universal Fund) | Senator Fund |
| BLMIS | HSBC Bank (Cayman) Limited | Senator Fund SPC (Senator Equity Segregated Portfolio One) |
| BNP | HSBC Bank PLC | Sentry Select Limited |
| Brera Servizi Aziendiale S.r.l. | HSBC Bank USA, N | SocGen |
| Cape Investment Advisors Limited | HSBC Holdings, PLC; HSBC Securities Services (Luxembourg) S.A.; HSBC Institutional Trust Services (Ireland) Ltd.; HSBC Securities Services (Ireland) Limited | Sofipo Austria GmbH |
| Cardinal Management | | Sofipro |
| Carrube Asset Management Ltd. | HSBC Institutional Trust Services (Bermuda) Limited | Square One |
| Chester and Irongate | | Stable Fund, |
| Chester Global Strategy Fund | HSBC Private Bank (Suisse) SA | T&M Trusteeship & Management Services, S.A. |
| Chester Global Strategy Fund Limited | HSBC Securities Services (Bermuda) Limited | Tecno Development & Research Ltd. |
| Chester Management Cayman Limited, | Infovaleur, Inc. | Tecno Development & Research S.r.l. |
| Circo (all entities) | Interasset Management, Inc. | Thema Asset Management (Bermuda) Ltd |
| Citigroup | Irongate Global Strategy Fund Limited (all Irongate Funds) | Thema Asset Management Limited (a BVI co) |
| Citrus Investment Holdings | Island Storm Limited | Thema Fund Ltd (Thema Corel Fund) |
| Cohmad Securities Corporation | Isos Fund Limited | Thema International Fund |
| Defender Ltd. | JP Morgan Chase (related entities) | Thema International Fund Plc |
| Equity Trading Inc. | Kingate Euro Fund, Ltd. | Thybo Asset Management |
| Equus Asset Management Limited | Kingate Global Fund Ltd. | Thybo Global Fund Ltd. |
| Equus Asset Management Partners | Lagoon Investment Ltd. | Thybo Return Fund Ltd |
| Erko, Inc. | Lagoon Investment Trust | Thybo Stable Fund. Ltd |
| Eurovaleur, Inc. | Landmark Fund | Tremont Fund |
| Fairfield Greenwich (Bermuda), Ltd. | Line Group Ltd. | Trojancy Investment Fund Ltd. |
| Fairfield Greenwich (Uk) Limited | Line Holdings Ltd. | UBS (Luxembourg) SA; UBS Fund Services (Luxembourg): UBS Third Party Management Company, SA |
| Fairfield Greenwich Advisors LLC | Line Management Services Ltd. | |
| Fairfield Greenwich Fund (Luxembourg) | Luralpha SICAV | UBS AG |
| Fairfield Greenwich Gp, LLC | Luxembourg Investment Fund | Unicredit |
| Fairfield Greenwich Limited | M&B Capital Advisers Gestion SGIIC, S.A. | UniCredit Bank Austria AG |
| Fairfield Greenwich Partners, LLC | M&B Capital Advisers Sociedad de Valores, S.A. | UniCredit S.p.A. |
| Fairfield Heathcliff Capital LLC | | UniCredit S.p.A.. |
| Fairfield International Managers, Inc. | M&B Capital Markets Sociedad de Valores, S.A. | Valeur Entity |
| Fairfield Investment Fund Limited | Madoff Securities International Ltd. (MSIL) | Vizcaya Partner Limited |
| Fairfield Investment Trust | Madoff Securities Investments Limited Management International (Luxembourg) S.A. | Windsor IBC, Inc. |

