Helen Davis Chaitman (4266)  Hearing Date: December 14, 2010
Becker & Poliakoff LLP  Hearing Time: 10:00 a.m.
45 Broadway
New York, NY 10006
hchaitman@becker-poliakoff.com
*Attorneys for Diane and Roger Peskin, and*
*several hundred other customers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,  Plaintiff,  v.  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,  Defendant. | Adv. Pro. No. 08-01789 (BRL)  SIPA LIQUIDATION  (Substantively Consolidated) |
| In re:  BERNARD L. MADOFF,  Debtor. | |

**OBJECTION TO FIFTH APPLICATIONS OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

Diane and Roger Peskin, and several hundred other customers of Bernard L. Madoff Investment Securities, LLC ("Madoff") [1] ("Objectors"), by their attorneys, Becker & Poliakoff LLP, object to the fifth applications for interim compensation of Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H") (the "Fifth Fee Application") and incorporate herein the objections they filed (through Phillips Nizer LLP and Becker & Poliakoff LLP) to the

---
[1] Becker & Poliakoff LLP files this objection on behalf of the hundreds of customers it represents in these proceedings and for whom it has filed objections to the Trustee's determinations.

first, second, third and fourth applications for interim compensation of the Trustee and B&H. This objection constitutes the Objectors' offer of proof and request that the Court schedule an evidentiary hearing at which they can submit evidence substantiating the facts set forth herein.

1. The Trustee was appointed by this Court at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court for the Southern District of New York on December 15, 2008 for the liquidation of Madoff under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

2. In the Fifth Fee Application, the Trustee seeks allowance of fees of $684,659 for the 122-day period from June 1, 2010, through September 30, 2010, and B&H seeks allowance of fees of $38,522,476.35. This works out to $5,705.49 in daily compensation (including weekends and holidays) for the Trustee and $321,020.64 in daily compensation for B&H, again including weekends and holidays. Thus, together, the Trustee and B&H are seeking $326,726.13 in daily compensation, including weekends and holidays or $2,287,082.90 per week. On an annualized basis, this would be $119,255,036.69. To summarize:

|  | **Trustee** | **B&H** | **Total** |
|---|---|---|---|
| Daily | $5,705.49 | $321,020.64 | $326,726.13 |
| weekly | $39,938.44 | $2,247,144.45 | $2,287,082.90 |
| annual | $2,082,504.46 | $117,172,532.23 | $119,255,036.69 |

3. In response to Objectors' objections to the reasonableness of the fees of the Trustee and his counsel, this Court has repeatedly ruled that the Trustee and B&H do not have to file their detailed billing reports, and the Court does not have to subject the Trustee and B&H to the general standards of reasonableness imposed upon a bankruptcy trustee and his counsel, based upon the representation of the Trustee and SIPC, pursuant to SIPA section 78eee(b)(5)(C),

2

that SIPC has no reasonable expectation of recoupment of its advances for administrative expenses.

4. Whether that representation was true at the inception of this case, it cannot possibly be true today. The total allowed claims in this case are less than $6 billion. It is virtually inconceivable that the Trustee will not be able to fully reimburse SIPC for its advances. Thus, this Court should not approve any further fees for the Trustee and his counsel absent full disclosure – from inception of this case – of the detailed billing reports of the Trustee and his counsel so that creditors and the Court can properly evaluate the efficiency and appropriateness of the work that has been performed, as well as to evaluate whether the Trustee and his counsel are disinterested given that SIPC has approved unreasonable compensation requests.

5. The Trustee seeks to insulate his and his firm's compensation from scrutiny by invoking the false claim that SIPC will not be reimbursed. The following statement contained in the Fifth Fee Application is patently incredible:

> As previously reported by the Trustee, in the Fourth Interim Report, based on the allocation process set forth in SIPA, the Trustee has determined that he has no reasonable expectation that the general estate will be sufficient to make any distribution to creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully. The Trustee has been advised by SIPC that it concurs in this belief of the Trustee.

(Fifth Fee App. ¶ 150.)

6. As of November 12, 2010, the Trustee has determined 14,769 customer claims, of which 2,291 were allowed, and he has committed to pay approximately $744 million in funds advanced to him by SIPC. The allowed claims total approximately $5.7 billion. (Fifth Fee App.

