# EXHIBIT B

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (BRL) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-3200 (BRL) |
| Plaintiff, | |
| v. | |
| LISSA CANAVAN, LESLIE GOLDSMITH and JUDITH KALMAN, themselves and to the extent they purport to represent a class of those similarly situated, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF TRUSTEE'S APPLICATION FOR PRELIMINARY INJUNCTION,**
**ENFORCEMENT OF STAY, AND DECLARATION THAT CANAVAN, GOLDSMITH**
**AND KALMAN ACTION IS VOID *AB INITIO*,**
**AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.    The Court Has Jurisdiction to Enjoin the New Jersey Action ........................................... 3

II.   The New Jersey Action Violates the Automatic Stay and Should Otherwise Be
      Enjoined ........................................................................................................................ 7

      A.    The New Jersey Action Violates the Automatic Stay ............................................ 8

      B.    The New Jersey Action Impinges on the Court's Jurisdiction and Should
            be Enjoined ..................................................................................................... 10

            1.    This Court Has Authority to Enjoin the New Jersey Action Under
                  Section 105(a) ......................................................................................... 10

            2.    The New Jersey Plaintiffs Improperly Seek to Relitigate the Net
                  Equity Issue ............................................................................................ 11

III.  The Defendants' Cross-Motion to Dismiss the Complaint Should be Denied ................ 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baldwin-United Corp. v. Paine Webber Group, Inc.* (*In re Baldwin-United Corp.*), 57 B.R. 759 (S.D. Ohio 1985) ......................................................... 12

*Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006) .................................. 13

*C & J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87 (Bankr. S.D.N.Y. 1988) ......................................................... 10

*Canavan v. Harbeck*, Case No. 10 CV 00954 (D.N.J.) ........................... 1, 12

*Celotex Corp. v. Edwards*, 115 S.Ct. 1493 (1995) ...................................... 3

*Covanta Onondaga Limited Partnership v. Onondaga County Resource Recovery Agency*, 318 F.3d 392 (2d Cir. 2003) ..................................................... 14

*Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998) ......................... 10, 11, 12

*Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567 (S.D.N.Y. 1987) ................. 10

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S.Ct. 1061 (1995) ........... 13

*In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987) ................. 9

*In re Adelphia*, 2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006) ........... 3, 9, 11

*In re AP Indus.* 117 B.R. 789 (Bankr. S.D.N.Y. 1990) .............. 4, 10, 11, 12

*In re Arrowmill Development Corp.*, 211 B.R. 497 (Bankr. D.N.J. 1997) ............... 5, 6

*In re Calpine Corp.*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006) ........................ 10

*In re Cuyahoga Equipment Corp.*, 980 F.2d 110 (2d Cir. 2004) .................... 3

*In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. Apr. 28, 2010) .............. 11, 12

*In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008) ............................. 6

*In re Johns-Manville Corp.*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988) .............. 11, 12

*In re Johns-Manville Corp.*, 97 B.R. 174 (Bankr. S.D.N.Y. 1989) ............... 14

*In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994) ..................... 10, 12

*In re Lyondell Chem. Co.*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009) ................ 10

*In re MCEG Productions, Inc.*, 133 B.R. 232 (Bankr. C.D.Cal. 1991) ........... 9

## TABLE OF AUTHORITIES
### *(cont'd)*

**Page**

*In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004)..................................................... 3, 6

*In re Singer Co. N.V.*, 2000 WL 33716976 (Bankr. S.D.N.Y. Nov. 3, 2000) ....................... 11, 12

*In re The 1031 Tax Group, LLC*, 397 B.R. 670 (Bankr. S.D.N.Y. 1996).............................. 11, 12

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) ................................................................ 5

*LTV Corp. v. Back (In re Chateaugay Corp.)*, 201 B.R. 48 (Bankr. S.D.N.Y. 1996) ............. 7, 11

*LTV Corp. v. Back (In re Chateaugay Corp.)*, 213 B.R. 633 (S.D.N.Y. 1997)............................ 6

*LTV Corp. v. Miller (In re Chateaugay Corp.)*, 109 B.R. 613 (S.D.N.Y. 1990)........................ 15

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) ..................................... 4, 12

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992) ......................................................... 13

*New York Life Insurance Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998)................................... 14

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ................................................................ 3, 5

*Picard v. Fox*, 2010 WL 1740885 (Bankr. S.D.N.Y. May 3, 2010)................................. 4, 10, 12

*Purdy v. Zeldes*, 337 F.3d 253 (2d Cir. 2003)............................................................................ 13

*Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) ......................................................................... 5

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec.*, 424 B.R. 122 (Bankr.
    S.D.N.Y. 2010) ...................................................................................................................... 4

*Sherman v. Jacobson*, 247 F. Supp. 261 (S.D.N.Y. 1965) ........................................................ 13

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61 (2d Cir. 1986) .............................. 9

*Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195 (2009)............................................................... 6

*United States v. International Bhd of Teamsters*, 728 F. Supp. 1032 (S.D.N.Y. 1990) ............... 14

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005)................................................................................... 13

**Statutes**

11 U.S.C. § 105............................................................................................................... passim

11 U.S.C. § 105(a) ...................................................................................................... 10, 11, 15

11 U.S.C. § 362(a)(3)....................................................................................................... 9

## TABLE OF AUTHORITIES
### *(cont'd)*

**Page**

15 U.S.C. § 78aaa *et seq.* ........................................................................................................ 1

15 U.S.C. § 78eee(b)(2)(A)(i) ................................................................................................... 7

15 U.S.C.§ 78eee(b)(4) ............................................................................................................. 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 15

Irving H. Picard, Esq., as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA") and Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, respectfully submits this Memorandum of Law (i) in further support of his application to: (a) enjoin and restrain Defendants Lissa Canavan ("Canavan"), Leslie Goldsmith ("Goldsmith") and Judith Kalman ("Kalman" and, together with Canavan and Goldsmith, the "New Jersey Plaintiffs"), and those acting in concert or participation with them, or on their behalf, and all defendants, from pursuing the action titled *Canavan v. Harbeck*, Case No. 10 CV 00954 (D.N.J.) (the "New Jersey Action") and commencing or proceeding with any other actions or proceedings against the Board of Directors of the Securities Investor Protection Corporation ("SIPC") or the CEO/President of SIPC (the "SIPC Defendants") and (b) enforce the Automatic Stay and other applicable stays and declare that the New Jersey Action is void *ab initio*; and (ii) in opposition to the cross-motion to dismiss the Trustee's complaint filed by the New Jersey Plaintiffs.

## PRELIMINARY STATEMENT

The New Jersey Plaintiffs admit in their Complaint that their action centers precisely on how net equity is to be determined for the victims of Madoff's Ponzi scheme: "the issue of the proper determination of net equity is a central issue in determining all Class members' claims[.]" (Sheehan Aff.,[1] Ex. A, ¶ 40.) They further implicitly concede in their Opposition Brief that they are making all the same arguments in their New Jersey Action that they or their counsel previously made before this Court, and that their New Jersey Action is a relitigation of this

---

[1] Affidavit of David J. Sheehan dated April 9, 2010, in Support of the Trustee's Application for a Preliminary Injunction, Enforcement of the Automatic Stay, Declaration that Canavan, Goldsmith and Kalman's Action is Void *Ab Initio* and Temporary Restraining Order (the "Sheehan Aff.") (Dkt No. 3.)

Court's net equity determination. At bottom, the New Jersey Plaintiffs' claims are entirely derivative of the BLMIS liquidation proceedings and as such, are subject to this Court's jurisdiction.

Having admitted that their case centers on the net equity calculation and conceding that they seek to relitigate that issue in the New Jersey District Court, they contend that this Court nevertheless has no business enjoining them from proceeding because the "damages" they seek would have no impact on the BLMIS liquidation proceedings. However, not only is this Court empowered to stop them from relitigating the net equity issue, it must do so to prevent "net winners" such as the New Jersey Plaintiffs and the class they seek to represent, from mocking the system by recovering their false profits.

Indeed, this Court has exclusive jurisdiction to determine the New Jersey Plaintiffs' claims, and the proper recourse for those dissatisfied with that determination is this Court and the appellate process—not another Court with no familiarity with the Madoff Ponzi scheme, the SIPA statute and this Court's net equity determination. And while the New Jersey Plaintiffs may belittle the potential effect that their action could have on the efficient administration of the BLMIS estate, it is difficult to imagine how a potentially contrary ruling on net equity from another federal court could not affect the legitimacy of this Court's decisions, as well as create confusion among claimants—claimants who would be under both this Court's jurisdiction and that of the New Jersey District Court as putative class members in an action relitigating the net equity determination.

The New Jersey Plaintiffs no doubt believe that they have found a clever way to flout this Court's jurisdiction—by suing the SIPC Board and its CEO because they know they cannot sue the Trustee outside the confines of this Court. But they have been too clever by half because

their Action strikes at the very heart of this Court's purpose in this case—the equitable distribution of money to the victims of Madoff's Ponzi scheme. The New Jersey Action is designed to reward net winners with their illicit proceeds from Madoff's Ponzi scheme. The New Jersey Plaintiffs must be enjoined.

