08-01789-cgm    Doc 3310    Filed 12/07/10    Entered 12/07/10 16:00:50    Main Document
Pg 1 of 16

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Thomas R. Lucchesi
Email:  tlucchesi@bakerlaw.com
Lauren J. Resnick
Email: lresnick@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Tracy L. Cole
Email: tcole@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Hearing Date: December 21, 2010
Hearing Time: 10:00 a.m. EST
Objection Deadline:  December 16, 2010

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>  Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>  Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF, | |

Debtor.

# MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE SHAPIRO FAMILY

TO: THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, as trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving an agreement (the "Agreement")[1] by and between the Trustee and the Shapiro Family[2] pursuant to which the Shapiro Family will pay to the Trustee $550 million[3] and, in support thereof, the Trustee respectfully represents as follows:

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

[2] The Shapiro Family, for purposes of this Motion, refers to the following individuals and entities: Carl J. Shapiro, Ruth E. Shapiro, Rhonda Shapiro Zinner, Michael J. Zinner, Linda Shapiro Waintrup, Daniel I. Waintrup, Ellen Shapiro Jaffe, Robert M. Jaffe, Jennifer Segal Herman, Jonathan M. Segal, Kimberly L. Strauss, Samantha L. Strauss, Michael S. Jaffe, Steven C. Jaffe, Andrew N. Jaffe, Ashley Herman, Zachary Herman, Alexandra Herman, Rebekah Jaffe, Oliver Jaffe, Carl J Shapiro 2007 Trust dated 11/14/07, Ruth Shapiro 2007 Trust dated 11/14/2007, Carl J. Shapiro 2003 Trust U/D/T 4/9/03 As Amended, Ruth Shapiro 2003 Trust U/D/T/ 4/9/03 As Amended, Rhonda Shapiro Zinner 1993 Trust U/D/T/ DTD 7/7/93 As Amended, RSZ 2006 Irrevocable Trust, Ellen S. Jaffe 2003 Trust U/D/T DTD 5/8/03 As Amended, Jaffe Family 2004 Irrevocable Trust, Linda Shapiro Family Trust DTD 12/08/76, Linda Shapiro Waintrup 1992 Trust U/D/T DTD 3/11/92 As

*continued on the following page…*

- 2 -

## BACKGROUND

1.      On December 11, 2008 (the "Filing Date"),[4] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

2.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers

---

*…continued from the preceding page*

Amended, LSW 2006 Irrevocable Trust, Jennifer M. Segal Herman Trust U/D/T DTD 5/1/67 As Amended, Jennifer S. Herman 2007 Trust, Jennifer Segal Herman 1985 Trust Dated 4/16/85, Jonathan M. Segal 1989 Trust U/D/T DTD 3/8/89 As Amended, Jonathan M. Segal 2007 Trust, Jonathan M. Segal Trust U/D/T/ DTD 12/1/70, JSH 2006 Irrevocable Trust, Michael S. Jaffe 1989 Trust U/D/T DTD 8/24/89 As Amended, Michael S. Jaffe 2007 Trust, Michael S. Jaffe Trust U/D/T/ 9/25/71 As Amended, Steven C. Jaffe Trust U/D/T DTD 9/25/71 As Amended, Steven C. Jaffe 1989 Trust U/D/T DTD 8/24/89 As Amended, Steven C. Jaffe 2007 Trust, Andrew Jaffe Trust U/D/T DTD 5/12/75 As Amended, Andrew N. Jaffe 1993 Irrevocable Trust U/D/T DTD 6/11/93 As Amended, Andrew N. Jaffe 2007 Trust, Samantha Strauss 1985 Trust, Samantha L. Strauss 2003 Irrevocable Trust, Kimberly Lauren Strauss 1988 Trust As Amended, Kimberly L. Strauss 2006 Irrevocable Trust, Shapiro Family Limited Partnership, Carl and Ruth Shapiro Family Foundation, RSZ-JSH Partnership, Shapiro Family CLAT Joint Venture, Shapiro GGC-1 LLC, Jaffe GC-1 LLC, M/A/S Capital Corp., J Development Group and Wellesley Capital Management, Inc.

