MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Richard Roth*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br><br>SIPA Liquidation |

**OBJECTION TO TRUSTEE'S REVISED DETERMINATION OF CLAIM**

Richard Roth, by and through his attorneys, hereby objects to the Trustee's Notice of

Trustee's Revised Determination of Claim dated November 18, 2010  ("Determination Letter"),

attached as Exhibit 1, on the same basis as his original objection, and such original objection is

attached as Exhibit 2.

Dated: December 16, 2010

<div style="margin-left:50%">

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Fl.
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Richard Roth*

</div>

# EXHIBIT 1

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S REVISED DETERMINATION OF CLAIM

November 18, 2010

Richard Roth (IRA)
107 Village Clubhouse Circle
Jupiter, Florida 33458

Dear Richard Roth (IRA):

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee previously determined your claims on BLMIS Account No. 1R0103 designated as Claim No. 000711 and Claim No. 009177 pursuant to a Notice of Trustee's Determination of Claim dated April 26, 2010 (the "Prior Notice"). Based on information coming to the Trustee's attention subsequent to the issuance of the Prior Notice, the April 3, 1995 transfer from BLMIS Account No. 1R0061 has been adjusted to $398,121.62 from $381,986.38, resulting in a new deposit total of $398,121.62. The foregoing changes resulted in an adjustment of the overdrawn amount to $2,447,878.38 from $2,464,013.62. This Notice of Trustee's Revised Determination of Claim contains the corrected deposit total and the corrected adjusted overdrawn balance of $2,447,878.38.

This Notice of Trustee's Revised Determination of Claim supersedes the Prior Notice and serves as the Trustee's revised determination with respect to BLMIS Account No. 1R0103 designated as Claim No. 000711 and Claim No. 009177 (the latter of which is duplicative of Claim No. 000711) and combined (the "Combined Claim") for purposes of this determination.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Your Combined Claim for securities is **DENIED**. No securities were ever purchased for your account.

Based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,846,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $398,121.62). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($2,447,878.38) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Revised Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim redetermined in accordance with any such Court order.**

300120169.2                                    2

**PLEASE TAKE NOTICE:  The objection you previously filed in connection with the Prior Notice will be deemed an objection to the Notice of Trustee's Revised Determination of Claim ("Revised Notice").  You do not need to file another objection to the Revised Notice.**

**PLEASE TAKE NOTICE:**  If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after November 18, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:**  If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date.  Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:**  You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

<div align="center">

Clerk of the United States Bankruptcy Court for
the Southern  District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee

c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

*Irving H. Picard*
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities

</div>

cc:    Millennium Trust Company, LLC
FBO Richard Roth (41151)
820 Jorie Blvd., Suite 420
Oak Brook, Illinois 60523

**Table 1**

**DEPOSITS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/3/1995 | Rollover Trans from 1R006110 | $1,375,669.15 | $398,121.62 |
| 4/12/1995 | Rollover Trans from 1R006110 | $784,105.56 | $0.00 |
| **Total Deposits:** | | $2,159,774.71 | $398,121.62 |

**WITHDRAWALS**

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 1/4/1996 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/30/1996 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/29/1997 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/23/1998 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/27/1999 | CHECK | ($148,000.00) | ($148,000.00) |
| 1/11/2001 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/18/2001 | CHECK | ($148,000.00) | ($148,000.00) |
| 4/11/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/12/2002 | CHECK | ($200,000.00) | ($200,000.00) |
| 9/12/2003 | CHECK | ($75,000.00) | ($75,000.00) |
| 12/16/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/12/2004 | CHECK | ($60,000.00) | ($60,000.00) |
| 8/19/2004 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/20/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/17/2005 | CHECK | ($75,000.00) | ($75,000.00) |
| 10/12/2005 | CHECK | ($60,000.00) | ($60,000.00) |
| 12/13/2005 | CHECK | ($100,000.00) | ($100,000.00) |
| 8/9/2006 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/8/2006 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/12/2007 | CHECK | ($150,000.00) | ($150,000.00) |
| 6/13/2007 | CHECK | ($60,000.00) | ($60,000.00) |
| 9/19/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 10/9/2007 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/14/2007 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/5/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 6/6/2008 | CHECK | ($200,000.00) | ($200,000.00) |
| 10/9/2008 | CHECK | ($50,000.00) | ($50,000.00) |
| **Total Withdrawals:** | | ($2,846,000.00) | ($2,846,000.00) |
| **Total deposits less withdrawals:** | | ($686,225.29) | ($2,447,878.38) |

# EXHIBIT 2

MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Richard Roth*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Richard Roth by and through his attorneys, hereby objects to the Notice of Trustee's Determination of Claim dated April 29, 2010 ("Determination Letter"), attached as Exhibit A, as described herein.

## BACKGROUND

1.     Richard Roth is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BMIS").

2.     Richard Roth's final BMIS statement for Account Number 1R0103, dated November 30, 2008, states that he owns securities valued at $7,876,846.76 ("Final BMIS Statement").

3.     On December 11, 2008, the above-captioned liquidation proceeding was commenced against BMIS, pursuant to SIPA. *See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York) [Dkt. No. 4]. Irving Picard was appointed Trustee ("BMIS Trustee"), charged with overseeing the liquidation of BMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C. 78fff-1(a).

4.     On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to BMIS customers and setting forth claim-filing deadlines. *See* Order [Dkt. No. 12]. Upon information and belief, the BMIS Trustee disseminated notice and claim forms to BMIS's customers in accordance with the Court's Order.

