Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: velvel@mslaw.edu

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC<br><br>    Plaintiff,<br>v.<br><br>LAWRENCE R. VELVEL,<br><br>    Defendant. | Adv. Pro. No. 10-05412 (BRL) |

REPLY OF LAWRENCE R. VELVEL TO THE TRUSTEE'S OBJECTION TO A
PARTIAL STAY OF THE ORDERS OF NOVEMBER 10, 2010

1

Lawrence R. Velvel hereby replies to the "Trustee's Objection," per Messrs. Sheehan and Hirschfield, to Velvel's motion seeking a partial stay of the Court's orders of November 10, 2010. Those orders established procedures that were intended to govern and do govern the avoidance actions against concededly innocent investors, of whom Velvel is one. Velvel's motion for a partial stay requested that, after the Trustee filed his avoidance complaints against innocent parties in order to stop the running of the statute of limitations against him on December 11, 2010, the proceedings in the actions against the innocent parties be stayed pending the decision in the Second Circuit on the question of net equity, because that decision will control the avoidance actions. For it will govern the question of net equity itself and may also govern the associated question of clawbacks.

Velvel filed his motion for a partial stay on November 22, 2010. During the first eleven days of December, the Trustee filed avoidance actions against over 800 parties. (Velvel, who was sued on December 10th, was apparently one of the last to be sued, since his name appears as number 11 on what appears to be a list *in reverse order* of the persons who were sued.)

On December 13th, two days after his December 11th deadline for suing people, the Trustee objected to Velvel's motion for a partial stay.

The overall situation has changed in certain major respects since Velvel filed his November 22nd motion seeking a stay of the avoidance actions against innocent parties. In his motion Velvel said, *relying on an official letter of September 7th from SIPC to Congress for the pertinent figures*, that there was no need for the Trustee to proceed against concededly innocent parties at this time in order to recover monies needed to pay

2

the approximately $5.8 billion that the Trustee has recognized as valid claims. For, as said to Congress by SIPC -- obviously on the basis of information from the Trustee -- the Trustee had already brought 19 actions against *culpable* parties -- against *non* innocent parties -- for about $15 billion, and was considering further suits against culpable parties for approximately another $2 billion. (If he recovered only about one-third of what he then was already seeking from the culpable, this would cover the entire universe of recognized claims.) But despite what SIPC told Congress -- *obviously on the basis of what SIPA was told by the Trustee* -- the Trustee has now settled with or sued *additional* culpable parties not for a total of a "mere" $2 billion dollars more. Rather, he has entered settlements with or brought suits against them for additional amounts which no outsider can state but which appear to be north of *$50* billion dollars (or at least to be somewhere in that neighborhood). (Velvel is not aware that SIPC has informed Congress that, whereas it previously told Congress that culpable parties would be the subject of additional suits for approximately another $2 billion on top of the $15 billion that the Trustee was already suing them for, in fact the *additional* dollar figure appears in reality to be somewhere in the neighborhood of $50 billion (or more).) Because of the dollar figure of settlements with and suits against culpable parties -- which include many huge banks such as UBP, UBS, HSBC, JP Morgan Chase, Banks Medici and Austria, and many others, and fabulously wealthy individuals such as Carl Shapiro and the Picowers -- there is even less need now to proceed against admittedly innocent parties prior to the Second Circuit's decision on net equity than there was on November 22nd when Velvel filed his motion for a partial stay.

Another change in the situation subsequent to November 22nd relates to the complaints themselves which have been filed in December against innocent parties, many of whom are old, now impoverished, cannot afford lawyers, and are terrified. The complaints demand that such persons, and *all* innocent parties, give the Trustee interest -- *from the dates of their withdrawals* -- on all withdrawals that he seeks to recover. The complaints also demand that tax refunds people receive from the IRS and state agencies be turned over to him. The IRS, and thus the United States Treasury, one notes, provided *specially* for refunds because of the deep concern over the financial plight of Madoff's victims in Congress and the Executive. (Various states apparently followed the IRS in this.) But the Trustee demands that the refunds received by innocent victims because the United States Government was deeply concerned over their plight be turned over to him instead of aiding the victims *as the Government intended.*

Perhaps it is not illegal for the Trustee to demand that he receive interest from innocent victims dating *from the dates of their withdrawals* and that tax refunds intended by the U.S. Government to help innocent victims be turned over to him instead. Or perhaps this *is* illegal. Whichever it is, these actions of the Trustee are obviously leveraging devices for exercising compulsion against terrified innocent people who, as said, in many cases are old, impoverished, and desperate. They are new and yet further reasons why suits against the concededly innocent should be stayed pending the Second Circuit's action.

