MOSES & SINGER LLP
Mark N. Parry
Declan M. Butvick
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
(212) 554-7800

*Attorneys for S. Donald Friedman*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORP.,<br><br>                    Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

**OBJECTION TO TRUSTEE'S REVISED DETERMINATION OF CLAIM**

S. Donald Friedman ("Friedman"), by and through his attorneys, hereby objects to the Notice of Trustee's Revised Determination of Claim dated November 18, 2010 ("Revised Determination Letter"), as described herein.

**BACKGROUND**

1.     Friedman is a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of Bernard L. Madoff Investment Securities, LLC ("BLMIS").

2. To the best of Friedman's recollection, Friedman opened Account No. 1F0054 (the "Customer Account") with BLMIS in 1980.[1]

3. In connection with the Customer Account, Friedman received regular communications from BLMIS, including monthly statements and trade confirmations.

4. Friedman believes that based on his final BLMIS statements for the Customer Account, dated November 30, 2008, he has a balance of $816,234.31 ("Final BLMIS Statements") in both securities and cash.

5. On December 11, 2008, the above-captioned liquidation proceeding was commenced against BLMIS, pursuant to SIPA. Irving Picard was appointed Trustee (the "Trustee"), charged with overseeing the liquidation of BLMIS and processing customer claims pursuant to SIPA.

6. On December 23, 2008, the Court issued its "Order On Application For An Entry Of An Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims; and Providing Other Relief" (the "Claims Procedures Order") directing the Trustee to disseminate notice and claim forms to BLMIS customers and setting forth claim-filing deadlines.

7. The Claims Procedure Order further provided that, to the extent the Trustee disagrees with the amount set forth on a customer claim form, the Trustee "shall notify such claimant by mail of his determination that the claim is disallowed, in whole or in part, and the reason therefor . . . ."

---

[1] As set forth in the Friedman Claim (as defined below), the Customer Account was subsequently separated into two separate accounts numbers (Account Nos. 1F0054 and 1F0148) but was always treated as one account. Accordingly, the Friedman Claim treated them as one account, and for the purpose of this Objection, "Customer Account" shall mean collectively, Account Nos. 1F0054 and 1F0148.

852245                                         2

8. Prior to the claims filing deadline, Friedman submitted a customer claim form (the "Friedman Claim") to the Trustee for the Customer Account (copy of the Friedman Claim is attached hereto as Exhibit A). Friedman's Final BLMIS Statements for the Customer Account was submitted with the Friedman Claim.

9. On March 1, 2010, the Court issued a decision affirming the Trustee's net investment method for determining a customer's "net equity." That decision has been appealed, and the appeal is pending. If the Court's decision is reversed on appeal, the appellate decision will apply to all claims, including the Friedman Claim.

10. On July 21, 2010, the Trustee sent Friedman a Notice of Trustee's Determination of Claim (the "Determination Letter") denying his claim in its entirety.[2]

11. On November 18, 2010, the Trustee sent Friedman a Revised Determination Letter disallowing Friedman's claim in its entirety. (A copy of the Revised Determination Letter is attached hereto as Exhibit B).[3]

## GROUNDS FOR OBJECTION

12. Friedman hereby objects to the Revised Determination Letter for the reasons set forth below.

**I.     The Trustee Fails to Provide Any Basis for Denying the Friedman Claim**

13. It is well settled that a proof of claim is prima facie evidence of a valid claim pursuant to section 502(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). It is

---

[2] Friedman filed a timely objection to the Determination Letter for account number 1F0054 dated August 20, 2010. *See* S. Donald Friedman's Objection to Trustee's Determination of Claim, Docket No. 2882.

[3] The Revised Determination Letter adds three deposit transactions: a September 29, 1992 deposit in the amount of $348.75; an October 15, 1992 deposit in the amount of $2.25; and an October 19, 1992 deposit in the amount of $38.13. Additionally, the Revised Determination Letter adjusts one withdrawal transfer: a November 30, 1989 transfer in the amount of $116,000.00 has been adjusted to $30,000.00. Like the Determination Letter, the Revised Determination Letter only referenced account no. 1F0054.

further well settled that an objection to a proof of claim is required to set forth the relevant facts and legal theories that form the basis for the objection. *See*, *e.g.*, Collier on Bankruptcy ¶ 3007.01(3) (15th ed.) ("[A]n objection to a claim should . . . meet the [pleading] standards of an answer. It should make clear which facts are disputed; it should allege facts necessary to affirmative defenses; and it should describe the theoretical bases of those defenses."); *In re Enron Corp.*, No. 01-16034, 2003 Bankr. LEXIS 2261, at *25 (Bankr. S.D.N.Y. Jan. 13, 2003) (same). The Revised Determination Letter fails to meet this standard.

