Aron B. Katz, Martin J. Katz, Margaret Katz Cann, Phyllis A. Katz,
The Phyllis Katz 1995 Irrevocable Trust, and
The Aron B. Katz 1995 Irrevocable Trust
621 17TH ST., #801
DENVER, CO 80293

December 20, 2010

Clerk of the United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111



Re:  Bankruptcy Case No. 08-1789 (BRL)
     BERNARD L. MADOFF INVESTMENT SECURITIES LLC

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Dear Sir or Madam:

Aron B. Katz, Martin J. Katz, Margaret Katz Cann, Phyllis A. Katz, The Phyllis Katz 1995 Irrevocable Trust, and The Aron B. Katz 1995 Irrevocable Trust (the "Claimants") hereby object to the Notices of Trustee's Determination of Claim dated October 22, 2010 sent by Irving H. Picard (the "Determination Letters") and state as follows:

**Background facts**

1. The Katz Group Limited Partnership (the "Partnership") was formed on or about October 8, 1997. A copy of the partnership agreement for the Partnership is attached hereto as Exhibit A.

2. The Claimants were limited partners in the Partnership, and/or grantors and beneficiaries of trusts which were limited partners in the Partnership.

3. The limited partners invested in the Partnership.

4. On December 5, 1997, using funds invested by the limited partners, the Partnership opened an account (the "Account") with Bernard L. Madoff Investment Securities LLC ("Madoff"). The number of the Account was 1K0143.

5. The November 30, 2008 market value of securities in the Account was $7,239,006.74. The Partners owned the following percentages of the Account:

| Partner | Percentage | 11/30/08 Balance |
|---|---|---|
| Aron Katz (individually and as grantor and beneficiary of the Aron B. Katz Charitable Remainder Unitrust) | 9.57% | $ 692,571 |
| Martin Katz (individually and as grantor and beneficiary of the Martin J. Katz Charitable Remainder Unitrust) | 28.71% | $ 2,078,476 |
| Margaret Katz Cann (individually and as grantor and beneficiary of the Margaret K. Cann Charitable Remainder Unitrust) | 29.25% | $ 2,117,249 |
| Phyllis Katz (as grantor and beneficiary of the Phyllis A. Katz Charitable Remainder Unitrust) | 9.59 % | $ 694,374 |
| The Phyllis A. Katz 1995 Irrevocable Trust | 11.44% | $ 828,231 |
| The Aron B. Katz 1995 Irrevocable Trust | 11.44% | $ 828,106 |
| Total | 100.00% | $ 7,239,007 |

6. The Partnership and each of the Claimants sent a timely SIPC claim to Picard, asserting a claim for securities in the amount of his/her respective interest based upon the November 30, 2008 Madoff statement.

7. In the Determination Letters, Picard disallowed the Claimants' claims on the theory that the Partners did not have accounts in their own name with Madoff. See Exh. B. On

November 18, 2010, Thomas Wearsch extended the time for the Claimants to object to the Determination Letters until December 21, 2010.

**Grounds for objection: The Claimants are "customers" under SIPA and are entitled to $500,000 in SIPC insurance each.**

1. Each of the Claimants is a "customer" under the plain definition of "customer" in the Securities Investor Protection Act ("SIPA"). Thus, each is entitled to receive up to $500,000 in SIPC insurance. 15 U.S.C. § 78lll(2) ("The term "customer" includes . . . any person who has deposited cash with the debtor for the purpose of purchasing securities.").

2. If Congress had intended to limit customers to account holders the definition of customer could have been six words: "A "customer" is an account holder." Instead, Congress' definition of customer is 20 lines long and is further clarified in 15 U.S.C. § 78fff-3(a) to make clear that customers of a bank or broker or dealer that invests in Madoff are all customers under SIPA ("no advance shall be made by SIPC to the Trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established . . . that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank . . . , **in which event each such customer of such broker or dealer or bank shall be deemed a separate customer** of the debtor").

3. Moreover, it is clear that Congress intended for "customer" to be broadly interpreted. In the first draft of the bill, there was no entitlement to SIPC insurance for any customer whose name or interest was not disclosed on the records of the broker/dealer "if such recognition would increase the aggregate amount of the insured customer accounts or insured

3

liability in such closed broker or dealer." S. 2348, 91st Cong. Section 7(d)(June 9, 1969); H.R. 13308, 91st Cong. Section 7(d) (Aug.4, 1969). The final bill dropped this restriction.

4. Any ambiguity in the definition of "customer," and there is none here, should be construed in favor of the Claimants because "SIPA is remedial legislation. As such, it should be construed liberally to effect its purpose." *Tcherepin v. Knight,* 389 U.S. 332 (1967).

5. SIPA does not permit SIPC, by the promulgation of Rules, to change the definition of "customer" under the statute. 15 U.S.C. § 78ccc(b)(4)(A).

**Conclusion**

The Partners request an order compelling the Trustee and SIPC to immediately replace the securities in the Account to the extent of a valuation of up to $500,000 for each Claimant as of November 30, 2008 and any other relief to which Claimants may be entitled.

_____
Martin J. Katz
On Behalf of the Claimants