**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman, Esq. (4266)
45 Broadway
New York, New York 10006
HCHAITMAN@BECKER-POLIAKOFF.COM
*Attorneys for Diane and Roger Peskin,
and a large group of other customers of the Debtor*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | SIPA LIQUIDATION<br><br>Case No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | Appeal No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL

Diane and Roger Peskin, and a large group of other customers of Bernard L. Madoff Investment Securities LLC ("Madoff") ("Movants"),[1] submit this memorandum of law in support of their motion for leave to appeal, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003, the December 14, 2010 order (Doc # 3474) of the United States Bankruptcy Court for the Southern District of New York Approving Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses (the "Order") to the extent that the Order granted the fifth applications for interim compensation of Irving H. Pi-

---

[1] Becker & Poliakoff LLP files this motion on behalf of all of the Madoff customers listed on Exhibit A to the accompanying 12/28/2010 Declaration of Helen Davis Chaitman ("Chaitman Decl.").

card, Trustee (the "Trustee"), and his counsel, Baker & Hostetler LLP ("B&H"). A copy of the Order is attached as Exhibit D to the Chaitman Declaration.

## PRELIMINARY STATEMENT

In the largest financial fraud in the history of this country, in a case which is being watched by people around the world, the bankruptcy court has approved a payment in the approximate amount of $39 million in compensation to the Trustee and B&H, which works out to a rate of approximately $2.3 million per week. The Trustee and his law firm, B&H, have proven themselves to be the Goldman Sachs of the legal profession, engaging in proprietary lawyering while disregarding their fiduciary duties to the customers who are Madoff's victims.

The Trustee and B&H were appointed by the bankruptcy court at the request of the Securities Investor Protection Corporation ("SIPC") in the proceeding instituted in the United States District Court for the Southern District of New York on December 15, 2008, for the liquidation of Madoff under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq. ("SIPA"). This is a SIPA proceeding for the liquidation of Madoff, which caused $64.8 billion of losses to investors in the United States and throughout the world (the "Customers").

Movants have repeatedly raised the issue in the bankruptcy court of the conflict of interest of the Trustee and B&H, as well as other issues pertaining to their lack of disinterestedness. The bankruptcy court overruled those objections, and twice this Court has denied the Movants' motions for leave to appeal.[2] As set forth below, this motion raises issues that have not been the subject of the Movants' prior motions for leave to appeal.

---

[2] The Movants or some combination of them through their current counsel, filed motions for leave to appeal the bankruptcy court orders approving the first, second, third and now this fourth fee application of the Trustee and B&H. As of this filing, there has been no decision rendered on the motion for leave to appeal the order granting the second fee application. The other motions for leave to appeal were denied.

2

**STATEMENT OF FACTS & ARGUMENT BELOW**

The relevant facts and legal arguments set forth herein are taken from Movants' Objection to Fifth Applications of Irving H. Picard, Trustee, and Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses Incurred from June 1, 2010 through September 30, 2010 (the "Fee Application" [Doc. #3308])[3] (the "Objection") in which the Movants requested an evidentiary hearing at which they could prove the facts set forth in the Objection.[4] A copy of the Objection is attached as Exhibit B to the Chaitman Declaration. The Objection expressly states that it is an "offer of proof." Neither the Trustee nor B&H submitted any affidavits in opposition to the Objection. Nonetheless, the bankruptcy court refused to schedule an evidentiary hearing.

In their Fee Application, the Trustee sought allowance of fees of $684,659.00 for the 122-day period from June 1, 2010 through September 30, 2010, and B&H sought allowance of fees of $38,522,476.35. This works out to $5,705.49 in daily compensation (including weekends and holidays) for the Trustee and $321,020.64 in daily compensation for B&H, again including weekends and holidays. Thus, together, the Trustee and B&H sought $326,726.13 in daily compensation, including weekends and holidays or $2,287,082.90 per week.

Amongst approximately forty different tasks or matters for which B&H sought compensation in the Fee Application are two matters initiated by the Trustee directly adverse to the Movants, represented by their current counsel, Becker & Poliakoff. (Chaitman Decl. Ex. B, Objection ¶11). On the first such matter, B&H sought compensation of $131,000 for allegedly 266 hours of work that produced a 16-page reply brief and resulted in three notices adjourning a hear-

---

[3] A copy of the Fee Application is attached as Exhibit G to the Chaitman Decl.

