**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th Floor
New York, New York 10022-4728
John H. Drucker, Esq. (JD-2524)
Laurence May, Esq. (LM-9714)
Nolan Shanahan, Esq. (NS-4598)
(212) 752-8000
(212) 752-8393 Facsimile

Attorneys for Adele Fox, individually and on behalf
of a similarly situated class

**BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone:  (561) 835-0900
Facsimile:  (561) 835-0939

**BLACKNER, STONE & ASSOCIATES**
123 Australian Avenue
Palm Beach, Florida 33480
Telephone: (561) 659-5754
Facsimile: (561) 659-3184

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>             v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br>             v.<br>JEFFRY M. PICOWER, Individually and as trustee for the Picower Foundation, *et al.*<br><br>        Defendants, | Adv. Pro. No. 09-1197 (BRL) |

**ADELE FOX, INDIVIDUALLY AND AS REPRESENTATIVE
OF A SIMILARLY SITUATED CLASS OF PLAINTIFFS':
(A) LIMITED OBJECTIONS WITH RESERVATION OF RIGHTS
TO THE TRUSTEE'S MOTION TO APPROVE AN AGREEMENT
WITH THE PICOWER BLMIS ACCOUNT HOLDERS AND
ENJOINING CERTAIN CLAIMS AND (B) CROSS MOTION**

Adele Fox, as representative of a putative class of similarly situated plaintiffs (the "Fox

Plaintiffs"), submits this (a) limited objection with reservation of rights to the motion (the

"Motion")[1] of Irving H. Picard, trustee for the liquidation of the business of Bernard L. Madoff

Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et*

*seq.("SIPA")* ("Trustee") seeking approval of an agreement attached as Exhibit "A" to the

Motion (the "Agreement") dated as of December 17, 2010, between the Trustee and those

entities identified in the Agreement as the "Picower BLMIS Account Holders", "Adversary

Proceeding Defendants," and the "Picower Releasees", including a proposed permanent

injunction as is more fully set forth below (the "Objection"); and (b) cross-motion for an

adjournment of the hearing currently scheduled for January 13, 2010, and for leave to take

expedited discovery (the "Cross-Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT REGARDING OBJECTION**

1.        As of December 31, 2010, the Trustee has allowed only 2,372 of the 16,137 of the

claims he has considered.[2]  The Fox Plaintiff class consists of the vast majority of Madoff

victims whose claims the Trustee has denied.  The Trustee has stated categorically that these

---

[1] The Motion was commenced by the Trustee's filing of a Notice of Motion and
Memorandum of Law (the "Trustee Memorandum"), together with exhibits to the Trustee
Memorandum, all dated and docketed on December 17, 2010 (Docket No. 25).  Unless otherwise
stated or defined in this Objection, capitalized terms utilized in this Objection shall have the
meanings ascribed to them in the Trustee Memorandum.  For the purposes of this Objection,
unless otherwise stated, references to the Motion, means the Trustee Memorandum.

[2] *See* http://www.madofftrustee.com/Status.aspx (as viewed on December 31, 2010).

2

victims will never receive any distribution from these liquidation proceedings, including any distribution of proceeds from his settlement with the Picowers. This is the case even though many of the Fox Plaintiff's have been rendered penniless and all have suffered substantial damages separate and apart from their principal investment in BLMIS. The Fox Plaintiffs have asserted valid and independent tort claims to recover these damages against the Picowers for Picowers' participation in the Madoff Ponzi scheme.

2.      The Objection is prompted in part by the lack of clarity in, and scope of, the proposed permanent injunction set forth in paragraph 7 of the Agreement and in the proposed order appended as Exhibit "C" to the Motion (the "Proposed Order"). The proposed injunction language is unclear and susceptible to various constructions, which means that it does not comply with Rule 65 of the Federal Rules of Civil Procedure and established case law. While the Trustee states at several times in the Trustee Memorandum filed in support of the Motion that the injunction will only enjoin third parties from pursuing claims that "belong" to the Trustee, he also suggests that the injunction will prevent third-parties, such as the Fox Plaintiffs, from pursuing their own claims, against the Adversary Proceeding Defendants, the Picower Releases and the Picower BLMIS Account Holders[3]. To the extent that the injunction is intended to have this broader application, it exceeds the Court's jurisdiction and is at odds with the strict limitations placed on non-debtor injunctions by the United States Court of Appeals for the Second Circuit.

