# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff - Appellee,<br><br>          v.<br><br>ADELE FOX and SUSANNE STONE MARSHALL, individually and to the extent they represent a class of those similarly situated,<br><br>                    Defendants - Appellants. | Adv. Pro. No. 10-3114 (BRL)<br><br>Consolidated Appeals<br>10 CV 4652 (JGK)<br>10 CV 7101 (JGK) |

## INITIAL BRIEF OF APPELLANT ADELE FOX AND THE PUTATIVE CLASS OF THOSE SIMILARLY SITUATED IN SUPPORT OF APPEAL FROM ORDER GRANTING TRUSTEE'S MOTION FOR TEMPORARY INJUNCTION AND ORDER STRIKING ISSUE FIVE FROM APPEAL

### Consolidated Brief for Case Nos.

### 10 CV 4652 (JGK)
### 10 CV 7101 (JGK)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................1

SUMMARY OF THE CASE AND OF THE ARGUMENT .........................................1

STATEMENT OF JURISDICTION .......................................................................5

STATEMENT OF ISSUES PRESENTED ON APPEAL............................................5

STANDARD OF APPELLATE REVIEW ................................................................6

FACTS AND PROCEDURAL HISTORY ...............................................................6

    A.    The Madoff Ponzi scheme. ...........................................................6

    B.    The BLMIS SIPA Liquidation.......................................................7

    C.    The Trustee's adversary complaint against the Picower Defendants. .....................7

    D.    The Bankruptcy Court's net equity ruling establishes that the majority of BLMIS customers are not creditors of the BLMIS estate. ......................................8

    E.    Appellant and BLMIS customer Adele Fox is not a creditor of the Estate, and she will receive nothing from the Estate. ..................................9

    F.    The Fox Class Action against the Picower Defendants..........................................10

        1.    The members of the Fox class are not creditors of the Estate. .................10

        2.    The Fox class members' claims against the Picower Defendants are distinct from the claims asserted by the Trustee against the Picower Defendants. ...................................11

    G.    The Trustee's adversary action against Fox to extinguish her independent claims. ....................................12

    H.    The two rulings below. ...........................................13

ARGUMENT...................................................................................................14

    I.    THE FOX ACTION DOES NOT VIOLATE THE AUTOMATIC STAY BECAUSE FOX'S CLAIMS DO NOT BELONG TO THE ESTATE; THEREFORE, THE BANKRUPTCY COURT LACKS JURISDICTION TO ENJOIN THE FOX ACTION. .......................................14

  A. Fox's claims are not subject to the automatic stay because the
Trustee lacks standing to bring Fox's claims under the *Wagoner*
Rule.............................................................................................15

  B. Fox's claims are not subject to the automatic stay because the
Trustee lacks standing to assert Fox's claims for injuries separate
from any injury to the Estate. ....................................................17

II. THE BANKRUPTCY COURT ERRED IN STAYING THE FOX
ACTION UNDER SECTION 105(A) OF THE CODE. ....................................24

  A. The Bankruptcy Court lacks subject matter jurisdiction to enjoin
the Fox Action under section 105 of the Bankruptcy Code.....................24

  B. The Fox Action does not interfere with the SIPA proceeding, and
is not an "end run" around the net equity decision...................................24

III. THE COURT ERRED IN ENJOINING THE FOX ACTION BECAUSE
THE BANKRUPTCY COURT LACKS JURISDICTION TO
PERMANENTLY ENJOIN THE FOX ACTION AND ORDER A NON-
CONSENSUAL THIRD PARTY RELEASE AS A CONDITION OF
THE TRUSTEE'S PURPORTED SETTLEMENT WITH THE
PICOWER DEFENDANTS. .........................................................................28

IV. THE BANKRUPCTY COURT LACKED AUTHORITY TO STRIKE
FROM APPEAL AN ISSUE RELATING TO THE BANKRUPCTY
COURT'S SUBJECT MATTER JURIDICTION.............................................31

  A. Prior Proceedings Relating to the Striking Order ......................................31

  B. The Bankruptcy Court has no authority to "strike" an issue from
appeal..........................................................................................32

  C. The *Wagoner* Rule issue cannot be "stricken" from this appeal
because the issue was dealt with in the Orders on appeal. .........................33

  D. The *Wagoner* Rule issue cannot be "stricken" from this appeal
because the issue relates to the Bankruptcy Court's lack of subject
matter jurisdiction over Fox's claims, which can never be waived ..........35

V. THE BANKRUPTCY COURT ERRED WHEN IT PURPORTED TO
STRIKE CERTAIN DOCUMENTS FROM THE RECORD ON APPEAL
IN ITS STRIKING ORDER............................................................................37

CONCLUSION...............................................................................................39

# TABLE OF AUTHORITY

**Page(s)**

CASES

*AXA Marine & Aviation Inc. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622 (2d Cir. 1996) ...........17

*In re Adelphia Communications Corp.*, 2007 WL 4615604 (S.D.N.Y. Dec. 26, 2007)...............32

*In re Air Vermont, Inc.*, 47 B.R. 536 (Bankr. D. Vt. 1985) .........................................................32

*In re Ames*, 320 B.R. 518 (Bankr. S.D.N.Y. 2005) .............................................................33, 38

*In re Barrick Group Inc.*, 100 B.R. 152 (Bankr. D. Conn. 1989)...........................................33

*In re Bostic Constr., Inc.*, 2010 WL 2598253 (Bankr. M.D.N.C. June 25, 2010)........................21

*In re Bennett Funding Group, Inc.*, 336 F.3d 94 (2d Cir. 2003) .........................................15

*In re Candor Diamond Corp.*, 26 B.R. 844 (Bankr. S.D.N.Y. 1983)..........................................38

*CBI Holding Co. v. Ernst & Young*, 529 F.3d 432 (2d Cir. 2008) ...............................................15

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) ..............................................30

*Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*,
    423 F.3d 90 (2d Cir. 2005) ...................................................................................................36

*Countrywide Home Loans, Inc. v. Collins*, 2006 WL 1877090 (D. Mass. 2006).........................33

*In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. Apr. 28, 2010) .........................14, 20-21

*In re Enivid, Inc.*, 364 B.R. 139 (Bankr. D. Mass. 2007).................................................26, 27, 28

*In re First Central Fin. Corp.*, 238 B.R. 9 (E.D.N.Y. 1999)...............................................26, 27

*Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998)..................................................................27-28

*In re Food Fair, Inc.*, 15 B.R. 569 (Bankr. S.D.N.Y. 1981) ........................................................38

*Fun-damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997)..........................35

*In re Go West Entertainment, Inc.*, 387 B.R. 435 (S.D.N.Y. 2008) ......................................29, 30

*In re Granite Partners L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996)........................16, 19, 22, 23

*In re Halstead Energy Corp.*, 367 F.3d 110 (2d Cir. 2004) ...........................................................6

*In re Hampton Hotel Investors*, 289 B.R. 563,567 (S.D.N.Y. 2003) ...........................................15

*Higgins v. N.Y.S.E.*, 806 N.Y.S.2d 339 (N.Y. Sup. Ct. 2005) .................................................17, 22

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ......................................... 15-16

*In re Johns-Manville Corp.*,
    517 F.3d 52 (2d Cir. 2008) ........................................... 1, 3, 4, 14, 17-19, 20, 23, 24, 25, 29-30

*Kirschner v. KPMG, LLP*, 590 F.3d 186 (2d Cir. 2009) .......................................................35

*In re Lendvest Mortgage, Inc.*, 1990 WL 357806 (Bankr. N.D. Cal. 1990)............................27

*In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995) ...............................................................30

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) .....................................................................20

*In re Mediators, Inc.*, 105 F.3d 822 (2d Cir. 1997) ........................................................14, 15, 16

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999).................................................20

*In re Overmyer*, 136 B.R. 374 (Bankr. S.D.N.Y. 1992) ......................................................32

*In re Phar-Mor, Inc.*, 166 B.R. 57 (Bankr. W.D. Pa 1994).................................................26

*Picard v. Taylor*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005) .....................................................25

*In re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D. Del. 1999) ...................................27, 31

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) ...................................17, 20, 22, 30

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ....................1, 3, 14, 15

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989)..........................22

*U.S. v. City of Chicago*, 869 F.2d 1033 (7th Cir. 1989) .................................................35

*Vintero Corp. v. Corporation Venezolana De Fomento*, 675 F.2d 513 (2d Cir. 1982)................36

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) .......................................................24

*In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir. 1991)............................................30

*Wynn v. AC Rochester*, 273 F.3d 153 (2d Cir. 2001) .......................................................34

*In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) ...................................................................30

**STATUTES**

11 U.S.C. § 101(10)...................................................................................................9

11 U.S.C. § 105............................................................................................................5, 24

11 U.S.C. § 362.................................................................................................5, 14

28 U.S.C. § 158(a) ................................................................................................5

N.Y. Tax Law § 615(f) (McKinney's 2009)...........................................................19

## INTRODUCTION

This is an appeal of the Bankruptcy Court's order enjoining the Appellant's prosecution of a class action against third party non-debtors who participated in the massive Ponzi scheme perpetrated by Bernard Madoff ("Madoff") and Bernard L. Madoff Securities, LLC ("BLMIS"). At issue is the right of thousands of defrauded Madoff victims, who will receive nothing from the Madoff bankruptcy, to bring direct state law tort claims against non-debtors to recover substantial damages which they have suffered. The Bankruptcy Court erred in enjoining such claims brought by the Appellant because, under dispositive Second Circuit authority, the Bankruptcy Court does not have subject matter jurisdiction to do so. *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008). Moreover, the doctrine of *in pari delicto* and the "*Wagoner* Rule" bar the Appellee bankruptcy trustee's standing to assert the claims of the Appellant, and the Bankruptcy Court therefore lacks jurisdiction to enjoin such claims. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).

## SUMMARY OF THE CASE AND OF THE ARGUMENT

### A.    The Madoff Ponzi Scheme and the Bankruptcy Trustee's Suit Against Picower

Over a period of approximately thirty years, investors put approximately $20 billion into BLMIS, net of their withdrawals. Once the Madoff Ponzi scheme was discovered, the Securities Investor Protection Corporation ("SIPC") appointed Irving H. Picard as Trustee (the "Trustee") to liquidate BLMIS under the Securities Investor Protection Act ("SIPA"). Madoff's personal bankruptcy was subsequently consolidated into the SIPA liquidation of BLMIS (hereinafter referred to collectively with the SIPA estate as the "Estate").

