UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Adv. Pro. No. 08-1798 (BRL)
SIPA Liquidation

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>Plaintiff-Applicant<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant.<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>Plaintiff,<br><br>v.<br><br>JEFFRY M. PICOWER, individually and as trustee for the Picower Foundation, et al.<br>Defendants. | OBJECTION TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE PICOWER BLMIS ACCOUNT HOLDERS AND ENJOINING CERTAIN CLAIMS<br><br>Adv. Pro. No. 09-1197 (BRL)<br><br>RECEIVED<br>JAN -3 2011<br>U.S. BANKRUPTCY COURT, SDNY |

CLAIMANTS OBJECTION TO THE MOTION

The Surabians, account holders of Bernard L. Madoff Investment Securities LLC Claim #'s, 001895, 001897, 001949, 001896, 002185, 002186, 001802 and 003367, object to the Plaintiff's Motion to the entry of an order, (i) approving that certain Agreement by and between the Trustee on the one hand and Barbara Picower, as executor of the estate of Jeffry M. Picower, and on behalf of certain other related entities and their accounts maintained at BLMIS on the other hand, and (ii) enjoining customers or creditors of BLMIS, who filed or could have filed claims in the liquidation, from asserting certain claims, as more particularly set forth in the

1

Trustee's supporting Memorandum of Law.

Irving H. Picard ( the "Trustee"),and Mover of the Motion in his Memorandum of Law is seeking to Protect the Picowers, Barbara Picower, as the Executor ( the "Executor" or "Mrs. Picower") of the Estate (the "Picower Estate") of Jeffry M. Picower ("Mr. Picower" and, together with Mrs. Pocower, the Picowers"), by including in the Agreement (ii) enjoining Customers ( including the Surabian's), from pursuing certain claims against the Picower BLMIS Account Holders or the Picower Releases that arise from or are related to BLMIS or the Madoff Ponzi Scheme.

The Surabians claim that if this Motion is Allowed, then ALL associates of the Madoff Ponzi Scheme will only have to Return only their portion of profits they took out of their accounts without regards to inflation or the profits those fraudulent monies acquired over the year. This will only encourage further Schemes similar to Madoff's scheme if all a participant was required to do after being caught is to return the monies without Interest or Penalties.

The Surabians claim that additional Profits were made from the illegal profits and by the Movers Motion , those Profits will be protected.

In the Movers PRELIMINARY STATEMENT, the Trustee claims the settlement of $5 BILLION,that the Picowers have agreed to return to the Estate "can not be overstated an would bring the amount recovered of the total principal lost to a third of the $20 Billion. Also the Trustee states that the Picower's would then have paid back 100% of the fictitious profits received by the Picowers over the life time of their relationship with BLMIS.

The Surabians, claim the one third of the principle may look good on the outside but they contend that would only be one tenth of the amount invested at to days dollars. The initial

$20 BILLION should have turned into $100 BILLION in to days dollars over the past 30 years. making the recovery only 5%.

The Surabians claim that the Picowers would only be giving up the fraudulent profits they received from their accounts at old value and would be allowed to keep 100% of their so called investment with out proof that the investments were true and accurate. Is the Trustee taking BLMIS records as fact? The Picowers are not penalized and they get to retain the profits their fraudulent profits or even fraudulent investments acquired over the past decades.

The Surabians claim that over the decades the Picowers purchased other assets with the fraudulent profits through other entities increased vastly. Thus, the Picower Settlement does not make good financial sense for the BLMIS estate and the victims of Madoff's fraud, and will set the bar for future settlements. In this case, this agreement will be rewarding the associates of Madoff's scheme.

THEREFORE, the Surabians Respectfully Request that the Court Deny the Picower Settlement.

The Surabians claim this is more than a Ponzi Scheme, this is a Scheme whereby those people closely associated with Madoff could have pledged their Fraudulent profits and investments from their BLMIS accounts to buy other assets which would then have increased in value over the years. This Motion will protect those increases invested in other assets with others, because only if fraudulent profits were taken out of their BLMIS accounts would those monies have to be returned. Under this Motion , if a customer of BLMIS never took out profits but only pledged their fraudulent assets and profits to invest in other legal investments then they would get to keep all those profits derived from those investments. In effect this Motion is giving its stamp of approval on MONEY LAUNDERING. This Motion allows those closest to Madoff

3

to keep money claimed to be initial investments based solely on the GREAT records of BLMIS.

In the SETTLEMENT DISCUSSIONS, the Picowers claim through the Trustee investigation, the investigation has uncovered facts which show that Mr. Picower did not know of or participate in the Ponzi Scheme.

