Lawrence R. Velvel
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: velvel@mslaw.edu

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC<br><br>Plaintiff,<br>v.<br><br>LAWRENCE R. VELVEL,<br><br>Defendant. | Adv. Pro. No. 10-05412 (BRL) |

**REPLY OF LAWRENCE R. VELVEL TO TRUSTEE'S OPPOSITION TO
NOTICE OF APPEAL**

1

Lawrence R. Velvel hereby replies to the Trustee's Opposition to the new Notice of Appeal filed by Velvel and to the propriety of Velvel's earlier Notice of Appeal.

Velvel's motion regarding the notices of appeal is one of three interrelated motions. The other two motions are: (1) A motion for a partial stay of the proceedings against concededly innocent investors under the procedures ordered on November 10, 2010. The requested stay would take effect after the Trustee filed suits to stop the running of the statute of limitations (as he has now done), and would remain in effect until the Second Circuit's decision on net equity and also, possibly, on the propriety of clawbacks from the innocent. And (2) a motion for leave to file an interlocutory appeal on two aspects of the procedures ordered on November 10, 2010: on the procedures' severe limitations on discovery, and on their requirement, in current circumstances, of mandatory mediation. The Motion For Leave to File an Interlocutory Appeal has been withdrawn, however, without prejudice to again seeking an interlocutory appeal, or a writ of mandamus, at the appropriate time.

The arguments on the three motions are extensively the same, and the Trustee's recent opposition to the notices of appeal reprises arguments he previously made against a partial stay and against the now-withdrawn motion for leave to appeal. In those instances, as here, the Trustee did not respond at all -- and in a few instances he responded only in cursory, generalized, non specific terms (which he did not even do here) -- to the fundamental matters at stake, e.g., to the fact that the Trustee, this Court and various parties told the Second Circuit that an interlocutory appellate decision was needed because it would be of crucial importance to all parties, and self evidently knew that such a decision would take some time, yet now the Trustee seeks to move forward in

2

advance of the appellate decision he himself requested; to the fact that the Trustee and various parties, backed by this Court, correctly informed the Second Circuit that an appellate decision on net equity, and perhaps also on clawbacks, could very well be dispositive in a vast number of cases against innocent victims; to the fact that the Trustee is now seeking to force innocent investors to give up their appellate position in mandatory mediations; to the fact that the discovery which is presently denied under the November 10th Order unless special dispensation is received from the Court would likely be dispositive of the case because it would reveal highly impermissible and/or "merely" violative conduct by SIPC and the Trustee, e.g., it would reveal the unlawful financial reasons which may have caused SIPC and the Trustee to choose to use CICO and to unlawfully choose not to credit innocent investors with money earned on short term money market instruments and Treasuries in which Madoff invested their money *every single night* of the fraud; to the not-even-denied irreparable injury being done by SIPC and the Trustee to old, now penurious, terrified victims who are faced with clawbacks they cannot pay and who likewise cannot afford lawyers; to the fact that now the Trustee has already recovered nearly ten billion dollars though he and SIPC previously misled the media, Congress, the victims and this Court by saying (as recently as December 14th) that only about 2 or 2.5 billion dollars have been recovered, while not even mentioning the giant sums he was, and obviously *is*, negotiating for (and in the Picower case, as announced on December 17th (only three days after December 14th) has now recovered); to the fact that the Trustee is now suing *culpable* parties for something north of $50 billion though he and SIPC previously told Congress, *as recently* as *September 7, 2010* -- and via their response to Congress told the victims, this Court and the media -- that the

Trustee expected to sue the culpable only for another two billion dollars; to the fact that, with numerous major lawsuits pending against huge, wealthy culpable parties, and more such suits obviously to be filed unless those parties fork over billions upon billions of dollars to the Trustee via settlement agreements, the Trustee and SIPC will suffer not at all from a stay pending the Second Circuit's decision; to the fact that the Trustee is demanding that innocent victims gave *him* the tax refunds they may obtain from the U.S. Government because the Government intended to ease the victims' burden via a specifically provided safe harbor provision and other tax provisions, and the Trustee is thereby attempting to nullify the USG's intention and action and to arrogate to himself the money the USG intended for victims; to the fact that he is demanding that victims pay him interest from the date of each withdrawal, which in some cases could conceivably double the amount victims owe him; to the fact that the money he is seeking from the innocent who were unable to protect themselves appears highly likely to go to wealthy hedge funds and banks that were able to conduct due diligence but did not do so; and so on *ad nauseum* if not *ad infinitum*.

