JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
 for Dispute Resolution
CHRISTOPHER H. LAROSA
Associate General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
E-Mail: jwang@sipc.org
kbell@sipc.org
clarosa@sipc.org

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) ) ) | SIPA LIQUIDATION |
| Plaintiff, | ) ) | Case No. 08-01789 (BRL) |
| v. | ) ) | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | ) ) ) | Appeal No. _____ |
| Defendant | ) ) | |
| In re: | ) ) | |
| BERNARD L. MADOFF, | ) ) | |
| Debtor | ) ) | |

## RESPONSE OF THE
## SECURITIES INVESTOR PROTECTION CORPORATION IN OPPOSITION TO
## MOTION BY DIANE AND ROGER PESKIN FOR LEAVE TO APPEAL

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........................................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

COUNTERSTATEMENT OF THE ISSUE ........................................................1

STATEMENT OF FACTS ..................................................................................2

    The Peskins .....................................................................................................2

    The Activities of the Trustee and Counsel....................................................3

    The Applications for Compensation .............................................................5

    The Peskins' Litigation History ....................................................................7

ARGUMENT .......................................................................................................9

    THE MOVANTS HAVE SHOWN NO GROUNDS
    FOR AN IMMEDIATE APPEAL ................................................................9

        1.  Applicable Law....................................................................................9

        2.  The Prerequisites for an Immediate Appeal Are Not Met .........................12

            A.  Movants Have Failed to Identify a "Controlling Question
            of Law"  As to Which There Is A "Substantial Ground
            For Difference of Opinion"................................................................13

            B. Granting Movants Leave To Appeal Would Not Materially
            Advance The Termination Of Any Litigation Connected With
            the BMLIS Liquidation.......................................................................20

CONCLUSION    .................................................................................................21

i

# TABLE OF AUTHORITIES

**CASES:**                                                                                                                          **PAGE**

*In re Adorn Glass & Venetian Blind Corp.,* No. 05 civ 1890 (RJW), 2005 WL 3481325
    (S.D.N.Y. Dec. 16, 2005) ............................................................................... 12

*In re AroChem Corp.,* 176 F.3d 610 (2d Cir. 1999) ............................................... 10

*In re Calpine Corp.,* 356 B.R. 585 (S.D.N.Y. 2007) .......................................... 10, 11

*In re Cross Media Marketing Corp.,* Nos. 03-13901 (BRL), 07 cv 878 (GBD)
    2007 WL 2743577 (S.D.N.Y. 2007) ........................................... 11, 13, 14, 16

*In re Enron Corp.,* No. 01-16034, 2006 WL 2548592
    (S.D.N.Y. Sept. 5, 2006) ...................................................................10-12, 14, 16

*In re Executive Securities Corp.,* 702 F.2d 406 (2d Cir.), cert. den., 464 U.S. 818 (1983) ...... 19

*In re Flor,* 79 F.3d 281 (2d Cir. 1996)........................................................... 10, 12

*Freeman v. NBC, Inc.,* No. 85 civ 3302, 1993 WL 524858
    (S.D.N.Y. Dec. 15, 1993) ................................................................ 11, 14, 16

*In re Kassover,* 343 F.3d 91 (2nd Cir. 2003) ......................................................... 9

*In re Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave,*
    921 F.2d 21 (2d. Cir. 1990)........................................................................... 10

*Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d, 863 (2d Cir. 1996).......................... 12

*In re Perry H. Koplik & Sons, Inc.,* 377 B.R. 69 (S.D.N.Y. 2007).........................10-12, 14, 16

*In re Marketxt Holdings Corp.,* No. 04-br-12078, 2009 WL 1286130
    (S.D.N.Y. May 5, 2009)................................................................................ 11

*Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.,*
    358 F.Supp. 2d 347 (S.D.N.Y 2005).............................................................. 12

*In re Worldcom, Inc.,* No. 08-cv-10354, 2009 WL 2215296
    (S.D.N.Y. July 23, 2009) .........................................................................9-11

*In re Worldcom, Inc.,* Nos. 02-13533, 04-04338, 2006 WL 3592954
    (S.D.N.Y. Dec. 7, 2006)......................................................................... 10, 11

# TABLE OF AUTHORITIES

**STATUTES AND RULES:**                                                                                                              **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78aaa ........................................................................................................................................ 1
78eee(d) .................................................................................................................................... 2
78eee(b)(2)(B)(i) ..................................................................................................................... 7
78eee(b)(4) ............................................................................................................................... 3
78eee(b)(5)(C) .............................................................................................................. 1, 14, 18
78fff-3(a) ................................................................................................................................. 3
78*lll*(4) ..................................................................................................................................... 3

28 U.S.C. §

158(a) ....................................................................................................................................... 9
158(a)(3) ................................................................................................................................... 9
1292(b) .............................................................................................................................. 10, 11

Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §

502(d) ..................................................................................................................................... 16

Federal Rules of Bankruptcy Procedure

¶8001(b) ................................................................................................................................. 10
¶8003 ...................................................................................................................................... 10


**PUBLICATIONS AND TREATISES:**

10 *Collier on Bankruptcy* (16th ed. 2010)

