**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA LIQUIDATION <br><br> Case No.  08-01789 (BRL) <br> (Substantively Consolidated) <br> Appeal No.: _____ |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**MEMORANDUM OF LAW OF IRVING H. PICARD, TRUSTEE, AND BAKER & HOSTETLER LLP IN OPPOSITION TO MOTION OF DIANE AND ROGER PESKIN AND CERTAIN OTHER CUSTOMERS FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3
    I.     Commencement Of The Action ..................................................................3
    II.    Order Regarding Disinterestedness Of Trustee And Counsel ................................4
    III.   Applications, Orders And Appeals Regarding Compensation Of Trustee
         And Counsel..................................................................................................4
    IV.   Objections to Fee Orders And Related Appeals ............................................6
         A.    First Interim Fee Order And Appeal ........................................................6
         B.    Second Interim Fee Order And Appeal ........................................................7
         C.    Third Interim Fee Order And Appeal..............................................................9
         D.    Fourth Interim Fee Order and Appeal........................................................10
         E.    Fifth Interim Fee Order And Appeal ........................................................11
    V.    Movants' And Counsel's Litigation History..........................................................14

ARGUMENT .........................................................................................................16
    I.     Applicable Statutory Framework ........................................................17
    II.    Movants Lack Standing To Appeal ........................................................18
    III.   Movants Have Not Met The Standard For Leave To Appeal An
         Interlocutory Order ..................................................................................19
         A.    Standards for Leave to Appeal from an Interlocutory Order....................20
         B.    Movants Cannot Meet The Standards For Leave To Appeal An
             Interlocutory Order ..................................................................................21

CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*German v. Fed. Home Loan Mortgage Corp.*,
    896 F. Supp 1385 (S.D.N.Y. 1995) .................................................................................. 21

*In re Ionosphere Clubs, Inc.*,
    179 B.R. 24 (S.D.N.Y. 1995) ........................................................................................... 20

*In re Johns-Manville Corp.*,
    340 B.R. 49 (S.D.N.Y. 2006) ........................................................................................... 18

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 n.2 (2d Cir. 1988) ...................................................................................... 18

*In re Neuman,* M-47(MEL),
    1990 U.S. Dist. LEXIS 5792, at *4-5 (S.D.N.Y. May 15, 1990). ........................................ 21

*North Fork Bank v. Abelson*,
    207 B.R. 382 (E.D.N.Y. 1997) ......................................................................................... 21

*In re O'Brien*,
    184 F.3d 140 (2d Cir. 1999) ............................................................................................ 18

*Oren v. Kass,* No. 04-CV-4297
    2005 U.S. Dist. LEXIS 25965, at *6 (E.D.N.Y. Nov. 1, 2005). ............................................ 18

*P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*,
    161 F. Supp.2d 355 (D.N.J. 2001) ................................................................................... 21

*In re Pan Am Corp.*,
    159 B.R. 396 (S.D.N.Y. 1993) .......................................................................................... 20

*Secs. Investor Prot. Corp. v. Bernard L. Madoff*
    *Inv. Secs. LLC*,
    No. M47, 2010 U.S. Dist. LEXIS 3037, at *2-3 (S.D.N.Y. Jan. 11, 2010). ........................... 24

*Secs. Investor Prot. Corp. v. Bernard L. Madoff*
    *Inv. Secs. LLC*,
    2010 U.S. Dist. LEXIS 81492, at *13-15 (S.D.N.Y. Aug. 6, 2010) ......................... 10, 23, 24

*Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
    424 B.R. 122 (Bankr. S.D.N.Y. 2010). .............................................................................. 15

*In re Victory Markets, Inc.*,
    195 B.R. 9 (N.D.N.Y. 1996) ............................................................................................. 18

## Statutes

11 U.S.C. § 327(a) .............................................................................................................. 4

11 U.S.C. § 330 .................................................................................................................... 4

11 U.S.C. § 331 .................................................................................................................... 4

15 U.S.C. § 78aaa *et seq.*, ................................................................................................... 1

    § 78eee(a)(3) ................................................................................................................ 3

    § 78eee(a)(4)(A) .......................................................................................................... 3

    § 78eee(b)(4) ............................................................................................................... 3

    § 78eee(b)(5) ........................................................................................................... 4, 15

    § 78eee(b)(5)(C) ........................................................................................................ 16

    § 78eee(b)(6) ............................................................................................................... 4

    § 78fff-2(c)(1) ........................................................................................................ 15, 16

    § 78fff-3(b)(2) ........................................................................................................... 17

28 U.S.C. §158(a) .............................................................................................................. 18

## Rules

Federal Rule of Bankruptcy Procedure 2014(a) ............................................................... 4

Federal Rules ofBankruptcy Procedure 2016(a)............................................................... 4

Local Bankruptcy Rule 2016-1 ........................................................................................ 4

Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act

("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the substantively consolidated estate of Bernard L.

Madoff (collectively, "Debtors"), and Baker & Hostetler LLP ("B&H"), counsel to the Trustee,

respectfully submit this memorandum of law in opposition to the motion and accompanying

pleadings (collectively, the "Motion") of Diane Peskin, Roger Peskin, and certain other

customers[2] (collectively, "Movants") for leave to appeal the *Order Approving Applications for*

*Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses*,

dated December 14, 2010 ("Fifth Interim Fee Order") of the United States Bankruptcy Court for

the Southern District of New York ("Bankruptcy Court"), to the extent the Fifth Interim Fee

Order granted the fifth application for interim compensation of the Trustee and B&H ("Fifth

Fee Application").[3]

## PRELIMINARY STATEMENT

The Trustee and his counsel have submitted applications to the Bankruptcy Court

seeking interim compensation ("Compensation Applications") five times during the pendency

of the BLMIS SIPA liquidation.  Movants have objected to, and the Bankruptcy Court has

granted, each of the Compensation Applications and overruled those objections.  The instant

Motion represents the *fourth* time in which Movants have sought leave to appeal the

Bankruptcy Court's orders granting the Compensation Applications of the Trustee and B&H.

