**EXHIBIT C**

300064009_1.TXT

1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   ---------------------------------x

4     In the Matter

5       of                              Index No.
                                        01-08-01789
6   BERNARD L. MADOFF,  IRVING PICARD
    and THE BANKRUPTCY LINK, et al.
7
                        Debtors.
8
    ---------------------------------x
9
                              December 17, 2009
10
                              United States Custom House
11                            One Bowling Green
                              New York, New York 10004
12

13  In Re Fee Application for all Professionals, et al.

14
                    B E F O R E:
15
                        HON. BURTON R. LIFLAND,
16
                                    U.S. Bankruptcy Judge
17

18

19

20

21

22

23

24

25

⧈

2

1
    A P P E A R A N C E S:

300064009_1.TXT

2

3          BAKER HOSTETLER, LLP
           Attorneys for Irving H. Picard, Esq., SIPA Trustee
4                45 Rockefeller Plaza
                 New York, New York 10017
5
           BY:    DAVID SHEEHAN, ESQ.
6
                       -and-
7
                 MARC E. HIRSCHFIELD, ESQ.
8

9

10

11         SECURITIES INVESTOR PROTECTION CORPORATION
                 805 15th Street, Suite 800
12               Washington, D.C.  20005

13         BY:    KEVIN H. BELL, ESQ.

14

15         BAKER HOSTETLER, LLP
                 3200 National City Center
16               1900 East Ninth Street
                 Cleveland, Ohio 44114
17
           BY:    LOUIS A. COLOMBO, ESQ.
18                     -and-
                 DAVID E. KITCHEN, SQ.
19

20

21

22

23

24

25

⬚

                                                          3

1    A P P E A R A N C E S:  (Continued)

2

3

4          PHILLIPS NIZER, LLP
                 Attorneys for Objectants,
                       Page 2

300064009_1.TXT
```
 5                    The Peskins, Maureen Ebel and others
                      666 Fifth Avenue
 6                    New York, New York 10103

 7          BY:    CHRYSSA V. VALLETTA, ESQ.

 8

 9

10
            REEDSMITH, LLP
11                    Attorneys for Bart Schwartz, the New York
                      State appointed Receiver for the Ariel fund
12                    and THE Gabriel Fund
                      599 Lexington Avenue, 29th Floor
13                    New York, New York  10022

14          BY:    JAMES C. McCARROLL, ESQ.
                        -and-
15                 LANCE GOTTHOFFER, ESQ.
                        -and-
16                 JOHN SCOTT, ESQ..

17

18

19
            DECHERT, LLP
20                    Attorneys for J. Ezra Merkin and Gabriel
                      Capital Corporation
21                    1095 Avenue of the Americas
                      New York, New York 10036-6797
22
            BY:    ANDREW J. LEVANDER, ESQ.
23                      -and-
                   GARY J. MENNITT, ESQ.
24

25
```

                                                              4

```
 1   A P P E A R A N C E S:   (Continued)

 2

 3          WINDELS MARX LANE & MITTENDORF, LLP
                      Attorneys for Chapter 7 Trustee
 4                    156 West 56th Street
                      New York, New York  10019
 5
            BY:    ALAN NISSELSON, ESQ.
 6                      -and-
                   REGINA GRIFFIN, ESQ.
 7
```

300064009_1.TXT

```
 8
 9          RICHARDS KIBBE ORBE, LLP
                   Attorneys for Reciever, Lee Richards
10                 1 World Financial Center
                   New York, New York  10281
11
            BY:   DANIEL ZINMAN, ESQ.
12

13

14   ALSO PRESENT:

15          Lee Richards

16          Stefanie Grossman

17

18

19

20

21

22

23

24

25
```

⌐

5

```
 1               Proceedings
 2          THE COURT:  Bernard Madoff, Irving Picard
 3   and the Bankruptcy Link.
 4          MR. SHEEHAN:  Good morning, Your Honor.
 5          THE COURT:   Good morning.
 6          MR. SHEEHAN:  David Sheehan with the law
 7   firm of Baker Hostetler on behalf of the trustee for the
 8   liquidation Bernard Madoff, Securities Investor Protection
 9   Corp., LLC.
10          As you are fully aware, we have a number of
```

300064009_1.TXT

11   matters on for a hearing this morning.

12              What we propose, Your Honor, and I think we

13   informed your chambers of this, we would like to see what I

14   am calling the Merkin matters, the motions to dismiss and

15   the cases of Ariel and the Gabriel Funds that are on for

16   hearing this morning, that they be heard first.

17              And with regard to those motions I will not

18   be arguing them, Your Honor.   My partner, Louis Colombo

19   will be.

20              His pro hac viche admission is in process.

21   It has not been fully processed, but I would like the

22   Court's permission and counsel on the other side since Mr.

23   Colombo has been handling matters since the outset that he

24   be permitted to argue the motion here this morning?

25              THE COURT:  There are some head nods at the

                                                                6

1   table.

2              There is no objection.

3              The application is granted.  We will

4   proceed to the many fee applications that we have.

