Helen Davis Chaitman (4266)
Becker & Poliakoff LLP
45 Broadway
New York, New York 10006
(212) 599-3322
HCHAITMAN@BECKERNY.COM

*Attorneys for Diane and Roger Peskin,
and a large group of other customers*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                                          Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                                          Defendant. | Case No.: _____<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                                          Debtor. | |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

Diane and Roger Peskin, along with over 100 other customers of Bernard L. Madoff Investment Securities LLC ("Madoff"), submit this short reply memorandum in further support of their motion for leave to appeal the bankruptcy court order allowing in full the fifth fee application of Irving H. Picard, Trustee, and his counsel, Baker & Hostetler LLP ("B&H").

**Preliminary Statement**

This appeal raises an important issue of pure law: Whether a bankruptcy court in a SIPA liquidation has a continuing obligation to monitor the disinterestedness of the trustee appointed

by the Securities Investor Protection Corporation ("SIPC") (*See* Objection at 7-8). Here, the bankruptcy court made a determination that the Trustee was disinterested in February 2009. (Docket No. 69). However, in the ensuing two years, it has become clear that the Trustee is not disinterested and, in fact, is breaching his fiduciary duty to the customers in order to protect SIPC from liability. As the Second Circuit has explained, there is a particular need to monitor the fees charged by the Trustee and his law firm in a SIPA liquidation. *Securities Investor Protection Corp. v. Charisma Securities Corp.*, 506 F.2d 1191 (2d Cir. 1984). Here, the evidence is undisputed that the Trustee's law firm grossly over-billed for its services. Yet, SIPC approved the fees *carte blanche*. Given the undisputed evidence of this over-billing, the bankruptcy court had a duty to investigate the Trustee's disinterestedness in order to assure the integrity of the proceeding.

## ARGUMENT

The fees of the Trustee and B&H are running at the approximate rate of $2.3 million per week. For all five of their interim fee applications, the Trustee and B&H have relied on 15 U.S.C. Section 78eee(b)(5)(C) of the Securities Investor Protection Act ("SIPA") to shield their fee applications from scrutiny by creditors. This statute provides that the court *shall* award fees recommended by SIPC where there is *no reasonable expectation* that SIPC will recoup the advances it made for administrative expenses.

This appeal raises a pure issue of law which must be addressed to assure the integrity of the SIPA liquidation: Can SIPC use Section 78eee(b)(5)(C) as a tool to assure that the Trustee acts in SIPC's interests rather than in the interests of the customers to whom, by law, the Trustee owes a fiduciary duty? (*See* Objection at 7-8). Movants submit that the answer to this question has to be "no."

2

SIPC's pattern of controlling its appointed trustees and their counsel through the *carte blanche* allowance of their fees is not new. One court called the trustee a mere "puppet" of SIPC. Yet, it felt its hands were tied because of Section 78eee(b)(5)(C). *In re First State Securities Corp.*, 48 B.R. 45, 46 (Bankr. S.D. Fla. 1985)(acknowledging that Section 78eee(b)(5)(C) "either intentionally or inadvertently permits someone connected with SIPC to authorize questionable payments to attorneys from SIPC trust funds under the pretext that these payments have been reviewed, approved, authorized and directed by a federal court. Nothing could be more misleading"; "reluctantly" and "without choice" the court approved interim compensation that it considered "excessive"). *See also, In re Bell & Beckwith,* 112 B.R. 876, 878 (Bankr. N.D. Ohio 1990)(noting that "SIPC has always recommended the allowance of all fees and expenses requested by the Trustee and his counsel" and that " [a]bsent a "reasonable expectation of recoupment", the Court's hands are tied.").

The record before the bankruptcy court is undisputed that B&H grossly over-charged for two matters as to which appellants' counsel had personal knowledge. *See* Objection at 5-8. SIPA Section 78eee(b)(5)(C) does not relieve the bankruptcy court of its fundamental obligation to monitor the integrity of the proceedings before it. *See In re Plaza Hotel Corp*, 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990). Yet, here, the court approved the fees requested by the Trustee and B&H despite the fact that they conceded, by not putting in any evidence in response to the Objection, that the time billed on the matters of which appellants' counsel had personal knowledge, was grossly inflated. Objection at 5-7. In the *Canavan* action, B&H billed 266 hours for writing a 16-page reply brief. *Id.* at 5-6. In the *Fox* matter, B&H billed 575 hours for preparing a 6-page motion to strike an issue and an 8-page reply brief and attending a hearing. *Id.* at 6-7. In its opposition, SIPC tries to justify the hours it approved. B&H is silent on the

3

issue. How can the Trustee be disinterested when he is relying on SIPC to justify gross over-billing by his law firm?

Prior to the enactment of Section 78eee(b)(5)(C), the Second Circuit was particularly concerned with the integrity of billing of a trustee and his attorney in a SIPA liquidation. In *Charisma Securities Corp.*, the court examined the issue of whether SIPC-recommended fee awards for the trustee and his counsel should be scrutinized in "no-asset" cases in which SIPC pays the fee. 506 F.2d 1191. SIPC acknowledged that the purposes of judicial scrutiny are "the protection of creditors and the reorganized corporation from award of excessive fees, and the prevention of the abuse of the judicial system that the award of such fees would imply." *Id.* at 1194. Nevertheless, it argued that the protection of creditors and the reorganized debtor is not necessary in "no-asset cases" where SIPC pays the fees. Therefore, SIPC argued, SIPC-approved fees should be awarded unless "they are so excessive and outrageous that the integrity of the judicial system is at stake." *Id.* The court disagreed with that reasoning, finding that no legitimate reason exists for adopting a policy "whereby the brokerage community, which finances the fund, is deserving of less judicial protection . . . than are creditors in" other proceedings." *Id.* As a result of the Second Circuit's holding in *Charisma Securities Corp.,* SIPC sought and obtained the present statute, Section 78eee(b)(5)(C).

## Conclusion

This SIPA liquidation involves the largest financial crime in history. The fortunes of tens of thousands of people from all over the world were wiped out by the Madoff fraud. In this case, it is particularly important that the integrity of the process be protected. In light of the evidence of over-billing which the Trustee and his counsel did not dispute, the disinterestedness of the

Trustee is an issue which, as a matter of law, the bankruptcy court has an obligation to continually monitor. We ask the Court to so hold.

January 17, 2011

                **BECKER & POLIAKOFF LLP**

        By: /s/ Helen Davis Chaitman
            Helen Davis Chaitman
            45 Broadway
            New York, New York 10006
            (212) 599-3322

            *Attorneys for Diane and Roger Peskin,*
            *and a large group of other customers*