**BERGER LEGAL LLC**  521 Fifth Avenue · Suite 3300 · New York, New York 10175-3399
266 Harristown Road · Suite 207 · Glen Rock, New Jersey 07452
646.435.4855 T · 646.924.0599 F · www.bergerlegal.com

January 17, 2011

Clerk of the United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Mr. Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

> **Re: Joint Objection to December 17, 2010 Notices of Trustee's Determinations of Claim Numbers 002950, 002163, 002949, 002410 in *SIPC v. Bernard L. Madoff Investment Securities LLC***

We submit this letter brief on behalf of Mr. Theodore Wm. Tashlik, Mr. Richard Tuchman, Mr. Arthur Asch, and Mrs. Karen Davis as Nominee for the 2004 Elissa Weiner Trust, in support of their joint objection to the above-referenced Determinations of Claim Numbers 002950, 002163, 002949, and 002410 (collectively, the "Determination"). We object to the Determination on the basis that:

(1) it erroneously finds that Messrs. Tashlik, Tuchman, Asch, and the 2004 Elissa Weiner Trust ("Investors") did not have an account with BLMIS and thus were not "customers" entitled to the protection of the Securities Investment Protection Act ("SIPA") ; and

(2) it is improperly intertwined with the determination of Claim No. 002614, submitted by Karen Davis in her individual capacity, which determination improperly combined two accounts – BLMIS Account Nos. 1D0083 and 1D0075 – into one account on the purported grounds that both accounts were held in the same capacity by Karen Davis.

As explained in more detail below, the Investors were the four beneficial owners of Account ID0075 (hereinafter "Account 75") that was maintained with BLMIS. As beneficial

owners, the Investors were therefore "customers" of BLMIS in accordance with SIPA, the Series 100 Rules promulgated thereunder, and other applicable law. In addition, Account 75 and Account No. 1D0083 (hereinafter "Account 83") were not held in the same capacity by Ms. Davis, should not have been combined, and are subject to separate determinations under SIPA.

At the time of the collapse of BLMIS, and indeed, since at least September 2006, Ms. Davis was the nominal owner of Account 75 only, and had no beneficial or financial interest in that account. Under SIPA, where an account is held by a nominal owner such as Ms. Davis for beneficial owners such as the Investors, that account *shall* be determined to be the individual account of the beneficial owners. (See 17 C.F.R. § 300.100.) Accordingly, each of the Investors had an account with BLMIS and were customers entitled to separate determinations by the Trustee.

## BACKGROUND

### Account 75

On March 11, 2004, Ms. Davis opened Account 75 with BLMIS and deposited a total amount of $2,250,000. (Ex. A, Determination of Claim No. 002614, Table 1.) That amount represented the individual interest of Ms. Davis in the amount of $500,000, and the interest of the Investors – in the combined amount of $1,750,000. (Id.) Additional sums were subsequently deposited in Account 75 in the amounts of $450,000, $250,000, $600,000, $300,000, and $761,017. (Id.) Mr. Tuchman made direct deposits by wire transfer in the amounts of $250,000 on March 31, 2005 and $300,000 on December 29, 2005. (Tuchman Aff. ¶¶ 2-3.) The Elissa Weiner Trust similarly deposited $761,017 into Account 75 by direct wire transfer to BLMIS on April 3, 2008. (See Ex. B.)

From the inception of Account 75, Ms. Davis was the nominal owner for the Investors. Indeed, the parties executed a Nominee Agreement on March 3, 2004, prior to the opening of any account with BLMIS, which provided in part that "Davis shall hold legal title to the investment as nominee for herself and the Investors in accordance with their respective interests . . ." (Ex. C.) The Nominee Agreement further provided that "[t]he Investors shall file their individual tax returns consistent with the nominee return and she shall act as directed by each of the Investors with respect to their respective investments." (Id.) Most importantly, the Nominee Agreement provided that Davis "shall have no discretionary authority over the investment except with respect to her share thereof." (Id.) Instead, each Investor had the power to issue trading instructions with respect to that Investor's share of the account. (Id.) That is the very essence of being a customer.

