Bisceglie & DeMarco, LLC
365 Rifle Camp Road
Woodland Park, NJ 07424
Telephone: (973) 742-8900
Facsimile: (973) 742-7999
and
711 Third Avenue, Suite 1803
New York, NY 10017
Telephone: (212) 682-8089
Angelo R. Bisceglie, Jr., Esq.
Email: abisceglie@bd-lawfirm.com
Mark I. Silberblatt, Esq.
Email: msilberblatt@bd-lawfirm.com
Cara B. Allen, Esq.
Email: callen@bd-lawfirm.com

*Attorneys for Upstate New York Bakery
Drivers and Industry Pension Fund*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,       : | |
| Plaintiff-Applicant,       : | Adv. Pro. No. 08-01789 (BRL) |
| v.       : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC,       : | SIPA Liquidation |
| : | (Substantively Consolidated) |
| Defendant.       : | |

-----------------------------------------------------------------

In re:       :

BERNARD L. MADOFF,       :

Debtor.       :
-----------------------------------------------------------------X

**OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM**

Upstate New York Bakery Drivers and Industry Pension Fund and Upstate Union Health and Welfare Fund (the "Fund"), by and through its undersigned counsel, as and for its Objection to Trustee's Determination of Claim regarding the SIPC Benefit Claim filed by the Fund, respectfully represents as follows:

### Facts

1. On or about March 3, 2009 the Fund timely filed Claim No. 005483 against this estate in connection with the Fund's investment in Income Plus Investment Fund ("Income Plus").

2. On or about December 17, 2010 the Trustee issued a "Notice of Trustee's Determination of Claim," denying the Claim. The Notice of Trustee's Determination states: "Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll*(2)." As set forth below, the Trustee's determination is incorrect as a matter of law and fact.[1]

3. In relevant part, and with emphasis added, 15 U.S.C. § 78*lll*(2) defines "customer" as:

> (2) Customer.
>
> (A) In general. The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummate

---

[1] Another claim (Claim No. 005482) (the "Beacon Claim") was filed by the Fund against this estate in connection with the Fund's investment in Beacon Associates. On or about December 8, 2009 the Trustee denied the Beacon Claim, and a motion relating thereto is now pending before this Court.

1

sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.

(B) Included persons. The term "customer" includes –

(i) **any person who has deposited cash with the debtor for the purpose of purchasing securities;**

(ii) any person who has a claim against the debtor for cash, securities, futures contracts or options on futures contracts or options on futures contracts received, acquired, or held in a portfolio margining account carried as a securities account pursuant to a portfolio margining program approved by the Commission; and

(iii) any person who has a claim against the debtor arising out of sales or conversions of such securities.

(Emphasis added).

4. In this case the Fund dealt, and deposited cash, with BLMIS through the "feeder fund" known as Income Plus.

5. At all times, it was the intention of the Fund and Income Plus that BLMIS and/or Bernard L. Madoff ("Madoff") would use such cash to purchase securities for Income Plus and thus for the benefit of the Fund.

6. Indeed, Income Plus specifically designated BLMIS and Madoff as its agent for the purpose of purchasing and dealing in securities. See Exhibit A attached.

## Legal Argument

7. SIPA "is remedial legislation. As such it should be construed liberally to effect its purpose." *In re First State Securities Corp.*, 34 B.R. 492, 496 (Fla. 1983) (quoting *Tcherepnin v. Knight*, 389 U.S. 332 (1967)).

8. As explained by the Supreme Court, Congress enacted SIPA to protect and restore investor confidence in the capital markets. *Securities Investor Protection Corp. v. Bourbor*, 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC ("Madoff")*, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009). SIPA created SIPC to administer SIPA. 15 U.S.C. § 78ccc. In a liquidation proceeding, the SIPC fund is available to "customers" if the debtor's general estate is insufficient to pay "customer claims." According to SIPA, only "customers," a term of art, defined in 15 U.S.C. § 78*lll*(2) will be protected. A denial of "customer" status would relegate an investor to a general unsecured creditor who can only seek recovery from the general estate. *Madoff*, 401 B.R. at 634.

9. As noted above, "customer" includes "any person who has deposited cash with the debtor for the purpose of purchasing securities."

10. SIPA does not require that monies received by the debtor be received "directly" from the customer. This is evidenced by 15 U.S.C. § 78fff 3(a)(5) which states:

> no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, *other than to the extent that it shall be established to the satisfaction of the trustee,* from the books and records of the debtor *or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claims of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank..., in which event each such customer of such broker or dealer or bank shall he deemed a separate customer of the debtor.*

(Emphasis added.)

