UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

   Debtor.

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

   Plaintiff,

v.

COHMAD SECURITIES CORPORATION, et al.,

   Defendants.

Hearing Date: February 2, 2011

SIPA LIQUIDATION

Index No. 08-01789 (BRL)

**MEMORANDUM OF LAW OF THIRD PARTIES TURBO INVESTORS LLC, JAMES S. HERSCOT, ALAN N. HOROWITZ AND CHABAN INVESTMENT COMPANY, AND WHITE MOUNTAIN SPORTS, INC. PROFIT SHARING PLAN, NY IN OPPOSITION TO THE MOTION OF ROBERT M. JAFFE FOR AN ORDER ENJOINING THE CONTINUED PROSECUTION OF THE THIRD PARTY ACTIONS**

**Hinckley & Heisenberg LLP**
Christoph C. Heisenberg, of counsel
501 Fifth Avenue, Suite 506
New York, New York 10017
(212) 845-9094

**Table of Contents**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   FACTS OF THE ACTIONS ....................................................................................... 3

      A.   The Estate's Avoidance Claims Against Jaffe, And Its Subsequent Settlement
           With Jaffe ............................................................................................................. 3

      B.   The *White Mountain* Action Against Its Brokerage Firm and its Broker, Jaffe ..... 4

      C.   The *Turbo* and *Herscot* Arbitrations Against Their Brokerage Firm, and Their
           Broker, Jaffe ......................................................................................................... 4

III.  ARGUMENT ............................................................................................................ 5

      A.   JAFFE LACKS STANDING TO REQUEST AN INJUNCTION UNDER
           SECTION 105 ....................................................................................................... 5

      B.   THERE IS NO UNDERLYING BASIS FOR AN ORDER UNDER SECTION
           105 ........................................................................................................................ 6

           1.  Third Party Actions Are Not Subject To The Stay Because The Claims Are
               Not Property Of The Estate ............................................................................. 6

               a) Determining Whether The Claim Belongs To The Estate Depends Upon
                  Whether The Injury Is Generalized To All Creditors ................................. 7

               b) The Third Party Actions Are Identical To The Claims In *Seven Seas* And
                  Dissimilar To The *Fox/Picower* Claims That This Court Enjoined ............ 8

           2.  Recovery In The Third Party Actions Will Not Impair The
               Net Equity Order ........................................................................................ 11

IV.   CONCLUSION ........................................................................................................ 12

**Cases**

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*,
     336 F.3d 94 (2d Cir. 2003) ................................................................................................ 6

*Caplin v. Marine Midland Grace Trust Co.*,
     406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) ................................................... 7

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*,
     522 F.3d 575 (5th Cir. 2008) .................................................................... 2, 9, 10, 11

*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir. 1995) ..................................... 7

*In re Bernard L. Madoff Securities Corp.*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) ........................11

*In re Consolidated Pioneer Mtg.*, 205 B.R. 422 (Bankr. 9th Cir. 1997) ......................... 5

*In re Dairy Mart Convenience Stores Inc.*, 351 F.3d 86 (2d Cir. 2003)........................... 6

*In re Venegas Munoz,* 73 B.R. 283 (Bankr. D.P.R. 1987) ................................................. 5

*Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*,
     25 F.3d 1281 (5th Cir.1994) ............................................................................................ 7

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 429 B.R. 423 (Bankr. S.D.N.Y.
     2010) ............................................................................................................................ 1, 8

*Solow v. Kalikow (In re Kalikow),* 602 F.3d 82 (2nd Cir.2010) ..................................... 6

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989) ............ 8

*Wornick v. Gaffney*, 544 F.3d 486 (2d Cir. 2008)........................................................... 7

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ................................... 11

Securities Investor Protection Act, 15 U.S.C. §78lll(11).............................................. 11

**Treatises**

2 *Collier on Bankruptcy, P 105.02* at 105-12 (15th ed. 1996)........................................ 5

Turbo Investors LLC, James S. Herscot, Alan N. Horowitz and Chaban Investment Company, and White Mountain Sports, Inc. Profit Sharing Plan, NY (collectively, "Third Parties") hereby respectfully submit this Memorandum of Law in opposition to the motion filed by defendant Robert W. Jaffe ("Jaffe") for an Order Enjoining Prosecution of Third Party Actions.

