Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Hearing Date: March 10, 2011
Hearing Time: 10:00 a.m. EST
Objection Deadline: March 3, 2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING AN AGREEMENT BY AND BETWEEN THE
TRUSTEE AND HADASSAH, THE WOMEN'S ZIONIST ORGANIZATION OF
AMERICA, INC. AND HADASSAH MEDICAL RELIEF ASSOCIATION, INC.**

300145959

TO:   THE HONORABLE BURTON R. LIFLAND
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, as trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq. ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement agreement (the "Agreement")[1] by and between the Trustee and Hadassah, The Women's Zionist Organization Of America, Inc. ("HWZOA") and Hadassah Medical Relief Association, Inc. ("Hadassah Medical" and, together with HWZOA, "Hadassah") pursuant to which Hadassah will pay to the Trustee $45 million in full and final settlement of all claims that the Trustee, BLMIS and the consolidated estate have against Hadassah, and, in support thereof, the Trustee respectfully represents as follows:

## BACKGROUND

1.   On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791).

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

[2] In this case, the Filing Date is the date on which the United States Securities & Exchange Commission ("SEC") commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. See SIPA § 78lll(7)(B).

300145959

The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

300145959

## THE CLAIMS AGAINST HADASSAH

6. Hadassah's first contact with BLMIS occurred in or around the first quarter 1988, when it received an initial $4 million pledge, later increased to $7 million, (the "Israeli Foundation Funds") from an Israeli foundation, in support of basic research laboratories in continuity with the Medical Biophysics and Nuclear Medicine Department at a Hadassah medical facility in Israel. The Israeli foundation specified to Hadassah that Madoff and BLMIS would manage the Israeli Foundation Funds and Hadassah could make withdrawals as needed from the Israeli Foundation Funds held at BLMIS, to support the research program. Prior to that time, Hadassah had no relationship with Madoff or BLMIS.

7. On or around April 13, 1988, Hadassah made its first investment (other than the Israeli Foundation Funds) with BLMIS, in the approximate amount of $5 million. Over the next eight years, Hadassah additionally deposited in its accounts approximately $28 million of principal in BLMIS.

8. According to BLMIS's records, Hadassah held three accounts (Nos. 1H0005, 1H0006 and 1H0067) with BLMIS, with the names "Hadassah The Women's Zionist Organization of America Inc." and "Hadassah Medical Relief Association, Inc." (individually "Account" and collectively the "Accounts").

9. The Trustee's claims against Hadassah include, but are not necessarily limited to, claims under 11 U.S.C. §§ 544(b), 548, 550 and 551 and under the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) (collectively, the "Avoiding Powers Claims").

10. Throughout this SIPA liquidation proceeding, consistent with SIPA, the Trustee has calculated the "net equity" of each BLMIS account based upon actual dollars

invested in Madoff's scheme: the cash deposited, less any amounts withdrawn over the life of the account (the "net investment" or "cash in/cash out" method). Amounts withdrawn in excess of amounts deposited constitute fictitious profits. In the six-year period preceding the Filing Date, the Trustee has determined that Hadassah received fictitious profits from BLMIS in the total gross amount of $77 million (the "Transfers").

11.    The Trustee believes that all of the Transfers are avoidable. Hadassah has informed the Trustee that it disputes the legal and factual basis of the Trustee's claims against them, including the Avoiding Powers Claims, and would assert certain defenses to the Trustee's claims.

12.    Hadassah has not filed any customer claims with the Trustee.

### SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

13.    In February 2010, Hadassah, with the aid of its counsel, initiated discussions with the Trustee aimed at resolving the Trustee's claims. Hadassah and the Trustee entered into a confidentiality agreement pursuant to which Hadassah responded to the Trustee's document and information requests on a confidential basis. Hadassah cooperated with the Trustee and facilitated the Trustee's investigation by providing detailed information regarding its current and historical financial statements (the "Financial Statements"), BLMIS investment history, internal corporate matters, detailed records regarding the Hospital Project (as defined below) and making its investment committee members, accountants and officers available for examination by the Trustee's counsel. This cooperation has sped the resolution of the matter.

14.    The Trustee has conducted a comprehensive investigation of the Accounts and the dealings between Hadassah and BLMIS. This investigation includes, but is not

300145959

limited to, the review and analysis of Hadassah and BLMIS transactional history, as reflected in the BLMIS account statements, correspondence and other records and documents available to the Trustee; a Bankruptcy Rule 2004 examination of Sheryl Weinstein, former chief financial director of Hadassah; interviews with present and former senior members of the Hadassah investment committee that reviewed Hadassah's investments in BLMIS; meetings with accountants and officers of Hadassah to review the Financial Statements, and other documents and information provided by Hadassah to the Trustee; meetings with counsel for Hadassah; analysis by forensic accountants of the Financial Statements and other documents, information and materials produced by Hadassah; and review of third-party records and documents.

15. The Trustee and Hadassah entered into an agreement to toll the applicable statutes of limitations in order to facilitate the settlement negotiations between the parties.

16. A review of the Financial Statements and other information provided by Hadassah supports Hadassah's contention that it does not have sufficient assets and free cash to both satisfy the potential judgment the Trustee could obtain in a lawsuit asserting his Avoiding Powers Claims and continue to meet its charitable mission domestically and abroad, including completing construction and continued support of the Hospital Project.

