# EXHIBIT A

## FORM OF AGREEMENT BETWEEN
## TRUSTEE AND HADASSAH, THE WOMEN'S ZIONIST ORGANIZATION OF AMERICA, INC. AND HADASSAH MEDICAL RELIEF ASSOCIATION, INC.

300145959

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of February 16, 2011 by and between Irving H. Picard, in his capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case under the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and Hadassah, The Women's Zionist Organization of America, Inc. ("HWZOA"), and Hadassah Medical Relief Association, Inc ("Hadassah Medical") (collectively the "Transferees"), on the other hand.  Trustee and Transferees shall be hereafter referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008, the United States Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 12, 2008, the District Court entered an order which, among other things, appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS));

**WHEREAS**, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging,

*inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed Trustee as the trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding");

WHEREAS, pursuant to section 78fff-1(a) of SIPA, Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA Proceeding to the extent consistent with SIPA;

WHEREAS, under SIPA, Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers in satisfaction of allowed customer claims, including through the recovery of preference payments and fraudulent transfers made by BLMIS ("Avoidable Transfers");

WHEREAS, Trustee's claims against transferees who received Avoidable Transfers from BLMIS arise under sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 et seq. (McKinney 2001)) and other applicable laws;

WHEREAS, Transferee HWZOA is a not-for-profit corporation headquartered in New York, New York and was incorporated under the laws of the State of New York in 1922.

HWZOA fulfills its charitable mission through a variety of organizations, including Transferee Hadassah Medical, which supports charitable works both domestically and abroad. Transferee Hadassah Medical is a not-for-profit corporation headquartered in New York, New York and was incorporated in the State of New York in 1925. The Transferees are recognized by the IRS as exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code as charitable organizations;

**WHEREAS,** Transferees are involved in the support and development of medical facilities, including the current construction of a new 19 story hospital in the State of Israel, and have a stated mission of furthering and supporting research in the medical sciences and providing medical care to needy persons in the State of Israel, among other things;

**WHEREAS,** Trustee alleges that Transferees received Avoidable Transfers in the minimum aggregate amount of $77,000,000.00 United States Dollars in connection with BLMIS Account Nos. 1H0005, 1H0006 and 1H0067 (the "BLMIS Accounts)";

**WHEREAS,** prior to entry into this Agreement, the Parties held extensive discussions and negotiations, exchanged a significant volume of documentation and information, in particular, regarding the Transferees' history, philanthropic mission and work, and current and anticipated future financial condition;

**WHEREAS,** to facilitate those discussions, the parties entered into an agreement to toll the statute of limitations;

**WHEREAS,** the Parties desire to compromise and settle any disputes and release any claims relating in any way to BLMIS, the BLMIS Accounts, and the alleged Avoidable Transfers without the expense, delay and uncertainty of litigation;

300145961                                  3

**WHEREAS**, the Trustee, in the exercise of his business judgment, has concluded that the resolution of the alleged Avoidable Transfers on the terms set forth herein is (i) fair and equitable, (ii) a reasonable resolution of the alleged Avoidable Transfers, and (iii) in the best interests of the BLMIS estate, its customers and creditors, and all other parties-in-interest.

**NOW THEREFORE**, in consideration of the foregoing, the covenants and releases herein, and other good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1. <u>Settlement Payment Obligation</u>. In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration (including, without limitation, the release set forth in <u>Section 2</u>), the receipt and sufficiency of which is hereby acknowledged, and subject to entry of the Approval Order (as defined in <u>Section 6</u> hereof) Transferees shall pay to Trustee, within 60 business days of the Approval Order becoming a final and non-appealable order, the amount of $45,000,000.00 United States Dollars (the "<u>Settlement Payment</u>") by (i) wire transfer of immediately available funds to the account specified on <u>Schedule 1</u> attached hereto or (ii) bank or cashier's check made payable to Trustee, provided that satisfaction of Transferees' obligations hereunder shall be conditioned on the collection of such funds by Trustee.

