**BECKER & POLIAKOFF LLP**  
Helen Davis Chaitman  
HCHAITMAN@BECKER-POLIAKOFF.COM  
45 Broadway  
New York, New York 10006  
Telephone  (212) 599-3322  

*Attorneys for Marsha Peshkin*  
*and a large group of other customers*

Hearing Date:   March 11, 2011 at 10:00 a.m.  
Objection Deadline:  March 4, 2011

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                                             Plaintiff,<br><br>                         v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                                             Defendant. | Case No.:  08-01789 (BRL)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                                             Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF CUSTOMERS' MOTION TO SET ASIDE THE ORDER APPROVING THE TRUSTEE'S SETTLEMENT WITH THE LEVY HEIRS FOR FAILURE TO DISCLOSE MATERIAL INFORMATION**

Marsha Peshkin and a large group of other customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") ("Movants"),[1] submit this memorandum of law in support of their motion to vacate the February 18, 2010 order (Doc # 1964) approving the Trustee's settlement with Jeanne Levy-Church and Francis N. Levy, the heirs of Norman F. Levy (the

---

[1] Becker & Poliakoff LLP files this motion on behalf of all of the Madoff customers listed on Exhibit A to the accompanying Declaration of Helen Davis Chaitman ("Chaitman Decl.").

"Levy Heirs"), pursuant to Federal Rule of Civil Procedure 60 and Federal Rule of Bankruptcy Procedure 9024. [2]

**PRELIMINARY STATEMENT**

Movants were BLMIS customers who lost their life savings as a result of Madoff's Ponzi scheme. It is in their best interests that the Trustee obtain the maximum recovery possible from Madoff's co-conspirators. Based on information that has recently been disclosed, Norman Levy financed Madoff's Ponzi scheme during the period from 1992 through 2001 in an amount exceeding $100 billion. This stunning fact was not disclosed by the Trustee at the time he sought approval of his settlement with the Levy Heirs, despite the fact that the Trustee, by that time, had the benefit of approximately $100 million of forensic accounting analysis of BLMIS' business records. On the contrary, in his motion, the Trustee praised the Levy Heirs for coming forward and offering to settle all claims against them for a mere $220 million. We now know, and presumably the Trustee knew a year ago, that:

A. In 1997, Levy transferred $7 billion to BLMIS and BLMIS transferred $7 billion to Levy.

B. In 1998, Levy transferred $10 billion to BLMIS and BLMIS transferred $10 billion to Levy.

C. In 1999, Levy transferred $15 billion to BLMIS and BLMIS transferred $15 billion to Levy.

D. In 2000, Levy transferred $23 billion to BLMIS and BLMIS transferred $23 billion to Levy.

E. In 2001 Levy transferred $35 billion to BLMIS and BLMIS transferred $35 billion to Levy.[3]

---

[2] A copy of the Order is attached as Exhibit B to the Chaitman Decl.

[3] See the January 24, 2011 letter from SIPC president Stephen Harbeck to Congressman Scott Garrett, Chair of the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, at 14-15. A copy of the Letter is attached as Exhibit G to the Chaitman Decl.

These transfers were eight times greater than the combined transfers of all other BLMIS customers during this period. *Id.*

During 2002, BLMIS initiated 318 separate transfers from its account at Chase to Levy's account at Chase in the precise amount of $986,301 (collectively amounting to a total of $313,643,718 in transfers). That constitutes more than one transfer per day that Chase was open for business. [4]

In December 2001, BLMIS received daily checks from Levy in the amount of $90 million.[5]

Despite these alarming facts, on January 27, 2010, when the Trustee announced his settlement with the Levy Heirs, he praised them for offering to settle for $220 million.[6]

> I am very pleased that the Levys came to us to discuss the claims that BLMIS has against them and that they agreed to return to BLMIS $220 million, the amount we requested, for the benefit of the victims of Madoff's fraud. **The Levys have acted honorably and are to be commended. We hope that others will follow their example.** [7]

On that same day, the Trustee filed a motion for approval of the Levy settlement (the "Motion") in which he commended the Levy family on its "good faith negotiations" that led to the Settlement.[8] He praised the Levys for being "forthright and sincere in their desire to do the right thing" and "appreciate[d] the manner in which the Levys cooperated with him to obtain the

---

[4] Trustee's complaint in *Picard v. JPMorgan Chase & Co.*, *et als.,* (Adv. Pro. No. 10-04932) (the "Complaint") at para. 224. Relevant excerpt from the Complaint is attached as Exhibit C to the Chaitman Decl.

[5] *Id.* at para. 231.

[6] *See* Press Release of Irving H. Picard, "MADOFF TRUSTEE ANNOUNCES SETTLEMENT OF $220 MILLION," dated January 27, 2010, available at http://www.madofftrustee.com/News.aspx (the "Levy Family Press Release"), at 1. A copy of the Levy Family Press Release is attached as Exhibit D to the Chaitman Decl.

