# EXHIBIT E

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

**Hearing Date:  February 18, 2010 at 10:00 a.m.**
**Objection Deadline:  February 11, 2010**

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

               Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

               Defendant.

Adv. Pro. No. 08-1789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

---

In re:

BERNARD L. MADOFF,

Debtor.

---

**NOTICE OF MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN
AGREEMENT BY AND AMONG THE TRUSTEE AND JEANNE LEVY-CHURCH
AND FRANCIS N. LEVY**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, by and through his undersigned counsel, will move before the Honorable Burton R. Lifland, United States Bankruptcy Judge, at the United States Bankruptcy Court, the Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004, on February 18, 2010 at 10:00 a.m., or as soon thereafter as counsel may be heard, seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure approving that certain Agreement by and among the Trustee, on the one hand, and Jeanne Levy-Church and Francis N. Levy, on the other hand, as more particularly set forth in the Motion annexed hereto (the "Motion").

PLEASE TAKE FURTHER NOTICE that written objections to the Motion must be filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 by no later than **5:00 p.m. on February 11, 2010** (with a courtesy copy delivered to the Chambers of the Honorable Burton R. Lifland) and must be served upon (a) Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: Marc E. Hirschfield and (b) Munger, Tolles & Olson LLP, 355 S. Grand Ave., 35th Floor, Los Angeles, CA 90071, Attn: Ronald L. Olson. Any objections must specifically state the interest that the objecting party has in these proceedings and the specific basis of any objection to the Motion.

Dated: New York, New York
     January 27, 2010

Respectfully submitted,

*s/Marc E. Hirschfield*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

**Hearing Date: February 18, 2010 at 10:00 a.m.**
**Objection Deadline: February 11, 2010**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                 Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                 Defendant. | Adv. Pro. No. 08-1789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**APPROVING AN AGREEMENT BY AND AMONG THE**
**TRUSTEE AND JEANNE LEVY-CHURCH AND FRANCIS N. LEVY**

TO:    THE HONORABLE BURTON R. LIFLAND
       UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L.

Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through

his undersigned counsel, submits this motion (the "Motion") seeking entry of an order,

pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), approving an agreement (the "Agreement")[1] by and

among the Trustee, on the one hand, and Jeanne Levy-Church and Francis N. Levy (the

"Levys"), on the other hand, and, in support thereof, the Trustee respectfully represents as

follows:

## BACKGROUND

1.    On December 11, 2008 (the "Filing Date"),[2] the Securities and

Exchange Commission ("SEC") filed a complaint in the United States District Court for the

Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV

10791). The complaint alleged that the Debtors engaged in fraud through investment

advisor activities of BLMIS.

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

[2] Section 78*lll*(7)(B) of the Securities investor Protection Act, 15 U.S.C. §§ 78aaa et seq.
("SIPA") states that the filing date is "the date on which an application for a protective decree is filed
under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United
States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such
proceeding was commenced before the date on which such application was filed, the term 'filing
date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even
though the Application for a protective decree was filed on December 15, 2008, the Filing Date in
this action is on December 11, 2008.

2.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3.     On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i)     appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii)   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4.     At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE CLAIMS AGAINST THE LEVYS

6.     Norman F. Levy ("Mr. Levy") was a New York City commercial real

estate executive who began investing with BLMIS in the mid-1970's on behalf of himself, members of his family and certain trusts. Mr. Levy continued to invest over the years, until his death in September 2005. Prior to his death, Mr. Levy designated Madoff as an executor of his estate and upon Mr. Levy's death, Madoff was vested with power to make unilateral investment decisions regarding the estate's non-real estate assets. After Mr. Levy's death, Madoff, acting as executor, transferred more than $250 million to BLMIS from Mr. Levy's estate, essentially "stealing" this amount from Mr. Levy's heirs and beneficiaries.

7.      Prior to his death, Mr. Levy established a number of accounts at BLMIS in his name, the names of his children, and for family trusts and charitable trusts, including the Betty & Norman F. Levy Foundation (the "Foundation") (collectively, the "Levy BLMIS Account Holders"). During the six years prior to the Filing Date, the Levy BLMIS Account Holders withdrew an aggregate of approximately $305 million in excess of the amount of deposits made into such accounts (the "Six Year Transfers").[3] Of the $305 million, approximately $84 million (the "Foundation Transfers") was withdrawn by the Foundation, which maintained its own account at BLMIS that was separate and distinct from the accounts of the other Levy BLMIS Account Holders. The Levys have advised the

