# EXHIBIT F

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

      In the Matter

          of                Case No.

                          1-08-01789


SECURITIES INVESTOR PROTECTION CORPORATION

          V.

BERNARD L. MADOFF INVESTMENT SECURITIES, et al.,

             Debtors.

----------------------------------------x

                    February 18, 2010

                    United States Custom House

                    One Bowling Green

                    New York, New York 10004


      Motion for an Entry of Order Pursuant to Section

105(a) of the Bankruptcy Code and Rules 2002 and 9019 of

the Federal Rules of Bankruptcy Procedure Approving an

Agreement by and Among the Trustee and Jeanne Levy-Church

and Francis N. Levy,  et al.


B E F O R E:

              HON. BURTON R. LIFLAND,

                  U.S. Bankruptcy Judge

2

1    A P P E A R A N C E S:

2

3

4         BAKER HOSTETLER, LLP

5         Attorneys for Irving H. Picard, Trustee

6              45 Rockefeller Plaza

7              New York, New York 10017

8         BY:   MARC E. HIRSCHFIELD, ESQ.

9                  -and-

10             PAUL EYRE, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1               Proceedings

2               THE COURT:  Securities Investor Protection

3    vs. Bernard L. Madoff Investment Securities.

4               Is that based on the calendar or caption,

5    The Bankruptcy Link?

6               MR. HIRSCHFIELD:   Calendar.

7               THE COURT:  So we ought to recaption it

8    then.

9               MR. HIRSCHFIELD:   Good morning, Your

10   Honor.

11              THE COURT: Good morning.

12              MR. HIRSCHFIELD:  I am Marc Hirschfield,

13   from the law firm of Baker Hostetler, on behalf of the

14   Trustee.   With me today is my colleague, Paul Eyre, who

15   helped work on the settlement.

16              Before the Court today is the motion under

17   Bankruptcy Rule 9019 seeking the Court's approval an

18   agreement with Jeanne Levy-Church and Francis Levy, adult

19   children of Betty and Norman Levy drew up an agreement the

20   Levys will return to the Trustee 220 million dollars.

21              By way of background, Your Honor, Norman

22   Levy was a real estate executive here in New York.   He

23   began investing with Madoff in the mid-1970s.

24              Over the years, Mr. Levy opened up a number

25   of accounts with BLMIS for himself, for his wife, and for

4

1    various members of his family including his children and

2    the family and other charitable trusts.  Mr. Levy passed

3    away in 2005, and throughout his life he placed great trust

4    in Mr. Madoff.

5                    In his will, he appointed Madoff as one of

6    his executors and that granted Madoff the authority to make

7    unilateral decisions with regard to nonreal estate assets

8    of his estate.

9                    Mr. Madoff unfortunately took advantage of

10   that trust and breached it, and after Mr. Levy's death

11   transferred 220 million dollars of non-Madoff assets.

12                   THE COURT:  As an executor --

13                   MR. HIRSCHFIELD:   Yes.

14                   THE COURT:  -- of the Levy estate?

15                   MR. HIRSCHFIELD:  Yes. He transferred it to

16   BLMIS and, of course, that money was lost along with all

17   the other money.

18                   THE COURT:  This is a bit of lack of

19   integrity we have not seen before.

20                   MR. HIRSCHFIELD:   I think there is no

21   floor to Mr. Madoff's integrity.

22                   So, essentially, Your Honor, Madoff stole

23   the 220 million dollars from Mr. Levy's heirs.   Even with

24   this 220 million dollars over the years the Levy account

25   holders took out more money from Madoff than they put in.

5

1          Therefore, Your Honor, under our parlance

2     they are not winners.   Last spring Jeanne and Francis

3     Levy, the two heirs of Mr. Norman Levy approached us

4     through their counsel to begin to discuss their potential

5     liability.   We did not contact them.   They contacted us.

6          From the very beginning, Your Honor, they

7     made it very clear to us they want to do the right thing.

8     They felt badly about having other people's money and they

9     wanted to return to the Trustee the profits they received,

10    which was really other people's money.

11         After discussing with them various things

12    and learning about them and their finances and their assets

13    and their liabilities, the Trustee made a demand of them of

14    220 million dollars, which at that time was the six-year

15    number of the money that they took out.

16         In addition to that, Your Honor, the 220

17    million dollars another 84 million of false profits was

18    withdrawn by the Betty and Norman Levy Foundation, which

19    was a charitable trust which Mr. Levy and his wife had set

20    up.   They told us, the Levis, and they gave us evidence to

21    corroborate all of this 84 million dollars which was

22    donated to charitable causes and the foundation has

23    virtually nothing left to which to return anything to the

24    Trustee.

25         Based upon this, the trustee in his

6

1   business judgment made the decision not to seek any

2   recovery from the trust.   Again, to do so, from the

3   foundation rather, to do so would have been futile because

4   as I said they had nothing to give us.   So, therefore,

5   trying to commence a lawsuit against the foundation would

6   have made no sense.