Schedule of Non-released Persons under Paragraph 7 of the Agreement

| | | |
|---|---|---|
| Oliver Ador | Dr. Karl E. Kaniak | Alessandro Profumo |
| Shlomo (Momy) Amselem | Friedrich Kardnoska | Ursula Radel-Lezczynski |
| Lourdes Barreneche | Manfred Kastner | Gerhard Randa |
| Alberto Benbassat | Erwin Kohn | Steven Raven |
| Mario Benbassat | Robert Alan Kohn | Robert Reuss |
| Stephane Benbassat | Sonja Kohn | Santiago Reyes |
| Netty Blau | Werner Kretschmer | Hannes Saleta |
| Robert Blum | Anne Kritzer | Peter Scheithauer |
| Cornelis Boele | Mordechai Landau | Andreas Schindler |
| Gregory Bowes | Richard Landsberger | Peter Schmid |
| Gerald J.P. Brady | Alberto LaRocca | Bob Schulman |
| Paul Cattaneo | Alexandra Lavi | Alfred Simon |
| Francisco Ceretti | Daniel Lipton | Andrew Smith |
| Wayne P. Chapman | Patrick Littaye | David T. Smith |
| Maurice ("Sonny") Cohn | Bernard L. Madoff (Ruth Madoff, Sons, Brother) | Johannes Spalek |
| John C.R. Collis | | Vladimir Stepczysnki |
| Daniele Cosulich | Sandra Manzke | William D. Thomson |
| Paul de Sury | Laurent Mathysen-Gerst | Thyseen Family (Thybo) |
| Frank DiPascali | Mark McKeefry | Hans Peter Tiefenbacher |
| Josef Duregger | Gordon McKenzie | Paul Tiranno |
| Nigel Fielding | Daniel Morrissey | Philip Toub |
| Peter Fischer | Franco Mugnai | Werner Tripolt |
| Leon Flax | Charles Murphy | Jeffrey Tucker |
| Helmut Frey | Declan Murray | Christophe Velay |
| Carlos Grosso | Roberto Nespolo | Amit Vijayvergiya |
| Harold Greisman | Walter Noel | Estate of Thierry Villehuchet (Family) |
| Gianfranco Gutty | Harald Nograsek | |
| Roger H. Hanson | James O'Neill | Jean-Marc Wenger |
| Jacqueline Harary | Friedrich Pfeffer | Michael Wheaton |
| Roger Hartmann | Andrés Piedrahita | Stefan Zapotocky |
| Moishe Hartstein | Corina Noel Piedrahita | Adam Zielinski |
| Rina Hartstein | Andreas Pirkner | Eliyahu (or Elias) Zilkha |
| Wilhelm Hemetsberger | Andre Pollak | Marc Zilkha |

**ATTACHMENT F**

## AGREEMENT

This AGREEMENT, dated as of December 6, 2010 (the "Effective Date"), is made by and among FAIRFIELD SENTRY LIMITED ("Sentry") and FAIRFIELD SIGMA LIMITED ("Sigma"), acting by and through their joint liquidators, Kenneth Krys and Joanna Lau (the "Liquidators"), and UNION BANCAIRE PRIVÉE, UBP SA ("UBP") (each of Sentry, Sigma, the Liquidators, and UBP, a "Party," and, collectively, the "Parties").

## BACKGROUND

A.     Sentry is a British Virgin Islands company that invested substantially all of its assets with Bernard L. Madoff Investment Securities LLC ("BLMIS").

B.     Sigma is a British Virgin Islands company that invested substantially all of its assets in shares of Sentry.

C.     On July 21, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed Kenneth Krys and Christopher Stride to be the joint liquidators of Sentry and Sigma pursuant to the British Virgin Islands Insolvency Act of 2003. Christopher Stride was subsequently replaced by Joanna Lau as one of the Liquidators. The Liquidators are duly authorized to act on behalf of Sentry and Sigma.

D.     UBP and certain of its affiliates, including Fidulex Management Inc. ("Fidulex") invested, as a nominee or custodian for clients, in Sentry and Sigma. The Liquidators' records include investments, without limitation, under the names Fidulex, FS-Union Bancaire Privee UBP Geneva, and UBP Luxembourg Ref Dinvest-Select III. In addition, certain affiliates of UBP, including UBP Asset Management LLC and Union Bancaire Privée (Luxembourg) SA, act or acted as manager or investment advisor to certain funds, including funds in the "Selectinvest" and "Dinvest" fund families, that each invested a relatively small portion of their assets in Sentry.

E.     The Liquidators, on behalf of Sentry and Sigma, have commenced lawsuits against Fidulex and unidentified beneficial shareholders of Sentry or Sigma that held their shares in Fidulex's name. Three such lawsuits are currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under the captions *Fairfield Sentry Limited v. Fidulex Management Inc. et al.*, No. 10-03751-BRL; *Fairfield Sentry Limited v. ABN AMRO Schweiz AG et al.*, No. 10-03635-BRL; and *Fairfield Sentry Limited v. ABN AMRO Schweiz AG et al.*, No. 10-03636-BRL, and one such lawsuit is currently pending in the BVI Court under the caption *Fairfield Sentry Ltd. v. Migani et al.*, Claim No. BVIHC (COM) 357/2009.