3

¶ 27 n. 5.) Thus, the Trustee needs only $6 billion to pay all allowed claims in full and reimburse SIPC in full for its administrative expenses.

7. Although, in a September 7, 2010, letter to Congressman Kanjorski, Chairman of the Subcommittee on Capital Markets, SIPC's President represented that there are approximately $17.3 billion in **potentially** allowable claims under the net-investment methodology, the Trustee has provided no indication that he intends to allow any claims in excess of the claims he has allowed to date. (**Exhibit A**, 9/7/10 SIPC letter to Hon. Kanjorski and Hon. Garret (hereafter "the SIPC Letter") at 5, response #7.)

8. Thus, it is reasonable to conclude that the Trustee can pay all claims in full and reimburse SIPC in full for its administrative expenses with $6 billion. Given that the Trustee is already holding $1.5 billion and has filed lawsuits seeking to recover in excess of $37 billion, it is inconceivable that he will not be able to fully reimburse SIPC for its administrative expenses.

9. The SIPC Letter stated that the Trustee had already filed 19 actions seeking recovery of approximately $15 billion; that the Trustee would file another 1,100 avoidance actions to recover approximately $6.8 billion; and that he is seeking to recover another $15 billion in 19 other avoidance actions. (**Exhibit A**, at 5, response #6; see also Trustee's Fourth Interim Report for the Period Ending September 30, 2010 (the "Fourth Interim Report") ¶ 1 ("the Trustee has filed nineteen avoidance actions seeking to recover more than $15.5 billion in funds from various feeder funds, Madoff friends and family members and related parties"). The Trustee, in the past week, has sued UBS for $2 billion; JPMorgan Chase for $6.4 billion; and HSBC for $9 billion. Thus, the Trustee has pending suits for over $37 billion.

10. In addition, the Trustee claims that $1.5 billion has already been "recovered" (of which approximately $1 billion was sitting in bank accounts on the day the Trustee was

4

appointed). (Fourth Interim Rpt. ¶ 1.) Given these facts, SIPA § 78eee(b)(5)(C) is not applicable. The Court should scrutinize the fee applications of the Trustee and his counsel just as any other fee application that comes before it. As set forth below, there are serious issues as to the efficiency and fairness of the fees that the Trustee and his counsel are charging in this case.

11. The Fifth Fee Application sets forth the compensation sought for the Trustee's counsel for approximately 40 different tasks or matters. Becker & Poliakff is directly adverse to the Trustee in two such matters where the Trustee sought to enjoin lawsuits commenced in other jurisdictions by Becker & Poliakoff's clients. As to those two matters (summarized below), the Trustee seeks total compensation of approximately $373,000 for 841 hours billed by B&H during the relevant four-month time period.

| Task/Matter | Task/Matter Name | Hours | Amount |
|---|---|---|---|
| 22 | Fox & Marshall ("Fox") | 575 | $241,926.50 |
| 23 | Canavan ("Canavan") | 266 | 131,113.00 |
| | **TOTAL** | | **$373,039.50** |

(Fifth Fee App. Ex. E.)

12. The Trustee's Fourth Interim Report includes a summary of the activity in the Canavan case for which the Trustee seeks approximately $131,000 and for which his counsel claims to have worked 266 hours: "On May 26, 2010, the [Canavan] Plaintiffs filed a Cross-Motion to Dismiss the Canavan Application. On June 16, 2010, the Trustee filed his Reply Memorandum in Further Support of the Canavan Application and in Opposition to [the] Cross-Motion to Dismiss . . . . A hearing on the Canavan Application is scheduled to be held on December 29, 2010." (Fourth Interim Rpt. ¶ 159.)

5

13. A copy of the Trustee's 16-page reply brief referenced above is attached hereto as **Exhibit B**. Five B&H attorneys are listed as working on the brief. Becker & Poliakoff filed a ten-page reply brief in further support of its cross-motion on June 23, 2010. A copy of the ECF docket for the Canavan action is attached hereto as **Exhibit C**. The only activity in the Canavan case after June 23, 2010, was that the Trustee filed three notices adjourning the hearing. Accordingly, after the 16th day of the relevant compensation period, nothing happened in the case that would have required the Trustee to bill any significant time to this matter. Yet, the Trustee seeks compensation for 266 hours. During the same time period, Becker & Poliakoff attorneys billed approximately 30 hours on the Canavan matter.