## **ARGUMENT**

## I.    **THE COURT HAS JURISDICTION TO ENJOIN THE NEW JERSEY ACTION**

The New Jersey Plaintiffs contend that this Court does not have the jurisdiction to issue the injunctive relief requested by the Trustee. Their arguments are completely without merit.

The New Jersey Plaintiffs state the unremarkable proposition that "related to" jurisdiction "is not without limitation." (NJ Pl. Br.[2] 3.) However, the applicable standard, as identified even by the cases relied upon by the New Jersey Plaintiffs, is whether the New Jersey Action could have "any conceivable effect" on the BLMIS proceeding. *See, e.g.*, *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 2004); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). (*See* NJ Pl. Br. 3.) In *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004), another case relied on by the New Jersey Plaintiffs, the court observed that "a key word in [the related to jurisdiction test] is 'conceivable' and that certainty, or even likelihood, is not a requirement." *Id.* at 164 (internal quotations and citations omitted); *see also Celotex Corp. v. Edwards*, 115 S.Ct. 1493, 1498–99 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth.").[3]

---

[2] Defendants' Memorandum of Law Opposing Trustee's Motion for an Injunction and Supporting Defendants' Cross-Motion to Dismiss the Complaint ("NJ Pl. Br.") (Dkt No. 18.)

[3] The New Jersey Plaintiffs' narrow distinctions of the Trustee's cases ignore their more broad applicability for jurisdictional purposes. For example, in *In re Adelphia Communications Corp.*, the court outlined the broad parameters of "related to" jurisdiction: "[For a] civil proceeding [to be] related to bankruptcy . . . the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to the bankruptcy if the outcome . . . in any way impacts upon the handling and administration of the bankrupt estate." 2006 WL 1529357, at *7 (Bankr. S.D.N.Y. June 5, 2006) (internal quotations and citations omitted.). Further, in *In re AP Industries*,

The New Jersey Action has much more than a "conceivable effect" on the BLMIS case. This Court has ruled on the appropriate method for determining claims in its March 1, 2010 Decision and March 8, 2010 Order on the calculation of net equity. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) (hereinafter, "*SIPC v. BLMIS*" or the "Net Equity Decision"); Net Equity Order (Dkt No. 2020.)   The New Jersey Plaintiffs seek to circumvent this Court's holding that it is "absurd" for net winners, such as the New Jersey Plaintiffs, to believe they are entitled to their false profits. *SIPC v. BLMIS*, 424 B.R. at 140.  Turning to a different court to relitigate this Court's determination most surely overlaps with and affects the administration of the BLMIS estate.[4]  The broad "related to" jurisdiction granted to district courts, and in turn to bankruptcy courts, provides the basis for avoiding such an untoward result.

---

*Inc.* the court found it had jurisdiction to enjoin actions seeking money damages by creditors against third parties who participated in a transaction involving the debtor. *See* 117 B.R. 789, 798–99 (Bankr. S.D.N.Y. 1990).  Here, if the creditors were to prevail, this would not only cause disruption in the administration of the estate, but would result in inequitable treatment of customers of BLMIS.  *See, e.g., Picard v. Fox*, 2010 WL 1740885, at *10 (Bankr. S.D.N.Y. May 3, 2010) (noting concern about certain creditors receiving payment in excess of their entitlement under the Net Equity Decision, defined herein, by bringing actions which seek the same funds as the trustee). Moreover, in *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988), MacArthur, a distributor of the debtor's products, attempted to argue that its interests in certain insurance policies, which were the subject of a settlement, were outside of the Court's jurisdiction.  837 F.2d at 89-91.  The Second Circuit found that the bankruptcy court had jurisdiction to issue orders approving a settlement and enjoining actions against insurers and found that MacArthur's rights and interests were limited by the underlying insurance policies, which were estate property.  *Id.* at 92-93.  As in *MacArthur*, the New Jersey Plaintiffs here claim that they have separate rights in the form of "SIPC insurance."  However, this Court already has held that SIPC advances are not "insurance," and that the New Jersey Plaintiffs and the class they purport to represent are not entitled to their false profits.  (*See* Memorandum of Law in Support of Trustee's Application for Preliminary Injunction, Enforcement of Stay, Declaration that Canavan, Goldsmith and Kalman Action is Void *Ab Initio,* and Temporary Restraining Order  at 13–15) (the "Trustee's Opening Brief" or "Tr. Op. Br.") (Dkt No. 2.)