[3] As explained below, the Shapiro Family has agreed with the United States Department of Justice (the "Government") to settle civil forfeiture claims. The Trustee, the Government, and the Shapiro Family have agreed that the Shapiro Family will forfeit to the Government $625 million, of which $550 million will be paid to the Trustee pursuant to the Agreement and $75 million will be paid to the Government.

[4] In this case, the Filing Date is the date on which the United States Securities & Exchange Commission ("SEC") commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* SIPA § 78*lll*(7)(B).

3

needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE CLAIMS AGAINST THE SHAPIRO ACCOUNT HOLDERS

6. Carl Shapiro was one of BLMIS's earliest investors. Mr. Shapiro, since in or around 1961, on behalf of himself and members of the Shapiro Family, maintained BLMIS accounts in the names of various trusts, limited liability companies, partnerships, corporate entities and the like (collectively, the "Shapiro BLMIS Account Holders"), many of which were, at all relevant times, directed and controlled by Mr. Shapiro. The Shapiro BLMIS Account Holders are listed on Exhibit A to the Agreement.

7.     The Trustee's claims against the Shapiro Family and the Shapiro BLMIS Account Holders include, but are not necessarily limited to, claims under 11 U.S.C. §§ 544(b), 547, 548, and 550 and under the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) (collectively, the "Avoiding Powers Claims").

8.     Throughout this SIPA liquidation proceeding, consistent with SIPA, the Trustee has calculated the "net equity" of each BLMIS account based upon actual dollars invested in Madoff's scheme: the cash deposited, less any amounts withdrawn over the life of the account (the "net investment" or "cash in/cash out" method). Amounts withdrawn in excess of amounts deposited constitute fictitious profits. In the six year period preceding the Filing Date, the Trustee has determined that the Shapiro BLMIS Account Holders received fictitious profits from BLMIS in the total gross amount of $1,044,820,268.00 (the "Transfers").

9.     The Trustee believes that all of the Transfers are avoidable. The Shapiro Family, on behalf of themselves and the Shapiro BLMIS Account Holders, have informed the Trustee that they dispute the legal and factual basis of the Trustee's claims against them, including the Avoiding Powers Claims, and would assert certain defenses to the Trustee's claims. The Shapiro Family has also informed the Trustee that they disagree with the manner in which the Trustee has calculated his claims against them for the six years prior to the Filing Date. The Shapiro Family asserts that the claims must be calculated on a net basis during that six year period, including all deposits, and that the Trustee's methodology improperly excludes approximately $500 million in deposits made by the Shapiro Family during the six year period.

10. On or about June 22, 2009, the Trustee commenced an adversary proceeding against various persons and entities, including Robert Jaffe ("Jaffe"), who is Carl and Ruth Shapiro's son-in-law, and an entity known as M/A/S Capital Corporation ("M/A/S"), which was controlled by Jaffe. The litigation, captioned *Irving Picard, Trustee v. Cohmad Securities Corp.,* Adv. Pro. No. 09-1305 (BRL) (the "Cohmad Adversary Proceeding"), is currently pending. Jaffe was a Vice President, part owner and registered representative of Cohmad Securities Corp. ("Cohmad") The Cohmad Adversary Proceeding seeks, among other things, the recovery of: (i) any fictitious profits withdrawn by Jaffe and M/A/S from BLMIS; (ii) all monies paid by BLMIS to Jaffe and/or M/A/S for the referral of customers to BLMIS, whether directly or through Cohmad; and (iii) Jaffe's proportional share of commissions paid by BLMIS and received by Cohmad which was not paid to Cohmad's registered representatives. The $38,000,000 paid as part of the Settlement Payment (defined *infra*) by and/or on behalf of Jaffe satisfies the Trustee's demand and as such, the Agreement resolves, *inter alia*, the claims asserted by the Trustee against Jaffe and M/A/S.

11. Prior to July 2, 2009, the bar date for filing claims, certain Shapiro Family and Shapiro BLMIS Account Holders filed customer claims with the Trustee (the "Shapiro Customer Claims"). A list of the Shapiro Customer Claims, including the relevant BLMIS Account Number, is attached to the Agreement as Exhibit B.

12. Certain Shapiro BLMIS Account Holders that filed Shapiro Customer Claims subsequently filed briefs in the Bankruptcy Court and the United States Court of Appeals for the Second Circuit opposing the Trustee's determination of net equity under SIPA.

**SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION**

13. In May 2009, Mr. Shapiro, through his counsel, initiated discussions with the Trustee aimed at resolving the Trustee's claims. Mr. Shapiro cooperated with the Trustee and facilitated the investigation by providing information and making himself available for examination by the Trustee's counsel. This cooperation has sped the resolution of the matter.

14. The Trustee has conducted a comprehensive investigation of the Shapiro BLMIS Accounts and the dealings between the Shapiro Family and Madoff. This investigation includes, but is not limited to, the review and analysis of the Shapiro BLMIS Account Holders' transactional histories, as reflected in the BLMIS account statements, correspondence and other records and documents available to the Trustee; Bankruptcy Rule 2004 examinations of Carl Shapiro, Lilyan Berkowitz, and Liane Willis; meetings with counsel for the Shapiro Family; and review of third-party records and documents.

15. In addition, the Shapiro Family has provided the Trustee with financial statements on a confidential basis (the "Individual Statements"). Carl and Ruth Shapiro have also provided to the Trustee statements (the "Foundation Statements" and together with the Individual Statements, the "Financial Statements") regarding the assets and liabilities of The Carl and Ruth Family Foundation (the "Foundation").

16. A review of the Financial Statements and other information provided by the Shapiro Family supports the Shapiro Family's contention that they do not have sufficient assets to satisfy the potential judgment the Trustee could obtain in a lawsuit asserting his Avoiding Powers Claims, whether such judgment is for total withdrawals by the Shapiro Family or for the six year fictitious profits (calculated under the Trustee's methodology).

7

17. After a review of the relevant records, including records not previously available to the Trustee, and a consideration of the uncertainty inherent in any litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than proceed to litigation.

### THE AGREEMENT

18. The principal terms and conditions of the Agreement are generally as follows (as stated, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[5]

- Within 3 business days from the entry of the Approval Order, the Shapiro Family will pay to the Trustee for the benefit of the fund of customer property, the sum of $550,000,000.00, in full and final settlement of all Avoiding Powers Claims and all other claims that could have been asserted by the Trustee against the Shapiro Family or the Shapiro BLMIS Account Holders (the "Settlement Payment").

- In satisfaction of the Trustee's claims against Jaffe and M/A/S, $38,000,000 of the Settlement Payment shall be paid by or for the benefit of Jaffe and M/A/S, representing the total amount the Trustee seeks from Jaffe and satisfying in full the Trustee's claims against Jaffe and M/A/S in the Cohmad Adversary Proceeding.

- Each of the Shapiro Customer Claims will be deemed withdrawn with prejudice upon payment of the Settlement Payment. Within 10 days of entry of the Approval Order, the Shapiro Family will withdraw with prejudice all pleadings filed with the Bankruptcy Court objecting to the Trustee's determination of any of the Shapiro Customer Claims.

- The Trustee will release the Shapiro Released Parties and the Shapiro-Affiliated Entities of and from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee against any of the Shapiro Released Parties and the Shapiro-Affiliated Entities and that are based on, arise out of or relate in any way to (x) with respect to the

---

[5] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

8

    Shapiro Released Parties, BLMIS or the Shapiro BLMIS Accounts and (y) with respect to the Shapiro-Affiliated Entities, the Shapiro BLMIS Accounts. The release becomes effective upon the payment of the Settlement Payment.

- The Shapiro Family, on behalf of themselves and the Shapiro BLMIS Account Holders and the Shapiro-Related Entities, will release, acquit and absolutely discharge the Trustee and all his agents and BLMIS and its estate, of and from any and all actions or causes of action asserted or unasserted, known or unknown, now existing or arising in the future in any way related to the affairs of BLMIS or the Shapiro BLMIS Accounts. The release becomes effective upon the payment of the Settlement Payment.

- Within 10 days of entry of the Approval Order, the Shapiro Family will withdraw with prejudice the briefing that it has filed with the United States Court of Appeals for the Second Circuit in the matter captioned <u>In re Bernard L. Madoff Investment Securities LLC</u>, No. 10-2378, opposing the Trustee's determination of net equity and will cease its direct or indirect prosecution of any opposition to the Trustee's position on net equity in the SIPA proceeding.