5.     The December 23, 2008 Order further provided that, to the extent the BMIS Trustee disagrees with the amount set forth on a customer claim form, the BMIS Trustee "shall

notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, *and the reason therefor . . . .*" *See* Order at 6 (emphasis added) [Dkt. No. 12].

6.      On or about May 21, 2009, Richard Roth submitted a customer claim form to SIPC for Account Number 1R0103 (Exhibit B) ("Mr. Roth's Customer Claim").[1]   Richard Roth's Final BMIS Statement was submitted with his Customer Claim.   *See* Mr. Roth's Customer Claim (Exhibit B).

7.      On April 26, 2010, the BMIS Trustee sent Richard Roth the Determination Letter disallowing his claim in its entirety, rather than allowing the claim in the amount of $7,876,846.76, the total amount that he claimed. *See* Determination Letter (Exhibit A).

8.      Richard Roth hereby objects to the Determination Letter for the reasons described below.

## GROUNDS FOR OBJECTION

9.      First Objection.   The Determination Letter fails to comply with this Court's December 23, 2008 Order, which directs the BMIS Trustee to satisfy customer claims and deliver securities in accordance "with the Debtor's books and records." Dec. 23, 2008 Order at 5 [Dkt. No. 12].   Included with Richard Roth's Customer Claim was his final BMIS statement showing a final balance of $7,876,846.76. *See* the Customer Claim (Exhibit B).   The Final BMIS statement is the best evidence of the amount owed based on the Debtor's books and records.   Accordingly, the claim should be allowed in the full amount of $7,876,846.76.

10.     Second Objection.   The Trustee has set forth no legal basis for disallowing Richard Roth's Customer Claim in full as filed.   The only explanations set forth in the Determination Letter are that (1) "[n]o securities were ever purchased for your account," and (2)

---

[1] In accordance with the Court's Order dated October 20, 2009 [Dkt. No. 533], Claimant's personal identification data has been redacted from Exhibit B.

"the amount of money you withdrew from your account at BLMIS *** is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $381,986.38)." Determination Letter at 1 (Exhibit A). Neither of these purported grounds for disallowance have any statutory or other legal basis. Moreover, the Determination Letter:

(a)    does not clearly provide "the reason" for the disallowance, as required by the Court's December 23, 2008 Order, *see* Order [Dkt. No. 12];

(b)    is inadequate to rebut the prima facie validity of the Customer Claim as provided in Section 502(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3001(f); and

(c)    violates general principles of applicable law requiring that an objection to a proof of claim set forth, at a minimum, the relevant facts and legal theories upon which the objection is based. *See, e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same).

11.    Third Objection. 15 U.S.C. Section 78fff-2(b) provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). Upon information and belief, the Trustee objects to the Customer Claim on the ground that "net equity" should be determined by principal contributed to the account less any withdrawals, without regard to any gains reflected in the Final BMIS Statement or prior BMIS statements. *See* Determination Letter Table 1. *See also* Memorandum Of Law In Support Of Trustee's Motion For An Order Upholding Trustee's Determination Denying "Customer" Claims For Amounts Listed On Last Customer Statement, Affirming Trustee's Determination Of Net Equity, And

Expunging Those Objections With Respect To The Determinations Relating To Net Equity, dated October 16, 2009 [Dkt. No. 525]. This is incorrect for the following reasons:

(a)    The Trustee's construction of the statute ignores SIPA's express language which defines "net equity" as

> the dollar amount of the account or accounts of a customer, to be determined by --
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date;
>
> *********

15 U.S.C. § 78lll(11). The Trustee's proposed formulation has no support in the language of the statute or interpreting case law and in fact, adds words and concepts to the statute which do not exist.[2]

(b)    SIPA's legislative history emphasizes Congress' intention that the statute protect customer expectations by ensuring that customers of retail brokerage firms can rely on their account statements. The BMIS statements received by Richard Roth stated that he owned a list of blue chip securities. It makes no difference whether the securities were purchased:

> A customer generally expects to receive *what he believes* is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, it is not always possible to provide to customers that which they expect to receive,

---

[2] Richard Roth is, of course, aware of the Court's Memorandum Decision dated March 1, 2010 [Dkt. No. 1999] regarding the Trustee's determination of "net equity." However, for the reasons set forth herein, Richard Roth respectfully believes that the Court's March 1, 2010 ruling is incorrect and will be overturned on appeal.

> that is, securities which they maintained in their brokerage
> account. . . . By seeking to make customer accounts whole and
> returning them to customers in the form they existed on the filing
> date, the amendments . . . would satisfy customers' legitimate
> expectations . . . .

S. Rep. No. 95-763, at 2 (1978) (emphasis added). While there may be a basis to disallow

customer claims for wholly fictitious securities of nonexisting entities, here the securities set

forth on Richard Roth's Final BMIS Statement and prior statements were those of actual

companies listed on the stock exchange.

       (c)    Richard Roth deposited funds in BMIS in the expectation the amount

would grow, his account statements showed such growth, and the balance on his Final BMIS

Statement reflects the benefit of this bargain. The Trustee's formula is an improper and wholly

inadequate measure of loss. In *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708 (6th Cir.