In his Objection per Messrs. Sheehan and Hirschfield to Velvel's Motion for a partial stay, the Trustee provides no answers to the important points made in the Motion, points which were true even before the above-mentioned events of early December. The

4

Trustee, per Messrs. Sheehan and Hirschfield, cannot deny that the net equity appeal will not only decide the net equity question, but may also decide whether avoidance actions (clawbacks) are permissible against wholly innocent victims. The Trustee cannot deny that this Court invited a request for a direct appeal because the issues now on appeal are unsettled, crucially important and controlling. He cannot deny that he (and other parties) sent this Court a letter, and the Second Circuit was told, that the resolution of all or virtually all claims depends on the issues now under appeal. He cannot deny that irreparable injury is being done to older people who are now impecunious and terrified. In short, he cannot deny the reasons given in the Motion for a Partial Stay.

Not denying any of these dispositive points, the Trustee makes essentially two arguments. One is that the Court has previously denied requests that the avoidance cases against innocents be stayed. At the time, of course, it was not known that the Trustee was going to file numerous additional cases against culpable parties not for $2 billion, but for what would seem to be in the neighborhood of an *additional $50 billion or more*, cases which -- with the ones he previously filed against culpable parties for $15 billion -- will keep him and his law firm busy not for "mere" months, but likely for years. Nor was it known that he would be seeking interest from innocent victims from the *time of withdrawals* and that he would be demanding the assignment by innocent victims of tax refunds -- refunds by which the U.S. Government sought to assist the innocent victims, not the Trustee. But be all this as it may, a stay of proceedings against the concededly innocent victims is warranted and should now be granted.

The Trustee's other argument, per Messrs. Sheehan and Hirschfield, is to say that Velvel has no standing because the procedures ordered on November 10th do not apply to

5

him. This lack of applicability is said to arise because "The Trustee, in the exercise of his discretion, did not file a Notice of Applicability in the Velvel proceeding." (Objection, p. 2.) Having said this, the Trustee says in a footnote that Velvel himself could file such a Notice but, "voluntarily electing to opt into the Avoidance Procedures, . . . he could hardly be heard to complain about them." (Objection, p. 2, n. 2.)

This is a remarkable development. The avoidance procedures were put forth by the Trustee to cover cases of innocent parties in which the amount demanded "is $20 million or less." (*The Avoidance Procedures*, ¶ 1A.) That covers Velvel's case to a T. The Trustee and Messrs. Sheehan and Hirschfield *know* Velvel is innocent, have never tried to deny it, and are seeking $341,012 from him. As with others in Velvel's situation, it was automatically and justly assumed that the procedures requested by the Trustee, and then ordered by the Court, would be applied to him as to hundreds of or perhaps around a thousand others. (Such applicability to him is why he filed certain objections to the procedures.) But, facing a motion for a stay filed on November 22nd -- and aware that an *organization of over a thousand victims*, the Network For Investor Action and Protection, a large percentage of whose members are subject to the avoidance procedures, has recently made a practice of adopting Velvel's arguments in judicial papers that it files, and possibly hoping to make it impossible for this large victims' organization to continue to do so in cases under the avoidance procedures in the future -- the Trustee decided to "pull a fast one." He would *not* file a Notice of Applicability in Velvel's case, thus precluding him from the briefing of issues under the avoidance procedures and, if Velvel then filed a Notice, as is his right, the Trustee would say he waived his rights to object to procedures by opting in, as Velvel has now done by filing the required Notice himself.

6

This action by the Trustee, per Messrs. Sheehan and Hirschfield, is a litigation tactic. It may or may not be a legal tactic, but it is a sleazy one. The Trustee and his counsel are one hundred percent aware that their procedures were specifically designed to cover persons in Velvel's position and that he has as much right to the procedures' benefits as does any other innocent small victim (and must also, of course, suffer its detriments). Yet they are attempting to force one opponent (out of hundreds or perhaps even approximately a thousand), to give up his rights to object to given procedures and actions by deliberately failing to do in Velvel's case what they have done in so many others and what they should have done in his as well: i.e., they have tried to force Velvel to give up his right of objection to procedures and actions by the shameless litigation tactic of not filing a Notice of Applicability against him as they should have, and then arguing that he has given up his rights when *he* files the required Notice so that the procedures that always were intended to apply to people like him will in fact be applied to him. Such shameless litigation tactics should not be countenanced.[1]

Respectfully submitted,

Dated: December 17, 2010

/s/ Lawrence R. Velvel
Lawrence R. Velvel, Esq.
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: Velvel@mslaw.edu

---

[1] Perhaps hoping to prejudice the Court by implying that Velvel has little concern, the Trustee says that "Dean Velvel failed to appear at the hearing" of November 10th. (Objection, p. 1.) Because the BLMIS bankruptcy occurred in New York, the bankruptcy and SIPC proceedings had to be in New York in the Madoff case, although this case is one of those in which victims are spread all over the map, and even American victims (let alone foreign ones) may live hundreds or even thousands of miles from the Court. Such victims, including Velvel, who lives in New Hampshire, can find it difficult to get to New York City for Bankruptcy Court hearings, of which there are *many* important ones, and consequently must ordinarily rely on written papers to put forth their position in the Bankruptcy Court, as has Velvel.