14. The only purported basis for denying the Friedman Claim is the Trustee's conclusory assertion that "no securities were ever purchased" by BLMIS and, therefore, any earnings reflected on Friedman's last account statement are fictitious. Revised Determination Letter at 2. As further described below and for reasons being considered on appeal, that is not an adequate legal basis for denying the Friedman Claim. Moreover, the Trustee fails to provide any evidentiary support for his assertion that no securities were ever purchased for the Customer Account. The Trustee should be required to substantiate such claims rather than expect victims of Madoff's fraud to accept them at face value.

15. Furthermore, the Revised Determination Letter alleges that Friedman withdrew more money than he deposited in the Customer Account. In support of that assertion, the Trustee provides nothing more than a list of purported withdrawals presumably prepared by his counsel. That is wholly insufficient to rebut a prima facie valid claim such as the Friedman Claim. Indeed, the purported documents on which the Trustee relies lack veracity. Moreover, it is unreasonable to expect that customers retained their records of deposits and withdrawals with BLMIS. That is especially true when, as here, the Trustee is alleging withdrawals that occurred beginning nearly thirty years ago. Accordingly, the Trustee should be required to produce the

records substantiating his list of withdrawals (and deposits). Absent such records, there is no basis for reducing the Friedman Claim.[4]

## II. The Net Equity Determination is Inappropriate

16. SIPA provides that a customer's claim shall be allowed in the amount of the customer's "net equity." 15 U.S.C. § 78fff-2(b). The Trustee has determined that "net equity" is the total principal amounts deposited in the BLMIS account less withdrawals, without regard to the securities reflected on the customer's final BLMIS account statement. If the total withdrawals exceed the total deposits, the Trustee has concluded that the customer has no "net equity." The Trustee describes this approach as the "money in/money out analysis" and relied on it to deny the Friedman Claim. The Trustee's "money in/money out analysis," however, has no legal basis.

17. SIPA defines "net equity" as the dollar amount of the customer's account as determined by "(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer . . .; minus (B) any indebtedness of such customer to the debtor on the filing date . . ." 15 U.S.C. § 78*lll*(11). Nothing in the statute even remotely suggests that "net equity" can be determined by reducing the principal investment by the aggregate amount of withdrawals. Thus, the Trustee's analysis does not comport with the plain language of SIPA.

18. Further, the Trustee's "net equity" interpretation is inconsistent with the legislative history of SIPA. The legislative history of SIPA is irrefutably clear that Congress intended to protect a customer's "legitimate expectations," even in situations where the securities

---

[4] It is also not enough to rely on the records of a convicted felon without independent evidence confirming such records. The Trustee cannot have it both ways. The Trustee should not be permitted to cherry-pick which of BLMIS' records it will invalidate (the account statements) and which it will afford absolute credibility (Madoff's record of withdrawals), in order to advance its interests.

852245                                    5

were never purchased. *See e.g.* H.R. Rep. 95-746, at 21 ("A customer generally expects to receive what he believes is in his account at the time the stockbroker ceases business. But because securities may have been lost, improperly hypothecated, misappropriated, *never purchased*, or even stolen, this is not always possible. Accordingly, [when this is not possible, customers] will receive cash based on the market value as of the filing date.") (emphasis added). There is no better evidence of a customer's expectations than his/her last account statement. By utilizing the "money in/money out analysis" to deny the Friedman Claim, the Trustee has ignored Friedman's legitimate expectations and nullified SIPA's legislative purpose.

19. There is also no legal precedent for the "money in/money out analysis." Courts in the Second Circuit have consistently recognized that the SIPC trustee has a duty to satisfy a customer's "net equity" claim, as determined by calculating the sum which would have been owed by the debtor to the customer if the debtor had liquidated the customer's securities position less any debt owed by the customer to the debtor on the filing date, even if the securities were not purchased. *In re New Times Securities Services, Inc.*, 371 F. 3d 68, 72 (2d Cir. 2004); *see also In re Adler Coleman Clearing Corp.,* 247 B.R. 51, 62 n.2 (Bankr. S.D.N.Y. 1999) ("'Net equity' is calculated as the difference between what the debtor owes the customer and what the customer owes the debtor on the date the SIPA proceeding is filed."). Indeed, at least one court outside the Second Circuit has explicitly rejected the Trustee's "money in/money out analysis." *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708, 713 (6th Cir. 2007) (declining to vacate an arbitration award granted to Ponzi scheme victims in favor of one based upon an "out-of-pocket" theory, which seeks to restore to victims only the amount they originally invested less their subsequent withdrawals, because such formula "is a wholly inadequate measure of damages").

20. Accordingly, the Trustee's denial of the Friedman Claim is improper because it is based on a determination of "net equity" that is unsupported by statute and flies in the face of established precedent and unambiguous legislative history.