[4] The Objection also incorporates the previous four objections filed by the Movants in response to the first, second, third and fourth interim fee applications. (Chaitman Decl. Ex. B, Objection at 1-2).

3

ing. (Chaitman Decl. Ex. B, Objection ¶¶12-14). $131,000 or its equivalent of 266 hours of work is a shocking amount of time and money to produce a 16-page reply brief, particularly since the brief was filed on the sixteenth day of the compensation period and there was virtually no other activity in the matter thereafter. (*Id.*¶13-14). By contrast, the Becker & Poliakoff spent a total of approximately 30 hours on that matter during the same time period. (*Id*. ¶13). As to the second matter, which involved substantially the same issues as the first, B&H sought approximately $242,000 in compensation for spending 575 billable hours for filing a motion to strike an issue and record designations from an appeal and for attending a single hearing on the motion to strike. (*Id*. ¶¶15-17).

Despite these illustrations that, at best, demonstrate gross inefficiency by the Trustee's counsel, SIPC consistently approves the compensation requests of Trustee and B&H *carte blanche*. Furthermore, the bankruptcy court has repeatedly ruled that the Trustee and B&H do not have to disclose to creditors their detailed billing reports, and the bankruptcy court has refused to subject the Trustee and B&H to the general standards of reasonableness imposed upon a bankruptcy trustee and his counsel, based upon the representation of the Trustee and SIPC, pursuant to SIPA section 78eee(b)(5)(C), that SIPC has no reasonable expectation of recoupment of its advances for administrative expenses.

The bankruptcy court should have scrutinized the fees requested as well as SIPC's and the Trustee's representations that SIPC has "no reasonable expectation of recoupment." Those representations are patently incredible in light of the billions of dollars that the Trustee has already recovered together with the tens of billions of dollars in pending claims to recover additional customer property.

4

## THE TRUSTEE SHOULD NO LONGER BE ALLOWED TO INSULATE HIS AND B&H'S COMPENSATION FROM SCRUTINY BY MISREPRESENTING THAT THERE IS "NO REASONABLE EXPECTATION" THAT SIPC WILL BE REIMBURSED

During the hearing held on December 14, 2010, to determine the Fee Application (the "Hearing"), the Trustee acknowledged that the total allowed claims in this liquidation proceeding are currently approximately $6 billion. (Chaitman Decl. Ex. C. (12/14/10 Hearing Transcript (Trans.) at 15)). And indeed, that amount is approximately the same amount set forth in the Fee Application (Chaitman Decl. Ex. G) and in a September 7, 2010 letter from SIPC's president to Congressman Kanjorski, Chairman of the Subcommittee on Capital Markets (the "SIPC Letter"), in which SIPC's president represented to Congress that as of September 2010 the total then-current allowed claims was approximately $5.5 billion (Chaitman Decl. Ex. J, Objection at Ex. A., SIPC Letter at 3 Response #4). That amount accounts for approximately 96.1% of all the claims that were submitted and determined by the Trustee. (Chaitman Decl. Ex. C, Trans. at 16-17). When examining the total number of claims submitted to the Trustee and allowed by the Trustee through the middle of November 2010, without taking into account the value of each claim, he has allowed only approximately 15.5% of submitted claims. (Chaitman Decl. Ex. G, Fee Application ¶27 n.5).

The Trustee was already holding $1.5 billion as of the date of the Hearing. (Chaitman Decl. Ex. C, Trans. at 16, 26). At the time of the Hearing, two settlement agreements were reached and pending approval from the court: (1) an approximately $500 million settlement with Bank Union Bancaire Privee and (2) a $550 million settlement with the Shapiro family. (Chaitman Decl. Exs. H[5] and I[6]). So as of the date of the Hearing the Trustee had approximately $2.55

---

[5] December 6, 2010 Press Release of Irving H. Picard, "MADOFF TRUSTEE ANNOUNCES APPROXIMATELY $500 MILLION RECOVERY AGREEMENT WITH SWISS BANK UNION BANCAIRE PRIVÉE"

5

billion, including $1.55 billion in settlements pending approval, to pay the approximately $6 billion in approved claims and to repay SIPC advances of approximately $775 million.