---

[3] For the purposes of this Objection, the Adversary Proceeding Defendants, the Picower Releasees and the Picower BLMIS Account Holders shall, to the extent the Trustee intends that they be protected by the permanent injunction , be collectively referred to as the "Picower Released Parties"

3.      If, as the Trustee states in his Motion, the proposed injunction is truly "narrowly tailored" (Trustee Memorandum, p. 19) and is intended to reach only "direct claims over which the Trustee has 'exclusive standing' to assert" (Trustee Memorandum, p. 20), the concerns of the Fox Plaintiffs on this issue may be easily addressed. Such concerns may be addresses by adding language to the Proposed Order which will make it clear that the injunction does not apply to independent claims of third-parties against non-debtors, and that the determination of whether the Fox Plaintiffs' claims belong to them will be decided in their pending appeal from a prior order of the Court. In the event it is determined pursuant to the pending, or further, appeal that the Fox Plaintiffs may assert their claims against non-debtors, they will be free to pursue them without restraint of the proposed injunction or this Court.  If, however, the Trustee intends to insist on a non-debtor release and injunction which would enjoin third-party claims, then the Fox Plaintiffs object.

4.      The Fox Plaintiffs also object to the Agreement to the extent that the Trustee intends to treat the proceeds of the funds to be forfeited by the Picower Defendants, *i.e.* "the Bankruptcy Settlement Amount" as "customer property", as the term is defined in SIPA.  The Trustee has been attempting to extinguish Fox's claims against the Picower Defendants in order to complete a settlement with the Picower Defendants.  This he cannot do directly as a matter of law, so it appears he is attempting to do so indirectly.  It appears that the Trustee has negotiated a settlement in excess of the amount he is entitled to receive from Picower Defendants in order divest the Picower Defendants of the assets that should be available to satisfy Fox's valid and independent claims. Trustee has not offered a factual or legal basis for doing so and the Fox Plaintiffs should be provided with reasonable discovery on this and related issues.

## BACKGROUND

5.      On or about February 6, 2010, the Fox Plaintiffs filed a class action complaint

with the United States District Court for the Southern District of Florida and on or about March

15, 2010 they amended their complaint (the "Florida Action").  The Florida Action was against

Barbara Picower, individually, as executor of the Estate of Jeffry Picower, as Trustee for the

Picower Foundation and as Trustee of a Trust established for the benefit for Gabriele H. Picower.

A number of other Picower established and controlled entities were also named as defendants, all

of which fall within the definition of Picower Released Parties.[4]  In their complaint, the Fox

Plaintiffs set forth and identified the individual harms and damages they suffered, and alleged

that the Picower Defendants were liable for those damages based on claims of, or under, civil

conspiracy, the Florida Civil Remedy For Criminal Practices Act (the "Florida RICO Statute"),

for unjust enrichment and conversion.  These damages are separate and in addition to the

principal amounts the Fox Plaintiff's invested in BLMIS.  By memorandum decision and order

dated May 3, 2010 (Docket No.22)[5], this Court enjoined the Fox Plaintiffs from prosecuting their

claims in the Florida Action.

6.      In its decision of May 3, 2010, this Court, inter alia, enjoined the prosecution of

the Florida Action and found that the claims asserted by the Fox Plaintiff's "belonged to" the

Trustee, were property of the estate formed when the Securities Investor Protection

Corporation's petition was granted by the District Court (the "SIPA Estate"), and violated the

automatic stay and were "void *ab initio.*"  This decision is now on appeal before the United

_____

[4] In this Objection, the defendants named in the Florida Action are sometimes referred to
as the "Picower Defendants".

[5] Adversary Proceeding No.10-3114(BRL)

States District Court for the Southern District of New York (consolidated appeals 10 CV

4652(JGK) and 10 CV 7101(JGK)) (the "Appeal").  Briefing in the Appeal is scheduled to be

completed by the time of the hearing on the Trustee's Motion to approve the Agreement. It is the

position of the Fox Plaintiffs that their claims against the Picower Defendants are not property of

the SIPA Estate and, therefore, cannot be permanently enjoined as proposed by the Motion for

the reasons set forth herein and in the Fox Plaintiffs' initial brief filed in the Appeal on October

10, 2010 (the "Initial Brief")[6].  The core issue of whether the Fox Plaintiffs' claims are in fact

independent of the Trustee's is the subject of the Appeal; therefore, that issue is more properly

addressed in connection with the pending Appeal. This Objection  is concerned with whether the

language of the proposed injunction must be modified to make clear that it does not enjoin

independent claims against non-debtors that do not belong to the Trustee in order to satisfy the

content, scope and specificity requirements of Fed. R. Civ. P. 65 and Rule 7065 of the Federal

Rules of Bankruptcy Procedure.

### THE PROPOSED PERMANENT INJUNCTION IS UNCLEAR

7.    The permanent injunction language found in the Agreement and Proposed Order,

and the Trustee's description of the injunction in the Trustee Memorandum,  muddies the waters

further.  The proposed permanent injunction, as set forth in the Proposed Order, reads as follows:

> ORDERED, that any BLMIS customer or creditor of the BLMIS
> estate who filed or could have filed a claim in the liquidation,
> anyone acting on their behalf or in concert or participation with
> them, **or anyone whose claim in any way arises from or is
> related to BLMIS or the Madoff Ponzi scheme,** is hereby
> permanently enjoined from asserting any claim against the Picower
> BLMIS Account Holders or the Picower Releasees that is

---

[6] A copy of Initial Brief is attached hereto as Exhibit "A" and incorporated herein by reference.  Fox's Initial Brief of October 10, 2010, can also be found at Docket No. 19 of the Appeal.

duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Account Holders or the Picower Releasees; and it is further… (emphasis added).