On May 13, 2009, the Trustee filed an adversary proceeding against the estate of Jeffry M. Picower ("Picower"), his wife, and sixteen of his affiliated entities (together with Picower, the "Picower Defendants"). Picower was an investor in BLMIS for at least 20 years. Picower

withdrew a net amount of at least $7.2 billion, which was approximately 35% of the total net

cash invested by all BLMIS investors.  Picower was by far the largest beneficiary of the Madoff

scheme.  The only claims that the Trustee has brought against the Picower Defendants are under

the Bankruptcy Code for recovery of preferential and fraudulent transfers and an accounting.

**B.      The Fox Class Action Filed on Behalf of Non-Creditors of the Estate**

Appellant Adele Fox ("Fox") is the nominal plaintiff in a class action pending in the

Southern District of Florida (the "Fox Action").  Fox asserts state law tort claims on behalf of a

large number of Madoff investors against the Picower Defendants.  The Fox Action asserts no

fraudulent conveyance or preference claims, or any claims against the Estate or the Trustee.

Instead, the claims are for damages suffered by the Fox class members, which were caused by

the Picower Defendants' participation in the Madoff Ponzi scheme.   The damages include

income taxes paid on reported but illusory profits and the loss of a reasonable investment return

on the funds invested.  These damages are personal to the Fox class members.

The Bankruptcy Court has ruled that Fox and the other class members who invested with

BLMIS are not, and never have been, entitled to any distributions from the Estate.  Thus, the Fox

class members are not creditors of the Estate and will not share in any of the proceeds recovered

by the Trustee from the Picower Defendants or from anyone else.  The Trustee has determined

that over 10,000 customers have no claim against the Estate:  these are the class members in the

Fox Action.

**C.      The Bankruptcy Court's Injunction Was Erroneous**

On May 3, 2010, the Bankruptcy Court entered an order enjoining the Fox Action (the

"Injunction").   The Bankruptcy Court declared that the Fox Action violated the automatic

bankruptcy stay and was therefore void *ab initio*.  The Court also ruled that the Fox Action

should be stayed under section 105 of the Bankruptcy Code, finding that it adversely affected the

Trustee's purportedly "imminent" settlement with the Picower Defendants. The Trustee has acknowledged that his ultimate objective is to permanently extinguish Fox's claims against the Picower Defendants.

The Injunction is erroneous as a matter of law. The Fox claims are not property of the Estate because the Trustee could never assert those claims against the Picower Defendants. Accordingly, the Bankruptcy Court lacked subject matter jurisdiction to enjoin the Fox Action.

### 1.    The Fox Claims Are Not Estate Property.

The Bankruptcy Court ruled that the Fox Action "violated the automatic stay by usurping causes of action *belonging to* the estate." (Emphasis added). On the contrary, the Trustee is attempting to usurp claims that belong exclusively to Fox. It is black-letter law that the Trustee stands in the shoes of the debtor, BLMIS/Madoff, and only "owns" claims that BLMIS/Madoff could have brought prior to the SIPA proceeding. Under the Second Circuit's "*Wagoner* Rule," Madoff/BLMIS never could have sued the Picower Defendants for aiding and abetting Madoff's fraud because they are all *in pari delicto*. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). Because the Trustee lacks standing to assert Fox's claims, he does not own those claims, and the Bankruptcy Court lacks jurisdiction to enjoin the Fox Action. *Id.*

The *Wagoner* Rule is dispositive. However, the Bankruptcy Court lacks jurisdiction to enjoin the Fox Action for another reason. Fox alleges that the Picower Defendants engaged in independent tortious conduct, which caused damages to the Fox class members. The damages include income taxes that the Fox class members paid on non-existent investment income and the loss of a reasonable market return (in some cases in excess of twenty years worth) on their BLMIS investments. BLMIS has *not* suffered these injuries. Therefore, the Trustee does not "own" Fox's claims, Fox's claims are not property of the Estate, and the Bankruptcy Court lacks jurisdiction to enjoin the Fox Action. *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008).

3

2.    **The Injunction Was Improperly Issued under Section 105(a).**

Alternatively, the Bankruptcy Court held that the Injunction was proper under section 105(a) of the Bankruptcy Code.   That ruling was also erroneous.   As set forth above, the Bankruptcy Court lacks subject matter jurisdiction to enjoin the Fox Action.   Therefore, the Bankruptcy Court cannot enter any injunction, including one under section 105(a).   Moreover, even creditors may assert claims against non-debtors, even when the trustee is seeking the same assets.   There is no legal basis to issue an injunction under section 105(a) so that the Trustee can get "first crack," much less the only crack, at the Picower Defendants' assets.   Indeed, the Injunction was based on a factual representation made by the Trustee that was misleading and has since proven to be false.   More than six months have passed since the Trustee claimed that an injunction was required to protect his allegedly "imminent" settlement with the Picower Defendants, yet there has been no settlement.

The Bankruptcy Court's ruling is also in direct conflict with controlling Second Circuit law which holds that a bankruptcy court lacks subject matter jurisdiction to bar creditors' claims against a non-debtor third party, even if the purpose of the injunction is to facilitate a settlement between the trustee and the third party.   *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008). This is especially the case where, as here, the Fox class members have been excluded from participating in the Estate and will receive nothing from any settlement between the Trustee and the Picower Defendants.

The Trustee's true objective is transparent and improper.   The Picower Defendants have stated that they will not settle with the Trustee unless all claims against them are extinguished, including Fox's claims.   Therefore, the Trustee is attempting to appropriate claims that do not belong to him and have the Bankruptcy Court extinguish them.   The Trustee is attempting to do indirectly what he cannot do directly: obtain a non-consensual third party release from Fox and

4

the class members in favor of the Picower Defendants. If the Bankruptcy Court is permitted to extinguish Fox's claims, the Picower Defendants will have been able to "discharge" all of their liability to the Fox class by settling with the Trustee. If that were to happen, the Picower Defendants would be left with billions as the fruits of their participation in the Ponzi scheme. The Fox class members will be left with nothing.

**D.    The Bankruptcy Court Exceeded Its Authority In Striking An Issue On Appeal.**

After Fox appealed the Injunction, the Bankruptcy Court granted the Trustee's Motion to "strike" and attempted to prevent Fox from arguing that the Bankruptcy Court lacked subject matter jurisdiction to enter the Injunction under the *Wagoner* Rule (the "Striking Order"). Fox is also appealing the Striking Order. The Bankruptcy Court does not have the power to determine what issues this Court may consider on appeal, particularly where the issue relates to the Bankruptcy Court's jurisdiction to enter the very order on appeal.

Madoff victims like Fox, who have been denied any claim to Estate assets or to SIPC payments, cannot be enjoined from pursuing independent claims against the Picower Defendants for causes of action that the Trustee has not brought and cannot bring. The Bankruptcy Court did not cite to any case to the contrary. The Injunction and the Striking Order should be reversed.

**STATEMENT OF JURISDICTION**

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

**STATEMENT OF ISSUES PRESENTED ON APPEAL**

**The First Bankruptcy Court Order (Appeal No. 10 CV 4652 (JGK))**

1.    Whether the Bankruptcy Court erred in holding that the Fox Action violates the automatic stay of 11 U.S.C. § 362 and is *void ab initio.*

2.    Whether the Bankruptcy Court erred in entering the Injunction pursuant to 11 U.S.C. § 105.

5

3.    Whether the Bankruptcy Court lacked subject matter jurisdiction to enter the Injunction.

4.    Whether the Bankruptcy Court erred in determining that the claims asserted by Appellant Fox against non-debtor entities constituted property of the Estate.

5.    Whether the Bankruptcy Court erred by not determining that the Trustee was barred by the doctrine of *in pari delicto* from pursuing the claims asserted by Appellant Fox in her complaint in Florida federal court against the Picower Defendants.

**The Second Bankruptcy Court Order (Appeal No. 10 CV 4652 (JGK))**

6.    Whether the Bankruptcy Court erred when it purported to "strike" Issue 5 above from this appeal and to "strike" certain documents from the record on appeal relating to the application of the doctrine of *in pari delicto.*

## STANDARD OF APPELLATE REVIEW

All of the issues presented on appeal raise questions of law and are therefore subject to *de novo* review.  *See In re Halstead Energy Corp.*, 367 F.3d 110 (2d Cir. 2004).

## FACTS AND PROCEDURAL HISTORY

A.    **The Madoff Ponzi scheme.**

Madoff founded BLMIS in 1960.  (R 0007, ¶ 21).[1] On December 11, 2008, Madoff was arrested for conducting a massive Ponzi scheme through BLMIS starting at least as early as the 1980s. On March 12, 2009, Madoff pled guilty to all eleven counts of a federal information.  (R 0002, ¶ 2).  Madoff confessed that he had never purchased any securities with the funds he received from BLMIS's customers.  Instead, he simply used funds from new investors to make payments of "income" and principal to prior investors.  (R 0008, ¶ 22).  The falsified statements

---

[1] "R" followed by a number is a reference to the record on appeal, which the Appellant has reproduced, numbered sequentially, and provided simultaneously to the Appellee and the Court.

that BLMIS sent to investors showed approximately $64.8 billion held in BLMIS accounts when

the scheme was exposed.  (R 0008, ¶ 23).

**B.    The BLMIS SIPA Liquidation.**

On December 15, 2008, on SIPC's application, this district court appointed the Trustee to

liquidate BLMIS pursuant to section 78eee(b)(3) of SIPA.  (R 0006, ¶¶ 13, 14).

On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff

individually. (R 0007 ¶ 17).   On May 5, 2009, the Trustee filed a motion to consolidate the

Madoff estate into the BLMIS SIPA proceedings.   (R 0478).   The basis for the Trustee's

consolidation motion was that "[f]or decades, Bernard L. Madoff Investment Securities LLC was

Bernie Madoff and Bernie Madoff was BLMIS, each the alter ego of the other."  (R. 0490).  The

Trustee asserted that, "any effort to try to separate Madoff from BLMIS is bereft of logic. . . ."

(R 0492).   On June 9, 2009, the Bankruptcy Court entered an order substantively consolidating

Madoff's chapter 7 estate into the BLMIS SIPA proceedings based on the Trustee's alter ego

representations.  (R 0007, ¶ 17).