Stating for example, the Complaint alleged that Mr. Picower, through a certain entity, had received at one point 950% return on certain investments and research has confirmed that 950% return that BLMIS reported to Mr. Picower in certain BLMIS documents was inconsistent with the much lower rate of return that Mr. Picower purportedly received based on the entirety of BLMIS records for that account. It has not been proven that any records of BMLIS is true or accurate.

The Surabians claim this supports their claim that the Picowers knew of the inconsistencies in the value of their BMLIS accounts and if the Trustee looked, he would find that the Picowers used their inflated amounts to increase their assets.

The Trustee further states similarly, as the Trustee's investigation went further back in time, the Trustee became aware of evidence showing that several decades ago Mr. Picower transferred Real securities into certain BLMIS accounts. The Trustee does not supply proof of this. Was this based on the accurate records BMLIS kept? Didn't BLMIS claim to have bought and sold 100's of BILLIONS of dollars worth of stock when in fact the government now claims BLMIS never bought any.

The Trustee claim that the Picowers paid millions of dollars in taxes in connection with the securities transactions reported on their BLMIS account statements and the Picowers asserts that such conduct in paying taxes reflects that they were unaware that the securities transactions

reflected on their BMLIS account statements were fictitious.

The Surabians claim that is no proof the Picowers were unaware their BLMIS account statements were fictitious.

The Surabians claim the Picowers and others would pay IRS Long term capital gains tax or even to defer the tax on Billions of dollars which then could be used as good faith down payment money for property worth ten times which over the years during the real-estate boom would increase during the past 15 years three to five fold. In effect the Picowers could have made 20 to 30 BILLION dollars on every fake Billion ten to fifteen years ago, simply by paying a tax or deferring that tax.

The Surabians also claim that even though the Picowers claim that they were going to leave the vast majority of their estate which would have included some of the Surabians money, to charity should have no weight regarding this Motion. The Mover has shown no proof if that fact even had merit in the first place. The Surabians also claim there is no evidence that Mrs. Picower genuinely wanted to assist the victims of Madoff's fraud, other than after being caught and facing jail time and forfeiture of all monies made from the fraudulent investments with fraudulent money and the possibility of paying all BLMIS account holders customer claims. Under this Motion those claims would be deemed withdrawn with prejudice.

The Trustee never mentions how much, % wise of the Picowers wealth that she and her husband accumulated over their lifetime, is in relationship to the $5 Billion being given to the victims of the Madoff Fraud.

Under the GOVERNMENT FORFEITURE, the government is still rewarding the Picowers and eventually others to retain profits from the fraud.

The Surabians claim the Movers in the AGREEMENT AND ARGUMENT claim that the agreement is fair and equitable and in the best interests of the BLMIS estate is NOT CORRECT.

1. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable.

Considering the Mover of the motion did not indicate what the worth of the Picowers would have been if all gifts and donations were added back into their worth and at todays dollars that the Picowers acquired with the fraudulent funds and assets. This Court can not allow this motion as it stands.

(i) the probability of success in litigation in this case is high if the Trustee goes for full 2010 dollars and penalties, with what is known about the Picowers and their association with Madoff.

(ii) knowing the net worth and the availability of the Picowers dispersed funds would give a better understanding as to the difficulties associated with collecting more assets from the Picowers. The mover of this motion failed to give details that would show that there would be difficulties associated with collections.

(iii) again the mover of the motion failed to mention the total net worth associated with the Picowers which would then show if the added amount to be collected from the Picowers out weighs the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv) the paramount interests of the creditors (or in this case, customers) makes for a denial of the Motion.

## CONCLUSION

The Mover of the motion in their conclusion submits that the Agreement should be approved for two overarching reasons: (a) to avoid lengthy and burdensome litigation, and (b) and because it represents a reasonable compromise of the Claims that benefits the estate and the customers of BLMIS. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order (i)approving theAgreement, and (ii)issuing the permanent injunction.

The Surabians conclusion is that the Mover of the Motion did not supply enough information to the Court to justify Allowing the Motion as presented. The Surabians conclusion is that this Court should Modify the Agreement.

WHEREFORE, the Surabians Respectfully Request entry of an Order, MOTION DENIED or in an alternative Modification to the Motion and Agreement were the Picowers keep 100% of their net worth prior to the Picowers first investment with BLMIS.

_/s/ Steven Surabian_  
Steven Surabian Pro se  
1230 Rt. 28  
S. Yarmouth, MA 02664  
508-688-4613  

_/s/ Richard Surabian_  
Richard Surabian Pro se  
P. O. Box 397  
W. Hyannisport, MA 02672  
508-579-9834  

_/s/ Martin M. Surabian_  
Martin M. Surabian Pro se  
P. O. Box 397  
W. Hyannisport, MA 02672  
508-771-5011  

DATE: December 30, 2010