Failing to address the major points favoring a stay and approval of notices of appeal, the Trustee has focused in his prior papers, and focuses in his latest one, only on procedural arguments. Velvel has responded to those procedural arguments in his replies to the Trustee on the motion for partial stay and the now-withdrawn motion for interlocutory appeal. Because of the withdrawal of the motion for leave to appeal, however, he will quote relevant portions of his reply brief regarding leave to appeal:

> . . . the Trustee also spends considerable time claiming that there can be no appeal here because Velvel's Notice of Appeal was filed on December 1st, whereas the time for filing ran out on November 24th, fourteen days after

4

the Orders were signed on November 10th. This argument has no force, however, due to the Trustee's own actions.

The Trustee has extensively and repeatedly propounded, in not one but two briefs *so far*, that the Procedural Orders of November 10th did not apply in Velvel's case because the Trustee (unexpectedly) did not file a Notice of Applicability in Velvel's case even though that case is prototypical of the cases the orders were designed for -- cases against concededly innocent investors who were victimized by Madoff. Because the Procedural Orders of November 10th did not apply in Velvel's case, he could not appeal any of the orders. That would seem to go without saying, since one has never heard of a litigant being able to appeal an order that does not apply to him, and such is, indeed, the Trustee's exact argument. The Procedural Rules did not apply to Velvel's case until December 17th, when Velvel himself filed a Notice of Applicability. Thereafter, Velvel filed a new Notice of Appeal on December 20th, only three days after the Procedural Orders became applicable to him. The December 20th Notice of Appeal is the one that governs because it is the only one filed after the Procedural Rules became applicable to Velvel's case, and, being filed within three days of such applicability, is well within any possible time limit (not to mention that two of the three days were a Saturday and a Sunday).

Even were the question to revolve around the fact that the original Notice of Appeal, filed before the Procedures were applicable to Velvel, was filed on December 1st (a point the issues does *not* revolve around now, as discussed), still the Notice of Appeal would suffice in the circumstances of this case even though it was filed seven days after November 24th. It is long established (though not mentioned by the Trustee) that an extension to file a notice of appeal can be granted if there was what is called "excusable neglect." Here, under the case law of both the Supreme Court and the Second Circuit, there *was* excusable neglect for not filing the initial Notice of Appeal until December 1st. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993); *Bolarinwa v. Williams*, 593 F.3d 226 (2nd Cir. 2010); *Williams v. KFC National Management Co.*, 391 F.3d 411 (2nd Cir. 2004); *U.S. v. Hooper*, 9 F.3d 257 (2nd Cir. 1993); *U.S. v. Desdune*, 104 F.3d 354 (2nd Cir. 1996). The delay of seven days beyond November 24th caused no conceivable prejudice to the Trustee, and the Trustee claims none, nor did the seven day delay have any impact in the administration of justice in this Court, and again the Trustee claims none. For as with Velvel's own case, the vast preponderance of cases to which the Procedures are applicable, perhaps even all such cases, were not even filed by the Trustee until the period December 1 – December 11. Little wonder that the Trustee does not even claim prejudice to him or harm to the administration of justice

5

from the fact that the initial Notice of Appeal was filed on December 1st rather than on or before November 24th.

Nor was there any *intent* to delay beyond the time when the period for filing the Notice of Appeal ran out. Velvel was under the mistaken impression that the period for filing was 30 days long, as with the filing of notices of appeal from District Courts to Courts of Appeal. He thought -- mistakenly but innocently and in good faith -- that he had just over another week after December 1st to file a Notice of Appeal.[1] And, when apprised of the fact that the Procedures unexpectedly had not been made applicable in his case by the Trustee, Velvel immediately filed a Notice of Applicability and immediately filed a new Notice of Appeal, which is the only Notice of Appeal which counts, as discussed above.