¶8003.03 ................................................................................................................................. 10

## PRELIMINARY STATEMENT

The Securities Investor Protection Corporation ("SIPC") submits this response in opposition to the motion of Diane and Roger Peskin ("Peskins" or "Movants") for leave to appeal from an order entered by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") on December 14, 2010 ("Motion") awarding compensation to the trustee ("Trustee") and counsel ("Counsel") in the liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA").[1]

## COUNTERSTATEMENT OF THE ISSUE

Under SIPA §78eee(b)(5)(C), SIPC must file a recommendation with respect to any application for allowance of compensation in a SIPA liquidation proceeding. SIPA §78eee(b)(5)(C) also provides that in any case in which the allowances are to be paid by SIPC without reasonable expectation of recoupment and the amounts sought and recommended for payment are the same, the "court shall award the amounts recommended by SIPC." In all other cases, the court "shall place considerable reliance on the recommendation of SIPC."

In the BLMIS liquidation proceeding, the Trustee and Counsel filed their fifth applications for interim compensation and reimbursement of expenses, and SIPC recommended that their applications be allowed. The fees and costs would be paid out of funds provided by SIPC, with no expectation of recoupment. The Bankruptcy Court granted the applications and in doing so, overruled an objection filed by Movants. In response, Movants filed a Notice of

Appeal from the Bankruptcy Court's interlocutory order, and also filed a motion for leave to appeal ("Motion"), arguing that compensation should be denied because the Bankruptcy Court purportedly failed to properly review the applications in question and because, according to Movants, the Trustee and Counsel are not disinterested.  Against this background, the issue presented is:

> Where
>
>> (1)  the order of the Bankruptcy Court is firmly grounded in the law and was entered after appropriate review of the record by the Bankruptcy Court;
>> (2)  the questions raised by Movants in seeking immediate review of the Order are of fact and not law; and
>> (3) instead of materially advancing the termination of any litigation, granting Movants' motion will disrupt the administration of a liquidation proceeding and contravene the clear mandate of a statute,
>
> whether Movants have met their burden of showing exceptional circumstances warranting an immediate appeal of the lower Court's Order.
>
> SIPC respectfully submits that the answer is "no."

## STATEMENT OF FACTS

### The Peskins

The Peskins are former customers of BLMIS who filed claims in the liquidation proceeding of BLMIS.  The Trustee for the liquidation of the firm, Irving H. Picard, Esquire, allowed the

---

[1]  For convenience, references hereinafter to provisions of SIPA shall omit "15 U.S.C."

Under SIPA §78eee(d), SIPC is "a party in interest as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters...."

claim of the Peskins of $2,310,191.25.[2]  In partial satisfaction of their claim, the Trustee paid a total of $500,000 to the Peskins, with funds advanced by SIPC.  The remainder of the Peskins' claim will be satisfied out of any customer property that the Trustee collects.

## The Activities of the Trustee and Counsel

BLMIS was placed in SIPA liquidation, and the Trustee, and his Counsel, the law firm of Baker & Hostetler LLP, were appointed by order of this Court issued on December 15, 2008.[3] Through that order, and pursuant to SIPA section 78eee(b)(4), the Court removed the proceeding to the Bankruptcy Court.

Since the date of their appointment, the Trustee and Counsel have taken numerous actions in connection with the BLMIS liquidation, including, e.g., taking possession of the Debtor and its assets; auctioning off the Debtor's market making business; collecting over $10 billion of assets; filing multiple avoidance actions seeking to recover billions of dollars from various parties, including numerous BLMIS investors who withdrew large sums from their accounts prior to the commencement of the liquidation proceeding; engaging several foreign law firms to aid and represent the Trustee in overseas asset recovery efforts and investigations.  In addition, since the commencement of the proceeding, the Trustee and Counsel, as required by SIPA, have

---

[2]       The claims of customers are satisfied with customer property, which generally consists of cash and securities received, acquired or held by the broker or dealer for the accounts of customers.  SIPA §78lll(4).  To the extent customer property is insufficient to satisfy a customer's claim in full, SIPC advances funds for the satisfaction of customer claims.  SIPA §78fff-3(a).  The limit of protection is $500,000 per customer.  Id.  The Peskins had one account, although they have claimed that they are entitled to SIPC protection on a second claim, which was combined with their original joint claim by the Trustee in his determination of their claims.

engaged in an intensive investigation of the activities of the Debtor which, among other things, has required close coordination and cooperation with SIPC and a number of regulatory and law enforcement authorities, as well as with the joint liquidators for BLMIS's British operations.[4]

Finally, a significant part of the Trustee's and Counsel's activity has centered on claims. In this regard, the Trustee obtained, though Counsel, an Order ("Claims Procedures Order") from the Bankruptcy Court which authorized the Trustee, consistent with SIPA, to notify customers and creditors, by publication and mailing, of the commencement of the liquidation proceeding and to mail them claim forms. (Dkt. No. 12). Through the Order, the Bankruptcy Court also established a procedure for the filing and determination of claims, and for judicial review of claim determinations. Under SIPA and the Claims Procedures Order, claims are filed with the Trustee, who reviews and determines them. If a claimant disagrees with the Trustee's decision, he may seek review by the Bankruptcy Court by filing an objection. Once an objection is filed, the Trustee requests a hearing and notifies the claimant of the date and time thereof.