The United States District Court for the Southern District of New York ("District Court") has

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

[2] A list identifying the Movants upon whose behalf the Motion is filed is annexed as <u>Exhibit A</u> to the Declaration of Helen Davis Chaitman in Support of Motion for Leave to Appeal ("Chaitman Decl."), dated December 28, 2010 and filed concurrently with the Motion.

previously issued orders denying two of the Movants' prior three motions for leave to appeal, and the remaining motion is fully briefed and submitted before the Honorable Deborah A. Batts.

In their current Motion, Movants raise issues similar to those in their prior motions for leave to appeal and which have been rejected by two District Court opinions. Adding a new twist to the current Motion, Movants now also argue that the Bankruptcy Court erred in approving the Fifth Fee Applications by failing to scrutinize the reasonableness of the requests for compensation. This argument has no basis in law or fact, and is flatly contradicted by the record. Their argument, at best, is premature.

The provision on which they base their argument is section 78eee(b)(5)(C) of SIPA, which provides that the "court shall award the amounts recommended by SIPC" where (i) SIPC has no reasonable expectation of recouping the reasonable compensation for services rendered and reimbursement of expenses incurred by a trustee and his counsel (referred to as "allowances"), and (ii) the amounts sought by the Trustee and counsel and recommended for payment by SIPC are the same. In all other circumstances, the court "shall place considerable reliance on the recommendation of SIPC" in evaluating the fee requests.

The Bankruptcy Court found that that SIPC had no reasonable expectation of recouping its administrative expenses at this time. As such, the Bankruptcy Court approved the fee requests pursuant to the recommendation of SIPC which was binding on the Bankruptcy Court under section 78eee(b)(5)(C) of SIPA. Movants allege, however, that contrary to the findings of the Bankruptcy Court and the representations of the Trustee and SIPC, SIPC does in fact have a reasonable expectation of recoupment given the significant amounts the Trustee has recovered on behalf of the BLMIS estate. On that basis, Movants assert that the Bankruptcy

---

[3] A copy of the Fifth Interim Fee Order is annexed as Exhibit D to the Chaitman Declaration.

Court was required to consider the reasonableness of the fee requests but failed to do so.

Movants' argument that the Bankruptcy Court erred by applying an incorrect standard of review to the fee requests hinges entirely on their unsupported and facially speculative presumption—what the Bankruptcy Court characterized as "rank speculation"—that SIPC has a reasonable expectation of recoupment. Regardless, whether SIPC has at this point a reasonable expectation of recoupment is an inherently factual issue, rendering it inappropriate for an interlocutory appeal. Moreover, even if Movants were correct that the Bankruptcy Court was required to review the reasonableness of the fees requested, the Bankruptcy Court did so and approved the fee requests in any event. The other arguments raised by Movants are duplicative of those that have been previously rejected. Thus, the Motion is nothing but yet another frivolous filing by Movants and their counsel and it should be rejected by this Court.

## STATEMENT OF FACTS

### I.   Commencement Of The Action

On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of SIPC. Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part: (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; (b) appointed B&H as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (c) removed the case to the Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA.

On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## II. Order Regarding Disinterestedness Of Trustee And Counsel

On January 2, 2009, the Trustee and B&H filed with the Bankruptcy Court declarations of disinterestedness (*BLMIS*, ECF No. 24).[4] On February 4, 2009, after notice and a hearing, the Bankruptcy Court entered an Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (*BLMIS*, ECF No. 69), finding that the Trustee and B&H were disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 2014(a) (the "Bankruptcy Rules"), and were therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

## III. Applications, Orders And Appeals Regarding Compensation Of Trustee And Counsel

On February 25, 2009, the Bankruptcy Court entered an order pursuant to section 78eee(b)(5) of SIPA, sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1, which established Procedures Governing Interim Monthly

---

[4] References to pleadings filed in the main adversary proceeding pending before the Bankruptcy Court, *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 08-1789 (Bankr. S.D.N.Y.) (BRL) will be denoted as "*BLMIS*, ECF No. ____."

- 4 -

Compensation of Trustee and Baker & Hostetler LLP (*BLMIS*, ECF No. 126) (the "Compensation Order"). The Compensation Order allows the Trustee to seek interim compensation for services performed by the Trustee and B&H and sets forth the governing procedures regarding the same. The Compensation Order was amended on December 17, 2009 (*BLMIS*, ECF No. 1078) (collectively, the "Compensation Order").

Pursuant to the Compensation Order, on July 10, 2009, the Trustee and his counsel filed their First Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, ECF Nos. 320 and 321, respectively) (the "First Interim Fee Applications"), which were approved by order dated August 6, 2009.

On November 24, 2009, the Trustee and his counsel filed the Second Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, ECF Nos. 998 and 1010, respectively) (the "Second Interim Fee Applications"), which were approved by order dated December 17, 2009 (the "Second Interim Fee Order").

On April 9, 2010, the Trustee and his counsel filed the Third Applications for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, ECF Nos. 2188 and 2189, respectively) (the "Third Interim Fee Applications"), which were approved by order dated May 6, 2010 (the "Third Interim Fee Order").

On August 20, 2010, the Trustee and his counsel filed the Fourth Application for Interim Professional Compensation For Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, ECF No. 2883) (the "Fourth

Interim Fee Application"), which was approved by order dated September 14, 2010 (the "Fourth Interim Fee Order").

On November 19, 2010, the Trustee and his counsel filed the Fifth Application for Interim Compensation for Services Rendered Reimbursement of Actual and Necessary Expenses Incurred with the Bankruptcy Court (*BLMIS*, ECF No. 3207) (the "Fifth Interim Fee Application"), which was approved by order dated December 14, 2010 (the "Fifth Interim Fee Order").