5              MR. LEVANDER:   Your Honor, Andrew Levander

6   from the Dechert, LLP law firm.  My partner today is Gary

7   Mennitt.  We represent Mr. J. Ezra Merkin and Gabriel

8   Capital Corporation and Gabriel Capital Corporation.  It is

9   our motion to dismiss, and with the Court's leave I will

10   proceed to argument.

11              THE COURT:  Well, no, it seems to me that

12   we have a preemptive motion and that is the motion to amend

13   the complaint.

                            Page 5

300064009_1.TXT

14                    MR. LEVANDER:   That is fine.

15                    THE COURT:  Which essentially is what your

16   motion is targeting at.   So let's hear the motion to amend

17   first.

18                    MR. LEVANDER:   Fine.  My partner, Gary

19   Mennitt will handle it.

20                    THE COURT: It is not his motion.

21                    MR. LEVANDER:   No, it is his opposition.

22                    MR. COLOMBO:  The motion for leave to file

23   the second amended complaint as filed with the Court, and

24   as the Court is well aware we are in the very early stage

25   in those proceedings.   There has been no discovery, we are

⬜

                                                               7

1   still in the pleading stage.

2                    The test for allowing the amendment, of

3   course, is whether there is undue delay, which there hasn't

4   been; whether there is prejudice, there hasn't been.   They

5   don't even challenge those issues in their briefs in

6   opposition to the motion for relief.   They challenge the

7   motion on the grounds that the amendment would be futile,

8   but they never come to grips with what the thrust of the

9   amendment is, the thrust of the amendment is to assert

10   claims against Ezra Merkin, individually, as the general

11   partner of these various funds, such as Ascot and Gabriel;

12   Ascot in particular and as the general partner, the second

13   amended claim asserts he is liable under New York law or

14   Delaware law, whatever controls for the obligations of the

15   fund, to the extent the fund can't satisfy those

16   obligations of what we have alleged in the second amended

17  claim.

18          We gather in our reply brief that fully

19  establishes that Merkin is, in fact, obligated either under

20  New York or Delaware law to satisfy the obligations of the

21  partnership, to the extent the partnership cannot, I

22  understand Ascot has essentially millions of dollars in

23  fraudulent transfers, preferential transfers and in seeking

24  to recover the second amended claim asks to proceed against

25  Merkin.   The law supports us, there has been undue delay


☐

                                                              8


 1  and we ask that it should be allowed.

 2                  THE COURT:   Thank you.

 3                  MR. MENNITT:   Gary Mennitt of the law firm

 4  Dechert, LLP, and Mr. Levander's partner.

 5                  Today we are before Your Honor with a

 6  motion to amend the complaint.   We represent Ezra Merkin,

 7  Gabriel Capital Corporation and it is not an issue on that

 8  motion to amend.

 9                  Mr. Colombo's presentation just completely

10  ignores the structure of the fraudulent conveyance

11  provisions in the Bankruptcy Code, and the limited ability

12  that a debtor-in-possession or trustee has to enforce those

13  rules in Bankruptcy Court.

14                  We did not dispute in our obligations to

15  this motion the proposition that a general partner is

16  generally liable for the obligations of a limited

17  partnership, and that is the thrust of what Mr. Colombo

18  just stood up and said, that is the thrust of what is in

19  their motion papers but that is not even close to adequate

300064009_1.TXT

20    because, and as a result their motion to amend is futile

21    and the complaint as against Ezra Merkin for general

22    partner liability would notwithstanding a motion to

23    dismiss.

24                And the reason is because of the

25    application of Section 550 of the Bankruptcy Code, Your

9

1    Honor.  Section 550 of the Bankruptcy Code sets up an

2    exclusive remedy, it sets up an exclusive remedy that a

3    Debtor-in-Possession or trustee has to enforce either the

4    Section 548 federal fraudulent conveyance provisions of the

5    Bankruptcy Code, but also the Section 544, the fraudulent

6    conveyance provision, that are incorporated in the

7    Bankruptcy Code state law provision.

8                They are only incorporated in the

9    Bankruptcy Court through Section 544, and as the Court is

10   well aware those rights do not inure to the Debtor outside

11   of bankruptcy.

12               The fact that Section 550 is the exclusive

13   source of power for the Debtor in possession or the trustee

14   to recover under any fraudulent conveyance action under the

15   Bankruptcy Code is black letter law, and cases are cited on

16   page 2 and on page 3 of our brief.   Those are the

17   Telligent case, Stratton Oakmont, Pereira and Hooker.

18               In the reply brief that the trustee filed

19   in this case they don't cite any of those cases because

20   they know it is black letter law.   They cannot challenge

21   the proposition that all fraudulent conveyance claims must

22   channel through Section 550 in this Court.

Page 8

300064009_1.TXT

23                    There is no other power.    There is no

24    power under Delaware law to sue a general partner except

25    through Section 550.    They know that.    They don't address

                                                                    10

1    any of those cases.

2                    The structure of the bankruptcy, Your

3    Honor, the provisions, and I won't spend too long on this

4    because I know the Court has written many times on these

5    issues, is basically as follows:    Under Section 544(b),

6    the trustee can step in the shoes of the creditor and may

7    avoid any transfer avoidable under the applicable law by a

8    creditor.