At the time Account 75 was established, Daniel Davis (Ms. Davis's husband) explained to Frank DiPascali, the Chief Financial Officer of BLMIS at the time, that the purpose of the account was to allow the Investors to invest with BLMIS. (Ex. D ¶ 3.) Mr. DiPascali and thus BLMIS knew that the purpose of Account 75 was to allow the beneficial owners (the Investors), to each deposit their assets into the account so that the account would qualify for the minimum deposit requirement of two million dollars. (Id.) The fact that a portion of the investments in Account 75 at BLMIS were for the benefit of the Investors, and not Ms. Davis personally, is further reflected in the IRS Form 56, Notice Concerning Fiduciary Relationship, filed by Ms. Davis (Ex. E), and in various accounting statements reflecting Ms. Davis and the Investors' respective dividend and interest income, and their respective short term and long term capital gains arising from Account 75. (Ex. F.)

**Account 83**

On September 29, 2006, Karen Davis opened a second account with BLMIS, Account 83. The purpose of the second account was to segregate all of Ms. Davis's funds from those of the Investors. Ms. Davis therefore transferred $1,866,207, from Account 75 into the new Account 83, and deposited an additional $400,000 into Account 83 to meet the account minimum of two million dollars. (Ex. D at ¶ 8.) At the time, Mr. Davis again explained to Mr. DiPascali of BLMIS during a telephone call that the purpose of setting up the second account was to allow Ms. Davis to separate her funds from the funds of the Investors held in Account 75, and that Ms. Davis would continue to be the nominal owner only of Account 75. (Id. at ¶ 9.) After Account 83 was established, Ms. Davis no longer had any personal financial interest in Account 75. (Id.) Indeed, in light of the new account, there was no reason for Ms. Davis to keep any of her personal funds in Account 75, and she did not do so.

Following the collapse of BLMIS in December 2008, each of the Investors filed timely claims. Respectively, Messrs. Tashlik, Tuchman, Asch, and the 2004 Elissa Weiner Trust filed claim Nos. 002950, 002163, 002949, and 002410 with the Trustee concerning their interests in Account 75. These claims were made in full compliance with the procedures set forth in the December 28, 2008 Claims Procedure Order.

**The Determination at Issue**

The Investors each received an identical Determination of their claims, each dated December 17, 2010. The Determination provided, in pertinent part, that:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll* (2). Accordingly, your Claim for securities and/or a credit balance is **Denied**.

4

(Ex. G.) No additional support or justification for the Determination was provided.

### Prior Determination of Karen Davis's Claim and Pending Objection

Ms. Davis received a determination for her claim, Claim Number 002614, on or about February 12, 2010. That determination provided in part that:

> The Trustee has made the following determination regarding your claim on BLMIS Account No. 1D0083 designated as Claim Number 002614. BLMIS Account No. 1D0083 and BLMIS Account No. 1D0075. . . are held in the same capacity pursuant to SIPA Series 100 rules and are combined into one account for the purposes of this determination.

(Ex. A.) Ms. Davis's claim was thus construed as combining the sum of funds in both Account 83 and Account 75, for a total of $4,250,000, representing the sum of all amounts deposited minus all withdrawals in both Account 75 and Account 83. Ms. Davis was offered a total amount of recovery of $500,000 in partial satisfaction of her "Allowed Claim."[1]

## ARGUMENT

### I. The Investors Held an Account with BLMIS and are "Customers" Under SIPA.

The Trustee's decision that the Investors did not hold an account with BLMIS and were not "customers" under SIPA is erroneous. SIPA Rule 101(b) provides that:

> An account by a nominee for another person as a principal or beneficial owner shall, except as otherwise provided in these rules, be deemed to be an individual account of such principal or beneficial owner.

---

[1] Ms. Davis's objection to the determination of Claim 002614, filed on or about March 10, 2010, is still pending. In light of the recent recovery by the Trustee of a reported $7.2 billion through settlements with the Estate of Jeffrey Picower and Picower-related Investors, as well as other settlements and recoveries, the total amount of recoverable assets in this matter has significantly increased and is likely to impact past and future claims determinations. Nothing in this objection should be construed as a waiver by the Investors or Ms. Davis of their rights to additional funds recovered by the Trustee, all of which rights are expressly preserved.