11. "Customer" status has been found even where the cash was not initially deposited with the debtor *Focht v. Heebner (In re Old Naples Sec., Inc.)*, 223 F. 3d 1296

3

(11th Cir. 2000) is a case in point. In that case defendants had not deposited cash with the debtor broker (Old Naples Securities, Inc.), but with another company (Old Naples Financial Services) that was not a securities brokerage. In affirming the defendants' customer claim under SIPA, the Court held:

> A claimant is only a "customer" protected by SIPA in regard to a claim for cash entrusted to a brokerage if he or she "deposited [the] cash *with the debtor*." 15 U.S.C. § 78*lll*(2) (emphasis added). Focht and the SIPC argue that because Heebner and Eileen Brown wired funds to Old Naples Financial Services rather than Old Naples Securities, they do not qualify.
>
> Whether a claimant "deposited cash with the debtor," however, does not (as Focht and the SIPC suggest) depend simply on to whom the claimant handed her cash or made her check payable, or even where the funds were initially deposited. Instead, the question [**12] is whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *In re Stalvey,* 750 F.2d at 469 (quoting *SEC v. Kenneth Bove & Co.,* 378 F. Supp. 697, 700 (S.D.N.Y. 1974)). Thus, courts have held that a claimant who delivered a note payable to a broker personally, rather than to the brokerage, could qualify as a "customer" protected by SIPA, see [*1303] *Ravis v. Day (In re Investors Sec. Corp.),* 6 B.R. 420, 423, 425 (Bankr.W.D.Pa.1980), and that the statute covered claimants when one brokerage (which later became insolvent) misused their funds held in accounts with another firm, see *In re First State Sec. Corp.,* 34 B.R. 492, 495-496 (Bankr.S.D.Fla.1983).

223 f. 3d 1302, 1303.

12.     Denying the Fund "customer" status in this case is inconsistent with the legislative intent behind SIPA. For example, upon the signing of SIPA on December 30, 1970, President Richard Nixon stated that "just as the Federal Deposit Insurance Corporation protects the user of banking services from the danger of bank failure, so will the Securities Investor Protection Corporation ["SIPC"] protect the *user* of investment

4

services from the danger of brokerage firm failure."[2] SIPC provides protection to prevent the *user* from suffering loss because "of an operating failure in the mechanisms of the marketplace."[3]

13.     Although the structure of investment services has substantially changed since 1970, the Fund clearly was a user of investment services and as such deserves to be protected from the loss that it suffered as a result of the "operating failure in the mechanisms of the marketplace" known as the Madoff fraud. This is true regardless of whether the Fund chose to access the marketplace through direct or indirect means.

14.     Granting the Fund "customer" status in this proceeding notwithstanding the fact that it did not invest directly in BLMIS but invested in a "feeder fund" is particularly appropriate when, in filings with this Court, the Trustee himself has noted that "feeder funds" enabled Madoff's Ponzi scheme to continue and ensnare innocent investors such as the Fund. See, for example, the Trustee's Amended Complaint in *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-1364 (BRL) ("HSBC") which commences by stating in Paragraph 1:

> "1.     Madoff did not act alone in perpetrating the largest financial fraud in history. For more than a decade, HSBC Holdings plc, HSBC Bank plc, and their affiliates (collective, the "HSBC Defendants" or "HSBC") enabled Madoff's Ponzi scheme by encouraging investment into an international network of feeder funds, including several named as defendants herein (the "Feeder Fund Defendants")."

15.     Although Income Plus was not one of the feeder funds named as defendants in HSBC, that case points up the centrality of all such funds to Madoff's scheme, which provides further support for the Fund's claim.

---

[2] Emphasis Added. John T. Woolley and Gerhard Peters, The American Presidency Project [online]. Santa Barbara, CA: University of California (hosted), Gerhard Peters (database). Available from World Wide Web: (http://www.presidency.ucsb.edu/ws/index.php?pid=2870).
[3] *Id.*

5

### Relief Requested

16. For the reasons stated, the Court should find the Fund within the definition of 15 U.S.C. § 78*lll*(2).

17. To the extent applicable, the Fund joins in the objections of all other claimants in the same position (i.e., claimants who have an indirect investment in BLMIS through feeder funds) and reserves all rights with respect to the Claim, including the right to amend, revise or supplement this Objection and to the extent it deems necessary, file a supplemental memorandum of law. Any failure to object on a procedural or substantive ground shall not be deemed a waiver of any such rights.

Dated: January 11, 2011

Respectfully submitted,
BISCEGLIE & DEMARCO, LLC

By: _____
Mark I. Silberblatt (MS7471)
Attorneys for Claimant
*Upstate New York Bakery Drivers
and Industry Pension Fund*
365 Rifle Camp Road
Woodland Park, NJ 07424
(973) 742-8900

and

711 Third Avenue, Suite 1803
New York, NY 10017
(212) 682-8089