## I.     PRELIMINARY STATEMENT

Jaffe's motion asks the Court to grant him complete immunity from civil actions as a result of his role in the Madoff scandal. In the guise of the noble premise of preserving claims belonging to the bankruptcy estate of Bernard L. Madoff Investment Securities LLC (the "BLMIS Estate"), Jaffe asks the Court to enjoin the civil actions that seek to hold him accountable for his conduct (the "Third Party Actions"). For the reasons set forth herein, the request is legally unsound and without basis.

Notably, the stated purpose of preserving claims for the estate is illusory. Although the Trustee is aware of these Third Party Actions against Jaffe, the Trustee has not joined Jaffe's application. This later point is dispositive, because the Trustee is the only entity with standing to bring a motion under Section 105 to prevent another party from usurping the BLMIS Estate's claims. Jaffe lacks standing.

Apart from Jaffe's lack of standing, the motion fails because there is no basis to his assertion that the claims being asserted in the Third Party Actions are property of the Estate. This Court is familiar with this legal argument, as it addressed the legal standards in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 429 B.R. 423, 431 (Bankr. S.D.N.Y. 2010)("*Fox/Picower*"). Here, the Third Party Actions are asserting claims that did not belong to the BLMIS estate. The BLMIS Estate only possessed limited claims against Jaffe: under the legal theory of fraudulent conveyance, and preferences avoidance the trustee's action alleged

1

Jaffe improperly had received funds <u>from BLMIS</u>, and the action sought only the return of monies that BLMIS had paid to Jaffe. Those claims were tied to Jaffe's role as a transferee and did not depend upon Jaffe's interaction with customers, or his actions with regard to the Third Parties.

In contrast, the claims against Jaffe in the Third Party Actions are brought by individual investors, arise from duties <u>independent</u> of those that the BLMIS Estate possessed against Jaffe, the breach of which resulted in individualized injuries to them. Indeed, the Third Party Actions assert precisely the type of claims relating to specific misrepresentations to them, and specific damages caused by those misrepresentations as the investors asserted in *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008)("*Seven Seas*"). Those claims, this Court recognized, are not property of the Estate: "Simply put, given that only the Bondholders relied upon the misrepresentations, the injuries they suffered as a result were distinct from those suffered by the debtor, as well as by other unsecured creditors." *Fox/Picower*, 429 B.R., quoting *Seven Seas*, 522 F.3d at 587 n.7.

The Trustee has performed an admirable job in securing from Jaffe and others the relief available to the Estate. However, that relief was limited by the claims that were available to the Estate – requests limited to the return of payments. The trustee did not possess a damage remedy against Jaffe, and therefore the Estate could not recover damages caused by Jaffe's conduct. Those damage claims belong to the individual investors which dealt with Jaffe and were harmed by Jaffe's violation of individual duties he owed to them. At no point could the Trustee have brought those claims on behalf of third-party investors.

All of these elements result in the conclusion that Section 105 does not provide a basis for Jaffe to receive a "get out of jail free" card against all other liabilities he has independent of

2

his liability to the Estate, simply because there is the most tenuous link between the entities. For that reason, the request for an injunction should fail.

## II.    FACTS OF THE ACTIONS

**A.    The Estate's Avoidance Claims Against Jaffe, And Its Subsequent Settlement With Jaffe**

The BLMIS Estate filed an action against Jaffe and other transferees in 2009. As Jaffe acknowledges, the scope of the BLMIS Estate's complaint was limited, asserting "claims for fraudulent transfers, preferences, turnover, and state law fraudulent conveyances." (Jan. 6, 2011 Def. Robert M. Jaffe Mem. of Law In Support of his Motion, at 5)(hereinafter "Jaffe Mem."). The basis of the Estate's claim was Jaffe's status <u>as a transferee of payments</u> (having received funds without providing reasonably equivalent value), and did not hinge on his participation in the fraud. The relief to which the BLMIS Estate sought was the avoidance, or set aside, of prior "Two Year Transfers" and "Six Year Transfers" that the BLMIS Estate had made to Jaffe. (See *Picard v. Cohmad et.al.*, Complaint, Relief pp. 64-67.) Solely for purposes of the constructive fraudulent transfer claims, the complaint asserted the BLMIS Estate did not receive reasonably equivalent value for transferring the commissions, and that Jaffe and other transferees knew or should have known that the transfers to them were invalid.