17. Hadassah has undertaken, in conjunction with the State of Israel, to build a new hospital in Jerusalem, Israel (the "Hospital Project") to replace an existing Hadassah hospital that is aging and reaching the end of its useful life. Construction has begun on the Hospital Project and the total cost to Hadassah of the Hospital Project is over $318 million, plus an additional $45 million for equipment and furnishings, with much of it payable over the next three years. Hadassah will continue to have long term financial obligations to the

Hospital Project and other Hadassah medical facilities after completion of the Hospital Project.

18. After a review of the relevant records, including records not previously available to the Trustee, and a consideration of the uncertainty inherent in any litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than proceed to litigation.

### THE AGREEMENT

19. The principal terms and conditions of the Agreement are generally as follows (as stated, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[3]

- Within 60 business days from the date the Approval Order becomes a final and non-appealable order, Hadassah will pay to the Trustee for the benefit of the fund of customer property, the sum of $45,000,000.00, in full and final settlement of all Avoiding Powers Claims and all other claims that could have been asserted by the Trustee, BLMIS and the consolidated estate against Hadassah (the "Settlement Payment").

- The Trustee will release, acquit and absolutely discharge Hadassah of and from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee, BLMIS and the consolidated estate against Hadassah, including, but not limited to those claims, that are based on, arise out of or relate in any way to BLMIS or the Accounts. The release becomes effective upon receipt by the Trustee of the Settlement Payment.

- Hadassah will release, acquit and absolutely discharge the Trustee and all his agents and BLMIS and its estate, of and from any and all actions or causes of action asserted or unasserted, known or unknown, now existing or arising in the future in any way related to the affairs of

---

[3] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

BLMIS or the Accounts. The release becomes effective upon receipt by the Trustee of the Settlement Payment.

- Hadassah will submit to the Bankruptcy Court's jurisdiction with respect to any disputes arising out of or relating to the Agreement.

- Hadassah represents and warrants to the Trustee, to the best of its knowledge, that the Financial Statements provided to the Trustee are true and accurate as of the date thereof. Hadassah acknowledges that the Trustee has relied upon their representations and financial disclosures contained in the Financial Statements in entering into the Agreement.

- All prior agreements between Hadassah and BLMIS will be terminated as of the date of the Agreement, except the Trustee shall comply with obligations to return documents and information to Hadassah under the confidentiality agreement.

## RELIEF REQUESTED

20.     By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

21.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *accord*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

22.     The Second Circuit has stated that a bankruptcy court, in determining

whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) ( quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

23. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i) the probability of success in the litigation;

(ii) the difficulties associated with collection;

(iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv) the paramount interests of the creditors.

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. at 122 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

24. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also

be considered. *Nellis v. Shugrue*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

25.  The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness and, accordingly, the Agreement should be approved by this Court. The Agreement is a global settlement that resolves all issues regarding the Trustee's claims against Hadassah without the need for protracted litigation against an historic charitable organization dedicated to education, medical relief and care and other worthy causes both domestically and abroad. As a result of such litigation, the Trustee would be indefinitely delayed in distributing to victims the significant dollars this Agreement recovers, favoring settlement and immediate payment to the Trustee. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶¶ 5, 6. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.")

26.  Hadassah has asserted a number of defenses and has challenged the assertions made by the Trustee regarding the transfers from BLMIS to Hadassah. While the Trustee is confident of his position, given the complexities and risks involved in proceeding with litigation and the potential collectability issues associated therewith, the Trustee has determined that the proposed settlement with Hadassah represents a fair compromise of the Avoiding Powers Claims. While the Trustee believes that he would have prevailed in recovering all transfers to Hadassah, in the instant case the litigation risk and potential dissolution of an historic charitable organization, nominated in 2005 for a Nobel Peace Prize, outweighs any potential additional recovery from Hadassah. (Picard Affidavit, ¶ 5).

27.  The ability to avoid the time and uncertainty associated with litigating this

300145959

matter, combined with the fact that the Agreement will result in a substantial recovery makes the settlement embodied by the Agreement extremely beneficial to BLMIS stakeholders.

28. The Agreement also furthers the interests of the customers of BLMIS by adding to the fund of customer property. (Picard Affidavit, ¶ 8). Specifically, as a result of the Agreement, when combined with prior recoveries by the Trustee, more than $2.6 billion will be available for distribution to BLMIS customers with allowed claims.

29. In sum, the Trustee submits that the Agreement should be approved for two reasons (a) because it represents a reasonable compromise of the Avoiding Powers Claims that benefits the estate and the customers of BLMIS and (b) to avoid burdensome and time consuming litigation with a historic charitable organization, litigation which would result in the demise of the organization and its worthy causes. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## Notice

30. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; and (iv) the United States Attorney for the Southern District of New York. The Trustee shall also serve, by way of the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

300145959

Dated: New York, New York
      February 17, 2011

Of Counsel:

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
John Siegal
Email: jsiegal@bakerlaw.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com
Lesley F. Portnoy
Email: lportnoy@bakerlaw.com

Respectfully submitted,

/S/ Marc E. Hirschfield
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*