2. <u>Release by Trustee</u>. In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, Trustee, on behalf of himself, and BLMIS and its estate, and their predecessors, successors, assigns, agents, attorneys, advisors, representatives, insurers, subsidiaries, affiliates, stockholders, officers, directors and employees, releases, remises and forever discharges each of the

Transferees and each of their predecessors, successors, parents, subsidiaries, affiliates, controlled entities, divisions, officers, present and former directors, members, partners, principals, employees, agents, shareholders, assigns, heirs, executors, administrators, trusts, trustees, and counsel (all of the foregoing, excluding the Transferees, shall be the "Transferee Released Parties") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known, that are, have been, could have been, or might in the future be, asserted by Trustee against Transferees based on, arising out of, or relating in any way to BLMIS, the SIPC Proceeding, the BLMIS estate, the BLMIS Accounts or the Avoidable Transfers. This release shall become effective upon receipt by the Trustee of the Settlement Payment. Notwithstanding anything set forth in the foregoing release, with respect to the Transferee Released Parties, the release is and shall only be construed as a release of a claim or cause of action arising out of the BLMIS Accounts or Avoidable Transfers.

3.  Release by Transferees. Transferees on behalf of themselves and their predecessors, successors, assigns, agents, attorneys, advisors, representatives, insurers, subsidiaries, affiliates, stockholders, officers, directors and employees, releases, remises and forever discharges (a) the Trustee, (b) all of Trustee's attorneys, professionals, agents and consultants and (c) BLMIS and its estate, and each of their predecessors, successors, parents, subsidiaries, affiliates, controlled

entities, divisions, officers, present and former directors, members, partners, principals, employees, agents, shareholders, assigns, heirs, executors, administrators, trusts, trustees, and counsel (all of the foregoing, excluding the Trustee shall be the "Trustee Released Parties") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known, that are, have been, could have been, or might in the future be, asserted by Transferees against the Trustee based on, arising out of, or relating in any way to BLMIS, the SIPC Proceeding, the BLMIS estate, the BLMIS Accounts or the Avoidable Transfers. This release shall become effective upon receipt by the Trustee of the Settlement Payment. Notwithstanding anything set forth in the foregoing release, with respect to the Trustee Released Parties, the release is and shall only be construed as a release of a claim or cause of action arising out of the BLMIS Accounts or Avoidable Transfers.

4. <u>Representations and Warranties; Survival</u>.

(a) Trustee hereby represents and warrants to Transferees that he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder.

(b) Each Transferee hereby represents and warrants to Trustee that: (i) each has the full power, authority and legal right to execute and deliver this Agreement and to perform its

obligations hereunder; (ii) the execution and delivery of this Agreement and the performance by each Transferee of its obligations hereunder have been duly and validly authorized by all necessary action on the part of each Transferee; (iii) this Agreement has been duly executed and delivered by each Transferee and constitutes the valid and binding agreement of each Transferee, enforceable against each Transferee in accordance with its terms; (iv) in executing this Agreement, each Transferee has done so with the full knowledge of any and all rights that each Transferee may have with respect to the controversies herein compromised, and each Transferee has received independent legal advice from its attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the matters that each Transferee releases herein, and each Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that each Transferee releases herein.

(c)     Each Transferee hereby represents and warrants to the Trustee, to the best of its knowledge, that the financial statements provided to the Trustee by such Transferee in anticipation of entry into this Agreement (the "<u>Financial Statements</u>") are true and accurate as of the date thereof and, except as set forth on such Financial Statements, documentation and information given to the Trustee, such Transferee has no other material assets as of the date thereof. Transferees acknowledge that the Trustee has relied upon the representations and financial disclosures contained in the Financial Statements in entering into this Agreement. The Trustee agrees to accept the representations and disclosures contained in the Financial Statements and to refrain from conducting additional discovery into Transferee's assets.

(d)    Each of the representations and warranties set forth in this Section 4 shall survive indefinitely.

5.    Termination of Agreements with BLMIS. Any and all prior agreements between Transferees and BLMIS are hereby terminated as of the date of this Agreement, except that the Trustee shall comply with his obligations under a March 12, 2010 letter agreement to return Transferees documents and information.