[7] *See* the Levy Family Press Release, at 1.

[8] *See* Motion at para. 11. A copy of the Motion is attached as Exhibit E to the Chaitman Decl.

3

information he needed to arrive at the settlement." [9] He expressed the hope "that other BLMIS customers will come forward, follow suit, and similarly engage in cooperative and candid settlement discussions."[10]

On February 18, 2010, this Court held a hearing on the Motion at which Baker & Hostetler, LLP ("B&H"), appearing on behalf of the Trustee, made no disclosure of the fact that Mr. Levy had financed the Ponzi scheme to the tune of over $100 billion. On the contrary, B&H praised the Levys for reaching out to the Trustee and reported to the Court that the Levys "felt badly about having other people's money and they wanted to return to the Trustee the profits they received, which was really other people's money." Indeed, B&H stated that Madoff took advantage of Mr. Levy by misappropriating $250 million as the executor of Mr. Levy's estate. [11] The Trustee submitted an affidavit to the Court in support of the Motion "in which he stated that he believed the settlement was appropriate in his business judgment." [12]

## ARGUMENT

Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, allows the Court to set aside orders and judgments based upon "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any

---

[9] *See id.*

[10] *Id.*

[11] *See* Transcript of February 18, 2010 Hearing on Motion (the "Hearing Transcript"), at 4, 5 and 7. A copy of the Hearing Transcript is attached as Exhibit F to the Chaitman Decl.

[12] *Id.* at 7.

4

08-01789-cgm    Doc 3861    Filed 02/18/11    Entered 02/18/11 15:23:08    Main Document
Pg 5 of 7

other reason that justifies relief." Fed. R. Civ. P. §60(b). Sufficient grounds exist to set aside the Order under any of the above provisions.

Had Movants been aware of the facts concerning Levy's role in financing the Ponzi scheme, they certainly would have objected to the Levy settlement and, indeed, it is inconceivable that, had the Court been aware of these facts, the Court would have approved the settlement. In light of information that was not disclosed to the Court when it entered the Order, it should be vacated pursuant to subsection Rule 60(b)(2). To prevail under this subsection, the party must show that "'(1) newly discovered evidence is of facts existing at the time of [the prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative . . . of evidence already offered.'" *Tufts v. Corp. of Lloyd's*, 981 F. Supp. 808, 812 (S.D.N.Y. 1996) (quoting *Mancuso v. Consol. Edison Co. of N.Y., Inc.*, 905 F. Supp. 1251, 1264 (S.D.N.Y. 1995)).

While the Trustee had the benefit of over $100 million of forensic accounting analysis of BLMIS' business records at the time he sought approval of the settlement, Movants were not permitted to take any discovery of BLMIS. Thus, they could not possibly have known these facts. Therefore, the Movants' first opportunity to learn of Levy's participation in the fraud was after disclosure of Mr. Harbeck's January 24, 2011 letter. Clearly, the facts set forth in this letter are sufficient "to change the result of the former ruling," and are, therefore, grounds for relief from the Order. *Id.*

The Trustee's failure to disclose material information pertaining to the Levy settlement warrants relief from the Order. Rule 60(b)(3) allows Movants to vacate an order based on fraud,

5

misrepresentation or other misconduct of a party. "Ordinarily clause (3) is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981). Here, the Trustee concealed the fact that Levy played a major role in financing Madoff's Ponzi scheme. At a minimum, such information required disclosure to the Court. "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion . . . ." *In re Refco Inc.*, 2006 WL 3409088, at *7 (S.D.N.Y. Nov. 16, 2006) (emphasis added); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993) (holding that "[t]he record . . . supports the reasoned decision . . . to approve the settlement, for it indicates that the Bankruptcy Court took into account and weighed the factors necessary for the determination of the appropriateness of the settlement.") (emphasis added).

The Trustee's failure to disclose to the Court the crucial information he possessed about Levy, including the "highly unusual transactions"[13] he engaged in with BLMIS for many years, was tantamount to a misrepresentation to the Court of Levy's innocence. Had this information been available to the Court, clearly, a settlement of $220 million would not have been approved.

Substantial justice also requires that the Order be set aside. Federal Rule of Civil Procedure 60(b)(6) permits a Court to vacate a judgment for "any other reason that justifies relief." The Second Circuit has held that Rule 60(b)(6) "should be liberally construed" in instances where its application is critical to bringing about "substantial justice." *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963). The Order prevents Movants, among other innocent BLMIS customers, from potentially recovering billions of

---

[13] *See* Complaint at para. 223-248.

dollars to compensate them for the tremendous loss incurred as a result of Madoff's Ponzi scheme.

## CONCLUSION

For the foregoing reasons, the Order should be set aside.

February 18, 2011

**BECKER & POLIAKOFF LLP**

By: /s/ Helen Davis Chaitman
Helen Davis Chaitman
45 Broadway
New York, New York 10006
(212) 599-3322

*Attorneys for Marsha Peshkin*
*and a large group of other customers*