---

[3] At the time the Levys approached the Trustee and began discussions on a resolution of the Trustee's potential claims against the Levy BLMIS Account Holders, the Trustee had only identified account statements for the Levy BLMIS Account Holders dating back to 1995. The amount of the Six Year Transfers, and the other numbers set forth herein, represent amounts based on the data available to the Trustee at that time. The Trustee has since located and analyzed microfilm found at BLMIS's offices that provides additional account history for, among others, the Levy BLMIS Account Holders. Because the Trustee's settlement demand to the Levys was based on the older account data, and because the Trustee and the Levys were close to a settlement at the time that the additional account information became available, the Trustee determined that it would not be appropriate to make an additional demand on the Levys. The Trustee also understands that the Levys may be uncollectible for a judgment based upon the more complete account data. Accordingly, proceeding with litigation would not necessarily have yielded a higher return than the settlement contained in the Agreement.

Trustee that all of the money withdrawn by the Foundation was donated to charitable causes, that it has no significant remaining assets, and that it is now winding down its activities.

8.     The Trustee believes that the Six Year Transfers are recoverable. The Trustee believes that, of the Six Year Transfers, certain transfers made within two years prior to the Filing Date are fraudulent conveyances, recoverable by the Trustee pursuant to sections 548 and 550 of the Bankruptcy Code. See section 78fff-2(c)(3) of SIPA. Pursuant to these sections, a trustee may avoid and recover, for the benefit of the estate, any transfer of an interest of the debtor in property made by the debtor (i) with actual intent to hinder, delay, or defraud an entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; and (ii) the debtor was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. 11 U.S.C. §§ 548 and 550.

9.     Applying these sections of the Bankruptcy Code to the instant case, it is undisputed that Madoff intended to defraud the investors of BLMIS, as he admitted to doing so at the Plea Hearing. See Plea Hr'g Tr. 23:20-21. There is also ample evidence to show that BLMIS was insolvent at all times relevant hereto. In fact, the liabilities of BLMIS were billions of dollars greater than its assets.

10.     The Trustee has also asserted that the Levys may be liable to the BLMIS estate under section 544(b) and 550 of the Bankruptcy Code and the New York Uniform Fraudulent Conveyance Law (New York Debtor and Creditor Law §§ 270 – 281). See section 78fff-2(c)(3) of SIPA. Section 544(b) of the Bankruptcy Code allows a trustee to avoid a transfer that is voidable under state law. The New York Uniform Fraudulent Conveyance Law provides a six year look-back period for fraudulent transfers.

5

## SETTLEMENT DISCUSSIONS WITH THE LEVYS

11.    In the Spring of 2009, the Levys, through their counsel, approached the Trustee to try to reach an agreement with the Trustee on the Levy BLMIS Account Holders' potential liability to the Trustee. While the Levys informed the Trustee that they dispute that they or the other Levy BLMIS Account Holders had any liability to the Trustee, the Levys nevertheless engaged in good faith negotiations with the Trustee that yielded the settlement set forth in the Agreement. Throughout the discussions, the Trustee found the Levys to be forthright and sincere in their desire to "do the right thing" to negotiate a return of the fictitious profits that the Trustee had calculated the Levy BLMIS Account Holders received from BLMIS. The Trustee had the opportunity to investigate the circumstances surrounding Mr. Levy's investment with BLMIS and whenever the Trustee made inquiry of the Levys, the Trustee received answers from them to his satisfaction. The Trustee appreciates the manner in which the Levys cooperated with him to obtain information he needed to arrive at the settlement set forth in the Agreement, and the Trustee hopes that other BLMIS customers will come forward, follow suit, and similarly engage in cooperative and candid settlement discussions with him.

12.    The Trustee believes that the Six Year Transfers made to each of the Levy BLMIS Account Holders are recoverable pursuant to Bankruptcy Code provisions and state law.[4] As part of the settlement discussions, the Levys informed the Trustee that prior

---

[4] The Levys have informed the Trustee that they dispute the legal and factual bases of liability for some of the withdrawals. In particular, the Levys contend: that they do not bear any liability for their good-faith withdrawals made prior to two years before the Filing Date; that withdrawals from their Levy BLMIS Accounts were comprised of invested principal and investment earnings to which they are legally entitled as opposed to fictitious profits; and that the account balances for the Levy BLMIS Accounts were real as of December 31, 1991. Nevertheless, the Levys

*continued on the following page...*

to the Filing Date, the Foundation had contributed the funds it received from BLMIS to various charitable causes and that the Foundation has no remaining significant assets. Accordingly, given the inability to pay any judgment against it, the Trustee has determined not to pursue recovery in respect of amounts withdrawn by the Foundation.[5]  Upon making this determination, the Trustee demanded that the Levys return to BLMIS all other net amounts withdrawn by the Levy BLMIS Account Holders within the six years of the Filing Date, i.e., $220 million. The Levys have agreed to pay the amount of $220 million in full and final settlement of all claims under sections 544(b), 547, 548 and 550 of the Bankruptcy Code, and any other claims of the Trustee or the BLMIS estate against the Levys.