7              The Trustee does believe that the other

8   money withdrawn by the Levys is recoverable under Section

9   544, 548 and 550 of the Bankruptcy Code.

10              When the Levy executed liability to the

11   trust they agreed to pay us the amount we requested, 220

12   million dollars.   That agreement is set forth in a

13   settlement agreement attached to the motion.

14              I will just highlight a few of the terms of

15   the agreement for the Court's reference.

16              Under the agreement, as mentioned the Levys

17   will pay us at closing which will happen very shortly after

18   an order approving the settlement has become final some 220

19   million dollars in one payment.

20              The Trustee and the Levis will exchange a

21   release and the Trustee will agree not to sue certain

22   entities that are related to the Levis.

23              The Levis have agreed, respectively, they

24   will assist us when asked in our effort to recover other

25   money from other people and, finally, there are two

7

1    children of Francis Levy, who unlike the other Levy

2    members, those accounts that they had with Madoff were not

3    losers.

4                They submitted claims before the bar date

5    and those two proofs of claim will be redeemed withdrawn as

6    part of the settlement.   So there will be no recovery at

7    all on those two claims.

8                We believe the settlement is a very good

9    one and we ask for the Court's approval.   In connection

10   with our motion, the Trustee submitted an affidavit to the

11   Court in which he stated that he believes the settlement is

12   appropriate in his business judgment and that the business

13   agreement falls well above the lowest point of

14   reasonableness.

15               While we believe we would have prevailed if

16   we had to sue the Levis, we don't believe we have collected

17   anything more than just getting this settlement.   So,

18   therefore, we think it makes sense to have the settlement

19   agreement.

20               Your Honor, I just have one additional

21   thing to add, as we set forth in our motion and the public

22   statements, the Trustee very much appreciates the manner in

23   which the Levys conducted themselves throughout these

24   discussions.

25               As I said earlier, the discussions were, in

8

1    fact, initiated by the Levis.  There were a lot of people

2    in this case who withdrew false profits and there are some

3    who are fighting us virtually tooth and nail not to return

4    the money, and others like the Levys and Optimal which we

5    previously settled came forward to voluntarily return the

6    money.

7              The Trustee, the Levis should serve as an

8    example to others in this case in a situation similar to

9    the Levys, and should come forward and like the Levys

10   return to us the amounts they've withdrawn.

11             In conclusion, Your Honor, we very much

12   think the settlement is a satisfactory one and we ask for

13   Your Honor's approval.

14             THE COURT:  Does anyone else want to be

15   heard?

16             Well, I am going to approve the settlement,

17   based upon the papers before me and representations here.

18             It is clear that the Trustee has done an

19   appropriate level of due diligence in recommending the

20   settlement.  Especially with respect to the concept of

21   abandoning certain actions based upon the difficulties

22   associated with the collection, that is with respect to the

23   foundation.

24             The settlement does resolve the spectre of

25   an expensive and protracted litigation, and it allows the

9

1   parties to go forward with a degree of comfort that there

2   are lawyers who are now out of the horizon to a certain

3   extent and certainly, the way the settlement has come about

4   and the amount, although interests could have demanded or

5   based upon information received, subsequent to the first

6   offer, it is clear that this settlement is well above the

7   lowest rung in a range of reasonableness and is right on

8   target in that regard and I will entertain an order

9   approving it.

10                 MR. HIRSCHFIELD:   Thank you, Your Honor.

11                 THE COURT: I have approved the order.

12                 MR. HIRSCHFIELD:   Yes.  Thank you, again,

13   Your Honor.

14                 That would be all we have on the calendar

15   for today.

16                 THE COURT:  Thank you.

17

18                      *      *      *

19

20

21

22

23

24

25

10

1

2                        C E R T I F I C A T E

3

4    STATE OF NEW YORK          }
                                 }    ss.:
5    COUNTY OF NEW YORK          }

6                        I, MINDY CORCORAN, a Shorthand Reporter

7    and Notary Public within and for the State of New York, do

8    hereby certify:

9                        That I reported the proceedings in the

10   within entitled matter, and that the within transcript is a

11   true record of such proceedings.

12                       I further certify that I am not related, by

13   blood or marriage, to any of the parties in this matter and

14   that I am in no way interested in the outcome of this

15   matter.

16                       IN WITNESS WHEREOF, I have hereunto set my

17   hand this 19th day of February, 2010.

18

19                        _____

                          MINDY CORCORAN

20

21

22

23

24

25