F.     Irving H. Picard, in his capacity as trustee for the liquidation of BLMIS under the Securities Investor Protection Act (the "Trustee") has claimed that UBP, UBP affiliates, or certain funds for which UBP or UBP affiliates act or acted as manager or investment advisor are liable to the BLMIS estate.

G.    UBP and its affiliates, including but not limited to Fidulex and the funds for which UBP or UBP affiliates act or acted as manager or investment advisor, deny that they have liability to Sentry, Sigma, the Liquidators, or the Trustee.

H.    Contemporaneous with the execution of this Agreement, UBP and the Trustee have entered into a settlement agreement (the "Trustee Settlement Agreement"), pursuant to which UBP has agreed to pay substantial monetary consideration, without any concession of fault or liability, to settle the Trustee's claims.

I.    The Liquidators acknowledge that UBP's agreement to settle with the Trustee on the terms and conditions set forth in the Trustee Settlement Agreement provides substantial benefits to Sentry and Sigma, which benefits provide consideration for the covenants and agreements of Sentry, Sigma, and the Liquidators set forth in this Agreement.

J.    UBP, Sentry, Sigma, and the Liquidators wish to settle their disputes about the matters described above. UBP is entering into this Agreement to obtain complete peace with respect to these matters, solely to avoid the expense, delay and uncertainty of further litigation and without any concession of fault or liability by UBP or any of UBP's affiliates.

K.    NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein or in the Trustee Settlement Agreement, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree:

## AGREEMENT

1.    Dismissal of Claims. Within three (3) business days after the Effective Date, the Liquidators, acting on behalf of Sentry and Sigma, shall voluntarily dismiss and/or discontinue with prejudice all claims that they have asserted in any forum against Fidulex and all beneficial shareholders, excluding Chester Global Strategy Fund Ltd. ("Chester") and Irongate Global Strategy Fund Ltd. ("Irongate"), that held shares in Sentry or Sigma in Fidulex's name.

2.    Release by Sentry, Sigma, and Liquidators. In consideration for the covenants and agreements in this Agreement or the Trustee Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Effective Date, Sentry, Sigma, and the Liquidators (both in their capacity as the Liquidators of Sentry and Sigma and as agents of those entities) shall release, remise and forever discharge: (i) UBP and all affiliates of UBP (including, without limitation, Fidulex), and funds identified on Schedule A to this Agreement (collectively, the "UBP Group") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the Effective Date or arising thereafter, that are, have been, could have been or might in the future be asserted by Sentry, Sigma, or the Liquidators (either in their capacity as the Liquidators of Sentry and Sigma or as agents of those entities); (ii) all past or present directors, officers, employees, direct or indirect shareholders, limited partners, principals, successors, assigns, agents, representatives, accountants, administrators, and attorneys of entities

2

in the UBP Group from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the Effective Date or arising thereafter, that are, have been, could have been or might in the future be asserted by Sentry, Sigma, or the Liquidators and that arise out of actions, statements, conduct or omissions relating to any entity in the UBP Group; and (iii) all direct and indirect transferees of any entity (excluding Chester and Irongate) within the UBP Group, including all entities or individuals (other than Chester and Irongate) for whom UBP or a UBP affiliate (including, without limitation, Fidulex) acted as nominee shareholder or custodian or sub-custodian, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the Effective Date or arising thereafter, that are, have been, could have been or might in the future be asserted by Sentry, Sigma, or the Liquidators and that arise out of transfers made by Sigma or Sentry directly or indirectly to any entity in the UBP Group.

3.      Claims of UBP Group in Liquidation Proceedings. Nothing in this Agreement shall affect (i) any rights or entitlements that any entity in the UBP Group, any UBP client, or any other person or entity, has to file shareholder or creditor claims against, and to receive distributions from, Sentry or Sigma in their respective liquidation proceedings or (ii) any rights, defenses or objections of Sentry, Sigma or the Liquidators with respect to any claim or right to distribution that any of the foregoing persons or entities may assert in such proceedings, provided that in no event shall any claims filed by any entity in the UBP Group, on its own behalf or on behalf of clients, be subordinated or otherwise treated differently from other claims of the same priority.

4.      Release of Liquidators by UBP Group. Except as provided in paragraph 3, which has priority over this paragraph in all respects, in consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each entity in the UBP Group hereby releases, acquits and absolutely discharges Sentry, Sigma and the Liquidators and all their agents, from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, existing as of the Effective Date or arising thereafter.