14. Essentially, the Trustee's counsel billed 266 hours for activity concentrated in the first 16 days of the compensation period (the Trustee filed his reply brief on June 16, 2010). That works out to roughly 16 hours per day for 16 straight days to prepare a 16-page reply brief. $131,000 or 266 hours for such a small amount of work is shocking and completely unjustified.

15. The Trustee was also adverse to Becker & Poliakoff and co-counsel's clients in the Fox matter. Like the Canavan matter, the Trustee sought, *inter alia*, to enjoin our client's actions pursuant to 11 USC Section 105. Most of the legal issues in Canavan and Fox were the same. Much of the briefing was identical from the Trustee's perspective. The Trustee's counsel seeks approximately $242,000 in compensation representing 575 billable hours for filing a motion to strike an issue and certain record designations from appeal and attending a hearing.

16. Specifically, in May 2010, our clients filed a notice of appeal from an adverse decision of this Court. On June 9, 2010, the Trustee made a motion to strike an issue and portions of the record from our clients' appeal. A copy of the Trustee's motion is attached hereto as **Exhibit D**. The motion is six pages long and three B&H attorneys appear on the papers. On

6

July 6, the appellants filed their opening briefs with the District Court. On July 23, 2010, the Trustee filed an eight-page reply brief in further support of his motion to strike, a copy of which is attached hereto as **Exhibit E**. Six attorneys appeared on the reply brief, including one "of counsel" from Columbus, Ohio. On August 3, 2010, after several conference calls with the District Court judge assigned to the appeal, this Court heard and granted the motion to strike, which resulted in the appellants' withdrawing their original briefs and submitting new briefs that include an appeal of the motion to strike. Our clients filed those briefs in October 5, 2010 – outside the compensation period at issue. The Trustee filed the appellee's brief on November 23, 2010, also well beyond the period at issue here.[2] The foregoing is consistent with the Trustee's summary of the Fox matter set forth in his most recent interim report. (Fourth Interim Rpt. ¶¶ 147-52.)

17.     From June 1 to September 2010, the Trustee merely filed his appellate counter-designations, and then filed, briefed and argued the motion to strike. Yet, the Trustee seeks compensation for 575 hours billed by B&H on the Fox matter during that time period. To bill so many hours for so little work is shocking and unconscionable.

18.     These two examples, of which Objectors' counsel have personal knowledge, indicate that there is, at best, gross inefficiency by the Trustee and his counsel with respect to the services rendered in this case. Of greater concern is the fact that SIPC has consistently approved these compensation requests. It would appear that SIPC gives the Trustee and his counsel a blank check every quarter, and every quarter the Trustee and his counsel draw $30 million or

---

[2] Seven attorneys appeared on the Trustee's 57-page appellee brief, including two attorneys "of counsel" from Columbus and Cleveland, Ohio. Even though the brief was not filed until late-November, perhaps some portion of the 575 hours billed to the Fox matter is attributable to this small army of attorneys who might have begun working on the papers months before they were due.

more on SIPC's account. The law requires that the Trustee must be disinterested; he owes an undivided duty of loyalty to the customers. SIPC's willingness to approve inappropriate compensation for the Trustee and his counsel, at a minimum, creates the appearance that the Trustee and his counsel are bound to serve the interests of SIPC, not the customers and creditors of this estate. Given the reach of this case and its vast impact on innocent victims, the Court should deny the compensation request until it is satisfied – after full disclosure – that the Trustee and his counsel should not be disqualified from serving in light of their financial relationship with SIPC.

## **CONCLUSION**

For the foregoing reasons, the Fifth Fee Application should be denied in its entirety. The Court should order the Trustee and his counsel to file with the Court the detailed billing reports from December 11, 2008 to date so that the Court and all interested parties can properly evaluate the reasonableness of compensation consistent with the well-established rules and procedures of this Court.

December 7, 2010

BECKER & POLIAKOFF LLP

By: /s/ Helen Davis Chaitman

45 Broadway
New York, NY 10006
(212) 599-3322
*Attorneys for Diane and Roger Peskin and several hundred other customers*

8