[4] In an attempt to downplay their efforts to relitigate the net equity issue, the New Jersey Plaintiffs emphasize that the New Jersey Action was commenced shortly before this Court rendered its Net Equity Decision.  (NJ Pl. Br. 2.) Notwithstanding this timeline, however, the New Jersey Action will still have the practical effect of relitigating net equity.  The New Jersey Plaintiffs no doubt calculated the possibility of a determination contrary to their position on net equity, as they would have had no grounds to bring the New Jersey Action (nor could they assert any damages) if they had achieved their preferred result.

Indeed, several of the cases relied on by the New Jersey Plaintiffs hold that the court had the jurisdiction to order the injunction sought.  *See, e.g.*, *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) (finding sufficient nexus between a state court action and the title 11 case); *In re Arrowmill Dev. Corp.*, 211 B.R. 497 (Bankr. D.N.J. 1997) (capital contribution to the estate by a third party provided the basis for a finding that jurisdiction existed to grant a non-debtor release in a plan of reorganization).  Other cases which the New Jersey Plaintiffs rely on—both Third Circuit cases—are otherwise inapposite because they stand for the proposition that truly independent conduct having nothing to do with the estate is not "related to" a bankruptcy proceeding for jurisdictional purposes.  For instance, *Pacor, Inc. v. Higgins* concerned an action between two parties who were not parties to, or involved with, the bankruptcy proceedings at issue.  743 F.2d at 986, 994.  In contrast, here, the New Jersey Plaintiffs and the entire class they purport to represent are BLMIS customers and are claimants in these proceedings.  SIPC, meanwhile, is the entity which advances funds for the satisfaction of claims up to the statutory maximum per customer in these proceedings.  Thus, there is a clear nexus to these proceedings.[5] *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009), sets forth the Third Circuit standard that "related to" jurisdiction does not exist if another lawsuit is required before there would be a conceivable impact on the administration of the estate.  *Id.* at 174–75.  Here, no additional lawsuits are required for there to be an impact on the estate because the crux of the administration of the estate—net equity—is being relitigated.  Further, courts in this district have held that the "automatic liability" standard described in *Pacor,* which was subsequently utilized in *W.R. Grace,* is too strict and "related to" jurisdiction exists when there is a reasonable legal

---

[5]  In addition, the New Jersey Plaintiffs should not be allowed a double recovery.  Notably, the "damages" they seek are none other than what is in essence the advance from SIPC, which overlaps with their appeal of the Net Equity

basis for a claim against the debtor.  *See LTV Corp. v. Back* (*In re Chateaugay Corp.*), 213 B.R. 633, 640 (S.D.N.Y. 1997).  The New Jersey Action will have a direct and detrimental effect on the administration of the BLMIS liquidation by potentially undermining the net equity determination, rewarding net winners with their false profits and thus perpetuating Madoff's fraud.[6]

As described in greater detail in the Trustee's Opening Brief, the only possible rationale for commencing the New Jersey action was to attempt to impact on the administration of the estate and allow the New Jersey Plaintiffs to recover funds that otherwise would have been denied them.  (*See*, *e.g.*, Tr. Op. Br. 16–20.)  Any argument that the New Jersey Action is independent of the BLMIS liquidation is not credible, particularly given the New Jersey Plaintiffs' own assertions regarding the importance of the determination of net equity to their claims.  (*See*, *e.g.*, Sheehan Aff., Ex. A, ¶ 40 ("[T]he issue of the proper determination of net equity is a central issue . . . ."); ¶ 42 ("[T]he Director's [*sic*] promulgation of SIPC's Net Investment Policy are bad faith actions in direct violation of SIPA's definition of 'net equity' . . . ."); ¶ 95 ("[T]he Directors have created a new definition of 'net equity,' in direct contravention of SIPA, with the intention of depriving approximately 2,568 Customers of SIPC insurance . . . ."); ¶¶ 208–09 ("Plaintiffs' and the Class members' claims . . . were based on their

---

Decision.  Accordingly, any recovery obtained in the New Jersey Action could affect payment of the SIPC advance, and vice-versa.