- Within 10 days of the entry of the Approval Order, counsel for the Trustee and counsel for Jaffe and M/A/S will execute and file a written stipulation withdrawing all of the Trustee's claims against Jaffe and M/A/S in the Cohmad Adversary Proceeding, dismissing with prejudice all claims that have been or could have been raised against Jaffe and/or M/A/S in connection with the Cohmad Adversary Proceeding and withdrawing challenges by Jaffe and M/A/S to the sufficiency of the Trustee's amended complaint in the Cohmad Adversary Proceeding. Further, Jaffe and M/A/S shall cease their direct or indirect assistance of any challenge to the Trustee's amended complaint in the Cohmad Adversary Proceeding.

- The Shapiro Family, on behalf of themselves and the Shapiro BLMIS Account Holders, will submit to the Bankruptcy Court's jurisdiction with respect to the SIPA Proceeding and the settlement of the Trustee's claims against them, including the Trustee's Avoiding Powers Claims.

- Carl and Ruth Shapiro, their children, their grandchildren, Daniel Waintrup, and Michael Zinner agree to reasonably cooperate with the Trustee in his efforts to recover funds invested with BLMIS by non-Shapiro BLMIS Account Holders.

- Each member of the Shapiro Family represents and warrants to the Trustee that the Financial Statements provided to the Trustee are true

9

and accurate. The Shapiro Family acknowledges that the Trustee has relied upon their representations and financial disclosures in entering into the Agreement.

- All agreements between the Shapiro BLMIS Account Holders and BLMIS will be terminated as of the date of the Settlement Payment.
- If the Bankruptcy Court has not entered the order approving the Agreement by December 27, 2010, then, at the option of either the Trustee or the Shapiro Family and upon written notice to the other party to the Agreement, the Agreement (other than paragraphs 22, 23, and 24 thereof) will terminate and be null and void.

## DEPARTMENT OF JUSTICE SETTLEMENT

19. Simultaneously with the execution of the Agreement, the Shapiro Family also entered into a Stipulation of Settlement (the "Stipulation") with the Government resolving certain civil forfeiture claims relating to transfers made by BLMIS to the Shapiro Family. Pursuant to the Stipulation, the Shapiro Family will forfeit to the Government the amount of $625 million, of which $550 million will be credited to the Trustee. The $75 million that will be paid to the Government, some of which is contingent on the Shapiro Family's receipt of certain tax refunds, will also be distributed to the victims of the Madoff fraud. In total, the Shapiro Family has therefore agreed to pay $625 million, of which $550 million will be paid to the Trustee pursuant to the Agreement.

## RELIEF REQUESTED

20. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

21. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *accord*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

22.   The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) ( quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.),* 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

23.   In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

>   (i)    the probability of success in the litigation;
>
>   (ii)   the difficulties associated with collection;
>
>   (iii)  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
>
>   (iv)   the paramount interests of the creditors.

*In re Refco, Inc.,* 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. at 122 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

24.  The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

25.  The Trustee believes that the terms of the Agreement fall above the lowest point in the range of reasonableness and, accordingly, the Agreement should be approved by this Court. The Agreement is a global settlement that resolves all issues regarding the Trustee's claims against the Shapiro Family and the Shapiro BLMIS Account Holders without the need for protracted litigation relating to over 145 Shapiro Family Accounts and against over 80 potential defendants. As a result of such litigation, the Trustee would be indefinitely delayed in distributing to victims the significant dollars this Agreement recovers, favoring settlement and immediate payment to the Trustee. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶¶ 5, 6. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.")

26.  The Shapiro Family has asserted a number of defenses and has challenged the assertions made by the Trustee regarding the transfers from BLMIS to the Shapiro Family. While the Trustee is confident of his position, there is always risk involved in litigation,

which risk could be higher for those transfers that occurred beyond the six year period.