2007), the Court declined to set aside an arbitration award that appeared to have applied an

expectancy measure of damages against a successor in a Ponzi scheme case, and rejected the

"money in/money out" formula as not reflecting the expectations of the parties. The Court

explained:

> Lehman's out-of-pocket theory misapprehends the harm suffered
> by Plaintiffs and the facts of this case. Plaintiffs gave $21 million
> to Gruttadauria [the dishonest broker], not to hide under a rock or
> lock in a safe, but for the express purpose of investment, with a
> hope -- indeed a reasonable expectation -- that it would grow.
> Thus, the out-of-pocket theory, which seeks to restore to Plaintiffs
> only the $21 million they originally invested less their subsequent
> withdrawals, is a wholly inadequate measure of damages. Had
> Gruttadauria invested Plaintiffs' money as requested, their funds
> would like grown immensely, especially considering that Plaintiffs
> invested primarily throughout the mid-1990s, which, had they
> hired an honest broker . . . , would have placed their money in the
> stock market during one of the strongest markets in recent
> memory. In fact, the fictitious statements issued by Lehman,
> which were designed to track Plaintiffs' funds as if they had been
> properly invested, indicate that Plaintiffs' accounts would have
> grown to more than $37.9 million (even accounting for the

withdrawal of more than $31.3 million).  Plaintiffs thus could have reasonably believed that they were entitled to the full $37.9 million balance shown, regardless of the amounts of their previous deposits and withdrawals.

*Visconsi*, 244 Fed. Appx. at 713-14 (emphasis added).  This applies precisely to the Richard Roth's claim.

(d)    The Trustee's Determination Letter is contrary to SIPC's own policies and practices, as reflected in the sworn testimony of Stephen Harbeck, SIPC's president and CEO, and its actions in similar liquidation proceedings.  For example, in the *New Times* SIPA liquidation, in the context of discussing claims filing deadlines, Harbeck acknowledged that SIPC would replace securities listed on customer account statements, even if the securities had never been purchased:

> Harbeck:  [I]f you file within sixty days, you'll get the securities, without question.  Whether -- if they triple in value, you'll get the securities. . . . Even if they're not there.

> Court:  Even if they're not there.

> Harbeck:  Correct.

> Court:  In other words, if the money was diverted, converted --

> Harbeck:  And the securities were never purchased.

> Court.  Okay.

> Harbeck:  And if those positions triple, we will gladly give the people their securities positions.

Transcript at 37-38, *In re New Times Securities Services, Inc.*, No. 00-8178 (Bankr. E.D.N.Y. July 28, 2000) (Exhibit C).  The Second Circuit's discussion of SIPC's claims processing in *New Times* further indicates that, with respect to customers who thought they were invested in listed securities, SIPC paid customer claims based on the customers' final account statements, even where the securities had never been purchased:

> Meanwhile, investors who were misled . . . to believe that they
> were investing in mutual funds that in reality existed were treated
> much more favorably.  Although they were not actually invested in
> those real funds -- because Goren never executed the transactions -
> - the information that these claimants received on their account
> statements mirrored what would have happened had the given
> transaction been executed.  As a result, the Trustee deemed those
> customers' claims to be "securities claims" eligible to receive up to
> $500,000 in SIPC advances.   The Trustee indicates that this
> disparate treatment was justified because he could purchase real,
> existing securities to satisfy such securities claims.  Furthermore,
> the Trustee notes that, if they were checking on their mutual funds,
> the "securities claimants," . . . could have confirmed the existence
> of those funds and tracked the funds' performance against Goren's
> account statements.

*In re New Times Secs. Servs.*, 371 F.3d 68, 74 (2d Cir. 2004); *see also* Brief of Appellant SIPC at

23-24, *In re New Times Sec. Servs., Inc.*, No. 05-5527 (Dec. 30, 2005) (arguing that under SIPA

"reasonable and legitimate claimant expectations on the filing date are controlling even where

inconsistent with transactional reality" such as when the customer receives a confirmation

reflecting a purchase, "even where the purchase never actually incurred and the debtor instead

converted the cash deposited by the claimant to fund that purchase").[3]  Richard Roth is situated

no differently from the "securities claimants" discussed by the Second Circuit.  Accordingly, his

claim should be recognized in full.

12.     In the event that the Court should determine that claimed gains on deposited funds

should not be allowed, then in the alternative, Richard Roth is entitled to recover interest on such

deposited amounts.  Such interest is required as a matter of state law, and the United States

Supreme Court has determined that in bankruptcy cases, creditor claims, including the right to

interest, are determined by state law.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S.

---

[3] There are similar statements in S. Rep. No. 95-763, at 2 (1978) (SIPA seeks to make customers
whole even if securities of customers are "lost ... misappropriated, never purchased or even
stolen"); H.R. Rep. No. 95-746, at 21 (1977) (customer expects to receive what he believes is in
his account even if securities were "never purchased").

443, 450-51 (2007) ("[W]e have long recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

      (a)    Under New York law, which is applicable here, funds deposited with the Debtors under these circumstances are entitled to interest. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq.* Accordingly, Customer claims should be recalculated by adding interest to all funds deposited by customers such as Richard Roth.

      (b)    Under New York law, which is applicable here, customers are entitled to prejudgment interest and any returns the Debtors earned on the deposited funds under principles of unjust enrichment. Accordingly, Customer claims should be recalculated by adding the amounts earned by the Debtors on Richard Roth's deposits. *See, e.g., Steinberg v. Sherman,* No. 07-1001, 2008 U.S. Dist. LEXIS 35786, at *14-15 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion).