### III. The Trustee Has No Basis To Avoid Transfers

21. The Trustee's denial of the Friedman Claim is nothing more than the disguised avoidance of gains Friedman earned on his Customer Account. The Trustee has not set forth the legal basis used to avoid such transfers. The Revised Determination Letter is silent as to those issues. Moreover, the Trustee has failed to satisfy the criteria of any fraudulent transfer statute, state or federal. Accordingly, the Trustee should not be permitted to avoid transfers without establishing the legal basis for doing so.

22. Many, if not all, of the withdrawals listed in Table 1 of the Revised Determination Letter are based on earnings that accrued well beyond any applicable statute of limitations. The Trustee is barred from avoiding those gains and, therefore, it is improper to reduce the Friedman Claim by the amounts of such withdrawals.[5] The Trustee asserts no legal basis for circumventing the statutes of limitations. As a result, he has greatly exceeded his statutory authority. Accordingly, the Trustee should not be permitted to bootstrap avoidance actions into his net equity determination for the sole purpose of avoiding the applicable statutes of limitations.

23. In addition to the statutes of limitations, Friedman has numerous legal defenses under both the Bankruptcy Code and SIPA which preclude the Trustee from avoiding the gains earned by Friedman. For example, pursuant to section 546(e), the Trustee cannot avoid those transfers unless he can prove that the Transfers were made both (i) with actual intent to

---

[5] Similarly, the Trustee does not have a valid right of setoff.

defraud, hinder or delay creditors, and (ii) within two years of the filing date. The Trustee has failed to even attempt to make such a showing.

24. Furthermore, pursuant to section 548(c), the Trustee may not reduce the Friedman claim because Friedman acted in good faith and gave value for his withdrawals on account of the antecedent debt reflected on his BLMIS account statements.[6]

25. Moreover, SIPA does not authorize the Trustee to reduce a claim on the basis of an alleged avoidable transfer.

26. Additionally, it is worth noting that the primary beneficiary of the Trustee's efforts to reduce claims is the Securities Investor Protection Corporation ("SIPC"), which is responsible for paying up to $500,000 to each of Madoff's victims. There is no authority in the Bankruptcy Code or SIPA, however, for the Trustee to use the avoidance powers set forth under the Bankruptcy Code and applicable state law as a means to shield SIPC from its statutory responsibilities. Nor is there any support in SIPA's legislative history for the Trustee to act for the primary benefit of SIPC.

27. Finally, if the Trustee is permitted to use the Bankruptcy Code's avoidance powers in his capacity as the Trustee, he should be required to commence a formal adversary proceeding as required by Bankruptcy Rule 7001. Fed. R. Bankr. P. 7001.

**IV.     The Trustee Fails to Account for Interest Owed to Friedman**

28. Alternatively, Friedman is entitled to recover interest on funds deposited with BLMIS. *See, e.g.,* N.Y.C.P.L.R. § 5004; N.Y. Gen. Oblig. § 5-501, *et seq*. Further, since BLMIS converted Friedman's funds, Friedman is entitled to prejudgment interest. *See, e.g.,*

---

[6] At best, the withdrawals, which were made on account of an antecedent debt, are preferential transfers, not fraudulent transfers. However, as this Court is well aware, if the Trustee sought to avoid withdrawals pursuant to section 547 of the Bankruptcy Code, he would be limited to transfers that occurred within 90 days of the filing date, and would nevertheless be barred from avoiding such transfers pursuant to section 546(e) of the Bankruptcy Code.

*Steinberg v. Sherman,* No. 07- 1001, 2008 WL 1968297, at *5 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . conversion and unjust enrichment qualify for the recovery of prejudgment interest."); *Eighteen Holding Corp. v. Drizin,* 701 N.Y.S.2d 427, 428 (1st Dep't 2000) (awarding prejudgment interest on claims for unjust enrichment and conversion). Accordingly, Friedman is entitled to interest on all the funds deposited with BLMIS and prejudgment interest on funds converted by BLMIS.

## RESERVATION OF RIGHTS

29. Friedman reserves the right to revise, supplement, or amend this objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Friedman's right to object on any additional grounds.

30. Friedman reserves all rights set forth in the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, rights to conduct discovery set forth therein.

31. Friedman reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

## RELIEF REQUESTED

WHEREFORE, for all the foregoing reasons, Friedman respectfully requests the following relief:

(i) the Friedman Claim should be allowed in its entirety in the amount of $816,234.31, which is the amount stated on the Friedman Claim, plus interest from the date of the Revised Determination Letter;

(ii) SIPC should be directed to immediately replace $500,000 of the securities in the Customer Account based upon the values reflected on the Final BLMIS Statements and/or advance Friedman $500,000 from the SIPC fund;

(iii) the Revised Determination Letter should be stricken; and

(iv) such other relief as may be just and equitable.

Dated: December 17, 2010

/s/ Declan M. Butvick

MOSES & SINGER LLP
Mark N. Parry
Declan M. Butvick
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
(212) 554-7800
*Attorneys for S. Donald Friedman*