At the December 14, 2010 Hearing, the Trustee, his counsel, and SIPC blatantly misrepresented, as they had in the Fee Application, that there was no reasonable expectation of recoupment of advances for SIPC. They were undoubtedly aware that in just three days they were going to announce a settlement with the Picower family for recovery of $7.2 billion. (Chaitman Decl. Ex. F).[7] The Picower settlement brought the Trustee's total amount recovered to approximately $10 billion. This is clearly more than sufficient for the Trustee to pay $6 billion in allowed customer claims and to repay SIPC its administrative expenses, leaving a balance of several billion.[8]

In addition to the billions already recovered (some of which is admittedly pending approval, including the Picower settlement), the Trustee has pending law suits seeking recovery of approximately $54.5 billion. (Chaitman Decl. Ex. C, Trans. at 19). The Trustee's Fourth Interim Report for the Period Ending September 30, 2010 provides that "nineteen avoidance actions seeking to recover more than $15.5 billion in funds from various feeder funds, Madoff friends and family members, and related parties" were filed. (Chaitman Decl. Ex. E (Fourth Interim Report, at ¶1)). As of the date of the Hearing, the Trustee had sued UBS for $2 billion; JPMorgan Chase for $6.4 billion; HSBC for $9 billion; Tremont Holdings Inc. for $555 million; Natixis for $400 million; Citibank for $425 million; Bank of America for $16 million; ABN AMRO for

---

[6] December 7, 2010 Press Release of Irving H. Picard, "MADOFF TRUSTEE, SIPC ANNOUNCES $550 MILLION RECOVERY AGREEMENT WITH CARL SHAPIRO, ROBERT JAFFE AND RELATED ENTITIES"

[7] December 17, 2010 Press Release of Irving H. Picard, "$7.2 BILLION RECOVERY AGREEMENT WITH ESTATE OF JEFFRY PICOWER AND PICOWER-RELATED INVESTORS"

[8] Without specifically referring to the Picower settlement, the Trustee announced that there were "other settlements in the pipeline" and they hoped "to be able to announce them in the near future." (Chaitman Decl. Ex. C, Trans. at 16.)

$270 million; Fortis Prime Fund Solutions Bank for $230 million; Nomura Holdings, Inc. for $35 million; Banco Bilbao Vizcaya Argentaria for $45 million; and Sonja Kohn and members of the "Medici Enterprise" for $19.6 billion. (Chaitman Decl. Ex. C, Trans. at 22-23).

Yet despite those figures and undisputed facts, the Trustee stated the following at the Hearing: "I . . . stand by my prior pronouncements . . . that SIPC does not have a reasonable expectation of recoupment of its administrative advances." (Chaitman Decl. Ex. C, Trans. at 14.). Even though the money recovered through settlements already exceeds the total allowed claims by approximately $4 billion, SIPC's counsel stated that "SIPC . . . agrees with the trustee at this moment" that there is no reasonable expectation of recoupment (Chaitman Decl. Ex. C, Trans. at 25) and summed up by stating that "SIPC has filed its recommendation in support of interim application of trustee and his counsel." (Chaitman Decl. Ex. C, Trans. at 26).

Although no affidavits or papers were submitted in response to the Objection, at the Hearing the Trustee attempted to justify his contention that SIPC had no reasonable expectation of reimbursement by explaining that certain disallowed claims might later become allowed claims if the claimants repaid preferences alleged by the Trustee. (Chaitman Decl. Ex. C, Trans. at 15-16, 25.) In support of this explanation, the Trustee cited to the portion of the SIPC Letter approximating the total "potential" claims at $17.3 billion. (Chaitman Decl. Ex. J, Objection at Ex. A, SIPC Letter at 5, Response #7.) The Trustee offered no explanation as to how many billions of such claims might exist or even by how much they might exceed, if at all, the $4 billion surplus he is holding above the $6 billion in currently approved claims. Providing nothing further than this vague explanation, the Trustee, his counsel, and SIPC explained at the Hearing that, because of the uncertainty of litigation, there was no basis for them to possess a reasonable expectation that SIPC would be reimbursed.

7

Given the failure of the Trustee and SIPC to provide concrete information to refute the concerns expressed in the Objection, there is no basis for any court to accept the bald, conclusory statements of the Trustee and SIPC's counsel. Even assuming, that all of the "potential claims" might become "allowed claims" increasing the total allowable claims to approximately $17 billion, such a substantial increase of allowable claims from approximately $6 billion to $17 billion is highly unlikely given that the Trustee has allowed only approximately 15% of the claims in the past and has made no indication that he intends to allow any claims in excess of the claims he allowed to date. Moreover, given that there is already approximately $10 billion available in settlements and other recovered property, the Trustee needs only to recover an additional $7 billion to cover all of the "potential claims." To recover an additional $7 billion, the Trustee merely needs to collect thirteen cents on a dollar or, in other words, settle the pending lawsuits for as low as approximately 13% of the total damages sought.[9]

The responses of the Trustee and his counsel on the record at the Hearing to the serious issues raised in the Objection are simply too implausible for the bankruptcy court to have considered in determining whether to apply SIPA § 78eee(b)(5)(C). That section of the statute requires a reasonable expectation, but all the Trustee and counsel offered were completely unreasonable reasons for not expecting SIPC to be reimbursed.