8.    At multiple times in the Trustee Memorandum, the Trustee claims that the injunction is only intended to bar third parties from suing the Picower Released Parties on claims which "could have been brought by the Trustee" and are property of the SIPA Estate.  See, e.g., Trustee Memorandum, p. 20  ("This Court has subject matter jurisdiction to grant the injunction because the claims that the Trustee seeks to enjoin are direct claims over which the Trustee has 'exclusive standing' to assert.").  In much the same fashion, the Trustee acknowledges that the proposed injunction is only intended to prevent third parties from pursuing the Picower Releasees and the Adversary Proceeding Defendants on claims for which the Trustee has exclusive standing to bring.  See, e.g., Trustee Memorandum, p. 19.  ("The Trustee seeks a narrowly tailored injunction");  see also Trustee Memorandum, p. 22.  ("The Trustee has 'exclusive standing' to assert such causes of action, which belong to the Debtors' estate") and Trustee Memorandum, p. 23  ("The proposed injunction is consistent with the injunction recently entered by the Court in Drier, which excluded from the scope of the injunction actions where there [sic] an independent basis on which to bring suit").[7]

_____

[7] The Trustee is unconvincing in his efforts to twist the relatively recent 2010 Southern District of New York decisions of  In re Drier LLP, 429 B.R. 112 (Bankr. S.D.N.Y. 2010) and In re Dreier LLP, 2010 WL 3835179, at *4-5 (S.D.N.Y. Sept. 10, 2010) as being supportive of the Trustee's position.  This is evident from his belated acknowledgement in footnote 7 of the Trustee Memorandum, that in Drier the injunction did NOT enjoin third party claims for which there was an independent basis to bring suit ("The injunction entered enjoined all creditors and parties in interest in the case from commencing or continuing any action against any of the released parties where the action is based on Marc Dreier's or Dreier LLP's misconduct **and for which there is no independent basis to bring suit**"(emphasis added).  See Trustee Memorandum, fn 7.)  Analogizing, Madoff to Marc Drier, the Fox Plaintiffs are asserting claims against the Picower Defendants, not based upon Madoff's or BLMIS' misconduct, but based upon the Picower Defendants' independent tortious conduct which give rise to damages suffered (continued…)

7

9.      Injunctions, including the injunction incorporated into the Agreement, are governed by Federal Rule of Civil Procedure 65(d) which requires specificity and clarity. Pursuant to Rule 65(d), every injunction must state the reasons why it was issued, state its terms with specificity and describe in reasonable detail the acts to be restrained.  A party who is to be enjoined is entitled to know exactly what actions are prohibited.   As the United States Supreme Court observed in Schmidt v. Lessard, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L.Ed.2d 661 (1974) (per curium) (footnote references omitted):

> As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. International Longshoremen's Assn. v. Philadelphia Marine Trade Assn., 389 U.S. 64, 74-76, 88 S. Ct. 201, 206-208, 19 L.Ed.2d 236; Gunn, supra, at 388-389. See generally 7 J. Moore, Federal Practice 65.11; 11 C. Wright & A. Miller, Federal Practice and Procedure s 2955. Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed….. The requirement of specificity in injunction orders performs a second important function.  Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing.

10.     The permanent injunction language in the Agreement and in the Proposed Order fails to meet the requirements of Fed. R. Civ. P. 65(d) as interpreted by the United States Supreme Court.  The contradictory and muddled description in the Trustee Memorandum of what is intended by the language serves as a prime illustration of this point.  The Trustee first

_____

(…continued)
by the Fox Plaintiffs.  Furthermore, unlike the enjoined parties in Drier, as currently structured, the Fox Plaintiffs will not be sharing in any of the settlement proceeds to be received by the SIPA Estate, as the Fox Plaintiffs as class members in the Florida Action are defined as BLMIS customers who will never receive any distribution from the SIPA Estate and who have no recognized claim in the SIPA liquidation.

urges the Court to approve the injunction because it is narrowly tailored and is only intended to

prevent third-parties from bringing estate claims, but then relies on cases applicable only to non-

debtor releases arguing that a broader injunction is intended.  See, e.g., Trustee Memorandum, pp

23-27.  If the Trustee truly intends for the narrower construction to apply, he should have no

objection to modifying the Proposed Order to make it clear that any claims asserted by the Fox