**C.    The Trustee's adversary complaint against the Picower Defendants.**

On May 13, 2009, the Trustee filed an adversary complaint against all of the Picower

Defendants styled *Picard v. Picower, et al*, Adv. Pro. No. 09-1197 (BRL) (R 0881-0938).  The

Picower Defendants withdrew at least $7.2 billion from their BLMIS accounts from 1995

through 2007.  (R 1549).  This amount is astounding not only in its absolute sense, but also

because it represents approximately 35% of the approximately $20 billion in cash that the

Trustee estimates was invested by all BLMIS customers net of their withdrawals.  Thus, Picower

was the largest beneficiary of the Madoff Ponzi scheme.  Picower died on October 25, 2009,

about six months after the Trustee sued him.

The only claims the Trustee asserts against the Picower Defendants are under the Bankruptcy Code. Count One seeks turnover and an accounting. Count Two seeks avoidance of preferential transfers. Counts Three through Ten allege fraudulent transfers under the Code and the New York Fraudulent Conveyance Act pursuant to § 544 of the Code. (R 0909-17). The Trustee may only recover fraudulent transfers dating back to December 11, 2002, under New York's six year limitations period, leaving up to $4.8 billion of the funds the Picower Defendants withdrew from BLMIS (R 1549), plus their additional assets beyond the Trustee's reach.

D.    **The Bankruptcy Court's net equity ruling establishes that the majority of BLMIS customers are not creditors of the BLMIS estate.**

A SIPA liquidation is like a chapter 7 bankruptcy proceeding. However, unlike in a normal bankruptcy, funds are "advanced" to the Trustee by SIPC to make early distributions to BLMIS customers with valid claims against the Estate. If the SIPC advance is insufficient to satisfy the customer's recognized claim, the customer will receive a *pro rata* distribution from funds if and when funds are available from the SIPA estate. The maximum amount of SIPC money available to any one BLMIS customer is $500,000.

Under SIPA, BLMIS customers may only receive distributions from the Estate if, and to the extent, that they have "net equity" in their respective BLMIS accounts. Some BLMIS customers argued that "net equity" is equal to the final balance reflected on their final BLMIS account statement. However, the Trustee took the position that a BLMIS customer has "net equity" only to the extent that the amount the customer deposited into his or her BLMIS account exceeded the total withdrawals by the customer from the account. (R 0010-11, ¶¶ 37-40). On March 1, 2010, the Bankruptcy Court entered an order adopting the Trustee's "net investment" or "cash in/cash out" methodology for calculating "net equity." The Bankruptcy Court held that the claims of BLMIS customers whose withdrawals exceeded their deposits "will be denied *and*

8

*they will not be entitled to participate in a distribution from the estate*." (R 0011, ¶ 41, emphasis added). Thus, a BLMIS customer with no "net equity" is not an Estate "creditor," which the Bankruptcy Code defines as a person or entity that "has a claim against" the debtor or its estate. 11 U.S.C. § 101(10). The Fox Action and this appeal do not challenge the validity of the net equity ruling.

As of October 1, 2010, the Trustee had reviewed 13,411 BLMIS customer claims and determined to allow only 2,240 claims (just over 16%). *See* Trustee's website, http://www.Madofftrustee.com/Status.aspx. Consequently, over ten thousand BLMIS customers have no claim against the Estate and will not receive a distribution from the liquidation notwithstanding the substantial damages they suffered. These people are members of the Fox class.

**E.    Appellant and BLMIS customer Adele Fox is not a creditor of the Estate, and she will receive nothing from the Estate.**

Appellant Fox is an 87-year-old widow and retired New York City school secretary who invested with BLMIS in the late 1980s. (R 0243, 4/15/10 Fox Decl. ¶ 2.) Fox had two accounts with BLMIS: (1) an IRA account, which had a stated balance as of November 30, 2008 of $887,420.01; and (2) a revocable trust account, which had a stated balance as of November 30, 2008 of $1,948,718.93. (*Id.* ¶ 3.) Fox lost her life savings in BLMIS. (*Id.* ¶ 2.)

The Trustee has determined that Fox is not a creditor of the Estate because she had a negative "net investment" (*i.e.*, no "net equity"). On May 21, 2010, the Trustee formally denied Fox's SIPA claim with respect to her IRA account. (R 1679-82). Indeed, the Trustee has written to Fox demanding that she repay to him $691,372, representing withdrawals in excess of deposits she made in both her accounts in the six years ending December 11, 2008.[2] (R 0243, ¶ 4). As

---

[2] The IRS requires IRA withdrawals beginning at age 70½, which are taxable income. *See* I.R.C. §§ 401(a)(9), 408(d)(1).

the Trustee has repeatedly stated, Fox and similarly situated BLMIS customers will never be

"entitled to participate in distributions from the [E]state." (R 0011, ¶ 41).

**F.    The Fox Class Action against the Picower Defendants.**

   **1.    The members of the Fox class are not creditors of the Estate.**

On February 16, 2010, Fox, individually and on behalf of a similarly situated class, filed

a class action complaint (amended on March 15, 2010) against the Picower Defendants in the

United States District Court for the Southern District of Florida styled *Fox v. Picower, et al.*

(Case No. 10-cv-80252). (R 0100-0127). The definition of the Fox class is:

> [A]ll persons or entities who have maintained customer accounts
> with BLMIS *who are not SIPA Payees* and who have not received
> the net account value scheduled in their BLMIS accounts as of the
> day before the commencement of the SIPA Liquidations. *Every
> class member has been barred by the Trustee from recovering in
> the SIPA Liquidation the amounts sought in this Complaint.*
> (R 117, ¶ 74, emphasis added).[3]

The class members are clearly defined as BLMIS customers who will never receive any

distribution from the Estate and who have no recognized claim in the SIPA liquidation.[4]

In the Injunction decision now on appeal, the Bankruptcy Court heavily redacted the

actual class definition as follows: "The Fox Complaint defines the purported class as 'all persons

or entities . . . who have not received the net account value scheduled in their BLMIS accounts as

of the day before the . . . SIPA Liquidation.'" (R 0414, Injunction at 8). By leaving out critical

language from the Complaint's class definition, the Bankruptcy Court created the mistaken

---

[3] "SIPA Payees," which are excluded from the class, are defined in the Fox complaint as
"BLMIS customers who have filed *recognized claims* in the SIPA Liquidation proceedings." (R
0101, ¶ 3, emphasis added.)

[4] A separate class action against the Picower Defendants was brought in the Florida district court
by another BLMIS customer, Susanne Marshall. Unlike the Fox class, the Marshall class
members are entitled to receive some distribution form the Estate. The Injunction applies to both
the Fox Action and the Marshall action. Marshall has filed a separate appeal of the Injunction.

impression that the Fox class is trying to recover all "fictitious profits" reflected on their final account statements in contravention of its "net equity" decision, and that the claims of the Fox class are the same as all recognized creditors of the Estate. The Bankruptcy Court created an imaginary straw man to attempt to justify its Injunction.

>    **2.    The Fox class members' claims against the Picower Defendants are distinct from the claims asserted by the Trustee against the Picower Defendants.**

As set forth in detail in the Fox Complaint, the Fox Action arises out of the Picower Defendants' knowing participation and collusion in the Madoff Ponzi scheme for approximately twenty years. Picower was a highly sophisticated investor, accountant and attorney who was closely associated with Madoff, both in business and socially, for the last thirty years.

Fox alleges that Picower and his agents directed BLMIS to execute fictitious and backdated transactions in order to generate fictitious profits in the Picower Defendants' BLMIS accounts. Picower directed BLMIS to prepare account statements reflecting the rates of return he "wanted to achieve." BLMIS complied. The cash withdrawals that the Picower Defendants made from their BLMIS accounts were fictitious "profits" based upon the false records they helped to create, not the actual purchase and sale of securities. Picower and Madoff conspired to hide the Ponzi scheme from public scrutiny. (R 0101 *et seq.*, ¶ 5-9, 13, 39-73).

Fox has asserted exclusively non-bankruptcy claims under Florida law against the Picower Defendants for: civil conspiracy, conversion, unjust enrichment, and conspiracy under the Florida RICO statute. (*Id.* ¶¶ 77-112). The Fox Action does not include any fraudulent conveyance or preference claims; nor does it assert any claims against Madoff, BLMIS, the Estate, or the Trustee. The Fox class members seek substantial monetary damages from the Picower Defendants, based upon the payment of taxes on fictitious income and a reasonable return on their BLMIS investment. (*Id.* ¶¶ 82, 86, 112). The Fox class *does not* seek to recover

the balances reflected on their final BLMIS account statements. The Fox class members *do not* seek recovery of fraudulent transfers to the Picower Defendants from BLMIS. The Bankruptcy Court's conclusion to the contrary is incorrect.[5]

**G.    The Trustee's adversary action against Fox to extinguish her independent claims.**

On March 30, 2010, the Trustee filed a complaint to enjoin the Fox Action and simultaneously moved for a temporary restraining order and a preliminary injunction. (R 001-23). The Trustee represented that the injunction was necessary to complete a purportedly "imminent" settlement with the Picower Defendants. (*Id.* ¶¶ 5, 68-70). However, it is now clear that the settlement was not "imminent." It has been over six months since the Trustee's representation to the Bankruptcy Court, yet there is no proposed settlement before the Bankruptcy Court.

The Trustee admits that his goal is to permanently extinguish Fox's claims in order to settle with the Picower Defendants. The Trustee "believes that a permanent injunction will be warranted when the settlement is finalized," and that the "issue will be squarely before the Court at the time of the final approval of the settlement. . . ." (R 0363).[6] Of course, the Fox class members are not Estate creditors and are not entitled to any distributions from the Trustee, and they will not recover anything from the purported settlement.

---

[5] Ignoring the plain language of the Fox complaint, which raises no fraudulent transfer claim, the Bankruptcy Court incorrectly stated that Fox seeks "to recover fraudulently transferred funds" and that "[b]oth the Trustee and [Fox] target the same limited pool of funds originating with BLMIS. . . ." (R 420, 424 (Injunction at 14, 18)). The Bankruptcy Court did not define nor delineate the extent of this purported "limited pool."

[6] On August 4, 2010, Barbara Picower's attorney, William Zabel, made clear that there will be no settlement unless Fox's claims are barred. In referring to the Fox Action, Mr. Zabel stated: "We're not about to settle [with the Trustee] for more than $2 billion and then be sued by other people for billions." Michael Rothfield, *Fight for Funds Settlement for Madoff Victims*, Wall St. J., Aug. 4, 2010.