Finally, the delay in filing was short: the initial Notice of Appeal was filed only seven days after November 24th.

For these reasons, even if the filing of the initial Notice of Appeal were the question here (which it is not), an extension of the time to file until December 1, 2010 should be granted under the case law of the Supreme Court and the Second Circuit. But in fact, of course, the filing of December 1st was mooted by the Trustee's unexpected failure to file a Notice of Applicability in Velvel's case, and was superseded by Velvel's Notice of Appeal filed on December 20th, only a week after he learned what the Trustee had done and only three days after Velvel himself filed a Notice of Applicability (with two of the three days being Saturday and Sunday).

---

[1] Conceivably Velvel's mistaken impression resulted from the fact that he has done a fair amount of work in Federal appellate tribunals, work in which one has 30 days to file a notice of appeal, and here the District Court is *acting as an appellate court.* Relatedly, Velvel spent considerable time ruminating about the desirability of an appeal. Whatever the reason for Velvel's misimpression which led to delay, one notes that Federal courts often explicitly say that one has thirty days to appeal a lower Federal court decision, Thus, the Second Circuit said, in *Bolarinwa v. Taylor*, 593 F.3d 226, 230 (2nd Cir. 2010): "In general, a litigant must file a notice of appeal within thirty days of entry of judgment. Fed. R.App. P. 4(a)(1)(A). The district court may grant an extension of the filing deadline if one is requested within thirty days of the expiration of the filing period and so long as the movant "shows excusable neglect or good cause. *Id.* at 4(a)(5)(A)." The Circuit also said, in *Williams v. KFC National Management Co.*, 391 F.3d 411, 414 (2nd Cir. 2004): . "Judgment was entered on January 31, 2008, but Williams failed to appeal within the 30 days allowed by the Federal Rules of Appellate Procedure. *See* Fed. R.App. P. 4(a)(1)(A).

The only new point which might be added to the above is that the Notice of

Applicability of the November 10th procedures that was filed by Velvel on December

17th, shortly after he learned of the Trustee's low litigation tactic of not filing such a Notice of Applicability in his case, specifically said that Velvel is filing the Notice "without waiver by Velvel of any right to object to any procedure or any action under any procedures" contained in the November 10th order.

In conclusion, it is once again clear that, for whatever reasons move them -- perhaps because they know, as does the Court, that they are going to face vast and determined, years-long opposition from the major Wall Street law firms hired by the large banks and hedge funds whom they have or will sue -- the Trustee and his counsel will stickle at nothing to try to euchre money out of innocent small investors who cannot afford the scorched earth, leave-no-stone-unturned opposition that the Trustee will face from the hedge funds and banks. The money euchred from the small will likely go extensively to the huge and wealthy -- which almost surely is one reason the Trustee, while claiming purported legitimate reasons, refuses to say who will get the money or even to say, without naming names, what are the characteristics of those who will receive the money euchred from the weak, except that it has been admitted that they are generally the parties with the largest claims. In seeking to accomplish this malign purpose of obtaining money from the small and weak for, most likely, the large and wealthy, the Trustee seeks to take advantage of, and use for his own purposes, the Court's expressed desire to see matters move as quickly as possible and to see money be distributed as quickly as possible. However, the accomplishment of the Trustee's desire requires the disregard of crucial legal rights, particularly the legal rights of small innocent people who cannot defend themselves in the way that the (culpable) huge banks and hedge funds will

7

defend themselves. The disregard of the rights of small innocent people should not be countenanced by a federal court. Their rights should be *protected* by a federal tribunal.

Respectfully submitted,

*/s/ Lawrence R. Velvel*

Lawrence R. Velvel, Esq.
Massachusetts School of Law
500 Federal Street
Andover, MA 01810
Tel: (978) 681-0800
Fax: (978) 681-6330
Email: Velvel@mslaw.edu

Dated: January 7, 2011

R:\My Files\Madoff\ReplyofLRV2TrusteeOppos2Appeal.2ndVers.doc