In BLMIS, 16,394 "customer" claims were filed with the Trustee, and through September 30, 2010, the last day of the period covered by the fee applications, the Trustee had determined 13,403 of them, of which 2,232 were allowed, and committed to paying roughly $728 million in funds advanced to him by SIPC. Although the aggregate amount of these allowed claims currently totals over $5.6 billion, the Trustee has been careful to explain that he expects that the

_____

[3]    See Securities and Exchange Commission and Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Dkt. No. 1:08-cv-10791-LLS (S.D.N.Y.), Dkt. No. 4 ("12/15/08 District Court Order").

[4]    More detailed information concerning the Trustee's activities are contained in his Interim Reports filed in the liquidation proceeding (Dkt. Nos. 314, 1011, 2207, and 3083).

final aggregate amount will be significantly larger than that figure.[5]

**The Applications for Compensation**

On July 10, 2009, the Trustee and Counsel filed in the liquidation proceeding, their first applications for allowance of interim compensation and reimbursement of expenses for the period from December 15, 2008 through April 30, 2009. Movants objected to the applications on essentially the same grounds underlying their current motion. SIPC submitted its recommendation in support of the applications. Following a hearing on the applications on August 6, 2009, the Bankruptcy Court rejected Movants' objections and granted the applications, entering the interim awards sought by the Trustee and Counsel. Movants then sought leave to appeal those awards on an interlocutory basis. This District Court denied that motion in an order entered on January 15, 2010 (Dkt. No. 1764).

On November 23, 2009, the Trustee and Counsel filed their second applications for compensation in the liquidation proceeding, seeking the allowance of interim compensation and the reimbursement of expenses for the period from May 1, 2009 through and including September 30, 2009. Again, Movants objected to the applications on the same grounds underlying their current motion; SIPC supported the applications; and, again, following a hearing on December 17, 2009, the Bankruptcy Court rejected Movants' objections and granted the applications. Movants again filed a motion for leave to appeal on an interlocutory basis the order entering those awards. That motion remains pending before this Court.

On April 9, 2010, the Trustee and Counsel filed their third applications for compensation in

---

[5] See Fifth Application of Trustee and Baker & Hostetler LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From June 1, 2010 Through September 30, 2010 (Dkt. No. 3207), at pp. 11-12; Transcript of Hearing ("Tr.") at 14-15.

the liquidation proceeding, seeking the allowance of interim compensation and reimbursement of expenses for the period from October 1, 2009 through and including January 31, 2010. Predictably, Movants objected to the applications on the same grounds underlying their earlier objections and motions for leave to appeal. SIPC filed a recommendation in support. During a hearing on May 5, 2010, the Bankruptcy Court rejected Movants' objections, and, the following day, entered an order granting the applications. Movants sought leave to take an interlocutory appeal of that order, which this Court denied in an order entered on August 9, 2010.

On August 20, 2010, the Trustee and Counsel filed their fourth applications for compensation in the liquidation proceeding, seeking the allowance of interim compensation and the reimbursement of expenses for the period from February 1, 2010 through May 31, 2010. Once again, Movants objected to those applications, again on the same grounds asserted in their prior objections and motions for leave to appeal. (See Dkt. No. 2943.) After SIPC filed a recommendation in support of the applications of the Trustee and Counsel, and following a hearing on the same, the Bankruptcy Court entered an order granting the applications on September 14, 2010. (Dkt. No. 2981.) Contrary to their prior practice, Movants did not seek leave to take an interlocutory appeal of that order.

On November 19, 2010, the Trustee and Counsel filed their fifth applications for compensation in the liquidation proceeding, seeking the allowance of interim compensation and the reimbursement of expenses for the period from June 1, 2010 through September 30, 2010. Movants again objected to these applications, on this occasion recycling an old charge that the Trustee and Counsel are not disinterested, and alleging that they instead are dominated and controlled by SIPC, and also alleging that the Trustee and Counsel had not rendered their services efficiently and that the Bankruptcy Court was not bound by SIPC's recommendation.

6

(See Dkt. No. 3308.)    SIPC again recommended that the Bankruptcy Court approve the applications.  Following a hearing on the applications on December 14, 2010, the Bankruptcy Court entered an order granting the applications on the same date.  (Dkt. No. 3474.)    On December 28, 2010, Movants filed a motion for leave to take an interlocutory appeal of that order, along with a memorandum of law in support and a notice of appeal.  (See Dkt. Nos. 3593-3595.)