**IV.    Objections to Fee Orders And Related Appeals**

**A.    First Interim Fee Order And Appeal**

On August 3, 2009, Movants and Maureen Ebel[5] objected to the First Interim Fee Applications in the Bankruptcy Court, raising issues ancillary to the services and compensation of the Trustee and B&H (the "First Objection") (*BLMIS*, ECF No. 351).  The First Objection attempted to use prior arguments made by Movants about the "Net Equity Dispute," addressing the proper calculation of an investor's net equity claim in the BLMIS liquidation proceeding (discussed more fully *infra*), as a basis for alleging that the Trustee and B&H had a conflict of interest and should be disqualified from serving.  SIPC and the Trustee each filed a reply to the First Objection (*BLMIS*, ECF Nos. 357 and 358, respectively), and a hearing was held before the Bankruptcy Court on August 6, 2009 (the "First Interim Fee Hearing").

After consideration of the applications and responses, the Bankruptcy Court stated that it found "no merit to the objections."  *See* Transcript of Hearing on August 6, 2009 ("First Interim Fee Hearing Transcript"), at 34.[6]  The Bankruptcy Court found that it had already held a

---

[5] Ms. Ebel participated in the first four Objections to the Fee Applications, as well as the first three motions for leave to appeal the Compensation Orders, but is not a movant herein.

[6] A copy of the First Interim Fee Hearing Transcript is annexed as Exhibit A to the Brown Decl.

disinterestedness hearing, at which there were no objections, and there were "no new facts that have come forward that would change the disinterestedness concept with respect to the fee applications" before the Bankruptcy Court. *Id.* at 34-35. The Bankruptcy Court also rejected those claims raised in the objections filed that payment of fees to the Trustee and B&H resulted in less funds to be distributed to customers. *Id.* at 35-36. By order dated August 6, 2009, the Bankruptcy Court approved the First Interim Fee Applications.

On August 14, 2009, Movants filed a Motion for Leave to Appeal (*BLMIS*, ECF No. 367), and supporting papers seeking interlocutory review of the First Interim Fee Order. On August 24, 2009, the Trustee filed an opposition (*BLMIS*, ECF No. 378). On January 11, 2010, United States District Judge George B. Daniels issued a Memorandum Decision and Order ("Daniels Decision") denying the Movants' motion for leave to appeal the First Interim Fee Order. The District Court held that "none of the issues [raised by Movants] involve controlling questions of law . . . . they all revolve around the methodology the Trustee utilized to compute net equity." *Daniels Decision*, Misc. Matter M-47 (GBD) (S.D.N.Y. Jan. 11, 2010) (a copy of which is annexed to the Brown Decl. as Exhibit B).

### B.    Second Interim Fee Order And Appeal

On December 14, 2009, Movants objected to the Second Interim Fee Applications in the Bankruptcy Court (the "Second Objection") (*BLMIS*, ECF No. 1055). Although styled as an objection, the filing also "offer[ed] to prove the facts set forth [therein] at an evidentiary hearing at a time set by the Court." *See* Second Objection at ¶ 10.

In the Second Objection, the Movants raised virtually the identical issues as in the First Objection. The only additional issue that was raised by the Movants in the Second Objection related to the Trustee's use of Bankruptcy Rule 2004 to subpoena bank records of BLMIS

customers.  *See* Second Objection at ¶¶ 61-68.  The Trustee filed a response to the Second

Objection on December 16, 2009 (*BLMIS*, ECF No. 1075).

At the fee hearing held on December 17, 2009 (the "Second Interim Fee Hearing"),

Movants, again, requested an evidentiary hearing.  In response, Judge Lifland stated that the

Trustee's presentation at the Second Interim Fee Hearing "ma[de] it clear that there is nothing

in the objection to the Trustee's fees or the fees of Baker Hostetler that creates issues even that I

haven't addressed previously, nor do they raise any sufficient concerns that this Court should

order some kind of an evidentiary hearing."  *See* Transcript of Hearing on December 17, 2009

(the "Second Interim Fee Hearing Transcript"), at 33.[7]

Furthermore, the Bankruptcy Court dismissed Movants' Rule 2004 argument as

"bordering on frivolous."  *Id.*  The court stated that the use of broad 2004 subpoenas is "almost

basic" in a case such as this one, and refused to penalize the Trustee for being appropriately

aggressive in his hunt to recover property of the estate.  *Id.*  Movants' Second Objection was

thus overruled by Judge Lifland on "the same ground that [he] ha[d] done previously" as there

was "nothing new in the current objection that overlaps the original rulings."  (*Id.* at 33-34).  On

December 17, 2009, the Bankruptcy Court entered the Second Interim Fee Order approving the

Second Interim Fee Applications.

On December 23, 2009, Movants filed a Motion for Leave to Appeal (*BLMIS*, ECF No.

1115), and supporting papers seeking interlocutory review of the Second Interim Fee Order.  On

January 5, 2010, the Trustee filed an Opposition to the Motion for Leave to Appeal (*BLMIS*,

ECF No. 1200).  These papers were filed and served prior to the issuance of the Daniels

Decision.  The Motion for Leave to Appeal the Second Interim Fee Order is currently fully

---

[7] A copy of the Second Interim Fee Hearing Transcript is annexed to the Brown Decl. as <u>Exhibit C</u>.

submitted and pending before United States District Judge Deborah A. Batts.