9                    Of course, that right, Your Honor, does not

10    exist outside the Bankruptcy Code by a Debtor, outside the

11    Bankruptcy Code, outside bankruptcy a Debtor can never sue

12    the recipient of a transfer of its property to recover that

13    property on the ground that it was a fraudulent conveyance.

14                    THE COURT:  It sounds to me, counsel, like

15    you are arguing the notion to dismiss targeted for the

16    second amended complaint.

17                    And that the thrust of your argument is

18    that if I grant the application it would be futile.

19                    MR. MENNITT:    That is correct.  It would

20    not survive the motion to dismiss. That is correct, it is a

21    futile argument.

22                    THE COURT:  Do you have anymore witness?

23                    MR. MENNITT:  That is a ground for you to

24    deny the motion to amend.

25                    THE COURT:  I understand that.

                                Page 9

300064009_1.TXT

11

1              MR. MENNITT:  If I could just finish, and I
2    won't take too much more of your time.
3              THE COURT:  Okay.
4              MR. MENNITT:  Section 544 says they could
5    step into the shoes of the Debtor, and Section 548 sets up
6    the fraudulent conveyance claims and Section 550 provides
7    the exclusive remedy in Bankruptcy Court.  They don't even
8    attempt.   In our papers we went through all of the people
9    that the Bankruptcy Code says you could collect the 550
10   claim against.  They don't even attempt to say Ezra Merkin
11   falls into any of those categories.  He is not an initial
12   transferee.   He didn't have legal authority to take that
13   money for himself.  To the extent he is a subsequent
14   transferee, they have that claim in the initial complaint
15   but it is not a subsequent transferee because he is the
16   general partner liable for all of these transfers and he is
17   not a person for whose benefit the transfer is made as the
18   general partner.
19             We laid that all out in our brief.   They
20   don't address those issues in their response.
21             And, Your Honor, the fundamental
22   misapprehension of the trustee with respect to this motion
23   is on Page 7 of their brief.   They said in reality the
24   proposed second amended complaint alleged that Merkin is
25   liable for Ascot transfers under the new Debtor and

12

300064009_1.TXT

1    Creditor law as well as the Bankruptcy Code.   See, their

2    whole theory here, Your Honor, is that somehow because they

3    are alleging state law claims under Delaware law for GP

4    liability and under the state law --

5              THE COURT:  They are arguing the motion to

6    dismiss the second amended complaint.

7              MR. MENNITT:  But that is exactly what a

8    futility motion is.

9              THE COURT:  I understand that.  As I said,

10   I have read all of the papers and I understand that the

11   whole argument that you make is a futility argument.

12             MR. MENNITT:  That is absolutely correct.

13             THE COURT:  That is absolutely correct.

14             MR. COLOMBO:  Maybe we are talking at cross

15   purposes, but we are saying as a matter of law Mr. Merkin

16   is liable for paying for those transfers that Ascot cannot

17   pay.   That is as simple as I could say it.   And we don't

18   think it is a futile argument.   We think it is supported

19   by laws in our briefs that we should be allowed to pursue

20   the claim.

21             THE COURT:  Thank you.   As you well know,

22   we are at the early stages here, and the trustee is dealing

23   with a very complex set of facts, the facts are constantly

24   emerging.   All you have to do is follow the media and find

25   out that more facts are unfolding every day.  So it is not



                                                         13


1    beyond comprehension that you would get several requests

2    for an amended complaint as more factors are discovered.

3                   The argument of futility I cannot buy into
                             Page 11

300064009_1.TXT

4    at this point.

5              It is one that is supplanted by the fact

6    that the second amended complaint as proposed does, subject

7    to joinder pleadings present sufficient to withstand the

8    motion, the objection to a motion to amend.

9              It is clear that a party may amend its

10   pleading on leave of the Court, as justice so requires and

11   in light of the highly complex investigation and continuing

12   discovery of new facts the Trustee apparently in good faith

13   is asserting new liability claims against Mr. Merkin

14   sufficient to open the door for the joinder of issues. That

15   is where I am coming from, the joinder of issues, and then

16   I will entertain the motions to dismiss if the Trustee has

17   not plead sufficiently under those circumstances.

18             Therefore, I am going to grant the

19   Trustee's motion for leave to file the second amended

20   complaint.

21             Now, that carries with it a reaction to the

22   other pending motion, and that is a motion to dismiss.

23   Some parties, some parties including the Trustee seem to

24   feel that this motion to amend only targets one or two of

25   all of the defendants.   I disagree.



                                                          14



1              I think the rules and common sense indicate

2    all of the motions to dismiss should provide the

3    opportunity for all of the parties to effect a joinder.

4    Some of the other defendants may very well feel that the

5    second amended complaint is filed and served that they want

6    to react to it and amend their pleadings likewise.

300064009_1.TXT

7                    So I am going to adjourn all of the motions

8    to dismiss pending the  service of the second amended

9    complaint.