5

(17 C.F.R. § 300.100.) In this case, Account 75, was indisputably an account "by a nominee" namely, Ms. Davis, which was "for another person as a principal or beneficial owner" – in this case, the Investors. (Ex. C; Ex. D at ¶ 10.) Following the plain language of SIPA Rule 101(b), such an account "*shall*...be deemed to be an individual account of …[the] beneficial owner[s]." 17 C.F.R. § 300.100. The Rule could not be more clear: where an account is held by an nominal owner such as Ms. Davis for beneficial owners such as the Investors, that account *shall* be determined to be the account of the beneficial owners. (Id.) It follows that the Investors, as beneficial owners of Account 75, were customers of BLMIS under SIPA.

In addition to the plain language and intent behind Rule 101(b), it is also well-established that the lynchpin of any inquiry regarding customer status under SIPA is whether the claimant entrusted cash or securities to the broker-dealer for the purpose of trading securities. See 15 U.S.C § 78lll (noting that to qualify as a customer, a claimant must have "deposited cash with the debtor for the purpose of purchasing securities"); see also Rosenman Family, LLC v. Picard, Slip Copy, 2010 WL 3911370 *2 (2d Cir. 2010) (explaining that the key act is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities")(citing In re New Times Security Services, 463 F.3d 125, 128 (2d Cir. 2006)). Notably, the Trustee himself made a similar argument in a Memorandum of Law filed with this Court on or about June 11, 2010, recognizing, in no uncertain terms, that the key to "customer" status under SIPA is the "entrustment of cash or securities." (Ex. H.) In particular, the Trustee wrote:

> To be a "customer" under SIPA, an investor must not only have a securities account with the debtor, he must also have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for" that securities account (including "any person who has deposited cash with the debtor for the purpose of purchasing securities"). SIPA § 78*lll*(2). Thus, to be a "customer" an account holder must have entrusted cash or securities with the debtor for

6

>   the purpose of trading or investing in securities. *See Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 128 (2d Cir. 2006) ("[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities") (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) (further citations omitted) (underscoring added).

(Id. at 17-18.)

Here, it is plain that the beneficial owners of Account 75, i.e., the Investors, directly entrusted cash to BLMIS for the purpose of purchasing securities. (See, e.g., Tuchman Aff. ¶¶ 2-3, Ex. F; Ex. D at ¶ 7.) As such, they should each be deemed a "customer" of BLMIS.

Moreover, BLMIS was aware of the arrangement between Ms. Davis and the beneficial owners. This knowledge is evidenced in part by conversations between Mr. Davis and BLMIS employee Mr. DiPascali. (Ex. D ¶¶ 3, 8, 9.) Under these circumstances, it is plain that the Investors held an account with BLMIS and were customers as defined under SIPA.

It is also clear that each Investor was the sole party that could issue instructions with respect to their investment. As stated, the terms of the Nominee Agreement specifically eliminated any discretionary authority of Ms. Davis, except with respect to her share. (Ex. C.) The Second Circuit has addressed this issue and has identified key considerations in the identification of a customer. See, e.g., Securities Investor Protection Corp. v. Morgan, Kennedy & Co., 533 F.2d 1314, 1317 (2d Cir. 1976). In Morgan, Kennedy & Co., 108 people who were beneficiaries of a profit sharing trust were held not to be "customers." In so finding, the Court relied on the following facts:

>   a.  the funds in the account came from their employer and not them personally;

7

    b. it was the employer's decision to entrust the funds to the debtor, not the employees;

    c. none of the beneficiaries had any right to give buy or sell orders for the account;

    d. the financial relationship was between the beneficiaries and their employer, not between the beneficiaries and the broker; <u>and</u>

    e. the broker did not even know the identities of the beneficiaries and never interacted with them. <u>See</u> <u>id.</u>

The situation here is almost exactly the reverse. The funds in Account 75 came directly from each of the Investors; it was the Investors' decision to entrust BLMIS with their personal funds; each of the Investors had the right to manage their share of the account as they saw fit and could have withdrawn or added to the account (as some did) at their own discretion; the financial relationship was between the Investors and BLMIS directly; and BLMIS was aware of and accepted funds from the Investors. (<u>See</u> Tuchman Aff., Exs. B, C, D, E, F.)