By a settlement between Jaffe and the Trustee that this Court approved on December 21, 2010, Jaffe settled with the Madoff bankruptcy trustee. In the settlement, Jaffe agreed to pay back all of bogus profits and fees he, his father-in-law, Carl Shapiro, and their families received from Madoff over the years, including $38 million of which related to Jaffe. This settlement "represents the total amount the Trustee seeks from Jaffe and satisfying in full the [BLMIS] Trustee's claims against Jaffe and M/A/S in the Cohmad Adversary Proceeds. . . . " (Exh. D to Jaffe's Motion, at 3-4).

3

**B.      The *White Mountain* Action Against Its Brokerage Firm and its Broker, Jaffe**

The *White Mountain* Action was filed on October 20, 2010 against White Mountain's brokerage firm, Cohmad, and against its broker, Jaffe. The claims arise from the privity between the parties, and the duties created thereby. As described in the Complaint's summary, White Mountain seeks "compensation for damages caused by Defendants' breach of numerous duties owed to them, including the making of misrepresentations and omitting to disclose material information in connection with the investments." (*White Mountain Sports, Inc. Profit Sharing Plan, NY v. Cohmad Securities Corp., Inc. et al.,* No. 10-CV-7999 (MCG) Complaint 1, "Summary of the Action").

The suit alleges that Jaffe owed White Mountain duties attendant to being its broker, including the duties created by the federal securities laws of having a reasonable basis for making investment recommendations, and Section 10b of the Securities Exchange Act of 1934, encompassing the duty not to misrepresent material aspects of the investment (and to disclose material information about the investment recommendation), and a duty under S.E.C. Rule 206(4)-3 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b, to disclose the commissions that the broker was receiving from an Investment Adviser for soliciting customers.

**C.      The *Turbo* and *Herscot* Arbitrations Against Their Brokerage Firm, and Their Broker, Jaffe**

Like the *White Mountain* action, the Turbo Claimants' FINRA arbitration and the *Herscot* Claimants' FINRA arbitration against Jaffe (among others) are predicated upon Jaffe's failures to perform his duties as a broker and under the federal securities laws. These actions, too, asserts that Jaffe breached those individual duties owed to Turbo and Herscot, respectively. As with other securities claims owned by investors, the actions seek damages resulting from Jaffe's negligent and fraudulent conduct, in an individualized amount that the FINRA panels will have to determine to be appropriate. These arbitrations do not seek recovery of Jaffe's ill-gotten

4

gains (which were sought by the Madoff bankruptcy trustee); instead, they seek damages incurred due to Jaffe's breach of duties to these particular investors. Also, Turbo is not part of the bankruptcy proceedings.

### III.  ARGUMENT

Jaffe's argument that the Court should enjoin the Third Party Actions because the claims are duplicative of the claims of BLMIS Estate is without merit for several reasons. First, under Section 105 Jaffe lacks standing to assert this argument on behalf of the trustee. Second, there is no basis for an injunction because the claims being asserted in the Third Party Actions arise from individual duties owed to the Third Parties, and are not property of the BLMIS Estate. The Third Party Actions also do not jeopardize the trustee's actions against Jaffe, as the BLMIS Estate has settled with Jaffe and secured for the Estate the full sums to which the Estate is entitled.