6.    Bankruptcy Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties on the date that the Bankruptcy Court's order approving this Agreement (the "Approval Order") pursuant to a motion pursuant to, *inter alia*, Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 ("Settlement Motion") to be filed by the Trustee becomes a final non-appealable order. The form of the Approval Order shall be subject to the Transferees' reasonable approval. The Trustee shall use his reasonable best efforts to obtain such approval as promptly as practicable after the date of this Agreement. The Trustee shall provide the Transferees with a draft of the Settlement Motion for approval of this Agreement, which shall be subject to the Transferees' reasonable approval. If this Agreement does not become effective or the Approval Order, or any part thereof, is overturned on appeal, (a) this Agreement (other than this Section and Sections 13, 14 and 17(c)) shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this Section and Sections 13, 14 and 17(c)) shall be null and void, (c) neither the Trustee nor the Transferees may use or rely on any such statement, admission, consent or agreement in any public statement or litigation, arbitration, hearing or other proceeding involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding, or any case or proceeding relating to BLMIS or Madoff, or in any other

court, hearing, proceeding or tribunal and (d) the Settlement Payment, if already paid to the Trustee, shall be returned to the Transferees.

7.  No Admission of Wrongdoing. This Agreement is a compromise and settlement of the matters set forth herein and is the product of arms-length negotiations. The Parties understand and agree that the Settlement Payment made and releases provided herein, and other consideration exchanged in connection with this Agreement, are not, and are not to be construed as, an admission of liability or wrongdoing on the part of those Parties making such Settlement Payment(s), providing such releases and exchanging such consideration.

8.  Further Assurances. Each Party shall execute and deliver any document(s) or instrument(s) reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.  Entire Agreement. This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10. Amendment; Waiver. This Agreement may not be terminated, amended or modified in any way except by written instrument signed by the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11. Assignment. This Agreement may not be assigned by any Party without the prior written consent of the other Party or Parties through their respective counsel.

12. Successors. This Agreement shall be binding upon and inure to the benefit of each Party and its respective successors and permitted assigns.

300145961                                                    9

13.    <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties through their respective counsel. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

14.    <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

15.    <u>Counterparts; Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

16.    <u>Governing Law</u>. This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principle of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.

17.    <u>JURISDICTION; WAIVER OF JURY TRIAL</u>.

(a)    THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT REOPENED,

300145961                 10

THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT.

(c)    Prior to a the Approval Order becoming a final and non-appealable order and this Agreement becoming effective, the Transferees shall not be deemed, by their having executed this Agreement or participated in any hearings, to have (a) consented to the jurisdiction of the Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Transferees, or (b) waived or released their right to trial by jury.

18.    Expenses.  Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys, accountants and other advisors.

19.    Notices.  All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail, return receipt requested, or by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto.  A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.  All such notices, requests, demands, consents and other communications shall be deemed to have been duly given or sent two (2) days

following the date on which mailed, or on the date on which delivered by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

20. <u>No Third Party Beneficiaries</u>.  Except as expressly provided in <u>Section 2</u> or <u>Section 3</u>, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

21. <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a section is to a section of this Agreement.  "Including" is not intended to be a limiting term.

**[The next page is the signature page]**

IN WITNESS WHEREOF, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**TRUSTEE**

The Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile No.: (212) 589-4201

By: Irving H. Picard, the Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the substantively consolidated bankruptcy case of Bernard L. Madoff

/s/ Irving H. Picard
Irving H. Picard

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: John Siegal
Facsimile No.: (212) 589-4201

**TRANSFEREE**

Hadassah, The Women's Zionist Organization Of America, Inc.

Address:
Hadassah, The Women's Zionist Organization Of America, Inc.
50 West 58th Street
New York, NY 10019
Attention: Sheryl Zeligson

By: /s/ Nancy Falchuk

Name: Nancy Falchuk
Title: National President

With copies to:
Fulbright & Jaworski LLP
666 Fifth Avenue
New York, NY 10103
Attention: David Barrack and Leonard Leiman

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

300145961                                    13

**TRANSFEREE**

                **Hadassah Medical Relief Association, Inc.**

Address:
Hadassah Medical Relief Association, Inc.    By: /s/ Nancy Falchuk
50 West 58th Street    Name: Nancy Falchuk
New York, NY 10019    Title: National President
Attention: Sheryl Zeligson

With copies to:
Fulbright & Jaworski LLP
666 Fifth Avenue
New York, NY 10103
Attention: David Barrack and Leonard Leiman

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

300145961

## Schedule 1

## WIRING INSTRUCTIONS

## REDACTED

300145961