## THE AGREEMENT

13.     The principal terms and conditions of the Agreement are generally as follows (as stated, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[6]

- At Closing, the Levys shall pay to the Trustee for the benefit of the fund of customer property, the sum of $220,000,000.00, which is nearly one hundred percent of the amount demanded from the Levys by the Trustee, and which amount the Trustee believes equals the amounts transferred to or for the benefit of the Levys and their family members in the six years prior to the Filing Date (minus the charitable contributions discussed above).

---

*...continued from the preceding page*
wish to settle all disputes with the Trustee, and under the Agreement, they do so without admitting liability.

[5] The Trustee reserves the right to engage in discussions with the charities that received money from the Foundation about returning to the Trustee amounts they received that constitute customer property.

[6] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

- Upon payment of the above-referenced amount at Closing, the Trustee (a) will release the Levy Releasees (listed in Attachment B to the Agreement) from any and all past, present or future claims or causes of action that are, have been, could have been or might in the future be asserted by the Trustee against any of the Levy Releasees and that are based on, arise out of or relate in any way to the affairs of BLMIS or the Levy BLMIS Accounts; and (b) grant a covenant not to sue to (i) any person related by blood or marriage as of the Closing to any of the Levy Releasees (other than Mr. Levy's former son-in-law) and (ii) any entity in which any of the Levy Releasees held or hold, as of or prior to the Closing, a financial interest, in the case of (i) and (ii) for Avoiding Powers Claims but only to the extent that such person or entity is an immediate or mediate transferee of any of the Levy Releasees under section 550(b) of the Bankruptcy Code.

- Each of the Levy Releasees, through the execution by an authorized representative of a Release Subscription (the form of which is annexed to the Agreement), will release, acquit and absolutely discharge the Trustee and all his agents and BLMIS and its estate from any and all actions or causes of action asserted or unasserted, known or unknown, now existing or arising in the future in any way related to BLMIS.

- The Levys will submit to the Bankruptcy Court's jurisdiction with respect to the SIPA Proceeding and any Avoiding Power Claims.

- The Levys agree to reasonably cooperate with the Trustee in his efforts to recover funds for the BLMIS estate.

- The claims filed by Zeno F. Levy and Titus R. Levy, children of Francis N. Levy and his wife Hallie D. Cohen, will be deemed withdrawn by them.

## RELIEF REQUESTED

14.    By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

15.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under

Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. In re Ionosphere Clubs, Inc., 156 BR 414, 426 (S.D.N.Y. 1993), accord, 17 F.3d 600 (2d Cir. 1994) (citing Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

16.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied sub nom. Cosoff v. Roman, 464 U.S. 822 (1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied sub nom. Benson v. Newman, 409 U.S. 1039 (1972)); accord Nellie v. Shugrue, 165 B.R. 115, 121-22 (S.D.N.Y. 1994); In re Ionosphere Clubs, 156 B.R. at 426; In re Purified Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

17.     In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

> (i)     the probability of success in the litigation;
>
> (ii)    the difficulties associated with collection;
>
> (iii)   the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
>
> (iv)    the paramount interests of the creditors.

Nellis v. Shugrue, 165 B.R. at 122 (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993)).

18.     The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. See In re Purified Down Prods., 150 B.R. at 522; In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. Nellis v. Shugrue, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505 (quoting In re Blair, 538 F.2d 849, 851 (9th Cir. 1976)).

19.     The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness and, accordingly, the Agreement should be approved by this Court. The Agreement resolves all issues regarding the Trustee's claims against the Levys (the "Claims") without the need for protracted, costly, and uncertain litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶ 2. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.") Litigating the Claims would undoubtedly be expensive and would require a significant commitment of time by the various professionals involved in the matter.

20.     Given the cost and complexities involved in proceeding with litigation, the Trustee has determined that the proposed settlement with the Levys represents a fair compromise of the Claims.   As discussed above, the Trustee determined that proceeding against the Foundation was fruitless because of its lack of significant assets and inability to pay any judgment against it. Moreover, under the settlement, the Levys will return to the Trustee the amount that the Trustee demanded from them, $220,000,000. The Trustee believes that such amount represents nearly one-hundred percent of the amount that the Levy BLMIS Account Holders withdrew from BLMIS during the six-year period before

10

the filing (using the data available to the Trustee at the time he made the demand). The Agreement also furthers the interests of the customers of BLMIS by adding a substantial amount of money to the fund of customer property now. Id. ¶ 3.