5.      Authority. The Liquidators represent and warrant to UBP that they have the full power, authority and legal right to execute and deliver this Agreement on behalf of Sentry and Sigma, and that they have taken all necessary action to authorize the execution and delivery of, and the performance of Sentry and Sigma's respective obligations under, this Agreement, including without limitation securing if necessary any approval of the BVI Court.

6. No admission. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any wrongdoing or liability.

7. Further Assurances. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

8. Entire Agreement. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

9. Amendments, Waiver. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

10. Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

11. Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

12. No Third Party Beneficiary. Except as expressly provided herein (including in paragraphs 1, 2, 3 and 4), the Parties do not intend to confer any benefit by or under this Agreement upon any entity or individual other than the Parties hereto and their respective successors and permitted assigns.

13. Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

14. Exclusive Jurisdiction. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

15. Captions and Rules of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting. No rule of construction under which this Agreement would be construed against its drafter shall apply.

16. Counterparts; Electronic Copy of Signatures. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered

shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

17.    Notices.    Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

If to Sentry, Sigma, or the Liquidators, c/o:       If to UBP, c/o:
David J. Molton                                     Herbert M. Wachtell
Brown Rudnick LLP                                   Wachtell, Lipton, Rosen & Katz
Seven Times Square                                  51 West 52nd Street
New York, NY 10036                                  New York, NY 10019
F: (212) 209-4801                                   F: (212) 403-1000
E: dmolton@brownrudnick.com                         E: HMWachtell@wlrk.com

*[signature pages follow]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

FAIRFIELD SENTRY LTD.

Name: Kenneth Krys
Title: Joint Liquidator for and on behalf of
Fairfield Sentry Limited (in liquidation)
without personal liability

Name: Joanna Lau
Title: Joint Liquidator for and on behalf of Fairfield
Sentry Limited (in liquidation) without personal
liability

FAIRFIELD SIGMA LTD.

Name: Kenneth Krys
Title: Joint Liquidator for and on behalf of Fairfield
Sigma Limited (in liquidation) without
personal liability

Name: Joanna Lau
Title: Joint Liquidator for and on behalf of Fairfield
Sigma Limited (in liquidation) without
personal liability

UNION BANCAIRE PRIVÉE, UBP SA

Name:
Title:

6

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

FAIRFIELD SENTRY LTD.

_____

Name:  Kenneth Krys
Title:  Joint Liquidator for and on behalf of
         Fairfield Sentry Limited (in liquidation)
         without personal liability


_____

Name:  Joanna Lau
Title:  Joint Liquidator for and on behalf of Fairfield
Sentry Limited (in liquidation) without personal
liability

FAIRFIELD SIGMA LTD.

_____

Name:  Kenneth Krys
Title:  Joint Liquidator for and on behalf of Fairfield
         Sigma Limited (in liquidation) without
         personal liability


_____

Name:  Joanna Lau
Title:  Joint Liquidator for and on behalf of Fairfield
         Sigma Limited (in liquidation) without
         personal liability


UNION BANCAIRE PRIVÉE, UBP SA

_____

Name:  Georges PITTET    Frédéric HELBLING
Title:  Managing Director  Executive Director

## Schedule A

DINVEST
DINVEST – Total Return
DINVEST – Select I
DINVEST – Select II
DINVEST – Select III
DINVEST – Long/Short Europe
DINVEST – Long/Short US
Dinvest Concentrated Opportunities Ltd.
Dinvest Concentrated Opportunities III Exquity Ltd.
TrendSquare Ltd.
TrendSquare II Ltd.
UBP Multi-Strategy Alpha Fund Ltd.
UBAM Alternatif MS
Selectinvest ARV Ltd.
Selectinvest ARV II Ltd.
Selectinvest Institutional ARV Ltd.
Selectinvest ARV LP
Selectinvest Alternative Balanced Fund Ltd.
Selectinvest Alternative Balanced Fund LP
Selectinvest ARV PLUS 1.25x Ltd.
Selectinvest ARV PLUS 1.25x LP
Selectinvest ARV PLUS 2.00x Ltd.
Selectinvest ARV PLUS 2.00x LP
Selectinvest Portable Alpha Fund SPC
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio One – Class II
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio Two – Class I
Selectinvest Portable Alpha Fund SPC, Segregated Portfolio Four – Class I
Selectinvest ARV MC Ltd.
Selectinvest ARV II MC Ltd.
Selectinvest Arbitrage/Relative Value Ltd. (Euro)
Selectinvest Enhanced II Ltd.
Robusta Fund of Hedge Funds II