[6] In addition, in several of the cases cited by the New Jersey Plaintiffs, the courts consider the breadth of their jurisdiction post-confirmation.  *In re Resorts Int'l*, 372 F.3d 154; *In re Arrowmill Dev. Corp.*, 211 B.R. 497; *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195 (2009).  The scope of post-confirmation jurisdiction is narrower than that jurisdiction conferred in the midst of the administration of the bankruptcy case.  *In re Resorts Int'l*, 372 F.3d at 164–65.  The Trustee submits that the Court would have the jurisdiction to enjoin even on the narrowest interpretation of jurisdiction given the clear efforts by the New Jersey Plaintiffs to evade the rulings of this Court.  However, in any event it is the broader, pre-confirmation, standard that is applicable here.

'net equity' as defined by SIPA . . . Defendants wrongfully and in bad faith failed to 'promptly' pay the claims under the illegal SIPC Net Investment Policy . . .").)

Finally, the New Jersey Plaintiffs provide no authority for their bald assertion that SIPA § 78eee(b)(2)(A)(i) and § 78eee(b)(4) are not implicated in the consideration of jurisdiction. (*See* NJ Pl. Br. 6–7.) The New Jersey Action is an attempt to take this Court's jurisdiction over the administration of the estate and confer that jurisdiction on the New Jersey District Court. This is precisely the situation in which SIPA § 78eee(b)(2)(A)(i) and § 78eee(b)(4) are relevant and applicable. For the same reason, the New Jersey Plaintiffs' attempt to argue that this Court's inherent ancillary jurisdiction is not at issue must fail. This Court undeniably has the authority to interpret and enforce its Net Equity Decision and has the jurisdiction to act to protect that authority. *See LTV Corp. v. Back* (*In re Chateaugay Corp.*), 201 B.R. 48 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997); *see also* Net Equity Order at 4 (retaining jurisdiction "with respect to all matters relating to the interpretation or implementation of [the] Order").

## II.   THE NEW JERSEY ACTION VIOLATES THE AUTOMATIC STAY AND SHOULD OTHERWISE BE ENJOINED

As the Trustee previously argued, the "fraud" alleged in the New Jersey Action is merely an effort to disguise the New Jersey Plaintiffs' real intentions—to cast doubt on this Court's Net Equity Decision and recoup their fictitious profits. If the New Jersey Plaintiffs were seeking a genuine resolution on issues of "fraud," they should have sought to lift the automatic stay prior to filing the New Jersey Action. Instead, the New Jersey Plaintiffs shroud their true objectives in the guise of fraud in order to get what they cannot in this case—their false profits. The New Jersey Action violates the automatic stay and is otherwise subject to an injunction under § 105 as a relitigation of the net equity issue.

A.    **The New Jersey Action Violates the Automatic Stay**

The New Jersey Plaintiffs assert that their claims in the New Jersey Action would not interfere with the orderly administration of the BLMIS liquidation proceeding.  Twisting the Trustee's argument, they suggest that the Trustee is concerned that *this Court* will be "confused" by a ruling in the New Jersey Action.  (*See* NJ Pl. Br. 11.)  However, the Trustee obviously is not concerned that this Court, or the Second or Third Circuits for that matter, will confuse this Court's rulings with any rulings by the New Jersey District Court.  Rather, the Trustee is concerned that the New Jersey Plaintiffs are attempting to incite an indirect attack on the liquidation proceedings in this Court through the New Jersey Action.[7]

The link between the two actions—the net equity issue—is at the heart of the administration of the BLMIS estate.  A ruling in favor of the New Jersey Plaintiffs would necessarily call into question the legitimacy of this Court's decision on the net equity issue.  As set forth in detail in the Trustee's Opening Brief, and in Exhibit A thereto, all of the New Jersey Plaintiffs' arguments were made before this Court in the net equity proceedings.  There is nothing new here.  (*See* Tr. Op. Br. at 17–20 and Ex. A thereto.)

Further, following this scenario to its logical end, the same issues could be considered by two different appellate courts, which is a tremendous waste of both judicial resources and the

---

[7] An indication that the New Jersey Plaintiffs have ulterior motives is the simple fact that they appear to be seeking damages in excess of $2 billion from only eight individuals—an expectation so unrealistic that it suggests that the New Jersey Plaintiffs do not actually expect full satisfaction of their claims.  *See* Sheehan Aff., Ex. A, ¶ 85 (acknowledging that "SIPC would need approximately $1.5 billion, possibly as much as $2 billion, to pay all the Class claims[.]").  Rather, they are attempting to apply political pressure.  The New Jersey Plaintiffs seem to be under the false impression that the SIPC Defendants control the Trustee.  *See* Sheehan Aff., Ex. A, ¶ 4 (stating that "in direct contradiction of their repeated representations . . . defendants have caused their designated trustee . . . to refuse to pay SIPC insurance to any Customer whose withdrawals exceeded his deposits"); ¶ 107 (arguing that "[b]ecause SIPC has no power to change the statutory definition of 'net equity,' the defendants have no power to allow the Trustee to use SIPC's Net Investment Policy").  Thus, by raising the specter of bankruptcy, the New Jersey Plaintiffs hope to pressure the SIPC directors and President into compelling the Trustee to change the statutory definition of net equity under SIPA as applied in this case.