27. Further, the litigation risk in this particular matter is heightened by the nature of the relationship between the Shapiro Family and BLMIS. The transfers at issue extend over many decades and are dispersed over dozens of accounts, which are held in the names of various trusts, limited liability companies, partnerships, corporations, and other entities, each of which have differing liabilities and abilities to pay. Had the Trustee commenced litigation against the Shapiro Family and successfully imposed liability on members of the Shapiro Family or Shapiro Family entities, collection would likely involve the pursuit of subsequent transferees and participation in the possible bankruptcy cases of certain Shapiro Family entities, including the Foundation. This litigation could conceivably continue for years and the process could result in a recovery of not only less than any judgment amount but potentially less than the Settlement Payment, which exceeds the current net worth of Carl J. Shapiro, Ruth E. Shapiro, and Robert M. Jaffe, combined. The global nature of the settlement allows the Trustee to avoid the complications associated with litigating against and collecting judgments from numerous Shapiro BLMIS Account Holders and the individual Shapiro Family members behind each of those entities and permits swift recovery in a single payment, a result that the Trustee deems to be in the best interest of the estate.

28. With respect to Jaffe, the Agreement also resolves the portion of the Trustee's Cohmad Adversary Proceeding as relates to him. As stated above, the $38 million paid as part of the Settlement Payment represents the full amount that the Trustee demanded as to Jaffe, including all fictitious profits withdrawn by Jaffe through the M/A/S, all monies paid by BLMIS to Jaffe and/or M/A/S for the referral of customers to BLMIS, whether directly or through Cohmad, and Jaffe's proportional share of commissions paid by BLMIS

13

and received by Cohmad which was not paid to Cohmad's registered representatives. The prompt resolution of Jaffe's potential liability—and full recovery of the amounts owed by him—makes the Agreement beneficial to the BLMIS estate. (Picard Affidavit, ¶ 7).

29. Given the complexities and risks involved in proceeding with litigation and the collectability issues associated therewith, the Trustee has determined that the proposed settlement with the Shapiro Family represents a fair compromise of the Avoiding Powers Claims. While the Trustee believes that he would have prevailed in recovering all transfers to the Shapiro BLMIS Account Holders, in the instant case the litigation risk outweighs any potential additional recovery from the Shapiro Family. (Picard Affidavit, ¶ 5).

30. The ability to avoid the time and uncertainty associated with litigating this matter, combined with the fact that the Agreement will result in a substantial recovery, as discussed above, makes the settlement embodied by the Agreement extremely beneficial to BLMIS stakeholders.

31. The Agreement also furthers the interests of the customers of BLMIS by adding a substantial amount of money to the fund of customer property. (Picard Affidavit, ¶ 9). Specifically, as a result of the Agreement, when combined with prior recoveries by the Trustee, over two billion dollars will be available for distribution to BLMIS customers with allowed claims (in addition to the separate settlement with the Government, which will also be distributed to Madoff victims).

32. In addition, the Shapiro Account Holders have agreed to withdraw the Shapiro Customer Claims that they filed in the liquidation. Certain of the claims were filed by entities that were "net losers" and the withdrawal of those claims reduces the value of claims against the estate. Further, withdrawal of the Shapiro Customer Claims will reduce

14

the amounts of the reserves that will have to be maintained by the Trustee pending final determination of the net equity issue. This will allow the Trustee to distribute more funds to customers in the initial distribution. (Picard Affidavit, ¶ 10).

33.     Moreover, the Agreement represents a joint effort on behalf of the Trustee and the Government to recover as much as possible on behalf of Madoff victims. The Trustee and the Government worked collaboratively to resolve their respective potential claims against the Shapiro Family and have reached a collective agreement with the Shapiro Family that both the Trustee and the Government deem to be in the best interests of the victims. (Picard Affidavit, ¶ 12).

34.     In sum, the Trustee submits that the Agreement should be approved for two reasons (a) because it represents a reasonable compromise of the Avoiding Powers Claims that benefits the estate and the customers of BLMIS and (b) to avoid burdensome and time consuming litigation that even if successful may not result in a recovery significantly greater that the Settlement Payment because of the collectability issues discussed above. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## Notice

35.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; and (iv) the United States Attorney for the Southern District of New York. The Trustee shall also serve, by way of the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: New York, New York  
December 7, 2010

Respectfully submitted,

*/s/ David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Thomas R. Lucchesi
Email: tlucchesi@bakerlaw.com
Lauren J. Resnick
Email: lresnick@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Tracy L. Cole
Email: tcole@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*