      13.    <u>Fourth Objection.</u> The BMIS Trustee's action in reducing the amount shown on the Customer Claim by any prior gains reflected on his final BMIS statement or prior BMIS statements is an attempt to avoid such gains without alleging any grounds for avoidance or proving that such gains are avoidable under the Bankruptcy Code's avoidance provisions. As such, any such disallowance is improper and unjustified, and the Determination Letter should be stricken. *See* Fed. R. Bankr. P. 7001(1); 7008.

      14.    <u>Fifth Objection.</u> The Trustee's determination assumes that BMIS never earned funds and therefore all gains reported to customers were "fictitious." This assumption is

contrary to fact. There is significant evidence that, at some time, BMIS was at least in part a legitimate business and therefore all or a portion of the gains were not fictitious. The burden is on the Trustee to show that BMIS never earned any amounts to support customer gains and, if at some point it did earn funds, the dates when it ceased to do so. The Trustee is required to state and prove when the Ponzi scheme began.

15.    Sixth Objection.    Richard Roth was required to pay significant income taxes on distributions which the Trustee has alleged are fictitious. The Trustee has justified his proposed method of calculating claims is fair and reasonable because fictitious gains should not compete dollar for dollar with claims for funds actually deposited by customers, and his proposed method equalizes the treatment of all customers. This justification is not correct insofar as customers did not have the use of reported but fictitious gains because of required income tax payments. Even assuming *arguendo* the Trustee's method is correct, Richard Roth's customer claims should be adjusted by adding all amounts he actually paid as income taxes on allegedly fictitious gains to equalize his treatment with that of other customers. See *SEC v. Byers*, No. 08-7104, 2009 U.S. Dist. LEXIS 63741, at *11-13 (S.D.N.Y. 2009) (in equitable distribution proceeding, allowing claims for reinvestment of fictitious profits to equitably treat reinvesting customers as compared with customers receiving distributions).

16.    Seventh Objection.    The Determination Letter purports to calculate the "net equity" for Richard Roth's BMIS account on the basis of certain withdrawal and deposit transactions for which Richard Roth has no records. Many of the transactions in question allegedly occurred more than ten years ago. It is unreasonable to anticipate the customers would maintain records of accounts for long periods of time given (a) general limitations on record retention requirements under tax law and other applicable rules governing record retention; (b)

10

the apparent safety and solvency of BMIS as acknowledged by the United States Securities and

Exchange Commission and other securities agencies which had investigated the affairs of BMIS;

and (c) the fact that historical records such as those in question are usually available from

financial institutions, including broker-dealers, upon request.   Under these circumstances, the

Trustee should be required to prove that the alleged withdrawal transactions occurred by

furnishing the appropriate records to Richard Roth and, absent such records, such transactions

should be deleted from the calculation of Richard Roth's "net equity."   Likewise, the Trustee

should be required to prove that all deposit transactions are completely listed by furnishing the

appropriate records to the Richard Roth.

## RELIEF REQUESTED

17.    For the reasons stated herein, Richard Roth's Customer Claim should be allowed
in its entirety.

18.    For the reasons stated herein, the Court should direct SIPC to issue immediate
payment to Richard Roth in the amount of $500,000.00 plus interest from the date of the
Determination Letter without imposing conditions to payment which are not authorized or
warranted.

19.    The BMIS Trustee's determination amounts to an improper disallowance of a
claim that has prima facie validity.   *See* Bankruptcy Code § 502(a).   The BMIS Trustee has
offered no factual or legal basis for his Determination.   The BMIS Trustee's Determination
Letter, and the objections contained therein, should be stricken, or alternatively, the BMIS
Trustee should describe his position in detail including all relevant facts, legal theories, and
authorities.   Upon the filing of such a statement, this matter will be a contested proceeding under
Rule 9014, and Richard Roth will file a response.

11

20.    Richard Roth requests such other relief as may be just and equitable.

## CONCLUSION

21.    Richard Roth reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Richard Roth's right to object on any additional grounds.

22.    Richard Roth reserves all rights set forth Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

23.    Richard Roth reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

24.    Richard Roth incorporates by reference all reservations of rights set forth in the Customer Claim.

Dated: May 10, 2010

<div style="margin-left:40%">

s/ Jonathan M. Landers
MILBERG LLP
Jonathan M. Landers
Matthew Gluck
Brad N. Friedman
Sanford P. Dumain
Jennifer L. Young
One Pennsylvania Plaza, 48th Fl.
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

</div>

SEEGER WEISS LLP
Stephen A. Weiss
Christopher M. Van DeKieft
Parvin Aminolroaya
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Plaintiff Richard Roth*

# Exhibit A

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

April 26, 2010

Richard Roth (IRA)
107 Village Clubhouse Circle
Jupiter, Florida  33458

Dear Richard Roth (IRA):

## PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No. 1R0103 designated as Claim Number 711 and Claim Number 9177 (the latter of which is duplicative of Claim Number 711) and combined ("Combined Claim") for purposes of this determination. This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,846,000.00), as more fully set forth in Table 1 annexed hereto and

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $381,986.38). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($2,464,013.62) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after April 26, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

<div align="center">

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

</div>

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities

cc:    Millenium Trust Company
FBO Richard Roth
820 Jorie Blvd., Suite 420
Oak Brook, IL 60523