In light of the serious issues that were brought to light in the Objection regarding B&H's overbilling and SIPC's willingness to go along with that overbilling, the bankruptcy court had a duty to, at a minimum, scrutinize the Trustee's and SIPC's basis for stating that there was no reasonable expectation for SIPC reimbursement. The circumstances surrounding SIPC's approval of the interim compensation of the Trustee and B&H create an appearance of impropriety and of

---

[9] The Trustee has pending lawsuits approximately estimated at $54.5 billion. The $7 billion more that he needs in order to satisfy all of the "potential" claims is only 12.84% of the total damages sought in those pending suits.

8

a potential conflict of interest. Despite evidence that indicates, at best, gross inefficiency by the Trustee and his counsel with respect to the services rendered in this case, SIPC has consistently approved these compensation requests. It would appear that SIPC gives the Trustee and his counsel a blank check every quarter, and every quarter the Trustee and his counsel draw $30 million or more on SIPC's account. The law requires that the Trustee must be disinterested; he owes an undivided duty of loyalty to the customers. SIPC's willingness to approve inappropriate compensation for the Trustee and his counsel, at a minimum, creates the appearance that the Trustee and his counsel are bound to serve the interests of SIPC, not the customers and creditors of this estate to whom the Trustee owes a fiduciary duty. Given the reach of this case and its vast impact on innocent victims, the bankruptcy court should have denied the compensation request until it was satisfied after full disclosure (1) that there was a legitimate basis for the Trustee's contention that there was no reasonable expectation of SIPC reimbursement for administrative expenses and (2) that the Trustee and his counsel should not have been disqualified on grounds of lack of disinterestedness in light of their financial relationship with SIPC.

## STATEMENT OF QUESTION PRESENTED AND RELIEF SOUGHT

**QUESTION 1:** Whether the bankruptcy court improperly approved the Fee Application without scrutinizing the reasonableness or the appropriateness of the compensation requested where the Movants presented uncontested evidence that SIPC had a reasonable expectation of reimbursement and uncontested evidence that SIPC was approving the Trustee's counsel's unreasonable and inappropriate compensation requests.

**RELIEF SOUGHT 1**: Reversal and remand for a hearing to determine whether the Trustee and B&H remain disinterested.

9

## ARGUMENT

### I.  MOVANTS HAVE STANDING TO APPEAL

Movants have standing to appeal the Order.  An appellant has standing to appeal a bankruptcy court order when he or she is "directly and adversely affected pecuniarily by" the challenged order.  *Int'l Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 747 (2d Cir. 1991) (citations omitted).  An appellant is directly and adversely affected pecuniarily by an order if it disposes of assets from a limited fund, to which there are competing claims.  *In re: CCB BES, Inc.*, 147 B.R. 219, 220 (D.Ore. 1992).

Here, all fees awarded by the Order have been paid by SIPC.  Thus, the Order has disposed of tens of millions of dollars from a limited fund, the SIPC Fund, which the SEC Commissioner acknowledges to be inadequate to pay all customer claims.  (Chaitman Decl. Ex. K (Transcript of SEC Commissioner Mary Schapiro's testimony before the House Subcommittee on Capital Markets, Insurance and Government-Sponsored Enterprises on July 14, 2009)).  In light of SIPC's insolvency, every dollar spent on fees to enrich the Trustee and B&H is a dollar that is not available to pay Movants and other Customers.  Because the Movants have been directly and adversely affected pecuniarily by the unavailability of money from the limited SIPC Fund to pay their claims, they have standing to appeal.

### II.  THE COURT SHOULD GRANT LEAVE TO APPEAL

The Court should exercise its broad discretion to grant leave to appeal the Order pursuant to 28 U.S.C. § 1292(b).  *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989) ("review of interlocutory appeals from the bankruptcy court is in the district court's discretion").  A court may exercise its discretion to grant leave to appeal where the order:  (1) "involves a controlling question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the liti-

gation." *Young v. Paramount Comm'ns Inc.*, 186 B.R. 803, 806 (S.D.N.Y. 1995). Here, each of those criteria are met.