Plaintiffs which are not property of the SIPA Estate fall outside of the injunction.  The

ambiguities of the injunction language in the Agreement can readily be corrected by adding

language to the Proposed Order which makes it indisputably clear that the injunction is not

intended to cover independent claims held by the Fox Plaintiffs, that ownership of these claims

will be decided in the pending appeal to the District Court, or such other higher Court as may

hear a further appeal, and that should it be determined that the claims in the Florida Action

belong to the Fox Plaintiffs, they can proceed with the Florida Action free of any restraints

imposed by such injunction or by this Court.  The Fox Plaintiffs propose that the following

language be added to the injunction language currently appearing in the Proposed Order (with

appropriate definitions to be added):

> ---;provided however, the injunction set forth above shall not apply
> to any claims that are not property of the SIPA Trustee or the
> BLMIS Estate (the "Property Issue"), and the Property Issue shall
> be determined by the United States District Court for the Southern
> District of New York (consolidated appeals 10 CV 4652(JGK) and
> 10 CV 7101(JGK), or by such higher appellate court(s) if further
> appeal is taken from that Court's decision.

11.     The Fox Plaintiffs submit that their proposal is sensible and consistent with what

appears to be the intent of the injunction language.  It would resolve their objection and eliminate

an appeal from the order approving the Agreement on this issue, whereas an ambiguous order, or

one which purports to enjoin third party claims and which the Trustee or the Picower Released

Parties could argue enjoins the Florida Action, would result in a second appeal of the same issues

9

which are now on appellate review.  An appeal of an order approving the proposed permanent injunction would necessarily retrace and duplicate the issues before the District Court.  If it is made clear that should the District Court (or higher court in the event of further appeal) determine that the Fox Plaintiffs' claims belong to them and not the Trustee (and therefore cannot be enjoined by the injunction contained in the Agreement), there would be no reason to appeal the order approving the Agreement on this issue.  It is respectfully submitted that proceeding in this fashion would protect the rights of the parties to the pending appeal, and meet the "reasonable best efforts" language in the Agreement.  See Agreement paragraph 7, and Trustee Memorandum at page 15 ("Moreover, the Trustee has agreed to use his reasonable best efforts to obtain the Permanent Injunction and litigate any appeals of the Permanent Injunction Order").  Since the underlying issue in dispute regarding the scope and effect of the permanent injunction proposed pursuant to the Motion is identical to the issue already being addressed as part of the pending Appeal, to wit: whether the claims asserted by the Fox Plaintiffs in the Florida Action constitute the exclusive property of the Trustee, it is clear that logic, judicial economy and general efficiency call for that issue to be decided in the pending Appeal.

## A PERMANENT INJUNCTION OF A THIRD PARTY'S INDEPENDENT CLAIMS VIOLATES ESTABLISHED LAW IN THE SECOND CIRCUIT

12.    The  suggested resolution on this issue obviously makes sense only if the Trustee is to be taken at his word that he only wants to enjoin third parties from bringing claims against the Picower Released Parties that rightfully belong to him.  If, however, the Trustee is seeking a stealth order to enjoin independent third-party claims against  the Picower Releasees, then the Fox Plaintiffs object because the third party injunction, which is effectively a third part release, is beyond the Court's jurisdiction and violates established Second Circuit rulings which limit this type of relief.

10

13.    In <u>Johns-Manville Corporation v. The Chubb Indemnity Insurance Company (In re Johns-Manville Corporation)</u>, 517 F.3d 52 (2d Cir. 2008), <u>vacated and remanded on other grounds sub nom</u>, <u>Travelers Indemnify Co. v. Bailey</u>, _____ U.S. _____, 129 S.Ct. 2195 (2009), <u>aff'd in part and reversed in part</u>, 600 F.3d 135 (2d Cir. 2010), [hereinafter "<u>Johns-Manville</u>"], the Second Circuit held that the bankruptcy court did not have subject matter jurisdiction to enjoin third parties from pursuing their own claims against a debtor's insurers where the claims were based on the insurer's misconduct and did not seek recovery from proceeds of insurance obtained by the debtor.

> Appellants insist that the Bankruptcy Court was without subject matter jurisdiction to enjoin claims against Travelers that are not limited by the terms and scope of the insurance coverage Travelers provided Manville, do not seek recovery from Manville's insurance proceeds, and allege independent misconduct by Travelers. We conclude that the bankruptcy court erred insofar as it enjoined suits that, as a matter of state law, are predicated upon an independent duty owed by Travelers to the Appellants, that do not claim against the <u>res</u> of the Manville estate, and that seek damages in excess of and unrelated to Manville's insurance policy proceeds.