**H.      The two rulings below.**

On April 1, 2010, the Bankruptcy Court entered the temporary restraining order sought by the Trustee. Following a brief non-evidentiary hearing, the Court entered a "minute" order on April 28, 2010, enjoining the Fox Action (R 0382), and on May 3, 2010 entered a more comprehensive written Injunction order (R 0407-428). First, the Bankruptcy Court ruled that the Fox Action violated the automatic stay, finding that Fox's claims "belong to" the Trustee, even though the Trustee had not brought, and has no standing to bring, Fox's claims against the Picower Defendants. As a result, the Bankruptcy Court ruled that the Fox Action is "*void ab initio*". (Injunction at 21).

Second, the Court found that the Fox Action should be stayed under section 105(a) because it adversely affected the Trustee's purported "imminent" settlement with the Picower Defendants. (Injunction at 16, 21). However, no settlement motion has been filed with the Bankruptcy Court in the more than six months since the Injunction was entered, and the Picower Defendants' counsel has publicly stated that there will be no settlement unless Fox's claims are barred. The Trustee has not amended the record to clarify that a settlement is not "imminent."

Although the Bankruptcy Court's Injunction is styled as "preliminary" (Injunction at 16, 21-22), it is permanent in effect because the Bankruptcy Court ruled that Fox's claims "belong to" the Trustee and the Fox Action was "*void ab initio*".

After Fox appealed the Injunction, the Trustee moved to "strike" Issue Five from Fox's Statement of Issues on Appeal. (R 1713). Issue Five is whether the Bankruptcy Court lacked subject matter jurisdiction to issue the Injunction because of the *Wagoner* Rule and the doctrine of *in pari delicto.* The Bankruptcy Court entered the Striking Order, purporting to preclude this Court from considering the *Wagoner* Rule on appeal. (R 1749).

13

## ARGUMENT

**I.    THE FOX ACTION DOES NOT VIOLATE THE AUTOMATIC STAY BECAUSE FOX'S CLAIMS DO NOT BELONG TO THE ESTATE; THEREFORE, THE BANKRUPTCY COURT HAS NO JURISDICTION TO ENJOIN THE FOX ACTION.**

The Bankruptcy Court only would have subject matter jurisdiction to enjoin the Fox Action under the automatic stay of the Bankruptcy Code if Fox's claims were property of the Estate. *See* 11 U.S.C. § 362(a)(3); *In re Johns-Manville*, 517 F.3d 52, 65 (2d Cir. 2008) ("a third-party action does not create 'related to' jurisdiction when the asset in question is not property of the estate") (citations omitted).[7]  The Bankruptcy Court determined below that the Fox Action "violated the automatic stay by usurping causes of action *belonging to the estate* under sections 362(a)(3) and 541 of the Code." (R 0416, Injunction at 10) (emphasis added).

The Bankruptcy Court was incorrect.  As a matter of law, Fox's claims do not "belong" to the Estate and are not Estate property.  A trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).  Fox's claims are Estate property only if the debtor, BLMIS, could have sued the Picower Defendants for the damages suffered by Fox and that were caused by the Picower Defendants' conspiracy and participation with BLMIS in the Madoff Ponzi scheme. *In re Mediators, Inc.*, 105 F.3d 822, 825 (2d Cir. 1997).  Under the Second Circuit's *Wagoner* Rule, the Trustee could never sue the Picower Defendants for the claims asserted by Fox. The Trustee also lacks standing to assert Fox's claims because they are direct and personal to her (and the class members) and seek to

---

[7] *Johns-Manville* was reversed and remanded on other grounds in *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009).  However, *Johns-Manville* is controlling law on the issues of the Trustee's standing and the Bankruptcy Court's subject matter jurisdiction. *In re Dreier LLP*, 2010 WL 1707737, at *15 (Bankr. S.D.N.Y. Apr. 28, 2010).

recover damages that BLMIS has not suffered.

A.    **Fox's claims are not subject to the automatic stay because the Trustee
lacks standing to bring Fox's claims under the *Wagoner* Rule.**

The Bankruptcy Court lacks subject matter jurisdiction to enjoin the Fox Action under

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). Under *Wagoner*:

> A bankruptcy trustee steps into the shoes of the debtor, with the
> ability to assert claims to the extent (but only to the extent) the
> debtor could, and…*misconduct by a debtor's personnel is imputed
> to the trustee*; when that is the case, a trustee lacks standing to
> assert claims on behalf of the estate against a third party.

*In re Hampton Hotel Investors*, 289 B.R. 563,567 (S.D.N.Y. 2003) (emphasis added). The

*Wagoner* Rule derives from the doctrine of *in pari delicto*, which provides that a debtor is

precluded from recovering any damages caused by conduct that the debtor took part in. *See id.*

at 574-75.   The Second Circuit has repeatedly applied the *Wagoner* Rule in cases involving

Ponzi schemes, and consistently held that it prevents a court from exercising jurisdiction over a

debtor's or trustee's claims against a third party non-debtors like the Picower Defendants. *See

Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995); *In re Mediators, Inc.*, 105 F.3d

822, 826 (2d Cir. 1997); *In re Bennett Funding Group, Inc.*, 336 F.3d 94 (2d Cir. 2003); *CBI

Holding Co. v. Ernst & Young*, 529 F.3d 432 (2d Cir. 2008).

For example, in *Hirsch v. Arthur Andersen & Co.* the debtor partnership, Colonial, was

forced into bankruptcy as a result of a Ponzi scheme perpetrated through Colonial by its general

partners. 72 F.3d at 1087.    The trustee filed an adversary complaint against Colonial's auditor,

Arthur Andersen, alleging that Arthur Andersen was aware of and participated in the Ponzi

scheme. *Id.* at 1088-89. The district court held that it lacked subject matter jurisdiction over the

trustee's claim because the trustee lacked standing to sue Arthur Andersen. *Id.* at 1090. The

Second Circuit affirmed, holding that the trustee lacked standing under the *Wagoner* Rule

"because of the debtor's collaboration with [Arthur Andersen] in promulgating and promoting the Colonial Ponzi schemes." *Id.* at 1094-95.

The *Wagoner* Rule is dispositive in this case. The claims asserted in the Fox Action are based on allegations that Madoff and BLMIS joined with the Picower Defendants (non-debtors) to defraud BLMIS customers through a Ponzi scheme. Fox's claims against the Picower Defendants for their participation in a Ponzi scheme represent a classic case of claims that the Trustee cannot assert under the *Wagoner* Rule and, therefore, do not belong to the Estate.

The Trustee may argue that he has standing to assert Fox's claims under the "adverse interest exception" to the *Wagoner* Rule. This exception applies when the debtor's former management acted only for their own interest and adversely to the debtor corporation. However, the adverse interest exception does not apply where the agent/wrongdoer is the sole shareholder of the debtor, where the agent and debtor are alter egos, or where the agent dominated and controlled the debtor. *See Mediators*, 105 F.3d at 827. This is known as the "sole actor rule."

The Bankruptcy Court has already determined, at the Trustee's urging, that Madoff and BLMIS were in fact one entity controlled by Madoff as the "sole actor." In his pleadings to consolidate the Madoff bankruptcy into the BLMIS liquidation, the Trustee admitted that BLMIS and Madoff were alter egos and that "[u]ntil his arrest on December 11, 2008, Madoff was the *sole member* of [BLMIS] and its chairman. In this capacity, Madoff controlled all of the business activities of BLMIS." (R 0496-97, emphasis added).[8] The Trustee therefore conceded that the "adverse interest" exception to the *Wagoner* Rule cannot apply in this case. *See Granite*

_____

[8] The Trustee also stated that: (1) "[f]or decades, Bernard L. Madoff Investment Securities LLC was Bernie Madoff and Bernie Madoff was BLMIS, each the alter ego of the other" (R 0490); (2) Madoff "maintained no distinction between BLMIS and himself" (R 0491); (3) "[i]t is virtually impossible to separate Madoff's affairs from those of BLMIS" (R 0492); (4) that "any effort to try to separate Madoff from BLMIS is bereft of logic. . . (R 492);" and (5) "[Madoff] deemed BLMIS property to be his own. . ." (R 0499).

*Partners*, 194 B.R. at 330-31 (the trustee's own allegations and other court filings can establish

the inapplicability of the "adverse interest" exception to the *Wagoner* Rule).[9]

The *Wagoner* Rule forecloses any argument that the Bankruptcy Court had jurisdiction to

enjoin Fox's claims, including the argument that the Fox claims "belong" to the Trustee.

Because BLMIS and the Picower Defendants were *in pari delicto* in the Madoff Ponzi scheme,

BLMIS could never have sued the Picower Defendants for the claims asserted by Fox. The

Trustee lacks standing to bring Fox's claims; consequently, the Bankruptcy Court lacks subject

matter jurisdiction to enjoin Fox's claims.

**B.**      **Fox's claims are not subject to the automatic stay: the Trustee lacks standing**
**to assert Fox's claims for injuries separate from any injury to the Estate.**

While *Wagoner* is dispositive on the Trustee's lack of standing, there is another

independent reason why the Bankruptcy Court lacked jurisdiction to enjoin Fox's claims. The

Trustee does not "own" Fox's claim if Fox has alleged an injury that, as a matter of state law, is

distinct from injury suffered by the Estate (*i.e.*, BLMIS). *Johns Manville*, 517 F.3d at 68;

*Granite Partners*, 194 B.R. at 325; *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 588 (5th Cir.

2008); *Higgins v. N.Y.S.E.*, 806 N.Y.S. 2d 339 (N.Y. Sup. Ct. 2005) (whether a claim belongs to

a corporation or its shareholders depends on who suffered the harm). Such is the case here.

The Second Circuit's decision in *Johns-Manville* holds that the bankruptcy court lacks

jurisdiction over claims that allege injuries that are different from the debtor's own injuries.

*Johns-Manville* arose out of large asbestos-related injury claims resulting in the Chapter 11

reorganization of Johns-Manville Corporation ("Manville"). Manville sued its insurer, Travelers

---

[9] The Bankruptcy Court granted the Trustee's motion for consolidation, thereby accepting the
position that Madoff dominated and controlled BLMIS and that the two were alter egos. The
Trustee is now judicially estopped from claiming that the adverse interest exception applies.
*AXA Marine & Aviation Inc. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996).

Indemnity, for policy proceeds. As part of a settlement between Manville and Travelers, the bankruptcy court permanently enjoined all direct suits against Travelers by all claimants to the resulting settlement trust. *See* 517 F.3d at 56-57.

After the injunction was issued, a group of claimants/plaintiffs sued Travelers on various common law theories of liability, including Travelers' failure to warn the public of the health issues created by Manville's asbestos products (the "Direct Action"). The bankruptcy court held that the Direct Actions were barred by the permanent injunction because they arose out of the same circumstances that led to the bankruptcy. *Id.* at 59. The district court affirmed the bankruptcy court's ruling. *Id.* at 59-60.