### The Peskins' Litigation History

Movants and their counsel have a long history of initiating litigation in the BLMIS liquidation.  Prior to filing the instant motion, Movants had 1) objected to the Trustee's determination of their claims for "customer" relief in the liquidation proceeding and sought review thereof by the Bankruptcy Court; 2) objected to, and sought leave to appeal the Bankruptcy Court's Orders granting the first, second, and third applications of the Trustee and Counsel for interim compensation; 3) objected to the fourth applications of the Trustee and Counsel for interim compensation; and 4) sued the Trustee in Bankruptcy Court.[6]  Through each of these procedural vehicles, Movants raised the same challenge to the correctness of the

---

[6]    See Diane and Roger Peskin and Maureen Ebel v. Irving H. Picard, Trustee, Adv. Pro. No. 09-1272(BRL) (Bankr. SDNY) ("Declaratory Judgment Action").  The lawsuit was brought in violation of the stay of such suits against the Trustee under SIPA and this Court's Order placing BLMIS in liquidation.  See SIPA §78eee(b)(2)(B)(i) and the December 15, 2008, Order of this Court at 3, ¶V, and was dismissed by the Bankruptcy Court.  In re Bernard L. Madoff Investment Securities LLC, 413 B. R. 137, 140 (Bankr. S.D.N.Y. 2009).  Plaintiffs' counsel filed an appeal to this Court, which upheld the dismissal in an order entered on October 26, 2010.  See Diane Peskin, et al. v. Irving H. Picard, Trustee, No. 09-CV-8730 (JGK), 2010 WL 4261392 (S.D.N.Y.).  Plaintiffs' counsel has now appealed that dismissal to the United States Court of Appeals for the Second Circuit, where it remains pending.  See Diane Peskin, et al. v. Irving H. Picard, Dkt. No. 10-4789 (2d Cir.)

7

methodology used by the Trustee in deciding their "customer" claims.[7]

Movants' counsel, Attorney Helen Davis Chaitman, has been even more litigious. In addition to the above litigation, Becker & Poliakoff, with Ms. Chaitman as lead counsel, also represented three named plaintiffs seeking to act on behalf of a purported class in a suit filed initially in federal district court in New Jersey. See Lissa Canavan, et al. v. Stephen P. Harbeck, et al., Civil No. 2:10-cv-00954-FSH-PS (D.N.J.) ("New Jersey Action"). That suit was later transferred to the Bankruptcy Court over the plaintiffs' opposition, and then voluntarily dismissed by them in that Court. See New Jersey Action, Dkt. No. 35; Lissa Canavan, et al. v. Stephen P. Harbeck, et al., Adv. No. 10-3476 (Bankr. S.D.N.Y.), Dkt. No. 15. Although nominally against past and present SIPC officials for alleged bad faith, the suit in fact challenged the correctness of the Trustee's claims determination methodology in the BLMIS liquidation proceeding, and represented a frivolous attempt at forum shopping, with the object of securing a decision in New Jersey contrary to the decision and order entered by the Bankruptcy Court in New York.

It is worth noting that, in addition to pursuing a claim in the BLMIS liquidation proceeding in which she herself has a personal stake, Ms. Chaitman represents investors in that proceeding with wholly irreconcilable financial interests in the position she espouses. See In re Bernard L. Madoff Investment Securities LLC, 413 B.R. 137, 140, n.3 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peskin v. Picard, ___ B.R. ___, 2010 WL 4261392 (S.D.N.Y. October 26,

---

[7]    The Trustee is allowing such claims for the net amount deposited by the customer with the brokerage (that is, the customer's "net equity" under SIPA). Movants contend that the Trustee should instead allow such claims on the basis of wholly fictitious cash and securities positions reported to them on the final fictitious account statements provided to them by BLMIS ("Fictitious Statement Approach").

2010).  To a mathematical certainty, some of Ms. Chaitman's clients will receive less money, while other of her clients will receive more money, if she prevails in her  Fictitious Statement Approach in the BLMIS liquidation proceeding.[8]

## ARGUMENT

## THE MOVANTS HAVE SHOWN
## NO GROUNDS FOR AN IMMEDIATE APPEAL

### 1.  Applicable Law

The circumstances under which an interlocutory bankruptcy court order may be appealed are set forth in 28 U.S.C. § 158(a)(3), which provides that an immediate appeal may be taken only with leave of the federal district court for the district in which the bankruptcy court that issued the order sits.[9]  Because neither Section 158(a) nor the Bankruptcy Code or Rules provide standards for evaluating a motion for leave to appeal, the decision whether to grant leave is committed to the discretion of the district court.  See, e.g., In re Kassover, 343 F.3d 91 (2d Cir. 2003); In re Worldcom, Inc., No. 08-cv-10354, 2009 WL 2215296, at * 3 (S.D.N.Y. July 23, 2009).  In exercising this discretion, most federal district courts, including this Court,

---

[8]  Ms. Chaitman and her firm represent two kinds of BLMIS investors: 1) those who have yet to recover the amounts they deposited with BLMIS (in terminology used in the BLMIS case, "Net Losers"); and 2) investors who withdrew more than they deposited and received fake profits that actually consisted of other investors' money ("Net Winners").  If the Fictitious Statement Approach is followed, then Net Winners, who would otherwise be owed nothing (having recovered all of their money from BLMIS while the firm was in business), would have a claim for any fake profits shown on their last account statements.  In the liquidation proceeding, they would share with Net Losers, pro rata, in customer property collected by the Trustee.  Thus, even though the firm is in liquidation, Net Winners would continue to be paid fake profits at the expense of Net Losers who have yet to be repaid the amounts they gave to BLMIS.  If the Trustee's claims determination methodology is followed, then only Net Losers would be repaid to the extent of any amounts they gave to BLMIS.

apply the standards applicable under 28 U.S.C. §1292(b), which governs appeals from interlocutory orders entered by the federal district courts.[10]  See, e.g., Worldcom, 2009 WL 2215296, at * 3; In re Calpine Corp., 356 B.R. 585, 592-93 (S.D.N.Y. 2007).  See also 10 Collier on Bankruptcy, ¶ 8003.03 (16th ed. 2010).