### C. Third Interim Fee Order And Appeal

On April 28, 2010, Movants objected to the Third Interim Fee Applications in the Bankruptcy Court (the "Third Objection") (*BLMIS*, ECF No. 2233). The Third Objection was substantially similar to the First Objection and the Second Objection; however, the Third Objection was particularly egregious as it was filed after the issuance of the Daniels Decision, but nonetheless made the same allegations as before—alleged bad acts of the Trustee, his alleged improper interpretation and implementation of SIPA with regard to net equity, and spurious allegations regarding the purposes and history of SIPA and SIPC, as well as *ad hominem* attacks against the Trustee and SIPC.

Movants offered one additional reason to support the Trustee's alleged conflict of interest—his motion to enjoin an action brought by counsel to Movants herein on behalf of other clients against current and former board members of SIPC (the "New Jersey Action") regarding the calculation of net equity. There were, however, no new legal issues raised by the Movants in the Third Objection. The Trustee filed a response to the Third Objection on May 4, 2010 (*BLMIS*, ECF No. 2239).

At the fee hearing held on May 5, 2010 (the "Third Interim Fee Hearing"), the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Third Interim Fee Applications was reasonable. Counsel for the Movants was also heard with respect to the Third Objection, specifically as to the Trustee's involvement in the New Jersey Action. In overruling the Third Objection, Judge Lifland stated that "if you bring on litigation, the Trustee has to go and react to it if that litigation implicates the administration of the estate, and that apparently is the case [in

the New Jersey Action].”  *See* Third Interim Fee Hearing Transcript at 98.[8]  The Bankruptcy

Court subsequently entered the Third Interim Fee Order approving the Third Interim Fee

Applications. [9]

On May 19, 2010, Movants filed a Motion for Leave to Appeal (*BLMIS*, ECF No.

2299), and supporting papers.  The Trustee filed an opposition on June 2, 2010.  (*BLMIS*, ECF

No. 2356).  On August 6, 2010, United States District Judge Shira Scheindlin issued an opinion

denying the request for leave.  *Secs. Investor Prot. Corporation v. Bernard L. Madoff*

*Investment Secs. LLC*, No. M47, 2010 U.S. Dist. LEXIS 81492, at *1 (S.D.N.Y. Aug. 6, 2010)

(a copy is annexed to the Brown Decl. as Exhibit E).  Judge Scheindlin held that Movants failed

to satisfy the requirements for an interlocutory appeal because, *inter alia*, they did not present

any controlling issues of law, nor did they establish that an immediate appeal would advance

the termination of the litigation.  *Id.* at *13.  Whether or not the Trustee’s participation in the

New Jersey Action constituted a conflict was not a “pure question of law that the reviewing

court could decide cleanly without having to study the record.”  *Id.* at *15 (internal quotation

omitted).  Similarly, whether the Trustee and B&H failed to meet their statutory obligations, as

Movants alleged, was deemed a fact-based inquiry inappropriate for interlocutory review.  *Id.*

### D.    Fourth Interim Fee Order And Appeal

On September 2, 2010, Movants filed an objection to the Fourth Interim Fee Application

in the Bankruptcy Court (the “Fourth Objection”) (*BLMIS*, ECF No. 2943).   The Fourth

Objection was substantially similar to the First Objection, Second Objection, and Third

---

[8] A copy of the Third Interim Fee Hearing Transcript is annexed to the Brown Decl. as Exhibit D.

[9] The Trustee notes that the New Jersey Action was transferred from the United States District Court for the District of New Jersey to this Court, which referred it to the Bankruptcy Court.  It has since been dismissed without prejudice.

Objection, in that the Movants again raised the disinterestedness argument. Movants also alleged that the Trustee failed to "promptly" pay SIPC insurance, leaving 2,995 claims undetermined as of August 27, 2010. Finally, Movants argued that the Trustee failed to disclose "material information" about the extent and length of Madoff's fraud and the Trustee's decision-making and accounting. The Trustee filed a response to the Fourth Objection on September 13, 2010 (*BLMIS*, ECF No. 2975).

At the fee hearing held on September 14, 2010 (the "Fourth Interim Fee Hearing"), the Trustee, his counsel and SIPC were heard, but Counsel for Movants failed to appear. The Bankruptcy Court stated: "This is the fourth fee request and, essentially, with respect to this fee request, basically the same arguments are advanced in support of these objections as were advanced previously." *See* Transcript of Hearing on September 14, 2010 (the "Fourth Interim Fee Hearing Transcript"), at 28.[10] In overruling the Fourth Objection, Judge Lifland stated, "I do find that there are no new facts or arguments that have been advanced today which would alter my prior findings concerning conflicts and appropriateness of the fees that have been requested here today." *Id.* at 30. The Bankruptcy Court subsequently entered the Fourth Interim Fee Order approving the Fourth Interim Fee Application. Movants did not file a Motion for Leave to Appeal with respect to the Fourth Interim Fee Order.

### E.    Fifth Interim Fee Order And Appeal

On December 7, 2010, Movants filed an objection to the Fifth Interim Fee Application in the Bankruptcy Court (the "Fifth Objection") (*BLMIS*, ECF No. 3308). The Fifth Objection was substantially similar to the four prior Objections in that the Movants raised the repeatedly-denied disinterestedness argument. Movants further insisted, based on nothing but speculation,

---

[10] A copy of the Fourth Interim Fee Hearing Transcript is annexed to the Brown Decl. as Exhibit F.

that there will be sufficient funds for the Trustee to "pay all claims in full and reimburse SIPC in full for its administrative expenses" based upon the Trustee's success in recovering substantial amounts to the estate.[11]  Movants base this oversimplified assumption on the fact that the Trustee has, to date, allowed approximately $6 billion in customer claims, while his recoveries, if certain settlements are approved,[12] will total approximately $7.5 billion.[13]

At the fee hearing held on December 14, 2010 (the "Fifth Interim Fee Hearing"), the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Fifth Interim Fee Application was reasonable.  The Trustee, his counsel, and SIPC also provided the Court with detailed explanations as to why there was not, at that time, a reasonable expectation that SIPC would recoup its administrative expenses.