10                   How much time do you want for filing, and

11   how much time do you want for a response?

12                   MR. COLOMBO:  Today is Thursday.   I guess

13   by Monday.

14                   THE COURT:  Are you sure you want Monday?

15   There should be follow-up facts coming

16                   MR. LEVANDER:  It takes 30 days to make a

17   motion after that.

18                   THE COURT:  Yes. Are you sure you want a

19   month because there seems to be more factors and facts

20   coming out in connection with that grand fraud almost every

21   day?  If you want a month, I will give you a month.

22                   MR. COLOMBO:  I am not going for a month,

23   Your Honor.

24                   THE COURT:  I don't want to be faced with

25   any continuous motions to amend based upon the latest new



                                                          15


1    fact that comes out.

2                    MR. COLOMBO:  I understand that and we are

3    sensitive to that.

4                    Let's say a week.

5                    THE COURT:  Very well.

6                    MR. LEVANDER:   And then 30 days from that.

7                    Thank you very much.

8                    MR. GOTHOFFER:  My name is Lance

9    Gotthoffer.  And with me today, Your Honor, is John Scott
                          Page 13

300064009_1.TXT

10    and James McCarroll from the law firm of ReedSmith

11    representing Bart Schwartz, the New York State appointed

12    receiver for the Ariel fund and the Gabriel fund.

13            Your Honor, I understand your point.   I do

14    want to say we would be happy to proceed today on argument,

15    if Your Honor will permit that, but if Your Honor has made

16    up his mind that you wouldn't permit that --

17            THE COURT:  When you see where they are

18    coming from, you may be closer to the road.

19            MR. GOTTHOFFER:  I am ready to go now or 30

20    days, as the Court may prefer.

21            THE COURT:  Okay.

22            MR. SHEEHAN:   Your Honor, we now have on

23    the agenda a number of fee applications for this morning.

24    Just to quickly review them.   There are eight separate

25    applications with regard to international counsel that have


                                                              16


1    been essentially retained by the trustee and are in various

2    jurisdictions throughout the world.

3            We had the application by Lee Richard,

4    former receiver for BLMIS and his counsel as well as for

5    Alix Partners, his consultant.

6            We also have an application by Windels

7    Marx, the special counsel retained by the Trustee.

8            We also, of course, have an application by

9    Mr. Picard as trustee and by Baker Hostetler as his

10    counsel.

11            What I would propose to do, Your Honor, is

12    to move as quickly as I can to the ones to which there is

300064009_1.TXT

13    no opposition.

14            I will start first with the eight

15    applications that were filed in connection with the

16    international counsel that was retained by the Trustee.

17            Very briefly, Your Honor.   As you well

18    know, as you say, not only from the newspapers report but

19    the reports filed by Court there are many actions that are

20    pending throughout the Caribbean and Europe with regard to

21    assets that we claim are part of the estate.

22            THE COURT:  I said media, I didn't

23    necessarily say newspapers.

24            MR. SHEEHAN:  I am just an old-timer so

25    that is where I get most of my news.   What could I say?


                                                        17


1            In any event, Your Honor, those

2    applications are all predicated upon the fact that in each

3    of those jurisdictions and Gibraltar is one I know you are

4    familiar with because we came before Your Honor to seek

5    your assistance with regard to the enforcement of our

6    action here in New York, that we have retained local

7    counsel to assist us with regard to 75 million dollars,

8    Your Honor, that is sitting in the accounts of the bank, of

9    which there are two banks.

10            But in any event, Bank Safra, and they are

11    holding their firms pursuant to the direction of the

12    Gibraltar court, and we have a fairly sophisticated fight

13    going on with regard to the Chapter 15 issue with respect

14    to the fact that we think we will come back before Your

15    Honor where there is local, criminal as well as civil and

300064009_1.TXT

16    the bankruptcy considerations that are in play.    That Your

17    Honor just highlights the need for that special counsel to

18    assist us in that jurisdiction.

19                You would go through each of the others,

20    Your Honor, and I wouldn't take up the Court's time this

21    morning because we have submitted it in our Trustee's

22    report, that each of those jurisdiction in which we became

23    counsel, similar actions are pending.    They are all in

24    different unique forums, in the liquidating action in

25    Bermuda, and in BVI and in the individual actions in the

18

1    Cayman Islands.

2                All of that has required us to institute

3    proceedings on behalf of Mr. Picard to appear given the

4    fact there are assets there.

5                As Your Honor knows, in a case such as

6    this, one of the things we have difficulty in doing is

7    tracing all those assets, that they go through different

8    transferees, and we have been successful in identifying a

9    number of those assets, and hopefully we will be successful

10    in retrieving them and bringing them back into the customer

11    funds and property.  But without the assistance of these

12    counsel, I don't think we could accomplish that task.

13                So, Your Honor, I would move and they are

14    not opposed, all eight applications and I could read into

15    the record the various firms.

16                There is an application for interim

17    professional compensation for Attias & Levy; for Eugene F.