The Investors also relied on the protections afforded to them by SIPC's Series 100 Rules. They each had a reasonable basis to believe that they were, individually, a customer of BLMIS, and executed a Nominee Agreement that specifically limited the ability of Ms. Davis to act on their behalf. In that regard, SIPA Rule 101(c) provides:

> "(c)     Accounts held by a customer in different capacities ... shall be deemed to be accounts of separate customers. For example, an account held with a member by a customer in his individual capacity and another account held by him as agent for another person shall be deemed to be accounts of separate customers.

(17 C.F.R. § 300.100.)

The record is clear that the 75 Account was held by Ms. Davis as nominee <u>only</u>, that BLMIS knew the nominee status of the account, and the Investors executed the Nominee

8

Agreement prior to the creation of the 75 Account. (Exs. C, D.) Under these circumstances, the Investors should be deemed the customers of the 75 Account.

## II.    The Determination to Combine Account 75 and Account 83 Was Erroneous.

The Trustee's determination regarding Claim No. 002614 (Karen Davis's individual claim), which purports to combine Account 75 and Account 83, seemingly has eradicated any available recovery for Messrs. Tashlik, Tuchman, Asch, and the 2004 Elissa Weiner Trust. This determination was unfair and erroneous. Ms. Davis filed an objection to it on or about March 10, 2010. (Ex. I.) That objection remains pending.

The determination regarding Claim No. 002614 appears to have been based on a reading of SIPA Rule 101(a), which provides that:

> Except as otherwise provided in these rules, all accounts held with a member by a person in his own name, and those which under these rules are deemed his individual accounts, shall be combined so as to constitute a single account of a separate customer.

(17 C.F.R. § 300.100.) Inexplicably, however, the Trustee ignored Rules 101(b) and (c), which, as discussed above, provide that where an account is held by a nominal owner for the benefit of someone else, that account must be determined to be the individual account of the beneficial owner and that each account is to be treated as a separate account. As explained above, Ms. Davis was only the nominal owner of the funds in Account 75 at the time of the collapse of BLMIS, and those funds were in fact beneficially owned by the Investors. (Exs. C, E, F.) Thus, Account 75 should not have been construed as an "individual account" of Ms. Davis.

BLMIS was aware of this arrangement. (Ex. D at ¶¶ 3, 8, 9.) The fact that the Investors made direct deposits into the account and that these deposits were facilitated by BLMIS further demonstrates BLMIS's awareness that the Investors were the true customers. See, e.g.,

<u>Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities</u>, 401 B.R. 629 (Bkrtcy. S.D.N.Y. Feb. 24, 2009) (finding claimant was a customer entitled to SIPC protection where claimant wired funds to a BLMIS Chase Account for the purpose of investing in BLMIS's investment advisory fund); <u>In re Adler Coleman Clearing Corp.</u>, 216 B.R. 719 (Bkrtcy. S.D.N.Y. 1998) (key determination with regard to customer status was whether party had entrusted cash to debtor).

The Trustee's combining of Account 75 and Account 83 under these circumstances is not only contrary to Rule 101(b), but is particularly unfair and inequitable in that it would eliminate the recovery that would, and should, be available to the Investors.

## CONCLUSION

For all of the foregoing reasons, we respectfully request (1) that the determination of Claim Nos. Claims Nos. 002950, 002163, 002949, and 002410 be reversed and that Messrs. Tashlik, Tuchman, Asch, and the 2004 Elissa Weiner Trust each be determined to be beneficial owners of an account with BLMIS, and therefore "customers" of BLMIS under SIPA; (2) that the Determination of Claim No. 002614 be modified such that Account 75 and Account 83 are not combined and that separate determinations for the beneficial owners of Account 75 are made; and (3) that a fair and equitable monetary award be made to Messrs. Tashlik, Tuchman, Asch, and the 2004 Elissa Weiner Trust.

Respectfully submitted,

BERGER LEGAL LLC

_____
Anna Aguilar
Scott Laton