**A.  JAFFE LACKS STANDING TO REQUEST AN INJUNCTION UNDER SECTION 105**

Jaffe's motion should be dismissed, for Jaffe does not have standing to request an injunction under Section 105. An assertion that others are usurping assets of the bankrupt estate is one reserved for the trustee, which is charged with protecting the estate's assets and claims. As the court made crystal clear in *In re Consolidated Pioneer Mtg*., 205 B.R. 422 (Bankr. 9th Cir. 1997):

> Standing . . . to enjoin the actions of a third party rests with the debtor, debtor in possession, or the trustee, and not with the third party." (citing 2 *Collier on Bankruptcy, P 105.02* at 105-12 (15th ed. 1996); *In re Venegas Munoz,* 73 Bankr. 283, 285 (B.R. D.P.R. 1987). Therefore, … a third party to the proceeding, lacks standing to bring a motion for injunctive relief pursuant to § 105(a).

In this case, the Trustee is fully cognizant of the Third Party Actions, as well as other actions against third party defendants. The Trustee, which would be the only entity able to request relief on behalf of the Estate, has not joined in the motion. Section 105 simply does not

5

permit a defendant to invoke section 105 in an obvious attempt to immunize itself from all liabilities where the Trustee has not seen fit to do so.

B. **THERE IS NO UNDERLYING BASIS FOR AN ORDER UNDER SECTION 105**

Beyond the lack of standing, Jaffe's motion fails because there is no underlying basis upon which section 105 can be invoked: the Third Party Actions do not impact the Court's prior orders. The Court's equitable power under section 105 requires a specific underlying basis in the Code:

> We must hold that the equitable power conferred on a bankruptcy court by 11 U.S.C. §105 'is the power to carry out the Provisions of the bankruptcy code, rather than to further the purposes of the code generally, or otherwise to do the right thing.'

*Solow v. Kalikow (In re Kalikow),* 602 F.3d 82, 95-96 (2nd Cir.2010) (citing *In re Dairy Mart Convenience Stores Inc.*, 351 F.3d 86 (2d Cir. 2003)). The only underlying basis identified in Jaffe's papers is the assertion that the Third Party Actions "seek[] to prosecute claims that belong exclusively to the BLMIS Trustee" and (2) seek[] to circumvent the claims determination and allowance process approved by this Court, including the Net Equity Order, by pursuing derivative claims before other courts…" (Jaffe Mem. at 11). Neither basis holds up to scrutiny.

1. **Third Party Actions Are Not Subject To The Stay Because The Claims Are Not Property Of The Estate**

The claims from which it seeks immunity are not property of the estate. Under Sections 362(a)(3) and 541 of the Code, the Trustee has exclusive standing to assert certain types of causes of action that belong to the estate. However, bankruptcy trustees do not have standing "to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 99–100 (2d Cir. 2003).

6

The corollary to this rule also is true, and "the trustee has no right to bring claims that belong solely to the estate's creditors." *Seven Seas,* 522 F.3d at 584, citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). A bankruptcy trustee stands in the shoes of the debtor and "can only assert claims that the debtor could have asserted prior to filing for bankruptcy." *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008).

As detailed below, using this framework, there is no doubt that the claims asserted against Jaffe in the Third Party Actions are ones that the Debtor (BLMIS) did not, and could not assert against Jaffe. Those Third Party Actions are the function of Jaffe's individual interactions and representations to specific investors, and the duties that pertain to those interactions. In contrast, the Trustee's claims arose from the transfers to Jaffe from BLMIS.

      **a)**      **Determining Whether The Claim Belongs To The Estate Depends Upon Whether The Injury Is Generalized To All Creditors**

In assessing the law, this Court has recognized that "if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Fox/Picower,* 429 B.R. at 431, quoting *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir.1994) (citations omitted). See also *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2d Cir. 1995) (holding that a bankruptcy trustee is barred from pursuing claims for injuries particularized to certain creditors).

The focus of the inquiry is the "particularize injury" and the nature of the relief available on the claim:

> The Second Circuit has held that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."

7

*Fox/Picower*, 429 B.R. at 431, quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989). On the other hand, "if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Fox/Picower*, 429 B.R. at 431, quoting *Schertz-Cibolo-Universal City, Indep. Sch. Dist*, 25 F.3d at 1284 (citations omitted).