21.    In sum, the Trustee submits that the Agreement should be approved for two reasons: (a) to avoid burdensome and expensive litigation; and (b) and because it represents a reasonable compromise of the Claims that benefits the estate and the customers of BLMIS. Accordingly, since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

### Notice

22.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) all known creditors of BLMIS. The Trustee shall also serve, by way of the ECF filing that will be made, each person or entity that has filed a notice of appearance in this case. The Trustee submits that no other or further notice need be given and respectfully requests that the Court find that such notice is proper and sufficient.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: New York, New York
     January 27, 2010

Respectfully submitted,

*s/Marc E. Hirschfield*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

## EXHIBIT A

### FORM OF AGREEMENT BETWEEN
### TRUSTEE AND THE LEVYS

EXECUTION VERSION

## AGREEMENT

This AGREEMENT, dated as of January 27, 2010, is made by and among IRVING H. PICARD, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA") of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and JEANNE LEVY-CHURCH and FRANCIS N. LEVY (collectively, the "Levys"), on the other hand (each of the Trustee and the Levys, a "Party").

## BACKGROUND

A.    Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.    On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS.

E.    Norman F. Levy ("Mr. Levy"), a New York City commercial real estate broker, began investing with BLMIS in the mid-1970's. Over the years, Mr. Levy invested a significant portion of his assets with BLMIS.

F.    Prior to his death in September of 2005, Mr. Levy designated Madoff as an executor of his estate. As executor, Madoff was vested with power to make unilateral investment decisions regarding the estate's non-real estate assets.

G.    After Mr. Levy's death, acting as the executor, Madoff transferred to BLMIS from the estate more than $250,000,000.

H.    A number of Mr. Levy's family members, family trusts, and charitable trusts established by the family were also BLMIS customers. Their BLMIS client numbers and account names are listed in Attachment A ("Levy BLMIS Accounts"), which is intended to be part of this Agreement. If any accounts were inadvertently omitted from Attachment A, the Levys and the Trustee agree to act in good faith to revise Attachment A to include such accounts. For the avoidance of doubt, the term Levy BLMIS Accounts does not include any accounts held by Jeff Hinte ("Mr. Hinte").

I.    During the six years prior to the Filing Date, approximately $305,000,000 was withdrawn from the Levy BLMIS Accounts in excess of the amounts that were deposited into them. Of this amount, the Betty & Norman F. Levy Foundation, a charitable organization, withdrew approximately $84,000,000 in excess of the amount that it had deposited into its account, and all of those funds were donated to charitable causes.

J.    Jeanne Levy-Church and Francis N. Levy (together, the "Levys") are Mr. Levy's children. The Levys were customers of BLMIS, and they maintained the customer accounts listed in their names on Attachment A. Before the Madoff fraud was discovered, both were heavily involved in philanthropic work.

K.    Zeno F. Levy ("Zeno") and Titus R. Levy ("Titus") are the children of Francis N. Levy and his wife, Hallie D. Cohen. BLMIS accounts were established for Titus and Zeno under the New York Uniform Gifts to Minors Act ("UGMA Accounts"). Zeno is now 25 years old, and Titus is 21 years old.

L.    In the spring of 2009, the Levys initiated discussions with the Trustee. The Levys were among the first group of former BLMIS customers to approach and seek resolution with the Trustee. After their initial meeting, the Parties entered into good faith discussions. At all times, the Levys shared information and documents about themselves and about the Levy BLMIS Accounts with the Trustee and his counsel. The Levys have been cooperative and, from an early point in the discussions, indicated a desire to resolve their situation fairly. Their cooperation has sped resolution and minimized Trustee expenses.

M.    The Trustee has asserted that the Levys are liable to the BLMIS estate under 11 U.S.C. §§ 544(b), 547, 548 and 550 (collectively, the "Avoiding Powers Claims"), and may also be liable under the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), for the Levys' net withdrawals of fictitious profits within the statutory period.

N.    The Levys dispute the legal and factual bases of liability for some of the withdrawals. In particular, the Levys contend: that they do not bear any liability for their good-faith withdrawals made prior to two years before the effective date of this Agreement; that withdrawals from their Levy BLMIS Accounts were comprised of invested principal and investment earnings to which they are legally entitled as opposed to fictitious profits; and that the account balances for the Levy BLMIS Accounts were real as of December 31, 1991.