Trustee's resources.  It is plain to see how the New Jersey Action could cause enormous confusion with respect to the net equity issue, thereby interfering with the orderly and efficient administration of the BLMIS estate.  Such interference is exactly what section 362(a)(3) seeks to prevent.  *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *3 (finding that section 362(a)(3) "prohibits interference with the disposition of the assets that are under the Court's wing … And that is so without distinction as to the form the interference takes."). (*See* Tr. Op. Br. 39.)

Moreover, as much as the New Jersey Plaintiffs attempt to technically fall outside the scope of the automatic stay by naming the SIPC Defendants instead of their real targets—the Trustee, SIPC and BLMIS—their Action nevertheless violates the automatic stay because of their efforts to relitigate the net equity issue and thus impinge on this Court's jurisdiction.[8]  *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *3 (holding that section 362(a)(3) prohibits interference "whether or not the Debtor is named as a defendant as part of the effort," and quoting the Second Circuit in *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987) for the proposition that "[i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay"); s*ee In re MCEG Productions, Inc.*, 133 B.R. 232, 235 (Bankr. C.D.Cal. 1991) (explaining that when determining whether there has been a violation of the automatic stay, courts should consider the substance, not the form).

The New Jersey Plaintiffs are attempting to solicit preferential treatment from the New Jersey District Court in the form of fictitious profits to which they are not entitled under this

---

[8] Citing *Teachers Insurance and Annuity Ass'n of America v. Butler*, 803 F.2d 61 (2d Cir. 1986), the New Jersey Plaintiffs also attempt to argue that "[s]tays pursuant to 11 U.S.C. § 362(a) are limited to debtors and generally may

Court's Net Equity Decision. Their conduct is an affront to the automatic stay and, thus, the New Jersey Action should be declared void *ab initio*. *See, e.g.*, *In re AP Indus., Inc.*, 117 B.R. at 798–99; *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994).

      **B.**      **The New Jersey Action Impinges on the Court's Jurisdiction and Should be Enjoined**

             **1.**      **This Court Has Authority to Enjoin the New Jersey Action Under Section 105(a)**

The New Jersey Plaintiffs state the uncontroversial proposition that "[t]here are limits to the relief that may be granted under section 105." (NJ Pl. Br. 7.) However, they fail to properly outline those limits, and then attempt to narrow this Court's authority in an unprecedented manner. As the Trustee made clear in his opening brief, under § 105, the Court has the authority to enjoin third party actions if those actions threaten to (i) impair the court's jurisdiction with respect to a case before it or (ii) frustrate the debtor's reorganization efforts. *See In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007); *In re Lyondell Chem. Co.*, 402 B.R. 571, 588 n.37 (Bankr. S.D.N.Y. 2009); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987); *C & J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988).

As this Court's decision in *Picard v. Fox* demonstrates, contrary to the New Jersey Plaintiffs' position, a Court's authority to enjoin actions under § 105 extends beyond reorganization cases. *See also Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (finding the same in a liquidation proceeding); *In re Wingspread Corp.*, 92 B.R. at 95 (issuing an injunction pursuant to § 105(a) in a chapter 7 liquidation proceeding).

---

not be extended to non-bankrupt entities." (NJ Pl. Br. 10.) However, this is an incorrect assertion. *See, e.g., Picard v. Fox*, 2010 WL 1740885 at *8-9.

Because the New Jersey Action threatens this Court's jurisdiction by seeking to relitigate the Net Equity Decision, this Court has authority to use § 105(a) to enjoin the New Jersey Plaintiffs from proceeding. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 2006 WL 1529357 at *5 ("[I]t is manifestly proper, in my view, to invoke section 105(a) 'to enforce or implement' my earlier orders, to prevent abuses of process, and to avoid such a blatant interference with the Debtors' reorganization in these chapter 11 cases.").