300082971.1                                                   3

| | | DEPOSITS | |
| --- | --- | --- | --- |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 4/3/1995 | Rollover Trans from 1R006110 | $1,375,669.15 | $381,986.38 |
| 4/12/1995 | Rollover Trans from 1R006110 | $784,105.56 | $0.00 |
| **Total Deposits:** | | $2,159,774.71 | $381,986.38 |

| | | WITHDRAWALS | |
| --- | --- | --- | --- |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 1/4/1996 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/30/1996 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/29/1997 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/23/1998 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/27/1999 | CHECK | ($148,000.00) | ($148,000.00) |
| 1/11/2001 | CHECK | ($148,000.00) | ($148,000.00) |
| 12/18/2001 | CHECK | ($148,000.00) | ($148,000.00) |
| 4/11/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/12/2002 | CHECK | ($200,000.00) | ($200,000.00) |
| 9/12/2003 | CHECK | ($75,000.00) | ($75,000.00) |
| 12/16/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/12/2004 | CHECK | ($60,000.00) | ($60,000.00) |
| 8/19/2004 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/20/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/17/2005 | CHECK | ($75,000.00) | ($75,000.00) |
| 10/12/2005 | CHECK | ($60,000.00) | ($60,000.00) |
| 12/13/2005 | CHECK | ($100,000.00) | ($100,000.00) |
| 8/9/2006 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/8/2006 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/12/2007 | CHECK | ($150,000.00) | ($150,000.00) |
| 6/13/2007 | CHECK | ($60,000.00) | ($60,000.00) |
| 9/19/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 10/9/2007 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/14/2007 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/5/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 6/6/2008 | CHECK | ($200,000.00) | ($200,000.00) |
| 10/9/2008 | CHECK | ($50,000.00) | ($50,000.00) |
| **Total Withdrawals:** | | ($2,846,000.00) | ($2,846,000.00) |
| **Total deposits less withdrawals:** | | ($686,225.29) | ($2,464,013.62) |

Baker&Hostetler LLP

3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485

RICHARD ROTH (IRA)
107 VILLAGE CLUBHOUSE CIRCLE
JUPITER, FLORIDA 33458



UNITED STATES POSTAGE
PITNEY BOWES
$ 00.44°
02 1M
000 4245726   APR 26 2010
MAILED FROM ZIP CODE 44114

# Exhibit B

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

# REDACTED

(Please print or type)

Name of Customer: Richard Roth
Mailing Address: 107 Village Clubhouse Circle
City: Jupiter                          State: FL                  Zip: 33458
Account No.: 1-R0103
Taxpayer I.D. Number (Social Security No.):        -8252

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.   CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.      Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of        $ 0.00

    b.    I owe the Broker a Debit (Dr.) Balance of             $ 0.00

    c.    If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC."

       If you wish to make a payment, **it must be enclosed**

       with this claim form.                                          $ 0.00

    d.    If balance is zero, insert "None."                      None

502180406                              1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|:---:|:---:|
| a. | The Broker owes me securities | ✓ | |
| b. | I owe the Broker securities | | ✓ |
| c. | If yes to either, please list below: | | |

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | Number of Shares or Face Amount of Bonds | |
| See Nov. 30, 2008 R0103 statements, attached hereto as Exhibit A | | | |
| $7,991,766.76 (market value of securities long , per R0103-3 statement) | | | |
| 278,850.00 (market value of securities long, per R0103-4 statement) | | | |
| (393,770.00) ( market value of securities short, per R0103-4 statement) | | | |
| Total   $7,876,846.76 | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.** See Exhibits A and B, and documents submitted herewith.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:**  **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | ✓ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | | ✓ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | ✓ |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Stephanie Hatzakos, Esq., Milberg LLP, One Pennsylvania Plaza, New York, NY 10119                      .

502180406                                              3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____5/21/09_____          Signature _____

Date _____          Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                        4

# Exhibit A



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London □

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 486-8178

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT NTC & CO.
RICHARD ROTH

107 VILLAGE CLUBHOUSE CIRCLE
JUPITER FL 33458-

YOUR ACCOUNT NUMBER: 1-R0103-3-0
PERIOD ENDING: 11/30/08
YOUR TAXPAYER IDENTIFICATION NUMBER: ******6253
PAGE 1

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 476,211.82 |
| 7,088 | | 195 | WELLS FARGO & CO NEW | 28.800 | 211,803.40 | |
| 5,070 | | 697 | HEWLETT PACKARD CO | 34.900 | 177,145.00 | |
| 4,394 | | 4521 | WAL-MART STORES INC | 55.830 | 245,492.02 | |
| 2,973 | | 503 | INTERNATIONAL BUSINESS MACHS | 84.270 | 250,840.71 | |
| 10,647 | | 8847 | EXXON MOBIL CORP | 72.880 | 776,378.36 | |
| 11,661 | | 9549 | INTEL CORP | 14.510 | 169,657.11 | |
| 5,777 | | 13675 | JOHNSON & JOHNSON | 59.580 | 332,500.66 | |
| 7,605 | | 18000 | J.P. MORGAN CHASE & CO | 38.530 | 293,332.65 | |
| 4,056 | | 22335 | COCA COLA CO | 44.660 | 181,130.29 | |
| 2,356 | | 25652 | MCDONALDS CORP | 55.370 | 131,099.42 | |
| 4,394 | | 30978 | MERCK & CO | 28.550 | 125,623.70 | |
| 16,055 | | 35304 | MICROSOFT CORP | 21.810 | 350,801.55 | |
| 8,112 | | 39630 | ORACLE CORPORATION | 17.300 | 140,661.60 | |
| 3,211 | | 52600 | PEPSICO INC | 56.410 | 181,260.51 | |
| 1,859 | | 53110 | APPLE INC | 100.790 | 187,424.01 | |
| 13,689 | | 56935 | PFIZER INC | 16.940 | 232,436.60 | |
| 3,111 | | 57435 | ABBOTT LABORATORIES | 54.610 | 175,480.71 | |
| 6,084 | | 61200 | PROCTER & GAMBLE CO | 64.080 | 390,105.72 | |
| 2,197 | | 61783 | AMGEN INC | 59.160 | 130,061.52 | |
| 4,225 | | 65556 | PHILLIP MORRIS INTERNATIONAL | 43.600 | 184,379.00 | |
| 10,140 | | 66088 | BANK OF AMERICA | 21.500 | 219,327.60 | |
| 3,380 | | 69912 | QUALCOMM INC | 34.770 | 114,277.60 | |
| 10,985 | | 70414 | CITI GROUP INC | 12.510 | 137,862.35 | |