        **A.**      **This Appeal Involves a Controlling Question of Law**

"The 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record. The question must also be 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Communications Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (citing *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003); *North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997)).

This appeal raises a controlling question of law, namely, whether the bankruptcy must accept the Trustee's statement that there is no reasonable expectation for SIPC reimbursement when all the undisputed evidence suggests otherwise and particularly when there was undisputed evidence that the requested compensation merited substantial scrutiny and should not have simply been rubber-stamped by the bankruptcy court. The bankruptcy court has a fundamental obligation to monitor the integrity of proceedings before it. *See In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990).

The bankruptcy court abandoned its obligation to monitor the integrity of these proceedings and committed legal error by ignoring the gross over-billing of the Trustee and his counsel and by accepting the bald, unsupported statements by the Trustee and SIPC's counsel that they do not have a reasonable expectation of being reimbursed for their administrative expenses. While SIPA § 78eee(b)(5)(C) provides that the court shall approve the SIPC-approved compensation request where there is no reasonable expectation that there will be sufficient funds to

11

reimburse SIPC for its advances, the statute does not require the court to uncritically accept such a contention that is patently incredible in light of the undisputed record evidence. Yet that is precisely what the bankruptcy court did here.

Application of the wrong standard while articulating the correct standard is still amounts to legal error in other contexts and therefore satisfies the "purely legal" element for granting interlocutory appeal. *See Liu v. I.N.S.*, 508 F.3d 716, 721-22 (2d Cir. 2007) (holding that application of a wrong standard, even in light of articulation of a proper standard constitutes a question of law); *see also Xiao Ji Chen v. U.S. Dept. of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (citing *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 76-78 (1957)) (recognizing that question of fact arises where decision is "made without rational justification or based on a legally erroneous standard); *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001) (inner citation omitted) (acknowledging that errors of law include erroneous application or interpretation of statutes); *Ali v. Achim*, 468 F.3d, 462, 465 (7th Cir. 2006) (citing *Jean v. Gonzales,* 452 F.3d 392, 396 (5th Cir. 2006)) (holding that application of a wrong legal standard constitutes question of law).

The bankruptcy court applied a significantly lower standard than set forth in the SIPA provision. The statute does not absolve the court of any oversight over compensation awards nor does it say that the court shall approve the compensation where the trustee or SIPC represents that there is no guarantee that SIPC will get reimbursed; rather, the statute provides that the bankruptcy court shall approve the compensation only if there is a reasonable expectation that SIPC will not be reimbursed. Here, the undisputed evidence suggested that there was every reason to believe that SIPC will be reimbursed, yet the bankruptcy court accepted a totally unreasonable basis for the Trustee's contention that SIPC will not be reimbursed. In so doing, the bankruptcy court essentially applied the incorrect standard while paying lip service to the correct

12

standard set forth in the relevant SIPA provision. The Movants ask this Court to correct the bankruptcy court's legal error.

Furthermore, as set forth above and in the Objection, there was clear evidence suggesting that the Trustee's and his counsel's bills should not have been shielded from traditional review, which makes the bankruptcy court's acceptance of their incredible claim that SIPC would not be reimbursed all the more appropriate for immediate review. While interim compensation awards are unquestionably interlocutory in nature, the Fee Application contained undisputed, glaring examples where the Trustee's counsel appeared to have been gouging SIPC and SIPC is apparently happy to pay those outrageous fees. (Chaitman Decl. Ex. B, Objection ¶¶ 11-18).

Of greater concern than the fact that the Trustee and B&H are padding their bills to SIPC is the fact that SIPC would continually approve and agree to pay such unreasonable compensation. This indicates a conflict of interest which threatens the integrity of the entire proceeding. SIPC's willingness to approve inappropriate compensation for the Trustee and his counsel, at a minimum, creates the appearance that the Trustee and his counsel are bound to serve the interests of SIPC, not the customers and creditors of the Madoff estate. The Trustee and his counsel's lack of disinterestedness taints this entire proceeding. In denying the Movants' motion for leave to appeal the third fee application, Judge Scheindlin held that "if a conflict of interest exists, as the Movants contend, between the former customers of BMIS and the Trustee and B&H, it would be more efficient to remove the Trustee and B&H now, rather than wait until a final order to do so. However, this is not a case where the alleged conflict of interest is so patently obvious as to create a significant threat to the litigation." *In re Madoff*, 2010 WL 3260074 (S.D.N.Y. Aug. 6, 2010); *accord In re Vebeliunas,* 231 B.R. 181 (Bankr. S.D.N.Y. 1999) (holding that trustee's counsel's disinterestedness is "so crucial to the proper functioning of the bankruptcy system