<u>Johns-Manville</u>, 517 F.3d at 55.[8]

There is little ambiguity and no doubt as to the holding in <u>Johns-Manville</u>. If a third party has an independent claim against a non-debtor and the claim does not <u>directly</u> effect the <u>res</u> of the bankruptcy estate, the bankruptcy court has no jurisdiction to enjoin prosecution of the claim. In <u>Johns-Manville,</u> the Second Circuit stated: "In our view, the district court lacked subject matter

_____

[8] Although the Second Circuit's decision was reversed on appeal, the reversal was based on the appellants' failure to timely appeal the bankruptcy court's original order, which had been issued more than 20 years earlier. As such, the Second Circuits reasoning on subject matter jurisdiction was not impacted by the reversal.

jurisdiction to enjoin claims against Travelers that were predicated, as a matter of state law, on

Traveler's own alleged misconduct and were unrelated to Manville's insurance policy proceeds

and the res of the Manville estate." Id. at 68.  This is true even if "in a literal sense" the

independent claim arises out of the same facts or circumstances which gave rise to a claim by the

debtor against the same defendant.  Id. at 67. Quoting from the decision in the Fifth Circuit court

of Appeals decision of In re Zale Corp., 62 F.3d 746 (5th Cir.1995), the Court stated "Shared

facts between the third-party action and a debtor-creditor conflict do not in and of themselves

suffice to make the third-party action "related to" the bankruptcy…". Johns-Manville, at 65.

14.      Johns-Manville served to further limit the already circumscribed instances under

which a bankruptcy court could grant a third party release or enjoin third party actions against

non-debtors.  The Johns-Manville court noted that an earlier Second Circuit decision, In re

Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005), it cautioned that third-party

releases should be granted reluctantly and only in truly unusual circumstances because they are

so abusive.  "By it [a third-party injunction] a non-debtor can shield itself from liability to third

parties; in form, it is a release; in effect, it may operate as a bankruptcy discharge arranged

without a filing or without the safeguards of the Code." Id. at 142.

15.      Here, the Trustee expressly relies upon Metromedia to justify the injunction

contained in the Agreement, and since that case was concerned with releases of independent,

non-estate claims, the logical assumption is that the Trustee believes that the injunction language

he and the "releasees" agreed to applies to third party claims.  See Trustee Memorandum, p. 25.

["The Picower Settlement will bring $5 billion in to the estate for distribution to customers under

SIPA.  This amount alone represents a quarter of the currently estimated $20 billion value of

BLMIS net liability to customers.  As such, the principles set forth in the controlling Second

12

Circuit case [i.e. Metromedia] are satisfied."]. For several separate and equally compelling reasons, the Trustee is plainly wrong.

16.    First, Metromedia does not support the granting of a third party release under the facts and circumstances of this case, and is simply not applicable to these SIPA proceedings. The case only addressed the circumstances where a non-debtor release would be appropriate in a chapter 11 case.  "We have previously held that '[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's **reorganization plan**," quoting  SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group., Inc.), 960 F.2d 285, 293 (2d Cir. 1992) (emphasis supplied).  See also Metromedia at 143.  In Metromedia, the Second Circuit analyzed the limited circumstances under which a non-debtor release would be "important" to a debtor's plan.  The Agreement is not a plan of reorganization, this is not a proceeding under chapter 11 of Title 11 and there will never be a plan of reorganization. The SIPA statute provides in relevant part:"[T]o the extent consistent with the provisions of [SIPA], a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II **of chapter 7** of Title 11." See 15 U.S.C. §§ 78fff(b) (emphasis added).  The SIPA statute expressly limits the provisions of the bankruptcy code that would be applicable to a SIPA proceeding, and Congress chose to make only a limited number of provisions applicable.  Accordingly, none of the chapter 11 provisions of the bankruptcy code are applicable to a proceeding brought under the SIPA statute.  In fact, there is no case that the Fox Plaintiffs have uncovered which permits a bankruptcy court to grant third party non-debtor releases in a SIPA proceeding.

17.    Second, as the court in Metromedia made clear, and as the Second Circuit took the time to re-emphasize in Johns-Manville, it is "inappropriate for [a] bankruptcy court to enjoin

13

claims brought against the third party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate." Johns-Manville, supra, at 66. See also Metromedia at 143. "In any event, a non-debtor release is not adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out."

18.    Third, even in chapter 11 plans, a third party release must be important, if not critical, to the plan, and a release does not become important just because the putative releasees say so.  Certainly if a third party release were to be permitted in a SIPA liquidation, it must meet this exacting standard, if not a more stringent one.  The injunction in the Agreement fails in this respect, however, because by its terms, the Agreement can become effective and binding on the parties even if a bankruptcy court order approving the settlement is never obtained and no injunction ever issues.  This means that the Picower Releasees have agreed to proceed with the settlement without regard, and even if, an injunction favoring them is never issued.  Paragraph 6 of the Agreement expressly provides that it shall "become effective and binding on the Parties, upon the earliest to occur of … the entry of a final and non-appealable order approving the Forfeiture Stipulation."  The Agreement goes on to provide that once it becomes binding and effective on the Parties, all of the provisions therein, "including the [mutual releases]  contained in paragraphs 3 and 4[9], shall become binding and remain effective and binding on the parties, and shall remain in full force and effect, **even if no Final 9019 Order ever is entered**"(emphasis added**).**  One cannot ( Docket No.22) plausibly argue that an injunction was