The Second Circuit reversed, holding that the bankruptcy court lacked jurisdiction to enjoin the Direct Actions against a non-debtor.[10] The Second Circuit expressly rejected the same position taken by the Bankruptcy Court in this case. Travelers was potentially liable directly to the plaintiffs (not Manville) for Traveler's alleged violations of state tort law. The fact that the Direct Actions arose out of the same facts as Manville's claims against Travelers was irrelevant to the bankruptcy court's jurisdiction over the Direct Actions. *Id.* at 67. The bankruptcy court could not manufacture its own jurisdiction simply because a non-creditor third party (Travelers) would not have entered into a substantial settlement with the trustee without the injunction and bar order. The settlement was irrelevant to the bankruptcy court's subject matter jurisdiction. The Second Circuit stated as follows:

> It was inappropriate for the bankruptcy court to enjoin claims brought against a
> third party non-debtor solely on the basis of that third party's financial

---

[10] Although *Johns-Manville* was decided in the context of a permanent injunction, it applies generally to the bankruptcy court's subject matter jurisdiction for any purpose. 517 F.3d at 61 ("[T]he bedrock issue in this case is whether the bankruptcy court has jurisdiction over the disputed statutory and common law claims."). In any event, the Injunction in this case was permanent in substance. *See supra* at 13.

> contribution to a debtor's estate. If that were possible a debtor could create
> subject matter jurisdiction over any non-debtor third party by structuring a plan
> in a way that it depended upon third party contributions. As we have made clear,
> subject matter jurisdiction cannot be conferred by consent of the parties

*Id.* at 66.

As in *Johns-Manville* and *Granite Partners*, Fox's claims and injuries are distinct from those of the Estate. Fox's claims are based on allegations[11] of the Picower Defendants' own wrongful conduct—that they actively participated and conspired with BLMIS/Madoff in the Madoff Ponzi scheme. Fox alleges that the Picower Defendants' acts (including acts of mail and wire fraud) give rise to state law causes of action that result in injuries which are separate from the injuries suffered by the Estate. The Fox class members allege injury arising out of their payment over many years of a substantial amount of state and federal taxes on the false income reflected in false BLMIS account statements which BLMIS reported to various taxing authorities. The Fox class members can never recover all of these tax payments.[12] These damages are obviously particular to the Fox class members and were not suffered by BLMIS.

---

[11] The Bankruptcy Court was required to take the allegations in the Fox Complaint as true and could not consider the legal sufficiency of the claims. *Granite Partners,* 194 B.R. at 326. The Bankruptcy Court ignored this requirement when it mischaracterized Fox's claims as fraudulent conveyance claims.

[12] As alleged in the Fox complaint, members of the Fox class paid federal and state income taxes on non-existent income and gains. The IRS has permitted Madoff victims to deduct only 95% of their losses as a "theft loss." *See* Rev. R. 2009-9; Rev. Proc. 2009-20. Moreover, many of the class members, because of their individual circumstances, will not be able to recover all of their tax losses because the loss can only be carried back five years, and some individuals, such as Fox, will not have sufficient future income and/or will not live long enough to recoup the remaining tax payments into the future. In addition, certain Fox class members will not be able to recover substantial amounts of state income taxes they paid because, for among other reasons, some states do not recognize these losses as deductions against future income, others do not allow federal itemized theft deductions for state income tax purposes and others limit the amount of deductions that a taxpayer can take. *See, e.g.*, Connecticut Dep't of Revenue Services, Connecticut Announcement No. 2009(7); *New Jersey Tax Guide*, CCH (2009) at ¶ 201; *N.Y. Tax Law* § 615(f) (McKinney's 2009).

The Fox class members also seek to recover damages for a second category of distinct injury in the form of a reasonable market return on the funds that they deposited with BLMIS.[13] The Trustee cannot contend that this claim belongs to BLMIS. Indeed, the Trustee has taken the position (which the Bankruptcy Court upheld) that the Fox class members have *no compensable injury* in the liquidation. The Trustee cannot have it both ways; he cannot contend that he owns claims that he has determined do not exist. *See Johns-Manville*, 517 F.3d at 65; *Seven Seas Petroleum*, 522 F.3d at 585, 588 (creditors' claims against a non-debtor for conspiracy with the debtor to defraud creditors does not belong to the trustee).

In a very recent case, then-Chief Bankruptcy Judge Bernstein of the Southern District of New York held that the Bankruptcy Court lacked subject matter jurisdiction to enjoin independent claims made by creditors against a non-debtor as part of the non-debtor's settlement of the trustees' preference and fraudulent conveyance claims. In *In re Dreier LLP*, 2010 WL 1707737 (Bankr. S.D.N.Y. April 28, 2010), Drier ran a Ponzi scheme through his law firm by selling $700 million of bogus promissory notes to investors. *Id.* at *1. One "investor" known as GSO was in a situation similar to the Picower Defendants. GSO received approximately $200 million from Dreier's Ponzi scheme prior to bankruptcy. The trustee sought to recover these amounts from GSO as an avoidable preference.

In an effort to settle with GSO, the trustee in *Drier* sought to enjoin all third-party claims against GSO that in any way related to the Ponzi scheme. On facts nearly identical to this case, Judge Bernstein held that the Bankruptcy Court lacked jurisdiction under *Johns-Manville* to enjoin any "independent claims [against GSO] from GSO's own wrongful conduct relating to the debtor's or the [Ponzi scheme]. Such claims do not affect property of the estate or the

---

[13] *Maiz v. Virani*, 253 F.3d 641, 663 (11th Cir. 2001) (lost alternative investment profits are recoverable under RICO); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (same).

administration of the estate beyond GSO's insistence that the GSO Settlement Agreement must include the [injunction]." *See id.* at 16-17.   The same result is required in this case.[14]

*In re Bostic Construction, Inc.*, 2010 WL 2598253 (Bankr. M.D.N.C. June 25, 2010), is similarly on point.   The trustee entered into a settlement agreement with the debtor corporation's owners/officers (the "Inside Defendants") and three corporate outsiders (the "Outside Defendants").   Two creditors sued the same parties in state court.   The creditor/plaintiffs alleged that the Outside Defendants aided and abetted the Inside Defendants' breach of fiduciary duty and fraud.   The plaintiffs also alleged a cause of action against the Outside Defendants under North Carolina's RICO statute.   The Outside Defendants argued that those claims "belonged to" the trustee.   The *Bostic* court disagreed and held that the plaintiffs' claims against the Outside Defendants were personal to the plaintiffs and the trustee lacked standing to bring them.

Fox has brought a claim against third-party non-debtors (the Picower Defendants) for aiding and abetting the frauds committed by the corporate insider (Madoff) and for violations of the Florida RICO statute.   As in *Bostic*, Fox's claims are for individual injuries that do not belong to the Trustee and that cannot be asserted by the Trustee.

The Bankruptcy Court ignored the controlling case of *Johns-Manville* and other relevant cases such as *Drier*, *Bostic*, and *Seven Seas Petroleum*.   Instead, the Bankruptcy Court improperly reasoned that Fox's claims belonged to the Trustee because the damages sought by Fox "seek to redress a harm common to all BLMIS customer claimants." (R 0418, Injunction at

---

[14] The Bankruptcy Court below attempted to support its holding with a quote from *Drier*: "If the Florida Actions are permitted to go forward 'the Trustee[] will be hampered in his ability to pursue and ultimately settle fraudulent transfer claims' with the Picower Defendants, who will be 'fearful of paying twice for the same transfer—once on the Trustee's claim and a second time on the derivative claim.'" (R 0425, Injunction at 19).   However, the Bankruptcy Court took its quote out of context and ignored the fact that in the very next paragraph of the *Drier* opinion the court held that it lacked subject matter jurisdiction to enjoin independent claims against non-debtors arising out of their own conduct related to the Ponzi scheme. *Drier* at *16-17.

12).[15]    However, that is not the proper analysis.    The correct test is whether the Fox class

members have suffered damages that were not suffered by BLMIS, regardless of whether or not

that separate injury was common to all BLMIS customers. *See, e.g.*, *Granite Partners*, 194 B.R.

at 325;    *Seven Seas Petroleum, Inc.*, 533 F.3d at 588    ("[W]e also wish to dispel the notion that a

claim belongs to the estate . . . merely because it could be brought by a number of creditors,

instead of just one."); *Higgins*, 806 N.Y.S.2d at 338-39 (holding that whether a claim belongs to

a corporation or its shareholders depends on who suffered the alleged harm, rejecting the concept

of "undifferentiated harm" among shareholders).

　　　　To justify its focus on whether the injury alleged by Fox is common to all creditors, the

Bankruptcy Court cited to *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 844 F.2d 688 (2d

Cir. 1989). *St. Paul* does not support the ruling below.  In *St. Paul*, the bankruptcy trustee and a

*creditor* both asserted identical claims against the debtor's parent corporation—that the parent

was the debtor's alter ego and stripped the debtor of its assets.  *Id.* at 706 ("In the end, [the

creditor] is alleging . . . a preferential transfer to [the debtor's alter ego]…."). That is not the

case here.  The Fox Action is *not* brought on behalf of "creditors" and does not seek damages

from BLMIS's alter ego; instead Fox seeks damages from a third party separate and apart from

any avoidable transfers claimed by the Trustee.

　　　　To the extent that *St. Paul* does apply, it supports Fox's argument on appeal.  The

Bankruptcy Court ignored the actual holding in *St. Paul*, which is that a trustee can assert the

claims of a creditor *if* the debtor could have brought those same claims prior to bankruptcy.  *Id.*

at 703-04.  The *St. Paul* court ruled that the creditors' alter ego claims were property of the estate

because the debtor, as a matter of state law, could have brought those same claims. *Id.* at 703-04

---

[15] As set forth at page 23 below, the Bankruptcy Court's conclusion that the Fox' Action asserts
harm common to all Estate creditors is incorrect.

("[U]nder Ohio law, a corporation would be able to assert an alter ego cause of action against its parent corporation. The cause of action therefore becomes property of the estate of the bankrupt [debtor]. . . ."). Unlike in *St. Paul*, BLMIS could not have brought the claims asserted by Fox. BLMIS did not suffer loss of its investment; BLMIS did not pay taxes on fictitious income; and BLMIS was not the victim of the Florida RICO claims asserted by Fox against the Picower Defendants. *St. Paul* is consistent with the universally accepted principle that a trustee stands in the shoes of the debtor and only has standing to bring claims that the debtor could bring.