Under these standards, the party seeking leave to take an interlocutory appeal has the burden to demonstrate exceptional circumstances sufficient to "overcome the general aversion to piecemeal appeals" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  In re AroChem Corp., 176 F.3d 610, 619 (2d Cir. 1999); In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 73-74 (S.D.N.Y.  2007).  Interlocutory appeal is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation and is not intended as a general vehicle to provide early review.  See, e.g.,  In re Enron Corp., No. 01-16034, 2006 WL 2548592, at * 3 (S.D.N.Y.  Sept. 5, 2006).  In this regard, the Second Circuit has stressed that the power to grant interlocutory review should not be "liberally construed."  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave, 921 F.2d  21, 24-25 (2d Cir. 1990); In re

---

[9]    The procedure for seeking leave to appeal is set forth in Bankruptcy Rules 8001(b) and 8003.  See Fed. R. Bankr. P. 8001(b) and 8003.

[10] Section 1292(b) states, in pertinent part, that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

Worldcom, Inc., Nos. 02-13533, 04-04338, 2006 WL 3592954, at * 2 (S.D.N.Y. Dec. 7, 2006).

Consistent with these limitations, interlocutory appeal is permitted only where the order appealed (1) involves a controlling question of law, (2) over which there is a substantial ground for difference of opinion, and where (3) an immediate appeal would materially advance the ultimate termination of the litigation.  See, e.g., Worldcom, 2009 WL 2215296, at * 3; Koplik, 377 B.R. at 73; Calpine, 356 B.R. at 593.   In regard to the first prong of this test, the "controlling question of law" must first and foremost be just that - a question of law.  See, e.g., Koplik, 377 B.R. at 73-74; Enron, 2006 WL 2548592, at * 4.   It cannot involve a question of fact, or even a question requiring the application of the appropriate law to the relevant facts. See In re Marketxt Holdings Corp., No. 04-br-12078, 2009 WL 1286130, at * 1 (S.D.N.Y. May 5, 2009) ("[W]here, as here, the question presented entails application of a well-accepted legal standard to complex factual predicates, no such controlling issue of law exists"); Koplik, 377 B.R. at 73-74; In re Cross Media Marketing Corp., Nos. 03-13901 (BRL), 07 cv 878 (GBD) 2007 WL 2743577, at * 2 (S.D.N.Y. 2007);  Enron, 2006 WL 2548592, at * 4.  Rather, it must be a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record," e.g., a question concerning the applicable legal standard.  Koplik, 377 B.R. at 74 (emphasis added, citation and quotation marks omitted); Enron, 2006 WL 2548592, at * 4; Freeman v. NBC, Inc., No. 85 civ 3302, 1993 WL 524858, at * 2 (S.D.N.Y. Dec. 15, 1993).

The second prong of the test is equally stringent.  A "substantial ground for a difference of opinion" concerning the propriety of a bankruptcy court's resolution of a question exists only if

---

28 U.S.C. § 1292(b).

11

there is "substantial doubt" that the court's order was correct.  See, e.g., Enron, 2006 WL 2548592, at * 4; In re Adorn Glass & Venetian Blind Corp., No. 05 civ 1890 (RJW), 2005 WL 3481325, at * 5 (S.D.N.Y. Dec. 16, 2005).  The fact that an issue is one of first impression in the circuit, that there is conflicting case law outside the circuit, or that there is strong disagreement among the parties is not, in and of itself, sufficient to create "substantial doubt."  See, e.g., Enron, 2006 WL 2548592, at * 4; Adorn Glass, 2005 WL 3481325,  at * 5.  To ascertain whether such doubt exists, the reviewing court must examine the strength of the opposition to the challenged ruling and determine whether those arguments create truly substantial doubt as to the propriety of that ruling.  See, e.g., Flor, 79 F.3d at 284; Enron, 2006 WL 2548592 at * 4.

As for the third prong of the test, an immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial."  See, e.g., Koplik, 377 B.R. at 74; Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth., 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005).  See also, Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996) (interlocutory appeal is "reserved for those cases where an immediate appeal may avoid protracted litigation").

## 2.  The Prerequisites for An Immediate Appeal Are Not Met

For the reasons stated below, Movants have failed to satisfy any of the prerequisites for leave to take an interlocutory appeal of the Bankruptcy Court's order granting the fee applications of the Trustee and Counsel.  The purported "questions" that they identify are hardly "controlling questions of law," and, in fact, are not questions of law at all.  All of the alleged "questions" require the Court to overlook substantial record evidence, and to sweep aside numerous inconvenient facts, concerning the aggregate amount of allowed claims projected by

12

the Trustee and the efficiency with which the Trustee performed his services.