The Trustee explained that while the current value of allowed customer claims was $6 billion, because there is significant litigation pending against entities and individuals who also have claims against the estate, the amount of allowed claims will only increase as parties pay back certain avoidable transfers to the estate and/or as claims objections and the Trustee's claims under section 502(d) of the Bankruptcy Code are resolved.  *See* Transcript of Hearing on

---

[11] For this to occur under the law, it means that all allowed customer net equity claims, something which has not yet even been finally determined, would first have to be satisfied in full.  It is curious that Movants are objecting to the eventuality of recovering 100% of the principal they invested with BLMIS.

[12] Pending before the Bankruptcy Court is a settlement between the Trustee and the estate of Jeffry Picower in the amount of $5 billion.  (Notably, counsel for Movants has objected to this settlement on behalf of other clients).

[13] Movants claim rather conclusorily that the Trustee's total recoveries to date are approximately $10 billion.  In fact, if the Picower Settlement is approved, the Trustee will have recovered approximately $7.5 billion.  The Government, however, also reached a settlement with the Picowers in the amount of approximately $2.2 billion, which will be distributed by Mr. Picard as Special Master through the Department of Justice's remission or mitigation process.  *See* "Manhattan U.S. Attorney Announces Agreement to Recover $7.2 Billion for Victims of Bernard L. Madoff's Ponzi Scheme from Estate of Jeffry M. Picower," (Dec. 17, 2010) *available at* http://newyork.fbi.gov/dojpressrel/pressrel10/nyfo121710.htm, annexed to the Brown Decl. as Exhibit G.

December 14, 2010 (the "Fifth Interim Fee Hearing Transcript"), at 15.[14]  Moreover, the

Trustee and his counsel advised the Bankruptcy Court of the risks associated with the litigations

he has commenced against numerous defendants, very few of which have been resolved to date.

*Id.* at 15-17.

Similarly, counsel for SIPC stated that while there was a hope that at some point there

would be a reasonable expectation of recoupment, none existed at this time. *Id.* at 24-25.

Counsel for SIPC referenced a letter from the President of SIPC to Congress, attached to the

Fifth Objection as Exhibit K, indicating that the amount of principal lost in Madoff's fraud was

approximately $17.3 billion.  Accordingly, SIPC's counsel stated that "at some point in time

when the Trustee is able to recover over twenty billion dollars maybe we would be at a point

where there would be no [sic] reasonable expectation."  *Id.* at 26.

Ignoring the above explanations, counsel for Movants stated that "after two years, he has

only allowed $5.8 billion dollars of the seventeen billion in possible claims.  And he hasn't told

you today why that is."  *Id.* at 28.  Counsel for Movants then further argued that it is possible

that the Trustee never intends to allow remaining claims, speculating in accordance with her

own hypothetical that "if we assume that's true for a second, then it's virtually inconceivable

that there won't be enough money to pay all the allowed claims in full and to fully reimburse

SIPC . . ."  *Id.*

In overruling the Fifth Objection, Judge Lifland stated, "I do not find that the objectors

have made any strong point with respect to objecting to the fees that have been requested here

today."  *Id.* at 33.   The Bankruptcy Court found that, at this juncture, there was no reasonable

expectation of recoupment.  *Id.* at 32.  Moreover, "notwithstanding the statutory command that

---

[14] A copy of the Fifth Interim Fee Hearing Transcript is annexed to the Chaitman Decl. as Exhibit C.

[the Bankruptcy] Court shall approve the fees," Judge Lifland noted that he was "very well aware of the Herculean effort being utilized in the litigation arena to recoup funds for the benefit of the victims." *Id.* The Bankruptcy Court subsequently entered the Fifth Interim Fee Order approving the Fifth Interim Fee Application.

On December 28, 2010, Movants filed the instant Motion (*BLMIS*, ECF No. 3594) and supporting papers seeking interlocutory review of the Fifth Interim Fee Order. Movants argue that the Fifth Interim Fee Order should be reversed because the Bankruptcy Court purportedly failed to properly review the Fifth Fee Application and once again, because the Trustee and his counsel have a conflict of interest that renders them disinterested.

## V.    **Movants' And Counsel's Litigation History**

Movants are former investors of BLMIS who filed a customer claim with the Trustee, that was allowed in the amount of $2,310,191.25. The Trustee has paid Movants $500,000 with funds advanced by SIPC, and will satisfy the remainder of their claim from the fund of customer property.

In a variety of different fora and pleadings, Movants and their counsel, Ms. Chaitman, continue to litigate their fundamental dispute with the Trustee regarding net equity (as defined earlier, the "Net Equity Dispute"). The Net Equity Dispute relates to the argument, as advocated by Movants and others, that the Trustee must allow their customer claims in the amount shown on their last customer statements issued by BLMIS. Because those customer statements issued by BLMIS were based on fictitious profits and were entirely fraudulent, however, the Trustee has disregarded the customer statements for purposes of claims determinations. Instead, consistent with the treatment of claims in other Ponzi scheme liquidations, and as required under SIPA, the Trustee is allowing claims in the amounts that a

customer actually deposited with BLMIS, less the amounts that the customer withdrew from the account, sometimes referred to as the "cash-in, cash-out" approach.

On March 1, 2010, the Bankruptcy Court issued its decision on the Net Equity Dispute, approving the Trustee's method of determining net equity (the "Net Equity Decision"). *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). In that decision and the March 8, 2010 Order adopting such decision (the "Net Equity Order"), the Court upheld the denial of claims of those customers whose withdrawals exceeded their initial investments and subsequent deposits, therefore rendering them ineligible to participate in a distribution from the fund of customer property. The Net Equity Order was subsequently certified for direct appeal to the Second Circuit. The appeal has been fully briefed and oral argument before the Second Circuit will likely be scheduled sometime this year.