18    Collins; for Lovells LLP; SCA Creque, for Higgs Johnson

300064009_1.TXT

19  Truman Bodden & Company; for Williams Barristers &

20  Attorneys, for Schifferli Vafadar Sivilotti, for Schiltz &

21  Schiltz.  And those are the firms, Your Honor, I would

22  respectfully move for their application for interim

23  compensation.

24              THE COURT:  Does anyone else want to be

25  heard?


                                                          19


 1              MR. BELL:  Kevin Bell, on behalf of the

 2  Securities Investor Protection Corp.

 3              SIPC has reviewed each and every

 4  application, and all the time records associated therewith,

 5  and has filed its recommendation in support of each of

 6  those applications of the international special counsel,

 7  and we would ask the Court to approve the applications as

 8  filed.

 9              THE COURT:  I note that after doing a

10  little look-see into all of them, most of them have

11  voluntarily given a public interest discount.

12              MR. SHEEHAN:  That is correct.  In each

13  instance it is that we demand, quite frankly that each

14  counsel be retained, make a 10 percent discount because it

15  is a case in the public interest.

16              THE COURT:  What is it about it that makes

17  you think they don't take that into account?

18              MR. SHEEHAN:  Your Honor, my cynicism and

19  yours are of equal stature.  I don't think I could do much

20  more than that, but I agree it is a possibility.

21              In any event, at the end of the day they

300064009_1.TXT

22    also have a 20 percent holdback as is normal in the case of

23    people who work as special counsel and counsel to the

24    Trustee.   So I believe, and probably most importantly

25    something I should emphasize this morning, in addition to

20

1    the discount, having been subjected to the scrutiny of

2    SIPC, and Your Honor has before you unredacted all of our

3    time records, we maintain and also we maintain through

4    international counsel very, very detailed reports of all

5    the time that is being spent.

6                    So I know that good scrutiny is being

7    brought to all of those applications and Your Honor.  So I

8    know that we in our office review them and sometimes feel

9    like corporate counsel reviewing records of retained

10    counsel around the country, but we do review all those

11    records as well.

12                    We have modified those and reject the time

13    entries by them, et cetera, et cetera.

14                    So all of these things are subject to I

15    good real scrutiny not only by our firm but by SIPC before

16    they ever reach Your Honor's desk.

17                    THE COURT:  Well, then upon those

18    representations it would appear that the amounts requested

19    are reasonable and based upon the services rendered, and I

20    will approve the application.

21                    MR. SHEEHAN:    Thank you, Your Honor.

22                    The next application, Your Honor is that of

23    Windels Marx.   This is a law firm represented to you by

24    Alan Nisselson and Regina Griffin.

Page 18

300064009_1.TXT

```
25                     Mr. Nisselson, as Your Honor will recall
```

⬜

                                                                    21


```
 1     from the early history of this case was appointed as the
 2     Chapter 7 Trustee for Bernard L. Madoff.
 3                     We moved for a substantial consolidation on
 4     behalf of Mr. Picard.   A consent order was arrived at
 5     after much diligence it was engaged by Mr. Nisselson with
 6     regard to the preparedness of that application.
 7                     At the end of the day, Your Honor, Mr.
 8     Nisselson's firm was then retained as special counsel to
 9     the Trustee.  And if I may, Your Honor, just to tell you,
10     since that time we have worked, very, very cooperatively
11     with Mr. Nisselson, Ms. Griffin, and other partners and
12     associates in that firm.
13                     As Your Honor well knows, that has yielded
14     the fruit of the BLMIS Air, Chapter 11, what is before Your
15     Honor, which is a very complex attempt to rename the asset
16     known as the aircraft, a 30 million dollar jet that Mr.
17     Blumfeld and Mr. Bernard Madoff purchased through a variety
18     of different LLCs and, hopefully, at the end of the day
19     that asset will be fully realized and returned to the
20     estate, and the Windels Marx firm is handling that as well
21     as a number other difficult situations in which Mr. Madoff
22     embedded himself as the principal owner, utilizing the firm
23     of BLMIS to carry the ball and get his interest, and
24     obviously it should come back to the estate.
25                     What isn't so obvious is the fact that he
```

⬜

300064009_1.TXT

22

1    has created these corporate structures that must be
2    penetrated, dissected and then revealed as to what those
3    interests are, how the money should be returned.
4                    We have asked Windels Marx to, because of
5    Mr. Nisselson's continuing role as for a limited purpose as
6    Your Honor will recall, utilizing his stature as a Chapter
7    7 Trustee for Mr. Madoff, continuing in that role, he in
8    these particular instances has, we believe, added strength
9    and value in terms of appearing together as counsel to Mr.
10   Picard in retrieving those assets for the estate.
11                   And there is no objection to this, Your
12   Honor.
13                   THE COURT:  Does anyone else want to be
14   heard?
15                   MR. BELL:   Your Honor, SIPC is in support,
16   has reviewed the applications and time records, and would
17   note that is in the international counsel, there is a 10
18   percent public interest discount and SIPC has submitted its
19   recommendations in support of the application as filed.
20                   THE COURT:  Well, I was originally
21   concerned with respect to the consolidation that there
22   would be a redundancy, and apparently it has worked out
23   well.   There is more efficiency in the way the structure
24   of the two estates, the combined estates have operated, and
25   I am satisfied with the application.