      **b)**      **The Third Party Actions Are Identical To The Claims In *Seven Seas* And Dissimilar To The *Fox/Picower* Claims That This Court Enjoined**

Jaffe wrongly attempts to analogize the Third Party Actions to those claims before this Court in *Fox/Picower*. However, the claims at issue in *Fox/Picower* bear no semblance to the claims at issue in the Third Party Actions, as they are fundamentally different in every critical aspect identified by the Court in that order. Instead, the Third Party Actions fall squarely in the *Seven Seas* category of claims that this Court's Order noted would not be deemed to be property of the estate.

The specific elements that the Court identified as critical to finding that the *Fox/Picower* were property of the estate do not exist here. In assessing the *Fox/Picower* claims, this Court identified the fact that the plaintiffs had no individual contact or connection to the defendant (which the Court referred to as "privity"), and that as a result, the defendants were not alleged to have owed plaintiffs a separate duty, a fact that precluded an individualized injury:

> "The Florida Plaintiffs are not seeking to redress a particularized injury or alleging harm caused directly to them by the Picower Defendants. In substance, the Florida Actions seek to redress the depletion of the BLMIS customer property fund, a harm that derivatively injures all customer claimants in the BLMIS liquidation. In no way were the Florida Plaintiffs in privity with the Picower Defendants; rather, they were directly invested with BLMIS. Nowhere do the Florida Plaintiffs contend that the Picower Defendants owed a separate duty, or caused a separate harm, particularly to them. . .."

*Fox/Picower*, 429 B.R. at 431-32.

The Court also evaluated the sort of claims in which privity and individual damages were found to exist in *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008). *Seven Seas* involved allegations of fraud by investors, bondholders, had purchased securities from the debtor. Following the debtor's bankruptcy, the plaintiffs alleged that they had been induced to acquire the bonds through the debtor's fraud with another creditor, Chesapeake, and the misrepresentations made by Chesapeake. *Id*. The Court of Appeals rejected the contention that plaintiffs' claims against the entity that had conspired with the debtor were claims that only the debtor could bring. Instead, it held that the claims were held by the entities that had relied upon Chesapeake's misrepresentations in making their specific purchases. As this Court summarized, "[t]he Fifth Circuit held that the Bondholders' claims against Chesapeake were not property of the estate because the alleged injuries were not derivative of an injury to the debtor, and thus could not be asserted by the chapter 11 trustee." (*Fox/Picower*, 429 B.R. at 433).

In distinguishing the claims at issue in *Fox/Picower* from those at issue in the *Seven Seas* action, this Court recognized that the individual claims in *Seven Seas* were not property of the estate because those claims were based upon individual misrepresentations made to induce their purchases. As a result, the investors suffered injuries distinct from those suffered by the debtor:

> Unlike in *Seven Seas,* where Chesapeake allegedly made the misrepresentations "to induce the [B]ondholders to purchase" the notes, which they in reliance did, the Picower Defendants did not direct their actions at the Florida Plaintiffs. *Id.* at 586. Simply put, given that only the Bondholders relied upon the misrepresentations, the injuries they suffered as a result were distinct from those suffered by the debtor, as well as by other unsecured creditors. *Id.* at 587 n. 7.

*Fox/Picower*, 429 B.R. at 433.

Like the bondholders at issue in *Seven Seas*, the Third Party Actions each proceed based upon the claimant's privity and direct dealings with Jaffe and Cohmad. Unlike other creditors

9

which had no interaction whatsoever with Jaffe or Cohmad, the claims of the Third Parties allege specific misrepresentations that induced them to become involved with the debtor. The claims also depend upon the individual duties that Jaffe, as a broker, owed to his client – duties that were not owed to the Estate and therefore could not be asserted by the estate.