2

Nevertheless, the Levys wish to settle all disputes with the Trustee, and they do so without admitting any liability.

        O.    Zeno and Titus have asserted that they are both entitled to allowance of a customer claim in the BLMIS liquidation proceeding in an amount equal to the capital invested in their UGMA Accounts under the provisions of SIPA or to the benefit of SIPC advances under section 9 of SIPA in the SIPA Proceeding upon compliance with the applicable provisions of SIPA and the Bankruptcy Code. Both Zeno and Titus filed customer claims under SIPA prior to the July 2, 2009 bar date (the "Zeno and Titus Claims").

        P.    The Trustee, on the one hand, and the Levys, on the other hand, wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

        NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and the Levys agree:

## AGREEMENT

        1.    The Levys' Agreement to Bankruptcy Court Jurisdiction. The Levys agree that the agreements with BLMIS that they each had in connection with the Levy BLMIS Accounts and their respective communications and trading activities with respect to the Levy BLMIS Accounts, submit them to the jurisdiction of the Bankruptcy Court for the purpose of the SIPA Proceeding and any Avoiding Power Claims that the Trustee may bring against them under section 544, 547, 548 and/or 550 of the Bankruptcy Code; provided, however, that prior to Bankruptcy Court approval of this Agreement, the Levys shall not be deemed, by their having executed this Agreement, to have (a) consented to the jurisdiction of the Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Levys, or (b) waived or released their right to trial by jury.

        2.    Payment to Trustee. The Levys shall pay, by wire transfer by the Closing (as defined in paragraph 7), to the Trustee the sum of $220,000,000 in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS estate against the Levys.

        3.    Withdrawal of Zeno and Titus Claims. As part of the consideration to the Trustee hereunder, the Zeno and Titus Claims shall be deemed withdrawn with prejudice upon the occurrence of the Closing.

        4.    Release by Trustee; Covenant Not to Sue. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, upon the payment of all amounts set forth in paragraph 2 hereof and his receipt of a Release Subscription (in the form annexed hereto) for each of the Levy Releasees (as defined below), the Trustee will be deemed to have (a) released, remised and forever discharged each of the people and entities listed on Attachment B (collectively, "Levy Releasees") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages

3

(including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee against any of the Levy Releasees and that are based on, arise out of or relate in any way to the affairs of BLMIS or the Levy BLMIS Accounts and not in any other context or capacity and (b) granted a covenant not to sue to (i) any person related by blood or marriage as of the Closing to any of the Levy Releasees (other than Mr. Hinte) and (ii) any entity in which any of the Levy Releasees held or hold, as of or prior to the Closing, a financial interest, in the case of (i) and (ii) for Avoiding Powers Claims but only to the extent that such person or entity is an immediate or mediate transferee of any of the Levy Releasees under section 550(b) of the Bankruptcy Code; provided, however, that the foregoing covenant not to sue shall not apply to any Avoiding Powers Claims based on a transfer of funds that does not constitute an immediate or mediate transfer of funds from a Levy Releasee to the entity. For the avoidance of doubt, the term Levy Releasees does not include Mr. Hinte and nothing herein shall release or be deemed to be a release by the Trustee of Mr. Hinte and, further, nothing herein shall be or be deemed to be a covenant not to sue by the Trustee of Mr. Hinte for any liability he may have to the Trustee.

5.     Release by Levys.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Levy Releasees, by having an authorized representative sign a Release Subscription for each Levy Releasee, hereby releases, acquits and absolutely discharges the Trustee and all his agents, BLMIS and its estate, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS.

6.     Cooperation.  Upon reasonable request of the Trustee, the Levys agree, on behalf of themselves and to the extent they may bind each of the other holders of the Levy BLMIS Accounts, to reasonably cooperate with the Trustee, in connection with any efforts to recover funds invested in BLMIS.

7.     Closing.  There shall be a closing ("Closing") within 30 days after the date on which this Agreement becomes effective and binding on the Parties under paragraph 8, on a date agreed by the Parties, at the offices of Trustee's counsel in New York, N.Y.  At the Closing, (a) the Levys shall make, or shall have made, the payment required under paragraph 2 above; (b) the releases contained in paragraphs 4 and 5 shall become effective without any further action by any of the Parties; and (c) the Zeno and Titus Claims shall be deemed withdrawn as provided in paragraph 3.