This Court, in upholding the Trustee's determination of net equity, specifically ordered that it "shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order." (Net Equity Order at 4.) Thus, this Court has the authority under § 105 to enjoin the New Jersey Action to enforce its Net Equity Decision. *See In re Adelphia Commc'ns Corp.*, 2006 WL 1529357, at *4 ("The Bankruptcy Court's injunctive powers under section 105(a) also include 'the power to enjoin the Defendants from proceeding against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors or implicate the interpretation or enforcement of this Court's orders.'") (citing *In re Chateaugay Corp.*, 201 B.R. at 66).[9]

### 2.    The New Jersey Plaintiffs Improperly Seek to Relitigate the Net Equity Issue

The New Jersey Plaintiffs are admittedly attempting to relitigate the net equity issue already determined by this Court, as demonstrated by their Complaint:

---

[9] The New Jersey Plaintiffs' efforts to distinguish *In re Adelphia Commc'ns Corp.*, 2006 WL 1529357; *In re AP Indus., Inc.*, 117 B.R. 789; *In re Johns-Manville Corp.*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988*); In re Singer Co. N.V.*, 2000 WL 33716976 (Bankr. S.D.N.Y. Nov. 3, 2000), *aff'd in part*, 2002 WL 999273 (S.D.N.Y.), *adhered to on reconsideration*, 2002 WL 31040349 (S.D.N.Y.), *vacated*, 2002 WL 31251621 (S.D.N.Y. 2002); *Apostolou*, 155 F.3d 876; and *In re The 1031 Tax Group, LLC*, 397 B.R. 670 (Bankr. S.D.N.Y. 1996) miss the point. While the facts of these cases differ, the point they stand for—that this Court can enjoin proceedings that intrude on this Court's jurisdiction—is not subject to question. *See In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. Apr. 28, 2010) (affirming injunction of derivative actions and finding subject matter jurisdiction over such actions).

> The questions of law and fact common to the Class predominate over any questions affecting individual members because the issue of the proper determination of net equity is a central issue in determining all Class members' claims, and all Class members have suffered from the defendants' fraud and bad faith failure to pay insurance to Class members.

(Sheehan Aff., Ex. A, ¶ 40.) Significantly, but for this Court's Net Equity Decision, the New Jersey Plaintiffs would have no ability or need to bring the New Jersey Action. By relitigating their "legitimate expectations" in the New Jersey District Court, the New Jersey Plaintiffs seek to recover the fictitious profits to which this Court has already determined they are not entitled. Nowhere do the New Jersey Plaintiffs allege any special independent conduct that would allow their recovery outside the auspices of this Court; rather, the New Jersey Action is entirely derivative of the BLMIS liquidation proceeding, and accordingly, this Court has jurisdiction to enjoin it.[10] See, e.g., Fox, 2010 WL 1740885, at *6–7; In re Dreier, 2010 WL 1707737, at *15; MacArthur, 837 F.2d at 92–93.

Seeking such recovery runs afoul of the general principle that creditors of a bankruptcy estate should not be permitted to recover preferentially to other creditors. See, e.g., In re Keene Corp., 164 B.R. at 849–54; In re AP Indus., Inc., 117 B.R. at 801–02; In re Johns-Manville Corp., 91 B.R. at 228; In re The 1031 Tax Group, LLC, 397 B.R. at 684–85; In re Singer, 2000 WL 33716976, at *2; Apostolou, 155 F.3d at 876; Baldwin-United Corp. v. Paine Webber Group, Inc. (In re Baldwin-United Corp.), 57 B.R. 759 (S.D. Ohio 1985). Although the New Jersey Plaintiffs attempt to distinguish these cases factually, the theme resounding from these

---

[10] Furthermore, the alleged "change in policy" by SIPC with respect to handling BLMIS customer claims as asserted by the New Jersey Plaintiffs (see NJ Pl. Br. at 2) arguendo occurred in the BLMIS SIPA liquidation proceeding, and thus issues relating to it are properly heard in this Court. Indeed, there is currently a transfer motion pending in the New Jersey Action which is sub judice before that court. See generally Canavan v. Harbeck, Case No. 10 CV 00954 (D.N.J.), Dkt Nos. 1, et seq..

cases remains clear—bankruptcy courts discourage self-help by creditors, and encourage the resolution of issues related to the administration of the bankruptcy estate in a single forum.