CONTINUED ON PAGE 2

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**PAGE** 2

**PERIOD ENDING** 11/30/08

**TAX YEAR/IDENTIFICATION NUMBER** ******6255

**YOUR ACCOUNT NUMBER** 1-R0103-3-0

**BERNARD L MADOFF**
INVESTMENT SECURITIES LLC
New York ◊ London

**DUPLICATE** FOR ACCOUNT NTC & CO.
RICHARD ROTH
101 VILLAGE CLUBHOUSE CIRCLE
JUPITER     FL 33458

| BOUGHT Received | SOLD Delivered | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 2,535 | | 74238 | SCHLUMBERGER LTD | 49.480 | 125,532.80 | |
| 6,004 | | 74740 | COMCAST CORP | 16.510 | 100,609.84 | |
| | | | | | | |
| 11,999 | | 78564 | AT&T INC | 27 | 324,452.00 | |
| 3,042 | | 79066 | CONOCOPHILLIPS | 52.510 | 159,856.42 | |
| 2,023 | | 82890 | UNITED PARCEL SVC INC CLASS B | 52.020 | 105,518.12 | |
| | | | | | | |
| 12,337 | | 88392 | CISCO SYSTEMS INC | 16.730 | 206,891.01 | |
| 3,549 | | 87216 | U S BANCORP | 29.530 | 104,942.97 | |
| 4,225 | | 87718 | CHEVRON CORP | 73.430 | 310,410.75 | |
| 9,142 | | 91542 | UNITED TECHNOLOGIES CORP | 53.160 | 107,889.48 | |
| 21,463 | | 92044 | GENERAL ELECTRIC CO | 19.630 | 422,176.69 | |
| 5,746 | | 95866 | VERIZON COMMUNICATIONS | 30.410 | 174,496.86 | |
| 507 | | 96370 | GOOGLE | 537.400 | 171,081.80 | |
| | 50,000 | 20118 | U S TREASURY BILL DUE 12/18/2008 | 99.942 | | 49,971.00 |
| | | | | 99.938 | | 7,679,068.00 |
| | 7,675,000 | 22805 | U S TREASURY BILL DUE 2/12/2009 | | | |
| | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 2.19 |
| 74,192 | | A7905 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 74,192.00 |
| | | | CONTINUED ON PAGE 3 | | | |

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

883 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
FAX (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT NTC FBO
RICHARD ROTH

107 VILLAGE CLUBHOUSE CIRCLE
JUPITER                    FL  33458

| PAGE | PERIOD ENDING | YOUR TAX PAYER IDENTIFICATION NUMBER | YOUR ACCOUNT NUMBER |
|---|---|---|---|
| 3 | 11/30/08 | *****6253 | 1-R0103-3-0 |

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 2 | 39,350 | 2727 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | | 4.03 |
| 9 | | | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | DIV | | 39,350.00 |
| 9 | 39,350 | 52741 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET DIV 11/19/08 | 1 | 39,350.00 | |
| 9 | 525,000 | 57202 | FIDELITY SPARTAN U.S. TREASURY BILL DUE 03/26/2009 | 99.926 | 524,611.50 | |
| 9 | 21,068 | 61779 | FIDELITY SPARTAN U.S. TREASURY MONEY MARKET | 1 | 21,068.00 | |
| | | | NEW BALANCE | | 950,400.87 | |
| | | | SECURITY POSITIONS | | | |
| 9 | 11,999 | | AT&T INC. | MKT PRICE= 28.560 | | |
| 9 | 3,211 | | ABBOTT LABORATORIES | 55.300 | | |
| 9 | 2,197 | | ARGENT INC. | 57.540 | | |
| 9 | 1,859 | | APPLE INC. | 92.670 | | |
| 9 | 10,140 | | BANK OF AMERICA | 16.250 | | |
| 9 | 4,225 | | CHEVRON CORP. | 77.010 | | |
| 9 | 12,337 | | CISCO SYSTEMS INC | 16.540 | | |
| 9 | 10,985 | | CITI GROUP INC. | 16.390 | | |
| 9 | 4,056 | | COCA COLA CO | 46.070 | | |
| | | | CONTINUED ON PAGE  4 | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES
New York □ London