13

that a court may raise it and dispose of it whenever its sanctity is questioned") (citing *In re Martin*, 817 F. 2d 175, 180 (1st Cir. 1978)); *In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006) (holding that "trustee/fiduciary must be free from any hint of bias," and "either an appearance of impropriety or a potential conflict of interest . . . is a viable cause for removal" of trustee; affirming bankruptcy court's removal of Chapter 7 trustee).

The Movants' objection to the third fee application and their interlocutory appeal motion, did not, of course, include the detailed and undisputed evidence set forth in the Objection pertaining to the conflict complained of now. That evidence was not disclosed until the Trustee filed its Fee Application and Fourth Interim Report. The evidence suggests an unholy alliance between the Trustee, B&H, and SIPC, and presents this Court with "an alleged conflict of interest [that] is so patently obvious as to create a significant threat to the litigation." *In re Madoff*, 2010 WL 3260074 at *6 . In the face of such evidence, it was a legal error for the bankruptcy court to have accepted the Trustee's and SIPC's unsupported statement that SIPC had no reasonable expectation of recoupment.

These are questions of law, not of fact. The Objection constituted an offer of proof, and the Trustee and B&H did not dispute any fact alleged regarding the unreasonableness of the fees sought in the Fee Application, thereby rendering the proof indisputable. *See, e.g., In re Drouin*, 1999 Bankr. LEXIS 1878, at *7 (B.D.N.H. Nov. 19, 1999) (court based finding of fact on unrefuted offer of proof)). *See also In re Miguel*, 30 B.R. 893, 894 (B.E.D.CA 1983) (judgment granted to plaintiffs upon their offer of proof because of failure of defendants or their counsel to appear at trial). Moreover, the questions are controlling because they concern other cases beyond this case – in fact, they are directly applicable in all SIPC cases.

14

B.    **There Is Substantial Ground for Difference of Opinion**

There is also a "substantial ground for difference of opinion" here because the questions involve "one or more difficult and pivotal questions of law not settled by controlling authority." *Northeast Savings F.A. v. Geremia*, 191 B.R. 275,278 (D.R.I. 1996); *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 25 (2d Cir. 1990) (hearing interlocutory appeal involving the difficult issue of first impression); *In re Pappas*, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (hearing interlocutory appeal where there is a difference of opinion on whether court may extend the time of a creditor to commence an adversary proceeding). There is often a substantial ground for difference of opinion where, as here, "precedent bearing on the matter is relatively thin." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 156 (D.N.J. 2005).

The substantial ground for difference of opinion element is satisfied here because the issue of the level of scrutiny to which a bankruptcy court must subject the Trustee's and/or SIPC's self-interested determination that there is no reasonable expectation of repayment is an issue of first impression. Accordingly, this Court should hear the appeal and rule on the matter.

C.    **An Immediate Appeal Will Advance the Ultimate Termination of the Litigation**

This case will be materially advanced for the benefit of all Customers if the Order is immediately appealable, particularly since the evidence of the Picower settlement came to light just days after the bankruptcy court erroneously accepted the Trustee's and SIPC's representation that there was no reasonable expectation of reimbursement. Having offered no explanation, as to the overbilling issue, the Trustee, his counsel, and SIPC should not be permitted to use SIPA to shield their billing statements from appropriate scrutiny. If in fact, a traditional review of those billing statements reveal an actual conflict of interest, then there is no doubt that the ultimate

15

termination of the litigation would be advanced by having an unbiased fiduciary in place, irrespective of the inefficiency that might result from the investigation and his replacement. *See In re Madoff*, 2010 WL 3260074 at *6. It is a sad fact that this litigation will probably outlive many of the Movants and other Madoff Customers. An appeal of the subject order at the conclusion of the proceeding will do them no good.

## CONCLUSION

For the foregoing reasons, Movants' motion for leave to appeal the Order should be granted.

December 28, 2010

                                **BECKER & POLIAKOFF LLP**

                      By:   /s/ Helen Davis Chaitman
                            Helen Davis Chaitman
                            45 Broadway
                            New York, New York 10006
                            (212) 599-3322

                            *Attorneys for Diane and Roger Peskin,
                            and a large group of other customers*