---

[9] The proposed third party permanent injunction is contained in paragraph 7of the Agreement, and reflected in the Proposed Order.

an essential bargained for provision of a 9019 settlement and that such settlement would not go

forward absent an injunction, when the very terms of the agreement provide otherwise.[10]

19.    Lastly, section 105, which is the only statute the Trustee cites in support of his

injunction request, has been held by the Second Circuit and other Courts of Appeal to not

provide a jurisdictional basis for third party injunctions and releases. Indeed, Congressional

grants of jurisdiction to the bankruptcy courts are found in Title 28 of the U.S. Code, not Title

11. In Metromedia, the Second Court also cautioned that section 105 does not create substantive

rights not otherwise available under applicable law and that whatever power a bankruptcy court

has under the section must derive from some other statute. Metromedia, supra, at 142.

Moreover injunctions under section 105 are not intended to extend past plan confirmation and

the administration of a case.  Indeed, the express rationale for these injunctions, that they are

required so that estate administration will not be subject to crippling outside interference, means

that by their very nature section 105 injunctions are only temporary, never permanent.  See e.g.,

In re American Hardwoods, Inc. (American Hardwoods, Inc v. Deutsche Credit Corporation),

885 F.2d 621 (9th Cir. 1989) ["Section 105 empowers the court to enjoin **preliminarily** a creditor

from continuing an action to enforce" claims against a nondebtor.  [W]e are aware [of no case] in

which a court **permanently** enjoined, past confirmation of a plan [under section 105]a creditor

---

[10] In any event, as recognized in In re Adelphia Commc'ns Corp., 368 B.R. 140, 268-269
(Bankr. S. D. N. Y. 2007), in refusing to approve non-consensual third party releases under the
Adelphia debtors' chapter 11 plan, the Court stated:

"Nor can I accept the notion that the releases pass muster under Metromedia because the
Settling Parties elected to make them an element of their deal…. It would set the law on its head
if parties could get around it by making a third party release a *sine qua non* of their deal, to
establish a foundation for an argument that the injunction is essential to the reorganization, or
even 'an important part' of the reorganization." Adelphia, 268-269.

from enforcing a state court" claim against a nondebtor].(emphasis added). <u>American Hardwoods</u>, at 625.[11]

### SETTLEMENT IGNORES THE RIGHTS OF THIRD
### <u>PARTIES AND SHOULD NOT BE APPROVED AS CURRENTLY STRUCTURED</u>

20.    In addition to being violative of the established law of the Second Circuit, the proposed settlement should not be approve because it is neither fair nor equitable to the Fox Plaintiffs.  If broadly construed, the Trustee would have the Fox Plaintiffs enjoined from pursuing their independent claims against the Picower Defendants without receiving any consideration for their claims.  While the Fox Plaintiffs are aware of the relatively low threshold that must be satisfied under Bankruptcy Rule 9019, the Court should still consider the impact upon third parties.

21.    In the case of <u>In re Devon Capital Management, Inc.</u>, 261 B.R. 619, 623 (Bankr. W.D. PA 2001), the bankruptcy court was asked to approve a settlement between a chapter 7 trustee and "a securities broker-dealer which was involved in numerous 'tainted' securities transactions in which the debtors along with others also were involved." <u>Devon</u>, at 621. The proposed settlement included a bar order enjoining certain third party claims against the settling

---

[11] In the Trustee Memorandum, the Trustee argues that "Courts have repeatedly enjoined suits against non-debtor third parties to protect the administration of the estate". <u>See</u> Trustee Memorandum at page 23. The cased cited by the Trustee do not support that position.  However, in each of those cases it is clear that the courts were using section 105 only to temporarily enjoin the third party's action.  By example, in one of the cases, <u>Fisher v. Apostolou</u>, 155 F.3d 876 (7th Cir. 1998), the Seventh Circuit Court of Appeals stated that once the extent the plaintiffs who were being enjoined would be compensated in the bankruptcy case became clear, "it will be possible for the district court to proceed with this action against the nondebtor defendants for whatever individualized damages may be proper." <u>Apostolou</u> at 883.  Similarly, the citation to <u>In re Adelphia Commc'ns Corp.</u>, 2006 WL 1529357 at *6 (Bankr. S.D.N.Y. June 5, 2006) is likewise misleading in that it is clear that the court was only entering an unopposed temporary restraining order.  In his reference to <u>Lyondell Chem. Co.</u>, 402 B.R. 571 ( Bankr. S.D.N.Y. 2009), the Trustee fails to point out that the injunction granted was limited to 60 days ("The requested injunctions will be issued, but for a period of only 60 days"). <u>Lyondell</u> at 595.