Even if the Bankruptcy Court's "common injury" theory were valid, the Trustee would still lack standing to assert Fox's claims. Fox does not allege an injury common to *all* BLMIS customers. The Fox class is made up of a subset of BLMIS customers—those who have been found by the Bankruptcy Court to have no "net equity," and therefore have no claim to any distribution from the Estate.

Finally, the Bankruptcy Court's *ipse dixit* conclusion that Fox is indirectly seeking the same recovery as the Trustee is incorrect. (Injunction at 8, 20). The Bankruptcy Court was required but failed to "look to the nature of the *wrongs alleged* in the complaint . . . *and the nature of the injury* for which relief is sought." *Granite Partners,* 194 B.R. at 325 (emphasis added). The Trustee has only pled fraudulent transfer and preference claims against the Picower Defendants based on his avoidance powers under bankruptcy and SIPA law. The Fox class alleges causes of action for *damages* caused by the Picower Defendants' tortious conduct. The damages sought in the Fox Action are not and do not affect property of the Estate. The fact that Fox's claims and the Trustee's claims both arise out of the Madoff Ponzi scheme or similar factual scenario is irrelevant. *Johns-Manville,* 517 F.3d at 67.

23

The Bankruptcy Court did not cite to any case where the automatic stay was applied to enjoin the claims of a *non-creditor* like Fox, against a non-debtor like the Picower Defendants, for an injury suffered by the non-creditor, but not suffered by the debtor. The Trustee lacks standing to bring Fox's claims against the Picower Defendants; therefore, the Bankruptcy Court lacked subject matter jurisdiction to enjoin the Fox Action pursuant to the automatic stay.

## II.    THE BANKRUPTCY COURT ERRED IN STAYING THE FOX ACTION UNDER SECTION 105(A) OF THE CODE.

As set forth above, the Fox Action does not violate the automatic stay. As an alternative ground for enjoining the Fox Action, the Bankruptcy Court held that an injunction was proper under section 105(a). This holding is also erroneous. The Bankruptcy Court lacks subject matter jurisdiction to enjoin the Fox Action under section 105(a). Moreover, the Trustee cannot be granted a section 105(a) stay merely to obtain an improper priority over non-creditors like Fox.

### A.    The Bankruptcy Court lacks subject matter jurisdiction to enjoin the Fox Action under section 105(a) of the Bankruptcy Code.

Section 105(a) is not an independent source of subject matter jurisdiction. *See In re W.R. Grace & Co.*, 591 F.3d 164, 170-71 (3d Cir. 2009). Indeed, as the Second Circuit has held, a court's desire to "foster and encourage and preserve a settlement . . . does not in and of itself confer jurisdiction." *Johns-Manville*, 517 F.3d at 66. As set forth in Section I above, the Bankruptcy Court lacks jurisdiction to enjoin the Fox Action. The Bankruptcy Court also lacks subject matter jurisdiction to enter an injunction under section 105(a).

### B.    The Fox Action does not interfere with the SIPA proceeding, and is not an "end run" around the net equity decision.

The Bankruptcy Court claimed that the Fox Action sought to "interfere" with or make an "end run" around the net equity decision. The Bankruptcy Court found it "particularly alarming" that the victims represented by Fox might recover independent damages "given that any

24

judgment awarded . . . would exceed their entitlement to BLMIS distributions under SIPA and the Court's Net Equity Decision" (R 0427, Injunction at 21), which in this case is zero. The Bankruptcy Court's lack of subject matter jurisdiction to enter a section 105(a) stay makes its analysis of these alleged concerns irrelevant. In any event, the Bankruptcy Court's concerns are unfounded. The Fox class members are not making an "end run" around the net equity ruling because they are not seeking to recover the amounts that BLMIS falsely reported was in their accounts. While the Bankruptcy Court's decision precludes the Fox class members from participating in the SIPA proceeding, that does not mean that they were not otherwise harmed—they were, and many members of the class were rendered penniless. The Bankruptcy Court cannot enjoin the Fox class members from seeking to recover these damages from Picower Defendants based on their independent misconduct. *See Johns-Manville*, 517 F.3d at 68

Moreover, the Bankruptcy Court and the Trustee have cited no authority for the proposition that the SIPA proceeding is the *exclusive* remedy to recover the damages they suffered as a result of the Madoff Ponzi scheme. To the contrary, SIPA liquidation proceedings are not the exclusive remedy available even to creditors who are permitted to participate in a SIPA liquidation. *See Picard v. Taylor*, 326 B.R. 505, 511 n.2 (Bankr. S.D.N.Y. 2005) (denial of customer's SIPC claims "is a different thing, of course, from denying that the [customers] may have some other form of claim attributable to misconduct of [the debtor or third parties]"). Nothing in SIPA prevents the Fox class from pursuing independent, direct claims against responsible third parties such as the Picower Defendants.

Even a creditor (which Fox is not) can recover sums exceeding its distributions from the estate (zero for Fox class members) through claims against non-debtor third parties who are also being sued by the debtor's trustee. Accordingly, courts have consistently refused to employ

25

section 105(a) to enjoin claims against non-debtors. In *In re Phar-Mor, Inc.*, 166 B.R. 57, 62

(Bankr. W.D. Pa 1994), the bankruptcy court refused to enter a section 105 stay. It rejected the

argument that certain creditors might receive a disproportionate recovery as a result of their

independent claims against the debtor's accounting firm.

> [T]he fact that the Creditor Actions may result in disproportionate recoveries by
> certain creditors is also irrelevant. The Code is concerned only with a
> disproportionate distribution of the debtor's estate. The fact that a creditor may
> gain additional relief from sources other than the property of the estate does not
> contravene the Code's provisions or policies. . . .

*Phar-Mor*, 166 B.R. at 62.

Similarly, in *In re Enivid, Inc.*, 364 B.R. 139 (Bankr. D. Mass. 2007), a number of class

actions were brought by former shareholders of the debtor against the debtor's officers and

directors. The trustee of the debtor's estate sought to enjoin the class actions pending the

trustee's resolution of the estate's claims against the officers and directors. *Id.* at 142-43. The

*Enivid* court refused to enjoin the shareholders from seeking to recover the same proceeds from a

D&O policy that the trustee sought:

> *The right of the parties to pursue the same assets and individuals is not,
> in and of itself, a cognizable theory in support of an injunction.* . . . The
> Plan Trustees are asking for an injunction that would restrain
> disbursement of the insurance proceeds until their share can be finally
> determined. They have not advanced a legitimate reason why their
> claims against the directors and officers of [the debtor] should be
> elevated to a higher priority than the claims of the Shareholder
> Plaintiffs, which would be the effect of injunctive relief.

*Enivid*, 364 B.R. at 157-58 (emphasis added). The law in this Circuit is the same. *See In re First

Central Fin. Corp.*, 238 B.R. 9, 21 (E.D.N.Y. 1999), *aff'd in unrep. opinion*, no. 99-cv-6730

(E.D.N.Y. Mar. 2, 2000) (denying an injunction even though a separate action by creditors would

diminish the amount of recovery for the estate).

The purported grounds for a stay are even weaker here than they were in *Phar-Mor* and

*Enivid*, because the Fox class members are not creditors of the Estate and are excluded from any recovery from the Estate. The funds that the Trustee seeks to recover from the Picower Defendants on account of his fraudulent conveyance claims are not yet property of the Estate. There is no legal right for the Trustee to get "first crack" at the assets of the Picower Defendants. The Trustee has no greater claim to the assets of the Picower Defendants than any other creditor of the Picower Defendants. *In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 157-58 (D. Del. 1999) (reversing bankruptcy court's injunction of shareholders' claims against the debtor's former directors); *see also Phar-Mor,* 166 B.R. at 62; *Enivid*, 364 B.R. at 157-58 (no injunction permitted even where creditors and the trustee sought the same assets from the same third party).

Finally, the harm to the Fox class far outweighs any illusory harm that might be caused by a disruption to the "imminent" settlement discussions between the Trustee and the Picower Defendants. It is obvious by now that a settlement was not "imminent" when the injunction was issued. Moreover, as set forth at Section III below, the Trustee cannot appropriate and eradicate Fox's claims in order to grant the Picower Defendants a release of Fox's claims to reach a settlement, especially one that will not benefit the Fox class members. The Fox class members' due process right to pursue their valid and independent claims should not be delayed, and certainly not extinguished. *In re Lendvest Mortgage, Inc.*, 1990 WL 357806, at *6 (Bankr. N.D. Cal. 1990) (refusing to enjoin a class action against the non-debtors); *In re First Central*, 238 B.R. at 21-22 (personal causes of action "should not be held hostage to the Trustee's [claim]").

The Bankruptcy Court improperly relied upon *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), in an attempt to justify its Injunction. However, in *Apostolou*, the enjoined lawsuit was brought by *creditors* whose recovery from the third party litigation would be reduced by their recovery from the debtor's estate. *Enivid*, 364 B.R. at 156-57. As in *Enivid*, but unlike in

*Apostolou*, the Fox class members are not creditors of the Estate and they will never recover anything from the Estate. The *Envid* court correctly distinguished *Apostolou* as "not valid precedent" to enjoin the claims of non-creditors against non-debtors. *Id.* at 157; *In re Reliance*, 235 B.R. at 560 (distinguishing *Apostolou* because the creditor's recovery from a third party "will not be reduced by the amounts they would receive for claims filed in the bankruptcy case").

Under the Trustee's theory, as adopted by the Bankruptcy Court, anyone with any type of claim against the Picower Defendants must be enjoined so that he can settle with the Picower Defendants. However, neither the Bankruptcy Court nor the Trustee have cited to any case in which a section 105 injunction was granted to stay claims made by non-creditors against non-debtors. There is no basis in law or equity to insulate the Picower Defendants from the independent claims of the Fox class or to permit the Trustee to have a "head start" over a non-creditor's litigation against a responsible third party.