Resolution of any of these putative "issues" would require extensive study of the record, although there is no "substantial ground" for contending that the Bankruptcy Court resolved these "questions" incorrectly. Further, granting Movants leave to appeal would not advance the ultimate termination of any litigation in the BLMIS liquidation in any way. Instead, it would reward Movants and their counsel for frivolously multiplying litigation in this liquidation proceeding, and would divert the Trustee's attention and resources from resolution of outstanding claims and pending asset recovery litigation, thus forcing the Trustee to incur additional unnecessary fees and costs and delaying the processes Movants allegedly hope to expedite.

**A.** **Movants Have Failed To Identify A "Controlling Question of Law" As To Which There Is A "Substantial Ground For Difference Of Opinion"**

Movants state that, if granted leave to appeal, they would raise the following issues: (1) whether the Bankruptcy Court correctly determined that there is no reasonable prospect that SIPC will recoup its advances its advances to the Trustee, thus requiring the Bankruptcy Court to adhere to SIPC's recommendation in support of the applications of the Trustee and Counsel for interim compensation; (2) whether the Bankruptcy Court correctly determined that the fees and expenses sought by the Trustee and Counsel were reasonable; and (3) whether the Trustee and Counsel may continue to serve in those capacities even though Movants contend that the Trustee and Counsel are not disinterested.

None of these "issues" is a question of law that this Court "could decide quickly and cleanly without having to study the record" (see, e.g., Cross Media Marketing, 2007 WL 2743577, at * 2) and there are no "substantial grounds" for a difference of opinion on these issues. The question whether SIPC has any reasonable prospect of recouping its advances to the Trustee, for

13

example, is intensely factual.  Where there is no such prospect, and SIPC recommends in favor

of an award of fees to a SIPA trustee and counsel in the amounts sought by them, SIPA requires

that the reviewing court enter that award.  See SIPA § 78eee(b)(5)(C).  According to Movants,

the Bankruptcy Court erred in finding that SIPC had no reasonable prospect of recouping its

advances to the Trustee because it ignored "uncontested evidence" to the contrary.  Movants

assert that the question of how SIPA's "no reasonable prospect" standard should be applied to

this purportedly "uncontested evidence" is a question of law, not fact.

But Movants are wrong about the nature of that question, wrong about the nature of the

evidence presented to the Bankruptcy Court, and wrong about the correctness of the Bankruptcy

Court's application of the governing standard.  As discussed above, questions involving the

application of a legal standard to a factual record are, at best, mixed questions of law and fact,

and, as such, are not reviewable on an interlocutory basis.  Koplik, 377 B.R. at 74; Cross Media

Marketing, 2007 WL 2743577 at * 2; Enron, 2006 WL 2548592 at * 4; Freeman, 1993 WL

524858 at * 2.  In a desperate attempt to avoid this rule, Movant suggest that somehow, even

though the Bankruptcy Court made clear that it applied the "no reasonable prospect" standard to

the facts presented to it, the court actually applied a lesser standard.  According to Movants, the

Bankruptcy Court's application of the wrong standard merits interlocutory review.

But the Bankruptcy Court unequivocally applied the correct standard, and so stated.  In this

regard, the Bankruptcy Court explained at the hearing on the subject fee applications that:

> The only out is that there should not be a reasonable expectation of recoupment, and
> that, essentially, is the horse that the objectors ride on to support their objection.
>
> I agree with Mr. Bell [SIPC's counsel] that at this juncture there is no reasonable
> expectation of recoupment.  That reasonable expectation, even if this Court were to
> give it some credence, is so highly speculative it's really rank speculation.  Especially
> where the litigation that's pending before this Court involves very well financed
> adversaries able to push back with the timing, conclusion and income results, all of

14

which are not susceptible to any clear estimation.

So I cannot make that leap that one would say on a very rosy estimate, that there is a reasonable expectation that SIPC will be recouped for the amount of fees that are being laid out.

Again, the emphasis is that these fees, notwithstanding the objection, are not coming from any of the victims, and they're not coming from the estate…

(Tr. at 31-32.)

Moreover, the Bankruptcy Court correctly applied the "no reasonable prospect" standard. The "uncontested evidence" upon which Movants rely is only a fraction of the evidence and other information presented, or otherwise available, to the Bankruptcy Court. According to Movants, SIPC is likely to recover its advances to the Trustee because the "customer" claims allowed by the Trustee total only $5.6 billion, while the Trustee's recoveries now exceed $10 billion, with additional asset recovery suits pending.

But Movants ignore the Trustee's statements, made at the hearing on the subject fee applications, that the aggregate amount of allowed claims could increase dramatically depending upon the disposition of the Trustee's pending avoidance suits against BLMIS investors who withdrew cash and other property from their accounts prior to the commencement of the liquidation proceeding. In this regard, the Trustee cited to Section 502(d) of the Bankruptcy Code – which requires the disallowance of any entity from whom property is recoverable under the avoidance provisions of the Bankruptcy Code – and explained that, as he recovers on his suits against various BLMIS investors who withdrew cash and/or other property from their accounts at BLMIS, he also will have to allow their "customer" claims in the liquidation proceeding. (See Tr. at 15-16.) Counsel for SIPC also emphasized this point at the hearing, pointing out that Movants attached to their objection to the subject fee applications a letter from SIPC's President estimating the potential aggregate amount for allowed claims at

15

$17.3 billion.  (See Tr. at 25; Dkt. No. 3308, Ex. A at p. 5.)