Movants and their counsel participated in the Net Equity Dispute both before the Bankruptcy Court below and in the Second Circuit on appeal. In addition to those proceedings and the fee objections and related appeals discussed *supra*, below is a non-exhaustive list of matters and appeals in which they have litigated the Net Equity Dispute and other BLMIS-related issues:

- *Peskin, et al. v. Picard*, No. 10-4278 (2d Cir.): Movants Diane and Roger Peskin and Maureen Ebel, with Ms. Chaitman as counsel, sued the Trustee in the Bankruptcy Court (No. 09-1272 (Bankr. S.D.N.Y.) (BRL)) seeking a declaration that the Trustee's net equity calculation is incorrect, as well as damages. The Bankruptcy Court dismissed the complaint, this Court affirmed, and the matter is now on appeal before the Second Circuit.

- *Canavan v. Harbeck, et al.*, No. 10-954 (D.N.J.): Three BLMIS customers, with Ms. Chaitman as counsel, filed an action against SIPC's Board of Directors and CEO/President on behalf of a prospective class defined as "customers of Madoff who are not entitled to their full SIPC insurance under SIPC's Net Investment Policy" (the "New Jersey Action"). The Trustee subsequently filed an application in the Bankruptcy Court to enjoin the New Jersey Action. The New Jersey Action was then transferred to this Court, and referred to the Bankruptcy

- 15 -

Court, where it was voluntarily dismissed by Ms. Chaitman's clients.

- *Picard v. Fox & Marshall*, No. 10-4652 (S.D.N.Y.) (JGK):  Two separate putative class actions were filed, through Ms. Chaitman, on behalf of Adele Fox and Susanne Stone Marshall against Jeffry Picower and related parties (the "Picower Defendants") in the Southern District of Florida (collectively, the "Florida Actions").  Both complaints relied heavily on the allegations in the complaint filed by the Trustee against (*Picard v. Picower, et al.*, Adv. Pro. No. 09-1197 (Bankr. S.D.N.Y.) (BRL)).  On April 1, 2010, the Trustee successfully moved in the Bankruptcy Court to preliminarily enjoin the Florida Actions, and the Bankruptcy Court further held that the Florida Actions were void *ab initio* and violative of the automatic stay.  An appeal of that order is pending before this Court.

- *Picard v. Picower*, No. 09-1197 (Bankr. S.D.N.Y.) (BRL): On December 17, 2010, the Trustee filed a motion in the Bankruptcy Court seeking court approval of a settlement between the Trustee and the Picower Defendants.  The settlement agreement provides that the Picower Defendants will return to the BLMIS estate $5 billion, and will forfeit to the United States Government an additional $2.2 billion, the aggregate of which constitutes 100 percent of the net transfers sought by the Trustee.  Counsel to Movants herein has filed an objection to the Picower settlement.  A hearing on the Trustee's motion is scheduled for January 13, 2010.

## ARGUMENT

As an initial matter, Movants lack standing to appeal the Fifth Interim Fee Order because they cannot show that their pecuniary interests are adversely affected by the Fifth Fee Order.  Although creditors generally have standing to appeal orders of the bankruptcy court, no such rights exist where a party has no pecuniary interest in the order.  Here, the funds that are used to pay the fees of the Trustee and B&H are not customer funds, nor have Movants shown that SIPC is unable to make advances to the Trustee in partial satisfaction of their allowed claims (in fact, Movants have received their SIPC advance already).  Thus, they have no pecuniary interest in the Fifth Fee Order and lack standing to appeal.

Even if Movants had standing to challenge the Fifth Fee Order, they fail to satisfy any of the prerequisites for leave to take an interlocutory appeal.  They identify no controlling issues of law, only issues of fact that require the Court to study the record below.  Nor would granting

Movants' request for leave to appeal materially advance the litigation in any way, but rather
would only reward Movants and their counsel for their repetitive and baseless litigation against
the Trustee.  As such, the Motion must fail.

## I.  Applicable Statutory Framework For Award Of Compensation Under SIPA

In a SIPA liquidation proceeding, customers are given preferred treatment in the
distribution of "customer property," in which they share *pro rata* to the extent of their net
equities and to the exclusion of other creditors.  SIPA § 78fff-2(c)(1).  To the extent of any
shortfall in customer property, an advance by SIPC is made, within the limits set by statute,
from the SIPC Fund.  SIPA § 78eee(b)(5).

As one of the goals of SIPA is to try to ensure that a broker-dealer liquidation will result
in full satisfaction of customer claims, administrative expenses such as fees for a trustee and
counsel are paid for by the SIPC Fund up to and until such time as all allowed customer net
equity claims are satisfied in full.  Only after that point would SIPC be entitled to recoup the
funds it paid to cover the administrative expenses of the liquidation proceeding, such as
professional fees.  Thereafter, any property allocated to the fund of customer property that is not
necessary to satisfy customer net equity and priority claims becomes part of the general estate.
SIPA § 78fff-2(c)(1).

Pursuant to section 78eee(b)(5)(C) of SIPA, SIPC is required to file a recommendation
with the Bankruptcy Court with respect to any applications for compensation in a SIPA
liquidation proceeding.   In cases where the requested compensation for administrative expenses
is paid by SIPC without reasonable expectation of recoupment thereof, and the amounts sought
by the professionals and recommended by SIPC for payment are the same, the "court *shall*
award the amounts recommended by SIPC."  SIPA § 78eee(b)(5)(C) (emphasis added).  Thus,

when there isn't a reasonable expectation that SIPC will recoup administrative expenses, SIPA

provides that the court shall award to the professional the amount recommended by SIPC.   In

other circumstances, the court is required to "place considerable reliance on the

recommendation of SIPC."  *Id.*

## II.    <u>Movants Lack Standing To Appeal</u>

Movants cannot meet their threshold burden to establish standing to appeal the Fifth

Interim Fee Order.  *See In re Johns-Manville Corp.*, 340 B.R. 49, 56 (S.D.N.Y. 2006) (noting

that appellant bears burden of showing standing to appeal).  To meet the threshold to appeal a

bankruptcy court's order, Movants must be "persons aggrieved," meaning that they are "directly

and adversely affected pecuniarily by the challenged order of the bankruptcy court."  *In re

O'Brien*, 184 F.3d 140, 142 (2d Cir. 1999).  This test, which requires financial injury, is

different from the "injury in fact" test from Article III of the Constitution, and it makes it more

difficult to secure appellate standing in bankruptcy cases than in other kinds of civil actions.