                                                            23



1                    MR. SHEEHAN:   Thank you very much, Your

                              300064009_1.TXT
  2   Honor.

  3                 The next application, Your Honor, is also

  4   unopposed.   It is an application by Mr. Richards and his

  5   firm representing Alix Partners.

  6                 Mr. Richards, I believe, will present that

  7   application.

  8                 MR. RICHARDS:  Good morning, Your Honor.

  9                 THE COURT:  Good morning, Mr.  Richards.

 10                 MR. RICHARDS:  I was appointed a little

 11   over a year ago to serve as the SEC's receiver.   I served

 12   in that capacity for a month or so until the SIPC trustee

 13   was put in place and then in London, the provisional

 14   liquidators was put in place.

 15                 We made our application for deeply

 16   discounted fees.  I believe they have been reviewed by

 17   SIPC, and I believe there is a consent by SIPC and we would

 18   otherwise rest on our papers, unless Your Honor has any

 19   questions.

 20                 THE COURT:  Does anyone want to be heard?

 21                 MR. BELL:  Your Honor, Kevin Bell for SIPC.

 22                 I believe SIPC has reviewed these

 23   applications, Your Honor, and the time records and has

 24   engaged in intensive discussions with the receiver as

 25   counsel, and has submitted its recommendation in support of


                                                              24

  1   the applications as filed and we would recommend, Your

  2   Honor, that the court approve them as filed.

  3                 THE COURT:  I will grant the applications,

  4   but I have one question.   Alix Partners is no longer

300064009_1.TXT

 5  connected with the case or are they still being retained

 6  under the aegis of the SIPC trustee?

 7              MR. PICARD:   They continued working for

 8  the trustee.  They are a claimant.

 9              THE COURT:  This application relates to

10  these services to the receiver.

11              MR. PICARD:   That is correct.   With

12  respect to their work for me, they are pursuant to the SIPC

13  statute.

14              THE COURT:  I was only curious because I

15  saw this denominator as a final application.

16              MR. PICARD:  It's only final as the

17  receiver.

18              THE COURT:  The application is granted.

19              MR. BELL:   Thank you, Your Honor.

20              MR. SHEEHAN:   Thank you, Your Honor.

21              MR. PICARD:  Good morning, Your Honor.   At

22  the outset I would like to suggest that you don't believe

23  everything you read or hear in the media because of --

24              THE COURT:  I don't necessarily believe

25  everything I read in the papers that are submitted to me


                                                          25



 1  either.

 2              MR. PICARD:  I wasn't going there.

 3              MR. SHEEHAN:   Touche.

 4              MR. PICARD:  I will speak to my own

 5  application, and Mr. Sheehan will speak to the Baker

 6  Hostetler application.

 7              My application as well as the firm's covers

300064009_1.TXT

8    a five-month period through September 30.    After giving

9    effect to the 10 percent discount which he referred to and

10   a write-off of approximately 225 hours, I am seeking

11   $835,605, of which $710,264.25, would be paid currently.

12               And, Your Honor, $125,340.75 will be

13   deferred to a later point in the case.

14               I am also requesting a reduction of the 20

15   percent holdback to 15 percent.    That was originally set

16   in the Court's order of February 25.

17               These requests have been approved by SIPC.

18   They filed a recommendation in the last couple of days.

19               As Your Honor is aware, SIPC has been

20   paying all of the administrative costs, one of which would

21   include these fees and prior fees and the other fees that

22   you have granted today.

23               MR. PICARD:  Under the statute when SIPC

24   has a goal in the statute it pays whenever it seems to be

25   the rule.


                                                        26


1                There are a couple of things I would like

2    to state for the record, and this goes to some

3    misinformation, Your Honor, that has been out in the public

4    domain, some of which I had said at prior hearings.

5                Number 1, no costs of administration are

6    paid from the recoveries we make for the benefit of the

7    customers. The costs of administration in this case, Your

8    Honor, are paid by SIPC.

9                Number 2, the percentage fee schedule,

10   which applies in a Chapter 7 or a Chapter 11 bankruptcy

                        Page 23

300064009_1.TXT

11    case does not apply in a SIPC liquidation.    So, therefore,

12    I am not getting 3 percent as has been reported continually

13    both in the press and other places, Your Honor.

14                    The 3, Your Honor, are whatever amounts you

15    award to me are paid over to the firm.    I do not keep

16    them.    There are --

17                    THE COURT:  I have to assume the firm pays

18    taxes on it.

19                    MR. PICARD:  I would assume that is

20    correct, Your Honor.

21                    THE COURT:  And you, too.

22                    MR. PICARD:  I do when the firm pays me.

23    As far as I know, there has been one docketed objection,

24    and there have been a couple of letters that have been

25    sent.    One of the objections is primarily focused on the


                                                              27

1     net equity issues making complaints that I believe are more

2     appropriate to be heard on February 2 and not in connection

3     with this fee application, Your Honor.