The duties that Jaffe owed to the individual claimants creates a particularized injury that is distinct from the injury to creditors generally. To the extent that Jaffe's motion suggests that the claimants' injury become a "generalized injury" to the estate based upon the fact that there are other creditors who dealt with Jaffe and might have a similar claim, that argument fails:

> We also wish to dispel any notion that a claim belongs to the estate or is otherwise only assertable by the trustee merely because it could be brought by a number of creditors, instead of just one. Drawing on certain language found in *Schimmelpenninck v. Byrne* (*In re Schimmelpenninck*), 183 F.3d 347 (5th Cir.1999), Chesapeake suggests that the claims in this case allege a "generalized injury" or raise a "generalized grievance," and that the trustee, rather than the bondholders, is therefore the appropriate party to advance them.

*Seven Seas*, 522 F.3d at 588. Similarly, to the extent that Jaffe's motion relies upon the fact that Jaffe, Cohmad and BLMIS are linked in other ways, that argument too is insufficient to convert the individualized claim into one possessed by the estate:

> we recognize that the bondholders and Chesapeake are linked in a variety of ways to Seven Seas and the bankruptcy proceeding. Both Chesapeake and the bondholders are creditors of Seven Seas, and the bondholders' claims against Chesapeake ultimately arise from the fact that the bondholders invested in the unsecured notes issued by Seven Seas. However, the existence of common parties and shared facts between the bankruptcy and the bondholders' suit does not necessarily mean that the claims asserted by the bondholders are property of the estate

*Id.*, 522 F.3d at 585.

In the end, the Third Party Actions are based upon specific duties owed to them by Jaffe, duties that were not owed to the BLMIS Estate. Because the BLMIS Estate was not owed those duties, it could not bring those claims, and indeed, it did not bring those claims. Instead, the

trustee brought only those limited claims that the BLMIS Estate possessed against Jaffe. The resolution by the Trustee of those limited claims does not impair the redress that claimants have against Jaffe based upon Jaffe's breach of the specific duties he owed the individual claimants who interacted with him.

### 2. Recovery In The Third Party Actions Will Not Impair The Net Equity Order

Jaffe next argues that an order is required to protect the Court's "Net Equity Order." (Jaffe Mem. at 17). Although Jaffe's memorandum quotes extensively from the Court's Order, and makes vague allusions to the Third Party Actions "circumventing" that Order (see Jaffe Mem. at 17), his argument fails to identify any manner in which Third Party Actions are inconsistent with this Court's Net Equity Order.

The Court's Net Equity Order interpreted the scope of the relief to which customers are entitled from the Securities Investor Protection Corporation under the statutory language of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"). *In re Bernard L. Madoff investment Securities*, 424 B.R. 122, 142 (Bankr. S.D.N.Y. 2010). In particular, the issue focused on the customers right to share *pro rata* in defined "customer property" to the extent of their Net Equity (as defined in section 78lll(11) of SIPA, 15 U.S.C. §78lll(11)). *Id.*, 424 B.R. at 134 n.4.

SIPA addresses the relief available from the "customer property" marshaled by the Securities Investor Protection Corporation. It does not purport to cap individual recoveries available to claimants through non-"customer property" resources available to the SIPA trustee. It is respectfully submitted that the Court's Order interpreting the quantification of customer claims to the Securities Investor Protection Corporation does not have any bearing on the availability of recoveries outside the framework of SIPA. Therefore, the prosecution of Third Party Actions to supplement the recovery obtained from the Estate pursuant to SIPA is not at all

11

inconsistent with the Net Equity Order. Consequently, there is no basis upon which to enjoin the Third Party Actions pursuant to Section 105.

## IV. CONCLUSION

For the reasons set forth herein, the Third Parties respectfully submit that the Court should deny the motion of Jaffe requesting an Order Enjoining Prosecution of the Third Party Actions.

Dated: New York, New York
January 21, 2011

HINCKLEY & HEISENBERG LLP

By: _____
Christoph C. Heisenberg
A. Peter Lubitz

501 Fifth Avenue, Suite 506
New York, New York 10017
Phone: (212) 759-4933

and

OAKES & FOSHER, LLC
Richard B. Fosher (not admitted)
2000 Innerbelt Business Center Drive
St. Louis, Missouri 63114
Phone: (314) 428-7600

Attorneys for Third Parties