8.     Bankruptcy Court Approval; Effective Date; Termination.  This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing.  The form of the approval order shall be subject to

4

the Levys' reasonable approval. The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement. The Trustee shall provide the Levys with a draft of any motion to the Bankruptcy Court for approval of this Agreement, which shall be subject to the Levys' reasonable approval. If this Agreement does not become effective, (a) this Agreement (other than this paragraph and paragraphs 18 and 19) shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 18 and 19) shall be null and void, and (c) neither the Trustee nor the Levys may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the SIPA Proceedings, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff and (d) the Levys shall not be deemed, on account of their having executed this Agreement, to have consented to the jurisdiction of the Bankruptcy Court or released their right to trial by jury.

9.    Authority. The Levys, as well as the authorized representatives of each Levy Releasee, represent and warrant to the Trustee as of the date hereof that each of them has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under, this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

10.    Further Assurances. The Trustee and the Levys shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

11.    Entire Agreement. This Agreement and any confidentiality agreement between the Trustee and the Levys constitute the entire agreement and understanding between and among the Parties and supersede all prior agreements, representations and understandings concerning the subject matter hereof.

12.    Amendments, Waiver. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

13.    Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

14.    Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

15.    No Third Party Beneficiary. Except as expressly provided in paragraphs 6 and 7, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

16.    No Admission of Liability or Wrongdoing. By entering into this Agreement, the Levys do not admit and they expressly deny that they owe any liability to the Trustee other than provided for herein, or to any other person or that they engaged in any wrongdoing.

5

17.    Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

18.    Exclusive Jurisdiction. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

19.    Captions and Rules of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

20.    Counterparts; Electronic Copy of Signatures. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature. The Levy Releasees may evidence their execution of the Release Subscription by delivery to the Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

21.    Termination of BLMIS Account Agreements with BLMIS. All agreements between holders of the Levy BLMIS Accounts and BLMIS are terminated as of the Closing.

22.    Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

| If to the Trustee, c/o: | If to the Levys, c/o: |
|---|---|
| Marc Hirschfield | Ronald L. Olson and Cary B. Lerman |
| Baker & Hostetler LLP | Munger, Tolles & Olson LLP |
| 45 Rockefeller Center, Suite 1100 | 355 S. Grand Ave., 35th Floor |
| New York, NY 10111 | Los Angeles, CA 90071 |
| F: (212) 589-4201 | F: (213) 683-9100 |
| E: mhirschfield@bakerlaw.com | E: ron.olson@mto.com, cary.lerman@mto.com |

*[Signature page follows]*

6

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

FRANCIS N. LEVY

_____

JEANNE LEVY-CHURCH

_____

## RELEASE SUBSCRIPTION

The undersigned is a "Levy Releasee" as defined in the Agreement dated as of January 27, 2010, by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Jeanne Levy-Church and Francis N. Levy (the "Levys"), on the other hand. For and in consideration of the Trustee's release of the undersigned under paragraph 4 of the Agreement, the undersigned subscribes to the release set forth in paragraph 5 of the Agreement (and only to such release) with the same force and effect as if the undersigned were a party to the Agreement. By signing this Subscription, the undersigned does not become a Party to the Agreement and is not undertaking any rights or obligations under any other provisions of the Agreement, except that paragraphs 18, 19, 20, 21, and 22 of the Agreement apply to this Subscription as though such paragraphs were a part of this Subscription.

Dated _____, 201_.

_____

By: _____
    Name:
    Title:

ATTACHMENT A: LEVY BLMIS ACCOUNTS

| Account Number | Account Name |
|---|---|
| 1L0027 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO ATTN: PAUL KONIGSBERG |
| 1L0028 | NORMAN F LEVY SPECIAL KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0086 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0088 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0099 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0101 | NORMAN LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0171 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0175 | NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0236 | ESTATE OF NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0300 | ESTATE OF NORMAN F LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0308 | ESTATE OF NORMAN LEVY-RE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0024 | FRANCIS N LEVY  C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0078 | FRANCIS N LEVY  C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0084 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0090 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0102 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0169 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0179 | FRANCIS N LEVY C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0026 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1L0075 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1L0085 | JEANNE LEVY-HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0089 | JEANNE LEVY-HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0103 | JEANNE LEVY CHURCH C/O PAUL KONIGSBERG |