Moreover, seeking to relitigate the net equity issue threatens to unravel this Court's Net Equity Decision and conflicts with principles of collateral estoppel:

> The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *abrogated on other grounds by Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S.Ct. 1061 (1995); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 n.5 (2d Cir. 2003)). Courts have recognized that when considering the requirements of collateral estoppel, the interpretation of a "final" judgment is less stringent than in other contexts. *Metromedia*, 983 F.2d at 366; *Yung v. Lee*, 432 F.3d 142, 147 (2d Cir. 2005) ("[T]he concept of finality for collateral estoppel purposes 'includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.'"); *Sherman v. Jacobson*, 247 F. Supp. 261 (S.D.N.Y. 1965) (finding that a ruling, held unappealable for lack of a final judgment, *was* a final judgment for purposes of applying collateral estoppel). Thus, because this Court rendered an unconditional decision, definitively determining the appropriate calculation of net equity, the Net Equity Decision should be considered "final" for purposes of collateral estoppel.

The New Jersey Plaintiffs and their counsel took every opportunity to argue and reargue their position on net equity to this Court (*see* Exhibit A to Tr. Op. Br.), participating actively in the underlying SIPA Proceeding through the filing of customer claims and objecting to claims determinations. (*See* April 9th Sheehan Aff., Exs. B, D and F; Dkt Nos. 506, 569, and 2119.)

The New Jersey Plaintiffs seek to relitigate the precise issue that this Court resolved in the Net Equity Decision—"the proper determination of net equity." (Sheehan Aff., Ex. A, ¶ 40.) This Circuit has recognized that a federal court may issue an injunction to prevent a party from relitigating issues already decided by the enjoining court. *See Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003) (recognizing that "[e]ven in the absence of a pattern of vexatious litigation, . . . a district court that has adjudicated the merits of a case may have authority to prevent relitigation.") (citing *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (discussing the authority of a district court under the All Writs Act to enjoin third party actions in other federal courts that seek to relitigate issues and therefore are barred by collateral estoppel)); *see also United States v. Int'l Bhd of Teamsters*, 728 F. Supp. 1032, 1042–44, 1048 (S.D.N.Y. 1990) (enjoining competing federal action essentially seeking to relitigate consent order).[11]

Accordingly, this Court should prevent the New Jersey Plaintiffs from relitigating the net equity issue, and enjoin them from proceeding with the New Jersey Action.

## III. THE DEFENDANTS' CROSS-MOTION TO DISMISS THE COMPLAINT SHOULD BE DENIED

The New Jersey Plaintiffs do not dispute the facts alleged in the Trustee's complaint. Rather, they argue that this Court lacks subject matter jurisdiction and, thus, the Trustee's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). However, as discussed above, this Court does have jurisdiction to adjudicate this matter, as the key question in determining this issue is whether the New Jersey Action could have "any conceivable effect" on the BLMIS proceeding—a broad standard which is certainly met here. The New Jersey

---

[11] Courts repeatedly have recognized that the All Writs Act is analogous to a bankruptcy court's injunction authority under § 105. *See In re Johns-Manville Corp.*, 97 B.R. 174, 178 (Bankr. S.D.N.Y. 1989) (Lifland, J.); *LTV Corp. v.*

Plaintiffs also assert that the Trustee's claims seeking (1) enforcement of the automatic stay and other applicable stays and a declaration that the New Jersey Action is void *ab initio* (2) an order enjoining the New Jersey Plaintiffs, and those acting in concert or participation with them, or on their behalf, and all defendants, pursuant to section 105(a) of the Bankruptcy Code, from further prosecuting the New Jersey Action, or any other actions against the SIPC Defendants, should be dismissed pursuant to Rule 12(b)(6).  As discussed in the Trustee's Opening Brief and as set forth further above, the New Jersey Plaintiffs seek to litigate the net equity issue outside of this Court, which would substantially interfere with the orderly administration of the BLMIS liquidation proceeding and is a violation of the automatic stay.  Further, as outlined herein and in the Trustee's Opening Brief, section 105(a) may be used broadly to protect judgments entered by this Court and to protect its jurisdiction.  Thus, for the same reasons the injunctive and declaratory relief sought should be granted, the New Jersey Plaintiffs' motion to dismiss should be denied.

---

*Miller* (*In re Chateaugay Corp.*), 109 B.R. 613 (S.D.N.Y. 1990).

## CONCLUSION

The Trustee respectfully requests that the New Jersey Plaintiffs, anyone acting on their behalf or in concert or participation with them, and all defendants, be enjoined from proceeding with the New Jersey Action, or any other actions against the SIPC Defendants; that the Court declare the action to be in violation of stays under the Bankruptcy Code and SIPA and, accordingly, void *ab initio*; and deny the New Jersey Plaintiffs' motion to dismiss.

Dated:  New York, New York
        June 16, 2010

*s/Keith R. Murphy*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Deborah H. Renner
Email: drenner@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Michelle K. Marck
Email: mmarck@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

300092456