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT MTC & CO...
RICHARD ROTH

107 VILLAGE CLUBHOUSE CIRCLE
JUPITER FL 33458

Date: 11/30/06
Account Number: 1-ZO103-3-0

| BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 6,034 | | | COMCAST CORP | 17,340 | | |
| 3,042 | | | CL A | 52,520 | | |
| 10,647 | | | CONOCOPHILLIPS | 80,150 | | |
| 21,463 | | | EXXON MOBIL CORP | 17,170 | | |
| 507 | | | GENERAL ELECTRIC CO | 292,960 | | |
| 5,070 | | | GOOGLE | 35,780 | | |
| 1,661 | | | HEWLETT PACKARD CO | 81,600 | | |
| 2,873 | | | INTEL CORP | 31,560 | | |
| 7,505 | | | INTERNATIONAL BUSINESS MACHS | 56,830 | | |
| 5,577 | | | J.P. MORGAN CHASE & CO | 58,750 | | |
| 2,366 | | | JOHNSON & JOHNSON | 26,720 | | |
| 4,394 | | | MCDONALDS CORP | 20,220 | | |
| 16,055 | | | MERCK & CO | 56,700 | | |
| 8,112 | | | MICROSOFT CORP | | | |
| 3,211 | | | ORACLE CORPORATION | | | |
| 13,689 | | | PEPSICO INC | | | |
| 4,225 | | | PFIZER INC | 42,160 | | |
| 6,044 | | | PHILLIP MORRIS INTERNATIONAL | 64,350 | | |
| 3,880 | | | PROCTER & GAMBLE CO | 33,510 | | |
| 2,535 | | | QUALCOMM INC | 50,740 | | |
| 21,968 | | | SCHLUMBERGER LTD | | | |
| | | | FIDELITY SPARTAN | | | |
| 3,549 | | | U S TREASURY MONEY MARKET | 28,980 | | |
| 2,028 | | | U S GOV... | 57,600 | | |
| | | | UNITED PARCEL SVC INC | | | |
| | | | CLASS B | | | |

CONTINUED ON PAGE

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT   NYC & CO.
RICHARD ROTH

107 VILLAGE CLUBHOUSE CIRCLE
JUPITER       FL   33458

| PERIOD ENDING | TAX PAYER IDENTIFICATION NUMBER |
|---|---|
| 11/30/08 | *****2253 |

TRANSACTION NUMBER: 1-R0103-3-0

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 525,000 | | | U S TREASURY BILL DUE 03/26/2009 | 99.971 | | |
| | | | 3/25/2009 | | | |
| 2,020 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| 5,748 | | | VERIZON COMMUNICATIONS | 32.250 | | |
| 4,392 | | | WAL-MART STORES INC | 55.080 | | |
| 7,098 | | | WELLS FARGO & CO NEW | 28.590 | | |
| | | | MARKET VALUE OF SECURITIES-LONG   19,619,706.75   SHORT | | | |



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

***DUPLICATE***   FOR ACCOUNT   NYC & CO.
RICHARD ROTH

107 VILLAGE CLUBHOUSE CIRCLE
JUPITER            FL  33458

| BOUGHT | SOLD | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| | | | BALANCE FORWARD | | | 478,215.00 |
| | 169 | 43956 | S & P 100 INDEX | 95.000 | | 266,851.00 |
| | 169 | 48.82 | NOVEMBER 460 CALL | 17,300 | 300,989.00 | |
| | | 34386 | NOVEMBER 50 PUT | 26 | | |
| | 169 | 38711 | DECEMBER 430 CALL | 30 | 507,169.00 | 439,231.00 |
| | | | S & P 100 INDEX | | | |
| | 169 | 43030 | DECEMBER 320 PUT | 3 | 50,869.00 | |
| | 169 | 47363 | NOVEMBER 460 CALL | 37 | | 625,131.00 |
| | | | S & P 100 INDEX | | | |
| | | | NEW BALANCE | | | 9567,601.00 |
| | | | SECURITY POSITIONS | | | |
| | | | S & P 100 INDEX | 25.000 | MKT PRICE | |
| | 169 | | DECEMBER 430 CALL | 16.500 | | |
| | | | S & P 100 INDEX | | | |
| | | | DEC 430 420 PUT | | | |
| | | | MARKET VALUE OF SECURITIES | | | 9551,770.00 |
| | | | LONG  271,865.01 | | SHORT | |

# Exhibit B

## EXHIBIT B

1. This Claim Form, exhibits, and supporting documentation (collectively "Claim Form") is submitted pursuant to the December 23, 2008 Order of the Honorable Burton R. Lifland and the instructions disseminated by Irving H. Picard, Trustee for Bernard L. Madoff Investment Securities LLC ("Trustee"), on December 11, 2008.

2. The information provided in the Claim Form is based on the information provided in the Claimant's latest Madoff account statement and any additional information known by the Claimant as of the date of the submission of the Claim Form. The Claimant reserves the right to amend and/or supplement this Claim Form upon the receipt of further information, or upon request by the Trustee for additional information.

3. The Claimant reserves the right to amend the Claim Form in the event of any recoveries by the Trustee or any other party under the avoidance powers of the Bankruptcy Code or otherwise, or in the event of rejections of executory contracts pursuant to Bankruptcy Code Section 365, whether such amendments are made pursuant to Bankruptcy Code Sections 105, 502(g), or 502(h), Bankruptcy Rule 3002(c)(3), (4), other provisions of applicable bankruptcy law, or general principles of law and equity.

4. The Claimant hereby requests that the Claim Form be considered as a proof of claim in *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789 (Bankr. S.D.N.Y.).

5. This Claim Form is required to be submitted pursuant to the Court's January 2, 2009 Order and the Trustee's instructions to the Claimant. To the extent permitted by the applicable law, the Claimant does not consent to the jurisdiction of the Bankruptcy Court nor does Claimant waive any right to trial by jury.