defendant.  Notwithstanding that the proposed settlement otherwise satisfied the standards for

approval of a settlement, and would have brought substantial sums into the estate, the court

refused to approve the settlement with the bar order injunction. The court stated:

> We may approve a settlement only if it is "fair and equitable".
> U.S. v. AWECO, Inc. (In re AWECO, Inc.), 725 F.2d 293, 297
> (5th Cir.), cert. denied, 469 U.S. 880, 105 S. Ct. 244, 83 L.Ed.2d
> 182 (1984).  Even if a settlement is fair and equitable to the parties
> to the settlement, approval is not appropriate if the rights of others
> who are not parties to the settlement will be unduly prejudiced.
> We must determine that "no one has been set apart for unfair
> treatment".  Cullen v. Riley ( In re Masters Mates and Pilots
> Pension Plan), 957 F.2d 1020, 1026 (2d Cir.1992).  Ignoring the
> effect of a settlement on rights of third parties "contravenes a basic
> notion of fairness".  In re AWECO, 725 F.2d at 298.

Devon, at 623.

The Court in Devon went on to say:

> Objectors oppose the motion of the chapter 7 trustee because of the
> bar order. They assert that we should not approve the settlement
> insofar as it includes the proposed bar order. Objectors maintain
> that they have suffered losses of their own as a result of securities
> transactions involving FMS or Devon and Hefren-Tillotson for
> which they may wish to assert claims against Hefren-Tillotson.
> The bar order would prohibit them from doing so.  No
> consideration flows to them in exchange for the bar order,
> objectors maintain, inasmuch as they[are not] creditors of debtors'
> bankruptcy estates who will receive any distribution of estate
> assets by the chapter 7 trustee. Devon at 623.

## THE TRUSTEE HAS NOT DEMONSTRATED FACTUALLY OR LEGALLY THAT THE BANKRUPTCY SETTLEMENT AMOUNT IS CUSTOMER PROPERTY

22.    In the Complaint that the Trustee filed on May 13, 2009, he asserted, after an

exhaustive investigation of the facts, that Mr. Picower and "certain of the Picower BLMIS

Account Holders …" were the recipients of fraudulent transfers.  The Complaint sought to

recover $2.4 billion, contending that this amount was the sum of more than 220 transfers to the

Picower Defendants made during the six years prior to the commencement of the SIPA

proceeding against BLMIS.  Because Madoff and BLMIS obviously participated in the fraud, the

Trustee is barred from asserting any tort claims against the Picower Defendants (including Fox's

claims) under the doctrine of *in pari delicto*.[12]  Therefore, the Trustee can only allege claims to

recover preferential payments and fraudulent transfers, and these are the only valid claims that

the Trustee has brought against the Picower Defendants in his Complaint against them.

23.     The Bankruptcy Settlement Account is for $5 billion, more than twice the amount

sought in the Complaint.  Indeed, it appears that the Trustee will be given control over

distribution of the entire $7.2 billion Government forfeiture.  Nevertheless, the Trustee has

publicly claimed that the entire amount constitutes "customer property" and, therefore, available

only to those of Mr. Madoff's victims who the Trustee contends are customers with net equity

claims.  If upheld, this would mean that not only would this amount not be available to the

majority of Madoff victims, these victims would be substantially prejudiced, if not outright

stripped of the ability to collect on their third-party claims.

24.     This need not and should not be the case.  SIPA provides that if a debtor has

property which is not customer property, it is "part of the general estate of the debtor" and

available for distribution to general creditors.  See 15 U.S.C. § 78 fff – 2(c)(1).  If customer

property, as defined in 15 U.S.C. § 78 lll (4), is insufficient to pay customer claims, the Trustee

can augment the pool of customer property but only as provided by statute.  The Trustee "may

recover any property transferred to the debtor which, except for such transfer, would have been

customer property if and to the extent that such transfer is avoidable or void under the provisions

of Title 11."  15 U.S.C. § 78 fff – 2(c)(3).

---

[12] *See* Ex. A, Fox Initial Brief at 14-17.

25.     Plainly, the Bankruptcy Settlement is not customer property because it is the proceeds of a government forfeiture.  This sum should be administered as forfeiture proceeds consistent with the Government's remission procedures for the benefit of all Madoff's victims.  There is no statutory basis to treat this money as customer property or to deprive the Fox Plaintiffs of their fair share.

26.     The Trustee does not explain why he is receiving the money or the rational for treating it as customer property.  It does not appear, for example, that the sum is solely, or even partly, on account of the fraudulent conveyance claims he asserted in his Complaint.  On the contrary, the Trustee goes to some length to distance himself from characterizing the Bankruptcy Settlement Amount as being a recovery on account of fraudulent transfers.  See, e.g., Trustee Memorandum at p. 6.