**III.    THE COURT ERRED IN ENJOINING THE FOX ACTION BECAUSE THE BANKRUPTCY COURT LACKS JURISDICTION TO PERMANENTLY ENJOIN THE FOX ACTION AND ORDER A NON-CONSENSUAL THIRD PARTY RELEASE AS A CONDITION OF THE TRUSTEE'S PURPORTED SETTLEMENT WITH THE PICOWER DEFENDANTS.**

The Bankruptcy Court enjoined the Fox Action in order to facilitate the Trustee's purportedly "imminent" settlement with the Picower Defendants. The settlement would be contingent on the Bankruptcy Court *permanently* enjoining Fox's claims against the Picower Defendants. The Trustee stated that "the Trustee believes that a permanent injunction will be warranted when the settlement is finalized. . . ." (R 0363). The Bankruptcy Court indicated a willingness to entertain the notion of entering a third party release of Fox's claims. (R 0411, Injunction at 5 n.4). However, the Bankruptcy Court would lack jurisdiction to do so. Because the ultimate relief that the Trustee seeks cannot be granted, the Trustee failed to establish the

likelihood that he will succeed on the merits of his claim against Fox, which is a critical element of his claim for a temporary injunction. *See In re Go West Entertainment, Inc.,* 387 B.R. 435, 442 (S.D.N.Y. 2008) (denying section 105(a) preliminary injunction where movant failed to establish a likelihood of success on the merits).

The leading Second Circuit case on the issue is again *In re Johns-Manville Corp.*, 517 F. 3d 52 (2d Cir. 2008).  As explained at pages 17 through 19 above, the Second Circuit held that the bankruptcy court lacked subject matter jurisdiction to permanently bar creditors' claims against a non-debtor third party, even to facilitate a settlement between the trustee and the third party.  Fox's position is even stronger than that of the plaintiffs in *Johns-Manville*.  First, the BLMIS bankruptcy is a liquidation, not a reorganization.  Second, the plaintiffs who sued Travelers were also potential beneficiaries of the Manville-Travelers settlement fund.  Here, Fox has been excluded from participating in the Estate and will receive nothing from any Trustee-Picower settlement.

The Picower Defendants are trying to settle their case with the Trustee for as little as possible in exchange for a full release of *all* liability—not just of the Trustee's claims, but anybody's claims, including Fox's.  To obtain that result, the Trustee is attempting to appropriate claims that do not belong to him so that they can be extinguished by the Bankruptcy Court. Fox's claims are not for the Trustee to bargain away as consideration for a settlement with the Picower Defendants.  The Trustee's conduct is particularly egregious because he himself has determined that the Fox class members are not entitled to any distribution from the Estate and will receive nothing from the settlement.

The Second Circuit has long recognized the dangers of entering injunctions such as the one ultimately sought by the Trustee against Fox:

A nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without filing and without the safeguards of the Code." *Johns-Manville*, 517 F.3d at 66 (citations omitted).

If the Bankruptcy Court approves a settlement between the Trustee and the Picower Defendants that provides for a release of the claims asserted by the Fox class, those dangers and inequities will be fully realized here. The settlement proceeds would benefit only the creditors of the Estate; *i.e.*, the small percentage of BLMIS customers who have "net equity." The Fox class does *not* include those customers, because the Fox class has been adjudicated to have no "net equity." The only recovery for the Fox class is against the non-debtor Picower Defendants for their independent tortious conduct. If the Bankruptcy Court is permitted to extinguish Fox's claims, the Picower Defendants will have been able to "discharge" all of their tort liability to the Fox class. The Second Circuit has held that this result is improper. *See also Seven Seas Petroleum*, 522 F.3d at 589-590.

Section 524 of the Bankruptcy Code further supports Fox's position. Section 524(e) "prohibits the discharge of debts of non-debtors;" therefore, the Bankruptcy Court may not issue an injunction that actually or effectively discharges the Picower Defendants' liability to Fox. *In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995); *see, e.g., In re Combustion Engineering, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004); *In re Lowenschuss*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 600-02 (10th Cir. 1991).

Neither the Bankruptcy Court nor the Trustee cited a case where a bankruptcy court in liquidation proceedings was permitted to forever bar the claims of a *non-creditor* against a non-debtor on a non-consensual basis. Because the Bankruptcy Court cannot enter a permanent injunction against Fox, it cannot enter a temporary injunction. *See In re Go West Entertainment,*

*Inc.,* 387 B.R. at 442 (denying section 105(a) preliminary injunction where the movant failed to establish a likelihood of success on the merits); *In re Reliance*, 235 B.R. at 561 (same).

## IV.    THE BANKRUPTCY COURT LACKED AUTHORITY TO STRIKE FROM APPEAL AN ISSUE RELATING TO THE BANKRUPTCY COURT'S SUBJECT MATTER JURISDICTION.

As set forth in Parts I, II and III above, Fox contends that the Bankruptcy Court's Injunction erroneously enjoined the Fox Action against the Picower Defendants. The Bankruptcy Court had no jurisdiction to issue the injunction on the grounds that the Fox claims were property of the Estate. Under the *Wagoner* Rule, Fox's claims could never "belong to" the Trustee. *See supra* at 15-17. In its Striking Order, the Bankruptcy Court purported to "strike" this dispositive jurisdictional argument from being heard by this Court on appeal.

There is no legal authority to support the Bankruptcy Court's extraordinary ruling. The ruling would allow a bankruptcy court to limit the review of its own decisions by an Article III Court, including the unwaivable issue of subject matter jurisdiction.

## A.    Prior Proceedings Relating to the Striking Order

On May 26, Fox filed her Designation of Items to Be Included in the Record and Statement of Issues to be Presented on Appeal of the Injunction. (R 1704). Issue Five in the Statement of Issues on Appeal is whether the Bankruptcy Court lacked jurisdiction *ab initio* to enjoin the Fox action under the doctrine of *in pari delicto,* which the Second Circuit has held is a matter of subject matter jurisdiction under the *Wagoner* Rule.

On July 7, 2010, Fox filed her initial brief in compliance with the due date set by this Court. On June 9, 2010, the Trustee filed a motion to strike the *Wagoner* Rule issue from Fox's Notice of Appeal. (R 1710-1722). On July 20, 2010, this Court ordered that if the Bankruptcy Court granted the Motion to Strike, then Fox could file a consolidated brief addressing both the

31

Injunction and the ruling on the Motion to Strike.

On August 3, 2010, the Bankruptcy Court issued a seven-page order granting the Trustee's Motion to Strike (the "Striking Order"). (R 1749). On August 11, 2010, Fox filed a Notice of Appeal from the Striking Order. (R 1782). At a conference held on September 7, 2010, this Court reaffirmed that the parties should each file consolidated briefs addressing the appeals of both the Injunction and the Striking Order. (9/7/10 Trans. at 4:1-5; 11:15-24, case no. 1:10-c-04652-JGK, Doc. No. 15).

**B.**    **The Bankruptcy Court has no authority to "strike" an issue from appeal.**

As this Court has previously held, only a district court has the power to determine whether or not an issue is the proper subject of an appeal from a bankruptcy court. *In re Adelphia Communications Corp.*, 2007 WL 4615604, at *2 (S.D.N.Y. Dec. 26, 2007) (Koeltl, J.) In *Adelphia*, the appellees contended that the bankruptcy court, not this District Court, should decide whether an issue was properly on appeal. This Court disagreed.

> Bankruptcy courts do not retain exclusive or concurrent jurisdiction with the district court over the subject matter of an appeal. . . . Therefore, the filing of the notice of appeal created jurisdiction with this [District] Court to decide the appeal and issues raised by the appeal . . . . *Id.* (emphasis added).

*See also In re Overmyer*, 136 B.R. 374, 375 (Bankr. S.D.N.Y. 1992) (holding, a bankruptcy court lacked jurisdiction to dismiss an unperfected appeal because a notice of appeal "divests the bankruptcy court of jurisdiction to proceed with respect to all matters raised by such appeal;" therefore, the proper scope of the appeal was an issue for the district court to decide); *In re Air Vermont, Inc.*, 47 B.R. 536 (Bankr. D. Vt. 1985) (denying a motion to strike a notice of appeal because it was for the district court, not the bankruptcy court, to determine whether the bankruptcy court's order was the proper subject for an appeal).

The cases cited by the Bankruptcy Court in its Striking Order do not contradict the rule set forth in *Adelphia*. *In re Ames*, 320 B.R. 518 (Bankr. S.D.N.Y. 2005), and *In re the Barrick Group, Inc.*, 100 B.R. 152 (Bankr. D. Conn. 1989), merely hold that a bankruptcy court may, in limited circumstances, strike *documents* from the record on appeal. These cases do not hold, mention, or imply that a bankruptcy court can prevent an issue from being considered on appeal by a district court. *Countrywide Home Loans, Inc. v. Collins*, 2006 WL 1877090 (D. Mass. 2006), is similarly not on point because the district court, not the bankruptcy court, dismissed issues on appeal that were completely unrelated to the order on appeal.

The Bankruptcy Court has arrogated to itself the sweeping right to prevent an appellant from raising any issue it deems "irrelevant" or "prejudicial." (Striking Order at 4). The Bankruptcy Court did not cite a single case in which a bankruptcy court granted a motion to strike an issue on appeal. The Trustee did not cite any such case in his motion papers below, and we have found none. The reason is obvious. If the Bankruptcy Court could determine what issues are on appeal, it could strip a party of all appellate rights and thereby render its own rulings immune from review by an Article III court. The Bankruptcy Court's Striking Order cannot preclude this Court from determining whether the Bankruptcy Court lacked subject matter jurisdiction to enter the Injunction against Fox.

C.    **The *Wagoner* Rule issue cannot be "stricken" from this appeal because the issue was dealt with in the Orders on appeal.**

Even if the Bankruptcy Court had the unprecedented power to do so, it erred in "striking" the *Wagoner* Rule issue. The Bankruptcy Court struck the *Wagoner* Rule issue asserting that it "was raised neither by the Trustee, nor the Appellants in their papers or at oral argument." (Striking Order at 5). However, the Bankruptcy Court itself made substantive rulings in both the Injunction and Striking Order that place the *Wagoner* Rule squarely in issue on appeal.

In its Injunction, the Bankruptcy Court held that "[t]he Florida Plaintiffs violated the [automatic] stay by usurping causes of action belonging to the estate under section 362(a)(3) and 541 of the Code." (Injunction at 10). By holding that the claims asserted by Fox "belong to" the Estate, the Bankruptcy Court decision necessarily made the *Wagoner* Rule relevant to this appeal. As explained above, the *Wagoner* Rule holds that if a debtor is *in pari delicto* with another party, the debtor's trustee lacks standing to assert claims against that third party, and the Bankruptcy Court lacks subject matter jurisdiction over such claims. Therefore, the Bankruptcy Court itself put the *Wagoner* Rule in issue when it held that the Fox claims "belong exclusively to the Trustee" and that the Trustee had the power to assert the Fox claims. (Injunction at 12).