Further, the Trustee suggested at the hearing on the subject applications that he could receive far less in avoidance recoveries than may ultimately be allowed in additional "customer" claims.  (See Tr. at 15-16.)  The Trustee has not yet formally determined certain claims filed by investors and feeder funds against whom the Trustee has filed avoidance suits and those against whom section 502(d) of the Bankruptcy Code applies, whose customer claims, if and when allowed, would be of significant amounts.  Thus, the aggregate amount of those claims does not form part of the approximately $5.6 billion in claims allowed to date.  In some cases, the allowable amount of these claims substantially exceeds the amounts sought by the Trustee through his avoidance actions, because, for example, their avoidance liability may be less than their claim amounts.[11]

In short, the record presented, or otherwise available, to the Bankruptcy Court was more than sufficient to support its decision that SIPC presently has no reasonable prospect of recouping its advances to the Trustee.  More important, any review of that decision by this Court would require the Court to review and evaluate the same evidence, and then come to an independent judgment concerning the propriety of the factual conclusions underlying the Bankruptcy Court's decision, precisely the kind of exercise that is forbidden on interlocutory review.  See Koplik, 377 B.R. at 74; Cross Media Marketing, 2007 WL 2743577, at * 2; Enron, 2006 WL 2548592, at * 4; Freeman, 1993 WL 524858, at * 2.

Remarkably, Movants want this Court to go even further, insisting that the Court review the substance of the subject fee applications.  According to Movants, the Court is permitted to engage in this review due to the "uncontested evidence that SIPC was approving the Trustee's unreasonable and inappropriate compensation requests."  But the evidence that Movants cite, including, for example, their calculation of the ratable value of the services rendered by the Trustee and Counsel on a weekly and daily basis, merely confirms that the Trustee and Counsel are engaged in the administration of an enormously complex, multifaceted liquidation proceeding – a fact that the Bankruptcy Court properly recognized and that is well illustrated by the more than forty substantial matters with respect to which the Trustee and Counsel provided significant services during the subject billing period.  (See Tr. at 31-33; Dkt. No. 3207, Ex. E.)

Moreover, Movants badly mischaracterize the evidence presented regarding the two specific matters about which they complain.  According to Movants, it is "uncontested" that the Trustee and Counsel spent 266 hours preparing a reply brief in connection with a matter related to the New Jersey Action.  But that is not what the Trustee and Counsel reported in their fee applications.  On the contrary, the Trustee and Counsel reported having expended the time in question partly in preparing a reply memorandum, but also in preparing for the related hearing, conducting legal research, drafting internal memoranda, engaging in meetings and discussions with one another and with other counsel, and in other, related activities.  (See Dkt. No. 3207 ¶¶

---

[11]    The Trustee's recent settlement of his potential avoidance action against Union Bancaire Privée ("UBP") and M-Invest Limited ("M-Invest"), a UBP affiliate, provides an excellent example.  Under the terms of the settlement, UBP is obligated to pay between $470,000,000 and $500,000,000 to the Trustee, after receipt of which the Trustee will allow M-Invest's customer claim in an amount between approximately $747,790,000 and $755,790,000. (See Dkt. No. 3302 at ¶ 15 at Ex. A.)

40, 119-122.)

In the same vein, Movants assert that the Trustee and Counsel report having spent 575 hours in preparing a reply in support of a motion to strike certain items from the defendants' designation of the record in an appeal from an injunction entered in <u>Irving H. Picard v. Adele Fox, et al.</u>, Adv. No. 10-3114 (Bankr. S.D.N.Y.) ("Injunction Action"), and in preparing for the August 3, 2010 hearing on that motion. Although the Trustee and Counsel did those things, their applications, and the Bankruptcy Court and appellate docket sheets pertaining to the Injunction Action, indicate that they also completed numerous other tasks related to these matters during the application period, including: (1) preparing the original motion to strike; (2) preparing a counter-designation of the record, and an amended counter-designation, with respect to the defendants' appeal from the subject injunction; (3) preparing a counter-designation of the record with respect to the defendants' appeal from the Bankruptcy Court's order granting the motion to strike; (4) conducting legal research; (5) drafting internal memoranda; (6) conducting internal meetings regarding litigation strategy; and (7) engaging in discussions with the defendants' counsel. (<u>See</u> Injunction Action, Dkt. Nos. 31, 32, 34, 45, 55; Dkt. No. 3207 ¶¶ 40, 115-18.)

As the foregoing makes clear, there is ample record evidence to support the Bankruptcy Court's fee award.[12] The important point, however, is that any review of the substance of that award would be intensely factual – requiring this Court to examine the entirety of evidence presented through the subject fee applications, the hearing on those applications, and otherwise

---

[12]   In any event, even if the Bankruptcy Court had not been bound by SIPC's recommendation, it was required to place "considerable reliance" on that recommendation in disposing of the subject fee applications. <u>See</u> SIPA § 78eee(b)(5)(C).