*See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.2 (2d Cir. 1988); *In re Victory Markets,

Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996).  The "person aggrieved" standard reflects the concern

that bankruptcy litigation would become mired in endless appeals by a litany of parties who are

indirectly affected by every bankruptcy court order.   *See Kane*, 843 F.2d at 642; *Victory

Markets*, 195 B.R. at 15.

As observed by the court in *Kane*, generally "creditors have standing to appeal orders of

the bankruptcy court disposing of property of the estate because such orders directly affect the

creditors' ability to receive payment of their claims."  *Kane*, 843 F.2d at 642.  This rule

however is not applicable to orders which do not dispose of assets in the debtor's estate.  *See

Victory Markets*, 195 B.R. at 15; *see also Oren v. Kass*, No. 04-CV-4297, 2005 U.S. Dist.

LEXIS 25965, at *6 (E.D.N.Y. Nov. 1, 2005) (finding that appellant had no pecuniary interest in bankruptcy court's fee order to establish appellate standing because the order did not directly and adversely affect appellant, and appellant would not benefit financially if the fee order were overturned).

Movants here have failed to meet their burden to establish standing because they have not shown the requisite direct and adverse pecuniary harm. Movants cannot do so because they have not suffered *any* harm by the Fifth Interim Fee Order, particularly at this juncture. Recovered property—the funds that would be distributed to Movants—is not used to pay administrative expenses as would be the case in a non-SIPA bankruptcy proceeding. Instead, the Trustee and B&H are paid from funds advanced to the Trustee by SIPC.

In an attempt to show the requisite harm, Movants claim that SIPC is not solvent and that "[i]n light of SIPC's insolvency, every dollar spent on fees to enrich the Trustee and Counsel is a dollar that is not available to pay Movants and other Customers." Motion at 10. This is patently false as to both the facts and law. Movants have not—and cannot—point to any customer entitled to a SIPC advance that SIPC was unable to satisfy, nor is there any showing that SIPC is insolvent. In fact, Movants have already been paid their SIPC advance. Thus, Movants cannot show direct and adverse pecuniary harm at this time and lack standing to pursue this appeal.

## III.    Movants Have Not Met The Standard For Leave To Appeal An Interlocutory Order

Even if Movants could establish standing, their Motion should be denied as they cannot meet the standards for interlocutory review. As set forth below, one of the elements that a movant seeking leave to appeal must demonstrate is that the disputed ruling involves a controlling issue of law. Movants' arguments regarding whether SIPC has any reasonable

prospect at this point of recouping its advances to the Trustee administrative expenses is inherently factual, requires the Court to review the underlying record, erroneously assumes that the full value of allowable customer claims is known and determined (belied even by the pending appeal to the Second Circuit concerning the interpretation and extent of a customer's "net equity" claim), and would involve more than just an analysis of a pure question of law. As such, the Motion must fail. Nonetheless, the Trustee addresses each of Movants' asserted issues of law herein.

### A.    Standards for Leave to Appeal from an Interlocutory Order

Pursuant to 28 U.S.C. §158(a), the district court has jurisdiction to hear appeals of interlocutory orders of the bankruptcy court, provided that the district court grants, within its discretion, leave to appeal. However, it is well-established that leave to appeal is granted only in exceptional circumstances. *See In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28 (S.D.N.Y. 1995); *In re Pan Am Corp.*, 159 B.R. 396, 401 (S.D.N.Y. 1993). This serves the established judicial policy of discouraging interlocutory appeals and avoiding the resulting disruption and delay which is caused by such piecemeal litigation. *See Ionosphere*, 179 B.R. at 28.

District courts generally apply the standards set forth in 28 U.S.C. §1292(b) when determining whether to grant leave to appeal from an interlocutory order of the bankruptcy court. *See, e.g.*, *Pan Am Corp.*, 159 B.R. at 401; *Ionosphere*, 179 B.R. at 28. Under 28 U.S.C. §1292(b), the party seeking leave to appeal must establish that (1) the disputed ruling involves a controlling question of law, (2) as to which there are substantial grounds for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See Pan Am Corp.*, 159 B.R. at 401. The granting of a permissive interlocutory appeal is limited to "extraordinary cases where appellate review might avoid

protracted and expensive litigation," and its purpose is not to provide early review of difficult rulings in hard cases. *See German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp 1385, 1398 (S.D.N.Y. 1995).

A "controlling question of law" is one in which reversal of the decision of the bankruptcy court would terminate the action, or at minimum, determination of the issue appealed would materially affect the outcome of the litigation. *See North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997). The "'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Adelphia*, 333 B.R. at 658 (citations omitted). Mere disagreement with the lower court's ruling is insufficient to meet this standard. *See P. Schoenfeld Asset Mgt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 359 (D.N.J. 2001).

Substantial grounds for difference of opinion must arise out of a genuine doubt with respect to the correct applicable legal standard relied on in the order below. *See Adelphia*, 333 B.R. at 658. It is not sufficient that there is merely a strong disagreement on an issue between the parties. *See IBI Sec. Serv*, 174 B.R. at 670.