4                    We did file a response yesterday to the

5     various objections and I will rest on that response.    But

6     as noted there, Your Honor, some of the issues that are

7     raised you previously have ruled on.    They are raised

8     again.    I submit that the prior rulings in some cases

9     don't even apply to this case, Your Honor.

10                    One of the objections specifically contends

11    that collecting assets in this case was easy.    I beg to

12    differ.    I did not see the banks or the Depository Trust

13    Clearing Corporation come to our door and offer to

Page 24

300064009_1.TXT

14  surrender the money and securities that they were holding

15  in the name of BLMIS.  In fact, it took a lot of time and

16  effort to get those assets back and certainly under the

17  circumstances it's not surprising that they weren't lining

18  up at the door.

19              But, Your Honor, it took time, effort and

20  we came to Court with a number of motions and applications

21  and stipulations that Your Honor may recall back to the

22  early part of the year.

23              Another apparent misconception or one that

24  I have heard and that, quite frankly, I was surprised of

25  was the price was raised in a congressional hearing last

28

1   week is that I have sued individuals for at least $700

2   million.

3               That is totally wrong, Your Honor.   The

4   only individuals other than the 14 major cases that we have

5   brought, the only individuals who have been sued by me have

6   been sued in counterclaims in response to a complaint that

7   was filed against me.

8               The issue there, Your Honor, is we could

9   not lose the opportunity by not counterclaiming when we

10  answer to be able to bring a lawsuit or to be able to

11  pursue matters down the road.

12              That meant in the matters now pending, an

13  agreement by the parties, in not moving forward.   So I

14  would just like the record to reflect we have not sued the

15  smaller individuals as has been reported.

16              Moving to claims, Your Honor.   We have

300064009_1.TXT

17  received more than 16,200 claims.    Of that number we have

18  determined 11,568 as of Tuesday.    That is approximately 71

19  percent, Your Honor.

20            We have committed over 563 million dollars

21  of the SIPC funds based on the cash in and cash out

22  methodology.

23            While I am not going to address that issue

24  today, Your Honor, the record should reflect that I have

25  informed customers publicly and in determination letters

 

29

1  that if the Court finally determines that the way we are

2  dealing with claims is erroneous, we will go back and we

3  will revisit all the claims' determinations whether or not

4  a party has filed an objection.

5            Your Honor, during the compensation period

6  we implemented a hardship program in an effort to move

7  forward people who were in tremendous need, whether they

8  had medical problems, were losing their house to

9  foreclosure, and various and sundry other means that were a

10  problem that we could recognize, and we only got 317

11  applications.    Those have been moved through the system as

12  best as we could.

13            Many of them have been determined.    Many

14  have been allowed.

15            As I indicated through counsel, I have

16  started 14 pieces of litigation for approximately 15

17  billion dollars.    They are primarily fraudulent

18  transactions.    Without litigation we have already

19  recovered 240 million dollars in preferences.

Page 26

300064009_1.TXT

20              These are people who have come forward.

21  One was a stipulation that Your Honor heard a number of

22  months ago.   That has now been fully paid up and most of

23  the others are being handled through the claims process in

24  accordance with procedures that Your Honor fixed in the

25  claims procedure order signed last December.

                                                        30

1              We are hopeful, Your Honor, in the near

2  future we will have some substantial recoveries of some

3  other matters.   We will bring them to the Court to the

4  extent we have to do that and otherwise we will certainly

5  let the public, the people who are interested in the case,

6  know about them.

7              Getting back specifically to my

8  application, Your Honor.   The four major areas in which I

9  expended time during the period account for about 68

10  percent.   There are claims reviews, and case

11  administrations, the Bankruptcy Court litigation and the

12  Trustee's investigation.

13              Your Honor, another approximately 12

14  percent of the time has been spent in avoidance actions,

15  asset searches and dealing with the United States

16  Attorneys' Office.

17              I would like to let the Court know that

18  with respect to the U.S. Attorney's office we have a

19  cooperative program, if you will, and that is not to say

20  from time to time there aren't some little humps that we

21  each have to get over, but we have had good communications

22  and we are both progressing and doing what we each have to

300064009_1.TXT

23    do.

24              As I have noted earlier, there are

25    insufficient funds in the estate.   So SIPC will be paying

                                                                    31

1    these fees and paying the costs of administration as it has

2    all along.

3              I would be happy to answer any questions,

4    if you have any.

5              THE COURT:  Does anyone want to be heard?

6              MS. VALLETTA:  Yes, Your Honor.  My name is

7    Chryssa Valletta, from the Phillips Nizer law firm.  We

8    represent the objectants, Diane and Roger Peskin, Maureen

9    Ebel and various other customers.

10              I would just like to say our papers

11    constitute an offer of proof and we respectfully request an

12    opportunity to have an evidentiary hearing in which we

13    could prove the facts set forth in our objection and proofs

14    that fees should be disallowed and the trustee should be

15    disqualified and that of his counsel.