| | |
|---|---|
| 1L0170 | JEANNE LEVY HINTE C/O KONIGSBERG WOLF & CO PC ATTN: PAUL KONIGSBERG |
| 1L0178 | JEANNE LEVY-CHURCH C/O PAUL KONIGSBERG |
| 1C1061 | HALLIE D COHEN |
| 1F0074 | FRANJEAN 39TH STREET REALTY CO  C/O KONIGSBERG WOLF & CO ATTN: PAUL KONIGSBERG |
| 1L0025 | TRUST M-B FRANCIS N LEVY  U/I/D 07/24/91 JEFFREY LEVY-HINTE TRUSTEE |
| 1L0029 | TITUS RAY LEVY UGMA FRANCIS LEVY CUSTODIAN C/O PAUL KONIGSBERG |
| 1L0030 | ZENO FRANCIS LEVY UGMA FRANCIS LEVY CUSTODIAN C/O PAUL KONIGSBERG |
| 1L0302 | GST EXEMPT TRUST U/W/O NORMAN F LEVY, FRANCIS N LEVY, JEANNE LEVY-CHURCH, BERNARD L MADOFF TRUSTEES |
| 1L0305 | CHARITABLE LEAD ANNUITY TRUST U/W/O NORMAN F LEVY  FRANCES N LEVY, JEANNE LEVY-CHURCH, BERNARD L MADOFF TRUSTEES |
| 1L0313 | THE ZENO F LEVY TRUST JEFFREY LEVY-HINTE TRUSTEE |
| 1L0314 | THE TITUS R LEVY TRUST JEFFREY LEVY-HINTE TRUSTEE |
| 1P0131 | THE PHILOCTETES CENTER INC |
| 1L0023 | THE BETTY AND NORMAN F LEVY  FOUNDATION INC C/O PAUL KONIGSBERG |
| 1L0073 | NORMAN F LEVY  REVOCABLE TRUST U/I/D 4/1/93 C/O ALBERT MALTZ,TRUSTEE |
| 1L0083 | LEVY FASHION CENTER ASSOCIATES LLC C/O PAUL KONIGSBERG |
| 1L0168 | TRUST M-B FRANCIS N LEVY U/I/D 7/24/91 C/O PAUL KONIGSBERG |

## ATTACHMENT B: LEVY RELEASEES

1. The Estate of Norman F. Levy
2. Francis N. Levy
3. Jeanne Levy-Church
4. Ken Levy-Church
5. Hallie D. Cohen
6. Zeno F. Levy
7. Titus R. Levy
8. The Zeno F. Levy Trust
9. The Titus R. Levy Trust
10. Zeno Francis Levy UGMA
11. Titus Ray Levy UGMA
12. The Betty & Norman F. Levy Foundation Inc.
13. The Philoctetes Center, Inc.
14. The Charitable Lead Annuity Trust u/w/o Norman F. Levy, et al.
15. GST Exempt Trust u/w/o Norman F. Levy, et al.
16. The Francis N. Levy Mutual Benefit Trust
17. FranJean 39th Street Realty Co.
18. Francis N. Levy & Jean D. Levy, JV
19. Levy Fashion Center Associates LLC

## EXHIBIT B

## PROPOSED ORDER

Hearing Date: February 18, 2010 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

   Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

   Defendant.

---

In re:

BERNARD L. MADOFF,

Debtor.

---

Adv. Pro. No. 08-1789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

---

### ORDER PURSUANT TO SECTION 105(a) OF THE
### BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL
### RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY
### AND AMONG THE TRUSTEE AND JEANNE LEVY-CHURCH
### AND FRANCIS N. LEVY

   Upon the motion (the "Motion")[1] of Irving H. Picard, Esq. (the "Trustee") as

trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment

Securities LLC and Bernard L. Madoff, seeking entry of an order, pursuant to sections

105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and Rules 2002 and

9019 of the Federal Rules of Bankruptcy Procedure, approving the agreement, by and

among the Trustee, on the one hand, and Jeanne Levy-Church and Francis N. Levy, on the

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them
in the Motion.

other hand, in substantially the form annexed to the Motion (the "Agreement"); and it
appearing that due and sufficient notice has been given to all parties in interest as required
by Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure; and the Court
having considered the Affidavit of Irving Picard in support of the Motion; and it further
appearing the relief sought in the Motion is appropriate based upon the record of the hearing
held before this Court to consider the Motion; and it further appearing that this Court has
jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.
§§ 157 and 1334; and after due deliberation; and sufficient cause appearing therefor; it is

ORDERED, that the Motion is granted in its entirety; and it is further

ORDERED, that the Agreement between the Trustee on the one hand and
Jeanne Levy-Church and Francis N. Levy on the other hand is hereby approved and
authorized; and it is further

ORDERED, that the Trustee, Jeanne Levy-Church and Francis N. Levy shall
each comply with and carry out the terms of the Agreement.