6. The Claimant reserves all rights, claims, and/or defenses as to and/or against any and all parties potentially liable for the losses sustained by the Claimant, including, without limitation, Bernard L. Madoff Investment Securities LLC and its owners, partners, employees, and affiliates, as well as any potentially liable third parties including, without limitation, investment advisors, "feeder funds," accountants, and auditors.

7. The Claimant further reserves all rights, claims, and/or defenses as to and/or against any persons and/or creditors asserting claims against Bernard L. Madoff Investment Securities LLC, its employees, owners, and/or affiliates, in bankruptcy or otherwise.

8. The Claimant reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever, notwithstanding the submission of any such information to the Trustee.

9. To the extent the Claimant has disclosed to the Trustee documents containing accounting and/or legal advice, the Claimant does not waive any potential privileges applicable thereto.

Claimant: *Richard Roth*

10. The Claimant reserves all rights with respect to submitting information to the Internal Revenue Service regarding gains, losses, and/or theft of assets.

11. The Claim Form and supporting documents contain confidential information. The Claimant submits this information to the Trustee subject to the condition that this information will not to be disclosed to any third parties, other than under seal to the Court, absent the Claimant's express consent or Court order.

12. During the lifetime of the account, the Claimant may have contributed and/or withdrawn sums of money. The Claimant's final account balance set forth in Exhibit A takes into account any such contributions and/or withdrawals. Claimant continues to search for additional documents relating to such contributions or withdrawals and reserves the right to supplement this submission if additional documents are found.

13. The Claimant submits herewith documents in support of the Claimant's claim. The Claimant reserves any arguments that such documents are not relevant to the Trustee's inquiry. The Claimant further reserves the right to supplement this submission, including the submission of additional documents if deemed necessary. Below is a list of the documents submitted herewith:

**2008**

- BMIS account statements for time period ending 11/30/08.

*laimant: Richard Roth*

2

# Exhibit C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------

In the Matter of:                         )
                                          )
NEW TIMES SECURITIES                      )
SERVICES, INC.                            )
                                          )
            Debtor                        )
                                          )

-----------------------------------

1) Application filed by proposed class claimants to
authorize and approve the filing of a class proof of claim
and for a certification of the putative class and to
shorten time for the hearing

Memorandum by proposed class claimants

Memorandum by Plaintiff Securities Investor Protection
Corporation

Memorandum of law by Trustee James W. Giddens

Affidavit of Derek J. T. Adler in opposition


                         United States Bankruptcy
                         Court
                         Westbury, New York

                         July 28, 2000
                         10:00 a.m.


B E F O R E:

            HONORABLE STAN BERNSTEIN
            United States Bankruptcy Judge

A P P E A R A N C E S:

      HUGHES HUBBARD & REED LLP
            Attorney for James W. Giddens, Trustee
      One Battery Park Plaza
      New York, New York  10004
            BY:  JAMES W. KOBAK, JR, ESQ.
                 DANIEL S. LUBELL, ESQ.


      (516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

37

1        THE COURT:  Okay, so, you're telling me that

2   this is very different from the open transaction.

3        MR. HARBECK:  Correct.

4        THE COURT:  Okay, so, now we're dealing with a

5   closed transaction, where the money is there, you have

6   interest in a --

7        MR. HARBECK:  The securities are there.

8        THE COURT:  -- real --

9        MR. HARBECK:  Not the money is there.  The

10   securities are supposed to be there.

11        THE COURT:  No, no -- yeah, you have -- you

12   have an ownership interest in the securities; namely,

13   shares of the mutual fund, of a mutual fund that is real,

14   existing as of the petition date.

15        MR. HARBECK:  Dreyfus, Janus, you name it.

16        THE COURT:  Okay.

17        MR. HARBECK:  Now, what Congress did is it said

18   it wants to give the Trustee and SIPC a very good idea of

19   what securities have to -- that the Trustee is going to

20   have to go out into the marketplace and buy.  So, if you

21   file within sixty days, you'll get the securities, without

22   question.  Whether -- if they triple in value, you'll get

23   the securities.

24        But, if --

25        THE COURT:  Even -- even if --

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

38

MR. HARBECK:  Even if they're not there.

THE COURT:  Even if they're not there.

MR. HARBECK:  Correct.

THE COURT:  In other words, if the money was diverted, converted --

MR. HARBECK:  And the securities were never purchased.

THE COURT:  Okay.

MR. HARBECK:  And, if those positions triple, we will gladly give the people their securities positions.

THE COURT:  But, you've got to jump.

MR. HARBECK:  But, you've got to act fast, yeah.  And, Congress did that --

THE COURT:  Because -- because --

MR. HARBECK:  -- because of the fluctuations.

THE COURT:  -- because there's a concern -- because there's a concern that the value of this mutual fund might skyrocket and it's going to cost SIPC a lot more money.

MR. HARBECK:  Six months down the line, that's right.

THE COURT:  Okay, all right.  And, you don't want people playing games with you.

MR. HARBECK:  That's correct.

THE COURT:  Deciding when they're going to --

(516) 741-5342   Tankoos Reporting Co.   (212) 349-9692

**CERTIFICATE OF SERVICE**

I, Jonathan M. Landers, certify that on the 11th day of May, 2010, I caused a true and

correct copy of the foregoing OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

(Richard Roth 1-R0103) to be filed and served on the parties to this action via electronic filing.

In addition, service was effectuated to the following address via Federal Express:

> Irving H. Picard, Trustee
> c/o Baker Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10011

s/  Jonathan M. Landers