27.     In what appears to be an attempt to support his entitlement to more than the six-year fraudulent transfers, the Trustee's current explanation is that the settlement "involves the repayment of a substantial portion of the value of the margin loans …" allegedly made by BLMIS to the Picower Defendants.  Trustee Memorandum, p. 7.  However, The Trustee does not disclose the actual documented size of the Margin Loan balance, only that the value of the Margin Loan was agreed upon between the Trustee and Ms. Picower.  The Trustee does not explain why he failed to discover what appears to be the largest margin loan in history prior to filing his Complaint—a Complaint that was based on months of exhaustive investigation of BLMIS's account records that would have reflected the nature and scope of the alleged Margin Loans.  Moreover, in his Complaint against Picower Defendants, the Trustee alleged that returns in the Picower Defendants' BLMIS accounts could have only been the product of fraud.  These allegations were based on months of investigation and on written documents reflecting that

19

Picower requested the BLMIS make backdated and fictitous trades in the Picower Defendants'
BLMIS accounts.  In his September 2009 opposition to the Picower Defendants' motion to
dismiss, the Trustee catalogued "stark evidence" of fraud.  The Trustee's original allegations of
the Picower Defendants' wrongdoing, and his subsequent and steadfast defense of those
allegations, were surely well-founded.  Only now does the Trustee state that he has been
presented with evidence that the Picower Defendants contend absolve them of fraud.

28.      What claims the Trustee is actually settling is obviously material to whether the
$5 billion (and the additional $2.2 billion in Government forfeiture funds) can qualify as
customer property under the statute.  By the plain language of the statute it cannot.  In order to
assess the settlement and its impact on all parties in interest, more must be known.  For example,
what is the amount of these margin loans, when were they incurred, how were they funded, how
are they documented and why did they first come to light only recently.  Discovery on these and
related issues is needed to develop the fuller record to properly assess the merits of the
Agreement and whether there is a factual basis for the claim that the Bankruptcy Settlement
Amount is customer property.

29.      The Trustee has taken the position that only "net equity" losers have a right to
participate in any distributions from the BLMIS estate, and he has taken this position without
regard to whether a distributable asset is customer property.  To achieve this goal of seeing that
other victims of Bernard Madoff's criminal conduct are left without recourse, the Trustee has
persuaded the Bankruptcy Court to enjoin the Florida Action.  The Trustee has taken advantage
of that improper litigation preference, and he now seeks to make and end-run around the *in pari
delicto* doctrine and take funds which the Fox Plaintiffs might otherwise recover on their
independent claims and deprive them of their rightful share.

## RESERVATION OF RIGHTS

30.     The Fox Plaintiffs hereby reserve the right to raise such other and further

objections, as may be appropriate under the circumstances.  The Fox Plaintiffs further reserves

the right to supplement, amend and revise this Objection, and to adopt objections asserted by

others.

## CROSS MOTION FOR ADJOURNMENT
## AND FOR DISCOVERY

31.     By way of this objection, the Fox Plaintiffs request that this hearing be adjourned

for a limited period and that the Court direct  the Trustee to produce the documents identified in

the document request attached hereto as Exhibit B.  These documents go to the issue of whether

the Bankruptcy Settlement is customer property and whether the fund of money is best

administered pursuant to the forfeiture statutes and not in a SIPA proceeding.

31.     This discovery will not present an undue burden on the Trustee or create an undue

delay in approval of a reasonable and fair settlement.  Presumably, the Trustee already has

marshaled facts to support his new positions, and he need only present those facts to Fox and this

Bankruptcy Court for review.

**WHEREFORE**, the Fox Plaintiffs respectfully request (a) the production of the

discovery identified on Exhibit "B" hereto and an adjournment of the hearing on the Motion for

not less than fourteen (14) days following receipt of such information; (b) clarification of the

proposed permanent injunction by including the language proposed in paragraph 10 above to

make it clear that such injunction will apply only to those claims that are property of the Trustee

and the SIPA Estate, with the determination of such issue to be made pursuant to the pending

Appeal, or any further appeals there from; and (c) such other and further relief as this Court

deems just and proper.

21

Dated: New York, New York
      January 6, 2011

Respectively submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation


By:    _s/Laurence May____
        Laurence May, Esq. (LM-9714)
        John H. Drucker, Esq. (JD-2524)
        Nolan Shanahan, Esq. (NS-4598)
        900 Third Avenue, 16th Floor
        New York, New York 10022-4728
        (212) 752-8000
        (212) 752-8393 Facsimile

            -and-

James W. Beasley, Jr., Esq.
BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, FL 33401
Telephone:  (561)835-0900
Facsimile:  (561)835-0939

*Of Counsel:*
Joseph G. Galardi, Esq.
BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, FL 33401
Telephone:  (561)835-0900
Facsimile:  (561)835-0939

Leslye Blackner, Esq.
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL 33480
Telephone: (561) 659-5754
Facsimile:  (561) 659-3184