The Bankruptcy Court expressly raised the *Wagoner* Rule in its Striking Order as well. The Bankruptcy Court stated that "the doctrine of *in pari delicto* was and remains irrelevant to the Court's determination that [Fox's] causes of action were property of the estate for automatic stay purposes. . . ." (Striking Order at 5). The Bankruptcy Court also called the *Wagoner* Rule issue "hypothetical" and relevant only if and when the Trustee actually asserts Fox's claims after misappropriating them. (*Id.* at 6). The Bankruptcy Court's reasoning is erroneous. Under the *Wagoner* Rule, Fox's claims will never belong to the Estate.[16] And it is for this Court to decide whether the Bankruptcy Court is correct in its belief that the *Wagoner* Rule is "irrelevant" or "hypothetical" to its jurisdiction to enjoin Fox's claims. The Bankruptcy Court dealt with and

---

[16] The *Wagoner* Rule is not a "hypothetical" issue. The Bankruptcy Court either had or did not have subject matter jurisdiction to enjoin Fox's claims. The answer depends upon whether or not BLMIS would have been able to bring those claims *prior to bankruptcy*. *See supra* at 14. Whether the Trustee has actually brought Fox's claims against the Picower Defendants is irrelevant (although the fact that the Trustee has not attempted to assert the Fox claims is telling; he does not want to assert the claim, but usurp them). Subject matter jurisdiction over a non-creditor like Fox cannot be conferred upon the Bankruptcy Court based on whether and when the Trustee chooses to bring (or not to bring) certain claims. *Wynn v. AC Rochester*, 273 F.3d 153,157 (2d Cir. 2001) (subject matter jurisdiction cannot be conferred by the actions of the parties).

decided issues regarding the *Wagoner* Rule in both Orders, and these issues are therefore properly reviewable *de novo* by this Court. *E.g.*, *U.S. v. City of Chicago*, 869 F.2d 1033, 1035-36 (7th Cir. 1989) ("It is folly for [appellee] to assert that an appeals court on review of a district court judgment cannot consider the merits of each and every theory the district court relied upon in deciding the case.").[17]

**D.**    **The *Wagoner* Rule issue cannot be "stricken" from this appeal because the issue relates to the Bankruptcy Court's lack of subject matter jurisdiction over Fox's claims, which can never be waived.**

Even if the Bankruptcy Court had the power to frame the issues on appeal, and even if the Bankruptcy Court had not expressly addressed the *Wagoner* Rule, the applicability and effect of the *Wagoner* Rule would still be reviewable in this Court. The *Wagoner* Rule provides that the Bankruptcy Court has no jurisdiction over the claims brought in the Fox Action against the Picower Defendants. *See Hirsch*, *supra* at 15-16 (affirming district court holding that bankruptcy court lacked jurisdiction under the *Wagoner* Rule); *Johns Manville*, *supra* at 18 (holding that whether or not a claim belongs to the trustee is a matter of the bankruptcy court's subject matter jurisdiction). Regardless of what did or did not occur below, subject matter jurisdiction can never be waived and may be raised at any stage of a case, including on appeal. *See Fun-damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1006 (2d Cir. 1997) (an appellate court should consider jurisdictional issues even if raised for the first time on appeal).

Even if the jurisdictional issue were waivable (which it is not), this Court should consider

---

[17] The Bankruptcy Court incorrectly questioned the viability of the *Wagoner* Rule, citing *Kirschner v. KPMG, LLP*, 590 F.3d 186 (2d Cir. 2009). (Striking Order at 6 n.2). The Bankruptcy Court misread *Kirschner*. In that case, the Second Circuit was reviewing the lower court's application of the "adverse interest" exception to the *Wagoner* Rule. The Second Circuit needed guidance as to how the adverse interest exception applied to the complex set of facts at issue and therefore certified that limited question to the New York State Court of Appeals. The Second Circuit did not question the applicability, much less the viability, of the *Wagoner* Rule, thereby reaffirming it as the law of the Second Circuit.

the *Wagoner* Rule on appeal.  First, there was no waiver of the *Wagoner* Rule argument because

there was no reason for Fox to argue that point in the Bankruptcy Court.  In support of its motion

for an injunction, the Trustee asserted that Fox was seeking the Picower Defendants' assets,

which the Trustee incorrectly believed were already property of the estate by virtue of his

fraudulent conveyance claims.  The Trustee never argued that the *causes of action* that Fox

asserted against the Picower Defendants were Estate property.  (R 0024-0068; 0348-0360).  The

Trustee conceded this point at the September 7, 2010, telephone conference with this Court.

(9/7/10 Trans. 9:15-10:3, case no. 1:10-c-04652-JGK, Doc. No. 15).  The *Wagoner* Rule (*i.e.*, the

Trustee's standing to bring Fox's claims) was put in issue only when the Bankruptcy Court *sua*

*sponte* held that the Fox claims themselves were property of the Estate.

　　　In any event, an appellate court has "discretion" to consider an argument not addressed

below where "the issue is purely legal and there is not need for additional fact-finding."

*Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 103 (2d Cir.

2005); *Vintero Corp. v. Corporation Venezolana De Fomento*, 675 F.2d 513, 515 (2d Cir. 1982)

(new contentions involving questions of law may be considered by an appellate court).

Application of the *Wagoner* Rule in this case is a pure question of law.  Because this Court has

the discretion to consider an argument not raised below, it is necessarily impossible for the

Bankruptcy Court to simultaneously exercise the same discretion and "strike" an issue from

appeal.

　　　Finally, "striking" Issue Five is ultimately irrelevant to whether Fox can argue the

*Wagoner* jurisdictional rule on appeal.  Issue Three of Fox's Statement of Issues on Appeal,

which was not stricken, expressly raises the Bankruptcy Court's lack of subject matter

jurisdiction to enjoin Fox's claims.  (R 1704).  Indeed, the Bankruptcy Court has conceded that

Fox has an "unwaivable right to contest [the Bankruptcy] Court's subject matter jurisdiction." (Striking Order at 6). The Bankruptcy Court does not dispute that the *Wagoner* Rule raises an issue of subject matter jurisdiction or that its jurisdiction may be challenged on appeal. Therefore, the *Wagoner* Rule argument is subsumed in Issue Three on appeal and is properly before this Court.

### V.    THE BANKRUPTCY COURT ERRED WHEN IT PURPORTED TO STRIKE CERTAIN DOCUMENTS FROM THE RECORD ON APPEAL IN ITS STRIKING ORDER.

In furtherance of its effort to prevent this Court from considering the *Wagoner* Rule, which is fatal to the Trustee's attempt to appropriate and eliminate Fox's claims, the Bankruptcy Court ruled that three documents relevant to the adverse interest exception to the *Wagoner* Rule should be stricken from the record on appeal. (Striking Order at 5.) The documents are the Trustee's motion to substantively consolidate Bernard Madoff's personal bankruptcy with the BLMIS SIPA proceedings and the Bankruptcy Court's order granting the motion (collectively, the "Consolidation Pleadings"). *See supra* at 7. These documents conclusively establish that Madoff and BLMIS are "alter egos" and, therefore, that the "adverse interest" exception to the *Wagoner* Rule does not apply. *See supra* at 16-17.

The Bankruptcy Court order striking the Consolidation Pleadings from the record on appeal should be reversed. First, the Bankruptcy Court purported to strike the Consolidation Pleadings based on the incorrect premise that the *Wagoner* Rule cannot be raised on appeal. (Striking Order at 5). The *Wagoner* Rule issue is properly before the Court, and the Court should, therefore, consider the Consolidation Pleadings.

Moreover, Rule 8006 of the Federal Rules of Bankruptcy Procedure relating to the contents of the record on appeal "should be construed liberally; the record on appeal should

contain the documentation necessary to afford the reviewing court a complete understanding of the case." *In re Candor Diamond Corp.*, 26 B.R. 844, 846 (Bankr. S.D.N.Y. 1983). In an appeal of an order in an adversary proceeding, the record may be supplemented with materials from other proceedings in the same bankruptcy case. *In re Food Fair, Inc.*, 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981) (denying motion to strike documents from the record on appeal).

Bankruptcy courts have properly stricken documents from the record only in very limited circumstances such as when the documents included facts that were not available to the court at the time of its ruling. *In re Ames Department Stores, Inc.,* 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) (striking documents filed in a separate litigation in a different state court which were never filed in the broader bankruptcy court record). That is not the case here. Prior to entering the Injunction, the Bankruptcy Court was well aware of the Consolidated Pleadings and the Trustee's representation that Madoff and BLMIS were alter egos. Indeed, at page 2 of the Injunction, the Bankruptcy Court notes that the Trustee's motion for an injunction was brought in the "substantively consolidated" proceedings of BLMIS and Bernard L. Madoff.

In any event, this Court can consider the Consolidation Pleadings even if they were stricken from the record on appeal. Striking a document is merely a mechanism whereby the Bankruptcy Court makes clear its position that the document was not considered in making the ruling below. *In re Ames*, 320 B.R. at 522, n.8. A district court may still consider the stricken document on appeal "to supplement the record, for background, clarifications, or the like." *Id.*

The Consolidation Pleadings are from an adversary proceeding within the consolidated cases which addresses a fundamental issue concerning the administration of the cases. Therefore, the Consolidation Pleadings should be included in the record on appeal.

## **CONCLUSION**

For the reasons set forth above, Fox requests that the Court reverse and vacate the Bankruptcy Court Injunction and Striking Order, and: (1) find that Fox has not violated the automatic stay; (2) find that a section 105 injunction is not proper; (3) find that the Bankruptcy Court lacks subject matter jurisdiction to enter an injunction against Fox; (4) order that the Trustee's adversary complaint against Fox be dismissed; and (5) allow the Fox Action to proceed in the Southern District of Florida.

Dated: New York, New York
      October 5, 2010

Respectively submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation


By:     /s/ *Laurence May*
        Laurence May, Esq. (LM-9714)
        John H. Drucker, Esq. (JD-2524)
        Nolan Shanahan, Esq. (NS-4598)
        900 Third Avenue, 16th Floor
        New York, New York 10022-4728
        (212) 752-8000
        (212) 752-8393 Facsimile

            -and-

James W. Beasley, Jr., Esq.
BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, FL 33401
Telephone:  (561)835-0900
Facsimile:  (561)835-0939

Leslye Blackner, Esq.
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL 33480
Telephone: (561) 659-5754
Facsimile:  (561) 659-3184

*Of Counsel:*
Joseph G. Galardi, Esq.
BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, FL 33401
Telephone:  (561)835-0900
Facsimile:   (561)835-0939