18

available in the Bankruptcy Court record, and then to perform precisely the same kind of analysis of that evidence already undertaken by the Bankruptcy Court.  Again, that is exactly the sort of exercise precluded on interlocutory appeal.  (See supra.)

Although not developed in any depth in their motion, Movants' final argument – that the Trustee and Counsel should not be awarded fees because they are not sufficiently disinterested – is a rehash of the same argument that this Court has now twice rejected.  According to Movants, their latest iteration of that argument is now supported by the "uncontested" evidence upon which they object to the substance of the subject fee applications.  But Movants' description of the record evidence is incomplete, inaccurate, and grossly self-serving, as shown in detail above.  Further, while SIPC and the Trustee and Counsel share common interests[13] - a nexus common to all SIPA liquidations and the express product of statutory design - the Trustee is an independent fiduciary, whose disinterestedness was established conclusively at an uncontested hearing held, on widely published notice to all BLMIS accountholders and others, including Movants, on February 4, 2009, in the liquidation proceeding.[14]  In fact, Movants' argument is another of the baseless conspiracy theories that they and their counsel have advanced throughout the course of the liquidation proceeding, and that was properly rejected by the Bankruptcy Court.

In any event, evaluating whether the substance of the fee applications filed by the Trustee and Counsel makes apparent some disqualifying conflict of interest on their part would require

---

[13]    SIPC and trustees appointed under SIPA "vindicate important public interests."  In re Executive Securities Corp., 702 F.2d 406, 410 (2d Cir.), cert. den., 464 U. S. 818 (1983).

[14]    See Order of Disinterestedness of Trustee and Counsel to Trustee, issued in the liquidation proceeding on February 4, 2009 (Dkt. No. 69).

this Court to review a large part of the record in the liquidation proceedings and the numerous related proceedings.  That exercise would require the Court to consider and resolve many issues of fact after an extensive study of those records – once again, exactly the kind of activity barred on interlocutory appeal.

**B.  <u>Granting Movants Leave To Appeal Would Not Materially Advance The Termination Of Any Litigation Connected With the BMLIS Liquidation</u>**

Finally, granting the Movants leave to appeal would not in any way advance the termination of any litigation connected with the BLMIS liquidation.  On the contrary, it would force the BLMIS estate to incur additional fees and costs to defend a frivolous action and would require the Trustee and Counsel to divert yet more time, attention, and resources from claims resolution and satisfaction, and asset collection.  Worse, removing the Trustee and Counsel, would contravene, with no foundation in law or fact, the express provisions of SIPA and the procedures thereunder, and would throw a highly complex liquidation into chaos, causing serious delay in claims resolution and satisfaction.  In short, granting the Movants' motion would impede, not materially advance, the termination of the BLMIS liquidation and connected litigation, including the Trustee's pursuit of assets for the benefit of <u>all</u> BLMIS customers, including Movants.

## **CONCLUSION**

For all of the aforementioned reasons, the Motion for Leave to Appeal should be denied.

Respectfully submitted,


   /s/Josephine Wang
JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 for Dispute Resolution

CHRISTOPHER H. LAROSA
Associate General Counsel

SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile: (202)371-6728
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: clarosa@sipc.org

Date:  January 11, 2011
Washington, D.C.

21

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on January 11, 2011, true and correct copies of the **RESPONSE OF THE SECURITIES INVESTOR PROTECTION CORPORATION IN OPPOSITION TO THE MOTION OF DIANE AND ROGER PESKIN FOR LEAVE TO APPEAL** were served, by electronic transmission to the email addresses designated for delivery as set forth on the attached Schedule A, and/or by placing true and correct copies thereof in sealed packages designated for regular prepaid U.S. Mail delivery to those parties whose names and addresses are set forth on the attached Schedule A.


                                            /s/Christopher H. LaRosa
                                           CHRISTOPHER H. LAROSA

22

## SCHEDULE A

Internal Revenue Service
District Director
290 Broadway
New York, New York 10008

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 21126
Philadelphia, PA  19114

U.S. Department of Justice, Tax Division
Box 55
Ben Franklin Station
Washington, DC 20044

**Chapter 7 Trustee**
Alan Nisselson, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019

**Baker and Hostetler**
David J. Sheehan – dsheehan@bakerlaw.com
Irving Picard – ipicard@bakerlaw.com

**Securities and Exchange Commission**
Alistaire Bambach – bambacha@sec.gov
Alexander Mircea Vasilescu – vasilescua@sec.gov
Terri Swanson – swansont@sec.gov
Preethi Krishnamurthy – krishnamurthyp@sec.gov

**United States Attorney for SDNY**
Lisa Baroni – lisa.baroni@usdoj.gov
Robert Yalen – robert.yalen@usdoj.gov

**Counsel to the JPL**
Eric L. Lewis – Eric.Lewis@baachrobinson.com

**Notices of Appearance**
Service via Electronic Notification through ECF Filing

**<u>Counsel to Claimants</u>**

Helen Davis Chaitman, Esq.
Becker & Poliakoff LLP
45 Broadway
New York, NY  10006
hchaitman@becker-poliakoff.com