**B.    Movants Cannot Meet The Standards For Leave To Appeal An Interlocutory Order**

The Fifth Interim Fee Order is an interlocutory order that requires Movants to establish that this is an exceptional circumstance and an extraordinary case—and unlike the three prior times Movants sought leave to appeal the interlocutory fee orders—in order for the district court to grant leave to appeal. *See In re Neuman*, M-47(MEL), 1990 U.S. Dist. LEXIS 5792, at *4-5 (S.D.N.Y. May 15, 1990). The alleged controlling question of law raised by Movants is whether the Bankruptcy Court must adhere to SIPC's recommendation in support of the Trustee and his counsel's interim compensation applications because Movants believe—contrary to the

record and the findings of the Bankruptcy Court—that there is a reasonable expectation that

SIPC will recoup the advances of administrative expenses, including those made to the Trustee

and B&H.

The Motion makes clear that the question on appeal is overwhelmingly factual.

Movants catalogue pure "facts," and even concede the speculative nature of those "facts."  In

the face of detailed explanations by the Trustee, his counsel, and counsel for SIPC at the Fifth

Interim Fee Hearing as to why it is certain that the amount of allowed claims will only increase,

counsel for Movants merely ignored them, instead surmising that "it may very well be that [the

Trustee] never intends to allow those seventeen billion in claims, so that the total claims in this

case, all together, will be $5.8 billion dollars."  To the extent that their objection has any basis

in fact, even Movants' counsel recognized that it would only be realized at some point in the

future, stating that "if we assume that's true for a second, then it's virtually inconceivable that

there won't be enough money to pay all the allowed claims in full and to fully reimburse SIPC."

Fifth Interim Fee Hearing Transcript at 28. The Court considered these facts fully and

explained:

> I agree with Mr. Bell [SIPC's counsel] that at this juncture there is no reasonable
> expectation of recoupment.  That reasonable expectation, even if this Court were to
> give it some credence, is so highly speculative it's really rank speculation.  Especially
> where the litigation that's pending before this Court involves very well financed
> adversaries able to push back with the timing, conclusion and income results, all of
> which are not susceptible to any clear estimation.
>
> So I cannot make that leap that one would say on a very rosy estimate, that there is a
> reasonable expectation that SIPC will be recouped for the amount of fees that are
> being laid out.

*Id.* at 31-32.

Thus, the Bankruptcy Court made a factual finding that there was no reasonable

expectation of recoupment at this time, and applied the appropriate standard in approving the

fee requests of the Trustee and B&H.  Questions involving the application of a legal standard to a factual record are, at best, mixed questions of law and fact, rendering them inappropriate for interlocutory review.  *Bernard L. Madoff Investment Secs. LLC*, 2010 U.S. Dist. LEXIS 81492, at *17 (denying Movants leave to appeal Third Interim Fee Order because the issue involved a mixed question of law and fact).  Indeed, this issue–being one of a factual nature—is not one that this Court "could decide quickly and cleanly without having to study the record."  *Id.,* at *15.

Yet that is precisely what Movants would have this Court do.  As support for their baseless allegations, Movants suggest that the Court review the records relating to certain adversary proceedings in which Movants believe demonstrate "inefficiency."  Movants also take issue with the Trustee and B&H's compensation on a daily and weekly basis.  Yet the Bankruptcy Court has overseen this liquidation from the outset, and has repeatedly found that the Trustee and his counsel have worked diligently on behalf of the estate.  Movants' "beliefs" are belied by the record in this liquidation proceeding.  (Fifth Interim Fee Hearing Transcript at 15, 24-25, 26, 28).  Nor should Movants be permitted leave to appeal on the basis that something "may" occur at some point in the future.  The issues raised by Movants are clearly not issues of law appropriate for interlocutory review.

In any event, the record suggests that the Bankruptcy Court would have approved the fees of the Trustee and B&H even if it were in its discretion to do so.  At the Fifth Interim Fee Hearing, the Court remarked that "notwithstanding the statutory command that this Court shall approve the fees, I am very well aware of the Herculean effort being utilized in the litigation arena to recoup funds for the benefit of victims . . ."  (Fifth Interim Fee Hearing Transcript at 32).  Thus, even under the discretionary standard that Movants suggest should have been

- 23 -

applied by the Bankruptcy Court, their objection is meritless.

Moreover, an immediate appeal of the Fifth Interim Fee Order would not advance the termination of the BLMIS liquidation.  It would merely force the Trustee to defend against another frivolous filing by Movants.  Movants' attempts to manufacture an objection where none exists should be rejected.

Finally, the suggestion that the Trustee and B&H should be denied compensation because they are not sufficiently disinterested is, at this point, beyond frivolous.  This Court has twice ruled that the disinterestedness of Trustee and B&H are not controlling issues of law appropriate for interlocutory review.  *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2010 U.S. Dist. LEXIS 81492, at *13-15 (S.D.N.Y. Aug. 6, 2010) (Daniels, <u>J.</u>); *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. M47, 2010 U.S. Dist. LEXIS 3037, at *2-3 (S.D.N.Y. Jan. 11, 2010) (Scheindlin, <u>J.</u>).  The Court should reject Movants' continued attempts to put this issue before it yet again.

## <u>CONCLUSION</u>

Movants have failed to demonstrate the elements supporting a request for leave to appeal the Fifth Interim Fee Order.  Movants lack standing to appeal, there are no controlling issues of law as to which there are substantial grounds for difference of opinion, and immediate appeal of the Order will not advance the ultimate termination of ongoing litigation.  Movants further have failed to demonstrate any extraordinary circumstances which would justify leave to appeal of the Order.

Based on the foregoing, the Motion should be denied.

Dated: New York, New York
      January 11, 2011

Respectfully submitted,

*s/ David J. Sheehan*

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*