16              Other than that I rest on my papers unless

17    Your Honor has any questions.

18              THE COURT:  Thank you, I have no questions.

19              MR. BELL:  Your Honor, SIPC is here in

20    support of the Trustee application.  As you have noted

21    before, the Trustee has taken a 10 percent service

22    discount, that is the Trustee and all counsel in this case.

23              SIPC supports the reduction of the holdback

24    of 20 percent to 15 percent going forward and backward,

25    adjusting the Court's order of monthly compensation

300064009_1.TXT

32

1    procedure order of February.

2                    Your Honor, I would like to emphasize at

3    this point in time in the liquidation proceeding, SIPC

4    agrees with the Trustee that there is no reasonable

5    expectation that the general estate will be sufficient.

6                    SIPC all along has hoped that we will move

7    from the word "shall" to "may" in the preparatory language

8    on the compensation.   But at this point in time, SIPC

9    agrees with the trustee that there is no reasonable

10   expectation that there will be any money put for general

11   creditors or that SIPC will be repaid any of the money in

12   advance to pay all of the administrative expenses, both the

13   fees and costs of this case.

14                   I would further state that some of the

15   objectors's points were made to Congress last week that

16   there be suggested changes in the SIPA statute.

17                   I think within hours of those suggestions,

18   Congress passed minor amendments and at least the House of

19   Representative left the statute standing including all

20   provisions with regard to fees that the Court would be

21   acting under.

22                   THE COURT:   Well, there has been a

23   response to the objections that have been filed and,

24   frankly, I would be a little bit surprised if there was the

25   support for the response given to the respondents long

33

Page 29

300064009_1.TXT

1    term.

2                    Frankly, the Trustee's response and their

3    presentation today makes it clear that there is nothing in

4    the objection to the Trustee's fees or the fees of Baker

5    Hostetler that creates issues even that I haven't addressed

6    previously, nor do they raise any sufficient concerns that

7    this Court should order some kind of an evidentiary

8    hearing.  There is backup in connection with that.

9                    And some of the objections while

10   cosmetically look somewhat appealing are bordering on the

11   frivolous.   The Trustee is charged with the mission of

12   going out to hunt out for assets and under in a case like

13   this that hunt is not easily achieved.

14                   For example, objections to the use of 2004

15   subpoenas on a broad base is something that is almost basic

16   that it is a requirement of a case like this and the

17   objection on that ground that the Trustee is too aggressive

18   doesn't resonate with appropriate sincerity.

19                   I am aware that the objectants have a

20   position which they articulated in the past and in the

21   media and before me, and the issues that are there are the

22   ones that will be dealt with appropriately when that is a

23   complete joinder and when I have all of the issues before

24   me I can make the appropriate determinations.

25                   So, I am going to overrule the objection on

                                                              34

1    basically the same ground that I have done previously, and

2    I find nothing new in the current objection that overlaps

3    the original rulings.
                          Page 30

300064009_1.TXT

4                    I do overrule the objections at this point.

5                    MR. SHEEHAN:   Your Honor, what remains is

6      only the application of Baker Hostetler.   Your Honor is

7      fully familiar with the record.   I don't intend to cover

8      that again.

9                    I think the Trustee this morning has

10     addressed most of the objections that were raised by the

11     other side.

12                   THE COURT:  And the other side has rested

13     on those papers and I already responded.

14                   So, does anyone else want to be heard?

15                   There were two letter objections.

16                   MR. SHEEHAN:   There were, Your Honor.

17                   MR. PICARD:  Your Honor, with respect to

18     one of them, the person who wrote the letter was not a

19     customer.  But the customer to whom that person is related

20     has had his claim determined and allowed and that includes

21     the $500,000 SIPC advance.

22                   MR. SHEEHAN:   Unless you want to hear

23     something further from me, and I am more than happy to do

24     that,  we are concluded.

25                   THE COURT:  Does anyone else want to be

                                                              35

1      heard?

2                    The applications are granted.

3                    MR. SHEEHAN:   I have multiple sets of

4      orders and a disk with all of the applications for Your

5      Honor's consideration.

6                    THE COURT:  I will entertain it. I have
                              Page 31

300064009_1.TXT

```
 7    approved the order.

 8                    MR. SHEEHAN:    Thank you very much, Your

 9    Honor.  The SIPC trustee thanks you, Your Honor.

10                        *     *     *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

⬚

36

```
 1                    C E R T I F I C A T E

 2

 3    STATE OF NEW YORK      }
                             }        ss.:
 4    COUNTY OF NEW YORK     }

 5                    I, MINDY CORCORAN, a Shorthand Reporter

 6    and Notary Public within and for the State of New York, do

 7    hereby certify:

 8                    That I reported the proceedings in the

 9    within entitled matter, and that the within transcript is a
```

Page 32

300064009_1.TXT

10    true record of such proceedings.

11                    I further certify that I am not related, by

12    blood or marriage, to any of the parties in this matter and

13    that I am in no way interested in the outcome of this

14    matter.

15                    IN WITNESS WHEREOF, I have hereunto set my

16    hand this 19th day of December, 2009.

17

18            _____

                MINDY CORCORAN
19

20

21

22

23

24

25