Dated: New York, New York
    February __, 2010

_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

2

# EXHIBIT C

## AFFIDAVIT OF IRVING PICARD

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-1789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**AFFIDAVIT OF IRVING H. PICARD, TRUSTEE, IN SUPPORT OF MOTION FOR
ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE
AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY**

## PROCEDURE APPROVING AN AGREEMENT BY AND AMONG THE TRUSTEE AND JEANNE LEVY-CHURCH AND FRANCIS N. LEVY

Irving H. Picard, Esq., being duly sworn, hereby attests as follows:

1.       I am Trustee ("Trustee") for the substantively consolidated liquidation of Bernard

L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff. I submit this

Affidavit in support of the Motion for Entry of Order Pursuant to Section 105(a) of the

Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, dated

January 27, 2010 (the "Motion"), seeking approval of an Agreement by and among the Trustee

and Jeanne Levy-Church and Francis N. Levy (the "Agreement"). I make this Affidavit based

upon my own personal knowledge or upon information that I believe to be true. Capitalized

terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2.       I believe that the terms of the Agreement fall well above the lowest point in the

range of reasonableness and, accordingly, the Agreement should be approved by this Court. The

Agreement resolves all issues regarding my claims against the Levys (the "Claims") without the

need for protracted, costly, and uncertain litigation. Litigating the Claims would undoubtedly be

expensive and would require a significant commitment of time by the various professionals

involved in the matter.

3.       Given the cost and complexities involved in proceeding with litigation, I have

determined that the proposed settlement with the Levys represents a fair compromise of the

Claims. I have also determined that proceeding against the Betty & Norman F. Levy Foundation

is fruitless because of its lack of significant assets and inability to pay any judgment against it.

Moreover, under the settlement, the Levys will return the amount that I demanded from them,

$220,000,000. I believe that such amount represents nearly one-hundred percent of the amount

2

that the Levy BLMIS Account Holders withdrew from BLMIS during the six-year period before the filing (using the data available to the me at the time I made the demand). The Agreement also furthers the interests of the customers of BLMIS by adding a substantial amount of money to the fund of customer property now.

IRVING H. PICARD

Sworn to before me this 27th
day of January, 2010

Notary Public

DAMIAN SMITH
Notary Public, State of New York
No. 01SM6169097
Qualified in New York County
Commission Expires June 18, 2011

3

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

## CERTIFICATE OF SERVICE

I, NIKKI M. LANDRIO, hereby certify that on January 27, 2010, I served true copies of

the

- **Notice of Motion For Entry Of Order Pursuant To Section 105(a) Of The Bankruptcy Code And Rules 2002 And 9019 Of The Federal Rules Of Bankruptcy Procedure Approving An Agreement By And Among The Trustee And Jeanne Levy-Church And Francis N. Levy; and**

- **Motion For Entry Of Order Pursuant To Section 105(a) Of The Bankruptcy Code And Rules 2002 And 9019 Of The Federal Rules Of Bankruptcy**

300069429

**Procedure Approving An Agreement By And Among The Trustee And Jeanne Levy-Church And Francis N. Levy (with Exhibits attached)**

upon the interested parties who receive electronic service through ECF, by emailing the interested

parties true and correct copies via electronic transmission to the email addresses designated for

delivery and/or by placing true and correct copies thereof in sealed packages designated for

regular U.S. Mail to those parties as set forth on the attached Schedule A.

Dated: New York, New York
     January 27, 2010               s/Nikki M. Landrio
                                  NIKKI M. LANDRIO

## SCHEDULE A

Internal Revenue Service
District Director
290 Broadway
New York, New York 10008

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 21126
Philadelphia, PA  19114

U.S. Department of Justice, Tax Division
Box 55
Ben Franklin Station
Washington, DC 20044

**Chapter 7 Trustee**
Alan Nisselson, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019

**Securities Investor Protection Corporation**
Kevin Bell – kbell@sipc.org
Josephine Wang – jwang@sipc.org

**Securities and Exchange Commission**
Alistaire Bambach – bambacha@sec.gov
Alexander Mircea Vasilescu – vasilescua@sec.gov
Terri Swanson – swansont@sec.gov
Preethi Krishnamurthy – krishnamurthyp@sec.gov

**United States Attorney for SDNY**
Marc Litt – marc.litt@usdoj.gov
Lisa Baroni – lisa.baroni@usdoj.gov
Natalie Kuehler - natalie.kuehler@usdoj.gov

**Counsel to the JPL**
Eric L. Lewis – Eric.Lewis@baachrobinson.com

**Notices of Appearance**
Service via Electronic Notification through ECF Filing

**Counsel to Jeanne Levy-Church and Francis N. Levy**
Ronald L. Olson, Esq. – ron.olson@mto.com
Cary B. Lerman, Esq. – cary.lerman@mto.com